UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*, | § § § | Case No. 25-90399 (CML) |
|  | § § | (Jointly Administered) |
| Debtors.[1] | § | (Emergency Hearing Requested) |

CONSOLIDATED LIMITED OBJECTION AND RESERVATION OF RIGHTS
OF KATSUMI SERVICING, LLC TO DEBTORS' (I) DIP MOTION
AND (II) CASH MANAGEMENT MOTION

Katsumi Servicing, LLC, in its capacity as buyer representative (the "Buyer Representative") with respect to the receivables purchase facility (the "Receivables Facility")[2] entered into with Debtor First Brands Group, LLC ("First Brands") and certain of its Debtor affiliates, hereby, on behalf of itself, the Buyer and the Buyer's successors and permitted assignees and transferees, files this limited objection and reservation of rights (the "Limited Objection") to the (i) *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing,*

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Katsumi Servicing, LLC is the buyer representative under that certain Receivables Purchase Agreement, dated as of May 27, 2022, by and among First Brands, as seller representative (in such capacity, the "Seller Representative"), servicer (in such capacity, the "Servicer") and a seller (in such capacity, a "Seller"); each other seller from time to time party thereto (each, a Seller and, together with First Brands as Seller, collectively, the "Sellers"); KARS Funding, LLC, as buyer (together with its successors and permitted assigns and transferees, the "Buyer"); and Katsumi Servicing, LLC, as buyer representative (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Receivables Purchase Agreement" and, together with any other agreements, instruments and other documents entered into or delivered in connection with the Receivables Facility, the "Receivables Facility Documents").

1753155254

*and (V) Granting Related Relief* [Dkt. No. 49] (the "DIP Motion") and (ii) *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Bank Accounts, (B) Implement Ordinary Course Changes to Cash Management System, and (C) Honor Certain Related Prepetition Obligations, (II) Granting Administrative Expense Priority for Postpetition Intercompany Claims, (III) Extending Time to Comply with Requirements of 11 U.S.C. § 345(b), and (IV) Granting Related Relief* [Dkt. No. 17] (the "Cash Management Motion"),[3] and in support of the Limited Objection, by and through its undersigned counsel, respectfully submits as follows:

## PRELIMINARY STATEMENT

1.  The Buyer Representative does not oppose the Debtors' obtaining appropriate authority to continue using their existing Cash Management System, or to obtain DIP Financing and use Cash Collateral on an interim and limited basis to preserve operations, promptly conduct the investigation described in the Moore Declaration (as defined below), and pursue a value-maximizing transaction. (Cash Management Motion at ¶ 31; DIP Motion at ¶ 14). However, given the breadth of the relief sought, the Buyer Representative files this Limited Objection to ensure that any authorization of such actions is consistent with (and expressly limited by) the rights and obligations of the Debtors and the various non-Debtor parties to the Receivables Facility Documents, as well as the governing provisions of the Bankruptcy Code and applicable non-bankruptcy law.

2.  Additionally, on information and belief, the Buyer Representative believes that it is possible that the Debtors may have violated certain terms of the Receivables Facility Documents

---

[3] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Cash Management Motion and DIP Motion, as the case may be.

prior to the Petition Date, including with respect to key reporting, collection, and disbursement obligations to the Buyer. The Debtors' Chief Restructuring Officer appears to obliquely reference this in the Moore Declaration—noting only that the Debtors' advisors have discovered certain "irregularities" with respect to the Third Party Factoring Programs (as such term is defined in the Moore Declaration), under which the Debtors and related non-Debtors had approximately ***$2.3 billion in unpaid factoring liabilities as of the Petition Date***. (Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions [Dkt. No. 22], at ¶¶ 72, 79 (the "<u>Moore Declaration</u>")). Despite the magnitude of these liabilities, the Moore Declaration offers little insight into how the Debtors intend to address them—acknowledging only that the Debtors' prepetition factoring practices are under investigation by a newly-appointed special committee (of undefined scope, timing and purpose) and that, pending the investigation, the Debtors will segregate funds received on account of receivables factored prepetition. (Moore Declaration at ¶¶ 32, 72). In addition to this being the only mention of the Debtors' obligation to segregate such funds (which is an ongoing requirement under the Receivables Facility Documents), these cursory statements understate the gravity and complexity of the issues raised by the Debtors' prepetition factoring practices and the sufficiency of any proposed remediation, and demand not only a more fulsome disclosure as to the contemplated investigation but also a more thorough process to address such issues during these chapter 11 cases.

