*Execution Version*

## AMENDMENT NO. 1 TO AMENDED AND RESTATED INTERCREDITOR AGREEMENT

AMENDMENT NO. 1 (this "**Amendment**"), dated as of July 31, 2020, to the Amended and Restated Intercreditor Agreement, dated as of February 26, 2019 (as amended, modified, refinanced and/or restated from time to time prior to the date hereof, the "**Existing ABL Intercreditor Agreement**"; and the Existing ABL Intercreditor Agreement, as amended by this Amendment, the "**Intercreditor Agreement**"), by and among BANK OF AMERICA, N.A., in its capacity as administrative agent and collateral agent under the ABL Loan Documents (as defined therein) (the "**ABL Collateral Agent**"), JEFFERIES FINANCE LLC, in its capacity as administrative agent and collateral agent under the First Lien Loan Documents (as therein defined) (as successor to Credit Suisse AG, Cayman Islands Branch, the "**First Lien Collateral Agent**"), JEFFERIES FINANCE LLC, in its capacity as administrative agent and collateral agent under the Second Lien Loan Documents (as therein defined) (as successor to Credit Suisse AG, Cayman Islands Branch, the "**Second Lien Collateral Agent**"; and, together with the First Lien Collateral Agent, the "**Term Collateral Agents**") and acknowledged and agreed by each other Loan Party (as defined therein).  Capitalized terms used herein and not otherwise defined herein shall have the respective meanings set forth in the Intercreditor Agreement.

### RECITALS:

WHEREAS, pursuant to Section 9.3(b) of the Intercreditor Agreement, the ABL Collateral Agent, the Term Collateral Agents, First Brands Group Intermediate, LLC (f/k/a Trico Group Holdings, LLC), a Delaware limited liability company ("**Holdings**"), First Brands Group, LLC (f/k/a Trico Group, LLC), a Delaware limited liability company (the "**Borrower**"), the ABL Guarantors and the Term Guarantors and the other Loan Parties party hereto have agreed to amend certain provisions of the Existing ABL Intercreditor Agreement as described herein (the "**ABL Intercreditor Amendments**"), and each such Person has agreed to the making of the ABL Intercreditor Amendments, subject to the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the premises and the agreements, provisions and covenants contained herein, the parties hereto hereby agree as follows:

**SECTION 1** *Amendments*.  On the Amendment No. 1 Effective Date, the Existing ABL Intercreditor Agreement (including the schedules and exhibits thereto) shall be amended to delete the stricken text (indicated textually in the same manner as the following example: ~~stricken text~~) and to add the double-underlined text (indicated textually in the same manner as the following example: <u>double-underlined text</u>) as set forth in the pages of the Intercreditor Agreement attached as <u>Annex I</u> hereto.

**SECTION 2**.  *Effectiveness of Amendment*.  This Amendment shall become effective as of the first date (the "**Amendment No. 1 Effective Date**") on which and each of the following conditions shall have been satisfied:

(a)       the ABL Collateral Agent, the First Lien Collateral Agent, the Second Lien Collateral Agent and the Loan Parties shall have executed this Amendment, and the ABL Collateral Agent and the Term Collateral Agents shall have each received executed counterparts of this Amendment;

(b)       the satisfaction of the conditions to the effectiveness of that certain Amendment No. 5 to First Lien Term Loan Agreement, dated as of the date hereof, by and among the Borrower, Holdings, the other Loan  Parties party thereto, the First Lien Collateral Agent, Credit Suisse AG, Cayman Islands Branch, as existing agent, and the lenders party thereto, except for satisfaction of the condition listed in Section 10(n)(iv) of Amendment No. 5 to First Lien Term Loan Agreement ;

**Debtors' Exhibit No. 14**
**Page 1 of 93**

(c)      the satisfaction of the conditions to the effectiveness of that certain Amendment No. 1 to Second Lien Term Loan Agreement, dated as of the date hereof, by and among the Borrower, Holdings, the other Loan  Parties party thereto, the Second Lien Collateral Agent, Credit Suisse AG, Cayman Islands Branch, as existing agent, and the lenders party thereto, except for satisfaction of the condition listed in Section 2(i)(iv) of Amendment No. 1 to the Second Lien Term Loan Agreement; and

(d)      the satisfaction of the conditions to the effectiveness of that certain Fifth Amendment to ABL Credit Agreement, dated as of the date hereof, by and among the Borrower, Holdings, the other Loan Parties party thereto, the ABL Collateral Agent and the lenders party thereto, except for satisfaction of the condition listed in Section 3(b)(iii) of the Fifth Amendment to ABL Credit Agreement.

**SECTION 3**.  *Intercreditor Agreement Governs*.   Except as expressly set forth herein, this Amendment shall not by implication or otherwise limit, impair, constitute a waiver of or otherwise affect the rights and remedies of any party under the Intercreditor Agreement, and shall not alter, modify, amend or in any way affect any of the terms, conditions, obligations, covenants or agreements contained in the Intercreditor Agreement, all of which are ratified and affirmed in all respects and shall continue in full force and effect.

**SECTION 4**.  *Counterparts*.  This Amendment may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.   Delivery of an executed counterpart of a signature page to this Amendment by facsimile or electronic (i.e., "pdf" or "tif") transmission shall be effective as delivery of a manually executed counterpart of this Amendment.   Any signature to this Amendment may be delivered by facsimile, electronic mail (including pdf) or any electronic signature complying with the U.S. federal ESIGN Act of 2000 or the New York Electronic Signature and Records Act or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes to the fullest extent permitted by applicable law.   Each of the parties hereto represents and warrants to the other parties that it has the corporate capacity and authority to execute this Amendment through electronic means and there are no restrictions for doing so in that party's constitutive documents.   For the avoidance of doubt, the foregoing also applies to any amendment, extension or renewal of this Amendment.

**SECTION 5**.  *Miscellaneous.*

(a)      *Incorporation*.  The provisions of this Amendment are deemed incorporated into the Intercreditor Agreement as if fully set forth therein.

(b)      *Entire Agreement*.  This Amendment and the Intercreditor Agreement in each case as amended, restated, amended and restated, supplemented or otherwise modified from time to time on or prior to the date hereof, constitute the entire agreement among the parties hereto with respect to the subject matter hereof and thereof and supersede all other prior agreements and understandings, both written and verbal, among the parties or any of them with respect to the subject matter hereof.

(c)      *Severability; Governing Law; Waiver of Right to Trial by Jury*.  The following provisions of the Intercreditor Agreement are hereby incorporated by reference as if set forth fully herein, *mutatis mutandis*: Section 9.7 (*Governing Law*) and Section 9.14 (*Waiver of Jury Trial*).

*[Remainder of page intentionally left blank]*

**Debtors' Exhibit No. 14**
**Page 2 of 93**

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed as of the date first above written.

BANK OF AMERICA, N.A., as ABL Collateral Agent

By: _____
    Name: Charles Fairchild
    Title: Senior Vice President

*[Signature Page - Amendment No. 1 to Intercreditor Agreement]*

JEFFERIES FINANCE LLC, as First Lien Collateral Agent

By: _____
Name: Paul Chisholm
Title: Managing Director

JEFFERIES FINANCE LLC, as Second Lien Collateral Agent

By: _____
Name: Paul Chisholm
Title: Managing Director

*[Signature Page – Amendment No. 1 to Intercreditor Agreement]*

CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH,
as the predecessor First Lien Collateral Agent and as the
predecessor Second Lien Collateral Agent (solely for the
purposes of Section 9.22 of the Intercreditor Agreement)

By: _____
       Name: Lingzi Nuong
       Title: Authorized Signatory

By: _____
       Name: Nicolas Thierry
       Title: Authorized Signatory

[*Signature Page – Amendment No. 1 to Intercreditor Agreement*]

DocuSign Envelope ID: BDAF6788-B874-4BE2-BEFF-05EE75224265

ACKNOWLEDGED AND ACCEPTED:

**ASC Industries, Inc.**
**Autolite Operations LLC**
**AVM Export, Inc.**
**Carter Fuel Systems, LLC**
**Carter Fuel Export, Inc.**
**First Brands Group, LLC**
**First Brands Group Holdings, LLC**
**FRAM Group IP LLC**
**FRAM Group Operations LLC**
**FRAMAUTO HOLDINGS, LLC**
**Heatherton Holdings, LLC**
**KTRI Holdings, Inc.**
**KTRI Offshore Holdings, LLC**
**Premier Marketing Group, LLC**
**Specialty Pumps Group, Inc.**
**Strongarm, LLC**
**Trico Holding Corporation**
**Trico Products Corporation**
**Trico Technologies Corporation**
**Airtex Industries, LLC**
**Airtex Products, LP**
**CHAMPION LABORATORIES, INC.**
**FUEL FILTER TECHNOLOGIES, INC.**
**UCI Acquisition Holdings (No. 4) LLC**
**UCI International Holdings, Inc.**
**UCI International Holdings Parent, Inc.**
**UCI International, LLC**
**UCI Pennsylvania, Inc.**
**UCI-Airtex Holdings, Inc.**
**United Components, LLC**
**Universal Auto Filter LLC**
**BPI Acquisition Company, Inc.**
**BPI Holdings International, Inc.**
**Brake Parts Holdings, Inc.**
**Brake Parts Inc LLC**
**Brake Parts Inc India LLC**
**BPI EC, LLC**
**Brake Parts Inc China LLC**

By: _____

Name:   Brian Troyer
Title:   General Counsel, EVP & Secretary

*[Signature Page – Amendment No. 1 to Intercreditor Agreement]*

**ANNEX I**
[See attached]

*Execution Version*

**Annex I**

AMENDED AND RESTATED INTERCREDITOR AGREEMENT

**dated as of**

**February 26, 2019,**

**(as amended on July 31, 2020),**

**among**

**BANK OF AMERICA, N.A.,**
**as ABL Collateral Agent,**

**CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH,**
**JEFFERIES FINANCE LLC,**
**as First Lien Collateral Agent,**

**CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH,**
**JEFFERIES FINANCE LLC,**
**as Second Lien Collateral Agent,**

**EACH ADDITIONAL JUNIOR OBLIGATIONS AGENT**

**and**

**EACH ADDITIONAL PARI PASSU OBLIGATIONS AGENT**

#4814-6502-9968
#91731356v11

**Table of Contents**

**Page**

SECTION 1. DEFINITIONS ................................................................................................ 2
    1.1.    Defined Terms .................................................................................................. 2
    1.2.    Construction ................................................................................................... 19
    1.3.    Terms Defined in UCC ................................................................................. ~~19~~20

SECTION 2. LIEN PRIORITIES ......................................................................................... 20
    2.1.    Relative Priorities ......................................................................................... 20
    2.2.    Prohibition on Contesting Liens or Obligations ...................................... ~~22~~23
    2.3.    No New Liens ............................................................................................. ~~22~~23
    2.4.    Cooperation in Designating Collateral ..................................................... ~~23~~24
    2.5.    Revolving Nature of ABL Obligations ..................................................... ~~23~~24
    2.6.    No Subordination of the Relative Priority of Claims ................................ 24

SECTION 3. EXERCISE OF REMEDIES ........................................................................... 24
    3.1.    Exercise of Remedies by Term Collateral Agents ...................................... 24
    3.2.    Exercise of Remedies by ABL Collateral Agent ........................................ 25
    3.3.    Exclusive Enforcement Rights ...................................................................... 26
    3.4.    Claimholders Permitted Actions ............................................................... ~~26~~27
    3.5.    Retention of Proceeds ................................................................................ ~~28~~29
    3.6.    Non-Interference .......................................................................................... 29
    3.7.    Inspection and Access Rights .................................................................... ~~29~~30
    3.8.    Sharing of Information and Access ........................................................... ~~31~~32
    3.9.    Tracing of and Priorities in Proceeds .......................................................... 32
    3.10.    Permits and Licenses ................................................................................ ~~32~~33

SECTION 4. PROCEEDS ................................................................................................ ~~33~~34
    4.1.    Application of Proceeds ............................................................................. ~~33~~34
    4.2.    Turnover ..................................................................................................... ~~34~~35

SECTION 5. RELEASES; DISPOSITIONS; OTHER AGREEMENTS ............................... ~~35~~36
    5.1.    Releases ...................................................................................................... ~~35~~36
    5.2.    Insurance .................................................................................................... ~~37~~38
    5.3.    Amendments; Refinancings .......................................................................... 38
    5.4.    Bailee for Perfection ...................................................................................... 40
    5.5.    When Discharge of Obligations Deemed to Not Have Occurred .................. 42
    5.6.    Injunctive Relief ........................................................................................... 43
    5.7.    Obligations Purchase Right ....................................................................... ~~43~~44

SECTION 6. INSOLVENCY PROCEEDINGS .................................................................. ~~44~~45
    6.1.    Financing ...................................................................................................... 45
    6.2.    Sales .......................................................................................................... ~~46~~47
    6.3.    Relief from the Automatic Stay .................................................................... 47
    6.4.    Adequate Protection ................................................................................... ~~47~~48
    6.5.    Section 1111(b) of the Bankruptcy Code ..................................................... 49
    6.6.    Avoidance Issues .......................................................................................... 49
    6.7.    Plan of Reorganization .............................................................................. ~~49~~50
    6.8.    Separate Grants of Security and Separate Classification .............................. 50

(i)

6.9.    Post-Petition Interest ........................................................................... ~~50~~51

SECTION 7. RELIANCE; WAIVERS; ETC. ................................................................. 51

7.1.    Reliance ................................................................................................ 51
7.2.    No Warranties or Liability .................................................................. ~~51~~52
7.3.    No Waiver of Lien Priorities ............................................................... 52
7.4.    Obligations Unconditional .................................................................. ~~55~~56

SECTION 8. REPRESENTATIONS AND WARRANTIES .................................................. 56

8.1.    Representations and Warranties of Each Collateral Agent ............................ 56

SECTION 9. MISCELLANEOUS .................................................................................. 56

9.1.    Conflicts............................................................................................... 56
9.2.    Continuing Nature of this Agreement; Severability ................................. ~~56~~57
9.3.    Amendments; Waivers ......................................................................... ~~56~~57
9.4.    Additional Obligations ........................................................................ ~~57~~58
9.5.    Information Concerning Financial Condition of Certain Entities ............................ ~~58~~59
9.6.    Subrogation .......................................................................................... 59
9.7.    Governing Law ..................................................................................... ~~59~~60
9.8.    Submission to Jurisdiction ................................................................... ~~59~~60
9.9.    Notices.................................................................................................. ~~60~~61
9.10.   Successors and Assigns ........................................................................ 61
9.11.   Headings .............................................................................................. ~~61~~62
9.12.   Severability .......................................................................................... ~~61~~62
9.13.   Counterparts; Integration; Effectiveness ............................................ ~~61~~62
9.14.   WAIVER OF JURY TRIAL .................................................................. ~~61~~62
9.15.   Additional Loan Parties ....................................................................... 62
9.16.   No Third Party Beneficiaries ............................................................... 62
9.17.   Provisions Solely to Define Relative Rights ........................................ 62
9.18.   Specific Performance .......................................................................... ~~62~~63
9.19.   Further Assurances .............................................................................. ~~62~~63
9.20.   ABL Intercreditor Agreement Acknowledgement ............................. ~~62~~63
9.21.   Intercreditor Agreements .................................................................... ~~62~~63
9.22.   Amendment and Restatement; Successor Agents .............................. 63

#4814-6502-9968
#91731356v11

(ii)

This **AMENDED AND RESTATED INTERCREDITOR AGREEMENT** is dated as of February 26, 2019, and entered into by and among **BANK OF AMERICA, N.A.**, in its capacity as administrative agent and collateral agent under the ABL Loan Documents (as defined below), including its successors and assigns in such capacity from time to time (the "ABL Collateral Agent"), on behalf of itself and the other ABL Claimholders (as defined below), ~~CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH~~JEFFERIES FINANCE LLC (as successor to Credit Suisse AG, Cayman Islands Branch), in its capacity as collateral agent under the First Lien Loan Documents (as defined below), including its successors and assigns in such capacity from time to time (the "First Lien Collateral Agent"), on behalf of itself and the other First Lien Claimholders (as defined below), ~~CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH~~ JEFFERIES FINANCE LLC (as successor to Credit Suisse AG, Cayman Island Branch) in its capacity as collateral agent under the Second Lien Loan Documents (as defined below), including its successors and assigns in such capacity from time to time (the "Second Lien Collateral Agent"; and, together with the First Lien Collateral Agent, the "Term Collateral Agents"), on behalf of itself and the other Second Lien Claimholders (as defined below), and each **ADDITIONAL JUNIOR OBLIGATIONS AGENT** and each **ADDITIONAL PARI PASSU OBLIGATIONS AGENT** that, in each case, shall have become a party hereto pursuant to Section 9.4.

## RECITALS

Reference is made to that certain Intercreditor Agreement, dated as of February 2, 2018, among the ABL Collateral Agent, the First Lien Collateral Agent and each Additional Pari Passu Obligations Agent party thereto from time to time (the "Existing Intercreditor Agreement").

On the date hereof, the parties hereto have agreed to amend and restate the Existing Intercreditor Agreement pursuant to Section 9.3(b) hereof, on the terms set forth herein.

Trico Group, LLC, a Delaware limited liability company (the "Borrower"), Trico Group Holdings, LLC, a Delaware limited liability company ("Parent"), certain of the Borrower's Subsidiaries from time to time party thereto as co-borrowers (such Subsidiaries, collectively, the "ABL Co-Borrowers"; together with the Borrower, collectively, the "ABL Borrowers"), the lenders from time to time party thereto, Bank of America, N.A., as administrative agent, and the ABL Collateral Agent, have entered into that certain ABL Credit Agreement, dated as of February 2, 2018 (the "ABL Credit Agreement").

Parent, certain of Parent's Subsidiaries from time to time party thereto as guarantors (Parent and such Subsidiaries, collectively, the "ABL Guarantors") and the  ABL Collateral Agent have entered into that certain ABL Guaranty, dated as of  February 2, 2018 (the "ABL Guarantee Agreement").

The Borrower, Parent, the lenders from time to time party thereto and Jefferies Finance LLC (as successor to Credit Suisse AG, Cayman Islands Branch), as administrative agent (the "First Lien Administrative Agent") and as First Lien Collateral Agent, have entered into that certain First Lien Term Loan Agreement, dated as of February 2, 2018 (the "First Lien Credit Agreement").

Parent, certain of Parent's Subsidiaries from time to time party thereto as guarantors (Parent and such Subsidiaries, collectively, the "First Lien Guarantors"), the First Lien Administrative Agent and the First Lien Collateral Agent have entered into that certain First Lien Guaranty, dated as of February 2, 2018 (the "First Lien Guarantee Agreement").

The Borrower, Parent, the lenders from time to time party thereto and Jefferies Finance LLC (as successor to Credit Suisse AG, Cayman Islands Branch), as administrative agent (the "Second Lien Administrative Agent"; and, together with the First Lien Administrative Agent, the "Term Administrative Agents") and as Second Lien Collateral Agent, have entered into that certain Second Lien Term Loan

Agreement, dated as of the date hereof (the "Second Lien Credit Agreement"; and, together with the First Lien Credit Agreement, the "Term Credit Agreements").

Parent, certain of Parent's Subsidiaries from time to time party thereto as guarantors (Parent and such Subsidiaries, collectively, the "Second Lien Guarantors"; and, together with the First Lien Guarantors, the "Term Guarantors"), the Second Lien Administrative Agent and the Second Lien Collateral Agent have entered into that certain Second Lien Guaranty, dated as of the date hereof (the "Second Lien Guarantee Agreement").

The obligations of the ABL Borrowers that are U.S. Loan Parties and the ABL Guarantors that are U.S. Loan Parties under the ABL Credit Agreement and the U.S. ABL Guarantee Agreement are to be secured (a) on a first priority basis, by Liens on the ABL Priority Collateral of such ABL Borrowers and such ABL Guarantors and (b) on a third priority basis, by Liens on the Term Priority Collateral of such ABL Borrowers and such ABL Guarantors.

The obligations of the Borrower and the Term Guarantors under the First Lien Credit Agreement and the First Lien Guarantee Agreement are to be secured (a) on a first priority basis, by Liens on the Term Priority Collateral of the Borrower and the Term Guarantors and (b) on a second priority basis, by Liens on the ABL Priority Collateral of the Borrower and the Term Guarantors.

The obligations of the Borrower and the Term Guarantors under the Second Lien Credit Agreement and the Second Lien Guarantee Agreement are to be secured (a) on a second priority basis, by Liens on the Term Priority Collateral of the Borrower and the Term Guarantors and (b) on a third priority basis, by Liens on the ABL Priority Collateral of the Borrower and the Term Guarantors.

The ABL Loan Documents and the Term Loan Documents provide, among other things, that the ABL Claimholders and the Term Claimholders shall set forth in this Agreement their respective rights and remedies with respect to the Collateral and certain other matters.

The ABL Collateral Agent, on behalf of itself and the other ABL Claimholders, the First Lien Collateral Agent, on behalf of itself and the other First Lien Claimholders, and the Second Lien Collateral Agent, on behalf of itself and the other Second Lien Claimholders have agreed to the intercreditor and other provisions set forth in this Agreement.

## **AGREEMENT**

In consideration of the foregoing, the mutual covenants and obligations herein set forth and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

**SECTION 1.  Definitions.**

1.1.  Defined Terms.  As used in the Agreement, the following terms shall have the following meanings:

"ABL Borrowers" has the meaning set forth in the recitals to this Agreement.

"ABL Cash Management Agreement" means "Cash Management Agreement" as such term is defined in the ABL Credit Agreement.

#4814-6502-9968
#9173I356v11

"<u>ABL Cash Management Obligations</u>" means "Cash Management Obligations" as such term is defined in the ABL Credit Agreement.

"<u>ABL Cash Management Bank</u>" means "Cash Management Bank" as such term is defined in the ABL Credit Agreement.

"<u>ABL Claimholders</u>" means the ABL Collateral Agent, the ABL Lenders, the ABL Issuing Banks, the ABL Swing Line Lender, and the other holders of ABL Obligations (including any such holders that are ABL Cash Management Banks or ABL Hedge Banks).

"<u>ABL Collateral</u>" means any and all assets of any Loan Party, now existing or hereafter acquired, whether real, personal or mixed, subject, or purported under the terms of any ABL Collateral Document to be subject, to any Lien securing any ABL Obligations.

"<u>ABL Collateral Agent</u>" has the meaning set forth in the preamble to this Agreement.

"<u>ABL Collateral Documents</u>" means the "Collateral Documents" or "Security Documents" (or equivalent term) as defined in any ABL Loan Document and any documents that are designated under any ABL Loan Document as "ABL Collateral Documents" for purposes of this Agreement.

"<u>ABL Credit Agreement</u>" has the meaning set forth in the recitals to this Agreement.

"<u>ABL Default</u>" means any "Event of Default" as such term is defined in the ABL Credit Agreement.

"<u>ABL Guarantee Agreement</u>" has the meaning set forth in the recitals to this Agreement.

"<u>ABL Guarantors</u>" has the meaning set forth in the recitals to this Agreement.

"<u>ABL Hedge Bank</u>" means any counterparty to an ABL Secured Hedge Agreement entered into with any ABL Borrower or ABL Guarantor that is an Agent, Arranger or Lender or any of their respective Affiliates as of the Closing Date or at the time such Person has entered into an ABL Secured Hedge Agreement.

"<u>ABL Issuing Banks</u>" means the "L/C Issuers" as such term is defined in the ABL Credit Agreement.

"<u>ABL Lenders</u>" means the "Lenders" as such term is defined in the ABL Credit Agreement.

"<u>ABL Lenders Lien</u>" means all Liens on the Collateral securing the ABL Obligations, whether created under the ABL Collateral Documents or acquired by possession, statute (including any judgment lien), operation of law, subrogation or otherwise and whether or not created following the commencement of any Insolvency Proceeding, now or hereafter held by or on behalf of the ABL Collateral Agent or any other ABL Claimholders, or any agent or trustee therefor.

"<u>ABL Loan Documents</u>" means the ABL Credit Agreement, the ABL Guarantee Agreement, the ABL Collateral Documents and each of the other "Loan Documents" (as defined in the ABL Credit Agreement), and any other document or instrument (including any ABL Cash Management Agreement or any ABL Secured Hedge Agreement) executed or delivered at any time in connection with any ABL Obligations.

#4814-6502-9968
#91731356v11

"<u>ABL Obligations</u>" means the "Secured Obligations" as such term is defined in the ABL Credit Agreement (or any equivalent term in any Refinancing thereof), including (a) all principal of and interest (including any Post-Petition Interest) and premium (if any) on all loans made or other indebtedness issued or incurred pursuant to the ABL Credit Agreement, (b) all reimbursement obligations (if any) and interest thereon (including any Post-Petition Interest) with respect to any letter of credit or similar instruments issued pursuant to the ABL Credit Agreement, (c) all ABL Cash Management Obligations and ABL Secured Hedging Obligations, and (d) all guarantee obligations, fees, expenses and other amounts payable from time to time pursuant to the ABL Loan Documents, in each case whether or not allowed or allowable in an Insolvency Proceeding. To the extent any payment with respect to any ABL Obligation (whether by or on behalf of any Loan Party, as proceeds of security, enforcement of any right of setoff or otherwise) is declared to be a fraudulent conveyance or a preference in any respect, set aside or required to be paid to a debtor in possession, any First Lien Claimholder, receiver or similar Person, then the obligation or part thereof originally intended to be satisfied shall, for the purposes of this Agreement and the rights and obligations of the ABL Claimholders and the First Lien Claimholders, be deemed to be reinstated and outstanding as if such payment had not occurred.

"<u>ABL Priority Cap</u>" means, as of any date of determination, the sum of:

(a)        an aggregate principal amount not to exceed $~~150,000,000~~250,000,000; plus

(b)        Permitted Overadvances (as defined in the ABL Credit Agreement as in effect on the date hereof, without giving effect to any amendments thereto made after the date hereof) in an aggregate principal amount not to exceed $15,000,000; <u>provided</u> that Permitted Overadvances in excess of the ABL Commitments shall be permitted for purposes of this definition; plus

(c)        all ABL Cash Management Obligations and ABL Secured Hedging Obligations to the extent constituting ABL Obligations; plus

(d)        all other ABL Obligations but only in respect of or attributable to subsections (a), (b) and (c) above (including ABL Obligations constituting accrued and unpaid interest (including interest accruing at the default interest rate and any Post-Petition Interest), premiums (including tender premiums and prepayment premiums), underwriting discounts, fees, commissions and expenses (including original issue discount, upfront fees or initial yield payments), attorneys' fees, costs, expenses and indemnities).

"<u>ABL Priority Collateral</u>" means all of the following assets that constitute Collateral, whether now owned or hereafter acquired (including any of the following assets acquired or created after the commencement of any Insolvency Proceeding) and wherever located (including, for the avoidance of doubt, any such assets that, but for the application of Section 552 of the Bankruptcy Code (or any provision of any other Bankruptcy Law), would constitute ABL Collateral):

(a)        all Accounts (other than Accounts arising under agreements for the sale of Term Priority Collateral described in clauses (a) through (f) of the definition of such term to the extent constituting identifiable Proceeds of such Term Priority Collateral);

(b)        Inventory;

(c)        all Payment Intangibles, including all corporate and other tax refunds and including all rights to payment arising therefrom in a credit-card, debit-card, prepaid-card or other payment-card transaction (other than any Payment Intangibles arising under agreements for the sale of Term Priority Collateral described in clauses (a) through (f) of the definition of such term to the extent constituting identifiable Proceeds of such Term Priority Collateral);

4

(d)      all Deposit Accounts, Securities Accounts and Commodity Accounts (in each case, subject to Section 3.9, other than the Term Priority Accounts) and all Money, Financial Assets, cash equivalents and other assets contained in, or credited to, and all Securities Entitlements arising from, any such Deposit Accounts, Securities Accounts or Commodity Accounts (in each case, subject to Section 3.9, except (i) to the extent constituting identifiable Proceeds of Term Priority Collateral and (ii) Equity Interests or Instruments evidencing indebtedness to the extent such indebtedness is not relating to, evidencing or owing in respect of, ABL Priority Collateral) (for the avoidance of doubt all Deposit Accounts and Securities Accounts containing "Qualified Cash" (as defined in the ABL Credit Agreement) constitute ABL Priority Collateral);

(e)      (i) 50% of any business interruption insurance and (ii) all rights to credit insurance with respect to any Accounts (in each case, regardless of whether the ABL Collateral Agent is the loss payee thereof);

(f)      to the extent evidencing, governing, securing or otherwise relating to any of the items constituting ABL Priority Collateral under clauses (a) through (e) above, all (i) General Intangibles, including all purchase agreements, contractual arrangements, and purchase orders with foreign vendors and foreign purchasers (excluding Intellectual Property (but subject to the rights of the ABL Collateral Agent under Section 3.10), Indebtedness (or any evidence thereof) owing to any Loan Party by Parent or any of the subsidiaries of Parent, and any Equity Interests and including any and all contracts, contract rights and other General Intangibles providing for or relating to the sale or other Disposition of Inventory), (ii) Instruments (including Promissory Notes), (iii) Documents (including each warehouse receipt or bill of lading covering any Inventory), (iv) insurance policies (regardless of whether the ABL Collateral Agent is the loss payee thereof), (v) export or other licenses from any Governmental Authority to sell or to manufacture Inventory, and (vi) Chattel Paper (including all Electronic Chattel Paper and all Tangible Chattel Paper);

(g)      all collateral and guarantees given by any other Person with respect to any of the foregoing, and all other Supporting Obligations (including Letter-of-Credit Rights) with respect to any of the foregoing;

(h)      all books and Records to the extent relating to any of the foregoing (including customer lists, files, correspondence, tapes, computer programs, printouts and computer records); and

(i)      all Products and Proceeds of the foregoing.

Notwithstanding the foregoing, the term "ABL Priority Collateral" shall not include any assets referred to in clauses (a), (b) and (c) of the definition of the term "Term Priority Collateral". Proceeds of Excluded Assets that would otherwise constitute ABL Priority Collateral shall be deemed to be ABL Priority Collateral.

"ABL Secured Hedge Agreement" means "Secured Hedge Agreement" as such term is defined in the ABL Credit Agreement.

"ABL Secured Hedging Obligations" means any "Secured Obligations" (as defined in the ABL Credit Agreement) in respect of any ABL Secured Hedge Agreement.

"ABL Standstill Period" has the meaning set forth in Section 3.2(a).

"ABL Swing Line Lender" means the "Swing Line Lender" as such term is defined in the ABL Credit Agreement.

