**Exhibit C**

**Form Trade Agreement**

## TRADE AGREEMENT

[●] (the "**Company**"), on the one hand, and the supplier identified in the signature block below ("**Supplier**"), on the other hand, hereby enter into the following trade agreement (this "**Trade Agreement**") dated as of the date in the Supplier's signature block below.

### Recitals

WHEREAS on [●], 2025 (the "**Petition Date**"), [●] and certain of its affiliates (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of Texas Houston Division (the "**Court**").

WHEREAS on [●], 2025, the Court entered its *Interim Order (I) Authorizing Debtors to Pay (a) Critical Vendor Claims, (b) Non-U.S. Vendor Claims, (c) Lien Claims, and (d) 503(B)(9) Claims, (II) Confirming Administrative Expense Priority of Undisputed Outstanding Prepetition Orders, and (III) Granting Related Relief* (collectively, with the final order granting similar relief, the "**Critical Vendors Orders**")[1] (Docket No. [●]) authorizing, but not directing, the Debtors on an interim basis, under certain conditions, to pay the prepetition claims of certain suppliers, including Supplier, subject to the terms and conditions set forth therein.

WHEREAS prior to the Petition Date, Supplier delivered goods to and/or performed services for the Company, and the Company paid Supplier for such goods and/or services, according to Customary Trade Terms (as defined herein).

WHEREAS the Company and Supplier (each a "**Party**," and collectively, the "**Parties**") agree to the following terms as a condition of payment on account of certain pre-petition claims Supplier may hold against the Company.

### Agreement

1. <u>Recitals</u>.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2. <u>Supplier Payment</u>.  Supplier represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to Supplier is $[●] (the "**Agreed Supplier Claim**").  Following execution of this Trade Agreement, the Company shall, in full and final satisfaction of the Agreed Supplier Claim, pay Supplier $[●] on account of its prepetition claim (the "**Supplier Payment**") (without interest, penalties, or other charges), as such amounts become due and payable in the ordinary course.

3. <u>Agreement to Supply</u>.

    a. Supplier shall supply goods and/or perform services to or for the Company, and the Company shall accept and pay for goods and/or service from Supplier, for the Duration of

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Critical Vendors Orders.

the Cases (as defined below), on the trade terms (the "**Customary Trade Terms**") at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances (as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable), product mix, availability, and other programs) in place in the two years prior to the Petition Date except for any partial payments or other payments (or assurances) Company made with respect to any unfinished product.

        b.      "**Duration of the Cases**" means the earlier of: (i) the effective date of a chapter 11 plan in the Debtors' chapter 11 cases; (ii) conversion of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; or (iii) dismissal of the Debtors' chapter 11 cases.

        c.      The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed-to in writing by the Parties. For the avoidance of doubt, such Customary Trade Terms include, but are not limited to:

        d.      Supplier shall continue to honor any existing allowances, credits, contractual obligations, or balances that accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

4.      <u>Other Matters</u>.

        a.      Supplier agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Debtors' chapter 11 cases on account of any outstanding administrative claims Supplier may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. Supplier agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect. The Supplier Payment will be made concurrently with payment of other outstanding administrative claims as provided in a confirmed plan.

        b.      Supplier will not separately seek payment from the Debtors on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a plan confirmed in the Debtors' chapter 11 cases.

        c.      Supplier will not file or otherwise assert against the Debtors, their assets, or any other affiliated person or entity, or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to Supplier by the Debtors arising from prepetition agreements or transactions. Furthermore, if Supplier has taken steps to file or assert such a lien prior to entering into this Trade Agreement, Supplier will promptly take all necessary actions to remove such liens.

5. <u>Breach</u>.

a. In the event that the Company pays Supplier its Supplier Payment and Supplier is determined to have breached this Trade Agreement (a "**Supplier Breach**"), upon written notice to Supplier, Supplier shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Supplier Payment or any portion of the Supplier Payment which cannot be recovered by the Company from the postpetition receivables then owing to Supplier from the Company.

b. In the event that the Company recovers the Supplier Payment pursuant to Section 5(a) hereof or otherwise, the full Agreed Supplier Claim shall be reinstated as if the Supplier Payment had not been made.

c. Supplier agrees and acknowledges that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the Company. Accordingly, Supplier agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to seek an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. Supplier hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies. Notwithstanding the foregoing, in the event of a specific performance action by the Company, the Supplier retains its right to seek adequate assurance of payment and other similar relief pursuant to applicable law.

d. In the event the Company fails to pay for goods or services delivered postpetition in accordance with this Trade Agreement, and the Company fails to cure such default within 10 days after receiving written notice of such default, the Supplier shall have the right to terminate this Trade Agreement, in which event the Supplier (i) shall have no obligation to continue to provide goods or services to the Company and (ii) reserves its rights to file a timely proof of claim for any alleged unpaid amounts of the Supplier Payment.

6. <u>Notice</u>.

If to Supplier, then to the person and address identified in the signature block hereto.

If to Company:

127 Public Square,
Suite 5300
Cleveland, OH 44114
Attn:  Scott Wallace
E-mail:  scott.wallace@firstbrandsgroup.com

– and –

Weil, Gotshal & Manges LLP
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Attn:  Clifford W. Carlson
Email:  clifford.carlson@weil.com

– and –

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn:  Andriana Georgallas, Jason George, and Jarred Barlow
E-mail:  andriana.georgallas@weil.com, jason.george@weil.com, and jarred.barlow@weil.com

7. <u>Representations and Acknowledgements</u>.  The Parties agree, acknowledge and represent that:

a. the Parties have reviewed the terms and provisions of the Critical Vendors Orders and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Critical Vendors Orders;

b. any payments made on account of the Agreed Supplier Claim shall be subject to the terms and conditions of the Critical Vendors Orders;

c. if Supplier refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Critical Vendors Orders, the Bankruptcy Code, or applicable law; and

d. in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from Supplier to the Company, until a ruling of the Court is obtained.

8. <u>Confidentiality</u>.  In addition to any other obligations of confidentiality between Supplier and Company, Supplier agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement or any of its terms; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "**Confidential Information**"); *provided* that if any party seeks to compel Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Supplier intends to disclose any or all of the Confidential Information, Supplier shall immediately provide the Company with prompt written notice so that the Company may seek an

injunction, protective order, or any other available remedy to prevent such disclosure; *provided further* that, if such remedy is not obtained, Supplier shall furnish only such information as Supplier is legally required to provide.

9.  Miscellaneous.

   a.  The Parties hereby represent and warrant that: (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

   b.  This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them. This Trade Agreement may not be changed, modified, amended or supplemented, except in a writing signed by both Parties.

   c.  Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

   d.  This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

   e.  The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement.

   f.  This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[*Signature page follows*]

AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE:

**[COMPANY]**  

By:
Title:

**[SUPPLIER]**  

By:
Title:
Address: