## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |
| | § | **Re: Docket No. 17** |
| | § | |

## RAISTONE PURCHASING LLC – SERIES XXXII'S LIMITED OBJECTION AND RESERVATION OF RIGHTS WITH RESPECT TO THE EMERGENCY MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS, (B) IMPLEMENT ORDINARY COURSE CHANGES TO CASH MANAGEMENT SYSTEM, AND (C) HONOR CERTAIN RELATED PREPETITION OBLIGATIONS, (II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY FOR POSTPETITION INTERCOMPANY CLAIMS, (III) EXTENDING TIME TO COMPLY WITH REQUIREMENTS OF 11 U.S.C. § 345(b), AND (IV) GRANTING RELATED RELIEF

Raistone Purchasing LLC – Series XXXII ("Raistone") as and for this limited objection and reservation of rights (this "Objection") with respect to the above-captioned debtors' and debtors' in possession (collectively, the "Debtors") *Emergency Motion for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Bank Accounts, (B) Implement Ordinary Course Changes to Cash Management System, and (C) Honor Certain Related Prepetition Obligations, (II) Granting Administrative Expense Priority for Postpetition Intercompany Claims, (III) Extending Time to Comply With Requirements of 11*

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

*U.S.C. § 345(b), and (IV) Granting Related Relief* [Docket No. 17] (the "<u>Motion</u>"), respectfully represent as follows:

## <u>PRELIMINARY STATEMENT</u>

1.      Raistone and certain of the Debtors and their non-debtor affiliates are parties to that certain Sixth Amended and Restated Receivables Purchase Agreement, dated May 14, 2024 (the "<u>Receivables Purchase Agreement</u>") under which Raistone purchased certain accounts receivable from the Sellers.[2]  All of the domestic Sellers under the Receivables Purchase Agreement are believed to be Debtors (and are referred to as the "<u>Debtor Sellers</u>"). As of the Petition Date, Raistone is owed no less than $172 million in connection with Purchased Receivables that it conveyed to Raistone under the Receivables Purchase Agreement.

2.      The Debtors represent in the First Day Declaration that they are in possession of approximately $2.3 billion that has accrued with respect to Third-Party Factoring arrangements as of the Petition Date and that the Debtors will segregate and hold such funds pending the result of the Investigation. This amount may include payments received on account of Purchased Receivables acquired by Raistone that were deposited in the Collection Account which may be one of the Debtors' Bank Accounts. The Motion makes no reference to such amounts and fails to identify in which Bank Account in which they are held. The Motion instead seeks approval of a Cash Management System where collections of the Purchased Receivables (as defined in the Receivables Purchase Agreement) with respect to Third-Party Factoring arrangements may be swept into Bank Accounts and potentially commingled with the Debtors' cash.

---

[2] Capitalized terms not otherwise defined herein shall have the same meaning(s) as in the First Day Declaration (defined below), Motion or Receivables Purchase Agreement, as applicable.

3.      By this Objection, Raistone requests that safeguards be put in place to ensure that the $2.3 billion described in the First Day Declaration (as well as any other proceeds of the Purchased Receivables, at least a portion of which, in Raistone's view, is not property of the estate) is not used by the Debtors and is preserved pending the results of the Investigation. Raistone further requests that more definitive disclosure be provided with respect to how the $2.3 billion is being safeguarded during the duration of the Chapter 11 Cases.

4.      For the foregoing reasons and those set forth below, Raistone respectfully requests that any order approving the Motion contains the modifications described in this Objection.

## **RELEVANT BACKGROUND**

### I.      **The Receivables Purchase Agreement**

5.      Pursuant to the terms of the Receivables Purchase Agreement, Raistone purchased the Purchased Receivables in connection with goods and services that the Debtor Sellers provided to non-debtor third parties (each third party, an "Account Debtor").

6.      Under Section 4(a) of the Receivables Purchase Agreement, the Debtor Sellers were originally appointed as servicer and agent for the administration and servicing of all Purchased Receivables. *See* Receivables Purchase Agreement § 4(a). In this capacity, each of the Debtor Sellers was responsible for commercial collection activities and to arrange for the timely payment of amounts due and owing under the Purchased Receivables by the applicable Account Debtor. *Id.*  The Receivables Purchase Agreement granted Raistone the right to terminate the Debtor Sellers' role as servicer at any time by written notice. *Id.*

7.      The Receivables Purchase Agreement requires that collections on account of Purchased Receivables be deposited into a designated collection account controlled by Raistone or, if Raistone consents, the Debtor Sellers. *Id.* § 4(c). If the Debtor Sellers receive any collections,

the Debtor Sellers must promptly remit the collections to Raistone's designated account.  Until remitted, the Receivables Purchase Agreement required the Debtor Sellers to hold such funds in trust, segregated from the Debtor Sellers' other property, and safeguarded as Raistone's exclusive property. *Id.*

8.      On September 25, 2025, pursuant to and as permitted by Section 4(a) of the Receivables Purchase Agreement, Raistone notified the Debtor Sellers by letter (the "<u>Replacement Notice</u>") that, among other things, the Debtor Sellers role as servicer had terminated effective immediately, and Raistone had been appointed as the Servicer under the Receivables Purchase Agreement. Further, as permitted by Sections 3(c) and 4(c) of the Receivables Purchase Agreement, Raistone in the Replacement Notice directed the Debtor Sellers to notify all Account Debtors that future payments with respect to the Purchased Receivables must be made to the account listed on Annex I of the Replacement Notice, a collection account designated by Raistone.

