IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*, | § § | Case No. 25-90399 (CML) |
| Debtors.[1] | § § § | (Jointly Administered) |
| | § § | Re: Docket No. 49 |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS
OF THE RAISTONE PARTIES TO EMERGENCY MOTION OF
DEBTORS FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING
DEBTORS TO (A) OBTAIN POSTPETITION FINANCING,  (B) USE CASH
COLLATERAL, AND (C) GRANT LIENS AND PROVIDE SUPERPRIORITY
ADMINISTRATIVE EXPENSE CLAIMS (II) GRANTING ADEQUATE
PROTECTION TO THE PREPETITION SECURED PARTIES,
(III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL
HEARING AND (V) GRANTING RELATED RELIEF**

Raistone Capital LLC ("Raistone Capital"), Raistone Purchasing Series LLC-Series XXXII ("Raistone XXXII"), Raistone Purchasing LLC-Series XXVIII ("Raistone XXVIII", and together with Raistone Capital and Raistone XXXII, "Raistone" or the "Raistone Parties") as and for this limited objection and reservation of rights (this "Objection") with respect to the above-captioned debtors' and debtors in possession's (collectively, the "Debtors") *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to the Prepetition Secured*

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

4137-8859-7856.1

*Parties, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 49] (the "<u>DIP Loan Motion</u>"), respectfully represent as follows:

## PRELIMINARY STATEMENT

1. While the Raistone Parties do not generally object to the Debtors obtaining the liquidity necessary to stabilize their operations and fund these Chapter 11 Cases, any relief granted on an interim basis (i) must protect property rights of the Raistone Parties and other similarly situated parties and (ii) must be expressly limited to what is truly essential and consistent with existing precedent in cases in this District. Indeed, the timing of the filing of the DIP Loan Motion makes any analysis of the relief requested before the first day hearings in these Chapter 11 Cases exceedingly difficult.

2. The DIP Loan Motion is submitted in the context of the acknowledgment by the Debtors' Chief Restructuring Officer that the Debtors have discovered "irregularities" with respect to the Debtors' prepetition factoring practices. These irregularities represent approximately $2.3 billion in funds withheld from the Raistone Parties and other similarly situated parties. Moreover, the Debtors' professionals have confirmed that the Debtors' practices are now the subject of an ongoing investigation by the Debtors' Special Committee. Although the Debtors propose to segregate funds pending the findings of that investigation, they provide no detail with respect to the purported segregation of these amounts in the DIP Loan Motion. Given the scope of the relief sought in the DIP Loan Motion, there exists considerable risk that proceeds of the Purchased Receivables, which are Raistone's property, as opposed to property of the Debtors' estates, could easily be swept up as cash collateral or pledged to secure the DIP Facility.

3. In addition, the Debtors offer little support beyond conclusory statements regarding the extraordinary consideration offered to the lenders under the DIP Loan Motion, including without limitation, the 3:1 roll-up of the prepetition loans into the DIP Loan. The roll-up is more

extraordinary when considered in light of the fact that a substantial portion of the funds when drawn will remain in escrow for two to three weeks according to the Initial Budget. To the extent any roll-up is approved, it should not be authorized at the extraordinary ratio set forth in the DIP Loan Motion and any advances on an interim basis should be limited until the appointment of an official committee of unsecured creditors.

4. In light of the scope of the relief sought and the limited time parties have been given to review the DIP Loan Motion, Raistone files this Objection to ensure that any interim relief granted does not in the first instance alter or impair Raistone's rights, and is consistent with the rights and obligations of the Debtors and Raistone under the Receivables Purchase Agreement. The proposed interim order should expressly state that the accounts receivable sold to Raistone are not property of the Debtors' estates and thus, are Excluded Assets for purposes of the proposed Interim Order and, consequently, excluded from the proposed DIP and adequate protection liens.

5. Second, the relief requested should comport with the relevant provisions of the Bankruptcy Code, and applicable nonbankruptcy law as well the customs, practices and rules in this District. The proposed roll-up and other consideration afforded to the lenders is extreme. The Debtors offer no comparable precedent in the DIP Loan Motion for the relief requested. Roll-ups are frequently limited to a 1:1 ratio.[2]

---

[2] *See, e.g., Sheridan Holding Company II, LLC*, Case No. 19-35189, (Bankr. S.D. Tex. Oct. 15, 2019) [Docket No.146] at 2 (permitting a roll-up of $50 million where the DIP provided $50 million in new money); *In re Vanguard Natural Resources, Inc.*, Case No. 19-31786, (Bankr. S.D. Tex. April 30, 2019) [Docket No. 241] at 2-3 (permitting a roll-up of $65 million where the DIP provided $65 million in new money); *In re Lyondell Chem. Co.*, Case No. 09-10023, (Bankr. S.D.N.Y. Mar. 1, 2009) [Docket No. 1002] at 2-3 (permitting a roll-up of $3.25 billion where the DIP provided $3.25 billion in new money).

