**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FIRST BRANDS GROUP, LLC, *et al.*,[1] | ) | Case No. 25-90399 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MOTION OF UMB BANK N.A. FOR ENTRY OF AN**
**ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

> **This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule. Represented parties should act through their attorney.**
>
> **If you object to the relief requested, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on December 22, 2025 at 9:00 a.m. (prevailing Central Time) in Courtroom 402, 4th floor, Bob Casey United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.**
>
> **You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon**

---

[1]   A complete list of the debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

> **in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

UMB Bank, N.A., in its capacity as administrative agent for the UMB Lenders (defined below) (the "Agent" and together with the UMB Lenders, the "UMB Parties") under a revolving credit facility to debtor Global Assets LLC ("Global Assets US") and debtor Global Assets GmbH ("Global Assets Germany," and together with Global Assets US, the "Global Assets SPEs"), by and through its undersigned counsel, hereby moves (this "Motion") the Court for entry of an order granting relief from the automatic stay in the Carnaby Capital Holdings, LLC ("Carnaby Holdings") bankruptcy case so that the Agent can foreclose on its pledge of the equity of the Global Assets SPEs. In support of this Motion, the Agent (i) incorporates the Weisheit Declaration[2], and the exhibits annexed thereto, (ii) respectfully submits the supporting Supplemental Declaration of Eric Weisheit filed herewith (the "Supplemental Weisheit Declaration"), and (iii) incorporates by reference any to-be-filed supplemental declarations in support of the Motion.[3]

---

[2] As used herein, the "Weisheit Declaration" shall mean that certain *Declaration of Eric Weisheit in Support of UMB Bank N.A.'s (1) Emergency Motion to Enforce Stipulation and Agreed Order Regarding Adequate Protection of UMB Bank, N.A. and the UMB Lenders and (2) Second Objection and Reservation of Rights to Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 486-1]. Capitalized terms used, but not defined, herein shall have the meaning ascribed to such term in the Weisheit Declaration.

[3] The Supplemental Weisheit Declaration is also submitted in support of the *Motion of UMB Bank N.A. for Entry of an Order Appointing a Chapter 11 Trustee* filed contemporaneously herewith (the "Trustee Appointment Motion"). This Motion and the Trustee Appointment Motion are alternative forms of relief and the Agent seeks the relief sought in this Motion in the first instance.

## PRELIMINARY STATEMENT

1.     The Agent was forced to file this Motion because of the brazen decision by the management and advisory team of the Global Assets SPEs to violate their fiduciary duties to the creditors of Global Assets SPEs and prioritize the well-being of (i) non-debtor affiliates Ultinon Motion Germany GmbH (f/k/a Lumileds Germany GmbH) and Ultinon Motion Delaware LLC (f/k/a Lumileds Delaware LLC) (the foregoing, collectively, "Ultinon") (Ultinon, together with other non-debtor affiliates, the "Non-Debtor Affiliates"), (ii) the parent entities of Ultinon and certain debtors, and (iii) the debtor-in-possession lenders in these bankruptcy cases ("DIP Lenders"). The Ultinon business (f/k/a Lumileds) is a lamp and accessory business purchased by various Non-Debtor Affiliates for more than $235 million in 2024; the Ultinon business is owned by Non-Debtor Affiliates, including Ultinon.

2.     The Global Assets SPEs' property—the UMB Inventory—is being illegally misappropriated for the benefit of Ultinon, a Non-Debtor Affiliate with the consent of the Global Assets SPEs' current management due to their hopeless conflict of interest. Under either Bankruptcy Code Section 362(d)(1) or (2), the Agent is entitled to stay relief.

3.     Under Bankruptcy Code Section 362(d)(1), "cause" exists to grant the relief, as, among other things, the UMB Parties' security interest in the UMB Inventory and Global Assets SPEs are not adequately protected, the Global Assets SPEs' cases were filed in bad faith and are mired by countless conflicts of interest (depriving them of a true fiduciary).

4.     The UMB Parties (who are the only material creditors of the Global Assets SPEs) remain oversecured (as they are currently owed approximately $34 million on the Revolving Credit Facility) and are entitled to current pay interest, fees and other customary adequate protection. Specifically, as of the petition date, the Global Assets SPEs owned approximately $55 million in inventory, all of which is the validly posted collateral of the UMB Parties. The UMB Parties

rigorously tracked the collateral since the inception of the Revolving Credit Facility, including through regular field audits before and during the case (performing weekly postpetition field audits)—and such field audits reveal postpetition diminution to the UMB Inventory in excess of $1,000,000.

