**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| FIRST BRANDS GROUP, *et al.*, | : Case No. 25-90399 (CML) |
| | : |
| Debtors.[1] | : (Jointly Administered) |
| | : |
| | : |

**MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING,
AND, TO THE EXTENT NECESSARY MODIFYING THE
AUTOMATIC STAY TO ALLOW THE USE OF PROCEEDS OF
DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICIES
ISSUED TO NON-DEBTOR MAYFAIR ENTERPRISES, LLC FOR INSUREDS'
DEFENSE COSTS OR, IN THE ALTERNATIVE (II) CONFIRMING
THAT ADVANCEMENT OF DEFENSE COSTS AND PROVIDING
NOTICE IN ACCORDANCE WITH DIRECTORS AND OFFICERS
LIABILITY INSURANCE POLICIES DOES NOT VIOLATE THE AUTOMATIC STAY**

**This is a motion for relief from the automatic stay. If it is granted, the Movants may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving parties to settle. If you cannot settle, you must file a response and send a copy to the moving parties at least seven days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the Court (as defined below) may rule.**

**Represented parties should act through their attorney.**

**A hearing has been requested on this Motion. The Movants will provide notice of the hearing to all interested parties in advance of the hearing date.**

Patrick James, Edward James, Stephen Graham, and Michael Baker (collectively,

the "Movants") respectfully state as follows in support of this motion (this "Motion"):

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

**RELIEF REQUESTED**

1.      These Chapter 11 cases are in their infancy.  Nevertheless, an adversary proceeding has been commenced by the Debtors against Patrick James, and a number of investigations have been launched by the Debtors (through their appointed Special Committee), various creditors, government agencies and regulators, and/or third parties.

2.      To date, the Movants have received investigative requests, including from the Special Committee and the Official Committee of Unsecured Creditors, and the Court has appointed an examiner to conduct a separate investigation.  This activity has already required the Movants to obtain legal counsel and to begin incurring legal expenses, thereby triggering insurance coverage that provides for the advancement of legal costs to which the Movants are contractually entitled.

3.      Each Movant has retained counsel because they are facing their own unique circumstances.  While various of the Movants may not be aligned on some issues presented in this bankruptcy case, there is alignment regarding the Movants' collective right to insurance coverage procured by non-Debtor Mayfair Enterprises, LLC ("Mayfair").  Therefore, for purposes of filing this Motion, the Movants have conferred and have elected to proceed jointly in the interests of efficiency; however, each Movant otherwise reserves such Movant's individual rights and defenses.

4.      Prior to filing this Motion, the Movants endeavored to resolve a dispute with the Debtors regarding the Movants' entitlement to access insurance coverage, which is outlined in more detail below.  When an agreement was not reached, the Movants were compelled to file this Motion, and seek entry of an order, authorizing, and, to the extent necessary, modifying the automatic stay to allow, the Berkshire Hathaway Specialty Insurance Company (the "Primary Insurer") under Policy No. 47-EMC-310190-06 issued by the Primary Insurer to non-Debtor

2

Mayfair attached hereto as Exhibit A (the "ABC Policy") and any other insurance carrier of a directors and officers insurance policy listed on Exhibit C to the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Insurance Policies, Surety Bonds, and Letters of Credit and (B) Pay All Obligations With Respect Thereto, and (II) Granting Related Relief* [Docket No. 10] (such carriers collectively and as applicable, the "Side A Insurers," the corresponding policies, collectively and as applicable, the "Side A Policies" and, such policies together with the ABC Policy, the "D&O Policies") to make payments, including the advancement of "Defense Costs" as that term is defined in the ABC Policy to, or on behalf of, the Movants, in accordance with terms of the D&O Policies (collectively, the "Defense Costs").

5.	The Movants seek an order confirming that (i) the advancement of Defense Costs under the D&O Policies and (ii) the Movants' filing of a notice of claim with the Primary Insurer and Side A Insurers, as applicable, in each case, does not violate the automatic stay.  If the Court does find that the automatic stay applies to the D&O Policies, the Movants seek a Court order lifting the automatic stay allowing the Movants to receive the advancement of Defense Costs under the D&O Policies.

