**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**ORDER (I) ESTABLISHING THIRD-PARTY FACTORING PROCEDURES
FOR (A) THE REVIEW AND RECONCILIATION OF THE DEBTORS'
RECEIPTS, AND (B) THE RELEASE OF FUNDS TO THE DEBTORS' ESTATES
AND THE THIRD-PARTY FACTORS; (II) AUTHORIZING CUSTOMERS TO REMIT
RECEIVABLES WITHOUT LIABILITY; AND (III) GRANTING RELATED RELIEF**

Upon the motion, dated December 1, 2025 (the "**Motion**"),[2] of First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order, pursuant to sections 105(a), 362(a), 1107, and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2002-1 and 4001-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the Debtors request entry of an order (i) establishing procedures for the Debtors to complete an orderly, efficient, and fair reconciliation of all Collected Receipts, (ii) authorizing and providing comfort to Customers to remit receivables to the Debtors without risk of double payment liability, and (iii) authorizing the Debtors to use Collected Receipts that were not factored following notice to and an opportunity to

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

be heard by the Third-Party Factors, and (iv) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction and authority to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b); and consideration of the Motion, the *Declaration of Daniel Jerneycic in Support of Motion of Debtors for Order (I) Establishing Third-Party Factoring Procedures for (A) the Review and Reconciliation of the Debtors' Receipts, and (B) the Release of Funds to the Debtors' Estates and the Third-Party Factors; (II) Authorizing Customers to Remit Receivables Without Liability; and (III) Granting Related Relief* (the "**Jerneycic Declaration**"); and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and upon any hearing held on the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT

1.      The Motion is granted as set forth herein.

2.      The Third-Party Factoring Procedures are approved as follows:

    i.      In accordance with the Final Cash Management Order, all Collected Receipts shall be transferred by the Debtors to the Factored Receivables Account and shall remain in the Factored Receivables Account until released in accordance with these Third-Party Factoring Procedures.

2

ii. Notwithstanding the receipt of an Assignment Notice from one or more of the Third-Party Factors, the Debtors' Customers shall remit all prepetition amounts owed to the Debtors currently being held, (the "**Prepetition Customer Receipts**" and, together with the Collected Receipts, the "**Segregated Funds**") to the Debtors and, upon receipt, the Debtors shall transfer such funds to the Factored Receivables Account. Customers who remit Prepetition Customer Receipts to the Debtors in accordance with these procedures will not be liable for any claim from a Third-Party Factor as a result of such remittance and the Third-Party Factors will be prohibited from collecting or seeking to collect any amounts from the Customers on account of such Prepetition Customer Receipts.

iii. The Customers shall remit all amounts owed on account of receivables sold by the Debtors postpetition in the ordinary course (the "**Postpetition Customer Receipts**"), whether directly to the Debtors or in accordance with any Customer Factoring Program, and the Debtors shall provide reporting of the Postpetition Customer Receipts to Third-Party Factors upon reasonable request. For the avoidance of doubt, the Debtors shall not be required to segregate any Postpetition Customer Receipts.

iv. The Debtors' advisors shall process all Segregated Funds as follows (the "**Reconciliation and Mapping Process**"):

a) *First*, the Debtors' advisors shall utilize the Cash Application Procedures to match the Segregated Funds to a specific invoice number to determine each Mapped Invoice;

b) *Second*, the Debtors' advisors shall then compare the invoice number of each Mapped Invoice to the purchase records received from each of the Third-Party Factors;

c) *Third*, the Debtors' advisors shall compare each Mapped Invoice to the Debtors' system generated invoice records to produce comparison data (invoice number, supplier name, customer name);

d) *Fourth*, any Segregated Funds that the Debtors' advisors confirm matches both (a) the purchase records of the Third-Party Factors and (b) the comparison data of the Debtors' system generated invoice records shall be determined to be Factored Receivables, and conversely, any Segregated Funds that the Debtors confirm do not match both (a) the purchase records of the Third-Party Factors and

3

(b) the comparison data of the Debtors' system generated invoice records shall be determined to be Non-Factored Receivables;[3] and

e) *Fifth,* the Debtors' advisors shall determine whether any Factored Receivables were (a) purchased by one Third-Party Factor (the "**Single Claim Factored Receivables**"), or (b) purchased by more than one Third-Party Factor (the "**Multiple Claim Factored Receivables**").

v. Following the Reconciliation and Mapping Process, the Debtors shall serve a bi-weekly report setting forth the (i) invoice number, supplier name, customer name, and invoice amount of the Non-Factored Receivables, (ii) invoice number, supplier name, customer name, invoice amount of the Single Claim Factored Receivables, and the Third-Party Factor that purchased each Single Claim Factored Receivable, and (iii) invoice number, supplier name, customer name, invoice amount of the Multiple Claim Factored Receivables, and Third-Party Factors that have alleged competing claims to the Multiple Claim Factored Receivables (the "**Reconciliation Reports**"), on the following entities on a confidential basis (or their respective counsel, if known): (i) the Office of the U.S. Trustee; (ii) counsel to the Creditors' Committee, (iii) counsel to the DIP Secured Parties, (iv) counsel to each of the Third-Party Factors, and (v) Customers whose invoices are included in the Reconciliation Reports, *provided that* such Customers shall only receive information associated with their respective invoices (collectively, the "**Notice Parties**").

vi. Three (3) days prior to serving a Reconciliation Report on the Notice Parties, the Debtors shall provide a draft Reconciliation Report to Brown Rudnick LLP and M3 Advisory Partners, LP, advisors to the Creditors' Committee (the "**Committee Advisors**") and Gibson, Dunn & Crutcher LLP, Evercore Group L.L.C., and Huron Consulting Services LLC, advisors to the DIP Secured Parties (the "**Ad Hoc Group Advisors**"), on a confidential and professional eyes' only basis, and reasonably consult with the Committee Advisors and the Ad Hoc Group Advisors with respect to the draft Reconciliation Report.

vii. During each Notice Period (as defined herein), (a) the Debtors and the Third-Party Factors (and their respective advisors) shall reasonably consult and cooperate with each other regarding the applicable Reconciliation Report, and (b) upon reasonable request, the Debtors shall promptly provide to the Third-Party Factors information and documents relating to the applicable Reconciliation Report.

