IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| FIRST BRANDS GROUP, LLC, *et al.*, | : | Case No. 25-90399 (CML) |
| | : | |
| Debtors. | : | Jointly Administered |

**NIGEL CRIGHTON'S (I) MOTION FOR ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY TO THE EXTENT APPLICABLE TO ALLOW PAYMENT, REIMBURSEMENT, AND/OR ADVANCEMENT OF DEFENSE COSTS UNDER INSURANCE POLICIES AND (II) JOINDER TO MOTION OF CERTAIN FORMER OFFICERS AND DIRECTORS SEEKING SIMILAR RELIEF [ECF NO. 798]**

> **This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule. Represented parties should act through their attorney.**
>
> **There will be a hearing on this matter on December 30, 2025 at 10:00 a.m. (prevailing Central Time) in Courtroom 402, 4th Floor, Bab Casey United States Courthouse, 515 Rusk Avenue, Houston, Texas, 77002.**
>
> **If you object to the relief requested, you must appear at the hearing, or file a written response prior to the date that relief is requested in the preceding paragraph. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be**

> **asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting Platform. Connect via the free GoToMeeting platform or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez." Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Nigel Crighton, the Director of Finance for First Brands Group, LLC, one of the debtors and debtors in possession (collectively, the "Debtors") in these jointly administered cases, respectfully moves this Court pursuant to sections 105(a) and 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the applicable Bankruptcy Local Rules of this Court, including BLR 4001-1, for entry of an Order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") modifying the automatic stay to permit the D&O Insurers (defined below), to the extent necessary, to make payments, reimbursements, and/or advancements of defense costs under the D&O Policies (defined below) to or on behalf of Mr. Crighton in connection with Covered Claims (defined below). Mr. Crighton also hereby joins in the motion filed herein on November 26, 2025 [ECF No. 798] ("MRS 798") by certain former officers and/or directors of the Debtors (collectively, the "Other Movants") seeking the same or substantially similar relief. Mr. Crighton certifies he has conferred, through counsel, with Debtors' counsel and has been unable to reach an agreement on the requested relief, and respectfully further states as follows in support of this motion (this "Motion"):

**PRELIMINARY STATEMENT**

1. As Director of Finance, Mr. Crighton is an "Insured Person" under the D&O Policies. Like the Other Movants, Mr. Crighton has received investigatory requests to sit for interviews and produce documents, including from the Official Committee of Unsecured Creditors and regulatory and law enforcement agencies, on account of his role with the Debtors. And, as the Other Movants point out, this Court has authorized the appointment of an examiner to conduct a separate investigation. Citing their chapter 11 filings, the Debtors declined to advance such defense costs to Mr. Crighton and have moreover refused to date to consent to the relief requested herein. Mr. Crighton therefore needs to (and is entitled to) access certain directors and officers' liability insurance policies to fund his expenses and defense. The insurance policies at issue (collectively, the "D&O Policies") exist for this very purpose.

2. Mr. Crighton understands the Debtors have already provided proper notice of the pending claims to the insurers pursuant to the terms of the D&O Policies. Mr. Crighton has also provided timely notices of a claim or potential claim under the D&O Policies which relates back to the Debtors' notice (collectively, the "Claim Notices").

3. For the reasons set forth herein and in MRS 798, Mr. Crighton submits the proceeds of the D&O Policies implicated by this Motion are not property of the estate and are not subject to the automatic stay. Nonetheless, even if the stay does apply to any portion of those proceeds, ample justification exists for lifting the stay to permit Mr. Crighton to seek and obtain payment of his defense costs from the D&O Policies. Mr. Crighton would be significantly prejudiced if the stay is not lifted. The D&O Policies exist for the very purpose of funding Mr. Crighton's legal defenses, and any uncertainty concerning the availability of the policies' proceeds would severely hinder his ability to effectively respond to regulatory inquiries, likely causing serious and irreparable harm

3

to his interests. In contrast, the estate is not prejudiced because it does not have a present need for coverage and because Mr. Crighton's defense costs will not likely exhaust the policies implicated by this Motion. Indeed, the estate will benefit from Mr. Crighton's robust legal defense, particularly to the extent that any portion of the proceeds of the D&O Policies are property of the estate.

