**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al*.,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| **Debtors.[1]** | § | **(Jointly Administered)** |
| | § | |

**PRELIMINARY OBJECTION OF KATSUMI SERVICING, LLC**
**TO DEBTORS' FACTORING PROCEDURES MOTION**

Katsumi Servicing, LLC, in its capacity as buyer representative ("Katsumi") with respect to that certain receivables purchase facility (the "Receivables Facility") entered into with Debtor First Brands Group, LLC ("First Brands") and certain of its Debtor affiliates, hereby, on behalf of itself and the investors under the Receivables Facility, files this preliminary objection (this "Objection")[2] to the (i) *Motion of Debtors for Order (I) Establishing Third-Party Factoring Procedures for (A) the Review and Reconciliation of the Debtors' Receipts, and (B) the Release of Funds to the Debtors' Estates and the Third-Party Factors; (II) Authorizing Customers to Remit Receivables Without Liability; and (III) Granting Related Relief* [Dkt. No. 807], as supplemented by the *Supplement to Debtors' Factoring Procedures Motion and Request for Emergency Relief* [Dkt. No. 931] (the "Motion"),[3] and in support of this Objection, by and through its undersigned counsel, respectfully submits as follows:

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Katsumi is engaging with the Debtors and their advisors on topics related to the Motion and continues to await document production from the Debtors.  For these reasons, Katsumi expressly reserves the right to supplement this Objection in writing prior to any initial or continued hearing, to present additional arguments at or prior to any hearing, and to cross-examine any witness the Debtors may proffer. Katsumi further reserves all rights, including the right to challenge whether the Debtors have submitted sufficient evidence to support the relief requested in the Motion.

[3] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1755324478

## PRELIMINARY STATEMENT

1.       The Debtors' Motion seeks the establishment of Third-Party Factoring Procedures (the "Procedures") that would require the Court to make—in summary and expedited contested matters—sweeping determinations regarding the ownership of non-estate assets, the allocation of related funds, and the rights and remedies of multiple non-debtor third parties. Katsumi does not oppose a reasonable and fair process to facilitate the orderly reconciliation and release of Collected Receipts, but the Debtors' proposed Procedures exceed any semblance of what is objectively reasonable and fair.  Instead, the Motion impermissibly attempts to collapse a host of complex multi-party disputes into a novel and unprecedented procedural framework designed solely by the Debtors—without any meaningful input from or consent of the affected parties—to adjudicate matters that the Bankruptcy Code requires be done through an adversary proceeding.

2.       Indeed, it is telling that the proposed Procedures would require the Court to adjudicate at least three categories of disputes that controlling authority dictates can only be adjudicated by an adversary proceeding:

- *First*, the proposed Procedures request that this Court make ***determinations of the validity, priority, and extent*** of the Debtors' and Third-Party Factors' respective relative ***interests*** in Factored Receivables and Non-Factored Receivables (collectively, the "Receivables") and the proceeds thereof, which squarely falls within the confines of Bankruptcy Rules 7001(b) and 7001(i);

- *Second*, the proposed Procedures seek to compel Customers to remit all prepetition and postpetition amounts owed to the Debtors, while simultaneously enjoining Third-Party Factors from collecting from those Customers. That relief is on its face an ***injunctive*** remedy squarely within the confines of Bankruptcy Rule 7001(g); and

- *Third*, the proposed Procedures would require this Court to determine the ***priority of competing interests*** of Third-Party Factors in Multiple Claim Factored Receivables, thereby implicating not only Bankruptcy Rules 7001(b) and/or 7001(i), but also Bankruptcy Rule 7022 governing interpleader actions.

3.       These defects are not merely technical; rather, they contravene the plain text of the

2

Bankruptcy Rules and well-established law. The adversary-proceeding framework exists to ensure fair process before a bankruptcy court can issue final judgments that alter parties' substantive property rights.

## RELEVANT BACKGROUND

4.      Katsumi expressly incorporates by reference herein the summary description of the Receivables Facility set forth in Paragraphs 5 through 9 of its *Objection of Katsumi Servicing, LLC to Debtors' (I) DIP Motion and (II) Cash Management Motion* [Dkt. No. 456].

