UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FIRST BRANDS GROUP, LLC, *et al.* | ) | Case No. 25-90399 (CML) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. [1] | ) | |
| | ) | |
| | ) | |

**OBJECTION OF ING BELGIUM S.A./N.V. TO THE MOTION OF DEBTORS FOR ORDER (I) ESTABLISHING THIRD-PARTY FACTORING PROCEDURES FOR (A) THE REVIEW AND RECONCILLIATION OF THE DEBTORS' RECEIPTS, AND (B) THE RELEASE OF FUNDS TO THE DEBTORS' ESTATES AND THE THIRD-PARTY FACTORS; (II) AUTHORIZING CUSTOMERS TO REMIT RECEIVABLES WITHOUT LIABILITY; AND (III) GRANTING RELATED RELIEF**

ING Belgium S.A./N.V. ("ING Belgium"), by and through their undersigned counsel,

hereby respectfully submits this Objection (the "Objection") to the *Motion of Debtors for Order*

*(i) Establishing Third-Party Factoring Procedures for (a) the Review and Reconciliation of the*

*Debtors' Receipts, and (b) the Release of Funds to the Debtors' Estates and the Third-Party*

*Factors; (ii) Authorizing Customers to Remit Receivables Without Liability; and (iii) Granting*

*Related Relief* [ECF 807] (the "Motion"),[2] and respectfully states as follows:

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion (as supplemented [ECF 931]]) and the *Declaration of Daniel Jerneycic in Support of the Factoring Procedures Motion* [ECF 808] (as supplemented [ECF 996] the "Jerneycic Declaration"), as applicable.

**PRELIMINARY STATEMENT**

The Debtors' Motion rests on the premise that the Debtors can somehow reliably distinguish between factored and unfactored invoices (and related payments). At this point in time, that critical premise is not plausible. The Debtors' factoring program was part of a massive fraud, but the Debtors do not know the mechanics of that fraud. There is an ongoing investigation, but the Debtors candidly admit that they do not yet know how invoices were fabricated or what relation fabricated invoices bore to the actual invoices of the Company. The Motion also relies on the notion that the Company's invoicing records are reliable even though the data was obtained from their Vizion data system, a system which "scrapes" or amalgamates the records of perhaps twenty different account receivable-related electronic data processing systems (referred to as "EDP" systems) used across the globe by First Brands business units, EDP systems that have not been meaningfully tested and which themselves rely on determinations made by large (and also untested) teams operating in several locations outside of the US.  Knowing all of these facts, it is clear that the Debtors cannot reliably distinguish between factored and unfactored invoices.

The Debtors' Motion fails on a number of grounds, including the following:

***First,*** the Motion fails on procedural grounds as it seeks not only to impair property rights but also seeks to provide injunctive relief, each of which must be adjudicated by an adversary proceeding.

***Second***, the Motion modifies the burden of pleading and proof onto the party against whom relief is sought, in contradiction to the adversary proceeding process. Moreover, the Third-Party Factoring Procedures create artificial deadlines and processes that place an unfair burden on Third-Party Factors and are not consistent with due process rights.

***Third***, while ING Belgium's analysis is ongoing and subject to (among other things) further production of relevant materials by the Debtors (including the full Vizion dataset used in the reconciliation performed by the Debtors' advisors), it is clear based on an analysis of certain data provided by the Debtors to Third-Party Factors, that the Debtors' data at least contains inconsistencies (or worse) that must be examined prior to an adjudication of account receivable ownership.

***Fourth,*** *and finally,* the Motion seeks to discharge direct Customer obligations to ING Belgium and certain other Third-Party Factors where the Court has no jurisdiction or authority to do so, creating a non-consensual release by Third-Party Factors of their claims against such Customers.

