IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| FIRST BRANDS GROUP, *et al.*, | : | Case No. 25-90399 (CML) |
| Debtors.[1] | : | (Jointly Administered) |

**MOVANTS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING, AND, TO THE EXTENT NECESSARY MODIFYING THE
AUTOMATIC STAY TO ALLOW THE USE OF PROCEEDS OF DIRECTORS AND
OFFICERS LIABILITY INSURANCE POLICIES ISSUED TO NON-DEBTOR
MAYFAIR ENTERPRISES, LLC FOR INSUREDS' DEFENSE COSTS OR, IN THE
ALTERNATIVE (II) CONFIRMING THAT ADVANCEMENT OF DEFENSE COSTS
AND PROVIDING NOTICE IN ACCORDANCE WITH DIRECTORS AND OFFICERS
LIABILITY INSURANCE POLICIES DOES NOT VIOLATE THE AUTOMATIC STAY**

Edward James, Patrick James, and Stephen Graham (collectively, the "Movants") submit this reply (this "Reply") in further support of their Motion for Entry of An Order (I) Authorizing, and, to the Extent Necessary Modifying the Automatic Stay to Allow the Use of Proceeds of Directors and Officers Liability Insurance Policies Issued to Non-Debtor Mayfair Enterprises, LLC for Insureds' Defense Costs or, in the Alternative (II) Confirming that Advancement of Defense Costs and Providing Notice in Accordance with Directors and Officers Liability Insurance Policies Does Not Violate the Automatic Stay (the "Motion") [ECF No. 798][2] and in response to the objections of Katsumi Servicing LLC ("Katsumi") [ECF No. 1145] and the Official Committee

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion and the Revised Proposed Order (as defined herein).

of Unsecured Creditors ("UCC") [ECF No. 1149] (collectively, the "Objectors" and "Objections"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Movants have reached a consensual resolution of the Motion with the Debtors and the ad hoc group of DIP lenders ("Ad Hoc Group"). Under the terms of the agreed-upon proposed order, the ABC Insurers[3] and the Side A Insurers (collectively, the "Insurers") would be authorized to advance and/or make payments under the D&O Policies for Defense Costs to, or on behalf of, the Movants in accordance with terms of the D&O Policies, without further notice or relief of this Court, and the automatic stay set forth in section 362 of the Bankruptcy Code, to the extent applicable (if at all) would be hereby modified to permit the ABC Insurers and Side A Insurers to pay and/or advance Defense Costs consistent with their obligations under the D&O Policies. In exchange, although by no means required under the D&O Policies or otherwise, the Movants have agreed to provide counsel to the Debtors, Ad Hoc Group, and UCC with a summary of any invoice amounts for Defense Costs submitted to the Insurers as well as monthly updates on the amount of Defense Costs paid or advanced by the Insurers. *See* Proposed Order Modifying the Automatic Stay to Allow the Use of Proceeds of Directors and Officers Liability Insurance Policies Issued to Non-Debtor Mayfair Enterprises, LLC for Insureds' Defense Costs (the "Revised Proposed Order"), ECF No. 1150-1. The Debtors, Ad Hoc Group, and Movants worked diligently to reach this agreement in order to obviate the need for this Court to expend judicial

---

[3] The "ABC Insurers" as used herein includes Berkshire Hathaway Specialty Insurance Company (the "Primary Insurer") under Policy No. 47-EMC-310190-06 issued by the Primary Insurer to non-Debtor Mayfair Enterprises, LLC (the "ABC Policy") and any excess insurance carriers (the "Excess ABC Insurers").

2

resources adjudicating the Motion, in which the Movants simply seek to access Defense Costs to which they are contractually entitled under the D&O Policies.

2. Despite the concessions by the Movants and the resolution reflected in the Revised Proposed Order, Katsumi and the UCC have filed objections seeking to smear certain of the Movants in an effort to deprive Movants and all other current and former First Brands employees of their contractual rights under the D&O Policies, while simultaneously repeating the conclusory and unsupported allegations of wrongdoing that are the exact basis for claims for coverage under such policies. Notably, the UCC was included in the initial negotiations regarding the Revised Proposed Order. Instead of constructively continuing to engage in those discussions, true to its approach to these chapter 11 cases to date, the UCC determined to walk away from those discussions and further increase costs to the estate and the Movants by making an argument unsupported by even the UCC's own authorities.

