**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FIRST BRANDS GROUP, LLC, *et al.*, | ) Case No. 25-90399 (CML) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

**EVOLUTION'S EMERGENCY MOTION FOR ADEQUATE PROTECTION**

> **Emergency relief has been requested. Relief is requested not later than February 13, 2026. If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Evolution Credit Partners ("Evolution")[2] hereby files this emergency motion (the "Motion") for adequate protection in accordance with the memorandum opinion and order of the U.S. District Court for the Southern District of Texas issued on January 31, 2026 ("District Court Order") in connection with the Debtors' Factoring Procedures Motion [Docket No. 807].[3] Evolution requests that the Court order the Debtors to provide Evolution with adequate protection for its $60.5 million dollar claim, along with interest and attorneys' fees and expenses, and respectfully states as follows:

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] "Evolution" means, collectively, Evolution Credit Opportunity Master Fund II-B, L.P., Evolution Credit Partners Trade Finance Master L.P. (as successor in interest to Evolution Credit Partners Trade Finance L.P.), Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution affiliated funds.

[3] *See Evolution Credit Partners v. First Brands Group, LLP et al.*, Civil Action No. H-26-73 [Docket No. 28] (Jan. 31, 2026 S.D. Tex.) (attached as Exhibit 1).

**PRELIMINARY STATEMENT**[4]

1. Evolution has a first-priority, validly perfected secured claim against certain of the Debtors' prepetition receivables. Evolution will prove the validity, priority, and extent of its lien in its pending adversary proceeding, in accordance with Federal Rule of Bankruptcy Procedure 7001(b). *See* Adv. Pro. No. 26-03006 (the "Adversary"). In the interim, as an oversecured creditor, Evolution has a statutorily guaranteed right to adequate protection, including for (1) the full amount of its claim against the Debtors ($60.5 million), and (2) fees and interest on that claim.

2. This Court previously assumed Evolution held a first-priority lien in $60.5 million of the Debtors' receivables but nevertheless authorized the Debtors to use cash collateral from the Factored Receivables Account—cash collateral that secured Evolution's claim. *See* Docket No. 1133 (the "December 31 Order"). On appeal of that Order, the District Court confirmed that as a result, "at the time Evolution appealed, its interest was not adequately protected," and that, "absent clear evidence or legal precedent that refutes [Evolution's] right to an asserted property interest, [Evolution] is entitled to adequate protection until an adversary proceeding determines the validity, extent, and priority of the asserted property interest." District Court Order at 8, 10. As Evolution has shown repeatedly, there is no "clear evidence or legal authority" that "refutes" Evolution's asserted property interest, so the issue must be determined in an adversary proceeding.

3. The District Court Order is clear: pending a final determination in the Adversary, Evolution is entitled to adequate protection for its claim, interest, and fees. Despite that Order, the Debtors have failed to provide any information on what is currently in the Factored Receivables

---

[4] Capitalized terms not otherwise defined have the meanings set forth in Docket No. 1032 (*Evolution's Objection and Reservation of Rights to Debtors' Motion for Order (I) Establishing Third-Party Factoring Procedures; (II) Authorizing Customers to Remit Receivables Without Liability, and (III) Granting Related Relief*) ("Initial Objection") (public version filed at Docket No. 1031).

Account, even though Evolution has repeatedly requested the same. Evolution respectfully requests that the Court enter an order compelling the Debtors to either set aside cash in escrow in an amount at least sufficient to cover Evolution's claim, plus fees and interest or, if that is impossible, to provide Evolution with the "indubitable equivalent" of that amount of cash.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.  The bases for the relief requested herein are Sections 361, 363, 506, and 105(a) of the Bankruptcy Code, as well as Rule 9013-1(i) of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas.

## FACTUAL BACKGROUND

**A.  Evolution Enters into a Factoring Agreement That Creates a Security Interest in Receivables**

6.  The Court is already familiar with the history between Evolution and the Debtors, as Evolution set out the basis for its first-priority security interest in its initial objection [Docket No. 1032] (the "Initial Objection") and again in its Adversary complaint [Adv. Pro. No. 26-03006, Docket No. 1]. Evolution will therefore only briefly summarize the prepetition relationship between the parties.

