**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | ) ) | **Chapter 11** |
| **FIRST BRANDS GROUP, LLC,** *et al.,* [1] | ) ) ) | **Case No. 25-90399 (CML)** |
| **Debtors.** | ) ) ) | **(Jointly Administered)** |

**UNITED STATES TRUSTEE'S MOTION TO
CONVERT OR DISMISS PURSUANT TO 11 U.S.C. § 1112(b)**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

TO THE HONORABLE CHRISTOPHER M. LOPEZ,
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), moves for an order converting or dismissing the above-captioned chapter 11 cases for "cause," under 11 U.S.C. § 1112(b). In support of his request, the U.S. Trustee states as follows:

**INTRODUCTION**

1. A fundamental requirement of chapter 11 is that a plan cannot be confirmed unless all administrative expenses are paid in full on the effective date. *See* 11 U.S.C. § 1129(a)(9). As the Debtors admit in their *Chapter 11 Plan of Premier Marketing Group, LLC* [ECF No. 2544] (the "Plan"), and *Disclosure Statement for Chapter 11 Plan of Premier Marketing Group, LLC*

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[ECF No. 2545] (the "<u>Disclosure Statement</u>"), the Debtors are administratively insolvent and have no ability to confirm a chapter 11 plan that meets this requirement of the Bankruptcy Code. Therefore, the cases should be converted to chapter 7 or dismissed.

2.      The Debtors,[2] however, through a proposed sleight of hand, attempt to avoid the Bankruptcy Code's requirements to pay all administrative claimants on the Effective Date. The FBG Debtors propose a so-called "Global Settlement"[3] that transfers the most valuable remaining assets, the Estate Claims, from each FBG Debtor to the Plan Debtor without any consideration, while leaving the FBG Debtors with their respective liabilities. This proposal further contemplates that the DIP Secured Parties will credit bid for the Estate Claims (despite only having liens on the proceeds of such claims), transfer those claims to the Plan Debtor (thereby leaving creditors of the FBG estates with no assets from which to be paid), and confirm the Plan without the need to pay the FBG Debtors' administrative creditors in full on the Effective Date. Through this scheme, the Debtors seek to dispose of the assets and claims of 111 FBG Debtors without providing those entities' creditors the protections guaranteed to them under the Code, including 11 U.S.C. § 1129.

3.      But that is not all. Despite the Bankruptcy Code's guarantee of payment to priority administrative claimants, the Global Settlement proposes that their failure to opt-out predetermines their rights to object to the Plan and deems their consent to share *pari passu* with priority and unsecured creditors, amongst others. And if they do opt-out, they will retain claims against FBG Debtor entities who will be stripped of all their assets. If this Court authorizes this artifice, it will necessarily also approve a structure that will gut the protections granted to administrative claimants

---

[2] For purposes of this objection, "Debtors" means all debtors in the above-captioned, jointly administered cases; the "Plan Debtor" means Premier Marketing Group, LLC, and "FBG Debtors" means all debtors other than the Plan Debtor.

[3] The word "global" is a bit Orwellian because the administrative creditors, among many other creditors or claimants, were not included in the mediation or its resulting "Global Settlement."

under section 1129 and improperly favor a limited group of professionals and lenders, who have received the benefits of those unpaid administrative creditors' work, and who have allowed the cases to drag on long enough such that any pittance offered to creditors will seem a comparable fortune.

4.      Congress enacted a strict priority of payments under the Code, and parties are not free to create workarounds to deprive parties of their rights. Because the Plan Debtor's Disclosure Statement demonstrates that these cases are administratively insolvent, and the Debtors cannot pay the administrative expenses in full by the effective date, the Court should convert or dismiss these cases.

## JURISDICTION

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. A matter involving a motion to convert or dismiss is a core proceeding pursuant to 28 U.S.C. § 157(b) (2) (A).

6.      Venue in this district appears proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The U.S. Trustee has standing to request conversion or dismissal under 11 U.S.C. § 307 and 28 U.S.C. § 586(a)(3).

