**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*,[1] | Case No. 25-90399 (CML) |
| Debtors. | (Jointly Administered) |

**SUMMARY COVER SHEET TO THE SECOND INTERIM FEE APPLICATION OF**
**M3 ADVISORY PARTNERS, LP FOR COMPENSATION FOR SERVICES**
**AND REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISOR**
**TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**FOR THE PERIOD FROM JANUARY 1, 2026 THROUGH MARCH 31, 2026**

| | | |
|---|---|---|
| **Name of Applicant:** | M3 Advisory Partners, LP ("M3") | |
| **Applicant's Role in Case:** | Financial Advisor to the Official Committee of Unsecured Creditors | |
| **Docket No. of Employment Order(s):** | December 8, 2025 [Docket No. 893] | |
| **Interim Application (X) Final Application ( )** | Second Interim Fee Application | |
| | **Beginning Date** | **End Date** |
| **Time period covered by this Application for which interim compensation has not previously been awarded:** | 01/01/2026 | 03/31/2026 |
| **Time period(s) covered by prior Applications:** | 10/15/25 | 12/31/25 |
| **Were the services provided necessary to the administration of or beneficial at the time rendered toward the completion of the case?  Yes** | | |
| **Were the services performed in a reasonable amount of time commensurate with the** | | |

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

| complexity, importance and nature of the issues addressed?  Yes | |
|---|---|
| **Is the requested compensation reasonable based on the customary compensation charged by comparably skilled practitioners in other non-bankruptcy cases?  Yes** | |
| **Do expense reimbursements represent actual and necessary expenses incurred?  Yes** | |
| **Compensation Breakdown for Time Period Covered by this Application** | |
| **Total professional fees requested in this Application:** | $4,483,531.00 |
| **Total professional hours covered by this Application:** | 5,303.2 |
| **Average hourly rate for professionals:** | $845.44 |
| **Total paraprofessional fees requested in this Application:** | N/A |
| **Total paraprofessional hours covered by this Application:** | N/A |
| **Average hourly rate for paraprofessionals:** | N/A |
| **Total fees requested in this Application:** | $4,483,531.00[2, 3, 4] |
| **Total expense reimbursements requested in this Application:** | $5,833.79[5] |
| **Total fees and expenses requested in this Application:** | $4,489,364.79 |
| **Total fees and expenses awarded in all prior Applications:** | $7,899,060.08 |
| **Plan Status:**  The Debtors filed the *Chapter 11 Plan of Premier Marketing Group, LLC* [Docket No. 2544] and the *Disclosure Statement for Chapter 11 Plan of Premier Marketing Group, LLC* [Docket No. 2545] on April 28 and 29, 2026, respectively. | |

---

[2]     David Willetts is a contractor with M3. Mr. Willetts' costs are passed through without a markup.
[3]     Non-working travel time has been billed at 50% of the normal hourly rate.
[4]     Over the course of these cases, M3 proactively reduced its requested fee compensation by $349,764.75.
[5]     Over the course of these cases, M3 proactively reduced its requested actual and necessary expense compensation by $1,527.57.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*,[1] | Case No. 25-90399 (CML) |
| Debtors. | (Jointly Administered) |

**SECOND INTERIM FEE APPLICATION OF
M3 ADVISORY PARTNERS, LP FOR COMPENSATION FOR SERVICES
AND REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISOR
TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR THE PERIOD FROM JANUARY 1, 2026 THROUGH MARCH 31, 2026**

> **If you object to the relief requested, you must respond in writing.  Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov within twenty-one (21) days from the date this application was filed.  If you do not have electronic filing privileges, you must file a written response that is actually received by the clerk within twenty-one (21) days from the date this application was filed.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Pursuant to sections 328, 330, and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), the *Court Procedures* for Judge Christopher M. Lopez, and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 699] entered by the Court on November 17, 2025 (the "Interim Compensation Order"), M3 Advisory Partners, LP ("M3"), financial advisor to the Official

