**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

**EMERGENCY MOTION OF DEBTORS FOR ENTRY OF
ORDER (I) SCHEDULING COMBINED HEARING ON
(A) ADEQUACY OF DISCLOSURE STATEMENT AND
(B) CONFIRMATION OF PLAN, (II) CONDITIONALLY
APPROVING DISCLOSURE STATEMENT AND FORM AND
MANNER OF NOTICE OF CONDITIONAL DISCLOSURE
STATEMENT HEARING, (III) ESTABLISHING SOLICITATION
AND VOTING PROCEDURES, (IV) ESTABLISHING ADMINISTRATIVE
EXPENSE CLAIMS CONSENT PROGRAM NOTICE AND OPT-IN PROCEDURES,
(V) ESTABLISHING PREFERENCE SETTLEMENT NOTICE AND OPT-IN
PROCEDURES, (VI) ESTABLISHING NOTICE AND OBJECTION PROCEDURES
FOR CONFIRMATION OF PLAN, AND (VII) GRANTING RELATED RELIEF**

EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 10:00 A.M. (CENTRAL TIME) ON JUNE 12, 2026.

IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

THE DEBTORS HAVE REQUESTED THAT A HEARING BE CONDUCTED ON THIS MATTER ON JUNE 12, 2026 AT 10:00 A.M. (CENTRAL TIME) IN COURTROOM 402, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.

YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY.   YOU MAY ACCESS THE FACILITY AT 832-917-1510.   ONCE

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

**CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER.  JUDGE LOPEZ'S CONFERENCE ROOM NUMBER IS 590153. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE LOPEZ'S HOME PAGE. THE MEETING CODE IS "JUDGELOPEZ." CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS.  TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE LOPEZ'S HOME PAGE.  SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Background

1.      On September 24, 2025 and September 28, 2025 the Debtors each commenced with the Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

3.      On October 9, 2025, the U.S. Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**").

4.      On December 16, 2025, the U.S. Trustee appointed Martin De Luca (the "**Examiner**") as the examiner in these chapter 11 cases pursuant to the Court's *Order*

2

*Directing Appointment of an Examiner* (Docket No. 726).  A chapter 11 trustee has not been appointed.

5.      On April 9, 2026, the chapter 11 cases of Patterson Inventory, LLC, Patterson Inventory Holdings, LLC, Starlight Inventory I, LLC, and Starlight Inventory Holdings I, LLC (collectively, the "**Evolution SPV Debtors**") were converted to cases under chapter 7 of the Bankruptcy Coder pursuant to the Court's *Order (I) Converting Chapter 11 Cases of Evolution SPV Debtors to Cases Under Chapter 7; and (II) Granting Related Relief* (Docket No. 2396).  The U.S. Trustee has since appointed Ronald Sommers to act as interim chapter 7 trustee on behalf of the Evolution SPV Debtors' chapter 7 estates.  *See Affidavit of Ronald J. Sommers* (Docket No. 2506).

6.      On April 28 and 29, 2026, Debtor Premier Marketing Group, LLC ("**Premier Marketing**") filed the (i) *Chapter 11 Plan of Premier Marketing Group, LLC* (Docket No. 2544) ("**Premier Marketing's Plan**"), (ii) *Disclosure Statement for Chapter 11 Plan of Premier Marketing Group, LLC* (Docket No. 2545) ("**Premier Marketing's Disclosure Statement**"), and (iii)  *Emergency Motion of Debtors for Entry of Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Notice and Objection Procedures for Confirmation of Plan; (V) Establishing Global Settlement Election Procedures; and (VI) Granting Related Relief* (Docket No. 2546) (the "**Initial Disclosure Statement Motion**"), respectively.

7.      On May 13, 2026, the U.S. Trustee filed the *United States Trustee's Motion to Convert or Dismiss Pursuant to 11 U.S.C. § 1112(b)* (Docket No. 2670) (the "**Motion to**

**Convert**").  The Motion to Convert has been set for hearing on June 12, 2026.

8.     The Court held a hearing to consider conditional approval of the Initial Disclosure Statement Motion on May 26, 2026 (the "**Initial Disclosure Statement Hearing**"). The Court denied conditional approval of Premier Marketing's Disclosure Statement and other relief requested in the Initial Disclosure Statement Motion in an oral ruling at the Initial Disclosure Statement Hearing.

9.     On June 5, 2026, the Debtors filed the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 2907) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**") and the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 2912) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Disclosure Statement**").[2]

### Jurisdiction

10.     The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

11.     Pursuant to sections 105, 1124, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3001, 3016, 3017, 3018, 3020, 6004 and 9006, Bankruptcy Local Rules 2002-1, 3016-1, 3016-2, and 9013-1(i), and the Procedures for Complex Chapter 11 Cases

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

in the Southern District of Texas (effective as of September 18, 2024, the "**Complex Case Procedures**"), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), granting the following relief:

**Plan, Disclosure Statement & Related Procedures, Dates/Deadlines and Materials**

    i.    scheduling a combined hearing (the "**Combined Hearing**") on July 28, 2026 (subject to the Court's availability) to approve the Disclosure Statement on a final basis and consider confirmation of the Plan;

    ii.    conditionally[3] approving the Disclosure Statement[4] as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

    iii.    approving the form and manner of the notice (the "**Combined Hearing Notice**") of the Combined Hearing, substantially in the form attached to the Proposed Order as **Exhibit 1**;

    iv.    establishing July 20, 2026 at 5:00 p.m. (Central Time) as the deadline to object to the adequacy of the Disclosure Statement and/or confirmation of the Plan (the "**Combined Objection Deadline**");

    v.    approving the form and manner of the notice of the filing of the Plan, the Disclosure Statement, and this Motion, the Conditional Disclosure Statement Hearing (defined below), and notice of the FBG Debtors' proposed Voting Record Date (defined below) (the "**Conditional Disclosure Statement Hearing Notice**") substantially in the form attached to the Proposed Order as **Exhibit 16**;

    vi.    approving the form and manner of the notice of the filing of the Plan Supplement, and dates and deadlines related to final approval of the Disclosure Statement and confirmation of the Plan (the "**Plan Supplement Notice**") substantially in the form attached to the Proposed Order as **Exhibit 17**;

**Solicitation and Voting**

    vii.    establishing June 15, 2026 as the record date for the purpose of determining which holders of Claims are entitled to vote on the Plan and receive the applicable notice(s) relating to solicitation and confirmation (the "**Voting Record Date**");

---

[3]    The Debtors reserve the right to seek final approval of the Disclosure Statement prior to the Combined Hearing to the extent the hearing to consider approval of the Disclosure Statement is moved to a date after the 28-day objection deadline under Bankruptcy Rule 2002(b).

[4]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

viii.    approving procedures for (a) soliciting, receiving, and tabulating votes to accept or reject the Plan and (b) voting to accept or reject the Plan (the "**Solicitation and Voting Procedures**"), and related deadlines, substantially in the form attached to the Proposed Order as **Exhibit 2**;

ix.    approving the ballots (the "**Ballots**") that First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") will send to holders of Claims entitled to vote, giving such holders the option to vote to accept or reject the Plan and a box to check to opt in to the Third-Party Releases contained in Section 13.5(b) of the Plan (the "**Third-Party Release Opt-In Election**"), substantially in the forms attached to the Proposed Order as **Exhibits 3–8**;

x.    approving the form of notice setting forth, among other things, the procedures for holders of Claims in Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), and Class 5 (Second Lien Claims), and DIP A Claims to certify, elect, and participate in the Litigation Trust (the "**Litigation Trust Participation Notice**"), substantially in the form attached to the Proposed Order as **Exhibit 13**;

xi.    approving the form of notice setting forth, among other things, the procedures for holders of DIP A Claims to certify, elect, and participate in the DIP Collateral Trust (the "**DIP Collateral Trust Participation Notice**"), substantially in the form attached to the Proposed Order as **Exhibit 14**;

xii.    finding that the solicitation materials and documents included in the solicitation packages to be sent to holders of Claims entitled to vote to accept or reject the Plan as described in Paragraph 47 herein (the "**Solicitation Packages**") are in compliance with Bankruptcy Rules 2002(b) and 3017(d);

xiii.    approving the form of notice the FBG Debtors will send to holders of Claims in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims) (together, the "**Unimpaired Non-Voting Classes**"), and DIP A Claims (such notice, the "**Notice of Non-Voting Status**"), substantially in the form attached to the Proposed Order as **Exhibit 9**;

xiv.    approving (a) the form to opt in to the Third-Party Releases (the "**Release Opt-In Form**"), substantially in the form attached to the Proposed Order as **Exhibit 10**, which the FBG Debtors will send to holders of Claims in the Unimpaired Non-Voting Classes, and holders of DIP A Claims, and (b) July 20, 2026 at 5:00 p.m. (Central Time) as the deadline by which holders of Claims in the Unimpaired Non-Voting Classes and DIP A Claims must submit the Release Opt-In Form (the "**Release Opt-In Deadline**");

xv.    establishing July 20, 2026 at 5:00 p.m. (Central Time) as the deadline by which holders of Claims entitled to vote may vote to accept or reject the Plan (the "**Voting Deadline**");

6

**Administrative Expense Claims Consent Program**

xvi.     approving the form of opt-in the FBG Debtors will send to holders of Administrative Expense Claims (other than as otherwise provided herein) for the Administrative Expense Claims Consent Program (as defined herein) (the "**Consent Program Opt-In Form**") substantially in the form attached to the Proposed Order as **Exhibit 11**;

xvii.    establishing July 10, 2026 as the record date for determining which holders of Administrative Expense Claims are entitled to participate in the Administrative Expense Claims Consent Program and receive the Consent Program Opt-In Form (the "**Administrative Claims Record Date**");

xviii.   approving the materials and documents to be sent to holders of Administrative Expense Claims (as provided in Paragraph 80 herein) (the "**Consent Program Materials**");

xix.     approving (a) the Consent Program Opt-In Procedures (as defined herein) and (b) the deadline by which holders of Administrative Expense Claims must submit the Consent Program Opt-In Form of sixty (60) days following the Confirmation Date (the "**Consent Program Opt-In Deadline**");

**Preference Settlement**

xx.      approving the form the FBG Debtors will send to Trade Creditors, Supply Chain Financers, and Factors as of June 15, 2026 (the "**Preference Settlement Record Date**") (each, a "**Preference Settlement Eligible Creditor**" and collectively, the "**Preference Settlement Eligible Creditors**") to give those holders an opportunity to participate in the Preference Settlement and to grant releases described therein, (the "**Preference Settlement Opt-In Form**"), substantially in the form attached to the Proposed Order as **Exhibit 12**;

xxi.     approving the materials and documents to be sent to Preference Settlement Eligible Creditors (as provided in Paragraph 97 herein) (the "**Preference Settlement Materials**");

xxii.    approving (a) the Preference Settlement Procedures (as defined herein) and (b) the deadline by which Preference Settlement Eligible Creditors must submit the Preference Settlement Opt-In Form, which is on or before 5:00 p.m. (Central Time) on the date that is forty-five (45) days following the Confirmation Date (the "**Preference Settlement Opt-In Deadline**"); *provided* that if a Preference Action is brought against a Trade Creditor that did not timely opt in to the Preference Settlement, such Trade Creditor shall have an additional thirty (30) days following service of the Preference Action to opt in to the Preference Settlement; and

xxiii.   granting related relief.

