**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | **Re: Docket No. 2914** |

**NOTICE OF FILING OF REVISED DISCLOSURE STATEMENT MOTION,**
**REVISED DISCLOSURE STATEMENT ORDER, AND RELATED EXHIBITS**

PLEASE TAKE NOTICE THAT, on June 5, 2025, First Brands Group, LLC and certain affiliated Debtors (the "**FBG Debtors**") filed the *Emergency Motion of Debtors for Entry of Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt-In Procedures; (V) Establishing Preference Settlement Notice and Opt-In Procedures; (VI) Establishing Notice and Objection Procedures for Confirmation of Plan, and (VII) Granting Related Relief* (Docket No. 2914) (the "**Joint Disclosure Statement Motion**"), with a proposed order granting the relief requested in the Revised Disclosure Statement Motion attached thereto as Exhibit A (the "**Joint Disclosure Statement Order**").

PLEASE TAKE FURTHER NOTICE THAT a redline of the Joint Disclosure Statement Order marked against the proposed disclosure statement order previously filed at Docket No. 2779 is attached hereto as **Exhibit A.**

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

**PLEASE TAKE FURTHER NOTICE THAT**, the Revised Disclosure Statement Motion and the Revised Disclosure Statement Order are supported by the Ad Hoc Group and the Creditors' Committee (together with the Debtors, the "**Parties**").   The Revised Disclosure Statement Motion and the Revised Disclosure Statement Order are subject to ongoing review and comment by the Parties, and each Party's rights with respect to the Revised Disclosure Statement Motion and the Revised Disclosure Statement Order are fully preserved.

Dated: June 6, 2026
       Houston, Texas

                                        Respectfully submitted,

                                          /s/  Clifford W. Carlson
                                        WEIL, GOTSHAL & MANGES LLP
                                        Gabriel A. Morgan (24125891)
                                        Clifford W. Carlson (24090024)
                                        700 Louisiana Street, Suite 3700
                                        Houston, Texas 77002
                                        Telephone:  (713) 546-5000
                                        Facsimile:  (713) 224-9511
                                        Email:   gabriel.morgan@weil.com
                                                 clifford.carlson@weil.com

                                        -and-

                                        WEIL, GOTSHAL & MANGES LLP
                                        Matthew S. Barr (admitted *pro hac vice*)
                                        Sunny Singh (admitted *pro hac vice*)
                                        Andriana Georgallas (admitted *pro hac vice*)
                                        Kevin Bostel (admitted *pro hac vice*)
                                        Jason H. George (admitted *pro hac vice*)
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007
                                        Email:   matt.barr@weil.com
                                                 sunny.singh@weil.com
                                                 andriana.georgallas@weil.com
                                                 kevin.bostel@weil.com
                                                 jason.george@weil.com

                                        *Attorneys for Debtors*
                                        *and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that on June 6, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

 

 

*/s/  Clifford W. Carlson*
Clifford W. Carlson

**<u>Exhibit A</u>**

**Redline**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIRST BRANDS GROUP, LLC, *et al.*, | § | Case No. 25-90399 (CML) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |

**ORDER (I) SCHEDULING COMBINED HEARING ON
(A) ADEQUACY OF DISCLOSURE STATEMENT AND
(B) CONFIRMATION OF PLAN;, (II) CONDITIONALLY
APPROVING DISCLOSURE STATEMENT AND FORM
AND MANNER OF NOTICE OF CONDITIONAL DISCLOSURE
STATEMENT HEARING;, (III) ESTABLISHING SOLICITATION
AND VOTING PROCEDURES;, (IV) ESTABLISHING ADMINISTRATIVE
EXPENSE CLAIMS CONSENT PROGRAM NOTICE AND
OBJECTION PROCEDURES FOR CONFIRMATION OF PLAN;
OPT-IN PROCEDURES, (V) ESTABLISHING PREFERENCE SETTLEMENT
ELECTION
SETTLEMENT NOTICE AND OPT-IN PROCEDURES,
(VI) ESTABLISHING NOTICE AND OBJECTION PROCEDURES
PROCEDURES;FOR CONFIRMATION OF PLAN, AND (VII) GRANTING RELATED
RELIEF**

Upon the motion, dated ~~April 29~~June 6, 2026 (the "**Motion**"), First Brands Group,

LLC, and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in

possession (collectively, the "**Debtors**"), for entry of an order pursuant to sections 105,  1124,

1125, 1126, and 1128 of the Bankruptcy Code, Rules 2002, 3001, 3016, 3017, 3018, 3020, 6004

and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules

2002-1, 3016-1, 3016-2, and 9013-1(i) of the Bankruptcy Local Rules for the United States

Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

1

Procedures for Complex Chapter 11 Cases in the Southern District of Texas (effective as of September 18, 2024, the "**Complex Case Procedures**"), the Debtors request entry of an order (this "**Order**"), granting the following relief:

**Plan, Disclosure Statement & Related Procedures, Dates/Deadlines and Materials**

i. scheduling a combined hearing (the "**Combined Hearing**") on July ~~2~~28, 2026 ~~to consider the~~ *~~Motion of FBG Debtors for Entry of an Order (I) Approving Global Settlement; (II) Authorizing and Directing Sale and Transfer of Assets in Connection Therewith; (III) Converting Certain Chapter 11 Cases to Chapter 7; and (IV) Granting Related Relief~~* ~~(Docket No. [ ]) (the "~~**~~Global Settlement Motion~~**~~"),~~(subject to the Court's availability) to approve the Disclosure Statement (as defined below) on a final basis~~,~~ and consider confirmation of the *Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. ~~[ ]~~2907) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**");

ii. conditionally[2] approving the *Disclosure Statement for Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. ~~[ ]~~2912) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Disclosure Statement**")[3] as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

iii. approving the form and manner of the notice (the "**Combined Hearing Notice**") of the Combined Hearing, substantially in the form attached hereto as **Exhibit 1**;

iv. establishing ~~June 23~~July 20, 2026 at 5:00 p.m. (Central Time) as the deadline to object to the adequacy of the Disclosure Statement and/or confirmation of the Plan (the "**Combined Objection Deadline**");

v. approving the form and manner of the notice of the filing of the ~~Motion on April 29, 2026~~Plan, the ~~Plan and~~ Disclosure Statement ~~filed in connection therewith~~, and the Motion, the Conditional Disclosure Statement Hearing (defined below), and notice of the FBG Debtors' proposed Voting Record Date (defined below) (the "**Conditional Disclosure Statement Hearing Notice**") substantially in the form attached hereto as **Exhibit ~~12~~16**;

---

[2] The Debtors reserve the right to seek final approval of the Disclosure Statement prior to the Combined Hearing to the extent the hearing to consider approval of the Disclosure Statement is moved to a date after the 28-day objection deadline under Bankruptcy Rule 2002(b).

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

vi.   approving the form and manner of the notice of the filing of the Plan Supplement, and dates and deadlines related to final approval of the Disclosure Statement and confirmation of the Plan (the "**Plan Supplement Notice**") substantially in the form attached hereto as **Exhibit 17**;

### Solicitation and Voting

vii.   ~~vi.~~ establishing ~~May 26~~June 15, 2026 as the record date for the purpose of determining which holders of Claims are entitled to vote on the Plan and receive the applicable notice(s) relating to solicitation and confirmation (the "**Voting Record Date**");

viii.   ~~vii.~~ approving procedures for (a) soliciting, receiving, and tabulating votes to accept or reject the Plan and (b) voting to accept or reject the Plan (the "**Solicitation and Voting Procedures**"), and related deadlines, substantially in the form attached hereto as **Exhibit 2**;

ix.   ~~viii.~~ approving the ballots (the "**Ballots**") that ~~Premier Marketing Group, LLC (the "Plan~~First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG** Debtors") will send to holders of Claims entitled to vote, giving such holders the option to vote to accept or reject the Plan and a box to check to opt in to the Third-Party Releases contained in Section 13.5(b) of the Plan (the "**Third-Party Release Opt-In Election**"), substantially in the forms attached hereto as **Exhibits ~~3-7~~3–8**;

x.   ~~ix.~~ approving the form of notice setting forth, among other things, the procedures for holders of Claims in Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), and Class 5 (Second Lien Claims), and DIP A Claims to certify, elect, and participate in the Litigation Trust (the "**Litigation Trust Participation Notice**"), substantially in the form attached hereto as **Exhibit ~~14~~13**;

xi.   ~~x.~~ approving the form of notice setting forth, among other things, the procedures for holders of ~~Claims in Class 3 (Roll-Up Claims) and~~ DIP A Claims to certify, elect, and participate in the DIP Collateral Trust (the "**DIP Collateral Trust Participation Notice**"), substantially in the form attached hereto as **Exhibit ~~15~~14**;

xii.   ~~xi.~~ finding that the solicitation materials and documents included in the solicitation packages to be sent to holders of Claims entitled to vote to accept or reject the Plan as described in Paragraph 8 herein (the "**Solicitation Packages**") are in compliance with Bankruptcy Rules 2002(b) and 3017(d);

xiii.   ~~xii.~~ approving the form of notice the ~~Plan~~FBG Debtors will send to holders ~~(if any)~~ of Claims in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims) (together, the "**Unimpaired Non-Voting Classes**"), and DIP A Claims (such notice, the "**Notice of Non-Voting Status**"), substantially in the form attached hereto as **Exhibit ~~8~~9**;

3

xiv.    xiii. approving (a) the form to opt in to the Third-Party Releases (the "**Release Opt-In Form**"), substantially in the form attached hereto as **Exhibit 910**, which the PlanFBG Debtors will send to holders of Claims in the Unimpaired Non-Voting Classes that are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan, and holders of DIP A Claims, and (b) June 23July 20, 2026 at 5:00 p.m. (Central Time) as the deadline by which holders of DIP A Claims and holders of Claims in the Unimpaired Non-Voting Classes and DIP A Claims must submit the Release Opt-In Form (the "**Release Opt-In Deadline**");

xv.     xiv. establishing June 23July 20, 2026 at 5:00 p.m. (Central Time) as the deadline by which holders of Claims entitled to vote may vote to accept or reject the Plan (the "**Voting Deadline**");

### Administrative Expense Claims Consent Program

xvi.    approving the form of opt-in the FBG Debtors will send to holders of Administrative Expense Claims for the Administrative Expense Claims Consent Program (as defined herein) (the "**Consent Program Opt-In Form**") substantially in the form attached hereto as **Exhibit 11**;

xvii.   establishing July 10, 2026 as the record date for determining which holders of Administrative Expense Claims are entitled to participate in the Administrative Expense Claims Consent Program and receive the Consent Program Opt-In Form (the "**Administrative Claims Record Date**");

xviii.  approving the form of materials and documents to be sent to holders of Administrative Expense Claims (as provided in Paragraph 33 herein) (the "**Consent Program Materials**");

xix.    approving (a) the Consent Program Opt-In Procedures (as defined herein) and (b) the deadline by which holders of Administrative Expense Claims must submit the Consent Program Opt-In Form of sixty (60) days following the Confirmation Date (the "**Consent Program Opt-In Deadline**");

### Preference Settlement Election Procedures

xx.     xv. approving the form the FBG Debtors will send to Trade Creditors, Supply Chain Financers, and Factors of one or more of the FBG Debtors as of May 26June 15, 2026 (the "ElectionPreference Settlement Record Date") (each, a "**Preference Settlement Eligible Creditor**" and collectively, the "**Preference Settlement Eligible Creditors**") to give those holders an opportunity to participate in the Preference Settlement and to grant releases described therein, (the "**Preference Settlement ElectionOpt-In Form**"), substantially in the form attached hereto as **Exhibit 1012**;

4

xxi.    approving the materials and documents to be sent to Preference Settlement Eligible Creditors (as provided in Paragraph 44 herein) (the "**Preference Settlement Materials**");

xvi.  establishing May 26, 2026 as the Election Record Date for the purpose of determining which creditors are entitled to receive the Preference Settlement Election Form, among related materials (collectively, the "**Election Materials**");

xvii.  approving the Election Materials to be sent to holders of Administrative Expense Claims, Other Secured Claims, Priority Tax Claims, Other Priority Claims, or General Unsecured Claims, against one or more of the FBG Debtors (other than the Plan Debtor) (each, an "**Eligible Creditor**" and collectively, the "**Eligible Creditors**"), including the Preference Settlement Election Form, and the form of notice the Plan Debtor will send to Eligible Creditors (including, for the avoidance of doubt, Preference Settlement Eligible Creditors) (the "**Notice of Eligible Creditor Status**"), substantially in the form attached hereto as **Exhibit 11**, as provided in Paragraph 33 herein;

xxii.    xviii. approving (a) the Preference Settlement Election Procedures (as defined herein) and (b) the deadline by which Preference Settlement Eligible Creditors must submit the Preference Settlement ElectionOpt-In Form, which is on or before 5:00 p.m. (Central Time) on the date that is forty-five (45) days following the EffectiveConfirmation Date (the "**Preference Settlement ElectionOpt-In Deadline**"); *provided* that if a Preference Action is brought against a Trade Creditor that did not timely opt in to the Preference Settlement, such Trade Creditor shall have an additional thirty (30) days following service of the Preference Action to opt in to the Preference Settlement; and

xxiii.    xix. granting related relief.;

all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion, including the Conditional Disclosure Statement Hearing Notice, and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the Motion

5

(the "**Conditional Disclosure Statement Hearing**"); and upon the Moore Declaration;[4] and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

**Conditional Approval of Disclosure Statement.**

1.      The Disclosure Statement is hereby conditionally approved as providing holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan within the meaning of section 1125 of the Bankruptcy Code and complies with Bankruptcy Rule 3016(c) and is subject to final approval of the Court at the Combined Hearing.   No further or additional information is necessary or required.

2.      The Disclosure Statement (including all applicable exhibits thereto) provides holders of Claims and other parties in interest with sufficient notice of the proposed releases, injunctions, and exculpation provisions contained in Article XIII of the Plan, in accordance with Bankruptcy Rule 3016(c).

3.      The procedures pursuant to which the Debtors provided notice to the parties entitled to notice of the time, date, and place of the Conditional Disclosure Statement Hearing, including the Conditional Disclosure Statement Hearing Notice, provided due, proper, and

---

[4]  "**Moore Declaration**" refers to the *Amended Declaration of Charles M. Moore in Support of (I) the Proposed Confirmation Schedule and (II) the Debtors' Objection to United States Trustee's Motion to Convert or Dismiss Pursuant to 11 U.S.C. § 1112(b)* (Docket No. 26962911).

adequate notice, comport with due process, and comply with all applicable Bankruptcy Rules and Bankruptcy Local Rules.   No further notice is required or necessary.

**Approval of Solicitation and Voting Procedures and Materials and Timeline for Soliciting Votes for Confirming Plan.**

      a.      **Solicitation and Voting Procedures.**

4.      The Solicitation and Voting Procedures, attached hereto as **Exhibit 2**, provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018 and are hereby approved in their entirety.

5.      The ~~Plan~~FBG Debtor~~s~~ ~~is~~are hereby authorized to solicit, receive, and tabulate votes to accept the Plan in accordance with the Solicitation and Voting Procedures.   The solicitation period during which the ~~Plan~~FBG Debtor~~s~~ will solicit votes to accept or reject the Plan is a reasonable and sufficient period of time for holders of Claims in the Voting Classes to make an informed decision regarding whether to accept or reject the Plan and timely return Ballots evidencing such decision.

      b.      **Solicitation and Confirmation Timeline.**

6.      The following dates and deadlines are hereby established (subject to modification as necessary by the Debtors) with respect to the solicitation of the Plan, voting on the Plan, and confirmation of the Plan, as well as filing objections to confirmation of the Plan and approving the Disclosure Statement on a final basis:

| SOLICITATION AND CONFIRMATION TIMETABLE | |
| --- | --- |
| Voting Record Date, and ~~Election~~Preference Settlement Record Date | ~~May 26~~June 15, 2026 |
| Mailing Deadline for Combined Hearing Notice, Solicitation Packages, Non-Voting Packages, ~~and Election~~Consent Program Materials, and Preference Settlement Materials | ~~No later than two~~Within three (~~2~~3) business days after entry of this Order, or as soon as reasonably practicable thereafter |

| SOLICITATION AND CONFIRMATION TIMETABLE | |
|---|---|
| Plan Supplement Filing Deadline | **June 22, 2026** |
| Litigation Trust Distribution Record Date & DIP Collateral Trust Distribution Record Date | **June 22, 2026 (which date may be extended by mutual agreement among the FBG Debtors and Ad Hoc Group)** |
| Deadline for Debtors to File Claims Objections for Voting Purposes or to Request Claim Estimation for Voting Purposes | ~~June 10~~July 3**, 2026 at 5:00 p.m. (Central Time)** |
| ~~Plan Supplement Filing Deadline~~Administrative Claims Record Date | ~~June 12~~July 10**, 2026** |
| Rule 3018(a) Motion Deadline | ~~June 16~~July 10**, 2026 at 5:00 p.m. (Central Time)** |
| Litigation Trust Interest Response Deadline & DIP Collateral Trust Interest Response Deadline | **July 13, 2026 (which date may be extended by mutual agreement among the FBG Debtors and Ad Hoc Group)** |
| Voting Deadline and Release Opt-In Deadline | ~~June 23~~July 20**, 2026 at 5:00 p.m. (Central Time)** |
| Deadline to Object to Disclosure Statement and Plan | ~~June 23~~July 20**, 2026 at 5:00 p.m. (Central Time)** |
| ~~Litigation Trust Distribution Record Date & DIP Collateral Trust Distribution Record Date~~ | ~~June 12, 2026 (which date may be extended by mutual agreement)~~ |
| Ballot Certification Deadline | ~~June 30~~July 27**, 2026** |
| Deadline to File Confirmation Brief and Reply to Plan Objection(s) | ~~June 30~~July 27**, 2026** |
| Combined Hearing | **July ~~2~~28, 2026 at 9:00 a.m. (Central Time)** |
| ~~Litigation Trust Interest Response Deadline & DIP Collateral Trust Interest Response~~Preference Settlement Opt-In Deadline | ~~June 23, 2026 (which date may be extended by mutual agreement~~Forty-five (45) days following the Confirmation Date (except as otherwise provided herein~~)~~ |

8

| SOLICITATION AND CONFIRMATION TIMETABLE | |
| --- | --- |
| ~~Preference Settlement Election~~<u>Consent Program Opt-In</u> Deadline | **~~5:00 p.m. (Central Time) on the date that is forty-five (45~~<u>Sixty (60</u>) days following the ~~Effective Date (subject to a thirty (30) day extension if a Preference Action is brought against a Trade Creditor that did not timely opt in)~~<u>Confirmation Date</u>** |

### c.    Solicitation Packages.

7.    The Solicitation Packages, and each of the documents contained therein (substantially in the form attached hereto), including, but not limited to the Ballots, Combined Hearing Notice, the Solicitation and Voting Procedures, the Litigation Trust Collateral Trust Notice, and the DIP Collateral Trust Notice, are APPROVED.

8.    The ~~Plan~~<u>FBG</u> Debtor<u>s</u> shall mail, or cause to be mailed, the Solicitation Packages on or before the Mailing Deadline (or as soon as reasonably practicable thereafter) to holders of Claims in the Voting Classes entitled to vote on the Plan as of the Voting Record Date, as required by Bankruptcy Rule 3017(d).   The ~~Plan~~<u>FBG</u> Debtor<u>s</u> shall also provide complete Solicitation Packages (excluding Ballots, as applicable) to the U.S. Trustee and all parties required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-11 (except to the extent that such party is <u>otherwise</u> entitled to receive ~~a Non-Voting Package~~<u>Materials (defined below)</u>). Solicitation Packages shall contain copies of:

> (a)    this Order, as entered by this Court and without attachments;
>
> (b)    the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;
>
> (c)    the Combined Hearing Notice (substantially in the form attached hereto as **Exhibit 1**);
>
> (d)    Solicitation and Voting Procedures (substantially in the form attached hereto as **Exhibit 2**);

(e)     the applicable Ballot customized (where possible and appropriate) for such holder and conforming to Official Bankruptcy Form No. B 314, in the form described below;[5]

(f)     for holders of Claims in Class 3 (Roll-Up Claims), Class 4 First Lien Claims), and Class 5 (Second Lien Claims), and DIP A Claims, the Litigation Trust Participation Notice (substantially in the form attached as **Exhibit 1413** hereto);

(g) for holders of Claims in Class 3 (Roll-Up Claims) and DIP A Claims, the DIP Collateral Trust Participation Notice (substantially in the form attached as **Exhibit 15** hereto);

(g)     (h) for holders of Claims in Class 7 (General Unsecured Claims), the letter from the Creditors' Committee setting forth, among other things, that the Creditors' Committee recommends that holders of General Unsecured Claims against the PlanFBG Debtors vote to accept the Plan and supports confirmation of the Plan and approval of the Global Settlement (substantially in the form attached as **Exhibit 1315** hereto) (the "**Creditors' Committee Position Letter**"); and

(h)     (i) a postage-prepaid return envelope.

9.     The PlanFBG Debtors isare authorized to serve the Plan, the Disclosure Statement, and this Order in electronic format (on a QR code included in the Combined Hearing Notice), such that only the Ballots and the Combined Hearing Notice shall be served in paper format, except as otherwise provided in this Order, or the Solicitation and Voting Procedures. Any creditor or equity holder for which service by QR code imposes a hardship may request an additional copy of the Plan, the Disclosure Statement (and attachments), and this Order (without attachments) in paper format by contacting Kroll by (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing

---

[5]     Official Bankruptcy Form No. B 314 can be found at http://www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts.

10

FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.   Upon receipt of an email, telephonic, or written request, in a timely manner, the ~~Plan~~FBG Debtors shall provide such creditor with a USB flash drive containing, or a paper copy of, the Plan and the Disclosure Statement at no cost to the creditor.

10.     The Voting Agent is authorized to assist the ~~Plan~~FBG Debtors in:  (i) distributing the applicable Solicitation Packages, (ii) distributing the applicable Solicitation Packages, (iii) distributing the Notice of Non-~~Non-~~Voting Status and the Release Opt-In Forms as applicable, (iv) distributing Consent Program Materials, (v) distributing Preference Settlement Materials, (vi) collecting, processing, and reporting on Consent Program Opt-In Forms, (vii) collecting, processing, and reporting Preference Settlement Opt-In Forms, (v̶iii) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by holders of Claims, (~~iv~~ix) receiving, tabulating, and reporting on Release Opt-In Forms cast to opt in to the ~~Third-Party~~Third-Party Releases, (~~v~~x) responding to inquiries from holders of Claims or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, Non-Voting Packages, Preference Settlement Materials, Consent Program Materials, and all other related documents (collectively, the "**Materials**") and matters related thereto, or the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, including the procedures and requirements to opt in to Third-Party Releases ~~by the Release Opt-In Form, the Third-Party Release Opt-In Election in the Ballots, or the Preference Settlement Election Form~~, (~~vi~~xi) soliciting votes on the Plan, and (~~vx~~xii) if necessary or appropriate, contacting creditors and equity holders regarding the ~~Plan, the Ballots, the Solicitation Packages, the Non-Voting Packages (as defined below), the Election Materials (as defined below), and all other related documents~~Materials and matters related thereto~~.~~

11

11.     The Voting Agent ~~will~~is authorized to serve the Litigation Trust Participation Notice ~~and the~~ ~~DIP Collateral Trust Participation Notice~~ to holders of Claims entitled to receive such notices, as outlined in Paragraph 8 herein, in addition to holders of DIP A Claims, and to serve DIP Collateral Trust Participation Notice to holders of DIP A Claims.  The information elicited from holders by the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice, however, will not be collected or processed by the Voting Agent.  The method of submission and collection of the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice will be as set forth in the respective notices.  Additionally, the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice are subject to different dates and deadlines than other documents in the Solicitation Packages (such as the Distribution Record Dates, as defined therein) affecting the rights of the recipient holders of such notices.

12.     Holders of transferred Claims entitled to vote on the Plan shall receive a Solicitation Package only if: (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files, by the Voting Record Date, (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the holder of such Claim as of the Voting Record Date.

13.     The Voting Agent is authorized to accept the Ballots on or before the Voting Record Date: (i) by first-class mail in the return envelope provided with each Ballot, (ii) by overnight courier; (iii) by hand delivery; or (iv) via Kroll's online balloting portal (each such electronically submitted Ballot, an "**E-Ballot**") at https://restructuring.ra.kroll.com/FirstBrands

(the "**Online Portal**").   The encrypted E-Ballot data and audit trail created by electronic submission via Kroll's Online Portal shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature shall be deemed to be immediately legally valid and effective.   Alternatively, in lieu of submitting an E-Ballot, holders of Claims may return their Ballots in the return envelope provided, or otherwise via first class mail, overnight courier, or hand delivery, so long as the Ballots are actually received on or before the Voting Deadline.   Holders of Claims mailing their Ballots to the Voting Agent shall mail them to the following address:

> First Brands Group, LLC Ballot Processing
> c/o Kroll Restructuring Administration LLC
> 850 3rd Avenue, Suite 412
> Brooklyn, NY 11232

14.    The PlanFBG Debtors isare authorized, but not required, to (i) waive any defects or irregularities as to any Ballot at any time, either before or after the Voting Deadline, or (ii) extend the Voting Deadline.

15.    The PlanFBG Debtors isare not required to mail Solicitation Packages or Non-Voting Packages to holders (i) that have Claims that have already been paid in full during these chapter 11 cases, (ii) whose prior mailings in these chapter 11 cases were returned as undeliverable and that have not provided a forwarding address by the Voting Record Date,[6] and (iii) that  have  Claims in Class 9  (Intercompany Claims) or Interests in Class 810 (PlanFBG Debtor Interests).   In the event that the United States Postal Service returns some Solicitation

---

[6]    For purposes of serving the Solicitation Packages, the Plan Debtor is authorized to rely on the address information for holders of Claims in the Voting and Non-Voting Classes as compiled, updated, and maintained by the Voting Agent as of the Voting Record Date, and the Debtors and the Voting Agent are not required to conduct any additional research for updated addresses based on undeliverable Solicitations Packages (including the Ballots).

13

Packages or Non-Voting Packages as undeliverable, the ~~Plan~~FBG Debtor~~s~~ shall be excused from re-mailing such Solicitation or Non-Voting Packages.   The failure to mail such Solicitation Packages and Non-Voting Packages, or any other materials related to voting or confirmation of the Plan to such entities will not constitute inadequate notice of the Combined Hearing or the Voting Deadline and shall not constitute a violation of Bankruptcy Rule 3017.

**Notice of Non-Voting Status.**

16. The Notice of Non-Voting Status is APPROVED.

17. The proposed form and manner of service of the Notice of Non-Voting Status provide due, proper, and adequate notice, comport with due process, and comply with all applicable Bankruptcy Rules and Bankruptcy Local Rules.   No further notice is required or necessary.

18. Except to the extent that the ~~Plan~~FBG Debtor~~s~~ determine~~s~~ otherwise, the ~~Plan~~FBG Debtor~~s~~ ~~is~~are not required to provide Solicitation Packages to holders of Claims and Interests in the Non-Voting Classes, as such holders are not entitled to vote on the Plan.   Instead, on or before the Mailing Deadline, the Voting Agent shall mail Non-Voting Packages which will include: (i) a Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit ~~8~~9**, (ii) a Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 1**, and (iii) a Release Opt-In Form, substantially in the form attached hereto as **Exhibit ~~9~~10**, to the holders of DIP A Claims, holders of Claims in Class 8 (Subordinated Claims), and holders of Claims in the Unimpaired Non-Voting Classes in lieu of a Solicitation Package.   The Voting Agent will also mail holders of DIP A Claims the Litigation Trust Participation Notice substantially in the form attached hereto as **Exhibit ~~14~~13** and the DIP Collateral Trust Participation Notice substantially in the form attached hereto as **Exhibit ~~15~~14**.

14

19.     The Notice of Non-Voting Status provides (i) notice of the Court's conditional approval of the Disclosure Statement, (ii) notice of filing the Plan, (iii) notice of the holder's non-voting status, (iv) notice of the Release Opt-In Form, and (v) information about how to obtain copies of the Disclosure Statement and the Plan.  In addition, the Notice of Non-Voting Status contains the full text of the release, exculpation, and injunction provisions set forth in Article XIII of the Plan.  The Notice of Non-Voting Status advises holders of DIP A Claims and holders of Claims in the Unimpaired Non-Voting Classesreceiving such notice that they will only be bound by the Third-Party Releases in Section 13.5(b) of the Plan if they timely, properly, and affirmatively opt in to the grant of Third-Party Releases, except as otherwise provided in the Plan.

20.     The requirement to serve a Notice of Non-Voting Status, Release Opt-In Form, Combined Hearing Notice, or any other type of notice in connection with solicitation of the Plan to Hholders of Claims in Class 89  (PlanIntercompany Claims) and holders of Interests in Class 10 (FBG Debtor Interests) is hereby waived.

**Release Opt-In Form.**

21.     The Release Opt-In Form is APPROVED.

22.     The Release Opt-In Form, substantially in the form attached hereto as **Exhibit 910**, complies with the Bankruptcy Code, applicable Bankruptcy Rules, and the applicable Bankruptcy Local Rules and Complex Case Procedures and, together with the Conditional Disclosure Statement Hearing Notice, the Combined Hearing Notice and, as applicable, the Notice of Non-Voting Status, provides adequate notice to the holders of DIP A Claims, and holders of Claims in the Unimpaired Non-Voting Classes.   No further notice is required or necessary.

15

23.     The Release Opt-In Form (i) contains the full text of the release provisions set forth in Article XIII of the Plan and advises the recipients that they will only be bound by the Third-Party Releases if they timely, properly, and affirmatively choose to opt in by completing the Release Opt-In Form, except as provided in the Plan, and (ii) provides detailed instructions to the recipient regarding the manner in which such recipient can submit their election to opt in to the Third-Party Releases.

24.     The Release Opt-In Deadline shall be ~~June 23~~July 20, 2026 at 5:00 p.m. (Central Time).

25.     Holders of DIP A Claims, and holders of Claims in the Unimpaired Non-Voting Classes that choose to opt in to the Third-Party Releases may do so by submitting their Release Opt-In Form in the return envelope provided or otherwise by: (i) by first-class mail; (ii) by overnight courier; (iii) by hand delivery; or (iv) via the Online Portal,[7] each in accordance with the instructions included on the Release Opt-In Form, so that (in each instance) their opt in election is actually received by the Voting Agent no later than the Release Opt-In Deadline of ~~June 23~~July 20, 2026 at 5:00 p.m. (Central Time).

26.     The Voting Agent is authorized to assist the ~~Plan~~FBG Debtors in (i) receiving, tabulating, and reporting on Release Opt-In Forms and (ii) responding to inquiries from holders of Claims and other parties in interest relating to the procedures and requirements to opt in of the Third-Party Releases by the Release Opt-In Form.

---

[7]     The Release Opt-In Form includes information on how parties can opt in  electronically via the Online Portal. An encrypted opt in data and audit trail will be created through the electronic submission process and become part of the record of any opt in election submitted in this manner.  Additionally, the parties' electronic signature will be deemed to be legally valid and effective immediately.  For the avoidance of doubt, the Online Portal is the sole method for holders of DIP A Claims and holders of Claims in the Unimpaired Non-Voting Classes to transmit opt in elections electronically.

27.     Holders of DIP A Claims(s), and holders of Claims(s) in the Unimpaired Non-Non-Voting Classes that do not timely, properly, and affirmatively elect to opt in to the Third-Party Releases by the Release Opt-In Deadline will not be Releasing Parties under the Plan, except as otherwise provided in the Plan.  Holders of DIP A Claims(s) and holders of Claims(s) in the Unimpaired Non-Non-Voting Classes that that timely, properly, and affirmatively elect to opt in to the Third-Party Releases by the Release Opt-In Deadline will be Releasing Parties under the Plan.

**Approval of Administrative Consent Program Notice and Opt-In Procedures.**

      a.      **Consent Program Opt-In Procedures and Consent Program Opt-In Form**

28.     The Consent Program Opt-In Form and Consent Opt-In Procedures and related dates and deadlines are APPROVED.

| | |
|---|---|
| **Administrative Claims Record Date** | ● July 10, 2026. |
| **Consent Program Opt-In Deadline** | ● All Consent Program Opt-In Forms must be timely and properly completed and returned so as to be **actually received** by the Voting Agent **by 5:00 p.m. (Central Time) on or before the date that is sixty (60) days following the Confirmation Date** either by (i) delivering the Consent Program Opt-In Form to the Voting Agent in the return envelope provided or otherwise by first-class mail, hand delivery, or overnight courier or (ii) submitting the Consent Program Opt-In Form by electronic, online transmission through the Online Portal (as defined herein), each in accordance with the instructions included on the Consent Program Opt-In Form. |
| **Tabulation** | ● A holder of an Administrative Expense Claim that properly, timely, and affirmatively opts in to the Administrative Expense Claims Consent Program will be the holder of Settled Administrative Expense Claim under the Plan and will: (i) have its Administrative Expense Claim deemed Allowed in the amount of such holder's Settled Administrative Expense Claim; and (ii) be entitled to receive distributions from the Litigation Trust in accordance with the Litigation Trust Waterfall, including beginning to share in 16% of distributable proceeds following |

|  |  | aggregate distributions of $350 million, with holders of Settled Administrative Expense Claims receiving distributions first within Class 3, pro rata based on the aggregate amount of Allowed Settled Administrative Expense Claims, until each such Holder has received distributions equal to the Allowed amount of its Settled Administrative Expense Claim. |
|  | • | Holders of Administrative Expense Claims that do not properly, timely, and affirmatively opt in to the Administrative Expense Claims Consent Program, will only begin to receive distributions from the Litigation Trust following payment in full of all Settled Administrative Expense Claims, but prior to repayment of Roll-Up Claims, First Lien Claims, Second Lien Claims, and General Unsecured Claims. |
|  | • | A holder of Administrative Expense Claims against more than one FBG Debtor that timeline and properly submits a Consent Program Opt-In Form shall have its election to affirmatively opt in counted with respect to each such FBG Debtor. |
|  | • | The FBG Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Consent Program Opt-In Forms, which determination—absent a prior ruling of the Court—will be final and binding on all parties. |

29.    The Consent Program Opt-In Form and Consent Program Opt-In Procedures (including the Consent Program Opt-In Deadline) are adequate to solicit elections from holders of Administrative Expense Claims with respect to Administrative Expense Claims Consent Program and to otherwise inform holders of Administrative Expense Claims regarding their rights and available choices with respect to the Administrative Expense Claims Consent Program.  The Consent Program Opt-In Form contains (i) a detailed description of the Administrative Expense Claims Consent Program, (ii) the Reconciled Amount of the receiving holder's Administrative Expense Claim (iii) the amount of the receiving holder's Settled Administrative Expense Claim, and (iv) detailed instructions on how to properly fill out the Consent Program Opt-In Form, including instructions on how to contact the FBG Debtors and

18

the FBG Debtors' financial advisor if the receiving holder of the Consent Program Opt-In Form disagrees with the Reconciled Amount listed on the holder's Consent Program Opt-In Form.

