**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § § § | **Case No. 25-90399 (CML)** |
| | § § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**SUMMARY COVERSHEET TO SECOND INTERIM FEE
APPLICATION OF WEIL, GOTSHAL & MANGES LLP,
ATTORNEYS FOR THE DEBTORS, FOR THE PERIOD FROM
JANUARY 1, 2026 THROUGH AND INCLUDING MARCH 31, 2026**

| | | |
|---|---|---|
| **Name of Applicant:** | Weil, Gotshal & Manges LLP | |
| **Applicant's Role in Case:** | Attorneys for Debtors | |
| **Docket No. of Employment Order(s):** | Docket No. 894 | |
| **Interim Application (x)      No. 2**<br>**Final Application     ( )** | Second Interim | |

| | **Beginning Date** | **End of Period** |
|---|---|---|
| **Time period covered by this Application for which interim compensation has not previously been awarded:** | January 1, 2026 | March 31, 2026 |

| | |
|---|---|
| **Were the services provided necessary to the administration of or beneficial at the time rendered toward the completion of the case? (Y)** | |
| **Were the services performed in a reasonable amount of time commensurate with the complexity, importance and nature of the issues addressed? (Y)** | |
| **Is the requested compensation reasonable based on the customary compensation charged by comparably skilled practitioners in other non-bankruptcy cases? (Y)** | |
| **Do expense reimbursements represent actual and necessary expenses incurred? (Y)** | |
| **Compensation Breakdown for Time Period Covered by this Application** | |
| **Total professional fees requested in this Application:** | $48,873,055.25 |
| **Total professional hours covered by this Application:** | 30,325.40 |
| **Average hourly rate for professionals:** | $1,611.62 |

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

| | |
|---|---|
| **Total paraprofessional fees requested in this Application:** | $658,969.50 |
| **Total paraprofessional hours covered by this Application:** | 1,241.30 |
| **Average hourly rate for paraprofessionals:** | $530.87 |
| **Total fees requested in this Application:** | $49,532,024.75 |
| **Total expense reimbursements requested in this Application:** | $372,253.96 |
| **Total fees and expenses requested in this Application:** | $49,904,278.71 |
| **Total fees and expenses awarded in all prior Applications:** | $60,215,770.86 |

**Plan Status:**  The Debtors filed a revised chapter 11 plan and disclosure statement on June 5, 2026 (Docket Nos. 2907 and 2912, respectively).  The Debtors have requested that the Court hear the Debtors' motion for conditional approval of the disclosure statement (Docket No. 2914) on June 12, 2026.

**Primary Benefits:**  During the Application period, Weil guided the Debtors through these chapter 11 cases by, among other things: (i) launching a sale process for substantially all assets; (ii) obtaining OEM funding to support the sale process and continued operations and case costs; (iii) mediating with stakeholders on case resolution; (iv) drafting and negotiating a chapter 11 plan, disclosure statement, and related settlements providing for an orderly wind down of the Debtors' estates; (v) developing liquidation procedures for certain business units; (vi) investigating and prosecuting estate claims; (vii) addressing issues related to the Debtors' prepetition factoring programs; and (viii) navigating various issues related to the Debtors' rest-of-world businesses.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **In re:** | § | **Chapter 11** |
|  | § |  |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
|  | § |  |
|  | § | **(Jointly Administered)** |
| **Debtors.**[1] | § |  |
|  | § |  |

**SECOND INTERIM FEE APPLICATION**
**OF WEIL, GOTSHAL & MANGES LLP,**
**ATTORNEYS FOR THE DEBTORS, FOR THE PERIOD FROM**
**JANUARY 1, 2026 THROUGH AND INCLUDING MARCH 31, 2026**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Weil, Gotshal & Manges LLP ("**Weil**"), as attorneys for First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their Non-Debtor Subsidiaries, the "**Company**"), hereby files its second application (this "**Application**")[2] for interim allowance of compensation for professional services performed by Weil during the period commencing January 1, 2026 through and including March 31, 2026 (the "**Compensation Period**") in the

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration (as defined herein), the *Chapter 11 Plan of Premier Marketing Group, LLC* (Docket No. 2784) (the "**Plan**"), or the *Disclosure Statement for Chapter 11 Plan of Premier Marketing Group, LLC* (Docket No. 2786) (the "**Disclosure Statement**"), as applicable.

amount of $49,532,024.75, and for reimbursement of its actual and necessary expenses in the amount of $372,253.96 incurred during the Compensation Period, and respectfully represents as follows:

**Preliminary Statement**

1.      As detailed in multiple court filings before this Court, these are among the largest and most complex chapter 11 cases in history.  During the Compensation Period, Weil's professionals guided the Debtors through the chapter 11 process and advanced these cases towards a value-maximizing global resolution, including, among other things:  (i) launching a sale process for all or substantially all of the Debtors' assets; (ii) negotiating sale transactions for certain of the Debtors' business units, including going-concern sales for Walbro, TMD, and Horizon, as well as various asset sales; (iii) obtaining funding from certain of the Debtors' OEM customers to support the Debtors' sale process and the ongoing administration of the chapter 11 cases and to prevent a complete shutdown of the Debtors' North American businesses; (iv) participating in mediation with the Debtors' key stakeholders to address case resolution; (v) negotiating and drafting the Plan and Disclosure Statement as well as the Global Settlement; (vi) developing procedures and seeking court authority to wind down certain of the Debtors' remaining business units; (vii) continuing its prepetition investigation into potential estate claims and causes of action; (viii) continuing its prosecution of an adversary proceeding against the Debtors' founder and former CEO and affiliated parties to recover misappropriated funds; (ix) commencing an adversary proceeding against numerous defendants, including Onset Financial, Inc. and a former executive of the Debtors, seeking to avoid billions of dollars of preferential and fraudulent transfers, among other claims; (x) reconciling prepetition accounts receivable and negotiating and developing procedures with factoring counterparties to release unencumbered funds; and (xi) navigating a variety of

2

issues in respect of the Debtors' Rest of World businesses, including assisting with the management and commencement of local insolvency proceedings in various jurisdictions.

2.     The professional services performed and expenses incurred by Weil during the Compensation Period were actual and necessary to preserve and protect the value of the Debtors' estates and maximize value to creditors in these extraordinarily difficult and complex chapter 11 cases.  Given the myriad of challenges facing the Debtors and the highly litigious nature of these cases, among other considerations, Weil's fees for professional services performed and expenses incurred are reasonable and appropriate under applicable standards.  Accordingly, Weil respectfully requests that the Court grant this Application and allow interim compensation for professional services performed and reimbursement for expenses incurred during the Compensation Period.

### Background

3.     On September 24, 2025, Global Assets LLC and 12 of the Debtors in the above-captioned chapter 11 cases each commenced with the Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  Commencing on September 28, 2025, First Brands Group, LLC and the remaining Debtors each commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed in these chapter 11 cases.

4.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

3

5. On October 9, 2025, the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (Docket No. 313) (the "**Creditors' Committee**").

6. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (Docket No. 22) (the "**First Day Declaration**"), filed on September 29, 2025 and incorporated herein by reference.

### Jurisdiction and Venue

7. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

8. The Debtors request approval of Weil's Application. This Application has been prepared in accordance with sections 330(a) and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, Bankruptcy Local Rule 2016-1, the *Court Procedures* for Judge Christopher M. Lopez (the "**Court Procedures**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "**UST Fee Guidelines**" and, collectively with the Court Procedures, the "**Fee Guidelines**"), and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Docket No. 699) (the "**Interim Compensation Procedures Order**").

9. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

4

**Retention of Weil**

10.     On October 22, 2025, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 400) (the "**Retention Application**").

11.     On December 8, 2025, the Court entered the *Order Authorizing Retention and Employment of Weil, Gotshal and Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 894) (the "**Retention Order**"), approving the Retention Application and authorizing the employment and retention of Weil as of the Petition Date.  The Retention Order specifically authorized Weil to provide the following professional services to the Debtors:

a.     take all necessary actions to protect and preserve the value of the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiation of disputes in which the Debtors are involved, and the preparation of objections to claims filed against the Debtors' estates;

b.     prepare on behalf of the Debtors, as debtors in possession, all necessary motions, applications, answers, orders, reports, and other papers in connection with the administration of the Debtors' estates;

c.     take all necessary actions in connection with the investigation, review, analysis, and prosecution, on behalf of the independent Special Committee, of potential claims and causes of action that may be held by the Debtors;

d.     take all necessary actions in connection with any value-maximizing transaction the Debtors may pursue, any chapter 11 plan and related disclosure statement and all related documents, and such further actions as may be required in connection with the administration of the Debtors' estates; and

e.     perform all other necessary legal services in connection with the prosecution of these chapter 11 cases.

Retention Order ¶ 2.

**Summary of Professional Compensation
and Reimbursement of Expenses Requested**

12.     Weil seeks interim allowance of compensation for professional services performed during the Compensation Period in the amount of $49,532,024.75 and reimbursement of expenses incurred in connection with the rendition of such services in the amount of $372,253.96.  During the Compensation Period, Weil attorneys, paraprofessionals, and non-legal staff expended a total of 31,566.70 hours in connection with the necessary services performed.  During the Compensation Period, Weil voluntarily reduced the amount of fees and expenses requested by $1,222,649.20.

