**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re<br><br>FIRST BRANDS GROUP, LLC *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-90399 (CML)<br><br>(Jointly Administered) |

**RESERVATION OF RIGHTS OF ONSET FINANCIAL, INC. REGARDING
THE SECOND DISCLOSURE STATEMENT MOTION**

1.      Onset Financial, Inc. ("Onset"), by and through its undersigned counsel, files this reservation of rights (the "Reservation of Rights") regarding approval of the relief sought at the hearing set for June 12, 2026 at 10:00 a.m. (Central Time) to consider, among other things, entry of an order conditionally approving the Second Disclosure Statement Motion[2] as it relates to the FBG Debtors' Disclosure Statement[3] and the FBG Debtors' Plan.[4]

2.      While revised facially, the FBG Debtors' Plan suffers from the same infirmities Onset identified with respect to the single-Debtor version of the Plan:  a framework that continues to favor the DIP Lenders and other preferred constituencies at the expense of other creditors.  Even through this revised plan form, the Debtors continue to channel valuable estate claims and related

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands/. The Debtors' service address for these chapter 11 cases (the "Chapter 11 Cases") is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]    *Emergency Motion of Debtors for Entry of Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan, (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing, (III) Establishing Solicitation and Voting Procedures, (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt-In Procedures, (V) Establishing Preference Settlement Notice and Opt-In Procedures, (VI) Establishing Notice and Objection Procedures for Confirmation of Plan, and (VII) Granting Related Relief* [Dkt. No. 2914].

[3]    *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Dkt. No. 2912].

[4]    *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Dkt. No. 2907].

assets into trusts for the benefit of the DIP Lenders and selected FBG creditor constituencies, while leaving SPV creditors (including Onset) and certain creditors of the FBG Debtors (including Onset) materially prejudiced.

3.      The FBG Debtors' Plan attempts to respond to concerns that led the Court to deny conditional approval of the prior disclosure statement, but the core structural obstacles remain. The Debtors recast the plan as one for the FBG Debtors only, and the FBG Debtors' Disclosure Statement states that the FBG Debtors' Plan "does not apply to claims against or interests in the SPV Debtors."  FBG Debtors' Disclosure Statement at 1.  But that framing does not cure the prejudice to creditors like Onset, which hold claims at both SPV Debtors and FBG Debtors.  The FBG Debtors' Plan still uses trusts, credit bids, claim transfers, releases, disputed-claims reserves, and disputed-asset mechanics in ways that materially affect the economics and litigation posture of *all* of the Debtors' estates and their creditors.  The plan's latest iteration does not resolve issues that Onset and others previously identified; it merely moves the same value-transfer and trust-formation mechanics to different points in the case timeline.

4.      Accordingly, Onset identifies the following preliminary, non-exhaustive list of issues:

- <u>Administrative Expense Claims and Effective Date Construct:</u>  The FBG Debtors' Plan does not address the FBG Debtors' administrative insolvency or provide for full payment in cash of administrative expense claims as required by section 1129(a)(9) of the Bankruptcy Code.  Instead, the FBG Debtors' Plan provides for administrative expense claims to be paid on the later of the Effective Date or forty-five days after allowance, while making the Effective Date contingent on the Litigation Trust and/or DIP Collateral Trust having sufficient cash to pay or reserve for those claims.  FBG Debtors' Plan at 13, Arts. 2.1, 12.1(o).  At the same time, the Plan moves core transactions—including the Estate Claims Credit Bid Transaction, DIP Collateral Credit Bid Transaction, establishment and funding of the Litigation Trust and DIP Collateral Trust, transfer of assets to those trusts, and all other distributions and nearly actions taken under the Plan—to the Confirmation Date or shortly thereafter.  *Id.* Art. 5.3.  In fact, the only action under the FBG Debtors' Plan that occurs on the Effective Date is payment of administrative expense claims. Accordingly,  core  plan  transactions  will  occur  at  confirmation,  while  payment  of

administrative expense claims is deferred until a later "Effective Date."  It is not apparent how this construct satisfies section 1129(a)(9)(A), how administrative expense claims will be reserved and paid, or how such administrative claims will be allocated, if at all, across the FBG Debtors and the SPV Debtors, including the Carnaby Debtors.[5]  The Second Disclosure Statement Motion and the FBG Debtors' Plan do not provide for an administrative expense claims bar date or any other process to identify accrued and unpaid administrative expenses.[6]

