**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § § | **Case No. 25-90399 (CML)** |
| **Debtors.**[*] | § § § | **(Jointly Administered)** |

**LAM PARTIES' PROTECTIVE OBJECTION AND RESERVATION OF RIGHTS**
**REGARDING CONDITIONAL APPROVAL OF DISCLOSURE STATEMENT,**
**SOLICITATION AND VOTING PROCEDURES**

Leucadia Asset Management LLC, acting through its Point Bonita Capital Division,

LAM Trade Finance Group LLC, and LAM TFG I SPV LLC (collectively, the "**LAM Parties**"),

respectfully submit this protective objection and reservation of rights in response to the

*Emergency Motion of Debtors for Entry of Order (I) Scheduling Combined Hearing on*

*(A) Adequacy of Disclosure Statement and (B) Confirmation of Plan, (II) Conditionally*

*Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure*

*Statement Hearing; (III) Establishing Solicitation and Voting Procedures, (IV) Establishing*

*Administrative Expense Claims Consent Program Notice and Opt-In Procedures,*

*(V) Establishing Preference Settlement Notice and Opt In Procedures, (VI) Establishing Notice*

*and Objection Procedures for Confirmation of Plan, and (VII) Granting Related Relief*

[Dkt. 2914] (the "**Motion**"),[1] and respectfully state as follows.

---

[*] A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these Chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[1] Capitalized terms not otherwise defined have the same meanings as in the Motion.

**Introduction**

1.      The Amended Plan (Dkt. 2907) no longer proposes to use a plan for one debtor to resolve dozens of Chapter 11 cases.  But despite the change in form, in critical ways the Amended Plan remains a one-debtor plan.  For various substantive purposes—including classification, voting, and distribution—the estates are being consolidated into one, such that creditors will be treated as having only one claim against the consolidated enterprise.

2.      At the same time, even as the estates are consolidated for some purposes, the Amended Plan seeks to retain the benefits of the Debtors' separate entity structure for other purposes.  In particular, outside the context of the "Preference Settlement"—which allows eligible creditors to aggregate "new value" provided to *any* First Brands Debtor in defending against preference claims—creditors are not necessarily entitled to consolidate the estates in defending causes of action.  Moreover, whether a creditor is eligible for the "Preference Settlement" turns, at least in part, on whether the creditor engaged in "Adverse Conduct," a non-statutory concept with a vague and open-ended definition.

3.      The LAM Parties have engaged in constructive discussions with the Debtors to resolve *disclosure-related* aspects of their objection that would prevent approval of the Disclosure Statement on even a conditional basis.  Among other things, the LAM Parties understand the Debtors have agreed to include additional language in Section 6.2(b) of the Plan, and in the Disclosure Statement, to clarify their intent regarding the effect (or non-effect) of substantive consolidation for certain purposes on creditors' defenses to avoidance claims or other causes of action.  Although the changes made to the Plan and Disclosure Statement (assuming they are finalized and included) add clarity to the Debtors' position, they do not resolve the LAM Parties' concerns about and objections to the underlying Plan, including objections based on the

Debtors' attempt to consolidate their estates for certain purposes and not others.  Those objections and others are fully reserved for the confirmation hearing.

### Protective Objection and Reservation of Rights[2]

4.　　The LAM Parties, as significant creditors that hold nearly $1 billion of claims, have various substantive concerns about the Plan.  The LAM Parties are prepared to engage with the Debtors prior to confirmation to seek to resolve those concerns or otherwise to object to the Plan.  This filing does not attempt to preview all of the LAM Parties' potential objections to the Plan.  Instead, the purpose of this filing is to identify remaining disclosure-related objections that the LAM Parties hope and expect will be resolved in advance of the hearing on conditional approval.

