**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FIRST BRANDS GROUP, LLC, *et al.*, | ) Case No. 25-90399 (CML) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

**EVOLUTION'S OBJECTION AND RESERVATION OF RIGHTS**
**REGARDING THE SECOND CONDITIONAL DISCLOSURE STATEMENT MOTION**

Evolution hereby submits this objection and reservation of rights (this "Objection") in response to the *Emergency Motion of Debtors for Entry of Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt In Procedures; (V) Establishing Preference Settlement Notice and Opt-In Procedures; (VI) Establishing Notice and Objection Procedures for Confirmation of Plan; and (VII) Granting Related Relief* [Docket No. 2914] (the "Conditional DS Motion"),[2] and respectfully states as follows:

1.     The FBG Debtors' Disclosure Statement is deficient, as it fails to provide a "hypothetical investor" with the information it needs to "make an informed judgment about" whether to vote for the revised Plan, for at least two reasons.  *See* 11 U.S.C. § 1125; *Westland Oil Dev. v. MCorp Mgmt. Sols., Inc.*, 157 B.R. 100, 102 (Bankr. S.D. Tex. 1993).

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] "Evolution" means, collectively, Evolution Credit Opportunity Master Fund II-B, L.P., Evolution Credit Partners Trade Finance Master, L.P. (as successor in interest to Evolution Credit Partners Trade Finance L.P.), Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution affiliated funds.

4919-6431-4292

2. *First*, the Disclosure Statement and the Plan condition participation in the Preference Settlement on whether the creditor in question has engaged in "Adverse Conduct." But Adverse Conduct is vaguely defined, leaving parties (like Evolution) in the dark about whether they can participate in the Preference Settlement or will instead be barred from participation because of unspecified "Adverse Conduct."

3. *Second*, the Disclosure Statement and Plan do not identify the assets that will be reserved for trusts for the DIP and ABL Lenders, free and clear of other liens. This, too, leaves parties (like Evolution) in the dark as to whether they are being asked to vote to give away assets in which they assert an interest.

4. The Plan and Disclosure Statement cover over 300 pages, with material changes from prior iterations, including new revisions filed this morning. Evolution is still reviewing these filings and reserves all rights to object to the current version of the proposed plan [Docket No. 2981] (the "Plan") and any revisions thereto, as well as to supplement its objections to the FBG Debtors' disclosure statement [Docket No. 2982] (the "Disclosure Statement") and any revisions thereto.

I. **The Disclosure Statement Impermissibly Conditions Participation in the Preference Settlement on Undefined "Adverse Conduct"**

5. The Plan's Preference Settlement prevents participation by creditors who "meet the definition of Adverse Conduct, as determined by a Final Order." Disclosure Statement at 3, 79. But the Disclosure Statement does not explain what constitutes "Adverse Conduct." As a result, creditors cannot make an informed judgment about whether the Preference Settlement provides any actual value.

6. The Plan offers no help either. It defines "Adverse Conduct" to include creditors that "(i) engaged in wrongful, actual, or constructively fraudulent conduct against any Debtor or Affiliate of any Debtor, or otherwise participated, conspired with, or acted in concert with, any Person that engaged in wrongful, actual or constructively fraudulent conduct against any Debtors, creditors, or lenders of the Debtors (or Affiliates of Debtors), (ii) received an avoidable transfer on

grounds other than section 547 of the Bankruptcy Code from any of the Debtors, or (iii) received a transfer not in good faith." Plan at 4.

7. The definition of "Adverse Conduct" leaves open critical issues. What constitutes "wrongful" conduct? What does it mean to have "otherwise participated" with "any Debtor or any Affiliate of any Debtor"? Is there any intent or other mental-state requirement? Neither the Disclosure Statement nor the Plan provides an answer.

8. Because of this ambiguity in the definition of "Adverse Conduct," the Disclosure Statement does not give creditors information they need to assess the benefits of the proposed Preference Settlement. Under Section 13.5(b), any creditor who opts into the Preference Settlement contributes any direct claims it has to the Litigation Trust. Disclosure Statement at 33. But if a creditor is later deemed to have engaged in Adverse Conduct, it is disqualified from receiving any benefit from the Preference Settlement—but it does not get back the claims it contributed to the Trust. The Disclosure Statement must make clear whether creditors are at risk of being disqualified from participation in the Preference Settlement and why, before creditors are required to vote on the Plan. Creditors should not have to guess.

