United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 12, 2026

Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FIRST BRANDS GROUP, LLC, *et al.*,[1] | ) | Case No. 25-90399 (CML) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | Re: Docket No. 2766 |

**ORDER APPROVING SETTLEMENT**
**BETWEEN GLOBAL ASSETS GMBH AND THE UMB AGENT**

Upon consideration of *Global Assets Germany GmbH's Motion for Approval of Settlement with UMB Bank, N.A. Pursuant To Federal Rule of Bankruptcy Procedure 9019* [Docket No. 2766] (the "**Motion**")[2], seeking approval of the settlement (the "**Settlement**"), attached hereto as **Exhibit 1**, by and between Global Assets Germany, on the one hand, and the UMB Agent, on the other hand; and the Court having reviewed the Motion and the evidence submitted in support thereof; and any objections to the Motion having been withdrawn, resolved, or overruled; and the Court having heard the statements of counsel and the evidence presented at any hearing on the Motion; and the Court having determined the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

---

[1]     A complete list of the debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court may enter a final order consistent with Article III of the United States Constitution.

C.      Venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Proper, sufficient, and adequate notice of the Motion and the hearing on the Motion have been given in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the orders entered in these chapter 11 cases, and no other or further notice is necessary.

E.      The Settlement is reasonable and appropriate under the circumstances, and Global Assets Germany has demonstrated both (i) good, sufficient, and sound business purposes and justification for the Settlement and the transactions and compromises provided therein, and (ii) compelling circumstances for approval of the Settlement pursuant to Bankruptcy Rule 9019.

F.      The Settlement was negotiated in good faith, at arm's length, and without collusion by sophisticated parties represented by competent counsel.

G.      Based upon the evidence and arguments, this Court has weighed the probability of success in litigation, the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending to it. This Court has also taken into account the paramount interest of creditors and, based on all of the foregoing, has determined that the relief requested in the Motion is fair and equitable, in the best interests of creditors, and should be approved in all respects.

**NOW, THEREFORE, IT IS HEREBY ORDERED, DETERMINED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      The Settlement is approved in all respects pursuant to Bankruptcy Rule 9019 and shall be effective and enforceable immediately upon entry of this Order.  Without limitation, the Debtors are authorized to assign the Inventory under the terms set forth in the Settlement.

3.      From and after entry of this Order, the automatic stay imposed under section 362 of the Bankruptcy Code is and shall be deemed to be modified with respect to all Debtors to effectuate all of the terms of the Settlement and this Order.

4.      From and after entry of this Order, the UMB Pleadings are and shall be deemed to be withdrawn.

5.      This Court retains jurisdiction with respect to all matters arising from or related to the Settlement or Order.

Signed:  June 12, 2026

_____
Christopher Lopez
United States Bankruptcy Judge

**Exhibit 1**

Settlement

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is made and entered into as of [___], by and between Global Assets GmbH ("**Global Assets Germany**") and **UMB Bank, N.A.**, in its capacity as administrative agent and collateral agent for and on behalf of the lenders party thereto (the "**UMB Lenders**"; UMB Bank in such capacity, the "**UMB Agent**", and together with the UMB Lenders, the "**UMB Parties**") under the Credit Agreement (as defined below).  Global Assets Germany and the UMB Agent are referred to herein as the "**Parties**" and individually as a "**Party**."

WHEREAS, Global Assets Germany was formed as a special purpose entity with the primary purpose of buying inventory from Ultinon Motion Germany GmbH (f/k/a Lumileds Germany GmbH) and Ultinon Motion Delaware LLC (f/k/a Lumileds Delaware LLC) (the foregoing collectively, "**Ultinon**") and financing that inventory pursuant to a revolving credit facility dated as of December 2, 2024 (as amended, amended and restated, restated, supplemented, modified or otherwise in effect from time to time, the "**Credit Agreement**") between Global Assets Germany and Global Assets LLC ("**Global Assets US**", and together with Global Assets Germany, the "**Global Assets SPEs**"), as borrowers, Carnaby Capital Holdings, LLC ("**Carnaby Holdings**"), as a loan party, First Brands Group LLC ("**First Brands**"), as servicer, the UMB Lenders, and the UMB Agent;

