United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 12, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

**ORDER (I) SCHEDULING COMBINED HEARING ON**
**(A) ADEQUACY OF DISCLOSURE STATEMENT AND**
**(B) CONFIRMATION OF PLAN, (II) CONDITIONALLY**
**APPROVING DISCLOSURE STATEMENT AND FORM**
**AND MANNER OF NOTICE OF CONDITIONAL DISCLOSURE**
**STATEMENT HEARING, (III) ESTABLISHING SOLICITATION**
**AND VOTING PROCEDURES, (IV) ESTABLISHING ADMINISTRATIVE**
**EXPENSE CLAIMS CONSENT PROGRAM NOTICE AND**
**OPT-IN PROCEDURES, (V) ESTABLISHING PREFERENCE**
**SETTLEMENT NOTICE AND OPT-IN PROCEDURES,**
**(VI) ESTABLISHING NOTICE AND OBJECTION PROCEDURES**
**FOR CONFIRMATION OF PLAN, AND (VII) GRANTING RELATED RELIEF**

Upon the motion, dated June 6, 2026 (the "**Motion**"), First Brands Group, LLC, and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), for entry of an order pursuant to sections 105, 1124, 1125, 1126, and 1128 of the Bankruptcy Code, Rules 2002, 3001, 3016, 3017, 3018, 3020, 6004 and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2002-1, 3016-1, 3016-2, and 9013-1(i) of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (effective as of September 18, 2024, the "**Complex Case Procedures**"), the Debtors request entry of an order (this "**Order**"), granting

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

the following relief:

**Plan, Disclosure Statement & Related Procedures, Dates/Deadlines and Materials**

    i.    scheduling a combined hearing (the "**Combined Hearing**") on July 28, 2026 (subject to the Court's availability) to approve the Disclosure Statement (as defined below) on a final basis and consider confirmation of the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 2907) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**");

    ii.    conditionally[2] approving the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 2912) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Disclosure Statement**")[3] as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

    iii.    approving the form and manner of the notice (the "**Combined Hearing Notice**") of the Combined Hearing, substantially in the form attached hereto as **Exhibit 1**;

    iv.    establishing July 20, 2026 at 5:00 p.m. (Central Time) as the deadline to object to the adequacy of the Disclosure Statement and/or confirmation of the Plan (the "**Combined Objection Deadline**");

    v.    approving the form and manner of the notice of the filing of the Plan, the Disclosure Statement, and the Motion, the Conditional Disclosure Statement Hearing (defined below), and notice of the FBG Debtors' proposed Voting Record Date (defined below) (the "**Conditional Disclosure Statement Hearing Notice**") substantially in the form attached hereto as **Exhibit 16**;

    vi.    approving the form and manner of the notice of the filing of the Plan Supplement, and dates and deadlines related to final approval of the Disclosure Statement and confirmation of the Plan (the "**Plan Supplement Notice**") substantially in the form attached hereto as **Exhibit 17**;

**Solicitation and Voting**

    vii.    establishing June 15, 2026 as the record date for the purpose of determining which holders of Claims are entitled to vote on the Plan and receive the applicable notice(s) relating to solicitation and confirmation (the "**Voting Record Date**");

---

[2]    The Debtors reserve the right to seek final approval of the Disclosure Statement prior to the Combined Hearing to the extent the hearing to consider approval of the Disclosure Statement is moved to a date after the 28-day objection deadline under Bankruptcy Rule 2002(b).

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

viii.   approving procedures for (a) soliciting, receiving, and tabulating votes to accept or reject the Plan and (b) voting to accept or reject the Plan (the "**Solicitation and Voting Procedures**"), and related deadlines, substantially in the form attached hereto as **Exhibit 2**;

ix.   approving the ballots (the "**Ballots**") that First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") will send to holders of Claims entitled to vote, giving such holders the option to vote to accept or reject the Plan and a box to check to opt in to the Third-Party Releases contained in Section 13.5(b) of the Plan (the "**Third-Party Release Opt-In Election**"), substantially in the forms attached hereto as **Exhibits 3–8**;

x.   approving the form of notice setting forth, among other things, the procedures for holders of Claims in Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), and Class 5 (Second Lien Claims), and DIP A Claims to certify, elect, and participate in the Litigation Trust (the "**Litigation Trust Participation Notice**"), substantially in the form attached hereto as **Exhibit 13**;

xi.   approving the form of notice setting forth, among other things, the procedures for holders of DIP A Claims to certify, elect, and participate in the DIP Collateral Trust (the "**DIP Collateral Trust Participation Notice**"), substantially in the form attached hereto as **Exhibit 14**;

xii.   finding that the solicitation materials and documents included in the solicitation packages to be sent to holders of Claims entitled to vote to accept or reject the Plan as described in Paragraph 8 herein (the "**Solicitation Packages**") are in compliance with Bankruptcy Rules 2002(b) and 3017(d);

xiii.   approving the form of notice the FBG Debtors will send to holders of Claims in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims) (together, the "**Unimpaired Non-Voting Classes**"), and DIP A Claims (such notice, the "**Notice of Non-Voting Status**"), substantially in the form attached hereto as **Exhibit 9**;

xiv.   approving (a) the form to opt in to the Third-Party Releases (the "**Release Opt-In Form**"), substantially in the form attached hereto as **Exhibit 10**, which the FBG Debtors will send to holders of Claims in the Unimpaired Non-Voting Classes, and holders of DIP A Claims, and (b) July 20, 2026 at 5:00 p.m. (Central Time) as the deadline by which holders of Claims in the Unimpaired Non-Voting Classes and DIP A Claims must submit the Release Opt-In Form (the "**Release Opt-In Deadline**");

xv.   establishing July 20, 2026 at 5:00 p.m. (Central Time) as the deadline by which holders of Claims entitled to vote may vote to accept or reject the Plan (the "**Voting Deadline**");

**Administrative Expense Claims Consent Program**

3

xvi.    approving the form of opt-in the FBG Debtors will send to holders of Administrative Expense Claims for the Administrative Expense Claims Consent Program (as defined herein) (the "**Consent Program Opt-In Form**") substantially in the form attached hereto as **Exhibit 11**;

xvii.    establishing July 10, 2026 as the record date for determining which holders of Administrative Expense Claims are entitled to participate in the Administrative Expense Claims Consent Program and receive the Consent Program Opt-In Form (the "**Administrative Claims Record Date**");

xviii.    approving the form of materials and documents to be sent to holders of Administrative Expense Claims (as provided in Paragraph 33 herein) (the "**Consent Program Materials**");

xix.    approving (a) the Consent Program Opt-In Procedures (as defined herein) and (b) the deadline by which holders of Administrative Expense Claims must submit the Consent Program Opt-In Form of sixty (60) days following the Confirmation Date (the "**Consent Program Opt-In Deadline**");

<div align="center">

**Preference Settlement**

</div>

xx.    approving the form the FBG Debtors will send to Trade Creditors, Supply Chain Financers, and Factors as of June 15, 2026 (the "**Preference Settlement Record Date**") (each, a "**Preference Settlement Eligible Creditor**" and collectively, the "**Preference Settlement Eligible Creditors**") to give those holders an opportunity to participate in the Preference Settlement and to grant releases described therein, (the "**Preference Settlement Opt-In Form**"), substantially in the form attached hereto as **Exhibit 12**;

xxi.    approving the materials and documents to be sent to Preference Settlement Eligible Creditors (as provided in Paragraph 44 herein) (the "**Preference Settlement Materials**");

xxii.    approving (a) the Preference Settlement Procedures (as defined herein) and (b) the deadline by which Preference Settlement Eligible Creditors must submit the Preference Settlement Opt-In Form, which is on or before 5:00 p.m. (Central Time) on the date that is forty-five (45) days following the Confirmation Date (the "**Preference Settlement Opt-In Deadline**"); *provided* that if a Preference Action is brought against a Trade Creditor that did not timely opt in to the Preference Settlement, such Trade Creditor shall have an additional thirty (30) days following service of the Preference Action to opt in to the Preference Settlement; and

xxiii.    granting related relief;

all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and this Court having found that this

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion, including the Conditional Disclosure Statement Hearing Notice, and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the Motion (the "**Conditional Disclosure Statement Hearing**"); and upon the Moore Declaration;[4] and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

**Conditional Approval of Disclosure Statement.**

1.      The Disclosure Statement is hereby conditionally approved as providing holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan within the meaning of section 1125 of the Bankruptcy Code and complies with Bankruptcy Rule 3016(c) and is subject to final approval of the Court at the Combined Hearing.   No further or additional information is necessary or required.

---

[4]     "**Moore Declaration**" refers to the *Declaration of Charles M. Moore in Support of (I) the Proposed Confirmation Schedule and (II) the Debtors' Objection to United States Trustee's Motion to Convert or Dismiss Pursuant to 11 U.S.C. § 1112(b)* (Docket No. 2911).

2.     The Disclosure Statement (including all applicable exhibits thereto) provides holders of Claims and other parties in interest with sufficient notice of the proposed releases, injunctions, and exculpation provisions contained in Article XIII of the Plan, in accordance with Bankruptcy Rule 3016(c).

3.     The procedures pursuant to which the Debtors provided notice to the parties entitled to notice of the time, date, and place of the Conditional Disclosure Statement Hearing, including the Conditional Disclosure Statement Hearing Notice, provided due, proper, and adequate notice, comport with due process, and comply with all applicable Bankruptcy Rules and Bankruptcy Local Rules.   No further notice is required or necessary.

**Approval of Solicitation and Voting Procedures and Materials and Timeline for Soliciting Votes for Confirming Plan.**

      **a.     Solicitation and Voting Procedures.**

4.     The Solicitation and Voting Procedures, attached hereto as **Exhibit 2**, provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018 and are hereby approved in their entirety.

5.     The FBG Debtors are hereby authorized to solicit, receive, and tabulate votes to accept the Plan in accordance with the Solicitation and Voting Procedures.   The solicitation period during which the FBG Debtors will solicit votes to accept or reject the Plan is a reasonable and sufficient period of time for holders of Claims in the Voting Classes to make an informed decision regarding whether to accept or reject the Plan and timely return Ballots evidencing such decision.

      **b.     Solicitation and Confirmation Timeline.**

6.     The following dates and deadlines are hereby established (subject to modification as necessary by the Debtors) with respect to the solicitation of the Plan, voting on the Plan, and

confirmation of the Plan, as well as filing objections to confirmation of the Plan and approving the

Disclosure Statement on a final basis:

| SOLICITATION AND CONFIRMATION TIMETABLE | |
| --- | --- |
| Voting Record Date, and Preference Settlement Record Date | **June 15, 2026** |
| Mailing Deadline for Combined Hearing Notice, Solicitation Packages, Non-Voting Packages, Consent Program Materials, and Preference Settlement Materials | **Within three (3) business days after entry of this Order, or as soon as reasonably practicable thereafter** |
| Plan Supplement Filing Deadline | **June 22, 2026** |
| Litigation Trust Distribution Record Date & DIP Collateral Trust Distribution Record Date | **June 22, 2026 (which date may be extended by mutual agreement among the FBG Debtors and Ad Hoc Group)** |
| Deadline for Debtors to File Claims Objections for Voting Purposes or to Request Claim Estimation for Voting Purposes | **July 3, 2026 at 5:00 p.m. (Central Time)** |
| Administrative Claims Record Date | **July 10, 2026** |
| Rule 3018(a) Motion Deadline | **July 10, 2026 at 5:00 p.m. (Central Time)** |
| Litigation Trust Interest Response Deadline & DIP Collateral Trust Interest Response Deadline | **July 13, 2026 (which date may be extended by mutual agreement among the FBG Debtors and Ad Hoc Group)** |
| Voting Deadline and Release Opt-In Deadline | **July 20, 2026 at 5:00 p.m. (Central Time)** |
| Deadline to Object to Disclosure Statement and Plan | **July 20, 2026 at 5:00 p.m. (Central Time)** |
| Ballot Certification Deadline | **July 27, 2026** |
| Deadline to File Confirmation Brief and Reply to Plan Objection(s) | **July 27, 2026** |
| Combined Hearing | **July 28, 2026 at 9:00 a.m. (Central Time)** |
| Preference Settlement Opt-In Deadline | **Forty-five (45) days following the Confirmation Date (except as otherwise provided herein)** |

| SOLICITATION AND CONFIRMATION TIMETABLE | |
|---|---|
| Consent Program Opt-In Deadline | **Sixty (60) days following the Confirmation Date** |

> **c.** **Solicitation Packages.**

7. The Solicitation Packages, and each of the documents contained therein (substantially in the form attached hereto), including, but not limited to the Ballots, Combined Hearing Notice, the Solicitation and Voting Procedures, the Litigation Trust Collateral Trust Notice, and the DIP Collateral Trust Notice, are APPROVED.

8. The FBG Debtors shall mail, or cause to be mailed, the Solicitation Packages on or before the Mailing Deadline (or as soon as reasonably practicable thereafter) to holders of Claims in the Voting Classes entitled to vote on the Plan as of the Voting Record Date, as required by Bankruptcy Rule 3017(d). The FBG Debtors shall also provide complete Solicitation Packages (excluding Ballots, as applicable) to the U.S. Trustee and all parties required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-11 (except to the extent that such party is otherwise entitled to receive Materials (defined below)). Solicitation Packages shall contain copies of:

> (a) this Order, as entered by this Court and without attachments;
>
> (b) the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;
>
> (c) the Combined Hearing Notice (substantially in the form attached hereto as **Exhibit 1**);
>
> (d) Solicitation and Voting Procedures (substantially in the form attached hereto as **Exhibit 2**);
>
> (e) the applicable Ballot customized (where possible and appropriate) for such holder and conforming to Official Bankruptcy Form No. B 314, in the form described below;[5]

---

[5] Official Bankruptcy Form No. B 314 can be found at http://www.uscourts.gov/forms/bankruptcy-forms, the

(f) for holders of Claims in Class 3 (Roll-Up Claims), Class 4 First Lien Claims), and Class 5 (Second Lien Claims), the Litigation Trust Participation Notice (substantially in the form attached as **Exhibit 13** hereto);

(g) for holders of Claims in Class 7 (General Unsecured Claims), the letter from the Creditors' Committee setting forth, among other things, that the Creditors' Committee recommends that holders of General Unsecured Claims against the FBG Debtors vote to accept the Plan and supports confirmation of the Plan (substantially in the form attached as **Exhibit 15** hereto) (the "**Creditors' Committee Position Letter**"); and

(h) a postage-prepaid return envelope.

9. The FBG Debtors are authorized to serve the Plan, the Disclosure Statement, and this Order in electronic format (on a QR code included in the Combined Hearing Notice), such that only the Ballots and the Combined Hearing Notice shall be served in paper format, except as otherwise provided in this Order, or the Solicitation and Voting Procedures. Any creditor or equity holder for which service by QR code imposes a hardship may request an additional copy of the Plan, the Disclosure Statement (and attachments), and this Order (without attachments) in paper format by contacting Kroll by (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line. Upon receipt of an email, telephonic, or written request, in a timely manner, the FBG Debtors shall provide such creditor with a USB flash drive containing, or a paper copy of, the Plan and the Disclosure Statement at no cost to the creditor.

---

official website for the United States Bankruptcy Courts.

10.     The Voting Agent is authorized to assist the FBG Debtors in:  (i) distributing the applicable Solicitation Packages, (ii) distributing the applicable Solicitation Packages, (iii) distributing the Notice of Non-Voting Status and the Release Opt-In Forms as applicable, (iv) distributing Consent Program Materials, (v) distributing Preference Settlement Materials, (vi) collecting, processing, and reporting on Consent Program Opt-In Forms, (vii) collecting, processing, and reporting Preference Settlement Opt-In Forms, (viii) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by holders of Claims, (ix) receiving, tabulating, and reporting on Release Opt-In Forms cast to opt in to the Third-Party Releases, (x) responding to inquiries from holders of Claims or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, Non-Voting Packages, Preference Settlement Materials, Consent Program Materials, and all other related documents (collectively, the "**Materials**") and matters related thereto, or the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, including the procedures and requirements to opt in to Third-Party Releases, (xi) soliciting votes on the Plan, and (xii) if necessary or appropriate, contacting creditors and equity holders regarding the Materials and matters related thereto

11.     The Voting Agent is authorized to serve the Litigation Trust Participation Notice to holders of Claims entitled to receive such notices, as outlined in Paragraph 8 herein, and to holders of DIP A Claims, and to serve the DIP Collateral Trust Participation Notice to holders of DIP A.  The information elicited from holders by the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice, however, will not be collected or processed by the Voting Agent.  The method of submission and collection of the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice will be as set forth in the respective

10

notices.   Additionally, the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice are subject to different dates and deadlines than other documents in the Solicitation Packages (such as the Distribution Record Dates, as defined therein) affecting the rights of the recipient holders of such notices.

12.   Holders of transferred Claims entitled to vote on the Plan shall receive a Solicitation Package only if: (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files, by the Voting Record Date, (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.   In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the holder of such Claim as of the Voting Record Date.

13.   The Voting Agent is authorized to accept the Ballots on or before the Voting Record Date: (i) by first-class mail in the return envelope provided with each Ballot, (ii) by overnight courier; (iii) by hand delivery; or (iv) via Kroll's online balloting portal (each such electronically submitted Ballot, an "**E-Ballot**") at https://restructuring.ra.kroll.com/FirstBrands (the "**Online Portal**").   The encrypted E-Ballot data and audit trail created by electronic submission via Kroll's Online Portal shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature shall be deemed to be immediately legally valid and effective. Alternatively, in lieu of submitting an E-Ballot, holders of Claims may return their Ballots in the return envelope provided, or otherwise via first class mail, overnight courier, or hand delivery, so long as the Ballots are actually received on or before the Voting Deadline.   Holders of Claims mailing their Ballots to the Voting Agent shall mail them to the following address:

First Brands Group, LLC Ballot Processing
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

14. The FBG Debtors are authorized, but not required, to (i) waive any defects or irregularities as to any Ballot at any time, either before or after the Voting Deadline, or (ii) extend the Voting Deadline.

15. The FBG Debtors are not required to mail Solicitation Packages or Non-Voting Packages to holders (i) that have Claims that have already been paid in full during these chapter 11 cases, (ii) whose prior mailings in these chapter 11 cases were returned as undeliverable and that have not provided a forwarding address by the Voting Record Date,[6] and (iii) that have Claims in Class 9 (Intercompany Claims) or Interests in Class 10 (FBG Debtor Interests). In the event that the United States Postal Service returns some Solicitation Packages or Non-Voting Packages as undeliverable, the FBG Debtors shall be excused from re-mailing such Solicitation or Non-Voting Packages. The failure to mail such Solicitation Packages and Non-Voting Packages, or any other materials related to voting or confirmation of the Plan to such entities will not constitute inadequate notice of the Combined Hearing or the Voting Deadline and shall not constitute a violation of Bankruptcy Rule 3017.

**Notice of Non-Voting Status.**

16. The Notice of Non-Voting Status is APPROVED.

17. The proposed form and manner of service of the Notice of Non-Voting Status provide due, proper, and adequate notice, comport with due process, and comply with all

---

[6] For purposes of serving the Solicitation Packages, the Plan Debtor is authorized to rely on the address information for holders of Claims in the Voting and Non-Voting Classes as compiled, updated, and maintained by the Voting Agent as of the Voting Record Date, and the Debtors and the Voting Agent are not required to conduct any additional research for updated addresses based on undeliverable Solicitations Packages (including the Ballots).

applicable Bankruptcy Rules and Bankruptcy Local Rules.   No further notice is required or necessary.

18.     Except to the extent that the FBG Debtors determine otherwise, the FBG Debtors are not required to provide Solicitation Packages to holders of Claims and Interests in the Non-Voting Classes, as such holders are not entitled to vote on the Plan.    Instead, on or before the Mailing Deadline, the Voting Agent shall mail Non-Voting Packages which will include: (i) a Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit 9**, (ii) a Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 1**, and (iii) a Release Opt-In Form, substantially in the form attached hereto as **Exhibit 10**, to the holders of DIP A Claims, holders of Claims in Class 8 (Subordinated Claims), and holders of Claims in the Unimpaired Non-Voting Classes in lieu of a Solicitation Package.  The Voting Agent will also mail holders of DIP A Claims the Litigation Trust Participation Notice substantially in the form attached hereto as **Exhibit 13** and the DIP Collateral Trust Participation Notice substantially in the form attached hereto as **Exhibit 14**.

19.     The Notice of Non-Voting Status provides (i) notice of the Court's conditional approval of the Disclosure Statement, (ii) notice of filing the Plan, (iii) notice of the holder's non-voting status, (iv) notice of the Release Opt-In Form, and (v) information about how to obtain copies of the Disclosure Statement and the Plan.  In addition, the Notice of Non-Voting Status contains the full text of the release, exculpation, and injunction provisions set forth in Article XIII of the Plan.  The Notice of Non-Voting Status advises holders receiving such notice that they will only be bound by the Third-Party Releases in Section 13.5(b) of the Plan if they timely, properly, and affirmatively opt in to the grant of Third-Party Releases, except as otherwise provided in the Plan.

20.     The requirement to serve a Notice of Non-Voting Status, Release Opt-In Form, Combined Hearing Notice, or any other type of notice in connection with solicitation of the Plan to holders of Claims in Class 9  (Intercompany Claims) and holders of Interests in Class 10 (FBG Debtor Interests) is hereby waived.

**Release Opt-In Form**

21.     The Release Opt-In Form is APPROVED.

22.     The Release Opt-In Form, substantially in the form attached hereto as **Exhibit 10**, complies with the Bankruptcy Code, applicable Bankruptcy Rules, and the applicable Bankruptcy Local Rules and Complex Case Procedures and, together with the Conditional Disclosure Statement Hearing Notice, the Combined Hearing Notice and, as applicable, the Notice of Non-Voting Status, provides adequate notice to the holders of DIP A Claims, and holders of Claims in the Unimpaired Non-Voting Classes.   No further notice is required or necessary.

23.     The Release Opt-In Form (i) contains the full text of the release provisions set forth in Article XIII of the Plan and advises the recipients that they will only be bound by the Third-Party Releases if they timely, properly, and affirmatively choose to opt in by completing the Release Opt-In Form, except as provided in the Plan, and (ii) provides detailed instructions to the recipient regarding the manner in which such recipient can submit their election to opt in to the Third-Party Releases.

24.     The Release Opt-In Deadline shall be **July 20, 2026 at 5:00 p.m. (Central Time)**.

25.     Holders of DIP A Claims, and holders of Claims in the Unimpaired Non-Voting Classes that choose to opt in to the Third-Party Releases may do so by submitting their Release Opt-In Form in the return envelope provided or otherwise by: (i) by first-class mail; (ii) by

overnight courier; (iii) by hand delivery; or (iv) via the Online Portal,[7] each in accordance with the instructions included on the Release Opt-In Form, so that (in each instance) their opt in election is actually received by the Voting Agent no later than the Release Opt-In Deadline of July 20, 2026 at 5:00 p.m. (Central Time).

26.     The Voting Agent is authorized to assist the FBG Debtors in (i) receiving, tabulating, and reporting on Release Opt-In Forms and (ii) responding to inquiries from holders of Claims and other parties in interest relating to the procedures and requirements to opt in of the Third-Party Releases by the Release Opt-In Form.

27.     Holders of DIP A Claims, and holders of Claims in the Unimpaired Non-Voting Classes that do not timely, properly, and affirmatively elect to opt in to the Third-Party Releases by the Release Opt-In Deadline will not be Releasing Parties under the Plan, except as otherwise provided in the Plan.  Holders of DIP A Claims and holders of Claims in the Unimpaired Non-Voting Classes that that timely, properly, and affirmatively elect to opt in to the Third-Party Releases by the Release Opt-In Deadline will be Releasing Parties under the Plan.

**Approval of Administrative Consent Program Notice and Opt-In Procedures.**

> **a.     Consent Program Opt-In Procedures and Consent Program Opt-In Form**

28.     The Consent Program Opt-In Form and Consent Opt-In Procedures and related dates and deadlines are APPROVED.

| Administrative Claims Record Date | • July 10, 2026. |
|---|---|

---

[7] The Release Opt-In Form includes information on how parties can opt in  electronically via the Online Portal.  An encrypted opt in data and audit trail will be created through the electronic submission process and become part of the record of any opt in election submitted in this manner.  Additionally, the parties' electronic signature will be deemed to be legally valid and effective immediately.  For the avoidance of doubt, the Online Portal is the sole method for holders of DIP A Claims and holders of Claims in the Unimpaired Non-Voting Classes to transmit opt in elections electronically.

| | |
|---|---|
| **Consent Program Opt-In Deadline** | • All Consent Program Opt-In Forms must be timely and properly completed and returned so as to be **actually received** by the Voting Agent **by 5:00 p.m. (Central Time) on or before the date that is sixty (60) days following the Confirmation Date** either by (i) delivering the Consent Program Opt-In Form to the Voting Agent in the return envelope provided or otherwise by first-class mail, hand delivery, or overnight courier or (ii) submitting the Consent Program Opt-In Form by electronic, online transmission through the Online Portal (as defined herein), each in accordance with the instructions included on the Consent Program Opt-In Form. |
| **Tabulation** | • A holder of an Administrative Expense Claim that properly, timely, and affirmatively opts in to the Administrative Expense Claims Consent Program will be the holder of Settled Administrative Expense Claim under the Plan and will: (i) have its Administrative Expense Claim deemed Allowed in the amount of such holder's Settled Administrative Expense Claim; and (ii) be entitled to receive distributions from the Litigation Trust in accordance with the Litigation Trust Waterfall, including beginning to share in 16% of distributable proceeds following aggregate distributions of $350 million, with holders of Settled Administrative Expense Claims receiving distributions first within Class 3, pro rata based on the aggregate amount of Allowed Settled Administrative Expense Claims, until each such Holder has received distributions equal to the Allowed amount of its Settled Administrative Expense Claim. <br><br> • Holders of Administrative Expense Claims that do not properly, timely, and affirmatively opt in to the Administrative Expense Claims Consent Program, will only begin to receive distributions from the Litigation Trust following payment in full of all Settled Administrative Expense Claims, but prior to repayment of Roll-Up Claims, First Lien Claims, Second Lien Claims, and General Unsecured Claims. <br><br> • A holder of Administrative Expense Claims against more than one FBG Debtor that timeline and properly submits a Consent Program Opt-In Form shall have its election to affirmatively opt in counted with respect to each such FBG Debtor. <br><br> • The FBG Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Consent Program Opt-In Forms, which determination—absent a prior ruling of the Court—will be final and binding on all parties. |

29.     The Consent Program Opt-In Form and Consent Program Opt-In Procedures

16

(including the Consent Program Opt-In Deadline) are adequate to solicit elections from holders of Administrative Expense Claims with respect to Administrative Expense Claims Consent Program and to otherwise inform holders of Administrative Expense Claims regarding their rights and available choices with respect to the Administrative Expense Claims Consent Program.  The Consent Program Opt-In Form contains (i) a detailed description of the Administrative Expense Claims Consent Program, (ii) the Reconciled Amount of the receiving holder's Administrative Expense Claim (iii) the amount of the receiving holder's Settled Administrative Expense Claim, and (iv) detailed instructions on how to properly fill out the Consent Program Opt-In Form, including instructions on how to contact the FBG Debtors and the FBG Debtors' financial advisor if the receiving holder of the Consent Program Opt-In Form disagrees with the Reconciled Amount listed on the holder's Consent Program Opt-In Form.

30.     Following the Confirmation Date, the FBG Debtors are authorized to mail, or cause to be mailed, a paper Consent Program Opt-In Form and a postage prepaid return envelope to holders of Administrative Expense Claims.

31.     No further notice is required or necessary.

**b.     Consent Program Materials**

32.     The Consent Program Materials, and each of the documents contained therein (substantially in the form attached hereto), are APPROVED.

33.     The FBG Debtors are hereby authorized to take all actions necessary to implement the terms of the Consent Program Opt-In Procedures, including mailing the Consent Program Materials to holders of Administrative Expense Claims on or before the Mailing Deadline. Consent Program Materials shall contain copies of:

(a)     this Order, as entered by this Court and without attachments;

17

(b)     the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;

(c)     the Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 1**; and

(d)     the Solicitation and Voting Procedures, substantially in the form attached hereto as **Exhibit 2**.

34.     The FBG Debtors are authorized to serve the Disclosure Statement, the Plan, and this Order in electronic format (on a QR code included in the Combined Hearing Notice) instead of sending printed hard copies.  Only the Combined Hearing Notice will be provided in paper format.  Moreover, the Plan and the Disclosure Statement will be available at no charge via the Internet at the Online Portal.  However, if service by QR code imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (*e.g.*, the party does not own or have access to a smartphone), such party may request a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and this Order (without attachments) by contacting Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Upon receipt of such request, in a timely manner, the Debtors will provide such party with a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and this Order (without attachments) at no cost to the party.

35.     The Voting Agent is authorized to assist the FBG Debtors in (i) distributing the Consent Program Materials, (ii) collecting, processing, and reporting on submitted Consent Program Opt-In Forms, (iii) responding to inquiries from parties in interest relating to the Disclosure Statement, the Plan, the Consent Program Opt-In Forms, and all other related

18

documents and matters related thereto, or the procedures and requirements for electing to participate in the Administrative Expense Claims Consent Program, and (iv) if necessary or appropriate, contacting creditors concerning the Consent Program Opt-In Forms, and all other related documents and matters related thereto.

36.     The FBG Debtors and the Voting Agent are not required to mail Consent Program Materials to parties (i) on account of Claims that have already been paid in full during these chapter 11 cases, (ii) on account of Claims that are determined to be duplicative based on the review of the Debtors and/or the Voting Agent, or (iii) whose prior mailings in these chapter 11 cases were returned as undeliverable and that have not provided a forwarding address by the Voting Record Date.[8]

37.     Holders of transferred Claims, filed pursuant to Bankruptcy Rule 3001(e), will be entitled to receive Consent Program Materials, on account of such Claim only if (i) all actions necessary to transfer such Claim are completed by the Administrate Claims Record Date or (ii) by the Administrate Claims Record Date, the transferee files (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  Further, the Debtors request that, in the event a holder's Administrative Expense Claim is transferred after the Administrate Claims Record Date, the transferee of such Claim shall be bound by any election on the Consent Program Opt-In Form made by the holder of the Administrative Expense Claim as of the Administrate Claims Record Date pursuant to the procedures described herein.

---

[8]     For purposes of serving the Consent Program Materials, the Debtors request that they be authorized to rely on the address information for holders of Administrative Expense Claims as compiled, updated, and maintained by the Voting Agent.  The Debtors further request that the Debtors and the Voting Agent not be required to conduct any additional research for updated addresses based on undeliverable Consent Program Materials (including the Consent Opt-In Form).

38.     The Voting Agent is authorized to accept Consent Program Opt-In Forms on or before the Consent Program Opt-In Deadline: (i) by first-class mail in the return envelope provided with each Consent Program Opt-In Form; (ii) by overnight courier; (iii) by hand delivery; or (iv) by electronic, online transmission at the Online Portal.  The encrypted Consent Program Opt-In Form data and audit trail created by electronic submission via Kroll's Online Portal shall become part of the record of any Consent Program Opt-In Form submitted in this manner and the creditor's electronic signature shall be deemed to be immediately legally valid and effective.

39.     In the event that the United States Postal Service returns the Consent Program Materials as undeliverable, the FBG Debtors and the Voting Agent shall be excused from re-mailing such Consent Program Materials.

**Approval of Preference Settlement Notice and Opt-In Procedures.**

        **a.     Preference Settlement Opt-In Procedures and Preference Settlement Opt-In Form**

40.     The Preference Settlement Opt-In Procedures and related dates and deadlines are APPROVED.

| Preference Settlement Record Date | • June 15, 2026. |
|---|---|
| Preference Settlement Opt-In Deadline | • All Preference Settlement Opt-In Forms must be timely and properly completed and returned so as to be **actually received** by the Voting Agent by **5:00 p.m. (Central Time) on or before the date that is forty-five (45) days following the Confirmation Date**, either by (i) delivering the Preference Settlement Opt-In Form to the Voting Agent in the return envelope provided or otherwise by first-class mail, hand delivery, or overnight courier or (ii) submitting the Preference Settlement Opt-In Form by electronic, online transmission through the Online Portal, each in accordance with the instructions included on the Preference Settlement Opt-In Form.  If a Preference Action is brought against a Trade Creditor that did not timely opt in to the Preference Settlement, such Trade Creditor shall have an additional thirty (30) days following service of the Preference Action to opt in to the Preference Settlement. |

20

| Collection and Processing of Preference Settlement Opt-In Forms | • A Preference Settlement Eligible Creditor that properly, timely, and affirmatively elects to participate in the Preference Settlement will be a Preference Settlement Electing Creditor under the Plan and will: (i) grant the releases contained in Section 13.5(b) of the Plan; (ii) contribute its Direct Creditor Claims to the Litigation Trust; and (iii) participate in, and receive the benefit of, the Preference Settlement, including, if such Preference Settlement Electing Creditor is (a) a Trade Creditor, it will be released from Preference Actions and (b) a Supply Chain Financer or a Factor, it will receive the benefit of the Modified New Value Element, as described in more detail in Section 6.11(e) of the Plan. Preference Settlement Eligible Creditors that do not properly, timely, and affirmatively elect to participate in the Preference Settlement will not be Preference Settlement Electing Creditors for purposes of the Plan, will not contribute Direct Creditor Claims to the Litigation Trust, will not grant the releases contained in Section 13.5(b) of the Plan, and therefore, will not receive the benefit of the Preference Settlement. Failure to properly follow the instructions on, and timely submit, the Preference Settlement Opt-In Form may result in the Preference Settlement Opt-In Form not being processed.<br>• The FBG Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Preference Settlement Opt-In Forms, which determination—absent a prior ruling of the Court—will be final and binding on all parties. |
|---|---|

41.     The Preference Settlement Opt-In Form and Preference Settlement Opt-In Procedures (including the Preference Settlement Opt-In Deadline) are adequate to solicit elections from Preference Settlement Eligible Creditors with respect to the Preference Settlement and to otherwise inform Preference Settlement Eligible Creditors regarding their rights and available choices with respect to the Preference Settlement.  The Preference Settlement Opt-In Form includes: (i) notice of the Court's conditional approval of the Disclosure Statement, (ii) notice of filing the Plan, (iii) notice that the recipient of the Preference Settlement Opt-In Form may be a Preference Settlement Eligible Creditor, (iv) information on the consequences of opting in to the Preference Settlement and of abstaining from opting in to the Preference Settlement, (v) detailed instructions regarding the manner in which a Preference Settlement Eligible Creditor can submit

21

its election to opt in to the Preference Settlement, including notice of the Preference Settlement

Opt-In Deadline, and (vi) information about how to obtain copies of the Disclosure Statement and

the Plan.  In addition, the Preference Settlement Opt-In Form attaches the full text of the release,

exculpation, and injunction provisions set forth in Article XIII of the Plan, as Exhibit 1 thereto.

42.     No further notice is required or necessary.

**b.      Preference Settlement Materials**

43.     The Preference Settlement Materials, and each of the documents contained therein

(substantially in the form attached hereto), including the Preference Settlement Opt-In Form, are

APPROVED.

44.     The Debtors are hereby authorized to take all actions necessary to implement the

terms of the Preference Settlement Opt-In Procedures, including mailing the Preference Settlement

Materials to Preference Settlement Eligible Creditors on or before the Mailing Deadline; *provided*

that the Preference Settlement Opt-In Form shall only be mailed to Preference Settlement Eligible

Creditors, in accordance with this Order and the Preference Settlement Opt-In Procedures.

Preference Settlement Materials shall contain copies of:

(a)     this Order, as entered by this Court and without attachments;

(b)     the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;

(c)     the Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 1**;

(d)     the Solicitation and Voting Procedures, substantially in the form attached hereto as **Exhibit 2**;

(e)     the Preference Settlement Opt-In Form substantially in the form attached hereto as **Exhibit 12** for Preference Settlement Eligible Creditors;

(f)     the Creditor's Committee Position Letter attached hereto as **Exhibit 15**; and

(g)     a postage-prepaid return envelope.

45.     The FBG Debtors are authorized to serve the Disclosure Statement, the Plan, and this Order in electronic format (on a QR code included in the Combined Hearing Notice) instead of sending printed hard copies.  Only the Preference Settlement Opt-In Form, the Combined Hearing Notice, and a return envelope will be provided in paper format.  Moreover, the Plan and the Disclosure Statement will be available at no charge via the Internet at the Online Portal. However, the Debtors propose that if service by QR code imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (*e.g.*, the party does not own or have access to a smartphone), such party may request a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and this Order (without attachments) by contacting Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Upon receipt of such request, in a timely manner, the Debtors will provide such party with a USB flash drive containing, or a paper copy of the Plan, Disclosure Statement, and this Order (without attachments) at no cost to the party.

46.     The Voting Agent is authorized to assist the FBG Debtors in (i) distributing the Preference Settlement Materials, (ii) collecting, processing, and reporting on submitted Preference Settlement Opt-In Forms, (iii) responding to inquiries from parties in interest relating to the Disclosure Statement, the Plan, the Preference Settlement Opt-In Forms, and all other related documents and matters related thereto, or the procedures and requirements for electing to participate in the Preference Settlement, and (iv) if necessary or appropriate, contacting creditors

23

concerning the Preference Settlement Opt-In Forms, and all other related documents and matters related thereto.

47.     The FBG Debtors and the Voting Agent are not required to mail Preference Settlement Materials to parties (i) on account of Claims that have already been paid in full during these chapter 11 cases (except Claims of Preference Settlement Eligible Creditors), (ii) on account of Claims that are determined to be duplicative based on the review of the Debtors and/or the Voting Agent, or (iii) whose prior mailings in these chapter 11 cases were returned as undeliverable and that have not provided a forwarding address by the Voting Record Date.[9]

48.     Holders of transferred Claims, filed pursuant to Bankruptcy Rule 3001(e), will be entitled to receive Preference Settlement Materials, on account of such Claim only if (i) all actions necessary to transfer such Claim are completed by the Preference Settlement Record Date or (ii) by the Preference Settlement Record Date, the transferee files (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  Further, the Debtors request that, in the event a Preference Settlement Eligible Creditor's Claim is transferred after the Preference Settlement Record Date, the transferee of such Claim shall be bound by any election on the Preference Settlement Opt-In Form made by the Preference Settlement Eligible Creditor as of the Preference Settlement Record Date pursuant to the procedures described herein.

49.     The Voting Agent is authorized to accept Preference Settlement Opt-In Forms on or before the Preference Settlement Opt-In Deadline: (i) by first-class mail in the return envelope

---

[9]     For purposes of serving the Preference Settlement Materials, the Debtors request that they be authorized to rely on the address information for Preference Settlement Eligible Creditors as compiled, updated, and maintained by the Voting Agent.  The Debtors further request that the Debtors and the Voting Agent not be required to conduct any additional research for updated addresses based on undeliverable Preference Settlement Materials (including the Preference Settlement Opt-In Form).

provided with each Preference Settlement Opt-In Form; (ii) by overnight courier; (iii) by hand delivery; or (iv) by electronic, online transmission at the Online Portal. The encrypted Preference Settlement Opt-In Form data and audit trail created by electronic submission via Kroll's Online Portal shall become part of the record of any Preference Settlement Opt-In Form submitted in this manner and the creditor's electronic signature shall be deemed to be immediately legally valid and effective. A tabulation of the parties completing the Preference Settlement Opt-In Forms received by the Voting Agent will be provided to the GUC Ombudsman (following the Confirmation Date).

50. The Debtors, or the Litigation Trustee, as applicable, are authorized, but not required, to (i) waive any defects or irregularities as to any Preference Settlement Opt-In Form at any time, either before or after the Preference Settlement Opt-In Deadline, or (ii) extend the Preference Settlement Opt-In Deadline.

51. In the event that the United States Postal Service returns the Preference Settlement Materials as undeliverable, the FBG Debtors and the Voting Agent shall be excused from re-mailing such Preference Settlement Materials.

**Conditional Disclosure Statement Hearing Notice and Combined Hearing Notice.**

52. The Conditional Disclosure Statement Hearing Notice and Combined Hearing Notice are APPROVED.

53. The form and proposed manner of service of the Conditional Disclosure Statement Hearing Notice, attached hereto as **Exhibit 16**, and Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 1**, provide due, proper, and adequate notice, comport with due process, and comply with all applicable Bankruptcy Rules and Bankruptcy Local Rules. No further notice is required or necessary.

25

54.     The Debtors are authorized to give supplemental publication notice of the Combined Hearing Notice in the *New York Times* as well as other publications, as the Debtors deem appropriate.

**Combined Hearing.**

55.     The Combined Hearing will begin on **July 28, 2026 at 9:00 a.m. (Central Time)**; *provided*, *however*, that the Combined Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court.

**Combined Objection Procedures.**

56.     The deadline to file an objection to the adequacy of the Disclosure Statement and/or confirmation of the Plan shall be **July 20, 2026 at 5:00 p.m. (Central Time)** (the "**Combined Objection Deadline**").

57.     Objections and responses, if any, to confirmation of the Plan, must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Bankruptcy Local Rules, and any order of the Court; (iii) set forth the name of the objecting party, the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; and (iv) provide the basis for the objection and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection.   Registered users of this Court's case filing system must electronically file their objections and responses on or before the Combined Objection Deadline.   All other parties in interest must file their objections and responses in writing, together with proof of service thereof, with the United States Bankruptcy Court Clerk's Office, United States Courthouse, 515 Rusk Avenue, Courtroom 402, 4th Floor, Houston, Texas 77002, on or before the Combined Objection Deadline.

58.     Pursuant to Bankruptcy Rule 3020(b), if no objection is timely filed, this Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.

59.     Objections to confirmation of the Plan that are not timely filed, served, and actually received in the manner set forth above shall not be considered and shall be deemed overruled.

60.     The Debtors and any parties in interest who support the Plan are authorized to file and serve replies or an omnibus reply to any such objections along with a brief in support of confirmation of the Plan (the "**Confirmation Brief**") either separately or in a single, consolidated document on or before **July 27, 2026**.

**Plan Supplement Notice and Plan Supplement Filing Deadline.**

61.     The Plan Supplement Notice is APPROVED.

62.     The form and proposed manner of service of the Plan Supplement Notice attached hereto as **Exhibit 17**, provide due, proper, and adequate notice, comport with due process, and comply with all applicable Bankruptcy Rules and Bankruptcy Local Rules.  No further notice is required or necessary.

63.     The FBG Debtors are authorized to file the Plan  Supplement  with  the  Court on or before **June 22, 2026** (the "**Plan Supplement Filing Deadline**").  The FBG Debtors are further authorized to serve the parties entitled to notice pursuant to Bankruptcy Rules 2002 and 3017 and Bankruptcy Local Rule 2002-1, including, but not limited to, holders of Claims in the Voting and Non-Voting Classes, Preference Settlement Eligible Creditors, holders of Administrative Expense Claims, subject to the exceptions set forth above, a copy of the Plan Supplement Notice, which sets forth (a) notice of the filing of the Plan Supplement, (b) a QR code which provides access to the Plan Supplement and related documents including the Plan and Disclosure Statement, (c) instructions regarding how to request a USB flash drive containing, or paper copies of, the

27

Plan, Plan Supplement, and Disclosure Statement, (d) the proposed Voting Deadline, Combined Objection Deadline, and Preference Settlement Opt-In Deadline, (e) procedures for filing objections and responses to confirmation of the Plan, (f) the time, date, and place for the Combined Hearing, (g) procedures for attending or otherwise participating in the Combined Hearing.

**General Provisions.**

64.     The Debtors are authorized to make non-substantive changes to the Disclosure Statement, the Plan, the Ballots, the Solicitation and Voting Procedures, the Combined Hearing Notice, the Notice of Non-Voting Status, the Release Opt-In Form, the Notice of Eligible Creditor Status, the Consent Program Op-In Form, the Preference Settlement Opt-In Form, the Litigation Trust Participation Notice, the DIP Collateral Trust Participation Notice, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages, Non-Voting Packages, Consent Program Materials, and Preference Settlement Materials, prior to mailing.

65.     Nothing contained in the Motion or this Order or any payment made pursuant to the authority granted by this Order is intended to be or shall be deemed as (i) an implication or admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any party in interest's rights under the Bankruptcy Code or any other applicable non-bankruptcy law, (iv) a waiver of the obligation of any party in interest to file a proof of claim, (v) an agreement or obligation to pay any Claims, (vi) a waiver of any Claims or causes of action which may exist against any creditor or interest holder, or (vii) an approval, assumption, adoption,

28

or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.

66.     Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

67.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

68.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Bankruptcy Local Rules are satisfied by such notice.

69.     The Debtors are authorized to take all steps necessary or appropriate to carry out the relief granted in this Order.

70.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: June 12, 2026

_____
Christopher Lopez
United States Bankruptcy Judge

**Exhibit 1**

**Form of Combined Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**NOTICE OF (I) CONDITIONAL APPROVAL OF**
**DISCLOSURE STATEMENT (II) APPROVAL OF (A) SOLICITATION**
**AND VOTING PROCEDURES, (B) ADMINISTRATIVE EXPENSE**
**CLAIMS CONSENT PROGRAM OPT-IN PROCEDURES,**
**(C) PREFERENCE SETTLEMENT OPT-IN PROCEDURES,**
**(III) COMBINED HEARING TO CONSIDER FINAL APPROVAL**
**OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN, AND**
**(IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR FINAL**
**APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN**

**TO ALL PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF:**

| Name of Debtors | Case Numbers | Name of Debtors | Case Numbers |
|---|---|---|---|
| Trico Technologies Corporation | 25-90396 (CML) | Carter Fuel Systems, LLC | 25-90422 (CML) |
| First Brands Group Holdings, LLC | 25-90397 (CML) | Carter Fuel Export, Inc. | 25-90423 (CML) |
| First Brands Group Intermediate, LLC | 25-90398 (CML) | Carter Carburetor Holdings, LLC | 25-90424 (CML) |
| First Brands Group, LLC | 25-90399 (CML) | Walbro Midco LLC | 25-90425 (CML) |
| Viceroy Private Capital, LLC | 25-90400 (CML) | UCI Acquisition Holdings (No. 4) LLC | 25-90426 (CML) |
| FRAMAuto Holdings, LLC | 25-90401 (CML) | WEM US Co. | 25-90427 (CML) |
| Autolite Operations LLC | 25-90402 (CML) | Dalton Corporation, Stryker Machining Facility Co. | 25-90428 (CML) |
| FRAM Group Operations LLC | 25-90403 (CML) | Reman Management International LLC | 25-90429 (CML) |
| FRAM Group IP LLC | 25-90404 (CML) | Walbro LLC | 25-90430 (CML) |
| Jasper Acquisition Corp. | 25-90405 (CML) | UCI-Airtex Holdings, Inc. | 25-90431 (CML) |
| Jasper Rubber Products, Inc. | 25-90406 (CML) | Carter Carburetor, LLC | 25-90432 (CML) |
| Specialty Pumps Group, Inc. | 25-90407 (CML) | Dalton Corporation, Ashland Manufacturing Facility | 25-90433 (CML) |
| ASC Industries, Inc. | 25-90408 (CML) | Airtex Industries, LLC | 25-90434 (CML) |
| Heatherton Holdings, LLC | 25-90409 (CML) | Smart Choice, LLC | 25-90435 (CML) |
| PHNX Acquisition Corp. | 25-90410 (CML) | KTRI Holdings, Inc. | 25-90436 (CML) |
| Hopkins Acquisition, Inc. | 25-90411 (CML) | Viper Acquisition, Inc. | 25-90437 (CML) |
| Hopkins Manufacturing Corporation | 25-90412 (CML) | Viper Acquisition I, Inc. | 25-90438 (CML) |
| Carrand Companies, Inc. | 25-90413 (CML) | Tridonex USA LLC | 25-90439 (CML) |
| Horizon Global Corporation | 25-90414 (CML) | Airtex Products, LP | 25-90440 (CML) |
| Horizon Global Company LLC | 25-90415 (CML) | Qualitor Acquisition Inc. | 25-90441 (CML) |
| Horizon Global Americas Inc. | 25-90416 (CML) | UCI Pennsylvania, Inc. | 25-90442 (CML) |
| Horizon International Holdings LLC | 25-90417 (CML) | Qualitor, Inc. | 25-90443 (CML) |
| Horizon Euro Finance LLC | 25-90418 (CML) | Global Reman Ventures, LLC | 25-90444 (CML) |
| Strongarm, LLC | 25-90419 (CML) | Champion Laboratories, Inc. | 25-90445 (CML) |
| Premier Marketing Group, LLC | 25-90420 (CML) | TAE Brakes, LLC | 25-90446 (CML) |
| AVM Export, Inc. | 25-90421 (CML) | Transportation Aftermarket Enterprise, LLC | 25-90447 (CML) |

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

| Name of Debtors | Case Numbers |
|---|---|
| APC Parent, LLC | 25-90448 (CML) |
| Universal Auto Filter LLC | 25-90449 (CML) |
| TAE China Holdings, Inc. | 25-90450 (CML) |
| International Brake Industries, Inc. | 25-90451 (CML) |
| APC Intermediate Holdings, LLC | 25-90452 (CML) |
| Qualitor Subsidiary H, Inc. | 25-90453 (CML) |
| CWD Intermediate Holdings I, LLC | 25-90454 (CML) |
| Qualitor Subsidiary S, Inc. | 25-90455 (CML) |
| Fuel Filter Technologies, Inc. | 25-90456 (CML) |
| IBI International Holding Company, Inc. | 25-90457 (CML) |
| CWD Intermediate Holdings II, LLC | 25-90458 (CML) |
| Longman Enterprises, Inc. | 25-90459 (CML) |
| Pylon Manufacturing Corp. | 25-90461 (CML) |
| CWD Holding, LLC | 25-90462 (CML) |
| Qualitor Automotive, LLC | 25-90463 (CML) |
| CWD, LLC | 25-90465 (CML) |
| Pylon South Bend, Inc. | 25-90467 (CML) |
| Qualis Enterprises, LLC | 25-90469 (CML) |
| KTRI Offshore Holdings, LLC | 25-90470 (CML) |
| BPI Acquisition Company, LLC | 25-90471 (CML) |
| Trico Products Corporation | 25-90472 (CML) |
| Qualis Automotive, L.L.C. | 25-90474 (CML) |

| Name of Debtors | Case Numbers |
|---|---|
| Trico Holding Corporation | 25-90476 (CML) |
| Brake Parts Inc LLC | 25-90477 (CML) |
| Toledo Molding & Die, LLC | 25-90478 (CML) |
| UCI International Holdings Parent Inc. | 25-90479 (CML) |
| BPI EC, LLC | 25-90480 (CML) |
| Dalton Corporation, Kendallville Manufacturing Facility | 25-90481 (CML) |
| Dalton Corporation, Warsaw Manufacturing Facility | 25-90482 (CML) |
| UCI International Holdings, Inc. | 25-90483 (CML) |
| Brake Parts Inc India LLC | 25-90484 (CML) |
| UCI International, LLC | 25-90485 (CML) |
| BPI Holdings International, LLC | 25-90486 (CML) |
| United Components, LLC | 25-90487 (CML) |
| Brake Parts Inc China LLC | 25-90488 (CML) |
| Eagle Machining, LLC | 25-90489 (CML) |
| Eagle Casting Holdings, LLC | 25-90490 (CML) |
| Eagle Casting, LLC | 25-90491 (CML) |
| Dalton Corporation | 25-90492 (CML) |
| Cardone Industries, Inc. | 25-90493 (CML) |
| SDC TX, LLC | 25-90494 (CML) |

## PLEASE TAKE NOTICE OF THE FOLLOWING:

1.     *Conditional Approval of Disclosure Statement*.  On [June] [12], 2026, the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") held a hearing (the "**Conditional Disclosure Statement Hearing**") at which it conditionally approved the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on [●], 2026 (Docket No. [●]) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Disclosure Statement**") of First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**"), and thereafter entered an order (Docket No. [●]) (the "**Disclosure Statement Order**") with respect thereto.  The Disclosure Statement Order, among other things, authorizes the FBG Debtors to solicit votes to accept the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on [●], 2026 (Docket No. [●]) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**").[2]

2.     *Combined Hearing*.  A hearing to consider confirmation of the Plan and final approval of the Disclosure Statement (the "**Combined Hearing**") has been scheduled for [●] **(Central Time)** before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, in the Bankruptcy Court.  The Combined Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by a Bankruptcy Court announcement providing for such adjournment or continuation on its agenda.  The Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing.

3.     *Voting Record Date*.  Holders of Claims in Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), Class 5 (Second Lien Claims), Class 6 (ABL Claims), Class 7 (General Unsecured Claims), and Class 8 (Subordinated Claims) who are otherwise eligible to vote shall be entitled to vote to accept or reject the Plan as of June 15, 2026 (the "**Voting Record Date**").

4.     *Voting Deadline*.  If you received a Solicitation Package, including a Ballot, and intend to vote on the Plan, you must: (i) follow the instructions carefully; (ii) complete all of the required information on the Ballot; and (iii) execute and return your completed Ballot according to and as set forth in detail in the voting instructions on your Ballot so that it is actually received by the Debtors' solicitation and voting agent, Kroll Restructuring Administration LLC ("**Kroll**" or the "**Voting Agent**") on or before **July 20, 2026 at 5:00 p.m. (Central Time)** (the "**Voting Deadline**").  **ANY FAILURE TO FOLLOW THE VOTING INSTRUCTIONS INCLUDED WITH YOUR BALLOT MAY DISQUALIFY YOUR BALLOT AND YOUR VOTE.**

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, Disclosure Statement, or Disclosure Statement Order, as applicable.

2

5.      ***Parties in Interest Not Entitled to Vote***.  Holders of Claims or Interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 9 (Intercompany Claims), and Class 10 (FBG Debtor Interests) are not entitled to vote on the Plan and will not receive a Ballot.  Holders of DIP A Claims, Claims in Class 1 (Other Priority Claims), and Claims in Class 2 (Other Secured Claims), will receive a Notice of Non-Voting Status and Release Opt-In Form to opt in to the Third-Party Releases set forth in the Plan.  Holders of Claims in Class 9 (Intercompany Claims) and Class 10 (FBG Debtor Interests) are either Plan proponents or are controlled by Plan proponents and have waived receipt of any solicitation-related notices or materials.

6.      ***Rule 3018 Motions***.  If any creditor (i) seeks to vote on the Plan but such holder's Claim is not listed on the FBG Debtors' Schedules, books and records, and the holder did not file a proof of claim; (ii) seeks to vote in a different amount than is reflected on the FBG Debtors' Schedules, books and records, or filed Proof of Claim, or (iii) is a holder of a Claim that is subject to an objection, a request for estimation, or an adversary proceeding as of July 3, 2026 at 5:00 p.m. (Central Time), (such Claim, a "**Potentially Disallowed Claim**"), such creditor must file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes (a "**Rule 3018(a) Motion**") to vote on the Plan.  Any Rule 3018(a) Motion must be filed with the Court not later than **July 10, 2026 at 5:00 p.m. (Central Time)**.  Upon the filing of any such Rule 3018(a) Motion, such creditor will receive a Provisional Ballot, which shall be tabulated in accordance with the guidelines provided in the Solicitation and Voting Procedures attached as **Exhibit 2** to the Disclosure Statement Order.

7.      ***Administrative Expense Claims Consent Program***.  If you are the holder of an Administrative Expense Claim, if the Plan is confirmed, you will receive a Consent Program Opt-In Form following the Confirmation Date.  If you intend to opt in to the Administrative Expense Claims Consent Program, you must:  (i) follow the instructions carefully; (ii) complete all of the required information on the Consent Program Opt-In Form; and (iii) timely execute and return your completed Consent Program Opt-In Form according to and as set forth in detail in the voting instructions on your Consent Program Opt-In Form so that it is actually received by Kroll by **5:00 p.m. (Central Time) on the date that is sixty (60) days following the Confirmation Date** (the "**Consent Program Opt-In Deadline**").  Information on the Administrative Expense Claims Consent Program is located in Sections I.C and I.D of the Disclosure Statement.

8.      ***Preference Settlement Opt-In Deadline***.  If you are a Trade Creditor, Supply Chain Financer, or Factor of one or more FBG Debtors (collectively, "**Preference Settlement Eligible Creditors**") and you receive a Preference Settlement Opt-In Form and intend to participate in the Preference Settlement, you must:  (i) follow the instructions carefully; (ii) complete all of the required information on the Preference Settlement Opt-In Form; and (iii) timely execute and return your completed Preference Settlement Opt-In Form according to and as set forth in detail in the instructions on your Preference Settlement Opt-In Form so that it is actually received by Kroll on or before **5:00 p.m. (Central Time) on the date that is forty-five (45) days after the Confirmation Date** (the "**Preference Settlement Opt-In Deadline**"); *provided* that if a Preference Action is brought against a Trade Creditor that did not timely opt in to the Preference Settlement, such Trade Creditor shall have an additional thirty (30) days following service of the Preference Action to opt in to the Preference Settlement.  To the extent you are a Preference Settlement Eligible Creditor and you timely, properly, and affirmatively elect to participate in the Preference Settlement, you will be an Preference Settlement Electing Creditor under the Plan, and you will: (i) grant the releases contained in Section 13.5(b) of the Plan; (ii) contribute your Direct Creditor Claims to the Litigation Trust; and (iii) participate in, and receive the benefit of, the Preference Settlement, including, if you are (a) a Trade Creditor, you will be released from Preference Actions and (b) a Supply Chain Financer or a Factor, you will receive the benefit of the Modified New Value Elements, as described in more detail in Section 6.11(e) of the Plan.  **ANY FAILURE TO FOLLOW THE INSTRUCTIONS INCLUDED WITH YOUR PREFERENCE SETTLEMENT OPT-IN FORM MAY DISQUALIFY YOUR OPT-IN ELECTION.**

9.      ***Objections to Confirmation***.  The deadline to object or respond to confirmation of the Plan or final approval of the Disclosure Statement is **July 20, 2026 at 5:00 p.m. (Central Time)** (the "**Combined Objection Deadline**").

10.     ***Form and Manner of Objections***.  Objections and responses, if any, to confirmation of the Plan or final approval of the Disclosure Statement, must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Bankruptcy Local Rules, and any order of the Court; (iii) set forth the name of the objecting party and the nature and

2

amount of Claims or Interests held or asserted by the objecting party; (iv) provide the basis for the objection and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed with the Bankruptcy Court (with proof of service) via ECF or by mailing to the Bankruptcy Court at United States Bankruptcy Court Clerk's Office, United States Courthouse, 515 Rusk Avenue, Courtroom 402, 4th Floor, Houston, Texas 77002, so as to be actually received no later than the Combined Objection Deadline.

11.     **IF AN OBJECTION TO CONFIRMATION OF THE PLAN OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THEN THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT OR THE ADEQUACY THEREOF AND MAY NOT BE HEARD AT THE COMBINED HEARING.**

12.     *Additional Information*.  Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement, the Plan, or other solicitation materials should contact Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Interested parties may also review and download the Disclosure Statement and the Plan free of charge at https://restructuring.ra.kroll.com/FirstBrands.  In addition, the Disclosure Statement and the Plan are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: https://www.txs.uscourts.gov/.  Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website.  A PACER password can be obtained at: https://pacer.uscourts.gov/.

13.     You may also access electronic copies of the Plan, Disclosure Statement, and any other solicitation materials via the QR Code below.  Please be advised that Kroll cannot provide legal advice.



**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED. UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS COMBINED HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**QUESTIONS:**

If you have questions about this Combined Hearing Notice, please contact Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line, or (d) visiting https://restructuring.ra.kroll.com/FirstBrands.

Dated: [●], 2026
     Houston, Texas

                            /s/ DRAFT
                            WEIL, GOTSHAL & MANGES LLP
                            Gabriel A. Morgan (24125891)
                            Clifford W. Carlson (24090024)
                            700 Louisiana Street, Suite 3700
                            Houston, Texas 77002
                            Telephone:  (713) 546-5000
                            Facsimile:  (713) 224-9511
                            Email:   gabriel.morgan@weil.com
                                            clifford.carlson@weil.com

                            -and-

                            WEIL, GOTSHAL & MANGES LLP
                            Matthew S. Barr (admitted *pro hac vice*)
                            Sunny Singh (admitted *pro hac vice*)
                            Andriana Georgallas (admitted *pro hac vice*)
                            Kevin Bostel (admitted *pro hac vice*)
                            Jason H. George (admitted *pro hac vice*)
                            767 Fifth Avenue
                            New York, New York 10153
                            Telephone:  (212) 310-8000
                            Facsimile:  (212) 310-8007
                            Email:   matt.barr@weil.com
                                            sunny.singh@weil.com
                                            andriana.georgallas@weil.com
                                            kevin.bostel@weil.com
                                            jason.george@weil.com

                            *Attorneys for Debtors*
                            *and Debtors in Possession*

4

**Exhibit 2**

**Form of Solicitation and Voting Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

**SOLICITATION AND VOTING PROCEDURES**

**PLEASE TAKE NOTICE** that on September 24, 2025 and September 28, 2025 First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above captioned chapter 11 cases (collectively, the "**Debtors**"), each filed a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 9, 2025, the U.S. Trustee appointed an official committee of unsecured creditors. On December 16, 2025, the U.S. Trustee appointed Martin De Luca as the examiner in these chapter 11 cases. A chapter 11 trustee has not been appointed. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

**PLEASE TAKE FURTHER NOTICE** that on [●], 2026, the Court entered the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan, (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing, (III) Establishing Solicitation and Voting Procedures, (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt-In procedures, (V) Establishing Preference Settlement Opt-In Procedures, (VI) Establishing Notice and Objection Procedures for Confirmation of Plan, and (VII) Granting Related Relief* (Docket No. [●]) (the "**Disclosure Statement Order**"), which, among other things, (i) authorized First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") to solicit votes on the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. [●]) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**"), and (ii) conditionally approved the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. [●]) (including any

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

1

exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Disclosure Statement**").[2]

## A.    Parties Entitled to Vote.

Holders of Claims in Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), Class 5 (Second Lien Claims), Class 6 (ABL Claims), Class 7 (General Unsecured Claims), and Class 8 (Subordinated Claims) are Impaired and entitled to receive distributions under the Plan and, thus, may vote to accept or reject the Plan, subject to certain exceptions discussed below (each, a "**Voting Class**," and collectively, the "**Voting Classes**").   The "Holders of Claims" who comprise and therefore will receive Solicitation Packages in (i) Class 7 (General Unsecured Claims) will be determined by the FBG Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (together, the "**FBG Debtors' Schedules**"), the FBG Debtors' books and records, and proofs of claim filed against the FBG Debtors, each as of the Voting Record Date (as defined below) and (ii) Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), Class 5 (Second Lien Claims), and Class 6 (ABL Claims) will be determined by the loan registers provided by the applicable administrative agent, as of the Voting Record Date.

A holder of a Claim in a Voting Class is nonetheless not entitled to vote to the extent that:

(a)    as of the Voting Record Date, the outstanding amount of such creditor's Claim is zero ($0.00);

(b)    as of the Voting Record Date, such holders' Claim has been disallowed, expunged, disqualified or suspended;

(c)    such creditor has not filed a Proof of Claim against the FBG Debtors and the FBG Debtors (1) have not scheduled such creditor's Claim, (2) have scheduled such creditor's Claim at a $0.00 amount, and (3) have not otherwise identified such Claim on review of the FBG Debtors' books and records; *provided that*, such creditor may file a motion pursuant to Bankruptcy Rule 3018(a) seeking temporary allowance of such Claim for voting purposes (a "**Rule 3018(a) Motion**") subject to the procedures below; *provided further* that to the extent that such creditor's deadline to file a Claim against the FBG Debtors arising from any rejection of an Executory Contract or Unexpired Lease to which such creditor is party has not yet occurred, such creditor will be entitled to vote in the amount of $1.00 on account of such Claim; or

(d)    such creditor's Claim is subject to an objection, a request for estimation, or an adversary proceeding as of **July 3, 2026 at 5:00 p.m. (Central Time)**, (such Claim, a "**Potentially Disallowed Claim**"); *provided* that, any such holder of a Potentially Disallowed Claim shall receive a Ballot (such Ballot,

---

[2]    Capitalized terms not otherwise defined herein have the same meaning as set forth in the Disclosure Statement Order, Plan, or Disclosure Statement, as applicable.

a "**Provisional Ballot**").[3]   Provisional Ballots will be tabulated in accordance with the procedures described below.

With respect to transfers of Claims required to be filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package (as defined below) and, if the holder of such Claim is otherwise entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if: (i) all actions necessary to transfer such Claim are completed by the Voting Record Date; or (ii) the transferee files with the Court, by the Voting Record Date, (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the holder of such Claim as of the Voting Record Date.

Where any portion of a single Claim has been transferred to a transferee and notice of such transfer is required to be filed pursuant to Bankruptcy Rule 3001(e), all holders of any portion of such single Claim may be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code, and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan.  In the event that: (a) a Ballot; (b) a group of Ballots within a Voting Class received from a single creditor; or (c) a group of Ballots received from the various holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots may not be counted in the FBG Debtors' discretion.

**B.     Parties Not Entitled to Vote.**

Holders of Claims in Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) (collectively, the "**Unimpaired Non-Voting Classes**") will: (i) receive full recovery of their Allowed Claims under the Plan; or (ii) otherwise receive treatment as to render such holder's Claim Unimpaired.  Pursuant to section 1126(f) of the Bankruptcy Code, the holders of such Claims in Class 1 and Class 2 are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote on the Plan.

Holders of Claims in Class 9 (Intercompany Claims) and holders of Interests in Class 10 (FBG Debtor Interests) (together with the Unimpaired Non-Voting Classes, the "**Non-Voting Classes**") are Impaired and are either plan proponents or controlled by plan proponents and are therefore conclusively presumed to accept the Plan.  Accordingly, the FBG Debtors are not required to serve holders of Claims in Class 9 (Intercompany Claims) and holders of Interests in Class 10 (FBG Debtor Interests) copies of any of the Materials described herein.

**C.     Record Dates.**

The Court has established **June 15, 2026** as the record date for purposes of determining (i) which holders of Claims in the Voting Classes are entitled to vote on the Plan, and

---

[3]   To the extent the holder previously received a Ballot from the Voting Agent, that Ballot received by the holder will be deemed a Provisional Ballot.

3

(ii) which holders of Claims and Interests in the Non-Voting Classes are entitled to receive a Notice of Non-Voting Status (the "**Voting Record Date**").

The Court has established **June 15, 2026** as the record date for purposes of determining which Preference Settlement Eligible Creditors are entitled to receive the Preference Settlement Opt-In Form (the "**Preference Settlement Record Date**").

The Court has established **July 10, 2026** as the record date for purposes of determining which holders of Administrative Expense Claims are entitled to receive the Consent Program Opt-In Form (the "**Administrative Claims Record Date**").

D.      **Establishing Claim Amounts for Voting Purposes.**

**Roll-Up Claims (Class 3)**.  The amount of each Roll-Up Claim, for voting purposes only, will be established by reference to the list of DIP Lenders to the DIP Credit Agreement and those DIP Lenders' corresponding Roll-Up Claim amounts as of the Voting Record Date, as reflected on the loan register maintained by the administrative agent under the DIP Credit Agreement, which shall be provided by the such administrative agent to the FBG Debtors and the Voting Agent (as defined below) no later than one (1) Business Day following the Voting Record Date.

**First Lien Claims (Class 4)**.  The amount of each First Lien Claim, for voting purposes only, will be established by reference to the list of lenders to the First Lien Term Loan Agreement and the Side-Car Term Loan Agreement and those lenders' corresponding First Lien Claim amounts as of the Voting Record Date, as reflected on the loan register maintained by the administrative agents under the agreements, which shall be provided by such administrative agents to the FBG Debtors and the Voting Agent no later than one (1) Business Day following the Voting Record Date.

**Second Lien Claims (Class 5)**.  The amount of each Second Lien Claim, for voting purposes only, will be established by reference to the list of lenders to the Second Lien Term Loan Agreement and those lenders' corresponding Second Lien Claim amounts as of the Voting Record Date, as reflected on the loan register maintained by the administrative agent under the agreement, which shall be provided by such administrative agent to the FBG Debtors and the Voting Agent no later than one (1) Business Day following the Voting Record Date.

**ABL Claims (Class 6)**.  The amount of each ABL Claim,[4] for voting purposes only, will be established by reference to the list of ABL Lenders to the ABL Credit Agreement and those ABL Lenders' corresponding ABL Claim amounts as of the Voting Record Date, as reflected on the loan register maintained by the administrative agent under the ABL Credit Agreement to the FBG Debtors and the Voting Agent no later than one (1) Business Day following the Voting Record Date.

---

[4]     For the avoidance of doubt, the Allowed amount of the ABL Claim for voting purposes shall exclude U.S. Bank Obligations (as defined in the Final DIP Order).

**General Unsecured Claims (Class 7)**.  Except as otherwise provided herein and solely to the extent a holder is entitled to vote under these procedures, the amount of each General Unsecured Claim in Class 7, for voting purposes only, shall be established pursuant to the following hierarchy:

(a)    if a Claim has been estimated or otherwise Allowed for voting purposes by order of the Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Court;

(b)    if (a) does not apply, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement in writing reached between the FBG Debtors and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed against the FBG Debtors in the amount set forth in the stipulation, settlement, or other agreement;[5]

(c)    if neither (a) nor (b) applies, then in the liquidated, non-contingent, and undisputed amount set forth on a Proof of Claim filed against the FBG Debtors as of the Voting Record Date; *provided that*, if the amount set forth on a submitted Proof of Claim filed against the FBG Debtors is wholly unliquidated, contingent, and/or disputed (as determined on the face of the Claim or based on reasonable review by the FBG Debtors and/or the Voting Agent), then the Claim shall be temporarily Allowed for voting purposes in the amount of $1.00;

(d)    if neither (a), (b), nor (c) applies, then in the liquidated, non-contingent, and undisputed amount set forth on the FBG Debtors' Schedules; *provided that*, if the Claim appearing on the FBG Debtors' Schedules is either contingent, unliquidated, and/or disputed, or in a $0.00 amount and the claimant has not filed a Proof of Claim against the FBG Debtors, then the Claim shall be disallowed for voting purposes;[6] *provided further*, that, to the extent such creditor's deadline to file a Claim arising from the rejection of an Executory Contract or Unexpired Lease has not yet occurred before the Voting Record Date, such creditor will be entitled to vote in the amount of $1.00 on account of such Claim;[7]

(e)    notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class may be provided with only one Solicitation Package and one Ballot for voting

---

[5]    For solicitation and/or tabulation purposes, the Voting Agent may rely on an e-mail from Debtor or Debtors' counsel (with the creditor or creditor's counsel copied thereto) informing the Voting Agent of such agreed-upon treatment of a Claim for voting purposes.

[6]    For the avoidance of doubt, such holder may file a Rule 3018(a) Motion seeking to temporarily allow its Claim for voting purposes.

[7]    For the avoidance of doubt, a holder of a Claim from the rejection of an Executory Contract or Unexpired Lease, will be entitled to vote such Claim only if the holder filed such Claim by the Voting Record Date.

5

on a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; and

(f)      if a Proof of Claim has been amended by a later Proof of Claim that is filed against the FBG Debtors, the later filed amended Proof of Claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed Proof of Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended claim.

**Subordinated Claims (Class 8)**.  The amount of each Subordinated Claim, for voting purposes only, will be established by reference to a Final Order entered pursuant to section 510(c) of the Bankruptcy Code by the Court.

### E.      Rule 3018(a) Motions and Potentially Disallowed Claims Procedures

#### Rule 3018(a) Motions

If a holder (i) seeks to vote on the Plan but such holder's Claim is not listed on the FBG Debtors' Schedules, books and records, and the holder did not file a Proof of Claim; (ii) seeks to vote in a different amount than is reflected on the FBG Debtors' Schedules, books and records, or filed proof of claim, or (iii) is a holder of a Potentially Disallowed Claim, such creditor must file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes (a "**Rule 3018(a) Motion**") to vote on the Plan.  Any Rule 3018(a) Motion must be filed with the Court so as to be actually received not later than **July 10, 2026, at 5:00 p.m. (Central Time)**.

Upon the filing of any such Rule 3018(a) Motion, such holder will receive a Provisional Ballot.  Each Provisional Ballot, like each Ballot, will contain the Third-Party Release Opt-In Election for such holder to check to opt in to the releases contained in Section 13.5(b) of the Plan (the "**Third-Party Releases**").  Each holder who receives a Provisional Ballot will not be a Releasing Party under the Plan unless the holder properly, timely, and affirmatively checks to opt in to the Third-Party Releases through the Third-Party Release Opt-In Election on the Provisional Ballot.  A holder's Provisional Ballot will only be tabulated if the Court grants the relief requested in such holder's Rule 3018(a) Motion, or as agreed between the FBG Debtors and such holder prior to the Voting Deadline subject to the guidelines for Potentially Disallowed Claims described below.

To the extent such holder does not file a Rule 3018 Motion in accordance with the instructions set forth above, the holder's Provisional Ballot will not be counted for voting purposes; however, any opt in election made by such holder on its Ballot with respect to the Third-Party Releases contained in the Plan shall be valid so long as such Ballot is submitted in accordance with the procedures set forth herein.

#### Potentially Disallowed Claims

A holder's Potentially Disallowed Claim shall be temporarily disallowed for voting purposes, except as ordered by the Court or agreed to by the FBG Debtors and such holder before the Voting Deadline; *provided*, *however*, that, if the FBG Debtors' objection seeks only to

6

reclassify or reduce the Allowed amount of such Claim, then such Claim is temporarily Allowed for voting purposes in the reduced amount and/or as reclassified (as applicable), except as may be ordered by the Court before or concurrent with, entry of an order confirming the Plan; *provided*, *further*, that if the FBG Debtors' objection seeks only to disallow a Proof of Claim purportedly filed on behalf of a class of claimants, then such Claim is temporarily Allowed for voting purposes only as to the individual that filed such Proof of Claim and not as to the class of claimants on behalf of which such Proof of Claim was filed.

**F.      Form, Content, and Manner of Notices.**

> ### Voting Agent

The Debtors have retained Kroll Restructuring Administration LLC ("**Kroll**" or the "**Voting Agent**") as their claims, noticing, and solicitation agent pursuant to the *Order Authorizing Employment and Retention of Kroll Restructuring Administration LLC as Claims, Noticing, and Solicitation Agent* (Docket No. 12).  Pursuant to the Disclosure Statement Order, Kroll is authorized to assist the FBG Debtors in (i) distributing the applicable Solicitation Packages, (ii) distributing the Notice of Non-Voting Status and the Release Opt-In Forms as applicable, (iii) distributing Consent Program Materials, (iv) distributing Preferences Settlement Materials, (v) collecting, processing, and reporting on Consent Program Opt-In Forms, (vi) collecting, processing, and reporting Preference Settlement Opt-In Forms, (vii) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by holders of Claims, (viii) receiving, tabulating, and reporting on Release Opt-In Forms cast to opt in to the Third-Party Releases, (iv) responding to inquiries from holders of Claims or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, Non-Voting Packages, Preference Settlement Materials, Consent Program Materials, and all other related documents (collectively, the "**Materials**") and matters related thereto, or the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, including the procedures and requirements to opt in to Third-Party Releases, (x) soliciting votes on the Plan, and (xi) if necessary or appropriate, contacting creditors and equity holders regarding the Materials and matters related thereto.

> ### The Solicitation Package

The following materials shall constitute the Solicitation Package:

(a)      the Disclosure Statement Order, as entered by the Court and without attachments;

(b)      the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;

(c)      the Combined Hearing Notice (annexed as **Exhibit 1** to the Disclosure Statement Order);

(d)      Solicitation and Voting Procedures (annexed as **Exhibit 2** to the Disclosure Statement Order);

7

(e)     the applicable Ballot customized (where possible and appropriate) for such holder and conforming to Official Bankruptcy Form No. B 314, in the form described below;[8]

(f)     for holders of Claims in Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), and Class 5 (Second Lien Claims) the notice setting forth, among other things, the procedures for such holders to certify, elect, and participate in the Litigation Trust (annexed as **Exhibit 13** to the Disclosure Statement Order) (the "**Litigation Trust Participation Notice**");

(g)     for holders of Claims in Class 7 (General Unsecured Claims), the letter from the Creditors' Committee setting forth, among other things, that the Creditors' Committee recommends that holders of General Unsecured Claims against the FBG Debtors vote to accept the Plan and supports confirmation of the Plan (annexed as **Exhibit 15** to the Disclosure Statement Order) (the "**Creditors' Committee Position Letter**"); and

(h)     a postage-prepaid return envelope.

**Distribution of Materials**

The Solicitation Packages, Non-Voting Packages, the Consent Program Materials, and the Preference Settlement Materials shall provide the Plan, the Disclosure Statement, and the Disclosure Statement Order (without exhibits, except the Solicitation and Voting Procedures annexed thereto as **Exhibit 2**) in electronic format (via a QR code included in the Combined Hearing Notice) instead of printed hard copies. Only the Ballots, Preference Settlement Opt-In Forms, Consent Program Opt-In Forms, Combined Hearing Notice, Notice of Non-Voting Status, Release Opt-In Form, and return envelopes will be provided in paper format. Moreover, the Plan and the Disclosure Statement will be available at no charge via the internet at the Online Portal (as defined below). If service by QR code imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (*e.g.*, the party does not own or have access to a smartphone), such party may request a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and Disclosure Statement Order (without attachments, except as otherwise provided herein) by contacting Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line. Upon receipt of such request, in a timely manner, the Debtors will provide such party with a such party may request a USB flash drive containing, or a paper copy of, the Plan, Disclosure Statement, and Disclosure Statement Order (without attachments, except as otherwise provided herein) at no cost to the party.

---

[8]    Official Bankruptcy Form No. B 314 can be found at http://www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts.

The FBG Debtors shall mail applicable Materials to holders of Claims and Interests as of the Voting Record Date, Administrative Claims Record Date, and Preference Settlement Record Date on or before the date that is three (3) Business Days after entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter (the "**Mailing Deadline**"). The FBG Debtors will also provide complete Solicitation Packages (excluding Ballots) to the U.S. Trustee and all parties in interest required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-1.

The Voting Agent will serve the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice to holders of Claims entitled to receive such notices, pursuant to the Disclosure Statement Order. The information elicited from holders by the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice, however, will not be collected or processed by the Voting Agent. The method of submission and collection of the Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice will be as set forth in the respective notices. The Litigation Trust Participation Notice and the DIP Collateral Trust Participation Notice are subject to different dates and deadlines than other documents in the Solicitation Packages such as the Litigation Trust Distribution Record Date and DIP Collateral Trust Distribution Record Date of **June 22, 2026 (which date may be extended by mutual agreement among the FBG Debtors and Ad Hoc Group)**, and the Litigation Trust Interest Response Deadline and DIP Collateral Trust Interest Response Deadline of **July 13, 2026 (which date may be extended by mutual agreement among the FBG Debtors and Ad Hoc Group)**, affecting the rights of the recipient holders of such notices.

In the event that the United States Postal Service returns any mailings as undeliverable, the Debtors are excused from mailing the applicable Materials to addresses from which the Debtors received mailings returned as undeliverable. For purposes of serving the Materials, the Debtors may rely on the address information for the holders of Claims, including Preference Settlement Eligible Creditors, as compiled, updated, and maintained by the Voting Agent, the Debtors, and/or the administrative agents(s), as of the Voting Record Date, Administrative Claims Record Date, and Preference Settlement Record Date. The Debtors and the Voting Agent are not required to conduct any additional research for updated addresses based on undeliverable Materials (including Ballots) and will not be required to resend Materials that are returned as undeliverable unless the Debtors are provided with accurate addresses for such parties prior to the Voting Record Date, Administrative Claims Record Date, and Preference Settlement Record Date.

The Debtors are not required to mail Solicitation Packages to creditors or interest holders (i) on account of Claims or Interests that have already been paid in full during the Chapter 11 Cases, (ii) on account of Claims or Interests that are clearly duplicative based on the review and determination of the Debtors and/or the Voting Agent, (iii) whose prior mailings in these chapter 11 cases were returned as undeliverable and who have not provided a forwarding address to the Debtors and/or the Voting Agent by the Voting Record Date, (iv) who hold Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 9 (Intercompany Claims), and Class 10 (FBG Debtor Interests), and/or (v) who are not otherwise entitled to vote to accept or reject the Plan in accordance with the terms and provisions of these Solicitation and Voting Procedures.

9

To avoid duplication and reduce expenses, the Debtors will use commercially reasonable efforts to ensure that each holder entitled to receive Materials only receives one copy of the Materials (and therefore, one Ballot), as applicable.

### Forms of Ballots

Holders of Claims in the Voting Classes that are eligible to vote (as set forth herein) shall receive ballots substantially in the forms attached to the Disclosure Statement Order as **Exhibits 3-8** (the "**Ballots**"), as applicable.[9]  All Ballots sent to holders of Claims in the Voting Classes will include a box for holders to check to opt in to the Third-Party Releases contained in Section 13.5(b) of the Plan (the "**Third-Party Release Opt-In Election**").

Holders of Claims in the Voting Classes that properly and timely elect to opt in to the Third-Party Releases will be Releasing Parties under the Plan.  Holders of Claims in the Voting Classes that (i) vote to accept or reject the Plan and do not timely, properly, and affirmatively elect to opt in to the Third-Party Releases, or (ii) do not vote either to accept or reject the Plan and do not timely, properly, and affirmatively elect to opt in to the Third-Party Release, will not be a Releasing Party, except as otherwise provided in the Plan.

### Voting Deadline

The Court has established **July 20, 2026 at 5:00 p.m. (Central Time)** as the deadline to submit votes to accept or reject the Plan (the "**Voting Deadline**").  The Debtors may extend the Voting Deadline, in their discretion, without further order of the Court.  To be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and timely delivered to the Voting Agent:  (i) by first-class mail in the return envelope provided with each Ballot; (ii) by overnight mail; (iii) by hand delivery, or (iv) via E-Ballot through the Online Portal, so that (in each instance) it is **actually received** by the Voting Agent no later than the Voting Deadline.

The Voting Agent is authorized to accept Ballots through the Online Portal. The encrypted Ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

Holders of Claims submitting their Ballots in hard copy to the Voting Agent shall mail or deliver them to the following address:

---

[9]   Kroll is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon, Kroll is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials including unused copies of the Solicitation Package; and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

First Brands Group, LLC Ballot Processing
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery, email FirstBrandsBallots@ra.kroll.com (with "First Brands Ballot Delivery" in the subject line) at least twenty-four (24) hours prior to arrival at the Kroll address above and provide the anticipated date and time of delivery.

Holders of Claims in the Voting Classes must not submit their Ballots to the Voting Agent by e-mail or facsimile.  Any Ballots received by the Voting Agent by e-mail or facsimile will be deemed invalid and excluded from the final tabulation.

In all instances, holders should consult their Ballot for specific instructions regarding submission of their votes and any elections.  The manner of Ballot submission is at the election and risk of the holders of Claims in the Voting Classes who vote on the Plan.  Regardless of the manner of submission, to be counted, Ballots must be **actually, timely, and properly received** by the Voting Agent by the Voting Deadline.  The Debtors strongly recommend submitting electronic Ballots through the Online Portal.

### Notice of Non-Voting Status and Release Opt-In Forms

Holders of Claims in the Unimpaired Non-Voting Classes, and holders of DIP A Claims, will receive Non-Voting packages which will include the: (i) the Combined Hearing Notice, (ii) a Notice of Non-Voting Status substantially in the form attached to the Disclosure Statement Order as **Exhibit 9** (the "**Notice of Non-Voting Status**"), and (iii) a Release Opt-In Form (as defined below).  Holders of DIP A Claims will also receive the Litigation Trust Participation Notice attached to the Disclosure Statement Order as **Exhibit 13** and the DIP Collateral Trust Participation Notice attached to the Disclosure Statement Order as **Exhibit 14**.

The Notice of Non-Voting Status provides (i) notice of the Court's conditional approval of the Disclosure Statement, (ii) notice of the filing of the Plan and Disclosure Statement, (iii) notice of the holders' non-voting status, and (iv) information about how to obtain copies of the Disclosure Statement and the Plan.  In addition, the Notice of Non-Voting Status contains the full text of the release, exculpation, and injunction provisions set forth in Article XIII of the Plan and advises receiving holders that they may elect to opt in to the Third-Party Releases under the Plan by the Release Opt-In Form.

The FBG Debtors shall cause to be mailed a Release Opt-In Form, substantially in the form attached to the Disclosure Statement Order as **Exhibit 10** (the "**Release Opt-In Form**"), to holders of Claims in the Unimpaired Non-Voting Classes, and holders of DIP A Claims. Holders that properly, timely, and affirmatively elect on the Release Opt-In Form to opt in to the Third-Party Releases will be Releasing Parties under the Plan.  Holders that do not properly, timely, and affirmatively elect on the Release Opt-In Form to opt in to the Third-Party Releases will not be Releasing Parties under the Plan, except as otherwise provided in the Plan.  **For the avoidance of doubt, if you (i) are a Preference Settlement Electing Creditor, (ii) opt in to the**

11

**Third-Party Releases in the Release Opt-In Form, and/or (iii) opt in to the Third-Party Releases in your Ballot, you are a Releasing Party.**

An encrypted opt in data and audit trail will be created through the electronic submission process and become part of the record of any opt in election submitted in this manner. Additionally, any holder's electronic signature will be deemed to be legally valid and effective immediately.   For the avoidance of doubt, the Voting Agent's online portal at https://restructuring.ra.kroll.com/FirstBrands (the "**Online Portal**") is the sole method for holders to transmit the Release Opt-In Form electronically.  All Release Opt-In Forms must be properly completed and returned so as to be **actually received** by the Voting Agent by **July 20, 2026 at 5:00 p.m. (Central Time)** (the "**Release Opt-In Deadline**") either by (i) delivering the Release Opt-In Form to the Voting Agent by first-class mail, hand delivery, or overnight courier or (ii) submitting the Release Opt-In Form by electronic, online transmission through the Online Portal, each in accordance with the instructions included on the Release Opt-In Form.

### Consent Program Materials

The following materials shall constitute the Consent Program Materials:

(a)     the Disclosure Statement Order, as entered by the Court and without attachments;

(b)     the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;

(c)     the Combined Hearing Notice (annexed as **Exhibit 1** to the Disclosure Statement Order); and

(d)     Solicitation and Voting Procedures, (annexed as **Exhibit 2** to the Disclosure Statement Order).

The Voting Agent shall cause to be mailed the Consent Program Materials, to holders of Administrative Expense Claims by the Mailing Deadline.  Any holder of a Claim who believes it is entitled to receive Consent Program Materials and does not receive such materials before the Voting Deadline, may email Kroll at FirstBrandsInfo@ra.kroll.com with "Consent Program Materials Request."

The Voting Agent shall cause to be mailed the Consent Program Opt-In Form and postage prepaid return envelope to holders of Administrative Expense Claims following the Confirmation Date.  Any holder of a Claim who believes it is entitled to receive Consent Program Materials, and does not receive such materials before the Voting Deadline, may email Kroll at FirstBrandsBallots@ra.kroll.com with "Consent Program Materials Request."   If after the Confirmation Date, a holder believes it is entitled to receive the Consent Program Opt-In Form, and does not receive a Consent Program Opt-In Form, such holder should contact the Claims Ombudsman.

A holder of an Administrative Expense Claim that opts in to the Administrative Expense Claims Consent Program will have a Settled Administrative Expense Claim deemed

12

Allowed in an amount equal to fifty percent (50%) of the reconciled amount set forth in the Consent Program Opt-In Form, or as otherwise agreed by the FBG Debtors or Claims Ombudsman and such holder, and will receive distributions from the Litigation Trust in accordance with the Litigation Trust Waterfall, first within the Class 3 Litigation Trust Interests distributions, which follow the satisfaction of the Second Return Threshold of $350,000,000 in aggregate Litigation Trust distributions.  Holders of Administrative Expense Claims that do not opt in will receive distributions from the Litigation Trust in accordance with the Litigation Trust Waterfall, after Settled Administrative Expense Claims but before Other Priority Claims, Priority Tax Claims, Roll-Up Claims, First Lien Claims, Second Lien Claims, and General Unsecured Claims.

All Consent Program Opt-In Forms must be properly completed and returned according to the instructions described therein so as to be **actually received** by the Voting Agent **on or before 5:00 p.m. (Central Time) on the date that is sixty (60) days after the Confirmation Date** (the **"Consent Program Opt-In Deadline"**) either by (i) delivering the Consent Program Opt-In Form to the Voting Agent by first-class mail, (ii) hand delivery, (iii) overnight courier, or (ii) submitting the Consent Program Opt-In Form by electronic, online transmission through the Online Portal, each in accordance with the instructions included on the Consent Program Opt-In Form.  An encrypted data and audit trail will be created through the electronic submission process of the Consent Program Opt-In Form and will become part of the record of any Consent Program Opt-In Form submitted in this manner.  Additionally, any holder's electronic signature will be deemed to be legally valid and effective immediately.  For the avoidance of doubt, the Online Portal is the sole method for holders of Administrative Expense Claims to transmit the Consent Program Opt-In Form electronically.

### Preference Settlement Materials

The following materials shall constitute the Preference Settlement Materials:

(a)     the Disclosure Statement Order, as entered by the Court and without attachments;

(b)     the conditionally approved Disclosure Statement with all exhibits thereto, including the Plan;

(c)     the Combined Hearing Notice (annexed as **Exhibit 1** to the Disclosure Statement Order);

(d)     the Solicitation and Voting Procedures, (annexed as **Exhibit 2** to the Disclosure Statement Order);

(e)     the Preference Settlement Opt-In Form (annexed as **Exhibit 12** to the Disclosure Statement Order) for Preference Settlement Eligible Creditors;

(f)     the Creditor's Committee Position Letter (annexed as **Exhibit 15** to the Disclosure Statement Order); and

(g)     a postage-prepaid return envelope.

13

The Voting Agent shall cause to be mailed the Preference Settlement Materials, to all Preference Settlement Eligible Creditors.  Any holder of a Claim who believes that they are entitled to receive a Preference Settlement Opt-In Form and does not receive a Preference Settlement Opt-In Form, may email Kroll at FirstBrandsInfo@ra.kroll.com with "Preference Settlement Opt-In Form Request" in the subject line prior to the Preference Settlement Opt-In Deadline.

A Preference Settlement Eligible Creditor that properly, timely, and affirmatively elects to participate in the Preference Settlement will be a Preference Settlement Electing Creditor under the Plan and will: (i) grant the releases contained in Section 13.5(b) of the Plan; (ii) contribute its Direct Creditor Claims to the Litigation Trust; and (ii) participate in, and receive the benefit of, the Preference Settlement, including, if such Preference Settlement Electing Creditor is (a) a Trade Creditor, it will be released from Preference Actions and (b) a Supply Chain Financer or a Factor, it will receive the benefit of the Modified New Value Elements, as described in more detail in Section 6.11(e) of the Plan.

Preference Settlement Eligible Creditors that do not properly, timely, and affirmatively elect to participate in the Preference Settlement will not be Preference Settlement Electing Creditors for purposes of the Plan, will not contribute Direct Creditor Claims to the Litigation Trust, will not grant the releases contained in Section 13.5(b) of the Plan, and therefore, will not receive the benefits of the Preference Settlement.  Specifically, to the extent a Preference Settlement Eligible Creditor is a (i) a Trade Creditor, such Preference Settlement Eligible Creditor will not be released from Preference Actions under the Plan, or (ii) a Supply Chain Financer or Factor, such Preference Settlement Eligible Creditor will not receive the benefit of the Modified New Value Elements, as described in more detail in Section 6.11(e) of the Plan.

All Preference Settlement Opt-In Forms must be properly completed and returned so as to be **actually received** by the Voting Agent **on or before 5:00 p.m. (Central Time) on the date that is forty-five (45) days after the Confirmation Date** (the **"Preference Settlement Opt-In Deadline"**) either by (i) delivering the Preference Settlement Opt-In Form to the Voting Agent by first-class mail, (ii) hand delivery, (iii) overnight courier, or (iv) submitting the Preference Settlement Opt-In Form by electronic, online transmission through the Online Portal, each in accordance with the instructions included on the Preference Settlement Opt-In Form; *provided* that if a Preference Action is brought against a Trade Creditor that did not timely opt in to the Preference Settlement, such Trade Creditor shall have an additional thirty (30) days following service of the Preference Action to opt in to the Preference Settlement.  An encrypted data and audit trail will be created through the electronic submission process of the Preference Settlement Opt-In Forms and will become part of the record of any Preference Settlement Opt-In Form submitted in this manner.  Additionally, any holder's electronic signature will be deemed to be legally valid and effective immediately.  For the avoidance of doubt, the Online Portal is the sole method for Preference Settlement Eligible Creditors to transmit the Preference Settlement Opt-In Form electronically.

**G.     Tabulation Procedures.**

**General Rules**

        The following voting procedures and standard assumptions shall be used in tabulating the Ballots, subject to the Debtors' right to waive any of the below specified requirements for completion and submission of the Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules:

(a)     Whenever a holder of Claims casts more than one Ballot voting the same Claims before the Voting Deadline, the last timely and valid Ballot received on or before the Voting Deadline shall be deemed to reflect such creditor's intent, and thus supersede any previously received Ballot.  Following the Voting Deadline, no Ballot may be changed or revoked, absent further order of the Court or as directed by the Debtors.

(b)     Whenever a holder of Claims casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but does not indicate either an acceptance or rejection of the Plan, such Ballot will not be counted.

(c)     Whenever a holder of a Claim casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

(d)     A holder shall be deemed to have voted the full amount of its Claim in each Class and shall not be entitled to split its vote within a particular Class.  Any such holder's Ballot that partially accepts and partially rejects the Plan, between the FBG Debtors, will not be counted.

(e)     A Person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a holder of Claims should indicate such capacity when signing, and if so requested by the Debtors or the Voting Agent, must submit proper evidence satisfactory to the Debtors of its authority to so act.

(f)     A holder of Claims in more than one Class must use separate Ballots for each Class of Claims.

(g)     For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate and non-duplicative Claims against the FBG Debtors held by a single holder in a particular Class shall be aggregated as if such holder held one Claim in the FBG Debtors in such Class, and the votes related to such Claims shall be tabulated as a single vote in the total aggregated amount to accept or reject the Plan.

15

(h)     The Debtors, unless subject to contrary order of the Court, may waive any defects or irregularities as to any particular irregular Ballot at any time, either before or after the Voting Deadline.'

(i)     If the Debtors and the holder of a Claim in a Voting Class reach an agreement regarding the amount of a Claim for voting purposes, the Voting Agent will tabulate the Claim in accordance with such agreement and may rely on an e-mail from the Debtors (copying the holder of the Claim and/or its counsel) memorializing such agreement.

(j)     The following Ballots shall not be counted:

    i.      any Ballot received after the Voting Deadline unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot or waived the late submission;

    ii.     any Ballot that is illegible or contains insufficient information to permit the identification of the voting party;

    iii.    any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan;

    iv.     any Ballot cast by a Person or Entity that is not entitled to vote, even if such individual or Entity holds a Claim in a Voting Class;

    v.      any unsigned Ballot, provided that E-Ballots submitted on the Online Portal will be deemed to contain a legal, valid signature;

    vi.     any Ballot containing a vote that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

    vii.    any Ballot transmitted to the Voting Agent by e-mail, facsimile, or other means not specifically approved herein.

For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate and non-duplicative Claims against the FBG Debtors held by a single holder in a particular Class shall be aggregated as if such holder held one Claim in the FBG Debtors in such Class, and the votes related to such Claims shall be treated as a single vote in the total aggregated amount to accept or reject the Plan.

**Miscellaneous Rules**

Each holder of Claims that votes to accept or reject the Plan is deemed to have voted the full amount of its Claim therefor.

The Voting Agent may, but is not required to, contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies,

16

provided that, neither the FBG Debtors nor Voting Agent is required to contact such parties to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor will any of them incur any liability for failure to provide such notification. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the FBG Debtors (or the Court) determine. Delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived prior to the Voting Deadline) will be invalidated.

The Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, Preference Settlement Opt-In Forms, or Release Opt-In Forms, which determination—absent a contrary ruling of the court—will be final and binding on all parties.

The Debtors are authorized to reject any and all Ballots, Preference Settlement Opt-In Forms, or Release Opt-In Forms, submitted by any holders of Claims not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.

The Debtors are further authorized to waive any defects or irregularities or conditions of delivery as to any particular Ballot or, Preference Settlement Opt-In Form by any holders of Claims, including Preference Settlement Electing Creditors, as applicable. The interpretation (including the Ballot, and the Preference Settlement Opt-In Form and the respective instructions thereto) by the Debtors in accordance with the foregoing sentence will be final and binding on all parties.

The Debtors or their Voting Agent shall file the Voting Report on or before **July 27, 2026.**

**H.     Combined Hearing Notice.**

The Debtors will serve holders of Claims and Interests against the Debtors (except holders of Claims in Class 9 (Intercompany Claims) and holders of Interests in Class 10 (FBG Debtor Interests)) via first-class mail a copy of the Combined Hearing Notice, substantially in the form attached to the Disclosure Statement Order as **Exhibit 1**, by the Mailing Deadline, which sets forth (i) the Voting Deadline, Consent Program Opt-In Deadline, and the Preference Settlement Opt-In Deadline, (ii) the Combined Objection Deadline and procedures for filing objections and responses to confirmation of the Plan, (iii) the time, date, and place for the Combined Hearing, and (iv) information about the Plan's release and injunction provisions in compliance with Bankruptcy Rule 2002(c)(3).

The Debtors will give supplemental publication notice of the Combined Hearing, as soon as reasonably practicable after entry of the Disclosure Statement Order, once in the New York Times as well as in one or more local or foreign newspapers, trade journals, or similar publications as the Debtors deem appropriate.

17

The Debtors reserve the right and are authorized to make non-substantive or immaterial changes to the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Materials, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, if any, and to make conforming changes among the Disclosure Statement, the Plan, and any other Materials before their distribution.

**Exhibit 3**

**Form of Ballot for Roll-Up Claims (Class 3)**

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE DISCLOSURE STATEMENT, AND OTHER MATERIALS ACCOMPANYING THIS BALLOT.**[1]

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND PROPERLY EXECUTE THIS ENTIRE BALLOT.**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[2] | § | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE JOINT CHAPTER 11 PLAN OF**
**FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS**
**CLASS 3 (ROLL-UP CLAIMS)**

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE PROPERLY COMPLETED, FULLY EXECUTED, AND TIMELY RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS.**

First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") as debtors in possession in the above-captioned chapter 11 case are soliciting votes with respect to the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on [●], 2026 (Docket No. [●]) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed on [●], 2026 (Docket No. [●]) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Disclosure Statement**").

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as <u>Exhibit A</u> to the Disclosure Statement.

[2] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

You are receiving this ballot (the "**Ballot**") because records indicate that you are the holder (a "**Holder**") of a Roll-Up Claim against the FBG Debtors as of June 15, 2026 (the "**Voting Record Date**").  Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 3 Roll-Up Claims.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Kroll Restructuring Administration LLC (the "**Voting Agent**" or "**Kroll**") at no charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/FirstBrands.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Please be advised that the Voting Agent cannot provide legal advice.

You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 3 Roll-Up Claim under the Plan.  If so, please contact your attorney and/or advisor.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR
ROLL-UP CLAIMS IN CLASS 3**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed Roll Up Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, and release of such Allowed Roll-Up Claim (other than the Remaining Roll-Up Claims), on the Confirmation Date, each such holder shall receive, on account of its Allowed Roll Up Claim, its Pro Rata Share of the Class 3(a) Litigation Trust Interests.  The Roll-Up Claims in excess of the aggregate amount of distributions that are anticipated to be made to holders of Allowed Roll-Up Claims under the Litigation Trust Waterfall, as determined in accordance with Section 6.19(d)(ii) of the Plan (the "**Remaining Roll-Up Claims**"), shall not be discharged or released on the Confirmation Date, shall remain enforceable against the DIP Loan Parties, Parent Guarantors, and/or the SPV Debtors, as applicable, and shall continue to accrue interest, fees, and expenses in accordance with the DIP Order until the Effective Date, at which point such Remaining Roll-Up Claims shall be released.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable

2

requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must properly complete, sign, and timely return this Ballot so that it is actually received by the Voting Agent on or before the Voting Deadline. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, <u>you will have consented to the releases contained in Section 13.5(b) of the Plan</u>.  The releases as presented in the Plan are provided below:**

**SECTION 13.4      <u>PLAN INJUNCTION</u>.**

**(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to the Plan, including under <u>Section 13.5(a)</u> or <u>Section 13.5(b)</u> of the Plan, or (ii) subject to exculpation pursuant to <u>Section 13.6</u> of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to <u>Section 13.6</u> of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly,**

3

any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the Debtors or their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)      Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring

4

of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)  As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).  If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.  For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d)

(e)  The injunctions in Section 13.4 shall extend to any successors of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)  FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

**SECTION 13.5        RELEASES.**

(a)        *Releases by the FBG Debtors and their Estates.*  Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer,

6

event, or other occurrence related to the foregoing and taking place on or before  the Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan, or (e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors.

(b)     Third-Party Releases.  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the

7

business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(b) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)      FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)      NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6      EXCULPATION.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL

8

COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE;  THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN <u>SECTION 13.6</u> SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

**<u>Relevant Definitions Related to Release and Exculpation Provisions</u>:**

*Exculpated Parties* means each of the following in their capacity as such: (i) the FBG Debtors; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

9

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the FBG Debtors and their Estates; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases. For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

> **PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.         Amount of Claim**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a Roll-Up Claim(s) against the FBG Debtors in the amount set forth below.

> $_____

**Item 2.         Votes on the Plan**.  Below, please vote either to accept or to reject the Plan with respect to your Claim(s).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

> **Prior to voting on the Plan, please note the following:**
>
> **If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases, you will have consented to the releases contained in Section 13.5(b) of the Plan.**
>
> **The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

The undersigned Holder of a Class 3 Roll-Up Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan            ☐ **Reject** the Plan

**Item 3.         Third-Party Release Opt-In Election.**  If you voted to accept or reject the Plan in Item 2 above, or, if you are abstaining from voting to accept or reject the Plan, and in either case, you elect to grant the Third-Party Releases contained in Section 13.5(b) of the Plan, check the box below to "Opt-In."  Election to consent is at your option and must be affirmatively exercised.  **<u>If you also receive a Release Opt-In Form and you opt in to granting the Third-Party Releases,</u>**

11

**you will grant the Third-Party Releases in Section 13.5(b) of the Plan regardless of your Third-Party Release Opt-In Election on this Ballot.**

The Holder of the Class 3 Roll-Up Claim set forth in <u>Item 1</u> elects to:

☐ **OPT IN** to the Third-Party Releases contained only in Section 13.5(b) of the Plan.

**Item 4.        Acknowledgements**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Roll-Up Claims described in <u>Item 1</u> as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder:        _____
                       (*print or type*)

Signature:             _____

Name of Signatory:     _____
                       (*if other than Holder, include name and title*)

Title:                 _____

Address:               _____

                       _____

                       _____

                       _____

E-mail Address:        _____

Date Completed:        _____

12

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.  Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) will not be counted, unless the Debtors (in their sole discretion) waive the defect of lateness. **The Voting Agent will tabulate all properly completed, valid Ballots received on or before the Voting Deadline.**

2.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, and/or opt in to the Third-Party Releases.

6.  If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, valid Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

---

[3]  Ballots submitted on the Online Portal ("**E-Ballots**") will be deemed to contain a legal, valid signature.

13

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.   PLEASE PROPERLY COMPLETE AND PROMPTLY RETURN YOUR BALLOT TO THE VOTING AGENT.

11.   IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY (I) CALLING (646) 290-7146 (INTERNATIONAL, TOLL) OR (877) 631-1151 (U.S./CANADA, TOLL FREE); (II) WRITING TO FIRST BRANDS GROUP, LLC BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 3RD AVENUE, SUITE 412, BROOKLYN, NY 11232 (IF BY FIRST CLASS MAIL, HAND DELIVERY OR OVERNIGHT MAIL); OR (III) EMAILING FIRSTBRANDSINFO@RA.KROLL.COM WITH "FIRST BRANDS SOLICITATION INQUIRY" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.   THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS**

---

**By electronic, online submission:**

To submit your Ballot via the Voting Agent's online portal (the "**Online Portal**"), visit https://restructuring.ra.kroll.com/FirstBrands.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.  If voting electronically, to have your vote counted, you must complete, sign, and submit the electronic Ballot by utilizing the Online Portal.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

—————————————————————

The Online Portal is the sole manner in which electronic votes will be accepted. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

---

**Holders are strongly encouraged to submit their ballots via the Online Portal.   Holders who cast a Ballot using the Voting Agent's Online Portal should NOT also submit a paper Ballot.**

**By First Class Mail, Hand Delivery, or Overnight Mail to:**

**First Brands Group, LLC Ballot Processing**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

To arrange hand delivery of your Ballot, please email the Voting Agent at FirstBrandsInfo@ra.kroll.com (with "First Brands Solicitation Inquiry" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

**Exhibit 4**

**Form of Ballot for First Lien Claims (Class 4)**

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE DISCLOSURE STATEMENT, AND OTHER MATERIALS ACCOMPANYING THIS BALLOT.**[1]

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND PROPERLY EXECUTE THIS ENTIRE BALLOT.**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[2] | § | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE JOINT CHAPTER 11 PLAN OF**
**FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS**
**CLASS 4 (FIRST LIEN CLAIMS)**

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE PROPERLY COMPLETED, FULLY EXECUTED, AND TIMELY RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS.**

First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") as debtors in possession in the above-captioned chapter 11 case are soliciting votes with respect to the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on [●], 2026 (Docket No. [●]) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed on [●], 2026 (Docket No. [●]) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Disclosure Statement**").

---

[1]  All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as <u>Exhibit A</u> to the Disclosure Statement.

[2]  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

You are receiving this ballot (the "**Ballot**") because records indicate that you are the holder (a "**Holder**") of a First Lien Claim against the FBG Debtors as of June 15, 2026 (the "**Voting Record Date**").  Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 4 First Lien Claims.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Kroll Restructuring Administration LLC (the "**Voting Agent**" or "**Kroll**") at no charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/FirstBrands.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Please be advised that the Voting Agent cannot provide legal advice.

You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 4 First Lien Claim under the Plan.  If so, please contact your attorney and/or advisor.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR**
**FIRST LIEN CLAIMS IN CLASS 4**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed First Lien Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, and release of such Allowed First Lien Claim (other than Remaining First Lien Claims), on the Confirmation Date, each such holder shall receive, on account of its Allowed First Lien Claim, its Pro Rata Share of the Class 3(c) Litigation Trust Interests.  The First Lien Claims in excess of the aggregate amount of distributions that are anticipated to be made to holders of Allowed First Lien Claims under the Litigation Trust Waterfall, as determined in accordance with Section 6.19(d)(ii) of the Plan (the "**Remaining First Lien Claims**"), shall remain outstanding until the Effective Date, at which point such Remaining First Lien Claims shall be deemed to be released.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class

or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must properly complete, sign, and timely return this Ballot so that it is actually received by the Voting Agent on or before the Voting Deadline. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, <u>you will have consented to the releases contained in Section 13.5(b) of the Plan</u>.  The releases as presented in the Plan are provided below:**

**SECTION 13.4      PLAN INJUNCTION.**

**(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to the Plan, including under <u>Section 13.5(a)</u> or <u>Section 13.5(b)</u> of the Plan, or (ii) subject to exculpation pursuant to <u>Section 13.6</u> of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to <u>Section 13.6</u> of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching**

3

(including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the Debtors or their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)     Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing,

4

confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)     As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).  If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.  For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d)

(e)     The injunctions in Section 13.4 shall extend to any successors of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

SECTION 13.5     RELEASES.

(a)     Releases by the FBG Debtors and their Estates.  Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable

5

consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or

6

omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan, or (e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors.

(b)    **Third-Party Releases.**  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation,

7

dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in <u>Section 13.5(b)</u> shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)     NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6     <u>EXCULPATION</u>.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE;  THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE

8

**TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

<u>**Relevant Definitions Related to Release and Exculpation Provisions:**</u>

*Exculpated Parties* means each of the following in their capacity as such: (i) the FBG Debtors; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the FBG Debtors and their Estates; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal

Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases. For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.**        **Amount of Claim**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a First Lien Claim(s) against the FBG Debtors in the amount set forth below.

$_____

**Item 2.**        **Votes on the Plan**.  Below, please vote either to accept or to reject the Plan with respect to your Claim(s).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases, you will have consented to the releases contained in Section 13.5(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

The undersigned Holder of a Class 4 First Lien Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.**        **Third-Party Release Opt-In Election.**  If you voted to accept or reject the Plan in Item 2 above, or, if you are abstaining from voting to accept or reject the Plan, and in either case, you elect to grant the Third-Party Releases contained in Section 13.5(b) of the Plan, check the box below to "Opt-In."  Election to consent is at your option and must be affirmatively exercised.  **If you also receive a Release Opt-In Form and you opt in to granting the Third-Party Releases,**

11

**you will grant the Third-Party Releases in Section 13.5(b) of the Plan regardless of your Third-Party Release Opt-In Election on this Ballot.**

The Holder of the Class 4 First Lien set forth in <u>Item 1</u> elects to:

☐ **OPT IN** to the Third-Party Releases contained only in Section 13.5(b) of the Plan.

**Item 4.    Acknowledgements**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the First Lien Claims described in <u>Item 1</u> as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder: _____

*(print or type)*

Signature: _____

Name of Signatory: _____

*(if other than Holder, include name and title)*

Title: _____

Address: _____

_____

_____

_____

E-mail Address: _____

Date Completed: _____

12

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) will not be counted, unless the Debtors (in their sole discretion) waive the defect of lateness. **The Voting Agent will tabulate all properly completed, valid Ballots received on or before the Voting Deadline.**

2.      Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail. If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.      You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, and/or opt in to the Third-Party Releases.

6.      If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, valid Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.      If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

---

[3]      Ballots submitted on the Online Portal ("**E-Ballots**") will be deemed to contain a legal, valid signature.

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE PROPERLY COMPLETE AND PROMPTLY RETURN YOUR BALLOT TO THE VOTING AGENT.

11. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY (I) CALLING (646) 290-7146 (INTERNATIONAL, TOLL) OR (877) 631-1151 (U.S./CANADA, TOLL FREE); (II) WRITING TO FIRST BRANDS GROUP, LLC BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 3RD AVENUE, SUITE 412, BROOKLYN, NY 11232 (IF BY FIRST CLASS MAIL, HAND DELIVERY OR OVERNIGHT MAIL); OR (III) EMAILING FIRSTBRANDSINFO@RA.KROLL.COM WITH "FIRST BRANDS SOLICITATION INQUIRY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12. THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS**

---

**By electronic, online submission:**

To submit your Ballot via the Voting Agent's online portal (the "**Online Portal**"), visit https://restructuring.ra.kroll.com/FirstBrands. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted. If voting electronically, to have your vote counted, you must complete, sign, and submit the electronic Ballot by utilizing the Online Portal.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

The Online Portal is the sole manner in which electronic votes will be accepted. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in <u>Item 1</u> of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

---

**Holders are strongly encouraged to submit their ballots via the Online Portal.   Holders who cast a Ballot using the Voting Agent's Online Portal should NOT also submit a paper Ballot.**

**By First Class Mail, Hand Delivery, or Overnight Mail to:**

**First Brands Group, LLC Ballot Processing**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

To arrange hand delivery of your Ballot, please email the Voting Agent at FirstBrandsInfo@ra.kroll.com (with "First Brands Solicitation Inquiry" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

**Exhibit 5**

**Form of Ballot for Second Lien Claims (Class 5)**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE DISCLOSURE STATEMENT, AND OTHER MATERIALS ACCOMPANYING THIS BALLOT.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND PROPERLY EXECUTE THIS ENTIRE BALLOT.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIRST BRANDS GROUP, LLC, *et al.*, | § | Case No. 25-90399 (CML) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[2] | § | |

BALLOT FOR VOTING TO ACCEPT OR REJECT
THE JOINT CHAPTER 11 PLAN OF
FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS
CLASS 5 (SECOND LIEN CLAIMS)

> IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE PROPERLY COMPLETED, FULLY EXECUTED, AND TIMELY RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.

First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") as debtors in possession in the above-captioned chapter 11 case are soliciting votes with respect to the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on [●], 2026 (Docket No. [●]) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed on [●], 2026 (Docket No. [●]) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Disclosure Statement**").

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

You are receiving this ballot (the "**Ballot**") because records indicate that you are the holder (a "**Holder**") of a Second Lien Claim against the FBG Debtors as of June 15, 2026 (the "**Voting Record Date**").  Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 5 Second Lien Claims.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Kroll Restructuring Administration LLC (the "**Voting Agent**" or "**Kroll**") at no charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/FirstBrands.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Please be advised that the Voting Agent cannot provide legal advice.

You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 5 Second Lien Claim under the Plan.  If so, please contact your attorney and/or advisor.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR
SECOND LIEN CLAIMS IN CLASS 5**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed Second Lien Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, and release of such Allowed Second Lien Claim (other than Remaining Second Lien Claims), on the Confirmation Date, each such holder shall receive, on account of its Allowed Second Lien Claim, its Pro Rata Share of the Class 3(c) Litigation Trust Interests.  The Second Lien Claims in excess of the aggregate amount of distributions that are anticipated to be made to holders of Allowed Second Lien Claims under the Litigation Trust Waterfall, as determined in accordance with Section 6.19(d)(ii) of the Plan (the "Remaining Second Lien Claims"), shall remain outstanding until the Effective Date, at which point such Remaining Second Lien Claims shall be deemed to be released.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not

2

obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must properly complete, sign, and timely return this Ballot so that it is actually received by the Voting Agent on or before the Voting Deadline. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, <u>you will have consented to the releases contained in Section 13.5(b) of the Plan</u>.  The releases as presented in the Plan are provided below:**

**SECTION 13.4      <u>PLAN INJUNCTION</u>.**

**(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to the Plan, including under <u>Section 13.5(a)</u> or <u>Section 13.5(b)</u> of the Plan, or (ii) subject to exculpation pursuant to <u>Section 13.6</u> of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to <u>Section 13.6</u> of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial,**

3

arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to <u>Section 13.5(a)</u> or <u>Section 13.5(b)</u> of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the Debtors or their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)     Subject in all respects to <u>Section 14.1</u> of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court

4

restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)     As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).  If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.  For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d)

(e)     The injunctions in Section 13.4 shall extend to any successors of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

SECTION 13.5     RELEASES.

5

(a)      **Releases by the FBG Debtors and their Estates.  Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before  the**

Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan, or (e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors.

(b)     **Third-Party Releases.**  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing

7

Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(b) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)     NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6     EXCULPATION.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE;  THE CHAPTER 11

8

**CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such: (i) the FBG Debtors; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

9

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the FBG Debtors and their Estates; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases. For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

> **PLEASE COMPLETE ITEMS 1, 2, 3, AND 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.** **Amount of Claim**. The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a Second Lien Claim(s) against the FBG Debtors in the amount set forth below.

$\$_____$

**Item 2.** **Votes on the Plan**. Below, please vote either to accept or to reject the Plan with respect to your Claim(s). Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

> **Prior to voting on the Plan, please note the following:**
>
> **If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases, you will have consented to the releases contained in Section 13.5(b) of the Plan.**
>
> **The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

The undersigned Holder of a Class 5 Second Lien Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.** **Third-Party Release Opt-In Election.** If you voted to accept or reject the Plan in Item 2 above, or, if you are abstaining from voting to accept or reject the Plan, and in either case, you elect to grant the Third-Party Releases contained in Section 13.5(b) of the Plan, check the box below to "Opt-In." Election to consent is at your option and must be affirmatively exercised. **If you also receive a Release Opt-In Form and you opt in to granting the Third-Party Releases,**

11

**you will grant the Third-Party Releases in Section 13.5(b) of the Plan regardless of your Third-Party Release Opt-In Election on this Ballot.**

The Holder of the Class 5 Second Lien Claim set forth in <u>Item 1</u> elects to:

☐ **OPT IN** to the Third-Party Releases contained only in Section 13.5(b) of the Plan.

**Item 4.**      **Acknowledgements**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Second Lien Claims described in <u>Item 1</u> as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder:  _____
                 (*print or type*)

Signature:       _____

Name of Signatory:  _____
                 (*if other than Holder, include name and title*)

Title:           _____

Address:         _____

                 _____

                 _____

                 _____

E-mail Address:  _____

Date Completed:  _____

12

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.    Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) will not be counted, unless the Debtors (in their sole discretion) waive the defect of lateness. **The Voting Agent will tabulate all properly completed, valid Ballots received on or before the Voting Deadline.**

2.    Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.    You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.    The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, and/or opt in to the Third-Party Releases.

6.    If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, valid Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.    If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.    There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

---

[3]    Ballots submitted on the Online Portal ("**E-Ballots**") will be deemed to contain a legal, valid signature.

13

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.  PLEASE PROPERLY COMPLETE AND PROMPTLY RETURN YOUR BALLOT TO THE VOTING AGENT.

11.  IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY (I) CALLING (646) 290-7146 (INTERNATIONAL, TOLL) OR (877) 631-1151 (U.S./CANADA, TOLL FREE); (II) WRITING TO FIRST BRANDS GROUP, LLC BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 3RD AVENUE, SUITE 412, BROOKLYN, NY 11232 (IF BY FIRST CLASS MAIL, HAND DELIVERY OR OVERNIGHT MAIL); OR (III) EMAILING FIRSTBRANDSINFO@RA.KROLL.COM WITH "FIRST BRANDS SOLICITATION INQUIRY" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.  THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS**

---

**By electronic, online submission:**

To submit your Ballot via the Voting Agent's online portal (the "**Online Portal**"), visit https://restructuring.ra.kroll.com/FirstBrands.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.  If voting electronically, to have your vote counted, you must complete, sign, and submit the electronic Ballot by utilizing the Online Portal.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

_____

<u>The Online Portal is the sole manner in which electronic votes will be accepted. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.</u>

Each E-Ballot ID# is to be used solely for voting only those Claims described in <u>Item 1</u> of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

---

14

**Holders are strongly encouraged to submit their ballots via the Online Portal.   Holders who cast a Ballot using the Voting Agent's Online Portal should NOT also submit a paper Ballot.**

**By First Class Mail, Hand Delivery, or Overnight Mail to:**

**First Brands Group, LLC Ballot Processing**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

To arrange hand delivery of your Ballot, please email the Voting Agent at FirstBrandsInfo@ra.kroll.com (with "First Brands Solicitation Inquiry" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

**Exhibit 6**

**Form of Ballot for ABL Claims (Class 6)**

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE DISCLOSURE STATEMENT, AND OTHER MATERIALS ACCOMPANYING THIS BALLOT.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND PROPERLY EXECUTE THIS ENTIRE BALLOT.**

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

</div>

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.[2]** | § | |

<div align="center">

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE JOINT CHAPTER 11 PLAN OF**
**FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS**
**CLASS 6 (ABL CLAIMS)**

</div>

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE PROPERLY COMPLETED, FULLY EXECUTED, AND TIMELY RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS.**

First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") as debtors in possession in the above-captioned chapter 11 case are soliciting votes with respect to the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on [●], 2026 (Docket No. [●]) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed on [●], 2026 (Docket No. [●]) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Disclosure Statement**").

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **<u>Exhibit A</u>** to the Disclosure Statement.

[2]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

You are receiving this ballot (the "**Ballot**") because records indicate that you are the holder (a "**Holder**") of an ABL Claim against the FBG Debtors as of June 15, 2026 (the "**Voting Record Date**").  Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 6 ABL Claims.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Kroll Restructuring Administration LLC (the "**Voting Agent**" or "**Kroll**") at no charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/FirstBrands.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Please be advised that the Voting Agent cannot provide legal advice.

You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 6 ABL Claim under the Plan.  If so, please contact your attorney and/or advisor.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR ABL CLAIMS IN CLASS 6**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, On the Confirmation Date, pursuant to sections 105, 363(b) and (f), and 1123(a)(5)(D) of the Bankruptcy Code, the ABL Agent, by and on behalf of the ABL Secured Parties, shall be deemed to have foreclosed upon the ABL Collateral Trust Assets of the FBG Debtors and transferred all such assets to the ABL Collateral Trust.  Except to the extent that a holder of an Allowed ABL Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, and release of such Allowed ABL Claim, on the Confirmation Date, each such holder shall receive, on account of its Allowed ABL Claim, its Pro Rata Share of the ABL Collateral Trust Interests.  The ABL Claims against the ABL Loan Parties in excess of the fair market value of the ABL Collateral Trust Assets, as determined in accordance with Section 8.11(d)(ii) of the Plan (the "ABL Deficiency Claims"), shall remain outstanding and enforceable against such ABL Loan Parties; provided that such ABL Deficiency Claims shall not be secured by the ABL Collateral Trust Assets, which assets shall be held free and clear of ABL Deficiency Claims by the ABL Collateral Trust; provided further that, on the Effective Date and immediately following the foreclosure upon the ABL Collateral Trust Assets, the holders of the ABL Deficiency Claims shall be deemed to have contributed all of their rights, title, and interests in respect of any amounts or proceeds to be realized on account of the ABL Deficiency Claims to the ABL Collateral Trust to be distributed in accordance with the waterfall set forth in Section 8.3 of the Plan.  To the extent the ABL Secured Parties hold Allowed ABL Claims against the FBG Debtors that are oversecured (i.e., the value of the ABL Priority Collateral exceeds the Allowed amount of the ABL Claims), as determined by the Bankruptcy Court, the holders of such Allowed ABL Claims shall be entitled to receive postpetition interest on such Claims at the applicable contractual rate under the ABL Credit Agreement to the extent permitted by section 506(b) of the Bankruptcy Code, which interest shall be paid from the ABL Collateral Trust Assets prior to any turnover of excess proceeds to the DIP Collateral Trust pursuant to Section 7.12 of the Plan.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must properly complete, sign, and timely return this Ballot so that it is actually received by the Voting Agent on or before the Voting Deadline. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

### NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, <u>you will have consented to the releases contained in Section 13.5(b) of the Plan</u>.  The releases as presented in the Plan are provided below:**

**SECTION 13.4      <u>PLAN INJUNCTION</u>.**

**(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to the Plan, including under <u>Section 13.5(a)</u> or <u>Section 13.5(b)</u> of the Plan, or (ii) subject to exculpation pursuant to <u>Section 13.6</u> of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation**

3

Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 13.6 of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the Debtors or their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)      Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive

4

Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action. For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)      As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum). If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust. For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d)

(e)      The injunctions in Section 13.4 shall extend to any successors of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)      FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING

5

**ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.**

**SECTION 13.5      RELEASES.**

(a)      **Releases by the FBG Debtors and their Estates.**  Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust

6

Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan, or (e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors.

(b)     Third-Party Releases.  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt

7

or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in <u>Section 13.5(b)</u> shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)     NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6     <u>EXCULPATION</u>.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF)

8

OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE;  THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such: (i) the FBG Debtors; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as

9

members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the FBG Debtors and their Estates; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases. For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

> **PLEASE COMPLETE ITEMS 1, 2, 3, AND 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.** **Amount of Claim**. The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of an ABL Claim(s) against the FBG Debtors in the amount set forth below.[3]

> $\$\text{_____}$

**Item 2.** **Votes on the Plan**. Below, please vote either to accept or to reject the Plan with respect to your Claim(s). Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

> **Prior to voting on the Plan, please note the following:**
>
> **If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases, you will have consented to the releases contained in Section 13.5(b) of the Plan.**
>
> **The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

The undersigned Holder of a Class 6 ABL Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.** **Third-Party Release Opt-In Election.** If you voted to accept or reject the Plan in Item 2 above, or, if you are abstaining from voting to accept or reject the Plan, and in either case, you elect to grant the Third-Party Releases contained in Section 13.5(b) of the Plan, check the box below to "Opt-In." Election to consent is at your option and must be affirmatively exercised. **If**

---

[3] For the avoidance of doubt, the Allowed amount of the ABL Claim for voting purposes shall exclude U.S. Bank Obligations (as defined in the Final DIP Order).

11

**you also receive a Preference Settlement Election Form and elect to participate in the Preference Settlement, you will grant the Third-Party Releases in Section 13.5(b) of the Plan regardless of your Third-Party Release Opt-In Election on this Ballot.**

The Holder of the Class 6 ABL Claim set forth in Item 1 elects to:

☐ **OPT IN** to the Third-Party Releases contained only in Section 13.5(b) of the Plan.

**Item 4.      Acknowledgements**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the ABL Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder:      _____
                     (*print or type*)

Signature:           _____

Name of Signatory:   _____
                     (*if other than Holder, include name and title*)

Title:               _____

Address:             _____

                     _____

                     _____

                     _____

E-mail Address:      _____

Date Completed:      _____

12

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.    Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) will not be counted, unless the Debtors (in their sole discretion) waive the defect of lateness. **The Voting Agent will tabulate all properly completed, valid Ballots received on or before the Voting Deadline.**

2.    Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[4] will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.    You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.    The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, and/or opt in to the Third-Party Releases.

6.    If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, valid Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.    If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.    There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

---

[4]    Ballots submitted on the Online Portal ("**E-Ballots**") will be deemed to contain a legal, valid signature.

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE PROPERLY COMPLETE AND PROMPTLY RETURN YOUR BALLOT TO THE VOTING AGENT.

11. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY (I) CALLING (646) 290-7146 (INTERNATIONAL, TOLL) OR (877) 631-1151 (U.S./CANADA, TOLL FREE); (II) WRITING TO FIRST BRANDS GROUP, LLC BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 3RD AVENUE, SUITE 412, BROOKLYN, NY 11232 (IF BY FIRST CLASS MAIL, HAND DELIVERY OR OVERNIGHT MAIL); OR (III) EMAILING FIRSTBRANDSINFO@RA.KROLL.COM WITH "FIRST BRANDS SOLICITATION INQUIRY" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12. THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS**

---

**By electronic, online submission:**

To submit your Ballot via the Voting Agent's online portal (the "**Online Portal**"), visit https://restructuring.ra.kroll.com/FirstBrands.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.  If voting electronically, to have your vote counted, you must complete, sign, and submit the electronic Ballot by utilizing the Online Portal.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

_____

The Online Portal is the sole manner in which electronic votes will be accepted. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in <u>Item 1</u> of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

---

14

**Holders are strongly encouraged to submit their ballots via the Online Portal.   Holders who cast a Ballot using the Voting Agent's Online Portal should NOT also submit a paper Ballot.**

**By First Class Mail, Hand Delivery, or Overnight Mail to:**

**First Brands Group, LLC Ballot Processing**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

To arrange hand delivery of your Ballot, please email the Voting Agent at FirstBrandsInfo@ra.kroll.com (with "First Brands Solicitation Inquiry" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

**Exhibit 7**

**Form of Ballot for General Unsecured Claims (Class 7)**

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE DISCLOSURE STATEMENT, THE CREDITORS' COMMITTEE POSITION LETTER, AND OTHER MATERIALS ACCOMPANYING THIS BALLOT.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND PROPERLY EXECUTE THIS ENTIRE BALLOT.**

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

</div>

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.[2]** | § | |

<div align="center">

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE JOINT CHAPTER 11 PLAN OF**
**FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS**
**CLASS 7 (GENERAL UNSECURED CLAIMS)**

</div>

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE PROPERLY COMPLETED, FULLY EXECUTED, AND TIMELY RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS.**

First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") as debtors in possession in the above-captioned chapter 11 case are soliciting votes with respect to the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on [●], 2026 (Docket No. [●]) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed on [●], 2026 (Docket No. [●]) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Disclosure Statement**").

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **<u>Exhibit A</u>** to the Disclosure Statement.

[2]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

You are receiving this ballot (the "**Ballot**") because records indicate that you are the holder (a "**Holder**") of a General Unsecured Claim against the FBG Debtors as of June 15, 2026 (the "**Voting Record Date**").  Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 7 General Unsecured Claims.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Kroll Restructuring Administration LLC (the "**Voting Agent**" or "**Kroll**") at no charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/FirstBrands.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Please be advised that the Voting Agent cannot provide legal advice.

You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 7 General Unsecured Claim under the Plan.  If so, please contact your attorney and/or advisor.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR GENERAL UNSECURED CLAIMS IN CLASS 7**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, in full and final settlement, and release of such Allowed General Unsecured Claim, on the Confirmation Date, each such holder shall receive its Pro Rata Share of the Class 3(b) Litigation Trust Interests.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must properly complete, sign, and timely return this Ballot so that it is actually received by the Voting

2

Agent on or before the Voting Deadline. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

<div align="center">

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

</div>

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, <u>you will have consented to the releases contained in Section 13.5(b) of the Plan</u>.  The releases as presented in the Plan are provided below:**

**SECTION 13.4      PLAN INJUNCTION.**

**(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to the Plan, including under <u>Section 13.5(a)</u> or <u>Section 13.5(b)</u> of the Plan, or (ii) subject to exculpation pursuant to <u>Section 13.6</u> of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to <u>Section 13.6</u> of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any**

<div align="center">3</div>

manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the Debtors or their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)     Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission,

4

transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)     As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).  If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.  For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d)

(e)     The injunctions in Section 13.4 shall extend to any successors of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

SECTION 13.5     RELEASES.

(a)     Releases by the FBG Debtors and their Estates.  Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral

Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or

6

Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan, or (e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors.

(b)      **Third-Party Releases.**  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL

7

Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(b) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)     NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6     EXCULPATION.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE;  THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER

8

**DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such: (i) the FBG Debtors; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the FBG Debtors and their Estates; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the

9

Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases. For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.**        **Amount of Claim**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a General Unsecured Claim(s) against the FBG Debtors in the amount set forth below.

$\$\underline{\hspace{4cm}}$

**Item 2.**        **Votes on the Plan**.  Below, please vote either to accept or to reject the Plan with respect to your Claim(s).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases, you will have consented to the releases contained in Section 13.5(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

The undersigned Holder of a Class 7 General Unsecured Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.**        **Third-Party Release Opt-In Election.**  If you voted to accept or reject the Plan in Item 2 above, or, if you are abstaining from voting to accept or reject the Plan, and in either case, you elect to grant the Third-Party Releases contained in Section 13.5(b) of the Plan, check the box below to "Opt-In."  Election to consent is at your option and must be affirmatively exercised.  **If you also receive a Preference Settlement Election Form and elect to participate in the**

11

**Preference Settlement, you will grant the Third-Party Releases in Section 13.5(b) of the Plan regardless of your Third-Party Release Opt-In Election on this Ballot.**

The Holder of the Class 7 General Unsecured Claim set forth in Item 1 elects to:

☐ **OPT IN** to the Third-Party Releases contained only in Section 13.5(b) of the Plan.

**Item 4.** **Acknowledgements**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the General Unsecured Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder: _____
(*print or type*)

Signature: _____

Name of Signatory: _____
(*if other than Holder, include name and title*)

Title: _____

Address: _____

_____

_____

_____

E-mail Address: _____

Date Completed: _____

12

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.  Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) will not be counted, unless the Debtors (in their sole discretion) waive the defect of lateness. **The Voting Agent will tabulate all properly completed, valid Ballots received on or before the Voting Deadline.**

2.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail. If neither the "**accept**" nor "**reject**" box is checked in <u>Item 2</u>, both boxes are checked in <u>Item 2</u>, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, and/or opt in to the Third-Party Releases.

6.  If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, valid Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, THE

---

[3]  Ballots submitted on the Online Portal ("**E-Ballots**") will be deemed to contain a legal, valid signature.

13

CREDITORS' COMMITTEE POSITION LETTER, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.    PLEASE PROPERLY COMPLETE AND PROMPTLY RETURN YOUR BALLOT TO THE VOTING AGENT.

11.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY (I) CALLING (646) 290-7146 (INTERNATIONAL, TOLL) OR (877) 631-1151 (U.S./CANADA, TOLL FREE); (II) WRITING TO FIRST BRANDS GROUP, LLC BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 3RD AVENUE, SUITE 412, BROOKLYN, NY 11232 (IF BY FIRST CLASS MAIL, HAND DELIVERY OR OVERNIGHT MAIL); OR (III) EMAILING FIRSTBRANDSINFO@RA.KROLL.COM WITH "FIRST BRANDS SOLICITATION INQUIRY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY ONE OF THE FOLLOWING METHODS**

---

**By electronic, online submission:**

To submit your Ballot via the Voting Agent's online portal (the "**Online Portal**"), visit https://restructuring.ra.kroll.com/FirstBrands. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted. If voting electronically, to have your vote counted, you must complete, sign, and submit the electronic Ballot by utilizing the Online Portal.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

The Online Portal is the sole manner in which electronic votes will be accepted. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

---

**Holders are strongly encouraged to submit their ballots via the Online Portal.   Holders who cast a Ballot using the Voting Agent's Online Portal should NOT also submit a paper Ballot.**

**By First Class Mail, Hand Delivery, or Overnight Mail to:**

**First Brands Group, LLC Ballot Processing**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

To arrange hand delivery of your Ballot, please email the Voting Agent at FirstBrandsInfo@ra.kroll.com (with "First Brands Solicitation Inquiry" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

**Exhibit 8**

**Form of Ballot for Subordinated Claims (Class 8)**

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE DISCLOSURE STATEMENT, AND OTHER MATERIALS ACCOMPANYING THIS BALLOT.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND PROPERLY EXECUTE THIS ENTIRE BALLOT.**

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

</div>

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.[2]** | § | |

<div align="center">

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE JOINT CHAPTER 11 PLAN OF**
**FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS**
**CLASS 8 (SUBORDINATED CLAIMS)**

</div>

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE PROPERLY COMPLETED, FULLY EXECUTED, AND TIMELY RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS.**

First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") as debtors in possession in the above-captioned chapter 11 case are soliciting votes with respect to the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on [●], 2026 (Docket No. [●]) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed on [●], 2026 (Docket No. [●]) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Disclosure Statement**").

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **<u>Exhibit A</u>** to the Disclosure Statement.

[2]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

You are receiving this ballot (the "**Ballot**") because records indicate that you are the holder (a "**Holder**") of a Subordinated Claim against the FBG Debtors as of June 15, 2026 (the "**Voting Record Date**").  Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 8 Subordinated Claims.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have the Disclosure Statement, you may obtain a copy from Kroll Restructuring Administration LLC (the "**Voting Agent**" or "**Kroll**") at no charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/FirstBrands.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Please be advised that the Voting Agent cannot provide legal advice.

You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 8 Subordinated Claim under the Plan.  If so, please contact your attorney and/or advisor.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR SUBORDINATED CLAIMS IN CLASS 8**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, all Subordinated Claims, if any, shall be cancelled, released, and extinguished, and shall be of no further force or effect, and holders of Allowed Subordinated Claims shall receive their Pro Rata Share of the Class 3(b) Litigation Trust Interests

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must properly complete, sign, and timely return this Ballot so that it is actually received by the Voting

2

Agent on or before the Voting Deadline. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

<div align="center">

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

</div>

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, <u>you will have consented to the releases contained in Section 13.5(b) of the Plan</u>.  The releases as presented in the Plan are provided below:**

**SECTION 13.4      PLAN INJUNCTION.**

**(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to the Plan, including under <u>Section 13.5(a)</u> or <u>Section 13.5(b)</u> of the Plan, or (ii) subject to exculpation pursuant to <u>Section 13.6</u> of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to <u>Section 13.6</u> of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any**

<div align="center">3</div>

manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the Debtors or their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)       Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission,

4

transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action. For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)      As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum). If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust. For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d)

(e)      The injunctions in Section 13.4 shall extend to any successors of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)      FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

SECTION 13.5      RELEASES.

(a)      Releases by the FBG Debtors and their Estates. Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral

5

Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or

6

Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan, or (e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors.

(b)     Third-Party Releases.  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL

7

Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(b) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)     NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6     EXCULPATION.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE;  THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER

8

**DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such: (i) the FBG Debtors; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the FBG Debtors and their Estates; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the

9

Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

***Releasing Parties*** means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases. For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN
PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.**        **Amount of Claim**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a Subordinated Claim(s) against the FBG Debtors in the amount set forth below.

$$\text{\$_____}$$

**Item 2.**        **Votes on the Plan**.  Below, please vote either to accept or to reject the Plan with respect to your Claim(s).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases, you will have consented to the releases contained in Section 13.5(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

The undersigned Holder of a Class 8 Subordinated Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.**        **Third-Party Release Opt-In Election.**  If you voted to accept or reject the Plan in Item 2 above, or, if you are abstaining from voting to accept or reject the Plan, and in either case, you elect to grant the Third-Party Releases contained in Section 13.5(b) of the Plan, check the box below to "Opt-In."  Election to consent is at your option and must be affirmatively exercised.  **If you also receive a Release Opt-In Form and you opt in to granting the Third-Party Releases,**

11

**you will grant the Third-Party Releases in Section 13.5(b) of the Plan regardless of your Third-Party Release Opt-In Election on this Ballot.**

The Holder of the Class 8 Subordinated Claim set forth in <u>Item 1</u> elects to:

☐ **OPT IN** to the Third-Party Releases contained only in Section 13.5(b) of the Plan.

**Item 4.        Acknowledgements**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Subordinated Claims described in <u>Item 1</u> as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder: _____
*(print or type)*

Signature: _____

Name of Signatory: _____
*(if other than Holder, include name and title)*

Title: _____

Address: _____

_____

_____

_____

E-mail Address: _____

Date Completed: _____

12

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) will not be counted, unless the Debtors (in their sole discretion) waive the defect of lateness. **The Voting Agent will tabulate all properly completed, valid Ballots received on or before the Voting Deadline.**

2.      Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in <u>Item 2</u>, both boxes are checked in <u>Item 2</u>, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.      You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, and/or opt in to the Third-Party Releases.

6.      If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, valid Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.      If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

---

[3]     Ballots submitted on the Online Portal ("**E-Ballots**") will be deemed to contain a legal, valid signature.

13

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.   PLEASE PROPERLY COMPLETE AND PROMPTLY RETURN YOUR BALLOT TO THE VOTING AGENT.

11.   IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY (I) CALLING (646) 290-7146 (INTERNATIONAL, TOLL) OR (877) 631-1151 (U.S./CANADA, TOLL FREE); (II) WRITING TO FIRST BRANDS GROUP, LLC BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 3RD AVENUE, SUITE 412, BROOKLYN, NY 11232 (IF BY FIRST CLASS MAIL, HAND DELIVERY OR OVERNIGHT MAIL); OR (III) EMAILING FIRSTBRANDSINFO@RA.KROLL.COM WITH "FIRST BRANDS SOLICITATION INQUIRY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.   THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS**

---

**By electronic, online submission:**

To submit your Ballot via the Voting Agent's online portal (the "**Online Portal**"), visit https://restructuring.ra.kroll.com/FirstBrands. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted. If voting electronically, to have your vote counted, you must complete, sign, and submit the electronic Ballot by utilizing the Online Portal.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

The Online Portal is the sole manner in which electronic votes will be accepted. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in <u>Item 1</u> of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

---

14

**Holders are strongly encouraged to submit their ballots via the Online Portal.   Holders who cast a Ballot using the Voting Agent's Online Portal should NOT also submit a paper Ballot.**

**By First Class Mail, Hand Delivery, or Overnight Mail to:**

**First Brands Group, LLC Ballot Processing**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

To arrange hand delivery of your Ballot, please email the Voting Agent at FirstBrandsInfo@ra.kroll.com (with "First Brands Solicitation Inquiry" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

**Exhibit 9**

**Notice of Non-Voting Status**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

## NOTICE OF NON-VOTING STATUS

On September 24, 2025 and September 28, 2025 (as applicable, the "**Petition Date**"), First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

On [●], 2026, the Bankruptcy Court held a hearing at which it conditionally approved the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. [●]) (the "**Disclosure Statement**"), and thereafter entered an order (the "**Disclosure Statement Order**") with respect thereto. The Disclosure Statement Order, among other things, authorizes First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") to solicit votes to accept the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on [●], 2026 (Docket No. [●]) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Plan**").[2]

If you have any questions about the status of your Claim or Interest or if you wish to obtain paper copies of the Plan and the Disclosure Statement, you may contact the Debtors' voting agent, Kroll Restructuring Administration LLC ("**Kroll**" or the "**Voting Agent**"), by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line. Copies of the Plan and Disclosure Statement can also be accessed online at https://restructuring.ra.kroll.com/FirstBrands. Please be advised that Kroll cannot provide legal advice.

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

You are receiving this notice (this "**Notice of Non-Voting Status**") because, as of June 15, 2026, you are a holder of:

      i.     **DIP A Claims** under the Plan, which provides that your Claim(s) against the FBG Debtors are not classified pursuant to section 1123(a)(1), and therefore, you are not entitled to vote on the Plan;

      ii.     **Class 1 Other Priority Claims** under the Plan, which provides that your Claim(s) against the FBG Debtors are unimpaired and therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and are not entitled to vote on the Plan; and/or

      iii.     **Class 2 Other Secured Claims** under the Plan, which provides that your Claim(s) against the FBG Debtors are unimpaired and therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and are not entitled to vote on the Plan.

**UNDER THE TERMS OF THE PLAN, IF YOU ARE A HOLDER OF DIP A CLAIM(S), CLAIM(S) IN CLASS 1 (OTHER PRIORITY CLAIMS), AND/OR CLASS 2 (OTHER SECURED CLAIMS), YOU WILL ALSO RECEIVE A RELEASE OPT-IN FORM WHERE YOU MAY OPT IN TO THE THIRD-PARTY RELEASES CONTAINED IN SECTION 13.5(B) OF THE PLAN. OPTING IN TO SUCH RELEASES IS AT YOUR OPTION AND MUST BE AFFIRMATIVELY EXERCISED ON THE RELEASE OPT IN FORM PROVIDED AND TIMELY RETURNED TO THE VOTING AGENT. IF YOU RECEIVE THIS RELEASE OPT-IN FORM AND DO NOT ELECT TO OPT IN TO THE THIRD-PARTY RELEASES, YOU WILL NOT GRANT THE RELEASES CONTAINED IN SECTION 13.5(B) OF THE PLAN AND YOU WILL NOT BE A "RELEASED PARTY" UNDER THE PLAN, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN.**

**FOR THE AVOIDANCE OF DOUBT, IF YOU ARE A PREFERENCE SETTLEMENT ELECTING CREDITOR, A HOLDER OF DIP A CLAIM(S), OR A HOLDER OF CLAIM(S) IN AN UNIMPAIRED NON-VOTING CLASS, WHO OPTS IN TO THE THIRD-PARTY RELEASES IN YOUR RELEASE OPT-IN FORM, OR A HOLDER OF CLAIM(S) IN A VOTING CLASS WHO OPTS IN TO THE THIRD-PARTY RELEASES IN YOUR BALLOT, YOU ARE A RELEASING PARTY.**

The deadline for filing objections to confirmation of the Plan or final approval of the Disclosure Statement is **July 20, 2026 at 5:00 p.m. (Central Time)** (the "**Combined Objection Deadline**"). Any objections to the confirmation of the Plan or final approval of the Disclosure Statement must: (i) be in writing; (ii) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any order of the Bankruptcy Court; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; and (iv) provide the basis for the objection, and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection. Registered users of the Bankruptcy Court's case filing system must electronically file their objections and responses on or before the Combined Objection Deadline. All other parties in interest must file

2

their objections and responses in writing with the United States Bankruptcy Court Clerk's Office, Rosario Saldana, United States Courthouse, 515 Rusk Avenue, Courtroom 402, 4th Floor, Houston, Texas 77002, on or before the Combined Objection Deadline.

---

If you have questions about this Notice of Non-Voting Status, please contact Kroll at:

**Telephone**: (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free)

**Email**:  FirstBrandsInfo@ra.kroll.com

**Website**:  https://restructuring.ra.kroll.com/FirstBrands

---

### NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, you will have consented to the releases contained in Section 13.5(b) of the Plan. The releases as presented in the Plan are provided below:**

**SECTION 13.4      PLAN INJUNCTION.**

**(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to the Plan, including under Section 13.5(a) or Section 13.5(b) of the Plan, or (ii) subject to exculpation pursuant to Section 13.6 of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 13.6 of the Plan with respect**

3

to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a)1.1(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the Debtors or their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)     Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that

4

is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)     As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).  If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.  For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d)

(e)     The injunctions in Section 13.4 shall extend to any successors of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

5

**SECTION 13.5      RELEASES.**

(a)      *Releases by the FBG Debtors and their Estates.*  Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer,

6

event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable. Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan, or (e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors.

(b)     **Third-Party Releases.** Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the

7

business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(b) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)      FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)      NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6      EXCULPATION.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL

8

COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE; THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such: (i) the FBG Debtors; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

9

***Released Parties*** means collectively, and in each case solely in their capacities as such, (i) the FBG Debtors and their Estates; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

***Releasing Parties*** means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases. For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

Dated: [●]
      Houston, Texas

/s/  DRAFT
WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   gabriel.morgan@weil.com
        clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   matt.barr@weil.com
        sunny.singh@weil.com
        andriana.georgallas@weil.com
        kevin.bostel@weil.com
        jason.george@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

11

**Exhibit 10**

**Form of Release Opt-In**

**OPTIONAL:**      **RELEASE OPT-IN FORM**

You are receiving this opt in form (the "**Release Opt-In Form**") because you are or may be a holder (a "**Holder**") of a Claim against First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") that is not entitled to vote on the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed on [●], 2026 (Docket No. [●]) (as may be modified, amended, or supplemented, the "**Plan**").[1] A Holder of Claim(s) that affirmatively opts in to the third-party releases set forth below on or before July 20, 2026 at 5:00 p.m. (Central Time) (the "**Opt-In Deadline**") will grant the third-party releases under the Plan.  For the avoidance of doubt, if you receive this Release Opt-In Form and do not affirmatively opt in to the Third-Party Releases by the Opt-In Deadline but you are a Preference Settlement Electing Creditor or a Holder of Claim(s) in a Voting Class and you opt in to the Third-Party Releases in your Ballot, you are a Releasing Party.

If you believe you are a Holder of a DIP A Claim(s), or Claim(s) in Class 1 and/or Class 2 and choose to opt in to the third-party releases set forth in Section 13.5(b) of the Plan, please submit your election to opt in through one of the following methods: (i) completing, signing, dating, and returning this Release Opt-In Form promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to the Debtors' voting agent, Kroll Restructuring Administration LLC ("**Kroll**" or the "**Voting Agent**"), at the address set forth below, so that it is actually received by the Voting Agent prior to the Opt-In Deadline, or (ii) by completing and signing the Release Opt-In Form via the Online Portal located at https://restructuring.ra.kroll.com/FirstBrands (the "**Online Portal**").

**To ensure that your Release Opt-In Form is counted, you must complete, clearly sign, and timely return your Release Opt-In Form so that it is actually received by the Voting Agent by the Opt-In Deadline by *ONLY ONE* of the following methods:**

**Hard Copy Submission**

| **If by First Class Mail, Hand Delivery, or Overnight Mail:** |
| --- |
| First Brands Group, LLC Ballot Processing<br>c/o Kroll Restructuring Administration LLC<br>850 3rd Avenue, Suite 412<br>Brooklyn, NY 11232<br><br>To arrange hand delivery of your Release Opt-In Form, please email the Voting Agent at FirstBrandsBallots@ra.kroll.com (with "First Brands Release Opt-In Form Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery. |

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors, LLC*, filed on [●], 2026 (Docket No. [●]) (as may be amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**"), as applicable.

**Electronic Online Submission**

| If by Online Portal |
|---|
| To submit your Release Opt-In Form via the Voting Agent's Online Portal, visit https://restructuring.ra.kroll.com/FirstBrands. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Release Opt-In Form.<br><br>Release Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted. If submitting online, to have your opt in election counted, you must electronically complete, sign, and submit your electronic Release Opt-In Form by utilizing the Online Portal.<br><br>**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Release Opt-In Form:**<br><br>**Unique E-Opt-In ID#:** _____<br><br>The Online Portal is the sole manner in which Release Opt-In Forms will be accepted via electronic or online transmission.  Release Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.<br><br>**Holders are strongly encouraged to submit their Release Opt-In Forms via the Online Portal.  Parties who submit a Release Opt-In Form using the Voting Agent's Online Portal should NOT also submit a hard copy Release Opt-In Form.** |

**THIS RELEASE OPT-IN FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE OPT-IN DEADLINE.  IF THE RELEASE OPT-IN FORM IS RECEIVED AFTER THE OPT-IN DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1.        Claim(s) Held**. The undersigned hereby certifies that, as of the Voting Record Date of June 15, 2026, the undersigned was the Holder (or authorized signatory of such a Holder) of the Claim(s) against the FBG Debtors set forth below (check the applicable box(es)).

| |
|---|
| ☐ **DIP A Claims** |
| ☐ **Class 1 Other Priority Claims** |
| ☐ **Class 2 Other Secured Claims** |

2

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, you will have consented to the releases contained in Section 13.5(b) of the Plan. The releases as presented in the Plan are provided below:**

**SECTION 13.4      PLAN INJUNCTION.**

**(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to the Plan, including under Section 13.5(a) or Section 13.5(b) of the Plan, or (ii) subject to exculpation pursuant to Section 13.6 of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 13.6 of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with**

3

respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the Debtors or their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)      Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy

4

Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action. For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)     As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum). If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust. For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d)

(e)     The injunctions in Section 13.4 shall extend to any successors of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

**SECTION 13.5     RELEASES.**

(a)     Releases by the FBG Debtors and their Estates. Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to

section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before  the Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive

6

Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan, or (e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors.

(b)    **Third-Party Releases.**  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan;

7

or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in <u>Section 13.5(b)</u> shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c) FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d) NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

**SECTION 13.6     <u>EXCULPATION</u>.**

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE;  THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT

8

**OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN <u>SECTION 13.6</u> SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

**<u>Relevant Definitions Related to Release and Exculpation Provisions:</u>**

*Exculpated Parties* means each of the following in their capacity as such: (i) the FBG Debtors; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the FBG Debtors and their Estates; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing

9

Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases. For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**By checking the box below, the undersigned Holder of a Claim not entitled to vote identified in Item 1 above, having received notice of the opportunity to opt in to granting the releases contained in Section 13.5(b) of the Plan:**

☐ **Elects to <u>OPT IN</u> to the releases contained in Section 13.5(b) of the Plan.**

**Item 3.**   **Certifications**. By signing this Release Opt-In Form, the undersigned certifies that:

   a.   as of the Voting Record Date, either: (i) the Holder is the Holder of the Claims set forth in Item 1; or (ii) the Holder is an authorized signatory for an entity that is the Holder of the Claims set forth in Item 1;

   b.   the undersigned has received a copy of the Notice of Non-Voting Status and the Release Opt-In Form and that the Release Opt-In Form is made pursuant to the terms and conditions set forth therein;

   c.   if applicable, the undersigned has submitted the same election concerning the releases with respect to all Claims held by the undersigned; and

   d.   no other Release Opt-In Forms have been submitted with respect to the Holder's Claims, or, if any other Release Opt-In Forms have been submitted with respect to such Claims, then any such earlier Release Opt-In Forms are hereby revoked.

Name of Holder: _____
(*print or type*)

Signature: _____

Name of Signatory: _____
(*if other than Holder, include name and title*)

Title: _____

Address: _____

_____

_____

_____

E-mail Address: _____

Date Completed: _____

11

**IF YOU WISH TO OPT IN, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OPT-IN FORM AND RETURN IT TO THE VOTING AGENT BY *JUST ONE* OF THE PREVIOUSLY OUTLINED METHODS: FIRST CLASS OR OVERNIGHT MAIL, HAND DELIVERY, OR BY ONLINE TRANSMISSION VIA THE ONLINE PORTAL.**

---

**THIS OPT-IN FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE THE OPT-IN DEADLINE OF JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

---

**Exhibit 11**

**Consent Program Opt-In Form**

**OPTIONAL:**   **CONSENT PROGRAM OPT-IN FORM**

You are receiving this opt-in form (the "**Consent Program Opt-In Form**") because you may be a holder (a "**Holder**") of an Administrative Expense Claim against First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and/or Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") that may be entitled to participate in the Administrative Expense Claims Consent Program in connection with the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on [●], 2026 (Docket No. [●]) (as may be modified, amended, or supplemented, the "**Plan**")[1] and approved on [●], 2026 (the "**Confirmation Date**").   To participate in the Administrative Expense Claims Consent Program, **a Holder must timely, properly, and affirmatively opt in by completing and submitting this Consent Program Opt-In Form in accordance with the procedures set forth below so that it is <u>actually received</u> by Kroll Restructuring Administration LLC ("Kroll" or the "Voting Agent") on or before 5:00 P.M. (Central Time) on the date that is sixty (60) days after the Confirmation Date (the "Consent Program Opt-In Deadline").**

If you are a Holder of an Administrative Expense Claim against the FBG Debtors and wish to participate in the Administrative Expense Claims Consent Program, please submit your opt-in election through one of the following methods: (i) completing, signing, dating, and returning this Consent Program Opt-In Form promptly in the enclosed reply envelope provided, or otherwise via first class mail, overnight courier, or hand delivery to the Voting Agent at the address set forth below, so that it is actually received by the Voting Agent on or prior to the Consent Program Opt-In Deadline, or (ii) by completing and signing the electronic version of your Consent Program Opt-In Form and submitting it via the Online Portal located at https://restructuring.ra.kroll.com/FirstBrands.  Instructions for submitting this Consent Program Opt-In Form via either of the specified, valid methods are outlined later in this document.

**If you timely, properly, and affirmatively opt in to the Administrative Expense Claims Consent Program by completing and submitting this Consent Program Opt-In Form, your Administrative Expense Claim will be deemed Allowed in the amount listed in <u>Item 1</u> next to "Settled Administrative Expense Claim," which is equal to 50% of the Reconciled Amount (as defined below) (the "Settled Administrative Expense Claim"), and you will receive distributions accorded to Holders of Settled Administrative Expense Claims under the Litigation Trust Waterfall in accordance with Section 6.5 of the Plan.  This means that your Settled Administrative Expense Claim will be entitled to payment from the Litigation Trust before payment of other Allowed Administrative Expense Claims that are not Settled Administrative Expense Claims, as illustrated in Section I.D of the Disclosure Statement.**

If you have any questions about the status of your Claim, wish to obtain paper copies of the Plan, Disclosure Statement, or Confirmation Order, or have questions on how to properly complete or submit this Consent Program Opt-In Form, please contact the Voting Agent by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on [●], 2026 (Docket No. [●])  (as may be amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**"), as applicable.

LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "Administrative Expense Claims Program Inquiry" in the subject line.  Please be advised that the Voting Agent cannot provide legal advice.

Copies of the Plan, Confirmation Order, and Disclosure Statement can also be accessed, free of charge, online at https://restructuring.ra.kroll.com/FirstBrands.  You may also access electronic copies of the Plan, Disclosure Statement, Confirmation Order, and any other solicitation materials via the QR Code below.



**To ensure that your Consent Program Opt-In Form is counted, clearly sign and timely return your properly completed Consent Program Opt-In Form in the enclosed prepaid pre-addressed business reply envelope, or via (i) first-class mail, overnight courier, (ii) hand delivery, or (iii) the Online Portal according to submission instructions set forth below**

**THIS CONSENT PROGRAM OPT-IN FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE CONSENT PROGRAM OPT-IN DEADLINE.  IF THE CONSENT PROGRAM OPT-IN FORM IS RECEIVED AFTER THE CONSENT PROGRAM OPT-IN DEADLINE (UNLESS EXTENDED BY THE CLAIMS OMBUDSMAN IN ITS SOLE DISCRETION), IT WILL NOT BE COUNTED AND YOU WILL NOT RECEIVE DISTRIBUTIONS ACCORDED TO HOLDERS OF SETTLED ADMINISTRATIVE EXPENSE CLAIMS UNDER THE LITIGATION TRUST WATERFALL IN ACCORDANCE WITH SECTION 6.5 OF THE PLAN.**

**Item 1.        Amount of Administrative Expense Claim**. As of July 10, 2026, (the "**Administrative Claims Record Date**") the FBG Debtors believe that you held unpaid Administrative Expense Claims in the aggregate amount listed in the table below as the "**Reconciled Amount**."  If you timely, properly, and affirmatively opt in to the Administrative Expense Claims Consent Program, you will be the Holder of a Settled Administrative Expense Claim in the amount below, which is **50%** of the Reconciled Amount, and you will receive distributions on account of and toward your Settled Administrative Expense Claim in accordance with the Litigation Trust Waterfall as set forth in Section 6.5 of the Plan.

**The FBG Debtors have calculated each Reconciled Amount based upon the FBG Debtors' review of their books and records, stipulations and agreed orders entered into between the**

**FBG Debtors and holders of Administrative Expense Claims, and the results of their efforts to reconcile all Administrative Expense Claims filed with the Bankruptcy Court. To the extent a Reconciled Amount reflects an amount agreed upon pursuant to a stipulation or other agreement between the FBG Debtors and the applicable Holder, such stipulated or agreed amount shall constitute the Reconciled Amount for purposes of this Consent Program Opt-In Form.**

| | |
|---|---|
| **Reconciled Amount** | $ _____ |
| **Settled Administrative Expense Claim** | $ _____ |

If you disagree with the amount listed as the Reconciled Amount but still wish to participate in the Administrative Expense Claims Consent Program, you are encouraged to contact the Claims Ombudsman as soon as possible.

**Item 2.         Administrative Expense Claims Consent Program.**

**CRITICAL INFORMATION REGARDING ADMINISTRATIVE EXPENSE CLAIMS AND PROCEDURES FOR AGREEING TO DIFFERENT TREATMENT**

Generally, holders of administrative expense claims that have become allowed by the Bankruptcy Court are entitled to be paid the allowed amount of such administrative expense claims in full as a condition to the effectiveness of a chapter 11 plan. However, holders of administrative expense claims can agree to "different treatment" for such claim and such agreement can enable a debtor to confirm and consummate a chapter 11 plan at an earlier date.

In light of the amount of secured, administrative, and priority claims against the FBG Debtors' estates, as well as the forecasted timeline for the FBG Debtors to monetize and collect on their remaining assets (including significant litigation claims), the FBG Debtors anticipate that there will be a significant executory period between the Confirmation Date of the Plan and the Effective Date of the Plan. Accordingly, to accelerate (i) cash payments to consenting Holders of Allowed Administrative Expense Claims, and (ii) the consummation of the Plan, the Plan provides for the Administrative Expense Claims Consent Program.

**Pursuant to the Plan, each Holder of an Administrative Expense Claim that is entitled to participate in the Administrative Expense Claims Consent Program and that timely, properly, and affirmatively opts in will**:

   i.   have its Administrative Expense Claim deemed Allowed in the amount listed as the Settled Administrative Expense Claim in **Item 1** above, which is equal to 50% of the Reconciled Amount in **Item 1** above; and

ii.  receive distributions from the Litigation Trust in accordance with the Litigation Trust Waterfall set forth in Section 6.5 of the Plan, with Holders of Settled Administrative Expense Claims receiving distributions that will repay the Settled Administrative Expense Claim in full before holders of Allowed Administrative Expense Claims, Other Priority Claims, Priority Tax Claims, and Class 3 Litigation Trust Interests receive any distributions from the Litigation Trust.

Distributions on account of your Settled Administrative Expense Claim will be paid from the Litigation Trust in accordance with the Litigation Trust Waterfall set forth in Section 6.5 of the Plan.  Under the Litigation Trust Waterfall, once aggregate distributions from the Litigation Trust exceed the Second Return Threshold ($350 million), 16% of distributable proceeds will be shared with holders of Class 3 Litigation Trust Interests and holders of Settled Administrative Expense Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims.  Those proceeds are distributed in the following order: **first**, to holders of Settled Administrative Expense Claims, who opt-in to the Administrative Expense Claims Consent Program on such holders' Consent Program Opt-In Form, pro rata based on the aggregate amount of Allowed Settled Administrative Expense Claims, until each such holder has received distributions equal to the Allowed amount of its Settled Administrative Expense Claim; and **second**, to other holders of Allowed Administrative Expense Claims.  Holders, who do not opt-in to participate in the Administrative Expense Claims Consent Program, will only begin to receive distributions from the Litigation Trust following payment in full of all Settled Administrative Expense Claims.  **Accordingly, by opting in to the Administrative Expense Claims Consent Program, you will be entitled to receive distributions on account of your Settled Administrative Expense Claim before holders of Administrative Expense Claims who do not opt in to the Administrative Expense Claims Consent Program, thereby accelerating your recovery under the Litigation Trust Waterfall**.

Regardless of your election herein, any Administrative Expense Claims accrued after the Administrative Claims Record Date will be treated in accordance with Section 2.1 of the Plan.

**If you do not timely, properly, and affirmatively opt in to the Administrative Expense Claims Consent Program,** your Administrative Expense Claim will be treated in accordance with Section 2.1 of the Plan and, to the extent such Administrative Expense Claim becomes Allowed by the Bankruptcy Court (through settlement or adjudication), such Allowed Administrative Expense Claim will be paid in full in Cash on the later of (a) the Effective Date, and (b) the first Business Day after the date that is forty-five (45) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

**The timing of the Effective Date and distributions to Holders of Allowed Administrative Expense Claims are indeterminate and may depend in part on the level of participation in the Administrative Expense Claims Consent Program.**  The Debtors anticipate that the more Holders that choose not to timely, properly, and affirmatively opt in to the Administrative Expense Claims Consent Program, the longer it will take for the FBG Debtors to have sufficient cash to satisfy all Allowed Administrative Expense Claims, thus ultimately delaying or even potentially contributing to risking the occurrence of the Effective Date.

4

Holders of the following Administrative Expense Claims will not receive this Consent Program Opt-In Form and may not participate in the Administrative Expense Claims Consent Program: (i) Professional Fee Claims; (ii) DIP A Claims; (iii) Roll-Up Claims; (iv) Intercompany Claims; or (v) Priority Tax Claims.  Unless otherwise agreed to by the FBG Debtors and the applicable Holder, all other Holders of known and identified Administrative Expense Claims are eligible to participate and will receive an Administrative Expense Claims Consent Program Opt-In Form.

Procedures for the submission, collection, and processing of the Consent Program Opt-In Forms (*i.e.*, the Consent Program Opt-In Procedures) are located in paragraphs 28–39 of the Disclosure Statement Order.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE DISCLOSURE STATEMENT AND THE PLAN, INCLUDING THE ADMINISTRATIVE EXPENSE CLAIM AND ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM PROVISIONS THEREIN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**By checking the box below, the undersigned Holder of Administrative Expense Claim(s), having received notice of the Administrative Expense Claims Consent Program:**

☐ **Elects to <u>OPT IN</u> to the Administrative Expense Claims Consent Program.**

**Item 3.**   **Certifications**. By signing this Consent Program Opt-In Form, the undersigned certifies that:

a.   as of the Administrative Expense Claims Record Date, either: (i) the Holder is the Holder of Administrative Expense Claims; or (ii) the Holder is an authorized signatory for an entity that is the Holder of Administrative Expense Claims;

b.   the undersigned has received a copy of this Consent Program Opt-In Form; and

c.   no other Consent Program Opt-In Form has been submitted with respect to the Holder's Administrative Expense Claims, or if any other Consent Program Opt-In Forms have been submitted with respect to such Claims, then any such earlier Consent Program Opt-In Forms are hereby revoked.

Name of Holder:   _____
                  (*print or type*)

Signature:        _____

Name of Signatory: _____
                  (*if other than Holder, include name and title*)

5

Title: _____

Address: _____

_____

_____

_____

E-mail Address: _____

Date Completed: _____

**IF YOU WISH TO OPT IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, YOU MUST COMPLETE, SIGN, AND DATE THIS CONSENT PROGRAM OPT-IN FORM AND RETURN IT TO THE VOTING AGENT VIA _JUST ONE_ OF THE FOLLOWING METHODS SO THAT IT IS _ACTUALLY RECEIVED_ BY THE VOTING AGENT ON OR BEFORE THE CONSENT PROGRAM OPT-IN DEADLINE:**

| **To Submit Your Consent Program Opt-In Form Via Online Portal** |
|---|

To submit your Consent Program Opt-In Form via Kroll's Online Portal, visit https://restructuring.ra.kroll.com/FirstBrands. Click on the "**Submit E-Ballot**" section of the website and follow the instructions to submit your Consent Program Opt-In Form.

IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Consent Program Opt-In Form:

**Unique E-Opt-In Election Form ID#:** _____

The Online Portal is the sole manner in which your Consent Program Opt-In Form will be accepted via electronic or online transmission. Consent Program Opt-In Forms submitted by facsimile, email or other means of electronic transmission will not be valid. Any Consent Program Opt-In Form submitted through the Online Portal will be deemed to contain an electronic Holder signature that is immediately legally valid and effective.

Please complete and submit an electronic Consent Program Opt-In Form for each Unique E-Opt-In Election ID# you receive, as applicable. Holders who cast a Consent Program Opt-In Form using the Online Portal should NOT also submit a paper copy of their Consent Program Opt-In Form.

| **To Submit Your Consent Program Opt-In Form Via Paper Copy** |
|---|

To submit your election via a paper Consent Program Opt-In Form, complete Item 2 and Item 3 above and submit your paper Consent Program Opt-In Form in the pre-addressed, pre-paid return envelope provided, or otherwise, by first-class mail, hand delivery, or overnight courier to:

First Brands Group, LLC Ballot Processing
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

6

To arrange hand delivery of your Consent Program Opt-In Form, please email Kroll at FirstBrandsBallots@ra.kroll.com (with "First Brands Consent Program Opt-In Form Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**Exhibit 12**

**Form of Preference Settlement Opt-In Form**

**OPTIONAL:**     **PREFERENCE SETTLEMENT OPT-IN FORM**

You are receiving this election form (the "**Preference Settlement Opt-In Form**") because you may be a Trade Creditor,[1] Supply Chain Financer,[2] or Factor[3] of one or more of First Brands Group Holdings, LLC, its Debtor Subsidiaries and Viceroy Private Capital, LLC (collectively, "**FBG Debtors**") as of June 15, 2026 (the "**Preference Settlement Record Date**") (each, a "**Preference Settlement Eligible Creditor**" and collectively, the "**Preference Settlement Eligible Creditors**") that may be entitled to participate in the Preference Settlement set forth in the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on [●], 2026 (Docket No. [●]) (as may be modified, amended, or supplemented, the "**Plan**").[4]  Preference Settlement Eligible Creditors are eligible to opt-in to the Preference Settlement under the Plan.

**You are not required to participate in the Preference Settlement. Participation in the Preference Settlement, which requires the contribution of your Direct Creditor Claims to the Litigation Trust, is optional.  Under certain circumstances, the Litigation Trust may commence an action against you that will reverse the waiver of Preference Actions for Trade Creditors, or the modified new value defense for Supply Chain Financers and Factors, if Adverse Conduct is alleged by the Litigation Trust and ultimately established by Final Order, as required by the Plan.  In such an instance, you will not regain ownership and/or control of your Direct Creditor Claims.  However, such Preference Settlement Electing Creditor's grant of Third-Party Releases will be reversed and such creditor will no longer be a "Releasing Party" (or a Released Party) under the Plan.  For all these reasons, you should carefully consider whether to participate in the Preference Settlement based upon your individual circumstances—including your views on**

---

[1]  "**Trade Creditor**" means any Person (including any Person that was paid through a payment intermediary but excluding any such payment intermediary) that, as of the Petition Date, holds a General Unsecured Claim against an FBG Debtor arising from the ordinary course of the FBG Debtor's business for goods sold, services rendered, or other trade obligations incurred prior to the Petition Date, excluding any Person whose claim arises from a (secured or unsecured) loan, financing arrangement, bond, note, or other financial indebtedness.  For the avoidance of doubt, a Trade Creditor shall not include any Entity that qualifies as a Factor or Supply Chain Financer.

[2]  "**Supply Chain Financer**" means any financial institution, fund, or other Person that (i) provided (or asserts that it provided) financing or liquidity to suppliers or vendors of one or more FBG Debtors or reimbursed any FBG Debtor Affiliate for providing such financing or liquidity in connection with such suppliers' or vendors' accounts receivable  arising from the supply of goods or services to such FBG Debtors, whether through supply chain financing programs, reverse factoring arrangements, receivables purchase facilities, or similar arrangements; or (ii) remitted payments (or asserts that it remitted payments) on behalf of one or more FBG Debtors relating to accounts payable arising from the supply of goods or services to such FBG Debtors, and as identified in an exhibit to the Litigation Trust Agreement.

[3]  "**Factor**" means any Person that purchased, or intended or agreed to purchase, accounts receivable at a discount from one or more FBG Debtors, and as identified in an exhibit to the Litigation Trust Agreement.

[4]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on [●], 2026 (Docket No. [●]) (as may be amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**"), as applicable.

2

**your potential preference exposure and value of your potential Direct Creditor Claims. Contribution of your Direct Creditor Claims is irrevocable.**

A Preference Settlement Eligible Creditor will participate in the Preference Settlement set forth below if **(i) such Preference Settlement Eligible Creditor affirmatively elects to participate by properly completing Item 1 and Item 2 of this Preference Settlement Opt-In Form and submitting such completed Preference Settlement Opt-In Form in accordance with the procedures set forth below so that it is actually received by Kroll Restructuring Administration ("Kroll") on or before the date that is forty-five (45) days after the Confirmation Date (the "Preference Settlement Opt-In Deadline") electing to (a) participate in, and receive the benefits of, the Preference Settlement, (b) grant the releases contained in Section 13.5(b) of the Plan, and (c) contribute any direct (non-derivative) Claims against any non-Debtor Person that relate to the conduct of the Debtors and/or Affiliates or professionals of the Debtors on or before the Petition Date (excluding any Claims against a Released Party that are released under the Plan) ("Direct Creditor Claims") to the Litigation Trust and (ii) you do not meet the definition of Adverse Conduct,[5] as determined by a Final Order, and (iii) you are not a Specified Non-Released Party;[6]** *provided* **that if a Preference Action is brought against a Trade Creditor that did not timely opt in to the Preference Settlement, such Trade Creditor shall have an additional thirty (30) days following service of the Preference Action to opt in to the Preference Settlement.** Preference Settlement Eligible Creditors who timely elect to participate in the Preference Settlement will be treated as "**Preference Settlement Electing Creditors.**"

If you are a Preference Settlement Eligible Creditor and choose to opt in to the Preference Settlement, you must submit your "opt in" election through one of the following methods: (i) completing, signing, dating, and returning this Preference Settlement Opt-In Form promptly in the enclosed reply envelope provided, or otherwise via first class mail, overnight courier, or hand delivery to Kroll at the address set forth below, so that it is **actually received** by Kroll prior to the Preference Settlement Opt-In Deadline, or (ii) by completing and signing

---

[5]  "**Adverse Conduct**" means (i) engaged in wrongful, actual, or constructively fraudulent conduct against any Debtor or Affiliate of any Debtor, or otherwise participated, conspired with, or acted in concert with, any Person that engaged in wrongful, actual or constructively fraudulent conduct against any Debtors, creditors, or lenders of the Debtors (or Affiliates of Debtors), (ii) received an avoidable transfer on grounds other than section 547 of the Bankruptcy Code from any of the Debtors, or (iii) received a transfer not in good faith.

[6]  "**Specified Non-Released Parties**" means (i) any Person (or Affiliate of any Person) against which any action has been commenced on behalf of a Debtor or its Estate in this Bankruptcy Court or any court of competent jurisdiction prior to the Confirmation Hearing, including, for the avoidance of doubt, any defendants named or to be named by the Debtors in the James Complaint or named by the Debtors in the Onset Complaint; (ii) any Person (or Affiliate of any Person) identified as a defendant or a potential defendant of a Cause of Action in the Plan Supplement; (iii) any Person (or Affiliate of any Person) that is charged with a crime (whether before or after the Confirmation Date) based on conduct related to the Debtors; (iv) any Person (or Affiliate of any Person) that meets the definition of Adverse Conduct, as determined by a Final Order of the Bankruptcy Court; and (v) any subsequent transferee of any of the foregoing with respect to any assets of or transfers by the Debtors or their Affiliates or Representatives.  Notwithstanding the foregoing or anything else in the Plan to the contrary (including anything in the definition of Released Party), and for the avoidance of doubt, neither the FBG Debtors and their Estates, nor any member of the Ad Hoc Group, Ad Hoc Group Advisors, Creditors' Committee and each of its members, Special Committee member, Independent Manager, Specified Executive, Professional, Prepetition Secured Party, nor DIP Secured Party, with respect to each of the foregoing, solely in their capacities as such, shall be construed to be or deemed to be a Specified Non-Released Party.

the electronic version of your Preference Settlement Opt-In Form and submitting it via the Online Portal located at https://restructuring.ra.kroll.com/FirstBrands. Instructions for submitting this Preference Settlement Opt-In Form via either of the specified, valid methods are outlined below.

**If you timely submit your "opt in" Preference Settlement Opt-In Form in accordance with the instructions set forth herein, you will (i) grant the releases contained in <u>Section 13.5(b)</u> of the Plan; (ii) contribute your Direct Creditor Claims to the Litigation Trust; and (iii) participate in, and receive the benefit of, the Preference Settlement, including, if you are (a) a Trade Creditor, you will be released from Preference Actions and (b) if you are a Supply Chain Financer or a Factor, you will receive the benefit of the Modified New Value Elements, as described in more detail in <u>Section 6.11(e)</u> of the Plan.**

If you have any questions about the status of your Claim or if you wish to obtain paper copies of the Plan and the Disclosure Statement, free of charge, you may contact Kroll, by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line. Please be advised that Kroll cannot provide legal advice.

Copies of the Plan and Disclosure Statement and Disclosure Statement Order (with Solicitation and Voting Procedures annexed thereto as <u>Exhibit 2</u>) can also be accessed, free of charge, online at https://restructuring.ra.kroll.com/FirstBrands. You may also access electronic copies of the Plan, Disclosure Statement, and any other solicitation materials via the QR Code below. Procedures for the submission and tabulation of the Preference Settlement Opt-In Forms are located in paragraphs 27–39 of the Disclosure Statement Order.

To access the Online Portal and view the Plan, Disclosure Statement, Disclosure Statement Order, and other relevant materials, please use the QR Code set forth below:



4

**To ensure that your Preference Settlement Opt-In Form is processed, clearly sign and timely return your properly completed Preference Settlement Opt-In Form (i) in hard copy (a) in the enclosed prepaid pre-addressed business reply envelope, or (b) via first-class mail, overnight courier, or hand delivery or (ii) online according to instructions provided below.**

**See Below for Paper Copy and Online Preference Settlement Opt-In Form Instructions**

**THIS PREFERENCE SETTLEMENT OPT-IN FORM MUST BE ACTUALLY RECEIVED BY KROLL BY THE PREFERENCE SETTLEMENT OPT-IN DEADLINE. IF THE PREFERENCE SETTLEMENT OPT-IN FORM IS RECEIVED AFTER THE PREFERENCE SETTLEMENT OPT-IN DEADLINE, IT WILL NOT BE PROCESSED AND YOU WILL NOT BE A PREFERENCE SETTLEMENT ELECTING CREDITOR AND WILL NOT PARTICIPATE IN THE PREFERENCE SETTLEMENT IN EXCHANGE FOR THE TREATMENT PROVIDED IN THE PREFERENCE SETTLEMENT SET FORTH BELOW.**

**CRITICAL INFORMATION REGARDING YOUR CLAIMS
AND PROCEDURES FOR AGREEING TO DIFFERENT TREATMENT**

**If you do not timely, properly, and affirmatively opt in to the Preference Settlement by the Preference Settlement Opt-In Deadline, you will not be a Preference Settlement Electing Creditor for purposes of the Plan, you will not contribute your Direct Creditor Claims to the Litigation Trust, you will not grant the releases contained in Section 13.5(b) of the Plan, and therefore, you will not receive the benefit of the Preference Settlement. Specifically, to the extent you are (i) a Trade Creditor, you will not be released from Preference Actions under the Plan, or (ii) a Supply Chain Financer or Factor, you will not receive the benefit of the Modified New Value Elements, as described in more detail in Section 6.11(e) of the Plan.**

In accordance with the Preference Settlement, (i) Trade Creditors who opt-in to become Preference Settlement Electing Creditors will be released from Preference Actions under the Plan, and (ii) Supply Chain Financers and Factors who opt-in to become Preference Settlement Electing Creditors will receive the benefit of the Modified New Value Elements as described in more detail in Section 6.11(e) of the Plan. You should contact the Debtors if you are unsure as to your classification as a Trade Creditor, Supply Chain Financer, or Factor.

The creation of the Litigation Trust, the issuance of Class 3(b) Litigation Trust Interests to Eligible Creditors, the Preference Settlement, and any distributions or benefits to Preference Settlement Electing Creditors from the Litigation Trust or under the Preference Settlement, including (i) the release of Trade Creditors from Preference Actions and (ii) the benefit of the Modified New Value Elements as described in Section 6.11(e) of the Plan for Supply Chain Financers and Factors, are each contingent upon the confirmation of the Plan by the Bankruptcy Court. In the event that the Plan is not confirmed the Litigation Trust will not be established, and the Preference Settlement will be of no force and effect.

**If you timely, properly, and affirmatively opt in to the Preference Settlement by the Preference Settlement Opt-In Deadline** by completing and submitting a Preference Settlement Opt-In Form in accordance with the procedures set forth herein, you will **have consented to the**

5

**releases contained in Section 13.5(b) of the Plan and be a Releasing Party and contributed your Direct Creditor Claims to the Litigation Trust.** This means you will be releasing claims against the "Released Parties" set forth in the Plan. For your reference, the applicable release provisions and related definitions in the Plan are set forth in <u>Exhibit 1</u>.

**Preference Settlement Opt-In Form.**

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE DISCLOSURE STATEMENT AND THE PLAN, THE PREFERENCE SETTLEMENT, AND LITIGATION TRUST PROVISIONS THEREIN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**IF YOU OBJECT TO THE PLAN, CONFIRMATION ORDER, ANY RELATED SETTLEMENTS, OR RELIEF SOUGHT IN FURTHERANCE THEREOF, YOU WILL BE BARRED FROM PARTICIPATING IN THE PREFERENCE SETTLEMENT AND ANY ELECTION YOU MAKE IN <u>ITEM 1</u> BELOW TO OPT IN TO THE PREFERENCE SETTLEMENT WILL NOT BE COUNTED.**

**Item 1.        Election.**

**PURSUANT TO THE PLAN AND PREFERENCE SETTLEMENT, IF YOU TIMELY, PROPERLY, AND AFFIRMATIVELY OPT IN, YOU, IN EXCHANGE FOR PARTICIPATING IN, AND RECEIVING THE BENEFITS OF, THE PREFERENCE SETTLEMENT (I) CONSENT TO THE RELEASE PROVISIONS IN <u>SECTION 13.5(b)</u> OF THE PLAN (WHICH ARE SUMMARIZED ON <u>EXHIBIT 1</u>, AND (II) CONTRIBUTE YOUR DIRECT CREDITOR CLAIMS TO THE LITIGATION TRUST.**

**By checking the box below, the undersigned holder, having received notice of the opportunity to opt in to the Preference Settlement:**

☐ **Elects to <u>OPT IN</u> to the Preference Settlement.**

**Item 2.        Certifications**.

By signing this Preference Settlement Opt-In Form, the undersigned certifies that:

a.      as of the Preference Settlement Record Date, either the undersigned is: (i) a Trade Creditor, Supply Chain Financer, or Factor holding Claims against one or more FBG Debtor; or (ii) is an authorized signatory for an entity that is a Trade Creditor, Supply Chain Financer, or Factor holding Claims against one or more FBG Debtor;

b.      the undersigned has received a copy of this Preference Settlement Opt-In Form; and

c.      no other Preference Settlement Opt-In Form has been submitted with respect to the holder's Claims, or if any other Preference Settlement Opt-In Forms have been submitted with respect to such Claims, then any such earlier Preference Settlement Opt-In Forms are hereby revoked.

Name of Holder:      _____
                                   (*print or type*)

7

Signature: _____

Name of Signatory: _____
*(if other than Holder, include name and title)*

Title: _____

Address: _____

_____

_____

E-mail Address: _____

Date Completed: _____

**IF YOU WISH TO OPT IN TO THE PREFERENCE SETTLEMENT, PLEASE COMPLETE, SIGN, AND DATE THIS PREFERENCE SETTLEMENT OPT-IN FORM AND RETURN IT TO KROLL VIA *JUST ONE* OF THE FOLLOWING METHODS SO THAT IT IS *ACTUALLY RECEIVED* BY KROLL ON OR BEFORE THE PREFERENCE SETTLEMENT OPT-IN DEADLINE:**

| **To Submit Your Preference Settlement Opt-In Form Via Online Portal** |
| --- |
| To submit your Preference Settlement Opt-In Form via Kroll's Online Portal, visit https://restructuring.ra.kroll.com/FirstBrands.  Click on the "**Submit E-Ballot**" section of the website and follow the instructions to submit your Preference Settlement Opt-In Form. <br><br> IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Preference Settlement Opt-In Form: <br><br> **Unique E-Election Form ID#:** _____ <br><br> The Online Portal is the sole manner in which your Preference Settlement Opt-In Form will be accepted via electronic or online transmission. Preference Settlement Opt-In Forms submitted by facsimile, email or other means of electronic transmission will not be valid.  Any Preference Settlement Opt-In Form submitted through the Online Portal will be deemed to contain an electronic holder signature that is immediately legally valid and effective. <br><br> Please complete and submit an electronic Preference Settlement Opt-In Form for each Unique E-Election ID# you receive, as applicable.  Holders who cast a Preference Settlement Opt-In Form using the Online Portal should NOT also submit a paper copy of their Preference Settlement Opt-In Form. |

| To Submit Your Preference Settlement Opt-In Form Via Paper Copy |
|---|

To submit your election via a paper Preference Settlement Opt-In Form, complete <u>Item 1 and Item 2</u> above and submit your paper Preference Settlement Opt-In Form in the pre-addressed, pre-paid return envelope provided, or otherwise, by first-class mail, hand delivery, or overnight courier to:

First Brands Group, LLC Ballot Processing
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Preference Settlement Opt-In Form, please email Kroll at FirstBrandsBallots@ra.kroll.com (with "First Brands Preference Settlement Opt-In Form Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**Exhibit 1**

**Release, Exculpation, Plan Injunction**

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, you will have consented to the releases contained in Section 13.5(b) of the Plan. The releases as presented in the Plan are provided below:

**SECTION 13.4        PLAN INJUNCTION.**

(a)        Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.

(b)        Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to the Plan, including under Section 13.5(a) or Section 13.5(b) of the Plan, or (ii) subject to exculpation pursuant to Section 13.6 of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 13.6 of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action: (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with

2

respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the Debtors or their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)     Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy

Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)     As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).  If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.  For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d)

(e)     The injunctions in Section 13.4 shall extend to any successors of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

SECTION 13.5     RELEASES.

(a)     Releases by the FBG Debtors and their Estates.  Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to

4

section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before  the Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive

5

Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan, or (e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors.

(b)     **Third-Party Releases.** Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan;

6

or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in <u>Section 13.5(b)</u> shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)     NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6     <u>EXCULPATION</u>.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE;  THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT

7

**OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN <u>SECTION 13.6</u> SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

**<u>Relevant Definitions Related to Release and Exculpation Provisions:</u>**

***Exculpated Parties*** means each of the following in their capacity as such: (i) the FBG Debtors; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

***Released Parties*** means collectively, and in each case solely in their capacities as such, (i) the FBG Debtors and their Estates; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the Litigation Trust Backstop Parties; (xi) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xii) solely with respect to each of the foregoing

8

Persons in clauses (vii) – (xi), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases. For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

9

**Exhibit 13**

**Litigation Trust – Notice of Participation Procedures**

*Date of Notice:* **June [22], 2026**

<div style="border:1px solid; background:#d59a9a; padding:10px;">

### ACTION REQUIRED
### BY: JULY [13], 2026 at 5:00pm CT

**FAILURE TO PROVIDE THE REQUIRED INFORMATION BY THE LITIGATION TRUST INTEREST RESPONSE DEADLINE MAY RESULT IN YOU <u>NOT RECEIVING LITIGATION TRUST INTERESTS YOU ARE ENTITLED TO</u> AS A HOLDER OF CLAIMS IN THE FIRST BRANDS GROUP CASES AND THEREBY FORFEITING PAYMENTS YOU WOULD OTHERWISE BE ENTITLED TO**

</div>

<u>**NOTICE OF PARTICIPATION PROCEDURES**</u>
for holders of
**DIP A Claims, Roll-Up Claims, First Lien Claims, Second Lien Claims and/or Side Car Term Loan Claims**
with respect to
**First Brands Group, LLC and its Debtor Affiliates**
to receive
**Litigation Trust Interests**

<u>**RESPONSE DEADLINE:**</u>
<span style="color:red">**July [13], 2026 at 5:00pm CT**</span>
*(as may be extended with notice by the applicable administrative agent to affected lenders)*

<span style="color:red"><u>**PLEASE READ FIRST – THESE INSTRUCTIONS CONTAIN IMPORTANT INFORMATION ABOUT THE DOCUMENTS YOU ARE REQUIRED TO COMPLETE**</u></span>

You are receiving this Notice of Participation Procedures (this "**Notice**") because you are a holder (a "**Holder**") of DIP A Claims, Roll-Up Claims, First Lien Claims, Second Lien Claims and/or Side Car Term Loan Claims (together, the "**Applicable Claims**") in the bankruptcy proceedings of First Brands Group, LLC and its Debtor affiliates (collectively, the "**Company**") and are therefore entitled to receive beneficial interests in a Litigation Trust. Such Applicable Claims are subject to the Chapter 11 Plan of Premier Marketing Group, LLC (as may be amended, modified or supplemented in accordance with the terms thereof, the "**Plan**"). You can access the Plan at: https://restructuring.ra.kroll.com/firstbrands/Home-DocketInfo. Unless otherwise defined herein, capitalized terms used but not defined herein have the respective meanings assigned to them in the Plan.

1

**OUTLINE OF RELEVANT FORMS AND ANNEXES FOR
LITIGATION TRUST INTERESTS**

<u>**Check each of the boxes below**</u> **to evidence that you have completed each required step:**

☐      <u>**Notice of Participation Procedures**</u> – <u>Check the box</u> to confirm that you have read this Notice and understand the disclosures, disclaimers, and information contained herein and consulted with your own legal and tax advisors to the extent you deemed necessary or appropriate.

         **Section 1** – Timeline
         **Section 2** – Treatment of Your Applicable Claims
         **Section 3** – Litigation Trust Funding
         **Section 4** – Additional Process Information and Disclaimers

☐      <u>**Annex 1 (Designation of Applicable Claims as of Litigation Trust Distribution Record Date)**</u> – Identify your Applicable Claims in <u>Annex 1</u> and whether any person, such as one of your affiliates or a buyer of your Applicable Claims, should be credited with all or a percentage of your Litigation Trust Interests. <u>Check the box</u> to confirm you have read and completed <u>Annex 1</u> and have provided accurate information as to your claims. <span style="color:red">**All holders of Applicable Claims must check this box and complete <u>Annex 1</u> in order to designate another party to receive any Litigation Trust Interests.  All holders of Applicable Claims and their designees (in which event, both such holder and its designee) must provide an IRS Form W-8 or W-9, as applicable.**</span>

         IF YOU DO NOT PROVIDE AN IRS FORM W-8 OR W-9, AS APPLICABLE, IN CONNECTION HEREWITH, <u>**YOU AND, AS APPLICABLE, YOUR DESIGNEE WILL FOREGO ANY DISTRIBUTIONS**</u> MADE BY THE LITIGATION TRUST WITH RESPECT TO ANY LITIGATION TRUST INTERESTS HELD UNTIL SUCH FORM IS RECEIVED. NOTWITHSTANDING THE FOREGOING, TO THE EXTENT ANY DISTRIBUTION *IS* MADE TO YOU OR YOUR DESIGNEE, YOU OR YOUR DESIGNEE WILL BE RESPONSIBLE FOR ANY WITHHOLDING RELATED THERETO.

☐      <u>**Annex 2 (Signature Page to Governing Documents)**</u>. – You must execute a signature page to the Litigation Trust Agreement.  <u>Check the box</u> to confirm you have read the Litigation Trust Agreement, consulted with your own advisors to the extent you deemed necessary or appropriate, and executed the signature page thereto.

☐      <u>**Annex 3 (Commitment Agreement Committing to Fund the Litigation Trust)**</u>. – <u>DIP A Lenders only</u>: you may elect to commit to provide funding to the Litigation Trust in consideration for the issuance of bankruptcy claims that will result in the issuance of Class 1 Litigation Trust Interests to you on the terms, and by completing the procedures, provided in <u>Annex 3</u> hereto. <u>Check the box</u> to confirm you have read and completed <u>Annex 3</u>. <span style="color:red">**All holders of DIP A Claims must check this box and complete Annex 3 in order to receive such Class 1 Litigation Trust Interests.**</span>

<u>**NOTICE OF PARTICIPATION PROCEDURES**</u>

This Notice contains the following Sections:

| | |
|---|---|
| **Section 1.** | **Timeline:** This Notice contains deadlines by which you must provide information and documentation, or you may not receive Litigation Trust Interests you are entitled to as a holder of DIP A Claims, Roll-Up Claims, First Lien Claims, Second Lien Claims and/or Side Car Term Loan Claims.  If you are not a holder of Litigation Trust Interests on the date of a distribution from the Litigation Trust, you will forfeit the right to receive any portion of such distribution that you would otherwise be entitled to. |
| **Section 2.** | **Treatment of Your Applicable Claims:** On behalf of your DIP A Claims, Roll-Up Claims, First Lien Claims, Second Lien Claims and/or Side Car Term Loan Claims you will receive non-transferable Litigation Trust Interests. |
| **Section 3.** | **Litigation Trust Funding:** Holders of DIP A Claims may elect to fund the Litigation Trust in exchange for priority Class 1 Litigation Trust Interests by also completing Annex 3 hereto. |
| **Section 4.** | **Additional Process Information and Disclaimers.** |
| **Section 5.** | **Annexes 1 – 3.** |

**You <u>must</u> provide the information required by this Notice by sending to WSFS[1] at**
**FBGLitigationTrust@wsfsbank.com**

**If you have any questions regarding this Notice and submission of information,**
**please direct all inquiries to the following list-serve to ensure a timely response:**
**FBGLitigationTrust@groups.gibsondunn.com**

---

[1] Wilmington Savings Fund Society, FSB ("**WSFS**") is the current DIP Agent and will maintain the register for the Litigation Trust.

## SECTION 1 – TIMELINE

**FAILURE TO PROVIDE THE REQUIRED INFORMATION BY THE DEADLINES OUTLINED BELOW (AS MAY BE EXTENDED) MAY RESULT IN YOU <u>NOT RECEIVING LITIGATION TRUST INTERESTS YOU ARE OTHERWISE ENTITLED TO</u> AS A HOLDER OF APPLICABLE CLAIMS IN THE FIRST BRANDS GROUP CASES.**

| Date | Action Item |
|---|---|
| **June [22], 2026 at 5:00pm CT**<br><br>(**"*Litigation Trust Distribution Record Date*"**) | • The date this Notice will be issued to all Holders of Applicable Claims.<br>• The Litigation Trust Distribution Record Date for issuance of Litigation Trust Interests.<br>• The relevant administrative agents will freeze all lender registers for all Applicable Claims. |
| **July [13], 2026 at 5:00pm CT**<br><br>(**"*Litigation Trust Interest Response Deadline*"**) | • **Deadline** to provide the information required by this Notice by completing **all Annexes hereto** and conveying to WSFS at: **FBGLitigationTrust@wsfsbank.com** |
| **The Confirmation Date of the Plan**<br>(anticipated to be no earlier than July [31]) | |
| **60 calendar days following the Confirmation Date of the Plan**<br><br>(**"*Litigation Trust Reconciliation Period*"**) | • WSFS will use this time period to manually reconcile any Applicable Claims that are subject to unsettled trades and any missing documentation.<br>• At the end of this period, all Litigation Trust Interests will be distributed to lenders of record, including previously unsettled trades that were settled during the Litigation Trust Reconciliation Period. |
| **The Confirmation Date of the Plan + 60 calendar days**<br><br>(**"*Litigation Trust Interests Issuance Date*"**) | • The date that all Litigation Trust Interests will be issued.<br>• All Litigation Trust Interests will be deemed issued as of the Confirmation Date of the Plan |

4

**SECTION 2 – TREATMENT OF YOUR APPLICABLE CLAIMS**

The Plan provides for holders of Applicable Claims of at least $1000 in principal amount (the "**Applicable Claims**") to receive beneficial interests (the "**Litigation Trust Interests**") in the Litigation Trust (the "**Litigation Trust**") to be established in connection with the Plan and Disclosure Statement.

If you (i) do nothing in response to this Notice, (ii) hold Applicable Claims, and (iii) are otherwise eligible to receive Litigation Trust Interests pursuant to the Plan and, as described in the Disclosure Statement, you will receive **non-transferrable** Litigation Trust Interests and will be deemed to be a party to the Litigation Trust Agreement.

Specifically:

- Litigation Trust Class 1 Funding Contributors (as outlined in Section 3) will receive **Class 1 Litigation Trust Interests**.
- Holders of DIP A Claims will receive **Class 2 Litigation Trust Interests** in exchange for their DIP A Claims against the Plan Debtor.
- Holders of Roll-Up Claims will receive **Class 3(a) Litigation Trust Interests** in exchange for their Roll-Up Claims against the Plan Debtor.
- A GUC Ombudsman will receive **Class 3(b) Litigation Trust Interests** as agent to holders of (i) Allowed General Unsecured Claims against the Plan Debtor and (ii) accepted Eligible Creditor Claims.
  - However, nothing in this Notice shall pertain to Class 3(b) Litigation Trust Interests.
- Holders of First Lien Claims, Second Lien Claims and Side Car Term Loan Claims will receive **Class 3(c) Litigation Trust Interests** in exchange for their First Lien Claims, Second Lien Claims and Side Car Term Loan Claims against the Plan Debtor.

**THE APPLICABLE ADMINISTRATIVE AGENTS WILL FREEZE ALL LENDER REGISTERS ON THE LITIGATION TRUST DISTRIBUTION RECORD DATE (JUNE [22], 2026). IF AN APPLICABLE CLAIM IS SUBJECT TO AN UNSETTLED TRADE AS OF THE LITIGATION TRUST DISTRIBUTION RECORD DATE, THE LITIGATION TRUST <span style="color:red">WILL NOT ISSUE</span> LITIGATION TRUST INTERESTS TO THE BUYER OF SUCH APPLICABLE CLAIM UNLESS AND UNTIL ALL INFORMATION LISTED IN <u>SECTION 4</u> IS COMPLETE DURING THE LITIGATION TRUST INTEREST RECONCILIATION PERIOD (I.E., 60 DAYS AFTER THE CONFIRMATION DATE OF THE PLAN).**

**SECTION 3 – LITIGATION TRUST FUNDING**

Holders of DIP A Claims of at least $1000 in principal amount as of the Litigation Trust Distribution Record Date that are not natural persons (each, an "**Eligible Holder**") have the opportunity to commit to make Litigation Trust Funding Commitments to fund Litigation Trust Funding Contributions up to their pro rata share of DIP A Claims of aggregate Initial Litigation Trust Funding Commitments of $50,000,000 (the "**Opportunity**"). Such Litigation Trust Funding Commitments shall be treated as having been made to the Debtors, with the Debtors transferring such commitments to the Litigation Trust and the Debtors settling the claims arising from the commitments through the issuance of Class 1 Litigation Trust Interests as set forth below. Each Holder's pro rata portion will be calculated based on the fraction (x) the numerator of which is the total amount of such Holder's DIP A Claims and (y) the denominator of which is the aggregate outstanding amount of all DIP A Claims held by holders of at least $1000 of principal amount of DIP A Claims (the "**Threshold Pro Rata Share**"). Holders of DIP A Claims that elect to participate in the Opportunity are referred to herein as "**Litigation Trust Class 1 Funding Contributors**". Any Holder that elects to participate in the Opportunity is required to complete Annex 3 hereto along with any other documentation that the DIP Agent, or Litigation Trustee may reasonably require (collectively, the "**Litigation Trust Funding Documents**"). Any Eligible Holder that is unable to commit to fund Litigation Trust Funding Contributions in United States dollars shall not be permitted to participate in the Opportunity.

In consideration for a Litigation Trust Class 1 Funding Contributors' commitment to fund Litigation Trust Funding Contributions, Litigation Trust Class 1 Funding Contributors shall receive Class 1 Litigation Trust Interests if such Litigation Trust Class 1 Funding Contributors has provided all required documentation. Such Class 1 Litigation Trust Interests shall entitle holders thereof to share in the distribution of the Litigation Trust Net Proceeds in accordance with the Litigation Trust Waterfall. Upon effectiveness of commitments, WSFS will update the register of the Litigation Trust.

If you are an Eligible Holder, you are hereby being given notice of your Opportunity to commit to be a Litigation Trust Class 1 Funding Contributor, on the terms and subject to the conditions set forth in this Notice and the syndication procedures being provided in connection with this Notice, including pursuant to any amendments or modifications to any of the foregoing.

Pursuant to Annex 1, you may designate the right to receive Class 1 Litigation Trust Interests to an affiliate or another person, it being understood that no party committing to fund Litigation Trust Funding Contributions shall be released from such commitment without the written consent of the Litigation Trustee.

**A commitment to partake in the Opportunity may not be modified or withdrawn by any Eligible Holder, unless otherwise agreed by the Litigation Trustee in its sole discretion. By electing to participate in the Opportunity and submitting the signed Litigation Trust Funding Documents, you will become a Litigation Trust Class 1 Funding Contributor (as defined in the Plan). You will be deemed to consent to, and subject to the terms and conditions of, the Litigation Trust Agreement, as applicable, alongside the other Litigation Trust Class 1 Funding Contributors party thereto.**

Participating as a Litigation Trust Class 1 Funding Contributor entails risks, including, but not limited to, the risk that the assets of the Litigation Trust may fail to provide substantial return or any return in respect of a Litigation Trust Class 1 Funding Contributor's Class 1 Litigation Trust Interests. As a result, you may lose all or part of the value of your Litigation Trust Funding Contributions made pursuant to the Opportunity. Notwithstanding anything to the contrary herein, the Ad Hoc Group may determine to amend or modify the terms of the Opportunity, including the Commitment Agreement, at any time, by posting a notice of such amendment or modification to the holders of DIP A Claims; provided that nothing in this Notice shall be construed to supersede the amendment and modification requirements set forth in the Plan.

6

## SECTION 4 – ADDITIONAL PROCESS INFORMATION AND DISCLAIMERS

**ALL INFORMATION REQUIRED BY THIS NOTICE MUST BE SENT TO WSFS AT FBGLITIGATIONTRUST@WSFSBANK.COM**

On the date hereof, this Notice was posted to all holders of Applicable Claims by Wilmington Savings Fund Society, FSB ("**WSFS**") at **FBGLitigationTrust@wsfsbank.com**. WSFS will serve as the registrar for the Litigation Trust.

In order to (a) receive future distributions by the Litigation Trust, or (b) be eligible to receive Class 1 Litigation Trust Interests by committing to make Litigation Trust Funding Contributions, you must complete, sign and send each of the forms listed on page 2 to WSFS at **FBGLitigationTrust@wsfsbank.com** as soon as reasonably practicable, but in any event **by July [13], 2026 at 5:00pm CT**.  **No other forms of submission will be accepted. In all cases, the information must actually be received by WSFS at or prior to the Litigation Trust Interest Response Deadline. Submitting indications of interests to any party, including the advisors to the Ad Hoc Group, or posing questions or submitting inquiries without completion of all applicable paperwork will not postpone or delay this deadline.**

For purposes of determining beneficial ownership of Applicable Claims on the Litigation Trust Distribution Record Date for receipt of Litigation Trust Interests, such ownership shall be determined on the basis of **settled trades only**. With respect to any unsettled trade the Litigation Trust will only issue Litigation Trust Interests to the buyer of such Applicable Claim if the following information is provided:

(1) an IRS Form W-8 or W-9, as appropriate, of the buyer;

(2) a Designation Form (Annex 1) whereby the seller names the buyer as the person to be treated as the owner of such Applicable Claims;

(3) the buyer's signature page to Litigation Trust Agreement (Annex 2); and

(4) evidence of trade confirmation, which reasonably establishes ownership of such DIP A Claims, Roll-Up Claims, First Lien Claims, Second Lien Claims or Side Car Term Loan Claims, as applicable.

**PLEASE NOTE THAT LITIGATION TRUST INTERESTS CANNOT BE TRANSFERRED (INCLUDING, WITHOUT LIMITATION, BY ASSIGNMENT) AT ANY TIME OR FOR ANY REASON, EXCEPT BY OPERATION OF LAW, AS SET FORTH IN THE LITIGATION TRUST AGREEMENT.**

**The delivery of the forms and any other required documents is at your option and sole risk, and delivery will be considered made only when actually received by WSFS.**

**ON THE LITIGATION TRUST ISSUANCE DATE, THE LITIGATION TRUST AGREEMENT RELATED TO THE LITIGATION TRUST INTERESTS, INCLUDING ALL TRANSFER RESTRICTIONS THEREIN, SHALL BE BINDING ON ALL PARTIES THAT RECEIVE (INCLUDING ANY DESIGNEES) LITIGATION TRUST INTERESTS.**

**HOLDERS AND ANY DESIGNEES ARE ENCOURAGED TO READ THE PLAN (INCLUDING THE EXHIBITS TO THE PLAN) AND THE DISCLOSURE STATEMENT, THE LITIGATION TRUST AGREEMENT AND TO CONSULT WITH THEIR OWN ADVISORS TO UNDERSTAND THEIR RIGHTS AND OBLIGATIONS THEREUNDER, INCLUDING ANY RISKS WITH RESPECT TO HOLDING THE LITIGATION TRUST INTERESTS.**

**Administrative-Related Questions**: Holders with administrative questions about this Notice or the distribution of Litigation Trust Interests should direct such inquiries in writing by email to Kroll at: **FirstBrandsInfo@ra.kroll.com with "*First Brands Trust Interest Inquiry*" in the subject line**.

**Allocation-Related Questions:** If you have questions regarding your allocation, you may reach out to WSFS at **FBGLitigationTrust@wsfsbank.com** including to request your allocation of the Litigation Trust Interests.  To ensure that you are provided with accurate information for each of your funds, please include the legal name of each fund (i.e., your Holder as it appears on the applicable register or the relevant unsettled trade seller and buyer as it appears on the trade report) for which you are requesting information in your correspondence.

**Note that the allocations of the Litigation Trust Interests will be determined pursuant to such Holders' Applicable Claims <u>not subject to unsettled trades</u> as of the Litigation Trust Distribution Record Date (June [22], 2026), which allocations will take into account all accrued and unpaid amounts owed under the DIP Order, including any capitalized PIK interest through the Effective Date of the Plan.**

**WSFS will reconcile any unsettled trades during the Litigation Trust Reconciliation Period, the 60 days following the Confirmation Date of the Plan and only after receiving all documentation required herein from the unsettled trade parties.**

**SECTION 5 – ANNEXES**

**[Attached.]**

## Annex 1 – Designation of Applicable Claims as of Record Date

The provider of this completed <u>Annex 1</u>, by so completing confirms (a) as of the Litigation Trust Distribution Record Date (June [22], 2026), it held Applicable Claims in the names of the following Lenders of Record **on a settled basis** (insert name of your sub-fund Lender of Record in the boxes below) and (b) the information provided below is accurate. Please indicate whether you wish to designate the right to receive the Litigation Trust Interests to an affiliate or another party. If you do not indicate your desire to designate an affiliate or another party or if you do not return this <u>Annex 1</u>, then your non-transferrable Litigation Trust Interests will be issued in your name as set forth on the register maintained by the Administrative Agent under the relevant credit facility.

IF DESIGNATING AN AFFILIATE OR ANOTHER PARTY TO RECEIVE LITIGATION TRUST INTERESTS ON BEHALF OF APPLICABLE CLAIMS HELD, YOU MAY ONLY DESIGNATE **ONE** DESIGNEE ON BEHALF OF EACH SUB-FUND LENDER OF RECORD, AND SUCH DESIGNEE WILL RECEIVE **ALL (BUT NOT A PORTION)** OF THE APPLICABLE CLAIM HELD BY SUCH SUB-FUND LENDER OF RECORD.

**IF DESIGNATING AN AFFILIATE OR ANOTHER PARTY ON BEHALF OF ANY APPLICABLE CLAIMS, <u>SUCH DESIGNEE MUST PROVIDE ALL INFORMATION AND COMPLETE ALL ANNEXES REQUIRED BY THIS NOTICE IN ORDER TO RECEIVE SUCH LITIGATION TRUST INTERESTS</u>.**

**<u>IF AN APPLICABLE CLAIM IS SUBJECT TO A CURRENTLY UNSETTLED TRADE</u>, WSFS WILL RECONCILE SUCH CLAIMS ONCE THE FOLLOWING INFORMATION IS PROVIDED DURING THE LITIGATION TRUST RECONCILIATION PERIOD (60 DAYS FOLLOWING THE CONFIRMATION DATE OF THE PLAN):**

(1) an IRS Form W-8 or W-9, as appropriate, of the buyer;

(2) a Designation Form (<u>Annex 1</u>) whereby the seller names the buyer as the person to be treated as the owner of such Applicable Claims;

(3) the buyer's signature page to Litigation Trust Agreement (<u>Annex 2</u>); <u>and</u>

(4) evidence of trade confirmation, which reasonably establishes ownership of such DIP A Claims, Roll-Up Claims, First Lien Claims, Second Lien Claims or Side Car Term Loan Claims, as applicable.

**THIS ANNEX DOES NOT CONSTITUTE TAX ADVICE AND IS NOT INTENDED OR WRITTEN TO BE USED, AND MAY NOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED.**

The tax consequences of receiving, holding, and disposing of Litigation Trust Interests are complex and depend on each holder's particular facts and circumstances, including the holder's tax status, the nature and tax basis of its Applicable Claims, and its overall tax position. No tax advice is being provided in connection with this Notice or otherwise by or on behalf of the Litigation Trustee, the Ad Hoc Group, or their respective advisors. Each holder should consult its own tax advisor regarding the tax consequences of receiving, holding, and receiving distributions on account of Litigation Trust Interests, including in particular whether the holder should hold such interests through a corporation or other entity rather than directly, given the potential for such interests to generate income that may be subject to different tax treatment depending on the holder's tax classification and holding structure.

Case 25-90399   Document 2997   Filed in TXSB on 06/14/26   Page 212 of 276

| | Names/ Addresses of Sub-Fund Lender of Record Holding Applicable Claims | Designee you wish to designate to receive Litigation Trust Interests on behalf of the sub-fund Lender of Record (Designees may <u>only</u> be allocated by <u>PERCENTAGE</u> of such sub-fund's Applicable Claim. Dollar denominations will not be accepted. If less than 100% of an Applicable Claim is designated, the remaining Applicable Claim amount will be allocated to the Sub-Fund Lender of Record.) |
|---|---|---|
| | **DIP A Claims** | **If designating:** |
| *[please fill out]* | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, Annex 2 and, if desired, Annex 3 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, Annex 2 and, if desired, Annex 3 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, Annex 2 and, if desired, Annex 3 for each of the Sub-Fund Lender of Record and such Designee.** |
| | **Roll-Up Claims** | **If designating:** |
| *[please fill out]* | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | **First Lien Claims** | **If designating:** |
| *[please fill out]* | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI: |

|  |  | 5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
|  |  | 1.  % of Applicable Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
|  |  | 1.  % of Applicable Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
|  | **Second Lien Claims** | **If designating:** |
| [*please fill out*] |  | 1.  % of Applicable Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
|  |  | 1.  % of Applicable Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
|  |  | 1.  % of Applicable Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
|  | **Side Car Term Loan Claims** | **If designating:** |
| [*please fill out*] |  | 1.  % of Applicable Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
|  |  | 1.  % of Applicable Claim designated to such Designee:<br>2.  Full legal name of the Designee:<br>3.  Designee's place of organization:<br>4.  Designee's MEI:<br>5.  **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |

Case 25-90399   Document 2997   Filed in TXSB on 06/14/26   Page 215 of 276

| | | 1. % of Applicable Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| *** PLEASE ADD ADDITIONAL ROWS FOR ANY ADDITIONAL SUB-FUND LENDERS OF RECORD WITH APPLICABLE CLAIMS *** |||

**<u>Annex 2 – Signature Page to Litigation Trust Agreement</u>**

Please execute the following signature pages to the Litigation Trust Agreement (attached hereto).  Pursuant to the Plan, any recipient of Litigation Trust Interests will be deemed to have accepted the terms of the Litigation Trust Agreement regardless of whether such recipient has executed a signature page thereto.

**[HOLDER OF LITIGATION TRUST
INTERESTS]**


By: _____
Name:
Title:

[SIGNATURE PAGE TO LITIGATION TRUST AGREEMENT]

**Annex 3 – Election to Commit to Fund the Litigation Trust**

**[Attached at next page.]**

**COMMITMENT AGREEMENT**

---

**IMPORTANT**

PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY. IF YOU WISH TO PARTICIPATE IN THE OPPORTUNITY DESCRIBED HEREIN, YOU MUST COMPLETE, SIGN, DATE AND DELIVER THIS COMMITMENT AGREEMENT AND THE REQUIRED SIGNATURE PAGES ATTACHED HERETO TO WSFS AT **FBGLITIGATIONTRUST@WSFSBANK.COM** ON OR BEFORE THE LITIGATION TRUST INTEREST RESPONSE DEADLINE (**JULY [13], 2026 AT 5:00pm CT**).

IF YOU DO NOT WISH TO PARTICIPATE IN THE OPPORTUNITY DESCRIBED HEREIN, YOU DO NOT NEED TO TAKE ANY ACTION. IF YOU ARE UNABLE TO FUND LITIGATION TRUST FUNDING CONTRIBUTIONS IN UNITED STATES DOLLARS YOU ARE NOT BE PERMITTED TO PARTICIPATE IN THE OPPORTUNITY.

EACH HOLDER PARTICIPATING IN THIS OPPORTUNITY SHOULD COMPLETE ONE COMMITMENT AGREEMENT AND, AS APPLICABLE, ONE DESIGNATION FORM (**ANNEX 1**) ON BEHALF OF EACH OF ITS SUB-FUNDS OR AFFILIATES THAT IS A HOLDER OF DIP A CLAIMS AS OF THE LITIGATION TRUST DISTRIBUTION RECORD DATE (JUNE [22], 2026 AT 5:00PM CT). HOWEVER, FOR THE AVOIDANCE OF ANY DOUBT, THE SIGNATURE PAGE ATTACHED HERETO MUST BE EXECUTED BY EACH HOLDER OF RECORD OF A DIP A CLAIM, OR ITS DESIGNEE, THAT IS ELECTING TO PARTAKE IN THE OPPORTUNITY FOR SUCH ELECTION TO BE VALID (*I.E.*, EACH SUB-FUND OR DESIGNEE MUST EXECUTE SUCH SIGNATURE PAGE).

YOU SHOULD REVIEW THE OPPORTUNITY DOCUMENTS, NOTICE (INCLUDING THE ANNEXES THERETO) AND THE INSTRUCTIONS CONTAINED HEREIN BEFORE YOU ELECT TO PARTAKE IN THE OPPORTUNITY. YOU MAY WISH TO SEEK LEGAL, TAX AND/OR FINANCIAL ADVICE CONCERNING THE OPPORTUNITY.

---

**Item 1. Representations of the Lender.** The undersigned hereby represents that it:

- is an Eligible Holder;
- is sophisticated with respect to the decision to undertake a funding commitment of the type represented by the Opportunity, and is, or the entity exercising discretion in making this decision to partake in the Opportunity is, experienced in partaking as a committed funding party in such transactions and has received and reviewed the Plan, Disclosure Statement, the Notice and the Litigation Trust Agreement;
- has independently, and without reliance on any other party or on the Company, the advisors to the Company, the DIP Credit Agreement Administrative Agent, any other Holder of a DIP A Claim or affiliates or advisors of any of the foregoing, made its own credit analysis and decision to partake in the Opportunity;
- agrees and acknowledges that all information and documents provided in connection with the Notice is confidential and subject to the confidentiality provisions under the DIP Credit Agreement;
- agrees and acknowledges that the Litigation Trust Funding Commitments constitute binding funding commitments;
- agrees and acknowledges that it will be deemed to consent to the Litigation Trust Agreement and the transactions thereunder; and
- agrees and acknowledges that it shall be entitled to receive distributions in respect of its Class 1 Litigation Trust Interests in accordance with the Litigation Trust Waterfall.

**Item 2. Information.** The undersigned certifies that (a) as of the Litigation Trust Distribution Record Date (June [22], 2026 at 5:00pm CT), it was an Eligible Holder of DIP A Claims as set forth in its Annex 1 to the Notice delivered together herewith, (b) it understands that the right to partake in the Opportunity is subject to all the terms and conditions set forth in the Notice and (c) it agrees that the commitment to partake in the

Opportunity *as set forth in its checking the box to indicate "YES" in the column below* constitutes an irrevocable and binding commitment by the undersigned to partake in such Opportunity transaction contemplated by this Commitment Agreement:

*Election to make Litigation Trust Funding Commitments **in the full amount** of your pro rata share of DIP A Claims:

| Name / Address of Eligible Holder(s) (holding DIP A Claims as of the Litigation Trust Distribution Record Date) | Elects to Partake in and Commit to the Opportunity |
|---|---|
|  | ☐ (CHECK IF YES) |
| *** PLEASE ADD ADDITIONAL ROWS FOR ANY ADDITIONAL SUB-FUND LENDERS OF RECORD WITH APPLICABLE CLAIMS OR DESIGNEES THEREOF LISTED ON ANNEX 1*** ||

*For ease of administration, you may attach a separate chart that contains the information shown above. You must complete the certification below and return the Required Signature Pages on behalf of each participating Eligible Holder*.

**Item 3. Consent.** By completing, executing and delivering this Commitment Agreement and selecting "YES" in the column titled "Elects to Partake in and Commit to the Opportunity" in Item 2 above, each applicable Eligible Holder is committing to fund Litigation Trust Funding Contributions from time to time in accordance with the terms of the Litigation Trust Agreement in the amount of its Threshold Pro Rata Share of DIP A Claims of aggregate Initial Litigation Trust Funding Commitments of $50,000,000.

**Item 4. Executing Signature Pages.** By completing, executing and delivering this Commitment Agreement and selecting "YES" in the column titled "Elects to Partake in and Commit to the Opportunity" in Item 2 above, each applicable Eligible Holder is committing to fund Litigation Trust Funding Contributions from time to time in accordance with the terms of the Litigation Trust Agreement up to the full amount of your pro rata share of DIP A Claims.

**Item 5. Required Documents**. In order to partake in the Opportunity, each participating Eligible Holder must execute the Required Signature Page attached hereto.  Each of the parties hereto agree by selecting "YES" in the column titled "Elects to Partake in and Commit to the Opportunity" in Item 2 above, the Required Signature Page may be appended to the Litigation Trust Agreement or a separate Commitment Agreement to give effect to the commitments contemplated hereby.

**Item 6. Certification**. By signing this Commitment Agreement, the undersigned certifies that it understands that the right to partake in the Opportunity is subject to all the terms and conditions set forth in the Notice and agrees that the commitment to partake in the Opportunity constitutes an irrevocable commitment by the undersigned.

Name of Eligible Holder of a DIP A Claim:

Signature:_____

Print Name:_____

Title:_____

Date Completed:_____

PLEASE ATTACH ADDITIONAL SIGNATURE PAGES FOR EACH HOLDER OF RECORD OF A DIP A CLAIM, OR ITS DESIGNEE, THAT IS ELECTING TO PARTAKE IN THE OPPORTUNITY (*I.E.*, EACH SUB-FUND OR DESIGNEE LISTED ON ANNEX 1)

**Exhibit 14**

**DIP Collateral Trust – Notice of Participation Procedures**

*Date of Notice: **June [22], 2026***

<div style="background:#d99;">

**ACTION REQUIRED**
**BY: JULY [13], 2026 at 5:00pm CT**

**FAILURE TO PROVIDE THE REQUIRED INFORMATION BY THE DIP COLLATERAL TRUST INTEREST RESPONSE DEADLINE MAY RESULT IN YOU <u>NOT RECEIVING DIP COLLATERAL TRUST INTERESTS YOU ARE ENTITLED TO</u> AS A HOLDER OF DIP A CLAIMS IN THE FIRST BRANDS GROUP CASES AND THEREBY FORFEITING PAYMENTS YOU WOULD OTHERWISE BE ENTITLED TO**

</div>

<u>**NOTICE OF PARTICIPATION PROCEDURES**</u>
for holders of
**DIP A Claims**
with respect to
**First Brands Group, LLC and its Debtor Affiliates**
to receive
**DIP Collateral Trust Interests**

<u>**RESPONSE DEADLINE:**</u>
**July [13], 2026 at 5:00pm CT**
*(as may be extended with notice by the DIP Agent to affected lenders)*

<u>**PLEASE READ FIRST – THESE INSTRUCTIONS CONTAIN IMPORTANT INFORMATION ABOUT THE DOCUMENTS YOU ARE REQUIRED TO COMPLETE**</u>

  You are receiving this Notice of Participation Procedures (this "**Notice**") because you are a holder (a "**Holder**") of DIP A Claims (the "**DIP A Claims**") in the bankruptcy proceedings of First Brands Group, LLC and its Debtor affiliates (collectively, the "**Company**") and are therefore entitled to receive beneficial interests in a DIP Collateral Trust. Such DIP A Claims are subject to the Chapter 11 Plan of Premier Marketing Group, LLC (as may be amended, modified or supplemented in accordance with the terms thereof, the "**Plan**"). You can access the Plan at: https://restructuring.ra.kroll.com/firstbrands/Home-DocketInfo. Unless otherwise defined herein, capitalized terms used but not defined herein have the respective meanings assigned to them in the Plan.

6000762554.5

1

**OUTLINE OF RELEVANT FORMS AND ANNEXES FOR
DIP COLLATERAL TRUST INTERESTS**

**Check each of the boxes below** to evidence that you have completed each required step:

☐     **Notice of Participation Procedures** – Check the box to confirm that you have read this Notice and understand the disclosures, disclaimers, and information contained herein and consulted with your own legal and tax advisors to the extent you deemed necessary or appropriate.
         **Section 1** – Timeline
         **Section 2** - Treatment of Your DIP A Claims
         **Section 3** – Additional Process Information and Disclaimers

☐     **Annex 1 (Designation of DIP A Claims as of DIP Collateral Trust Distribution Record Date)** – Identify your DIP A Claims in Annex 1 and whether any person, such as one of your affiliates or a buyer of your DIP A Claims, should be credited with all or a percentage of your DIP Collateral Trust Interests. Check the box to confirm you have read and completed Annex 1 and have provided accurate information as to your claims. **All holders of DIP A Claims must check this box and complete Annex 1 in order to designate another party to receive any DIP Collateral Trust Interests.  All holders of DIP A Claims and their designees (in which event, both such holder and its designee) must provide an IRS Form W-8 or W-9, as applicable.**

         IF YOU DO NOT PROVIDE AN IRS FORM W-8 OR W-9, AS APPLICABLE, IN CONNECTION HEREWITH, **YOU AND, AS APPLICABLE, YOUR DESIGNEE WILL FOREGO ANY DISTRIBUTIONS** MADE BY THE DIP COLLATERAL TRUST WITH RESPECT TO ANY DIP COLLATERAL TRUST INTERESTS HELD UNTIL SUCH FORM IS RECEIVED. NOTWITHSTANDING THE FOREGOING, TO THE EXTENT ANY DISTRIBUTION *IS* MADE TO YOU OR YOUR DESIGNEE, YOU OR YOUR DESIGNEE WILL BE RESPONSIBLE FOR ANY WITHHOLDING RELATED THERETO.

☐     **Annex 2 (Signature Page to Governing Documents)**. – You must execute a signature page to the DIP Collateral Trust Agreement.  Check the box to confirm you have read the DIP Collateral Trust Agreement, consulted with your own advisors to the extent you deemed necessary or appropriate, and executed the signature page thereto.

## NOTICE OF PARTICIPATION PROCEDURES

This Notice contains the following Sections:

| | |
|---|---|
| **Section 1.** | **Timeline:** This Notice contains deadlines by which you must provide information and documentation, or you may not receive DIP Collateral Trust Interests you are entitled to as a holder of DIP A Claims.  If you are not a holder of DIP Collateral Trust Interests on the date of a distribution from the DIP Collateral Trust, you will forfeit the right to receive any portion of such distribution that you would otherwise be entitled to. |
| **Section 2.** | **Treatment of Your DIP A Claims:** On behalf of your DIP A Claims you will receive non-transferable DIP Collateral Trust Interests. |
| **Section 3.** | **Additional Process Information and Disclaimers.** |
| **Section 4.** | **Annex 1 and Annex 2.** |

**You <u>must</u> provide the information required by this Notice by sending to WSFS[1] at
FBGCollateralTrust@wsfsbank.com**

**If you have any questions regarding this Notice and submission of information,
please direct all inquiries to the following list-serve to ensure a timely response:
FBGCollateralTrust@groups.gibsondunn.com**

---

[1] Wilmington Savings Fund Society, FSB ("**WSFS**") is the current DIP Agent and will maintain the register for the DIP Collateral Trust.

3

**SECTION 1 – TIMELINE**

**FAILURE TO PROVIDE THE REQUIRED INFORMATION BY THE DEADLINES OUTLINED BELOW (AS MAY BE EXTENDED) MAY RESULT IN YOU <u>NOT RECEIVING DIP COLLATERAL TRUST INTERESTS YOU ARE OTHERWISE ENTITLED TO</u> AS A HOLDER OF DIP A CLAIMS IN THE FIRST BRANDS GROUP CASES.**

| Date | Action Item |
|---|---|
| **June [22], 2026 at 5:00pm CT**<br><br>(**"*DIP Collateral Trust Distribution Record Date*"**) | • The date this Notice will be issued to all Holders of DIP A Claims.<br>• The DIP Collateral Trust Distribution Record Date for issuance of DIP Collateral Trust Interests.<br>• WSFS will freeze the lender register for all DIP A Claims. |
| **July [13], 2026 at 5:00pm CT**<br><br>(**"*DIP Collateral Trust Interest Response Deadline*"**) | • **Deadline** to provide the information required by this Notice by completing **all Annexes hereto** and conveying to WSFS at: **FBGCollateralTrust@wsfsbank.com** |
| **The Confirmation Date of the Plan**<br>(anticipated to be no earlier than July [31]) | |
| **60 calendar days following the Confirmation Date of the Plan**<br><br>(**"*DIP Collateral Trust Reconciliation Period*"**) | • WSFS will use this time period to manually reconcile any DIP A Claims that are subject to unsettled trades and any missing documentation.<br>• At the end of this period, all DIP Trust Interests will be distributed to lenders of record, including previously unsettled trades that were settled during the DIP Collateral Trust Reconciliation Period. |
| **The Confirmation Date of the Plan + 60 calendar days**<br><br>(**"*DIP Collateral Trust Interests Issuance Date*"**) | • The date that all DIP Collateral Trust Interests will be issued.<br>• All DIP Collateral Trust Interests will be deemed issued as of the Confirmation Date of the Plan |

4

## SECTION 2 – TREATMENT OF YOUR DIP A CLAIMS

The Plan provides for holders of DIP A Claims of at least $1000 in principal amount (hereafter, the "**DIP A Claims**") to receive beneficial interests (the "**DIP Collateral Trust Interests**") in the DIP Collateral Trust (the "**DIP Collateral Trust**") to be established in connection with the Plan and Disclosure Schedule.

If you (i) do nothing in response to this Notice, (ii) hold DIP A Claims, and (iii) are otherwise eligible to receive DIP Collateral Trust Interests pursuant to the Plan, and, as described in the Disclosure Statement, you will receive **non-transferrable** DIP Collateral Trust Interests and will be deemed to be a party to the DIP Collateral Trust Agreement. Holders of DIP A Claims will receive **Class 2 DIP Collateral Trust Interests** in exchange for their DIP A Claims against the Plan Debtor.

**THE DIP AGENT WILL FREEZE THE LENDER REGISTER ON THE DIP COLLATERAL TRUST DISTRIBUTION RECORD DATE (JUNE [22], 2026 AT 5:00pm CT). IF A DIP A CLAIM IS SUBJECT TO AN UNSETTLED TRADE AS OF THE DIP COLLATERAL TRUST DISTRIBUTION RECORD DATE, THE DIP COLLATERAL TRUST <span style="color:red">WILL NOT ISSUE</span> DIP COLLATERAL TRUST INTERESTS TO THE BUYER OF SUCH DIP A CLAIM UNLESS AND UNTIL ALL INFORMATION LISTED IN <u>SECTION 3</u> IS COMPLETE DURING THE DIP COLLATERAL TRUST INTEREST RECONCILIATION PERIOD (I.E., 60 DAYS AFTER THE CONFIRMATION DATE OF THE PLAN).**

### SECTION 3 – ADDITIONAL PROCESS INFORMATION AND DISCLAIMERS

**ALL INFORMATION REQUIRED BY THIS NOTICE MUST BE SENT TO WSFS AT:
FBGCOLLATERALTRUST@WSFSBANK.COM**

On the date hereof, this Notice was posted to all holders of DIP A Claims by Wilmington Savings Fund Society, FSB ("**WSFS**") at **FBGCollateralTrust@wsfsbank.com**. WSFS will serve as the registrar for the DIP Collateral Trust.

In order to receive future distributions by the DIP Collateral Trust, you must complete, sign and send each of the forms listed on page 2 to WSFS at **FBGCollateralTrust@wsfsbank.com** as soon as reasonably practicable, but in any event **by July [13], 2026 at 5:00pm CT**. **No other forms of submission will be accepted. In all cases, the information must actually be received by WSFS at or prior to the DIP Collateral Trust Interest Response Deadline. Submitting indications of interests to any party, including the advisors to the Ad Hoc Group, or posing questions or submitting inquiries without completion of all applicable paperwork will not postpone or delay this deadline.**

For purposes of determining beneficial ownership of DIP A Claims on the DIP Collateral Trust Distribution Record Date for receipt of DIP Collateral Trust Interests, such ownership shall be determined on the basis of **settled trades only**. With respect to any unsettled trade the DIP Collateral Trust will only issue DIP Collateral Trust Interests to the buyer of such DIP A Claim if the following information is provided:

(1) an IRS Form W-8 or W-9, as appropriate, of the buyer;

(2) a Designation Form (Annex 1) whereby the seller names the buyer as the person to be treated as the owner of such DIP A Claims;

(3) the buyer's signature page to DIP Collateral Trust Agreement (Annex 2); and

(4) evidence of trade confirmation, which reasonably establishes ownership of such DIP A Claims.

**PLEASE NOTE THAT DIP COLLATERAL TRUST INTERESTS CANNOT BE TRANSFERRED (INCLUDING, WITHOUT LIMITATION, BY ASSIGNMENT) AT ANY TIME OR FOR ANY REASON, EXCEPT BY OPERATION OF LAW, AS SET FORTH IN THE DIP COLLATERAL TRUST AGREEMENT.**

**The delivery of the forms and any other required documents is at your option and sole risk, and delivery will be considered made only when actually received by WSFS.**

**ON THE DIP COLLATERAL TRUST ISSUANCE DATE, THE DIP COLLATERAL TRUST AGREEMENT RELATED TO THE DIP COLLATERAL TRUST INTERESTS, INCLUDING ALL TRANSFER RESTRICTIONS THEREIN, SHALL BE BINDING ON ALL PARTIES THAT RECEIVE (INCLUDING ANY DESIGNEES) DIP COLLATERAL TRUST INTERESTS.**

**HOLDERS AND ANY DESIGNEES ARE ENCOURAGED TO READ THE PLAN (INCLUDING THE EXHIBITS TO THE PLAN) AND THE DISCLOSURE STATEMENT, THE DIP COLLATERAL TRUST AGREEMENT AND TO CONSULT WITH THEIR OWN ADVISORS TO UNDERSTAND THEIR RIGHTS AND OBLIGATIONS THEREUNDER, INCLUDING ANY RISKS WITH RESPECT TO HOLDING THE DIP COLLATERAL TRUST INTERESTS.**

**Administrative-Related Questions**: Holders with administrative questions about this Notice or the distribution of DIP Collateral Trust Interests should direct such inquiries in writing by email to Kroll at: **FirstBrandsInfo@ra.kroll.com with "*First Brands Trust Interest Inquiry*" in the subject line**.

**Allocation-Related Questions:** If you have questions regarding your allocation, you may reach out to WSFS at **FBGCollateralTrust@wsfsbank.com** including to request your allocation of the DIP Collateral Trust Interests.  To ensure that you are provided with accurate information for each of your funds, please include the legal name of each fund (i.e., your Holder as it appears on the applicable register or the relevant unsettled trade buyer as it appears on the trade report) for which you are requesting information in your correspondence.

**Note that the allocations of the DIP Collateral Trust Interests will be determined pursuant to such Holders' DIP A Claims <u>not subject to unsettled trades</u> as of the DIP Collateral Trust Distribution Record Date (June [22], 2026 at 5:00pm CT), which allocations will take into account all accrued and unpaid amounts owed under the DIP Order, including any capitalized PIK interest through the Effective Date of the Plan.**

**WSFS will reconcile any unsettled trades during the DIP Collateral Trust Reconciliation Period, the 60 days following the Confirmation Date of the Plan and only after receiving all documentation required herein from the unsettled trade parties.**

**SECTION 4 – ANNEXES**

**[Attached.]**

**Annex 1 – Designation of DIP A Claims as of Record Date**

The provider of this completed Annex 1, by so completing confirms (a) as of the DIP Collateral Trust Distribution Record Date (June [22], 2026 at 5:00pm CT), it held DIP A Claims in the names of the following Lenders of Record **on a settled basis** (insert name of your sub-fund Lender of Record in the boxes below) and (b) the information provided below is accurate. Please indicate whether you wish to designate the right to receive the DIP Collateral Trust Interests to an affiliate or another party. If you do not indicate your desire to designate an affiliate or another party or if you do not return this <u>Annex 1</u>, then your non-transferrable DIP Collateral Trust Interests will be issued in your name as set forth on the register maintained by the DIP Agent.

IF DESIGNATING AN AFFILIATE OR ANOTHER PARTY TO RECEIVE DIP COLLATERAL TRUST INTERESTS ON BEHALF OF DIP A CLAIMS HELD, YOU MAY ONLY DESIGNATE **ONE** DESIGNEE ON BEHALF OF EACH SUB-FUND LENDER OF RECORD, AND SUCH DESIGNEE WILL RECEIVE **ALL (BUT NOT A PORTION)** OF THE DIP A CLAIM HELD BY SUCH SUB-FUND LENDER OF RECORD.

**IF DESIGNATING AN AFFILIATE OR ANOTHER PARTY ON BEHALF OF ANY DIP A CLAIMS, <u>SUCH DESIGNEE MUST PROVIDE ALL INFORMATION AND COMPLETE ALL ANNEXES REQUIRED BY THIS NOTICE IN ORDER TO RECEIVE SUCH DIP COLLATERAL TRUST INTERESTS</u>.**

**<u>IF A DIP A CLAIM IS SUBJECT TO A CURRENTLY UNSETTLED TRADE</u>, WSFS WILL RECONCILE SUCH CLAIMS ONCE THE FOLLOWING INFORMATION IS PROVIDED DURING THE DIP COLLATERAL TRUST RECONCILIATION PERIOD (60 DAYS FOLLOWING THE CONFIRMATION DATE OF THE PLAN):**

> (1) an IRS Form W-8 or W-9, as appropriate, of the buyer;

> (2) a Designation Form (<u>Annex 1</u>) whereby the seller names the buyer as the person to be treated as the owner of such DIP A Claims;

> (3) the buyer's signature page to DIP Collateral Trust Agreement (<u>Annex 2</u>); <u>and</u>

> (4) evidence of trade confirmation, which reasonably establishes ownership of such DIP A Claims.

**<u>THIS ANNEX DOES NOT CONSTITUTE TAX ADVICE AND IS NOT INTENDED OR WRITTEN TO BE USED, AND MAY NOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED.</u>**

The tax consequences of receiving, holding, and disposing of DIP Collateral Trust Interests are complex and depend on each holder's particular facts and circumstances, including the holder's tax status, the nature and tax basis of its Applicable Claims, and its overall tax position. No tax advice is being provided in connection with this Notice or otherwise by or on behalf of the DIP Collateral Trustee, the Ad Hoc Group, or their respective advisors. Each holder should consult its own tax advisor regarding the tax consequences of receiving, holding, and receiving distributions on account of DIP Collateral Trust Interests, including in particular whether the holder should hold such interests through a corporation or other entity rather than directly, given the potential for such interests to generate income that may be subject to different tax treatment depending on the holder's tax classification and holding structure.

| | Names/ Addresses of Sub-Fund Lender of Record Holding DIP A Claims | Designee you wish to designate to receive DIP Collateral Trust Interests on behalf of the sub-fund Lender of Record (Designees may only be allocated by PERCENTAGE of such sub-fund's DIP A Claim. Dollar denominations will not be accepted. If less than 100% of a DIP A Claim is designated, the remaining DIP A Claim amount will be allocated to the Sub-Fund Lender of Record.) |
|---|---|---|
| | | **If designating:** |
| *[please fill out]* | | 1. % of DIP A Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1. % of DIP A Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1. % of DIP A Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| | | 1. % of DIP A Claim designated to such Designee:<br>2. Full legal name of the Designee:<br>3. Designee's place of organization:<br>4. Designee's MEI:<br>5. **Please provide a completed IRS Form W-8 or Form W-9, as applicable, and Annex 2 for each of the Sub-Fund Lender of Record and such Designee.** |
| **\*\*\* PLEASE ADD ADDITIONAL ROWS FOR ANY ADDITIONAL SUB-FUND LENDERS OF RECORD WITH DIP A CLAIMS \*\*\*** | | |

**Annex 2 – Signature Page to DIP Collateral Trust Agreement**

Please execute the following signature pages to the DIP Collateral Trust Agreement (attached hereto). Pursuant to the Plan, any recipient of DIP Collateral Trust Interests will be deemed to have accepted the terms of the DIP Collateral Trust Agreement regardless of whether such recipient has executed a signature page thereto.

**[HOLDER OF DIP COLLATERAL TRUST
INTERESTS]**


By: _____
Name:
Title:

[SIGNATURE PAGE TO DIP COLLATERAL TRUST AGREEMENT]

**Exhibit 15**

**Creditors' Committee Position Letter**

(*to be filed*)

**Exhibit 16**

**Form of Conditional Disclosure Statement Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | § | Case No. 25-90399 (CML) |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

**NOTICE OF (I) FILING OF (A) CHAPTER 11 PLAN,**
**(B) DISCLOSURE STATEMENT, AND (C) DISCLOSURE**
**STATEMENT MOTION, (II) SCHEDULING OF CONDITIONAL**
**DISCLOSURE STATEMENT HEARING, AND (III) REQUESTED VOTING RECORD**
**DATE IN CONNECTION WITH SOLICITATION AND PLAN CONFIRMATION**

**PLEASE TAKE NOTICE THAT:**

1.      On June 5, 2026, First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**")[2] filed the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 2907) (including any exhibits and schedules thereto and as may be amended, supplemented, or otherwise modified from time to time, the "**Plan**").

2.      On June 5, 2026, the FBG Debtors filed the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. [●]) (including any exhibits and schedules thereto and as may be amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**").

3.      On June 5, 2026, the Debtors filed an emergency motion seeking approval of the Disclosure Statement (Docket No. [●]) (the "**Disclosure Statement Motion**"), which requested, among other things, that requested (i) a hearing to consider conditional approval of the Disclosure Statement Motion take place on June 12, 2026, (ii) the deadline to object to confirmation of the Plan be set for July 20, 2026 at 5:00 p.m. (Central Time), and (iii) a hearing to consider final approval of the Disclosure Statement and confirmation of the Plan take place on July 28, 2026.

4.      A hearing on the Disclosure Statement Motion (the "**Disclosure Statement Hearing**") will take place before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), on **June 12, 2026 at 10:00 a.m. (Central Time)**.  The hearing will be conducted in Courtroom 402, 4th Floor, 515 Rusk Avenue, Houston, Texas 77002.  You may also participate in the hearing by an audio and video connection.  The audio communication will be by use of the

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or the Plan (each as defined herein), as applicable.

2

Bankruptcy Court's dial-in facility.  You may access the facility at (832) 917-1510 and enter the conference code 590153.  The video communication will be by use of the Gotomeeting Platform. Connect via the free Gotomeeting Application or click the link on Judge Lopez's home page.  The meeting code is "judgelopez."  Click the settings icon in the upper right corner and enter your name under the personal information setting.

5.      Any party in interest wishing to obtain copies of the Disclosure Statement or the Plan should contact the Debtors' claims, noticing, and solicitation agent, Kroll Restructuring Administration LLC, by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Interested parties may also review and download the Disclosure Statement and the Plan free of charge at https://restructuring.ra.kroll.com/FirstBrands (the "**Online Portal**").  In addition, the Disclosure Statement and Plan are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: https://www.txs.uscourts.gov/.  Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website.  A PACER password can be obtained at: https://pacer.uscourts.gov/.

**IF YOU OBJECT TO THE RELIEF REQUESTED YOU MUST APPEAR AT THE DISCLOSURE STATEMENT HEARING OR FILE A WRITTEN RESPONSE PRIOR TO JUNE 12, 2026.**

**Proposed Voting Record Date**

6.      In the Disclosure Statement Motion, the FBG Debtors request that the Court set **June 15, 2026** as the record date for determining which holders of Claims are entitled to vote on the Plan and receive the applicable solicitation materials (the "**Voting Record Date Record Date**").  The universe of holders entitled to receive solicitation materials and vote on the Plan as of the Voting Record Date will be determined based on the FBG Debtors' books and records, the FBG Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (the "**FBG Debtors' Schedules**"), and Proofs of Claim filed against the applicable FBG Debtor on or before the Voting Record Date.

7.      **Accordingly, if you believe you hold a Claim against any of the FBG Debtors and wish to receive solicitation materials or vote on the Plan, the FBG Debtors advise that you file a Proof of Claim at https://restructuring.ra.kroll.com/FirstBrands, the Online Portal, prior to the Voting Record Date, to ensure you are captured as the holder of a Claim entitled to vote and are mailed solicitation materials.**

8.      If you are not otherwise reflected on the FBG Debtors' books and records, the FBG Debtors' Schedules, or a filed Proof of Claim, as of the Voting Record Date and wish to vote on the Plan, you must file a motion pursuant to Bankruptcy Rule 3018(a) to temporarily allow your Claim for voting purposes by **July 10, 2026 at 5:00 p.m. (Central Time)** (the "**Rule 3018(a) Motion Deadline**"), pursuant to the procedures described in the Disclosure Statement Motion.

3

WEIL\101368211\3\35253.0004

Dated: [●], 2026
      Houston, Texas

           */s/  DRAFT*
           WEIL, GOTSHAL & MANGES LLP
           Gabriel A. Morgan (24125891)
           Clifford W. Carlson (24090024)
           700 Louisiana Street, Suite 3700
           Houston, Texas 77002
           Telephone:  (713) 546-5000
           Facsimile:  (713) 224-9511
           Email:   gabriel.morgan@weil.com
                clifford.carlson@weil.com

           -and-

           WEIL, GOTSHAL & MANGES LLP
           Matthew S. Barr (admitted *pro hac vice*)
           Sunny Singh (admitted *pro hac vice*)
           Andriana Georgallas (admitted *pro hac vice*)
           Kevin Bostel (admitted *pro hac vice*)
           Jason H. George (admitted *pro hac vice*)
           767 Fifth Avenue
           New York, New York 10153
           Telephone:  (212) 310-8000
           Facsimile:  (212) 310-8007
           Email:   matt.barr@weil.com
                sunny.singh@weil.com
                andriana.georgallas@weil.com
                kevin.bostel@weil.com
                jason.george@weil.com

           *Attorneys for Debtors*
           *and Debtors in Possession*

WEIL\101368211\3\35253.0004

**Certificate of Service**

I hereby certify that on June [●], 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/  *DRAFT*
Clifford W. Carslon

WEIL\101368211\3\35253.0004

**Exhibit 17**

**Form of Plan Supplement Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | § | Case No. 25-90399 (CML) |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

**NOTICE OF (I) FILING OF PLAN SUPPLEMENT,
(II) COMBINED OBJECTION DEADLINE FOR FINAL APPROVAL OF
DISCLOSURE STATEMENT AND PLAN, AND (III) RELATED DEADLINES**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      ***Conditional Approval of Disclosure Statement***.  On June 12, 2026, the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**")[2] conditionally approved the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on June 5, 2026 (Docket No. [●]) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Disclosure Statement**") of First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**"), and thereafter entered an order (Docket No. [●]) (the "**Disclosure Statement Order**") approving the Disclosure Statement and granting related relief.  The Disclosure Statement Order, among other things, authorizes the FBG Debtors to solicit votes to accept the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on [●], 2026 (Docket No. [●]) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**"), and scheduled a hearing to consider confirmation of the Plan and final approval of the Disclosure Statement (the "**Combined Hearing**") for **July 28, 2026 at [●] (Central Time)**.

2.      ***Plan Supplement.***  On June 12, 2026, the FBG Debtors filed the *Notice of Filing of Plan Supplement in Connection With Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. [●]) attaching exhibits which supplement the Plan (collectively, the "**Plan Supplement**").  The Plan Supplement includes: (i) the Schedule of Retained Causes of Action; (ii) the disclosure of the identity of the Wind Down Administrator; (iii) the disclosure of the identity of the Claims Ombudsman; (iv) the Litigation Trust Agreement, any separate Litigation Trust Funding Agreement(s), and the form of any backstop commitment letter with the Litigation Trust Backstop Parties; and (v) a non exhaustive schedule of Specified Non-Released Parties.

3.      ***Voting and Opt-In Deadlines***.  If you received: a Ballot and intend to vote on the Plan, a Preference Settlement Opt-In Form and intend to opt-in to the Preference Settlement, you must execute and return your completed Ballot or Preference Settlement Election Form (as applicable) according to and as set forth in detail in the instructions on the respective forms so that they are actually received by the FBG Debtors' solicitation and voting agent, Kroll Restructuring Administration LLC ("**Kroll**") on or before **July 20, 2026 at 5:00 p.m. (Central Time)** (the "**Voting Deadline**").

---

1       A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

2       Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or the Plan (each as defined herein), as applicable.

4.      *Objections to Confirmation*.  The deadline to object or respond to confirmation of the Plan or final approval of the Disclosure Statement is **July 20, 2026 at 5:00 p.m. (Central Time)** (the "**Combined Objection Deadline**").  Objections and responses, if any, to confirmation of the Plan or final approval of the Disclosure Statement, must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Bankruptcy Local Rules, and any order of the Court; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party; (iv) provide the basis for the objection and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed with the Bankruptcy Court (with proof of service) via ECF or by mailing to the Bankruptcy Court at United States Bankruptcy Court Clerk's Office, United States Courthouse, 515 Rusk Avenue, Courtroom 402, 4th Floor, Houston, Texas 77002, so as to be actually received no later than the Combined Objection Deadline.

5.      *Additional Information*.  Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement, the Plan, the Plan Supplement, or other solicitation materials should contact by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Interested parties may also review and download the Disclosure Statement, Plan, and Plan Supplement free of charge at https://restructuring.ra.kroll.com/FirstBrands.  In addition, the Disclosure Statement, Plan, and Plan Supplement are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: https://www.txs.uscourts.gov/.  Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website.  A PACER password can be obtained at: https://pacer.uscourts.gov/.

6.      You may also access electronic copies of the Plan, Disclosure Statement, Plan Supplement, and any other solicitation materials via the QR Code below.  You can contact Kroll using the methods explained above to request to receive a USB flash drive containing, or a hard copy of, the Plan, Disclosure Statement, Plan Supplement.  Please be advised that Kroll cannot provide legal advice.



**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN AND PLAN SUPPLEMENT, AS YOUR RIGHTS MIGHT BE AFFECTED.**

Dated: [●], 2026
       Houston, Texas

                              /s/  DRAFT
WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   gabriel.morgan@weil.com
           clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   matt.barr@weil.com
          sunny.singh@weil.com
          andriana.georgallas@weil.com
          kevin.bostel@weil.com
          jason.george@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

United States Bankruptcy Court
Southern District of Texas

In re:

First Brands Group, LLC

WEM US Co.

    Debtors

Case No. 25-90399-cml

Chapter 11

# CERTIFICATE OF NOTICE

District/off: 0541-4                 User: ADIuser                 Page 1 of 32

Date Rcvd: Jun 12, 2026             Form ID: pdf002                Total Noticed: 207

The following symbols are used throughout this certificate:

| Symbol | Definition |
| --- | --- |
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| ^ | Addresses marked '^' were sent via mandatory electronic bankruptcy noticing pursuant to Fed. R. Bank. P. 9036. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jun 14, 2026:**

| Recip ID | | Recipient Name and Address |
| --- | --- | --- |
| db | + | First Brands Group, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | APC Intermediate Holdings, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | APC Parent, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | ASC Industries, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | AVM Export, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Airtex Industries, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Airtex Products, LP, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Autolite Operations LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | BPI Acquisition Company, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | BPI EC, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | BPI Holdings International, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Brake Parts Inc China LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Brake Parts Inc India LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Brake Parts Inc LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Broad Street Financial Holdings, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Broad Street Financial, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | CWD Holding, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | CWD Intermediate Holdings I, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | CWD Intermediate Holdings II, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | CWD, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Cardone Industries, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carnaby Capital Holdings, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carnaby Capital, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carnaby FA Holdings, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carnaby FA, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carnaby Inventory Holdings II, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carnaby Inventory Holdings III, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carnaby Inventory Holdings IV, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carnaby Inventory II, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carnaby Inventory III, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carnaby Inventory IV, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carrand Companies, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carter Carburetor Holdings, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carter Carburetor, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carter Fuel Export, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Carter Fuel Systems, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Champion Laboratories, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Dalton Corporation, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Dalton Corporation, Ashland Manufacturing Facility, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Dalton Corporation, Kendallville Manufacturing Fac, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Dalton Corporation, Stryker Machining Facility Co., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Dalton Corporation, Warsaw Manufacturing Facility, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Eagle Casting Holdings, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos: | + | Eagle Casting, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Eagle Machining, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |

| | | |
|---|---|---|
| dbpos | + | FRAM Group IP LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | FRAM Group Operations LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | FRAMAuto Holdings, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | First Brands Group Holdings, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | First Brands Group Intermediate, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Fuel Filter Technologies, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Global Assets GmbH, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Global Assets LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Global Lease Assets Holdings, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Global Reman Ventures, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Heatherton Holdings, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Hopkins Acquisition, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Hopkins Manufacturing Corporation, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Horizon Euro Finance LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Horizon Global Americas Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Horizon Global Company LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Horizon International Holdings LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | IBI International Holding Company, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | International Brake Industries, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Jasper Acquisition Corp., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Jasper Rubber Products, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | KTRI Holdings, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | KTRI Offshore Holdings, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Longman Enterprises, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | PHNX Acquisition Corp., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Patterson Inventory Holdings, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Patterson Inventory, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Premier Marketing Group, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Pylon Manufacturing Corp., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Pylon South Bend, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Qualis Automotive, L.L.C., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Qualis Enterprises, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Qualitor Acquisition Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Qualitor Automotive, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Qualitor Subsidiary H, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Qualitor Subsidiary S, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Qualitor, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Reman Management International LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | SDC TX, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Smart Choice, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Specialty Pumps Group, Inc, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Starlight Inventory Holdings I, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Starlight Inventory I, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Strongarm, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | TAE Brakes, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | TAE China Holdings, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Toledo Molding & Die, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Transportation Aftermarket Enterprise, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Trico Holding Corporation, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Trico Products Corporation, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Trico Technologies Corporation, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Tridonex USA LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | UCI Acquisition Holdings (No. 4) LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | UCI International Holdings Parent Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | UCI International Holdings, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | UCI International, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | UCI Pennsylvania, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | UCI-Airtex Holdings, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | United Components, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Universal Auto Filter LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Viceroy Private Capital, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Viper Acquisition I, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Viper Acquisition, Inc., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |

| | | |
|---|---|---|
| dbpos | + | WEM US Co., 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Walbro LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| dbpos | + | Walbro Midco LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |
| aty | + | Christopher L Phillippe, Law Office of Phillippe & Associates, 847 E. Harrison St., Brownsville, TX 78520, UNITED STATES 78520-7120 |
| aty | + | Ronald K. Brown, Jr., Law Offices of Ronald K. Brown, Jr., APC, 901 Dove St, Suite 120, Newport Beach, CA 92660-3018 |
| tr | + | Ronald J. Sommers, Nathan Sommers Gibson Dillon P.C., 1400 Post Oak BLVD, Suite 300, Houston, TX 77056 UNITED STATES 77056-6656 |
| cr | + | 1600 Industrial LLC, c/o Trey A. Monsour, Fox Rothschild LLP, 2501 N. Harwood, #1800, Dallas, TX 75201 UNITED STATES 75201-1613 |
| cr | + | AIG Insurance Company of Canada, c/o Adam L. Rosen PLLC, 121 Main Street, Box 1021, Northport, NY 11768 UNITED STATES 11768-1721 |
| op | + | Adam Wesley, Boies Schiller Flexner LLP, 55 Hudson Yards, New York, NY 10001-2163 |
| trnsfee | | Anne Willsher, 13 Marilyn Place, Queanbeyan NSW 2620, AUSTRALIA |
| cr | + | Arab Banking Corporation B.S.C., c/o Blaire A. Cahn, Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018-2706 |
| cr | + | BBJ Ventures, LLC, c/o Graham PLLC, 4203 Montrose Blvd., Suite 550, Houston, TX 77006-5427 |
| cr | + | BRI WESTPARK IV QOZB, LP, c/o Leslie S. Barr, Esq, Windels Marx Lane & Mittendorf, LLP, 156 West 56th St, New York, NY 10019-3800 |
| cr | + | CSI Leasing, Inc., c/o Clark Hill PLC, Audrey L. Hornisher, 901 Main Street, Suite 6000, Dallas, TX 75202-3748 |
| cr | + | Carrdan Corporation, 100 Reed Drive, Temperance, MI 48182-8900 |
| cr | + | Ciara Childs, c/o J. Gerard Stranch, IV, Stranch, Jennings, & Garvey, PLLC, 223 Rosa Parks Ave., Suite 200 Nashville, TX 37203-3513 |
| cr | | City of Miami Special Utility Authority, c/o Steven W. Soule', Hall, Estill, et al., 521 East 2nd Street, Suite 1200 Tulsa, OK 74120-1855 |
| cr | + | Crown Equipment Corporation dba Crown Lift Trucks, Sebaly Shillito and Dyer, 220 E. Monument Ave., Suite 500, Dayton, OH 45402 UNITED STATES 45402-1267 |
| intp | + | David Parker, Davis & Santos, 719 S. Flores Street, San Antonio, TX 78204, UNITED STATES 78204-1350 |
| intp | + | David Parker, Davis and Santos, PLLC, 719 S. Flores Street, San Antonio, TX 78204, UNITED STATES 78204-1350 |
| trnsfee | | David Willsher, 13 Marilyn Place, Queanbeyan NSW 2620, AUSTRALIA |
| cr | + | De Lage Landen Financial Services, Inc., c/o Stark & Stark, PC, 100 American Metro Blvd., Hamilton, NJ 08619, UNITED STATES 08619-2319 |
| intp | | Deva Capital Investment Company S.L.U., Avenida de Cantabria s/n, Boadilla del Monte, 28660, SPAIN |
| trnsfee | + | Durham BDR LLC, 4012 Dover Rd, Durham, NC 27707-5401 |
| cr | + | Epicor Software Corporation, c/o Clark Hill PLC, Attn: Duane J. Brescia, 3711 S. Mopac Expressway, Bldg One, Suite 500 Austin, TX 78746-8041 |
| intp | + | Flex-N-Gate LLC, Foley & Lardner LLP, 2021 McKinney Ave., Suite 1600, Dallas, TX 75201-3340 |
| cr | + | Francisco Garza, c/o J. Gerard Stranch, IV, 223 Rosa Parks Ave., Suite 200, Nashville, TX 37203-3513 |
| trnsfee | + | GS Financial Network, 7910 Woodmont Ave, Ste 1050, Bethesda, MD 20814-3069 |
| cr | + | Goldstar Warehousing, Ltd., 5845 Padre Island HWY, Brownsville, TX 78521-4419 |
| cr | + | Gorman Industrial Supply Co., c/o ScottHulse, P.C./James M. Feuille, 201 E. Main Drive, Suite 1100, El Paso, TX UNITED STATES 79901-1340 |
| cr | + | Guishou Saboman Technology Development Co., Ltd., Mehaffy Weber, P.C., c/o Holly C. Hamm, P.O. Box 16, Beaumont, TX 77704-0016 |
| cr | + | Guizhou Saboman Micronized Mining Co., Ltd., Mehaffy Weber, P.C., c/o Holly C. Hamm, P.O. Box 16, Beaumont, TX 77704-0016 |
| cr | + | HerbertUSA, Inc., 1480 Industrial Pkwy, Akron, OH 44310-2602 |
| cr | + | Honda Development & Manufacturing of America, LLC,, FBT Gibbons LLP, c/o Patricia K. Burgess, 150 3rd Ave S, Ste 1900 Nashville, TN 37201-2043 |
| cr | + | KITKAT (IL) LLC, c/o Sam Rubenstein, 395 9th Avenue, 58th Floor, New York, NY 10001-8611 |
| cr | + | Kawasaki Motors Corp., USA, c/o Clark Hill PLC, Attn: Audrey L. Hornisher, 901 Main Street, Suite 6000, Dallas, TX 75202-3748 |
| cr | + | Kingsbridge Holdings, LLC, Darcy & Devassy PC, 444 N. Michigan Ave, Suite 3270, Chicago, IL 60611, UNITED STATES 60611-3906 |
| op | + | Kroll Restructuring Administrat Kroll Restructurin, 1 World Trade Center, 31st Floor, New York, NY 10007, UNITED STATES 10007-0090 |
| cr | + | MAC Montacargas Corporation, co Bruce J. Ruzinsky, Jackson Walker LLP, 1401 McKinney St., Suite 1900, Houston, Tx 77010-1900 |
| cr | + | Manuel Fernandez, c/o J. Gerard Stranch, IV, Stranch, Jennings, & Garvey, PLLC, 223 Rosa Parks Ave., Suite 200 Nashville, TN 37203-3513 |
| cr | + | Manuel Leal, c/o J. Gerard Stranch, IV, Stranch, Jennings, & Garvey, PLLC, 223 Rosa Parks Ave., Suite 200 Nashville, TN 37203-3513 |
| intp | + | Marco Gaxiola, 5602 Buckeye Ct, Brownsville, TX 78526-4342 |
| cr | | Martin Titanium American Logistics, Inc., Martin Seidler, 32 Simpson Road, Bolton, Ontario, Canada, L7E 1G9 CANADA |
| cr | + | Milwood Holdings, LLC, c/o Dietz Property Group, 2075 W. Big Beaver, Troy, MI 48084-3407 |
| cr | + | Mitsubishi HC Capital America, Inc., c/o Brian R. Trumbauer, Bodman PLC, 6th Floor at Ford Field, 1901 St. Antoine Street Detroit, MI 48226-2336 |
| cr | + | NP Whitaker Ave. Industrial, LLC, 3315 N. Oak Trafficway, Kansas City, MO 64116-2775 |
| cr | + | NTT DATA Americas, Inc., Streusand, Landon, Ozburn & Lemmon, LLP, 1801 S. MoPac Expressway, Suite 320, Austin, Tx 78746, UNITED STATES 78746-9817 |
| cr | + | Napier Park Global Capital (US) LP, 280 Park Avenue, 3rd Floor, New York, NY 10017-1274 |
| cr | + | PG Maderas y Triplay S.A. de C.V., Martin & Drought, P.C., 112 East Pecan Street, 112 East Pecan Street, San Antonio, TX 78205 UNITED STATES 78205-1512 |
| intp | + | Patrick James, Quinn Emanuel Urquhart & Sullivan, LLP, 295 5th Avenue, New York, NY 10016-7103 |
| intp | + | Phoenix Brownsville Industrial Investors LLC, c/o David E. Lemke, Holland & Knight LLP, 511 Union St, Suite 2700, Nashville, TN |

| | | |
|---|---|---|
| | | 37219-1791 |
| cr | + | Planters Bank, David F. Waguespack, Carver Darden, 1100 Poydras Street, Suite 3100, New Orleans, LA 70163 UNITED STATES 70163-1102 |
| cr | + | Pyramid Warehousing, Ltd., 5845 Padre Island HWY, Brownsville, TX 78521-4419 |
| cr | | Qindao Carflex Auto Parts Co., Ltd., 10 Dazhonger Road, Jimo District, Qingdao, Shandong 266200, CHINA |
| trnsfee | | RMO MSF PTY LTD, ATF Muirhead Family Superannuation Fund, 14-16 Brucedale Crescent, Park Orchards VIC 3114, AUSTRALIA |
| cr | + | SRE Miami, LLC, 2570 Bradford Lane, Brookfield, WI 53045-1701 |
| cr | + | STORE Capital Acquisitions, LLC, 1 East Washington Street, Suite 2300, Phoenix, AZ 85004, UNITED STATES 85004-2555 |
| cr | + | STORE Master Funding IV, LLC, c/o Ballard Spahr LLP, 1 East Washington Street, Suite 2300, Phoenix, AZ 85004 UNITED STATES 85004-2555 |
| cr | + | STORE Master Funding XIV, LLC, c/o Ballard Spahr LLP, 1 East Washington Street, Suite 2300, Phoenix, AZ 85004 UNITED STATES 85004-2555 |
| cr | + | Scotland Enterprises, Inc., Scotland Enterprises, Inc. (Attn: Pres.), 5526 Scotland Rd., Bentonia, MS 39040-9310 |
| trnsfee | + | Sharon Casey, 58 North Street, Greenwich, CT 06830-4726 |
| cr | + | SmartestEnergy US LLC, 110 West Fayette Street, Suite 400, Syracuse, NY 13202-1198 |
| cr | + | SorTech LLC, c/o Ramiro Tovar, 1900 Sebastian St., Mission, TX 78572-8386 |
| cr | + | St. Clair Technologies, Inc., c/o Clark Hill PLC, Attn: Robert P. Franke, 901 Main Street, Suite 6000, Dallas, TX 75202-3748 |
| cr | + | Staci Corp. d/b/a Vexos, Inc. c/o Nicola G. Suglia, Four Greentree Centre, 601 Route 73 North, Suite 305, Marlton, NJ 08053 UNITED STATES 08053-3475 |
| cr | + | Stag Industrial Holdings, LLC, One Federal Street, 23rd Floor, Boston, MA 02110-2031 |
| cr | + | Steven R Bodeman, 5629 Colver Road, Talent, OR 97540-6746 |
| trnsfee | + | The Oslo Nevada Trust, Barry D Rudolph, 4012 Dover Rd, Durham, NC 27707-5401 |
| cr | + | Tim Johnson, c/o J. Gerard Stranch, IV, Stranch, Jennings, & Garvey, PLLC, 223 Rosa Parks Ave., Suite 200 Nashville, TN 37203-3513 |
| cr | + | Total Quality Logistics, LLC, c/o Dinsmore & Shohl LLP, 655 W. Broadway, Suite 800, San Diego, CA 92101, UNITED STATES 92101-8482 |
| trnsfee | + | Tracy Fu, 300 E 55th Street, Apt 25A, New York, NY 10022-4391 |
| cr | + | Valeo North America, Inc., co Victoria Argeroplos, Jackson Walker LLP, 1401 McKinney St., Suite 1900, Houston, TX 77010-1900 |
| cr | + | Valeo Sistemas Electricos, S.A. de C.V., co Victoria Argeroplos, Jackson Walker LLP, 1401 McKinney St., Suite 1900, Houston, TX 77010-1900 |
| cr | + | Zurich American Insurance Company, c/o Clark Hill PLC, Attn: Duane J. Brescia, 3711 S. Mopac Expressway, Bldg One, Suite 500 Austin, TX 78746-8041 |

TOTAL: 182

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| intp | + | Email/Text: tom@howley-law.com | Jun 12 2026 20:18:00 | Ad Hoc Group of Lenders, 700 Louisiana Street, Suite 4220, Houston, TX 77002, UNITED STATES 77002-2881 |
| cr | + | Email/PDF: acg.acg.ebn@aisinfo.com | Jun 12 2026 20:17:23 | Ally Bank Lease Trust - Assignor to Vehicle Asset, 4515 N Santa Fe Ave. Dept. APS, Oklahoma City, OK 73118-7901 |
| cr | + | Email/Text: dferretti@bakerdonelson.com | Jun 12 2026 20:18:00 | AutoZone Parts, Inc., Baker Donelson, c/o Daniel J. Ferretti, 1301 McKinney, Suite 3700, Houston, TX 77010, UNITED STATES 77010-3034 |
| cr | + | Email/Text: dferretti@bakerdonelson.com | Jun 12 2026 20:18:00 | AutoZone, Inc., Baker Donelson, c/o Daniel J. Ferretti, 1301 McKinney, Suite 3700, Houston, TX 77010, UNITED STATES 77010-3034 |
| cr | + | Email/Text: edinburgbankruptcy@pbfcm.com | Jun 12 2026 20:18:00 | Brownsville Independent School District, c/o Hiram A. Gutierrez, P.O. Box 2916, McAllen, Tx 78502-2916 |
| cr | + | Email/Text: comedbankruptcygroup@exeloncorp.com | Jun 12 2026 20:19:00 | Commonwealth Edison Company, c/o Law Firm of Russell R. Johnson III,, 2258 Wheatlands Drive, Manakin-Sabot, VA 23103, UNITED STATES 23103-2168 |
| cr | ^ | MEBN | Jun 12 2026 20:14:49 | Constellation NewEnergy Gas Division, LLC, c/o Law Firm of Russell R. Johnson III,, 2258 Wheatlands Drive, Manakin-Sabot, VA 23103, UNITED STATES 23103-2168 |
| cr | ^ | MEBN | Jun 12 2026 20:14:50 | Constellation NewEnergy, Inc., c/o Law Firm of Russell R. Johnson III,, 2258 Wheatlands Drive, Manakin-Sabot, VA 23103, UNITED STATES |

| | | | |
|---|---|---|---|
| | | | 23103-2168 |
| cr | + Email/Text: bankruptcy-notification.ena@engie.com | | |
| | | Jun 12 2026 20:18:00 | ENGIE Resources LLC, 1360 Post Oak Blvd., Suite 400, Houston, TX 77056-3030 |
| cr | + Email/PDF: acg.acg.ebn@aisinfo.com | | |
| | | Jun 12 2026 20:17:11 | Ford Motor Credit Company LLC, c/o AIS Portfolio S, 4515 N Santa Fe Ave. Dept. APS, Oklahoma City, OK 73118-7901 |
| cr | + Email/Text: russj4478@aol.com | | |
| | | Jun 12 2026 20:19:00 | Indiana Michigan Power Company, c/o Law Firm of Russell R. Johnson III,, 2258 Wheatlands Drive, Manakin-Sabot, VA 23103, UNITED STATES 23103-2168 |
| cr | + Email/Text: susan.triggs@insight.com | | |
| | | Jun 12 2026 20:19:00 | Insight Direct USA, Inc., 2701 East Insight Way, Chandler, AZ 85286, UNITED STATES 85286-1947 |
| op | ^ MEBN | | |
| | | Jun 12 2026 20:14:19 | Kroll Restructuring Administration LLC, 1 World Trade Center, 31st Floor, New York, NY 10007, UNITED STATES 10007-0090 |
| cr | + Email/Text: russj4478@aol.com | | |
| | | Jun 12 2026 20:19:00 | Metropolitan Company, c/o Law Firm of Russell R. Johnson III,, 2258 Wheatlands Drive, Manakin-Sabot, VA 23103, UNITED STATES 23103-2168 |
| cr | + Email/Text: russj4478@aol.com | | |
| | | Jun 12 2026 20:19:00 | Ohio Power Company, c/o Law Firm of Russell R. Johnson III,, 2258 Wheatlands Drive, Manakin-Sabot, VA 23103, UNITED STATES 23103-2168 |
| cr | + Email/Text: schristianson@buchalter.com | | |
| | | Jun 12 2026 20:18:00 | Oracle America, Inc., Buchalter PC, c/o Shawn M. Christianson, 425 Market St., Suite 2900, San Francisco, Ca 94105-2491 |
| cr | + Email/Text: bncctnotifications@pbgc.gov | | |
| | | Jun 12 2026 20:17:00 | Pension Benefit Guaranty Corporation, Office of the General Counsel, 445 12th Street, SW, Washington, DC 20024-2101 |
| cr | + Email/Text: AGBankRevenue@ag.tn.gov | | |
| | | Jun 12 2026 20:18:00 | TN Dept of Revenue, c/o TN Attorney General's Office, Bankruptcy Division, P.O. Box 20207, Nashville, TN 37202-4015 |
| cr | + Email/Text: bankruptcy@bbandt.com | | |
| | | Jun 12 2026 20:18:00 | TRUIST BANK, 214 North Tryon Street, Suite 3, Charlotte, NC 28202-1023 |
| cr | + Email/Text: dallas.bankruptcy@LGBS.com | | |
| | | Jun 12 2026 20:19:00 | Tarrant County, c/o John Kendrick Turner, 3500 Maple Avenue, Suite 800, Dallas, TX 75219, UNITED STATES 75219-3959 |
| trnsfee | + Email/Text: brudolph@tigbeach.com | | |
| | | Jun 12 2026 20:19:00 | The Oslo Nevada Trust, Barry D Rudolph, 4012 Dover Rd, Durham, NC 27707-5401 |
| cr | + Email/Text: bankruptcy@firstenergycorp.com | | |
| | | Jun 12 2026 20:19:00 | Toledo Edison Company, c/o Law Firm of Russell R. Johnson III,, 2258 Wheatlands Drive, Manakin-Sabot, VA 23103, UNITED STATES 23103-2168 |
| cr | + Email/Text: BankruptcyECFMail@mccalla.com | | |
| | | Jun 12 2026 20:18:00 | Toyota Industries Commercial Finance, Inc, c/o McCalla Raymer Leibert Pierce, LLP, Bankruptcy Department, 1544 Old Alabama Rd, Roswell, GA 30076-2102 |
| intp | + Email/Text: usatxs.bankruptcy@usdoj.gov | | |
| | | Jun 12 2026 20:18:00 | United States Of America, United States Attorney's Office, 1000 Louisiana Street, Suite 2300, Houston, TX 77002, UNITED STATES OF AMERICA 77002-5010 |
| cr | Email/Text: pat@pmfpc.com | | |
| | | Jun 12 2026 20:19:00 | United Steel, Paper & Forestry, Rubber, Manufactur, c/o Patrick M. Flynn P.C., 1225 North Loop West, Suite 1000, Houston, TX 77008-1775 |
| cr | + Email/Text: ecffilings@padfieldstout.com | | |
| | | Jun 12 2026 20:18:00 | Whirlpool Corporation, c/o Padfield & Stout, LLP, 100 Throckmorton Street, Suite 700, Fort Worth, TX 76102-2837 |

District/off: 0541-4 | User: ADIuser | Page 6 of 32
Date Rcvd: Jun 12, 2026 | Form ID: pdf002 | Total Noticed: 207
TOTAL: 26

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| intp | | 1970 Group, Inc. |
| cr | | 1995 Billy Mitchell Boulevard, Inc. |
| cr | | 673753 Ontario Limited DBA TRAFFIX |
| intp | | A.N Webber Logistics, Inc. |
| cr | | ACAR Leasing Ltd |
| cr | | ARC CGLGNIN001, LLC |
| cr | | ARC CGMARSC001, LLC |
| cr | | AVO Carbon USA, Inc. |
| intp | | AXIS Insurance Company |
| intp | | Adam S Wesley |
| cr | | Advance Auto Parts, Inc. |
| intp | | Aequum Capital Financial II LLC |
| cr | | Aftermarket Auto Parts Alliance, Inc. |
| cr | | Alliance Automotive Group (EU) |
| intp | | Allianz Global Risks US Insurance Company |
| intp | | Amanda Coxbill |
| cr | | Amazon Advertising LLC |
| cr | | Automotive Auto Parts Distributors, Inc. |
| aud | | BDO USA, P.C. |
| cr | | BFG Corporation d/b/a Byline Financial Group |
| cr | | BPP Cannonball Park A LP fka BPP Shiraz Park A LP |
| cr | | BPP Shiraz Park A LP |
| cr | | BPREP 1805 S. Wilmington LLC |
| intp | | Banco Actinver, Sociedad Annima, Institucin de Ban |
| cr | | Bank of America, N.A. |
| op | | Bank of America, N.A. |
| intp | | CMX North America Inc. |
| cr | | Cameron County |
| intp | | Carnaby II and III Secured Parties |
| cr | | Central States, Southeast and Southwest Areas Pens |
| cr | | City Of McAllen |
| cr | | Comcast Cable Communications Management, LLC |
| cr | | Daniel Villalta |
| cr | | Diana J Holt |
| intp | | Edward James |
| cr | | Evolution Credit Partners |
| cr | | Export Development Canada |
| intp | | FCA US LLC |
| cr | | FactoFrance |
| intp | | Fair American Insurance and Reinsurance Company |
| cr | | Federated Auto Parts Distributors, Inc. |
| cr | | First Guaranty Bank |
| cr | | Ford Motor Company |
| cr | | GPC Asia Pacific Limited |
| cr | | GPC Asia Pacific Pty Ltd. |
| cr | | Genuine Parts Company |
| cr | | Grammer Inc. and Grammer Americas LLC |
| intp | | Hannah Aiello |
| cr | | Harley-Davidson Motor Company, Inc. |
| cr | | Hidalgo County |
| intp | | Hilco Valuation Services, LLC, Dba Hilco Global an |
| cr | | IA Mechanical Inc. |
| trnsfor | | IFG North America LLC |
| cr | | ING Belgium S.A./N.V. |
| cr | | IPVIII 185th Street, LLC fka ELHC VIII, LLC |
| cr | | IPXXII 193 Street, LLC fka ELHC XXII, LLC |

| | |
|---|---|
| cr | Industrial Realty Group LLC |
| cr | International Union, United Automobile, Aerospace |
| intp | Ironshore Indemnity, Inc. |
| intp | Jefferies Financial Group Inc. |
| cr | Katsumi Servicing, LLC |
| cr | Keystone Automotive Operations, Inc. |
| intp | LAM TFG |
| intp | LAM TFG I SPV |
| intp | LAM TFG II |
| cr | LBA RV-Company XVII, LP |
| intp | Laurie Stein |
| intp | Leucadia Asset Management LLC |
| cr | Longkou Haimeng Machinery Co., Ltd. |
| cr | Lordco Parts Ltd. |
| cr | MacAllister Machinery Company, Inc. |
| cr | Maria Tapia |
| ex | Martin De Luca |
| cr | Masergy Communications, Inc. |
| cr | Mayfair Enterprises, LLC |
| intp | Michael Baker |
| intp | Michael Baker |
| intp | Michael Baker |
| cr | Michael Bueno |
| cr | Motion Industries (Canada) Inc. |
| cr | Motion Industries (Mexico) Inc. |
| cr | Motion Industries, Inc. |
| intp | National Union Fire Insurance Co. of Pittsburgh, P |
| intp | Nelly Luna |
| wit | NextProcess, LP |
| intp | Nigel Crighton |
| intp | Nissan North America, Inc. |
| cr | OEC Group |
| crcm | Official Committee of Unsecured Creditors |
| cr | OmniSource, LLC |
| cr | Onset Financial, Inc. |
| intp | Overdrive Acquisition, LLC, /, /, /, / |
| intp | PGI Northstar LLC |
| intp | Peter Andrew Brumbergs |
| intp | Polaris Industries Inc. |
| intp | Premium Guard Incorporated |
| intp | QBE Insurance Corporation |
| cr | RLI Insurance Company |
| cr | RWI Logistics LLC |
| cr | Raistone Capital LLC |
| cr | Raistone Factoring Parties |
| cr | Raistone Purchasing LLC -Series XXXII |
| cr | Raistone Purchasing LLC-Series XXVIII |
| cr | Randall Metals Corporation |
| cr | Rebuilders Automotive Supply Co. |
| cr | Royal Bank of Canada |
| intp | Ryder Integrated Logistics, Inc. |
| cr | SMURFIT WESTROCK PLC and affiliates |
| intp | SPV Debtors |
| intp | Scott Wallace |
| intp | Shekhar Kumar |
| cr | Silver Point Capital, L.P. |
| cr | Southern Machinery Repair, Inc. |
| intp | Stephen Graham |
| cr | T.H.I. Group Ltd. |
| cr | Terra Worldwide Logistics LLC dba American Global |
| cr | Texas Comptroller of Public Accounts, Revenue Acco |
| cr | The City of Jasper, Indiana |
| intp | The NOCO Company |

| | | |
|---|---|---|
| cr | | The Pronto Network Cooperative, Inc. |
| intp | | The Reinalt-Thomas Corporation d/b/a Discount Tire |
| cr | | Toyota Industries Commercial Finance, Inc. |
| cr | | Toyota Industries Commercial Finance, Inc. |
| cr | | Transend Logistics, LLC |
| cr | | TriMas Corporation |
| cr | | U.S. BANK NATIONAL ASSOCIATION |
| cr | | UAP (Canada) Inc. |
| cr | | UMB Bank, N.A. |
| cr | | Uni-Select, Inc. |
| cr | | Volkswagen Group of America, Inc. and certain affi |
| cr | | Volvo Penta of the Americas, LLC |
| cr | | Washington Penn Plastics Co. Inc. |
| intp | | Westfield Select Insurance Company |
| cr | | William Christopher Harrod |
| cr | | Wilmington Savings Fund Society, FSB |
| cr | | XL Parts, LLC |
| intp | | Zurich American Insurance Company |
| dbpos | *+ | Horizon Global Corporation, 127 Public Square, Suite 5300, Cleveland, OH 44114-1219 |

TOTAL: 137 Undeliverable, 1 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jun 14, 2026        Signature:     /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on June 12, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Aaron Matthew Guerrero | on behalf of Creditor Washington Penn Plastics Co. Inc. aaron.guerrero@bondsellis.com margeaux.gorman@bondsellis.com |
| Adam C Rogoff | on behalf of Interested Party LAM TFG II arogoff@kramerlevin.com corporate-reorg-1449@ecf.pacerpro.com |
| Adam C Rogoff | on behalf of Interested Party LAM TFG I SPV arogoff@kramerlevin.com corporate-reorg-1449@ecf.pacerpro.com |
| Adam C Rogoff | on behalf of Interested Party LAM TFG arogoff@kramerlevin.com corporate-reorg-1449@ecf.pacerpro.com |
| Adam C Rogoff | on behalf of Interested Party Leucadia Asset Management LLC arogoff@kramerlevin.com corporate-reorg-1449@ecf.pacerpro.com |
| Aitan D. Goelman | on behalf of Interested Party Laurie Stein agoelman@zuckerman.com |
| Alana L Porrazzo | on behalf of Creditor RLI Insurance Company alp@jkwlawyers.com |
| Alexander F Berk | on behalf of Creditor Alliance Automotive Group (EU) alexander.berk@bfkn.com courtnotification@mayerbrown.com |
| Alexander F Berk | |

       on behalf of Creditor Motion Industries (Mexico) Inc. alexander.berk@bfkn.com  courtnotification@mayerbrown.com

Alexander F Berk

       on behalf of Creditor GPC Asia Pacific Pty Ltd. alexander.berk@bfkn.com  courtnotification@mayerbrown.com

Alexander F Berk

       on behalf of Creditor Genuine Parts Company alexander.berk@bfkn.com  courtnotification@mayerbrown.com

Alexander F Berk

       on behalf of Creditor Motion Industries (Canada) Inc. alexander.berk@bfkn.com  courtnotification@mayerbrown.com

Alexander F Berk

       on behalf of Creditor UAP (Canada) Inc. alexander.berk@bfkn.com  courtnotification@mayerbrown.com

Alexander F Berk

       on behalf of Creditor GPC Asia Pacific Limited alexander.berk@bfkn.com  courtnotification@mayerbrown.com

Alexander F Berk

       on behalf of Creditor Motion Industries  Inc. alexander.berk@bfkn.com, courtnotification@mayerbrown.com

Alexandra P. Kolod

       on behalf of Defendant GLAS USA LLC apkolod@mosessinger.com

Alexandra P. Kolod

       on behalf of Plaintiff GLAS USA LLC apkolod@mosessinger.com

Allen M. DeBard

       on behalf of Creditor SMURFIT WESTROCK PLC and affiliates adebard@langleybanack.com
cjohnston@langleybanack.com;sfoushee@langleybanack.com

Amanda Marie Noonan

       on behalf of Interested Party Aequum Capital Financial II LLC amanda.noonan@blankrome.com

Andrew Schrag

       on behalf of Defendant Aequum Capital Financial II LLC andy.schrag@blankrome.com

Andrew J Geppert

       on behalf of Creditor Lordco Parts Ltd. GeppertA@ballardspahr.com  gepperta@ballardspahr.com

Andrew Michael Parks

       on behalf of Creditor Evolution Credit Partners aparks@elsberglaw.com

Anna Rotman

       on behalf of Interested Party 1970 Group  Inc. anna.rotman@kirkland.com,
rkwasteniet@kirkland.com;jaimie.fedell@kirkland.com;brad.weiland@kirkland.com;john.luze@kirkland.com;kevin.mcclelland@
kirkland.com

Antonio Villeda

       on behalf of Creditor SorTech LLC avilleda@mybusinesslawyer.com
VilledaFiled@hotmail.com;villedalawgroup@ecf.courtdrive.com;ehury@mybusinesslawyer.com;mfsantos@mybusinesslawyer.co
m;mtalbot@mybusinesslawyer.com

Antonio Villeda

       on behalf of Creditor SorTech  LLC avilleda@mybusinesslawyer.com,
VilledaFiled@hotmail.com;villedalawgroup@ecf.courtdrive.com;ehury@mybusinesslawyer.com;mfsantos@mybusinesslawyer.co
m;mtalbot@mybusinesslawyer.com

Ariel Roytenberg

       on behalf of Creditor Raistone Purchasing LLC -Series XXXII aroytenberg@orrick.com

Ariel Roytenberg

       on behalf of Creditor Raistone Purchasing LLC-Series XXVIII aroytenberg@orrick.com

Ariel Roytenberg

       on behalf of Creditor Raistone Capital LLC aroytenberg@orrick.com

Asiya Khan

       on behalf of Creditor KITKAT (IL) LLC akhan@bradley.com  akhan@ecf.courtdrive.com,asiya-khan-4339@ecf.pacerpro.com

Audrey Lorene Hornisher

       on behalf of Creditor Epicor Software Corporation audrey.hornisher@clarkhillstrasburger.com
mina.alvarez@clarkhillstrasburger.com

Audrey Lorene Hornisher

       on behalf of Creditor St. Clair Technologies  Inc. audrey.hornisher@clarkhillstrasburger.com,
mina.alvarez@clarkhillstrasburger.com

Audrey Lorene Hornisher

       on behalf of Creditor CSI Leasing  Inc. audrey.hornisher@clarkhillstrasburger.com, mina.alvarez@clarkhillstrasburger.com

Audrey Lorene Hornisher

       on behalf of Creditor Zurich American Insurance Company audrey.hornisher@clarkhillstrasburger.com
mina.alvarez@clarkhillstrasburger.com

Audrey Lorene Hornisher

on behalf of Creditor Kawasaki Motors Corp.  USA audrey.hornisher@clarkhillstrasburger.com, mina.alvarez@clarkhillstrasburger.com

Benjamin R. Keck

on behalf of Creditor Terra Worldwide Logistics LLC dba American Global Logistics bkeck@kecklegal.com

Bethany Simmons

on behalf of Creditor ARC CGLGNIN001  LLC bsimmons@loeb.com

Bethany Simmons

on behalf of Creditor ARC CGMARSC001  LLC bsimmons@loeb.com

Blaire Cahn

on behalf of Creditor Arab Banking Corporation B.S.C. blaire.cahn@bakermckenzie.com  lori.seavey@bakermckenzie.com

Brad R. Berliner

on behalf of Creditor Central States  Southeast and Southwest Areas Pension Fund bberliner@centralstatesfunds.org

Brendan Collins

on behalf of Creditor Terra Worldwide Logistics LLC dba American Global Logistics bcollins@gkglaw.com

Brian Trumbauer

on behalf of Creditor Mitsubishi HC Capital America  Inc. btrumbauer@bodmanlaw.com

Brian Christopher Kalas

on behalf of Creditor White Tool & Die LLC bck@liebenthal-levine.com

Brian Scott Jones

on behalf of Creditor Stag Industrial Holdings  LLC b.jones@boselaw.com, cosman@boselaw.com

Bruce J Ruzinsky

on behalf of Creditor MAC Montacargas Corporation bruzinsky@jw.com msalinas@jw.com;kgradney@jw.com;dtrevino@jw.com;jpupo@jw.com

Bryce Friedman

on behalf of Defendant Broad Street Financial Holdings  LLC bfriedman@stblaw.com

Bryce Friedman

on behalf of Interested Party SPV Debtors bfriedman@stblaw.com

Bryce Friedman

on behalf of Defendant Broad Street Financial  LLC bfriedman@stblaw.com

Cameron Michael Kelly

on behalf of Interested Party Patrick James cameronkelly@quinnemanuel.com

Cameron Michael Kelly

on behalf of Defendant The Patrick James Trust cameronkelly@quinnemanuel.com

Cameron Michael Kelly

on behalf of Defendant Bond Street Asset Management LLC cameronkelly@quinnemanuel.com

Cameron Michael Kelly

on behalf of Defendant Ignite Acquisition Holdings LLC cameronkelly@quinnemanuel.com

Cameron Michael Kelly

on behalf of Defendant Alester Technologies LLC cameronkelly@quinnemanuel.com

Cameron Michael Kelly

on behalf of Defendant Patrick James cameronkelly@quinnemanuel.com

Cameron Michael Kelly

on behalf of Defendant Battery Park Holding LLC cameronkelly@quinnemanuel.com

Cameron Michael Kelly

on behalf of Defendant Pegasus Aviation  LLC cameronkelly@quinnemanuel.com

Cameron Michael Kelly

on behalf of Defendant Albion Realty  LLC cameronkelly@quinnemanuel.com

Cameron Michael Kelly

on behalf of Defendant Larchmont LLC cameronkelly@quinnemanuel.com

Carina M. Kraatz

on behalf of Creditor Milwood Holdings  LLC carina.kraatz@kitch.com

Carrie V. Hardman

on behalf of Defendant Bank of America  N.A. carrie.hardman@winstontaylor.com, dcunsolo@winston.com;carrie-hardman-4684@ecf.pacerpro.com

Carrie V. Hardman

on behalf of Creditor Bank of America  N.A. carrie.hardman@winstontaylor.com,

dcunsolo@winston.com;carrie-hardman-4684@ecf.pacerpro.com

Casey William Doherty, Jr

    on behalf of Creditor FactoFrance casey.doherty@dentons.com Docket.General.Lit.Dal@dentons.com

Charles Lester Kennon, III

    on behalf of Debtor In Possession First Brands Group Holdings  LLC Charles.Kennon@mccalla.com, mccallaecf@ecf.courtdrive.com

Charles Lester Kennon, III

    on behalf of Creditor Toyota Industries Commercial Finance  Inc. Charles.Kennon@mccalla.com, mccallaecf@ecf.courtdrive.com

Charles Michael Rubio

    on behalf of Interested Party Overdrive Acquisition  LLC crubio@parkinsrubio.com, 7485062420@filings.docketbird.com

Charles R Gibbs

    on behalf of Auditor BDO USA  P.C. Crgibbs@mcdermottlaw.com, dnorthrop@mwe.com;jbishopjones@mwe.com;nalindogan@mcdermottlaw.com;jacqueline-bishop-jones-0301@ecf.pacerpro.com

Charles Randall Woolley, II

    on behalf of Creditor Kingsbridge Holdings  LLC rwoolley@darcydevassy.com

Charles Stephen Kelley

    on behalf of Creditor Katsumi Servicing  LLC ckelley@mayerbrown.com, sswihart@mayerbrown.com;houstondocket@mayerbrown.com;6843309420@filings.docketbird.com

Christian Paul Jensen

    on behalf of Interested Party Deva Capital Investment Company S.L.U. jensenc@sullcrom.com

Christopher Donald Johnson

    on behalf of Creditor Aftermarket Auto Parts Alliance  Inc. chris.johnson@diamondmccarthy.com, christopher-Johnson-0229@ecf.pacerpro.com;nan.sauter@diamondmccarthy.com;cburrow@diamondmccarthy.com

Christopher Donald Johnson

    on behalf of Creditor Federated Auto Parts Distributors  Inc. chris.johnson@diamondmccarthy.com, christopher-Johnson-0229@ecf.pacerpro.com;nan.sauter@diamondmccarthy.com;cburrow@diamondmccarthy.com

Christopher Donald Johnson

    on behalf of Creditor Automotive Auto Parts Distributors  Inc. chris.johnson@diamondmccarthy.com, christopher-Johnson-0229@ecf.pacerpro.com;nan.sauter@diamondmccarthy.com;cburrow@diamondmccarthy.com

Christopher Donald Johnson

    on behalf of Creditor The Pronto Network Cooperative  Inc. chris.johnson@diamondmccarthy.com, christopher-Johnson-0229@ecf.pacerpro.com;nan.sauter@diamondmccarthy.com;cburrow@diamondmccarthy.com

Christopher Lee Phillippe

    on behalf of Attorney Christopher L Phillippe clphillippe@cameroncountylawyer.com zlgarza@cameroncountylawyer.com;bankruptcy@cameroncountylawyer.com;LawOfficesofPhillippeAssociates@jubileebk.net

Christopher Michael Joralemon

    on behalf of Defendant GLAS USA LLC cjoralemon@gibsondunn.com christopher-m-joralemon-1292@ecf.pacerpro.com,pacer-tx@gibsondunn.com,pacer-ny@gibsondunn.com

Christopher Michael Joralemon

    on behalf of Defendant Wilmington Savings Fund Society  FSB cjoralemon@gibsondunn.com, christopher-m-joralemon-1292@ecf.pacerpro.com,pacer-tx@gibsondunn.com,pacer-ny@gibsondunn.com

Christopher Michael Joralemon

    on behalf of Plaintiff GLAS USA LLC cjoralemon@gibsondunn.com christopher-m-joralemon-1292@ecf.pacerpro.com,pacer-tx@gibsondunn.com,pacer-ny@gibsondunn.com

Christopher Michael Joralemon

    on behalf of Plaintiff Wilmington Savings Fund Society  FSB cjoralemon@gibsondunn.com, christopher-m-joralemon-1292@ecf.pacerpro.com,pacer-tx@gibsondunn.com,pacer-ny@gibsondunn.com

Christopher S. Baxter

    on behalf of Creditor Crown Equipment Corporation dba Crown Lift Trucks dba Crown Credit Company cbaxter@ssdlaw.com khemm@ssdlaw.com

Christopher V Arisco

    on behalf of Creditor Whirlpool Corporation carisco@padfieldstout.com

Christos Nicholas Georgalis

    on behalf of Interested Party Nigel Crighton chris@flannerygeorgalis.com  mgable@flannerygeorgalis.com

Clifford William Carlson

    on behalf of Debtor Qualis Automotive  L.L.C. clifford.carlson@weil.com, clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

    on behalf of Debtor Eagle Casting  LLC clifford.carlson@weil.com, clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor FRAM Group Operations LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Dalton Corporation  Ashland Manufacturing Facility clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Longman Enterprises  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor TAE Brakes  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Starlight Inventory Holdings I  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Global Reman Ventures  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor PHNX Acquisition Corp. clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Walbro Midco LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Defendant Broad Street Financial Holdings  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Fuel Filter Technologies  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Defendant First Brands Group  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor International Brake Industries  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Viceroy Private Capital  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Brake Parts Inc India LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Trico Holding Corporation clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Carter Fuel Systems  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor United Components  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Specialty Pumps Group  Inc clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Tridonex USA LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor FRAMAuto Holdings  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Carnaby Capital Holdings  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

District/off: 0541-4

Date Rcvd: Jun 12, 2026

User: ADIuser

Form ID: pdf002

Page 13 of 32

Total Noticed: 207

Clifford William Carlson

on behalf of Debtor First Brands Group Holdings  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Carnaby Inventory III  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Starlight Inventory I  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Carnaby FA Holdings  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Broad Street Financial Holdings  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor CWD Intermediate Holdings II  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Hopkins Manufacturing Corporation clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Pylon Manufacturing Corp. clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Carnaby Inventory Holdings III  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Global Lease Assets Holdings  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Carnaby FA  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Defendant Broad Street Financial  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor UCI International  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Qualitor Subsidiary S  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Horizon Global Americas Inc. clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor UCI International Holdings  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Qualitor Automotive  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor CWD  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Carter Carburetor Holdings  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Autolite Operations LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Horizon Global Corporation clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

District/off: 0541-4

Date Rcvd: Jun 12, 2026

User: ADIuser

Form ID: pdf002

Page 14 of 32

Total Noticed: 207

Clifford William Carlson
on behalf of Debtor Strongarm  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Carnaby Inventory Holdings IV  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor First Brands Group Intermediate  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Carter Fuel Export  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor UCI Pennsylvania  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Carter Carburetor  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Walbro LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor WEM US Co. clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Jasper Rubber Products  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Jasper Acquisition Corp. clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Brake Parts Inc China LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Carnaby Inventory IV  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Global Assets LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Champion Laboratories  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Premier Marketing Group  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Qualitor Acquisition Inc. clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor ASC Industries  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor KTRI Holdings  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Brake Parts Inc LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Smart Choice  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Cardone Industries  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor In Possession IBI International Holding Company  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Patterson Inventory  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor UCI-Airtex Holdings  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor KTRI Offshore Holdings  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Dalton Corporation  Kendallville Manufacturing Facility clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor APC Intermediate Holdings  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor TAE China Holdings  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Dalton Corporation  Stryker Machining Facility Co. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Airtex Products  LP clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Carnaby Capital  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor FRAM Group IP LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Heatherton Holdings  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor UCI Acquisition Holdings (No. 4) LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Dalton Corporation clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Qualis Enterprises  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Eagle Casting Holdings  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Horizon International Holdings LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor IBI International Holding Company  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Patterson Inventory Holdings  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor CWD Holding  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Eagle Machining  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Trico Technologies Corporation clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Airtex Industries  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor SDC TX  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Global Assets GmbH clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Qualitor  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Defendant Cardone Industries  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor AVM Export  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Dalton Corporation  Warsaw Manufacturing Facility clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor BPI EC  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor CWD Intermediate Holdings I  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Horizon Global Company LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Universal Auto Filter LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor BPI Holdings International  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Carnaby Inventory Holdings II  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Transportation Aftermarket Enterprise  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Hopkins Acquisition  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Broad Street Financial  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Defendant First Brands Group LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor BPI Acquisition Company  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor APC Parent  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson
on behalf of Debtor Horizon Euro Finance LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Trico Products Corporation clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Carrand Companies  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor UCI International Holdings Parent Inc. clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor First Brands Group  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Reman Management International LLC clifford.carlson@weil.com
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Viper Acquisition I  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor In Possession Carnaby FA Holdings  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Pylon South Bend  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Toledo Molding & Die  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Carnaby Inventory II  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Plaintiff First Brands Group  LLC clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Qualitor Subsidiary H  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Clifford William Carlson

on behalf of Debtor Viper Acquisition  Inc. clifford.carlson@weil.com,
clifford-carlson-4089@ecf.pacerpro.com;christopher.jalomo@weil.com;rene.olvera@weil.com

Courtney E. Giles

on behalf of Creditor Arab Banking Corporation B.S.C. courtney.giles@bakermckenzie.com  jessica.harris@bakermckenzie.com

Daniel Alexander Harrell

on behalf of Creditor U.S. BANK NATIONAL ASSOCIATION alex.harrell@faegredrinker.com  kelly.olson@faegredrinker.com

Daniel J Ferretti

on behalf of Creditor AutoZone Parts  Inc. dferretti@bakerdonelson.com, joboyle@bakerdonelson.com

Daniel J Ferretti

on behalf of Creditor AutoZone  Inc. dferretti@bakerdonelson.com, joboyle@bakerdonelson.com

Daniel J McGuire

on behalf of Other Prof. Bank of America  N.A. dan.mcguire@winstontaylor.com

Daniel J Saval

on behalf of Defendant Stephen Graham Daniel.saval@kobrekim.com

Daniel J Saval

on behalf of Interested Party Stephen Graham Daniel.saval@kobrekim.com

Daniela Mondragon

on behalf of Interested Party Westfield Select Insurance Company mondragon@wcbglaw.com

Daniela Mondragon

on behalf of Interested Party Zurich American Insurance Company mondragon@wcbglaw.com

Daniela Mondragon

on behalf of Interested Party Allianz Global Risks US Insurance Company mondragon@wcbglaw.com

Daniela Mondragon

District/off: 0541-4

Date Rcvd: Jun 12, 2026

User: ADIuser

Form ID: pdf002

Page 18 of 32

Total Noticed: 207

on behalf of Interested Party QBE Insurance Corporation mondragon@wcbglaw.com

Daniela Mondragon

on behalf of Interested Party Fair American Insurance and Reinsurance Company mondragon@wcbglaw.com

Daniela Mondragon

on behalf of Interested Party Ironshore Indemnity Inc. mondragon@wcbglaw.com

Daniela Mondragon

on behalf of Interested Party AXIS Insurance Company mondragon@wcbglaw.com

Danielle Rose

on behalf of Interested Party Stephen Graham danielle.rose@kobrekim.com

David Elsberg

on behalf of Creditor Evolution Credit Partners delsberg@elsberglaw.com
Paralegals@selendygay.com,Edockets@selendygay.com,mco@selendygay.com,autodocket365@alncorp.com;david-elsberg-9556
@ecf.pacerpro.com,autodocket@edocketspreview.com,autodocket@alncorp.net

David Alexander Darcy

on behalf of Creditor Kingsbridge Holdings LLC adarcy@darcydevassy.com, smccarthy@darcydevassy.com

David Alexander Shargel

on behalf of Interested Party Edward James david.shargel@bracewell.com

David Benjamin Thomas

on behalf of Creditor Evolution Credit Partners bthomas@reidcollins.com jwingerter@reidcollins.com

David Benjamin Thomas

on behalf of Trustee Ronald J Sommers bthomas@reidcollins.com jwingerter@reidcollins.com

David Edward Lemke

on behalf of Interested Party Phoenix Brownsville Industrial Investors LLC david.lemke@hklaw.com
cathy.thomas@hklaw.com;annmarie.jezisek@hklaw.com

David F Irwin

on behalf of Creditor 1995 Billy Mitchell Boulevard Inc. david@rentfrolawfirm.net, apolonia@rentfrolawfirm.net

David F Waguespack

on behalf of Creditor Planters Bank waguespack@carverdarden.com nkelly@carverdarden.com

David Norwich Gopstein

on behalf of Interested Party Peter Andrew Brumbergs dgopstein@heckerfink.com

David Norwich Gopstein

on behalf of Defendant Peter Andrew Brumbergs dgopstein@heckerfink.com

Deborah Michelle Perry

on behalf of Creditor Onset Financial Inc. dperry@munsch.com, CourtMail@munsch.com

Deborah Michelle Perry

on behalf of Intervenor Onset Financial Inc. dperry@munsch.com, CourtMail@munsch.com

Deborah Michelle Perry

on behalf of 3rd Party Plaintiff Onset Financial Inc. dperry@munsch.com, CourtMail@munsch.com

Deborah Michelle Perry

on behalf of Defendant Nielsen Investments dperry@munsch.com CourtMail@munsch.com

Deborah Michelle Perry

on behalf of Interested Party Silver Point Capital L.P. dperry@munsch.com, CourtMail@munsch.com

Deborah Michelle Perry

on behalf of Defendant Justin Nielsen dperry@munsch.com CourtMail@munsch.com

Deborah Michelle Perry

on behalf of Creditor Silver Point Capital L.P. dperry@munsch.com, CourtMail@munsch.com

Deborah Michelle Perry

on behalf of Defendant Onset Financial Inc. dperry@munsch.com, CourtMail@munsch.com

Demetra Liggins

on behalf of Creditor Advance Auto Parts Inc. dliggins@mcguirewoods.com, nsims@mcguirewoods.com

Demetra Liggins

on behalf of Defendant Advance Auto Parts Inc. dliggins@mcguirewoods.com, nsims@mcguirewoods.com

Diane Wade Sanders

on behalf of Creditor City Of McAllen austin.bankruptcy@publicans.com

Diane Wade Sanders

on behalf of Creditor Cameron County austin.bankruptcy@publicans.com

Diane Wade Sanders
on behalf of Creditor Hidalgo County austin.bankruptcy@publicans.com

Diego Mateo Carlson
on behalf of Creditor U.S. BANK NATIONAL ASSOCIATION diego.carlson@faegredrinker.com

Duane J Brescia
on behalf of Creditor Epicor Software Corporation dbrescia@clarkhill.com kwebster@clarkhill.com,efarrar@clarkhill.com

Duane J Brescia
on behalf of Creditor Zurich American Insurance Company dbrescia@clarkhill.com
kwebster@clarkhill.com,efarrar@clarkhill.com

Elias Marwan Yazbeck
on behalf of Creditor IA Mechanical Inc. elias@yazbecklaw.com
sheema@yazbecklaw.com,jaila@yazbecklaw.com,TheLawOfficeofEliasMYazbeck@jubileebk.net,ricardo@yazbecklaw.com,mei
@yazbecklaw.com,rafic@yazbecklaw.com,admin@yazbecklaw.com

Elisha Graff
on behalf of Defendant Broad Street Financial Holdings  LLC egraff@stblaw.com

Elisha Graff
on behalf of Defendant Broad Street Financial  LLC egraff@stblaw.com

Elizabeth Feld
on behalf of Creditor Royal Bank of Canada efeld@whitecase.com

Ella Epstein
on behalf of Creditor Evolution Credit Partners eepstein@elsberglaw.com

Eloy Antonio Peral
on behalf of Creditor BRI WESTPARK IV QOZB  LP eperal@windelsmarx.com

Emily Meraia
on behalf of Creditor Valeo North America  Inc. emeraia@jw.com,
kgradney@jw.com;dtrevino@jw.com;jpupo@jw.com;steso@jw.com

Emily Meraia
on behalf of Creditor Valeo Sistemas Electricos  S.A. de C.V. emeraia@jw.com,
kgradney@jw.com;dtrevino@jw.com;jpupo@jw.com;steso@jw.com

Emily Shanks
on behalf of Plaintiff Evolution Credit Opportunity Master Fund III-B  LP eshanks@grayreed.com, vsalazar@grayreed.com

Emily Shanks
on behalf of Plaintiff Evolution Credit Partners Trade Finance Master L.P. eshanks@grayreed.com  vsalazar@grayreed.com

Emily Shanks
on behalf of Plaintiff Evolution Credit Opportunity Master Fund II-B  LP eshanks@grayreed.com, vsalazar@grayreed.com

Eric R Wilson
on behalf of Interested Party Ryder Integrated Logistics  Inc.
KDWBankruptcyDepartment@kelleydrye.com;MVicinanza@ecf.inforuptcy.com

Eric Thomas Haitz
on behalf of Creditor AVO Carbon USA  Inc. eric.haitz@bondsellis.com, linda.gordon@bondsellis.com

Erin C. Kim
on behalf of Creditor Pension Benefit Guaranty Corporation kim.erin@pbgc.gov  efile@pbgc.gov

Erin Elizabeth Jones
on behalf of Trustee Ronald Sommers erin@jonesmurray.com  8597346420@filings.docketbird.com

Erin Elizabeth Jones
on behalf of Trustee Ronald J. Sommers erin@jonesmurray.com  8597346420@filings.docketbird.com

Erin Elizabeth Jones
on behalf of Trustee Ronald J Sommers erin@jonesmurray.com  8597346420@filings.docketbird.com

Eyad Asad
on behalf of Plaintiff International Union  United Automobile, Aerospace and Agricultural Implement Workers of America
(UAW) easad@cwsny.com

Faheem Mahmooth
on behalf of Creditor Pension Benefit Guaranty Corporation mahmooth.faheem@pbgc.gov

Gabriel Adam Morgan
on behalf of Plaintiff First Brands Group  LLC gabriel.morgan@weil.com,
gabriel-morgan-3879@ecf.pacerpro.com;rene.olvera@weil.com;chris.jalomo@weil.com;Matthew.Kleissler@weil.com

Gabrielle Pilgrim
on behalf of Creditor Central States  Southeast and Southwest Areas Pension Fund gpilgrim@centralstatesfunds.org

Garrett Gerber
    on behalf of Creditor Evolution Credit Partners ggerber@elsberglaw.com

Genevieve Marie Graham
    on behalf of Creditor BBJ Ventures  LLC ggraham@graham-pllc.com, ggraham@ecf.courtdrive.com

Gregory Getty Hesse
    on behalf of Interested Party A.N Webber Logistics  Inc. ghesse@huntonak.com, tcanada@hunton.com

Griselda Cabrera
    on behalf of Interested Party SPV Debtors griselda.cabrera@stblaw.com

Harry Frederick Murphy
    on behalf of Creditor Raistone Capital LLC hmurphy@orrick.com

Harry Frederick Murphy
    on behalf of Creditor Raistone Purchasing LLC-Series XXVIII hmurphy@orrick.com

Harry Frederick Murphy
    on behalf of Creditor Raistone Purchasing LLC -Series XXXII hmurphy@orrick.com

Harry Jay Hulings
    on behalf of Interested Party David Parker jhulings@dslawpc.com

Heather Pieper McMutry
    on behalf of Creditor Honda Development & Manufacturing of America  LLC, for itself and on behalf of certain North American subsidiaries and affiliates hmcmutry@fbtlaw.com

Hiram A Gutierrez
    on behalf of Creditor Brownsville Independent School District edinburgbankruptcy@pbfcm.com hidalgolegal@ecf.courtdrive.com

Holland Neff O'Neil
    on behalf of Interested Party Flex-N-Gate LLC honeil@foley.com jcharrison@foley.com;holly-holland-oneil-3540@ecf.pacerpro.com

Iain L Kennedy
    on behalf of Creditor ING Belgium S.A./N.V. ikennedy@nathansommers.com dthompson@nathansommers.com;clemons@nathansommers.com;pbuenano@nathansommers.com;aorr@nathansommers.com;jpoe@nathansommers.com

Ian Ross Phillips
    on behalf of Creditor Committee Official Committee of Unsecured Creditors iphillips@coleschotz.com pratkowiak@coleschotz.com;bankruptcy@coleschotz.com;lmorton@coleschotz.com

Isaac Raisner
    on behalf of Plaintiff Brittany Johnson isr@raisnerroupinian.com

Isaac Raisner
    on behalf of Plaintiff Maria Tapia isr@raisnerroupinian.com

Isaac Raisner
    on behalf of Plaintiff Giancarlo Hernandez isr@raisnerroupinian.com

Isaac Raisner
    on behalf of Plaintiff Chad Compton isr@raisnerroupinian.com

Isaac Raisner
    on behalf of Plaintiff Kyle Bennett isr@raisnerroupinian.com

Jack A. Raisner
    on behalf of Plaintiff Maria Tapia jar@raisnerroupinian.com  rrllp@ecf.courtdrive.com;warnlawyers@raisnerroupinian.com

Jack A. Raisner
    on behalf of Plaintiff Kyle Bennett jar@raisnerroupinian.com  rrllp@ecf.courtdrive.com;warnlawyers@raisnerroupinian.com

Jack A. Raisner
    on behalf of Plaintiff Chad Compton jar@raisnerroupinian.com  rrllp@ecf.courtdrive.com;warnlawyers@raisnerroupinian.com

Jack A. Raisner
    on behalf of Creditor Maria Tapia jar@raisnerroupinian.com  rrllp@ecf.courtdrive.com;warnlawyers@raisnerroupinian.com

Jack A. Raisner
    on behalf of Plaintiff Brittany Johnson jar@raisnerroupinian.com  rrllp@ecf.courtdrive.com;warnlawyers@raisnerroupinian.com

Jack A. Raisner
    on behalf of Plaintiff Giancarlo Hernandez jar@raisnerroupinian.com rrllp@ecf.courtdrive.com;warnlawyers@raisnerroupinian.com

Jacob Rhine Herz
    on behalf of Creditor Raistone Purchasing LLC-Series XXVIII jherz@orrick.com  casestream@ecf.courtdrive.com

Jacob Rhine Herz

on behalf of Creditor Raistone Factoring Parties jherz@orrick.com casestream@ecf.courtdrive.com

Jacob Rhine Herz

on behalf of Creditor Raistone Capital LLC jherz@orrick.com casestream@ecf.courtdrive.com

Jacob Rhine Herz

on behalf of Creditor Raistone Purchasing LLC -Series XXXII jherz@orrick.com casestream@ecf.courtdrive.com

Jacqueline Chiba

on behalf of Creditor IA Mechanical Inc. jackie@yazbecklaw.com 8234279420@filings.docketbird.com

Jake Gordon

on behalf of Interested Party Flex-N-Gate LLC jake.gordon@foley.com

James A Plemmons

on behalf of Interested Party FCA US LLC jplemmons@dickinsonwright.com wrees@dickinsonwright.com

James Joseph Berdelle

on behalf of Creditor Qindao Carflex Auto Parts Co. Ltd. berdellejames@gmail.com

James M Feuille

on behalf of Creditor Gorman Industrial Supply Co. jfeu@scotthulse.com ggra@scotthulse.com

James Thomas Young

on behalf of Creditor MacAllister Machinery Company Inc. jyoung@rubin-levin.net

James Wiley Rusher

on behalf of Creditor SRE Miami LLC jwrusher@arhlaw.com

Jamie Kirk

on behalf of Creditor Texas Comptroller of Public Accounts Revenue Accounting Division bk-jkirk@texasattorneygeneral.gov, sherri.simpson@oag.texas.gov

Jared M Slade

on behalf of Creditor UMB Bank N.A. jared.slade@alston.com, Leah.McNeill@alston.com;Jacob.Johnson@alston.com;melanie.mizrahie@alston.com;brian.laine@alston.com

Jared M Slade

on behalf of Intervenor UMB Bank N.A. jared.slade@alston.com, Leah.McNeill@alston.com;Jacob.Johnson@alston.com;melanie.mizrahie@alston.com;brian.laine@alston.com

Jarrod B. Martin

on behalf of Creditor XL Parts LLC jbmartin@bradley.com, atty_jmartin@bluestylus.com,rabdelghani@bradley.com,akhan@bradley.com,jbmartin@ecf.courtdrive.com,mdsmith@bradley.com,ggattis@bradley.com,jfalcon@bradley.com

Jarrod B. Martin

on behalf of Creditor OmniSource LLC jbmartin@bradley.com, atty_jmartin@bluestylus.com,rabdelghani@bradley.com,akhan@bradley.com,jbmartin@ecf.courtdrive.com,mdsmith@bradley.com,ggattis@bradley.com,jfalcon@bradley.com

Jason Blanchard

on behalf of Plaintiff Bank of America N.A. jason.blanchard@nortonrosefulbright.com

Jason Gary Cohen

on behalf of Interested Party Edward James jason.cohen@bracewell.com mary.kearney@bracewell.com

Jason S Brookner

on behalf of Plaintiff Evolution Credit Opportunity Master Fund II-B LP jbrookner@grayreed.com, lwebb@grayreed.com

Jason S Brookner

on behalf of Creditor Evolution Credit Partners jbrookner@grayreed.com lwebb@grayreed.com

Jason S Brookner

on behalf of Plaintiff Evolution Credit Partners Trade Finance Master L.P. jbrookner@grayreed.com lwebb@grayreed.com

Jason S Brookner

on behalf of Plaintiff Evolution Credit Opportunity Master Fund II-B L.P. jbrookner@grayreed.com, lwebb@grayreed.com

Jason S Brookner

on behalf of Plaintiff Evolution Credit Opportunity Master Fund III-B LP jbrookner@grayreed.com, lwebb@grayreed.com

Jayson B. Ruff

on behalf of U.S. Trustee US Trustee jayson.b.ruff@usdoj.gov

Jeffrey M Galen

on behalf of Creditor Insight Direct USA Inc. jeffrey.galen@galendavislaw.com

Jeffrey M Levinson

on behalf of Interested Party Nigel Crighton jml@jml-legal.com

Jeffrey Richard Gleit

on behalf of Plaintiff Wilmington Savings Fund Society FSB jeffrey.gleit@afslaw.com,

nkoslof@sandw.com,aweiss@sandw.com,tkethro@sandw.com

Jeffrey Richard Gleit

on behalf of Creditor Wilmington Savings Fund Society  FSB jeffrey.gleit@afslaw.com,
nkoslof@sandw.com,aweiss@sandw.com,tkethro@sandw.com

Jennifer Schubert

on behalf of Interested Party Scott Wallace jschubert@mololamken.com

Jennifer Schubert

on behalf of Interested Party Shekhar Kumar jschubert@mololamken.com

Jennifer K. Malow

on behalf of Defendant First Brands Group LLC Courtmail@blankrome.com

Jennifer K. Malow

on behalf of Intervenor Aequum Capital Financial II LLC Courtmail@blankrome.com

Jennifer K. Malow

on behalf of Defendant Aequum Capital Financial II LLC Courtmail@blankrome.com

Jennifer K. Malow

on behalf of Interested Party Aequum Capital Financial II LLC Courtmail@blankrome.com

Jennifer Kriss Pollan

on behalf of Creditor Michael Bueno jennifer.pollan@huschblackwell.com
christine.deacon@huschblackwell.com;jennifer-pollan-8341@ecf.pacerpro.com

Jessica Nicole Alt

on behalf of Creditor De Lage Landen Financial Services  Inc. jalt@padfieldstout.com

Jiangang Ou

on behalf of Creditor Longkou Haimeng Machinery Co.  Ltd. James.Ou@FisherBroyles.com

Joel Frederic Newell

on behalf of Creditor STORE Master Funding XIV  LLC newellj@ballardspahr.com,
phxlsateam@ballardspahr.com,Phoenixdocketingbkr@ballardpahr.com;carolod@ballardspahr.com

Joel Frederic Newell

on behalf of Creditor STORE Master Funding IV  LLC newellj@ballardspahr.com,
phxlsateam@ballardspahr.com,Phoenixdocketingbkr@ballardpahr.com;carolod@ballardspahr.com

Joel Frederic Newell

on behalf of Creditor STORE Capital Acquisitions  LLC newellj@ballardspahr.com,
phxlsateam@ballardspahr.com,Phoenixdocketingbkr@ballardpahr.com;carolod@ballardspahr.com

John David Cornwell

on behalf of Defendant Holt Investments 201 LLC jcornwell@munsch.com
hvalentine@munsch.com;CourtMail@munsch.com;crichison@munsch.com

John David Cornwell

on behalf of Defendant Jonathan Gardner jcornwell@munsch.com
hvalentine@munsch.com;CourtMail@munsch.com;crichison@munsch.com

John David Cornwell

on behalf of Defendant Dale P. Holt jcornwell@munsch.com
hvalentine@munsch.com;CourtMail@munsch.com;crichison@munsch.com

John David Cornwell

on behalf of Defendant Scott Miller jcornwell@munsch.com
hvalentine@munsch.com;CourtMail@munsch.com;crichison@munsch.com

John David Cornwell

on behalf of Defendant Todd Pedersen jcornwell@munsch.com
hvalentine@munsch.com;CourtMail@munsch.com;crichison@munsch.com

John David Cornwell

on behalf of Defendant JA Gardner Holdings jcornwell@munsch.com
hvalentine@munsch.com;CourtMail@munsch.com;crichison@munsch.com

John David Cornwell

on behalf of Defendant Asilia Credit Investments  LLC jcornwell@munsch.com,
hvalentine@munsch.com;CourtMail@munsch.com;crichison@munsch.com

John David Cornwell

on behalf of Defendant Seddie LLC jcornwell@munsch.com
hvalentine@munsch.com;CourtMail@munsch.com;crichison@munsch.com

John David Cornwell

on behalf of Defendant Yuma III LLC jcornwell@munsch.com
hvalentine@munsch.com;CourtMail@munsch.com;crichison@munsch.com

John David Cornwell

on behalf of Defendant Coral Dunes LLC jcornwell@munsch.com
hvalentine@munsch.com;CourtMail@munsch.com;crichison@munsch.com

John David Cornwell

on behalf of Defendant Joshua Tree Holdings  LLC jcornwell@munsch.com,
hvalentine@munsch.com;CourtMail@munsch.com;crichison@munsch.com

John F Higgins, IV

on behalf of Interested Party Carnaby II and III Secured Parties jhiggins@porterhedges.com
emoreland@porterhedges.com;eliana-garfias-8561@ecf.pacerpro.com;mwebb@porterhedges.com

John Hammel Strauss

on behalf of Trustee Ronald J Sommers jhstrauss@reidcollins.com

John James Sparacino

on behalf of Creditor Tim Johnson jsparacino@mckoolsmith.com
john-sparacino-7086@ecf.pacerpro.com;scastillo@mckoolsmith.com

John James Sparacino

on behalf of Creditor Manuel Fernandez jsparacino@mckoolsmith.com
john-sparacino-7086@ecf.pacerpro.com;scastillo@mckoolsmith.com

John James Sparacino

on behalf of Plaintiff Francisco Garza jsparacino@mckoolsmith.com
john-sparacino-7086@ecf.pacerpro.com;scastillo@mckoolsmith.com

John James Sparacino

on behalf of Creditor Francisco Garza jsparacino@mckoolsmith.com
john-sparacino-7086@ecf.pacerpro.com;scastillo@mckoolsmith.com

John James Sparacino

on behalf of Creditor Ciara Childs jsparacino@mckoolsmith.com
john-sparacino-7086@ecf.pacerpro.com;scastillo@mckoolsmith.com

John James Sparacino

on behalf of Creditor Manuel Leal jsparacino@mckoolsmith.com
john-sparacino-7086@ecf.pacerpro.com;scastillo@mckoolsmith.com

John Kendrick Turner

on behalf of Creditor Tarrant County john.turner@lgbs.com  Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John R. Dodd, II

on behalf of Creditor Arab Banking Corporation B.S.C. john.dodd@bakermckenzie.com

John Robert Nelson

on behalf of Interested Party FCA US LLC jnelson@dickinsonwright.com  rgarza@dickinsonwright.com

John Wallis Harris

on behalf of Creditor Goldstar Warehousing  Ltd. jwharris@johnwharrislaw.com, jwharris@johnwharrislaw.com

John Wallis Harris

on behalf of Creditor Pyramid Warehousing  Ltd. jwharris@johnwharrislaw.com, jwharris@johnwharrislaw.com

Jordan Alexandra Kazlow

on behalf of Auditor BDO USA  P.C. jordan.kazlow@dechert.com

Jordan Lancaster Estes

on behalf of Plaintiff GLAS USA LLC jestes@gibsondunn.com  jordan-estes-5323@ecf.pacerpro.com,pacer-tx@gibsondunn.com

Jordan Lancaster Estes

on behalf of Plaintiff Wilmington Savings Fund Society  FSB jestes@gibsondunn.com,
jordan-estes-5323@ecf.pacerpro.com,pacer-tx@gibsondunn.com

Jordan Lancaster Estes

on behalf of Defendant GLAS USA LLC jestes@gibsondunn.com
jordan-estes-5323@ecf.pacerpro.com,pacer-tx@gibsondunn.com

Jordan Lancaster Estes

on behalf of Defendant Wilmington Savings Fund Society  FSB jestes@gibsondunn.com,
jordan-estes-5323@ecf.pacerpro.com,pacer-tx@gibsondunn.com

Jordan W. Leu

on behalf of Interested Party Premium Guard Incorporated jleu@kslaw.com  omoses@kslaw.com

Jordan W. Leu

on behalf of Defendant Michael Baker jleu@kslaw.com  omoses@kslaw.com

Jordan W. Leu

on behalf of Interested Party PGI Northstar LLC jleu@kslaw.com  omoses@kslaw.com

Joseph D. Sibley, IV

on behalf of Witness NextProcess  LP sibley@camarasibley.com

District/off: 0541-4            User: ADIuser            Page 24 of 32

Date Rcvd: Jun 12, 2026            Form ID: pdf002            Total Noticed: 207

Joseph Howard Lemkin

on behalf of Creditor De Lage Landen Financial Services  Inc. jlemkin@stark-stark.com

Justin A. Kesselman

on behalf of Creditor Wilmington Savings Fund Society  FSB justin.kesselman@afslaw.com, edocket@afslaw.com

Justin A. Kesselman

on behalf of Plaintiff Wilmington Savings Fund Society  FSB justin.kesselman@afslaw.com, edocket@afslaw.com

Justin M. Ellis

on behalf of 3rd Pty Defendant Shekhar Kumar jellis@mololamken.com

Kenneth J. Ottaviano

on behalf of Defendant Aequum Capital Financial II LLC ken.ottaviano@blankrome.com

Kevin M. Capuzzi

on behalf of Creditor 673753 Ontario Limited DBA TRAFFIX kcapuzzi@beneschlaw.com
docket2@beneschlaw.com;lmolinaro@beneschlaw.com

Kevin Patrick Walters

on behalf of Creditor Industrial Realty Group LLC kevin.walters@roystonlaw.com  sylvia.cooper@roystonlaw.com

Kristen L Perry

on behalf of Creditor T.H.I. Group Ltd. kristen.perry@faegredrinker.com
kelly.olson@faegredrinker.com;danette.dykema@faegredrinker.com;cathy.greer@faegredrinker.com

Kristian W. Gluck

on behalf of Other Prof. Bank of America  N.A. kristian.gluck@nortonrosefulbright.com

Kristian W. Gluck

on behalf of Creditor Bank of America  N.A. kristian.gluck@nortonrosefulbright.com

Kristian W. Gluck

on behalf of Plaintiff Bank of America  N.A. kristian.gluck@nortonrosefulbright.com

Kyle L Dickson

on behalf of Creditor Randall Metals Corporation kdickson@murray-lobb.com  mgarcia@murray-lobb.com

Laura D Metzger

on behalf of Creditor Raistone Capital LLC lmetzger@orrick.com  casestream@ecf.courtdrive.com

Laura D Metzger

on behalf of Creditor Raistone Purchasing LLC -Series XXXII lmetzger@orrick.com  casestream@ecf.courtdrive.com

Laura D Metzger

on behalf of Creditor Raistone Purchasing LLC-Series XXVIII lmetzger@orrick.com  casestream@ecf.courtdrive.com

Lauren Dorsett

on behalf of Creditor Amazon Advertising LLC laurendorsett@dwt.com

Leslie S Barr

on behalf of Creditor BRI WESTPARK IV QOZB  LP lbarr@windelsmarx.com

Lisa Ann Powell

on behalf of Creditor Southern Machinery Repair  Inc. Lisa.Powell@fisherbroyles.com

Lisa Ann Powell

on behalf of Creditor Longkou Haimeng Machinery Co.  Ltd. Lisa.Powell@fisherbroyles.com

Lisa Sheaufeng Tsai

on behalf of Trustee Ronald J Sommers ltsai@reidcollins.com  mmyers@rctlegal.com,jwingerter@reidcollins.com

Lorenzo Marinuzzi

on behalf of Creditor Onset Financial  Inc. lmarinuzzi@mofo.com

Lucian Borders Murley

on behalf of Creditor Transend Logistics  LLC luke.murley@akerman.com, robyn.warren@saul.com

Madeline Mason Schmidt

on behalf of Examiner Martin De Luca mschmidt@okinadams.com  nhollon@okinadams.com

Madison Kaylene Haueisen

on behalf of Defendant Bank of America  N.A. madison.haueisen@winstontaylor.com,
ecf_houston@winston.com;madison-haueisen-8672@ecf.pacerpro.com

Madison Kaylene Haueisen

on behalf of Creditor Bank of America  N.A. madison.haueisen@winstontaylor.com,
ecf_houston@winston.com;madison-haueisen-8672@ecf.pacerpro.com

Madison Kaylene Haueisen

on behalf of Other Prof. Bank of America  N.A. madison.haueisen@winstontaylor.com,
ecf_houston@winston.com;madison-haueisen-8672@ecf.pacerpro.com

Madison Kaylene Haueisen
on behalf of Interested Party BANK OF AMERICA N.A. madison.haueisen@winstontaylor.com, ecf_houston@winston.com;madison-haueisen-8672@ecf.pacerpro.com

Mai Lan G. Rodgers
on behalf of Creditor Pension Benefit Guaranty Corporation rodgers.mailan@pbgc.gov efile@pbgc.gov

Margaret A. Vesper
on behalf of Creditor Comcast Cable Communications Management LLC vesperm@ballardspahr.com

Margaret A. Vesper
on behalf of Creditor Masergy Communications Inc. vesperm@ballardspahr.com

Margarita K. O'Donnell
on behalf of Interested Party Laurie Stein modonnell@zuckerman.com

Maria J. Cho
on behalf of Creditor U.S. BANK NATIONAL ASSOCIATION maria.cho@faegredrinker.com

Marie Kimberly Stagg
on behalf of Interested Party FCA US LLC kstagg@dickinsonwright.com

Mark D Sherrill
on behalf of Interested Party The NOCO Company mark.sherrill@chamberlainlaw.com

Mark E. Dendinger
on behalf of Defendant JCMC Investment Group LLC mark.dendinger@ashurst.com mary.kearney@bracewell.com

Mark E. Dendinger
on behalf of Interested Party Edward James mark.dendinger@ashurst.com mary.kearney@bracewell.com

Mark E. Dendinger
on behalf of Defendant Optimus Private Capital LLC mark.dendinger@ashurst.com mary.kearney@bracewell.com

Mark Elliott Freedlander
on behalf of Creditor Ford Motor Company mfreedlander@mcguirewoods.com

Mark Robert Wulfe
on behalf of Interested Party Edward James mark.wulfe@bracewell.com mary.kearney@bracewell.com

Mark Robert Wulfe
on behalf of Defendant Optimus Private Capital LLC mark.wulfe@bracewell.com mary.kearney@bracewell.com

Mark Robert Wulfe
on behalf of Defendant Edward James mark.wulfe@bracewell.com mary.kearney@bracewell.com

Mark Robert Wulfe
on behalf of Defendant JCMC Investment Group LLC mark.wulfe@bracewell.com mary.kearney@bracewell.com

Martin Seidler
on behalf of Creditor Martin Titanium American Logistics Inc. marty@seidlerlaw.com, ecf@seidlerlaw.com;LAWOFFICESOFMARTINSEIDLER@jubileebk.net

Matthew C. Corcoran
on behalf of Creditor Grammer Inc. and Grammer Americas LLC mccorcoran@jonesday.com

Matthew David Storey
on behalf of Creditor TRUIST BANK matt@storeylawpllc.com

Matthew David Struble
on behalf of Interested Party Jefferies Financial Group Inc. mstruble@velaw.com

Matthew Dennis Giadrosich
on behalf of Creditor De Lage Landen Financial Services Inc. mdg@padfieldstout.com

Matthew E. Beck
on behalf of Interested Party Nelly Luna mbeck@csglaw.com

Matthew Scott Okin
on behalf of Examiner Martin De Luca mokin@okinadams.com nhollon@okinadams.com

Matthew W. Bourda
on behalf of Creditor ENGIE Resources LLC matt.bourda@lanelaw.com thelanelawfirm@jubileebk.net

Megan Young-John
on behalf of Interested Party Carnaby II and III Secured Parties myoung-john@porterhedges.com eliana-garfias-8561@ecf.pacerpro.com

Megan Cunniff Church
on behalf of Interested Party Scott Wallace mchurch@mololamken.com Adam-Collins-1996@ecf.pacerpro.com

Megan Cunniff Church
on behalf of Interested Party Shekhar Kumar mchurch@mololamken.com Adam-Collins-1996@ecf.pacerpro.com

Melissa E Valdez
> on behalf of Creditor Brownsville Independent School District mvaldez@pbfcm.com
> mvaldez@ecf.courtdrive.com;arandermann@pbfcm.com

Melissa S. Woods
> on behalf of Creditor United Steel  Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers Int'l
> Union mwoods@cwsny.com, ecf@cwsny.com

Melissa S. Woods
> on behalf of Plaintiff International Union  United Automobile, Aerospace and Agricultural Implement Workers of America
> (UAW) mwoods@cwsny.com, ecf@cwsny.com

Melissa S. Woods
> on behalf of Creditor International Union  United Automobile, Aerospace and Agricultural Implement Workers of America
> (UAW) mwoods@cwsny.com, ecf@cwsny.com

Michael Berthiaume
> on behalf of Other Prof. Bank of America  N.A. michael.berthiaume@nortonrosefulbright.com

Michael Berthiaume
> on behalf of Plaintiff Bank of America  N.A. michael.berthiaume@nortonrosefulbright.com

Michael Berthiaume
> on behalf of Creditor Bank of America  N.A. michael.berthiaume@nortonrosefulbright.com

Michael Fishel
> on behalf of Interested Party SPV Debtors michael@FishelLawGroup.com  michael-fishel-2874@ecf.pacerpro.com

Michael Fishel
> on behalf of Defendant Broad Street Financial  LLC michael@FishelLawGroup.com, michael-fishel-2874@ecf.pacerpro.com

Michael Fishel
> on behalf of Defendant Broad Street Financial Holdings  LLC michael@FishelLawGroup.com,
> michael-fishel-2874@ecf.pacerpro.com

Michael G Colvard
> on behalf of Creditor PG Maderas y Triplay S.A. de C.V. mcolvard@mdtlaw.com
> amartinez@mdtlaw.com,jarellano@mdtlaw.com,lbuford@mdtlaw.com

Michael Kevin Riordan
> on behalf of Creditor XL Parts  LLC mriordan@bradley.com,
> mike-riordan-8644@ecf.pacerpro.com;vherrera@bradley.com;ggattis@bradley.com;akhan@bradley.com

Michael Mario Tamburini
> on behalf of Creditor IPVIII 185th Street  LLC fka ELHC VIII, LLC mtamburini@levycraig.com

Michael Mario Tamburini
> on behalf of Creditor IPXXII 193 Street  LLC fka ELHC XXII, LLC mtamburini@levycraig.com

Michael Mario Tamburini
> on behalf of Creditor NP Whitaker Ave. Industrial  LLC mtamburini@levycraig.com

Michael P. Duke
> on behalf of Plaintiff Evolution Credit Opportunity Master Fund III-B  LP mduke@elsberglaw.com

Michael P. Duke
> on behalf of Creditor Evolution Credit Partners mduke@elsberglaw.com

Michael P. Duke
> on behalf of Plaintiff Evolution Credit Partners Trade Finance Master L.P. mduke@elsberglaw.com

Michael P. Duke
> on behalf of Plaintiff Evolution Credit Opportunity Master Fund II-B  LP mduke@elsberglaw.com

Michael R. Stewart
> on behalf of Creditor U.S. BANK NATIONAL ASSOCIATION michael.stewart@faegredrinker.com

Michelle E Shriro
> on behalf of Creditor BPP Shiraz Park A LP mshriro@singerlevick.com  scotton@singerlevick.com;tguillory@singerlevick.com

Michelle E Shriro
> on behalf of Creditor BPP Cannonball Park A LP fka BPP Shiraz Park A LP mshriro@singerlevick.com
> scotton@singerlevick.com;tguillory@singerlevick.com

Morgan L. Allred
> on behalf of Interested Party Phoenix Brownsville Industrial Investors LLC morgan.allred@hklaw.com

Nathan Q. Rugg
> on behalf of Creditor Motion Industries (Canada) Inc. nathan.rugg@bfkn.com  james.tucker@bfkn.com

Nathan Q. Rugg
> on behalf of Creditor GPC Asia Pacific Limited nathan.rugg@bfkn.com  james.tucker@bfkn.com

Nathan Q. Rugg

on behalf of Creditor GPC Asia Pacific Pty Ltd. nathan.rugg@bfkn.com  james.tucker@bfkn.com

Nathan Q. Rugg

on behalf of Creditor UAP (Canada) Inc. nathan.rugg@bfkn.com  james.tucker@bfkn.com

Nathan Q. Rugg

on behalf of Creditor Genuine Parts Company nathan.rugg@bfkn.com  james.tucker@bfkn.com

Nathan Q. Rugg

on behalf of Creditor Motion Industries (Mexico) Inc. nathan.rugg@bfkn.com  james.tucker@bfkn.com

Nathan Q. Rugg

on behalf of Creditor Motion Industries  Inc. nathan.rugg@bfkn.com, james.tucker@bfkn.com

Nathan Q. Rugg

on behalf of Creditor Alliance Automotive Group (EU) nathan.rugg@bfkn.com  james.tucker@bfkn.com

Nicholas Poli

on behalf of Creditor Raistone Purchasing LLC-Series XXVIII npoli@orrick.com  nymao@orrick.com

Nicholas Poli

on behalf of Creditor Raistone Purchasing LLC -Series XXXII npoli@orrick.com  nymao@orrick.com

Nicholas Poli

on behalf of Creditor Raistone Capital LLC npoli@orrick.com  nymao@orrick.com

Nicholas Edmund Baker

on behalf of Defendant Broad Street Financial  LLC nbaker@stblaw.com

Nicholas Edmund Baker

on behalf of Defendant Broad Street Financial Holdings  LLC nbaker@stblaw.com

Nicholas J. Sabatino

on behalf of Creditor Raistone Purchasing LLC -Series XXXII nsabatino@orrick.com

Nicholas J. Sabatino

on behalf of Creditor Raistone Capital LLC nsabatino@orrick.com

Nicholas J. Sabatino

on behalf of Creditor Raistone Purchasing LLC-Series XXVIII nsabatino@orrick.com

Nicholas Jaison Brannick

on behalf of Interested Party The Reinalt-Thomas Corporation d/b/a Discount Tire brannickn@ballardspahr.com

Nicole Yun Lin Ng

on behalf of Interested Party Peter Andrew Brumbergs nng@heckerfink.com

Patrick Michael Flynn

on behalf of Creditor United Steel  Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers Int'l Union pat@pmfpc.com, sandra@pmfpc.com

Paul B Moore

on behalf of Intervenor United States Of America paul.moore@usdoj.gov nicole.robbins@usdoj.gov;caseview.ecf@usdoj.gov;usatxs.bankruptcy-ecf@usdoj.gov

Paul B Moore

on behalf of Interested Party United States Of America paul.moore@usdoj.gov nicole.robbins@usdoj.gov;caseview.ecf@usdoj.gov;usatxs.bankruptcy-ecf@usdoj.gov

Paul E Heath

on behalf of Interested Party Leucadia Asset Management LLC pheath@velaw.com

Paul E Heath

on behalf of Interested Party Jefferies Financial Group Inc. pheath@velaw.com

Paul Martin Flannery

on behalf of Interested Party Nigel Crighton paul@flannerygeorgalis.com  mgable@flannerygeorgalis.com

Payne Campbell Keinarth

on behalf of Interested Party FCA US LLC pkeinarth@dickinson-wright.com  hkott@dickinson-wright.com

Peter Menz

on behalf of Interested Party Michael Baker pmenz@maglaw.com

Philip David Racusin

on behalf of Creditor Scotland Enterprises  Inc. PRacusin@hchlawyers.com, pr01010@recap.email

Philip M. Guffy

on behalf of Creditor Keystone Automotive Operations  Inc. pguffy@huntonak.com

Philip M. Guffy

on behalf of Creditor Uni-Select  Inc. pguffy@huntonak.com

Pratik Kumar Raj Ghosh

on behalf of Interested Party Shekhar Kumar prajghosh@mololamken.com

Pratik Kumar Raj Ghosh

on behalf of Interested Party Scott Wallace prajghosh@mololamken.com

Rachel B. Goldman

on behalf of Defendant JCMC Investment Group LLC rachel.goldman@bracewell.com  mary.kearney@bracewell.com

Rachel B. Goldman

on behalf of Interested Party Edward James rachel.goldman@bracewell.com  mary.kearney@bracewell.com

Rachel B. Goldman

on behalf of Defendant Optimus Private Capital LLC rachel.goldman@bracewell.com  mary.kearney@bracewell.com

Rachel B. Goldman

on behalf of Defendant Edward James rachel.goldman@bracewell.com  mary.kearney@bracewell.com

Rakhee V Patel

on behalf of Creditor Napier Park Global Capital (US) LP rpatel@sidley.com  dgalindo@winstead.com

Randall F Scherck

on behalf of Interested Party CMX North America Inc. rscherck@ubglaw.com  aschmidt@ubglaw.com

Raneen Ibrahim Abdelghani

on behalf of Creditor XL Parts  LLC rabdelghani@bradley.com, vherrera@bradley.com;aplayer@bradley.com

Rebecca Foxwell

on behalf of Interested Party Edward James rebecca.foxwell@bracewell.com

Rebecca Lynn Matthews

on behalf of Creditor Rebuilders Automotive Supply Co. rmatthews@fbtgibbons.com  becky-matthews-7833@ecf.pacerpro.com

Reese W Baker

on behalf of Creditor William Christopher Harrod courtdocs@bakerassociates.net
i.go@bakerassociates.net;igotnotices@gmail.com;courtdocsrbaker@gmail.com;reese.baker@bakerassociates.net;bakernotices@g
mail.com;baker5151calendar@gmail.com;staff@bakerassociates.net;bakerassociates@jubileebk.net

Rene S. Roupinian

on behalf of Plaintiff Giancarlo Hernandez rsr@raisnerroupinian.com
rrllp@ecf.courtdrive.com;warnlawyers@raisnerroupinian.com

Rene S. Roupinian

on behalf of Plaintiff Chad Compton rsr@raisnerroupinian.com  rrllp@ecf.courtdrive.com;warnlawyers@raisnerroupinian.com

Rene S. Roupinian

on behalf of Plaintiff Maria Tapia rsr@raisnerroupinian.com  rrllp@ecf.courtdrive.com;warnlawyers@raisnerroupinian.com

Rene S. Roupinian

on behalf of Plaintiff Brittany Johnson rsr@raisnerroupinian.com  rrllp@ecf.courtdrive.com;warnlawyers@raisnerroupinian.com

Rene S. Roupinian

on behalf of Plaintiff Kyle Bennett rsr@raisnerroupinian.com  rrllp@ecf.courtdrive.com;warnlawyers@raisnerroupinian.com

Richard Jacobsen

on behalf of Creditor Raistone Purchasing LLC -Series XXXII rjacobsen@orrick.com  casestream@ecf.courtdrive.com

Richard Jacobsen

on behalf of Creditor Raistone Capital LLC rjacobsen@orrick.com  casestream@ecf.courtdrive.com

Richard Jacobsen

on behalf of Creditor Raistone Purchasing LLC-Series XXVIII rjacobsen@orrick.com  casestream@ecf.courtdrive.com

Richard Allan Graham

on behalf of Creditor Royal Bank of Canada rgraham@whitecase.com  mco@whitecase.com

Richard Mark Seltzer

on behalf of Creditor International Union  United Automobile, Aerospace and Agricultural Implement Workers of America
(UAW) rseltzer@cwsny.com

Richard Mark Seltzer

on behalf of Creditor United Steel  Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers Int'l
Union rseltzer@cwsny.com

Rick Aaron Steinberg

on behalf of Creditor OEC Group rsteinberg@pricemeese.com

Robert McNamara

on behalf of Creditor HerbertUSA  Inc. rmcnamara@aghattorneys.com

Robert J. Diehl, Jr.

on behalf of Creditor Mitsubishi HC Capital America  Inc. rdiehl@bodmanlaw.com

Robert James Anello

on behalf of Interested Party Michael Baker ranello@maglaw.com

Robert L LeHane

on behalf of Creditor LBA RV-Company XVII  LP kdwbankruptcydepartment@kelleydrye.com;MVicinanza@ecf.inforuptcy.com

Robert M Hirsh

on behalf of Creditor TriMas Corporation robert.hirsh@nortonrosefulbright.com  calendaring-nortonrose-9955@ecf.pacerpro.com

Ronald E Gold

on behalf of Creditor Volkswagen Group of America  Inc. and certain affiliates rgold@fbtlaw.com, awebb@fbtlaw.com;eseverini@fbtlaw.com;jkleisinger@fbtlaw.com

Ronald J Sommers

on behalf of Trustee Ronald J Sommers efile@nathansommers.com RS@trustesolutions.com,RS@trustesolutions.net,psalazar@nathansommers.com

Ronald J Sommers

efile@nathansommers.com  RS@trustesolutions.com,RS@trustesolutions.net,psalazar@nathansommers.com

Ronald J Sommers

on behalf of Trustee Ronald J. Sommers efile@nathansommers.com RS@trustesolutions.com,RS@trustesolutions.net,psalazar@nathansommers.com

Ross McNeill Slaughter

on behalf of Interested Party Laurie Stein rslaughter@zuckerman.com

Ryan Anthony O'Connor

on behalf of Examiner Martin De Luca roconnor@okinadams.com  nhollon@okinadams.com

Ryan Michael Baldwin

on behalf of Interested Party Shekhar Kumar rbaldwin@mololamken.com

Ryan Michael Baldwin

on behalf of Interested Party Scott Wallace rbaldwin@mololamken.com

Sabrina L Streusand

on behalf of Creditor NTT DATA Americas  Inc. streusand@slollp.com, apina@slollp.com

Sam Della Fera, Jr.

on behalf of Interested Party Nelly Luna sdellafera@csglaw.com

Samuel Eric de Freitas Hull

on behalf of Creditor International Union  United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) shull@cwsny.com

Samuel Eric de Freitas Hull

on behalf of Plaintiff International Union  United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) shull@cwsny.com

Samuel Eric de Freitas Hull

on behalf of Creditor United Steel  Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers Int'l Union shull@cwsny.com

Samuel Joseph Strauss

on behalf of Plaintiff Francisco Garza sam@straussborrelli.com

Samuel R. Rabuck

on behalf of Creditor Motion Industries (Mexico) Inc. sam.rabuck@bfkn.com

Samuel R. Rabuck

on behalf of Creditor GPC Asia Pacific Pty Ltd. sam.rabuck@bfkn.com

Samuel R. Rabuck

on behalf of Creditor Motion Industries  Inc. sam.rabuck@bfkn.com

Samuel R. Rabuck

on behalf of Creditor Motion Industries (Canada) Inc. sam.rabuck@bfkn.com

Samuel R. Rabuck

on behalf of Creditor GPC Asia Pacific Limited sam.rabuck@bfkn.com

Samuel R. Rabuck

on behalf of Creditor Alliance Automotive Group (EU) sam.rabuck@bfkn.com

Samuel R. Rabuck

on behalf of Creditor Genuine Parts Company sam.rabuck@bfkn.com

Sara Maria Simms

on behalf of Creditor Daniel Villalta sms@romerolaw.com

Sarah Patricia Santos

on behalf of Interested Party David Parker ssantos@dslawpc.com  mmartinez@dslawpc.com

Sarah S. Mattingly

on behalf of Creditor RWI Logistics LLC sarah.mattingly@dinsmore.com
jamie.herald@dinsmore.com;brooke.hudson@dinsmore.com

Scott Saldana

on behalf of Trustee Ronald J Sommers ssaldana@reidcollins.com

Scott D Fink

on behalf of Creditor Toyota Industries Commercial Finance  Inc. Bronationalecf@weltman.com

Scott D Fink

on behalf of Creditor TOYOTA INDUSTRIES COMMERCIAL FINANCE INC. Bronationalecf@weltman.com

Scott E Blakeley

on behalf of Creditor Export Development Canada seb@blakeleylc.com  aridgway@blakeleylc.com

Scott F Gautier

on behalf of Creditor U.S. BANK NATIONAL ASSOCIATION scott.gautier@faegredrinker.com
san.mitchell@faegredrinker.com,docketgeneral@faegredrinker.com

Scott J Greenberg

on behalf of Plaintiff GLAS USA LLC sgreenberg@gibsondunn.com
JGoldstein@gibsondunn.com;MSunday@gibsondunn.com;HTheis@gibsondunn.com;EArom@gibsondunn.com;clwilson@gibson
dunn.com;ssu@gibsondunn.com;scott-j-greenberg-6049@ecf.pacerpro.com,pacer-tx@gibsondunn.com

Scott J Greenberg

on behalf of Defendant Wilmington Savings Fund Society  FSB sgreenberg@gibsondunn.com,
JGoldstein@gibsondunn.com;MSunday@gibsondunn.com;HTheis@gibsondunn.com;EArom@gibsondunn.com;clwilson@gibson
dunn.com;ssu@gibsondunn.com;scott-j-greenberg-6049@ecf.pacerpro.com,pacer-tx@gibsondunn.com

Scott J Greenberg

on behalf of Plaintiff Wilmington Savings Fund Society  FSB sgreenberg@gibsondunn.com,
JGoldstein@gibsondunn.com;MSunday@gibsondunn.com;HTheis@gibsondunn.com;EArom@gibsondunn.com;clwilson@gibson
dunn.com;ssu@gibsondunn.com;scott-j-greenberg-6049@ecf.pacerpro.com,pacer-tx@gibsondunn.com

Scott J Greenberg

on behalf of Defendant GLAS USA LLC sgreenberg@gibsondunn.com
JGoldstein@gibsondunn.com;MSunday@gibsondunn.com;HTheis@gibsondunn.com;EArom@gibsondunn.com;clwilson@gibson
dunn.com;ssu@gibsondunn.com;scott-j-greenberg-6049@ecf.pacerpro.com,pacer-tx@gibsondunn.com

Scott M. Ahmad

on behalf of Defendant Bank of America  N.A. scott.ahmad@winstontaylor.com, scott-ahmad-9923@ecf.pacerpro.com

Sean Hecker

on behalf of Interested Party Peter Andrew Brumbergs shecker@heckerfink.com

Sean Thomas Wilson

on behalf of Creditor Mayfair Enterprises  LLC swilson@shannonleellp.com, swilson@shannonleellp.com

Seth Brandon Shapiro

on behalf of Intervenor United States Of America seth.shapiro@usdoj.gov

Seth Brandon Shapiro

on behalf of Interested Party United States Of America seth.shapiro@usdoj.gov

Shawn M Christianson

on behalf of Creditor Oracle America  Inc. schristianson@buchalter.com, cmcintire@buchalter.com

Simon W Hendershot, III

on behalf of Creditor Scotland Enterprises  Inc. trey@hchlawyers.com, eservice@hchlawyers.com

Stephen Wilcox

on behalf of Creditor ACAR Leasing Ltd swilcox@basselwilcox.com  kraudry@wilcoxlaw.net;krw77@sbcglobal.net

Stephen Mark Blank

on behalf of Creditor UMB Bank  N.A. stephen.blank@alston.com, brian.laine@alston.com

Stephen R. Butler

on behalf of Creditor TN Dept of Revenue agbanktexas@ag.tn.gov

Steven J. Reisman

on behalf of Interested Party Hilco Valuation Services  LLC, Dba Hilco Global and its designated affiliates and subsidiaries
sreisman@katten.com, nyc.bknotices@kattenlaw.com

Steven T Holmes

on behalf of Creditor First Guaranty Bank sholmes@chfirm.com  chps.ecfnotices@ecf.courtdrive.com

Steven W Soule

on behalf of Creditor City of Miami Special Utility Authority ssoule@hallestill.com  smccormick@hallestill.com

Susan C Mathews

on behalf of Creditor Volvo Penta of the Americas  LLC smathews@bakerdonelson.com, bellender@bakerdonelson.com

Tara T. LeDay
on behalf of Creditor Michael Bueno Tara.LeDay@huschblackwell.com
christine.deacon@huschblackwell.com;anne.arundel@huschblackwell.com;tara-leday-0597@ecf.pacerpro.com

Tatianna J. Witter
on behalf of Creditor Bank of America  N.A. tatianna.witter@winstontaylor.com

Tatianna J. Witter
on behalf of Defendant Bank of America  N.A. tatianna.witter@winstontaylor.com

Telemachus P. Kasulis
on behalf of Interested Party Michael Baker tkasulis@maglaw.com

Thomas A Howley
on behalf of Plaintiff GLAS USA LLC tom@howley-law.com  roland@howley-law.com;eric@howley-law.com

Thomas A Howley
on behalf of Interested Party Ad Hoc Group tom@howley-law.com  roland@howley-law.com;eric@howley-law.com

Thomas A Howley
on behalf of Interested Party Ad Hoc Group of Lenders tom@howley-law.com  roland@howley-law.com;eric@howley-law.com

Thomas A Howley
on behalf of Plaintiff Wilmington Savings Fund Society  FSB tom@howley-law.com,
roland@howley-law.com;eric@howley-law.com

Thomas A Howley
on behalf of Defendant Wilmington Savings Fund Society  FSB tom@howley-law.com,
roland@howley-law.com;eric@howley-law.com

Thomas A Howley
on behalf of Defendant GLAS USA LLC tom@howley-law.com  roland@howley-law.com;eric@howley-law.com

Thomas A Howley
on behalf of 3rd Pty Defendant GLAS USA LLC tom@howley-law.com  roland@howley-law.com;eric@howley-law.com

Thomas A Howley
on behalf of 3rd Pty Defendant WILMINGTON SAVINGS FUND SOCIETY  FSB tom@howley-law.com,
roland@howley-law.com;eric@howley-law.com

Thomas G. Haskins
on behalf of Creditor The City of Jasper  Indiana thaskins@btlaw.com, khgreaven@btlaw.com

Timothy L. Wentworth
on behalf of Creditor Carrdan Corporation twentworth@okinadams.com  nhollon@okinadams.com

Toby L Gerber
on behalf of Other Prof. Bank of America  N.A. toby.gerber@nortonrosefulbright.com

Toby L Gerber
on behalf of Plaintiff Bank of America  N.A. toby.gerber@nortonrosefulbright.com

Toni Lanette Townsend
on behalf of Creditor Toyota Industries Commercial Finance  Inc. toni.townsend@mccalla.com, mccallaecf@ecf.courtdrive.com

Toni Lanette Townsend
on behalf of Creditor Toyota Industries Commercial Finance  Inc toni.townsend@mccalla.com, mccallaecf@ecf.courtdrive.com

Toni Lanette Townsend
on behalf of Creditor TOYOTA INDUSTRIES COMMERCIAL FINANCE INC. toni.townsend@mccalla.com
mccallaecf@ecf.courtdrive.com

Travis A. McRoberts
on behalf of Creditor SmartestEnergy US LLC travis.mcroberts@bakerbotts.com
sarah.conley@squirepb.com;travis-a-mcroberts-1747@ecf.pacerpro.com

Trey A Monsour
on behalf of Creditor 1600 Industrial LLC tmonsour@foxrothschild.com
rsolomon@foxrothschild.com;msteen@foxrothschild.com;dandreacchi@foxrothschild.com;TX.DKT@foxrothschild.com

Tyler G Doyle
on behalf of Interested Party National Union Fire Insurance Co. of Pittsburgh  Pa. tgdoyle@bakerlaw.com,
mvanhorn@bakerlaw.com,jhuitt@bakerlaw.com

US Trustee
USTPRegion07.HU.ECF@USDOJ.GOV

Vianey Garza
on behalf of U.S. Trustee US Trustee vianey.garza@usdoj.gov

Victoria Nicole Argeroplos
on behalf of Creditor Valeo North America  Inc. vargeroplos@jw.com,
msalinas@jw.com;kgradney@jw.com;jpupo@jw.com;dtrevino@jw.com

District/off: 0541-4                          User: ADIuser                                Page 32 of 32
Date Rcvd: Jun 12, 2026                       Form ID: pdf002                              Total Noticed: 207

Victoria Nicole Argeroplos
                          on behalf of Creditor Valeo Sistemas Electricos  S.A. de C.V. vargeroplos@jw.com,
                          msalinas@jw.com;kgradney@jw.com;jpupo@jw.com;dtrevino@jw.com

Victoria Nicole Argeroplos
                          on behalf of Creditor MAC Montacargas Corporation vargeroplos@jw.com
                          msalinas@jw.com;kgradney@jw.com;jpupo@jw.com;dtrevino@jw.com

Vivek Vijay Tata
                          on behalf of Creditor Evolution Credit Partners vtata@elsberglaw.com

Walter J Cicack
                          on behalf of Plaintiff Kyle Bennett wcicack@hcgllp.com  mallen@hcgllp.com

Walter J Cicack
                          on behalf of Plaintiff Maria Tapia wcicack@hcgllp.com  mallen@hcgllp.com

Walter J Cicack
                          on behalf of Plaintiff Chad Compton wcicack@hcgllp.com  mallen@hcgllp.com

Walter J Cicack
                          on behalf of Plaintiff Giancarlo Hernandez wcicack@hcgllp.com  mallen@hcgllp.com

Walter J Cicack
                          on behalf of Plaintiff Brittany Johnson wcicack@hcgllp.com  mallen@hcgllp.com

Weldon Leslie Moore, III
                          on behalf of Creditor Constellation NewEnergy  Inc. wmoore@csmlaw.net,
                          prussell1965@hotmail.com;lifelongproducts@sbcglobal.net

Weldon Leslie Moore, III
                          on behalf of Creditor Toledo Edison Company wmoore@csmlaw.net  prussell1965@hotmail.com;lifelongproducts@sbcglobal.net

Weldon Leslie Moore, III
                          on behalf of Creditor Metropolitan Company wmoore@csmlaw.net  prussell1965@hotmail.com;lifelongproducts@sbcglobal.net

Weldon Leslie Moore, III
                          on behalf of Creditor Indiana Michigan Power Company wmoore@csmlaw.net
                          prussell1965@hotmail.com;lifelongproducts@sbcglobal.net

Weldon Leslie Moore, III
                          on behalf of Creditor Commonwealth Edison Company wmoore@csmlaw.net
                          prussell1965@hotmail.com;lifelongproducts@sbcglobal.net

Weldon Leslie Moore, III
                          on behalf of Creditor Constellation NewEnergy Gas Division  LLC wmoore@csmlaw.net,
                          prussell1965@hotmail.com;lifelongproducts@sbcglobal.net

Weldon Leslie Moore, III
                          on behalf of Creditor Ohio Power Company wmoore@csmlaw.net  prussell1965@hotmail.com;lifelongproducts@sbcglobal.net

Wendi Alper-Pressman
                          on behalf of Creditor NP Whitaker Ave. Industrial  LLC walperpressman@atllp.com, blabrier@atllp.com

William James Hotze
                          on behalf of Creditor Harley-Davidson Motor Company  Inc. whotze@dykema.com

William Jay Dorsey
                          on behalf of Defendant Aequum Capital Financial II LLC william.dorsey@blankrome.com

William Jay Dorsey
                          on behalf of Interested Party Aequum Capital Financial II LLC william.dorsey@blankrome.com

William Joseph Harrington
                          on behalf of Interested Party Amanda Coxbill wharrington@goodwinlaw.com

William T Reid, IV
                          on behalf of Trustee Ronald J Sommers wreid@reidcollins.com

Yosina Mariette Lissebeck
                          on behalf of Creditor Total Quality Logistics  LLC yosina.lissebeck@dinsmore.com, caron.burke@dinsmore.com


TOTAL: 587