IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| FIRST BRANDS GROUP, LLC, *et al.*, | § | Case No. 25-90399 (CML) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |

**OBJECTION OF THE AD HOC GROUP TO THE EXAMINER'S
EMERGENCY MOTION TO INCREASE THE EXAMINATION BUDGET**

The ad hoc group represented by the undersigned counsel (the "Ad Hoc Group") hereby submits this objection (this "Objection") to the *Examiner's Emergency Motion to Increase the Examination Budget* [Docket No. 2571] (the "Motion") filed by Martin De Luca (the "Examiner"). In furtherance thereof, the Ad Hoc Group respectfully states as follows:

**OBJECTION**[2]

1.      The Motion should be denied.  In November 2025, the Court set the Examination Budget at an amount "not [to] exceed $7 million."[3]  Notwithstanding this clear limitation, the Examiner knowingly incurred more than $7 million in fees and expenses anyway.  Moreover, the Examiner incurred such amounts with full knowledge of the Debtors' limited liquidity.  Indeed, less than a week after Mr. De Luca was appointed as the Examiner,[4] the Debtors' counsel disclosed

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]     Terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 608] (the "DIP Order"), the *Order Directing Appointment of an Examiner* [Docket No. 726] (the "Examiner Appointment Order"), or the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Docket No. 2981] (as may be amended from time to time, the "Plan"), as applicable.

[3]     *See* Examiner Appointment Order ¶ 4

[4]     *See Notice of Appointment of Examiner* [Docket No. 961].

that the Debtors were "down to our last DIP draw or second DIP draw" and that they were "getting pretty close.  And so [the factored receivables] funds are critical for us to continue to operate basically through the end of January . . . ."[5]  Any party focused on these Chapter 11 Cases, including the Examiner, was thus on reasonable notice of the Debtors' precarious liquidity position.

2.     The Examiner also knew that the Examination Budget was a heavily negotiated cap, needed explicit Ad Hoc Group consent to be increased, and would not, in fact, be consensually increased.[6]  Nevertheless, the Examiner knowingly incurred fees in excess of the Examination Budget without any committed payment source.[7]  The Examiner cannot now unilaterally shift the consequences of that decision onto the Debtors' Estates, the Ad Hoc Group, or other stakeholders in these Chapter 11 Cases.

3.     Further, the Examiner Appointment Order could not be clearer: "nothing in [the Examiner Appointment] Order mandates any future modification to the DIP Budget."[8]  The Examiner Appointment Order also expressly provides that amounts in excess of the Examination Budget "shall not be compensable or reimbursable from the proceeds of DIP Loans without further Court approval or agreement of the DIP Secured Parties."[9]  Even if the Court were inclined to

---

[5]   *See* Dec. 22, 2025 Hr'g Tr. at 16:12-15.

[6]   *See* Examiner Appointment Order ¶ 4 ("[N]othing in [the] Order mandates any future modification to the DIP Budget."); *see also Objection of the Ad Hoc Group to the Examiner's Emergency Motion to (I) Secure Payment of Examiner's Budget, (II) Implement Payments to Professionals Pursuant to Court Order, and (III) Modify Court's Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 1791].

[7]   The Examiner states that he consulted the UST about the "likely insufficiency of the Examination Budget." Motion ¶ 14.  If the proceeding and following paragraphs are all in chronological order, that conversation would have occurred in or around mid-January 2026, prior to the filing of the Work Plan.  Yet, according to the Motion, the Examiner did not "scale[] down" his investigation until at least a month later.  *Id*. at ¶ 46.

[8]   *See* Examiner Appointment Order ¶ 4.

[9]   *See id*. at ¶ 5.

increase the Examination Budget, the Court should not compel a non-consensual use of DIP Collateral.

