**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | **(Emergency Hearing Requested)** |
| | § | |

**EMERGENCY MOTION OF DEBTORS FOR ORDER (I) AUTHORIZING AND**
**DIRECTING THE UNITED STATES TRUSTEE TO APPOINT A COMMITTEE**
<u>**OF RETIRED EMPLOYEES AND (II) GRANTING RELATED RELIEF**</u>

---

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 1:00 P.M. (CENTRAL TIME) ON JUNE 24, 2026.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**THE DEBTORS HAVE REQUESTED THAT A HEARING BE CONDUCTED ON THIS MATTER ON JUNE 24, 2026, AT 1:00 P.M. (CENTRAL TIME) IN COURTROOM 402, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.**

**YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY.  YOU MAY ACCESS THE FACILITY AT 832-917-1510.  ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER.  JUDGE LOPEZ'S CONFERENCE ROOM NUMBER IS 590153. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE LOPEZ'S HOME PAGE. THE MEETING CODE IS "JUDGELOPEZ." CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS.   TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE LOPEZ'S HOME PAGE.  SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows:

### Preliminary Statement[2]

1.    As the Court is aware, the FBG Debtors[3] are in the process of seeking approval of their proposed Plan[4] by the end of July.  While the Debtors have paid retiree benefits when and as they have come due during these chapter 11 cases, the Plan provides for the liquidation and wind down of the Debtors' estates and does not contemplate any ongoing operations that would allow the Debtors to continue to satisfy their retiree benefit obligations on a go-forward basis.  As a result, the Debtors seek appointment of a committee (the "**Retiree Committee**") of retired employees that receive benefits under the Retiree Benefit Arrangements that, at the time of retirement, were (i) not covered by a collective bargaining agreement or (ii) covered by a collective bargaining agreement if the Union (as defined herein) party thereto has not elected to serve as the authorized representative of persons receiving retiree benefits thereunder by the date of entry of the Proposed Order (collectively, the "**Retirees**"), as contemplated under section 1114 of the Bankruptcy Code, which will establish a representative body for the Retirees that can engage in

---

[2]   Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings ascribed to such terms elsewhere in the Motion.

[3]   "**FBG Debtors**" includes First Brands Group Holdings, LLC ("**FBGH**"), FBGH's direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC.

[4]   The "**Plan**" means the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 2981).

discussions with the Debtors regarding modification and/or termination of the Retiree Benefit Arrangements (as defined herein).

2.      The Plan is the product of months of good faith negotiations between the Debtors and their key stakeholders and provides the best and only path for the Debtors to provide meaningful recoveries to junior creditors and repay administrative expense and other priority claims in full.  In light of the requirement under section 1129(a)(13) of the Bankruptcy Code with respect to retiree benefits, appointment of the Retiree Committee will ensure that the requirements for confirmation under section 1129 of the Bankruptcy Code can be satisfied and the Plan can be confirmed without delay.

3.      The Retiree Committee must also be formed as soon as possible.  For the last several months, the Debtors' liquidity has been extremely strained and absent week-to-week funding from certain of the Debtors' OEM customers, the Debtors would have been forced to immediately liquidate their entire enterprise several months ago.  As set forth in the Haughey Declaration, support from the Debtors' secured lenders of the Plan process is predicated on a budget and proposed confirmation timeline that allows the Debtors to confirm the Plan by the end of July 2026.  As a result, any delay in appointment of the Retiree Committee could jeopardize the Debtors' ability to confirm the Plan and would likely force the Debtors to convert their chapter 11 cases to cases under chapter 7.  Such result would significantly reduce creditor recoveries from those contemplated under the Plan.

4.      For the foregoing reasons and those set forth herein, appointment of the Retiree Committee, as contemplated under section 1114 of the Bankruptcy Code, is in the best interests of the Debtors, their estates, and all other parties in interest in these chapter 11 cases.  The relief sought in this Motion is also supported by the Ad Hoc Group, the ABL Secured Parties, and

the Creditors' Committee.  Accordingly, the Motion should be approved and the Retiree Committee should be appointed as soon as possible.

