IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| First Brands Group, LLC, *et al.*, | § | Case No. 25-90399(CML) |
| | § | |
| Debtors. | § | |

**FORTEQ UK LTD.'S APPLICATION FOR
ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

Forteq UK Ltd. ("Forteq"), by and through its undersigned counsel, respectfully submits this application (the "Application") requesting that this Court enter an order, substantially in the form attached hereto as Exhibit A, allowing and directing payment of Forteq's administrative expense claim in the aggregate amount of $652,936 (the "Post-Petition Administrative Claim") pursuant to 11 U.S.C. § 503(b) of title 11 of the United States Code (the "Bankruptcy Code"). In support of this Application, Forteq respectfully states as follows:

## JURISDICTION, VENUE, AND STATUTORY PREDICATES FOR RELIEF

1.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

3.    Forteq submits this Application pursuant to 11 U.S.C. §§ 105, 503, and 507.

## BACKGROUND

4.    Prior to Debtors' filing of bankruptcy, Forteq manufactured custom-made goods for Debtors, including primarily for Debtor Trico Products Corp. ("Trico"). *See* Declaration of Stephen Leyland dated June 4, 2026, ¶ 5 ("Leyland Decl.").

5.    Forteq and Trico transacted via purchase orders. Trico would submit a purchase order for custom-made goods. Forteq would then source all necessary raw materials and manufacture the goods. Once the goods were ready for shipment, Forteq would notify Trico and Trico would arrange fulfillment and pay necessary shipping costs. Payment terms were governed by the individual purchase orders. Leyland Decl. ¶¶ 6–10.

6.    On September 24, 2025 (the "Petition Date"), Global Assets LLC and 12 affiliated debtors (the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court.

7.    At the time of the Petition, Debtors owed Forteq approximately $765,000. Leyland Decl. ¶ 11.

8.    Starting October 29, 2025, Debtors attempted to submit new purchase orders to Forteq. But because of the prepetition debt, Forteq disclosed to Debtors that it would not full new, post-petition orders absent pre-payment as the goods ordered by Debtors were custom made as opposed to being drawn from standard inventory. Leyland Decl. ¶¶ 12–13. Put simply, if Debtors

2

liquidated or ultimately did not pay for post-petition invoices, Forteq would have no remedy as the goods cannot be readily sold to a third-party. Leyland Decl. ¶ 22.

9.      On November 4, 2025, this Court entered its *Final Order (I) Authorizing Debtors to Pay (A) Critical Vendor Claims, (B) Non-U.S. Vendor Claims, (C) Lien Claims, and (D) 503(B)(9) Claims, (II) Confirming Administrative Expense Priority of Undisputed Outstanding Prepetition Orders, and (III) Granting Related Relief* (the "Critical Vendor Order") [Docket No. 519]. Pursuant to the Critical Vendor Order, the Debtors were authorized to pay prepetition claims of certain suppliers, including Forteq.

10.     On November 9, 2025, the Court entered the *Final Order Granting Debtor-In-Possession Financing* (the "Final DIP Order") [Docket No. 608], which set aside a $200 million "basket" for Debtors to pay post-petition administrative expenses while Debtor attempted to restructure and sell its business.

11.     Shortly thereafter, Forteq and certain of the Debtors negotiated and ultimately entered into a certain trade agreement (the "Trade Agreement"). Pursuant to the Trade Agreement, Forteq received payments in partial satisfaction of its prepetition claim (the "Critical Vendor Payment") in exchange for Forteq agreeing to fulfill post-petition orders submitted by the Debtors for the duration of the bankruptcy case on credit terms. Leyland Decl. ¶ 14.

12.     Forteq relied on Debtors' representations, the Trade Agreement, the Final DIP Order, and the Critical Vendor Order in agreeing to fulfill post-petition orders. Leyland Decl. ¶ 15.

13. Since the execution of the Trade Agreement, Forteq has continued to order parts and specially manufacture custom goods to fill post-petition purchase orders placed by the Debtors. However, Forteq has not received *any* payments on invoices due and owing.[1]

14. Between October 29, 2025 and November 13, 2025, Debtors submitted post-petition purchase orders amounting to $652,936.86 and requesting shipment dates between February 2026 through September 2026 (collectively, the "POs"). Leyland Decl. ¶ 16.

15. Forteq timely produced the goods to meet the required shipment dates in February. During this time, Debtors defaulted under the Trade Agreement and indicated that any payments under the Trade Agreement would be put on hold for an indefinite period. As Forteq only agreed to manufacture custom-goods on credit because of Debtors' agreement to pay a portion of its pre-petition claims, Forteq demanded that Debtors pay for the goods prior to coordinating fulfillment. Leyland Decl. ¶ 17–18.

16. At this point, Forteq was also nearly finished with the orders to meet the required shipment dates in March.

17. Despite Forteq's numerous demands, Debtors did not pay. Shortly thereafter, Debtors turned completely silent and began ignoring Forteq. Leyland Decl. ¶ 19.

