IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| First Brands Group, LLC, et al., | § | Case No. 25-90399 (CML) |
| | § | |
| Debtors.[1] | § | |
| | § | |

**AMAZON ADVERTISING LLC'S MOTION FOR
ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

Amazon Advertising LLC ("**Amazon**"), by and through its undersigned counsel, respectfully submits this Motion for Allowance and Payment of Administrative Expense Claim ("**Motion**"), requesting that this Court enter an order allowing and directing payment of Amazon's administrative expense claim in the aggregate amount of $540,443.99 (the "**Post-Petition Administrative Claim**") pursuant to 11 U.S.C. § 503(b).

After this bankruptcy case was filed in September 2025, Amazon provided advertising services to Debtors Brake Parts Inc. LLC ("**Brake Parts**"), Cardone Industries, Inc. ("**Cardone**"),

---

[1] A complete list of Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands/. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Carter Fuel Sytems, LLC ("**Carter**"), First Brands Group, LLC ("**FBG**"), Horizon Global

Americas Inc. ("**Horizon**"), and TRICO Products Corporation ("**TRICO**," and collectively with

Brake Parts, Cardone, Carter, FBG, and Horizon, the "**Debtor Entities**"). The Debtor Entities

utilized Amazon's advertising services post-petition to promote and increase sales for various

products the Debtor Entities sold in Amazon's online store, incurring over $500,000 in advertising

costs. Despite accepting the benefit of Amazon's advertising services for several months, the

Debtor Entities refuse to pay for those services.

This Motion is being requested because Amazon is entitled to administrative priority and

its claims should be treated as an administrative claim for purposes of the Debtors[2] proposed plan

filed on June 16, 2026. *See* ECF No. 3019. To allow the Debtor Entities to enjoy the benefits of

Amazon's advertising services post-petition without paying for them, thereby causing Amazon

financial harm, is improper. Accordingly, this Court should grant the Motion and enter an order

allowing Amazon's Post-Petition Administrative Claim pursuant to 11 U.S.C. § 503(b).

## JURISDICTION AND VENUE

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

3. Amazon brings this Motion pursuant to 11 U.S.C. §§ 105, 503 and 507.

## BACKGROUND

**A.** **The Debtor Entities Engaged Amazon for Advertising Services for Their Products Sold on Amazon.com**.

4. Prior to filing their bankruptcy cases, the Debtor Entities created Amazon

accounts for advertising their products in the Amazon.com store. Lightbourn Decl. ¶ 3. When

---

[2] For purposes of this Motion, "Debtors" means all debtors in the above-captioned, jointly administered cases.

each of the Debtor Entities signed up for Amazon's advertising services and created their accounts, they each agreed to abide by Amazon's advertising terms and conditions (the "**Advertising Terms**"). *Id.*; Ex. 1.

5.      Pursuant to the Advertising Terms, the Debtor Entities requested and utilized Amazon's self-service sponsored advertising for various products the Debtor Entities sold in Amazon's online store, including without limitation, brake pads and other brake parts, wipers, car power steering products, fuel pumps, and other vehicle parts and products (collectively, the "**Products**"), which allowed the Debtor Entities to purchase sponsored display ads on a cost-per-click basis. Lightbourn Decl. ¶ 4. According to the Debtor Entities, the Products are key products to their business. *See* ECF No. 3020 at 38-39. Amazon's self-service sponsored advertising helps sellers who use it, including the Debtor Entities, create brand recognition and increase sales. Lightbourn Decl. ¶ 4.

6.      After providing a month's worth of advertising services, Amazon would then deliver an invoice to the Debtor Entities, which those entities were required to pay within 30 days of receipt. *See* Lightbourn Decl. Ex. 2.

7.      The Debtor Entities have been utilizing Amazon's advertising services for their Products since 2022. Lightbourn Decl. ¶ 5. Before filing their bankruptcy cases, the Debtor Entities utilized Amazon's self-service sponsored advertising for their Products and paid Amazon timely for the advertising services rendered. *Id.*

**B.      The Debtor Entities Failed to Pay for Amazon Advertising Services Rendered Post-Petition.**

8.      FBG filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on September 28, 2025, and Brake Parts, Cardone, Carter, Horizon, and TRICO each filed

3

voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on September 29, 2025. The Debtor Entities' bankruptcy cases are jointly administered under Case No. 25-90399.

