**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**MOTION OF DEBTORS FOR AN ORDER**
**(I) DIRECTING TRUSTEE TO TURN OVER AND DELIVER**
**TRUST ASSETS TO THE DEBTORS, (II) AUTHORIZING THE**
**DEBTORS TO EXERCISE OWNERSHIP RIGHTS OVER SUCH ASSETS,**
**(III) AUTHORIZING TERMINATION OF TRUST, (IV) AUTHORIZING**
**TERMINATION OF DEFERRED COMPENSATION PLAN EFFECTIVE**
**AS OF PETITION DATE, AND (V) GRANTING RELATED RELIEF**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

First Brands Group, LLC ("**FBG**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows:

**Relief Requested**

1.      Pursuant to sections 105(a), 363(b), 541, and 542 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6004 of the Federal Rules of Bankruptcy

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Procedure (the "**Bankruptcy Rules**"), the Debtors request entry of an order (i) authorizing and directing the Trustee (as defined below) to transfer the Trust Assets (as defined below) to the Debtors' estates, (ii) authorizing the Debtors to exercise their ownership rights over the Trust Assets, (iii) authorizing the Debtors and the Trustee to terminate the Trust and discharge all of the Trustee's obligations to the Trust after all of the Trust Assets have been transferred to the Debtors, (iv) authorizing the Debtors to terminate the Deferred Compensation Plan (as defined below) retroactive to the Petition Date (as defined below), and (v) granting related relief.

2.     A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

3.     A declaration of Nicholas Haughey, Managing Director at Alvarez & Marsal North America LLC, in support of the relief requested in the Motion is annexed hereto as **Exhibit B** (the "**Haughey Declaration**").

## Background

4.     On September 24, 2025, Global Assets LLC and 12 of the Debtors in the above-captioned chapter 11 cases each commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  Commencing on September 28, 2025 (the "**Petition Date**"), FBG and the remaining Debtors each commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed in these chapter 11 cases.

5.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

6. On October 9, 2025, the Office of the United States Trustee for the Southern District of Texas appointed the Official Committee of Unsecured Creditors (Docket No. 313).

7. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (Docket No. 22), filed on September 29, 2025 and incorporated herein by reference.

## Jurisdiction

8. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Nonqualified Deferred Compensation Plan

9. FBG sponsors the First Brands Group LLC Deferred Compensation Plan, a nonqualified deferred compensation plan (the "**Deferred Compensation Plan**"), administered by Principal Life Insurance Company. Under the Deferred Compensation Plan, participants (each, a "**Participant**" and collectively, "**Participants**") may elect to defer a portion of their compensation, and the Company (as defined below) may make an employer credit to a Participant's account. However, based on the Debtors' historical practices, Participants were not allowed to defer compensation under the Deferred Compensation Plan and only employer credits were made to "notional" accounts of the Participants. The "notional" account for each Participant tracks the employer credits and credits such account with gains and losses based on hypothetical investments.

10. The Deferred Compensation Plan was created and maintained for the purpose of providing deferred compensation to select members of management or highly compensated employees of FBG and participating affiliates (collectively, the "**Company**") under

3

Title I of the Employee Retirement Income Security Act of 1974 ("**ERISA**") on an unfunded basis. Specifically, the Deferred Compensation Plan is an unfunded, non-tax qualified deferred compensation plan that is intended to (i) comply with the requirements of section 409A of the Internal Revenue Code of 1986 ("**IRC**"), as amended, and (ii) qualify for the exemptions provided under sections 201(2), 301(a)(3), and 401(a)(1) of ERISA, as amended. *See* Deferred Compensation Plan §§ 1, 2.21. Under the express terms of the Deferred Compensation Plan, FBG may terminate the Deferred Compensation Plan any time in its sole discretion, subject to section 409A of the IRC. *See* Deferred Compensation Plan § 14.1.

### Rabbi Trust

11. The Debtors maintain a "rabbi trust" (the "**Trust**") with Delaware Charter Guarantee & Trust Company, conducting business as Principal Trust Company, as trustee (the "**Trustee**"), for the benefit of the Participants pursuant to that certain *Rabbi Directed Trust Agreement for the First Brands Group LLC Deferred Compensation Plan* (the "**Trust Agreement**"). The assets of the Trust consist primarily of cash and cash equivalents as a means to fund the Debtors' obligations under the Deferred Compensation Plan.

12. The Trust Agreement provides that the assets of the Trust (the "**Trust Assets**") remain the property of the Company and that the rights of the Participants to benefits provided by the Deferred Compensation Plan and the Trust Assets do not exceed those of a general creditor of the Company in the event of the Company's bankruptcy. Specifically, the Trust is intended to be a "grantor" trust pursuant to which Participants have no preferred claim on, or any beneficial ownership interest in, any assets of such trust.

