**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST BRANDS GROUP, LLC, et al., | Case No. 25-90399 (CML) |
| Debtors.[1] | Jointly Administered |
| | **Ref. Docket No. 3055** |

**OBJECTION OF MAPLAN GMBH AND MACHINERY + PLANNING INC.
TO EMERGENCY MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING
THE SALE OF ASSETS OF THE JASPER RUBBER BUSINESS TO
JASPER ACQUISITION CO., LLC, AND (B) GRANTING RELATED RELIEF**

Maplan GmbH and Machinery + Planning Inc. (collectively, "MAPLAN") hereby object to

the *Emergency Motion for Order (A) Authorizing the Sale of Assets of the Jasper Rubber Business to*

*Jasper Acquisition Co., LLC, and (B) Granting Related Relief* [Docket No. 3055] (the "Sale Motion").

**FACTUAL BACKGROUND**

1.     MAPLAN, headquartered in Austria, is a leading producer of elastomer injection

molding machines and an expert in 360-degree system solutions for the semi- and fully-automated

production of rubber and silicone products.

2.     MAPLAN holds title to three MAPLAN horizontal injection presses and related

auxiliary equipment (the "Equipment") that MAPLAN understands is currently located at Jasper

Rubber Products, Inc.'s ("Jasper") facility at 1010 First Avenue, Jasper, Indiana 47546 (the

"Indiana Facility").

3.     The Equipment was designed, engineered, and manufactured by MAPLAN at its

facility in Kottingbrunn, Austria, and sold to Jasper pursuant to multiple purchase orders issued by

Jasper to MAPLAN. The applicable contractual documentation comprises MAPLAN quotations

1

and order confirmations, Jasper purchase orders, and MAPLAN's General Terms of Delivery (collectively, the "MAPLAN Contracts").

4.      The Equipment includes horizontal injection presses, 48-cavity molds, cold runner blocks, and related auxiliary equipment and spare parts for the P-Ring Double Deck Project. The aggregate amount due from Jasper for delivered goods, including duties and tariffs paid by MAPLAN for Jasper, is $1,758,781. MAPLAN has received only $479,277, representing principally the initial 30% deposit installments, and $1,279,504 remains outstanding.

5.      The following table identifies the part number, model description, and price for each item of Equipment delivered to Jasper Rubber:

| MAPLAN part no. | Jasper PO Number | Equipment Delivered to Jasper | PO Value |
|---|---|---|---|
| 22404087 | 132757 | 24+24 cavity mold | $ 84,400 |
| 22404088 | 132757 | 24+24 cavity mold | $ 84,400 |
| 22404090 | 132757 | 24+24 cavity mold | $ 84,400 |
| 22404083 | 132759 | MAP.crb split 4+4 nozzle | $ 43,800 |
| 22404084 | 132759 | MAP.crb split 4+4 nozzle | $ 43,800 |
| 22404086 | 132759 | MAP.crb split 4+4 nozzle | $ 43,800 |
| 22404079 | 132760 | RAPID+ 700R/300 | $ 404,330 |
| 22404080 | 132760 | RAPID+ 700R/300 | $ 404,330 |
| 22404081 | 132760 | RAPID+ 700R/300 | $ 404,330 |
| | | Total PO Value of Goods delivered: | $1,597,590 |
| | | Import duty and steel tariff paid by MAPLAN for Jasper on goods delivered: | $ 161,191 |
| | | Total due from Jasper for goods delivered: | $ 1,758,781 |
| | | Down payment received for goods delivered: | $ 479,277 |
| | | Total outstanding for goods delivered: | $ 1,279,504 |

6.      MAPLAN's General Terms of Delivery, which govern the sale to Jasper, provide that MAPLAN shall retain title until the purchase price has been paid in full. *See* General Terms of Delivery, Article 8.1 ("The goods shall remain the sole and absolute property of SELLER as

legal and equitable owner until such time as any amount outstanding in terms of this agreement has been paid, irrespective of the fact that the sold machinery and equipment has been handed over to the BUYER."). Article 8.4 further provides that MAPLAN may enter premises where the goods are stored and repossess them, subject to the automatic stay and any required Bankruptcy Court authorization.

