United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 02, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § § | **Chapter 11** |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § § § | **Case No. 25-90399 (CML)** |
| **Debtors.**[1] | § § § | **(Jointly Administered)** |

**ORDER AUTHORIZING AND APPROVING THE SALE OF ASSETS OF THE**
**JASPER RUBBER BUSINESS TO JASPER ACQUISITION CO., LLC**

Upon the Motion[2] of First Brands Group, LLC and its debtor affiliates, as debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"),

seeking entry of an order (this "**Order**") pursuant to sections 105 and 363 of the Bankruptcy Code

and Bankruptcy Rules 2002, 6004, and 9008, and section N of the Procedures for Complex Cases

in the Southern District of Texas (i) authorizing the sale of the Transferred Assets to the Buyer

pursuant to that certain *Asset Purchase Agreement*, dated as of June 24, 2026 (together with all

other agreements, documents, and instruments, deliverable thereunder or attached thereto or

referenced therein, and as may be amended, supplemented, or otherwise modified from time to

time in accordance with the terms thereof, the "**Purchase Agreement**", a true and correct copy of

which is attached hereto as **Exhibit 1**), by and among First Brands Group Holdings, LLC and

certain of its subsidiaries named therein, as Sellers (collectively, the "**Sellers**"), Jasper Acquisition

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]   As used herein, "**Motion**" means the *Emergency Motion for Order (A) Authorizing the Sale of Assets of the Jasper Rubber Business to Jasper Acquisition Co., LLC, and (B) Granting Related Relief* (Docket No. 3055).  Capitalized terms used but not defined herein are given the meanings ascribed to such terms in the Motion, the Purchase Agreement, the Wind Down Order, or the DIP Order, as applicable.

Co., LLC, as Buyer (the "**Buyer**"), and Press-Seal Corporation, as Guarantor, free and clear of all liens, claims, encumbrances and interests, except for Assumed Liabilities and Permitted Liens, (ii) authorizing and approving the form and manner of notice of the hearing on the sale of the Transferred Assets, and (iii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction and authority to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the Motion (the "**Sale Hearing**"); and upon the Jerneycic Declaration,[3] the First Day Declaration,[4] any other declaration filed in support of the Sale and the record of the Sale Hearing; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

---

[3]   The "**Jerneycic Declaration**" means the *Declaration of Daniel Jerneycic in Support of Emergency Motion for Order (A) Authorizing the Sale of Assets of the Jasper Rubber Business to Jasper Acquisition Co., LLC, and (B) Granting Related Relief* (Docket No. 3056).

[4]   The "**First Day Declaration**" means the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (Docket No. 22).

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      On September 24, 2025, Global Assets LLC and twelve (12) debtor affiliates each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of Texas (the "**Court**").  Commencing on September 28, 2025, First Brands Group, LLC and the remaining Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.

B.      The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed in these chapter 11 cases.  On October 9, 2025, the United States Trustee for Region 7 appointed an official committee of unsecured creditors [Docket No. 113].

C.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").

D.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      On January 8, 2026, the Debtors filed the *Emergency Motion of Debtors for Order (I) Approving (A) Bidding Procedures for Sale of Assets of the Debtors, (B) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (C) Assumption and Assignment Procedures, (II) Authorizing Designation of Stalking Horse Bidders, (III) Scheduling Auction and Sale Hearing, and (IV) Granting Related Relief* [Docket No. 1253] (the "**Bidding Procedures Motion**"), which sought Court approval of an expedited timeline and auction procedures for the Debtors' sale

process.  The Debtors filed the *Notice of Sale Transactions, Bidding Procedures, Auction, and Sale Hearing* [Docket No. 1324] (the "**Initial Notice**"), which provided all interested parties with notice of the Debtors' intent to sell all their assets pursuant to one or more sale transactions.  On January 13, 2026, the Initial Notice was served on all potential bidders for the Debtors' assets, all parties that had expressed interest in purchasing any of the Debtors' assets within the last twelve months, all parties listed on the Debtors' creditor matrix, and the Sale Notice Parties (as defined in the Bidding Procedures Motion). *See Affidavit of Service* [Docket No. 1718]. The Debtors subsequently published the Initial Notice in the national edition of The New York Times on January 16, 2026, as reflected in the *Certificate of Publication* [Docket No. 1645] (the "**Initial Publication Notice**").

F.      On March 23, 2026, the Debtors filed the *Emergency Motion of the Debtors for Entry of an Order Pursuant to Section 363 of the Bankruptcy Code (I) Approving and Authorizing the Debtors to Enter Into and Perform Under the Consulting Agreement; (II) Authorizing the Sale of Wind Down Assets Free and Clear of All Liens, Claims, and Encumbrances; and (III) Granting Related Relief* [Docket No. 2216] (the "**Wind Down Motion**"), which disclosed the Debtors' intention to wind down certain brands and asset classes.  On March 24, 2026, the Wind Down Motion was served on the Debtors' Master Service List [Docket No. 2239].

G.      On April 16, 2026, the Court entered the *Order Pursuant to Section 363 of the Bankruptcy Code (I) Approving and Authorizing the Debtors to Enter Into and Perform Under the Consulting Agreement; (II) Authorizing the Sale of Wind Down Assets Free and Clear of All Liens, Claims, and Encumbrances; and (III) Granting Related Relief* (Docket No.2454) (the "**Wind Down Order**"), pursuant to which, among other things, the Court authorized the Debtors and their Consultant (as defined in the Wind Down Motion) to sell certain Wind Down Assets.

H.      On May 15, 2026, the Debtors filed the *Notice of Expansion of Wind Down Brands* [Docket No. 2686] (the "**First Expansion Notice**"), which was served on all parties entitled to service of such notice under the terms of the Wind Down Order, including the Debtors' Master Service List. *See* Docket No. 2761.  Pursuant to the First Expansion Notice, the Debtors expanded, consistent with Paragraphs 50 and 51 of the Wind Down Order, the scope of brands, business units, and asset classes, including intellectual property, machinery and equipment and real estate, subject to the Wind Down Order to include, among other things, the Debtors' "Filters and Plugs" business unit and related legal entities, including the Debtors' Jasper Rubber business.

I.      On May 28, 2026, the Debtors filed the *Second Notice of Expansion of Wind Down Brands* [Docket No. 2829], which was served on all parties entitled to service of such notice under the terms of the Wind Down Order, including the Debtors' Master Service List (*see* Docket No. 2877), and expanded the Wind Down to First Brands Holdings, LLC and all Debtor subsidiaries.

J.      In accordance with the Wind Down Order, on May 27, 2026, the Debtors and Hilco Merchant Resources, LLC entered into a Machinery and Equipment Agreement under which Hilco Merchant Resources, LLC serves as the Debtors' exclusive agent with respect to specified machinery and equipment.

