**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| FIRST BRANDS GROUP, LLC, *et al.*, | § | Case No. 25-90399 (CML) |
| | § | |
| Debtors.[1] | § | Jointly Administered |
| | § | |

**EMERGENCY MOTION OF EVOLUTION CREDIT
PARTNERS TO COMPEL SEGREGATION AND TURNOVER
OF POST-PETITION ACCOUNTS RECEIVABLE COLLECTED**

> **Emergency relief has been requested. Relief is requested not later than July 15, 2026. If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding sentence. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Evolution Credit Opportunity Master Fund II-B, L.P. (the "Evolution Inventory Lender" and, together with its affiliated lending entities, Evolution Credit Partners Trade Finance Master, L.P., Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution affiliated funds, collectively, "Evolution"), hereby files this motion (the "Motion") for entry of an order, substantially in the form attached hereto (the "Proposed Order"), (a) compelling the above-captioned debtors and debtors in possession (collectively, the "Debtors") to segregate and turn over no less than $21.5 million in post-petition accounts receivable collected from sales of inventory at Evolution's warehouse locations, which constitute Evolution's collateral and proceeds

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

4911-6362-1052

thereof, and (b) granting related relief.  In support of this Motion, Evolution respectfully states as follows:

**PRELIMINARY STATEMENT**[2]

1.       Since the outset of these cases, Evolution has been vigilant in pursuit of its rights across the Debtors' vast enterprise, including, notably, objecting to the Debtors' use of Evolution collateral, demanding the segregation of all of the Debtors' collected post-petition Evolution collateral, and ultimately obtaining a Court order prohibiting the Debtors' further use of Evolution's collateral.  Despite the Court's unequivocal proscription, Evolution brings this Motion to address the Debtors' disregard for, and failure to protect, Evolution's collateral interests throughout these Chapter 11 Cases.  Based on information Evolution recently received from the Debtors, the Debtors have collected at least $21.5 million in post-petition accounts receivable generated from the sale of Evolution's collateral—inventory located at warehouses in McHenry, Illinois and Patterson and City of Industry, California (collectively, the "Warehouses")—and have failed to segregate or turn it over (except $1.5 million), in direct violation of this Court's directives, the Bankruptcy Code, and the Debtors' obligations under multiple court orders.

2.       Evolution holds a first-priority security interest in all inventory located at the Warehouses and all accounts receivable and other proceeds thereof, and Evolution is the sole secured creditor with respect to these assets.  The Final DIP Order expressly excludes the SPV Debtors and all of their assets from the DIP collateral package.  *See* Final DIP Order ¶ 22(p).  And as noted further below, the recently filed Plan Supplement [Docket No. 3046] confirms that the

---

[2] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to such terms below.

2

ABL lenders do not claim a lien on inventory or receivables at the Warehouses.  *See* infra ¶¶ 18–19.

3. On January 20, 2026, following an evidentiary hearing, this Court found that the Debtors had breached the Adequate Protection Stipulation with Evolution, and prohibited the Debtors from further use of Evolution's collateral absent further order of the Court, directing that proceeds must be segregated and not commingled. *See* Jan. 20, 2026 Hr'g Tr. at 48:11–16. Multiple additional court orders, including the Cash Management Order, independently required the Debtors to segregate collections and prohibited disbursement absent further court order. *See infra* ¶¶ 14–15. The Debtors disregarded these directives.

4. Following entry of the Court's oral order, counsel to Evolution and the Debtors met in late January to discuss collections of accounts receivable on account of sales of Evolution's collateral, at which time Debtors' counsel affirmatively represented that the Debtors had not been able to collect accounts receivable from Evolution's facilities. Subsequent reporting by the Debtors' financial advisor reflected only approximately $1.5 million in collections. It was not until July 1, 2026—more than five months later—that Evolution learned the Debtors had in fact collected no less than $21.5 million in post-petition accounts receivable from sales of inventory at the Warehouses (over $19 million of which was collected prior to the meeting between counsel), none of which have been segregated or turned over to Evolution.  On July 3, 2026, Evolution's counsel sent a demand letter to the Debtors requesting immediate confirmation that the Debtors had transferred $21.5 million into a segregated account for Evolution's sole benefit and agreed to provide ongoing weekly reporting of accounts receivable collected from sales of inventory at the Warehouses, with such amounts to be segregated on the same terms.  A copy of the July 3, 2026 demand letter is attached hereto as **<u>Exhibit A</u>** (the "<u>Demand Letter</u>").  Despite repeated outreach

