**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | **Re: Docket No. 2644** |

**DEBTORS' OBJECTION TO TQL'S MOTION**
**TO ALLOW AND COMPEL PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), file this objection ("**Objection**") to *Total Quality Logistics, LLC's Emergency Motion to Allow Administrative Expense Claim Pursuant to 11 U.S.C. Section 503(b)(1)(A) and Compel Payment* (Docket No. 2644) (the "**Motion**") filed by Total Quality Logistics, LLC ("**TQL**").  The Debtors respectfully represent as follows:[2]

**Preliminary Statement**

1.      *First*, the Motion should be denied because TQL does not, and cannot, meet its burden to establish that immediate payments of its asserted $268,499.20 administrative expense is necessary.  Although TQL acknowledges that the timing of payment of an administrative expense claim is subject to the Court's discretion, TQL offers no basis for requiring immediate payment of its asserted claim ahead of the Debtors' other similarly situated administrative creditors.  Courts have consistently held that an administrative claimant seeking immediate

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Joint Plan (as defined herein).

payment must demonstrate that "there is a necessity to pay and not merely that the Debtor has the ability to pay."[3]  Moreover, courts in the Fifth Circuit apply a balancing test that evaluates the prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors when considering requests for immediate payment.[4]  Each factor weighs decisively against the relief TQL seeks.  TQL does not contend that delayed payment threatens its operations or creates irreparable harm.  Rather, TQL asserts a preference for immediate payment rather than participation in the Debtors' chapter 11 plan process.  That is insufficient as a matter of law.

2.      *Second*, the Motion attempts to litigate issues that are now moot or otherwise premature.  TQL's arguments were in response to a chapter 11 plan which the Debtors are no longer seeking to prosecute.[5]  The Debtors have filed a new chapter 11 plan (the "**Joint Plan**")[6] that is set for confirmation on July 28, 2026 that either addresses or moots several of the issues raised by TQL.  In any event, TQL's arguments concerning the treatment of administrative claims and waterfall recoveries are confirmation issues that should be addressed at the Confirmation Hearing and not through a motion seeking preferential payment outside of the plan process.  TQL effectively seeks to elevate its claim above those of similarly situated administrative creditors based on objections it intends to raise at confirmation.  The Debtors disagree with the

---

[3]   *In re NE Opco, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) (citing *In re Global Home Products, LLC*, 2006 Bankr. LEXIS 3608, *3 (Bankr. D. Del. 2006)); *see also In re Cont'l Airlines*, 146 B.R. 520, 531 (Bankr. D. Del. 1992) ("To qualify for exceptional immediate payment, a creditor must show that 'there is a necessity to pay and not merely that the Debtor has the ability to pay.'") (quoting *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 178-79 (Bankr. S.D.N.Y. 1989)).

[4]   See *In re Texas Pellets*, *Inc.,* No. 16-90126 (BP), 2017 WL 6508974, at *4 (Bankr. E.D. Tex. Dec. 19, 2017) (citing *In re ATP Oil & Gas, Corp.*, No. 12-36187 (MI), 2014 WL 1047818, at *10 (Bankr. S.D. Tex. Mar. 18, 2014)).

[5]   TQL filed the Motion in response to the *Chapter 11 Plan of Premier Marketing Group, LLC* (Docket No. 2544) (the "**Single Debtor Plan**") which is no longer being prosecuted.

[6]   The Debtors filed a solicitation version of the Joint Plan, as conditionally approved by the Bankruptcy Court, at Docket No. 3019.

merits of those arguments and will address them, if necessary, at the Confirmation Hearing.  They provide no basis for compelling immediate payment now.

3.      Accordingly, for the reasons set forth herein, the Motion should be denied.

### Background

4.      On September 24, 2025, Global Assets LLC and 12 debtor affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), and commencing on September 28, 2025, First Brands Group, LLC and the remaining Debtors each filed a voluntary case under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.  The Debtors' chapter 11 cases are being jointly administered for procedural purposes only.

5.      On October 9, 2025, the Office of the United States Trustee for the Southern District of Texas appointed the Official Committee of Unsecured Creditors (Docket No. 313).

6.      On May 12, 2026, TQL filed the Motion seeking entry of an order (i) allowing an administrative expense claim in the amount of $268,499.20 and (ii) compelling the Debtors to pay such amount within 14 days of entry of the order.

7.      On June 16, 2026, the Debtors filed the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3019).

### Objection

**I.      TQL is Not Entitled to Immediate Payment**

8.      TQL's request for immediate payment of its asserted administrative claim should be denied.  As TQL agrees, "[t]he timing of payment for administrative expenses is discretionary and determined by the bankruptcy court based on equitable considerations."  Motion ¶ 35. *See also In re ATP Oil & Gas, Corp.*, No. 12-36187 (MI), 2014 WL 1047818, at *10 (Bankr.

