**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*, | Case No. 25-90399 (CML) |
| Debtors. [1] | (Jointly Administered) |

**JOINDER OF SPV DEBTORS' TRUSTEE RONALD SOMMERS IN
EVOLUTION'S EMERGENCY MOTION TO COMPEL SEGREGATION AND
TURNOVER OF POST-PETITION ACCOUNTS RECEIVABLE COLLECTED**

Ronald J. Sommers, the Chapter 7 Trustee (the "Trustee") of Debtors Patterson Inventory, LLC, Patterson Inventory Holdings, LLC, Starlight Inventory I, LLC, and Starlight Inventory Holdings I, LLC (collectively, the "SPV Debtors"), joins in the *Emergency Motion of Evolution Credit Partners to Compel Segregation and Turnover of Post-Petition Accounts Receivable Collected* [Docket No. 3144] (the "Motion") submitted by Evolution Credit Opportunity Master Fund II-B, L.P. (the "Evolution Inventory Lender" and, together with its affiliated lending entities, Evolution Credit Partners Trade Finance Master, L.P., Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution affiliated funds, collectively, "Evolution"), and respectfully states as follows:

**JOINDER**[2]

1.      As the Chapter 7 Trustee for the bankruptcy estates of the SPV Debtors, the Trustee has an interest in maximizing the value of the SPV Debtors' estates for the benefit of the SPV Debtors' creditors.  In furtherance of that interest, the Trustee agrees that collections of accounts

---

[1]  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]  Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Motion.

receivable generated from sales of inventory at the Warehouses (defined below)—which is inventory owned by the SPV Debtors—should be segregated into a separate account and not used by First Brands Group, LLC and the remaining Debtors (the "FBG Debtors") or commingled with other funds.

2.　　Accordingly, the Trustee joins Evolution's Motion in full.

**A.　The SPV Debtors Own the Disputed Inventory, and Accounts Receivable Generated from Sales of Such Inventory Should Be Segregated**

3.　　The Motion states, and the Trustee agrees, that the SPV Debtors owned the inventory located at warehouses in McHenry, Illinois, and Patterson and City of Industry, California (collectively, the "Warehouses") as of the petition date.  *See* Motion ¶¶ 8, 16 n.3, 24 n.4, 26.  The SPV Debtors are therefore entitled to proceeds and accounts receivable generated from the sale of that inventory.

4.　　The Trustee understands that the FBG Debtors and their financial advisor, Alvarez & Marsal ("A&M"), contend that the inventory located at the Warehouses is "predominately, if not entirely," owned by Brake Parts, Inc. ("BPI")—not the SPV Debtors.  *See* Jerneycic Decl. [Docket No. 1285] ¶ 23.  The Trustee disputes this assertion and intends to establish the SPV Debtors' ownership of the inventory at the Warehouses and associated accounts receivable generated therefrom.[3]

5.　　As set forth in the Motion, the FBG Debtors have collected at least $21.5 million in accounts receivable from sales of inventory at the Warehouses.  *See* Motion ¶¶ 4, 26, 32. Because those funds are generated from sales of inventory owned by the SPV Debtors, the FBG

---

[3]  Additionally, Evolution's pending adversary proceeding seeks, among other things, a declaration that the SPV Debtors own the disputed inventory. *See* Adv. No. 25-03800, Docket No. 9 ¶ 78.

2

Debtors have no right to retain, use, or commingle those funds with their other assets, and the Trustee agrees such funds should be segregated into a separate account.  *See id.* ¶¶ 27-29.

**B.      Segregating the Accounts Receivable Is Also Appropriate Given the FBG Debtors' Failure to Produce Key Documents and Information to the Trustee**

6.      In connection with the Trustee's interest in maximizing the value of the SPV Debtors' estates, the Trustee has repeatedly sought information from the FBG Debtors, A&M, and Hilco[4] about the collection of accounts receivable generated from inventory sales at the Warehouses, but the responses the Trustee has received to date have been deficient, further supporting the Motion's request to segregate funds while information about the disputed inventory and accounts receivable comes to light.

7.      During the SPV Debtors' June 4, 2026 meeting of creditors pursuant to 11 U.S.C. § 341, the Trustee asked the Debtors' co-Chief Restructuring Officer Daniel Jerneycic questions about the collection of accounts receivable from the sale of inventory from the Warehouses.  Mr. Jerneycic did not know what efforts the Debtors had taken to collect on the accounts receivable, and the FBG Debtors' counsel stated later that same day that they would provide the Trustee with this information.  Receiving nothing, the Trustee sent a letter on June 17, 2026 to the FBG Debtors and Mr. Jerneycic asking them to state: (a) all efforts the FBG Debtors have taken to collect on the post-petition accounts receivable from the Warehouses (or if that information is not available, from the West Coast and Midwest distribution centers), including identification of demand letters, settlement discussions, aging reports, and any other collection efforts undertaken; and (b) the Debtors' plan moving forward to collect on outstanding post-petition accounts receivable from the Warehouses.

