**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>**FIRST BRANDS GROUP, LLC, *et al.,***[1]<br><br>Debtors. | Chapter 11<br>Case No. 25-90399 (CML)<br>(Jointly Administered) |

**AFTERMARKET AUTO PARTS ALLIANCE, INC.'S MOTION TO ALLOW**
**ADMINISTRATIVE EXPENSE CLAIM UNDER 11 U.S.C. § 503(b)(1)(A)**

TO THE HONORABLE CHRISTOPHER M. LOPEZ,
UNITED STATES BANKRUPTCY JUDGE:

Aftermarket Auto Parts Alliance, Inc. ("AAPA") files its Motion to Allow Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)(A) and Compel Payment ("Motion") and in support respectfully states as follows:

**BACKGROUND AND INTRODUCTION**

1. AAPA is a group of independent auto parts distributors, auto parts stores and professional service repair shops. On behalf of its members, AAPA negotiates favorable terms with parts manufacturers, such as the First Brands Group. Under a contract between AAPA and Debtor International Brake Industries, Inc. ("Debtor"), AAPA members deal directly with the Debtor. Members submit orders to Debtor, the Debtor fills the orders, and the member pays Debtor. AAPA does not participate in any part of any of the transactions between Debtor and the members and does not have direct access of or visibility into the amount of revenue or volume of sales generated from Debtor's contract with AAPA.

---

[1]A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

2.      In exchange for AAPA's services, Debtor pays AAPA certain percentages of the revenue generated from sales under its contract with AAPA as rebates and fees.  To address the information asymmetry between Debtor and AAPA on the amounts Debtor owes to AAPA, the contract requires Debtor to provide AAPA a quarterly report that accounts for the amounts due.

3.      In the ordinary course of business, these quarterly reports disclosed substantial amounts due from Debtor to AAPA under the contract.   For example, AAPA filed Proof of Claim 2021 for more than $540,000 due to AAPA from Debtor for the prepetition amounts due for which Debtor had accounted for in the quarterly reports.  The proof of claim amount does not account for all the pre-petition amounts owed because Debtors stopped providing the quarterly reports for several quarters preceding the Petition Date.

4.      AAPA continued to perform under its contract after the Petition Date—conferring an actual and necessary benefit on the Debtor's estate because AAPA's members continued to do business with the Debtor in order that the Debtor could continue its business. Without AAPA's performance under the Agreement, Debtor would lose a significant number of customers and the proportional reduction in revenue and cash flow. The Debtor accepted that benefit but has not paid for it.  Indeed, the Debtor had stopped providing the quarterly reports for several quarters prior to the Petition Date and did not resume doing so after it.  As a result, Debtor alone knows how much it owes AAPA as an administrative expense.

5.      AAPA is entitled to an allowed administrative expense claim for the full amount of the post-petition obligations owed to it. The precise amount of that obligation remains unknown to AAPA because Debtor has not provided the quarterly reports and reconciliation numbers required to calculate that amount.

6.      Because the Debtor—not AAPA—possesses the information necessary to quantify the claim, AAPA seeks an order that allows its administrative expense claim in the amount reflected

in the Debtor's books and records to be determined following expedited and limited discovery into the amounts Debtor owes AAPA.

## Procedural Posture

7. On July 12, 2026, the Court conditionally approved the Debtors' proposed disclosure statement. [ECF 2990 ("Disclosure Statement Order") at p. 5, ¶ 1].

8. The Plan and Disclosure Statement Order make July 20, 2026 the deadline for voting on the Plan or objecting to the Plan and Disclosure Statement. The Court also set a combined hearing for final approval of the Disclosure Statement and Plan confirmation for July 28, 2026.

9. The Plan requires holders of administrative expense claims, like AAPA, to make an election within 60 days of the Confirmation Date under an Administrative Expense Claims Consent Program ("Consent Program") that materially affects potential recoveries and the timing of those recoveries. [ECF 2983-2 at p.10]. Under the Consent Program, Debtor will purportedly provide AAPA with a "Reconciled Amount" of AAPA's administrative expense claim and ask AAPA to accept half of the Reconciled Amount for better payment priority with a limited time to object in the event Debtor provides an inaccurate Reconciled Amount.

## JURISDICTION AND VENUE

10. On September 24, 2025, Global Assets LLC and twelve of its affiliates each commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Commencing on September 28, 2025, First Brands Group, LLC and certain other affiliates—including the Debtor— each commenced a case under chapter 11 (the date applicable to each Debtor being its "Petition Date"). The cases are jointly administered under Case No. 25-90399 (CML).

3

11. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed.

12. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

13. The statutory predicates for the relief requested herein are sections 105(a), 503(a), 503(b)(1)(A), and 507(a)(2) of the Bankruptcy Code, and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### A.   The Prepetition Relationship Between AAPA and the Debtor

14. AAPA is a distribution alliance serving the automotive aftermarket. For years prior to the Petition Date, AAPA and the Debtor were parties to an agreement (the "Agreement") under which the Debtor became obligated to pay AAPA certain rebate amounts calculated as certain percentages and amounts for various goods and services.

15. Under the Agreement, the amounts owed by the Debtor to AAPA are calculated by the Debtor, and the Debtor is required to provide AAPA with a reconciliation of the amounts on a quarterly basis.

16. As an example of this practice in the ordinary course of business, AAPA timely filed Proof of Claim No. 2021 against the Debtor for amounts arising under the Agreement prior to the Petition Date, in the asserted amount of $540,858.84, expressly noting that the claim amount is calculated by the Debtor, is subject to quarterly reconciliation, and is subject to amendment.

**C.   The Debtor's Post-petition Request for Continued Performance**

17. After the Petition Date, AAPA continued to perform under the Agreement.

18. The Debtor's post-petition operations depended on the continued performance of counterparties such as AAPA. The Debtor accepted its benefits as AAPA's members continued to do business with Debtor in order that Debtor's operations could continue.

**D.   AAPA's Post-petition Performance and the Benefit to the Estate**

19. From and after the Petition Date, AAPA continued to perform under the Agreement, and the Debtor continued to incur obligations to AAPA calculated under the Agreement. Those obligations are post-petition obligations of the Debtor's estate.

20. AAPA's post-petition performance conferred an actual and necessary benefit on the Debtor's estate and was incurred in the ordinary course of the Debtor's business.

**E.   The Amount Owed Is Within the Debtor's Possession**

21. As set forth above and in the accompanying declaration, the amounts the Debtor owes AAPA are calculated by the Debtor and reconciled by the Debtor on a quarterly basis. AAPA does not possess, and has not been provided, the Debtor's post-petition reconciliation. Accordingly, the precise amount of AAPA's post-petition administrative expense claim is presently known only to the Debtor.

22. AAPA has requested that the Debtor account for and pay the post-petition amounts owed under the Agreement. To date, the Debtor has not paid AAPA the post-petition amounts owed.

**F.   The Plan's Treatment of Administrative Expense Claims**

23. On June 12, 2026, the Debtors filed the Plan, and the Court entered the Disclosure Statement Order conditionally approving the disclosure statement and establishing solicitation and confirmation deadlines. [ECF 2983-2; ECF 2990 at p. 5, ¶ 1].

24. The Disclosure Statement Order establishes, among other things: (a) Administrative Claims Record Date of July 10, 2026, (b) a Voting Deadline of July 20, 2026 at 5:00 p.m. (Central Time); (c) a deadline to object to the Plan and disclosure statement of July 20, 2026 at 5:00 p.m. (Central Time); and (d) a Combined Hearing on confirmation of the Plan on July 28, 2026 at 9:00 a.m. (Central Time). [ECF 2990 at p.7, ¶ 6].

25. The Plan does not provide holders of allowed administrative expense claims with payment in full, in cash, on the Effective Date. [ECF 3019 at p. 37, § 2.1]. Instead, Section 2.1 of the Plan provides that allowed administrative expense claims will be satisfied through distributions made "in accordance with the Litigation Trust Waterfall and the DIP Collateral Trust Waterfall." [ECF 3019 at p. 37, § 2.1].

26. The Plan further offers holders of administrative expense claims the opportunity to participate in the Consent Program. [ECF 3019 at p. 10 ("Administration Expense Claims Consent Program")].

27. A holder that opts into the Consent Program is deemed to hold a "Settled Administrative Expense Claim" allowed in an amount equal to only fifty percent (50%) of the "reconciled amount" calculated by the Debtors in exchange for priority distributions under the Litigation Trust Waterfall. [ECF 3019 at p. 32 ("Settled Administrative Expense Claims")].

