**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| **FIRST BRANDS GROUP, LLC, _et al.,_**[1] | Case No. 25-90399 (CML) |
| Debtors. | (Jointly Administered) |

**AUTOMOTIVE PARTS SERVICE GROUP LLC'S MOTION TO ALLOW**
**ADMINISTRATIVE EXPENSE CLAIM UNDER 11 U.S.C. § 503(b)(1)(A)**

TO THE HONORABLE CHRISTOPHER M. LOPEZ,
UNITED STATES BANKRUPTCY JUDGE:

Automotive Parts Service Group LLC ("APSG") files its Motion to Allow Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)(A) and Compel Payment ("Motion") and in support respectfully states as follows:

**BACKGROUND AND INTRODUCTION**

1.      APSG is a group of independent auto parts distributors, auto parts stores and professional service repair shops.  On behalf of its members, APSG negotiates favorable terms with parts manufacturers, such as the First Brands Group.  Under a contract between APSG and Debtor CWD, LLC ("Debtor"), APSG members deal directly with the Debtor.  Members submit orders to Debtor, the Debtor fills the orders, and the member pays Debtor. APSG does not participate in any part of any of the transactions between Debtor and the members and does not have direct access of or visibility into the amount of revenue or volume of sales generated from Debtor's contract with APSG.

---

[1]A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

2.      In exchange for APSG's services, Debtor pays APSG certain percentages of the revenue generated from sales under its contract with APSG as rebates and fees.  To address the information asymmetry between Debtor and APSG on the amounts Debtor owes to APSG, the contract requires Debtor to provide APSG a quarterly report that accounts for the amounts due.

3.      In the ordinary course of business, these quarterly reports disclosed substantial amounts due from Debtor to APSG under the contract.   For example, APSG filed Proof of Claim 1499 for more than $2 million due to APSG from Debtor for the prepetition amounts due for which Debtor had accounted for in the quarterly reports.  The proof of claim amount does not account for all the pre-petition amounts owed because Debtors stopped providing the quarterly reports for several quarters preceding the Petition Date.

4.      APSG continued to perform under its contract after the Petition Date—conferring an actual and necessary benefit on the Debtor's estate because APSG's members continued to do business with the Debtor in order that the Debtor could continue its business. Without APSG's performance under the Agreement, Debtor would lose a significant number of customers and the proportional reduction in revenue and cash flow. The Debtor accepted that benefit but has not paid for it.  Indeed, the Debtor had stopped providing the quarterly reports for several quarters prior to the Petition Date and did not resume doing so after it.  As a result, Debtor alone knows how much it owes APSG as an administrative expense.

5.      APSG is entitled to an allowed administrative expense claim for the full amount of the post-petition obligations owed to it. The precise amount of that obligation remains unknown to APSG because Debtor has not provided the quarterly reports and reconciliation numbers required to calculate that amount.

6.      Because the Debtor—not APSG—possesses the information necessary to quantify the claim, APSG seeks an order that allows its administrative expense claim in the amount reflected

in the Debtor's books and records to be determined following expedited and limited discovery into the amounts Debtor owes APSG.

## Procedural Posture

7.  On July 12, 2026, the Court conditionally approved the Debtors' proposed disclosure statement.  [ECF 2990 ("Disclosure Statement Order") at p. 5, ¶ 1].

8.  The Plan and Disclosure Statement Order make July 20, 2026 the deadline for voting on the Plan or objecting to the Plan and Disclosure Statement.  The Court also set a combined hearing for final approval of the Disclosure Statement and Plan confirmation for July 28, 2026.

9.  The Plan requires holders of administrative expense claims, like APSG, to make an election within 60 days of the Confirmation Date under an Administrative Expense Claims Consent Program ("Consent Program") that materially affects potential recoveries and the timing of those recoveries. [ECF 2983-2 at p.10]. Under the Consent Program, Debtor will purportedly provide APSG with a "Reconciled Amount" of APSG's administrative expense claim and ask APSG to accept half of the Reconciled Amount for better payment priority with a limited time to object in the event Debtor provides an inaccurate Reconciled Amount.

## JURISDICTION AND VENUE

10. On September 24, 2025, Global Assets LLC and twelve of its affiliates each commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Commencing on September 28, 2025, First Brands Group, LLC and certain other affiliates—including the Debtor— each commenced a case under chapter 11 (the date applicable to each Debtor being its "Petition Date"). The cases are jointly administered under Case No. 25-90399 (CML).

3

11. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed.

12. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

13. The statutory predicates for the relief requested herein are sections 105(a), 503(a), 503(b)(1)(A), and 507(a)(2) of the Bankruptcy Code, and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

**A. The Prepetition Relationship Between APSG and the Debtor**

14. APSG is a distribution alliance serving the automotive aftermarket. For years prior to the Petition Date, APSG and the Debtor were parties to an agreement (the "Agreement") under which the Debtor became obligated to pay APSG certain rebate amounts calculated as certain percentages and amounts for various goods and services.

15. Under the Agreement, the amounts owed by the Debtor to APSG are calculated by the Debtor, and the Debtor is required to provide APSG with a reconciliation of the amounts on a quarterly basis.

16. As an example of this practice in the ordinary course of business, APSG timely filed Proof of Claim No. 1499 against the Debtor for amounts arising under the Agreement prior to the Petition Date, in the asserted amount of $2,561,219.67, expressly noting that the claim amount is calculated by the Debtor, is subject to quarterly reconciliation, and is subject to amendment.

**C.   The Debtor's Post-petition Request for Continued Performance**

17. After the Petition Date, APSG continued to perform under the Agreement.

18. The Debtor's post-petition operations depended on the continued performance of counterparties such as APSG. The Debtor accepted its benefits as APSG's members continued to do business with Debtor in order that Debtor's operations could continue.

**D.   APSG's Post-petition Performance and the Benefit to the Estate**

19. From and after the Petition Date, APSG continued to perform under the Agreement, and the Debtor continued to incur obligations to APSG calculated under the Agreement. Those obligations are post-petition obligations of the Debtor's estate.

20. APSG's post-petition performance conferred an actual and necessary benefit on the Debtor's estate and was incurred in the ordinary course of the Debtor's business.

**E.   The Amount Owed Is Within the Debtor's Possession**

21. As set forth above and in the accompanying declaration, the amounts the Debtor owes APSG are calculated by the Debtor and reconciled by the Debtor on a quarterly basis. APSG does not possess, and has not been provided, the Debtor's post-petition reconciliation. Accordingly, the precise amount of APSG's post-petition administrative expense claim is presently known only to the Debtor.

22. APSG has requested that the Debtor account for and pay the post-petition amounts owed under the Agreement. To date, the Debtor has not paid APSG the post-petition amounts owed.

**F.   The Plan's Treatment of Administrative Expense Claims**

23. On June 12, 2026, the Debtors filed the Plan, and the Court entered the Disclosure Statement Order conditionally approving the disclosure statement and establishing solicitation and confirmation deadlines. [ECF 2983-2; ECF 2990 at p. 5, ¶ 1].

24. The Disclosure Statement Order establishes, among other things: (a) Administrative Claims Record Date of July 10, 2026, (b) a Voting Deadline of July 20, 2026 at 5:00 p.m. (Central Time); (c) a deadline to object to the Plan and disclosure statement of July 20, 2026 at 5:00 p.m. (Central Time); and (d) a Combined Hearing on confirmation of the Plan on July 28, 2026 at 9:00 a.m. (Central Time). [ECF 2990 at p.7, ¶ 6].

25. The Plan does not provide holders of allowed administrative expense claims with payment in full, in cash, on the Effective Date. [ECF 3019 at p. 37, § 2.1]. Instead, Section 2.1 of the Plan provides that allowed administrative expense claims will be satisfied through distributions made "in accordance with the Litigation Trust Waterfall and the DIP Collateral Trust Waterfall." [ECF 3019 at p. 37, § 2.1].

26. The Plan further offers holders of administrative expense claims the opportunity to participate in the Consent Program. [ECF 3019 at p. 10 ("Administration Expense Claims Consent Program")].

27. A holder that opts into the Consent Program is deemed to hold a "Settled Administrative Expense Claim" allowed in an amount equal to only fifty percent (50%) of the "reconciled amount" calculated by the Debtors in exchange for priority distributions under the Litigation Trust Waterfall. [ECF 3019 at p. 32 ("Settled Administrative Expense Claims")].

