**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | **Re: Docket No. 3144** |

**LIMITED OBJECTION OF BANK OF AMERICA, N.A.,**
**IN ITS CAPACITY AS ABL AGENT TO EMERGENCY**
**MOTION OF EVOLUTION CREDIT PARTNERS TO COMPEL SEGREGATION**
**AND TURNOVER OF POST-PETITION ACCOUNTS RECEIVABLE COLLECTED**

Bank of America, N.A., in its capacity as the agent (the "ABL Agent") for the prepetition secured ABL lenders of the majority of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through its undersigned counsel, submits this limited objection (this "Limited Objection") to the *Emergency Motion of Evolution Credit Partners to Compel Segregation and Turnover of Post-Petition Accounts Receivable Collected* [Docket No. 3144] (the "Evolution Turnover Motion"). In support of this Limited Objection, the ABL Agent respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      Turnover is not an appropriate remedy here. The $21.5 million Evolution wants "turned over" to it is subject to a dispute between Evolution, the ABL Agent, and other parties. The Court should deny the Evolution Turnover Motion.

2.      The ABL Agent does not say the following sentence lightly: The Evolution Turnover Motion makes a plainly false representation that inventory and accounts receivable tied

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

to the Warehouses[2] are "undisputed."  Among other things, Evolution attributes this mysterious lack of dispute to the omission of the Warehouses on Exhibit D to the proposed ABL collateral trust agreement [Docket No. 3046-7] (the "Proposed ABL Collateral Trust Agreement"), which was attached to the Debtors' Plan Supplement (as defined below).  The Proposed ABL Collateral Trust Agreement is attached hereto as **Exhibit A**.  But Exhibit D of the ABL Collateral Trust Agreement is a non-exhaustive, summary list, not an itemization of every single piece of disputed inventory.  Indeed, Item 1 of Exhibit D schedules as ABL Priority Collateral "All Inventory of the FBG Debtors constituting ABL Priority Collateral, whether now owned or hereafter acquired and wherever located," and only then goes on to say that such Inventory includes, "without limitation," the Inventory located at the listed warehouse addresses.  Proposed ABL Collateral Trust Agreement, Ex. D, Item 1.  In other words, Exhibit D could have named zero warehouses and the meaning would not have changed – the ABL Agent would still be asserting a first-priority lien on all of the Debtors' inventory and receivables, including the Warehouses.

3.       Indeed, the ABL Agent has a first-priority lien on all inventory and accounts receivable in connection with the Warehouses.  Any assertions by Evolution to the contrary, or that these assets are undisputed, are patently false.  Cherry picking language from the Proposed ABL Collateral Trust Agreement, which when read in full clearly states that Exhibit D is a non-exclusive list, is not a basis to turn over $21.5 million that is disputed.  As further discussed below, in addition to Item 1 stating that ABL Priority Collateral encompasses all inventory "wherever located," and is "without limitation" to the listed addresses, the Proposed ABL Collateral Trust Agreement expressly provides that: (a) disputed assets are preserved for the ABL Collateral Trust pending Final Order; (b) adverse claims by SPV Lenders (which includes Evolution) do not

---

[2] Terms used but not defined herein have the meaning set forth in the Evolution Turnover Motion.

exclude assets; (c) "[f]ailure to list a disputed asset shall not limit such asset's inclusion in the ABL Collateral Trust"; and (d) no failure or delay to exercise rights operates as a waiver.

4.     Evolution's position is betrayed by Evolution's own Turnover Motion.  Evolution states that "The Debtors have taken the position that the inventory located at the Warehouses is 'predominately, if not entirely,' owned by Brake Parts, Inc."  Evolution Turnover Motion at ¶ 16 n.3.  As discussed further below, Brake Parts, Inc. is itself an ABL Loan Party, meaning the Debtors' own position on ownership—far from confirming Evolution's collateral—cuts in the opposite direction.  While Evolution (and the ABL Agent) may dispute the Debtors' position, by Evolution's very admission, its "claim" is not undisputed.

