IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § § § | **Case No. 25-90399 (CML)** |
| **Debtors.**[*] | § § § | **(Jointly Administered)** |

**LAM PARTIES' EMERGENCY MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND INTERROGATORY RESPONSES FROM DEBTORS**

---

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 5:00 P.M. CENTRAL TIME ON JULY 17, 2026.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[*] A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these Chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Leucadia Asset Management LLC, acting through its Point Bonita Capital Division, LAM Trade Finance Group LLC, and LAM TFG I SPV LLC (collectively, the "**LAM Parties**"), respectfully submit this Emergency Motion to Compel (the "**Motion**") seeking an order, substantially in the form of **Exhibit A** hereto (1) compelling the Debtors to produce documents responsive to the LAM Parties' discovery requests or otherwise to provide a privilege log compliant with Federal Rule of Civil Procedure Rule 26(b)(5)(A); (2) compelling the Debtors to provide interrogatory responses that comply with the Federal Rule of Civil Procedure 33; and (3) granting other appropriate relief, including in relation to the confirmation schedule, based on the Debtors' non-compliance with their discovery obligations.

## PRELIMINARY STATEMENT[1]

1.      In connection with their proposed Chapter 11 plan, the Debtors have proposed to sell their Estate Claims to the DIP A Lenders.  The Debtors contend that the sale—for which they seek protections under Section 363(m) of the Bankruptcy Code—is the best available transaction because their marketing allowed for "informed comparison of the alternatives available to the Debtors' estates and afforded any potentially interested party a full and fair opportunity to submit offers for the Litigation Trust Assets."  Dkt. 3188 (Moore Conf. Decl.) ¶ 37.  The Debtors further acknowledge that, following the sale, the Estate Claims would have to yield approximately $2 billion in recoveries for the Plan to be feasible, and have sought to put forward an evidentiary case to support that extraordinary figure.

2.      In an effort to understand and test the Debtors' positions regarding their new Plan, the LAM Parties timely served document requests and interrogatories, which were aimed at answering the following basic questions, among others:  What information was made available to

---

[1]  Capitalized terms not defined herein have the meanings used in the Plan.

bidders, including both the Ad Hoc Group and third-party bidders?  Did all bidders have access to the same information, or did some bidders (particularly the Ad Hoc Group) have access that others did not?  Was all the information that Charles Moore has now publicly testified about made available to all potential bidders?  And to what extent did the Debtors negotiate the terms of their latest Plan and the sale with the Ad Hoc Group?

3.      The Debtors have overwhelmingly refused to answer the LAM Parties' questions, and to produce responsive documents, based on sweeping privilege assertions or in some cases bare assertions that they will not comply.

4.      *First*, the Debtors have asserted that there is a "mediation privilege" covering *every single communication* with the Ad Hoc Group—the prevailing bidder from their sale process— dating back to January 27, 2026, the date of the First Mediation Order.  But there is no general federal "mediation privilege," and the Court-ordered mediation expired on March 27. Following March 27, the Debtors remained in discussions, ultimately proposed the failed Premier Marketing Group Plan, then went back to the drawing board before developing the new Plan now before the Court.  There can be no mediation privilege without a mediation, and no privilege covering all communications regarding a plan that was not even contemplated when the mediation ended on March 27.

5.      The Debtors also appear to assert that they enjoy a common interest privilege with the Ad Hoc Group that covers *every* communication dating to early January, and in some cases before that.  That cannot be right either.  "Common interest" is an exception to the general rule that the attorney-client privilege is waived by sharing privileged information with a third party. The underlying information being shared still has to itself be privileged to qualify as "common interest."  On top of that, the Ad Hoc Group and the Debtors were necessarily adverse to each

other on certain matters, including the negotiation of the Plan, the Estate Claims Marketing Process, and the Estate Claims Credit Bid Transaction. (By definition, the goal of the Debtors is to raise as much money as possible through a bidding process, while the goal of a bidder is to pay as little as possible.)

6. Even if the Debtors could have a common interest with the Ad Hoc Group as to certain matters, the Debtors would need to collect and review the relevant materials to determine which communications relate to which issues, and they would need to provide a privilege log. But that has not happened here, despite repeated requests. Instead, the Debtors have refused to *collect or review* communications with the Ad Hoc Group after January 2026, and they have likewise declined to produce even a categorical privilege log.

7. As of this filing, therefore, the Debtors have not produced—and, it seems, have not collected—a single communication concerning or reflecting the negotiation of the Plan and the sale of the Estate Claims to the Ad Hoc Group, instead apparently claiming privilege over all such communications. That position is untenable. *See* Point A, *infra*.

8. *Second*, by filing Charles Moore's Declaration late on July 14, the Debtors have waived privilege over the facts developed in their Special Committee Investigation related to any of the Estate Claims that he testifies about. Charles Moore is an A&M professional retained in September 2025. Whatever knowledge he has is based entirely on the Special Committee Investigation that was carried out by A&M and Weil personnel. His Declaration outlines numerous findings about the alleged conduct of various parties based on that investigation, but the Debtors are still apparently asserting privilege over investigatory findings and documents other than the materials they chose to disclose. The privilege cannot be used as a sword and a

shield in this manner (and, again, to the extent privilege is asserted, a privilege log would be required). *See* Point B, *infra*.

9. *Third*, the Debtors have answered valid interrogatories with meritless privilege or prematurity assertions, invocations of Rule 33(d) to refer to unspecified documents, and refusals to identify witnesses and testimony. The Debtors even refused to answer an interrogatory asking whether a statement—*which was a nearly word-for-word quotation from a brief they filed*—remained their position, apparently on grounds of privilege. They should be required to respond to the interrogatories.

10. The Debtors' July 14 application to retain Marc S. Kirschner as an expert, effective as of June 20, is troubling in view of the interrogatory responses. The LAM Parties served a valid interrogatory on **June 24** asking the Debtors to identify, by July 2, their expert witnesses and the opinions they would offer. The Debtors did not answer. Nonetheless, on the afternoon of **July 14**, the Debtors filed a 56-page expert declaration from Mr. Kirschner, combined with an application to retain Mr. Kirschner retroactively to **June 20**—four days before the LAM Parties asked for him to be identified. The effect of this delay is that several weeks have passed without the LAM Parties having the notice they timely requested. The prejudice is clear, as the Debtors have eaten up the time necessary to assess and respond to Mr. Kirschner's broad-ranging opinions. *See* Point C, *infra.*

11. Although the LAM Parties remain open to a consensual resolution of these discovery disputes, and have engaged in multiple meet-and-confer sessions with the Debtors, the Debtors' positions to date have prevented a consensual resolution. The LAM Parties thus respectfully ask the Court to intervene, both to require the Debtors to comply with their discovery obligations and to ensure that the process and schedule are fair and reasonable.

### JURISDICTION

12.     The United States Bankruptcy Court for the Southern District of Texas has jurisdiction of this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### RELIEF REQUESTED

14.     The LAM Parties request that this Court issue an order (1) compelling the Debtors to produce documents responsive to the LAM Parties' discovery requests or otherwise to provide a privilege log compliant with Federal Rule of Civil Procedure Rule 26(b)(5)(A); (2) compelling the Debtors to provide interrogatory responses that comply with the Federal Rule of Civil Procedure 33; and (3) granting other appropriate relief, including in relation to the confirmation schedule, based on the Debtors' non-compliance with their discovery obligations.

### EMERGENCY CONSIDERATION

15.     Emergency consideration is warranted because the discovery that is the subject of the Motion concerns the confirmation hearing scheduled to begin on July 28, 2026.  Attempts to resolve these disputes consensually have not been successful, and in light of the imminent deadlines, the LAM Parties respectfully submit that the Court's prompt intervention is needed to enable the LAM Parties to obtain information needed for a full and fair adjudication of objections to confirmation.

### BACKGROUND

16.     Following the Court's conditional approval of the Disclosure Statement, the LAM Parties timely served discovery on the Debtors aimed at gathering critical information concerning the negotiation of the Plan and its key provisions.  Specifically, on June 17, 2026, the LAM Parties served the LAM Parties' First Set of Requests for Production in Connection with

Plan Confirmation (the "**RFPs**"), which sought a response by July 1, 2026 (see **Exhibit B**); and on June 24, 2026, the LAM Parties served the LAM Parties' First Set of Interrogatories in Connection with Plan Confirmation (the "**Interrogatories**"), which sought a response by July 2, 2026 (see **Exhibit C**).

17.     On July 1, 2026, the Debtors served responses and objections to the RFPs (see **Exhibit D**), in which the Debtors generally agreed to produce non-privileged, responsive documents, but asserted that certain categories were likely covered by privileges.  The LAM Parties promptly initiated a meet-and-confer process (which resulted in two meetings and multiple emails), and sought clarification regarding the Debtors' privilege assertions, including by requesting a privilege log.

18.     Since serving their responses and objections, and as recently as July 15, the Debtors have produced documents, including productions made to others in these cases, and have provided dataroom information (largely public documents).  Nonetheless, despite multiple email requests and meet-and confer-sessions, they have not produced communications concerning or reflecting the negotiation of the Plan and related sale of Estate Claims, instead apparently claiming privilege over all such communications.

19.     Initially, in response to LAM's follow-up in a meet-and-confer and by email, the Debtors declined to provide information about search terms, custodians, or other methods of collection, suggesting that they were not conducting a systematic review for periods they believed were covered by the privilege.  *See* **Ex. E** (July 9, 2026 email from C. Calabrese).  On July 12, 2026, at the LAM Parties' insistence after further back-and-forth, the Debtors finally disclosed details of their custodial collection, revealing that it is extraordinarily circumscribed. *See* **Ex. F** (July 12, 2026 email from C. Calabrese).   As part of those exchanges, the Debtors

continued to assert that their privilege positions would be clarified and expounded upon in soon-to-be served interrogatory responses. *Id.*

20.     As disclosed on July 12, the Debtors' custodial search is limited to communications to and from Weil attorneys, and only for two narrow date ranges: September 1, 2025 through September 28, 2025, and January 1, 2026 through January 29, 2026, the date mediation purportedly began.  The Debtors have therefore excluded from collection and review virtually all communications relating to the negotiation, development, and solicitation of the Plan—including communications during the period following the expiration of mediation, the period between the abandonment of the Premier Marketing plan and formulation of the current Plan, and the Estate Claims Marketing period.

21.     The Debtors did not serve interrogatory responses on July 2, the requested deadline, instead waiting until late on July 10 (see **Exhibit G**).  In those responses, however, the Debtors did not provide meaningful answers to the vast majority of LAM's interrogatories. Among other things, the Debtors refused to identify witnesses, including expert witnesses, prior to the filing of declarations or witness and exhibit lists.  LAM promptly conveyed that the interrogatory responses were not sufficient, including at another meet-and-confer on July 13, but the Debtors did not agree.

22.     On the afternoon of July 14, six days before the Plan objection deadline, the Debtors filed a 112-page declaration from Charles Moore and a 56-page expert declaration from Marc S. Kirschner.  They simultaneously filed a retention application revealing that Mr. Kirschner had been hired on **June 20**.  As noted, the Debtors had previously declined to respond to an interrogatory, served on June 24, asking for identification of expert witnesses and the scope of their testimony.

## ARGUMENT

**A.      The Mediation Privilege and Common Interest Privilege claims should be overruled.**

23.      The Debtors have, to date, refused to review or produce a single communication or document reflecting the negotiation of the Plan or the Ad Hoc Group's Bid for the Estate Claims, and have refused to answer interrogatories on those matters.

24.      In response to the LAM Parties' Interrogatory No. 9, which asked whether the Debtors are withholding information relating to the Estate Claims or the Estate Claims Credit Bid Transaction, the Debtors stated:

> Subject to and without waiving any objections, the Debtors respond as follows: any Documents and Communications exchanged between the Debtors and the Ad Hoc Group relating to the Estate Claims are protected by the common interest privilege, and any materials exchanged during mediation would also be protected by the mediation privilege (in addition to the common interest privilege). **The Debtors assert that the mediation privilege applies from January 29, 2026 when the Court entered the initial mediation order (Dkt. 1822) through present as related to topics concerning the Estate Claims, the Plan, and the Plan Settlement.** *The Debtors additionally assert that the common interest privilege applies from September 27, 2026 to present as related to certain topics, including the Estate Claims.* The Debtors are not claiming privilege with respect to Documents and Communications exchanged with any bidders participating in the Estate Claims Marketing Process.

Ex. G (emphasis added).

25.      When pressed for information about their collections and review, the Debtors indicated that they are only reviewing "periods where the Debtors believe that non-privileged communications likely exist," Ex. E (July 9, 2026 email from C. Calabrese), and eventually revealed that the Debtors are only collecting and searching emails from professionals, and only for *two months* (September 2025 and January 2026), Ex. F (July 12, 2026 email from C.

-8-

Calabrese).  The Debtors have therefore decided that large swathes of communications are totally off limits, without the need to conduct any review or provide any more detailed explanation.

26.     For the reasons set forth below, these privilege assertions are far too broad and do not comply with the discovery rules.

**1.     There is no mediation privilege without a mediation.**

27.     There is no generally recognized federal mediation privilege in the Fifth Circuit. *See In re Grand Jury Subpoena Dated December 17, 1996*, 148 F.3d 487, 492–493 & n.3 (5th Cir. 1988).  Any protection from disclosure requires an ongoing mediation and has to be based on the *Third Agreed Mediation Order* [Dkt. 2186] (the "**Mediation Order**"), which states in paragraph 8 that:

> Any (a) discussions among the Parties, including discussions with or in the presence of the Mediator; (b) mediation statements or any other documents or information provided to the Mediator or the Parties in the course of the Mediation; (c) correspondence, draft resolutions produced in connection with, or as a result of, the mediation; and (d) offers and counteroffers . . . shall . . . (iv) not be admissible, discoverable or otherwise used for any purpose in any proceeding outside of the Mediation, including any judicial or administrative proceeding.

28.     The Debtors rely on this language to assert an extremely broad mediation privilege covering "the Estate Claims, the Plan, and the Plan Settlement" *from January 29, 2026 through the present*.  But any privilege created by the Mediation Order is limited to documents prepared for mediation and communications made during mediation, which ended on March 27.

29.     Paragraph 10 of the Mediation Order states that "the Mediation shall be subject to paragraphs 48–57 of the Procedures for Complex Cases in the Southern District of Texas."  Dkt. 1822 at ¶ 10.  Paragraph 53 of those procedures addresses the "Protection of Information Disclosed at Mediation" and states that "[i]nformation otherwise discoverable or admissible in evidence does not become exempt from discovery, or inadmissible in evidence, merely by being

used by a party in the mediation."  Procedures for Complex Cases in the Southern District of Texas (effective Sept. 18, 2024).  Rather, documents protected from discovery are limited to those "prepared for the purpose of, in the course of, or pursuant to the mediation."  *Id.*

30.     Perhaps most importantly, whatever mediation confidentiality might have existed *ended* on March 27, 2026.  In the Disclosure Statement, the Debtors state unambiguously that "the Mediation formally expired on March 27, 2026 without a comprehensive settlement," but the parties continued discussions thereafter.  Dkt. 3020 at 82.  Following March 27, there was no mediation and therefore there was no mediation privilege.

31.     Moreover, to the extent the Debtors are seeking to use the "mediation privilege" to shield materials concerning the Estate Claims, and the sale of those claims, that were created independently of mediation, that too is inappropriate.  In particular, the Debtors cannot claim that mediation privilege prevents discovery of whether the Ad Hoc Group, *as a bidder*, received factual information beyond what other bidders received.  The Debtors likewise have no basis to claim mediation privilege over documents associated with confirmation of the *current* Plan, which originated only after the mediation was done.

### 2.     The Debtors' common interest claims are too broad and they fail entirely without a privilege log.

32.     The Debtors have also asserted an extremely broad, blanket common interest position, arguing that they need not answer any questions or even collect or review any documents about the Plan, Plan Settlement, Estate Claims, or Estate Claims Credit Bid Transaction with the Ad Hoc Group since at least early January 2026.

33.     "Common interest" is not an independent basis for privilege; it is an exception to the rule that attorney-client privilege is waived by sharing information with a third party.  *See, e.g.*, *United States* v. *Brown*, 151 F.4th 647, 656–57 (5th Cir. 2025).  Because common interest is

"an obstacle to truthseeking, it must be construed narrowly to effectuate necessary consultation between legal advisers and clients." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (internal quotation marks and citations omitted). And "[w]here the common interest ends, so does the privilege." *Hall Pat. Grp., LLC* v. *Indus. Noise Control Corp.*, 2006 WL 8437278, at *3 (N.D. Tex. Sept. 19, 2006) (citation omitted).

34.     Thus, to assert common interest, at a minimum, the Debtors would have to conclude that each and every document shared with the Ad Hoc Group was itself attorney-client information, and then that the sharing of information was on a topic on which they had the same legal interest.

35.     The Debtors have apparently not even *reviewed* the underlying communications, and so they have no basis to contend that each and every communication with the Ad Hoc Group is subject to privilege. Given the lack of a privilege log, it is impossible to know whether the Debtors are, for example, improperly extending the common interest to underlying factual information shared among the parties, which would not be privileged.

36.     Moreover, the assertion that the Ad Hoc Group and the Debtors had a complete common interest since January 2026 necessarily fails, because there are various topics on which the Ad Hoc Group and the Debtors had adverse interests, not common interests, during that period. The Debtors effectively acknowledge as much by stating that "[t]he Debtors are not claiming privilege with respect to Documents and Communications exchanged with any bidders participating in the Estate Claims Marketing Process"—except, apparently, the Ad Hoc Group. A bidder and a seller do not have a common interest with respect to a bid; the Estate Claims Credit Bid Transaction simply cannot be a matter of common interest.

37.     As courts in this Circuit have recognized, negotiations over a plan, sale, or other transaction are not subject to common interest, because the parties' interests in the negotiation

are "adverse rather than common." *SB IP Holdings LLC* v. *Vivint Smart Home, Inc.*, 2022 WL

19977100, at *4 (E.D. Tex. Aug. 18, 2022) (citation omitted).  Courts have also recognized that

bidders and sellers at an auction do not have a common interest.  *In re Berks Behavior Health*

*LLC*, 500 B.R. 711, 723 (Bankr. E.D. Pa. 2013) (bidder's "interest would presumably run

adverse to the Debtor.  This is due to the fact that the Debtor is bound to accept the highest bid

possible while no bidder . . . would be expected to bid against himself . . . [A]t that point that the

interests of the Debtor and [bidder] are irreconcilable").

38.     Although it is possible the Debtors have certain discrete common interests with

the Ad Hoc Group, at a bare minimum, not *every* communication since January 2026 is

privileged.  The proper way to assert common interest is by reviewing each communication and,

to the extent there are grounds to claim common interest, to prepare an appropriate privilege log

substantiating that claim.  Here, the Debtors have failed to follow appropriate procedures by not

even *collecting* and *reviewing* the relevant materials, instead making a blanket common interest

claim.  The Court should accordingly require that collection or review, or otherwise find that the

privilege has been waived.  *EEOC* v. *BDO USA, LLP*, 876 F.3d 690, 697 (5th Cir. 2017).

