**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  | § |  |
|---|---|---|
| **In re:** | § | **Chapter 11** |
|  | § |  |
| **FIRST BRANDS GROUP, LLC, *et al*.,** | § | **Case No. 25-90399 (CML)** |
|  | § |  |
| **Debtors.[1]** | § | **(Jointly Administered)** |
|  | § |  |

**EMERGENCY MOTION OF KATSUMI SERVICING, LLC TO COMPEL
DEBTORS TO PRODUCE COMPLETE RESPONSES AND DOCUMENTS IN
RESPONSE TO DISCOVERY SERVED UPON THE DEBTORS, INCLUDING
KATSUMI  SERVICING, LLC'S FIRST SET OF INTERROGATORIES AND
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND OTHER ISSUES**

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN JULY 16, 2026. THE EXACT DATE AND TIME WILL BE SET BY THE COURT.**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

---

[1] A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these Chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Pursuant to Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas, Katsumi Servicing, LLC ("Katsumi") files this Emergency Motion to Compel Debtor First Brands Group, LLC and its Debtor affiliates (collectively, the "Debtors") to provide complete responses and documents in response to Katsumi's First Set of Interrogatories (Nos. 1–24) and Katsumi's First Request for Production of Documents (Nos. 1–31), each served June 22, 2026 in connection with final approval of the *Disclosure Statement for the Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Dkt. 3020) (the "Disclosure Statement") and confirmation of the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Dkt. 3019) (the "Plan")[2]  (this "Motion").

*LAM Parties' Discovery is Also Subject of this Motion*:  For avoidance of doubt, Katsumi communicated with the LAM Parties who similarly served discovery, and Katsumi attempted to serve requests covering different topics, in reliance on the topics (and anticipated responses) the LAM Parties would receive. Because inadequate responses were provided to the LAM Parties' interrogatories and requests for production, Katsumi would also join in and seek relief that reaches the subject matter of those requests.  To avoid duplication, Katsumi incorporates by reference the *LAM Parties' Emergency Motion to Compel Production of Documents and Interrogatory Responses from Debtors*, as if set forth in full herein.  The remainder of this Motion shall otherwise focus on the responses required of Katsumi's formal discovery requests.

In support of this Motion, Katsumi, by and through its undersigned counsel, hereby respectfully states as follows:

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## **PRELIMINARY STATEMENT**

1.      Katsumi served discovery on the Debtors because the Plan, if confirmed, will determine the treatment and ultimate recovery on Katsumi's claims—and the Debtors are the sole parties with access to the information Katsumi needs to evaluate, object to, and challenge the Plan. The Debtors control the documents, financial analyses, projections, and internal communications bearing on each of these issues. Without the requested discovery, Katsumi cannot assess whether the Plan satisfies the Bankruptcy Code's requirements for confirmation or the permissibility of certain Plan provisions.

2.      The Debtors' refusal to provide substantive responses does not merely inconvenience Katsumi; it threatens to deprive Katsumi of the ability to be heard on whether the Plan should be confirmed. The confirmation of a plan determines the rights of all parties in interest, and creditors are entitled to adequate discovery to evaluate the plan and to prepare for the confirmation hearing. This enables "creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it." *Lauter v. Citgo Petroleum Corp.*, No. CV H-17-2028, 2018 WL 801601, at \*12 (S.D. Tex. Feb. 8, 2018). This Court should not permit the Debtors to seek confirmation of a plan while simultaneously denying a creditor the tools to scrutinize it.

3.      The Debtors' responses to Katsumi's discovery are deficient in virtually every respect. Rather than responding in any meaningful way, the Debtors deployed a wall of boilerplate objections—blanket assertions of mediation and common interest privilege, rote recitations of "overbroad and unduly burdensome," improper deferrals to unspecified future witness declarations, and outright refusals to respond—that are designed to stonewall.  Indeed, across 24

interrogatories and 31 document requests, the Debtors provided substantive answers to virtually no interrogatories, instead recycling identical objections verbatim from one response to the next.

