# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.[1]** | § | |

## MOTION OF DEBTORS FOR AN ORDER EXTENDING EXCLUSIVE PERIODS PURSUANT TO SECTION 1121(D) OF THE BANKRUPTCY CODE

> IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED.  IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, "**First Brands**"), respectfully represent as follows:

### Preliminary Statement

1.      The record of these chapter 11 cases incontrovertibly supports the Debtors' request for a 90-day extension of the Exclusive Periods (as defined herein).  These are among the largest and most complex chapter 11 cases in history.  First Brands is a leading supplier of aftermarket automotive parts and is comprised of 112 Debtor entities and more than 100 non-Debtor subsidiaries.  As of the commencement of these cases, First Brands employed

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

approximately 26,000 individuals globally, including almost 6,000 employees in the United States. The Debtors' capital structure consists of approximately $11.5 billion in prepetition liabilities, including approximately $6 billion in funded debt obligations, at least $2.3 billion in factoring liabilities, at least $2.3 billion in "off-balance sheet" financing liabilities incurred through special purpose vehicles ("**SPVs**"), and approximately $900 million in unsecured supply chain financing liabilities. In addition to the sheer magnitude and complexity of the business and capital structure, the prepetition activity that occurred while the Debtors were under the control of prior management has left the Debtors and their advisors navigating a labyrinth of financial and legal challenges. Three adversary proceedings, an appeal, 15 hearings, and more than 1,600 docket entries and counting in just three and a half months provide a glimpse into what these massive, complicated cases have entailed.

2. In light of such challenges, the Debtors and their advisors, at the direction of the Debtors' independent special committee (the "**Special Committee**"), have worked around the clock to fulfill their fiduciary obligations following the abrupt commencement of these chapter 11 cases, stabilize the Debtors' businesses, negotiate with key creditors and stakeholders, litigate numerous contested matters before this Court, and forge a path forward. In less than four months, the Debtors have addressed a multitude of critical, time-sensitive matters, including: (i) obtaining necessary first- and second-day relief, including authority to pay certain outstanding obligations owed to, among others, employees, customers, and vendors; (ii) negotiating agreements with customers and vendors; (iii) securing $1.1 billion of new money debtor-in-possession financing; (iv) launching and progressing a wide-ranging investigation into potential estate claims and causes of actions (the "**Investigation**"); (v) reconstituting the Debtors' leadership and enacting related corporate governance changes; (vi) commencing an adversary

proceeding against the Debtors' founder and former CEO and affiliated parties to recover hundreds of millions of dollars of misappropriated funds (the "**Founder Adversary Proceeding**"); (vii) commencing an adversary proceeding against numerous defendants, including Onset Financial, Inc. ("**Onset**") and Edward James—the founder's brother and former executive vice president, board member, and officer of the Debtors—seeking to avoid billions of dollars of preferential and fraudulent transfers, among other claims (the "**Onset Adversary Proceeding**" and, together with the Founder Adversary Proceeding, the "**Adversary Proceedings**"); (viii) negotiating with each of the SPV lenders with respect to adequate protection packages; (ix) reconciling prepetition accounts receivable and negotiating and developing procedures with factoring counterparties to release unencumbered funds; (x) holding numerous in-person meetings with stakeholders to discuss a path forward—likely through either a sale or wind-down of the Debtors' businesses; and (xi) navigating a variety of issues regarding certain of the Debtors' rest-of-world businesses, including securing incremental funding for the non-Debtor subsidiaries that operate such businesses. At each step, the Debtors have made every effort to work constructively with and consult their key stakeholders, including the Ad Hoc Group, the ABL Lenders, and the Creditors' Committee.

3. Although the Debtors have made significant progress, an equal amount of, if not more, work remains as the Debtors vigorously pursue phase two of these cases: an expeditious sale process (the "**Sale Process**")[2] or potential wind-down that maximizes value and provides a potential path to exit these chapter 11 cases. With the bid deadline approaching on January 30th, the Sale Process is well underway. Approximately 100 potential bidders have executed nondisclosure agreements and accessed the Debtors' data room. The Debtors need to

---

[2] *See* Bidding Procedures Motion (Docket No. 1253).

bolster liquidity to bridge through the conclusion of the Sale Process or, alternatively, an orderly wind-down. Thus, the Debtors are continuing to discuss additional funding with key stakeholders, as well as a resolution of these chapter 11 cases. These negotiations will inform the future of the Debtors' business and provide the Debtors and their stakeholders with the information necessary to formulate a path forward in these cases.

4. The Debtors are at a critical juncture in these chapter 11 cases. Negotiations regarding the Sale Process, wind-down, liquidity, and a potential resolution of these chapter 11 cases are well underway among the Debtors and their key stakeholders. Termination of the Exclusive Periods now would be highly disruptive to the Debtors' cases and current negotiations. Parties would be empowered to walk away from the negotiating table, distracting the Debtors and their advisors from their value-maximizing efforts and increasing the administrative expenses borne by the Debtors' estates—a result these cases cannot afford. Permitting such a scenario to occur would defeat the very purpose of section 1121 of the Bankruptcy Code—to afford the Debtors a meaningful opportunity to propose a confirmable chapter 11 plan based on adequate information that maximizes value for all stakeholders. Termination of exclusivity would also be highly detrimental to the Debtors' business operations, as customers, vendors, and employees would lose further confidence in the Debtors' ability to perform their obligations. The Debtors simply have not had sufficient time to formulate and negotiate an exit strategy with their constituents. These cases have been all-consuming, and the workload has been enormous. Additional time is clearly warranted.

5. For the reasons set forth above and herein, the Debtors' request for an extension of the Exclusive Periods should be granted.

**Relief Requested**

6.      By this Motion, pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors request entry of an order extending the periods during which the Debtors have the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") and to solicit acceptances thereof (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**"), each by 90 days through and including April 22, 2026 and June 22, 2026,[3] respectively, without prejudice to the Debtors' right to request further extensions of such periods in accordance with section 1121(d) of the Bankruptcy Code. The Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on January 22, 2026 and March 23, 2026, respectively.[4]

7.      A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

**Background**

8.      On September 24, 2025, Global Assets LLC and 12 of the Debtors in the above-captioned chapter 11 cases each filed with the Court a voluntary case under chapter 11 of the Bankruptcy Code. Commencing on September 28, 2025, First Brands Group, LLC and the remaining Debtors each filed with the Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties

---

[3]     The 90th day following the expiration of the Exclusive Solicitation Period (as extended) would be Sunday, June 21, 2026. However, Bankruptcy Rule 9006(a)(1)(C) provides that when a period is stated in days, "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Bankr. P. 9006(a)(1)(C).

