# EXHIBIT 3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.[1]** | § | |

**MOTION OF DEBTORS FOR AN ORDER**
**FURTHER EXTENDING EXCLUSIVE PERIODS**
**PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED.  IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, "**First Brands**"), respectfully represent as follows:

**Preliminary Statement[2]**

1.      Since filing the First Exclusivity Motion, the Debtors have made significant progress to advance these chapter 11 cases.  The Debtors participated in extensive mediation

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms elsewhere in the Motion or in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* (Docket No. 608) (the "**DIP Order**"), as applicable.

overseen by the Honorable Judge Marvin Isgur with, among others, the Ad Hoc Group and the Creditors' Committee, which culminated in a comprehensive agreement (the "**Settlement**") on the terms of the orderly wind down of the FBG Debtors' remaining assets and the distribution of value through multiple trusts to holders of claims. The Debtors, the Ad Hoc Group, and the Creditors' Committee are finalizing a restructuring support agreement with respect to the Settlement and anticipate filing a chapter 11 plan (the "**Plan**") and related disclosure statement (the "**Disclosure Statement**") incorporating the terms of the Settlement as soon as possible.

2. Among other benefits, the Settlement, if implemented, will preserve and maximize the value of estate claims and causes of action by establishing a litigation trust (the "**Litigation Trust**"), funded with $25 million from the FBG Debtors' balance sheet and additional capital that will be provided by certain DIP Lenders. The Settlement will also provide the opportunity for certain holders of claims against the FBG Debtors to participate in recoveries realized by the Litigation Trust. Absent implementation of the Settlement, these holders may not receive any recovery.

3. The Settlement was reached following months of intensive mediation and negotiation and represents the culmination of substantial efforts by the Debtors and their key stakeholders to bring a timely and value-maximizing conclusion to these chapter 11 cases. Now, the Debtors require sufficient time to document and prosecute implementation of the Settlement through the Plan.

4. Beyond reaching an agreement on the terms of the Settlement, the Debtors have continued to make meaningful progress in advancing these chapter 11 cases since filing the First Exclusivity Motion, including by, among other things, (i) negotiating and securing funding from their OEM customers to sustain operations at key business units while pursuing going-

2

concern sales (Docket No. 1848); (ii) consummating the going-concern sale of the Debtors' Walbro business (Docket No. 2154), and (iii) consummating the sale of certain of the Debtors' intellectual property and related assets pertaining to the Debtors' Filters and Plugs,[3] Wipers,[4] and Strongarm[5] business lines (Docket No. 2399). The Walbro sale preserved approximately 600 jobs, and the Debtors are actively seeking to consummate additional going-concern sales, including the sale of their Horizon and Toledo Molding and Die business lines, which, if consummated, could allow the Debtors to preserve more than 1,600 additional jobs.

5.      In short, the Debtors have used the extended Exclusive Periods productively. Despite this significant progress, substantial work remains, including (i) drafting and negotiating definitive documents, including the Plan, Plan supplement documents, Disclosure Statement, and solicitation procedures and (ii) prosecuting the Disclosure Statement, solicitation procedures, and the Plan. These documents will take time to negotiate, and the Debtors also intend on engaging other key stakeholders, including their ABL Lenders, the independent director of the SPV Debtors, and other stakeholders, in Plan negotiations during the extended Exclusive Periods. Accordingly, a further 90-day extension of the Debtors' Exclusive Periods is appropriate and necessary, and should be approved.

6.      The Debtors are at a critical juncture in these chapter 11 cases. If the Exclusive Periods are not extended and control of the administration of the Debtors' estates is

---

[3]   "**Filters and Plugs**" means the business of the Debtors, consisting of the development, design, manufacture, sourcing, marketing, distribution and sale of automotive, commercial and industrial filtration products of oil, air, cabin air and fuel filters, filter components, precision-molded rubber, thermoplastic and elastomer components for vibration and structural control, sealing, isolation and fluid management, and spark plug and ignition products under the brand names of FRAM, LuberFiner, PetroClear, Autolite, Champ and Champion Lab.

[4]   "**Wipers**" means the business of the Debtors, consisting of the development, design, manufacture, sourcing, marketing, distribution and sale of wiper blades under the brand names of Trico, Anco, and ExactFit.

[5]   "**Strongarm**" means the business of the Debtors, consisting of the development, design, manufacture, sourcing, marketing, distribution and sale of lift support products under the brand names of Strongarm, MightyLift and AVM.

3

improperly wrested away now, these chapter 11 cases would be unnecessarily disrupted and value will erode. Such an outcome is contrary to the fundamental objectives of chapter 11 and should not be permitted at this critical juncture, when the Debtors have an agreement on a path forward with the Ad Hoc Group and the Creditors' Committee and are actively working to finalize the definitive documentation and pursue confirmation. Termination of the Exclusive Periods would defeat the very purpose of section 1121 of the Bankruptcy Code—to afford the Debtors a meaningful opportunity to propose a confirmable chapter 11 plan based on adequate information that maximizes value for all stakeholders.

7. The relief requested herein is supported by the Ad Hoc Group, the Creditors' Committee, and the ABL Lenders.

8. For the reasons set forth above and herein, the Debtors' request for a further 90-day extension of the Exclusive Periods should be granted.

**Relief Requested**

9. By this Motion, pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors request entry of an order further extending the periods during which the Debtors have the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") and to solicit acceptances thereof (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**"), each by 90 days through and including July 21, 2026 and September 21, 2026,[6] respectively, without prejudice to the Debtors' right to request further extensions of such periods in accordance with section 1121(d) of the

---

[6] The 90th day following the expiration of the Exclusive Solicitation Period (as extended) would be Sunday, September 20, 2026. However, Bankruptcy Rule 9006(a)(1)(C) provides that when a period is stated in days, "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Bankr. P. 9006(a)(1)(C).

4

Bankruptcy Code. The Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on April 22, 2026 and June 22, 2026, respectively.[7]

10.    A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

### Background

11.    On September 24, 2025, Global Assets LLC and 12 of the Debtors in the above-captioned chapter 11 cases each commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code. Commencing on September 28, 2025, First Brands Group, LLC and the remaining Debtors each commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed in these chapter 11 cases.

