**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re<br><br>FIRST BRANDS GROUP, LLC *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 25-90399 (CML)<br><br>(Jointly Administered) |

**ONSET FINANCIAL, INC.'S JOINDER AND STATEMENT IN SUPPORT
OF LAM PARTIES' AND KATSUMI SERVICING, LLC'S
MOTIONS TO COMPEL PRODUCTION OF
DOCUMENTS AND INTERROGATORY RESPONSES FROM DEBTORS**

Onset Financial, Inc. ("Onset") submits this *Joinder and Statement in Support of LAM Parties' and Katsumi Servicing, LLC's Motions to Compel Production of Documents and Interrogatory Responses from Debtors* (the "Statement in Support") in support of the *LAM Parties' Motion to Compel Production of Documents and Interrogatory Responses from Debtors* [Dkt. No. 3210] (the "LAM Parties' Motion") and the *Emergency Motion of Katsumi Servicing, LLC to Compel Debtors to Produce Complete Responses and Documents in Response to Discovery Served Upon the Debtors, Including Katsumi Servicing, LLC's First Set of Interrogatories and First Request for Production of Documents and Other Issues* [Dkt. No. 3211] ("Katsumi's Motion").[2]

In support of this Statement in Support, Onset respectfully states as follows:[3]

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands/. The Debtors' service address for these chapter 11 cases (the "Chapter 11 Cases") is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]   "LAM Parties" means, collectively, Leucadia Asset Management LLC, acting through its Point Bonita Capital Division, LAM Trade Finance Group LLC, and LAM TFG I SPV LLC. "Katsumi" means Katsumi Servicing, LLC.

[3]   Capitalized terms not defined herein shall have the meaning assigned to them in the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Dkt. No. 3019].

**BACKGROUND**

**A.      Onset's Plan-Related Document Requests**

1.      Onset's discovery requests related to the process and negotiations underlying the FBG Plan began in early June.  On June 2, 2026, Onset served document requests on the Debtors concerning the *Motion of FBG Debtors for Entry of an Order (I) Approving Global Settlement; (II) Authorizing and Directing Sale and Transfer of Assets in Connection Therewith; (III) Converting Certain Chapter 11 Cases to Chapter 7; and (IV) Granting Related Relief* [Dkt. No. 2783] (the "Global Settlement Motion").  Onset's requests in connection with the Global Settlement Motion sought documents central to plan-related issues, including in connection with the assets to be transferred or sold; the valuation of estate assets; the Estate Claims Credit Bid Transaction and the DIP Collateral Credit Bid Transaction (and the marketing process for each); the Litigation Trust structure, assets, and waterfall; the designation of Onset as a Specified Non-Released Party; and any chapter 7 conversion analysis, among other things.  *See* Ex. 1 (Onset's First Requests to the Debtors for the Production of Documents in Connection with the Global Settlement Motion).

2.      After receiving no response from the Debtors, Onset followed up with the Debtors on June 5 to inquire about the status of the Debtors' productions concerning the Global Settlement Motion.  *See* Ex. 2 (June 5, 2026 Email from Onset to the Debtors).  The Debtors responded on the same day and stated that they would be withdrawing the Global Settlement Motion.  *Id.*  The Debtors then filed the first version of their multi-Debtor chapter 11 plan.  *See Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Dkt. No. 2907] (as amended, modified, or supplemented, the "FBG Plan").

3.      On June 10, 2026, Onset and the Debtors met-and-conferred regarding discovery in connection with a separate contested matter.  At that meeting, Onset forewarned the Debtors

that Onset would soon be serving additional document requests concerning the FBG Plan should the Disclosure Statement be conditionally approved on June 12, 2026, and that those requests would be substantially similar to Onset's previous document requests concerning the Global Settlement Motion given that they involved the same plan-related issues.

4.      On June 12, 2026, the Disclosure Statement was conditionally approved, and on June 16, 2026, the Debtors filed the solicitation version of the FBG Plan.

