# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re<br><br>FIRST BRANDS GROUP, LLC *et al.*,[1]<br><br>    Debtors. | Chapter 11<br>Case No. 25-90399 (CML)<br>(Jointly Administered) |

**ONSET'S FIRST REQUESTS TO THE DEBTORS FOR THE PRODUCTION OF**
**DOCUMENTS IN CONNECTION WITH THE GLOBAL SETTLEMENT MOTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to the above-captioned chapter 11 cases pursuant to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 7026, 7034, and 9014, and the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), Onset Financial, Inc. ("Onset"), by and through its undersigned counsel, submits these requests for the production of documents (the "Document Requests," and each a "Request") to First Brands Group, LLC and its associated debtors and debtors-in-possession (the "Debtors", "First Brands", or "You") concerning the *Motion of FBG Debtors for Entry of an Order (I) Approving Global Settlement; (II) Authorizing and Directing Sale and Transfer of Assets in Connection Therewith; (III) Converting Certain Chapter 11 Cases to Chapter 7; and (IV) Granting Related Relief* [Dkt. No. 2783] (the "Global Settlement Motion").  Onset hereby requests that You (as further defined below) produce the documents described herein for inspection and copying at the offices of Milbank, LLP, located at 55 Hudson Yards, New York, New York 10001 on an immediate and

---

[1]  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands/.  The Debtors' service address for these chapter 11 cases (the "Chapter 11 Cases") is 127 Public Square, Suite 5300, Cleveland, OH 44114.

rolling basis to be concluded no later than June 9, 2026, at 5:00 p.m. ET.  Onset reserves the right to serve supplemental and additional discovery requests.

**DEFINITIONS**

The following definitions shall apply to the terms used in these Document Requests, regardless of whether they are capitalized or uncapitalized.  Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1.     "ABL Collateral Trust Assets" has the meaning set forth in the Plan.

2.     "ABL Secured Parties" has the meaning set forth in the DIP Order, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any ABL Secured Party's behalf or retained by any ABL Secured Party, and any predecessor or successor of any of the foregoing.

3.     "Administrative Expense Claim" has the meaning set forth in the Plan.

4.     "Advisors" means any and all former or current advisors or professionals that previously advised or provided services or are currently advising or providing services.

5.     "Affiliate" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code (11 U.S.C. §§ 101–1532, as amended).

6.     "BDO" means BDO USA, LLP, BDO USA, P.A., BDO USA, P.C., and any Advisors, Affiliates, agents, assigns, directors, employees, officers, parents, partners, representatives, subsidiaries, independent contractors, attorneys, and/or any other Person or entities purporting to act on its behalf, and/or under its control.

2

7.      "Carnaby Debtors" means Carnaby Inventory IV, LLC; Carnaby Inventory Holdings IV, LLC; Carnaby Capital Holdings, LLC; Carnaby Capital, LLC; Carnaby FA, LLC; Carnaby FA Holdings, LLC, and Eagle Casting Holdings, LLC.

8.      "Communication(s)" means the transmittal or exchange of information, in any form and by any means, including, but not limited to, documents, writings, letters, notes, correspondence, electronic mail, text message, sound recordings, video recordings, instant message, or other exchange of information in any form, and any recordings or memorialization, in any format, of face-to-face conversations, telephone conversations, meetings, or conferences.

9.      "Converting Debtor" has the meaning set forth in the Plan.

10.     "Creditors' Committee" has the meaning set forth in the Plan, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any unsecured creditor's behalf or retained by any unsecured creditor, and any predecessor or successor of any of the foregoing.

11.     "Debtors", "You", and "Your" means the debtors and debtors in possession in the above-captioned Chapter 11 Cases, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any Debtor's behalf or retained by any Debtor, and any predecessor or successor of any of the foregoing.

12.     "DIP Agent" has the meaning set forth in the DIP Order, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any DIP Agent's behalf or retained by any DIP Agent, and any predecessor or successor of any of the foregoing.

13.     "DIP Collateral Credit Bid" has the meaning set forth in the Plan.

14.     "DIP Collateral Credit Bid Transaction" has the meaning set forth in the Plan.

