# Exhibit 1

| | |
|---|---|
| DISTRICT COURT, COUNTY OF ADAMS, STATE OF COLORADO<br>1100 Judicial Center Drive<br>Brighton, Colorado 80601 | DATE FILED<br>March 26, 2026 3:55 PM<br>FILING ID: EE1802921FAAA<br>CASE NUMBER: 2025CV30137 |
| **PLAINTIFF**: MICHAEL BUENO<br><br>**V.**<br><br>**DEFENDANTS**: TARA PORTER, RMER ENTERPRISES, INC. d/b/a AUTOMOTIVE SPECIALISTS, and CARDONE INDUSTRIES, INC. | ▲COURT USE ONLY▲ |
| *Attorneys for Plaintiff*:<br>Madeline S. Robbins (#56547)<br>**RAMOS LAW**<br>10190 Bannock Street, Suite 200<br>Northglenn, Colorado 80260<br>Phone Number: (303) 733-6353<br>Fax Number: (303) 865-5666<br>E-mail: mrobbins@ramoslaw.com | Case Number: 2025CV030137<br><br>Division: C |
| **PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND** | |

Plaintiff Michael Bueno, by and through his attorneys, Ramos law, hereby submits his Second Amended Complaint for Damages and Jury Demand as follows:

## I.     PARTIES, JURISDICTION, AND VENUE

1.     This lawsuit arises out of injuries, damages, and losses sustained by Plaintiff Michael Bueno ("Plaintiff" or "Mr. Bueno"), as a result of a motor vehicle collision involving Defendant Tara Porter ("Defendant Porter") on May 15, 2023.

2.     Plaintiff is and was, at all relevant times, a resident of the State of Colorado.

3.     Upon information and belief, Defendant Porter is and was, at all relevant times, a resident of the State of Colorado, residing at 10588 Ronald Lane, Northglenn, Colorado 80234.

4. Upon information and belief, Defendant Automotive Specialists Inc. ("Defendant Automotive Specialists") is and was, at all relevant times, a Colorado Corporation in good standing to conduct business in the State of Colorado with a principal office street address of 11717 LL 9th St, Blanca, Colorado 81123.

5. Upon information and belief, the registered agent for Defendant Automotive Specialists is located at 11717 LL 9th St, Blanca, Colorado 81123.

6. All acts and omissions of Defendant Automotive Specialists' agents and/or employees described herein were undertaken within the course and scope of their agency and/or employment, and Defendant Automotive Specialists is vicariously liable for those acts and omissions under the doctrine of *respondeat superior*.

7. Upon information and belief, Defendant Cardone Industries, Inc. ("Defendant Cardone") is and was, at all relevant times, a foreign corporation with a principal office street address of 5501 Whitaker Avenue. Philadelphia, Pennsylvania 19124.

8. Upon information and belief, the registered agent for Defendant Cardone is Registered Agent Solutions, Inc., located at 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

9. Defendant Carone has purposefully availed itself of the privilege of conducting activities in Colorado.

10. This matter relates to Defendant Cardone's contacts with the State of Colorado.

11. This Court has personal jurisdiction over the parties of this action pursuant to C.R.S. § 13-1-124.

2

12.     Pursuant to C.R.S.A. Const. Art. VI § 9, this Court has subject matter jurisdiction over this action because it involves a civil matter and District Courts are courts of general and original jurisdiction.

13.     Venue is appropriate before this Court pursuant to C.R.C.P. 98(c) because the tortious acts, as more fully described elsewhere in this action, occurred within the County of Adams.

## II.     GENERAL ALLEGATIONS

14.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

15.     On or about April 24, 2023, Defendant Porter's 2003 Dodge Ram 2500 (VIN 3D7KU28623G745260) was delivered to Defendant Automotive Specialists Inc. ("Automotive Specialists") in Westminster, Colorado, for inspection and service.

16.     Between April 24 and May 11, 2023, Defendant Automotive Specialists performed and billed for, among other work, the removal and replacement of the front brake pads and rotors, cleaning and lubrication of brake hardware, adjustment of the brakes, a transmission service, and a suspension alignment.

17.     At all relevant times, Defendant Automotive Specialists owed a duty to exercise reasonable care in diagnosing, servicing, and repairing Defendant Porter's 2003 Dodge Ram 2500's braking system, including the duty to properly inspect, replace, bleed, and test the brake components and to warn Defendant Porter of any dangerous condition.

