EXHIBIT A-4

10:30 AM
05/21/26
Accrual Basis

## GOLD STAR WAREHOUSING, LTD
## Customer Open Balance
### September 25, 2025 through May 1, 2026

| Type | Date | Num | Memo | Due Date | Open Balance | Amount |
|------|------|-----|------|----------|--------------|--------|
| Invoice | 10/01/2025 | 673321-2 | 5925 E 14TH ST STE B | 10/01/2025 | 2,400.00 | 2,400.00 |
| Invoice | 10/15/2025 | 6567 | 5925 E 14TH ST STE B | 10/15/2025 | 633.75 | 633.75 |
| Invoice | 11/01/2025 | 675831-2 | 5925 E 14TH ST STE B | 11/01/2025 | 2,400.00 | 2,400.00 |
| Invoice | 11/01/2025 | 6575 | 5925 E 14TH ST STE B | 11/01/2025 | 16,250.00 | 16,250.00 |
| Invoice | 11/14/2025 | 6598 | 5925 E 14TH ST STE B | 11/14/2025 | 633.75 | 633.75 |
| Invoice | 11/20/2025 | 676844-2 | 5925 E 14TH ST STE B | 11/20/2025 | 795.26 | 795.26 |
| Invoice | 11/21/2025 | 676846-2 | 5925 E 14TH ST STE B | 11/21/2025 | 2,400.00 | 2,400.00 |
| Invoice | 11/21/2025 | 676845-2 | 5925 E 14TH ST STE B | 05/21/2026 | 831.78 | 831.78 |
| Invoice | 12/01/2025 | 6607 | 5925 E 14TH ST STE B | 12/01/2025 | 16,250.00 | 16,250.00 |
| Invoice | 12/16/2025 | 6628 | 5925 E 14TH ST STE B | 12/16/2025 | 633.75 | 633.75 |
| Invoice | 12/17/2025 | 678057-5 | 5925 E 14TH ST STE B | 12/17/2025 | 745.68 | 745.68 |
| Invoice | 12/22/2025 | 678705-2 | 5925 E 14TH ST STE B | 12/22/2025 | 2,400.00 | 2,400.00 |
| Invoice | 01/01/2026 | 679019-2 | 5925 E 14TH ST STE B | 01/01/2026 | 2,400.00 | 2,400.00 |
| Invoice | 01/01/2026 | 6636 | 5925 E 14TH ST STE B | 01/01/2026 | 16,250.00 | 16,250.00 |
| Invoice | 01/15/2026 | 6664 | 5925 E 14TH ST STE B | 01/15/2026 | 633.75 | 633.75 |
| Invoice | 01/26/2026 | 679968-2 | 5925 E 14TH ST STE B | 01/26/2026 | 800.06 | 800.06 |
| Invoice | 02/01/2026 | 679731-2 | 5925 E 14TH ST STE B | 02/01/2026 | 2,400.00 | 2,400.00 |
| Invoice | 02/01/2026 | 6672 | 5925 E 14TH ST STE B | 02/01/2026 | 16,250.00 | 16,250.00 |
| Invoice | 02/16/2026 | 681169-1 | 5925 E 14TH ST STE B | 02/16/2026 | 661.26 | 661.26 |
| Invoice | 02/16/2026 | 6691 | 5925 E 14TH ST STE B | 02/16/2026 | 633.75 | 633.75 |
| Invoice | 03/01/2026 | 681597-2 | 5925 E 14TH ST STE B | 03/01/2026 | 2,400.00 | 2,400.00 |
| Invoice | 03/01/2026 | 6699 | 5925 E 14TH ST STE B | 03/01/2026 | 16,250.00 | 16,250.00 |
| Invoice | 03/09/2026 | 682454-1 | 5925 E 14TH ST STE B | 03/09/2026 | 754.16 | 754.16 |
| Invoice | 03/16/2026 | 6721 | 5925 E 14TH ST STE B | 03/16/2026 | 633.75 | 633.75 |
| Invoice | 04/01/2026 | 683138-2 | 5925 E 14TH ST STE B | 04/01/2026 | 2,400.00 | 2,400.00 |
| Invoice | 04/01/2026 | 6729 | 5925 E 14TH ST STE B | 04/01/2026 | 16,250.00 | 16,250.00 |
| Invoice | 04/15/2026 | 6751 | 5925 E 14TH ST STE B | 04/15/2026 | 633.75 | 633.75 |
| Invoice | 04/29/2026 | 685584-1 | 5925 E 14TH ST STE B | 04/29/2026 | 765.66 | 765.66 |
| Invoice | 05/01/2026 | 689940-2 | 5925 E 14TH ST STE B | 05/01/2026 | 2,400.00 | 2,400.00 |
| Invoice | 05/01/2026 | 6760 | 5925 E 14TH ST STE B | 05/01/2026 | 16,250.00 | 16,250.00 |

Total CARTER FUEL SYSTEMS

TOTAL

| | 145,140.11 | 145,140.11 |
|---|---|---|
| | 145,140.11 | 145,140.11 |

10:30 AM
05/21/26
**Accrual Basis**

## GOLD STAR WAREHOUSING, LTD
## Customer Open Balance
### September 25, 2025 through May 1, 2026

| Type | Date | Num | Memo | Due Date | Open Balance | Amount |
|------|------|-----|------|----------|--------------|--------|
| Invoice | 09/30/2025 | 673826-1 | 5925 E 14TH ST STE C | 09/30/2025 | 14,192.64 | 14,192.64 |
| Invoice | 10/03/2025 | 674013-1 | 5925 E 14TH ST STE C | 10/03/2025 | 14,192.64 | 14,192.64 |
| Invoice | 11/13/2025 | 676215-1 | 5925 E 14TH ST STE C | 11/13/2025 | 14,192.64 | 14,192.64 |
| Invoice | 12/10/2025 | 678033-1 | 5925 E 14TH ST STE C | 12/10/2025 | 14,192.64 | 14,192.64 |
| Invoice | 12/31/2025 | 678706-1 | 5925 E 14TH ST STE C | 12/31/2025 | 14,192.64 | 14,192.64 |
| Invoice | 02/05/2026 | 680584-1 | 5925 E 14TH ST STE C | 02/05/2026 | 14,192.64 | 14,192.64 |
| Invoice | 03/09/2026 | 682431-1 | 5925 E 14TH ST STE C | 03/09/2026 | 14,192.64 | 14,192.64 |
| Invoice | 04/09/2026 | 684331-1 | 5925 E 14TH ST STE C | 04/09/2026 | 14,192.64 | 14,192.64 |
| Invoice | 04/30/2026 | 685583-1 | 5925 E 14TH ST STE C | 04/30/2026 | 14,192.64 | 14,192.64 |
| Total CARTER FUEL SYSTEMS | | | | | 127,733.76 | 127,733.76 |
| **TOTAL** | | | | | **127,733.76** | **127,733.76** |

# LEASE AGREEMENT

THIS LEASE, dated March 31st, 2017, and with an effective date as set forth below, by and between GOLDSTAR WAREHOUSING, LTD., a Texas limited partnership of Cameron County, Texas, hereinafter referred to as "Lessor," and Carter Fuel Systems, an Indiana, corporation, hereinafter referred to as "Lessee."

## WITNESSETH:

Lessor does hereby lease unto Lessee those certain premises (hereinafter Premises) described as and designated as the real property, together with any improvements and fixtures located thereon, located at 5925 E. 14th Street, Ste. B, Brownsville, Cameron County, Texas. Said Premises consists of approximately 32,500 sq. ft. of warehouse space.

1.    **Term**   This lease is for a term of (6) six months, commencing on the 1st day of April, 2017 and terminating at 12:00 o'clock midnight on the 30th day of September, 2017. This Lease shall automatically renew upon the expiration of the initial term and each renewal term for successive (1) one term(s) without action of the parties. This Lease shall remain in full force and effect until written notice of revocation/cancellation by either party is given at least (30) thirty days prior to renewal date.

2.    **Rent and Security Deposit**

     2.01    Rent. The monthly rental for the Leased Premises is ($ 0.39) thirty-nine cents per square foot per month which amounts to a minimum of ($ 12,675.00) twelve thousand six hundred seventy-five And NO/100 Dollars per month. Said monthly payments shall be made in advance, without notice, on the 1st day of each month during the lease term. If the regular monthly payment has not reached Lessor in any manner whatsoever before the end of the 10th day following the due date, a late payment penalty equivalent to five percent (5%) of the monthly rental amount will be assessed by Lessor, and Lessee will be expected to pay the late payment penalty at the time of making the monthly rental payment. Lessee is responsible for utilities; this will be as pass thru charge.

     2.02    Security Deposit. NA

3.    **Use of Premises**. Lessee will use the leased premises solely for the purpose of conducting a warehousing and distribution facility, unless Lessor shall give Lessee prior written consent for a different use.

