# WAREHOUSING SERVICE AGREEMENT

This service agreement is made and entered into by and between Loera Customs Brokerage, Inc. and Carter Fuel Systems (Client).  Pursuant to this Agreement Loera Customs Brokerage, Inc. agrees that it will provide warehousing service under the following terms and conditions:

1.-   TERM.  This agreement is for ninety (90) days commencing September 15th, 2016 and terminating on December 31st, 2016.   This agreement shall remain in full force and effect until written notice of revocation/cancellation by either party is given with at least thirty (30) days advance written notice. This agreement shall automatically renew thereafter on the same terms without further action of the parties unless a new contract is drafted.

2.-   COST.

See "Exhibit A"

3.-   N/A

4.-   N/A

5.-   RESPONSABILITIES OF LOERA CUSTOMS BROKERAGE, INC.

(A)   Loera Customs Brokerage, Inc. shall under no circumstance be liable for any loss, damage, expense or delay when Client's goods are in the custody, possession or control of third parties selected by either Loera Customs Brokerage, Inc. or Client.

(B)   Loera Customs Brokerage, Inc. makes no express or implied warranties in connection with its services; Client agrees that in connection with any and all services performed by Loera Customs Brokerage, Inc. including warehouse services or miscellaneous activities requested by Client, Client may obtain additional liability coverage.

6.-   DUTIES OF CLIENT'S.

(A)   Prior to entry of the goods for U.S. Customs, Client shall furnish to Loera Customs Brokerage, Inc. all necessary documentation, including invoices in proper form and other documents necessary for the U.S. Customs entry, and shall also include such information as may be necessary to establish NAFTA eligibility, dutiable value, assists, classification, country of origin, genuineness of the merchandise, and any mark or symbol associated with it.

(B)   Client shall be bound by and warrant the accuracy of all invoices and information furnished to Loera Customs Brokerage, Inc. by Client for its representative agent for export, entry or other purposes and Client agrees to indemnify and hold harmless Loera Customs Brokerage, Inc. against any increased duty, penalty, fine or expense, including attorney's fees, resulting from any inaccuracy, incomplete statement, omission and illegibility.

(C)   Client warrants that it shall be knowledgeable with and comply with the marking requirements of the U.S. Customs Service, and pursuant to the regulations of federal, state and/or local agencies pertaining to the merchandise.  Loera Customs Brokerage, Inc. shall not be responsible for action taken for fines or penalties assessed by any governmental agency against the shipment because of the failure to comply with the law or the requirements of notification issued to Client any such agency.

(D) Client agrees to provide all necessary documentation associated with the proper handling of Bonded Cargo on a timely basis. Any penalty issued by US Customs and associated with late filing of documents will be paid by Client.

7.-    INSURANCE AND LIMITATION OF LIABILITY.

FOR ITEMS STORED INSIDE LOERA CUSTOMS BROKERAGE, INC.'S WAREHOUSE (IN THE YARD OR PATIO):

(A)    Loera Customs Brokerage, Inc. shall maintain liability insurance to insure Loera Customs Brokerage, Inc.'s activities related to the loading/unloading and warehousing activities and to indemnify Client for certain damages applicable to the fault or negligence by Loera Customs Brokerage, Inc. or its employee's activities related such activities.

(B)    Client shall maintain in full force, at all times during the term of this Agreement on all inventory, contents and fixture belonging to Client contained within Loera Customs Brokerage, Inc.'s premises, an ALL RISK policy and extended coverage insurance to the extent of at least one hundred percent (100%) of the insurable replacement value thereof as well as business interruption insurance in an amount sufficient to indemnify Client for any losses caused by any interruption of business activities due to any incident whatsoever.

(C)    Should Client not have such ALL RISK and extended coverage insurance or business interruption insurance and then suffers a loss, then Client does hereby waive and release any and all causes of action, damages, and other claims against Loera Customs Brokerage, Inc. for any and all losses which may be suffered by Client from fire, tornado, hurricane, windstorm, water damage or any other similar casualty loss. Client hereby expressly agrees to and does hereby waive and release any and all claims and any cause of action against Loera Customs Brokerage, Inc. for such claims, losses or damages which Client may suffer from such casualty loss, and Client agrees to be solely bound by any insurance coverage which Client is obligated to acquire by this agreement in order to protect its interests.

