```
                    UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION

In re:                        )  CASE NO: 25-90399
                              )  Houston, Texas
First Brands Group, LLC,      )
et al.                        )
                              )
          Debtors.            )  Wednesday,
                              )  May 20, 2026
------------------------------)  2:00 PM


                        MOTION HEARING

         BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ

              UNITED STATES BANKRUPTCY JUDGE



APPEARANCES:

For the Debtors:
                         JASON GEORGE
                         CLIFFORD W. CARLSON
                         MATT BARR
                         SUNNY SINGH
                         THEODORE E. TSEKERIDES
                         LOREN FINDLAY
                         Weil, Gotshal and Manges LLP
                         700 Louisiana Street, Suite 3700
                         Houston, TX 77002

For Katsumi Servicing, LLC:
                         CHARLES S. KELLEY
                         Mayer Brown LLP
                         700 Louisiana Street, Suite 3500
                         Houston, TX 77002

                         RICHARD A. STIEGLITZ
                         Mayer Brown LLP
                         1221 Avenue of the Americas
                         New York, NY 10020

For the U.S. Trustee:
                         JAYSON B. RUFF
                         Office of the U.S. Trustee
                         515 Rusk Street, Suite 3516
                         Houston, TX 77002
```

**DEBTORS' EXHIBIT NO. 6**
**Page 1 of 29**

For Total Quality Logistics, LLC:
                    YOSINA M. LISSEBECK
                    Dinsmore & Shohl LLP
                    655 W. Broadway, Suite 800
                    San Diego, CA 92101

For the Bank of America, N.A.:
                    DANIEL J. MCGUIRE
                    Winston & Strawn LLP
                    300 N. LaSalle Drive, Suite 4400
                    Chicago, IL 60654

For the Official Committee of Unsecured Creditors:
                    ROBERT J. STARK
                    Brown Rudnick LLP
                    7 Times Square
                    New York, NY 10036

For Evolution Credit Partners:
                    JORDAN SAZANT
                    Proskauer Rose LLP
                    70 West Madison, Suite 3800
                    Chicago, IL 60602-4342

For Leucadia Asset Management LLC:
                    EMIL A. KLEINHAUS
                    Wachtell, Lipton, Rosen & Katz
                    51 West 52nd Street
                    New York, NY 10019

Court Reporter:

Courtroom Deputy:       YESENIA LILA

Transcribed by:         Veritext Legal Solutions
                        330 Old Country Road, Suite 300
                        Mineola, NY 11501
                        Tel: 800-727-6396

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

**DEBTORS' EXHIBIT NO. 6**
**Page 2 of 29**

HOUSTON, TEXAS; WEDNESDAY, MAY 20, 2026

(Call to Order)

THE COURT:  Good afternoon.  This is Judge Lopez. Today is May 20th.  I'm going to call the 2 p.m. First Brands' hearing.  The Debtors have just filed some revised plan, and my understanding is that they're going to file some additional documents.  I think time is better spent reading these documents, including me.  So I'm going to adjourn the hearing to 3 p.m.  See where we are and see if we need to go another 30 minutes or so.  But I'm going to step out, do some reading, come back at 3:00, and maybe come back at 3:30 p.m.  So parties are more than welcome to dial in if you want to come back at another time.  But I'm just going to step off and then come back on at 3:30.  I'm going to keep the line open, but I'm going to step off and go back and see where we are.  Thank you.

THE COURT DEPUTY:  All rise.

UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

THE COURT:  All right.  No, please go on.

(Recess begins at 2:01 p.m.)

(Recess ends at 3:00 p.m.)

THE COURT:  This is Judge Lopez going back on the record in First Brands.

Is there someone from the Debtors on the line? All right.  917?

**DEBTORS' EXHIBIT NO. 6**
**Page 3 of 29**

MR. GEORGE:  Good afternoon, Your Honor. Jason George, Weil Gotshal, on behalf of the Debtors.

THE COURT:  Yes, sir.  What can you tell me?

MR. GEORGE:  Your Honor, we appreciate the Court culminating the later start time today.  Within the additional time, we filed a revised plan and disclosure statement, and are in the process of the disclosure statement reply I'll file right now.

THE COURT:  Can I get a redline before you file the reply?

MR. GEORGE:  Yes, Your Honor.  That's actually what we filed in advance.  That's in the process of being uploaded, plus the docket.

THE COURT:  A redline to what?  The plan, the disclosure, or both?

