**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

**KATSUMI SERVICING, LLC'S FIRST SET OF INTERROGATORIES TO FIRST
BRANDS IN CONNECTION WITH THE PLAN AND DISCLOSURE STATEMENT**

**PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 33 of the Federal Rules of Civil

Procedure, made applicable herein by Bankruptcy Rules 9014, 7026, and 7033, Katsumi Servicing,

LLC ("Katsumi"), by and through its undersigned counsel, hereby serves its First Set of

Interrogatories (the "Interrogatories"), attached hereto as **Exhibit A**, on First Brands Group, LLC,

and its debtor and non-debtor affiliates (collectively, "First Brands") in connection with the Plan

and Disclosure Statement (as such terms are defined below).

**PLEASE TAKE FURTHER NOTICE** that First Brands is directed to serve verified

answers to the Interrogatories on or before **4:00 p.m. (prevailing Central Time) on July 9, 2026**,

at the offices of Mayer Brown LLP, 700 Louisiana Street, Suite 3400, Houston, Texas 77002,

Attention: Charles S. Kelley, including by e-mail to Charles S. Kelley

(ckelley@mayerbrown.com), Gary Johnson (gjohnson@mayerbrown.com), Kyle TumSuden

(ktumsuden@mayerbrown.com), and Kaitlyn Barry (kbarry@mayerbrown.com), or at such other

time and place as may be mutually agreed to by the parties.  The Interrogatories shall be deemed

to be continuing in nature, and Katsumi requests that First Brands supplement the answers to the

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

1

Interrogatories if at any time additional information responsive to the Interrogatories comes into their possession, custody, or control.

[*Remainder of Page Intentionally Left Blank*]

2

**PLEASE TAKE FURTHER NOTICE** that Katsumi reserves its rights under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"), and any applicable law regarding the subject matter of this Notice and to amend, supplement, and/or modify the Interrogatories in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and other applicable law.

Dated:  June 22, 2026
Houston, Texas

/s Charles S. Kelley
**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, Texas 77002
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com

Sean T. Scott (admitted *pro hac vice*)
Kyle J. TumSuden (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Email: stscott@mayerbrown.com
          ktumsuden@mayerbrown.com

Richard A. Stieglitz (admitted *pro hac vice*)
Lauren C. Blanchard (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Email: rstieglitz@mayerbrown.com
          lblanchard@mayerbrown.com

*Counsel to Katsumi Servicing, LLC*

3

**<u>EXHIBIT A</u>**

**Interrogatories**

## DEFINITIONS[2]

1.      "ABL Collateral Trust Assets" has the meaning set forth in the Plan.

2.      "Administrative Expense Claim" has the meaning set forth in the Plan.

3.      "Adverse Conduct" has the meaning set forth in the Plan.

4.      "Allowed" has the meaning set forth in the Plan.

5.      "Cause of Action" has the meaning set forth in the Plan.

6.      "Communications" means any recorded oral or written communication of any kind, including emails, text messages, chat messages, Microsoft Teams messages, WhatsApp messages or communications, social media communications, written communications, letters, electronic messages communicated via electronic means such as by computer, phone, or other electronic device, or any other exchange, transfer, or dissemination of information, notifications, regardless of the means by which it was accomplished.

7.      "Conditional Disclosure Statement Hearing" has the meaning set forth in the Disclosure Statement.

8.      "Confirmation Hearing" has the meaning set forth in the Plan.

9.      "Chapter 11 Cases" means, with respect to each of the Debtors, each and every one of such Debtor's cases under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court, and also includes the cases under Chapter 7 of the Bankruptcy Code for the Evolution SPV Debtors and any Adversary Proceedings filed in connection with such Chapter 11 Cases.

10.      "concerning", "referencing", "regarding", "reflecting", "relating to", and "in connection with" mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, made pursuant to, containing, analyzing, evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed in conjunction with, consulting with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

11.      "DIP Secured Parties" has the meaning set forth in the Plan.

12.      "Direct Creditor Claims" has the meaning set forth in the Plan.

13.      "Debtors" means each of the debtors and debtors in possession in the Chapter 11 Cases, together with each of their employees, managers, officers, directors, agents, representatives, subsidiaries, special purpose vehicles, and affiliates.

