**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FIRST BRANDS GROUP, LLC, *et al.*, | ) | Case No. 25-90399 (CML) |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**EVOLUTION'S FIRST SET OF
REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO FBG DEBTORS**

To:     First Brands Group, LLC, *et al.*, care of its counsel of record, Weil, Gotshal & Manges
LLP, as follows:
Robert S. Berezin (robert.berezin@weil.com)
Sunny Singh (sunny.singh@weil.com)
Clifford Carlson (clifford.carlson@weil.com)
Christine Calabrese (christine.calabrese@weil.com)
Elaina Aquila (elaina.aquila@weil.com)
Evelyn Medai (evelyn.medai@weil.com)
Priya Kamath (priya.kamath@weil.com)

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable by Rules 7026,

7034, and 9014 of the Federal Rules of Bankruptcy Procedure, Evolution Credit Partners

("Evolution")[2] serves this First Set of Requests for Production of Documents to Debtors (the

"Requests") on First Brands Group Holdings, LLC, its direct and indirect debtor subsidiaries, and

Viceroy Private Capital, LLC (collectively, "FBG Debtors") in connection with the FBG Debtors'

Chapter 11 Plan and Disclosure Statement (as defined herein).  The FBG Debtors shall produce

the Documents described in the requests below (collectively, the "Requests," and each, a

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] "Evolution" means, collectively, Evolution Credit Opportunity Master Fund II-B, L.P., Evolution Credit Partners Trade Finance Master L.P. (as successor in interest to Evolution Credit Partners Trade Finance L.P.), Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution affiliated funds.

1

**DEBTORS' EXHIBIT NO. 15
Page 1 of 15**

"Request") at the offices of Elsberg Baker & Maruri PLLC, 350 5th Avenue, 38th Floor, New York, NY 10118 no later than **5:00 p.m. Eastern Time on July 7, 2026.**

## DEFINITIONS

1.    "ABL Lenders" has the meaning set forth in the Plan.

2.    "Ad Hoc Group" has the meaning set forth in the Plan.

3.    "Bankruptcy Code" has the meaning set forth in the Plan.

4.    "Chapter 11 Cases" means, with respect to each of the Debtors, each and every one of such Debtor's cases under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court, and also includes the cases under Chapter 7 of the Bankruptcy Code for the Evolution SPV Debtors. The term Chapter 11 Cases includes any Adversary Proceedings filed in connection with such Chapter 11 Cases.

5.    "Communication" and "Communications" mean, without limitation, any act or instance of transferring, transmitting, passing, delivering, giving, or recording information by oral, written or electronic means, including, without limitation, conversations, meetings, notes, drawings, letters, telegrams, facsimiles, electronic mail, voicemail, text message, instant message, or ephemeral message, whether or not the Communication is intended for, or received by, a separate person.

6.    "Conditional Disclosure Statement Hearing" means the hearing held on June 12, 2026 on the *Emergency Motion of Debtors for Entry of Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt-In Procedures; (V) Establishing*

2

*Preference Settlement Notice and Opt-In Procedures; (VI) Establishing Notice and Objection Procedures for Confirmation of Plan; and (VII) Granting Related Relief* [Dkt. 2914] and the *Motion to Convert or Dismiss Case* [Dkt. 2670] filed by the United States Trustee.

7. "Confirmation Hearing" has the meaning set forth in the Plan.

8. "Creditors' Committee" has the meaning set forth in the Plan.

9. "Debtors" means each of the debtors and debtors in possession in the above captioned chapter 11 cases, together with each of their employees, managers, officers, directors, agents, subsidiaries, special purpose vehicles, and affiliates.

10. "DIP Secured Parties" has the meaning set forth in the Plan.

11. "Disclosure Statement" means the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at Dkt. No. 2982, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time, and which is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code and Bankruptcy Rules 3016 and 3018.

