**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| FIRST BRANDS GROUP LLC, et al., | ) | Case No. 25-90399 (CML) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

**OBJECTION OF ORBIAN CORPORATION AND ORBIAN FINANCIAL SERVICES
XXVI LLC TO JOINT CHAPTER 11 PLAN OF FIRST BRANDS GROUP LLC AND
CERTAIN AFFILIATED DEBTORS AND TO RELATED DISCLOSURE STATEMENT**

Orbian Corporation and Orbian Financial Services XXVI LLC (collectively, "Orbian") file

this Objection to the Joint Chapter 11 Plan of First Brands Group LLC and Certain Affiliated

Debtors [Docket No. 3019] (the "Plan") and to the related Disclosure Statement [Docket No. 3020]

(the "Disclosure Statement") and state as follows:

**Relevant Background**

1.      Orbian and First Brands Group LLC ("FBG") are parties to an Orbian Global Buyer

Contract dated March 12, 2024 under which Orbian provided supply chain financing by purchasing

accounts receivable owing by FBG and certain affiliated debtors to two vendors.

2.      Debtors identified "Orbian Supply Chain Financing Investors" as a Supply Chain

Financer on Exhibit G to the Litigation Trust Agreement [Docket No. 3046].

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these Chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

3.      The Plan and Disclosure Statement include a "Preference Settlement" that is potentially applicable to Trade Creditors, Supply Chain Financers, and Factors.  Participation in the Preference Settlement is optional, and Supply Chain Financers like Orbian will be required to decide whether or not to opt in to the Preference Settlement by a deadline of 45 days after the Confirmation Date.  *See* Plan § 6.11(b).

4.      Per the Plan's definition of "Preference Settlement Electing Creditor," if a creditor opts in to the Preference Settlement, it must also grant the releases contained in section 13.5(b) of the Plan and contribute all of its Direct Creditor Claims to the Litigation Trust.  If that creditor is later determined to be ineligible for the Preference Settlement, then it will not be a Releasing Party and will retain any claims against the Released Parties.  However, such creditor will not regain ownership or control of its Direct Creditor Claims.

5.      Problematically, the Preference Settlement provisions of the Plan are drafted in such a way as to render the Preference Settlement illusory as it relates to Supply Chain Financers and Factors.

## Objection

6.      Section 1129(a)(3) of the Bankruptcy Code provides that the court shall confirm a plan only if the plan has been proposed in good faith and not by any means forbidden by law.  As set forth below, the Plan has numerous inconsistencies and ambiguities as it relates to the Preference Settlement.  Orbian called these inconsistencies and ambiguities to Debtors' attention and proposed clarifying language, but Debtors have not engaged with Orbian with respect to its requests.  As currently drafted, Debtors' Plan offers a Preference Settlement which potentially provides no benefit to Supply Chain Financers or Factors and is not proposed in good faith.

A.     **Sections 6.11(e)(i) and (iii) of the Plan Regarding Discretionary vs. Mandatory Application of the Modified New Value Elements are Ambiguous**

7.     For a Supply Chain Financer or Factor, the Plan provides that participation in the Preference Settlement <u>may</u> entitle it to application of certain Modified New Value Elements. Namely, if the Modified New Value Elements apply, then new value will include "any subsequent payment made by a Supply Chain Financer or Factor at the request of the FBG Debtors as part of the factoring or supply chain financing arrangement (i.e., it shall include payments to legitimate vendors of the FBG Debtors and payments made at the direction of the FBG Debtors on non-legitimate or 'cover invoices'), without regard to which FBG Debtor entity such payment by a Supply Chain Financer or Factor was made on behalf of, as long as it was made on behalf of a Debtor." *See* Plan § 6.11(e)(i).

8.     However, application of the Modified New Value Elements does not appear to be mandatory. Rather, section 6.11(e)(i) of the Plan provides that if the Litigation Trustee, in his reasonable discretion, prosecutes a Preference Action against a Supply Chain Financer or Factor, and agrees to the application of the Modified New Value Elements, prosecution requires consent of the Litigation Trust Oversight Committee (as a Major Decision).

9.     Similarly, section 6.11(e)(iii) of the Plan provides that if the Litigation Trustee, in his reasonable discretion, prosecutes a Preference Action against a Supply Chain Financer or Factor, and determines not to apply all of the Modified New Value Elements, prosecution requires consent of the Litigation Trust Oversight Committee (as a Sacred Right) and only certain specified modifications to the Modified New Value Elements are permitted.

