**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC** | § | **CASE NO. 25-90399 (CML)** |
| *et. al.* | § | |
| | § | **Jointly Administered** |
| | § | |
| **Debtors.** [1] | § | |

**TRUSTEE RONALD J. SOMMERS' (I) OBJECTION TO CHAPTER 11 DEBTORS'**
**JOINT PLAN AND FINAL APPROVAL OF DISCLOSURE STATEMENT;**
**AND (II) JOINDER IN EVOLUTION'S OBJECTION**
[Relates to Dkt. No. 3019, 3265]

Ronald J. Sommers, the Chapter 7 Trustee (the "Trustee") of Debtors Patterson Inventory, LLC, Patterson Inventory Holdings, LLC, Starlight Inventory I, LLC, and Starlight Inventory Holdings I, LLC (collectively, the "Converted SPV Debtors"), hereby submits the following *Objection to Chapter 11 Debtors' Joint Plan and Final Approval of Disclosure Statement; and (II) Joinder in Evolution's Objection* ("Objection"). In support of this Objection, the Trustee respectfully states as follows:

**SUMMARY OF ISSUES**

1.      The Trustee files this Objection setting forth his objections to final approval of the Chapter 11 Debtors' Disclosure Statement (as defined herein) and the Chapter 11 Debtors' Joint Plan on behalf of the Converted SPV Debtors.

2.      To avoid repetition, the Trustee also files this as a joinder in *Evolution's Objection to Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Chapter 11 Docket No. 3265] ("Evolution Objection").

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.

1

3.      Since the Conversion Date, the Chapter 11 Debtors have not fully cooperated with turnover of books and records within their possession, custody, and control that belong to the estates of the Converted SPV Debtors nor have the Chapter 11 Debtors complied with their obligations to produce documents requested in connection with the confirmation hearing on their Joint Plan. There are motions to compel pending before the Court and depositions planned for the week of July 20, 2026.  Accordingly, the Trustee reserves all rights to supplement or amend this Objection as needed prior to the confirmation hearing (currently set to begin on July 29, 2026 at 9:00 a.m. CST).

### RELEVANT BACKGROUND

**A.      Conversion of Patterson and Starlight Cases to Chapter 7**

4.      Beginning on or about September 28, 2025, First Brands Group, LLC and its affiliated debtors (collectively, the "Chapter 11 Debtors") [2] commenced cases under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). By order entered September 29, 2025 [Chapter 11 Docket No. 9] (the "FBG Joint Administration Order"), the Court directed that the Chapter 11 Cases be consolidated for procedural purposes only and jointly administered under Case No. 25-90399 ("FBG Lead Case"). The Converted Debtors were among the jointly administered Chapter 11 Debtors. [3]

5.      By order entered April 9, 2026 [Chapter 11 Docket No. 2396] (the "Conversion Order"), the Court converted the chapter 11 cases of the Converted Debtors to cases under chapter 7 of the Bankruptcy Code, effective as of April 10, 2026 ("Conversion Date"). The Converted Debtors' chapter 7 cases are pending as: Patterson Inventory, LLC (Case No. 25-90392); Patterson

---

[2] "Chapter 11 Debtors" means those debtors in the jointly administered chapter 11 case pending as Case No. 25-90399, *excluding* the Converted SPV Debtors.

[3]  Reference herein to the docket in the Chapter 11 Cases is denoted as follows: [Chapter 11 Docket No. __].

Inventory Holdings, LLC (Case No. 25-90393); Starlight Inventory I, LLC (Case No. 25-90394); and Starlight Inventory Holdings I, LLC (Case No. 25-90395) (together, the "Chapter 7 Cases").[4]

6.      The Trustee was appointed as the chapter 7 trustee for each of the Converted Debtors' in the Chapter 7 Cases.

7.      On June 15, 2026, the Court entered an order directing joint administration of the Converted Debtors' Chapter 7 Cases and severing the Converted Debtors from joint administration under the FBG Joint Administration Order [Chapter 7 Docket No. 47] ("Chapter 7 Joint Administration Order").

