**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| FIRST BRANDS GROUP, *et al.*, | : Case No. 25-90399 (CML) |
| | : |
| Debtors.[1] | : (Jointly Administered) |
| | : |
| | : |

**EMERGENCY MOTION OF PATRICK JAMES AND THE RELATED ENTITIES
TO EXCLUDE PORTIONS OF DECLARATION OF CHARLES M. MOORE [DKT.
3188] AND ENTIRE DECLARATION OF MARC S. KIRSCHNER [DKT. 3190]**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.  The James Defendants request emergency relief not later than July 28, 2026.**

**Represented parties should act through their attorney.**

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands (collectively, the affiliated debtors and debtors in possession are referred to herein as "**First Brands**" or the "**Debtors**" or the "**Company**").  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ...........................................................................................1

II.     ARGUMENT ...................................................................................................................5

        A.     STAY ORDERS PRECLUDE DEBTORS FROM PROSECUTING MERITS OF CLAIMS UNDER GUISE OF CONFIRMATION PRESENTATION ......................................5

        B.     DECLARANTS IMPERMISSIBLY TESTIFY REGARDING INFORMATION ABOUT WHICH THEY HAVE NO PERSONAL KNOWLEDGE .......................................................7

        C.     DECLARATIONS ARE HEARSAY AND RELY ON HEARSAY TO DRAW THEIR CONCLUSIONS ..........................................................................................................10

        D.     DECLARATIONS IMPERMISSIBLY TESTIFY AS TO LEGAL CONCLUSIONS .................12

BASIS FOR EMERGENCY CONSIDERATION ........................................................................14

RELIEF REQUESTED .........................................................................................................15

i

**TABLE OF AUTHORITIES**

**Page**

**Cases**

Addison v. Louisiana Reg'l Landfill Co.,
 2024 WL 4018034 (E.D. La. Aug. 5, 2024) ...............................................................................13

California v. Green,
 399 U.S. 149 (1970)......................................................................................................................11

Flat River Farms, LLC v. MRC Energy Co.,
 2024 WL 3488079 (W.D. La. July 19, 2024) ...............................................................................7

Flowers v. Sessions,
 2019 WL 1560462 (S.D. Miss. Apr. 10, 2019)............................................................................12

Green v. CBS Broad., Inc.,
 2000 WL 33243748 (N.D. Tex. Dec. 19, 2000) ..........................................................................12

Estate of Sowell v. U.S.,
 198 F.3d 169 (5th Cir. 1999) .......................................................................................................12

Specht v. Jensen,
 853 F.2d 805 (10th Cir. 1988) .....................................................................................................13

United States v. Bilzerian,
 926 F.2d 1285 (2d Cir. 1991).......................................................................................................10

United States v. Carrillo-Morones,
 564 F. Supp. 2d 707 (W.D. Tex. 2008)..........................................................................................9

United States v. Dotson,
 821 F.2d 1034 (5th Cir. 1987) .....................................................................................................11

United States v. Scop,
 846 F.2d 135 (2d Cir. 1988).........................................................................................................13

United States v. Strother,
 2023 WL 7399550 (5th Cir. Nov. 8, 2023)..................................................................................12

Vance v. N. Panola Sch. Dist.,
 189 F.3d 470 (5th Cir. 1999) .......................................................................................................12

## **Rules**

Fed. R. Bankr. P. 9017 ................................................................................................................10

Fed. R. Civ. P. 26 .......................................................................................................................10

Fed. R. Evid. 602 ......................................................................................................................4, 7

Fed. R. Evid. 701 ...................................................................................................................7, 9, 12

Fed. R. Evid. 702 .........................................................................................................................9

Fed. R. Evid. 801 ......................................................................................................................10

Fed. R. Evid. 803 ......................................................................................................................11

Fed. R. Evid. 804 ......................................................................................................................11

Fed. R. Evid. 805 ......................................................................................................................11

Local Rule 9013-1......................................................................................................................14

Local Rule 9013-2......................................................................................................................10

