**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**MOTION OF DEBTORS FOR AN ORDER
FURTHER EXTENDING EXCLUSIVE PERIODS
PURSUANT TO SECTION 1121(D) OF THE BANKRUPTCY CODE**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED.  IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, "**First Brands**"),[2] respectfully represent as follows:

**Preliminary Statement**[3]

1.      Following extensive, good-faith negotiations among the Debtors' key stakeholders, including the Ad Hoc Group, the ABL Lenders, and the Creditors' Committee, the

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]    For the avoidance of doubt, the Debtors seeking relief pursuant to this Motion exclude the Carnaby Debtors (as defined herein).

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms elsewhere in the Motion or in the Plan, the Disclosure Statement, or the DIP Order (as defined in the Plan), as applicable.

Debtors have filed the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 2907) (as amended, supplemented, or otherwise modified from time to time, the "**Joint Plan**") and the related *Disclosure Statement for the Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 2912) (the "**Disclosure Statement**").  The Court has conditionally approved the Disclosure Statement and authorized solicitation of acceptances of the Joint Plan (Docket No. 2990).  Solicitation is now underway, and a combined hearing to consider final approval of the Disclosure Statement and confirmation of the Joint Plan is scheduled for July 28, 2026 (the "**Combined Hearing**").  Accordingly, out of an abundance of caution, the Debtors seek a modest 60-day extension of the Exclusive Periods to complete prosecution of the Joint Plan.[4]

2.      The Joint Plan represents the culmination of substantial efforts to bring a timely and value-maximizing conclusion to these complex chapter 11 cases.  As a precautionary measure only, the Debtors now seek only a short, additional extension of the Exclusive Periods to prosecute the Joint Plan through confirmation.

3.      Beyond negotiating and filing the Joint Plan and Disclosure Statement, the Debtors have continued to make meaningful progress in advancing these chapter 11 cases since filing the Second Exclusivity Motion, including by, among other things:

(i)      negotiating and finalizing an agreed confirmation budget with the Ad Hoc Group and the ABL Lenders;

(ii)     drafting and filing the Plan Supplement and Liquidation Analysis (Docket No. 3046);

---

[4]   For the avoidance of doubt, the requested extension of the Exclusive Periods does not apply to (i) Carnaby Inventory IV, LLC; (ii) Carnaby Inventory Holdings IV, LLC; (iii) Carnaby Capital Holdings, LLC; (iv) Carnaby Capital, LLC; (v) Carnaby FA, LLC; (vi) Carnaby FA Holdings, LLC; and (vii) Eagle Casting Holdings, LLC (collectively, the "**Carnaby Debtors**").

(iii)    defeating the *United States Trustee's Motion to Convert or Dismiss Pursuant to 11 U.S.C. § 1112(b)* (Docket No. 2670) (the "**Conversion Motion**");

(iv)    negotiating and consummating the going-concern sale of the Debtors' Toledo Molding & Die business line (Docket No. 2675);

(v)    negotiating and consummating the going-concern sale of the Debtors' Horizon North America business line and related settlement (Docket Nos. 2800 & 2799); and

(vi)    negotiating and consummating numerous sales of other assets pursuant to the Wind Down Order.

4.    In short, the Debtors have used the Exclusive Periods productively and have advanced these chapter 11 cases to the threshold of confirmation.

5.    Notwithstanding the Debtors' significant progress since filing the Second Exclusivity Motion, additional work remains, including obtaining confirmation of the Joint Plan. In light of the substantial progress made in these chapter 11 cases and the support of the Ad Hoc Group, ABL Lenders, and Creditors' Committee for the Joint Plan, the Debtors submit that ample cause exists for the requested extension of the Exclusive Periods. As such, a further extension of the Debtors' Exclusive Periods is appropriate and necessary.

6.    Accordingly, for the reasons set forth herein, the Debtors' request for a short, further 60-day extension of the Exclusive Periods should be granted.

## **Relief Requested**

7.    By this Motion, pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors request entry of an order further extending the periods during which the Debtors (other than the Carnaby Debtors) have the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") and to solicit acceptances thereof (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period,

the "**Exclusive Periods**"), in each case through and including September 21, 2026[5] and November 20, 2026, respectively, without prejudice to the Debtors' right to request further extensions of such periods in accordance with section 1121(d) of the Bankruptcy Code. The Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on July 21, 2026 and September 21, 2026, respectively.[6]

8.    A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

### Background

9.    In September 2025, First Brands Group, LLC and its affiliated Debtors each commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[7] No trustee has been appointed in these chapter 11 cases.

