**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

<u>**AFFIDAVIT OF SUPPLEMENTAL SERVICE OF SOLICITATION MATERIALS**</u>

I, Alex Orchowski, depose and say that:

1.     I am a Director of Restructuring Administration at Kroll Restructuring Administration LLC ("***Kroll***"), the claims, noticing, and solicitation agent for the Debtors in the above-captioned cases.  At my direction and under my supervision, employees of Kroll caused the following materials to be served:

a.  the Notice of (I) Conditional Approval of Disclosure Statement (II) Approval of (A) Solicitation and Voting Procedures, (B) Administrative Expense Claims Consent Program Opt-In Procedures, (C) Preference Settlement Opt-In Procedures, (III) Combined Hearing to Consider Final Approval of Disclosure Statement and Confirmation of Plan, and (IV) Establishing Notice and Objection Procedures for Final Approval of Disclosure Statement and Confirmation of Plan including a QR code to access the following: (i) Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors [Docket No. 3020] (the "***Disclosure Statement***") with all exhibits thereto, including, among others the Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors [Docket No. 3019] (the "***Plan***") and (ii) Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan, (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing, (III) Establishing Solicitation and Voting Procedures, (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt-In Procedures, (V) Establishing Preference Settlement Notice and Opt-In Procedures, (VI) Establishing Notice and Objection Procedures for Confirmation of Plan, and (VII) Granting Related Relief [Docket No. 2990] without annexes and exhibits (the

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

"*Disclosure Statement Order*"), a copy of which is attached hereto as **Exhibit A** (the "*Combined Hearing Notice*");

b.   the Recommendation of the Official Committee of Unsecured Creditors to Holders of Class 7 General Unsecured Claims Under the Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors, a copy of which is attached hereto as **Exhibit B** (the "*Committee Position Letter*");

c.   the Class 4 – First Lien Claims Ballot for Voting to Accept or Reject the Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors, a form of which is attached hereto as **Exhibit C** (the "*Class 4 Ballot*");

d.   the Class 7 – General Unsecured Claims Ballot for Voting to Accept or Reject the Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors, a form of which is attached hereto as **Exhibit D** (the "*Class 7 Ballot*");

e.   the Notice of Non-Voting Status, a copy of which is attached hereto as **Exhibit E**;

f.   the Release Opt-In Form, a form of which is attached hereto as **Exhibit F**;

g.   the Preference Settlement Opt-In Form, a form of which is attached hereto as **Exhibit G**; and

h.   a pre-addressed, postage paid return envelope (the "*Return Envelope*"), a sample of which is not attached hereto.

2.      Unless otherwise stated, on June 26, 2026, at my direction and under my supervision, employees of Kroll caused electronic copies of the Combined Hearing Notice, Class 7 Ballot, and Committee Position Letter including the unique, customized credentials needed to access and vote through Kroll's E-Ballot Portal to be served via email on Katsumi Servicing, LLC at CKelley@mayerbrown.com, STScott@mayerbrown.com, and RStieglitz@mayerbrown.com.

3.      Unless otherwise stated, on June 29, 2026, at my direction and under my supervision, employees of Kroll caused true and correct copies of the above materials to be served as follows:

a.   the Combined Hearing Notice was served via First-Class Mail on the parties identified on the CHN Only Service List attached hereto as **Exhibit H**;

b.  the Combined Hearing Notice, Class 7 Ballot, Committee Position Letter and Return Envelope were served via First-Class Mail on the parties identified on the Class 7 Service List attached hereto as **Exhibit I**; and

c.  the Combined Hearing Notice, Non-Voting Notice, Release Opt-In Form, and Return Envelope were served via First-Class Mail on the parties identified on the Non-Voting Service List attached hereto as **Exhibit J**.

4.  Unless otherwise stated, on July 2, 2026, at my direction and under my supervision, employees of Kroll caused true and correct copies of the above materials to be served as follows:

a.  the Combined Hearing Notice, Non-Voting Notice, Release Opt-In Form and Return Envelope were served via First-Class Mail on U.S. Bank National Association, Faegre Drinker Biddle & Reath LLP, Attn: Maria J. Cho, 1800 Century Park East, Suite 1500, Los Angeles, CA, 90067;

b.  the Combined Hearing Notice, Class 7 Ballot, Committee Position Letter and Return Envelope were served via First-Class Mail on the parties identified on the Second Class 7 Service List attached hereto as **Exhibit K**; and

c.  the Combined Hearing Notice, Committee Position Letter, Release Opt-In Form, Preference Settlement Opt-In Form and Return Envelope were served via First-Class Mail on the parties identified on the Preference Settlement Service List attached hereto as **Exhibit L**.

5.  In addition to the services above, on July 2, 2026, at my direction and under my supervision, employees of Kroll caused electronic copies of the Combined Hearing Notice, Class 7 Ballot, and Committee Position Letter including the unique, customized credentials needed to access and vote through Kroll's E-Ballot Portal to be served via email on the parties identified on the Class 7 Email Service List attached hereto as **Exhibit M**.

3

6.       Unless otherwise stated, on July 6, 2026, at my direction and under my supervision, employees of Kroll caused true and correct copies of the Combined Hearing Notice, Class 7 Ballot, Committee Position Letter, and Return Envelope to be served via First-Class Mail on the parties identified on the Third Class 7 Service List attached hereto as **Exhibit N**.

7.       In addition to the services above, on July 6, 2026, at my direction and under my supervision, employees of Kroll caused electronic copies of the Combined Hearing Notice, Class 7 Ballot, and Committee Position Letter including the unique, customized credentials needed to access and vote through Kroll's E-Ballot Portal to be served via email on the parties identified on the Second Class 7 Email Service List attached hereto as **Exhibit O**.

8.       Unless otherwise stated, on July 7, 2026, at my direction and under my supervision, employees of Kroll caused true and correct copies of the above materials to be served as follows:

a.   the Combined Hearing Notice was served via First-Class Mail on the parties identified on the Second CHN Only Service List attached hereto as **Exhibit P**;

b.   the Combined Hearing Notice, Non-Voting Notice, Release Opt-In Form and Return Envelope were served via First-Class Mail on the parties identified on the Second Non-Voting Service List attached hereto as **Exhibit Q**; and

c.   the Combined Hearing Notice, Class 7 Ballot, Committee Position Letter and Return Envelope were served via First-Class Mail on the parties identified on the Fourth Class 7 Service List attached hereto as **Exhibit R**.

[*Remainder of page intentionally left blank*]

9.      Unless otherwise stated, on July 8, 2026, at my direction and under my supervision, employees of Kroll caused electronic copies of the Combined Hearing Notice, Class 7 Ballot, Preference Settlement Opt-In Form and Committee Position Letter including the unique, customized credentials needed to access and vote through Kroll's E-Ballot Portal to be served via email on the parties identified on the Claim 3 Email Service List attached hereto as **Exhibit S**.

10.     Unless otherwise stated, on July 9, 2026, at my direction and under my supervision, employees of Kroll caused electronic copies of the Combined Hearing Notice, Class 7 Ballot, and Committee Position Letter including the unique, customized credentials needed to access and vote through Kroll's E-Ballot Portal to be served via email on the parties identified on the Third Class 7 Email Service List attached hereto as **Exhibit T**.

11.     Unless otherwise stated, on July 14, 2026, at my direction and under my supervision, employees of Kroll caused true and correct copies of the above materials to be served as follows:

a.   the Combined Hearing Notice was served via First-Class Mail on the parties identified on the Third CHN Only Service List attached hereto as **Exhibit U**;

b.   the Combined Hearing Notice, Class 7 Ballot, Committee Position Letter and Return Envelope were served via First-Class Mail on the parties identified on the Fifth Class 7 Service List attached hereto as **Exhibit V**; and

c.   the Combined Hearing Notice, Non-Voting Notice, Release Opt-In Form, and Return Envelope were served via First-Class Mail on Tennessee Department of Revenue, c/o Attorney General, PO Box 20207, Nashville, TN, 37202-0207.

12.     Unless otherwise stated, on July 15, 2026, at my direction and under my supervision, employees of Kroll caused electronic copies of the Combined Hearing Notice, Class 7 Ballot, and Committee Position Letter including the unique, customized credentials needed to access and vote through Kroll's E-Ballot Portal to be served via email on Cal One Packaging Inc

and International Chemical Company whose email addresses have been withheld from this affidavit for privacy purposes.

13.     Unless otherwise stated, on July 15, 2026, at my direction and under my supervision, employees of Kroll caused electronic copies of the Combined Hearing Notice, Class 7 Ballot, and Committee Position Letter including the unique, customized credentials needed to access and vote through Kroll's E-Ballot Portal to be served via email on GLAS Trust Company LLC as administrative agent for the Carnaby II/III Secured Lenders at Eric.Hilmo@dechert.com.

14.     Unless otherwise stated, on July 16, 2026, at my direction and under my supervision, employees of Kroll caused true and correct copies of the Combined Hearing Notice, Class 4 Ballot, and Return Envelope to be served via overnight mail on the parties identified on the Class 4 Service List attached hereto as **Exhibit W**.

15.     In addition to the above, on July 16, 2026, at my direction and under my supervision, employees of Kroll caused electronic copies of the Combined Hearing Notice, Class 7 Ballot, and Committee Position Letter including the unique, customized credentials needed to access and vote through Kroll's E-Ballot Portal to be served via email on LAM Trade Finance Group LLC at eakleinhaus@wlrk.com, mhcassel@wlrk.com, and akherring@wlrk.com.

16.     In addition to the above, on July 17, 2026, at my direction and under my supervision, employees of Kroll caused the unique, customized credentials needed to access and submit the Preference Settlement Opt-In Form through Kroll's E-Ballot Portal to be served via email on the parties identified on the Preference Settlement Email Service List attached hereto as **Exhibit X**.

Dated: July 23, 2026

/s/ *Alex Orchowski*
Alex Orchowski

State of New York
County of Kings

Subscribed and sworn (or affirmed) to me on July 23, 2026, by Alex Orchowski, proved to me on the basis of satisfactory evidence to be the person who executed this affidavit.

/s/ *PAUL PULLO*
Notary Public, State of New York
No. 01PU6231078
Qualified in Nassau County
Commission Expires November 15, 2026

SRF 97170, 97251, 97340, 97366, 97377, 97538, 97572, 97565, & 97696

**Exhibit A**

96276-02

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

## NOTICE OF (I) CONDITIONAL APPROVAL OF DISCLOSURE STATEMENT (II) APPROVAL OF (A) SOLICITATION AND VOTING PROCEDURES, (B) ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM OPT-IN PROCEDURES, (C) PREFERENCE SETTLEMENT OPT-IN PROCEDURES, (III) COMBINED HEARING TO CONSIDER FINAL APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN, AND (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR FINAL APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN

### TO ALL PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF:

| Name of Debtors | Case Numbers | Name of Debtors | Case Numbers |
|---|---|---|---|
| Trico Technologies Corporation | 25-90396 (CML) | Carter Fuel Systems, LLC | 25-90422 (CML) |
| First Brands Group Holdings, LLC | 25-90397 (CML) | Carter Fuel Export, Inc. | 25-90423 (CML) |
| First Brands Group Intermediate, LLC | 25-90398 (CML) | Carter Carburetor Holdings, LLC | 25-90424 (CML) |
| First Brands Group, LLC | 25-90399 (CML) | Walbro Midco LLC | 25-90425 (CML) |
| Viceroy Private Capital, LLC | 25-90400 (CML) | UCI Acquisition Holdings (No. 4) LLC | 25-90426 (CML) |
| FRAMAuto Holdings, LLC | 25-90401 (CML) | WEM US Co. | 25-90427 (CML) |
| Autolite Operations LLC | 25-90402 (CML) | Dalton Corporation, Stryker Machining Facility Co. | 25-90428 (CML) |
| FRAM Group Operations LLC | 25-90403 (CML) | Reman Management International LLC | 25-90429 (CML) |
| FRAM Group IP LLC | 25-90404 (CML) | Walbro LLC | 25-90430 (CML) |
| Jasper Acquisition Corp. | 25-90405 (CML) | UCI-Airtex Holdings, Inc. | 25-90431 (CML) |
| Jasper Rubber Products, Inc. | 25-90406 (CML) | Carter Carburetor, LLC | 25-90432 (CML) |
| Specialty Pumps Group, Inc. | 25-90407 (CML) | Dalton Corporation, Ashland Manufacturing Facility | 25-90433 (CML) |
| ASC Industries, Inc. | 25-90408 (CML) | Airtex Industries, LLC | 25-90434 (CML) |
| Heatherton Holdings, LLC | 25-90409 (CML) | Smart Choice, LLC | 25-90435 (CML) |
| PHNX Acquisition Corp. | 25-90410 (CML) | KTRI Holdings, Inc. | 25-90436 (CML) |
| Hopkins Acquisition, Inc. | 25-90411 (CML) | Viper Acquisition, Inc. | 25-90437 (CML) |
| Hopkins Manufacturing Corporation | 25-90412 (CML) | Viper Acquisition I, Inc. | 25-90438 (CML) |
| Carrand Companies, Inc. | 25-90413 (CML) | Tridonex USA LLC | 25-90439 (CML) |
| Horizon Global Corporation | 25-90414 (CML) | Airtex Products, LP | 25-90440 (CML) |
| Horizon Global Company LLC | 25-90415 (CML) | Qualitor Acquisition Inc. | 25-90441 (CML) |
| Horizon Global Americas Inc. | 25-90416 (CML) | UCI Pennsylvania, Inc. | 25-90442 (CML) |
| Horizon International Holdings LLC | 25-90417 (CML) | Qualitor, Inc. | 25-90443 (CML) |
| Horizon Euro Finance LLC | 25-90418 (CML) | Global Reman Ventures, LLC | 25-90444 (CML) |
| Strongarm, LLC | 25-90419 (CML) | Champion Laboratories, Inc. | 25-90445 (CML) |
| Premier Marketing Group, LLC | 25-90420 (CML) | TAE Brakes, LLC | 25-90446 (CML) |
| AVM Export, Inc. | 25-90421 (CML) | Transportation Aftermarket Enterprise, LLC | 25-90447 (CML) |

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

96276-02

| Name of Debtors | Case Numbers |
|---|---|
| APC Parent, LLC | 25-90448 (CML) |
| Universal Auto Filter LLC | 25-90449 (CML) |
| TAE China Holdings, Inc. | 25-90450 (CML) |
| International Brake Industries, Inc. | 25-90451 (CML) |
| APC Intermediate Holdings, LLC | 25-90452 (CML) |
| Qualitor Subsidiary H, Inc. | 25-90453 (CML) |
| CWD Intermediate Holdings I, LLC | 25-90454 (CML) |
| Qualitor Subsidiary S, Inc. | 25-90455 (CML) |
| Fuel Filter Technologies, Inc. | 25-90456 (CML) |
| IBI International Holding Company, Inc. | 25-90457 (CML) |
| CWD Intermediate Holdings II, LLC | 25-90458 (CML) |
| Longman Enterprises, Inc. | 25-90459 (CML) |
| Pylon Manufacturing Corp. | 25-90461 (CML) |
| CWD Holding, LLC | 25-90462 (CML) |
| Qualitor Automotive, LLC | 25-90463 (CML) |
| CWD, LLC | 25-90465 (CML) |
| Pylon South Bend, Inc. | 25-90467 (CML) |
| Qualis Enterprises, LLC | 25-90469 (CML) |
| KTRI Offshore Holdings, LLC | 25-90470 (CML) |
| BPI Acquisition Company, LLC | 25-90471 (CML) |
| Trico Products Corporation | 25-90472 (CML) |
| Qualis Automotive, L.L.C. | 25-90474 (CML) |

| Name of Debtors | Case Numbers |
|---|---|
| Trico Holding Corporation | 25-90476 (CML) |
| Brake Parts Inc LLC | 25-90477 (CML) |
| Toledo Molding & Die, LLC | 25-90478 (CML) |
| UCI International Holdings Parent Inc. | 25-90479 (CML) |
| BPI EC, LLC | 25-90480 (CML) |
| Dalton Corporation, Kendallville Manufacturing Facility | 25-90481 (CML) |
| Dalton Corporation, Warsaw Manufacturing Facility | 25-90482 (CML) |
| UCI International Holdings, Inc. | 25-90483 (CML) |
| Brake Parts Inc India LLC | 25-90484 (CML) |
| UCI International, LLC | 25-90485 (CML) |
| BPI Holdings International, LLC | 25-90486 (CML) |
| United Components, LLC | 25-90487 (CML) |
| Brake Parts Inc China LLC | 25-90488 (CML) |
| Eagle Machining, LLC | 25-90489 (CML) |
| Eagle Casting Holdings, LLC | 25-90490 (CML) |
| Eagle Casting, LLC | 25-90491 (CML) |
| Dalton Corporation | 25-90492 (CML) |
| Cardone Industries, Inc. | 25-90493 (CML) |
| SDC TX, LLC | 25-90494 (CML) |

## PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      ***Conditional Approval of Disclosure Statement***.  On June 12, 2026, the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") held a hearing (the "**Conditional Disclosure Statement Hearing**") at which it conditionally approved the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on June 12, 2026 (Docket No. 2982) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Disclosure Statement**") of First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**"), and thereafter entered an order (Docket No. 2990) (the "**Disclosure Statement Order**") with respect thereto.  The Disclosure Statement Order, among other things, authorizes the FBG Debtors to solicit votes to accept the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on June 12, 2026 (Docket No. 2981) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented, the "**Plan**").[2]

2.      ***Combined Hearing***.  A hearing to consider confirmation of the Plan and final approval of the Disclosure Statement (the "**Combined Hearing**") has been scheduled for **July 28, 2026 at 9:00 a.m. (Central Time)** before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, in the Bankruptcy Court.  The Combined Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by a Bankruptcy Court announcement providing for such adjournment or continuation on its agenda.  The Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing.

3.      ***Voting Record Date***.  Holders of Claims in Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), Class 5 (Second Lien Claims), Class 6 (ABL Claims), Class 7 (General Unsecured Claims), and Class 8 (Subordinated Claims) who are otherwise eligible to vote shall be entitled to vote to accept or reject the Plan as of June 15, 2026 (the "**Voting Record Date**").

4.      ***Voting Deadline***.  If you received a Solicitation Package, including a Ballot, and intend to vote on the Plan, you must: (i) follow the instructions carefully; (ii) complete all of the required information on the Ballot; and (iii) execute and return your completed Ballot according to and as set forth in detail in the voting instructions on your Ballot so that it is actually received by the Debtors' solicitation and voting agent, Kroll Restructuring Administration LLC ("**Kroll**" or the "**Voting Agent**") on or before **July 20, 2026 at 5:00 p.m. (Central Time)** (the "**Voting Deadline**").  **ANY FAILURE TO FOLLOW THE VOTING INSTRUCTIONS INCLUDED WITH YOUR BALLOT MAY DISQUALIFY YOUR BALLOT AND YOUR VOTE.**

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, Disclosure Statement, or Disclosure Statement Order, as applicable.

