United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 19, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**STIPULATION AND AGREED ORDER REGARDING
ADEQUATE PROTECTION OF THE AEQUUM SECURED PARTIES**

This Stipulation and Order (this "**Stipulation**") is entered into by and among (i) the above-captioned debtors (collectively, the "**Debtors**")[2] and (ii) the Aequum Secured Parties (as defined below, and together with the Debtors, the "**Parties**"). The Parties hereby stipulate and agree as follows:

WHEREAS, on September 24, 2025 (the "**Petition Date**") and September 28, 2025, as applicable, the Debtors commenced these chapter 11 cases.

WHEREAS, on September 30, 2025, the Debtors filed an emergency motion seeking entry of an interim order and a final order authorizing the Debtors to, among other things, obtain postpetition financing and use cash collateral (Docket No. 49).

WHEREAS, on October 1, 2025, the Court entered that certain (a) *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting*

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (the "**First Day Declaration**") (Docket No. 21) or the Credit Agreement (as defined herein), as applicable.

*Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (Docket No. 217) (the "**Interim DIP Order**"), and (b) *Stipulation and Agreed Order Regarding Adequate Protection of Aequum Capital Financial II, LLC and the Aequum Secured Parties* (Docket No. 215) (the "**Initial Interim Stipulation**").

WHEREAS, on November 6, 2025, the Debtors and the Aequum Secured Parties agreed on the record at a hearing held before the Court (the "**DIP Hearing**") to modify the terms of the Initial Interim Stipulation as announced on the record (the Initial Interim Stipulation as-modified at the DIP Hearing, the "**Interim Stipulation**") to extend the Debtors' usage of the Aequum Collateral to December 8, 2025.

WHEREAS, on November 9, 2025, the Court entered that certain *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* (Docket No. 608) (the "**Final DIP Order**" and, together with the Interim DIP Order, the "**DIP Orders**").

WHEREAS, the Court makes reference to (a) that certain *Credit Agreement* (as amended, amended and restated, restated, supplemented, modified or otherwise in effect from time to time, the "**Credit Agreement**"), dated as of March 28, 2024 among Broad Street Financial, LLC (the "**SPV Debtor**"), as Borrower, First Brands Group, LLC ("**FBG**"), as the Servicer, Broad Street Financial Holdings, LLC ("**Holdings**"), as Loan Party, the lenders from time to time party thereto, and Aequum Capital Financial II LLC (the "**Agent**" and, together with such lenders, the "**Aequum Secured Parties**"), as administrative agent; (b) that certain *Purchase Agreement*

2

**Aequum's Exhibit 1**
**Page 2 of 20**

(the "**Broad Street Purchase Agreement**"), dated as of March 28, 2024, among FBG, as Seller, and the SPV Debtor, as Buyer; and (c) that certain *Sale Agreement* (the "**Broad Street Sale Agreement**," and collectively with the Credit Agreement, the Broad Street Purchase Agreement, and all other ancillary agreements (including any other purchase agreement, sale agreement, and all purchase agreement schedules and sale agreement schedules) executed in connection therewith, the "**FBG-Broad Street Agreements**"), dated as of March 28, 2024, among FBG, as Buyer, and the SPV Debtor, as Seller. As used herein, "**FBG Debtors**" consists of First Brands Groups Holdings, LLC and certain of its subsidiary debtors.

WHEREAS, the Debtors and other stakeholders, including the DIP Secured Parties, the Prepetition Secured Parties (each as defined in the Final DIP Order), and the official committee of unsecured creditors (the "**Unsecured Creditors Committee**"), are reviewing the transactions involving the collateral purportedly securing the obligations under the applicable FBG-Broad Street Agreements and collateral purportedly pledged by the SPV Debtor and Holdings to the Aequum Secured Parties to secure the Obligations under the Credit Agreement (collectively, including all the products and proceeds thereof, the "**Aequum Collateral**"), and, other than as agreed expressly pursuant to this Stipulation, (a) the Debtors, DIP Secured Parties, Prepetition Secured Parties, and Unsecured Creditors Committee reserve all rights to assert all claims and causes of action related to the Aequum Secured Parties and the Aequum Collateral and (b) the Aequum Secured Parties reserve all rights to assert all claims and causes of action related to the Aequum Collateral and the FBG-Broad Street Agreements.

**NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND ORDERED THAT:**

1. From and after the Petition Date until the date of termination of this Stipulation as set forth herein, the Debtors shall not sell or transfer any inventory that is Aequum Collateral or

otherwise use any other asset, including, without limitation, cash collateral, that is Aequum Collateral except pursuant to the following terms of this Stipulation.

