**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| FIRST BRANDS GROUP, LLC, *et al.*,[1] | ) | Case No. 25-90399 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**AEQUUM CAPITAL FINANCIAL II LLC'S**
**(I) OBJECTION TO CONFIRMATION OF THE DEBTORS' REVISED JOINT**
**CHAPTER 11 PLAN AND (II) RESERVATION OF SETOFF AND RELATED RIGHTS**

Aequum Capital Financial II LLC, in its capacity as administrative agent ("Aequum") for

the lenders (the "Aequum Lenders," and together with Aequum, the "Aequum Secured Parties")

under a revolving credit facility to debtor Broad Street Financial, LLC ("Broad Street" and together

with Broad Street Financial Holdings, LLC ("Parent"), the "Broad Street SPVs"), files this

objection and reservation of rights (the "Objection") to confirmation of the *Joint Chapter 11 Plan*

*of First Brands Group, LLC and Certain Affiliated Debtors* [Docket No. 3019] (the "Plan"),[2] filed

by First Brands Group Holdings, LLC, its direct and indirect Debtor subsidiaries, and Viceroy

Private Capital, LLC ("Viceroy") (collectively, the "FBG Debtors" or the "Plan Debtors"), and

respectfully states as follows.

**PRELIMINARY STATEMENT**

1.      The Plan proposed by the FBG Debtors, to the exclusion of the SPV Debtors, does

remarkable prejudice to the interests of the SPV Debtors, their Estates, and their creditors,

including the Aequum Secured Parties. The FBG Debtors incredibly have solicited a Plan that

---

[1]      A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]      Capitalized terms used, but not defined herein shall have the meanings ascribed to them in the Plan.

1

misappropriates and trades the rights of the SPV Debtors, their Estates, and their creditors—all of which are already targets for Litigation Trust claims under the Plan—in exchange for support for the Plan from key constituencies in the FBG Debtor cases. As more fully set forth in this Objection:

- **Plan Exculpation.** The Plan exculpates the FBG Debtors, their controlling persons, the Committee, and its members of claims of the SPV Debtors and their stakeholders—even though the SPV Debtors are not party to the Plan, the Plan does not administer their estates, and the SPV Debtors themselves are neither exculpated nor giving or receiving releases under the Plan. The Exculpated Parties cannot use the Plan both as a sword to paint a target on the backs of the SPV Lenders and other creditors of the SPV Debtors, and as a shield to protect themselves from any liability to those parties and the SPV Debtors who are left behind in these cases.

- **SPV Stakeholder Claims.** The Plan threatens not only to block the SPV Debtors, their Estates and creditors from pursuing any claims they have that share a common nucleus of facts with claims of the Plan Debtors—even though (again) the SPV Debtor Estates and their creditors are not administered under the Plan—but bundle and contribute those claims to the Litigation Trust for the benefit of creditors of the Plan Debtors.

- **SPV Stakeholder Defenses, Setoff, and Related Rights.** The Plan compromises defenses, setoff rights and related rights held by SPV Stakeholders (as defined below) against the Litigation Trust and myriad other parties. Narrowly drafted savings clauses in the Plan fall short of protecting their rights.

- **Substantive Consolidation.** The Plan's provisions consolidating Estate claims in the Litigation Trust and consolidating creditor claims against multiple estates threaten to expose SPV Stakeholders to liability, for example, by compromising their ability to assert arguments and defenses premised on substantive consolidation, veil piercing, and similar doctrines.

- **SPV Debtor Governance and Other Objections.** The Plan is objectionable for other reasons, including by stripping Viceroy, the indirect parent company of the SPV Debtors, of its current governance structures and handing control over to a conflicted Wind Down Administrator appointed by the Plan Debtors, Ad Hoc Group SteerCo, and Committee who will have the power to manage (or appoint others to manage) the SPV Debtors in a manner contrary to their interests and the interests of their stakeholders.

2. The combined effect of these provisions is to (1) self-servingly impair potentially valuable claims of the Aequum Secured Parties and other SPV Stakeholders that threaten Plan Debtor stakeholders; (2) increase SPV Stakeholder exposure to Litigation Trust claims, the

2

recoveries on which are promised to generate substantial distributions on claims and expenses treated under the Plan; and (3) potentially neuter any post-confirmation administration or liquidation of the SPV Debtors that could compete with or be adverse to the Trusts established under the Plan.

3.     These cases have proven to be a quagmire of conflicting interests due to the complex intercompany transactions and wrongdoing the Debtors state precipitated their filing. The Plan cannot perpetuate these conflicts and reward the Plan Debtors and their stakeholders at the expense of the SPV Debtors and their stakeholders merely because the Plan Debtors are seemingly in the driver's seat. Accordingly, the Plan is unconfirmable. Material modifications are required to protect the Aequum Secured Parties' interests and the interests of all other SPV Stakeholders.[3]

## BACKGROUND[4]

### A.     Broad Street SPV Financing.

4.     The Broad Street SPVs are among the many special purpose vehicles ("SPVs") that Debtor First Brands Group, LLC ("First Brands"), formed to facilitate its off-balance sheet financing. The Broad Street SPVs are indirect subsidiaries of Plan Debtor Viceroy. *See* Docket No. 3020 (the "Disclosure Statement"), Ex. D (Organizational Chart).