3. To that end, the Buyer Representative files this Limited Objection to ensure that any first-day or further relief granted by this Court does not alter or modify the obligations of the Debtors under the Receivables Facility Documents (including the continuing obligation to hold in trust, segregate, and not use, proceeds of receivables sold thereunder), and preserves the rights, claims and remedies of the Buyer Representative and the Buyer in all respects, pending further

order of this Court.

## RELEVANT BACKGROUND

4.      The Receivables Facility is a non-recourse, true sale receivables facility under which the Debtor Sellers may, from time to time, offer eligible trade receivables generated in the ordinary course of their business (the "Receivables") to the Buyer via request and, in turn, Buyer may accept such request and, on specified purchase dates, purchase for cash all right, title, and interest in such Receivables and any related rights, collections, and proceeds with respect thereto (collectively, the "Purchased Receivables"), and thereafter enforce such rights as the absolute owner of the Purchased Receivables.  Debtor First Brands, as Seller Representative, acts for all Debtor Sellers, and, together with its capacity as Servicer, is jointly and severally responsible for the performance of all Debtor Seller obligations, including, without limitation, specific reporting, repurchase, and account administration and collection obligations in respect of the Purchased Receivables for the benefit of Buyer.  The Buyer Representative acts for the Buyer in administering the Buyer's relevant accounts, and is authorized to exercise any rights or powers of the Buyer in respect of the Purchased Receivables.

5.      Pursuant to the express terms of the Receivables Purchase Agreement and the other Receivables Facility Documents, any and all funds received by the Debtor Sellers or Debtor Servicer in respect of Purchased Receivables and the proceeds therefrom are Buyer's exclusive property (and not estate property).  Neither the Debtor Servicer nor any Debtor Seller is permitted to use such funds for its own purposes or to pledge such funds as collateral, and any and all funds so received prior to deposit into the Buyer's account must be held in trust by the Debtor Servicer and Debtor Sellers as the separate property, and for the exclusive use and benefit, of the Buyer, and must at all times be promptly segregated and remitted to Buyer's account.

6. To facilitate this true-sale structure, the Debtor Sellers' and Debtor Servicer's cash management and appropriate collections administration were and are central to the transaction. Pursuant to the Receivables Purchase Agreement, each Debtor Seller and the Debtor Servicer is required to direct applicable account debtors to make payments on Purchased Receivables into designated Debtor Seller collection accounts (which are subject to control agreements in favor of Buyer Representative). Funds deposited into the collection accounts in respect of the Purchased Receivables are then required to be transferred by the Debtor Sellers and the Debtor Servicer into Buyer's account within five (5) business days of receipt therein.[4] These obligations exist both pre- and post-petition for each Debtor Seller and the Debtor Servicer.

7. As alluded to in the Moore Declaration, it appears that the Debtor Sellers and Debtor Servicer may have materially breached certain terms of the Receivables Facility Documents. (Moore Declaration at ¶¶ 72, 79). In response, however, the Debtors' Chief Restructuring Officer only concedes that the Debtors' prepetition factoring practices are subject to the newly-appointed special committee's investigation, and pending the results of such investigation, the Debtors will segregate funds received on account of receivables factored prior to the Petition Date. (Moore Declaration at ¶¶ 32, 72). Very little detail is offered in respect of the investigation, including with respect to its planned duration, scope, purpose, and anticipated timeline. The magnitude of the unpaid prepetition factoring balance, the possibility of double-factoring (and/or double-pledging), and the risk of commingling, diversion and other violations raise substantial concerns that require more concrete safeguards going forward.

---

[4] Pursuant to the Receivables Purchase Agreement, the collection accounts may contain funds other than proceeds of the Purchased Receivables, provided that (i) the Debtor Servicer and each Debtor Seller complies with specified reporting requirements to ensure the proper identification of funds therein that relate to the Purchased Receivables and (ii) funds on deposit in the collection accounts in respect of the Purchased Receivables are transferred to the Buyer's account within five (5) business days of receipt therein.