#4814-6502-9968
#91731356v11

"Additional Agent" means any Additional Pari Passu Obligations Agent or Additional Junior Obligations Agent.

"Additional Junior Obligations" means Indebtedness of the Loan Parties incurred following the date of this Agreement, including any "Incremental Term Facility", "Incremental Equivalent Debt", "Refinancing Facility" and "Specified Term Refinancing Debt" (in each case, as such terms are defined in the Second Lien Credit Agreement) (together with all obligations in respect of such Indebtedness, including all principal, premium, interest, fees, attorney's fees, costs, charges, expenses, reimbursement obligations, indemnities, guarantees, and all other amounts payable under or secured by any Additional Junior Obligations Agreement (including, in each case, all Post-Petition Interest accruing on or after the commencement of any Insolvency Proceeding at the rate provided in the relevant Additional Junior Obligations Agreement, whether or not a claim for such Post-Petition Interest is allowed or allowable in any such Insolvency Proceeding)) to the extent (a) such Indebtedness and such obligations in respect of such Indebtedness are permitted by the terms of the ABL Credit Agreement, the Term Credit Agreements, each Additional Pari Passu Obligations Agreement then in effect and each other Additional Junior Obligations Agreement then in effect to be secured by Liens on the Collateral ranking junior in priority to the Liens on the Collateral securing the First Lien Obligations and, with respect to any such Collateral constituting ABL Priority Collateral, junior in priority to the ABL Lenders Liens and (b) the Loan Parties have granted Liens on the Collateral to secure such Indebtedness and such obligations in respect of such Indebtedness.

"Additional Junior Obligations Agent" means any Person appointed to act as trustee, collateral agent or a similar representative for the holders of Additional Junior Obligations pursuant to any Additional Junior Obligations Agreement.

"Additional Junior Obligations Agreement" means the indenture, credit agreement or other definitive agreement under which any Additional Junior Obligations are incurred.

"Additional Pari Passu Obligations" means Indebtedness of the Loan Parties incurred following the date of this Agreement, including any "Incremental Term Facility", "Incremental Equivalent Debt", "Refinancing Facility" and "Specified Term Refinancing Debt" (in each case, as such terms are defined in the First Lien Credit Agreement) (together with all obligations in respect of such Indebtedness, including all principal, premium, interest, fees, attorney's fees, costs, charges, expenses, reimbursement obligations, indemnities, guarantees, and all other amounts payable under or secured by any Additional Pari Passu Obligations Agreement (including, in each case, all Post-Petition Interest accruing on or after the commencement of any Insolvency Proceeding at the rate provided in the relevant Additional Pari Passu Obligations Agreement, whether or not a claim for such Post-Petition Interest is allowed or allowable in any such Insolvency Proceeding)) to the extent (a) such Indebtedness and such obligations in respect of such Indebtedness are permitted by the terms of the ABL Credit Agreement, the Term Credit Agreements, each Additional Junior Obligations Agreement then in effect and each other Additional Pari Passu Obligations Agreement then in effect to be secured by Liens on the Collateral ranking pari passu in priority with the Liens on the Collateral securing the First Lien Obligations (without regard to the control of remedies) and, with respect to any Collateral constituting ABL Priority Collateral, ranking junior in priority to the ABL Lenders Liens and (b) the Loan Parties have granted Liens on the Collateral to secure such Indebtedness and such obligations in respect of such Indebtedness.

"Additional Pari Passu Obligations Agent" means any Person appointed to act as trustee, collateral agent or a similar representative for the holders of Additional Pari Passu Obligations pursuant to any Additional Pari Passu Obligations Agreement.

6

"<u>Additional Pari Passu Obligations Agreement</u>" means the indenture, credit agreement or other definitive agreement under which any Additional Pari Passu Obligations are incurred.

"<u>Administrative Agent</u>" means the ABL Administrative Agent or the Term Administrative Agents, as the context may require.

"<u>Agreement</u>" means this Amended and Restated Intercreditor Agreement, as it may be amended, restated, supplemented or otherwise modified from time to time.

"<u>Bankruptcy Code</u>" means Title 11 of the United States Code (11 U.S.C. § 101 *et seq.*).

"<u>Borrower</u>" has the meaning set forth in the recitals to this Agreement.

"<u>Business Day</u>" means any day other than a Saturday, Sunday or other day on which commercial banks in New York City are authorized or required by law to remain closed.

"<u>Cash Collateral</u>" has the meaning set forth in Section 6.1.

"<u>Claimholders</u>" means the ABL Claimholders and the Term Claimholders, or any of them, as the context may require.  Any references herein to "related" Claimholders of any Collateral Agent shall mean, with respect to the ABL Collateral Agent, the ABL Claimholders and, with respect to the Term Collateral Agents, the Term Claimholders.

"<u>Class</u>" refers to either (a) the ABL Collateral Agent, the ABL Claimholders, the ABL Obligations, the ABL Priority Collateral, the ABL Credit Agreement, the ABL Collateral Documents and the ABL Loan Documents, on the one hand, as opposed to (b) the Term Collateral Agents, the Term Claimholders, the Term Obligations, the Term Priority Collateral, the Term Credit Agreements, the Term Collateral Documents and the Term Loan Documents, on the other hand.  Solely for purposes of this Agreement and subject to Section 9.21, the First Lien Collateral Agents, the First Lien Claimholders, the First Lien Obligations, the First Lien Priority Collateral, the First Lien Credit Agreements, the First Lien Collateral Documents, the First Lien Loan Documents, the Second Lien Collateral Agents, the Second Lien Claimholders, the Second Lien Obligations, the Second Lien Priority Collateral, the Second Lien Credit Agreements, the Second Lien Collateral Documents and the Second Lien Loan Documents shall be deemed to be a single Class.

"<u>Collateral</u>" means all of the assets of any Loan Party, now existing or hereafter acquired, whether real, personal or mixed, that constitute ABL Collateral or Term Collateral.

"<u>Collateral Agent</u>" means the ABL Collateral Agent or the Term Collateral Agents, as the context may require.

"<u>Collateral Documents</u>" means the ABL Collateral Documents and the Term Collateral Documents, or any of them, as the context may require.

"<u>Controlling Collateral Agent</u>" means the ABL Collateral Agent and the Controlling Term Agent.

"<u>Controlling Term Agent</u>" means (a) at any time prior to the Discharge of First Lien Obligations (other than amounts that exceed the Maximum First Priority Obligations Amount (as such term is defined in the First Lien/Second Lien Intercreditor Agreement)), the "Designated First Priority Representative" (as such term is defined in the First Lien/Second Lien Intercreditor Agreement) and (b)

#4814-6502-9968
#9173356v11

after the Discharge of First Lien Obligations (other than amounts that exceed the Maximum First Priority Obligations Amount (as such term is defined in the First Lien/Second Lien Intercreditor Agreement)) has occurred and the ABL Collateral Agent has received written notice thereof from the Borrower and the "Designated Second Priority Representative" (as such term is defined First Lien/Second Lien Intercreditor Agreement), such Designated Second Priority Representative.

"Credit Documents" means the ABL Loan Documents and the Term Loan Documents, or any of them, as the context may require.

"DIP Financing" has the meaning set forth in Section 6.1(a).

"Discharge" means Discharge of ABL Obligations or Discharge of Term Obligations, as the context requires.

"Discharge of ABL Obligations" means, except to the extent otherwise expressly provided in Sections 5.5 and 6.6, (a) the ABL Obligations (other than those that constitute Unasserted Contingent Obligations) have been paid in full (or cash collateralized or defeased in accordance with the terms of the ABL Loan Documents), (b) all commitments to extend credit under the ABL Loan Documents have been terminated and (c) there are no outstanding letters of credit or similar instruments issued under the ABL Loan Documents (other than such as have been cash collateralized or defeased in accordance with the terms of the ABL Loan Documents). Upon the written request by the Controlling Term Agent or any ABL Borrower, the ABL Administrative Agent shall promptly deliver a written notice to the Controlling Term Agent and the ABL Borrowers stating that (to the extent such events have occurred) the events described in clauses (a), (b) and (c) have occurred.

"Discharge of ABL Priority Obligations" means the Discharge of ABL Obligations other than the principal amounts under the ABL Loan Documents that exceed the ABL Priority Cap.

"Discharge of First Lien Obligations" means, except to the extent otherwise expressly provided in Sections 5.5 and 6.6, (a) the First Lien Obligations (other than those that constitute Unasserted Contingent Obligations) have been paid in full (or cash collateralized or defeased in accordance with the terms of the First Lien Loan Documents), (b) all commitments to extend credit under the First Lien Loan Documents have been terminated and (c) there are no outstanding letters of credit or similar instruments issued under the First Lien Loan Documents (other than such as have been cash collateralized or defeased in accordance with the terms of the First Lien Loan Documents). Upon the written request by ABL Collateral Agent, Second Lien Collateral Agent or the Borrower, the First Lien Collateral Agent shall promptly deliver a written notice to ABL Collateral Agent, Second Lien Collateral Agent and the Borrower stating that (to the extent such events have occurred) the events described in clauses (a), (b) and (c) have occurred.

"Discharge of First Lien Priority Obligations" means the Discharge of First Lien Obligations other than the principal amounts under the First Lien Loan Documents that exceed the First Lien Priority Cap.

"Discharge of Second Lien Obligations" means, except to the extent otherwise expressly provided in Sections 5.5 and 6.6, (a) the Second Lien Obligations (other than those that constitute Unasserted Contingent Obligations) have been paid in full (or cash collateralized or defeased in accordance with the terms of the Second Lien Loan Documents), (b) all commitments to extend credit under the Second Lien Loan Documents have been terminated and (c) there are no outstanding letters of credit or similar instruments issued under the Second Lien Loan Documents (other than such as have been cash collateralized or defeased in accordance with the terms of the Second Lien Loan Documents). Upon the

8

written request by ABL Collateral Agent, First Lien Collateral Agent or the Borrower, the Second Lien Collateral Agent shall promptly deliver a written notice to ABL Collateral Agent, First Lien Collateral Agent and the Borrower stating that (to the extent such events have occurred) the events described in clauses (a), (b) and (c) have occurred.

"<u>Discharge of Second Lien Term Priority Obligations</u>" means the Discharge of Second Lien Obligations other than the principal amounts under the Second Lien Loan Documents that exceed the Second Lien Priority Cap.

"<u>Discharge of Term Obligations</u>" means the time at which both the Discharge of First Lien Obligations and Discharge of Second Lien Obligations shall have occurred.

"<u>Discharge of Term Priority Obligations</u>" means the time at which both the Discharge of First Lien Priority Obligations and Discharge of Second Lien Term Priority Obligations shall have occurred.

"<u>Disposition</u>" or "<u>Dispose</u>" means the sale, assignment, transfer, license, lease (as lessor), exchange or other disposition (including any sale and leaseback transaction) of any Collateral.

"<u>Enforcement Notice</u>" means a written notice delivered by the ABL Collateral Agent to the Controlling Term Agent stating that an ABL Default or by any Term Collateral Agent to the other Collateral Agents stating that a Term Default, as applicable, has occurred and is continuing and that an Exercise of Secured Creditor Remedies has commenced or is about to be commenced with respect to the ABL Priority Collateral or the Term Priority Collateral, as applicable.

"<u>Enforcement Period</u>" means the period of time following the receipt by any Collateral Agent of an Enforcement Notice from another Collateral Agent and continuing until the earliest of (a) (i) in case of an Enforcement Period commenced by the Controlling Term Agent, the Discharge of Term Priority Obligations and (ii) in the case of an Enforcement Period commenced by the ABL Collateral Agent, the Discharge of ABL Priority Obligations, (b) the ABL Collateral Agent or the Controlling Term Agent, as applicable, agreeing in writing to terminate the Enforcement Period initiated by such Collateral Agent and (c) the date on which the ABL Default or the Term Default, as applicable, that was the subject of the Enforcement Notice relating to such Enforcement Period has been cured to the satisfaction of the ABL Collateral Agent or the Controlling Term Agent, as applicable, or waived in writing in accordance with the requirements of the applicable Credit Documents.

"<u>Equity Interests</u>" means any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation, any and all equivalent ownership interests in a Person (other than a corporation), including partnership interests and membership interests, and any and all warrants, rights or options to purchase or other arrangements or rights to acquire any of the foregoing, but excluding for the avoidance of doubt any Indebtedness convertible into or exchangeable for any of the foregoing.

"<u>Excluded Assets</u>" shall mean (a) with respect to any Term Priority Collateral, any "Excluded Assets" as such term is defined in the Term Loan Documents as in effect on the date hereof or (b) with respect to any ABL Priority Collateral, any "Excluded Assets" as such term is defined in the U.S. ABL Loan Documents as in effect on the date hereof.

"<u>Exercise any Secured Creditor Remedies</u>" or "<u>Exercise of Secured Creditor Remedies</u>" means (a) the taking of any action (or joining with any other Person (other than the other Collateral Agents to the extent provided in Section 3.4(i)) in taking any action) to enforce any Lien in respect of the Collateral, including the institution of any foreclosure proceedings, the giving of notice of any public or private sale

9

#4814-6502-9968
#9173356v11

or other Disposition pursuant to Article 8 or Article 9 of the UCC or other applicable law or any action to vacate, obtain relief from or modify a stay or other injunction restricting any such enforcement or any other exercise of rights or remedies with respect to any Collateral described in this definition, (b) after the occurrence of a Term Default or an ABL Default, as applicable, the exercise of (or joining with any other Person (other than the other Controlling Collateral Agent to the extent provided in Section 3.4(i)) in exercising) any right or remedy provided to a secured creditor under the ABL Loan Documents or the Term Loan Documents (including, in either case, any delivery of any notice to otherwise seek to obtain payment directly from any account debtor of any Loan Party or the taking of any action or the exercise of any right or remedy in respect of the set off or recoupment against any Collateral or proceeds of any Collateral), under applicable law, at equity, in an Insolvency Proceeding or otherwise, including credit bidding or otherwise accepting any Collateral in full or partial satisfaction of a Lien, (c) after the occurrence of a Term Default or an ABL Default, as applicable, the Disposition of all or any material portion of the Collateral, by private or public sale or any other means, (d) after the occurrence of a Term Default or an ABL Default, as applicable, the solicitation of bids by a Controlling Collateral Agent from third parties to conduct the liquidation of any Collateral, (e) after the occurrence of a Term Default or an ABL Default, as applicable, the engagement or retention of sales brokers, marketing agents, investment bankers, accountants, appraisers, auctioneers, or other third parties by a Controlling Collateral Agent for the purposes of valuing, marketing, or Disposing of, any Collateral, or (f) the exercise of any other enforcement right relating to any Collateral (including the exercise of any voting rights relating to any Equity Interests constituting Collateral) whether under the ABL Loan Documents, the Term Loan Documents, under applicable law, in equity, in an Insolvency Proceeding, or otherwise; it being acknowledged and agreed that none of the following will constitute an Exercise of Secured Creditor Remedies for purposes of this Agreement: (i) the exercise of cash dominion by the ABL Collateral Agent over the Deposit Accounts of any Loan Party that constitute ABL Priority Collateral and application of funds in connection therewith against the ABL Obligations pursuant to the ABL Credit Agreement, (ii) the imposition of a default interest rate or late fee, (iii) the collection and application of monies deposited from time to time in any Term Priority Account, to the extent constituting Term Priority Collateral, against the Term Obligations pursuant to the provisions of the Term Loan Documents prior to the occurrence of a Term Default, (iv) the filing of a proof of claim or a statement of interest in any Insolvency Proceeding, (v) the consent by the ABL Collateral Agent to the Disposition by any Loan Party of any of the ABL Priority Collateral prior to the occurrence of an ABL Default, (vi) the consent of the Term Collateral Agents to the Disposition by any Loan Party of any Term Priority Collateral and (vii) the acceleration of the Term Obligations or the ABL Obligations.

"<u>First Lien Administrative Agent</u>" has the meaning set forth in the recitals to this Agreement.

"<u>First Lien Claimholders</u>" means the First Lien Administrative Agent, the First Lien Collateral Agent, the First Lien Lenders and the other holders of First Lien Obligations (including any such holders that are Term Cash Management Banks or Term Hedge Counterparties).

"<u>First Lien Collateral</u>" means any and all assets of any Loan Party, now existing or hereafter acquired, whether real, personal or mixed, subject, or purported under the terms of any First Lien Collateral Document to be subject, to any Lien securing any First Lien Obligations.

"<u>First Lien Collateral Agent</u>" has the meaning set forth in the preamble to this Agreement.

"<u>First Lien Collateral Documents</u>" means the "Collateral Documents" or "Security Documents" (or equivalent term) as defined in any First Lien Loan Document and any documents that are designated under any First Lien Loan Document as "First Lien Collateral Documents" for purposes of this Agreement.

#4814-6502-9968
#9173 1356v11

"First Lien Credit Agreement" has the meaning set forth in the recitals to this Agreement.

"First Lien Default" means any "Event of Default" as such term is defined in the First Lien Credit Agreement.

"First Lien Guarantee Agreement" has the meaning set forth in the recitals to this Agreement.

"First Lien Guarantors" has the meaning set forth in the recitals to this Agreement.

"First Lien Lenders" means the "Lenders" as such term is defined in the First Lien Credit Agreement.

"First Lien Lenders Lien" means all Liens on the Collateral securing the First Lien Obligations, whether created under the First Lien Collateral Documents or acquired by possession, statute (including any judgment lien), operation of law, subrogation or otherwise and whether or not created following the commencement of any Insolvency Proceeding, now or hereafter held by or on behalf of the First Lien Collateral Agent or any other First Lien Claimholders, or any agent or trustee therefor.

"First Lien Loan Documents" means the First Lien Credit Agreement, the First Lien Guarantee, the First Lien Collateral Documents, and each of the other "Loan Documents" (as defined in the First Lien Credit Agreement), and any other document or instrument (including any Term Cash Management Agreement or any Term Secured Hedge Agreement) executed or delivered at any time in connection with any First Lien Obligations.

"First Lien Obligations" means the "Obligations" of each Loan Party as defined in the First Lien Credit Agreement (or any equivalent term in any Refinancing thereof), including any Additional Pari Passu Obligations, including (a) all principal of and interest (including any Post-Petition Interest) and premium (if any) on all loans made or other indebtedness issued or incurred pursuant to the First Lien Credit Agreement or the applicable Additional Pari Passu Obligations Agreement, (b) all reimbursement obligations (if any) and interest thereon (including any Post-Petition Interest) with respect to any letter of credit or similar instruments issued pursuant to the First Lien Credit Agreement or the applicable Additional Pari Passu Obligations Agreement, (c) all Term Cash Management Obligations and Term Secured Hedging Obligations, and (d) all guarantee obligations, fees, expenses and other amounts payable from time to time pursuant to the First Lien Loan Documents or the applicable Additional Pari Passu Obligations Agreement, in each case whether or not allowed or allowable in an Insolvency Proceeding; provided that to the extent any Indebtedness thereunder is expressly provided thereunder to be secured on a junior basis to the Liens securing the First Lien Obligations in existence on the date hereof, such Indebtedness shall not constitute First Lien Obligations.  To the extent any payment with respect to any First Lien Obligation (whether by or on behalf of any Loan Party, as proceeds of security, enforcement of any right of setoff or otherwise) is declared to be a fraudulent conveyance or a preference in any respect, set aside or required to be paid to a debtor in possession, any ABL Claimholder, receiver or similar Person, then the obligation or part thereof originally intended to be satisfied shall, for the purposes of this Agreement and the rights and obligations of the Term Claimholders and the ABL Claimholders, be deemed to be reinstated and outstanding as if such payment had not occurred.

"First Lien Priority Cap" means, as of any date of determination, the sum of:

(a)    an amount, not to exceed the sum of (i) $721,714,794.30 plus (ii) the aggregate principal amount of (1) Incremental Loans made and outstanding under the Incurrence-Based Incremental Amount (each as defined in the First Lien Credit Agreement (as in effect on the date hereof, without giving

#4814-6502-9968
#9173135v11

effect to any amendments thereto made after the date hereof)) pursuant to Section 2.16 of the First Lien Credit Agreement (as in effect on the date hereof, without giving effect to any amendments thereto made after the date hereof) and (2) the loans and commitments made and outstanding by the First Lien Claimholders after the date of this Agreement pursuant to Sections 7.03(m), 7.03(n) and 7.03(s) of the First Lien Credit Agreement (as in effect on the date hereof, without giving effect to any amendments thereto made after the date hereof); plus

(b)      all Term Cash Management Obligations and Term Secured Hedging Obligations to the extent constituting First Lien Obligations; plus

(c)      all other First Lien Obligations but only in respect of or attributable to subsections (a) and (b) above (including First Lien Obligations constituting accrued and unpaid interest (including interest accruing at the default rate and any Post-Petition Interest), premiums (including tender premiums and prepayment premiums), underwriting discounts, fees, commissions and expenses (including original issue discount, upfront fees or initial yield payments), attorneys' fees, costs, expenses and indemnities).

"First Lien/Second Lien Intercreditor Agreement" has the meaning set forth in the First Lien Credit Agreement, as in effect on the date hereof.

"GAAP" means generally accepted accounting principles in the United States of America as in effect from time to time.

"Governmental Authority" means any federal, state, municipal, national or other government, governmental department, commission, board, bureau, court, agency or instrumentality or political subdivision thereof or any entity or officer exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to any government or any court, in each case whether associated with a state or locality of the U.S., the U.S., or a foreign government or any other political subdivision thereof, including central banks and supra national bodies.

"Indebtedness" means all obligations that constitute "Indebtedness" within the meaning of the ABL Credit Agreement or the Term Credit Agreements, as applicable.

"Insolvency Proceeding" means any voluntary or involuntary case or proceeding of which any Loan Party is the subject and in respect of bankruptcy, insolvency, winding up, receivership, dissolution, liquidation, reorganization or assignment for the benefit of creditors, in each of the foregoing events whether under the Bankruptcy Code or any similar federal, state or foreign bankruptcy, insolvency, reorganization, receivership or similar law.

"Intellectual Property" means "Intellectual Property" as such term is defined in the ABL Credit Agreement and the Term Credit Agreements.

"Junior Claimholders" means, as to any Collateral, the Claimholders whose Liens on such Collateral are junior and subordinate to the Liens of the other Claimholders on such Collateral as set forth in Section 2.1.

"Lien" means any mortgage, pledge, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or other), charge, or preference, priority or other security interest or preferential arrangement of any kind or nature whatsoever (including any conditional sale or other title retention agreement, any easement, right of way or other encumbrance on title to real property, and any capital lease having substantially the same economic effect as any of the foregoing), in each case, in the

12

#4814-6502-9968
#91731356v11

nature of security; <u>provided</u> that in no event shall an operating lease in and of itself be deemed to constitute a Lien on any asset.

"<u>Loan Parties</u>" means Parent, the Borrower, the ABL Co-Borrowers, the ABL Guarantors, the Term Guarantors and each other Subsidiary Guarantor (as such term is defined in the ABL Credit Agreement and the Term Credit Agreements) other than, in the case of the ABL Credit Agreement, any such Loan Party that is not a U.S. Loan Party.  All references in this Agreement to any Loan Party shall include such Loan Party as a debtor-in-possession and any receiver or trustee for such Loan Party in any Insolvency Proceeding.

"<u>Mortgage</u>" has the meaning set forth in the ABL Credit Agreement and/or the Term Credit Agreements, as the context requires.

"<u>Non-Conforming Plan of Reorganization</u>" means any Plan of Reorganization the provisions of which are inconsistent with, or are in contravention of, the relative Lien priorities or the other provisions of this Agreement, including any Plan of Reorganization that purports to re-order (whether by subordination, invalidation or otherwise) or otherwise disregard, in whole or part, the provisions of Section 2 (including the relative Lien priorities of Section 2.1), 4 or 6.

"<u>Notification of Proceeds</u>" has the meaning set forth in Section 3.9(b).

"<u>Obligations</u>" means the ABL Obligations and the Term Obligations, or any of them, as the context requires.

"<u>Parent</u>" has the meaning set forth in the recitals to this Agreement.

"<u>Person</u>" means any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, Governmental Authority or any other entity.

"<u>Plan of Reorganization</u>" means any plan of reorganization, plan of liquidation, agreement for composition, or other type of dispositive plan of arrangement proposed in or in connection with any Insolvency Proceeding.

"<u>Pledged Collateral</u>" has the meaning set forth in Section 5.4(a).

"<u>Post-Petition Interest</u>" means interest (including interest accruing at the default rate specified in the applicable Credit Documents), fees, expenses and other charges that pursuant to the ABL Collateral Documents or the Term Collateral Documents, as the case may be, continue to accrue after the commencement of any Insolvency Proceeding, whether or not such interest, fees, expenses and other charges are allowed or allowable under the Bankruptcy Code or any similar federal, state or foreign bankruptcy, insolvency, reorganization, receivership or similar law, or in any such Insolvency Proceeding.

"<u>Purchase Event</u>" means, with respect to the Obligations of any Class, the occurrence of any of the following:  (a) the occurrence of an event of default under any Credit Documents in respect of any Class arising from the failure of any Loan Party to pay any principal, interest or fees when due and payable thereunder, (b) any Exercise of Secured Creditor Remedies by the Collateral Agent of such Class or the institution of any Insolvency Proceeding or (c) an acceleration of the Obligations of such Class in accordance with the terms of the Credit Documents of such Class.

"<u>Recovery</u>" has the meaning set forth in Section 6.6.

13

#4814-6502-9968
#91731356v11

"<u>Refinance</u>" means, in respect of any indebtedness, to refinance, extend, renew, defease, amend, increase, modify, supplement, restructure, refund, replace or repay, or to issue other indebtedness or enter into alternative financing arrangements, in exchange or replacement for such indebtedness (in whole or in part), including by adding or replacing lenders, creditors, agents, borrowers and/or guarantors, and including in each case, but not limited to, after the original instrument giving rise to such indebtedness has been terminated and including, in each case, through any credit agreement, indenture or other agreement. "<u>Refinanced</u>" and "<u>Refinancing</u>" have correlative meanings.

"<u>Refinancing Indebtedness</u>" means the Indebtedness or other Obligations resulting from the Refinancing of any other Indebtedness or other Obligations.

"<u>Second Lien Administrative Agent</u>" has the meaning set forth in the recitals to this Agreement.

"<u>Second Lien Claimholders</u>" means the Second Lien Administrative Agent, the Second Lien Collateral Agent, the Second Lien Lenders and the other holders of Second Lien Obligations.

"<u>Second Lien Collateral</u>" means any and all assets of any Loan Party, now existing or hereafter acquired, whether real, personal or mixed, subject, or purported under the terms of any Second Lien Collateral Document to be subject, to any Lien securing any Second Lien Obligations.

"<u>Second Lien Collateral Agent</u>" has the meaning set forth in the preamble to this Agreement.

"<u>Second Lien Collateral Documents</u>" means the "Collateral Documents" or "Security Documents" (or equivalent term) as defined in any Second Lien Loan Document and any documents that are designated under any Second Lien Loan Document as "Second Lien Collateral Documents" for purposes of this Agreement.

"<u>Second Lien Credit Agreement</u>" has the meaning set forth in the recitals to this Agreement.

"<u>Second Lien Default</u>" means any "Event of Default" as such term is defined in the Second Lien Credit Agreement.

"<u>Second Lien Guarantee Agreement</u>" has the meaning set forth in the recitals to this Agreement.

"<u>Second Lien Guarantors</u>" has the meaning set forth in the recitals to this Agreement.

"<u>Second Lien Lenders</u>" means the "Lenders" as such term is defined in the Second Lien Credit Agreement.

"<u>Second Lien Lenders Lien</u>" means all Liens on the Collateral securing the Second Lien Obligations, whether created under the Second Lien Collateral Documents or acquired by possession, statute (including any judgment lien), operation of law, subrogation or otherwise and whether or not created following the commencement of any Insolvency Proceeding, now or hereafter held by or on behalf of the Second Lien Collateral Agent or any other Second Lien Claimholders, or any agent or trustee therefor.

"<u>Second Lien Loan Documents</u>" means the Second Lien Credit Agreement, the Second Lien Guarantee Agreement, the Second Lien Collateral Documents, and each of the other "Loan

14

#4814-6502-9968
#91731356v11

Documents" (as defined in the Second Lien Credit Agreement), and any other document or instrument executed or delivered at any time in connection with any Second Lien Obligations.

"Second Lien Obligations" means the "Obligations" of each Loan Party as defined in the Second Lien Credit Agreement (or any equivalent term in any Refinancing thereof), including any Additional Junior Obligations, including (a) all principal of and interest (including any Post-Petition Interest) and premium (if any) on all loans made or other indebtedness issued or incurred pursuant to the Second Lien Credit Agreement or the applicable Additional Junior Obligations Agreement, (b) all reimbursement obligations (if any) and interest thereon (including any Post-Petition Interest) with respect to any letter of credit or similar instruments issued pursuant to the Second Lien Credit Agreement or the applicable Additional Junior Obligations Agreement, and (c) all guarantee obligations, fees, expenses and other amounts payable from time to time pursuant to the Second Lien Loan Documents or the applicable Additional Junior Obligations Agreement, in each case whether or not allowed or allowable in an Insolvency Proceeding.  To the extent any payment with respect to any Second Lien Obligation (whether by or on behalf of any Loan Party, as proceeds of security, enforcement of any right of setoff or otherwise) is declared to be a fraudulent conveyance or a preference in any respect, set aside or required to be paid to a debtor in possession, any ABL Claimholder, receiver or similar Person, then the obligation or part thereof originally intended to be satisfied shall, for the purposes of this Agreement and the rights and obligations of the Term Claimholders and the ABL Claimholders, be deemed to be reinstated and outstanding as if such payment had not occurred.

"Second Lien Priority Cap" means, as of any date of determination, the sum of:

(a)     an aggregate principal amount, not to exceed the sum of (i) $100,000,000 plus an additional principal amount solely to the extent arising from the capitalization of interest at a rate not to exceed 2.00% per annum and capitalized in accordance with the Second Lien Credit Agreement as in effect on the date hereof and (ii) 100% of the aggregate principal amount of the loans and commitments made and outstanding by the Second Lien Claimholders after the date of this Agreement and outstanding pursuant to Sections 2.16, 7.03(m), 7.03(n) and 7.03(s) of the Second Lien Credit Agreement (as in effect on the date hereof without giving effect to any amendments thereto made after the date hereof); plus

(b)     all other Second Lien Obligations but only in respect of or attributable to subsection (a) above (including Second Lien Obligations constituting accrued and unpaid interest (including interest accruing at the default rate and any Post-Petition Interest), premiums (including tender premiums and prepayment premiums), underwriting discounts, fees, commissions and expenses (including original issue discount, upfront fees or initial yield payments), attorneys' fees, costs, expenses and indemnities).