## II.    The Chapter 11 Cases and the Termination of the Receivables Purchase Agreement.

9.      On September 24 and 28, 2025 (as applicable, the "<u>Petition Date</u>"), the Debtors each commenced a case (collectively, the "<u>Chapter 11 Cases</u>") under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in this Court. The Debtors continue to operate as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

10.     On September 29, 2025, the Receivables Purchase Agreement terminated pursuant to Section 10(c) of the Receivables Purchase Agreement for all Debtors Sellers as a result of the commencement of the Chapter 11 Cases. *See* Receivables Purchase Agreement § 10(c).

11.     As of the Petition Date, Raistone is owed no less than $172 million in connection with Purchased Receivables to which it acquired title under the Receivables Purchase Agreement.

**III.     The Debtors Disclosures Concerning Factoring Arrangements.**

12.     On September 29, 2025, the Debtors filed the *Declaration of Charles M. Moore in Support of the Debtors' Chapter 11 Petitions* [Docket No. 22] (the "First Day Declaration").

13.     In the First Day Declaration, the Debtors disclosed that

> Following diligence performed by the Company's Advisors, the Debtors believe that ***an unpaid prepetition balance of approximately $2.3 billion has accrued with respect to the Third-Party Factoring arrangements as of the Petition Date***. The Debtors' factoring practices are subject to the Special Committee's ongoing Investigation including (i) whether receivables had been turned over to third party factors upon receipt, and (ii) whether receivables may have been factored more than once. ***Pending the results of the Investigation, the Debtors will segregate funds received on account of receivables that were factored prior to the Petition Date by the Company.***

First Day Declaration ¶ 72 (emphasis added).  The First Day Declaration did not provide any further information on how the approximately $2.3 billion in potential non-estate property will be segregated and protected.

## LIMITED OBJECTION

14.     In the First Day Declaration, the Debtors represent they have accumulated $2.3 billion with respect to the Third-Party Factoring arrangements as of the Petition Date and that, pending the results of the Special Committee's ongoing Investigation, all funds received on account of receivables factored prior to the Petition will be segregated.  *See id.*

15.     The Motion seeks to approve a Cash Management System that makes no mention of the approximately $2.3 billion of potentially non-estate property being held by the Debtors. Instead, the Motion seeks to permit prepetition practices to continue.  It is unclear whether this may result in funds collected in respect of the Purchased Receivables being commingled with funds held in the Main Concentration Accounts.

16.     Specifically, the Motion states that with respect to the Collection Accounts, the Debtors "receive payments from factor counterparties on account of factored and non-factored accounts receivable in the Collection Accounts" and that "[r]eceipts primarily flow through the Collection Accounts held by Debtors subsidiary to FBG and, subsequently, to the Main Concentration Account to be distributed as necessary to other Debtor entities." Motion ¶ 17.  Once the receipts are in the Main Concentration Accounts, then the funds collected appear to be commingled with other cash held by the Debtors. Specifically, the Motion provides that

> [t]he Debtors utilize a cash pooling arrangement centered on the Main Concentration Account, which is funded by periodic automatic sweeps of the Subsidiary Concentration Accounts or directly through automatic and manual sweeps of the Collection Accounts. The Debtors maintain the Main Concentration Account at BOFA and fund payroll obligations through the Main Concentration Account via reverse wire to OneSource, their payroll administrator.

Motion ¶ 16.

17.     This places Raistone's property — non-estate property — at risk of being commingled with estate property and potentially encumbered for the benefit of, used, or distributed to, parties that have no claim or right to such property. Therefore, any order approving the Motion should specify where segregated funds received on account of receivables that were factored prior to the Petition Date by the Debtors (whether received prior to or after the Petition Date) will be held and restrict such funds from being transferred without further order of the Court after conclusion of the Investigation.

## <u>RESERVATION OF RIGHTS</u>

18.     Raistone expressly reserves all rights with respect to the characterization, priority, validity, extent, and enforceability of any claims, rights, or interests it may have, and to supplement or amend this reservation of rights as necessary. Nothing herein shall be deemed a waiver of any such rights or remedies. Raistone reserves all rights to supplement or add to the legal and factual arguments raised in this Objection and to object to the Motion, on any bases whatsoever at a future date.

*[The Remainder of this Page is Intentionally Blank.]*

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Raistone respectfully requests that the Court enter an order that (i) specifies where segregated funds received on account of receivables that were sold prior to the Petition Date by the Debtors will be held*;* (ii) restrict such funds from being transferred until the conclusion of the Investigation without further order of the Court; and (iii) grant such other relief as the Court deems just and proper.

Dated: September 30, 2025                       **ORRICK, HERRINGTON & SUTCLIFFE LLP**

By: */s/ Jacob R. Herz*

Richard Jacobsen (admitted *pro hac vice*)
Laura Metzger (admitted *pro hac vice*)
Emanuel Grillo (admitted *pro hac vice*)
Nicholas Poli (admitted *pro hac vice*)
Ariel Roytenberg (admitted *pro hac vice*)
Jacob R. Herz (SDTX Federal Bar No. 3759822)
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Email: rjacobsen@orrick.com
      lmetzger@orrick.com
      egrillo@orrick.com
      npoli@orrick.com
      aroytenberg@orrick.com
      jherz@orrick.com

-and-

Nicholas Sabatino (admitted *pro hac vice*)
400 Capitol Mall, Suite 3000
Sacramento, California 95814-4497
Telephone: (916) 329-7962
Facsimile: (916) 329-4900
Email: nsabatino@orrick.com

*Counsel to Raistone Purchasing LLC - Series XXXII*

**<u>CERTIFICATE OF SERVICE</u>**

This will certify that a true and correct copy of the foregoing document was forwarded by

electronic transmission on September 30, 2025, to all registered ECF users appearing in the case.

<u>*/s/ Jacob R. Herz*</u>
Jacob R. Herz