## RELEVANT BACKGROUND[3]

### I. The Prepetition Factoring Arrangements

#### A. The Receivables Purchase Agreement

6. On May 14, 2024, Raistone XXXII and several of the Debtors (the "Debtor Sellers") entered into the Sixth Amended and Restated Receivables Purchase Agreement (as amended, modified or supplemented from time to time, the "Receivables Purchase Agreement"). Pursuant to the terms of the Receivables Purchase Agreement, Raistone XXXII purchased accounts receivable from the Debtor Sellers (the "Purchased Receivables") in connection with goods and services that the Debtor Sellers provided to non-debtor third parties (each third party, an "Account Debtor").

7. Under Section 4(a) of the Receivables Purchase Agreement, the Debtor Sellers were appointed as servicer and agent for the administration and servicing of all Purchased Receivables. *See* Receivables Purchase Agreement § 4(a). In this capacity, each of the Debtor Sellers were responsible for commercial collection activities and to arrange for the timely payment fof amounts due and owing under the Purchased Receivables by the applicable Account Debtor. *Id.* The Receivables Purchase Agreement granted Raistone XXXII the right to terminate the Debtor Sellers' role as servicer at any time by written notice. *Id.*

8. The Receivables Purchase Agreement requires that collections on account of Purchased Receivables be deposited into a designated collection account controlled by Raistone XXXII or, if Raistone XXXII consents, the Debtor Sellers. *Id.* § 4(c). If the Debtor Sellers receive any collections, the Debtor Sellers must promptly remit the collections to Raistone XXXII's

---

[3] Capitalized terms not otherwise defined herein shall have the same meaning(s) as in the First Day Declaration (defined below), Receivables Purchase Agreement, SCF Agreement or DIP Loan Motion, as applicable.

4

designated account. Until remitted, the Receivables Purchase Agreement required the Debtor Sellers to hold such funds in trust, segregated from the Debtor Sellers' other property, and safeguarded as Raistone XXXII's exclusive property. *Id.*

9.  On September 25, 2025, pursuant to and as permitted by Section 4(a) of the Receivables Purchase Agreement, Raistone XXXII notified the Debtor Sellers by letter (the "Replacement Notice") that, among other things, the Debtor Sellers role as servicer had terminated effective immediately, and Raistone XXXII had been appointed as the Servicer under the Receivables Purchase Agreement. Further, as permitted by Sections 3(c) and 4(c) of the Receivables Purchase Agreement, Raistone XXXII, in the Replacement Notice, directed the Debtor Sellers to notify all Account Debtors that future payments with respect to the Purchased Receivables must be made to the account listed on Annex I of the Replacement Notice, a collection account designated by Raistone XXXII.

10. On September 29, 2025, the Receivables Purchase Agreement terminated pursuant to Section 10(c) thereof for all Debtors Sellers as a result of the commencement of the Chapter 11 Cases. *See* Receivables Purchase Agreement § 10(c).

11. As of the Petition Date, Raistone XXXII is owed in excess of $172 million in connection with Purchased Receivables that it acquired under the Receivables Purchase Agreement.

### B. The Supply Chain Financing Agreement

12. On or about August 15, 2019, Raistone Purchasing LLC, formerly known as SGSF Master Purchasing DE LLC (the "Initial Funding Provider"), Raistone Capital LLC (the "Platform Provider"), and certain of the Debtors entered into a Supply Chain Finance Customer Agreement (as amended, modified or supplemented from time to time, the "SCF Agreement", together with

5

the Receivables Purchase Agreement, the "Raistone Factoring Agreements").[4] Pursuant to the terms of the SCF Agreement, the Customer Debtors were provided access to a technology platform to submit approved invoices for goods and services that the Debtors, in their capacity as "Customers," purchased from third-party suppliers (each, a "Supplier").

13. Following the original execution of the SCF Agreement, additional Debtor entities joined the SCF Agreement as "Customers" pursuant to joinder agreements. As of the Petition Date, the Debtors under the SCF Agreement included, among others: First Brands Group LLC, Trico Products Corporation, Strongarm, LLC, Carter Fuel Systems, LLC, ASC Industries, FRAM Group Operations LLC, Brake Parts, Inc., Champion Laboratories, Inc. (collectively, the "Customer Debtors").

14. Under the SCF Agreement, when the Customer Debtors approved an invoice for payment to a Supplier (each, an "Approved Invoice"), the Supplier could request early payment from Raistone at a discount (each such transaction, a "Settlement"). Upon Settlement, Raistone would pay the Supplier a discounted amount in advance of the invoice due date.