5.     Since the filing of the Global Assets SPEs' bankruptcy cases, the UMB Inventory has generated significant cash flows for Non-Debtor Affiliates, without proper compensation to the Global Assets SPEs and the UMB Lenders. More specifically, the utilization of UMB Inventory has generated an estimated $2,000,000 in revenues and gross margin of $600,000 per week for the benefit of Non-Debtor Affiliates. Despite these returns, the Global Assets SPEs and the UMB Parties have been damaged via diminution in value of the UMB Inventory, which diminution remains uncured, and the UMB Lenders have been denied interest or attorneys' fee reimbursement.

6.     Notwithstanding the undisputed value and clear tracking of these estate assets, the current management and advisory team of the Global Assets SPEs are disclaiming the Global Assets SPEs' ownership of the UMB Inventory, effectively abandoning the Global Assets SPEs' property to Ultinon, in order to support new money rescue financing by the DIP Lenders into the Ultinon business. The management and advisory team of the Global Assets SPEs—who are supposed to be fiduciaries of the Global Assets SPEs— are acting as if the inventory in question is the property of Ultinon (and not an estate asset) only because it suits their immediate needs. The management and advisory team have provided no factual or legal basis for their decision and it is patently incorrect under facts and applicable law.

7.     In any other context, the Global Assets SPEs estates would be fighting this wrongful seizure and use of estate property to their last breath. This reallocation of estate value

4

from the Global Assets SPEs to non-debtor Ultinon patently violates fiduciary duties, the Bankruptcy Code, and due process. It also does not immediately benefit any bankruptcy estate. At best, contingent equity value in Ultinon (if any) may ultimately flow upward (through various intermediary entities) to the benefit of parent entities and, most significantly, the DIP Lenders (who should be structurally subordinated to the UMB Parties). This egregious breach of fiduciary duties is further grounds for stay relief for cause consistent with Bankruptcy Code Section 362(d)(1).

8.      In the alternative, grounds exist for stay relief under Bankruptcy Code Section 362(d)(2) because the Debtors' management and advisors are estopped from both improperly disclaiming the ownership of the Global Assets SPEs' only asset, the UMB Inventory, and at the same time asserting that the Global Assets SPEs have equity value and are necessary for a restructuring of their immediate parent (Carnaby Holdings). It is undisputed that the UMB Parties received a validly perfected pledge of the equity of the Global Assets SPEs. The Debtors' management and advisory teams have inexplicably decided to abandon the rights of the Global Assets SPEs. As such, the UMB Parties are entitled to foreclose on their pledge of the Global Assets SPEs' equity and appoint independent directors to act in *these entities*' best interests as true fiduciaries.

## JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334(b).  *In re Council of Unit Owners of the 100 Harborview Drive Condo.*, 552 B.R. 84, 86 (Bankr. D. Md. 2016); *In re ComScape Telecommunications, Inc.*, 423 B.R. 816, 819 (Bankr. S.D. Ohio 2010); *In re Brandon Farmer's Mkt., Inc.*, 34 B.R. 148, 149 (Bankr. M.D. Fla. 1983).

10.     This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

12.     This Motion is made pursuant to Rule 1017(f)(1) of the Federal Rules of Bankruptcy Procedure and the statutory predicates for the relief sought herein are Sections 105, 1104(a), and 1112(b) of the Bankruptcy Code and Rule 4001-1 of the Bankruptcy Local Rules for the Bankruptcy Court for the Southern District of Texas.

## **BACKGROUND**

13.     Debtors Global Assets US and Global Assets Germany are affiliates (but not subsidiaries) of First Brands Group, LLC ("First Brands" and collectively with its direct and indirect subsidiaries, the "FBG Debtors"). The Global Assets SPEs were formed as special purpose entities with the primary purpose of buying inventory (the "UMB Inventory") from the Ultinon business and financing that inventory pursuant to a prepetition revolving credit facility (the "Revolving Credit Facility") between the Global Assets SPEs, their parent entity, Carnaby Holdings, First Brands, as servicer, the lenders party thereto from time to time (collectively, the "UMB Lenders") and the Agent in its capacity as administrative agent (collectively, the "Credit Agreement Parties").