## JURISDICTION AND VENUE

6.	The United States Bankruptcy Court for the Southern District of Texas (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157, and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.	The bases for the relief requested herein are sections 105(a), 362, and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 4001-1 of the

Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and

the Procedures for Complex Cases in the Southern District of Texas.

## BACKGROUND

8.      On September 28, 2025, First Brands Group, LLC and its debtor affiliates

(the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The

Debtors continue to operate their business as a debtor-in-possession pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code.

9.      Mayfair is a non-Debtor entity that owns 100% of the equity of Debtor Viceroy

Private Capital LLC, directly or indirectly.

10.     The Movants are former directors and/or officers of the Debtors.  Movant Patrick

James is the founder, 100% indirect equity owner of the Debtors, and former Chief Executive

Officer and Manager of certain Debtors.  Movant Edward James is the former Executive Vice

President of certain Debtors.  Prior to his retirement, Movant Stephen Graham was the Chief

Financial Officer of First Brands as well as an officer of certain other Debtors.  Movant Michael

Baker is the former Chief Strategy Officer of Debtor First Brands Group, LLC and is also a former

director of certain other Debtors.

11.     As of the date of this Motion, some or all of the Movants have been (i) requested

to sit for interviews as part of the investigation of the Debtors' appointed Special Committee

consisting of independent directors, (ii) requested to sit for interviews and produce documents as

part of an investigation by the Official Committee of Unsecured Creditors; and/or (iii) notified

about ongoing government investigations (such investigations in clauses (i)–(iii), collectively,

the "Investigations").  In addition, Movant Patrick James has been named as a defendant in the

action captioned *First Brands Group, LLC, et al. v. Sealed Defendants, et al.*, Case No. 25-03803

(CML) (Bankr. S.D. Tex.), an adversary proceeding filed in connection with the bankruptcy cases

arising out of his service as an officer of First Brands (the "Litigation").  The Investigations and the Litigation have required, and will continue to require, the Movants to incur legal fees and related expenses.

12.     ***ABC Policy Terms.***   In the ordinary course of its business, Mayfair obtained directors and officers liability insurance policies to cover legal fees and related expenses.  The ABC Policy is the primary insurance policy for non-Debtor Mayfair, who is the named primary insured thereunder, with its subsidiaries, which includes the Debtors and certain non-Debtor affiliates of Mayfair, as beneficiaries thereunder.  Each of the Movants is an Insured Person under the ABC Policy.  Coverage under the ABC Policy is triggered when an "Insured Entity," defined to include Mayfair and its subsidiaries, "refuses or fails within sixty (60) days . . . to indemnify or advance covered Loss or . . . is unable to indemnify or advance covered Loss" upon the submission of a request for coverage by an "Insured Person," defined to include, *inter alia*, the directors, officers, and employees of an Insured Entity, for a claim, defined to include receiving written notice that an Insured Person is the "target of an investigation" or being served with a civil complaint.  *See* ABC Policy, at General Terms and Conditions for Liability Coverage Parts §§ II(2), V(B); Directors & Officers Liability Coverage Part § III(1), (6)–(7).[2]

13.     The ABC Policy is structured to include Side A, Side B, and Side C coverage. *See* ABC Policy, at Directors & Officers Liability Coverage Part § I.   The Side A (Non-Indemnified Loss) coverage, which applies only to Insured Persons, is triggered once an Insured Entity does not pay for or indemnify an Insured Person for a loss resulting from a claim. *Id.* § I(A).  The Side B (Insured Entity Indemnification) coverage reimburses an Insured Entity for

---

[2]   Certain of the Movants are incurring legal costs in connection with the Investigations, but as of the date of this Motion, are not subject to a "claim" as defined in the ABC Policy.  They are instead eligible for advancement of Defense Costs under the Side A Policy.  That said, those Movants still request relief with respect to both the Side A Policy and the ABC Policy, given that they could have a "claim" under the ABC Policy in the future.

any losses it incurs from indemnifying an Insured Person for claims made against that Insured Person.  *Id.* § I(B).  Side C (Insured Entity) coverage grants coverage to an Insured Entity for claims filed against that Insured Entity.  *Id.* § I(C).