---

[3] For the avoidance of doubt, a Mapped Invoice shall be considered a Factored Receivable even if the only alteration to the invoice is the amount.

viii.   Each Notice Party shall have ten (10) days from the receipt of the applicable Reconciliation Report (the "**Notice Period**"), unless extended by agreement between the Debtors and the requesting Notice Party, to serve an objection on the Debtors (email to the Debtors' counsel being sufficient) to any particular receivable included in the Reconciliation Report (each an "**Objection**" and each party filing an Objection, an "**Objecting Party**").

ix.   Each Objection must (a) be in writing, (b) state with specificity the legal and factual grounds for such objection, and (c) provide documentation supporting the Objecting Party's legal interest in each such receivable contained in the Reconciliation Report that is subject to the Objection.

x.   If an Objection is timely and properly served, the Debtors and the Objecting Party shall meet and confer within seven (7) days of service of such Objection (the "**Meet and Confer Period**").

xi.   If an Objection is timely and properly served and not withdrawn or resolved prior to expiration of the Meet and Confer Period (an "**Unresolved Objection**"), the Debtors may file a notice scheduling a hearing for the Court to consider the Unresolved Objection on no less than ten (10) days' notice, subject to the Court's availability.  The Debtors and the Objecting Party may resolve the Unresolved Objection without further notice or Court approval in advance of the hearing.

xii.   If no Objection is timely and properly served within the Notice Period with respect to any particular receivable included in the Reconciliation Report (each an "**Undisputed Fund**"), the Debtors will be authorized, without further order of the Court, to release the Undisputed Fund from the Factored Receivables Account to the applicable Third-Party Factor or into the Debtors' operating accounts, as applicable.

xiii.   To the extent any particular Non-Factored Receivable listed on a Reconciliation Report remains subject to an Unresolved Objection, such receipts shall remain in the Factored Receivables Account pending further order of the Court or agreement amongst the Debtors and the Objecting Party.

xiv.   To the extent any particular Single Claim Factored Receivable listed on a Reconciliation Report remains subject to an Unresolved Objection, such receipts shall remain in the Factored Receivables Account pending further order of the Court or agreement amongst the Debtors, the Objecting Party, and the Third-Party Factor that was listed on the Reconciliation Report as the purchaser of the Single Claim Factored Receivable.

xv. Any Segregated Funds that are determined to be Multiple Claim Factored Receivables shall remain in the Factored Receivables Account pending further order of the Court or agreement amongst the Debtors and the applicable Third-Party Factors that purchased the Multiple Claim Factored Receivable.

xvi. The Debtors shall publish by filing on the docket and serve on the Notice Parties and all entities that have requested notice of the proceedings in these chapter 11 cases pursuant to Bankruptcy Rule 2002, a monthly notice setting forth the amount of Segregated Funds held, reconciled, and disbursed in the previous month.

3. For the avoidance of doubt, (i) nothing in this Order determines the nature of the rights of competing Third-Party Factors to the Factored Receivables, (ii) nothing in this Order shall be construed to expand or enlarge the rights afforded to the Debtors or to Customers under section 362 of the Bankruptcy Code, and (iii) any undisputed funds released into the Debtors' operating accounts pursuant to the Third-Party Factoring Procedures shall be deemed to be Collateral (as defined in the Final DIP Order).

4. Within seven (7) days of entry of this Order, any Third-Party Factor that sent an Assignment Notice to a Customer shall send that Customer a notice of withdrawal of the Assignment Notice (each a "**Withdrawal Notice**"), with this Order attached thereto.

5. Nothing in this Order determines the ultimate ownership of or interest in Factored Receivables nor limits or impairs any rights, claims, or defenses of Third-Party Factors against any party; *provided that* the Third-Party Factors are prohibited from collecting or seeking to collect any amounts from the Customers on account of Prepetition Customer Receipts.

6. Nothing in the Motion or this Order or any payment made pursuant to the authority granted by this Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors or any liens satisfied pursuant to this Order, (ii) an agreement or obligation to pay any claims, (iii) a waiver of any claims or causes of action that may

6

exist against any creditor or interest holder, (iv) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, (v) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (vi) a waiver of the obligation of any party in interest to file a proof of claim, or (vii) an approval, assumption, or rejection of any unexpired lease or executory contract under section 365 of the Bankruptcy Code.

7.      Notwithstanding anything to the contrary contained in the Motion or this Order, any payment made or to be made pursuant to the authority granted herein, and any authorization contained herein, shall be subject to and in accordance with the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 608] (the "Final DIP Order"), and any budget in connection with the Final DIP Order authorized therein (subject to any permitted variances). To the extent there is any inconsistency between the terms of the Final DIP Order and any action taken or proposed to be taken under this Order, the terms of the Final DIP Order shall control. Nothing in the Motion or this Order shall constitute a waiver or substitution of any consent right required under the Final DIP Order.

8.      Notwithstanding any Bankruptcy Rule to the contrary, this Order shall take effect immediately upon its entry.

9.      The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Order in accordance with the Motion.

10.     This Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated: _____, 2025
        Houston, Texas

                                        _____
                                        CHRISTOPHER LOPEZ
                                        UNITED STATES BANKRUPTCY JUDGE