4. The primary purpose of D&O insurance is to protect a company's directors and officers and other insured persons and is in fact a significant part of the consideration paid them for their services. Such coverage is intended to enable such insured persons to defend themselves from third-party actions. Not permitting Mr. Crighton to access much-needed coverage at this time would undermine this purpose and severely prejudice Mr. Crighton's ability to set forth a fulsome defense to any claims against him, and runs contrary to the terms of his employment and effectively diminishes his compensation.

5. Like the Other Movants, Mr. Crighton therefore hereby seeks entry of an order, authorizing, and, to the extent necessary, modifying the automatic stay to allow, Berkshire Hathaway Specialty Insurance Company (the "Primary Insurer") under Policy No. 47-EMC-310190-06 issued by the Primary Insurer to non-Debtor Mayfair Enterprises, LLC, attached as Exhibit A (the "ABC Policy") to MRS 798[1], and any other insurance carrier of a directors and officers insurance policy listed on Exhibit C to the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Insurance Policies, Surety Bonds, and Letters of Credit and (B) Pay All Obligations With Respect Thereto, and (II) Granting Related*

---

[1] Copies of the relevant D&O Policies were filed with MRS 798. The Other Movants also filed a motion on November 28, 2025 authorizing them to file Exhibits A and B to MRS 798 under seal [ECF Doc. No. 800]. Mr. Crighton hereby joins that motion as well for the reasons articulated in that motion.

4

*Relief* [ECF Doc. No. 10] (such carriers collectively and as applicable, the "Side A Insurers," the corresponding policies, collectively and as applicable, the "Side A Policies" and, such policies together with the ABC Policy, the "D&O Policies"), to make payments, including the advancement of "Defense Costs" as that term is defined in the ABC Policy to, or on behalf of, the Movants, in accordance with terms of the D&O Policies (collectively, the "Defense Costs").

6.      In particular, Mr. Crighton seeks an order confirming that (i) his filing of a notice of claim or potential claim with the Primary Insurer and Side A Insurers, as applicable, in each case, and (ii) the advancement of Defense Costs under the D&O Policies does not violate the automatic stay. If the Court does find that the automatic stay applies to the D&O Policies, the Movants seek a Court order lifting the automatic stay allowing the Movants to receive the advancement of Defense Costs under the D&O Policies. For the reasons set forth herein, the Motion should be granted.

## BACKGROUND

### The Bankruptcy Case

7.      On September 24, 2025, Global Assets LLC and 12 of the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 case (the "Bankruptcy Case"). Commencing on September 28, 2025, First Brands Group, LLC and the remaining Debtors each filed with the Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are continuing in the management of their properties and the operation of their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed herein. The appointment of an examiner in these cases is, however, pending.

8. On October 9, 2025, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (Docket No. 313) (the "Creditors Committee").

9. The Debtors' cases are being jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b) and Local Bankruptcy Rule 1015-1.

## Jurisdiction, Venue and Bases for Relief

10. The United States Bankruptcy Court for the Southern District of Texas (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

11. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12. The bases for the relief requested herein are sections 105(a) and 362(d) of the Bankruptcy Code, Rule 4001 of the Bankruptcy Rules, and Rule 4001-1 of the Bankruptcy Local Rules.

## D&O Insurance Policies

13. In the ordinary course of their businesses, the Debtors and their non-debtor affiliates obtained directors and officers liability insurance policies to, *inter alia*, protect its directors and officers.