5.      In early October 2025, Katsumi and the other Third-Party Factors transmitted their invoice and purchase records to A&M.  Despite having contemporaneous access to the Debtors' system-generated books and records, the Debtors did not deliver an initial reconciliation of Collected Receipts for more than two and a half months.

6.      Since then, the Debtors' bi-weekly reporting under the Final Cash Management Order has consisted of spreadsheets derived from the Third-Party Factors' very own purchase records. Katsumi and the Debtors have met and conferred, and A&M hosted two group presentations to the Third-Party Factors regarding the reconciliation, yet the Debtors have not produced the Debtors' system-generated documents to substantiate their reconciliation nor any other documents requested by Katsumi in this matter.  And when pressed as to how the Debtors have validated the actual misconduct by the prepetition First Brands employees, the Debtors' professionals have offered no evidence or explanation, instead telling the Third-Party Factors that they will have to await the outcome of ongoing investigations, including of the newly-appointed examiner in these cases.  Without access to the discovery the Debtors have failed to produce, including system-generated invoices and the other supporting data requested, Katsumi and the

other Third-Party Factors have only one-half of the information necessary to match Receivables and receipts as part of the Reconciliation and Mapping Process.

7.     Compounding these issues, the Debtors now seek approval of altered Procedures on a compressed timeline, without offering this Court any evidence to satisfy the required showing for emergency relief.  At the same time, they have served the First Reconciliation Report before this Court has even ruled on the Motion, effectively placing Third-Party Factors on negative notice with respect to the adjudication of property interests in approximately 71,000 unique Receivables. The inequities are clear.  The Debtors' asserted need for cash does not allow them, nor justify their efforts, to run roughshod over Third-Party Factors' basic due process rights.

8.     Simply put, and contrary to the Debtors' assertions, the proposed Procedures reflect very little input from the Third-Party Factors.  For these reasons, Katsumi objects on a plenary basis to the First Reconciliation Report until any procedures are approved and implemented pursuant to a final order complying with the Bankruptcy Code and basic due process.

## **OBJECTION**

### I.     **The Motion is Procedurally Improper.**

9.     By the Motion, the Debtors request the establishment of Procedures that would require this Court to make final determinations on the Debtors' and Third-Party Factors' constitutionally protected property interests in the Receivables, and to fashion broad declaratory and injunctive relief as to rights and interests of the Debtors, the Third-Party Factors, and other third parties.  Given the breadth of the determinations sought,  the Bankruptcy Rules mandate that such relief be sought in an adversary proceeding.

10.     Bankruptcy Rule 7001 provides, in pertinent part:

An adversary proceeding is governed by the rules in this Part VII. The following are adversary proceedings:

4

(b) a proceeding to determine the validity, priority, or extent of a lien or *other interest in property*—except a proceeding under Rule 3012 or Rule 4003(d);…

(g) a proceeding to obtain an *injunction* or other equitable relief—except when the relief is provided in a Chapter 9, 11, 12, or 13 plan; [and]…

(i) a proceeding to obtain a *declaratory judgment* related to any proceeding described in (a)–(h)[.]

Bankruptcy Rule 7001 (emphasis added).

### A. Determinations of Property Interests and Other Comparable Merits Determinations Must be Made in an Adversary Proceeding.

11. In the context of Bankruptcy Rule 7001(b), courts interpret "validity," "priority," and "extent" according to their ordinary meanings: (i) validity addresses the existence or legitimacy of the property interest itself; (ii) priority addresses the interest's relationship to other claims to or interests in the property, and (iii) extent relates to the scope of the property encompassed by or subject to the lien or interest. *See, e.g., In re King*, 290 B.R. 641, 648 (Bankr. C.D. Ill. 2003). Here, the proposed Procedures would improperly require the Court to determine— in a contested matter, on shortened notice, and without any precedent or evidence that even purports to justify emergency or expedited relief—(a) the legitimacy of the Buyer's rights and interests in the Receivables, (b) how those rights and interests relate to the rights and interests of the Debtors and the other Third-Party Factors, and (c) the scope of the specific property to which Buyer's rights attached (or did not attach). *See* Revised Proposed Order, ¶¶ 2(xvi), 2(xvii), Exh. A to Supplement.