## FACTUAL BACKGROUND

1.      ING Belgium, in its capacity as a Transferee, is party to a Master Receivables Transfer Agreement with KARS Funding, LLC, as transferor ("KARS"), and Katsumi Servicing, LLC, as transferor representative (collectively with KARS, "Katsumi").[3] In turn, Katsumi, as buyer, had entered into a Receivables Purchase Agreement with the Debtor, First Brands Group, LLC, and certain of its Debtor affiliates, as sellers.[4]

2.      Pursuant to the RPA, the Katsumi purchased all of the Debtor Sellers' rights, title and interest in the Purchased Receivables (as defined therein).[5] RPA §1(a). As set forth in the MRTA, the transaction was structured as a 'true sale' and the transfer and conveyance of the Purchased Receivables intended to be an absolute and irrevocable true sale. RPA §1(f)(i).

---

[3]     Master Receivables Transfer Agreement, dated May 6, 2025 (as amended from time to time, the "MRTA")

[4]     Receivables Purchase Agreement, dated as of May 27, 2022 (as amended from time to time, the "RPA"),

[5]     With respect to ING Belgium, the Purchased Receivables were sold by Brake Parts Inc LLC; Trico Products Corporation; Horizon Global Americas Inc.; FRAM Group Operations LLC; and Champion Laboratories, Inc. (the "Sellers").

Amounts received by the Debtor Sellers are to be held in trust for the benefit of Katsumi. RPA §4(c).

3.      Pursuant to the MRTA, ING Belgium purchased all of Katsumi's rights, title and interest with respect to, *inter alia*, (i) the Purchased Receivables (as defined therein), (ii) any collateral, security, payment obligation, guaranty or other contractual agreement provided by the account debtor or any of its affiliates in support of, or in relation to, such Purchased Receivables, (iii) the collections relating to such Purchased Receivables, (iv) any repurchase price received for such Purchased Receivables, (v) all of the Katsumi's rights under the RPA in respect of such Purchased Receivables including, without limitation, each undertaking agreement executed in connection therewith, and (vi) all related security, together with all proceeds with respect to the foregoing. MRTA §1(a).

4.      Pursuant to the terms of the RPA and MRTA, on September 26, 2025 (before the Petition Date for the Debtor Sellers), Katsumi informed Customers that Katsumi transferred, assigned and sold to ING Belgium the accounts receivable payable by such Customer identified in an annexed excel file. On that same date, following the Katsumi Assignment Notice, ING Belgium notified those same Customers by letter sent via email (with copies of such notice by Federal Express) to the Customers that, pursuant to the terms of the MRTA, Katsumi transferred, assigned and sold to ING Belgium the identified accounts receivable.

## **ARGUMENT**

5.      ING Belgium joins and incorporates the objection filed by Katsumi Servicing, LLC (the "Katsumi Objection") as well as the objections of the other Third-Party Factors to the extent applicable, including the objection of Leucadia Asset Management LLC (the "Leucadia Objection") and further states as follows:

A.       *The Appropriate Forum for the Relief Sought is an Adversary Proceeding*

6.       The Debtors' proposed procedures would have this Court, under the auspices of the Third-Party Factoring Procedures, (i) adjudicate the validity, priority and extent of property rights (including those of non-debtor third parties), (ii) grant injunctive relief (including with respect to rights as between non-debtor third parties), and (iii) make determinations as to the priority of competing interests as between non-debtor third parties. The appropriate procedure for these matters is an adversary proceeding, which ensures a fair and measured process. *See* Katsumi Objection Part I.A.; Leucadia Objection Part I.A.; Bankruptcy Rule 7001. While sympathetic to Debtors liquidity constraints, such issues are not a basis to deprive the Third-Party Factors of their due process rights. *See* Katsumi Objection Part I.A.; Leucadia Objection Part I.A. Accordingly, the Motion must fail on these grounds.[6]

B.       *The Third-Party Factoring Procedures are Inadequate and Fail to Protect Third-Party Factors' Due Process Rights*

7.       The Debtors' proposed process places the burden on the Third-Party Factors to disprove the Debtors' assertion that the receivables were not, in fact, sold prior to the Petition Date. Moreover, the Debtors have failed to provide sufficient information to address the concerns expressed by the Third-Party Factors with respect to methodology and appropriate vetting of the information upon which the Debtors rely. Given the scale of the fraud, ING Belgium is rightly concerned about the Debtors' systems and the accuracy of the information contained therein.