3. The Objections are without merit. The proceeds of the D&O Policies are not property of the Debtors' estate—a fact that the Objectors appear to acknowledge as to at least the Side A Policies. Even assuming, however, that any portion of the proceeds of the D&O Policies were property of the estate and the stay applied, there is cause to lift the automatic stay because the Movants will suffer serious and imminent harm and be deprived of their rights under the D&O Policies if the stay is not lifted. The Objectors' repetition of allegations underlying the adversary proceeding and investigations and their gratuitous demand to impose still more conditions on the Movants' access to Defense Costs above and beyond those already agreed to in the Revised Proposed Order are unwarranted under the facts or the law. This Court should accordingly overrule the Objections and enter the Revised Proposed Order.

**ARGUMENT**

**I.      THE PROCEEDS OF THE D&O POLICIES ARE NOT PROPERTY OF THE ESTATE.**

4.      The Objectors do not argue that the proceeds of the Side A Policies, which provide coverage to the directors and officers but *not* the Debtors, are property of the estate. *See* Katsumi Objection ¶ 3 (arguing only that the D&O Policies that provide "coverage to both the Debtors and the Insured Persons" are property of the estate); UCC Objection ¶ 13 (similar); AIG Side A Policy, at Side A Edge Amendatory Endorsement § II(1) (providing coverage only to Insured Persons as defined in the ABC Policy). Accordingly, any argument that the Side A proceeds are property of the estate is forfeited. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021); *Satanic Temple Inc. v. Young*, 681 F. Supp. 3d 685, 693 (S.D. Tex. 2023). This is unsurprising because the firmly established law in this Circuit is that the proceeds of such a policy are not property of the estate subject to the automatic stay. *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 535 (5th Cir. 1995) (the proceeds of "a liability policy that *exclusively* covers [the debtor corporation's] directors and officers . . . are *not* part of the debtor's bankruptcy estate" (emphases in original)).

5.      The proceeds of the ABC Policy likewise are not property of the estate, and the Objections' countervailing arguments and purported authorities do not show otherwise.

6.      The UCC, for its part, argues that the ABC Policy itself is property of the estate. *See* UCC Objection ¶ 13. That argument is a red herring. As the Fifth Circuit has recognized repeatedly, whether or not the insurance policy itself is part of the estate is *not* determinative of whether the *proceeds* of that policy are property of the estate, which is what the Movants seek to access here. *See La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.)*, 832 F.2d 1391, 1399–1401 (5th Cir. 1987) ("The question is not who owns the policies, but who owns the liability proceeds," as there is a "distinction between owning a policy and owning the

4

proceeds."); *accord Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55–56 (5th Cir. 1993) (explaining that an insurance policy can be property of the estate, while the proceeds of that policy are not); *In re Mountain Express Oil Co.*, 2025 WL 3030303, at *8 (Bankr. S.D. Tex. Oct. 29, 2025) ("A debtor who owns an insurance policy does not necessarily have an interest in the proceeds of that policy."). As shown in the Motion, the *proceeds* of the ABC Policy are not property of the estate, including because the Side A coverage therein, like the Side A Policies, is intended solely for the benefit of Insured Persons and not the Debtors. *See* Motion ¶¶ 21–23.

7.  Katsumi's objection that the ABC Policy is a "wasting" policy that provides Side B and C coverage to the Debtors, *see* Katsumi Objection ¶ 3, ignores two critical facts.[4] First, the "Order of Payments" provision in the ABC Policy prioritizes payment of Side A coverage over Side B and C coverage. *See* ABC Policy, at General Terms and Conditions for Liability Coverage Parts § XI. In other words, the ABC Policy contemplates that its shared coverage limits could be exhausted by Side A losses alone and expressly provides that such losses must be covered first. Second, the Debtors' present entitlement to Side B and C coverage is either non-existent or hypothetical and speculative: The Debtors have declined to indemnify the Movants, eliminating their need for Side B coverage, and any suits filed against the Debtors sufficient to trigger Side C coverage would be stayed under section 362 of the Bankruptcy Code. Under those circumstances, courts have held that the proceeds of the insurance policy, *even if* it is a "wasting" policy, are *not* property of the estate. *See, e.g.*, *In re Downey Fin. Corp.*, 428 B.R. 595, 600–01, 605–08 (Bankr. D. Del. 2010) (concluding that insurance proceeds are not property of the estate even where the applicable policy provided entity coverage and was a "wasting" policy because the individual