7.  On March 28, 2023, Evolution entered into its Factoring Agreement with the Receivables Sellers, pursuant to which Evolution purchased what the Receivable Sellers held out to be real receivables. *See* Docket Nos. 1032-1, 1032-2. In exchange, the Receivables Sellers made express representations, warranties, and covenants regarding the authenticity and validity of the receivables and the invoices underlying them. Docket No. 1032-1 § 2, Exhibit B-1. If any of

4899-0479-1693

the (i) representations and warranties were breached, (ii) covenants were not performed, or (iii) Eligibility Criteria were not met, then the Receivable Sellers were obligated to indemnify Evolution or repurchase the receivables at face value from Evolution and provide for attorney's fees and expenses. *Id.* §§ 5(b)(i)–(iii), 5(c), 5(g).

8. Pursuant to Section 5(g) of the Factoring Agreement, each of the receivables Sellers' "existing and future obligations hereunder, due or to become due"—including, but not limited to, their obligations to indemnify Evolution or repurchase the receivables—were secured by each Receivables Seller granting Evolution "a lien on and security interest in" "all of the Receivables now or hereafter owned or held by such Seller to the extent not sold and purchased" by Evolution. *Id.* § 5(g). Section 5(g) thereby protects Evolution from the Receivable Sellers' breaches of the Factoring Agreement by granting Evolution a security interest in ***all*** the Receivables Sellers' prepetition receivables that were not sold to Evolution.

9. Evolution filed UCC-1 financing statements on March 31, 2023, and April 3, 2023, perfecting Evolution's security interest in "[a]ny and all present and future Receivables transferred or purported to be transferred to the Secured Party pursuant to that certain Master Receivables Purchase Agreement [the Factoring Agreement] . . . dated as March 28, 2023" for each of the eight Receivables Sellers. *See* Docket No. 1032-3.

10. As of the Petition Date, the Receivable Sellers owed Evolution approximately $60.5 million on so-called receivables Evolution had purchased pursuant to the Factoring Agreement. *See* Exhibit 2 at 5 (Brief for Appellees). The Debtors have since claimed that ***all*** of the receivables Evolution purchased were fabricated. *Id.*

11. The Debtors' revelations about their factoring fraud shed light, for the first time, on the Receivable Sellers' breaches of the Factoring Agreement, including the representations,

4

warranties, and Eligibility Criteria. To take just one example of many breaches of the representations and warranties in the Factoring Agreement, the Receivables Sellers represented and warranted that the invoices underlying each Receivable were valid and authentic. Docket No. 1032-1 § 2; *see also id*. at Exhibits A-3, D. The Debtors now claim this was false.[5]

### B. Debtors Use Evolution's Cash Collateral Without Consent and Without Providing Adequate Protection

12. The Debtors have been collecting payments on prepetition receivables, including those generated by the Receivables Sellers, and segregating the cash into a Factored Receivables Account. On December 1, 2025, the Debtors filed a motion [Docket No. 807] (the "Factoring Procedures Motion") seeking authorization to implement procedures that would enable them to use tens of millions of dollars in the Factored Receivables Account. The Debtors supplemented their Factoring Procedures Motion on December 12 with a request for emergency relief [Docket No. 931], and followed up on December 21 with a proposed order [Docket No. 1082] identifying the specific funds the Debtors sought to release from the Factored Receivables Account—specifically, invoices which were never factored ("Category 1 Invoices" and "Category 2 Invoices").

13. Based on the second "Reconciliation Report" the Debtors sent Evolution on January 13, 2026, which purports to show the amount of cash in the Factored Receivables Account as of December 19, 2025, Evolution had a lien pursuant to Section 5(g) of its Factoring Agreement in $21.1 million of Category 1 receivables[6] and $9.6 million of Category 2 receivables, combining to $30.7 million. *See* Exhibit 3 (January 13, 2026 email from Joshua Winograd); Exhibit 10 (Second

---

[5] For a more complete, but inexhaustive, list of the Debtors' breaches of the Factoring Agreement, see paragraphs 10-12 of the Initial Objection.

[6] This number excludes $4.66 million of receivables generated by the Receivable Sellers through transactions with Walmart. The Debtors set aside these Walmart receivables for another factor.

4899-0479-1693

Reconciliation Report); Exhibit 11 (Second Reconciliation Report, filtered to show only amounts from those receivables generated by the Receivables Sellers). The Second Reconciliation Report's month-and-a-half old data is the most up-to-date record provided to Evolution of what the Debtors claim is in the Factored Receivables Account.