## FACTUAL SUMMARY

8.      On September 24, 2025, certain of the Debtors filed Voluntary Petitions for relief under chapter 11 of the Bankruptcy Code, and the remaining Debtors filed their Voluntary Petitions on September 28, 2025. These chapter 11 cases are being jointly administered.

9.      The Debtors are authorized to continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

10.      On April 28–29, 2026, after months of mediation beginning in January 2026, the Debtors filed the Plan and Disclosure Statement. The Plan is dependent on the approval of a

"Global Settlement"[4] that contemplates that the DIP Secured Parties will credit bid for Estate Claims (despite only having a lien on the proceeds of such claims), transfer those claims to the Plan Debtor (thereby leaving creditors of the FBG Debtors with no assets from which to be paid), and confirm the Plan Debtor's Plan without the need to solicit votes from creditors of the FBG Debtors (thereby allowing the single Plan Debtor to represent that it can pay its administrative creditors in full on the Effective Date). Not only can the DIP Secured Parties not credit bid for these assets but the DIP Order also provides that the DIP Secured Parties' Roll-Up Obligations of approximately $3.3 billion are subordinated to all unpaid and undisputed administrative expense claims up to $200 million. *See* ECF No. 608, p. 42.  In addition, in an Event of Default and following the DIP Secured Parties issuance of a Carve-Out Notice, this $200 million would need to be funded into a segregated account, which perhaps explains why no Carve-out Notice has been issued.

11.     The Disclosure Statement represents that administrative claimants of all Debtors are owed $223 million but does not disclose which Debtors owe those amounts or when they were incurred. *See* ECF No. 2545, Art I.B.6. Upon information and belief, however, the Plan Debtor has few, if any, administrative expenses. Rather, most of the administrative claims are against the other 111 Debtors and will be addressed by the opt-out procedure of the "Global Settlement." Although the Plan Debtors' Plan guarantees *its* administrative claimants will receive full and final payment on the Effective Date or when such claim is allowed, ECF No. 2544, Art. 2.1, there is no assurance of payment as the Debtors acknowledge that they "cannot guarantee the timing of any recovery on an Allowed Administrative Expense Claim."  ECF No. 2545, Art. V.A.8.

---

[4] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

**ARGUMENT**

**A.     Cause exists to convert or dismiss these cases because the Debtors are administratively insolvent.**

12.     Section 1112(b) of the Bankruptcy Code provides that on the request of a party in interest, and after notice and a hearing, the court shall convert the case to chapter 7 or dismiss the case, whichever is in the best interests of creditors of the estate, so long as the movant establishes "cause." *See* 11 U.S.C. § 1112(b)(1).

13.     Section 1112(b)(4) lists sixteen non-exclusive grounds that constitute "cause" for conversion or dismissal. *See* 11 U.S.C. § 1112(b)(4)(A)-(P). This list is not exhaustive, and a case may be dismissed or converted for causes other than those specifically identified in section 1112(b)(4). *See In re TMT Procurement Corp.*, 534 B.R. 912, 917 (Bankr. S.D. Tex. 2015); *In Re Zamora-Quezada*, 622 B.R. 865, 879, 886 (Bankr. S.D. Tex. 2017).

14.     The Court shall dismiss a case for "cause" if the Court finds that there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A); *In re Ford Steel, LLC*, 629 B.R. 871, 879-80 (Bankr. S.D. Tex. 2021). There are two elements to consider under section 1112(b)(4)(A): (i) a "substantial or continuing loss to or diminution of the estate," and (ii) the "absence of a reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A). Both elements are present in these cases.