---

[1]  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby files this interim fee application (this "Application") for interim allowance of $4,483,531.00 for services rendered and $5,833.79 for expenses incurred in these cases for the period of January 1, 2026 through March 31, 2026 (the "Interim Fee Period"). A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A**. In support of this Application, M3 respectfully submits the declaration of Robert Winning (the "Winning Declaration"), attached hereto as **Exhibit B**, and states as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction and authority to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 328, 330, and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules, Local Rule 2016-1 of the Local Rules, and the Interim Compensation Order.

## BACKGROUND

3. The Debtors each filed voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Court") between September 24 and 28, 2025 (the "Petition Date").

4. The Debtors continue to operate and manage their business as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5. On October 9, 2025, the Office of the United States Trustee (the "U.S. Trustee") filed the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 313]

2

appointing the Committee.  On October 15, 2025, the Committee retained, subject to Bankruptcy Court approval, M3 to serve as its financial advisor in these cases.

6.     On November 12, 2025, the Committee filed the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment and Retention of M3 Advisory Partners, LP, as Financial Advisor, Effective as of October 15, 2025* (the "Retention Application") [Docket No. 652].  On December 8, 2025, the Court entered an order approving the Retention Application [Docket No. 893].

7.     This Application is M3's second interim fee application for allowance of compensation for services rendered and for reimbursement of expenses.  M3 has previously sought interim compensation through the service of three (3) monthly fee statements covering the period from January 1, 2026 through March 31, 2026 (collectively, the "Monthly Fee Statements") in accordance with the Interim Compensation Order.  Pursuant to the Interim Compensation Order, the Monthly Fee Statements were served upon the Fee Notice Parties (as defined therein).  A summary of M3's Monthly Fee Statements subject to this Application is set forth as follows:

| Fee Period | Fees Incurred | Fees Paid to Date | 20% Holdback Amount | Expenses Incurred | Expenses Paid to Date | Total Fees and Expenses Incurred |
|---|---|---|---|---|---|---|
| (Fourth) 1/1/26 – 1/31/26 | $2,929,288.00 | $2,343,430.40 | $585,857.60 | $4,072.20 | $4,072.20 | $2,933,360.20 |
| (Fifth) 2/1/26 – 2/28/26[2] | $1,069,502.00 | $0.00 | $213,900.40 | $1,741.59 | $0.00 | $1,071,243.59 |
| (Sixth) 3/1/26 – 3/31/26[3] | $484,741.00 | $0.00 | $96,948.20 | $20.00 | $0.00 | $484,761.00 |
| Totals | $4,483,531.00 | $2,343,430.40 | $896,706.20 | $5,833.79 | $4,072.20 | $4,489,364.79 |

8.     As of the date hereof, M3 received payments for 80% of the fees and 100% of expenses requested for the Fourth Monthly Fee Statement covering the Interim Fee Period (the "Interim Payments").  The objection period for the Fifth Monthly Fee Statement and Sixth Monthly Fee Statement covering February 1, 2026 through February 28, 2026 and March 1, 2026 through March 31, 2026, respectively, is set to expire on June 17, 2026.  By this Application, M3 is requesting allowance of all fees and expenses incurred during the Interim Fee Period, including additional payment of any amounts not paid as Interim Payments and rather retained as a holdback pursuant to the procedures set forth in the Interim Compensation Procedures Order.

### SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

9.     Pursuant to this Application, M3 seeks interim allowance of $4,483,531.00 in fees calculated at the hourly billing rates of M3's personnel who worked on this case, and $5,833.79 in expenses actually and necessarily incurred by M3 in connection with services provided to the

---

[2]    The deadline to object to the Fifth Monthly Fee Statement is June 17, 2026.
[3]    The deadline to object to the Sixth Monthly Fee Statement is June 17, 2026.