7

12. The following chart provides a summary of key dates and deadlines the Debtors are seeking pursuant to the Proposed Order:

| Proposed Solicitation and Confirmation Timetable | |
|---|---|
| Requested Conditional Disclosure Statement Hearing | **June 12, 2026 at 10:00 a.m. (Central Time)** |
| Voting Record Date and Preference Settlement Record Date | **June 15, 2026** |
| Mailing Deadline for Combined Hearing Notice, Solicitation Packages, Non-Voting Packages, Consent Program Materials, and Preference Settlement Materials | **Within three (3) business days after entry of this Order, or as soon as reasonably practicable thereafter** |
| Plan Supplement Filing Deadline | **June 22, 2026** |
| Litigation Trust Distribution Record Date & DIP Collateral Trust Distribution Record Date | **June 22, 2026 (which date may be extended by mutual agreement among the FBG Debtors and Ad Hoc Group)** |
| Deadline for Debtors to File Claims Objections for Voting Purposes or to Request Claims Estimation for Voting Purposes | **July 3, 2026 at 5:00 p.m. (Central Time)** |
| Administrative Claims Record Date | **July 10, 2026** |
| Rule 3018(a) Motion Deadline | **July 10, 2026 at 5:00 p.m. (Central Time)** |
| Litigation Trust Interest Response Deadline & DIP Collateral Trust Interest Response Deadline | **July 13, 2026 (which date may be extended by mutual agreement among the FBG Debtors and Ad Hoc Group)** |
| Voting Deadline and Release Opt-In Deadline | **July 20, 2026 at 5:00 p.m. (Central Time)** |
| Deadline to Object to Disclosure Statement and Plan | **July 20, 2026 at 5:00 p.m. (Central Time)** |
| Ballot Certification Deadline | **July 27, 2026** |

| | |
|---|---|
| Deadline to File Confirmation Brief and Reply to Plan Objection(s) | **July 27, 2026** |
| Requested Combined Hearing | **July 28, 2026 at 9:00 a.m. (Central Time)** |
| Preference Settlement Opt-In Deadline | **Forty-five (45) days following the Confirmation Date (except as otherwise provided herein)** |
| Consent Program Opt-In Deadline | **Sixty (60) days following the Confirmation Date** |

13.     For further reference, below is a list of the various exhibits and documents cited throughout this Motion:

| DOCUMENT | EXHIBIT |
|---|---|
| Proposed Order | Exhibit A |
| Disclosure Statement | Filed Contemporaneously Herewith |
| Plan | Filed Contemporaneously Herewith |
| Form of Combined Hearing Notice | Exhibit 1 to the Proposed Order |
| Form of Solicitation and Voting Procedures | Exhibit 2 to the Proposed Order |
| Form of Ballot for Roll-Up Claims (Class 3) | Exhibit 3 to the Proposed Order |
| Form of Ballot for First Lien Claims (Class 4) | Exhibit 4 to the Proposed Order |
| Form of Ballot for Second Lien Claims (Class 5) | Exhibit 5 to the Proposed Order |
| Form of Ballot for ABL Claims (Class 6) | Exhibit 6 to the Proposed Order |
| Form of Ballot for General Unsecured Claims (Class 7) | Exhibit 7 to the Proposed Order |
| Form of Ballot for Subordinated Claims (Class 8) | Exhibit 8 to the Proposed Order |

| DOCUMENT | EXHIBIT |
|---|---|
| Form of Notice of Non-Voting Status | Exhibit 9 to the Proposed Order |
| Form of Release Opt-In Form | Exhibit 10 to the Proposed Order |
| Form of Consent Program Opt-In Form | Exhibit 11 to the Proposed Order |
| Form of Preference Settlement Opt-In Form | Exhibit 12 to the Proposed Order |
| Litigation Trust Participation Notice | Exhibit 13 to the Proposed Order |
| DIP Collateral Trust Participation Notice | Exhibit 14 to the Proposed Order |
| Creditors' Committee Position Letter | Exhibit 15 to the Proposed Order |
| Form of Conditional Disclosure Statement Hearing Notice | Exhibit 16 to the Proposed Order |
| Form of Plan Supplement Notice | Exhibit 17 to the Proposed Order |

**Summary of Plan**

14. On January 29, 2026, the Debtors initiated a consensual mediation process overseen by the Honorable Judge Marvin Isgur to address, among other things, a case resolution. Following months of mediation, the Debtors, the Ad Hoc Group, and the Creditors' Committee (the "**Settlement Parties**") reached an agreement in principle on a comprehensive settlement on the terms of a chapter 11 plan, the terms of which were set forth in Premier Marketing's Plan. However, following the Court's ruling at the Initial Disclosure Statement Hearing, the Settlement Parties negotiated modifications to the settlement and chapter 11 plan, which are reflected in the Plan and Disclosure Statement.

15. As described more fully in the Disclosure Statement, the Plan is proposed by the FBG Debtors and treats all claims against and interests in the FBG Debtors, and provides holders of Allowed Claims against the FBG Debtors (including, administrative, priority, and

general unsecured creditors) interests in the Litigation Trust established under the Plan in accordance with the agreed Litigation Trust Waterfall.

16.     Under the Litigation Trust Waterfall, once aggregate distributions from the Litigation Trust exceed the Second Return Threshold of $350 million in distributions made to holders of Class 1 Litigation Trust Interests and DIP A Claims (well before payment in full of the $1.4 billion of DIP A Claims), Administrative Expense Claims begin sharing in the proceeds of the Litigation Trust Assets as follows: first, to holders of Settled Administrative Expense Claims (i.e., holders of Administrative Expense Claims who affirmatively opt-in to the Administrative Expense Claims Consent Program and agree to have their Administrative Expense Claim Allowed in an amount equal to fifty percent (50%)); second, to holders of other Allowed Administrative Expense Claims (i.e., holders who do not opt in to the Administrative Expense Claims Consent Program).  Thereafter, holders of Allowed Other Priority Claims and Allowed Priority Tax Claims are paid from the Litigation Trust in accordance with the Litigation Trust Waterfall; and finally, pro rata, to holders of Allowed Roll-Up Claims, Allowed First Lien Claims, Allowed Second Lien Claims, and Allowed General Unsecured Claims.

17.     In addition to the Litigation Trust, the Plan provides for the establishment of the DIP Collateral Trust, funded with certain DIP Collateral, and the ABL Collateral Trust, funded with certain ABL Priority Collateral.  These three trusts and the Plan Settlement form the foundation of the Plan and work in tandem to affect an orderly wind down of the Debtors' estates that will likely result in greater recoveries for the holders of Claims at each FBG Debtor than any available alternative paths.

18.     The Debtors propose to solicit votes to accept or reject the Plan from holders of Claims in Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), Class 5 (Second Lien Claims),

11

Class 6 (ABL Claims), Class 7 (General Unsecured Claims), and Class 8 (Subordinated Claims) (each, a "**Voting Class**" and collectively, the "**Voting Classes**"). The FBG Debtors do not propose to solicit votes from holders of Claims or Interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 9 (Intercompany Claims), and Class 10 (FBG Debtor Interests) (each, a "**Non-Voting Class**" and collectively, the "**Non-Voting Classes**").

### Disclosure Statement

**A.    Conditional Approval of Disclosure Statement is Warranted**

19.    The Debtors seek limited relief from the requirements of section 1125(b) of the Bankruptcy Code[5] for the purposes of permitting the FBG Debtors to solicit acceptances of the Plan from holders of Claims, with final approval of the Disclosure Statement to be determined at the Combined Hearing. Such relief is consistent with section P of the Complex Case Procedures, which provides that the bankruptcy court may consider motions seeking conditional approval of a disclosure statement.

20.    Conditional approval of the Disclosure Statement is warranted and appropriate in these chapter 11 cases because it will enable the FBG Debtors to commence solicitation, eliminate the need for the scheduling of a separate disclosure statement hearing, shorten the length of these cases, facilitate the expeditious confirmation and consummation of the Plan, and ensure that the Debtors have sufficient liquidity to prosecute the Plan.

21.    Additionally, section P of the Complex Case Procedures provides that the Court may consider motions seeking conditional approval of a disclosure statement so long as such

---

[5]    Section 1125(b) of the Bankruptcy Code provides, in relevant part, "[a]n acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."

motions include a proposed order that:  (i) finally approves the balloting and voting procedures to be utilized; (ii) finally approves the form of notice to be provided to creditors and interest holders of the debtors; (iii) finally approves the form of ballot which will be provided to creditors and interest holders entitled to vote on the proposed plan; (iv) establishes a record date; and (v) establishes a voting deadline.  This Motion and the Proposed Order comply with these requirements of the Complex Case Procedures and the other requirements of the Bankruptcy Rules.

22.     Accordingly, the Court should conditionally approve the Disclosure Statement and authorize the FBG Debtors to use the Disclosure Statement for solicitation of acceptances and rejections of the Plan from holders of Claims in the Voting Classes.