30.     Following the Confirmation Date, the FBG Debtors are authorized to mail, or cause to be mailed, a paper Consent Program Opt-In Form and a postage prepaid return envelope to holders of Administrative Expense Claims.

31.     No further notice is required or necessary.

**b.     Consent Program Materials**

32.     The Consent Program Materials, and each of the documents contained therein (substantially in the form attached hereto), are APPROVED.

33.     The FBG Debtors are hereby authorized to take all actions necessary to implement the terms of the Consent Program Opt-In Procedures, including mailing the Consent Program Materials to holders of Administrative Expense Claims on or before the Mailing Deadline.  Consent Program Materials shall contain copies of:

(a)     this Order, as entered by this Court and without attachments;

(b)     the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;

(c)     the Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 1**; and

(d)     the Solicitation and Voting Procedures, substantially in the form attached hereto as **Exhibit 2**.

34.     The FBG Debtors are authorized to serve the Disclosure Statement, the Plan, and this Order in electronic format (on a QR code included in the Combined Hearing Notice) instead of sending printed hard copies.  Only the Combined Hearing Notice will be provided in paper format.  Moreover, the Plan and the Disclosure Statement will be available at no charge via the Internet at the Online Portal.  However, if service by QR code imposes a hardship for any party

19

entitled to receive a copy of the Plan and the Disclosure Statement (*e.g.*, the party does not own or have access to a smartphone), such party may request a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and this Order (without attachments) by contacting Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Upon receipt of such request, in a timely manner, the Debtors will provide such party with a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and this Order (without attachments) at no cost to the party.

35.    The Voting Agent is authorized to assist the FBG Debtors in (i) distributing the Consent Program Materials, (ii) collecting, processing, and reporting on submitted Consent Program Opt-In Forms, (iii) responding to inquiries from parties in interest relating to the Disclosure Statement, the Plan, the Consent Program Opt-In Forms, and all other related documents and matters related thereto, or the procedures and requirements for electing to participate in the Administrative Expense Claims Consent Program, and (iv) if necessary or appropriate, contacting creditors concerning the Consent Program Opt-In Forms, and all other related documents and matters related thereto.

36.    The FBG Debtors and the Voting Agent are not required to mail Consent Program Materials to parties (i) on account of Claims that have already been paid in full during these chapter 11 cases, (ii) on account of Claims that are determined to be duplicative based on the review of the Debtors and/or the Voting Agent, or (iii) whose prior mailings in these chapter 11

20

cases were returned as undeliverable and that have not provided a forwarding address by the Voting Record Date.[8]

37.     Holders of transferred Claims, filed pursuant to Bankruptcy Rule 3001(e), will be entitled to receive Consent Program Materials, on account of such Claim only if (i) all actions necessary to transfer such Claim are completed by the Administrate Claims Record Date or (ii) by the Administrate Claims Record Date, the transferee files (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  Further, the Debtors request that, in the event a holder's Administrative Expense Claim is transferred after the Administrate Claims Record Date, the transferee of such Claim shall be bound by any election on the Consent Program Opt-In Form made by the holder of the Administrative Expense Claim as of the Administrate Claims Record Date pursuant to the procedures described herein.

38.     The Voting Agent is authorized to accept Consent Program Opt-In Forms on or before the Consent Program Opt-In Deadline: (i) by first-class mail in the return envelope provided with each Consent Program Opt-In Form; (ii) by overnight courier; (iii) by hand delivery; or (iv) by electronic, online transmission at the Online Portal.  The encrypted Consent Program Opt-In Form data and audit trail created by electronic submission via Kroll's Online Portal shall become part of the record of any Consent Program Opt-In Form submitted in this manner and the creditor's electronic signature shall be deemed to be immediately legally valid and effective.

---

[8]     For purposes of serving the Consent Program Materials, the Debtors request that they be authorized to rely on the address information for holders of Administrative Expense Claims as compiled, updated, and maintained by the Voting Agent.  The Debtors further request that the Debtors and the Voting Agent not be required to conduct any additional research for updated addresses based on undeliverable Consent Program Materials (including the Consent Opt-In Form).

39. In the event that the United States Postal Service returns the Consent Program Materials as undeliverable, the FBG Debtors and the Voting Agent shall be excused from re-mailing such Consent Program Materials.

**Approval of Preference Settlement ~~Election~~Notice and Opt-In Procedures~~, Election Materials, and Timeline for Providing Election Materials to Eligible Creditors including Preference Settlement Eligible Creditors~~.**

        a. **Preference Settlement ~~Election~~Opt-In Procedures~~,~~ and Preference Settlement ~~Election~~Opt-In Form~~, and Notice of Eligible Creditor Status~~**

40. ~~28.~~ The Preference Settlement ~~Election~~Opt-In Procedures and related dates and deadlines are APPROVED.

| ~~Election~~Preference Settlement Record Date | • ~~May 26~~June 15, 2026.~~–~~ |
|---|---|
| Preference Settlement ~~Election~~Opt-In Deadline | • All Preference Settlement ~~Election~~Opt-In Forms must be timely and properly completed and returned so as to be **actually received** by the Voting Agent by **5:00 p.m. (Central Time) on or before the date that is forty-five (45) days following the ~~Effective~~Confirmation Date**, either by (i) delivering the Preference Settlement ~~Election~~Opt-In Form to the Voting Agent in the return envelope provided or otherwise by first-class mail, hand delivery, or overnight courier or (ii) submitting the Preference Settlement ~~Election~~Opt-In Form by electronic, online transmission through the Online Portal, each in accordance with the instructions included on the Preference Settlement ~~Election~~Opt-In Form.  If a Preference Action is brought against a Trade Creditor that did not timely opt in to the Preference Settlement, such Trade Creditor shall have an additional thirty (30) days following service of the Preference Action to opt in to the Preference Settlement. |
| Collection and Processing of Preference Settlement ~~Election~~Opt-In Forms | • A Preference Settlement Eligible Creditor that properly, timely, and affirmatively elects to participate in the Preference Settlement will be a Preference Settlement Electing Creditor under the Plan and will: (i) grant the releases contained in Section 13.5(b) of the Plan; (ii) contribute its Direct Creditor Claims to the Litigation Trust; and (ii~~i~~) participate in, and receive the benefit of, the Preference Settlement, including, if such Preference Settlement Electing Creditor is (a) a Trade Creditor, it will be released from Preference Actions and (b) a Supply Chain Financer or a Factor, it will receive the benefit of the Modified New Value Element, as |

described in more detail in Section 6.11(e) of the Plan.

- Preference Settlement Eligible Creditors that do not properly, timely, and affirmatively elect to participate in the Preference Settlement will not be Preference Settlement Electing Creditors for purposes of the Plan, will not contribute Direct Creditor Claims to the Litigation Trust, will not grant the releases contained in Section 13.5(b) of the Plan, and therefore, will not receive the benefit of the Preference Settlement. ~~Specifically, to the extent a Preference Settlement Eligible Creditor is a (i) Trade Creditor, such Preference Settlement Eligible Creditor will not be released from Preference Actions under the Plan, or (ii) Supply Chain Financer or Factor, such Preference Settlement Eligible Creditor will not receive the benefit of the Modified New Value Element, as described in more detail in Section 6.11(e) of the Plan.~~

- Failure to properly follow the instructions on, and timely submit, the Preference Settlement ~~Election~~Opt-In Form may result in the Preference Settlement ~~Election~~Opt-In Form not being processed.
- The FBG Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Preference Settlement ~~Election~~Opt-In Forms, which determination—absent a prior ruling of the Court—will be final and binding on all parties.

41. ~~29.~~ The Preference Settlement ~~Election~~Opt-In Form and Preference Settlement ~~Election~~Opt-In Procedures (including the Preference Settlement ~~Election~~Opt-In Deadline) are adequate to solicit elections from Preference Settlement Eligible Creditors with respect to the Preference Settlement and to otherwise inform Preference Settlement Eligible Creditors

regarding their rights and available choices with respect to the Preference Settlement.  The Preference Settlement ~~Election~~Opt-In Form includes: (i) notice of the Court's conditional approval of the Disclosure Statement, (ii) notice of filing the Plan, (iii) notice that the recipient of the Preference Settlement ~~Election~~Opt-In Form may be a Preference Settlement Eligible Creditor, (iv) information on the consequences of opting in to the Preference Settlement and of abstaining from opting in to the Preference Settlement, (v) detailed instructions regarding the manner in which a Preference Settlement Eligible Creditor can submit its election to opt in to the Preference Settlement, including notice of the Preference Settlement ~~Election~~Opt-In Deadline, and (vi) information about how to obtain copies of the Disclosure Statement and the Plan.  In addition, the Preference Settlement ~~Election~~Opt-In Form attaches the full text of the release, exculpation, and injunction provisions set forth in Article XIII of the Plan, as <u>Exhibit 1</u> thereto.

~~30. The Notice of Eligible Creditor Status provides adequate notice to all Eligible Creditors (including Preference Settlement Eligible Creditors) of the issuance of Class 3(b) Litigation Trust Interests pursuant to the Plan and otherwise informs Eligible Creditors regarding their rights and available choices with respect to the Global Settlement.  The Notice of Eligible Creditor Status includes:  (i) notice of the Court's conditional approval of the Disclosure Statement, (ii) notice of filing the Plan, (iii) notice that the recipient of the Notice of Eligible Creditor Status may be an Eligible Creditor under the Plan, (iv) notice of the manner of the potential issuance of Class 3(b) Litigation Trust Interests, (v) information about how to disclaim such Class 3(b) Litigation Trust Interests, (vi) notice of the Preference Settlement Election Form, and (vii) information about how to obtain copies of the Disclosure Statement, Plan, and Global Settlement Motion.  Pursuant to the Plan, each Eligible Creditor shall receive Class 3(b) Litigation Trust Interests on account of its Eligible Creditor Claim without the need for any~~

further action, unless such Eligible Creditor is an Ineligible Creditor, including by (a) providing written notice to the GUC Ombudsman that such Eligible Creditor does not wish to participate in the Global Settlement and (b) disclaiming its Class 3(b) Litigation Trust Interest, in which case such Eligible Creditor shall not be entitled to share in distributions from the Litigation Trust.

42.     31. No further notice is required or necessary.

**b.      ~~Election~~Preference Settlement Materials**

43.     32. The ~~Election~~Preference Settlement Materials, and each of the documents contained therein (substantially in the form attached hereto), including, ~~but not limited to the Notice of Eligible Creditor Status and~~ the Preference Settlement ~~Election~~Opt-In Form, are APPROVED.

44.     33. The Debtors are hereby authorized to take all actions necessary to implement the terms of the Preference Settlement ~~Election~~Opt-In Procedures, including mailing the ~~Election~~Preference Settlement Materials to Preference Settlement Eligible Creditors on or before the Mailing Deadline; *provided* that the Preference Settlement ~~Election~~Opt-In Form shall only be mailed to Preference Settlement Eligible Creditors, in accordance with this Order and the Preference Settlement ~~Election~~Opt-In Procedures. ~~Election~~Preference Settlement Materials shall contain copies of:

(a)     this Order, as entered by this Court and without attachments;

(b)     the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;

(c)     the Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 1**;

(d)     the Solicitation and Voting Procedures, substantially in the form attached hereto as **Exhibit 2**;

~~(e) Notice of Eligible Creditor Status, substantially in the form attached hereto as~~

25

**Exhibit 11**;

(e)      ~~(f)~~ the Preference Settlement ~~Election~~Opt-In Form substantially in the form attached hereto as **Exhibit ~~10~~12** for Preference Settlement Eligible Creditors;

(f)      ~~(g)~~ the Creditor's Committee Position Letter attached hereto as **Exhibit ~~13~~15**; and

(g)      ~~(h)~~ a postage-prepaid return envelope.

45.   ~~34.~~ The FBG Debtors are authorized to serve the Disclosure Statement, the Plan, and this Order in electronic format (on a QR code included in the Combined Hearing Notice) instead of sending printed hard copies.  Only the ~~Notice of Eligible Creditor Status, the~~ Preference Settlement ~~Election~~Opt-In Form, the Combined Hearing Notice, and a return envelope will be provided in paper format.  Moreover, the Plan and the Disclosure Statement will be available at no charge via the Internet at the Online Portal.  However, the Debtors propose that if service by QR code imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (*e.g.*, the party does not own or have access to a smartphone), such party may request a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and this Order (without attachments) by contacting Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Upon receipt of such request, in a timely manner, the Debtors will provide such party with a USB flash drive containing, or a paper copy of the Plan, Disclosure Statement, and this Order (without attachments) at no cost to the party.

46.    35. The Voting Agent is authorized to assist the FBG Debtors in (i) distributing the ElectionPreference Settlement Materials, (ii) collecting, processing, and reporting on submitted Preference Settlement ElectionOpt-In Forms, (iii) responding to inquiries from parties in interest relating to the Disclosure Statement, the Plan, the Notice of Eligible Creditor Status, the Preference Settlement ElectionOpt-In Forms, and all other related documents and matters related thereto, or the procedures and requirements for electing to participate in the Preference Settlement, and (iv) if necessary or appropriate, contacting creditors concerning the Preference Settlement ElectionOpt-In Forms, and all other related documents and matters related thereto.

47.    36. The FBG Debtors and the Voting Agent are not required to mail ElectionPreference Settlement Materials to parties (i) on account of Claims that have already been paid in full during these chapter 11 cases (except Claims of Preference Settlement Eligible Creditors), (ii) on account of Claims that are determined to be duplicative based on the review of the Debtors and/or the Voting Agent, or (iii) whose prior mailings in these chapter 11 cases were returned as undeliverable and that have not provided a forwarding address by the Voting Record Date.[89]

48.    37. Holders of transferred Claims, filed pursuant to Bankruptcy Rule 3001(e), will be entitled to receive ElectionPreference Settlement Materials, on account of such Claim only if (i) all actions necessary to transfer such Claim are completed by the ElectionPreference Settlement Record Date or (ii) by the ElectionPreference Settlement Record Date, the transferee files (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and

---

[89]   For purposes of serving the ElectionPreference Settlement Materials, the Debtors request that they be authorized to rely on the address information for Preference Settlement Eligible Creditors as compiled, updated, and maintained by the Voting Agent.  The Debtors further request that the Debtors and the Voting Agent not be required to conduct any additional research for updated addresses based on undeliverable ElectionPreference Settlement Materials (including the Preference Settlement ElectionOpt-In Form).

(b) a sworn statement of the transferor supporting the validity of the transfer.  Further, the Debtors request that, in the event a Preference Settlement Eligible Creditor's Claim is transferred after the ~~Election~~Preference Settlement Record Date, the transferee of such Claim shall be bound by any election on the Preference Settlement ~~Election~~Opt-In Form made by the Preference Settlement Eligible Creditor as of the ~~Election~~Preference Settlement Record Date pursuant to the procedures described herein.

49.    ~~38.~~ The Voting Agent is authorized to accept Preference Settlement ~~Election~~Opt-In Forms on or before the Preference Settlement ~~Election~~Opt-In Deadline: (i) by first-class mail in the return envelope provided with each ~~Election~~Preference Settlement Opt-In Form; (ii) by overnight courier; (iii) by hand delivery; or (iv) by electronic, online transmission at the Online Portal.  The encrypted Preference Settlement ~~Election~~Opt-In Form data and audit trail created by electronic submission via Kroll's Online Portal shall become part of the record of any Preference Settlement ~~Election~~Opt-In Form submitted in this manner and the creditor's electronic signature shall be deemed to be immediately legally valid and effective.  A tabulation of the parties completing the Preference Settlement ~~Election~~Opt-In Forms received by the Voting Agent will be provided to ~~counsel for the Creditors' Committee (prior to the Effective Date) or~~ the GUC Ombudsman (following the ~~Effective~~Confirmation Date).

50.    ~~39.~~ The Debtors, or the Litigation Trustee, as applicable, are authorized, but not required, to (i) waive any defects or irregularities as to any Preference Settlement ~~Election~~Opt-In Form at any time, either before or after the Preference Settlement ~~Election~~Opt-In Deadline, or (ii) extend the Preference Settlement ~~Election~~Opt-In Deadline.

51. ~~40.~~ In the event that the United States Postal Service returns the ~~Election~~Preference Settlement Materials as undeliverable, the FBG Debtors and the Voting Agent shall be excused from re-mailing such ~~Election~~Preference Settlement Materials.

**Conditional Disclosure Statement Hearing Notice and Combined Hearing Notice.**

52. ~~41.~~ The Conditional Disclosure Statement Hearing Notice and Combined Hearing Notice are APPROVED.

53. ~~42.~~ The form and proposed manner of service of the Conditional Disclosure Statement Hearing Notice, attached hereto as **Exhibit ~~12~~16**, and Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 1**, provide due, proper, and adequate notice, comport with due process, and comply with all applicable Bankruptcy Rules and Bankruptcy Local Rules. No further notice is required or necessary.

54. ~~43.~~ The Debtors are authorized ~~but not required~~ to give supplemental publication notice of the Combined Hearing Notice in the *New York Times* as well as other publications, as the Debtors deem appropriate.

**Combined Hearing.**

55. ~~44.~~ The Combined Hearing will begin on **July ~~2~~28, 2026 at 9:00 a.m. (Central Time)**; *provided*, *however*, that the Combined Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court.

**Combined Objection Procedures.**

56.    45. The deadline to file an objection to the adequacy of the Disclosure Statement and/or confirmation of the Plan shall be ~~June 23~~July 20, **2026 at 5:00 p.m. (Central Time)** (the "**Combined Objection Deadline**").

57.    46. Objections and responses, if any, to confirmation of the Plan, must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Bankruptcy Local Rules, and any order of the Court; (iii) set forth the name of the objecting party, the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; and (iv) provide the basis for the objection and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection.  Registered users of this Court's case filing system must electronically file their objections and responses on or before the Combined Objection Deadline.  All other parties in interest must file their objections and responses in writing, together with proof of service thereof, with the United States Bankruptcy Court Clerk's Office, United States Courthouse, 515 Rusk Avenue, Courtroom 402, 4th Floor, Houston, Texas 77002, on or before the Combined Objection Deadline.

58.    47. Pursuant to Bankruptcy Rule 3020(b), if no objection is timely filed, this Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.

59.    48. Objections to confirmation of the Plan that are not timely filed, served, and actually received in the manner set forth above shall not be considered and shall be deemed overruled.

60.    49. The Debtors and any parties in interest who support the Plan are authorized to file and serve replies or an omnibus reply to any such objections along with a brief in support of

30

confirmation of the Plan (the "**Confirmation Brief**") either separately or in a single, consolidated document on or before ~~June 30~~July 27, **2026**.

**Plan Supplement Notice and Plan Supplement Filing Deadline.**

~~50. The Debtors are authorized to file the Plan Supplement with the Court on or before June 12, 2026 (the "Plan Supplement Filing Deadline").~~

61. The Plan Supplement Notice is APPROVED.

62. The form and proposed manner of service of the Plan Supplement Notice attached hereto as **Exhibit 17**, provide due, proper, and adequate notice, comport with due process, and comply with all applicable Bankruptcy Rules and Bankruptcy Local Rules. No further notice is required or necessary.

63. The FBG Debtors are authorized to file the Plan Supplement with the Court on or before **June 22, 2026** (the "**Plan Supplement Filing Deadline**"). The FBG Debtors are further authorized to serve the parties entitled to notice pursuant to Bankruptcy Rules 2002 and 3017 and Bankruptcy Local Rule 2002-1, including, but not limited to, holders of Claims in the Voting and Non-Voting Classes, Preference Settlement Eligible Creditors, holders of Administrative Expense Claims, subject to the exceptions set forth above, a copy of the Plan Supplement Notice, which sets forth (a) notice of the filing of the Plan Supplement, (b) a QR code which provides access to the Plan Supplement and related documents including the Plan and Disclosure Statement, (c) instructions regarding how to request a USB flash drive containing, or paper copies of, the Plan, Plan Supplement, and Disclosure Statement, (d) the proposed Voting Deadline, Combined Objection Deadline, and Preference Settlement Opt-In Deadline, (e) procedures for filing objections and responses to confirmation of the Plan, (f) the time, date, and place for the Combined Hearing, (g) procedures for attending or otherwise

31

participating in the Combined Hearing.

**General Provisions.**

64. ~~51.~~ The Debtors are authorized to make non-substantive changes to the Disclosure Statement, the Plan, the Ballots, the Solicitation and Voting Procedures, the Combined Hearing Notice, the Notice of Non-~~Non-~~Voting Status, the Release ~~Opt-In~~Opt-In Form, the Notice of Eligible Creditor Status, the Consent Program Op-In Form, the Preference Settlement ~~Election~~Opt-In Form, the Litigation Trust Participation Notice, the DIP Collateral Trust Participation Notice, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages, ~~Election~~Non-Voting Packages, Consent Program Materials, ~~or Non-Voting Packages~~and Preference Settlement Materials, prior to mailing.

65. ~~52.~~ Nothing contained in the Motion or this Order or any payment made pursuant to the authority granted by this Order is intended to be or shall be deemed as (i) an implication or admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any party in interest's rights under the Bankruptcy Code or any other applicable non-bankruptcy law, (iv) a waiver of the obligation of any party in interest to file a proof of claim, (v) an agreement or obligation to pay any Claims, (vi) a waiver of any Claims or causes of action which may exist against any creditor or interest holder, or (vii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.

32

66.     ~~53.~~ Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

67.     ~~54.~~ All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

68.     ~~55.~~ Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Bankruptcy Local Rules are satisfied by such notice.

69.     ~~56.~~ The Debtors are authorized to take all steps necessary or appropriate to carry out the relief granted in this Order.

70.     ~~57.~~ This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

33

Signed:  [   ], 2026

_____

Christopher Lopez
United States Bankruptcy Judge

**Exhibit 1**

**Form of Combined Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.[1]** | § | |

**NOTICE OF (I) CONDITIONAL APPROVAL OF ~~OF~~ DISCLOSURE STATEMENT~~;~~ (II) APPROVAL OF (A) SOLICITATION AND VOTING PROCEDURES, (B) ~~PREFERENCE~~ ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM OPT-IN PROCEDURES, (C) PREFERENCE SETTLEMENT OPT-IN PROCEDURES, ~~SETTLEMENT ELECTION PROCEDURES;~~ (III) COMBINED HEARING TO CONSIDER FINAL APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN~~;~~, AND (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR FINAL APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN**

**TO ALL PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF:**

| Name of Debtors | Case Numbers |
|---|---|
| Trico Technologies Corporation | 25-90396 (CML) |
| First Brands Group Holdings, LLC | 25-90397 (CML) |
| First Brands Group Intermediate, LLC | 25-90398 (CML) |
| First Brands Group, LLC | 25-90399 (CML) |
| Viceroy Private Capital, LLC | 25-90400 (CML) |
| FRAMAuto Holdings, LLC | 25-90401 (CML) |
| Autolite Operations LLC | 25-90402 (CML) |
| FRAM Group Operations LLC | 25-90403 (CML) |
| FRAM Group IP LLC | 25-90404 (CML) |
| Jasper Acquisition Corp. | 25-90405 (CML) |
| Jasper Rubber Products, Inc. | 25-90406 (CML) |

| Name of Debtors | Case Numbers |
|---|---|
| Specialty Pumps Group, Inc. | 25-90407 (CML) |
| ASC Industries, Inc. | 25-90408 (CML) |
| Heatherton Holdings, LLC | 25-90409 (CML) |
| PHNX Acquisition Corp. | 25-90410 (CML) |
| Hopkins Acquisition, Inc. | 25-90411 (CML) |
| Hopkins Manufacturing Corporation | 25-90412 (CML) |
| Carrand Companies, Inc. | 25-90413 (CML) |
| Horizon Global Corporation | 25-90414 (CML) |
| Horizon Global Company LLC | 25-90415 (CML) |
| Horizon Global Americas Inc. | 25-90416 (CML) |
| Horizon International Holdings LLC | 25-90417 (CML) |
| Horizon Euro Finance LLC | 25-90418 (CML) |

---

[1]  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/~~f~~FirstBrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

| Name of Debtors | Case Numbers | Name of Debtors | Case Numbers |
|---|---|---|---|
| Strongarm, LLC | 25-90419 (CML) | CWD Intermediate Holdings I, LLC | 25-90454 (CML) |
| Premier Marketing Group, LLC | 25-90420 (CML) | Qualitor Subsidiary S, Inc. | 25-90455 (CML) |
| AVM Export, Inc. | 25-90421 (CML) | Fuel Filter Technologies, Inc. | 25-90456 (CML) |
| Carter Fuel Systems, LLC | 25-90422 (CML) | IBI International Holding Company, Inc. | 25-90457 (CML) |
| Carter Fuel Export, Inc. | 25-90423 (CML) | CWD Intermediate Holdings II, LLC | 25-90458 (CML) |
| Carter Carburetor Holdings, LLC | 25-90424 (CML) | Longman Enterprises, Inc. | 25-90459 (CML) |
| Walbro Midco LLC | 25-90425 (CML) | Pylon Manufacturing Corp. | 25-90461 (CML) |
| UCI Acquisition Holdings (No. 4) LLC | 25-90426 (CML) | CWD Holding, LLC | 25-90462 (CML) |
| WEM US Co. | 25-90427 (CML) | Qualitor Automotive, LLC | 25-90463 (CML) |
| Dalton Corporation, Stryker Machining Facility Co. | 25-90428 (CML) | CWD, LLC | 25-90465 (CML) |
| Reman Management International LLC | 25-90429 (CML) | Pylon South Bend, Inc. | 25-90467 (CML) |
| Walbro LLC | 25-90430 (CML) | Qualis Enterprises, LLC | 25-90469 (CML) |
| UCI-Airtex Holdings, Inc. | 25-90431 (CML) | KTRI Offshore Holdings, LLC | 25-90470 (CML) |
| Carter Carburetor, LLC | 25-90432 (CML) | BPI Acquisition Company, LLC | 25-90471 (CML) |
| Dalton Corporation, Ashland Manufacturing Facility | 25-90433 (CML) | Trico Products Corporation | 25-90472 (CML) |
| Airtex Industries, LLC | 25-90434 (CML) | Qualis Automotive, L.L.C. | 25-90474 (CML) |
| Smart Choice, LLC | 25-90435 (CML) | Trico Holding Corporation | 25-90476 (CML) |
| KTRI Holdings, Inc. | 25-90436 (CML) | Brake Parts Inc LLC | 25-90477 (CML) |
| Viper Acquisition, Inc. | 25-90437 (CML) | Toledo Molding & Die, LLC | 25-90478 (CML) |
| Viper Acquisition I, Inc. | 25-90438 (CML) | UCI International Holdings Parent Inc. | 25-90479 (CML) |
| Tridonex USA LLC | 25-90439 (CML) | BPI EC, LLC | 25-90480 (CML) |
| Airtex Products, LP | 25-90440 (CML) | Dalton Corporation, Kendallville Manufacturing Facility | 25-90481 (CML) |
| Qualitor Acquisition Inc. | 25-90441 (CML) | Dalton Corporation, Warsaw Manufacturing Facility | 25-90482 (CML) |
| UCI Pennsylvania, Inc. | 25-90442 (CML) | UCI International Holdings, Inc. | 25-90483 (CML) |
| Qualitor, Inc. | 25-90443 (CML) | Brake Parts Inc India LLC | 25-90484 (CML) |
| Global Reman Ventures, LLC | 25-90444 (CML) | UCI International, LLC | 25-90485 (CML) |
| Champion Laboratories, Inc. | 25-90445 (CML) | BPI Holdings International, LLC | 25-90486 (CML) |
| TAE Brakes, LLC | 25-90446 (CML) | United Components, LLC | 25-90487 (CML) |
| Transportation Aftermarket Enterprise, LLC | 25-90447 (CML) | Brake Parts Inc China LLC | 25-90488 (CML) |
| APC Parent, LLC | 25-90448 (CML) | Eagle Machining, LLC | 25-90489 (CML) |
| Universal Auto Filter LLC | 25-90449 (CML) | Eagle Casting Holdings, LLC | 25-90490 (CML) |
| TAE China Holdings, Inc. | 25-90450 (CML) | Eagle Casting, LLC | 25-90491 (CML) |
| International Brake Industries, Inc. | 25-90451 (CML) | Dalton Corporation | 25-90492 (CML) |
| APC Intermediate Holdings, LLC | 25-90452 (CML) | Cardone Industries, Inc. | 25-90493 (CML) |
| Qualitor Subsidiary H, Inc. | 25-90453 (CML) | SDC TX, LLC | 25-90494 (CML) |

## PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      *Conditional Approval of Disclosure Statement*.  On ~~May 26~~[June] [12], 2026, the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") held a hearing (the "**Conditional Disclosure Statement Hearing**") at which it conditionally approved the *Disclosure Statement for Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors*, filed on [   ], 2026 (Docket No. [   ]) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Disclosure Statement**") of ~~Premier Marketing Group, LLC (the "Plan~~First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG** Debtors**")**, and thereafter entered an order (Docket No. [   ]) (the "**Disclosure Statement Order**") with respect thereto.  The Disclosure Statement Order, among other things, authorizes the ~~Plan~~FBG Debtors to solicit votes to accept the *Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors*, filed on [   ], 2026 (Docket No. [   ]) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**").[1]

2.      *Combined Hearing*.   A hearing to consider ~~the Motion of FBG Debtors for Entry of an Order (I) Approving Global Settlement; (II) Authorizing and Directing Sale and Transfer of Assets in Connection Therewith; (III) Converting Certain Chapter 11 Cases to Chapter 7; and (IV) Granting Related Relief (Docket No. [   ]) (the "Global Settlement Motion"),~~ confirmation of the Plan,~~ and final approval of the Disclosure Statement (the "**Combined Hearing**") has been scheduled for [   ] **(Central Time)** before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, in the Bankruptcy Court. The Combined Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by a Bankruptcy Court announcement providing for such adjournment or continuation on its agenda.  The Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing.

3.      *Voting Record Date*.  Holders of Claims in Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), Class 5 (Second Lien Claims), Class 6 (ABL Claims), ~~and~~ Class 7 (General Unsecured Claims), and Class 8 (Subordinated Claims) who are otherwise eligible to vote shall be entitled to vote to accept or reject the Plan as of ~~May 26~~June 15, 2026 (the "**Voting Record Date**").

4.      *Voting Deadline*.  If you received a Solicitation Package, including a Ballot, and intend to vote on the Plan, you must: (i) follow the instructions carefully; (ii) complete all of the required information on the Ballot; and (iii) execute and return your completed Ballot according to and as set forth in detail in the voting instructions on your Ballot so that it is actually received by the Debtors' solicitation and voting agent, Kroll Restructuring Administration LLC ("**Kroll**" or the "**Voting Agent**") on or before ~~June 23~~July 20, **2026 at 5:00 p.m. (Central Time)** (the "**Voting Deadline**").  **ANY FAILURE TO FOLLOW THE VOTING INSTRUCTIONS INCLUDED WITH YOUR BALLOT MAY DISQUALIFY YOUR BALLOT AND YOUR VOTE.**

5.      *Parties in Interest Not Entitled to Vote*.  Holders of Claims or Interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 9 (Intercompany Claims), and Class ~~8~~10 (~~Plan~~FBG Debtor Interests) are not entitled to vote on the Plan and will not receive a Ballot.  Holders of DIP A Claims, Claims in Class 1 (Other Priority Claims), and Claims in Class 2 (Other Secured Claims), will receive a Notice of Non-Voting Status and Release Opt-In Form to opt in to the ~~Third-Party~~Third-Party Releases set forth in the Plan.  ~~Interests~~Holders of Claims in Class ~~8~~9 (~~Plan~~Intercompany Claims) and Class 10 (FBG Debtor Interests) are ~~held exclusively by the Plan Debtor or the Plan Debtor's affiliates who~~either Plan proponents or are controlled by Plan proponents and have waived receipt of any solicitation-related notices or materials.