13.     There is no agreement or understanding between Weil and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these chapter 11 cases.  During the Compensation Period, other than payment received by Weil on account of monthly fee statements in accordance with the Interim Compensation Procedures Order, Weil received no payment or promises of payment from any source for services rendered, or to be rendered, in any capacity whatsoever in connection with the matters covered by this Application.

14.     As set forth in the Retention Application, prior to the Petition Date, the Debtors paid fee advances to Weil for professional services to be performed and expenses to be incurred in connection with its representation of the Debtors and in preparation of the Debtors seeking relief under chapter 11 (the "**Fee Advance**").[3]  Based on a reconciliation of all charges and expenses through the date of this Application, the balance of the Fee Advance as of the date of this Application is $69.68.

---

[3]     In addition to, and separate and apart from the Fee Advance, Weil also holds retainers from Debtor Global Assets GmbH and certain Non-Debtor Subsidiaries in the aggregate amount of $110,000.00 and a fee advance from Non-Debtor Subsidiary Ultinon Motion Holding BV in the amount of $77,084.00.

15. The fees charged by Weil in these chapter 11 cases are billed in accordance with Weil's existing billing rates and procedures in effect during the Compensation Period.  The rates Weil charges for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are no greater than the rates Weil charges for professional and paraprofessional services rendered in comparable bankruptcy and non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy matters in a competitive national legal market.

**Supporting Documents**

16. Attached hereto as **Exhibit B** is the Certification of Sunny Singh, a partner of Weil (the "**Singh Certification**"), regarding Weil's compliance with the Fee Guidelines.

17. Attached hereto as **Exhibit C** is a schedule of all Weil attorneys and paraprofessionals who have performed services for the Debtors during the Compensation Period, the capacities in which each individual is employed by Weil, the department in which each individual practices, the hourly billing rate charged by Weil for services performed by such individuals, the year in which each attorney was first licensed to practice law, where applicable, and the aggregate number of hours expended in this matter and fees billed in connection therewith (the "**Schedule of Professional Fees**").

18. Weil maintains computerized records of the time spent by all Weil attorneys and paraprofessionals in connection with the prosecution of these chapter 11 cases.  Attached hereto as **Exhibit D** is a schedule of Weil's computerized time records billed during the Compensation Period using project categories hereinafter described in the format specified by the Fee Guidelines (the "**Time Records**").

7

19.    Attached hereto as **Exhibit E** is an itemized schedule of the expenses for which Weil is seeking reimbursement and a summary specifying the categories of expenses included in the schedule and the total amount for each such expense category (the "**Expenses**").

20.    Attached hereto as **Exhibit F** is a summary and comparison of the aggregate blended hourly rates billed by Weil's New York timekeepers to non-bankruptcy matters during the prior twelve-month period ending April 30, 2026, and the blended hourly rates billed to the Debtors during the Compensation Period (the "**Blended Rate Comparison Chart**").

21.    Attached hereto as **Exhibit G** is a budget prepared in connection with Weil's representation of the Debtors for the Compensation Period.

22.    Attached hereto as **Exhibit H** is a summary of Weil's staffing plan. Attorneys and paraprofessionals assigned to this matter were necessary to assist with the prosecution of the Debtors' chapter 11 cases, preservation of the Debtors' assets, and other matters described herein.

23.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, Weil reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application to the Court.

**Summary of Professional Services
Rendered During Compensation Period**

24.    During the Compensation Period, Weil professionals expended significant time and effort in rendering services to the Debtors, including assisting the Debtors with (i) launching the sale process, (ii) securing funding from OEM customers, (iii) negotiating sales of certain business units, and (iv) developing and negotiating the Plan, Disclosure Statement, and Global Settlement to effectuate a value-maximizing resolution of these chapter 11 cases.  The

below summary is organized in accordance with Weil's internal time-tracking system and broken down by project or task codes applicable to work performed for the Debtors. Certain services performed may overlap between, or appropriately be allocated to, more than one task code. If a task code does not appear below, then Weil did not bill significant time for that task code during the Compensation Period.

    a.    <u>Adversary Proceedings (Task Code 002)</u>
        Fees: $2,009,760.50; Total Hours: 1,316.00

- Continued to prosecute the affirmative litigation strategy, including advancing the adversary proceeding against Patrick James, the former CEO of the Debtors, several affiliated entities, and certain former directors and officers of the Debtors (the "**James Adversary Proceeding**");

- Drafted and filed the *Amended Complaint* (Adv. Pro. No. 25-03803, Docket No. 141), which included additional claims, defendants, and factual allegations asserted by the Debtors in the James Adversary Proceeding;

- Conducted extensive legal research and related analysis to advise the Debtors in the prosecution of the James Adversary Proceeding;

- Further implemented a discovery strategy in the James Adversary Proceeding for both obtaining evidence from the defendants, including through 78 requests for production and 18 interrogatories, and responded to 58 requests for the same from other parties;

- Continued review and management of review for what amounted to over 150,000 documents in connection with both the Debtors' claims and the Debtors' planned production of documents to other parties;

- Drafted, filed, and obtained Court approval of the *Emergency Motion to Amend Case Schedule* (Adv. Pro. No. 25-03803, Docket No. 152);

- Drafted and filed the Complaint in *First Brands Grp., LLC v. Onset Fin., Inc.*, Adv. Pro. No. 26-03005 (CML), (Bankr. S.D. Tex. Jan. 9, 2026), Dkt. No. 1 (the "**Onset Adversary Proceeding**");

- Strategized for and participated in oral argument on motion to intervene filed by Onset in the James Adversary Proceeding (the "**Motion to Intervene**");

- Analyzed Onset's reply brief in support of its Motion to Intervene, strategized in response thereto, and conducted legal research regarding the same; and

- Successfully obtained an order from the Court denying Onset's Motion to Intervene.

b.   Asset Sales / 363 Matters (Task Code 003)
Fees:  $17,616,619.00; Total Hours:  11,798.30

- Commenced a marketing and sale process for all of the Debtors' assets, including the equity interests in Non-Debtor Subsidiaries;

- Prepared, negotiated, and managed execution process of NDAs for prospective bidders and other parties in connection with sale processes;

- Reviewed documents in virtual data room ("**VDR**") and managed VDR logistics for the Debtors' other advisors and prospective bidders;

- Negotiated and communicated with various bidders with respect to diligence questions, transaction parameters, the terms of the proposed sale transactions, and definitive documentation for the same;

- Attended numerous mediation sessions with Judge Isgur and various stakeholder groups, including the Creditors' Committee, Ad Hoc Group, ABL lenders, and other parties in interest, to facilitate the sale processes;

- Engaged in extensive negotiations with the Ad Hoc Group, ABL Lenders and Onset resulting in a settlement on allocation of proceeds that facilitated multiple going-concern sales;

- Drafted, filed, and obtained Court approval of the *Emergency Motion for Order (A) Approving Sale Transaction for Debtors' Walbro Assets, (B) Approving Assumption, Assignment, and Sale of Certain Contracts and Unexpired Leases, and (C) Granting Related Relief* (Docket No. 2081) (the "**Walbro Sale Motion**"), for the sale of the Debtors' Walbro business for $50 million (plus certain assumed liabilities) which preserved approximately 600 jobs;

- Drafted, filed, and obtained Court approval of the *Emergency Motion for Order (A) Approving Sale Transaction for Certain of the Debtors' Intellectual Property and Related Assets, (B) Approving Assumption, Assignment, and Sale of Certain Executory Contracts, and (C) Granting Related Relief Filed by Debtor First Brands Group, LLC* (Docket No. 2236), for the sale of intellectual property related to three of the Debtors' business lines—Wipers, Strongarm, and Filters and Plugs—for $25 million

10

in cash proceeds plus royalties over a 10-year period and certain assumed liabilities;

- Negotiated, drafted, and filed the *Emergency Motion of the Debtors for Entry of an Order Pursuant to Section 363 of the Bankruptcy Code (I) Approving and Authorizing the Debtors to Enter Into and Perform Under the Consulting Agreement; (II) Authorizing the Sale of Wind Down Assets Free and Clear of All Liens, Claims, and Encumbrances; and (III) Granting Related Relief* (Docket No. 2216) (the "**Hilco Motion**"), which was approved by the Court after the Compensation Period, seeking authority to liquidate certain inventory and accounts receivable as part of a wind down of certain of Debtors' remaining North American businesses, and conducted research in connection therewith;

- Negotiated resolutions to informal comments received to the proposed order approving the Hilco Motion;

- Prepared responsive pleadings to objections and other responses to sale transactions;

- Drafted and negotiated purchase agreements and related transaction documents and pleadings in connection with the sale transactions;

- Conducted extensive due diligence with respect to assets and business lines subject to the sale transactions, including with respect to the various business units' operational needs, executory contracts, and organizational structure;

- Prepared cure schedules and adequate assurance packages in connection with the assumption and assignment of executory contracts and unexpired leases, negotiated and prepared for potential litigation with counterparties regarding the same, and filed and served notices of cure costs and adequate assurance information in connection with the sale transactions;