- "Estate Claims" Definition:  Under the FBG Debtors' Plan, "Estate Claims" encompasses all claims and remedies held, or controlled by, or assertable by the FBG Debtors or their Estates (*id.* at 14), while "Litigation Trust Assets" is defined to include all Estate Claims and related rights, privileges, defenses, insurance rights, books, records, and investigative findings of the FBG Debtors (*id.* at 19).  Critically, however, the FBG Debtors' Plan is silent on how proceeds from the Adversary Proceedings against Onset and Patrick James[7]—actions brought jointly by the FBG Debtors and the Carnaby Debtors as co-plaintiffs—will be apportioned among the various plaintiffs and their respective successors in interest.  The Debtors identify the claims in the Adversary Proceedings as among the principal sources of recovery for the Litigation Trust.  FBG Debtors' Disclosure Statement

---

[5]   As described more fully in *Onset Financial, Inc's Opposition to Motion of Debtors for an Order Further Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* [Dkt. No. 2714] (the "Exclusivity Opposition"), the "Carnaby Debtors" refers to the following SPV Debtors which owe obligations to Onset:  Carnaby Inventory IV, LLC; Carnaby Inventory Holdings IV, LLC; Carnaby Capital Holdings, LLC; Carnaby Capital, LLC; Carnaby FA, LLC; Carnaby FA Holdings, LLC; and Eagle Casting Holdings, LLC. Exclusivity Opposition ¶ 13.

[6]   Onset takes particular note of these issues as it holds administrative expense claims against the FBG Debtors. Since the Petition Date, the FBG Debtors have continued to use Onset Assets (as defined in the *Stipulation and Agreed Order Regarding Adequate Protection Among Debtors and Onset Financial, Inc.* [Dkt. No. 732] (the "Onset AP Order")) pursuant to the Onset AP Order without paying the obligations owed to Onset under its agreements with the Debtors or complying with the Onset AP Order.  The Onset AP Order provides Onset with an "allowed administrative expense claim against the FBG Debtors in the amount of $7,255,264.43 for the month of October 2025 on account of Onset Equipment Assets subject to the Onset Trico Master Lease . . . ." Onset AP Order ¶ 5(A).  The Onset AP Order also provides the "applicable Carnaby Debtor . . . [an] allowed administrative expense claim[] against each FBG Debtor that benefits directly or indirectly from such use, in the amount of $4 million per month for the use of other Onset Equipment Assets . . . ." *Id.* ¶ 5(B).  Further, the Onset AP Order required the Debtors (a) to pay Onset $7,255,264.43 per month for the use of Onset Direct Equipment Assets and (b) "deposit an amount equal to $4 million representing adequate protection payments on account of the Onset Other Equipment Assets for the month of December 2025 and, on the first day of each month thereafter, an amount equal to the $4 million, in each case into a segregated account . . . in the name of Carnaby FA . . . ." *Id.* ¶ 5(A)-(B).  The Debtors have breached both of these requirements, including the failure to pay the approximately $7.2 million due to Onset in January 2026. *See Onset Financial, Inc.'s Emergency Motion (1) for Relief from the Automatic Stay, and (2) to Enforce the Onset AP Order* [Dkt. No. 2015] ¶ 17.