### A.　　Further disclosure is needed regarding substantive consolidation.

5.　　The Amended Plan is premised on the Debtors' position that it is appropriate, for purposes of classification, voting, and distribution, to substantively consolidate the Debtors.  The Disclosure Statement states:

> Solely for purposes of voting and distributions under the Plan: (i) each Claim filed or to be filed against any FBG Debtor shall be deemed filed as a single Claim against, and a single obligation of, the FBG Debtors; (ii) any Claims on account of a guarantee provided by an FBG Debtor of the obligations of another FBG Debtor shall be treated as eliminated so that any Claim against any FBG Debtor and any Claim based upon a guarantee thereof by any other FBG Debtor shall be treated as one Claim against a single consolidated Estate; and (iii) any joint or joint and several liability of any of the FBG Debtors shall be one obligation of the FBG Debtors and any Claims based upon such joint or joint and several liability shall be treated as one Claim against a single consolidated Estate.

> Disclosure Statement § 5.2(k).

---

[2] In the interest of efficiency and to avoid repetition, the LAM Parties incorporate by reference the Background section of their objection to the prior version of the Disclosure Statement.  *See* Dkt. 2705.

6.      Accordingly, the Disclosure Statement is now clear that the estates are being substantively consolidated for voting, classification, and distribution purposes.

7.      At the same time, however, Section 6.2(b) of the Plan states that "[a]ll Causes of Action, claims, rights, and interests transferred, assigned, or otherwise conveyed to the Litigation Trust from each FBG Debtor's Estate or Preference Settlement Electing Creditor, as applicable, **shall remain separate and distinct** from the Causes of Action, claims, rights, and interests transferred from the Estates of any other FBG Debtor or Preference Settlement Electing Creditor, as applicable." Plan § 6.2(b) (emphasis added).

8.      In other words, while the Debtors are advocating for substantive consolidation for certain purposes, they want to avoid substantive consolidation in connection with Causes of Action the estates may bring. Indeed, Section 6.2(b) goes out of its way to state that "[t]he consolidation of Causes of Action within the Litigation Trust *shall not entitle* any defendant, counterparty, or other party against whom a Cause of Action is asserted by the Litigation Trust to assert, as a defense, setoff, recoupment, counterclaim, or reduction of any kind, any claim, defense, or right arising from or relating to such party's dealings, transactions, or relationships with any FBG Debtor or Preference Settlement Electing Creditor, as applicable, other than the specific FBG Debtor or Preference Settlement Electing Creditor, as applicable, who or whose Estate originally held the Cause of Action being prosecuted." *Id.* (emphasis added).

9.      The Court will need to determine, at the confirmation hearing, whether "selective substantive consolidation," of the kind apparently being proposed, is legally defensible.[3] At this

---

[3] *See generally In re Owens Corning*, 419 F.3d 195, 216 (3d Cir. 2005) (Ambro, J.) ("[T]he flaw most fatal to the Plan Proponents' proposal is that the consolidation sought was 'deemed' (*i.e.*, a pretend consolidation for all but the [disfavored creditors]). . . . [T]he Plan Proponents seek to remake substantive consolidation not as a remedy, but rather a stratagem to . . . strip the [disfavored creditors] of rights under the Bankruptcy Code, favor other creditors, and yet trump

stage, however, the LAM Parties believe they have reached agreement with the Debtors on additional language, for the Plan and the Disclosure Statement, that will at least clarify the Debtors' intent. The additional language, which will be added to Section 6.2(b) of the Plan, would provide that—even if the consolidation of causes of action does not itself provide defenses based on substantive consolidation, veil piercing or the like—it also does not *cut off* such defenses, and that anyone sued by the Debtors' estates would fully reserve the right to assert any and all defenses relating to consolidation and lack of corporate separateness.

10.     As noted, the proposed amendment to the Plan, and related disclosure, does not resolve the LAM Parties' objection to consolidating the Debtors' estates for certain substantive purposes but not others. The new language, however, does clarify the intent of the Plan so that the LAM Parties are better positioned to evaluate the Plan and object to the extent a consensual resolution cannot be reached.

**B.     Other confirmation issues remain unresolved, even if they have been resolved for purposes of conditional approval of the Disclosure Statement.**

11.     A significant focus of the objections to the previous Plan involved the definition of "Adverse Conduct" and the manner in which that definition flowed through the Plan. In the original version of the Plan, there was a distinction between "Eligible Creditors" and "Ineligible Creditors" based on the "Adverse Conduct" definition. The Debtors subsequently amended the Plan so that "Adverse Conduct" did not affect claim allowance, even though, as the Debtors acknowledge, it still flows into the so-called "Preference Settlement."