## II. The Disclosure Statement Conceals What Collateral Will Be Transferred to the ABL and DIP Trusts

9. The Disclosure Statement should be rejected for a second reason: it is not clear which assets the Debtors propose to hand over to their ABL and DIP Lenders.

10. The Plan contemplates a DIP Collateral Trust and an ABL Collateral Trust, through which the vast majority of the Debtors' assets will be funneled just to the DIP and ABL Lenders. The Debtors indicate in their Disclosure Statement that they will identify the "DIP Collateral Trust Assets" and "ABL Collateral Trust Assets" in "schedule[s] annexed to" the respective Trust Agreements for the ABL and DIP Collateral Trusts, respectively. Disclosure Statement at 14, 17. But the Disclosure Statement, when listing documents it will file with the Plan Supplement, does not include the Trust Agreements and schedules. *See* Disclosure Statement at 18. If these Trust Agreements and schedules are, in fact, to be filed with the Plan Supplement, the Disclosure

3

4919-6431-4292

Statement should reflect this and creditors or other parties in interest should be given an opportunity to object to the transfer of assets to those trusts.

11.     Creditors must know what assets are being transferred free and clear to the DIP Collateral Trust and the ABL Collateral Trust before they vote on the Plan. A creditor should not be left to guess whether assets in which it claims an interest are being transferred away and its interest extinguished. Ownership of, and the extent of interests in, assets is, and has been, a hotly contested issue in this case, if not front-and-center. As a result, any disposition of assets and the treatment of any interests therein—whether disputed or not—should be fully described.

12.     The Plan and Disclosure Statement attempt to carve out certain property from the DIP and ABL Trust Collateral Assets, but it does that indeterminately as well. The Disclosure Statement states that the DIP and ABL Collateral Trusts "will not include any assets that are determined by Final Order to be (a) property of the SPV Debtors or their Estates, any of the Factors, or any of the SPV Lenders, or (b) subject to a validly perfected first-priority Lien asserted by a Factor [or] the SPV Lenders." Disclosure Statement at 14, 17; *see also* Plan at 1-2, 11. But the Disclosure Statement does not state whether such assets can be transferred **before** a Final Order, nor does it state what happens to that property pending any dispute over it. This omission is particularly notable because in the relevant Plan provisions, the Plan expressly excludes assets from each Trust if there is a "bona fide dispute" as to lien priority as between "DIP Secured Parties, the First Lien Secured Parties, or the Second Lien Term Loan Secured Parties." Plan at 1-2, 11. The Debtors know how to exclude disputed assets but appear not to have done so for the SPV Lenders or the Factors. Again, creditors should not be left to guess while voting on the Plan.

13.     For the foregoing reasons, Evolution respectfully requests that the Court deny the Debtors' Motion. Evolution reserves all rights to make further objections to the Debtors' Plans and Disclosure Statements.

4919-6431-4292

Respectfully submitted this 12th day of June, 2026,

**GRAY REED**

By: */s/ Jason S. Brookner*
      Jason S. Brookner
      Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:    (713) 986-7000
Facsimile:    (713) 986-7100
Email:      jbrookner@grayreed.com

- and -

**ELSBERG BAKER & MARURI PLLC**
      Michael Duke (admitted *pro hac vice*)
      David Elsberg (admitted *pro hac vice*)
      Vivek Tata (admitted *pro hac vice*)
      Garrett Gerber (admitted *pro hac vice*)
      Andrew Parks (admitted *pro hac vice*)
      Ella Epstein (admitted *pro hac vice*)
350 Fifth Avenue, 38th Floor
New York, NY 10018
Telephone:    (212) 597-2600
Email:      mduke@elsberglaw.com
            delsberg@elsberglaw.com
            vtata@elsberglaw.com
            ggerber@elsberglaw.com
            aparks@elsberglaw.com
            eepstein@elsberglaw.com

*Counsel to Evolution*

## Certificate of Service

The undersigned hereby certifies that on the 12th day of June 2026, he caused a true and correct copy of the foregoing document by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

     */s/ Jason S. Brookner*
     Jason S. Brookner

5

4919-6431-4292