WHEREAS, pursuant to the Credit Agreement, the UMB Lenders extended a revolving credit facility to the Global Assets SPEs in an aggregate maximum principal amount of $45,000,000;

WHEREAS, the Credit Agreement contemplates the Global Assets SPEs' sale of inventory, including the Inventory (as defined below) to Ultinon or one of Ultinon's affiliates in exchange for (i) cash remitted to the Global Assets SPEs' collection account or (ii) replacement Eligible Inventory (as defined in the Credit Agreement) of equal or greater value;

WHEREAS, in connection with such purchase and sale of inventory, as described above, (i) Global Assets Germany and Global Assets US each entered into certain purchase agreements with Ultinon (the "**Purchase Agreements**"), and (ii) First Brands, Global Assets Germany and Global Assets US each entered into certain sale agreements with Ultinon (the "**Sale Agreements**", and together with the Purchase Agreement, the "**Purchase and Sale Agreements**");

WHEREAS, pursuant to the Credit Agreement, Carnaby Holdings provided certain guaranty obligations in favor of the UMB Agent (the "**Guaranty**");

WHEREAS, on September 24 and 28, 2025, the Global Assets SPEs filed voluntary petitions under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") jointly administered with First Brands Group (jointly administered under Case No. 25-90399 (CML) (the "**Bankruptcy Cases**" and the debtors therein as of the date hereof, the "**Debtors**");

WHEREAS, (i) on October 1, 2025, UMB Agent filed the *Joinder to Aequum Capital Financial II LLC's Limited Objection and Reservation of Rights to the Debtors' DIP Motion*

[Docket No. 149][3] (the "**UMB Joinder**"); (ii) on October 31, 2025, UMB Agent filed the *Emergency Motion to Enforce Stipulation and Agreed Order Regarding Adequate Protection* [Docket No. 486] (the "**UMB Adequate Protection Motion**", and such stipulation [Docket No. 213], the "**Adequate Protection Stipulation**"); (iii) on November 21, 2025, UMB Agent filed the *Motion for Entry of an Order Granting Relief from the Automatic Stay* [Docket No. 759] (the "**UMB Stay Relief Motion**")*;* and (iv) on November 21, 2025, UMB Agent filed the *Motion for Entry of an Order Appointing a Chapter 11 Trustee* [Docket No. 760] (the "**UMB Trustee Motion**") (the foregoing (i) through (iv), collectively, the "**UMB Pleadings**");

WHEREAS, during the Bankruptcy Cases, in interim resolution of certain UMB Pleadings, Weil, Gotshal & Manges ("**Weil**"), counsel to First Brands Group, LLC and its subsidiaries, including the Global Assets SPEs, and then-counsel to Ultinon, agreed with the UMB Agent to extend the Adequate Protection Stipulation, as modified, and generally maintain the status quo relationship under the Purchase and Sale Agreements, as more fully described on the record at a hearing in the Bankruptcy Cases on November 6, 2025 (the "**Ultinon Status Quo Agreement**");

WHEREAS, on December 7, 2025, Simpson Thacher & Bartlett LLP ("**STB**" and, together with Weil, Alvarez and Marsal North America LLC, and Lazard Frères & Co. LLC (each in their capacity as advisor to the Debtors) the "**Advisors**") was retained to advise and represent Viceroy Private Capital, LLC ("**Viceroy**") and its direct and indirect subsidiaries (collectively, the "**SPV Entities**"), including the Global Assets SPEs, with Benjamin Duster as the sole member of the subcommittee (the "**Subcommittee**") of the special committee of the board of managers of Viceroy (the "**Special Committee**");

WHEREAS, the Special Committee has delegated authority to the Subcommittee to oversee and take certain actions with respect to any transaction, agreement or arrangement in which a conflict exists or is reasonably likely to exist between any SPV Entity, on the one hand, and First Brands Group Holdings, LLC and/or its direct and indirect subsidiaries (excluding the SPV Entities) on the other hand, including approval of this Agreement on behalf of Global Assets Germany.

WHEREAS, in resolution of the UMB Pleadings, and for good and valuable consideration as set forth herein, the Parties agree as follows:

1.      <u>Incorporation</u>.  The Recitals hereto are incorporated into this Agreement.