4.      Moreover, the Motion does not point to any law or fact that places the Examiner in a different position than any other purported creditor of the Estates.  Under the Plan, on which the FBG Debtors will shortly be commencing solicitation,[10] Allowed Administrative Expense Claims and General Unsecured Claims will be paid pursuant to the Litigation Trust Waterfall through the receipt of proceeds from the Litigation Trust.  Simply put, the Debtors do not have sufficient liquidity to both fund the Plan process and pay millions in Examiner Fee Overages (for which, presumably, if the requested relief in the Motion is approved, the Examiner would request a corresponding escrow).  But even if the Estates did have sufficient liquidity (which they do not), an increase in the Examination Budget would elevate the Examiner Fee Overages ahead of every other purported administrative and/or unsecured claimant who has waited, negotiated, and/or compromised within the Plan process, allowing the Examiner to recover in full and ***on demand*** while others stand in line.

5.      The relief the Examiner seeks is not merely an accounting adjustment; it is a request for preferred treatment without any principled basis for such treatment.  To the extent that the Examiner believes the Examiner Fee Overages benefited the Estates, he is free to assert a Claim and to have that Claim tested through the same Claims allowance process any other creditor in these Chapter 11 Cases would have to follow.  Seeking to increase the Examination Budget is an

---

[10]   *See Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan, (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing, (III) Establishing Solicitation and Voting Procedures, (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt-In Procedures, (V) Establishing Preference Settlement Notice and Opt-In Procedures, (VI) Establishing Notice and Objection Procedures for Confirmation of Plan, and (VII) Granting Related Relief* [Docket No. 2990].

inappropriate means to circumvent the claims reconciliation process. The Examiner must assert his purported Claim and seek allowance through the means provided under the Plan.

6. Finally, the Examiner states that he "is requesting that the Court increase the Examination Budget to capture the Examiner Fee Overages *that the Examiner submits will immensely benefit the Debtors' estates*"[11] by agreeing to "guide" the Estates and "financial fraud victims…through the evidence amassed."[12] The Examiner also argues that the need to "preserve evidence that was at risk of being forever lost and/or destroyed,"[13] as well as the fact that "ceasing all activities before the $7 million limit was reached would have rendered the results of the Examiner's work valueless to the Litigation Trust as defined in the Plan"[14] are all justifications for his request. To be clear, if the Examiner objects to the inclusion of cooperation language in the Plan and/or exercises his right "to refuse and/or object"[15] to such turnover provisions, then the Examiner's work (even the work that the Estates already paid for pursuant to the $7 million Examination Budget) will be functionally valueless to the Litigation Trust, making it unclear what justification under section 330 of the Bankruptcy Code exists for the initial Examination Budget, let alone for the requested Examiner Fee Overages.

## CONCLUSION

For the reasons stated herein, the Ad Hoc Group respectfully requests that the Court deny the Motion.

---

[11] Motion ¶ 34 (emphasis added).
[12] *Id*. at ¶ 22.
[13] *Id*. at ¶ 12.
[14] *Id*. at ¶ 40.
[15] *See Examiner's Reservation of Rights in Response to Debtors' Proposed Joint Plan and Disclosure Statement* [Docket No. 2972] ¶ 4.

Dated: June 15, 2026
      Houston, Texas

Respectfully submitted,

/s/ Tom A. Howley
Tom A. Howley (Texas Bar No. 24010115)
Eric Terry (Texas Bar No. 00794729)
**HOWLEY LAW PLLC**
700 Louisiana Street, Suite 4220
Houston, TX 77002
Telephone: 713-333-9125
Email: tom@howley-law.com
      eric@howley-law.com

Scott J. Greenberg (admitted *pro hac vice*)
Jason Zachary Goldstein (admitted *pro hac vice*)
C. Lee Wilson (admitted *pro hac vice*)
Stephen D. Silverman (admitted *pro hac vice*)
Christina M. Brown (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, New York 10166
Telephone: 212-351-4000
Email: sgreenberg@gibsondunn.com
      jgoldstein@gibsondunn.com
      clwilson@gibsondunn.com
      ssilverman@gibsondunn.com
      christina.brown@gibsondunn.com

-and-

AnnElyse Scarlett Gains (admitted pro hac vice)
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street N.W.
Washington, D.C. 20036-3504
Telephone: 202-955-8500
Email: agains@gibsondunn.com

*Counsel to the Ad Hoc Group*

## Certificate of Service

I certify that on June 15, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Tom A. Howley
Tom A. Howley