### Relief Requested

5.      By this motion (the "**Motion**"), pursuant to sections 105(a) and 1114 of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors request entry of an order (i) authorizing and directing the U.S. Trustee (as defined below) to appoint the Retiree Committee and (ii) granting related relief.

6.      In support of the Motion, the Debtors submit the *Declaration of Nicholas Haughey in Support of Emergency Motion of Debtors for Order (I) Authorizing and Directing the United States Trustee to Appoint a Committee of Retired Employees and (II) Granting Related Relief* (the "**Haughey Declaration**"), which is being filed contemporaneously herewith and is incorporated by reference herein.

7.      A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

### Background

8.      On September 24, 2025, Global Assets LLC and 12 of the Debtors in the above-captioned chapter 11 cases each filed with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  Commencing on September 28, 2025 (the "**Petition Date**"), First Brands Group, LLC and the remaining Debtors each filed with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed in these chapter 11 cases.

9.      On October 9, 2025, the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (Docket No. 313) (the "**Creditors' Committee**").

10.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

11.     Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (Docket No. 22) (the "**First Day Declaration**"),[5] filed on September 29, 2025, and incorporated herein by reference.

### Jurisdiction and Venue

12.     The Court has jurisdiction and authority to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### The Retiree Benefit Arrangements

13.     Under the First Brands Group, LLC Health and Welfare Employee Benefit Plan (the "**First Brands Welfare Plan**"), the Debtors provided eligible active employees and currently provide eligible retired employees (and their spouses and eligible dependents) with certain welfare benefits, including medical, dental, vision and prescription drug coverage, as well as life insurance benefits (collectively, and including the Union Benefit Arrangements (as defined

---

[5]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

herein), the "**Retiree Benefit Arrangements**").  The Debtors also sponsor, maintain or contribute to a number of other life insurance arrangements for eligible retired employees.

14.     The below paragraphs summarize the Debtors' various health and life insurance benefit arrangements, including those provided under the First Brands Welfare Plan, for retired employees (and their spouses and eligible dependents) that are not represented by a Union (the "**Non-Union Retirees**").

**A.  Group Health Benefits**

15.     As of June 1, 2026, the Debtors have no remaining active employees receiving medical, dental or vision coverage under the First Brands Welfare Plan.  However, the retiree welfare benefits are provided under the same First Brands Welfare Plan that covered active employees (and continues to cover individuals receiving COBRA continuation coverage) and cannot be separated and maintained separately.  The medical, dental, vision and prescription drug benefits provided under the First Brands Welfare Plan are fully self-insured with no stop-loss coverage, with estimated monthly costs for the entire retiree population (including union and non-union retirees) historically averaging approximately $50,000.  The third-party administrators that administer those benefits and review and process claims have each agreed to continue administering those benefits under the First Brands Welfare Plan under a re-rated structure (due to the fact that the total number of participants under the First Brands Welfare Plan dropped significantly due to the cessation of operations and corresponding termination of employment of active employees) for the remaining retirees (and their spouse and eligible dependents) and individuals receiving COBRA continuation coverage.  The Non-Union Retirees receiving medical and prescription drug benefits consists of four retired employees and two spouses (resulting in a total of six individuals) eligible to receive such retiree benefits.

### B.  Life Insurance Benefits Under Symetra

16.      Under the First Brands Welfare Plan, the Debtors also provide life insurance for certain retired First Brands employees through Symetra Life Insurance Company ("**Symetra**" and such policy, the "**Symetra Policy**").   The retiree population receiving such benefits is comprised of three union groups (FRAM Greenville, FRAM Fostoria, Carter Fuel) and three non-union groups (Dalton, Champion Labs and ASC).  Relating to the non-union groups, the Symetra Policy provides a benefit ranging from $2,000 to $88,500.  Approximately 853 Non-Union Retirees are insured under the Symetra Policy.  Symetra has agreed to continue the Symetra Policy for retirees only up until August 31, 2026 and, as a result of a decrease in the population covered under the Symetra Policy following the termination of all active employees and the resulting end of their coverage, Symetra has proposed premium increases of approximately thirty-five percent (35%) for July and August 2026.