18. Forteq interpreted Debtors' silence, failure to pay, and failure to coordinate delivery fulfillment as a repudiation of the POs and immediately halted production in an effort to mitigate its damages. But because most of the parts were already finished (or the underlying material already ordered from vendors and paid for by Forteq), Forteq could not mitigate its damages. Leyland Decl. ¶¶ 20–22.

---

[1] Forteq has also not received full payment under the Trade Agreement and has amended its proof of claim to assert its unsecured claim accordingly.

19.     As of May 15, 2026, Forteq estimates its damages at $652,936. Leyland Decl. ¶ 24.

## RELIEF REQUESTED AND AUTHORITIES IN SUPPORT

20.     Forteq requests that its Post-Petition Administrative Claim be allowed and immediately paid as a Chapter 11 administrative expense claim against the Debtors in their Chapter 11 case.

21.     The timing of payment is critical as Debtors appear poised to circumvent the Bankruptcy code's clear priority requirements, by subjugating post-petition trade creditors, who were induced by Debtors to continue providing goods on credit, to a Plan that would place their high priority administrative expense claims into a pro rata pot with general unsecured claims, Roll-Up claims, and First and Second Lien Claims, ensuring that they will likely receive, if anything, pennies on the dollar. As the U.S. Trustee has already briefed the relevant arguments and objections in front of the Court, Forteq focuses its motion solely on its administrative expense claim.

22.     Section 507(a)(2) of the Bankruptcy Code gives priority to any "administrative expenses" allowed pursuant to Section 503(b). 11 U.S.C. § 507(a)(2). Section 503(b) provides an administrative priority for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

23.     Section 503's purpose is "to encourage third parties to provide necessary services to the debtor-in-possession so that it can continue to conduct its business, thus generating funds from which prepetition creditors can be paid." *In re Transamerican Natural Gas Corp.*, 978 F.2d 1409, 1420 (5th Cir. 1992).

24.     In other words, Section 503 was intentionally designed to afford third parties the necessary protection required (i.e., priority payment) to induce the third party to continue providing goods and services on credit, with the goal of benefitting all creditors of the estate. *See*

*Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.)*, 931 F.3d 432, 442 (5th Cir. 2019) (noting Section 503(b)(1)(A) is "designed to address a specific business problem," i.e., that "[t]hird parties might refuse to extend credit to debtors-in-possession for fear that their claims would not be paid.").

25.     Thus, a creditor may establish a prima face case under Section 503(b)(1) where it provides evidence of (1) a post-petition claim for goods and services that (2) benefited the estate. *In re Transamerican Natural Gas Corp.*, 978 F.2d at 1416.

26.     When the claim arises out of a commercial transaction for goods, as it does here, the creditor must also show "some inducement by the debtor-in-possession." *Nabors Offshore Corp.*, 931 F.3d at 442 (5th Cir. 2019). A "written post-petition agreement between a debtor-in-possession and a creditor" clearly constitutes such inducement. *Id.*

27.     The term "benefit to the estate" is not narrowly construed. *In re Transamerican Natural Gas Corp.*, 978 F.2d at 1420. While it typically includes "the actual cost of necessary goods or services supplied" it also includes "less readily calculable benefits, such as the ability to continue to conduct business as usual." *Id.*; *see also Nabors Offshore Corp.*, 931 F.3d at 443-44. Notably, the availability of equipment, goods, or services can qualify as a benefit of the estate regardless of whether it is ultimately used by the debtor. *Id.* ("Yet conducting business as usual often requires that certain goods or services be available, even if ultimately not used... Thus, we clarify that when the debtor-in-possession induces availability and the bankruptcy estate derives a benefit from it, the ordinary cost of ensuring such availability qualifies as an administrative expense.").

28.     Forteq's Post-Petition Administrative Claim satisfies the criteria for administrative expense priority under Section 503(b)(1)(A) as it is: (1) a post-petition breach of contract claim

for goods, (2) induced by the Debtors' actions, and (3) and conferred a benefit to the estate. *In re Whistler Energy II, L.L.C.*, 931 F.3d at 442. Indeed, Section 503 was designed *precisely* for creditors like Forteq who continued to engage with Debtors in good faith during the pendency of a bankruptcy.

29.     First, the POs are written, post-petition agreements, submitted *by Debtors* requesting that Forteq manufacture custom-made goods. *See* Leyland Decl. Exs. 1–9 (purchase orders dated between October 29, 2025 and November 13, 2025, well after the Petition Date). Accordingly, there can be no dispute that Forteq's claim arises out of post-petition actions of the Debtors. Further, there can be no reasonable dispute that Debtors have breached the agreement by failing to coordinate delivery fulfillment, failing to make timely payments, and repudiating the remaining orders. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (noting the elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."); *Sava Gumarska in Kemijska Industria D.D. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 317 n.6 (Tex. App. 2004) ("Repudiation consists of words or actions by a contracting party which indicate that it is not going to perform his contract in the future.").[2]

---

[2] Upon information and belief, Texas law should apply here. The POs are governed by Trico's terms and conditions. *See, e.g.*, Leyland Decl. Exs. 1–9. Upon information and belief, Trico did not provide Forteq with the governing terms and conditions. Rather, Trico provided a URL in the purchase orders purportedly linking to terms and conditions on its website. That link is no longer functional and counsel is unable to determine what governing law was agreed to, if any. As the goods were designated for shipment to Texas, Forteq assumes for the sake of this motion that Texas law applies.