9.      After filing their chapter 11 bankruptcy cases, the Debtor Entities continued to use Amazon's advertising services for their Products. Lightbourn Decl. ¶ 6. The Debtor Entities utilized advertising services from Amazon on a monthly basis between October 2025 and February 2026. *Id.*

10.     Between November 2025 and March 2026, Amazon sent the Debtor Entities a total of 17 invoices totaling $540,443.99 for these advertising services. *Id.* ¶ 7; Ex. 2. As reflected in the invoices, Amazon provided advertising services in the months of October 2025 through February 2026 for the Debtor Entities' products sold in the Amazon.com store. *Id.*

11.     Although Amazon provided advertising services to the Debtor Entities between October 2025 and February 2026, and invoiced the Debtor Entities for the advertising services rendered by Amazon, Amazon did not receive any payment from the Debtor Entities. The Debtor Entities acknowledged such services were rendered by Amazon, but refused to remit payment to Amazon. Dorsett Decl. Ex. 3.

12.     Amazon filed claims against each of the Debtor Entities.

13.     Specifically, Brake Parts continued to use Amazon's advertising services post-petition from December 1, 2025 until February 28, 2026. It has not paid for these advertising services in the amount of $89,446.36. Lightbourn Decl. Ex. 2.

14.     Cardone continued to use Amazon's advertising services post-petition from December 1, 2025 until January 31, 2026. It has not paid for these advertising services in the amount of $19,418.02. Lightbourn Decl. Ex. 2.

15.     Carter continued to use Amazon's advertising services post-petition from December 1, 2025 until February 28, 2026. It has not paid for these advertising services in the amount of $9,031.42. Lightbourn Decl. Ex. 2.

16.     FBG continued to use Amazon's advertising services post-petition from October 1 until October 31, 2025, and again from December 1, 2025 until January 31, 2026. It has not paid for these advertising services in the amount of $6,310.68. Lightbourn Decl. Ex. 2.

17.     Horizon continued to use Amazon's advertising services post-petition from December 1, 2025 until February 28, 2026. It has not paid for these advertising services in the amount of $165,132.99. Lightbourn Decl. Ex. 2.

18.     TRICO continued to use Amazon's advertising services post-petition from December 1, 2025 until February 28, 2026. It has not paid for these advertising services in the amount of $251,104.52. Lightbourn Decl. Ex. 2.

**C.      The Debtors' Proposed Plan and Treatment of Administrative Expense Claims.**

19.     On June 16, 2026, the Debtors proposed a chapter 11 plan of reorganization for the Debtor Entities (the "FBG Plan"). *See* ECF No. 3019. As proposed in the FBG Plan, administrative claims against the "FBG Debtors" (including the Debtor Entities) will be treated as part of the Class 3(b) Litigation Trust Interest. *Id*. The FBG Plan propose the "Administrative Expense Claims Consent Program" where holders of administrative expense claims may elect to opt-in to the program and agree to reduce their administrative expense claim to 50 percent in order to receive payment of such reduced amounts before holders of other administrative expense claims that do not opt in to the Administrative Expense Claims Consent Program. *Id*. at 4, 26, 31, 59. If holders of administrative expense claims do no opt-in to the "Administrative Expense Claims Consent Program," they will receive full payment, but not until the "Litigation

Trust" or the "DIP Collateral Trust" have sufficient cash on hand to satisfy allowed administrative expense claims, which may take years, according to the Debtors. *Id*. at 99.

## RELIEF REQUESTED

20.     Amazon requests, pursuant to 11 U.S.C. § 503(b)(1)(A), that this Court enter an order granting its Post-Petition Administrative Claim and allowing $540,443.99 to be immediately paid to Amazon as compensation for the necessary services rendered to the Debtor Entities post-petition which benefitted the Debtors' estate.

## ARGUMENT AND AUTHORITIES

21.     Section 507 of the Bankruptcy Code affords priority status to administrative expenses allowed under section 503(b). 11 U.S.C. § 507(a)(2). Section 503 of the Bankruptcy Code provides: "After notice and a hearing, there shall be allowed administrative expenses for "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Courts have construed the words "actual" and "necessary" to mean that the expenses must have benefitted the debtors' estates and their creditors. *NL Indus., Inc. v. GHR Energy Corp.* (*In re GHR Energy Corp.*), 940 F.2d 957, 966 (5th Cir. 1991).

22.     Pursuant to section 503(b)(1)(A), a claim qualifies if it "arise[s] post-petition and as a result of actions taken by the trustee [or debtor-in-possession] that benefitted the estate." *In re Whistler Energy II, LLC*, 931 F.3d 432, 441 (5th Cir. 2019) (citing *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001)). "Administrative priority serves to 'encourage third parties to provide necessary goods and services to the debtor-in-possession so that it can continue to conduct its business, thus generating funds from which prepetition creditors can be paid.'" *Id.* at 442 (quoting *In re TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1420 (5th Cir. 1992)).