13. Section 1.4 of the Trust Agreement provides in pertinent part that:

> Plan participants and their beneficiaries shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust. Any rights

4

created under the Plan and this Agreement shall be mere unsecured contractual rights of Plan participants and their beneficiaries against the Employer. Any assets held by the Trust will be subject to the claims of the Employer's general creditors under federal and state law in the event of Insolvency, as defined in Section 9.1 herein.

14.     Pursuant to Section 9.1 of the Trust Agreement, upon receipt of the requisite written notice that the Company is insolvent, as defined in the Trust Agreement, the "Trustee shall cease payment of benefits to Plan participants and their beneficiaries." *See* Trust Agreement § 9.1. Section 10.2 of the Trust Agreement further provides that "[u]pon termination of the Trust, any remaining assets less any outstanding Trust fees and expenses shall be returned to the Employer." *See* Trust Agreement § 10.2.

15.     On October 16, 2025, a written notice of insolvency was sent to the Trustee at the direction of the Company.  Thus, due to the filing of the above-captioned chapter 11 cases, the Trust Assets can no longer be used to pay benefits to the Participants but must be held by the Trustee for the benefit of the Company's general creditors.

16.     As of the date hereof, there is approximately $3.8 million of assets in the Trust, and the cost of transferring the Trust Assets is expected to be de minimis.  Thus, the return of the Trust Assets to the Debtors' estates will provide the Debtors with substantial funds and liquidity for the benefit of their estates and creditors.

## Relief Requested Should Be Granted

**A.     The Trust Assets Constitute Property of the Debtors' Estates.**

17.     Section 541 provides that the "estate is comprised of all the following property, wherever located and by whomever held: . . . all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)-(a)(1).  The definition is intended to be broadly construed.  *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983) (holding that 541(a)(1) defines what is included in the estate and encompasses any property

made available to the estate by other provisions of the Bankruptcy Code); *see also Ga. Pac. Corp. v. Sigma Serv. Corp.,* 712 F.2d 962, 967–68 (5th Cir. 1983) (holding that, where the estate had a legal interest in property, the property was required to be turned over to enable the bankruptcy court to decide entitlement to sum); *see generally* Analysis of H.R. 8200, H.R. Rep. No. 595, 95th Cong. 1st Sess. 367–68 (1977) (noting that the scope of section 541(a)(1) is broad and was intended to include any property made available to the estate by other provisions of the Bankruptcy Code).

18.     Pursuant to section 541 of the Bankruptcy Code, because the Trust Agreement explicitly states the Trust Assets are subject to the claims of the Company's creditors and the Participants do not have a preferred claim to the Trust Assets, the Trust Assets are property of the Debtors' estates.  *See, e.g.*, *Accardi v. IT Litig. Tr.* (*In re IT Grp., Inc.*), 448 F.3d 661, 669–70 (3d Cir. 2006), *as amended* (July 10, 2006) (stating that rabbi trust beneficiaries' claims to deferred amounts are *pari passu* with company's general unsecured creditors); *Bank of Am., N.A. v. Moglia*, 330 F.3d 942, 944 (7th Cir. 2003) (affirming bankruptcy court decision that trust corpus was included in property of the bankruptcy estate); *Goodman v. Resol. Tr. Corp.*,7 F.3d 1123, 1124 (4th Cir. 1993) (affirming the ruling that the company had the right under the terms of its trust agreements to recover trust assets in order to satisfy claims of creditors); *Korneff v. Downey Reg'l Med. Ctr.-Hosp., Inc. (In re Downey Reg'l Med. Ctr.-Hosp., Inc.)*, 441 B.R. 120, 130–31 (B.A.P. 9th Cir. 2010) (finding that deferred compensation plan trust assets were not beyond the reach of the company's general unsecured creditors and were therefore property of the bankruptcy estate); *In re Washington Mut., Inc.*, 450 B.R. 490, 502–03 (Bankr. D. Del. 2011) (concluding that the unfunded nature of a "top hat" deferred compensation plan prevents imposition of a constructive trust because "there is no nexus or property identifiably belonging to the [p]lan [p]articipants on

which a constructive trust can be placed"); *Synovus Tr. Co., N.A. v. Bill Heard Enters., Inc.* (*In re Bill Heard Enters., Inc.)*, 419 B.R. 858, 866 (Bankr. N.D. Ala. 2009) (ruling that rabbi trust and all assets contained therein are property of the bankruptcy estate); *Collins & Aikman Corp. v. N. Tr. Bank of Cal., N.A.* (*In re Collins & Aikman Corp.)*, 2006 WL 2310798 at *3 (Bankr. E.D. Mich. Aug. 9, 2006) (ruling that life insurance policies in a rabbi trust are property of the estate).