7.     The MAPLAN Contracts provide that they are governed by Austrian law, excluding the CISG and conflict-of-laws principles, and that disputes are subject to ICC arbitration in Vienna. Under Austrian law, MAPLAN understands that a retention-of-title clause (*Eigentumsvorbehalt*) preserves the seller's ownership until full payment and does not require registration to be effective against the buyer or parties claiming through the buyer; MAPLAN is prepared to submit competent evidence of Austrian law if the issue is contested.

8.     During these chapter 11 cases, MAPLAN learned that Onset Financial, Inc. ("Onset") has asserted that it owns the Equipment based on alleged sale-and-leaseback and progress-payment arrangements involving Jasper and Trico Products Corporation. MAPLAN did not sign, consent to, or acknowledge Onset's progress-payment certificates and has never authorized Jasper, Trico, Onset, or any other party to transfer any ownership interest in the Equipment free and clear of MAPLAN's retained title. Onset's own UCC filings, moreover, describe its lease filings as "precautionary and informational" and state that the parties do not believe the lease is subject to UCC Article 9.

9.     The Sale Motion and Purchase Agreement do not make clear whether the Debtors intend to sell the Equipment, any MAPLAN software rights, or any MAPLAN Contract. Because the relevant Disclosure Schedules have not been made public to MAPLAN, MAPLAN cannot determine whether the Debtors or Buyer contend that the Equipment, MAPLAN software, or

MAPLAN Contracts are included in the Transferred Assets. The Purchase Agreement also sweeps in, among other things, tangible personal property located at the Transferred Owned Real Property, personal property subject to leases between Sellers and Onset, rights "if any" in property purchased subject to conditional sales or title-retention agreements, "Business Systems," "Business Technology," and contracts designated by the Buyer for assumption and assignment.

10.     The proposed Sale Order would go further by finding that the Transferred Assets are property of the Debtors' estates or transferable interests owned by the Debtors, authorizing the transfer of all such assets free and clear, enjoining parties from interfering with the Buyer's title or use, giving the Buyer good-faith purchaser protections, waiving the stay under Bankruptcy Rule 6004(h), and providing that the Sale Order overrides contrary prior orders and agreements. Those requested findings and injunctions should not be entered as to MAPLAN, the Equipment, the MAPLAN Contracts, or MAPLAN's software and related rights absent specific evidence, asset-level notice, and an express carve-out preserving MAPLAN's rights.

11.     The Equipment cannot operate without MAPLAN's proprietary control software. MAPLAN has not had access to the Equipment for approximately one year, the Equipment is currently non-operational, and any safe repurposing would require MAPLAN engineering support, new or revised software, recalibration, and access to MAPLAN-held security credentials. MAPLAN has no obligation to activate software, provide security credentials, supply spare parts or technical support, or consent to any transfer absent assumption of the applicable MAPLAN Contracts in full, including payment of all outstanding amounts.

**OBJECTION**

12.     MAPLAN objects to the Sale Motion on four principal grounds. First, the Debtors have not shown that the Equipment is property of the estate, that they may sell more than whatever

4

limited rights, if any, a Debtor holds, or that section 363(f) permits a sale free and clear of MAPLAN's retained title, contract rights, software rights, or claims. MAPLAN does not consent, does not concede that its retained title is a lien or other strippable interest, and has not been given an asset-specific showing under any subsection of section 363(f). Second, the Debtors may not assume or assign the MAPLAN Contracts without curing all defaults, compensating MAPLAN for pecuniary losses, and providing adequate assurance of future performance. Third, MAPLAN's non-exclusive software license and related support rights may not be assumed or assigned without MAPLAN's consent. Fourth, any order approving a sale must expressly preserve MAPLAN's rights and omit findings or injunctions that would adjudicate title, validate Onset's asserted interest, or impair MAPLAN's claims and defenses without the required procedural protections and a full evidentiary record.

I. **The Debtors May Not Sell the Equipment Without First Establishing That It Is Property of the Estate or Otherwise a Transferable Debtor Interest**

13. Section 363(b) permits a debtor to sell only property of the estate outside the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b). Estate property includes only "legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), and the estate generally succeeds only to the interests the debtor held as of the petition date. *See In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) (holding that, although the question of whether an interest is "property of the estate" is a matter of federal law, courts look to state law to determine whether and to what extent the debtor has any legal or equitable interest in the property as of the petition date) (citing *Butner v. United States*, 440 U.S. 48, 54–55 (1979)).