K.      In accordance with the Wind Down Order, on May 28, 2026, the Debtors and Hilco IP Services, LLC, Hilco Real Estate, LLC, and Hilco Global Mexico, S. de R.L. de C.V. entered into an Intangible Assets, Real Estate and Other Assets Marketing Agreement under which those entities serve as the Debtors' exclusive agents with respect to specified intangible assets, real estate, and other assets.

L.      In accordance with the Wind Down Order, the Debtors selected Buyer as the purchaser of certain assets (the "**Transferred Assets**") related to the Debtors' business commonly known as "Jasper Rubber Products", as more particularly described in the Purchase Agreement.

M.      On June 24, 2026, First Brands Group Holdings, LLC and certain of its subsidiaries (each, a "**Seller**") and Buyer entered into the Purchase Agreement, under which Buyer agreed to purchase the Transferred Assets for $8,030,000 in cash and the assumption of the Assumed Liabilities, subject to any adjustments, allocations, or other terms expressly set forth in the Purchase Agreement and this Order, free and clear of all Liens, Liabilities, claims, and interests other than the Assumed Liabilities and Permitted Liens (the "**Sale**").  The Transferred Assets include certain Executory Contracts, approval of the assumption and assignment of which the Debtors will seek through the Court's *Order (I) Approving Procedures to (A) Assume or Assume and Assign or (B) Reject, Unexpired Leases and Executory Contracts, (II) Approving Abandonment of Property in Connection with Rejection of Unexpired Leases, and (III) Granting Related Relief* [Docket No. 1244].

N.      In accordance with the Wind Down Order, on June 19, 2026, the Debtors served a Wind Down Sale Notice by email on the Wind Down Sale Notice Parties comprising:  the U.S. Trustee, the Ad Hoc Group, the Creditors' Committee, the known creditors with an Asserted Interest, and the Landlord for the applicable Location with respect to the Transferred Assets.  The Wind Down Sale Notice: (a) identified the Transferred Assets (including the business units and legal entities with which the Transferred Assets are associated), (b) identified Buyer as the purchaser of the Transferred Assets, (c) stated the $8,030,000 purchase price, (d) stated that the Transferred Assets constitute Overlapping Collateral, and (e) described the other significant terms of the Sale.  The Notice Period set forth in the Wind Down Order has expired, and either (i) parties

entitled to object have not interposed an objection to the Sale, or (ii) the Debtors have obtained the consent of those parties whose consent to the Sale is required by the Wind Down Order, including all parties with an Overlapping Collateral Interest in the Net Proceeds or Gross Proceeds, as applicable, of the Transferred Assets. *See* Wind Down Order ¶¶ 25-26, 42.

O.      On June 24, 2026, the Debtors filed the *Emergency Motion for Order (A) Authorizing the Sale of Assets of the Jasper Rubber Business to Jasper Acquisition Co., LLC, and (B) Granting Related Relief* (Docket No. 3055) (the "**Motion**").

P.      On June 25, 2026, the Debtors served notice of the Purchase Agreement, the Sale and Sale Hearing, in the form attached as <u>Exhibit B</u> to the Motion (the "**Jasper Sale Notice**") on the Sale Notice Parties.  The Debtors subsequently published the Jasper Sale Notice in *The Indianapolis Star* on July 1, 2026.

Q.      Entry of this Order is in all respect consistent with the Wind Down Order, in the best interest of the Debtors and their creditors and parties in interest, and necessary and appropriate to approve the Purchase Agreement and the Sale, authorize the transfer of the Transferred Assets, and grant Buyer the protections set forth herein.

R.      The Jerneycic Declaration supports the Sale and the relief granted in this Order.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      Any objections, responses or reservations of rights filed or asserted in regard to the Sale and the relief granted herein, to the extent not resolved as set forth herein, settled, or waived as announced to the Court on the record at the Sale Hearing, are hereby overruled on the merits in their entirety.

## A.  Jurisdiction and Statutory Predicates

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. section 1334. This is a core proceeding pursuant to 28 U.S.C. section 157(b).  Venue is proper in this District pursuant to 28 U.S.C. sections 1408 and 1409.

4.      The statutory predicates for the relief granted herein are sections 105(a), 363, and 541 of the Bankruptcy Code and Rules 2002, 6004, and 9008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  This Order is a final and appealable order. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014.  Notwithstanding Bankruptcy Rule 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

## B.  Background, Business Justification, and Notice

5.      The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of and authorization to close, and compelling circumstances to promptly consummate, the Sale and the other transactions contemplated by the Purchase Agreement, pursuant to Sections 105, 363, 1107, and 1108 of the Bankruptcy Code, prior to and outside of a plan of reorganization for any Seller, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, creditors, and other parties in interest.  Such business reasons include, but are not limited to, the fact that:  (i) there is substantial risk of depreciation of the value of the Transferred Assets if the Sale is not consummated promptly; (ii) the Sale of the Transferred Assets and the assumption of the Assumed

Liabilities pursuant to the Purchase Agreement at the Closing present the best opportunity and represent the best method to maximize the value of the Transferred Assets for the benefit of the Debtors, their estate, creditors, and other parties in interest; (iii) the purchase price and other terms set forth in the Purchase Agreement constitute the highest or otherwise best offer received for the Transferred Assets; and (iv) unless the Sale is concluded expeditiously, as provided for in the Wind Down Order and this Order and pursuant to the Purchase Agreement, the Debtors and their estates could receive significantly less value for all stakeholders.

6.      The Debtors, in consultation with the Consultant and their advisors, reasonably determined in their business judgment that the Purchase Agreement represents the highest or otherwise best actionable transaction available for the Transferred Assets under the circumstances and is in the best interests of the Debtors, their estates, creditors, and parties in interest.  Under the Purchase Agreement, Buyer will pay a cash purchase price of $8,030,000 and will assume certain Assumed Liabilities in exchange for the Transferred Assets, subject to any adjustments, allocations, or other terms expressly set forth in the Purchase Agreement and this Order.  The purchase and sale of the Transferred Assets was marketed, brokered, and facilitated by the Consultant solely in the Consultant's capacity as agent for the Debtors pursuant to the Wind Down Order, and the Consultant is not taking title to the Transferred Assets before the Sale and is not a party to the Purchase Agreement.

7.      The Sale is a Wind Down Sale under the Wind Down Order.  The Transferred Assets are Wind Down Assets under the Wind Down Order or are otherwise authorized to be sold pursuant to this Order, the Bankruptcy Code, the Purchase Agreement, and any other applicable orders.  All requirements under the Wind Down Order, including any required notice, consent,

asset designation, asset-class or legal-entity addition, objection-period expiration, or further-order requirement has been satisfied, waived, resolved, or approved by this Order.