4911-6362-1052

by Evolution in the interim, the Debtors have still not responded to the Demand Letter and have failed to comply. Evolution's hand has been forced, and it must now seek from the Court what it is plainly entitled to: an order compelling immediate segregation and turnover of those proceeds, together with ongoing reporting and segregation of future collections.

## **RELEVANT BACKGROUND**

**A.      The SPV Facilities and Evolution's Security Interest**

5.      On September 24, 2025 (the "SPV Petition Date"), Patterson Inventory, LLC, Patterson Inventory Holdings, LLC, Starlight Inventory I, LLC, and Starlight Inventory Holdings I, LLC (collectively, the "SPV Debtors") each filed voluntary chapter 11 petitions. On September 28, 2025 (the "FBG Petition Date"), First Brands Group, LLC and the remainder of the Debtors (the "FBG Debtors") also filed voluntary chapter 11 petitions.

6.      In November 2023, debtor Patterson Inventory, LLC (the "Patterson Borrower") entered into that certain Uncommitted Inventory Finance Agreement (the "Patterson Facility") with the Evolution Inventory Lender, providing an uncommitted asset-based revolving credit facility of up to $150 million. The Patterson Borrower's obligations are guaranteed by debtor Patterson Inventory Holdings, LLC (the "Patterson Parent") and secured by a first-priority lien on substantially all assets of the Patterson Borrower, including inventory, accounts, and the proceeds thereof. See *Evolution Inventory Lender's Limited Objection to Debtors' Cash Collateral Motion* [Docket No. 459] (the "Evolution DIP Objection") ¶¶ 8–10.

7.      In March 2024, debtor Starlight Inventory I, LLC (the "Starlight Borrower" and together with the Patterson Borrower, the "Evolution Borrowers") entered into a substantially identical Uncommitted Inventory Finance Agreement (the "Starlight Facility"; together with the Patterson Facility, the "Evolution Facilities") with the Evolution Inventory Lender, providing an additional $150 million revolving facility. The Starlight Borrower's obligations are guaranteed by

4

debtor Starlight Inventory Holdings I, LLC (the "Starlight Parent") and secured by a first-priority lien on substantially all assets of the Starlight Borrower, including inventory, accounts, and the proceeds thereof. *See* Evolution DIP Objection ¶¶ 11–12.

8.      Under each of the Evolution Facilities, the SPV Borrowers purchased inventory from the FBG Debtors, creating a borrowing base to obtain loans from the Evolution Inventory Lender. As of the Petition Date, approximately $230 million in principal obligations under the Evolution Facilities were outstanding. *See Emergency Motion for Entry of an Order Converting Chapter 11 Cases of Certain SPV Debtors to Chapter 7* [Docket No. 2110] (the "Motion to Convert") ¶ 12. The SPV Debtors have no operations, no employees, and no creditors other than Evolution—they are bankruptcy-remote special-purpose vehicles whose assets are subject only to Evolution's first-priority perfected lien. *See id.* ¶ 13.

**B.      The Adequate Protection Stipulation and the Final DIP Order**

9.      On November 9, 2025, this Court entered the *Stipulation and Agreed Order Regarding Adequate Protection Among Debtors and Evolution Credit Partners* [Docket No. 609] (the "Adequate Protection Stipulation"), governing the Debtors' consensual use of Evolution's inventory collateral. Pursuant to the Adequate Protection Stipulation (a) this Court granted Evolution a first-priority automatically perfected lien on Evolution collateral and the proceeds thereof, and an allowed superpriority administrative expense claim under sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, and (b) the Debtors were obligated to maintain Evolution's collateral above specified thresholds and segregate collections of accounts receivable generated from sales of Evolution's inventory. *See* Adequate Protection Stipulation ¶¶ 4–5.