S.D. Tex. Mar. 18, 2014) ("[t]he timing of payment of administrative expenses is within the Court's discretion."). However, Courts generally "prefer to postpone payment of [an] administrative claim until after confirmation of a plan . . . ." *ATP Oil & Gas*, 2014 WL 1047818, at *10 (quoting 2 Norton Bankr. L. & Prac. 2d § 42:14 (1998)); *see also In re Appletree Markets Inc.,* 139 B.R. 417, 419 (Bankr. S.D. Tex. 1992) ("Often in Chapter 11 cases, administrative expenses are not paid until confirmation."); *In re Cont'l Airlines, Inc.*, 146 B.R. 520, 531 (Bankr. D. Del. 1992) ("Most courts postpone actual payment until confirmation of a plan.").

9.      In determining whether to require immediate payment of an administrative expense claim, a court's primary concern is the "orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets." *In re Chi-Chi's Inc.*, 305 B.R. 396, 401 (Bankr. D. Del. 2004) (citing *In re HQ Glob. Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002)). Thus, "[t]o qualify for exceptional immediate payment, a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay." *In re NE Opco, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) (quoting *In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006)).

10.      Courts in the Fifth Circuit analyze the following three factors when determining whether immediate payment of an administrative expense is warranted: "(1) the prejudice to the debtor; (2) the hardship to the claimant; and (3) potential detriment to other creditors." *In re Texas Pellets*, *Inc.,* No. 16-90126 (BP), 2017 WL 6508974, at *4 (Bankr. E.D. Tex. Dec. 19, 2017) (citing *ATP Oil & Gas*, 2014 WL 1047818, at *10).

11.      As discussed below, an application of these factors weighs strongly against compelling immediate payment for TQL's asserted administrative claim, even if the claim is ultimately allowed.

### a.     Requiring Immediate Payment Will Prejudice the Debtors

12.     The first factor considers the prejudice to a debtor if immediate payment is required.  *See ATP Oil & Gas*, 2014 WL 1047818, at \*10; *see also Glob. Home Prods.*, 2006 WL 3791955, at \*4.

13.     The facts and circumstances of these chapter 11 cases and the facts alleged in the Motion do not support immediate payment under the first prong.  Requiring the Debtors to immediately pay TQL's asserted administrative claim will immediately and adversely impact the Debtors' limited liquidity and incentivize other claimants to attempt to collect on their claims before the Debtors can finish soliciting, let alone confirming, the Joint Plan.

14.     The Debtors estimate that approximately $222 million in administrative expense claims may be asserted in these chapter 11 cases.[7]  The Joint Plan provides an orderly and value-maximizing framework for addressing those claims, including by providing for payment in full, in cash, of all allowed administrative expense and priority claims of the FBG Debtors on or before the Effective Date, pursuant to a Litigation Trust Waterfall that pays such claims ahead of DIP Roll-Up Claims, prepetition secured claims, and unsecured claims.  The Joint Plan further maximizes value for all creditors by funding and monetizing estate claims and causes of action for the benefit of the DIP Lenders and administrative, priority, and unsecured creditors.  Allowing TQL to obtain immediate payment outside that process would permit a single administrative claimant to jump ahead of similarly situated creditors, which would be neither fair nor equitable and would inevitably encourage other creditors to seek comparable relief.  Such a result would threaten the orderly administration of the estates, deplete liquidity needed to confirm and

---

[7]     *See Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3020), at IV(P).

consummate the Joint Plan, undermine the Debtors' ability to pay administrative claims in full on a fair and equitable basis through the plan process, and create precisely the type of race to the courthouse courts seek to avoid.  Granting such requests for immediate payment could also jeopardize the Debtors' use of cash collateral and risk defaults under the Debtors' postpetition financing agreement due to the minimum liquidity covenants contained therein.

15.    That conclusion is especially warranted where the Debtors must reconcile TQL's asserted claim against the broader universe of potential administrative expense claims and any available defenses, including setoff, counterclaims, and avoidance actions.  Immediate payment would force the Debtors to litigate and pay one claimant in isolation, before completing the orderly claims reconciliation process necessary to treat similarly situated administrative creditors fairly.  Moreover, requiring the Debtors to respond to ad hoc requests for immediate payment diverts finite estate resources and personnel away from confirmation, claims reconciliation, and other work necessary to maximize value for all creditors.  The Court should not require the Debtors to expend those resources on a piecemeal process that rewards those that rush to file these types of motions rather than preserving an orderly process for all administrative creditors.

b.    **TQL Has Not Demonstrated a Material Hardship**

16.    The second factor considers the prejudice to a claimant from a delay in payment of its administrative expense claim.