---

[4]   Hilco Merchant Resources, LLC, Hilco Receivables, LLC, and Hilco Global Professional Services, LLC (collectively, "Hilco") was appointed as the FBG Debtors' exclusive agent for the collection of accounts receivable in connection with the wind-down of the BPI business.  *See* Docket No. 2454.

8.      The FBG Debtors responded to the Trustee in two letters dated June 22, 2026, and June 24, 2026.  A&M likewise responded to the Trustee in a letter dated June 26, 2026.  Their responses, however, failed to address the Trustee's warehouse-level or distribution-level requests, failed to produce any demand letters or responses (despite their letters referencing initial demand letters), aging reports, litigation papers, customer-by-customer plans (despite referencing one), or specific settlement detail.  Instead, the letter-responses from the FBG Debtors and A&M consisted of nonspecific descriptions of collection efforts and impediments to collection and stated an aggregate figure of $1.5 million in BPI accounts receivable "collected and segregated" since January 20, 2026.

9.      On June 29, 2026, the Trustee sent a follow-up letter to the FBG Debtors and A&M outlining the deficiencies in their responses and requesting the following materials, along with supporting documents:

- A full accounting of collected and outstanding post-petition accounts receivable generated by sales of inventory from the Warehouses (or, if not available at that level, from the West Coast and Midwest distribution centers), at the invoice level, as of the date of your response to this letter, including: (a) customer name; (b) invoice date; (c) due date; (d) amount invoiced; (e) payment status; (f) amount paid, if any; and (g) any discounts applied or offered;

- To the extent you claim inventory sales and accounts receivable data are not available at the warehouse and distribution-center levels, an explanation of why such data is unavailable, especially given that postpetition sales occurred while A&M and Weil, Gotshal & Manges LLP were operating or representing the FBG Debtors;

- All efforts the FBG Debtors and A&M have taken to collect on the postpetition accounts receivable from the Warehouses (or, if not available at that level, from the West Coast and Midwest distribution centers), including copies of any demand letters and responses thereto, litigation papers, settlement discussions, aging reports, and any other collection efforts;

4

- All communications with account debtors regarding purported impediments to the collection of accounts receivable or offers to provide credits, discounts, and settlements; and

- A full accounting of any accounts receivable from Warehouse inventory sales (or, if not available at that level, from the West Coast and Midwest distribution centers) that the FBG Debtors and/or A&M settled or compromised without the Trustee's approval, including the identities of the individuals who approved such settlements or compromises.

10. On June 28, 2026, the Trustee sent a letter to Hilco seeking substantially the same information. The Trustee's June 29, 2026 letter demanded a response by July 10, 2026.

11. On July 1, 2026, the FBG Debtors provided data revealing, for the first time, that the FBG Debtors had collected at least $21.5 million in accounts receivable from sales of inventory at the Warehouses. *See* Motion ¶¶ 4, 17, 32. Although this data has been provided, the vast majority of the other information requested remains outstanding. To the extent the requested materials are not provided promptly, the Trustee intends to seek to compel the production of these materials before the Bankruptcy Court.

12. The FBG Debtors should not be permitted to conceal information crucial to the Trustee in carrying out his fiduciary duty to maximize the value of the SPV Debtors' estates, while simultaneously commingling funds collected from sales of inventory owned by the SPV Debtors.

## **CONCLUSION**

For the reasons set forth herein, the Trustee joins in the Motion and respectfully requests that the Court enter an order compelling the FBG Debtors to segregate and turn over at least $21.5 million in accounts receivable collected from sales of inventory at the Warehouses.

*[Remainder of page intentionally left blank]*

Respectfully submitted this 9th day of July, 2026.

**JONES MURRAY LLP**

*/s/ Erin E. Jones*
Erin E. Jones (24032478)
Christopher R. Murray (24081057)
602 Sawyer, Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Email:      erin@jonesmurray.com
               chris@jonesmurray.com

-and-

**ELSBERG BAKER & MARURI PLLC**
David Elsberg
Michael Duke
Vivek Tata
Andrew Parks
Ella Epstein
350 Fifth Avenue, 38th Floor
New York, NY 10018
Telephone: (212) 597-2600
Email:      delsberg@elsberglaw.com
               mduke@elsberglaw.com
               vtata@elsberglaw.com
               aparks@elsberglaw.com
               eepstein@elsberglaw.com

*Special Litigation Counsel for Ronald J. Sommers,
Chapter 7 Trustee for the SPV Debtors*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of July 2026, she caused a true and correct copy of the foregoing document to be served upon all parties via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/   *Erin E. Jones*
Erin E. Jones