28. The Disclosure Statement provides that "each applicable holder of an Administrative Expense Claim" will be provided with "a Consent Program Opt-In Form" that "will display a proposed Allowed Administrative Expense Claim amount for the recipient holder (each a "Reconciled Amount.")." [ECF 3920 (Disclosure Statement) at p.39, § 4]. According to the Disclosure Statement, the Debtors calculate each Reconciled Amount based on Debtors' review of their books and records, stipulations and agreed orders entered into between the Debtors and holders of Administrative Expense Claims, and the results of their efforts to reconcile all Administrative Expense Claims filed

6

with the Bankruptcy Court. [ECF 3920 (Disclosure Statement) at p.39, § 4]. If the holder "disagrees with the amount listed as the Reconciled Amount but still wishes to participate in the [Consent Program], that holder is encouraged to contact the Claims Ombudsman as soon as possible upon receipt of the Administrative Expense Claims Consent Program Opt-In Form." [ECF 3920 (Disclosure Statement) at p.39, § 4]. The Plan and Disclosure statement provides little guidance on what a holder will be entitled to see or is likely to accomplish in the event of a disagreement with the Reconciled Amount.

29. A holder that does not opt in retains its claim in full but is paid from the Litigation Trust after all Settled Administrative Expense Claims are paid in full. [ECF 3020 (Disclosure Statement) at p. 38]. The Debtors' own disclosure statement illustrates that a non-opting holder of a $2 million claim would not be paid in full until approximately $1.4 billion in aggregate distributions have been made. [ECF 3020 (Disclosure Statement) at p.38].

30. The Plan thus confronts AAPA with a choice between (a) surrendering half of its administrative expense claim or (b) accepting structural subordination of the timing of its recovery— neither of which satisfies the payment in full required by section 1129(a)(9)(A) of the Bankruptcy Code. [ECF 3019 at pp 32, 35-46].

31. Compounding the difficulty of that choice, Debtor—not AAPA—maintains sole possession over the books and records necessary to confirm the precise amount of the administrative expense due and has not provided those records to AAPA as required under the Agreement between them.

32. The deadline to make this election is sixty (60) days following confirmation of the Plan, and the value of the election depends on the allowed amount of AAPA's claim, which the Debtor has not provided. [ECF 2990 at p. 15-16, ¶ 28].

## RELIEF REQUESTED

33. By this Motion, AAPA requests entry of the Proposed Order: (a) allowing AAPA an administrative expense claim under sections 503(a), 503(b)(1)(A), and 507(a)(2) of the Bankruptcy Code in the amount of the post-petition obligations owed to AAPA under the Agreement, as calculated and reconciled by the Debtor, (b) directing the Debtor to account for and provide AAPA with the Debtor's reconciliation of the post-petition amounts owed; and (c) granting such other and further relief as is just and proper.

## BASES FOR RELIEF

34. Section 503(b)(1)(A) provides that "the actual, necessary costs and expenses of preserving the estate" are allowed as administrative expenses. 11 U.S.C. § 503(b)(1)(A). Such claims are entitled to priority under section 507(a)(2).

35. In the Fifth Circuit, a claim qualifies as an administrative expense if the debt benefitted the estate and its creditors. *Matter of TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992). A creditor establishes a prima facie case under section 503(b)(1) with evidence establishing that (1) it arose from a transaction with the debtor-in-possession and (2) the goods or services supplied enhanced the debtor-in-possession's business to function as a going concern. *Id.*

36. AAPA can satisfy both elements. AAPA's post-petition performance arose from transactions with the Debtor after the Petition Date. That performance directly and substantially benefited the estate by enabling the Debtor's continued operations, and the resulting obligations were incurred in the ordinary course of the Debtor's business.

37. Because the amount of AAPA's claim is calculated and reconciled by the Debtor under the Agreement, allowance of the claim in the amount reflected in the Debtor's books, records, and reconciliation is appropriate, and the Debtor should be directed to provide that reconciliation. AAPA

8

reserves the right to amend or supplement the amount of its claim upon receipt of the Debtor's reconciliation.

**NO PRIOR REQUEST**

38. No prior request for the relief sought herein has been made to this or any other court.

**CONCLUSION**

WHEREFORE, AAPA respectfully requests that the Court enter the Proposed Order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:  July 13, 2026

Respectfully submitted,

DIAMOND McCARTHY LLP

By: _/s/ Christopher D. Johnson_
Allan B. Diamond (SBN 05813300)
Christopher D. Johnson (SBN 24012913)
Brian R. Hogue (SBN 24094725)
2200 Post Oak Blvd., Suite 1000
Houston, Texas 77056
Telephone: 713-333-5100
allan.diamond@diamondmccarthy.com
chris.johnson@diamondmccarthy.com
brian.hogue@diamondmccarthy.com

*Attorneys for Aftermarket Auto Parts Alliance, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2026, a true and correct copy of the foregoing Motion was served via the Court's CM/ECF system on all parties registered to receive electronic notice in these chapter 11 cases.

_/s/ Christopher D. Johnson_
Christopher D. Johnson