28. The Disclosure Statement provides that "each applicable holder of an Administrative Expense Claim" will be provided with "a Consent Program Opt-In Form" that "will display a proposed Allowed Administrative Expense Claim amount for the recipient holder (each a "Reconciled Amount.")." [ECF 3920 (Disclosure Statement) at p.39, § 4]. According to the Disclosure Statement, the Debtors calculate each Reconciled Amount based on Debtors' review of their books and records, stipulations and agreed orders entered into between the Debtors and holders of Administrative Expense Claims, and the results of their efforts to reconcile all Administrative Expense Claims filed

with the Bankruptcy Court. [ECF 3920 (Disclosure Statement) at p.39, § 4]. If the holder "disagrees with the amount listed as the Reconciled Amount but still wishes to participate in the [Consent Program], that holder is encouraged to contact the Claims Ombudsman as soon as possible upon receipt of the Administrative Expense Claims Consent Program Opt-In Form." [ECF 3920 (Disclosure Statement) at p.39, § 4]. The Plan and Disclosure statement provides little guidance on what a holder will be entitled to see or is likely to accomplish in the event of a disagreement with the Reconciled Amount.

29. A holder that does not opt in retains its claim in full but is paid from the Litigation Trust after all Settled Administrative Expense Claims are paid in full. [ECF 3020 (Disclosure Statement) at p. 38]. The Debtors' own disclosure statement illustrates that a non-opting holder of a $2 million claim would not be paid in full until approximately $1.4 billion in aggregate distributions have been made. [ECF 3020 (Disclosure Statement) at p.38].

30. The Plan thus confronts APSG with a choice between (a) surrendering half of its administrative expense claim or (b) accepting structural subordination of the timing of its recovery— neither of which satisfies the payment in full required by section 1129(a)(9)(A) of the Bankruptcy Code. [ECF 3019 at pp 32, 35-46].

31. Compounding the difficulty of that choice, Debtor—not APSG—maintains sole possession over the books and records necessary to confirm the precise amount of the administrative expense due and has not provided those records to APSG as required under the Agreement between them.

32. The deadline to make this election is sixty (60) days following confirmation of the Plan, and the value of the election depends on the allowed amount of APSG's claim, which the Debtor has not provided. [ECF 2990 at p. 15-16, ¶ 28].

**RELIEF REQUESTED**

33. By this Motion, APSG requests entry of the Proposed Order: (a) allowing APSG an administrative expense claim under sections 503(a), 503(b)(1)(A), and 507(a)(2) of the Bankruptcy Code in the amount of the post-petition obligations owed to APSG under the Agreement, as calculated and reconciled by the Debtor, (b) directing the Debtor to account for and provide APSG with the Debtor's reconciliation of the post-petition amounts owed; and (c) granting such other and further relief as is just and proper.

**BASES FOR RELIEF**

34. Section 503(b)(1)(A) provides that "the actual, necessary costs and expenses of preserving the estate" are allowed as administrative expenses. 11 U.S.C. § 503(b)(1)(A). Such claims are entitled to priority under section 507(a)(2).

35. In the Fifth Circuit, a claim qualifies as an administrative expense if the debt benefitted the estate and its creditors. *Matter of TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992). A creditor establishes a prima facie case under section 503(b)(1) with evidence establishing that (1) it arose from a transaction with the debtor-in-possession and (2) the goods or services supplied enhanced the debtor-in-possession's business to function as a going concern. *Id.*

36. APSG can satisfy both elements. APSG's post-petition performance arose from transactions with the Debtor after the Petition Date. That performance directly and substantially benefited the estate by enabling the Debtor's continued operations, and the resulting obligations were incurred in the ordinary course of the Debtor's business.

37. Because the amount of APSG's claim is calculated and reconciled by the Debtor under the Agreement, allowance of the claim in the amount reflected in the Debtor's books, records, and reconciliation is appropriate, and the Debtor should be directed to provide that reconciliation. APSG

reserves the right to amend or supplement the amount of its claim upon receipt of the Debtor's reconciliation.

## NO PRIOR REQUEST

38. No prior request for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, APSG respectfully requests that the Court enter the Proposed Order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:  July 13, 2026

Respectfully submitted,

DIAMOND McCARTHY LLP

By:  /s/ Christopher D. Johnson
Allan B. Diamond (SBN 05813300)
Christopher D. Johnson (SBN 24012913)
Brian R. Hogue (SBN 24094725)
2200 Post Oak Blvd., Suite 1000
Houston, Texas 77056
Telephone: 713-333-5100
allan.diamond@diamondmccarthy.com
chris.johnson@diamondmccarthy.com
brian.hogue@diamondmccarthy.com

*Attorneys for Automotive Parts Service Group LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2026, a true and correct copy of the foregoing Motion was served via the Court's CM/ECF system on all parties registered to receive electronic notice in these chapter 11 cases.

 /s/ Christopher D. Johnson
Christopher D. Johnson