5.     Additionally, the ABL Agent would respectfully note that, to reach a decision denying the Evolution Turnover Motion, the Court should consider its own reasoning in support of its recent *Order Suspending Proceedings on Release Motion* [Docket No. 3089] (the "Suspension Order"), suspending the *Motion for an Order Authorizing the Release of Certain Funds from the Factored Receivables Account in Accordance with Prior Order and Stipulation with Third-Party Factors and Disbursements of Such Funds to the ABL Agent* [Docket No. 3039] (the "Debtors' Turnover Motion").  In the Debtors' Turnover Motion, the Debtors sought the release of $25.7 million of ABL collateral to the ABL Agent.  Evolution opposed the Debtors' Turnover Motion and, on June 29, 2026, filed *Evolution's Emergency Motion to Suspend or Continue Proceedings Under Bankruptcy Rule 8007 on Debtors' Motion to Release Funds From the Factored Receivables Account* [Docket No. 3085] (the "Evolution Suspension Motion").  Shortly thereafter, the Court entered the Suspension Order.  Evolution now seeks the exact relief it argued less than three weeks ago was improper, and which the Court suspended in connection with the Debtors' Turnover Motion.  To the extent the Court grants the relief sought in the

Evolution Turnover Motion, the ABL Agent reserves all rights in connection with the Debtors' Turnover Motion, including for reconsideration thereof.

6. Finally, while the ABL Agent does not believe the Court needs to reach the question of whether maintaining the status quo will cause Evolution irreparable harm, the Evolution Turnover Motion fails to plead facts sufficient for such a finding. To be clear, the ABL Agent does not suggest that the Debtors are beyond reproach, and takes no position here on what remedies, if any, may be warranted to address any of the purported shortcomings of the Debtors' reporting and collection practices. But turnover of $21.5 million in genuinely disputed funds to Evolution is not among them. Where, as here, multiple parties assert bona fide, competing claims to the same funds, the appropriate interim remedy is to preserve the status quo—through continued segregation, an accounting, or similar relief—not to hand over disputed property to one claimant before the underlying dispute is resolved. *See Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011) (affirming the district court's injunction keeping funds in an escrow account because the dissipation of those assets would impair the court's ability to grant an effective remedy in the underlying dispute) (citing *Productos Carnic, S.A. v. Cent. Am. Beef & Seafood Trading Co.*, 621 F.2d 683, 686–87 (5th Cir. 1980), which stated that "[E]ven were [plaintiff's] remedy limited to damages, an injunction may issue to protect that remedy."); *see also Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32–34 (1st Cir. 1994) (once a party asserting a property interest establishes a "colorable claim," further merits adjudication should await a full adversary proceeding, not summary motion practice).

7. The ABL Agent does not take a position on whether Evolution is entitled to an accounting or additional reporting. However, to the extent the Court is inclined to grant Evolution's request for either, the ABL Agent reserves its rights to identical reporting.

**BACKGROUND**

8.      Evolution's Turnover Motion asserts, without qualification, that it "holds an undisputed first-priority lien on the collected proceeds." Evolution Turnover Motion at ¶ 9.  That statement is false.  As set forth below, there is a live and ongoing dispute over the $21.5 million at issue, spanning two separate adversary proceedings, and the Debtors' own representations regarding ownership of the underlying collateral.

9.      The ABL Agent is owed approximately $235 million in aggregate principal amount of prepetition debt under that certain ABL Credit Agreement, dated February 2, 2023 (as amended, restated, and modified from time to time, the "ABL Credit Agreement").  The ABL Credit Agreement is attached hereto as **Exhibit B**.  The ABL Agent has a first-priority lien on substantially all assets of the Borrowers and Guarantors (as defined in the ABL Credit Agreement).

10.     The ABL Agent and Evolution have been engaged in ongoing litigation concerning competing asserted interests in receivables, inventory, proceeds, and related collateral throughout these Chapter 11 Cases.  These disputes include, among others, two active ongoing adversary proceedings.

a.  Adv. Pro. No. 25-03800 ("Evolution 1"):  In Evolution 1, Evolution seeks a determination against the twelve named defendants in that action—including the ABL Agent—that it holds a first-priority lien over the inventory located at the Debtors' Starlight and Patterson warehouses.  A motion to dismiss is pending and discovery is ongoing.