**B.      The Debtors have waived privilege over the Special Committee Investigation.**

39.     The LAM Parties served Request for Production No. 16, which sought "[a]ll

Documents and Communications relating to the Special Committee Investigation (as defined in

the Disclosure Statement)."[2]  Ex. B at 6.  In response, the Debtors stated that the information was

subject to various privileges, including attorney-client and work product, mediation privilege,

common interest, and privilege with the Examiner.  Ex. D at 20-21.  The Debtors have produced

---

[2]  The Special Committee Investigation is discussed at page 56 of the Disclosure Statement (Dkt. 3020), and describes an investigation into estate causes of action led by the Special Committee working with Weil and A&M.

certain historical documents, but have not represented that the documents are from the investigation, and have not supplied a privilege log making clear what materials from the investigation are being withheld, if any.  The LAM Parties believe, however, that numerous investigation materials have not been produced, such as interview notes.

40.     On July 14, 2026, the Debtors filed the Declaration of Charles Moore, which set forth some of the conclusions of their investigation—namely, purported facts that the Debtors believe support the strength of certain Estate Claims.  That testimony is crucial to establishing feasibility, because the Debtors are seeking findings from the Court that their Estate Claims are reasonably worth almost $2 billion.

41.     Charles Moore is an A&M professional retained in September 2025, long after the events giving rise to most of the purported Estate Claims.  His knowledge is based entirely on the results of the investigation.  The validity of his testimony therefore depends on concluding that he has credibly presented the facts developed from the investigation; if the presented facts were selectively chosen and contrary evidence ignored, a misleading picture might emerge.

42.     The Debtors in this case, having chosen to put the findings resulting from their investigation at issue,[3] cannot selectively disclose the conclusions from their investigation that suit their interests and then claim privilege or work product over other facts discovered in the course of the investigation on related matters.  *See Willy* v. *Administrative Review Board*, 423 F.3d 483, 497 (5th Cir. 2005) ("[W]hen a party entitled to claim the attorney-client privilege uses

---

[3] *See, e.g.*, Moore Conf. Decl. ¶ 58 (Dkt. 3188) ("Since our retention in this case, I, along with my team at A&M, in coordination with the FBG Debtors' other professionals and advisors, have uncovered significant facts about the true nature of the activities of prior management and the FBG Debtors' prepetition business based on an extensive, and months-long, factual review and analysis of the FBG Debtors' books and records, financial data, electronic records, and prepetition transactions and events.").

confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege.").[4]

43.     To the contrary, in cases such as this, "where the privilege-holder seeks to use some protected material as evidence but asserts privilege to withhold other related material from disclosure," the consequence is that the privilege holder "thereby waives the privilege as to all related privileged matters on the same subject." *Anadarko*, 2023 WL 2733401, at *3. Indeed, as *Anadarko* states, one of the paradigmatic types of sword-shield waiver is where a party relies on their investigation to advocate for a result but withholds related facts developed in the course of the same investigation. *Id.*

44.     The Debtors should accordingly be compelled to produce the underlying materials developed in or resulting from their investigation related to Estate Claims that are outlined in the Moore or Kirschner Declarations. Alternatively, all of that testimony must be excluded.

**C.     The Debtors should be compelled to provide interrogatory responses that comply with the Federal Rules of Civil Procedure.**

45.     The Debtors have responded in an untimely and deficient way to the LAM Parties' Interrogatories—making sweeping and unsupported claims of privilege, claiming that the majority of interrogatories were "premature" despite the expedited schedule, and refusing to provide any meaningful responses to 12 of the 17 interrogatories.

---

[4] *Accord, e.g.*, *Nguyen* v. *Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999) ("[D]isclosure of any significant portion of a confidential communication waives the privilege as to the whole." (alteration in original)); *In re Anadarko Petroleum Corp. Sec. Litig.*, 2023 WL 2733401, at *3 (S.D. Tex. Mar. 31, 2023) (Eskridge, J.); *In re Application of Chevron Corp.* v. *3TM Consulting, LLC*, 2011 WL 13135155, at *3 (S.D. Tex. Jan. 10, 2011).
.

46.     The Interrogatories sought to obtain basic information that the LAM Parties need to prepare for trial.  Although the Debtors responded to nearly all of the Interrogatories in an unreasonable way, the LAM Parties seek relief with respect to the following sets of interrogatories:

47.     ***Interrogatories regarding the Estate Claim Sale Process***.  The Debtors have failed to provide answers to straightforward and legitimate questions about their marketing and sale process.

48.     *Interrogatories 5 and 6* asked the Debtors to point to evidence they intend to present on the Estate Claims, and to say whether they intended to present any evidence that was not disclosed to all bidders as part of the Estate Claims Marketing Process.  For both, the Debtors responded by referring to unspecified, to-be-filed witness declarations.  Those are not valid responses to interrogatories.  In any case, now that the declarations have been filed, LAM still does not know whether the Debtors disclosed the same information to the Ad Hoc Group and other bidders, or whether the information in the declarations is broader or narrower than what was disclosed to bidders, in particular, the Ad Hoc Group.  The Debtors should be required to say what information they disclosed to bidders, including the Ad Hoc Group, or to make a specific privilege assertion regarding particular communications.[5]

49.     *Interrogatory 8* asked an even more basic question:  Were other bidders provided the same information as the Ad Hoc Group when it comes to bidding on the Estate Claims, and if not, what different information was provided.  The answer amounts to:  "***That's privileged***."

50.     That does not hold up.  The fairness of the Estate Claims Marketing Process is a central issue at the Confirmation Hearing.  Whether parties were bidding based on the same

---

[5]  Interrogatory 7 asked for the basis of the Debtors' own statement in their Liquidation Analysis that there was no indication that a third-party bidder is willing to pay more than the Ad Hoc Group.  The Debtors responded with a Rule 33(d) response referring to unproduced and unspecified documents.  Although that response is deficient, the Debtors have provided information responsive to this question in Mr. Moore's declaration.

information, or if one bidder uniquely had access to privileged information, goes to the bona fides of the sale process.  The Debtors should be required to answer the question: did the Ad Hoc Group get more information than other bidders and, if so, what information?  Again, if there are specific underlying documents or communications that the Debtors contend are privileged, those documents should be identified and logged.

51.    ***Interrogatories regarding the Debtors' Legal Positions.***  The LAM Parties served contention interrogatories on the Debtors to obtain clarity about legal positions.  Contention interrogatories are expressly permitted by Rule 33.  Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact.").

52.    *Interrogatory 10* asked whether the Debtors were maintaining their position from the Premier Marketing Group Plan that distributions from the Litigation Trust were gifts from the Ad Hoc Group, or whether they are now distributions of estate property.  The LAM Parties asked that question by quoting, *nearly word-for-word*, the Debtors' *own brief* in support of the Premier Marketing Group Plan, and asking if that was their position.[6]  ***The Debtors refused to answer, claiming privilege***.  They should be required to answer.

---

6

| Debtors' Filing (Dkt. No. 2741 ¶ 15 (footnotes omitted): | Interrogatory No. 10: |
|---|---|
| These assets will be monetized and distributed to the Litigation Trust beneficiaries in accordance with the Litigation Trust Waterfall.  These distributions are not a "gift of estate property." Rather, they will be distributions on account of assets that were purchased under section 363 of the Bankruptcy Code by the DIP Secured Parties and transferred to the Litigation Trust. | Do You contend that, if the Estate Claims Credit Bid Transaction is selected as the winning bid following the Estate Claims Marketing Process, the monetization and distribution of the Litigation Trust Assets in accordance with the Litigation Trust Waterfall will be distributions on account of assets that will have been purchased under section 363 of the Bankruptcy Code by the DIP Secured Parties and transferred to the Litigation Trust, |

53.     *Interrogatory 14* in effect asked, what do the Debtors believe happens if the Plan does not ultimately go reach the "Effective Date"—which provisions stay in force, and which can be undone?  That is a major issue raised by multiple parties, particularly given the invocations of Section 363(m) throughout the Plan.  ***The Debtors again refused to answer.***  And again, they should be required to answer.

54.     *Interrogatory 16* asked the basis for the Debtors' claim that each person listed as a "Non-Released Party" engaged in "Adverse Conduct."  The Debtors answered by referring to a generic list of documents and unspecified documents to be produced later, effectively a non-answer.  There is, again, no basis not to provide a clear response.

*     *     *

55.     "The federal rules promote broad discovery so that all relevant evidence is disclosed as early as possible, making a trial less a game of blind man's bluff and more a fair contest, where each party can knowledgeably evaluate the strength of its evidence and chances of ultimate success."  *Chiasson* v. *Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993) (internal citation, quotation marks, and brackets omitted).  The Debtors have not respected that principle.  Their choice to delay disclosing that the Debtors intended to present expert testimony, to delay responses to interrogatories and document requests, and to avoid providing even a categorical privilege log has consequences for LAM and other parties, who should not be

| | |
|---|---|
| Ultimately, any distributions from the Litigation Trust are distributions of proceeds from the DIP Secured Parties' properly acquired property, which would not be property of the Debtors' estates following the sale and therefore not subject to the absolute priority rule. | such that any distributions from the Litigation Trust will be distributions of proceeds from the DIP Secured Parties' properly acquired property, and not of property of the Debtors' estates following the consummation of the Estate Claims Credit Bid Transaction? |

required to file objections, take depositions, and appear at trial when the Debtors have resisted targeted and legitimate discovery.

## CONCLUSION

56.     For the foregoing reasons, the LAM Parties respectfully request entry of an order, substantially in the form of **Exhibit A** hereto, (1) compelling the Debtors to produce documents responsive to the LAM Parties' discovery requests or otherwise to provide a privilege log compliant with Federal Rule of Civil Procedure Rule 26(b)(5)(A); (2) compelling the Debtors to provide interrogatory responses that comply with the Federal Rule of Civil Procedure 33; and (3) granting other appropriate relief, including in relation to the confirmation schedule, based on the Debtors' non-compliance with their discovery obligations.

Dated:  July 15, 2026
Houston, Texas

*/s/ Paul E. Heath*

**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Matthew D. Struble (TX 24102544)
845 Texas Avenue, Suite 4700
Houston, TX  77002
Tel.:  713.758.2222
Email: pheath@velaw.com
        mstruble@velaw.com

**WACHTELL, LIPTON, ROSEN & KATZ**
Emil A. Kleinhaus (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
Angela K. Herring (admitted *pro hac vice*)
51 West 52nd Street
New York, NY  10019
Tel.:  212.403.1000
Email: eakleinhaus@wlrk.com
        mhcassel@wlrk.com
        akherring@wlrk.com

***COUNSEL TO THE LAM PARTIES***

**CERTIFICATE OF ACCURACY**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Michael H. Cassel*
Michael H. Cassel

**CERTIFICATE OF CONFERENCE**

I hereby certify that I have made a good faith effort to resolve this discovery dispute without the Court's action. Counsel for the LAM Parties and the Debtors met and conferred on July 7 and July 13, 2026 but have not reached a consensual resolution.

*/s/ Michael H. Cassel*
Michael H. Cassel

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Kiran Vakamudi*
One of Counsel

-19-

**Exhibit A**
**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| **Debtors.**[*] | § | **(Jointly Administered)** |
| | § | |
| | § | **Re: Dkt. No. ____** |

**PROPOSED ORDER GRANTING LAM PARTIES'
EMERGENCY MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND INTERROGATORY RESPONSES FROM DEBTORS**

Upon consideration of the *Emergency Motion to Compel Production of Documents and Interrogatory Responses from Debtors* (the "**Motion**")[7] filed by the LAM Parties; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that notice of the Motion was appropriate under the circumstances and that no other notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion and at any proceedings before the Court with respect to the Motion establish just cause for the relief granted herein, IT IS HEREBY ORDERED THAT:

1. The relief sought in the Motion is granted.

2. The Debtors are compelled to produce documents responsive to the LAM Parties' discovery requests, including in particular (a) communications with the Ad Hoc Group or its

---

[*] A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these Chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[7] Capitalized terms used but not otherwise defined shall have the meanings set forth in the Motion.

representatives, and (b) documents and communications relating to the Special Committee's investigation, or provide a compliant privilege log identifying documents the Debtors are withholding from production.  The parties will meet and confer on the timing of production, which shall take place as soon as reasonably possible.

3.      In accordance with Federal Rule of Civil Procedure 33, the Debtors are compelled to respond to the *LAM Parties' First Set of Interrogatories in Connection with Plan Confirmation*, dated June 24, 2026.

4.      The Debtors and the LAM Parties will meet and confer, which shall take place as soon as reasonably possible, regarding an agreed form of order scheduling applicable remaining deadlines for confirmation of the Plan.

5.      Notwithstanding any stay that may be imposed by the Bankruptcy Rules or otherwise, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

6.      The LAM Parties and their professionals are authorized to take all actions necessary to effectuate the relief granted in this Order.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: July ___, 2026
Houston, Texas

_____
**THE HONORABLE CHRISTOPHER M. LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**

2

**Exhibit B**
**LAM Parties' First Set of RFPs**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

## LAM PARTIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable herein by Federal Rules of Bankruptcy Procedure 9014, 7026 and 7034, the LAM Parties,[2] by and through their undersigned counsel, hereby serve their First Requests for Production of Documents (the "***Requests for Production***" or "***Requests***", each a "***Request for Production***" or "***Request***") on First Brands Group, LLC and its debtor and non-debtor affiliates (together, "***First Brands***"). The Requests are served in connection with the Debtors' Chapter 11 Plan and the Settlement Motion (each as defined below). On or before 5:00 p.m. EST on July 1, 2026, First Brands must produce the requested Documents and tangible things to the undersigned attorneys, including by e-mail to eakleinhaus@wlrk.com, mhcassel@wlrk.com, akherring@wlrk.com, pheath@velaw.com and mstruble@velaw.com.

---

[1]  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]  The LAM Parties are Leucadia Asset Management LLC, acting through its Point Bonita Capital Division ("***LAM***"), LAM Trade Finance Group LLC ("***LAM TFG***"), and LAM TFG I SPV LLC ("***LAM SPV***").

4935-0947-7814

## DEFINITIONS[3]

1.      "**ABL Lenders**" has the meaning set forth in the Plan.

2.      "**Ad Hoc Group**" has the meaning set forth in the Plan.

3.      "**Adversary Proceeding**" means any adversary proceeding filed in connection with the Chapter 11 Cases and includes each of the proceedings described in Section IV.K and IV.L of the Disclosure Statement.

4.      "**Bankruptcy Code**" has the meaning set forth in the Plan.

5.      "**Chapter 11 Cases**" means, with respect to each of the Debtors, each and every one of such Debtor's cases under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court, and also includes the cases under Chapter 7 of the Bankruptcy Code for the Evolution SPV Debtors.  The term Chapter 11 Cases includes any Adversary Proceedings filed in connection with such Chapter 11 Cases.

6.      "**Communications**" means any recorded oral or written communication of any kind, including among other things e-mails and text messages.

---

[3]  Capitalized terms not defined have the meanings ascribed to them in the Plan.

4935-0947-7814

7. "*Conditional Disclosure Statement Hearing*" means the hearing held on June 12, 2026 on the *Emergency Motion of Debtors for Entry of Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt-In Procedures; (V) Establishing Preference Settlement Notice and Opt-In Procedures; (VI) Establishing Notice and Objection Procedures for Confirmation of Plan; and (VII) Granting Related Relief* [Dkt. 2914] and the *Motion to Convert or Dismiss Case* [Dkt. 2670] filed by the United States Trustee.

8. "*Confirmation Hearing*" has the meaning set forth in the Plan.

9. "*Creditors' Committee*" has the meaning set forth in the Plan.

10. "*Debtors*" means each of the debtors and debtors in possession in the above-captioned chapter 11 cases, together with each of their employees, managers, officers, directors, agents, subsidiaries, special purpose vehicles, and affiliates, including the Evolution SPV Debtors.

11. "*DIP Secured Parties*" has the meaning set forth in the Plan.

12. "*Disclosure Statement*" means the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at Dkt. No. 2982, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time, and which is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code and Bankruptcy Rules 3016 and 3018.

13. "*Documents*" has the same meaning as in Fed. R. Civ. P. 34.

14. "*Entity*" has the same meaning as in the Bankruptcy Code.

4935-0947-7814

15.     "*Estate Claims*" has the meaning set forth in the Plan.

16.     "*Estate Claims Credit Bid Transaction*" has the meaning set forth in the Plan.

17.     "*Estate Claims Marketing Process*" has the meaning set forth in the Disclosure Statement.

18.     "*Evolution SPV Debtors*" has the meaning set forth in the Disclosure Statement.

19.     "*Examiner*" has the meaning set forth in the Disclosure Statement.

20.     "*FBG Debtors*" has the meaning set forth in the Plan.

21.     "*First Brands*" means the Debtors, together with all non-debtor subsidiaries or affiliates and each of their employees, managers, officers, directors, agents, subsidiaries, and special purpose vehicles.

22.     "*including*" shall mean "including, without limitation."

23.     "*Litigation Trust Assets*" has the meaning set forth in the Plan.

24.     "*Plan*" means the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at Dkt. No. 2981, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time.

25.     "*Plan Settlement*" has the meaning set forth in the Plan.

26.     "*Plan Supplement*" has the meaning set forth in the Plan.

27.     "*Premier Marketing Group Global Settlement*" has the meaning set forth in the Premier Marketing Group Plan.

28.     "*Premier Marketing Group Plan*" means the Chapter 11 Plan of Premier Marketing Group, LLC filed at Docket No. 2733 in the above-captioned case, as it had been amended, revised and/or supplemented.

29.     "*You*" or "*Your*" means First Brands.

-4-

4935-0947-7814

**INSTRUCTIONS**

1.      These Requests seek all responsive Documents within Your possession, custody, or control.  Documents in Your possession, custody, and control are presumed to include Documents in the possession, custody, or control of professionals, advisors, and others employed on Your behalf.  The Requests below require You to search for and produce Documents or Communications in the custody, possession or control of any of First Brands' professionals or advisors (including all prepetition professionals and advisors) or any of their respective subsidiaries or affiliates.

2.      Each copy of a Document that differs in any way from another copy of that Document (by marginalia, highlighting, completeness/incompleteness, inclusion/exclusion of attachments, or otherwise) should be considered a separate Document and produced separately. The Requests call for production of all drafts of Documents in addition to final versions of Documents.

3.      A Request for Communications between You and another entity includes Communications by and between each side's respective professionals, advisors, and others employed on Your or such entity's behalf.

4.      If any document or information requested is claimed to be immune from discovery on the grounds of privilege or other exemption, then identify for each such document or information the purported privilege or exemption claimed, state the basis for the privilege or exemption asserted, and describe the information alleged to be privileged in detail sufficient to determine whether the privilege has been properly invoked, as and to the extent required by Federal Rule of Civil Procedure 26(b)(5), made applicable by Bankruptcy Rules 7026 and 9014.

5.      Any use of the word "including" means "including, without limitation."

4935-0947-7814

6.      Unless otherwise stated, the time period for these Requests is from September 1, 2025 to the present.

7.      These Requests are continuing.  If further information or Documents come into the possession of, or are brought to the attention of, You or Your agents, attorneys, employees, or representatives, You are required to supplement your responses and production.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**    All transcripts of any deposition (including exhibits thereto) taken in connection with the Chapter 11 Cases or any Adversary Proceeding.