4.      Katsumi is a substantial creditor and active party in interest in these Chapter 11 Cases, and the Debtors' complete (or meaningful, at the very least) interrogatory responses and document productions are critically important to Katsumi's ability to evaluate the Plan and the Disclosure Statement and to pursue timely objections to confirmation of the Plan and final approval of the Disclosure Statement. Specifically, the discovery at issue bears directly on issues central to Plan confirmation, including (among others): (1) the Bankruptcy Code's confirmation requirements; (2) valuation of the Estate Claims and other Litigation Trust Assets; (3) the Estate Claims Credit Transaction; and (4) permissibility of the Plan's selective use of substantive consolidation for certain purposes, but not others. Katsumi is entitled to meaningful discovery on these and other issues in advance of the Confirmation Hearing. The Debtors' wholesale obstruction should not be countenanced, and Katsumi submits that the Court should compel the Debtors to comply with their discovery obligations.

## **JURISDICTION**

5.      This Court has jurisdiction over these Chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6.      The statutory predicates for the relief sought herein are Bankruptcy Rules 2004, 7026, 7034, and 7037, Rules 26, 33, 34, and 37 of the Federal Rules of Civil Procedure ("Federal Rules"), and Section 105(a) of the Bankruptcy Code.

**RELEVANT BACKGROUND**

7.     On September 28, 2025, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.     As this Court is aware, Katsumi purchased receivables from the Debtors and Debtors' affiliates through third-party factoring transactions.

9.     On June 22, 2026, Katsumi served its First Set of Interrogatories and First Request for Production of Documents (collectively, the "Discovery Requests")[3] seeking information directly relevant to, among other things: (a) the negotiation, formulation, and terms of the Plan and the Plan Settlement; (b) the proposed Litigation Trust and the Causes of Action and Estate Claims to be contributed thereto; (c) the Estate Claims Marketing Process and the Estate Claims Credit Bid Transaction; (d) the Debtors' prepetition factoring transactions and the use and tracing of factoring proceeds; (e) the Specified Non-Released Parties Schedule and the criteria for inclusion therein; (f) the projected timeline for the Effective Date and the feasibility of the Plan; and (g) the funding commitments for the Litigation Trust and the DIP Collateral Trust.

10.     On July 10, 2026, the Debtors served their Responses and Objections to each set of Discovery Requests.[4] Although the responses span dozens of pages, they are substantively devoid of any meaningful response. Instead, the Debtors assert 22 "General Objections" and numerous objections to definitions and instructions, each of which is incorporated by reference into every specific response, and then layer additional objections on top to each request. The result is that,

---

[3] A true and accurate copy of Katsumi's Discovery Requests are attached as Exhibit 1.
[4] A true and correct copy of Debtor's Responses and Objections to each set of Discovery Requests are attached as Exhibit 2.

across 55 discovery requests, the Debtors provided no substantive answer to most requests and only partial, evasive answers to the remainder.

## RELIEF REQUESTED

11.     Katsumi respectfully requests that the Court enter an order: (1) compelling the Debtors to provide complete responses and documents to Katsumi's First Set of Interrogatories (Nos. 1–24) and First Request for Production of Documents (Nos. 1–31); (2) overruling the Debtors' blanket, boilerplate objections; (3) ordering the Debtors to produce a privilege log compliant with Federal Rule 26(b)(5)(A); and (4) awarding Katsumi its reasonable expenses, including attorneys' fees, incurred in connection with this Motion pursuant to Federal Rule 37(a)(5).

12.     **Unfair Surprise**:  Importantly, the Debtors' affirmatively disguised the identity of a witness and expert on whom they intend to rely for confirmation until the filing of their respective declarations on July 14, 2026.  *See* Dkt. Nos. 3188, 3190.  Katsumi seeks relief as a result.  Rather than duplicate the same briefing the LAM Parties provided on that issue, Katsumi also specifically incorporates by reference the arguments set forth in the *LAM Parties' Emergency Motion to Compel Production of Documents and Interrogatory Responses from Debtors*, and shall argue the same in regards to Debtors' submission of such declarations.  Because the relief associated with such abuses should be either the preclusion of the admissibility of such witness and expert or the continuance of the scheduled Confirmation Hearing, Katsumi will be prepared to address Debtors' conduct accordingly.