[4]     The Exclusive Filing Period is scheduled to expire on January 22, 2026. However, Rule K.30 of the *Procedures for Complex Cases in the Southern District of Texas* provides that "if a motion is filed that complies with these procedures to extend the time to take any action before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules, or a confirmed plan, the time for taking the action is automatically extended until the Court rules on the motion." By filing this Motion prior to the expiration of the Exclusive Periods, such deadlines are automatically extended until the Court resolves the Motion.

as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed in these chapter 11 cases.

9.  The Debtors' chapter 11 cases are being jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

10.  On October 9, 2025, the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (Docket No. 313) (the "**Creditors' Committee**").

11.  Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (Docket No. 22) (the "**First Day Declaration**"), filed on September 29, 2025 and incorporated herein by reference.

### Jurisdiction and Venue

12.  The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested Should be Granted

13.  Section 1121(b) of the Bankruptcy Code establishes an initial 120-day period following commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan.  Additionally, section 1121(c) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day exclusive filing period, it has an exclusive period of 180 days after the commencement of the chapter 11 case to obtain acceptance of its plan.

14. Under section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause. 11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referenced to in this section.").

15. The Bankruptcy Code neither defines the term "cause" nor establishes formal criteria for an extension. The legislative history of section 1121 of the Bankruptcy Code indicates, however, that "cause" is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95–595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest); *In re Timbers of Inwood Forrest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) ("[A]ny bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the legislative goal behind § 1121."); *In re Mirant Corp.*, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization.").

16. The broad discretion conferred on the Court in these circumstances enables the Court to consider a variety of factors to assess the totality of circumstances in each case. *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying factors courts consider in determining whether to extend exclusivity); *In re Washington St. Tammany Elec. Co-op., Inc.*, 97 B.R. 852, 854 (E.D. La. 1989) (noting that the decision to extend exclusivity "rests with the discretion of the Court"); *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643–44 (B.A.P.

8th Cir. 2003) (same); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (same).

17. Courts in this district have considered the *Adelphia* factors when determining whether cause exists to extend exclusivity. *See, e.g.*, *In re New Millenium Mgmt., LLC*, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (evaluating the factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity). These non-exclusive factors include:

 (i) the size and complexity of a debtor's case;

 (ii) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

 (iii) the existence of good faith progress towards reorganization;

 (iv) the fact that the debtor is paying its bills as they become due;

 (v) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

 (vi) whether the debtor has made progress in negotiations with its creditors;

 (vii) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

 (viii) whether an unresolved contingency exists.

*See, e.g.*, *Millenium Mgmt.*, 2014 WL 792115, at *6; *see also Adelphia*, 352 B.R. at 587 (noting that the factors listed above are "objective factors which courts historically have considered in making determinations of this character").

18. Not all factors are relevant to every case, and courts may consider a subset of the above factors in determining whether cause exists to grant an exclusivity extension in a

particular chapter 11 case. *See In re Hoffinger Indus., Inc.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."); *In re Serv. Merch. Co., Inc.*, 256 B.R. 744, 751–54 (Bankr. M.D. Tenn. 2000) (finding cause to extend where the debtors established six of the aforementioned factors); *In re Express One Int'l, Inc.*, 194 B.R. 98, 101 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" existed to extend exclusivity); *see also In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors.").

19.     Moreover, courts regularly grant a debtor's first request for an extension of the debtor's exclusive period to file a chapter 11 plan. *See In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which the debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied.") (citation omitted); *see also Borders Grp.*, 460 B.R. at 825 (same).

### Cause Exists to Extend Exclusive Periods

20.     An extension of the Exclusive Periods, in each case, by 90 days is appropriate, in the best interest of the Debtors' stakeholders, and consistent with the intent and purpose of chapter 11 of the Bankruptcy Code. The requested extensions of the Exclusive Periods are necessary and appropriate to enable the Debtors to pursue a global resolution that will maximize the value of the Debtors' estates for the benefit of all stakeholders, without interruption.

9

Application of the relevant *Adelphia* factors to the facts of these chapter 11 cases demonstrates that ample cause exists to grant the reasonable extension of the Exclusive Periods requested herein.

### A.      These Chapter 11 Cases are Large and Complex

21.      The size and complexity of a debtor's case alone may constitute cause to extend the Exclusive Periods.  *See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").  The legislative history of section 1121 provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963.

22.      The size and complexity of, and unique legal and factual issues involved in, these chapter 11 cases alone warrant the requested extension of the Exclusive Periods.  The Debtors operate a massive, complicated enterprise.  There are 112 Debtor entities that, collectively with more than 100 non-Debtor subsidiaries, operate as a leading supplier of aftermarket automotive parts across the world.  Their businesses include a global network of manufacturing and distribution centers that spans 5 continents.  As of the commencement of these cases, First Brands employed 26,000 individuals globally, including almost 6,000 employees in the United States. The Debtors' portfolio of products includes over 25 iconic brands, including household names such as "FRAM" and "Raybestos."  The Debtors are supplied by thousands of vendors and are party to thousands of real property leases and executory contracts that support these businesses.

23.      The Debtors also have a complex capital structure.  At the time of filing, the Debtors collectively had approximately $6 billion in funded debt obligations, at least $2.3 billion in factoring liabilities, at least $2.3 billion in "off-balance sheet" financing liabilities incurred

through SPVs, and approximately $900 million in unsecured supply chain financing liabilities—all under more than 10 separate facilities with 8 different agents. These facilities are secured by siloed collateral—for some—and overlapping collateral—for others.

24. Further complicating the Debtors' capital structure, certain purported prepetition transfers of inventory and other assets from the FBG Debtors to the SPV Debtors have resulted in certain of the Debtors' creditors asserting competing legal rights and priorities with respect to the same collateral compounding the legal and factual issues in these cases. These transactions have raised questions among the Debtors' creditors as to the validity, extent, and priority of their liens, resulting in an onslaught of litigation and related activity from their off-balance sheet financing counterparties, including: (i) objections to the Debtors' motions for approval of DIP financing and use of their cash management system; (ii) appointment of an examiner; (iii) motions for the appointment of a chapter 11 trustee for certain Debtors; (iv) motions to dismiss the chapter 11 cases of certain Debtors; (v) motions to lift the automatic stay to allow creditors to seek to enforce against their collateral; (vi) objections to the retention of the Debtors' and the Creditors' Committee's advisors; (vii) the commencement of an adversary proceeding against the Debtors seeking a declaratory judgment with respect to the validity and priority of liens; (viii) requests for the production of tens of thousands of documents; and (ix) objections to the Debtors' motion to establish third-party factoring procedures for the reconciliation of the Debtors' receipts and the release of funds to the Debtors' estates and third-party factors.