12.    The Debtors' chapter 11 cases are being jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

13.    On October 9, 2025, the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (Docket No. 313) (the "**Creditors' Committee**").

---

[7]    The Exclusive Filing Period is currently set to expire on April 22, 2026, and the Exclusive Solicitation Period is currently set to expire on June 22, 2026, pursuant to the First Exclusivity Order (as defined herein). However, Rule K.30 of the *Procedures for Complex Cases in the Southern District of Texas* provides that "if a motion is filed that complies with these procedures to extend the time to take any action before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules, or a confirmed plan, the time for taking the action is automatically extended until the Court rules on the motion." By filing this Motion prior to the expiration of the Exclusive Periods, such deadlines are automatically extended until the Court resolves the Motion.

14. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (Docket No. 22), filed on September 29, 2025 and incorporated herein by reference.

15. On January 22, 2026, the Debtors filed the *Motion of the Debtors for Order Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (Docket No. 1674) (the "**First Exclusivity Motion**"). On February 17, 2026, the Court entered an order (Docket No. 1939) granting the First Exclusivity Motion and extending the Exclusive Filing Period through and including April 22, 2026 and the Exclusive Solicitation Period through and including June 22, 2026, without prejudice to the Debtors' rights to seek further extensions of such periods (the "**First Exclusivity Order**").

## Jurisdiction and Venue

16. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested Should be Granted

17. Section 1121(b) of the Bankruptcy Code establishes an initial 120-day period following commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan. Additionally, section 1121(c) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day exclusive filing period, it has an exclusive period of 180 days after the commencement of the chapter 11 case to obtain acceptance of its plan.

18. Under section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause. 11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a

6

hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referenced to in this section.").

19.     The Bankruptcy Code neither defines the term "cause" nor establishes formal criteria for an extension.  The legislative history of section 1121 of the Bankruptcy Code indicates, however, that "cause" is intended to be a flexible standard to balance the competing interests of a debtor and its creditors.  *See* H.R. Rep. No. 95–595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest); *In re Timbers of Inwood Forrest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) ("[A]ny bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the legislative goal behind § 1121."); *In re Mirant Corp.*, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization.").

20.     The broad discretion conferred on the Court in these circumstances enables the Court to consider a variety of factors to assess the totality of circumstances in each case.  *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying factors courts consider in determining whether to extend exclusivity); *In re Washington St. Tammany Elec. Co-op., Inc.*, 97 B.R. 852, 854 (E.D. La. 1989) (noting that the decision to extend exclusivity "rests with the discretion of the Court"); *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643–44 (B.A.P. 8th Cir. 2003) (same); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (same).

21.     Courts in this district have considered the *Adelphia* factors when determining whether cause exists to extend exclusivity.  *See, e.g.*, *In re New Millennium Mgmt., LLC*, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (evaluating the factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity).  These non-exclusive factors include:

> (i)     the size and complexity of a debtor's case;
>
> (ii)    the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;
>
> (iii)   the existence of good faith progress towards reorganization;
>
> (iv)    the fact that the debtor is paying its bills as they become due;
>
> (v)     whether the debtor has demonstrated reasonable prospects for filing a viable plan;
>
> (vi)    whether the debtor has made progress in negotiations with its creditors;
>
> (vii)   whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
>
> (viii)  whether an unresolved contingency exists.

*See, e.g.*, *Millennium Mgmt.*, 2014 WL 792115, at *6; *see also Adelphia*, 352 B.R. at 587 (noting that the factors listed above are "objective factors which courts historically have considered in making determinations of this character").

22.     Not all factors are relevant to every case, and courts may consider a subset of the above factors in determining whether cause exists to grant an exclusivity extension in a particular chapter 11 case.  *See In re Hoffinger Indus., Inc.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) ("It is within the discretion of the bankruptcy court to decide which factors

are relevant and give the appropriate weight to each."); *In re Serv. Merch. Co., Inc.*, 256 B.R. 744, 751–54 (Bankr. M.D. Tenn. 2000) (finding cause to extend where the debtors established six of the aforementioned factors); *In re Express One Int'l, Inc.*, 194 B.R. 98, 101 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" existed to extend exclusivity); *see also In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors.").

23. Moreover, courts in this district routinely grant extensions of exclusivity through the statutory period specifically to allow debtors to solicit, confirm, and implement chapter 11 plans. *See, e.g.*, *In re Everstream Sol'ns LLC*, Case No. 25-90144 (CML) (Bankr. S.D. Tex. Feb. 17, 2026) (granting exclusivity extension of 90 days after plan had been filed); *In re Steward Health Care System LLC*, Case No. 24-90213 (CML) (Bankr. S.D. Tex. July 17, 2025) (Docket No. 5710) (granting exclusivity extension of more than 130 days after plan had been filed); *In re Core Scientific, Inc.*, Case No. 22-90341 (CML) (Bankr. S.D. Tex. November 9, 2023) (Docket No. 1396) (granting exclusivity extension of 60 days after plan had been filed); *In re Talen Energy Supply, LLC*, Case No. 22-90054 (MI) (Bankr. S.D. Tex. Jan. 13, 2023) (Docket No. 1820) (granting exclusivity extension of more than 190 days after plan had been filed); *In re Fieldwood Energy LLC*, Case No. 20-33948 (MI) (Bankr. S.D. Tex. Jan. 8, 2021) (Docket No. 751) (granting exclusivity extension of 90 days after plan had been filed).

## **Cause Exists to Extend Exclusive Periods**

24. A further extension of the Exclusive Periods, in each case, by 90 days is appropriate, in the best interest of the Debtors' stakeholders, and consistent with the intent and

purpose of chapter 11 of the Bankruptcy Code. The requested extensions of the Exclusive Periods are necessary and appropriate to enable the Debtors to seek approval of the Disclosure Statement, solicit acceptances of the Plan, prosecute the Plan through confirmation, and achieve a global resolution to these chapter 11 cases, for the benefit of all stakeholders, without the risk of completing plans and the attendant disruption, expense, and delay. Application of the relevant *Adelphia* factors to the facts of these chapter 11 cases demonstrates that ample cause exists to grant the reasonable extension of the Exclusive Periods requested herein.