5.      Shortly thereafter, on June 17, 2026, Onset served the Debtors with the previewed document requests concerning the FBG Plan, which were, as promised, substantially similar to the document requests concerning the Global Settlement Motion.  Ex. 3 (Onset's First Requests to the Debtors for the Production of Documents in Connection with the Plan) (the "Plan RFPs").  As with Onset's requests in connection with the Global Settlement Motion, Onset's Plan RFPs sought documents concerning issues relevant to the FBG Plan and Plan Settlement, including in connection with the assets to be transferred or sold; the valuation of estate assets; the Estate Claims Credit Bid Transaction and the DIP Collateral Credit Bid Transaction (and the marketing process for each); the Litigation Trust structure, assets, and waterfall; the designation of Onset as a Specified Non-Released Party; and any chapter 7 conversion analysis, among other things.

6.      Onset's Plan RFPs requested that the Debtors commence rolling productions immediately and conclude production no later than July 6, 2026—nearly three weeks after service on June 17 and two weeks before Onset's objection to the FBG Plan was due on July 20, 2026.

**B.      The Debtors' Overly Expansive and Presumptive Claims of Privilege and Nonresponsive, Incomplete Productions**

7.      On July 6, 2026, after having produced zero documents in response to Onset's Plan RFPs, the Debtors served responses and objections to Onset's Plan RFPs.  *See* Ex. 4 (Debtors' Responses and Objections to Onset's First Requests for Production of Documents in Connection

with Plan) (the "Debtors' Rs&Os").  The Debtors' Rs&Os generally agreed to produce non-privileged documents responsive to Onset's Plan RFPs, except as to two of Onset's requests. Onset's Request for Production No. 7 sought documents and communications, including communications among the Plan Negotiation Parties (defined to include the Ad Hoc Group of DIP Lenders, the Official Committee of Unsecured Creditors, and the Asset-Based Lenders), "concerning the decision to designate certain parties, including Onset, as a Specified Non-Released Party under the Plan and Plan Settlement . . . ." *See* Ex. 4 (Debtors' Rs&Os) at 15–16.  Onset's Request for Production No. 8 sought documents and communications, including communications among the Plan Negotiation Parties, "concerning the decision to designate certain parties as Released Parties or Exculpated Parties under the Plan and Plan Settlement . . . ." *Id.* at 16.  As to each of these requests, the Debtors stated that they were "not aware of any non-privileged Documents" responsive to the request.  *Id.* at 16–17.  In following correspondence and conferences, Onset tried to seek clarity as to whether the Debtors would even attempt to search and review for non-privileged documents in response to those two requests; to date, the Debtors have not provided an answer.

8. On July 8, 2026, two days after the deadline to complete the production, the Debtors made their first production in response to Onset's Plan RFPs.  *See* Ex. 5 (July 8, 2026 Email from Debtors to Onset).  This first production consisted of 812 documents, which were nearly entirely publicly available documents, deposition exhibits, and unintelligible XML files.  The production was scant of communications; indeed, of the 812 documents, only four documents reflected invoice-related communications, none of which were responsive to Onset's Plan RFPs.

9. The next day, July 9, Onset responded to the Debtors' production email, pointing out the deficiencies in the production and seeking to understand whether the Debtors were planning

4

to make further document productions.  *See* Ex. 5 (July 9, 2026 Email from Onset to the Debtors). After receiving no response, Onset followed up again the next day, July 10, and reiterated its request for a meet-and-confer with the Debtors given the impending plan objection deadline.  The Debtors did not respond until July 12, and the parties met and conferred on July 13.

10.     At the parties' July 13 meet-and-confer, the Debtors for the first time clarified that they were asserting various privileges in such a manner that, in effect, resulted in the withholding of essentially all of the Debtors' communications with the Plan Negotiation Parties since the Petition Date.  Onset requested that the bases for these expansive privilege assertions be provided in writing.  During that meeting, the Debtors also committed to provide a categorical privilege log and a list of the search parameters used to identify documents responsive to Onset's Plan RFPs, including custodians and search terms.  To date, however, the Debtors' privilege log, custodians, and confirmation of search terms and parameters have not been provided to Onset.