15.     "DIP Collateral Trust Assets" has the meaning set forth in the Plan.

16.     "DIP Order" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Priorities; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Dkt. No. 608].

17.     "DIP Secured Parties" has the meaning set forth in the DIP Order, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any DIP Secured Party's behalf or retained by any DIP Secured Party, and any predecessor or successor of any of the foregoing.

18.     "Disclosure Statement" means the *Disclosure Statement for Chapter 11 Plan of Premier Marketing Group, LLC* [Dkt. No. 2786], and as it may be amended, modified, or supplemented.

19.     "Documents" is intended to have the broadest possible meaning under the Federal Rules and Bankruptcy Rules, and includes, but is not limited to, all originals, non-identical copies and copies with marginal notations or interlineations of any written Communications, writings, sworn statements, deposition transcripts, affidavits, recordings, photographs, phone records, computer data, electronic mail or other item containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form maintained. "Document" also includes all Electronically Stored Information.  "Document" further means any document in the possession, custody or control of the entities and individuals to whom this document request is directed (together with any employees, agents, and attorneys).  Without

limitation to the term "control" as used in the preceding sentence, an entity or individual is deemed to be in control of a document if that entity or individual has the right to secure the document or a copy thereof from another entity or individual having actual possession thereof.  A draft or non-identical copy is a separate Document within the meaning of this term.

20.    "Electronically Stored Information" has the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and refers to all computer or electronically stored or generated data and information, and includes all attachments to and enclosures with any requested item, and all drafts thereof.  "Electronically Stored Information" includes information stored in any format and on any storage media, including: hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable. "Electronically Stored Information" also includes all associated metadata that is maintained or saved, which includes: a document's title or name; file name; date and time of creation; date and time of last edit; identity of author; identity of owner; identities of editors; identities of recipients; changes; history of changes; email header information; history of who viewed an email and when; and email routing information.

21.    "Estate Claims Credit Bid" has the meaning set forth in the Plan.

22.    "Estate Claims Credit Bid Transaction" has the meaning set forth in the Plan.

23.    "Estate Claims Marketing Process" has the meaning set forth in the Disclosure Statement.

24.    "Global Settlement" has the meaning set forth in the Plan.

25.    "Litigation Trust Assets" has the meaning set forth in the Plan.

26.    "Litigation Trust Interest" has the meaning set forth in the Plan.

27.    "Litigation Trust Waterfall" has the meaning set forth in the Plan.

28.     "Plan" means the *Chapter 11 Plan of Premier Marketing Group, LLC* [Dkt. No. 2784], and as it may be amended, modified, or supplemented.

29.     "Plan Negotiation Parties" means the Debtors, the DIP Secured Parties, the ABL Secured Parties, and the Creditors' Committee.

30.     "Person" includes both the singular and the plural, and means any natural person, business entity, corporation, cooperative, public corporation, partnership, joint venture, or organization.  Each reference to a natural Person shall be deemed to include that Person's agents, attorneys, and any Person who acted or purported to act on that Person's behalf.

31.     "Specified Non-Released Parties" has the meaning set forth in the Plan.

32.     "SPV Lender" has the meaning set forth in the Plan.

33.     "Valuation" means any formal or informal assessment, appraisal, estimate, or analysis of financial worth, including reports, models, spreadsheets, presentations, or other Communications or Documents reflecting methodologies, assumptions, or determinations regarding asset values or enterprise value.

34.     The terms "all," "each," and "any" shall be construed to mean all, each, every, any, "each and every," and "any one."

35.     The connectives "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the request.

36.     The words "concerning," "comprising," "regarding," "reflecting," "in connection with," or "relating to" shall expansively mean, directly or indirectly, referring to, reflecting, concerning, embodying, regarding, mentioning, analyzing, describing, pertaining to, relating to, arising out of or in connection with or in any way legally, logically, or factually connected with the matter discussed.

37.     The words "including" or "includes" shall mean "including but not limited to and without limitation" or "includes but is not limited to and without limitation."

38.     Any ambiguity in a request shall be construed to bring within the scope of the request all responses that otherwise could be construed to be outside of its scope.