18.     Defendant Porter's 2003 Dodge Ram 2500 was picked up at Automotive Specialists on May 11, 2023.

19. Upon information and belief, Defendant Automotive Specialists failed to warn or instruct Defendant Porter regarding any break-in or bedding-in steps, failed to caution her to avoid sudden or heavy braking, and failed to advise her to monitor brake pedal feel or fluid levels or to return for a follow-up inspection after service was completed on May 11, 2023.

20. Upon information and belief, Defendant Automotive Specialists further failed to provide written or verbal notice of any precautions, limitations, or testing procedures necessary to confirm that the braking system was functioning safely after the service was completed on May 11, 2023.

21. On May 15, 2023, at approximately 7:57 a.m., Mr. Bueno was driving his 2007 Honda Odyssey southbound on I-25 in Thorton, Colorado, when he stopped for traffic conditions ahead of him.

22. At or around that same time, Defendant Porter was operating her 2003 Dodge Ram 2500 southbound on I-25 directly behind Mr. Bueno.

23. At or around that same time, Defendant Porter disregarded traffic conditions and collided into the rear end of Mr. Bueno's 2007 Honda Odyssey.

24. The force of the May 15, 2023, collision caused by Defendant Porter pushed Mr. Bueno's vehicle into the rear end of a 2021 Volkswagen Jetta driven by Mr. Thomas Clark.

25. The force of the May 15, 2023, collision caused by Defendant Porter produced severe damage to the front and rear end of Mr. Bueno's 2007 Honda Odyssey.

26. Upon information and belief, prior to the May 15, 2023, collision, Defendant Porter was aware that the brakes on her 2003 Dodge Ram 2500 were leaking brake fluid.

27. Upon information and belief, prior to the May 15, 2023, collision, Defendant Porter was aware that the brakes on her 2003 Dodge Ram 2500 were malfunctioning and/or damaged.

28. Despite performing brake work days before the collision, upon information and belief, Defendant Automotive Specialists failed to properly inspect, install, or test the brake system; failed to ensure the hydroboost brake booster and related hydraulic lines were safe and leak-free; and failed to warn Defendant Porter of any residual hazards, resulting in catastrophic brake failure to her 2003 Dodge Ram 2500.

29. Following the collision, on or about May 15, 2023, Defendant Porter's 2003 Dodge Ram 2500 was towed to Defendant Automotive Specialists, for inspection and service.

30. Between May 15, 2023, and June 5, 2023, Defendant Automotive Specialists performed and billed for, among other work, the removal and replacement of the power brake booster with hydro boost power brake booster.

31. Upon information and belief, the hydroboost power brake booster installed in Defendant Porter's 2003 Dodge Ram 2500 prior to the May 15, 2023, collision was a refurbished or remanufactured component produced, rebuilt, distributed, or otherwise placed into the stream of commerce by Defendant Cardone.

32. Upon information and belief, Defendant Cardone is in the business of designing, manufacturing, rebuilding, refurbishing, distributing, and selling automotive components, including hydroboost brake booster systems, for use in consumer vehicles.

33. Upon information and belief, the hydroboost brake booster installed in Defendant Porter's vehicle was defective and unreasonably dangerous when it left the possession and control of Cardone, including but not limited to defects in design, manufacture, assembly, refurbishment, testing, or quality control.

5

34.     Upon information and belief, the hydroboost brake booster was expected to and did reach Defendant Porter and/or Automotive Specialists without substantial change in its condition from the time it left Cardone's control.

35.     Upon information and belief, the hydroboost brake booster failed suddenly and catastrophically, causing or contributing to a loss of braking function in Defendant Porter's vehicle immediately prior to the May 15, 2023, collision.

36.     Upon information and belief, the failure of the hydroboost brake booster was due, in whole or in part, to the negligent, defective, or otherwise improper design, manufacture, rebuilding, refurbishment, inspection, testing, or distribution of the component by Defendant Cardone.

37.     Upon information and belief, Defendant Cardone failed to exercise reasonable care in the design, manufacture, rebuilding, refurbishment, inspection, testing, and/or distribution of the hydroboost brake booster.

38.     Upon information and belief, Defendant Cardone knew or should have known that a defect in the hydroboost brake booster could result in a sudden loss of braking capability, creating an unreasonable risk of harm to motorists, including Plaintiff.

39.     Upon information and belief, Defendant Cardone failed to provide adequate warnings or instructions regarding the risks associated with the hydroboost brake booster, including the risk of sudden failure.