4.    **Maintenance and Repairs**.

     4.01    Condition of Premises. Lessee acknowledges that its acceptance of possession of the Premises constitutes a conclusive admission that it has inspected the Premises and has found them in reasonable condition and repair.

     4.02    Services. So long as Lessee is not in default hereunder, Lessor shall maintain the roof and exterior portions of the building, except for windows and doors. Lessor shall render no general services of any nature to Lessee.

     4.03    Maintenance and Utilities. Lessee shall throughout the Lease term maintain and clean both the interior and the exterior of the Leased Premises and keep them free from waste or nuisance, and shall deliver up the premises in a clean and sanitary condition at the termination of this lease in good repair and condition, reasonable wear and tear and damage by fire, tornado, hurricane or other casualty excepted. In the event Lessee should neglect to reasonably maintain either the exterior or

*ana 4-3-17*

the interior of the Leased Premises, Lessor shall have the right, but not the obligation, to cause repairs or corrections to be made, and any reasonable costs therefor shall be payable by Lessee to Lessor as additional rental on the next rental installment date.

Lessee, at its sole cost and expense, shall be responsible for the following:

(a)     N/A

(b)     Lessee, at its sole expense, shall provide janitorial services inside the Leased premises;

(c)     Lessee shall at all times keep the exterior of the leased premises, particularly the sidewalks and doorways, clean and free of any debris or obstructions or any kind;

(d)     Lessee shall keep up with A/C maintenance for example, filters, annual cleaning, etc.

5.     **Obligations of Lessor and Lessee.**

5.01     Taxes. Lessee shall be liable for all taxes levied or assessed against personal property, furniture or fixtures placed by Lessee in the Premises. If any such taxes for which Lessee is liable are levied or assessed against Lessor or Lessor's property and if Lessor elects to pay the same or if the assessed value of Lessor's property is increased by inclusion of personal property, furniture or fixtures placed by Lessee in the Premises, and Lessor elects to pay the taxes based on such increase, Lessee shall pay to Lessor upon demand that part of such taxes for which Lessee is primarily liable hereunder.

5.02     Alterations, additions and improvements. Lessee shall not make any alterations, additions or improvements to the Leased Premises without the prior written consent of Lessor. Consent for nonstructural alterations, additions or improvements shall not be unreasonably withheld by Lessor. Lessee shall have the right at all times to erect or install furniture and fixtures, provided that Lessee complies with all applicable governmental laws, ordinances and regulations. Lessee shall have the right to remove at the termination of this Lease such items so installed, provided Lessee is not in default; however, Lessee shall, prior to the termination of this lease, repair any damage caused by such removal. Lessee agrees not to remove any floor coverings and wall coverings that may be placed in the leased premises without the prior permission of Lessor.

5.03     Damage or destruction.

(a)   If the building or the Leased Premises should be totally destroyed by fire, tornado, or other casualty, or if they should be so damaged that rebuilding or repairs cannot reasonably be completed within one hundred twenty (120) working days from the date of the occurrence of the damage, this Lease shall terminate and rent shall be abated for the un expired portion of this Lease, effective as of the date of said occurrence and all rights, obligations and liabilities of both parties hereunder shall cease.

(b)   If the building or the Leased Premises should be damaged by fire, tornado, or other casualty, but not to such an extent that rebuilding or repairs cannot reasonably be completed within one hundred twenty (120) working days from the date of the occurrence of the damage, this lease shall not terminate, but Lessor shall, if the casualty has occurred prior to the final two (2) months of the Lease Term, at its sole cost and risk, proceed forthwith to rebuild or repair the Leased Premises to substantially the condition in which they existed prior to such damage. If the casualty occurs during the final month of the Lease Term, Lessor shall not be required to rebuild or repair such damage. If the Leased Premises are to be rebuilt or repaired and are untenable in whole or in part following such damage, the rent payable hereunder during the period in which they are untenable shall be adjusted equitably. In the event that Lessor should fail to complete such rebuilding or repairs within one hundred twenty (120) working days from the date of the occurrence of the damage, Lessee may

*PWR  4-7-17*

at its option terminate this lease by written notification at such time to Lessor, whereupon all rights, obligations and liabilities of both parties hereunder shall cease.

5.04  Condemnation. If during the term of this Lease or any extension or renewal thereof, all or a portion of the Leased Premises should be taken for any public or quasi-public use under any governmental law, ordinance or regulation, or by right of eminent domain, or should be sold to the condemning authority under threat of condemnation, at the option of the Lessor this lease shall terminate and the rent shall be abated during the un expired portion of this Lease, effective as of the date of the taking of said Premises by the condemning authority and all rights, obligations and liabilities of both parties hereunder shall cease. Lessor shall receive the entire award from any such taking, and Lessee shall have no claim thereto, of for the value of any un expired Term of this Lease. Notwithstanding, Lessee shall have the option to continue to lease, in the event of condemnation, less than fifty percent (50%) of the Leased Premises, in which event the lease shall continue with a pro rata reduction in rent for the amount of square footage lost.

5.05  Rules and Regulations. Lessee and Lessee's agents, employees and invitees will comply fully with any rules and regulations of the building and its related facilities as they any be hereinafter established and that may be deemed advisable for the safety, care and cleanliness of the__ facilities.

5.06  Inspection. Lessor or its officers, agents and representatives shall have the right to enter into and upon any and all parts of the Leased Premises at all reasonable hours to (a) inspect same or clean or make repairs as Lessor may deem necessary (but without any obligation to do so, except as expressly provided for herein), or (b) show the Premises to prospective tenants, purchases, or lenders; and Lessee shall not be entitled to any abatement or reduction of rent by reason thereof, nor shall such be deemed to be an actual or constructive eviction.

5.07  Mechanic's Lien. Lessee will not permit any mechanic's lien or liens to be placed upon the premises or the building or improvements thereon during the term hereof, and in case of the filing of any such lien Lessee will promptly pay same. If default in payment thereof shall continue for twenty (20) days after written notice thereof from Lessor to Lessee, the Lessor shall have the right and privilege, at Lessor's option of paying the same or any portion thereof without inquiry as to the validity thereof, and any amounts so paid, including expenses and interest, shall be so much additional indebtedness hereunder due from Lessee to Lessor and shall be repaid to Lessor immediately on rendition of a bill therefor, together with interest at then percent (10%) per annum until repaid.

6.  **Indemnity**.

Lessee agrees to indemnify and hold Lessor harmless against any and all claims, demands, damages, costs and expenses, including reasonable attorney's fees for the defense thereof, arising from the conduct or management of Lessee's business or its use of the Leased Premises or from any breach on the part of Lessee of any conditions of this lease, or from any act or negligence of any conditions of this lease, or from any act or negligence of any conditions of this lease, or from any act or negligence of Lessee, its agents, contractors, employees, sub-tenants, guests or invitees in or about the leased premises. In case of any action or proceeding brought against Lessor by reason of any such claim, Lessee, upon notice from Lessor, covenants to defend such action or proceeding by counsel acceptable to Lessor.

7.  **Assignment and Sublease**.

7.01  Assignment and subletting by Lessee. Lessee shall not have the right to assign or sublet the leased premises without the specific written consent of Lessor having first been obtained.

7.02  Assignment By Lessor. Lessor is expressly given the right to assign any or all of its interest under the terms of this lease.

8.  **Default**.

8.01   Events of default. The following events shall be deemed to be events of default by Lessee under this lease:

(a)   Lessee shall fail to pay any installment of the rent hereby reserved and such failure shall continue for a period of five (5) days after written notice thereof.

(b)   Lessee shall fail to comply with any term, provision, or covenant of this lease, other than the payment of rent, and shall not cure such failure within twenty (20) days after written notice thereof to Lessee.

(c)   Lessee shall make an assignment for the benefit of creditors.

(d)   Lessee shall file a petition under any section or chapter of the National Bankruptcy Act, as amended, or under any similar law or statute of the United States or any state thereof; or Lessee shall be adjudged bankrupt or insolvent in proceedings filed against Lessee thereunder and such adjudication shall not be vacated or set aside or stayed within the time permitted by law.

(e)   A receiver or trustee shall be appointed for all or substantially all of the assets of Lessee and such receivership shall not be terminated or stayed within the time permitted by law.

8.02   Remedies.  Upon the occurrence of any event of default specified in Section 8.01 hereof, Lessor shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever:

(a)   Terminate this lease, in which event Lessee shall immediately surrender the Premises to Lessor, and if Lessee fails to do so, Lessor may, without prejudice to any other remedy which it may have for possession or arrearages in rent, enter upon and take possession of and expel or remove Lessee and any other person who may be occupying said Premises or any part thereof, by force if necessary, without being liable for prosecution or any claim of damages therefor; and Lessee agrees to pay to Lessor on demand the amount of all loss and damages which Lessor may suffer by reason of such termination, whether through inability to relent the Premises on satisfactory terms or otherwise.