(D)    Notwithstanding anything contained herein to the contrary, Loera Customs Brokerage, Inc.'s liability shall be limited to the following:
(1) the cost or fair market value of the item, whichever is less, and
(2) in no event shall Loera Customs Brokerage, Inc. be liable or responsible for consequential, indirect, or incidental damages.

8.- DISCLAIMERS; LIMITATION OF LIABILITY.

(A) Except as specifically set forth herein, Loera Customs Brokerage, Inc. makes no express or implied warranties in connection with warehousing services; Client acknowledges that all services performed by Loera Customs Brokerage, Inc. should be governed by standard terms and conditions agreement (available in company website).

(B) Subject to (C) below, Client agrees that in connection with any and all services performed by the Company, the Company shall only be liable for its negligent acts, which are the direct and proximate cause of any injury to Client, including loss or damage to Client's goods, and the Company shall in no event be liable for the acts of third parties;

(C) In connection with all services performed by the Loera Customs Brokerage, Inc., Client may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefore, which request must be confirmed in writing by the Company prior to rendering services for the covered transaction(s).

(D) In the absence of additional coverage under (B) above, the Loera Customs Brokerage, Inc.'s liability shall be limited to the following:

    (i) where the claim arises from activities other than those relating to customs brokerage, $1,000.00 per shipment or transaction, or

    (ii) where the claim arises from activities relating to "Customs business," $1,000.00 per entry or the amount of brokerage fees paid to Loera Customs Brokerage, Inc. for the entry, whichever is less;

(E) In no event shall Loera Customs Brokerage, Inc. be liable or responsible for consequential, indirect, incidental, statutory or punitive damages even if it has been put on notice of the possibility of such damages.

9.- HAZARDOUS MATERIALS. Client covenants and agrees that so long as the provisions of this Agreement shall remain in effect, it shall not deliver to Loera Customs Brokerage, Inc. for handling or storage any Hazardous Materials unless it shall first advise Loera Customs Brokerage, Inc. in writing of the identity of such Hazardous Material. As used in this Agreement the term "Hazardous Material" means any hazardous or toxic substances materials or wastes, including, but not limited to, those substances, materials and wastes listed in the United States Department of Transportation Hazardous Materials Table (49 C.F.R.§ 172.101) or by the Environmental Protection Agency as hazardous substances (40 C.F.R. Part 302) and amendments thereto, or substances, materials and wastes which are or become regulated under any applicable local, state or federal law, rule, or regulation. Client further agrees that it shall not deliver Client covenants and agrees that it shall not deliver to Loera Customs Brokerage, Inc. for handling or storage any pesticides or herbicides, as defined under Federal, State or Local Status.

10.- NOTICES. If at any time after the execution of this contract, it shall become necessary or convenient for one of the parties hereto to serve any notice, demand or communication shall be in writing. If intended for Loera Customs Brokerage, Inc. shall be addresses to:

    Loera Customs Brokerage, Inc.
    P.O. Box 6370
    Brownsville, TX 78523-6370
    Attn: Minerva G. Loera

and if intended for the Client shall be addressed to:

    Carter Fuel Systems

    _____
    _____
    _____
    Attn: _____

Or such correspondence may be hand-delivered to both Loera Customs Brokerage, Inc. and Carter Fuel Systems.

11.- EXECUTION. This instrument has been executed in duplicate.

12.- BINDING OF HEIRS AND ASSIGNS. Subject to the provisions of this agreement pertaining to assignment of the Tenant's interests, all provisions of this agreement shall extend to and bind, or insure to the benefit not only of the parties to this agreement but to each and every one of the heirs, transferees, executors, representatives, successors, or assigns of Client or Loera Customs Brokerage, Inc.

13.-    LAW.  This is a legal document and shall be governed by the laws of the State of Texas.

Executed at Brownsville, Texas 2016, effective as of September 15th, 2016.

Loera Customs Brokerage, Inc.