MR. GEORGE:  We'll have uploaded the file in revised plan and disclosure statement, and it'll include redlines against the previously filed version of each.

THE COURT:  Okay.  Perfect.  Thank you.  And you said you were filing then a reply?

MR. GEORGE:  Yes, Your Honor.

THE COURT:  Okay.  And then what's the plan?  What are the Debtors hoping to accomplish today?

MR. GEORGE:  Your Honor, we'd like to move forward with the hearing.  We would like an additional 30 minutes.

We had (indiscernible) some objections through the (indiscernible), but we're not with all parties.  They'll expect this to be a contested hearing, but the Debtors just need all 30 minutes.  I think we should be ready to go then at 3:30, if it's acceptable.

THE COURT:  But you're not factoring in me reading it.

UNIDENTIFIED SPEAKER:  Your Honor, if I may.

THE COURT:  I still need to read it.  So I'm not sure anything's going to be ready to start in 30 minutes.  And I'm just thinking you file redlines.  I still have the time.  I still need to read them.  Parties will need to read them and understand them.  Without knowing, I can't guarantee anything starting in 30 minutes.  And then there's going to be a reply.  Maybe it all makes sense, and everybody is happy.

But what I'm going to do is come back at 3:30, and then we'll make a decision about where we go.  I think it probably makes more sense for us to see what's on paper, what gets uploaded, and then I'll make a decision at 3:30 about what happens.  Do the Debtors still intend to proceed with the sale portion of this hearing as well?

MR. GEORGE:  Your Honor, I don't believe we have a sale on the agenda for today.  That might be scheduled for tomorrow, but I believe it's just a conditional approval of

a disclosure statement.

THE COURT:  I think it's scheduled for today, too. At least my notes tell me that.  Can we just -- let's just huddle up at 3:30, and then make sure that we're all on the same page about everything, because I don't have you all scheduled for tomorrow for the sale portion of it, but if anything changes or if my information is wrong, just let me know, okay?

MR. GEORGE:  We'll confirm, Your Honor.  Thank you.

THE COURT:  Thank you.  We're going to come back at 3:30, and then we'll see where we are.  Thank you.

MR. GEORGE:  Okay.

THE COURT DEPUTY:  All rise.

THE COURT:  Yeah, you're excused.

(Recess begins at 3:03 p.m.)

(Recess end at 3:31 p.m.)

THE COURT:  Okay.  Good afternoon.  This is Judge Lopez.  Today is May 20th.  It's 3:30 p.m.  I'm going to recall First Brands.  I'm going to just ask parties to make electronic appearances.  Just jump on the Southern District of Texas web page, you'll find a place where you can make your electronic appearances.  If you find my home page in Complex Cases, you'll find a link to First Brands.  Maybe I ought to hear from the Debtors.  I do see that a number of

things were filed.  Maybe you can walk me through them.

MR. CARLSON:  Good afternoon, Your Honor.  Cliff Carlson, on behalf of the Debtors.  And joined with me is Matt Barr, Sunny Singh, Ted Tsekerides, Jason George, and Loren Findlay.  Your Honor, I recognize we just filed a bunch of documents, a lot of paper.  Apologies for that and for delaying the hearing.  I promise that the time was used productively, and we've made a ton of progress with the parties.  Recognizing that we just filed a bunch of documents, and parties are reading them, including redlines.  Happy to move the handle on how the Court wants to.  We're happy to move forward, or if we want to give parties time and come back.

THE COURT:  Yeah, I was thinking --

MR. CARLSON:  That's fine as well.

THE COURT:  I think for me, I just want to take some time and read it.  And I know that other parties may need it as well.  I'd rather hear from the parties just to kind of get a sense of what their thoughts are before I kind of made any decisions on that.  But is there a sale hearing still going forward?

MR. CARLSON:  There's no sale hearing today.  It's Tuesday, or at least we've requested Tuesday for that sale hearing.

THE COURT:  Next Tuesday?

**DEBTORS' EXHIBIT NO. 6**
**Page 7 of 29**

MR. CARLSON:  That's right.

THE COURT:  Okay.  Let me just take a quick look. I appreciate the update.  Okay.  Oh, at 2:00?  I do see.

MR. CARLSON:  That's right.

THE COURT:  Okay.  I do see.  Okay.  All right. Thank you.  I appreciate.  Thank you.