14.      "DIP A Claims" has the meaning set forth in the Plan.

---

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Plan.

15.     "DIP Collateral Trust" has the meaning set forth in the Plan.

16.     "Disclosure Statement" means the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at Dkt. No. 2982, including all exhibits and schedules thereto, as may be amended, revised, supplemented, or otherwise modified from time to time.

17.     "Documents" is used in the broadest sense and means any kind of printed, recorded, written, graphic, or photographic matter (including tape recordings), however printed, produced, reproduced, coded or stored, of any kind or description, whether sent or received or not, including originals, copies, drafts, and both sides thereof, and including papers, books, charts, graphs, photographs, drawings, correspondence, telegrams, cables, telex messages, memoranda, notes, notations, work papers, routing slips, intra and inter-office communications, electronic mail, text messages, chat messages, Microsoft Teams messages, WhatsApp messages or communications, social media communications, affidavits, statements, opinions, court pleadings, reports, indices, studies, analyses, forecasts, evaluations, contracts, computer printouts, data processing input and output, computer programs, microfilms, microfiche, all other records kept by electronic, photographic, or mechanical means, and things similar to any of the foregoing, regardless of their authority, preparer, or origin, or any kind.

18.     "Effective Date" has the meaning set forth in the Plan.

19.     "Entity" has the meaning set forth in the Plan.

20.     "Estate Claims" has the meaning set forth in the Plan.

21.     "Estate Claims Marketing Process" has the meaning set forth in the Disclosure Statement.

22.     "Factors" has the meaning set forth in the Plan.

23.     "Final Return Threshold" has the meaning set forth in the Plan.

24.     "First Brands" means the Debtors, together with all non-debtor subsidiaries or affiliates and each of their employees, managers, officers, directors, agents, subsidiaries, and special purpose vehicles.

25.     "First Return Threshold" has the meaning set forth in the Plan.

26.     "including" means including, without limitation, or without in any way qualifying or restricting the foregoing.

27.     "Litigation Trust" has the meaning set forth in the Plan.

28.     "Litigation Trust Assets" has the meaning set forth in the Plan.

29.     "Litigation Trust Class 1 Funding Contributors" has the meaning set forth in the Plan.

30.     "Other Priority Claims" has the meaning set forth in the Plan.

31.     "Person" has the meaning set forth in the Plan.

32.     "Petition Date" has the meaning set forth in the Plan.

33.     "Plan" means the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at ECF No. 2981 in the Chapter 11 Cases, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time.

34.     "Premier Marketing Group Global Settlement" has the meaning set forth in the Premier Marketing Group Plan.

35.     "Premier Marketing Group Plan" means the Chapter 11 Plan of Premier Marketing Group, LLC filed at ECF No. 2733 in the Chapter 11 Cases, as amended, revised, supplemented, or otherwise modified.

36.     "Prepetition Secured Parties" has the meaning set forth in the Plan.

37.     "Professional" has the meaning set forth in the Plan.

38.     "Professional Fee Claim" has the meaning set forth in the Plan.

39.     "Second Return Threshold" has the meaning set forth in the Plan.

40.     "Special Committee" has the meaning set forth in the Plan.

41.     "Specified Non-Released Parties" has the meaning set forth in the Plan.

42.     "Third-Party Factoring" has the meaning set forth in the Disclosure Statement..

43.     "You" or "Your" means First Brands.

3

**DEBTORS' EXHIBIT NO. 13**
**Page 7 of 14**

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for the purposes of the Interrogatories, the following Instructions shall be followed:

1.      Unless otherwise stated, the time period covered by the following Interrogatories is September 1, 2025 through the present (the "Relevant Period").

2.      Each Interrogatory shall be answered separately and fully in writing under oath, in accordance with Federal Rule of Civil Procedure 33.

3.      Where You lack sufficient information to answer an Interrogatory fully, so state, provide such information as is available, and describe the efforts made to obtain the information necessary to provide a full answer.

4.      If You object to any Interrogatory in whole or in part, state the grounds for such objection with specificity and answer the Interrogatory to the extent it is not objectionable.

5.      If You contend that any Interrogatory calls for information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, identify the information withheld and state the factual and legal basis for the privilege claim with sufficient specificity to enable Katsumi to assess the claim.