12. "Document" and "Documents" are used in the broadest sense permitted. As such, "Document" and "Documents" include any writing, record, or other tangible or intangible thing from which data or information can be obtained, translated, or decoded by any means, whether printed, stored, recorded, reproduced, or otherwise preserved by any process or contained in any other storage device, as well as ESI (as defined below), letters, memoranda, computer printouts, invoices, brochures, text messages, instant messages, notes, voice-mail communications, video tapes, e-mail, Bloomberg email, data sheets, notes, computer tapes, disks, computer programs, microfilm, manuals, audio tapes, or records or recordings of meetings, conferences, and telephone

3

**DEBTORS' EXHIBIT NO. 15**
**Page 3 of 15**

or other conversations or Communications. A request for Documents includes any Communications concerning the matter that is the subject of the request.

13. "Electronically stored" shall be afforded the broadest possible definition and shall include any information stored electronically, magnetically, or optically, including (by way of example and not as an exclusive list): (a) digital communications (e.g., email, text messages, Slack messages, voice mail, instant messaging); (b) word-processed documents (e.g., Word documents and drafts); (c) spreadsheets and tables (e.g., Excel worksheets); (d) accounting application data (e.g., QuickBooks files); (e) image and facsimile files (e.g., .pdf, .tiff, .jpg, .gif images); (f) sound recordings (e.g., .wav and .mp3 files); (g) video and animation (e.g., .avi and .mov files); (h) databases (e.g., Access, Oracle, SAP, SQL server data); (i) contact (e.g., Outlook .pst, blog tools); (k) online access data (e.g., temporary internet files, history, cookies); (l) presentations (e.g., PowerPoint); (m) network access and server activity logs; (n) project management application data; (o) computer aided design/drawing files; and (p) backup and archival files (e.g., .zip), (q) or any other software format in which information may be contained.

14. "Entity" has the same meaning as in the Bankruptcy Code.

15. "ESI" means information that is electronically stored, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (*i.e*, on paper). ESI sources include email, electronic document repositories (*e.g.,* Box), and instant messaging services (*e.g.*, Telegram or Slack).

16. "Estate Claims" has the meaning set forth in the Plan.

17. "Estate Claims Credit Bid Transaction" has the meaning set forth in the Plan.

18. "Estate Claims Marketing Process" has the meaning set forth in the Disclosure Statement.

19.　　"Evolution SPV Debtors" has the meaning set forth in the Disclosure Statement.

20.　　"Examiner" has the meaning set forth in the Disclosure Statement.

21.　　"Litigation Trust Assets" has the meaning set forth in the Plan.

22.　　"Plan" means the Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors filed at Dkt. No. 2981, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time.

23.　　"Plan Settlement" has the meaning set forth in the Plan.

24.　　"Plan Supplement" has the meaning set forth in the Plan.

25.　　"Premier Marketing Group Global Settlement" has the meaning set forth in the Premier Marketing Group Plan.

26.　　"Premier Marketing Group Plan" means the Chapter 11 Plan of Premier Marketing Group, LLC filed at Docket No. 2733 in the above-captioned case, as it had been amended, revised and/or supplemented.

27.　　The word "including" means "including without limitation" or "including, but not limited to."

28.　　"Person" means natural person, proprietorship, corporation, partnership, trust, joint venture, group, association, organization, and entity regardless of form and all of its directors, officers, employees, representatives, trustees, or agents.

29.　　"You" and "Your" refers to any and each of the FBG Debtors or any and each of FBG Debtors' predecessors, successors, assigns, parent companies, subsidiaries, affiliates, legal representatives, managers, directors, officers, employees, representatives, trustees, or agents.

30.　　Whenever used herein:  (a) the singular shall be deemed to include the plural, and the plural shall be deemed to include the singular; (b) the term "including" shall be deemed to

**DEBTORS' EXHIBIT NO. 15**
**Page 5 of 15**

mean "including, but not limited to," and shall not be construed to limit the scope of any definition or Request herein; (c) the disjunctive ("or") shall be deemed to include the conjunctive ("and"), and the conjunctive ("and") shall be deemed to include the disjunctive ("or"); and (d) the terms "any," "each," "every," and "all" shall be deemed to include each of the others.