10.     The language in these sections is ambiguous and appears to leave application of the Modified New Value Elements (versus the decision whether to prosecute a Preference Action in the first place) in the discretion of the Litigation Trustee, subject to requisite consent of the

3

Litigation Trust Oversight Committee.  In any Preference Action against a Supply Chain Financer or Factor, the Modified New Value Elements should apply as mandatory elements governing the calculation of any alleged preference exposure, and should not be subject to the discretion of the Litigation Trustee or to the internal consent rights of the Litigation Trust Oversight Committee. Otherwise, a Supply Chain Financer or Factor that opts in to the Preference Settlement would lose the benefit of its bargain, having contributed all of its Direct Creditor claims to the Litigation Trust without any assurance the Modified New Value Elements will be applied.

11.     The Declaration of Charles M. Moore in Support of Confirmation of FBG Debtors' Chapter 11 Plan [Docket No. 3188] contains the following chart at paragraph 164 purporting to show potential preferential transfers as well as incoming receipts in the 90-day preference window:

| Type / Counterparty | Total Paid - 90 Days (Outgoing) | | Total Receipts - 90 Days (Incoming) | Net Amount Received by Creditor (Outgoing - Incoming) | |
|---|---|---|---|---|---|
| **AR Factoring (ARF) Programs** | | | | | |
| Leucadia | $ | (737,623,204) | $   743,716,023 | $ | (6,092,819) |
| Katsumi | | (321,413,837) | 351,305,464 | | (29,891,628) |
| Evolution | | (46,245,339) | 34,907,578 | | 11,337,761 |
| Subtotal - ARF Programs: | $ | (1,105,282,380) | $   1,129,929,065 | $ | (24,646,685) |
| **Supply Chain Finance (SCF) Programs** | | | | | |
| Raistone Financing Parties | | (188,234,558) | - | | 188,234,558 |
| PrimeRevenue Financing Parties | | (162,743,463) | | | 162,743,463 |
| LiquidX Financing Parties | | (76,981,691) | - | | 76,981,691 |
| Orbian Financing Parties | | (39,997,124) | - | | 39,997,124 |
| Inflows into Bowery | | - | 351,958,296 | | (351,958,296) |
| Subtotal - SCF Programs: | $ | (467,956,836) | $   351,958,296 | $ | 115,998,540 |
| **SPV Lenders** | | | | | |
| CarVal | | (7,450,173) | - | | 7,450,173 |
| Aequum | | (6,447,677) | 2,361,926 | | 4,085,750 |
| Subtotal - SPV Lenders: | $ | (13,897,849) | $   2,361,926 | | 11,535,923 |
| **Other** | | | | | |
| Helios | | (3,920,000) | - | | 3,920,000 |
| BDO Fees (minimum) | | (260,177) | - | | 260,177 |
| Trade Payables | | (196,957,131) | - | | 196,957,131 |
| Subtotal - Trade Payables: | $ | (201,137,308) | $   - | $ | 201,137,308 |
| **TOTAL:** | $ | (1,788,274,373) | $   1,484,249,287 | $ | 304,025,086 |

| Insiders | Total Paid - 1 Year (Outgoing) | |
|---|---|---|
| Patrick James | | (514,700,466) |
| Insiders (Ed James, Andy Brumbergs, etc.) | | (23,083,434) |
| Onset | | (987,417,170) |
| **Total - Insiders:** | $ | (1,525,201,070) |

12. The chart identifies Orbian as having received transfers totaling $39,997,124 in the 90 days preceding the bankruptcy filings. It also purports to show no incoming receipts from Orbian in that time period. That is not accurate. According to Orbian's records, it provided new funding totaling over $38 million at the request of the FBG Debtors in the 90 days preceding the bankruptcy filings. Accordingly, whether the Modified New Value Elements will be applicable if Orbian opts in to the Preference Settlement is of critical importance to Orbian.