**B.      The 341 Meeting and Withdrawal of Counsel**

8.      The Trustee called the Section 341 meeting of creditors on May 20, 2026 but had to continue it to May 21, 2026 due to an emergency hearing requested by the Chapter 11 Debtors at the exact same time as the 341 meeting for the Converted SPV Debtors.

9.      The Trustee called the 341 meeting again on May 21, 2026 but no representative for the Converted SPV Debtors appeared to testify. Weil appeared and indicated that as "former counsel" it was not aware that it needed to present a corporate representative to testify on behalf of the Converted SPV Debtors. The Trustee rescheduled the 341 meeting again.

10.      The Trustee called the 341 meeting of creditors once again on June 4, 2026. Weil Gotschal & Manges LLP ("Weil") appeared with the caveat that it was appearing only as "former counsel" for the Converted SPV Debtors. Daniel Jerneycic of Alvarez & Marsal ("A&M") appeared and testified in his capacity as Chief Restructuring Officer ("CRO") for the Converted SPV Debtors.[5]

---

[4] Reference herein to the docket in the Chapter 7 Cases is denoted as follows: [Chapter 7 Docket No. __].
[5]  Mr. Jerneycic is also CRO for the Chapter 11 Debtors.

11.     Supplemental schedules required to be filed by any debtor upon conversion have never been filed for the Converted SPV Debtors.[6] The Trustee requested additional information from the Converted SPV Debtors at the 341 meeting. The 341 meeting has not concluded. The Trustee has not received all the information requested despite repeated requests and conferences with counsel for the Chapter 11 Debtors and its CRO.[7]

12.     Immediately before the 341 meeting commenced on June 4, 2026, Weil sent correspondence to the Trustee informing him that Weil "closed" the representation and "ended" the attorney client relationship. Weil also informed the Trustee that it considered the Converted SPV Debtors "former clients under the ethics rules."

13.     On the same date, Weil filed its *Motion to Withdraw as Counsel*[8] in each of the Converted SPV Debtors' chapter 7 cases. Prior to the filing, counsel for the Trustee informed Weil that the Trustee would oppose any such request if it resulted in the Converted SPV Debtors being unrepresented by counsel. Weil's *Motion to Withdraw as Counsel* does not propose substitute counsel.

14.     On July 2, 2026, the Court entered an *Order Granting Motion to Withdraw as Counsel* [Chapter 7 Docket No. 53] ("Withdrawal Order") authorizing Weil's withdrawal as counsel for the Converted SPV Debtors retroactively to April 10, 2026 (*i.e.,* the Conversion Date).

---

[6] The document styled as *Patterson and Starlight Debtors' Final Report* ("Final Report") [Chapter 7 Docket No. 35] does not comply with the requirements for supplemental conversion schedules and lacks all the information needed by the Trustee for administration of the estates of the Converted SPV Debtors.

[7] On July 15, 2026, the Trustee filed his *Emergency Motion to Compel Turnover of Estate Property, Books, and Records* [Chapter 7 Docket No. 65] ("Emergency Motion to Compel Turnover"), which is pending and has not yet been set for a hearing.

[8] *In re Patterson Inventory, LLC* [Chapter 7 Docket No. 36]; *see also In re Patterson Inventory Holdings, LLC* [Case No. 25-90393, Docket No. 36]; *In re Starlight Inventory I, LLC* [Case No. 25-90394, Docket No. 34]; *In re Starlight Inventory Holdings I, LLC*[Case No. 25-90395, Docket No. 36].

15.     The day after filing his *Emergency Motion to Compel Turnover* of records that are property of the Converted SPV Debtors, the Trustee appealed the Withdrawal Order.[9]  That appeal is pending.  Weil continues to represent the Chapter 11 Debtors in their Chapter 11 Case.