Patrick James, and The Patrick James Trust, Albion Realty, LLC, Alester Technologies LLC, Battery Park Holdings LLC, Larchmont LLC, and Pegasus Aviation, LLC (collectively, the "**Related Entities**," and together with Mr. James, the "**James Defendants**"), by and through their undersigned counsel, file this emergency motion in advance of the confirmation hearing scheduled for July 28, 2026 [Dkt. 2990] (the "**Confirmation Hearing**") to exclude certain portions (paragraphs 58-162) of the Declaration of Charles M. Moore [Dkt. 3188] (the "**Moore Declaration**") and the Declaration of Marc S. Kirschner [Dkt. 3190] (the "**Kirschner Declaration**"), and to request that Messrs. Moore and Kirschner should not be permitted to testify regarding certain subject matters, and respectfully state as follows:

## I.      PRELIMINARY STATEMENT

1.      At the Government's and Debtors' request, the Court entered several Stay Orders halting the Adversary Proceeding[2] and specifically the Debtors' prosecution of claims against the James Defendants and any discovery, including from the Debtors, third-parties, and percipient witnesses like Mr. Brumbergs and Mr. Graham.  The Moore and Kirschner Declarations do not comport with the Stay Orders because they press forward with prosecuting the claims against the James Defendants in the Adversary Proceeding in the name of trying to get the Plan confirmed. The Debtors propose that at the Confirmation Hearing, the Court rely on the Declarations to find that the claims asserted in the Adversary Proceeding are valid and will produce sufficient value to fund distributions to DIP financing and administrative expense claims.  But the Declarations should not be included in the evidentiary record in connection with the confirmation hearing, and

---

2      First Brands Group, LLC, et al., v. Patrick James, et al. (In re First Brands Group, et al.), Adv. Proc. No. 25-03803 (CML) (Bankr. S.D. Tex.) ("**Adversary Proceeding**" or "**Adv. Proc.**").  See Order Granting Emergency Motion to Amend Case Schedule, Adv. Proc. [Dkt. 160]; Stay Order, Adv. Proc. [Dkt. 181]; May 8, 2026 Order, Adv. Proc. [Dkt. 191]; Order Granting Case Deadline Clarification, Adv. Proc. [Dkt. 195] (collectively, the "**Stay Orders**").

the declarants should not be permitted to testify regarding issues that are the subject matter of the stayed Adversary Proceeding.  Otherwise, incurable prejudice awaits the James Defendants in both the subsequent Adversary Proceeding and criminal trial.

2.      Ever since the Debtors filed the Adversary Proceeding on November 3, 2025, the James Defendants have been eager to defend themselves against the Debtors' allegations.  On November 26, 2025, the parties stipulated the lawsuit would span six (6) to seven (7) months, and the case was scheduled to go to trial in mid-June 2026.[3]  On January 28, 2026, shortly after the Government lodged its indictment, the Debtors moved to stay discovery, claiming that "First Brands is experiencing an acute liquidity crisis that impacts the overall chapter 11 proceedings."[4]  The Court granted the Debtors' motion and stayed the case for 60 days.[5]  Subsequently, the Debtors supported the Government's motion to intervene and stay the Adversary Proceeding,[6] which the Court granted,[7] and more recently, the Debtors asked the Court to clarify that motion deadlines, as well as discovery, have been stayed,[8] which the Court confirmed.[9]  The Debtors have argued that "all case deadlines—including the response deadlines for . . . motions" should be stayed "until after the resolution of the parallel criminal action"[10] because "a criminal conviction would meaningfully narrow the issues for trial in this case, conserving the resources of the Debtors and this Court."[11]  The stay was further extended at the status conference in the Adversary Proceeding on July 20, 2026.

---

[3]     Joint Statement Regarding Scheduling Proposals and Discovery ¶ 5, Adv. Proc. [Dkt. 97].

[4]     Emergency Motion to Amend Case Schedule ¶ 5, Adv. Proc. [Dkt. 152].

[5]     Order Granting Emergency Motion to Amend Case Schedule, Adv. Proc. [Dkt. 160].

[6]     Government's Motion to Stay at 26, Adv. Proc. [Dkt. 167].

[7]     Stay Order, Adv. Proc. [Dkt. 181].

[8]     Emergency Motion for Clarification of Case Deadlines ¶ 7, Adv. Proc. [Dkt. 187].

[9]     Order Granting Case Deadline Clarification, Adv. Proc. [Dkt. 195].

[10]    Emergency Motion for Clarification of Case Deadlines ¶ 7, Adv. Proc. [Dkt. 187].

[11]    Status Update Regarding the Patrick James Criminal Case ¶ 7, Adv. Proc. [Dkt. 203].