---

[5]    The 60th day following the expiration of the Exclusive Filing Period (as extended) would be Saturday, September 19, 2026. However, Bankruptcy Rule 9006(a)(1)(C) provides that when a period is stated in days, "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Bankr. P. 9006(a)(1)(C).

[6]    The Exclusive Filing Period is currently set to expire on July 21, 2026, and the Exclusive Solicitation Period is currently set to expire on September 21, 2026, pursuant to the Second Exclusivity Order (as defined herein). Rule K.30 of the *Procedures for Complex Cases in the Southern District of Texas* provides that "if a motion is filed that complies with these procedures to extend the time to take any action before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules, or a confirmed plan, the time for taking the action is automatically extended until the Court rules on the motion." By filing this Motion prior to the expiration of the Exclusive Periods, such deadlines are automatically extended until the Court resolves the Motion.

[7]    On April 9, 2026, the Court entered an order converting the chapter 11 cases of (i) Patterson Inventory, LLC, (ii) Patterson Inventory Holdings, LLC, (iii) Starlight Inventory I, LLC, and (iv) Starlight Inventory Holdings I, LLC (collectively, the "**Converted Debtors**"), to cases under chapter 7 of the Bankruptcy Code (Docket No. 2396). For purposes of this Motion and the Proposed Order, the term "Debtors" excludes the Converted Debtors.

10.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

11.     On October 9, 2025, the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (Docket No. 313) (the "**Creditors' Committee**").

12.     Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (Docket No. 22), filed on September 29, 2025 and incorporated herein by reference.

13.     On January 22, 2026, the Debtors filed the *Motion of the Debtors for Order Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (Docket No. 1674) (the "**First Exclusivity Motion**").  On February 17, 2026, the Court entered an order (Docket No. 1939) granting the First Exclusivity Motion and extending the Exclusive Filing Period through and including April 22, 2026 and the Exclusive Solicitation Period through and including June 22, 2026, without prejudice to the Debtors' rights to seek further extensions of such periods.

14.     On April 22, 2026, the Debtors filed the *Motion of Debtors for an Order Further Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (Docket No. 2522) (the "**Second Exclusivity Motion**"), seeking to extend the Exclusive Filing Period through and including July 21, 2026 and the Exclusive Solicitation Period through and including September 21, 2026.  On May 19, 2026, Onset Financial, Inc. filed *Onset Financial,*

*Inc.'s Opposition to Motion of Debtors for an Order Further Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (Docket No. 2714) (the "**Onset Objection**"), objecting to the extensions of the Exclusive Periods solely with respect to the Carnaby Debtors.[8] The Debtors resolved the Onset Objection by revising the proposed order granting the Second Exclusivity Motion (the "**Revised Proposed Exclusivity Order**") to exclude the Carnaby Debtors from the relief granted and terminating the Exclusive Periods with respect to the Carnaby Debtors. On July 20, 2026, the Court entered the Revised Proposed Exclusivity Order (Docket No. 3266) granting the Second Exclusivity Motion and extending for the Debtors (other than the Carnaby Debtors) the Exclusive Filing Period through and including July 21, 2026 and the Exclusive Solicitation Period through and including September 21, 2026, without prejudice to the Debtors' rights to seek further extensions of such periods (the "**Second Exclusivity Order**").[9]

## Jurisdiction and Venue

15.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested Should be Granted

16.    Section 1121(b) of the Bankruptcy Code establishes an initial 120-day period following commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan.  Additionally, section 1121(c) of the Bankruptcy Code provides that if a

---

[8]   "**Carnaby Debtors**" means, collectively, (i) Carnaby Inventory IV, LLC; (ii) Carnaby Inventory Holdings IV, LLC; (iii) Carnaby Capital Holdings, LLC; (iv) Carnaby Capital, LLC; (v) Carnaby FA, LLC; (vi) Carnaby FA Holdings, LLC; and (vii) Eagle Casting Holdings, LLC.

[9]   For the avoidance of doubt, the Exclusive Periods for each of the Carnaby Debtors were terminated pursuant to the Second Exclusivity Order.

6

debtor files a plan within the 120-day exclusive filing period, it has an exclusive period of 180 days after the commencement of the chapter 11 case to obtain acceptance of its plan.

17.     Under section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause.  11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").

18.     The Bankruptcy Code neither defines the term "cause" nor establishes formal criteria for an extension.  The legislative history of section 1121 of the Bankruptcy Code indicates, however, that "cause" is intended to be a flexible standard to balance the competing interests of a debtor and its creditors.  *See* H.R. Rep. No. 95–595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest); *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) ("[A]ny bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the legislative goal behind § 1121."); *In re Mirant Corp.*, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization.").