96276-02

5. **_Parties in Interest Not Entitled to Vote_**. Holders of Claims or Interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 9 (Intercompany Claims), and Class 10 (FBG Debtor Interests) are not entitled to vote on the Plan and will not receive a Ballot. Holders of DIP A Claims, Claims in Class 1 (Other Priority Claims), and Claims in Class 2 (Other Secured Claims), will receive a Notice of Non-Voting Status and Release Opt-In Form to opt in to the Third-Party Releases set forth in the Plan. Holders of Claims in Class 9 (Intercompany Claims) and Class 10 (FBG Debtor Interests) are either Plan proponents or are controlled by Plan proponents and have waived receipt of any solicitation-related notices or materials.

6. **_Rule 3018 Motions_**. If any creditor (i) seeks to vote on the Plan but such holder's Claim is not listed on the FBG Debtors' Schedules, books and records, and the holder did not file a proof of claim; (ii) seeks to vote in a different amount than is reflected on the FBG Debtors' Schedules, books and records, or filed Proof of Claim, or (iii) is a holder of a Claim that is subject to an objection, a request for estimation, or an adversary proceeding as of July 3, 2026 at 5:00 p.m. (Central Time), (such Claim, a "**Potentially Disallowed Claim**"), such creditor must file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes (a "**Rule 3018(a) Motion**") to vote on the Plan. Any Rule 3018(a) Motion must be filed with the Court not later than **July 10, 2026 at 5:00 p.m. (Central Time)**. Upon the filing of any such Rule 3018(a) Motion, such creditor will receive a Provisional Ballot, which shall be tabulated in accordance with the guidelines provided in the Solicitation and Voting Procedures attached as **Exhibit 2** to the Disclosure Statement Order.

7. **_Administrative Expense Claims Consent Program_**. If you are the holder of an Administrative Expense Claim, if the Plan is confirmed, you will receive a Consent Program Opt-In Form following the Confirmation Date. If you intend to opt in to the Administrative Expense Claims Consent Program, you must: (i) follow the instructions carefully; (ii) complete all of the required information on the Consent Program Opt-In Form; and (iii) timely execute and return your completed Consent Program Opt-In Form according to and as set forth in detail in the voting instructions on your Consent Program Opt-In Form so that it is actually received by Kroll by **5:00 p.m. (Central Time) on the date that is sixty (60) days following the Confirmation Date** (the "**Consent Program Opt-In Deadline**"). Information on the Administrative Expense Claims Consent Program is located in Sections I.C and I.D of the Disclosure Statement.

8. **_Preference Settlement Opt-In Deadline_**. If you are a Trade Creditor, Supply Chain Financer, or Factor of one or more FBG Debtors (collectively, "**Preference Settlement Eligible Creditors**") and you receive a Preference Settlement Opt-In Form and intend to participate in the Preference Settlement, you must: (i) follow the instructions carefully; (ii) complete all of the required information on the Preference Settlement Opt-In Form; and (iii) timely execute and return your completed Preference Settlement Opt-In Form according to and as set forth in detail in the instructions on your Preference Settlement Opt-In Form so that it is actually received by Kroll on or before **5:00 p.m. (Central Time) on the date that is forty-five (45) days after the Confirmation Date** (the "**Preference Settlement Opt-In Deadline**"); _provided_ that if a Preference Action is brought against a Trade Creditor that did not timely opt in to the Preference Settlement, such Trade Creditor shall have an additional thirty (30) days following service of the Preference Action to opt in to the Preference Settlement. To the extent you are a Preference Settlement Eligible Creditor and you timely, properly, and affirmatively elect to participate in the Preference Settlement, you will be an Preference Settlement Electing Creditor under the Plan, and you will: (i) grant the releases contained in Section 13.5(b) of the Plan; (ii) contribute your Direct Creditor Claims to the Litigation Trust; and (iii) participate in, and receive the benefit of, the Preference Settlement, including, if you are (a) a Trade Creditor, you will be released from Preference Actions and (b) a Supply Chain Financer or a Factor, you will receive the benefit of the Modified New Value Elements, as described in more detail in Section 6.11(e) of the Plan. **ANY FAILURE TO FOLLOW THE INSTRUCTIONS INCLUDED WITH YOUR PREFERENCE SETTLEMENT OPT-IN FORM MAY DISQUALIFY YOUR OPT-IN ELECTION.**

9. **_Objections to Confirmation_**. The deadline to object or respond to confirmation of the Plan or final approval of the Disclosure Statement is **July 20, 2026 at 5:00 p.m. (Central Time)** (the "**Combined Objection Deadline**").

10. **_Form and Manner of Objections_**. Objections and responses, if any, to confirmation of the Plan or final approval of the Disclosure Statement, must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Bankruptcy Local Rules, and any order of the Court; (iii) set forth the name of the objecting party and the nature and

96276-02

amount of Claims or Interests held or asserted by the objecting party; (iv) provide the basis for the objection and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed with the Bankruptcy Court (with proof of service) via ECF or by mailing to the Bankruptcy Court at United States Bankruptcy Court Clerk's Office, United States Courthouse, 515 Rusk Avenue, Courtroom 402, 4th Floor, Houston, Texas 77002, so as to be actually received no later than the Combined Objection Deadline.

11. **IF AN OBJECTION TO CONFIRMATION OF THE PLAN OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THEN THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT OR THE ADEQUACY THEREOF AND MAY NOT BE HEARD AT THE COMBINED HEARING.**

12. *Additional Information*. Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement, the Plan, or other solicitation materials should contact Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line. Interested parties may also review and download the Disclosure Statement and the Plan free of charge at https://restructuring.ra.kroll.com/FirstBrands. In addition, the Disclosure Statement and the Plan are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: https://www.txs.uscourts.gov/. Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website. A PACER password can be obtained at: https://pacer.uscourts.gov/.

13. You may also access electronic copies of the Plan, Disclosure Statement, and any other solicitation materials via the QR Code below. Please be advised that Kroll cannot provide legal advice.



**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED. UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS COMBINED HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**QUESTIONS:**

If you have questions about this Combined Hearing Notice, please contact Kroll by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line, or (d) visiting https://restructuring.ra.kroll.com/FirstBrands.

96276-02

Dated: June 15, 2026
      Houston, Texas

                 _/s/ Clifford W. Carlson_
                 WEIL, GOTSHAL & MANGES LLP
                 Gabriel A. Morgan (24125891)
                 Clifford W. Carlson (24090024)
                 700 Louisiana Street, Suite 3700
                 Houston, Texas 77002
                 Telephone: (713) 546-5000
                 Facsimile: (713) 224-9511
                 Email:   gabriel.morgan@weil.com
                           clifford.carlson@weil.com

                 -and-

                 WEIL, GOTSHAL & MANGES LLP
                 Matthew S. Barr (admitted _pro hac vice_)
                 Sunny Singh (admitted _pro hac vice_)
                 Andriana Georgallas (admitted _pro hac vice_)
                 Kevin Bostel (admitted _pro hac vice_)
                 Jason H. George (admitted _pro hac vice_)
                 767 Fifth Avenue
                 New York, New York 10153
                 Telephone: (212) 310-8000
                 Facsimile: (212) 310-8007
                 Email:   matt.barr@weil.com
                           sunny.singh@weil.com
                           andriana.georgallas@weil.com
                           kevin.bostel@weil.com
                           jason.george@weil.com

                 _Attorneys for Debtors_
                 _and Debtors in Possession_

96276-02

## **Certificate of Service**

I hereby certify that on June 15, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                    */s/ Clifford W. Carlson*

                                    Clifford W. Carlson

**Exhibit B**

96276-08

**brown**rudnick

ROBERT J. STARK
rstark@brownrudnick.com

June 17, 2026

**To:**   **Holders of Class 7 General Unsecured Claims Under the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors***

**RE:**   **Recommendation of the Official Committee of Unsecured Creditors with Respect to the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (the "<u>Plan</u>") [Docket No. 2907][1]**

The Official Committee of Unsecured Creditors (the "**Committee**") of First Brands Group, LLC *et al.* (collectively, the "**Debtors**") submits this letter to holders of Class 7 General Unsecured Claims regarding the Committee's recommendation on whether to vote to accept the Plan. Capitalized terms used but not otherwise defined herein have the meanings assigned to them in the Disclosure Statement (as defined below) or the Plan.

---

**FOR THE REASONS DESCRIBED BELOW, THE COMMITTEE SUPPORTS THE PLAN AND BELIEVES THAT THE RECOVERY PROVIDED TO UNSECURED CREDITORS UNDER THE PLAN REPRESENTS A NEGOTIATED RESULT THAT BEST SERVES THE INTERESTS OF ALL UNSECURED CREDITORS. THE COMMITTEE (A) SUPPORTS THE RELIEF AND TREATMENT (INCLUDING THE DEBTOR AND THIRD-PARTY RELEASES) PROVIDED UNDER THE PLAN AND (B) RECOMMENDS THAT HOLDERS OF CLASS 7 GENERAL UNSECURED CLAIMS VOTE IN FAVOR OF THE PLAN.**

**IF YOU ARE A TRADE CREDITOR, SUPPLY CHAIN FINANCER, OR FACTOR, YOU MAY RECEIVE A SEPARATE PREFERENCE SETTLEMENT ELECTION FORM IN CONNECTION WITH SOLICITATION OF THE PLAN. THE COMMITTEE DOES NOT TAKE A POSITION, NOR MAKE A RECOMMENDATION, WITH RESPECT TO THE PREFERENCE SETTLEMENT.**

---

<u>**Background**</u>

In September 2025, First Brands Group, LLC and certain of its affiliates (collectively, "**First Brands**" or the "**Company**") each commenced with the United States Bankruptcy Court for the Southern District of Texas (the "**Court**" or the "**Bankruptcy Court**") a voluntary case under chapter 11 of the Bankruptcy Code.

On October 9, 2025, the Office of the United States Trustee for Region 7 appointed the Committee, which is comprised of some of the Debtors' largest unsecured creditors and represents the interests of the Debtors' general unsecured creditors. The Committee has retained, with Court

---

[1]   The Plan is available online at https://restructuring.ra.kroll.com/firstbrands/Home-DocketInfo. Capitalized terms used but not defined herein shall have the meanings set forth in the Plan.

**Brown Rudnick LLP** | brownrudnick.com | 7 Times Square, New York, NY 10036 | 1.212.209.4800

96276-08



June 17, 2026
Page 2

approval, (i) Brown Rudnick LLP and Cole Schotz, P.C., as co-counsel, (ii) M3 Partners LP, as financial advisor, and (iii) Ducera Partners LLC, as investment banker.

**The Plan Settlement**

As described in the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (the "**Disclosure Statement**") [Docket No. 2912], on January 29, 2026, the Debtors, the Committee, and an ad hoc group of certain of the Debtors' lenders (the "**Ad Hoc Group**," and with the Debtors and the Committee, the "**Parties**") began a mediation process overseen by the Honorable Judge Marvin Isgur to address a case resolution. Following months of mediation, the Parties reached agreement in principle on a case resolution (subject to further discussion and negotiation concerning certain issues), which resolution was described in the *Disclosure Statement for Chapter 11 Plan of Premier Marketing Group, LLC* (the "**Premier Marketing Disclosure Statement**") [Docket No. 2786] and embodied in the *Chapter 11 Plan of Premier Marketing Group, LLC* (the "**Premier Marketing Plan**") [Docket No. 2784].

At a hearing on May 26, 2026, the Court denied the Debtors' request for conditional approval of the Premier Marketing Disclosure Statement. Following such denial, the Parties came to terms on a revised settlement structure (the "**Plan Settlement**") which is described in the Disclosure Statement and memorialized in the Plan.

**The Plan and Disclosure Statement**

On June 5, 2026, the Debtors filed the Plan and Disclosure Statement. The Plan incorporates the final agreed terms of the settlement (the "**Plan Settlement**") reached by the Parties. The Plan Settlement is the product of a mediation process overseen by the Honorable Judge Marvin Isgur and negotiations among the Debtors, the Ad Hoc Group, and the Committee. The terms of the Plan Settlement are summarized as follows:

- Upon entry of the Confirmation Order, or as soon thereafter as reasonably practicable, a litigation trust (the "**Litigation Trust**") will be established and vested with all claims and causes of action held by the Debtors, as well as certain other assets (the "**Litigation Trust Assets**"), and which will seek to prosecute and monetize the Litigation Trust Assets.

- The Litigation Trust will be funded initially with $75 million, including (a) $25 million of cash from the Debtors, and (b) $50 million by certain members of the Ad Hoc Group (collectively, the "**Initial Litigation Trust Funding Commitments**"). The Litigation Trust shall be backstopped by certain Ad Hoc Group members to ensure adequate capitalization of the Litigation Trust. In the Event the Litigation Trust requires more capital in excess of the Initial Litigation Trust Funding Commitments to pursue and prosecute Litigation Trust Assets, it is permitted to raise additional funding in accordance with the terms of the Plan.

96276-08



June 17, 2026
Page 3

- Unsecured creditors will receive interests in the Litigation Trust on account of their Allowed Claims against one or more of the Debtors. To the extent an unsecured creditor holds the same claim against multiple Debtors, such Holder will receive a single recovery on account of such claim. Proceeds of the Litigation Trust Assets will be distributed to holders of unsecured creditors in accordance with the terms of a distribution "waterfall." Until administrative expense claims and priority claims are satisfied in full, in accordance with the terms of the Plan, holders of Class 3 Litigation Trust Interests (which includes Roll-Up Claims, First Lien Claims, Second Lien Claims, General Unsecured Claims) will not receive any recovery. Based upon the Debtors' projections, the Litigation Trust will need to recover $1.9 billion in litigation proceeds before distributions can be made to Class 3 Litigation Trust Interests.

- Trade Creditors, Supply Chain Financers, and Factors (each as defined in the Plan, and collectively, the "**Preference Settlement Eligible Creditors**"), at such creditors' sole election by submission of the Preference Settlement Election Form, may participate in a settlement of potential preference actions (the "**Preference Settlement**") which may be brought under section 547 of the Bankruptcy Code ("**Preference Actions**"). The Preference Settlement applies only to Trade Creditors, Supply Chain Financers, and Factors who: (i) do not meet the definition of Adverse Conduct, as determined by a Final Order; (ii) are not Specified Non-Released Parties; and (iii) are Preference Settlement Electing Creditors. Participation in the Preference Settlement would require you to (i) grant the releases contained in Section 13.5(b) of the Plan; (ii) contribute your direct (non-derivative) claims against non-Debtor parties (other than a Released Party, as defined in the Plan) that relate to First Brands' prepetition operations ("**Direct Creditor Claims**") to the Litigation Trust. Note that under certain circumstances, the Litigation Trust may commence an action against you that will reverse the waiver of Preference Actions for Trade Creditors, or the modified new value defense for Supply Chain Financers and Factors, if Adverse Conduct is alleged by the Litigation Trust and ultimately established by Final Order, as required by the Plan. In such an instance, you will not regain ownership and/or control of your Direct Creditor Claims. However, your grant of Third-Party Releases will be reversed and you will no longer be a "Releasing Party" (or a Released Party) under the Plan. Additional details regarding the Preference Settlement are included in the Disclosure Statement and Plan. Preference Settlement Eligible Creditors will receive the Preference Settlement Election Form in connection with solicitation, but the deadline to complete and return the form is not until forty-five (45) days following the Confirmation Date.

The Plan also provides you with the option, by affirmative election on the ballot, to release specified third parties (the "**Released Parties**," and such release, the "**Third-Party Release**") of certain claims and causes of action related to the Debtors. This Third-Party Release expressly

96276-08

 June 17, 2026
Page 4

excludes from the Third-Party Releases the Specified Non-Released Parties.[2]  You do not need to opt-into the Third-Party Release as a condition to receiving a recovery under the Plan. However, you will be required to grant the Third-Party Release if you want to participate in the Preference Settlement.

**The Committee's Recommendation**

These cases were filed amidst suspicion of widespread fraud. Upon diligent investigation, including by the Committee, the Debtors, and others, it became apparent that the scale of the fraud was even larger than originally presumed. The fraud perpetrated by certain of the Debtors' former management and non-Debtor third-parties infected the business and these cases to the point where relatively little reorganization value remained.

Over the last several months, the Parties have been engaged in ongoing mediation and discussions to determine a path forward to maximize recoverable value, which includes primarily litigation value. The Committee believes that the Plan Settlement represents a fair and reasonable resolution of the interests and rights of unsecured creditors.

Based on its investigation, which remains ongoing, the Committee believes the Litigation Trust Assets (*i.e.*, the Debtors' claims and causes of action) have substantial value. Under the Plan Settlement, Class 7 General Unsecured Creditors are able to participate in recoveries from the collateral of the DIP Lenders before the DIP Obligations, including the Roll-Up DIP Claims – all in the aggregate amount of approximately $4.6 billion – are paid in full. This presents an opportunity to recover value for Class 7 General Unsecured Creditors, which, absent the Plan Settlement, may not have been achievable considering the senior claims ahead of Class 7 General Unsecured Claims.

**Based on the foregoing, the Committee supports the Plan and believes that the recovery provided to Holders of Class 7 General Unsecured Claims under the Plan represents a negotiated result that best serves the interests of all unsecured creditors. The Committee therefore recommends that Holders of Class 7 General Unsecured Claims vote in favor of the Plan.**

---

[2]    The Plan defines "**Specified Non-Released Parties**" as (i) any Person (or Affiliate of any Person) against which any action has been commenced on behalf of a Debtor or its Estate in this Bankruptcy Court or any court of competent jurisdiction prior to the Confirmation Hearing, including, for the avoidance of doubt, any defendants named or to be named by the Debtors in the James Complaint or named by the Debtors in the Onset Complaint; (ii) any Person (or Affiliate of any Person) identified as a defendant or a potential defendant of a Cause of Action in the Plan Supplement; (iii) any Person (or Affiliate of any Person) that is charged with a crime (whether before or after the Confirmation Date) based on conduct related to the Debtors; (iv) any Person (or Affiliate of any Person) that meets the definition of Adverse Conduct, as determined by a Final Order of the Bankruptcy Court; and (v) any subsequent transferee of any of the foregoing with respect to any assets of or transfers by the Debtors or their Affiliates or Representatives.

96276-08



June 17, 2026
Page 5

By this letter, the Committee is expressing its views on the Plan in its current form. This letter does not purport to reflect the views of the Bankruptcy Court and does not constitute findings of fact or conclusions of law endorsed by the Bankruptcy Court, nor does it necessarily reflect the views of any individual Committee member, each of which reserves any and all of its rights. The Committee's support for the Plan does not preclude any creditor from (i) voting to reject the Plan, or (ii) raising any objection to confirmation of the Plan on any ground.

Before you cast your ballot, you should review the Plan, the Disclosure Statement and the exhibits to each of the Plan and the Disclosure Statement (including the Plan Supplement) in their entirety and make your own independent decision as to whether the Plan is acceptable. This letter is not intended or offered as legal advice as to any specific Claim or the treatment of such specific Claim under the Plan. It has been prepared for informational purposes only. To the extent required, you are urged to consult your own legal and financial professionals.

If you have any questions regarding voting procedures or otherwise, please contact counsel to the Committee, Robert J. Stark at (212) 209-4800, or Bennett S. Silverberg at (212) 209-4800.