2.      ***No Other Indebtedness or Liens***. During the term of this Stipulation as set forth herein, none of (i) the SPV Debtor, (ii) Holdings, or (iii) the FBG Debtors shall incur any indebtedness or claims, or any liens (whether senior, pari passu, or junior) on the Aequum Collateral or any of the other assets of the SPV Debtor or Holdings, to secure any indebtedness or claim, in each case whether (y) on account of any DIP financing or under any order authorizing the Debtors to use cash collateral and/or obtain DIP financing, whether interim or final or (z) otherwise, other than as expressly permitted herein or otherwise consented to by the Aequum Secured Parties.

3.      ***Challenge Deadline***.  The Debtors stipulate only to the amount (\$44,796,970.81)[3] of the Aequum Secured Parties' claims, as of the Petition Date, under the Credit Agreement, subject to the Challenge Deadline below.  The deadline for the Debtors and any other party in interest to challenge, which challenge may only be asserted pursuant to a timely and properly filed contested matter or adversary proceeding, the validity, amount, extent, perfection, and priority of the Aequum Secured Parties' liens shall be March 4, 2026 (the "**Challenge Deadline**"), which may be extended either (i) with the consent of the Aequum Secured Parties or (ii) upon an order of the Court for cause.  The Challenge Deadline will automatically toll for any party that files a motion seeking standing (to the extent applicable) to raise a challenge prior to the expiration of the Challenge Deadline, until five (5) business days after entry of a final order of the Bankruptcy Court on such motion.  No portion of the Aequum Collateral may be used in connection with

---

[3]      The Aequum Secured Parties' Petition Date claims consist of outstanding loan principal (\$44,327,028.14), accrued prepetition interest (\$408,990.71), and accrued prepetition legal expenses (\$60,951.96).

(x) challenging, investigating or otherwise contesting the Aequum Secured Parties' liens or claims, (y) preventing, hindering or delaying the Aequum Secured Parties' enforcement or realization upon any of the Aequum Collateral, or (z) initiating, prosecuting or otherwise supporting any claim or action against any Aequum Secured Party. If no challenge is timely and properly commenced on or prior to the Challenge Deadline in accordance with this Stipulation, the Aequum Secured Parties' liens, security interests, and claims shall be deemed valid, properly perfected, and having first priority against the SPV Debtor and Holdings. In the event that a court of competent jurisdiction has entered a final, non-appealable order determining that the Aequum Secured Parties did not hold properly perfected first-liens against any particular assets of SPV Debtor and/or Holdings, any such Aequum Collateral (in whole or in part) shall be deemed to be DIP Collateral (subject to the priorities set forth in the DIP Orders). For the avoidance of doubt, nothing in this Stipulation shall (a) constitute a release by the Debtors or their estates of any claims, including claims arising under chapter 5 of the Bankruptcy Code, against the Aequum Secured Parties, or any claims between any of the Debtors, whether or not the challenge period has expired, or (b) be deemed to limit, waive, impair, or otherwise prejudice any rights, claims, defenses, or arguments of the Aequum Secured Parties.

4. ***Purchase, Sale, and Use of Inventory***.

      a. Any FBG Debtor (collectively, the "**Debtor Purchasers**") may continue to purchase and use inventory that is Aequum Collateral from the SPV Debtor, and the SPV Debtor may continue to purchase new inventory from any FBG Debtor pursuant to the terms set forth herein. In the event of any conflict between the Credit Agreement and the terms set forth herein, this Stipulation shall control. The SPV Debtor shall not sell or transfer any inventory that is Aequum Collateral or otherwise use any asset, including, without limitation, cash collateral, that is Aequum Collateral except as provided in this Stipulation or with the consent of the Aequum Secured Parties. The SPV Debtor may only sell or transfer the Aequum Collateral to the Debtor Purchasers in accordance with the procedures set forth herein. So long as Aequum Collateral is purchased and sold or transferred pursuant

to the procedures set forth herein, Aequum Collateral shall be sold or transferred free and clear of any and all liens, claims, or encumbrances. Sales of Aequum Collateral to a Debtor Purchaser in accordance with these procedures shall constitute a legal, valid, binding, and effective sale of such Aequum Collateral, and no such sale shall be subject to avoidance under any provision of the Bankruptcy Code or otherwise. Each Debtor Purchaser, pursuant to the procedures set forth herein, shall be deemed to be a good faith purchaser of the Aequum Collateral. Pursuant to section 363(m) of the Bankruptcy Code, if the terms of this Stipulation are reversed or modified on appeal, such reversal or modification shall not affect the validity of any sale of Aequum Collateral to the Debtor Purchasers pursuant to this Stipulation and the procedures contemplated herein. Upon a Debtor Purchaser's receipt of Aequum Collateral that has been sold in accordance with this Stipulation, such Aequum Collateral shall become DIP Collateral (subject to the priorities set forth in the DIP Orders).