5.     On or about March 28, 2024, the Broad Street SPVs entered into, *inter alia*, a Credit Agreement (the "Credit Agreement") and Pledge and Security Agreement with the Aequum Secured Parties. The Credit Agreement gave borrower Broad Street access to a $45 million revolving loan. The Broad Street SPVs granted the Aequum Secured Parties first priority liens on

---

[3]     The Aequum Secured Parties contacted Debtors' counsel with the objections set forth herein in an attempt to negotiate a consensual resolution of these issues, but were unable to resolve their objections before the filing deadline.

[4]     References herein to "Docket No. __" shall refer to filings in this chapter 11 bankruptcy case and to "Adv. Docket No. __" shall refer to filings in the adversary proceeding captioned *Bank of America, N.A. v. Aequum Capital Financial II LLC*, Adv. No. 26-03091 (Bankr. S.D. Tex.).

Aequum's Exhibit 9
Page 3 of 18

substantially all of their assets (the "Aequum Collateral"), including inventory and proceeds. Parent and Viceroy guaranteed Broad Street's obligations under the Credit Agreement.

**B.    The Adequate Protection and Lift Stay Orders.**

6.      On September 24 and September 28, 2025 (as applicable, the "Petition Date"), the Broad Street SPVs and affiliated Debtors commenced these chapter 11 cases.

7.      On December 19, 2025, the Court entered an order (the "Adequate Protection Order") granting the Aequum Secured Parties adequate protection for their interests in the Aequum Collateral. *See* Docket No. 1018. Under the order, the Debtors stipulated that the Aequum Secured Parties had claims in the amount of $44,796,970.81 as of the applicable Petition Date. *Id.* ¶ 3. The Adequate Protection Order established March 4, 2026, as the deadline (the "Challenge Deadline") for parties in interest to challenge the validity, amount, extent, perfection, and priority of the Aequum Secured Parties' liens. *Id.*

8.      On January 29, 2026, the Court entered an order (the "Lift Stay Order") granting the Aequum Secured Parties relief from the automatic stay to enforce their liens, rights, and remedies under their loan documents against the Aequum Collateral. *See* Docket No. 1820. Since entry of the Lift Stay Order, the Debtors have provided the Aequum Secured Parties possession of the Aequum Collateral, and access to related books and records, in accordance with the order. *See id.* ¶¶ 2–3. The Lift Stay Order was binding on any trustee or other successor-in-interest to the Debtors or their estates. *Id.* ¶ 12.

**C.    The Bank of America Adversary Proceeding and Committee Challenge.**

9.      The deadline to challenge the Aequum Secured Parties' liens under the Adequate Protection Order has expired. The only pending challenge (the "Challenge Proceeding") was filed by Bank of America, Wilmington Savings Fund Society, and GLAS USA LLC (collectively, the "Challenge Plaintiffs"), on April 1, 2026. *See* Adv. Docket No. 1. The Challenge Plaintiffs assert

4

baseless arguments that they have senior liens in the Aequum Collateral purportedly as a result of fraudulent Debtor conduct. *See generally id.*

10. On June 2, 2026, the Official Committee of Unsecured Creditors (the "Committee") filed a motion for derivative standing (the "Standing Motion") to file a proposed complaint (the "Committee Complaint") on behalf of the Debtors asserting colorless claims to avoid pre- and post-petition transfers to Aequum and related claims. *See* Docket No. 2881. Aequum objected to the motion. *See* Docket No. 2895. The Standing Motion is fully briefed.

**D.** **The Joint Chapter 11 Plan.**

11. On June 12, 2026, the Plan Debtors filed a revised joint chapter 11 plan. *See* Docket No. 2981. After the Court approved the Plan for solicitation, the Plan Debtors filed the solicitation version of the Plan. *See* Docket No. 3019. On June 23, 2026, the Plan Debtors filed a plan supplement and liquidation analysis. *See* Docket No. 3046 (the "Plan Supplement"). On July 14, 2026, the Plan Debtors filed, *inter alia*, the declaration of Charles M. Moore in support of confirmation. *See* Docket No. 3188 (the "Moore Declaration").

**OBJECTIONS**

**A.** **The Exculpation, Gatekeeping, and Injunctive Provisions Are Overly Broad.**

12. The Plan's exculpation provisions are patently overbroad and improperly shield Exculpated Parties from claims by non-Plan Debtor estates—including claims by the Broad Street SPVs and other SPV Debtor estates—and their creditors, including all SPV Lenders. The Plan Debtors designed these provisions to siphon value from non-Plan Debtor estates and their creditors, and to trade that value in order to secure support for the Plan from key Plan Debtor constituencies and stakeholders.