**LIMITED OBJECTION**

I. **Any Relief Granted With Respect To The DIP Motion Should Be Consistent With The Receivables Facility Documents, The Bankruptcy Code, And Applicable Non-Bankruptcy Law**

8. By the DIP Motion, the Debtors seek authority to use cash collateral and obtain a new money $1.1 billion senior secured, superpriority and priming DIP Facility (plus certain roll-up amounts) to be provided by certain of the Debtors' existing first and second lien creditors. (DIP Motion at ¶¶ 1, 7). The Debtors' obligations under the proposed DIP facility will secured by substantially all assets of the Debtors in accordance with the following priorities (Moore Declaration at ¶¶ 8, 36):[5]

| Collateral | ABL Priority Collateral | Term Priority Collateral | Previously Unencumbered Assets[9] |
|---|---|---|---|
| Priority | 1. ABL Secured Parties<br>2. *Proposed DIP Facility*<br>3. First Lien Secured Parties / Side-Car Secured Parties<br>4. Second Lien Secured Parties | 1. *Proposed DIP Facility*<br>2. First Lien Secured Parties / Side-Car Secured Parties<br>3. Second Lien Secured Parties<br>4. ABL Secured Parties | 1. *Proposed DIP Facility* |
| Description | • All Accounts (other than Accounts from sale of Term Priority Collateral)<br>• Inventory<br>• Payment Intangibles (other than Payment Intangibles from sale of Term Priority Collateral)<br>• Deposit Accounts, Securities Accounts, Commodity Accounts and all Money therein<br>• 50% of business interruption insurance and all rights to credit insurance with respect to Accounts<br>• General Intangibles evidencing the above<br>• Relevant collateral, guarantees and Supporting Obligations<br>• Relevant books and records<br>• Products and Proceeds of the above | • Equipment and real property interests therein and fixtures<br>• Intellectual Property<br>• Equity Interests and other Investment Property (other than Payment Intangibles being ABL Priority Collateral)<br>• Instruments, Documents and General Intangibles that are not ABL Priority Collateral<br>• Term Priority Accounts<br>• Insurance policies relating to Term Priority Collateral<br>• Commercial Tort Claims<br>• Other collateral not constituting ABL Priority Collateral<br>• Relevant collateral, guarantees and Supporting Obligations<br>• Relevant books and records<br>• Products and Proceeds of the above | • Substantially all previously unencumbered assets (including proceeds of avoidance actions and commercial tort claims)<br>• Pledges of equity in certain non-Debtor subsidiaries |

9. Pursuant to Section 541 of the Bankruptcy Code, the commencement of a bankruptcy case creates an estate, which, subject to certain exceptions, consists of "all legal or

---

[5] The proposed DIP Facility priorities in the above chart include any adequate protection obligations in respect of the DIP Collateral. (Moore Declaration at ¶ 36).

equitable interests of the debtor in property as of the commencement of a case" as determined by applicable state law. 11 U.S.C. 541(a)(1); *see Butner v. U.S.*, 440 U.S. 48 (1979). In these chapter 11 cases, however, the Debtors have no interest in the Purchased Receivables or any funds received in respect thereof as a matter of applicable state law and, thus, such assets cannot be considered property of their respective estates. *See, e.g., Dryden Advisory Grp., LLC v. Beneficial Mut. Sav. Bank (In re Dryden Advisory Grp., LLC)*, 534 B.R. 612, 626-27 (Bankr. M.D. Pa. 2015) (accounts receivable sold pre-petition do not constitute estate property); *In re Doctor's Hosp. of Hyde Park. Inc.*, 507 B.R. 558 (Bankr. N.D. Ill. 2013) (describing "true sale" determination as a question of state law and observing that if transfer is a true sale, the assets should not be considered assets of the bankruptcy estate).

10. Indeed, the opposite is true. Pursuant to the Receivables Purchase Agreement and the other Receivables Facility Documents, each Debtor Seller sold or otherwise conveyed its right, title, and interest in the Purchased Receivables to Buyer at the point of sale:

- "If the Buyer accepts (in its sole discretion) a Request, then the Buyer…shall and hereby does purchase, and such Seller shall and hereby does sell to the Buyer, ***all of such Seller's right, title and interest*** (but none of Seller's underlying obligations to the applicable Account Debtor) with respect to such Proposed Receivables as of the Purchase Date (all such Proposed Receivables (together with Related Security, Collections and proceeds with respect thereto), once sold and purchased hereunder, collectively the 'Purchased Receivables')." Receivables Purchase Agreement § 1(a) (emphasis added).