"Senior Claimholders" means, as to any Collateral, the Claimholders whose Liens on such Collateral are senior to the Liens of the Claimholders of the other Class on such Collateral pursuant to the terms of this Agreement.  The parties hereto acknowledge that the ABL Claimholders are the Senior Claimholders with respect to the ABL Priority Collateral and the Term Claimholders are the Senior Claimholders with respect to the Term Priority Collateral, and that, accordingly, any reference herein to the "Senior Claimholders" shall be construed as a reference to the ABL Claimholders insofar as the ABL Priority Collateral is concerned and to the Term Claimholders insofar as the Term Priority Collateral is concerned.

"Senior Collateral Agent" means, as to any Collateral, the Collateral Agent whose Liens on such Collateral, held by it for its benefit and the benefit of its related Claimholders, are senior to the Liens on such Collateral held by the Collateral Agent of the other Class, for its benefit and the benefit of its related Claimholders.  The parties hereto acknowledge that the ABL Collateral Agent is the Senior

15

#4814-6502-9968
#91731356v11

Collateral Agent with respect to the ABL Priority Collateral and the Term Collateral Agents are the Senior Collateral Agent with respect to the Term Priority Collateral, and that, accordingly, any reference herein to the "Senior Collateral Agent" shall be construed as a reference to the ABL Collateral Agent insofar as the ABL Priority Collateral is concerned and to the Term Collateral Agents insofar as the Term Priority Collateral is concerned.

"Senior Liens" means (a) with respect to the ABL Priority Collateral or the Term Lenders Liens on the ABL Priority Collateral, the ABL Lenders Liens on such Collateral, and (b) with respect to the Term Priority Collateral or the ABL Lenders Liens on the Term Priority Collateral, the Term Lenders Liens on such Collateral, and, in each case, any Liens incurred in connection with any Refinancing of Senior Obligations that are deemed to be Senior Liens under Section 5.5.

"Senior Obligations" means, with respect to any Collateral or any Liens thereon, any Obligations that are secured by Senior Liens on such Collateral.

"Senior Priority Collateral" means (a) with respect to the ABL Collateral Agent and any other ABL Claimholders, all ABL Priority Collateral and (b) with respect to the Term Collateral Agents and any other Term Claimholders, Term Priority Collateral.

"Subject Obligations" has the meaning set forth in Section 5.7(a).

"Subject Secured Parties" has the meaning set forth in Section 5.7(a).

"Subsidiary" shall have the meaning set forth in the ABL Credit Agreement and Term Credit Agreements in effect on the date hereof and shall exclude any Subsidiary that is not a U.S. Subsidiary.  Unless otherwise specified, all references herein to Subsidiaries shall be deemed to refer to Subsidiaries of the Borrower.

"Term Administrative Agents" has the meaning set forth in the recitals to this Agreement.

"Term Cash Management Agreement" means "Cash Management Agreement" as such term is defined in the First Lien Credit Agreement.

"Term Cash Management Obligations" means "Cash Management Obligations" as such term is defined in the First Lien Credit Agreement.

"Term Cash Management Bank" means "Cash Management Bank" as such term is defined in the First Lien Credit Agreement.

"Term Claimholders" means the First Lien Claimholders and the Second Lien Claimholders.

"Term Collateral" means the First Lien Collateral and the Second Lien Collateral.

"Term Collateral Agents" has the meaning set forth in the preamble to this Agreement.

"Term Collateral Documents" means the First Lien Collateral Documents and the Second Lien Collateral Documents.

"Term Credit Agreements" has the meaning set forth in the recitals to this Agreement.

"Term Default" means any First Lien Default or Second Lien Default.

16

#4814-6502-9968
#9173135v11

"Term DIP Financing" has the meaning set forth in Section 6.1(b).

"Term Guarantors" has the meaning set forth in the recitals to this Agreement.

"Term Lenders" means the First Lien Lenders and the Second Lien Lenders.

"Term Lenders Lien" means any First Lien Lenders Lien or Second Lien Lenders Lien.

"Term Loan Documents" means the First Lien Loan Documents and the Second Lien Loan Documents.

"Term Obligations" means the First Lien Obligations and the Second Lien Obligations.

"Term Priority Accounts" means any Deposit Accounts or Securities Accounts that are required to be established pursuant to the Term Loan Documents for purposes of exclusively holding identifiable Proceeds of the Term Priority Collateral (it being understood that any property in such Deposit Accounts or Securities Accounts which is not identifiable proceeds of Term Priority Collateral shall not be Term Priority Collateral solely by virtue of being on deposit in or credited to any such Deposit Account or Securities Account).

"Term Priority Cap" means the sum of the First Lien Priority Cap and the Second Lien Priority Cap.

"Term Priority Collateral" means all of the following assets that constitute Collateral, whether now owned or hereafter acquired (including any of the following assets acquired or created after the commencement of any Insolvency Proceeding) and wherever located (including, for the avoidance of doubt, any such assets that, but for the application of Section 552 of the Bankruptcy Code (or any provision of any other Bankruptcy Law), would constitute Term Collateral):

(a)      all Equipment and all real property and interests therein (including both fee and leasehold interests) and all Fixtures;

(b)      all Intellectual Property (other than any computer programs and any support and information relating thereto that constitute Inventory pursuant to Section 1.3 and subject to the rights of the ABL Collateral Agent under Section 3.10);

(c)      all Equity Interests and other Investment Property (other than Investment Property constituting ABL Priority Collateral under clause (c) of the definition of such term);

(d)      except to the extent constituting ABL Priority Collateral under clause (e) of the definition of such term, all Instruments, Documents and General Intangibles (including all Indebtedness between or among Parent and any of its Subsidiaries);

(e)      all Term Priority Accounts and all Money, Financial Assets, Securities Entitlements or other assets contained in, or credited to, or arising from any such Term Priority Account (in each case, except to the extent constituting identifiable Proceeds of ABL Priority Collateral);

(f)      all insurance policies relating to Term Priority Collateral (regardless of whether any Term Collateral Agent is the loss payee thereof), but, for the avoidance of doubt, excluding 50% of any business interruption insurance and all credit insurance with respect to any Accounts, each of which constitutes ABL Priority Collateral;

17

#4814-6502-9968
#91731356v11

(g)    all Commercial Tort Claims;

(h)    all other Collateral not constituting ABL Priority Collateral;

(i)    all collateral and guarantees given by any other Person with respect to any of the foregoing, and all Supporting Obligations (including Letter-of-Credit Rights) with respect to any of the foregoing;

(j)    all books and Records to the extent relating to any of the foregoing (including files, correspondence, tapes, computer programs, printouts and computer records); and

(k)    all Products and Proceeds of the foregoing.

Notwithstanding the foregoing, the term "Term Priority Collateral" shall not include any assets referred to in clauses (a), (b), (c), (d) and (e) of the term "ABL Priority Collateral". Proceeds of Excluded Assets that would otherwise constitute Term Priority Collateral shall be deemed to be Term Priority Collateral.

"Term Secured Hedge Agreement" means "Secured Hedge Agreement" as such term is defined in the First Lien Credit Agreement.

"Term Hedge Counterparty" means any counterparty to a Term Secured Hedge Agreement entered into with a Loan Party the obligations under which constitute Term Secured Hedging Obligations.

"Term Secured Hedging Obligations" means any "Secured Obligations" (as defined in the First Lien Credit Agreement) in respect of any Term Secured Hedge Agreement.

"Term Standstill Period" has the meaning set forth in Section 3.1(a).

"UCC" means the Uniform Commercial Code (or any similar or equivalent legislation) as in effect from time to time in the State of New York or, when the context implies, the Uniform Commercial Code as in effect from time to time in any other applicable jurisdiction.

"Unasserted Contingent Obligations" means, at any time, ABL Obligations and Term Obligations (as applicable) for indemnification in respect of which no demand has been made at such time (it being understood that, in respect of ABL Obligations, contingent reimbursement obligations in respect of amounts that may be drawn under outstanding letters of credit shall not constitute Unasserted Contingent Obligations).

"Use Period" means, with respect to any Term Priority Collateral, the period (a) commencing on the later of (i) the date on which the ABL Collateral Agent (or any ABL Claimholder acting with the consent of the ABL Collateral Agent) commences an Enforcement Period in connection with any ABL Priority Collateral and (ii) the date on which the ABL Collateral Agent delivers, in accordance with Section 3.7, a written notice to the Controlling Term Agent electing to exercise its access rights pursuant to Section 3.7 with respect to such Term Priority Collateral, and (b) ending, with respect to any Term Priority Collateral, on the earliest to occur of (i) the 180th day after the date (the "Initial Access Date") on which the ABL Collateral Agent, or its designee, initially obtains the ability to take physical possession of, remove, or otherwise control physical access to, or actually uses, the ABL Priority Collateral located on such Term Priority Collateral, (ii) the date on which all or substantially all of the ABL Priority Collateral located on such Term Priority Collateral is removed, sold, collected or liquidated and (iii) the termination of such Enforcement Period.  If any stay or other order that prohibits any of the ABL Collateral Agent or the other ABL Claimholders from commencing and continuing to Exercise any Secured Creditor Remedies

18

#4814-6502-9968
#91731356v11

or from liquidating or selling the ABL Priority Collateral has occurred by the operation of law or has been entered by a court of competent jurisdiction after the Initial Access Date, the 180-day period referred to in clause (i) above shall be tolled during the pendency of any such stay or other order and the Use Period, to the extent the expiration thereof is to be determined by reference to clause (i) above, shall be extended by a corresponding number of days, provided that if, after the lifting of such stay or other order, fewer than 90 days shall remain in the Use Period, then the Use Period shall be extended so that the ABL Collateral Agent and the other ABL Claimholders have 90 days remaining in the Use Period upon lifting of the stay or other order.

"U.S. ABL Collateral Documents" means any ABL Collateral Document executed by a U.S. Loan Party.

"U.S. ABL Guarantee Agreement" means "U.S. Guarantee" as such term is defined in the ABL Credit Agreement.

"U.S. ABL Loan Documents" means any ABL Loan Document executed by a U.S. Loan Party.

"U.S. Loan Party" means any Loan Party organized under the laws of any state within the United States or the District of Columbia.

"U.S. Subsidiary" means any Subsidiary of the Parent that is organized under the laws of the United States, any state thereof or the District of Columbia.

1.2.    Construction.  The definitions of terms in this Agreement shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine, and neuter forms.  The words "include", "includes", and "including" shall be deemed to be followed by the phrase "without limitation."  The word "will" shall be construed to have the same meaning and effect as the word "shall."  The term "or" shall be construed to have, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or."  Unless the context requires otherwise:

(a)    except as otherwise provided herein, any definition of or reference to any agreement, instrument, or other document herein shall be construed as referring to such agreement, instrument, or other document as from time to time amended, restated, amended and restated, supplemented or otherwise modified;

(b)    any reference herein to any Person shall be construed to include such Person's successors and assigns;

(c)    the words "herein", "hereof", and "hereunder", and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof;

(d)    all references herein to Sections and Annexes shall be construed to refer to Sections and Annexes of this Agreement;

(e)    the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, real, personal or mixed, including cash, securities, accounts, and contract rights;

19

#4814-6502-9968
#91731356v11

(f)      any references to a clause shall, unless otherwise identified, refer to the appropriate clause within the same Section in which such reference occurs; and

(g)      any references to any law shall include all statutory and regulatory provisions consolidating, amending, replacing, supplementing or interpreting such law.

1.3.      Terms Defined in UCC.  Terms defined in the UCC that are not otherwise defined in this Agreement are used herein as defined in Articles 8 or 9 of the UCC in effect in the State of New York from time to time, as the context may require (including, as if such terms were capitalized in Article 8 or 9 of the UCC, as the context may require, the following terms:  "Accounts", "Chattel Paper", "Commodity Account", "Commercial Tort Claims", "Deposit Account", "Document", "Electronic Chattel Paper", "Equipment", "Financial Asset", "Fixtures", "General Intangible" (except that such term shall include all interest rate or currency protection or hedging arrangements, all licenses, permits, concessions and authorizations and all Intellectual Property (in each case, regardless of whether characterized as General Intangibles under the UCC)), "Goods" (except that such term shall include all Equipment and Inventory (in each case, regardless of whether characterized as Goods under the UCC)), "Instrument", "Inventory" (except that such term shall include all computer programs embedded in any Inventory and all supporting information relating to such programs, in each case that are included in the definition of Goods under the UCC (in each case, regardless of whether characterized as Inventory under the UCC), but not, for the avoidance of doubt, any other Intellectual Property), "Investment Property", "Letter-of-Credit Right", "Money", "Payment Intangibles", "Promissory Notes", "Records", "Securities Accounts", "Securities Entitlement", "Supporting Obligation", "Tangible Chattel Paper" and "Uncertificated Securities").

**SECTION 2.  Lien Priorities.**

2.1.      Relative Priorities.  (a) Notwithstanding (i) the date, time, method, manner, or order of grant, attachment, or perfection of any ABL Lenders Lien or any Term Lenders Lien on any Collateral (including, in each case, irrespective of whether any such ABL Lenders Lien or Term Lenders Lien is granted (or secures Obligations relating to the period) before or after the commencement of any Insolvency Proceeding), (ii) any contrary provision of the UCC or any other applicable law or of the ABL Loan Documents or the Term Loan Documents, as applicable, (iii) any defect or deficiencies in, or failure to attach or perfect, any ABL Lenders Lien or any Term Lenders Lien or (iv) any other circumstance whatsoever:

(A)      Term Collateral Agents, for themselves and on behalf of the other Term Claimholders, hereby agree that:

(1)      any Lien on the ABL Priority Collateral securing the ABL Obligations (other than the principal amount of such ABL Obligations in excess of the ABL Priority Cap) now or hereafter held by or for the benefit or on behalf of any ABL Claimholder or any agent or trustee therefor shall be senior in right, priority, operation, effect and in all other respects to any Lien on the ABL Priority Collateral securing the Term Obligations now or hereafter held by or for the benefit or on behalf of any Term Claimholder or any agent or trustee therefor; any Lien on the ABL Priority Collateral securing any of the Term Obligations now or hereafter held by or for the benefit or on behalf of any Term Claimholder or any agent or trustee therefor regardless of how acquired, whether by grant, statute, operation of law, subrogation or otherwise, shall be junior and subordinate in all respects to all Liens on the ABL Priority Collateral securing any ABL Obligations (other than the principal amount of such ABL Obligations in excess of the ABL Priority Cap);

20

#4814-6502-9968
#91731356v11

(2)      any Lien on the ABL Priority Collateral securing ABL Obligations in excess of the ABL Priority Cap now or hereafter held by or for the benefit or on behalf of any ABL Claimholder or any agent or trustee therefor shall be senior in right, priority, operation, effect and in all other respects to any Lien on the ABL Priority Collateral securing Term Obligations in excess of the Term Priority Cap now or hereafter held by or for the benefit or on behalf of any Term Claimholder or any agent or trustee therefor; and any Lien on the ABL Priority Collateral securing Term Obligations in excess of the Term Priority Cap now or hereafter held by or for the benefit or on behalf of any Term Claimholder or any agent or trustee therefor regardless of how acquired, whether by grant, statute, operation of law, subrogation or otherwise, shall be junior and subordinate in all respects to all Liens on the ABL Priority Collateral securing ABL Obligations in excess of the ABL Priority Cap;

(3)      any Lien on the Term Priority Collateral securing the ABL Obligations (other than the principal amount of such ABL Obligations in excess of the ABL Priority Cap) now or hereafter held by or for the benefit or on behalf of any ABL Claimholder or any agent or trustee therefor shall be senior in right, priority, operation, effect and in all other respects to any Lien on the Term Priority Collateral securing Term Obligations in excess of the Term Priority Cap now or hereafter held by or for the benefit or on behalf of any Term Claimholder or any agent or trustee therefor; and any Lien on the Term Priority Collateral securing any Term Obligations in excess of the Term Priority Cap now or hereafter held by or for the benefit or on behalf of any Term Claimholder or any agent or trustee therefor regardless of how acquired, whether by grant, statute, operation of law, subrogation or otherwise, shall be junior and subordinate in all respects to all Liens on the Term Priority Collateral securing any ABL Obligations (other than the principal amount of such ABL Obligations in excess of the ABL Priority Cap).

(B)      ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, hereby agrees that:

(1)      any Lien on the Term Priority Collateral securing the Term Obligations (other than the principal amount of such Term Obligations in excess of the Term Priority Cap) now or hereafter held by or for the benefit or on behalf of any Term Claimholder or any agent or trustee therefor shall be senior in right, priority, operation, effect and in all other respects to any Lien on the Term Priority Collateral securing the ABL Obligations now or hereafter held by or for the benefit or on behalf of any ABL Claimholder or any agent or trustee therefor; and any Lien on the Term Priority Collateral securing any of the ABL Obligations now or hereafter held by or for the benefit or on behalf of any ABL Claimholder or any agent or trustee therefor regardless of how acquired, whether by grant, statute, operation of law, subrogation or otherwise, shall be junior and subordinate in all respects to all Liens on the Term Priority Collateral securing any Term Obligations (other than the principal amount of such Term Obligations in excess of the Term Priority Cap);

(2)      any Lien on the Term Priority Collateral securing Term Obligations in excess of the Term Priority Cap now or hereafter held by or for the benefit or on behalf of any Term Claimholder or any agent or trustee therefor shall be senior in

#4814-6502-9968
#91731356v11

right, priority, operation, effect and in all other respects to any Lien on the Term Priority Collateral securing ABL Obligations in excess of the ABL Priority Cap now or hereafter held by or for the benefit or on behalf of any ABL Claimholder or any agent or trustee therefor; and any Lien on the Term Priority Collateral securing ABL Obligations in excess of the ABL Priority Cap now or hereafter held by or for the benefit or on behalf of any ABL Claimholder or any agent or trustee therefor regardless of how acquired, whether by grant, statute, operation of law, subrogation or otherwise, shall be junior and subordinate in all respects to all Liens on the Term Priority Collateral securing Term Obligations in excess of the Term Priority Cap; and

(3)      any Lien on the ABL Priority Collateral securing the Term Obligations (other than the principal amount of such Term Obligations in excess of the Term Priority Cap) now or hereafter held by or for the benefit or on behalf of any Term Claimholder or any agent or trustee therefor shall be senior in right, priority, operation, effect and in all other respects to any Lien on the ABL Priority Collateral securing ABL Obligations in excess of the ABL Priority Cap now or hereafter held by or for the benefit or on behalf of any ABL Claimholder or any agent or trustee therefor; and any Lien on the ABL Priority Collateral securing ABL Obligations in excess of the ABL Priority Cap now or hereafter held by or for the benefit or on behalf of any ABL Claimholder or any agent or trustee therefor regardless of how acquired, whether by grant, statute, operation of law, subrogation or otherwise, shall be junior and subordinate in all respects to all Liens on the ABL Priority Collateral securing any Term Obligations (other than the principal amount of such Term Obligations in excess of the Term Priority Cap).

(b)      The priority and subordination of Liens provided for in this Agreement (i) shall continue to be effective with respect to any part of the Collateral from and after the date hereof whether such Liens are declared, or ruled to be, invalid, unenforceable, void or not allowed by a court of competent jurisdiction or otherwise, and whether as a result of any action taken by the Term Collateral Agents or the ABL Collateral Agent, as applicable, or any failure by any such Person to take any action with respect to any financing statement (including any amendment to or continuation thereof), mortgage or other perfection document, or otherwise and (ii) are intended to be effective whether or not such Liens are subordinated to any Lien securing any other obligation of the Borrower, any other Loan Party or any other Person (but only to the extent that such subordination is permitted pursuant to the terms of the ABL Credit Agreement, the Term Credit Agreements and each Additional Junior Obligations Agreement and each Additional Pari Passu Obligations Agreement then in effect or as contemplated in Section 6.1).

2.2.    Prohibition on Contesting Liens or Obligations.  Each of the Term Collateral Agents, for itself and on behalf of each other Term Claimholder, and the ABL Collateral Agent, for itself and on behalf of each other ABL Claimholder, agrees that it and its related Claimholders will not (and hereby waive any right to), directly or indirectly, contest or question the validity or enforceability of, or support any other Person in contesting or questioning the validity or enforceability of, in any proceeding (including any Insolvency Proceeding) (a) the existence, priority, validity, extent, perfection or enforceability of any ABL Lenders Lien or any Term Lenders Lien, (b) the priority, validity, extent or enforceability of any Obligations, including the allowability or priority of any Obligations in any Insolvency Proceeding or (c) the relative rights and duties of the Claimholders granted and/or established in this Agreement; provided, however that nothing in this Agreement shall be construed to prevent or impair the rights of the ABL Collateral Agent, any other ABL Claimholder, the Term Collateral Agents or any other Term Claimholder to enforce the terms of this Agreement, including the provisions of this Agreement relating to the priority and subordination of the Liens securing the ABL Obligations and the Term Obligations, as applicable.

22

#4814-6502-9968
#91731356v11

2.3.    <u>No New Liens</u>.  (a) Whether or not any Insolvency Proceeding has been commenced by or against any Loan Party, the parties hereto agree, subject to Section 6, that:

(i)    no Loan Party shall grant, and the Term Collateral Agents shall not accept from any Loan Party, any additional Liens under any Term Collateral Document on any asset to secure any Term Obligation unless such Loan Party also grants a Lien on such asset to secure the ABL Obligations concurrently with the grant of a Lien thereon in favor of the Term Collateral Agents in accordance with the relative Lien priorities set forth in this Agreement; and

(ii)    no Loan Party shall grant, and the ABL Collateral Agent shall not accept from any Loan Party, any additional Liens under any ABL Collateral Documents on any asset to secure any ABL Obligations unless such Loan Party grants a Lien on such asset to secure the Term Obligations concurrently with the grant of a Lien thereon in favor of the ABL Collateral Agent in accordance with the relative Lien priorities set forth in this Agreement;

<u>provided</u> that the foregoing shall not apply to (i) Liens on any asset of any Loan Party granted to secure Obligations of any Class if such asset is expressly excluded from the grant of a security interest by such Loan Party pursuant to the Collateral Documents of the other Class, (ii) additional Liens on any asset of any Loan Party granted to secure Obligations of any Class if, prior to such grant, such Loan Party has offered in writing to grant a Lien on such asset to secure Obligations of the other Class and the Collateral Agent of such other Class has affirmatively declined in writing to accept such Lien; and <u>provided</u> <u>further</u> that the attachment of any previously granted Lien to any after-acquired property of the type covered by such Lien immediately prior thereto shall not be deemed to be an acceptance of an additional Lien for the purposes of this Section 2.3, and (iii) Material Owned Property (as such term is defined in the First Lien Credit Agreement), as to which ABL Claimholders do not, pursuant to the terms of the ABL Loan Documents require a Lien.

(b)    To the extent that the provisions of Section 2.3(a) are not complied with for any reason, (i) without limiting any other rights and remedies available to the ABL Collateral Agent or the other ABL Claimholders, the Term Collateral Agents, on behalf of the Term Claimholders, agrees that any amounts received by or distributed to any of them pursuant to or as a result of Liens granted and accepted in contravention of Section 2.3(a) shall be subject to Section 4.2 and the Term Collateral Agents also shall hold and be deemed to have held such Liens for the benefit of the ABL Collateral Agent and the other ABL Claimholders subject to the provisions set forth herein, and (ii) without limiting any other rights and remedies available to the Term Collateral Agents or the other Term Claimholders, the ABL Collateral Agent, on behalf of the ABL Claimholders, agrees that any amounts received by or distributed to any of them pursuant to or as a result of Liens granted and accepted in contravention of Section 2.3(a) shall be subject to Section 4.2 and the ABL Collateral Agent also shall hold and be deemed to have held such Liens for the benefit of the Term Collateral Agents and the other Term Claimholders subject to the provisions set forth herein.

2.4.    <u>Cooperation in Designating Collateral</u>.  In furtherance of Section 9.19, each of the ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, and each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, agrees that it and its related Claimholders will, subject to the other provisions of this Agreement, upon request by the ABL Collateral Agent or the Term Collateral Agents, cooperate in good faith (and will direct their counsel to cooperate in good faith) from time to time in order to determine the specific items included in the ABL Priority Collateral and the Term Priority Collateral, as the case may be, and the steps taken to perfect the ABL Lenders Liens or the Term Lenders Liens, as the case may be, and the identity of the respective parties obligated under the ABL Loan Documents and the Term Loan Documents, as the case may be.  In addition, each of the ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, and each of the Term Collateral

23

**Debtors' Exhibit No. 14**
**Page 33 of 93**

Agents, for themselves and on behalf of the other Term Claimholders, agrees that, in the event that (a) the ABL Collateral Agent receives any business interruption insurance proceeds, the ABL Collateral Agent shall deliver to the Controlling Term Agent 50% of such proceeds and (b) any Term Collateral Agent receives any business interruption insurance proceeds, such Term Collateral Agent shall deliver to the ABL Collateral Agent 50% of such proceeds.

2.5.    <u>Revolving Nature of ABL Obligations</u>.  Each Term Administrative Agent, for itself and on behalf of the other Term Claimholders, expressly acknowledges and agrees that (a) the ABL Credit Agreement includes a revolving commitment and that in the ordinary course of business the ABL Administrative Agent and the ABL Lenders will apply payments and make advances thereunder, (b) the amount of the ABL Obligations that may be outstanding at any time or from time to time may be increased or reduced and subsequently reborrowed, subject to the ABL Priority Cap, (c) all cash collateral received by the ABL Administrative Agent or the ABL Collateral Agent may be applied, reversed, reapplied, credited, or reborrowed, in whole or in part, to the ABL Obligations at any time and from time to time and (d) the advance rates under the ABL Credit Agreement may be reduced, the eligibility criteria for purposes of the Borrowing Base (as defined in the ABL Credit Agreement) may be modified and Reserves (as defined in the ABL Credit Agreement) may be imposed, under the terms of the ABL Credit Agreement, in each case without altering or otherwise affecting the relative Lien priorities set forth in this Agreement.

2.6.    <u>No Subordination of the Relative Priority of Claims</u>.  Notwithstanding anything to the contrary contained herein, the subordination of the Term Lenders Liens to the ABL Lenders Liens and of the ABL Lenders Liens to the Term Lenders Liens as set forth herein is with respect to the relative priority of the respective Liens held by or on behalf of the Term Claimholders or the ABL Claimholders only and shall not constitute a subordination of the Term Obligations to the ABL Obligations or the ABL Obligations to the Term Obligations.

**SECTION 3.  <u>Exercise of Remedies</u>**.

3.1.    <u>Exercise of Remedies by Term Collateral Agents</u>.  Until the Discharge of ABL Priority Obligations has occurred, whether or not any Insolvency Proceeding has been commenced by or against any Loan Party, each Term Collateral Agent, for itself and on behalf of the other Term Claimholders, agrees that the Term Claimholders:

(a)    will not exercise or seek to exercise any rights or remedies with respect to any ABL Priority Collateral (including any Exercise of Secured Creditor Remedies with respect to any ABL Priority Collateral); <u>provided</u>, <u>however</u>, that the Controlling Term Agent may exercise any or all such rights or remedies (including any Exercise of Secured Creditor Remedies with respect to any ABL Priority Collateral) after the passage of a period of at least 180 days after the date on which the ABL Collateral Agent received written notice from either Term Collateral Agent that the maturity of the Term Obligations has been accelerated; <u>provided</u>, <u>further</u>, <u>however</u>, that notwithstanding anything to the contrary contained herein, in no event will the Term Collateral Agents or any other Term Claimholder exercise any rights or remedies with respect to the ABL Priority Collateral if, notwithstanding the expiration of such 180-day period, the ABL Collateral Agent or any other ABL Claimholder (x) shall have commenced and is diligently pursuing the exercise of its rights or remedies with respect to all or a material portion of the ABL Priority Collateral (prompt written notice of such exercise to be given to the Controlling Term Agent by the ABL Collateral Agent, <u>provided</u> that the failure to give such notice shall not affect the ABL Collateral Agent's or any other ABL Claimholders' rights hereunder) or (y) shall have been stayed by operation of law or any court order from pursuing any such exercise of remedies (during which time the 180-day period shall be tolled) (the period during which the Term Collateral Agents and the other Term Claimholders may not pursuant to this Section 3.1(a) exercise any rights or remedies with respect to the ABL Priority Collateral,

#4814-6502-9968
#91731356v11

**Debtors' Exhibit No. 14
Page 34 of 93**

the "Term Standstill Period"); provided that in the event that at any time after the Term Collateral Agent has sent a notice to the ABL Collateral Agent to commence the Term Standstill Period, the Term Default that was the basis for such notice is cured or waived or otherwise ceases to exist, and any notice of acceleration has been rescinded by the Term Collateral Agent, then the notice to commence the Term Standstill Period shall automatically and without further action of the parties be deemed rescinded and no Term Standstill Period shall have been deemed to have commenced;

(b)     will not directly or indirectly contest, protest or object to or hinder any Exercise of Secured Creditor Remedies by the ABL Collateral Agent or any other ABL Claimholder with respect to any ABL Priority Collateral;

(c)     will have no right to direct the ABL Collateral Agent to Exercise any Secured Creditor Remedies with respect to any ABL Priority Collateral or to take any other action under the ABL Loan Documents with respect to any ABL Priority Collateral; and

(d)     will not object to (and hereby waive any and all claims with respect to) the forbearance by the ABL Collateral Agent or the other ABL Claimholders from Exercising any Secured Creditor Remedies with respect to any ABL Priority Collateral;

provided, however, that, in each case under this Section 3.1, the Term Lenders Liens shall remain on any Proceeds (other than those Proceeds properly applied to the ABL Obligations in accordance with Section 4.1(a)) resulting from actions taken by the ABL Collateral Agent or any other ABL Claimholder with respect to the ABL Priority Collateral (subject to the relative Lien priorities described in Section 2).