15. Under the SCF Agreement, the Customer Debtors "irrevocably and unconditionally" agreed and undertook, on a joint and several basis with each other Debtor Customer, to "pay, or procure payment of, the Approved Amount to the relevant Designated Account on the Due Date, without deduction, withholding or counterclaim and without exercising any right of set-off." *See* SCF Agreement, § 3.1. The SCF Agreement further provides that this payment obligation is "a fully enforceable independent payment undertaking" that may be assigned, sold, or participated by Raistone XXXVII. *Id.*

---

[4] The Initial Funding Provider subsequently assigned its rights and obligations under the SCF Agreement and related Transaction Documents (as defined in the SCF Agreement), to Raistone XXVIII.

16. On September 24, 2025, the Customer Debtors failed to pay more than $92 million in Approved Amounts that were due under the SCF Agreement.

17. Pursuant to Section 3.5 of the SCF Agreement, the commencement of these chapter 11 cases triggered an automatic acceleration of all amounts owed under the SCF Agreement.

18. As of the Petition Date, the Customer Debtors owe no less than $684 million under the SCF Agreement in connection with Settlements that it funded to Suppliers on behalf of the Customer Debtors.

### II. The DIP Loan Motion

19. Pursuant to the DIP Loan Motion, the Debtors seek authority to obtain up to $4.4 billion in senior secured, superpriority, and priming debtor-in-possession financing (the "DIP Facility"). DIP Loan Motion ¶ 9. The DIP Facility includes $1.1 billion in new money loans, of which $500 million would be available upon interim approval. *Id.* The DIP Loan Motion also seeks authority to roll-up $3.3 billion in prepetition obligations under the First Lien Term Loan Agreement, with $1.5 billion sought to be rolled-up upon entry of the Interim DIP Order, representing a highly unusual 3:1 ratio. *Id.* In exchange, the Debtors seek authority to grant the DIP Lenders superpriority claims and priming liens on existing collateral, while providing adequate protection liens and claims to the prepetition secured parties in respect of the ABL Obligations, First Lien Term Loan Obligations, and Second Lien Term Loan Obligations. *Id.* ¶ 11.

### III. The Debtors' Disclosures Concerning Factoring Arrangements

20. On September 29, 2025, the Debtors filed the *Declaration of Charles M. Moore in Support of the Debtors' Chapter 11 Petitions* [Docket No. 22] (the "First Day Declaration").

21. In the First Day Declaration, the Debtors disclosed that:

> Following diligence performed by the Company's Advisors, the Debtors believe that an unpaid prepetition balance of approximately $2.3 billion has accrued with respect to the Third-Party Factoring

7

arrangements as of the Petition Date. The Debtors' factoring practices are subject to the Special Committee's ongoing Investigation including (i) whether receivables had been turned over to third party factors upon receipt, and (ii) whether receivables may have been factored more than once. Pending the results of the Investigation, the Debtors will segregate funds received on account of receivables that were factored prior to the Petition Date by the Company.

First Day Declaration ¶ 72.

## **LIMITED OBJECTION**

22. Raistone does not object to the Debtors obtaining DIP Financing or authority to continue to use their Cash Collateral on an interim basis subject to customary terms and conditions. Given the expedited relief sought by the Debtors and the disclosures in the First Declaration concerning approximately $2.3 billion in funds that are subject to the Investigation, the Raistone Parties make the following preliminary and limited objections to the DIP Loan Motion:

   a. ***The Purchased Receivables***. Pursuant to Section 541 of the Bankruptcy Code, the commencement of a bankruptcy case creates an estate, which, subject to certain exceptions, consists of "all legal or equitable interests of the debtor in property as of the commencement of a case" as determined by applicable state law. 11 U.S.C. 541(a)(1). The receivables that were factored prior the Petition Date under the Receivables Purchase Agreement and SCF Agreement are "true sales" and are not property of the estates. *See, e.g., Dryden Advisory Grp., LLC v. Beneficial Mut. Sav. Bank (In re Dryden Advisory Grp., LLC),* 534 B.R. 612, 626-27 (Bankr. M.D. Pa. 2015) (accounts receivable sold pre-petition do not constitute estate property); *In re Doctor's Hosp. of Hyde Park. Inc.*, 507 B.R. 558 (Bankr. N.D. Ill. 2013) (describing "true sale" determination as a question of state law and observing that if transfer is a true sale, the assets should not be considered assets of the bankruptcy estate). Any order approving the DIP Loan Motion on an interim or final basis should clarify that the Purchased Receivables are not subject to any liens (including the DIP Liens or the Adequate Protection Liens) granted to the DIP Secured Parties and the Prepetition Secured Parties and that nothing in the Interim DIP Order impairs Raistone's ability to collect on account of the Purchased Receivables.