14.     The Credit Agreement Parties entered into that certain Credit Agreement, dated as of December 2, 2024 (as amended, amended and restated, restated, supplemented, modified, or otherwise in effect from time to time, the "Credit Agreement"). *See Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* [Docket No. 22] (the "Moore Declaration") ¶ 51. A true and correct copy of the Credit Agreement is attached as **Exhibit A** to the Weisheit Declaration. Pursuant to the Credit Agreement, the UMB Lenders extended the Revolving Credit Facility to the Global Assets SPEs in an aggregate maximum principal amount of $45,000,000 (together with all other obligations under the Credit Agreement, the "Obligations"). As of the

petition date, there is approximately $34,000,000 outstanding under the Revolving Credit Facility. The UMB Parties are the only material creditors of the Global Assets SPEs.

15.    Pursuant to the Credit Agreement, Carnaby Holdings provided a guaranty in favor of the Agent, whereby Carnaby Holdings guaranteed the Guaranteed Obligations (as defined in the Credit Agreement) thereunder. In order to secure the Obligations, Carnaby Holdings and the Agent entered into that certain Pledge and Security Agreement dated as of December 2, 2024 (as amended, amended and restated, restated, supplemented, modified or otherwise in effect from time to time, the "Security Agreement"). A true and correct copy of the Security Agreement is attached as **Exhibit B** to the Weisheit Declaration.

16.    The Security Agreement granted the Agent first priority liens on, and security interests in, and assignments and pledges of (collectively, the "Liens") substantially all assets of the Global Assets SPEs and Carnaby Holdings, including, without limitation, the Carnaby Holdings' equity interests in the Global Assets SPEs. The Agent filed UCC financing statements with the Delaware Secretary of State, perfecting the Liens under applicable state law and further perfected the Liens on foreign collateral pursuant to the local governing law. True and correct copies of the UCC financing statements are attached as **Group Exhibit D** to the Weisheit Declaration.

17.    As noted, the UMB Inventory was pledged to the Agent as collateral for the Global Assets SPEs' obligations under the Revolving Credit Facility. The UMB Inventory is held at two locations in Poland, one location in Germany, and one location in Michigan; it is subject to ongoing and in-person audits. In all instances, the UMB Inventory is segregated and readily identifiable from other property. The Agent is perfected in the UMB Inventory in accordance with the applicable state or foreign law.

18.     Mechanically, the Revolving Credit Facility contemplates the Global Assets SPEs' sale of the UMB Inventory to Ultinon or one of Ultinon's affiliates in exchange for (A) cash remitted to the Global Assets SPEs' collection account or (B) replacement Eligible Inventory (as defined in the Credit Agreement) of equal or greater value. The purchase and sale agreements relating to the Global Assets SPEs' purchase and sale of UMB Inventory are "Transaction Documents" as defined under the Revolving Credit Facility (the "Transaction Documents"). According to the Moore Declaration, as of the petition date, the Global Assets SPEs held approximately $68 million in inventory as of July 31, 2025. *Id.* ¶¶ 52-53.

19.     Importantly, because the Global Assets are special purpose vehicles (and the above described construct and related Transaction Documents are designed to facilitate same), the Global Assets SPEs, Carnaby Holdings and First Brands each agreed to take all steps required to (A) continue the Global Assets SPEs' identities as separate legal entities and make it apparent to third persons that the Global Assets SPEs are entities with assets and liabilities distinct from those of Viceroy Private Capital, LLC (the "First Brands Parent"), First Brands, and any other person and are not a division of First Brands Parent, First Brands, its affiliates or any other person and (B) ensure that the Global Assets SPEs shall at all times qualify as a bankruptcy-remote entities. Credit Agreement, § 5.1(m).

20.     On October 1, 2025, the Agent negotiated an initial adequate protection package reflected in that certain *Stipulation and Agreed Order Regarding Adequate Protection of UMB Bank, N.A. and the UMB Lenders* [Docket No. 213] (the "Initial Stipulation"), which was approved by the Court. That Initial Stipulation was breached almost immediately, as set forth in the Emergency Stipulation Enforcement Motion, filed on October 31, 2025.[4] One of the effects of the

---

[4]     "Emergency Stipulation Enforcement Motion" means *UMB Bank N.A.'s (1) Emergency Motion to Enforce Stipulation and Agreed Order Regarding Adequate Protection of UMB Bank, N.A. and the UMB Lenders and (2)*

Global Assets SPEs' breach of the Initial Stipulation is that the UMB Lenders have not been adequately protected from the petition date onward.