14.     The Side A coverage is granted priority over the Side B and Side C coverage under the ABC Policy.  Specifically, the ABC Policy contains an "Order of Payments" provision, which states that if losses under the Side A coverage become due and payable at the same time as losses under the Side B coverage or Side C coverage, the Primary Insurer must first pay losses reimbursable under the Side A coverage.  *See* ABC Policy, at General Terms and Conditions for Liability Coverage Parts § XI.  The purpose of this priority provision is two-fold:  (i) it reflects the parties' understanding that the ABC Policy is primarily intended to provide coverage for directors and officers and (ii) it is intended to prevent a race between directors or officers, on the one hand, and the Insured Entities, on the other hand, for the finite pool of proceeds under the ABC Policy given that the coverage has shared limits.

15.     ***AIG Side A Policy.***  In addition to the ABC Policy, Mayfair obtained excess layers of directors' and officers' coverage with the Side A Policies, the first of which is attached hereto as Exhibit B (the "AIG Side A Policy").  The AIG Side A Policy, which was issued by National Union Fire Insurance Company of Pittsburgh, PA ("NUFICP"), provides coverage only to Insured Persons as defined in the ABC Policy.  AIG Side A Policy, at Side A Edge Amendatory Endorsement § II(1).  Coverage is triggered when a "Pre-Claim Inquiry" is made, which is defined to include a "request for an Insured Person of any Organization [] to appear at a meeting or interview . . . or [] produce documents, that, in any such case, concerns the business of that Organization or that Insured Person's insured capacities."  *Id.* at §§ II(1)(ii), XV.  In order to access the proceeds of the AIG Side A Policy, however, the Movants must first receive a denial of

coverage under the ABC Policy or receive no response for 60 days from the Primary Insurer after submitting a written request for coverage under the ABC Policy. *See id.* § II(1)(v), (x).

16.     On October 20, 2025, counsel to certain of the Movants notified counsel to the Debtors that they planned to file a notice of claim with the Primary Insurer, as that was a condition precedent to accessing coverage under the AIG Side A Policy.  In the same correspondence, counsel to certain of the Movants asked counsel to the Debtors to confirm if the Debtors would agree to indemnify certain of the Movants for any legal costs associated with the Investigations. A copy of this email exchange is attached hereto as Exhibit C.

17.     On October 24, 2025, counsel for certain of the Movants filed a notice of claim under the AIG Side A Policy to see if it was possible to seek coverage thereunder without noticing a claim with the Primary Insurer before accessing coverage under the AIG Side A Policy.  On October 29, 2025, AIG Claims, Inc., the authorized representative of NUFICP, requested a copy of the Primary Insurer's coverage analysis prior to evaluating its own coverage, which requires the Movants to file a notice of claim with the Primary Insurer.  A copy of this email exchange is attached hereto as Exhibit D.

18.     On October 29, 2025, counsel to the Debtors replied to the Movants' October 20, 2025, email indicating that the Debtors would not indemnify the Movants' legal costs.  Although counsel to the Debtors also initially took the position that the Movants could not file a notice of claim with the Primary Insurer without requesting relief to lift the automatic stay in that October 29 email, they amended that position on November 5, 2025 and explained that they do not object to the Movants noticing the Primary Insurer to obtain a coverage position but reserved any objection to the Movants accessing proceeds under the D&O Policies.  A copy of this email exchange is attached hereto as Exhibit E.

## THE RELIEF REQUESTED SHOULD BE GRANTED

**I.     RELIEF FROM THE AUTOMATIC STAY IS NOT NECESSARY BECAUSE THE INSURANCE PROCEEDS AT ISSUE ARE NOT PROPERTY OF THE ESTATE**

19.     The Defense Costs that the Movants seek to be advanced from the Primary Insurer or the Side A Insurers, as applicable, are not property of the Debtors' estates.