14. Mayfair is a non-Debtor that owns 100% of the equity of Debtor Viceroy Private Capital LLC, directly or indirectly.

15. The ABC Policy is the primary insurance policy for non-Debtor Mayfair, which, along with its subsidiaries, is the named primary insured thereunder , and includes the Debtors and certain non-Debtor affiliates of Mayfair as beneficiaries thereunder. Mr. Crighton is an Insured Person under the ABC Policy. Coverage under the ABC Policy is triggered when an "Insured

6

Entity," defined to include Mayfair and its subsidiaries, including Debtors, "refuses or fails within sixty (60) days ... to indemnify or advance covered Loss or . . . is unable to indemnify or advance covered Loss" upon the submission of a request for coverage by an "Insured Person," defined to include, *inter alia*, the directors, officers and others, including executives such as Mr. Crighton, of an Insured Entity such as Mr. Crighton, for a claim, defined to include, among other things, receiving written notice that an Insured Person is the "target of an investigation" or being served with a civil complaint. *See* ABC Policy, at General Terms and Conditions for Liability Coverage Parts §§ II(2), V(B); Directors & Officers Liability Coverage Part § III(1), (6)–(7).

16.     The ABC Policy is structured to include Side A, Side B, and Side C coverage. *See* ABC Policy, at Directors & Officers Liability Coverage Part § I. The Side A (Non-Indemnified Loss) coverage, which applies only to Insured Persons like Crighton, is triggered once an Insured Entity does not pay for or indemnify an Insured Person for a loss resulting from a claim, which includes a denial of advancement of defense costs. *Id.* § I(A). The Side B (Insured Entity Indemnification) coverage reimburses an Insured Entity for any losses it incurs from indemnifying an Insured Person for claims made against that Insured Person. *Id.* § I(B). Side C (Insured Entity) coverage grants coverage to an Insured Entity for claims filed against that Insured Entity. *Id.* § I(C).

17.     The Side A coverage is granted payment priority over the Side B and Side C coverage under the ABC Policy. Specifically, the ABC Policy contains an "Order of Payments" provision, which states that if losses under the Side A coverage become due and payable at the same time as losses under the Side B coverage or Side C coverage, the Primary Insurer must first pay losses reimbursable under the Side A coverage. *See* ABC Policy, at General Terms and Conditions for Liability Coverage Parts § XI. The purpose of this priority provision is two-fold:

7

(i) it reflects the parties' understanding that the ABC Policy is primarily intended to provide coverage for directors and officers and (ii) it is intended to prevent a race between directors or officers, on the one hand, and the Insured Entities, on the other hand, for the finite pool of proceeds under the ABC Policy given that the coverage has shared limits.

18. In addition to the ABC Policy, Mayfair obtained excess layers of directors' and officers' coverage through the Side A Policies, the first of which is attached hereto as **Exhibit B** (the "AIG Side A Policy") to MRS 798. The AIG Side A Policy, which was issued by National Union Fire Insurance Company of Pittsburgh, PA ("NUFICP"), provides coverage only to Insured Persons as defined in the ABC Policy. AIG Side A Policy, at Side A Edge Amendatory Endorsement § II(1). Coverage under the AIG Side A Policy is triggered when a "Pre-Claim Inquiry" is made, which is defined to include a "request for an Insured Person of any Organization [] to appear at a meeting or interview . . . or [] produce documents, that, in any such case, concerns the business of that Organization or that Insured Person's insured capacities." *Id.* at §§ II(1)(ii), XV. In order to access the proceeds of the AIG Side A Policy, however, the Movants must first receive a denial of coverage under the ABC Policy or receive no response for 60 days from the Primary Insurer after submitting a written request for coverage under the ABC Policy. *See Id.* § II(1)(v), (x).

## Mr. Crighton and the Covered Claims

19. As Director of Finance, Mr. Crighton is an Insured Person under the D&O Policies.

20. To date, the Debtors have commenced an adversary proceeding docketed with the Court as case number 25-03803 (the "AP") against Patrick James, the Debtors' founder, and 100 John Does, described as "persons yet to be identified, that on information and belief, … aided and abetted in various frauds committed by Defendants." AP ECF Doc. No. 17 ¶ 26 (stating further

that "Debtors will amend this Complaint to show the true names and capacities of John and Jane Doe(s) 1-100 when the same have been ascertained."). Further, this Court recently granted a request to appoint an examiner whose mandate is to, among other things, investigate the facts and circumstances, including general corporate practices, concerning certain of the Debtors' prepetition financial transactions. ECF Doc. No. 726. In addition, investigations by the U.S. Justice Department and regulatory bodies concerning the events leading to the commencement of these Bankruptcy Cases and the role of the Debtors' current and former executives and directors have been commenced (the "Investigations," and, together with any other claims, investigations, and causes of action, whether currently pending or brought in the future, to which Mr. Crighton is or may be entitled to coverage under the D&O Policies, for defense costs, any judgment or settlement, or otherwise, the "Covered Claims").