12. Additionally, the proposed Procedures would also require the Court to make determinations of ownership of Non-Factored Receivables, again on an emergency or expedited basis, and to enjoin the Third-Party Factors from exercising rights to collect their property. *See id.* ¶¶ 2(xv), 5 ("[The Third-Party Factors] are prohibited from collecting or seeking to collect any amounts from the Customers on account of Prepetition Customer Receipts.").

5

13.     Any of these determinations requires an adversary proceeding under Bankruptcy Rule 7001. *See Matter of Zale Corp.*, 62 F.3d 746, 763 (5th Cir. 1995) (holding that Rule 7001 matters cannot be folded into contested matter, and instead must be commenced as an adversary proceeding); *In re Mort Hall Acquisition, Inc.*, 181 B.R. 860, 864 (Bankr. S.D. Tex. 1994) ("[A] proceeding to determine the validity, priority, or extent of a lien or other interest in property must be brought in the form of an adversary proceeding."); *In re Tommy's Fort Worth, LLC*, 671 B.R. 712, 731-32 (Bankr. N.D. Tex. 2025) ("An adversary proceeding, on the other hand, is typically triggered by… request for the resolution of a dispute involving the validity, priority, and/or extent of a party's asserted lien or other interest in property"); *In re Mansaray-Ruffin*, 530 F.3d 230 (3d Cir. 2008) ("[W]hen an adversary proceeding is required under Rule 7001[b], courts are not free to disregard the Rule."); *In re Eastman Kodak Co.,* 2012 WL 2255719, *2 (Bankr. S.D.N.Y. June 15, 2012) (stating that Bankruptcy Rule 7001(b) "makes clear" that a proceeding "to determine an interest in property [or]…to obtain a declaratory judgment relating to a proceeding described in other subsections of Rule 7001 must be commenced as an adversary proceeding."); *In re Teligent, Inc.*, 459 B.R. 190, 195 (Bankr. S.D.N.Y. 2011) ("At the outset, the request for declaratory relief is improper. A party seeking a declaratory judgment must do so by commencing an adversary proceeding).

14.     Indeed, this Court has recently and emphatically reiterated on the record that when the requested relief requires a determination as to what is property of the estate or the priority and extent of interests in property, any such determination must be made in an adversary proceeding:

> So there's a way to streamline all of this, but I can't make a determination today about the priority extent and use of what is property of the Estate, because the Bankruptcy Code says that that's governed—that requires an adversary—an adversary proceeding. Right? The rules require an adversary proceeding to determine those issues, and I can't take them up in a main case. And if I'm going to follow the text, I've got to follow the text, and that's where we are.

6

Transcript of December 9, 2025 Hearing, at 21:7-15, *In re PosiGen, PBC, et al.*, No. 25-90787 (CML) (Bankr. S.D. Tex. Dec. 9, 2025).

**B.      The Proposed Procedures Seek to Short-Circuit Third-Party Factors' Due Process Rights.**

15.      Because the proposed Procedures seek to adjudicate property rights, due process requires the heightened procedural protections available only in an adversary proceeding. *See In re Mansaray-Ruffin*, 530 F.3d 230, 238 (3d Cir. 2008).  The Bankruptcy Rules are not mere formalities; they "are there for a reason": to define the specific process by which substantive property rights may be altered or extinguished. *Id*. at 236-37.  Courts therefore consistently hold that determinations regarding property interests and comparable merits adjudications cannot be resolved summarily through motion practice at the expense of due process. *See In re RGV Smiles by Rocky L. Salinas D.D.S. P.A.*, 626 B.R. 278, 291 (Bankr. S.D. Tex. 2021) ("This Court will not entertain a request for injunctive relief that rides in under the cover of darkness on the back of a contested matter where Rule 7001 requires an adversary proceeding."); *In re Eastman Kodak Co.*, 2012 WL 2255719, at *2 (Bankr. S.D.N.Y. June 15, 2012) (holding ownership disputes must be resolved in an adversary proceeding and noting that courts are "reluctant to allow parties' rights to property to be summarily determined as an adjunct to a bankruptcy motion" due to due process concerns); *In re Whitehall Jewelers Holdings, Inc.*, No. 08-11261 (KG), 2008 WL 2951974, at *6 (Bankr. D. Del. July 28, 2008) (requiring "strict application of [Bankruptcy] Rule 7001[b]" in circumstances where, as here, a debtor seeks to invalidate a creditor's interest).