---

[6]   Third Party Factors (including ING Belgium) have requested certain additional information informally and have also sought discovery in connection with the Motion. Limited materials have been produced by the Debtors so far. Discovery on such a compressed time frame does not provide the protections that would otherwise be available in the context of an adversary proceeding.

8.      In summary, the Third-Party Factoring Procedures are not in accord with due process rights of the Third-Party Factors in that they inappropriately shift the burden to the Third-Party Factors while failing to provide the Factors with sufficient procedural safeguards (including sufficient time) in which to evaluate information, request additional details and (ultimately) if warranted, to object (especially in light of the pre-petition fraud which occurred here).[7] *See* Katsumi Objection Part I.B; Leucadia Objection Part I.B.

### C.      *There is No Basis to Grant Releases to Customers*

9.      ING Belgium (and the other Third-Party Factors) are purchasers of accounts from the Debtor Sellers in a "true sale" transaction. Upon delivery of the ING Assignment Notice to Customers on September 25, 2025, such Customers are only able to discharge their obligation by paying ING Belgium and may not discharge their obligation by paying the Debtor Sellers. *See* N.Y. U.C.C. § 9-406(a); Leucadia Objection Part II.[8]

10.      Rights under applicable law both form and define the rights that become assets of the Debtors' bankruptcy estate. The commencement of a case under chapter 11 vests a debtor with those rights but neither amplifies them nor affords them different or better status. To the extent that ING Belgium acquired Purchased Receivables, the Purchased Receivables and their proceeds are property of ING Belgium and ***not*** the Debtors' estate. *See* Leucadia Objection Part II. Accordingly, the Debtors have no basis upon which to require the Customers to disregard Assignment Notices and deliver payment to the Debtors. *Id*.

---

[7]      Of note, the Debtors' First Reconciliation Report provided over 1,200 pages of invoices totaling over 70,000 lines and over $100 million in invoices. The Debtors served this report on Friday evening, thus providing ING Belgium and the other Third-Party Factors only five (5) business days to review the information and raise objection.

[8]      As noted, the relief sought is also procedurally improper. Pursuant to Bankruptcy Rule 7001(g), such an injunction must be sought in the context of an adversary proceeding. *See* Katsumi Objection Part I.A.; Leucadia Objection Part II.

11.     Related thereto, the Debtors are asking this Court to impose what equates to a non-consensual release of claims which the Third-Party Factors who have delivered Assignment Notices (including ING Belgium) hold against the Debtors' Customers. In the wake of the Supreme Court's decision in *Purdue*, such non-debtor third party releases may not be granted without consent. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024); *see also* Leucadia Objection Part II.

## RESERVATION OF RIGHTS

12.     ING Belgium hereby reserves all of its rights, claims, defenses, and remedies under the RPA and MRTA, the Bankruptcy Code and applicable non-bankruptcy law (including, without limitation, for the reasons set forth herein, all of its rights to object to the First Reconciliation Report).

## CONCLUSION

WHEREAS, for the reasons set forth above and as further described in the Katsumi and Leucadia Objections as if stated herein, ING Belgium respectfully requests that this Court deny the Motion.

Dated: December 21, 2025

Respectfully submitted,

By: */s/ Douglas Deutsch*
Douglas E. Deutsch (admitted *pro hac vice*)
Anthony M. Candido (admitted *pro hac vice*)
Sarah N. Campbell (admitted *pro hac vice*)
Kaitlyn E. Beyer (admitted *pro hac vice*)

**CLIFFORD CHANCE US LLP**
Two Manhattan West
375 9th Avenue
New York, NY 10001-1696
Telephone: +1 (212) 878-8000
Facsimile: +1 (212) 878-8375

**NATHAN SOMMERS GIBSON DILLON PC**

By: */s/ Iain L. C. Kennedy*
Iain L. C. Kennedy
Texas Bar. No. 24068094
Federal ID No. 1066018
1400 Post Oak Boulevard, Suite 300
Houston, Texas 77056-6102
(713) 960-0303 (main)
(713)892-4800 (fax)
ikennedy@nathansommers.com

*Counsel to ING Belgium S.A./N.V.*