---

[4] The case that Katsumi relies upon, *see* Katsumi Objection ¶ 2, is also wholly distinguishable because it involved a "limited circumstance[]," not present here, where already asserted tort claims against the debtor exceeded the policy limit and the value of the estate. *Martinez v. OGA Charters, LLC (In re OGA Charters LLC)*, 901 F.3d 599, 601–04 (5th Cir. 2018).

5

insureds had payment priority and the need for indemnification coverage was hypothetical and speculative); *In re TierOne Corp.*, 2012 WL 4513554, at *3 (Bankr. D. Neb. Oct. 2, 2012) (similar); *Miller v. McDonald (In re World Health Alts., Inc.)*, 369 B.R. 805, 810–11 (Bankr. D. Del. 2007) (similar).

        8.        Therefore, this Court should overrule the Objections solely on the ground that the proceeds of the D&O Policies to which Movants seek access are not property of the estate.

## II. EVEN IF CERTAIN PROCEEDS OF THE ABC POLICY ARE PROPERTY OF THE ESTATE, CAUSE EXISTS TO MODIFY THE AUTOMATIC STAY.

        9.        Even assuming arguendo that certain proceeds of the ABC Policy were property of the estate, the Court should still overrule the Objections because cause exists to modify the automatic stay to permit the advancement and/or payment of Defense Costs to the Movants. Motion ¶¶ 25–28. Movants will suffer imminent and substantial harm and be deprived of their rights under the D&O Policies if the stay is not lifted; the Objectors' arguments seeking to limit Movants' access to the proceeds fail.

        10.        First, Katsumi and the UCC urge that the stay should not be lifted because the Movants might deplete the ABC Policies to the detriment of the Debtors' estates and the potential recoveries of unsecured creditors on claims that have been asserted against Patrick James or that could be asserted against other Movants. Katsumi Objection ¶¶ 6–7; UCC Objection ¶ 15. That argument, however, is unavailing because "[e]ven if it is true that the [d]irectors[] and [o]fficers[] will deplete the policy, they are entitled to use the proceeds first" under the "Order of Payments" provision. *In re SVB Fin. Grp.*, 650 B.R. 790, 800 (Bankr. S.D.N.Y. 2023); *see also In re TierOne Corp.*, 2012 WL 4513554, at *3 ("The directors and officers have a right to make claims under the policies and to receive payment of the policy proceeds to the exclusion of the bankruptcy estate since they are the insureds who are first in line."). Furthermore, the speculative assumption that

6

the Debtors *might* recover on claims against Patrick James or as-yet unasserted claims against other Movants is not a proper basis upon which to limit the Movants' access to insurance proceeds. *See In re Allied Digital Tech. Corp.*, 306 B.R. 505, 512–13 (Bankr. D. Del. 2004) (rejecting the Trustees' argument that the directors' and officers' access to the insurance policies should be limited because it might affect the ability of the Debtors' estate, as a plaintiff, to recover under the policy); *In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411 (Bankr. D.S.C. 2011) (same). Indeed, here, the Debtors themselves, who have asserted claims against at least one of the Movants, have consented to the Revised Proposed Order, which permits the Movants to access policy proceeds to pay Defense Costs. *See* Revised Proposed Order ¶ 3. As the court in *In re Allied Digital Technologies* explained, and as is particularly apt here, where the UCC seeks wide-ranging discovery from the Movants:

> The bottom line is that the Trustee seeks to protect the amount he may receive in his suit against the directors and officers while limiting coverage for the defense costs of the directors and officers. This is not what the directors and officers bargained for. In bringing the action against the directors and officers, the Trustee knew that the proceeds could be depleted by legal fees and he took that chance. The law does not support the Trustee's request to regulate defense costs.