14. On December 19, 2025, Evolution filed its Initial Objection to the Factoring Procedures Motion, which set forth the bases for its first-priority perfected secured claim and asserted that the Debtors could not release Evolution's cash collateral without providing adequate protection. Initial Objection ¶¶ 6-14, 32-40, 53. Evolution explained that it had perfected its Section 5(g) security interest and that this security was carved out of the collateral pool under the ABL Credit Agreement and certain first- and second-lien and sidecar term loan agreements, as well as from the collateral secured by the DIP loans pursuant to the DIP Order. *Id.* ¶¶ 14-19, 39, 41-46.

15. On December 22, Evolution joined the objections of certain other factors, arguing that "Bankruptcy Rule 7001(b) requires that 'a proceeding to determine the validity, priority or extent of a lien or other interest in property' be an adversary proceeding" and that the Factoring Procedures Motion, if granted, would have run roughshod over Rule 7001(b). *See* Docket No. 1056.

16. The Debtors replied to Evolution's Initial Objection on December 22, 2025 [Docket No. 1054], shortly before the first hearing on the Factoring Procedures Motion on the same day. In their reply, the Debtors conceded the existence of Evolution's lien and only raised arguments regarding the validity and relative priority of Evolution's claim in the receivables. *Id.* at 5-20. The Debtors also claimed that "[a]s of the Petition Date, the Debtors held approximately $188 million of prepetition account receivables related to the Evolution Sellers, in the aggregate." *Id.* at 4.

17. The Court overruled Evolution's Initial Objection and permitted the Debtors to release up to $60 million in funds from the Factored Receivables Account. *See* December 31 Order. That release allowed the Debtors to draw $60 million out of the Factored Receivables Account, tens of millions of which were Evolution's cash collateral.

18. The Debtors claimed they ultimately withdrew $55 million from the Factored Receivables Account. Because Evolution only has an interest in receivables issued by certain Debtors—the Receivables Sellers—Evolution was ***not*** protected by the full amount of cash remaining in the Factored Receivables Account. Based on the stale data in the Second Reconciliation Report, Evolution had an interest in approximately $29.8 million of the cash remaining in the Factored Receivables Account after the release of funds. *See* Exhibit 11. Accordingly, Evolution went from being oversecured by the funds in the Factored Receivables Account to undersecured by those funds by $30.7 million. *See id*.

19. Evolution appealed the December 31 Order on January 5, 2026, asserting that the December 31 Order denied Evolution the adequate protection to which it is entitled under the Bankruptcy Code as an oversecured creditor. Docket No. 1158; Civil Action No. H-26-73 (S.D. Tex. Jan. 31, 2026) [Docket No. 2]. Days later, on January 9, 2026, Evolution initiated the Adversary, seeking a declaratory judgment establishing the validity, priority, and extent of its lien in the Receivables Sellers' prepetition receivables.

C. **District Court Finds That Evolution Was Not Adequately Protected and Remands for Further Proceedings on Adequate Protection**

20. The District Court Order was issued on January 31, 2026. Therein, the District Court determined that, "[a]t the time Evolution appealed, its interest was not adequately protected because the Factored Receivables Account did not include enough to cover Evolution's $60.5 million interest." District Court Order at 10.

4899-0479-1693

21. The District Court took note of the Debtors' representation that additional payments on receivables had come into the Factored Receivables Account since December 31, 2025, and in light of those "genuine factual disputes material to determining whether Evolution has adequate protection," remanded to this Court. *Id.* at 10. The District Court further held that this Court, "[i]n determining whether Evolution is adequately protected . . . may consider . . . the amount of funds remaining in the segregated account, the likelihood that additional funds may enter the account, as well as other potential sources of recovery for Evolution," and that this Court, if it finds that Evolution is adequately protected, "must state specifically what funds or other property . . . adequately protect Evolution." *Id.* at 11.

22. The District Court rejected the Debtors' argument that a bankruptcy court could "bypass the adequate-protection analysis (or to permit some hybrid, expected-value analysis) based on tentative doubts about whether an asserted security interest could otherwise be shown prima facie to be valid, without adhering to the specific rules and procedures for preliminary determinations." *Id.* at 7 n.1. The District Court also rejected the Debtors' proposed "[w]eighing [of] the likelihood of success on the merits of establishing a secured interest against the likelihood of success in showing that available cash collateral could adequately protect that interest." *Id.* at 7-8.