15.     Courts routinely hold that a "[n]egative cash flow and an inability to pay current expenses as they come due can satisfy the continuing loss or diminution of the estate standard for purposes of § 1112(b)." *See In re TMT Procurement Corp.*, 534 B.R. 912, 919 (Bankr. S.D. Tex. 2015) (citing *Nester v. Gateway Access Sols., Inc. (In re Gateway Access Sols., Inc.)*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007)). "Negative cash flow means that the estate's current liabilities

are increasing more rapidly than cash is available to pay as due." 7 *Collier on Bankruptcy* ¶ 1112.04[6][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

16.     In these cases, there is a continuing loss and diminution of the Debtors' estates because administrative expenses continue to accrue, and the Debtors admit in the Disclosure Statement they cannot pay administrative claims in full. Instead, the Debtors propose to subordinate such claims pursuant to a "Global Settlement" opt-out procedure. Moreover, the Plan Debtor is uncertain whether or when it can pay its own administrative Claims. And yet the Debtors propose to pay in full over $245 million in professional fees, while $223 million in administrative claims remain unpaid, thus favoring those who participated in crafting the "Global Settlement" to the detriment of non-participating creditors of the same priority.

17.     The second element of 11 U.S.C. § 1112(b)(4)(A) requires the Court to find an absence of reasonable likelihood of rehabilitation. "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 577 (5th Cir. 1991). Courts have also found that a debtor lacks a reasonable likelihood of rehabilitation where its only source of income is speculative. *See In re Irasel Sand, LLC*, 569 B.R. 433, 442 (Bankr. S.D. Tex. 2017) (citing *Quarles v. U.S. Tr.*, 194 B.R. 94, 97 (W.D. Va. 1996)); *In re Original IFPC Shareholders, Inc.*, 317 B.R. 738, 743–44 (Bankr. N.D. Ill. 2004). Moreover, rehabilitation has been defined as whether the debtor will be able to reestablish its business—"the standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." *Irasel Sand,* 569 B.R. at 442 (quoting 7 *Collier on Bankruptcy* ¶ 1112.04[6][a][ii]).

18.     The Court should convert or dismiss these cases because the Debtors have no realistic prospect for reorganization. Rather, the Debtors have sold, or will soon sell, all marketable businesses before confirmation. The Plan and Global Settlement instead propose to liquidate all remaining assets of value (i.e. the Estate Claims), leaving the Debtors with no operations to preserve. A chapter 7 trustee can effectively liquidate assets and pursue these litigation claims at a fraction of the existing costs.

19.     Moreover, the proposed Plan cannot be confirmed because it directly contravenes the Bankruptcy Code and general principles of fairness to creditors. The plain language of section 1129(a)(9)(A) requires that "with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim." But here the Debtors attempt to circumvent this requirement through the "Global Settlement" opt-out mechanism, which is inconsistent with the Bankruptcy Code's core protection for administrative claimants. *See* 11 U.S.C. § 507. Under the Plan, the estates have no reasonable likelihood of rehabilitation, and the second element of section 1112(b)(4)(A) is satisfied.

**WHEREFORE**, the U.S. Trustee respectfully requests this Court enter an order converting these cases to chapter 7 cases or dismissing them, and for such other relief as this Court deems just.

Date: May 13, 2026                                    Respectfully Submitted,

                                                      KEVIN M. EPSTEIN
                                                      UNITED STATES TRUSTEE
                                                      REGION 7, SOUTHERN AND WESTERN
                                                      DISTRICTS OF TEXAS

                                                      By: */s/ Vianey Garza*
                                                          Jayson B. Ruff, Trial Attorney
                                                          Michigan Bar No. P69893

(713) 718-4662 – Telephone
Email: Jayson.b.ruff@usdoj.gov
Vianey Garza, Trial Attorney
Tex. Bar No. 24083057/Fed. ID No. 1812278
(713) 718-4650 – Telephone
Email: Vianey.Garza@usdoj.gov
Office of the United States Trustee
515 Rusk, Suite 3516
Houston, Texas 77002
(713) 718-4670 – Fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission to all Pacer System participants in these bankruptcy cases on May 13, 2026.

*/s/ Vianey Garza*
Vianey Garzz