Committee during the Interim Fee Period.  During the Interim Fee Period, M3 professionals expended a total of 5,303.2 hours for which compensation is requested.

10.     The fees charged by M3 in this case are billed in accordance with M3's existing billing rates and procedures in effect during the Interim Fee Period.  The rates M3 charges for the services rendered by its professionals in these chapter 11 cases generally are the same rates M3 charges for professional services rendered in comparable bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by similarly skilled professionals for comparable services in other complex chapter 11 cases.

11.     In conjunction with its engagement as provider of financial advisory services to the Committee and in accordance with its internal billing procedures, M3 established the following project categories relating to the various categories of work performed (the "Project Categories" or "Categories") by M3's professionals in conjunction with these chapter 11 cases. Attached hereto as **Exhibit C** is a schedule of the total summary of services rendered by Project Category for the Interim Fee Period.

| Project Category |
| --- |
| Asset Sales |
| Business Operations |
| Business Plan |
| Case Administration |
| Claims/Liabilities Subject to Compromise |
| Court Attendance/Participation |
| Due Diligence & Information Requests |
| Fee Application |
| Financial Matters |
| General Correspondence with Debtor & Debtors' Professionals |
| General Correspondence with Other Professionals |
| General Correspondence with UCC & UCC Counsel |
| Investigations and Litigation Support |
| Miscellaneous Motions |

| Project Category |
|---|
| Non-Working Travel Time |
| Plan of Reorganization/Disclosure Statement |
| SOFAs & SOALs |

12. During the Interim Fee Period, and in conjunction with the various and complex issues involved in advising the Committee in these chapter 11 cases, M3 expended time and rendered services to the Committee for each of the Categories that were both reasonable and necessary. M3 additionally submits that the time spent in conjunction with the matters and issues addressed in each Category are commensurate with the importance, novelty and difficulty of the issues and questions addressed. The numerous issues in these chapter 11 cases contributed to the complexity of the matters involved and the time and efforts required by M3 Professionals.

13. M3 professionals performed work and billed time for each of the Categories as set forth below and as shown in the attached **Exhibit D**, a summary of hours billed by M3 Professionals for the Interim Fee Period. This summary includes the M3 professionals who have performed services for the Committee during the Interim Fee Period, their title, the hourly billing rate charged by M3 for services performed by such individual, and the aggregate number of hours expended and amounts billed during the Interim Fee Period.

14. Attached hereto as **Exhibit E** is a summary of expenses by Category incurred during the Interim Fee Period for which reimbursement is being sought.

15. In conjunction with the reimbursement of expenses, and in accordance with M3's expense policy, M3 charged the actual cost of expenses paid, without any enhancement or other administrative charge. Accordingly, M3 submits that the expenses it incurred were actual expenses and were necessarily incurred in conjunction with M3's rendition of professional services to the Committee in these chapter 11 cases.

6

16.     M3 maintains computerized records from its time entry system of the time spent by all M3 professionals in connection with these chapter 11 cases.  Copies of these computerized records were served with M3's Monthly Fee Statements consistent with the Interim Compensation Order.

17.     M3 utilized the services of one independent contractor during the Interim Fee Period.  The total costs of the independent contract were $6,250.00, and have been (or will be, when received), passed through to the independent contractor without mark-up.

18.     M3 reserves the right to request additional compensation for the Interim Fee Period to the extent that it is later determined that time or disbursement charges for services rendered or disbursements incurred during such time period have not yet been submitted.

### SUMMARY OF PROFESSIONAL SERVICES RENDERED

19.     During the Interim Fee Period, and in conjunction with the various and complex issues involved in advising the Committee in these chapter 11 cases, M3 expended time and rendered services to the Committee for each of the Categories that were both necessary and beneficial to the Committee.  M3 attempted to place the services provided in the Category that is best related to such services.  However, because certain services may relate to one or more Categories, services pertaining to one Category may in fact be included in another Category. The following provides a narrative description of the Categories of services to which M3 professionals devoted material time during the Interim Fee Period.  The summary is qualified in all respects by the actual time entries appended to the Monthly Fee Statements.