**B.     Disclosure Statement Provides Adequate Information Regarding the Proposed Chapter 11 Plan**

23.     At the Combined Hearing, the Debtors will seek final approval of the Disclosure Statement.  Section 1125(b) of the Bankruptcy Code requires a plan proponent to provide holders of impaired claims and equity interests with "adequate information" regarding the proposed chapter 11 plan.  Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

24.     Accordingly, a debtor's disclosure statement must provide sufficient information to permit an informed judgment by impaired creditors entitled to vote on the plan. *See, e.g.*, *In re Shea, Ltd.*, 545 B.R. 529, 538 n.6 (Bankr. S.D. Tex. 2016) ("The purpose of a

disclosure statement is to provide adequate information to creditors in order to allow them to make informed judgments about the proposed plan."); *In re Tex. Rangers Baseball Partners*, 521 B.R. 134, 176 (Bankr. N.D. Tex. 2014) ("Section 1125 of the Bankruptcy Code entitles creditors to 'adequate information' so they can make an informed decision on whether to accept or reject a chapter 11 plan.") (quoting *In re Tex. Wyoming Drilling, Inc.*, 647 F.3d 547, 551 (5th Cir. 2011)). The essential requirement of a disclosure statement is that it "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Keisler*, No. 08-34321, 2009 WL 1851413, at *4 (Bankr. E.D. Tenn. June 29, 2009) (quoting *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991)).

25.     Whether a disclosure statement contains adequate information "is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation."  11 U.S.C. § 1125(d).  Instead, bankruptcy courts have broad discretion to determine the adequacy of the information contained in a disclosure statement.  *See, e.g.*, *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988) (noting that the determination of what is adequate information is "largely within the discretion of the bankruptcy court"); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D.N.J. 2005) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement.") (citing *In re River Village Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995)).  Congress granted bankruptcy courts wide discretion in determining the adequacy of a disclosure statement, taking into account the various facts and circumstances that accompany chapter 11 cases.  *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 408–09 (1977) ("Precisely what constitutes adequate information will develop on a case-by-case basis."); *see also In re Cajun Elec. Power Coop.*, 150 F.3d 503, 518 (5th Cir. 1998) ("[W]ith respect to a particular

disclosure statement, 'both the kind and form of information are left essentially to the judicial discretion of the court.'" (quoting S. Rep. No. 95-989, at 121 (1978))).  Accordingly, the determination of whether a disclosure statement contains adequate information is made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See Tex. Extrusion Corp.*, 844 F.2d at 1157 ("The determination of what is adequate information is subjective and made on a case by case basis.").

26.    To determine whether a disclosure statement contains adequate information, courts generally examine whether the disclosure statement contains the following types of information, as applicable:

(a)    the circumstances that gave rise to the filing of the bankruptcy petition;

(b)    an explanation of the available assets and their value;

(c)    the anticipated future of the debtor(s);

(d)    the source of the information provided in the disclosure statement;

(e)    a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

(f)    the condition and performance of the debtor while in chapter 11;

(g)    information regarding claims against the estate;

(h)    a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

(i)    the accounting and valuation methods used to produce the financial information in the disclosure statement;

(j)    information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor;

(k)    a summary of the chapter 11 plan;

(l)    an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

      (m)     the collectability of any accounts receivable;

      (n)     any financial information, valuations, or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

      (o)     information relevant to the risks being taken by the creditors and interest holders;

      (p)     the actual or projected value that can be obtained from avoidable transfers;

      (q)     the existence, likelihood, and possible success of nonbankruptcy litigation;

      (r)     the tax consequences of the plan; and

      (s)     the relationship of the debtor with its affiliates.

*See, e.g.*, *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); *In re ReoStar Energy*, No. 10-47176, 2012 Bankr. LEXIS 2418, at *4–5 (Bankr. N.D. Tex. May 30, 2012) (noting that "courts have developed checklists for determining whether a disclosure statement meets the requirements of section 1125"). Such a list is not meant to be comprehensive and a debtor is not required to provide all the information on the list. Rather, the bankruptcy court must decide what is appropriate in each case in light of the particular facts and circumstances present. *See In re Divine Ripe, L.L.C.*, 554 B.R. 395, 401–02 (Bankr. S.D. Tex. 2016) (adopting a similar list); *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (making use of a similar list but cautioning that "no one list of categories will apply in every case").

      27.     The Disclosure Statement provides information identified in the applicable categories above, including, but not limited to:

      (a)     an introduction providing background and an overview of the Plan and Plan Settlement (Section I.A);

      (b)     a summary of the Administrative Expense Claims Consent Program, including Frequently Asked Questions (Section I.D);

      (c)     a summary of the Preference Settlement, including Frequently Asked Questions (Section I.E);

(d)     a summary of Plan classification and treatment of Claims and Interests (Section I.F);

(e)     an overview of the Debtors' operations (Section II);

(f)     a description of the Debtors' capital structure (Section II.D);

(g)     significant events leading to the commencement of the Debtors' chapter 11 cases (Section III);

(h)     events during the chapter 11 cases (Section IV);

(i)     certain risk factors affecting the FBG Debtors to be considered (Section V);

(j)     certain U.S. federal income tax consequences of the Plan (Section VI); and

(k)     requirements for confirmation of the Plan (Section VII.C).

28.     In addition to the type of information that courts typically look for in a disclosure statement, the Disclosure Statement provides an analysis of the alternatives to confirmation and consummation of the Plan (Section VIII) and begins with the FBG Debtors' and Creditors' Committee's recommendation that the holders of Claims in Classes 3, 4, 5, 6, 7, and 8 vote in favor of the Plan.

29.     Based on the foregoing, the Debtors submit that the Disclosure Statement contains adequate information for a voting creditor to make an informed judgment regarding whether to vote to accept or reject the Plan and therefore satisfies the requirements of section 1125 of the Bankruptcy Code.  Accordingly, at the Combined Hearing, the Debtors will demonstrate, as summarized above, that the Disclosure Statement provides "adequate information" in satisfaction of the requirements of section 1125 of the Bankruptcy Code, and therefore should be approved by the Court.

## C.     Disclosure Statement Provides Sufficient Notice of the Release, Exculpation, and Injunction Provisions in the Plan

30.     Pursuant to Bankruptcy Rule 3016(c), "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the [Bankruptcy] Code, the plan and disclosure

statement [must] describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction." Fed. R. Bankr. P. 3016(c).

31.    The Plan provides for certain settlements, injunctions, releases, and exculpations in Article XIII. Exhibit B to the Disclosure Statement describes in detail the releases provided under the Plan, the entities to provide such releases, the entities to be released, and the Claims and Interests and causes of action to be released. Additionally, Exhibit B to the Disclosure Statement sets forth the terms of the proposed exculpation and injunction provisions in the Plan. Each of the foregoing is in conspicuous (bold) print. Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c).

## Solicitation and Voting Procedures

**A.    The Court Should Approve the Solicitation and Voting Procedures, Ballots, Timeline, and Forms of Notices Related to Solicitation and Confirmation of the Plan**

32.    In connection with the Disclosure Statement and the Plan, the Debtors, with the assistance of Kroll Restructuring Administration LLC ("**Kroll**" or the "**Voting Agent**") as their claims, noticing, and solicitation agent pursuant to the *Order Authorizing Employment and Retention of Kroll Restructuring Administration LLC as Claims, Noticing, and Solicitation Agent* (Docket No. 12), propose to implement the Solicitation and Voting Procedures summarized below and as set forth more fully in **Exhibit 2** to the Proposed Order.

**2.    Solicitation and Voting Procedures, Including Tabulation Procedures**

33.    Section 1126(c) of the Bankruptcy Code provides that:

A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designed under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).   Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c).  Consistent with these requirements, the FBG Debtors propose to use the Solicitation and Voting Procedures, which include specific voting and tabulation requirements and processes (the "**Tabulation Procedures**"), to facilitate the process of tabulating all votes received.

34.     The proposed Solicitation and Voting Procedures set forth specific criteria with respect to the voting procedures applicable to holders of Claims in Voting Classes and the general tabulation of Ballots, including clear requirements for determining whether a Ballot will be counted in determining the acceptance or rejection of the Plan.  For example, the Tabulation Procedures provide that the FBG Debtors are not required to count a Ballot if it is, among other things, illegible, submitted by a holder of a Claim or Interest that is not entitled to vote on the Plan, unsigned, not clearly marked with a vote to accept or reject the Plan, or marked to both accept and reject the Plan.  Further, the FBG Debtors, unless otherwise ordered by the Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, provided that any such waivers are documented in the report tabulating votes on the Plan.

35.     The Tabulation Procedures will facilitate the Plan confirmation process by creating a straightforward process by which the Debtors can determine whether they have satisfied the requirements of section 1126(c) of the Bankruptcy Code.  Accordingly, the Debtors submit that the Solicitation and Voting Procedures, including the authorization of Kroll's assistance therewith, are in the best interests of their estates, holders of Claims and Interests, and other parties

in interest, comply with Bankruptcy Rule 3018(c), and that good cause supports the relief requested herein.

### 3. Voting Record Date

36. Bankruptcy Rule 3017(d) provides that, for soliciting votes in connection with a plan, eligible voting holders of claims and interests are "of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d); *see also* Fed. R. Bankr. P. 3018(a) (containing a similar provision for determination of a voting record date). The FBG Debtors request that the Court establish June 15, 2026, as the date for determining: (a) the holders of Claims that are entitled to receive Solicitation Packages and Non-Voting Packages (as defined below), and (b) the holders of Claims that are entitled to vote to accept or reject the Plan. To the extent a holder of a Claim that was not included on the FBG Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "**FBG Debtors' Schedules**"), or in the FBG Debtors' books and records, files a Proof of Claim asserting a general unsecured claim before the Voting Record Date, such claimant will also be sent the Solicitation Package (including a Ballot), in accordance with the Solicitation and Voting Procedures.

37. Bankruptcy Rule 3017(d) provides, in relevant part, that, for the purposes of soliciting votes in connection with confirmation of a chapter 11 plan, and except to the extent the court orders otherwise, the debtor must mail the relevant solicitation materials to all creditors and equity security holders, including "holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d).

38. With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the FBG Debtors propose that the transferee be entitled to receive a Solicitation Package

and, if the holder of such Claim is otherwise entitled to vote with respect to the Plan, such holder may cast a Ballot on account of such Claim only if: (i) all actions necessary to transfer such Claim are completed by the Voting Record Date; or (ii) by the Voting Record Date, the transferee files (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  Further, in the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the holder of such Claim as of the Voting Record Date.