6.      *Rule 3018 Motions*.  If any creditor (i) seeks to ~~challenge the Allowed amount of its Claim for voting purposes~~vote on the Plan but such holder's Claim is not listed on the FBG Debtors' Schedules, books and records, and the holder did not file a proof of claim; (ii) seeks to vote in a different amount than is reflected on the FBG Debtors' Schedules, books and records, or filed Proof of Claim, or (iii) is a holder of a Claim that is subject to an objection, a request for estimation, or an adversary proceeding as of July 3, 2026 at 5:00 p.m. (Central Time), (such Claim, a "**Potentially Disallowed Claim**"), such creditor must file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes ~~in a different amount~~ (a "**Rule 3018(a) Motion**") to vote on the Plan. Any Rule 3018(a) Motion must be filed with the Court not later than ~~June 16~~July 10, **2026 at 5:00 p.m. (Central Time)**. Upon the filing of any such Rule 3018(a) Motion, such creditor~~'s~~ will receive a Provisional Ballot, which shall be

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, Disclosure Statement, or Disclosure Statement Order, as applicable.

~~counted~~tabulated in accordance with the guidelines provided in the Solicitation and Voting Procedures attached as **Exhibit 2** to the Disclosure Statement Order~~, unless temporarily Allowed in a different amount by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan~~.

~~7. *Eligible Creditors*. If you are the holder of potential Eligible Creditor Claim(s) you will receive a Notice of Eligible Creditor Status informing you of your rights related to the Litigation Trust. Pursuant to the Plan, each Eligible Creditor (who is not an Ineligible Creditor) shall receive Class 3(b) Litigation Trust Interests on account of its Eligible Creditor Claim, subject to the reconciliation procedures of the GUC Ombudsmen, without the need for any further action. If you do not wish to receive Class 3(b) Litigation Trust Interests, you may elect to become an Ineligible Creditor by providing written notice to the GUC Ombudsman that you (a) do not wish to participate in the Global Settlement, and (b) disclaim your Class 3(b) Litigation Trust Interest, in which case you will not be entitled to share in distributions from the Litigation Trust.~~

7. *Administrative Expense Claims Consent Program*. If you are the holder of an Administrative Expense Claim, if the Plan is confirmed, you will receive a Consent Program Opt-In Form following the Confirmation Date. If you intend to opt in to the Administrative Expense Claims Consent Program, you must: (i) follow the instructions carefully; (ii) complete all of the required information on the Consent Program Opt-In Form; and (iii) timely execute and return your completed Consent Program Opt-In Form according to and as set forth in detail in the voting instructions on your Consent Program Opt-In Form so that it is actually received by Kroll by **5:00 p.m. (Central Time) on the date that is sixty (60) days following the Confirmation Date** (the "**Consent Program Opt-In Deadline**"). Information on the Administrative Expense Claims Consent Program is located in Sections I.C and I.D of the Disclosure Statement.

8. *Preference Settlement ~~Eligible Creditors~~Opt-In Deadline*. If you are ~~the holder of potential Eligible Creditor Claim(s) and you are also~~ a Trade Creditor, Supply Chain Financer, or Factor of one or more ~~of First Brands Group Holdings, LLC, its Debtor Subsidiaries and Viceroy Private Capital, LLC~~FBG Debtors (collectively, "**Preference Settlement Eligible Creditors**") and you receive a Preference Settlement ~~Election~~Opt-In Form and intend to participate in the Preference Settlement, you must: (i) follow the instructions carefully; (ii) complete all of the required information on the Preference Settlement ~~Election~~Opt-In Form; and (iii) timely execute and return your completed Preference Settlement ~~Election~~Opt-In Form according to and as set forth in detail in the instructions on your Preference Settlement ~~Election~~Opt-In Form so that it is actually received by Kroll on or before **5:00 ~~p.m. (Central Time) on the date that is forty-five (45) days after the ~~Effective~~Confirmation Date** (the "**Preference Settlement ~~Election~~Opt-In Deadline**"); *provided* that if a Preference Action is brought against a Trade Creditor that did not timely opt in to the Preference Settlement, such Trade Creditor shall have an additional thirty (30) days following service of the Preference Action to opt in to the Preference Settlement. To the extent you are a Preference Settlement Eligible Creditor and you timely, properly, and affirmatively elect to participate in the Preference Settlement, you will be an Preference Settlement Electing Creditor under the Plan, and you will: (i) grant the releases contained in Section 13.5(b) of the Plan; (ii) contribute your Direct Creditor Claims to the Litigation Trust; and (iii) participate in, and receive the benefit of, the Preference Settlement, including, if you are (a) a Trade Creditor, you will be released from Preference Actions and (b) a Supply Chain Financer or a Factor, you will receive the benefit of the Modified New Value Elements, as described in more detail in Section 6.11(e) of the Plan. **ANY FAILURE TO FOLLOW THE INSTRUCTIONS INCLUDED WITH YOUR PREFERENCE SETTLEMENT ~~ELECTION~~OPT-IN FORM MAY DISQUALIFY YOUR OPT-IN ELECTION.**

9. *Objections to Confirmation*. The deadline to object or respond to confirmation of the Plan or final approval of the Disclosure Statement is ~~June 23~~July 20, 2026 at 5:00 p.m. (Central Time) (the "**Combined Objection Deadline**").

10. *Form and Manner of Objections*. Objections and responses, if any, to ~~the Global Settlement Motion,~~ confirmation of the Plan~~,~~ or final approval of the Disclosure Statement, must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Bankruptcy Local Rules, and any order of the Court; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party; (iv) provide the basis for the objection and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed with the Bankruptcy Court (with proof of service) via ECF or by mailing to the Bankruptcy Court at United States Bankruptcy Court Clerk's Office, United States Courthouse, 515 Rusk Avenue, Courtroom 402, 4th Floor, Houston, Texas 77002, so as to be actually received no later than the Combined Objection Deadline.

11. **IF AN OBJECTION TO ~~THE GLOBAL SETTLEMENT MOTION,~~ CONFIRMATION OF THE PLAN~~,~~ OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THEN THE OBJECTING PARTY MAY BE BARRED FROM**

4

**OBJECTING TO ~~THE GLOBAL SETTLEMENT MOTION,~~ CONFIRMATION OF THE PLAN~~,~~ OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT OR THE ADEQUACY THEREOF AND MAY NOT BE HEARD AT THE COMBINED HEARING.**

12.     *Additional Information*.   Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement, the Plan, ~~Global Settlement Motion,~~ or other solicitation materials should contact Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Interested parties may also review and download the Disclosure Statement and the Plan free of charge at https://restructuring.ra.kroll.com/FirstBrands.   In addition, the Disclosure Statement, and the Plan~~, and Global Settlement Motion~~ are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: https://www.txs.uscourts.gov/.  Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website.   A PACER password can be obtained at: https://pacer.uscourts.gov/.

13.     You may also access electronic copies of the Plan, Disclosure Statement, ~~Global Settlement Motion,~~ and any other solicitation materials via the QR Code below.  Please be advised that Kroll cannot provide legal advice.



**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED. UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS COMBINED HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**QUESTIONS:**

If you have questions about this Combined Hearing Notice, please contact Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./C First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 8 oklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), (c) emailing Fir n "First Brands Solicitation Inquiry" in the subject line, or (d) visiting https://restructuring

5

Dated: [  ], 2026
     Houston, Texas

          */s/  DRAFT*_____
          WEIL, GOTSHAL & MANGES LLP
          Gabriel A. Morgan (24125891)
          Clifford W. Carlson (24090024)
          700 Louisiana Street, Suite 3700
          Houston, Texas 77002
          Telephone:  (713) 546-5000
          Facsimile:  (713) 224-9511
          Email:   gabriel.morgan@weil.com
                  clifford.carlson@weil.com

          -and-

          WEIL, GOTSHAL & MANGES LLP
          Matthew S. Barr (admitted *pro hac vice*)
          Sunny Singh (admitted *pro hac vice*)
          Andriana Georgallas (admitted *pro hac vice*)
          Kevin Bostel (admitted *pro hac vice*)
          Jason H. George (admitted *pro hac vice*)
          767 Fifth Avenue
          New York, New York 10153
          Telephone:  (212) 310-8000
          Facsimile:  (212) 310-8007
          Email:   matt.barr@weil.com
                  sunny.singh@weil.com
                  andriana.georgallas@weil.com
                  kevin.bostel@weil.com
                  jason.george@weil.com

          *Attorneys for Debtors*
          *and Debtors in Possession*

6

<u>**Exhibit 2**</u>

**Form of Solicitation and Voting Procedures**

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

</div>

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| ~~**PREMIER MARKETING**~~**FIRST BRANDS** GROUP, LLC, *et al.,* | §_ | **Case** |
| No. 25-90~~420~~399 (CML) | | |
| | § | |
| | §- | **(Jointly Administered)** |
| | ~~§~~ | |
| **Debtor~~s~~.**[1] | § | |

<div align="center">

**SOLICITATION AND VOTING PROCEDURES**

</div>

      **PLEASE TAKE NOTICE** that on September 24, 2025 and September 28, 2025 First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above captioned chapter 11 cases (collectively, the "**Debtors**"), each filed a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of Texas (the "**Court**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On October 9, 2025, the U.S. Trustee appointed an official committee of unsecured creditors.  On December 16, 2025, the U.S. Trustee appointed Martin De Luca as the examiner in these chapter 11 cases.  A chapter 11 trustee has not been appointed.  The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

      **PLEASE TAKE FURTHER NOTICE** that on [  ], 2026, the Court entered the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan~~;~~, (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing~~;~~, (III) Establishing Solicitation and Voting Procedures~~;~~, (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt-In procedures, (V) Establishing Preference Settlement Opt-In Procedures, (VI) Establishing Notice and Objection Procedures for Confirmation of Plan~~; (V) Establishing Preference Settlement Election Procedures;~~, and (VI~~I~~) Granting Related Relief* (Docket No. [  ]) (the "**Disclosure Statement Order**"), which, among other things, (i) authorized ~~Premier Marketing Group, LLC (the "**Plan**~~First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG** **Debtor~~s~~**") to solicit votes on the *Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. [  ]) (including any exhibits and schedules thereto and as

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands.   The Debtor~~'~~s' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

<div align="center">1</div>

may be modified, amended, or supplemented, the "**Plan**"), and (ii) conditionally approved the *Disclosure Statement for Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors (Docket No. [  ]) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented,* the "**Disclosure Statement**").[2]

A.      **Parties Entitled to Vote.**

Holders of Claims in Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), Class 5 (Second Lien Claims), Class 6 (ABL Claims), ~~and~~ Class 7 (General Unsecured Claims), and Class 8 (Subordinated Claims) are Impaired and entitled to receive distributions under the Plan and, thus, may vote to accept or reject the Plan, subject to certain exceptions discussed below (each, a "**Voting Class**," and collectively, the "**Voting Classes**").  The "Holders of Claims" who comprise and therefore will receive Solicitation Packages in (i) Class 7 (General Unsecured Claims) will be determined by the ~~Plan~~FBG Debtor~~'~~s' Schedules ~~and Proofs of~~of Assets and Liabilities and Statements of Financial Affairs (together, the "**FBG Debtors' Schedules**"), the FBG Debtors' books and records, and proofs of ~~C~~claim filed against the ~~Plan~~FBG Debtor~~s by~~, each as of the Voting Record Date (as defined below) and (ii) Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), Class 5 (Second Lien Claims), and Class 6 (ABL Claims) will be determined by the loan registers provided by the applicable administrative agent, as of the Voting Record Date.

A holder of a Claim in a Voting Class is nonetheless not entitled to vote to the extent that:

(a)      as of the Voting Record Date, the outstanding amount of such creditor's Claim is zero ($0.00);

(b)      as of the Voting Record Date, such holders' Claim has been disallowed, expunged, disqualified or suspended;

(c)      such creditor has not filed a Proof of Claim against the ~~Plan~~FBG Debtor~~s~~ and the ~~Plan~~FBG Debtor~~s~~ (1) ~~has~~have not scheduled such creditor's Claim, ~~or~~(2) ~~has~~have scheduled such creditor's Claim ~~in an undetermined amount or as contingent, unliquidated, or disputed; *provided that,*~~at a $0.00 amount, and (3) have not otherwise identified such Claim on review of the FBG Debtors' books and records; *provided that,* such creditor may file a motion pursuant to Bankruptcy Rule 3018(a) seeking temporary allowance of such Claim for voting purposes (a "**Rule 3018(a) Motion**") subject to the procedures below; *provided further that* to the extent that such creditor's deadline to file a Claim against the ~~Plan~~FBG Debtor~~s~~ arising from any rejection of an Executory Contract or Unexpired Lease to which such creditor is party has not yet occurred, such creditor will be entitled to vote in the amount of $1.00 on account of such Claim; or

---

[2]      Capitalized terms not otherwise defined herein have the same meaning as set forth in the Disclosure Statement ~~Motion, Disclosure Statement~~ Order, Plan, or Disclosure Statement, as applicable.

(d)     such creditor's Claim is subject to an objection, a request for estimation, or an adversary proceeding as of ~~June 10~~July 3, 2026 at 5:00 p.m. (Central Time), ~~subject to the procedures set forth below~~(such Claim, a "**Potentially Disallowed Claim**"); *provided* that, any such holder of a Potentially Disallowed Claim shall receive a Ballot ~~and may submit~~ (such Ballot ~~on a provisional basis and may elect to opt in to the third-party releases contained in the Plan (the "~~**~~Third-Party Releases~~**~~").   To the extent such holder does not file a Rule 3018 Motion in accordance with the instructions set forth below, the Ballot will not be counted for voting purposes; however, any opt in election made by such holder on its Ballot with respect to the Third-Party Releases contained in the Plan shall be valid so long as such Ballot is submitted in accordance with the procedures set forth herein.   To the extent such holder files a Rule 3018 Motion in accordance with the instructions set forth below, the extent to which such Ballot shall be counted for voting purposes will be determined by the Court or as otherwise agreed by the Debtors and the holder.~~, a "**Provisional Ballot**").[3]   Provisional Ballots will be tabulated in accordance with the procedures described below.

With respect to transfers of Claims required to be filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package (as defined below) and, if the holder of such Claim is otherwise entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if: (i) all actions necessary to transfer such Claim are completed by the Voting Record Date; or (ii) the transferee files with the Court, by the Voting Record Date, (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the holder of such Claim as of the Voting Record Date.

Where any portion of a single Claim has been transferred to a transferee and notice of such transfer is required to be filed pursuant to Bankruptcy Rule 3001(e), all holders of any portion of such single Claim may be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code, and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan.  In the event that: (a) a Ballot; (b) a group of Ballots within a Voting Class received from a single creditor; or (c) a group of Ballots received from the various holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots may not be counted in the ~~Plan~~FBG Debtor~~'~~s' discretion.

---

[3]   To the extent the holder previously received a Ballot from the Voting Agent, that Ballot received by the holder will be deemed a Provisional Ballot.

3

**B.      Parties Not Entitled to Vote.**

Holders of Claims in Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) (collectively, the "**Unimpaired Non-Voting Classes**") ~~(if any)~~ will: (i) receive full recovery of their Allowed Claims under the Plan; or (ii) otherwise receive treatment as to render such holder's Claim Unimpaired.  Pursuant to section 1126(f) of the Bankruptcy Code, the holders of such Claims in Class 1 and Class 2 are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote on the Plan.

Holders of Claims in Class 9 (Intercompany Claims) and holders of Interests in Class ~~8~~10 (~~Plan~~FBG Debtor Interests) ~~are Impaired and such holders are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, accordingly, are not entitled to vote on the Plan~~ (together with the Unimpaired Non-Voting Classes, the "**Non-Voting Classes**")~~.~~ are Impaired and are either plan proponents or controlled by plan proponents and are therefore conclusively presumed to accept the Plan.  Accordingly, the FBG Debtors are not required to serve holders of Claims in Class 9 (Intercompany Claims) and holders of Interests in Class 10 (FBG Debtor Interests) copies of any of the Materials described herein.

**C.      Record Dates.**

The Court has established ~~May 26~~June 15, 2026 as the record date for purposes of determining (i) which holders of Claims in the Voting Classes are entitled to vote on the Plan, and (ii) which holders of Claims and Interests in the Non-Voting Classes are entitled to receive a Notice of Non-~~Non-~~Voting Status (~~as defined below) (~~the "**Voting Record Date**").

The Court has established ~~May 26~~June 15, 2026 as the record date for purposes of determining which Preference Settlement Eligible Creditors are entitled to receive the Preference Settlement ~~Election~~Opt-In Form (the "~~Election~~**Preference Settlement** Record Date**").

The Court has established July 10, 2026 as the record date for purposes of determining which holders of Administrative Expense Claims are entitled to receive the Consent Program Opt-In Form (the "**Administrative Claims Record Date**").

**D.      Establishing Claim Amounts for Voting Purposes.**

**Roll-Up Claims (Class 3)**.  The amount of each Roll-Up Claim, for voting purposes only, will be established by reference to the list of DIP Lenders to the DIP Credit Agreement and those DIP Lenders' corresponding Roll-Up Claim amounts as of the Voting Record Date, as reflected on the loan register maintained by the administrative agent under the DIP Credit Agreement, which shall be provided by the such administrative agent to the ~~Plan~~FBG Debtors and the Voting Agent (as defined below) no later than one (1) Business Day following the Voting Record Date.

**First Lien Claims (Class 4)**.  The amount of each First Lien Claim, for voting purposes only, will be established by reference to the list of lenders to the First Lien Term Loan Agreement and the Side-Car Term Loan Agreement and those lenders' corresponding First Lien

4

Claim amounts as of the Voting Record Date, as reflected on the loan register maintained by the administrative agents under the agreements, which shall be provided by such administrative agents to the ~~Plan~~FBG Debtors and the Voting Agent no later than one (1) Business Day following the Voting Record Date.

**Second Lien Claims (Class 5)**.  The amount of each Second Lien Claim, for voting purposes only, will be established by reference to the list of lenders to the Second Lien Term Loan Agreement and those lenders' corresponding Second Lien Claim amounts as of the Voting Record Date, as reflected on the loan register maintained by the administrative agent under the agreement, which shall be provided by such administrative agent to the ~~Plan~~FBG Debtors and the Voting Agent no later than one (1) Business Day following the Voting Record Date.

**ABL Claims (Class 6)**.  The amount of each ABL Claim,[3][4] for voting purposes only, will be established by reference to the list of ABL Lenders to the ABL Credit Agreement and those ABL Lenders' corresponding ABL Claim amounts as of the Voting Record Date, as reflected on the loan register maintained by the administrative agent under the ABL Credit Agreement to the ~~Plan~~FBG Debtors and the Voting Agent no later than one (1) Business Day following the Voting Record Date.

**General Unsecured Claims (Class 7)**.  Except as otherwise provided herein and solely to the extent a holder is entitled to vote under these procedures, the amount of each General Unsecured Claim in Class 7, for voting purposes only, shall be established pursuant to the following hierarchy:

      (a)    if a Claim has been estimated or otherwise Allowed for voting purposes by order of the Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Court;

      (b)    if (a) does not apply, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement in writing reached between the ~~Plan~~FBG Debtors and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed against the ~~Plan~~FBG Debtors in the amount set forth in the stipulation, settlement, or other agreement;[4][5]

      (c)    if neither (a) nor (b) applies, then in the liquidated, non-contingent, and undisputed amount set forth on a Proof of Claim filed against the ~~Plan~~FBG Debtors as of the Voting Record Date; *provided that*, if the

---

[3][4]    For the avoidance of doubt, the Allowed amount of the ABL Claim for voting purposes shall exclude U.S. Bank Obligations (as defined in the Final DIP Order).

[4][5]    For solicitation and/or tabulation purposes, the Voting Agent may rely on an e-mail from Debtor or Debtors' counsel (with the creditor or creditor's counsel copied thereto) informing the Voting Agent of such agreed-upon treatment of a Claim for voting purposes.

amount set forth on a submitted Proof of Claim filed against the ~~Plan~~FBG Debtors is wholly unliquidated, contingent, and/or disputed (as determined on the face of the Claim or based on reasonable review by the ~~Plan~~FBG Debtors  and/or the Voting Agent), then the Claim shall be temporarily Allowed for voting purposes in the amount of $1.00;

(d)     if neither (a), (b), nor (c) applies, then in the liquidated, non-contingent, and undisputed amount set forth on the ~~Plan~~FBG Debtor~~'s~~' Schedules; *provided that*, if the Claim appearing on the ~~Plan~~FBG Debtor~~'s~~' Schedules is either contingent, unliquidated, and/or disputed, or in a $0.00 amount and the claimant has not filed a Proof of Claim against the ~~Plan~~FBG Debtors, then the Claim shall be disallowed for voting purposes~~, except to the extent that such creditor's Claim arises from the rejection of an Executory Contract or Unexpired Lease and the deadline to file such Claim has not yet occurred;~~ ;[6] *provided further*, that, to the extent such creditor's deadline to file a Claim arising from the rejection of an Executory Contract or Unexpired Lease has not yet occurred before the Voting Record Date, such creditor will be entitled to vote in the amount of $1.00 on account of such Claim;~~5~~[7]

(e)     notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class may be provided with only one Solicitation Package and one Ballot for voting on a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; and

(f)     if a Proof of Claim has been amended by a later Proof of Claim that is filed against the ~~Plan~~FBG Debtors, the later filed amended Proof of Claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed Proof of Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended claim.

**Subordinated Claims (Class 8)**.  The amount of each Subordinated Claim, for voting purposes only, will be established by reference to a Final Order entered pursuant to section 510(c) of the Bankruptcy Code by the Court.

---

[6]   For the avoidance of doubt, such holder may file a Rule 3018(a) Motion seeking to temporarily allow its Claim for voting purposes.

[5][7]   For the avoidance of doubt, a holder of a Claim from the rejection of an Executory Contract or Unexpired Lease, will be entitled to vote such Claim only if the holder filed such Claim by the Voting Record Date.

### E.     Rule 3018(a) Motions and Potentially Disallowed Claims Procedures

#### Rule 3018(a) Motions

If a holder (i) seeks to vote on the Plan but such holder's Claim is not listed on the FBG Debtors' Schedules, books and records, and the holder did not file a Proof of Claim; (ii) seeks to vote in a different amount than is reflected on the FBG Debtors' Schedules, books and records, or filed proof of claim, or (iii) is a holder of a Potentially Disallowed Claim, such creditor must file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes (a "**Rule 3018(a) Motion**") to vote on the Plan.  Any Rule 3018(a) Motion must be filed with the Court so as to be actually received not later than **July 10, 2026, at 5:00 p.m. (Central Time)**.

Upon the filing of any such Rule 3018(a) Motion, such holder will receive a Provisional Ballot.  Each Provisional Ballot, like each Ballot, will contain the Third Party Release Opt In Election for such holder to check to opt in to the releases contained in Section 13.5(b) of the Plan (the "**Third-Party Releases**").  Each holder who receives a Provisional Ballot will not be a Releasing Party under the Plan unless the holder properly, timely, and affirmatively checks to opt in to the Third-Party Releases through the Third Party Release Opt In Election on the Provisional Ballot.  A holder's Provisional Ballot will only be tabulated if the Court grants the relief requested in such holder's Rule 3018(a) Motion, or as agreed between the FBG Debtors and such holder prior to the Voting Deadline subject to the guidelines for Potentially Disallowed Claims described below.

To the extent such holder does not file a Rule 3018 Motion in accordance with the instructions set forth above, the holder's Provisional Ballot will not be counted for voting purposes; however, any opt in election made by such holder on its Ballot with respect to the Third-Party Releases contained in the Plan shall be valid so long as such Ballot is submitted in accordance with the procedures set forth herein.

#### ~~General~~ Potentially Disallowed Claims

~~If the Debtors have filed an objection to, a request for estimation of, or an adversary proceeding relating to a Claim, on or before **June 10, 2026, at 5:00 p.m. (Central Time)**, such~~ A holder's Potentially Disallowed Claim shall be temporarily disallowed for voting purposes, except as ordered by the Court or agreed to by the FBG Debtors and such holder before the Voting Deadline; *provided*, *however*, that, if the FBG Debtors' objection seeks only to reclassify or reduce the Allowed amount of such Claim, then such Claim is temporarily Allowed for voting purposes in the reduced amount and/or as reclassified (as applicable), except as may be ordered by the Court before or concurrent with, entry of an order confirming the Plan; *provided*, *further*, that if the FBG Debtors' objection seeks only to disallow a Proof of Claim purportedly filed on behalf of a class of claimants, then such Claim is temporarily Allowed for voting purposes only as to the individual that filed such Proof of Claim and not as to the class of claimants on behalf of which such Proof of Claim was filed.

~~If any holder seeks to challenge the Allowed amount of its Claim for voting purposes, such creditor must file with the Court a motion for an order pursuant to Bankruptcy~~

7

~~Rule 3018(a) temporarily allowing such Claim for voting purposes in a different amount (a "**Rule 3018(a) Motion**"). Any Rule 3018(a) Motion must be filed with the Court so as to be actually received not later than **June 16, 2026, at 5:00 p.m. (Central Time)**.~~

~~Upon the filing of any such Rule 3018(a) Motion, such holder's Provisional Ballot shall be counted in accordance with the above-designated guidelines, unless temporarily Allowed in a different amount by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan.~~

~~For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate and non-duplicative Claims against the Plan Debtor held by a single holder in a particular Class shall be aggregated as if such holder held one Claim in the Plan Debtor in such Class, and the votes related to such Claims shall be treated as a single vote in the total aggregated amount to accept or reject the Plan.~~

**F.** ~~E.~~ **Form, Content, and Manner of Notices.**

### Voting Agent

The Debtors have retained Kroll Restructuring Administration LLC ("**Kroll**" or the "**Voting Agent**") as their claims, noticing, and solicitation agent pursuant to the *Order Authorizing Employment and Retention of Kroll Restructuring Administration LLC as Claims, Noticing, and Solicitation Agent* (Docket No. 12). Pursuant to the Disclosure Statement Order, Kroll is authorized to assist the FBG ~~Debtors~~ in (i) distributing the applicable Solicitation Packages, (ii) distributing the Notice of Non-~~Non-~~Voting Status and the Release Opt-In Forms~~,~~ as applicable, (iii) distributing ~~the Election~~Consent Program Materials, (~~iii~~iv) distributing Preferences Settlement Materials, (v) collecting, processing, and reporting on ~~Preference Settlement Election~~Consent Program Opt-In Forms, (vi~~v~~) collecting, processing, and reporting Preference Settlement Opt-In Forms, (vii) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by holders of Claims, (~~v~~viii) receiving, tabulating, and reporting on Release Opt-In Forms cast to opt in to the Third-Party Releases, (~~vi~~ix) responding to inquiries from holders of Claims or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, Non-Voting Packages, Preference Settlement Materials, Consent Program Materials, and all other related documents (collectively, the "**Materials**") and matters related thereto~~, including the Election Materials~~, or the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, including the procedures and requirements to opt in to Third-Party Releases ~~by the Release Opt-In Form, or to opt in to the Third Party Releases through the Third-Party Release Opt-In Election in the Ballots~~, (~~vii~~x) soliciting votes on the Plan, and (~~viii~~xi) if necessary or appropriate, contacting creditors and equity holders regarding the ~~Plan, the Ballots, the Solicitation Packages, the Non-Voting Packages, the Preference Settlement Election Forms, and all other related documents~~Materials and matters related thereto.

### The Solicitation Package

The following materials shall constitute the Solicitation Package:

(a)     the Disclosure Statement Order, as entered by the Court and without attachments ~~(except as~~

otherwise provided herein);

(b)     the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;

(c)     the Combined Hearing Notice (annexed as **Exhibit 1** to the Disclosure Statement Order);

(d)     Solicitation and Voting Procedures (annexed as **Exhibit 2** to the Disclosure Statement Order);

(e)     the applicable Ballot customized (where possible and appropriate) for such holder and conforming to Official Bankruptcy Form No. B 314, in the form described below;[68]

(f)     for holders of Claims in Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), and Class 5 (Second Lien Claims) the notice setting forth, among other things, the procedures for such holders ~~and holders of DIP A Claims~~ to certify, elect, and participate in the Litigation Trust (annexed as **Exhibit ~~14~~13** to the Disclosure Statement Order) (the "**Litigation Trust Participation Notice**");

~~(g) for holders of Claims in Class 3 (Roll-Up Claims) and DIP A Claims, the notice setting forth, among other things, the procedures for such holders to certify, elect, and participate in the DIP Collateral Trust (annexed as **Exhibit 15** to the Disclosure Statement Order) (the "**DIP Collateral Trust Participation Notice**");~~

(g)     ~~(h)~~ for holders of Claims in Class 7 (General Unsecured Claims), the letter from the Creditors' Committee setting forth, among other things, that the Creditors' Committee recommends that holders of General Unsecured Claims against the ~~Plan~~FBG Debtors vote to accept the Plan and supports confirmation of the Plan ~~and approval of the Global Settlement~~ (annexed as **Exhibit ~~13~~15** to the Disclosure Statement Order) (the "**Creditors' Committee Position Letter**"); and

(h)     ~~(i)~~ a postage-prepaid return envelope.

~~Holders of Claims in a Non-Voting Class (except Class 8 (Plan Debtor Interests)) shall only receive the Combined Hearing Notice, the Notice of Non-Voting Status (as defined and described below), and the Release Opt-In Form (as defined and described below).~~

**Distribution of ~~the Solicitation Package, Non-Voting Packages and Election~~ Materials**

The Solicitation Packages, Non-Voting Packages, ~~and the Election~~the Consent Program Materials, and the Preference Settlement Materials shall provide the Plan, the Disclosure Statement, and the Disclosure Statement Order (without exhibits, except the Solicitation and Voting Procedures annexed thereto as **Exhibit 2**) in electronic format (via a QR code included in the Combined Hearing Notice) instead of printed hard copies.  Only the Ballots,

---

[68]     Official Bankruptcy Form No. B 314 can be found at http://www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts.

9

Preference Settlement ~~Election~~Opt-In Forms, Consent Program Opt-In Forms, Combined Hearing Notice, Notice of Non-Voting Status, Release Opt-In Form, and return envelopes will be provided in paper format.  Moreover, the Plan and the Disclosure Statement will be available at no charge via the internet at the Online Portal (as defined below).  If service by QR code imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (*e.g.*, the party does not own or have access to a smartphone), such party may request a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and Disclosure Statement Order (without attachments, except as otherwise provided herein) by contacting Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Upon receipt of such request, in a timely manner, the Debtors will provide such party with a such party may request a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and Disclosure Statement Order (without attachments, except as otherwise provided herein) at no cost to the party.

The ~~Plan~~FBG Debtor~~s~~ shall mail applicable Materials to holders of Claims, and Interests~~, including Eligible Creditors~~ as of the Voting Record Date, Administrative Claims Record Date, and Preference Settlement ~~Eligible Creditors, entitled to receive Solicitation Packages, Non-Voting Packages, and/or Election Materials (collectively, the "**Materials**"), as applicable, as of the Election Record Date and Voting Record~~Record Date on or before the date that is ~~two~~three (~~2~~3) Business Days after entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter (the "**Mailing Deadline**").  The ~~Plan~~FBG Debtor~~s~~ will also provide complete Solicitation Packages (excluding Ballots) to the U.S. Trustee and all parties in interest required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-1.

The Voting Agent will serve the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice to holders of Claims entitled to receive such notices, pursuant to the Disclosure Statement Order.  The information elicited from holders by the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice, however, will not be collected or processed by the Voting Agent.  The method of submission and collection of the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice will be as set forth in the respective notices.  The Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice are subject to different dates and deadlines than other documents in the Solicitation Packages such as the Litigation Trust Distribution Record Date and DIP Collateral Trust Distribution Record Date of **June ~~12~~22, 2026 (which date may be extended by mutual agreement among the FBG Debtors and Ad Hoc Group)**, and the Litigation Trust Interest Response Deadline and DIP Collateral Trust Interest Response Deadline of **~~June 19~~July 13, 2026. (which date may be extended by mutual agreement among the FBG Debtors and Ad Hoc Group),** affecting the rights of the recipient holders of such notices.

In the event that the United States Postal Service returns any mailings as undeliverable, the Debtors are excused from mailing the applicable Materials to addresses from which the Debtors received mailings returned as undeliverable.  For purposes of serving the Materials, the Debtors may rely on the address information for the holders of Claims, including Preference Settlement Eligible Creditors, as compiled, updated, and maintained by the Voting

10

Agent, the Debtors, and/or the administrative agents(s), as of the ~~Election Record Date and~~ Voting Record Date, Administrative Claims Record Date, and Preference Settlement Record Date.  The Debtors and the Voting Agent are not required to conduct any additional research for updated addresses based on undeliverable Materials (including Ballots) and will not be required to resend Materials that are returned as undeliverable unless the Debtors are provided with accurate addresses for such parties prior to the ~~Election Record Date and~~ Voting Record Date, Administrative Claims Record Date, and Preference Settlement Record Date.

The Debtors are not required to mail Solicitation Packages to creditors or interest holders (i) on account of Claims or Interests that have already been paid in full during the Chapter 11 Cases, (ii) on account of Claims or Interests that are clearly duplicative based on the review and determination of the Debtors and/or the Voting Agent, (iii) whose prior mailings in these chapter 11 cases were returned as undeliverable and who have not provided a forwarding address to the Debtors and/or the Voting Agent by the Voting Record Date, (iv) who hold Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 9 (Intercompany Claims), and Class ~~8~~10 (~~Plan~~FBG Debtor Interests), and/or (v) who are not otherwise entitled to vote to accept or reject the Plan in accordance with the terms and provisions of these Solicitation and Voting Procedures.