- Drafted and filed the *Emergency Motion of the Debtors for Entry of an Order Pursuant to Section 363 of the Bankruptcy Code (I) Approving and Authorizing the Debtors to Enter Into and Perform Under the Consulting Agreement; (II) Authorizing the Sale of Wind Down Assets Free and Clear of All Liens, Claims, and Encumbrances; and (III) Granting Related Relief* (Docket No. 2216), seeking Court approval of entry into a consulting agreement and procedures to wind down and liquidate certain of the Debtors' business units;

- Drafted, negotiated with stakeholders, and filed the *Emergency Motion of Debtors for Order (I) Approving (A) Bidding Procedures for Sale of Assets of the Debtors, (B) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (C) Assumption and Assignment Procedures, (II) Authorizing*

11

*Designation of Stalking Horse Bidders, (III) Scheduling Auction and Sale Hearing, and (IV) Granting Related Relief* (Docket No. 1253), seeking approval of bidding procedures with respect to a sale of all or substantially all of the Debtors' assets;

- Drafted, reviewed, and revised de minimis asset sale procedures motion;

- Drafted multiple declarations in support of bidding procedures and the Debtors' sale transactions;

- Prepared witnesses in advance of sale hearings to ensure transaction approval;

- Managed sale closing processes in connection with asset sales, including preparing closing checklists, coordinating closing logistics, drafting and executing consents, resolutions, and disclosure schedules, ensuring proper flow of funds, and coordinating the signing processes;

- Communicated amongst the various Weil practice groups, the Debtors, the Debtors' other advisors, and local counsel to the Company's rest of world ("**RoW**") Non-Debtor Subsidiaries (the "**RoW Entities**"), and constituents and their advisors to coordinate strategy, information flow, and other issues relating to the sale process;

- Researched and analyzed various issues related to the sale process, including purchase price allocation structuring, cross-border regulatory issues, tax issues, customs and trade issues, and IP-related issues;

- Negotiated sale agreements, orders, and other transaction documents and pleadings and discussed related matters with stakeholder groups, including the Creditors' Committee, ABL lenders, and Ad Hoc Group, and other parties in interest;

- Prepared for hearings to approve sale transactions, including preparation of witnesses in support of the same, and filed agendas, witness and exhibit lists, replies and other pleadings in advance of sale hearings; and

- Drafted, filed, and coordinated service and publication of various notices related to bidding procedures and specific asset sales.

c.   Aequum Matters (Task Code 004)
 Fees:  $152,028.00; Total Hours:  91.70

- Drafted, negotiated, and obtained Court approval of the *Agreed Order Granting Emergency Motion of Aequum Capital Financial II LLC for Entry of an Order Granting Relief From the Automatic Stay* (Docket No. 1820);

12

- Corresponded and negotiated with Aequum's counsel regarding adequate protection, surcharge expenses, and stay relief of the Aequum lenders;

- Reviewed and responded to Aequum's discovery requests;

- Drafted and sent a demand letter seeking reimbursement of certain surcharges;

- Communicated among Weil practice groups regarding the Aequum lift-stay order and inventory facility issues, among other issues; and

- Drafted an objection to motions to lift the automatic stay and prohibit use of cash collateral prior to reaching a stipulation and agreed order.

d. CarVal Matters (Task Code 009)
   Fees: $534,770.00; Total Hours: 340.30

- Drafted, negotiated, and obtained Court approval of the *Further Stipulation and Agreed Interim Order Regarding Adequate Protection Among Debtors and Carnaby Inventory II, LLC and Carnaby Inventory III, LLC* (Docket No. 1363);

- Drafted, negotiated, and filed the *Agreed Order (I) Granting Carnaby Secured Lenders' Motion for Relief From the Automatic Stay, and (II) Withdrawing Without Prejudice the Carnaby Secured Lenders' Motion to Dismiss* (Docket No. 1651-1);

- Prepared for and defended multiple depositions in connection with CarVal's motion to dismiss and motion for relief from stay;

- Reviewed and responded to CarVal's discovery requests;

- Corresponded with CarVal's counsel regarding certain inventory issues, facility leases, and sale issues;

- Corresponded with OEM's counsel regarding certain CarVal-related issues;

- Drafted and sent a demand letter seeking reimbursement of certain surcharges;

- Prepared for and attended hearing on CarVal's motions to dismiss and for relief of stay; and

- Engaged in extensive negotiations with Carval, Onset, the ABL Lenders and Ad Hoc Group regarding resolution of competing lift stay motions filed by Carval and Onset.

e.    Case Administration (Docket, WIP and Calendar Updates Only) (Task Code 010)
Fees: $242,283.00; Total Hours: 179.10

- Coordinated with Debtors' claims and noticing agent to update and file master service lists; and

- Prepared and regularly updated case calendars, comprehensive work-in-process lists, and other chapter 11 resources for the Debtors, Weil, and the Debtors' other advisors.

f.    Chapter 11 Plan/Confirmation/Implementation (Task Code 011)
Fees: $1,722,082.50; Total Hours: 999.10

- Conducted research and analysis regarding legal issues and strategy relating to a chapter 11 plan;

- Drafted, reviewed, and revised chapter 11 plan and plan term sheets and negotiated with stakeholders regarding same;

- Held numerous meetings with Creditors' Committee, Ad Hoc Group, and other parties in interests regarding case resolution and chapter 11 plan;

- Corresponded with the Debtors, the Debtors' other advisors, and other parties in interest regarding potential case resolution strategies and constructs;

- Engaged in numerous mediation sessions with the Creditors' Committee and the Ad Hoc Group regarding a case resolution;

- Prepared presentation for parties in interest regarding plan strategy and case resolution;

- Negotiated settlement agreements with stakeholders and prepared term sheets regarding the same; and

- Drafted motion seeking approval of settlement agreements.

g.    Corporate Governance (Including Board Meetings) (Task Code 012)
Fees: $860,229.00; Total Hours: 476.20

- Prepared materials for, and participated in, regular and ad hoc meetings of the special committee of the Debtors' board of managers (the "**Special Committee**") and drafted minutes for Special Committee meetings;

- Advised the Special Committee regarding these chapter 11 cases and various corporate governance issues in connection with these chapter 11 cases, including fiduciary duty considerations, transactional authority, and

14

governance actions required to authorize and consummate multiple sale transactions;

- Reviewed and prepared corporate governance documents, including unanimous written consents and resolutions to effectuate governance changes and approve certain actions; and

- Conferred with the Debtors and the Debtors' other advisors, and strategized internally, regarding, among other things, the resignation and appointment of officers, managers, and directors of certain Debtors and their affiliates to facilitate the negotiation, approval, and consummation of sale transactions and the execution of related definitive agreements.

h.   <u>Customer / Vendor / Supplier / Reclamation / 503(b)(9) Issues (Task Code 013)</u>
   Fees:  $803,421.00; Total Hours:  531.10

- Negotiated, drafted, filed, and obtained Court approval of the *Emergency Motion of Debtors for Order (I) Approving Funding Arrangement with Certain OEM Customers; (II) Modifying the Automatic Stay; and (III) Granting Related Relief* (Docket No. 1763) (the "**OEM Funding Motion**"), and drafted and filed a declaration in support thereof (Docket No. 1764), establishing a weekly operational funding arrangement with the Debtors' original equipment manufacturer customers (the "**OEMs**") necessary to pursue going-concern sales of certain of the Debtors' business lines and avoid a complete shutdown of the Debtors' North American operations;

- Negotiated with vendors and suppliers to ensure the continued performance of critical services for the Debtors in the ordinary course of business during these chapter 11 cases;

- Participated on vendor and OEM customer management calls with the Debtors and the Debtors' other advisors;

- Worked closely with the Debtors' other advisors to resolve supply-chain blockages by negotiating interim and long-term arrangements with vendors and OEM customers;

- Coordinated with counsel for the participating OEMs regarding ongoing performance under the OEM funding arrangements, including additions of new participating OEMs, customer-by-customer funding allocations, and resolution of issues arising in the weekly operational funding cycles;

- Corresponded with numerous contract counterparties regarding informational questions, requests, demands, and notices, and coordinated with the Debtors and the Debtors' other advisors regarding various

15

questions, requests, demands, and notices received from vendors and customers;

- Drafted and negotiated various commercial understandings and stipulations with suppliers and vendors;

- Responded to demands from vendors and contract counterparties regarding various matters, including potential violations of the automatic stay and abandonment of various goods; and

- Conducted diligence and research regarding various matters related to vendor and customer issues, including review and analysis of various vendor and customer contracts.

i.  DIP Financing / Cash Collateral / Cash Management (Task Code 014)
Fees:  $874,404.00; Total Hours:  542.60

- Reviewed DIP reporting and DIP order language, and advised the Debtors on DIP compliance matters and related collateral questions;

- Corresponded with various stakeholders regarding surcharge letters and adequate protection issues;

- Drafted, reviewed, and revised the OEM Funding Arrangement term sheet, including multiple rounds of negotiations and correspondence with the ABL Secured Parties, Ad Hoc Group, Creditors' Committee, counsel to the OEMs, and other parties in interest;