[7]   On November 3, 2025, the Debtors, including the Carnaby Debtors, commenced an adversary proceeding (the "Patrick James Adversary Proceeding") against Patrick James, the Debtors' founder and former Chief Executive Officer. *See First Brands Group LLC v. James*, Adv. Pro. No. 25-ap-03803 (CML) (Bankr. S.D. Tex. 2025).  On January 9, 2026, the Debtors, including the Carnaby Debtors, commenced an adversary proceeding (the "Onset Adversary Proceeding" and, together with the Patrick James Adversary Proceeding, the "Adversary Proceedings") against Onset, Edward James (the brother of Patrick James and the Debtors' former executive vice president), and certain related entities. *See First Brands Group LLC v. Onset*, Adv. Pro. No. 26-ap-03005 (CML) (Bankr. S.D. Tex. 2026).

at 6–8.  Yet neither the FBG Debtors' Plan nor any other filing addresses how the Carnaby Debtors' interest in these jointly held claims will be safeguarded; how the overlapping interests of the FBG Debtors and the SPV Debtors in the Adversary Proceedings will be separated; or how the resulting litigation proceeds will be distributed between the two groups' respective estates.

- Insurance Rights:  The FBG Debtors' Plan fails to preserve the Carnaby Debtors' interest in the Debtors' D&O insurance coverage.  The Debtors obtained one D&O insurance policy providing coverage in the form of a single aggregate tower shared by Mayfair Enterprises, LLC, and all of its subsidiaries, including the Carnaby Debtors.  *See id.* at 57–58.[8]  Under the FBG Debtors' Plan, the Litigation Trust obtains the right to recover insurance proceeds, and there is no mechanism to reserve any portion of the insurance coverage for the Carnaby Debtors' claims (the same claims that all the Debtors jointly brought).  FBG Debtors' Plan Art. 11.4(d).  The practical consequence of this arrangement is that the Litigation Trust is positioned to draw on the shared insurance pool before the Carnaby Debtors have a meaningful opportunity to access it.

- Litigation Trust Assets and Privilege Transfer:  Under the FBG Debtors' Plan, the Litigation Trust will receive the entirety of the FBG Debtors' books, records, and investigative findings—including those developed by the Examiner, his advisors, and the Creditors' Committee's advisors.  *Id.* at 19.  These materials are equally critical to the Litigation Trust's pursuit of its claims and the Carnaby Debtors' pursuit of their own independent claims and interests that depend on access to the same information.  The FBG Debtors' Plan fails to establish any procedure or safeguard to ensure that the Carnaby Debtors will be afforded access to these materials.

- Releases and Exculpation:  The FBG Debtors' Plan designates as "Released Parties" the Creditors' Committee, the Ad Hoc Group, the DIP Secured Parties, and the Prepetition Secured Parties (*id.* at 23), and designates as "Exculpated Parties" the FBG Debtors, members of the Special Committees, and the Creditors' Committee (*id.* at 15).  Fiduciaries who failed to safeguard Onset's interests should not be shielded by exculpations or releases.  Likewise, the Prepetition Secured Parties should not be granted releases in the absence of a thorough investigation by the Debtors—an investigation that, to Onset's knowledge, has not been undertaken.

- Specified Non-Released Party Designation:  The FBG Debtors' Plan designates Onset as a "Specified Non-Released Party" merely because Onset is named as a Defendant in the Onset Adversary Proceeding, with the consequences that no Estate Claims against Onset will be released.  *Id.* at 26–27.  The practical effect is to deny Onset, along with similarly situated parties, the finality and certainty that confirmation affords to other parties and creditors in these cases.  It also circumvents the Bankruptcy Code's claims reconciliation

---

[8]  *See also Motion for Entry of an Order (I) Authorizing, and, to the Extent Necessary Modifying the Automatic Stay to Allow the Use of Proceeds of Directors and Officers Liability Insurance Policies Issued to Non-Debtor Mayfair Enterprises, LLC for Insureds' Defense Costs or, in the Alternative (II) Confirming That Advancement of Defense Costs and Providing Notice in Accordance with Directors and Officers Liability Insurance Policies Does Not Violate the Automatic Stay* [Dkt. No. 798] ¶ 12.

and allowance process by deeming any and all claims asserted by any of the Specified Non-Released Parties as disputed. *Id.* at 13.