---

possible Plan objections . . . ."); *In re Babcock & Wilcox Co.*, 250 F.3d 955, 958-59 & n.5 (5th Cir. 2001) ("extinguish[ing] inter-debtor claims," "combin[ing] each debtor's creditors for purposes of voting on a reorganization plan," "pooling the assets of, and claims against, the [debtors]," and "satisfying liabilities from the resultant common fund" are hallmarks of substantive consolidation).

12.     The incorporation of the "Adverse Conduct" definition into the Preference

Settlement is an issue that will need to be addressed at confirmation, because it means that

eligibility for the settlement—which allows participating creditors to aggregate debtor entities

for purposes of Section 547(c)(4)'s "new value" defense, Plan § 6.11—turns on a non-statutory

definition that, despite having no apparent legal foundation, is being used as a basis to treat

similarly-situated creditors differently.[4]  That definition raises an array of questions and, since it

does not come from the Bankruptcy Code, there is no case law or history of interpretation

available to answer those questions.

13.     The "Adverse Conduct" issue goes beyond the Preference Settlement, because

that definition finds its way into various other Plan provisions.  For example, persons who meet

the definition of "Adverse Conduct" automatically become "Specified Non-Released Parties."

Plan at 26.  There are multiple consequences of being a "Specified Non-Released Party."

Among others, claims asserted by "Specified Non-Released Parties" are automatically

"Disputed."  Plan at 13.  The Disclosure Statement also warns that a "Holder of a General

Unsecured Claim who is a Specified Non-Released Party may have their claim reclassified as a

Subordinated Claim in Class 8."  Disclosure Statement at 21.

14.     In sum, while the plan proponents have addressed some issues raised by the non-

statutory "Adverse Conduct" definition, the concept is still very much in the Plan, and it remains

---

[4]  "Adverse Conduct" is defined to mean persons that "(i) engaged in wrongful, actual, or
constructively fraudulent conduct against any Debtor or Affiliate of any Debtor, or otherwise
participated, conspired with, or acted in concert with, any Person that engaged in wrongful,
actual or constructively fraudulent conduct against any Debtors, creditors, or lenders of the
Debtors (or Affiliates of Debtors), (ii) received an avoidable transfer on grounds other than
section 547 of the Bankruptcy Code from any of the Debtors, or (iii) received a transfer not in
good faith."  Plan at 4.

objectionable.  The LAM Parties will reserve and present those objections at confirmation, absent consensual resolution.

15. The LAM Parties will also reserve and present other objections, including their objection to Section 9.11(b) of the new Plan, which purports to require entities with potential rights of setoff against the Debtors to file a motion before the "Confirmation Date" or lose their rights.  Section 9.11(b) previously applied only to claims against Premier Marketing Group, but now appears to apply to claims against *all* FBG Debtors.  The LAM Parties have conveyed that there is no basis for requiring entities with setoff rights to be forced to make a motion by confirmation, especially because the right of setoff may not even be apparent until the estate asserts claims as to which the setoff or similar right may exist.

*          *          *

16. As explained, the LAM Parties understand that the Debtors are making certain amendments to the Disclosure Statement and the Plan to resolve remaining objections to conditional approval of the Disclosure Statement.  The LAM Parties reserve all objections to final approval of the Disclosure Statement and to the Plan itself, including objections referenced in this filing.

-8-

Dated:  June 11, 2026
Houston, Texas

/s/ Paul E. Heath

**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Matthew D. Struble (TX 24102544)
845 Texas Avenue, Suite 4700
Houston, TX  77002
Tel.:  713.758.2222
Email: pheath@velaw.com
         mstruble@velaw.com

**WACHTELL, LIPTON, ROSEN & KATZ**
Emil A. Kleinhaus (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
Angela K. Herring (admitted *pro hac vice*)
51 West 52nd Street
New York, NY  10019
Tel.:  212.403.1000
Email: eakleinhaus@wlrk.com
         mhcassel@wlrk.com
         akherring@wlrk.com

***COUNSEL TO THE LAM PARTIES***

-9-

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Kiran Vakamudi*
One of Counsel