2.      <u>Definitions</u>. Unless otherwise defined herein, each capitalized term used herein shall have the meaning ascribed thereto in the Credit Agreement.

3.      <u>Bankruptcy Court Approval Required</u>.  This Agreement is subject to the approval of the Bankruptcy Court as evidenced by entry of a written order satisfactory to the Parties (the "**Settlement Order**").

---

[3] All docket references relate to the docket of Case No. 25-90399 (Bankr. S.D. Tex).

4.      <u>Effective Date</u>. The terms of this Agreement shall become effective immediately upon entry of the Settlement Order (the "**Effective Date**").

5.      <u>Assignment of Inventory</u>.

a.      Global Assets Germany hereby agrees to assign to the UMB Agent on the Effective Date all of Global Assets Germany's rights, title, and interests in, and to, all inventory and assets that were sold to Global Assets Germany pursuant to the Purchase and Sale Agreements and pledged to the UMB Agent as collateral under the Credit Agreement, to the extent of Global Assets Germany's right, title and interests in such inventory and assets, including any such inventory located at: (i) Philipsstrasse 8, 52068, Aachen, Germany, (ii) a 66/72 Partyzancka Street, 95-200, Pabianice, Poland, and (iii) 50, Lutomierska Street, 95-200 Pabianice, Poland, together with all of its related rights, claims, and interests including under the Purchase and Sale Agreements, the Adequate Protection Stipulation, and the Ultinon Status Quo Agreement (the foregoing and all of Global Assets Germany's rights, title, and interests in, and to, the foregoing, collectively, the "**Inventory**").

b.      To the extent any Inventory is in the possession of a third party, Global Assets Germany shall give instructions to such third party to deliver all such items of Inventory to the UMB Agent and take instructions from the UMB Agent with respect to such Inventory.

c.      In the event any Debtor receives any Inventory, or proceeds thereof, after the occurrence of the Effective Date, the Debtors may and, to the extent Global Assets Germany has possession of or control over such Inventory or proceeds thereof, Global Assets Germany shall, use commercially reasonable efforts to remit the same to the UMB Agent.

d.      If and after any Inventory is surrendered and assigned to the UMB Agent in accordance with the terms of this Agreement, the net proceeds from any sale, disposition or settlement of any claims with respect to the sale or disposition, in each case, of the Inventory (after payment of any taxes, reasonable and documented costs or expenses, including reasonable and documented attorney fees and expenses, incurred directly in connection with such sale, disposition or settlement) ("**Net Proceeds**") shall, after expiration of the Quarterly Review Period (defined below) and resolution of any objection made during the Quarterly Review Period by either (x) a final order of the Bankruptcy Court or (y) the written agreement of the applicable objecting party and the UMB Agent, be applied on a dollar-for-dollar basis to the indefeasible payment to the UMB Parties of the Obligations (as defined in the Credit Agreement) in accordance with the Credit Agreement in reduction of the UMB Parties' claims thereunder, and the UMB Agent, on behalf of the UMB Parties, shall then remit any remaining, excess amounts received in respect of the Inventory to Global Assets Germany. The UMB Agent shall provide a realization report to the Debtors every Quarterly Period (as defined herein).

e.      Every three months following entry of the Settlement Order (each, a "**Quarterly Period**") the UMB Agent shall provide notice (the "**Quarterly Notice**") to (i) Global Assets Germany via Weil and STB (or, upon conversion of the Bankruptcy Case of Global Assets Germany to a case under chapter 7, any chapter 7 trustee appointed in such case), (ii) the Ad Hoc Group via Gibson Dunn, (iii) the ABL Agent via Norton Rose Fulbright, and (iv)

3

any other party in interest in the Bankruptcy Case of Global Assets Germany that requests in writing such notice from the UMB Agent no later than twenty-one (21) days prior to the end of any Quarterly Period, of any Net Proceeds received during the Quarterly Period. To the extent any party provides written notice to counsel for the Parties of its objection and the basis therefore to any Quarterly Notice or to the distribution of Net Proceeds to Obligations as set forth above, within twenty-one (21) days following the provision of such Quarterly Notice (the "**Quarterly Review Period**"), there shall be no application of the disputed portion of such Net Proceeds until the objection is resolved (provided that with the written consent of the applicable objecting party, any portion of such Net Proceeds that the applicable objecting party and the UMB Agent agree is undisputed may be applied in accordance with Section 5(d)), and the Bankruptcy Court retains jurisdiction to resolve any such objection.