### C.  Trico Products Retiree Life Insurance Plan

17.      Approximately 223 non-union Trico Products Corporation ("**Trico Products**") retirees receive life insurance coverage provided by the Debtors under a life insurance policy with The Hartford Insurance Group, Inc. (the "**Hartford Policy**").  Gates Corporation is the policyholder of the Hartford Policy and the Debtors reimburse Gates Corporation for the portion of premiums attributable to the Trico Products retirees.  Trico Products retirees receive a death benefit ranging from $500 to $124,000.

### D.  Postretirement Medical and Life Plan at Airtex

18.      Approximately 78 non-union retirees of Airtex Products, LP ("**Airtex**") are eligible to receive an uninsured death benefit ranging from $1,000 to $23,000.  Fedeli Group

administers this benefit on behalf of the Debtors and invoices the Debtors when it becomes aware of an approved death benefit claim.

**The Union Retiree Benefit Arrangements**

19.     The Debtors also sponsor, maintain or contribute to certain welfare arrangements for eligible retired employees (and their spouses and eligible dependents) that are represented by Unions (the "**Union Retirees**"), as described below (the "**Union Benefit Arrangements**").

20.     With respect to such Union Retirees, the Debtors have approached representatives of the United Automobile, Aerospace and Agricultural Implement Workers of America and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy Allied Industrial and Service Workers International Union on behalf of Local Union No. 4863 (the "**Unions**") to confirm the Unions' agreement to serve as authorized representatives as contemplated by section 1114 of the Bankruptcy Code for the retirees they represent.  As of the date hereof, the Debtors are awaiting a response from the Unions.  However, to the extent either of the Unions do not assume the role of authorized representative by the date of entry of the Proposed Order, the Retiree Committee will be appointed as the authorized representative of the applicable Union constituency.

### A.  Union Group Health Benefits

21.     The Union Retirees, as it relates to group health benefits, include retired (i) bargaining unit employees covered at the time of retirement under the collective bargaining agreement between FRAM Group Operations, LLC and the United Automobile, Aerospace and Agricultural Implement Workers of America (with respect to the Greenville, Ohio plant) (the "**FRAM Greenville CBA**") covering approximately 18 retirees and three spouses, (ii) bargaining unit employees covered at the time of retirement under the collective bargaining

agreement between FRAM Group Operations, LLC Autolite Spark Plug Plant and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, Local 533 (the "**FRAM Fostoria CBA**") covering approximately 16 retirees and eight spouses, and (iii) bargaining unit employees covered at the time of retirement under the collective bargaining agreement between Carter Fuel System, Logansport and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union on behalf of Local Union No. 4863 (the "**Carter CBA**") covering approximately eight retirees, four spouses and four dependents.

### B.  Union Life Insurance Benefits

22.     The Union Retirees, as it relates to life insurance benefits, include retired (i) bargaining unit employees covered at the time of retirement under the FRAM Greenville CBA covering approximately 110 retirees under the Symetra Policy providing a benefit ranging from $7,500 to $10,000, (ii) bargaining unit employees covered at the time of retirement under the FRAM Fostoria CBA covering approximately 36 retirees under the Symetra Policy providing a benefit of $15,000, (iii) bargaining unit employees covered at the time of retirement under the Carter CBA covering approximately 99 retirees under the Symetra Policy providing a benefit ranging from $7,000 to $37,000 and (iv) bargaining unit employees of ASC Industries, Inc. covering up to approximately 13 retirees under the Symetra Policy providing a benefit ranging from $4,000 to $25,500.

### Retiree Committee Should Be Appointed

23.     Section 1114(e)(1) of the Bankruptcy Code provides that a chapter 11 debtor generally "shall timely pay and shall not modify any retiree benefits . . ." 11 U.S.C. § 1114(e)(1). "Retiree Benefits" are defined to include payments for retired employees and their dependents for "medical, surgical, or hospital care benefits, or benefits in the event of sickness,

accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title." *Id.* § 1114(a).