30.     Second, the Trade Agreement and representations made by Debtors induced Forteq to continue manufacturing custom goods on credit terms because absent the agreement, Forteq would not have fulfilled the POs for Debtors on credit terms. Forteq expressly disclosed this to Debtors when it originally refused to fulfill the post-petition orders on credit terms, resulting in Debtors offering to enter into the Trade Agreement so that Debtors could timely fulfill orders placed by their own customers during its liquidity crisis. Leyland Decl. ¶¶ 13–14.

31.     Third, the continued relationship has conferred a discernible benefit on the Debtors and their ability to continue operating as debtors-in-possession. There can be no dispute that the manufacture of custom-made goods, specifically requested by Debtors to fulfill their end customer orders, confers a discernible benefit to the estate. Debtors are free to coordinate delivery fulfillment for the finished and partially finished product.[3]

32.     Therefore, the Post-Petition Administrative Claim qualifies as a Chapter 11 administrative expense claim under Section 503(b) of the Bankruptcy Code and should be allowed as such.

33.     Because the POs are an agreement to manufacture a specialized good with no market value, Section 2.708(b) of the Texas Business and Commerce Code provides the appropriate formula for calculating Forteq's damages: "the profit (including reasonable overhead) which [Forteq] would have made from full performance by the [Debtors], together with . . . due allowance for costs reasonably incurred." Tex. Bus. & Com. Code § 2.708(b); *see Lakewood Pipe of Texas, Inc. v. Conveying Techniques, Inc.*, 814 S.W.2d 553, 556 (Tex. App. 1991) (holding that § 2.708(b) "applies to a seller seeking damages for a buyer's breach of contract to manufacture a

---

[3] To the extent payment is made, Forteq is willing to continue manufacturing the partially finished product if elected by Debtors.

specialized piece of equipment that has no market value," and that "[t]his statutory damage formula applies to all cases in which the seller properly discontinues manufacture of goods because of a buyer's breach."); *Sava Gumarska in Kemijska Industria D.D. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 317 n.6 (Tex. App. 2004) ("Under the [Texas] UCC, when a buyer repudiates the contract before delivery and the goods are specially manufactured without a market, the measure of damages is the profit formula set forth in section 2.708(b).").

34.     Forteq has already incurred all of its reasonable costs to procure the raw materials used to fulfill the POs. Further, because the goods are custom-made, Forteq cannot sell the goods or otherwise mitigate its damages. Leyland Decl. ¶¶ 21–22. Accordingly, the formula here is simple: Forteq is entitled to $652,936, which constitutes its profits and costs reasonably incurred.[4] *See Sava Gumarska in Kemijska Industria D.D.*, 128 S.W.3d at 317 n.6.

35.     For these reasons, Forteq respectfully requests that this Court allow the Post-Petition Administrative Claim in its entirety and direct that Debtors pay such claim as a Chapter 11 administrative expense claim against the Debtors' bankruptcy estates in the aggregate amount of $652,936. Further, Forteq requests that such allowance and payment of the Post-Petition Administrative Claim be without prejudice to, and have no effect on, any other claims that Forteq holds or may acquire against the Debtors and their bankruptcy estates.

36.     Finally, Forteq respectfully requests that these claims be paid immediately. While administrative expenses are typically paid on the plan effective date, this Court has authority to order payment prior to confirmation. *See In re NE Opco, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013).

---

[4] While Forteq has incurred incidental costs of storage while awaiting Debtors' instructions to coordinate delivery, Forteq intends to waive these costs. Leyland Decl. ¶ 23.

37.     Both Section 503 and 507(a)(2) are designed specifically to protect post-petition trade creditors like Forteq who continued to provide goods to a debtor during the pendency of the bankruptcy.

38.     Moreover, this Court already set aside $200 million in expenses for post-petition trade creditors. Forteq is respectfully requesting that it be paid now out of the already allocated money, as contemplated by the Trade Agreement it entered into.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Forteq respectfully requests that this Court enter an order substantially in the form annexed hereto (i) allowing the Post-Petition Administrative Expense Claim as an allowed administrative expense claim against the Debtors in the aggregate amount of $652,936; (ii) directing the Debtors to pay such allowed administrative claim to Forteq within three (3) business days of the entry of an order granting this Application; and (iii) granting Forteq such other and further legal and equitable relief to which it may be entitled.

Dated:   June 18, 2026

Respectfully submitted,

_/s/ Michael-Anthony B. Jaoude_

Michael-Anthony B. Jaoude (*pro hac vice*)
Sara C. Bisantz (*pro hac vice*)
**HARTER SECREST & EMERY LLP**
50 Fountain Plaza, Suite 1000
Buffalo, New York 14202
716.853.1616
mjaoude@hselaw.com
sbisantz@hselaw.com
*Counsel for Forteq UK, Ltd.*

10

**CERTIFICATE OF SERVICE**

I certify that on June 18, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Michael-Anthony B. Jaoude*
Michael-Anthony B. Jaoude

11