23.     The first part of the test requires a showing that "expenses were incurred 'as a result of actions taken' by the debtor, and that those actions occurred after bankruptcy." *In re*

6

*Bouchard Transp. Co., Inc.*, 74 F.4th 743, 751 (5th Cir. 2023) (quoting *Whistler Energy*, 931 F.3d at 441). A creditor can make such a showing through evidence of a direct request from the debtor-in-possession, or "other inducement via the knowing and voluntary post-petition acceptance of desired goods or services." *Whistler Energy*, 931 F.3d at 442.

24.     Here, each of the Debtor Entities accepted and agreed to the Advertising Terms and selected the advertising services each entity desired, which Amazon then rendered on a monthly basis. Lightbourn Decl. ¶¶ 3-7; Exs. 1-2. The Debtor Entities had a longstanding relationship with Amazon and continued to use Amazon's advertising services post-petition, knowing they would be invoiced for such services. *Id.* Nevertheless, the Debtor Entities made no effort to cancel the advertising services post-petition. *Id.* ¶ 6. Instead, the Debtor Entities knowingly and voluntarily accepted the advertising services they desired from Amazon post-petition to increase the sales of their Products. *Id.* ¶¶ 4, 6-7. Thus, Amazon's claim meets the first prong of the administrative priority test.

25.     Further to that point, "[c]ourts have generally found that post-petition contracts should be treated as if they had been assumed under section 365 because post-petition contracts and assumed contracts are functionally equivalent." *In re Marquez Construction and Maintenance, LLC*, 675 B.R. 341 (Bankr. W.D. Tex. 2025) (citation omitted). "If a [debtor in possession] assumes an executory contract . . ., meaning the parties are bound to continue performing under the contract, *any liability under the contract is typically treated as an administrative expense*." *Id.* (emphasis original). Administrative expense priority is particularly appropriate where a debtor "enjoys the benefits of the contract pending assumption or rejection." *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010).

26.     Here, the Debtor Entities continued to accept the Advertising Terms post-petition by using Amazon's advertising services post-petition. Lightbourn Decl. ¶ 7; Exs. 1-2. Therefore,

the estate must be bound by the contractual obligations outlined in the Advertising Terms and promptly pay Amazon on its outstanding invoices.

27.     The second part of the test for administrative priority addresses whether the incurred expenses benefitted the estate, and, thus, were "necessary" costs. *See Whistler Energy*, 931 F.3d at 443. The benefit does not need equal the cost of the claim, as the case law recognizes that "the estate [may] also receive[] other less readily calculable benefits, such as the ability to continue to conduct business as usual." *Id.* (quoting *TransAmerican Nat. Gas Corp.*, 978 F.2d at 1420).

28.     Bankruptcy courts have recognized that advertising services benefit the estate— and thus qualify for administrative priority—by allowing debtors to gain exposure in the marketplace and increasing sales. *See, e.g.*, *In re CM Holdings, Inc.*, 264 B.R. 141, 151 (Bankr. D. Del. 2000) (allowing administrative priority claim for advertising services rendered on behalf of a prerecorded music retailer); *In re Stratmore*, 177 B.R. 312, 314 (Bankr. D. Neb. 1995) (finding that advertising services provided a "tangible benefit to the bankruptcy estate" of a debtor sole practitioner by allowing him to "gain exposure to new clients").

29.     Debtors' recently-filed Disclosure Statement impliedly recognizes Amazon's services benefitted the estate. Specifically, the Disclosure Statement acknowledges that "First Bands was a leading suppliers of aftermarket parts," including the "key product categories [of] brakes, filters, wipers, lights, pumps, and towing solutions." *See* ECF No. 3020 at 38. The company then expanded, acquiring other brands such as Carter and TRICO. *Id.* at 39. However, as of commencement of this case, Debtors' customer base included national commercial

retailers, specifically naming Amazon. *Id*. In other words, Debtors admit that Amazon's online store is a major source of business and thus generates revenue that benefits the estate.

30.     Additionally, as acknowledged in the Disclosure Statement, Debtors have "commenced a marketing and sale process for all of their assets." *Id*. at 52. Preparing an asset for sale necessarily involves building brand awareness and maintaining normal business operations to reach the best possible price for each asset. Amazon's post-petition advertising efforts benefitted the estate in that endeavor by providing broader exposure for the Debtor Entities and their Products and boosting sales for these entities, thus driving up their sale price. *See* Lightbourn Decl. ¶¶ 4, 7; Ex. 2.