19.     Given all of the Trust Assets are property of the Debtors' estates, the Trustee should be authorized and directed to turn over such assets to the Debtors pursuant to section 542 of the Bankruptcy Code.  *See Collins*, 2006 WL 2310798, at *3 (ruling that the debtor was entitled to assets held in a rabbi trust pursuant to section 542(a)).

20.     Section 542 of the Bankruptcy Code provides, in relevant part, that

> [An] entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . . shall deliver to the trustee, and account for, such property or the value of such property[.]

11 U.S.C. § 542(a–c).

21.     Section 542(a) provides that entities, other than a custodian, having possession, custody, or control of property that belongs to the debtor must turn over such property. Section 101(11) of the Bankruptcy Code defines custodian as a:

(a)     receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;

(b)     assignee under a general assignment for the benefit of the debtor's creditors; or

(c)     trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11).

7

22.     The Trustee does not qualify as a custodian under section 101(11) because the Trustee is not a trustee, receiver, nor agent appointed or authorized by this Court to take charge of property of the Debtors.   Moreover, the Trust Agreement does not authorize the Trustee to take charge of the Debtors' property for the purpose of enforcing a lien against Trust Assets or to generally administer the Trust Assets for the benefit of the Debtors' creditors.   *Id*.   Thus, the Trustee is required to deliver the Trust Assets to the Debtors.

23.     Further, even if the Trustee did qualify as a custodian, section 543(b)(1) requires a custodian in possession or control of any property of the debtor to deliver the property to such debtor if: (i) the custodian has custody, possession or control of the property; and (ii) such property is the property of the debtor.   *Sovereign Bank v. Schwab*, 414 F.3d 450, 454 (3d Cir. 2005).   It is undisputed that the Trustee has custody of the Trust Assets, and, as discussed above, the Trust Assets are property of the estate.   Therefore, even assuming the Trustee is a custodian, the Trustee is still required to turn over the Trust Assets to the Debtors.

**B.     The Debtors' Decision to Exercise Their Ownership Rights Over the Trust Assets Is an Exercise of Sound Business Judgment and Is in the Best Interests of Their Estates and Creditors.**

24.     Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing.  11 U.S.C. § 363(b)(1).  The Fifth Circuit recognizes that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so.  *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re ASARCO LLC*, 441

8

B.R. 813, 830 (Bankr. S.D. Tex. 2010); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (N.D. Tex. 2005).  Section 105(a) of the Bankruptcy Code, in turn, authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

25.　　The Debtors respectfully submit that the decision to exercise their ownership rights over the Trust Assets at this time represents a valid exercise of the Debtors' business judgment, is undertaken in good faith and is in the best interest of the Debtors, their estates, and creditors.  The transfer of Trust Assets to the Debtors will lead to a cash benefit of approximately $3.8 million.   Taking action to secure ownership rights over the Trust Assets falls squarely within the Debtors' rights under the Trust Agreement and such funds should be made available for general use by the Debtors, including to allow the Debtors to continue to prosecute these chapter 11 cases for the benefit of the Debtors' creditors.

26.　　Other courts have granted similar relief as sought in this Motion.  *See, e.g.*, *In re Steward Health Care System LLC*, No. 24-90213 (CML) (Bankr. S.D. Tex. April 2, 2025) (Docket No. 4418); *In re Phoenix Services Topco, LLC*, No. 22-10906 (MFW) (Bankr. D. Del. Feb. 24, 2023) (Docket No. 567); *In re Randolph Hospital, Inc. d/b/a Randolph Health*, No. 20-10247 (LMJ) (Bankr. M.D.N.C. Oct. 13, 2022) (Docket No. 1274); *In re Century 21 Department Stores LLC*, No. 20-12097 (SCC) (Bankr. S.D.N.Y. Dec. 16, 2020) (Docket No. 342); *In re RTI Holding Co., LLC*, No. 20-12456 (JTD) (Bankr. D. Del. Nov. 19, 2020) (Docket No. 571); *In re The PMI Grp., Inc.*, No. 11-13730 (BLS) (Bankr. D. Del. Feb. 19, 2013) (Docket No. 760); *In re Washington Mut. Inc.*, No. 08-12229 (MFW) (Bankr. D. Del. June 1, 2011) (Docket No. 7836-1); *In re BearingPoint, Inc.*, No. 09-10691 (REG) (Bankr. S.D.N.Y. May 6, 2010) (Docket No. 1825);

9

*In re Am. Home Mortg. Holdings, Inc.*, No. 07-11047 (CSS) (Bankr. D. Del. Nov. 7, 2007) (Docket No. 1840). Similar relief is appropriate here.