14. The Debtors bear the burden of proving that specific property is property of the estate. *In re TMT Procurement Corp.*, 764 F.3d 512, 523 (5th Cir. 2014) ("The party seeking to

include property in the estate bears the burden of showing that the item is property of the estate.")

(quoting *In re Klein–Swanson*, 488 B.R. 628, 633 (8th Cir. BAP 2013)). A sale order therefore

should not adjudicate or transfer MAPLAN's asserted ownership absent a threshold determination,

on an adequate record and with appropriate procedural safeguards, that the Debtors own the

Equipment or hold a transferable interest in it.

15. The present record does not support such a finding. The MAPLAN Contracts

provide that MAPLAN retained title until all amounts outstanding were paid, regardless of

delivery. Jasper has paid only a portion of the purchase price, and MAPLAN has not waived,

modified, or released its retention-of-title rights. Onset's asserted ownership claim does not cure

the Debtors' evidentiary gap: MAPLAN has no privity with Onset, did not consent to Onset's

documents, and never authorized any transfer of title to Onset. At most, the Sale Motion reveals

an unresolved dispute among MAPLAN, Onset, and potentially the Debtors over what, if anything,

the Debtors can transfer in the Equipment and related software and contract rights; it does not

establish that the Equipment itself is property of the estate.

16. Nor have the Debtors satisfied section 363(f). MAPLAN does not consent to any

sale free and clear of its title, contract rights, software rights, or claims. The Sale Motion relies

generally on consent, deemed consent, and the possibility that certain interests could be compelled

to accept monetary satisfaction, but it does not identify MAPLAN's rights, show that MAPLAN

received adequate asset-specific notice, establish that MAPLAN's ownership is a lien or other

interest subject to stripping, prove that any subsection of section 363(f) applies to MAPLAN, or

demonstrate that MAPLAN could be compelled to accept monetary satisfaction of its asserted

ownership and nonassignable software rights. Even if MAPLAN's retained-title rights were

characterized for U.S. bankruptcy purposes as a lien or other interest in property, the Debtors have

not established the statutory predicates for any free-and-clear relief. Those omissions preclude any free-and-clear relief as to MAPLAN absent an express carve-out preserving MAPLAN's title, contract rights, software rights, claims, defenses, and remedies.

17. Any order approving a sale must therefore be limited to the Debtors' right, title, and interest, if any, in the Equipment and must expressly provide that nothing in the Sale Motion, Purchase Agreement, Sale Order, or any transfer document sells, assigns, releases, enjoins, or adjudicates MAPLAN's ownership, retention-of-title rights, software rights, contract rights, arbitration rights, claims, defenses, or remedies. Without that carve-out, the proposed findings would improperly decide a title dispute and impair MAPLAN's property and contract rights without the procedural protections required to determine the validity, priority, or extent of MAPLAN's interests.

## II. The Debtors May Not Assume or Assign the MAPLAN Contracts Absent Cure, Compensation, and Adequate Assurance

18. Because the relevant Disclosure Schedules have not been made public to MAPLAN, MAPLAN cannot determine whether the Debtors intend to designate any MAPLAN Contract as a Transferred Contract or Transferred Executory Contract. The ambiguity is material because the Purchase Agreement appears to permit the Buyer to designate executory contracts shortly before closing, treats Buyer-designated contracts as Transferred Executory Contracts, and requires Buyer to pay Cure Costs, while non-designated contracts become Excluded Contracts. MAPLAN reserves all rights to object to any late-filed assumption-and-assignment notice involving the MAPLAN Contracts.

19. A debtor may assume an executory contract only if it cures, or provides adequate assurance that it will promptly cure, all defaults; compensates, or provides adequate assurance that

7

it will promptly compensate, the counterparty for actual pecuniary loss resulting from those defaults; and provides adequate assurance of future performance. 11 U.S.C. § 365(b)(1). A debtor seeking to assign an assumed contract must also provide adequate assurance of future performance by the assignee. 11 U.S.C. § 365(f)(2)(B). These requirements apply contract-by-contract and cannot be satisfied through a generic sale finding.

20.     A contract is executory if "performance remains due to some extent on both sides" and failure of either party to complete performance would constitute a material breach excusing the other party's performance. *Matter of Provider Meds, L.L.C.*, 907 F.3d 845, 851 (5th Cir. 2018) (quoting *Phoenix Exploration, Inc. v. Yaquinto (In re Murexco Petroleum, Inc.)*, 15 F.3d 60, 62–63 (5th Cir. 1994)).