8. Entry of this Order approving the Sale, the Purchase Agreement, and all provisions thereof are a necessary condition precedent to the Buyer consummating the Sale. The provisions of this Order and the Purchase Agreement and the transactions contemplated by this Order and the Purchase Agreement and Sale to the Buyer are inextricably linked and technically and collectively constitute a single, integrated transaction.

9. The Debtors have noticed the Sale through (i) the Wind Down Sale Notice served on all parties required to receive notice under the Wind Down Order, (ii) the Jasper Sale Notice served on the Sale Notice Parties, and (iii) the Jasper Publication Notice. The Wind Down Sale Notice identified the Transferred Assets, the applicable business units and legal entities, the Buyer, the Purchase Price, whether the Transferred Assets constitute Overlapping Collateral, and the other significant terms of the Sale. The applicable notice periods have expired, and all objections, if any, have been resolved, withdrawn, waived, or are overruled by this Order. The Debtors have obtained consent to the Sale from all known creditors with an Overlapping Collateral Interest in the Net Proceeds or Gross Proceeds, as applicable, of the Transferred Assets.

10. The notice provided in connection with the Sale, the Purchase Agreement, and this Order, including the Wind Down Sale Notice served on the Wind Down Sale Notice Parties and the Jasper Sale Notice served on the Sale Notice Parties, is proper, timely, good, sufficient, and adequate notice to each party entitled to such notice in accordance with Sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9007 and Local Bankruptcy Rule 2002-1 and 9013-1, the Wind Down Order, and the circumstances of these chapter 11 cases. No other or further notice is required. With respect to parties whose identities or addresses are not

reasonably ascertainable by the Debtors, publication of notice of the Sale as evidenced by the Initial Publication Notice and the Jasper Rubber Publication Notice was sufficient and reasonably calculated under the circumstances to reach such parties.  A reasonable opportunity to object or to be heard regarding the relief granted in this Order was afforded to all interested persons and entities entitled to such opportunity.

### C. **Transferred Assets and Property of the Estate**

11.     The Transferred Assets constitute property of the Debtors' estates within the meaning of section 541 of the Bankruptcy Code or otherwise consist of transferable interests owned by one or more Debtors.  Those assets and interests may be sold under sections 363(b) and 363(f) of the Bankruptcy Code, and the transfer approved by this Order shall vest Buyer with the Debtors' right, title, and interest in the Transferred Assets free and clear of Liens, Liabilities, claims and interests, except solely for Assumed Liabilities.

12.     Pursuant to Sections 105(a), 363(b), and 363(f), of the Bankruptcy Code, and subject to the terms and conditions of the Purchase Agreement, the Debtors are authorized and directed to sell, transfer, convey, assign, and deliver the Transferred Assets to Buyer or one or more controlled affiliates or designees designated by Buyer under the Purchase Agreement (each, a "**Buyer Designee**") at the Closing in accordance with the Purchase Agreement, subject only to the Assumed Liabilities and Permitted Liens.  The Buyer is not acquiring any of the Excluded Assets or assuming any of the Excluded Liabilities (as defined in the Purchase Agreement).

13.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Transferred Assets to the Buyer (or any Buyer Designee) in accordance with the Purchase Agreement and this Order.

14.  At Closing, all of the Debtors' right, title, and interest in and to, and possession of, the Transferred Assets shall be immediately vested in the Buyer (or any Buyer Designee) pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code.  Such transfer shall constitute a legal, valid, enforceable, and effective transfer of the Transferred Assets.

15.  This Order shall be effective as a determination that, as of the Closing, (a) the Transferred Assets shall have been transferred to the Buyer (or any Buyer Designee) free and clear of all Liens, Liabilities, claims, or interests, subject only to the Assumed Liabilities and the Permitted Liens, (b) holders of claims who did not object (or who ultimately withdrew their objections, if any) to the Sale are deemed to have consented to the Sale being free and clear of their claims pursuant to section 363(f)(2) of the Bankruptcy Code and holders of claims who did object could be compelled in a legal or equitable proceeding to accept money satisfaction of such claims pursuant to section 363(f)(5) of the Bankruptcy Code or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their claims that constitute interests in the Transferred Assets, if any, attach to the proceeds of the Sale with the same priority that existed immediately prior to the closing, and (c) the conveyances described herein have been effected.  The Transferred Assets are sold free and clear of any reclamation rights.

16.  Any Lien, Liability, claim, or interest in the Transferred Assets (other than an Assumed Liability or Permitted Lien) shall attach solely to the Net Proceeds or Gross Proceeds, as applicable, of the Sale with the same validity, priority, force, and effect, if any, that it had against the Transferred Assets immediately before the Closing Date, subject to the Wind Down Order and all rights, claims, objections, defenses, and challenges of the Debtors, their estates, the Creditors'

Committee, the DIP Secured Parties, the ABL Lenders, any trustee, any party in interest, and any other person.

17.     Except as otherwise provided in the Purchase Agreement, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding any Lien, Liability, claim, or interest arising under or out of, in connection with, or in any way relating to, the Debtors, the Transferred Assets, and the ownership, sale, or operation of the Transferred Assets prior to Closing or the transfer of the Transferred Assets to the Buyer (or any Buyer Designee), are hereby forever barred, estopped, and permanently enjoined from asserting such Liens, Liabilities, claims, or interests against any Buyer Party and its property (including, without limitation, the Transferred Assets). Following the Closing, no such holder of any Lien, Liability, claim, or interest shall interfere with the Buyer's (or any Buyer Designee's) title to or use and enjoyment of the Transferred Assets based on or related to any such Lien, Liability, claim or interest, or based on any action the Debtors may take in their Chapter 11 cases.

**D.  <u>Approval of the Purchase Agreement and Sale</u>**

18.     The Purchase Agreement and all other ancillary documents, including any other documents contemplated by the Purchase Agreement or that are necessary or appropriate to complete the transactions provided for in the Purchase Agreement, and all of the terms and conditions thereof, and the Sale and related transactions contemplated therewith, are hereby approved in all respects.  The failure specifically to include any particular terms of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being

the intent of the Court that the Purchase Agreement and the Sale be authorized and approved in their entireties.