10.      On the same date, this Court entered the Final DIP Order, which expressly excludes the SPV Debtors and all of their assets from the DIP collateral package: "For the avoidance of doubt, and notwithstanding anything to the contrary herein or in the DIP Documents, none of the

4911-6362-1052

SPV Debtors are DIP Guarantors. Nothing in this Final Order or any of the DIP Documents shall grant any liens or claims against any of the SPV Debtors or any assets of SPV Debtors or the proceeds thereof…" Final DIP Order ¶ 22(p).

**C.      The January 20, 2026 Hearing**

11.      On December 23, 2025, Evolution filed its *Emergency Motion to Enforce Stipulation and Agreed Order Regarding Adequate Protection Among the Debtors and Evolution Credit Partners* [Docket No. 1076] (the "Motion to Enforce"), alleging the Debtors had breached the collateral maintenance covenant in the Adequate Protection Stipulation.

12.      Following evidentiary hearings on January 13 and January 20, 2026, this Court found that the Debtors had breached the Adequate Protection Stipulation by failing to satisfy the collateral maintenance threshold and failing to exercise curative actions within the required five-business-day cure period. *See* Jan. 20, 2026 Hr'g Tr. at 42:22–45:25. The Court instructed that the Debtors were "prohibited from using or purchasing Evolution cash collateral or Evolution collateral absent further order of the court." *Id*. at 46:4–7.

13.      Critically, the Court directed that proceeds of Evolution's collateral must be segregated and not commingled: "[T]he proceeds of that cash, until I can determine whether something gets used, absent stipulation of the parties to me is going to have to kind of get parked somewhere in a way that it doesn't get comingled with anything else . . . ." *Id.* at 48:11–16. The Court emphasized that "it's got to stay somewhere, where everybody gets comfortable that the cash is somewhere, and then everybody can assert liens, and then I can kind of make the call at the right time." *Id.* at 49:18–21.

**D.      The Cash Management Order**

14.      The *Final Order (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Bank Accounts, (B) Implement Ordinary Course Changes to Cash*

6

4911-6362-1052

*Management System, and (C) Honor Certain Related Prepetition Obligations, (II) Granting Administrative Expense Priority for Postpetition Intercompany Claims, (III) Extending Time to Comply with Requirements of 11 U.S.C. § 345(b), and (IV) Granting Related Relief* [Docket No. 604] (the "Cash Management Order") independently required the Debtors to segregate collections of accounts receivable generated prepetition. "The FBG Debtors shall direct, to the extent received by the FBG Debtors, and segregate (and continue with any prepetition segregation) all collections regardless of whether received prepetition or postpetition into the Factored Receivables Account… and shall not disburse any such segregated funds from such account pending further order of this Court." Cash Management Order ¶ 6.

15.     The Cash Management Order further requires SPV Accounts (as defined in the Cash Management Order) to "remain segregated from the rest of the Cash Management System" with "no Intercompany Transactions between the SPV Debtors and any of the other Debtors." *Id.* ¶ 8.

**E.     The Debtors' Actual Post-Petition Collections**

16.     Following the January 20, 2026 ruling, Evolution sought information from the Debtors regarding their efforts to collect post-petition accounts receivable from sales of inventory at the Warehouses. On a January 24, 2026 call, the Debtors' counsel represented that the Debtors "haven't been able to collect A/R from Evolution facilities." The Debtors' financial advisor, Alvarez & Marsal ("A&M"), subsequently reported only approximately $1.5 million in BPI accounts receivable as having been "collected and segregated" since January 20, 2026.[3]  Despite

---

[3] The Debtors have taken the position that the inventory located at the Warehouses is "predominately, if not entirely," owned by Brake Parts, Inc. ("BPI"). *See* Jerneycic Decl. [Docket No. 1285] ¶ 23. Evolution disputes this assertion. Contrary to the Debtors' position, the inventory at the Warehouses is owned by the SPV Debtors, and the inventory's ownership is currently the subject of Evolution's pending adversary proceeding. *See* Adv. No. 25-03800, Docket No. 9 ¶ 78 (seeking declaration that the SPV Debtors "own the Collateral, subject only to the first-priority, perfected lien and security interest in the Collateral held by the Evolution Inventory Lender")

4911-6362-1052

Evolution's repeated requests in the months since, the Debtors did not provide additional reporting on collections progress.