17.    TQL has not offered any evidence to show that waiting for payment would create a material hardship for it and has not provided any tangible detail why its situation is distinguishable from any other holder of an administrative claim.  In fact, TQL argues that it should be treated differently than all other administrative expenses creditors under the Joint Plan.  This is not a showing of prejudice but merely a desire for special treatment.

6

18.     Accordingly, TQL has failed to carry its burden as to why immediate payment is necessary, beyond the desire to be paid immediately from the Debtors.  Any prejudice of TQL from not receiving immediate payment of its asserted administrative expense claim is far outweighed by the potential risk and destabilization the Debtors may face.

**c.     Other Creditors Would be Harmed by Immediate Payment**

19.     The third factor considers the potential detriment to other creditors if immediate payment to TQL is authorized.

20.     Immediate payment of TQL's alleged administrative expense claim would prejudice similarly situated administrative claimants who have not sought comparable relief and would undermine the Debtors' orderly process for addressing administrative claims through the Joint Plan.  The Joint Plan contemplates that allowed administrative expense claims will be addressed through an equitable framework, including through the use of proceeds from litigation recoveries to fund payments on such claims.  Allowing TQL to obtain immediate payment outside that framework would permit one claimant to jump ahead of the process, deplete liquidity needed to confirm the Joint Plan, and impair the Debtors' ability to address administrative claims on a fair and equitable basis.  Requiring immediate reconciliation and payment in response to the Motion would also invite other potential administrative expense claimants to seek the same accelerated treatment, creating a race for payment that would further strain the Debtors' available resources and distract from the confirmation process.

21.     For the reasons set forth herein, the Debtors respectfully submit that TQL's request for immediate payment of its asserted administrative expense claim should be denied.

**II.     TQL's Plan Issues Should Be Considered at the Confirmation Hearing.**

22.     TQL's arguments concerning waterfall recoveries, the treatment of postpetition trade claims, and the alleged impairment of administrative priority were made in

response to the Single Debtor Plan, which is no longer being prosecuted.  Rather, since the filing of the Motion, the Debtors have filed a revised joint chapter 11 plan of liquidation proposed by all 92 of the FBG Debtors which addresses several of the issues raised by TQL.  In particular, TQL objected that the prior plan structure would dilute administrative expense claim recoveries by requiring administrative creditors to share recoveries with billions of dollars of Roll-Up Claims, prepetition secured claims, and general unsecured claims, and by delaying any recovery until after substantial waterfall payments.  *See* Motion ¶¶ 10, 22, 40.  The Joint Plan addresses those concerns by providing for payment of all allowed administrative expense and priority claims of the FBG Debtors in full in cash ahead of $3.5 billion in DIP Roll-Up Claims, prepetition secured claims and unsecured claims on or before the Effective Date.  The Joint Plan maximizes value for all creditors by funding and monetizing estate claims and causes of action through the Litigation Trust for the benefit of the DIP Lenders and administrative, priority, and unsecured creditors.  Therefore, TQL's arguments are moot.

23.     In any event, such arguments are confirmation issues governed by section 1129 of the Bankruptcy Code.  Those arguments should be addressed, to the extent still relevant, at the Confirmation Hearing together with any objections raised by other parties in interest.  *See, e.g.*, *In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) ("The question whether a plan meets requirements for confirmation is usually answered at confirmation hearings.").

24.     In sum, TQL's asserted administrative expense claim is no different from the approximately $220 million of claims of the Debtors' other administrative creditors and TQL has identified no basis upon which its claim should receive superior treatment.  The plan process will ensure equitable treatment of all administrative creditors.

9

**Reservation of Rights**

25.     The Debtors reserve all rights to supplement or add to the legal and factual arguments raised in this Objection and to object to the Motion, including by filing declarations in support of this Objection, on any basis whatsoever, at a future date.  Nothing herein shall be interpreted as an admission that any claim described herein is valid, and the Debtors reserve all rights with respect thereto.

For the foregoing reasons the Debtors respectfully request that the Court deny the Motion.

Dated:  July 8, 2026
      Houston, Texas

                                     */s/  Clifford W. Carlson*

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   gabriel.morgan@weil.com
         clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   matt.barr@weil.com
         sunny.singh@weil.com
         andriana.georgallas@weil.com
         kevin.bostel@weil.com
         jason.george@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

## Certificate of Service

I hereby certify that on July 8, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


             */s/ Clifford W. Carlson*
             Clifford W. Carlson