b.  Adv. Pro. No. 26-03006 ("Evolution 2"):  In Evolution 2, Evolution seeks a determination that it holds a first-priority lien over certain of the Debtors' accounts receivable in connection with the Starlight and Patterson warehouses.  This Court recently ruled at summary judgment that Evolution failed to properly perfect its lien

on the accounts receivable. *See* Summary Judgment Order, Adv. Pro. No. 26-03006 [Docket No. 67]. The district court is currently evaluating Evolution's motion to appeal the Summary Judgment Order. Evolution has itself represented, in seeking leave to appeal, that absent a favorable ruling reversing the Summary Judgment Order, any remaining priority dispute between Evolution and the ABL Agent and the Term Loan Lenders would be rendered "academic"—underscoring that Evolution's claimed first-priority interest in the accounts receivable and proceeds at issue remains very much unresolved.

11.     Evolution 1 concerns the inventory located at the Warehouses, and Evolution 2 concerns the accounts receivable and other proceeds thereof; the Evolution Turnover Motion states that Evolution holds a first-priority interest in each of these two disputed collateral categories.

12.     On June 23, 2026, the Debtors filed the *Notice of Filing of (I) Plan Supplement and (II) Liquidation Analysis* [Docket No. 3046] (the "Plan Supplement"), attaching thereto exhibits which supplemented the Debtors' Plan. Included in the Plan Supplement was the Proposed ABL Collateral Trust Agreement as Exhibit 7. The Proposed ABL Collateral Trust Agreement is a form liquidating trust agreement that will preserve, liquidate, and distribute the Proposed ABL Collateral Trust assets, subject to the Plan's dispute resolution mechanism and Final Orders. Nothing in the Proposed ABL Collateral Trust Agreement waives, releases, or disclaims any of the ABL Agent's collateral rights. As further explained below, this is stated explicitly in the Proposed ABL Collateral Trust Agreement.

## LIMITED OBJECTION

### A. THE DISPUTED FUNDS ARE ENCUMBERED BY THE ABL AGENT'S FIRST-PRIORITY LIEN.

#### i. The ABL Agent Holds a First-Priority Lien on the Disputed Funds

13. The ABL Agent holds a first-priority lien on the $21.5 million sought in the Evolution Turnover Motion (the "Disputed Funds"). Under that certain ABL Security Agreement, dated as of February 2, 2018 (the "ABL Security Agreement") (the ABL Security Agreement is attached hereto as **Exhibit C**), each Grantor granted to the Collateral Agent, for the benefit of the Secured Parties, "a security interest in, all of such Grantor's right, title and interest in, to and under the Collateral of such Grantor, in each case, whether now existing or owned or hereafter arising or acquired, and wherever located." ABL Security Agreement § 3.01(a). "Collateral" is defined to include, among other things, Accounts Receivable, cash, Goods, Inventory, Deposit Accounts, all Security Entitlements, and "Proceeds of any and all of the foregoing." *Id.* § 1.03. Section 4.03 of the ABL Security Agreement further provides that "[t]he Security Interest constitutes (i) a legal and valid security interest in all the Collateral securing the payment and performance of the Secured Obligations" and, subject to required UCC filings, "a perfected security interest in all Collateral in which a security interest may be perfected by filing." *Id.* § 4.03.

14. Separately, the ABL Intercreditor Agreement (attached hereto as **Exhibit D**) defines "ABL Priority Collateral" to include, among other things, all Accounts, Inventory, Payment Intangibles, Deposit Accounts, Securities Accounts, Commodity Accounts, and assets credited thereto, and related proceeds, books, and records, subject to specified carve-outs. The ABL Agent's obligations are secured by first-priority liens on ABL Priority Collateral. The Disputed Funds relate to accounts receivable and inventory proceeds that fall squarely within these defined collateral categories. Accordingly, Evolution's claim that its interest is "undisputed" is

incorrect.  At a minimum, the ABL Agent holds a colorable, disputed, preserved interest in the Disputed Funds that cannot be extinguished by emergency motion practice.

### ii.   Evolution's Own Pleadings Confirm the Dispute

15.   The Evolution Turnover Motion further confirms that the Disputed Funds are not "undisputed."  In footnote 3 of the Evolution Turnover Motion, Evolution admits that the Debtors dispute that the Disputed Funds are Evolution's collateral.  As Evolution notes, and as this Court is aware, the ownership of the inventory at the Warehouses is the subject of its own adversary proceeding.  *See generally* Adv. Pro. No. 25-03800.  Remarkably, Evolution still finds a way to say that the Disputed Funds are "undisputed."