**REQUEST FOR PRODUCTION NO. 2:**    All responses to interrogatories or requests for admission (including all documents referenced therein or identified pursuant to Fed. R. Civ. P. Rule 33(d)) provided by any of the Debtors in connection with the Chapter 11 Cases or any Adversary Proceeding.

**REQUEST FOR PRODUCTION NO. 3:**    Copies of all Documents the Debtors have produced to any party in connection with the Chapter 11 Cases or any Adversary Proceeding.

**REQUEST FOR PRODUCTION NO. 4:**    Unredacted copies of all filings in the Chapter 11 Cases and any Adversary Proceedings to the extent such filings were made under seal and are not publicly available on the court's docket.

**REQUEST FOR PRODUCTION NO. 5:**    All Documents and Communications provided to or exchanged with the Examiner or the Examiner's professionals in connection with the Chapter 11 Cases or any Adversary Proceeding.

**REQUEST FOR PRODUCTION NO. 6:**    All Documents and Communications exchanged among You and the Ad Hoc Group (or any of its members), the Creditors' Committee (or any of its members), or the ABL Lenders relating to the Premier Marketing Group Plan, the Premier Marketing Group Global Settlement, the Estate Claims Credit Bid Transaction, the Plan, or the Plan Settlement.  The Documents and Communications responsive to this request include all communications relating to any terms or aspects of those plans, settlements or transactions, as well as all communications reflecting negotiations of those plans, settlements or transactions.[4]

**REQUEST FOR PRODUCTION NO. 7:**    All Documents and Communications exchanged between You and Gerard Uzzi of Uzzi & Lall.

---

[4] To the extent you assert that any responsive Documents and Communications are subject to mediation privilege, your privilege log should demonstrate the basis for such assertion, including information sufficient to show the dates for which such privilege is being claimed.

4935-0947-7814

**REQUEST FOR PRODUCTION NO. 8:**     All Documents and Communications relating to "Adverse Conduct" as defined in the Plan, including any and all Communications relating to any assessment or conclusion regarding which persons or entities engaged in "Adverse Conduct."

**REQUEST FOR PRODUCTION NO. 9:**     All Documents and Communications relating to substantive consolidation in connection with the Plan, including any and all Communications relating to any consideration of consolidating any Debtors for particular purposes, and any and all Communications relating to consolidation for purposes of any defenses to preference or other avoidance actions (in connection with the Preference Settlement as defined in the Plan or otherwise).

**REQUEST FOR PRODUCTION NO. 10:**   All Documents and Communications relating to the Preference Settlement as defined in the Plan, including any and all Communications relating to eligibility to participate in the settlement.

**REQUEST FOR PRODUCTION NO. 11:**   All Documents relating to the schedule of Specified Non-Released Parties in the Plan Supplement, including any and all Communications regarding the composition of the schedule and determinations regarding which persons or entities are included in the schedule.

**REQUEST FOR PRODUCTION NO. 12:**    All Documents and Communications relating to the Estate Claims Marketing Process, including (i) all diligence materials provided to any potential bidders, prospective bidders, bidders, or other participants, including all Documents in the "data room"; (ii) all indications of interest received from any prospective bidder; (iii) all bids received; (iv) all indications of interest for any Estate Claims being sold; (v) all "teaser" materials or other information used to solicit potential or prospective bidders; (vi) any Documents or Communications provided to the Ad Hoc Group or the participants in the Estate Claims Credit Bid in connection with the Estate Claims; and (vii) any Documents or Communications exchanged with any potential bidder, prospective bidders, or other participants. This Request expressly encompasses any Documents and Communications provided to or exchanged with the Ad Hoc Group or other participants in the Estate Claims Marketing Process that are in any way connected to the Estate Claims Credit Bid Transaction or the Estate Claims.

**REQUEST FOR PRODUCTION NO. 13:**    All Documents and Communications relating to the Estate Claims Credit Bid Transaction.

**REQUEST FOR PRODUCTION NO. 14:**    All Documents and Communications relating to the "causes of action" and "transactions" referenced by Charles M. Moore as described at Pages 24-25 and 131-132 of the transcript of the Conditional Disclosure Statement Hearing.

**REQUEST FOR PRODUCTION NO. 15:**   All Documents and Communications reviewed by or relied upon by Charles M. Moore in connection with reviewing and signing the Plan, the Disclosure Statement, or any declaration submitted in connection therewith, or in connection with providing testimony at the Conditional Disclosure Statement Hearing.

**REQUEST FOR PRODUCTION NO. 16:**    All Documents and Communications relating to the Special Committee Investigation (as defined in the Disclosure Statement).

4935-0947-7814

**REQUEST FOR PRODUCTION NO. 17:**   All Documents and Communications relating to, reflecting, or forming the basis for the Debtors' conclusion that "Based on the FBG Debtors' reasonable estimates, the FBG Debtors are estimating that the Effective Date is reasonably likely to occur in the second half of 2028, although the Effective Date may reasonably or in fact occur earlier or later than the second half of 2028." (Disclosure Statement at 27.)

**REQUEST FOR PRODUCTION NO. 18:**   All Communications between You and the Ad Hoc Group (or any of its members) or the DIP Secured Parties (or any of those parties) between September 11, 2025 and September 28, 2025.

**REQUEST FOR PRODUCTION NO. 19:**   All Documents and Communications produced to any other Entity in connection with the Confirmation Hearing or the Conditional Disclosure Statement Hearing.

**REQUEST FOR PRODUCTION NO. 20:**   All Documents and Communications on which the Debtors intend to rely at the Confirmation Hearing.

**REQUEST FOR PRODUCTION NO. 21:**   All Documents and Communications on which any witness called by the Debtors has relied on or will rely on in connection with any testimony relating to the Confirmation Hearing.

Dated:  June 17, 2026
Houston, Texas

*/s/ Paul E. Heath*
**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Matthew D. Struble (TX 24102544)
845 Texas Avenue, Suite 4700
Houston, TX  77002
Tel:  713.758.2222
Email: pheath@velaw.com
    mstruble@velaw.com

**WACHTELL, LIPTON, ROSEN & KATZ**
Emil A. Kleinhaus (admitted *pro hac vice*)
Angela K. Herring (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
51 West 52nd Street
New York, NY  10019
Tel:  212.403.1332
Email:  eakleinhaus@wlrk.com
    akherring@wlrk.com
    mhcassel@wlrk.com

*COUNSEL TO LEUCADIA ASSET MANAGEMENT LLC, LAM TFG, AND LAM SPV*

4935-0947-7814

**Exhibit C**
**LAM Parties' First Set of Interrogatories**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

**LAM PARTIES' FIRST SET OF INTERROGATORIES IN CONNECTION WITH
PLAN CONFIRMATION**

Pursuant to Federal Rules of Civil Procedure 26 and 33, made applicable by Federal Rules of Bankruptcy Procedure 9014, 7026 and 7033, the LAM Parties,[2] by and through their undersigned counsel, hereby serve this first set of interrogatories (the "***Interrogatories***") on First Brands Group, LLC and its debtor and non-debtor affiliates (together, "***First Brands***"). The Interrogatories are served in connection with the Confirmation Hearing (as defined below). A response is to be served as soon as practicable and no later than 5:00 p.m. EST on July 2, 2026, including by e-mail to eakleinhaus@wlrk.com, mhcassel@wlrk.com, akherring@wlrk.com, pheath@velaw.com and mstruble@velaw.com.

**DEFINITIONS**

1.      "***Ad Hoc Group***" has the meaning set forth in the Plan.

2.      "***Administrative Expense Claims***" has the meaning set forth in the Plan.

3.      "***Adverse Conduct***" has the meaning set forth in the Plan.

---

[1]  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]  The LAM Parties are Leucadia Asset Management LLC, acting through its Point Bonita Capital Division ("***LAM***"), LAM Trade Finance Group LLC ("***LAM TFG***"), and TAM TFG I SPV LLC ("***LAM SPV***").

4.     "***Bankruptcy Code***" has the meaning set forth in the Plan.

5.     "***Communications***" means any recorded oral or written communication of any kind, including among other things e-mails and text messages.

6.     "***Conditional Disclosure Statement Hearing***" means the hearing held on June 12, 2026 on the *Emergency Motion of Debtors for Entry of Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt-In Procedures; (V) Establishing Preference Settlement Notice and Opt-In Procedures; (VI) Establishing Notice and Objection Procedures for Confirmation of Plan; and (VII) Granting Related Relief* filed at Dkt. 2914 and the *Motion to Convert or Dismiss Case* filed at Dkt. 2670 by the United States Trustee.

7.     "***Confirmation Hearing***" has the meaning set forth in the Plan.

8.     "***Debtors***" means each of the debtors and debtors in possession in the above-captioned chapter 11 cases, together with each of their employees, managers, officers, directors, agents, subsidiaries, special purpose vehicles, and affiliates, including the Evolution SPV Debtors.

9.     "***Deficiency Claim***" means a claim of a creditor secured by a lien on property in which the estate has an interest to the extent that the value of such creditor's interest in such property is less than the amount of such creditor's claim.

10.    "***DIP A Claims***" has the meaning set forth in the Plan.

11.    "***DIP Secured Parties***" has the meaning set forth in the Plan.

12.     "*Disclosure Statement*" means the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at Dkt. No. 3020, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time, and which is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code and Bankruptcy Rules 3016 and 3018.

13.     "*DIP Secured Parties*" has the meaning set forth in the Plan.

14.     "*Documents*" has the same meaning as in Fed. R. Civ. P. 34.

15.     "*Effective Date*" has the meaning set forth in the Plan.

16.     "*Entity*" or "*entity*" has the same meaning as in the Bankruptcy Code.

17.     "*Estate Claims*" has the meaning set forth in the Plan.

18.     "*Estate Claims Credit Bid Transaction*" has the meaning set forth in the Plan.

19.     "*Estate Claims Marketing Process*" has the meaning set forth in the Disclosure Statement.

20.     "*Evolution SPV Debtors*" has the meaning set forth in the Disclosure Statement.

21.     "*FBG Debtors*" has the meaning set forth in the Plan.

22.     "*First Brands*" means the Debtors, together with all non-debtor subsidiaries or affiliates and each of their employees, managers, officers, directors, agents, subsidiaries, and special purpose vehicles.

23.     "*including*" shall mean "including, without limitation".

24.     "*Litigation Trust*" has the meaning set forth in the Plan.

25.     "*Litigation Trust Assets*" has the meaning set forth in the Plan.

26.     "*Litigation Trust Waterfall*" has the meaning set forth in the Plan.

27.     "*Person*" has the meaning set forth in the Plan.

-3-

28.     "*Plan*" means the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at Dkt. No. 3019, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time, and which is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code and Bankruptcy Rules 3016 and 3018.

29.     "*Plan Supplement*" means the *Notice of Filing of (I) Plan Supplement and (II) Liquidation Analysis* filed at Dkt. No. 3046, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time.

30.     "*Privileges*" means the attorney-client privilege, the work-product doctrine, the common-interest or joint-defense privilege, mediation privilege, or any similar doctrine or immunity that You contend permits You to withhold information otherwise discoverable.

31.     "*Secured Claim*" means a claim of a creditor secured by a lien on property in which the estate has an interest to the extent of the value of such creditor's interest in the estate's interest in such property.

32.     "*You*" *or* "*Your*" means First Brands.

33.     If an Interrogatory is quoting from another Document, capitalized terms used within the quotation have the meaning ascribed to them in such Document.

## INSTRUCTIONS

1.     The terms used in these Interrogatories are to be given their most expansive and inclusive interpretation unless otherwise expressly limited.  The terms "all," "any," and "each" shall each be construed as encompassing any, all, each, and every. The singular form of a word shall include the plural and vice versa.  The terms "and" or "or" shall be both conjunctive and disjunctive.  The term "including" means "including without limitation."

2.       These Interrogatories shall be deemed continuing in nature.  In the event First Brands becomes aware of or acquires additional responsive information, such additional information is to be promptly produced.

3.       Where an objection is interposed to these Interrogatories, the objection shall state with specificity all bases and grounds for the objection.

4.       If any responsive information or documents is known to have existed and cannot now be located or has been destroyed, discarded, or otherwise disposed of, set forth a complete statement of the circumstances surrounding such loss, destruction, discarding or other disposition.

## **INTERROGATORIES**

### **INTERROGATORY NO. 1:**

Disclose the identity of each witness that You may use at the Confirmation Hearing to present evidence or testimony under Fed. R. Evid. 702, 703, or 705, and for each such witness, provide (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) all facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases, in which during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.[3]

### **INTERROGATORY NO. 2:**

Disclose the identity of each witness that You may use at the Confirmation Hearing to present evidence or testimony under Fed. R. Evid. 701 as "lay opinion" testimony regarding any Estate Claim, and for each such witness, provide (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) all facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv)

---

[3] For the avoidance of doubt, the facts or data that must be disclosed in response to this Interrogatory includes all facts or data that You or Your attorneys have provided and that the expert considered in forming the opinions to be expressed, any assumptions that You or Your attorneys provided and that the expert relied on in forming the opinions to be expressed, requires disclosure of any material considered by the expert, from whatever source, that contains factual ingredients, and includes any facts or data considered by the expert in forming the opinions to be expressed, not only those relied upon by the expert.

the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified at trial or by deposition; and (vi) a statement of the compensation to be paid for the witness' testimony in the case.[4]

**INTERROGATORY NO. 3:**

Disclose the identity of each witness that You may use at the Confirmation Hearing to present evidence or testimony other than under Fed. R. Evid. 701, 702, 703, or 705 or otherwise not disclosed in response to Interrogatories No. 1 and No. 2, and for each such witness, provide a summary of the facts or opinions as to which the witness is expected to testify.

**INTERROGATORY NO. 4:**

Disclose the identity of each individual employed by the Debtors or the Debtors' Professionals or otherwise in the Debtors' control with knowledge of underlying facts related to the subject-matter of the testimony expected to be given by each of the witnesses disclosed in response to Interrogatories Nos. 1, 2 or 3, but that You will not call as a witness at the Confirmation Hearing.

**INTERROGATORY NO. 5:**

To the extent You intend to present evidence at the Confirmation Hearing regarding any Estate Claims, identify the Estate Claims with respect to which You intend to present evidence and describe the evidence You intend to present, including any evidence regarding (i) the identity of the defendants or potential defendants; (ii) the amount sought to be recovered through such Estate Claim; and (iii) the value or valuation, if any, that You ascribe to such Estate Claim, including any range of values as appropriate, and any assessment You will present regarding the merits of such claim, defenses to the claim, collectability, or any other factors bearing on value.

**INTERROGATORY NO. 6:**

State whether You intend to present testimony or evidence relating to the value, viability, collectability, or likelihood of success of an Estate Claim or on related topics that was not disclosed to all bidders, potential bidders, or prospective bidders as part of the Estate Claims Marketing Process or that is in any way based on or informed by information or evidence that was not made available to all bidders, all potential bidders, or all prospective bidders, including

---

[4] For the avoidance of doubt, the facts or data that must be disclosed in response to this Interrogatory includes all facts or data that You or Your attorneys have provided and that the witness considered in forming the opinions to be expressed, any assumptions that You or Your attorneys provided and that the witness relied on in forming the opinions to be expressed, and requires disclosure of any material considered by the witness, from whatever source, that contains factual ingredients, and includes any facts or data considered by the witness in forming the opinions to be expressed, not only those relied upon by the witness.

any such information that You claim is subject to applicable Privileges or non-public.  If so, describe such evidence or information with particularity.

**INTERROGATORY NO. 7:**

Describe in detail the basis for Your statement in the Plan Supplement's Liquidation Analysis that "The FBG Debtors are running a marketing process for the Estate Claims and there currently is no indication that a third party is willing to acquire the Estate Claims in an amount sufficient to satisfy the DIP A Claims (which following the Liquidation Date would accrue interest at the default rate) and provide equal or greater value to the FBG Debtors' other constituents compared to the proposed chapter 11 Plan."  In particular, describe in detail all indications, communications, or other interactions with any third parties with respect to the Estate Claims Marketing Process that in any way relate to the value that a third party is willing to pay for the Estate Claims or their interest in participating in a bidding process, including all information You provided to any such third party, any diligence requests or information requests they made to You, and any statements made regarding the value of the Estate Claims.

**INTERROGATORY NO. 8:**

State whether any information has at any time been shared with or otherwise made available to the Ad Hoc Group (or any member thereof) or any participant in the Estate Claims Credit Bid Transaction that in any way relates to the Estate Claims or the value of such Estate Claims that was not made available to all bidders, all potential bidders, or all prospective bidders as part of the Estate Claims Marketing Process.  If so, describe such information with particularity.

**INTERROGATORY NO. 9:**

State whether, in responding to these Interrogatories or any document requests propounded by the LAM Parties or any other parties in connection with the Confirmation Hearing, You are withholding any Communications, Documents or information reflecting Communications with the Ad Hoc Group or any participant in the Estate Claims Credit Bid Transaction that in any way relate to any Estate Claims or the Estate Claims Credit Bid Transaction or otherwise assert the right to do so on the basis that You and the Ad Hoc Group or participants in the Estate Claims Credit Bid Transaction share a common interest in the subject-matter of such Communications.  If so, please describe the nature of the common interest that such parties share, the identity of such parties, the date on which You contend such common interest began, and a description of the materials being withheld on such basis.

**INTERROGATORY NO. 10:**

Do You contend that, if the Estate Claims Credit Bid Transaction is selected as the winning bid following the Estate Claims Marketing Process, the monetization and distribution of the Litigation Trust Assets in accordance with the Litigation Trust Waterfall will be distributions on account of assets that will have been purchased under section 363 of the Bankruptcy Code by the DIP Secured Parties and transferred to the Litigation Trust, such that any distributions from the Litigation Trust will be distributions of proceeds from the DIP Secured Parties' properly

acquired property, and not of property of the Debtors' estates following the consummation of the Estate Claims Credit Bid Transaction?

**INTERROGATORY NO. 11:**

Do You contend that creditors in Classes 4, 5, and 6 (as defined in the Plan) have Secured Claims, and not only Deficiency Claims, at each and every FBG Debtor entity?  If not, state which of the FBG Debtors that Classes 4, 5, and 6 (as defined in the Plan) have Secured Claims against, and at which FBG Debtors they possess only Deficiency Claims against.

**INTERROGATORY NO. 12:**

State Your basis for separate classification of the Deficiency Claims of Classes 4, 5, and 6 (as defined in the Plan) and the claims in Class 7 (as defined in the Plan).

**INTERROGATORY NO. 13:**

If You contend that the Class 3 Litigation Trust Interests (as defined in the Disclosure Statement) are being provided to the FBG Debtors in consideration for the sale of the Estate Claims as part of the Estate Claims Credit Bid Transaction for distribution to their respective creditors, how are the FBG Creditors allocating the Class 3 Litigation Trust Interests received as part of the Estate Claims Credit Bid Transaction among each of the Debtors?

**INTERROGATORY NO. 14:**

Section 5.1 of the Plan states that:  "Pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and the releases contained in the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, equitable, and subordination rights that a holder of a Claim or Interest may have with respect to any Claim against or Interest in an FBG Debtor and any distribution to be made on account of such Claim or Interest. The Plan shall be deemed a motion to approve the compromises and settlements contained in the Plan, including the Plan Settlement. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, including the Plan Settlement, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the FBG Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed non-severable from each other and from all other terms of the Plan."