## EMERGENCY CONSIDERATION

13.     Emergency consideration is warranted because the discovery that is the subject of the Motion concerns the Confirmation Hearing scheduled to begin on July 28, 2026.  Attempts to

resolve these disputes consensually have not been successful, and in light of imminent confirmation-related deadlines, Katsumi respectfully submits that the Court's prompt intervention is necessary for Katsumi to obtain the information required for a full and fair adjudication of objections to confirmation.

## BASIS FOR REQUESTED RELIEF

14. The Debtors' failure to produce responsive documents and complete interrogatory responses to Katsumi's Discovery Requests handicaps and prejudices Katsumi's ability to evaluate the Plan and the Disclosure Statement, assess the treatment of its claims, and formulate meaningful objections to confirmation of the Plan.

15. The discovery rules are given a "broad and liberal treatment." *Davis v. United States Marshals Serv.*, 849 F. App'x 80, 86–87 (5th Cir. 2021). The Federal Rules (as incorporated by the Bankruptcy Rules) allow for broad discovery of any non-privileged matter. *Trevino v. Caliber Home Loans, Inc. (In re Trevino)*, 564 B.R. 890, 904–06 (Bankr. S.D. Tex. 2017). Federal Rule 26(b) and the scope of discovery is to be interpreted broadly to allow parties to be adequately informed. *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *1 (S.D. Tex. Jan. 29, 2015).

16. The Debtors' deficiencies in responding fall into the following categories:

**A.    Improper Blanket Assertion of Mediation Privilege.**

17. The Debtors invoke the Agreed Mediation Orders (Dkt. Nos. 1822, 2005, 2186) as a blanket shield across virtually every response, claiming that the mediation privilege bars disclosure of information "relating to" or "concerning" the Plan, the Plan Settlement, the Litigation Trust, the Estate Claims Marketing Process, the Specified Non-Released Parties Schedule, and more. This sweeping invocation is improper and must be rejected.

7

18.     There is no generally recognized federal mediation privilege. Federal Rule of Evidence 501 provides that claims of privilege in federal proceedings "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Where courts have recognized a mediation privilege, they have construed it narrowly, limiting its protection to communications made to the mediator, between the parties during the mediation, or in preparation for the mediation. *See In re RDM Sports Grp., Inc.*, 277 B.R. 415, 431 (Bankr. N.D. Ga. 2002).

19.     The Fifth Circuit has squarely addressed the distinction between mediation confidentiality and privilege, holding that "confidential" does not necessarily mean "privileged." *In re Grand Jury Subpoena*, 148 F.3d 487, 492 (5th Cir. 1998). The court emphasized that while parties may agree to keep mediation communications confidential, such agreements do not create an evidentiary privilege that bars discovery or compelled disclosure in federal proceedings. *Id.* at 492. The Debtors' invocation of the "mediation privilege" as a blanket bar to discovery thus rests on a foundation that the Fifth Circuit has expressly refused to build.

20.     The Debtors' invocation of mediation privilege here is particularly egregious because it is deployed broader than just the actual days they were in a mediation session before Mediator Judge Isgur and broader than just the submissions to Judge Isgur; Debtors are using it to shield approximately five months of communications.  Moreover, it is affirmatively being used to shield *factual information*. For example, Interrogatory No. 1 asks the Debtors to identify persons who participated in negotiating or drafting the Plan. The Debtors refuse entirely, citing mediation privilege. But the *identity* of Plan negotiators is factual information, not a mediation communication.