25. The sheer scope of the Debtors' operations and capital structure required the Debtors to raise $1.1 billion of DIP financing at the beginning of these cases to fund the chapter 11 process. The financing process was complicated and required multiple contested hearings. It also involved negotiating numerous adequate protection stipulations with the Debtors'

SPV lenders to allow for the Debtors' continued use of collateral, including inventory and equipment necessary to operate their businesses and fill customer orders. Ultimately, a settlement was reached with various objecting parties, including the Creditors' Committee, with respect to the Debtors' DIP facility.

26. In addition, prior to and continuing after the commencement of these cases, the Special Committee and the Debtors' advisors conducted extensive diligence and discovery in furtherance of the Investigation, leading to the uncovering of, among other things, significant fraud and grievous misconduct by the Debtors' prior management. Specifically, the misconduct uncovered to date relates to the Debtors' (i) prepetition third-party factoring practices involving the sale of erroneous, substantially altered, and fabricated invoices to third-party factors; (ii) prepetition off-balance sheet financing practices with SPVs including double-pledging of collateral (the findings in (i) and (ii) lead to the Debtors' commencement of the Founder Adversary Proceeding); and (iii) prepetition financing arrangements with Onset involving a former executive vice president, board member, and officer of the Debtors pursuant to which Onset obtained exorbitant returns and the former executive enriched himself at the Debtors' expense (the findings in (iii) lead to the Debtors' commencement of an adversary proceeding against Onset and Edward James). Importantly, these discoveries have materially compounded the already-significant legal and financial issues raises in these cases.

27. The Investigation is supported by the Debtors' advisors, and it, along with the prosecution of the Adversary Proceedings, have required substantial resources to uncover the nature and extent of misconduct and potential claims. This ongoing work is critical, as it will continue to identify potential estate claims and causes of action that will be used to fund creditor

recoveries. In addition, the Court has appointed an examiner, whose separate independent investigation will shed further light on these issues.[5]

28. Moreover, the Debtors are now in the midst of their Sale Process. On January 8, 2026, the Debtors filed a motion seeking approval of bidding procedures, which will govern the marketing and sale of the Debtors' assets. Shortly before filing such motion, the Debtors commenced broad outreach to potential bidders. Approximately 120 have executed nondisclosure agreements and accessed the Debtors' data room. With the bid deadline of January 30th approaching, the Debtors will have information critical to the Debtors' formulation of a case resolution strategy soon. The stakes and importance of the Debtors' exclusivity at this critical juncture could not be higher.

29. In cases of this size and complexity, 120 days to formulate, achieve consensus on, and prosecute a chapter 11 plan is inadequate. As in other large and complex chapter 11 cases, the initial Exclusive Periods do not provide remotely sufficient time to achieve the objectives of the Bankruptcy Code. These chapter 11 cases are indisputably of the size and complexity that Congress and courts have recognized warrant extensions of the Exclusive Periods as requested.

> **B. There Has Not Been Sufficient Time to Permit the Debtors to Negotiate and Prosecute a Chapter 11 Plan and the Debtors Have Demonstrated Good Faith Progress Towards Achieving the Objectives of Chapter 11**

30. This is the Debtors' first motion for an extension of the Exclusive Periods. The Debtors are not even four months into these chapter 11 cases, which is not enough time to formulate and prosecute a chapter 11 plan in most chapter 11 cases, let alone cases of this magnitude and complexity as described above.

---

[5] *See* Order Approving Appointment of Examiner (Docket No. 1260).

31.     Notwithstanding the short duration of these cases, the Debtors have made substantial progress to date.  During the first few months, the Debtors' primary focus has been to stabilize their businesses by securing financing, improving customer and vendor relations, gaining a better understanding of the Debtors' capital structure and claims, progressing the Investigation, and commencing negotiations with their key stakeholders on a value-maximizing path forward.

32.     To stabilize their business, the Debtors (i) secured $1.1 billion of new money DIP financing, (ii) negotiated and executed multiple stipulations with inventory financing counterparties, (iii) negotiated agreements with customers and vendors to ensure the continued flow of goods, (iv) made necessary changes to their corporate governance, including reconstituting the Debtors' senior management, and (v) reconciled prepetition accounts receivable and negotiated procedures with factoring counterparties for the release of certain unencumbered funds, among other actions.

33.     Further, at the direction of the Special Committee, the Debtors and their advisors have made substantial progress with respect to the Investigation.  Specifically, the Debtors and their advisors have (i) conducted over two dozen formal interviews with current and former employees, (ii) collected and imaged key physical evidence, (iii) reviewed hundreds of thousands of documents, (iv) issued Rule 2004 requests to multiple parties, (v) launched a whistleblower hotline, and (vi) analyzed large volumes of bank and other financial records.  As a direct result of these efforts, the Debtors have commenced the Adversary Proceedings seeking to avoid fraudulent transfers and collect billions of dollars of estate property.

34.     In addition to the foregoing, during the first four months of these chapter 11 cases, the Debtors have:

- filed approximately 12,000 pages of schedules and statements;

14

- obtained approval of procedures for the assumption and rejection of executory contracts;

- facilitated the flow of information and diligence materials and maintained near-constant coordination with the Creditors' Committee and Ad Hoc Group with respect to numerous issues in these chapter 11 cases;

- worked with the U.S. Trustee to comply with the U.S. Trustee's operating guidelines and provide information to the U.S. Trustee;

- responded to countless inquiries related to the status of these cases, specific contract counterparty demands, and other matters related to ongoing operations and the administration of these cases;

- launched a broad Sale Process for their assets, including outreach to over 280 potential bidders, to maximize the value of the Debtors' estates;

- hosted numerous in-person meetings with various stakeholders, including the Ad Hoc Group, Creditors' Committee, and certain SPV lenders, in an attempt to resolve the multitude of disputes that have arisen during these chapter 11 cases;

- coordinated with the Examiner with respect to his investigation, including participating in numerous meetings and facilitating the exchange of diligence; and

- continued to explore capital sources and work with key stakeholders, including the SPV lenders, customers, and vendors to enhance the Debtors' liquidity.

35. Notwithstanding the significant progress made to date, the administration of these chapter 11 cases and the negotiation, formulation, filing, and prosecution of a global resolution of these chapter 11 cases will require additional time and effort. While the Debtors acknowledge their challenging liquidity situation, they are actively engaging with all stakeholders on additional funding and case resolution. Terminating exclusivity at this stage of the chapter 11 cases will only add uncertainty and undermine the Debtors' efforts to build consensus among stakeholders. Under these circumstances, the requested extensions of the Exclusive Periods are necessary and appropriate to afford the Debtors the opportunity to achieve the objectives of chapter 11 as contemplated by section 1121 of the Bankruptcy Code.