**A. The Debtors Have Made Substantial Progress Toward Confirmation of the Plan and Significant Progress in these Chapter 11 Cases**

25. The Debtors have made substantial progress toward confirming a chapter 11 plan since filing the First Exclusivity Motion, as outlined below.

**i. The Debtors Are Finalizing a Case Resolution Settlement with Key Stakeholders**

26. Since filing the First Exclusivity Motion, the Debtors' primary focus has been on pursuing going-concern sales and a comprehensive resolution of these chapter 11 cases. After months of participating in mediation, the Debtors, the Ad Hoc Group, and the Creditors' Committee agreed to a comprehensive settlement and are finalizing a restructuring support agreement, which will pave the way for the Debtors to file a chapter 11 plan and disclosure statement. The Plan, which the Debtors anticipate filing in the coming weeks, will incorporate the terms of the Settlement described above.

27. The Debtors firmly believe the Plan will maximize the value of the estates' assets and is the best outcome possible in these highly complex and challenging chapter 11 cases.

**ii. The Debtors Have Consummated Multiple Sales**

28. Since filing the First Exclusivity Motion, the Debtors have consummated two sales after months of intense negotiations with potential purchasers and key stakeholders,

including their OEM funding parties and lenders. First, on March 16, 2026, the Debtors consummated the going-concern sale of its Walbro business for an aggregate purchase price of $50 million in cash plus certain assumed liabilities. The sale preserved approximately 600 jobs. The sale also included a mediated resolution among the ABL Lenders, the Ad Hoc Group, and Onset as to the allocation of sale proceeds with respect to disputed interests in the transferred assets.

29.     Second, on April 13, 2026, the Debtors consummated the sale of certain of its intellectual property and related assets for an aggregate purchase price of $25 million in cash plus additional payments over time and certain assumed liabilities. Each sale was the product of a robust, multi-month marketing process and arm's-length negotiations.

30.     Furthermore, the Debtors are actively pursuing additional going-concern sales of other business lines that have the potential to save a significant number of jobs and bring in additional proceeds to the estates. The Debtors hope to file motions to approve these additional sales as soon as possible.

### iii.     The Debtors Have Made Substantial Other Progress in Administering Their Estates

31.     In addition to the Settlement and sales, the Debtors have taken numerous other critical steps to advance these chapter 11 cases and maximize value for all stakeholders, including:

- preserving the value of the claims asserted in the James Adversary Proceeding and the Onset Adversary Proceeding, including obtaining a stay of these proceedings to allow the case resolution negotiations to be completed;

- obtaining Court approval to retain Hilco to conduct an orderly wind down of the Debtors' businesses that will not be sold as a going concern, including monetizing remaining inventory and outstanding accounts receivable, and negotiating with over twenty stakeholders, including the Debtors' secured

11

lenders, the Creditors' Committee, landlords, and factoring counterparties, to achieve a consensual resolution of such retention;

- rejecting contracts and leases that are not desired by potential purchasers of the Debtors' assets, or are burdensome to the Debtors' estates, to limit administration costs, and facilitating the assumption and assignment of contracts and leases to purchasers;

- negotiating stipulations with various landlords providing for extensions of time to assume or reject nonresidential real property leases;

- minimizing estate costs and expenses by negotiating and filing several stipulations providing for the abandonment of certain goods and materials burdensome to the Debtors' estates;

- continuing to reconcile prepetition accounts receivable and seeking release of unencumbered funds that were not sold to third-party factors, including responding to a third-party factor's appeal of an order authorizing the release of segregated funds, opposing an adversary proceeding seeking to establish a lien in the segregated funds, and facilitating document production with certain factors in support of such efforts;

- negotiating a fully consensual conversion of certain of the SPV Debtors (*i.e.*, Starlight and Patterson) to chapter 7 with Evolution, the ABL Lenders, Creditors' Committee, U.S. Trustee and other stakeholders; and

- securing funding for the Examiner's investigation and continued coordination with the Examiner with respect to his investigation.

32.     In light of the substantial progress made in these chapter 11 cases, on this basis alone, the requested extension of the Exclusive Periods is warranted.  *See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 588 (Bankr. S.D.N.Y. 2006) (viewing the good faith progress factor "as one of the more important factors" in the analysis).

33.     Notwithstanding the substantial progress made in these chapter 11 cases, additional work remains.  The Debtors still need to negotiate the definitive documents implementing the Plan and also intend on engaging in negotiations with other key stakeholders, including the ABL Lenders and other stakeholders, to build as much consensus in support of the Plan as possible.  The Debtors also need time to solicit and seek approval of the Plan.  Under these

circumstances, the requested extensions of the Exclusive Periods are necessary and appropriate to afford the Debtors the full and fair opportunity to achieve the objectives of chapter 11 as contemplated by section 1121 of the Bankruptcy Code.

### B.     These Chapter 11 Cases Are Large and Complex

34.     The size and complexity of the Debtors' businesses and the complexity of these chapter 11 cases also support an extension of the Exclusive Periods. *See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."). The legislative history of section 1121 provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963.

35.     Without question, the Debtors meet the above standard. As set forth in greater detail in the First Exclusivity Motion, the Debtors are comprised of 112 entities. Their prepetition businesses included a global network of manufacturing and distribution centers that spanned 5 continents. As of the commencement of these cases, First Brands employed 26,000 individuals globally, including almost 6,000 employees in the United States.

36.     The Debtors also have a complex capital structure. At the time of filing, the Debtors collectively had more than $11 billion of prepetition obligations, including approximately $6 billion in funded debt obligations, at least $2.3 billion in factoring liabilities, at least $2.3 billion in "off-balance sheet" financing liabilities incurred through SPVs, and approximately $900 million in unsecured supply chain financing liabilities. The sheer scope of the Debtors' operations and

capital structure required the Debtors to raise $1.1 billion of DIP financing at the beginning of these cases to fund the chapter 11 process.