11.     On July 14, the Debtors filed the declarations of Charles M. Moore and Marc S. Kirschner in support of confirmation, each of which selectively discloses conclusions drawn from the Debtors' purportedly privileged investigation while relying upon substantive materials that the Debtors refuse to produce.  *See Declaration of Charles M. Moore in Support of Confirmation of FBG Debtors' Chapter 11 Plan* [Dkt. No. 3188] (the "Moore Declaration"); *Declaration of Marc S. Kirschner* [Dkt. No. 3190] (the "Kirschner Declaration").[4]

12.     On July 16, in email correspondence, the Debtors confirmed the staggeringly narrow scope of their search.  The Debtors stated they were only producing communications for three limited windows: (i) September 1-28, 2025, (ii) January 1-28, 2026, and (iii) March 27-May 20, 2026—all of which are before the first version of the FBG Plan was filed.  Even within those

---

[4]     The documents listed in Exhibit B to the Kirschner Declaration were produced to Onset on July 16, 2026.

windows, the Debtors appeared to have used presumptive domain searches rather than targeted keyword searches.  In other words, the Debtors unilaterally determined that the vast majority of communications relating to the negotiations, formulation, and solicitation of the FBG Plan are simply off-limits, without conducting any meaningful privilege review.   The Debtors stated:

> The Debtors have produced responsive non-privileged communications between the Debtors and the UCC, AHG, and ABL for two periods and are finalizing communications across a third period for production: (i) September 1, 2025-September 28, 2025 (prepetition period), (ii) January 1, 2026-January 28, 2026 (the period before formal mediation), and (iii) March 27, 2026 (the close of formal discovery) - May 20, 2026 (the date the Debtors announced an agreement in principle with the AHG, UCC, and ABL).  For these periods, the Debtors have used domain searches to capture all communications between (i) the Debtors and their advisors and the UCC, AHG, and/or ABL and their advisors and (ii) have otherwise reviewed for responsiveness.

*See* Ex. 6 (July 16, 2026 Email from Debtors to Onset).

13.     That same day, Onset sought confirmation that (i) the Debtors were treating all communications with or among the Ad Hoc Group of DIP Lenders, the Official Committee of Unsecured Creditors, the Asset-Based Lenders, or their advisors as presumptively privileged during those time periods and simply were declining to review documents during those windows rather than conducting any privilege review at all, (ii) whether any communications with third parties beyond those mentioned parties would be produced (as requested in the Plan RFPs), and (iii) additional clarity as to the custodians those parameters were applied to and if that was the extent of their search and review process.  Onset has not yet received a response.

14.     All told, in the last eight days, with only four days remaining before the Plan objection deadline, the Debtors have made five productions purportedly in response to Onset's Plan RFPs.  But those productions have included remarkably few communications, virtually none concerning Plan negotiations or the Plan itself, and instead are padded with thousands of documents, such as Court filings and account statements, that shed little light on the issues relevant

to the Debtors' burden while presumably all relevant communications are shielded by the Debtors' broad and unsupported privilege claims.

**STATEMENT IN SUPPORT**

15.     The Debtors have had more than enough time to respond to Onset's Plan RFPs. The Debtors set the expedited confirmation schedule, yet elected to provide astonishingly few documents with probative value.  Since early June, the Debtors have used delay, obfuscation, and sweeping privilege claims to prevent Onset from obtaining the documents that would permit it to adequately consider and prepare an objection to confirmation of the FBG Plan.  Onset is not alone; as they did to the LAM Parties and Katsumi, the Debtors rebuffed Onset's requests and refused to produce relevant documents, instead producing inflated productions full of thousands of irrelevant documents, while substantive documents concerning plan negotiations, credit bid transactions, the Litigation Trust, and the release provisions are shielded behind unsupported privilege assertions. The recently-filed Moore and Kirschner declarations rely in large part on certain of these privileged materials, yet the Debtors refuse to produce them.  This is the prototypical use of privilege as both sword and shield: the Debtors selectively deployed privileged materials to support their Plan while denying creditors the ability to test the foundation of their case.