### **INSTRUCTIONS**

1.     You are instructed to produce all Documents responsive to the Document Requests that are within Your possession, custody, or control, or in the possession, custody, or control of any other Person or entity acting or purporting to act on Your behalf.

2.     Unless otherwise stated, these Document Requests seek production of Documents dated, prepared, generated, transmitted, or received during the period from and including August 1, 2025 to present (the "Relevant Period").

3.     Each request for the production of Documents shall be deemed to be continuing in nature.  If at any time additional Documents come into Your possession, custody, or control or are brought to Your attention, You will promptly supplement Your response to these Document Requests.

4.     Each Request shall be responded to completely, separately, and fully.  If there are no Documents responsive to any particular Request, Your response shall so state in writing.

5.     If, in responding to the Document Requests, You encounter any ambiguities when construing a request or definition, Your response shall set forth the matter deemed ambiguous and the construction used in responding.

6.     In construing the Document Requests, the singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

7. All Documents shall be produced in the manner in which they are maintained in the usual course of Your business and/or You shall organize and label the Documents to correspond to each request contained herein. A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself. Documents attached to each other shall not be separated.

8. You shall produce all Electronically Stored Information in accordance with the following specifications:

    a. <u>TIFFs</u>. Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata. Name each tiff file with a unique name matching the bates number labeled on the corresponding page. Group every 10,000 tiffs into a new folder; do not create a separate folder for each document.

    b. <u>Native Format</u>. For files created by Excel or other spreadsheet programs, PowerPoint or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the bates number on the first page of the corresponding tiff production of the file / document. Group native files within incrementally named "NATIVE" directories, separate from images directories.

    c. <u>Text Files</u>. For each document a text file should be provided. Each text file should bear the name of the beginning page of each document. To the extent possible, the text of native files should be extracted directly from the native files, except that for a text file corresponding to a redacted document the text may be extracted from OCR of the redacted TIFF file (instead of the native document).

    d. <u>Unique IDs</u>. Each TIFF image should have a unique, sequential identifying number which is the Bates number of the page as specified herein. Each native file should have a unique, sequential identifying number which corresponds with the TIFF numbering scheme as specified herein.

    e. <u>Metadata Fields</u>. The following metadata fields should be populated to the extent field values are available in the source data:

| Field Name | Field Type | Description |
| --- | --- | --- |
| BegDoc | Text | Document ID number associated with the first page. |

| Field Name | Field Type | Description |
|---|---|---|
| EndDoc | Text | Document ID number associated with the last page. |
| BegAttach | Text | Document ID number associated with the first page of a parent. |
| EndAttach | Text | Document ID number associated with the last page of the last attachment to a parent. |
| Doc_Pages | Numeric | Number of pages. |
| Document Author | Paragraph | Display name of the author of a document. |
| From | Paragraph | Display name of the sender of an email. |
| To | Paragraph | Display name of the recipient(s) of an email. |
| CC | Paragraph | Combine CC and CC Email field into one CC field |
| BCC | Paragraph | Display name of the blind copyee(s) of a document. |
| Subject | Paragraph | Subject line of an email. |
| Custodian | Text | Custodian of an email. |
| Custodian Duplicates | | List of all custodians for a particular document. |
| File Original Path | Paragraph | Full path to a native copy of an email in source data or the folder of a document. |
| File Ext | Paragraph | File extension. |
| File Name | Paragraph | File name. |
| File Type | Paragraph | File Type. (ex. Word, Excel, E-mail etc.) |
| File Size | Paragraph | File size. |
| Full/OCR Text | Paragraph | Path to where the Extracted or OCR text can be found. |
| Date Modified | Date in MM/DD/YYYY format | Last Modified date. |
| Date Sent | Date in MM/DD/YYYY format | Email sent date. |
| Date Created | Date in MM/DD/YYYY format | File created date. |
| Time Modified | Time in HH:MM format | Last Modified time. |
| Time Sent | Time in HH:MM format | Email sent time. |
| Time Created | Time in HH:MM format | File created time. |
| Message ID | Paragraph | Email Internal message ID |
| MD5HASH | Paragraph | Algorithm that represents a unique value; the MD5 hash fingerprint of an email. |