40.     The defective and/or unreasonably dangerous condition of the hydroboost brake booster, as designed, manufactured, rebuilt, or distributed by Defendant Cardone, was a direct and proximate cause of the May 15, 2023 collision and Plaintiff's resulting injuries, damages, and losses.

41.     Mr. Bueno took every reasonable measure to avoid the May 15, 2023, motor vehicle collision.

42.     Mr. Bueno was not negligent nor at fault for the May 15, 2023, motor vehicle collision.

43.     Immediately following the May 15, 2023, motor vehicle collision, Mr. Bueno experienced discomfort in his neck, back, left shoulder, and head.

44.     Since the May 15, 2023, motor vehicle collision, Mr. Bueno has been evaluated, diagnosed, and treated for cervicalgia, cervical and thoracic sprain and strain, complete tear of left rotator cuff, subacromial bursitis of left shoulder, partial rupture of left biceps tendon, and sepsis from MSSAA bacteremia with resulting complications of L4-L5 spinal epidural abscess, arthritis of left elbow, deep vein thrombosis of left lower extremity, lumbar discitis.

45.     As a direct and proximate result of the negligent acts and omissions of Defendant Porter, Mr. Bueno has incurred past medical expenses exceeding $1,000,000.00 for treatment of his incident-related injuries.

46.     As a direct and proximate result of the negligent and unlawful conduct of Defendant Porter, Mr. Bueno has suffered, and will continue to suffer, injuries, damages, and losses, including but not limited to past and future medical expenses, lost wages, loss of earning potential, loss of enjoyment and quality of life, permanent physical impairment, pain and suffering, mental anguish, and emotional distress.

## III.     FIRST CLAIM FOR RELIEF
(*Negligence against Defendant Porter*)

47.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

7

48.     At all relevant times, Defendant Porter owed a duty to Mr. Bueno and other drivers on the road to operate her vehicle in safe, careful, and reasonable manner.

49.     Defendant Porter breached her duty of care to Mr. Bueno and was negligent in causing the May 15, 2023, motor vehicle collision by, *inter alia*:

a.  Failing to use reasonable care in operation of her vehicle,

b.  Failing to observe traffic conditions,

c.  Failing to keep a proper lookout,

d.  Failing to stop her vehicle,

e.  Following too closely,

f.  Failing to inspect her vehicle for proper brake functioning prior to its operation,

g.  Failing to ensure her brakes were repaired and/or replaced prior to operating her vehicle,

h.  Driving her vehicle in a careless and reckless manner, and

i.  Such other and further acts and omissions constituting negligence to be revealed through discovery.

50.     At all relevant times, the provisions of C.R.S. § 42-4-202 were in effect.

51.     At all relevant times, C.R.S. § 42-4-202(a) provided that "[i]t is unlawful for any person to drive… on any highway any vehicle… which is in such unsafe condition as to endanger any person, or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment…."

52.     At the time of the occurrence in question in this case, Defendant Porter violated C.R.S. § 42-4-202(a) by operating her vehicle, which had malfunctioning and/or damaged brakes, in an unsafe condition.

53. The purpose of C.R.S. § 42-4-202(a) is to protect persons such as Mr. Bueno from the types of injuries, damages, and losses sustained as a result of Defendant Porter's negligent acts and omissions.

54. Defendant Porter's violation of C.R.S. § 42-4-202(a) constitutes negligence *per se*.

55. At all relevant times, the provisions of C.R.S. § 42-4-1402 were in effect.

56. At all relevant times, C.R.S. § 42-4-1402 provided that "[a] person who drives a motor vehicle… without due regard for the width, grade, curves, corners, traffic, and use of the streets and highways and all other attendant circumstances, is guilty of careless driving."

57. At the time of the occurrence in question in this case, Defendant Porter violated C.R.S. § 42-4-1402 by operating her vehicle in a careless manner.

58. The purpose of C.R.S. § 42-4-1402 is to protect persons such as Mr. Bueno from the types of injuries, damages, and losses sustained as a result of Defendant Porter's negligent acts and omissions.

59. Defendant Porter's violation of C.R.S. § 42-4-1402 constitutes negligence *per se*.

60. As a direct and proximate result of the negligence and negligence *per se* of Defendant Porter, Plaintiff Michael Bueno has suffered injuries, damages, and losses, more fully described elsewhere herein.

### IV.   SECOND CLAIM FOR RELIEF
#### (*Negligence against Defendant Automotive Specialists*)

61. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

62. All negligent acts or omissions of Defendant Automotive Specialists' agents and/or employees are attributable to Defendant Automotive Specialists under the doctrine of *respondeat superior*.