(b)   Enter upon the Premises by force if necessary, without being liable for prosecution or any claim for damages therefor, and do whatever Lessee is obligated to do under the terms of this Lease; and Lessee agrees to reimburse Lessor on demand for any expenses which Lessor may incur in thus effecting compliance with Lessee's obligations under this Lease; and Lessee further agrees that Lessor shall not be liable for any damages resulting to Lessee form such action.

No reentry or taking possession of the Premises by Lessor shall be constructed as an election on its part to terminate this Lease, unless a written notice of such intention be given to Lessee. Notwithstanding any such relenting or reentry or taking possession. Lessor may at any time thereafter elect to terminate this lease for a previous default.  Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided by law, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any rent due to Lessor hereunder or of any damages accruing to Lessor by reason of the violation of any of the terms, provisions and convents herein contained. Lessor's acceptance of rent following an event of default hereunder shall not be construed as Lessor's waiver of such event of default.  No waiver by Lessor of any violation or breach of any of the terms, provisions and covenants herein contained shall be deemed or construed to constitute a waiver of any other violation or breach of any of the terms, provisions and covenants herein contained. Forbearance by Lessor to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default. The loss or damage that Lessor may suffer by reason of termination of this lease or the deficiency form any relenting as provided for above shall include the expense of repossession and any repairs or remodeling undertaken by Lessor following possession.  Should Lessor at any time terminate this Lease for any default, in addition to any other

/cork/ 4-3-17

remedy Lessor may have, Lessor may recover from Lessee all damages Lessor may incur by reason of such default, including cost of recovering the Premises and the worth at the time of such termination of the excess, if any, of the amount of rent and charges equivalent to rent reserved in this Lease for the remainder of the stated term over the then reasonable rental value of the Premises for the remainder of said term, all of which amounts shall be immediately payable from Lessee to Lessor.

8.03    Surrender of premises.  No act or thing done by the Lessor or its agents during the term hereby granted shall be deemed an acceptance of a surrender of the Premises, and no agreement to accept a surrender of the Premises shall be valid unless the same be made in writing and subscribed by Lessor.

8.04    Lessor's Lien.  In addition to the statutory Lessor's lien, Lessor shall have, at all times, a valid security interest to secure payment of all rentals and other sums of money becoming due hereunder from Lessee, and to secure payment of any damages or loss which Lessor may suffer by reason of the breach by Lessee of any covenant, agreement, or condition contained herein, upon all goods, wares, equipment, fixtures, furniture, improvements, and other personal property of Lessee presently or which may hereafter be situated on the Premises, and all proceeds therefrom, and such property shall not be removed therefrom without the consent of Lessor until all arrearages in rent as well as any and all other sums of money then due to Lessor hereunder shall first have been paid and discharged and all the covenants, agreements, and conditions hereof have been fully complied with and performed by Lessee.  Upon the occurrence of an event of default by Lessee, Lessor may, in addition to any other remedies provided herein, after giving reasonable notice of the intent to take possession and giving an opportunity for a hearing thereon, enter upon the Premises and take possession of any and all goods, wares, equipment, fixtures, furniture, improvements, and other personal property of Lessee situated on the premises, without liability for trespass or conversion, and sell the same at public or private sale, with or without having such property at the sale, after giving Lessee reasonable notice of the time and place of any public sale or of the time after which any private sale is to be made, at which sale the Lessor or its assigns may purchase unless otherwise prohibited by law.  Unless otherwise provided by law, and without intending to exclude any other manner of giving Lessee reasonable notice, the requirement of reasonable notice shall be met if such notice is given at least five (5) days before the time of sale.  The proceeds from any such disposition, less any and all expenses connected with the taking of possession, holding, and selling of the property (including reasonable attorney's fees and other expenses), shall be applied as a credit against the indebtedness secured by the security interest granted in this section.  Any surplus shall be paid to Lessee or as otherwise required by law; and the Lessee shall pay any deficiencies forthwith.  Upon request by Lessor, Lessee agrees to execute and deliver to Lessor a financing statement in form sufficient to perfect the security interest of Lessor in the aforementioned property and proceeds thereof in the State of Texas.  The statutory lien for rent is not hereby waived, the security interest herein granted being in addition and supplementary thereto.

9.    **Insurance.**

9.01    Lessee shall, at its own expense, at all times during the term of this Lease, maintain in full force an all risk policy or policies on all inventory belonging to Lessee.  Such policy should also insure Lessee and Lessor against liability for injury to or death of persons, or loss or damage to property occurring in or about the demised Premises.  The liability under such insurance shall not be less than $1,000,000.00 for any one person killed or injured, $1,000,000.00 for any one accident, and $1,000,000.00 property damage.

9.02    Lessee shall additionally maintain in full force, at all times during the term of this lease, on all inventory, contents and fixtures belonging to Lessee contained within the demised Premises, a policy or policies of fire, tornado, hurricane, windstorm and extended all risk coverage insurance, to the extent of at least one hundred percent (100%) of the insurable replacement value thereof.  Such policies shall name Lessor as a beneficiary to the extent of Lessor's interest, if any, and named insured thereof and shall additionally contain a waiver of subrogation by Lessee against Lessor.

*pw    4-7-17*

Should Lessee not have such fire, tornado, hurricane, windstorm and extended coverage insurance and then suffers a loss, then Lessee does hereby waive and release any and all causes of action, damages, and other claims against Lessor for any and all losses which may be suffered by Lessee from fire, tornado, hurricane, windstorm, theft or any other loss. This waiver and release includes claims based upon negligence, breach of warranty, breach of contract, gross negligence, premises liability, strict liability and landlord's liability. Lessee hereby expressly agrees to and does hereby waive and release any and all claims and any cause of action against lessor for any claims, losses or damages which lessee may suffer from any loss whatsoever, and lessee agrees to be solely bound by any insurance coverage which lessee is obligated to acquire by this lease in order to protect its interests.

9.03   Lessee shall additionally, at its own expense, at all times during the term of this lease secure business interruption insurance in an amount sufficient to indemnify Lessee for any losses caused by any interruption of business activities due to any incident whatsoever, including but not limited to, fire, hurricane, tornado, windstorm, and all other types of losses. Lessee does hereby waive and release any and all causes of action, damages, and other claims against Lessor for any and all losses which may be suffered by Lessee from fire, tornado, hurricane, windstorm, theft or any other loss. This waiver and release includes claims based upon negligence, breach of warranty, breach of contract, gross negligence, premises liability, strict liability and landlord's liability. Lessee hereby expressly agrees to and does hereby waive any cause of action against lessor for any claims, losses or damages which lessee may suffer from any loss whatsoever, and lessee agrees to be solely bound by any insurance coverage which lessee is obligated to acquire by this lease in order to protect its interests.

9.04   Should Lessee fail to keep in effect and pay for such insurance as it is in this section required to maintain, Lessor may do so, in which event the insurance premiums paid by Lessor shall become due and payable forthwith, and the failure of Lessee to pay same on demand shall constitute a breach of this Lease.

10.   **Hazardous Materials**.

10.01   It is specifically understood by Lessee, and Lessee does hereby agree, that at no time shall any "Hazardous Materials" be brought onto or stored on the Leased Premises. As used in this Lease Addendum, the term "Hazardous Materials" means any hazardous or toxic substances, materials or wastes, including, but not limited to, those substances, materials and wastes listed in the United Sates Department of Transportation Hazardous Materials Table (49 C.F.R. 172.101) or by the Environmental Protection Agency as hazardous substances (40 C.F.R. Part 302) and amendments thereto, or substances, materials and wastes which are or become regulated under any applicable local, state or federal law, rule, or regulation, including, without limitation, any material, waste or substance which is: (i) petroleum; (ii) asbestos; (iii) polychlorinated biphenyls; (iv) designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act, 33 U.S.C. 251, et seq. (33 U.S.C. 1321), or listed pursuant to Section 307 of the Clean Water Act (33 U.S.C. 1317); (v) defined as a "hazardous waste" pursuant to Section 1004 of the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq. (42 U.S.C. 6903); or (vi) defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation, and Liability Act, 42, U.S.C. 9601, et seq. (42 U.S.C. 9601).

10.02   Lessee covenants and agrees that from date hereof and as long as the provisions of the subject Lease Agreement and this Addendum thereto shall remain in effect, to remove from the Premises, if and as required by law, any Hazardous Materials placed in or on the Premises by Lessee, its agents, employees or independent contractors, and to comply in all respects with all federal, state and local governmental laws and regulations governing such removal. Lessee promises to give notice to Lessor of any claim, action administrative proceeding (including, without limitations, informal proceedings), or other demand by any governmental agency or other third party involving the existence of Hazardous Materials on the Premises, and copies of any notice of any releases of

pro    4-3-17

Hazardous Materials given by Lessee pursuant to any law, rule or regulation, and any report of and response to any such incident.