By: _____

Minerva G Loera

Title: President

Carter Fuel Systems

By: _____

Print name: Brian Kaminski

Title: VP of Operations

## "Exhibit A"

Warehouse space provided by Gold Star Warehousing, LTD to Carter Fuels but billed through Loera Customs Brokerage, Inc., these services are to include the rent for the warehouse space, utilities, loading/unloading services and forklift rentals.

### Warehouse Services by Loera Customs Brokerage, Inc.:

| | |
|---|---|
| Loading/Unloading per skid (in & out) | $ 7.50/$ 250.00 max. per truck |
| Warehouse space | $ 0.39 per sq ft per mo. ** |
| Online Inventory System | No Charge |
| Overtime Service | $25.00 per hr per employee*** |

### Bonded Warehouse/FTZ Services

| | |
|---|---|
| Loading and Unloading per skid | $ 7.50 |
| Bonded/FTZ warehouse entry | $22.50 |
| Bonded/FTZ warehouse withdrawal | $15.00 |
| Bonded/FTZ warehouse dispatch | $10.00 |
| Bonded/FTZ Warehouse Space | $ 0.39 per sq. ft. ** |
| (This includes utilities, taxes, insurance and maintenance on the building) | |
| Online Inventory System | No Charge |
| Overtime Service | $25.00 per hr per employee*** |

** Warehouse space to be charged on the average space being occupied on the 15th and the end of the month. Warehouse services do not include packaging materials like shrink wrap or wooden pallets. Warehouse rate includes our cost of Taxes, Insurance and Maintenance on Building. It is the client's responsibility to provide an ALL risk insurance policy for their goods while in transit or stored at our facility.

***Warehouse overtime service is available after 5:00 PM on weekdays; weekends and holidays as per customer's written request.

### US Customs Brokerage Service:

| | |
|---|---|
| Entry Documentation | $ 22.50 |
| Entry Cancellation | $ 10.00 |
| Entry Amendment | $ 10.00 |
| E-Manifest (if needed) | $ 5.00 |
| Shipper Export Declaration | $ 10.00 |
| SED Amendments | $ 5.00 |
| In-Bond Entry | $ 22.50 |
| In-Bond Dispatch | $ 10.00 |
| ISF | $ 25.00 |
| Central Examination Service | pass thru charge |
| Overtime service | $ 25.00*** |

***Warehouse overtime service is available after 7:00 PM on weekdays; weekends and holidays as per customer's written request.

## "Exhibit B"
## Returns Project

Warehouse space provided by Gold Star Warehousing, LTD to Carter Fuels but billed through Loera Customs Brokerage, Inc., these services are to include the rent for the warehouse space, utilities, loading/unloading services and forklift rentals.

### Warehouse Services by Loera Customs Brokerage, Inc.:

| | |
|---|---|
| Loading/Unloading per skid (in & out) | $ 7.50/$ 250.00 max. per truck |
| Warehouse space | $ 0.39 per sq ft per mo. * |
| Online Inventory System by part no. | $ 1.00 per skid |
| Shrink wrap | $ 5.00 per skid |
| Manual Labor | $25.00 per hr per employee |
| Overtime Service | $25.00 per hr per employee** |
| Load out by carton | $ 0.75 per carton |
| Non treated pallet | $ 7.50 per pallet |

* Warehouse space to be charged on the average space being occupied on the 15th and the end of the month. Warehouse services do not include packaging materials like shrink wrap or wooden pallets. Warehouse rate includes our cost of Taxes, Insurance and Maintenance on Building. It is the client's responsibility to provide an ALL risk insurance policy for their goods while in transit or stored at our facility.

**Warehouse overtime service is available after 5:00 PM on weekdays; weekends and holidays as per customer's written request.



# LOERA CUSTOMS BROKERGE, INC.
## TERMS AND CONDITIONS OF SERVICE

These terms and conditions of service constitute a legally binding contract between the "Company" and the "Customer". In the event the Company renders services and issues a document containing Terms and Conditions governing such services, the Terms and Conditions set forth in such other document(s) shall govern those services.