Let me hear from anyone in the courtroom, just in terms of what got filed.  And kind of saving arguments, I haven't read everything carefully, and I know that others are reading, and I'm just trying to get a sense of timing from parties.

MR. KELLEY:  Your Honor, Charles Kelley from Mayer Brown, on behalf of Katsumi Servicing and a couple of other parties.  I'm joined in the courtroom by my partner, Rich Stieglitz.  But focusing solely on the issue the Court put the question of the parties on.  We are still processing because the redline came through late.  We're still processing it.

An observation, not a conclusion or an argument. There have been some significant changes.  I don't know that it changes our position from the papers we filed, but I can't say that we will have processed it today.  I think in fairness, and since the brief literally just got filed while we were going through security, the reply brief, I'd like to read what the Debtor said.  Without having spoken to my

colleague or even the client, if Tuesday is on the Court's docket, that doesn't seem either equitable or fair to proceed on this today.

THE COURT: Okay. Thank you.

Mr. Ruff?

MR. RUFF: Good afternoon, Your Honor. Jayson Ruff for the U.S. Trustee. My thoughts are very similar to Mr. Kelley's. Your Honor, we do have a process here, and we all came here prepared. We were ready to go. It wasn't until we got to the court, literally, here just before 3:00, that we saw, you know, and I know people are working at the speed of light and going as fast as they can. But I don't think it's very fair or equitable for all of us to sit here and try and respond when such, you know, big issues have been raised.

And we think the parties should be afforded more time to be able to digest. And I think there's probably a narrowing of the issues here, but I think some big issues remain. And, I mean, we just got the response brief, 37 pages longer than many of the objections that were filed. I know they were addressing many of the objections, so I'm not -- it probably had to be that long. But nevertheless, I think there's a lot there, Your Honor.

THE COURT: Okay. Thank you.

Anyone else in the courtroom wish to be heard?

**DEBTORS' EXHIBIT NO. 6**
**Page 9 of 29**

Anyone on the phone line, please hit 5*, and I will unmute your line. 858 number?

MS. LISSEBECK: Yes. Hi, Your Honor. This is Yosina Lissebeck representing Total Quality Logistics. I agree with the U.S. Trustee's comments. And particularly, since our objections are very in line with each other, I also need further time to be able to really read through the reply and see how it addresses our arguments.

THE COURT: And in terms of time, do you think 24 hours or do you think more than 24 hours?

MS. LISSEBECK: No, I agree. I think that since Tuesday, there's already some calendar items on Tuesday, I would ask for Tuesday.

THE COURT: Okay. Thank you.

Mr. Ruff?

MR. RUFF: Your Honor, if you're asking for time, I mean, we're fine to go -- if 24 hours is all we're allotted, we'll take the 24 hours. But, I mean, if something's on, we would prefer Tuesday, obviously, so --

THE COURT: Okay. Thank you.

There's a 312 number.

MR. MCGUIRE: Good afternoon, Your Honor. This is Dan McGuire for Bank of America's ABL agent. Your Honor, just on the record, the ABL lenders are not supportive of this plan as filed and reserve all our rights with respect

to the use of our cash collateral from the process to get this particular plan confirmed.  We're open to having discussions, but this was filed in a way contrary to the discussions we've had, and so we are not supportive of this process at this time.

THE COURT:  Thank you.

Anyone else? Please hit 5*, and I will unmute your line.  There's a 212 number.

MR. STARK:  Good afternoon, Your Honor.  It's Rob Stark on behalf of the Committee.  I don't want to weigh in too much on the timing because, obviously, people need to read and understand, and that's not lost on us.  This is a case where I think we can all observe that increases of time don't narrow issues.  They tend to foment issues.  And part of this step is to move forward.  The DIP is going to mature soon, and that's something I'm not exactly sure if the Debtor intend tune that up.

But, again, due process is important, and, of course, it's important.  I'm not suggesting otherwise, and people need a fair opportunity to present.  But we've seen an awful lot of deterioration with excess time provided for whatever reason that that presents at this moment.

THE COURT:  Thank you.

Anyone else?

Mr. Carson, it may make sense.  And just at a high

level, can you -- I don't want to proceed today, but I want to just get a sense of what's different.  If you could highlight some of the differences from the plan that I -- the one that was on file before versus the plan now.  I started going through the redlines, and I haven't studied the reply, but if someone were to just kind of highlight, just since we're here, just kind of give me a sense of where it is.  I think it would help me think through the issues a little bit more.