6.      To the extent You elect to produce business records in response to any Interrogatory pursuant to Federal Rule of Civil Procedure 33(d), identify with specificity the records from which the answer may be derived or ascertained, and specify the records to be produced in sufficient detail to enable Katsumi to locate and identify them as readily as You could.

7.      In each of the Interrogatories, the use of either the singular or plural shall not be deemed a limitation, and the use of the singular includes the plural, and vice versa.

4

8.      In each of the Interrogatories, the words "and" and "or" are interchangeable and shall be construed either disjunctively or conjunctively or both, as broadly as necessary to bring within the scope of each Interrogatory those responses that might otherwise be construed to be outside the scope.

9.      The Interrogatories herein are to be deemed continuing so as to require further and supplemental answers if You obtain additional responsive information between the time of Your original answer and the time of the final hearing held in this action.

[*Remainder of Page Intentionally Left Blank*]

5

## INTERROGATORIES

1.     Identify each Person who participated in, was consulted regarding, or has knowledge of the negotiation, drafting, or formulation of the Plan, the Plan Settlement, the Premier Marketing Group Plan, or the Premier Marketing Group Global Settlement, including each such Person's role and the subject matter of such Person's knowledge.

2.     Identify each Person who participated in, was consulted regarding, or has knowledge of the Estate Claims Marketing Process, including the role of each such Person and the dates of such Person's involvement.

3.     Identify each Person or Entity that First Brands contends engaged in Adverse Conduct, and for each such Person or Entity, describe with particularity: (a) the specific conduct that constitutes Adverse Conduct; (b) the date(s) on which such conduct occurred; (c) how and when First Brands became aware of such conduct; and (d) any investigation or analysis undertaken by First Brands or its professionals to assess whether such conduct constitutes Adverse Conduct.

4.     Identify each Cause of Action, Estate Claim or other claim or cause of action to be included in, contributed to, or otherwise retained for inclusion in the Litigation Trust or the Litigation Trust Assets, and for each such Cause of Action, Estate Claim or other claim or cause of action, state: (a) the nature and legal basis of the claim; (b) the parties against whom the claim may be asserted; (c) the estimated value of the claim; (d) the methodology used to arrive at such valuation; and (e) the Person(s) who performed or directed such valuation.

5.     Identify all outstanding receivables or invoices that remain uncollected and are related to any Third-Party Factoring arrangement, including: (a) the identity of each obligor; (b) the amount outstanding; (c) the current status of collection efforts; and (d) the Debtors' assessment of the collectability of such receivables.

**DEBTORS' EXHIBIT NO. 13**
**Page 10 of 14**

6.     Describe with particularity how proceeds from the purchase of receivables by Katsumi and the other Factors were used, distributed, or applied by First Brands or its prepetition management (or any Entities controlled by prepetition management) from January 1, 2023 through the Petition Date, including the identity of each Debtor and non-Debtor entity whose obligations such proceeds were applied to, used for, directed to, or expended on.

7.     Describe the criteria, methodology, and process used to determine which Persons are included on the schedule of Specified Non-Released Parties, including: (a) who made such determinations; (b) when such determinations were made; (c) the factual basis for including each Person on such schedule; and (d) whether any Person was considered for inclusion but ultimately excluded, and if so, the basis for such exclusion.

8.     Identify each witness the Debtors intend to call at the Confirmation Hearing, and for each such witness, state: (a) the subject matter of the expected testimony; (b) the witness's relationship to the Debtors; and (c) all Documents and Communications on which such witness has relied or will rely in connection with such testimony.

9.     Identify each Cause of Action, Estate Claim or other claim or cause of action contemplated to be included in the Litigation Trust or the Litigation Trust Assets, and for each such claim or cause of action, state: (a) the nature and legal basis of the claim or cause of action; (b) the identity of each defendant or potential defendant; (c) the current status of any proceedings related thereto; and (d) the estimated value of the claim or cause of action.

10.     Describe with particularity the Debtors' forecasted duration or timeline to monetize each Cause of Action, Estate Claim, or other claim or cause of action to be included in the Litigation Trust or the Litigation Trust Assets, and for each such claim or cause of action, state:

7

(a) the projected timeline for prosecution; (b) the forecasted amount of recoveries on such timeline; and (c) all assumptions underlying such forecasts.