31.     The terms "concerning," "reflecting," "relating to" and "regarding" are synonymous and should be understood in the broadest possible meaning, including analyzing, concerning, containing, dealing with, constituting, defining, describing, embodying, interpreting, evidencing, comprising, commenting on, recording, reflecting, relating to, regarding, responding to, explaining, identifying, discussing, mentioning, referring to, setting forth, showing, having any relationship or connection to, stating, summarizing, supporting, or in any way pertaining to the subject matter of the Request, explicitly or implicitly.  For the avoidance of doubt, the terms "concerning," "reflecting," "relating to" and "regarding" and their variants shall be construed to bring within the scope of the Requests any information that was reviewed in conjunction with, or was generated as a result of, the subject matter of the Requests.  For ease of reference, more than one of these terms may be included in a particular Request, but such use shall not alter this definition in any way.

## INSTRUCTIONS

The following instructions apply to each of the Requests:

1.     In responding to these document requests, You shall produce all responsive Documents and tangible things which are in Your possession, custody, or control or in the possession, custody, or control of Your current or former directors, officers, partners, members, employees, advisors, agents, representatives, subsidiaries, managing agents, affiliates, attorneys, accountants, auditors, investigators, servants, or other persons acting or purporting to act on Your behalf.  A Document shall be deemed to be within Your control if You have the right to secure the

6

Document or a copy of the Document from another person having possession or custody of the Document, or if the Document is deemed to be within Your control under applicable law.  If a Document is responsive to the requests and is not in Your control, identify the person or entity (by name, business address and residential address, occupation, and job title) having possession or custody.

2.      Your obligations pursuant to the document requests are not limited or affected by the availability of any Document or Communication through any other source.  The fact that a Document or Communication is produced by another person does not relieve You of Your obligation to produce Your iteration of that Document or Communication, even if identical in all respects.

3.      A request for Documents or Communications includes a request for all drafts, and non-identical copies of such Documents or Communications, including copies that differ by virtue of handwritten or other notes or markings, and all such drafts and non-identical copies must be produced if responsive to a request.  Except to the extent otherwise provided herein or in any ESI agreement or stipulation, Documents and Communications shall be produced in their original form, as they are maintained in the ordinary course of business, in the same form, and in the same order within each file in which they were located prior to production.

4.      If any portion of any Document or Communication is responsive to any request, the entire Document or Communication, including any attachments or disclosures, must be produced. If a Document responsive to the document requests cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

5.      All Documents and Communications should be produced in their original form, as they are maintained in the ordinary course of business, including in the sequence in which they are

ordinarily maintained, or shall be organized and labeled to correspond to the specific Requests to which they are responsive.  All Documents and Communications shall be produced in their entirety, including with any attachments or enclosures.

6.      Unless otherwise agreed by all parties, all Documents shall be Bates stamped and shall be produced electronically in single page Group IV TIF format (except that Microsoft Excel, PowerPoint, and data files shall be produced in native formats), with load files containing, for each Document, extracted searchable text and all available metadata for at least the following fields: PRODBEG;   PRODEND;   PRODBEGATTACH;   PRODENDATTACH;   DATESENT;   TIMESENT; DATECREATED; TIMECREATED; EMAILTO; EMAILFROM; EMAILCC; EMAILBCC; EMAILSUBJECT; TEXT PATH; and NATIVE PATH, as well as a field denoting the custodian of the document.

7.      All Documents or Communications stored in electronic format, including email, shall be produced with all electronic data including metadata, sequence, and attached or embedded objects, pursuant to an ESI stipulation to be negotiated between the parties.

8.      If a Document or Communication is responsive to more than one document request, You are not required to duplicate production.  For the avoidance of doubt, all drafts, and non-identical copies, including copies that have different metadata (including, for example, because they are held by different custodians), and/or that differ by virtue of handwritten or other notes or markings, must be produced even if a "final" or other version of the Document is also produced.

9.      You shall produce in their original form all Documents and Communications that cannot be legibly copied.

10.     If any objection is made to any of these document requests, the response shall state with specificity the grounds for the objection, whether any Document or Communication is being

withheld from inspection and production based on such objection, or whether inspection or production of the responsive items will occur notwithstanding such objection.  If You object to any document request on grounds of overbreadth or similar bases, You are instructed to respond to the document request as narrowed.  For the avoidance of doubt, You must make clear the extent to which You have narrowed Your response to any document request and inform defendants as to whether any requested Documents or Communications are being withheld because of that narrowing.