**B.     The Plan is Ambiguous and Inconsistent Regarding the Application of Modified New Value Elements to Multiple Debtors**

13. Section 6.2(b) of the Plan states in part that "[t]he consolidation of Causes of Action within the Litigation Trust shall not entitle any defendant, counterparty, or other party against whom a Cause of Action is asserted by the Litigation Trust [e.g. a preference defendant] to assert as a defense… any claim, defense or right arising from or relating to such party's dealings, transactions, or relationships with any FBG Debtor or Preference Settlement Electing Creditor, as applicable, other than the specific FBG Debtor or Preference Settlement Electing Creditor, as applicable, who or whose Estate originally held the Cause of Action being prosecuted." Section 2.2(h) of the Litigation Trust Agreement contains similar language. Section 6.2(c) of the Plan reserves the Litigation Trustee's right to contest any defense in this regard. This language is inconsistent with section 6.11(e) of the Plan because one of the Modified New Value Elements is that new value includes subsequent payments made "without regard to which FBG Debtor such payment by a Supply Chain Financer or Factor was made on behalf of, as long as it was made on behalf of a Debtor."

14. The Plan and Litigation Trust Agreement should provide that, notwithstanding sections 6.2(b) and 6.2(c) of the Plan, as well as section 2.2(h) of the Litigation Trust Agreement, or any similar provision, in any Preference Action against a Supply Chain Financer or Factor, the

Modified New Value Elements shall apply, including with respect to subsequent payments, advances, purchases, funding, or other value provided by or on behalf of a Supply Chain Financer or Factor without regard to which FBG Debtor such payment, advance, purchase, funding, or other value was made on behalf of, as long as it was made on behalf of a Debtor.

**C.    The Definition of Adverse Conduct and Certain Preference Settlement Provisions Should be Modified to Prevent the Preference Settlement from being a Nullity for Supply Chain Financers and Factors**

15.    Next, per section 6.11(a) of the Plan, the Preference Settlement is not applicable to "Specified Non-Released Parties" or to parties who have engaged in "Adverse Conduct." Adverse Conduct is defined in the Plan as follows:

> ***Adverse Conduct*** means (i) engaged in wrongful, actual, or constructively fraudulent conduct against any Debtor or Affiliate of any Debtor, or otherwise participated, conspired with, or acted in concert with, any Person that engaged in wrongful, actual or constructively fraudulent conduct against any Debtors, creditors, or lenders of the Debtors (or Affiliates of Debtors), (ii) received an avoidable transfer on grounds other than section 547 of the Bankruptcy Code from any of the Debtors, or (iii) received a transfer not in good faith.

16.    Although the definition of Adverse Conduct excludes receiving a transfer that is avoidable under section 547 of the Bankruptcy Code (i.e., a preference), it does not exclude receiving a transfer that is avoidable under section 548 (i.e., other avoidable transfers). If it turns out that the invoices that a Supply Chain Financer or Factor purchased were not bona fide, it is possible that payments could be avoided on grounds other than section 547. That construct is inconsistent with the Modified New Value Elements in section 6.11(e)(i) of the Plan - which give new value credit for payments made at the direction of the FBG Debtors on non-legitimate or "cover invoices."

17.    Moreover, the Creditors' Committee has asserted in several recent pleadings that the Debtors operated as a Ponzi scheme. The Debtors' proposed expert, Marc Kirschner, has

6

likewise posited that the Litigation Trustee should pursue fraudulent transfer claims against Factors and Supply Chain Financers under section 548 (not section 547) of the Bankruptcy Code under the Ponzi Scheme Presumption. See Declaration of Marc S. Kirschner [Docket No. 3190] at paragraph 39. If the Ponzi scheme allegations are true, then payments to creditors may be subject to avoidance under section 548, independent of any preference exposure under section 547.

18.     As drafted, the Adverse Conduct definition could permit the Litigation Trustee to nullify the protections afforded to Supply Chain Financers and Factors under section 6.11(c) merely by characterizing the same payments as constructively fraudulent transfers, actual fraudulent transfers, or other non-section 547 avoidance claims. That result would be inconsistent with the purpose of the Modified New Value Elements and would substantially impair the value of the Preference Settlement to Supply Chain Financers and Factors.

19.     The "Adverse Conduct" definition also includes engaging in "wrongful" conduct against any Debtor or affiliate of any Debtor. The term "wrongful" is not defined in the Plan or the Bankruptcy Code and is ambiguous. Orbian has reached out to Debtors' counsel and requested that the Adverse Conduct definition be modified as follows:

> ***Adverse Conduct*** means, in each case as determined by an order of the Bankruptcy Court that has not been stayed and is no longer subject to appeal, rehearing, reargument, or reconsideration, that a Person has: (i) knowingly engaged in ~~wrongful,~~ actual~~, or constructively~~ fraudulent conduct against any Debtor or Affiliate of any Debtor~~, or otherwise participated, conspired with, or acted in concert with, any Person that engaged in wrongful, actual or constructively fraudulent conduct against any Debtors, creditors, or lenders of the Debtors (or Affiliates of Debtors), (ii) received an avoidable transfer on grounds other than section 547 of the Bankruptcy Code from any of the Debtors~~ or (ii) ~~(iii)~~ received a transfer not in good faith within the meaning of section 548(c) of the Bankruptcy Code.