**C.      Chapter 11 Debtors' Joint Plan and Disclosure Statement**

16.     On June 12, 2026, the Court entered an order conditionally approved the Chapter 11 Debtors' disclosure statement and setting deadlines in connection with a final hearing to approve the disclosure statement and for confirmation of the proposed joint plan [Chapter 11 Docket No. 2990]("Conditional Disclosure Statement Approval Order").

17.     On June 15, 2026, the Chapter 11 Debtors filed their *Notice of (I) Conditional Approval of Disclosure Statement (II) Approval of (A) Solicitation and Voting Procedures, (B) Administrative Expense Claims Consent Program Opt-In Procedures, (C) Preference Settlement Opt-In Procedures, (III) Combined Hearing to Consider Final Approval of Disclosure Statement and Confirmation of Plan, and (IV) Establishing Notice and Objection Procedures for Final Approval of Disclosure Statement and Confirmation of Plan* [Chapter 11 Docket No. 3004] ("Notice of Conditional Approval/Plan Deadlines").

18.     On June 16, the Chapter 11 Debtors filed the solicitation version of the Joint Plan [Chapter 11 Docket No. 3019] ("Joint Plan").

19.     On June 16, the Chapter 11 Debtors filed the solicitation version of the Disclosure Statement [Chapter 11 Docket No. 3020] ("Disclosure Statement").

20.     On June 23, 2026, the Chapter 11 Debtors filed the *Notice of (I) Filing Plan Supplement; and (II) Liquidation Analysis* [Chapter 11 Docket No. 3046] ("Plan Supplement").

---

[9] *See Trustee's Notice of Appeal* [Chapter 7 Docket No. 71] ("Notice of Appeal").

21.     On July 14, 2026, the Chapter 11 Debtors filed the *Declaration of Charles M. Moore in Support of Confirmation of FBG Debtors' Chapter 11 Plan* [Chapter 11 Docket No. 3188] ("Moore Declaration").

22.     Also on July 14, 2026, the Chapter 11 Debtors filed the *Declaration of Marc S. Kirschner* [Chapter 11 Docket No. 3190] ("Kirschner Declaration"), purporting to offer expert opinions regarding the Chapter 11 Debtors' Plan.

**OBJECTIONS**

23.     Transfer of Assets Pending Final Determination.  The Disclosure Statement states:

> "Disputed assets of the Debtors, including the SPV Debtors, will not be transferred to any Trust prior to a Court determination or consensual resolution regarding the ownership of such assets, and all rights are reserved with respect to any disputes regarding ownership of assets between the FBG Debtors and the SPV Debtors, including disputes as to ownership of Inventory and certain Claims and Causes of Action."

[Chapter 11 Docket No. 3020, pg. 14].

24.     The Joint Plan and Disclosure Statement do not define "disputed asset." The Joint Plan describes assets of the various trusts ("Trusts") formed under the Joint Plan as assets that are not subject to a "bona fide dispute."  The Joint Plan describes a "bona fide dispute" as a dispute *only* between the Trusts. The Joint Plan and Disclosure Statement do not exclude from "trust assets" those assets that are subject to a  bona fide dispute with the Converted SPV Debtors.

25.     Moreover, the Joint Plan and Disclosure Statement propose to resolve any such "bona fide disputes" over what constitutes a "trust asset" between the Trusts either by the mutual consent of the DIP Secured Parties, the ABL Secured Parties, and/or the Litigation Trust or by the Bankruptcy Court.  The Joint Plan states that upon entry of a Final Order or mutual agreement resolving any such dispute, the previously disputed asset will automatically vest in the Litigation Trust, DIP Collateral Trust, or ABL Collateral Trust, as applicable. Until any such bona fide

dispute is resolved, the Joint Plan proposes that FBG Debtors hold such assets pending an adjudication or settlement.

26. The Converted SPV Debtors' rights with respect to any asset in which it claims an ownership interest cannot be resolved without its involvement and cannot be transferred to the Trusts without its consent or a final order adjudicating the issues of ownership in favor of someone other than the Converted SPV Debtors. The Trustee objects to the Joint Plan to the extent that the Chapter 11 Debtors or any other parties are attempting, through the Joint Plan, to exercise control over property of any of the Converted SPV Debtors' estates.