3.      In support of their chapter 11 Plan, the Debtors filed on July 14, 2026 the 112-page Moore Declaration, which devotes its largest section (¶¶ 58-162) to testifying about "the facts uncovered since the filing of these Chapter 11 cases" by Mr. Moore's team from A&M "in coordination with the FBG Debtors' other professionals and advisors"—i.e., Debtors' lawyers.[12] The Moore Declaration recounts the findings of "an extensive, months-long, factual review and analysis of the FBG Debtors' books and records, financial data, electronic records, and prepetition transactions and events."[13]   Mr. Moore purports to summarize communications, financial statements, and other documents his team claims to have reviewed, but he does not attach a single exhibit to his Declaration.[14]

4.      The Debtors also introduce Marc S. Kirschner as a supposed expert with "extensive experience in analyzing claims and causes of action for parties in bankruptcy" as a "bankruptcy/reorganization lawyer, chapter 11 and litigation trustee, financial advisor, investment professional, and fiduciary."[15]  His Declaration purports to assess the merits and perceived value of the Debtors' claims against the James Defendants based entirely on the Moore Declaration's one-sided summary of purported "facts" and Mr. Kirschner's views about supposedly applicable legal doctrines.  Neither Declaration should be considered in connection with confirmation of the Plan.

5.      *First*, the Debtors' efforts to adjudicate the merits and perceived value of the Debtors' claims run directly into the Stay Orders.  The Stay Orders prevent the Debtors and the James Defendants from prosecuting and defending against the claims, respectively.   Any

---

[12]    Moore Declaration ¶ 58.

[13]    Id.

[14]    See, e.g., id. ¶¶ 71, 72, 118, 141.

[15]    Application of FBG Debtors for Entry of an Order Authorizing the Retention of Marc S. Kirschner as Expert Consultant and Expert Witness ¶¶ 13-14 [Dkt. 3192].

consideration of the Declarations is highly prejudicial to the James Defendants, particularly when the Debtors prepared those Declarations with the benefit of a stay, and free from the James Defendants' ability to use time and the Federal Rules of Civil Procedure in the Adversary Proceeding to take discovery of the Debtors and third parties like Mr. Brumbergs and Mr. Graham to test, challenge, and rebut the Debtors' assertions. Procedurally, the Debtors now want to litigate in the truncated confirmation process over a two-week period disputes over the merits of claims the parties agreed previously would span six (6) to seven (7) months. That rush will only disenfranchise the James Defendants. At this point, the only appropriate time and place for a court to evaluate those claims is in the Adversary Proceeding after the defendants have been given ample opportunity to fully develop the record. Until then, the Debtors should be precluded from prosecuting the claims and asking the Court to make findings about their supposed validity and value.

6. ***Second***, the Moore and Kirschner Declarations improperly include testimony about issues as to which the declarants have no personal knowledge, in violation of Federal Rule of Evidence 602. To the extent the Debtors are putting forth Messrs. Moore and Kirschner as expert (and not lay) witnesses, numerous other issues arise, including that the Debtors have not complied with their expert disclosure requirements, which require any expert witnesses to disclose and produce numerous items, including all documents and communications they considered in forming their opinions.

7. ***Third***, the Declarations are inadmissible under the Federal Rules of Evidence as they themselves are hearsay (and rely upon hearsay).

8. ***Finally***, the Declarations intrude upon the province of this Court by impermissibly offering legal conclusions.

4

## II.      ARGUMENT

**A.      STAY ORDERS PRECLUDE DEBTORS FROM PROSECUTING MERITS OF CLAIMS UNDER GUISE OF CONFIRMATION PRESENTATION**

9.      After first agreeing to a trial date for the Adversary Proceeding for early June—a date that has now come and gone—the Debtors have repeatedly advocated for a complete stay of that litigation.[16]  While the Debtors first moved to stay the case ostensibly because they could not afford to prosecute the case, the United States Government—who also joined the Debtors' motion—sought to prevent Patrick James from obtaining discovery in the Adversary Proceeding ahead of the ongoing criminal proceedings against Patrick James in the Southern District of New York.[17]  The James Defendants—who steadfastly maintain their innocence and dispute all claims against them—opposed the stays.[18]