19.     The broad discretion conferred on the Court in these circumstances enables the Court to consider a variety of factors to assess the totality of circumstances in each case.  *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying factors courts consider in determining whether to extend exclusivity); *In re Washington St. Tammany Elec.*

*Co-op., Inc.*, 97 B.R. 852, 854 (E.D. La. 1989) (noting that the decision to extend exclusivity "rests with the discretion of the Court"); *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643–44 (B.A.P. 8th Cir. 2003) (same); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (same).

20.     Courts in this district have considered the *Adelphia* factors when determining whether cause exists to extend exclusivity.  *See, e.g.*, *In re New Millennium Mgmt., LLC*, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (evaluating the factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity).  These non-exclusive factors include:

(i)      the size and complexity of a debtor's case;

(ii)     the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(iii)    the existence of good faith progress towards reorganization;

(iv)    the fact that the debtor is paying its bills as they become due;

(v)     whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(vi)    whether the debtor has made progress in negotiations with its creditors;

(vii)   whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(viii)  whether an unresolved contingency exists.

*See, e.g.*, *Millennium Mgmt.*, 2014 WL 792115, at *6; *see also Adelphia*, 352 B.R. at 587 (noting that the factors listed above are "objective factors which courts historically have considered in making determinations of this character").

21.     Not all factors are relevant to every case, and courts may consider a subset of the above factors in determining whether cause exists to grant an exclusivity extension in a particular chapter 11 case.     *See In re Hoffinger Indus., Inc.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."); *In re Serv. Merch. Co., Inc.*, 256 B.R. 744, 751–54 (Bankr. M.D. Tenn. 2000) (finding cause to extend where the debtors established six of the aforementioned factors); *In re Express One Int'l, Inc.*, 194 B.R. 98, 101 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" existed to extend exclusivity); *see also In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward.  And that is a practical call that can override a mere toting up of the factors.").

22.     Moreover, courts in this district routinely grant extensions of exclusivity to allow debtors to solicit, confirm, and implement chapter 11 plans. *See, e.g.*, *In re Everstream Sol'ns LLC*, Case No. 25-90144 (CML) (Bankr. S.D. Tex. Feb. 17, 2026) (Docket No. 737) (granting exclusivity extension of 90 days after plan had been filed); *In re Steward Health Care System LLC*, Case No. 24-90213 (CML) (Bankr. S.D. Tex. July 17, 2025) (Docket No. 5710) (granting exclusivity extension of more than 130 days after plan had been filed); *In re Core Scientific, Inc.*, Case No. 22-90341 (CML) (Bankr. S.D. Tex. November 9, 2023) (Docket No. 1396) (granting exclusivity extension of 60 days after plan had been filed); *In re Talen Energy Supply, LLC*, Case No. 22-90054 (MI) (Bankr. S.D. Tex. Jan. 13, 2023) (Docket No. 1820) (granting exclusivity extension of more than 190 days after plan had been filed).

**Cause Exists to Extend Exclusive Periods**

23.     A further extension of the Exclusive Periods is necessary and appropriate, in the best interest of the Debtors' stakeholders, and consistent with the intent and purpose of chapter 11 of the Bankruptcy Code.  The requested extension will enable the Debtors to complete solicitation of the Joint Plan and prosecute the Joint Plan through confirmation for the benefit of all stakeholders, without the risk of competing plans and the attendant disruption, expense, and delay.  Accordingly, application of the relevant *Adelphia* factors to the facts of these chapter 11 cases demonstrates that ample cause exists to grant the reasonable extension of the Exclusive Periods requested herein.

### A.     The Debtors Have Made Substantial Progress Toward Confirmation of the Plan and Significant Progress in these Chapter 11 Cases

24.     In considering an extension of a debtor's exclusive periods, courts often assess a debtor's progress in its chapter 11 case, including in liquidating chapter 11 cases.  The Debtors' significant progress warrants an extension of the Exclusive Periods.

#### i.     The Debtors Negotiated and Filed the Joint Plan and Obtained Conditional Approval of the Disclosure Statement

25.     Since filing the Second Exclusivity Motion, the Debtors' primary focus has been on formulating, filing, soliciting, and obtaining confirmation of a chapter 11 plan that will maximize the value of the Debtors' remaining assets.  On June 5, 2026, the Debtors filed the Joint Plan and Disclosure Statement.  At a subsequent hearing, the Debtors defeated various objections to conditional approval of the Disclosure Statement as well as the U.S. Trustee's Conversion Motion.  The Debtors completed soliciting acceptances on the Joint Plan on July 20, 2026 and are now preparing for the Combined Hearing scheduled for July 28, 2026.