Sincerely,

**BROWN RUDNICK LLP**


Robert J. Stark

**Exhibit C**

96276-04

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE DISCLOSURE STATEMENT, AND OTHER MATERIALS ACCOMPANYING THIS BALLOT.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND PROPERLY EXECUTE THIS ENTIRE BALLOT.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[2] | § | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT
THE JOINT CHAPTER 11 PLAN OF
FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS
CLASS 4 (FIRST LIEN CLAIMS)**

**IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE PROPERLY COMPLETED, FULLY EXECUTED, AND TIMELY RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS.**

First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") as debtors in possession in the above-captioned chapter 11 case are soliciting votes with respect to the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on June 16, 2026 (Docket No. 3019) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed on June 17, 2026 (Docket No. 3020) (including

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as <u>Exhibit A</u> to the Disclosure Statement.

[2]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

96276-04

any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Disclosure Statement**").

You are receiving this ballot (the "**Ballot**") because records indicate that you are the holder (a "**Holder**") of a First Lien Claim against the FBG Debtors as of June 15, 2026 (the "**Voting Record Date**"). Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 4 First Lien Claims.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have the Disclosure Statement, you may obtain a copy from Kroll Restructuring Administration LLC (the "**Voting Agent**" or "**Kroll**") at no charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/FirstBrands.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line. Please be advised that the Voting Agent cannot provide legal advice.

You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 4 First Lien Claim under the Plan. If so, please contact your attorney and/or advisor.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR**
**FIRST LIEN CLAIMS IN CLASS 4**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed First Lien Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, and release of such Allowed First Lien Claim (other than Remaining First Lien Claims), on the Confirmation Date, each such holder shall receive, on account of its Allowed First Lien Claim, its Pro Rata Share of the Class 3(c) Litigation Trust Interests. The First Lien Claims in excess of the aggregate amount of distributions that are anticipated to be made to holders of Allowed First Lien Claims under the Litigation Trust Waterfall, as determined in accordance with Section 6.19(d)(ii) of the Plan (the "**Remaining First Lien Claims**"), shall remain outstanding until the Effective Date, at which point such Remaining First Lien Claims shall be deemed to be released.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable

2

requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must properly complete, sign, and timely return this Ballot so that it is actually received by the Voting Agent on or before the Voting Deadline. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, <u>you will have consented to the releases contained in Section 13.5(b) of the Plan</u>.  The releases as presented in the Plan are provided below:**

**SECTION 13.4      <u>PLAN INJUNCTION</u>.**

**(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to the Plan, including under <u>Section 13.5(a)</u> or <u>Section 13.5(b)</u> of the Plan, or (ii) subject to exculpation pursuant to <u>Section 13.6</u> of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to <u>Section 13.6</u> of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly,**

3

96276-04

any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date; (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the Debtors or their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)      Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring

4

96276-04

of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)    As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).  If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.  For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d)

(e)    The injunctions in Section 13.4 shall extend to any successors of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)    FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

96276-04

**SECTION 13.5** **RELEASES.**

(a)     Releases by the FBG Debtors and their Estates.  Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer,

6

event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan, or (e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors.

(b) **Third-Party Releases.  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the**

7

business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in <u>Section 13.5(b)</u> shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)     NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6     <u>EXCULPATION</u>.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL

8

**COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE; THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN <u>SECTION 13.6</u> SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

<u>**Relevant Definitions Related to Release and Exculpation Provisions:**</u>

***Exculpated Parties*** means each of the following in their capacity as such: (i) the FBG Debtors; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

9

96276-04

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the FBG Debtors and their Estates; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the ABL Parties; (xi) the Litigation Trust Backstop Parties; (xii) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xiii) solely with respect to each of the foregoing Persons in clauses (vii) – (xii), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases. For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

10

96276-04

**PLEASE READ THE ATTACHED VOTING INFORMATION**
**AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.** **Amount of Claim**. The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a First Lien Claim(s) against the FBG Debtors in the amount set forth below.

$ _____

**Item 2.** **Votes on the Plan**. Below, please vote either to accept or to reject the Plan with respect to your Claim(s). Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases, you will have consented to the releases contained in Section 13.5(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned Holder of a Class 4 First Lien Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan        ☐ **Reject** the Plan

**Item 3.** **Third-Party Release Opt-In Election.** If you voted to accept or reject the Plan in Item 2 above, or, if you are abstaining from voting to accept or reject the Plan, and in either case, you elect to grant the Third-Party Releases contained in Section 13.5(b) of the Plan, check the box below to "Opt-In." Election to consent is at your option and must be affirmatively exercised. <u>**If you also receive a Release Opt-In Form and you opt in to granting the Third-Party Releases,**</u>

11

96276-04

**you will grant the Third-Party Releases in Section 13.5(b) of the Plan regardless of your Third-Party Release Opt-In Election on this Ballot.**

The Holder of the Class 4 First Lien set forth in <u>Item 1</u> elects to:

☐ **OPT IN** to the Third-Party Releases contained only in Section 13.5(b) of the Plan.

**Item 4.          Acknowledgements**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the First Lien Claims described in <u>Item 1</u> as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder:  _____

*(print or type)*

Signature:  _____

Name of Signatory:  _____

*(if other than Holder, include name and title)*

Title:  _____

Address:  _____

_____

_____

_____

E-mail Address:  _____

Date Completed:  _____

96276-04

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) will not be counted, unless the Debtors (in their sole discretion) waive the defect of lateness. **The Voting Agent will tabulate all properly completed, valid Ballots received on or before the Voting Deadline.**

2.      Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail. If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.      You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, and/or opt in to the Third-Party Releases.

6.      If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, valid Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.      If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY

---

[3]      Ballots submitted on the Online Portal ("**E-Ballots**") will be deemed to contain a legal, valid signature.

96276-04

SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.     PLEASE PROPERLY COMPLETE AND PROMPTLY RETURN YOUR BALLOT TO THE VOTING AGENT.

11.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY (I) CALLING (646) 290-7146 (INTERNATIONAL, TOLL) OR (877) 631-1151 (U.S./CANADA, TOLL FREE); (II) WRITING TO FIRST BRANDS GROUP, LLC BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 3RD AVENUE, SUITE 412, BROOKLYN, NY 11232 (IF BY FIRST CLASS MAIL, HAND DELIVERY OR OVERNIGHT MAIL); OR (III) EMAILING FIRSTBRANDSINFO@RA.KROLL.COM WITH "FIRST BRANDS SOLICITATION INQUIRY" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS**

---

**By electronic, online submission:**

To submit your Ballot via the Voting Agent's online portal (the "**Online Portal**"), visit https://restructuring.ra.kroll.com/FirstBrands.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.  If voting electronically, to have your vote counted, you must complete, sign, and submit the electronic Ballot by utilizing the Online Portal.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

_____

The Online Portal is the sole manner in which electronic votes will be accepted. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

---

14

96276-04

**Holders are strongly encouraged to submit their ballots via the Online Portal.   Holders who cast a Ballot using the Voting Agent's Online Portal should NOT also submit a paper Ballot.**

**By First Class Mail, Hand Delivery, or Overnight Mail to:**

**First Brands Group, LLC Ballot Processing**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

To arrange hand delivery of your Ballot, please email the Voting Agent at FirstBrandsInfo@ra.kroll.com (with "First Brands Solicitation Inquiry" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

**Exhibit D**

96276-07

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE DISCLOSURE STATEMENT, THE CREDITORS' COMMITTEE POSITION LETTER, AND OTHER MATERIALS ACCOMPANYING THIS BALLOT.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND PROPERLY EXECUTE THIS ENTIRE BALLOT.**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.[2]** | § | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE JOINT CHAPTER 11 PLAN OF**
**FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS**
**CLASS 7 (GENERAL UNSECURED CLAIMS)**

**IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE PROPERLY COMPLETED, FULLY EXECUTED, AND TIMELY RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS.**

First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") as debtors in possession in the above-captioned chapter 11 case are soliciting votes with respect to the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on June 16, 2026 (Docket No. 3019) (as may be modified, amended, or supplemented, the "**Plan**"). The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed on June 17, 2026 (Docket No. 3020) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Disclosure Statement**").

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **<u>Exhibit A</u>** to the Disclosure Statement.

[2]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

96276-07

You are receiving this ballot (the "**Ballot**") because records indicate that you are the holder (a "**Holder**") of a General Unsecured Claim against the FBG Debtors as of June 15, 2026 (the "**Voting Record Date**"). Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 7 General Unsecured Claims.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have the Disclosure Statement, you may obtain a copy from Kroll Restructuring Administration LLC (the "**Voting Agent**" or "**Kroll**") at no charge by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/FirstBrands.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line. Please be advised that the Voting Agent cannot provide legal advice.

You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 7 General Unsecured Claim under the Plan. If so, please contact your attorney and/or advisor.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR GENERAL UNSECURED CLAIMS IN CLASS 7**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, in full and final settlement, and release of such Allowed General Unsecured Claim, on the Confirmation Date, each such holder shall receive its Pro Rata Share of the Class 3(b) Litigation Trust Interests.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the Allowed Claims voted in each Impaired Class, and (ii) if the Impaired Class is a Class of Claims, more than one-half in number of the Allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must properly complete, sign, and timely return this Ballot so that it is actually received by the Voting

2

96276-07

Agent on or before the Voting Deadline. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, <u>you will have consented to the releases contained in Section 13.5(b) of the Plan</u>.  The releases as presented in the Plan are provided below:**

**SECTION 13.4      <u>PLAN INJUNCTION</u>.**

**(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to the Plan, including under <u>Section 13.5(a)</u> or <u>Section 13.5(b)</u> of the Plan, or (ii) subject to exculpation pursuant to <u>Section 13.6</u> of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to <u>Section 13.6</u> of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any**

manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the Debtors or their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)      Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission,

4

transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)     As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum).  If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust.  For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d)

(e)     The injunctions in Section 13.4 shall extend to any successors of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)     FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

SECTION 13.5     RELEASES.

(a)     Releases by the FBG Debtors and their Estates.  Except as otherwise expressly set forth below in Section 13.5, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral

5

96276-07

**Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or**

6

96276-07

**Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan, or (e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors.**

**(b)      Third-Party Releases.  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL**

Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(b) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)      FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)      NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6      EXCULPATION.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE;  THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER

8

**DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN <u>SECTION 13.6</u> SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

<u>**Relevant Definitions Related to Release and Exculpation Provisions:**</u>

*Exculpated Parties* means each of the following in their capacity as such: (i) the FBG Debtors; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the FBG Debtors and their Estates; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the

96276-07

ABL Parties; (xi) the Litigation Trust Backstop Parties; (xii) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xiii) solely with respect to each of the foregoing Persons in clauses (vii) – (xii), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases. For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

96276-07

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.        Amount of Claim**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of a General Unsecured Claim(s) in the amount set forth below.

**$**_____

**Debtor:**_____

**Item 2.        Votes on the Plan**.  Below, please vote either to accept or to reject the Plan with respect to your Claim(s).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases, you will have consented to the releases contained in Section 13.5(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

The undersigned Holder of a Class 7 General Unsecured Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.        Third-Party Release Opt-In Election.**  If you voted to accept or reject the Plan in Item 2 above, or, if you are abstaining from voting to accept or reject the Plan, and in either case,

11

96276-07

you elect to grant the Third-Party Releases contained in Section 13.5(b) of the Plan, check the box below to "Opt-In." Election to consent is at your option and must be affirmatively exercised. **If you also receive a Preference Settlement Election Form and elect to participate in the Preference Settlement, you will grant the Third-Party Releases in Section 13.5(b) of the Plan regardless of your Third-Party Release Opt-In Election on this Ballot.**

The Holder of the Class 7 General Unsecured Claim set forth in Item 1 elects to:

☐ **OPT IN** to the Third-Party Releases contained only in Section 13.5(b) of the Plan.

**Item 4.        Acknowledgements**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges review and receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the General Unsecured Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

Name of Holder:        _____
                        (*print or type*)

Signature:             _____

Name of Signatory:     _____
                        (*if other than Holder, include name and title*)

Title:                 _____

Address:               _____

                       _____

                       _____

                       _____

E-mail Address:        _____

Date Completed:        _____

12

96276-07

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1. Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) will not be counted, unless the Debtors (in their sole discretion) waive the defect of lateness. **The Voting Agent will tabulate all properly completed, valid Ballots received on or before the Voting Deadline.**

2. Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned[3] will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail. If neither the "**accept**" nor "**reject**" box is checked in <u>Item 2</u>, both boxes are checked in <u>Item 2</u>, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3. You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4. The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan, and/or opt in to the Third-Party Releases.

6. If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, valid Ballot submitted to the Voting Agent will supersede any prior Ballot.

7. If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, THE

---

[3] Ballots submitted on the Online Portal ("**E-Ballots**") will be deemed to contain a legal, valid signature.

96276-07

CREDITORS' COMMITTEE POSITION LETTER, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.      PLEASE PROPERLY COMPLETE AND PROMPTLY RETURN YOUR BALLOT TO THE VOTING AGENT.

11.      IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY (I) CALLING (646) 290-7146 (INTERNATIONAL, TOLL) OR (877) 631-1151 (U.S./CANADA, TOLL FREE); (II) WRITING TO FIRST BRANDS GROUP, LLC BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 3RD AVENUE, SUITE 412, BROOKLYN, NY 11232 (IF BY FIRST CLASS MAIL, HAND DELIVERY OR OVERNIGHT MAIL); OR (III) EMAILING FIRSTBRANDSINFO@RA.KROLL.COM WITH "FIRST BRANDS SOLICITATION INQUIRY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.      THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**PLEASE SUBMIT YOUR BALLOT BY ONLY <u>ONE</u> OF THE FOLLOWING METHODS**

---

**By electronic, online submission:**

To submit your Ballot via the Voting Agent's online portal (the "**Online Portal**"), visit https://restructuring.ra.kroll.com/FirstBrands. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted. If voting electronically, to have your vote counted, you must complete, sign, and submit the electronic Ballot by utilizing the Online Portal.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

_____

The Online Portal is the sole manner in which electronic votes will be accepted. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in <u>Item 1</u> of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

---

14

96276-07

**Holders are strongly encouraged to submit their ballots via the Online Portal.   Holders who cast a Ballot using the Voting Agent's Online Portal should NOT also submit a paper Ballot.**

**By First Class Mail, Hand Delivery, or Overnight Mail to:**

**First Brands Group, LLC Ballot Processing**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

To arrange hand delivery of your Ballot, please email the Voting Agent at FirstBrandsInfo@ra.kroll.com (with "First Brands Solicitation Inquiry" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

**Exhibit E**

96276-09

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIRST BRANDS GROUP, LLC, *et al.*, | § | Case No. 25-90399 (CML) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |

## NOTICE OF NON-VOTING STATUS

On September 24, 2025 and September 28, 2025 (as applicable, the "**Petition Date**"), First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

On June 12, 2026, the Bankruptcy Court held a hearing at which it conditionally approved the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 2982) (the "**Disclosure Statement**"), and thereafter entered an order (the "**Disclosure Statement Order**") with respect thereto.  The Disclosure Statement Order, among other things, authorizes First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") to solicit votes to accept the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on June 12, 2026 (Docket No. 2981) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Plan**").[2]

If you have any questions about the status of your Claim or Interest or if you wish to obtain paper copies of the Plan and the Disclosure Statement, you may contact the Debtors' voting agent, Kroll Restructuring Administration LLC ("**Kroll**" or the "**Voting Agent**"), by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line.  Copies of the Plan and Disclosure Statement can also be accessed online at https://restructuring.ra.kroll.com/FirstBrands.  Please be advised that Kroll cannot provide legal advice.

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

96276-09

**You are receiving this notice (this "Notice of Non-Voting Status") because, as of June 15, 2026, you are a holder of:**

    i.        **DIP A Claims** under the Plan, which provides that your Claim(s) against the FBG Debtors are not classified pursuant to section 1123(a)(1), and therefore, you are not entitled to vote on the Plan;

    ii.        **Class 1 Other Priority Claims** under the Plan, which provides that your Claim(s) against the FBG Debtors are unimpaired and therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and are not entitled to vote on the Plan; and/or

    iii.        **Class 2 Other Secured Claims** under the Plan, which provides that your Claim(s) against the FBG Debtors are unimpaired and therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and are not entitled to vote on the Plan.

**UNDER THE TERMS OF THE PLAN, IF YOU ARE A HOLDER OF DIP A CLAIM(S), CLAIM(S) IN CLASS 1 (OTHER PRIORITY CLAIMS), AND/OR CLASS 2 (OTHER SECURED CLAIMS), YOU WILL ALSO RECEIVE A RELEASE OPT-IN FORM WHERE YOU MAY OPT IN TO THE THIRD-PARTY RELEASES CONTAINED IN SECTION 13.5(B) OF THE PLAN. OPTING IN TO SUCH RELEASES IS AT YOUR OPTION AND MUST BE AFFIRMATIVELY EXERCISED ON THE RELEASE OPT IN FORM PROVIDED AND TIMELY RETURNED TO THE VOTING AGENT. IF YOU RECEIVE THIS RELEASE OPT-IN FORM AND DO NOT ELECT TO OPT IN TO THE THIRD-PARTY RELEASES, YOU WILL NOT GRANT THE RELEASES CONTAINED IN SECTION 13.5(B) OF THE PLAN AND YOU WILL NOT BE A "RELEASED PARTY" UNDER THE PLAN, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN.**

**FOR THE AVOIDANCE OF DOUBT, IF YOU ARE A PREFERENCE SETTLEMENT ELECTING CREDITOR, A HOLDER OF DIP A CLAIM(S), OR A HOLDER OF CLAIM(S) IN AN UNIMPAIRED NON-VOTING CLASS, WHO OPTS IN TO THE THIRD-PARTY RELEASES IN YOUR RELEASE OPT-IN FORM, OR A HOLDER OF CLAIM(S) IN A VOTING CLASS WHO OPTS IN TO THE THIRD-PARTY RELEASES IN YOUR BALLOT, YOU ARE A RELEASING PARTY.**

The deadline for filing objections to confirmation of the Plan or final approval of the Disclosure Statement is **July 20, 2026 at 5:00 p.m. (Central Time)** (the "**Combined Objection Deadline**"). Any objections to the confirmation of the Plan or final approval of the Disclosure Statement must: (i) be in writing; (ii) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any order of the Bankruptcy Court; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; and (iv) provide the basis for the objection, and the specific grounds therefor, and, if practicable, a proposed modification to the Plan that would resolve such objection. Registered users of the Bankruptcy Court's case filing system must electronically file their objections and responses on or before the Combined Objection Deadline. All other parties in interest must file

their objections and responses in writing with the United States Bankruptcy Court Clerk's Office, Rosario Saldana, United States Courthouse, 515 Rusk Avenue, Courtroom 402, 4th Floor, Houston, Texas 77002, on or before the Combined Objection Deadline.

---

If you have questions about this Notice of Non-Voting Status, please contact Kroll at:

**Telephone**: (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free)

**Email**:  FirstBrandsInfo@ra.kroll.com

**Website**:  https://restructuring.ra.kroll.com/FirstBrands

---

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, you will have consented to the releases contained in Section 13.5(b) of the Plan.  The releases as presented in the Plan are provided below:**

**SECTION 13.4        PLAN INJUNCTION.**

**(a)        Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)        Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to the Plan, including under Section 13.5(a) or Section 13.5(b) of the Plan, or (ii) subject to exculpation pursuant to Section 13.6 of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 13.6 of the Plan with respect**

3

96276-09

to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the Debtors or their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)     Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that

4

96276-09

is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in Section 14.1 of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action. For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)    As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum). If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust. For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce Section 13.4(d)

(e)    The injunctions in Section 13.4 shall extend to any successors of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)    FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

5

96276-09

**SECTION 13.5**      <u>RELEASES</u>.

(a)      **Releases by the FBG Debtors and their Estates. Except as otherwise expressly set forth below in <u>Section 13.5</u>, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer,**

6

event, or other occurrence related to the foregoing and taking place on or before  the Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan, or (e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors.