b. From and after the Petition Date, any new inventory acquired by the SPV Debtor pursuant to the procedures set forth herein shall be acquired by the SPV Debtor free and clear of any and all liens, claims, or encumbrances, subject to the outcome of any challenge, if applicable. Such acquisition of new inventory by the SPV Debtor from and after the Petition Date shall constitute a legal, valid, binding, and effective transfer of such inventory to the SPV Debtor, and no such transfer shall be subject to avoidance under any provision of the Bankruptcy Code or otherwise. The SPV Debtor shall be deemed a good faith purchaser of such new inventory for purposes of section 363(m) of the Bankruptcy Code, and any reversal or modification of this Stipulation on appeal shall not affect the validity of such transfer. Upon the SPV Debtor's receipt of any such new inventory from and after the Petition Date, such new inventory and any proceeds thereof shall become Aequum Collateral. The Aequum Secured Parties' liens on such new inventory and any proceeds thereof shall have the same validity and priority, and shall attach to the same extent, as the Aequum Secured Parties' liens on the inventory sold pursuant to this Stipulation, and shall be deemed continuing adequate protection, subject to the outcome of any challenge, if applicable. For the avoidance of doubt, nothing in this provision expands the scope of any challenge rights, and any such challenge, if applicable, shall apply solely to the extent set forth in paragraph 3.

5. ***Modified Borrowing Base Formula***.[4] The SPV Debtor shall maintain the Aequum Collateral such that—as tested on a weekly basis based on reporting provided by the SPV Debtor pursuant to paragraph 11 herein (which shall reflect ending Gross Inventory and Eligible Inventory

---

[4] Attached hereto as Exhibit A is the SPV Debtor's Borrowing Base Certificate dated as of September 29, 2025.

levels from seven (7) days prior)—the sum of (A) the Net Available Inventory (as defined below) of Eligible Inventory (as defined in the Credit Agreement), *plus* (B) all cash deposited in the Segregated Account (as defined below) (the "**Borrowing Base Value**"), shall be no less than $40,675,250.74 (the "**Borrowing Base Threshold**"); *provided* that for the period 120 days after entry of this Stipulation, the SPV Debtor shall not be required to post any cash unless the Borrowing Base Value drops below $35,675,250.74.[5] Subject to paragraph 3, on or before the 120th day following the entry of this Stipulation, the Debtors shall be required to post cash into the Segregated Account in an amount equal to the difference between Borrowing Base Threshold and Borrowing Base Value. For the avoidance of doubt, nothing herein shall constitute a finding, admission, or agreement regarding the value of the Aequm Collateral at any point in time, including as of the Petition Date.

    a. For purposes of this Stipulation, the following terms shall have the meanings set forth below:

        i. "**Borrowing Base Failure Event**" means the occurrence on any testing date of a breach by the SPV Debtor of the Borrowing Base formula set forth herein due to the Borrowing Base Value falling below the Borrowing Base Threshold.

        ii. "**Net Available Inventory**" means, as of any date of determination, the aggregate value of all Aequm Collateral as reflected in the line item "Net Available Inventory" in the most recent Borrowing Base Certificates for the SPV Debtor delivered weekly in accordance with the Credit Agreement and this Stipulation, prepared in accordance with the Debtors' ordinary practices (updated as of any date of determination to reflect any subsequent sale, loss, or other disposition of Aequm Collateral, or changes in the calculation of Eligible Inventory since the delivery of the last Borrowing Base Certificate). Such updates to Eligible Inventory shall include an updated calculation of excess/slow-moving inventory based on the trailing 24 months of sales of inventory on a SKU by SKU basis,

---

[5] The Debtors stipulate that the Borrowing Base Value (as measured according to this Stipulation) as of November 21, 2025 was approximately $3 million lower than the Borrowing Base Value as of the Petition Date. Nothing herein shall constitute a stipulation as to the value of the Aequm Collateral, which is subject to the Debtors' ongoing review and investigation.