13. The Plan accomplishes this in several ways:

5

**Aequum's Exhibit 9**
**Page 5 of 18**

- **Exculpated Parties Definition.** The Exculpated Parties include (i) each of the FBG Debtors; (ii) certain members of the Special Committees of Plan Debtors First Brands Group Holdings, First Brands Group Intermediate, First Brands Group and, critically, Viceroy; (iii) certain Independent Managers of the Plan Debtors, and (iv) the Committee and each of its members in their capacities as members. Plan § 1.1, at 13.

- **Exculpation Provisions.** The Plan's exculpation provisions shield the Exculpated Parties from liability for essentially every action or inaction taken during these cases, *even if taken on behalf of SPV Debtors and any other non-Plan Debtor*, other than gross negligence, willful misconduct, or actual fraud. *Id.* § 13.6. The exculpated conduct extends to, *inter alia*, conduct relating to transactions between any SPV Debtor and Plan Debtor and any intercompany obligations, transactions, or transfers. *Id.*

- **Gatekeeping Provisions.** The Plan's gatekeeping provisions bar parties in interest from commencing or pursuing any claims against Exculpated Parties unless the claimant shall have first obtained an order from this Court (1) determining that its claims are not exculpated, (2) even if its claims are not exculpated, *determining that its claims are colorable*, and (3) authorizing the claimant to bring such claims. *Id.* § 13.4(c).

- **Plan Injunction.** The Plan enjoins all parties in interest from taking any actions against the Exculpated Parties to the extent they are exculpated. *Id.* §§ 13.4(b), 13.8.

14.     The SPV Debtors are not Plan Debtors. As such, the Exculpated Parties are not entitled to complete releases of their post-petition liability to the SPV Debtors, SPV Lenders, and other creditors of the SPV Debtor estates. *See NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419, 437 (5th Cir. 2022) (limiting exculpation "in a Chapter 11 reorganization plan" to the debtor, the creditors' committee and its members for conduct within the scope of their duties, the trustees within the scope of their duties, and independent directors). Exculpation of non-debtors is an exception to section 524(e)'s mandate that a debtor's discharge not discharge any co-liable parties. *Bank of N.Y. Tr. Co., NA v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*, 584 F.3d 229, 252 (5th Cir. 2009). Certainly, where there is no discharge and *the SPV Debtors themselves are neither exculpated nor giving or receiving releases under the Plan*, the Exculpated Parties cannot be protected from claims

6

relating to the SPV Debtors and their continuing chapter 11 cases. The Exculpated Parties simply cannot use the Plan as both a sword and shield against the SPV Debtors and their stakeholders.

15. Nor are the Plan Debtors entitled to use such releases as consideration for the settlements and compromises in their Plan, and as currency to consolidate support for their Plan, at the expense of the non-Plan Debtors, including the SPV Debtors, and their creditors. Simply put, the Plan Debtors have no right to strip the SPV Debtors and their creditors of potentially valuable claims and causes of action and to leverage and convert those assets for their own benefit. Any claims they have against the Exculpated Parties are likely to be key assets in the administration of the SPV Debtor estates. Accordingly, the Plan, which will yield no benefits to the SPV Debtor estates or their creditors—including the Broad Street SPVs and the Aequum Secured Parties— must leave them unimpaired.

16. Accordingly, the Plan should be revised to carve out the SPV Debtors, their estates, successors, and assigns, and their creditors (solely in their capacities as such), including the SPV Lenders (collectively, "SPV Stakeholders"), and all claims, causes of action, and other rights belonging to them, from the Plan's exculpation provisions, including the related gatekeeping provisions and injunctions.

**B. The Plan Threatens to Block the SPV Debtors, their Estates and Creditors from Pursuing Claims Based on Common Facts as Claims Held by the Plan Debtors and to Vest Those Claims in the Litigation Trust.**

17. Although the SPV Debtors are not Plan Debtors, the Plan effectively bundles every Estate claim and cause of action they—and the SPV Lenders and their other creditors—even potentially have in common with the Plan Debtor Estates and contributes them to the Litigation Trust. The Plan then bars all parties other than the Litigation Trust from pursuing those claims unless they obtain a Final Order determining those claims should not belong to the Litigation Trust.

7

Among the claims the Plan threatens to improperly consolidate in the Litigation Trust are any claims asserted in the Committee Complaint belonging to the Broad Street SPV Estates.