- "The Buyer and Seller have structured the transactions contemplated by this Agreement as a sale and intend the transfer and conveyance of Purchased Receivables hereunder to be absolute and irrevocable 'true sales' by Seller to Buyer, ***that provide Buyer with the full benefits and risks of ownership of the Purchased Receivables***." *Id*. § 1(f)(i) (emphasis added).

11. Further, as discussed above, pursuant to the Receivables Purchase Agreement and the other Receivables Facility Documents, the Buyer is the sole and exclusive owner of any and all funds received by the Debtor Sellers or Debtor Servicer in respect of Purchased Receivables,

7

and any and all funds so received prior to deposit into Buyer's account were required to and must be held by the Debtor Sellers and Debtor Servicer in trust for the exclusive use and benefit of the Buyer:

- "Prior to being transferred to the Buyer Account, ***any funds received by a Seller or Servicer in respect of any Purchased Receivables***, including any funds received in error, ***remain, nevertheless, the exclusive property of the Buyer***, and Seller and the Servicer shall be deemed to be holding such funds in trust for the exclusive use and benefit of the Buyer…." Receivables Purchase Agreement § 4(c) (emphasis added).

- "Neither the Servicer nor any Seller shall, directly or indirectly, utilize such funds [in respect of any Purchased Receivables] for its own purposes, and ***shall not have any right to pledge such funds as collateral for any obligations of the Servicer or a Seller or any other Person***." *Id*. (emphasis added).

12. Given that title to the Purchased Receivables and any related funds have vested solely with the Buyer, the Debtors cannot claim an interest in such assets or that these assets or any proceeds thereof constitute property of their respective estates. In this vein, the Buyer Representative requests that any interim order and any related relief with respect to the DIP Motion clarify that the Debtors are prohibited from using the Purchased Receivables and any and all proceeds in respect thereof, whether as Cash Collateral pursuant to Section 363(a) of the Bankruptcy Code or otherwise.[6]

13. For the same reasons, the Buyer Representative submits that any liens granted to the DIP Secured Parties and Prepetition Secured Parties in respect of the DIP Facility cannot attach to, or prime, the Purchased Receivables, any related proceeds thereof, or the Buyer's interest therein. The Bankruptcy Code prohibits the Debtors from granting liens on non-estate property and providing adequate protection to the holders thereof. Instead, that authority is limited solely

---

[6] For the avoidance of doubt, this request applies regardless of whether any Purchased Receivables and related proceeds were sold or pledged to another party other than Buyer, as the sale to Buyer, at a minimum, terminated any legal and beneficial ownership rights that any Debtor may have had in and to such Purchased Receivables and the proceeds therefrom.

to assets constituting property of the estate and its related holders. *See* 11 U.S.C. 364(c)(2) ("If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court…may authorize the obtaining of credit or the incurring of debt…(2) ***secured by a lien on property of the estate***…"); *see also* 11 U.S.C. 364(d)(1)(B) ("The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if…(B) there is adequate protection of the interest of the holder of the lien ***on the property of the estate*** on which such senior or equal lien is proposed to be granted.") (emphasis added).

14. Consistent therewith, the Buyer Representative submits that any interim order and any related relief with respect to the DIP Motion clarify that (i) the Purchased Receivables and any proceeds received by the Debtors in respect thereof, together with any funds received on account of receivables that were factored prior to the Petition Date, are expressly excluded from the assets subject to any liens granted to the DIP Secured Parties and Prepetition Secured Parties, (ii) pending further order of this Court, all obligations of the Debtors, and all rights, claims and remedies of the Buyer Representative and Buyer under the Receivables Facility Documents are expressly preserved, (iii) any and all causes of action, commercial tort claims and other rights and claims of the Buyer Representative and Buyer related to, or arising out of, the Purchased Receivables or the Receivables Facility Documents (including, without limitation, (a) in respect of any failure by the Debtors to convey such Purchased Receivables or their proceeds to the Buyer free from other claims, (b) Buyer's rights to pursue proceeds from the holders of same, and (c) any right to an administrative or superpriority administrative claim related thereto) are expressly excluded from the assets subject to any liens granted to the DIP Secured Parties and Prepetition Secured Parties, and (iv) no ownership interests and/or liens of the Buyer Representative or Buyer in respect of the

9

Receivables Facility or the Receivables Facility Documents shall be primed, altered or otherwise impaired in any manner by the liens or claims granted to the DIP Secured Parties or the Prepetition Secured Parties.