3.2.     Exercise of Remedies by ABL Collateral Agent.  Until the Discharge of Term Priority Obligations has occurred, whether or not any Insolvency Proceeding has been commenced by or against any Loan Party, the ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, agrees that the ABL Claimholders:

(a)     will not exercise or seek to exercise any rights or remedies with respect to any Term Priority Collateral (including any Exercise of Secured Creditor Remedies with respect to any Term Priority Collateral); provided, however, that the ABL Collateral Agent may exercise any or all such rights or remedies (including any Exercise of Secured Creditor Remedies with respect to any Term Priority Collateral) after the passage of a period of at least 180 days after the date on which the Controlling Term Agent received written notice from the ABL Collateral Agent that the maturity of the ABL Obligations has been accelerated; provided further, however, that notwithstanding anything to the contrary contained herein, in no event will the ABL Collateral Agent or any other ABL Claimholder exercise any rights or remedies with respect to the Term Priority Collateral if, notwithstanding the expiration of such 180-day period, any Term Collateral Agent or any Term Claimholder (x) shall have commenced and is diligently pursuing the exercise of its rights or remedies with respect to all or a material portion of the Term Priority Collateral (prompt written notice of such exercise to be given to the ABL Collateral Agent by the Term Collateral Agents, provided that the failure to give such notice shall not affect the Term Collateral Agents' or any other Term Claimholders' rights hereunder) or (y) shall have been stayed by operation of law or any court order from pursuing any such exercise of remedies (during which time the 180-day period shall be tolled) (the period during which the ABL Collateral Agent and the other ABL Claimholders may not pursuant to this Section 3.2(a) exercise any rights or remedies with respect to the Term Priority Collateral, the "ABL Standstill Period"); provided that in the event that at any time after the ABL Collateral Agent has sent a notice to the Controlling Term Agent to commence the ABL Standstill Period, the ABL Default that was the basis for such notice is cured or waived or otherwise ceases to exist, and any notice of acceleration has been rescinded by the ABL Collateral Agent, then the notice to commence the ABL Standstill Period shall

#4814-6502-9968
#91731356v11

**Debtors' Exhibit No. 14
Page 35 of 93**

automatically and without further action of the parties be deemed rescinded and no ABL Standstill Period shall have been deemed to have commenced;

(b)    will not directly or indirectly contest, protest or object to or hinder any Exercise of Secured Creditor Remedies by the Term Collateral Agents or any other Term Claimholder with respect to any Term Priority Collateral;

(c)    will have no right to direct the Term Collateral Agents to Exercise any Secured Creditor Remedies with respect to any Term Priority Collateral or to take any other action under the Term Loan Documents with respect to any Term Priority Collateral; and

(d)    will not object to (and hereby waives any and all claims with respect to) the forbearance by the Term Collateral Agents or any other Term Claimholder from the Exercise of Secured Creditor Remedies with respect to any Term Priority Collateral

provided, however, that, in each case under this Section 3.2, the ABL Lenders Liens shall remain on any Proceeds (other than those Proceeds properly applied to the Term Obligations in accordance with Section 4.1(b)) resulting from actions taken by the Term Collateral Agents or any other Term Claimholder with respect to the Term Priority Collateral (subject to the relative Lien priorities described in Section 2).

3.3.    Exclusive Enforcement Rights.  (a) Until the Discharge of ABL Priority Obligations has occurred and except as provided in Sections 3.1(a) and 3.4, whether or not any Insolvency Proceeding has been commenced by or against any Loan Party, the ABL Collateral Agent shall have the exclusive right to Exercise any Secured Creditor Remedies with respect to the ABL Priority Collateral (including the exercise of any right under any lockbox agreement, control agreement, landlord waiver, bailee's letter, consignee agreement or any similar agreement or arrangement with respect to the ABL Priority Collateral) without any consultation with or the consent of the Term Collateral Agents or any other Term Claimholder; provided, however, that the Term Lenders Liens shall remain on any Proceeds (other than those properly applied to the ABL Obligations in accordance with Section 4.1(a)) resulting from actions taken by the ABL Collateral Agent or any other ABL Claimholder with respect to the ABL Priority Collateral (subject to the relative Lien priorities described in Section 2).

(b)    Until the Discharge of Term Priority Obligations has occurred and except as provided in Sections 3.2(a), 3.4 and 3.7, whether or not any Insolvency Proceeding has been commenced by or against any Loan Party, the Controlling Term Agent shall have the exclusive right to Exercise any Secured Creditor Remedies with respect to the Term Priority Collateral (including the exercise of any right under any lockbox agreement, control agreement, landlord waiver, bailee's letter, consignee agreement or any similar agreement or arrangement with respect to the Term Priority Collateral) without any consultation with or the consent of the ABL Collateral Agent or any other ABL Claimholder; provided, however, that the ABL Lenders Liens shall remain on any Proceeds (other than those properly applied to the Term Obligations in accordance with Section 4.1(b)) resulting from actions taken by the Controlling Term Agent or any other Term Claimholder with respect to the Term Priority Collateral (subject to the relative Lien priorities described in Section 2).

(c)    In connection with any Exercise of Secured Creditor Remedies with respect to any of its Senior Priority Collateral, each of the Term Collateral Agents, the other Term Claimholders, the ABL Collateral Agent and the other ABL Claimholders may enforce the provisions of the Term Collateral Documents or ABL Collateral Documents, as applicable, and exercise rights, powers and remedies thereunder, all in such order and in such manner as it may determine in the exercise of its sole discretion. Such exercise and enforcement shall include the rights of an agent appointed by any Senior Claimholder to Dispose of its Senior Priority Collateral upon foreclosure, to incur expenses in connection with such

26

#4814-6502-9968
#91731356v11

Disposition, and to exercise with respect to its Senior Priority Collateral all the rights and remedies of a secured creditor under applicable law.

      3.4.   <u>Claimholders Permitted Actions</u>.  Anything to the contrary in Sections 3.1 and 3.2 notwithstanding, each of the Term Collateral Agents, the other Term Claimholders, the ABL Collateral Agent and the other ABL Claimholders may, but shall not be obligated to:

          (a)    if an Insolvency Proceeding has been commenced by or against the Borrower or any other Loan Party, file a proof of claim or statement of interest with respect to the Term Collateral or the ABL Collateral, as the case may be, or otherwise with respect to the Term Obligations or the ABL Obligations, as the case may be;

          (b)    take any action (not adverse to the priority status of the Liens on the Senior Priority Collateral of the Collateral Agent and other Claimholders of the other Class, or the rights of the Collateral Agent or any other Claimholders of the other Class to Exercise any Secured Creditor Remedies) in order to create, perfect, preserve, protect or prove (but, subject to Section 3.1(a) or 3.2(a), as the case may be, not enforce) its Lien on its Term Collateral or ABL Collateral, as the case may be, in each case, to the extent not inconsistent with the terms of this Agreement;

          (c)    file any necessary responsive or defensive pleadings in opposition to any motion, claim, adversary proceeding, or other pleading made by any Person objecting to or otherwise seeking the disallowance of its claims or any claims of the other Claimholders of its Class or the avoidance of any Liens on any Collateral securing any Obligations of its Class, in each case, to the extent not inconsistent with the terms of this Agreement;

          (d)    file any pleadings, objections, motions or agreements that assert rights or interests available to unsecured creditors of the Loan Parties arising under the Bankruptcy Code or any similar federal, state or foreign bankruptcy, insolvency, reorganization, receivership or similar law, in each case not inconsistent with the terms of this Agreement; <u>provided</u> that any judgment Lien obtained in connection therewith shall be subject to the relative Lien priorities set forth in this Agreement;

          (e)    vote on any Plan of Reorganization, file any proof of claim and make other filings and make any arguments and motions, in each case to the extent not inconsistent with the terms of this Agreement;

          (f)    exercise any of its other rights or remedies referred to in Section 3.1(a) or 3.2(a), as the case may be, after the expiration of the Term Standstill Period or ABL Standstill Period, as applicable, or in Section 3.7 or 3.8 to the extent permitted thereby;

          (g)    make a cash bid on all or any portion of the Term Collateral or the ABL Collateral, as applicable, in any foreclosure proceeding or action;

          (h)    make a credit bid on all or any portion of the Term Collateral or the ABL Collateral, as applicable, <u>provided</u> that there is a Discharge of any Senior Obligations secured by Senior Liens on such Collateral in cash in full prior to or upon consummation of any such credit bid;

          (i)    join in (but not exercise any control with respect to) any judicial foreclosure proceeding or other judicial lien enforcement proceeding with respect to the Senior Priority Collateral of the other Class initiated by any Claimholder of the other Class to the extent that any such action could not reasonably be expected, in any material respect, to restrain, hinder, limit, delay for any material period or

27

otherwise interfere with the Exercise of Secured Creditor Remedies by the Claimholders of other Class (it being understood that (i) with respect to ABL Priority Collateral, neither the Term Collateral Agents nor any other Term Claimholder shall be entitled to receive any Proceeds thereof unless otherwise expressly permitted herein and (ii) with respect to the Term Priority Collateral, neither the ABL Collateral Agent nor any other ABL Claimholder shall be entitled to receive any Proceeds thereof unless otherwise expressly permitted herein);

(j)       engage or retain consultants, valuation firms, appraisers, investment bankers and accountants, and perform or engage third parties to perform audits, examinations and appraisals of any Collateral, for the sole purpose of valuing such Collateral and not for the purpose of marketing or conducting a Disposition of such Collateral; provided, however, that the Junior Claimholders with respect to any Collateral shall not take any of the foregoing actions if such actions would interfere in any material respect with the enforcement by the Senior Claimholders with respect to such Collateral of their Senior Liens; and

(k)       commence, or join in filing of a petition for the commencement of, any involuntary Insolvency Proceeding of the type described in clause (a), (b) or (d) of the definition of such term or exercise any of its rights during any Insolvency Proceeding to the extent expressly permitted by Section 6.

Except as expressly set forth in this Agreement (including Sections 3.1(a), 3.2(a), 3.4 and 6), each Term Claimholder and each ABL Claimholder shall have any and all rights and remedies it may have as a creditor (including as an unsecured creditor) under any applicable law, including the right to the Exercise of Secured Creditor Remedies; provided, however, that (a) the Exercise of Secured Creditor Remedies with respect to the Collateral (and any judgment Lien obtained in connection therewith or otherwise) shall be subject to the Lien priorities set forth herein and to the provisions of this Agreement, and (b) the exercise of any rights or remedies as unsecured creditors of the Loan Parties shall not be inconsistent with the terms of this Agreement.  The ABL Collateral Agent and the other ABL Claimholders may enforce the provisions of the ABL Loan Documents, the Term Collateral Agents and the other Term Claimholders may enforce the provisions of the Term Loan Documents, and the Collateral Agents and the other Claimholders may Exercise any Secured Creditor Remedies, all in such order and in such manner as they may determine in the exercise of their sole discretion, consistent with the terms of this Agreement (including Sections 2, 3 and 6) and mandatory provisions of applicable law; provided, however, that each of the ABL Collateral Agent and the Controlling Term Agent agrees to provide to the other (x) an Enforcement Notice prior to its Exercise of Secured Creditor Remedies and (y) copies of any notices that it is required under applicable law to deliver to the Borrower or any other Loan Party; provided further, however, that the ABL Collateral Agent's failure to provide copies of any such notices to the Term Collateral Agents shall not impair any of the ABL Collateral Agent's or other ABL Claimholders' rights hereunder or under any of the ABL Loan Documents, and the Term Collateral Agents' failure to provide copies of any such notices to the ABL Collateral Agent shall not impair any of the Term Collateral Agents' or any other Term Claimholders' rights hereunder or under any of the Term Loan Documents.  Each of the Term Collateral Agents, for itself and on behalf of each other Term Claimholder, and the ABL Collateral Agent, for itself and on behalf of each other ABL Claimholder, agrees that it and its related Claimholders will not institute any suit or other proceeding or assert in any suit, Insolvency Proceeding or other proceeding any claim, in the case of the Term Collateral Agents and each other Term Claimholder, against either the ABL Collateral Agent or any other ABL Claimholder, and in the case of the ABL Collateral Agent and each other ABL Claimholder, against either the Term Collateral Agents or any other Term Claimholder, seeking damages from or other relief by way of specific performance, instructions or otherwise, with respect to, any action taken or omitted to be taken by such Person with respect to the Collateral which is consistent with the terms of this Agreement, and none of such Persons shall be liable for any such action taken or omitted to be taken.

28

#4814-6502-9968
#91731356v11

3.5.     Retention of Proceeds.

(a)     The Term Claimholders shall not be permitted to retain any proceeds of ABL Priority Collateral in connection with any Exercise of Secured Creditor Remedies in any circumstance unless and until the Discharge of ABL Priority Obligations has occurred, and any such proceeds received or retained in any other circumstance will be subject to Section 4.2.

(b)     The ABL Claimholders shall not be permitted to retain any proceeds of Term Priority Collateral in connection with any Exercise of Secured Creditor Remedies in any circumstance unless and until the Discharge of Term Priority Obligations has occurred, and any such proceeds received or retained in any other circumstance will be subject to Section 4.2.

(c)     Notwithstanding anything contained in this Agreement to the contrary, in the event of any Disposition or series of related Dispositions that includes ABL Priority Collateral and Term Priority Collateral where the aggregate sales price is not allocated between the ABL Priority Collateral and the Term Priority Collateral being Disposed (including in connection with or as a result of the sale of the Equity Interests of a Loan Party), solely for purposes of this Agreement, the portion of the aggregate sales price determined to be Proceeds of the ABL Priority Collateral on the one hand and Proceeds of the Term Priority Collateral on the other hand shall be allocated first to the ABL Priority Collateral in an amount equal to the lesser of (x) the total proceeds of such Disposition and (y) the book value of such sold ABL Priority Collateral recorded on the applicable Loan Party's books in accordance with GAAP on the date of such Disposition, with the balance, if any, allocated to the Term Priority Collateral.

3.6.     Non-Interference.  Subject to Sections 3.1, 3.2, 3.3, 3.4, and 6.4(b), each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, and the ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, hereby:

(a)     agrees that it and its related Claimholders will not, directly or indirectly, knowingly take any action that would restrain, hinder, limit, delay, or otherwise interfere with any Exercise of Secured Creditor Remedies by the Claimholders of the other Class with respect to any Senior Priority Collateral of such other Class, or that is otherwise prohibited hereunder, including any Disposition of any Senior Priority Collateral of such other Class, whether by foreclosure or otherwise;

(b)     waives any and all rights it or its related Claimholders may have as a junior lien creditor or otherwise to object to the manner in which the Claimholders of the other Class seek to enforce or collect any Obligations of such other Class (subject to the terms of this Agreement insofar as any such enforcement or collection relates to the Collateral constituting junior priority Collateral of such other Class) or to enforce or realize their Senior Liens on any Senior Priority Collateral of such other Class, regardless of whether any action or failure to act by or on behalf of any Claimholders of such other Class is adverse to the interest of it or its related Claimholders; and

(c)     agrees that it and its related Claimholders will not knowingly take or cause to be taken any action the purpose or effect of which is to make any junior lien that it or any of its related Claimholders has on any Collateral equal with, or to give it or its related Claimholders any preference or priority relative to, any Senior Lien on such Collateral;

(d)     agrees it will not seek, and will waive any right, to have any Senior Priority Collateral or any part thereof of the other Class marshaled upon any foreclosure or other Disposition of such Senior Priority Collateral; and

29

(e)      will not attempt, directly or indirectly, whether by judicial proceedings (including in any Insolvency Proceeding) or otherwise, to challenge the enforceability of any provision of this Agreement.

3.7.    <u>Inspection and Access Rights</u>.

(a)      If the Term Collateral Agents, or any agent or representative of the Term Collateral Agents, shall, after any Term Default, obtain possession or physical control of any of the Term Priority Collateral, such Term Collateral Agent shall promptly notify the ABL Collateral Agent in writing of that fact, and the ABL Collateral Agent shall, within 30 calendar days thereafter, notify the Term Collateral Agents in writing as to whether the ABL Collateral Agent desires to exercise its access rights under this Section 3.7 with respect to such Term Priority Collateral.  Upon delivery of such notice by the ABL Collateral Agent to the Term Collateral Agents, the parties shall confer in good faith to coordinate with respect to the ABL Collateral Agent's exercise of such access rights.  Consistent with the definition of "Use Period," access rights may apply to differing parcels of real properties at differing times, in which case, a differing Use Period will apply to each such property.

(b)      Without limiting any rights the ABL Collateral Agent or any other ABL Claimholder may otherwise have under applicable law or by agreement and whether or not the Term Collateral Agents or any other Term Claimholder has commenced and is continuing to Exercise any Secured Creditor Remedies of the Term Claimholders, in the event any Term Collateral Agent, or any agent or representative of the Term Collateral Agents, shall have obtained possession or physical control of any Term Priority Collateral and the ABL Collateral Agent shall have delivered the written notice of its intent to exercise its access rights under this Section 3.7 as provided in Section 3.7(a), then the ABL Collateral Agent or any other Person (including any ABL Claimholder) acting with the consent, or on behalf, of the ABL Collateral Agent shall have the right, and the Term Collateral Agents and the other Term Claimholders will reasonably cooperate in connection therewith, at the sole cost and expense of the ABL Collateral Agent and the other ABL Claimholders and upon reasonable advance written notice to the Term Collateral Agents, during the Use Period (i) during normal business hours on any Business Day, to access ABL Priority Collateral that (A) is stored or located in or on, (B) has become an accession with respect to (within the meaning of Section 9-335 of the UCC), or (C) has been commingled with (within the meaning of Section 9-336 of the UCC) any such Term Priority Collateral, and (ii) access, on a non-exclusive basis, any such Term Priority Collateral (including Equipment (including any processors, computers and other machinery related to the storage or processing of records, documents or files), Fixtures, Intellectual Property, General Intangibles and real property), for purposes of (A) assembling and storing the ABL Priority Collateral and completing the processing of and turning into finished goods of any ABL Priority Collateral consisting of work-in process, semi-finished goods or raw materials, (B) selling any or all of the ABL Priority Collateral located on such Term Priority Collateral, whether in bulk, in lots or to customers in the ordinary course of business or otherwise, (C) removing any or all of the ABL Priority Collateral located on such Term Priority Collateral, or (D) taking reasonable actions to protect, secure and otherwise enforce the rights of the ABL Collateral Agent and the other ABL Claimholders in and to the ABL Priority Collateral, <u>provided</u> that if the ABL Collateral Agent conducts a public auction or private sale of the ABL Priority Collateral at any of the real properties subject to a Mortgage that constitutes Term Priority Collateral, the ABL Collateral Agent shall provide the Term Collateral Agents with two Business Days' advance written notice and use reasonable efforts to hold such auction or sale in a manner which would not unduly disrupt the Term Collateral Agents' or any other Term Claimholder's use of such real properties.  The Term Collateral Agents and the other Term Claimholders may not sell, assign or otherwise transfer the Term Priority Collateral prior to the expiration of the Use Period unless the purchaser, assignee or transferee thereof agrees to be bound by the provisions of this Section 3.7.

30

**Debtors' Exhibit No. 14**
**Page 40 of 93**

(c)     During the period of actual occupation, use and/or control by the ABL Collateral Agent or any other ABL Claimholder (or their respective employees, agents, advisers and representatives) of any Term Priority Collateral pursuant to Section 3.7(b), the ABL Collateral Agent and the other ABL Claimholders shall be obligated to promptly repair at their expense any actual physical damage (but not any diminution in value) to such Term Priority Collateral or other assets or property on which such Term Priority Collateral is located resulting from such occupancy, use or control, and to leave such Term Priority Collateral in substantially the same condition as it was at the commencement of such occupancy, use or control, ordinary wear and tear excepted (it being understood that any equipment breakdowns or any wear or loss of tools in the ordinary course of operations shall be deemed to be ordinary wear and tear).  In the event, and only in the event, that in connection with its use of some or all of the premises constituting Term Priority Collateral, the ABL Collateral Agent requires the services of any employees of any Loan Party, the ABL Claimholders shall pay directly to any such employees the appropriate, allocated wages of such employees, if any, during the time periods that the ABL Collateral Agent requires their services to the extent not paid for by the Loan Parties.  Notwithstanding the foregoing, in no event shall the ABL Collateral Agent or the other ABL Claimholders have any liability to the Term Collateral Agents or the other Term Claimholders pursuant to this Section 3.7 as a result of any condition (including any environmental condition, claim or liability) on or with respect to the Term Priority Collateral or other assets or property on which such Term Priority Collateral is located existing prior to the date of the exercise by the ABL Collateral Agent or the other ABL Claimholders of their rights under this Section 3.7 and the ABL Collateral Agent and the other ABL Claimholders shall have no duty or liability to maintain the Term Priority Collateral in a condition or manner better than that in which it was maintained prior to the use thereof by the ABL Collateral Agent or any other ABL Claimholders, or for any diminution in the value of the Term Priority Collateral that results from ordinary wear and tear resulting from the use of the Term Priority Collateral by the ABL Collateral Agent or any other ABL Claimholders in the manner and for the time periods specified under this Section 3.7 (it being understood that any equipment breakdowns or any wear or loss of tools in the ordinary course of operations shall be deemed to be ordinary wear and tear. Without limiting the rights granted in this Section 3.7, the ABL Collateral Agent and the ABL Claimholders shall reasonably cooperate with the Term Collateral Agents and the other Term Claimholders in connection with any efforts made by the Term Collateral Agents and the other Term Claimholders to sell the Term Priority Collateral.

(d)     The ABL Collateral Agent and the other ABL Claimholders shall not be obligated to pay any amounts to the Term Collateral Agents or the other Term Claimholders (or any Person claiming by, through or under the Term Claimholders, including any purchaser of the Term Priority Collateral) or to the Loan Parties for or in respect of the use by the ABL Collateral Agent and the other ABL Claimholders of the Term Priority Collateral pursuant to this Section 3.7; provided that the ABL Claimholders shall be obligated to reimburse the Term Collateral Agents and the other Term Claimholders for their reasonable out-of-pocket costs and expenses incurred as a result of the Term Collateral Agents and the other Term Claimholders providing access and use of the Term Priority Collateral to the ABL Collateral Agent or any other ABL Claimholder (or any other Person acting with the consent, or on behalf, of any of the foregoing) at the written request of the ABL Collateral Agent as contemplated by Section 3.7(b).

(e)     The ABL Claimholders shall (i) use the Term Priority Collateral in accordance with applicable law, (ii) insure for damage to property and liability to Persons, including property and liability insurance for the benefit of the Term Claimholders, and (iii) pay, indemnify and hold the Term Collateral Agents, the other Term Claimholders and each of their respective officers, agents, directors and employees harmless from and against any third party liability resulting solely and directly from the ABL Collateral Agent's or any other ABL Claimholders' or any of their respective agents, representatives or invitees', occupancy, use or control of the Term Priority Collateral as set forth in this Section 3.7 (ordinary wear and tear excepted (it being understood that any equipment breakdowns or any wear or loss of tools in the ordinary course of operations shall be deemed to be ordinary wear and tear)).

31

#4814-6502-9968
#91731356v11

(f)      The Term Collateral Agents and the other Term Claimholders shall use commercially reasonable efforts to not hinder or obstruct the ABL Collateral Agent and the other ABL Claimholders from exercising the rights described in Section 3.7(b).

(g)      Subject to the terms hereof, the Controlling Term Agent may advertise and conduct public auctions or private sales of the Term Priority Collateral, without the involvement of or interference by any ABL Claimholder or liability to any ABL Claimholder, as long as, in the case of an actual sale, the respective purchaser assumes and agrees to the obligations of the Term Collateral Agents and the other Term Claimholders under this Section 3.7.

3.8.      <u>Sharing of Information and Access</u>.   Subject to the confidentiality limitations imposed by law or agreement (other than any agreement to the extent the confidentiality provisions of such agreement are for the benefit of any Loan Party), in the event that the ABL Collateral Agent shall, in the exercise of its rights under the ABL Collateral Documents or otherwise, receive possession or control of any books and records (whether in the form of a writing or stored in any data equipment or data record in the physical possession of the ABL Collateral Agent) of any Loan Party which contain information identifying or pertaining to the Term Priority Collateral, the ABL Collateral Agent shall, upon written request from the Controlling Term Agent and as promptly as practicable thereafter, either make available to the Controlling Term Agent such books and records for inspection and duplication or provide to the Controlling Term Agent copies thereof.   Subject to the confidentiality limitations imposed by law or agreement (other than any agreement to the extent the confidentiality provisions of such agreement are for the benefit of any Loan Party), in the event that either Term Collateral Agent shall, in the exercise of its rights under the Term Collateral Documents or otherwise, receive possession or control of any books and records (whether in the form of a writing or stored in any data equipment or data record in the physical possession of either Term Collateral Agent) of any Loan Party which contain information identifying or pertaining to any of the ABL Priority Collateral, such Term Collateral Agent shall, upon written request from the ABL Collateral Agent and as promptly as practicable thereafter, either make available to the ABL Collateral Agent such books and records for inspection and duplication or provide the ABL Collateral Agent copies thereof.

3.9.      <u>Tracing of and Priorities in Proceeds</u>.   (a) The ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, and each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, further agree that until the earlier of an issuance of any Enforcement Notice by such Claimholder or a bankruptcy or insolvency constituting a Term Default or a bankruptcy or insolvency constituting an ABL Default, as applicable, then exists, any proceeds of Collateral, whether or not deposited under control agreements, which are used by any Loan Party to acquire other property which is Collateral shall not (solely as between the Claimholders) be treated as Proceeds of Collateral for purposes of determining the relative Lien priorities in the Collateral which was so acquired.

(b)      Each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, acknowledges that, under the terms of the ABL Loan Documents, the Loan Parties are or may be required to ensure that all payments on Accounts constituting ABL Priority Collateral, or on other ABL Priority Collateral, are made to Deposit Accounts or lockboxes related thereto that constitute ABL Priority Collateral, and agrees that, notwithstanding anything to the contrary set forth herein, no ABL Claimholder shall have any duty, responsibility or obligation to any Term Claimholder with respect to such Deposit Accounts or lockboxes, including no obligation to pay over to any Term Claimholder any payments received into any such Deposit Account or lockbox at any time.   Each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, agrees that, notwithstanding anything to the contrary set forth herein (including Section 4.2) to the extent that Proceeds of any Term Priority Collateral are deposited into any Deposit Accounts or lockboxes and are subsequently applied to repay or prepay the ABL Obligations, in the absence of the ABL Administrative Agent's willful misconduct or gross negligence

32

#4814-6502-9968
#9173356v11

(such absence to be presumed unless otherwise determined by a final, non-appealable judgment of a court of competent jurisdiction), the sole remedy of the Term Claimholders with regard to such Proceeds shall be to proceed directly against the Loan Parties unless, prior to the time such proceeds are applied to repay or prepay the ABL Obligations, the ABL Administrative Agent has actually received a Notification of Proceeds.  For purposes of the foregoing, a "Notification of Proceeds" means a notice in writing from the Controlling Term Agent or any Loan Party to the ABL Administrative Agent containing the following information:  (a) the Term Priority Collateral being sold or otherwise Disposed, (b) the proposed date of the sale or other Disposition, (c) the approximate amount of Proceeds therefrom and (d) the name and contact information of the buyer or transferee of such Term Priority Collateral or, in the case of an auction, of the auctioneer.

3.10.   Permits and Licenses.  (a) Each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, (i) consents to the grant by the Borrower or any other Loan Party to the ABL Collateral Agent of a non-exclusive royalty-free license to use any Intellectual Property of such Loan Party that is subject to a Lien held by the Term Collateral Agents and (ii) grants, in its capacity as a Claimholder and to the extent of its rights and interests therein, to the ABL Collateral Agent a non-exclusive royalty-free license to use any Intellectual Property constituting Term Priority Collateral that is subject to a Senior Lien held by the Term Collateral Agents (and, as applicable, to Dispose of any such Intellectual Property that is embedded in or otherwise integral to any Inventory, to the extent the Loan Party owning such Inventory would Dispose of such Intellectual Property in connection with the Disposition of such Inventory), in each case in connection with the Exercise of Secured Creditor Remedies of any Lien held by the ABL Collateral Agent upon any Inventory or other ABL Priority Collateral of any Loan Party and to the extent the use of such Intellectual Property is necessary or appropriate, in the good faith opinion of the ABL Collateral Agent, to process, ship, produce, store, complete, supply, lease, sell or otherwise Dispose of any such Inventory or other ABL Priority Collateral in any lawful manner in connection with such Exercise of Secured Creditor Remedies.

(b)   Each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, agrees that if the ABL Collateral Agent shall require rights available under any permit or license controlled by the Term Collateral Agents or any other Term Claimholder in connection with the Exercise of Secured Creditor Remedies, the Term Collateral Agents or such other Term Claimholder shall take all such actions as shall be reasonably available to it (at the sole cost and expense of the Loan Parties), consistent with applicable law, and as shall be reasonably requested by the ABL Collateral Agent to make such rights available to the ABL Collateral Agent, subject to the Term Lenders Liens.  The ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, agrees that if the Term Collateral Agents shall require rights available under any permit or license controlled by the ABL Collateral Agent or any other ABL Claimholder in connection with the Exercise of Secured Creditor Remedies, the ABL Collateral Agent or such other ABL Claimholder shall take all such actions as shall be reasonably available to it (at the sole cost and expense of the Loan Parties), consistent with applicable law, and as shall be reasonably requested by the Term Collateral Agents to make such rights available to the Term Collateral Agents, subject to the ABL Lenders Liens.

(c)   The Term Collateral Agents and the other Term Claimholders may not sell, assign or otherwise transfer the Term Priority Collateral unless the purchaser, assignee or transferee thereof agrees to be bound by the provisions of this Section 3.10.

**SECTION 4.  Proceeds.**

4.1.   Application of Proceeds.

33

#4814-6502-9968
#9173356v11

(a)    Prior to the Discharge of ABL Obligations, whether or not any Insolvency Proceeding has been commenced by or against any Loan Party, any ABL Priority Collateral received in connection with any Exercise of Secured Creditor Remedies (including as a result of any collection, sale, foreclosure or other realization or distribution of or in respect of any ABL Priority Collateral (whether or not expressly characterized as such) or in any Insolvency Proceeding) shall be applied in the following order of priority:

(i)    <u>first</u>, to the ABL Obligations (other than the principal amount thereof in excess of the ABL Priority Cap) and for cash collateral as required under the ABL Loan Documents, and in such order as specified in the applicable ABL Loan Documents until the Discharge of ABL Priority Obligations has occurred;

(ii)    <u>second</u>, to the Term Obligations (other than the principal amount thereof in excess of the Term Priority Cap) in such order as specified in the applicable Term Loan Documents until the Discharge of Term Priority Obligations has occurred;

(iii)    <u>third</u>, to the principal amount of the ABL Obligations in excess of the ABL Priority Cap until the Discharge of ABL Obligations has occurred; and

(iv)    <u>fourth</u>, to the principal amount of the Term Obligations in excess of the Term Priority Cap.