   b. ***The Segregated Funds***. The Interim Order should expressly state that nothing in the Interim DIP Order encumbers or otherwise adversely affects title to the funds received on account of receivables that were factored prior to the Petition Date by the Debtors and that the Debtors will maintain such funds in an identifiable segregated account as described more generally in the First Day Declaration.

c. ***The Roll-Up.*** The Debtors seek approval on less than a day's notice for a $1.5 billion roll up upon entry of the Interim DIP Order. *See* DIP Loan Motion ¶ 15(i). Courts are suspicious of roll-ups and generally disfavor them, particularly at the outset of a case. *In re Bruin E&P Partners, LLC*, No. 20-33605(MI) (Bankr. S.D. Tex. July 17, 2020) (Judge Isgur noting that "Rollups are heavily disfavored under the Bankruptcy Code"); *In re Verasun*, No. 08-12606 (BLS) (Bankr. D. Del. Dec. 3, 2008) Tr. of Hr'g at 32:20–25 [Dkt. No. 316] (Judge Shannon noting that bankruptcy courts have found that "roll-ups are not favored. They are strongly discouraged on day one, and the bottom line is that for approval a substantial showing [of need for the financing] has to be made"). The Debtors allege in conclusory fashion that the $1.5 billion roll-up being approved upon entry of the Interim Order was required by the Prepetition Secured Lenders, DIP Agents and DIP Lenders. *See* DIP Loan Motion ¶ 17. No precedent or other support has been offered. Granting liens and superiority status at the levels proposed may elevate an otherwise undersecured prepetition claim before any party, or for that matter, the Debtors' Special Committee, has had the chance to investigate the true extent and value of the Prepetition Lender's collateral. Moreover, a $1.5 billion roll-up will dilute recovery for general unsecured creditors and should not be approved on less than 24 hours' notice, where no committee or other independent fiduciary has had a chance to review the terms of the roll-up. Raistone requests that the Court defer approval of the roll up to a subsequent hearing.

d. ***Stipulations Concerning the ABL Liens.*** Raistone objects to the interim approval of the Debtors' stipulations affirming the validity, priority, and extent of the prepetition ABL Liens on accounts receivable. Given the Debtors' disclosure of an active investigation into whether receivables were improperly pledged to multiple parties, any acknowledgement or stipulation by the Debtors as to the extent, priority, or validity of liens granted in connection with the ABL Facility must be expressly subject to the Challenge Period and parties that purchased receivables prior to the Petition Date should have the right to challenge such liens.

## **RESERVATION OF RIGHTS**

23. Raistone expressly reserves all rights with respect to the characterization, priority, validity, extent, and enforceability of any claims, rights, or interests it may have, and to supplement or amend this reservation of rights as necessary. Nothing herein shall be deemed a waiver of any such rights or remedies. Raistone reserves all rights to supplement or add to the legal and factual arguments raised in this Objection, object to the DIP Loan Motion or entry of the Final Order, on any bases whatsoever at a future date.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Raistone Parties respectfully request that the Court sustain the limited objections set forth herein in respect of any Interim DIP Order and grant such other and further relief as the Court deems just and proper.

Dated: September 30, 2025        **ORRICK, HERRINGTON & SUTCLIFFE LLP**

By: */s/ Jacob R. Herz*
    Richard Jacobsen (admitted *pro hac vice*)
    Laura Metzger (admitted *pro hac vice*)
    Emanuel Grillo (admitted *pro hac vice*)
    Nicholas Poli (admitted *pro hac vice*)
    Ari Roytenberg (admitted *pro hac vice*)
    Jacob R. Herz (SDTX Federal Bar No. 3759822)
    51 West 52nd Street
    New York, NY 10019-6142
    Telephone: (212) 506-5000
    Facsimile: (212) 506-5151
    Email: rjacobsen@orrick.com
           lmetzger@orrick.com
           egrillo@orrick.com
           npoli@orrick.com
           aroytenberg@orrick.com
           jherz@orrick.com

-and-

Nicholas Sabatino (admitted *pro hac vice*)
400 Capitol Mall, Suite 3000
Sacramento, California 95814-4497
Telephone: (916) 329-7962
Facsimile: (916) 329-4900
Email: nsabatino@orrick.com

*Counsel to Raistone Capital LLC, Raistone Purchasing Series LLC-Series XXXII, and Raistone Purchasing LLC-Series XXVIII*

## **CERTIFICATE OF SERVICE**

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission on September 30, 2025, to all registered ECF users appearing in the case.

*/s/ Jacob R. Herz*  
Jacob R. Herz