21.     Less than 48 hours prior to the hearing held on November 6, 2025 (the "November 6 Hearing"), the management and advisory team of Global Assets SPEs surprised the Agent by taking the position that the UMB Parties were not entitled to adequate protection. To date, the management and advisory team of Global Assets SPEs have not further articulated this position or provided any evidentiary support for same. Based on these discussions, it also appears that since the petition date, the Non-Debtor Affiliates may have been continuing to take the assets of the Global Assets SPEs without complying with the Initial Stipulation, the Transaction Documents, or the Bankruptcy Code.

22.     To preserve the immediate status quo, the Agent negotiated, as memorialized on the records of the November 6 Hearing and the hearing held on November 17, 2025, temporary, partial adequate protection. Such adequate protection consists of, among other things, replacement of UMB Inventory transferred out of the Global Assets SPEs with replacement Eligible Inventory (as defined in the Transaction Documents) consistent with the Transaction Documents and replacement liens on that replacement inventory. The UMB Parties made clear on the record at the applicable hearings that they were not fully adequately protected, and that any such arrangement was accordingly temporary.

23.     Among other things, the Agent and UMB Parties believe they are entitled to be brought and kept current on postpetition interest and fees. It is undisputed that Ultinon is making

---

*Second Objection and Reservation of Rights to Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 486].

a significant return on the sale of UMB Inventory, and such return can support adequate protection payments to the Agent as required by the Bankruptcy Code.

## RELIEF REQUESTED

24.     By this Motion, the UMB Parties respectfully requests that the Court enter an order granting relief from the automatic stay in the Carnaby Holdings bankruptcy case pursuant to Section 362 of the Bankruptcy Code to allow the Agent to foreclose on the equity interests of the Global Assets SPEs.

## ARGUMENT

## I.     THE COURT SHOULD GRANT THE AGENT RELIEF FROM THE AUTOMATIC STAY.

25.     The Court should grant relief from the automatic stay under section 362(d) of the Bankruptcy Code to permit the Agent to exercise its pledge on, or otherwise enforce rights with respect to, the equity interest of the Global Assets SPEs owned by Carnaby Holdings. Although one of the main purposes of the automatic stay is to "give[] the business a breathing spell and time to work constructively with its creditors" to propose a plan of reorganization, H.R. Rep. No. 95-595, at 174 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6135, Congress did not intend the automatic stay to be indefinite or absolute, and relief from the stay may be granted in appropriate circumstances. *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Wedgewood Inv. Fund, Ltd. v. Wedgewood Realty Group, Ltd. (In re Wedgewood)*, 878 F.2d 693, 697 (3d Cir. 1989)). Courts have recognized that "[t]he continuance of the automatic stay contemplates a debtor that is reorganizable and that is actively pursuing that goal. Where there is no reasonable likelihood of reorganization or where the debtor unreasonably delays in its efforts to reorganize, the Bankruptcy Code affords several avenues for relief to all creditors, secured as well as unsecured." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re*

*Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 370 (5th Cir. 1987), *aff'd,* 484 U.S. 365 (1988). As detailed herein, stay relief is warranted under Section 362(d)(1) and (2) of the Bankruptcy Code.

> **A.** **_Stay Relief for "Cause" is Warranted Under Section 362(d)(1) Because (i) the Global Assets SPEs Cases were Filed in Bad Faith to Frustrate the Agent's Rights with Respect to its Collateral and (ii) the UMB Parties are Not Receiving Adequate Protection and the Totality of the Circumstances Demonstrates Cause._**

26.     Grounds for stay relief exist under Section 362(d)(1) of the Bankruptcy Code. This section provides that the Court "shall grant relief from the stay ... for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Here, at least two independent forms of "cause" to lift the stay are present. First, Debtors filed the Global Assets SPEs cases in bad faith, as the Global Assets SPEs are not engaged in a good-faith attempt to reorganize, and lack the fundamental economic ability to do so in any event. Second, further cause to lift the automatic stay exists (i) as the UMB Parties are not adequately protected and (ii) the totality of the circumstances require such relief.