20.     It is well-established in the Fifth Circuit that "when a debtor corporation owns a liability policy that *exclusively* covers its directors and officers . . . the proceeds of that D&O policy are *not* part of the debtor's bankruptcy estate." *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 535 (5th Cir. 1995) (emphases in original) (citing *La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.)*, 832 F.2d 1391 (5th Cir. 1987)); *see also Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 56 (5th Cir. 1993) ("when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate").  "In essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection."  *See*, *e.g.*, *Adelphia Commc'ns Corp. v. Associated Elec. & Gas Ins. Servs., Ltd. (In re Adelphia Commc'ns Corp.)*, 285 B.R. 580, 593 (Bankr. S.D.N.Y. 2002), *vacated on other grounds*, 298 B.R. 49 (S.D.N.Y. 2003) (*quoting Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999), *aff'd in unreported opinion*, 2000 U.S. Dist. LEXIS 22005, (E.D.N.Y. Mar. 2, 2000)) (emphasis omitted).

21.     The "Order of Payments" provision of the ABC Policy, which prioritizes payment of the Side A coverage, render such policy the functional equivalent of exclusive coverage for Insured Persons.  Indeed, courts routinely hold that when a D&O insurance policy provides payment priority to individual insureds, proceeds of such policy are *not* part of the bankruptcy estate.  *See In re SVB Fin. Grp.*, 650 B.R. 790, 800 (Bankr. S.D.N.Y. 2023) ("Courts have routinely found that where such priority of payments provisions are present, the insureds are entitled to

access the proceeds, notwithstanding the fact that the debtor also has an interest in the proceeds of the policy."); *In re Downey Fin. Corp.*, 428 B.R. 595, 605–08 (Bankr. D. Del. 2010) (citing, *inter alia*, *In re Allied Digit. Techs. Corp.*, 306 B.R. 505, 508–13 (Bankr. D. Del. 2004)) (concluding that insurance proceeds were not part of a bankruptcy estate even when the applicable policy contained entity coverage, because the individual insureds had payment priority and because the likely need for indemnification coverage was low); *In re MF Glob. Holdings Ltd.*, 515 B.R. 193, 203–04 (Bankr. S.D.N.Y. 2014) (finding that proceeds of a D&O insurance policy were not estate property when individual insureds had payment priority under the terms of the policy).

22.     So too here.  By its terms, the Side A coverage covers *only* directors and officers and not the Debtors—and so it is beyond debate that the Side A Policies are not property of the Debtors' estates.  Similarly, by operation of the "Order of Payments" provision in the ABC Policy, the insurance proceeds related to the Side A coverage should not be considered property of the Debtors' estates and therefore stay relief should not be necessary to allow the insured individuals access to those insurance proceeds.  *See In re TierOne Corp.*, 2012 WL 4513554, at *3 (Bankr. D. Neb. Oct. 2, 2012) ("The directors and officers have a right to make claims under the policies and to receive payment of the policy proceeds to the exclusion of the bankruptcy estate since they are the insureds who are first in line."); *see also In re MF Glob. Holdings Ltd.*, 515 B.R. at 203 ("Even if [the debtors] had a contractual claim to the D&O Proceeds, that claim would be subject to the D&O Policies' priority of payment provision."); *Miller v. McDonald (In re World Health Alts., Inc.)*, 369 B.R. 805, 810–11 (Bankr. D. Del. 2007) (insurance proceeds not property of estate where the policy at issue provided for Side A coverage, contained a priority of payment provision and the debtor was entitled only to coverage for amounts it was required to indemnify, and no indemnification claims had yet been made).

9

23.     The fact that the Debtors are beneficiaries of the Side B and Side C coverages does not change the analysis.  Courts have held that where a debtor is also an insured under a D&O policy, but the debtor's potential claim against the policy is speculative or hypothetical, the proceeds of that D&O policy are not property of the estate.  *See*, *e.g.*, *In re Downey Fin. Corp.*, 428 B.R. at 607; *In re World Health Alts., Inc.*, 369 B.R. at 810 (courts "have found that insurance policy proceeds are not property of the estate where a debtor is covered for indemnification, but indemnification either has not occurred, is hypothetical, or speculative" (internal quotation marks omitted)); *In re Allied Digit. Techs.*, 306 B.R. at 512 ("[W]hen the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate.").  Here, the Debtors' need for coverage under the ABC Policy is hypothetical and speculative because any suits filed against the Debtors sufficient to trigger Side C coverage would be stayed under section 362 of the Bankruptcy Code, and the Debtors have declined to indemnify the Movants, eliminating their need for Side B coverage.  Further, "even if it is true that the Directors[] and Officers[] will deplete the policy, they are entitled to use the proceeds first." *In re SVB Fin. Grp.*, 650 B.R. at 800.