**Events Leading to this Motion**

21.     As an "Insured Person" during the Covered Period, Mr. Crighton is entitled to indemnification for, and advancement of, expenses—including attorneys' fees. The Debtors, however, have informed Mr. Crighton that, as debtors in chapter 11, Debtors cannot advance any defense costs to or on behalf of Mr. Crighton with respect to the Covered Claims. As a result, Mr. Crighton seeks payment directly from the D&O Policies to cover the expenses incurred in responding to the Covered Claims.

22.     Mr. Crighton, therefore, respectfully requests the Court enter an order modifying the automatic stay, to the extent necessary, to allow him to receive such payments and thus carry out the primary purpose of the D&O Policies.

**BASIS FOR THE RELIEF REQUESTED**

23. Absent coverage under the D&O Policies, Mr. Crighton will be substantially prejudiced in mounting an effective defense of the Covered Claims because of the uncertain status of the D&O Policies, undermining the very purpose of the D&O Policies. Accordingly, Mr. Crighton seeks entry of the Proposed Order to permit the D&O Insurers to make the payments required by the D&O Policies.

### Mr. Crighton is Entitled to Payment under the D&O Policies

24. In determining whether an insurance policy issued to a debtor is "property of the estate" under section 541 of the Bankruptcy Code, case law distinguishes between ownership of the *policy* and ownership of the *proceeds* of the policy (*i.e.*, the payments made by the insurer pursuant to the insurance policy). *See, e.g.*, *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012).

25. When analyzing whether, and the extent to which, insurance proceeds constitute estate property, courts have recognized that "[i]n essence and at its core, a D&O policy remains a safeguard of ***officer and director interests and not a vehicle for corporate protection***." *Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) (emphasis added); *see also In re MF Glob. Holdings Ltd.*, 469 B.R. at 192. Thus, the proceeds of a D&O policy are not property of the estate where the policy provides for payment only to a third party (such as a director or officer). *See, e.g.*, *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987) ("[T]he liability proceeds payable to the directors and officers are not part of the bankrupt's estate."); *Deangelis v. Corzine*, 151 F. Supp. 3d 356, 361 (S.D.N.Y. 2015) (insurance proceeds do not constitute estate property where such proceeds can only be accessed by directors and officers); *In re First Cent. Fin. Corp.*, 238 B.R. at 17-18 (bankruptcy estate had no interest in

the D&O policy's proceeds). Here, the Side A Policies are exclusively for the benefit of the directors and officers, and thus are not property of the Debtors' estates.

26. Certainly, it is well-established in the Fifth Circuit that "when a debtor corporation owns a liability policy that *exclusively* covers its directors and officers . . . the proceeds of that D&O policy are *not* part of the debtor's bankruptcy estate." *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 535 (5th Cir. 1995) (emphases in original) (citing *La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.)*, 832 F.2d 1391 (5th Cir. 1987)); *see also Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 56 (5th Cir. 1993) ("when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate"). See also *In re GWG Holdings Inc.*, Case No. 22-90032, 2024 WL 3418190, at *2 (Bankr. S.D. Tex. July 15, 2024) ("Although a debtor's liability insurance policies are generally property of the estate, '[t]he overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on the claim.' 'When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.'") (citing *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55-56 (5th Cir. 1993))

27. Moreover, even where a debtor is also an insured under a D&O policy, but the debtor's potential claim against the policy is speculative or hypothetical, courts hold that the proceeds of that D&O policy are not property of the estate. *See, e.g., In re Downey Fin. Corp.*, 428 B.R. 595, 607 (Bankr. D. Del. 2010); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 810 (Bankr. D. Del. 2007) (courts "have found that insurance policy proceeds are not property of the

estate where a debtor is covered for indemnification, but indemnification 'either has not occurred, is hypothetical, or speculative'"); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004) ("[W]hen the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate.").