16.      The Procedures disregard the procedural safeguards required by the Bankruptcy Rules and replace them with a cursory reporting-and-objection framework that, in practice, not only shifts the burdens of pleading and proof to non-debtors but also curtails discovery-driven fact development.  Those defects are exacerbated by the Debtors' substantial failures to produce documents and information requested by Third-Party Factors, depriving them of the factual record

7

required to test and respond to the Debtors' one-sided conclusions, even though the burden of proof belongs solely to the Debtors.

17.     Further, the Procedures' compressed timelines—including a 10-day Notice Period, a seven-day meet-and-confer deadline, and hearings on 10 days' notice for Unresolved Objections—may be adequate for routine cash-management items, but they are incompatible with adjudicating validity, priority, and extent issues across billions of dollars of disputed Receivables. These are merits determinations, not housekeeping issues, and they cannot be resolved as a contested matter. *Matter of Zale Corp.*, 62 F.3d 746, 762-63 (5th Cir. 1995) ("Contested matter proceedings are generally designed for the adjudication of simple issues, often on an expedited basis."). Proper resolution requires time and plenary discovery—or, at minimum, an exchange of basic information—which are privileges the Debtors have refused to extend to Third-Party Factors and are available only through application of the procedural, discovery, and evidence rules applicable to adversary proceedings.  The need for those safeguards is especially acute here, where allegations of fraud call into question the reliability of the very evidence on which the Debtors base their conclusions yet refuse to turn over to Third-Party Factors.  Forcing these disputes onto a summary calendar denies meaningful notice and basic due process.

**II.     The Bankruptcy Court Lacks Jurisdiction to Determine the Relative Priority of Interests in Multiple Claim Factored Receivables**.

18.     The proposed Procedures provide that Multiple Claim Factored Receivables will remain in the Factored Receivables Account pending either a further order of the Court or an agreement between the Debtors and applicable Third-Party Factors.  *See* Revised Proposed Order, ¶ 2(xvii).  That approach, however, has a fatal flaw: this Court lacks subject matter jurisdiction to determine priority disputes as between nondebtor Third-Party Factors over assets that are not property of the estate.

19.     Bankruptcy jurisdiction is limited to matters "arising under," "arising in," or "related to" cases under title 11, and "related to" jurisdiction exists only where the outcome could conceivably have an effect on the estate by altering the debtor's rights, liabilities, options, or freedom of action in a manner that impacts estate administration.  *See In re Reliant Expl. Ltd.*, 336 B.R. 286, 289 (Bankr. S.D. Tex. 2005).  It is, however, well-settled in the Fifth Circuit and elsewhere that third-party actions do not create "related to" jurisdiction where the asset at issue is not property of the estate.  *See, e.g., In re Austin Dev. Co.*, 19 F.3d 1077, 1084 (5th Cir. 1994) (holding that issue of third-party creditor's rights was not "related to" bankruptcy after third-party lease had been rejected and was not part of bankruptcy estate); *In re Dryden Advisory Grp., LLC*, 534 B.R. 612 (Bankr. M.D. Pa. 2015) (holding that a dispute between non-debtor parties as to priority of their interests in accounts receivable that debtor had sold prepetition, and that were not included in "property of the estate," was not one that bankruptcy court had even "related to" jurisdiction to hear."); *In re Bobroff*, 766 F.2d 797, 804 (3d Cir.1985); *In re Graziadei*, 32 F.3d 1408, 1410 (9th Cir.1994); *In re Edwards,* 962 F.2d 641, 643 (7th Cir.1992).