306 B.R. at 513.

11. Therefore, any potential "depletion" of the ABC Policies poses no impediment to this Court finding sufficient cause to lift the stay, particularly when the Movants will face imminent and substantial harm if denied access to Defense Costs to which they are contractually entitled; there are current investigations and at least one lawsuit pending for which the Movants require access to defense funds. *See In re SVB Fin. Grp.*, 650 B.R. at 799–800 (finding cause to lift the automatic stay based on the priority of payment provision and the imminent, substantial harm that the Movants would suffer if denied access to insurance proceeds); *In re Celsius Network LLC*, 652

7

B.R. 34, 43–45 (Bankr. S.D.N.Y. 2023) (similar); *In re MF Glob. Holdings, Ltd.*, 469 B.R. 177, 192–93 (Bankr. S.D.N.Y. 2012) (similar).

12. The UCC's free-wheeling equity arguments against lifting the stay fare no better. To start, the UCC does not cite a single case where a bankruptcy court has declined to lift the stay to permit directors and officers to access insurance proceeds based on equitable arguments like those in its Objection, and the cases it does cite arise in entirely different contexts.[5] That is for good reason: Courts have recognized that unproven allegations against directors and officers are not a valid basis to decline to lift the stay to permit access to insurance proceeds; instead, they are "precisely why such insurance exists." *In re SVB Fin. Grp.*, 650 B.R. at 801; *see also In re MF Glob. Holdings*, 469 B.R. at 194 ("[A]ccusations of misconduct provide no basis for denying the Individual Insureds insurance protection[.]"). If anything, the result the UCC seeks is the inequitable one: It hopes to recover money from claims against former directors and officers of the Debtors but deny those directors and officers insurance proceeds to cover the costs of defending themselves against such claims. Such a result is inequitable, illogical, and unsupported by any authorities.

13. Even if the Court were to indulge the UCC's baseless arguments, the UCC has offered *no* evidence that any of the Movants have engaged in wrongdoing. UCC Objection ¶¶ 2–3, 24–25. For instance, notwithstanding its assertion that the Debtors "assuredly will have

---

[5] *See, e.g.*, *Happy Hollow Ranch, LP v. Howley (In re Howley)*, 2024 WL 409126, at *1 (Bankr. N.D. Tex. Feb. 2, 2024) (adjudicating whether debts are nondischargeable under section 523 of the Bankruptcy Code); *Pepper v. Litton*, 308 U.S. 295, 296 (1939) (deciding whether the bankruptcy court had the equitable power to disallow or subordinate a claim); *Root v. Railway Co.*, 105 U.S. 189, 190 (1881) (determining whether a complaint alleging patent infringement claims was properly dismissed); *Liu v. SEC*, 591 U.S. 71, 74–75 (2020) (analyzing the scope of the SEC's power to seek disgorgement as an equitable remedy under 15 U.S.C. § 78u(d)(5)); *Elbar Invs., Inc. v. Okedokun (In re Okedokun)*, 593 B.R. 469, 545–53 (Bankr. S.D. Tex. 2018) (assessing the applicability of equitable subrogation), *aff'd in part, rev'd in part*, 968 F.3d 378 (5th Cir. 2020); *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241–45 (1933) (determining whether the doctrine of unclean hands provided a proper basis to dismiss patent infringement claims); *SA Bay LLC v. Hall*, 849 F. Supp. 2d 761, 772–74 (S.D. Tex. 2012) (denying a motion for leave to file an amended answer to assert, *inter alia*, an unclean hands defense).

enormous claims against many, if not all, of the Movants," *id.* ¶ 24, the UCC identifies no allegations of wrongdoing made against many of the Movants by any party. As the UCC knows full well, the entitlement of many of the Movants to proceeds under the D&O Policies arises from the simple fact that various parties, including the UCC, have sought information from them with respect to their roles at the Debtors. *See* Motion ¶ 11; Notice of the Office Committee of Unsecured Creditors' Bankruptcy Rule 2004 Requests For Production of Documents from and Oral Examination of Stephen Graham, ECF No. 994; Notice of the Official Committee of Unsecured Creditors' Bankruptcy Rule 2004 Requests for Production of Documents From and Oral Examination of Edward James, ECF No. 992. Instead, the UCC attempts to reverse the burden of proof, suggesting that the Movants must disprove the UCC's broad-brush allegations or wait until after the adversary proceeding has concluded to access the proceeds of the D&O Policies. UCC Objection ¶¶ 25–27. That is not the law, which places the burden of proof on the party bringing the underlying claims.[6]