23. Instead, the District Court held that, if a debtor wishes to challenge the validity of the creditor's lien, Rule 7001 requires "that parties must challenge lien validity through an adversary proceeding, not an adequate-protection hearing," and otherwise, "absent clear evidence or legal precedent that refutes the claimant's right to an asserted property interest, the claimant is entitled to adequate protection until an adversary proceeding determines the validity, extent, and priority of the asserted property interest." *Id.* at 7-8.

8

24. Following entry of the District Court Order, Evolution and the Debtors attempted to resolve Evolution's adequate protection issues consensually. On February 5, 2026, however, the negotiations failed.

25. The most recent information Evolution has received about the funds in the Factored Receivables Account was provided by the Debtors on January 13, 2026. *See* Exhibit 3. The data in the Second Reconciliation Report is over a month and a half old, as it reflects the funds held in the Factored Receivables Account as of December 19, 2025. *See* Docket No. 1314 ¶ 6. Evolution requested an updated reconciliation report matching the receivables by the legal name of the seller, breaking out the balances in each category of receivable (Categories 1, 2, 2A, 2B, 3, and 4, according to the Debtors' own definitions) remaining in the account after the $55 million distribution, and updating the reconciliation report with data that is not stale by a month and a half. Exhibit 4 (February 2, 2026 email from Ella Epstein to Joshua Winograd). Evolution also served discovery requests for this information. Docket No. 1317.

26. As of this filing, the Debtors have not responded to those requests or produced information in connection with them.

## ARGUMENT

27. This Court has properly deferred a determination of the validity, priority, or extent of Evolution's security interest to the pending adversary proceeding. The District Court has now confirmed that Evolution is accordingly "entitled to adequate protection" pending the resolution of that proceeding. *See* District Court Order at 8-10.[7]

---

[7] The District Court also noted that bankruptcy courts may require a "prima facie" showing of a property interest, but that "absent clear evidence or legal precedent that refutes the claimant's right to an asserted property interest, the claimant is entitled to adequate protection until an adversary proceeding determines the validity, extent, and priority of the asserted property interest." *Id.* at 8-9. The Debtors have never challenged that Evolution has a "property interest" in the Receivable Sellers' unsold Receivables. Rather, the Debtors have challenged only the validity (*i.e.*

4899-0479-1693

28. The Debtors have "the burden of proof on the issue of adequate protection." 11 U.S.C. § 363(p)(1). Section 361 of the Bankruptcy Code recognizes three forms of adequate protection that may apply to the debtor's use of property in which a secured creditor has an interest: "[1] cash payments to the extent the collateral has declined in value, [2] extra collateral to compensate for such a decline, or [3] other relief 'as will result in the realization by [the secured party] of the indubitable equivalent of such entity's interest in such property.'" *Perez v. Peake*, 373 B.R. 468, 483 (S.D. Tex. 2007) (quoting 11 U.S.C. § 361). The third method is "a catch-all provision." *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1388 (5th Cir. 1986).

29. "[T]he standard of adequate protection to be afforded a creditor when its cash collateral is being used should be a high one." *First Bank of Miller v. Wieseler*, 45 B.R. 871, 876 (D.S.D. 1985). Adequate protection "must not be illusory and, particularly in the context of the use of cash collateral, must be of the most indubitable equivalence." *In re Goode*, 235 B.R. 584, 589 (Bankr. E.D. Tex. 1999) (internal quotation marks omitted). It is also "plain that 'adequate protection' must be completely compensatory." *In re Cage*, 357 B.R. 99, 101 (Bankr. S.D. Tex. 2004) (quoting *In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir. 1935) (Hand, J.)).