A.     **Asset Sales**

M3's services relating to this Category include, among other things, the Committee's analysis of proposed sales of the Debtors' operating business and assets.  M3's work in this category includes review and analysis of the Debtors' proposed bidding procedures and related

7

documents.   Following the Debtors' decision to forgo prosecution of their proposed bidding procedures and related pivot to other sale processes, M3 attended to matters with respect to the proposed sales on an ad hoc basis.

In connection with this Category, M3 expended 98.5 hours during the Interim Fee Period, for a total of $91,250.50.

**B.**      **Business Plan**

M3's services relating to this Category include, among other things, analysis regarding the Debtor's historical and projected financial information at the business unit level, including the review of trial balance data, income statements, and inventory appraisals for the various business units. M3's services relating to this Category also include analysis re: the potential rationalization of business units and related potential recovery analyses by business unit.

In connection with this Category, M3 expended 272.2 hours during the Interim Fee Period, for a total of $245,146.50.

**C.**      **Claims/Liabilities Subject to Compromise**

M3's services relating to this Category include, among other things, reviewing the claims filed against the Debtors.

In connection with this Category, M3 expended 12.1 hours during the Interim Fee Period, for a total of $12,038.50.

**D.**      **Court Attendance/Participation**

M3's services relating to this Category include, among other things, preparing for and participating at hearings during these chapter 11 cases.   M3, on behalf of the Committee, attended a number of hearings and status conferences, including hearings regarding the motions to quash, Evolution Credit Partners' motion seeking adequate protection as it relates to the factored receivables, the original equipment manufacturers' bridge funding arrangement

8

following the Debtors' liquidity crisis, SPV lender's motions for stay relief, and the sales of various assets.

Time expended also includes M3's participation in mediation and settlement discussions with the Debtors and the ad hoc group of lenders (the "Ad Hoc Group") regarding a possible case resolution.

In connection with this Category, M3 expended 57.6 hours during the Interim Fee Period, for a total of $63,325.50.

### E.    Due Diligence & Information Requests

M3's services relating to this Category include, among other things, organizing and reviewing diligence received and obtaining additional diligence necessary.   Thousands of diligence items were exchanged in these cases.

In connection with this Category, M3 expended 90.4 hours during the Interim Fee Period, for a total of $61,576.00.

### F.    Fee Application

M3's services relating to this Category include, among other things, preparing monthly fee statements and M3's First Interim Fee Application [Docket No. 2063] in compliance with the Interim Compensation Order [Docket No. 699].

In connection with this Category, M3 expended 236.5 hours during the Interim Fee Period, for a total of $266,461.00.

### G.    Financial Matters

M3's services relating to this Category include, among other things, analysis and evaluation of the Debtors' funding status and financing proposals, as well as the OEM financing and general case funding issues, and related monitoring and analysis of cash flow forecasts, variance reporting packages, and operational reporting.

9

M3's services relating to this Category also includes analysis related to the Debtors' factoring programs and Debtors' proposal set forth in its *Motion for Order (I) Establishing Third-Party Factoring Procedures for (A) the Review and Reconciliation of the Debtors' Receipts, and (B) the Release of Funds to the Debtors' Estates and the Third-Party Factors; (II) Authorizing Customers to Remit Receivables Without Liability; and (III) Granting Related Relief* [Docket No. 807].

In connection with this Category, M3 expended 232.1 hours during the Interim Fee Period, for a total of $214,973.50.

**H.      General Correspondence with Debtor & Debtors' Professionals**

M3's services relating to this Category include, among other things, preparing for and participating in meetings and teleconferences with the Debtors and its advisors to diligence the business plan, rest of world ("RoW") assets, fill-rate data, investments in business units, vendor management, customer engagement, and Quality of Earnings ("QoE")/financial restatement processes.