39.     The foregoing timing and procedures will afford holders of Claims entitled to vote on the Plan sufficient time to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline, consistent with the requirements of the applicable Bankruptcy Rules.  *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims).  The Voting Record Date complies with Bankruptcy Rule 3017(d) and, therefore, should be approved.

### 4.     Form of Ballots

40.     Bankruptcy Rule 3017(d) requires debtors to mail a form of ballot that substantially conforms to Official Bankruptcy Form No. B 314 to "creditors and equity security holders entitled to vote on the plan."  Fed. R. Bankr. P. 3017(d).  The FBG Debtors propose to distribute Ballots to holders of Claims in the Voting Classes that are eligible to vote as of the Voting Record Date.[6]  Although the Ballots are based on Official Bankruptcy Form No. B 314,

---

[6]    Kroll is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon, Kroll is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials including unused copies of the Solicitation Package; and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the

they have been modified to address the specific circumstances of these chapter 11 cases and to include certain additional information that the FBG Debtors believe is relevant and appropriate for holders of Claims in the Voting Classes.  The proposed forms of Ballots for each Voting Class are annexed as **Exhibits 3–8** to the Proposed Order.  The FBG Debtors submit that the forms of Ballots comply with Bankruptcy Rule 3018(c) and, therefore, should be approved.

41.     If the Court grants the requested relief, all holders of Claims in the Voting Classes will receive a Ballot that includes an election to opt in to the third-party releases in Section 13.5(b) of the Plan (the "**Third-Party Releases**") as more fully described below.

42.     The FBG Debtors propose to distribute Ballots to each of the holders in the Voting Classes: (i) Roll-Up Claims in Class 3, (ii) First Lien Claims in Class 4, (iii) Second Lien Claims in Class 5, (iv) ABL Claims in Class 6, (v) General Unsecured Claims in Class 7, (vi) Subordinated Claims in Class 8.

43.     In connection with the Solicitation and Voting Procedures, if, prior to July 3, 2026 at 5:00 p.m. (Central Time), a Claim is subject to an objection, a request for estimation, or an adversary proceeding, such Claim shall be a "**Potentially Disallowed Claim**." All holders of Potentially Disallowed Claims shall receive a Ballot (such Ballot, a "**Provisional Ballot**").[7]  A holder's Potentially Disallowed Claim shall be temporarily disallowed for voting purposes, except as ordered by the Court or agreed to by the FBG Debtors and such holder before the Voting Deadline  Each Provisional Ballot, like each Ballot, will contain the Third-Party Release Opt-In Election for such holder to check to opt in to the Third-Party Releases.  Each holder

---

Debtors or the Clerk of the Court in writing within such one (1) year period.

[7]     To the extent any holder previously received a Ballot from the Voting Agent, that Ballot received by the holder will be deemed a Provisional Ballot.

who receives a Provisional Ballot will not be a Releasing Party under the Plan unless the holder properly, timely, and affirmatively checks to opt in to the Third-Party Releases through the Third-Party Release Opt-In Election on the Provisional Ballot.

44.     If a holder (i) seeks to vote on the Plan but such holder's Claim is not listed on the FBG Debtors' Schedules, books and records, and the holder did not file a Proof of Claim, (ii) seeks to vote in a different amount than is reflected on the FBG Debtors' Schedules, books and records, or filed proof of claim, or (iii) is a holder of a Potentially Disallowed Claim, such creditor must file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes (a "**Rule 3018(a) Motion**") to vote on the Plan.  Any Rule 3018(a) Motion must be filed with the Court so as to be actually received not later than July 10, 2026, at 5:00 p.m. (Central Time) (the "**Rule 3018(a) Motion Deadline**").  Upon the filing of any such Rule 3018(a) Motion, such holder will receive a Provisional Ballot.  A holder's Provisional Ballot will only be tabulated if the Court grants the relief requested in such holder's Rule 3018(a) Motion, or as agreed between the FBG Debtors and such holder prior to the Voting Deadline subject to the guidelines for Potentially Disallowed Claims described above.

45.     Each holder of a Claim in a Voting Class will be instructed to complete and return its Ballot in accordance with the directions provided therein.  Ballots may be submitted via Kroll's online balloting portal (each such electronically submitted Ballot, an ("**E-Ballot**") at https://restructuring.ra.kroll.com/FirstBrands (the "**Online Portal**"), so long as the E-Ballot is submitted so that it is actually received by the Voting Agent on or before the Voting Deadline. The encrypted E-Ballot data and audit trail created by such electronic submission through the Online Portal will become part of the record of any Ballot submitted in this manner, and the holder's electronic signature will be deemed to be immediately legally valid and effective.

23

Alternatively, in lieu of submitting an E-Ballot, holders of Claims may return their Ballots in the return envelope provided, or otherwise via first-class mail, overnight courier, or hand delivery, so long as the Ballots are actually received by the Voting Agent on or before the Voting Deadline. Holders of Claims mailing (whether by regular mail or overnight courier) or hand delivering their Ballots to the Voting Agent shall do so to the following address:

> First Brands Group, LLC Ballot Processing
> c/o Kroll Restructuring Administration LLC
> 850 3rd Avenue, Suite 412
> Brooklyn, NY 11232

To arrange hand delivery, email FirstBrandsBallots@ra.kroll.com (with "First Brands Ballot Delivery" in the subject line) at least twenty-four (24) hours prior to arrival at the Kroll address above and provide the anticipated date and time of delivery.

### 5. Approval of Solicitation Packages and Procedures for Distribution Thereof

46. Bankruptcy Rule 3017(d) lists the materials that must be provided to holders of claims or interests for the purpose of soliciting votes on a chapter 11 plan and providing adequate notice of the hearing to consider confirmation thereof. Specifically, Bankruptcy Rule 3017(d) provides, in relevant part, that:

> [u]pon approval of a disclosure statement,—except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders—the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee:
>
> (a)  the plan or a court-approved summary of the plan;
>
> (b)  the disclosure statement approved by the court;
>
> (c)  notice of the time within which acceptances and rejections of the plan may be filed; and
>
> (d)  any other information as the court may direct, including any court opinion

> approving the disclosure statement or a court-approved summary of the opinion.

Fed. R. Bankr. P. 3017(d).

47.     In accordance with Bankruptcy Rule 3017(d), the FBG Debtors propose to mail, or cause to be mailed, Solicitation Packages, within three (3) business days after entry of an order approving the Disclosure Statement, or as soon as reasonably practicable thereafter (the "**Mailing Deadline**"), to holders of Claims in the Voting Classes entitled to vote on the Plan as of the Voting Record Date.  In addition, the FBG Debtors propose to mail, or cause to be mailed, the Solicitation Packages (excluding the Ballots and postage-prepaid return envelopes) to the U.S. Trustee and all parties in interest required to be notified under Bankruptcy Rule 2002 and Bankruptcy Local Rule 2002 1 (except to the extent that such party is otherwise entitled to receive those materials in the Consent Program Materials and/or Preference Settlement Materials, as described herein).  Solicitation Packages shall contain copies of:

(a)     the Proposed Order, as entered by the Court and without attachments;

(b)     the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;

(c)     the Combined Hearing Notice;

(d)     the Solicitation and Voting Procedures;

(e)     the applicable Ballot customized (where possible and appropriate) for such holder and conforming to Official Bankruptcy Form No. B 314, in the form described below;[8]

(f)     for holders of Claims in Class 3 (Roll-Up Claims), Class 4 First Lien Claims), Class 5 (Second Lien Claims), the Litigation Trust Participation Notice;

(g)     for holders of Claims in Class 7 (General Unsecured Claims), the letter from the Creditors' Committee setting forth, among other things, that the

---

[8]     Official Bankruptcy Form No. B 314 can be found at http://www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts.

Creditors' Committee recommends that holders of General Unsecured Claims vote to accept the Plan and supports confirmation of the Plan (attached to the Proposed Order as **Exhibit 15** thereto) (the "**Creditors' Committee Position Letter**"); and

(h)    a postage-prepaid return envelope.

48.    To reduce costs and the impact on the environment, the FBG Debtors propose to make the Disclosure Statement, the Plan, and the Proposed Order (without attachments, except the Solicitation and Voting Procedures annexed as **Exhibit 2** thereto) easily, seamlessly, and freely available in electronic format (via a QR code included in the Combined Hearing Notice) on the Online Portal instead of sending printed hard copies.  Only the Ballots, the Combined Hearing Notice, and return envelope will be provided in paper format.  Moreover, the Plan and the Disclosure Statement will be available at no charge via the Internet at the Online Portal.  However, the FBG Debtors propose that if service by QR code imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (*e.g.*, the party does not own or have access to a smartphone), such party may request a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and Proposed Order (without attachments, except as otherwise provided herein) by contacting Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Upon receipt of such request, in a timely manner, the FBG Debtors will provide such party with a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and the Proposed Order (without attachments, except as otherwise provided herein) at no cost to the party.

49. Further, the FBG Debtors request that Kroll be authorized to assist the FBG Debtors in: (i) distributing the applicable Solicitation Packages, (ii) distributing the Notice of Non-Voting Status and the Release Opt-In Forms as applicable, (iii) distributing Consent Program Materials and the Consent Program Opt-In Form, (iv) distributing Preferences Settlement Materials, (v) collecting, processing, and reporting on Consent Program Opt-In Forms, (vi) collecting, processing, and reporting Preference Settlement Opt-In Forms, (iv) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by holders of Claims, (v) receiving, tabulating, and reporting on Release Opt-In Forms cast to opt in to the Third-Party Releases, (vi) responding to inquiries from holders of Claims or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, Non-Voting Packages, Preference Settlement Materials, Consent Program Materials, and all other related documents, including the Consent Program Opt-In Form, (collectively, the "**Materials**") and matters related thereto, or the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, including the procedures and requirements to opt in to Third-Party Releases, (vii) soliciting votes on the Plan, and (viii) if necessary or appropriate, contacting creditors and equity holders regarding the Materials and matters related thereto.

50. The FBG Debtors also request that Kroll be authorized to serve the Litigation Trust Participation Notice to holders of Claims as outlined in Paragraph 47 above, in addition to holders of DIP A Claims, and that it be authorized to serve the DIP Collateral Trust Participation Notice to holders of DIP A Claims. The information elicited from holders by the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice, however, will not be collected or processed by Kroll. The method of submission and collection of the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice will be as

set forth in the respective notices. Additionally, the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice are subject to different dates and deadlines than other documents in the Solicitation Packages (such as the Distribution Record Dates, as defined therein) affecting the rights of the recipient holders of such notices.