To avoid duplication and reduce expenses, the Debtors will use commercially reasonable efforts to ensure that each holder entitled to receive Materials only receives one copy of the Materials (and therefore, one Ballot), as applicable.

**Forms of Ballots**

11

Holders of Claims in the Voting Classes that are eligible to vote (as set forth herein) shall receive ballots substantially in the forms attached to the Disclosure Statement Order as **Exhibits 3-~~7~~8** (the "**Ballots**"), as applicable.[~~79~~] All Ballots sent to holders of Claims in the Voting Classes will include a box for holders ~~that vote to reject the Plan, or those whose votes are solicited and do not vote to accept or reject the Plan,~~ to check to opt in to the Third-Party Releases contained in Section 13.5(b) of the Plan (the "**Third-Party Release Opt-In Election**").

Holders of Claims in the Voting Classes that properly and timely elect to opt in to the Third-Party Releases will be Releasing Parties under the Plan. Holders of Claims in the Voting Classes that (i) vote to accept or reject the Plan and do not timely, properly, and affirmatively elect to opt in to the Third-Party Releases, or (ii) do not vote either to accept or reject the Plan and do not timely, properly, and affirmatively elect to opt in to the Third-Party Release, will not be a Releasing Party, except as otherwise provided in the Plan.

**Voting Deadline**

The Court has established ~~June 23~~July 20, 2026 at 5:00 p.m. (Central Time) as the deadline to submit votes to accept or reject the Plan (the "**Voting Deadline**"). The Debtors may extend the Voting Deadline, in their discretion, without further order of the Court. To be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and timely delivered to the Voting Agent: (i) by first-class mail in the return envelope provided with each Ballot; (ii) by overnight mail; (iii) by hand delivery, or (iv) via E-Ballot through the Online Portal, so that (in each instance) it is **actually received** by the Voting Agent no later than the Voting Deadline.

The Voting Agent is authorized to accept Ballots through the Online Portal. The encrypted Ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

Holders of Claims submitting their Ballots in hard copy to the Voting Agent shall mail or deliver them to the following address:

---

[79]    Kroll is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon, Kroll is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials including unused copies of the Solicitation Package; and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

First Brands Group, LLC Ballot Processing
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery, email FirstBrandsBallots@ra.kroll.com (with "First Brands Ballot Delivery" in the subject line) at least twenty-four (24) hours prior to arrival at the Kroll address above and provide the anticipated date and time of delivery.

Holders of Claims in the Voting Classes must not submit their Ballots to the Voting Agent by e-mail or facsimile.  Any Ballots received by the Voting Agent by e-mail or facsimile will be deemed invalid and excluded from the final tabulation.

In all instances, holders should consult their Ballot for specific instructions regarding submission of their votes and any elections.  The manner of Ballot submission is at the election and risk of the holders of Claims in the Voting Classes who vote on the Plan. Regardless of the manner of submission, to be counted, Ballots must be **actually, timely, and properly received** by the Voting Agent by the Voting Deadline.   The Debtors strongly recommend submitting electronic Ballots through the Online Portal.

### Notice of Non-Voting Status and Release Opt-In Forms

Holders of Claims in the Unimpaired Non-Voting Classes, and holders of DIP A Claims, will receive Non-Voting packages which will include the: (i) the Combined Hearing Notice, (ii) a Notice of Non-Voting Status substantially in the form attached to the Disclosure Statement Order as **Exhibit 89** (the "**Notice of Non-Voting Status**"), and (iii) a Release Opt-In Form (as defined below).   Holders of DIP A Claims will also receive the Litigation Trust Participation Notice attached to the Disclosure Statement Order as **Exhibit 1413** and the DIP Collateral Trust Participation Notice attached to the Disclosure Statement Order as **Exhibit 15**. The Plan Debtor is not required to serve holders of Interests in Class 8 (Plan Debtor Interests) copies of the Combined Hearing Notice, Notice of Non-Voting Status, Release Opt-In Form, or any other type of notice in connection with solicitation of the Plan because such Interests are held by the Plan Debtor or the Plan Debtor's affiliates.**14.**

The Notice of Non-Voting Status provides (i) notice of the Court's conditional approval of the Disclosure Statement, (ii) notice of the filing of the Plan and Disclosure Statement, (iii) notice of the holders' non-voting status, and (iv) information about how to obtain copies of the Disclosure Statement and the Plan.  In addition, the Notice of Non-Voting Status contains the full text of the release, exculpation, and injunction provisions set forth in Article XIII of the Plan and advises such receiving holders in the Unimpaired Non-Voting Classes and holders of DIP A Claims that they may elect to opt in to the Third-Party Releases under the Plan by the Release Opt-In Form.

13

The ~~Plan~~FBG Debtors shall cause to be mailed a Release Opt-In Form, substantially in the form attached to the Disclosure Statement Order as **Exhibit ~~9~~10** (the "**Release Opt-In Form**"), to holders of ~~DIP A Claims and~~ Claims in the Unimpaired Non-~~Non-~~Voting Classes~~.~~, and ~~H~~holders of DIP A Claims ~~and/or Claims in the Unimpaired Non-Voting Classes~~. Holders that properly, timely, and affirmatively elect on the Release Opt-In Form to opt in to the Third-Party Releases will be Releasing Parties under the Plan. Holders ~~DIP A Claims and holders of Unimpaired Non-Voting Classes~~ that do not properly, timely, and affirmatively elect on the Release Opt-In Form to opt in to the Third-Party Releases will not be Releasing Parties under the Plan, except as otherwise provided in the Plan. **For the avoidance of doubt, if you (i) are a Preference Settlement Electing Creditor, (ii) opt in to the Third-Party Releases in the Release Opt-In Form, and/or (iii) opt in to the Third-Party Releases in your Ballot, you are a Releasing Party.**

An encrypted opt in data and audit trail will be created through the electronic submission process and become part of the record of any opt in election submitted in this manner. Additionally, any holder's electronic signature will be deemed to be legally valid and effective immediately. For the avoidance of doubt, the Voting Agent's online portal at https://restructuring.ra.kroll.com/FirstBrands (the "**Online Portal**") is the sole method for holders ~~of DIP A Claims and Claims in the Unimpaired Non-Voting Classes~~ to transmit the Release Opt-In Form electronically. All Release Opt-In Forms must be properly completed and returned so as to be **actually received** by the Voting Agent by **~~June 23~~July 20, 2026 at 5:00 p.m. (Central Time)** (the "**Release Opt-In Deadline**") either by (i) delivering the Release Opt-In Form to the Voting Agent by first-class mail, hand delivery, or overnight courier or (ii) submitting the Release Opt-In Form by electronic, online transmission through the Online Portal, each in accordance with the instructions included on the Release Opt-In Form.

**Consent Program Materials**

~~**Election Materials and Preference Settlement Election Form**~~

The following materials shall constitute the ~~Election~~Consent Program Materials:

(a) the Disclosure Statement Order, as entered by the Court and without attachments ~~(except as otherwise provided herein)~~;

(b) the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;

(c) the Combined Hearing Notice (annexed as **Exhibit 1** to the Disclosure Statement Order); and

(d) Solicitation and Voting Procedures, (annexed as **Exhibit 2** to the Disclosure Statement Order).

The Voting Agent shall cause to be mailed the Consent Program Materials, to holders of Administrative Expense Claims by the Mailing Deadline. Any holder of a Claim who believes it is entitled to receive Consent Program Materials and does not receive such materials before the Voting Deadline, may email Kroll at FirstBrandsInfo@ra.kroll.com with "Consent Program Materials Request."

The Voting Agent shall cause to be mailed the Consent Program Opt-In Form and postage prepaid return envelope to holders of Administrative Expense Claims following the Confirmation Date.  Any holder of a Claim who believes it is entitled to receive Consent Program Materials, and does not receive such materials before the Voting Deadline, may email Kroll at FirstBrandsBallots@ra.kroll.com with "Consent Program Materials Request."  If after the Confirmation Date, a holder believes it is entitled to receive the Consent Program Opt-In Form, and does not receive a Consent Program Opt-In Form, such holder should contact the Claims Ombudsman.

A holder of an Administrative Expense Claim that opts in to the Administrative Expense Claims Consent Program will have a Settled Administrative Expense Claim deemed Allowed in an amount equal to fifty percent (50%) of the reconciled amount set forth in the Consent Program Opt-In Form, or as otherwise agreed by the FBG Debtors or Claims Ombudsman and such holder, and will receive distributions from the Litigation Trust in accordance with the Litigation Trust Waterfall, first within the Class 3 Litigation Trust Interests distributions, which follow the satisfaction of the Second Return Threshold of $350,000,000 in aggregate Litigation Trust distributions.  Holders of Administrative Expense Claims that do not opt in will receive distributions from the Litigation Trust in accordance with the Litigation Trust Waterfall, after Settled Administrative Expense Claims but before Other Priority Claims, Priority Tax Claims, Roll-Up Claims, First Lien Claims, Second Lien Claims, and General Unsecured Claims.

All Consent Program Opt-In Forms must be properly completed and returned according to the instructions described therein so as to be **actually received** by the Voting Agent **on or before 5:00 p.m. (Central Time) on the date that is sixty (60) days after the Confirmation Date** (the **"Consent Program Opt-In Deadline"**) either by (i) delivering the Consent Program Opt-In Form to the Voting Agent by first-class mail, (ii) hand delivery, (iii) overnight courier, or (ii) submitting the Consent Program Opt-In Form by electronic, online transmission through the Online Portal, each in accordance with the instructions included on the Consent Program Opt-In Form.  An encrypted data and audit trail will be created through the electronic submission process of the Consent Program Opt-In Form and will become part of the record of any Consent Program Opt-In Form submitted in this manner.  Additionally, any holder's electronic signature will be deemed to be legally valid and effective immediately.  For the avoidance of doubt, the Online Portal is the sole method for holders of Administrative Expense Claims to transmit the Consent Program Opt-In Form electronically.

**Preference Settlement Materials**

The following materials shall constitute the Preference Settlement Materials:

(a)   the Disclosure Statement Order, as entered by the Court and without attachments;

(b)   the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;

(c)   the Combined Hearing Notice (annexed as **Exhibit 1** to the Disclosure Statement Order);

(d)   the Solicitation and Voting Procedures, (annexed as **Exhibit 2** to the Disclosure Statement

Order);

(e) the Notice of Eligible Creditor Status (annexed as **Exhibit 11** to the Disclosure Statement Order);

(e) (f) the Preference Settlement ElectionOpt-In Form (annexed as **Exhibit 1012** to the Disclosure Statement Order) for Preference Settlement Eligible Creditors;

(f) (g) the Creditor's Committee Position Letter (annexed as **Exhibit 1315** to the Disclosure Statement Order); and

(g) (h) a postage-prepaid return envelope.

The Voting Agent shall cause to be mailed the ElectionPreference Settlement Materials, including the Notice of Eligible Creditor Status, to all Eligible Creditors (includingto all Preference Settlement Eligible Creditors); *provided* that the Preference Settlement Election Form, which provides such creditors the option to opt in to the Preference Settlement as described below, shall only be mailed to Preference Settlement Eligible Creditors. The Notice of Eligible Creditor Status will inform Eligible Creditors of the potential issuance of Class 3(b) Litigation Trust Interests and their rights and choices with respect thereto. Any holder of a Claim who believes that they are entitled to receive a Preference Settlement ElectionOpt-In Form, and does not receive a Preference Settlement ElectionOpt-In Form, may email Kroll at FirstBrandsBallotsInfo@ra.kroll.com with "Preference Settlement ElectionOpt-In Form Request" in the subject line prior to the Preference Settlement ElectionOpt-In Deadline.

A Preference Settlement Eligible Creditor that properly, timely, and affirmatively elects to participate in the Preference Settlement will be a Preference Settlement Electing Creditor under the Plan and will: (i) grant the releases contained in Section 13.5(b) of the Plan; (ii) contribute its Direct Creditor Claims to the Litigation Trust; and (ii) participate in, and receive the benefit of, the Preference Settlement, including, if such Preference Settlement Electing Creditor is (a) a Trade Creditor, it will be released from Preference Actions and (b) a Supply Chain Financer or a Factor, it will receive the benefit of the Modified New Value Elements, as described in more detail in Section 6.11(e) of the Plan.

Preference Settlement Eligible Creditors that do not properly, timely, and affirmatively elect to participate in the Preference Settlement will not be Preference Settlement Electing Creditors for purposes of the Plan, will not contribute Direct Creditor Claims to the Litigation Trust, will not grant the releases contained in Section 13.5(b) of the Plan, and therefore, will not receive the benefits of the Preference Settlement. Specifically, to the extent a Preference Settlement Eligible Creditor is a (i) a Trade Creditor, such Preference Settlement Eligible Creditor will not be released from Preference Actions under the Plan, or (ii) a Supply Chain Financer or Factor, such Preference Settlement Eligible Creditor will not receive the benefit of the Modified New Value Elements, as described in more detail in Section 6.11(e) of the Plan.

All Preference Settlement ElectionOpt-In Forms must be properly completed and returned so as to be **actually received** by the Voting Agent **on or before 5:00 p.m. (Central**

16

**Time) on the date that is forty-five (45) days after the ~~Effective~~Confirmation Date** (the **"Preference Settlement ~~Election~~Opt-In Deadline"**) either by (i) delivering the Preference Settlement ~~Election~~Opt-In Form to the Voting Agent by first-class mail, (ii) hand delivery, (iii) overnight courier, or (~~iii~~iv) submitting the Preference Settlement ~~Election~~Opt-In Form by electronic, online transmission through the Online Portal, each in accordance with the instructions included on the Preference Settlement ~~Election~~Opt-In Form; *provided* that if a Preference Action is brought against a Trade Creditor that did not timely opt in to the Preference Settlement, such Trade Creditor shall have an additional thirty (30) days following service of the Preference Action to opt in to the Preference Settlement. An encrypted data and audit trail will be created through the electronic submission process of the Preference Settlement ~~Election~~Opt-In Forms and will become part of the record of any Preference Settlement ~~Election~~Opt-In Form submitted in this manner. Additionally, any holder's electronic signature will be deemed to be legally valid and effective immediately. For the avoidance of doubt, the Online Portal is the sole method for Preference Settlement Eligible Creditors to transmit the Preference Settlement ~~Election~~Opt-In Form electronically.

~~Pursuant to the Plan, each Eligible Creditor shall receive Class 3(b) Litigation Trust Interests on account of its Eligible Creditor Claim without the need for any further action. Notwithstanding the foregoing, if an Eligible Creditor does not wish to receive its Class 3(b) Litigation Trust Interest, such Eligible Creditor may elect to become an Ineligible Creditor by (a) providing written notice to the GUC Ombudsman that such Eligible Creditor does not wish to participate in the Global Settlement and (b) disclaiming its Class 3(b) Litigation Trust Interest, in which case such Eligible Creditor shall not be entitled to share in distributions from the Litigation Trust.~~

**G.** ~~**F.**~~ **Tabulation Procedures.**

### General Rules

The following voting procedures and standard assumptions shall be used in tabulating the Ballots, subject to the Debtors' right to waive any of the below specified requirements for completion and submission of the Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules:

(a) Whenever a holder of Claims casts more than one Ballot voting the same Claims before the Voting Deadline, the last timely and valid Ballot received on or before the Voting Deadline shall be deemed to reflect such creditor's intent, and thus supersede any previously received Ballot. Following the Voting Deadline, no Ballot may be changed or revoked, absent further order of the Court or as directed by the Debtors.

(b) Whenever a holder of Claims casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but does not indicate either an acceptance or rejection of the Plan, such Ballot will not be counted.

17

(c)     Whenever a holder of a Claim casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

(d)     A holder shall be deemed to have voted the full amount of its Claim in each Class and shall not be entitled to split its vote within a particular Class.  Any such holder's Ballot that partially accepts and partially rejects the Plan, between the ~~Plan~~FBG Debtors, will not be counted.

(e)     A Person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a holder of Claims should indicate such capacity when signing, and if so requested by the Debtors or the Voting Agent, must submit proper evidence satisfactory to the Debtors of its authority to so act.

(f)     A holder of Claims in more than one Class must use separate Ballots for each Class of Claims.

(g)     For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate and non-duplicative Claims against the ~~Plan~~FBG Debtors held by a single holder in a particular Class shall be aggregated as if such holder held one Claim in the ~~Plan~~FBG Debtors in such Class, and the votes related to such Claims shall be tabulated as a single vote in the total aggregated amount to accept or reject the Plan.

(h)     The Debtors, unless subject to contrary order of the Court, may waive any defects or irregularities as to any particular irregular Ballot at any time, either before or after the Voting Deadline.'

(i)     If the Debtors and the holder of a Claim in a Voting Class reach an agreement regarding the amount of a Claim for voting purposes, the Voting Agent will tabulate the Claim in accordance with such agreement and may rely on an e-mail from the Debtors (copying the holder of the Claim and/or its counsel) memorializing such agreement.

(j)     The following Ballots shall not be counted:

   i.     any Ballot received after the Voting Deadline unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot or waived the late submission;

   ii.     any Ballot that is illegible or contains insufficient information to permit the identification of the voting party;

   iii.     any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan;

18

iv.      any Ballot cast by a Person or Entity that is not entitled to vote, even if such individual or Entity holds a Claim in a Voting Class;

v.      any unsigned Ballot, provided that E-Ballots submitted on the Online Portal will be deemed to contain a legal, valid signature;

vi.      any Ballot containing a vote that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

vii.      any Ballot transmitted to the Voting Agent by e-mail, facsimile, or other means not specifically approved herein.

For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate and non-duplicative Claims against the FBG Debtors held by a single holder in a particular Class shall be aggregated as if such holder held one Claim in the FBG Debtors in such Class, and the votes related to such Claims shall be treated as a single vote in the total aggregated amount to accept or reject the Plan.

### Miscellaneous Rules

Each holder of Claims that votes to accept or reject the Plan is deemed to have voted the full amount of its Claim therefor.

The Voting Agent may, but is not required to, contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies, provided that, neither the ~~Plan~~FBG Debtor~~s~~ nor Voting Agent is required to contact such parties to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor will any of them incur any liability for failure to provide such notification.  Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the ~~Plan~~FBG Debtor~~s~~ (or the Court) determine.  Delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived prior to the Voting Deadline) will be invalidated.

The Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, Preference Settlement ~~Election~~Opt-In Forms, or Release Opt-In Forms, which determination—absent a contrary ruling of the court—will be final and binding on all parties.

The Debtors are authorized to reject any and all Ballots, Preference Settlement ~~Election~~Opt-In Forms, or Release Opt-In Forms, submitted by any holders of Claims not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.

The Debtors are further authorized to waive any defects or irregularities or conditions of delivery as to any particular Ballot or, Preference Settlement ~~Election~~Opt-In Form

19

by any holders of Claims, including Preference Settlement Electing Creditors, as applicable.  The interpretation (including the Ballot, and the Preference Settlement ~~Election~~Opt-In Form and the respective instructions thereto) by the Debtors in accordance with the foregoing sentence will be final and binding on all parties.

The Debtors or their Voting Agent shall file the Voting Report on or before **~~June 30~~July 27, 2026.**

**H.      ~~G.~~ Combined Hearing Notice.**

~~Within two (2) Business Days after entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter, the~~The Debtors will serve holders of Claims and Interests against the Debtors (except holders of Claims in Class 9 (Intercompany Claims) and holders of Interests in Class ~~8~~10 (~~Plan~~FBG Debtor Interests)) via first-class mail a copy of the Combined Hearing Notice, substantially in the form attached to the Disclosure Statement Order as **Exhibit 1**, by the Mailing Deadline, which sets forth (i) the Voting Deadline ~~and~~, Consent Program Opt-In Deadline, and the Preference Settlement ~~Election~~Opt-In Deadline, (ii) the Combined Objection Deadline and procedures for filing objections and responses to confirmation of the Plan, (iii) the time, date, and place for the Combined Hearing, and (iv) information about the Plan's release and injunction provisions in compliance with Bankruptcy Rule 2002(c)(3).  ~~The Debtors will separately serve holders of Claims in the Voting Classes with the Combined Hearing Notice as part of their Solicitation Packages.~~

The Debtors ~~may, in their discretion,~~will give supplemental publication notice of the Combined Hearing, as soon as reasonably practicable after entry of the Disclosure Statement Order, once in the New York Times as well as in one or more local or foreign newspapers, trade journals, or similar publications as the Debtors deem appropriate.

**The Debtors reserve the right and are authorized to make non-substantive or immaterial changes to the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the ~~Ballots, the Solicitation and Voting Procedures, the Combined Hearing Notice, the Release Opt-In Form, the Preference Settlement Election Form~~Materials, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, if any, and to make conforming changes among the Disclosure Statement, the Plan, and any other Materials before their distribution.**

20

**Exhibit 3**

**Form of Ballot for Roll-Up Claims (Class 3)**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE DISCLOSURE STATEMENT, AND OTHER MATERIALS ACCOMPANYING THIS BALLOT.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND PROPERLY EXECUTE THIS ENTIRE BALLOT.

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ~~PREMIER MARKETING~~**FIRST BRANDS** GROUP, LLC, *et al.,* | § | Case No. 25-90~~420~~399 (CML) |
| | § | |
| | § | **(Jointly Administered)** |
| | ~~§~~ | |
| Debtor~~s~~.[2] | § | |

### BALLOT FOR VOTING TO ACCEPT OR REJECT
### THE JOINT CHAPTER 11 PLAN OF ~~PREMIER MARKETING~~ FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS
### CLASS 3 (ROLL-UP CLAIMS)

> IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE PROPERLY COMPLETED, FULLY EXECUTED, AND TIMELY RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE ~~JUNE 23~~JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.

~~Premier Marketing Group, LLC~~ First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") as debtor~~s~~ in possession in the above-captioned chapter 11 case ~~(the "Plan Debtor")~~ ~~is~~are soliciting votes with respect to the *Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors*, filed on [  ], 2026 (Docket No. [  ]) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **Exhibit A** to the

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as Exhibit A to the Disclosure Statement.

[2]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtor's' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

*Disclosure Statement for Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors filed on [  ], 2026 (Docket No. [  ]) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Disclosure Statement**").*

You are receiving this ballot (the "**Ballot**") because records indicate that you are the holder (a "**Holder**") of a Roll-Up Claim against the ~~Plan~~FBG Debtors as of ~~May 26~~June 15, 2026 (the "**Voting Record Date**").  Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 3 Roll-Up Claims.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Kroll Restructuring Administration LLC (the "**Voting Agent**" or "**Kroll**") at no charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/FirstBrands.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Please be advised that the Voting Agent cannot provide legal advice.

You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 3 Roll-Up Claim under the Plan.  If so, please contact your attorney and/or advisor.

2

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR
ROLL-UP CLAIMS IN CLASS 3**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed Roll- Up Claim ~~against the Plan Debtor~~ agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, <u>and</u> release~~, and discharge~~ of such Allowed Roll-Up Claim ~~against the Plan Debtor, on the Effective~~<u>(other than the Remaining Roll-Up Claims), on the Confirmation</u> Date, each such holder shall receive, on account of its Allowed Roll- Up Claim ~~against the Plan Debtor~~, its Pro Rata Share of ~~(i)~~ the Class 3(a) Litigation Trust Interests~~, and (ii) the Class 3 DIP Collateral Trust Interests.  For the avoidance of doubt, the Roll-Up Claims against the Parent Guarantors or DIP Loan Parties (including the Converting Debtors), other than the Plan Debtor, shall not be released under or affected by the Plan and~~<u>.  The Roll-Up Claims in excess of the aggregate amount of distributions that are anticipated to be made to holders of Allowed Roll-Up Claims under the Litigation Trust Waterfall, as determined in accordance with Section 6.19(d)(ii) of the Plan (the "**Remaining Roll-Up Claims**"), shall not be discharged or released on the Confirmation Date,</u> shall remain enforceable against ~~such~~<u>the</u> DIP Loan Parties ~~and~~<u>,</u> Parent Guarantors ~~(including the Converting Debtors).~~<u>, and/or the SPV Debtors, as applicable, and shall continue to accrue interest, fees, and expenses in accordance with the DIP Order until the Effective Date, at which point such Remaining Roll-Up Claims shall be released.</u>

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must properly complete, sign, and timely return this Ballot so that it is actually received by the Voting Agent on or before the Voting Deadline. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

3

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, you will have consented to the releases contained in Section 13.5(b) of the Plan. The releases as presented in the Plan are provided below:

**SECTION 13.4      PLAN INJUNCTION.**

(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.

(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released ~~or discharged~~ pursuant to the Plan, including under Section 13.5(a) or Section 13.5(b) of the Plan, or (ii) subject to exculpation pursuant to Section 13.6 of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the ~~Plan~~FBG Debtor~~s~~, the ~~Plan~~FBG Debtor~~'s~~'' Estate~~s~~, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 13.6 of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action: (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect

4

to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the **FBG** Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the **FBG** Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the ~~Plan~~ Debtor**s** or ~~its~~**their** Estate**s** shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)     Subject in all respects to Section ~~-~~ 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the **Claims Ombudsman; the** Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the

5

Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)      As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).  If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.  For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d).

(e)      The injunctions in Section 13.4 shall extend to any successors of the ~~Plan~~FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)      FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

SECTION 13.5      RELEASES.

(a)      Releases by the FBG Debtors and their Estates.  Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL

6

Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable. Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; provided that the foregoing exception for Claims and Causes of Action arising from an act or

7

**omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a** Released Party, (b) any post-Effective Date obligations of any ~~party or Entity~~Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) **prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d)** any Intercompany Claims against the **FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the** Plan ~~Debtor~~, or (~~d~~e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors~~, including the chapter 7 estate of an FBG Debtor and any trustee appointed to oversee the chapter 7 estate of such FBG Debtor.  For the avoidance of doubt, none of the DIP Loan Parties other than the Plan Debtor, nor the Parent Guarantors, shall be discharged or released in relation to (i) Allowed Lender Claims, (ii) DIP Collateral Trust SPV Recoveries, or (iii) Litigation Trust SPV Recoveries.~~.

(b)     **Third-Party Releases.  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other**

8

arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in <u>Section 13.5(b)</u> shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted <u>gross negligence, willful misconduct, or </u>actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any ~~party or Entity~~<u>Person</u> under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)     <u>NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.</u>

**SECTION 13.6     <u>EXCULPATION</u>.**

9

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE; THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED

10

**GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR** ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such, and in each case, to the maximum extent permitted by law: (i) the PlanFBG Debtors; (ii) theNeal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; and (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

*FBG Debtors* means First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy.

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the PlanFBG Debtors and itstheir Estates; (ii) theNeal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees (including any subcommittees thereof); (iii); (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party or Ineligible Creditor shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party or Ineligible Creditor; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement ElectionOpt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to

11

granting such releases.  For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

12

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN
PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.        Amount of Claim**.  The undersigned hereby certifies that, as of the Voting
Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a
Roll-Up Claim(s) against the ~~Plan~~FBG Debtors in the amount set forth below.

$\$_____$

**Item 2.        Votes on the Plan**.  Below, please vote either to accept or to reject the Plan with
respect to your Claim(s).  Any Ballot not marked either to accept or reject the Plan, or marked
both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of
the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the
Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in
the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the
Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or
reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the
Preference Settlement Election Form and opt in to granting the releases set forth in the
Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to
granting the releases set forth in the Plan and opt in to granting such releases, you will
have consented to the releases contained in Section 13.5(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of
the release, injunction, and exculpation provisions.**

---

The undersigned Holder of a Class 3 Roll-Up Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.**        **Third-Party Release Opt-In Election.**  If you voted to accept or reject the Plan in Item 2 above, or, if you are abstaining from voting to accept or reject the Plan, and in either case, you elect to grant the Third-Party Releases contained in Section 13.5(b) of the Plan, check the box below to "Opt-In."  Election to consent is at your option and must be affirmatively exercised.  **If you also receive a Release Opt-In Form and you opt in to granting the Third-Party Releases, you will grant the Third-Party Releases in Section 13.5(b) of the Plan regardless of your Third-Party Release Opt-In Election on this Ballot.**

The Holder of the Class 3 Roll-Up Claim set forth in Item 1 elects to:

☐ **OPT IN** to the Third-Party Releases contained only in Section 13.5(b) of the Plan.

**Item 4.**        **Acknowledgements**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Roll-Up Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder:        _____
                                      (*print or type*)

Signature:                  _____

Name of Signatory:    _____
                                      (*if other than Holder, include name and title*)

Title:                          _____

Address:                    _____

                                  _____

                                  _____

                                  _____

E-mail Address:          _____

Date Completed:         _____

14

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1. Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) will not be counted, unless the Debtors (in their sole discretion) waive the defect of lateness. **The Voting Agent will tabulate all properly completed, valid Ballots received on or before the Voting Deadline.**

2. Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail. If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3. You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4. The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, and/or opt in to the Third-Party Releases.

6. If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, valid Ballot submitted to the Voting Agent will supersede any prior Ballot.

7. If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

[3] Ballots submitted on the Online Portal ("**E-Ballots**") will be deemed to contain a legal, valid signature.

15

9.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE PROPERLY COMPLETE AND PROMPTLY RETURN YOUR BALLOT TO THE VOTING AGENT.

11. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY (I) CALLING (646) 290-7146 (INTERNATIONAL, TOLL) OR (877) 631-1151 (U.S./CANADA, TOLL FREE); (II) WRITING TO FIRST BRANDS GROUP, LLC BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 3RD AVENUE, SUITE 412, BROOKLYN, NY 11232 (IF BY FIRST CLASS MAIL, HAND DELIVERY OR OVERNIGHT MAIL); OR (III) EMAILING FIRSTBRANDSINFO@RA.KROLL.COM WITH "FIRST BRANDS SOLICITATION INQUIRY" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12. THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS**

**By electronic, online submission:**

To submit your Ballot via the Voting Agent's online portal (the "**Online Portal**"), visit https://restructuring.ra.kroll.com/FirstBrands.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.  If voting electronically, to have your vote counted, you must complete, sign, and submit the electronic Ballot by utilizing the Online Portal.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

_____

The Online Portal is the sole manner in which electronic votes will be accepted. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

**Holders are strongly encouraged to submit their ballots via the Online Portal.   Holders who cast a Ballot using the Voting Agent's Online Portal should NOT also submit a paper Ballot.**

---

**By First Class Mail, Hand Delivery, or Overnight Mail to:**

**First Brands Group, LLC Ballot Processing**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

To arrange hand delivery of your Ballot, please email the Voting Agent at FirstBrandsInfo@ra.kroll.com (with "First Brands Solicitation Inquiry" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

---

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

17

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS ~~JUNE 23~~JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

18

**Exhibit 4**

**Form of Ballot for First Lien Claims (Class 4)**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE DISCLOSURE STATEMENT, AND OTHER MATERIALS ACCOMPANYING THIS BALLOT.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND PROPERLY EXECUTE THIS ENTIRE BALLOT.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ~~PREMIER MARKETING~~**FIRST BRANDS** GROUP, LLC, *et al.*, | § | Case No. 25-90~~420~~399 (CML) |
| | § | |
| | § | **(Jointly Administered)** |
| | ~~§~~ | |
| Debtor~~s~~.[2] | § | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT
THE JOINT CHAPTER 11 PLAN OF ~~PREMIER MARKETING~~
FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS
CLASS 4 (FIRST LIEN CLAIMS)**

> IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE PROPERLY COMPLETED, FULLY EXECUTED, AND TIMELY RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE ~~JUNE 23~~JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.

~~Premier Marketing Group, LLC~~ First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") as debtor~~s~~ in possession in the above-captioned chapter 11 case ~~(the "Plan Debtor")~~ ~~is~~are soliciting votes with respect to the *Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors*, filed on [ ], 2026 (Docket No. [ ]) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **Exhibit A** to the

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as Exhibit A to the Disclosure Statement.

[2]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtor~~'~~s' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

*Disclosure Statement for Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors filed on [   ], 2026 (Docket No. [   ]) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Disclosure Statement**").*

You are receiving this ballot (the "**Ballot**") because records indicate that you are the holder (a "**Holder**") of a First Lien Claim against the ~~Plan~~FBG Debtors as of ~~May 26~~June 15, 2026 (the "**Voting Record Date**").   Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 4 First Lien Claims.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Kroll Restructuring Administration LLC (the "**Voting Agent**" or "**Kroll**") at no charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/FirstBrands.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by:  (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Please be advised that the Voting Agent cannot provide legal advice.

You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 4 First Lien Claim under the Plan.  If so, please contact your attorney and/or advisor.

2

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR
FIRST LIEN CLAIMS IN CLASS 4**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed First Lien Claim against the Plan Debtor agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, and release, and discharge of such Allowed First Lien Claim against the Plan Debtor, on the Effective(other than Remaining First Lien Claims), on the Confirmation Date, each such holder shall receive, on account of its Allowed First Lien Claim against the Plan Debtor, its Pro Rata Share of the Class 3(c) Litigation Trust Interests. For tThe avoidance of doubt, the First Lien Claims against the Parent Guarantors or DIP Loan Parties (including the Converting Debtors), other than the Plan Debtor, shall not be released under or affected by the Plan and shall remain enforceable against such DIP Loan Parties and Parent Guarantors (including the Converting Debtors).in excess of the aggregate amount of distributions that are anticipated to be made to holders of Allowed First Lien Claims under the Litigation Trust Waterfall, as determined in accordance with Section 6.19(d)(ii) of the Plan (the "**Remaining First Lien Claims**"), shall remain outstanding until the Effective Date, at which point such Remaining First Lien Claims shall be deemed to be released.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must properly complete, sign, and timely return this Ballot so that it is actually received by the Voting Agent on or before the Voting Deadline. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

3

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, you will have consented to the releases contained in Section 13.5(b) of the Plan. The releases as presented in the Plan are provided below:

**SECTION 13.4      PLAN INJUNCTION.**

(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.