- Prepared segregated account agreement and related budget in connection with OEM customer funding and corresponded with DIP Lenders regarding the customer segregated account;

- Negotiated and executed an addendum to the OEM Funding Arrangement term sheets;

- Communicated among Weil practice groups regarding the OEM funding proposal and financing-related matters;

- Drafted and revised surcharge demand letters to SPV lenders, and participated in calls with A&M and counterparties regarding same;

- Reviewed information related to deposit account control agreements ("**DACAs**"), drafted and reviewed DACA forms and questionnaires, corresponded with counterparties on DACA-related issues, and maintained internal DACA tracking documents;

- Reviewed UCC-1 financing statements to determine priority and status of liens in connection with the DIP financing arrangement; and

- Coordinated first-day motion reporting and distributed first-day motion reporting matrices.

j.   Disclosure Statement/Solicitation/Voting (Task Code 015)
     Fees:  $637,276.50; Total Hours:  448.20

- Strategized and conducted legal research in connection with the Disclosure Statement, including consideration of precedent cases;

- Drafted, reviewed, and revised Disclosure Statement (filed after the Compensation Period), and coordinated internally and with the Debtors' other advisors regarding same;

- Drafted, revised, and revised the *Emergency Motion of Debtors for Entry of Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Notice and Objection Procedures for Confirmation of Plan; (V) Establishing Global Settlement Election Procedures; and (VI) Granting Related Relief* (Docket No. 2546) (the "**Disclosure Statement Motion**"), which was filed after the Compensation Period; and

- Conducted research into a potential solicitation schedule and into various legal issues regarding solicitation of the Plan.

k.   Employee Issues / Communications (Task Code 016)
     Fees:  $3,063,729.50; Total Hours:  1,706.70

- Conferred with the Debtors, the Debtors' other advisors, the Debtors' stakeholders, and internally regarding various employee-related matters;

- Analyzed and addressed employee-related matters under state, federal, and foreign law in connection with, among other things, employee benefits, pension plans, deferred compensation, collective bargaining and union issues, compensation and bonuses, retirement plans, employee termination, furlough, and severance, employee resignation and separation, rabbi trusts, employee-related communications, and facility closures;

- Analyzed and addressed issues arising under the Employee Retirement Income Security Act of 1974;

17

- Analyzed and addressed issues arising under the Worker Adjustment and Retraining Notification Act ("**WARN**") in connection with facility closures, including preparing WARN notices, responding to two WARN-related adversary proceedings filed against the Debtors, and filing motions to dismiss in each of the adversary proceedings (*Garza v. First Brands Grp., LLC*, Adv. Pro. No. 26-03038 (CML) (Bankr. S.D. Tex. Mar. 13, 2026) (Docket No.18) and *Tapia v. First Brands Grp., LLC*, Adv. Pro. No. 26-03052 (CML) (Bankr. S.D. Tex. Mar. 18, 2026) (Docket No. 34));

- Addressed regulatory issues raised by the Pension Benefit Guaranty Corporation;

- Advised on labor issues related to the Debtors' sale processes, including (i) reviewing sale-related documents and asset purchase agreements with respect to employee-related issues, reviewing employee lease agreements, reviewing issues related to transition services agreements and shared services agreements, reviewing inquiries and letters from employees related to the sale processes and preparing responses thereto (e.g., Docket No. 1999), (ii) analyzing issues related to union assumption and successor liability, and (iii) negotiating stipulations extending the duration of certain collective bargaining agreements (e.g., Docket No. 2264);

- Considered issues related to employee communications and drafted communications regarding the same in coordination with the Debtors' other advisors;

- Responded to inquiries from the Department of Labor and reviewed state agency submissions; and

- Prepared and negotiated settlement agreements and stipulations by and among parties, including the Debtors, unions, employees, the Equal Employment Opportunity Commission, and the National Labor Relations Board.

l. Evolution Matters (Task Code 017)
   Fees:  $1,735,155.00; Total Hours:  1,095.50

- Drafted and filed the *Debtors' (I) Objection to Evolution's Emergency Motion to Enforce Stipulation and Agreed Order Regarding Adequate Protection Among Debtors and Evolution Credit Partners and (II) Emergency Request for Use of Alleged Cash Collateral* (Docket No. 1280) and two declarations in connection therewith (Docket Nos. 1285, 1287);

- Drafted and sent a demand letter seeking reimbursement of certain surcharges;

- Reviewed and responded to Evolution's discovery requests, including requests for production, interrogatories, and document productions, and coordinated with e-discovery vendor, A&M and the Weil litigation team regarding same;

- Corresponded with the Ad Hoc Group, Creditors' Committee, and other parties regarding Evolution's motion to convert, including participating in multiple calls with principals and advisors;

- Communicated among Weil practice groups, co-advisors, and counterparties regarding Evolution litigation strategy, settlement proposals, and related matters;

- Drafted and filed the *Debtors' Memorandum of Law in Support of Motion to Dismiss Evolution's Adversary Complaint* (Adv. Proc. No. 26-03006, Docket No. 32) and the declaration and supporting exhibits in connection therewith (Docket No. 33);

- Drafted and filed the *Debtors' Joinder to Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff Evolution Credit Opportunity Master Fund II-B, L.P.'s First Amended Complaint* (Adv. Proc. No. 25-03800, Docket No. 32); and

- Drafted and filed the *Debtors' Response to Evolution's Emergency Motion for Entry of an Order Converting Chapter 11 Cases of Certain SPV Debtors to Chapter 7* (Docket No. 2283).

m.   Exclusivity Code (018)
Fees:  $149,561.50; Total Hours:  98.90

- Drafted, revised, filed, and obtained Court approval of the *Motion of Debtors for an Order Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (Docket No. 1674);

- Drafted the Debtors' second motion to extend exclusive periods, which was filed after the Compensation Period; and

- Conducted legal research in connection with the same.

n.   Executory Contracts/Leases/365 (Task Code 019)
Fees:  $518,316.50; Total Hours:  365.20

- Negotiated resolutions to objections to, and obtained approval of, *Motion of Debtors for Entry of an Order (I) Approving Procedures to (A) Assume or Assume and Assign or (B) Reject, Unexpired Leases and Executory Contracts, (II) Approving Abandonment of Property in Connection with*

19

*Rejection of Unexpired Leases, and (III) Granting Related Relief* (Docket No. 758);

- Drafted, filed, and obtained Court approval of the *Motion of Debtors for Authority to Extend Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* (Docket No. 1673);

- Drafted and filed multiple notices of rejection of unexpired leases and executory contracts (e.g., Docket Nos. 2009, 2160, 2268) and (obtained approval of same;

- Negotiated, drafted, filed, and obtained Court approval of the *Stipulation and Agreed Order Resolving Motion and Objection of Kitkat (IL) LLC* (Docket No. 2118);

- Conferred with Debtors and the Debtors' other advisors to analyze the Debtors' executory contracts and unexpired leases and prepared numerous schedules outlining executory contracts and unexpired leases to potentially be assumed and assigned to buyers in connection with the postpetition sale process;

- Conducted substantial analysis, due diligence, and legal research, regarding the Debtors' obligations under their leases and agreements, the implications of rejecting the leases and agreements, and preparing for the rejection of each of various leases and agreements;

- Corresponded with various third parties, landlords, and contract counterparties and conducted legal research in connection with the assumption and assignment of contracts and leases, cure costs related thereto, and other real estate and contract matters; and

- Conferred with the Weil real estate team and other various Weil practice groups, the Debtors, and the Debtors' other advisors regarding various executory contract and unexpired lease matters.

o.   Other Factoring / Inventory Financing / Supply Chain Financing (Task Code 020)
     Fees:  $1,322,193.50; Total Hours:  827.80

- Reviewed the numerous objections to the *Motion of Debtors for Order (I) Establishing Third-Party Factoring Procedures for (A) the Review and Reconciliation of the Debtors' Receipts, and (B) the Release of Funds to the Debtors' Estates and the Third-Party Factors; (II) Authorizing Customers to Remit Receivables Without Liability; and (III) Granting Related Relief* (the "**Factoring Procedures Motion**") (Docket No. 807);

- Drafted and filed the *Debtors' Reply to Objections to Factoring Procedures Motion* (Docket No. 1313) and the related declaration;

20

- Negotiated with various parties, including multiple third-party factors, with respect to the revised proposed orders for the Factoring Procedures Motion;

- Negotiated, filed, and obtained court approval of *Stipulation and Agreed Order Extending Deadline to Assert Claim to any Invoice Relating to the Released Funds* (Docket No. 1933);

- Drafted and filed the *Debtors' Preliminary Objection To Evolution's Emergency Motion for Adequate Protection* (Docket No. 1904) and related declaration;

- Distributed weekly reporting regarding segregated prepetition accounts receivable to third-party factors;

- Responded to multiple diligence requests from third-party factors and coordinated substantial document production in connection with the Factoring Procedures Motion;

- Defended three depositions noticed by third-party factors in connection with the Factoring Procedures Motion; and