- Setoff Rights: Under the FBG Debtors' Plan, a holder of a Claim may not set off such Claim against any of the FBG Debtors' claims, rights or Causes of Action unless the FBG Debtors or the Claims Ombudsman have consented, or the holder has filed a setoff motion on or before the Confirmation Date. *Id.* Art. 9.11. The FBG Debtors' Plan's injunction provisions impose additional constraints, restricting setoff to instances in which it was timely raised in a filed proof of Claim, in a document explicitly preserving setoff, or arises under a postpetition agreement or assumed executory contract. *Id.* Art 13.4. These restrictions lack any legitimate justification, and the FBG Debtors' Plan should preserve Onset's setoff rights in full, without condition, as against any claims asserted by the FBG Debtors.

- Ambiguous and Prejudicial "Marketing Process": The FBG Debtors are conducting a marketing and sale process for the Estate Claims, yet the process permits the Debtors, in their sole discretion to adjourn, modify, or cancel the marketing process; to deny diligence materials to defendants named or to be named in the Adversary Proceedings—including Onset; and to supplement or modify the Qualified Bid requirements. *See* FBG Debtors' Disclosure Statement at 33–34. At the very least, Onset should be able to receive diligence related to the claims where Onset is not named as a defendant. The resulting process is exclusionary to Onset, ambiguous, and highly prejudicial—controlled exclusively by the Debtors, the DIP Lenders, and the Creditors' Committee—and is plainly not structured to maximize the value of the Debtors' estates.

5. Onset also reserves its rights to (i) raise any and all additional issues or objections that may be identified upon further review of the FBG Debtors' Plan, the Plan Supplement, the FBG Debtors' Disclosure Statement, the Second Disclosure Statement Motion, and related documents; (ii) object to approval of the FBG Debtors' Disclosure Statement and confirmation of the FBG Debtors' Plan; (iii) assert interests in Onset's assets; (iv) seek termination of exclusivity and file a chapter 11 plan for the Carnaby Debtors; (v) seek discovery; (vi) amend or supplement this Reservation of Rights on any and all bases; and (vii) present argument at the June 12, 2026 hearing, as necessary.

6. Nothing in this Reservation of Rights constitutes an admission as to the validity of any claim against Onset or a waiver of any of Onset's rights, remedies, claims, or defenses under the Bankruptcy Code or any other applicable law.

5

Dated:  June 11, 2026
        Houston, Texas

**MUNSCH HARDT KOPF & HARR, PC**

*/s/ Deborah M. Perry*
Deborah M. Perry
Texas Bar No. 24002755
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile:  (214) 855-7584
Email: dperry@munsch.com

-and-

**MORRISON & FOERSTER LLP**
Carrie H. Cohen (admitted *pro hac vice*)
James Newton (admitted *pro hac vice*)
Ben Butterfield (admitted *pro hac vice*)
Bryan Kotliar (admitted *pro hac vice*)
250 West 55th Street
New York, NY 10019
Email: ccohen@mofo.com
Email: jnewton@mofo.com
Email: bbutterfield@mofo.com
Email: bkotliar@mofo.com

-and-

**MORRISON & FOERSTER LLP**
Anthony S. Fiotto (admitted *pro hac vice*)
Julia C. Koch (admitted *pro hac vice*)
200 Clarendon Street
Boston, MA 02116
Email: afiotto@mofo.com
Email: jkoch@mofo.com

-and-

**MORRISON & FOERSTER LLP**
Brian R. Michael (admitted *pro hac vice*)
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Email: bmichael@mofo.com

-and-

**MILBANK LLP**
Dennis F. Dunne (*pro hac vice* granted)
Lisa Laukitis (*pro hac vice* granted
Jason Kestecher (*pro hac vice* granted)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530 5858
Facsimile:  (212) 530-5219
Email: ddunne@milbank.com
Email: llaukitis@milbank.com
Email: jkestecher@milbank.com

-and-

**MILBANK LLP**
Andrew M. Leblanc (*pro hac vice* granted)
Erin E. Dexter (*pro hac vice* granted)
1101 New York Avenue NW,
Washington, DC 20005
Telephone: (202) 835-7500
Facsimile:  (202) 263-7586
Email: aleblanc@milbank.com
Email: edexter@milbank.com

*Attorneys for Onset Financial, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of the foregoing was filed on this 11th day of June 2026, with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

<u>/s/ *Deborah M. Perry*</u>
Deborah M. Perry