f. This Agreement does not impact the rights of Global Assets Germany in any of its other property or claims, and nothing herein shall impact the rights of the UMB Parties or the rights of any third parties with respect thereto.

g. This Agreement is binding on the Parties hereto and their successors and assigns, including any chapter 7 trustee or liquidating trustee appointed with respect thereto.

6. <u>Reservation of Rights</u>. Without limiting Section 5(a) of this Agreement, Global Assets Germany makes no representations, warranties or agreements regarding its interest or the interests of the Debtors, the UMB Parties, or any other parties in the Inventory and this Agreement and the Settlement Order do not purport to resolve any controversy regarding, and do not constitute a finding or determination regarding, the ownership of, or liens in, the Inventory, all such rights being reserved. Any right of Global Assets Germany or any other Debtor (in each case, if any, and to the extent such right exists) to surcharge, under section 506(c) of the Bankruptcy Code, against the collateral assigned to the UMB Parties is preserved and nothing in this Agreement or the Settlement Order shall impact such surcharge rights or any defenses of the UMB Parties thereto.

7. <u>Releases</u>. To the fullest extent permitted by applicable law, the UMB Parties and their successors and assigns, as of the Effective Date, hereby unconditionally and irrevocably release, acquit, and forever discharge Benjamin Duster, Neal Goldman, and William Transier (collectively, the "**Independent Directors**"), Charles Moore, Daniel Jerneycic, Gaurav Malhorta, and Paul Kosturos ("**A&M Officers**"), in their capacities as Independent Directors or A&M Officers, as applicable, of Global Assets Germany, and the Advisors, from any and all claims, obligations, rights, suits, damages, losses, costs, expenses, causes of action, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, that are based upon, relate to, or arise from any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date and relating in any way to service on the Special Committee or the Subcommittee, or as Independent Directors, A&M Officers, or Advisors, as applicable, in relation to Global Assets Germany; *provided*, that the foregoing release shall not apply to any claims arising from fraud, willful misconduct, or gross negligence; and *provided further*, that nothing in this paragraph shall release, impair, or otherwise affect any claims or causes of action against any other person or entity; and *provided further*, that the foregoing releases shall not apply to any other Debtor or its property; and *provided further*, that the foregoing releases shall

4

not impact, mitigate, truncate or undermine any defenses or claims the UMB Parties may have with respect to any 506(c) claims asserted by or on behalf of any party.

8.      Dismissal of UMB Pleadings. As of the Effective Date, the UMB Pleadings shall be deemed withdrawn and, within four (4) business days of entry of the Settlement Order, the UMB Parties shall file a notice of withdrawal with respect to the UMB Pleadings.

9.      No Effect on Guaranty. Nothing in this Agreement is intended to, or shall be deemed to, release, modify or impact in any way any obligation of any guarantor to the UMB Parties under or in connection with the Guaranty or otherwise modify any right or defense of any guarantor to the UMB Parties.

10.     Affirmation; No Novation. Global Assets Germany confirms in all respects Global Assets Germany's obligations under the Credit Agreement and other related documents as such obligations exist prior to the Effective Date. This Agreement is not intended to, and will not, effect a novation or release of the obligations of the Global Assets SPEs or any part thereof, except to the extent of any claim reductions as provided for in Section 5(d) of this Agreement.

11.     Further Assurances.  The Parties agree to use commercially reasonable efforts to execute and deliver any and all documents and agreements, including loan files related to the Inventory, as necessary to effectuate the surrender and assignment of the Inventory contemplated by this Agreement; *provided* that the UMB Parties shall reimburse Global Assets Germany in connection with all actions taken on and after the Effective Date in furtherance of this Agreement, and upon the written request of the UMB Agent (which may be by email), for all reasonable and documented fees or expenses incurred in connection with such actions up to an amount to be agreed between Mr. Duster (or following any conversion, a chapter 7 trustee appointed in the Bankruptcy Case of Global Assets Germany) and the UMB Parties; *provided*, *further*, that Global Assets Germany shall have no obligation to take any actions pursuant to this paragraph 11 if the reasonable fees and expenses of Global Assets Germany will not be reimbursed including, without limitation, due to such fees and expenses being in excess of the amount agreed to by and between the Parties.