24.     Section 1114, however, contemplates that retiree benefits may be modified under certain circumstances.  Specifically, section 1114(d) of the Bankruptcy Code provides, in pertinent part, as follows:

> [T]he court, upon a motion…and after notice and a hearing, shall order the appointment of a committee of retired employees if the debtor seeks to modify or not pay the retiree benefits or if the court otherwise determines that it is appropriate, to serve as the authorized representative . . . of those persons receiving any retiree benefits not covered by collective bargaining agreement.

*Id*. § 1114(d).  The U.S. Trustee must appoint any such committee. *Id*.

25.     Pursuant to section 1114(c) of the Bankruptcy Code, retirees who receive their benefits under a collective bargaining agreement are presumptively represented by their labor organization, unless such labor organization elects not to serve as such retirees' authorized representative.  To the extent either of the Unions elect not to serve as the authorized representative of their constituency, the Retiree Committee will serve as the authorized representative for Union members covered by the applicable collective bargaining agreement in accordance with section 1114(c) of the Bankruptcy Code.

26.     Section 1114 of the Bankruptcy Code sets forth the process for negotiating modification or termination of a debtor's existing retiree benefits. *See* 11 U.S.C. § 1114(f), (g). The first step in that process requires that the Debtors "make a proposal to the authorized representative of the retirees" with the Debtors' proposed modifications to the retiree benefits. *Id*. § 1114(f)(1)(A).  Appointment of an authorized representative under section 1114(d) for the Retirees is, therefore, necessary for the negotiations that are required to modify or terminate any

Retiree Benefit Arrangements pursuant to the standards set forth in section 1114 of the Bankruptcy Code.

27.     In addition to the requirements related to retiree benefits under section 1114, section 1129 of the Bankruptcy Code provides that "[t]he court shall confirm a plan only if[,]" among other requirements, "[t]he plan provides for the continuation after its effective date of payment of all retiree benefits . . . at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of [the Bankruptcy Code], at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits."  11 U.S.C. § 1129(a)(13).  Thus, to confirm a chapter 11 plan, a debtor must either propose a chapter 11 plan that provides for full payment of retiree benefits or payment of retiree benefits as modified pursuant to section 1114 of the Bankruptcy Code following the effective date.

28.     Here, the Debtors' proposed chapter 11 plan contemplates a wind down of the Debtors' remaining operations and the distribution of the Debtors' assets to various trusts that will seek to monetize such assets and distribute any proceeds to creditors.  Accordingly, the Debtors do not have the ability to continue paying retiree benefits following confirmation of the Plan.  To comply with their obligations under section 1114 of the Bankruptcy Code, the Debtors are, therefore, requesting that the Court direct the U.S. Trustee to appoint a Retiree Committee as expeditiously as possible.  As the Debtors do not currently have liquidity to extend their current proposed timeline for confirmation of the Plan, the Debtors will need to negotiate with the Retiree Committee appointed by the U.S. Trustee and the Unions, if applicable, on an expedited timeframe to ensure the requirements of sections 1114 and 1129(a)(13) of the Bankruptcy Code can be satisfied to the extent necessary ahead of the Debtors' proposed confirmation hearing on July 28, 2026.

29.     Absent the timely appointment of the Retiree Committee, the Debtors will be unable to satisfy the requirements for confirmation of the Plan set forth in section 1129(a) of the Bankruptcy Code.  The alternative to the Plan is an immediate conversion of the chapter 11 cases to cases under chapter 7, which is likely much worse for the Retirees and other junior creditors (including administrative creditors).  The Plan, on the other hand, maximizes recoveries for all creditors and provides the best and only path to repay administrative expense and other priority claims in full and provide a recovery to junior creditors.  Appointment of the Retiree Committee as contemplated by section 1114 of the Bankruptcy Code is required to ensure the viability of the Plan and the distributions to be provided thereunder.