31.     Debtors' Disclosure Statement also claims that Debtors' business efforts have focused on continuing service to original equipment manufacturer ("**OEM**") customers like Ford, General Motors, and Toyota, and they have reached an agreement on a weekly funding arrangement in support of such effort. *See* ECF No. 3020 at 39, 52. Debtors' Disclosure Statement recognizes that three of the Debtor Entities—Cardone, CWD, and Horizon—sell products both in the aftermarket and directly to OEM customers. *See id*. at 39 (recognizing that Centric Parts, StopTech, and Cardone sell products "both in the aftermarket and to OEMs"); *id*. at 77 (recognizing Horizon as "directly supplying primary OEM customers"). Thus, Amazon's post-petition advertising services also benefitted the estate by increasing awareness in the market and maintaining normal business operations for Cardone, CWD, and Horizon so that they may continue to serve OEM customers, thus generating additional revenue for the estate.

32.     Amazon provided a substantial benefit to the Debtor Entities and their estate, through its post-petition advertising services. Amazon, therefore, is entitled to an allowed

administrative expense claim for $540,443.99, the full amount owed by the Debtor Entities pursuant to the Advertising Terms.

33.     For these reasons, Amazon requests that the Court allow the Post-Petition Administrative Claim in its entirety and direct that Debtors immediately pay such claims as Chapter 11 administrative expense claims against the Debtors' bankruptcy estates in the aggregate amount of $540,443.99 to Amazon. Amazon further requests that such allowance and payment of the Post-Petition Administration Claim be without prejudice to, and have no effect on, any other claims that Amazon holds or may acquire against the Debtors and their bankruptcy estates.

## NO PRIOR REQUEST

34.     No prior request for the relief sought herein has been requested by Amazon.

## PRAYER FOR RELIEF

WHEREFORE, Amazon respectfully requests that the Court enter an order: (1) allowing the Post-Petition Administrative Claim as an administrative expense against the Debtors in the aggregate amount of $540,443.99 under 11 U.S.C. § 503(b); (2) directing the Debtors to pay such allowed administrative claim to Amazon within thirty (30) days of the entry of an order granting this Motion; and (4) granting Amazon such other and further relief as is just and proper.

Respectfully submitted this 29th day of June, 2026.

DAVIS WRIGHT TREMAINE LLP

By:     _____
Lauren Dorsett, *admitted pro hac vice*
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone 206.757.8205
Fax 206.757.7205
laurendorestt@dwt.com
*Counsel for Amazon Advertising LLC*

10

## CERTIFICATE OF SERVICE

I hereby certify that this Motion and declarations, with exhibits, filed in support of the Motion, is being served electronically via CM/ECF on all parties that have filed a request for service of notices in this case.

Additionally, I hereby certify that this Motion and declarations, with exhibits, filed in support of the Motion, is being served on: (i) counsel for the Debtors; (ii) counsel for the Official Committee of Unsecured Creditors by e-mail; and (iii) the Office of The United States Trustee, as follows:

Counsel for Debtors by Mail and E-Mail:

Weil, Gotshal & Manges LLP
Attn: Gabriel A. Morgan, Clifford W. Carlson
700 Louisiana Street, Suite 3700
Houston, TX 77002
gabriel.morgan@weil.com
clifford.carlson@weil.com

Weil, Gotshal & Manges LLP
Attn: Matthew S. Barr, Sunny Singh, Andriana Georgallas,
Jason H. George, Kevin Bostel
767 Fifth Avenue
New York, NY 10153
matt.barr@weil.com
sunny.singh@weil.com
andriana.georgallas@weil.com
kevin.bostel@weil.com
jason.george@weil.com

Counsel for the Official Committee of Unsecured Creditors by Mail and E-Mail:

Brown Rudnick LLP
Attn: Robert J. Stark, Jeffrey L. Jonas, Michael S. Winograd, Bennett S. Silverberg,
Kenneth J. Aulet, Andrew M. Carty, Elizabeth C. Castano
7 Times Square
New York, NY 10036
rstark@brownrudnick.com
jjonas@brownrudnick.com
mwinograd@brownrudnick.com
bsilverberg@brownrudnick.com

11

kaulet@brownrudnick.com
acarty@brownrudnick.com
ecastano@brownrudnick.com

Brown Rudnick LLP
Attn: Tristan G. Axelrod, Matthew A. Sawyer
One Financial Center
Boston, MA 02111
taxelrod@brownrudnick.com
msawyer@brownrudnick.com

Cole Schotz P.C.
Attn: Seth Van Aalten, Justin R. Alberto, Ian R. Phillips, Justin Alberto
901 Main Street, Suite 4120
Dallas, TAX 75202

The Office of The United States Trustee by Mail and E-Mail:

Office of the United States Trustee
Attn: Jayson B. Ruff
515 Rusk Street, Suite 3516
Houston, TX 77002
jayson.b.ruff@usdoj.gov


By:    _____
                    Lauren Dorsett