**C.      The Debtors Should be Authorized to Terminate the Deferred Compensation Plan and the Trust Pursuant to Section 363(b) of the Bankruptcy Code.**

27.      Terminating the Deferred Compensation Plan and the Trust is also a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors' estates. The Debtors are in the process of liquidating their assets in chapter 11 and have filed a chapter 11 plan of liquidation (Docket No. 3019) providing for an orderly wind down of their estates. The Debtors, therefore, no longer have a need for continuing the Deferred Compensation Plan or the Trust.

28.      Accordingly, the Debtors submit that the relief requested with respect to terminating the Deferred Compensation Plan and the Trust is a valid exercise of the Debtors' business judgment, and that terminating the Deferred Compensation Plan and the Trust is in the best interests of the Debtors and their estates.

29.      Courts have similarly permitted debtors to terminate deferred compensation plans and trusts in chapter 11 according to their terms. *See, e.g.*, *In re Steward Health Care System LLC*, No. 24-90213 (CML) (Bankr. S.D. Tex. May 7, 2024) (Docket No. 86); *Basic Energy Services, Inc.*, No. 21-90002 (DRJ) (ECF No. 44) (authorizing termination of deferred compensation plan effective as of the petition date and deeming post-petition deferred compensation to be an administrative expense claim); *In re Brooks Brothers Group, Inc.*, No. 20-11785 (CSS) (ECF No. 275) (same); *In re The NORDAM Group, Inc.*, No. 18-11699 (MFW) (Bankr. D. Del. Aug. 23, 2018) (ECF No. 192) (same); *In re Westinghouse Elec. Co. LLC*, No. 17-10751 (MEW) (Bankr. S.D.N.Y. Sept. 12, 2017) (ECF No. 1350) (same); *In re Alpha Nat. Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. June 1, 2016) (ECF No. 2587) (approving termination of supplemental benefit plans and directing return of trust funds to the debtors' estates); *In re*

*Patriot Coal Corp.*, No. 12-51502 (Bankr. E.D. Mo. Mar. 15, 2013) (ECF No. 3228) (authorizing debtor to terminate nonqualified deferred compensation plan and service agreement); *In re The PMI Group, Inc.*, No. 11-13730 (BLS) (Bankr. D. Del. Feb. 19, 2013) (ECF No. 760) (authorizing termination of deferred compensation plan according to its terms and return of trust assets).

**Reservation of Rights**

30.     Nothing contained herein is intended to be or shall be construed as (i) an implication or admission as to the validity of any claim against the Debtors, (ii) an agreement or obligation to pay any claims, (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (iv) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, (v) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, or (vi) an approval, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

**Debtors' Compliance with**
**Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)**

31.     To implement the foregoing successfully, the Debtors request that the Court waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above, the relief requested herein will provide the Debtors with substantial funds and liquidity for the benefit of their estates and creditors.  Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have

been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## Notice

32.     Notice of this Motion will be served on the Participants, any party entitled to notice pursuant to Bankruptcy Rule 2002, and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## No Previous Request

33.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

12

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 1, 2026
      Houston, Texas

                                      */s/  Clifford W. Carlson*
                                    WEIL, GOTSHAL & MANGES LLP
                                    Gabriel A. Morgan (24125891)
                                    Clifford W. Carlson (24090024)
                                    700 Louisiana Street, Suite 3700
                                    Houston, Texas 77002
                                    Telephone:  (713) 546-5000
                                    Facsimile:  (713) 224-9511
                                    Email:   gabriel.morgan@weil.com
                                                clifford.carlson@weil.com

                                    -and-

                                    WEIL, GOTSHAL & MANGES LLP
                                    Matthew S. Barr (admitted *pro hac vice*)
                                    Sunny Singh (admitted *pro hac vice*)
                                    Andriana Georgallas (admitted *pro hac vice*)
                                    Kevin Bostel (admitted *pro hac vice*)
                                    Jason H. George (admitted *pro hac vice*)
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone:  (212) 310-8000
                                    Facsimile:  (212) 310-8007
                                    Email:   matt.barr@weil.com
                                                sunny.singh@weil.com
                                              andriana.georgallas@weil.com
                                              kevin.bostel@weil.com
                                              jason.george@weil.com

                                    *Attorneys for Debtors*
                                    *and Debtors in Possession*

13

**<u>Certificate of Service</u>**

I hereby certify that on July 1, 2026 a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

_/s/  Clifford W. Carlson_
Clifford W. Carlson