21.     To the extent the Debtors contend that any MAPLAN Contract is executory and seek to assume or assign it, they must satisfy section 365 contract by contract. Jasper remains obligated to pay the outstanding purchase price and related amounts, and MAPLAN's remaining material obligations include warranty, software, service, inspection, calibration, support, and obligations tied to the Equipment and MAPLAN's proprietary systems. The Buyer cannot take the benefits of MAPLAN's sale documents, warranties, software, or support while leaving MAPLAN with an unpaid purchase price and no adequate assurance that the MAPLAN Contracts will be performed in full.

22.     Accordingly, absent payment in full of all outstanding amounts, compensation for MAPLAN's resulting pecuniary losses, and adequate assurance of future performance by the Buyer and any Buyer Designee, the Debtors may not assume or assign the MAPLAN Contracts. At minimum, any assumption-and-assignment notice must identify each MAPLAN Contract, state the proposed cure amount, disclose any proposed Buyer Designee, provide evidence of the

assignee's ability to satisfy all monetary and non-monetary obligations, and preserve MAPLAN's right to object.

23.     The Sale Motion's existing adequate-assurance showing is insufficient as to MAPLAN. The Purchase Agreement states that the Buyer will have access to sufficient funds and that Press-Seal Corporation guarantees certain payment obligations, but MAPLAN has not been provided evidence that the Buyer or any Buyer Designee can perform MAPLAN-specific obligations, safely operate or maintain the Equipment, obtain necessary software and calibration support, comply with MAPLAN's nonassignable license restrictions, or satisfy the full cure obligations owed to MAPLAN.

## III.     The Debtors May Not Assume or Assign MAPLAN's Software License or Related Intellectual Property Rights Without MAPLAN's Consent

24.     Section 365(c)(1) provides that a debtor may not assume or assign an executory contract if applicable law excuses the non-debtor counterparty from accepting performance from or rendering performance to an entity other than the debtor or debtor in possession and the counterparty does not consent. 11 U.S.C. § 365(c)(1). That rule applies to non-exclusive intellectual property licenses, including non-exclusive software licenses where applicable nonbankruptcy law excuses the licensor from accepting performance from or rendering performance to a third party. *See In re Virgin Offshore USA, Inc.*, No. CIV.A. 13-79, 2013 WL 4854312, at *4 (E.D. La. Sept. 10, 2013) (noting that it is well-settled that nonexclusive intellectual property licenses do not give rise to ownership rights and cannot, as a matter of law, be assigned without the consent of the licensor.") (quoting *In re Golden Books Family Entm't, Inc.*, 269 B.R. 300, 310 (Bankr. D. Del. 2001); *In re CFLC, Inc.*, 174 B.R. 119 (N.D.Cal.1994) *aff'd,* 89 F.3d 673 (9th Cir.1996) (same)).

25.     MAPLAN's order confirmation grants only a non-exclusive, territorially limited, revocable right to use MAPLAN's control software during the retention-of-title period. Any sale order must therefore make clear that neither the Debtors nor the Buyer may assume, assign, sublicense, transfer, compel performance under, or otherwise use MAPLAN's software rights without MAPLAN's express consent.

26.     MAPLAN does not consent to any assumption, assignment, sublicense, transfer, or use of its software license or related intellectual property rights by the Buyer, any Buyer Designee, Onset, or any other third party absent payment in full of all outstanding amounts and MAPLAN's express written consent. MAPLAN likewise has no obligation to activate software, provide security credentials, issue replacement safety certifications, perform recalibration, supply spare parts, or provide technical support for the Equipment for the benefit of any third party.

**IV.     The Proposed Sale Order Must Preserve MAPLAN's Rights and Should Not Grant Overbroad Free-and-Clear, Good-Faith, or Anti-Interference Findings**

27.     The proposed Sale Order would find that the Transferred Assets are estate property or transferable debtor interests, vest the Buyer with all of the Debtors' right, title, and interest free and clear, bar parties from interfering with the Buyer's title or use, bind all creditors and contract counterparties, override contrary prior orders or agreements, and waive the Rule 6004(h) stay. Those findings would prejudice MAPLAN if applied to the Equipment, the MAPLAN Contracts, MAPLAN's software, or MAPLAN's claims and defenses before the Court determines what the Debtors actually own and what section 363(f), if anything, permits them to transfer.