19.     Pursuant to section 363 of the Bankruptcy Code, entry by the Debtors into the Purchase Agreement is hereby authorized and approved as a valid exercise of the Debtors' business judgment. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors and their respective officers, employees, and agents are authorized, empowered, and directed to take any and all actions necessary or appropriate to (a) consummate the sale of the Transferred Assets to the Buyer pursuant to and in accordance with the terms and conditions of the Purchase Agreement, (b) enter into all other agreements contemplated by the Purchase Agreement and consummate all other transactions contemplated by the Purchase Agreement, (c) consummate the Sale as contemplated in the Purchase Agreement and this Order, (d) continue performance under and make all payments required by the Purchase Agreement, and (e) execute and deliver, perform under, consummate, and implement the Purchase Agreement, together with all additional instruments and ancillary documents that may be reasonably necessary or desirable to implement the Sale, or as may be reasonably necessary or appropriate to implement or perform any of the obligations contemplated by the Purchase Agreement and any other documentation relating to the Sale, all without further order of the Court.

20.     The transfer of the Transferred Assets to Buyer or any Buyer Designee shall vest Buyer or such Buyer Designee, as applicable, with all right, title, and interest in and to the Transferred Assets free and clear of all Liens, Liabilities, claims, and interests, except solely for Assumed Liabilities and Permitted Liens.

21.     Each Buyer Designee shall be entitled to the protections of this Order with respect to the Transferred Assets acquired by such Buyer Designee.

22.     Buyer and any Buyer Designee are good-faith purchasers for value within the meaning of section 363(m) of the Bankruptcy Code and are entitled to the full protections of section 363(m) with respect to the Sale and the Transferred Assets.  Buyer is not an "insider" of any Debtor within the meaning of section 101(31) of the Bankruptcy Code.  The consideration to be paid by the Buyer under the Purchase Agreement was negotiated at arm's length, in good faith and without collusion pursuant to section 363(m) of the Bankruptcy Code and is fair and reasonable under the circumstances.  The Sale contemplated by the Purchase Agreement is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and consummation of such Sale are duly and properly stayed pending such appeal.

23.     Neither the Debtors, Buyer, nor any Buyer Designee has engaged in any conduct that would permit the Sale, the Purchase Agreement, or any transaction contemplated thereby to be avoided, set aside, or otherwise challenged under section 363(n) of the Bankruptcy Code.  The consideration provided by the Buyer for the Transferred Assets under the Purchase Agreement is fair and reasonable and the Sale may not be avoided, and costs and damages may not be imposed, under section 363(n) of the Bankruptcy Code.

24.     Except as expressly provided in the Purchase Agreement or this Order, Buyer is purchasing the Transferred Assets on an "as is, where is" basis as to their physical condition, location, completeness, operability, merchantability, fitness for any particular purpose, and quality, and the Sale is final.  This paragraph does not limit, modify, or impair:  (a) the Debtors' obligation to transfer their right, title, and interest in the Transferred Assets free and clear of Liens,

Liabilities, claims, and interests as provided in this Order; (b) Buyer's no-successor-liability, excluded-liability, environmental, free-and-clear sale, and other protections under this Order; (c) Buyer's express rights, representations, warranties, covenants, or remedies under the Purchase Agreement or this Order; or (d) any non-waivable state or federal law relating to implied warranties for latent defects.

25.     All persons and entities, including all debt holders, equityholders, governmental units, tax authorities, regulatory authorities, employees, labor organizations, pension funds, benefit plans, contract counterparties, landlords, lessors, secured parties, lienholders, litigation claimants, and any other persons or entities, are forever barred, estopped, and permanently enjoined from asserting, prosecuting, enforcing, collecting, or attempting to enforce any Liens, Liabilities, claims, or interests against Buyer, Buyer's affiliates, Buyer's designees, the Transferred Assets, or any of Buyer's successors or assigns, except solely with respect to Assumed Liabilities and Permitted Liens.

26.     The Debtors, the Consultant, any warehouseman, bailee, custodian, agent, affiliate, employee, representative, or other person or entity in possession, custody, or control of any Transferred Assets shall surrender such Transferred Assets to Buyer or the applicable Buyer Designee on the Closing Date.

27.     No executory contract or unexpired lease of any Debtor or Seller is being assumed by the Debtors or assigned to Buyer under section 365 of the Bankruptcy Code or this Order, and Buyer shall not assume or be liable for any obligations thereunder.  Nothing in this paragraph limits Buyer's acquisition of rights that constitute Transferred Assets and are transferable without assumption and assignment under section 365 of the Bankruptcy Code.

### E.  Section 363(f) Findings

28.     The Sale of the Transferred Assets to the Buyer (or any Buyer Designee) under the terms of the Purchase Agreement meet the applicable provisions of section 363(f) of the Bankruptcy Code such that the Sale of the Transferred Assets will be a legal, valid, and effective transfer of all of the legal, equitable, and beneficial rights, title, and interests in the Transferred Assets free and clear of any and all Liens, Liabilities, claims, and interests, and will not subject any Buyer or any Buyer Designee to any Liens, Liabilities, claims, and interests whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability), except as expressly provided in the Purchase Agreement with respect to the Assumed Liabilities and Permitted Liens.  The transfer of the Transferred Assets free and clear of all Liens, Liabilities, claims, and interests (other than Assumed Liabilities and Permitted Liens) satisfies section 363(f) of the Bankruptcy Code because one or more of the following standards is satisfied with respect to each such Lien, Liability, claim or interest:  (a) applicable nonbankruptcy law permits sale of the Transferred Assets free and clear of such Lien, Liability, claim, or interest; (b) the holder of such Lien, Liability, claim or interest has consented, failed to object after receiving adequate notice, or is deemed to have consented; (c) to the extent such Lien, Liability, claim, or interest constitutes a lien, the purchase price for the Transferred Assets is greater than the aggregate value of all liens on the Transferred Assets; (d) such Lien, Liability, claim, or interest is in bona fide dispute; or (e) the holder of such Lien, Liability, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Lien, Liability, claim, or interest.

29.     The holders of Liens, Liabilities, claims, and interests will be adequately protected because any valid, enforceable, and non-avoidable Lien, Liability, claim, or interest (other than an

Assumed Liability or Permitted Lien) shall attach to the Net Proceeds or Gross Proceeds, as applicable, of the Sale to the same extent and with the same validity, priority, force, and effect that such Lien, Liability, claim, and interest had against the Transferred Assets immediately before the Closing Date, subject to the Wind Down Order and any rights, claims, defenses, objections, or challenges of the Debtors, their estates, the Creditors' Committee, the DIP Secured Parties, the ABL Lenders, any trustee, any party in interest, and any other person.

30.     The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, including, without limitation, the Sale (i) if the transfer of the Transferred Assets were not free and clear of all interests of any kind or nature whatsoever or (ii) if the Buyer or any of its affiliates or designees would, or in the future could, be liable for any interests, in each case, including, without limitation, rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise, in each case subject only to the Assumed Liabilities and the Permitted Liens.  Not transferring the Transferred Assets free and clear of all interests of any kind or nature whatsoever would adversely impact the Debtors' efforts to maximize the value of the Transferred Assets.