17. On July 1, 2026, newly produced data revealed for the first time that the Debtors had collected approximately $18.6 million from the Midwest Distribution Center and approximately $2.5 million from the West Coast Distribution Center—over $21 million in aggregate from the Evolution facilities. These collections constitute non-DIP cash collateral and have not been segregated in accordance with the Adequate Protection Stipulation, the Cash Management Order, or this Court's express direction at the January 20, 2026 hearing.

18. On July 3, 2026, Evolution's counsel sent the Demand Letter to the Debtors based on the information received, and demanding compliance with the Court's oral orders.  No response has been received by the date of this filing.

**F.    The Plan Supplement Confirms Evolution Is the Sole Secured Creditor on These Assets**

19. On June 23, 2026, the Debtors filed the Plan Supplement, including the ABL Collateral Trust Agreement as Exhibit 7.  Exhibit D thereto identifies inventory at 25 specific warehouse addresses constituting ABL Priority Collateral. See Plan Supplement, Exhibit 7, Exhibit D [Docket No. 3046-7] at 53–55. None of the Warehouses—1100 Corporate Drive, McHenry, IL; 1380 Corporate Drive, McHenry, IL; 14528 Bonelli St., City of Industry, CA; or 2701 Keystone Pacific Pkwy, Suite 100, Patterson, CA—appear on that list.

20. The Plan Supplement further provides that ABL Collateral Trust Assets "shall not include any assets that are determined by Final Order to be (a) property of the SPV Debtors or their Estates, any of the Factors, or any of the SPV Lenders, or (b) subject to a validly perfected first-priority Lien asserted by a Factor, the SPV Lenders, or the DIP Secured Parties." *Id.* at 53. The ABL Secured Parties thus do not claim a lien on inventory or receivables at Evolution's

4911-6362-1052

Warehouses, leaving Evolution as the undisputed sole secured creditor with respect to these assets and their proceeds—both on account of the Final DIP Order's lien grant, as well as its prepetition security interests.

**RELIEF REQUESTED**

21.     Evolution respectfully requests that this Court enter an order, substantially in the form of the Proposed Order, (a) compelling the Debtors to immediately transfer no less than $21.5 million (or such greater amount as has been collected to date from post-petition accounts receivable generated from sales of inventory at the Warehouses) into a segregated account for Evolution's sole benefit, free and clear of any and all liens, encumbrances, and interests; (b) compelling the Debtors to provide Evolution with an accounting of all such collections, including the identity of each payor, the applicable invoice numbers, and the amounts and dates of each collection; (c) compelling the Debtors to provide Evolution with ongoing weekly reporting of accounts receivable collected from the Warehouses, with such amounts to be immediately segregated and turned over to Evolution on the same terms; (d) prohibiting the Debtors from using, disbursing, or otherwise disposing of any funds collected on account of post-petition accounts receivable from the Warehouses pending turnover to Evolution; and (e) granting such other and further relief as this Court deems just and proper.

**BASIS FOR RELIEF**

**A.     Evolution Holds an Undisputed First-Priority Lien on the Collected Proceeds**

22.     This Court has repeatedly upheld Evolution's interests in its collateral, and mandated protection of such interests. There is no genuine dispute that Evolution holds a first-priority perfected security interest in the proceeds at issue.  As set forth above, the Evolution Facilities grant the Evolution Inventory Lender a first-priority security interest in all assets of the Evolution Borrowers, including inventory, accounts, and the proceeds thereof, perfected by UCC-

9

4911-6362-1052

financing statements and deposit account control agreements. *See supra* ¶¶ 6–7; Evolution DIP Objection ¶ 14. These liens have been repeatedly confirmed by this Court, including through the Adequate Protection Stipulation, granting Evolution's first-priority security interest. Adequate Protection Stipulation, ¶ 5; Jan. 20, 2026 Hr'g Tr. at 46:18–47:14. And there are no competing lienholders, let alone competing lienholders who can assert a senior lien on such assets.