Indeed, the Debtors' own position that the inventory is owned by Brake Parts, Inc. only sharpens the dispute rather than resolving it.  Brake Parts, Inc. is a Guarantor under the ABL Credit Agreement, and its assets, including inventory, are subject to the ABL Agent's first-priority lien under the ABL Security Agreement.  *See supra* ¶ 13.  If the Debtors are correct that the Warehouse inventory belongs to Brake Parts, Inc., rather than to the Evolution SPV Borrowers from which Evolution claims to derive its collateral, then that inventory, and its proceeds, constitutes the ABL Agent's collateral, not Evolution's.  Evolution's assumption that it is the sole secured creditor with respect to these assets cannot be reconciled with the Debtors' own position on ownership.  And that is just one issue in the Evolution 1 adversary proceeding.

16.   Not only is the Evolution Turnover Motion inconsistent, but Evolution's argument is also inconsistent with its own prior arguments.

17.   Less than a month ago, Evolution filed the Evolution Suspension Motion in which it argued at length that the Court should suspend or continue the release of $25.7 million in funds to the ABL Agent.  Among other things, Evolution argued that the Court should not permit the release of funds to the ABL Agent because: (a) there was "no urgency"; (b) releasing funds would

cause irreparable harm; and (c) the status quo should be preserved until entry of a final order. *See* Evolution Suspension Motion ¶¶1–7, 28–30. Shortly after the Evolution Suspension Motion was filed, this Court entered the Suspension Order.

18.     Here, the Evolution Turnover Motion suffers the same infirmities it previously alleged applied to the Debtors' Turnover Motion. First, Evolution has not pled sufficient facts to demonstrate urgency. Second, releasing the Disputed Funds to Evolution, or segregating such Disputed Funds for Evolution's "sole benefit," would effectively determine priority and ownership while circumventing the adjudication process. Any release or segregation of funds for Evolution would irreparably harm the ABL Agent and prejudice the ABL Agent's rights. Third, should the Court determine that preservation is appropriate, the proper remedy is segregation into a *neutral* account pending further order, not segregation into an account for Evolution's sole benefit.

## B. THE EVOLUTION TURNOVER MOTION IS PROCEDURALLY IMPROPER UNDER BANKRUPTCY RULE 7001.

19.     Evolution seeks to improperly circumvent the procedural safeguards of Bankruptcy Rule 7001 to strip the ABL Agent of its collateral by means of an emergency motion. Nothing in the Bankruptcy Code or Bankruptcy Rules permits such an outcome. Accordingly, the Court must deny the Evolution Turnover Motion.

20.     Rule 7001 of the Bankruptcy Rules requires an adversary proceeding to, among other things, "determine the validity, priority, or extent of a lien or other interest in property. . . ." Fed. R. Bankr. P. 7001; *see also Haber Oil Co. Inc. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 437 (5th Cir. 1994) ("A proceeding 'to recover money or property' is an adversary proceeding, as are proceedings . . . 'to obtain an injunction or other equitable relief.'" (quoting Fed. R. Bankr. P. 7001)). The requirements of an adversary proceeding include, among other things, "a complaint

in compliance with Federal Rule of Civil Procedure 3," and "a summons in keeping with Bankruptcy Rule 7004." *Id.* at 438.

21.     Here, Evolution seeks an end-run around the protections afforded to parties under Rule 7001 by asking the Court to, essentially, rule that it holds a valid, first-priority lien on the Disputed Funds and to have the Disputed Funds released to it.  But Bankruptcy Rule 7004 mandates that Evolution commence an adversary proceeding for any such relief.

22.     Critically, the relief Evolution now seeks *is* the subject of two separate adversary proceedings.  Evolution 1 and Evolution 2 concern the inventory and accounts receivable, respectively, associated with the Warehouses that are the subject of the Evolution Turnover Motion.  Notwithstanding these live and ongoing controversies, Evolution claims that it is entitled to the release of the Disputed Funds because it "holds a first-priority security interest in all inventory located at the Warehouses and all accounts receivable and other proceeds thereof, and Evolution is the sole secured creditor with respect to these assets."  Evolution Turnover Motion at ¶ 2.