Section 5.2(a) of the Plan states that: "Pursuant to sections 105(a), 361, 363, 364, 1123(b)(3)(A), and 1123(b)(6) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan effect a compromise and settlement among the FBG Debtors, the Ad Hoc Group, and the Creditors' Committee (the '**Plan Settlement**'). The compromises and settlements included in the Plan Settlement are each (i) integrated with and dependent on all other compromises and settlements contemplated in connection with the Plan and (ii) necessary and integral to the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Plan Settlement under sections 105(a), 361, 363, 364, 1123(b)(3)(A), and 1123(b)(6) of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that the Plan Settlement is fair, equitable, reasonable and in the best interests of the FBG Debtors' Estates. The terms of the Plan Settlement are reflected below."

Section 12.3 of the Plan states that: "If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against or any Interests in the FBG Debtors, (ii) prejudice in any manner the rights of any Entity, or (iii) constitute an admission, acknowledgement, offer, or undertaking by the FBG Debtors or any other Entity; *provided* that the foregoing shall not alter the protections afforded to any Person under sections 363(m) or 364(e) of the Bankruptcy Code to the extent applicable to any transactions consummated in connection with the Plan following entry of the Confirmation Order."

If the Effective Date does not occur, specify which sections or subsections of Articles II, IV, V, VI, VII, VIII, IX, X, XI, XIII, XIV, and XV of the Plan that You contend will become null and void pursuant to the first portion of Section 12.3 of the Plan, and which sections or subsections that You contend will remain in effect by virtue of the protections afforded to a Person under sections 363(m) and 364(e) of the Bankruptcy Code as set forth in the second portion of Section 12.3 of the Plan?

**INTERROGATORY NO. 15:**

Do You contend that the marketing process for and the purchase of the Estate Claims pursuant to the Estate Claims Credit Bid Transaction or the Estate Claims Marketing Process is subject to the release and injunction provisions of Section 13.4, Section 13.5(a), Section 13.6, and Section 13.8 of the Plan, such that the Litigation Trust Assets that were marketed and are intended to be sold pursuant to the Estate Claims Credit Bid Transaction do not include any Estate Claims released, exculpated, or enjoined under the Plan?

**INTERROGATORY NO. 16:**

State the basis for Your contention that each entity listed on the Schedule of Non-Released Parties in the Plan engaged in Adverse Conduct.

**INTERROGATORY NO. 17:**

State whether You have waived or intend to waive any Privileges relating to any of the Estate Claims or the Litigation Trust Assets, in connection with the Estate Claims Marketing Process, or in connection with the matters to be decided at the Confirmation Hearing. If You have waived or intend to waive any Privileges, describe with particularity the subject-matter of such waiver or intended waiver and the scope of such waiver or intended waiver.

Dated:  June 24, 2026
Houston, Texas

*/s/  Paul E. Heath*

**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Matthew D. Struble (TX 24102544)
845 Texas Avenue, Suite 4700
Houston, TX  77002
Tel:  713.758.2222
Email: pheath@velaw.com
   mstruble@velaw.com

**WACHTELL, LIPTON, ROSEN & KATZ**
Emil A. Kleinhaus (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
Angela K. Herring (admitted *pro hac vice*)
51 W. 52nd Street
New York, NY  10019
Tel:  212.403.1332
Email: eakleinhaus@wlrk.com
   akherring@wlrk.com
   mhcassel@wlrk.com

***COUNSEL TO LEUCADIA ASSET MANAGEMENT LLC, LAM TFG, AND LAM TFG SPV***

-10-

**Exhibit D**
**Debtors' R&Os to the RFPs**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | |
| | § | **(Jointly Administered)** |
| | § | |
| **Debtors.**[1] | § | |
| ---------------------------------------------------- | § | |

### DEBTORS' RESPONSES AND OBJECTIONS TO LAM PARTIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable to the above-captioned proceeding by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), and other applicable law, First Brands Group LLC and its debtor affiliates ("**the Debtors**") by and through their undersigned counsel, hereby submits these responses and objections (the "**Responses**," and each specific response and objection, a "**Response**") to the *LAM Parties' First Request For Production Of Documents*, dated June 17, 2026 (the "**Requests**," and each specific request for admission, a "**Request**") issued by the LAM Parties (as defined in the Requests).  The Debtors expressly reserve their rights to supplement, modify, revise, or correct the Responses herein at any time in accordance with the applicable rules.

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

**<u>RESERVATION OF RIGHTS</u>**

1.      With all of their rights expressly reserved, the Debtors respond to the Requests in good faith and in accordance with the Federal Rules, the Bankruptcy Rules, the Local Rules and/or any other rules, law, or court order governing the proper scope, timing, and extent of discovery in these proceedings.

2.      The Debtors submit the Responses subject to, without intending to waive, and expressly preserving: (a) any objections as to the competence, relevance, materiality, privilege, and/or admissibility into evidence of any Response herein or materials produced in response to any Request; (b) the right to object to other discovery procedures involving or relating to the subject matter of the Requests, the Responses, or documents produced in response to the Requests; (c) any objections to overbreadth, undue burden, vagueness, or ambiguity, and (d) the right to revise, correct, supplement, or clarify the Responses herein at any time.

3.      The Responses are made pursuant to and subject to the General Objections, Objections to Definitions, Objections to Instructions, and Specific Responses and Objections set forth herein.  The Debtors do not waive, and expressly preserve, all available objections.

4.      The Debtors do not admit, adopt, or acquiesce in any factual or legal contention, assertion, assumption, characterization, or implication contained in the Requests.  By responding and objecting to the Requests or producing documents in response to the Requests, the Debtors do not intend to waive, and do not waive, any defenses to the Requests or any other demand, subpoena, request, action, or any other case brought by the LAM Parties or any other party.

5.      Any document produced by the Debtors in response to the Requests does not constitute an admission or acknowledgement that any such Request is proper, that the information sought is relevant or admissible in any proceeding, or that requests for similar information will be

treated in a similar fashion.  Whether the Debtors have produced documents or responded to any particular Request should not be interpreted as an admission that the Debtors accept or admit the existence of any fact(s) set out or assumed by such Request.

6.      None of the Responses shall be construed as admitting that the Debtors have in their possession, custody, or control any documents responsive to any Request.  The Debtors do not represent that any responsive documents exist in response to any particular Request, but rather that they will undertake a reasonably diligent search across a reasonable universe of documents and produce non-privileged documents responsive to the Request (if any).

7.      The Debtors do not waive, and hereby assert and preserve, all applicable privileges and protections, including the attorney-client privilege, attorney-work-product doctrine, and any other applicable privilege or immunity.

8.      Any document produced by the Debtors in response to the Requests is produced pursuant to, and shall be subject to, the terms of the Protective Order (ECF No. 408) entered in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

## GENERAL OBJECTIONS

1.      These General Objections are applicable to the Requests in their entirety and are incorporated into each specific Response as if fully repeated therein.  The Objections to Definitions and Objections to Instructions shall likewise apply equally to any definition, instruction, or Request that incorporates that definition or instruction.  The Debtors reserve the right to assert additional objections to the Requests as necessary and/or appropriate.

2.      The Debtors object to the Requests insofar as they are overbroad, unduly burdensome, vague, ambiguous, redundant, harassing, or oppressive.  The Debtors further object to the Requests to the extent they seek the production of information that is neither relevant nor

proportionate to the discovery needs of these Chapter 11 Cases, including with respect to confirmation of the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Dkt. No. 2981) (the "**Plan**").  The Debtors additionally object to the Requests to the extent they seek documents and communications that the Debtors have already produced to the LAM Parties or their counsel in connection with these Chapter 11 Cases.

3.      The Debtors object to the Requests insofar as they seek the production of "all" or "any" documents and communications on the grounds that it is impracticable, overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases.

4.      The Debtors object to the Requests to the extent that they call for the production of documents not within the Debtors' possession, custody, or control, or for the production of documents not obtainable by means of a reasonably diligent search proportionate to the discovery needs of these Chapter 11 Cases.

5.      The Debtors object to the Requests to the extent that they call for the production of documents and the disclosure of information subject to: (a) the attorney-work-product doctrine; (b) the attorney-client privilege; (c) the common interest privilege; (d) the mediation privilege, and/or (e) any other applicable privilege, protection, or immunity from discovery.  The Debtors reserve the right to redact any material covered by items (a) through (e) of this paragraph, as well as to demand the return and/or destruction of any document and all copies thereof that are protected by such privilege, rule, doctrine, or immunity.

6.      The Debtors object to the Requests to the extent they call for the production of documents and the disclosure of information protected by the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364).

4

7.      If the Debtors disclose any privileged information pursuant to the Requests, the disclosure is inadvertent and shall not constitute a waiver of the applicable privilege, rule, doctrine, immunity, or other protection.

8.      The Debtors object to the Requests to the extent that any Request may be construed as seeking the disclosure of information that contains and/or constitutes private, confidential, financial, personal, commercial, competitively sensitive, or trade secret information made confidential by law or agreement, or other information of the Debtors or any third party.  The Debtors further object to the Requests to the extent they call for the production of documents or information covered by a non-disclosure agreement or other contract barring dissemination.

9.      The Debtors object to the Requests to the extent that they require any disclosure that may constitute a violation of any law or regulation.

10.      The Debtors object to the Requests to the extent they seek information that is already in the possession, custody, or control of the LAM Parties and/or information that is in the public domain.  The Debtors further object to the Requests to the extent they seek information that is not kept by the Debtors in the ordinary course of business including, but not limited to, data compilations.

11.      The Debtors object to the Requests to the extent that they incorporate allegations, characterizations, and/or assertions that are disputed.  The Debtors do not admit the correctness of any such allegations, characterizations, or assertions and the Responses and/or production of documents shall not be deemed an admission of any allegation, characterization, and/or assertion contained in the Requests.

12.      The Debtors object to the Requests, including without limitation, the Definitions and Instructions contained therein, to the extent they purport to impose on the Debtors any

5

requirement or obligation greater than, different from, or otherwise inconsistent with those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

13.    The following Responses are made solely for the purpose of the Chapter 11 Cases and shall not be used with respect to any other matter, in any other proceeding, or for any other purpose whatsoever.

14.    The Debtors object to the Requests to the extent they seek legal conclusions or require the Debtors to form a legal conclusion to provide a response.

15.    The Debtors hereby object and respond to the Requests to the best of their present knowledge and reserve their rights to revise, correct, amend, and/or supplement the Responses to the Requests.

## OBJECTIONS TO DEFINITIONS

1.    The Debtors object to the Definitions to the extent they purport to extend beyond a reasonable scope, define words beyond their ordinary meaning, and/or impose obligations beyond those contained in the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other rules, applicable law, or other court orders governing the proper scope, timing, and extent of discovery in this contested matter.  The Debtors will interpret the Requests reasonably and in good faith in accordance with common English usage and the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing and extent of discovery in the Plan.

2.    The Debtors object to Definition No. 5 ("Chapter 11 Cases") as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases as the defined

6

term purports to include "the cases under Chapter 7 of the Bankruptcy Code for the Evolution SPV Debtors" and "any Adversary Proceedings filed in connection with such Chapter 11 Cases."

3.       The Debtors object to Definition No. 6 ("Communications") as overbroad, unduly burdensome, vague, ambiguous, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent such term purports to include "any recorded oral or written communication of any kind."  The Debtors further object to Definition No. 6 to the extent that it purports to include the production of Communications that are protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.

4.       The Debtors object to Definition No. 10 ("Debtors") as overbroad, unduly burdensome, vague, and ambiguous to the extent the term encompasses "employees, managers, officers, directors, agents, subsidiaries, special purpose vehicles, and affiliates, including the Evolution SPV Debtors."  The Debtors will interpret "Debtors" as referring to First Brands Group, LLC and its debtor affiliates in these Chapter 11 Cases.  A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Claims and Noticing Agent as detailed herein at footnote 1.

5.       The Debtors object to Definition No. 22 ("including") as overbroad, unduly burdensome, vague, and ambiguous to the extent it purports to impose discovery obligations beyond those set forth in the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing and extent of discovery.

7

6.      The Debtors object to Definition No. 29 ("You" or "Your") as overbroad, unduly burdensome, vague, and ambiguous to the extent the term encompasses "employees, managers, officers, directors, agents, subsidiaries, and special purpose vehicles." The Debtors will interpret "You" and "Your" as referring to the Debtors in these Chapter 11 Cases.

**OBJECTIONS TO INSTRUCTIONS**

1.      The Debtors object to the Instructions to the extent they purport to impose on the Debtors any obligation different from and/or broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing and extent of discovery.

2.      The Debtors object to Instruction No. 1 as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases to the extent it purports to require that the Debtors produce information outside their possession, custody, or control. The Debtors further object to Instruction No. 1 to the extent it purports to require disclosures beyond what is reasonably known to the Debtors. The Debtors also object to Instruction No. 1 to the extent it calls for the production of "all" responsive Documents, which is overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases.

3.      The Debtors object to Instruction No. 2 to the extent it purports to impose on the Debtors obligations to perform anything more than a reasonable search for responsive Documents and information. The Debtors further object to Instruction No. 2 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

4.      The Debtors object to Instruction No. 3 as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases to the extent it purports to require that the Debtors produce information outside their possession, custody, or control.  The Debtors further object to Instruction No. 3 to the extent it purports to require disclosures beyond what is reasonably known to the Debtors.  The Debtors further object to Instruction No. 3 as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases to the extent it purports to require that the Debtors broadly produce all Communications.  The Debtors further object to Instruction No. 3 to the extent it purports to require the production of Communications that are protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.  Subject to the Specific Responses and Objections set forth herein, where applicable, the Debtors will conduct a reasonable search for responsive Communications across a limited set of relevant custodians.

5.      The Debtors object to Instruction No. 4 to the extent that it calls for the generation of a privilege log with respect to documents that are subject to the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, or which are otherwise protected from disclosure.  The Debtors further object to Instruction No. 4 to the extent it seeks to impose on the Debtors any obligation different from and broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing, and extent of discovery.  The Debtors finally object to Instruction No. 4 as unduly burdensome and not proportionate to the discovery needs of these Chapter 11 Cases.

6.        The Debtors object to Instruction No. 5 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.  The Debtors further object to Instruction No. 5 as vague, ambiguous, overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases.

7.        The Debtors object to Instruction No. 7 to the extent it purports to impose on the Debtors obligations to perform anything more than a reasonable search for responsive Documents and information.  The Debtors further object to Instruction No. 7 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.  The Debtors further object to Instruction No. 7 to the extent it purports to require the production of Communications that are protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.

## SPECIFIC RESPONSES AND OBJECTIONS

**REQUEST FOR PRODUCTION NO. 1**:

**All transcripts of any deposition (including exhibits thereto) taken in connection with the Chapter 11 Cases or any Adversary Proceeding.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including because the Request broadly seeks all

deposition transcripts and exhibits without regard to relevance.  The Debtors further object to this Request to the extent it seeks information outside the Debtors' possession, custody, or control. The Debtors additionally object to this Request to the extent it seeks confidential or highly confidential information.  The Debtors also object to this Request as seeking information that is otherwise available to the LAM Parties.

Subject to and without waiving any objections, the Debtors will produce non-privileged documents responsive to this Request that the Debtors are reasonably able to identify and collect.

**REQUEST FOR PRODUCTION NO. 2**:

**All responses to interrogatories or requests for admission (including all documents referenced therein or identified pursuant to Fed. R. Civ. P. Rule 33(d)) provided by any of the Debtors in connection with the Chapter 11 Cases or any Adversary Proceeding.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent it seeks "all responses to interrogatories or requests for admission" and "all documents referenced therein," without regard to relevance to confirmation of the Plan.

Subject to and without waiving any objections, the Debtors will produce non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 3**:

**Copies of all Documents the Debtors have produced to any party in connection with the Chapter 11 Cases or any Adversary Proceeding.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including because the Request broadly seeks "all Documents the Debtors have produced to any party" without regard to relevance to confirmation of the Plan. The Debtors also object to this request as duplicative to the extent this Request seeks Documents already produced by the Debtors to the LAM Parties or their counsel in connection with these Chapter 11 Cases. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 4**:

**Unredacted copies of all filings in the Chapter 11 Cases and any Adversary Proceedings to the extent such filings were made under seal and are not publicly available on the court's docket.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent it seeks Documents not relevant to confirmation of the Plan. The Debtors further object to this Request to the extent it purports to

12

require that the Debtors produce unredacted copies of filings in the Chapter 11 Cases and Adversary Proceedings filed under seal by another party such that the disclosure of sealed information is not within the Debtors' control.

Subject to and without waiving any objections, the Debtors are willing to meet and confer with the LAM Parties regarding this Request.

**REQUEST FOR PRODUCTION NO. 5**:

**All Documents and Communications provided to or exchanged with the Examiner or the Examiner's professionals in connection with the Chapter 11 Cases or any Adversary Proceeding.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks documents and information not relevant to confirmation of the Plan and seeks "all" Documents and Communications responsive to this Request.  The Debtors further object to this Request as seeking Documents and Communications expressly protected from disclosure by the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364).  The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

13

**REQUEST FOR PRODUCTION NO. 6**:

**All Documents and Communications exchanged among You and the Ad Hoc Group (or any of its members), the Creditors' Committee (or any of its members), or the ABL Lenders relating to the Premier Marketing Group Plan, the Premier Marketing Group Global Settlement, the Estate Claims Credit Bid Transaction, the Plan, or the Plan Settlement. The Documents and Communications responsive to this request include all communications relating to any terms or aspects of those plans, settlements or transactions, as well as all communications reflecting negotiations of those plans, settlements or transactions.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications.  The Debtors additionally object to this Request as vague and ambiguous regarding the meaning of "relating to any terms or aspects of those plans, settlements or transactions," which is also overbroad and unduly burdensome.  The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 7**:

**All Documents and Communications exchanged between You and Gerard Uzzi of Uzzi & Lall.**

14

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are not aware of any non-privileged Documents or Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 8**:

**All Documents and Communications relating to "Adverse Conduct" as defined in the Plan, including any and all Communications relating to any assessment or conclusion regarding which persons or entities engaged in "Adverse Conduct."**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common

15

interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 9**:

**All Documents and Communications relating to substantive consolidation in connection with the Plan, including any and all Communications relating to any consideration of consolidating any Debtors for particular purposes, and any and all Communications relating to consolidation for purposes of any defenses to preference or other avoidance actions (in connection with the Preference Settlement as defined in the Plan or otherwise).**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are not aware of any non-privileged Documents or Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 10**:

**All Documents and Communications relating to the Preference Settlement as defined in the Plan, including any and all Communications relating to eligibility to participate in the settlement.**

16

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications.  The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 11**:

**All Documents relating to the schedule of Specified Non-Released Parties in the Plan Supplement, including any and all Communications regarding the composition of the schedule and determinations regarding which persons or entities are included in the schedule.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents not relevant to confirmation of the Plan and seeks "all" Documents.  The Debtors additionally object to this Request to the extent it seeks Documents protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed*

*Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are not aware of any non-privileged Documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 12**:

**All Documents and Communications relating to the Estate Claims Marketing Process, including (i) all diligence materials provided to any potential bidders, prospective bidders, bidders, or other participants, including all Documents in the "data room"; (ii) all indications of interest received from any prospective bidder; (iii) all bids received; (iv) all indications of interest for any Estate Claims being sold; (v) all "teaser" materials or other information used to solicit potential or prospective bidders; (vi) any Documents or Communications provided to the Ad Hoc Group or the participants in the Estate Claims Credit Bid in connection with the Estate Claims; and (vii) any Documents or Communications exchanged with any potential bidder, prospective bidders, or other participants. This Request expressly encompasses any Documents and Communications provided to or exchanged with the Ad Hoc Group or other participants in the Estate Claims Marketing Process that are in any way connected to the Estate Claims Credit Bid Transaction or the Estate Claims.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 13**:

**All Documents and Communications relating to the Estate Claims Credit Bid Transaction.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 14**:

**All Documents and Communications relating to the "causes of action" and "transactions" referenced by Charles M. Moore as described at Pages 24-25 and 131-132 of the transcript of the Conditional Disclosure Statement Hearing.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and

Communications.  The Debtors additionally object to this Request to the extent it seeks Documents

and Communications protected by the attorney-client privilege, work product doctrine, common

interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the

Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged

Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 15**:

**All Documents and Communications reviewed by or relied upon by Charles M. Moore in connection with reviewing and signing the Plan, the Disclosure Statement, or any declaration submitted in connection therewith, or in connection with providing testimony at the Conditional Disclosure Statement Hearing.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to

Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the

Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the

discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents

and Communications not relevant to confirmation of the Plan and seeks "all" Documents and

Communications.  The Debtors additionally object to this Request to the extent it seeks Documents

and Communications protected by the attorney-client privilege, work product doctrine, common

interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the

Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are willing to meet and confer

with the LAM Parties regarding this request.