21.     Similarly, Interrogatory No. 7 asks about the criteria for the Specified Non-Released Parties Schedule, a document filed as Plan Supplement Exhibit 8 (Dkt. 3046–8). The Debtors respond that the schedule "was prepared by the Debtors and their advisors, in consultation with the Ad Hoc Group and the Creditors' Committee, pursuant to the common interest and mediation privileges" and that "[a]ll Documents and Communications concerning the development of the Schedule of Specified Non-Released Parties are protected by privilege." There are structures with those releases that should be explored in discovery from the various parties, including different fiduciaries, but Debtors are refusing to provide such responses. The Debtors filed the schedule publicly but now claim that any information about *how* or *why* they created it is privileged.

22.     The Debtors' mediation privilege assertions are independently deficient for a second reason: they extend far beyond the temporal scope of the mediation and the matters mediated therein. The mediation in these Chapter 11 Cases concluded on March 27, 2026, the result of which produced the material terms and structure of the Chapter 11 Plan of Premier Marketing Group, LLC (Dkt. No. 2733) and related "Global Settlement" (as such term is defined therein). Yet, the Debtors invoke the mediation privilege to withhold information about events, communications, and decisions that concern an entirely new Plan (Dkt. 3019) and post-date the mediation by months. Even assuming that some form of mediation confidentiality applied during the mediation sessions themself, it cannot plausibly extend to shield interim and post-mediation conduct, negotiations, and decision-making that occurred weeks or months after the mediation ended. *See In re RDM Sports Grp., Inc.*, 277 B.R. at 431 (mediation privilege "should operate to protect only those communications made to the mediator, between the parties during the mediation, or in preparation for the mediation"). Indeed, when in both meet and confer meetings that were

9

conducted Debtors were requested to at least identify the specific dates they mediated the case before Judge Isgur, Debtors refused to even provide that basic factual information.

23.     The Debtors cannot use the fact that a mediation once occurred as a perpetual cloak over all subsequent plan-related activity. To allow that position to hold would allow any party that participates in a mediation to immunize all future communications on the same subject matter from discovery indefinitely—a result no court has endorsed and one that would fundamentally undermine the discovery rights of creditors in Chapter 11 cases.

24.     The same pattern repeats across the Debtors' responses to requests concerning the Estate Claims Marketing Process (ROG 2; RFP 11), the Litigation Trust and its assets (ROGs 4, 9, 10; RFPs 6, 29, 30), the use of factoring proceeds (ROGs 5, 6; RFPs 21, 26, 27), the Special Committee Investigation (RFP 14), the Plan Settlement negotiations (RFP 5), and the Adverse Conduct determinations (ROGs 3; RFPs 8, 9). In each instance, the Debtors assert the mediation privilege in boilerplate fashion without identifying which specific communications were made during mediation, to whom, or on what date. This fails to satisfy the Debtors' burden of establishing the privilege applies. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) ("[T]he party asserting the privilege bears the burden of demonstrating its applicability.").

25.     Request for Production No. 15 illustrates the flaw in the Debtors' position. That Request seeks communications between the Debtors and the Ad Hoc Group or DIP Secured Parties during a 28-day *pre-petition* window, September 1, 2025 through September 28, 2025. The Debtors asserted the mediation privilege to resist this Request related to the period before the First Brands Bankruptcy cases were ever filed. But the mediation in these Chapter 11 Cases was not even contemplated in September 2025; it was not authorized until months later. The Debtors' assertion of mediation privilege over pre-mediation communications lays bare what is really

happening here: the Debtors are wielding the label of "mediation privilege" not as a targeted protection for the mediation process, but as a blanket shield to excuse or avoid producing documents they simply do not want Katsumi to see.

26.     Moreover, the Debtors have failed to produce even a privilege log identifying what specific documents or communications they are withholding on mediation grounds, as required by Federal Rule 26(b)(5)(A). A log would evidence at least a case-by-case evaluation before asserting privilege.  But we were advised no such scrutiny or evaluation was conducted, and not a single factual witness can declare under oath that all such communications were mediation-based communications, let alone privileged (which Katsumi contends they are not privileged).  Without a privilege log, neither Katsumi nor this Court can evaluate whether the privilege has been properly invoked. *See Peacock v. Merrill,* No. 08-01-B-M2, 2008 WL 687195, at *3 (M.D. La. Mar. 10, 2008) ("Without ... the privilege log, it is not possible for [a party] to legitimately contest the asserted privilege and for the Court to rule intelligently upon whether the claim of privilege should be sustained."). The Court should overrule the Debtors' blanket mediation privilege objections, compel full responses, and require production of a detailed privilege log.