C.     **The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan**

36.     The first phase of these chapter 11 cases have centered on stabilizing the Debtors' businesses and preparing to launch the Sale Process. Although the Debtors are currently highly focused on the Sale Process and an orderly wind-down, the Debtors have begun formulating and evaluating the contours of a case funding and resolution strategy and are concurrently engaged in discussions with their stakeholders on the same. In connection with such discussions, the Debtors remain in regular contact with their key stakeholders, including the Ad Hoc Group, the ABL lenders, the SPV lenders, and the Creditors' Committee, holding multiple recurring calls on a weekly basis. Given the constant engagement with their stakeholders and current negotiations, the Debtors have demonstrated reasonable prospects for filing a viable chapter 11 plan.

D.     **The Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors to Submit to the Debtors' Demands**

37.     This is the Debtors' first request for extensions of the Exclusive Periods. The Debtors' conduct in these chapter 11 cases, including consultation with their key stakeholders at virtually every step, demonstrates that the Debtors are acting in a prudent and transparent manner and are not seeking these extensions to artificially delay the administration of these chapter 11 cases or to hold creditors hostage to an unsatisfactory plan proposal. Simply put, there has been no real opportunity for the Debtors to propose and file a plan during the short period of time since the filing of these chapter 11 cases. The size and complexity of these chapter 11 cases are patent and, together with what has transpired to date, establish more than adequate cause for the requested extensions.

38.     Additionally, the Debtors' relationship with their key economic stakeholders, including the Ad Hoc Group, the ABL lenders, the Creditors' Committee, and each group's professionals, is transparent, cooperative, and constructive. The Debtors have held

16

numerous meetings and negotiation sessions with these creditor constituencies to discuss virtually every issue in these cases, including DIP financing, the Investigation, the Sale Process, and potential wind-down, among other discrete issues.

39. Further, the Debtors have openly engaged with the SPV lenders and various factoring counterparties. The Debtors and their advisors have maintained an open line of communication and provided the SPV lenders and factors with access to significant information in effort to achieve as much consensus as possible.

40. The request for extending the Exclusive Periods is not a negotiation tactic but rather reflects that these cases are not yet sufficiently mature for the formulation, filing, and prosecution of a feasible—and hopefully consensual—chapter 11 plan.

41. Finally, this Motion is without prejudice to any party seeking to shorten the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code. *See* 11 U.S.C. § 1121(d). As such, no party in interest will be prejudiced if the requested extensions are approved.

### E. Important Contingencies Must be Resolved by the Debtors

42. Courts have recognized the need to resolve important contingencies as justification for extending the Exclusive Periods. *See, e.g.*, *Borders*, 460 B.R. at 826; *Adelphia Commc'ns*, 352 B.R. at 587. Notwithstanding the progress that has been made by the Debtors to date, open issues remain. The Debtors need additional time to address key issues, including, among others: (i) negotiations with key economic stakeholders with respect to additional case funding and resolution; (ii) resolution of the matters being investigated by the Special Committee, the Creditors' Committee and the Examiner; and (iii) if the Debtors' business lines are not sold as a going concern, the Debtors will have to execute a strategy to wind them down in an organized, value-maximizing manner.

43. The extension of the Exclusive Periods as requested will not prejudice any party in interest but rather will afford the Debtors a realistic opportunity to negotiate a resolution of these chapter 11 cases. Failure to extend the Exclusive Periods as requested herein would defeat the very purpose of section 1121 of the Bankruptcy Code, *i.e.*, to provide the Debtors with a meaningful and reasonable opportunity to propose a confirmable chapter 11 plan. The termination of Exclusive Periods could lead to unnecessary adversarial situations with potentially multiple competing plans on file, and the litigation costs attendant therewith would be to the detriment of all parties in interest.

### F. The Debtors are Satisfying Administrative Expenses

44. Courts considering an extension of exclusivity also may consider whether a debtor has been paying costs and expenses of administration. *Adelphia Commc'ns*, 352 B.R. at 587; *Texaco*, 76 B.R. at 322. Here, the Debtors have been paying ordinary course administrative expenses as they have come due.

### G. Relatively Little Time Has Elapsed Since the Chapter 11 Cases Were Commenced

45. This is the Debtors' first request to extend the Exclusive Periods, and it comes less than four (4) months after the commencement of these cases. Courts in this district have routinely granted initial requests by debtors to extend their exclusive periods to file and solicit a chapter 11 plan. *See, e.g.*, *In re TPI Composites, Inc.*, Case No. 25-34655 (CML) (Bankr. S.D. Tex. Jan. 5, 2026) (Docket No. 584) (granting 120-day extension); *In re Robertshaw US Holding Corp.*, Case No. 24-90052 (CML) (Bankr. S.D. Tex. June 6, 2024) (Docket No. 621) (granting 120-day extension); *In re Seadrill Ltd.*, No. 21-30427 (Bankr. S.D. Tex. Jul. 1, 2021) (Docket No. 829) (granting 120-day extension). For the reasons stated above, the relief requested herein is appropriate and in the best interests of the Debtors and their estates.

**Notice**

46.    Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

**No Previous Request**

47.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 22, 2026
      Houston, Texas

 /s/  *Clifford W. Carlson*
WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email: gabriel.morgan@weil.com
    clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  matt.barr@weil.com
    sunny.singh@weil.com
    andriana.georgallas@weil.com
    kevin.bostel@weil.com
    jason.george@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

## Certificate of Service

I hereby certify that on January 22, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

   /s/  Clifford W. Carlson   
Clifford W. Carlson

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

## ORDER EXTENDING EXCLUSIVE PERIODS

Upon the motion, dated January 22, 2026 (the "**Motion**"),[2] of First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order extending the Exclusive Filing Period and Exclusive Solicitation Period by 90 days, pursuant to section 1121(d) of the Bankruptcy Code, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and upon any hearing held on the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1. Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Filing Period is extended through and including April 22, 2026.

2. Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Solicitation Period is extended through and including June 22, 2026.

3. The extensions of the Exclusive Periods granted herein are without prejudice to the Debtors' rights to seek from this Court further extensions of time pursuant to section 1121(d) of the Bankruptcy Code.

4. Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no other or further notice of the Motion or entry of this Order shall be required.