37. Further complicating the Debtors' capital structure, as has been documented extensively throughout these chapter 11 cases, the prepetition activities of the company under prior management have resulted in certain of the Debtors' creditors asserting competing legal rights and priorities with respect to the same collateral compounding the legal and factual issues in these cases. These transactions have raised questions among the Debtors' creditors as to the validity, extent, and priority of their liens, resulting in an onslaught of litigation and related activity from their off-balance sheet financing counterparties.

38. These cases have been further complicated by the prepetition conduct of the Debtors' former management team. Their conduct has made these cases particularly difficult to prosecute by, among other things, rendering the Debtors' books and records unreliable, which has hindered the Debtors' sale and capital raising efforts and caused distrust amongst the Debtors' customers and vendors. Recently, two of the Debtors' former executives, including their founder and former CEO Patrick James and his brother Edward James, were indicted by the United States Department of Justice and charged with crimes in connection with their management of First Brands.[8] The indictment of Patrick James charges him with managing a continuing financial crimes enterprise. Additional former executives of the Debtors, including the Debtors' former CFO and the Debtors' former VP of Finance, have pleaded guilty in connection with the indictments.

---

[8] *See* First Brands Executives Charges with Multibillion-Dollar Fraud, available at https://www.justice.gov/usao-sdny/pr/first-brands-executives-charged-multibillion-dollar-fraud.

39.    In short, these chapter 11 cases are indisputably of the size and complexity that Congress and courts have recognized warrant extensions of the Exclusive Periods as requested.

**C.    The Debtors Will File a Viable Plan**

40.    As discussed above, the Debtors have reached an agreement, after extensive mediation led by Judge Isgur, with their key creditor groups, including the Ad Hoc Group and the Creditors' Committee, on a chapter 11 plan, and anticipate filing the Plan and Disclosure Statement in the coming weeks.  The Debtors will then turn their focus to seeking approval of the Disclosure Statement and confirmation of the Plan.  Accordingly, the Debtors have made substantial progress in negotiations with creditors and demonstrated reasonable prospects for filing a viable plan.

**D.    An Extension of the Exclusive Periods Will Not Prejudice Creditors**

41.    An extension of the Exclusive Periods will not prejudice any of the Debtors' stakeholders.  On the contrary, an extension of the Exclusive Periods will enable the Debtors to finalize the Plan and Disclosure Statement, seek approval of their Disclosure Statement, commence solicitation of the Plan supported by key stakeholder groups, and move forward with confirmation and implementation of the Plan.  To terminate exclusivity now and allow for a competing plan process at this juncture in these chapter 11 cases would jeopardize or otherwise undermine the Debtors' efforts to date and adversely impact their ability to achieve a consensual chapter 11 plan.  Thus, the Debtors believe that an extension of the Exclusive Periods is in the best interest of the Debtors and their stakeholders.

42.    Additionally, the Debtors' relationship with their key economic stakeholders, including the Ad Hoc Group, the Creditors' Committee, and the ABL Lenders, is transparent, cooperative, and constructive.  The Debtors have held numerous meetings and negotiation sessions with these creditor constituencies to discuss virtually every issue in these

cases, including DIP financing, the investigation into prepetition activities, the sale process, and the Plan, among other discrete issues. The request for extending the Exclusive Periods is not a negotiation tactic, but rather reflects that the Debtors require additional time in these immensely complex chapter 11 cases to finalize the definitive documents that will implement the Settlement achieved in mediation and pursue confirmation of the Plan.

43. Finally, this Motion is without prejudice to any party seeking to shorten the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code. *See* 11 U.S.C. § 1121(d). As such, no party in interest will be prejudiced if the requested extensions are approved.

**E. Relatively Little Time Has Elapsed Considering the Nature of These Cases**

44. This is the Debtors' second request to extend the Exclusive Periods, and it comes approximately seven months after the commencement of these cases. Considering the nature and magnitude of these chapter 11 cases, relatively little time has elapsed. Courts in this district have routinely granted further requests by debtors to extend their exclusive periods to file and solicit a chapter 11 plan, particularly where, as here, the debtors have demonstrated substantial progress. *See, e.g.*, *In re Steward Health Care System LLC*, Case No. 24-90213 (CML) (Bankr. S.D. Tex. July 17, 2025) (Docket No. 5710) (granting fifth exclusivity motion extending exclusivity deadlines by more than 130 days); *In re Core Scientific, Inc.*, Case No. 22-90341 (CML) (Bankr. S.D. Tex. November 9, 2023) (Docket No. 1396) (granting third exclusivity motion extending exclusivity deadlines by 60 days); *In re Fieldwood Energy LLC*, Case No. 20-33948 (MI) (Bankr. S.D. Tex. July 13, 2021) (Docket No. 1873) (granting third exclusivity motion extending exclusivity deadlines by 60 days).

## **Notice**

45.     Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## **Prior Requests**

46.     Except for the First Exclusivity Motion, no previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: April 22, 2026
      Houston, Texas

    /s/  Clifford W. Carlson
WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:  gabriel.morgan@weil.com
        clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  matt.barr@weil.com
        sunny.singh@weil.com
        andriana.georgallas@weil.com
        kevin.bostel@weil.com
        jason.george@weil.com

*Attorneys for Debtors and Debtors in Possession*

**Certificate of Service**

I hereby certify that on April 22, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Clifford W. Carlson
Clifford W. Carlson

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

## ORDER FURTHER EXTENDING EXCLUSIVE PERIODS

Upon the motion, dated April 22, 2026 (the "**Motion**"),[2] of First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order, pursuant to section 1121(d) of the Bankruptcy Code, further extending the Exclusive Filing Period and Exclusive Solicitation Period by 90 days, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and upon any hearing held on the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1. Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Filing Period is further extended through and including July 21, 2026.

2. Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Solicitation Period is further extended through and including September 21, 2026.

3. The extensions of the Exclusive Periods granted herein are without prejudice to the Debtors' rights to seek from this Court further extensions of time pursuant to section 1121(d) of the Bankruptcy Code.

4. Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no other or further notice of the Motion or entry of this Order shall be required.