16.     While the Debtors have produced plenty of non-responsive documents in response to Onset's requests, including over 12,000 documents produced today composed nearly entirely of account-statement-type documents, the Debtors have not provided Onset with substantive communications, nor have they provided Onset with a privilege log.  Further, the Debtors have not identified their custodians or confirmed their search terms and parameters.  Without such information, Onset cannot evaluate the sufficiency of the Debtors' productions nor the propriety of their privilege claims.  The deficiency of the Debtors' production effectively prevents scrutiny of the FBG Plan and process supporting it.

17.     The LAM Parties' Motion and Katsumi's Motion thoroughly demonstrate the Debtors' pervasive discovery failures.  Onset's experience confirms the same pattern: blanket privilege assertions, incomplete productions, and delay tactics that have prejudiced Onset's ability to meaningfully object to the FBG Plan.  Based on the foregoing, Onset joins in the LAM Parties' Motion and Katsumi's Motion and respectfully requests that the Court enter an order (i) compelling the Debtors to produce all responsive, non-privileged documents, (ii) requiring the Debtors to produce a privilege log compliant with Federal Rule 26(b)(5)(A), (iii) striking or precluding the Moore and Kirschner declarations and ability to testify to the extent they rely on materials the Debtors refuse to produce, (iv) continuing the confirmation hearing to afford adequate time to review compelled productions and conduct depositions, and (v) granting such other and further relief as the Court deems just and proper.

## **RESERVATION OF RIGHTS**

18.     Onset reserves the right to amend or supplement this Statement in Support; to join in any additional related pleadings; and to participate in any hearing regarding the LAM Parties' Motion, Katsumi's Motion, and/or any related matters.

*[Remainder of page intentionally left blank]*

Dated:  July 16, 2026
        Houston, Texas

**MUNSCH HARDT KOPF & HARR, PC**

*/s/ Deborah M. Perry*
Deborah M. Perry
Texas Bar No. 24002755
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com

-and-

**MORRISON & FOERSTER LLP**
Carrie H. Cohen (admitted *pro hac vice*)
James Newton (admitted *pro hac vice*)
Ben Butterfield (admitted *pro hac vice*)
Bryan Kotliar (admitted *pro hac vice*)
250 West 55th Street
New York, NY 10019
Email: ccohen@mofo.com
Email: jnewton@mofo.com
Email: bbutterfield@mofo.com
Email: bkotliar@mofo.com

-and-

**MORRISON & FOERSTER LLP**
Anthony S. Fiotto (admitted *pro hac vice*)
Julia C. Koch (admitted *pro hac vice*)
200 Clarendon Street
Boston, MA 02116
Email: afiotto@mofo.com
Email: jkoch@mofo.com

-and-

**MORRISON & FOERSTER LLP**
Brian R. Michael (admitted *pro hac vice*)
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Email: bmichael@mofo.com

-and-

**MILBANK LLP**
Dennis F. Dunne (admitted *pro hac vice*)
Lisa Laukitis (admitted *pro hac vice*)
Jason Kestecher (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5858
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
Email: llaukitis@milbank.com
Email: jkestecher@milbank.com

-and-

**MILBANK LLP**
Andrew M. Leblanc (admitted *pro hac vice*)
Erin E. Dexter (admitted *pro hac vice*)
1101 New York Avenue NW,
Washington, DC 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586
Email: aleblanc@milbank.com
Email: edexter@milbank.com

*Attorneys for Onset Financial, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed on this 16th day of July 2026, with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

/s/ *Deborah M. Perry*
Deborah M. Perry