9

| Field Name | Field Type | Description |
|---|---|---|
| Redactions | Y/N | Descriptor for documents that have been redacted. |
| Confidentiality Designations | Paragraph | Descriptor for confidentiality designation applied to document during production. |

Metadata pertaining to date/time should be maintained in Universal Coordinated Time (UTC).

f.  Database Load Files and Cross Reference Files.  Documents should be provided with a Concordance (e.g., .dat)-delimited file utilizing the standard Concordance delimiters (Comma: ASCII 20 Quote: ASCII 254 Newline: ASCII 174) as specified in the Concordance User Manual and an Opticon-delimited file.  Every TIFF and native file in each production must be referenced in the corresponding Load File. The total number of TIFF files referenced in the Opticon-delimited Load File within the production should match the total number of image files in the production.

g.  File Format Examples.

- Opticon Delimited File
  PROD00000001,20081123,IMAGES\001\PROD00000001.TIF,Y,,,60

- Concordance Delimited File
  þBEGDOCþ þENDDOCþ þBEGATTþ þENDATTþ þDOCIDþ

- Text Comma Delimited File
  PROD00000001,TEXT\001\PROD00000001.TXT

h.  De-Duplication.  Produce a single copy of each electronic document for which exact duplicates exist.  For e-mail messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties.  For e-mail attachments and stand-alone electronic files, consolidate duplicates based on MD5 hash of the entire file.

9.  Any Document withheld from production based on privilege or any similar claim shall be identified by (i) the type of document, (ii) the general subject matter of the Document, (iii) the date of the Document, and (iv) such other information as is sufficient to identify the Document, including the author of the Document, the addressee of the Document, other recipients of the Document and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth in such writing.  If a portion of a Document

10

contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

10.     If any Document within the scope of these Document Requests has been modified or altered in any way, including in part, identify (i) each such Document; (ii) its custodian; and (iii) the Person who modified or altered it.  The circumstances of such modification or alteration shall be set forth in such writing, including how and why the Document was modified or altered.

11.     If any Document within the scope of these Document Requests is no longer in Your possession or subject to Your control, state whether it is (i) missing or lost; (ii) destroyed; (iii) transferred voluntarily or involuntarily to others; or (iv) otherwise disposed of.  In each instance, identify the current or last known custodian and the circumstances surrounding such disposition.

12.     If You object to any part of any Document Request, You shall state fully with specificity the nature of the objection.  Notwithstanding any objections, You shall nonetheless comply fully with the other parts of the Document Request not objected to.

13.     Onset reserves the right to request additional Documents as needed and to submit additional or supplemental document requests or other discovery requests, provided, further, that it expressly reserves its rights to supplement or amend the Document Requests.

## DOCUMENT REQUESTS

1.     All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning any Valuation, appraisal, description, diligence, analysis, financial information, modeling, evaluation, or assessment of any assets to be transferred, sold, assigned, abandoned, conveyed, or otherwise treated pursuant to the Plan, or any other disposition of assets of the Debtors' estates, including the ABL Collateral Trust Assets, the DIP Collateral Trust Assets, and the Litigation Trust Assets.  For the avoidance of any doubt, this Request includes all

Documents and Communications concerning any assets in which SPV Lenders assert an interest and which may or may not remain subject to dispute under the Plan.

2. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the Estate Claims Credit Bid, the Estate Claims Credit Bid Transaction, or the Estate Claims Marketing Process, including any underwriting materials, Valuations, financial projections, analyses, assessments, evaluations, marketing materials, diligence, bid materials, presentations, indications of interest, or proposals conducted, prepared, sent, received, reviewed, or exchanged by or among You, any bidder or potential bidder, or any third party, including any advisors, consultants, agents, or representatives of any of the foregoing.

3. All Documents comprising, relating to, or reflecting the contents of any virtual data room, diligence file, document repository, shared drive, or other platform or collection of materials established, maintained, accessed, or used in connection with the Estate Claims Marketing Process.

4. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the DIP Collateral Credit Bid and DIP Collateral Credit Bid Transaction, including any underwriting materials, Valuations, financial projections, analyses, assessments, evaluations, marketing materials, diligence, bid materials, presentations, indications of interest, or proposals conducted, prepared, sent, received, reviewed, or exchanged by or among You, the DIP Secured Parties, the DIP Agent, or any third party, including any advisors, consultants, agents, or representatives of any of the foregoing.

5. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning any Valuation, appraisal, assessment, analysis, diligence, evaluation, or estimate of the value, merits, risks, or potential recoveries of any claims, causes of action, or potential causes of action that has been, could have been, or may be asserted against

12

BDO by You; any of Your creditors, lenders, or stakeholders; or any litigation trust or similar entity or representative established under the Plan.

6. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the amount, nature, or status of any accrued or outstanding Administrative Expense Claims at or attributable to the Carnaby Debtors, including any analyses, schedules, reports, ledgers, summaries, or other records reflecting amounts owed on account of postpetition obligations incurred by or attributable to the Carnaby Debtors, and any Communications concerning the treatment of such claims under the Plan or the Global Settlement.

7. All Documents and Communications, including Communications among the Plan Negotiation Parties or with any third party, concerning the decision to designate certain parties, including Onset, as a Specified Non-Released Party under the Plan and Global Settlement, including any analyses, memoranda, presentations, discussion materials, negotiations, or Communications regarding the criteria for, scope of, or implications of such designation, and any discussions with any third parties concerning the same.

8. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the negotiation of the Global Settlement, including any term sheets, proposals, counterproposals, or drafts exchanged among the Debtors, the Ad Hoc Group, the Creditors' Committee, or the DIP Secured Parties, and any analyses of the benefits, costs, risks, or alternatives considered in connection therewith.

9. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the Litigation Trust Waterfall, including any analyses, models, projections, or estimates of potential recoveries by any class of Litigation Trust Interest holders, any analyses of the impact of the Litigation Trust Waterfall on creditors (including administrative

expense creditors), and any alternative waterfall structures or distribution methodologies considered during the negotiation of the Global Settlement.

10.   All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the decision to convert certain of the Debtors' chapter 11 cases to cases under chapter 7, including any analyses of the impact of such conversion on the claims or interests of creditors of the Converting Debtors, and any alternatives to conversion that were considered.

11.   All Documents and Communications produced, provided, or made available to any Person in response to any requests for the production of documents or similar discovery requests relating, in whole or in part, to the Global Settlement, Plan, or Disclosure Statement.

[*Remainder of page left blank intentionally*]

Dated:  June 2, 2026
       Houston, Texas

**MUNSCH HARDT KOPF & HARR, PC**

*/s/ Deborah M. Perry*
Deborah M. Perry
Texas Bar No. 24002755
500 N. Akard Street, Suite 4000
Dallas, TX 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com

-and-

**MORRISON & FOERSTER LLP**
Carrie H. Cohen (admitted *pro hac vice*)
James Newton (admitted *pro hac vice*)
Ben Butterfield (admitted *pro hac vice*)
Bryan Kotliar (admitted *pro hac vice*)
250 West 55th Street
New York, NY 10019
Email: ccohen@mofo.com
Email: jnewton@mofo.com
Email: bbutterfield@mofo.com
Email: bkotliar@mofo.com

-and-

**MORRISON & FOERSTER LLP**
Anthony S. Fiotto (admitted *pro hac vice*)
Julia C. Koch (admitted *pro hac vice*)
200 Clarendon Street
Boston, MA 02116
Email: afiotto@mofo.com
Email: jkoch@mofo.com

-and-

**MORRISON & FOERSTER LLP**
Brian R. Michael (admitted *pro hac vice*)
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Email: bmichael@mofo.com

-and-

15

**MILBANK LLP**
Dennis F. Dunne (admitted *pro hac vice*)
Lisa Laukitis (admitted *pro hac vice*)
Jason Kestecher (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530 5858
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
Email: llaukitis@milbank.com
Email: jkestecher@milbank.com

-and-

**MILBANK LLP**
Andrew M. Leblanc (admitted *pro hac vice*)
Erin E. Dexter (admitted *pro hac vice*)
1101 New York Avenue NW,
Washington, DC 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586
Email: aleblanc@milbank.com
Email: edexter@milbank.com

*Attorneys for Onset Financial, Inc.*