63.      Between April 24 and May 11, 2023, agents and/or employees of Defendant Automotive Specialists agreed to and did perform repairs and maintenance on the Defendant Porter's 2003 Dodge Ram 2500, including removal and replacement of the front brake pads and rotors, cleaning and lubrication of brake hardware, adjustment of the brakes, transmission service, and a suspension alignment.

64.      Defendant Automotive Specialists owed Plaintiff and the motoring public a duty to perform all maintenance and repairs on the subject 2003 Dodge Ram 2500 in a careful, skillful, and reasonable manner.

65.      Defendant Automotive Specialists breached that duty by, *inter alia*:

a.  Failing to properly inspect the vehicle's entire brake system, including the hydroboost brake booster and hydraulic lines, before and after replacing the front pads and rotors;

b.  Failing to properly install, bleed, and test the front brake components it serviced;

c.  Failing to detect or warn of any defective, worn, or leaking hydroboost brake booster, hoses, or related components;

d.  Failing to advise Defendant Porter of necessary repairs or of the need for additional inspection or break-in procedures to ensure safe braking;

e.  Failing to exercise reasonable care and the skill ordinarily possessed by automotive repair professionals;

f.  Failing to perform the vehicle's repairs in a workmanlike manner;

g.  Failing to return the vehicle in a reasonably safe and roadworthy condition; and

h.  Such other and further acts and omissions constituting negligence to be revealed through discovery.

66.      As a direct and proximate result of Defendant Automotive Specialists' negligent acts and omissions, Defendant Porter's braking system suffered catastrophic loss of hydraulic pressure on May 15, 2023, causing Defendant Porter to rear-end Plaintiff's vehicle.

10

67.     As a direct and proximate result of the negligence of Defendant Automotive Specialists, Plaintiff Michael Bueno has suffered injuries, damages, and losses, more fully described elsewhere herein.

### V.     THIRD CLAIM FOR RELIEF
*(Strict Product Liability – Defective Product – against Defendant Automotive Specialists)*

68.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

69.     Plaintiff is within the class of persons that Defendant Cardone should reasonably foresee as being subject to the harm caused by the defective hydroboost brake booster, including motorists such as Plaintiff who would be exposed to a sudden loss of braking capability.

70.     Defendant Cardone is engaged in the business of designing, manufacturing, assembling, rebuilding, refurbishing, marketing, distributing, and/or otherwise placing hydroboost brake booster systems into the stream of commerce.

71.     Upon information and belief, the hydroboost brake booster installed in Defendant Porter's vehicle was placed into the stream of commerce by Defendant Cardone in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design, manufacture, and/or refurbishment of the product.

72.     Upon information and belief, the hydroboost brake booster was defective in design, manufacture, assembly, rebuilding, refurbishment, testing, and/or quality control and was unreasonably dangerous when it left the possession and control of Defendant Cardone.

73.     Upon information and belief, the hydroboost brake booster reached Defendant Porter and/or Defendant Automotive Specialists without substantial alteration in the condition in which it was sold.

74. Upon information and belief, the hydroboost brake booster was unreasonably dangerous beyond the extent contemplated by ordinary consumers with ordinary knowledge common to the community regarding such products.

75. Upon information and belief, the hydroboost brake booster was defective, including but not limited to an unreasonable risk of sudden and catastrophic failure resulting in loss of braking capability.

76. Upon information and belief, Defendant Cardone failed to adequately design, study, inspect, and/or test the hydroboost brake booster, and further failed to adequately report the results of any such testing.

77. Defendant Cardone knew or should have known of the risk of injury associated with the hydroboost brake booster, including the risk of sudden brake failure, yet failed to take reasonable steps to correct the defect.

78. The product defects described herein were a substantial contributing cause of the hydroboost failure, the resulting loss of braking capability, and the subject collision.

79. As a direct and proximate result of the defective and unreasonably dangerous condition of the hydroboost brake booster, Plaintiff sustained serious injuries, damages, and losses as described elsewhere herein.

## VI.   FOURTH CLAIM FOR RELIEF
### (*Strict Product Liability – Failure to Warn – against Defendant Automotive Specialists*)

80. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

81. Upon information and belief, Defendant Cardone designed, manufactured, assembled, rebuilt, refurbished, marketed, and distributed the hydroboost brake booster and placed it into the stream of commerce.