10.03   Lessee agrees to indemnify, pay and protect, defend and save Lessor harmless from and against any and all claims (including, without limitation, third party claims for personal injury or real or personal property damage), actions, administrative proceedings (including informal proceedings), judgments, damages, punitive, damages, penalties, fines, costs, liabilities (including sums paid in settlement of claims), interest, or losses, including reasonable attorneys' and paralegals' fees and expenses, consultant fees, and expert fees, together with all other costs and expenses of any kind or nature (collectively, the "Costs") that arise directly or indirectly from or in connection with the release or suspected release by Lessee or Lessee's agents, employees or independent contractors of any Hazardous Materials in or into the air, soil, ground water, or surface water at, on, about, under, or within the Premises, or any portion thereof, or elsewhere in connection with Lessee's operations on or in connection with the Premises.   The indemnification provided in this Addendum shall specifically apply to and include claims or actions brought by or on behalf of employees of Lessee. In the event Lessor shall suffer or incur any such costs, Lessee shall pay to Lessor the total of all such costs suffered or incurred by Lessor upon demand therefor by Lessor.   Without limiting the generally of the foregoing, the indemnification provided in this Addendum shall specifically cover costs, including capital, operating and maintenance costs, incurred in connection with any investigation or monitoring of site conditions, any cleanup, containment, remedial, removal, or restoration work required or performed by any federal, state or local government agency or political subdivision or performed by any nongovernmental entity or person because of the presence, suspected presence, release, or suspected release of any Hazardous Material in or into the air, soil, ground water, or surface water at, on , about, under, or within the Premises or any portion thereof, or elsewhere in connection with Lessee's operations on or in connection with the Premises and any claims of third parties for loss or damage due to such hazardous materials.

10.04   In the event Lessee is required to conduct or perform any investigation or monitoring of site conditions for any cleanup, containment, restoration, removal or other remedial work (collectively the "Remedial Work") under any applicable federal, state or local law or regulation, by any judicial order or by any governmental entity, or in order to comply with any agreements affecting the Premises because of or in connection with any occurrence or event described in this Addendum, Lessee shall perform or cause to be performed the Remedial Work in compliance with such law, regulation, order or agreement; provided that Lessee may withhold such compliance pursuant to a good faith dispute regarding the application, interpretation, or validity of the law, regulation, order or agreement, subject to the requirements of the following paragraph. All Remedial Work shall be performed by one or more contractors selected by Lessee and approved in advance in writing by Lessor, and under the supervision of a consulting engineer selected by Lessee and approved in advance in writing by Lessor. All costs and expenses of such Remedial Work shall be paid by Lessee, including, without limitation, the charges of such contractors and/or the consulting engineer, Lessor's reasonable attorneys' and paralegals' fees and costs incurred in connection with monitoring or review of such Remedial Work. If Lessee shall fail to timely commence or cause to be commenced, or fail to diligently prosecute to completion, such Remedial Work, Lessor may, but shall not be required to, cause such Remedial Work to be performed, and all costs and expenses thereof or incurred in connection therewith shall be Costs within the meaning of this Addendum. All such Costs shall be due and payable upon demand therefor by Lessor.

10.05   Lessee shall be permitted to contest or cause to be contested, subject to compliance with the requirements of this paragraph, by appropriate action, any Remedial Work requirement, and Lessor shall not perform such requirement on its behalf, so long as Lessee has given Lessor written notice that Lessee is contesting or shall contest or cause to be contested the application, interpretation, or validity of the governmental law, regulation, order or agreement pertaining to the Remedial Work by appropriate proceedings conducted in good faith with due diligence; provided that such contests shall not subject Lessor or any assignees of Lessor's interest in the Premises to civil liability and does not jeopardize any such parties' interest in the Premises. Lessee shall give such security or assurances as may be reasonably required by Lessor to ensure compliance with the legal

requirements pertaining to the Remedial Work (and payment of all Costs in connection therewith) and to prevent any sale, forfeiture or loss by reason of such nonpayment or noncompliance.

11. **Miscellaneous**.

11.01 Holding over. If Lessee, or any of its successors in interest, holds over the premises after the termination date of this lease, Lessee shall pay a rental equal to the rent payable for the last month plus fifty percent (50%) of such amount for any portion of any period that Lessee extends its stay beyond the termination date of this Lease.

11.02 Mortgages. Lessee accepts this lease subject to any deeds of trust, security interests, or mortgages which might hereafter constitute a lien upon the building or improvements therein or on the leased premises and to zoning ordinances and other building and fire ordinances and governmental regulation relating to the use of the property. Lessee shall at any time hereafter, on demand, execute any instruments, releases, or other documents that may be required by any mortgagee for the purpose of subjecting and subordinating this lease to the lien of any such deed of trust, security interest, or mortgage.

11.03 Notices and addresses. All notices required under this lease shall be deemed to be properly served if sent by registered mail, return receipt requested, or certified mail, return receipt requested, to the last address previously furnished by the parties hereto. Until hereafter changed by the parties by notice in writing, notices, shall be sent:

TO LESSOR:    GOLDSTAR WAREHOUSING, LTD.
PO BOX 6370
Brownsville, Texas 78523-6370
ATTN.: Minerva G. Loera
minerva@loeracbi.com

TO LESSEE:    CARTER FUEL SYSTEMS
600 Elca Ln., Ste B
Brownsville, Texas 78521
ATTN:

Date of service of any such notice shall be the date such notice is received by the party or three (3) days after notification to the party that there is a return receipt requested letter for the party, whichever is earlier.

11.04 Gender. Words of any gender used in this lease shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, unless the context otherwise requires.

11.05 Parties Bound. This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective officer, agents, heirs, executors, administrators, legal representatives, successors and assigns where permitted by this agreement.

11.06 Texas law to apply. This agreement shall be constructed under and in accordance with the laws of the State of Texas and all obligations of the parties created hereunder are performable in Cameron

County, Texas. The parties agree that jurisdiction and venue shall lie in the State Courts of Cameron County, Texas.

11.07   Legal Construction. Incase anyone or more of the provisions contained in this agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions thereof and this agreement shall be constructed as if such invalid, illegal, or unenforceable provision had never been contained herein.

11.08   Prior agreement superseded. This agreement constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the patied respecting the within subject matter.

11.09   Amendment. No amendment, modification, or alteration of the terms hereof shall be binding unless the same be in writing, dated subsequent to the date hereof and duly executed by the parties hereto.

11.10   Rights and remedies cumulative. The rights and remedies provided by this lease agreement are cumulative and the use of any one right or remedy by either party shall not preclude or waive its right to use any or all other remedies. Said rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance, or otherwise.

11.11   Waiver of default. No waiver by the parties hereto of any default or breach of any term, condition, or covenant of this lease shall be deemed to be a waiver of any other breach of the same or any other term, condition or covenant contained herein.

11.12   Attorney's Fees. In the event either the Lessor or the Lessee breaches any of the terms of this agreement whereby the party not in default employs attorneys to protect or enforce its rights hereunder and prevails, then the defaulting party agrees to pay the other party reasonable attorney's fees so incurred by such other party.

11.13   Force majeure. Neither Lessor nor Lessee shall be required to perform any term, condition or covenant in this lease so long as such performance is delayed or prevented by force majeure, which shall mean acts of God, strikes, lockouts, material or labor restrictions by any governmental authority, civil riot, foods, and any other cause not reasonably within the control of Lessor or Lessee and which by the exercise of due diligence Lessor or Lessee is unable, wholly or in part, to prevent or overcome.

11.14   Time of essence. Time is of the essence of this agreement.

11.15   Waiver of subrogation. Lessee hereby specifically waives Lessee's rights of recovery against Lessor for damages to any of Lessee's property caused by fire, explosion and all other perils. It is further specifically agreed that Lessor does not waive his right of recovery against Lessee for damages to any of Lessor's property caused by fire, explosion, theft, floods, water, and all other perils.

11.16   Usury Savings Clause. No provision of this Lease shall require the payment or the collection of interest in excess of the maximum permitted by applicable law. In the event Lessor ever receives, collects, or applies as interest any such sum, such amount which would be in excess of the maximum amount permitted by applicable law shall be applied as a payment toward the Lease; and, if the Lease has been paid in full, any remaining excess shall forthwith be paid to Lessee.

IN WITNESS WHEREOF, the undersigned Lessor and Lessee hereto execute this agreement to be effective as of the day and year first above written.