**1. Definitions.**

(a) "Company" shall mean Loera Customs Brokerage, Inc., its subsidiaries, related companies, agents and/or representatives;

(b) "Customer" shall mean the person for which the Company is rendering service, as well as its principals, agents and/or representatives, including, but not limited to, shippers, importers, exporters, carriers, secured parties, warehousemen, buyers and/or sellers, shipper's agents, insurers and underwriters, break-bulk agents, consignees, etc. It is the responsibility of the Customer to provide notice and copy(s) of these terms and conditions of service to all such agents or representatives;

(c) "Documentation" shall mean all information received directly or indirectly from Customer, whether in paper or electronic form;

(d) "Ocean Transportation Intermediaries" ("OTI") shall include an "ocean freight forwarder" and a "non-vessel operating carrier";

(e) "Third parties" shall include, but not be limited to, the following: "carriers, truckmen, cartmen, lightermen, forwarders, OTIs, customs brokers, agents, warehousemen and others to which the goods are entrusted for transportation, cartage, handling and/or delivery and/or storage or otherwise".

**2. Company as agent.** The Company acts as the "agent" of the Customer for the purpose of performing duties in connection with the entry and release of goods, post entry services, the securing of export licenses, the filing of export and security documentation on behalf of the Customer and other dealings with Government Agencies, or for arranging for transportation services or other logistics services in any capacity other than as a carrier.

**3. Limitation of Actions.**

(a) Unless subject to a specific statute, all claims against the company for a potential or actual loss, or damage must be made in writing and received by the company, within two days of the event giving rise to claim; failure to give the company timely notice shall be a complete defense to any suit or action commenced by Customer.

**4. No Liability For The Selection or Services of Third Parties and/or Routes.** Unless services are performed by persons or firms engaged pursuant to express written instructions from the Customer, Company shall use reasonable care in its selection of third parties, or in selecting the means, route and procedure to be followed in the handling, transportation, clearance and delivery of the shipment; advice by the Company that a particular person or firm has been selected to render services with respect to the goods, shall not be construed to mean that the Company warrants or represents that such person or firm will render such services nor does Company assume responsibility or liability for any actions(s) and/or inaction(s) of such third parties and/or its agents, and shall not be liable for any delay or loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of a third party; all claims in connection with the Act of a third party shall be brought solely against such party and/or its agents; in connection with any such claim, the Company shall reasonably cooperate with the Customer, which shall be liable for any charges or costs incurred by the Company.

**5. Quotations Not Binding.** Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by the Company to the Customer are for informational purposes only and are subject to change without notice; no quotation shall be binding upon the Company unless the Company in writing agrees to undertake the handling or transportation of the shipment at a specific rate or amount set forth in the quotation and payment arrangements are agreed to between the Company and the Customer.

**6. Reliance On Information Furnished.**

(a) Customer acknowledges that it is required to review all documents and declarations prepared and/or filed with U.S. Customs & Border Protection, other Government Agency and/or third parties, and will immediately advise the Company of any errors, discrepancies, incorrect statements, or omissions on any declaration or other submission filed on Customers behalf;

(b) In preparing and submitting customs entries, export declarations, applications, security filings, documentation and/or other required data, the Company relies on the correctness of all documentation, whether in written or electronic format, and all information furnished by Customer; Customer shall use reasonable care to ensure the correctness of all such information and shall indemnify and hold the Company harmless from any and all claims asserted and/or liability or losses suffered by reason of the Customer's failure to disclose information or any incorrect, incomplete or false statement by the Customer or its agent, representative or contractor upon which the Company reasonably relied. The Customer agrees that the Customer has an affirmative non-delegable duty to disclose any and all information required to import, export or enter the goods.

**7. Declaring Higher Value To Third Parties.** Third parties to whom the goods are entrusted may limit liability for loss or damage; the Company will request excess valuation coverage only upon specific written instructions from the Customer, which must agree to pay any charges therefore; in the absence of written instructions or the refusal of the third party to agree to a higher declared value, at Company's discretion, the goods may be tendered to the third party, subject to the terms of the third party's limitations of liability and/or terms and conditions of service.

**8. Insurance.** Unless requested to do so in writing and confirmed to Customer in writing, Company is under no obligation to procure insurance on Customer's behalf; in all cases, Customer shall pay all premiums and costs in connection with procuring requested insurance.