MR. CARLSON:  Yeah, I'm happy to, Your Honor.  And let me just get my notes for just one second.  I'm not going to go through a presentation.  And before I go into that, I would echo Mr. Stark's comments that I don't think more time is going to be helpful.  And, you know, time is of the essence in this case, and so we would be in favor of moving forward this week if we could.

But, Your Honor, where we're at generally is I think we finalized our agreement with the UCC and the Ad Hoc Group, and what we filed this afternoon reflects an agreement.  There are still issues around definitive documents and planned supplement documents, and those types of issues, but we've come to a spot where we're finally there after months of negotiating with them.

So some of the changes reflect changes that finalized those terms with the Ad Hoc Group and the

Unsecured Creditors Committee.  A number of the changes are also in response to the objections that were filed.  I think they're helpful comments, and they're going to alleviate a number of concerns and objections that were filed.  Unfortunately, given how we teed this up, the objection deadline was the day before the hearing, and so we had to move quickly and respond to everything that was filed yesterday.

But some of the changes that I just want to highlight for the Court that were responsive to those issues.  Your Honor, one, we've removed the provision that makes an eligible creditor ineligible if they file an objection to the plan.  So that's been removed.  There was issues and objections raised that it was inequitable.

THE COURT:  Would it also apply to an objection to the global settlement?

MR. CARLSON:  Correct.  So there's no negative consequence or impact on a party filing an objection.  So that provision has been removed.  The other changes that we made were to the definition of an eligible creditor as well.  Some of the other issues that you may have seen that were raised, and I think we've resolved a few of the objections, is there was a requirement that in order to participate in the litigation waterfall recovery, you couldn't have engaged in adverse conduct as determined by the Court or be on the

bad guy, the litigation list of --

So we've also modified that whole standard to say you're entitled to participate in the litigation waterfall so long as your claim is not disallowed.  It's really to track the code. So long as your claim is not disallowed under Section 502 or otherwise equitably subordinated.  So it's really just following the code in terms of who can or cannot participate, rather than a different standard for whether or not you're eligible to participate.  So that was another change, and I think deals with a lot of the objections that were filed.  I don't want to represent that it fully resolves issues with parties, but I know that was a big one.

We also changed -- and just to clarify one thing. So we've now changed everything to an opt-in structure. Third-party releases are only opt-in.  We have the concept of a preference settlement.  This is part of what we've been mediating for a long time with the Ad Hoc Group and the UCC. And the way that works under our plan is if you are a trade creditor, a supply chain, financing party, or a factor, you will be eligible to opt in to this preference settlement. And if you're a trade creditor, you get a waiver of preference claims against you.  If you're a supply chain or a factoring party, you get other benefits and modifications to how the new value defense works.

And the trade is you have to contribute your direct claims, so claims held directly by creditors against whoever, and also opting into the third-party release, in exchange for being a beneficiary of that preference settlement.  And parties have a long time.  They've got 45 days, following the effective date, to make that decision.  And they have to, you know, fill out a form and send it in.  It's a pure opt-in.

And then if you're a trade creditor, you know, given they may not be as active in these cases, they get a further extension of time.  They've got another 30 days following receipt of, you know, service of a preference suit from litigation trustee.  So at that point in time, they still have more time.

So what we've tried to do is to give more time on those types of decisions.  We've made it opt-in for third-party releases, although we still want to move on a shortened timeline by 7 days, less than the 28-day objection period.  We think the way that our plan is structured, and giving more time and opt-in, that it's fair.  And, you know, today we were going to be prepared to put on Mr. Moore to support why we think it's so critical that we move on the timeline that we've proposed.

We did also provide additional time between the objection deadline and the filing of our plan supplement.

THE COURT: So what does it move to?

MR. CARLSON: I think we moved it from 7 to 10 days between. I think we're proposing a June 10th objection deadline and a June 1st plan supplement deadline to give parties 10 days understanding, you know, in response to some of the objections and concerns about we want more time with the plan supplement documents to make a decision.

Those were the big ones. There were, you know, more provisions around how the funding of the DIP collateral trust and the waterfall will work, and other aspects of how we're dealing with that trust.