11.     Describe with particularity the Debtors' forecasted duration or timeline satisfy the First Return Threshold, the Second Return Threshold, and the Final Return Threshold, and for each such threshold, state all assumptions underlying such forecasts.

12.     Identify each Administrative Expense Claim and Other Priority Claim to be satisfied prior to the Effective Date, and for each such claim, state:  (a) the asserted amount of such claim; (b) the projected allowed amount of such claim; and (f) the Debtors' methodologies for estimating such allowed amount.

13.     Describe with particularity whether the Special Committee (or any of its members) or the Debtors investigated whether any Prepetition Secured Parties or DIP Secured Parties engaged in prepetition conduct for which claims can be asserted against such parties, including: (a) the scope and nature of such investigation; (b) who conducted or directed such investigation; (c) the period of time covered by such investigation; (d) the conclusions reached; and (e) whether any claims were identified that could be asserted against such secured parties. If no such investigation was conducted, state the reasons why not.

14.     Describe with particularity the Debtors' work and conclusions under applicable state law as to which Causes of Action, Estate Claims or other claims or causes of action may be transferred or contributed to the Litigation Trust or the Litigation Trust Assets, including (a) the specific state law analyses performed; (b) the identity of the professionals who performed such analyses; (c) the conclusions reached for each such claim or cause of action; and (d) any such claim or cause of action that the Debtors have determined cannot be transferred or foreclosed upon and the basis for such determination.

8

15.     Identify all uncollected prepetition receivables or invoices under the Third-Party Factoring arrangements for which the Debtors believe they have rights to obtain payment (without regard to whether such prepetition receivables were sold to a customer or third-party factor), including for each such receivable: (a) the receivable number; (b) the amount; (c) the date of the receivable; (d) the date payment was due; (e) any related credit memos; (f) the seller; (g) the account obligor; and (h) the number of days delinquent.

16.     Identify all Litigation Trust Class 1 Funding Contributors , and for each such contributor, state: (a) the name of the contributor; (b) the name and title of the representative communicating the commitment on behalf of each lender; (c) the amounts committed to fund by each contributor; (d) the terms and conditions of such funding commitment; (e) all documentary evidence supporting the fact that each contributor has committed to fund such amounts; and (f) the Debtors' assessment of, or concerns regarding, the risk of non-funding by any such contributor.

17.     Identify the total aggregate amount of anticipated fees and expenses of the DIP Collateral Trust.

18.     Identify the amount of Allowed DIP A Claims to be paid or satisfied from sources other than litigation recoveries, including: (a) the projected amounts and timing of such payments; and (c) the sources of repayment.

19.     Identify the total aggregate amount of anticipated Professional Fee Claims to be incurred from the Conditional Disclosure Statement Hearing to the Confirmation Hearing, and for each Professional Fee Claim, state: (a) the Professional and (b) the estimated amount of such Professional's Professional Fee Claim.

20.     Identify the total aggregate amount of anticipated professional fees to be incurred under Section 2.3(e) of the Plan, including: (a) the professionals anticipated to incur such fees, (b)

9

the estimated amount of fees to be incurred by each such professional, (c) any anticipated limitations on such compensation; and (d) the process for winding down professional engagements.

21.     Describe with particularity the Debtors' assessment of when the Effective Date is reasonably likely to occur, including (a) the factual and legal bases for such assessment and (b) the criteria by which the Debtors propose that failure be determined.

22.     Describe with particularity the Debtors' assessment of any Direct Creditor Claims that may be contributed to the Litigation Trust, including: (a) the identity of the holder of each such claim; (b) the estimated value of each such claim; and (c) the basis for such valuation.

23.     State the Debtors' intent with respect to all claims against non-debtor affiliates, including: (a) whether such claims will be transferred to the Litigation Trust; (b) during the pendency of the post-Confirmation period, who has exclusive rights over all claims transferred to the Litigation Trust, including the right to determine whether to pursue, settle, or litigate such claims; and (c) the governance and oversight mechanisms applicable to the exercise of such rights.

24.     Describe with particularity the Litigation Trust Backstop Commitments, including: (a) any commitment parties and (b) the amounts committed.

10

1760915099