11.     If You claim any form of privilege, immunity, or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested Document or Communication, furnish a list identifying each Document or Communication for which the privilege, immunity, or other objection is claimed, together with the following information: a description of the type of Document or Communication (e.g., email, letter, agreement, memorandum, etc.); date; sender; recipients; persons to whom the Document or Communication (or copies thereof) was provided; subject matter; and basis upon which a privilege, immunity, or other objection is claimed.

12.     If You claim privilege or immunity regarding only part of a Document or Communication, produce the part as to which there is no claim of privilege or immunity, and furnish a list identifying each item that is partially withheld together with the information listed in Instruction 7 above.  Material should not be redacted except to protect a bona fide privilege or immunity.  Redactions based on the purported sensitivity or irrelevance of discovery material are improper.

9

13.     If You cannot satisfy any request, either in full or in part, You shall produce Documents and Communications to the extent possible, specifying the reason for Your inability to produce further Documents or Communications.

14.     If there are no Documents or Communications responsive to any request or subpart thereof, You shall state so in writing.

15.     If any Document or Communication requested herein was lost, discarded, destroyed, deleted, or otherwise is no longer in Your possession, custody, or control, state and specify in detail for each such Document or Communication: a description of the type of Document or Communication (e.g., email, letter, agreement, memorandum, etc.); date; sender; recipients; persons to whom the Document or Communication (or copies thereof) was provided (including their job titles and professional affiliations); the information contained therein; the date upon which it ceased to be in Your possession, custody, or control; the manner of disposal; the reasons for disposal; the persons authorizing the disposal; the persons effectuating the disposal; the document requests to which such Document or Communication is responsive; and the identity of all persons having knowledge of the contents, or circumstances around the disposition, thereof.

16.     These document requests are continuing in nature and any Document or Communication obtained subsequent to production which would have been produced had it been available or its existence been known at the time of production, shall be produced forthwith.

17.     Unless otherwise stated, the relevant time period (the "Relevant Period") for the requests is September 1, 2025, to the present, provided however, that You shall produce all Documents responsive to the requests for production, regardless of the date of such Document, if (i) such Document, or the contents thereof, was accessed, consulted, reviewed, referred to, or relied upon, directly or indirectly, at any time since September 1, 2025; (ii) such Document, or

10

the contents thereof, directly or indirectly, formed the basis, in whole or in part, for any allegation You made in Your Plan or Disclosure Statement, and any hearing on the Disclosure Statement or Plan and related filings; or (iii) You intend to rely on such Document, or the contents thereof, during any further hearing on the Your Plan or Disclosure Statement.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### Request for Production No. 1

All transcripts of any deposition (including exhibits thereto) taken in connection with the Chapter 11 Cases or any Adversary Proceeding.

### Request for Production No. 2

All responses to interrogatories or requests for admission (including all documents referenced therein or identified pursuant to Fed. R. Civ. P. Rule 33(d)) provided by any of the Debtors in connection with the Chapter 11 Cases or any Adversary Proceeding.

### Request for Production No. 3

All Documents and Communications exchanged among You and the Ad Hoc Group (or any of its members), the Creditors' Committee (or any of its members), or the ABL Lenders relating to the Premier Marketing Group Plan, the Premier Marketing Group Global Settlement, the Estate Claims Credit Bid Transaction, the Plan, or the Plan Settlement. The Documents and Communications responsive to this request include all communications relating to any terms or aspects of those plans, settlements or transactions, as well as all communications reflecting negotiations of those plans, settlements or transactions.[3]

---

[3] To the extent you assert that any responsive Documents and Communications are subject to mediation privilege, your privilege log should demonstrate the basis for such assertion, including information sufficient to show the dates for which such privilege is being claimed.

11

**Request for Production No. 4**

All Documents and Communications exchanged between You and Gerard Uzzi of Uzzi & Lall.

**Request for Production No. 5**

All Documents and Communications relating to "Adverse Conduct" as defined in the Plan, including any and all Communications relating to any assessment or conclusion regarding which persons or entities engaged in "Adverse Conduct."

**Request for Production No. 6**

All Documents and Communications relating to substantive consolidation in connection with the Plan, including any and all Communications relating to any consideration of consolidating any Debtors for particular purposes, and any and all Communications relating to consolidation for purposes of any defenses to preference or other avoidance actions (in connection with the Preference Settlement as defined in the Plan or otherwise).