Orbian has also requested that section 6.11 of the Plan be modified as set forth on the attached Exhibit A. A redline comparison of the existing section 6.11 of the Plan to Orbian's suggested revised version is attached as Exhibit B. Without Orbian's requested edits to the definition of

Adverse Conduct and the Preference Settlement provisions, the Preference Settlement appears to be a nullity for Supply Chain Financers and Factors.

20.     Orbian assumes that Debtors do not intend the Preference Settlement to be illusory, but if the Ponzi scheme allegations are true then, as the Plan is currently drafted, all supply chain financing payments would potentially be voidable under section 548 which would place the Supply Chain Financers within the Adverse Conduct definition.  And if the financings should be analyzed under the Ponzi rules, then the avoidance actions should be against "net winners" only absent a lack of good faith under the section 548(c) standard.  Any prepetition payments to a Supply Chain Financer or Factor who is a Preference Settlement Electing Creditor, is not a Specified Non-Released Party and did not engage in Adverse Conduct should be subject to avoidance only under section 547 of the Bankruptcy Code.

**D.     Absent the Requested Modifications to the Plan, the Disclosure Statement Does Not Contain Adequate Information**

21.     Although the Court has conditionally approved the Disclosure Statement, the Disclosure Statement fails to disclose the various infirmities in the Preference Settlement provisions of the Plan, which, as currently drafted, are potentially illusory with respect to Supply Chain Financers and Factors.  This is especially problematic because creditors who opt in to the Preference Settlement, but who are later determined to be ineligible for the Preference Settlement, will have conveyed away their Direct Creditor Claims and will not regain ownership or control of those claims.  The Disclosure Statement thus does not contain adequate information to permit creditors to make an informed judgment about the Preference Settlement and should not be approved on a final basis.

**E.        Correction to Preference Settlement Opt-In Form**

22.        Finally, Orbian received a solicitation package from Debtors that included a Preference Settlement Opt-in Form (the "Form").  The Form includes a sentence providing that "IF YOU OBJECT TO THE PLAN, CONFIRMATION ORDER, ANY RELATED SETTLEMENTS, OR RELIEF SOUGHT IN FURTHERANCE THEREOF, YOU WILL BE BARRED FROM PARTICIPATING IN THE PREFERENCE SETTLEMENT AND ANY ELECTION YOU MAKE IN ITEM 1 BELOW TO OPT IN TO THE PREFERENCE SETTLEMENT WILL NOT BE COUNTED."  That sentence appears to be a vestige of an earlier iteration of the Plan and is not consistent with the Plan that Debtors are currently proposing. Orbian called this mistake to the attention of Debtors' counsel, who confirmed that the inclusion of that sentence in the Form was erroneous and that parties who object to the Plan are not disqualified from participating in the Preference Settlement.   Debtors' counsel also advised that the Form has since been corrected and that sentence removed from the Form.  But the Form that Orbian received still included that sentence and Orbian does not know whether or how many other creditors may have received a Form that erroneously included that sentence, which calls into question the validity of the Plan solicitation process with respect to Trade Creditors, Supply Chain Financers, and Factors.

9

**Conclusion**

For all of the foregoing reasons, final approval of the Disclosure Statement and

confirmation of the Plan should be denied.

Dated: July 20, 2026

/s/ J. Frasher Murphy
J. Frasher Murphy
Texas Bar No. 24013214
David Staab
Texas Bar No. 24093194
**HAYNES AND BOONE, LLP**
2801 North Harwood Street, Suite 2300
Dallas, Texas 75201
Telephone: (214) 651-5246
Facsimile: (214) 200-0629
Email: frasher.murphy@haynesboone.com
Email: david.staab@haynesboone.com

**COUNSEL FOR ORBIAN CORPORATION AND ORBIAN FINANCIAL SERVICES XXVI LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas via electronic mail upon the parties that receive electronic notices in these cases.

/s/ J. Frasher Murphy
J. Frasher Murphy