27. <u>Right to Prosecute Claims Owned by SPV Debtors.</u>  The Joint Plan states that the Litigation Trust will be vested with the Litigation Trust Assets on the Confirmation Date. The Disclosure Statement explains that Litigation Trust Assets will include all Estate Claims and certain related assets of the FBG Debtors [Chapter 11 Docket No. 3020, pg. 19-20].[10]  Based on the definition of "Estate Claims" in the Disclosure Statement, it appears to include claims that were, could have been, or could be asserted by the Converted SPV Debtors. The Trustee objects to any provision of the Joint Plan, including this one, that attempts to exercise control of property of the Converted SPV Estates.

28. The Disclosure Statement says that: "The FBG Debtors (or the Litigation Trust) will have no rights to prosecute any claims owned by the SPV Debtors absent their consent or order of the Bankruptcy Court." [Chapter 11 Docket No. 3020, pg. 14].  This assumes a scenario where there is consent or express authorization to prosecute the claims of Converted SPV Debtors. The Joint Plan must also *clearly* provide that the neither the Chapter 11 Debtors nor the Litigation Trust are authorized by the Joint Plan to prosecute claims of the Converted SPV Debtors without

---

[10] The term "Estate Claims" is expansively defined in the Disclosure Statement on pages 19-20 in footnote 4.

their consent or without further order of the Bankruptcy Court. The Trustee objects to the Joint Plan to the extent that it allows the Chapter 11 Debtors to exercise control over property of estates of the Converted SPV Debtors.

29.     <u>D&O Policies and Insurance Proceeds.</u>  As noted above, if assets subject to a dispute between the FBG Debtors and SPV Debtors are not supposed to be transferred to any Trust pending a final court determination on the dispute, D&O policies and the rights to proceeds thereunder should also not be transferred. The Disclosure Statement acknowledges that the "allocation dispute" between FBG Debtors and SPV Debtors remains to be decided.

30.     The Plan attempts to skirt the freeze on transfer of disputed assets to the Litigation Trust by attempting to preserve "the ability of any beneficiaries or insureds of such D&O Policies to submit claims and otherwise pursue and obtain coverage under the D&O Policies." But that does not change the fact that the transfer of the policies and rights to proceeds to the Litigation Trust violates the freeze on the transfer of disputed assets to Trusts.

31.     The Trustee objects to the list of Litigation Trust Assets in the Plan Supplement Exhibit F because it purports to transfer "Policies that provide or may provide coverage for the Estate Claims, including for the avoidance of doubt, the rights to the proceeds of the D&O Policies," without any limitation to just those "rights and obligations of the FBG Debtors, if any, under the D&O Policies" as described in section 11.4(d) of the Plan. To the extent that the Plan Supplement Exhibit F attempts to modify the Joint Plan in this regard, the Trustee objects.

32.     The Trustee objects to any provision in the Joint Plan that exercises control over any Insurance Policies and/or proceeds of any Insurance Policies in which the Converted SPV Debtors have rights. Such assets should not be transferred until the Court has resolved any dispute over ownership or the parties' respective rights in such assets.

33.     <u>Books and Records</u>. As noted above, assets subject to a dispute between the FBG Debtors and SPV Debtors are not supposed to be transferred to any Trust pending a final court determination on the dispute, the commingled books and records of the FBG Debtors and SPV Debtors should, therefore, not be transferred.

34.     The Joint Plan proposes to transfer of "[a]ll books, records, and investigative and/or discovery findings of the FBG Debtors, including to the extent such records are owned or controlled by advisors to the FBG Debtors, any independent director or manager of the FBG Debtors, the Examiner and the advisors thereto (subject to a mutual agreement on cooperation/transfer), and the advisors to the Creditors' Committee." This violates the Joint Plan's freeze on the transfer of disputed assets to Trusts.