10.      The Court entered the first Stay Order on February 4, 2026 and stayed all discovery and deadlines for sixty (60) days.[19]  On April 17, 2026, the Court entered a second order staying "all discovery in this case, pending the resolution of the parallel criminal case, United States v. Patrick James & Edward James, 26 Cr. 29 (AT) (S.D.N.Y.)."[20]  The Court cited "the reasons set forth" in the Government's motion,[21] which included that continuing to litigate would expose "an early preview of the Government's evidence" and that the defendants should be afforded the opportunity "to fully participate in civil discovery after the criminal case concludes, when Fifth Amendment concerns no longer exist."[22]  Two clarifying orders followed on May 8, 2026 and May

---

[16]    See Emergency Motion to Amend Case Schedule, Adv. Proc. [Dkt. 152]; Emergency Motion for Clarification of Case Deadlines, Adv. Proc. [Dkt. 187]; Status Update Regarding the Patrick James Criminal Case, Adv. Proc. [Dkt. 203].

[17]    Government Motion to Stay, Adv. Proc. [Dkt. 167].

[18]    Opposition to the United States of America's Motion to Intervene and Stay Discovery, Adv. Proc. [Dkt. 169].

[19]    Order Granting Emergency Motion to Amend Case Schedule, Adv. Proc. [Dkt. 160].

[20]    Stay Order, Adv. Proc. [Dkt. 181].

[21]    Id. at 2.

[22]    Government Stay Motion at 7, 15, Adv. Proc. [Dkt. 167].

29, 2026, stating "all case deadlines, including deadlines to respond to pending motions to dismiss . . . have been held in abeyance pending the issuance of a scheduling order."[23]

11.     The Debtors' end run attempt to litigate the merits and value of their claims against the James Defendants through confirmation, including through submission of the Moore and Kirschner Declarations, violates the Stay Orders. The Moore Declaration purports to marshal and summarize—albeit in a self-serving manner—"facts" presumably gathered over the last several months while the stay was in place. But Mr. Moore only provides a one-sided recitation of the facts, without even a nod to an objective presentation of the factual record.

12.     Had the Adversary Proceeding continued without the Government's interference, the James Defendants would have developed a full record from the Debtors, from their prior management, including Mr. Brumbergs and Mr. Graham, and from third parties. None of this happened.

13.     The absence of discovery from those third parties precludes the Moore and Kirschner Declarations from having any probative value. Both were created with license to spin the declarants' preferred narratives with no competing evidence adduced on the timeline contemplated in the Adversary Proceeding initially. And if the Debtors had tried to support the Declarations with real evidence, they would have further violated the Stay Orders and particularly the Government's concern about these third parties being the subject of discovery—a concern the Debtors acceded to months ago.

14.     Consideration of the Declarations deprives Mr. James and the other defendants of the opportunity to "fully participate in civil discovery after the criminal case concludes, when Fifth

---

[23]    May 8, 2026 Order, Adv. Proc. [Dkt. 191]; Order Granting Case Deadline Clarification, Adv. Proc. [Dkt. 195].

Amendment concerns no longer exist."[24]  Thus, the Declarations violate both the letter and the spirit of the Stay Orders, and in the process, they prejudice the James Defendants by allowing the claims against them to be litigated in a slanted and rushed fashion through confirmation.

**B.      DECLARANTS IMPERMISSIBLY TESTIFY REGARDING INFORMATION ABOUT WHICH THEY HAVE NO PERSONAL KNOWLEDGE**

15.      A witness may "testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.  To have personal knowledge about a subject, a witness must have been a first-hand percipient witness to the issues he is seeking to testify to; he may not testify to information learned through the review of documents or by speaking to witnesses.  Flat River Farms, LLC v. MRC Energy Co., 2024 WL 3488079, at *2 (W.D. La. July 19, 2024) ("His perceptions are not based on his personal experience with the instant matter or his personal knowledge of this matter, i.e., what he heard or saw.  Rather, his knowledge was gleaned from his later review of documents.  His analysis of data and the creation of the comprehensive spreadsheet does not equate to personal knowledge as required by Rules 602 and 701.  Rambo has no firsthand knowledge of the facts of this case, is not a proper lay witness, and his testimony would be impermissible expert opinion.").