26.     The Joint Plan was filed after months of intense negotiations and mediation among various key stakeholders, and the Debtors firmly believe the Joint Plan maximizes the value

10

of the estates and is the best outcome achievable in these highly complex and challenging chapter 11 cases.  The Joint Plan will ensure the Estate Claims are adequately funded and pursued to maximize recoveries for creditors, including junior creditors.  At this critical juncture in the chapter 11 cases, it is imperative that the Debtors' Exclusive Periods are extended.  The Court should not permit the extraordinary efforts of the Debtors and their major economic stakeholders in formulating and reaching a consensus on the Joint Plan to be subverted by a competing plan or plans before giving the Debtors a reasonable opportunity to confirm and consummate the Plan.

#### ii.       The Debtors Have Consummated Multiple Sales

27.     In addition, the Debtors have consummated additional going-concern sales that preserved jobs and generated value for the estates.  On May 15, 2026, the Debtors consummated the going-concern sale of their Toledo Molding & Die business line to an affiliate of JVIS USA (Docket No. 2675), which resulted in approximately $80 million of proceeds and anticipated saving at least 600 jobs.  On May 29, 2026, the Debtors consummated the going-concern sale of their Horizon North America business line and a related settlement (Docket Nos. 2800 & 2799), which resulted in approximately $64 million of proceeds and anticipated making offers to a significant number of the approximately 1,000 Horizon North America employees.  Finally, the Debtors also consummated a series of wind-down sales of remaining inventory and other assets pursuant to the Wind Down Order, resulting in approximately $44 million in gross proceeds.

#### iii.      The Debtors Have Made Substantial Other Progress in Administering Their Estates

28.     The Debtors have taken numerous other critical steps to advance these chapter 11 cases and maximize value for all stakeholders since filing the Second Exclusivity Motion, including:

- negotiating and finalizing an agreed confirmation budget funded by the Debtors' key stakeholders;

- drafting and filing the Plan Supplement, including the various trust agreements and related documents integral to implementation of the Joint Plan, such as the Litigation Trust Agreement, the DIP Collateral Trust Agreement, and the ABL Collateral Trust Agreement;

- seeking appointment of a committee of retired employees and commencing good-faith negotiations with the committee as well as the Debtors' unions regarding the modification of the Debtors' retiree benefit arrangements under section 1114 of the Bankruptcy Code, and in connection with such negotiations, filing the *Emergency Motion of Debtors for Order (I) Authorizing Debtors to Modify Retiree Benefits and (II) Granting Related Relief* (Docket No. 3194);

- consummating a settlement in connection with the sale of the Debtors' Horizon North America business line to resolve issues relating to asset entanglement and intercompany balances with certain of the Debtors' non-Debtor subsidiaries based in Europe and Australia;

- defending the adversary proceeding filed by Evolution concerning the Debtors' non-factored receivables (Adv. Proc. No. 26-03006), including obtaining a ruling granting the Debtors partial summary judgment (Docket No. 67), finding that Evolution does not hold a perfected security interest in the non-factored receivables, and opposing Evolution's motion for leave to appeal (Adv. Proc. Docket No. 81);

- negotiating stipulations with various landlords providing for extensions of time to assume or reject nonresidential real property leases to allow for additional time to liquidate estate assets;

- negotiating and filing several stipulations providing for the abandonment of certain goods and materials burdensome to the Debtors' estates;

- rejecting undesired or burdensome contracts and leases to limit administration costs, and facilitating the assumption and assignment of certain contracts and leases to purchasers;

- negotiating and entering into twelve (12) stipulations providing for the allowance of administrative expense claims, thereby avoiding the cost attendant to litigating motions to compel payment of such claims;

- facilitating the wind down of the OEM Funding Arrangement in accordance with the OEM Funding Order, including by reconciling and truing up unused funding and collecting diminution payments from the applicable OEMs; and

12

- coordinating de minimis asset sales with Hilco.

29.     In light of the substantial progress made in these chapter 11 cases, on this basis alone, the requested extension of the Exclusive Periods is warranted.  *See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 588 (Bankr. S.D.N.Y. 2006) (viewing the good faith progress factor "as one of the more important factors" in the analysis).  Under these circumstances, the requested extensions of the Exclusive Periods are necessary and appropriate to afford the Debtors the full and fair opportunity to achieve the objectives of chapter 11 as contemplated by section 1121 of the Bankruptcy Code.