(b)     Third-Party Releases.  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the

7

business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in <u>Section 13.5(b)</u> shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)	FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)	NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6	<u>EXCULPATION</u>.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL

8

96276-09

COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE;  THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such: (i) the FBG Debtors; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

9

96276-09

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the FBG Debtors and their Estates; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the ABL Parties; (xi) the Litigation Trust Backstop Parties; (xii) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xiii) solely with respect to each of the foregoing Persons in clauses (vii) – (xii), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases. For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**Exhibit F**

96276-10

**OPTIONAL:**          **RELEASE OPT-IN FORM**

You are receiving this opt in form (the "**Release Opt-In Form**") because you are or may be a holder (a "**Holder**") of a Claim against First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") that is not entitled to vote on the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed on June 16, 2026 (Docket No. 3019) (as may be modified, amended, or supplemented, the "**Plan**").[1]  A Holder of Claim(s) that affirmatively opts in to the third-party releases set forth below on or before July 20, 2026 at 5:00 p.m. (Central Time) (the "**Opt-In Deadline**") will grant the third-party releases under the Plan.  For the avoidance of doubt, if you receive this Release Opt-In Form and do not affirmatively opt in to the Third-Party Releases by the Opt-In Deadline but you are a Preference Settlement Electing Creditor or a Holder of Claim(s) in a Voting Class and you opt in to the Third-Party Releases in your Ballot, you are a Releasing Party.

If you believe you are a Holder of a DIP A Claim(s), or Claim(s) in Class 1 and/or Class 2 and choose to opt in to the third-party releases set forth in Section 13.5(b) of the Plan, please submit your election to opt in through one of the following methods: (i) completing, signing, dating, and returning this Release Opt-In Form promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to the Debtors' voting agent, Kroll Restructuring Administration LLC ("**Kroll**" or the "**Voting Agent**"), at the address set forth below, so that it is actually received by the Voting Agent prior to the Opt-In Deadline, or (ii) by completing and signing the Release Opt-In Form via the Online Portal located  at https://restructuring.ra.kroll.com/FirstBrands (the "**Online Portal**").

**To ensure that your Release Opt-In Form is counted, you must complete, clearly sign, and timely return your Release Opt-In Form so that it is actually received by the Voting Agent by the Opt-In Deadline by *ONLY ONE* of the following methods:**

**Hard Copy Submission**

| **If by First Class Mail, Hand Delivery, or Overnight Mail:** |
| --- |
| First Brands Group, LLC Ballot Processing<br>c/o Kroll Restructuring Administration LLC<br>850 3rd Avenue, Suite 412<br>Brooklyn, NY 11232<br><br>To arrange hand delivery of your Release Opt-In Form, please email the Voting Agent at FirstBrandsBallots@ra.kroll.com (with "First Brands Release Opt-In Form Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery. |

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors, LLC*, filed on June 12, 2026 (Docket No. 2982) (as may be amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**"), as applicable.

96276-10

**Electronic Online Submission**

| **If by Online Portal** |
| --- |
| To submit your Release Opt-In Form via the Voting Agent's Online Portal, visit https://restructuring.ra.kroll.com/FirstBrands. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Release Opt-In Form.<br><br>Release Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted. If submitting online, to have your opt in election counted, you must electronically complete, sign, and submit your electronic Release Opt-In Form by utilizing the Online Portal.<br><br>**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Release Opt-In Form:**<br><br>**Unique E-Opt-In ID#:** _____<br><br>The Online Portal is the sole manner in which Release Opt-In Forms will be accepted via electronic or online transmission.  Release Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.<br><br>**Holders are strongly encouraged to submit their Release Opt-In Forms via the Online Portal.  Parties who submit a Release Opt-In Form using the Voting Agent's Online Portal should NOT also submit a hard copy Release Opt-In Form.** |

**THIS RELEASE OPT-IN FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE OPT-IN DEADLINE.  IF THE RELEASE OPT-IN FORM IS RECEIVED AFTER THE OPT-IN DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1.        Claim(s) Held**. The undersigned hereby certifies that, as of the Voting Record Date of June 15, 2026, the undersigned was the Holder (or authorized signatory of such a Holder) of the Claim(s) against the FBG Debtors set forth below (check the applicable box(es)).

| |
| --- |
| ☐ **DIP A Claims** |
| ☐ **Class 1 Other Priority Claims** |
| ☐ **Class 2 Other Secured Claims** |

2

96276-10

## NOTICE REGARDING CERTAIN RELEASE,
## EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, <u>you will have consented to the releases contained in Section 13.5(b) of the Plan</u>.  The releases as presented in the Plan are provided below:**

**SECTION 13.4      <u>PLAN INJUNCTION</u>.**

**(a)      Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.**

**(b)      Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to the Plan, including under <u>Section 13.5(a)</u> or <u>Section 13.5(b)</u> of the Plan, or (ii) subject to exculpation pursuant to <u>Section 13.6</u> of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to <u>Section 13.6</u> of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection or with**

respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the Debtors or their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)     Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy

4

96276-10

Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in <u>Section 14.1</u> of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action. For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)      As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum). If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust. For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce <u>Section 13.4(d)</u>

(e)      The injunctions in <u>Section 13.4</u> shall extend to any successors of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)      FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

SECTION 13.5      <u>RELEASES</u>.

(a)      Releases by the FBG Debtors and their Estates. Except as otherwise expressly set forth below in <u>Section 13.5</u>, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to

5

section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in <u>Section 13.5(a)</u> shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive

6

Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan, or (e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors.

(b)     **Third-Party Releases.** Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan;

or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(b) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)      FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)      NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

**SECTION 13.6      EXCULPATION.**

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE;  THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT

8

96276-10

OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

**Relevant Definitions Related to Release and Exculpation Provisions:**

***Exculpated Parties*** means each of the following in their capacity as such: (i) the FBG Debtors; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

***Released Parties*** means collectively, and in each case solely in their capacities as such, (i) the FBG Debtors and their Estates; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the ABL Parties; (xi) the Litigation Trust Backstop Parties; (xii) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xiii) solely with respect to

9

96276-10

each of the foregoing Persons in clauses (vii) – (xii), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases. For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

96276-10

**By checking the box below, the undersigned Holder of a Claim not entitled to vote identified in Item 1 above, having received notice of the opportunity to opt in to granting the releases contained in Section 13.5(b) of the Plan:**

☐ **Elects to <u>OPT IN</u> to the releases contained in Section 13.5(b) of the Plan.**

**Item 3.**   **Certifications**. By signing this Release Opt-In Form, the undersigned certifies that:

a. as of the Voting Record Date, either: (i) the Holder is the Holder of the Claims set forth in Item 1; or (ii) the Holder is an authorized signatory for an entity that is the Holder of the Claims set forth in Item 1;

b. the undersigned has received a copy of the Notice of Non-Voting Status and the Release Opt-In Form and that the Release Opt-In Form is made pursuant to the terms and conditions set forth therein;

c. if applicable, the undersigned has submitted the same election concerning the releases with respect to all Claims held by the undersigned; and

d. no other Release Opt-In Forms have been submitted with respect to the Holder's Claims, or, if any other Release Opt-In Forms have been submitted with respect to such Claims, then any such earlier Release Opt-In Forms are hereby revoked.

Name of Holder: _____
(*print or type*)

Signature: _____

Name of Signatory: _____
(*if other than Holder, include name and title*)

Title: _____

Address: _____

_____

_____

_____

E-mail Address: _____

Date Completed: _____

11

96276-10

**IF YOU WISH TO OPT IN, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OPT-IN FORM AND RETURN IT TO THE VOTING AGENT BY *JUST ONE* OF THE PREVIOUSLY OUTLINED METHODS: FIRST CLASS OR OVERNIGHT MAIL, HAND DELIVERY, OR BY ONLINE TRANSMISSION VIA THE ONLINE PORTAL.**

---

**THIS OPT-IN FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE THE OPT-IN DEADLINE OF JULY 20, 2026 AT 5:00 P.M. (CENTRAL TIME).**

---

12

**Exhibit G**

96276-11

**OPTIONAL:**       **PREFERENCE SETTLEMENT OPT-IN FORM**

You are receiving this election form (the "**Preference Settlement Opt-In Form**") because you may be a Trade Creditor,[1] Supply Chain Financer,[2] or Factor[3] of one or more of First Brands Group Holdings, LLC, its Debtor Subsidiaries and Viceroy Private Capital, LLC (collectively, "**FBG Debtors**") as of June 15, 2026 (the "**Preference Settlement Record Date**") (each, a "**Preference Settlement Eligible Creditor**" and collectively, the "**Preference Settlement Eligible Creditors**") that may be entitled to participate in the Preference Settlement set forth in the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on June 16, 2026 (Docket No. 3019) (as may be modified, amended, or supplemented, the "**Plan**").[4]  Preference Settlement Eligible Creditors are eligible to opt-in to the Preference Settlement under the Plan.

**You are not required to participate in the Preference Settlement. Participation in the Preference Settlement, which requires the contribution of your Direct Creditor Claims to the Litigation Trust, is optional.  Under certain circumstances, the Litigation Trust may commence an action against you that will reverse the waiver of Preference Actions for Trade Creditors, or the modified new value defense for Supply Chain Financers and Factors, if Adverse Conduct is alleged by the Litigation Trust and ultimately established by Final Order, as required by the Plan.  In such an instance, you will not regain ownership and/or control of your Direct Creditor Claims.  However, such Preference Settlement Electing Creditor's grant of Third-Party Releases will be reversed and such creditor will no longer be a "Releasing Party" (or a Released Party) under the Plan.  For all these reasons, you should carefully consider whether to participate in the Preference Settlement based upon your individual circumstances—including your views on**

---

[1]  "**Trade Creditor**" means any Person (including any Person that was paid through a payment intermediary but excluding any such payment intermediary) that, as of the Petition Date, holds a General Unsecured Claim against an FBG Debtor arising from the ordinary course of the FBG Debtor's business for goods sold, services rendered, or other trade obligations incurred prior to the Petition Date, excluding any Person whose claim arises from a (secured or unsecured) loan, financing arrangement, bond, note, or other financial indebtedness.  For the avoidance of doubt, a Trade Creditor shall not include any Entity that qualifies as a Factor or Supply Chain Financer.

[2]  "**Supply Chain Financer**" means any financial institution, fund, or other Person (other than any ABL Lender in its capacity as such) that (i) provided (or asserts that it provided) financing or liquidity to suppliers or vendors of one or more FBG Debtors or reimbursed any FBG Debtor Affiliate for providing such financing or liquidity in connection with such suppliers' or vendors' accounts receivable  arising from the supply of goods or services to such FBG Debtors, whether through supply chain financing programs, reverse factoring arrangements, receivables purchase facilities, or similar arrangements; or (ii) remitted payments (or asserts that it remitted payments) on behalf of one or more FBG Debtors relating to accounts payable arising from the supply of goods or services to such FBG Debtors, and as identified in an exhibit to the Litigation Trust Agreement.

[3]  "**Factor**" means any Person that purchased, or intended or agreed to purchase, accounts receivable at a discount from one or more FBG Debtors, and as identified in an exhibit to the Litigation Trust Agreement.

[4]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, filed on June 12, 2026 (Docket No. 2982) (as may be amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**"), as applicable.

96276-11

**your potential preference exposure and value of your potential Direct Creditor Claims. Contribution of your Direct Creditor Claims is irrevocable.**

A Preference Settlement Eligible Creditor will participate in the Preference Settlement set forth below if **(i) such Preference Settlement Eligible Creditor affirmatively elects to participate by properly completing** Item 1 and Item 2 **of this Preference Settlement Opt-In Form and submitting such completed Preference Settlement Opt-In Form in accordance with the procedures set forth below so that it is** actually received **by Kroll Restructuring Administration ("Kroll") on or before the date that is forty-five (45) days after the Confirmation Date (the "Preference Settlement Opt-In Deadline") electing to (a) participate in, and receive the benefits of, the Preference Settlement, (b) grant the releases contained in** Section 13.5(b) **of the Plan, and (c) contribute any direct (non-derivative) Claims against any non-Debtor Person that relate to the conduct of the Debtors and/or Affiliates or professionals of the Debtors on or before the Petition Date (excluding any Claims against a Released Party that are released under the Plan) ("Direct Creditor Claims") to the Litigation Trust and (ii) you do not meet the definition of Adverse Conduct,[5] as determined by a Final Order, and (iii) you are not a Specified Non-Released Party;[6]** *provided* **that if a Preference Action is brought against a Trade Creditor that did not timely opt in to the Preference Settlement, such Trade Creditor shall have an additional thirty (30) days following service of the Preference Action to opt in to the Preference Settlement.** Preference Settlement Eligible Creditors who timely elect to participate in the Preference Settlement will be treated as "**Preference Settlement Electing Creditors.**"

If you are a Preference Settlement Eligible Creditor and choose to opt in to the Preference Settlement, you must submit your "opt in" election through one of the following methods: (i) completing, signing, dating, and returning this Preference Settlement Opt-In Form promptly in the enclosed reply envelope provided, or otherwise via first class mail, overnight courier, or hand delivery to Kroll at the address set forth below, so that it is **actually received** by Kroll prior to the Preference Settlement Opt-In Deadline, or (ii) by completing and signing

---

[5]    "**Adverse Conduct**" means (i) engaged in wrongful, actual, or constructively fraudulent conduct against any Debtor or Affiliate of any Debtor, or otherwise participated, conspired with, or acted in concert with, any Person that engaged in wrongful, actual or constructively fraudulent conduct against any Debtors, creditors, or lenders of the Debtors (or Affiliates of Debtors), (ii) received an avoidable transfer on grounds other than section 547 of the Bankruptcy Code from any of the Debtors, or (iii) received a transfer not in good faith.

[6]    "**Specified Non-Released Parties**" means (i) any Person (or Affiliate of any Person) against which any action has been commenced on behalf of a Debtor or its Estate in this Bankruptcy Court or any court of competent jurisdiction prior to the Confirmation Hearing, including, for the avoidance of doubt, any defendants named or to be named by the Debtors in the James Complaint or named by the Debtors in the Onset Complaint; (ii) any Person (or Affiliate of any Person) identified as a defendant or a potential defendant of a Cause of Action in the Plan Supplement; (iii) any Person (or Affiliate of any Person) that is charged with a crime (whether before or after the Confirmation Date) based on conduct related to the Debtors; (iv) any Person (or Affiliate of any Person) that meets the definition of Adverse Conduct, as determined by a Final Order of the Bankruptcy Court; and (v) any subsequent transferee of any of the foregoing with respect to any assets of or transfers by the Debtors or their Affiliates or Representatives. Notwithstanding the foregoing or anything else in the Plan to the contrary (including anything in the definition of Released Party), and for the avoidance of doubt, neither the FBG Debtors and their Estates, nor any member of the Ad Hoc Group, Ad Hoc Group Advisors, Creditors' Committee and each of its members, Special Committee member, Independent Manager, Specified Executive, Professional, Prepetition Secured Party, nor DIP Secured Party, with respect to each of the foregoing, solely in their capacities as such, shall be construed to be or deemed to be a Specified Non-Released Party.

2

96276-11

the electronic version of your Preference Settlement Opt-In Form and submitting it via the Online Portal located at https://restructuring.ra.kroll.com/FirstBrands. Instructions for submitting this Preference Settlement Opt-In Form via either of the specified, valid methods are outlined below.

**If you timely submit your "opt in" Preference Settlement Opt-In Form in accordance with the instructions set forth herein, you will (i) grant the releases contained in <u>Section 13.5(b)</u> of the Plan; (ii) contribute your Direct Creditor Claims to the Litigation Trust; and (iii) participate in, and receive the benefit of, the Preference Settlement, including, if you are (a) a Trade Creditor, you will be released from Preference Actions and (b) if you are a Supply Chain Financer or a Factor, you will receive the benefit of the Modified New Value Elements, as described in more detail in <u>Section 6.11(e)</u> of the Plan.**

If you have any questions about the status of your Claim or if you wish to obtain paper copies of the Plan and the Disclosure Statement, free of charge, you may contact Kroll, by: (a) calling (646) 290-7146 (international, toll) or (877) 631-1151 (U.S./Canada, toll free), (b) writing to First Brands Group, LLC Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first class mail, hand delivery or overnight mail), or (c) emailing FirstBrandsInfo@ra.kroll.com with "First Brands Solicitation Inquiry" in the subject line. Please be advised that Kroll cannot provide legal advice.

Copies of the Plan and Disclosure Statement and Disclosure Statement Order (with Solicitation and Voting Procedures annexed thereto as <u>Exhibit 2</u>) can also be accessed, free of charge, online at https://restructuring.ra.kroll.com/FirstBrands. You may also access electronic copies of the Plan, Disclosure Statement, and any other solicitation materials via the QR Code below. Procedures for the submission and tabulation of the Preference Settlement Opt-In Forms are located in paragraphs 27–39 of the Disclosure Statement Order.

To access the Online Portal and view the Plan, Disclosure Statement, Disclosure Statement Order, and other relevant materials, please use the QR Code set forth below:



96276-11

**To ensure that your Preference Settlement Opt-In Form is processed, clearly sign and timely return your properly completed Preference Settlement Opt-In Form (i) in hard copy (a) in the enclosed prepaid pre-addressed business reply envelope, or (b) via first-class mail, overnight courier, or hand delivery or (ii) online according to instructions provided below.**

**See Below for Paper Copy and Online Preference Settlement Opt-In Form Instructions**

**THIS PREFERENCE SETTLEMENT OPT-IN FORM MUST BE ACTUALLY RECEIVED BY KROLL BY THE PREFERENCE SETTLEMENT OPT-IN DEADLINE. IF THE PREFERENCE SETTLEMENT OPT-IN FORM IS RECEIVED AFTER THE PREFERENCE SETTLEMENT OPT-IN DEADLINE, IT WILL NOT BE PROCESSED AND YOU WILL NOT BE A PREFERENCE SETTLEMENT ELECTING CREDITOR AND WILL NOT PARTICIPATE IN THE PREFERENCE SETTLEMENT IN EXCHANGE FOR THE TREATMENT PROVIDED IN THE PREFERENCE SETTLEMENT SET FORTH BELOW.**

**CRITICAL INFORMATION REGARDING YOUR CLAIMS
AND PROCEDURES FOR AGREEING TO DIFFERENT TREATMENT**

**If you do not timely, properly, and affirmatively opt in to the Preference Settlement by the Preference Settlement Opt-In Deadline, you will not be a Preference Settlement Electing Creditor for purposes of the Plan, you will not contribute your Direct Creditor Claims to the Litigation Trust, you will not grant the releases contained in Section 13.5(b) of the Plan, and therefore, you will not receive the benefit of the Preference Settlement.  Specifically, to the extent you are (i) a Trade Creditor, you will not be released from Preference Actions under the Plan, or (ii) a Supply Chain Financer or Factor, you will not receive the benefit of the Modified New Value Elements, as described in more detail in Section 6.11(e) of the Plan.**

In accordance with the Preference Settlement, (i) Trade Creditors who opt-in to become Preference Settlement Electing Creditors will be released from Preference Actions under the Plan, and (ii) Supply Chain Financers and Factors who opt-in to become Preference Settlement Electing Creditors will receive the benefit of the Modified New Value Elements as described in more detail in Section 6.11(e) of the Plan.  You should contact the Debtors if you are unsure as to your classification as a Trade Creditor, Supply Chain Financer, or Factor.