consistent with past practice of updating excess/slow-moving inventory. This calculation shall be updated within sixty (60) days of the entry of this Stipulation and on a monthly basis thereafter. Notwithstanding anything provided herein, only inventory that becomes excess or slow-moving after the Petition Date shall affect the Borrowing Base Value, which shall not be reduced by a finding that any inventory was already excess or slow-moving as of the Petition Date.

b. In the event that a Borrowing Base Failure Event occurs, such event shall be an event of default under this Stipulation (unless timely cured), which the FBG Debtors shall be permitted to cure within five (5) business days by any combination (in the FBG Debtors' sole discretion) of (i) transferring cash in immediately available funds in the amount by which the Borrowing Base Threshold exceeds the Borrowing Base Value into the Segregated Account to be held as cash collateral subject to the liens of the Aequum Secured Parties (subject to the challenge rights set forth herein and only to the extent such liens and their priority are validated as finally judicially determined by a court of competent jurisdiction), or (ii) the transfer to the relevant location of inventory that constitutes Eligible Inventory, in the ordinary course of business in accordance with prepetition practices, i.e., non-obsolete or excess/slow-moving inventory used in the ordinary course of FBG Debtors' business, with a Net Available Inventory value sufficient to cause the Borrowing Base Value to equal or exceed the Borrowing Base Threshold (the actions described in clauses (i) and/or (ii), the "**Curative Actions**").

c. Once Curative Actions are taken within the five (5) business day cure period, the FBG Debtors shall be permitted to continue purchasing Aequum Collateral without disruption. In the event a Borrowing Base Failure Event occurs and the FBG Debtors fail to exercise Curative Actions prior to expiration of the five-business day cure period, it shall be an event of default and, upon delivery of notice by the Agent, the FBG Debtors shall immediately cease purchasing Aequum Collateral without further order of the Bankruptcy Court.

d. Any cash paid to the SPV Debtor shall be held as cash collateral subject to the liens of the Aequum Secured Parties subject to the challenge rights set forth herein and only to the extent such liens and their priority are validated as finally judicially determined by a court of competent jurisdiction (the "**Segregated Cash**") in one segregated account in the name of the SPV Debtor corresponding exclusively to the Aequum Collateral (the "**Segregated Account**") and included in the Borrowing Base Value when assessing compliance with the Borrowing Base formula and whether a Borrowing Base Failure Event has occurred as set forth herein.

e.  Upon termination of this Stipulation, no Segregated Cash shall be removed from the Segregated Account without further order of the Bankruptcy Court.

6.      *Adequate Protection Liens and Claims*.  Subject to paragraph 3 and paragraph 7 hereof, the Aequum Secured Parties will retain a first priority, automatically perfected lien on any Aequum Collateral, including the proceeds thereof (including any inventory acquired by the SPV Debtor pursuant to paragraph 4 hereof, but excluding any Aequum Collateral transferred to the Debtor Purchasers pursuant to paragraph 4 hereof), including, without limitation, cash collateral (other than Aequum Collateral sold to the Debtor Purchasers pursuant to paragraph 4 hereof) and the Segregated Cash and will receive, as adequate protection of the interests of the Aequum Secured Parties in the Aequum Collateral against any diminution in value of such interests, pursuant to sections 361 and 363(e) of the Bankruptcy Code, additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected postpetition first priority security interests in and liens on all of the presently owned or hereafter acquired property and assets of the SPV Debtor and Holdings, including any inventory acquired by the SPV Debtor pursuant to paragraph 4 hereof (but excluding any Aequum Collateral transferred to the Debtor Purchasers pursuant to paragraph 4 hereof).  Subject to paragraph 3 and paragraph 7 hereof, to the extent of any diminution in value of the interests of the Aequum Secured Parties in the Aequum Collateral, the Aequum Secured Parties shall be granted an allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "**507(b) Claim**"), which 507(b) Claim shall be an allowed claim against the SPV Debtor and Holdings, with priority over any and all administrative expenses and all other claims against such SPV Debtor now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327,

9

328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code.  For the avoidance of doubt, (a) consistent with applicable bankruptcy and non-bankruptcy law, the Aequum Secured Parties bear the burden with respect to the extent, if any, of any diminution of value with respect to their interests in the Aequum Collateral and (b) any adequate protection or other replacement liens previously granted to the Aequum Secured Parties under any prior order of the Bankruptcy Court (subject to any modifications agreed to by the Parties on the record) shall remain in full force and effect following entry of this Stipulation.