18.     The Plan accomplishes this as follows:

- **Estate Claims Definition.** The Plan defines "Estate Claims" that are contributed to the Litigation Trust to include essentially all Plan Debtor claims and remedies, and any Claim that merely "is *duplicative* of an Estate Claim . . . that is a *general claim* with no particularized injury . . . or any other Claim that is *in substance an Estate Claim*." Plan § 1.1, at 14 (emphasis added).

- **Plan Injunction.** The Plan injunction prohibits all parties in interest from exercising control over Estate Claims or from prosecuting Estate Claims. *Id.* §§ 13.4(a), (b), (d). The Litigation Trust is also entitled to file emergency applications for orders that the injunction has been violated and for its attorneys' fees and other costs and expenses. *Id.* § 13.4(d).

- **Preservation of Trust Assets.** The List of Litigation Trust Assets *automatically* "preserve[s] for the Litigation Trust pending entry of a Final Order . . . or other agreed resolution pursuant to Section 5.2(j) of the Plan," any claim or other asset that the Litigation Trust merely "asserts constitutes a Litigation Trust Asset." Plan Supplement, Ex. 4 (Litigation Trust Agreement), Ex. F (List of Litigation Trust Assets), at 1. The other Trust asset lists contain similar provisions. *See id.*, Ex. 6 (DIP Collateral Trust Agreement), Sch. I (DIP Collateral Trust Assets), at 1; Ex. 7 (ABL Collateral Trust Agreement), Ex. D (ABL Collateral Trust Assets), at 1.

- **Trust Asset Definitions and Lists.** The Plan defines "Litigation Trust Assets," "DIP Collateral Trust Assets," and "ABL Trust Assets" to exclude, "for the avoidance of doubt," assets determined *only by a Final Order* to be assets of the SPV Debtors, their Estates, or the SPV Lenders. Plan § 1.1, at 2, 11, 19. The lists of Trust assets in the Plan Supplement contain similar exclusions. *See* Plan Supplement, Ex. 4 (Litigation Trust Agreement), Ex. F (List of Litigation Trust Assets), at 1; Ex. 6 (DIP Collateral Trust Agreement), Sch. I (DIP Collateral Trust Assets), at 1; Ex. 7 (ABL Collateral Trust Agreement), Ex. D (ABL Collateral Trust Assets), at 1.

19.     These provisions have wide-ranging consequences. The Plan does not even attempt to define what it means for a claim to be "duplicative" of or "in substance" an Estate Claim, and the Plan's blocking provisions apply to all parties in interest, *regardless of whether they are not Plan Debtors or creditors of Plan Debtors*. As a result, the Litigation Trust could easily block any SPV Debtor, its Estate or successor trustee, or an SPV Lender, from asserting claims against Patrick

8

James or Edward James, such as the claims already asserted against them by the SPV Debtors jointly alongside the Plan Debtors.[5] Or it could block their claims against any other director, officer, or person potentially culpable for any fraud, such as claims for the fraud the Moore Declaration states Debtor officers Andy Brumbergs and Stephen Graham perpetrated against the SPV Debtors and their lenders. *See* Moore Decl. ¶ 59.

20.     The Litigation Trust is not entitled to sole standing to assert these claims to the exclusion of the SPV Debtors, their Estates, and their creditors. Whatever standing the Plan vests in the Litigation Trust could only block the creditors of the Plan Debtors in their capacities as such. *See, e.g.*, *In re Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994) (explaining that the trustee's exclusive standing to pursue estate causes of action is intended to protect similarly situated creditors and preserve estate causes of action for the benefit of all creditors, extending only to those claims actually belonging to the debtor itself).

21.     Even if the Litigation Trustee can block creditors of the Plan Debtors from asserting claims that actually are Estate Claims, this is not a Plan of the SPV Debtors. Their Estates are not being administered by this Plan and their creditors are not receiving any treatment under this Plan. As a result, the Litigation Trust has no right to exclude them from asserting any claims they may have just because they might arise out of the same facts or transactions.

22.     This is particularly prejudicial to the Aequum Secured Parties, as the ambiguous and overbroad definition of Estate Claims threatens to vest in the Litigation Trust any Broad Street

---

[5]     The List of Litigation Trust Assets filed with the Plan Supplement lists as Estate Claims all claims relating to the adversary complaints filed by the Debtors against, *inter alia*, Patrick James, the Debtors' founder and former Chief Executive Officer, *see First Brands Group LLC v. James*, Adv. No. 25-03803, and Edward James, the brother of Patrick James and the Debtors' former executive vice president, *see First Brands Group LLC v. Onset*, Adv. No. 26-03005 (collectively, the "Adversary Proceedings"). Plan Supplement, Ex. 4 (Litigation Trust Agreement), Ex. F (List of Litigation Trust Assets), at 1.

9

SPV claims the Committee Complaint asserts against Aequum, including, without limitation, to avoid an alleged unauthorized $570,000 postpetition transfer by Broad Street to Aequum.