## II. Any Relief Granted With Respect To The Cash Management Motion Should Be Consistent With The Receivables Facility Documents

15. By the Cash Management Motion, the Debtors request authority to, among other things, make ordinary course changes to their Cash Management System without further order of this Court, including "to open new bank accounts and *close existing Bank Accounts*", subject only to the consent of the Required Lenders. (Cash Management Motion, Exh. A at ¶ 4) (emphasis added). As discussed above, however, the Debtor Servicer and each Debtor Seller maintain various accounts that are required for both Debtor and non-Debtor parties to comply with their obligations under the Receivables Purchase Agreement and the other Receivables Facility Documents. In addition, the Debtor Servicer has certain continuing obligations with respect to such accounts. The Buyer Representative seeks to clarify that any closure of the Bank Accounts, or any other changes to the Cash Management System relating to the Receivables Facility, should only be permitted under any interim order or further relief to the extent such actions would be in compliance with the Receivables Purchase Agreement and the other Receivables Facility Documents, including following any requisite consent of the Buyer Representative or other parties to such documents, or other required action thereunder, and requests that any interim order and any related relief with respect to the Cash Management Motion state as much.

16. Consistent therewith, the Buyer Representative submits that any interim order and any related relief with respect to the Cash Management Motion should provide, among other things, that (i) nothing in such order authorizes the Debtors to close any account held by the Debtor Servicer and each Debtor Seller in respect of the Receivables Facility and (ii) no Bank Account

held by a Debtor relating to the Receivables Purchase Agreement and the other Receivables Facility Documents that is subject to an account control agreement, lockbox agreement or similar agreement or arrangement may be terminated by the Debtors without the consent of the relevant parties.

17. In addition, to the extent that the Debtor Servicer and Debtor Sellers have any possession or control over accounts or funds that constitute property of the Buyer, Buyer Representative or any other non-Debtor, whether in Debtor or non-Debtor accounts (including any and all collections and funds received in respect of any Purchased Receivables), the Buyer Representative submits that any interim order, and any related relief, should provide that (i) the Debtors are required to promptly segregate (and continue with any prepetition segregation) and handle such funds strictly in accordance with the Receivables Facility Documents, (ii) the Debtors are not entitled to use or direct any such funds for any purpose other than as permitted under the Receivables Facility Documents, and (iii) pending further order of this Court, all obligations of the Debtors, and all rights, claims and remedies of the Buyer Representative and Buyer under the Receivables Facility Documents are expressly preserved.

## RESERVATION OF RIGHTS

18. The Buyer Representative hereby reserves all of its rights, claims, defenses, and remedies under the Receivables Facility Documents, including, without limitation, the right to amend, modify, or supplement this Limited Objection and to raise additional objections during any final hearing on the DIP Motion and/or Cash Management Motion.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Buyer Representative respectfully requests that this Court (i) grant interim relief on the DIP Motion and Cash Management Motion only to the extent consistent with this Limited Objection and (ii) grant such other and further relief as the Court may deem necessary and proper.

Dated: September 30, 2025
Houston, Texas

/s/ Charles S. Kelley
**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, Texas 77002
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com

Sean T. Scott (*pro hac vice* pending)
IL Bar No. 6273516
Kyle J. TumSuden (*pro hac vice* pending)
IL Bar No. 6334289
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Email: stscott@mayerbrown.com
         ktumsuden@mayerbrown.com

Richard A. Stieglitz (*pro hac vice* pending)
NY Bar No. 4227591
Dabin Chung (*pro hac vice* pending)
NY Bar No. 5535406
Lauren C. Blanchard (*pro hac vice* pending)
NY Bar No. 6148902
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Email: rstieglitz@mayerbrown.com
         dchung@mayerbrown.com
         lblanchard@mayerbrown.com

*Counsel to the Buyer Representative*

## **CERTIFICATE OF SERVICE**

I certify that on September 30, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which automatically sends notification of such filing to all attorneys of record.

*/s/ Charles S. Kelley*
Charles S. Kelley