(b)    Prior to the Discharge of Term Obligations, whether or not any Insolvency Proceeding has been commenced by or against any Loan Party, any Term Priority Collateral received in connection with any Exercise of Secured Creditor Remedies (including as a result of any collection, sale, foreclosure or other realization or distribution of or in respect of any Term Priority Collateral (whether or not expressly characterized as such) or in any Insolvency Proceeding) shall be applied in the following order of priority

(i)    <u>first</u>, to the Term Obligations (other than the principal amount thereof in excess of the Term Priority Cap) and for cash collateral as required under the Term Loan Documents, and in such order as specified in the applicable Term Loan Documents until the Discharge of Term Priority Obligations has occurred;

(ii)    <u>second</u>, to the ABL Obligations (other than the principal amount thereof in excess of the ABL Priority Cap) in such order as specified in the applicable ABL Loan Documents until the Discharge of ABL Priority Obligations has occurred;

(iii)    <u>third</u>, to the principal amount of the Term Obligations in excess of the Term Priority Cap until the Discharge of Term Obligations has occurred; and

(iv)    <u>fourth</u>, to the principal amount of the ABL Obligations in excess of the ABL Priority Cap.

(c)    If any Exercise of Secured Creditor Remedies with respect to the Collateral produces non-cash proceeds, then such non-cash proceeds shall, subject to Section 4.2, be held by the Collateral Agent that conducted such Exercise of Secured Creditor Remedies and/or sold for cash prior to the application of the proceeds thereof as additional Collateral and, at such time as such non-cash proceeds are monetized, shall be applied as set forth above.

#4814-6502-9968
#91731356v11

4.2.     Turnover.  So long as the Discharge of Senior Obligations with respect to any Collateral has not occurred, whether or not any Insolvency Proceeding has been commenced by or against any Loan Party, if (a) any Junior Claimholder of any Class receives any Collateral that is subject to any Senior Lien or any Proceeds of any such Collateral, or any other payment in connection with or on account of such Collateral, (i) in connection with the enforcement or exercise of any right or remedy (including any right of set-off) relating to such Collateral, the transfer of such Collateral or Proceeds to any Junior Claimholder by any Person holding a Lien on such Collateral that is subordinate to the junior Lien on such Collateral, or proceeds of any insurance policy claim or of any condemnation or similar proceeding (or any deed in lieu of condemnation) in respect of such Collateral or (ii) as a distribution or recovery in any Insolvency Proceeding, (b) any Junior Claimholder receives, in contravention of Section 2.3, any Collateral of the type that would not constitute Senior Priority Collateral of such Junior Claimholder, or any Proceeds of any such Collateral, or any other payment in connection with or on account of such Collateral, or (c) any Junior Claimholder receives any additional Collateral referred to in Section 6.4 that pursuant to such Section is subject to the provisions of this Section 4.2, or any Proceeds of such additional Collateral, or any other payment in connection with or on account of such additional Collateral, then, in each case, such Collateral or Proceeds thereof, or such other payment, shall be segregated and held in trust and forthwith, to the extent not prohibited by applicable law, shall be transferred or paid over to the Senior Collateral Agent for the benefit of the Senior Claimholders in the same form as received, with any necessary endorsements, for application in accordance with Section 4.1 (to the extent required), or as a court of competent jurisdiction may otherwise direct; provided, however, (A) in the case of any Proceeds of Term Priority Collateral received by the ABL Collateral Agent or any other ABL Claimholder in connection with a Disposition of Term Priority Collateral by any Loan Party, unless a Notification of Proceeds has been received by the ABL Collateral Agent (and in each case subject to Section 3.9(b)), neither the ABL Collateral Agent nor any other ABL Claimholder shall have any obligation to transfer or pay over any Proceeds of such Disposition to the Term Collateral Agents, and (B) any payments made by the Loan Parties in respect of the Term Obligations with proceeds of loans or advances under the ABL Loan Documents shall not constitute a breach of this Section 4.2 and shall not be subject to any turnover as provided for in this Section 4.2.  Until the Discharge of ABL Priority Obligations occurs, each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, hereby irrevocably constitutes and appoints the ABL Collateral Agent and any officer or agent of the ABL Collateral Agent, with full power of substitution, as its true and lawful attorney in fact with full irrevocable power and authority in the place and stead of the Term Collateral Agents or the other Term Claimholders, as the case may be, or in the ABL Collateral Agent's own name, from time to time in the ABL Collateral Agent's discretion exercised in good faith, for the purpose of carrying out the terms of this Section 4.2 with respect to ABL Priority Collateral, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary to accomplish the purposes of this Section 4.2 with respect to ABL Priority Collateral.  Until the Discharge of Term Priority Obligations occurs, ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, hereby irrevocably constitutes and appoints the Controlling Term Agent and any officer or agent of the Controlling Term Agent, with full power of substitution, as its true and lawful attorney in fact with full irrevocable power and authority in the place and stead of the ABL Collateral Agent or the other ABL Claimholders, as the case may be, or in the Controlling Term Agent's own name, from time to time in the Controlling Term Agent's discretion exercised in good faith, for the purpose of carrying out the terms of this Section 4.2 with respect to Term Priority Collateral, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary to accomplish the purposes of this Section 4.2 with respect to Term Priority Collateral.

### SECTION 5.  Releases; Dispositions; Other Agreements.

5.1.     Releases.

#4814-6502-9968
#91731356v11

**Debtors' Exhibit No. 14**
**Page 45 of 93**

(a)     If, in connection with the Exercise of Secured Creditor Remedies by the ABL Collateral Agent with respect to ABL Priority Collateral as provided for in Section 3 (including any Disposition of any ABL Priority Collateral by any Loan Party with the consent of the ABL Collateral Agent acting in accordance with the terms of the ABL Loan Documents), the ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, releases any of its ABL Lenders Liens on any part of the ABL Priority Collateral, then the Term Lenders Liens of the Term Collateral Agents on such ABL Priority Collateral shall be automatically, unconditionally, and simultaneously released; provided, however, that, to the extent the Proceeds of such ABL Priority Collateral are not applied to reduce ABL Obligations in accordance with Section 4.1(a), the Term Collateral Agents shall retain a Lien on such Proceeds in accordance with the terms of this Agreement. Each of the Term Collateral Agents, for itself or on behalf of the other Term Claimholders, promptly shall execute and deliver to the ABL Collateral Agent such termination or amendment statements, releases, and other documents as the ABL Collateral Agent may reasonably request in writing to effectively confirm such release, at the cost and expense of the Loan Parties and without the consent or direction of any other Term Claimholders.

(b)     If, in connection with the Exercise of Secured Creditor Remedies by the Term Collateral Agents with respect to Term Priority Collateral as provided for in Section 3 (including any Disposition of any Term Priority Collateral by any Loan Party with the consent of the Controlling Term Agent acting in accordance with the terms of the Term Loan Documents), the Controlling Term Agent, for itself and on behalf of the other Term Claimholders, releases any of its Term Lenders Liens on any part of the Term Priority Collateral, then the ABL Lenders Liens of the ABL Collateral Agent on such Term Priority Collateral shall be automatically, unconditionally, and simultaneously released; provided, however, that, to the extent the Proceeds of such Term Priority Collateral are not applied to reduce Term Obligations in accordance with Section 4.1(b), the ABL Collateral Agent shall retain a Lien on such Proceeds in accordance with the terms of this Agreement. The ABL Collateral Agent, for itself or on behalf of the other ABL Claimholders, promptly shall execute and deliver to the Term Collateral Agents such termination or amendment statements, releases, and other documents as the Controlling Term Agent may reasonably request to effectively confirm such release, at the cost and expense of the Loan Parties and without the consent or direction of any other ABL Claimholders.

(c)     If, in connection with any Disposition of any ABL Priority Collateral permitted under the terms of the ABL Loan Documents and the terms of the Term Loan Documents, the ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, releases any of its ABL Lenders Liens on the portion of the ABL Priority Collateral that is the subject of such Disposition, then the Term Lenders Liens of the Term Collateral Agents on such Collateral shall be automatically, unconditionally, and simultaneously released; provided, that to the extent the Proceeds of such ABL Priority Collateral are not applied to reduce ABL Obligations in accordance with Section 4.1(a), the Term Collateral Agents shall retain a Lien on such Proceeds in accordance with the terms of this Agreement. Each of the Term Collateral Agents, for itself or on behalf of the other Term Claimholders, promptly shall execute and deliver to the ABL Collateral Agent such termination or amendment statements, releases, and other documents as the ABL Collateral Agent may reasonably request to effectively confirm such release, at the cost and expense of the Loan Parties and without the consent or direction of any other Term Claimholders.

(d)     If, in connection with any Disposition of any Term Priority Collateral permitted under the terms of the Term Loan Documents and the terms of the ABL Loan Documents, the Controlling Term Agent, for itself and on behalf of the other Term Claimholders, releases any of its Term Lenders Liens on the portion of the Term Priority Collateral that is the subject of such Disposition, then the ABL Lenders Liens of the ABL Collateral Agent on such Collateral shall be automatically, unconditionally, and simultaneously released; provided that to the extent the Proceeds of such Term Priority Collateral are not applied to reduce Term Obligations in accordance with Section 4.1(b), the ABL Collateral Agent shall retain a Lien on such Proceeds in accordance with the terms of this Agreement. The ABL Collateral Agent,

36

#4814-6502-9968
#91731356v11

for itself or on behalf of the other ABL Claimholders, promptly shall execute and deliver to the Controlling Term Agent such termination or amendment statements, releases, and other documents as the Controlling Term Agent may reasonably request to effectively confirm such release, at the cost and expense of the Loan Parties and without the consent or direction of any other ABL Claimholders.

(e)      Until the Discharge of ABL Obligations occurs, each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, hereby irrevocably constitutes and appoints the ABL Collateral Agent and any officer or agent of the ABL Collateral Agent, with full power of substitution, as its true and lawful attorney in fact with full irrevocable power and authority in the place and stead of the Term Collateral Agents or the other Term Claimholders, as the case may be, or in the ABL Collateral Agent's own name, from time to time as elected by the ABL Collateral Agent in good faith, for the purpose of carrying out the terms of this Section 5.1 with respect to ABL Priority Collateral, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary to accomplish the purposes of this Section 5.1 with respect to ABL Priority Collateral, including any endorsements or other instruments of transfer or release.

(f)      Until the Discharge of ABL Obligations occurs, to the extent that the ABL Claimholders (i) have released any Lien on ABL Priority Collateral and any such Lien is later reinstated or (ii) obtain any new Lien on assets constituting ABL Priority Collateral from Loan Parties, then, subject to the proviso contained in Section 2.3, the Term Claimholders shall be granted a Lien on any such ABL Priority Collateral, subject to the relative Lien priorities set forth in Section 2.1.

(g)      Until the Discharge of Term Obligations occurs, the ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, hereby irrevocably constitutes and appoints the Controlling Term Agent and any officer or agent of the Controlling Term Agent, with full power of substitution, as its true and lawful attorney in fact with full irrevocable power and authority in the place and stead of the ABL Collateral Agent or the other ABL Claimholders, as the case may be, or in the Controlling Term Agent's own name, from time to time as elected by the Controlling Term Agent in good faith, for the purpose of carrying out the terms of this Section 5.1 with respect to Term Priority Collateral, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary to accomplish the purposes of this Section 5.1 with respect to Term Priority Collateral, including any endorsements or other instruments of transfer or release.

(h)      Until the Discharge of Term Obligations occurs, to the extent that the Term Claimholders (i) have released any Lien on Term Priority Collateral and any such Lien is later reinstated or (ii) obtain any new Liens on assets constituting Term Priority Collateral from Loan Parties, then, subject to the proviso contained in Section 2.3, the ABL Claimholders shall be granted a Lien on any such Term Priority Collateral, subject to the relative Lien priorities set forth in Section 2.1.

5.2.    <u>Insurance</u>.

(a)      Unless and until the Discharge of ABL Obligations has occurred:  (i) the ABL Collateral Agent and the other ABL Claimholders shall have the sole and exclusive right, subject to the rights of the Loan Parties under the ABL Loan Documents, to adjust and settle any claim under any insurance policy to the extent solely in respect of ABL Priority Collateral (including any claim in respect of any business interruption insurance or credit insurance with respect to any Accounts) and to approve any award granted in any condemnation or similar proceeding (or any deed in lieu of condemnation) to the extent solely in respect of the ABL Priority Collateral; and (ii) all proceeds of any such insurance claim and any such award (or any payments with respect to a deed in lieu of condemnation) if in respect of ABL

37

#4814-6502-9968
#91731356v11

Priority Collateral, shall be paid, subject to the rights of the Loan Parties under the ABL Loan Documents, in accordance with Section 4.1(a).

(b)     Unless and until the Discharge of Term Obligations has occurred:   (i) the Controlling Term Agent and the other Term Claimholders shall have the sole and exclusive right, subject to the rights of the Loan Parties under the Term Loan Documents, to adjust and settle any claim under any insurance policy to the extent solely in respect of Term Priority Collateral and to approve any award granted in any condemnation or similar proceeding (or any deed in lieu of condemnation) to the extent solely in respect of Term Priority Collateral; and (ii) all proceeds of any such insurance claim and any such award (or any payments with respect to a deed in lieu of condemnation) if in respect of Term Priority Collateral, shall be paid, subject to the rights of Loan Parties under the Term Loan Documents, in accordance with Section 4.1(b).

Notwithstanding anything contained in this Agreement to the contrary, in the event that any proceeds are derived from any claim under any insurance policy in respect of both ABL Priority Collateral and Term Priority Collateral where the allocation of proceeds is not stipulated between ABL Priority Collateral and Term Priority Collateral, then solely for purposes of this Agreement, the portion of the aggregate proceeds deemed to be proceeds of the ABL Priority Collateral on the one hand and Term Priority Collateral on the other hand shall be determined by first allocating to the ABL Priority Collateral an amount equal to the lesser of (x) the total proceeds of such insurance policy and (y) the book value of such ABL Priority Collateral subject to such insurance event recorded on the applicable Loan Party's books in accordance with GAAP on the date of the loss associated with the insurance proceeds, with the balance, if any, allocated to the Term Priority Collateral.  If any insurance claim includes both ABL Priority Collateral and Term Priority Collateral, the insurer will not settle such claim separately with respect to ABL Priority Collateral and Term Priority Collateral, and if the ABL Collateral Agent and the Controlling Term Agent are unable after negotiating in good faith to agree on the settlement for such claim, each Controlling Collateral Agent may apply to a court of competent jurisdiction to make a determination as to the settlement of such claim, and the court's determination shall be binding upon the parties.  If a Collateral Agent or any other Claimholder of any Class shall, at any time, receive any proceeds of any such insurance policy or any such award or payment in contravention of this Section 5.2, it shall pay such proceeds over to the Controlling Collateral Agent of the other Class in accordance with the terms of Section 4.2.

5.3.     Amendments; Refinancings.

(a)     The U.S. ABL Loan Documents and the ABL Obligations may be amended, restated, Refinanced, supplemented or otherwise modified in accordance with their terms without the consent of any Term Collateral Agent or any Term Claimholder, all without affecting the Lien priorities provided for herein or the other provisions hereof; provided, however, that, without the consent of the Controlling Term Agent, no such amendment, restatement, Refinancing, supplement or modification (or successive amendments, restatements, Refinancings, supplements or modifications) shall contravene any provision of this Agreement; provided, further, that, the applicable agent for the holders of obligations in respect of such Refinancing shall have become party to this Agreement pursuant to, and by satisfying the conditions set forth in, Section 9.4 hereof.

(b)     The First Lien Loan Documents and the First Lien Obligations may be amended, restated, Refinanced (as permitted pursuant to the terms of the ABL Loan Documents and the Second Lien Loan Documents), supplemented or otherwise modified in accordance with their terms without the consent of ABL Administrative Agent, any ABL Claimholder, Second Lien Collateral Agent or any Second Lien Claimholder, all without affecting the Lien priorities provided for herein or the other provisions hereof; provided, however, that, without the consent of the ABL Administrative Agent and Second Lien Collateral Agent, no such amendment, restatement, Refinancing, supplement or modification (or successive

38

#4814-6502-9968
#9173356v11

amendments, restatements, Refinancings, supplements or modifications) shall contravene any provision of this Agreement; provided, further, that, the applicable agent for the holders of obligations in respect of such Refinancing shall have become party to this Agreement pursuant to, and by satisfying the conditions set forth in, Section 9.4 hereof.

(c)     The Second Lien Loan Documents and the Second Lien Obligations may be amended, restated, Refinanced (as permitted pursuant to the terms of the ABL Loan Documents and the First Lien Loan Documents), supplemented or otherwise modified in accordance with their terms without the consent of ABL Administrative Agent, any ABL Claimholder, First Lien Collateral Agent or any First Lien Claimholder, all without affecting the Lien priorities provided for herein or the other provisions hereof; provided, however, that, without the consent of the ABL Administrative Agent and First Lien Collateral Agent, no such amendment, restatement, Refinancing, supplement or modification (or successive amendments, restatements, Refinancings, supplements or modifications) shall contravene any provision of this Agreement; provided, further, that, the applicable agent for the holders of obligations in respect of such Refinancing shall have become party to this Agreement pursuant to, and by satisfying the conditions set forth in, Section 9.4 hereof.

(d)     In connection with any Refinancing, the ABL Collateral Agent and the Term Collateral Agents shall enter (and are hereby authorized to enter without the consent of any other Claimholder), at the written request and expense of the Loan Parties, into such amendments or other modifications of this Agreement as are reasonably necessary to add the new collateral agent (or similar representative) in respect of such Refinancing Indebtedness as a party hereto and to provide such new collateral agent (or similar representative), and the other holders of such Refinancing Indebtedness, the rights and obligations hereunder of the Collateral Agent in respect of, or the holders of, the Indebtedness or other Obligations being Refinanced and to otherwise reflect such Refinancing (and in connection therewith to provide for technical modifications to this Agreement to facilitate the foregoing), it being the intent that such amendments or other modifications (x) establish that the Liens on any Collateral securing any Refinancing Indebtedness will have the same priorities relative to the Liens on such Collateral securing Obligations of the other Class as the Liens that secured the Indebtedness being Refinanced had immediately prior to such Refinancing and (y) provide to the parties benefited by the Liens on any Collateral securing such Refinancing Indebtedness the same rights and obligations relative to the parties holding Liens on such Collateral securing Obligations of the other Class as the parties that were benefited by the Liens that secured such Indebtedness or other Obligations being Refinanced had immediately prior to such Refinancing.

(e)     Notwithstanding the terms of Section 5.3(d):

(i)     In the event that the Term Collateral Agents have not commenced the actions contemplated by Section 5.3(d) in connection with any permitted Refinancing of the ABL Obligations within 10 Business Days after the delivery by the Borrower to the Term Collateral Agents of a written request to do so, then, unless the Term Collateral Agents have provided written notice to the Borrower and the ABL Collateral Agent within such 10 Business Days' period setting forth in reasonable detail the basis for its determination that it is not required to take such action in accordance with Section 5.3(d), the ABL Collateral Agent, without the consent of the Term Collateral Agents, is authorized to amend or otherwise modify this Agreement in the manner set forth in Section 5.3(d); provided that such Refinancing (and any Liens relating thereto), are permitted under the Term Loan Documents then extant.

(ii)     Notwithstanding the terms of Section 5.3(d), in the event that the ABL Collateral Agent does not take the actions contemplated by Section 5.3(d) in connection with any permitted Refinancing of the Term Obligations within 10 Business Days after the delivery by the Borrower to the ABL Collateral Agent of a written request to do so, then, unless the ABL Collateral

39

#4814-6502-9968
#9173356v11

Agent has provided written notice to the Borrower and the Controlling Term Agent within such 10 Business Days' period setting forth in reasonable detail the basis for its determination that it is not required to take such action in accordance with Section 5.3(d), the Term Collateral Agents, without the consent of the ABL Collateral Agent, is authorized to amend or otherwise modify this Agreement in the manner set forth in Section 5.3(d); provided that such Refinancing (and any Liens relating thereto), are permitted under the ABL Loan Documents then extant.

(f)      So long as the Discharge of ABL Obligations has not occurred, each Term Collateral Document shall include the following language (or similar language acceptable to the ABL Collateral Agent):  "Notwithstanding anything herein to the contrary, the Liens and security interests granted to the Collateral Agent pursuant to this Agreement in any Collateral and the exercise of any right or remedy by the Collateral Agent with respect to any Collateral hereunder are subject to the provisions of the ABL Intercreditor Agreement.  In the event of any conflict between the terms of the ABL Intercreditor Agreement and the terms of this Agreement, the terms of the ABL Intercreditor Agreement shall govern and control."

(g)      So long as the Discharge of Term Obligations has not occurred, each U.S. ABL Collateral Document shall include the following language (or similar language acceptable to the Term Collateral Agents):  "Notwithstanding anything herein to the contrary, the Liens and security interests granted to the ABL Collateral Agent pursuant to this Agreement in any Collateral and the exercise of any right or remedy by the ABL Collateral Agent with respect to any Collateral hereunder are subject to the provisions of the ABL Intercreditor Agreement.  In the event of any conflict between the terms of the ABL Intercreditor Agreement and the terms of this Agreement, the terms of the ABL Intercreditor Agreement shall govern and control."

5.4.    <u>Bailee for Perfection</u>.

(a)      The ABL Collateral Agent and the Term Collateral Agents each agree to hold or control that part of the Collateral that is in its possession or control (or in the possession or control of its agents or bailees) (such Collateral, which shall include Collateral subject to deposit account control agreements or security account control agreements, being referred to as the "<u>Pledged Collateral</u>"), as gratuitous bailee and as a non-fiduciary agent for the Term Collateral Agents or the ABL Collateral Agent, as applicable (such bailment and agency being intended, among other things, to satisfy the requirements of Sections 8-301(a)(2), 9-313(c), 9-104, 9-105, 9-106, and 9-107 of the UCC), solely for the purpose of perfecting the security interest granted under the Term Loan Documents or the U.S. ABL Loan Documents, as applicable, subject to the terms and conditions of this Section 5.4.  The Term Collateral Agents and the other Term Claimholders hereby appoint the ABL Collateral Agent as their gratuitous bailee for the purposes of perfecting their security interest in all Pledged Collateral in which the ABL Collateral Agent has a perfected security interest under the UCC.  The ABL Collateral Agent and the other ABL Claimholders hereby appoint the Term Collateral Agents as their gratuitous bailee for the purposes of perfecting their security interest in all Pledged Collateral in which the Term Collateral Agents has a perfected security interest under the UCC.  Each of the ABL Collateral Agent and the Term Collateral Agents hereby accept such appointments pursuant to this Section 5.4(a) and acknowledges and agrees that it shall act for the benefit of the Claimholders of the other Class with respect to any Pledged Collateral and that any proceeds received by the ABL Collateral Agent or the Term Collateral Agents, as the case may be, under any Pledged Collateral shall be applied in accordance with Section 4.  Unless and until the Discharge of ABL Obligations has occurred, the Term Collateral Agent agrees to promptly notify the ABL Collateral Agent of any Pledged Collateral constituting ABL Priority Collateral held or controlled by it (or its agents or bailees, other than the ABL Collateral Agent) or actually known by it to be held or controlled by any other Term Claimholders, and at any time prior to the Discharge of ABL Obligations, the Term Collateral Agents and each other Term Claimholder agrees to deliver to the ABL Collateral Agent any such Pledged

40

#4814-6502-9968
#91731356v11

Collateral held by it, together with any necessary endorsements (or otherwise allow the ABL Collateral Agent to obtain control of such Pledged Collateral). Subject to Section 3.9(b) and except as otherwise provided in Section 4.2 in respect of Proceeds of Term Priority Collateral, unless and until the Discharge of Term Obligations has occurred, the ABL Collateral Agent agrees to promptly notify the Term Collateral Agents in writing of any Pledged Collateral constituting Term Priority Collateral held or controlled by it (or its agents or bailees, other than the Term Collateral Agents) or actually known by it to be held by any other ABL Claimholders, and at any time prior to the Discharge of Term Obligations, the ABL Collateral Agent and each other ABL Claimholder agrees to deliver to the Controlling Term Agent any such Pledged Collateral held by it, together with any necessary endorsements (or otherwise allow the Term Collateral Agents to obtain control of such Pledged Collateral).

(b)     Subject to the terms of this Agreement, until the Discharge of ABL Priority Obligations has occurred, the ABL Collateral Agent shall be entitled to deal with the ABL Priority Collateral in accordance with the terms of the ABL Loan Documents as if the Liens of the Term Collateral Agents under the Term Loan Documents did not exist. The rights of the Term Collateral Agents in respect of any ABL Priority Collateral shall at all times be subject to the terms of this Agreement.

(c)     Subject to the terms of this Agreement, until the Discharge of Term Priority Obligations has occurred, the Controlling Term Agent shall be entitled to deal with the Term Priority Collateral in accordance with the terms of the Term Loan Documents as if the Liens of the ABL Collateral Agent under the ABL Loan Documents did not exist. The rights of the ABL Collateral Agent in respect of any Term Priority Collateral shall at all times be subject to the terms of this Agreement.

(d)     The ABL Collateral Agent shall have no obligation whatsoever to the Term Collateral Agents or any other Term Claimholder to ensure that the Pledged Collateral is genuine or owned by any of Loan Parties or to preserve rights or benefits of any Person except as expressly set forth in this Section 5.4. The Term Collateral Agents shall have no obligation whatsoever to the ABL Collateral Agent or any other ABL Claimholder to ensure that the Pledged Collateral is genuine or owned by any of Loan Parties or to preserve rights or benefits of any Person except as expressly set forth in this Section 5.4. The duties or responsibilities of the ABL Collateral Agent under this Section 5.4 shall be limited solely to holding or controlling the Pledged Collateral as bailee and agent in accordance with this Section 5.4 and delivering the Pledged Collateral upon a Discharge of ABL Priority Obligations as provided in paragraph (f) of this Section 5.4. The duties or responsibilities of the Term Collateral Agents under this Section 5.4 shall be limited solely to holding or controlling the Pledged Collateral as bailee and agent in accordance with this Section 5.4 and delivering the Pledged Collateral upon a Discharge of Term Priority Obligations as provided in paragraph (g) of this Section 5.4.

(e)     The ABL Collateral Agent acting pursuant to this Section 5.4 shall not have by reason of the ABL Collateral Documents, the Term Collateral Documents, this Agreement, or any other document a fiduciary relationship in respect of the Term Collateral Agents or any other Term Claimholder. The Term Collateral Agents acting pursuant to this Section 5.4 shall not have by reason of the ABL Collateral Documents, the Term Collateral Documents, this Agreement, or any other document a fiduciary relationship in respect of the ABL Collateral Agent or any other ABL Claimholder.

(f)     Upon the Discharge of ABL Priority Obligations, the ABL Collateral Agent (i) shall deliver or cause to be delivered the remaining Pledged Collateral (if any) in its possession or in the possession of its agents or bailees (other than the Term Collateral Agents), together with any necessary endorsements, first, to the Controlling Term Agent to the extent Term Obligations remain outstanding as confirmed in writing by any Term Collateral Agent, and, to the extent that both Term Collateral Agents confirm no Term Obligations are outstanding, second, to the applicable Loan Party to the extent no ABL Obligations or Term Obligations that are secured by such Pledged Collateral remain outstanding (in each

41

case, so as to allow such Person to obtain possession or control of such Pledged Collateral) or as a court of competent jurisdiction may otherwise direct and (ii) will cooperate with the Term Collateral Agents and such Loan Party, as the case may be, in assigning (without recourse to or warranty by the ABL Collateral Agent or any other ABL Claimholder or agent or bailee thereof) control over any other ABL Priority Collateral under its control. At such time, the ABL Collateral Agent further agrees to take, at the sole cost and expense of the Loan Parties, all other action reasonably requested in writing by the Controlling Term Agent (including amending any outstanding control agreements) to enable the Controlling Term Agent to obtain a first priority security interest in the Collateral.

(g)      Upon the Discharge of Term Priority Obligations, the Term Collateral Agents (i) shall deliver the remaining Pledged Collateral (if any) in its possession or in the possession of its agents or bailees (other than the ABL Collateral Agent) together with any necessary endorsements, first, to the ABL Collateral Agent to the extent the ABL Obligations remain outstanding as confirmed in writing by the ABL Collateral Agent, and, to the extent that the ABL Collateral Agent confirms no ABL Obligations are outstanding, second, to the applicable Loan Party to the extent no ABL Obligations or Term Obligations that are secured by such Pledged Collateral remain outstanding (in each case, so as to allow such Person to obtain possession or control of such Pledged Collateral) or as a court of competent jurisdiction might otherwise direct and (ii) will cooperate with the ABL Collateral Agent and such Loan Party, as the case may be, in assigning (without recourse to or warranty by the Term Collateral Agents or any other Term Claimholder or agent or bailee thereof) control over any other Term Priority Collateral under its control. At such time, the Term Collateral Agents further agree to take, at the sole cost and expense of the Loan Parties, all other action reasonably requested in writing by the ABL Collateral Agent (including amending any outstanding control agreements) to enable the ABL Collateral Agent to obtain a first priority security interest in the Collateral.

5.5.     When Discharge of Obligations Deemed to Not Have Occurred.

(a)      If the Loan Parties enter into any Refinancing of the ABL Obligations with Indebtedness permitted under the Term Loan Documents that is intended to be (and under the Term Loan Documents is permitted to be) secured by the ABL Priority Collateral on a basis that is senior to the Term Lenders Liens thereon and by the Term Priority Collateral on a basis that is junior to the Term Lenders Liens thereon, then a Discharge of ABL Obligations shall be deemed not to have occurred for all purposes of this Agreement, and the Refinancing Indebtedness in respect of such ABL Obligations shall be treated as ABL Obligations for all purposes of this Agreement, including for purposes of the relative Lien priorities and rights in respect of Collateral set forth herein, and the collateral agent (or similar representative) in respect of the obligations under such Refinancing shall be the ABL Collateral Agent for all purposes of this Agreement; provided, however, that the holders of such Refinancing Indebtedness, and the collateral agent (or similar representative) of such holders, bind themselves to the terms of this Agreement pursuant to an amendment or joinder effected in accordance with Section 5.3(d) or Section 9.4, as applicable.

(b)      If the Loan Parties enter into any Refinancing of the First Lien Obligations with Indebtedness permitted under the ABL Loan Documents that is intended to be (and under the ABL Loan Documents is permitted to be) secured by the Term Priority Collateral on a basis that is senior to the ABL Lenders Liens thereon and by the ABL Priority Collateral on a basis that is junior to the ABL Lenders Liens thereon, then a Discharge of First Lien Obligations shall be deemed not to have occurred for all purposes of this Agreement, and the Refinancing Indebtedness in respect of such First Lien Obligations shall be treated as First Lien Obligations for all purposes of this Agreement, including for purposes of the relative Lien priorities and rights in respect of Collateral set forth herein, and the collateral agent (or similar representative) in respect of the obligations under such Refinancing shall be the First Lien Collateral Agent for all purposes of this Agreement; provided, however, that the holders of such Refinancing Indebtedness, and the collateral agent (or similar representative) of such holders, bind themselves to the terms of this

42

#4814-6502-9968
#91731356v11

Agreement pursuant to an amendment or joinder effected in accordance with Section 5.3(d) or Section 9.4, as applicable.