27.     The Bankruptcy Code does not define the term "cause." Courts therefore determine whether cause exists on a case-by-case basis. *In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 737-38 (6th Cir. 1994). Because the term "cause" is such an intentionally broad and flexible concept, multitudes of cases exist, all of which offer no precise standards to determine when cause exists to successfully obtain relief from the stay. *In re Holly's, Inc.*, 140 B.R. 643, 687 (Bankr. W.D. Mich. 1992); *accord Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997). Bankruptcy courts are therefore guided by "the particular circumstances of the case and . . . considerations that under the law make for the ascertainment of what is just to the claimants, the debtor and the estate." *Foust v. Munson S.S. Lines*, 299 U.S. 77, 83 (1936). Procedurally, the party seeking stay relief

11

bears the burden of proof on the issue of equity, and the party opposing stay relief bears the burden of proof on all other issues. *See* 11 U.S.C. § 362(g).

28.     A debtor's lack of good faith in filing a bankruptcy petition constitutes cause for lifting the automatic stay. *In re Reitnauer*, 152 F.3d 341, 344 (5th Cir. 1998); *Little Creek*, 779 F.2d at 1071; *In re Dunes Casino Hotel*, 63 B.R. 939, 944 (D.N.J. 1986); *Sterling Bank & Trust v. Merchant (In re Merchant)*, 256 B.R. 572, 577 (Bankr. W.D. Pa. 2000). As in the dismissal context, when a secured party seeks stay relief by challenging the good faith of a debtor's bankruptcy filing, the "burden of proving good faith is on the debtor." *In re Dunes Casino Hotel*, 63 B.R. at 944.

29.     Stay relief for "cause" is warranted under Section 362(d)(1) because the Global Assets SPEs cases were filed in bad faith to frustrate the Agent's rights to resort to its collateral and to undermine the special purpose entity structure of the Revolving Credit Facility. Structurally, the Revolving Credit Facility was designed to utilize a special purpose entity structure, which conceptually allowed the UMB Lenders to invest in certain assets of the Global Assets SPEs divorced from the risks associated with the other affiliated entities. The management and advisory team of the Global Assets SPEs intentionally flouted that structure and the agreements within the Transaction Documents to maintain same. Moreover, the Global SPEs have only one material creditor—the UMB Parties—which is an indicator of bad faith. The absence of good faith constitutes cause for lifting of the automatic stay. *Little Creek*, 779 F.2d at 1071; *In re WGMJR, Inc.*, 435 B.R. 423 (Bankr. S.D. Tex. 2010).

30.     Furthermore, "cause" exists because the UMB Parties are not adequately protected. As noted above, the Global Assets SPEs owned approximately $55 million in UMB Inventory as of the petition date. That number has diminished by approximately $1,000,000. The UMB Parties are also owed approximately $34,000,000. Accordingly, by any measure, even with the diminution

12

in value (which remains uncured), the UMB Parties are oversecured and entitled to typical corresponding adequate protection, including current pay interest and fees, not to mention replacement liens and claims to account for the diminution in value since the petition date. The Global Assets SPEs (and their management and advisors) have refused. The existing arrangement is woefully inadequate given that (i) the UMB Parties are oversecured and (ii) Ultinon and other Non-Debtor Affiliates continue to use the UMB Inventory to reap windfalls for themselves to the detriment of the UMB Parties (and in violation of the fiduciary duties that the Global Assets SPEs management and advisory teams owe to the Global Assets SPEs' estates and sole creditor—the UMB Parties).

31. Finally, courts also look to the totality of circumstances to establish "cause" for relief from the automatic stay. *In re Mid-Atl. Handling Sys., LLC*, 304 B.R. 111 (Bankr. D.N.J. 2003). In reviewing the "totality of circumstances," bankruptcy courts, including this court, have applied a three-prong test for determining when a stay should be lifted, including: (1) whether any great prejudice to either the bankruptcy estate or the debtor will result in prosecution of the lawsuit; (2) whether the hardship to the non-debtor party by the continuation of the automatic stay outweighs the hardship of the debtor; and (3) whether the creditor has a probability of success on the merits of his or her case. *In re Kao*, No. 15-31193-H3-13, 2015 WL 9412744, at *2 (Bankr. S.D. Tex., December 21, 2015); *In re Fernstrom Storage and Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991); *In re Robertson*, 244 B.R. 880, 882 (Bankr. N.D. Ga. 2000); *In re Bock Laundry Machine Co.*, 37 B.R. 564, 566 (Bankr. N.D. Ohio 1984). Even a slight probability of success on the merits may suffice to support lifting the stay under appropriate circumstances. *In re SCO Group, Inc.*, 395 B.R. 852, 859 (Bankr. D. Del. 2007).  These factors were developed in the context of litigation,

but can be analogized to the Agent's out-of-court foreclosure of the pledge of the Global Assets SPEs' equity interests.