24.     Accordingly, the proceeds to which the Movants are entitled under the D&O Policies are not property of the estate and thus are not subject to the automatic stay.

## II.     EVEN IF CERTAIN INSURANCE PROCEEDS ARE PROPERTY OF THE ESTATE, CAUSE EXISTS TO MODIFY THE AUTOMATIC STAY

25.     Even if the Court determines certain proceeds of the ABC Policy constitute property of the estate, cause exists to modify the automatic stay to permit the payment of Defense Costs to the Movants under the D&O Policies.

26.     Under section 362 of the Bankruptcy Code, the Court shall grant relief from the automatic stay upon the request of a party in interest for "cause."[3]  11 U.S.C. § 362(d).  Because the failure to lift the automatic stay to permit an insured director or officer to access insurance proceeds for purposes of defense costs can cause substantial harm to those insured directors and officers, *see In re Allied Digit. Techs. Corp.*, 306 B.R. at 514, courts nationwide have found that sufficient "cause" to lift or modify the automatic stay in circumstances such as those present here. *See*, *e.g.*, *In re MF Glob. Holdings, Ltd.*, 469 B.R. 177, 192–93 (Bankr. S.D.N.Y. 2012) (lifting the automatic stay to permit insurer to advance defense costs to debtors' current and former directors, officers, and employees because such directors, officers, and employees would suffer "significant[] injur[y]" from paying their defense costs out-of-pocket); *In re CyberMedica, Inc.*, 280 B.R. 12, 18–19 (Bankr. D. Mass. 2002) (lifting automatic stay to permit directors and officers to access defense payments because directors and officers would suffer "irreparable harm" if prevented from exercising their rights to defense payments under the applicable insurance policy); *see also In re Laminate Kingdom, LLC*, 2008 WL 1766637, at *3–4 (Bankr. S.D. Fla. Mar. 13, 2008) (finding that the proceeds were not estate property but noting that, in the alternative, "numerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers – even though the insurance policies also provided direct coverage to debtor").

27.     Bankruptcy courts in this District are in accord.  *See*, *e.g.*, *In re Core Scientific, Inc.*, No. 22-90341 (DRJ) (Bankr. S.D. Tex. May 18, 2023) (Dkt. No. 900); *In re CBL & Assocs. Props., Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Dec. 21, 2020) (Dkt. No. 345).

---

[3]     Because "cause" is not defined in the Bankruptcy Code, courts must "consider whether cause exists on a case-by case basis."  *In re Northbelt, LLC*, 630 B.R. 228, 284 (Bankr. S.D. Tex. 2020) (citing *Reitnauer v. Tex. Exotic Feline Found., Inc. (In re Reitnauer)*, 152 F.3d 341 (5th Cir. 1998)).

28.     Here, the Movants will suffer irreparable harm and be deprived of the rights that they expected to have under the ABC Policy if the automatic stay is not lifted.  Therefore, even if the insurance proceeds at issue constitute property of the Debtors' estates, there is cause to modify the automatic stay to permit the advancement of the Defense Costs for the benefit of the Movants.

## III.    THE COURT SHOULD WAIVE ANY STAY PROVIDED FOR BY BANKRUPTCY RULE 4001(A)(4)

29.     The Movants request that the Court waive the 14-day stay of any order granting this Motion.  Bankruptcy Rule 4001(a)(4) states that "Unless the court orders otherwise, an order granting a motion for relief from the automatic stay . . . is stayed for 14 days after it is entered." FED. R. BANKR. P. 4001(a)(4).  The Movants respectfully request that the customary 14-day stay imposed by Bankruptcy Rule 4001(a)(4) be waived so that, should the relief requested herein be granted, the Movants may immediately take the necessary steps under the D&O Policies to access coverage.  Patrick James is a defendant in an adversary proceeding, and all the Movants are part of the Investigations.  As a result, the Movants' legal expenses are currently accruing.  The Movants thus deserve immediate certainty on the relief requested in this Motion, and the 14-day stay should accordingly be waived.