28. In similar cases, where the directors and officers would suffer great harm absent relief, and the debtor would suffer no meaningful harm if relief were granted, courts in this district and elsewhere have lifted and/or modified the automatic stay to allow insurers to provide defense coverage to individual insureds such as Crighton. *See, e.g.*, *In re MF Glob. Holdings Ltd.*, 469 B.R. at 196; *Allied Digital*, 306 B.R. at 514; *In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411 (Bankr. D.S.C. 2011); *In re Laminate Kingdom, LLC*, Case No., 07010279, 2008 WL 1766637, at *4 (Bankr. S.D. Fla. Mar. 13, 2008) ("[N]umerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's officers and directors—even though the insurance policies also provided direct coverage to the debtor."); *see also In re Valeritas Holdings, Inc.*, Case No. 20-10290, ECF No. 578 (Bankr. D. Del. Nov. 22, 2022); *In re Garrett Motion Inc.*, Case No. 20-12212, ECF No. 1114 (Bankr. S.D.N.Y. (April 16, 2021); *In re Sears Holdings Corp.*, No. 18-23538, ECF No. 5382 (Bankr. S.D.N.Y. Oct. 16, 2019); *In re Relativity Fashion, LLC*, No. 18-11358, ECF No. 604 (Bankr. S.D.N.Y. Nov. 19, 2018); *In re Enron Corp.*, No. 01-16034, 2002 WL 1008240, at *1 (Bankr. S.D.N.Y. May 17, 2002). Indeed, one court has stated that "reasonable defense costs should be paid on behalf of the [i]ndividual [i]nsureds whether or not the policy proceeds are property of the estates." *In re MF Glob. Holdings Ltd.*, 469 B.R. at 187.

29. Here, the Debtors do not need access to Side B coverage because the Debtors have declined to indemnify Mr. Crighton. Regardless and importantly, the policies contain a Priority of Payment provision, which subordinates any of the Debtors' rights in the proceeds of the D&O Policies to those of the directors and officers. *See In re TierOne Corp.*, 2012 WL 4513554, at *3 (Bankr. D. Neb. Oct. 2, 2012) ("The directors and officers have a right to make claims under the policies and to receive payment of the policy proceeds to the exclusion of the bankruptcy estate since they are the insureds that are first in line."); *see also In re MF Glob. Holdings Ltd.*, 515 B.R. 193, 203-04 (Bankr. S.D.N.Y. 2014) ("Even if [debtors] had a contractual claim to the D&O Proceeds, that claim would be subject to the D&O Policies' priority of payment provision."); *In re World Health Alternatives, Inc.*, 369 B.R. at 810 (insurance proceeds not property of estate where the policy contained a priority of payment provision and the debtor was entitled only to coverage for amounts it was required to indemnify, and no indemnification claims had yet been made).

30. Accordingly, the proceeds to which Mr. Crighton is entitled under the D&O Policies are not property of the estate and under the binding precedent and overwhelming law in his favor cited above this Motion should be granted.

### Cause Exists to Grant Relief from the Automatic Stay

31. Even if the D&O Policies or their proceeds are estate property, which they are not under applicable law, cause exists to modify the automatic stay to permit the D&O Insurers to advance defense costs for the Covered Claims.

32. Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section … for cause." 11 U.S.C. § 362(d)(1). The term "cause" is not defined in section 362(D)(1). Rather, courts determine whether cause exists on a

case-by-case basis. *See, e.g., In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014). And, because the term "cause" is such an intentionally broad and flexible concept, multitudes of cases exist, all of which offer no precise standards to determine when cause exists to successfully obtain relief from the stay. *In re Holly's, Inc.*, 140 B.R. 643, 687 (Bankr. W.D. Mich. 1992); *accord Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997). Bankruptcy courts are therefore guided by "the particular circumstances of the case and . . . considerations that under the law make[s] for the ascertainment of what is just to the claimants, the debtor and the estate." *Foust v. Munson S.S. Lines*, 299 U.S. 77, 83 (1936). Procedurally, the party seeking stay relief bears the burden of proof on the issue of equity, and the party opposing stay relief bears the burden of proof on all other issues. *See* 11 U.S.C. § 362(g).

33. Here, the D&O Policies should operate within bankruptcy just as they would outside the bankruptcy context to allow Mr. Crighton access to the D&O Policy proceeds to which he is legally entitled. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Unless some federal interest requires a different result, there is no reason why [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). The Debtors' estates are bound by the D&O Policies, which expressly recognize Mr. Crighton as an Insured Person. Thus, the Debtors' estates do not have a greater interest in the D&O Policy proceeds than the Debtors did prior to the Petition Date. Allowing the automatic stay to prevent the payment, reimbursement, and/or the advancement of defense costs of Mr. Crighton would infringe on his interest in the D&O Policy and, in effect, grant the Debtors greater rights to the D&O Policies than the Debtors would have had outside the bankruptcy context. *See In re Downey Fin. Corp.*, 428 B.R 595, 608 (Bankr. D. Del. 2010) ("were the Court to hold that the Policy proceeds are property of the estate and, thus, subject to the automatic stay, the trustee would have

'greater rights in the [proceeds] than the debtor had before filing for bankruptcy.'" (citation omitted).

34. Accordingly, Mr. Crighton submits that cause exists to modify the automatic stay, to the extent applicable, to allow the D&O Insurers to make required payments, including advances for future defense costs and reimbursement for defense costs that have already been incurred, with respect to the Covered Claims.

### Permitting Payment, Reimbursement and/or Advancement of Defense Costs is an Appropriate Exercise of the Court's Powers

35. Finally, section 105 of the Bankruptcy Code authorizes this Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." For the reasons stated above, permitting the D&O Insurers to pay, reimburse and/or advance defense costs in accordance with and subject to the terms and conditions of the D&O Policies is an appropriate exercise of this Court's powers under these factual circumstances.

### NOTICE

36. Notice of this Motion has been provided to (i) the Debtors through their counsel, (ii) the Official Committee of Unsecured Creditors through its counsel, (iii) all parties registered to receive electronic service, and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002. Mr. Crighton submits such notice constitutes good and sufficient notice of this Motion, and that no other or further notice need be given.

### NO PRIOR REQUEST

37. No prior request for the relief sought herein has been made to this or any other court.

### CONCLUSION

WHEREFORE, for the foregoing reasons, Mr. Crighton respectfully requests that the Court

enter an order, substantially in the form attached hereto as Exhibit A, modifying the automatic stay of section 362 of the Bankruptcy Code, to the extent it applies, to permit the D&O Insurers to pay Mr. Crighton's defense costs on the Covered Claims and granting Mr. Crighton such other and further relief as is just and equitable.

Respectfully submitted,

LEVINSON LLP

/s/ Jeffrey M. Levinson
Jeffrey M. Levinson (OBR# 0046746)
(admitted *pro hac vice*)
3601 Green Road, Suite 200
Beachwood, Ohio 44122
Tel. (216) 514-4935
jml@jml-legal.com

and

FLANNERY | GEORGALIS, LLC

Christos N. Georgalis (OH 0079433)
(admitted *pro hac vice*)
Paul M. Flannery (OH 0091480)
(admitted *pro hac vice*)
1621 Euclid Avenue, Floor 20
Cleveland, Ohio 44115
Tel. (216) 466-0169
chris@flannerygeorgalis.com
paul@flannerygeorgalis.com

*Counsel for Nigel Crighton*

Dated: December 5, 2025

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed electronically this 5th day of December 2025. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jeffrey M. Levinson
Jeffrey M. Levinson