20.     That is the circumstance here:  Multiple Claim Factored Receivables are essentially disputes between two (or more) non-debtors and, notwithstanding the alleged double-pledging and double-selling that occurred post-sale, Multiple Claim Factored Receivables were structured as true sale transactions that applicable law dictates cannot be considered property of the estate.  *In re Doctor's Hosp. of Hyde Park. Inc.*, 507 B.R. 558 (Bankr. N.D. Ill. 2013) (describing "true sale" determination as a question of state law and observing that if transfer is a true sale, the assets should not be considered assets of the bankruptcy estate).  Nor can the Procedures manufacture jurisdiction by characterizing the proposed resolution of such third-party dispute as a settlement or compromise.  *See Matter of Zale Corp.*, 62 F.3d 746, 756 (5th Cir. 1995) (holding that parties

cannot "accomplish through settlement what they could not attain directly—that is, bankruptcy court jurisdiction over property.").

**III.     Assuming this Court Can Adjudicate these Issues in a Contested Matter, the Procedures Should Include More Concrete Protections for Third-Party Factors.**

21.     If the Court concludes it may adjudicate these issues in a contested matter, then—in addition to applying Rules 26(a)(1) and 26(f) of the Federal Rules of Civil Procedure (the "<u>Federal Rules</u>"), as incorporated by Bankruptcy Rule 7026—entry of the Procedures should be conditioned on the following due-process safeguards:

- *First*, concurrent with service of each Reconciliation Report, the Debtors should be required to serve Federal Rule 26(a)(1)-style disclosures on all Third-Party Factors.  Requiring initial disclosures, backed by meaningful sanctions for noncompliance, would ensure the Third-Party Factors have sufficient time to review the evidence.  See *In re High Standard Mfg. Co., Inc.*, 2017 WL 3701223, at *3 (Bankr. S.D. Tex. 2017) ("By requiring the parties to make initial disclosures, and providing a sanction for the failure to do so, the rules aim to prevent an ambush, resulting in surprise or prejudice, of undisclosed or late disclosed evidence").

- *Second*, the Court should dispense with Paragraph 2(vii) of the Procedures requiring the Debtors to deliver draft Reconciliation Reports to the Committee Advisors and Ad Hoc Group Advisors prior to service of the final version on Third-Party Factors.  Parties with no cognizable legal or equitable interest in the subject Receivables should not be entitled to receive the Debtors' reporting before those that do.  The Third-Party Factors are the only non-debtors with a property interest in the subject Receivables and they should receive equal, if not priority, information rights.

**RESERVATION OF RIGHTS**

22.     Katsumi hereby reserves all of its rights, claims, defenses, and remedies under the documents governing the Receivables Facility, the Bankruptcy Code and applicable non-bankruptcy law, including, without limitation, the right to amend, modify, or supplement this Objection, to review and object to any proposed form of order, and to raise additional objections during any hearings on the Motion.

[*Remainder of Page Intentionally Left Blank*]

11

WHEREFORE, for all the foregoing reasons, the Buyer Representative respectfully requests that this Court (i) deny the Motion, (ii) solely to the extent the Court concludes that the requested relief is appropriate for adjudication in a contested matter, modify the Procedures to the extent requested herein, and (iii) grant such other and further relief as the Court may deem necessary and proper.

Dated: December 20, 2025
Houston, Texas

/s/ Charles S. Kelley
**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, Texas 77002
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com

Sean T. Scott (admitted *pro hac vice*)
Kyle J. TumSuden (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Email: stscott@mayerbrown.com
         ktumsuden@mayerbrown.com

Richard A. Stieglitz (admitted *pro hac vice*)
Lauren C. Blanchard (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Email: rstieglitz@mayerbrown.com
         lblanchard@mayerbrown.com

*Counsel to Katsumi Servicing, LLC,*
*as Buyer Representative*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 20, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which automatically sends notification of such filing to all attorneys of record.

*/s/ Charles S. Kelley*
Charles S. Kelley

1755324478