14. The UCC's position—that the Movants must wait until after the adversary proceeding has concluded—is also contrary to the D&O Policies' express terms. *See* UCC Objection ¶ 27. Not only do the D&O Policies entitle the Movants to Defense Costs before claims are adjudicated on the merits,[7] but the Side A Policies explicitly provide that Defense Costs are

---

[6] *See PACCAR Fin. Corp. v. Dhaliwal (In re Dhaliwal)*, 630 B.R. 24, 28–29 (Bankr. S.D. Tex. 2021) (explaining that in an adversary proceeding, the party bringing the claim bears the burden of proof); *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56–57 (2005) (reaffirming "the ordinary default rule" that "plaintiffs bear the burden of persuasion regarding the essential aspects of their claims").

[7] *See* ABC Policy, at General Terms and Conditions for Liability Coverage Parts § V(B) (Coverage under the ABC Policy is triggered when an "Insured Entity refuses or fails within sixty (60) days after an Insured Person's request to indemnify or advance covered Loss or if an Insured Entity is unable to indemnify or advance covered Loss[.]"); *id.* § II(3) (defining "Defenses Costs" as the "part of Loss consisting of," *inter alia*, "reasonable fees, costs and expenses incurred in the defense or appeal of any Claim"); *id.* at Directors & Officers Liability Coverage Part § III(1) ("Claim" is defined to include receiving written notice that an Insured Person is the "target of an investigation" or being served with a civil complaint.); AIG Side A Policy, at Side A Edge Amendatory Endorsement § II(1) (Coverage is triggered when a "Pre-Claim Inquiry" is made); *id.* § XV ("Pre-Claim Inquiry" is defined to include a "request for an Insured Person of any Organization [] to appear at a meeting or interview

not subject to the so-called Conduct Exclusion, which otherwise would limit coverage in the event of "any deliberate criminal or deliberate fraudulent act," but even then only after "a final, non-appealable adjudication" of that conduct. AIG Side A Policy, at Side A Edge Amendatory Endorsement § X.

15. Moreover, to date, while there have not even been any specific allegations of misconduct made against the majority of the moving parties seeking to access the proceeds of the D&O Policies, investigations have been commenced by the UCC, the Debtors' special committee, and, soon enough, the Examiner. For all these reasons, the UCC's proposed "'wait and see' approach" is unworkable and should not preclude the Movants' entitlement to the D&O Policies. *See* UCC Objection ¶ 27.

16. And as to Patrick James, while the adversary proceeding remains pending, following the lengthy preliminary injunction hearing, the Debtors presented no evidence showing that Mr. James himself was manipulating invoices or personally directing anyone to do so or engage in other misconduct.[8]

17. The UCC's attempt to invoke the doctrine of unclean hands or other equitable doctrines also rings hollow, *see* UCC Objection ¶¶ 21–22, because no credible argument exists that allowing the Movants to access Defense Costs would constitute a profit stemming from any alleged misconduct or would cause the unsecured creditors any injury. *See Claimant ID 100235033 v. BP Expl. & Prod., Inc.*, 941 F.3d 801, 812 (5th Cir. 2019) ("The maxim of unclean hands is not applied where [the] misconduct is not directly related to the merits of the controversy

---

. . . or [] produce documents, that, in any such case, concerns the business of that Organization or that Insured Person's insured capacities[.]").

[8] Tr. Hr'g Den. Prelim. Inj., at 23:8–15, *First Brands Group, LLC, et al., v. Patrick James, et al.*, No. 25-03803 (CML) (Bankr. S.D. Tex. Nov. 12, 2025).

between the parties" or where the complaining party fails to show that it "has personally been injured by the [] [mis]conduct." (citation and quotation marks omitted)).

18. Accordingly, the Objections also should be overruled on the alternative ground that there is cause to modify the automatic stay to permit the Movants to access the policy proceeds to pay their Defense Costs.