30. Evolution received nothing in exchange for the December 31 Order's release of tens of millions of dollars of its collateral. That is not adequate protection for the use of Evolution's collateral, and Evolution remains without adequate protection. With the release of $55 million from the Factored Receivable Account, Evolution was rendered undersecured by the

---

whether the Debtors may set aside the lien under Section 544(a) of the Code) and the priority of the interest. Even if those follow-on issues were relevant here (they are not), the Debtors have not put forward "clear evidence or legal precedent" that would "refute[]" Evolution's claim, and Evolution has detailed its validity and priority arguments repeatedly, including in its Initial Objection, its subsequent objections to the Factoring Procedures Motion and the Debtors' related motions, at multiple hearings, and on appeal, more than satisfying any *prima facie* burden. *See* Docket Nos. 1032, 1056, 1188; Exhibits 5 (December 22, 2025 Hearing Transcript), 6 (January 13, 2026 Hearing Transcript), 7 (Brief of Appellant), 8 (Reply Brief of Appellant). Evolution expressly incorporates those arguments by reference.

cash in the Account, as Evolution had, *at most*, a right to some subset of the funds in the Account, which funds are subject to further diminution in the event that another Third-Party Factor establishes a superior interest in one of the Receivables Sellers' receivables. Moreover, Evolution's collateral is still intermingled with the other funds in the Factoring Receivables Account. And while the Debtors have contended that the Factored Receivables Account now contains "over $67 million," the Debtors have not provided any information in response to Evolution's repeated requests for information about that account. *See* Exhibit 2 at 11. As a result, Evolution cannot ascertain whether it has a right to any of the new money, or whether that new money is all due to receivables actually factored to other Third-Party Factors (in which case, the other Third-Party Factors would assert claims to it).

31. The Debtors cannot evade their adequate protection obligations by claiming that Evolution is adequately protected because customers might pay receivables in the future into the Factored Receivables Account, for at least two reasons.

32. *First*, the extent of additional receivables that will be transferred into the Factored Receivables Account is far from certain. According to the Debtors themselves, "[d]espite countless requests and even demands, customers … simply were not willing to pay money that was owed to the company," which "has been a huge problem." *See* Docket No. 1807 (audio recording of January 29, 2026 hearing at 8:39-9:09 (Debtors' Counsel)). And it is not clear whether Evolution or another factor will have a superior right to the unspecified funds that may eventually be transferred to the Factored Receivables Account. As a party guaranteed adequate protection by statute, Evolution cannot be forced to bear the risk that additional cash may not come into the Factored Receivables Account. *See In re Geijsel*, 480 B.R. 238, 271 (Bankr. N.D. Tex. 2012) ("The Debtors' assurances that [a secured creditor] will be paid in full under the Plan and

that the Debtors will continue to honor their security agreements with [that creditor] regarding future cash are not an 'indubitable equivalent.'"); *id.* ("The Debtors have proposed no means of compensating Lone Star for Lone Star's potential loss of collateral (the cash) except for the prospect that the Plan will work-out in the end. A court cannot so ignore the rights of a secured creditor.").

33. *Second*, "[w]here there is a specific assignment of cash collateral given as security, a diversion of any portion of the cash to a party other than the secured party is clearly a diminution of the secured party's interests in the assignment of the cash portion of the security," so "the use of future cash to replace the expenditure of the prior months" does not "provide[] adequate protection for the secured party." *Id.* at 272 n.27 (cleaned up) (quoting *In re River Oaks Ltd. P'ship*, 166 B.R. 94, 99 (E.D. Mich. 1994)). Thus, even if additional funds do enter the Factored Receivables Account, any additional cash in which Evolution already has an interest is ***not*** adequate protection for the improper taking of Evolution's cash collateral.

34. Evolution is entitled to adequate protection for the use of its cash collateral. Because the Debtors have not carried their burden to show that Evolution is adequately protected, this Court should order the Debtors to segregate unencumbered cash (or the "indubitable equivalent" of unencumbered cash)—like the $55 million Debtors improperly used without providing Evolution adequate protection—exclusively for Evolution in the amount of Evolution's claim, plus the fees and interest to which it is entitled under the governing documents and law.[8]

---

[8] *See In re Pan Am. Gen. Hosp., LLC*, 385 B.R. 855, 862 (Bankr. W.D. Tex. 2008) (discussing "the statutory basis for an award of post-petition fees and costs to a creditor on account of its [over]secured claim"); *In re Bramham*, 38 B.R. 459, 464 (Bankr. D. Nev. 1984) ("Whenever an oversecured creditor's claim has been increased by operation of § 506(b) the total amount of the claim, including the increase, is entitled to adequate protection."); *In re Vest Assocs.*, 217 B.R. 696, 705 (Bankr.S.D.N.Y.1998) (permitting oversecured creditor to "allocate adequate protection payments to postpetition interest to the extent of its oversecurity"). Evolution is separately entitled to fees under Section 5(c) of the Factoring Agreement, which states that the Receivables Sellers will indemnify Evolution for, among other things, reasonable attorneys' fees arising from the Agreement. *See* Docket No. 1032-1 § 5(c).