Time expended also includes correspondence with Debtor professionals relating to the investigation, factoring, cash flow, DIP financing,  and the Evolution motion to convert.

In connection with this Category, M3 expended 109.9 hours during the Interim Fee Period, for a total of $113,952.00.

**I.      General Correspondence with UCC & UCC Counsel**

M3's services relating to this Category include, among other things, ensuring that the Committee is adequately informed regarding these chapter 11 cases and the Debtors' business and operations, and to obtain authorization from the Committee for its professionals to take action on the Committee's behalf.   Due to the size and complexity of these cases, it has been necessary for M3 and the Committee's professionals to be in regular communication with the Committee to

provide updates and analysis and strategize the best path forward for the unsecured creditors. The fees in this category include time spent preparing for and participating in such Committee meetings, including M3's work preparing presentation materials and coordinating with the Committee's professionals on presentation items.  M3 also spent time preparing non-meeting communications and attending non-meeting calls with individual Committee members.

In connection with this Category, M3 expended 423.5 hours during the Interim Fee Period, for a total of $434,534.50.

**J.** **Investigations and Litigation Support**

M3's services relating to this Category include, among other things, the Committee's investigation of the circumstances leading to the commencement of these chapter 11 cases, including the widely reported conduct of certain of the Debtors' former directors and officers, as well as potential third-party participants.

The facts appear to include improprieties which caused considerable harm to the Debtors and their creditors.  Claims and causes of action related to these issues may provide for significant recoveries to the Debtors' estates.   M3's work during the Interim Fee Period included the review of numerous documents produced to the Committee as well as of publicly available information relevant to, among other things, the Debtors' insiders, operations, financial reporting, transactions, inventory, and off-balance sheet and on-balance sheet borrowing.   M3 worked with counsel to the Committee to develop approaches to discovery and the investigation and assist in their analysis of potential causes of action.   Investigatory work has to date developed significant, salient facts and analysis related to the Debtors' prepetition conduct.

Time expended also included providing support to the Committee's counsel regarding multiple motions to quash requests for discovery under Rule 2004.

In connection with this Category, M3 expended 3,475.1 hours during the Interim Fee Period, for a total of $2,680,405.50.

**K.     Miscellaneous Motions**

M3's services relating to this Category include, among other things, reviewing various motions filed in these cases.

In connection with this Category, M3 expended 31.6 hours during the Interim Fee Period, for a total of $35,241.50.

**L.     Non-Working Travel Time**

M3's services relating to this Category include non-working travel time billed at 50% of the normal hourly rate.

In connection with this Category, M3 expended 15.1 hours during the Interim Fee Period, for a total of $17,342.00.

**M.     Plan of Reorganization/Disclosure Statement**

M3's services relating to this Category include, among other things, time spent developing a case exit strategy in conjunction with the Debtors and the Ad Hoc Group. Time expended also includes evaluating various options and alternatives to be presented to the Committee for its consideration.

In connection with this Category, M3 expended 165.0 hours during the Interim Fee Period, for a total of $184,651.50.

**N.     SOFAs & SOALs**

M3's services relating to this Category include, among other things, reviewing and analyzing the Debtors' Statements of Financial Affairs and Statements of Assets and Liabilities.

In connection with this Category, M3 expended 75.7 hours during the Interim Fee Period, for a total of $52,020.00.

**SUMMARY OF ACTUAL AND NECESSARY EXPENSES**

20.     M3 incurred $5,833.79 as actual and necessary expenses in providing professional services during the Interim Fee Period.  These charges are intended to cover M3's direct costs, which costs are not incorporated into the M3 hourly fees.  Only clients who use services of the types for which reimbursement is sought are separately charged for such service.

21.     M3 asserts that the foregoing services were necessary for the administration of the cases and were beneficial to the Committee at the time which the services were rendered.  All services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed.  A summary of M3's expenses incurred during the Interim Fee Period is provided in **Exhibit E**.