51.     Additionally, the FBG Debtors request that the Court not require the FBG Debtors to distribute the Materials to parties (i) on account of Claims that have already been paid in full during these chapter 11 cases (except Claims of Preference Settlement Eligible Creditors), (ii) on account of Claims that are determined to be duplicative based on the review of the FBG Debtors and/or the Voting Agent, or (iii) whose prior mailings in these chapter 11 cases were returned as undeliverable and that have not provided a forwarding address by the Voting Record Date.[9]  In the event that the United States Postal Service returns some Materials as undeliverable, the FBG Debtors request that they be excused from re-mailing such Materials—unless the FBG Debtors are provided with accurate addresses for such parties prior to the Voting Record Date— and from conducting any additional research for updated addresses based on undeliverable Materials.

52.     Although the FBG Debtors have made, and will make, every effort to ensure that the Materials as described herein and as approved by the Court are in final form, the FBG Debtors nonetheless request authority to make non-substantive changes to the Disclosure Statement, the Plan, and all the Materials without further order of the Court, including ministerial

---

[9]   For purposes of serving the Solicitation and Non-Voting Packages, the FBG Debtors request that they be authorized to rely on the address information for holders of Claims and Interests (as applicable) in the Voting Classes and Non-Voting Classes as compiled, updated, and maintained by the Voting Agent or, with respect to Roll-Up Claims, First Lien Claims, Second Lien Claims, and ABL Claims, as maintained by the applicable administrative agent, if any, as of the Voting Record Date.

changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and the Materials prior to mailing.

53. The FBG Debtors submit that they have shown good cause for implementing the proposed notice and service procedures and that the proposed Solicitation Packages comply with Bankruptcy Rule 3017(d). Accordingly, the FBG Debtors request the Court's approval of such Solicitation and Voting Procedures and the Solicitation Packages.

**6.      Approval of Notice of Non-Voting Status**

54. In lieu of a Solicitation Package, on or before the Mailing Deadline, the FBG Debtors propose to mail, or cause to be mailed, to holders of Claims in the Unimpaired Non-Voting Classes, and holders of DIP A Claims, the Notice of Non-Voting Status, the Release Opt-In Form (described below in more detail), the Combined Hearing Notice (described below in more detail), and a postage-prepaid return envelope for the Release Opt-In Form (collectively, the "**Non-Voting Packages**"). The Notice of Non-Voting Status, attached to the Proposed Order as **Exhibit 9**, provides (i) notice of the Court's conditional approval of the Disclosure Statement, (ii) notice of filing the Plan, (iii) notice of the holder's non-voting status, (iv) notice of the Release Opt-In Form, and (v) information about how to obtain copies of the Disclosure Statement and the Plan. In addition, the Notice of Non-Voting Status contains the full text of the release, exculpation, and injunction provisions set forth in Article XIII of the Plan. The Notice of Non-Voting Status advises that holders of Claims in the Unimpaired Non-Voting Classes, and holders of DIP A Claims will only be bound by the Third-Party Releases in Section 13.5(b) of the Plan if they timely, properly, and affirmatively opt in to the grant of Third-Party Releases, except as otherwise provided in the Plan. Additionally, as outlined above, holders of DIP A Claims will receive the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice.

55. With respect to Class 9 (Intercompany Claims) and Class 10 (FBG Debtor Interests) the FBG Debtors request a waiver of any requirement to serve Materials or any other type of notice in connection with solicitation of the Plan because such Claims are held by plan proponents or controlled by plan proponents and are therefore conclusively presumed to accept the Plan.

56. The FBG Debtors submit that the above-described notices and procedures, including the Non-Voting Packages, with respect to Non-Voting Classes provide appropriate notice to holders of Claims and Interests in the Non-Voting Classes, and therefore respectfully request that the Court approve them.

### 7. Approval of Opt-In Release Procedures

#### a. Voting Classes

57. Paragraph 40 of the Complex Case Procedures provide that:

> "If a proposed plan seeks consensual pre- or post-petition releases with respect to claims that creditors may hold against non-debtor parties, then a ballot must be sent to creditors entitled to vote on the proposed plan and notices must be sent to non-voting creditors and parties-in-interest. The ballot and the notice must inform the creditors of such releases and provide a box to check to indicate assent or opposition to such consensual releases together with a method for returning the ballot or notice."

Complex Case Procedures ¶ 40.

58. As described above, the FBG Debtors propose to mail the Ballots to all holders of Claims in the Voting Classes, which will contain, among other things, (i) the release and exculpation language contained in the Plan and (ii) a box for a holder that votes to reject the Plan, or does not vote to accept or reject the Plan, to check to opt in to the Third-Party Releases contained in Section 14.5(b) of the Plan. Holders of Claims in the Voting Classes that do not timely, properly, and affirmatively elect to opt in to the Third-Party Releases, will not be Releasing Parties, except as otherwise provided in the Plan.

### b.      Unimpaired Non-Voting Classes and DIP A Claims

59.      The Debtors proposes to mail, or cause to be mailed, in compliance with Paragraph 40 of the Complex Case Procedures, a Release Opt-In Form, substantially in the form attached to the Proposed Order as **Exhibit 10**, to holders of Claims in the Unimpaired Non-Voting Classes and holders of DIP A Claims.

60.      The Release Opt-In Form (i) contains the full text of the release provisions set forth in Article XIII of the Plan and advises the recipients that they will only be bound by the Third-Party Releases if they timely, properly, and affirmatively choose to opt in by completing the Release Opt-In Form, except as otherwise provided in the Plan, and (ii) provides detailed instructions to the recipient regarding the manner in which such recipient can submit their election to opt in to the Third-Party Releases.

61.      The FBG Debtors propose that holders of Claims in the Unimpaired Non-Voting Classes and holders of DIP A Claims that choose to opt in to the Third-Party Releases may do so by submitting their Release Opt-In Form in the return envelope provided or otherwise by: (i) by first-class mail; (ii) by overnight courier; (iii) by hand delivery; or (iv) via the Online Portal,[10] each in accordance with the instructions included on the Release Opt-In Form, so that (in each instance) their opt-in election is actually received by the Voting Agent no later than the Release Opt-In Deadline of July 20, 2026 at 5:00 p.m. (Central Time)..

62.      The FBG Debtors submit that the Release Opt-In Form satisfies the requirements of Paragraph 40 of the Complex Case Procedures regarding consensual releases

---

[10]    The Release Opt-In Form includes information on how parties can opt in electronically via the Online Portal. An encrypted opt in data and audit trail will be created through the electronic submission process and become part of the record of any opt in election submitted in this manner. Additionally, the parties' electronic signature will be deemed to be legally valid and effective immediately. For the avoidance of doubt, the Online Portal is the sole method for holders of DIP A Claims and Claims in Unimpaired Non-Voting Classes to transmit opt in elections electronically.

against non-debtor parties and, therefore, respectfully request that the Court approve the Release Opt-In Form and procedures for holders of Claims to opt in to being bound by Third-Party Releases provided for in the Plan.

## 8. Conditional Disclosure Statement Hearing and Combined Hearing Notice

63. Pursuant to Bankruptcy Rule 3017(d), notice of a plan confirmation objection deadline and hearing must be provided to all creditors and equity security holders in accordance with Bankruptcy Rule 2002 and Bankruptcy Local Rule 2002-1. Bankruptcy Rule 2002 requires notice to, among others, all creditors, indenture trustees, and equity security holders of the time set for filing objections to, and the hearing to consider confirmation of, a plan. In addition, Bankruptcy Rule 2002(c)(3) provides that if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan confirmation notice must include, in conspicuous language, a statement that the plan proposes an injunction, a brief description of the nature of the injunction, and identification of the entities that would be subject to such injunction. *See* Fed. R. Bankr. P. 2002(c)(3).

64. In accordance with the foregoing, the Debtors propose to provide the parties entitled to notice pursuant to Bankruptcy Rules 2002 and 3017 and Bankruptcy Local Rule 2002-1, including, but not limited to, holders of Claims in the Voting Classes and Non-Voting Classes, holders of Administrative Expense Claims, and Preference Settlement Eligible Creditors, subject to the exceptions set forth above, a copy of (i) the Conditional Disclosure Statement Hearing Notice, which provides notice of (a) the filing of the Plan, the Disclosure Statement, and this Motion, (b) the scheduling of the Conditional Disclosure Statement Hearing, (c) the Voting Record Date, and (d) information on filing a Proof of Claim or otherwise obtaining documents from the bankruptcy docket; and (ii) a copy of the Combined Hearing Notice, which sets forth (a) a QR code which provides access to the Plan, Disclosure Statement, and related documents,

(b) instructions on how to request a USB flash drive containing, or paper copies of, the Plan, Disclosure Statement and related documents, (c) the procedures for filing a Rule 3018 Motion and the Rule 3018 Motion Deadline, (d) the Voting Deadline, Combined Objection Deadline, Consent Program Opt-In Deadline, and Preference Settlement Opt-In Deadline, (e) procedures for filing objections and responses to confirmation of the Plan, (f) the time, date, and place for the Combined Hearing, and (g) information about the Plan's release and injunction provisions in compliance with Bankruptcy Rule 2002(c)(3).

65.     The Debtors propose completing service of the Conditional Disclosure Statement Hearing Notice within two business days from the date of the filing of the Motion via e-mail or first-class mail.  The Debtors propose completing service of the Combined Hearing Notice via e-mail or first-class mail within the Mailing Deadline.  The Debtors submit that such notice is sufficient and appropriate under the circumstances of these chapter 11 cases.

66.     The Debtors further request that this Court authorize the Debtors, to give supplemental publication notice of the Combined Hearing, as soon as reasonably practicable following entry of the Proposed Order once in the *New York Times*, as well as in one or more local or foreign newspapers, trade journals, or similar publications other publications as the Debtors deem appropriate.

67.     The Debtors submit that the foregoing notice procedures comply with all notice requirements under Bankruptcy Rules 3017(d) and 2002.  Accordingly, the Debtors request that the Court find that such notice is due and proper and no further notice is necessary.