(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released ~~or discharged~~ pursuant to the Plan, including under Section 13.5(a) or Section 13.5(b) of the Plan, or (ii) subject to exculpation pursuant to Section 13.6 of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the ~~Plan~~FBG Debtor~~s~~, the ~~Plan~~FBG Debtor~~'s~~'' Estate~~s~~, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 13.6 of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action: (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect

4

to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the **FBG** Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the **FBG** Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the ~~Plan~~ Debtor**s** or ~~its~~**their** Estate**s** shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)     Subject in all respects to Section ~~-~~ 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the **Claims Ombudsman; the** Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the

5

Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.   The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.   For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)     As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).   If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.   For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d).

(e)     The injunctions in Section 13.4 shall extend to any successors of the ~~Plan~~FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

SECTION 13.5     RELEASES.

(a)     Releases by the FBG Debtors and their Estates.   Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL

6

Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable. Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided that the foregoing exception for Claims and Causes of Action arising from an act or*

7

**omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a** Released Party, (b) any post-Effective Date obligations of any ~~party or Entity~~**Person** under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) **prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d)** any Intercompany Claims against the **FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the** Plan ~~Debtor~~, or (**d**e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors~~, including the chapter 7 estate of an FBG Debtor and any trustee appointed to oversee the chapter 7 estate of such FBG Debtor. For the avoidance of doubt, none of the DIP Loan Parties other than the Plan Debtor, nor the Parent Guarantors, shall be discharged or released in relation to (i) Allowed Lender Claims, (ii) DIP Collateral Trust SPV Recoveries, or (iii) Litigation Trust SPV Recoveries.~~.

(b)     Third-Party Releases.  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the **Claims Ombudsman; the** Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other

8

arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.   Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(b) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any ~~party or Entity~~Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.   Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)       FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)       NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6      EXCULPATION.

9

**TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE; THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED**

10

**GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR** ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such, and in each case, to the maximum extent permitted by law: (i) the ~~Plan~~FBG Debtors; (ii) ~~the~~Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; ~~and~~ (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

~~*FBG Debtors* means First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy.~~

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the ~~Plan~~FBG Debtors and ~~its~~their Estates; (ii) ~~the~~Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees ~~(including any subcommittees thereof); (iii)~~; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party ~~or Ineligible Creditor~~ shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party ~~or Ineligible Creditor~~; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement ~~Election~~Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to

11

granting such releases.  For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

12

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.** **Amount of Claim**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a First Lien Claim(s) against the ~~Plan~~FBG Debtor~~s~~ in the amount set forth below.

$_____

**Item 2.** **Votes on the Plan**.  Below, please vote either to accept or to reject the Plan with respect to your Claim(s).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases, you will have consented to the releases contained in Section 13.5(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

The undersigned Holder of a Class 4 First Lien Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan            ☐ **Reject** the Plan

13

**Item 3.**         **Third-Party Release Opt-In Election.**  If you voted to accept or reject the Plan in Item 2 above, or, if you are abstaining from voting to accept or reject the Plan, and in either case, you elect to grant the Third-Party Releases contained in Section 13.5(b) of the Plan, check the box below to "Opt-In."  Election to consent is at your option and must be affirmatively exercised.  **If you also receive a Release Opt-In Form and you opt in to granting the Third-Party Releases, you will grant the Third-Party Releases in Section 13.5(b) of the Plan regardless of your Third-Party Release Opt-In Election on this Ballot.**

The Holder of the Class 4 First Lien set forth in Item 1 elects to:

☐ **OPT IN** to the Third-Party Releases contained only in Section 13.5(b) of the Plan.

**Item 4.**         **Acknowledgements**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the First Lien Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder:         _____
                        (*print or type*)

Signature:              _____

Name of Signatory:      _____
                        (*if other than Holder, include name and title*)

Title:                  _____

Address:                _____

                        _____

                        _____

                        _____

E-mail Address:         _____

Date Completed:         _____

14

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.  Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) will not be counted, unless the Debtors (in their sole discretion) waive the defect of lateness.  **The Voting Agent will tabulate all properly completed, valid Ballots received on or before the Voting Deadline.**

2.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, and/or opt in to the Third-Party Releases.

6.  If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, valid Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE PROPERLY COMPLETE AND PROMPTLY RETURN YOUR BALLOT TO THE VOTING AGENT.

---

[3]   Ballots submitted on the Online Portal ("**E-Ballots**") will be deemed to contain a legal, valid signature.

15

11.   IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY (I) CALLING (646) 290-7146 (INTERNATIONAL, TOLL) OR (877) 631-1151 (U.S./CANADA, TOLL FREE); (II) WRITING TO FIRST BRANDS GROUP, LLC BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 3RD AVENUE, SUITE 412, BROOKLYN, NY 11232 (IF BY FIRST CLASS MAIL, HAND DELIVERY OR OVERNIGHT MAIL); OR (III) EMAILING FIRSTBRANDSINFO@RA.KROLL.COM WITH "FIRST BRANDS SOLICITATION INQUIRY" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.   THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS**

---

**By electronic, online submission:**

To submit your Ballot via the Voting Agent's online portal (the "**Online Portal**"), visit https://restructuring.ra.kroll.com/FirstBrands.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.  If voting electronically, to have your vote counted, you must complete, sign, and submit the electronic Ballot by utilizing the Online Portal.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

_____

The Online Portal is the sole manner in which electronic votes will be accepted. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in <u>Item 1</u> of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

**Holders are strongly encouraged to submit their ballots via the Online Portal.   Holders who cast a Ballot using the Voting Agent's Online Portal should NOT also submit a paper Ballot.**

---

16

> **By First Class Mail, Hand Delivery, or Overnight Mail to:**
>
> **First Brands Group, LLC Ballot Processing**
> **c/o Kroll Restructuring Administration LLC**
> **850 3rd Avenue, Suite 412**
> **Brooklyn, NY 11232**
>
> To arrange hand delivery of your Ballot, please email the Voting Agent at FirstBrandsInfo@ra.kroll.com (with "First Brands Solicitation Inquiry" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS ~~JUNE 23~~JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

17

## Exhibit 5

**Form of Ballot for Second Lien Claims (Class 5)**

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE DISCLOSURE STATEMENT, AND OTHER MATERIALS ACCOMPANYING THIS BALLOT.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND PROPERLY EXECUTE THIS ENTIRE BALLOT.**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| ~~**PREMIER MARKETING**~~**FIRST BRANDS** GROUP, LLC, *et al.,* | §  **Case** | |
| **No. 25-90~~420~~399 (CML)** | | |
| | § | |
| | §  **(Jointly Administered)** | |
| | ~~§~~ | |
| **Debtor~~s~~.[2]** | § | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE JOINT CHAPTER 11 PLAN OF ~~PREMIER MARKETING~~**
**FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS**
**CLASS 5 (SECOND LIEN CLAIMS)**

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE PROPERLY COMPLETED, FULLY EXECUTED, AND TIMELY RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE ~~JUNE 23~~JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

~~Premier Marketing Group, LLC~~ First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") as debtor~~s~~ in possession in the above-captioned chapter 11 case ~~(the "**Plan Debtor**") is~~are soliciting votes with respect to the *Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors*, filed on [  ], 2026 (Docket No. [  ]) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **Exhibit A** to the

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtor~~'s~~s' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

*Disclosure Statement for Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors* filed on [  ], 2026 (Docket No. [  ]) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Disclosure Statement**").

You are receiving this ballot (the "**Ballot**") because records indicate that you are the holder (a "**Holder**") of a Second Lien Claim against the ~~Plan~~FBG Debtors as of ~~May 26~~June 15, 2026 (the "**Voting Record Date**").  Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 5 Second Lien Claims.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Kroll Restructuring Administration LLC (the "**Voting Agent**" or "**Kroll**") at no charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/FirstBrands.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Please be advised that the Voting Agent cannot provide legal advice.

You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 5 Second Lien Claim under the Plan.  If so, please contact your attorney and/or advisor.

2

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR
SECOND LIEN CLAIMS IN CLASS 5**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed Second Lien Claim ~~against the Plan Debtor~~ agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, and release~~, and discharge~~ of such Allowed Second Lien Claim ~~against the Plan Debtor, on the Effective~~(other than Remaining Second Lien Claims), on the Confirmation Date, each such holder shall receive, on account of its Allowed Second Lien Claim ~~against the Plan Debtor~~, its Pro Rata Share of the Class 3(c) Litigation Trust Interests. ~~For t~~The ~~avoidance of doubt, the~~ Second Lien Claims ~~against the Parent Guarantors or DIP Loan Parties (including the Converting Debtors), other than the Plan Debtor, shall not be released under or affected by the Plan and shall remain enforceable against such DIP Loan Parties and Parent Guarantors (including the Converting Debtors).~~in excess of the aggregate amount of distributions that are anticipated to be made to holders of Allowed Second Lien Claims under the Litigation Trust Waterfall, as determined in accordance with Section 6.19(d)(ii) of the Plan (the "Remaining Second Lien Claims"), shall remain outstanding until the Effective Date, at which point such Remaining Second Lien Claims shall be deemed to be released.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must properly complete, sign, and timely return this Ballot so that it is actually received by the Voting Agent on or before the Voting Deadline. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

3

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, you will have consented to the releases contained in Section 13.5(b) of the Plan. The releases as presented in the Plan are provided below:

**SECTION 13.4       PLAN INJUNCTION.**

(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.

(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released ~~or discharged~~ pursuant to the Plan, including under Section 13.5(a) or Section 13.5(b) of the Plan, or (ii) subject to exculpation pursuant to Section 13.6 of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the ~~Plan~~FBG Debtor~~s~~, the ~~Plan~~FBG Debtor~~'s~~'' Estate~~s~~, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 13.6 of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect

4

to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the **FBG** Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the **FBG** Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the ~~Plan~~ Debtor**s** or ~~its~~**their** Estate**s** shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)	Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the **Claims Ombudsman; the** Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the

5

Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.   The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.   For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)      As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).   If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.   For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d).

(e)      The injunctions in Section 13.4 shall extend to any successors of the ~~Plan~~FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)      FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

SECTION 13.5      RELEASES.

(a)      Releases by the FBG Debtors and their Estates.  Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL

6

Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable. Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; provided that the foregoing exception for Claims and Causes of Action arising from an act or

7

**omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a** Released Party, (b) any post-Effective Date obligations of any ~~party or Entity~~Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) **prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d)** any Intercompany Claims against the **FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the** Plan ~~Debtor~~, or (~~d~~e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors~~, including the chapter 7 estate of an FBG Debtor and any trustee appointed to oversee the chapter 7 estate of such FBG Debtor.  For the avoidance of doubt, none of the DIP Loan Parties other than the Plan Debtor, nor the Parent Guarantors, shall be discharged or released in relation to (i) Allowed Lender Claims, (ii) DIP Collateral Trust SPV Recoveries, or (iii) Litigation Trust SPV Recoveries.~~.

(b)      **Third-Party Releases.  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other**

8

arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(b) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted **gross negligence, willful misconduct, or** actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any ~~party or Entity~~**Person** under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order. Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)    FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)    NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6    EXCULPATION.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE; THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED

10

**GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR** ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such, and in each case, to the maximum extent permitted by law: (i) the PlanFBG Debtors; (ii) theNeal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; and (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

*FBG Debtors* means First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy.

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the PlanFBG Debtors and itstheir Estates; (ii) theNeal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees (including any subcommittees thereof); (iii); (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party or Ineligible Creditor shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party or Ineligible Creditor; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement ElectionOpt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to

granting such releases.  For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN
PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.          Amount of Claim**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a Second Lien Claim(s) against the ~~Plan~~FBG Debtor~~s~~ in the amount set forth below.

$$ \$_____ $$

**Item 2.          Votes on the Plan**.  Below, please vote either to accept or to reject the Plan with respect to your Claim(s).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases, you will have consented to the releases contained in Section 13.5(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned Holder of a Class 5 Second Lien Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

13

**Item 3.** **Third-Party Release Opt-In Election.** If you voted to accept or reject the Plan in Item 2 above, or, if you are abstaining from voting to accept or reject the Plan, and in either case, you elect to grant the Third-Party Releases contained in Section 13.5(b) of the Plan, check the box below to "Opt-In." Election to consent is at your option and must be affirmatively exercised. **If you also receive a Release Opt-In Form and you opt in to granting the Third-Party Releases, you will grant the Third-Party Releases in Section 13.5(b) of the Plan regardless of your Third-Party Release Opt-In Election on this Ballot.**

The Holder of the Class 5 Second Lien Claim set forth in Item 1 elects to:

☐ **OPT IN** to the Third-Party Releases contained only in Section 13.5(b) of the Plan.

**Item 4.** **Acknowledgements**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Second Lien Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder: _____
(*print or type*)

Signature: _____

Name of Signatory: _____
(*if other than Holder, include name and title*)

Title: _____

Address: _____

_____

_____

_____

E-mail Address: _____

Date Completed: _____

14

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1. Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) will not be counted, unless the Debtors (in their sole discretion) waive the defect of lateness. **The Voting Agent will tabulate all properly completed, valid Ballots received on or before the Voting Deadline.**


2. Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail. If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3. You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4. The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, and/or opt in to the Third-Party Releases.

6. If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, valid Ballot submitted to the Voting Agent will supersede any prior Ballot.

7. If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE PROPERLY COMPLETE AND PROMPTLY RETURN YOUR BALLOT TO THE VOTING AGENT.

11. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR

---

[3] Ballots submitted on the Online Portal ("**E-Ballots**") will be deemed to contain a legal, valid signature.

15

THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY (I) CALLING (646) 290-7146 (INTERNATIONAL, TOLL) OR (877) 631-1151 (U.S./CANADA, TOLL FREE); (II) WRITING TO FIRST BRANDS GROUP, LLC BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 3RD AVENUE, SUITE 412, BROOKLYN, NY 11232 (IF BY FIRST CLASS MAIL, HAND DELIVERY OR OVERNIGHT MAIL); OR (III) EMAILING FIRSTBRANDSINFO@RA.KROLL.COM WITH "FIRST BRANDS SOLICITATION INQUIRY" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS**

---

**By electronic, online submission:**

To submit your Ballot via the Voting Agent's online portal (the "**Online Portal**"), visit https://restructuring.ra.kroll.com/FirstBrands.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.  If voting electronically, to have your vote counted, you must complete, sign, and submit the electronic Ballot by utilizing the Online Portal.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

_____

The Online Portal is the sole manner in which electronic votes will be accepted. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in <u>Item 1</u> of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

**Holders are strongly encouraged to submit their ballots via the Online Portal.   Holders who cast a Ballot using the Voting Agent's Online Portal should NOT also submit a paper Ballot.**

---

16

> **By First Class Mail, Hand Delivery, or Overnight Mail to:**
>
> **First Brands Group, LLC Ballot Processing**
> **c/o Kroll Restructuring Administration LLC**
> **850 3rd Avenue, Suite 412**
> **Brooklyn, NY 11232**
>
> To arrange hand delivery of your Ballot, please email the Voting Agent at FirstBrandsInfo@ra.kroll.com (with "First Brands Solicitation Inquiry" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS ~~JUNE 23~~JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

17

**Exhibit 6**

**Form of Ballot for ABL Claims (Class 6)**

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE DISCLOSURE STATEMENT, AND OTHER MATERIALS ACCOMPANYING THIS BALLOT.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND PROPERLY EXECUTE THIS ENTIRE BALLOT.**

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

</div>

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| ~~**PREMIER MARKETING**~~**FIRST BRANDS** **GROUP, LLC,** *et al.,* | § | **Case No. 25-90~~420~~399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| | § | |
| **Debtors.**[2] | § | |

<div align="center">

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE JOINT CHAPTER 11 PLAN OF ~~PREMIER MARKETING~~ FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS**
**CLASS 6 (ABL CLAIMS)**

</div>

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE PROPERLY COMPLETED, FULLY EXECUTED, AND TIMELY RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE ~~JUNE 23~~JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

~~Premier Marketing Group, LLC~~ First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") as debtors in possession in the above-captioned chapter 11 case ~~(the "**Plan Debtor**") is~~are soliciting votes with respect to the *Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors*, filed on [ ], 2026 (Docket No. [ ]) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **Exhibit A** to the

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtor's' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

*Disclosure Statement for* Joint *Chapter 11 Plan of* ~~Premier Marketing~~First Brands *Group, LLC* and Certain Affiliated Debtors filed on [  ], 2026 (Docket No. [  ]) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Disclosure Statement**").

You are receiving this ballot (the "**Ballot**") because records indicate that you are the holder (a "**Holder**") of an ABL Claim against the ~~Plan~~FBG Debtors as of ~~May 26~~June 15, 2026 (the "**Voting Record Date**"). Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 6 ABL Claims.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have the Disclosure Statement, you may obtain a copy from Kroll Restructuring Administration LLC (the "**Voting Agent**" or "**Kroll**") at no charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/FirstBrands.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line. Please be advised that the Voting Agent cannot provide legal advice.

You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 6 ABL Claim under the Plan. If so, please contact your attorney and/or advisor.

2

**IMPORTANT NOTICE REGARDING TREATMENT FOR ABL CLAIMS
IN CLASS 6**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, On the Confirmation Date, pursuant to sections 105, 363(b) and (f), and 1123(a)(5)(D) of the Bankruptcy Code, the ABL Agent, by and on behalf of the ABL ~~Claim~~ Secured Parties, shall be deemed to have foreclosed upon the ABL Collateral Trust Assets of the FBG Debtors and transferred all such assets to the ABL Collateral Trust. Except to the extent that a holder of an Allowed ABL Claim ~~against the Plan Debtor~~ agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, and release~~, and discharge~~ of such Allowed ABL Claim ~~against the Plan Debtor~~, on the ~~Effective~~Confirmation Date, each such holder shall receive, on account of its Allowed ABL Claim ~~against the Plan Debtor~~, its Pro Rata Share of the ABL Collateral Trust Interests. ~~For t~~The ~~avoidance of doubt,~~ ABL Claims against the ABL Loan Parties~~, other than the Plan Debtor,~~ in excess of the fair market value of the ABL Collateral Trust Assets ~~of the FBG Debtors~~, as determined in accordance with Section~~ ~~8.11(d)(ii) of the Plan (the "ABL Deficiency Claims"), shall remain outstanding and enforceable against such ABL Loan Parties; provided that such ABL Deficiency Claims shall not be secured by the ABL Collateral Trust Assets, which assets shall be held free and clear of ABL Deficiency Claims by the ABL Collateral Trust; provided further that, on the Effective Date and immediately following the foreclosure upon the ABL Collateral Trust Assets, the holders of the ABL Deficiency Claims shall be deemed to have contributed all of their rights, title, and interests in respect of any amounts or proceeds to be realized on account of the ABL Deficiency Claims to the ABL Collateral Trust to be distributed in accordance with the waterfall set forth in Section 8.3 of the Plan. To the extent the ABL Secured Parties hold Allowed ABL Claims against the ~~Plan~~FBG Debtor~~s~~ that are oversecured (i.e., the value of the ABL Priority Collateral exceeds the Allowed amount of the ABL Claims), as determined by the Bankruptcy Court, the holders of such Allowed ABL Claims ~~against the Plan Debtor~~ shall be entitled to receive postpetition interest on such Claims at the applicable contractual rate under the ABL Credit Agreement to the extent permitted by section 506(b) of the Bankruptcy Code, which interest shall be paid from the ABL Collateral Trust Assets prior to any turnover of excess proceeds to the DIP Collateral Trust pursuant to Section ~~8.3~~7.12 of the Plan.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must properly complete, sign, and timely return this Ballot so that it is actually received by the Voting Agent on or before the Voting Deadline. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

3

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, you will have consented to the releases contained in Section 13.5(b) of the Plan.  The releases as presented in the Plan are provided below:**

**SECTION 13.4      PLAN INJUNCTION.**

**(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released ~~or discharged~~ pursuant to the Plan, including under Section 13.5(a) or Section 13.5(b) of the Plan, or (ii) subject to exculpation pursuant to Section 13.6 of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the ~~Plan~~FBG Debtor~~s~~, the ~~Plan~~FBG Debtor~~'s~~'s' Estate~~s~~, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 13.6 of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect**

4

to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the **FBG** Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the **FBG** Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the ~~Plan~~ Debtor**s** or ~~its~~**their** Estate**s** shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)      Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the **Claims Ombudsman; the** Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the

5

Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)      As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).  If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.  For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d).

(e)      The injunctions in Section 13.4 shall extend to any successors of the ~~Plan~~FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)      FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

SECTION 13.5      RELEASES.

(a)      Releases by the FBG Debtors and their Estates.  Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL

6

Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the **FBG** Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the **FBG** Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the **Confirmation Date or** Effective Date, **as applicable,** including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; **the Claims Ombudsman;** the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other **in-**in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the **Confirmation Date or** Effective Date**, as applicable**. Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted **gross negligence, willful misconduct, or** actual fraud committed by such **Released Party;** *provided that the foregoing exception for Claims and Causes of Action arising from an act or*

7

**omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a** Released Party, (b) any post-Effective Date obligations of any ~~party or Entity~~Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) **prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d)** any Intercompany Claims against the **FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the** Plan ~~Debtor~~, or (**d**e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors~~, including the chapter 7 estate of an FBG Debtor and any trustee appointed to oversee the chapter 7 estate of such FBG Debtor.  For the avoidance of doubt, none of the DIP Loan Parties other than the Plan Debtor, nor the Parent Guarantors, shall be discharged or released in relation to (i) Allowed Lender Claims, (ii) DIP Collateral Trust SPV Recoveries, or (iii) Litigation Trust SPV Recoveries.~~.

(b)      **Third-Party Releases.  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other**

8

arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in <u>Section 13.5(b)</u> shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted <u>gross negligence, willful misconduct, or </u>actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any ~~party or Entity~~<u>Person</u> under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)    FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)    <u>NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.</u>

**SECTION 13.6    EXCULPATION.**

9

**TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE; THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED**

10

**GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR** ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such, and in each case, to the maximum extent permitted by law: (i) the PlanFBG Debtors; (ii) theNeal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; and (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

*FBG Debtors* means First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy.

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the PlanFBG Debtors and itstheir Estates; (ii) theNeal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees (including any subcommittees thereof); (iii); (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party or Ineligible Creditor shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party or Ineligible Creditor; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement ElectionOpt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to

11

granting such releases.  For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.        Amount of Claim**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of an ABL Claim(s) against the ~~Plan~~FBG Debtors in the amount set forth below.[3]

$$\$\underline{\hspace{5cm}}$$

**Item 2.        Votes on the Plan**.  Below, please vote either to accept or to reject the Plan with respect to your Claim(s).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases, you will have consented to the releases contained in Section 13.5(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned Holder of a Class 6 ABL Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan                    ☐ **Reject** the Plan

---

[3]    For the avoidance of doubt, the Allowed amount of the ABL Claim for voting purposes shall exclude U.S. Bank Obligations (as defined in the Final DIP Order).

13

**Item 3.**          **Third-Party Release Opt-In Election.**  If you voted to accept or reject the Plan in Item 2 above, or, if you are abstaining from voting to accept or reject the Plan, and in either case, you elect to grant the Third-Party Releases contained in Section 13.5(b) of the Plan, check the box below to "Opt-In."  Election to consent is at your option and must be affirmatively exercised.  **If you also receive a Preference Settlement Election Form and elect to participate in the Preference Settlement, you will grant the Third-Party Releases in Section 13.5(b) of the Plan regardless of your Third-Party Release Opt-In Election on this Ballot.**

The Holder of the Class 6 ABL Claim set forth in Item 1 elects to:

☐ **OPT IN** to the Third-Party Releases contained only in Section 13.5(b) of the Plan.

**Item 4.**          **Acknowledgements**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the ABL Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder:          _____
                                              (*print or type*)

Signature:                        _____

Name of Signatory:      _____
                                              (*if other than Holder, include name and title*)

Title:                              _____

Address:                         _____

                                           _____

                                           _____

                                           _____

E-mail Address:             _____

Date Completed:            _____

14

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1. Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) will not be counted, unless the Debtors (in their sole discretion) waive the defect of lateness. **The Voting Agent will tabulate all properly completed, valid Ballots received on or before the Voting Deadline.**

2. Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[4] will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail. If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3. You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4. The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, and/or opt in to the Third-Party Releases.

6. If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, valid Ballot submitted to the Voting Agent will supersede any prior Ballot.

7. If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE PROPERLY COMPLETE AND PROMPTLY RETURN YOUR BALLOT TO THE VOTING AGENT.

11. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR

---

[4] Ballots submitted on the Online Portal ("**E-Ballots**") will be deemed to contain a legal, valid signature.

15

THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY (I) CALLING (646) 290-7146 (INTERNATIONAL, TOLL) OR (877) 631-1151 (U.S./CANADA, TOLL FREE); (II) WRITING TO FIRST BRANDS GROUP, LLC BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 3RD AVENUE, SUITE 412, BROOKLYN, NY 11232 (IF BY FIRST CLASS MAIL, HAND DELIVERY OR OVERNIGHT MAIL); OR (III) EMAILING FIRSTBRANDSINFO@RA.KROLL.COM WITH "FIRST BRANDS SOLICITATION INQUIRY" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS**

---

**By electronic, online submission:**

To submit your Ballot via the Voting Agent's online portal (the "**Online Portal**"), visit https://restructuring.ra.kroll.com/FirstBrands.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.  If voting electronically, to have your vote counted, you must complete, sign, and submit the electronic Ballot by utilizing the Online Portal.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

_____

The Online Portal is the sole manner in which electronic votes will be accepted. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in <u>Item 1</u> of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

**Holders are strongly encouraged to submit their ballots via the Online Portal.   Holders who cast a Ballot using the Voting Agent's Online Portal should NOT also submit a paper Ballot.**

---

16

> **By First Class Mail, Hand Delivery, or Overnight Mail to:**
>
> **First Brands Group, LLC Ballot Processing**
> **c/o Kroll Restructuring Administration LLC**
> **850 3rd Avenue, Suite 412**
> **Brooklyn, NY 11232**
>
> To arrange hand delivery of your Ballot, please email the Voting Agent at FirstBrandsInfo@ra.kroll.com (with "First Brands Solicitation Inquiry" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS ~~JUNE 23~~JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

17

**Exhibit 7**

**Form of Ballot for General Unsecured Claims (Class 7)**

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE DISCLOSURE STATEMENT, THE CREDITORS' COMMITTEE POSITION LETTER, AND OTHER MATERIALS ACCOMPANYING THIS BALLOT.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND PROPERLY EXECUTE THIS ENTIRE BALLOT.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| ~~**PREMIER MARKETING**~~**FIRST BRANDS** GROUP, LLC, *et al.,* | § | **Case No. 25-90~~420~~399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| | § | |
| **Debtors.[2]** | § | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT
THE JOINT CHAPTER 11 PLAN OF ~~PREMIER MARKETING~~ FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS
CLASS 7 (GENERAL UNSECURED CLAIMS)**

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE PROPERLY COMPLETED, FULLY EXECUTED, AND TIMELY RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE ~~JUNE 23~~JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

~~Premier Marketing Group, LLC~~ First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") as debtors in possession in the above-captioned chapter 11 case ~~(the "**Plan Debtor**") is~~are soliciting votes with respect to the *Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors*, filed on [  ], 2026 (Docket No. [  ]) (as may be modified, amended, or supplemented, the "**Plan**").  The Plan is attached as **Exhibit A** to the

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands.  The Debtor's' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

*Disclosure Statement for Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors filed on [  ], 2026 (Docket No. [  ]) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Disclosure Statement**").*

You are receiving this ballot (the "**Ballot**") because records indicate that you are the holder (a "**Holder**") of a General Unsecured Claim against the ~~Plan~~FBG Debtors as of ~~May 26~~June 15, 2026 (the "**Voting Record Date**").  Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 7 General Unsecured Claims.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Kroll Restructuring Administration LLC (the "**Voting Agent**" or "**Kroll**") at no charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/FirstBrands.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Please be advised that the Voting Agent cannot provide legal advice.

You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 7 General Unsecured Claim under the Plan.  If so, please contact your attorney and/or advisor.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR GENERAL UNSECURED CLAIMS IN CLASS 7**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed General Unsecured Claim ~~against the Plan Debtor~~ agrees to less favorable treatment of such Claim, in full and final settlement, and release~~, and discharge~~ of such Allowed General Unsecured Claim ~~against~~, on the ~~Plan Debtor~~Confirmation Date, each such holder shall receive its Pro Rata Share of the Class 3(b) Litigation Trust Interests.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the

2

applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must properly complete, sign, and timely return this Ballot so that it is actually received by the Voting Agent on or before the Voting Deadline. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, you will have consented to the releases contained in Section 13.5(b) of the Plan.  The releases as presented in the Plan are provided below:**

**SECTION 13.4      PLAN INJUNCTION.**

**(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released ~~or discharged~~ pursuant to the Plan, including under Section 13.5(a) or Section 13.5(b) of the Plan, or (ii) subject to exculpation pursuant to Section 13.6 of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the ~~Plan~~FBG Debtor~~s~~, the ~~Plan~~FBG Debtor~~'s~~' Estate~~s~~, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 13.6 of the Plan with respect to the Exculpated Parties), as**

3

applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the **FBG** Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the **FBG** Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the ~~Plan~~ Debtor**s** or ~~its~~**their** Estate**s** shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)       Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the **Claims Ombudsman; the** Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or

4

Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section~ 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)     As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).  If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.  For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d).

(e)     The injunctions in Section 13.4 shall extend to any successors of the PlanFBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES OR INELIGIBLE CREDITORS SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF

ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

**SECTION 13.5      RELEASES.**

(a)      **Releases by the FBG Debtors and their Estates.  Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL**

6

Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any ~~party or Entity~~Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan ~~Debtor~~, or (~~d~~e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors, ~~including the chapter 7 estate of an FBG Debtor and any trustee appointed to oversee the chapter 7 estate of such FBG Debtor.  For the avoidance of doubt, none of the DIP Loan Parties other than the Plan Debtor, nor the Parent Guarantors, shall be discharged or released in relation to (i) Allowed Lender Claims, (ii) DIP Collateral Trust SPV Recoveries, or (iii) Litigation Trust SPV Recoveries.~~.

(b)     Third-Party Releases.  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down

7

Administrator; the **Claims Ombudsman; the** Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(b) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted **gross negligence, willful misconduct, or** actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any ~~party or Entity~~**Person** under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)    FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

**(d)    NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.**

8

**SECTION 13.6**      **EXCULPATION.**

9

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE; THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED

10

**GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such~~, and in each case, to the maximum extent permitted by law~~: (i) the ~~Plan~~FBG Debtor~~s~~; (ii) ~~the~~Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; ~~and~~ (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

*FBG Debtors* ~~means First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy.~~

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the ~~Plan~~FBG Debtor~~s~~ and ~~its~~their Estate~~s~~; (ii) ~~the~~Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees ~~(including any subcommittees thereof); (iii)~~; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party ~~or Ineligible Creditor~~ shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party ~~or Ineligible Creditor~~; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement ~~Election~~Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to

11

granting such releases.  For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN
PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.        Amount of Claim**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a General Unsecured Claim(s) against the ~~Plan~~FBG Debtors in the amount set forth below.

$$\$_____$$

**Item 2.        Votes on the Plan**.  Below, please vote either to accept or to reject the Plan with respect to your Claim(s).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases, you will have consented to the releases contained in Section 13.5(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned Holder of a Class 7 General Unsecured Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

13

**Item 3.        Third-Party Release Opt-In Election.**  If you voted to accept or reject the Plan in Item 2 above, or, if you are abstaining from voting to accept or reject the Plan, and in either case, you elect to grant the Third-Party Releases contained in Section 13.5(b) of the Plan, check the box below to "Opt-In."  Election to consent is at your option and must be affirmatively exercised.  **If you also receive a Preference Settlement Election Form and elect to participate in the Preference Settlement, you will grant the Third-Party Releases in Section 13.5(b) of the Plan regardless of your Third-Party Release Opt-In Election on this Ballot.**

The Holder of the Class 7 General Unsecured Claim set forth in Item 1 elects to:

☐ **OPT IN** to the Third-Party Releases contained only in Section 13.5(b) of the Plan.

**Item 4.        Acknowledgements**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the General Unsecured Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder:        _____
                       (*print or type*)

Signature:             _____

Name of Signatory:     _____
                       (*if other than Holder, include name and title*)

Title:                 _____

Address:               _____

                       _____

                       _____

                       _____

E-mail Address:        _____

Date Completed:        _____

14

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.  Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) will not be counted, unless the Debtors (in their sole discretion) waive the defect of lateness. **The Voting Agent will tabulate all properly completed, valid Ballots received on or before the Voting Deadline.**

2.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail. If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, and/or opt in to the Third-Party Releases.

6.  If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, valid Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, THE CREDITORS' COMMITTEE POSITION LETTER, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE PROPERLY COMPLETE AND PROMPTLY RETURN YOUR BALLOT TO THE VOTING AGENT.

---

[3]   Ballots submitted on the Online Portal ("**E-Ballots**") will be deemed to contain a legal, valid signature.