- Drafted and filed the *Appellees' Opposition to Evolution Credit Partners' Emergency Motion to Expedite Appeal* (Appeal Docket No. 12) and *Brief for Appellees* (Appeal Docket No. 21) in the appeal (Case No. 4:26-cv-00073) of the Court's *Order (I) Authorizing Release of Certain Funds to the Debtors' Estates; (II) Adjourning Hearing on Remaining Portions of Factoring Procedures Motion and Supplement; and (III) Granting Related Relief* (Docket No. 1133).

p.  General Case Strategy (Team and Client Calls) (Task Code 021)
    Fees:  $720,686.00; Total Hours:  312.60

- Prepared for and participated in regular meetings, teleconferences, and videoconferences with the Debtors' management team, various stakeholders, and the Debtors' other advisors to discuss case strategy and issues;

- Conducted numerous internal team meetings, teleconferences, and videoconferences regarding the status and administration of the Debtors' chapter 11 cases, general case strategy, and various work streams regarding the matters described in this Application; and

- Responded to a large volume of emails, calls, and correspondence related to these chapter 11 cases, including with respect to the workstreams, issues, and matters described in this Application.

q.   <u>Hearings and Court Matters (Task Code 022)</u>
Fees:  $932,164.50; Total Hours:  564.80

- Prepared for and represented the Debtors at twelve (12) hearings during the Compensation Period, including hearings in connection with the Debtors' Factoring Procedures Motion, OEM Funding Motion, D&O Motion, Walbro Sale Motion, motions to appoint an examiner, motion to allow Onset to intervene in the James Adversary proceeding, motions to lift the automatic stay, and a motion enforce Evolution's adequate protection stipulation, among other contested matters;

- Prepared, filed, and arranged service of various motions, notices, and other documents, including notices of hearing dates, hearing agendas, proposed orders, certificates of no objection, and witness and exhibit lists;

- Prepared witnesses, declarations, and evidence in support of relief requested in the filings described herein; and

- Consulted with the Court's chambers regarding case matters and scheduling and prepared materials for the Court.

r.   <u>Insurance Issues (Task Code 023)</u>
Fees:  $201,488.00; Total Hours:  100.90

- Conferred with Weil practice groups, the Debtors, the Debtors' other advisors, and the Debtors' insurance broker regarding various insurance-related issues;

- Reviewed and analyzed insurance policies and programs, surety bonds, and related documents;

- Reviewed lift-stay motions and replies thereto relating to the Debtors' D&O insurance policies, prepared for hearing on the same, and conferred with movants and other stakeholders regarding the same;

- Conducted research and advised the Debtors regarding various insurance-related issues, including D&O coverage, policy renewals, premium refunds, crime claims; and

- Communicated with various third parties and stakeholders regarding insurance-related topics and responded to diligence inquiries regarding same.

s.   <u>Non-Debtor Subsidiary Matters (Task Code 024)</u>
Fees:  $2,144,546.00; Total Hours:  1,353.70

- Advised the Debtors with respect to the marketing and sale of numerous RoW business units and coordinated with non-U.S. counsel—including Weil's London and Frankfurt offices, Ashurst Australia, and other local counsel in Germany, Poland, China, Mexico, the Netherlands, and other jurisdictions—regarding the same;

- Strategized, negotiated, and drafted corporate governance and other documentation related to Non-Debtor Subsidiaries, including preparing numerous updates to the Special Committee, the Ad Hoc Group, and the Creditors' Committee, and coordinated with local counsel regarding the same;

- Prepared for and convened board meetings and board updates for the RoW entities, and coordinated with local counsel regarding the same;

- Advised certain Non-Debtor Subsidiaries with respect to insolvency-related matters in connection with employment liabilities, the wind down of operations, contingency planning, board meetings, international value preservation, and lender and stakeholder negotiations;

- Advised certain Non-Debtor Subsidiaries with respect to intellectual property and licensing matter;

- Reviewed, analyzed, and coordinated responses to information requests from local insolvency officeholders, courts, and creditors of the various Non-Debtor Subsidiaries, and coordinated with the Debtors and the Debtors' other advisors regarding intercompany claims, intercompany transfers, and shared services arrangements between the Debtors and the Non-Debtor Subsidiaries;

- Coordinated with Weil's Hong Kong office, Chinese local counsel, and the Company's management with respect to the local insolvency proceedings of Non-Debtor Subsidiary Longkou Haimeng Machinery Co., Ltd. and the preparation, execution, and circulation of shareholder support letters and related corporate authorizations;

- Participated in daily M&A and wind-down coordination calls with A&M and the Debtors' other advisors regarding the orderly wind down of various Non-Debtor Subsidiaries (including the closure of certain Mexican facilities and related employee considerations) across the Trico, Airtex, Brakes, Horizon, and Ultinon business units;

- Together with local counsel, advised certain Non-Debtor Subsidiaries with respect to the commencement of local insolvency proceedings in Germany, Poland, and other jurisdictions;

- Coordinated with the Debtors' Indian Non-Debtor Subsidiaries regarding governance and director matters, including the resignation and replacement of directors to support continuity of operations;

- Prepared and supported the local insolvency filing of Carnaby Capital GmbH and related correspondence with A&M and German local counsel regarding the underlying obligations and the impact of such filing on the Debtors' broader Non-Debtor Subsidiary footprint; and

- Prepared and orchestrated with A&M the execution of a framework for the orderly wind down of all remaining non-U.S. entities across over 15 jurisdictions, to retain optionality and minimize contagion risk, including: engaging and instructing local counsel in connection with the preparation and analysis of local law requirements, directors' duties obligations and mandatory filing regimes; briefing and preparing local directors and management to assume responsibility for the wind down of their respective entities; coordinating stakeholder management across both local and chapter 11 creditor constituencies; and navigating the sequencing and interdependencies with the chapter 11 sale processes, OEM Funding Arrangement, and local insolvency considerations.

t. <u>Debtors' Investigation Matters (Task Code 025)</u>
Fees:  $841,052.50; Total Hours:  738.80

- Advised the Special Committee in its ongoing investigation of the Debtors' prepetition activities, including the analysis of potential estate claims and causes of action against current and former insiders, professional firms, lenders, factoring counterparties, and other third parties;

- Drafted, served, and supplemented Rule 2004 discovery requests on multiple third parties, and met and conferred with counsel for such third parties to negotiate the scope of, and resolve disputes regarding, third-party document productions;

- Coordinated with the Debtors' other advisors and outside discovery vendors to collect, image, process, and preserve key physical and electronic evidence obtained in connection with the investigation;

- Developed and refined the investigation document review protocol, including custodian identification, search-term construction, hot-document criteria, and a privilege protocol (including research regarding Rule 502(d) protective orders and related federal authority);

- Reviewed and analyzed hundreds of thousands of documents and emails collected from the Company and its employees and produced by third parties in response to Rule 2004 discovery requests, prepared hot-document summaries and trackers, and drafted internal memoranda summarizing key factual findings;

- Coordinated with the Debtors' other advisors on the whistleblower hotline and analyzed tips received through same;

- Analyzed bank records, factoring transactions, and related-party transfers, and coordinated with the Debtors' other advisors at A&M on cash-tracing analyses and the factoring procedures workstream;

- Prepared for and participated in interviews of current and former employees, deposition preparation sessions, and related coordination with the Debtors' affirmative litigation team to align the investigative and adversary proceeding workstreams;

- Prepared presentations and participated in meetings with Special Committee to provide updates on investigative findings and next steps;

- Drafted responses and objections to Rule 2004 discovery requests received from multiple third parties, coordinated production of responsive documents, and resolved related deficiency and privilege issues; and

- Conducted research into, and prepared written analyses regarding, potential estate claims and causes of action, including research regarding criminal forfeiture, restitution, and the availability of directors' and officers' insurance proceeds, and prepared draft documentation in connection with a potential litigation trustee structure to pursue such claims.

u.   Onset Matters (Task Code 028)
     Fees: $1,906,217.00; Total Hours: 1,248.40

- Coordinated with the Debtors and the Debtors' other advisors regarding various Onset-related matters;

- Reviewed documents relating to various Onset-related issues, including tracing Onset's assets, transactions, leases, and property interests, and conducted legal research in connection therewith;

- Drafted and filed complaint commencing the Onset Adversary Proceeding (Adv. Pro. No. 26-03005, Docket No. 1);

- Prepared litigation strategy regarding various Onset-related matters in coordination with the Debtors' other advisors, including researching potential claims and causes of action against Onset;

25

- Analyzed Onset's answer and counterclaims to the complaint filed in the Onset Adversary Proceeding (Adv. Pro. No. 26-03005, Docket No. 16);

- Reviewed and responded to Onset's discovery and production requests and conferred with Onset's advisors regarding the same;

- Reviewed and prepared responses to (i) Onset's Rule 12(c) Motion (Adv. Pro. No. 26-03005, Docket No. 32), (ii) Onset's Rule 12(b) Motion (Adv. Pro. No. 26-03005, Docket No. 33), and (iii) the U.S. Government's motion to intervene and stay discovery (Adv. Pro. No. 26-03005, Docket No. 69);

- Drafted, filed, and obtained Court approval of the Debtors' motion to stay discovery in the Onset Adversary Proceeding (Adv. Pro. No. 26-03005, Docket No. 75);