12.     Notices. All notices hereunder shall be deemed given if in writing and delivered, by electronic mail, courier, or registered or certified mail (return receipt requested), to the following addresses (or at such other addresses as shall be specified by like notice):

    a.  if to Global Assets Germany, to:

        Simpson, Thacher & Bartlett LLP
        425 Lexington Avenue
        New York, NY 10017
        Attn: Nicholas Baker; David Zylberberg; Rachael Foust
        Email: NBaker@stblaw.com; David.Zylberberg@stblaw.com;
        Rachael.Foust@stblaw.com

5

and

Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153
Attn: Sunny Singh; Taylor Jones
Email: sunny.singh@weil.com; taylor.jones@weil.com

and

Weil, Gotshal & Manges, LLP
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Attn: Clifford W. Carlson
Email: clifford.carlson@weil.com

b.   if to the UMB Agent, to:

Alston & Bird
90 Park Avenue
New York, NY 10016
Attn: Stephen Blank; Jacob Johnson
Email: Stephen.Blank@alston.com; Jacob.Johnson@alston.com

c.   if to the Ad Hoc Group, to:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Attn: AnnElyse Gains; Christina Brown; Yessenia Moreno; Nicholas Rosshirt
Email: AGains@gibsondunn.com; Christina.Brown@gibsondunn.com;
YMoreno@gibsondunn.com; NRosshirt@gibsondunn.com

d.   if to the ABL Agent, to:

Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201
Attn: Toby Gerber, Kristian Gluck
Email: toby.gerber@nortonrosefulbright.com;
Kristian.gluck@nortonrosefulbright.com

13.   Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to its conflict of laws principles.

14.     Counterparts; Electronic Signatures. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by electronic transmission (including PDF or DocuSign) shall be as effective as delivery of a manually executed original.

15.     Entire Agreement. This Agreement, together with the Credit Agreement and the other documents referenced herein, constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior agreements, negotiations, and understandings, whether oral or written, between the Parties with respect thereto.  For the avoidance of doubt, without limiting the rights of the UMB Parties set forth herein, the Debtors shall have no further obligations under the Adequate Protection Stipulation and the Ultinon Status Quo Agreement.

16.     Amendments and Waivers. No amendment, modification, or waiver of any provision of this Agreement shall be effective unless in a writing signed by each of the Parties or their counsel (email being sufficient). No failure or delay by any Party in exercising any right or remedy under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or remedy preclude any other or further exercise thereof.

17.     Severability. If any provision of this Agreement is held to be invalid, illegal, or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

18.     No Third-Party Beneficiaries. Except for the Independent Directors, A&M Officers, and Advisors as expressly provided in Section 7 and the Debtors as provided in Section 15, this Agreement is for the sole benefit of the Parties hereto and their respective successors and permitted assigns, and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit, or remedy of any nature whatsoever.

19.     Construction. This Agreement is the product of arm's-length negotiations between the Parties, each of which was represented by counsel of its choice. No provision of this Agreement shall be construed against any Party by reason of such Party having drafted, or having been deemed to have drafted, such provision. Section headings are for convenience only and shall not affect the construction of this Agreement.

20.     Specific Performance. The Parties acknowledge and agree that monetary damages may not be an adequate remedy for any breach of this Agreement and that, in addition to any other remedy available at law or in equity, each Party shall be entitled to seek specific performance and injunctive or other equitable relief to enforce the terms of this Agreement, without the requirement of posting any bond or other security.

*[continues on following page]*

IN WITNESS WHEREOF, the Parties hereto have duly executed and delivered this Agreement as of the day and year first above written.

**<u>Global Assets Germany</u>**

Global Assets GmbH

By: _____
Name: _____
Title: _____

**<u>UMB Agent</u>**

UMB Bank, N.A.

By: _____
Name: _____
Title: _____

8