30.     The Retiree Committee must file retention applications for any legal counsel engaged to carry out the Retiree Committee's obligations under section 1114 of the Bankruptcy Code, and such professionals must file fee applications for their compensation and expenses.  To conserve the limited economic resources of the Debtors' estates, the Debtors propose that the aggregate fees and expenses of professionals retained by the Retiree Committee shall not exceed $100,000 in the aggregate (the "**Fee Cap**"), unless otherwise agreed to by the Debtors or ordered by the Court.  The Fee Cap is commensurate with the short timeline under which negotiations between the Debtors and the Retiree Committee must take place and the Debtors' current financial position.  Courts in other chapter 11 cases have approved fee caps for counsel and other advisors to appoint a committee of retired employees.  *See, e.g., In re Accuride Corporation*, Case No. 24-12289 (JKS) (Bankr. D. Del. Nov. 20, 2024) (Docket No. 319) (limiting retiree committee's legal fees to $250,000 in the aggregate); *In re Sears Holding Corporation*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. June 25, 2019) (Docket No. 4357) (limiting retiree committee's budget to $200,000 in the aggregate); *In re The Great Atlantic & Pacific Tea*

*Company, Inc.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Aug. 14, 2015) (Docket No. 573) (limiting retiree committee's professional fees to $100,000 per month). The Fee Cap is appropriate based on the facts and circumstances of these chapter 11 cases.

31. If the Court authorizes and directs the U.S. Trustee to appoint the Retiree Committee, the Debtors will work with the U.S. Trustee to establish appropriate procedures for promptly contacting the Retirees and identifying candidates to serve on the Retiree Committee. Those procedures will include the U.S. Trustee filing a notice of the appointment of the Retiree Committee (the "**Appointment Notice**") on the Court's docket and serving such notice on the following parties (collectively, the "**Notice Parties**"):

(a)   First Brands Group, LLC, 127 Public Square, Suite 5300, Cleveland, OH 44114 (Attn: Chuck Moore (cmoore@alvarezandmarsal.com));

(b)   counsel for the Debtors, Weil, Gotshal & Manges LLP, 700 Louisiana Street, Suite 3700, Houston, TX 77002 (Attn: Clifford W. Carlson, Esq. (clifford.carlson@weil.com)) and 767 Fifth Avenue, New York, NY 10153 (Attn: Matthew S. Barr, Esq. (matt.barr@weil.com), Sunny Singh, Esq. (sunny.singh@weil.com), Kevin Bostel, Esq. (kevin.bostel@weil.com), Andriana Georgallas, Esq. (andriana.georgallas@weil.com), Alejandro Bascoy, Esq. (alejandro.bascoy@weil.com));

(c)   counsel to the Ad Hoc Group, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn: Scott Greenberg, Esq. (SGreenberg@gibsondunn.com), AnnElyse Scarlett Gains, Esq. (AGains@gibsondunn.com), Christina Brown, Esq. (Christina.Brown@gibsondunn.com), and Tommy Scheffer, Esq. (TScheffer@gibsondunn.com));

(d)   counsel to the Creditors' Committee, Brown Rudnick LLP, 7 Times Square, New York, NY 10036 (Attn: Robert Stark, Esq. (RStark@brownrudnick.com), Bennett Silverberg, Esq. (BSilverberg@brownrudnick.com), and Tristan Axelrod, Esq. (TAxelrod@brownrudnick.com));

(e)   co-counsel to Silver Point Capital, L.P. and Onset Financial, Inc., Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attn: James Newton, Esq. (jnewton@mofo.com) and Ben Butterfield, Esq. (bbutterfield@mofo.com));

13

(f)     co-counsel to Silver Point Capital, L.P. and Onset Financial, Inc., Milbank LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Dennis Dunne, Esq. (ddunne@milbank.com), Lisa Laukitis, Esq. (llaukitis@milbank.com), and Andrew Leblanc, Esq. (aleblanc@milbank.com));