28.     The Debtors also have not made a record sufficient to support any section 363(m) finding that would cut off MAPLAN's title, software, contract, appellate, or other remedies. At minimum, the Buyer and Onset were on notice of MAPLAN's retained-title and software positions

before the Sale Motion, the Purchase Agreement excludes liabilities related to the Onset Complaint, and Onset is identified as having consented to the Sale Transaction even while MAPLAN disputes Onset's asserted ownership. The Court should not enter findings that could insulate the transfer of disputed MAPLAN property, or deprive MAPLAN of appellate or other remedies, absent an express carve-out preserving MAPLAN's rights.

29.     Any order should require the Debtors and the Buyer to remove any ambiguity by disclosing, before any sale hearing or closing, whether the Equipment, MAPLAN software, or MAPLAN Contracts are included in the Transferred Assets, Transferred Contracts, Business Systems, Business Technology, or any Disclosure Schedule; excluding them unless and until MAPLAN's rights are resolved; and preserving MAPLAN's ability to seek relief from stay, adequate protection, arbitration, injunctive relief, damages, or any other remedy in an appropriate forum.

## RESERVATION OF RIGHTS

30.     MAPLAN reserves all rights to supplement this Objection before or at any hearing on the Sale Motion, including after the Debtors disclose the relevant Disclosure Schedules, any assumption-and-assignment notice, any proposed Buyer Designee, any cure amount, and any proposed form of order.

31.     Nothing in this Objection is intended, or should be construed, as a waiver by MAPLAN of any rights, claims, defenses, remedies, objections, or arguments under the MAPLAN Contracts, Austrian law, the Bankruptcy Code, the ICC Rules, applicable U.S. law, or equity, including rights concerning title, retention of title, software, intellectual property, nonassignability, cure, adequate assurance, arbitration, repossession, stay relief, preservation, inspection, access, damages, conversion, slander of title, tortious interference, or any proposed sale, assumption,

11

assignment, rejection, abandonment, settlement, or other disposition involving the Equipment, the MAPLAN Contracts, or MAPLAN's software or related rights.

## **CONCLUSION**

MAPLAN respectfully requests that the Court deny the Sale Motion as to the Equipment, the MAPLAN Contracts, MAPLAN's software, and MAPLAN's related rights unless and until the Debtors (i) disclose whether any such property or rights are included in the proposed Sale Transaction; (ii) establish, on an adequate record and after asset-specific notice and an opportunity to be heard, that the Debtors hold a transferable estate interest and that section 363(f) is satisfied as to MAPLAN; (iii) cure all defaults, compensate MAPLAN for pecuniary losses, and provide adequate assurance of future performance before any assumption or assignment; and (iv) obtain MAPLAN's express consent before any assumption, assignment, sublicense, transfer, or use of MAPLAN's non-exclusive software license or related intellectual property rights. If the Court approves the Sale Motion over this Objection, MAPLAN requests that any order condition approval on an express exclusion and carve-out preserving all MAPLAN rights, claims, defenses, and remedies. In the alternative, MAPLAN requests entry of an order expressly excluding the Equipment, the MAPLAN Contracts, MAPLAN's software, and all MAPLAN rights from the Transferred Assets and preserving all rights and remedies of MAPLAN.

Dated: July 1, 2026                                              Respectfully submitted,


By: */s/ Catherine E. Bratic*                        David P. Simonds (*pro hac vice* pending)
Catherine E. Bratic (Texas Bar No. 24087204)   Edward J. McNeilly (*pro hac vice* pending)
**HOGAN LOVELLS CADWALADER US LLP**          **HOGAN LOVELLS CADWALADER US LLP**
609 Main Street, Suite 4200                          1999 Avenue of the Stars, Suite 1400
Houston, TX 77002                                   Los Angeles, CA 90067
Tel.: (713) 632-1400                                 Tel.: (310) 785-4600
Fax: (713) 632-1401                                  Fax: (310) 785-4601
catherine.bratic@hlc.com                             david.simonds@hlc.com
                                                      edward.mcneilly@hlc.com


## CERTIFICATE OF SERVICE

I certify that on July 1, 2026, I caused a copy of the foregoing document to be served through the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                      */s/ Catherine E. Bratic*
                                                      Catherine E. Bratic

13