**F.   No Successor Liability and No Assumed Liabilities**

31.     Neither the Buyer nor its past, present, and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, nor any of its nor their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies, or partners (collectively, the "**Buyer Parties**") is a continuation of the Debtors or their estates and no Buyer Party is holding itself out to the public as a continuation of the Debtors or

their estates and the Sale does not amount to a consolidation, merger, or de facto merger of the Buyer (or any other Buyer Party) and any of the Debtors.

32.     Buyer shall not be deemed, as a result of the Purchase Agreement, the Sale, the transfer of the Transferred Assets, the ownership, operation or removal of the Transferred Assets, or the consummation of the transactions approved by this Order, to:  (a) be a successor to any Debtor or its estate; (b) be a continuation or substantial continuation of any Debtor or any Debtor's business; (c) have merged with any Debtor; (d) be part of a de facto merger with any Debtor; (e) be a mere continuation of any Debtor; (f) be a successor employer; (g) be a joint employer; (h) have common identity or continuity of enterprise with any Debtor; (i) be liable under any product-line, substantial-continuity, continuity-of-enterprise, successor-liability, transferee-liability, de facto merger, alter ego, veil-piercing, agency, vicarious liability, or similar theory; or (j) be liable for any Lien, Liability, claim, or interest arising from or relating to the Transferred Assets, the Debtors, the Debtors' businesses, or the Debtors' ownership, operation, shutdown, use, sale, transfer, removal, or disposition of the Transferred Assets before the Closing Date, except solely for the Assumed Liabilities and Permitted Liens.

33.     Except for the Assumed Liabilities and Permitted Liens expressly set forth in the Purchase Agreement, Buyer shall not assume, shall not be deemed to assume, and shall have no liability or responsibility for any Liability, Lien, claim, interest, debt, obligation, commitment, demand, expense, loss, cause of action, damage, penalty, fine, cost, duty, contract, lease, agreement, guarantee, warranty, litigation, judgment, assessment, tax, interest, encumbrance, or other obligation in respect of any Debtor, any Debtor's estate, any predecessor, affiliate, owner, equityholder, officer, director, manager, employee, agent, or representative of any Debtor, or any other person or entity, whether known or unknown, fixed or contingent, liquidated or unliquidated,

matured or unmatured, asserted or unasserted, arising before, on, or after the Petition Date or before, on, or after the Closing Date.

34.     Without limiting the foregoing, except solely for the Assumed Liabilities and Permitted Liens, Buyer shall not assume or be liable for any Liens, Liabilities, claims, or interests arising under, relating to, or based upon in whole or part, directly or indirectly, any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor, or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, Liens, Liabilities, claims (including intercompany claims), or interests on account of:

(a)   any lien, mortgage, deed of trust, pledge, security interest, charge, hypothecation, conditional sale right, title retention right, mechanic's lien, materialman's lien, warehouse lien, carrier lien, judgment lien, tax lien, statutory lien, possessory lien, or similar interest;

(b)   any debt, claim (including any intercompany claim), obligation, or liability of any Debtor or any Debtor's estate;

(c)   any executory contract or unexpired lease of any Debtor or Seller;

(d)   any cure cost or default, claim, liability, or obligation under any executory contract or unexpired lease of any Debtor or Seller;

(e)   any collective bargaining agreement, memorandum of understanding, side letter, grievance, arbitration, labor agreement, union agreement, or obligation to any labor organization;

(f)   any claim under the Worker Adjustment and Retraining Notification Act, any state WARN Act or any similar plant-closing, mass-layoff, wage, notice, severance, or employee-protection statute;

(g)   any wage, salary, payroll, commission, bonus, incentive, vacation, paid-time-off, severance, retention, change-in-control, workers' compensation, unemployment, employee-benefit, retiree-benefit, health, welfare, medical, life insurance, disability, COBRA, pension, retirement, withdrawal-liability, multiemployer-plan, defined-benefit-

plan, defined-contribution-plan, ERISA, PBGC, controlled-group, fiduciary, funding, termination, premium, contribution, or benefit claim;

(h) any claim under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the National Labor Relations Act, the Labor Management Relations Act, the Occupational Safety and Health Act, ERISA, COBRA, or any other federal, state, or local labor, employment, employee-benefit, pension, workplace, health, safety, discrimination, wage, hour, leave, retaliation, or similar law;

(i) any successor-liability, successor-employer, single-employer, joint-employer, de facto merger, substantial-continuity, mere-continuation, continuity-of-enterprise, product-line, alter-ego, agency, veil-piercing, transferee-liability, vicarious liability, or similar claim or theory;

(j) any product liability, warranty, recall, customer claim, personal injury, property damage, tort, negligence, strict liability, indemnity, contribution, reimbursement, or similar claim arising from or relating to any Debtor's pre-Closing Date ownership, operation, design, manufacture, sale, distribution, repair, service, warranty, or use of any product, asset, equipment, inventory, tooling, or property;

(k) any tax, bulk sale, bulk transfer, unclaimed property, escheat, sales, use, transfer, recording, stamp, documentary, value-added, excise, property, franchise, income, payroll, withholding, or similar claim, except as expressly allocated to Buyer under the Purchase Agreement;

(l) any environmental claim, environmental liability, environmental fine, environmental penalty, environmental violation, environmental response cost, remediation cost, closure cost, corrective-action obligation, disposal liability, off-site disposal claim, natural resource damage claim, contamination claim, permit violation, air-emission claim, wastewater claim, stormwater claim, hazardous-waste claim, or release claim;

(m) any liability arising from any litigation, arbitration, administrative proceeding, investigation, audit, notice of violation, regulatory action, enforcement action, consent order, settlement, judgment, decree, or claim against any Debtor or relating to any Debtor's pre-Closing Date conduct; and

(n) any liability arising from or relating to the Debtors' operation, ownership, use, possession, shutdown, storage, removal, abandonment, rejection, sale, transfer, disposition, or wind-down of any assets, facilities, properties, contracts, leases, businesses, or operations before the Closing Date (collectively, "**Successor or Transferee Liability**").