23.     The DIP Secured Parties cannot claim a security interest in Evolution's collateral, as the Final DIP Order expressly excludes the SPV Debtors and all of their assets from the DIP collateral package, meaning no DIP lien or adequate protection lien encumbers Evolution's collateral. *See* supra ¶ 10. In addition, the Plan Supplement confirms that the ABL Secured Parties do not claim any lien on inventory or receivables at the Warehouses. *See supra* ¶¶ 18–19.

24.     Because Evolution is the sole secured creditor with respect to these assets and their proceeds, there is no competing lien to adjudicate. The collected accounts receivable are Evolution's collateral, and the Debtor is explicitly prohibited from using such amounts.[4]

**B.     The Debtors Must Segregate and Turn Over Evolution's Collateral**

25.     Evolution's automatically perfected security interest in the subject inventory and proceeds was most recently confirmed by this Court's January 20, 2026 ruling confirming Evolution's first-priority lien on all Evolution collateral and proceeds thereof. *See* Jan. 20, 2026 Hr'g Tr. at 46:18–47:14. And when the Debtors proved incapable of abiding by their covenants to provide adequate protection of Evolution's interests, this Court explicitly prohibited the Debtors

---

[4] While the Debtors have taken the position that inventory at the Warehouses is owned by BPI (not the SPV Debtors) and thus any accounts receivable or proceeds from such inventory does not constitute Evolution's collateral, that issue is currently the subject of Evolution's pending adversary proceeding [Adv. No. 24-03800], and there is no basis for Debtors to retain, use, or commingle these assets. Indeed, in a related decision involving the Debtors' release of funds from the Factored Receivables Account, District Judge Rosenthal held that "absent clear evidence or legal precedent that refutes the claimant's right to an asserted property interest, the claimant is entitled to adequate protection until an adversary proceeding determines the validity, extent, and priority of the asserted property interest." [Case No. 26-00073, Docket No. 28, at 8]. Thus, Evolution's cash collateral must be segregated.

10

4911-6362-1052

from further using Evolution's collateral, commingling it with the Debtors' other assets and receivables, and directing the Debtors to segregate and "park" collections of such collateral pending further Court order. While no further Court order has been entered, its guidance has not been adhered to, and millions of dollars of Evolution collateral has been commingled with other Debtor assets they intend to distribute to other secured lenders under the proposed Plan.

26.     The Debtors are in possession of at least $21.5 million in accounts receivable collected post-petition from sales of inventory at the Warehouses. That inventory was—and remains—Evolution's collateral. The accounts receivable generated from those sales are proceeds of Evolution's collateral under Article 9 of the Uniform Commercial Code. *See* U.C.C. § 9-315(a)(2) (a security interest attaches to any identifiable proceeds of collateral).

27.     Because these funds constitute Evolution's cash collateral, the Debtors have no right to retain, use, or commingle them. Section 363(c)(2) of the Bankruptcy Code prohibits a debtor in possession from using cash collateral unless "each entity that has an interest in such cash collateral consents" or "the court, after notice and a hearing, authorizes such use." 11 U.S.C. § 363(c)(2). The statutory prohibition is absolute. Evolution has not consented to the Debtors' use of these proceeds. No court order authorizes their use. To the contrary, this Court expressly prohibited the Debtors from using Evolution's collateral and directed that proceeds be segregated. *See supra* ¶¶ 12–13. The Debtors' retention and commingling of $21.5 million in Evolution's cash collateral is thus a violation of both section 363(c)(2) and this Court's orders.

28.     Moreover, Section 363(c)(4) of the Bankruptcy Code expressly requires the debtor in possession to "segregate and account for any cash collateral in [its] possession, custody, or control," unless Section 363(c)(2) applies—*i.e.*, unless the secured party has consented (or the

11

4911-6362-1052

court has authorized) the use of the cash collateral.  Evolution has not consented since the Adequate

Protection Stipulation was terminated.