23.     Evolution is wrong both procedurally (an adversary proceeding, not an emergency motion, is required for the relief sought) and factually (Evolution is not the sole secured creditor with an interest in the Disputed Funds).  Indeed, this Court has already ruled against Evolution on the very interest underlying its "sole secured creditor" assertion as to the accounts receivable and proceeds at issue, finding that Evolution failed to properly perfect its asserted lien.  *See* Summary Judgment Order, Adv. Pro. No. 26-03006 [Docket No. 67].

24.     Accordingly, the ABL Agent respectfully requests that the Court deny the Evolution Turnover Motion.  In the alternative, the ABL Agent respectfully requests that the Court

suspend and continue the Evolution Turnover Motion, consistent with this Court's Suspension Order.

### C. THE NON-EXHAUSTIVE WAREHOUSE LIST DOES NOT LIMIT THE ABL AGENT'S COLLATERAL.

25.     Evolution's theory that the Disputed Funds are not in dispute rests entirely on a single, flawed premise: that the omission of the Warehouses from the illustrative list of addresses on Exhibit D translates to the ABL Agent having no interest in the Warehouses.  That premise is wrong, and dispositively so.  Item 1 of Exhibit D states that the Inventory that constitutes ABL Priority Collateral is "All Inventory of the FBG Debtors constituting ABL Priority Collateral, whether now owned or hereafter acquired and wherever located" and that such Inventory includes, "without limitation," the Inventory located at the listed addresses.  Proposed ABL Collateral Trust Agreement, Ex. D, Item 1.  The address list is a non-exhaustive illustration of what is included in "All Inventory of the FBG Debtors . . . wherever located."  Had Exhibit D listed no warehouse addresses, the result would be no different – the ABL Priority Collateral would still include all of the Debtors' Inventory, wherever located, including the Warehouses and the Disputed Funds.  The remaining provisions of the Proposed ABL Collateral Trust Agreement, addressed below, independently confirm this conclusion.

26.     Evolution's erroneous claim that the ABL Agent does not assert such first-priority lien claims (which the ABL Agent does so assert) is based on the four Warehouse addresses not appearing on Exhibit D to the Proposed ABL Collateral Trust Agreement.  This argument ignores the multiple express provisions of the Proposed ABL Collateral Trust Agreement, each of which independently forecloses Evolution's argument.  The ABL Agent addresses each in turn:

    a.  <u>Item 1—The Address List Is Illustrative, Not Exhaustive</u>.  Item 1 of Exhibit D describes the scheduled inventory as including, "without limitation," the listed

addresses.  Proposed ABL Collateral Trust Agreement, Ex. D, Item 1.  By its own terms, the address list is illustrative, not exhaustive, refuting any suggestion that the omission of the four Warehouse addresses reflects a considered decision to exclude them.

b. <u>Exhibit D, Preamble Clause (i)—Preservation of Disputed Assets</u>.  The preamble to Exhibit D provides: "[A]ny asset, claim, right, or proceeds that the ABL Agent asserts constitutes ABL Priority Collateral *shall be preserved for the ABL Collateral Trust* pending entry of a Final Order, settlement, or other agreed resolution."  Proposed ABL Collateral Trust Agreement, Ex. D, preamble (emphasis added).  The ABL Agent asserts that the disputed inventory, receivables, and proceeds at the Warehouses constitute ABL Priority Collateral.  Per the Proposed ABL Collateral Trust Agreement's own terms, such assets are preserved—not abandoned.

c. <u>Exhibit D, Preamble Clause (ii)—No Exclusion by Adverse Claim</u>.  The preamble further provides: "[N]o asset, claim, right, or proceeds shall be excluded from ABL Collateral Trust Assets solely because the Litigation Trust, DIP Collateral Trust, any Factor, any SPV Lender, any SPV Debtor, the DIP Secured Parties, or any other Person asserts an adverse claim thereto."  Proposed ABL Collateral Trust Agreement, Ex. D, preamble.  Evolution is an SPV Lender asserting an adverse claim.  That adverse claim does not, and cannot, exclude the Disputed Funds from the Proposed ABL Collateral Trust Agreement.