**REQUEST FOR PRODUCTION NO. 16**:

**All Documents and Communications relating to the Special Committee Investigation (as defined in the Disclosure Statement).**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications.  The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 17**:

**All Documents and Communications relating to, reflecting, or forming the basis for the Debtors' conclusion that "Based on the FBG Debtors' reasonable estimates, the FBG Debtors are estimating that the Effective Date is reasonably likely to occur in the second half of 2028, although the Effective Date may reasonably or in fact occur earlier or later than the second half of 2028." (Disclosure Statement at 27.)**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications.  The Debtors additionally object to this Request to the extent it seeks Documents

21

and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 18**:

**All Communications between You and the Ad Hoc Group (or any of its members) or the DIP Secured Parties (or any of those parties) between September 11, 2025 and September 28, 2025.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Communications not relevant to confirmation of the Plan and seeks "all" Communications. The Debtors additionally object to this Request to the extent it seeks Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are willing to meet and confer with the LAM Parties regarding this Request.

**REQUEST FOR PRODUCTION NO. 19**:

**All Documents and Communications produced to any other Entity in connection with the Confirmation Hearing or the Conditional Disclosure Statement Hearing.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are not aware of any documents produced to date responsive to this Request.

**REQUEST FOR PRODUCTION NO. 20**:

**All Documents and Communications on which the Debtors intend to rely at the Confirmation Hearing.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as premature to the extent it purports to require that the Debtors produce the documentary evidence on which the Debtors intend to rely in connection with the Confirmation Hearing in advance of the applicable deadlines. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the

23

*Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will provide Documents and Communications responsive to this request on their witness and exhibit list to be filed in connection with the Confirmation Hearing.

**REQUEST FOR PRODUCTION NO. 21**:

**All Documents and Communications on which any witness called by the Debtors has relied on or will rely on in connection with any testimony relating to the Confirmation Hearing.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as premature to the extent it purports to require that the Debtors produce the documentary evidence on which the Debtors intend to rely in connection with the Confirmation Hearing in advance of the applicable deadlines. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will provide Documents and Communications responsive to this request on their witness and exhibit list to be filed in connection with the Confirmation Hearing.

Dated:  July 1, 2026
       Houston, Texas

*Clifford W. Carlson*
**WEIL, GOTSHAL & MANGES LLP**
Clifford W. Carlson (2490024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:    Clifford.Carlson@weil.com

-and-

Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Robert S. Berezin (admitted *pro hac vice*)
Theodore E. Tsekerides (admitted *pro hac vice*)
Christine A. Calabrese (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007
Email:    Matt.Barr@weil.com
       Sunny.Singh@weil.com
       Robert.Berezin@weil.com
       Theodore.Tsekerides@weil.com
       Christine.Calabrese@weil.com

*Attorneys for Debtors and Debtors in Possession*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 1, 2026, the foregoing was served upon counsel for the LAM Parties via electronic mail.

*Christine A. Calabrese*

Christine A. Calabrese

**Exhibit E**
**July 9, 2026 Email from C. Calabrese**

| From: | Calabrese, Christine <Christine.Calabrese@weil.com> |
|---|---|
| Sent: | Thursday, July 9, 2026 9:37 PM |
| To: | Waldock, Katherine P.; Herring, Angela K.; Aquila, Elaina; Cassel, Michael H.; Heath, Paul E. (Vinson & Elkins LLP); Struble, Matthew D. (Vinson & Elkins LLP); Kleinhaus, Emil A.; Furchtgott, Theodore R. |
| Cc: | Tsekerides, Theodore; Berezin, Robert; Barr, Matt; Singh, Sunny (Weil, Gotshal & Manges LLP); Carlson, Clifford; Patel, Keya; Lane, Jack; Project Overdrive Lit Associates; George, Jason; Ferrier, Kyle; Findlay, Loren |
| Subject: | RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs |

**\*\*External Email-Use Caution\*\***

Kate,

Please see below detailing the Debtors' responses to your email.  Regarding the LAM Parties' interrogatories, the Debtors are finalizing responses and will provide them tomorrow.

Additionally, we tentatively held tomorrow at 1pm to confer regarding the Debtors' interrogatory responses.  Because we will be providing our interrogatory responses tomorrow, and given conflicts on the Debtors' end, let's please reschedule for early next week.  In advance of that, and as detailed below, the Debtors are continuing to work to address the LAM Parties' discovery requests as quickly as possible.

1.  On your first point, the Debtors are not taking any "categorical positions" regarding custodial collection and review.  That is an incorrect articulation of our position.  Rather, as set forth in the Debtors' responses and objections, we are asserting privileges—for example, the common interest and mediation privilege with the Ad Hoc Group—across certain periods that significantly limit (and in some circumstances likely eliminate) any responsive non-privileged communications on topics including Estate Claims and Plan negotiations.  For periods where the Debtors believe that non-privileged communications likely exist, the Debtors have collected custodial communications and are running domain-limiters (*i.e.* communications with @gibsondunn) rather than key-word search terms to identify non-privileged communications for production.  In our view, this is the most efficient approach for producing responsive non-privileged documents.  We do not believe that a privilege log is appropriate and do not agree that the Debtors will prepare a privilege log.  Rather, our forthcoming Interrogatories will provide further detail regarding the scope of our privilege assertions, and the Debtors are willing to further meet and confer on this topic.  Depending on the outcome of further conversations, we may be willing to consider a categorical privilege log.

2.  On your second point, we disagree with your characterization of the documents that the Debtors have produced to date.  For example, you say that "materials such as the data room for the Estate Claims Marketing Process have not been produced"; however, this is incorrect – these documents were produced in the Debtors' first production and can be found at FBG_CH1_00001095 – FBG_CH1_00014683.  We have also produced documents related to factoring (FBG_CH1_00044054 – FBG_CH1_00044099), over a dozen of the Debtors' prior productions in these chapter 11 cases, among other categories of documents we have produced that you omit entirely.  We are also actively working to make additional productions, and as noted above, have already collected custodial emails and are identifying responsive non-privileged communications for production.  If you would like to propose search terms or other parameters, we will consider them.

3.  On your third point, we disagree that the Debtors "committed to provide additional information" regarding any of the points that you detail.  We also disagree with your characterization of each item enumerated in your email and state our positions below:

1

- o  Regarding what you describe as a "non-custodial, manual process," the Debtors are working to identify – outside of custodial collections – non-privileged responsive documents and communications (for example, any responsive materials that may have been exchanged with third-parties and other "go-get" documents like board minutes and materials).  This is an efficient and standard practice and is in addition to custodial collections.

- o  Regarding "categories for which the Debtors contend no non-privileged responsive communications exist," we refer you to our responses and objections.

- o  Regarding bidder communications, the Debtors are collecting and will produce communications with potential bidders who are participating in the marketing process (we are not asserting privilege with respect to these communications).

- o  Regarding RFP 15, we continue to maintain that this request is vague, ambiguous, overbroad, etc.  As I requested during our call, it would be very helpful (and appropriate) for you to further clarify what the LAM Parties are seeking so that the Debtors can determine whether these are documents that we can reasonably identify and produce.  We will discuss further with Mr. Moore to determine whether there is a universe of documents that we can reasonably identify and provide, but need further clarification.

- o  Regarding RFP 18, we will revert tomorrow on our position.

4.  <u>On your fourth point</u>, the Debtors anticipate filing witness declarations by early next week.

5.  <u>On your fifth point</u>, the topics discussed during mediation are protected by the mediation privilege.  The Debtors will not disclose this information.


**Christine A. Calabrese**

Weil, Gotshal & Manges LLP
+ 1 212 310-8083 Direct
+1 202 213-7892 Mobile

---

**From:** Waldock, Katherine P. <KPWaldock@wlrk.com>
**Sent:** Thursday, July 9, 2026 12:03 PM
**To:** Herring, Angela K. <AKHerring@wlrk.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Cassel, Michael H. <MHCassel@wlrk.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>; Furchtgott, Theodore R. <TRFurchtgott@wlrk.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

Christine,

Thank you for meeting and conferring with us on July 7.  We write to follow up on several issues discussed during the call.

1. You indicated that the Debtors are withholding a substantial number of documents on privilege grounds, including by taking categorical positions that the Debtors believe excuse them from custodial collection and review.  Given the extent of those asserted withholdings, and consistent with FRCP 26(b)(5)(A), we need a privilege log as soon as possible that is sufficient to permit us to evaluate the Debtors' privilege claims and the appropriateness of your approach to collection.  Please advise when you will provide such a log.  The log should also include explanations for your privilege positions based on the Mediation Order or other protective orders, as we do not see the basis for the broad categorical position that you are taking.

2. We remain concerned by the pace and scope of the Debtors' document production.  The Debtors have had our requests since June 17—22 days ago, whereas the confirmation hearing is coming up in only 19 days.  Yet responsive productions remain largely limited to off-the-shelf items like depositions, pleadings, and documents produced to other parties earlier in the case.  And materials such as the data room for the Estate Claims Marketing Process have not been produced even though they have been available to potential bidders for weeks.  Given the expedited schedule the Debtors seek, delayed production of responsive materials is highly prejudicial.  Please provide a timeline for future productions and the date by which the Debtors expect their production to be substantially complete.

3. We understood the Debtors committed to provide additional information regarding the points below.  Please confirm that understanding regarding:
   - the non-custodial, manual process being used to identify and collect responsive materials;
   - categories for which the Debtors contend no non-privileged responsive communications exist;
   - whether any non-privileged bidder communications responsive to RFP 12 exist and, if so, production of those materials (and confirmation that the Debtors are not asserting privilege over any bidder communications);
   - the scope of materials responsive to RFP 15 concerning documents reviewed or relied upon by Mr. Moore; and
   - the Debtors' position regarding privilege assertions for communications during the period covered by RFP 18.

4. Please inform us when your declarations will be filed.

5. Please confirm that in the mediation process, there was no discussion of the merits or value of the Estate Claims or sharing of information that would be relevant to the Estate Claims Marketing Process with the Ad Hoc Group or the participants in the Estate Claims Credit Bid Transaction.

Best,
Kate

**Katherine P. Waldock**
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street | New York, NY 10019
+1 (212) 403-1631 (Direct) | +1 (212) 403-2000 (Fax)
KPWaldock@wlrk.com | www.wlrk.com

---

**From:** Herring, Angela K. <AKHerring@wlrk.com>
**Sent:** Sunday, July 5, 2026 4:56 PM
**To:** Aquila, Elaina <Elaina.Aquila@weil.com>; Cassel, Michael H. <MHCassel@wlrk.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>; Waldock, Katherine P. <KPWaldock@wlrk.com>; Furchtgott, Theodore R. <TRFurchtgott@wlrk.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny (Weil, Gotshal & Manges LLP) <sunny.singh@weil.com>; Carlson, Clifford

3

<Clifford.Carlson@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

11am on Tuesday works for us – we'll send a zoom. Please include my colleagues Kate Waldock and Theodore Furchtgott on future correspondence.

---

**From:** Aquila, Elaina <Elaina.Aquila@weil.com>
**Sent:** Sunday, July 5, 2026 12:02 PM
**To:** Cassel, Michael H. <MHCassel@wlrk.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Herring, Angela K. <AKHerring@wlrk.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny (Weil, Gotshal & Manges LLP) <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

**\*\*External Email-Use Caution\*\***

Michael,

Thank you for your email, and we hope you had a good Fourth of July as well. We appreciate your patience and address each point below.

1. Meet and Confer: We are available on Tuesday from 11:00–11:30, 1:00–2:30, or after 5:00 ET.

2. Interrogatory Responses:  Please ensure all discovery-related emails copy the litigation team, all of whom are included on this response.  We don't think that your self-imposed deadline is something the Debtors were obligated to meet, but, that said, are working on preparing responses.  You will have our responses no later than until July 9 —which remains ten days ahead of the current objection deadline and is in line with when we will be providing interrogatory responses to other parties.

3. Document Production: The production served to date is the first of what will be numerous productions in this matter. We are continuing to collect and review responsive documents and will be providing an additional production as soon as we are able.

We look forward to speaking with you Tuesday.


Elaina Aquila | **Weil**
Tel:  +1 212 310 8814
Cell: +1 646 469 2168

---

**From:** Cassel, Michael H. <MHCassel@wlrk.com>
**Sent:** Saturday, July 4, 2026 5:13 PM
**To:** Calabrese, Christine <Christine.Calabrese@weil.com>; Herring, Angela K. <AKHerring@wlrk.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt

<Matt.Barr@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

Christine,

Happy Fourth of July – we hope you all are enjoying the holiday.  Although we would prefer not to send discovery e-mails on a holiday, given the Debtors' desire to hold a confirmation hearing at the end of this month, these matters will need to be addressed as soon as possible.

1.  Please update us on a time for your meet-and-confer as soon as possible; we have been requesting your availability for a meet-and-confer since *Tuesday*.  In a highly expedited litigation such as this one, a week-long delay in setting up a time to meet-and-confer is unworkable.

2.  The Debtors failed to respond to our interrogatories by the deadline.  When can we expect to see responses to those?  Again, given the highly expedited nature of this litigation, we would have expected to see responses as soon as possible, so that we can be in a position to discuss those responses on the meet-and-confer.

3.  The first document production appears quite sparse, consisting of only 812 documents, most of which appear to be off-the-shelf materials such as depositions and pleadings.  The Debtors have had our Document Requests since **June 17**.  Please provide your search terms and custodians as soon as possible.  We will also expect to see a privilege log, and can discuss timing and scope of that log on the meet-and-confer.  Please also update on your timing for further productions, which will need to be quite expeditious given the compressed nature of the schedule here.

We look forward to discussing on Tuesday.

All the best,


**Michael H. Cassel**
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street | New York, NY 10019
+1 (212) 403-1047 (Phone) | +1 (646) 581-0854 (Mobile)
MHCassel@wlrk.com | www.wlrk.com

---

**From:** Calabrese, Christine <Christine.Calabrese@weil.com>
**Sent:** Thursday, July 2, 2026 4:16 PM
**To:** Herring, Angela K. <AKHerring@wlrk.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>; Cassel, Michael H. <MHCassel@wlrk.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny (Weil, Gotshal & Manges LLP) <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack

<[Jack.Lane@weil.com](mailto:Jack.Lane@weil.com)>; Project Overdrive Lit Associates <[Project.Overdrive.Lit.Associates@weil.com](mailto:Project.Overdrive.Lit.Associates@weil.com)>; George, Jason <[Jason.George@weil.com](mailto:Jason.George@weil.com)>; Ferrier, Kyle <[Kyle.Ferrier@weil.com](mailto:Kyle.Ferrier@weil.com)>; Findlay, Loren <[Loren.Findlay@weil.com](mailto:Loren.Findlay@weil.com)>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

---

**\*\*External Email-Use Caution\*\***

Thanks, Angie.  We're confirming times on Tuesday that would work on our end and will circle back.

**Christine A. Calabrese**

Weil, Gotshal & Manges LLP
+ 1 212 310-8083 Direct
+1 202 213-7892 Mobile

---

**From:** Herring, Angela K. <[AKHerring@wlrk.com](mailto:AKHerring@wlrk.com)>
**Sent:** Thursday, July 2, 2026 9:48 AM
**To:** Calabrese, Christine <[Christine.Calabrese@weil.com](mailto:Christine.Calabrese@weil.com)>; Heath, Paul E. (Vinson & Elkins LLP) <[pheath@velaw.com](mailto:pheath@velaw.com)>; Struble, Matthew D. (Vinson & Elkins LLP) <[mstruble@velaw.com](mailto:mstruble@velaw.com)>; Kleinhaus, Emil A. <[EAKleinhaus@WLRK.com](mailto:EAKleinhaus@WLRK.com)>; Cassel, Michael H. <[MHCassel@wlrk.com](mailto:MHCassel@wlrk.com)>
**Cc:** Tsekerides, Theodore <[theodore.tsekerides@weil.com](mailto:theodore.tsekerides@weil.com)>; Berezin, Robert <[robert.berezin@weil.com](mailto:robert.berezin@weil.com)>; Barr, Matt <[Matt.Barr@weil.com](mailto:Matt.Barr@weil.com)>; Singh, Sunny <[sunny.singh@weil.com](mailto:sunny.singh@weil.com)>; Carlson, Clifford <[Clifford.Carlson@weil.com](mailto:Clifford.Carlson@weil.com)>; Aquila, Elaina <[Elaina.Aquila@weil.com](mailto:Elaina.Aquila@weil.com)>; Patel, Keya <[Keya.Patel@weil.com](mailto:Keya.Patel@weil.com)>; Lane, Jack <[Jack.Lane@weil.com](mailto:Jack.Lane@weil.com)>; Project Overdrive Lit Associates <[Project.Overdrive.Lit.Associates@weil.com](mailto:Project.Overdrive.Lit.Associates@weil.com)>; George, Jason <[Jason.George@weil.com](mailto:Jason.George@weil.com)>; Ferrier, Kyle <[Kyle.Ferrier@weil.com](mailto:Kyle.Ferrier@weil.com)>; Findlay, Loren <[Loren.Findlay@weil.com](mailto:Loren.Findlay@weil.com)>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

Following up on Kate Waldock's note from Tuesday, please propose some times to meet and confer.
Thanks,
Angie

---

**From:** Calabrese, Christine <[Christine.Calabrese@weil.com](mailto:Christine.Calabrese@weil.com)>
**Sent:** Wednesday, July 1, 2026 11:35 PM
**To:** Herring, Angela K. <[AKHerring@wlrk.com](mailto:AKHerring@wlrk.com)>; Heath, Paul E. (Vinson & Elkins LLP) <[pheath@velaw.com](mailto:pheath@velaw.com)>; Struble, Matthew D. (Vinson & Elkins LLP) <[mstruble@velaw.com](mailto:mstruble@velaw.com)>; Kleinhaus, Emil A. <[EAKleinhaus@WLRK.com](mailto:EAKleinhaus@WLRK.com)>; Cassel, Michael H. <[MHCassel@wlrk.com](mailto:MHCassel@wlrk.com)>
**Cc:** Tsekerides, Theodore <[theodore.tsekerides@weil.com](mailto:theodore.tsekerides@weil.com)>; Berezin, Robert <[robert.berezin@weil.com](mailto:robert.berezin@weil.com)>; Barr, Matt <[Matt.Barr@weil.com](mailto:Matt.Barr@weil.com)>; Singh, Sunny (Weil, Gotshal & Manges LLP) <[sunny.singh@weil.com](mailto:sunny.singh@weil.com)>; Carlson, Clifford <[Clifford.Carlson@weil.com](mailto:Clifford.Carlson@weil.com)>; Aquila, Elaina <[Elaina.Aquila@weil.com](mailto:Elaina.Aquila@weil.com)>; Patel, Keya <[Keya.Patel@weil.com](mailto:Keya.Patel@weil.com)>; Lane, Jack <[Jack.Lane@weil.com](mailto:Jack.Lane@weil.com)>; Project Overdrive Lit Associates <[Project.Overdrive.Lit.Associates@weil.com](mailto:Project.Overdrive.Lit.Associates@weil.com)>; George, Jason <[Jason.George@weil.com](mailto:Jason.George@weil.com)>; Ferrier, Kyle <[Kyle.Ferrier@weil.com](mailto:Kyle.Ferrier@weil.com)>; Findlay, Loren <[Loren.Findlay@weil.com](mailto:Loren.Findlay@weil.com)>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

---

**\*\*External Email-Use Caution\*\***

Thank you, Angie.