**B.     Failure to Produce a Privilege Log.**

27.     The Debtors assert attorney-client privilege, work product protection, common interest privilege, joint defense privilege, mediation privilege, and the Supplemental Agreed Protective Order between the Debtors and the Examiner (Dkt. 1364) across virtually every response, yet no privilege log has been produced or referenced. The Debtors' responses do not identify a single document being withheld, the date of any withheld communication, the author or recipients, or the privilege asserted for each document or even categories of documents.  These documents are relevant for a number of issues to be litigated before this Court at the Confirmation

11

Hearing, yet Debtors are now using privilege and the protective order as another shield from discovery.

28.     Federal Rule 26(b)(5)(A) is clear: "When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." The Debtors have not complied with this requirement. The Fifth Circuit has consistently held that blanket privilege assertions without a privilege log are insufficient. *See In re Santa Fe,* 272 F.3d at 710 ("[T]he party asserting the privilege bears the burden of demonstrating its applicability."); *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999) ("[B]lanket assertions of privilege are extremely disfavored."). Without a privilege log, the Debtors' privilege claims should be deemed waived, or at minimum, the Court should order production of a compliant privilege log within five days.

**C.     Boilerplate "Overbroad and Unduly Burdensome" Objections.**

29.     Every single response—all 24 interrogatories and all 31 document requests—recites that the request is "overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing." Not once do the Debtors identify or quantify the burden, explain what makes a request disproportionate, identify the number of documents that would need to be reviewed, estimate the cost of compliance, or propose any narrowing.

30.     The Fifth Circuit has held that simply objecting to requests as overly broad, burdensome, or irrelevant without showing how each request is specifically not relevant, burdensome, or overly broad is inadequate to voice a successful objection. *See McLeod, Alexander, Powel, & Appfel P.C. v. Quarles*, 894 F. 2d 1482, 1485–86 (5th Cir. 1990). Therefore, boilerplate

12

and "conclusory objections that the requested discovery is 'overly broad, burdensome, oppressive and irrelevant' are insufficient[.]" *Scott v. United States Postal Serv.*, No. CV 15-712, 2016 WL 7440468, at *4 (M.D. La. Dec. 27, 2016) (citations omitted); *see also Romero v. United States*, No. 6:23-CV-00032, 2024 WL 436892 at *2 (W.D. La. Feb. 2, 2024) ("Boilerplate objections are unacceptable."); *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021) (holding that the only thing a boilerplate objection accomplishes is waiver of the objection).

31.     Further, the Debtors' proportionality objection under Federal Rule 26(b)(1) is meritless. The Discovery Requests seek information directly relevant to core confirmation issues: the feasibility of the Plan, the adequacy of the Disclosure Statement, the value and treatment of claims contributed to the Litigation Trust, and the use of Katsumi's factoring proceeds. These are not peripheral matters; they go to the heart of what this Court must evaluate at the Confirmation Hearing. The Debtors cannot credibly argue that targeted discovery on these subjects is disproportionate to the needs of a multi-billion dollar bankruptcy case. These objections should be overruled in their entirety.

**D.      Improper Deferral to Future Witness Declarations.**

32.     There is no caselaw nor rule nor privilege that allows a party to refuse to respond to interrogatory requests based on the assertion that later we will file comprehensive declarations that go well beyond this question, so we will ignore our discovery obligations in response to the interrogatories.  Indeed, Debtors finally filed late on July 14 incredibly lengthy declarations.  This avoidance of responding is particularly egregious, and even now, despite being requested, Debtors have not even attempted to cross reference provisions, paragraphs or subsections linking these declarations to the specific Interrogatory request to which such sworn statements relate. In effect,

the requesting parties are denied the fundamental purposes of the interrogatory: sworn statements addressing specific, discrete inquiries.