5. The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Order.

6. This Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2026
      Houston, Texas

                                          _____
                                          CHRISTOPHER LOPEZ
                                          UNITED STATES BANKRUPTCY JUDGE

2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**MOTION OF DEBTORS FOR AN ORDER EXTENDING EXCLUSIVE
PERIODS PURSUANT TO SECTION 1121(D) OF THE BANKRUPTCY CODE**

---

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, "**First Brands**"), respectfully represent as follows:

**Preliminary Statement**

1.      The record of these chapter 11 cases incontrovertibly supports the Debtors' request for a 90-day extension of the Exclusive Periods (as defined herein). These are among the largest and most complex chapter 11 cases in history. First Brands is a leading supplier of aftermarket automotive parts and is comprised of 112 Debtor entities and more than 100 non-Debtor subsidiaries. As of the commencement of these cases, First Brands employed

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

approximately 26,000 individuals globally, including almost 6,000 employees in the United States. The Debtors' capital structure consists of approximately $11.5 billion in prepetition liabilities, including approximately $6 billion in funded debt obligations, at least $2.3 billion in factoring liabilities, at least $2.3 billion in "off-balance sheet" financing liabilities incurred through special purpose vehicles ("**SPVs**"), and approximately $900 million in unsecured supply chain financing liabilities.  In addition to the sheer magnitude and complexity of the business and capital structure, the prepetition activity that occurred while the Debtors were under the control of prior management has left the Debtors and their advisors navigating a labyrinth of financial and legal challenges. Three adversary proceedings, an appeal, 15 hearings, and more than 1,600 docket entries and counting in just three and a half months provide a glimpse into what these massive, complicated cases have entailed.

2. In light of such challenges, the Debtors and their advisors, at the direction of the Debtors' independent special committee (the "**Special Committee**"), have worked around the clock to fulfill their fiduciary obligations following the abrupt commencement of these chapter 11 cases, stabilize the Debtors' businesses, negotiate with key creditors and stakeholders, litigate numerous contested matters before this Court, and forge a path forward.  In less than four months, the Debtors have addressed a multitude of critical, time-sensitive matters, including: (i) obtaining necessary first- and second-day relief, including authority to pay certain outstanding obligations owed to, among others, employees, customers, and vendors; (ii) negotiating agreements with customers and vendors; (iii) securing $1.1 billion of new money debtor-in-possession financing; (iv) launching and progressing a wide-ranging investigation into potential estate claims and causes of actions (the "**Investigation**"); (v) reconstituting the Debtors' leadership and enacting related corporate governance changes; (vi) commencing an adversary

proceeding against the Debtors' founder and former CEO and affiliated parties to recover hundreds of millions of dollars of misappropriated funds (the "**Founder Adversary Proceeding**"); (vii) commencing an adversary proceeding against numerous defendants, including Onset Financial, Inc. ("**Onset**") and Edward James—the founder's brother and former executive vice president, board member, and officer of the Debtors—seeking to avoid billions of dollars of preferential and fraudulent transfers, among other claims (the "**Onset Adversary Proceeding**" and, together with the Founder Adversary Proceeding, the "**Adversary Proceedings**"); (viii) negotiating with each of the SPV lenders with respect to adequate protection packages; (ix) reconciling prepetition accounts receivable and negotiating and developing procedures with factoring counterparties to release unencumbered funds; (x) holding numerous in-person meetings with stakeholders to discuss a path forward—likely through either a sale or wind-down of the Debtors' businesses; and (xi) navigating a variety of issues regarding certain of the Debtors' rest-of-world businesses, including securing incremental funding for the non-Debtor subsidiaries that operate such businesses. At each step, the Debtors have made every effort to work constructively with and consult their key stakeholders, including the Ad Hoc Group, the ABL Lenders, and the Creditors' Committee.

3. Although the Debtors have made significant progress, an equal amount of, if not more, work remains as the Debtors vigorously pursue phase two of these cases: an expeditious sale process (the "**Sale Process**")[2] or potential wind-down that maximizes value and provides a potential path to exit these chapter 11 cases. With the bid deadline approaching on January 30th, the Sale Process is well underway. Approximately 100 potential bidders have executed nondisclosure agreements and accessed the Debtors' data room. The Debtors need to

---

[2]    *See* Bidding Procedures Motion (Docket No. 1253).

bolster liquidity to bridge through the conclusion of the Sale Process or, alternatively, an orderly wind-down. Thus, the Debtors are continuing to discuss additional funding with key stakeholders, as well as a resolution of these chapter 11 cases. These negotiations will inform the future of the Debtors' business and provide the Debtors and their stakeholders with the information necessary to formulate a path forward in these cases.

4. The Debtors are at a critical juncture in these chapter 11 cases. Negotiations regarding the Sale Process, wind-down, liquidity, and a potential resolution of these chapter 11 cases are well underway among the Debtors and their key stakeholders. Termination of the Exclusive Periods now would be highly disruptive to the Debtors' cases and current negotiations. Parties would be empowered to walk away from the negotiating table, distracting the Debtors and their advisors from their value-maximizing efforts and increasing the administrative expenses borne by the Debtors' estates—a result these cases cannot afford. Permitting such a scenario to occur would defeat the very purpose of section 1121 of the Bankruptcy Code—to afford the Debtors a meaningful opportunity to propose a confirmable chapter 11 plan based on adequate information that maximizes value for all stakeholders. Termination of exclusivity would also be highly detrimental to the Debtors' business operations, as customers, vendors, and employees would lose further confidence in the Debtors' ability to perform their obligations. The Debtors simply have not had sufficient time to formulate and negotiate an exit strategy with their constituents. These cases have been all-consuming, and the workload has been enormous. Additional time is clearly warranted.

5. For the reasons set forth above and herein, the Debtors' request for an extension of the Exclusive Periods should be granted.

4

**Relief Requested**

6.      By this Motion, pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors request entry of an order extending the periods during which the Debtors have the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") and to solicit acceptances thereof (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**"), each by 90 days through and including April 22, 2026 and June 22, 2026,[3] respectively, without prejudice to the Debtors' right to request further extensions of such periods in accordance with section 1121(d) of the Bankruptcy Code. The Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on January 22, 2026 and March 23, 2026, respectively.[4]

7.      A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

**Background**

8.      On September 24, 2025, Global Assets LLC and 12 of the Debtors in the above-captioned chapter 11 cases each filed with the Court a voluntary case under chapter 11 of the Bankruptcy Code. Commencing on September 28, 2025, First Brands Group, LLC and the remaining Debtors each filed with the Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties

---

[3]    The 90th day following the expiration of the Exclusive Solicitation Period (as extended) would be Sunday, June 21, 2026. However, Bankruptcy Rule 9006(a)(1)(C) provides that when a period is stated in days, "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Bankr. P. 9006(a)(1)(C).

[4]    The Exclusive Filing Period is scheduled to expire on January 22, 2026. However, Rule K.30 of the *Procedures for Complex Cases in the Southern District of Texas* provides that "if a motion is filed that complies with these procedures to extend the time to take any action before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules, or a confirmed plan, the time for taking the action is automatically extended until the Court rules on the motion." By filing this Motion prior to the expiration of the Exclusive Periods, such deadlines are automatically extended until the Court resolves the Motion.

5

as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed in these chapter 11 cases.

9. The Debtors' chapter 11 cases are being jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

10. On October 9, 2025, the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (Docket No. 313) (the "**Creditors' Committee**").

11. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (Docket No. 22) (the "**First Day Declaration**"), filed on September 29, 2025 and incorporated herein by reference.