5. The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Order.

6. This Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2026
      Houston, Texas

_____
CHRISTOPHER LOPEZ
UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

**MOTION OF DEBTORS FOR AN ORDER**
**FURTHER EXTENDING EXCLUSIVE PERIODS**
**PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, "**First Brands**"), respectfully represent as follows:

**Preliminary Statement[2]**

1. Since filing the First Exclusivity Motion, the Debtors have made significant progress to advance these chapter 11 cases. The Debtors participated in extensive mediation

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms elsewhere in the Motion or in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* (Docket No. 608) (the "**DIP Order**"), as applicable.

overseen by the Honorable Judge Marvin Isgur with, among others, the Ad Hoc Group and the Creditors' Committee, which culminated in a comprehensive agreement (the "**Settlement**") on the terms of the orderly wind down of the FBG Debtors' remaining assets and the distribution of value through multiple trusts to holders of claims. The Debtors, the Ad Hoc Group, and the Creditors' Committee are finalizing a restructuring support agreement with respect to the Settlement and anticipate filing a chapter 11 plan (the "**Plan**") and related disclosure statement (the "**Disclosure Statement**") incorporating the terms of the Settlement as soon as possible.

2.  Among other benefits, the Settlement, if implemented, will preserve and maximize the value of estate claims and causes of action by establishing a litigation trust (the "**Litigation Trust**"), funded with $25 million from the FBG Debtors' balance sheet and additional capital that will be provided by certain DIP Lenders. The Settlement will also provide the opportunity for certain holders of claims against the FBG Debtors to participate in recoveries realized by the Litigation Trust. Absent implementation of the Settlement, these holders may not receive any recovery.

3.  The Settlement was reached following months of intensive mediation and negotiation and represents the culmination of substantial efforts by the Debtors and their key stakeholders to bring a timely and value-maximizing conclusion to these chapter 11 cases. Now, the Debtors require sufficient time to document and prosecute implementation of the Settlement through the Plan.

4.  Beyond reaching an agreement on the terms of the Settlement, the Debtors have continued to make meaningful progress in advancing these chapter 11 cases since filing the First Exclusivity Motion, including by, among other things, (i) negotiating and securing funding from their OEM customers to sustain operations at key business units while pursuing going-

concern sales (Docket No. 1848); (ii) consummating the going-concern sale of the Debtors' Walbro business (Docket No. 2154), and (iii) consummating the sale of certain of the Debtors' intellectual property and related assets pertaining to the Debtors' Filters and Plugs,[3] Wipers,[4] and Strongarm[5] business lines (Docket No. 2399). The Walbro sale preserved approximately 600 jobs, and the Debtors are actively seeking to consummate additional going-concern sales, including the sale of their Horizon and Toledo Molding and Die business lines, which, if consummated, could allow the Debtors to preserve more than 1,600 additional jobs.

5.      In short, the Debtors have used the extended Exclusive Periods productively. Despite this significant progress, substantial work remains, including (i) drafting and negotiating definitive documents, including the Plan, Plan supplement documents, Disclosure Statement, and solicitation procedures and (ii) prosecuting the Disclosure Statement, solicitation procedures, and the Plan. These documents will take time to negotiate, and the Debtors also intend on engaging other key stakeholders, including their ABL Lenders, the independent director of the SPV Debtors, and other stakeholders, in Plan negotiations during the extended Exclusive Periods. Accordingly, a further 90-day extension of the Debtors' Exclusive Periods is appropriate and necessary, and should be approved.

6.      The Debtors are at a critical juncture in these chapter 11 cases. If the Exclusive Periods are not extended and control of the administration of the Debtors' estates is

---

[3]    "**Filters and Plugs**" means the business of the Debtors, consisting of the development, design, manufacture, sourcing, marketing, distribution and sale of automotive, commercial and industrial filtration products of oil, air, cabin air and fuel filters, filter components, precision-molded rubber, thermoplastic and elastomer components for vibration and structural control, sealing, isolation and fluid management, and spark plug and ignition products under the brand names of FRAM, LuberFiner, PetroClear, Autolite, Champ and Champion Lab.

[4]    "**Wipers**" means the business of the Debtors, consisting of the development, design, manufacture, sourcing, marketing, distribution and sale of wiper blades under the brand names of Trico, Anco, and ExactFit.

[5]    "**Strongarm**" means the business of the Debtors, consisting of the development, design, manufacture, sourcing, marketing, distribution and sale of lift support products under the brand names of Strongarm, MightyLift and AVM.

improperly wrested away now, these chapter 11 cases would be unnecessarily disrupted and value will erode. Such an outcome is contrary to the fundamental objectives of chapter 11 and should not be permitted at this critical juncture, when the Debtors have an agreement on a path forward with the Ad Hoc Group and the Creditors' Committee and are actively working to finalize the definitive documentation and pursue confirmation. Termination of the Exclusive Periods would defeat the very purpose of section 1121 of the Bankruptcy Code—to afford the Debtors a meaningful opportunity to propose a confirmable chapter 11 plan based on adequate information that maximizes value for all stakeholders.

7. The relief requested herein is supported by the Ad Hoc Group, the Creditors' Committee, and the ABL Lenders.

8. For the reasons set forth above and herein, the Debtors' request for a further 90-day extension of the Exclusive Periods should be granted.

**Relief Requested**

9. By this Motion, pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors request entry of an order further extending the periods during which the Debtors have the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") and to solicit acceptances thereof (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**"), each by 90 days through and including July 21, 2026 and September 21, 2026,[6] respectively, without prejudice to the Debtors' right to request further extensions of such periods in accordance with section 1121(d) of the

---

6    The 90th day following the expiration of the Exclusive Solicitation Period (as extended) would be Sunday, September 20, 2026. However, Bankruptcy Rule 9006(a)(1)(C) provides that when a period is stated in days, "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Bankr. P. 9006(a)(1)(C).

Bankruptcy Code. The Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on April 22, 2026 and June 22, 2026, respectively.[7]

10. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

### Background

11. On September 24, 2025, Global Assets LLC and 12 of the Debtors in the above-captioned chapter 11 cases each commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code. Commencing on September 28, 2025, First Brands Group, LLC and the remaining Debtors each commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed in these chapter 11 cases.