82.     Upon information and belief, the hydroboost brake booster was defective due to inadequate warnings, inadequate instructions, inadequate study, and/or inadequate testing.

83.     Upon information and belief, Defendant Cardone failed to provide adequate warnings or instructions regarding the risks associated with the hydroboost brake booster, including but not limited to the risk of sudden failure and loss of braking capability.

84.     Upon information and belief, the hydroboost brake booster was further defective due to the absence of warnings that would have properly notified users, mechanics, and consumers of the risk that failure of the component could result in an inability to stop the vehicle.

85.     Defendant Cardone knew or should have known of the risk of injury associated with the hydroboost brake booster yet failed to provide adequate warnings to the consuming public.

86.     The inadequate warnings, and the failure to provide warnings of any kind, were a substantial factor in causing the hydroboost failure and the resulting collision.

87.     As a direct and proximate result of Defendant Cardone's failure to warn, Plaintiff sustained serious injuries, damages, and losses as described elsewhere herein.

## VII.    FIFTH CLAIM FOR RELIEF
### (*Breach of Implied Warranty against Defendant Automotive Specialists*)

88.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

89.     Upon information and belief, Defendant Cardone manufactured, rebuilt, refurbished, marketed, distributed, and/or otherwise placed the hydroboost brake booster into the stream of commerce.

90.     Upon information and belief, Defendant Cardone impliedly warranted that the hydroboost brake booster was fit for its ordinary and intended purpose, including providing safe and reliable braking assistance.

13

91.     Plaintiff and others similarly situated are individuals whom Defendant Cardone could reasonably expect to use or be affected by the hydroboost brake booster.

92.     Upon information and belief, The hydroboost brake booster was defective and not fit for its ordinary purpose.

93.     Upon information and belief, Defendant Cardone breached its implied warranties by placing a defective and unreasonably dangerous product into the stream of commerce.

94.     Upon information and belief,  Defendant Cardone was on notice of similar defects and failures through prior incidents, complaints, testing, or other information available to it.

95.     Defendant Cardone's breach of warranty was a direct and proximate cause of the hydroboost failure, the resulting collision, and Plaintiff's injuries as described elsewhere herein.

## VIII.   SIXTH CLAIM FOR RELIEF
### (*Negligence against Defendant Automotive Specialists*)

96.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

97.     Defendant Cardone owed a duty to exercise reasonable care in the design, manufacture, rebuilding, refurbishment, inspection, testing, marketing, and distribution of the hydroboost brake booster.

98.     Upon information and belief, Defendant Cardone breached its duty of care by, *inter alia*:

> a.     Failing to properly design the hydroboost brake booster;
>
> b.     Failing to properly manufacture, rebuild, or refurbish the component;
>
> c.     Failing to adequately inspect and test the component;
>
> d.     Failing to implement adequate quality control procedures;
>
> e.     Failing to identify and correct defects;

14

f.     Failing to provide adequate warnings or instructions; and

g.     Such other and further acts and omissions constituting negligence to be revealed through discovery.

99. Upon information and belief, the hydroboost brake booster was not altered or tampered with after leaving the possession and control of Defendant Cardone beyond ordinary installation and use.

100. As such, the presence of the defect is attributable to Defendant Cardone's negligence.

101. Upon information and belief, Defendant Cardone's negligence was a substantial contributing cause of the hydroboost failure, the loss of braking capability, and the subject collision.

102. As a direct and proximate result of Defendant Cardone's negligence, Plaintiff sustained serious injuries, damages, and losses as described elsewhere herein.

## IX.    <u>REQUEST FOR TRIAL BY JURY</u>

103. Plaintiff demands trial by jury for all claims set forth herein.

WHEREFORE, Plaintiff Michael Bueno, requests that judgement be entered in his favor and against Defendants in an amount sufficient to fully compensate him for all injuries, damages, and losses he sustained to the full extent allowed by law, including, without limitation, economic, non-economic, and physical impairment damages as provided for under Colorado law as well as interest, cost, and such other relief as this Court deems just and appropriate.

Respectfully submitted this 26th day of March, 2026.

RAMOS LAW
*This pleading is filed electronically pursuant to C.R.C.P. 121 § 1-26. The original signed pleading is in counsel's file.*

By: /s/ *Madeline S. Robbins*

15

Madeline S. Robbins (#56547)
*Attorneys for Plaintiff*

Address of Plaintiff:
c/o Ramos Law
10190 Bannock Street, Suite 200
Northglenn, Colorado 80260

16