LESSOR:

LESSEE:

GOLDSTAR WAREHOUSING, LTD
By: DDLG Property Management, Inc.
    General Partner

CARTER FUEL SYSTEMS

By: _____
Minerva G. Loera
Its V-President

By: _Raine W Williams_____
Name: _____
Its _____

## ACKNOWLEDGMENTS

STATE OF _____ )
COUNTY OF _____ )

    This instrument was acknowledged before me on the _____ day of _____, 2017, by
_____, in his/her capacity as _____ of
_____, a _____, for and on behalf of said corporation.

_____
Notary Public, State of

STATE OF TEXAS        )
COUNTY OF CAMERON    )

    This instrument was acknowledged before me on the ____day of _____, 2017, by Minerva G. Loera, in her capacity as V-President of DDLG Property Management, Inc., a Texas corporation, the general Partner of GoldStar Warehousing, LTD. for and on behalf of said limited partnership.

_____
Notary Public, State of Texas

10:30 AM
05/21/26
Accrual Basis

# GOLD STAR WAREHOUSING, LTD
## Customer Open Balance
### September 25, 2025 through May 1, 2026

| Type | Date | Num | Memo | Due Date | Open Balance | Amount |
|---|---|---|---|---|---|---|
| Invoice | 10/01/2025 | 673321-1 | 4601 JAIME J ZAPATA | 10/01/2025 | 2,400.00 | 2,400.00 |
| Invoice | 10/15/2025 | 6568 | 4601 JAIME J ZAPATA | 10/15/2025 | 1,089.81 | 1,089.81 |
| Invoice | 11/01/2025 | 675831-1 | 4601 JAIME J ZAPATA | 11/01/2025 | 2,400.00 | 2,400.00 |
| Invoice | 11/01/2025 | 6576 | 4601 JAIME J ZAPATA | 11/01/2025 | 27,906.48 | 27,906.48 |
| Invoice | 11/14/2025 | 6599 | 4601 JAIME J ZAPATA | 11/14/2025 | 1,089.81 | 1,089.81 |
| Invoice | 11/20/2025 | 676844-5 | 4601 JAIME J ZAPATA | 11/20/2025 | 2,958.01 | 2,958.01 |
| Invoice | 11/21/2025 | 676846-1 | 4601 JAIME J ZAPATA | 11/21/2025 | 2,400.00 | 2,400.00 |
| Invoice | 11/21/2025 | 676845-5 | 4601 JAIME J ZAPATA | 05/21/2026 | 2,813.10 | 2,813.10 |
| Invoice | 12/01/2025 | 6608 | 4601 JAIME J ZAPATA | 12/01/2025 | 27,906.48 | 27,906.48 |
| Invoice | 12/16/2025 | 6629 | 4601 JAIME J ZAPATA | 12/16/2025 | 1,089.81 | 1,089.81 |
| Invoice | 12/17/2025 | 678057-2 | 4601 JAIME J ZAPATA | 12/17/2025 | 2,764.01 | 2,764.01 |
| Invoice | 12/22/2025 | 678705-1 | 4601 JAIME J ZAPATA | 12/22/2025 | 2,400.00 | 2,400.00 |
| Invoice | 01/01/2026 | 679019-1 | 4601 JAIME J ZAPATA | 01/01/2026 | 2,400.00 | 2,400.00 |
| Invoice | 01/01/2026 | 6637 | 4601 JAIME J ZAPATA | 01/01/2026 | 27,906.48 | 27,906.48 |
| Invoice | 01/15/2026 | 6665 | 4601 JAIME J ZAPATA | 01/15/2026 | 1,089.81 | 1,089.81 |
| Invoice | 01/26/2026 | 679968-5 | 4601 JAIME J ZAPATA | 01/26/2026 | 2,978.64 | 2,978.64 |
| Invoice | 02/01/2026 | 679731-1 | 4601 JAIME J ZAPATA | 02/01/2026 | 2,400.00 | 2,400.00 |
| Invoice | 02/01/2026 | 6673 | 4601 JAIME J ZAPATA | 02/01/2026 | 27,906.48 | 27,906.48 |
| Invoice | 02/16/2026 | 681169-4 | 4601 JAIME J ZAPATA | 02/16/2026 | 2,561.70 | 2,561.70 |
| Invoice | 02/16/2026 | 6692 | 4601 JAIME J ZAPATA | 02/16/2026 | 1,089.81 | 1,089.81 |
| Invoice | 03/01/2026 | 681597-1 | 4601 JAIME J ZAPATA | 03/01/2026 | 2,400.00 | 2,400.00 |
| Invoice | 03/01/2026 | 6700 | 4601 JAIME J ZAPATA | 03/01/2026 | 27,906.48 | 27,906.48 |
| Invoice | 03/09/2026 | 682454-4 | 4601 JAIME J ZAPATA | 03/09/2026 | 2,495.53 | 2,495.53 |
| Invoice | 03/16/2026 | 6722 | 4601 JAIME J ZAPATA | 03/16/2026 | 1,089.81 | 1,089.81 |
| Invoice | 04/01/2026 | 683138-1 | 4601 JAIME J ZAPATA | 04/01/2026 | 2,400.00 | 2,400.00 |
| Invoice | 04/01/2026 | 6730 | 4601 JAIME J ZAPATA | 04/01/2026 | 27,906.48 | 27,906.48 |
| Invoice | 04/15/2026 | 6752 | 4601 JAIME J ZAPATA | 04/15/2026 | 1,089.81 | 1,089.81 |
| Invoice | 04/29/2026 | 685584-4 | 4601 JAIME J ZAPATA | 04/29/2026 | 2,621.52 | 2,621.52 |
| Invoice | 05/01/2026 | 689940-1 | 4601 JAIME J ZAPATA | 05/01/2026 | 2,400.00 | 2,400.00 |
| Invoice | 05/01/2026 | 6761 | 4601 JAIME J ZAPATA | 05/01/2026 | 27,906.48 | 27,906.48 |

Total CARTER FUEL SYSTEMS — 243,766.54 — 243,766.54

TOTAL — 243,766.54 — 243,766.54

## LEASE AGREEMENT

THIS LEASE (the "Lease"), dated August 1st, 2020, and with an effective date as set forth below, by and between GOLDSTAR WAREHOUSING, LTD., a Texas limited partnership of Cameron County, Texas, hereinafter referred to as "Lessor," and Carter Fuel Systems, LLC, an Indiana limited liability company, hereinafter referred to as "Lessee."

## WITNESSETH:

Lessor does hereby lease unto Lessee those certain premises (hereinafter "Premises") described as and designated as the real property, together with any improvements and fixtures located thereon, located at 4601 Jaime J. Zapata, Brownsville, Camron County, Texas. Said Premises consists of approximately 57,025 sq. ft. of warehouse space. Lessee will only be billed for sq. ft. as warehouse space becomes available. August 1st, 2020, Lessee will only be billed for 20,000 sq. ft., additional space billed as it becomes available.

1.      **Term**   This Lease is for a term of (15) fifteen months, commencing on the 1st day of August 2020 and terminating at 12:00 o'clock midnight on the 31st day of October 2021. This Lease shall automatically renew upon the expiration of the initial term and each renewal term for successive (1) one year term(s) unless and until written notice of revocation/cancellation by either party is given at least (90) ninety days prior to the applicable renewal date.

2.      **Rent and Security Deposit**

   2.1 Rent.  The monthly rental for the Premises is ($ 0.35) thirty-five cents plus NNN per available square foot per month, which is to be billed monthly based on previous year expense and proportional to the amount of the Premises actually available to Lessee.  If there are any future increase to these expenses, they are to be billed to Lessee.  Said monthly payments shall be made in advance, without notice, on the 1st day of each month during the Lease term.  If the regular monthly payment has not reached Lessor in any manner whatsoever before the end of the 10th day following the due date, a late payment penalty equivalent to five percent (5%) of the monthly rental amount will be assessed by Lessor, and Lessee will be expected to pay the late payment penalty at the time of making the monthly rental payment.  Lessee is responsible for utilities used by Lessee; this will be as pass thru charge.

   2.2 Security Deposit.  NA

3.      **Use of Premises**.  Lessee will use the Premises solely for the purpose of conducting a warehousing and distribution facility, unless Lessor shall give Lessee prior written consent for a different use which consent shall not be unreasonably withheld.

4.      **Maintenance and Repairs**.

   4.1 Condition of Premises.  Lessee acknowledges that its acceptance of possession of the Premises constitutes a conclusive admission that it has inspected the Premises and has found them in reasonable condition and repair.

   4.2 Services.  So long as Lessee is not in default hereunder, Lessor shall maintain the common areas, roof and exterior portions of the building in good condition and repair, except for windows and doors that are part of the Premises.  Lessor shall render no general services of any nature to Lessee.