**9. Disclaimers; Limitation of Liability.**

(a) Except as specifically set forth herein, Company makes no express or implied warranties in connection with its services. Customer shall maintain in full force, at all times on all inventory, contents or fixtures belonging to Customer contained within Loera Customs Brokerage, Inc.'s operational warehouses or premises an All RISK Insurance Policy including business interruption.

(b) In connection with all services performed by the Company, Customer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefor, which request must be confirmed in writing by the Company prior to rendering services for the covered transaction(s).

(c) Unless a separate agreement with specific amounts of liability was signed and agreed upon and in the absence of additional coverage under (b) above, the Company's liability shall be limited to the following:

(i) where the claim arises from activities other than those relating to customs brokerage, such as warehouse services, inventory storage and management of material, order fulfillment, shipping, receiving, quantity/accuracy reporting, packing, consolidation services, crossdock activities occurring on the company's facility or leased premises; $ 100.00 per shipment or transaction; with a maximum of $500.00 per incident. Should Customer require additional coverage, a request must be submitted by Customer in writing to receive a quote for additional insurance for such coverage and must be confirm by Company. Any claim arising from shipping of cargo must be filed within two days from receipt of goods.

(ii) where the claim arises from activities relating to "Customs business," $100.00 per entry or the amount of brokerage fees paid to Company for the entry, whichever is less; should Customer require additional coverage to cover any errors or omissions a request must be submitted by Customer in writing to receive a quote for additional insurance for such coverage and must be confirmed by Company.

(iii) Where the claim arises for goods lost or damaged, inventory shortages; the cost of the goods with a maximum of $ 500.00 per incident. Should Customer require additional coverage, a request must be submitted by Customer in writing to receive a quote for additional insurance for such coverage and must be confirmed

by Company.

(d) In no event shall Company be liable or responsible for consequential, indirect, incidental, statutory or punitive damages, even if it has been put on notice of the possibility of such damages, or for the acts of third parties.

(e) In no event shall Company be liable or responsible for consequential, indirect, incidental, statutory or punitive damages even if it has been put on notice of the possibility of such damages.

**10. Advancing Money**. All charges must be paid by Customer in advance unless the Company agrees in writing to extend credit to customer; the granting of credit to a Customer in connection with a particular transaction shall not be considered a waiver of this provision by the Company.

**11. Indemnification/Hold Harmless.** The Customer agrees to indemnify, defend, and hold the Company harmless from any claims and/or liability, fines, penalties and/or attorneys' fees arising from the importation or exportation of customers merchandise and/or any conduct of the Customer, including but not limited to the inaccuracy of entry, export or security data supplied by Customer or its agent or representative, which violates any Federal, State and/or other laws, and further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims, penalties, fines and/or expenses, including but not limited to reasonable attorney's fees, which the Company may hereafter incur, suffer or be required to pay by reason of such claims; in the event that any claim, suit or proceeding is brought against the Company, it shall give notice in writing to the Customer by mail at its address on file with the Company.

**12. C.O.D. or Cash Collect Shipments.** Company shall use reasonable care regarding written instructions relating to "Cash/Collect on Deliver (C.O.D.)" shipments, bank drafts, cashier's and/or certified checks, letter(s) of credit and other

similar payment documents and/or instructions regarding collection of monies but shall not have liability if the bank or consignee refuses to pay for the shipment.

**13. Costs of Collection**. In any dispute involving monies owed to Company, the Company shall be entitled to all costs of collection, including reasonable attorney's fees and interest at 12% per annum or the highest rate allowed by law,

whichever is less unless a lower amount is agreed to by Company.

**14. General Lien and Right To Sell Customer's Property.**

(a) Company shall have a general and continuing lien on any and all property of Customer coming into Company's actual or constructive possession or control for monies owed to Company with regard to the shipment on which the lien is claimed, a prior shipment(s) and/or both;

(b) Company shall provide written notice to Customer of its intent to exercise such lien, the exact amount of monies due and owing, as well as any on-going storage or other charges; Customer shall notify all parties having an interest in its shipment(s) of Company's rights and/or the exercise of such lien.