We made a number of changes just to clarify that with respect to disputed assets, whether it's inventory, accounts receivable, where if you're an SPV lender and you think that it's an SPV debtor's property or if you're a factor and you think it's your purchased accounts receivable, none of those types of assets are going to be transferred into the trust until there's a determination by the Court as to the owner of the assets or consensual resolution. And a bunch of other clarifications around how the plan and the global settlement don't disturb, you know, the factored accountable receivables account and our obligations under the cash management order to be processing and segregating the prepetition receivables and things like that.

So, as I said, I think a number of the changes were really intended to be responsive.  There are, you know, other changes in addition to those, but that was a chunk of them.  And unfortunately, the redline, you know, is heavy because it kind of flows --

THE COURT:  No, no, no, I understand.  It flows through the entire doc.  There was a concept of a global settlement motion that was going to be filed.  When do you anticipate filing the global settlement motion, and when do you contemplate that being heard?  As it relates to kind of plan timing and just in terms of staging it out.

MR. CARLSON:  We would file that prior to solicitation.  So, you know, the day of the hearing, or if we were ready, we would have been prepared to file that, call it by tomorrow, and do it on normal notice.  So parties would have 21 days to object, and the dates would line up with at least our proposed schedule, the same June 10th date, you know, with the June 17th.  So it'd be heard with our confirmation hearing.

THE COURT:  So the same objection deadline.

MR. CARLSON:  The same objection deadline.

THE COURT:  And then it would be heard kind of at the same time.

MR. CARLSON:  Everything would be teed up together.  That's right.  And --

THE COURT: Okay. So I know that you've addressed some of the issues and some of the objections I'm looking through. Just going through my notes here. There was a question raised in one of the objections about if someone is -- I think it was in the Katsumi objection, that if someone is deemed or someone is an eligible creditor but then later deemed ineligible, do they give up their -- you know, they would have signed on to the third-party releases, and then they're deemed ineligible later. Do they give up the third-party releases? Are they still bound by the third-party releases? I just want to -- has that been addressed, or is that going to be discussed?

MR. CARLSON: That's been addressed as well. So we did add language to clarify that. If you're later determined to be ineligible for the preference settlement -- and to be clear, the adverse conduct standard, that still is in play in respect of the preference settlement. It's just not in play with respect to the chairing and the waterfall. But the way it works is, and we've added language, if you're later deemed to be ineligible, the third-party release that they've consented to is rescinded. So they're no longer a releasing party under the plan. But the contribution of the direct claim, that is not unwound.

THE COURT: Okay.

MR. CARLSON: So for the two things that you give

up in exchange for the preference settlement, if you're determined to be ineligible, one of them falls away, the other comes back. You're no longer a releasing party.

THE COURT: And you're still proceeding with Premier as the plan debtor. So the UST's objection is still on the table, I assume.

MR. CARLSON: Yes, I'm sure Mr. Ruff -- I talked to him this morning. And my understanding is they still have issues with the structure of the plan. And you can hear from him. He will say, I'm sure, that he still has issues with the plan.

THE COURT: Okay. So I think, hearing everything, I understand timing is important. I think what makes the most sense is to proceed on Tuesday all in one time, take the sale. And the reason I'm saying Tuesday makes the most sense, one, we already have the date. Two, people would need to read this, talk to their clients. There may be further discussions going on over the weekend. Three, there may be someone who hasn't read this yet, doesn't know it's on file, doesn't know things have changed, and maybe they agree with it or think a little differently with it.

But on Tuesday, I go forward with this hearing one way or the other. There may be some additional tweaks, but we're going to go forward at 2:00, sale, conditional DS, take up the U.S. Trustee's objection at that time, not

motion to dismiss.  Just to be fair, I'm thinking, you know, the question before me is whether to grant conditional approval or not conditional approval.

If I grant conditional approval, my thought is teeing up the U.S. Trustee motion to dismiss, comment, or whatever, at the same time.  So it's an up or down that day.  One way or the other, I grant it, take it up.  I know the U.S. Trustee -- I'm just saying.  That's my thought.  I know people may think differently about it.  What I'm saying is if I don't or the U.S. -- but I'm going to be open to the U.S. Trustee telling me we got to take this up before that as well.  That's why I'm saying I'm putting thoughts out there where they are.

And I want the Debtors to think -- the June 17 day feels really tight with a plan of this magnitude.  If it goes out, I think the 28 days is -- you got it.  I think 28 days with a plan supplement jut feels -- and I'm thinking a lot like in those cases where you would have, you know, TDPs or something, where people can read it and kind of understand everything that's going on.  They may need time to understand all the docs, but maybe I need to go through -- it looks like the litigation list got taken off.  That was one of the things that I noticed.  Is it move somewhere else, call something else, or is it --

MR. CARLSON:  There's a specified non-release

party list still, and that's going to be filed with the plan supplement.