**Request for Production No. 7**

All Documents and Communications relating to the Preference Settlement as defined in the Plan, including any and all Communications relating to eligibility to participate in the settlement.

**Request for Production No. 8**

All Documents relating to the schedule of Specified Non-Released Parties in the Plan Supplement, including any and all Communications regarding the composition of the schedule and determinations regarding which persons or entities are included in the schedule.

**Request for Production No. 9**

12

All Documents and Communications relating to the Estate Claims Marketing Process, including (i) all diligence materials provided to any potential bidders, prospective bidders, bidders, or other participants, including all Documents in the "data room"; (ii) all indications of interest received from any prospective bidder; (iii) all bids received; (iv) all indications of interest for any Estate Claims being sold; (v) all "teaser" materials or other information used to solicit potential or prospective bidders; (vi) any Documents or Communications provided to the Ad Hoc Group or the participants in the Estate Claims Credit Bid in connection with the Estate Claims; and (vii) any Documents or Communications exchanged with any potential bidder, prospective bidders, or other participants. This Request expressly encompasses any Documents and Communications provided to or exchanged with the Ad Hoc Group or other participants in the Estate Claims Marketing Process that are in any way connected to the Estate Claims Credit Bid Transaction or the Estate Claims..

### Request for Production No. 10

All Documents and Communications relating to the Estate Claims Credit Bid Transaction.

### Request for Production No. 11

All Documents and Communications relating to the "causes of action" and "transactions" referenced by Charles M. Moore as described at Pages 24-25 and 131-132 of the transcript of the Conditional Disclosure Statement Hearing.

### Request for Production No. 12

All Documents and Communications reviewed by or relied upon by Charles M. Moore in connection with reviewing and signing the Plan, the Disclosure Statement, or any declaration submitted in connection therewith, or in connection with providing testimony at the Conditional Disclosure Statement Hearing.

13

**Request for Production No. 13**

All Documents and Communications relating to the Special Committee Investigation (as defined in the Disclosure Statement).

**Request for Production No. 14**

All Documents and Communications relating to, reflecting, or forming the basis for the FBG Debtors' conclusion that "Based on the FBG Debtors' reasonable estimates, the FBG Debtors are estimating that the Effective Date is reasonably likely to occur in the second half of 2028, although the Effective Date may reasonably or in fact occur earlier or later than the second half of 2028." (Disclosure Statement at 27.).

**Request for Production No. 15**

All Communications between You and the Ad Hoc Group (or any of its members) or the DIP Secured Parties (or any of those parties) between September 11, 2025 and September 28, 2025.

**Request for Production No. 16**

All Documents and Communications on which the FBG Debtors intend to rely at the Confirmation Hearing.

**Request for Production No. 17**

All Documents and Communications on which any witness called by the FBG Debtors has relied on or will rely on in connection with any testimony relating to the Confirmation Hearing.

**Request for Production No. 18**

All general ledgers and trial balances created for, or reflecting activity of, Brake Parts Inc., LLC.

14

Respectfully submitted this 23rd day of June, 2026.

By: */s/ Michael Duke*
**ELSBERG BAKER & MARURI PLLC**
    David Elsberg (admitted *pro hac vice*)
    Michael Duke (admitted *pro hac vice*)
    Vivek Tata (admitted *pro hac vice*)
    Garrett Gerber (admitted *pro hac vice*)
    Andrew Parks (admitted *pro hac vice*)
    Ella Epstein (admitted *pro hac vice*)
350 Fifth Avenue, 38th Floor
New York, NY 10118
Telephone:  (212) 597-2600
Email:    delsberg@elsberglaw.com
        mduke@elsberglaw.com
        vtata@elsberglaw.com
        ggerber@elsberglaw.com
        aparks@elsberglaw.com
        eepstein@elsberglaw.com

*Counsel to Evolution*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 23, 2026, he caused a true and correct copy of the foregoing document to be served on counsel to the Debtors via electronic mail.

    */s/ Michael Duke*
Michael Duke

15

**DEBTORS' EXHIBIT NO. 15**
**Page 15 of 15**