35.     Finally, the Trustee objects to the limitation to the legal and ethical obligations of estate professionals, independent directors or managers, the Examiner, or creditor committee advisors to turn over debtor materials. That limitation is buried in the list of Litigation Trust Assets found in the Plan Supplement, Exhibit F, which says:

> "***provided*** that (a) the FBG Debtors' Professionals, (b) any independent director or manager of the FBG Debtors, (c) the Examiner and the advisors thereto (subject to a mutual agreement on cooperation/transfer), and (d) the Creditors' Committee's Professionals shall not be required to turnover all work product and communications but each such professional, in its sole discretion, may compile (in a digest or other appropriate format) its material findings, information, and records and provide the Litigation Trust with such compilation and/or enter into common interest or other agreements sufficient to facilitate the turnover of work product or communications."

36.     There is no basis to limit the legal and ethical obligations of any party to turn over materials to the Trustee for the Converted SPV Debtors. Likewise, there is no basis to allow those parties with such legal and ethical obligations to be vested with "sole discretion" to determine what constitutes proper turnover.

37.     The Trustee objects to the transfer of any books and records to the Litigation Trust without first turning over all books and records of the Converted SPV Debtors and/or permitting the Trustee an absolute right to access to any books and records of the Converted SPV Debtors in the possession of the Litigation Trust. The Litigation Trust must have an obligation to turnover any books and records of the Converted SPV Debtors to the Trustee upon request.

38.     Common Defendant Allocation.  The Disclosure Statement says: "[I]n cases where both an FBG Debtor and one or more SPV Debtors assert claims against a common defendant, including the James Adversary Proceeding and Onset Adversary Proceeding, the Plan and Confirmation Order make no determination regarding proper allocation and all rights regarding any allocation dispute will be preserved." [Chapter 11 Docket No. 3020, pg. 14].

39.     To the extent this language is read to only preserve allocation disputes for claims filed against a common defendant by the Chapter 11 Debtors and one or more Converted SPV Debtors within a single proceeding, like the James Adversary Proceeding or the Onset Adversary Proceeding, the Trustee objects to the limited preservation. The Chapter 11 Debtors have delayed in responding to the Trustee's proposed intervention in the Onset Adversary Proceeding. At minimum, the Chapter 11 Debtors should not be permitted to circumvent the Joint Plan's preservation of the allocation dispute by frustrating the Trustee's ability to assert the Converted SPV Debtors' claims in that proceeding.

40.     Injunction, Release, Exculpation, and Retention of Causes of Action. The provisions of the Joint Plan addressing injunctions, releases, exculpations, and retention of causes of action, including but not limited to those found in Section 13.4, 13.5, 13.6 and 13.10, are drafted so broadly that they appear to destroy the rights of Converted SPV Debtors while preserving the rights of the Chapter 11 Debtors (and parties aligned with them). The Trustee objects to any

provision of the Plan that attempts to exercise control over property of the Converted SPV Debtors' estates.

## CONCLUSION

41. For the reasons set forth herein, the Trustee respectfully requests that the Court deny confirmation of the Chapter 11 Debtors' Joint Plan under 11 U.S.C. §1191 and deny final approval of the Disclosure Statement under 11 U.S.C. §1125.

Dated: July 20, 2026.

Respectfully submitted,

**JONES MURRAY LLP**

By: /s/ *Erin E. Jones*
Erin Jones
Tex. Bar No. 24032478
602 Sawyer St. Suite 400
Houston, TX 77007
Main Phone: 832-529-1999
Direct Phone: 713-515-4806
Fax: 832-529-3393
E-mail: erin@jonesmurray.com

**GENERAL BANKRUPTCY COUNSEL FOR
RONALD J. SOMMERS, CHAPTER 7
TRUSTEE FOR CONVERTED SPV DEBTORS**

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 20, 2026, a true and correct copy of the foregoing Notice was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

/s/ *Erin E. Jones*

11