16.      Both of the Declarations contain testimony regarding matters to which the declarants have no personal knowledge.  For example, Mr. Moore testifies:

- Patrick James was "fabricating financial statements to misrepresent the FBG Debtors' dire financial condition"; "fabricating accounts receivable to obtain cash from third party factoring": and "fabricating supplier and vendor payables to obtain cash from supply chain financing."[25]

---

[24]     Government Stay Motion at 15, Adv. Proc. [Dkt. 167].
[25]     Moore Declaration ¶ 59.

- "FBG Debtors' former management manipulated the Company's financial records according to a top-down process[,]" including by dictating "false manual adjustments to the Company's financials."[26]

- "Debtors' former management improperly commingled the funds of the FBG Debtors and certain affiliates in order to conceal their financial misconduct[.]"[27]

- "Debtors' operating businesses were losing money, could not pay all their obligations when due, and had liabilities far in excess of their assets for years preceding the Petition Date" and that "FBG Debtors' true earnings were a fraction of what was reported[.]"[28]

- "[I]n addition to underreporting liabilities, prior management overreported assets on the FBG Debtors' historical financial statements."[29]

- "[V]ast majority of amounts transferred from and paid to factoring parties was on account of falsified invoices."[30]

- "Debtors' former management systematically created, and received payments on account of, billions of dollars of fake invoices, using either Excel schedules of fake supplier invoices or fake 'cover' invoices" and "100% of the transfers to Bowery made pursuant to an SCF program were made on account of fake invoices."[31]

- "[C]ash proceeds from the transactions contemplated by the SPV Facilities would not have been and were not sufficient to perform under the SPV Facilities, and that the SPV Entities had effectively no capitalization or other legitimate means to uphold their obligations to the SPV Lenders under the SPV Facilities[.]"[32]

- "[E]ntities lacked sufficient surplus, net profits, or distributable capital to lawfully authorize dividends or distributions under applicable law, and the transfers rendered or contributed to the transferor's insolvency[.]"[33]

17.    It is undisputed that Mr. Moore was not a percipient witness to any of the foregoing statements as Mr. Moore had no association with the Company when he alleges the purported fraud

---

[26]    Id. ¶ 71.

[27]    Id. ¶ 31.

[28]    Id. ¶ 75.

[29]    Id. ¶ 78.

[30]    Id. ¶ 82.

[31]    Id. ¶ 97.

[32]    Id. ¶ 105.

[33]    Id. ¶ 143.

happened.  Nor did Mr. Moore review documents and or conduct analyses himself.  Instead, his testimony admittedly is based on knowledge he obtained from documents his (anonymous) team reviewed and analysis they conducted.[34]

18.     Nor is Mr. Moore's testimony permissible lay opinion testimony under Federal Rule of Evidence 701.[35]  Mr. Moore did not himself perceive any of the underlying "facts." Accordingly, his "opinions" are exactly the type that a lay witness is not permitted to submit to a Court.  United States v. Carrillo-Morones, 564 F. Supp. 2d 707, 711 (W.D. Tex. 2008) (finding that an investigator's testimony "rendering an opinion formed as a result of facts and circumstances about which [the investigator] lacks personal knowledge constitutes expert testimony under Rule 702" and is not permitted under Federal Rule of Evidence 701).

19.     Mr. Kirschner's Declaration is equally inadmissible.  Like Mr. Moore, Mr. Kirschner was not a percipient witness to any of the facts included in his Declaration.  But instead of reviewing documents on his own, or having his team review evidence, Mr. Kirschner primarily relies on the Moore Declaration to make factual and legal conclusions.[36]  In other words, Mr. Kirschner's Declaration is four layers removed from any actual admissible evidence.

20.     Finally, to escape the restrictions that lay witnesses can only testify about their personal knowledge and to opinions about issues they perceived, the Debtors may attempt to re-deploy the declarants as expert witnesses under Federal Rule of Evidence 702.  This too would be impermissible, however, as the Debtors have not complied with the local rules which require

---

[34]   Id. ¶ 58.

[35]   See Fed. R. Evid. 701 (lay witness "testimony in the form of an opinion is limited to one that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.").

[36]   See Kirschner Declaration nn.18-90, 92-113, 116-25, 137-41 143-47, 150-55, 158-62 175-91, 195 (all citing the Moore Declaration).

expert reports to be produced in contested matters.[37]  Mr. Moore does not provide a list of "facts

or data [he] considered" in forming his opinions.  Fed. R. Civ. P. 26(a)(2)(B)(ii).  And while Mr.