### B.     These Chapter 11 Cases Are Large and Complex

30.     The size and complexity of the Debtors' businesses and the complexity of these chapter 11 cases also support an extension of the Exclusive Periods.  *See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

31.     These chapter 11 cases undoubtedly meet this standard.  The Debtors are comprised of 112 entities whose prepetition businesses included a global network of manufacturing and distribution centers that spanned 5 continents and employed 26,000 individuals globally.  The Debtors' capital structure is complex—at the time of filing, the Debtors collectively had more than $11 billion of prepetition obligations, including approximately $6 billion in funded debt obligations, at least $2.3 billion in factoring liabilities, at least $2.3 billion in "off-balance sheet" financing liabilities incurred through SPVs, and approximately $900 million in unsecured supply chain financing liabilities.  The sheer scope of the Debtors' operations and capital structure required the Debtors to raise $1.1 billion of DIP financing at the beginning of these cases to fund the chapter 11 process.

32.     As detailed in the recently filed declarations in support of confirmation of the Joint Plan (Docket Nos. 3188 & 3190), these cases have been further complicated by the prepetition conduct of the Debtors' former management team, who engaged in a yearslong fraudulent scheme involving, among other things, the manipulation of financial statements, double pledging of collateral, sale of fabricated accounts receivable, fraudulent transfers to insiders, and the use of inadequately capitalized special purpose vehicles to raise billions of dollars of debt to perpetuate the fraudulent scheme.  In January 2026, two of the Debtors' former executives, including their founder and former CEO Patrick James and his brother Edward James, were indicted by the United States Department of Justice and charged with crimes in connection with their management of First Brands.[10]  The indictment of Patrick James charges him with managing a continuing financial crimes enterprise.  Additional former executives of the Debtors, including the Debtors' former CFO and the Debtors' former VP of Finance, have pleaded guilty in connection with the indictments.

33.     In short, these chapter 11 cases are indisputably of the size and complexity that Congress and courts have recognized warrant extensions of the Exclusive Periods as requested.

**C.     An Extension of the Exclusive Periods Will Not Prejudice Creditors**

34.     This is the Debtors' third request to extend the Exclusive Periods.  The request comes ten (10) months into these chapter 11 cases, which is eight (8) months less than the maximum amount of time prescribed by the Bankruptcy Code for the Exclusive Filing Period and

---

[10]     *See* First Brands Executives Charged with Multibillion-Dollar Fraud, available at https://www.justice.gov/usao-sdny/pr/first-brands-executives-charged-multibillion-dollar-fraud.

ten (10) months less than the maximum amount of time prescribed by the Bankruptcy Code for the Exclusive Solicitation Period.

35.     An extension of the Exclusive Periods will not prejudice any of the Debtors' stakeholders.  On the contrary, a short extension will enable the Debtors to move forward with confirmation of the Joint Plan supported by key stakeholder groups without the distraction and expense of competing plans.  The Joint Plan is supported by the Ad Hoc Group, the ABL Lenders, and the Creditors' Committee, and the Debtors' relationship with their key economic stakeholders has been transparent, cooperative, and constructive throughout these chapter 11 cases.  The Debtors have held numerous meetings and negotiation sessions with these creditor constituencies to discuss virtually every issue in these cases, including DIP financing, the sale process, and case resolution, among other discrete issues.  The request for extending the Exclusive Periods is not a negotiation tactic, but rather reflects that the Debtors require a short additional period to prosecute the Joint Plan through confirmation.  Indeed, the request is a precautionary measure, sought out of an abundance of caution given the imminence of the Combined Hearing.

36.     Accordingly, for the reasons set forth herein, the Debtors submit that "cause" exists to further extend the Exclusive Periods and respectfully request that the Court grant the relief requested herein.  To terminate exclusivity now and allow for a competing plan process at this juncture in these chapter 11 cases would jeopardize or otherwise undermine the Debtors' efforts to date and adversely impact their ability to achieve confirmation of a chapter 11 plan.  Thus, the Debtors believe that an extension of the Exclusive Periods is in the best interest of the Debtors and their creditors.

## **Notice**

37.     Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## **Prior Requests**

38.     Except for the First Exclusivity Motion and the Second Exclusivity Motion, no previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 21, 2026
      Houston, Texas

*/s/  Clifford W. Carlson*

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:  gabriel.morgan@weil.com
      clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  matt.barr@weil.com
      sunny.singh@weil.com
      andriana.georgallas@weil.com
      kevin.bostel@weil.com
      jason.george@weil.com

*Attorneys for Debtors and Debtors in Possession*

17

**<u>Certificate of Service</u>**

I hereby certify that on July 21, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


*/s/  Clifford W. Carlson*
Clifford W. Carlson