The creation of the Litigation Trust, the issuance of Class 3(b) Litigation Trust Interests to Eligible Creditors, the Preference Settlement, and any distributions or benefits to Preference Settlement Electing Creditors from the Litigation Trust or under the Preference Settlement, including (i) the release of Trade Creditors from Preference Actions and (ii) the benefit of the Modified New Value Elements as described in Section 6.11(e) of the Plan for Supply Chain Financers and Factors, are each contingent upon the confirmation of the Plan by the Bankruptcy Court.  In the event that the Plan is not confirmed the Litigation Trust will not be established, and the Preference Settlement will be of no force and effect.

**If you timely, properly, and affirmatively opt in to the Preference Settlement by the Preference Settlement Opt-In Deadline** by completing and submitting a Preference Settlement Opt-In Form in accordance with the procedures set forth herein, you will **have consented to the**

4

96276-11

5

**releases contained in Section 13.5(b) of the Plan and be a Releasing Party and contributed your Direct Creditor Claims to the Litigation Trust.  This means you will be releasing claims against the "Released Parties" set forth in the Plan.  For your reference, the applicable release provisions and related definitions in the Plan are set forth in Exhibit 1.**

96276-11

**Preference Settlement Opt-In Form.**

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE DISCLOSURE STATEMENT AND THE PLAN, THE PREFERENCE SETTLEMENT, AND LITIGATION TRUST PROVISIONS THEREIN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**IF YOU OBJECT TO THE PLAN, CONFIRMATION ORDER, ANY RELATED SETTLEMENTS, OR RELIEF SOUGHT IN FURTHERANCE THEREOF, YOU WILL BE BARRED FROM PARTICIPATING IN THE PREFERENCE SETTLEMENT AND ANY ELECTION YOU MAKE IN <u>ITEM 1</u> BELOW TO OPT IN TO THE PREFERENCE SETTLEMENT WILL NOT BE COUNTED.**

**Item 1.        Election.**

**PURSUANT TO THE PLAN AND PREFERENCE SETTLEMENT, IF YOU TIMELY, PROPERLY, AND AFFIRMATIVELY OPT IN, YOU, IN EXCHANGE FOR PARTICIPATING IN, AND RECEIVING THE BENEFITS OF, THE PREFERENCE SETTLEMENT (I) CONSENT TO THE RELEASE PROVISIONS IN <u>SECTION 13.5(b)</u> OF THE PLAN (WHICH ARE SUMMARIZED ON <u>EXHIBIT 1</u>, AND (II) CONTRIBUTE YOUR DIRECT CREDITOR CLAIMS TO THE LITIGATION TRUST.**

**By checking the box below, the undersigned holder, having received notice of the opportunity to opt in to the Preference Settlement:**

☐ **Elects to <u>OPT IN</u> to the Preference Settlement.**

**Item 2.        Certifications**.

By signing this Preference Settlement Opt-In Form, the undersigned certifies that:

a.    as of the Preference Settlement Record Date, either the undersigned is: (i) a Trade Creditor, Supply Chain Financer, or Factor holding Claims against one or more FBG Debtor; or (ii) is an authorized signatory for an entity that is a Trade Creditor, Supply Chain Financer, or Factor holding Claims against one or more FBG Debtor;

b.    the undersigned has received a copy of this Preference Settlement Opt-In Form; and

c.    no other Preference Settlement Opt-In Form has been submitted with respect to the holder's Claims, or if any other Preference Settlement Opt-In Forms have been submitted with respect to such Claims, then any such earlier Preference Settlement Opt-In Forms are hereby revoked.

Name of Holder:        _____

                       (*print or type*)

6

96276-11

Signature: _____

Name of Signatory: _____
(*if other than Holder, include name and title*)

Title: _____

Address: _____

_____

_____

E-mail Address: _____

Date Completed: _____

**IF YOU WISH TO OPT IN TO THE PREFERENCE SETTLEMENT, PLEASE COMPLETE, SIGN, AND DATE THIS PREFERENCE SETTLEMENT OPT-IN FORM AND RETURN IT TO KROLL VIA *JUST ONE* OF THE FOLLOWING METHODS SO THAT IT IS *ACTUALLY RECEIVED* BY KROLL ON OR BEFORE THE PREFERENCE SETTLEMENT OPT-IN DEADLINE:**

| **To Submit Your Preference Settlement Opt-In Form Via Online Portal** |
| --- |
| To submit your Preference Settlement Opt-In Form via Kroll's Online Portal, visit https://restructuring.ra.kroll.com/FirstBrands.  Click on the "**Submit E-Ballot**" section of the website and follow the instructions to submit your Preference Settlement Opt-In Form.<br><br>IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Preference Settlement Opt-In Form:<br><br>    **Unique E-Election Form ID#:** _____<br><br>The Online Portal is the sole manner in which your Preference Settlement Opt-In Form will be accepted via electronic or online transmission. Preference Settlement Opt-In Forms submitted by facsimile, email or other means of electronic transmission will not be valid.  Any Preference Settlement Opt-In Form submitted through the Online Portal will be deemed to contain an electronic holder signature that is immediately legally valid and effective.<br><br>Please complete and submit an electronic Preference Settlement Opt-In Form for each Unique E-Election ID# you receive, as applicable.  Holders who cast a Preference Settlement Opt-In Form using the Online Portal should NOT also submit a paper copy of their Preference Settlement Opt-In Form. |

96276-11

**To Submit Your Preference Settlement Opt-In Form Via Paper Copy**

To submit your election via a paper Preference Settlement Opt-In Form, complete <u>Item 1 and Item 2</u> above and submit your paper Preference Settlement Opt-In Form in the pre-addressed, pre-paid return envelope provided, or otherwise, by first-class mail, hand delivery, or overnight courier to:

First Brands Group, LLC Ballot Processing
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Preference Settlement Opt-In Form, please email Kroll at FirstBrandsBallots@ra.kroll.com (with "First Brands Preference Settlement Opt-In Form Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

96276-11

**Exhibit 1**

**Release, Exculpation, Plan Injunction**

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

If you (i) vote to accept the Plan and opt in to the granting the releases set forth in the Plan, (ii) are presumed to accept the Plan and opt in to granting the releases set forth in the Plan, (iii) vote to reject the Plan and opt in to granting the releases set forth in the Plan, (iv) are solicited to vote to accept or reject the Plan but do not vote to accept or reject the Plan and opt in to granting the releases set forth in the Plan, (v) receive the Preference Settlement Election Form and opt in to granting the releases set forth in the Plan, or (vi) are a holder of a DIP A Claim and are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting the releases set forth in the Plan, you will have consented to the releases contained in Section 13.5(b) of the Plan.  The releases as presented in the Plan are provided below:

**SECTION 13.4          PLAN INJUNCTION.**

(a)          Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, Representatives, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date, including, for the avoidance of doubt, exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims.

(b)          Except as otherwise expressly provided in the Plan, or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to the Plan, including under Section 13.5(a) or Section 13.5(b) of the Plan, or (ii) subject to exculpation pursuant to Section 13.6 of the Plan, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 13.6 of the Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account or in connection with or with

2

respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the FBG Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the FBG Debtors as of the Effective Date;  (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan and Confirmation Order, to the full extent permitted by applicable law; (F) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan, including pursuant to Section 13.5(a) or Section 13.5(b) of the Plan; and (G) exercising control, or attempting to exercise control, over the Litigation Trust Assets, including the Estate Claims; *provided* that such Persons that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, the Debtors or their Estates shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

(c)     Subject in all respects to Section 14.1 of the Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order; the funding of the Plan; the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy

3

Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not been exculpated under the Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been exculpated and, only to the extent legally permissible and as provided for in <u>Section 14.1</u> of the Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action. For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

(d)      As of the Effective Date, all Persons other than the Litigation Trust are permanently enjoined from commencing, conducting, or continuing, directly or indirectly, any litigation or prosecution of an Estate Claim (including in any proceeding in a judicial, arbitral, administrative, or other forum). If any Person other than the Litigation Trust commences, conducts, or continues litigation or prosecution of an Estate Claim without a prior determination by the Bankruptcy Court that the claim or cause of action is not an Estate Claim, the Litigation Trust shall be entitled to make an emergency application to the Bankruptcy Court for a determination that such claim or Cause of Action is an Estate Claim and that the injunction has been violated. Upon such determination, damages may be awarded in the amount of attorneys' fees and other litigation costs and expenses incurred by the Litigation Trust. For the avoidance of doubt, no Person other than the Litigation Trust (including a defendant in such action) is entitled to enforce <u>Section 13.4(d)</u>

(e)      The injunctions in <u>Section 13.4</u> shall extend to any successors of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust and the Litigation Trustee, the DIP Collateral Trust and the DIP Collateral Trustee, and the ABL Collateral Trust and the ABL Collateral Trustee and each of their respective property and interests in property.

(f)      FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

**SECTION 13.5      RELEASES.**

(a)      Releases by the FBG Debtors and their Estates. Except as otherwise expressly set forth below in <u>Section 13.5</u>, notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Confirmation Date and Effective Date, as applicable, the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to

4

96276-11

section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the FBG Debtors or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the FBG Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Confirmation Date or Effective Date, as applicable, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Confirmation Date or Effective Date, as applicable.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(a) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party; *provided* that the foregoing exception for Claims and Causes of Action arising from an act or omission that constitutes gross negligence or willful misconduct shall not preserve or retain any Claim or Cause of Action for breach of fiduciary duty against a Released Party, (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive

5

Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (c) prior to the Effective Date, any post-Confirmation Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order, (d) any Intercompany Claims against the FBG Debtors, which, for the avoidance of doubt, shall be treated in accordance with Section 4.8 of the Plan, or (e) any Claims in respect of the U.S. Bank Obligations; *provided* that, for the avoidance of doubt, the releases granted under Section 13.5(a) are binding on successors to the FBG Debtors.

(b)     **Third-Party Releases.**  Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the FBG Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Administrator; the Claims Ombudsman; the Litigation Trust; the Litigation Trustee; the DIP Collateral Trust; the DIP Collateral Trustee; the ABL Collateral Trust; the ABL Collateral Trustee; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the FBG Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the FBG Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the FBG Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the FBG Debtors; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of the Plan (including the Plan Supplement) and the transactions contemplated by the Confirmation Order (including the formation of the Litigation Trust, DIP Collateral Trust, and the ABL Collateral Trust and the issuance of the Litigation Trust Interests, DIP Collateral Trust Interests, and ABL Collateral Trust Interests); the funding of the Plan; the administration and implementation of the Plan or the Confirmation Order, including the distribution of property under the Plan;

6

or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in Section 13.5(b) shall not be construed as releasing (a) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted gross negligence, willful misconduct, or actual fraud committed by such Released Party, or (b) any post-Effective Date obligations of any Person under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the transactions contemplated by the Confirmation Order.  Nothing contained in the Plan, nor the release of any claims pursuant to the Plan, is evidence of the merit, or lack of merit, of the Claims or Causes of Action released under the Plan.

(c)      FOR THE AVOIDANCE OF DOUBT NONE OF THE SPECIFIED NON-RELEASED PARTIES SHALL BE RELEASED PARTIES UNDER THE PLAN. THE RELEASING PARTIES ARE HEREBY PRESERVING AND TRANSFERRING, VESTING, AND/OR SELLING TO THE LITIGATION TRUST AND NOT RELEASING ANY SUCH CLAIMS AND CAUSES OF ACTION (INCLUDING ANY ESTATE CLAIMS) WHICH CAN AND MAY BE BROUGHT BY THE LITIGATION TRUST.

(d)      NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, ANY CLAIM OF AN FBG DEBTOR AGAINST (I) AN SPV DEBTOR OR (II) AN AFFILIATE OR SUBSIDIARY OF AN FBG DEBTOR, SHALL NOT BE RELEASED UNDER THE PLAN.

SECTION 13.6      EXCULPATION.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION BASED ON, RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PETITION DATE THROUGH THE EFFECTIVE DATE: THE DEBTORS (INCLUDING THE GOVERNANCE, MANAGEMENT, DIRECT OR INDIRECT OWNERSHIP, TRANSACTIONS WITH, OR OPERATION THEREOF) OR THEIR ESTATES; THE WIND DOWN ADMINISTRATOR; THE CLAIMS OMBUDSMAN; THE LITIGATION TRUST; THE LITIGATION TRUSTEE; THE DIP COLLATERAL TRUST; THE DIP COLLATERAL TRUSTEE; THE ABL COLLATERAL TRUST; THE ABL COLLATERAL TRUSTEE;  THE CHAPTER 11 CASES (INCLUDING THE FILING AND ADMINISTRATION THEREOF); THE WIND DOWN; THE DISCLOSURE STATEMENT; THE DIP ORDER; THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY OF THE OTHER DEFINITIVE DOCUMENTS; ANY OTHER DEBT OR SECURITY OF THE DEBTORS AND THE OWNERSHIP THEREOF; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY DEBT

7

**OR SECURITY OF THE DEBTORS; THE BUSINESS OR CONTRACTUAL OR OTHER ARRANGEMENTS OR OTHER INTERACTIONS BETWEEN ANY DEBTOR AND ANY EXCULPATED PARTY; THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES OR ON THE EFFECTIVE DATE; ANY INTERCOMPANY OBLIGATIONS, TRANSACTIONS, OR TRANSFERS; THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, SOLICITATION, FILING, CONFIRMATION, AND CONSUMMATION OF THE PLAN (INCLUDING THE PLAN SUPPLEMENT) AND THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION ORDER (INCLUDING THE FORMATION OF THE LITIGATION TRUST, DIP COLLATERAL TRUST, AND THE ABL COLLATERAL TRUST AND THE ISSUANCE OF THE LITIGATION TRUST INTERESTS, DIP COLLATERAL TRUST INTERESTS, AND ABL COLLATERAL TRUST INTERESTS); THE FUNDING OF THE PLAN; THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR CONFIRMATION ORDER, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN; OR ANY OTHER AGREEMENT, ACT OR OMISSION, TRANSACTION, TRANSFER, EVENT, OR OTHER OCCURRENCE RELATED TO THE FOREGOING AND, IN EACH INSTANCE, SOLELY TO THE EXTENT THAT SUCH CAUSE OF ACTION TOOK PLACE FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATIONS IN SECTION 13.6 SHALL NOT RELEASE OR EXCULPATE (A) ANY EXCULPATED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ACTUAL FRAUD COMMITTED BY SUCH EXCULPATED PARTY, OR (B) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY DEFINITIVE DOCUMENT, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means each of the following in their capacity as such: (i) the FBG Debtors; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of the FBG Debtors; and (iv) the Creditors' Committee and each of its members in their official capacity.

*Released Parties* means collectively, and in each case solely in their capacities as such, (i) the FBG Debtors and their Estates; (ii) Neal Goldman, William Transier, and Benjamin Duster, in their capacities as members of one or more of the Special Committees; (iii) Neal Goldman and William Transier, in their capacities as the Independent Managers of one or more of the FBG Debtors; (iv) the Specified Executives; (v) the Professionals; (vi) the Creditors' Committee and each of its members; (vii) the Ad Hoc Group and members thereof, including the Ad Hoc Group SteerCo; (viii) the DIP Secured Parties; (ix) the Prepetition Secured Parties; (x) the ABL Parties; (xi) the Litigation Trust Backstop Parties; (xii) the Litigation Trust Class 1 Funding Contributors and the DIP Collateral Trust Funding Contributors; and (xiii) solely with respect to

8

each of the foregoing Persons in clauses (vii) – (xii), their Affiliates and Representatives; *provided* that, notwithstanding anything in the Plan to the contrary, and for the avoidance of doubt, no Specified Non-Released Party shall be a Released Party and no Estate Claims shall be released against any Specified Non-Released Party; *provided further* that any Person that is given the opportunity to grant the releases set forth in the Plan and does not grant such releases shall not be a Released Party.