7.     ***Reservation of Rights***.  Subject to paragraph 3 herein, (a) the rights of the Debtors, the DIP Secured Parties, the Prepetition Secured Parties (each as defined in the DIP Orders), the Unsecured Creditors Committee, and all other parties in interest to which the Bankruptcy Court grants the requisite standing (to the extent applicable) to challenge the validity, amount, extent, perfection, or priority of the Aequum Secured Parties' claims and liens are reserved, (b) the rights of the Debtors, the DIP Secured Parties, the Prepetition Secured Parties (each as defined in the DIP Orders), the Unsecured Creditors Committee, and all other parties in interest for any and all claims or causes of action that are not covered by the challenge period in paragraph 3 hereof, and (c) if this Stipulation is terminated, the Aequum Secured Parties' rights to, among other things, seek (i) additional adequate protection, (ii) relief from the automatic stay, (iii) an order dismissing the chapter 11 case of the SPV Debtor, or (iv) an order appointing a chapter 11 trustee, are reserved.  Nothing in this Stipulation shall be deemed an admission or otherwise prejudice or enhance the rights of any party with respect to the review of the validity, amount, extent, perfection, or priority of the Aequum Secured Parties' claims and liens in the Aequum Collateral prior to the expiration of the Challenge Deadline.  Notwithstanding the foregoing, nothing in this paragraph shall prejudice the rights of the Aequum Secured Parties to the adequate protection

provided pursuant to this Stipulation to the extent that the disputes over Aequum Collateral are resolved in the Aequum Secured Parties' favor.

8. ***Rights to Surcharge***. The Debtors and other parties in interest reserve all rights to bring claims against the Aequum Secured Parties pursuant to section 506(c) of the Bankruptcy Code or the section 552 "equities of the case" exception.

9. ***Postpetition Interest; Fees and Expenses***. Within five (5) business days after entry of this Stipulation, the SPV Debtor shall pay in cash to the Aequum Secured Parties $1,206,446.26 on account of interest having accrued at the non-default contract rate from the Petition Date through December 4, 2025, and $920,447.87 on account of fees and expenses having accrued from the Petition Date through December 4, 2025, in each case, subject to recharacterization as set forth below. Postpetition interest on the Aequum Secured Parties' outstanding prepetition claims at the applicable non-default contract rate, including interest from and after December 5, 2025, will accrue and be paid in cash in the ordinary course on the last day of each month by the SPV Debtor. Additional reasonable and documented fees and expenses of the Aequum Secured Parties (including fees and expenses of counsel and consultants to the Aequum Secured Parties, and all reasonable and documented exam and appraisal costs incurred by Agent) (the "**Aequum Secured Party Fees and Expenses**"), including for the period from and after December 5, 2025, will accrue and be paid in cash to the Aequum Secured Parties in the ordinary course on a monthly basis by the SPV Debtor, within ten (10) days of receipt of the relevant invoice (to be sent to counsel to the Review Parties, as defined in the Final DIP Order), which may be a summary description of services provided and expenses incurred, and shall be subject to all applicable privilege and work product doctrines, and subject to an aggregate monthly cap of $200,000. The Debtors' and any other party in interest's rights are fully reserved to seek (i) to the extent that any payment of

postpetition interest, fees, costs or expenses is not allowed under section 506(b) of the Bankruptcy Code, to recharacterize and apply such payments toward principal owed under the Credit Documents, (ii) a determination with respect to the accrual and amount of any postpetition interest, and (iii) clawback of any amounts paid under this Stipulation, including payment of postpetition interest, fees, costs, or expenses.  In the event that the Bankruptcy Court determines that the Aequum Secured Parties are undersecured, any payment by the Debtors of postpetition interest, fees, costs, or expenses shall be recharacterized as repayments toward principal under the Credit Documents prior to any party in interest seeking clawback of amounts paid under this Stipulation, and clawback shall only be sought to the extent recharacterization is an insufficient remedy.  Any termination of this Stipulation shall discontinue any obligation for the Debtors to pay any Aequum Secured Party Expenses from the date of termination onward, provided that the Aequum Secured Parties reserve all rights to request a court order for the payment of fees, costs, and expenses pursuant to section 506(b) of the Bankruptcy Code.

10.    ***Site Access; Books and Records***.  The Aequum Secured Parties shall have reasonable collateral inspection rights, including examination of inventory, on reasonable notice by onsite examiners retained by Agent (such costs to be paid by the SPV Debtor in accordance with paragraph 9).  The SPV Debtor shall coordinate and provide reasonable access to the Aequum Secured Parties (and their representatives) to their warehouses, other facilities, and books and records to conduct updated appraisals, field exams, and inventory taking of the Aequum Collateral.