23.     The rights given to the SPV Debtors, their Estates, and the SPV Lenders to request a Final Order determining that their claims (or other assets) are not property of the Litigation Trust (or other Trusts) are insufficient protection. The process for obtaining a Final Order could take months or longer, and the Plan does not specify what happens to such claims (or other assets) pending any dispute. The Litigation Trust could easily prejudice the disputed claims while prosecuting its own litigation (and the other Trusts could easily dispose of other disputed assets) while the resolution process plays out. Indeed, the failure to include procedures to protect the SPV Debtors, their Estates, and the SPV Lenders stands in stark contrast to the Plan's procedures for resolving disputes among the Trusts themselves. *See generally* Plan § 5.2(j).

24.     As a result, the Plan must be modified to (1) delete the ambiguous and prejudicial language in the Estate Claims definition including duplicative claims, generalized claims, and claims that are in substance Estate Claims, (2) provide that, for the avoidance of doubt, claims of the SPV Stakeholders are not Estate Claims for any purpose under the Plan, even if arising out of common facts with any Estate Claims, and (3) clarify, for the avoidance of doubt, that the automatic preservation language in the Trust asset lists in the Plan Supplement does not extend to SPV Stakeholder claims or assets.

### C.     The Plan Fails to Preserve Defenses, Setoff, and Related Rights of the SPV Debtors, Their Estates and Creditors.

25.     The Plan Debtors attempted to address creditor concerns that the Plan should not in any way impair or otherwise affect any party's defenses—including recoupment, setoff, or otherwise—to claims or causes of action asserted by the Litigation Trust. They also attempted to preserve other rights or arguments that parties may assert against the Litigation Trust, including

10

rights or arguments relating to substantive consolidation and similar theories. The Plan Debtors did so by adding the following language:

> Notwithstanding anything to the contrary in this Plan, nothing in this Plan shall in any way impair, prevent, affect, or prejudice *any defendant, counterparty, or other party against whom a Cause of Action is asserted by the Litigation Trust* from asserting, in response to any such Cause of Action, any *defense or legal argument*, including any defense of recoupment, setoff, or offset, arising from or relating to such defendant or party's *dealings, transactions, or relationships with any FBG Debtor* (including the ability to assert such defenses or legal arguments regardless of whether such FBG Debtor is the FBG Debtor whose estate may have held the Cause of Action being asserted). *Nothing in this Plan shall modify* any defense, response, or argument relating to any Cause of Action based on the doctrine of substantive consolidation, veil piercing, alter ego or any similar doctrine, including any defense, including any defense of recoupment, setoff, or offset, response, or argument that subsequent new value or other value provided to one debtor or related entity should be treated as value provided to another FBG Debtor or to the FBG Debtors in the aggregate . . . .

*See* Plan § 6.2(c) (emphasis added). However, the revisions still leave holes in the rights of all parties in interest.

26.    Specifically, the Plan protects myriad parties *in addition to* the Litigation Trust, i.e., "the FBG Debtors, the FBG Debtors' Estates, the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Released Parties, and/or the Exculpated Parties." *Id.* § 13.4(b). With respect to such parties, the Plan enjoins parties in interest from asserting any of their "right[s] of setoff of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action," that are released or exculpated, absent the "timely" preservation of such right in a document filed with the Court. *Id.*

27.    The revisions therefore still leave parties in interest impaired as against any party other than the Litigation Trustee. Should they be sued by any other party, or if the Litigation Trustee transfers any claims to another party or creates legally distinct entities to hold and prosecute any

**Aequum's Exhibit 9**
**Page 11 of 18**

such claims, the revisions would be of no protection. This is especially problematic to the SPV Stakeholders if the Plan's overbroad exculpation provisions are not fixed. Section 6.2(c) should be modified to permit parties in interest to assert their rights in any context, against any party. Such an outcome is contrary to the mandate of section 553 of the Bankruptcy Code. *See, e.g., IRS v. Luongo (In re Luongo)*, 259 F.3d 323, 333 (5th Cir. 2001) (stating, "[i]t is impossible for us to ignore the clear statement of § 553 that 'this title [the Bankruptcy Code] does not affect any right of a creditor to offset'"); *see also Gen. Motors Corp. v. Perry Gas Companies, Inc.*, 279 B.R. 824, 825 (S.D. Tex. 2002) (observing that "bankruptcy law . . . does not limit recoupment").

28. Additionally, the savings clause in Section 6.2(c) only protects the right to assert defenses or legal arguments arising from dealings, transactions, or relationships with the FBG Debtors. Section 6.2(c) should protect the right to assert any defenses, legal arguments, *or other Causes of Action* arising from dealings, transactions, relationships, *or other events or occurrences* involving the FBG Debtors *or any other party, including any other Debtor, their directors and officers*. The savings clause unnecessarily narrows the contexts in which these rights survive.