(c)     If the Loan Parties enter into any Refinancing of the Second Lien Obligations with Indebtedness permitted under the ABL Loan Documents that is intended to be (and under the ABL Loan Documents is permitted to be) secured by the Term Priority Collateral on a basis that is senior to the ABL Lenders Liens thereon and by the ABL Priority Collateral on a basis that is junior to the ABL Lenders Liens thereon, then a Discharge of Second Lien Obligations shall be deemed not to have occurred for all purposes of this Agreement, and the Refinancing Indebtedness in respect of such Second Lien Obligations shall be treated as Second Lien Obligations for all purposes of this Agreement, including for purposes of the relative Lien priorities and rights in respect of Collateral set forth herein, and the collateral agent (or similar representative) in respect of the obligations under such Refinancing shall be the Second Lien Collateral Agent for all purposes of this Agreement; provided, however, that the holders of such Refinancing Indebtedness, and the collateral agent (or similar representative) of such holders, bind themselves to the terms of this Agreement pursuant to an amendment or joinder effected in accordance with Section 5.3(d) or Section 9.4, as applicable.

5.6.     Injunctive Relief.  The ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, and each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, agree that should any Claimholder in any way take, attempt to, or threaten to take any action contrary to terms of this Agreement with respect to the Collateral, or fail to take any action required by this Agreement, the Term Collateral Agents, the ABL Collateral Agent or any other Claimholder, as the case may be, may obtain relief against such Claimholder by injunction, specific performance, or other appropriate equitable relief, it being understood and agreed that non-breaching Claimholders' damages from such actions may at that time be difficult to ascertain and may be irreparable, and (b) each Claimholder waives any defense that other Claimholders can demonstrate damage and/or be made whole by the awarding of damages.  The ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, and each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, hereby irrevocably waive any defense based on the adequacy of a remedy at law and any other defense which might be asserted to bar the remedy of specific performance in any action which may be brought by the ABL Collateral Agent or the other ABL Claimholders or the Term Collateral Agents or the other Term Claimholders, as the case may be.

5.7.     Obligations Purchase Right.

(a)     Without prejudice to the enforcement of any remedies of any Claimholder, whether under the Credit Documents or otherwise, the Collateral Agents of each Class, on behalf of its related Claimholders, agrees that, in the event a Purchase Event of the type described in clause (c) of the definition of such term shall have occurred, or any other Purchase Event shall have occurred with respect to Obligations of such Class (the "Subject Obligations" which, if such Subject Obligations are the Term Obligations, shall include both the First Lien Obligations and the Second Lien Obligations), the Claimholders of the other Class (or any of them) may, at their sole expense and effort, upon notice to the ABL Collateral Agent if the ABL Obligations are such first Class or the Term Collateral Agent if the Term Obligations are such first class (which notice shall be irrevocable and shall specify the date of closing (which shall be not less than five (5) nor more than thirty (30) Business Days after the receipt by the applicable Collateral Agent of such first Class of the irrevocable notice from the Controlling Collateral Agent of the other Class' election to exercise the purchase option as provided for in this Section 5.7), require the Claimholders holding the Subject Obligations (the "Subject Secured Parties") to assign and delegate to the Claimholders of such other Class, without warranty or representation or recourse, all (but not less than all) of the Subject Obligations (including all, but not less than all, unfunded commitments under the applicable Credit Documents, if any, that are in effect); provided that (i) such assignment and delegation

43

shall not conflict with any applicable law and (ii) the Claimholders of such other Class shall have paid to the applicable Collateral Agent or Collateral Agents of such first Class, for the account of the Subject Claimholders, in immediately available funds, an amount equal to 100% of the principal of all Indebtedness included in such Subject Obligations plus all accrued and unpaid interest thereon plus all accrued and unpaid fees (including prepayment fees) and all premiums applicable thereto and all the other Subject Obligations then outstanding (which shall include, with respect to (A) the aggregate face amount of the letters of credit, cash collateral in an amount equal to 102% thereof, (B) any ABL Secured Hedging Obligations, 100% of the aggregate amount of such ABL Secured Hedging Obligations (giving effect to any netting arrangements) that any Loan Party or a Subsidiary would be required to pay if the relevant ABL Secured Hedge Agreements giving rise to such ABL Secured Hedging Obligations were terminated at such time, (C) any ABL Cash Management Obligations, 100% of the aggregate amount of such ABL Cash Management Obligations (giving effect to any netting arrangements) that any Loan Party or a Subsidiary would be required to pay if the ABL Cash Management Agreement giving rise to such ABL Cash Management Obligations were terminated at such time (or, if not then terminable, if such ABL Cash Management Agreement were terminated on the first date on which the party providing such services would be entitled to terminate it (assuming that such party promptly takes all actions (including the giving of any notice of termination) that under the terms of such ABL Cash Management Agreement are required to be taken in order to effect such termination)), (D) any Term Secured Hedging Obligations, 100% of the aggregate amount of such Term Secured Hedging Obligations (giving effect to any netting arrangements) that any Loan Party or a Subsidiary would be required to pay if the relevant Term Secured Hedge Agreements giving rise to such Term Secured Hedging Obligations were terminated at such time, and (E) any Term Cash Management Obligations, 100% of the aggregate amount of such Term Cash Management Obligations (giving effect to any netting arrangements) that any Loan Party or a Subsidiary would be required to pay if the Term Cash Management Agreement giving rise to such Term Cash Management Obligations were terminated at such time (or, if not then terminable, if such Term Cash Management Agreement were terminated on the first date on which the party providing such services would be entitled to terminate it (assuming that such party promptly takes all actions (including the giving of any notice of termination) that under the terms of such Term Cash Management Agreement are required to be taken in order to effect such termination)). In order to effectuate the foregoing, the applicable Collateral Agent or Collateral Agents of such first Class shall calculate, upon the written request of the Collateral Agent of such other Class from time to time, the amount in cash (and, with respect to clause (A) above, cash collateral) that would be necessary so to purchase the Subject Obligations. Notwithstanding anything herein to the contrary, so long as the First Lien Collateral Agent is the Controlling Term Agent, only the First Lien Collateral Agent and the First Lien Claimholders may exercise the purchase right specified in this Section 5.7.

(b)     Following exercise of any such purchase right by the Claimholders of any Class in accordance with the terms of this Section 5.7, the Claimholders shall cooperate in consummating promptly thereafter such assignment and delegation using the applicable assignment forms provided in the Credit Documents of the applicable Class or, if no such assignment forms are provided, using the assignment and assumption forms customary for the type of Obligations being assigned. In addition, contemporaneously with the consummation of the purchase by the Claimholders of any Class of the Subject Obligations of the other Class, the Collateral Agent and Administrative Agent of such purchased Class shall resign as the "Collateral Agent" and "Administrative Agent" under the applicable Credit Documents (and shall execute and deliver all such documents and instruments reasonably requested by the Collateral Agent of the purchasing Class to assign and transfer any Collateral, together with any and all rights under third-party agreements related to Collateral and/or access thereto, to the Collateral Agent of the purchasing Class and to maintain the validity, perfection and priority of the Liens on the Collateral in favor of the Collateral Agent of the purchasing Class) and the Collateral Agent of the purchasing Class shall be designated as the successor "Collateral Agent" under the Credit Documents of the purchased Class and the Administrative

44

Agent of the purchasing Class shall be designated as the successor "Administrative Agent" under the Credit Documents of the purchased Class.

**SECTION 6.  Insolvency Proceedings.**

6.1.    Financing.

(a)    Until the Discharge of ABL Obligations, if any Loan Party shall be subject to any Insolvency Proceeding and the ABL Collateral Agent consents to the use of cash collateral (as such term is defined in Section 363(a) of the Bankruptcy Code; herein, "Cash Collateral") constituting ABL Priority Collateral or consents to permit any Loan Party to obtain financing provided by any one or more ABL Claimholders or any other Person under Section 364 of the Bankruptcy Code or under any similar federal, state or foreign bankruptcy, insolvency, reorganization, receivership or similar law, secured by a Lien on such ABL Priority Collateral that is (i) senior to or pari passu with the ABL Lenders Liens on the ABL Priority Collateral and (ii) junior to the Term Lenders Liens on the Term Priority Collateral (such financing, which may include a "roll-up" or "roll-over" of all or any of the ABL Obligations, is referred to herein as a "DIP Financing"), and if the Loan Parties desire to obtain authorization from the applicable Bankruptcy Court to use such Cash Collateral or to obtain such DIP Financing, then each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, agrees that, so long as the maximum principal amount of such DIP Financing (and any unfunded commitments under such DIP Financing and the face amount of any letters of credit or other financial accommodations issued and outstanding under such DIP Financing), does not exceed 115% of the principal balance of the ABL Obligations as of the date of the commencement of such Insolvency Proceeding, the Term Claimholders will consent (and hereby are deemed to have consented), and will not object to or oppose, or support any other Person objecting to or opposing, such use of such Cash Collateral or such DIP Financing and, to the extent the ABL Lenders Liens on the ABL Priority Collateral are subordinated to or pari passu with any new Liens securing such DIP Financing, each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, will subordinate (and hereby subordinates) the Term Lenders Liens on the ABL Priority Collateral (x) to the Liens securing such DIP Financing (the extent consistent with the other provisions of this Agreement) and (y) to any professional fee or U.S. trustee fee "carve-out"; provided that (A) the Term Collateral Agents and the other Term Claimholders shall retain the Term Lenders Liens on the Collateral and, as to the Term Priority Collateral only, the Term Lenders Liens shall have the same priority as existed prior to the commencement of the Insolvency Proceeding and any Lien on the Term Priority Collateral securing such DIP Financing shall be junior and subordinate to the Term Lenders Liens on the Term Priority Collateral, (B) all Liens on ABL Priority Collateral securing any such DIP Financing shall be senior to or pari passu with the ABL Lenders Liens on the ABL Priority Collateral and (C) the terms of such DIP Financing or Cash Collateral order do not require any Term Claimholders to extend additional credit pursuant to such DIP Financing or Cash Collateral order.  The foregoing provisions of this Section 6.1(a) shall not restrict the Term Collateral Agents or any other Term Claimholders from objecting to or opposing any provision in any Cash Collateral order or DIP Financing documentation relating to any provision or content of a Plan of Reorganization other than a condition in the DIP Financing that provides that all Obligations in respect of such DIP Financing must be paid in full upon the confirmation of any Plan of Reorganization; provided that the inability of the Term Claimholders to receive a Lien on actions under Chapter 5 of the Bankruptcy Code or proceeds thereof shall not affect the agreements and waivers set forth in this section.

(b)    Until the Discharge of Term Obligations, if any Loan Party shall be subject to any Insolvency Proceeding and the Controlling Term Agent consents to the use of Cash Collateral constituting Term Priority Collateral or consents to permit any Loan Party to obtain financing provided by any one or more Term Claimholders or any other Person under Section 364 of the Bankruptcy Code or under any similar federal, state or foreign bankruptcy, insolvency, reorganization, receivership or similar law, secured by a Lien on such Term Priority Collateral that is (i) senior to or pari passu with the Term Lenders Liens

45

**Debtors' Exhibit No. 14**
**Page 55 of 93**

on the Term Priority Collateral and (ii) junior to the ABL Lenders Liens on the ABL Priority Collateral (such financing, which may include a "roll-up" or "roll-over" of all or any of the Term Obligations, is referred to herein as a "Term DIP Financing"), and if the Loan Parties desire to obtain authorization from the applicable Bankruptcy Court to use such Cash Collateral or to obtain such Term DIP Financing, then the ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, agrees that, so long as the principal amount of such Term DIP Financing (x) if the Controlling Term Agent is the First Lien Agent, does not exceed 115% of the principal balance of the First Lien Obligations as of the date of the commencement of such Insolvency Proceeding and (y) if the Controlling Term Agent is the Second Lien Collateral Agent, does not exceed 115% of the principal balance of the principal balance of the Second Lien Obligations as of the date of the commencement of such Insolvency Proceeding, the ABL Claimholders will consent (and hereby are deemed to have consented to), and will not object to or oppose, or support any other Person objecting to or opposing, such use of such Cash Collateral or such Term DIP Financing and, to the extent the Term Lenders Liens on the Term Priority Collateral are subordinated to or pari passu with any new Liens securing such Term DIP Financing, the ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, will subordinate (and hereby subordinates) the ABL Lenders Liens on the Term Priority Collateral (x) to the Liens securing such Term DIP Financing (to the extent consistent with the other provisions of this Agreement) and (y) to any professional fee or U.S. trustee fee "carve-out"; provided that (A) the ABL Collateral Agent and the other ABL Claimholders shall retain the ABL Lenders Liens on the Collateral and, as to the ABL Priority Collateral only, the ABL Lenders Liens shall have the same priority as existed prior to the commencement of the Insolvency Proceeding and any Lien on the ABL Priority Collateral securing such Term DIP Financing shall be junior and subordinate to the ABL Lenders Liens on the ABL Priority Collateral, (B) all Liens on Term Priority Collateral securing any such Term DIP Financing shall be senior to or pari passu with the Term Lenders Liens on the Term Priority Collateral and (C) the terms of such Term DIP Financing or Cash Collateral order do not require any ABL Claimholders to extend additional credit pursuant to such Term DIP Financing or Cash Collateral order.  The foregoing provisions of this Section 6.1(b) shall not restrict the ABL Collateral Agent or any other ABL Claimholder from objecting to or opposing any provision in any Cash Collateral order or Term DIP Financing documentation relating to any provision or content of a Plan of Reorganization other than a condition in the Term DIP Financing that provides that all Obligations in respect of such Term DIP Financing must be paid in full upon the confirmation of any Plan of Reorganization; provided that the inability of the ABL Claimholders to receive a Lien on actions under Chapter 5 of the Bankruptcy Code or proceeds thereof shall not affect the agreements and waivers set forth in this section.

(c)     Each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, agrees that, with respect to any Cash Collateral use or DIP Financing that meets the requirements of Section 6.1(a), no Term Claimholder will request adequate protection in connection with its rights as a holder of Liens on the ABL Priority Collateral, except as expressly agreed by the ABL Collateral Agent or as permitted by Section 6.4(b)(ii).  The ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, agrees that, with respect to any Cash Collateral use or Term DIP Financing that meets the requirements of Section 6.1(b), no ABL Claimholder will request adequate protection in connection with its rights as a holder of Liens on the Term Priority Collateral, except as expressly agreed by the Term Collateral Agents or as permitted by Section 6.4(b)(ii).

(d)     All ABL Lenders Liens granted to the ABL Collateral Agent or any other ABL Claimholder, and all Term Lenders Liens granted to the Term Collateral Agents or any other Term Claimholders, in any Insolvency Proceeding, whether as adequate protection or otherwise, are intended by the parties to be and shall be deemed to be subject to the Lien priorities set forth in Section 2.1 and the other terms and conditions of this Agreement.

6.2.     Sales.  Subject to Section 3.7, each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, and the ABL Collateral Agent, for itself and on behalf of the other ABL

46

#4814-6502-9968
#91731356v11

Claimholders, agrees that the Term Claimholders or the ABL Claimholders, as the case may be, will consent to (and hereby are deemed to have consented to), and will not object or oppose (or support any Person in objecting to or opposing), a motion to Dispose any Senior Priority Collateral of the other Class free and clear of any Liens under Section 363 of the Bankruptcy Code (or any comparable provision of any other similar federal, state or foreign bankruptcy, insolvency, reorganization, receivership or similar law), including any motion for approval of bidding procedures in connection therewith or any other related or ancillary matters, if the requisite ABL Claimholders under the ABL Credit Agreement or the requisite Term Claimholders under the Term Credit Agreements, as the case may be, have consented to such Disposition of such assets, so long as the Liens of the Term Claimholders or the ABL Claimholders, as the case may be, on such assets attach to the proceeds thereof subject to the relative Lien priorities set forth in this Agreement and such motion does not impair the rights of the Term Claimholders or the ABL Claimholders, as the case may be, under Section 363(k) of the Bankruptcy Code (so long as the right of the Term Claimholders to offset their Term Obligations against the purchase price for any ABL Priority Collateral exists only after the Discharge of ABL Obligations and the right of the ABL Claimholders to offset their ABL Obligations against the purchase price for any Term Priority Collateral exists only after the Discharge of Term Obligations).

      6.3.    <u>Relief from the Automatic Stay</u>.

      (a)    Until the Discharge of ABL Obligations has occurred, the Term Collateral Agents, on behalf of itself and the other Term Claimholders, agrees that the Term Claimholders will not seek (or support any other Person seeking) relief from or modification of the automatic stay or any other stay in any Insolvency Proceeding in respect of the ABL Priority Collateral without the prior written consent of the ABL Collateral Agent.

      (b)    Until the Discharge of Term Obligations has occurred, the ABL Collateral Agent, on behalf of itself and the other ABL Claimholders, agrees that the ABL Claimholders will not seek (or support any other Person seeking) relief from or modification of the automatic stay or any other stay in any Insolvency Proceeding in respect of the Term Priority Collateral without the prior written consent of the Term Collateral Agents.

      6.4.    <u>Adequate Protection</u>.

      (a)    In any Insolvency Proceeding, the ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, and each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, agree that the ABL Claimholders or the Term Claimholders, as the case may be, will not object to or oppose (or support any other Person objecting to or opposing) (i) any motion or other request for adequate protection by (x) the Term Collateral Agents or any other Term Claimholder, with respect to the Term Priority Collateral, prior to the Discharge of Term Obligations or (y) the ABL Collateral Agent or any other ABL Claimholder, with respect to the ABL Priority Collateral, prior to the Discharge of ABL Obligations, as the case may be, or (ii) any objection claiming a lack of adequate protection by (x) the Term Collateral Agents or any other Term Claimholder, with respect to the Term Priority Collateral, prior to the Discharge of Term Obligations, or (y) the ABL Collateral Agent or any other ABL Claimholder, with respect to the ABL Priority Collateral, prior to the Discharge of ABL Obligations, as the case may be.

      (b)    In any Insolvency Proceeding:

      (i)    The Term Collateral Agents and the other Term Claimholders may seek adequate protection with respect to their rights in the Term Priority Collateral, and the ABL Collateral Agent and the other ABL Claimholders may seek adequate protection with respect to

#4814-6502-9968
#9173356v11

Debtors' Exhibit No. 14
Page 57 of 93

their rights in the ABL Priority Collateral. Notwithstanding the foregoing, however, (1) the Term Claimholders shall not be permitted to receive Post-Petition Interest payments or adequate protection payments from the proceeds of ABL Priority Collateral or any DIP Financing permitted under Section 6 before the Discharge of ABL Obligations, other than with the prior consent of the ABL Claimholders, and (2) the ABL Claimholders shall not be permitted to receive Post-Petition Interest and adequate protection payments from the proceeds of Term Priority Collateral or any Term DIP Financing permitted under Section 6 before the Discharge of Term Obligations other than with the prior consent of the Term Claimholders.

(ii)     Notwithstanding anything in this Section 6 to the contrary, (A) to the extent that the Term Collateral Agents or any other Term Claimholders are granted adequate protection in the form of an additional or replacement Lien on assets of the same type as the Term Priority Collateral, the ABL Claimholders shall be permitted to seek a Lien on such Collateral subject to the relative Lien priority set forth in Section 2.1 (and neither the Term Collateral Agents nor any other Term Claimholder shall object to or oppose (or support any other Person objecting to or opposing) any motion by any ABL Claimholder to receive such a Lien), and (B) to the extent that the ABL Collateral Agent or any other ABL Claimholders are granted adequate protection in the form of an additional or replacement Lien on assets of the same type as the ABL Priority Collateral, the Term Claimholders shall be permitted to seek a Lien on such Collateral subject to the relative Lien priority set forth in Section 2.1 (and neither the ABL Collateral Agent nor any other ABL Claimholder shall object to or oppose (or support any other Person objecting to or opposing) any motion by any Term Claimholder to receive such a Lien).

(iii)     If any ABL Claimholder seeks or requires (or is otherwise granted) adequate protection of its ABL Lenders Liens on the Term Priority Collateral in the form of additional or replacement Lien on assets of the same type as the Term Priority Collateral, then the ABL Collateral Agent, for itself and on behalf of the ABL Claimholders, agrees that the Term Collateral Agents shall be entitled to be granted an additional or replacement Lien on such assets as adequate protection of its senior interest in the Term Priority Collateral and that the additional or replacement Lien thereon of the ABL Collateral Agent or any other ABL Claimholder shall be subordinated and junior to the additional or replacement Lien thereon of the Term Collateral Agents on the same basis as the ABL Lenders Liens are subordinated to the Term Lenders Liens with respect to the Term Priority Collateral under Section 2.1; provided that, to the extent the Term Collateral Agents is not granted such adequate protection in the applicable form, any such additional or replacement Lien and any amounts recovered by or distributed to the ABL Collateral Agent or any other ABL Claimholder pursuant to or as a result of such Lien shall be subject to Section 4.2 to the extent not inconsistent with an order of a court of competent jurisdiction.

(iv)     If any Term Claimholder seeks or requires (or is otherwise granted) adequate protection of its Term Lenders Liens on the ABL Priority Collateral in the form of additional or replacement Lien on assets of the same type as the ABL Priority Collateral, then each of the Term Collateral Agents, for itself and on behalf of the Term Claimholders, agrees that the ABL Collateral Agent shall be entitled to be granted an additional or replacement Lien on such assets as adequate protection of its senior interest in the ABL Priority Collateral and that the additional or replacement Lien thereon of the Term Collateral Agents or any other Term Claimholder shall be subordinated and junior to the additional or replacement Lien thereon of the ABL Collateral Agent on the same basis as the Term Lenders Liens are subordinated to the ABL Lenders Liens with respect to the ABL Priority Collateral under Section 2.1; provided that, to the extent the ABL Collateral Agent is not granted such adequate protection in the applicable form, any such additional or replacement Lien and any amounts recovered by or distributed to the Term Collateral Agents or any other Term Claimholder pursuant to or as a result of such Lien shall be

48

#4814-6502-9968
#91731356v11

subject to Section 4.2 to the extent not inconsistent with an order of a court of competent jurisdiction.

(v)      Except as expressly set forth in Sections 6.1, 6.2 and 6.3 and this Section 6.4, nothing herein shall limit the rights of the Term Collateral Agents or any other Term Claimholder, or the rights of the ABL Collateral Agent or any other ABL Claimholder, to seek adequate protection with respect to their rights in the Collateral in any Insolvency Proceeding (including adequate protection in the form of a cash payment, periodic cash payments or otherwise).

6.5.      <u>Section 1111(b) of the Bankruptcy Code</u>.  Each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, and the ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, agrees that neither it nor its related Claimholders shall object to or oppose (or support any other Person objecting to or opposing), or take any other action to impede, in any Insolvency Proceeding, the right of any Claimholder of the other Class to make an election under Section 1111(b)(2) of the Bankruptcy Code with respect to the Senior Priority Collateral of such Claimholder of the other Class.  Each of the Term Collateral Agents, for itself and the other Term Claimholders, and the ABL Collateral Agent, for itself and the other ABL Claimholders, waives any claim it or its related Claimholders may hereafter have against any Claimholder of the other Class arising out of (a) the election by such Claimholder of the other Class of the application of Section 1111(b)(2) of the Bankruptcy Code or (b) any cash collateral or financing arrangement, and any related grant of a security interest in the Senior Priority Collateral of such Claimholder of the other Class, made in accordance with Section 6.1 in any Insolvency Proceeding.

6.6.      <u>Avoidance Issues</u>.  If any Claimholder is required in any Insolvency Proceeding or otherwise to turn over, disgorge or otherwise pay to the estate of any Loan Party any amount paid in respect of the ABL Obligations or the Term Obligations, as the case may be (a "<u>Recovery</u>"), then such Claimholder shall be entitled to a reinstatement of the ABL Obligations or the Term Obligations, as the case may be, with respect to all such recovered amounts, and all rights, interests, priorities and privileges recognized in this Agreement shall apply with respect to any such reinstated ABL Obligations or Term Obligations, as the case may be.  If this Agreement shall have been terminated prior to such Recovery, this Agreement shall be reinstated in full force and effect, and such prior termination shall not diminish, release, discharge, impair, or otherwise affect the obligations of the parties hereto from such date of reinstatement.  This Section 6.6 shall survive the termination of this Agreement.

6.7.      <u>Plan of Reorganization</u>.

(a)      If, in any Insolvency Proceeding, debt obligations of any reorganized Loan Party secured by Liens upon any property of the reorganized Loan Party are distributed or reinstated (in whole or in part) pursuant to a Plan of Reorganization, both on account of the ABL Obligations and on account of the Term Obligations, then, to the extent the debt obligations distributed on account of the ABL Obligations and on account of the Term Obligations are secured by Liens upon the same property, the relative Lien priorities and other provisions of this Agreement will survive the distribution of such debt obligations pursuant to such Plan of Reorganization and will apply with like effect to the Liens securing such debt obligations.

(b)      The ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, and each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, agrees that neither it nor its related Claimholders shall (i) take or support any other Person in taking any action that is inconsistent with the relative Lien priorities or other provisions of this Agreement or (ii) propose, vote for, or otherwise support directly or indirectly any Non-Conforming Plan of Reorganization (and, in the event

49

of any such proposal, vote or other support of a Non-Conforming Plan of Reorganization by a Claimholder of any Class, the Collateral Agent of the other Class shall be entitled to have any such proposal, vote or support changed or withdrawn).

6.8.    Separate Grants of Security and Separate Classification.  The ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, and each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, acknowledges and agrees that (a) the respective grants of Liens pursuant to the ABL Collateral Documents and the Term Collateral Documents constitute separate and distinct grants of Liens and (b) because of, among other things, their differing rights in the Collateral, (i) the Term Obligations are fundamentally different from the ABL Obligations and (ii) the ABL Obligations are fundamentally different from the Term Obligations and, in each case, must be separately classified in any Plan of Reorganization proposed or confirmed (or approved) in an Insolvency Proceeding.  To further effectuate the intent of the parties as provided in the immediately preceding sentence, if it is held that the claims of the ABL Claimholders and the Term Claimholders in respect of the Collateral constitute claims of the same class (rather than at least two separate classes of secured claims with the relative Lien priorities described in Section 2.1), then the ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, and each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, hereby acknowledge and agree that all distributions from the Collateral shall be made as if such claims were of two separate classes of junior and senior claims (with the effect being that, to the extent that (x) if the aggregate value of the ABL Priority Collateral is sufficient (for this purpose ignoring all claims held by the Term Claimholders thereon), the ABL Claimholders shall be entitled to receive, in addition to amounts distributed to them in respect of principal, pre-petition interest and other ABL Obligations, all amounts owing in respect of Post-Petition Interest that is available from the ABL Priority Collateral, before any distribution is made in respect of the Term Obligations with respect to the ABL Priority Collateral, with each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, agreeing to turn over to the ABL Collateral Agent amounts otherwise received or receivable by any of them with respect to the ABL Priority Collateral to the extent necessary to effectuate the intent of this sentence, even if such turnover has the effect of reducing the aggregate recoveries on the Term Obligations, and (y) if the aggregate value of the Term Priority Collateral is sufficient (for this purpose ignoring all claims held by the ABL Claimholders thereon), the Term Claimholders shall be entitled to receive, in addition to amounts distributed to them in respect of principal, pre-petition interest and other Term Obligations, all amounts owing in respect of Post-Petition Interest that is available from the Term Priority Collateral, before any distribution is made in respect of the ABL Obligations with respect to the Term Priority Collateral, with the ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, agreeing to turn over to the Term Collateral Agents amounts otherwise received or receivable with respect to such Term Priority Collateral by any of them to the extent necessary to effectuate the intent of this sentence, even if such turnover has the effect of reducing the aggregate recoveries on the ABL Obligations).  This Section 6.8 is intended to govern the relationship between the classes of claims held by the ABL Claimholders, on the one hand, and a collective class of claims comprised of each series of claims of the Term Claimholders (as opposed to separate classes of each such series of claims), on the other hand, and, for the avoidance of doubt, nothing set forth herein shall in any way alter or modify the relationship of each series of such separate claims held by the holders of the Term Obligations, including as set forth in the First Lien/Second Lien Intercreditor Agreement if in effect, or otherwise cause such different claims to be combined into one or more classes or otherwise classified in a manner that violates the First Lien/Second Lien Intercreditor Agreement if in effect.

6.9.    Post-Petition Interest.

(a)    The ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, agrees that none of them shall object to or oppose (or support any other Person objecting to or opposing) any claim by the Term Collateral Agents or any other Term Claimholder for allowance in any Insolvency

50

#4814-6502-9968
#9173356v11

Proceeding of Term Obligations consisting or alleged to consist of Post-Petition Interest to the extent of the value of the Term Lenders Liens on the Term Priority Collateral (without regard to the existence of the ABL Lenders Liens thereon) or on the ABL Priority Collateral (after taking into account the ABL Lenders Liens thereon); provided, that, Term Claimholders shall not be permitted to receive Post-Petition Interest payments from the proceeds of ABL Priority Collateral or any  DIP Financing permitted under Section 6.1(a) prior to the Discharge of ABL Obligations, other than with the prior consent of the ABL Claimholders.

(b)  Each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, agrees that none of them shall object to or oppose (or support any other Person objecting to or opposing) any claim by the ABL Collateral Agent or any other ABL Claimholder for allowance in any Insolvency Proceeding of ABL Obligations consisting or alleged to consist of Post-Petition Interest to the extent of the value of the ABL Lenders Liens on the ABL Priority Collateral (without regard to the existence of the Term Lenders Liens thereon) or on the Term Priority Collateral (after taking into account the Term Lenders Liens thereon); provided, that, ABL Claimholders shall not be permitted to receive Post-Petition Interest payments from the proceeds of Term Priority Collateral or any Term DIP Financing permitted under Section 6.1(b) prior to the Discharge of Term Obligations, other than with the prior consent of the Term Claimholders.