32.     Lifting the stay to permit the Agent to exercise its contractual rights under the Credit Agreement and related loan documents serves judicial economy. As described further below, the current management is estopped from claiming prejudice to Carnaby Holdings and its parent entities, as they have treated as worthless the Global Assets SPEs' interests in the UMB Inventory. Similarly, there will be no prejudice to the creditors of the Global Assets SPEs, as this motion does not seek to remove the Global Assets SPEs from the bankruptcy forum (in other words, this is not a motion to dismiss the Global Assets SPEs' case). Moreover, by express design, the only principal creditors of the Global Assets SPEs are the UMB Parties, and any other creditors would have been well aware of the Global Assets SPEs' status  as special purpose bankruptcy remote entities and have governed themselves accordingly. In contrast, because the Debtors' current management refuses to protect the rights of the Global Assets SPEs, these entities and the UMB Parties will be prejudiced irreparably if relief is not granted. There is no evidence that fairness is ensured by requiring that the Global Assets SPEs remain controlled by the larger First Brands group. To the contrary, allowing the Agent to foreclose and appoint truly independent directors is the only path to achieving a fair resolution for Global Assets SPEs' creditors. As to success on the merits, there is no basis to challenge the UMB Parties' right to foreclose on the Global Assets SPEs' equity pledges under applicable law.

**B.     Stay Relief is Warranted Under 362(d)(2) Because the Debtors' Abandonment of the UMB Inventory Estops Them From Contesting This Relief**

33.     Section 362(d)(2) of the Bankruptcy Code provides creditors relief from the automatic stay when (1) there is no equity in the collateral and (2) such collateral "is not necessary to an effective reorganization."  11 U.S.C. § 362(d)(2)(A)-(B). Although the Agent has the burden

to establish that Debtor lacks equity in the property, Debtor has the burden of proof on all other issues, 11 U.S.C. § 362(g), including the burden to show a "reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376, 108 S. Ct. 626, 633 (1988). To make such a showing, the Supreme Court has stated that:

> [w]hat this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means . . . that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*Id*. at 375-76 (emphasis in original). In *Timbers*, the Supreme Court established a two-part test, first determining if there has been a showing of a reasonable possibility of a successful reorganization, and second, whether that showing has come within a reasonable time. 484 U.S. at 375-76. "The definition of 'effective reorganization' articulated by the Supreme Court in *Timbers* necessarily implicates, to a degree, consideration of the plan confirmation standards under 11 U.S.C. § 1129." *In re 499 W. Warren St. Assocs.*, 151 B.R. 307, 310 (Bankr. N.D.N.Y. 1992); *accord In re Anderson Oaks Ltd. P'ship*, 77 B.R. 108, 111-13 (Bankr. W.D. Tex. 1987). Indeed, as one bankruptcy court has aptly stated:

> To be "effective," a plan must be confirmable. To be confirmable, specific requirements must be met. . . . As a result, in order to assess whether a debtor has met its burden under sections 362(d)(2) and 362(g), a bankruptcy court must weigh evidence presented against the standards imposed by section 1129 to determine whether the threshold requirements of that section can be met.

*Edgewater Walk Apartments v. MONY Life Ins. Co.*, 162 B.R. 490, 498 (N.D. Ill. 1993); *accord Mass. Mut. Life Ins. Co. v. Shady Grove Tech Ctr. Assocs. Ltd. Pshp. (In re Shady Grove Tech Ctr. Assocs. Ltd. Pshp.)*, 227 B.R. 422, 426 (Bankr. D. Md. 1998) (stating that "'[i]f the plan proposed cannot meet confirmation standards, it cannot form the basis for finding there to be a reasonable possibility of a successful reorganization.'"); *Resolution Tr. Corp. v. Swedeland Dev. Grp. (In re*

*Swedeland Dev. Grp.),* 16 F.3d 552, 567 (3d Cir. 1994) (stating that from the requirement that reorganization be in prospect, "[i]f no reorganization of the debtor is feasible, then no property of the debtor can be necessary for that end.").