## RESERVATION OF RIGHTS

30.     The Movants reserve the right to supplement or amend this Motion at any time and for any reason and to assert any additional arguments or seek any additional relief at or prior to any hearing(s) on the Motion.  In addition, each Movant expressly reserves the right to be heard on the Motion.  Nothing contained in the Motion shall be deemed an admission by any Movant that such Movant shares a common interest with any other Movant.

## **NOTICE**

31.     Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and 4001 and any other party entitled to notice pursuant to Bankruptcy Local Rule 4001-1(a)(4).

## PRAYER

**WHEREFORE**, the Movants respectfully request that the Court enter the Order or, in the

alternative, an order granting the relief requested in this Motion and such other and further relief

as may be just and proper.

Respectfully submitted this 26th day of November, 2025.

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Cameron Kelly*
Cameron Kelly (SBN: 24120936)
700 Louisiana, Suite 3900
Houston, Texas 77002
Telephone: 713-221-7000
Email: cameronkelly@quinnemanuel.com

Michael B. Carlinsky (admitted *pro hac vice*)
James C. Tecce (admitted *pro hac vice*)
Scott Hartman (admitted *pro hac vice*)
Eric S. Kay (admitted *pro hac vice*)
Reece Pelley (admitted *pro hac vice*)
Grace Sullivan (admitted *pro hac vice*)
295 Fifth Avenue
New York, New York 10016
Telephone: 212-849-7000

**DEBEVOISE & PLIMPTON LLP**

By: */s/ Erica S. Weisgerber*
M. Natasha Labovitz (admitted *pro hac vice*)
Erica S. Weisgerber (admitted *pro hac vice*)
Matthew J. Sorensen (admitted *pro hac vice*)
Christopher R. Ceresa (admitted *pro hac vice*)
66 Hudson Boulevard
New York, New York 10001
Telephone: 212-909-6000
Email: nlabovitz@debevoise.com
Email: eweisgerber@debevoise.com
Email: mjsorensen@debevoise.com
Email: crceresa@debevoise.com

*Attorneys for Patrick James*

14

**KOBRE & KIM LLP**

By: */s/Daniel J. Saval*
Danielle L. Rose (pending *pro hac vice*)
Daniel J. Saval
800 Third Avenue
New York, New York 10022
Telephone: 212-488-1200
Email: danielle.rose@kobrekim.com
Email: daniel.saval@kobrekim.com

Adriana Riviere-Badell
201 S. Biscayne Blvd., Suite 1900
Miami, Florida 33131
Telephone: 305-967-6100
Email: adriana.riviere-badell@kobrekim.com

*Attorneys for Stephen Graham*

**BRACEWELL LLP**

By: */s/ David A. Shargel*
David A. Shargel (admitted *pro hac vice*)
Mark E. Dendinger (admitted *pro hac vice*)
31 West 52nd Street
New York, New York 10019
Telephone: 212-408-6100
Email: david.shargel@bracewell.com
Email: mark.dendinger@bracewell.com

*Attorneys for Edward James*

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC**

By: */s/ Robert J. Anello*
Robert J. Anello (admitted *pro hac vice*)
Telemachus P. Kasulis (admitted *pro hac vice*)
565 Fifth Avenue
New York, New York 10017
Telephone: 212-856-9600
Email: ranello@maglaw.com
Email: tkasulis@maglaw.com

*Attorneys for Michael Baker*

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel for the Debtors beginning on or around October 20, 2025.  Counsel has not consented to the requested relief.

/s/ Erica S. Weisgerber
Erica S. Weisgerber

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2025, I served a true and correct copy of the above and foregoing instrument via the Court's EM/ECF electronic system to all parties consenting to service through the same, and on all parties required by Local Rule 4001-1(a)(4).

/s/ Cameron Kelly
Cameron Kelley