### III. NO LEGAL OR CONTRACTUAL BASIS EXISTS TO IMPOSE CONDITIONS ON THE MOVANTS' ACCESS TO INSURANCE PROCEEDS.

19. Katsumi's further demand to impose still more conditions on the Movants' access to insurance proceeds is also without merit. Under the terms of the Revised Proposed Order, the Movants already have agreed to provide counsel to the Debtors, Ad Hoc Group, and UCC with summary invoice amounts for Defense Costs submitted to the Insurers as well as monthly updates on the amount of Defense Costs paid or advanced by the Insurers to the Movants. *See* Revised Proposed Order ¶¶ 6–7. The Movants agreed to this reporting obligation as a showing of good faith to resolve the Motion, *not* because any such reporting is required by the terms of the D&O Policies or applicable law. No further or broader reporting obligations are warranted; the relevant estate fiduciaries (the Debtors and UCC) already will be receiving such information. *See In re Venturelink Holdings, Inc.*, 299 B.R. 420, 423 (Bankr. N.D. Tex. 2003) ("[A] committee member owes a fiduciary duty to all creditors represented by the committee."); *In re Ford Steel LLC*, 629 B.R. 871, 889 (Bankr. S.D. Tex. 2021) (A debtor-in-possession "owe[s] fiduciary duties to the bankruptcy estate."). Katsumi's demand that it also be entitled to receive such information is nothing more than a gratuitous "me too," as Katsumi is neither an insured under the D&O Policies nor a fiduciary of the estate. *See* Katsumi Objection ¶ 8. Expanding the number of parties entitled to notice to encompass potentially every creditor in this bankruptcy case, as Katsumi requests,

does nothing to further any interest of the estate and merely encourages more unwarranted interference with the Movants' entitlement to Defense Costs.

20.     Similarly, no legal basis justifies imposing a cap on the insurance proceeds that the Movants can access under the D&O Policies given the ABC Policy's priority of payment provision and that the Debtors' entitlement to Side B coverage is nonexistent and entitlement to Side C coverage is wholly speculative. *See In re SVB Fin. Grp.*, 650 B.R. at 803 (declining to impose a soft cap on D&O expenses because "there is no legal basis" for doing so). The cases that Katsumi relies upon are distinguishable on those bases. In *In re Adelphia Communications Corp.*, the insurance policies at issue did not have a priority of payments provision, 285 B.R. 580, 586–87 (Bankr. S.D.N.Y. 2002), and the bankruptcy court's determination that the policy proceeds constituted property of the estate subject to the automatic stay was vacated on appeal, *see* 298 B.R. 49, 52–54 (S.D.N.Y. 2003). In *In re MF Global*, the directors and officers sought coverage under both a set of D&O policies that contained priority of payment provisions and an Error and Omissions policy that did not have one and provided coverage for substantial, nonspeculative claims that had been asserted against the estate. *See In re MF Glob. Holdings*, 469 B.R. at 182–86, 197 & n.18 (imposing cap when both D&O and E&O policies were involved); *In re SVB Fin. Grp.*, 650 B.R. at 802–03 (distinguishing *In re MF Global* in declining to impose a soft cap). Notably, the soft cap that initially was imposed in *In re MF Global* subsequently was eliminated altogether as to the D&O policies when the bankruptcy court later determined that their proceeds were not property of the estate, relying in part on the priority of payment provisions in such policies. *See In re MF Glob. Holdings, Ltd.*, 515 B.R. 193, 196, 207–08 (Bankr. S.D.N.Y. 2014) (lifting previously imposed soft cap on defense costs after deciding that the proceeds of the D&O policies were not property of the estate).

21. Nor should the Movants be required to submit to the jurisdiction of this Court.[9] The ABC Policy already provides for a dispute resolution process, which adequately ensures that the relevant parties will have a mechanism for addressing disputes regarding repayment of advanced Defense Costs from the Movants should that issue arise in the future. *See* ABC Policy, at General Terms and Conditions for Liability Coverage Parts § XV (requiring the Movants to mediate any disputes that they have with the ABC Insurers).[10] Requiring the Movants to submit to the jurisdiction of this Court, should such disputes materialize, would effectively rewrite the ABC Policy to impose a condition that no parties to or beneficiaries of the agreement bargained for, which is wholly improper. *Soaring Wind Energy, LLC v. Catic USA Inc.*, 946 F.3d 742, 756 (5th Cir. 2020) ("It is not the court's role to rewrite the contract between sophisticated market participants, allocating the risk of an agreement after the fact, to suit the court's sense of equity and fairness." (citation and quotation marks omitted)). Furthermore, unlike the case relied upon by Katsumi, none of the Movants here have entered limited appearances, rendering the risk that the Movants would later contest this Court's jurisdiction entirely speculative. *See In re Celsius Network LLC*, 652 B.R. at 47.