This segregated account will ensure that Evolution's collateral is not commingled with collateral or property belonging to other claimants over which Evolution does assert a claim, that the Debtors cannot use Evolution's collateral, and that Evolution's collateral can be monitored. This remedy is especially necessary in light of the Debtors' prior breaches of the Court-ordered stipulation and order granting Evolution adequate protection in connection with its inventory facility in exchange for Evolution permitting the Debtors to use inventory collateralizing another of Evolution's loans. *See* Exhibit 9 (transcript of January 20, 2026 bench ruling finding that the Debtors had breached the *Stipulation and Agreed Order Regarding Adequate Protection Among Debtors and Evolution Credit Partners* [Docket No. 609]).

## **EMERGENCY CONSIDERATION**

35. Pursuant to Bankruptcy Local Rule 9013-1, Evolution respectfully requests emergency consideration of this Motion on or before February 13, 2026. Evolution has made repeated attempts to come to an agreement with the Debtors on adequate protection in light of the District Court Order which recognizes Evolution's right to adequate protection, to no avail.

36. The Debtors are clearly in severe financial distress. Evolution understands the situation is dire, but that is no excuse for denying a secured creditor its statutory right to adequate protection—indeed, the very *reason* for adequate protection is to ensure that a secured creditor is protected in the event a debtor runs out of cash. But the Debtors have thus far left Evolution in the lurch. If the Debtors are allowed to continue their financial tailspin without granting Evolution adequate protection at least until the resolution of its adversary proceeding, Evolution risks being completely wiped out, despite its status as a first-priority secured creditor. Evolution thus requires emergency relief.

13

4899-0479-1693

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, Evolution respectfully requests that the Court enter an order (a) requiring the Debtors to set aside $60.5 million in unencumbered cash (for example, the Category 1 and Category 2 invoices to which no factor has asserted a claim) exclusively for Evolution to provide adequate protection for Evolution's $60.5 million first priority secured claim, plus the interest and fees which Evolution is entitled, or granting the indubitable equivalent of unencumbered cash; and (b) granting such other and further relief as is just and proper.

[*Remainder of page intentionally left blank*]

Respectfully submitted this 9th day of February 2026.

        **GRAY REED**

        By: */s/ Jason S. Brookner*
            Jason S. Brookner
            Texas Bar No. 24033684
        1300 Post Oak Blvd., Suite 2000
        Houston, Texas 77056
        Telephone:  (713) 986-7000
        Facsimile:  (713) 986-7100
        Email:       jbrookner@grayreed.com

- and -

        **ELSBERG BAKER & MARURI PLLC**
            David Elsberg (admitted *pro hac vice*)
            Michael Duke (admitted *pro hac vice*)
            Vivek Tata (admitted *pro hac vice*)
            Garrett Gerber (admitted *pro hac vice*)
            Andrew Parks (admitted *pro hac vice*)
            Ella Epstein (admitted *pro hac vice*)
        350 Fifth Avenue, 38th Fl.
        New York, NY 10118
        Telephone:  (212) 597-2600
        Email:       delsberg@elsberglaw.com
                    mduke@elbserglaw.com
                    vtata@elsberglaw.com
                    ggerber@elsberglaw.com
                    aparks@elsberglaw.com
                    eepstein@elsberglaw.com

- and -

        **PROSKAUER ROSE LLP**
            Vincent Indelicato (admitted *pro hac vice*)
            Matthew R. Koch (admitted *pro hac vice*)
        Eleven Times Square
        New York, NY 10036-8299
        Telephone:  (212) 969-3000
        Email:       vindelicato@proskauer.com
                    mkoch@proskauer.com

- and -

        Charles A. Dale (admitted *pro hac vice*)
        One International Plaza
        Boston, MA 02110-2600
        Telephone:  (617) 526-9600
        Email:    cdale@proskauer.com

*Counsel to Evolution*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on the 9th day of February 2026, he caused a true and correct copy of the foregoing document by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

        */s/ Jason S. Brookner*
        Jason S. Brookner

16

4899-0479-1693