**SUPPORTING DOCUMENTATION**

22.     As noted above, M3 was retained to serve as financial advisor to the Committee by order of this Court dated December 8, 2025, which retention was effective as of October 15, 2025.

23.     This Application represents M3's second interim fee application as financial advisor to the Committee and covers the period from January 1, 2026, through and including March 31, 2026.

24.     The time sheets from M3's billing system included with the Monthly Fee Statements attached hereto as **Exhibit F**, **Exhibit G**, and **Exhibit H** detail the services rendered by the professionals of M3, the hourly rate charged by each professional, and the actual time expensed in the performance of such services.  As stated above, M3 has billed a total of 5,303.2 hours for the Interim Fee Period in conjunction with their engagement as financial advisors to the Committee, resulting in charges of $4,483,531.00.  The average hourly rate charged herein is

13

$845.44, which M3 believes is fair and reasonable in light of the nature of the services rendered and the expertise of the professionals rendering such services.

25.     The Monthly Fee Statements also include a detailed breakdown of all out-of-pocket disbursements incurred by M3 in the performance of its duties as financial advisor to the Committee, which total $5,833.79.  In the normal course of M3's practice, expenses are only charged after the expenses are actually incurred by M3.

**BASIS FOR THE RELIEF REQUESTED**

26.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to ... [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

14

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

27.     Under the standards customarily applied to fee awards under sections 330 and 331 of the Bankruptcy Code, M3 submits that its request for compensation and reimbursement of expenses is for services that were, at the time rendered, believed to be necessary, reasonable, and proper, and that such request should be allowed in the requested amount.  The professional services rendered by M3 on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, to deal with the many issues encountered with skill and dispatch.

28.     M3 submits that the services for which it seeks compensation in this Application were, at the time rendered, necessary for and beneficial to the Committee.  M3 further believes that it performed the services for the Committee economically, effectively, and efficiently.  M3 further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Committee and all parties in interest.

29.     M3 additionally submits that the time it spent in conjunction with the matters and issues addressed in each Category are commensurate with the importance, novelty and difficulty of the issues and questions addressed.  The size of the Debtors' businesses and the large number of creditors and parties-in-interest in the chapter 11 cases contributed to the complexity of the legal matters involved and the time and efforts required from M3 professionals.

30.     Due to the size and complexity of the chapter 11 cases, the services performed by M3 professionals on behalf of the Committee during the Interim Fee Period have required the services of skilled professionals with expertise and specialized background in complex chapter 11 cases.  Wherever possible, M3 used professionals at various levels of seniority and experience

as appropriate in relation to the complexity and requirements of the task performed.  At all times, M3's professionals rendered their services economically and without unnecessary duplication of efforts.

31.     The services rendered by M3 were necessary and beneficial to the Committee and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved.  Approval of the compensation for professional services and reimbursement of the expenses sought herein is warranted.

32.     No previous application for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, M3 respectfully requests that the Court: (i) approve the allowance of $4,483,531.00 for compensation for professional services rendered to the Committee by M3 during the Interim Fee Period from January 1, 2026 through and including March 31, 2026; (ii) approve the reimbursement of $5,833.79 for M3's out-of-pocket expenses incurred in connection with the rendering of such services during the Interim Fee Period from January 1, 2026 through and including March 31, 2026; (iii) authorize and direct the immediate payment to M3 of the unpaid portion of such allowed fees and expenses; and (iv) award such other relief as the Court deems just and proper.

Dated: June 5, 2026

Respectfully submitted,

/s/ *Robert Winning*
Robert Winning
Managing Director
M3 Advisory Partners
1700 Broadway, 19th Floor
New York, NY 10019

16

## CERTIFICATION OF SERVICE

I certify that on June 5, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Ian R. Phillips*
Ian R. Phillips