33

**Administrative Expense Claims Consent Program Notice and Opt-In Procedures**

A. **Approval of Consent Program Opt-In Form and Consent Program Opt-In Procedures**

68.  In light of the amount of secured, administrative, and priority claims against the FBG Debtors' estates, as well as the forecasted timeline for the FBG Debtors to monetize and collect on their remaining assets (including significant litigation claims), the FBG Debtors anticipate that there will be a significant executory period between the Confirmation Date of the Plan and the Effective Date of the Plan.  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, (i) Cash in an amount equal to the Allowed amount of such Claim, or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

69.  Accordingly, to accelerate Cash payments to consenting holders of Allowed Administrative Expense Claims, the Plan provides for a compromise whereby holders of Allowed Administrative Expense Claims that timely, properly, and affirmatively opt-in to the Administrative Expense Claims Consent Program pursuant to the Consent Program Opt-In Form will have their Administrative Expense Claims deemed Allowed in an amount equal to 50% of the Reconciled Amount (as defined below) of their claims (the "**Settled Administrative Expense Claim**") and will receive distributions on account of their Class 3 Litigation Trust Interests in accordance with the Litigation Trust Waterfall (collectively, the "**Administrative Expense Claims Consent Program**").  The Administrative Expense Claims Consent Program will be solicited and implemented post-confirmation of the Plan.

70.     If the Plan is confirmed, following the Confirmation Date, the FBG Debtors will send Consent Program Opt-In Forms pursuant to which the FBG Debtors seek the agreement of such holder to the treatment afforded to such holder under the Administrative Expense Claims Consent Program.  Holders of (i) Professional Fee Claims; (ii) DIP A Claims; (iii) Roll-Up Claims; (iv) Intercompany Claims; or (v) Priority Tax Claims, will not receive a Consent Program Opt-In Form and may not participate in the Administrative Expense Claims Consent Program.

71.     To participate in the Administrative Expense Claims Consent Program, a holder must submit its opt-in election on the Consent Program Opt-In Form by the Consent Program Opt-In Deadline which is the date that is sixty (60) days after the Confirmation Date.  To the extent a holder of an Allowed Administrative Expense Claim timely, properly, and affirmatively opts in to the Administrative Expense Claims Consent Program, such holder consents to treatment under the Plan in full and final satisfaction, compromise, settlement, and release of its Administrative Expense Claim and will (i) be holder of a Settled Administrative Expense Claim in the amount listed on such holder's Consent Program Opt-In Form, and (ii) receive distributions from the Litigation Trust in accordance with the Litigation Trust Waterfall set forth in Section 6.6 of the Plan, until such holder has received distributions equal to the Allowed amount of its Settled Administrative Expense Claim.

72.     Under the Litigation Trust Waterfall, once aggregate distributions from the Litigation Trust exceed the Second Return Threshold ($350 million), 16% of distributable proceeds will be shared with holders of Class 3 Litigation Trust Interests and holders of Settled Administrative Expense Claims, Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims.  Those proceeds will be distributed to holders of Settled Administrative Expense Claims pro rata based on the aggregate amount of Allowed Settled Administrative Expense

Claims, until each such holder has received distributions equal to the Allowed amount of its Settled Administrative Expense Claim.  Following payment in full of all Settled Administrative Expense Claims, but prior to repayment of Roll-Up Claims, First Lien Claims, Second Lien Claims, and General Unsecured Claims, other holders of Allowed Administrative Expense Claims who did not opt-in to the Administrative Expense Claims Preference Settlement, will share in distributable proceeds of the Litigation Trust.  Accordingly, opting in to the Administrative Expense Claims Consent Program entitles holders to receive distributions on account of Settled Administrative Expense Claims under the Litigation Trust Waterfall on an accelerated basis.

     1.     **Form and Notice of Administrative Expense Claims Consent Program Materials**

     a.     **Consent Program Opt-In Form**

73.     The Consent Program Opt-In Form contains (i) a detailed description of the Administrative Expense Claims Consent Program, (ii) the amount of a holder's Administrative Expense Claim on the Debtor's books and records as of the Administrative Claims Record Date (the "**Reconciled Amount**"), (iii) the amount of the holder's Settled Administrative Expense Claim, and (iv)  detailed instructions on how to properly fill out the Consent Program Opt-In Form, including instructions on how to contact the Claims Ombudsman if holder of the Consent Program Opt-In Form disagrees with the Reconciled Amount listed on the holder's Consent Program Opt-In Form.  The FBG Debtors further propose that the Consent Program Opt-In Form must be timely and properly completed and returned either by (i) delivering the Consent Program Opt-In Form to the Voting Agent or (ii) submitting the Consent Program Opt-In Form by electronic, online transmission through the Online Portal, each in accordance with Consent Program Opt-In Procedures.

74. The FBG Debtors' proposed Consent Program Opt-In Procedures provide eligible holders of Administrative Expense Claims ample opportunity and clear instructions to timely, properly, and affirmatively opt in to the Administrative Expense Claims Consent Program. The use of the Consent Program Opt-In Form to facilitate participation in the Administrative Expense Claims Consent Program is similar to various other administrative claim settlement programs that were approved by the bankruptcy courts in a number of districts which have permitted holders of administrative expense claims under section 503 to accept less than full satisfaction of such holders' claims in exchange for accelerated payment of those claims. *In re Conn's Inc.*, Case No. 24-33357 (AP) (Bankr. S.D. Tex. Apr. 15, 2025) (ECF No. 1656) (approving accelerated payment procedures whereby each holder of an administrative expense claim could opt in by providing written notice to the debtors to receive 30% of its claim on an accelerated basis as full and final satisfaction of the holder's administrative expense claim); *In re Southern Foods Group, LLC*, Case No. 19-36313 (DRJ) (Bankr. S.D. Tex. July 21, 2020) (ECF No. 2724) (authorizing an administrative claims consent program whereby each administrative claimant could affirmatively opt in to receive accelerated cash distributions in exchange for irrevocably reducing its reconciled administrative claim); *In re Sears Holdings Corp.*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Oct. 15, 2019) (ECF No. 5370) (confirming the debtors' chapter 11 plan and approving an administrative expense claims consent program whereby holders of administrative expense claims that affirmatively opted in were entitled to receive accelerated payment of their claim through a pro rata share from an initial distribution pool that capped such holders' allowed claims); *See, e.g., In re Teligent, Inc.*, Case No. 01-12974 (SMB) (Bankr. S.D.N.Y. July 11, 2002) (ECF No. 1228) (approving consent forms mailed to each administrative

creditor permitting such creditors to agree to opt in to a convenience class and accept the lesser of $3,000 or the allowed amount of the claim).

### b.        Administrative Claims Record Date

75.        To identify and establish the universe of holders of Administrative Expense Claims eligible to participate in the Administrative Expense Claims Consent Program, the Debtors request that the Court set July 10, 2026 as the date for determining which holders of Administrative Expense Claims are entitled to receive the Consent Program Opt-In Form.

76.        The population of holders of Administrative Expense Claims entitled to receive the Consent Program Materials and the Consent Program Opt-In Form will be determined by the applicable FBG Debtors' books and records, the FBG Debtors' Schedules, and Proofs of Claim filed against the applicable FBG Debtor by the Administrative Claims Record Date.  Any holder of a Claim who believes that they are entitled to receive a Consent Program Opt-In Form may email Kroll at FirstBrandsBallots@ra.kroll.com with "Consent Program Opt-In Form Request" in the subject line prior to the Consent Program Opt-In Deadline.

77.        With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the Debtors propose that the transferee be entitled to receive Consent Program Materials and the Consent Program Opt-In Form, and, if the holder of such claim is otherwise entitled to opt in to the Administrative Expense Claims Consent Program, such holder may submit a Consent Program Opt-In Form on account of such Claim only if (i) all actions necessary to transfer such Claim are completed by the Administrative Claims Record Date or (ii) by the Administrative Claims Record Date, the transferee files (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  Further, in the event an Administrative Expense Claim is transferred after the Administrative Claims Record Date, the transferee of such Administrative Expense Claim shall be

bound by any election on the Consent Program Opt-In Form made by the holder of such Administrative Expense Claim as of the Administrative Claims Record Date pursuant to the Consent Program Opt-In Procedures.

78.     The Administrative Claims Record Date complies with Bankruptcy Rule 3017(d) and, therefore, should be approved.

### 2.     Approval of the Consent Program Materials and Procedures for Distribution Thereof

79.     To ensure that each eligible administrative expense claimant has sufficient information to identify whether to participate in the Administrative Expense Claims Consent Program, the FBG Debtors propose to mail, or cause to be mailed, Consent Program Materials within the Mailing Deadline, to holders of Administrative Expense Claims.

80.     Consent Program Materials shall contain copies of:

(a)     the Proposed Order, as entered by the Court (without attachments);

(b)     the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;

(c)     the Combined Hearing Notice; and

(d)     the Solicitation and Voting Procedures.

81.     To reduce costs and the impact on the environment, the FBG Debtors propose to make the Disclosure Statement, the Plan, and the Proposed Order (without attachments, except as otherwise provided herein) easily, seamlessly, and freely available in electronic format (via a QR code included in the Combined Hearing Notice) on the Online Portal instead of sending printed hard copies.  Only the Combined Hearing Notice will be provided in paper format. Moreover, the Plan and the Disclosure Statement will be available at no charge via the internet at the Online Portal.  However, the FBG Debtors propose that if service by QR code imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (*e.g.*, the

party does not own or have access to a smartphone), such party may request a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and Proposed Order (without attachments, except as otherwise provided herein) by contacting Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Upon receipt of such request, in a timely manner, the Debtors will provide such party with a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and the Proposed Order (without attachments, except as otherwise provided herein) at no cost to the party.

82.     Additionally, the FBG Debtors request that the Court not require the FBG Debtors to distribute Consent Program Materials to any holder of an Administrative Expense Claim to the extent such holder is otherwise entitled to receive those materials as part of the Solicitation Packages, Non-Voting Packages, or Preference Settlement Materials, as applicable.

83.     Following the Confirmation Date, the FBG Debtors propose to mail, or cause to be mailed, the Consent Program Opt-In Form to holders of Administrative Expense Claims no later than three (3) business days after entry of the Confirmation Order.