15

11.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY (I) CALLING (646) 290-7146 (INTERNATIONAL, TOLL) OR (877) 631-1151 (U.S./CANADA, TOLL FREE); (II) WRITING TO FIRST BRANDS GROUP, LLC BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 3RD AVENUE, SUITE 412, BROOKLYN, NY 11232 (IF BY FIRST CLASS MAIL, HAND DELIVERY OR OVERNIGHT MAIL); OR (III) EMAILING FIRSTBRANDSINFO@RA.KROLL.COM WITH "FIRST BRANDS SOLICITATION INQUIRY" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS**

---

**By electronic, online submission:**

To submit your Ballot via the Voting Agent's online portal (the "**Online Portal**"), visit https://restructuring.ra.kroll.com/FirstBrands.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.  If voting electronically, to have your vote counted, you must complete, sign, and submit the electronic Ballot by utilizing the Online Portal.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

═══════════════════════════════════════

The Online Portal is the sole manner in which electronic votes will be accepted. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in <u>Item 1</u> of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.


**Holders are strongly encouraged to submit their ballots via the Online Portal.   Holders who cast a Ballot using the Voting Agent's Online Portal should NOT also submit a paper Ballot.**

---

16

> **By First Class Mail, Hand Delivery, or Overnight Mail to:**
>
> **First Brands Group, LLC Ballot Processing**
> **c/o Kroll Restructuring Administration LLC**
> **850 3rd Avenue, Suite 412**
> **Brooklyn, NY 11232**
>
> To arrange hand delivery of your Ballot, please email the Voting Agent at
> FirstBrandsInfo@ra.kroll.com (with "First Brands Solicitation Inquiry" in the subject line) at
> least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date
> and time of delivery.

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS ~~JUNE 23~~JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

17

**Exhibit 8~~9~~**

**Notice of Non-Voting Status**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| ~~**PREMIER MARKETING**~~**FIRST BRANDS** GROUP, LLC, *et al.,* | § | **Case** |
| **No. 25-90~~420~~399 (CML)** | | |
| | § | |
| | § | **(Jointly Administered)** |
| | § | |
| **Debtors.**[1] | § | |

## <u>NOTICE OF NON-VOTING STATUS</u>

On September 24, 2025 and September 28, 2025 (as applicable, the "**Petition Date**"), First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

On [ ], 2026, the Bankruptcy Court held a hearing at which it conditionally approved the *Disclosure Statement for Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. [ ]) (the "**Disclosure Statement**"), and thereafter entered an order (the "**Disclosure Statement Order**") with respect thereto. The Disclosure Statement Order, among other things, authorizes ~~Premier Marketing Group, LLC (the "**Plan**"~~First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") to solicit votes to accept the *Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors,* filed on [ ], 2026 (Docket No. [ ]) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Plan**").[2]

If you have any questions about the status of your Claim or Interest or if you wish to obtain paper copies of the Plan and the Disclosure Statement, you may contact the Debtors' voting agent, Kroll Restructuring Administration LLC ("**Kroll**" or the "**Voting Agent**"), by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtor~~'s~~s' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

Brands Solicitation Inquiry" in the subject line.  Copies of the Plan and Disclosure Statement can also be accessed online at https://restructuring.ra.kroll.com/FirstBrands.  Please be advised that Kroll cannot provide legal advice.

**You are receiving this notice (this "Notice of Non-Voting Status") because, ~~according to the Plan Debtor's books and records, as of May 26~~as of June 15, 2026, you are a holder of:**

      i.      **DIP A Claims** under the Plan, which provides that your Claim(s) against the ~~Plan~~FBG Debtors are not classified pursuant to section 1123(a)(1), and therefore, you are not entitled to vote on the Plan;

      ii.      **Class 1 Other Priority Claims** under the Plan, which provides that your Claim(s) against the ~~Plan~~FBG Debtors ~~is~~are unimpaired and therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and are not entitled to vote on the Plan; and/or

      iii.      **Class 2 Other Secured Claims** under the Plan, which provides that your Claim(s) against the ~~Plan~~FBG Debtors ~~is~~are unimpaired and therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and are not entitled to vote on the Plan.

**UNDER THE TERMS OF THE PLAN, IF YOU ARE A HOLDER OF DIP A CLAIM(S), CLAIM(S) IN CLASS 1 (OTHER PRIORITY CLAIMS), AND/OR CLASS 2 (OTHER SECURED CLAIMS), YOU WILL ALSO RECEIVE A RELEASE OPT-IN FORM WHERE YOU MAY OPT IN TO THE THIRD-PARTY RELEASES CONTAINED IN SECTION 13.5(B) OF THE PLAN.  OPTING IN TO SUCH RELEASES IS AT YOUR OPTION AND MUST BE AFFIRMATIVELY EXERCISED ON THE RELEASE OPT IN FORM PROVIDED AND TIMELY RETURNED TO THE VOTING AGENT.  IF YOU RECEIVE THIS RELEASE OPT-IN FORM AND DO NOT ELECT TO OPT IN TO THE THIRD-PARTY RELEASES, YOU WILL NOT GRANT THE RELEASES CONTAINED IN SECTION 13.5(B) OF THE PLAN AND YOU WILL NOT BE A "RELEASED PARTY" UNDER THE PLAN, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN.**

**FOR THE AVOIDANCE OF DOUBT, IF YOU ARE A PREFERENCE SETTLEMENT ELECTING CREDITOR, A HOLDER OF DIP A CLAIM(S) ~~AND/~~, OR A HOLDER OF CLAIM~~S~~(S) IN AN UNIMPAIRED NON-VOTING CLASS, WHO OPTS IN TO THE THIRD-PARTY RELEASES IN YOUR RELEASE OPT-IN FORM, OR A HOLDER OF CLAIM(S) IN A VOTING CLASS WHO OPTS IN TO THE THIRD-PARTY RELEASES IN YOUR BALLOT, YOU ARE A RELEASING PARTY.**

The deadline for filing objections to confirmation of the Plan or final approval of the Disclosure Statement is ~~June 23~~July 20, 2026 at 5:00 p.m. (**Central Time**) (the "**Combined Objection Deadline**").  Any objections to the confirmation of the Plan or final approval of the Disclosure Statement must: (i) be in writing; (ii) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any order of the Bankruptcy Court; (iii) set forth the name of the objecting party and

2

the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; and (iv) provide the basis for the objection, and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection.  Registered users of the Bankruptcy Court's case filing system must electronically file their objections and responses on or before the Combined Objection Deadline.  All other parties in interest must file their objections and responses in writing with the United States Bankruptcy Court Clerk's Office, Rosario Saldana, United States Courthouse, 515 Rusk Avenue, Courtroom 402, 4th Floor, Houston, Texas 77002, on or before the Combined Objection Deadline.

---

If you have questions about this Notice of Non-Voting Status, please contact Kroll at:

**Telephone**: (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free)

**Email**:  FirstBrandsInfo@ra.kroll.com

**Website**:  https://restructuring.ra.kroll.com/FirstBrands

---

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, you will have consented to the releases contained in Section 13.5(b) of the Plan.  The releases as presented in the Plan are provided below:**

**SECTION 13.4      PLAN INJUNCTION.**

**(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released ~~or discharged~~ pursuant to the Plan, including under Section 13.5(a) or Section 13.5(b) of the Plan, or (ii) subject to exculpation pursuant to Section 13.6 of the Plan, and all other parties in interest, are permanently enjoined, from and after the**

3

**Effective Date, from taking any of the following actions against, as applicable, the ~~Plan~~FBG Debtors, the ~~Plan~~FBG Debtor~~'s~~s' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 13.6 of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section ~~13.5(a)~~1.1(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the ~~Plan~~ Debtors or ~~its~~their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.**

**(c)      Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order;**

4

the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)     As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).  If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.  For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d).

(e)     The injunctions in Section 13.4 shall extend to any successors of the PlanFBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

**SECTION 13.5     RELEASES.**

(a)     **Releases by the FBG Debtors and their Estates.  Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim**

6

or Interest before or during the Chapter 11 Cases; any other in- ~~in~~-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable. Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any ~~party or Entity~~Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c)  prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan ~~Debtor~~, or (~~d~~e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors~~, including the chapter 7 estate of an FBG Debtor and any trustee appointed to oversee the chapter 7 estate of such FBG Debtor.  For the avoidance of doubt, none of the DIP Loan Parties other than the Plan Debtor, nor the Parent Guarantors, shall be discharged or released in relation to (i) Allowed Lender Claims, (ii) DIP Collateral Trust SPV Recoveries, or (iii) Litigation Trust SPV Recoveries.~~.

(b)      **Third-Party Releases.** Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from,

7

in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the **Claims Ombudsman; the** Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases contained in <u>Section 13.5(b)</u> shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted **gross negligence, willful misconduct, or** actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any ~~party or Entity~~**Person** under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order. Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)      FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

8

(d)   NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

**SECTION 13.6      EXCULPATION.**

9

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE; THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED

10

**GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such~~, and in each case, to the maximum extent permitted by law~~: (i) the ~~Plan~~FBG Debtor~~s~~; (ii) ~~the~~Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; ~~and~~ (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

~~*FBG Debtors* means First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy.~~

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the ~~Plan~~FBG Debtor~~s~~ and ~~its~~their Estate~~s~~; (ii) ~~the~~Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees ~~(including any subcommittees thereof); (iii)~~; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party ~~or Ineligible Creditor~~ shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party ~~or Ineligible Creditor~~; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement ~~Election~~Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to

11

granting such releases.  For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

12

Dated: [   ]
      Houston, Texas

                                  _/s/  DRAFT_____

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   gabriel.morgan@weil.com
            clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   matt.barr@weil.com
            sunny.singh@weil.com
            andriana.georgallas@weil.com
            kevin.bostel@weil.com
            jason.george@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

13

**Exhibit 910**

**Form of Release Opt-In**

**OPTIONAL:         RELEASE OPT-IN FORM**

You are receiving this opt in form (the "**Release Opt-In Form**") because you are or may be a holder (a "**Holder**") of a Claim against ~~Premier Marketing Group, LLC (the "Plan~~ First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") that is not entitled to vote on the *Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors* filed on [   ], 2026 (Docket No. [   ]) (as may be modified, amended, or supplemented, the "**Plan**").[1]   A Holder of Claim(s) that affirmatively opts in to the third-party releases set forth below on or before ~~June 23~~July 20, 2026 at 5:00 p.m. (Central Time) (the "**Opt-In Deadline**") will grant the third-party releases under the Plan.  For the avoidance of doubt, if you receive this Release Opt-In Form and do not affirmatively opt in to the Third-Party Releases by the Opt-In Deadline but you are a Preference Settlement Electing Creditor or a Holder of Claim(s) in a Voting Class and you opt in to the Third-Party Releases in your Ballot, you are a Releasing Party.

If you believe you are a Holder of a DIP A Claim(s), or Claim(s) in Class 1 and/or Class 2 and choose to opt in to the third-party releases set forth in Section 13.5(b) of the Plan, please submit your election to opt in through one of the following methods: (i) completing, signing, dating, and returning this Release Opt-In Form promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to the Debtors' voting agent, Kroll Restructuring Administration LLC ("**Kroll**" or the "**Voting Agent**"), at the address set forth below, so that it is actually received by the Voting Agent prior to the Opt-In Deadline, or (ii) by completing and signing the Release Opt-In Form via the Online Portal located at https://restructuring.ra.kroll.com/FirstBrands (the "**Online Portal**").

**To ensure that your Release Opt-In Form is counted, you must complete, clearly sign, and timely return your Release Opt-In Form so that it is actually received by the Voting Agent by the Opt-In Deadline by *ONLY ONE* of the following methods:**

**Hard Copy Submission**

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the *Disclosure Statement for Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors, LLC*, filed on [   ], 2026 (Docket No. [   ]) (as may be amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**"), as applicable.

| **If by First Class Mail, Hand Delivery, or Overnight Mail:** |
|---|
| First Brands Group, LLC Ballot Processing<br>c/o Kroll Restructuring Administration LLC<br>850 3rd Avenue, Suite 412<br>Brooklyn, NY 11232<br><br>To arrange hand delivery of your Release Opt-In Form, please email the Voting Agent at FirstBrandsBallots@ra.kroll.com (with "First Brands Release Opt-In Form Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery. |

**Electronic Online Submission**

| **If by Online Portal** |
|---|
| To submit your Release Opt-In Form via the Voting Agent's Online Portal, visit https://restructuring.ra.kroll.com/FirstBrands. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Release Opt-In Form.<br><br>Release Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted. If submitting online, to have your opt in election counted, you must electronically complete, sign, and submit your electronic Release Opt-In Form by utilizing the Online Portal.<br><br>**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Release Opt-In Form:**<br><br>**Unique E-Opt-In ID#:** _____<br><br>The Online Portal is the sole manner in which Release Opt-In Forms will be accepted via electronic or online transmission.  Release Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.<br><br>**Holders are strongly encouraged to submit their Release Opt-In Forms via the Online Portal.  Parties who submit a Release Opt-In Form using the Voting Agent's Online Portal should NOT also submit a hard copy Release Opt-In Form.** |

**THIS RELEASE OPT-IN FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE OPT-IN DEADLINE.   IF THE RELEASE OPT-IN FORM IS RECEIVED AFTER THE OPT-IN DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1.        Claim(s) Held**. The undersigned hereby certifies that, as of the Voting Record Date of ~~May 26~~June 15, 2026, the undersigned was the Holder (or authorized signatory of such a

2

Holder) of the Claim(s) against the ~~Plan~~<u>FBG</u> Debtor<u>s</u> set forth below (check the applicable box(es)).

| DIP A Claims |
| --- |
| Class 1 Other Priority Claims |
| Class 2 Other Secured Claims |

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, <u>you will have consented to the releases contained in Section 13.5(b) of the Plan</u>. The releases as presented in the Plan are provided below:

**SECTION 13.4       <u>PLAN INJUNCTION</u>.**

(a)       Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.

(b)       Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released ~~or discharged~~ pursuant to the Plan, including under <u>Section 13.5(a)</u> or <u>Section 13.5(b)</u> of the Plan, or (ii) subject to exculpation pursuant to <u>Section 13.6</u> of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the ~~Plan~~<u>FBG</u> Debtor<u>s</u>, the ~~Plan~~<u>FBG</u> Debtor<u>'s</u><u>'</u> Estate<u>s</u>, the Wind Down Administrator, <u>the Claims Ombudsman,</u> the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to <u>Section 13.6</u> of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests,

or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the **FBG** Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the **FBG** Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the ~~Plan~~ Debtor**s** or ~~its~~their Estate**s** shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)    Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the **Claims Ombudsman; the** Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation

5

Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.   The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.   For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)   As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).   If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.   For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d).

(e)   The injunctions in Section 13.4 shall extend to any successors of the ~~Plan~~FBG Debtor~~s~~, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)   FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

SECTION 13.5   RELEASES.

(a)   Releases by the FBG Debtors and their Estates.   Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and

Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or

7

omission that is judicially determined by a Final Order to have constituted **gross negligence, willful misconduct, or** actual fraud committed by such **Released Party;** *provided* **that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a** Released Party, (b) any post-Effective Date obligations of any ~~party or Entity~~**Person** under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c)  **prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d)** any Intercompany Claims against the **FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the** Plan ~~Debtor~~, or (~~d~~**e**) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors~~, including the chapter 7 estate of an FBG Debtor and any trustee appointed to oversee the chapter 7 estate of such FBG Debtor. For the avoidance of doubt, none of the DIP Loan Parties other than the Plan Debtor, nor the Parent Guarantors, shall be discharged or released in relation to (i) Allowed Lender Claims, (ii) DIP Collateral Trust SPV Recoveries, or (iii) Litigation Trust SPV Recoveries.~~**.**

(b)     **Third-Party Releases. Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the** Claims Ombudsman; the **Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the**

8

ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(b) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any ~~party or Entity~~Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)     NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6     EXCULPATION.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE,

9

MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE; THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

10

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such, and in each case, to the maximum extent permitted by law: (i) the PlanFBG Debtors; (ii) theNeal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; and (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

*FBG Debtors* means First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy.

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the PlanFBG Debtors and itstheir Estates; (ii) theNeal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees (including any subcommittees thereof); (iii); (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party or Ineligible Creditor shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party or Ineligible Creditor; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement ElectionOpt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases.  For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

11

**By checking the box below, the undersigned Holder of a Claim not entitled to vote identified in Item 1 above, having received notice of the opportunity to opt in to granting the releases contained in Section 13.5(b) of the Plan:**

> **Elects to <u>OPT IN</u> to the releases contained in Section 13.5(b) of the Plan.**

**Item 3.**     **Certifications**. By signing this Release Opt-In Form, the undersigned certifies that:

a.     as of the Voting Record Date, either: (i) the Holder is the Holder of the Claims set forth in Item 1; or (ii) the Holder is an authorized signatory for an entity that is the Holder of the Claims set forth in Item 1;

b.     the undersigned has received a copy of the Notice of Non-Voting Status and the Release Opt-In Form and that the Release Opt-In Form is made pursuant to the terms and conditions set forth therein;

c.     if applicable, the undersigned has submitted the same election concerning the releases with respect to all Claims held by the undersigned; and

d.     no other Release Opt-In Forms have been submitted with respect to the Holder's Claims, or, if any other Release Opt-In Forms have been submitted with respect to such Claims, then any such earlier Release Opt-In Forms are hereby revoked.

Name of Holder:     _____

                    (*print or type*)

Signature:          _____

Name of Signatory:  _____

                    (*if other than Holder, include name and title*)

Title:              _____

Address:            _____

                    _____

                    _____

                    _____

12

13

E-mail Address: _____

Date Completed: _____

**IF YOU WISH TO OPT IN, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OPT-IN FORM AND RETURN IT TO THE VOTING AGENT BY *JUST ONE* OF THE PREVIOUSLY OUTLINED METHODS: FIRST CLASS OR OVERNIGHT MAIL, HAND DELIVERY, OR BY ONLINE TRANSMISSION VIA THE ONLINE PORTAL.**

---

**THIS OPT-IN FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE THE OPT-IN DEADLINE OF ~~JUNE 23~~JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

---

13

**<u>Exhibit ~~10~~12</u>**

**Form of Preference Settlement ~~Election~~<u>Opt-In</u> Form**

**OPTIONAL:          PREFERENCE SETTLEMENT ~~ELECTION~~OPT-IN FORM**

You are receiving this election form (the "**Preference Settlement ~~Election~~Opt-In Form**") because you may be a Trade Creditor,[1] Supply Chain Financer,[2] or Factor[3] of one or more of First Brands Group Holdings, LLC, its Debtor Subsidiaries and Viceroy Private Capital, LLC (collectively, "**FBG Debtors**") as of ~~May 26~~June 15, 2026 (the "~~Election~~**Preference Settlement Record Date**") (each, a "**Preference Settlement Eligible Creditor**" and collectively, the "**Preference Settlement Eligible Creditors**") that may be entitled to participate in the Preference Settlement set forth in the *Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors*, filed on ~~May~~ [  ], 2026 (Docket No. [  ]) (as may be modified, amended, or supplemented, the "**Plan**").[4] Preference Settlement Eligible Creditors are ~~E~~eligible ~~Creditors under the Plan (unless determined to be Ineligible Creditors, on the terms~~ set forth in the Plan~~). All Eligible Creditors (including Preference Settlement Eligible Creditors) will separately receive a Notice of Eligible Creditor Status informing them of their rights and choices in regards to the potential issuance of Class 3(b) Litigation Trust Interests.~~to opt-in to the Preference Settlement under the Plan.

**You are not required to participate in the Preference Settlement ~~to receive your Class 3(b) Litigation Trust Interests under the Plan~~. Participation in the Preference Settlement, which requires the contribution of your Direct Creditor Claims to the Litigation Trust, is optional. Under certain circumstances, the Litigation Trust may commence an action against you that will reverse the waiver of Preference Actions ~~(~~for Trade Creditors~~)~~, or the modified new value defense ~~to Preference Actions (~~for Supply Chain Financers and Factors~~).~~, if Adverse Conduct is alleged by the Litigation Trust and ultimately established by Final Order, as required by the Plan.  In such an instance, you**

---

[1]  "**Trade Creditor**" means any Person (including any Person that was paid through a payment intermediary but excluding any such payment intermediary) that, as of the Petition Date, holds a General Unsecured Claim ~~as of the Petition Date~~ against an FBG Debtor arising from the ordinary course of the FBG Debtor's business for goods sold, services rendered, or other trade obligations incurred prior to the Petition Date, excluding any Person whose claim arises from a (secured or unsecured) loan, financing arrangement, bond, note, or other financial indebtedness.  For the avoidance of doubt, a Trade Creditor shall not include any Entity that qualifies as a Factor or Supply Chain Financer.

[2]  "**Supply Chain Financer**" means any financial institution, fund, or other Person that (i) provided (or asserts that it provided) financing or liquidity to suppliers or vendors of one or more FBG Debtors or reimbursed any FBG Debtor Affiliate for providing such financing or liquidity in connection with such suppliers' or vendors' accounts receivable  arising from the supply of goods or services to such FBG Debtors, whether through supply chain financing programs, reverse factoring arrangements, receivables purchase facilities, or similar arrangements; or (ii) remitted payments (or asserts that it remitted payments) on behalf of one or more FBG Debtors relating to accounts payable arising from the supply of goods or services to such FBG Debtors, and as identified in an exhibit to the Litigation Trust Agreement.

[3]  "**Factor**" means any Person that purchased, or intended or agreed to purchase, accounts receivable at a discount from one or more FBG Debtors, and as identified in an exhibit to the Litigation Trust Agreement.

[4]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the *Disclosure Statement for Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors*, filed on ~~May~~ [  ], 2026 (Docket No. [  ]) (as may be amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**"), as applicable.

2

will not regain ownership and/or control of your Direct Creditor Claims.  However, such Preference Settlement Electing Creditor's grant of ~~Third-Party~~Third-Party Releases will be reversed and such creditor will no longer be a ~~"~~"Releasing Party~~"~~" (or a Released Party) under the Plan.  For all these reasons, you should carefully consider whether to participate in the Preference Settleement based upon your individual circumstances—including your views on your potential preference exposure and value of your potential Direct Creditor Claims.  Contribution of your Direct Creditor Claims is irrevocable.

A Preference Settlement Eligible Creditor will participate in the Preference Settlement set forth below if **(i) such Preference Settlement Eligible Creditor affirmatively elects to participate by properly completing <u>Item 1 and Item 2</u> of this Preference Settlement ~~Election~~Opt-In Form and submitting such completed Preference Settlement ~~Election~~Opt-In Form in accordance with the procedures set forth below so that it is <u>actually received</u> by Kroll Restructuring Administration ("Kroll") on or before the date that is forty-five (45) days after the ~~Effective~~Confirmation Date (the "Preference Settlement ~~Election~~Opt-In Deadline") electing to (a) participate in, and receive the benefits of, the Preference Settlement, (b) grant the releases contained in <u>Section 13.5(b)</u> of the Plan, and (c) contribute any direct (<u>non-</u>~~non-~~derivative) Claims against any non-Debtor Person that relate to the conduct of the Debtors and/or Affiliates or professionals of the Debtors on or before the Petition Date (excluding any Claims against a Released Party that are released under the Plan) ("Direct Creditor Claims") to the Litigation Trust and (ii) you do not meet the definition of Adverse Conduct,[5] as determined by a Final Order, and (iii) you are not a Specified Non-Released Party;[6]** *provided* **that if a Preference Action is brought against a Trade Creditor that did not timely opt in to the Preference Settlement, such Trade Creditor shall have an additional thirty (30) days following service of the Preference Action to opt in to the Preference Settlement.**  Preference Settlement Eligible

---

[5]  "**Adverse Conduct**" means (i) engaged in wrongful, actual, or constructively fraudulent conduct against any Debtor or Affiliate of any Debtor, or otherwise participated, conspired with, or acted in concert with, any Person that engaged in wrongful, actual or constructively fraudulent conduct against any Debtors, creditors, or lenders of the Debtors (or Affiliates of Debtors), (ii) received an avoidable transfer on grounds other than section 547 of the Bankruptcy Code from any of the Debtors, or (iii) received a transfer not in good faith.

[6]  "**Specified No<u>n</u>-Released Parties**" means (i) any Person (or Affiliate of any Person) against which any action has been commenced on behalf of a Debtor or its Estate in this Bankruptcy Court or any court of competent jurisdiction prior to the Confirmation Hearing, including, for the avoidance of doubt, any defendants named or to be named by the Debtors in the James Complaint or named by the Debtors in the Onset Complaint; (ii) any Person (or Affiliate of any Person) identified as a defendant or a potential defendant of a Cause of Action in the Plan Supplement; (iii) any Person (or Affiliate of any Person) that is charged with a crime (whether before or after the ~~Effective~~Confirmation Date) based on conduct related to the Debtors; (iv) any Person (or Affiliate of any Person) that meets the definition of Adverse Conduct, as determined by a Final Order of the Bankruptcy Court; and (v) any subsequent transferee of any of the foregoing with respect to any assets of or transfers by the Debtors or their Affiliates or Representatives.  Notwithstanding the foregoing or anything else in the Plan to the contrary (including anything in the definition of Released Party), and for the avoidance of doubt, neither the ~~Plan~~FBG Debtor~~s~~ and ~~its~~their Estate~~s~~, nor any member of the Ad Hoc Group, Ad Hoc Group Advisors, Creditors' Committee and each of its members, Special Committee member, Independent Manager, Specified Executive, ~~Debtor~~ Professional, Prepetition Secured Party, nor DIP Secured Party, with respect to each of the foregoing, solely in their capacities as such, shall be construed to be or deemed to be a Specified Non-Released Party.

3

Creditors who timely elect to participate in the Preference Settlement will be treated as "**Preference Settlement Electing Creditors.**"

If you are a Preference Settlement Eligible Creditor and choose to opt in to the Preference Settlement, you must submit your "opt in" election through one of the following methods: (i) completing, signing, dating, and returning this Preference Settlement ~~Election~~Opt-In Form promptly in the enclosed reply envelope provided, or otherwise via first class mail, overnight courier, or hand delivery to Kroll at the address set forth below, so that it is **actually received** by Kroll prior to the Preference Settlement ~~Election~~Opt-In Deadline, or (ii) by completing and signing the electronic version of your Preference Settlement ~~Election~~Opt-In Form and submitting it via the Online Portal located at https://restructuring.ra.kroll.com/FirstBrands.   Instructions for submitting this Preference Settlement ~~Election~~Opt-In Form via either of the specified, valid methods are outlined below.

**If you timely submit your "opt in" Preference Settlement ~~Election~~Opt-In Form in accordance with the instructions set forth herein, you will (i) grant the releases contained in Section 13.5(b) of the Plan; (ii) contribute your Direct Creditor Claims to the Litigation Trust; and (iii) participate in, and receive the benefit of, the Preference Settlement, including, if you are (a) a Trade Creditor, you will be released from Preference Actions and (b) if you are a Supply Chain Financer or a Factor, you will receive the benefit of the Modified New Value Elements, as described in more detail in Section 6.11(e) of the Plan.**

If you have any questions about the status of your Claim or if you wish to obtain paper copies of the Plan and the Disclosure Statement, free of charge, you may contact Kroll, by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Please be advised that Kroll cannot provide legal advice.

Copies of the Plan and Disclosure Statement and Disclosure Statement Order (with Solicitation and Voting Procedures annexed thereto as Exhibit 2) can also be accessed, free of charge, online at https://restructuring.ra.kroll.com/FirstBrands.   You may also access electronic copies of the Plan, Disclosure Statement, and any other solicitation materials via the QR Code below.  Procedures for the submission and tabulation of the Preference Settlement ~~Election~~Opt-In Forms are located in paragraphs 27–39 of the Disclosure Statement Order.

To access the Online Portal and view the Plan, Disclosure Statement, Disclosure Statement Order, and other relevant materials, please use the QR Code set forth below:

4



**To ensure that your Preference Settlement ~~Election~~Opt-In Form is processed, clearly sign and timely return your properly completed Preference Settlement ~~Election~~Opt-In Form (i) in hard copy (a) in the enclosed prepaid pre-addressed business reply envelope, or (b) via first-class mail, overnight courier, or hand delivery or (ii) online according to instructions provided below.**

**See Below for Paper Copy and Online Preference Settlement ~~Election~~Opt-In Form Instructions**

**THIS PREFERENCE SETTLEMENT ~~ELECTION~~OPT-IN FORM MUST BE ACTUALLY RECEIVED BY KROLL BY THE PREFERENCE SETTLEMENT ~~ELECTION~~OPT-IN DEADLINE. IF THE PREFERENCE SETTLEMENT ~~ELECTION~~OPT-IN FORM IS RECEIVED AFTER THE PREFERENCE SETTLEMENT ~~ELECTION~~OPT-IN DEADLINE, IT WILL NOT BE PROCESSED AND YOU WILL NOT BE A PREFERENCE SETTLEMENT ELECTING CREDITOR AND WILL NOT PARTICIPATE IN THE PREFERENCE SETTLEMENT IN EXCHANGE FOR THE TREATMENT PROVIDED IN THE PREFERENCE SETTLEMENT SET FORTH BELOW.**

**CRITICAL INFORMATION REGARDING YOUR CLAIMS
AND PROCEDURES FOR AGREEING TO DIFFERENT TREATMENT**

**If you do not timely, properly, and affirmatively opt in to the Preference Settlement by the Preference Settlement ~~Election~~Opt-In Deadline, you will not be ~~an~~a Preference Settlement Electing Creditor for purposes of the Plan, you will not contribute your Direct Creditor Claims to the Litigation Trust, you will not grant the releases contained in Section 13.5(b) of the Plan, and therefore, you will not receive the benefit of the Preference Settlement. Specifically, to the extent you are (i) a Trade Creditor, you will not be released from Preference Actions under the Plan, or (ii) a Supply Chain Financer or Factor, you will not receive the benefit of the Modified New Value Elements, as described in more detail in Section 6.11(e) of the Plan.**

5

In accordance with the Preference Settlement, (i) Trade Creditors who opt-in to become Preference Settlement Electing Creditors will be released from Preference Actions under the Plan, and (ii) Supply Chain Financers and Factors who opt-in to become Preference Settlement Electing Creditors will receive the benefit of the Modified New Value Elements as described in more detail in Section 6.11(e) of the Plan.  You should contact the Debtors if you are unsure as to your classification as a Trade Creditor, Supply Chain Financer, or Factor.

~~Notwithstanding anything herein to the contrary, the~~The creation of the Litigation Trust, the issuance of Class 3(b) Litigation Trust Interests to Eligible Creditors, the Preference Settlement, and any distributions or benefits to Preference Settlement Electing Creditors from the Litigation Trust or under the Preference Settlement, including (i) the release of Trade Creditors from Preference Actions and (ii) the benefit of the Modified New Value Elements as described in Section 6.11(e) of the Plan for Supply Chain Financers and Factors, are each contingent upon the confirmation of the Plan by the Bankruptcy Court~~, approval of the Global Settlement, and the occurrence of the Effective Date~~.  In the event that the Plan is not confirmed~~, the Global Settlement is not approved, or the Effective Date does not occur,~~ the Litigation Trust will not be established, and the Preference Settlement will be of no force and effect.

**If you timely, properly, and affirmatively opt in to the Preference Settlement by the Preference Settlement ~~Election~~Opt-In Deadline** by completing and submitting a Preference Settlement ~~Election~~Opt-In Form in accordance with the procedures set forth herein, you will **have consented to the releases contained in Section 13.5(b) of the Plan and be a Releasing Party and contributed your Direct Creditor Claims to the Litigation Trust.  This means you will be releasing claims against~~, (i)~~ the ~~Plan Debtor and its Estate, (ii) the members of the Special Committees, (iii) certain executives of the FBG Debtors employed by Alvarez & Marsal North America, LLC, (iv) professionals of the Debtors and the Creditors' Committee, and (vii) certain other~~"Released ~~third-p~~Parties ~~as~~" set forth in the Plan.  For your reference, the applicable release provisions and related definitions in the Plan are set forth in Exhibit 1.**

**Preference Settlement ~~Election~~<u>Opt-In</u> Form.**

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE DISCLOSURE STATEMENT AND THE PLAN, ~~INCLUDING~~ THE ~~GLOBAL SETTLEMENT,~~ PREFERENCE SETTLEMENT, AND LITIGATION TRUST PROVISIONS THEREIN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**IF YOU OBJECT TO THE PLAN, CONFIRMATION ORDER, ~~OR A~~<u>A</u>NY RELATED SETTLEMENTS~~, INCLUDING THE GLOBAL SETTLEMENT~~, OR RELIEF SOUGHT IN FURTHERANCE THEREOF, YOU WILL BE BARRED FROM PARTICIPATING IN THE PREFERENCE SETTLEMENT AND ANY ELECTION YOU MAKE IN <u>ITEM 1</u> BELOW TO OPT IN TO THE PREFERENCE SETTLEMENT WILL NOT BE COUNTED.**

**Item 1.        Election.**

**PURSUANT TO THE PLAN~~, GLOBAL SETTLEMENT,~~ AND PREFERENCE SETTLEMENT, IF YOU TIMELY, PROPERLY, AND AFFIRMATIVELY OPT IN, YOU, IN EXCHANGE FOR PARTICIPATING IN, AND RECEIVING THE BENEFITS OF, THE PREFERENCE SETTLEMENT (I) CONSENT TO THE RELEASE PROVISIONS IN <u>SECTION 13.5(b)</u> OF THE PLAN (WHICH ARE SUMMARIZED ON <u>EXHIBIT 1</u>, AND (II) CONTRIBUTE YOUR DIRECT CREDITOR CLAIMS TO THE LITIGATION TRUST.**

**By checking the box below, the undersigned holder, having received notice of the opportunity to opt in to the Preference Settlement:**

---

**Elects to <u>OPT IN</u> to the Preference Settlement.**

---

**Item 2.        Certifications**.

By signing this Preference Settlement ~~Election~~<u>Opt-In</u> Form, the undersigned certifies that:

a.        as of the ~~Election~~<u>Preference Settlement</u> Record Date, either the undersigned is: (i) a Trade Creditor, Supply Chain Financer, or Factor holding Claims against one or more FBG Debtor; or (ii) is an authorized signatory for an entity that is a Trade Creditor, Supply Chain Financer, or Factor holding Claims against one or more FBG Debtor;

b.        the undersigned has received a copy of this Preference Settlement ~~Election~~<u>Opt-In</u> Form; and

c.        no other Preference Settlement ~~Election~~<u>Opt-In</u> Form has been submitted with respect to the holder's Claims, or if any other Preference Settlement ~~Election~~<u>Opt-In</u> Forms have been submitted with respect to such Claims,

7

then any such earlier Preference Settlement ~~Election~~Opt-In Forms are hereby revoked.