- Reviewed and responded to Onset's motion to reconsider Court's ruling staying deadlines in the Onset Adversary Proceeding (Adv. Pro. No. 26-03005, Docket No. 100);

- Drafted and filed Response to Onset's emergency stay relief motion (Docket No. 2306);

- Prepared for and participated in mediation with Onset and OEMs and analyzed related issues; and

- Reviewed and analyzed issues relating to Onset surcharge demands and prepared and sent letter to Onset regarding the same.

v.  Regulatory Issues (Task Code 029)
Fees:  $2,246,171.00; Total Hours:  1,525.80

- Conferred with the Debtors, Debtors' other advisors, other stakeholders, and internally regarding various regulatory matters related to antitrust, merger, environmental, and bidder overlap issues;

- Analyzed regulatory issues in connection with the Debtors' sale and marketing processes, including reviewing sale documents and researching related issues including successor liability, tariffs, and customs;

- Prepared regulatory filings in connection with the Debtors' sale processes in coordination with foreign counsel;

- Reviewed data room documents for confidentiality, competitively sensitive information, and clean team access; and

- Reviewed and revised bidder clean team agreements and requirements, analyzed related issues, and advised the Debtors, the Debtors' other advisors, and internally regarding the same.

w.   <u>Retention / Fee Applications:  Other Professionals (Task Code 031)</u>
Fees:  $192,999.00; Total Hours:  131.80

- Reviewed Debtors' professionals' interim fee applications for privilege and confidentiality and provided comments in compliance with U.S. Trustee Guidelines and to preserve client confidentiality and privilege;

- Reviewed and provided comments to various applications to employ the Creditors' Committee's professionals, the Examiner's professionals, and the SPV Entities' professionals; and

- Corresponded internally and with the Debtors' other advisors regarding various retention matters, including with respect to monthly fee statements, retention applications, and related declarations and orders in respect of such applications.

x.   <u>Schedules/Statement of Financial Affairs/Rule 2015.3 Reports (Task Code 032)</u>
Fees:  $465,131.50; Total Hours:  343.30

- Coordinated with the Debtors and Debtors' other advisors to prepare the schedules of assets and liabilities (the "**Schedules**") and statements of financial affairs (the "**Statements**" and, together with the Schedules, the "**Schedules and Statements**") for each of the 112 Debtors (Docket Nos. 1411–1634) and conducted legal research in connection therewith;

- Drafted, reviewed, and revised the global notes for the Schedules and Statements;

- Reviewed, revised, and filed the Schedules and Statements;

- Coordinated with the Debtors and the Debtors' other advisors to prepare Drafted, revised, and revised the global notes for the initial report in compliance with Bankruptcy Rule 2015.3 (the "**2015.3 Report**") (Docket No. 1389);

- Drafted, revised, and revised the global notes for the 2015.3 Report;

- Reviewed, revised, and filed the 2015.3 Report; and

- Corresponded with various Weil practice groups and the Debtors' other advisors regarding matters related to the Schedules and Statements and 2015.3 Report.

27

y.     <u>Tax Issues (Task Code 033)</u>
Fees:  $1,576,531.50; Total Hours:  870.50

- Analyzed and discussed the proposed purchase price allocations in each of the Debtors' proposed sales transactions;

- Reviewed and responded to tax diligence requests from bidders in the Debtors' sale processes;

- Participated in weekly calls with A&M regarding ongoing sales, diligence, and open items;

- Reviewed and commented on draft sale agreements for the Walbro sale transaction;

- Prepared and filed state transfer tax affidavits and reviewed state transfer tax exemption issues in connection with the closing of the Walbro sale transaction;

- Drafted and revised tax section of the Disclosure Statement;

- Communicated among Weil practice groups, the Debtors' other advisors, and counterparties regarding the proposed chapter 11 plan structure and its tax implications; and

- Reviewed various drafts of chapter 11 plan for tax-related issues.

z.     <u>Unsecured Creditor Issues / Meetings / Comms (Including UCC Matters) (Task Code 034)</u>
Fees:  $191,395.50; Total Hours:  92.00

- Attended recurring and ad hoc meetings and calls with the Creditors' Committee, their advisors, and the Debtors' other advisors regarding the chapter 11 cases;

- Coordinated with the Creditors' Committee and their advisors regarding various case issues, including diligence, the OEM Funding Arrangement, the sale process, the Plan and Disclosure Statement, SPV-related issues, and various other aspects of these chapter 11 cases; and

- Coordinated with the Creditors' Committee and their advisors regarding various filings in the chapter 11 cases.

aa.     <u>US Trustee Issues / Meetings / Communications / MORs (Task Code 035)</u>
Fees:  $74,030.00; Total Hours:  74.00

- Prepared for and attended section 341 meeting;

- Assisted the Debtors and their professionals with preparing and filing of the Debtors' monthly operating reports for December 2025, January 2026 and February 2026;

- Coordinated with the U.S. Trustee, A&M, and the Debtors' management regarding the underlying financial information, accruals, and disclosures included in the monthly operating reports;

- Prepared reporting regarding relief granted under various first-day orders and corresponded with the U.S. Trustee regarding same; and

- Coordinated with the U.S. Trustee regarding various filings in the chapter 11 cases.

bb. Weil Retention/Billing/Fee Applications (Task Code 037)
Fees: $430,821.00; Total Hours: 362.90

- Reviewed time records and disbursements for compliance with U.S. Trustee Guidelines and privilege and confidentiality;

- Drafted, filed, and obtained Court approval of the *First Interim Fee Application of Weil Gotshal & Manges LLP, Attorneys for the Debtors, for the Period from September 29, 2025 Through and Including December 31, 2025* (docket No. 1948);

- Drafted and filed the *First Supplemental Declaration of Matthew S. Barr in Support of Application of Debtors for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 1648); and

- Drafted, reviewed, and served monthly fee statements.

cc. Lender Issues / Meetings / Comms (Task Code 038)
Fees: $281,194.50; Total Hours: 123.10

- Attended recurring meetings and ad hoc calls with the Ad Hoc Group, and its advisors, and the Debtors' other advisors regarding the chapter 11 cases;

- Coordinated with the Ad Hoc Group and their advisors regarding various cases issues, including with respect to the sale process, the Plan and Disclosure Statement, case funding, SPV-related issues, and various other aspects of these chapter 11 cases;

- Facilitated the production of diligence to the Ad Hoc Group and its advisors and coordinated with respect to compliance with cleansing protocols; and

- Coordinated with the Ad Hoc Group and its advisors regarding various filings in the chapter 11 cases.

dd.   Examiner Matters (Task Code 039)
    Fees:  $678,060.00; Total Hours:  371.70

- Prepared for and participated in calls, meetings, and presentations among Weil practice groups and the Debtors' other advisors regarding Examiner-related issues, and conducted research in connection therewith;

- Coordinated with the Examiner and the Examiner's counsel regarding the Examiner's investigation, including responding to information requests, facilitating access to documents and witnesses, and supporting the Examiner's report-preparation process; and

- Coordinated with the Debtors' management and the Debtors' other advisors regarding the Examiner's investigation, including responding to follow-up document requests and witness interview requests, to manage the document production and review process.

ee.   Government Investigation Matters (Task Code 041)
    Fees:  $825,305.50; Total Hours:  502.20

- Continued to implement a comprehensive strategy in response to a set of parallel investigations conducted by multiple agencies of the federal government into the Debtors' prepetition business practices (collectively, the "**Government Investigation**"), which included, among other things, monitoring a whistleblower hotline, analyzing Debtors' books and records, identifying key document custodians and witnesses, and interviewing employees domestically and abroad;

- Coordinated with the various Weil teams and the Debtors' other advisors regarding the Government Investigation;

- Coordinated with regulatory counsel for the Debtors regarding a response to a request from U.S. Customs and Border Protection regarding a customs related issue;

- Reviewed and coordinated with the Weil teams and the Debtors' other advisors regarding the Debtors' crime insurance coverage and the related policies;

- Reviewed and analyzed documents related to the criminal case brought by the Department of Justice against certain of the Debtors' former executives, including the criminal indictment and other court filings, the related press release, and transcripts from hearings related thereto;

30

- Responded to numerous urgent requests for documents and information from multiple parties including the agencies conducting the Government Investigation, the Examiner, and counsel for certain of the Debtors' former executives; and

- Participated in additional meetings and correspondence with the Department of Justice, Securities and Exchange Commission, and the Customs and Border Protection to discuss findings related to, and status of, the Government Investigation.

ff.  RoW Ultinon (Task Code 043)
Fees:  $254,580.50; Total Hours:  158.80

- Coordinated with local counsel and management of the Ultinon group of Non-Debtor Subsidiaries regarding the marketing and sale process for the Ultinon business, the commencement of local insolvency proceedings (including the German insolvency proceeding of Ultinon Motion Germany GmbH), and the chapter 11 filings of Ultinon Motion Holdings B.V., Liberty I B.V., and Liberty II B.V.;