(g)     counsel to Bank of America, N.A., Norton Rose Fulbright US LLP, 2200 Ross Ave., Suite 3600, Dallas, TX 75201 (Attn: Toby Gerber, Esq. (toby.gerber@nortonrosefulbright.com) and Kristian Gluck, Esq. (kristian.gluck@nortonrosefulbright.com)) and Winston & Strawn LLP, 35 West Wacker Drive, Chicago, IL 60601 (Attn: Gregory Gartland, Esq. (ggartland@winston.com) and Daniel J. McGuire, Esq. (dmcguire@winston.com));

(h)     any retired employee of the Debtors that is entitled to receive benefits under the Retiree Benefit Arrangements (for whom identifying information and addresses are available to the Debtors); and

(i)     any other party entitled to notice under Bankruptcy Rule 2002.

32.     Courts in other chapter 11 cases have granted the relief requested in this Motion. *See, e.g., In re Westmoreland Coal Company*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Nov. 16, 2018) (Docket No. 526) (authorizing and directing U.S. Trustee to appoint retiree committee pursuant to section 1114 of the Bankruptcy Code); *In re Tupperware Brands Corporation*, Case No. 24-12156 (BLS) (Bankr. D. Del. Mar. 7, 2025) (Docket No. 573) (same); *In re True Value Company, L.L.C.*, Case No. 24-12337 (KBO) (Bankr. D. Del. Feb. 26, 2025) (Docket No. 955) (court appointed authorized representative for retirees 12 days after debtors' motion requesting such relief was filed); *In re Accuride*, Case No. 24-12289 (JKS) (Bankr. D. Del. Nov. 20, 2024) (Docket No. 319) (court authorized and directed appointment of retiree committee 14 days after debtors' motion requesting such relief was filed); *In re BBGI US, Inc.*, Case No. 20-11785 (CSS) (Bankr. D. Del. Nov. 11, 2020) (Docket No. 749) (court authorized and directed appointment of retiree committee 3 days after debtors' motion requesting such relief was filed).

33.     For the foregoing reasons, appointment of the Retiree Committee, as contemplated under section 1114 of the Bankruptcy Code, is necessary, appropriate, and in the

best interests of the Debtors, their estates, and all other parties in interest in these chapter 11 cases. Accordingly, the Court should direct the U.S. Trustee to appoint the Retiree Committee.

## Basis for Emergency Relief

34.     The Debtors respectfully request emergency consideration of this Motion in accordance with Bankruptcy Local Rule 9013-1(i).  Appointment of the Retiree Committee and negotiations with such committee are prerequisites to confirmation of the Plan.  As set forth in the Haughey Declaration, support from the Debtors' secured lenders of the Plan process is predicated on a budget and proposed confirmation timeline that allows the Debtors to confirm the Plan by the end of July 2026.  To the extent that the Retiree Committee is not appointed in the near term, the Debtors will likely be unable to achieve confirmation of the Plan on the requisite timeframe.  Such a result would likely lead to conversion of these chapter 11 cases to cases under chapter 7 and reduced recoveries for creditors, including the Retirees.  Accordingly, emergency consideration of the Motion is appropriate.

## Reservation of Rights

35.     Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity, priority or character of any claim against the Debtors (including any claim for any retiree benefits), (ii) an agreement or obligation to pay any claims, (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (iv) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, (v) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (vi) a waiver of the obligation of any party in interest to file a proof of claim, or (vii) an approval, assumption, rejection, termination, or modification of any unexpired lease or executory contract (including any plan or agreement providing for retiree

benefits) under section 365 of the Bankruptcy Code or otherwise.  The Debtors expressly reserve all rights with respect to the foregoing matters.

## **Notice**

36.     Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## **No Previous Request**

37.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  June 16, 2026
      Houston, Texas

        */s/  Clifford W. Carlson*
WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:  gabriel.morgan@weil.com
      clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Alejandro Bascoy (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  matt.barr@weil.com
      sunny.singh@weil.com
      andriana.georgallas@weil.com
      kevin.bostel@weil.com
      alejandro.bascoy@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

## Certificate of Service

I hereby certify that on June 16, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Clifford W. Carlson*
Clifford W. Carlson