35. All persons and entities holding Liens, Liabilities, claims or interests of any kind or nature, including as a result of Successor or Transferee Liability, against any Debtor, any Debtor's estate, the Transferred Assets, or the proceeds thereof, including all debt holders,

equityholders, governmental units, tax authorities, regulatory authorities, employees, labor organizations, pension funds, benefit plans, contract counterparties, landlords, lessors, secured parties, lienholders, litigation claimants, and any other persons or entities, are forever barred, estopped, and permanently enjoined from asserting, prosecuting, enforcing, collecting, or attempting to enforce, including through any setoff, right of subrogation, or recoupment of any kind, any such Liens, Liabilities, claims or interests against Buyer, any Buyer's Designee, any Buyer Parties, the Transferred Assets, or any of Buyer's or its affiliates' successors or assigns, except solely with respect to the Assumed Liabilities expressly set forth in the Purchase Agreement.

### G. Liens, Proceeds, and Recording

36.     All Liens, Liabilities, claims, and interests released from the Transferred Assets shall attach to the Net Proceeds or Gross Proceeds, as applicable, of the Sale with the same validity, priority, force, and effect, if any, that such Liens, Liabilities, claims, and interests had against the Transferred Assets immediately before the Closing Date, subject to the Wind Down Order and any rights, claims, defenses, objections, or challenges of the Debtors, their estates, the Creditors' Committee, the DIP Secured Parties, the ABL Lenders, any trustee, any party in interest, and any other person.

37.     This Order shall be effective as a determination that, as of the Closing Date, all Liens, Liabilities, claims, and interests against the Transferred Assets have been unconditionally released, discharged, and terminated as to Buyer and the Transferred Assets, except solely for Assumed Liabilities and Permitted Liens.

38.     This Order is binding upon and shall govern the acts of all filing agents, filing officers, title agents, title companies, recorders, registrars, administrative agencies, governmental

departments, and similar persons and entities.  All such persons, agencies and entities are authorized and directed to accept this Order, the Purchase Agreement, any bill of sale, assignment, certificate, or other transfer document as conclusive evidence of the release, discharge, and termination of all Liens, Liabilities, claims, and interests against Buyer or the Transferred Assets and as authority to record, file, or register the transfer of the Transferred Assets to Buyer free and clear of all Liens, Liabilities, claims and interests, except solely for Assumed Liabilities and Permitted Liens.

39.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Liens, Liabilities, claims, or interests against or in the Transferred Assets does not deliver appropriate termination statements, instruments of satisfaction, releases, or other documents, Buyer and the Debtors are authorized to execute and file such termination statements, releases, satisfactions, or other instruments on behalf of such person or entity solely with respect to the Transferred Assets.

40.     Maplan GmbH and Machinery + Planning, Inc. (together, "**Maplan**") and the Onset Parties (as defined below) each dispute the other's respective asserted interests in certain equipment included in the Transferred Assets including three (3) high-speed, horizontal rubber injection molding machines (model RAPID+ 700R/300 with MAP.commander C600) and related equipment (the "**Disputed Equipment**" and such dispute, the "**Maplan/Onset Equipment Dispute**").  In furtherance of a prompt Closing, the Onset Parties and Maplan have each agreed to (i) consent to the Sale; and (ii) deposit to the SPV-ABL Wind Down Account $200,000 (the "**Disputed Equipment Escrow Amount**") of Net Proceeds otherwise allocated for distribution to the Onset Parties to be held in a segregated account for distribution to Maplan and/or the Onset Parties upon resolution of the Maplan/Onset Equipment Dispute by order of the Court or

agreement of Maplan and the Onset Parties and which Disputed Equipment Escrow Amount shall be free and clear of all Liens, Liabilities, claims, and interests, including, without limitation, of the DIP Lenders, the ABL Lenders, and the SPV Lenders (other than the Onset Parties).  The Disputed Equipment Escrow Amount may not be distributed without an order of the Court or agreement between Maplan and the Onset Parties.

41.     At the Closing, the Debtors, Onset Parties, and Maplan on behalf of themselves and their respective members, affiliates, partners, successors, and assigns shall fully, unconditionally, and irrevocably release and forever discharge each other and their respective members, affiliates, partners, successors, and assigns from any and all claims, demands, actions, causes of action, liabilities, damages, losses, costs, and expenses of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, at law or in equity, arising at any time prior to Closing solely and directly arising out of the Disputed Equipment (collectively, "**Released Maplan/Onset Dispute Claims**"); *provided*, that the Released Maplan/Onset Dispute Claims shall not include any (i) claims, demands, causes of action, liabilities, damages, losses, costs, expenses, defenses, or affirmative defenses of any kind, of an as between the Debtors, the Onset Parties, and Maplan, in each case, related to the determination of the pre-Closing interests in the Disputed Equipment giving rise to the Maplan/Onset Equipment Dispute, (ii) the claims against the Debtors set forth in any claim filed by Maplan against the Debtors, including, without limitation, Proof of Claim No. 2013 filed by Maplan, (iii) Maplan's right to assert one or more administrative expense claims; or (iv) Maplan's right to assert that cure amounts must be paid and defaults cured in connection with any assumption of any executory contract pertaining to the Disputed Equipment; *provided further*, that recourse, if any, in the Maplan/Onset Equipment Dispute shall be limited to a determination of the allocation of the Disputed Equipment Escrow Amount between Maplan and the Onset

Parties.  Nothing in this paragraph shall impact, impair, or in any way alter (a) the Consultant Fees and Expenses or the Tax Payoff Amount; (b) the Distributable Proceeds allocated to the DIP Secured Parties, the ABL Secured Parties, or the Onset Parties under the Value Allocation Schedule (defined below); or (c) the fact that all of the Disputed Equipment constitutes Transferred Assets for all purposes of this Order.  For the avoidance of doubt, at Closing Buyer shall acquire title to the Disputed Equipment free and clear of all Liens, Liabilities, claims, and interests. Consistent with paragraph 27 of this Order, no executory contract of any Debtor or Seller, including any executory contract pertaining to the Disputed Equipment, is being assumed by the Debtors or assigned to Buyer under this Order, and the Debtors, the Buyer and Maplan reserve all of their respective rights with respect to any such executory contracts.

42.     The Debtors, the Onset Parties, and Maplan reserve all rights as to the amount, validity and priority of any claims filed by Maplan against the estate, including Proof of Claim No. 2013, and Maplan reserves the right to file one or more administrative expense claims.

43.     At the Closing and notwithstanding anything to the contrary in the DIP Order,[5] the Buyer shall pay the Base Purchase Price less the Consultant Fees and Expenses and the Tax Payoff Amount (the "**Distributable Proceeds**") by wire transfer of immediately available fund to the Escrow Account (as defined in the DIP Order) for funds flow purposes only and without the DIP Secured Parties obtaining any legal interest therein or such funds being treated as DIP Collateral (as defined in the DIP Order) other than in respect of such amounts payable to the DIP Secured

---

[5]     "**DIP Order**" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 597].