29.     Section 363(e) of the Bankruptcy Code requires the Court to "prohibit or condition"

the use of a secured creditor's cash collateral "as is necessary to provide adequate protection." 11

U.S.C. § 363(e).  In combination with Section 363(c)(4), the Debtors are required segregate and

provide accounting for Evolution's cash collateral unless there is an order providing otherwise.

*See, e.g.*, *In re Four Seasons Marine & Cycle, Inc.*, 263 B.R. 764, 768–71 (Bankr. E.D. Tex. 2001)

(explaining that a debtor in possession is "absolutely prohibited" from using cash collateral absent

creditor consent or court authorization and has an "absolute obligation to segregate and to account

for all such cash collateral," and recognizing the bankruptcy court's power to rectify misuse of

cash collateral). That is precisely what Evolution seeks here.

**C.     The Debtors' Conduct Violates Multiple Court Orders**

30.     Beyond the Bankruptcy Code's independent requirements, the Debtors' failure to

segregate and turn over these proceeds violates no fewer than three separate court orders, including

one express judicial directive.

    a.  <u>The Court's January 20, 2026 Directive</u>. This Court expressly directed through the January 20 oral order that proceeds of Evolution's collateral must be segregated and not commingled. *See supra* ¶ 13. The Debtors disregarded this directive entirely, collecting $21.5 million in proceeds and commingling them with their general operating funds.

    b.  <u>The Adequate Protection Stipulation</u>. The Adequate Protection Stipulation required the Debtors to segregate collections of accounts receivable generated from sales of Evolution's inventory. *See supra* ¶ 9. The Debtors failed to do so.

    c.  <u>The Cash Management Order</u>. The Cash Management Order required the Debtors to segregate all collections of accounts receivable on account of pre-petition inventory sales into the Factored Receivables Account and prohibited disbursement absent further order. See supra ¶ 14. The Debtors violated these requirements.

31.     A bankruptcy court has broad authority under section 105(a) of the Bankruptcy Code to enforce compliance with its own orders. 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). This authority extends to compelling compliance with prior court orders and stipulations. The Debtors' serial violations of this Court's orders warrant the immediate relief Evolution requests.

**D.     The Debtors' Repeated Violations of Evolution's Rights Underscore the Need for Immediate Relief**

32.     The urgency of this Motion is compounded by the Debtors' course of conduct. Following the January 20 oral order from the Court, Debtors' counsel affirmatively represented that the Debtors had not been able to collect material amounts of accounts receivable from Evolution's facilities.  The Debtors' professionals' subsequent reporting reflected approximately $1.5 million in collections.  Beginning in March 2026, the Debtors stopped reporting collections on a facility-by-facility basis, cutting off the very transparency that would have revealed the scope of their collections, despite the vast majority of collections having already occurred, but omitted by the Debtors' reporting, by this stage. It was not until July 1, 2026—more than five months later—that newly produced data revealed the Debtors had in fact collected more than $21.5 million. On July 3, 2026, Evolution sent the Demand Letter seeking immediate segregation and turnover. The Debtors have not responded or complied. This is not a mere oversight. It reflects a pattern of concealment that has caused direct harm to Evolution's secured interests.

33.     Where a debtor has failed to account for or comply with obligations to preserve and turn over estate property, courts may require turnover and accounting and may impose coercive relief to ensure compliance. *See In re Tate*, 521 B.R. 427, 431–32, 444–48 (Bankr. S.D. Ga. 2014) (enforcing turnover order where debtor failed to account for estate funds, provided false and

4911-6362-1052

incomplete accountings, and repeatedly disregarded court orders, and concluding that coercive incarceration was warranted after lesser sanctions failed); *In re Shore*, 193 B.R. 598, 600–03 (S.D. Fla. 1996) (affirming civil contempt order where debtor received estate property, failed to disclose or turn over the funds, and disobeyed an agreed turnover order). Here, the Debtors' track record in these cases—breaching the Adequate Protection Stipulation, misrepresenting the status of collections, ceasing facility-level reporting, and commingling $21.5 million in Evolution's cash collateral—demonstrates that they cannot be trusted to hold Evolution's collateral. Turnover is both warranted and necessary.