d. <u>Exhibit D, Preamble Clauses (iii)–(v)—Final Order Requirement</u>.  The preamble further provides that assets determined by "Final Order" to constitute property of

SPV Debtors, Factors, SPV Lenders, or DIP Secured Parties are excluded, and that "any disputes as to whether an asset is a Litigation Trust Asset, DIP Collateral Trust Asset, or ABL Collateral Trust Asset shall be resolved as provided in Section 5.2(j) of the Plan." Proposed ABL Collateral Trust Agreement, Ex. D, preamble. This confirms a Final Order/adjudication process—not automatic exclusion by unilateral assertion. No Final Order has been entered determining that the Disputed Funds belong to Evolution.

e. Exhibit D, Item 9—Catch-All Reservation. Item 9 of Exhibit D provides that the Proposed ABL Collateral Trust Assets include "All other ABL Priority Collateral for which, on the date the ABL Collateral Trust is established, (x) no bona fide dispute exists as to whether the ABL Secured Parties have a validly perfected first-priority Lien on such collateral, senior in lien priority to the Liens securing the DIP Claims, or (y) if such a bona fide dispute exists, it is subsequently determined by a court of competent jurisdiction pursuant to a Final Order or settlement that the ABL Secured Parties have a validly perfected first-priority Lien on such collateral." Proposed ABL Collateral Trust Agreement, Ex. D, Item 9. This catch-all expressly contemplates bona fide disputes over additional collateral and reserves that collateral for the ABL Collateral Trust pending Final Order.

f. No-Waiver and Cumulative-Remedies Provisions. The Proposed ABL Collateral Trust Agreement also contains standard no-waiver and cumulative-remedies provisions that further confirm the ABL Agent has not forfeited any rights: Section 2.7(e) preserves the ABL Collateral Trust's right to pursue all claims after the Confirmation Date, without regard to whether the Plan specifically references

them; Section 12.3 and Section 13.14 both provide that no failure or delay in exercising a right or remedy shall operate as a waiver; and Section 13.9 confirms that the Agreement's rights and remedies are cumulative and not exclusive of any rights under law or in equity.  Proposed ABL Collateral Trust Agreement §§ 2.7(e), 12.3, 13.9, 13.14.

27.     The ABL Agent maintains that it alone has a first-priority lien on the Disputed Funds and any assets associated with the Warehouses, none of which have been abandoned.  For the reasons stated herein, the Court should deny Evolution's attempt to usurp the ABL Agent's collateral.

**RESERVATION OF RIGHTS**

28.     The ABL Agent expressly reserves all rights, claims, defenses, and arguments, whether legal or equitable, including, without limitation, any arguments raised in the Evolution Turnover Motion or that may otherwise be raised in connection with the Disputed Funds, the Warehouses, the Plan Supplement, and the Proposed ABL Collateral Trust Agreement.  Nothing herein shall constitute a waiver of any right or argument not expressly raised herein, and the ABL Agent reserves the right to raise additional objections, arguments, and evidence as further information becomes available.  The ABL Agent reserves all rights to move for reconsideration of the Debtors' Turnover Motion.

**CONCLUSION**

WHEREFORE, the ABL Agent respectfully requests that the Court deny the Evolution Turnover Motion to the extent it seeks release or segregation for Evolution's benefit of any of the Debtors' funds.  While the ABL Agent does not take a position on Evolution's rights to either an accounting or additional reporting, to the extent the Court grants such relief, the ABL Agent respectfully requests that it be provided with any such accounting or additional reporting.

Dated: July 15, 2026

/s/ Tatianna J. Witter
Tatianna J. Witter
WINSTON TAYLOR LLP
800 Capitol St., Suite 2400
Houston, TX 77002-2925
Telephone: 713-651-2600
Email: tatianna.witter@winstontaylor.com

*and*

Daniel J. McGuire (admitted *pro hac vice*)
WINSTON TAYLOR LLP
300 N. LaSalle, Suite 4400
Chicago, IL 60654
Telephone: 312-558-5600
Email: dan.mcguire@winstontaylor.com

*Counsel to Bank of America, N.A., in its
capacity as ABL Agent*

## CERTICATE OF SERVICE

I certify that on July 15, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Tatianna J. Witter
Tatianna J. Witter