**Christine A. Calabrese**

Weil, Gotshal & Manges LLP
+ 1 212 310-8083 Direct
+1 202 213-7892 Mobile

**From:** Herring, Angela K. <AKHerring@wlrk.com>
**Sent:** Wednesday, July 1, 2026 6:42 PM
**To:** Calabrese, Christine <Christine.Calabrese@weil.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>; Cassel, Michael H. <MHCassel@wlrk.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

Christine,
We have executed the protective order - please see attached.
Thanks,
Angie

---

**From:** Calabrese, Christine <Christine.Calabrese@weil.com>
**Sent:** Wednesday, July 1, 2026 6:37 PM
**To:** Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>; Herring, Angela K. <AKHerring@wlrk.com>; Cassel, Michael H. <MHCassel@wlrk.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny (Weil, Gotshal & Manges LLP) <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

**\*\*External Email-Use Caution\*\***

Counsel,

Please find attached the Debtors' responses and objections to the *LAM Parties' First Request For Production of Documents*.  We are finalizing our first production, which we anticipate making in the next day or so.  Can you please confirm that the LAM Parties have executed the Protective Order entered in this matter at Docket No. 408?

Best,
Christine



**Christine A. Calabrese**
Counsel
Pronouns: She/her/hers

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

christine.calabrese@weil.com
+1 212 310 8083 Direct
+1 202 213 7892 Mobile

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

==================================================

Please be advised that this transmittal may be a confidential attorney-client communication or may otherwise be privileged or confidential. If you are not the intended recipient, please do not read, copy or re-transmit this communication. If you have received this communication in error, please notify us by e-mail (helpdesk@wlrk.com) or by telephone (call us collect at 212-403-4357) and delete this message and any attachments.

Thank you in advance for your cooperation and assistance.
==================================================

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

**Exhibit F**
**July 12, 2026 Email from C. Calabrese**

| | |
|---|---|
| **From:** | Calabrese, Christine <Christine.Calabrese@weil.com> |
| **Sent:** | Sunday, July 12, 2026 2:15 PM |
| **To:** | Waldock, Katherine P.; Herring, Angela K.; Aquila, Elaina; Cassel, Michael H.; Heath, Paul E. (Vinson & Elkins LLP); Struble, Matthew D. (Vinson & Elkins LLP); Kleinhaus, Emil A.; Furchtgott, Theodore R. |
| **Cc:** | Tsekerides, Theodore; Berezin, Robert; Barr, Matt; Singh, Sunny (Weil, Gotshal & Manges LLP); Carlson, Clifford; Patel, Keya; Lane, Jack; Project Overdrive Lit Associates; George, Jason; Ferrier, Kyle; Findlay, Loren; Rhine, Fredrick |
| **Subject:** | RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs |

**\*\*External Email-Use Caution\*\***

Kate,

Let's discuss these topics, and any follow-up questions you may have, tomorrow during our meet and confer.  Overall, we are working to finalize further documents (including communications) for production later today and anticipate substantial completion by Wednesday (if not sooner).  We disagree with any suggestion of delay or prejudice: the Debtors have already made substantial productions, and the confirmation hearing is over two weeks away.

- *__Regarding a privilege log__*, we are willing to discuss the scope of a categorical privilege log tomorrow.

- *__Regarding the Debtors' custodial collection__*, we have collected communications from the following Weil custodians for the periods (1) September 1, 2025-September 28, 2025 and (2) January 1, 2026-January 29, 2026 (the start of mediation).  From this universe, we are working to produce responsive non-privileged communications.

    1.  Matt Barr
    2.  Sunny Singh
    3.  Cliff Carlson
    4.  Andriana Georgallas
    5.  Jason George
    6.  Loren Findlay
    7.  Kyler Ferrier
    8.  Taylor Jones
    9.  Kevin Bostel

- *__Regarding additional productions__*, as noted above, we are working to finalize further documents for production later today and anticipate substantial completion by Wednesday (if not sooner).

- *__Regarding categories with no non-privileged documents__*, we will update you tomorrow.

- *__Regarding discussions with the AHG re: Estate Claims / information relevant to the Estate Claims Marketing Process__*,  you initially asked that we "confirm that in the mediation process, there was no discussion of the merits or value of the Estate Claims or sharing of information that would be relevant to the Estate Claims Marketing Process with the Ad Hoc Group or the participants in the Estate Claims Credit Bid Transaction."  This question encroaches on the mediation privilege.  We can discuss in more detail tomorrow.

Best,
Christine


**Christine A. Calabrese**

Weil, Gotshal & Manges LLP
+ 1 212 310-8083 Direct
+1 202 213-7892 Mobile

---

**From:** Waldock, Katherine P. <KPWaldock@wlrk.com>
**Sent:** Friday, July 10, 2026 12:49 PM
**To:** Calabrese, Christine <Christine.Calabrese@weil.com>; Herring, Angela K. <AKHerring@wlrk.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Cassel, Michael H. <MHCassel@wlrk.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.COM>; Furchtgott, Theodore R. <TRFurchtgott@wlrk.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

Christine,

We are increasingly concerned about the timing of discovery in relation to depositions and our objection deadline, including the delays in production, interrogatory responses, and meet and confer sessions. While reserving all rights and further responses, our responses to your points are below:

1.  On the first point, a privilege log is required by the Federal Rules and required here.  As confirmed again by your email, the Debtors are asserting that "common interest" and "mediation" privileges "significantly" limit or eliminate the need to produce or even collect responsive communications with the Ad Hoc group and others.   While we will review your interrogatory responses, we are not aware of any legal basis to avoid providing even a categorical log showing — for supposedly privileged communications — who communicated with whom, when, on what topic, and why the communications are privileged. Without that information, we cannot assess your privilege theories.  Given the timing of the hearing, the required log should have been produced already.  In addition, your email says the Debtors have collected custodial communications and are running domain limiters. That was not previously clear.  Please tell us whose communications have been collected, from what time period, and exactly what limiters have been used.  We asked for this same information almost a week ago (in Michael's email below) and have not gotten a straightforward response.  The delay in providing standard ESI-related responses to discovery requests, including custodians/search terms, is again prejudicial given the litigation schedule.

2.  On the second point, we have repeatedly asked when additional productions will be made and are still not getting straightforward responses.  When do the Debtors expect to substantially complete their productions?

3.  On the third point, we understood that you were still consulting with the restructuring team to identify and provide additional information about categories for which there are no non-privileged documents, since several of your responses and objections say that the Debtors will produce non-privileged materials "if any."  If you have now confirmed that there are responsive, non-privileged materials in response to those

2

requests that will be produced, and the only RFPs for which you contend no non-privileged materials exist are Nos. 7, 9, 11, and 19, please let us know.

4. On the fourth point, we will withhold further comment until we see the interrogatory responses and declarations.

5. On the fifth point, we understand you to be saying that, as a result of mediation privilege, the Debtors do not need to disclose (a) whether they had any communications with a bidder for their assets (the Ad Hoc Group) regarding those assets and their value or (b) any such communications.  We disagree:  whether the Debtors, who are supposedly selling their assets, shared information about the assets with one bidder but not others is relevant and not remotely privileged.  More broadly, your response shows exactly why a privilege log is needed and overdue:  under Rule 26(b), the burden is on the producing party to explain what communications are being withheld, and on what grounds, so other parties can assess whether there is a valid privilege claim.  Rule 26(b) does not contemplate or permit a process whereby requesting parties need to formulate the right interrogatories or email inquiries to ferret out positions like the one you're taking on the "fifth point."   Moreover, we read your response as confirming that you are withholding otherwise responsive communications with the Ad Hoc Group regarding the Estate Claims dated after the mediation concluded on the basis of privilege; if no such communications exist, please inform us of that.

In addition, please let us know if you're available to meet on Monday morning.

Best,
Kate

**Katherine P. Waldock**
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street | New York, NY 10019
+1 (212) 403-1631 (Direct) | +1 (212) 403-2000 (Fax)
KPWaldock@wlrk.com | www.wlrk.com

---

**From:** Calabrese, Christine <Christine.Calabrese@weil.com>
**Sent:** Thursday, July 9, 2026 9:37 PM
**To:** Waldock, Katherine P. <KPWaldock@wlrk.com>; Herring, Angela K. <AKHerring@wlrk.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Cassel, Michael H. <MHCassel@wlrk.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>; Furchtgott, Theodore R. <TRFurchtgott@wlrk.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny (Weil, Gotshal & Manges LLP) <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

| **External Email-Use Caution** |
| --- |

Kate,

Please see below detailing the Debtors' responses to your email.  Regarding the LAM Parties' interrogatories, the Debtors are finalizing responses and will provide them tomorrow.

Additionally, we tentatively held tomorrow at 1pm to confer regarding the Debtors' interrogatory responses.  Because we will be providing our interrogatory responses tomorrow, and given conflicts on the Debtors' end, let's please

3

reschedule for early next week.  In advance of that, and as detailed below, the Debtors are continuing to work to address the LAM Parties' discovery requests as quickly as possible.

1. On your first point, the Debtors are not taking any "categorical positions" regarding custodial collection and review.  That is an incorrect articulation of our position.  Rather, as set forth in the Debtors' responses and objections, we are asserting privileges—for example, the common interest and mediation privilege with the Ad Hoc Group—across certain periods that significantly limit (and in some circumstances likely eliminate) any responsive non-privileged communications on topics including Estate Claims and Plan negotiations.  For periods where the Debtors believe that non-privileged communications likely exist, the Debtors have collected custodial communications and are running domain-limiters (*i.e.* communications with @gibsondunn) rather than key-word search terms to identify non-privileged communications for production.  In our view, this is the most efficient approach for producing responsive non-privileged documents.  We do not believe that a privilege log is appropriate and do not agree that the Debtors will prepare a privilege log.  Rather, our forthcoming Interrogatories will provide further detail regarding the scope of our privilege assertions, and the Debtors are willing to further meet and confer on this topic.  Depending on the outcome of further conversations, we may be willing to consider a categorical privilege log.

2. On your second point, we disagree with your characterization of the documents that the Debtors have produced to date.  For example, you say that "materials such as the data room for the Estate Claims Marketing Process have not been produced"; however, this is incorrect – these documents were produced in the Debtors' first production and can be found at FBG_CH1_00001095 – FBG_CH1_00014683.  We have also produced documents related to factoring (FBG_CH1_00044054 – FBG_CH1_00044099), over a dozen of the Debtors' prior productions in these chapter 11 cases, among other categories of documents we have produced that you omit entirely.  We are also actively working to make additional productions, and as noted above, have already collected custodial emails and are identifying responsive non-privileged communications for production.  If you would like to propose search terms or other parameters, we will consider them.

3. On your third point, we disagree that the Debtors "committed to provide additional information" regarding any of the points that you detail.  We also disagree with your characterization of each item enumerated in your email and state our positions below:

   o Regarding what you describe as a "non-custodial, manual process," the Debtors are working to identify – outside of custodial collections – non-privileged responsive documents and communications (for example, any responsive materials that may have been exchanged with third-parties and other "go-get" documents like board minutes and materials).  This is an efficient and standard practice and is in addition to custodial collections.

   o Regarding "categories for which the Debtors contend no non-privileged responsive communications exist," we refer you to our responses and objections.

   o Regarding bidder communications, the Debtors are collecting and will produce communications with potential bidders who are participating in the marketing process (we are not asserting privilege with respect to these communications).

   o Regarding RFP 15, we continue to maintain that this request is vague, ambiguous, overbroad, etc.  As I requested during our call, it would be very helpful (and appropriate) for you to further clarify what the LAM Parties are seeking so that the Debtors can determine whether these are documents that we can reasonably identify and produce.  We will discuss further with Mr. Moore to determine whether there is a universe of documents that we can reasonably identify and provide, but need further clarification.

   o Regarding RFP 18, we will revert tomorrow on our position.

4.  <u>On your fourth point</u>, the Debtors anticipate filing witness declarations by early next week.

5.  <u>On your fifth point</u>, the topics discussed during mediation are protected by the mediation privilege.  The Debtors will not disclose this information.

**Christine A. Calabrese**

Weil, Gotshal & Manges LLP
+ 1 212 310-8083 Direct
+1 202 213-7892 Mobile

---

**From:** Waldock, Katherine P. <KPWaldock@wlrk.com>
**Sent:** Thursday, July 9, 2026 12:03 PM
**To:** Herring, Angela K. <AKHerring@wlrk.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Cassel, Michael H. <MHCassel@wlrk.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>; Furchtgott, Theodore R. <TRFurchtgott@wlrk.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

Christine,

Thank you for meeting and conferring with us on July 7.  We write to follow up on several issues discussed during the call.

1.  You indicated that the Debtors are withholding a substantial number of documents on privilege grounds, including by taking categorical positions that the Debtors believe excuse them from custodial collection and review.  Given the extent of those asserted withholdings, and consistent with FRCP 26(b)(5)(A), we need a privilege log as soon as possible that is sufficient to permit us to evaluate the Debtors' privilege claims and the appropriateness of your approach to collection.  Please advise when you will provide such a log.  The log should also include explanations for your privilege positions based on the Mediation Order or other protective orders, as we do not see the basis for the broad categorical position that you are taking.

2.  We remain concerned by the pace and scope of the Debtors' document production.  The Debtors have had our requests since June 17—22 days ago, whereas the confirmation hearing is coming up in only 19 days.  Yet responsive productions remain largely limited to off-the-shelf items like depositions, pleadings, and documents produced to other parties earlier in the case.  And materials such as the data room for the Estate Claims Marketing Process have not been produced even though they have been available to potential bidders for weeks.  Given the expedited schedule the Debtors seek, delayed production of responsive materials is highly prejudicial.  Please provide a timeline for future productions and the date by which the Debtors expect their production to be substantially complete.

3.  We understood the Debtors committed to provide additional information regarding the points below.  Please confirm that understanding regarding:
- the non-custodial, manual process being used to identify and collect responsive materials;
- categories for which the Debtors contend no non-privileged responsive communications exist;

- whether any non-privileged bidder communications responsive to RFP 12 exist and, if so, production of those materials (and confirmation that the Debtors are not asserting privilege over any bidder communications);
- the scope of materials responsive to RFP 15 concerning documents reviewed or relied upon by Mr. Moore; and
- the Debtors' position regarding privilege assertions for communications during the period covered by RFP 18.

4. Please inform us when your declarations will be filed.

5. Please confirm that in the mediation process, there was no discussion of the merits or value of the Estate Claims or sharing of information that would be relevant to the Estate Claims Marketing Process with the Ad Hoc Group or the participants in the Estate Claims Credit Bid Transaction.

Best,
Kate

**Katherine P. Waldock**
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street | New York, NY 10019
+1 (212) 403-1631 (Direct) | +1 (212) 403-2000 (Fax)
KPWaldock@wlrk.com | www.wlrk.com

---

**From:** Herring, Angela K. <AKHerring@wlrk.com>
**Sent:** Sunday, July 5, 2026 4:56 PM
**To:** Aquila, Elaina <Elaina.Aquila@weil.com>; Cassel, Michael H. <MHCassel@wlrk.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>; Waldock, Katherine P. <KPWaldock@wlrk.com>; Furchtgott, Theodore R. <TRFurchtgott@wlrk.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny (Weil, Gotshal & Manges LLP) <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

11am on Tuesday works for us – we'll send a zoom. Please include my colleagues Kate Waldock and Theodore Furchtgott on future correspondence.

---

**From:** Aquila, Elaina <Elaina.Aquila@weil.com>
**Sent:** Sunday, July 5, 2026 12:02 PM
**To:** Cassel, Michael H. <MHCassel@wlrk.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Herring, Angela K. <AKHerring@wlrk.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny (Weil, Gotshal & Manges LLP) <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

**External Email-Use Caution**

Michael,

Thank you for your email, and we hope you had a good Fourth of July as well. We appreciate your patience and address each point below.

1. Meet and Confer: We are available on Tuesday from 11:00–11:30, 1:00–2:30, or after 5:00 ET.

2. Interrogatory Responses:  Please ensure all discovery-related emails copy the litigation team, all of whom are included on this response.  We don't think that your self-imposed deadline is something the Debtors were obligated to meet, but, that said, are working on preparing responses.  You will have our responses no later than until July 9 —which remains ten days ahead of the current objection deadline and is in line with when we will be providing interrogatory responses to other parties.

3. Document Production: The production served to date is the first of what will be numerous productions in this matter. We are continuing to collect and review responsive documents and will be providing an additional production as soon as we are able.

We look forward to speaking with you Tuesday.


Elaina Aquila | Weil
Tel:  +1 212 310 8814
Cell: +1 646 469 2168

---

**From:** Cassel, Michael H. <MHCassel@wlrk.com>
**Sent:** Saturday, July 4, 2026 5:13 PM
**To:** Calabrese, Christine <Christine.Calabrese@weil.com>; Herring, Angela K. <AKHerring@wlrk.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

Christine,

Happy Fourth of July – we hope you all are enjoying the holiday.  Although we would prefer not to send discovery e-mails on a holiday, given the Debtors' desire to hold a confirmation hearing at the end of this month, these matters will need to be addressed as soon as possible.