33.     Specifically, rather than provide substantive responses, the Debtors repeatedly state that "information informing a response will be reflected in witness declarations to be filed in prosecution of the Plan" and that materials "will be produced on a rolling basis thereafter." This formulation appears in the Debtors' responses to Interrogatory Nos. 3, 4, 6, 9, 10, 11, 12, 21, and 22. It is not an answer—it is a deferral to some unspecified future date, on the Debtors' own timeline, with no commitment as to scope or completeness.

34.     Federal Rule 33(b)(3) requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." In addition, a response to a request for production of documents which merely says the requested documents will be produced at some unidentified time in the future, without offering a specific time, place and manner, is not a complete answer as required by Federal Rule 34(b) and, therefore, is treated as a failure to answer or respond pursuant to Federal Rule 37(a)(3). *See Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 656 (D. Md. 1997). The Debtors should not be permitted to further delay providing responsive discovery, particularly when the schedule for the Confirmation Hearing requires that Katsumi have adequate time to review, analyze, and respond to the Debtors' positions. Similarly, the Debtors refuse to identify their witnesses for the Confirmation Hearing (ROG 8), claiming they "will disclose their witnesses on the witness and exhibit list." This is non-responsive evasion that prejudices Katsumi's preparation for the Confirmation Hearing.

35.     The problem is compounded by the Debtors' pervasive use of the formulation "subject to and without waiving any objections," which leaves Katsumi entirely in the dark about which grounds for objection the Debtors are actually relying on to withhold specific documents or

categories of documents. Katsumi has no way to know what is being withheld, or on what basis. Federal Rule 34(b)(2)(C) requires that a party stating an objection to a document request "must state whether any responsive materials are being withheld on the basis of that objection." The Debtors have not done so for a single request. The practical effect is that the Debtors have given themselves unilateral, unreviewable discretion to produce whatever they choose and withhold whatever they prefer, while maintaining the appearance of compliance. This is precisely the kind of evasive response that Rule 37(a)(3)(B)(iv) treats as a failure to respond. The Court should order the Debtors to state, for each request, whether responsive materials are being withheld and, if so, on what specific basis.

## E.    Improper "Premature Contention Interrogatory" Objections.

36.    The Debtors label over half of the interrogatories—thirteen in total—as "premature contention interrogatories" and use this characterization to refuse responses. (Interrogatories 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 22).  But they relate to Debtors filed Plan.  They are not premature. Federal Rule 33(a)(2) expressly provides that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."

37.    Moreover, with the Confirmation Hearing approaching, these interrogatories are anything but premature, as they seek information that Katsumi needs *now* for its evaluation of the Plan's feasibility, the adequacy of the Disclosure Statement, the value and structure of the proposed Litigation Trust, and the propriety of the third-party releases the Plan demands, each of which is a prerequisite to confirmation that Katsumi is entitled to test through discovery. Without timely responses, Katsumi will be forced to confront the Confirmation Hearing unable to meaningfully challenge core aspects of the Plan that directly affect its recovery. The Debtors' contention-interrogatory objection is particularly hollow with respect to interrogatories asking

15

about the Litigation Trust, the Estate Claims, and the Plan Settlement (Interrogatories 3, 4, 9, 10, 14), as the Debtors are the Plan proponents and bear the burden of demonstrating confirmability under 11 U.S.C. § 1129. The Debtors cannot simultaneously seek confirmation of the Plan while refusing to answer questions about its terms.

38.     This is a case in which hundreds of millions of dollars have been paid to professionals, and now that the case is coming to its Plan Confirmation hearing, the responses do not reflect anything in terms of substance the expenditures of this case warrant and deserve.