## Jurisdiction and Venue

12. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested Should be Granted

13. Section 1121(b) of the Bankruptcy Code establishes an initial 120-day period following commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan. Additionally, section 1121(c) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day exclusive filing period, it has an exclusive period of 180 days after the commencement of the chapter 11 case to obtain acceptance of its plan.

6

14.     Under section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause. 11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referenced to in this section.").

15.     The Bankruptcy Code neither defines the term "cause" nor establishes formal criteria for an extension. The legislative history of section 1121 of the Bankruptcy Code indicates, however, that "cause" is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95–595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest); *In re Timbers of Inwood Forrest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) ("[A]ny bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the legislative goal behind § 1121."); *In re Mirant Corp.*, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization.").

16.     The broad discretion conferred on the Court in these circumstances enables the Court to consider a variety of factors to assess the totality of circumstances in each case. *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying factors courts consider in determining whether to extend exclusivity); *In re Washington St. Tammany Elec. Co-op., Inc.*, 97 B.R. 852, 854 (E.D. La. 1989) (noting that the decision to extend exclusivity "rests with the discretion of the Court"); *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643–44 (B.A.P.

7

8th Cir. 2003) (same); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (same).

17.     Courts in this district have considered the *Adelphia* factors when determining whether cause exists to extend exclusivity.  *See, e.g.*, *In re New Millenium Mgmt., LLC*, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (evaluating the factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity).  These non-exclusive factors include:

(i)     the size and complexity of a debtor's case;

(ii)     the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(iii)     the existence of good faith progress towards reorganization;

(iv)     the fact that the debtor is paying its bills as they become due;

(v)     whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(vi)     whether the debtor has made progress in negotiations with its creditors;

(vii)     whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(viii)     whether an unresolved contingency exists.

*See, e.g.*, *Millenium Mgmt.*, 2014 WL 792115, at *6; *see also Adelphia*, 352 B.R. at 587 (noting that the factors listed above are "objective factors which courts historically have considered in making determinations of this character").

18.     Not all factors are relevant to every case, and courts may consider a subset of the above factors in determining whether cause exists to grant an exclusivity extension in a

8

particular chapter 11 case. *See In re Hoffinger Indus., Inc.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."); *In re Serv. Merch. Co., Inc.*, 256 B.R. 744, 751–54 (Bankr. M.D. Tenn. 2000) (finding cause to extend where the debtors established six of the aforementioned factors); *In re Express One Int'l, Inc.*, 194 B.R. 98, 101 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" existed to extend exclusivity); *see also In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors.").

19.     Moreover, courts regularly grant a debtor's first request for an extension of the debtor's exclusive period to file a chapter 11 plan. *See In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which the debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied.") (citation omitted); *see also Borders Grp.*, 460 B.R. at 825 (same).

### Cause Exists to Extend Exclusive Periods

20.     An extension of the Exclusive Periods, in each case, by 90 days is appropriate, in the best interest of the Debtors' stakeholders, and consistent with the intent and purpose of chapter 11 of the Bankruptcy Code. The requested extensions of the Exclusive Periods are necessary and appropriate to enable the Debtors to pursue a global resolution that will maximize the value of the Debtors' estates for the benefit of all stakeholders, without interruption.

9

Application of the relevant *Adelphia* factors to the facts of these chapter 11 cases demonstrates that ample cause exists to grant the reasonable extension of the Exclusive Periods requested herein.

### A. These Chapter 11 Cases are Large and Complex

21. The size and complexity of a debtor's case alone may constitute cause to extend the Exclusive Periods. *See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."). The legislative history of section 1121 provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963.

22. The size and complexity of, and unique legal and factual issues involved in, these chapter 11 cases alone warrant the requested extension of the Exclusive Periods. The Debtors operate a massive, complicated enterprise. There are 112 Debtor entities that, collectively with more than 100 non-Debtor subsidiaries, operate as a leading supplier of aftermarket automotive parts across the world. Their businesses include a global network of manufacturing and distribution centers that spans 5 continents. As of the commencement of these cases, First Brands employed 26,000 individuals globally, including almost 6,000 employees in the United States. The Debtors' portfolio of products includes over 25 iconic brands, including household names such as "FRAM" and "Raybestos." The Debtors are supplied by thousands of vendors and are party to thousands of real property leases and executory contracts that support these businesses.

23. The Debtors also have a complex capital structure. At the time of filing, the Debtors collectively had approximately $6 billion in funded debt obligations, at least $2.3 billion in factoring liabilities, at least $2.3 billion in "off-balance sheet" financing liabilities incurred

10

through SPVs, and approximately $900 million in unsecured supply chain financing liabilities—all under more than 10 separate facilities with 8 different agents.  These facilities are secured by siloed collateral—for some—and overlapping collateral—for others.

24.     Further complicating the Debtors' capital structure, certain purported prepetition transfers of inventory and other assets from the FBG Debtors to the SPV Debtors have resulted in certain of the Debtors' creditors asserting competing legal rights and priorities with respect to the same collateral compounding the legal and factual issues in these cases.  These transactions have raised questions among the Debtors' creditors as to the validity, extent, and priority of their liens, resulting in an onslaught of litigation and related activity from their off-balance sheet financing counterparties, including: (i) objections to the Debtors' motions for approval of DIP financing and use of their cash management system; (ii) appointment of an examiner; (iii) motions for the appointment of a chapter 11 trustee for certain Debtors; (iv) motions to dismiss the chapter 11 cases of certain Debtors; (v) motions to lift the automatic stay to allow creditors to seek to enforce against their collateral; (vi) objections to the retention of the Debtors' and the Creditors' Committee's advisors; (vii) the commencement of an adversary proceeding against the Debtors seeking a declaratory judgment with respect to the validity and priority of liens; (viii) requests for the production of tens of thousands of documents; and (ix) objections to the Debtors' motion to establish third-party factoring procedures for the reconciliation of the Debtors' receipts and the release of funds to the Debtors' estates and third-party factors.

25.     The sheer scope of the Debtors' operations and capital structure required the Debtors to raise $1.1 billion of DIP financing at the beginning of these cases to fund the chapter 11 process.  The financing process was complicated and required multiple contested hearings.  It also involved negotiating numerous adequate protection stipulations with the Debtors'

SPV lenders to allow for the Debtors' continued use of collateral, including inventory and equipment necessary to operate their businesses and fill customer orders. Ultimately, a settlement was reached with various objecting parties, including the Creditors' Committee, with respect to the Debtors' DIP facility.