12. The Debtors' chapter 11 cases are being jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

13. On October 9, 2025, the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (Docket No. 313) (the "**Creditors' Committee**").

---

[7] The Exclusive Filing Period is currently set to expire on April 22, 2026, and the Exclusive Solicitation Period is currently set to expire on June 22, 2026, pursuant to the First Exclusivity Order (as defined herein). However, Rule K.30 of the *Procedures for Complex Cases in the Southern District of Texas* provides that "if a motion is filed that complies with these procedures to extend the time to take any action before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules, or a confirmed plan, the time for taking the action is automatically extended until the Court rules on the motion." By filing this Motion prior to the expiration of the Exclusive Periods, such deadlines are automatically extended until the Court resolves the Motion.

14.     Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (Docket No. 22), filed on September 29, 2025 and incorporated herein by reference.

15.     On January 22, 2026, the Debtors filed the *Motion of the Debtors for Order Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (Docket No. 1674) (the "**First Exclusivity Motion**").  On February 17, 2026, the Court entered an order (Docket No. 1939) granting the First Exclusivity Motion and extending the Exclusive Filing Period through and including April 22, 2026 and the Exclusive Solicitation Period through and including June 22, 2026, without prejudice to the Debtors' rights to seek further extensions of such periods (the "**First Exclusivity Order**").

## Jurisdiction and Venue

16.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested Should be Granted

17.     Section 1121(b) of the Bankruptcy Code establishes an initial 120-day period following commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan.  Additionally, section 1121(c) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day exclusive filing period, it has an exclusive period of 180 days after the commencement of the chapter 11 case to obtain acceptance of its plan.

18.     Under section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause.  11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a

6

hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referenced to in this section.").

19. The Bankruptcy Code neither defines the term "cause" nor establishes formal criteria for an extension. The legislative history of section 1121 of the Bankruptcy Code indicates, however, that "cause" is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95–595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest); *In re Timbers of Inwood Forrest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) ("[A]ny bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the legislative goal behind § 1121."); *In re Mirant Corp.*, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization.").

20. The broad discretion conferred on the Court in these circumstances enables the Court to consider a variety of factors to assess the totality of circumstances in each case. *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying factors courts consider in determining whether to extend exclusivity); *In re Washington St. Tammany Elec. Co-op., Inc.*, 97 B.R. 852, 854 (E.D. La. 1989) (noting that the decision to extend exclusivity "rests with the discretion of the Court"); *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643–44 (B.A.P. 8th Cir. 2003) (same); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (same).

21.     Courts in this district have considered the *Adelphia* factors when determining whether cause exists to extend exclusivity. *See, e.g.*, *In re New Millennium Mgmt., LLC*, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (evaluating the factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity). These non-exclusive factors include:

> (i)     the size and complexity of a debtor's case;
>
> (ii)    the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;
>
> (iii)   the existence of good faith progress towards reorganization;
>
> (iv)    the fact that the debtor is paying its bills as they become due;
>
> (v)     whether the debtor has demonstrated reasonable prospects for filing a viable plan;
>
> (vi)    whether the debtor has made progress in negotiations with its creditors;
>
> (vii)   whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
>
> (viii)  whether an unresolved contingency exists.

*See, e.g.*, *Millennium Mgmt.*, 2014 WL 792115, at *6; *see also Adelphia*, 352 B.R. at 587 (noting that the factors listed above are "objective factors which courts historically have considered in making determinations of this character").

22.     Not all factors are relevant to every case, and courts may consider a subset of the above factors in determining whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See In re Hoffinger Indus., Inc.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) ("It is within the discretion of the bankruptcy court to decide which factors

8

are relevant and give the appropriate weight to each."); *In re Serv. Merch. Co., Inc.*, 256 B.R. 744, 751–54 (Bankr. M.D. Tenn. 2000) (finding cause to extend where the debtors established six of the aforementioned factors); *In re Express One Int'l, Inc.*, 194 B.R. 98, 101 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" existed to extend exclusivity); *see also In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors.").

23. Moreover, courts in this district routinely grant extensions of exclusivity through the statutory period specifically to allow debtors to solicit, confirm, and implement chapter 11 plans. *See, e.g.*, *In re Everstream Sol'ns LLC*, Case No. 25-90144 (CML) (Bankr. S.D. Tex. Feb. 17, 2026) (granting exclusivity extension of 90 days after plan had been filed); *In re Steward Health Care System LLC*, Case No. 24-90213 (CML) (Bankr. S.D. Tex. July 17, 2025) (Docket No. 5710) (granting exclusivity extension of more than 130 days after plan had been filed); *In re Core Scientific, Inc.*, Case No. 22-90341 (CML) (Bankr. S.D. Tex. November 9, 2023) (Docket No. 1396) (granting exclusivity extension of 60 days after plan had been filed); *In re Talen Energy Supply, LLC*, Case No. 22-90054 (MI) (Bankr. S.D. Tex. Jan. 13, 2023) (Docket No. 1820) (granting exclusivity extension of more than 190 days after plan had been filed); *In re Fieldwood Energy LLC*, Case No. 20-33948 (MI) (Bankr. S.D. Tex. Jan. 8, 2021) (Docket No. 751) (granting exclusivity extension of 90 days after plan had been filed).

**Cause Exists to Extend Exclusive Periods**

24. A further extension of the Exclusive Periods, in each case, by 90 days is appropriate, in the best interest of the Debtors' stakeholders, and consistent with the intent and

9

purpose of chapter 11 of the Bankruptcy Code.  The requested extensions of the Exclusive Periods are necessary and appropriate to enable the Debtors to seek approval of the Disclosure Statement, solicit acceptances of the Plan, prosecute the Plan through confirmation, and achieve a global resolution to these chapter 11 cases, for the benefit of all stakeholders, without the risk of completing plans and the attendant disruption, expense, and delay.  Application of the relevant *Adelphia* factors to the facts of these chapter 11 cases demonstrates that ample cause exists to grant the reasonable extension of the Exclusive Periods requested herein.