   Maintenance and Utilities.  Except for Lessor's obligations set forth in Section 4.2. Lessee shall throughout the Lease term maintain and clean the interior of the Premises and keep them free from

waste or nuisance, and shall deliver up the Premises in a clean and sanitary condition at the termination of this Lease in good repair and condition, reasonable wear and tear and damage by fire, tornado, hurricane or other casualty excepted. In the event Lessee should neglect to reasonably maintain the exterior or the interior of the Premises, Lessor shall have the right, but not the obligation, to cause repairs or corrections to be made, and any reasonable costs therefor shall be payable by Lessee to Lessor as additional rental on the next rental installment date.

Lessee, at its sole cost and expense, shall be responsible for the following:

(a)     Lessee shall pay all utility expenses associated with the Leased premises; to be billed by Lessor to Lessee on a monthly basis, prorated according to the actual space being occupied by Lessee.

(b)     Lessee, at its sole expense, shall provide janitorial services inside the Premises;

(c)     Lessee shall at all times keep the exterior of the Premises, particularly the sidewalks and doorways, clean and free of any debris of any kind;

(d)     Lessee shall keep up with A/C maintenance for example, filters, annual cleaning, etc., exclusively serving the Premises.

5.      **Obligations of Lessor and Lessee.**

5.1 <u>Taxes</u>. Lessee shall be liable for all taxes levied or assessed against personal property, furniture or fixtures placed by Lessee in the Premises. If any such taxes for which Lessee is liable are levied or assessed against Lessor or Lessor's property and if Lessor elects to pay the same or if the assessed value of Lessor's property is increased by inclusion of personal property, furniture or fixtures placed by Lessee in the Premises, and Lessor elects to pay the taxes based on such increase, Lessee shall pay to Lessor upon demand that part of such taxes for which Lessee is primarily liable hereunder.

5.2 <u>Alterations, additions and improvements</u>. Lessee shall not make any alterations, additions or improvements to the Premises without the prior written consent of Lessor. Consent for nonstructural alterations, additions or improvements shall not be unreasonably withheld by Lessor. Lessee shall have the right at all times to erect or install furniture and fixtures, provided that Lessee complies with all applicable governmental laws, ordinances and regulations. Lessee shall have the right to remove at the termination of this Lease such items so installed, provided Lessee is not in default; however, Lessee shall, prior to the termination of this Lease, repair any damage caused by such removal. Lessee agrees not to remove any floor coverings and wall coverings that may be placed in the Premises without the prior permission of Lessor.

5.3 <u>Damage or destruction</u>.

(a)   If the Premises should be totally destroyed by fire, tornado, or other casualty, or if they should be so damaged that rebuilding or repairs cannot reasonably be completed within one hundred twenty (120) working days from the date of the occurrence of the damage, this Lease shall terminate and rent shall be abated for the un expired portion of this Lease, effective as of the date of said occurrence and all rights, obligations and liabilities of both parties hereunder shall cease.

(b)   If the Premises should be damaged by fire, tornado, or other casualty, but not to such an extent that rebuilding or repairs cannot reasonably be completed within one hundred twenty (120) working days from the date of the occurrence of the damage, this Lease shall not terminate, but Lessor shall, if the casualty has occurred prior to the final two (2) months of the Lease term, at its sole cost and risk, proceed forthwith to rebuild or repair the Premises to substantially the condition in which they existed prior to such

damage. If the casualty occurs during the final two (2) months of the Lease term, Lessor shall not be required to rebuild or repair such damage. If the Premises are to

be rebuilt or repaired and are untenable in whole or in part following such damage, the rent payable hereunder during the period in which they are untenable shall be adjusted equitably. In the event that Lessor should fail to complete such rebuilding or repairs within one hundred twenty (120) working days from the date of the occurrence of the damage, Lessee may at its option terminate this Lease by written notification at such time to Lessor, whereupon all rights, obligations and liabilities of both parties hereunder shall cease.

5.4 Condemnation.

If during the term of this Lease or any extension or renewal thereof, all or a portion of the Premises should be taken for any public or quasi-public use under any governmental law, ordinance or regulation, or by right of eminent domain, or should be sold to the condemning authority under threat of condemnation, at the option of the Lessor this Lease shall terminate and the rent shall be abated during the un expired portion of this Lease, effective as of the date of the taking of said Premises by the condemning authority and all rights, obligations and liabilities of both parties hereunder shall cease. Lessor shall receive the entire award from any such taking, and Lessee shall have no claim thereto, of for the value of any un expired term of this Lease. Notwithstanding, Lessee shall have the option to continue to lease, in the event of condemnation, less than fifty percent (50%) of the Premises, in which event the Lease shall continue with a pro rata reduction in rent for the amount of square footage lost.

5.5 Rules and Regulations. Lessee and Lessee's agents, employees and invitees will comply fully with any rules and regulations of the building and its related facilities as they may be hereinafter established and that may be deemed reasonably advisable for the safety, care and cleanliness of the facilities; provided however, that such rules and regulations shall apply to all tenants of the facility equally.

5.6 Inspection. Lessor or its officers, agents and representatives shall have the right to enter into and upon any and all parts of the Premises at all reasonable hours to (a) inspect same or clean or make repairs as Lessor may deem necessary (but without any obligation to do so, except as expressly provided for herein), or (b) show the Premises to prospective tenants, purchases, or lenders; and Lessee shall not be entitled to any abatement or reduction of rent by reason thereof, nor shall such be deemed to be an actual or constructive eviction. Notwithstanding the foregoing, Lessor shall not unreasonably interfere with the business activities of Lessee.

5.7 Mechanic's Lien. Lessee will not permit any mechanic's lien or liens to be placed upon the Premises or the building or improvements thereon during the term hereof, and in case of the filing of any such lien Lessee will promptly pay same. If default in payment thereof shall continue for twenty (20) days after written notice thereof from Lessor to Lessee, the Lessor shall have the right and privilege, at Lessor's option of paying the same or any portion thereof without inquiry as to the validity thereof, and any amounts so paid, including expenses and interest, shall be so much additional indebtedness hereunder due from Lessee to Lessor and shall be repaid to Lessor immediately on rendition of a bill therefor, together with interest at then percent (10%) per annum until repaid.

## 6   Indemnity.

Lessee agrees to indemnify and hold Lessor harmless against any and all claims, demands, damages, costs and expenses, including reasonable attorney's fees for the defense thereof, arising from the conduct or management of Lessee's business or its use of the Premises or from any breach on the part of Lessee of any conditions of this Lease, or from any act or negligence of any conditions of this Lease, or from any act or negligence of any conditions of this Lease, or from any act or negligence of Lessee, its agents, contractors, employees, sub-tenants, guests or invitees in or about the Premises. In case of any action or proceeding brought against Lessor by reason of any such claim, Lessee, upon notice from Lessor, covenants to defend such action or proceeding by counsel acceptable to Lessor.

Lessor agrees to indemnify and hold Lessee harmless against any and all claims, demands, damages, costs and expenses, including reasonable attorney's fees for the defense thereof, arising from the conduct or management of Lessor's business or its use of the Premises or from any breach on the part of Lessor of any conditions of this Lease, or from any act or negligence of any conditions of this Lease, or from any act or negligence of any conditions of this Lease, or from any act or negligence of Lessor, its agents, contractors, employees, sub-tenants, guests or invitees in or about the Premises. In case of any action or proceeding brought against Lessee by reason of any such claim, Lessor, upon notice from Lessee, covenants to defend such action or proceeding by counsel acceptable to Lessee.

## 7   Assignment and Sublease.

7.1   Assignment and subletting by Lessee.   Lessee shall not have the right to assign or sublet the leased Premises without the specific written consent of Lessor having first been obtained, such consent not to be unreasonably withheld.

7.2   Assignment By Lessor.   Lessor is expressly given the right to assign any or all of its interest under the terms of this Lease.

## 8   Default.

8.1   Events of default.   The following events shall be deemed to be events of default by Lessee under this Lease:

(a)   Lessee shall fail to pay any installment of the rent hereby reserved and such failure shall continue for a period of fifteen (15) days after written notice thereof.

(b)   Lessee shall fail to comply with any term, provision, or covenant of this Lease, other than the payment of rent, and shall not cure such failure within thirty (30) days after written notice thereof to Lessee.

(c)   Lessee shall make an assignment for the benefit of creditors.

(d)   Lessee shall file a petition under any section or chapter of the National Bankruptcy Act, as amended, or under any similar law or statute of the United States or any state thereof; or Lessee shall be adjudged bankrupt or insolvent in proceedings filed against Lessee thereunder and such adjudication shall not be vacated or set aside or stayed within the time permitted by law.

(e)   A receiver or trustee shall be appointed for all or substantially all of the assets of Lessee and such receivership shall not be terminated or stayed within the time permitted by law.