(c) Unless, within thirty days of receiving notice of lien, Customer posts cash or letter of credit at sight, or, if the amount due is in dispute, an acceptable bond equal to 110% of the value of the total amount due, in favor of Company, guaranteeing payment of the monies owed, plus all storage charges accrued or to be accrued, Company shall have the right to sell such shipment(s) at public or private sale or auction and any net proceeds remaining thereafter shall be refunded to Customer.

**15. No Duty To Maintain Records For Customer.** Customer acknowledges that pursuant to Sections 508 and 509 of the Tariff Act, as amended, (19 USC §1508 and 1509) it has the duty and is solely liable for maintaining all records required under the Customs and/or other Laws and Regulations of the United States; unless otherwise agreed to in writing, the Company shall only keep such records that it is required to maintain by Statute(s) and/or Regulation(s), but not act as a "recordkeeper" or "recordkeeping agent" for Customer.

**16. Obtaining Binding Rulings, Filing Protests, etc**. Unless requested by Customer in writing and agreed to by Company in writing, Company shall be under no obligation to undertake any pre- or post Customs release action, including, but not limited to, obtaining binding rulings, advising of liquidations, filing of petition(s) and/or protests, etc.

**17. Preparation and Issuance of Bills of Lading.** Where Company prepares and/or issues a bill of lading, Company shall be under no obligation to specify thereon the number of pieces, packages and/or cartons, etc.; unless specifically requested to do so in writing by Customer or its agent and Customer agrees to pay for same, Company shall rely upon and use the cargo weight supplied by Customer.

**18. No Modification or Amendment Unless Written.** These terms and conditions of service may only be modified, altered or amended in writing signed by both Customer and Company; any attempt to unilaterally modify, alter or amend same shall be null and void.

**19. Compensation of Company.** The compensation of the Company for its services shall be included with and is in addition to the rates and charges of all carriers and other agencies selected by the Company to transport and deal with the goods and such compensation shall be exclusive of any brokerage, commissions, dividends, or other revenue received by the Company from carriers, insurers and others in connection with the shipment. On ocean exports, upon request, the Company shall provide a detailed breakout of the components of all charges assessed and a true copy of each pertinent document relating to these charges. In any referral for collection or action against the Customer for monies due the Company, upon recovery by the Company, the Customer shall pay the expenses of collection and/or litigation, including a reasonable attorney fee.

**20. Force Majeure**. Company shall not be liable for losses, damages, delays, wrongful or missed deliveries or nonperformance, in whole or in part, of its responsibilities under the Agreement, resulting from circumstances beyond the control of either Company or its sub-contractors, including but not limited to: (i) acts of God, including flood, earthquake, storm, hurricane, power failure or other natural disaster; (ii) war, hijacking, robbery, theft, accidental water damage due to fire sprinkler malfunction, or terrorist activities; (iii) incidents or deteriorations to means of transportation, (iv) embargoes, (v) civil commotions or riots, (vi) defects, nature or inherent vice of the goods; (vii) acts, breaches of contract or omissions by Customer, Shipper, Consignee or anyone else who may have an interest in the shipment, (viii) acts by any government or any agency or subdivision thereof, including denial or cancellation of any import/export or other necessary license; or (ix) strikes, lockouts or other labor conflicts.

**21. Severability.** In the event any Paragraph(s) and/or portion(s) hereof is found to be invalid and/or unenforceable, then in such event the remainder hereof shall remain in Full force and effect. Company's decision to waive any provision herein, either by conduct or otherwise, shall not be deemed to be a further or continuing waiver of such provision or to otherwise waive or invalidate any other provision herein.

**22. Governing Law; Consent to Jurisdiction and Venue**. These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of Texas without giving consideration to principles of conflict of law. Customer and Company

(a) irrevocably consent to the jurisdiction of the United States District Court and the State courts of Texas;

(b) agree that any action relating to the services performed by Company, shall only be brought in said courts;

(c) consent to the exercise of *in personam* jurisdiction by said courts over it, and

(d) further agree that any action to enforce a judgment may be instituted in any jurisdiction.

Rev. 06/2025