THE COURT:  That will be filed with the plan settlement.

MR. CARLSON:  And that is relevant for two reasons.  One, if you're on that list, you're not eligible for the preference settlement.  And otherwise, there's just clarifications.  For the avoidance of doubt, you're not getting a release if you're on this list.

THE COURT:  Okay.  I'm sorry, there's a 312 number here.

MR. SAZANT:  Yeah.  Hi, Your Honor.  This is Jordan.  Hi, Your Honor.  Thank you.  This is Jordan Sazant from Proskauer Rose, on behalf of Evolution Credit Partners.  I didn't intend to interrupt, but --

THE COURT:  No, no, no, please. I'm sorry.  I should have caught you earlier.  I apologize.

MR. SAZANT:  All good.  Thank you, Your Honor.  One issue that I wanted to raise, just based off of counsel's representations at the podium just now, and the changes to the ineligible creditor definition may be a bust in what was filed, but at least from what I'm reading on the redline, it doesn't seem to match up with the description that the Debtors have provided.

The way it's currently drafted, the definition is

that the ineligible creditors would include any creditor whose claim is subject to disallowance under 502(d), which, especially since it no longer includes an exception for potential preference liability, seems to include almost everyone.  I think that the Debtors said that the adverse conduct construct remains incorporated, but it was deleted from the definition, so potentially that's a bust.

I just want to raise that in advance of Tuesday, but our position is that the ineligible creditors list, at least as it pertains to the 502(d) issue, should only apply to claims that have been effectively disallowed under 502(d) and not potentially subject to disallowance.

THE COURT:  You're drawing the distinction between actually disallowed and potentially disallowed?

MR. SAZANT:  Yeah, right now, it says subject to disallowance, and that's just unclear.  That could be anyone who potentially received a payment in advance of the bankruptcy.  It's just we don't know who that is.

THE COURT:  Okay.  Thank you.  Oh, by the way, since Mr. Tsekerides is in the courtroom and Evolution, next Friday, I have committed to getting the summary judgment out.  I'm just blue booking, but this will take some time.  But it's on.  But by next Friday, you'll have the decision out.  I just wanted to let the parties know.  I apologize, it took me some time to get out, but since Evolution is here

and counsel is here --

MR. TSEKERIDES:  Is that on the record?

THE COURT:  No, I'm just going to --

MR. TSEKERIDES:  (indiscernible)?

THE COURT:  Yeah, it'll just be something filed on the docket.  I just wanted to let parties know since both of you are here.  I didn't want to do it with one wasn't here and without the other, but it'll hit the docket.

MR. SAZANT:  I appreciate that.

THE COURT:  All right.

MR. SAZANT:  Thank you, Your Honor.

THE COURT:  No, I wouldn't be blue booking if I was just going to read it.

MR. CARLSON:  Can you point the --

THE COURT:  No, hold on a second, Mr. Carlson. There's a 212 number.

MR. KLEINHAUS:  Good afternoon, Your Honor.  Emil Kleinhaus from Wachtell Lipton on behalf of the Leucadia parties.  And I'll start with an apology.  I was on a 6:30 a.m.  flight from LaGuardia, which first got delayed and then got canceled.  That flight usually works to get to Houston, but didn't work today, so sorry for not being there.

THE COURT:  That's fine.

MR. KLEINHAUS:  I'll be very brief.  I think Mr.

Carlson was very straightforward in describing the changes. We objected on several grounds.  One was to what we call the death trap, which is if you object, you're not eligible. That is now out.  The second thing we raised is this ineligible creditor definition, and subject to maybe some wording discussion of the nature that Evolution raised.  I think the Debtors made a good-faith effort to address that.

I think there's two things that we'll want to just try to nail down with the Debtors, so now on Tuesday.  And from a disclosure standpoint, obviously, objections to the plan are reserved.  As Mr. Carlson noted, this adverse conduct concept and also the list of non-release parties, while it's no longer in the plan for purposes of the eligible creditor definition, it does flow through the plan for purposes of the preference settlement.  So the timing of that filing is still something that we're just going to want to talk to the Debtors about as it relates to the time between the plan supplement and the hearing. And then there may be a substantive issue as to this adverse conduct definition, but that's not a disclosure issue.