Kirschner does prepare a purported list of "materials considered," many of the documents are not

publicly accessible and are not specified by bates number.  And the Debtors have not made them

available.[38]

**C. DECLARATIONS ARE HEARSAY AND RELY ON HEARSAY TO DRAW THEIR CONCLUSIONS**

21.    Both the Kirschner and Moore Declarations should be excluded because they are

inadmissible hearsay:  They are out-of-court statements being offered for the truth of the matters

asserted therein.  Fed. R. Evid. 801 (defining hearsay as a "statement that . . . (1) the declarant does

not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove

the truth of the matter asserted in the statement."); Fed. R. Bankr. P. 9017 (applying the Federal

Rules of Evidence to bankruptcy cases).

22.    The Moore Declaration contains out-of-court statements offered for the truth that

the James Defendants were running a fraudulent "scheme."  The Kirschner Declaration has out-

of-court statements offered for the truth that, among other allegations, the Debtors' claims are

---

[37]   See United States Bankruptcy Court For The Southern District Of Texas, Bankruptcy Local Rules, Local Rule 9013-2(g) ("If counsel has identified expert witnesses on the witness list, then counsel must ensure that the written reports of the expert witnesses are timely provided to opposing counsel.").  Federal Rule of Civil Procedure 26 also requires expert reports to including disclosures such as (1) "a complete statement of all opinions the witness will express and the basis and reasons for them"; (2) "the facts or data considered by the witness in forming them"; and (3) "any exhibits that will be used to summarize or support them."  Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii).

[38]   Kirschner Declaration Ex. B.  To the extent the Debtors ultimately do produce all of the materials considered by Messrs. Kirschner and Moore, the James Defendants reserve the right to request that the Debtors produce their communications with their legal counsel due to waiver of privilege and understand this issue is before the Court in connection with certain parties' motions to compel.  The Declarations rely heavily on privileged communications with counsel, see e.g., Moore Declaration ¶¶ 169, 229, and Mr. Moore touts his collaboration with Weil Gotshal, noting "the assistance of [Debtors'] . . . legal advisors," id. ¶ 192. The Kirschner Declaration also attests that Mr. Kirschner has learned about the claims he purports to independently value through "engag[ing] with the FBG Debtors and their advisors."  Kirschner Declaration ¶ 19.  Accordingly, the Declarations have put communications with counsel at issue, and "the attorney-client privilege cannot at once be used as a shield and a sword."  United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991).

10

meritorious and valuable.  Since no hearsay exception applies, both Declarations are inadmissible hearsay.  See Fed. R. Evid. 803 (listing exceptions to hearsay, none of which apply); Fed. R. Evid. 804 (defining exceptions to hearsay rule based on declarant unavailability).

23.     Compounding the issue, both Declarations repeatedly rely on hearsay and accordingly do not aid in the "discovery of truth."  United States v. Dotson, 821 F.2d 1034, 1035 (5th Cir. 1987) ("[T]he mere fact that one level of a multiple-level statement qualifies as 'non-hearsay' does not excuse the other levels from rule 805's mandate that each level satisfy an exception to the hearsay rule for the statement to be admissible."); California v. Green, 399 U.S. 149, 158 (1970) (excluding hearsay "(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; (3) permits the jury . . . to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.").

24.     As just one example, to support the claim that "James directed . . . transfers to be made," Mr. Moore claims "Andy Brumbergs told a member of the finance team that James 'wants the entire Q2 amount paid today.'"[39]  Brumbergs' assertion about "James" is hearsay, as is the unidentified witness's claim that Brumbergs then relayed the quoted statement.  Such an attenuated presentation of "facts" filtered through multiple narrators not subject to cross-examination has zero probative value.

25.     The Moore Declaration also cites to numerous unspecified documents, including general ledgers, "documents setting target financial outcomes for the Company," nomination files

---

[39]     Moore Declaration ¶ 146.