*Releasing Parties* means, collectively: (i) the holders of all Claims that vote to accept the Plan and opt in to granting the releases set forth in the Plan; (ii) the holders of all Claims that are presumed to accept the Plan and opt in to granting the releases set forth in the Plan; (iii) the holders of all Claims that vote to reject the Plan, but opt in to granting the releases set forth in the Plan; (iv) the holders of all Claims whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, but opt in to granting the releases set forth in the Plan; (v) the Persons that receive the Preference Settlement Opt-In Form and opt in to granting the releases set forth in the Plan; and (vi) the holders of DIP A Claims that are given notice of the ability to opt in to granting the releases set forth in the Plan and opt in to granting such releases. For the avoidance of doubt, none of the Debtors (including SPV Debtors) shall be Releasing Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**Exhibit H**

Exhibit H
CHN Only Service List
Served via First-Class Mail

| Address ID | Name | Address 1 | Address 2 | Address 3 | City | State | Postal Code |
|---|---|---|---|---|---|---|---|
| 31387826 | Celanese Polymer Products, LLC | Attn: Brandon Ayache | 222 W. Las Colinas Blvd. | Suite 900N | Irving | TX | 75039 |
| 31406812 | KW Plastics Recycling | P. O. Box 707 | | | Troy | AL | 36081 |
| 31405083 | McMaster-Carr Supply Co | 600 N County Line Rd | | | Elmhurst | IL | 60126-2081 |
| 31387852 | Relex Logistics Inc | 7720 S Cass Ave 110 | | | Darien | IL | 60561 |
| 31387856 | Ticona Polymers Inc. | Attn: Brandon Ayache | 222 W. Las Colinas Blvd. | Suite 900N | Irving | TX | 75039 |

In re: First Brands Group, LLC, et al.
Case No. 25-90399 (CML)

Page 1 of 1

**Exhibit I**

Exhibit I
Class 7 Service List
Served via First-Class Mail

| Address ID | Name | Address 1 | Address 2 | Address 3 | City | State | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 31405286 | Air Dynamics Testing | 150 W Clinton st | | | Danville | IN | 46168 | |
| 31404574 | Armstrong Asia Technology Co., Ltd. | Pantiwa Ployprom | Wellgrow Industrial Estate 103/3 Moo 5 | Bangsamak, Bangpakong | Chachoengsao | | 24130 | Thailand |
| 31405869 | Axon US CORP | 50 West 47th Street | Suite 1806 | | New York | NY | 10036 | |
| 31407398 | Banyan Technology, Inc. | 19933 Lake Road | | | Rocky River | OH | 44116 | |
| 31386143 | Bender Communications, Inc. | 1541 Harding Hwy E | | | Marion | OH | 43302 | |
| 31405049 | BME Services | 1760 Lakeland Park Drive | 11005 State Route 128 | | Burlington | KY | 41005 | |
| 31405705 | Cabay & Company, Inc. | 4559 Prime Pkwy | | | Mchenry | IL | 60050 | |
| 31387877 | Celanese Polymer Products, LLC | Attn: Brandon Ayache | 222 W. Las Colinas Blvd. | Suite 900N | Irving | TX | 75039 | |
| 31387867 | Celanese Polymer Products, LLC | Attn: Brandon Ayache | 222 W. Las Colinas Blvd. | Suite 900N | Irving | TX | 75039 | |
| 31405012 | Corcentric, LLC | 200 Lake Drive East, Suite #200 | | | Cherry Hill | NJ | 08002 | |
| 31405004 | Corcentric, LLC | 200 Lake Drive East Suite #200 | | | Cherry Hill | NJ | 08002 | |
| 31405006 | Corcentric, LLC | 200 Lake Drive East, Suite 200 | | | Cherry HIll | NJ | 08002 | |
| 31404978 | Corcentric, LLC | 200 Lake Drive East, Ste. 200 | | | Cherry Hill | NJ | 08002 | |
| 31384050 | Corrugados de Baja California, S. de R.L. de C.V. and affiliates | Bailey & Glasser LLP | Jonathan Gold | 1055 Thomas Jefferson Street NW, #540 | Washington | DC | 20007 | |
| 31384053 | Corrugados de Baja California, S. de R.L. de C.V. and affiliates | Bailey & Glasser LLP | Jonathan Gold | 1055 Thomas Jefferson Street NW, #540 | Washington | DC | 20007 | |
| 31404988 | Costco Wholesale Canada Ltd. | Andy Morton | 605 5th Ave S | Ste 900 | Seattle | WA | 98104 | |
| 31404991 | Costco Wholesale Canada Ltd. | Andy Morton | 605 5th Ave S | Ste 900 | Seattle | WA | 98104 | |
| 31404985 | Costco Wholesale Corporation | Andy Morton | 605 5th Ave S | Ste 900 | Seattle | WA | 98104 | |
| 31404980 | Costco Wholesale Corporation | Andy Morton | 605 5th Ave S | Ste 900 | Seattle | WA | 98104 | |
| 31423655 | CT Corporation | 28 Liberty Street | PO Box 4349 | | New York | NY | 10005 | |
| 31404983 | Delta College | Attn: Jill Mulders | 1961 Delta Rd. | | University Center | MI | 48710 | |
| 31405054 | Derby Fabricating Solutions LLC | c/o Christina Combs | 4500 Produce Rd | | Louisville | KY | 40218 | |
| 31384305 | Epsilon Data Management, LLC | Attn: Tabitha Thomann, Senior Legal Counsel | 6021 Connection Drive | | Irving | TX | 75039 | |
| 31384323 | Epsilon Data Managment, LLC | Attn: Tabitha Thomann, Senior Counsel | 6021 Connection Drive | | Irving | TX | 75039 | |
| 31423814 | Estes Express Lines | Attn: Thomas Parrett - Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31423694 | Estes Express Lines | Attn: Thomas Parrett -Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31423685 | Estes Express Lines | Attn: Thomas Parrett - Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31407434 | Estes Express Lines | Attn: Thomas Parrett - Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31407382 | Estes Express Lines | Attn: Thomas Parrett - Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31405278 | Flannigan, Seanpaul Drew | ADDRESS ON FILE | | | | | | |
| 31405752 | Freight Tec Management Group, Inc. | c/o Skoubye Nielson Johansen & Baxter, LLC | 999 East Murray Holladay Rd., Ste. 200 | | Salt Lake City | UT | 84117 | |
| 31407051 | Gentex Corporation | 600 N. Centennial Street | | | Zeeland | MI | 49464 | |
| 31384310 | George E. Booth Co., LLC | 535 E. Worthsville Road | | | Greenwood | IN | 46143 | |
| 31386245 | Hickman, Williams & Company | 250 East Fifth Street | Suite 300 | | Cincinnati | OH | 45202 | |
| 31407321 | J.V. Equipment, Inc. | 2421 S. Expressway 281 | | | Edinburg | TX | 78542 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn:  Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |

In re: First Brands Group, LLC, et al.
Case No. 25-90399 (CML)

Page 1 of 3

Exhibit I
Class 7 Service List
Served via First-Class Mail

| Address ID | Name | Address 1 | Address 2 | Address 3 | City | State | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |

Exhibit I
Class 7 Service List
Served via First-Class Mail

| Address ID | Name | Address 1 | Address 2 | Address 3 | City | State | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31318306 | Katsumi Servicing, LLC | Attn: Shoichi Koshimizu | 70 East 55th Street, 22nd Floor | | New York | NY | 10022 | |
| 31423632 | Kawasaki Motors Corp., U.S.A. | c/o Audrey L. Hornisher | Clark Hill PLC | 901 Main Street, Suite 6000 | Dallas | TX | 75202 | |
| 31423913 | Lowa Mold & Engineering Inc. DBA DY-NA Tool and Mold | 401 3rd St. | | | Belle Plaine | IA | 52208 | |
| 31404737 | Marbach America Inc. | 620 South tryon Street, Attention To: Chip Ford | Suite 800 | | Charlotte | NC | 28202 | |
| 31384176 | Massachusetts Dept. of Unemployment Assistance | Legal Dept. | 100 Cambridge Street | Suite 400 | Boston | MA | 02114 | |
| 31405087 | McMaster-Carr Supply Co | 600 N County Line Rd | | | Elmhurst | IL | 60126-2081 | |
| 31423852 | Multi Parts Supply USA, LLC | 1649 Park Lane South | | | Jupiter | FL | 33458 | |
| 31386249 | Pallet Partners of America | Jeffrey Elser | Brake Parts Bankruptcy | 2604 N Chapel Hill Rd | Johnsburg | IL | 60051 | |
| 31405275 | Peggram, Kimberley Dawn | ADDRESS ON FILE | | | | | | |
| 31404750 | Rexford Industrial - 14421 Bonelli, LLC | Attn to: Taylor F. Duncan | 655 West Broadway | Suite 800 | San Diego | CA | 92101 | |
| 31405844 | Rocket Software, Inc. | 77 Fourth Avenue | | | Waltham | MA | 02451-1468 | |
| 31384436 | Rocket Software, Inc. | 77 Fourth Avenue | | | Waltham | MA | 02451-1468 | |
| 31405665 | Rothkopf & Associates, Inc. | 555 Spirit of St. Louis Blvd | | | Chesterfield | MO | 63005 | |
| 31405667 | Rothkopf & Associates, Inc. | 555 Spirit of St. Louis Blvd | | | Chesterfield | MO | 63005 | |
| 31384171 | Shop Supply Service, Ltd | 300 East Crawford St | | | Findlay | OH | 45840 | |
| 31385655 | Smurfit Kappa North America LLC and affiliates | Bailey & Glasser LLP | Jonathan Gold | 1055 Thomas Jefferson Street NW | Washington | DC | 20007 | |
| 31385652 | Smurfit Kappa North America LLC and affiliates | Bailey & Glasser LLP | Jonathan Gold | 1055 Thomas Jefferson Street NW | Washington | DC | 20007 | |
| 31384524 | Smurfit Kappa North America LLC and affiliates | Bailey & Glasser LLP | Jonathan Gold | 1055 Thomas Jefferson Street NW | Washington | DC | 20007 | |
| 31384312 | Smurfit Kappa North America LLC and affiliates | Bailey & Glasser LLP | Jonathan Gold | 1055 Thomas Jefferson Street NW | Washington | DC | 20007 | |
| 31384302 | Smurfit Kappa North America LLC and affiliates | Bailey & Glasser LLP | Jonathan Gold | 1055 Thomas Jefferson Street NW | Washington | DC | 20007 | |
| 31384299 | Smurfit Kappa North America LLC and affiliates | Bailey & Glasser LLP | Jonathan Gold | 1055 Thomas Jefferson Street NW | Washington | DC | 20007 | |
| 31384289 | Smurfit Kappa North America LLC and affiliates | Bailey & Glasser LLP | Jonathan Gold | 1055 Thomas Jefferson Street NW | Washington | DC | 20007 | |
| 31384106 | Smurfit Kappa North America LLC and affiliates | Bailey & Glasser LLP | Jonathan Gold | 1055 Thomas Jefferson Street NW | Washington | DC | 20007 | |
| 31384109 | Smurfit Kappa North America LLC and affiliates | Bailey & Glasser LLP | Jonathan Gold | 1055 Thomas Jefferson Street NW | Washington | DC | 20007 | |
| 31384112 | Smurfit Kappa North America LLC and affiliates | Bailey & Glasser LLP | Jonathan Gold | 1055 Thomas Jefferson Street NW | Washington | DC | 20007 | |
| 31384341 | Team Marketing LLC | 2440 Plainfield Ave NE | | | Grand Rapids | MI | 49505 | |
| 31384056 | Three M Tool & Machine, Inc. | 8155 Richardson Rd | | | Commerce Twp | MI | 48390 | |
| 31387862 | Ticona Polymers Inc. | Attn: Brandon Ayache | 222 W. Las Colinas Blvd. | Suite 900N | Irving | TX | 75039 | |
| 31406958 | Valeo North America Inc. | 150 Stephenson Hwy | | | Troy | MI | 48083 | |
| 31387924 | Vestis Services, LLC fka Aramark Uniform & Career | Hawley Troxell Ennis & Hawley LLP | c/o Devin G. Bray | P.O. Box 1617 | Boise | ID | 83701-1617 | |
| 31385663 | Victory Packaging, L.P. and affiliates | Jonathan Gold | Bailey & Glasser LLP | 1055 Thomas Jefferson Street, N.W., #540 | Washington | DC | 20007 | |
| 31385670 | Victory Packaging, L.P. and affiliates | Jonathan Gold | Bailey & Glasser LLP | 1055 Thomas Jefferson Street, N.W., #540 | Washington | DC | 20007 | |
| 31385824 | Vulcan Enterprises, Inc. | 2600-D State Route 568 | | | Carey | OH | 43316 | |
| 31385817 | Wenzhou Hoya Import & Export Trading Co.,Ltd | No.288, Dongsan Road, Gaoxin Industrial Zone | Nanbin Community | | Ruian, Zhejiang | | 325200 | China |
| 31385677 | WestRock Converting LLC and affiliates | Jonathan Gold | Bailey & Glasser LLP | 1055 Thomas Jefferson Street, N.W., #540 | Washington | DC | 20007 | |
| 31385682 | WestRock Converting LLC and affiliates | Jonathan Gold | Bailey & Glasser LLP | 1055 Thomas Jefferson Street, N.W., #540 | Washington | DC | 20007 | |
| 31385792 | WOOSHIN INDUSTRIES CO., LTD. | 68-54, SEOBU-RO 1499BEON-GIL | JUCHON-MYUN | | GIMHAE-SI, GYEONGSANGNAM-DO | | 50877 | SOUTH KOREA |
| 31407184 | WWEX Franchise Holdings LLC | 2700 Commerce St | Ste 1500 | | Dallas | TX | 75226 | |
| 31405969 | ZHEJIANG HENKO AUTO SPARE PARTS CO., LTD. | Brown & Joseph, LLC c/o Peter Geldes | PO Box 249 | | Itasca | IL | 60143 | |

In re: First Brands Group, LLC, et al.
Case No. 25-90399 (CML)

Page 3 of 3

**Exhibit J**

Exhibit J
Non-Voting Service List
Served via First-Class Mail

| Address ID | Name | Address 1 | Address 2 | City | State | Postal Code |
|---|---|---|---|---|---|---|
| 31384287 | Burns, Patrick Brian | ADDRESS ON FILE | | | | |
| 31423839 | Goforth, Lori | ADDRESS ON FILE | | | | |
| 31385750 | Locker, Eva Miranda | ADDRESS ON FILE | | | | |
| 31384280 | Massachusetts Dept. of Unemployment Assistance | Legal Dept. | 100 Cambridge Street | Boston | MA | 02114 |
| 31405578 | Tierney Industrial Warehouse Inc. | c/o Michael P. O'Hara | 215 E. Berry Street | Fort Wayne | IN | 46802 |

In re: First Brands Group, LLC, et al.
Case No. 25-90399 (CML)                                      Page 1 of 1

**Exhibit K**

Exhibit K
Second Class 7 Service List
Served via First-Class Mail

| Address ID | Name | Address 1 | Address 2 | Address 3 | City | State | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 30855592 | Cequent Nederland Holdings B.V. | Zekeringstraat 42 | | | Amsterdam | | 1014 | Netherlands |
| 31383952 | Evolution Credit Opportunity Master Fund II-B, L.P. | Attn: Lisa Schwarzberg | 28 State Street | 28th Floor | Boston | MA | 02109 | |
| 31383980 | Evolution Credit Opportunity Master Fund II-B, L.P. | Attn: Lisa Schwarzberg | 28 State Street | 28th Floor | Boston | MA | 02109 | |
| 31383976 | Evolution Credit Partners | Attn: Lisa Schwarzberg | 28 State Street, 28th Floor | | Boston | MA | 02109 | |
| 31380108 | Fasanara Securitization S.A. acting in respect of its Compartment BW | 17, boulevard F.W. Raiffeisen | Grand Duchy of Luxembourg | | Luxembourg | | L-2411 | Luxembourg |
| 31380113 | Fasanara Securitization S.A. acting in respect of its Compartment BW | 17, boulevard F.W. Raiffeisen | Grand Duchy of Luxembourg | | Luxembourg | | L - 2411 | Luxembourg |
| 31380155 | Fasanara Securitization S.A. acting in respect of its compartment BW | 17, boulevard F.W. Raiffeisen | Grand Duchy of Luxembourg | | Luxembourg | | L-2411 | Luxembourg |
| 31380243 | Fasanara Securitization S.A. acting in respect of its Compartment BW | 17, boulevard F.W. Raiffeisen | Grand Duchy of Luxembourg | | Luxembourg | | L-2411 | Luxembourg |
| 31380261 | Fasanara Securitization S.A. acting in respect of its Compartment BW | 17, Boulevard F.W. Raiffeisen | | | Luxembourg | | L-2411 | Luxembourg |
| 31380285 | Fasanara Securitization S.A. acting in respect of its Compartment BW | 17, Boulevard F.W. Raiffeisen, L - 2411 | | | Luxembourg | | W1F7TU | Luxembourg |
| 31380250 | Fasanara Securitization S.A. acting in respect of its Compartment BW | 17, boulevard F.W. Raiffeisen, L - 2411 | | | Luxembourg | | L-2411 | Grand Duchy of Luxembourg |

**Exhibit L**

Exhibit L
Preference Settlement Service List
Served via First-Class Mail

| Address ID | Name | Address 1 | Address 2 | City | State | Postal Code | Country |
|---|---|---|---|---|---|---|---|
| 31452596 | ACS FB LLC | 1202 MONTE VISTA AV. | #20 | UPLAND | CA | 91786 | |
| 31452597 | ATLANTIC CAPITAL BANK | 1101 FIRST STREET SOUTH | SUITE 202 | WINTER HAVEN | FL | 33880 | |
| 31452598 | BANKUNITED N.A. | 14817 OAK LANE | | MIAMI LAKES | FL | 33016 | |
| 31452599 | CEDAR GROVE HOLDINGS LTD. | F4 FAREHAM HEIGHTS | STANDARD WAY | FAREHAM | | PO16 8XT | UNITED KINGDOM |
| 31452583 | CREDIT AGRICOL | 12 PLACE DES ETATS-UNIS | 92545 MONTROUGE CEDEX | | | | FRANCE |
| 31452600 | D-STAR LTD | 30/2 ARTHUR STREET | LEITH | EDINBURGH | | EH6 5DD | UNITED KINGDOM |
| 31452601 | ECO II SPV LLC | 2000 AVENUE OF THE STARS | 12TH FLOOR | LOS ANGELES | CA | 90067 | |
| 31452602 | ELLINGTON INCOME OPPORTUNITIES FUND | 8000 NORMAN CENTER DRIVE | SUITE 630 | MINNEAPOLIS | MN | 55437 | |
| 31452605 | ELLINGTON OPPORTUNITIES MAIN MASTER FUND LP | 8000 NORMAN CENTER DRIVE | SUITE 630 | MINNEAPOLIS | MN | 55437 | |
| 31452606 | REGIONS | C/O OFFICE OF THE CORPORATE SECRETARY | 1900 FIFTH AVENUE NORTH | BIRMINGHAM | AL | 35203 | |
| 31452607 | SELECT ALTERNATIVE STRATEGIES II ICAV - UBS WORKING CAPITAL FINANCE OPPORTUNISTIC FUND (EU) | C/O UBS FUND MANAGEMENT (IRELAND) LIMITED | 1ST FLOOR, COLLEGE PARK HOUSE | DUBLIN 2 | | D02 YW57 | IRELAND |
| 31452609 | US BANK NA | ATTN: LAW DEPARTMENT / GENERAL COUNSEL | 800 NICOLLET MALL | MINNEAPOLIS | MN | 55402 | |
| 31452658 | VERCYFI | 6984 E 1ST AVENUE | | DENVER | CO | 80230 | |
| 31452659 | WHITE PINE CAPITAL LTD. | 3800 AMERICAN BLVD WEST | SUITE 645 | BLOOMINGTON | MN | 55431 | |
| 31452660 | WORTHY LENDING III, LLC | ONE BOCA COMMERCE CENTER | 551 NW 77 STREET | BOCA RATON | FL | 33487 | |
| 31452661 | YIELDSTREET PRISM FUND INC. | 300 PARK AVENUE | 15TH FLOOR | NEW YORK | NY | 10022 | |
| 31452662 | YS RAIS PBC L LLC | 300 PARK AVENUE | 15TH FLOOR | NEW YORK | NY | 10022 | |
| 31452663 | YS RAIS PBC XL LLC | 300 PARK AVENUE | 15TH FLOOR | NEW YORK | NY | 10022 | |
| 31452666 | YS RAIS PBC XLI LLC | 300 PARK AVENUE | 15TH FLOOR | NEW YORK | NY | 10022 | |
| 31452667 | YS RAIS PBC XLII LLC | 300 PARK AVENUE | 15TH FLOOR | NEW YORK | NY | 10022 | |
| 31452668 | YS RAIS PBC XLIII LLC | 300 PARK AVENUE | 15TH FLOOR | NEW YORK | NY | 10022 | |
| 31452674 | YS RAIS PBC XLIV LLC | 300 PARK AVENUE | 15TH FLOOR | NEW YORK | NY | 10022 | |
| 31452675 | YS RAIS PBC XLIX LLC | 300 PARK AVENUE | 15TH FLOOR | NEW YORK | NY | 10022 | |
| 31452676 | YS RAIS PBC XLV LLC | 300 PARK AVENUE | 15TH FLOOR | NEW YORK | NY | 10022 | |
| 31452678 | YS RAIS PBC XLVI LLC | 300 PARK AVENUE | 15TH FLOOR | NEW YORK | NY | 10022 | |
| 31452679 | YS RAIS PBC XLVII LLC | 300 PARK AVENUE | 15TH FLOOR | NEW YORK | NY | | |
| 31452680 | YS RAIS PBC XLVIII | 300 PARK AVENUE | 15TH FLOOR | NEW YORK | NY | 10022 | |
| 31452683 | ZENITH | UL. WIEJSKA 11/8 | 00-480 WARSZAWA | | | | POLAND |