11.    ***Reporting***.  On Friday of each week, the SPV Debtor shall provide reporting of ending inventory balances by SKU for the Aequum Collateral for the week prior.  Such weekly reporting shall also include a weekly Borrowing Base Certificate with true up report (consistent in form with past practice and in accordance with paragraph 5).  The Aequum Secured Parties shall

be provided all written reports set forth in the applicable DIP Order that are delivered to the ABL Lenders, First Lien Lenders, and/or DIP Lenders on a confidential or professional eye's only basis, as applicable (subject to the Debtors' rights to redact or not share sensitive business information or privileged information).

12.    *Covenants*. Subject to paragraphs 7 and 8 herein, the Debtors shall escrow the applicable cash proceeds of any sale approved by the Bankruptcy Court pursuant to an order authorizing a sale under section 363 of the Bankruptcy Code of substantially all or a material portion of the assets of the SPV Debtor by depositing such applicable cash proceeds into the Segregated Account at closing, to be held pending further order of the Bankruptcy Court.

13.    *Termination*.    This Stipulation shall automatically terminate on April 4, 2026 unless the Aequum Secured Parties and Debtors both agree to an extension, or in the following circumstances:

    a.  The Aequum Secured Parties may, at their option, terminate this Stipulation upon the earliest to occur of (i) the maturity date of the DIP financing under the DIP Orders, and (ii) the date required lenders under the DIP financing exercises any remedy under the DIP Orders or DIP credit documents;

    b.  The Aequum Secured Parties may, at their option, terminate this Stipulation upon (i) the occurrence of any event of default hereunder or (ii) the Debtors' violation of any of the terms of this Stipulation or breach of these provisions; provided, however, that if such event of default, violation, or breach is capable of being cured, termination shall not occur unless the Debtors fail to cure such default, violation, or breach within five (5) business days of the Aequum Secured Parties' provision of notice to the Debtors of such default, violation, or breach;

    c.  The Aequum Secured Parties may, at their option, terminate this Stipulation upon (i) the entry of an order converting the SPV Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code or appointing a chapter 11 trustee (unless such conversion or appointment was requested or supported by the Aequum Secured Parties), (ii) the entry of an order on, related to, or otherwise concerning, the use of Aequum Collateral that is not acceptable to the Aequum Secured Parties, (iii) any request made (or otherwise supported) by Debtors for, or the reversal, modification, amendment, stay, reconsideration or vacatur of this Stipulation, as entered

by the Bankruptcy Court, without the prior written consent of the Aequum Secured Parties, (iv) any provision of this Stipulation, the Credit Agreement, or their ancillary documents shall for any reason cease to be valid and binding (other than as a result of a ruling in relation to the Challenge Deadline), or (v) the filing of any application by the Debtors (other than the application for financing provided by a third party which seeks authority to pay all of the Obligations in full in cash, to the satisfaction of Agent, upon entry of the order approving such financing) for the approval of (or an order is entered by the Bankruptcy Court approving) any claim arising under section 507(b) of the Bankruptcy Code or any other provision of the Bankruptcy Code or any security, mortgage, collateral interest or other lien on the Aequum Collateral which is pari passu with or senior to the Aequum Secured Parties' liens; and

d. The SPV Debtor may terminate this Stipulation on five (5) days' notice (i) upon the discovery of new facts, including facts disputing the validity, amount, extent, enforceability, perfection, or priority of the Aequum Secured Parties' claims and liens, or (ii) the SPV Debtor determines in good faith that its continued performance under this Stipulation would be inconsistent with its fiduciary duties under applicable law; provided, however, the SPV Debtors' obligation to make the payment due within five (5) days from entry of this Stipulation pursuant to paragraph 9 shall survive termination of this Stipulation by the SPV Debtor.

Subject to paragraph 14 below and the other terms and conditions of this Stipulation, upon termination of this Stipulation, the Aequum Secured Parties shall be entitled to exercise all rights and remedies in accordance with the FBG-Broad Street Documents and applicable laws, and rights and remedies granted to the Aequum Secured Parties under this Stipulation shall survive such termination and be cumulative with, and in addition to, any other rights or remedies available to the Aequum Secured Parties.  Except as expressly provided herein, nothing in this Stipulation shall be deemed to impair, limit, waive, or otherwise prejudice any rights or remedies afforded to the Aequum Secured Parties hereunder or any rights, remedies, or defenses of any of the Debtors. Notwithstanding the termination of this Stipulation, all rights, protections, and remedies of the Aequum Secured Parties under this Stipulation or the FBG-Broad Street Documents shall survive and remain fully enforceable in the Chapter 11 Cases and any successor cases, including, without limitation: (i) all adequate protection liens, replacement liens, and superpriority administrative

claims; (ii) all rights and remedies upon or after termination; and (iii) any other provisions expressly stated to survive termination.