**D. The Plan Still Does Not Adequately Preserve Defenses Based on Doctrines Such as Substantive Consolidation, Veil Piercing, or Alter Ego.**

29. The Plan also threatens to impair the rights of parties in interest by consolidating Causes of Action within the Litigation Trust. Section 6.2(b) provides:

> The consolidation of Causes of Action within the Litigation Trust shall not entitle any defendant, counterparty, or other party against whom a Cause of Action is asserted by the Litigation Trust to assert, as a defense, setoff, recoupment, counterclaim, or reduction of any kind, any claim, defense, or right arising from or relating to such party's dealings, transactions, or relationships with any FBG Debtor . . . other than the specific FBG Debtor . . . who or whose Estate originally held the Cause of Action being prosecuted. For the avoidance of doubt, the consolidation of Causes of Action within the Litigation Trust for administrative convenience shall not operate to merge, consolidate, or otherwise combine the separate and distinct claims of the respective FBG Debtor Estates . . . nor shall such consolidation permit any party to assert cross-FBG Debtor . . . defenses . . . or to reduce its liability on a Cause of Action held by one FBG Debtor's Estate . . . by reference to any claim,

12

credit, or defense arising from such party's relationship with a different FBG Debtor
. . . .

Plan § 6.2(b). Simultaneously, the Plan treats each Claim filed against any FBG Debtor as a single obligation of all FBG Debtors and consolidates Claims against co-liable FBG Debtors (e.g., primary and guaranteed obligations or joint and several liability) into one Claim against a single consolidated estate. *Id.* § 5.2(k). Precautionary language stating these Plan provisions are for "administrative convenience" and "[s]olely for purposes of distributions," are not consistent with established case law.[6]

30.     The savings provisions of Section 6.2(c) quoted above, which purport to preserve theories of substantive consolidation, do not go far enough. They provide only that the Plan shall not "*modify* any defense, response, or argument relating to any Cause of Action based on the doctrine of substantive consolidation, veil piercing, alter ego or any similar doctrine." Plan § 6.2(c) (emphasis added). It is unclear how substantive consolidation can be asserted defensively on an ad hoc basis (if nothing else, it creates a high risk of inconsistent determinations between various actions). In any event, this does not address the primary issue—whether the *Plan itself is* a deemed substantive consolidation.

31.     Further, parties in interest should receive reciprocal protections as the Litigation Trust. Section 6.2(b) therefore should not merely prevent parties from asserting setoff and related rights, defenses, or claims against the Litigation Trust unless they relate to the FBG Debtor who,

---

[6]     *See In re Owens Corning*, 419 F.3d 195, 216 (3d Cir. 2005) (Ambro, J.) ("[T]he flaw most fatal to the Plan Proponents' proposal is that the consolidation sought was 'deemed' (i.e., a pretend consolidation for all but the [disfavored creditors]). . . . [T]he Plan Proponents seek to remake substantive consolidation not as a remedy, but rather a stratagem to . . . strip the [disfavored creditors] of rights under the Bankruptcy Code, favor other creditors, and yet trump possible Plan objections . . . ."); *Clyde Bergemann, Inc. v. Babcock & Wilcox Co. (In re Babcock & Wilcox Co.)*, 250 F.3d 955, 958–59 & n.5 (5th Cir. 2001) (explaining that "extinguish[ing] inter-debtor claims," "combin[ing] each debtor's creditors for purposes of voting on a reorganization plan," "pooling the assets of, and claims against, the [debtors]," and "satisfying liabilities from the resultant common fund" are hallmarks of substantive consolidation).

or whose Estate, originally held the Cause of Action being prosecuted. Section 6.2(b) should likewise provide that the consolidation of Causes of Action in the Litigation Trust shall not permit the Litigation Trust to assert in any dispute with a party in interest—including any SPV Stakeholder—setoff and related rights, defenses, or claims of any Debtor other than the Debtor who, or whose Estate, originally held the Cause of Action underlying the dispute. In other words, what is good for the goose, is good for the gander.

### E. Other Objections.

32. The following additional modifications and/or clarifications to the Plan must be made in order to preserve and protect the rights of the Broad Street SPVs and the Aequum Secured Parties:

- **Post-Effective Date SPV Debtor Governance.** The Plan does not make it clear how the SPV Debtors will be managed after the Effective Date. Article V of the Plan appears to divest all current control persons of Viceroy (the indirect parent of the SPV Debtors) and vest authority in the Wind Down Administrator to act in such roles or to appoint others as Viceroy's directors, managers, or officers. Plan § 5.8. This creates a conflict of interest, as the Wind Down Administrator is appointed by the FBG Debtors, Ad Hoc Group SteerCo, and Committee to conduct the Wind Down, i.e., liquidate and distribute any remaining assets of the FBG Debtors. *See id.* § 1.1, at 29 ("Wind Down" and "Wind Down Administrator"). The SPV Debtors must be governed by independent fiduciaries given their legal separateness from the Plan Debtors and exclusion from the Plan. Additionally, while it continues to be the indirect owner and controlling person of the SPV Debtors, Viceroy cannot be dissolved under Section 5.10 of the Plan.