**SECTION 7.  Reliance; Waivers; Etc.**

7.1.  Reliance.  Other than any reliance on the terms of this Agreement, the ABL Collateral Agent, on behalf of itself and the other ABL Claimholders, acknowledges that they have, independently and without reliance on the Term Collateral Agents or any other Term Claimholder, and based on documents and information deemed by them appropriate, made their own credit analysis and decision to enter into each of the ABL Loan Documents and be bound by the terms of this Agreement, and that they will continue to make their own credit decision in taking or not taking any action under the ABL Loan Documents or this Agreement.  Other than any reliance on the terms of this Agreement, the Term Collateral Agents, on behalf of itself and the other Term Claimholders, acknowledges that they have, independently and without reliance on the ABL Collateral Agent or any other ABL Claimholder, and based on documents and information deemed by them appropriate, made their own credit analysis and decision to enter into each of the Term Loan Documents and be bound by the terms of this Agreement, and that they will continue to make their own credit decision in taking or not taking any action under the Term Loan Documents or this Agreement.

7.2.  No Warranties or Liability.  The ABL Collateral Agent, on behalf of itself and the other ABL Claimholders, acknowledges and agrees that, except as set forth in Section 8, neither the Term Collateral Agents nor any other Term Claimholder has made any express or implied representation or warranty, including with respect to the execution, validity, legality, completeness, collectability, or enforceability of any of the Term Loan Documents, the ownership of any Collateral, or the perfection or priority of any Liens thereon.  Except as otherwise expressly provided herein, the Term Collateral Agents and the other Term Claimholders will be entitled to manage and supervise the Term Loan Documents in accordance with applicable law and as they may otherwise, in their sole discretion, deem appropriate.  The Term Collateral Agents, on behalf of itself and the other Term Claimholders, acknowledges and agrees that, except as set forth in Section 8, neither the ABL Collateral Agent nor any other ABL Claimholder has made no express or implied representation or warranty, including with respect to the execution, validity, legality, completeness, collectability, or enforceability of any of the ABL Loan Documents, the ownership of any Collateral, or the perfection or priority of any Liens thereon.  Except as otherwise expressly provided herein, the ABL Claimholders will be entitled to manage and supervise the ABL Loan Documents in accordance with applicable law and as they may otherwise, in their sole discretion, deem appropriate.  Except as

#4814-6502-9968
#91731356v11

expressly provided herein, the Term Collateral Agents and the other Term Claimholders shall have no duty to the ABL Collateral Agent or any other ABL Claimholders, and the ABL Collateral Agent and the other ABL Claimholders shall have no duty to the Term Collateral Agents and the other Term Claimholders, to act or refrain from acting in a manner that allows, or results in, the occurrence or continuance of a default or an event of default under any agreements with any Loan Party (including the ABL Loan Documents and the Term Loan Documents), regardless of any knowledge thereof which they may have or be charged with. The ABL Collateral Agent, on behalf of itself and the other ABL Claimholders, acknowledges and agrees that the Term Collateral Agents may, but shall have no obligation to, take all actions it determines necessary or advisable to perfect or continue the perfection of the Term Lenders Liens on any Collateral, and the Term Collateral Agents shall not be liable for any lapse of perfection or for maintaining perfection.  The Term Collateral Agents, on behalf of itself and the other Term Claimholders, acknowledges and agrees that the ABL Collateral Agent may, but shall have no obligation to, take all actions it determines necessary or advisable to perfect or continue the perfection of the ABL Lenders Liens on any Collateral, and the ABL Collateral Agent shall not be liable for any lapse of perfection or for maintaining perfection.

7.3.  <u>No Waiver of Lien Priorities</u>.

(a)  No right of the ABL Collateral Agent or any other ABL Claimholder to enforce any provision of this Agreement or any U.S. ABL Loan Document shall at any time in any way be prejudiced or impaired by any act or failure to act on the part of any Loan Party or by any act or failure to act by the ABL Collateral Agent or any other ABL Claimholder or by any noncompliance by any Person with the terms, provisions, and covenants of this Agreement, any of the ABL Loan Documents or any of the Term Loan Documents, regardless of any knowledge thereof which the ABL Collateral Agent or any other ABL Claimholder may have or be otherwise charged with.  No right of the Term Collateral Agents or any other Term Claimholder to enforce any provision of this Agreement or any Term Loan Document shall at any time in any way be prejudiced or impaired by any act or failure to act on the part of any Loan Party or by any act or failure to act by the Term Collateral Agents or any other Term Claimholder or by any noncompliance by any Person with the terms, provisions, and covenants of this Agreement, any of the Term Loan Documents or any of the ABL Loan Documents, regardless of any knowledge thereof which the Term Collateral Agents or any other Term Claimholder may have or be otherwise charged with.

(b)  Without in any way limiting the generality of Section 7.3(a), but subject to any rights of the Loan Parties under the ABL Loan Documents and the Term Loan Documents and subject to the provisions of Section 5.3(a), the ABL Collateral Agent and any other ABL Claimholder may, at any time and from time to time in accordance with the ABL Loan Documents and/or applicable law, without the consent of, or notice to, the Term Collateral Agents or any other Term Claimholder, without incurring any liabilities to the Term Collateral Agents or any other Term Claimholder and without impairing or releasing the relative Lien priorities and other benefits provided in this Agreement (even if any right of subrogation or other right or remedy of the Term Collateral Agents or the other Term Claimholders is affected, impaired, or extinguished thereby) do any one or more of the following:

(i)  make loans and advances to an ABL Borrower or any other Loan Party, issue, guaranty or obtain letters of credit for account of an ABL Borrower or any other Loan Party or otherwise extend credit to an ABL Borrower or any other Loan Party, in any amount and on any terms, whether pursuant to a commitment or as a discretionary advance and whether or not any default or event of default or failure of condition is then continuing;

(ii)  change the manner, place, or terms of payment of, or change or extend the time of payment of, or amend, renew, exchange, increase, or alter the terms of, any of the ABL Obligations or any guarantee thereof or any other liability of any Loan Party, or any liability incurred directly or indirectly in respect thereof (including any increase in (so long as such increase

52

#4814-6502-9968
#9173356v11

does not cause the maximum principal amount drawable or outstanding principal balance under the ABL Credit Agreement to exceed the ABL Priority Cap) or extension of the ABL Obligations, without any restriction as to the amount, tenor, or terms of any such increase or extension) or otherwise amend, renew, exchange, extend, modify, or supplement in any manner any ABL Lenders Liens, the ABL Obligations, or any of the ABL Loan Documents;

(iii)     sell, exchange, release, surrender, realize upon, enforce or otherwise deal with in any manner (subject to the terms hereof) and in any order any part of the ABL Priority Collateral or any liability of any Loan Party to the ABL Claimholders or any liability incurred directly or indirectly in respect thereof;

(iv)     settle or compromise any ABL Obligation or any other liability of any Loan Party or any security therefor or any liability incurred directly or indirectly in respect thereof and apply any sums by whomsoever paid and however realized to any liability (including the ABL Obligations) in any manner or order that is not inconsistent with the terms of this Agreement; and

(v)     exercise or delay in or refrain from exercising any right or remedy against any Loan Party or any other Person, elect any remedy and otherwise deal freely with any Loan Party or any ABL Priority Collateral and any security and any guarantor or any liability of any Loan Party to any ABL Claimholders or any liability incurred directly or indirectly in respect thereof;

provided that the foregoing shall not (x) limit or otherwise affect in any way any Loan Party's obligations or liabilities under the Term Loan Documents to the extent any of the foregoing constitutes a violation of any of the Term Loan Documents or (y) limit the restrictions set forth in Section 5.3(a) or be deemed to be a waiver by the Term Collateral Agents or any other Term Claimholder of any liability of, or any claim against, the ABL Collateral Agent or any other ABL Claimholder arising on account of any such violation.

(c)     Except as otherwise provided herein, each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, agrees that the ABL Collateral Agent and the other ABL Claimholders shall have no liability to the Term Collateral Agents and the other Term Claimholders, and the Term Collateral Agents and the other Term Claimholders hereby waive any claim against the ABL Collateral Agent or any other ABL Claimholder, arising out of any and all actions which the ABL Collateral Agent or any other ABL Claimholder may, pursuant to the terms hereof, take, permit or omit to take with respect to:

(i)     the ABL Loan Documents (other than this Agreement);

(ii)     the collection of the ABL Obligations; or

(iii)     the foreclosure upon, or sale, liquidation, or other Disposition of, or the failure to foreclose upon, or sell, liquidate, or otherwise Dispose of, any ABL Priority Collateral.

Each of the Term Collateral Agents, for itself and on behalf of the other Term Claimholders, agrees that the ABL Collateral Agent and the other ABL Claimholders have no duty to them in respect of the maintenance or preservation of the ABL Priority Collateral, the ABL Obligations, or otherwise (other than the obligations of the ABL Claimholders under this Agreement).

(d)     Without in any way limiting the generality of Section 7.3(a), but subject to any rights of the Loan Parties under the ABL Loan Documents and the Term Loan Documents and subject to the provisions of Section 5.3(b) and/or Section 5.3(c), as applicable, the Term Collateral Agents and any

53

other Term Claimholder may, at any time and from time to time in accordance with the Term Loan Documents and/or applicable law, without the consent of, or notice to, the ABL Collateral Agent or any other ABL Claimholder, without incurring any liabilities to the ABL Collateral Agent or any other ABL Claimholder and without impairing or releasing the relative Lien priorities and other benefits provided in this Agreement (even if any right of subrogation or other right or remedy of the ABL Collateral Agent or the other ABL Claimholders is affected, impaired, or extinguished thereby) do any one or more of the following:

       (i)      make loans and advances to the Borrower or any other Loan Party, issue, guaranty or obtain letters of credit for account of the Borrower or any other Loan Party or otherwise extend credit to the Borrower or any other Loan Party, in any amount and on any terms, whether pursuant to a commitment or as a discretionary advance and whether or not any default or event of default or failure of condition is then continuing;

       (ii)      change the manner, place, or terms of payment of, or change or extend the time of payment of, or amend, renew, exchange, increase, or alter, the terms of any of the Term Obligations or any guarantee thereof or any other liability of any Loan Party, or any liability incurred directly or indirectly in respect thereof (including any increase in (so long as such increase does not cause the outstanding principal balance under the applicable Term Credit Agreement to exceed the First Lien Priority Cap or the Second Lien Priority Cap, as applicable) or extension of the Term Obligations, without any restriction as to the amount, tenor, or terms of any such increase or extension) or otherwise amend, renew, exchange, extend, modify, or supplement in any manner any Term Lenders Liens, the Term Obligations, or any of the Term Loan Documents;

       (iii)      sell, exchange, release, surrender, realize upon, enforce or otherwise deal with in any manner (subject to the terms hereof) and in any order any part of the Term Priority Collateral or any liability of any Loan Party to the Term Claimholders or any liability incurred directly or indirectly in respect thereof;

       (iv)      settle or compromise any Term Obligation or any other liability of any Loan Party or any security therefor or any liability incurred directly or indirectly in respect thereof and apply any sums by whomsoever paid and however realized to any liability (including the Term Obligations) in any manner or order that is not inconsistent with the terms of this Agreement; and

       (v)      exercise or delay in or refrain from exercising any right or remedy against any Loan Party or any other Person, elect any remedy and otherwise deal freely with any Loan Party or any Term Priority Collateral and any security and any guarantor or any liability of any Loan Party to any Term Claimholders or any liability incurred directly or indirectly in respect thereof;

provided that the foregoing shall not (x) limit or otherwise affect in any way any Loan Party's liability under the ABL Loan Documents to the extent any of the foregoing constitutes a violation of any of the ABL Loan Documents or (y) limit the restrictions set forth in Section 5.3(b) and/or Section 5.3(c), as applicable, or be deemed to be a waiver by the ABL Collateral Agent or any other ABL Claimholder of any liability of, or any claim against, the Term Collateral Agents or any other Term Claimholder arising on account of any such violation.

       (e)      Except as otherwise provided herein, the ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, agrees that the Term Collateral Agents and the other Term Claimholders shall have no liability to the ABL Collateral Agent and the other ABL Claimholders, and the ABL Collateral Agent and the other ABL Claimholders hereby waive any claim against the Term Collateral

54

Agents or any other Term Claimholder, arising out of any and all actions which the Term Collateral Agents or any other Term Claimholder may, pursuant to the terms hereof, take, permit or omit to take with respect to:

(i)      the Term Loan Documents (other than this Agreement);

(ii)     the collection of the Term Obligations; or

(iii)    the foreclosure upon, or sale, liquidation, or other Disposition of, or the failure to foreclose upon, or sell, liquidate, or otherwise Dispose of, any Term Priority Collateral.

The ABL Collateral Agent, for itself and on behalf of the other ABL Claimholders, agrees that the Term Collateral Agents and the other Term Claimholders have no duty to them in respect of the maintenance or preservation of the Term Priority Collateral, the Term Obligations, or otherwise (other than the obligations of the Term Claimholders under this Agreement).

(f)      Until the Discharge of Term Obligations or the Discharge of ABL Obligations, as the case may be, has occurred, the ABL Collateral Agent, on behalf of itself and the other ABL Claimholders, and the Term Collateral Agents, on behalf of itself and the other Term Claimholders, agrees that neither it nor its related Claimholders shall assert, and hereby waive, to the fullest extent permitted by law, any right to demand, request, plead, or otherwise assert, or otherwise claim the benefit of, any marshaling, appraisal, valuation, or other similar right that may otherwise be available under applicable law with respect to the Senior Priority Collateral of the other Class or any other similar rights a junior secured creditor may have under applicable law.

7.4.    <u>Obligations Unconditional</u>.  All rights, interests, agreements and obligations of the ABL Collateral Agent and the other ABL Claimholders and the Term Collateral Agents and the other Term Claimholders, respectively, hereunder shall remain in full force and effect irrespective of:

(a)      any lack of validity or enforceability of any ABL Loan Documents or any Term Loan Documents;

(b)      except as otherwise expressly set forth in this Agreement, any change in the time, manner, or place of payment of, or in any other terms of, all or any of the ABL Obligations or Term Obligations, or any amendment or waiver or other modification, including any increase in the amount thereof, whether by course of conduct or otherwise, of the terms of any ABL Loan Document or any Term Loan Document;

(c)      except as otherwise expressly set forth in this Agreement, any exchange of any security interest in any Collateral or any other collateral, or any amendment, waiver or other modification, whether in writing or by course of conduct or otherwise, of all or any of the ABL Obligations or Term Obligations or any guarantee thereof;

(d)      the commencement of any Insolvency Proceeding; or

(e)      any other circumstances which otherwise might constitute a defense available to, or a discharge of, any Loan Party in respect of the ABL Collateral Agent, any other ABL Claimholder or any ABL Obligations or the Term Collateral Agents, any other Term Claimholder or any Term Obligations in respect of this Agreement.

#4814-6502-9968
#91731356v11

**SECTION 8.  Representations and Warranties**.

8.1.     Representations and Warranties of Each Collateral Agent.  The ABL Collateral Agent and the Term Collateral Agents each represents and warrants to the other that it has been authorized by the ABL Lenders or the Term Lenders, as applicable, under the ABL Credit Agreement or the Term Credit Agreements, as applicable, to enter into this Agreement and that this Agreement has been duly executed and delivered by it.

**SECTION 9.  Miscellaneous**.

9.1.     Conflicts.  In the event of any conflict between the provisions of this Agreement and the provisions of any ABL Loan Document or any Term Loan Document, the provisions of this Agreement shall govern.  Notwithstanding the foregoing, the parties hereto acknowledge that the terms of this Agreement are not intended to and shall not, as between the Loan Parties and the Claimholders, negate, impair, waive or cancel any rights granted to, or create any liability or obligation of, any Loan Party in the ABL Loan Documents and the Term Loan Documents or impose any additional obligations on the Loan Parties (other than as expressly set forth herein).  Notwithstanding the foregoing, solely as among the Term Claimholders, in the event of any conflict between this Agreement and the First Lien/Second Lien Intercreditor Agreement, the provisions of the First Lien/Second Lien Intercreditor Agreement shall govern and control.

9.2.     Continuing Nature of this Agreement; Severability.  This Agreement shall become effective when executed and delivered by the ABL Collateral Agent and the Term Collateral Agents.  This is a continuing agreement of Lien subordination (as opposed to debt or claim subordination), and the Claimholders of any Class may continue, at any time and without notice to the Collateral Agent or the other Claimholders of the other Class, to extend credit and other financial accommodations to or for the benefit of any Loan Party constituting ABL Obligations or Term Obligations, as the case may be, in reliance hereon.  The ABL Collateral Agent, on behalf of itself and the other ABL Claimholders, and the Term Collateral Agents, on behalf of itself and the other Term Claimholders, hereby waive any right any of them may have under applicable law to revoke this Agreement or any of the provisions of this Agreement.  The terms of this Agreement shall survive, and shall continue in full force and effect, in any Insolvency Proceeding.  Consistent with, but not in limitation of, the preceding sentence, the ABL Collateral Agent, on behalf of itself and the other ABL Claimholders, and the Term Collateral Agents, on behalf of itself and the other Term Claimholders, irrevocably acknowledge that this Agreement constitutes a "subordination agreement" within the meaning of both New York law and Section 510(a) of the Bankruptcy Code and is intended to be and shall be interpreted to be enforceable to the maximum extent permitted pursuant to applicable law other than under the Bankruptcy Code or any similar federal, state or foreign bankruptcy, insolvency, reorganization, receivership or similar law.  Any provision of this Agreement that is prohibited or unenforceable shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.  All references to any Loan Party shall include such Loan Party as debtor and debtor in possession and any receiver or trustee for such Loan Party in any Insolvency Proceeding.  Except as set forth in Section 6.6, this Agreement shall automatically terminate and be of no further force and effect (a) with respect to the ABL Collateral Agent, the other ABL Claimholders, and the ABL Obligations, on the date that the Discharge of ABL Obligations has occurred, and (b) with respect to the Term Collateral Agents, the other Term Claimholders and the Term Obligations on the date that the Discharge of Term Obligations has occurred.

9.3.     Amendments; Waivers.

#4814-6502-9968
#91731356v11

(a)     No failure or delay on the part of any party hereto in exercising any right or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power.  The rights and remedies of the parties hereto are cumulative and are not exclusive of any rights or remedies that they would otherwise have.  No waiver of any provision of this Agreement or consent to any departure by any party therefrom shall in any event be effective unless the same shall be permitted by Section 9.3(b), and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.  No notice or demand on any party hereto in any case shall entitle such party to any other or further notice or demand in similar or other circumstances.

(b)     No amendment or modification of any of the provisions of this Agreement shall be effective unless the same shall be in writing and signed by (a) ABL Collateral Agent (in accordance with the ABL Credit Agreement) and each Term Collateral Agent (in accordance with the applicable Term Credit Agreement) with respect to any amendment or modification, and (b) the Loan Parties, solely with respect to any amendments or modifications that (A) adversely affect any obligation or right of the Loan Parties hereunder or under the ABL Loan Documents or the Term Loan Documents or impose any additional obligations on the Loan Parties, (B) change the rights of the Loan Parties to refinance the ABL Obligations or the Term Obligations or (C) modify the definitions of "ABL Priority Cap", "First Lien Priority Cap" or "Second Lien Priority Cap".  In addition, each waiver, if any, with respect to any aspect of this Agreement shall be a waiver only with respect to the specific instance involved and shall in no way impair the rights of the parties making such waiver or the obligations of the other parties to such party in any other respect or at any other time.  The ABL Collateral Agent and the Term Collateral Agents shall provide the Loan Parties with written notice (together with a true and correct copy) of each proposed amendment or other modification to this Agreement prior to the effectiveness thereof.

9.4.    <u>Additional Obligations</u>.

(a)     To the extent, but only to the extent, permitted by the provisions of each then extant ABL Credit Agreement and Term Credit Agreement (including, in each case, pursuant to any consent or waiver thereto or thereunder), the Borrower may incur or issue and sell one or more series or classes of Additional Pari Passu Obligations and/or one or more series or classes of Additional Junior Obligations.

Any such series or class of Additional Pari Passu Obligations may be secured by a first-priority, senior Lien on the Term Priority Collateral and a junior-priority, subordinated Lien on the ABL Priority Collateral, in each case under and pursuant to the Term Collateral Documents for such Series of Additional Pari Passu Obligations, if and subject to the condition that, unless such Indebtedness is part of an existing Series of Additional Pari Passu Obligations represented by an Additional Pari Passu Obligations Agent already party to this Agreement, the Additional Pari Passu Obligations Agent with respect to any such Additional Pari Passu Obligations becomes a party to this Agreement by satisfying the conditions set forth in this Section 9.4.  Upon any Additional Pari Passu Obligations Agent so becoming a party hereto in accordance with the terms thereof, all Additional Pari Passu Obligations of such series shall also be entitled to be so secured by a senior Lien on the Term Priority Collateral and by a subordinated Lien on the ABL Priority Collateral in accordance with the terms hereof and thereof.

Any such series or class of Additional Junior Obligations may be secured by a junior-priority, subordinated Lien on the Term Priority Collateral and a junior-priority, subordinated Lien on the ABL Priority Collateral, in each case under and pursuant to the Term Collateral Documents for such series of Additional Junior Obligations, if and subject to the condition that, unless such Indebtedness is part of an existing series of Additional Junior Obligations represented by an Additional Junior Obligations Agent already party to this Agreement, the Additional Junior Obligations Agent with respect to any such

57

**Debtors' Exhibit No. 14**
**Page 67 of 93**

Additional Junior Obligations becomes a party to this Agreement by satisfying the conditions set forth in this Section 9.4. Upon any Additional Junior Obligations Agent so becoming a party hereto in accordance with the terms thereof, all Additional Junior Obligations of such series shall also be entitled to be so secured by a subordinated Lien on the Term Priority Collateral and by a subordinated Lien on the ABL Priority Collateral in accordance with the terms hereof and thereof.

(b)     In order for an Additional Agent to become a party to this Agreement:

(i)     such Additional Agent shall have executed and delivered to each other then-existing Additional Agent, ABL Collateral Agent and Term Collateral Agent a Joinder Agreement substantially in the form of Exhibit A hereto (with such changes as may be reasonably approved by the ABL Collateral Agent and Controlling Term Agent and such Additional Agent) pursuant to which such Additional Agent becomes an Additional Pari Passu Obligations Agent or Additional Junior Obligations Agent hereunder and the related ABL Claimholders or Term Claimholders, as applicable, become subject hereto and bound hereby;

(ii)     the Borrower shall have delivered a designation to each other then-existing Additional Agent, ABL Collateral Agent and Term Collateral Agent substantially in the form of Exhibit B hereto, pursuant to which an officer of the Borrower shall (A) identify the Indebtedness to be designated as Additional Pari Passu Obligations or Additional Junior Obligations, as applicable, and the initial aggregate principal amount of such Indebtedness, (B) identify the Additional Pari Passu Obligations Agreement or Additional Junior Obligations Agreement as applicable, (C) specify the name and address of the applicable Additional Agent, (D) certify that such Indebtedness, is permitted to be incurred, secured and guaranteed by each then extant ABL Credit Agreement and Term Credit Agreement and (E) attach to such designation true and complete copies of each of the Additional Pari Passu Obligations Agreement or Additional Junior Obligations Agreement, as applicable, relating to such Additional Pari Passu Obligations or Additional Junior Obligations, as applicable.

(iii)     Upon the execution and delivery of a Joinder Agreement by an Additional Pari Passu Obligations Agent or an Additional Junior Obligations Agent, as the case may be, in each case in accordance with this Section 9.4, each other Additional Agent, ABL Collateral Agent and Term Collateral Agent shall acknowledge receipt thereof by countersigning a copy thereof and returning the same to such Additional Agent; provided that the failure of any other Additional Agent, ABL Collateral Agent and Term Collateral Agent to so acknowledge or return the same shall not affect the status of such additional Indebtedness as Additional Pari Passu Obligations or Additional Junior Obligations, as the case may be, if the other requirements of this Section 9.4 are complied with.

(c)     With respect to any incurrence, issuance or sale of Indebtedness after the date hereof under any Additional Pari Passu Obligations Agreement or Additional Junior Obligations Agreement, in each case, of Additional Pari Passu Obligations or series of Additional Junior Obligations whose Additional Agent is already a party to each of this Agreement, the requirements of Section 9.4 shall not be applicable and such Indebtedness shall automatically constitute Additional Pari Passu Obligations or Additional Junior Obligations so long as such Indebtedness is permitted to be incurred, secured and guaranteed by each Additional Pari Passu Obligations Agreement, Additional Junior Obligations Agreement, ABL Credit Agreement and Term Credit Agreement.

9.5.     <u>Information Concerning Financial Condition of Certain Entities</u>.     Neither any Term Collateral Agent nor ABL Collateral Agent hereby assumes responsibility for keeping each other informed of the financial condition of the Loan Parties and all other circumstances bearing upon the risk of

58

**Debtors' Exhibit No. 14**
**Page 68 of 93**

nonpayment of the ABL Obligations or the Term Obligations. Each Term Collateral Agent and ABL Collateral Agent hereby agree that no party shall have any duty to advise any other party of information known to it regarding such condition or any such circumstances. In the event any Term Collateral Agent or ABL Collateral Agent, in its sole discretion, undertakes at any time or from time to time to provide any information to any other party to this Agreement, it shall be under no obligation (a) to provide or update any such information to such other party or any other party on any subsequent occasion, (b) to undertake any investigation not a part of its regular business routine, or (c) to disclose any other information. Neither ABL Collateral Agent nor any Term Collateral Agent shall have any responsibility to monitor or verify the financial condition of the Loan Parties.

9.6.    Subrogation.  (a) With respect to any payments or distributions in cash, property, or other assets that the Term Collateral Agents or any other Term Claimholders pay over to the ABL Collateral Agent or any other ABL Claimholders under the terms of this Agreement, the Term Collateral Agents and the other Term Claimholders shall be subrogated to the rights of the ABL Collateral Agent and the other ABL Claimholders and (b) with respect to any payments or distributions in cash, property, or other assets that the ABL Collateral Agent or any other ABL Claimholders pay over to the Term Collateral Agents or the other Term Claimholders under the terms of this Agreement, the ABL Collateral Agent and the other ABL Claimholders shall be subrogated to the rights of the Term Collateral Agents and the other Term Claimholders; provided, however, that each of the ABL Collateral Agent, for itself and the other ABL Claimholders, and each of the Term Collateral Agents, for itself and the other Term Claimholders, agrees not to assert or enforce any such rights of subrogation it or they may acquire as a result of any payment hereunder until the Discharge of ABL Obligations or Discharge of Term Obligations, as applicable, has occurred. Any payments or distributions in cash, property or other assets received by the ABL Collateral Agent or any other ABL Claimholders that are paid over to the Term Collateral Agents or any other Term Claimholders pursuant to this Agreement shall not reduce any of the ABL Obligations. Any payments or distributions in cash, property or other assets received by the Term Collateral Agents or any other Term Claimholders that are paid over to the ABL Collateral Agent or any other ABL Claimholders pursuant to this Agreement shall not reduce any of the Term Obligations. Notwithstanding the foregoing provisions of this Section 9.6, none of the ABL Claimholders shall have any claim against any of the Term Claimholders for any impairment of any subrogation rights herein granted to the ABL Claimholders, and none of the Term Claimholders shall have any claim against any of the ABL Claimholders for any impairment of any subrogation rights herein granted to the Term Claimholders.

9.7.    Governing Law.   THIS AGREEMENT AND ANY CLAIMS, CONTROVERSY, DISPUTE OR CAUSE OF ACTION (WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE) BASED UPON, ARISING OUT OF OR RELATING TO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.

9.8.    Submission to Jurisdiction.

(a)    Each ABL Collateral Agent, on behalf of itself and the other ABL Claimholders represented by it, and each Term Collateral Agent, on behalf of itself and the other Term Claimholders represented by it, and the Loan Parties hereby agree that each ABL Claimholder, each Term Claimholder and each Loan Party shall irrevocably and unconditionally submit, for itself and its property, to the exclusive general jurisdiction of the Supreme Court of the State of New York and of the United States District Court of the Southern District of New York, sitting in the Borough of Manhattan in the City of New York, and any appellate court from any thereof (except that, (x) in the case of any Mortgage or other Security Document, proceedings may also be brought by the applicable ABL Collateral Agent or Term Collateral Agent in the state in which the respective mortgaged property or Collateral is located or any other relevant jurisdiction and (y) in the case of any Insolvency Proceedings with respect to any Loan Party, actions or

59

#4814-6502-9968
#91731356v11

proceedings related to this Agreement and the other ABL Loan Documents or Term Loan Documents may be brought in such court holding such Insolvency Proceedings), in any action or proceeding arising out of or relating to this Agreement, or for recognition or enforcement of any judgment with respect to this Agreement, and each ABL Collateral Agent, on behalf of itself and the other ABL Claimholders represented by it, and each Term Collateral Agent, on behalf of itself and the other Term Claimholders represented by it, and the Loan Parties hereby irrevocably and unconditionally agree that all of their respective claims in respect of any such action or proceeding may be heard and determined in such New York State court or, to the extent permitted by law, in such Federal court. Each ABL Collateral Agent, on behalf of itself and the other ABL Claimholders represented by it, and each Term Collateral Agent, on behalf of itself and the other Term Claimholders represented by it, and the Loan Parties hereby further agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.

(b)     Each ABL Collateral Agent, on behalf of itself and the other ABL Claimholders represented by it, each Term Collateral Agent, on behalf of itself and the other Term Claimholders represented by it, and the Loan Parties hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so (i) any objection it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any court referred to in the first sentence of paragraph (a) of this Section and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(c)     Each ABL Collateral Agent, on behalf of itself and the other ABL Claimholders represented by it, each Term Collateral Agent, on behalf of itself and the other Term Claimholders represented by it, and the Loan Parties hereby irrevocably consents to service of process in the manner provided for notices (other than facsimile or email) in Section 9.9. Nothing in this Agreement will affect the right of any party to this Agreement to serve process in any other manner permitted by applicable law.

9.9.    <u>Notices</u>.

(a)     Unless otherwise specifically provided herein, all notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by facsimile or email.

(b)     All such notices and other communications (i) sent by hand or overnight courier service, or mailed by certified or registered mail, shall be deemed to have been given when delivered in person or by courier service and signed for against receipt thereof or three Business Days after dispatch if sent by certified or registered mail, in each case, delivered, sent or mailed (properly addressed) to the relevant party as provided in this Section 9.9 or in accordance with the latest unrevoked direction from such party given in accordance with this Section 9.9 or (ii) sent by facsimile shall be deemed to have been given when sent and when receipt has been confirmed by telephone; <u>provided</u> that received notices and other communications sent by telecopier shall be deemed to have been given when sent (except that, if not given during normal business hours for the recipient, such notices or other communications shall be deemed to have been given at the opening of business on the next Business Day for the recipient). Notices and other communications delivered through electronic communications to the extent provided in clause (c) below shall be effective as provided in such clause (c).