34.      Here, Carnaby Holdings' current management has taken the position that the Global Assets SPEs' do not own the UMB Inventory, which (with a small amount of related cash collections) comprises the Global Assets SPEs' only assets. Carnaby Holdings' management is accordingly estopped from contesting stay relief on the contrary premise that there is equity in the Global Assets SPEs or they are necessary for Carnaby Holdings' reorganization.

35.      Accordingly, the Court should (i) grant the Agent relief from the automatic stay under section 362(d) of the Bankruptcy Code and (ii), to the extent that the Court grants relief from the stay, waive the fourteen-day stay provided by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

## STATEMENT PURSUANT TO LOCAL RULE 4001-1

36.      The Agent certifies that prior to filing this Motion, counsel for the Agent conferred, on November 20, 2025, with counsel for the Debtors to resolve the issues raised in this Motion, however an agreement could not be reached.

## NOTICE

37.      Notice of this Motion has been provided to (i) the Debtors and their counsel, (ii) the Official Committee of Unsecured Creditors and its counsel, (iii) any other parties that have claimed an interest in the UMB Collateral, (iv) all parties registered to receive electronic service, and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Agent submits such notice constitutes good and sufficient notice of this Motion, and that no other or further notice need be given.

## NO PRIOR REQUEST

38.     No prior request for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Agent respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit 1**, lifting the automatic stay of Section 362 of the Bankruptcy Code in the Carnaby Holdings bankruptcy case so that the Agent can foreclose on its pledge of the equity of the Global Assets SPEs' equity and granting the Agent such other and further relief as is just and equitable.

*[Remainder of page intentionally left blank]*

Dated: November 21, 2025

Respectfully submitted,

**ALSTON & BIRD LLP**

*/s/ Jared M. Slade*
Jared M. Slade (TX Bar No. 24060618)
2200 Ross Avenue
Dallas, TX 75201
T: (214) 922-3424
E: Jared.Slade@alston.com

*-and-*

Stephen M. Blank (admitted *pro hac vice*)
90 Park Avenue
New York, New York 10016
T: (212) 210-9400
E: Stephen.Blank@alston.com

*-and-*

Jacob Johnson (*pro hac vice* pending)
Christopher A. Riley (*pro hac vice* pending)
1201 West Peachtree Street
Atlanta, GA 30309
T: (404) 881-7000
E: Jacob.Johnson@alston.com
    Chris.Riley@alston.com
*Counsel for UMB Bank, N.A.*

**<u>EXHIBIT 1</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*,[1] | ) |
| | ) Case No. 25-90399 (CML) |
| Debtors. | ) |
| | ) (Jointly Administered) |

**ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

Upon the motion (the "Motion")[2] of UMB Bank, N.A., in its capacity as administrative agent for the UMB Lenders (as defined in the Motion) (the "Agent" and together with the UMB Lenders, the "UMB Parties") under a revolving credit facility to debtor Global Assets LLC ("Global Assets US") and debtor Global Assets GmbH ("Global Assets Germany," and together with Global Assets US, the "Global Assets SPEs") for entry of an order (this "Order") granting relief from the automatic stay in the Carnaby Capital Holdings, LLC ("Carnaby Holdings") bankruptcy case so that the Agent can foreclose on its pledge of the equity of the Global Assets SPEs, all as more fully set forth in the Motion; and the Court having considered the Weisheit Declaration and the supplemental Weisheit Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested in the Motion being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided under the

---

[1]  A complete list of the debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]  All terms referenced herein but not otherwise defined shall have the meanings ascribed to such terms as in the Motion.

1

circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and a hearing, if any, having been held to consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing, if any; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The automatic stay of Section 362 of the Bankruptcy Code is lifted in the Carnaby Holdings bankruptcy case so that the Agent can foreclose on its pledge of the equity of the Global Assets SPEs.

3.      Notwithstanding Bankruptcy Rule 4001(a)(3), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

4.      Agent is authorized to take all actions it deems necessary or appropriate to effectuate the relief granted in this Order.

5.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:_____, 2025
        Houston, Texas

                                                    _____
                                                    HONORABLE CHRISTOPHER M. LOPEZ
                                                    UNITED STATES BANKRUPTCY JUDGE

2

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on November 21, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*<u>s/ Jared M. Slade</u>*
Jared M. Slade