22. Finally, Katsumi has provided no explanation why the Insurers should be required to notify the Court when coverage is depleted, or an unspecified "threshold" is reached. Katsumi Objection ¶ 8. The D&O Policies contain no such provision and imposing one after the fact would improperly position "the bankruptcy court as the overseer of defense costs," when those proceeds

---

[9] Katsumi's suggestion that such relief is appropriate because "Patrick James is a Malaysian national" is disingenuous and offensive. Katsumi Objection ¶ 8. Patrick James is a U.S. citizen and the question of whether he might abscond was already the subject of a lengthy hearing at which the Debtors provided no evidence suggesting such.

[10] Katsumi's cited reason for the clawbacks does not even apply to the Side A Policies. As described above, under those policies, defense cost coverage applies even if there is a final adjudication of fraud. *See* AIG Side A Policy, at Side A Edge Amendatory Endorsement § X(i).

13

are not even property of the estate. *In re MF Glob. Holdings*, 515 B.R. at 207. As already noted, the Movants have agreed to provide the Debtors and UCC (as well as the Ad Hoc Group) with information regarding the disbursement of Defense Costs. In other words, relevant estate fiduciaries will already be receiving sufficient information to determine whether certain thresholds are reached. There is therefore no practical need for the Insurers to inform the Court regarding the amount of coverage remaining under the D&O Policies.

23. Accordingly, the Court should enter the Revised Proposed Order, without imposing the additional restrictions that Katsumi demands.

## NOTICE

24. Notice of this Reply will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and 4001 and any other party entitled to notice pursuant to Bankruptcy Local Rule 4001-1(a)(4).

## PRAYER

**WHEREFORE**, the Movants respectfully request that the Court enter the Revised Proposed Order and such other and further relief as may be just and proper.

Respectfully submitted this 6th day of January, 2026.

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Cameron Kelly*
Cameron Kelly (SBN: 24120936)
700 Louisiana, Suite 3900
Houston, Texas 77002
Telephone: 713-221-7000
Email: cameronkelly@quinnemanuel.com

Michael B. Carlinsky (admitted *pro hac vice*)
James C. Tecce (admitted *pro hac vice*)
Scott Hartman (admitted *pro hac vice*)
Eric S. Kay (admitted *pro hac vice*)
Reece Pelley (admitted *pro hac vice*)
Grace Sullivan (admitted *pro hac vice*)
295 Fifth Avenue
New York, New York 10016
Telephone: 212-849-7000

**DEBEVOISE & PLIMPTON LLP**

By: */s/ Erica S. Weisgerber*
Erica S. Weisgerber (admitted *pro hac vice*)
Matthew J. Sorensen (admitted *pro hac vice*)
66 Hudson Boulevard
New York, New York 10001
Telephone: 212-909-6000
Email: eweisgerber@debevoise.com
Email: mjsorensen@debevoise.com

*Attorneys for Patrick James*

**KOBRE & KIM LLP**

By: */s/ Daniel J. Saval*
Danielle L. Rose (admitted *pro hac vice*)
Daniel J. Saval
800 Third Avenue
New York, New York 10022
Telephone: 212-488-1200
Email: danielle.rose@kobrekim.com
Email: daniel.saval@kobrekim.com

Adriana Riviere-Badell
201 S. Biscayne Blvd., Suite 1900
Miami, Florida 33131
Telephone: 305-967-6100
Email: adriana.riviere-badell@kobrekim.com

*Attorneys for Stephen Graham*

**BRACEWELL LLP**

By: */s/ David A. Shargel*
David A. Shargel (admitted *pro hac vice*)
Mark E. Dendinger (admitted *pro hac vice*)
31 West 52nd Street
New York, New York 10019
Telephone: 212-408-6100
Email: david.shargel@bracewell.com
Email: mark.dendinger@bracewell.com

*Attorneys for Edward James*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2026, I served a true and correct copy of the above and foregoing document via the Court's EM/ECF electronic system to all parties consenting to service through the same, and on all parties required by Local Rule 4001-1(a)(4).

> */s/ Cameron Kelly*
> Cameron Kelly