84.     The Debtors propose that the Consent Program Opt-In Form be submitted and tabulated in accordance with the following procedures (the "**Consent Program Opt-In Procedures**"):

| Administrative Claims Record Date | • July 10, 2026. |
|---|---|
| Consent Program Opt-In Deadline | • All Consent Program Opt-In Forms must be timely and properly completed and returned so as to be **actually received** by the Voting Agent **by 5:00 p.m. (Central Time) on or before the date that is** |

| | |
|---|---|
| | **sixty (60) days following the Confirmation Date** either by (i) delivering the Consent Program Opt-In Form to the Voting Agent in the return envelope provided or otherwise by first-class mail, hand delivery, or overnight courier or (ii) submitting the Consent Program Opt-In Form by electronic, online transmission through the Online Portal (as defined herein), each in accordance with the instructions included on the Consent Program Opt-In Form. |
| **Tabulation** | • A holder of an Administrative Expense Claim that properly, timely, and affirmatively opts in to the Administrative Expense Claims Consent Program will be the holder of Settled Administrative Expense Claim under the Plan and will: (i) have its Administrative Expense Claim deemed Allowed in the amount of such holder's Settled Administrative Expense Claim; and (ii) be entitled to receive distributions from the Litigation Trust in accordance with the Litigation Trust Waterfall, including beginning to share in 16% of distributable proceeds following aggregate distributions of $350 million, with holders of Settled Administrative Expense Claims receiving distributions first within Class 3, pro rata based on the aggregate amount of Allowed Settled Administrative Expense Claims, until each such Holder has received distributions equal to the Allowed amount of its Settled Administrative Expense Claim.<br><br>• Holders of Administrative Expense Claims that do not properly, timely, and affirmatively opt in to the Administrative Expense Claims Consent Program, will only begin to receive distributions from the Litigation Trust following payment in full of all Settled Administrative Expense Claims, but prior to repayment of Roll-Up Claims, First Lien Claims, Second Lien Claims, and General Unsecured Claims.<br><br>• A holder of Administrative Expense Claims against more than one FBG Debtor that timeline and properly submits a Consent Program Opt-In Form shall have its election to affirmatively opt in counted with respect to each such FBG Debtor.<br><br>• The FBG Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Consent Program Opt-In Forms, which determination—absent a prior ruling of the Court—will be final and binding on all parties. |

85.     The Debtors submit that they have shown good cause for implementing the proposed notice and service procedures.  The Debtors believe that the foregoing procedures will

provide a fair and equitable election process and request that the Court approve the Consent Program Opt-In Procedures.

**Preference Settlement Notice and Opt-In Procedures**

86.     Pursuant to the Plan Settlement and Plan, Trade Creditors, Supply Chain Financers, and Factors (each, a "**Preference Settlement Eligible Creditor**" and collectively, the "**Preference Settlement Eligible Creditors**") will be given the opportunity in connection with solicitation of the Plan to opt in to the Preference Settlement.

87.     Trade Creditors, Supply Chain Financers, and Factors that timely, properly, and affirmatively opt in to the Preference Settlement on the Preference Settlement Opt-In Form agree to (i) participate in, and receive the benefits of, the Preference Settlement, (ii) be a Releasing Party and grant the releases contained in Section 13.5(b) of the Plan, and (iii) contribute all of their Direct Creditor Claims to the Litigation Trust (each a "**Preference Settlement Electing Creditor**" and collectively, the "**Preference Settlement Electing Creditors**").  Trade Creditors that are Preference Settlement Electing Creditors will be released from Preference Actions under the Plan, and Supply Chain Financers and Factors that are Preference Settlement Electing Creditors will receive the benefit of certain procedures, including the Modified New Value Elements, with respect to Preference Actions asserted against them, as described in more detail in Section 6.12 of the Plan.

88.     Preference Settlement Eligible Creditors that fail or decline to timely opt in to the Preference Settlement will not be Preference Settlement Electing Creditors and will not receive the benefits of the Preference Settlement.  Specifically, to the extent a Preference Settlement Eligible Creditor is a (i) Trade Creditor, such Preference Settlement Eligible Creditor will not be released from Preference Actions under the Plan, or (ii) Supply Chain Financer or

Factor, such Preference Settlement Eligible Creditor will not receive the benefit of the Modified New Value Elements, as described in more detail in Section 6.12(e) of the Plan.

89.     Trade Creditors, Supply Chain Financers, and Factors have until forty-five (45) days following the Confirmation Date to opt in to the Preference Settlement; *provided* that if a Preference Action is brought against a Trade Creditor that did not timely opt in, such Trade Creditor has an additional thirty (30) days after service of the Preference Action to opt in.

**A.     Form and Notice of Preference Settlement Opt-In Form**

90.     The Preference Settlement Opt-In Form contains (i) a detailed description of the Preference Settlement, (ii) the applicable release, exculpation, and indemnification language contained in Article XIII the Plan, (iii) information on the consequences of opting in to the Preference Settlement and of abstaining from opting in to the Preference Settlement, and (iv) detailed instructions on how to properly fill out the Preference Settlement Opt-In Form, including notice of the Preference Settlement Opt-In Deadline.

91.     The FBG Debtors further propose that the Preference Settlement Opt-In Form must be timely and properly completed and returned either by (i) delivering the Preference Settlement Opt-In Form to the Voting Agent or (ii) submitting the Preference Settlement Opt-In Form by electronic, online transmission through the Online Portal, each in accordance with the Preference Settlement Opt-In Procedures.

92.     The Debtors' proposed Preference Settlement Opt-In Procedures and Preference Settlement Opt-In Form provide Preference Settlement Eligible Creditors ample opportunities and clear instructions to timely, properly, and affirmatively elect to participate in the Preference Settlement.  The Preference Settlement Opt-In Form and Preference Settlement Opt-In Procedures (including the Preference Settlement Opt-In Deadline) are adequate to solicit opt-in elections from Preference Settlement Eligible Creditors with respect to the Preference Settlement

and to otherwise inform Preference Settlement Eligible Creditors regarding their rights and available choices with respect to the Preference Settlement.

93.     The Debtors submit that the Preference Settlement Opt-In Form should be approved.

**B.      Preference Settlement Record Date**

94.     The Debtors request that the Court set June 15, 2026 as the Preference Settlement Record Date for the purpose of determining which creditors are Preference Settlement Eligible Creditors entitled to receive Preference Settlement Materials.

95.     The population of Preference Settlement Eligible Creditors will be determined by the applicable FBG Debtors' books and records, the FBG Debtors' Schedules, and Proofs of Claim filed against the applicable FBG Debtor by the Preference Settlement Record Date.  Any holder of a Claim who believes that they are entitled to receive a Preference Settlement Opt-In Form may email Kroll at FirstBrandsBallots@ra.kroll.com with "Preference Settlement Opt-In Form Request" in the subject line prior to the Preference Settlement Opt-In Deadline.

96.     With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the Debtors propose that the transferee be entitled to receive Preference Settlement Materials, on account of such Claim only if (i) all actions necessary to transfer such Claim are completed by the Preference Settlement Record Date or (ii) by the Preference Settlement Record Date, the transferee files (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer. Further, the Debtors request that, in the event a Preference Settlement Eligible Creditor's Claim is transferred after the Preference Settlement Record Date, the transferee of such Claim shall be bound by any election on the Preference Settlement Opt-In Form made by the Preference

Settlement Eligible Creditor as of the Preference Settlement Record Date pursuant to the procedures described herein.

**C.     Approval of the Preference Settlement Materials and Procedures for Distribution Thereof**

97.     To ensure that each Preference Settlement Eligible Creditor has sufficient information to complete the Preference Settlement Opt-In Form, the Debtors propose to mail, or cause to be mailed, Preference Settlement Materials within the Mailing Deadline to Preference Settlement Eligible Creditors.  The Preference Settlement Materials shall contain copies of:

(a)     the Proposed Order, as entered by the Court and without attachments;

(b)     the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;

(c)     the Combined Hearing Notice

(d)     the Solicitation and Voting Procedures;

(e)     Creditors' Committee Position Letter;

(f)     the Preference Settlement Opt-In Form; and

(g)     a postage-prepaid return envelope.

98.     To reduce costs and the impact on the environment, the FBG Debtors propose to make the Disclosure Statement, the Plan, and the Proposed Order (without attachments, except as otherwise provided herein) freely available in electronic format (via a QR code included in the Combined Hearing Notice) on the Online Portal instead of sending printed hard copies.  Only the Preference Settlement Opt-In Form, the Combined Hearing Notice, and a return envelope will be provided in paper format.  Moreover, the Plan and the Disclosure Statement will be available at no charge via the internet at the Online Portal.  However, the FBG Debtors propose that if service by QR code imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (*e.g.*, the party does not own or have access to a smartphone), such party

45

may request a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and Proposed Order (without attachments, except as otherwise provided herein) by contacting Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Upon receipt of such request, in a timely manner, the Debtors will provide such party with a USB flash drive containing, or a paper copy of the Plan, Disclosure Statement, and the Proposed Order (without attachments, except as otherwise provided herein) at no cost to the party.