Name of Holder: _____
(*print or type*)

Signature: _____

Name of Signatory: _____
(*if other than Holder, include name and title*)

Title: _____

Address: _____

_____

_____

E-mail Address: _____

Date Completed: _____

**IF YOU WISH TO OPT IN TO THE PREFERENCE SETTLEMENT, PLEASE COMPLETE, SIGN, AND DATE THIS PREFERENCE SETTLEMENT ~~ELECTION~~OPT-IN FORM AND RETURN IT TO KROLL VIA *JUST ONE* OF THE FOLLOWING METHODS SO THAT IT IS *ACTUALLY RECEIVED* BY KROLL ON OR BEFORE THE PREFERENCE SETTLEMENT ~~ELECTION~~OPT-IN DEADLINE:**

| **To Submit Your Preference Settlement ~~Election~~Opt-In Form Via Online Portal** |
| --- |
| To submit your Preference Settlement ~~Election~~Opt-In Form via Kroll's Online Portal, visit https://restructuring.ra.kroll.com/FirstBrands.  Click on the "**Submit E-Ballot**" section of the website and follow the instructions to submit your Preference Settlement ~~Election~~Opt-In Form.<br><br>IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Preference Settlement ~~Election~~Opt-In Form:<br><br>**Unique E-Election Form ID#:** _____<br><br>The Online Portal is the sole manner in which your Preference Settlement ~~Election~~Opt-In Form will be accepted via electronic or online transmission. Preference Settlement ~~Election~~Opt-In Forms submitted by facsimile, email or other means of electronic transmission will not be valid.  Any Preference Settlement ~~Election~~Opt-In Form submitted through the Online Portal will be deemed to contain an electronic holder signature that is immediately legally valid and effective.<br><br>Please complete and submit an electronic Preference Settlement ~~Election~~Opt-In Form for each Unique E-Election ID# you receive, as applicable.  Holders who cast a Preference Settlement ~~Election~~Opt-In Form using the Online Portal should NOT also submit a paper copy of their Preference Settlement ~~Election~~Opt-In Form. |

8

| **To Submit Your Preference Settlement ~~Election~~Opt-In Form Via Paper Copy** |
|---|
| To submit your election via a paper Preference Settlement ~~Election~~Opt-In Form, complete <u>Item 1 and Item 2</u> above and submit your paper Preference Settlement ~~Election~~Opt-In Form in the pre-addressed, pre-paid return envelope provided, or otherwise, by first-class mail, hand delivery, or overnight courier to:<br><br>First Brands Group, LLC Ballot Processing<br>c/o Kroll Restructuring Administration LLC<br>850 3rd Avenue, Suite 412<br>Brooklyn, NY 11232<br><br>To arrange hand delivery of your Preference Settlement ~~Election~~Opt-In Form, please email Kroll at FirstBrandsBallots@ra.kroll.com (with "First Brands Preference Settlement ~~Election~~Opt-In Form Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery. |

9

**Exhibit 1**

**Release, Exculpation, Plan Injunction**

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, you will have consented to the releases contained in Section 13.5(b) of the Plan.  The releases as presented in the Plan are provided below:

**SECTION 13.4      PLAN INJUNCTION.**

(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.

(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released ~~or discharged~~ pursuant to the Plan, including under Section 13.5(a) or Section 13.5(b) of the Plan, or (ii) subject to exculpation pursuant to Section 13.6 of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the ~~Plan~~FBG Debtor~~s~~, the ~~Plan~~FBG Debtor~~'s~~' Estate~~s~~, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 13.6 of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests,

2

or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the **FBG** Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the **FBG** Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the ~~Plan~~ Debtors or ~~its~~their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)      Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the **Claims Ombudsman; the** Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation

3

Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in **Section 14.1** of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)      As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).  If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.  For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce **Section 13.4(d)**.

(e)      The injunctions in **Section 13.4** shall extend to any successors of the ~~Plan~~**FBG** Debtor**s**, the Wind Down Administrator, **the Claims Ombudsman,** the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)      FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

**SECTION 13.5      RELEASES.**

(a)      *Releases by the FBG Debtors and their Estates.*  Except as otherwise expressly set forth below in **Section 13.5,** notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the **Confirmation Date and**

4

Effective Date, **as applicable,** the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, **the Claims Ombudsman,** the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the **FBG** Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the **FBG** Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the **Confirmation Date or** Effective Date, **as applicable,** including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; **the Claims Ombudsman;** the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-~~in~~-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before  the **Confirmation Date or** Effective Date**, as applicable**.  Notwithstanding anything to the contrary in the foregoing, the releases contained in <u>Section 13.5(a)</u> shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or

omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any ~~party or Entity~~Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c)  prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan ~~Debtor~~, or (~~d~~e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors~~, including the chapter 7 estate of an FBG Debtor and any trustee appointed to oversee the chapter 7 estate of such FBG Debtor.  For the avoidance of doubt, none of the DIP Loan Parties other than the Plan Debtor, nor the Parent Guarantors, shall be discharged or released in relation to (i) Allowed Lender Claims, (ii) DIP Collateral Trust SPV Recoveries, or (iii) Litigation Trust SPV Recoveries.~~.

(b)     **Third-Party Releases.**  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the

6

ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(b) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any ~~party or Entity~~Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES ~~OR INELIGIBLE CREDITORS~~ SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)     NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

**SECTION 13.6     EXCULPATION.**

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE,

7

MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE; THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such, and in each case, to the maximum extent permitted by law: (i) the PlanFBG Debtors; (ii) theNeal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; and (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

*FBG Debtors* means First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy.

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the PlanFBG Debtors and itstheir Estates; (ii) theNeal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees (including any subcommittees thereof); (iii); (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party or Ineligible Creditor shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party or Ineligible Creditor; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement ElectionOpt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases.  For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

9

10

## Exhibit 13

**Litigation Trust – Notice of Participation Procedures**

*Date of Notice: ~~May~~June [~~26~~22], 2026*

<div style="text-align:center">

**ACTION REQUIRED**
**BY: ~~JUNE 23~~JULY [13], 2026 at 5:00pm CT**

**FAILURE TO PROVIDE THE REQUIRED INFORMATION BY THE LITIGATION TRUST INTEREST RESPONSE DEADLINE MAY RESULT IN YOU <u>NOT RECEIVING LITIGATION TRUST INTERESTS YOU ARE ENTITLED TO</u> AS A HOLDER OF CLAIMS IN THE FIRST BRANDS GROUP CASES AND THEREBY FORFEITING PAYMENTS YOU WOULD OTHERWISE BE ENTITLED TO**

</div>

<div style="text-align:center">

<u>**NOTICE OF PARTICIPATION PROCEDURES**</u>
for holders of
**DIP A Claims, Roll-Up Claims, First Lien Claims, Second Lien Claims and/or Side Car Term Loan Claims**
with respect to
**First Brands Group, LLC and its Debtor Affiliates**
to receive
**Litigation Trust Interests**

<u>**RESPONSE DEADLINE:**</u>
~~June 23~~July [13], 2026 at 5:00pm CT
*(as may be extended with notice by the applicable administrative agent to affected lenders)*

<u>**PLEASE READ FIRST – THESE INSTRUCTIONS CONTAIN IMPORTANT INFORMATION ABOUT THE DOCUMENTS YOU ARE REQUIRED TO COMPLETE**</u>

</div>

You are receiving this Notice of Participation Procedures (this "**Notice**") because you are a holder (a "**Holder**") of DIP A Claims, ~~Roll Up~~Roll-Up Claims, First Lien Claims, Second Lien Claims and/or Side Car Term Loan Claims (together, the "**Applicable Claims**") in the bankruptcy proceedings of First Brands Group, LLC and its Debtor affiliates (collectively, the "**Company**") and are therefore entitled to receive beneficial interests in a Litigation Trust. Such Applicable Claims are subject to the Chapter 11 Plan of Premier Marketing Group, LLC (as may be amended, modified or supplemented in accordance with the terms thereof, the "**Plan**"). You can access the Plan at: https://restructuring.ra.kroll.com/firstbrands/Home-DocketInfo. Unless otherwise defined herein, capitalized terms used but not defined herein have the respective meanings assigned to them in the Plan.

<div style="text-align:center">1</div>

**OUTLINE OF RELEVANT FORMS AND ANNEXES FOR
LITIGATION TRUST INTERESTS**

**Check each of the boxes below** to evidence that you have completed each required step:

☐      **Notice of Participation Procedures** – Check the box to confirm that you have read this Notice and understand the disclosures, disclaimers, and information contained herein and consulted with your own legal and tax advisors to the extent you deemed necessary or appropriate.
         **Section 1** – Timeline
         **Section 2** – Treatment of Your ~~DIP~~Applicable Claims
         **Section 3** – Litigation Trust Funding
         **Section 4** – Additional Process Information and Disclaimers

☐      **Annex 1 (Designation of Applicable Claims as of Litigation Trust Distribution Record Date)** – Identify your Applicable Claims in Annex 1 and whether any person, such as one of your affiliates or a buyer of your Applicable Claims, should be credited with all or a percentage of your Litigation Trust Interests. Check the box to confirm you have read and completed Annex 1 and have provided accurate information as to your claims. **All holders of Applicable Claims must check this box and complete Annex 1 in order to designate another party to receive any Litigation Trust Interests. All holders of Applicable Claims and their designees (in which event, both such holder and its designee) must provide an IRS Form W-8 or W-9, as applicable.**

         IF YOU DO NOT PROVIDE AN IRS FORM W-8 OR W-9, AS APPLICABLE, IN CONNECTION HEREWITH, **YOU AND, AS APPLICABLE, YOUR DESIGNEE WILL FOREGO ANY DISTRIBUTIONS** MADE BY THE LITIGATION TRUST WITH RESPECT TO ANY LITIGATION TRUST INTERESTS HELD UNTIL SUCH FORM IS RECEIVED. NOTWITHSTANDING THE FOREGOING, TO THE EXTENT ANY DISTRIBUTION *IS* MADE TO YOU OR YOUR DESIGNEE, YOU OR YOUR DESIGNEE WILL BE RESPONSIBLE FOR ANY WITHHOLDING RELATED THERETO.

☐      **Annex 2 (Signature Page to Governing Documents)**. – You must execute a signature page to the Litigation Trust Agreement. Check the box to confirm you have read the Litigation Trust Agreement, consulted with your own advisors to the extent you deemed necessary or appropriate, and executed the signature page thereto.

☐      **Annex 3 (Commitment Agreement Committing to Fund the Litigation Trust)**. – DIP A Lenders only: you may elect to commit to provide funding to the Litigation Trust in consideration for the issuance of bankruptcy claims that will result in the issuance of Class 1 Litigation Trust Interests to you on the terms, and by completing the procedures, provided in Annex 3 hereto. Check the box to confirm you have read and completed Annex 3. **All holders of DIP A Claims must check this box and complete Annex 3 in order to receive such Class 1 Litigation Trust Interests.**

<u>**NOTICE OF PARTICIPATION PROCEDURES**</u>

This Notice contains the following Sections:

| | |
|---|---|
| **Section 1.** | **Timeline:** This Notice contains deadlines by which you must provide information and documentation, or you may not receive Litigation Trust Interests you are entitled to as a holder of DIP A Claims, Roll-Up Claims, First Lien Claims, Second Lien Claims and/or Side Car Term Loan Claims.  If you are not a holder of Litigation Trust Interests on the date of a distribution from the Litigation Trust, you will forfeit the right to receive any portion of such distribution that you would otherwise be entitled to. |
| **Section 2.** | **Treatment of Your Applicable Claims:** On behalf of your DIP A Claims, Roll-Up Claims, First Lien Claims, Second Lien Claims and/or Side Car Term Loan Claims you will receive non-transferable Litigation Trust Interests. |
| **Section 3.** | **Litigation Trust Funding:** Holders of DIP A Claims may elect to fund the Litigation Trust in exchange for priority Class 1 Litigation Trust Interests by also completing Annex 3 hereto. |
| **Section 4.** | **Additional Process Information and Disclaimers.** |
| **Section 5.** | **Annexes 1 – 3.** |

**You <u>must</u> provide the information required by this Notice by sending to WSFS[1] at
FBGLitigationTrust@wsfsbank.com**

**If you have any questions regarding this Notice and submission of information,
please direct all inquiries to the following list-serve to ensure a timely response:
FBGLitigationTrust@groups.gibsondunn.com**

---

[1] Wilmington Savings Fund Society, FSB ("**WSFS**") is the current DIP Agent and will maintain the register for the Litigation Trust.

3

**SECTION 1 – TIMELINE**

**FAILURE TO PROVIDE THE REQUIRED INFORMATION BY THE DEADLINES OUTLINED BELOW (AS MAY BE EXTENDED) MAY RESULT IN YOU <u>NOT RECEIVING LITIGATION TRUST INTERESTS YOU ARE OTHERWISE ENTITLED TO</u> AS A HOLDER OF APPLICABLE CLAIMS IN THE FIRST BRANDS GROUP CASES.**

| Date | Action Item |
|---|---|
| ~~May [26], 2026~~ | • ~~The date this Notice will be issued to all Holders of Applicable Claims.~~ |
| June ~~12~~[22], 2026 at 5:00pm CT<br><br>(“*Litigation Trust Distribution Record Date*”) | • <u>The date this Notice will be issued to all Holders of Applicable Claims.</u><br>• The Litigation Trust Distribution Record Date for issuance of Litigation Trust Interests.<br>• The relevant administrative agents will freeze all lender registers for all Applicable Claims. |
| ~~June 23~~<u>July [13]</u>, 2026 at 5:00pm CT<br><br>(“*Litigation Trust Interest Response Deadline*”) | • **Deadline** to provide the information required by this Notice by completing **all Annexes hereto** and conveying to WSFS at:<br>**FBGLitigationTrust@wsfsbank.com** |
| The ~~Effective~~<u>Confirmation</u> Date of the Plan<br>(anticipated to be no earlier than ~~June~~<u>July</u> [~~26~~<u>31</u>]) | |
| **60 calendar days following the ~~Effective~~<u>Confirmation</u> Date of the Plan**<br><br>(“*Litigation Trust Reconciliation Period*”) | • WSFS will use this time period to manually reconcile any Applicable Claims that are subject to unsettled trades and any missing documentation.<br>• At the end of this period, all Litigation Trust Interests will be distributed to lenders of record, including previously unsettled trades that were settled during the Litigation Trust Reconciliation Period. |
| ~~[September 24], 2026~~<br><br><u>The Confirmation Date of the Plan + 60 calendar days</u><br><br>(“*Litigation Trust Interests Issuance Date*”) | • The date that all Litigation Trust Interests will be issued.<br>• <u>All Litigation Trust Interests will be deemed issued as of the Confirmation Date of the Plan</u> |

4

**SECTION 2 – TREATMENT OF YOUR APPLICABLE CLAIMS**

The Plan provides for holders of Applicable Claims of at least [$1000] in principal amount (the "**Applicable Claims**") to receive beneficial interests (the "**Litigation Trust Interests**") in the Litigation Trust (the "**Litigation Trust**") to be established in connection with the Plan and Disclosure Statement.

If you (i) do nothing in response to this Notice, (ii) hold Applicable Claims, and (iii) are otherwise eligible to receive Litigation Trust Interests pursuant to the Plan and, as described in the Disclosure Statement, you will receive **non-transferrable** Litigation Trust Interests and will be deemed to be a party to the Litigation Trust Agreement.

Specifically:

- Litigation Trust Class 1 Funding Contributors (as outlined in Section 3) will receive **Class 1 Litigation Trust Interests**.
- Holders of DIP A Claims will receive **Class 2 Litigation Trust Interests** in exchange for their DIP A Claims against the Plan Debtor.
- Holders of Roll-Up Claims will receive **Class 3(a) Litigation Trust Interests** in exchange for their Roll-Up Claims against the Plan Debtor.
- A GUC Ombudsman will receive **Class 3(b) Litigation Trust Interests** as agent to holders of (i) Allowed General Unsecured Claims against the Plan Debtor and (ii) accepted Eligible Creditor Claims.
  - However, nothing in this Notice shall pertain to Class 3(b) Litigation Trust Interests.
- Holders of First Lien Claims, Second Lien Claims and Side Car Term Loan Claims will receive **Class 3(c) Litigation Trust Interests** in exchange for their First Lien Claims, Second Lien Claims and Side Car Term Loan Claims against the Plan Debtor.

**THE APPLICABLE ADMINISTRATIVE AGENTS WILL FREEZE ALL LENDER REGISTERS ON THE LITIGATION TRUST DISTRIBUTION RECORD DATE (JUNE 12[22], 2026). IF AN APPLICABLE CLAIM IS SUBJECT TO AN UNSETTLED TRADE AS OF THE LITIGATION TRUST DISTRIBUTION RECORD DATE, THE LITIGATION TRUST WILL NOT ISSUE LITIGATION TRUST INTERESTS TO THE BUYER OF SUCH APPLICABLE CLAIM UNLESS AND UNTIL ALL INFORMATION LISTED IN SECTION 4 IS COMPLETE DURING THE LITIGATION TRUST INTEREST RECONCILIATION PERIOD (I.E., 60 DAYS AFTER JUNE [26], 2026 THE CONFIRMATION DATE OF THE PLAN).**

### SECTION 3 – LITIGATION TRUST FUNDING

Holders of DIP A Claims of at least [$1000] in principal amount as of the Litigation Trust Distribution Record Date that are not natural persons (each, an "**Eligible Holder**") have the opportunity to commit to make Litigation Trust Funding Commitments to fund Litigation Trust Funding Contributions up to their pro rata share of DIP A Claims of aggregate Initial Litigation Trust Funding Commitments of $50,000,000 (the "**Opportunity**"). Such Litigation Trust Funding Commitments shall be treated as having been made to the Debtors, with the Debtors transferring such commitments to the Litigation Trust and the Debtors settling the claims arising from the commitments through the issuance of Class 1 Litigation Trust Interests as set forth below. Each Holder's pro rata portion will be calculated based on the fraction (x) the numerator of which is the total amount of such Holder's DIP A Claims and (y) the denominator of which is the aggregate outstanding amount of all DIP A Claims [held by holders of at least $[1000] of principal amount of DIP A Claims][, which aggregate amount as of the Record Date is equal to $[_____]] (the "**Threshold Pro Rata Share**"). Holders of DIP A Claims that elect to participate in the Opportunity are referred to herein as "**Litigation Trust Class 1 Funding Contributors**". Any Holder that elects to participate in the Opportunity is required to complete Annex 3 hereto along with any other documentation that the DIP Agent, or Litigation Trustee may reasonably require (collectively, the "**Litigation Trust Funding Documents**"). Any Eligible Holder that is unable to commit to fund Litigation Trust Funding Contributions in United States dollars shall not be permitted to participate in the Opportunity.

In consideration for a Litigation Trust Class 1 Funding Contributors' commitment to fund Litigation Trust Funding Contributions, Litigation Trust Class 1 Funding Contributors shall receive Class 1 Litigation Trust Interests if such Litigation Trust Class 1 Funding Contributors has provided all required documentation. Such Class 1 Litigation Trust Interests shall entitle holders thereof to share in the distribution of the Litigation Trust Net Proceeds in accordance with the Litigation Trust Waterfall. Upon  effectiveness of commitments, WSFS will update the register of the Litigation Trust.

If you are an Eligible Holder, you are hereby being given notice of your Opportunity to commit to be a Litigation Trust Class 1 Funding Contributor, on the terms and subject to the conditions set forth in this Notice and the syndication procedures being provided in connection with this Notice, including pursuant to any amendments or modifications to any of the foregoing.

Pursuant to Annex 1, you may designate the right to receive Class 1 Litigation Trust Interests to an affiliate or another person, it being understood that no party committing to fund Litigation Trust Funding Contributions shall be released from such commitment without the written consent of the Litigation Trustee.

**A commitment to partake in the Opportunity may not be modified or withdrawn by any Eligible Holder, unless otherwise agreed by the Litigation Trustee in its sole discretion. By electing to participate in the Opportunity and submitting the signed Litigation Trust Funding Documents, you will become a Litigation Trust Class 1 Funding Contributor (as defined in the Plan). You will be deemed to consent to, and subject to the terms and conditions of, the Litigation Trust Agreement, as applicable, alongside the other Litigation Trust Class 1 Funding Contributors party thereto.**

Participating as a Litigation Trust Class 1 Funding Contributor entails risks, including, but not limited to, the risk that the assets of the Litigation Trust may fail to provide substantial return or any return in respect of a Litigation Trust Class 1 Funding Contributor's Class 1 Litigation Trust Interests. As a result, you may lose all or part of the value of your Litigation Trust Funding Contributions made

6

pursuant to the Opportunity. Notwithstanding anything to the contrary herein, the Ad Hoc Group may determine to amend or modify the terms of the Opportunity, including the Commitment Agreement, at any time, by posting a notice of such amendment or modification to the holders of DIP A Claims; provided that nothing in this Notice shall be construed to supersede the amendment and modification requirements set forth in the Plan.

## SECTION 4 – ADDITIONAL PROCESS INFORMATION AND DISCLAIMERS

**ALL INFORMATION REQUIRED BY THIS NOTICE MUST BE SENT TO WSFS AT FBGLITIGATIONTRUST@WSFSBANK.COM**

On the date hereof, this Notice was posted to all holders of Applicable Claims by Wilmington Savings Fund Society, FSB ("**WSFS**") at **FBGLitigationTrust@wsfsbank.com**. WSFS will serve as the registrar for the Litigation Trust.

In order to (a) receive future distributions by the Litigation Trust, or (b) be eligible to receive Class 1 Litigation Trust Interests by committing to make Litigation Trust Funding Contributions, you must complete, sign and send each of the forms listed on page 2 to WSFS at **FBGLitigationTrust@wsfsbank.com** as soon as reasonably practicable, but in any event **by** ~~**June 23**~~**July [13], 2026 at 5:00pm CT**. **No other forms of submission will be accepted. In all cases, the information must actually be received by WSFS at or prior to the Litigation Trust Interest Response Deadline. Submitting indications of interests to any party, including the advisors to the Ad Hoc Group, or posing questions or submitting inquiries without completion of all applicable paperwork will not postpone or delay this deadline.**

For purposes of determining beneficial ownership of Applicable Claims on the Litigation Trust Distribution Record Date for receipt of Litigation Trust Interests, such ownership shall be determined on the basis of **settled trades only**. With respect to any unsettled trade the Litigation Trust will only issue Litigation Trust Interests to the buyer of such Applicable Claim if the following information is provided:

(1) an IRS Form W-8 or W-9, as appropriate, of the buyer;

(2) a Designation Form (Annex 1) whereby the seller names the buyer as the person to be treated as the owner of such Applicable Claims;

(3) the buyer's signature page to Litigation Trust Agreement (Annex 2); and

(4) evidence of trade confirmation, which reasonably establishes ownership of such DIP A Claims, Roll-Up Claims, First Lien Claims, Second Lien Claims or Side Car Term Loan Claims, as applicable.

**PLEASE NOTE THAT LITIGATION TRUST INTERESTS CANNOT BE TRANSFERRED (INCLUDING, WITHOUT LIMITATION, BY ASSIGNMENT) AT ANY TIME OR FOR ANY REASON, EXCEPT BY OPERATION OF LAW, AS SET FORTH IN THE LITIGATION TRUST AGREEMENT.**

**The delivery of the forms and any other required documents is at your option and sole risk, and delivery will be considered made only when actually received by WSFS.**

**ON THE LITIGATION TRUST ISSUANCE DATE, THE LITIGATION TRUST AGREEMENT RELATED TO THE LITIGATION TRUST INTERESTS, INCLUDING ALL TRANSFER RESTRICTIONS THEREIN, SHALL BE BINDING ON ALL PARTIES THAT RECEIVE (INCLUDING ANY DESIGNEES) LITIGATION TRUST INTERESTS.**

**HOLDERS AND ANY DESIGNEES ARE ENCOURAGED TO READ THE PLAN (INCLUDING THE EXHIBITS TO THE PLAN) AND THE DISCLOSURE STATEMENT, THE LITIGATION TRUST AGREEMENT AND TO CONSULT WITH THEIR OWN ADVISORS TO**

8

**UNDERSTAND THEIR RIGHTS AND OBLIGATIONS THEREUNDER, INCLUDING ANY RISKS WITH RESPECT TO HOLDING THE LITIGATION TRUST INTERESTS.**

**Administrative-Related Questions**: Holders with administrative questions about this Notice or the distribution of Litigation Trust Interests should direct such inquiries in writing by email to Kroll at: **FirstBrandsInfo@ra.kroll.com with "*First Brands Trust Interest Inquiry*" in the subject line**.

**Allocation-Related Questions:** If you have questions regarding your allocation, you may reach out to WSFS at **FBGLitigationTrust@wsfsbank.com** including to request your allocation of the Litigation Trust Interests.  To ensure that you are provided with accurate information for each of your funds, please include the legal name of each fund (i.e., your Holder as it appears on the applicable register or the relevant unsettled trade seller and buyer as it appears on the trade report) for which you are requesting information in your correspondence.

**Note that the allocations of the Litigation Trust Interests will be determined pursuant to such Holders' Applicable Claims <u>not subject to unsettled trades</u> as of the Litigation Trust Distribution Record Date (June ~~12~~[22], 2026), which allocations will take into account all accrued and unpaid amounts owed under the DIP Order, including any capitalized PIK interest through the Effective Date of the Plan.**

**WSFS will reconcile any unsettled trades during the Litigation Trust Reconciliation Period, the 60 days following ~~June [26], 2026~~<u>the Confirmation Date of the Plan</u> and only after receiving all documentation        required        herein        from        the        unsettled        trade        parties.**

**SECTION 5 – ANNEXES**

**[Attached.]**

**Annex 1 – Designation of Applicable Claims as of Record Date**

The provider of this completed Annex 1, by so completing confirms (a) as of the Litigation Trust Distribution Record Date (June 12[22], 2026), it held Applicable Claims in the names of the following Lenders of Record **on a settled basis** (insert name of your sub-fund Lender of Record in the boxes below) and (b) the information provided below is accurate. Please indicate whether you wish to designate the right to receive the Litigation Trust Interests to an affiliate or another party.  If you do not indicate your desire to designate an affiliate or another party or if you do not return this Annex 1, then your non-transferrable Litigation Trust Interests will be issued in your name as set forth on the register maintained by the Administrative Agent under the relevant credit facility.

IF DESIGNATING AN AFFILIATE OR ANOTHER PARTY TO RECEIVE LITIGATION TRUST INTERESTS ON BEHALF OF APPLICABLE CLAIMS HELD, YOU MAY ONLY DESIGNATE **ONE** DESIGNEE ON BEHALF OF EACH SUB-FUND LENDER OF RECORD, AND SUCH DESIGNEE WILL RECEIVE **ALL (BUT NOT A PORTION)** OF THE APPLICABLE CLAIM HELD BY SUCH SUB-FUND LENDER OF RECORD.

**IF DESIGNATING AN AFFILIATE OR ANOTHER PARTY ON BEHALF OF ANY APPLICABLE CLAIMS, <u>SUCH DESIGNEE MUST PROVIDE ALL INFORMATION AND COMPLETE ALL ANNEXES REQUIRED BY THIS NOTICE IN ORDER TO RECEIVE SUCH LITIGATION TRUST INTERESTS.</u>**

**<u>IF AN APPLICABLE CLAIM IS SUBJECT TO A CURRENTLY UNSETTLED TRADE, WSFS WILL RECONCILE SUCH CLAIMS ONCE THE FOLLOWING INFORMATION IS PROVIDED DURING THE LITIGATION TRUST RECONCILIATION PERIOD (60 DAYS FOLLOWING</u>** ~~JUNE [26], 2026~~**<u>THE CONFIRMATION DATE OF THE PLAN</u>**):

> (1) an IRS Form W-8 or W-9, as appropriate, of the buyer;

> (2) a Designation Form (Annex 1) whereby the seller names the buyer as the person to be treated as the owner of such Applicable Claims;

> (3) the buyer's signature page to Litigation Trust Agreement (Annex 2); and

> (4) evidence of trade confirmation, which reasonably establishes ownership of such DIP A Claims, Roll-Up Claims, First Lien Claims, Second Lien Claims or Side Car Term Loan Claims, as applicable.

**THIS ANNEX DOES NOT CONSTITUTE TAX ADVICE AND IS NOT INTENDED OR WRITTEN TO BE USED, AND MAY NOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED.**

The tax consequences of receiving, holding, and disposing of Litigation Trust Interests are complex and depend on each holder's particular facts and circumstances, including the holder's tax status, the nature and tax basis of its Applicable Claims, and its overall tax position. No tax advice is being provided in connection with this Notice or otherwise by or on behalf of the Litigation Trustee, the Ad Hoc Group, or their respective advisors. Each holder should consult its own tax advisor regarding the tax consequences of receiving, holding, and receiving distributions on account of Litigation Trust Interests, including in particular whether the holder should hold such interests through a corporation or other entity rather than directly, given the potential for such interests to generate income that may be subject to different tax treatment depending on the holder's                tax                classification                and                holding                structure.

| | Names/ Addresses of Sub-Fund Lender of Record Holding Applicable Claims | Designee you wish to designate to receive Litigation Trust Interests on behalf of the sub-fund Lender of Record (Designees may <u>only</u> be allocated by <u>PERCENTAGE</u> of such sub-fund's Applicable Claim. Dollar denominations will not be accepted. If less than 100% of an Applicable Claim is designated, the remaining Applicable Claim amount will be allocated to the Sub-Fund Lender of Record.) |
|---|---|---|
| | **DIP A Claims** | **If designating:** |
| [*please fill out*] | | 1.  % of Applicable Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, Annex 2 and, if desired, Annex 3 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1.  % of Applicable Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, Annex 2 and, if desired, Annex 3 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1.  % of Applicable Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, Annex 2 and, if desired, Annex 3 for each of the Sub-Fund Lender of Record and such Designee.** |
| | **Roll-Up Claims** | **If designating:** |
| [*please fill out*] | | 1.  % of Applicable Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1.  % of Applicable Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1.  % of Applicable Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | **First Lien Claims** | **If designating:** |
| [*please fill out*] | | 1.  % of Applicable Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI: |

| | | |
|---|---|---|
| | | 5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | **Second Lien Claims** | **If designating:** |
| [*please fill out*] | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | **Side Car Term Loan Claims** | **If designating:** |
| [*please fill out*] | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |

|  |  | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>**5. Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| **\*\*\* PLEASE ADD ADDITIONAL ROWS FOR ANY ADDITIONAL SUB-FUND LENDERS OF RECORD WITH APPLICABLE CLAIMS \*\*\*** |

**Annex 2 – Signature Page to Litigation Trust Agreement**

Please execute the following signature pages to the Litigation Trust Agreement (attached hereto). Pursuant to the Plan, any recipient of Litigation Trust Interests will be deemed to have accepted the terms of the Litigation Trust Agreement regardless of whether such recipient has executed a signature page thereto.

**[HOLDER OF LITIGATION TRUST INTERESTS]**


By: _____
Name:
Title:

[SIGNATURE PAGE TO LITIGATION TRUST AGREEMENT]

## Annex 3 – Election to Commit to Fund the Litigation Trust

**[Attached at next page.]**

**COMMITMENT AGREEMENT**

> **IMPORTANT**
>
> PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY. IF YOU WISH TO PARTICIPATE IN THE OPPORTUNITY DESCRIBED HEREIN, YOU MUST COMPLETE, SIGN, DATE AND DELIVER THIS COMMITMENT AGREEMENT AND THE REQUIRED SIGNATURE PAGES ATTACHED HERETO TO WSFS AT FBGLITIGATIONTRUST@WSFSBANK.COM ON OR BEFORE THE LITIGATION TRUST INTEREST RESPONSE DEADLINE (~~JUNE 23~~JULY [13], 2026 AT 5:00pm CT).
>
> IF YOU DO NOT WISH TO PARTICIPATE IN THE OPPORTUNITY DESCRIBED HEREIN, YOU DO NOT NEED TO TAKE ANY ACTION. IF YOU ARE UNABLE TO FUND LITIGATION TRUST FUNDING CONTRIBUTIONS IN UNITED STATES DOLLARS YOU ARE NOT BE PERMITTED TO PARTICIPATE IN THE OPPORTUNITY.
>
> EACH HOLDER PARTICIPATING IN THIS OPPORTUNITY SHOULD COMPLETE ONE COMMITMENT AGREEMENT AND, AS APPLICABLE, ONE DESIGNATION FORM (ANNEX 1) ON BEHALF OF EACH OF ITS SUB-FUNDS OR AFFILIATES THAT IS A HOLDER OF DIP A CLAIMS AS OF THE LITIGATION TRUST DISTRIBUTION RECORD DATE (JUNE ~~12~~[22], 2026 AT 5:00PM CT). HOWEVER, FOR THE AVOIDANCE OF ANY DOUBT, THE SIGNATURE PAGE ATTACHED HERETO MUST BE EXECUTED BY EACH HOLDER OF RECORD OF A DIP A CLAIM, OR ITS DESIGNEE, THAT IS ELECTING TO PARTAKE IN THE OPPORTUNITY FOR SUCH ELECTION TO BE VALID (*I.E.*, EACH SUB-FUND OR DESIGNEE MUST EXECUTE SUCH SIGNATURE PAGE).
>
> YOU SHOULD REVIEW THE OPPORTUNITY DOCUMENTS, NOTICE (INCLUDING THE ANNEXES THERETO) AND THE INSTRUCTIONS CONTAINED HEREIN BEFORE YOU ELECT TO PARTAKE IN THE OPPORTUNITY. YOU MAY WISH TO SEEK LEGAL, TAX AND/OR FINANCIAL ADVICE CONCERNING THE OPPORTUNITY.