- Reviewed and analyzed draft chapter 11 petitions, first-day declarations, first-day motions, and proposed orders prepared in connection with the chapter 11 filings of Ultinon Motion Holdings B.V., Liberty I B.V., and Liberty II B.V. (*In re Ultinon Motion Holdings B.V., et al.*, Case No. 26-90428 (CML) (Bankr. S.D. Tex.)) (the "**Ultinon Chapter 11 Cases**"), and attended the first-day hearing in the Ultinon Chapter 11 Cases;

- Negotiated with Santander, Deva Capital, and other Ultinon-side stakeholders regarding various loan facilities and related conditions, including the appointment of an independent conflicts director to the three Dutch holding companies;

- Coordinated with local counsel and Ultinon management regarding the commencement of local insolvency proceedings for Ultinon entities in Germany, Poland, China, and other jurisdictions, and supported employee, stakeholder, and intercompany workstreams during the wind-down of the Ultinon group;

- Coordinated with Weil's London and Paris offices and local counsel across the Ultinon footprint (including in Mexico, Italy, Thailand, the Netherlands, Brazil, Canada, Hong Kong, France, Sweden, Spain, and other jurisdictions) regarding the wind-down of the Ultinon group, local insolvency proceedings, intercompany balances, payables, and the preservation of value of remaining assets;

- Reviewed, negotiated, and finalized the engagement letter for the proposed liquidators of Ultinon Hong Kong, coordinated their onboarding and access

31

to Company information, and addressed payroll, statutory, and regulatory matters required to facilitate the orderly wind down of the Hong Kong Non-Debtor Subsidiary;

- Prepared, reviewed, and circulated status updates to the Debtors' key stakeholders with respect to the Ultinon Non-Debtor Subsidiaries, including with respect to the status of local insolvency proceedings, lender funding obligations, guarantee demands, and standstill arrangements;

- Provided cross-border German law advice and coordinated with Weil's Frankfurt office regarding Ultinon Motion Germany GmbH, including powers of attorney, asset handover/payment correspondence, and the implementation of the German insolvency proceedings;

- Conducted and reviewed legal diligence on Ultinon's existing finance and security documentation, asset ownership across jurisdictions (including Poland, Germany, China, Hong Kong, and the Netherlands), data-room contents, and intercompany arrangements to inform the wind-down strategy and discussions with key stakeholders;

- Drafted, prepared, and supported the local filing of judicial reorganization proceedings for Ultinon Motion Commercial France in coordination with Weil's Paris office and French local counsel, including review of financial difficulty notices, employment-related materials, and supporting documentation submitted to the French court;

- Coordinated with Lumileds, Polish local counsel, and the directors of the Polish Ultinon entities regarding the commencement of local Polish insolvency proceedings for the Ultinon production facilities in Poland, and prepared related update correspondence to key stakeholders;

- Negotiated, reviewed, and finalized employment-related matters at the Ultinon French and other European entities, including coordinating with French employment counsel and Weil's London and Paris offices regarding employee notifications, statutory consultation requirements, and securing extensions of financing waivers from the Ultinon-side lenders; and

- Coordinated with Chinese local counsel, Weil's Hong Kong office, and Ultinon management regarding the wind-down of the Chinese Ultinon production facilities, including the orderly handover of operations, intercompany payable analyses, and related stakeholder communications.

32

gg.   RoW Horizon (Task Code 044)
      Fees:  $915,808.00; Total Hours:  481.20

- Reviewed and analyzed the implementation of the Horizon Europe legal-separation structure (together with Loyens, as Dutch and Luxembourg local counsel) (the "**Horizon Europe Separation**");

- Prior to the Horizon Europe Separation, provided ongoing advice to the Horizon Europe and FMP / Trico Australia management teams regarding governance, change of directors, funding, contingency planning, and intercompany matters;

- Coordinated with Dutch local counsel, German notaries, and Weil's Frankfurt office regarding various corporate governance issues related to the Horizon business;

- Advised on funding arrangements provided by (i) the Ad Hoc Group for Trico Europe, CoFo, and Plastics Germany, (ii) the OEMs for Trico Europe, and (iii) Crédit Agricole (factoring arrangements) for Horizon Europe, and coordinated with local counsel and lenders regarding the documentation and implementation of such facilities to preserve value for the Debtor estates as equity holders;

- Advised the Company with respect to the Horizon North America sale process and prepared bidder diligence materials and transaction documents for ongoing negotiations with the Horizon North America bidder;

- Reviewed and analyzed data protection and GDPR issues arising in connection with diligence for the Horizon sale process;

- Coordinated with Weil's London office and local European counsel regarding compliance with applicable data privacy regimes;

- Advised on the marketing and sale process for the Horizon North America business unit, including evaluating bids, negotiating definitive transaction documents, and coordinating with local counsel regarding cross-border execution issues;

- Negotiated and prepared the Horizon North America asset purchase agreement and ancillary documents (including transition services and shared services arrangements);

- Coordinated with Mexican counsel (Galicia) and other foreign counsel regarding various corporate governances issues in connection with the Horizon sale process;

- Reviewed and analyzed intercompany loan and subordination considerations within the Horizon group and drafted loan assignment and related ancillary documentation in connection with the Horizon Europe Separation and Horizon North America sale; and

- Reviewed and analyzed intellectual property documents in connection with the Horizon sale process and advised the Non-Debtor Subsidiaries with respect to the same.

hh. RoW Other (Task Code 046)
Fees: $615,712.50; Total Hours: 369.30

- Advised certain other Non-Debtor Subsidiaries (including those associated with Trico Europe, Airtex, Brakes, and various South American operations) with respect to insolvency-related matters, lender and stakeholder negotiations, local sale processes, and value preservation, and coordinated with local counsel regarding the same;

- Strategized and assisted certain other RoW entities in negotiations with lenders and other stakeholders, running local sale processes, contingency planning, board meetings, and international value preservation, and prepared updates for the Special Committee, the Ad Hoc Group, and the Creditors' Committee regarding the same;

- Coordinated with management for Trico RO S.R.L. ("**Trico Romania**") and local Romanian counsel regarding ongoing back-office services to the Debtor entities, including funding arrangements, intercompany invoicing, and contingency planning to ensure continuity of the central service center critical to the Debtors' continued operations, and supported the ongoing local debtor-in-possession insolvency proceedings by coordinating with Romanian counsel and the judicial administrator regarding court-mandated reporting, creditor communications, and other procedural requirements;

- Replaced and supported the appointment of new RoW management following the departure of key RoW management and personnel, and implemented appropriate safeguards and procedures to ensure financial and operational continuity across the Non-Debtor Subsidiaries;

- Drafted, reviewed, and finalized corporate, finance, and intercompany documentation with respect to Airtex Spain and Trico South America;

- Prepared, finalized, and submitted Trico Belgium S.A.'s claims to the insolvency tables of Diepersdorf Plastic Manufacturing GmbH and Linden Plastic Manufacturing GmbH, and coordinated with German insolvency administrators, the Trico accounting team, and Weil's Frankfurt office regarding supporting documentation and supplemental information requests;

34

- Coordinated with Spanish, Italian, Chinese, and Belgian local counsel and A&M regarding contingency planning for the Airtex Spain entities and contagion-risk mitigation strategies for the Trico Europe footprint, including the analysis of intercompany assignment and set-off arrangements between Airtex Spain and the Trico Europe entities;

- Coordinated the handover of ongoing workstreams for certain RoW business units, including Trico Europe and Airtex, to the supervision of local directors and management;

- Coordinated with Brazilian counsel regarding the implications of the uncontrolled wind-down of an affiliated non-FBG Brazilian entity, the resignation and replacement of directors at certain Brazilian entities, D&O coverage for the Brazilian entities, and other Trico South America workstreams, and supported related intercompany, employment, and stakeholder communications in coordination with the Debtors' management and A&M;

- Advised certain Trico Europe entities with respect to ongoing operational matters, including cash-flow management, directors' duties considerations, audit and financial reporting requirements, and going-concern analysis; and

- Coordinated with the CoFo German receiver and German notaries regarding shareholder and corporate information requests for the CoFo Group entities, and reviewed status updates and proceedings information for the CoFo and Plastics Germany insolvencies in connection with the broader RoW reporting to the Special Committee, the Ad Hoc Group, and the Creditors' Committee.

ii.   Mediation (Task Code 047)
Fees:  $1,033,960.00; Total Hours:  476.40

- Engaged in months of extensive mediation lead by Judge Isgur on a number of matters, including (i) case resolution/plan issues with the Creditors' Committee, Ad Hoc Group, and Benjamin Duster, and (ii) disputes among the Ad Hoc Group, ABL Lenders, and Onset over lien/ownership of certain assets and allocation of sale proceeds regarding multiple going concern sales;

- Attended numerous mediation sessions with Judge Isgur and various stakeholder groups, including the Creditors' Committee, Ad Hoc Group, ABL lenders, Onset and other parties in interest;

- Prepared mediation strategy, reviewed mediation proposals, and prepared mediation-related materials;

- Analyzed various diligence issues in connection with mediation and corresponded with the mediator and mediation parties regarding the same; and