Parties pursuant to an agreement among the Ad Hoc Group, ABL Lenders, and Onset Parties[6] (collectively, the "**Creditor Consenting Parties**" and, with the Debtors, the "**Sale Consenting Parties**") regarding the allocation and distribution of the Net Proceeds or Gross Proceeds, as applicable, of the Sale Transaction (the "**Value Allocation Schedule**"). Pursuant to the terms of this Order and notwithstanding the terms of the DIP Order or any escrow agreement to the contrary, the DIP Agent shall thereafter distribute the Distributable Proceeds to the DIP Secured Parties, the Onset Parties, the ABL Secured Parties, and to the SPV-ABL Wind Down Account for the Maplan Dispute Escrow Amount in accordance with the Value Allocation Schedule, attached hereto as **Exhibit 2**, and wire instructions provided to the DIP Agent by counsel to Creditor Consenting Parties, as applicable, and the DIP Agent shall use commercially reasonable efforts to distribute such funds as promptly as practicable.  For the avoidance of doubt, none of the Distributable Proceeds may be used to fund the Carve-Out (as defined in the DIP Order) and none of the escrowed proceeds shall be released from the Escrow Account in violation of the Value Allocation Schedule.  For the avoidance of doubt, (i) the Consultant Fees and Expenses; and (ii) the Tax Payoff Amount shall be paid by Buyer from the Base Purchase Price in accordance with the Purchase Agreement.

### H.  Bulk Sales, Transfer Taxes, and Resale Certificates

44.    No bulk sales, bulk transfer, bulk notice, successor-liability tax notice, or similar law shall apply to the Sale, the Purchase Agreement, the transfer of the Transferred Assets, or any transactions authorized by this Order.

---

[6]  "**Onset Parties**" means Onset Financial, Inc. and its affiliates, Silver Point Capital, L.P., and each affiliate of Silver Point Capital, L.P. and each fund or account for which Silver Point Capital, L.P. or its affiliates serves as investment advisor, sub-advisor, or manager.

45.     The transfer of the Transferred Assets shall not be subject to any stamp, transfer, recording, documentary, sales, use, or similar tax, fee, assessment, or charge.

46.     Buyer and the Debtors are authorized to provide and execute any resale certificate, exemption certificate, direct-pay permit, manufacturing exemption certificate, tax-exemption certificate, or similar document available under applicable law in connection with the Sale or transfer of the Transferred Assets.

47.     All filing agents, filing officers, title agents, title companies, recorders, registrars, administrative agencies, governmental departments, and similar persons and entities are authorized and directed to accept this Order and any resale certificate, exemption certificate, direct-pay permit, manufacturing exemption certificate, tax-exemption certificate, or similar document as sufficient evidence of any applicable exemption.

### I.  **United States**

48.     Notwithstanding any provision to the contrary in this Order, the Purchase Agreement, or any other document related to the Sale, nothing shall:

(a)  release, nullify, preclude or enjoin the enforcement of any police or regulatory power of, or any liability owed to, the United States that any entity would be subject to as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the date of entry of this Order;

(b)  affect the setoff or recoupment rights of the United States, and all claims, rights, and defenses thereto of any Entity, including the Debtors and Buyer, are fully preserved;

(c)  confer exclusive jurisdiction in any matter involving the United States on the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

(d)  authorize the assumption, assignment, sale or other transfer of any federal (a) grants, (b) grant funds, (c) contracts, (d) agreements, (e) awards, (f) task orders, (g) property, (h) intellectual property, (i) patents, (j) leases, (k) certifications, (l) applications, (m) registrations, (n) billing numbers, (o) national provider identifiers, (p) provider transaction access numbers, (q) licenses, (r) permits, (s) covenants, (t) inventory, (u) guarantees, (v) indemnifications, (w) data, (x) records, or (y) any other interests belonging to the United States (collectively, "**Federal Interests**") (and excluding, for the avoidance

of doubt, the Transferred Assets) without compliance by the Debtors and Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law;

(e)   be interpreted to set cure amounts or to require the United States to novate, approve or otherwise consent to the sale, assumption, assignment or other transfer of any Federal Interests;

(f)   waive, alter or otherwise limit the United States' property rights except for Claims and interests related to the Transferred Assets; or

(g)   expand the scope of 11 U.S.C.§ 525.

49.      In the event of an inconsistency or conflict between any provision of the Purchase Agreement and any provision of this Order, as to the United States, the provisions of this Order and federal law shall govern.

## J.   Additional Provisions

50.      Notwithstanding anything to the contrary in the Motion, the Purchase Agreement, any lists of Transferred Assets, any lists of Transferred Contracts to be assumed and assigned and/or any notice of assumption and/or assignment, this Sale Order, or any documents relating to any of the foregoing: (a) nothing shall permit or otherwise effect a sale, an assignment or any other transfer of (i) any insurance policies that have been issued at any time by Indemnity Insurance Company of North America, ACE American Insurance Company, Chubb Indemnity Insurance Company, Illinois Union Insurance Company, ACE Fire Underwriters Insurance Company, Federal Insurance Company, Great Northern Insurance Company, Indemnity Insurance Corporation of North America, Executive Risk Indemnity Inc., Westchester Fire Insurance Company, Westchester Surplus Lines Insurance Company, Vigilant Insurance Company, Chubb Custom Insurance Company and/or any of their U.S.-based affiliates and successors (collectively, the "Chubb Companies") to or that provide coverage to the Debtors, and all agreements, documents or instruments relating thereto (collectively, the "Chubb Insurance Contracts"), and/or (ii) any rights, proceeds, benefits, claims, rights to payments and/or recoveries under such Chubb

Insurance Contracts to the Buyer in its own right or as an assignee of the Debtors; (b) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Insurance Contracts; and (c) for the avoidance of doubt, the Buyer is not, and shall not be deemed to be, an insured under any of the Chubb Insurance Contracts; *provided, however*, that in the event that any claim with respect to the Transferred Assets arises that the Buyer believes is covered by the Chubb Insurance Contracts, the Buyer may request that the Debtors pursue such claim, whereupon the Debtors shall promptly pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and if the Chubb Companies pay the Debtors insurance proceeds in respect of such claim, the Debtors shall promptly turn over to the Buyer any such insurance proceeds (each, a "Proceed Turnover"), *provided, further, however*, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover to the Buyer or any liability related to a Proceed Turnover beyond whatever liability that the Chubb Companies might have to the Debtors under the Chubb Insurance Contracts.  For the avoidance of doubt, any insurance proceeds received by the Debtors from the Chubb Companies in connection with a Proceed Turnover are Transferred Assets, shall be held in trust by the Debtors for the sole benefit of the Buyer and shall be promptly remitted by the Debtors to the Buyer.