### EMERGENCY CONSIDERATION

34.     Pursuant to Bankruptcy Local Rule 9013-1, Evolution respectfully requests emergency consideration of this Motion on or before the hearing currently scheduled for July 15, 2026. Evolution first contacted the Debtors regarding its concerns and these issues through the Demand Letter, giving the Debtors substantial notice of the disputes set forth herein and the relief Evolution requests, but the Debtors have not complied and have offered no response. Moreover, the Debtors' continued failure to abide by their commitments and the Court's directions substantially supports the need for emergency consideration well in advance of the proposed Plan confirmation hearings scheduled for July 28, 2026, as the Debtors proposed to distribute all of their assets thereunder without recourse for Evolution.

14

4911-6362-1052

WHEREFORE, for the reasons set forth herein, Evolution respectfully requests that the Court enter the Proposed Order granting the relief requested in this Motion and such other and further relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 8th day of July 2026.

**GRAY REED**

By: */s/ Jason S. Brookner*
    Jason S. Brookner
    Texas Bar No. 24033684
    Emily F. Shanks
    Texas Bar No. 24110350
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:      jbrookner@grayreed.com
           eshanks@grayreed.com

- and -

**PROSKAUER ROSE LLP**

    Vincent Indelicato (admitted *pro hac vice*)
    Matthew R. Koch (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
Email:      vindelicato@proskauer.com
           mkoch@proskauer.com

- and -

    Charles A. Dale (admitted *pro hac vice*)
One International Plaza
Boston, MA 02110-2600
Telephone:  (617) 526-9600
Email:      cdale@proskauer.com

- and -

    Jordan E. Sazant (admitted *pro hac vice*)
70 W Madison St, Suite 3800
Chicago, IL 60602
Email:      jsazant@proskauer.com

*Counsel to the Evolution Inventory Lender*

15

4911-6362-1052

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 8th day of July 2026, he caused a true and correct copy of the foregoing document by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Jason S. Brookner*
Jason S. Brookner

16

4911-6362-1052

## EXHIBIT A

**Demand Letter**

4911-6362-1052


Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

July 3, 2026

Vincent Indelicato
Global Co-Chair, Restructuring
d +1.212.969.4248
f 212.969.2900
vindelicato@proskauer.com
www.proskauer.com

**VIA E-MAIL**

Mr. Clifford W. Carlson, Esq.
Weil, Gotshal & Manges LLP
700 Louisiana Street, Suite 3700
Houston, TX 77002
Email:  clifford.carlson@weil.com

Re: *In re: First Brands Group, LLC, et al.*, Case No. 25-90399 (CML)

**<u>Demand for Turnover of Collected Post-Petition Receivables From West Coast and Midwest Distribution Centers</u>**

Dear Cliff:

We write to you as counsel to Evolution Credit Opportunity Master Fund II-B, L.P. (the "<u>Evolution Inventory Lender</u>" and together with its affiliated lending entities, "<u>Evolution</u>")[1] with respect to the collection of post-petition accounts receivable resulting from the sales of inventory from the West Coast and Midwest distribution centers associated with the Brake Parts, Inc. business unit of the debtors in the subject bankruptcy case (collectively, the "<u>Debtors</u>").  As you know, the Evolution Inventory Lender asserts a first-priority security interest in the assets of certain Special Purpose Vehicle debtors, including all inventory located in the following warehouse locations: (a) 1100 Corporate Drive and 1380 Corporate Drive, McHenry, IL, and (b) 14528 Bonelli St., City of Industry, CA and 2701 Keystone Pacific Pkwy, Suite 100 Patterson, CA (collectively, the "<u>Warehouses</u>"), and all accounts receivable and other proceeds thereof.