1. Please update us on a time for your meet-and-confer as soon as possible; we have been requesting your availability for a meet-and-confer since *Tuesday*.  In a highly expedited litigation such as this one, a week-long delay in setting up a time to meet-and-confer is unworkable.

2. The Debtors failed to respond to our interrogatories by the deadline.  When can we expect to see responses to those?  Again, given the highly expedited nature of this litigation, we would have

7

expected to see responses as soon as possible, so that we can be in a position to discuss those responses on the meet-and-confer.

3. The first document production appears quite sparse, consisting of only 812 documents, most of which appear to be off-the-shelf materials such as depositions and pleadings. The Debtors have had our Document Requests since **June 17**. Please provide your search terms and custodians as soon as possible. We will also expect to see a privilege log, and can discuss timing and scope of that log on the meet-and-confer. Please also update on your timing for further productions, which will need to be quite expeditious given the compressed nature of the schedule here.

We look forward to discussing on Tuesday.

All the best,

**Michael H. Cassel**
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street | New York, NY 10019
+1 (212) 403-1047 (Phone) | +1 (646) 581-0854 (Mobile)
MHCassel@wlrk.com | www.wlrk.com

---

**From:** Calabrese, Christine <Christine.Calabrese@weil.com>
**Sent:** Thursday, July 2, 2026 4:16 PM
**To:** Herring, Angela K. <AKHerring@wlrk.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>; Cassel, Michael H. <MHCassel@wlrk.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny (Weil, Gotshal & Manges LLP) <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

**External Email-Use Caution****

Thanks, Angie. We're confirming times on Tuesday that would work on our end and will circle back.

**Christine A. Calabrese**

Weil, Gotshal & Manges LLP
+ 1 212 310-8083 Direct
+1 202 213-7892 Mobile

---

**From:** Herring, Angela K. <AKHerring@wlrk.com>
**Sent:** Thursday, July 2, 2026 9:48 AM
**To:** Calabrese, Christine <Christine.Calabrese@weil.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>; Cassel, Michael H. <MHCassel@wlrk.com>

**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

Following up on Kate Waldock's note from Tuesday, please propose some times to meet and confer.
Thanks,
Angie

---

**From:** Calabrese, Christine <Christine.Calabrese@weil.com>
**Sent:** Wednesday, July 1, 2026 11:35 PM
**To:** Herring, Angela K. <AKHerring@wlrk.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>; Cassel, Michael H. <MHCassel@wlrk.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny (Weil, Gotshal & Manges LLP) <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

**\*\*External Email-Use Caution\*\***

Thank you, Angie.

**Christine A. Calabrese**

Weil, Gotshal & Manges LLP
+ 1 212 310-8083 Direct
+1 202 213-7892 Mobile

---

**From:** Herring, Angela K. <AKHerring@wlrk.com>
**Sent:** Wednesday, July 1, 2026 6:42 PM
**To:** Calabrese, Christine <Christine.Calabrese@weil.com>; Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>; Cassel, Michael H. <MHCassel@wlrk.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** RE: First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

Christine,
We have executed the protective order - please see attached.
Thanks,
Angie

**From:** Calabrese, Christine <Christine.Calabrese@weil.com>
**Sent:** Wednesday, July 1, 2026 6:37 PM
**To:** Heath, Paul E. (Vinson & Elkins LLP) <pheath@velaw.com>; Struble, Matthew D. (Vinson & Elkins LLP) <mstruble@velaw.com>; Kleinhaus, Emil A. <EAKleinhaus@WLRK.com>; Herring, Angela K. <AKHerring@wlrk.com>; Cassel, Michael H. <MHCassel@wlrk.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Barr, Matt <Matt.Barr@weil.com>; Singh, Sunny (Weil, Gotshal & Manges LLP) <sunny.singh@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Lane, Jack <Jack.Lane@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; George, Jason <Jason.George@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>
**Subject:** First Brands | Debtors' Responses & Objections to LAM Parties' RFPs

**\*\*External Email-Use Caution\*\***

Counsel,

Please find attached the Debtors' responses and objections to the *LAM Parties' First Request For Production of Documents*.  We are finalizing our first production, which we anticipate making in the next day or so.  Can you please confirm that the LAM Parties have executed the Protective Order entered in this matter at Docket No. 408?

Best,
Christine



**Christine A. Calabrese**
Counsel
Pronouns: She/her/hers

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
christine.calabrese@weil.com
+1 212 310 8083 Direct
+1 202 213 7892 Mobile

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

=================================================
Please be advised that this transmittal may be a confidential attorney-client communication or may otherwise be privileged or confidential. If you are not the intended recipient, please do not read, copy or re-transmit this communication. If you have received this communication in error, please notify us by e-mail (helpdesk@wlrk.com) or by telephone (call us collect at 212-403-4357) and delete this message

and any attachments.

Thank you in advance for your cooperation and assistance.
==================================================

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

**Exhibit G**
**Debtors' R&Os to Interrogatories**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| | § | |
| | § | |
| **Debtors.**[1] | § | |

**DEBTORS' RESPONSES AND OBJECTIONS TO LAM PARTIES' FIRST SET OF
INTERROGATORIES IN CONNECTION WITH PLAN CONFIRMATION**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "**Federal Rules**"),

made applicable to the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") through Rules

7026, 7033, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

the Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the

"**Local Rules**"), and other applicable law, First Brands Group, LLC and its debtor affiliates

(collectively, the "**Debtors**"), by and through their undersigned counsel, hereby submit these

responses and objections (the "**Responses**," and each specific response and objection, a

"**Response**") to the *LAM Parties' First Set of Interrogatories to First Brands in Connection with

Plan Confirmation*, dated June 24, 2026 (the "**Interrogatories**," and each specific interrogatory,

an "**Interrogatory**").  The Debtors expressly reserve their right to supplement, modify, revise, or

correct the Responses herein at any time in accordance with the applicable rules.

**RESERVATION OF RIGHTS**

1.       With all of their rights expressly reserved, the Debtors respond to the

Interrogatories in good faith and in accordance with the Federal Rules, the Bankruptcy Rules, the

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Local Rules and/or any other rules, law, or court order governing the proper scope, timing, and extent of discovery in these proceedings. The following Responses are made for the sole purpose of the above-captioned proceeding.

2.      The Debtors submit the Responses subject to, without intending to waive, and expressly preserving: (a) any objections as to the competence, relevance, materiality, privilege, and/or admissibility into evidence of any response herein or materials produced in response to any Interrogatory; (b) the right to object to other discovery procedures involving or relating to the subject matter of the Interrogatories, the Responses, or documents produced in response to the Interrogatories; (c) any objections to overbreadth, undue burden, vagueness, or ambiguity, and (d) the right to revise, correct, supplement, or clarify the Responses at any time.

3.      The Responses are made pursuant to and subject to the General Objections, Objections to Definitions, Objections to Instructions, and Specific Responses and Objections set forth herein. The Debtors do not waive, and expressly preserve, all available objections.

4.      The Debtors do not admit, adopt, or acquiesce in any factual or legal contention, assertion, assumption, characterization, or implication contained in the Interrogatories. By producing documents (if any) in response to the Interrogatories, the Debtors do not intend to waive, and do not waive, any defenses to the Interrogatories or any other demand, subpoena, request, or action.

5.      Any document produced by the Debtors in response to the Interrogatories does not constitute an admission or acknowledgement that any such Interrogatory is proper, that the information sought is relevant or admissible in any proceeding, or that requests for similar information will be treated in a similar fashion. Whether the Debtors have produced documents

or objected to any particular Interrogatory should not be interpreted as an admission that the Debtors accept or admit the existence of any fact(s) set out or assumed by such Interrogatory.

6.      None of the Responses shall be construed as admitting that the Debtors have in their possession, custody, or control any documents or information responsive to any Interrogatory unless expressly stated.

7.      The Debtors do not waive, and hereby assert and preserve, all applicable privileges and protections, including the attorney-client privilege, attorney-work-product doctrine, and any other applicable privilege or immunity.

8.      Any documents that the Debtors may produce in response to the Interrogatories are produced pursuant to, and shall be subject to, the terms of the *Agreed Protective Order* (Dkt. 408) (the "**Protective Order**") entered in the Chapter 11 Cases.

## GENERAL OBJECTIONS

1.      These General Objections are applicable to the Interrogatories in their entirety and are incorporated into each specific Response as if fully repeated therein.  The Objections to Definitions and Objections to Instructions shall likewise apply equally to any instruction, definition, or Interrogatory that incorporates that instruction or definition.  The Debtors reserve the right to assert additional objections to the Interrogatories as necessary and/or appropriate.

2.      The Debtors object to the Interrogatories insofar as they are overbroad, unduly burdensome, vague, ambiguous, redundant, harassing, or oppressive.  The Debtors further object to the Interrogatories as seeking information that is neither relevant nor proportionate to the discovery needs of the combined hearing detailed in the Scheduling Order (the "**Confirmation Hearing**"), including with respect to confirmation of the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Dkt. 3019] (the "**Plan**") and approval of the related

3

*Disclosure Statement for Joint Chapter 11 Plan of First Brands, LLC and Certain Affiliated Debtors* [Dkt. 3020] (the "**Disclosure Statement**").

3.        The Debtors object to the Interrogatories insofar as they demand that the Debtors identify "all," "any," or "each" Person, Document, or Communication on the grounds that such demands are impracticable, overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing.

4.        The Debtors object to the Interrogatories to the extent that they seek information or the identification of Documents not within the Debtors' knowledge, possession, custody, or control, or obtainable only through investigation or inquiry that is not proportionate to the discovery needs of the Confirmation Hearing.

5.        The Debtors object to the Interrogatories to the extent that they call for the disclosure of information subject to: (a) the attorney-work-product doctrine; (b) the attorney-client privilege; (c) the common interest privilege; (d) the mediation privilege and/or (e) any other applicable privilege, protection, or immunity from discovery.  The Debtors reserve the right to redact any material covered by items (a) through (e) of this paragraph, as well as to demand the return and/or destruction of any document and all copies thereof that are protected by such privilege, rule, doctrine, or immunity.

6.        If the Debtors disclose any privileged information pursuant to the Interrogatories, the disclosure is inadvertent and shall not constitute a waiver of the applicable privilege, rule, doctrine, immunity, or other protection.

7.        The Debtors object to the Interrogatories to the extent that any Interrogatory may be construed as seeking the disclosure of information that contains and/or constitutes private, confidential, financial, personal, commercial, competitively sensitive, or trade secret information

4

made confidential by law or agreement, or other information of the Debtors or any third party.  The Debtors further object to the Interrogatories to the extent they call for the production of Documents or information covered by a non-disclosure agreement or other contract barring dissemination.

8.      The Debtors object to the Interrogatories to the extent that any Interrogatory may be construed as seeking the disclosure of information covered by the Protective Order.

9.      The Debtors object to the Interrogatories to the extent that any Interrogatory may be construed as seeking the disclosure of information covered by the *Supplemental Agreed Protective Order between the Debtors and the Examiner* [Dkt. 1364] entered in the Chapter 11 Cases.

10.      The Debtors object to the Interrogatories to the extent that they require any disclosure that may constitute a violation of any law or regulation.

11.      The Debtors object to the Interrogatories to the extent they seek information that is already in the possession, custody, or control of the LAM Parties and/or information that is in the public domain.  The Debtors further object to the Interrogatories to the extent they seek information that is not kept by the Debtors in the ordinary course of business.  And the Debtors object to the Interrogatories to the extent they purport to seek the creation of Documents or data compilations that are not created and/or are kept in the Debtors' ordinary course of business.

12.      The Debtors object to the Interrogatories to the extent that they incorporate allegations, characterizations, and/or assertions that are disputed.  The Debtors do not admit the correctness of any such allegations, characterizations, or assertions and the Debtors' responses, objections, and/or production of documents shall not be deemed an admission of any allegation, characterization, and/or assertion contained in the Interrogatories.

5

13.     The Debtors object to the Interrogatories to the extent they seek legal conclusions or require the Debtors to form a legal conclusion to provide a response.

14.     The Debtors object to the Interrogatories, including the instructions and definitions contained therein, to the extent that they purport to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

15.     Any response to the Interrogatories is made solely for the purpose of this contested matter and shall not be used with respect to any other matter, in any other proceeding, or for any other purpose whatsoever.

16.     The Debtors hereby object and respond to the Interrogatories to the best of their present knowledge and reserve their rights to revise, correct, amend, and/or supplement the Responses to the Interrogatories.

17.     The Debtors object to the Interrogatories, and to the Instructions, to the extent they purport to require information or document production on a timeline that is not established by, and that is inconsistent with, the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan, (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing, (III) Establishing Solicitation and Voting Procedures, (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt-In Procedures, (V) Establishing Preference Settlement Notice and Opt-In Procedures, (VI) Establishing Notice and Objection Procedures for Confirmation of Plan, and (VII) Granting Related Relief* [Dkt. 2990] (the "**Scheduling Order**"), the Federal Rules, the Bankruptcy Rules, and the Local Rules, including to the extent the Interrogatories purport to require that verified answers be served by July 9, 2026.

18.     The Debtors further object to the Interrogatories, and to the Instructions, to the extent they are not proportionate to the discovery needs of the Confirmation Hearing.

19.     The Debtors object to the Interrogatories to the extent they seek the disclosure of information protected by the *Agreed Mediation Orders* [Dkts. 1822, 2005, 2186].  The Debtors will not produce any such mediation information.

20.     The Debtors respond to the Interrogatories solely on behalf of the Debtors and debtors in possession in the above-captioned chapter 11 cases, and will produce responsive, non-privileged Documents within the Debtors' possession, custody, or control.  Notwithstanding the definition of "Debtors," "You," and "Your," the Debtors do not respond on behalf of, and do not purport to speak for, the estates of any SPV Debtors whose chapter 11 cases have been converted to cases under chapter 7 or any chapter 7 trustee therefor, the Examiner, the Creditors' Committee, the DIP Secured Parties, the ABL Secured Parties, the Ad Hoc Group, or any other Person, each of which is a separate party in interest, and the Debtors do not undertake to produce Documents within the possession, custody, or control of any such separate party that are not also within the Debtors' possession, custody, or control.

21.     Where the Debtors state in a Response that they will produce Documents or will answer by specifying business records pursuant to Rule 33(d) of the Federal Rules, the Debtors will produce responsive, non-privileged Documents within their possession, custody, or control as described in that Response, and, except as expressly stated therein, are withholding from production Documents responsive to that Interrogatory on the basis of the objections asserted herein.

22.     The Debtors also object to these Interrogatories to the extent they purport to impose any additional burden of proof on the Debtors.

7

23.     The verification of these Interrogatories provided by Charles M. Moore excludes any purely legal issues, including analyses related to privilege and the legal interpretation of the Plan.

## OBJECTIONS TO DEFINITIONS

1.     The Debtors object to the Definitions to the extent they purport to extend beyond a reasonable scope and/or the natural meaning of the terms defined therein.  The Debtors will interpret the Interrogatories reasonably and in good faith in accordance with common English usage and the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law, or court orders governing the proper scope, timing, and extent of discovery in these Chapter 11 Cases..

2.     The Debtors object to Definition No. 5 ("Communications") as overbroad, unduly burdensome, vague, ambiguous, and not proportionate to the discovery needs of the Confirmation Hearing, including to the extent such term purports to include "any recorded oral or written communication of any kind."  The Debtors further object to Definition No. 5 to the extent it purports to encompass Communications protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, mediation privilege, or any other applicable privilege, protection, or immunity from discovery.

3.      The Debtors object to Definition No. 8 ("Debtors"), Definition No. 22 ("First Brands"), and Definition No. 32 ("You" or "Your") as overbroad, unduly burdensome, vague, ambiguous, and not proportionate to the discovery needs of the Confirmation Hearing, including to the extent they purport to encompass employees, managers, officers, directors, agents, subsidiaries, special purpose vehicles, and affiliates, including the Evolution SPV Debtors, and thereby purport to require the Debtors to search for or provide information or Documents that are

8

not within the Debtors' possession, custody, or control, including the information and Documents of separately represented parties. As set forth in the General Objections, the Debtors respond solely on behalf of the FBG Debtors and debtors in possession in these Chapter 11 Cases.

4. The Debtors object to Definition No. 9 ("Deficiency Claim") as overbroad, vague, ambiguous, and not proportionate to the discovery needs of the Confirmation Hearing, including to the extent it purports to encompass deficiency claims not contemplated by the Plan in these Chapter 11 Cases.

5. The Debtors object to Definition No. 23 ("including") as overbroad, unduly burdensome, vague, and ambiguous to the extent they purport to impose discovery obligations beyond those set forth in the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law, or court orders governing the proper scope, timing, and extent of discovery in these Chapter 11 Cases.

6. The Debtors object to Definition No. 30 ("Privileges") to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

7. The Debtors object to Definition No. 9 ("Secured Claim") as overbroad, vague, ambiguous, and not proportionate to the discovery needs of the Confirmation Hearing, including to the extent it purports to encompass Secured Claims not contemplated by the Plan. The Debtors will interpret "Secured Claim" to have the same meaning set forth in the Plan.

8. The Debtors object to Definition No. 33 to the extent it purports to impose on the Debtors any obligation different from and/or broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules,

case law, or court orders governing the proper scope, timing, and extent of discovery in these Chapter 11 Cases.

## OBJECTIONS TO INSTRUCTIONS

1. The Debtors object to the Instructions to the extent they purport to impose on the Debtors any obligation different from and/or broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law, or court orders governing the proper scope, timing, and extent of discovery in these Chapter 11 Cases.

2. The Debtors object to Instruction No. 1 (construing "all," "any," and "each" as encompassing any, all, each, and every "and" and "or" disjunctively or conjunctively, and as broadly as necessary) as overbroad, unduly burdensome, vague, and ambiguous to the extent it purports to expand the scope of any Interrogatory beyond what is relevant and proportionate to these Chapter 11 Cases.

3. The Debtors object to Instruction No. 2 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

4. The Debtors object to Instruction No. 3 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

5. The Debtors object to Instruction No. 4 as overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing to the extent it purports to require

10

that the Debtors produce information outside their possession, custody, or control.  The Debtors further object to Instruction No. 4 to the extent it purports to require disclosures beyond what is reasonably known to the Debtors.  The Debtors also object to Instruction No. 4 to the extent it seeks to impose on the Debtors any obligation different from and broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing and extent of discovery in these Chapter 11 Cases.

**SPECIFIC RESPONSES AND OBJECTIONS**

**INTERROGATORY NO. 1**:

**Disclose the identity of each witness that You may use at the Confirmation Hearing to present evidence or testimony under Fed. R. Evid. 702, 703, or 705, and for each such witness, provide (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) all facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases, in which during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.**

**RESPONSE:**

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory.  The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.

Subject to and without waiving any objections, the Debtors respond as follows: Information informing a response to this Interrogatory will be reflected in witness declarations to be filed in prosecution of the Plan, and materials underlying those declarations will be produced on a rolling basis thereafter.  In responding to this Interrogatory, the Debtors are not waiving their right to file additional or supplemental declarations thereafter.