**F.     Outright Refusals to Respond.**

39.     The Debtors flatly state they "will not respond" to four interrogatories (Nos. 1, 14, 17, and 20), and provide zero substantive information. Interrogatory No. 1 asks only for the identity of persons who participated in drafting the Plan; the Debtors refuse. Interrogatory No. 14 seeks the Debtors' state-law analysis regarding the legal transferability of claims to the Litigation Trust, *which is not a successor entity to the Debtors under this Plan*, this is a core confirmability issue, and the Debtors refuse. Interrogatory No. 17 asks for the anticipated fees of the DIP Collateral Trust; the Debtors refuse, claiming the information is not in their possession, custody, or control, an assertion that strains credulity for Plan proponents administering the DIP Collateral Trust. Interrogatory No. 20 asks about professional fees under Section 2.3(e) of the Plan; the Debtors refuse.

40.     A party may not simply refuse to answer discovery. The proper remedy, which the Debtors did not pursue, is a motion for protective order under Federal Rule 26(c). *See Lampe v. Kash*, No. 1:03-CV-162, 2004 WL 7321353, at *1 (S.D. Ohio July 13, 2004). Absent a court order, the Debtors' outright refusals violate Federal Rules 33 and 37, and constitute waivers of defenses. The Court should compel responses to all four interrogatories.

16

**G.      Improper "Already in Katsumi's Possession" Objections.**

41.      The Debtors repeatedly claim that requested information is "publicly available," "equally available to Katsumi," or "already in Katsumi's possession, custody, or control." This objection appears in responses to Interrogatory Nos. 3, 4, 7, 9, 15, 19, 20, and 24.

42.      A responding party cannot shift its discovery obligations to the requesting party simply because some information may be publicly available. *See Alanis Logistics, Inc. v. JPMorgan Chase Bank, N.A.*, No. 7:21-CV-00235, 2022 WL 304994, at *4 (S.D. Tex. Feb. 2, 2022) ("Federal Rule of Civil Procedure 26 does not generally permit a proponent of discovery to shift the burden of researching public information onto the respondent."). While Federal Rule 33(d) permits a party to answer by producing business records from which the answer may be derived, the party must "specif[y] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). The Debtors utterly failed to meet this obligation.  Hence, Debtors must provide substantive answers.

**H.      The Debtors' Privilege Assertions Are Waived Under the Sword-and-Shield Doctrine.**

43.      Independent of the deficiencies addressed above, the Debtors' privilege assertions must be overruled under the sword-and-shield doctrine. It is a bedrock principle of privilege law that a party may not use privilege as both a sword and a shield—selectively disclosing privileged information when it advances the party's position while withholding the underlying materials when an adversary seeks to test or challenge that position. *See Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 495 (W.D. Tex. 2020) (examining work product privilege being used as both a sword and shield); *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 704 (10th Cir. 1998) ("a litigant cannot use the work product doctrine as both a sword and shield"); *United States v. Bilzerian*, 926

F.2d 1285, 1292 (2d Cir. 1991) ("The attorney-client privilege cannot at once be used as a shield and a sword.").

44.     That is precisely what the Debtors are doing here. The Debtors have revealed that Charles M. Moore, the CEO of First Brands Group, LLC, the same individual who verified the Debtors' interrogatory responses, will testify at the Confirmation Hearing about the Debtors' analysis of the flow of funds from the factoring transactions. Yet the Debtors have asserted privilege over all work papers and analyses related to that very funds-flow tracing. In their response to Interrogatory No. 6, which asks the Debtors to describe how proceeds from the purchase of receivables by Katsumi and other Factors were used, distributed, or applied, the Debtors objected on the basis of "the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege," and "any other applicable privilege, including any tracing analysis performed by the Debtors or their advisors." The Debtors cannot refuse disclosure, and then put Mr. Moore on the witness stand to testify about a funds-flow analysis while simultaneously claiming that the underlying work papers supporting that analysis are privileged.  Due process mandates that any subject that is part of the Plan or any declaration must be subject to full discovery, and no privilege may be asserted to preclude full and fair adjudication of such issue.