26. In addition, prior to and continuing after the commencement of these cases, the Special Committee and the Debtors' advisors conducted extensive diligence and discovery in furtherance of the Investigation, leading to the uncovering of, among other things, significant fraud and grievous misconduct by the Debtors' prior management. Specifically, the misconduct uncovered to date relates to the Debtors' (i) prepetition third-party factoring practices involving the sale of erroneous, substantially altered, and fabricated invoices to third-party factors; (ii) prepetition off-balance sheet financing practices with SPVs including double-pledging of collateral (the findings in (i) and (ii) lead to the Debtors' commencement of the Founder Adversary Proceeding); and (iii) prepetition financing arrangements with Onset involving a former executive vice president, board member, and officer of the Debtors pursuant to which Onset obtained exorbitant returns and the former executive enriched himself at the Debtors' expense (the findings in (iii) lead to the Debtors' commencement of an adversary proceeding against Onset and Edward James). Importantly, these discoveries have materially compounded the already-significant legal and financial issues raises in these cases.

27. The Investigation is supported by the Debtors' advisors, and it, along with the prosecution of the Adversary Proceedings, have required substantial resources to uncover the nature and extent of misconduct and potential claims. This ongoing work is critical, as it will continue to identify potential estate claims and causes of action that will be used to fund creditor

recoveries. In addition, the Court has appointed an examiner, whose separate independent investigation will shed further light on these issues.[5]

28.     Moreover, the Debtors are now in the midst of their Sale Process. On January 8, 2026, the Debtors filed a motion seeking approval of bidding procedures, which will govern the marketing and sale of the Debtors' assets. Shortly before filing such motion, the Debtors commenced broad outreach to potential bidders. Approximately 120 have executed nondisclosure agreements and accessed the Debtors' data room. With the bid deadline of January 30th approaching, the Debtors will have information critical to the Debtors' formulation of a case resolution strategy soon. The stakes and importance of the Debtors' exclusivity at this critical juncture could not be higher.

29.     In cases of this size and complexity, 120 days to formulate, achieve consensus on, and prosecute a chapter 11 plan is inadequate. As in other large and complex chapter 11 cases, the initial Exclusive Periods do not provide remotely sufficient time to achieve the objectives of the Bankruptcy Code. These chapter 11 cases are indisputably of the size and complexity that Congress and courts have recognized warrant extensions of the Exclusive Periods as requested.

> **B.     There Has Not Been Sufficient Time to Permit the Debtors to Negotiate and Prosecute a Chapter 11 Plan and the Debtors Have Demonstrated Good Faith Progress Towards Achieving the Objectives of Chapter 11**

30.     This is the Debtors' first motion for an extension of the Exclusive Periods. The Debtors are not even four months into these chapter 11 cases, which is not enough time to formulate and prosecute a chapter 11 plan in most chapter 11 cases, let alone cases of this magnitude and complexity as described above.

---

[5]    *See* Order Approving Appointment of Examiner (Docket No. 1260).

31.     Notwithstanding the short duration of these cases, the Debtors have made substantial progress to date.  During the first few months, the Debtors' primary focus has been to stabilize their businesses by securing financing, improving customer and vendor relations, gaining a better understanding of the Debtors' capital structure and claims, progressing the Investigation, and commencing negotiations with their key stakeholders on a value-maximizing path forward.

32.     To stabilize their business, the Debtors (i) secured $1.1 billion of new money DIP financing, (ii) negotiated and executed multiple stipulations with inventory financing counterparties, (iii) negotiated agreements with customers and vendors to ensure the continued flow of goods, (iv) made necessary changes to their corporate governance, including reconstituting the Debtors' senior management, and (v) reconciled prepetition accounts receivable and negotiated procedures with factoring counterparties for the release of certain unencumbered funds, among other actions.

33.     Further, at the direction of the Special Committee, the Debtors and their advisors have made substantial progress with respect to the Investigation.  Specifically, the Debtors and their advisors have (i) conducted over two dozen formal interviews with current and former employees, (ii) collected and imaged key physical evidence, (iii) reviewed hundreds of thousands of documents, (iv) issued Rule 2004 requests to multiple parties, (v) launched a whistleblower hotline, and (vi) analyzed large volumes of bank and other financial records.  As a direct result of these efforts, the Debtors have commenced the Adversary Proceedings seeking to avoid fraudulent transfers and collect billions of dollars of estate property.

34.     In addition to the foregoing, during the first four months of these chapter 11 cases, the Debtors have:

- filed approximately 12,000 pages of schedules and statements;

- obtained approval of procedures for the assumption and rejection of executory contracts;

- facilitated the flow of information and diligence materials and maintained near-constant coordination with the Creditors' Committee and Ad Hoc Group with respect to numerous issues in these chapter 11 cases;

- worked with the U.S. Trustee to comply with the U.S. Trustee's operating guidelines and provide information to the U.S. Trustee;

- responded to countless inquiries related to the status of these cases, specific contract counterparty demands, and other matters related to ongoing operations and the administration of these cases;

- launched a broad Sale Process for their assets, including outreach to over 280 potential bidders, to maximize the value of the Debtors' estates;

- hosted numerous in-person meetings with various stakeholders, including the Ad Hoc Group, Creditors' Committee, and certain SPV lenders, in an attempt to resolve the multitude of disputes that have arisen during these chapter 11 cases;

- coordinated with the Examiner with respect to his investigation, including participating in numerous meetings and facilitating the exchange of diligence; and

- continued to explore capital sources and work with key stakeholders, including the SPV lenders, customers, and vendors to enhance the Debtors' liquidity.

35.     Notwithstanding the significant progress made to date, the administration of these chapter 11 cases and the negotiation, formulation, filing, and prosecution of a global resolution of these chapter 11 cases will require additional time and effort.  While the Debtors acknowledge their challenging liquidity situation, they are actively engaging with all stakeholders on additional funding and case resolution.  Terminating exclusivity at this stage of the chapter 11 cases will only add uncertainty and undermine the Debtors' efforts to build consensus among stakeholders.  Under these circumstances, the requested extensions of the Exclusive Periods are necessary and appropriate to afford the Debtors the opportunity to achieve the objectives of chapter 11 as contemplated by section 1121 of the Bankruptcy Code.

15

**C.     The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan**

36.     The first phase of these chapter 11 cases have centered on stabilizing the Debtors' businesses and preparing to launch the Sale Process.  Although the Debtors are currently highly focused on the Sale Process and an orderly wind-down, the Debtors have begun formulating and evaluating the contours of a case funding and resolution strategy and are concurrently engaged in discussions with their stakeholders on the same.  In connection with such discussions, the Debtors remain in regular contact with their key stakeholders, including the Ad Hoc Group, the ABL lenders, the SPV lenders, and the Creditors' Committee, holding multiple recurring calls on a weekly basis.  Given the constant engagement with their stakeholders and current negotiations, the Debtors have demonstrated reasonable prospects for filing a viable chapter 11 plan.