### A. The Debtors Have Made Substantial Progress Toward Confirmation of the Plan and Significant Progress in these Chapter 11 Cases

25.     The Debtors have made substantial progress toward confirming a chapter 11 plan since filing the First Exclusivity Motion, as outlined below.

#### i. The Debtors Are Finalizing a Case Resolution Settlement with Key Stakeholders

26.     Since filing the First Exclusivity Motion, the Debtors' primary focus has been on pursuing going-concern sales and a comprehensive resolution of these chapter 11 cases. After months of participating in mediation, the Debtors, the Ad Hoc Group, and the Creditors' Committee agreed to a comprehensive settlement and are finalizing a restructuring support agreement, which will pave the way for the Debtors to file a chapter 11 plan and disclosure statement.  The Plan, which the Debtors anticipate filing in the coming weeks, will incorporate the terms of the Settlement described above.

27.     The Debtors firmly believe the Plan will maximize the value of the estates' assets and is the best outcome possible in these highly complex and challenging chapter 11 cases.

#### ii. The Debtors Have Consummated Multiple Sales

28.     Since filing the First Exclusivity Motion, the Debtors have consummated two sales after months of intense negotiations with potential purchasers and key stakeholders,

10

including their OEM funding parties and lenders. First, on March 16, 2026, the Debtors consummated the going-concern sale of its Walbro business for an aggregate purchase price of $50 million in cash plus certain assumed liabilities. The sale preserved approximately 600 jobs. The sale also included a mediated resolution among the ABL Lenders, the Ad Hoc Group, and Onset as to the allocation of sale proceeds with respect to disputed interests in the transferred assets.

29. Second, on April 13, 2026, the Debtors consummated the sale of certain of its intellectual property and related assets for an aggregate purchase price of $25 million in cash plus additional payments over time and certain assumed liabilities. Each sale was the product of a robust, multi-month marketing process and arm's-length negotiations.

30. Furthermore, the Debtors are actively pursuing additional going-concern sales of other business lines that have the potential to save a significant number of jobs and bring in additional proceeds to the estates. The Debtors hope to file motions to approve these additional sales as soon as possible.

iii. **The Debtors Have Made Substantial Other Progress in Administering Their Estates**

31. In addition to the Settlement and sales, the Debtors have taken numerous other critical steps to advance these chapter 11 cases and maximize value for all stakeholders, including:

- preserving the value of the claims asserted in the James Adversary Proceeding and the Onset Adversary Proceeding, including obtaining a stay of these proceedings to allow the case resolution negotiations to be completed;

- obtaining Court approval to retain Hilco to conduct an orderly wind down of the Debtors' businesses that will not be sold as a going concern, including monetizing remaining inventory and outstanding accounts receivable, and negotiating with over twenty stakeholders, including the Debtors' secured

11

lenders, the Creditors' Committee, landlords, and factoring counterparties, to achieve a consensual resolution of such retention;

- rejecting contracts and leases that are not desired by potential purchasers of the Debtors' assets, or are burdensome to the Debtors' estates, to limit administration costs, and facilitating the assumption and assignment of contracts and leases to purchasers;

- negotiating stipulations with various landlords providing for extensions of time to assume or reject nonresidential real property leases;

- minimizing estate costs and expenses by negotiating and filing several stipulations providing for the abandonment of certain goods and materials burdensome to the Debtors' estates;

- continuing to reconcile prepetition accounts receivable and seeking release of unencumbered funds that were not sold to third-party factors, including responding to a third-party factor's appeal of an order authorizing the release of segregated funds, opposing an adversary proceeding seeking to establish a lien in the segregated funds, and facilitating document production with certain factors in support of such efforts;

- negotiating a fully consensual conversion of certain of the SPV Debtors (*i.e.*, Starlight and Patterson) to chapter 7 with Evolution, the ABL Lenders, Creditors' Committee, U.S. Trustee and other stakeholders; and

- securing funding for the Examiner's investigation and continued coordination with the Examiner with respect to his investigation.

32. In light of the substantial progress made in these chapter 11 cases, on this basis alone, the requested extension of the Exclusive Periods is warranted. *See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 588 (Bankr. S.D.N.Y. 2006) (viewing the good faith progress factor "as one of the more important factors" in the analysis).

33. Notwithstanding the substantial progress made in these chapter 11 cases, additional work remains. The Debtors still need to negotiate the definitive documents implementing the Plan and also intend on engaging in negotiations with other key stakeholders, including the ABL Lenders and other stakeholders, to build as much consensus in support of the Plan as possible. The Debtors also need time to solicit and seek approval of the Plan. Under these

circumstances, the requested extensions of the Exclusive Periods are necessary and appropriate to afford the Debtors the full and fair opportunity to achieve the objectives of chapter 11 as contemplated by section 1121 of the Bankruptcy Code.

### B. These Chapter 11 Cases Are Large and Complex

34. The size and complexity of the Debtors' businesses and the complexity of these chapter 11 cases also support an extension of the Exclusive Periods. *See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."). The legislative history of section 1121 provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963.

35. Without question, the Debtors meet the above standard. As set forth in greater detail in the First Exclusivity Motion, the Debtors are comprised of 112 entities. Their prepetition businesses included a global network of manufacturing and distribution centers that spanned 5 continents. As of the commencement of these cases, First Brands employed 26,000 individuals globally, including almost 6,000 employees in the United States.

36. The Debtors also have a complex capital structure. At the time of filing, the Debtors collectively had more than $11 billion of prepetition obligations, including approximately $6 billion in funded debt obligations, at least $2.3 billion in factoring liabilities, at least $2.3 billion in "off-balance sheet" financing liabilities incurred through SPVs, and approximately $900 million in unsecured supply chain financing liabilities. The sheer scope of the Debtors' operations and

capital structure required the Debtors to raise $1.1 billion of DIP financing at the beginning of these cases to fund the chapter 11 process.