8.2   Remedies.   Upon the occurrence of any event of default specified in Section 8.01 hereof, Lessor shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever:

(a)   terminate this Lease, in which event Lessee shall immediately surrender the Premises to Lessor, and if Lessee fails to do so, Lessor may, without prejudice to any other remedy which it may have for possession or arrearages in rent, enter upon and take possession of and expel or remove Lessee and any other person who may be occupying said Premises or any part thereof, by force if necessary, without being liable for prosecution or any claim of damages therefor; and Lessee agrees to pay to Lessor on demand the amount of all loss and damages which Lessor may suffer by reason of such termination, whether through inability to relent the Premises on satisfactory terms or otherwise.

(b)   Enter upon the Premises by force if necessary, without being liable for prosecution or any claim for damages therefor, and do whatever Lessee is obligated to do under the terms of this Lease; and Lessee agrees to reimburse Lessor on demand for any expenses which Lessor may incur in

thus effecting compliance with Lessee's obligations under this Lease; and Lessee further agrees that Lessor shall not be liable for any damages resulting to Lessee form such action.

No reentry or taking possession of the Premises by Lessor shall be constructed as an election on its part to terminate this Lease, unless a written notice of such intention be given to Lessee. Notwithstanding any such relenting or reentry or taking possession. Lessor may at any time thereafter elect to terminate this Lease for a previous default. Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided by law, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any rent due to Lessor hereunder or of any damages accruing to Lessor by reason of the violation of any of the terms, provisions and convents herein contained. Lessor's acceptance of rent following an event of default hereunder shall not be construed as Lessor's waiver of such event of default. No waiver by Lessor of any violation or breach of any of the terms, provisions and covenants herein contained shall be deemed or construed to constitute a waiver of any other violation or breach of any of the terms, provisions and covenants herein contained. Forbearance by Lessor to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default. The loss or damage that Lessor may suffer by reason of termination of this Lease or the deficiency form any relenting as provided for above shall include the expense of repossession and any repairs or remodeling undertaken by Lessor following possession. Should Lessor at any time terminate this Lease for any default, in addition to any other remedy Lessor may have, Lessor may recover from Lessee all damages Lessor may incur by reason of such default, including cost of recovering the Premises and the worth at the time of such termination of the excess, if any, of the amount of rent and charges equivalent to rent reserved in this Lease for the remainder of the stated term over the then reasonable rental value of the Premises for the remainder of said term, all of which amounts shall be immediately payable from Lessee to Lessor.

8.3 <u>Surrender of Premises</u>. No act or thing done by the Lessor or its agents during the term hereby granted shall be deemed an acceptance of a surrender of the Premises, and no agreement to accept a surrender of the Premises shall be valid unless the same be made in writing and subscribed by Lessor.

8.4 <u>Lessor's Lien</u>. Lessor agrees to execute and deliver to Lessee's lenders its standard form of collateral access agreement and such other documents as Lessee's lenders may reasonably request.

## 9 <u>Insurance</u>.

9.1 Lessee shall, at its own expense, at all times during the term of this Lease, maintain in full force an all risk policy or policies on all inventory belonging to Lessee. Such policy should also insure Lessee and Lessor against liability for injury to or death of persons, or loss or damage to property occurring in or about the demised Premises. The liability under such insurance shall not be less than $1,000,000.00 for any one person killed or injured, $1,000,000.00 for any one accident, and $1,000,000.00 property damage.

9.2 Lessee shall additionally maintain in full force, at all times during the term of this Lease, on all inventory, contents and fixtures belonging to Lessee contained within the demised Premises, a policy or policies of fire, tornado, hurricane, windstorm and extended all risk coverage insurance, to the extent of at least one hundred percent (100%) of the insurable replacement value thereof. Such policies shall name Lessor as a beneficiary to the extent of Lessor's interest, if any, and named insured thereof and shall additionally contain a waiver of subrogation by Lessee against Lessor.

Should Lessee not have such fire, tornado, hurricane, windstorm and extended coverage insurance and then suffers a loss, then Lessee does hereby waive and release any and all causes of action, damages, and other claims against Lessor for any and all losses which may be suffered by Lessee from fire, tornado, hurricane, windstorm, theft or any other loss. This waiver and release includes claims based upon negligence, breach of warranty, breach of contract, gross negligence, Premises liability, strict liability and landlord's liability. Lessee hereby expressly agrees to and does

hereby waive and release any and all claims and any cause of action against lessor for any claims, losses or damages which lessee may suffer from any loss whatsoever, and lessee agrees to be solely bound by any insurance coverage which lessee is obligated to acquire by this Lease in order to protect its interests.

9.3   Lessee shall additionally, at its own expense, at all times during the term of this Lease secure business interruption insurance in an amount sufficient to indemnify Lessee for any losses caused by any interruption of business activities due to any incident whatsoever, including but not limited to, fire, hurricane, tornado, windstorm, and all other types of losses. Lessee does hereby waive and release any and all causes of action, damages, and other claims against Lessor for any and all losses which may be suffered by Lessee from fire, tornado, hurricane, windstorm, theft or any other loss. This waiver and release includes claims based upon negligence, breach of warranty, breach of contract, gross negligence, Premises liability, strict liability and landlord's liability. Lessee hereby expressly agrees to and does hereby waive any cause of action against lessor for any claims, losses or damages which lessee may suffer from any loss whatsoever, and lessee agrees to be solely bound by any insurance coverage which lessee is obligated to acquire by this Lease in order to protect its interests.

9.4   Should Lessee fail to keep in effect and pay for such insurance as it is in this section required to maintain, Lessor may do so, in which event the insurance premiums paid by Lessor shall become due and payable forthwith, and the failure of Lessee to pay same on demand shall constitute a breach of this Lease.]

## 10   Hazardous Materials.

10.1   It is specifically understood by Lessee, and Lessee does hereby agree, that at no time shall any "Hazardous Materials" be brought onto or stored on the Premises by Lessee in a manner that is in violation of applicable law. As used in this Lease, the term "Hazardous Materials" means any hazardous or toxic substances, materials or wastes, including, but not limited to, those substances, materials and wastes listed in the United Sates Department of Transportation Hazardous Materials Table (49 C.F.R. 172.101) or by the Environmental Protection Agency as hazardous substances (40 C.F.R. Part 302) and amendments thereto, or substances, materials and wastes which are or become regulated under any applicable local, state or federal law, rule, or regulation, including, without limitation, any material, waste or substance which is: (i) petroleum; (ii) asbestos; (iii) polychlorinated biphenyls; (iv) designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act, 33 U.S.C. 251, et seq. (33 U.S.C. 1321), or listed pursuant to Section 307 of the Clean Water Act (33 U.S.C. 1317); (v) defined as a "hazardous waste" pursuant to Section 1004 of the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq. (42 U.S.C. 6903); or (vi) defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation, and Liability Act, 42, U.S.C. 9601, et seq. (42 U.S.C. 9601).

Lessee covenants and agrees that from date hereof and as long as the provisions of this Lease shall remain in effect, to remove from the Premises, if and as required by law, any Hazardous Materials placed in or on the Premises by Lessee, its agents, employees or independent contractors, and to comply in all respects with all federal, state and local governmental laws and regulations governing such removal. Lessee promises to give notice to Lessor of any claim, action administrative proceeding (including, without limitations, informal proceedings), or other demand by any governmental agency or other third party involving the existence of Hazardous Materials on the Premises, and copies of any notice of any releases of Hazardous Materials given by Lessee pursuant to any law, rule or regulation, and any report of and response to any such incident.

10.2   Lessee agrees to indemnify, pay and protect, defend and save Lessor harmless from and against any and all claims (including, without limitation, third party claims for personal injury or real or personal property damage), actions, administrative proceedings (including informal proceedings), judgments, damages, punitive, damages, penalties, fines, costs, liabilities (including sums paid in settlement of claims), interest, or losses, including reasonable attorneys' and paralegals' fees and expenses, consultant fees, and expert fees, together with all other costs and expenses of any kind or nature (collectively, the "Costs") that arise directly or indirectly from or in connection with the release or suspected release by

Lessee or Lessee's agents, employees or independent contractors of any Hazardous Materials in or into the air, soil, ground water, or surface water at, on, about, under, or within the Premises, or any portion thereof, or elsewhere in connection with Lessee's operations on or in connection with the Premises in violation of applicable law. The indemnification provided in this Lease shall specifically apply to and include claims or actions brought by or on behalf of employees of Lessee. In the event Lessor shall suffer or incur any such costs, Lessee shall pay to Lessor the total of all such costs suffered or incurred by Lessor upon demand therefor by Lessor. Without limiting the generally of the foregoing, the indemnification provided in this Lease shall specifically cover costs, including capital, operating and maintenance costs, incurred in connection with any investigation or monitoring of site conditions, any cleanup, containment, remedial, removal, or restoration work required or performed by any federal, state or local government agency or political subdivision or performed by any nongovernmental entity or person because of the presence, suspected presence, release, or suspected release of any Hazardous Material in or into the air, soil, ground water, or surface water at, on , about, under, or within the Premises or any portion thereof, or elsewhere in connection with Lessee's operations on or in connection with the Premises and any claims of third parties for loss or damage due to such hazardous materials.