And then the other issue that we raised, that I think we'll just want some clarity on, or further clarity, is I think we're understanding, based on discussions with the Debtors, what their position is on substantive consolidation as it relates to this plan.  But we will work

through the redlines carefully and try to get to a resolution with the Debtors, so that, at least from a disclosure standpoint, that's well understood.  So I'll stop there for now, Your Honor.  Thank you.

THE COURT:  Thank you.

Is there anyone else that wishes to be heard?

MR. RUFF:  Your Honor, just very briefly, since you raised it, and I don't want -- I just want Your Honor to be thinking about it.  You had raised the issue of timing and staging of our motion to convert.

THE COURT:  Yeah, it's something I want to kind of nail down on Tuesday.

MR. RUFF:  So I just wanted to let Your Honor know, we are wanting to have that heard within the 30 days that the code prescribes.  So I just wanted you to be thinking about that.  That is our desire, and not to -- I just want to give you as much time to think about that, and maybe we can talk more about that next week as well.

THE COURT:  No, no, no, that's what I'm saying.

MR. RUFF:  But it may be an easier decision depending on how things go next week.  So, I mean, we don't really have to talk about it in depth, but just as we stand here right now, I just wanted to be clear with the Court that we're really not excited or amenable to going past our 30 days that the --

THE COURT:  Understood.  No, no, no, and this is the kind of stuff I want us to start thinking about without getting into the substance of kind of where we are, but just --

MR. RUFF:  Just for practical purposes, I know that's something that Your Honor is trying to think about, just as you're looking forward at the calendar, so --

THE COURT:  That's exactly right.  Okay.  No, that's super helpful.  Thank you.  Okay.  Maybe at this point, I think, let's just --

MR. KELLEY:  I just wanted to make one comment, Your Honor.  I heard you -- again, Charles Kelley for Mayer Brown, on behalf of Katsumi.  I heard you mention the Tuesday hearing, and I think, at a minimum, moving this to Tuesday. We understand.  We haven't had a chance to process it.  We may still be standing up on Tuesday and (indiscernible).

THE COURT:  I think that's right.  It's just picking a date where, you know --

MR. KELLEY:  It just can't be today.

THE COURT:  Those in the courtroom and, you know, the 200 folks on the line know when to come back just so we can pick a date, and it's certain.  But I do think -- I think we have to go forward one way or the other and just pick -- either go forward and I make a decision one way or

the other about what happens next in terms of next stages, but not pushing it out any further. I think Tuesday is just a date where I'll have to make a call, either agree with the U.S. Trustee, agree with the Debtor, or do something in the middle. But I think some form of a decision I'll have to make on Tuesday.

MR. KELLEY: I appreciate that, Your Honor.

THE COURT: But I get it. Everybody's rights are preserved on that.

MR. KELLEY: I just recognized I was the first one to mention Tuesday, and I just didn't want you to feel like I was suggesting we could say with confidence we would be ready on Tuesday, getting that filed, and I just --

THE COURT: No, no, I understand. I just think Tuesday is better than tomorrow, and then Monday is a federal holiday. So I think Tuesday makes the most sense, yeah. Tomorrow is not good, and then Friday is not good. And so I think Tuesday makes the most sense and gives people opportunities to kind of digest. And there may be someone who shows up tomorrow, and I don't want to do that. So let's all pick Tuesday, 2 p.m.

If you Debtors can get a notice out, and we'll continue. We'll do the -- I'll let you -- I don't know which one goes first, sale or disclosure statement, but we'll figure all that out. And I've made no decisions one

way or the other about what happens.  I think we'll all digest and get a little bit smarter about what's on the table, and we'll see where we go from there.

MR. CARLSON:  Okay.  Your Honor, we'll do that. And just to the Debtors' view, just on the other point, we agree.  We think --

THE COURT:  Which other point?

MR. CARLSON:  Sorry.  We believe that the motion to convert or dismiss should be heard at confirmation.  And so I just wanted that record to be clear.

THE COURT:  Okay.  Thanks, everyone.  Thank you.

MR. CARLSON:  Thank you.

THE COURT DEPUTY:  All rise.

THE COURT:  Everyone's excused.  Thank you.

MR. CARLSON:  Thank you, Your Honor.

(Proceedings adjourned.)

<u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

Nathan Kiprotich Too

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date: May 23, 2026