11

of factored invoices, and First Brands internal communications[40]—all of which are hearsay and none of which have been made available for the reader to independently verify and contextualize. And both Declarations plainly base their opinions on information provided through discussions with the Debtors' legal counsel, Weil, Gotshal & Manges LLP.[41]

26.     Even if the Court does not find the Declarations to be hearsay in their entirety, any portion of the Declarations that references out-of-court statements should be excluded from consideration at the Confirmation Hearing.  See Vance v. N. Panola Sch. Dist., 189 F.3d 470, at *1 (5th Cir. 1999) (affidavit that "contains hearsay and speculation by [the declarant] and several other people" is not admissible); Flowers v. Sessions, 2019 WL 1560462, at *3 (S.D. Miss. Apr. 10, 2019) ("Court will not admit 'hearsay and speculation' masquerading as adequately supported lay opinion testimony" where "affidavits from several purported lay witnesses . . . do not demonstrate that the witnesses' conclusions were rationally based on their own first-hand observations").

### D.     DECLARATIONS IMPERMISSIBLY TESTIFY AS TO LEGAL CONCLUSIONS

27.     Finally, each of the Declarations contains testimony which impermissibly recites legal conclusions.  It is black letter law that neither lay nor expert witnesses can opine on legal issues.  See, e.g., United States v. Strother, 2023 WL 7399550, at *4 (5th Cir. Nov. 8, 2023) ("Lay witnesses are generally not allowed to give legal opinions [under Fed. R. Evid. 701.]"); Green v. CBS Broad., Inc., 2000 WL 33243748, at *4 (N.D. Tex. Dec. 19, 2000) ("The United States Court of Appeals for the Fifth Circuit has repeatedly held that legal opinions are not a proper subject of expert testimony."); Estate of Sowell v. U.S., 198 F.3d 169, 171-72 (5th Cir. 1999) (forbidding

---

[40]   See, e.g., id. ¶¶ 71, 72, 81, 82, 118, 141.

[41]   Kirschner Declaration ¶ 19 ("I have engaged with the FBG Debtors and their advisors to better understand the FBG Debtors' Estate Claims."); Moore Declaration ¶ 58 ("I, along with my team at A&M, *in coordination with the FBG Debtors' other professionals and advisors*, have uncovered significant facts . . . .") (emphasis added).

expert testimony on whether a fiduciary was "acting reasonably"); Addison v. Louisiana Reg'l Landfill Co., 2024 WL 4018034, at *4 (E.D. La. Aug. 5, 2024) ("[E]xpert testimony that offers a legal opinion is inadmissible."); Specht v. Jensen, 853 F.2d 805, 807 (10th Cir. 1988) ("[I]t is axiomatic that the judge is the sole arbiter of the law and its applicability[.]").

28.     The Moore Declaration is littered with legal conclusions regarding Patrick James. For example, Mr. Moore repeatedly testifies that Patrick James engaged in "fraud."[42]   But the question of whether someone committed fraud is ultimately a legal question.  See, e.g., United States v. Scop, 846 F.2d 135, 140 (2d Cir. 1988) (striking expert witness who testified that a defendant engaged in "fraud").  Mr. Moore also purports to interpret credit agreements to argue that Mr. James was not permitted to take certain dividends and tax distributions from First Brands.[43]  This is also a legal conclusion as to which Mr. Moore should not be permitted to testify.

29.     The Kirschner Declaration contains nothing but legal conclusions.  For example, Mr. Kirschner concludes that (1) "there is a significant amount of support for concluding that Patrick James frequently engaged in widespread prepetition fraud";[44] (2) "sufficient facts exist to

---

[42]   See, e.g., Moore Declaration ¶ 80 ("Our investigation found that the Debtors' prepetition third-party factoring practices, specifically, were substantially based on *fraudulent* invoices") (emphasis added); ¶ 82 (identifying "fraudulent amount" of funds "transferred from and paid to factoring parties") (emphasis added); ¶ 106 ("Accordingly, funds from the SPV Lenders were recycled to service preexisting creditors, rather than to purchase and sell inventory as part of the SPV structure—a hallmark of a circular, self-sustaining *fraudulent* financing scheme.") (emphasis added).