In re: First Brands Group, LLC, et al.
Case No. 25-90399 (CML)

Page 1 of 1

**Exhibit M**

Exhibit M
Class 7 Email Service List
Served via Email

| Address ID | NAME | EMAIL |
|---|---|---|
| 30855592 | Cequent Nederland Holdings B.V. | bpaduraru@horizonglobal.com |
| 31383952 | Evolution Credit Opportunity Master Fund II-B, L.P. | lschwarzberg@evolutioncreditpartners.com |
| 31383980 | Evolution Credit Opportunity Master Fund II-B, L.P. | lschwarzberg@evolutioncreditpartners.com |
| 31383976 | Evolution Credit Partners | lschwarzberg@evolutioncreditpartners.com |
| 31380108 | Fasanara Securitization S.A. acting in respect of its Compartment BW | legal@fasanara.com |
| 31380113 | Fasanara Securitization S.A. acting in respect of its Compartment BW | legal@fasanara.com |
| 31380155 | Fasanara Securitization S.A. acting in respect of its compartment BW | Legal@fasanara.com |
| 31380243 | Fasanara Securitization S.A. acting in respect of its Compartment BW | Legal@fasanara.com |
| 31380261 | Fasanara Securitization S.A. acting in respect of its Compartment BW | Legal@fasanara.com |
| 31380285 | Fasanara Securitization S.A. acting in respect of its Compartment BW | Legal@fasanara.com |
| 31380250 | Fasanara Securitization S.A. acting in respect of its Compartment BW | Legal@fasanara.com |

In re: First Brands Group, LLC, et al.
Case No. 25-90399 (CML)

**Exhibit N**

Exhibit N
Third Class 7 Service List
Served via First-Class Mail

| Address ID | Name | Address 1 | Address 2 | Address 3 | City | State | Postal Code |
|---|---|---|---|---|---|---|---|
| 31058055 | U.S. Customs and Border Protection | Revenue Division, Bankruptcy Team | Attn: Mail Stop 203-Ja | 8899 E. 56th Street | Indianapolis | IN | 46249 |
| 31058074 | U.S. Customs and Border Protection | Revenue Division, Bankruptcy Team | Attn: Mail Stop 203-Ja | 8899 E. 56th Street | Indianapolis | IN | 46249 |
| 31057287 | United States of America | AUSA Tara Schwartz, U.S. Attorney's Office | 86 Chambers Street | 3rd Floor | New York | NY | 10007 |
| 31057292 | United States of America | AUSA Tara Schwartz-U.S. Attorney's Office | 86 Chambers St. | 3rd Floor | New York | NY | 10007 |
| 31057297 | United States of America | AUSA Tara Schwartz-U.S. Attorney's Office | 86 Chambers St. | 3rd Floor | New York | NY | 10007 |

In re: First Brands Group, LLC, et al.
Case No. 25-90399 (CML)

Page 1 of 1

**Exhibit O**

Exhibit O
Second Class 7 Email Service List
Served via Email

| Address ID | NAME | EMAIL |
|---|---|---|
| 31058055 | U.S. Customs and Border Protection | Bankruptcyteam@cbp.dhs.gov |
| 31058074 | U.S. Customs and Border Protection | Bankruptcyteam@cbp.dhs.gov |
| 31057287 | United States of America | tara.schwartz@usdoj.gov |
| 31057292 | United States of America | tara.schwartz@usdoj.gov |
| 31057297 | United States of America | tara.schwartz@usdoj.gov |

**Exhibit P**

Exhibit P
Second CHN Only Service List
Served via First-Class Mail

| Address ID | Name | Address 1 | Address 2 | Address 3 | City | State | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 31424463 | Akromold (Goderich) Limited | 501 Mooney Street | | | Goderich | ON | N7A 3X8 | Canada |
| 31440105 | Amazon Advertising LLC | Attention: Lauren Dorestt | Davis Wright Tremaine LLP | 920 Fifth Avenue, Suite 3300 | Seattle | WA | 98104 | |
| 31440151 | Amazon Advertising LLC | Attention:  Lauren Dorsett | Davis Wright Tremaine LLP | 920 Fifth Avenue, Suite 3300 | Seattle | WA | 98104 | |
| 31440159 | Amazon Advertising LLC | Davis Wright Tremaine LLP | Attn: Lauren Dorsett | 920 Fifth Avenue, Suite 3300 | Seattle | WA | 98104 | |
| 31440167 | Amazon Advertising LLC | Davis Wright Tremaine LLP | Attn: Lauren Dorsett | 920 Fifth Avenue, Suite 3300 | Seattle | WA | 98104 | |
| 31440188 | Amazon Advertising LLC | Davis Wright Tremaine LLP | Attn: Lauren Dorsett | 920 Fifth Avenue, Suite 3300 | Seattle | WA | 98104 | |
| 31440184 | Amazon Advertising LLC | Davis Wright Tremaine LLP | Attn: Lauren Dorsett | 920 Fifth Avenue, Suite 3300 | Seattle | WA | 98104 | |
| 31424136 | Arizona Department of Revenue | Office of the Arizona Attorney General - BCE | 2005 N Central Ave | Suite 100 | Phoenix | AZ | 85004 | |
| 31440697 | Camacho, Cesar | ADDRESS ON FILE | | | | | | |
| 31452375 | Consumers Energy Company | One Energy Plaza | | | Jackson | MI | 49201 | |
| 31453202 | Derby Fabricating Solutions LLC | 4500 Produce Road | | | Louisville | KY | 40218 | |
| 31453363 | Dominion Energy South Carolina | 220 Operation Way | MC - OSC1A Bankruptcy | | Cayce | SC | 29033 | |
| 31452713 | Philadelphia Water Logs, LLC | c/o Daniel S. Coval, Jr., Esquire | 15 St. Asaph's Road | | Bala Cynwyd | PA | 19004 | |
| 31453204 | Tarrant County | Linebarger Goggan Blair & Sampson, LLP | John K. Turner | 3500 Maple Avenue, Suite 800 | Dallas | TX | 75219 | |

**Exhibit Q**

Exhibit Q
Second Non-Voting Service List
Served via First-Class Mail

| Address ID | Name | Address 1 | City | State | Postal Code |
|---|---|---|---|---|---|
| 31439993 | Bryson, James Lawson | ADDRESS ON FILE | | | |
| 31452756 | Bodeman, Steven R | ADDRESS ON FILE | | | |
| 31453373 | Edwards County Collector | 50 E. Main Street, Suite No. 11 | Albion | IL | 62806 |

**Exhibit R**

Exhibit R
Fourth Class 7 Service List
Served via First-Class Mail

| Address ID | Name | Address 1 | Address 2 | Address 3 | City | State | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 31439981 | Abney, Tonita Sue | ADDRESS ON FILE | | | | | | |
| 31424474 | American Seal & Gasket | 1350 Lake Crescent dr | | | Bloomfield Hills | MI | 48302-2746 | |
| 31453284 | Andritz BCN, Inc | 5145 Beltway SE | | | Caledonia | MI | 49316 | |
| 31439977 | Bellar, Tina K. | ADDRESS ON FILE | | | | | | |
| 31440587 | Caliber Sealing Solutions, Inc. | 2780 Palisades Drive | | | Corona | CA | 92882 | |
| 31452358 | CL SINTER Co. Ltd | #54-21, Daegotbukro68beongil, | | | Gimpo-si, Gyeonggi-do | | 10038 | Rep of Korea |
| 31453274 | Comdata Inc. | c/o Sean C. Kirk, Pivot Legal | 100 Powell Place | Suite 1271 | Nashville | TN | 37204 | |
| 31424476 | CPE dba A1 Servomotor Repair | 3330 Stovall Street | | | Irving | TX | 75061 | |
| 31481691 | DAEWHA FUEL PUMP | Attn: Sales & Marketing Dept | 1219, AAM-DAERO | NAMDONG-GU | INCHEON-CITY | | 21689 | KOREA |
| 31440043 | Diroff, David William | ADDRESS ON FILE | | | | | | |
| 31440037 | Estes Express Lines | Attn: Thomas Parrett | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31440050 | Estes Express Lines | Attn: Thomas Parrett - Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31440048 | Estes Express Lines | Attn: Thomas Parrett - Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31440120 | Estes Express Lines | Attn: Thomas Parrett - Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31440558 | Estes Express Lines | Attn: Thomas Parrett Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31440627 | Estes Express Lines | Attn: Thomas Parrett - Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31453270 | Futai  LLC | 1363 Shermer Rd | Suite 322 | | Northbrook | IL | 60062 | |
| 31439995 | Lucky, Chris B | ADDRESS ON FILE | | | | | | |
| 31423860 | Multi Parts Supply USA, LLC | 1649 Park Lane South | | | Jupiter | FL | 33458 | |
| 31440687 | Navigators Insurance Company | Attn: Laura Maurer | 1450 American Lane | Suite 500 | Schaumburg | IL | 60173 | |
| 31452304 | NTT Data Americas, Inc. f/k/a NTT DATA, Inc. as successor in interest to Keane, Inc. | c/o Streusand, Landon, Ozburn & Lemmon, LL | 1801 South MoPac Expressway | Suite 320 | Austin | TX | 78746 | |
| 31440067 | Quality Tool Company | 577 Mel Simon Drive | | | Toledo | OH | 43612 | |
| 31424409 | Radiant Road & Rail, Inc. | Mark D. Herz | Fox Rothschild LLP | 49 Market Street | Morristown | NJ | 07960 | |
| 31424414 | Radiant Road & Rail, Inc. | Attn: Michael R. Herz | Fox Rothschild LLP | 49 Market Street | Morristown | NJ | 07960 | |
| 31424419 | Radiant Road & Rail, Inc. | c/o Michael Herz | Fox Rothschild LLP | 49 Market Street | Morristown | NJ | 07960 | |
| 31424450 | Radiant Road & Rail, Inc. | c/o Michael Herz | Fox Rothschild LLP | 49 Market Street | Morristown | NJ | 07960 | |
| 31424437 | Radiant Road & Rail, Inc. | c/o Michael Herz | Fox Rothschild LLP | 49 Market Street | Morristown | NJ | 07960 | |
| 31424453 | Radiant Road & Rail, Inc. | c/o Michael Herz | Fox Rothschild LLP | 49 Market Street | Morristown | NJ | 07960 | |
| 31424447 | Radiant Road & Rail, Inc. | c/o Michael Herz | Fox Rothschild LLP | 49 Market Street | Morristown | NJ | 07960 | |
| 31424442 | Radiant Road & Rail, Inc. | c/o Michael Herz | Fox Rothschild LLP | 49 Market Street | Morristown | NJ | 07960 | |
| 31424434 | Radiant Road & Rail, Inc. | c/o Michael Herz | Fox Rothschild LLP | 49 Market Street | Morristown | NJ | 07960 | |
| 31424468 | Radiant Road & Rail, Inc. | c/o Michael Herz | Fox Rothschild LLP | 49 Market Street | Morristown | NJ | 07960 | |
| 31424465 | Radiant Road & Rail, Inc. | c/o Michael Herz | Fox Rothschild LLP | 49 Market Street | Morristown | NJ | 07960 | |
| 31424471 | Radiant Road & Rail, Inc. | Fox Rothschild LLP | c/o Michael Herz | 49 Market Street | Morristown | NJ | 07960 | |
| 31453210 | TATA AUTOCOMP SYSTEMS LIMITED | TACO HOUSE, DAMLE PATH | OFF LAW COLLEGE ROAD | | PUNE, MAHARASHTRA | | 411004 | INDIA |
| 31424182 | Tobar, Inc. | 3315 N. Scott Drive | | | Columbus | IN | 47201 | |
| 31440800 | Uniloy, Inc. | Barnes & Thornburg LLP | Jonathan Sundheimer | 11 S. Meridian St. | Indianapolis | IN | 46204 | |
| 31453286 | Village of Fayette, Ohio | 102 W Main St. | PO Box 87 | | Fayette | OH | 43521 | |
| 31453292 | Village of Fayette, Ohio | 102 W Main St. | PO Box 87 | | Fayette | OH | 43521 | |

In re: First Brands Group, LLC, et al.
Case No. 25-90399 (CML)

Page 1 of 1

**Exhibit S**

Exhibit S
Claim 3 Email Service List
Served via Email

| Address ID | NAME | EMAIL |
|---|---|---|
| 31378604 | David Willsher & Anne Willsher ATF Willsher Family Superannuation Fund as Transferee of IFG North Am | EMAIL ON FILE |
| 31378598 | RMO MSF PTY LTD ATF Muirhead Family Superannuation Fund as Transferee of IFG North America LLC tradi | EMAIL ON FILE |
| 31378587 | Durham BDR LLC as Transferee of IFG North America LLC trading as The Interface Financial Group | EMAIL ON FILE |
| 31378612 | GS Financial Network Inc. as Transferee of IFG North America LLC trading as The Interface Financial | EMAIL ON FILE |
| 31378613 | Sharon Casey as Transferee of IFG North America LLC trading as The Interface Financial Group | EMAIL ON FILE |
| 31378571 | The Oslo Nevada Trust Barry D. Rudolph as Transferee of IFG North America, LLC trading as The Interf | EMAIL ON FILE |
| 31378605 | Thread Bank as Transferee of IFG North America LLC trading as The Interface Financial Group | EMAIL ON FILE |
| 31378614 | Tracy Fu as Transferee of IFG North America LLC trading as The Interface Financial Group | EMAIL ON FILE |

In re: First Brands Group, LLC, et al.
Case No. 25-90399 (CML)                          Page 1 of 1

**Exhibit T**

Exhibit T
Third Class 7 Email Service List
Served via Email

| Address ID | NAME | EMAIL |
|---|---|---|
| 31483484 | A&Q Metric SPC - Global Opportunistic II SP | jherz@orrick.com, nsabatino@orrick.com |
| 31483485 | Ellington Global Asset Management LLC | jherz@orrick.com, nsabatino@orrick.com |
| 31483492 | FB Holdings Ltd. | jherz@orrick.com, nsabatino@orrick.com |
| 31483491 | Ivy American Installment LLC | jherz@orrick.com, nsabatino@orrick.com |
| 31483489 | Ivy Evergreen Fund LP | jherz@orrick.com, nsabatino@orrick.com |
| 31483490 | Ivy Retail Finance LLC | jherz@orrick.com, nsabatino@orrick.com |
| 31483483 | Kili Purchasing LLC | jherz@orrick.com, nsabatino@orrick.com |
| 31483480 | Nineteen77 Global Multi-Strategy Alpha Master Limited | jherz@orrick.com, nsabatino@orrick.com |
| 31483480 | Nineteen77 Global Multi-Strategy Alpha Master Limited | jherz@orrick.com, nsabatino@orrick.com |
| 31483481 | Nineteen77 Working Capital Finance Opportunistic Fund Master Limited | jherz@orrick.com, nsabatino@orrick.com |
| 31483481 | Nineteen77 Working Capital Finance Opportunistic Fund Master Limited | jherz@orrick.com, nsabatino@orrick.com |
| 31483486 | SCFNA, LLC | jherz@orrick.com, nsabatino@orrick.com |
| 31483487 | SCFNC, LLC | jherz@orrick.com, nsabatino@orrick.com |
| 31483482 | Select Alternative Strategies II ICAV - UBS Working Capital Finance Opportunistic Fund (EU) | jherz@orrick.com, nsabatino@orrick.com |
| 31483482 | Select Alternative Strategies II ICAV - UBS Working Capital Finance Opportunistic Fund (EU) | jherz@orrick.com, nsabatino@orrick.com |
| 31483488 | TFC Holdings, Ltd. | jherz@orrick.com, nsabatino@orrick.com |

In re: First Brands Group, LLC, et al.
Case No. 25-90399 (CML)

**Exhibit U**

Exhibit U
Third CHN Only Service List
Served via First-Class Mail

| Address ID | Name | Address 1 | Address 2 | City | State | Postal Code |
|---|---|---|---|---|---|---|
| 31483037 | GLAS Trust Company LLC as administrative agent for the Carnaby II Secured Lenders | 3 Second Street | Suite 206 | Jersey City | NJ | 07311 |
| 31483040 | GLAS Trust Company LLC as administrative agent for the Carnaby II Secured Lenders | 3 Second Street | Suite 206 | Jersey City | NJ | 07311 |
| 31483073 | GLAS Trust Company LLC as administrative agent for the Carnaby II Secured Lenders | 3 Second Street | Suite 203 | Jersey City | NJ | 07311 |
| 31483047 | GLAS Trust Company LLC as administrative agent for the Carnaby II Secured Lenders | 3 Second Street | Suite 203 | Jersey City | NJ | 07311 |
| 31483071 | GLAS Trust Company LLC as administrative agent for the Carnaby II Secured Lenders | 3 Second Street | Suite 203 | Jersey City | NJ | 07311 |
| 31483058 | GLAS Trust Company LLC as administrative agent for the Carnaby III Secured Lenders | 3 Second Street | Suite 203 | Jersey City | NJ | 07311 |
| 31483068 | GLAS Trust Company LLC as administrative agent for the Carnaby III Secured Lenders | 3 Second Street | Suite 203 | Jersey City | NJ | 07311 |
| 31483065 | GLAS Trust Company LLC as administrative agent for the Carnaby III Secured Lenders | 3 Second Street | Suite 203 | Jersey City | NEW JERSEY | 07311 |
| 31483062 | GLAS Trust Company LLC as administrative agent for the Carnaby III Secured Lenders | 3 Second Street | Suite 203 | Jersey City | NJ | 07311 |
| 31483055 | GLAS Trust Company LLC as administrative agent for the Carnaby III Secured Lenders | 3 Second Street | Suite 203 | Jersey City | NEW JERSEY | 07311 |
| 31483052 | GLAS Trust Company LLC as administrative agent for the Carnaby III Secured Lenders | 3 Second Street | Suite 203 | Jersey City | NJ | 07311 |
| 31483452 | Tri County Tarp, LLC | PO Box 600 | | Bradner | OH | 43406 |