14. ***Remedies***. Upon the occurrence of an event of default or termination event under this Stipulation, and (a) following the delivery of five (5) business days' written notice thereof (provided, however, that notice is not required if an event of default has occurred due to the SPV Debtor's failure to take Curative Action within the period set forth in paragraph 5) (the "**Remedies Notice Period**") by the Agent to the Debtors (and their restructuring counsel), counsel to the DIP Secured Parties, counsel to the Prepetition Secured Parties, counsel to the Unsecured Creditors Committee, and the U.S. Trustee, the Debtors' sales, purchases or other use of Aequum Collateral (including any cash collateral) shall cease immediately pending further order of the Bankruptcy Court and (b) prior to exercising the remedies set forth herein or any other remedies, the Aequum Secured Parties shall be required to file a motion with the Court seeking emergency relief (the "**Stay Relief Motion**") on not less than five (5) business days' notice (which may run concurrently with the Remedies Notice Period) for a further order of the Bankruptcy Court modifying the automatic stay to permit the Aequum Secured Parties to exercise all rights and remedies provided for in the Credit Documents.

15. Promptly following entry of this Stipulation and the Agent's receipt of the payments provided in paragraph 9, the Aequum Secured Parties shall withdraw, with prejudice, (a) the *Emergency Motion to Enforce Stipulation and Agreed Order* (Docket No. 485) and (b) *Aequum Capital Financial II LLC's Joinder to the Omnibus Limited Objection and Reservation of Rights of UMB Bank, N.A. to Applications of Debtors for Authority to Retain and Employ (I) Weil Gotshal & Manges LLP, (II) Lazard Freres & Co. LLC, and (III) Alvarez & Marsal North America, LLC* (Docket No. 656), provided that the Aequum Secured Parties reserve all rights to

seek to enforce the terms of this Stipulation. Upon entry of this Stipulation, the *Motion of Aequum Capital Financing II LLC for Entry of an Order (I) Dismissing Chapter 11 Case of Debtor Broad Street Financial, LLC, or, in the alternative, (II) Granting Relief from the Automatic Stay or (III) Appointing a Chapter 11 Trustee* (Docket No. 631) (the "**Motion to Dismiss**") and all related discovery and deadlines shall be abated. Either Party may file a notice to lift the abatement on twenty-one (21) days' notice to all parties in interest in the Chapter 11 Cases.

16. Upon Agent's receipt of the payments provided in Section 9, the Aequum Secured Parties waive any and all defaults of the Debtors arising from or in connection with the *Stipulation and Agreed Order Regarding Adequate Protection of Aequum Capital Financial II, LLC and the Aequum Lenders* (Docket No. 215).

17. This Stipulation shall not be modified, altered, amended, or vacated without the written consent of each of the Parties or by further order of the Bankruptcy Court.

18. The Interim Stipulation shall be replaced on the date this Stipulation is entered.

19. The Debtors are authorized to take all actions necessary to effectuate this Stipulation.

20. The Bankruptcy Court retains sole and exclusive jurisdiction over all matters related to this Stipulation.

Signed: December 19, 2025

_____

Christopher Lopez

United States Bankruptcy Judge

**STIPULATED AND AGREED TO BY:**

Dated:  December 10, 2025

 */s/  Clifford W. Carlson*
WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   gabriel.morgan@weil.com
          clifford.carlson@weil.com


-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   matt.barr@weil.com
          sunny.singh@weil.com
          andriana.georgallas@weil.com
          kevin.bostel@weil.com
          jason.george@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

Dated:  December 10, 2025

 */s/  Kenneth J. Ottaviano*
**BLANK ROME LLP**
Kenneth J. Ottaviano (admitted *pro hac vice*)
Stephanie K. Hor-Chen (admitted *pro hac vice*)
444 West Lake Street, Suite 1650
Chicago, Illinois 60606
Telephone:  (312) 776-2601
Facsimile:  (312) 264-2418
Email: ken.ottaviano@blankrome.com
          stephanie.horchen@blankrome.com