- **Viceroy.** The Plan defines the "FBG Debtors" to include Viceroy. Viceroy should not be a Plan Debtor, as its primary purpose is to serve as the indirect parent of, and holding company for, the SPV Debtors, which themselves are excluded from the Plan. However, if Viceroy is not excluded from the Plan, then the Plan should state, for the avoidance of doubt, that the term "FBG Debtors" does not include the SPV Debtors.

- **Proceeds of Common Claims.** The Plan fails to specify how proceeds from the claims asserted in the Adversary Proceedings against Patrick and Edward James— jointly by the FBG Debtors and the SPV Debtors, including the Broad Street SPVs, as co-plaintiffs—will be apportioned among the various plaintiffs and their respective successors in interest. As such claims are among the Litigation Trust's principal sources of recovery, this is a glaring omission. *See* Disclosure Statement,

14

at 7–9. The Plan should be revised to include a provision requiring the Litigation Trust to account to the SPV Stakeholders with respect to any proceeds it receives in connection with the claims asserted in the Adversary Proceeding to ensure the Litigation Trust does not convert any proceeds that rightfully belong or should be paid over to the SPV Debtors and their Estates. The same protections should apply to any other claims jointly held by the Plan Debtors and SPV Debtors.

- **D&O Insurance Policies.** The Plan fails to preserve the SPV Debtors' interest in the D&O Policies providing insurance coverage for all Debtors, not just the Plan Debtors. The Plan Transfers the Insurance Rights of the Plan Debtors under the D&O Policies to the Litigation Trust, including the right to recover insurance proceeds. Plan § 11.4(d). Although the Plan states such transfer does not impair the rights of any other beneficiaries or insureds under the policies to submit claims or pursue coverage, there is no mechanism to reserve any portion of the insurance coverage for the claims of any SPV Debtors, including the Broad Street SPVs. *Id.* §§ 6.2(a), 11.4(d).

  As a result, the Litigation Trust will be positioned to potentially exhaust the shared insurance pool before the Broad Street SPVs and other SPV Debtors have a meaningful opportunity to access it or preserve their rights. *See* Moore Decl. ¶ 159 (citing insurance coverage as means of recovering on D&O claims). The Plan therefore must include a provision ensuring the Litigation Trust does not disproportionately exhaust any available insurance coverages—including on account of the jointly asserted claims against Patrick and Edward James in the Adversary Proceedings.

- **Recoveries from Government Enforcement Actions.** The Litigation Trust Assets include "all assets or other interests in property made payable to or otherwise acquired by any of the FBG Debtors (or their Estates) as a result of any government enforcement action." Plan § 1.1, at 19. The Plan should expressly preserve the SPV Debtors' rights and entitlement to any such funds or recoveries allocable to the SPV Debtors.

- **SPV Debtor Access to Books and Records.** Under the Plan, the Litigation Trust Assets include, *inter alia*, "all books, records, and investigative and/or discovery findings of the FBG Debtors," including investigatory findings developed by any independent director or manager of the FBG Debtors, the Examiner, its advisors and the Committee's advisors. *Id.* These materials are equally critical to the pursuit by the Broad Street SPVs and other SPV Debtors of their own independent claims and interests that depend on access to the same information. The Plan must include procedures and safeguards to ensure that the SPV Debtors will be afforded access to these materials.

- **Privilege Transfer.** The Plan transfers to the Litigation Trust broadly defined privileges and privileged information relating to Litigation Trust Assets. Plan § 6.2(d). As a result, in post-confirmation avoidance actions against Aequum and other SPV Lenders, the Litigation Trust could argue that materials about the

15

predicate inter-Debtor transfers are shielded by the privileges consolidated in the Trust and not discoverable from any affiliate that originally received or participated in the transfer. Accordingly, the Plan should provide that it does not limit in any manner the right of any defendant, initial or subsequent transferee, or other party to seek discovery concerning any alleged voidable transactions to the same extent available under applicable law before confirmation.

- **Aequum Cooperation Rights Under Lift Stay Order.** Under the Lift Stay Order, Aequum is entitled to certain cooperation from the Debtors in connection with the exercise of its rights and remedies of the Aequum Collateral Order. Lift Stay Order ¶ 3. Such cooperation obligations are binding on any successors to the Debtors. *Id.* ¶ 12. Accordingly, Section 15.12 of the Plan should expressly provide, for the avoidance of doubt, that the Lift Stay Order shall be binding on the Trusts, which receive originals and copies of the books and records of the Debtors under the Plan. Plan §§ 6.15. 7.11, 8.8.