(c)     Notices and other communications hereunder may be delivered or furnished by electronic communications (including e-mail and Internet or Intranet websites) pursuant to procedures set forth herein or otherwise approved by the parties hereto. Each party hereto may, in its discretion, agree to

60

#4814-6502-9968
#91731356v11

accept notices and other communications to it hereunder by electronic communications pursuant to procedures set forth herein or otherwise approved by it; provided that approval of such procedures may be limited to particular notices or communications.  All such notices and other communications (i) sent to an e-mail address shall be deemed received upon the sender's receipt of an acknowledgement from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgement); provided that if not given during the normal business hours of the recipient, such notice or communication shall be deemed to have been given at the opening of business on the next Business Day for the recipient, and (ii) posted to an Internet or Intranet website shall be deemed received upon the deemed receipt by the intended recipient at its e-mail address as described in the foregoing clause (b)(i) of notification that such notice or communication is available and identifying the website address therefor.

(d)     For the purposes hereof, the addresses of the parties hereto (until notice of a change thereof is delivered as provided in this Section) shall be as set forth on Annex I hereto, or, as to each party, at such other address as may be designated by such party in a written notice to all of the other parties.

9.10.   Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of each of the parties hereto and each of the ABL Claimholders and Term Claimholders and their respective successors and permitted assigns, and nothing herein is intended, or shall be construed to give, any other Person any right, remedy or claim under, to or in respect of this Agreement or any Collateral.

9.11.   Headings.  Section headings used herein are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

9.12.   Severability.  To the extent permitted by law, any provision of this Agreement that is held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof, and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

9.13.   Counterparts; Integration; Effectiveness.  This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts, and all of said counterparts taken together shall be deemed to constitute one and the same instrument.  Delivery of an executed signature page of this Agreement by e-mail or facsimile transmission shall be effective as delivery of a manually executed counterpart hereof.  This Agreement shall become effective when it shall have been executed by each party hereto.

9.14.   WAIVER OF JURY TRIAL.  ABL COLLATERAL AGENT, ON BEHALF OF ITSELF AND THE OTHER ABL CLAIMHOLDERS REPRESENTED BY IT, EACH TERM COLLATERAL AGENT, ON BEHALF OF ITSELF AND THE OTHER TERM CLAIMHOLDERS REPRESENTED BY IT, THE LOAN PARTIES, AND EACH OTHER PARTY HERETO, HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY SUIT, ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY) DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.  EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HERETO HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B)

61

#4814-6502-9968
#91731356v11

ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 9.14.

9.15.    Additional Loan Parties.  Each Person that becomes a Loan Party after the date hereof shall become a party to this Agreement upon execution and delivery by such Person of an Assumption Agreement in substantially the form of Exhibit C hereto.

9.16.    No Third Party Beneficiaries.  This Agreement and the rights and benefits hereof shall inure to the benefit of each of the parties hereto and its respective successors and assigns and shall inure to the benefit of and bind each of the ABL Claimholders and the Term Claimholders.  Other than with respect to Sections 5.3 and 9.4, which shall also inure to the benefit of the Borrower, in no event shall any Loan Party be a third party beneficiary of this Agreement.

9.17.    Provisions Solely to Define Relative Rights.  The provisions of this Agreement are and are intended solely for the purpose of defining the relative rights of the ABL Collateral Agent and the other ABL Claimholders, on the one hand, and the Term Collateral Agents and the other Term Claimholders, on the other hand (other than Sections 5.3 and 9.4, under which the Borrower shall be a third party beneficiary). Other than Sections 5.3 and 9.4, which shall also inure to the benefit of the Borrower, no Loan Party or any other creditor thereof shall have any rights hereunder and no Loan Party may rely on the terms hereof. Nothing in this Agreement shall impair, as between the Loan Parties and the ABL Collateral Agent and the other ABL Claimholders, or as between the Loan Parties and the Term Collateral Agents and the other Term Claimholders, the obligations of the Loan Parties to pay principal, interest, fees and other amounts as provided in the ABL Loan Documents and the Term Loan Documents, respectively.

9.18.    Specific Performance.  Each of the ABL Collateral Agent and the Term Collateral Agents may demand specific performance of this Agreement.  Without limiting the generality of the foregoing or of the other provisions of this Agreement, in seeking specific performance in any Insolvency Proceeding, the ABL Collateral Agent or the Term Collateral Agents may seek such or any other relief as if it were the "holder" of the claims of the Claimholders of the other Class under Section 1126(a) of the Bankruptcy Code or otherwise had been granted an irrevocable power of attorney by the Claimholders of the other Class.

9.19.    Further Assurances.  Each of the ABL Collateral Agent and the Term Collateral Agents agrees to take such further action and shall execute (without recourse or warranty) and deliver such additional documents and instruments (in recordable form, if requested in writing) as the ABL Collateral Agent or the Controlling Term Agent, as the case may be, may request to effectuate the terms of and the relative Lien priorities contemplated by this Agreement, all at the expense of the Loan Parties.

9.20.    ABL Intercreditor Agreement Acknowledgement.  Reference is made to the ABL Intercreditor Agreement Acknowledgement executed and delivered in respect of this Agreement (a) on the date hereof by the Borrower and each other Loan Party that is a Loan Party on the date hereof and (b) after the date hereof, pursuant to the terms of the Collateral Documents, by each Subsidiary of Parent that becomes a Loan Party after the date hereof.

9.21.    Intercreditor Agreements.  This Agreement is the "ABL Intercreditor Agreement" referred to in the ABL Credit Agreement and this Agreement is the "ABL Intercreditor Agreement" referred to in the Term Credit Agreements.  Nothing in this Agreement shall be deemed to modify the rights, remedies and obligations as between the First Lien Agent and the First Lien Claimholders, on the one hand, and the Second Lien Collateral Agent and the Second Lien Claimholders, on the other hand, as set forth in the First Lien/Second Lien Intercreditor Agreement.  Nothing in this Agreement shall be deemed to modify the

#4814-6502-9968
#9173356v11

rights, remedies and obligations as among the First Lien Secured Parties set forth in any pari passu intercreditor agreement entered into among such parties.  Nothing in this Agreement shall be deemed to modify the rights, remedies and obligations as among the Second Lien Claimholders set forth in any pari passu intercreditor agreement entered into among such parties.

9.22.   Amendment and Restatement; Successor Agents. This Agreement amends and restates the Existing Intercreditor Agreement as of the date hereofFebruary 26, 2019 and shall not constitute a novation of the Existing Intercreditor Agreement.  From and after the date hereofFebruary 26, 2019 until July 31, 2020, Credit Suisse AG, Cayman Islands Branch is vested with all the rights, powers, discretion and privileges of the First Lien Collateral Agent, as described herein, and Credit Suisse AG, Cayman Islands Branch assumes from and after the Effective Date the obligations, responsibilities and duties of Goldman Sachs Bank USA as the predecessor First Lien Collateral Agent, in accordance with the terms hereof and, Goldman Sachs Bank USA is discharged from all of its duties and obligations as the First Lien Collateral Agent under the Existing Intercreditor Agreement and this Agreement. Nothing in this Agreement shall be deemed a termination of the provisions of the Existing Intercreditor Agreement or this Agreement that survive Goldman Sachs Bank USA's resignation in its capacity as First Lien Collateral Agent, which provisions shall inure to the benefit of Goldman Sachs Bank USA as the predecessor First Lien Collateral Agent as to any actions taken or omitted to be taken while it was First Lien Collateral Agent under the Existing Intercreditor Agreement. Goldman Sachs Bank USA as the predecessor First Lien Collateral Agent consents to this Section 9.22, including the amendment and restatement of the Existing Intercreditor Agreement. From and after July 31, 2020, Jefferies Finance LLC is vested with all the rights, powers, discretion and privileges of the First Lien Collateral Agent, as described herein, and Jefferies Finance LLC assumes from and after July 31, 2020 the obligations, responsibilities and duties of Credit Suisse AG, Cayman Islands Branch as the predecessor First Lien Collateral Agent, in accordance with the terms hereof and, Credit Suisse AG, Cayman Islands Branch is discharged from all of its duties and obligations as the First Lien Collateral Agent under this Agreement. Nothing in this Agreement shall be deemed a termination of this Agreement that survive Credit Suisse AG, Cayman Islands Branch's resignation in its capacity as First Lien Collateral Agent, which provisions shall inure to the benefit of Credit Suisse AG, Cayman Islands Branch as the predecessor First Lien Collateral Agent as to any actions taken or omitted to be taken while it was First Lien Collateral Agent under this Agreement. Credit Suisse AG, Cayman Islands Branch as the predecessor First Lien Collateral Agent consents to this Section 9.22. From and after July 31, 2020, Jefferies Finance LLC is vested with all the rights, powers, discretion and privileges of the Second Lien Collateral Agent, as described herein, and Jefferies Finance LLC assumes from and after July 31, 2020 the obligations, responsibilities and duties of Credit Suisse AG, Cayman Islands Branch as the predecessor Second Lien Collateral Agent, in accordance with the terms hereof and, Credit Suisse AG, Cayman Islands Branch is discharged from all of its duties and obligations as the Second Lien Collateral Agent under this Agreement. Nothing in this Agreement shall be deemed a termination of this Agreement that survive Credit Suisse AG, Cayman Islands Branch's resignation in its capacity as Second Lien Collateral Agent, which provisions shall inure to the benefit of Credit Suisse AG, Cayman Islands Branch as the predecessor Second Lien Collateral Agent as to any actions taken or omitted to be taken while it was Second Lien Collateral Agent under this Agreement. Credit Suisse AG, Cayman Islands Branch as the predecessor Second Lien Collateral Agent consents to this Section 9.22.

[Signature Page Follows]

#4814-6502-9968
#91731356v11

Debtors' Exhibit No. 14
Page 73 of 93

IN WITNESS WHEREOF, the parties hereto have executed this Amended and Restated Intercreditor Agreement as of the date first written above.

BANK OF AMERICA, N.A.,
as ABL Collateral Agent

By: _____
Name:
Title:

CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH,
as First Lien Collateral Agent

By: _____
Name:
Title:

CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH,
as Second Lien Collateral Agent

By: _____
Name:

Title:

[Signature Page to ABL Intercreditor Agreement]

#4814-6502-9968
#91731356v11

GOLDMAN SACHS BANK USA,
as the predecessor First Lien Collateral Agent (solely for
purposes of Section 9.22)

By: _____
      Name:

—— Title

#4814-6502-9968
#91731356v11

**ANNEX I**

Notice Addresses

<(a)    if to the First Lien Collateral Agent, at:>
Credit Suisse AG, Cayman Islands Branch,

███████████████████████████

████████████████

Attention: David R Bankert

<(b)    if to the Second Lien Collateral Agent, at:>
Credit Suisse AG, Cayman Islands Branch Credit Suisse AG, Cayman Islands Branch,

#4814-6502-9968
#91731356v11

**ANNEX I**

Notice Addresses

(a)     if to the First Lien Collateral Agent, at:
Jefferies Finance LLC

██████████████████████

Attention: ~~David R Bankert~~Account Officer – Trico Group

██████████████████████

(b)     if to the Second Lien Collateral Agent, at:
Jefferies Finance LLC

██████████████████

Attention: Account Officer – Trico Group

██████████████████████

(c)     if to the ABL Collateral Agent, at:
Bank of America, N.A.

██████████████████

Attention: Account Officer, Trico Corporation

## ABL INTERCREDITOR AGREEMENT ACKNOWLEDGMENT

1.  <u>Acknowledgement</u>.  Trico Group, LLC, a Delaware limited liability company (the "<u>Borrower</u>"), Trico Group Holdings, LLC, a Delaware limited liability company ("<u>Parent</u>") and each of the undersigned U.S. subsidiaries of Parent (together with Parent and the Borrower, collectively, the "<u>Loan Parties</u>") acknowledges that it has received a copy of the Amended and Restated Intercreditor Agreement dated as of February 26, 2019, among Bank of America, N.A., as ABL Collateral Agent, Jefferies Finance LLC (as successor to Credit Suisse AG, Cayman Islands Branch), as First Lien Collateral Agent, Jefferies Finance LLC (as successor to Credit Suisse AG, Cayman Islands Branch), as Second Lien Collateral Agent, each Additional Junior Obligations Agent and each Additional Pari Passu Obligations Agent (the "<u>ABL Intercreditor Agreement</u>") as in effect on the date hereof, and consents thereto, agrees to recognize all rights granted thereby to the ABL Collateral Agent, the other ABL Claimholders, the Term Collateral Agents and the other Term Claimholders, and agrees that it shall not do any act or perform any obligation which is not in accordance with the agreements set forth in the ABL Intercreditor Agreement as in effect on the date hereof (and, to the extent such Loan Party has been notified of the terms of any amendment, as amended or otherwise modified pursuant thereto).  Each of the Loan Parties further acknowledges and agrees that (a) other than with respect to Section 9.3(b) of the ABL Intercreditor Agreement, under which the Borrower is a third party beneficiary, no Loan Party is a beneficiary or third party beneficiary of the ABL Intercreditor Agreement, (b) no Loan Party has any rights under the ABL Intercreditor Agreement, and no Loan Party may rely on the terms of the Intercreditor Agreement, in each case other than Section 9.3(b) of the ABL Intercreditor Agreement, which also inure to the benefit of the Borrower, and (c) nothing in the ABL Intercreditor Agreement shall impair, as between the Loan Parties and the ABL Collateral Agent and the other ABL Claimholders, or as between the Loan Parties and the Term Collateral Agents and the other Term Claimholders, the obligations of the Loan Parties to pay principal, interest, fees and other amounts as provided in the ABL Loan Documents or the Term Loan Documents, respectively.

2.  <u>Notices</u>.  The address of the Loan Parties for purposes of all notices and other communications hereunder and under the ABL Intercreditor Agreement is:



Trico Group, LLC

Attention:  Patrick James, Chairman

With a copy (which shall not constitute notice) to:
Paul Hastings LLP

Attention: Michael Baker

Any notice or other communication hereunder or under the ABL Intercreditor Agreement shall be in writing and may be personally served or sent by facsimile or United States mail or courier service or electronic mail and shall be deemed to have been given when delivered in person or by courier service and signed for against receipt thereof, upon receipt of facsimile or electronic mail, or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed.

#4814-6502-9968
#91731356v11

3.      Counterparts.  This Acknowledgement may be executed in two or more counterparts, each of which shall constitute an original but all of which when taken together shall constitute one document. Delivery of an executed signature page to this Acknowledgement by facsimile transmission or by email as a ".pdf" or ".tif" attachment shall be as effective as delivery of a manually signed counterpart of this Acknowledgement.

4.      Governing Law.    THIS ACKNOWLEDGEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER (INCLUDING, WITHOUT LIMITATION, ANY CLAIMS SOUNDING IN CONTRACT LAW OR TORT LAW ARISING OUT OF THE SUBJECT MATTER HEREOF AND ANY DETERMINATIONS WITH RESPECT TO POST-JUDGMENT INTEREST) SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES THEREOF THAT WOULD RESULT IN THE APPLICATION OF ANY LAW OTHER THAN THE LAW OF THE STATE OF NEW YORK.

5.      Credit Document.  This Acknowledgement shall constitute an ABL Loan Document and a Term Loan Document.

6.      Miscellaneous.  The provisions of Sections 9.6 and 9.7 of the ABL Intercreditor Agreement will apply with like effect to this Acknowledgement, *mutatis mutandis* as though the references therein to the ABL Collateral Agent or the Term Collateral Agents refer instead to each Loan Party.  The ABL Collateral Agent, the other ABL Claimholders, the Term Collateral Agents and the other Term Claimholders are the intended beneficiaries of this Acknowledgement.  Capitalized terms used but not otherwise defined herein shall have the meanings assigned thereto in the ABL Intercreditor Agreement.

[Signature Page Follows]

2

#4814-6502-9968
#91731356v11

**ACKNOWLEDGED AS OF THE DATE FIRST WRITTEN ABOVE:**

**TRICO GROUP HOLDINGS, LLC**,
as Parent

By:_____
Name: _____
Title: _____

**TRICO GROUP, LLC**,
as the Borrower

By:_____
Name: _____
Title: _____

**CARTER FUEL SYSTEMS, LLC**
as Loan Party,

By:_____
Name: _____
Title: _____

**STRONGARM, LLC**,
as Loan Party,

By:_____
Name: _____
Title: _____

[Signature Page to Intercreditor Agreement Acknowledgment]

**KTRI HOLDINGS, INC.**,
as Loan Party,


By:_____
Name: _____
Title: _____


**HEATHERTON HOLDINGS, LLC**,
as Loan Party,


By:_____
Name: _____
Title: _____


**CARTER FUEL EXPORT, INC.**,
as Loan Party,


By:_____
Name: _____
Title: _____


**PREMIER MARKETING GROUP**,
LLC as Loan Party


By:_____
Name: _____
Title: _____


[Signature Page to Intercreditor Agreement Acknowledgment]

**AVM EXPORT, INC.**,
as Loan Party


By: _____
Name: _____
Title: _____


**TRICO PRODUCTS CORPORATION**,
as Loan Party


By: _____
Name: _____
Title: _____


**KTRI OFFSHORE HOLDINGS, LLC**
as Loan Party


By: _____
Name: _____
Title: _____


**TRICO HOLDING CORPORATION**,
as Loan Party


By: _____
Name: _____
Title: _____


[Signature Page to Intercreditor Agreement Acknowledgment]

**TRICO TECHNOLOGIES CORPORATION,**
as Loan Party


By: _____
Name: _____
Title: _____


**ASC INDUSTRIES, INC.,**
as Loan Party


By: _____
Name: _____
Title: _____


**SPECIALTY PUMPS GROUP, INC.,**
as Loan Party


By: _____
Name: _____
Title: _____


**FRAMAUTO HOLDINGS, LLC,**
as Loan Party


By: _____
Name: _____
Title: _____


[Signature Page to Intercreditor Agreement Acknowledgment]

#4814-6502-9968
#91731356v11

**AUTOLITE OPERATIONS LLC,**
as Loan Party


By: _____
Name: _____
Title: _____


**FRAM GROUP OPERATIONS,**
as Loan Party


By: _____
Name: _____
Title: _____


**FRAM GROUP IP LLC,**
as Loan Party


By: _____
Name: _____
Title: _____

[Signature Page to Intercreditor Agreement Acknowledgment]

#4814-6502-9968
#91731356v11

Exhibit A to Amended and Restated Intercreditor Agreement

[FORM OF] JOINDER AGREEMENT NO. [ ] dated as of [      ], 20[ ] to the AMENDED AND RESTATED INTERCREDITOR AGREEMENT dated as of February 26, 2019 (the "Intercreditor Agreement"), among Bank of America, N.A., as ABL Collateral Agent, Jefferies Finance LLC (as successor to Credit Suisse AG, Cayman Islands Branch), as First Lien Collateral Agent, and Jefferies Finance LLC (as successor to Credit Suisse AG, Cayman Islands Branch), as Second Lien Collateral Agent, and each other Additional Agent that from time to time becomes a party thereto pursuant to the terms thereof, and acknowledged and agreed to by, Trico Group Holdings, LLC, ("Parent"), Trico Group, LLC (the "Borrower") and each of the other Loan Parties party thereto.

Capitalized terms used herein but not otherwise defined herein shall have the meanings assigned to such terms in the Intercreditor Agreement.

As a condition to the ability of the Borrower to incur [Additional Pari Passu Obligations] [Additional Junior Obligations] after the date of the Intercreditor Agreement and to secure such [Additional Pari Passu Obligations] [Additional Junior Obligations] with a lien on the Collateral and to have such [Additional Pari Passu Obligations] [Additional Junior Obligations] guaranteed by the Loan Parties, in each case under and pursuant to the applicable Loan Documents, each of the [Additional Pari Passu Obligations Agent] [Additional Second Priority Representative] in respect of such [Additional Pari Passu Obligations] [Additional Junior Obligations] is required to become an [Additional Pari Passu Obligations Agent] [Additional Second Priority Representative], under, and the related [Claimholders] in respect thereof are required to become subject to and bound by, the Intercreditor Agreement.  Section 9.4 of the Intercreditor Agreement provides that such [Additional Pari Passu Obligations Agent] [Additional Second Priority Representative] may become an [Additional Pari Passu Obligations Agent] [Additional Second Priority Representative] under, and the related [Claimholders] may become subject to and bound by, the Intercreditor Agreement pursuant to the execution and delivery by the [Additional Pari Passu Obligations Agent] [Additional Second Priority Representative] of an instrument in the form of this Joinder Agreement and the satisfaction of the other conditions set forth in Section 9.4 of the Intercreditor Agreement.  The undersigned [Additional Pari Passu Obligations Agent] [Additional Second Priority Representative] (the "New Representative") is executing this Joinder Agreement in accordance with the requirements of the Intercreditor Agreement.

Accordingly, the New Representative agrees as follows:

In accordance with Section 9.4 of the Intercreditor Agreement, the Additional Agent by its signatures below become a [Additional Pari Passu Obligations Agent] [Additional Junior Obligations Agent] under, and the related [Claimholders] represented by it become subject to and bound by, the Intercreditor Agreement with the same force and effect as if the Additional Agent had originally been named therein as a [Additional Pari Passu Obligations Agent] [Second Priority Representative] and each of the Additional Agent, on behalf of itself and each other [Claimholder] represented by it, hereby agrees to all the terms and provisions of the Intercreditor Agreement applicable to it as a [Additional Pari Passu Obligations Agent] [Additional Junior Obligations Agent] and to the [Claimholders] represented by it as [First Lien Claimholders]  [Second Lien Claimholders].  Each reference to a ["Additional Pari Passu Obligations Agent"]  ["Additional Junior Obligations Agent"] in the Intercreditor Agreement shall be deemed to include the Additional Agent and each reference to ["First Lien Claimholders"] ["Second Lien Claimholders"] shall include the [additional First Lien Claimholders] [additional Second Lien Claimholders] represented by such Additional Agent.  The Intercreditor Agreement is hereby incorporated herein by reference.

Each of the Additional Agent represents and warrants to the other Additional Agents, the ABL

#4814-6502-9968
#91731356v11

Exhibit A – Page 1

Collateral Agent, the Term Collateral Agent and the other Claimholders that (i) it has full power and authority to enter into this Joinder Agreement, in its capacity as [agent][trustee], (ii) this Joinder Agreement has been duly authorized, executed and delivered by it and constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms and the terms of the Intercreditor Agreement and (iii) the [Additional Pari Passu Obligations Agreement] [Additional Junior Obligations Agreement] and related loan documents relating to such [Additional Pari Passu Obligations] [Additional Junior Obligations] provides that, upon the New Representative's entry into this Agreement, the [additional First Lien Claimholders] [additional Second Lien Claimholders] in respect of such [Additional Pari Passu Obligations] [Additional Junior Obligations] will be subject to and bound by the provisions of the Intercreditor Agreement as [First Lien Claimholders] [Second Lien Claimholders].

This Joinder Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts, and all of said counterparts taken together shall be deemed to constitute one and the same instrument.   Delivery of an executed signature page of this Agreement by e-mail or facsimile transmission shall be effective as delivery of a manually executed counterpart hereof.

Except as expressly supplemented hereby, the Intercreditor Agreement shall remain in full force and effect.

**THIS JOINDER AGREEMENT, AND ANY CLAIMS, CONTROVERSY, DISPUTE OR CAUSE OF ACTION (WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE) BASED UPON, ARISING OUT OF OR RELATING TO THIS JOINDER AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.**

Any provision of this Joinder Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

All communications and notices hereunder shall be in writing and given as provided in Section 9.9 of the Intercreditor Agreement.  All communications and notices hereunder to the New Representative shall be given to it at the address set forth below its signature hereto.

[Remainder of this page intentionally left blank]

#4814-6502-9968
#91731356v11

Exhibit A – Page 2

IN WITNESS WHEREOF, the Additional Agent has duly executed this Joinder Agreement to the Intercreditor Agreement as of the day and year first above written.

[NAME OF ADDITIONAL AGENT],
as [       ] for the holders of [                ]

By: _____
      Name:
      Title:


Address for notices:

_____

_____

attention of:_____

Telecopy:_____


Receipt of the foregoing acknowledged:
[NAME OF APPLICABLE PARI PASSU
OBLIGATIONS AGENT],
as [Insert title of Agent]


By: _____
      Name:
      Title:


Receipt of the foregoing acknowledged:
[NAME OF APPLICABLE JUNIOR OBLIGATIONS],
as [Insert title of Agent]


By: _____
      Name:
      Title:


Exhibit A – Page 3

#4814-6502-9968
#91731356v11

Exhibit B to the Amended and Restated Intercreditor Agreement

[FORM OF] DEBT DESIGNATION NO. [ ] (this "Designation") dated as of [     ], 20[ ] with respect to the AMENDED AND RESTATED INTERCREDITOR AGREEMENT dated as of February 26, 2019 (the "Intercreditor Agreement"), among Bank of America, N.A., as ABL Collateral Agent, Jefferies Finance LLC (as successor to Credit Suisse AG, Cayman Islands Branch), as First Lien Collateral Agent, and Jefferies Finance LLC (as successor to Credit Suisse AG, Cayman Islands Branch), as Second Lien Collateral Agent, and each other Additional Agent that from time to time becomes a party thereto pursuant to the terms thereof, and acknowledged and agreed to by, Trico Group Holdings, LLC ("Parent"), Trico Group, LLC (the "Borrower") and each of the other Loan Parties party thereto.

Capitalized terms used herein but not otherwise defined herein shall have the meanings assigned to such terms in the Intercreditor Agreement.

This Designation is being executed and delivered in order to designate additional secured Obligations of the Borrower and the Loan Parties as [Additional Pari Passu Obligations][Additional Junior Obligations] entitled to the benefit of and subject to the terms of the Intercreditor Agreement.

The undersigned, the duly appointed [*specify title of Responsible Officer*] of the Borrower hereby certifies on behalf of the Borrower that:

1. Borrower intends to incur Indebtedness (the "Designated Obligations") in the initial aggregate principal amount of [          ] pursuant to the following agreement: [*describe credit/loan agreement indenture or other agreement giving rise to Additional Pari Passu Obligations or Additional Junior Obligations, as the case may be*] (the "Designated Agreement") which will be [Additional Pari Passu Obligations][Additional Junior Obligations].

2. The incurrence of the Designated Obligations is permitted to be incurred, secured and guaranteed by each extant ABL Loan Document and Term Loan Document.

3. The name and address of the Additional Agent for such Designated Obligations is:

   [Insert name and all capacities; Address]

   Telephone:         _____

   Fax:         _____

   Email  _____

4. Attached hereto are true and complete copies of each of the Additional [Pari Passu/Junior] Agreement relating to such Additional [Pari Passu/Junior] Obligations.

[Remainder of this page intentionally left blank]

Exhibit B – Page 1

#4814-6502-9968
#9173356v11

IN WITNESS WHEREOF, the Borrower has caused this Designation to be duly executed by the undersigned Responsible Officer as of the day and year first above written.

TRICO GROUP, LLC

By: _____
       Name:
       Title:

Exhibit B – Page 2

#4814-6502-9968
#9173135v11

Exhibit C to the Amended and Restated Intercreditor Agreement

[FORM OF] LOAN PARTY JOINDER AGREEMENT NO. [ ] dated as of [      ], 20[  ] (the "Loan Party Joinder Agreement") to the AMENDED AND RESTATED INTERCREDITOR AGREEMENT dated as of February 26, 2019 (the "Intercreditor Agreement"), among Bank of America, N.A., as ABL Collateral Agent, Jefferies Finance LLC (as successor to Credit Suisse AG, Cayman Islands Branch), as First Lien Collateral Agent, and Jefferies Finance LLC (as successor to Credit Suisse AG, Cayman Islands Branch), as Second Lien Collateral Agent, and each other Additional Agent that from time to time becomes a party thereto pursuant to the terms thereof, and acknowledged and agreed to by, Trico Group Holdings, LLC, ("Parent"), Trico Group, LLC (the "Borrower") and each of the other Loan Parties party thereto.

Capitalized terms used herein but not otherwise defined herein shall have the meanings assigned to such terms in the Intercreditor Agreement.

The undersigned, [                    ], a [                    ], (the "New Loan Party") wishes to acknowledge and agree to the Intercreditor Agreement and become a party thereto and to acquire and undertake the rights and obligations of a Loan Party thereunder.

Accordingly, the New Loan Party agrees as follows for the benefit of the ABL Collateral Agent, Term Collateral Agents, Additional Agents and the other Claimholders:

The New Loan Party (a) acknowledges and agrees to, and becomes a party to the Intercreditor Agreement as a Loan Party, (b) agrees to all the terms and provisions of the Intercreditor Agreement and (c) shall have all the rights and obligations of a Loan Party under the Intercreditor Agreement.  This Loan Party Joinder Agreement supplements the Intercreditor Agreement and is being executed and delivered by the New Loan Party pursuant to Section 9.15 of the Intercreditor Agreement.

The New Loan Party represents and warrants to the ABL Collateral Agent, Term Collateral Agents, Additional Agents and the other Claimholders that (a) it has full power and authority to enter into this Loan Party Joinder Agreement, in its capacity as a Loan Party and (b) this Loan Party Joinder Agreement has been duly authorized, executed and delivered by it and constitutes its legal, valid and binding obligation, enforceable against it in accordance with the terms of this Loan Party Joinder Agreement.

This Loan Party Joinder Agreement may be executed by one or more of the parties to this Loan Party Joinder Agreement on any number of separate counterparts, and all of said counterparts taken together shall be deemed to constitute one and the same instrument.   Delivery of an executed signature page of this Loan Party Joinder Agreement by e-mail or facsimile transmission shall be effective as delivery of a manually executed counterpart hereof.

Except as expressly supplemented hereby, the Intercreditor Agreement shall remain in full force and effect.

THIS LOAN PARTY JOINDER AGREEMENT, AND ANY CLAIMS, CONTROVERSY, DISPUTE OR CAUSE OF ACTION (WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE) BASED UPON, ARISING OUT OF OR RELATING TO THIS LOAN PARTY JOINDER AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.

Any provision of this Loan Party Joinder Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any

Exhibit C – Page 1

jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

All communications and notices hereunder shall be in writing and given as provided in Section 9.9 of the Intercreditor Agreement.

Exhibit C – Page 2

#4814-6502-9968
#91731356v11

IN WITNESS WHEREOF, the New Loan Party has duly executed this Loan Party Joinder Agreement to the Intercreditor Agreement as of the day and year first above written.

[_____]


By: _____
Name:
Title:


Exhibit C – Page 3

#4814-6502-9968
#91731356v11