99.     Additionally, the FBG Debtors request that the Court not require the FBG Debtors to distribute Preferences Settlement Materials to Preference Settlement Eligible Creditors to the extent such creditors are otherwise entitled to receive those materials as part of the Solicitation Packages, Non-Voting Packages, or Consent Program Materials, as applicable. D

100.     The FBG Debtors propose that the Preference Settlement Opt-In Form be submitted, collected, and processed in accordance with the following procedures (the "**Preference Settlement Procedures**"):

| Preference Settlement Record Date | <ul><li>June 15, 2026.</li></ul> |
|---|---|
| Preference Settlement Opt-In Deadline | <ul><li>All Preference Settlement Opt-In Forms must be timely and properly completed and returned so as to be **actually received** by the Voting Agent by **5:00 p.m. (Central Time) on or before the date that is forty-five (45) days following the Confirmation Date**, either by (i) delivering the Preference Settlement Opt-In Form to the Voting Agent in the return envelope provided or otherwise by first-class mail, hand delivery, or overnight courier or (ii) submitting the Preference Settlement Opt-In Form by electronic, online transmission through the Online Portal, each in</li></ul> |

|  | accordance with the instructions included on the Preference Settlement Opt-In Form.  If a Preference Action is brought against a Trade Creditor that did not timely opt in to the Preference Settlement, such Trade Creditor shall have an additional thirty (30) days following service of the Preference Action to opt in to the Preference Settlement. |
|---|---|
| **Collection and Processing of Preference Settlement Opt-In Forms** | • A Preference Settlement Eligible Creditor that properly, timely, and affirmatively elects to participate in the Preference Settlement will be a Preference Settlement Electing Creditor under the Plan and will: (i) grant the releases contained in Section 13.5(b) of the Plan; (ii) contribute its Direct Creditor Claims to the Litigation Trust; and (iii) participate in, and receive the benefit of, the Preference Settlement, including, if such Preference Settlement Electing Creditor is (a) a Trade Creditor, it will be released from Preference Actions and (b) a Supply Chain Financer or a Factor, it will receive the benefit of the Modified New Value Element, as described in more detail in Section 6.11(e) of the Plan. Preference Settlement Eligible Creditors that do not properly, timely, and affirmatively elect to participate in the Preference Settlement will not be Preference Settlement Electing Creditors for purposes of the Plan, will not contribute Direct Creditor Claims to the Litigation Trust, will not grant the releases contained in Section 13.5(b) of the Plan, and therefore, will not receive the benefit of the Preference Settlement. Failure to properly follow the instructions on, and timely submit, the Preference Settlement Opt-In Form may result in the Preference Settlement Opt-In Form not being processed. <br><br> • The FBG Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Preference Settlement Opt-In Forms, which determination—absent a prior ruling of the Court—will be final and binding on all parties. |

101. The FBG Debtors submit that they have shown good cause for implementing the proposed notice and service procedures.  The FBG Debtors believe that the foregoing procedures will provide a fair and equitable election process and request that the Court approve the Preference Settlement Procedures.

### Confirmation Schedule and Procedures

**A.      Confirmation Schedule Complies with Applicable Bankruptcy Law**

102.    The Debtors seek a Combined Hearing to consider final approval of the Disclosure Statement and the Plan.  Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure statement, the court . . . may fix a date for the hearing on confirmation" of a chapter 11 plan. Fed. R. Bankr. P. 3017(c).  Section 105(d)(2)(B)(vi) of the Bankruptcy Code provides that the Court may combine the hearing on approval of a disclosure statement with the hearing on confirmation of a chapter 11 plan.  Notably, paragraph P of the Complex Case Procedures provides that "[c]ontemporaneously with the filing of a disclosure statement and proposed plan, a plan proponent may file a motion requesting . . . the scheduling of a joint hearing to consider final approval of the proposed disclosure statement."

103.    The Debtors submit that holding a Combined Hearing is appropriate and respectfully request that the Court schedule the Combined Hearing on July 28, 2026, or as soon thereafter as is practicable in light of the Court's calendar.  The Combined Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court.  The Debtors request that the Court find that the date for the Combined Hearing is in compliance with the Bankruptcy Rules and the Bankruptcy Local Rules.

104.    A Combined Hearing in these chapter 11 cases will promote judicial economy and reduce administrative expenses by allowing the Debtors to quickly confirm the Plan, preserve the value of the Debtors' estates, and allow the Litigation Trustee to monetize remaining assets.

### B.     Confirmation Objection Procedures

105.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  Fed. R. Bankr. P. 3020(b)(1). Bankruptcy Rule 2002(b) provides that parties must receive at least twenty-eight (28) days' notice of the deadline for filing objections to confirmation.  Fed. R. Bankr. P. 2002(b).  In view of the Debtors' proposed solicitation schedule outlined herein—which provides for a Mailing Deadline no later than three (3) business days after entry of the Proposed Order or as soon as reasonably practical thereafter—the Debtors request that the Court set July 20, 2026 at 5:00 p.m. (Central Time) as the Combined Objection Deadline, giving parties' 38 days' notice of the Combined Objection Deadline from the date the FBG Debtors' will request the Proposed Order is entered. The proposed Combined Objection Deadline would also provide Voting Creditors and other parties in interest with 28 days between the date of filing and serving the Plan Supplement and the Voting Deadline and Objection Deadline.

106.     The Debtors request that objections and responses, if any, to the adequacy of the Disclosure Statement and confirmation of the Plan must:  (i) be in writing; (ii) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any order of the Court; (iii) set forth the name of the objecting party and the nature and amount of claims or interests held or asserted by the objecting party against the Debtors' estates or property; and (iv) provide the basis for the objection and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection.  The Debtors request that registered users of the Court's case filing system be required to electronically file their objections and responses on or before the Combined Objection Deadline and that all other parties in interest be required to file their objections and responses in writing, together with proof of service thereof, with the United States Bankruptcy Court Clerk's Office, United States Courthouse, 515 Rusk Avenue, Courtroom 402,

4th Floor, Houston, Texas 77002, on or before the Combined Objection Deadline.

107.     The Debtors further request that they (and other parties in support of the Plan) be authorized to file a brief in support of confirmation of the Plan, approval of the Plan Settlement, and in reply to any objections to the adequacy of the Disclosure Statement on a final basis or confirmation of the Plan on or before July 27, 2026.

108.     The Debtors respectfully request that the Court approve the procedures for filing objections to the adequacy of the Disclosure Statement on a final basis and the confirmation of the Plan and replies thereto and find that such procedures comply with Bankruptcy Rules 2002 and 3020 and provide due process to all of the Debtors' stakeholders.

**C.     Proposed Deadline for Filing Plan Supplement Is Appropriate**

109.     Pursuant to the Plan, the FBG Debtors intend to file a supplement to the Plan (the "**Plan Supplement**"), containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, as may be amended, modified, or supplemented from time to time in accordance with the terms the Plan, the Bankruptcy Code, and the Bankruptcy Rules, which may include: (i) the Schedule of Retained Causes of Action; (ii) the disclosure of the identity of the Wind Down Administrator; (iii) the disclosure of the identity of the Claims Ombudsman; (iv) the Litigation Trust Agreement, any separate Litigation Trust Funding Agreement(s), and the form of any backstop commitment letter with the Litigation Trust Backstop Parties; (v) a non exhaustive schedule of Specified Non-Released Parties; and (vi) any other agreement, instrument, schedule, exhibit, or document designated by the FBG Debtors (with the consent of the Ad Hoc Group SteerCo and the Creditors' Committee (such consent not to be unreasonably withheld, conditioned, or delayed)) as a Plan Supplement document.  Through the Confirmation Date, the FBG Debtors shall have the right to amend any schedules, exhibits, or amendments to any of the documents contained in, and exhibits to, the Plan Supplement.

110. The Debtors request that the Court authorize the FBG Debtors to file the Plan Supplement with the Court by June 22, 2026, which is 28 days before the Combined Objection Deadline (the "**Plan Supplement Filing Deadline**").

111. In accordance with the foregoing, the Debtors propose to serve the parties entitled to notice pursuant to Bankruptcy Rules 2002 and 3017 and Bankruptcy Local Rule 2002-1, including, including, but not limited to, holders of Claims in the Voting and Non-Voting Classes, Preference Settlement Eligible Creditors, and holders of Administrative Expense Claims, subject to the exceptions set forth above, a copy of the Plan Supplement Notice, substantially in the form attached to the Proposed Order as **Exhibit 17**, which sets forth (a) notice of the filing of the Plan Supplement, (b) a QR code which provides access to the Plan Supplement and related documents including the Plan and Disclosure Statement, (c) instructions regarding how to request a USB flash drive containing, or paper copies of, the Plan, Plan Supplement, and Disclosure Statement, (d) the proposed Voting Deadline, Combined Objection Deadline, and Preference Settlement Opt-In Deadline, (e) procedures for filing objections and responses to confirmation of the Plan, (f) the time, date, and place for the Combined Hearing, (g) procedures for attending or otherwise participating in the Combined Hearing.

112. The FBG Debtors propose completing service of the Plan Supplement Notice within three (3) business days from the date of the filing of the Plan Supplement via e-mail or first-class mail.

113. The FBG Debtors submit that the Plan Supplement Filing Deadline is prudent and attainable under the circumstances of these chapter 11 cases. The FBG Debtors further submit that the Plan Supplement Notice is sufficient and appropriate under the circumstances of

these chapter 11 cases.  Thus, the FBG Debtors respectfully request that the Court approve the Plan Supplement Filing Deadline and the Plan Supplement Notice.

## Reservation of Rights

114.    Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) a waiver of the obligation of any party in interest to file a Proof of Claim, (v) an agreement or obligation to pay any claims, (vi) a waiver of any claims or causes of action that may exist against any creditor or interest holder, or (vii) an approval, assumption, adoption, or rejection of any executory contract or unexpired lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve all of their rights with respect to the foregoing matters.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

## Emergency Consideration

115.    The Debtors respectfully request emergency consideration of this Motion no later than June 12, 2026 given that (i) this is the date the Court has set the Motion to Convert for hearing and (ii) as set forth in the Moore Declaration,[11] support from the Debtors' secured lenders of the plan process is predicated a budget and proposed confirmation timeline that allows

---

[11]    "**Moore Declaration**" refers to the *Declaration of Charles M. Moore in Support of (I) the Proposed Confirmation Schedule and (II) the Debtors' Objection to United States Trustee's Motion to Convert or Dismiss Pursuant to 11 U.S.C. § 1112(b)* (Docket No. 2911).

the Debtors to confirm the Plan by the end of July 2026. These cases stand at a crossroads: the Motion to Convert seeks conversion to chapter 7 and the FBG Debtors' proposed Plan represents the only viable path to preserve and maximize value for stakeholders in chapter 11. The FBG Debtors request that this Motion be heard with the Motion to Convert scheduled for June 12, 2026 so that the Court may address the threshold question of whether these cases should proceed in chapter 11 on a path to confirmation of value-maximizing plan of liquidation or immediately convert to chapter 7. Accordingly, emergency consideration of this Motion is appropriate.

## Notice

116. Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: June 6, 2026
      Houston, Texas

*/s/  Clifford W. Carlson*
WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   gabriel.morgan@weil.com
       clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   matt.barr@weil.com
       sunny.singh@weil.com
       andriana.georgallas@weil.com
       kevin.bostel@weil.com
       jason.george@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

**Certificate of Service**

I hereby certify that on June 6, 2026 a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

> _/s/  Clifford W. Carlson_
> Clifford W. Carlson