**Item 1. Representations of the Lender.** The undersigned hereby represents that it:

- is an Eligible Holder;
- is sophisticated with respect to the decision to undertake a funding commitment of the type represented by the Opportunity, and is, or the entity exercising discretion in making this decision to partake in the Opportunity is, experienced in partaking as a committed funding party in such transactions and has received and reviewed the Plan, Disclosure Statement, the Notice and the Litigation Trust Agreement;
- has independently, and without reliance on any other party or on the Company, the advisors to the Company, the DIP Credit Agreement Administrative Agent, any other Holder of a DIP A Claim or affiliates or advisors of any of the foregoing, made its own credit analysis and decision to partake in the Opportunity;
- agrees and acknowledges that all information and documents provided in connection with the Notice is confidential and subject to the confidentiality provisions under the DIP Credit Agreement;
- agrees and acknowledges that the Litigation Trust Funding Commitments constitute binding funding commitments;
- agrees and acknowledges that it will be deemed to consent to the Litigation Trust Agreement and the transactions thereunder; and
- agrees and acknowledges that it shall be entitled to receive distributions in respect of its Class 1 Litigation Trust Interests in accordance with the Litigation Trust Waterfall.

**Item 2. Information.** The undersigned certifies that (a) as of the Litigation Trust Distribution Record Date (June ~~12~~[22], 2026 at 5:00pm CT), it was an Eligible Holder of DIP A Claims as set forth in its Annex 1 to the Notice delivered together herewith, (b) it understands that the right to partake in the Opportunity is subject to all the terms and conditions set forth in the Notice and (c) it agrees that the commitment to partake in the Opportunity *as set*

*forth in its checking the box to indicate "YES" in the column below* constitutes an irrevocable and binding commitment by the undersigned to partake in such Opportunity transaction contemplated by this Commitment Agreement:

*Election to make Litigation Trust Funding Commitments **in the full amount** of your pro rata share of DIP A Claims:

| Name / Address of Eligible Holder(s) (holding DIP A Claims as of the Litigation Trust Distribution Record Date) | Elects to Partake in and Commit to the Opportunity |
|---|---|
|  | ☐ (CHECK IF YES) |
| *** PLEASE ADD ADDITIONAL ROWS FOR ANY ADDITIONAL SUB-FUND LENDERS OF RECORD WITH APPLICABLE CLAIMS OR DESIGNEES THEREOF LISTED ON ANNEX 1*** | |

*For ease of administration, you may attach a separate chart that contains the information shown above. You must complete the certification below and return the Required Signature Pages on behalf of each participating Eligible Holder.*

**Item 3. Consent.** By completing, executing and delivering this Commitment Agreement and selecting "YES" in the column titled "Elects to Partake in and Commit to the Opportunity" in Item 2 above, each applicable Eligible Holder is committing to fund Litigation Trust Funding Contributions from time to time in accordance with the terms of the Litigation Trust Agreement in the amount of its Threshold Pro Rata Share of DIP A Claims of aggregate Initial Litigation Trust Funding Commitments of $50,000,000.

**Item 4. Executing Signature Pages.** By completing, executing and delivering this Commitment Agreement and selecting "YES" in the column titled "Elects to Partake in and Commit to the Opportunity" in Item 2 above, each applicable Eligible Holder is committing to fund Litigation Trust Funding Contributions from time to time in accordance with the terms of the Litigation Trust Agreement up to the full amount of your pro rata share of DIP A Claims.

**Item 5. Required Documents**. In order to partake in the Opportunity, each participating Eligible Holder must execute the Required Signature Page attached hereto. Each of the parties hereto agree by selecting "YES" in the column titled "Elects to Partake in and Commit to the Opportunity" in Item 2 above, the Required Signature Page may be appended to the Litigation Trust Agreement or a separate Commitment Agreement to give effect to the commitments contemplated hereby.

**Item 6. Certification**. By signing this Commitment Agreement, the undersigned certifies that it understands that the right to partake in the Opportunity is subject to all the terms and conditions set forth in the Notice and agrees that the commitment to partake in the Opportunity constitutes an irrevocable commitment by the undersigned.

Name of Eligible Holder of a DIP A Claim:

Signature:_____

Print Name:_____

Title:_____

Date Completed:_____

PLEASE ATTACH ADDITIONAL SIGNATURE PAGES
FOR EACH HOLDER OF RECORD OF A DIP A CLAIM,
OR ITS DESIGNEE, THAT IS ELECTING TO PARTAKE
IN THE OPPORTUNITY (*I.E.*, EACH SUB-FUND OR
DESIGNEE LISTED ON ANNEX 1)

**Exhibit 14**

**DIP Collateral Trust – Notice of Participation Procedures**

*Date of Notice: ~~May~~June [~~26~~22], 2026*

<div style="background-color:#c97a7a; text-align:center;">

**ACTION REQUIRED**

**BY: ~~JUNE 23~~JULY [13], 2026 at 5:00pm CT**

**FAILURE TO PROVIDE THE REQUIRED INFORMATION BY THE DIP COLLATERAL TRUST INTEREST RESPONSE DEADLINE MAY RESULT IN YOU NOT RECEIVING DIP COLLATERAL TRUST INTERESTS YOU ARE ENTITLED TO AS A HOLDER OF DIP A CLAIMS IN THE FIRST BRANDS GROUP CASES AND THEREBY FORFEITING PAYMENTS YOU WOULD OTHERWISE BE ENTITLED TO**

</div>

**NOTICE OF PARTICIPATION PROCEDURES**
for holders of
**DIP A Claims ~~and Roll-Up Claims~~**
with respect to
**First Brands Group, LLC and its Debtor Affiliates**
to receive
**DIP Collateral Trust Interests**

**RESPONSE DEADLINE:**
**~~June 23~~July [13], 2026 at 5:00pm CT**
*(as may be extended with notice by the DIP Agent to affected lenders)*

**PLEASE READ FIRST – THESE INSTRUCTIONS CONTAIN IMPORTANT INFORMATION ABOUT THE DOCUMENTS YOU ARE REQUIRED TO COMPLETE**

You are receiving this Notice of Participation Procedures (this "**Notice**") because you are a holder (a "**Holder**") of DIP A Claims ~~and/or Roll-Up Claims (together,~~ (the "**DIP A Claims**") in the bankruptcy proceedings of First Brands Group, LLC and its Debtor affiliates (collectively, the "**Company**") and are therefore entitled to receive beneficial interests in a DIP Collateral Trust.  Such DIP A Claims are subject to the Chapter 11 Plan of Premier Marketing Group, LLC (as may be amended, modified or supplemented in accordance with the terms thereof, the "**Plan**"). You can access the Plan at: https://restructuring.ra.kroll.com/firstbrands/Home-DocketInfo.  Unless otherwise defined herein, capitalized terms used but not defined herein have the respective meanings assigned to them in the Plan.

1

~~6000762554.5~~

**OUTLINE OF RELEVANT FORMS AND ANNEXES FOR
DIP COLLATERAL TRUST INTERESTS**

**Check each of the boxes below** to evidence that you have completed each required step:

☐    **Notice of Participation Procedures** – <u>Check the box</u> to confirm that you have read this Notice and understand the disclosures, disclaimers, and information contained herein and consulted with your own legal and tax advisors to the extent you deemed necessary or appropriate.
> **Section 1** – Timeline
> **Section 2** - Treatment of Your DIP <u>A</u> Claims
> **Section 3** – Additional Process Information and Disclaimers

☐    **Annex 1 (Designation of DIP <u>A</u> Claims as of DIP Collateral Trust Distribution Record Date)** – Identify your DIP <u>A</u> Claims in <u>Annex 1</u> and whether any person, such as one of your affiliates or a buyer of your DIP <u>A</u> Claims, should be credited with all or a percentage of your DIP Collateral Trust Interests. <u>Check the box</u> to confirm you have read and completed <u>Annex 1</u> and have provided accurate information as to your claims. **All holders of DIP <u>A</u> Claims must check this box and complete <u>Annex 1</u> in order to designate another party to receive any DIP Collateral Trust Interests.  All holders of DIP <u>A</u> Claims and their designees (in which event, both such holder and its designee) must provide an IRS Form W-8 or W-9, as applicable.**

> IF YOU DO NOT PROVIDE AN IRS FORM W-8 OR W-9, AS APPLICABLE, IN CONNECTION HEREWITH, **YOU AND, AS APPLICABLE, YOUR DESIGNEE WILL FOREGO ANY DISTRIBUTIONS** MADE BY THE DIP COLLATERAL TRUST WITH RESPECT TO ANY DIP COLLATERAL TRUST INTERESTS HELD UNTIL SUCH FORM IS RECEIVED. NOTWITHSTANDING THE FOREGOING, TO THE EXTENT ANY DISTRIBUTION *IS* MADE TO YOU OR YOUR DESIGNEE, YOU OR YOUR DESIGNEE WILL BE RESPONSIBLE FOR ANY WITHHOLDING RELATED THERETO.

☐    **Annex 2 (Signature Page to Governing Documents)**. – You must execute a signature page to the DIP Collateral Trust Agreement.  <u>Check the box</u> to confirm you have read the DIP Collateral Trust Agreement, consulted with your own advisors to the extent you deemed necessary or appropriate, and executed the signature page thereto.

2

<u>**NOTICE OF PARTICIPATION PROCEDURES**</u>

This Notice contains the following Sections:

| | |
|---|---|
| **Section 1.** | **Timeline:** This Notice contains deadlines by which you must provide information and documentation, or you may not receive DIP Collateral Trust Interests you are entitled to as a holder of DIP A Claims.  If you are not a holder of DIP Collateral Trust Interests on the date of a distribution from the DIP Collateral Trust, you will forfeit the right to receive any portion of such distribution that you would otherwise be entitled to. |
| **Section 2.** | **Treatment of Your DIP A Claims:** On behalf of your DIP A Claims you will receive non-transferable DIP Collateral Trust Interests. |
| **Section 3.** | **Additional Process Information and Disclaimers.** |
| **Section 4.** | **Annex 1 and Annex 2.** |

**You <u>must</u> provide the information required by this Notice by sending to WSFS[1] at**
**FBGCollateralTrust@wsfsbank.com**

**If you have any questions regarding this Notice and submission of information, please direct all inquiries to the following list-serve to ensure a timely response:**
**FBGCollateralTrust@groups.gibsondunn.com**

---

[1] Wilmington Savings Fund Society, FSB ("**WSFS**") is the current DIP Agent and will maintain the register for the DIP Collateral Trust.

3

**SECTION 1 – TIMELINE**

**FAILURE TO PROVIDE THE REQUIRED INFORMATION BY THE DEADLINES OUTLINED BELOW (AS MAY BE EXTENDED) MAY RESULT IN YOU <u>NOT RECEIVING DIP COLLATERAL TRUST INTERESTS YOU ARE OTHERWISE ENTITLED TO</u> AS A HOLDER OF DIP <u>A</u> CLAIMS IN THE FIRST BRANDS GROUP CASES.**

| Date | Action Item |
|---|---|
| ~~May [26], 2026~~ | • ~~The date this Notice will be issued to all Holders of DIP Claims.~~ |
| June ~~12~~[22], 2026 at 5:00pm CT<br><br>(**"*DIP Collateral Trust Distribution Record Date*"**) | • The date this Notice will be issued to all Holders of DIP A Claims.<br>• The DIP Collateral Trust Distribution Record Date for issuance of DIP Collateral Trust Interests.<br>• WSFS will freeze the lender register for all DIP <u>A</u> Claims. |
| ~~June 23~~July [13], 2026 at 5:00pm CT<br><br>(**"*DIP Collateral Trust Interest Response Deadline*"**) | • **Deadline** to provide the information required by this Notice by completing **all Annexes hereto** and conveying to WSFS at: **FBGCollateralTrust@wsfsbank.com** |
| The ~~Effective~~Confirmation Date of the Plan (anticipated to be no earlier than ~~June~~July [~~26~~31]) | |
| **60 calendar days following the ~~Effective~~Confirmation Date of the Plan**<br><br>(**"*DIP Collateral Trust Reconciliation Period*"**) | • WSFS will use this time period to manually reconcile any DIP <u>A</u> Claims that are subject to unsettled trades and any missing documentation.<br>• At the end of this period, all DIP Trust Interests will be distributed to lenders of record, including previously unsettled trades that were settled during the DIP Collateral Trust Reconciliation Period. |
| ~~[September 24], 2026~~<br><br>**The Confirmation Date of the Plan + 60 calendar days**<br><br>(**"*DIP Collateral Trust Interests Issuance Date*"**) | • The date that all DIP Collateral Trust Interests will be issued.<br>• All DIP Collateral Trust Interests will be deemed issued as of the Confirmation Date of the Plan |

4

## SECTION 2 – TREATMENT OF YOUR DIP A CLAIMS

The Plan provides for holders of DIP A Claims of at least [$1000] in principal amount (hereafter, the "**DIP A Claims**") to receive beneficial interests (the "**DIP Collateral Trust Interests**") in the DIP Collateral Trust (the "**DIP Collateral Trust**") to be established in connection with the Plan and Disclosure StatementSchedule.

If you (i) do nothing in response to this Notice, (ii) hold DIP A Claims, and (iii) are otherwise eligible to receive DIP Collateral Trust Interests pursuant to the Plan, and, as described in the Disclosure Statement, you will receive **non-transferrable** DIP Collateral Trust Interests and will be deemed to be a party to the DIP Collateral Trust Agreement.
Specifically:

- Holders of DIP A Claims will receive **Class 2 DIP Collateral Trust Interests** in exchange for their DIP A Claims against the Plan Debtor.
  - Holders of Roll-Up Claims will receive **Class 3 DIP Collateral Trust Interests** in exchange for their Roll-Up Claims against the Plan Debtor.

**THE DIP AGENT WILL FREEZE THE LENDER REGISTER ON THE DIP COLLATERAL TRUST DISTRIBUTION RECORD DATE (JUNE 12[22], 2026 AT 5:00pm CT). IF A DIP A CLAIM IS SUBJECT TO AN UNSETTLED TRADE AS OF THE DIP COLLATERAL TRUST DISTRIBUTION RECORD DATE, THE DIP COLLATERAL TRUST WILL NOT ISSUE DIP COLLATERAL TRUST INTERESTS TO THE BUYER OF SUCH DIP A CLAIM UNLESS AND UNTIL ALL INFORMATION LISTED IN SECTION 3 IS COMPLETE DURING THE DIP COLLATERAL TRUST INTEREST RECONCILIATION PERIOD (I.E., 60 DAYS AFTER JUNE [26], 2026THE CONFIRMATION DATE OF THE PLAN).**

<div align="center">**SECTION 3 – ADDITIONAL PROCESS INFORMATION AND DISCLAIMERS**</div>

<div align="center">**ALL INFORMATION REQUIRED BY THIS NOTICE MUST BE SENT TO WSFS AT:**
**FBGCOLLATERALTRUST@WSFSBANK.COM**</div>

On the date hereof, this Notice was posted to all holders of DIP A Claims by Wilmington Savings Fund Society, FSB ("**WSFS**") at **FBGCollateralTrust@wsfsbank.com**. WSFS will serve as the registrar for the DIP Collateral Trust.

In order to receive future distributions by the DIP Collateral Trust, you must complete, sign and send each of the forms listed on page 2 to WSFS at **FBGCollateralTrust@wsfsbank.com** as soon as reasonably practicable, but in any event **by ~~June 23~~July [13], 2026 at 5:00pm CT**.  **No other forms of submission will be accepted. In all cases, the information must actually be received by WSFS at or prior to the DIP Collateral Trust Interest Response Deadline. Submitting indications of interests to any party, including the advisors to the Ad Hoc Group, or posing questions or submitting inquiries without completion of all applicable paperwork will not postpone or delay this deadline.**

For purposes of determining beneficial ownership of DIP A Claims on the DIP Collateral Trust Distribution Record Date for receipt of DIP Collateral Trust Interests, such ownership shall be determined on the basis of **settled trades only**. With respect to any unsettled trade the DIP Collateral Trust will only issue DIP Collateral Trust Interests to the buyer of such DIP A Claim if the following information is provided:

(1) an IRS Form W-8 or W-9, as appropriate, of the buyer;

(2) a Designation Form (Annex 1) whereby the seller names the buyer as the person to be treated as the owner of such DIP A Claims;

(3) the buyer's signature page to DIP Collateral Trust Agreement (Annex 2); and

(4) evidence of trade confirmation, which reasonably establishes ownership of such DIP A Claims ~~or Roll-Up Claims, as applicable~~.

**PLEASE NOTE THAT DIP COLLATERAL TRUST INTERESTS CANNOT BE TRANSFERRED (INCLUDING, WITHOUT LIMITATION, BY ASSIGNMENT) AT ANY TIME OR FOR ANY REASON, EXCEPT BY OPERATION OF LAW, AS SET FORTH IN THE DIP COLLATERAL TRUST AGREEMENT.**

**The delivery of the forms and any other required documents is at your option and sole risk, and delivery will be considered made only when actually received by WSFS.**

**ON THE DIP COLLATERAL TRUST ISSUANCE DATE, THE DIP COLLATERAL TRUST AGREEMENT RELATED TO THE DIP COLLATERAL TRUST INTERESTS, INCLUDING ALL TRANSFER RESTRICTIONS THEREIN, SHALL BE BINDING ON ALL PARTIES THAT RECEIVE (INCLUDING ANY DESIGNEES) DIP COLLATERAL TRUST INTERESTS.**

**HOLDERS AND ANY DESIGNEES ARE ENCOURAGED TO READ THE PLAN (INCLUDING THE EXHIBITS TO THE PLAN) AND THE DISCLOSURE STATEMENT, THE DIP COLLATERAL TRUST AGREEMENT AND TO CONSULT WITH THEIR OWN ADVISORS**

<div align="center">6</div>

**TO UNDERSTAND THEIR RIGHTS AND OBLIGATIONS THEREUNDER, INCLUDING ANY RISKS WITH RESPECT TO HOLDING THE DIP COLLATERAL TRUST INTERESTS. Administrative-Related Questions**: Holders with administrative questions about this Notice or the distribution of DIP Collateral Trust Interests should direct such inquiries in writing by email to Kroll at: **FirstBrandsInfo@ra.kroll.com with "*First Brands Trust Interest Inquiry*" in the subject line**.

**Allocation-Related Questions:** If you have questions regarding your allocation, you may reach out to WSFS at **FBGCollateralTrust@wsfsbank.com** including to request your allocation of the DIP Collateral Trust Interests.  To ensure that you are provided with accurate information for each of your funds, please include the legal name of each fund (i.e., your Holder as it appears on the applicable register or the relevant unsettled trade buyer as it appears on the trade report) for which you are requesting information in your correspondence.

**Note that the allocations of the DIP Collateral Trust Interests will be determined pursuant to such Holders' DIP A Claims not subject to unsettled trades as of the DIP Collateral Trust Distribution Record Date (June 12[22], 2026 at 5:00pm CT), which allocations will take into account all accrued and unpaid amounts owed under the DIP Order, including any capitalized PIK interest through the Effective Date of the Plan.**

**WSFS will reconcile any unsettled trades during the DIP Collateral Trust Reconciliation Period, the 60 days following June [26], 2026the Confirmation Date of the Plan and only after receiving all documentation required herein from the unsettled trade parties.**

**SECTION 4 – ANNEXES**

**[Attached.]**

**Annex 1 – Designation of DIP A Claims as of Record Date**

The provider of this completed Annex 1, by so completing confirms (a) as of the DIP Collateral Trust Distribution Record Date (June 12[22], 2026 at 5:00pm CT), it held DIP A Claims in the names of the following Lenders of Record **on a settled basis** (insert name of your sub-fund Lender of Record in the boxes below) and (b) the information provided below is accurate. Please indicate whether you wish to designate the right to receive the DIP Collateral Trust Interests to an affiliate or another party.  If you do not indicate your desire to designate an affiliate or another party or if you do not return this Annex 1, then your non-transferrable DIP Collateral Trust Interests will be issued in your name as set forth on the register maintained by the DIP Agent.

IF DESIGNATING AN AFFILIATE OR ANOTHER PARTY TO RECEIVE DIP COLLATERAL TRUST INTERESTS ON BEHALF OF DIP A CLAIMS HELD, YOU MAY ONLY DESIGNATE **ONE** DESIGNEE ON BEHALF OF EACH SUB-FUND LENDER OF RECORD, AND SUCH DESIGNEE WILL RECEIVE **ALL (BUT NOT A PORTION)** OF THE DIP A CLAIM HELD BY SUCH SUB-FUND LENDER OF RECORD.

**IF DESIGNATING AN AFFILIATE OR ANOTHER PARTY ON BEHALF OF ANY DIP A CLAIMS, SUCH DESIGNEE MUST PROVIDE ALL INFORMATION AND COMPLETE ALL ANNEXES REQUIRED BY THIS NOTICE IN ORDER TO RECEIVE SUCH DIP COLLATERAL TRUST INTERESTS.**

**IF A DIP A CLAIM IS SUBJECT TO A CURRENTLY UNSETTLED TRADE, WSFS WILL RECONCILE SUCH CLAIMS ONCE THE FOLLOWING INFORMATION IS PROVIDED DURING THE DIP COLLATERAL TRUST RECONCILIATION PERIOD ([60] DAYS FOLLOWING ~~JUNE [26], 2026~~THE CONFIRMATION DATE OF THE PLAN):**

(1) an IRS Form W-8 or W-9, as appropriate, of the buyer;

(2) a Designation Form (Annex 1) whereby the seller names the buyer as the person to be treated as the owner of such DIP A Claims;

(3) the buyer's signature page to DIP Collateral Trust Agreement (Annex 2); and

(4) evidence of trade confirmation, which reasonably establishes ownership of such DIP A Claims ~~or Roll-Up Claims, as applicable~~.

**THIS ANNEX DOES NOT CONSTITUTE TAX ADVICE AND IS NOT INTENDED OR WRITTEN TO BE USED, AND MAY NOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED.**

The tax consequences of receiving, holding, and disposing of DIP Collateral Trust Interests are complex and depend on each holder's particular facts and circumstances, including the holder's tax status, the nature and tax basis of its Applicable Claims, and its overall tax position. No tax advice is being provided in connection with this Notice or otherwise by or on behalf of the DIP Collateral Trustee, the Ad Hoc Group, or their respective advisors. Each holder should consult its own tax advisor regarding the tax consequences of receiving, holding, and receiving distributions on account of DIP Collateral Trust Interests, including in particular whether the holder should hold such interests through a corporation or other entity rather than directly, given the potential for such interests to generate income that may be subject to different tax treatment depending on the holder's tax classification and holding structure.

| | Names/ Addresses of Sub-Fund Lender of Record Holding DIP A Claims | Designee you wish to designate to receive DIP Collateral Trust Interests on behalf of the sub-fund Lender of Record (Designees may only be allocated by PERCENTAGE of such sub-fund's DIP A Claim. Dollar denominations will not be accepted. If less than 100% of a DIP A Claim is designated, the remaining DIP A Claim amount will be allocated to the Sub-Fund Lender of Record.) |
|---|---|---|
| | ~~DIP A Claims~~ | If designating: |
| [*please fill out*] | | 1.  % of DIP A Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1.  % of DIP A Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1.  % of DIP A Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1.  % of DIP A Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | ~~Roll-Up Claims~~ | ~~If designating:~~ |
| ~~[*please fill out*]~~ | | ~~1.  % of DIP Claim designated to such Designee:~~<br>~~2.  Full legal name of the Designee:~~<br>~~3.  Designee's place of organization:~~<br>~~4.  Designee's MEI:~~<br>~~5.  Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.~~ |
| | | ~~1.  % of DIP Claim designated to such Designee:~~<br>~~2.  Full legal name of the Designee:~~<br>~~3.  Designee's place of organization:~~<br>~~4.  Designee's MEI:~~<br>~~5.  Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.~~ |
| | | ~~1.  % of DIP Claim designated to such Designee:~~<br>~~2.  Full legal name of the Designee:~~<br>~~3.  Designee's place of organization:~~<br>~~4.  Designee's MEI:~~ |

| | | |
|---|---|---|
| | | 5.  Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee. |
| | | 1.  % of DIP Claim designated to such Designee: <br> 2.  Full legal name of the Designee: <br> 3.  Designee's place of organization: <br> 4.  Designee's MEI: <br> 5.  Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee. |
| *** PLEASE ADD ADDITIONAL ROWS FOR ANY ADDITIONAL SUB-FUND LENDERS OF RECORD WITH DIP A CLAIMS *** | | |

**Annex 2 – Signature Page to DIP Collateral Trust Agreement**

Please execute the following signature pages to the DIP Collateral Trust Agreement (attached hereto). Pursuant to the Plan, any recipient of DIP Collateral Trust Interests will be deemed to have accepted the terms of the DIP Collateral Trust Agreement regardless of whether such recipient has executed a signature page thereto.

**[HOLDER OF DIP COLLATERAL TRUST INTERESTS]**


By: _____
Name:
Title:

[Signature Page to DIP Collateral Trust Agreement]

**Exhibit 16**

**Form of Conditional Disclosure Statement Hearing Notice**

WEIL\101368211\1\35253.0004WEIL\101368211\4\35253.0004

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIRST BRANDS GROUP, LLC, *et al.*, | § | Case No. 25-90399 (CML) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |

**NOTICE OF (I) FILING OF (A) CHAPTER 11 PLAN,
(B) DISCLOSURE STATEMENT, AND (C) DISCLOSURE ~~STATEMENT MOTION;~~ STATEMENT MOTION, (II) SCHEDULING OF CONDITIONAL DISCLOSURE STATEMENT HEARING, AND (III) REQUESTED VOTING RECORD DATE IN CONNECTION WITH SOLICITATION AND PLAN CONFIRMATION ~~DATES~~**

**PLEASE TAKE NOTICE THAT:**

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

2

1.      On ~~April 28~~June 5, 2026, ~~Premier Marketing Group, LLC (the "**Plan**~~First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG** Debtor~~s~~")[2] filed the *Joint* Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC *and Certain Affiliated Debtors* (Docket No. ~~2544~~2907) (including any exhibits and schedules thereto and as may be amended, supplemented, or otherwise modified from time to time, the "**Plan**").

2.      On ~~April 29~~June 5, 2026, the ~~Plan~~FBG Debtor~~s~~ filed the *Disclosure Statement for Joint Chapter 11 Plan of ~~Premier Marketing~~First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. ~~2545~~[_]) (including any exhibits and schedules thereto and as may be amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**").

3.      On ~~April 29~~June 5, 2026, ~~First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), filed the *Emergency Motion of Debtors for Entry of Order (I) Scheduling Combined Hearing on (A) Adequacy of*~~the Debtors filed an emergency motion seeking approval of the Disclosure Statement ~~and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan; (V) Establishing Global Settlement Election Procedures; and (VI) Granting Related Relief~~ (Docket No. ~~2546~~[_]) (the "**Disclosure Statement Motion**"), which requested, among other things, that requested (i) a hearing to consider conditional approval of the Disclosure Statement Motion take place on ~~May 8~~June 12, 2026 ~~at 1:00 p.m. (Central Time)~~, (ii) the deadline to object to confirmation of the Plan ~~is May 22~~be set for July 20, 2026 at 5:00 p.m. (Central Time), and (iii) a hearing to consider final approval of the Disclosure Statement and confirmation of the Plan take place on ~~May 29~~July 28, 2026.

4.      A hearing on the Disclosure Statement Motion (the "**Disclosure Statement Hearing**") will take place before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), on ~~May 13~~June 12, 2026 at ~~9~~10:00 a.m. (Central Time)~~, to consider, among other things, entry of an order conditionally approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code~~.  The hearing will be conducted in Courtroom 402, 4th Floor, 515 Rusk Avenue, Houston, Texas 77002.  You may also participate in the hearing by an audio and video connection.  The audio communication will be by use of the Bankruptcy Court's dial-in facility.  You may access the facility at (832) 917-1510 and enter the conference code 590153.  The video communication will be by use of the Gotomeeting Platform.  Connect via the free Gotomeeting Application or click the link on Judge Lopez's home page.  The meeting code is "judgelopez."  Click the settings icon in the upper right corner and enter your name under the personal information setting.

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or the Plan (each as defined herein), as applicable.

~~WEIL\101368211\1\35253.0004~~WEIL\101368211\4\35253.0004

5.       Any party in interest wishing to obtain copies of the Disclosure Statement or the Plan should contact the Debtors' claims, noticing, and solicitation agent, Kroll Restructuring Administration LLC, by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Interested parties may also review and download the Disclosure Statement and the Plan free of charge at https://restructuring.ra.kroll.com/FirstBrands (the "**Online Portal**").  In addition, the Disclosure Statement and Plan are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: https://www.txs.uscourts.gov/.  Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website.  A PACER password can be obtained at: https://pacer.uscourts.gov/.

**IF YOU OBJECT TO THE RELIEF REQUESTED YOU MUST APPEAR AT THE DISCLOSURE STATEMENT HEARING OR FILE A WRITTEN RESPONSE PRIOR TO ~~MAY 13~~JUNE 12, 2026.**

~~WEIL\101368211\1\35253.0004~~WEIL\101368211\4\35253.0004

**Proposed Combined Hearing and Objection Deadline[2]**

6. The Debtors intend to request that the Bankruptcy Court schedule a hearing to consider confirmation of the Plan and final approval of the Disclosure Statement for **June 10, 2026** (the "**Combined Hearing**") subject to the Bankruptcy Court's availability and that the Bankruptcy Court set the deadline for parties in interest to file objections to confirmation of the Plan and/or final approval of the Disclosure Statement for **June 1, 2026 at 5:00 p.m. (Central Time)** (the "**Combined Objection Deadline**").

**Proposed Voting Record Date**

6. In the Disclosure Statement Motion, the FBG Debtors request that the Court set **June 15, 2026** as the record date for determining which holders of Claims are entitled to vote on the Plan and receive the applicable solicitation materials (the "**Voting Record Date Record Date**"). The universe of holders entitled to receive solicitation materials and vote on the Plan as of the Voting Record Date will be determined based on the FBG Debtors' books and records, the FBG Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (the "**FBG Debtors' Schedules**"), and Proofs of Claim filed against the applicable FBG Debtor on or before the Voting Record Date.

7. **Accordingly, if you believe you hold a Claim against any of the FBG Debtors and wish to receive solicitation materials or vote on the Plan, the FBG Debtors advise that you file a Proof of Claim at https://restructuring.ra.kroll.com/FirstBrands, the Online Portal, prior to the Voting Record Date, to ensure you are captured as the holder of a Claim entitled to vote and are mailed solicitation materials.**

8. If you are not otherwise reflected on the FBG Debtors' books and records, the FBG Debtors' Schedules, or a filed Proof of Claim, as of the Voting Record Date and wish to vote on the Plan, you must file a motion pursuant to Bankruptcy Rule 3018(a) to temporarily allow your Claim for voting purposes by **July 10, 2026 at 5:00 p.m. (Central Time)** (the "**Rule 3018(a) Motion Deadline**"), pursuant to the procedures described in the Disclosure Statement Motion.

---

[2] The Bankruptcy Court has not yet scheduled the Combined Hearing or set the Combined Objection Deadline. The Debtors will request that the Bankruptcy Court schedule the Combined Hearing and set the Combined Objection Deadline at the Disclosure Statement Hearing.

5

Dated: ~~May 5~~[__], 2026
Houston, Texas

_/s/  ~~Clifford W. Carlson~~DRAFT_____

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   gabriel.morgan@weil.com
             clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted _pro hac vice_)
Sunny Singh (admitted _pro hac vice_)
Andriana Georgallas (admitted _pro hac vice_)
Kevin Bostel (admitted _pro hac vice_)
Jason H. George (admitted _pro hac vice_)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   matt.barr@weil.com
             sunny.singh@weil.com
             andriana.georgallas@weil.com
             kevin.bostel@weil.com
             jason.george@weil.com

_Attorneys for Debtors_
_and Debtors in Possession_

6
WEIL\101368211\1\35253.0004WEIL\101368211\4\35253.0004

**Certificate of Service**

I hereby certify that on ~~May 5~~June [__], 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/   ~~Clifford W. Carlson~~DRAFT_____

Clifford W. Carslon

~~WEIL\101368211\1\35253.0004~~WEIL\101368211\4\35253.0004