- Prepared, filed, and obtained Court approval of (i) the *Agreed Mediation Order Appointing Judge Marvin Isgur as Mediator* (Docket No. 1822), (ii) the *Second Agreed Mediation Order Appointing Judge Marvin Isgur as Mediator* (Docket No. 2005), and (iii) the *Third Agreed Mediation Order Appointing Judge Marvin Isgur as Mediator* (Docket No. 2186).

jj.  WARN Adversary Proceeding (Task Code 048)
Fees:  $298,103.00; Total Hours:  196.90

- Reviewed and analyzed filings in two proposed class action adversary proceedings filed by putative classes of former U.S. employees against certain of the Debtors alleging violations of the Worker Adjustment and Retraining Notification Act ("**WARN Act**") and state equivalents (Adv. Pro. 26-03052 and Adv. Pro. 26-03038) (the "**WARN Adversary Proceedings**"), including the complaints, the amended complaints, a motion for class certification, and a motion for leave to file a second amended complaint;

- Analyzed caselaw and applicable rules as relevant to the WARN Adversary Proceedings;

- Conferred with opposing counsel as relevant to the WARN Adversary Proceedings;

- Coordinated with the various Weil teams to advise the Debtors in the defense of the WARN Adversary Proceedings;

- Drafted and filed *Defendants' Motion to Dismiss First Amended Class Action Adversary Proceeding Complaint* (Adv. Pro. 26-03052, Docket No. 34); and

- Drafted and filed *Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Adversary Proceeding Complaint and Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint* (Adv. Pro. 26-03038, Docket No. 18).

25.  In addition to the foregoing, Weil prepared, on behalf of the Debtors, all other necessary motions, applications, orders, notices, responses, and other papers in support of positions taken by the Debtors and in compliance with applicable law.

26.     The foregoing professional services were necessary and appropriate to the administration of these chapter 11 cases.  The professional services performed by Weil were in the best interests of the Debtors and their stakeholders.   Compensation for such services is commensurate with the complexity, importance, and nature of the issues and tasks that were involved in these chapter 11 cases.  All of Weil's professional services were performed skillfully and efficiently.

27.     Weil has a preeminent Restructuring practice and enjoys a national reputation for its expertise in financial reorganizations and restructurings of distressed entities. The professional services performed by Weil's partners, counsel, associates, and paraprofessionals were rendered by the Restructuring, Corporate, Litigation, and Tax, Benefits, and Executive Compensation Departments, predominantly in Weil's New York, Houston, Miami, London, and Frankfurt offices.

28.     The professional services performed by Weil on behalf of the Debtors during the Compensation Period required an aggregate expenditure of approximately 31,566.70 hours by Weil's partners, counsel, associates, paraprofessionals, and non-legal staff.  Of the aggregate time expended, approximately 8,915.10 recorded hours were expended by partners and counsel of Weil, approximately 21,410.30 recorded hours were expended by associates, and approximately 1,241.30 recorded hours were expended by paraprofessionals and non-legal staff of Weil.  Of the 264 Weil attorneys who billed time, 75 billed fewer than 15 hours to this matter.  Of the 38 Weil paraprofessionals and non-legal staff who billed time, 17 billed fewer than 15 hours to this matter.

29.     During the Compensation Period, Weil billed the Debtors for time expended by attorneys based on hourly rates ranging from $695.00 to $2,850.00 per hour for attorneys.

37

Allowance of compensation in the amount requested would result in a blended hourly billing rate for Weil attorneys in this Application of approximately $1,611.62 (based on 30,325.40 recorded hours for attorneys at Weil's billing rates in effect at the time of the performance of services).

**Actual and Necessary Disbursements of Weil**

30.     As set forth in **Exhibit E** attached hereto, Weil has disbursed $372,253.96 as expenses incurred in providing professional services during the Compensation Period.  These expenses are reasonable and necessary and were essential to the overall administration of these chapter 11 cases.

31.     Although Weil has not charged the Debtors for any overtime expenses, consistent with firm policy, attorneys and other employees of Weil who worked late into the evenings or on weekends were reimbursed for their reasonable meal costs and their cost for transportation home from Weil's offices.  Weil's regular practice is not to include components of those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services. The reimbursement amounts do not exceed those set forth in the Fee Guidelines or the Bankruptcy Local Rules.

32.     With respect to photocopying expenses, in compliance with the Fee Guidelines and Bankruptcy Local Rule 2016-1, Weil charges all of its clients $0.10 per black-and-white page and $0.50 per color page.  With respect to legal research, Weil does not charge more than the actual cost.  Each of these categories of expenses does not exceed the maximum rate set by the Fee Guidelines or the Bankruptcy Local Rules.  These charges are intended to cover Weil's direct operating costs, which costs are not incorporated into Weil's hourly billing rates.  Only clients who actually use services of the types set forth in **Exhibit E** are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose

that cost upon clients who do not require extensive photocopying and other facilities and services. The amount of the standard photocopying charge is intended to allow Weil to cover the related expenses of its photocopying service. A determination of the actual expenses per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.

33. On certain occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services. These disbursements are not included in Weil's overhead for the purpose of setting billing rates.

34. Weil has made every effort to minimize its disbursements in these chapter 11 cases. The actual expenses incurred in providing professional services were those that were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors and their estates and creditors.

## Requested Compensation Should Be Allowed

35. Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. Section 330(a)(1) of the Bankruptcy Code provides that a Court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

36. The Fifth Circuit Court of Appeals has held that lower courts should consider the six factors found in section 330(a)(3) of the Bankruptcy Code when awarding compensation to professionals. *See In re Crager*, 691 F.3d 671, 676 (5th Cir. 2012). Specifically,

39

under section 330 of the Bankruptcy Code, courts "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors," including—

> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

37.    In the instant case, Weil submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the preservation and maximization of value for all stakeholders and to the orderly administration of the Debtors' estates.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

38.    The requested compensation for the foregoing services is commensurate with the complexity, importance, and nature of the issues and tasks involved.  Not only were Weil's professional services performed skillfully and efficiently, but whenever possible, Weil sought to minimize the cost of its services to the Debtors by utilizing talented junior attorneys and

paraprofessionals to handle the more routine aspects of case administration.  In addition, groups of the same Weil attorneys were utilized for similar tasks in these chapter 11 cases to minimize the costs of intra-Weil communication and education about the Debtors' circumstances.  As described above, the complexity of these cases required the use of specialists in tax, banking and finance, mergers and acquisitions, litigation, labor and employee benefits, and other areas to achieve the progress reached by the Debtors during the Compensation Period.

39.     In sum, the services rendered by Weil were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the types of issues involved in these chapter 11 cases.  Accordingly, approval of the compensation for professional services and reimbursement of expenses sought in this Application is warranted.

### Notice

40.     Notice of this Application will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

### Conclusion

41.     Weil respectfully requests that the Court (i) award interim allowance of Weil's compensation for professional services rendered to the Debtors during the Compensation Period in the amount of $49,904,278.71, consisting of $49,532,024.75 (representing 100% of fees incurred) and reimbursement of $372,253.96 (representing 100% of actual and necessary expenses incurred), and that such allowance be without prejudice to Weil's right to seek additional compensation for services performed and expenses that were incurred during the Compensation Period but not processed at the time of this Application, (ii) direct payment by the Debtors of the difference between the amounts allowed and any amounts previously paid by the Debtors, and (iii) grant such other and further relief as the Court may deem just and proper.

Dated: June 6, 2026
　　　Houston, Texas

　　　　　　　　　　　　/s/  Clifford W. Carlson
　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　Gabriel A. Morgan (24125891)
　　　　　　　　　　　　Clifford W. Carlson (24090024)
　　　　　　　　　　　　700 Louisiana Street, Suite 3700
　　　　　　　　　　　　Houston, Texas 77002
　　　　　　　　　　　　Telephone:  (713) 546-5000
　　　　　　　　　　　　Facsimile:  (713) 224-9511
　　　　　　　　　　　　Email:  gabriel.morgan@weil.com
　　　　　　　　　　　　　　　　clifford.carlson@weil.com

　　　　　　　　　　　　-and-

　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　Matthew S. Barr (admitted *pro hac vice*)
　　　　　　　　　　　　Sunny Singh (admitted *pro hac vice*)
　　　　　　　　　　　　Andriana Georgallas (admitted *pro hac vice*)
　　　　　　　　　　　　Kevin Bostel (admitted *pro hac vice*)
　　　　　　　　　　　　Jason H. George (admitted *pro hac vice*)
　　　　　　　　　　　　767 Fifth Avenue
　　　　　　　　　　　　New York, New York 10153
　　　　　　　　　　　　Telephone:  (212) 310-8000
　　　　　　　　　　　　Facsimile:  (212) 310-8007
　　　　　　　　　　　　Email:   matt.barr@weil.com
　　　　　　　　　　　　　　　　sunny.singh@weil.com
　　　　　　　　　　　　　　　　andriana.georgallas@weil.com
　　　　　　　　　　　　　　　　kevin.bostel@weil.com
　　　　　　　　　　　　　　　　jason.george@weil.com

　　　　　　　　　　　　*Attorneys for Debtors*
　　　　　　　　　　　　*and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that on June 6, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/  Clifford W. Carlson*
Clifford W. Carlson