51.     Nothing in any chapter 11 plan, confirmation order, conversion order, dismissal order, appointment order, trustee appointment, plan supplement, trust agreement, collateral trust agreement, wind-down agreement, or other document or order in these chapter 11 cases or any successor case (including a converted case under chapter 7) shall conflict with, supersede, modify, impair, or otherwise affect Buyer's rights under the Purchase Agreement or this Order.  The terms and provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any chapter 11 plan in these Chapter 11 cases; (b) converting

these Chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; (c) dismissing these Chapter 11 cases; or (d) pursuant to which this Court abstains from hearing these Chapter 11 cases. The terms and provisions of this Order, notwithstanding the entry of any such orders described in (a)–(d) above, shall continue in these Chapter 11 cases, or following dismissal of these Chapter 11 cases.

52.     Notwithstanding anything to the contrary in this Order (but subject to paragraphs 40 and 41 in connection with the Maplan/Onset Equipment Dispute), the Motion or the record at the Sale Hearing, the consent of the Sale Consenting Parties to the Sale or the Value Allocation Schedule as reflected in this Order or otherwise, and the receipt by any Sale Consenting Party of proceeds from the Sale, shall not:  (a) constitute, or be deemed to constitute, an admission, determination, or finding as to the validity, enforceability, priority, perfection, amount, or extent of any claim, lien, security interest, encumbrance, or other interest held by any Sale Consenting Party or any affiliate, designee, or transferee thereof; (b) constitute, or be deemed to constitute, a waiver, release, compromise, settlement, relinquishment, determination, or finding with respect to any rights, claims, defenses, causes of action, or remedies against any Sale Consenting Party or any affiliate, designee, or transferee thereof, whether arising under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise; or (c) have any preclusive effect (including res judicata, collateral estoppel, judicial estoppel, law of the case, or otherwise) or be used or admitted as evidence in any proceeding, contested matter, adversary proceeding, or other litigation or negotiation (other than in connection with the enforcement of this Order) for any purpose, including, without limitation, as evidence of liability, wrongdoing, or the validity, priority, or extent of any claim or lien, or to impute any adverse inference; *provided*, however, that this Order shall constitute a final settlement and release of all claim, lien, ownership, and priority disputes

between and among the Debtors and the other Sale Consenting Parties solely and exclusively in relation to the Transferred Assets and any allocation or payment of the Base Purchase Price to the Sale Consenting Parties pursuant to this Order and the Value Allocation Schedule.  Such release shall not extend to any other collateral, property, equipment, assets, proceeds, replacements, or products thereof that are not Transferred Assets, nor shall it affect, limit, or prejudice any other rights, claims, or defenses of the Sale Consenting Parties or any other Debtor affiliate, including in any pending or future lawsuit, Successor Case (as defined in the DIP Order) (including that may be brought by a reorganized debtor or by any estate representative appointed under a confirmed plan, including any litigation trust or litigation trustee acting as successor-in-interest to the bankruptcy estate or in any current or future adversary proceedings, including, without limitation, in the adversary proceeding captioned Adv. Pro. No. 26-03005 (CML)).

53.     This Order and the Purchase Agreement shall be binding in all respects upon the Debtors, their estates, Buyer, all creditors (whether known or unknown), all holders of Liens, Liabilities, claims, and interests, all contract counterparties, all governmental units, all landlords, all employees, all labor organizations, all benefit plans, all pension funds, all successors and assigns, any subsequently appointed chapter 7 or chapter 11 trustee, examiner, responsible person, estate representative, plan administrator, wind-down administrator, liquidating trustee, collateral trustee, or other fiduciary, and all other parties in interest.

54.     No chapter 7 or chapter 11 trustee, examiner, responsible person, estate representative, plan administrator, wind-down administrator, liquidating trustee, collateral trustee, or other fiduciary appointed in these chapter 11 cases or any successor case shall have authority to reject, avoid, unwind, rescind, revoke, modify, or otherwise impair the Purchase Agreement, the Sale, the transfer of the Transferred Assets, or Buyer's rights under this Order.

55.     To the extent this Order conflicts with any prior order of this Court, including any order governing rejection, abandonment, assignment, disposition, wind-down, sale, transfer, liens, collateral, cash collateral, or adequate protection, this Order shall govern solely with respect to the Sale, the Transferred Assets, Buyer, and the transactions approved herein.

56.     No access agreement, utility agreement, landlord agreement, service-provider agreement, licensor agreement, creditor agreement, contract-counterparty agreement, or other agreement entered into under or in connection with the Wind Down Order shall modify, impair, condition, or limit Buyer's rights under the Purchase Agreement or this Order, or impose any liability or obligation on Buyer, unless Buyer is a party to such agreement or expressly agrees in writing to be bound by it.

57.     To the extent of any conflict between this Order and the Purchase Agreement, this Order shall govern.

58.     The Debtors, Buyer, and any Buyer Designee are authorized and directed to take all actions necessary or appropriate to implement and effectuate the relief granted in this Order, including executing and delivering any further instruments of sale, transfer, conveyance, assignment, confirmation, or correction reasonably necessary to transfer, convey, and assign to Buyer or any Buyer Designee all Transferred Assets and any additional assets or properties that should have been transferred or assigned to Buyer or any Buyer Designee as Transferred Assets under the Purchase Agreement.

59.     The requirements of Bankruptcy Rule 6004(h) are waived.  This Order is effective and appealable immediately upon entry, without any stay.

60.     The Court retains exclusive jurisdiction to interpret, implement, enforce, and resolve any disputes arising under or related to this Order, including, without limitation, the

Purchase Agreement, the Sale, the transfer of the Transferred Assets, the Assumed Liabilities, the

Permitted Liens, the liabilities excluded under the Purchase Agreement or this Order, transfer

documents, and any related documents, claims, disputes, or proceedings.

Signed:  July 02, 2026

_____

Christopher Lopez
United States Bankruptcy Judge

## Exhibit 1

**Purchase Agreement**

## Exhibit 2

## Value Allocation Schedule

**Project Overdrive – Jasper Transaction Sources & Uses**                                   6/30/2026

| Jasper Transaction Sources & Uses | | | |
|---|---|---|---|
| **Sources** | | **Uses** | |
| Purchase Price | $8,030,000.00 | DIP Lender Distribution | $6,234,341.85 |
| | | Onset Distribution | 633,333.33 |
| | | Disputed Equipment Escrow Amount | 200,000.00 |
| | | Hilco Commssion | 480,666.67 |
| | | Property Taxes | 215,658.15 |
| | | ABL Lender Distribution | 266,000.00 |
| **Total Sources** | **$8,030,000.00** | **Total Uses** | **$8,030,000.00** |