Since the Petition Date, Evolution has repeatedly asserted its rights to such assets and has demanded information from the Debtors regarding efforts to collect, segregate, and maintain Evolution's collateral.  These efforts include, but are not limited to, (a) filing an adversary proceeding to determine its priority security interests in the subject assets (Adv. Proc. No. 25-3800), (b) entering into multiple stipulations for adequate protection of its interests, requiring the Debtors to segregate collections of subject accounts receivable (*see* Docket Nos. 147, 216, and 609), (c) filing a motion to enforce the stipulated relief once violated by the Debtors (Docket No. 1076), (d) affirmatively demanding additional adequate protection of its interests (Docket No. 1892), and (e) multiple meet and confer sessions with the Debtors and their professionals attempting to address the Debtors' deficiencies in collecting post-petition accounts receivable that constitute Evolution's collateral.

---

[1] "<u>Evolution</u>" shall mean, individually and collectively, Evolution Credit Opportunity Master Fund II-B, L.P., Evolution Credit Partners Trade Finance Master, L.P. (as successor in interest to Evolution Credit Partners Trade Finance L.P.), Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution affiliated funds.

Proskauer»

Mr. Clifford Carlson, Esq.
July 3, 2026
Page 2

As a result of Evolution's efforts, (a) the Debtors were required to segregate and maintain in escrow the receipts of collected accounts receivable, (b) return $25.7 million of the Debtors' cash to the segregated factored receivables account for Evolution's benefit, and (c) were prohibited as of January 20, 2026 from using Evolution's collateral in the operation of its business. *See generally* Jan. 20, 2026 Hr'g Tr. (finding Debtors to have violated the adequate protection stipulations executed with Evolution, prohibiting further use of Evolution collateral, and stating that collections on sales of Evolution collateral were required to "get parked somewhere so it doesn't get commingled with anything else" and could be applied to Evolution's first-priority perfected lien on its collateral and proceeds).

The inventory located in the Warehouses and its proceeds do not constitute DIP Collateral. *See* Docket No. 608, ¶ 22(p) (specifically excluding the SPV Debtors and all of their assets from the DIP collateral package and adequate protection package). These assets also do not constitute ABL Priority Collateral. *See* Docket No. 3046-7 at 1-2 (List of ABL Collateral Trust Assets, including the inventory located at specified warehouses, excluding the Warehouses).

Following the Court's prohibition against further Debtor use of Evolution's collateral, Evolution sought clarity and information from the Debtors regarding their efforts to collect post-petition accounts receivable from sales of inventory at the Warehouses. Indeed, as of January 24, 2026, following the Debtors' violations of the stipulated orders entered into with Evolution, the Debtors reported having made no substantial progress in collecting such accounts receivable.

Remarkably, after months of pursuing critical information and reporting from the Debtors, on July 1, 2026, Evolution learned from the Debtors ***for the first time*** that the Debtors have collected no less than $21.5 million from collection of post-petition accounts receivable generated from sales of inventory at the Warehouses. These collections have not been segregated in accordance with the Debtors' obligations under their stipulations with Evolution, the Bankruptcy Court's order prohibiting the Debtors' further use of any and all Evolution collateral and cash collateral in accordance with the Bankruptcy Code, and must be turned over to Evolution. The Debtors' failure to do so is further failure to provide adequate protection to Evolution as required by the Bankruptcy Code and the Court.

**Evolution hereby requests the Debtors confirm (i) they have transferred $21.5 million free and clear of any and all liens, encumbrances, and interests into a segregated account for Evolution's sole benefit, and (ii) their agreement to provide Evolution with ongoing weekly reporting of accounts receivable collected from sales of inventory at the Warehouses with such amounts to be segregated on the same terms.**

**Should the Debtors fail to provide prompt confirmation of compliance with these requests, Evolution intends to seek emergency relief, including an order compelling the segregation and turnover of such accounts receivable, together with any other appropriate relief.**

We are available at your convenience to discuss should you have any questions.

Evolution reserves all rights.

**Proskauer**»

Mr. Clifford Carlson, Esq.
July 3, 2026
Page 3

Sincerely,

/s/ Vincent Indelicato

Vincent Indelicato

cc: Ronald Sommers, Chapter 7 SPV Debtors' Trustee
    Michael Duke, Esq.
    Charles A. Dale III, Esq.
    Jordan Sazant, Esq.

**Proskauer**»