**INTERROGATORY NO. 2**:

**Disclose the identity of each witness that You may use at the Confirmation Hearing to present evidence or testimony under Fed. R. Evid. 701 as "lay opinion" testimony regarding any Estate Claim, and for each such witness, provide (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) all facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified at trial or by deposition; and (vi) a statement of the compensation to be paid for the witness' testimony in the case.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory.  The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.

Subject to and without waiving any objections, the Debtors respond as follows: Information informing a response to this Interrogatory will be reflected in witness declarations to be filed in prosecution of the Plan, and materials underlying those declarations will be produced on a rolling

12

basis thereafter.  In responding to this Interrogatory, the Debtors are not waiving their right to file additional or supplemental declarations thereafter.

**INTERROGATORY NO. 3**:

**Disclose the identity of each witness that You may use at the Confirmation Hearing to present evidence or testimony other than under Fed. R. Evid. 701, 702, 703, or 705 or otherwise not disclosed in response to Interrogatories No. 1 and No. 2, and for each such witness, provide a summary of the facts or opinions as to which the witness is expected to testify.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory.  The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.  The Debtors further object to this Interrogatory to the extent it purports to require that the Debtors disclose their witnesses in advance of filing their witness and exhibit list.

Subject to and without waiving any objections, the Debtors respond as follows: the Debtors will disclose their witnesses on the witness and exhibit list, which the Debtors will file in accordance with the Local Rules in advance of the Confirmation Hearing.

**INTERROGATORY NO. 4**:

**Disclose the identity of each individual employed by the Debtors or the Debtors' Professionals or otherwise in the Debtors' control with knowledge of underlying facts related to the subject-matter of the testimony expected to be given by each of the witnesses disclosed in response to Interrogatories Nos. 1, 2 or 3, but that You will not call as a witness at the Confirmation Hearing.**

13

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as overbroad, unduly burdensome, oppressive, and not proportionate to the discovery needs of the Confirmation Hearing, including because it seeks irrelevant information.  The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.  Subject to the foregoing objections, the Debtors will not respond to this Interrogatory.

**INTERROGATORY NO. 5:**

**To the extent You intend to present evidence at the Confirmation Hearing regarding any Estate Claims, identify the Estate Claims with respect to which You intend to present evidence and describe the evidence You intend to present, including any evidence regarding (i) the identity of the defendants or potential defendants; (ii) the amount sought to be recovered through such Estate Claim; and (iii) the value or valuation, if any, that You ascribe to such Estate Claim, including any range of values as appropriate, and any assessment You will present regarding the merits of such claim, defenses to the claim, collectability, or any other factors bearing on value.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory.  The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense

14

privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors

and the Examiner (Dkt. 1364), or any other applicable privilege.

Subject to and without waiving any objections, the Debtors respond as follows: Information

informing a response to this Interrogatory will be reflected in witness declarations to be filed in

prosecution of the Plan, and materials underlying those declarations will be produced on a rolling

basis thereafter.  In responding to this Interrogatory, the Debtors are not waiving their right to file

additional or supplemental declarations thereafter.

**INTERROGATORY NO. 6**:

**State whether You intend to present testimony or evidence relating to the value, viability, collectability, or likelihood of success of an Estate Claim or on related topics that was not disclosed to all bidders, potential bidders, or prospective bidders as part of the Estate Claims Marketing Process or that is in any way based on or informed by information or evidence that was not made available to all bidders, all potential bidders, or all prospective bidders, including any such information that You claim is subject to applicable Privileges or non-public. If so, describe such evidence or information with particularity.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to

Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the

Debtors object to this Interrogatory as a premature contention interrogatory.  The Debtors further

object to this Interrogatory to the extent it seeks information protected by the attorney-client

privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense

privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors

and the Examiner (Dkt. 1364), or any other applicable privilege.  The Debtors further object to this

Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of

the Confirmation Hearing, including to the extent it purports to require that the Debtors "describe

. . . evidence or information with particularity."

Subject to and without waiving any objections, the Debtors respond as follows: Information informing a response to this Interrogatory will be reflected in witness declarations to be filed in prosecution of the Plan, and materials underlying those declarations will be produced on a rolling basis thereafter.  In responding to this Interrogatory, the Debtors are not waiving their right to file additional or supplemental declarations thereafter.

**INTERROGATORY NO. 7**:

**Describe in detail the basis for Your statement in the Plan Supplement's Liquidation Analysis that "The FBG Debtors are running a marketing process for the Estate Claims and there currently is no indication that a third party is willing to acquire the Estate Claims in an amount sufficient to satisfy the DIP A Claims (which following the Liquidation Date would accrue interest at the default rate) and provide equal or greater value to the FBG Debtors' other constituents compared to the proposed chapter 11 Plan." In particular, describe in detail all indications, communications, or other interactions with any third parties with respect to the Estate Claims Marketing Process that in any way relate to the value that a third party is willing to pay for the Estate Claims or their interest in participating in a bidding process, including all information You provided to any such third party, any diligence requests or information requests they made to You, and any statements made regarding the value of the Estate Claims.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory.  The Debtors further object to this Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing.  The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege, including the subject matter of any Person's knowledge to the extent it would reveal a privileged communication or attorney work product.

Subject to and without waiving any objections, pursuant to Rule 33(d) of the Federal Rules, the Debtors state that—in response to the *LAM Parties' First Request for Production of Documents* dated June 24, 2026, including those documents responsive to Request for Production Nos. 12 and 13—the Debtors have produced and/or will produce on a rolling basis documents from which information responsive to this Interrogatory may be derived or ascertained.

**INTERROGATORY NO. 8**:

**State whether any information has at any time been shared with or otherwise made available to the Ad Hoc Group (or any member thereof) or any participant in the Estate Claims Credit Bid Transaction that in any way relates to the Estate Claims or the value of such Estate Claims that was not made available to all bidders, all potential bidders, or all prospective bidders as part of the Estate Claims Marketing Process. If so, describe such information with particularity.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors additionally object to this Interrogatory as vague and ambiguous to the extent it seeks information that "in any way relates to the Estate Claims or the value of Estate Claims" is vague and ambiguous. The Debtors also object to this Interrogatory to the extent it calls for a legal conclusion. The Debtors further object to this Interrogatory as overly broad, unduly burdensome, and not proportionate to the needs of these

17

Chapter 11 Cases to the extent it purports to require that the Debtors describe shared information "with particularity."

Subject to and without waiving any objections, the Debtors respond as follows: any Documents and Communications exchanged between the Debtors and the Ad Hoc Group relating to the Estate Claims are protected by the common interest privilege, and any materials exchanged during mediation would also be protected by the mediation privilege (in addition to the common interest privilege). The Debtors assert that the mediation privilege applies from January 29, 2026 when the Court entered the initial mediation order (Dkt. 1822) through present as related to topics concerning the Estate Claims, the Plan, and the Plan Settlement. The Debtors additionally assert that the common interest privilege applies from September 27, 2026 to present as related to certain topics, including the Estate Claims. The Debtors are not claiming privilege with respect to Documents and Communications exchanged with any bidders participating in the Estate Claims Marketing Process.

**INTERROGATORY NO. 9**:

**State whether, in responding to these Interrogatories or any document requests propounded by the LAM Parties or any other parties in connection with the Confirmation Hearing, You are withholding any Communications, Documents or information reflecting Communications with the Ad Hoc Group or any participant in the Estate Claims Credit Bid Transaction that in any way relate to any Estate Claims or the Estate Claims Credit Bid Transaction or otherwise assert the right to do so on the basis that You and the Ad Hoc Group or participants in the Estate Claims Credit Bid Transaction share a common interest in the subject-matter of such Communications. If so, please describe the nature of the common interest that such parties share, the identity of such parties, the date on which You contend such common interest began, and a description of the materials being withheld on such basis.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the

18

Debtors object to this Interrogatory as seeking information that is better obtained through the meet and confer process taking place in connection with the *LAM Parties' First Request for Production of Documents*. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors also object to this Interrogatory to the extent it calls for a legal conclusion. The Debtors additionally object to this Request as overly broad, vague, and ambiguous because it seeks Documents and Communications "that in any way relate to any Estate Claims or the Estate Claims Credit Bid Transaction." The Debtors further object to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the discovery needs of the Confirmation Hearing to the extent it purports to require that the Debtors essentially prepare a privilege log.

Subject to and without waiving any objections, the Debtors respond as follows: any Documents and Communications exchanged between the Debtors and the Ad Hoc Group relating to the Estate Claims are protected by the common interest privilege, and any materials exchanged during mediation would also be protected by the mediation privilege (in addition to the common interest privilege). The Debtors assert that the mediation privilege applies from January 29, 2026 when the Court entered the initial mediation order (Dkt. 1822) through present as related to topics concerning the Estate Claims, the Plan, and the Plan Settlement. The Debtors additionally assert that the common interest privilege applies from September 27, 2026 to present as related to certain topics, including the Estate Claims. The Debtors are not claiming privilege with respect to Documents and Communications exchanged with any bidders participating in the Estate Claims Marketing Process.

19

**INTERROGATORY NO. 10**:

Do You contend that, if the Estate Claims Credit Bid Transaction is selected as the winning bid following the Estate Claims Marketing Process, the monetization and distribution of the Litigation Trust Assets in accordance with the Litigation Trust Waterfall will be distributions on account of assets that will have been purchased under section 363 of the Bankruptcy Code by the DIP Secured Parties and transferred to the Litigation Trust, such that any distributions from the Litigation Trust will be distributions of proceeds from the DIP Secured Parties' properly acquired property, and not of property of the Debtors' estates following the consummation of the Estate Claims Credit Bid Transaction?

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory and as calling for speculation. The Debtors further object to this Interrogatory as neither relevant to confirmation of the Plan nor proportionate to the discovery needs of the Confirmation Hearing. The Debtors additionally object to this Interrogatory to the extent it calls for a legal conclusion or determination regarding the Plan. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. Subject to the foregoing objections, the Debtors will not respond to this Interrogatory.

**INTERROGATORY NO. 11**:

Do You contend that creditors in Classes 4, 5, and 6 (as defined in the Plan) have Secured Claims, and not only Deficiency Claims, at each and every FBG Debtor entity? If not, state which of the FBG Debtors that Classes 4, 5, and 6 (as defined in the Plan) have Secured Claims against, and at which FBG Debtors they possess only Deficiency Claims against.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors further object to this Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing. The Debtors also object to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without waiving any objections, the Debtors respond as follows: the First Lien Claims in Class 4 are treated as unsecured under the Plan; the Second Lien Claims in Class 5 are treated as unsecured under the Plan; and the ABL Claims in Class 6 are treated as secured claims under the Plan. The collateral securing the ABL Claims is to be transferred to the ABL Collateral Trust, and the amount of any deficiency claims, if any, will depend on the proceeds generated by the ABL Collateral Trust.

**INTERROGATORY NO. 12**:

**State Your basis for separate classification of the Deficiency Claims of Classes 4, 5, and 6 (as defined in the Plan) and the claims in Class 7 (as defined in the Plan).**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client

21

privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.  The Debtors further object to this Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing.  The Debtors also object to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without waiving any objections, the Debtors respond as follows:  the Claims in Classes 4, 5, and 6 arise out of different credit agreements with the Debtors, whereas the Claims in Class 7 are general unsecured claims.  The holders of such claims have different legal rights against the estates.  Therefore, they are separately classified.

**INTERROGATORY NO. 13**:

**If You contend that the Class 3 Litigation Trust Interests (as defined in the Disclosure Statement) are being provided to the FBG Debtors in consideration for the sale of the Estate Claims as part of the Estate Claims Credit Bid Transaction for distribution to their respective creditors, how are the FBG Creditors allocating the Class 3 Litigation Trust Interests received as part of the Estate Claims Credit Bid Transaction among each of the Debtors?**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory.  The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.  The Debtors further object to this Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of

the Confirmation Hearing.  The Debtors also object to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without waiving any objections, the Debtors respond as follows: pursuant to the Plan Settlement set forth in Section 5.2 of the Plan, the Plan provides for the consolidation of the FBG Debtors solely for distribution purposes under the Plan.  Accordingly, there is no need to allocate trust interests among the FBG Debtors.

**INTERROGATORY NO. 14**:

**Section 5.1 of the Plan states that: "Pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and the releases contained in the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, equitable, and subordination rights that a holder of a Claim or Interest may have with respect to any Claim against or Interest in an FBG Debtor and any distribution to be made on account of such Claim or Interest. The Plan shall be deemed a motion to approve the compromises and settlements contained in the Plan, including the Plan Settlement. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, including the Plan Settlement, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the FBG Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed non-severable from each other and from all other terms of the Plan."**

**Section 5.2(a) of the Plan states that: "Pursuant to sections 105(a), 361, 363, 364, 1123(b)(3)(A), and 1123(b)(6) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan effect a compromise and settlement among the FBG Debtors, the Ad Hoc Group, and the Creditors' Committee (the 'Plan Settlement'). The compromises and settlements included in the Plan Settlement are each (i) integrated with and dependent on all other compromises and settlements contemplated in connection with the Plan and (ii) necessary and integral to the Plan. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Plan Settlement under sections 105(a), 361, 363, 364, 1123(b)(3)(A), and 1123(b)(6) of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that the Plan Settlement is fair, equitable, reasonable and in the best interests of the FBG Debtors' Estates. The terms of the Plan Settlement are reflected below."**

**Section 12.3 of the Plan states that: "If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against or any Interests**

23

in the FBG Debtors, (ii) prejudice in any manner the rights of any Entity, or (iii) constitute an admission, acknowledgement, offer, or undertaking by the FBG Debtors or any other Entity; *provided* that the foregoing shall not alter the protections afforded to any Person under sections 363(m) or 364(e) of the Bankruptcy Code to the extent applicable to any transactions consummated in connection with the Plan following entry of the Confirmation Order."

If the Effective Date does not occur, specify which sections or subsections of Articles II, IV, V, VI, VII, VIII, IX, X, XI, XIII, XIV, and XV of the Plan that You contend will become null and void pursuant to the first portion of Section 12.3 of the Plan, and which sections or subsections that You contend will remain in effect by virtue of the protections afforded to a Person under sections 363(m) and 364(e) of the Bankruptcy Code as set forth in the second portion of Section 12.3 of the Plan?

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors further object to this Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing, including to the extent it presents a speculative hypothetical not relevant to the confirmation hearing or the Debtors' burden in connection with confirmation. The Debtors also object to this Interrogatory to the extent it calls for a legal conclusion. Subject to the foregoing objections, the Debtors will not respond to this Interrogatory.

**INTERROGATORY NO. 15**:

Do You contend that the marketing process for and the purchase of the Estate Claims pursuant to the Estate Claims Credit Bid Transaction or the Estate Claims Marketing Process is subject to the release and injunction provisions of Section 13.4, Section 13.5(a), Section 13.6, and Section 13.8 of the Plan, such that the Litigation Trust Assets that were

24

**marketed and are intended to be sold pursuant to the Estate Claims Credit Bid Transaction do not include any Estate Claims released, exculpated, or enjoined under the Plan?**

<u>**RESPONSE**</u>:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory in the context of these Chapter 11 Cases. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors also object to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without waiving any objections, the Debtors respond as follows: the claims that are being released, exculpated, or enjoined under the Plan are not being sold as part of the Estate Claims Credit Bid Transaction or the Estate Claims Marketing Process.

<u>**INTERROGATORY NO. 16**</u>:

**State the basis for Your contention that each entity listed on the Schedule of Non-Released Parties in the Plan engaged in Adverse Conduct.**

<u>**RESPONSE**</u>:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense

privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.  The Debtors additionally object to this Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing, including because the definition of Adverse Conduct, in connection with the Specified Non-Released Parties, must be "determined by a Final Order of the Bankruptcy Court."  The Debtors further object to this Interrogatory to the extent it calls for a legal conclusion.  The Debtors also object to this Interrogatory to the extent it purports to impose any additional burden on the Debtors beyond what is required for the Debtors to satisfy the requirements for confirmation of the Plan.

Subject to and without waiving any objections, the Debtors respond as follows: the Debtors' contention is informed by documents that have been and will be produced in connection with the confirmation hearing, including documents underlying the witness declarations that the Debtors will file in support of Plan confirmation, the plea allocutions of Andy Brumbergs and Stephen Graham, the indictments of Patrick James and Ed James, the Examiner's Report, the complaints filed in the adversary proceedings commenced by the Debtors against Patrick James, Ed James, and Onset (among other defendants), and the testimony of Charles Moore in connection with the Patrick James adversary proceeding, among other Documents and Communications that the Debtors will produce in advance of the Confirmation Hearing.

**INTERROGATORY NO. 17**:

**State whether You have waived or intend to waive any Privileges relating to any of the Estate Claims or the Litigation Trust Assets, in connection with the Estate Claims Marketing Process, or in connection with the matters to be decided at the Confirmation Hearing. If You have waived or intend to waive any Privileges, describe with particularity the subject-matter of such waiver or intended waiver and the scope of such waiver or intended waiver.**

26

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as seeking a legal conclusion.  The Debtors further object to this Interrogatory as seeking information that is inappropriate for witness verification.

Subject to and without waiving any objections, the Debtors respond as follows: the Debtors have not waived and do not intend to waive any Privileges "relating to any of the Estate Claims or the Litigation Trust Assets, in connection with the Estate Claims Marketing Process, or in connection with the matters to be decided at the Confirmation Hearing."

27

Dated:   July 10, 2026
         Houston, Texas

                                        /s/ Clifford W. Carlson
                                        **WEIL, GOTSHAL & MANGES LLP**
                                        Clifford W. Carlson (2490024)
                                        700 Louisiana Street, Suite 3700
                                        Houston, Texas 77002
                                        Telephone: (713) 546-5000
                                        Facsimile:  (713) 224-9511
                                        Email:   Clifford.Carlson@weil.com


                                        -and-

                                        Matthew S. Barr (admitted *pro hac vice*)
                                        Sunny Singh (admitted *pro hac vice*)
                                        Robert S. Berezin (admitted *pro hac vice*)
                                        Theodore E. Tsekerides (admitted pro hac vice)
                                        Christine A. Calabrese (admitted *pro hac vice*)
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile:  (212) 310-8007
                                        Email:   Matt.Barr@weil.com
                                                 Sunny.Singh@weil.com
                                                 Robert.Berezin@weil.com
                                                 Theodore.Tsekerides@weil.com
                                                 Christine.Calabrese@weil.com


                                        *Attorneys for Debtors and Debtors in Possession*

28

## **VERIFICATION**

I, Charles M. Moore, am authorized to verify the Responses to Interrogatory Nos. 1 through 17 on behalf of the Debtors in the above-captioned cause of action.  I am the Chief Executive Officer of First Brands Group, LLC, and I have read the LAM Parties' Interrogatory Nos. 1 through 17, as well as the Debtors' responses and objections thereto.  I either have personal knowledge that the matters stated herein are true, or I am informed and believe that such matters are true and on those grounds, certify that the same are true and correct.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and under the laws of the United States of America that the facts set forth in the Responses to Interrogatory Nos. 1 through 17 are true and correct.

Dated: July 10, 2026

/s / Charles M. Moore
Charles M. Moore

29

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2026, a true and correct copy of the foregoing document was served upon counsel of record via electronic mail.

/s/ *Christine A. Calabrese*
Christine A. Calabrese

30