45.     The same sword-and-shield problem pervades the Debtors' treatment of their investigation and claims analysis. The Debtors have opened the door on these subjects by repeatedly stating in their interrogatory responses that "information informing a response to this Interrogatory will be reflected in witness declarations to be filed in prosecution of the Plan," and by directing Katsumi to publicly filed documents such as the Schedule of Retained Causes of Action (Dkt. 3046-1), the Litigation Trust Agreement (Dkt. 3046-4), and the Specified Non-

Released Parties Schedule (Dkt. 3046-8). The Debtors have thus selectively disclosed the *conclusions* of their investigation and claims analysis, which claims to pursue, which parties to include on the non-released parties schedule, and which causes of action to transfer to the Litigation Trust, while asserting privilege over all of the underlying analyses, methodology, and communications that produced those conclusions. Having placed the results of their investigation squarely at issue in support of confirmation ***and the sole means to try and achieve feasibility*** (through the litigation trust and the litigation claims), the Debtors cannot now shield the analytical foundation from scrutiny.

46.     The Debtors cannot have it both ways. They chose to try and implement a plan built entirely around the possibility of obtaining litigation recoveries.  By electing to present testimony about funds-flow analyses, by publicly filing the results of their investigation and claims analysis, and by relying on those results to support confirmation of the Plan, the Debtors have waived any privilege over the underlying work papers, analyses, and communications. *See In re Toshiba Int'l Corp. v. Kalaga*, No. CV H-19-4274, 2020 WL 13413222, at *3 (S.D. Tex. May 26, 2020) (The sword-shield doctrine allows a waiver of privilege when "a party possessing the documents [sought] to selectively present the materials to prove a point, but then attempts to invoke the privilege to prevent the opponent from challenging the assertion."). The Court should deem the Debtors' privilege waived as to the funds-flow tracing analysis, the investigation and claims analysis, and all related work papers, and compel their production.

## MEET AND CONFER

47.     Counsel for Katsumi and the Debtors have met and conferred at least twice to address and wherever possible resolve this dispute but have been unable to reach a resolution.

19

## RESERVATION OF RIGHTS

48.     Katsumi reserves its right to file other motions to address discovery disputes that cannot be resolved.

## NOTICE

49.     Notice of this Motion has been provided to all parties listed in the Master Service List. In light of the nature of the relief requested herein, Katsumi respectfully submits that no other or further notice need be provided.

## CONCLUSION

50.     Based on the foregoing, Katsumi respectfully requests that the Court grant its Motion and enter an Order (i) ordering Debtors to respond more completely to the interrogatories and requests for production, (ii) continuing the Confirmation Hearing to a date necessary to allow the objecting parties sufficient time to (a) respond to the surprise testimony of Mr. Kirschner, (or alternatively, striking Mr. Kirschner's declaration and ability to testify) and (b) sufficient time to process Debtors' compelled discovery responses to obtain deposition testimony thereafter prior to any confirmation hearing.

51.     Specifically, Katsumi requests that the Court enter in order substantially in the form attached to this Motion, scheduling the confirmation hearing at a time when due process and fairness ensures justice is served, and grant such other relief as is just and proper under the circumstances.

20

Dated: July 15, 2026
Houston, Texas

/s/ Charles S. Kelley
**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, Texas 77002
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com

Sean T. Scott (admitted *pro hac vice*)
Kyle J. TumSuden (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Email: stscott@mayerbrown.com
        ktumsuden@mayerbrown.com

Richard A. Stieglitz (admitted *pro hac vice*)
Lauren C. Blanchard (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Email: rstieglitz@mayerbrown.com
        lblanchard@mayerbrown.com

*Counsel to Katsumi Servicing, LLC*

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 13, 2026, counsel for Katsumi Servicing, LLC conferred with

counsel of record for Debtors.  The parties could not come to an agreement and reached an impasse.

/s/ Charles S. Kelley
Charles S. Kelley

21

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 15, 2026, a true and correct copy of this document was electronically filed with the Clerk of the Court using the CM/ECF system, which automatically sends notification of such filing to all attorneys of record.

*/s/ Charles S. Kelley*
Charles S. Kelley

22