**D.     The Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors to Submit to the Debtors' Demands**

37.     This is the Debtors' first request for extensions of the Exclusive Periods.  The Debtors' conduct in these chapter 11 cases, including consultation with their key stakeholders at virtually every step, demonstrates that the Debtors are acting in a prudent and transparent manner and are not seeking these extensions to artificially delay the administration of these chapter 11 cases or to hold creditors hostage to an unsatisfactory plan proposal.  Simply put, there has been no real opportunity for the Debtors to propose and file a plan during the short period of time since the filing of these chapter 11 cases.  The size and complexity of these chapter 11 cases are patent and, together with what has transpired to date, establish more than adequate cause for the requested extensions.

38.     Additionally, the Debtors' relationship with their key economic stakeholders, including the Ad Hoc Group, the ABL lenders, the Creditors' Committee, and each group's professionals, is transparent, cooperative, and constructive.  The Debtors have held

numerous meetings and negotiation sessions with these creditor constituencies to discuss virtually every issue in these cases, including DIP financing, the Investigation, the Sale Process, and potential wind-down, among other discrete issues.

39.     Further, the Debtors have openly engaged with the SPV lenders and various factoring counterparties.  The Debtors and their advisors have maintained an open line of communication and provided the SPV lenders and factors with access to significant information in effort to achieve as much consensus as possible.

40.     The request for extending the Exclusive Periods is not a negotiation tactic but rather reflects that these cases are not yet sufficiently mature for the formulation, filing, and prosecution of a feasible—and hopefully consensual—chapter 11 plan.

41.     Finally, this Motion is without prejudice to any party seeking to shorten the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.  *See* 11 U.S.C. § 1121(d). As such, no party in interest will be prejudiced if the requested extensions are approved.

### E.     Important Contingencies Must be Resolved by the Debtors

42.     Courts have recognized the need to resolve important contingencies as justification for extending the Exclusive Periods. *See, e.g.*, *Borders*, 460 B.R. at 826; *Adelphia Commc'ns*, 352 B.R. at 587.  Notwithstanding the progress that has been made by the Debtors to date, open issues remain.  The Debtors need additional time to address key issues, including, among others: (i) negotiations with key economic stakeholders with respect to additional case funding and resolution; (ii) resolution of the matters being investigated by the Special Committee, the Creditors' Committee and the Examiner; and (iii) if the Debtors' business lines are not sold as a going concern, the Debtors will have to execute a strategy to wind them down in an organized, value-maximizing manner.

43.     The extension of the Exclusive Periods as requested will not prejudice any party in interest but rather will afford the Debtors a realistic opportunity to negotiate a resolution of these chapter 11 cases.  Failure to extend the Exclusive Periods as requested herein would defeat the very purpose of section 1121 of the Bankruptcy Code, *i.e.*, to provide the Debtors with a meaningful and reasonable opportunity to propose a confirmable chapter 11 plan.  The termination of Exclusive Periods could lead to unnecessary adversarial situations with potentially multiple competing plans on file, and the litigation costs attendant therewith would be to the detriment of all parties in interest.

### F.     The Debtors are Satisfying Administrative Expenses

44.     Courts considering an extension of exclusivity also may consider whether a debtor has been paying costs and expenses of administration.  *Adelphia Commc'ns*, 352 B.R. at 587; *Texaco*, 76 B.R. at 322.  Here, the Debtors have been paying ordinary course administrative expenses as they have come due.

### G.     Relatively Little Time Has Elapsed Since the Chapter 11 Cases Were Commenced

45.     This is the Debtors' first request to extend the Exclusive Periods, and it comes less than four (4) months after the commencement of these cases.  Courts in this district have routinely granted initial requests by debtors to extend their exclusive periods to file and solicit a chapter 11 plan.  *See, e.g.*, *In re TPI Composites, Inc.*, Case No. 25-34655 (CML) (Bankr. S.D. Tex. Jan. 5, 2026) (Docket No. 584) (granting 120-day extension); *In re Robertshaw US Holding Corp.*, Case No. 24-90052 (CML) (Bankr. S.D. Tex. June 6, 2024) (Docket No. 621) (granting 120-day extension); *In re Seadrill Ltd.*, No. 21-30427 (Bankr. S.D. Tex. Jul. 1, 2021) (Docket No. 829) (granting 120-day extension).  For the reasons stated above, the relief requested herein is appropriate and in the best interests of the Debtors and their estates.

## **Notice**

46.     Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## **No Previous Request**

47.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 22, 2026
       Houston, Texas

                      /s/ Clifford W. Carlson
                      WEIL, GOTSHAL & MANGES LLP
                      Gabriel A. Morgan (24125891)
                      Clifford W. Carlson (24090024)
                      700 Louisiana Street, Suite 3700
                      Houston, Texas 77002
                      Telephone: (713) 546-5000
                      Facsimile: (713) 224-9511
                      Email: gabriel.morgan@weil.com
                               clifford.carlson@weil.com

                      -and-

                      WEIL, GOTSHAL & MANGES LLP
                      Matthew S. Barr (admitted *pro hac vice*)
                      Sunny Singh (admitted *pro hac vice*)
                      Andriana Georgallas (admitted *pro hac vice*)
                      Kevin Bostel (admitted *pro hac vice*)
                      Jason H. George (admitted *pro hac vice*)
                      767 Fifth Avenue
                      New York, New York 10153
                      Telephone: (212) 310-8000
                      Facsimile: (212) 310-8007
                      Email: matt.barr@weil.com
                                sunny.singh@weil.com
                                andriana.georgallas@weil.com
                                kevin.bostel@weil.com
                                jason.george@weil.com

                      *Attorneys for Debtors*
                      *and Debtors in Possession*

## Certificate of Service

I hereby certify that on January 22, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

 /s/  Clifford W. Carlson
Clifford W. Carlson

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| FIRST BRANDS GROUP, LLC, *et al.*, | § | Case No. 25-90399 (CML) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |

## ORDER EXTENDING EXCLUSIVE PERIODS

Upon the motion, dated January 22, 2026 (the "**Motion**"),[2] of First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order extending the Exclusive Filing Period and Exclusive Solicitation Period by 90 days, pursuant to section 1121(d) of the Bankruptcy Code, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and upon any hearing held on the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1. Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Filing Period is extended through and including April 22, 2026.

2. Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Solicitation Period is extended through and including June 22, 2026.

3. The extensions of the Exclusive Periods granted herein are without prejudice to the Debtors' rights to seek from this Court further extensions of time pursuant to section 1121(d) of the Bankruptcy Code.

4. Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no other or further notice of the Motion or entry of this Order shall be required.

5. The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Order.

6. This Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2026
      Houston, Texas

                                     _____
                                     CHRISTOPHER LOPEZ
                                     UNITED STATES BANKRUPTCY JUDGE