37.     Further complicating the Debtors' capital structure, as has been documented extensively throughout these chapter 11 cases, the prepetition activities of the company under prior management have resulted in certain of the Debtors' creditors asserting competing legal rights and priorities with respect to the same collateral compounding the legal and factual issues in these cases.  These transactions have raised questions among the Debtors' creditors as to the validity, extent, and priority of their liens, resulting in an onslaught of litigation and related activity from their off-balance sheet financing counterparties.

38.     These cases have been further complicated by the prepetition conduct of the Debtors' former management team.  Their conduct has made these cases particularly difficult to prosecute by, among other things, rendering the Debtors' books and records unreliable, which has hindered the Debtors' sale and capital raising efforts and caused distrust amongst the Debtors' customers and vendors.  Recently, two of the Debtors' former executives, including their founder and former CEO Patrick James and his brother Edward James, were indicted by the United States Department of Justice and charged with crimes in connection with their management of First Brands.[8]  The indictment of Patrick James charges him with managing a continuing financial crimes enterprise.  Additional former executives of the Debtors, including the Debtors' former CFO and the Debtors' former VP of Finance, have pleaded guilty in connection with the indictments.

---

[8]     *See* First Brands Executives Charges with Multibillion-Dollar Fraud, available at https://www.justice.gov/usao-sdny/pr/first-brands-executives-charged-multibillion-dollar-fraud.

39. In short, these chapter 11 cases are indisputably of the size and complexity that Congress and courts have recognized warrant extensions of the Exclusive Periods as requested.

### C. The Debtors Will File a Viable Plan

40. As discussed above, the Debtors have reached an agreement, after extensive mediation led by Judge Isgur, with their key creditor groups, including the Ad Hoc Group and the Creditors' Committee, on a chapter 11 plan, and anticipate filing the Plan and Disclosure Statement in the coming weeks. The Debtors will then turn their focus to seeking approval of the Disclosure Statement and confirmation of the Plan. Accordingly, the Debtors have made substantial progress in negotiations with creditors and demonstrated reasonable prospects for filing a viable plan.

### D. An Extension of the Exclusive Periods Will Not Prejudice Creditors

41. An extension of the Exclusive Periods will not prejudice any of the Debtors' stakeholders. On the contrary, an extension of the Exclusive Periods will enable the Debtors to finalize the Plan and Disclosure Statement, seek approval of their Disclosure Statement, commence solicitation of the Plan supported by key stakeholder groups, and move forward with confirmation and implementation of the Plan. To terminate exclusivity now and allow for a competing plan process at this juncture in these chapter 11 cases would jeopardize or otherwise undermine the Debtors' efforts to date and adversely impact their ability to achieve a consensual chapter 11 plan. Thus, the Debtors believe that an extension of the Exclusive Periods is in the best interest of the Debtors and their stakeholders.

42. Additionally, the Debtors' relationship with their key economic stakeholders, including the Ad Hoc Group, the Creditors' Committee, and the ABL Lenders, is transparent, cooperative, and constructive. The Debtors have held numerous meetings and negotiation sessions with these creditor constituencies to discuss virtually every issue in these

cases, including DIP financing, the investigation into prepetition activities, the sale process, and the Plan, among other discrete issues. The request for extending the Exclusive Periods is not a negotiation tactic, but rather reflects that the Debtors require additional time in these immensely complex chapter 11 cases to finalize the definitive documents that will implement the Settlement achieved in mediation and pursue confirmation of the Plan.

43. Finally, this Motion is without prejudice to any party seeking to shorten the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code. *See* 11 U.S.C. § 1121(d). As such, no party in interest will be prejudiced if the requested extensions are approved.

**E.     Relatively Little Time Has Elapsed Considering the Nature of These Cases**

44. This is the Debtors' second request to extend the Exclusive Periods, and it comes approximately seven months after the commencement of these cases. Considering the nature and magnitude of these chapter 11 cases, relatively little time has elapsed. Courts in this district have routinely granted further requests by debtors to extend their exclusive periods to file and solicit a chapter 11 plan, particularly where, as here, the debtors have demonstrated substantial progress. *See, e.g.*, *In re Steward Health Care System LLC*, Case No. 24-90213 (CML) (Bankr. S.D. Tex. July 17, 2025) (Docket No. 5710) (granting fifth exclusivity motion extending exclusivity deadlines by more than 130 days); *In re Core Scientific, Inc.*, Case No. 22-90341 (CML) (Bankr. S.D. Tex. November 9, 2023) (Docket No. 1396) (granting third exclusivity motion extending exclusivity deadlines by 60 days); *In re Fieldwood Energy LLC*, Case No. 20-33948 (MI) (Bankr. S.D. Tex. July 13, 2021) (Docket No. 1873) (granting third exclusivity motion extending exclusivity deadlines by 60 days).

16

## Notice

45.     Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## Prior Requests

46.     Except for the First Exclusivity Motion, no previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: April 22, 2026
      Houston, Texas

/s/  Clifford W. Carlson
WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:  gabriel.morgan@weil.com
      clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  matt.barr@weil.com
      sunny.singh@weil.com
      andriana.georgallas@weil.com
      kevin.bostel@weil.com
      jason.george@weil.com

*Attorneys for Debtors and Debtors in Possession*

18

**<u>Certificate of Service</u>**

I hereby certify that on April 22, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Clifford W. Carlson*
Clifford W. Carlson

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

## ORDER FURTHER EXTENDING EXCLUSIVE PERIODS

Upon the motion, dated April 22, 2026 (the "**Motion**"),[2] of First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order, pursuant to section 1121(d) of the Bankruptcy Code, further extending the Exclusive Filing Period and Exclusive Solicitation Period by 90 days, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and upon any hearing held on the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1. Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Filing Period is further extended through and including July 21, 2026.

2. Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Solicitation Period is further extended through and including September 21, 2026.

3. The extensions of the Exclusive Periods granted herein are without prejudice to the Debtors' rights to seek from this Court further extensions of time pursuant to section 1121(d) of the Bankruptcy Code.

4. Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no other or further notice of the Motion or entry of this Order shall be required.

5. The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Order.

6. This Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2026
     Houston, Texas

_____
CHRISTOPHER LOPEZ
UNITED STATES BANKRUPTCY JUDGE

2