10.3 In the event Lessee is required to conduct or perform any investigation or monitoring of site conditions for any cleanup, containment, restoration, removal or other remedial work (collectively the "Remedial Work") under any applicable federal, state or local law or regulation, by any judicial order or by any governmental entity, or in order to comply with any agreements affecting the Premises because of or in connection with any occurrence or event described in this Lease, Lessee shall perform or cause to be performed the Remedial Work in compliance with such law, regulation, order or agreement; provided that Lessee may withhold such compliance pursuant to a good faith dispute regarding the application, interpretation, or validity of the law, regulation, order or agreement, subject to the requirements of the following paragraph. All Remedial Work shall be performed by one or more contractors selected by Lessee and approved in advance in writing by Lessor, and under the supervision of a consulting engineer selected by Lessee and approved in advance in writing by Lessor. All costs and expenses of such Remedial Work shall be paid by Lessee, including, without limitation, the charges of such contractors and/or the consulting engineer, Lessor's reasonable attorneys' and paralegals' fees and costs incurred in connection with monitoring or review of such Remedial Work. If Lessee shall fail to timely commence or cause to be commenced, or fail to diligently prosecute to completion, such Remedial Work, Lessor may, but shall not be required to, cause such Remedial Work to be performed, and all costs and expenses thereof or incurred in connection therewith shall be Costs within the meaning of this Lease. All such Costs shall be due and payable upon demand therefor by Lessor.

Lessee shall be permitted to contest or cause to be contested, subject to compliance with the requirements of this paragraph, by appropriate action, any Remedial Work requirement, and Lessor shall not perform such requirement on its behalf, so long as Lessee has given Lessor written notice that Lessee is contesting or shall contest or cause to be contested the application, interpretation, or validity of the governmental law, regulation, order or agreement pertaining to the Remedial Work by appropriate proceedings conducted in good faith with due diligence; provided that such contests shall not subject Lessor or any assignees of Lessor's interest in the Premises to civil liability and does not jeopardize any such parties' interest in the Premises. Lessee shall give such security or assurances as may be reasonably required by Lessor to ensure compliance with the legal requirements pertaining to the Remedial Work (and payment of all Costs in connection therewith) and to prevent any sale, forfeiture or loss by reason of such nonpayment or noncompliance.

## 11  Miscellaneous.

11.1 Holding over. If Lessee, or any of its successors in interest, holds over the Premises after the termination date of this Lease, Lessee shall pay a rental equal to the rent payable for the last month plus fifty percent (50%) of such amount for any portion of any period that Lessee extends its stay beyond the termination date of this Lease.

11.2 Mortgages. Lessee accepts this Lease subject to any deeds of trust, security interests, or mortgages which might hereafter constitute a lien upon the building or improvements therein or on the Premises

and to zoning ordinances and other building and fire ordinances and governmental regulation relating to the use of the property. Lessee shall at any time hereafter, on demand, execute any instruments, releases, or other documents that may be required by any mortgagee for the purpose of subjecting and subordinating this Lease to the lien of any such deed of trust, security interest, or mortgage. Lessee's possession and right of use under this Lease in and to the Premises shall not be distributed by any mortgagee(s), so long as Lessee is not in default.

11.3 Notices and addresses. All notices required under this Lease shall be deemed to be properly served if sent by registered mail, return receipt requested, or certified mail, return receipt requested, to the last address previously furnished by the parties hereto. Until hereafter changed by the parties by notice in writing, notices, shall be sent:

TO LESSOR:   GOLDSTAR WAREHOUSING, LTD.
             PO BOX 6370
             Brownsville, Texas 78523-6370
             ATTN.: Minerva G. Loera
             minerva@loeracbi.com

TO LESSEE:   CARTER FUEL SYSTEMS, LLC
             600 Elca Ln., Ste B
             Brownsville, Texas 78521
             ATTN:  TREAVOR KURTH

             With a copy to:

             CARTER FUEL SYTEMS, LLC
             127 Public Square, Suite 5300
             Cleveland, OH 44114
             ATTN:  Brian Troyer

Date of service of any such notice shall be the date such notice is received by the party or three (3) days after notification to the party that there is a return receipt requested letter for the party, whichever is earlier.

11.4 Gender. Words of any gender used in this Lease shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, unless the context otherwise requires.

11.5 Parties Bound. This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective officer, agents, heirs, executors, administrators, legal representatives, successors and assigns where permitted by this agreement.

Texas law to apply. This agreement shall be constructed under and in accordance with the laws of the State of Texas and all obligations of the parties created hereunder are performable in Cameron County, Texas. The parties agree that jurisdiction and venue shall lie in the State Courts of Cameron County, Texas.

11.6 Legal Construction. In case anyone or more of the provisions contained in this agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions thereof and this agreement shall be constructed as if such invalid, illegal, or unenforceable provision had never been contained herein.

11.7 Prior agreement superseded. This agreement constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting the within subject matter.

11.8 Amendment. No amendment, modification, or alteration of the terms hereof shall be binding unless the same be in writing, dated subsequent to the date hereof and duly executed by the parties hereto.

11.9 Rights and remedies cumulative. The rights and remedies provided by this Lease agreement are cumulative and the use of any one right or remedy by either party shall not preclude or waive its right to use any or all other remedies. Said rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance, or otherwise.

11.10    Waiver of default. No waiver by the parties hereto of any default or breach of any term, condition, or covenant of this Lease shall be deemed to be a waiver of any other breach of the same or any other term, condition or covenant contained herein.

11.11    Attorney's Fees. In the event either the Lessor or the Lessee breaches any of the terms of this agreement whereby the party not in default employs attorneys to protect or enforce its rights hereunder and prevails, then the defaulting party agrees to pay the other party reasonable attorney's fees so incurred by such other party.

11.12    Force majeure. Neither Lessor nor Lessee shall be required to perform any term, condition or covenant in this Lease so long as such performance is delayed or prevented by force majeure, which shall mean acts of God, strikes, lockouts, material or labor restrictions by any governmental authority, civil riot, foods, and any other cause not reasonably within the control of Lessor or Lessee and which by the exercise of due diligence Lessor or Lessee is unable, wholly or in part, to prevent or overcome.

11.13    Time of essence. Time is of the essence of this agreement.

11.14    Waiver of subrogation. Lessee hereby specifically waives Lessee's rights of recovery against Lessor for damages to any of Lessee's property caused by fire, explosion and all other perils. It is further specifically agreed that Lessor does not waive his right of recovery against Lessee for damages to any of Lessor's property caused by fire, explosion, theft, floods, water, and all other perils.

11.15    Usury Savings Clause. No provision of this Lease shall require the payment or the collection of interest in excess of the maximum permitted by applicable law. In the event Lessor ever receives, collects, or applies as interest any such sum, such amount which would be in excess of the maximum amount permitted by applicable law shall be applied as a payment toward the Lease; and, if the Lease has been paid in full, any remaining excess shall forthwith be paid to Lessee.


IN WITNESS WHEREOF, the undersigned Lessor and Lessee hereto execute this agreement to be effective as of the day and year first above written.

LESSOR:

GOLDSTAR WAREHOUSING, LTD
By: DDLG Property Management, Inc.
    General Partner

By: _Jordan Troyer  for Minerva Loera_
Minerva G. Loera
Its V-President

LESSEE:

CARTER FUEL SYSTEMS, LLC

By:_____
Name: Brian Troyer
Its EVP, General Counsel & Secretary

## ACKNOWLEDGMENTS

JEAN GILLIAN GRAHAM
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires 11/4/2024

STATE OF OHIO       )
COUNTY OF CUYAHOGA   )

     This instrument was acknowledged before me on the 29th day of July, 2020, by Brian Troyer, in his/her capacity as EVP, General Counsel & Secretary of Carter Fuel Systems, LLC, a Delaware limited liability company, for and on behalf of said company.

_C.J. Gillian Graham_
Notary Public, State of Ohio

STATE OF TEXAS      )
COUNTY OF CAMERON   )

     This instrument was acknowledged before me on the ____day of _____, 2020, by Minerva G. Loera, in her capacity as V-President of DDLG Property Management, Inc., a Texas corporation, the general Partner of GoldStar Warehousing, LTD. for and on behalf of said limited partnership.

_____
Notary Public, State of Texas