[43]   See, e.g., Moore Declaration ¶ 141 ("[T]he A&M team found no ordinary-course documentation indicating that the payments constituted legitimate dividends, tax distributions, or payments for services."); ¶ 143 ("Under the First Brands Group Holdings, LLC Agreement and the Company's first-lien, second-lien, and ABL credit agreements, First Brands was restricted from making distributions other than permitted tax distributions. . . . Accordingly, my team estimates that James received an overpayment of approximately $209 million to $236 million on account of tax distributions alone, a portion of which had been reclassified in the general ledger from restricted equity distributions to tax distributions."); ¶ 144 ("Moreover, my team and I confirmed that, to the extent tax distributions may have been permitted in any amount under the Credit Agreements and the FBGH LLC Agreement, such tax distributions are allowed to reimburse members (which all ultimately flowed up to Patrick James) for tax payments on their share of allocated income. Here, where the allocated income was manufactured as part of the Scheme, no tax distributions would be permitted to the extent the Company was actually in a net taxable loss position.")

[44]   Kirschner Declaration ¶ 88.

support causes of action that establish Patrick James misappropriated hundreds of millions of dollars of FBG Debtor funds to enrich himself and his family";[45] (3) "SPV Debtors engaged in several prepetition fraudulent transfers of FBG Debtor property to Patrick James";[46] (4) "the trustee will have myriad avenues to recovery: through the federal turnover statute (11 U.S.C. § 542), money had and received, unjust enrichment, constructive trust, and illegal dividend and unlawful distribution statutes";[47] (5) "Patrick James, Edward James, Michael Baker, Andy Brumbergs, and Stephen Graham all consciously and recklessly subordinated FBG's interests to secure fraudulent financing and divert company funds for Patrick James' personal use";[48] and (6) "a litigation trustee will be able to meet its burden of establishing that through each of the Suspect Acquisitions, the FBG Debtors received less than reasonably equivalent value."[49]   These conclusions are all bare legal assertions and are not permitted under the applicable case law.

## BASIS FOR EMERGENCY CONSIDERATION

30.      Pursuant to Bankruptcy Local Rule 9013-1(i), the James Defendants request that this Motion be considered on an emergency basis.  The Confirmation Hearing is set for July 28, 2026.  Absent emergency consideration, the James Defendants will face both procedural and substantive prejudice, including the risk of admission of improper and inadmissible evidence in support of the Plan.  Immediate consideration is necessary to ensure compliance with the Federal Rules of Evidence and to avoid compromising this Court's ability to fairly and accurately evaluate the merits of the Plan.  Accordingly, the James Defendants respectfully request that the Court grant this Motion on an expedited basis.

---

[45]    Id. ¶ 89.

[46]    Id. ¶ 92.

[47]    Id. ¶ 107.

[48]    Id. ¶ 113.

[49]    Id. ¶ 128.

14

**RELIEF REQUESTED**

31.     For the reasons set forth above, the James Defendants respectfully request that the Court enter an order (a) granting this Motion; (b) excluding the Moore Declaration—particularly paragraphs 58-163; (c) excluding the Kirschner Declaration in its entirety; (d) excluding from evidence at the Confirmation Hearing any testimony, whether live or via Declaration, to the extent such testimony contravenes the Stay Order in the Adversary Proceeding, pertains to matters of which the witness has no personal knowledge, relies on hearsay and/or undisclosed attorney advice, provides legal opinion testimony, or provides any expert opinion testimony without proper disclosures; (e) to the extent the Court permits Messrs. Kirschner and Moore to testify as expert witnesses, require Messrs. Kirschner and Moore to comply with expert disclosure requirements, including making available all documents considered by them in forming their opinions, including communications with legal counsel given the privilege waiver; and (f) granting such other and further relief as the Court deems just and proper.

Date: July 20, 2026
    Houston, Texas

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

*/s/ Cameron M. Kelly*

Cameron M. Kelly
TX SBN: 24120936
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: (713) 221-7000
cameronkelly@quinnemanuel.com

James C. Tecce*
Anil Makhijani*
Grace Sullivan*
295 5th Avenue
New York, NY  10016
Telephone: (212) 849-7000

-and-

**DEBEVOISE & PLIMPTON LLP**
Erica S. Weisgerber*
Matthew J. Sorensen*
Emily Morgan*
66 Hudson Boulevard
New York, NY  10001
Telephone: (212) 909-6000
eweisgerber@debevoise.com
mjsorensen@debevoise.com
elmorgan@debevoise.com
*admitted *pro hac vice*

*Attorneys for the James Defendants*

16

## CERTIFICATE OF SERVICE

I, Cameron Kelly, hereby certify that a copy of the foregoing Motion was filed on the 20th of July, 2026, with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

/s/ Cameron M. Kelly
Cameron M. Kelly

17