**Exhibit V**

Exhibit V
Fifth Class 7 Service List
Served via First-Class Mail

| Address ID | Name | Address 1 | Address 2 | Address 3 | City | State | Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| 31486806 | Affordable Fire Protection | 11732 Newton Rd | | | Bowling Green | OH | 43402 | |
| 31483594 | Aguilar, Lucerito Michaca | ADDRESS ON FILE | | | | | | |
| 31481913 | AIRGAS USA, LLC | C/O MEMORY APOSTOL | 3737 WORSHAM AVENUE | | LONG BEACH | CA | 90808 | |
| 31484260 | Bryan Cave Leighton Paisner LLP | Jarret P. Hitchings | One Wells Fargo Center | 301 S. College Street, Suite 2150 | Charlotte | NC | 28202 | |
| 31484118 | CAB assignee of Kunshan Suntech Tooling Co Ltd | 4340 Fulton Avenue, Third Fl. | | | Sherman Oaks | CA | 91423 | |
| 30744921 | Cal One Packaging Inc | 1311 Mountbatten Court | | | Concord | CA | 94518 | |
| 31483560 | COMPUTADORAS MEGACENTRO | 9 SUR | GABRIEL PASTOR | | PUEBLA | | 72420 | MEXICO |
| 31483521 | DQS Inc. | 1500 McConnor Parkway | Suite 400 | | Schaumburg | IL | 60173 | |
| 31482970 | DQS Inc. | 1500 McConnor Parkway | Suite 400 | | Schaumburg | IL | 60173 | |
| 31482575 | Easy Flyers USA Logistics Inc | 1110 Brickell Ave | Ste 700 | | Miami | FL | 33131 | |
| 31482789 | Estes Express Lines | Attn: Thomas Parrett - Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31483186 | Estes Express Lines | Attn: Thomas Parrett - Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31482931 | Estes Express Lines | Attn: Thomas Parrett - Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31482859 | Estes Express Lines | Attn: Thomas Parrett - Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31482797 | Estes Express Lines | Attn: Thomas Parrett - Credit Dept. | 3901 West Broad Street | | Richmond | VA | 23230 | |
| 31482972 | Freepoint Energy Solutions LLC | 3050 Post Oak Blvd | Ste 1330 | | Houston | TX | 77056 | |
| 31484587 | FUERZA, AUTOMATIZACION Y CONTROL DEL NORTE | AVE. DIVISION DEL NORTE No.13 COL. MODELO | | | H. MATAMOROS,TAMAULIPAS | | 87360 | MEXICO |
| 31483378 | GARCIA LAVARIEGA, JORGE YAHIR | ADDRESS ON FILE | | | | | | |
| 31482587 | Gem Dock and Door LLC | PO Box 29 | 710 W. Railroad St. | | Addison | IL | 60101 | |
| 31484342 | IMAT AUTOMOTIVE TECHNOLOGY SERVICES INC. | 1200 WOODRUFF ROAD, STE A16 | | | GREENVILLE | SC | 29607 | |
| 31484581 | Ingram Micro Services LLC | 257 West Genesee St | Suite 200 | | Buffalo | NY | 14202 | |
| 30761116 | International Chemical Company | 2628 N. Mascher Street | | | Philadelphia | PA | 19133 | |
| 31484808 | John M Gorman Company | ATTN:  Cindy Smith | 6617 N Ferguson Ave | | Indianapolis | IN | 46220 | |
| 31483468 | Keystone Components, Inc. | 2057 E. Aurora Road, Unit C | | | Twinsburg | OH | 44087 | |
| 31484501 | Labady, Andrew | ADDRESS ON FILE | | | | | | |
| 31483403 | Lacroix Electronics MI, LLC | 1655 Michigan St NE | Parque Industrial Rio Bravo | | Grand Rapids | MI | 49503 | |
| 31440828 | Lugabihl, Louise Kay | ADDRESS ON FILE | | | | | | |
| 31486834 | Magnolia Forest Products, Inc. | PO Box 321444 | | | Flowood | MS | 39232 | |
| 31483229 | Maumee Valley Group | 26896 State Route 281 | | | Defiance | OH | 43512 | |
| 31482573 | Meet the Millwrights LLC | 5395 W Montana Ln | | | Joplin | MO | 64801 | |
| 31483771 | MPS Group, Inc. | 38755 Hills Tech Drive | | | Farmington Hills | MI | 48331 | |
| 31484272 | NINGBO ELANTEAM INTERNATIONAL CO., LTD. | Brown & Joseph, LLC c/o Peter Geldes | PO Box 249 | | Itasca | IL | 60143 | |
| 31484756 | Ningbo Xiayu Imp. & Exp. Co., Ltd | Brown & Joseph, LLC | c/o Peter Geldes | PO Box 249 | Itasca | IL | 60143 | |
| 31483827 | Phocas Inc | 3100 Bristol Street | Suite 240 | | Costa Mesa | CA | 92626 | |
| 31487127 | Sandollar Security Services | 2306 HWY 35 N | | | Rockport | TX | 78382 | |
| 30687352 | Staples | Attn: Shane Anderson | PO Box 102419 | | Columbia | SC | 29224 | |
| 31482854 | Tennessee Department of Revenue | c/o Attorney General | PO Box 20207 | | Nashville | TN | 37202-0207 | |
| 31482801 | THOMPSON BROS SUPPLIES INC | 2319 W 8TH ST | PO BOX 995 | | COFFEYVILLE | KS | 67337 | |
| 31482884 | UBE Machinery Inc | 5700 S State Rd | | | Ann Arbor | MI | 48108 | |
| 31484599 | Vestis Service, LLC fka ARAMARK Uniform & Career Apparel, LLC | c/o Devin G. Bray | Hawley Troxell Ennis & Hawley LLP | P.O. Box 1617 | Boise | ID | 83701-1617 | |
| 31484603 | Vestis Services, LLC fka ARAMARK Uniform & Career Apparel, LLC | c/o Devin G. Bray | Hawley Troxell Ennis & Hawley LLP | P.O. Box 1617 | Boise | Idaho | 83701-1617 | |
| 31483795 | Warner Norcross + Judd LLP | Attn: Leslie A. Hubbard | 150 Ottawa Ave NW | Suite 1500 | Grand Rapids | MI | 49503-2832 | |
| 31484340 | Wuxi Caino Auto Accessories Co., Ltd. | Brown & Joseph, LLC | c/o Peter Geldes | PO Box 249 | Itasca | IL | 60143 | |

**Exhibit W**

Exhibit W
Class 4 Service List
Served via Overnight Mail

| Address ID | Name | Address 1 | Address 2 | City | State | Postal Code | Country |
|---|---|---|---|---|---|---|---|
| 31489482 | AGF Floating Rate Income Fund  Credit Suisse | CIBC Square Tower One | 81 Bay Street Suite 3900 | Toronto | Ontario | M5J0G1 | Canada |
| 31489483 | AGL CLO 39 Ltd | PO Box 1093 Queensgate House | South Church Street | George Town | Grand Cayman | KY11102 | Cayman Islands |
| 31489484 | AGL CLO 40 Ltd | PO Box 1093 Queensgate House | South Church Street | George Town | Grand Cayman | KY11102 | Cayman Islands |
| 31489485 | AGL CLO 41 LTD fka Minerva Funding VI Ltd | PO Box 1093 Queensgate House | South Church Street | George Town | Grand Cayman | KY11102 | Cayman Islands |
| 31489486 | AGL CLO 42 Ltd fka Graniteview Funding VC Ltd | PO Box 1093 Queensgate House | South Church Street | George Town | Grand Cayman | KY11102 | Cayman Islands |
| 31489487 | AGL CLO 43 Ltd FKA Zizou Funding I Ltd | PO Box 1093 Queensgate House | South Church Street | George Town | Grand Cayman | KY11102 | Cayman Islands |
| 31489488 | AGL CLO 44 Ltd fka Almacen Funding Ltd | PO Box 1093 Queensgate House | South Church Street | George Town | Grand Cayman | KY11102 | Cayman Islands |
| 31489489 | AGL PRIVATE CREDIT INCOME FUND LP | 535 Madison Avenue | 24th Floor | New York | NY | 10022 | |
| 31489490 | Bentham High Yield Fund | Level 2 | 5 Martin Place | Sydney New South Wales | | 2000 | Australia |
| 31489491 | Bentham Strategic Loan Fund | Level 2 5 Martin Place | | Sydney New South Wales | | 2000 | Australia |
| 31489492 | Bentham Syndicated Loan Fund | Level 2 5 Martin Place | | Sydney New South Wales | | 2000 | Australia |
| 31489493 | Byram Ridge LLC | Strategic Value Partners LLC | 100 West Putnam Avenue | Greenwich | CT | 06830 | |
| 31489494 | California State Teachers Retirement System UBS | 100 Waterfront Place | | West Sacramento | | 95605 | |
| 31489495 | COPPERHILL LOAN FUND I LLC | CO CORPORATION SERVICE COMPANY | 251 LITTLE FALLS DRIVE | WILMINGTON | DE | 19808 | |
| 31489496 | CREDIT SUISSE ASSET MANAGEMENT INCOME FUND INC | co Credit Suisse | Eleven Madison Avenue Tax Dept 9th floor | New York | NY | 10010 | |
| 31489497 | Credit Suisse Floating Rate High Income Fund | co Credit Suisse Alternative Capital LLC | Eleven Madison Avenue 24th floor | New York New York | | 10010 | |
| 31489562 | Credit Suisse Floating Rate Trust | CO Wilmington Trust Retirement and Institutional Services | Corporation Service Company 2711 Centerville Road, Suite 400 | Wilmington | DE | 19808 | |
| 31489498 | CREDIT SUISSE HIGH YIELD BOND FUND | co Credit Suisse | Eleven Madison Avenue Tax Dept 9th floor | New York | NY | 10010 | |
| 31489499 | Credit Suisse Strategic Income Fund | CO Wilmington Trust Company Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | |
| 31489500 | DaVinci Reinsurance Ltd | CO Renaissance Underwriting Management Ltd | Renaissance House 12 Crow Lane | Pembroke | | HM 19 | Bermuda |
| 31489501 | Dollar Senior Loan Fund Ltd | PO Box 309 | Ugland House | Grand Cayman | | KY11104 | Cayman Islands |
| 31489502 | Dollar Senior Loan Master Fund II Ltd | Clifton House 75 Fort Street | | George Town | Grand Cayman | KY11108 | Cayman Islands |
| 31489503 | Endurance Assurance Corporation Credit Suisse | 4 Manhattanville Road | | New York | NY | 10577 | |
| 31489504 | Endurance Specialty Insurance Ltd  Credit Suisse | Waterloo House 100 Pitts Bay Road | Suite No 784 ParLaVille Road | Pembroke | | HM 08 | Bermuda |
| 31489505 | Florida Gulfcoast Partners BL LP | 11 Madison Avenue 9th Floor | | New York | NY | 10010 | |
| 31489506 | Florida Gulfcoast Partners MultiAsset Credit LP | 11 Madison Avenue 9th Floor | | | NY | 10010 | |
| 31489507 | FS Credit Income Fund | 201 Rouse Blvd | | Philadelphia | PA | 19112 | |
| 31489508 | FS Credit Opportunities Corp | 201 Rouse Blvd | | | PA | 19112 | |
| 31489509 | FS Specialty Lending Fund | 201 Rouse Blvd | | | PA | 19112 | |
| 31489510 | Jefferies Leveraged Credit Products LLC | 520 Madison Ave | | New York | NY | 10022 | |
| 31489511 | Los Angeles County Employees Retirement Association Credit Suisse | UBS Asset Management Americas LLC | 300 N Lake Avenue Suite 850 | Pasadena | CA | 91101 | |
| 31489512 | Madison Flintholm Senior Loan Fund I DAC Credit Suisse | 4 Time Square 5th Floor | | New York | NY | 10036 | |
| 31489513 | Madison Park Funding L Ltd | 190 Elgin Avenue | | George Town | Grand Cayman | KY19008 | Cayman Islands |
| 31489514 | Madison Park Funding LI Ltd | 71 Fort Street PO Box 500 | | George Town | Grand Cayman | KY11106 | Cayman Islands |
| 31489515 | Madison Park Funding LII Ltd | 190 Elgin Avenue | | George Town | Grand Cayman | KY19008 | Cayman Islands |
| 31489516 | Madison Park Funding LIII Ltd | 71 Fort Street PO Box 500 | | George Town | Grand Cayman | KY11106 | Cayman Islands |
| 31489517 | Madison Park Funding LIV Ltd | 190 Elgin Avenue | | George Town | Grand Cayman | KY19008 | Cayman Islands |
| 31489518 | Madison Park Funding LIX Ltd | 71 Fort Street | PO Box 500 | George Town | | | Cayman Islands |
| 31489519 | Madison Park Funding LV Ltd | 71 Fort Street | | George Town | | KY11106 | Cayman Islands |
| 31489520 | Madison Park Funding LVII Ltd | 71 Fort Street | | George Town | | KY11106 | Cayman Islands |

Exhibit W
Class 4 Service List
Served via Overnight Mail

| Address ID | Name | Address 1 | Address 2 | City | State | Postal Code | Country |
|---|---|---|---|---|---|---|---|
| 31489521 | Madison Park Funding LVIII Ltd | 190 Elgin Avenue | | George Town | | JY19008 | Cayman Islands |
| 31489522 | Madison Park Funding LX Ltd | 190 Elgin Avenue | | George Town | | | Cayman Islands |
| 31489523 | Madison Park Funding LXI Ltd | 1314 Esplanade | PO Box 536 | St Helier | | JE4 5UR | Jersey |
| 31489524 | Madison Park Funding LXII Ltd | 190 Elgin Avenue | | George Town | | KY19008 | Cayman Islands |
| 31489525 | Madison Park Funding LXIII Ltd | 71 Fort Street | PO Box 500 | Grand Cayman | | KY11106 | Cayman Islands |
| 31489526 | Madison Park Funding LXIX Ltd | 71 Fort Street | | Grand Cayman | | KY19008 | Cayman Islands |
| 31489527 | Madison Park Funding LXVI Ltd | Winward 3 | Regatta Office Park | Grand Cayman | | KY11108 | Cayman Islands |
| 31489528 | Madison Park Funding LXVII Ltd | 190 Elgin Avenue | | George Town | | KY19008 | Cayman Islands |
| 31489529 | Madison Park Funding LXVIII Ltd | 1314 Esplanade | PO Box 536 | St Heller | | JE4 5UR | Jersey |
| 31489530 | Madison Park Funding LXXI Ltd | 190 Elgin Avenue | | Georgetown | | | Cayman Islands |
| 31489531 | Madison Park Funding XIX Ltd | Windward 3 | Regatta Office Park | Grand Cayman | | KY11108 | Cayman Islands |
| 31489532 | Madison Park Funding XLIII Ltd | Windward 3 | Regatta Office Park | Grand Cayman | | KY11108 | Cayman Islands |
| 31489533 | Madison Park Funding XLIV Ltd | Windward 3 | Regatta Office Park | Grand Cayman | | KY11108 | Cayman Islands |
| 31489534 | Madison Park Funding XLIX Ltd | Windward 3 | Regatta Office Park | Grand Cayman | | | Cayman Islands |
| 31489535 | Madison Park Funding XLV Ltd | Windward 3 | Regatta Office Park | Grand Cayman | | | Cayman Islands |
| 31489536 | Madison Park Funding XLVI Ltd | Windward 3 | Regatta Office Park | George Town | | KY11108 | Cayman Islands |
| 31489537 | Madison Park Funding XLVII Ltd | Windward 3 | Regatta Office Park | Grand Cayman | | KY11108 | Cayman Islands |
| 31489538 | Madison Park Funding XXII Ltd | Windward 3 | Regatta Office Park | Grand Cayman | | KY11108 | Cayman Islands |
| 31489539 | Madison Park Funding XXVII Ltd | Windward 3 | Regatta Office Park | Grand Cayman | | KY11108 | Cayman Islands |
| 31489540 | Madison Park Funding XXX Ltd | 190 Elgin Avenue | | George Town | | KY19008 | Cayman Islands |
| 31489541 | Madison Park Funding XXXI Ltd | Windward 3 | Regatta Office Park | Grand Cayman | | KY11108 | Cayman Islands |
| 31489542 | Madison Park Funding XXXII Ltd | Windward 3 | Regatta Office Park | Grand Cayman | | KY11108 | Cayman Islands |
| 31489543 | Madison Park Funding XXXIV LTD | Windward 3 | Regatta Office Park | Grand Cayman | | KY11108 | Cayman Islands |
| 31489544 | Madison Park Funding XXXIX Ltd | Windward 3 | Regatta Office Park | Grand Cayman | | KY11108 | Cayman Islands |
| 31489545 | Madison Park Funding XXXVI LTD | 4 Time Square 5th Floor | | New York | NY | 10036 | |
| 31489546 | Madison Park Funding XXXVII Ltd | Windward 3 | Regatta Office Park | Grand Cayman | | KY11108 | Cayman Islands |
| 31489547 | Madison Park Funding XXXVIII Ltd | Windward 3 | Regatta Office Park | Grand Cayman | | KY11108 | Cayman Islands |
| 31489548 | PCIF Vigilant Funding LLC | 190 S LaSalle Street 8th Floor | | Chicago | IL | 60603 | |
| 31489549 | PENSIONDANMARK PENSIONSFORSIKRINGSAKTIESELSKAB CSAM | Langelinie Alle 43 | | Copenhagen | | DK2100 | Denmark |
| 31489550 | Pensiondanmark Pensionsforsikringsaktieselskab Pension Danmark VI | Langelinie Alle 43 | | Copenhagen | | DK2100 | Denmark |
| 31489551 | Phillips 66 Retirement Plan Trust | PO Box 421959 | | Houston | TX | 77242 | |
| 31489552 | Renaissance Investment Holdings Ltd Credit Suisse Asset Management | Renaissance House 12 Crow Lane | | Pembroke | | HM 19 | Bermuda |
| 31489553 | Royal Bank of Canada CA1L116960 | 200 Bay Street | | Toronto | | M5J 2J5 | Canada |
| 31489554 | Sagard Private Credit Financing SPV 2 LP | 161 Bay Street Suite 5000 | | Toronto | | M5J2S1 | Canada |
| 31489555 | Simme Institutional Fund LQIF | Viktoriastrasse 72 | | Bern | | 3000 | Switzerland |
| 31489556 | State of Wyoming Credit Suisse | 200 West 24th Street | Room 112 | Cheyenne | WY | 82002 | |
| 31489557 | Telstra Superannuation Scheme | Level 10 130 Lonsdale Street | | Melbourne | | 3000 | Australia |
| 31489558 | UBS Nova Lux European Senior Loan Fund fka Credit Suisse Nova Lux European Senior Loan Fund | 33A Avenue JF Kennedy | | Luxembourg | | L1855 | LU |
| 31489559 | UBS Nova LUX Global Senior Loan Fund | 33A Avenue JF Kennedy | | Luxembourg | | L1855 | LU |
| 31489560 | Wealthsimple Private Credit Fund 1 LP | 80 Spadina Avenue 400 | | Toronto | | M5V2J4 | CA |
| 31489561 | Yosemite Loan Fund | GAS Cayman Ltd 3rd Floor | Citrus Grove 106 Goring Ave | George Town | | KY11106 | KY |

**Exhibit X**

Exhibit X
Preference Settlement Email Service List
Served via Email

| Address ID | NAME | EMAIL |
|---|---|---|
| 31483484 | A&Q Metric SPC - Global Opportunistic II SP | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483485 | Ellington Global Asset Management LLC | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483492 | FB Holdings Ltd. | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483491 | Ivy American Installment LLC | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483489 | Ivy Evergreen Fund LP | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483490 | Ivy Retail Finance LLC | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483483 | Kili Purchasing LLC | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483480 | Nineteen77 Global Multi-Strategy Alpha Master Limited | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483480 | Nineteen77 Global Multi-Strategy Alpha Master Limited | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483481 | Nineteen77 Working Capital Finance Opportunistic Fund Master Limited | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483481 | Nineteen77 Working Capital Finance Opportunistic Fund Master Limited | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483486 | SCFNA, LLC | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483487 | SCFNC, LLC | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483482 | Select Alternative Strategies II ICAV - UBS Working Capital Finance Opportunistic Fund (EU) | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483482 | Select Alternative Strategies II ICAV - UBS Working Capital Finance Opportunistic Fund (EU) | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |
| 31483488 | TFC Holdings, Ltd. | nsabatino@orrick.com; egrillo@orrick.com; lmetzger@orrick.com; lelias@orrick.com |