*Attorneys for Aequum Secured Parties*

## CERTIFICATE OF SERVICE

I certify that on December 10, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Clifford W. Carlson*
Clifford W. Carlson

**Exhibit A**

**Borrowing Base Certificate**

## AEQUUM

### BORROWING BASE CERTIFICATE

| | | Dallax, TX - Inventory | Consolidated | Notes: (Describe any material changes or non-standard adjustments) |
|---|---|---|---|---|
| Date (this Borrowing Base): | 9/29/2025 | | | |
| Date (previous Borrowing Base): | 8/31/2025 | | | |
| | | | | |
| 1 | Beginning Inventory Balance (from last Certificate) | $ 60,767,370.55 | $ 60,767,370.55 | Per Perpetual Report as of 08/31/2025 |
| 2 | (+) Inventory Purchased with additional Advances | $ - | $ - | |
| 3 | (+) Inventory Received with Exchanges-in-Kind | $ 12,580,473.74 | $ 12,580,473.74 | |
| 4 | (+) Other | $ - | | |
| 5 | (-) Inventory Sold | $ - | $ - | |
| 6 | (-) Inventory Disposed with Exchanges-in-Kind | $ 13,267,870.01 | $ 13,267,870.01 | |
| 7 | (-) Other | $ - | $ - | |
| 8 | Gross Inventory | $ 60,079,974.28 | $ 60,079,974.28 | Per Perpetual Report as of 09/29/2025 |
| | Ineligible Inventory | | | |
| 9 | Excess/Slow-Moving - > TTM Sales Qty | $ 11,854,304.06 | $ 11,854,304.06 | |
| 10 | Work in Process ("WIP") | $ - | $ - | |
| 11 | Other | $ - | $ - | |
| 12 | Slow-Moving Allowance: 10% Gross Inventory | $ (6,007,997.43) | $ (6,007,997.43) | |
| 13 | Total Reductions to Inv Availability | $ 5,846,306.63 | $ 5,846,306.63 | |
| 14 | Total Eligible Inv Availability | $ 54,233,667.65 | $ 54,233,667.65 | |
| 15 | Advance Rate (%) | 75.0% | 75.0% | |
| 16 | Available Inventory | $ 40,675,250.74 | $ 40,675,250.74 | |
| 17 | Availability Reserve | $ - | $ - | |
| 18 | Net Available Inv | $ 40,675,250.74 | $ 40,675,250.74 | |
| | | | | |
| 19 | Gross Collateral Availability | | $ 40,675,250.74 | |
| 20 | Loan Commitment | | $ 45,000,000.00 | |
| | Availability Reserves | | | |
| 21 | Landlord Waiver/Rent Reserve | | $ - | |
| 22 | Availability Block | | $ - | |
| 23 | Borrowing Base Availability | | $ 40,675,250.74 | |
| 24 | Previous Loan Balance | | $ 45,000,000.00 | |
| 25 | Less: (A) Collections | | $ - | |
| | Less: (B) Loan Paydowns (Since prior BBC) | | $ - | |
| | Less: (C) Adjustments / Other | | $ - | |
| 26 | Plus: (A) Loan Advances (Since prior BBC) | | $ - | |
| | Plus: (B) Adjustments / Other | | $ - | |
| 27 | Current Loan Balance | | $ 45,000,000.00 | |
| 28 | Requested Funds | | | |
| 29 | Total Loan Balance After Requested Funds | | $ 45,000,000.00 | |
| 30 | Excess Availability / (Deficit) | | $ (4,324,749.26) | |

Pursuant to, and in accordance with, the terms and provisions of that certain Credit Agreement, as amended from time to time ("Agreement"), among Aequum Capital Financial II, LLC ("Secured Party") and Broad Street Financial, LLC ("Borrower"), Broad Street Financial Holdings, LLC ("Parent"), First Brands Group, LLC, ("Servicer"). Borrower is executing and delivering to Secured Party this Borrowing Base Certificate accompanied by supporting data (collectively referred to as, "Report"). Borrower represents and warrants to Secured Party that this Report is true, correct, and based on information contained in the Borrower's own financial accounting records. Borrower, by the execution of this Report, hereby ratifies, confirms, and affirms all of the terms, conditions, and provisions of the Agreement, and further certifies that the Borrower is in compliance with said Agreement.

| BORROWER NAME: | AUTHORIZED SIGNATURE: | DATE SIGNED: |
|---|---|---|
| Broad Street Financial, LLC | | 12/10/2025 |