- **Section 502(h) Claims.** Section 10.2 of the Plan should expressly state that, for the avoidance of doubt, nothing in the Plan shall prevent a creditor from filing an effective claim under section 502(h) in accordance with the Bankruptcy Code and other applicable law. Such modification is essential to protect the rights of the Aequum Secured Parties, the other SPV Lenders, and any other creditor targeted by the avoidance actions the Litigation Trust intends to prosecute after confirmation.

- **Controlling Document.** The protections and savings clauses discussed in the objections set forth in *supra* sections B–C, and the objection set forth above concerning access to books and records and the transfer of privileges, must also expressly supersede any contrary provisions in the Trust agreements, given the default supremacy granted to the Litigation Trust Agreement and other documents in the Plan Supplement. *See* Plan §§ 1.6, 6.8.

- **Administrative Insolvency and Lack of Feasibility.** The Plan is not feasible. Indeed, the Plan delays paying significant administrative expenses and priority claims until well after the Effective Date without establishing that sufficient funds will be available to pay those claims. *Id.* §§ 2.1(a), 2.5, 4.1(a). The Plan Debtors estimate the outstanding administrative expense claims against the FBG Debtors total $222 million and acknowledge at least $245 million of asserted Priority Claims. Moore Decl. ¶¶ 193, 216. The Plan Debtors assert only $78 million of Priority Claims will be allowed and intend to satisfy administrative and priority claims as required under section 1129(a)(9) and (a)(11) with the proceeds of Estate Claims. *Id.* ¶ 228. The Plan Debtors offer only speculative projections concerning anticipated post-confirmation litigation recoveries. *See generally id.* A plan wholly reliant on hundreds of millions of speculative litigation recoveries just to break even does not establish feasibility.

These deficiencies are particularly concerning given that, on or about the Confirmation Date, the Estate Claims Credit Bid Transaction and DIP Collateral

16

**Aequum's Exhibit 9**
**Page 16 of 18**

Credit Bid Transactions will be consummated; the Litigation Trust Assets, DIP Collateral Trust Assets, and ABL Collateral Trust Assets contributed to the respective Trusts; and in connection therewith the relevant parties will receive section 363(m) protections. Plan §§ 5.2(e)–(f), 5.3(i)–(iv). Further, if the Plan does prove infeasible, the credit bid transactions will still be protected by section 363(m). *Id.* § 12.3.

33. If the Plan is confirmed despite the patently deficient feasibility showing and irrevocably transfers substantially all Estate assets into the Trusts, confirmation must be conditioned on curing the numerous deficiencies discussed throughout this Objection. Without the foregoing revisions and modifications, the Plan should not be confirmed.

**RESERVATION OF RIGHTS**

34. This Objection is submitted without prejudice to, and with a full reservation of, Aequum's right to supplement, amend, or modify this Objection and to assert or join additional objections to the confirmation of the Plan on any grounds that may become apparent or otherwise appropriate. Aequum reserves all rights to raise additional objections to confirmation of the Plan on the bases set forth herein and on any other grounds available under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or applicable law, including, without limitation, the right to join any objections filed by other parties in interest to the Plan.

35. Furthermore, Aequum expressly reserves all of its rights of setoff or recoupment and defenses of any kind, pursuant to applicable law or otherwise, against (a) any obligation that may be or become due from, or against the property of, the Debtors, the Estates, the Trusts, and their respective representatives, successors, and assigns, (b) any other person or entity whose claims or interests are addressed in the Plan, who benefits from any releases, exculpation, injunctions, or other protections under the Plan, or (c) any other party or party in interest, on account of or in connection with or with respect to any such claims, interests, or otherwise.

**Aequum's Exhibit 9**
**Page 17 of 18**

## CONCLUSION

36.     WHEREFORE, Aequum respectfully requests that the Court (a) condition confirmation of the Plan upon incorporation of the revisions and clarifications requested herein and (b) grant Aequum such other and further relief as the Court deems just and proper.

Respectfully submitted,

**BLANK ROME LLP**

Dated: July 20, 2026

*/s/ Jennifer K. Malow*
Jennifer K. Malow (Bar No. 3925677)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
Email: Jennifer.Malow@blankrome.com

Kenneth J. Ottaviano
Stephanie K. Hor-Chen
444 West Lake Street, Suite 1650
Chicago, Illinois 60606
Telephone: (312)776-2500
Facsimile: (312) 776-2601
Email: Ken.Ottaviano@blankrome.com
            Stephanie.HorChen@blankrome.com

*Counsel for Aequum Capital Financial II LLC*

## CERTIFICATE OF SERVICE

I certify that on July 20, 2026, I electronically filed the foregoing document(s) with the Clerk of the Court for the U.S. Bankruptcy Court for the Southern District of Texas, using the CM/ECF system. The ECF system will send a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept service of this document by electronic means.

*/s/ Jennifer K. Malow*
Jennifer K. Malow

18
