**Exhibit 36**

**United States Bankruptcy Court, Southern District of Texas**

**Fill in this information to identify the case (Select only one Debtor per claim form):**

**Debtor:** Carnaby Inventory III, LLC

**Case Number:** 25-90390

Modified Official Form 410

# Proof of Claim

4/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1:   Identify the Claim

| | | |
|---|---|---|
| 1. **Who is the current creditor?** | GLAS Trust Company LLC | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? | |

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Address1: 3 Second Street | Address1: |
| Address2: Suite 206 | Address2: |
| Address3: | Address3: |
| Address4: | Address4: |
| City: Jersey City | City: |
| State: NJ | State: |
| Postal Code: 07311 | Postal Code: |
| Country: | Country: |
| Contact phone 201-201-8642 | Contact phone |
| Contact email tarik.johnson@glas.agency | Contact email |

**Uniform Claim Identifier (if you use one)**

| | | |
|---|---|---|
| 4. **Does this claim amend one already filed?** | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____ | Filed on _____<br>MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? _____ | |

**Claim Number: 1235**

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ Not less than $59,622,980.00 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See Addendum

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe: See Addendum

**Basis for perfection:** See Addendum

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $See Addendum

**Annual Interest Rate** (when case was filed) ____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| | |
|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ Yes. *Check one:*                 **Amount entitled to priority**<br><br>☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $_____<br><br>☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $_____<br><br>☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $_____<br><br>☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $_____<br><br>☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $_____<br><br>☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies.    $_____<br><br>* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. |
| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☑ No<br><br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**    $_____ |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*Tarik Johnson*    12/04/2025

_____    _____
Electronic Signature             Date

**Name of the person who is completing and signing this claim**

Name:   Tarik Johnson
_____
     First name        Middle name        Last name

Title/Company:   GLAS Trust Company LLC
_____
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address:   3 Second Street

Suite 206
_____
Number     Street

Jersey City      NJ      07311
_____
City        State      ZIP Code    Country

Contact phone   201-201-8642      Email   tarik.johnson@glas.agency

**Additional Noticing Addresses (if provided):**

**Additional Address 1**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Address 2**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
 Postal Code:
 Country:

Contact Phone:
Contact Email:

**Additional Supporting Documentation Provided**

☑ Yes
☐ No

-----------------------------------------------------------------------------------------------------------

 Attachment Filename:

Carnaby Inventory III, LLC (25-90390) POC Form (Carnaby II Secured Lenders against CIII) (Execution Version with Addendum).pdf

KROLL

**United States Bankruptcy Court, Southern District of Texas**

| Fill in this information to identify the case (Select only one Debtor per claim form): |
| --- |

**Debtor Name and Case Number:**

Modified Official Form 410

# Proof of Claim

04/25

Read the instructions before filling out this form. **This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

❑ No
❑ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Name

Number         Street

City                          State          ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**Where should payments to the creditor be sent?** (if different)

Name

Number         Street

City                          State          ZIP Code

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

❑ No
❑ Yes.   Claim number on court claims registry (if known)_____     Filed on _____
                                                                  MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

❑ No
❑ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

❑ No

❑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

---

**7. How much is the claim?**

$_____. **Does this amount include interest or other charges?**

❑ No

❑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

---

**9. Is all or part of the claim secured?**

❑ No

❑ Yes. The claim is secured by a lien on property.

**Nature of property:**

❑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

❑ Motor vehicle

❑ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property**: $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%

❑ Fixed

❑ Variable

---

**10. Is this claim based on a lease?**

❑ No

❑ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

---

**11. Is this claim subject to a right of setoff?**

❑ No

❑ Yes. Identify the property: _____

---

**Proof of Claim**                                                                 page 2

| | | Amount entitled to priority |
|---|---|---|

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

☐ Yes. *Check one:*

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $_____

☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $_____

☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies.    $_____

* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

☑ No

☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**    $_____

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    12/04/2025
MM / DD / YYYY

Signature

Name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Tarik | | Johnson |
| | First name | Middle name | Last name |
| Title | Authorized Signatory | | |
| Company | GLAS Trust Company LLC as administrative agent for Carnaby II Secured Lenders | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 3 Second Street, Suite 206 | | |
| | Number        Street | | |
| | Jersey City | NJ | 07311 |
| | City | State | ZIP Code |
| Contact phone | 201 - 201 - 8642 | Email | Tarik.Johnson@glas.agency |

**OMNIBUS ADDENDUM TO PROOFS OF CLAIMS FILED BY
GLAS TRUST COMPANY LLC, AS ADMINISTRATIVE AGENT TO
THE CARNABY II SECURED LENDERS**

GLAS Trust Company LLC, in its capacity as administrative agent (the "Administrative Agent") for the Lenders[1] (the "Carnaby II Secured Lenders") under that certain credit agreement dated as of May 31, 2022 (the "Carnaby II Credit Agreement"), hereby submits this omnibus addendum (the "Addendum") in support of its proofs of claim (together with the proof of claim form, the "Proof of Claim") submitted against Carnaby Inventory II, LLC ("Carnaby II") and Carnaby Inventory III, LLC ("Carnaby III").  This Addendum is intended to be and should be treated as part of the Proof of Claim.

1.      On September 24, 2025 (the "Initial Petition Date"), certain Debtors,[2] including Carnaby II and Carnaby III, commenced these Chapter 11 Cases by filing voluntary bankruptcy petitions with the United States Bankruptcy Court for the Southern District of Texas (the "Court").  Between September 28, 2025, and September 29, 2025, approximately 99 additional Debtors, including First Brands Group, LLC ("FBG") and other related FBG Debtors, filed their own bankruptcy petitions.

**BASIS FOR CLAIM**

2.      The Carnaby II Credit Agreement. On or about May 31, 2022, Carnaby II, as the Borrower, FBG, as the Servicer, First Brands Group Holdings, LLC ("FB Holdings") and Carnaby Inventory Holdings II, LLC ("Carnaby Holdings II," together with FB Holdings, the "Guarantors"), as Guarantors, the Carnaby II Secured Lenders party thereto as Lenders from time

---

[1]     Capitalized terms not defined herein shall have the meanings ascribed to those terms in the Carnaby II Credit Agreement.

[2]     A complete list of the Debtors in these Chapter 11 cases (the "Chapter 11 Cases") may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address is 127 Public Square, Suite 5300, Cleveland, OH 44114.

to time, and GLAS Trust Company LLC, as Administrative Agent, executed the Carnaby II Credit Agreement (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time).[3]

3.      The Carnaby II Credit Agreement provides for an asset-based revolving loan facility in the aggregate principal amount of up to $60 million under which such funds were advanced by the Carnaby II Secured Lenders in the maximum principal amount to Carnaby II.

4.      Carnaby II's obligations under the Carnaby II Credit Agreement and the Transaction Documents[4] are secured by first priority liens on the Collateral (as defined below) pursuant to the U.S. Security Agreement (as defined below) and the Mexican Security Agreement (as defined below), as further detailed below.

5.      The Administrative Agent holds, on behalf of the Carnaby II Secured Lenders, $58,964,276.00 in outstanding principal amount (defined as the "Loans"), due and payable by Carnaby II and the Guarantors under the Carnaby II Credit Agreement.  In addition to the obligation to repay the principal amount of the Loans, Carnaby II and the Guarantors assumed the obligation to pay accrued and unpaid Interest and all other Obligations[5] and Guaranteed

---

[3]   On May 30, 2025, the parties to the Carnaby II Credit Agreement entered into an Extension Agreement, extending the Maturity Date originally set forth in the Carnaby II Credit Agreement.

[4]   The Carnaby II Credit Agreement defines the "Transaction Documents" as "collectively, [the Carnaby II Credit Agreement], each Borrowing Notice, the Security Documents, Purchase Orders, the Maquiladora Agreements, the Purchase Agreement, the Sale Agreement, the Manufacturing Agreement and all other instruments, documents, certificates, reports and agreements required to be executed and delivered pursuant hereto." Carnaby II Credit Agreement, Ex. I.

[5]   The Carnaby II Credit Agreement defines "Obligations" as "all present and future indebtedness, reimbursement obligations, and other liabilities and obligations (howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, or due or to become due, now existing or hereafter arising) of the Loan Parties to Administrative Agent, any Lender and/or any Indemnified Party, arising under or in connection with this Agreement or any other Transaction Document or the transactions contemplated hereby or thereby, and shall include, without limitation, the aggregate principal amount of Loans outstanding hereunder, all Interest, fees and all other amounts due or to become due under the Transaction Documents (whether in respect of fees, costs, expenses, indemnifications or otherwise), including interest, fees and other obligations that accrue after the

2

Obligations[6] outstanding under the Carnaby II Credit Agreement and other Transaction Documents.

6.    The Carnaby II Promissory Notes. Carnaby II's obligations to repay the Obligations under the Carnaby II Credit Agreement were also evidenced through Promissory Notes executed by Carnaby II with respect to each advancement, and guaranteed in each case, by the Guarantors.

7.    U.S. Security Agreement. On May 31, 2022, Carnaby II, Carnaby Holdings II, and the Administrative Agent for the benefit of the Carnaby II Secured Lenders, entered into a Pledge and Security Agreement, as amended, restated, amended and restated, supplemented or otherwise modified from time to time (the "U.S. Security Agreement").

8.    As security for the prompt and complete payment or performance, as the case may be, in full of the "Obligations" (as defined in the U.S. Security Agreement, as amended by the Cross-Collateralization Agreement),[7] Carnaby II and Carnaby Holdings II, pledged, collaterally assigned and granted to the Administrative Agent, on behalf of and for the benefit of the Secured Parties (including the Carnaby II Secured Lenders), a continuing security interest in all of its right,

---

commencement of any Event of Bankruptcy with respect to the Loan Parties (in each case whether or not allowed as a claim in such proceeding)." Carnaby II Credit Agreement, Ex. I.

[6]    The Carnaby II Credit Agreement defines "Guaranteed Obligations" as "the Obligations and all costs and expenses including, without limitation, all court costs and attorneys' and paralegals' fees (including allocated costs of in-house counsel and paralegals) and expenses paid or incurred by the Administrative Agent, and the Secured Parties in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, any Borrower, any Guarantor or any other guarantor of all or any part of the Obligations[.]" Carnaby II Credit Agreement, section 11.1.

[7]    "Obligations" under the U.S. Security Agreements means "(i) "Obligations" (as defined in the [Carnaby II] Credit Agreement), (ii) Guaranteed Obligations (as defined in the [Carnaby II] Credit Agreement) and (iii) "Obligations" (as defined in the Pledge and Security Agreement, dated as of July 6, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time) by and among, Carnaby Inventory III, LLC, as borrower, Carnaby Inventory Holdings III, LLC, and GLAS Trust Company LLC, as administrative agent)." Cross-Collateralization Agreement, section 4(b)(ii).

title and interest in, to and under all of the following personal property and other assets, whether now owned by or owing to, or hereafter acquired by or arising in favor of such, and regardless of where located: (i) all Accounts; (ii) all Cash; (iii) all Chattel Paper (including, without limitation, all Tangible Chattel Paper and all Electronic Chattel Paper); (iv) all Commercial Tort Claims; (v) all Contracts, together with all Contract Rights arising thereunder; (vi) all Deposit Accounts; (vii) all Documents; (viii) all Equipment; (ix) all Financial Assets; (x) all Fixtures; (xi) all General Intangibles; (xii) all Goods; (xiii) all Governmental Authorizations; (xiv) all Instruments; (xv) all Intellectual Property Collateral; (xvi)  all Inventory; (xvii) all Investment Property, Pledged Stock and other Pledged Collateral; (xviii) all letters of credit and Letter-of-Credit Rights; (xix) all Licenses; (xx) all Proceeds of insurance; (xxi) all Receivables; (xxii) all Real Estate Assets; (xxiii) all Securities Accounts, Money, Securities, and other investments therein, and all Security Entitlements in respect thereof; (xxiv) all Software and all recorded data of any kind or nature, regardless of the medium of recording; (xxv) all Supporting Obligations relating to any of the foregoing; and (xxvi) all accessions to, substitutions and replacements for and Proceeds and products of the foregoing, together with all books and Records, customer lists, credit files, computer files, programs, printouts and other computer materials and Records related thereto and any General Intangibles at any time evidencing or relating to any of the foregoing and all collateral security and Guarantees given by any Person with respect to any of the foregoing (collectively, the "U.S. Collateral"), thereby achieving a complete cross-collateralization of the Carnaby II Credit Agreement and Carnaby III Credit Agreement in respect of all obligations owing under such facilities and all collateral pledged under them.

9.      Mexican Security Agreement. As additional security for the payment, performance and satisfaction in full of any and all of the Obligations, on May 31, 2022, Carnaby II, as Pledgor,

the Administrative Agent for the benefit of the Carnaby II Secured Lenders, as Pledgee, BPI Brake Manufacturing Juarez S.A. de C.V. and BPI Braking Systems Mexico, S.A. de C.V. as depositaries (jointly, the "Depositaries"), and Brake Parts Inc. LLC ("BPI") entered into a Floating Lien Pledge Agreement (*Contrato de Prenda sin Transmisión de Posesión* ), under Mexican law (the "Mexican Security Agreement").

10.     Under the Mexican Security Agreement, Carnaby II granted to the Administrative Agent, for the benefit of the Carnaby II Secured Lenders, a first-priority floating lien pledge and security interest over the "Pledged Assets" to secure the due and timely payment, performance and satisfaction when due (whether at stated maturity, by acceleration or otherwise) of any and all of the Obligations.  The Mexican Security Agreement defines Pledged Assets as any and all property and inventory located in Mexico, currently owned by the Pledgor, or acquired by the Pledgor or arising in the future, including without limitation, all Raw Materials,[8] together with (i) all documents, documents of title, warehouse receipts (or similar documents), bills of lading or orders for delivery of all, or any portion of the foregoing; and (ii) all products and/or sale proceeds of any and all of the foregoing, including, without limitation, insurance proceeds (collectively, the "Mexican Collateral" and together with the U.S. Collateral, the "Collateral").

11.     The Mexican Security Agreement also contains representations that Carnaby II is the sole, legal, and beneficial owner of the Mexican Collateral, which are free and clear of any liens and/or any other documents whatsoever which by its terms restrict or otherwise prohibit any

---

[8]   "Raw Materials" are defined under the Mexican Security Agreement as "all the assets that comprise the inventory of the Pledgor, whether now owned or hereafter acquired, including without limitation, all inventory of the Pledgor (i) held for sale or lease, (ii) furnished or to be furnished under any service agreement, (iii) held for display or demonstration, or (iv) on lease or consignment, in favor of third parties; including accessories, packaging and shipping materials, spare parts, repair parts, returned and repossessed inventory, all raw materials, work-in-process, finished inventory and supplies used or consumed in the Pledgor business together with all documents, documents of title, warehouse receipts, pledge bonds, bills of lading, deposit certificates or orders for the delivery of all, or any portion, of the foregoing, including without limitation the assets listed in Exhibit C [attached thereto]."

lien, assignment, transfer, use or exercise of such Mexican Collateral or any portion thereof, which have been duly and legally imported into Mexico under the temporary importation regime. It also provides that the Mexican Security Agreement and the security interest granted hereunder constitute a legal, valid, binding and enforceable security over the Mexican Collateral.

12.     Perfection. The security interests granted under the U.S. Security Agreement were properly perfected by filing UCC financing statements with the Delaware Secretary of State. As a result, the Administrative Agent holds, on behalf of and for the benefit of the Carnaby II Secured Lenders, properly perfected security interests in all assets of Carnaby II.

13.     In turn, the Mexican Security Agreement was executed in compliance with Mexican law, before a Mexican Notary Public and it is duly registered before the Mexican Sole Registry of Liens over Movable Assets (*Registro Unico de Garantias Mobiliarias*) ("RUG"). As a result, the Mexican Security Agreement created in favor of the Administrative Agent, on behalf and for the benefit of the Carnaby II Secured Lenders, a valid and perfected first-priority security interest in the Mexican Collateral.

14.     Cross-Collateralization Agreement. On July 6, 2022, the parties to the Carnaby II Credit Agreement entered into a Cross-Collateralization Agreement with the parties to the Carnaby III Credit Agreement.[9]   Under the Cross-Collateralization Agreement, the parties under the Carnaby III Credit Agreement agreed that the Collateral securing the Carnaby III Credit Agreement would also secure the obligations under the Carnaby II Credit Agreement, and vice versa.

---

[9]   The "Carnaby III Credit Agreement" refers to certain credit agreement dated as of July 6, 2025 (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time), entered into among Carnaby III, as borrower, FBG, as the servicer, FB Holdings and Carnaby Inventory Holdings III, LLC, as guarantors, the Carnaby II Secured Lenders party thereto from time to time, and GLAS Trust Company LLC, as administrative agent.

15.     Other Transaction Documents. The Mexican Security Agreement provides that Carnaby II maintains a manufacturing business relationship with BPI, as evidenced by a certain Manufacturing Agreement, pursuant to which Carnaby II provides to the Depositories the Raw Material for the Services to be provided under the Maquiladora Agreements.  In turn, BPI has entered into certain Maquiladora Agreements with the Depositaries, pursuant to which the Mexican Collateral have been duly imported (and/or will continue to be duly imported) on a temporary basis into Mexican territory in accordance with the "maquiladora program" in accordance with the Decree for the development of the Manufacturing, Maquiladora and Expert Services Industry, and certain IMMEX Permits (as defined in the Manufacturing Agreements).

16.     The Manufacturing Agreement was executed by and among Carnaby II and BPI on May 31, 2022, and created valid and binding obligations of BPI, enforceable against such party in accordance with its terms.  Under the Manufacturing Agreement, Carnaby II hired and requested certain manufacturing services from BPI to manufacture and produce the products requested by Carnaby II.  BPI was authorized to perform the manufacture processes required by Carnaby II through its Maquiladoras located in Mexico.

17.     The Manufacturing Agreement provides that neither BPI nor its Maquiladoras shall under any circumstances be considered to have any proprietary interest in the Materials (as defined in the Manufacturing Agreement) which Carnaby II may deliver to BPI nor on the Products (as defined in the Manufacturing Agreement).  It also provides that BPI and its Maquiladoras shall provide necessary administrative services for shipment, including the arrangement of proper transportation of the Materials and the Products between Mexico and the United States.  The Manufacturing Agreement also provides that the Maquiladoras shall be the importer and exporter

7

of record for Mexican customs purposes and shall obtain and maintain all necessary IMMEX Permits to import the Materials and Products.

**ASSERTION OF CLAIM**

18.     Proof of Claim.  This Proof of Claim is filed by the Administrative Agent for the benefit of the Carnaby II Secured Lenders and sets forth their claims against (i) Carnaby II, including outstanding amounts owed under the Carnaby II Credit Agreement and other Transaction Documents, and (ii) Carnaby III, under the Cross-Collateralization Agreement, in the aggregate principal amount of at least **$58,964,276.00**, accrued and unpaid interest of at least **$658,704.05**, plus post-petition and default interest, as well as any other fees, out-of-pocket fees and expenses (including, but not limited to the fees, charges and disbursements of outside counsel, special counsel, local counsel and consultants to the Administrative Agent and/or the Carnaby II Secured Lenders), costs, and other charges, together with all amounts payable under section 506(b) of title 11 of the United States Code (the "Bankruptcy Code"), and any other obligations incurred in connection with the Carnaby II Credit Agreement and related Transaction Documents that are required to be paid by Carnaby II or any Guarantor pursuant to any Transaction Documents and not paid, or Carnaby III pursuant to the Cross-Collateralization Agreement (collectively, the "Secured Obligations").

19.     Additional Claims.  The Administrative Agent is also entitled on behalf of the Carnaby II Secured Lenders to seek payment in full of, among other things, (i) any accrued and unpaid interest (including post-petition and default interest); (ii) any and all unpaid fees and expenses owed to the Administrative Agent and/or any Carnaby II Secured Lender; (iii) any indemnifications, out-of-pocket fees and expenses (including, but not limited to the fees, charges

8

and disbursements of outside counsel, special counsel, local counsel and consultants to the Administrative Agent and/or the Carnaby II Secured Lenders), premiums, reimbursements, charges, damages, and/or claims (as defined in the Bankruptcy Code) arising under the Transaction Documents, and in particular covered and secured by the security interests granted under the U.S. Security Agreement, the Mexican Security Agreement, and the Cross-Collateralization Agreement, and (iii) all obligations owed to the Carnaby II Secured Lenders until all Obligations have been paid in full (collectively, the "Additional Claims," together with the Secured Obligations, the "Claims").

20.      Federal Rule of Bankruptcy Procedure 3001(e)(3) states that "[i]f a claim other than one based on a publicly traded note, bond, or debenture has been transferred for security before proof of the claim has been filed, the transferor or transferee or both may file a proof of claim for the full amount." Fed. R. Bankr. P. 3001(e)(3). Section 101(54) of the Bankruptcy Code defines "transfer" as "the creation of a lien." 11 U.S.C. § 101(54)(A).   Pursuant to the U.S. Security Agreement, the Administrative Agent has been granted properly perfected, first-priority liens, for the benefit of the Carnaby II Secured Lenders, over, *inter alia,* all Carnaby II's Contracts, together with all Contract Rights arising thereunder.  Accordingly, the Administrative Agent holds any claims arising out of any such Contracts or Contract Rights (as each such term is defined in the U.S. Security Agreement) that may be asserted by Carnaby II (or by virtue of the Cross Collateralization Agreement, Carnaby II) against any person or entity, including, without limitation, any other Debtor and non-Debtor entities.  Such claims include in the case of the other Debtors counterparty to the Credit Agreement and the Transactions Documents, any claims held by Carnaby II or Carnaby III for breach of contract, in each case, up to the full amount of the Obligations and Guaranteed Obligations.

21.     The Administrative Agent on behalf of the Carnaby II Secured Lenders, reserves the right to assert any other claim as part of this Proof of Claim, subject to discovery or further disclosure by Carnaby II, Carnaby III or any other party, as well as its rights to seek payment as an oversecured creditor of all amounts to which it may be entitled under 11 U.S.C. § 506.

22.     <u>Nature of the Claims</u>. The Claims asserted in this Proof of Claim are secured by properly perfected, valid and enforceable first-priority liens and pledges on all of the assets of Carnaby II as contemplated by the U.S. Security Agreement and the Mexican Security Agreement, and all of the assets of Carnaby III as contemplated by the Cross-Collateralization Agreement. Consequently, the Claims are secured, except to the extent that the value of the Collateral securing the Claims is insufficient to satisfy the Claims in full.  To the extent of any deficiency, the remainder of the Claim is filed as a superpriority adequate protection claim under section 507(b) of the Bankruptcy Code and/or as a general unsecured claim.

**RESERVATION OF RIGHTS**

23.     By filing this Proof of Claim, the Administrative Agent does not waive, and expressly reserves, all rights and remedies at law or in equity under any applicable law or jurisdiction that the Administrative Agent has or may have against Carnaby II, Carnaby III, any guarantor or obligor (including but not limited to Carnaby Holdings II or FB Holdings), and any of their respective affiliates and subsidiaries, or any other person or entity.  Without limiting the generality of the foregoing, this Proof of Claim is not, ***nor shall it be deemed or construed to be***: (a) a waiver or release of any terms or provisions of the Carnaby II Credit Agreement, the Carnaby III Credit Agreement or any of its related transaction documents, the Cross-Collateralization Agreement, or the Transaction Documents; (b) an election of remedies or waiver of any past, present or future breaches, defaults or events of default under the Carnaby III Credit Agreement or any of its related transaction documents, the Carnaby II Credit Agreement, the Cross-

10

Collateralization Agreement, or any related Transaction Documents; (c) a waiver of the rights and remedies against any other person or entity that may be liable for all or part of the claims set forth herein, whether and affiliate or guarantor of Carnaby II or Carnaby III, an assignee or otherwise; (d) consent by the Administrative Agent to the jurisdiction of the Court with respect to any proceeding commenced against or otherwise involving the Administrative Agent; (e) a waiver of any right to (1) withdraw the reference, or otherwise challenge the jurisdiction of the Court, with respect to the subject matter of these claims, any objection or any other proceeding commenced in this case against or otherwise involving the Administrative Agent, or (2) assert that the reference has already been withdrawn with respect to the subject matter of these claims, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving the Administrative Agent; (f) a waiver or release of, or any other limitation on, the Administrative Agent's right to assert that any portion of the claims asserted herein or any other claims are entitled to treatment as priority claims including under sections 503(b) and 507(a)(2) of the Bankruptcy Code; (g) a waiver of any rights that the Administrative Agent may have pursuant to section 506(b) of the Bankruptcy Code; (h) a waiver or release of any lien, pledge or security interest against Carnaby II, Carnaby III, any other Debtor or any third parties; (i) a waiver or release of, or any other limitation on, the Administrative Agent's rights to assert that any nonrecourse claim should be treated as a recourse claim, including but not limited to the exercise of any right that the Administrative Agent may have pursuant section 1111(b) of the Bankruptcy Code; (j) consent to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto pursuant to 28 U.S.C. section 157(e) or otherwise; (k) a waiver by the Administrative Agent of the right to have final orders in non-core matters entered only by a United States District Court judge;

or (l) a waiver or release of the Administrative Agent's right to have any and all final orders in any all noncore matters or proceedings entered only after de novo review by a United States District Court Judge.

24.     The Administrative Agent expressly reserves the right to amend, replace, update, or supplement this Proof of Claim (including, the Proof of Claim's form) at any time and in any respect (including, without limitation, as necessary or appropriate to amend, quantify, or correct amounts, to provide additional detail regarding the claims set forth herein, to fix the amount of any contingent or unliquidated component of the claims, or to include any claim, at law or in equity), to add or amend documents and other information, to file additional proofs of claim or further pleadings for additional claims, to contest the validity, priority, and extent of any other purported liens and security interests other than those described herein, and to assert any and all other claims, actions, defenses, setoffs, recoupments, rights or remedies of whatever kind or nature that it currently has, or may have in the future against Carnaby II, Carnaby III, and/or any other Debtors or non-Debtors, or any other person or entity, including without limitation, rights against guarantors, officers, directors, and other creditors of Carnaby II, Carnaby III, or any other Debtors, at law or in equity, including, without limitation, administrative or other priority claims, setoff and recoupment rights, lien rights, interest, and the right to assert claims that are otherwise warranted in any related actions.

25.     The filing of this Proof of Claim shall not be deemed a waiver of any claim, at law or in equity or under any applicable law that the Administrative Agent may have against Carnaby II, or Carnaby III, including, but not limited to, administrative claims, priority claims, secured claims, unsecured claims, constructive trust claims, or the right to assert claims that are otherwise warranted in any related action. This Proof of Claim also expressly includes any and all rights to

12

assert a constructive trust against assets or cash held by Carnaby II, Carnaby III, and claims for any and all amounts owed, in damages or otherwise, that the Administrative Agent has or may have, whether known or unknown, against Carnaby II, Carnaby III, and all those purporting to act on its behalf, whether presently asserted or to be asserted, including, without limitation, claims based upon common law fraud, misrepresentation, subrogation, indemnity, contribution, unjust enrichment, constructive trust, fraudulent conveyance, failure to fulfill contractual and fiduciary obligations, breach of the implied covenant of good faith and fair dealing, making, causing, or permitting to be made misleading statements regarding the business and activities of Carnaby II, Carnaby III, or any other person or entity, failure to take prudent and appropriate action regarding adverse business conditions affecting the business operations of Carnaby II, Carnaby III, or any other person or entity, tortious interference, unjust enrichment, quantum meruit, failure to require adequate financial and accounting controls for Carnaby II or Carnaby III, and any other theory available under applicable law or equity, all of which singularly or collectively may have caused the Administrative Agent to incur damages.

26.     Nothing herein shall be deemed to waive, stop, or derogate from the rights of Administrative Agent under the Transaction Documents, and in particular, in connection with the Carnaby II Credit Agreement, the Carnaby III Credit Agreement or its transactional documents, the Cross-Collateralization Agreement, the U.S. Security Agreement, or the Mexican Security Agreement. This Proof of Claim also is without prejudice to any and all of the Administrative Agent's rights, claims, and defenses under the Bankruptcy Code or otherwise, including, but not limited to, the right to vote on any plan(s) in the Debtors' Chapter 11 Cases.

27.     The Administrative Agent reserves the right to claim that the portion of its fees, interest, costs, expenses, and other charges incurred or accruing after the Initial Petition Date

13

constitute administrative expenses of Carnaby II's estate to the extent such expenses are not otherwise paid in full, and reserves the right to file a claim or application for payment of such administrative expenses.

28.     No judgment has been rendered on the Claims set forth in this Proof of Claim.

29.     With respect to any portion of the Claims that is unliquidated or as to which the amount is undetermined, the Administrative Agent does not waive their rights thereto by not claiming specific amounts at this time.

30.     The Administrative Agent expressly reserves, and does not waive, its right to payment of any amounts due from the guarantors, FB Holdings and Carnaby Holdings II, or from any other sources under any applicable law and jurisdiction.

31.     The Administrative Agent expressly reserves its rights to exercise judicial actions under any applicable law and jurisdiction against non-debtor entities during and after this Chapter 11 Cases.

32.     Nothing contained in this Proof of Claim shall be deemed an admission by the Administrative Agent.

33.     To the best of the Administrative Agent's knowledge, the claims set forth herein are not subject to setoff or counterclaim, provided, however, that the Claimant Parties expressly reserve and do not waive any right of set-off or recoupment they may possess.

35.     The Administrative Agent does not consent to the surcharge of the Collateral (or such collateral as may be provided by certain orders of the Court) by Carnaby II's estates or the Debtors' estates, their representatives or any other person or party-in-interest pursuant to 11 U.S.C. §506(c) or otherwise.

14

36.     The Administrative Agent expressly reserves the right to withdraw this Proof of Claim as if it had never been filed.

## NOTICES AND COMMUNICATIONS

32.     Any and all notices and communications concerning the Proof of Claim shall be sent to the following addresses both in hard copy and via e-mail:

Tarik Johnson
**GLAS TRUST COMPANY LLC**, in its capacity as Administrative Agent
3 Second Street, Suite 206, Jersey City, NJ 07311
Tel.: +1 201 201 8642
E-mails:
Tarik.Johnson@glas.agency

with a copy to (which shall not constitute notice)

Allan S. Brilliant
Stephen Wolpert
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Tel.: +1 212 698 3599
E-mails:
allan.brilliant@dechert.com
stephen.wolpert@dechert.com

## SUPPORTING DOCUMENTS

33.     The Administrative Agent's claims are based on the Carnaby II Credit Agreement, the Cross-Collateralization Agreement, the U.S. Security Agreement, the Mexican Security Agreement, and other related Transaction Documents.  Copies of these documents and additional related documents are not attached to the Proof of Claim because of their voluminous nature.

15

Counsel to the Administrative Agent will provide copies of such documents to any party in interest in these Chapter 11 Cases, upon a reasonable written request (and entry into an appropriate confidentiality agreement, if necessary) addressed to counsel to the Administrative Agent at the address set forth herein.

34.     Each and every description in this Addendum to the Carnaby II Credit Agreement and Transaction Documents is qualified in its entirety by the reference to the applicable provisions of such documents, and all such documents are incorporated herein by reference.  In the event of any inconsistency between this Addendum and any such document, including the proof of claim form, the relevant document shall control.

**GLAS Trust Company LLC**
In its capacity as Administrative Agent under the
Carnaby II Credit Agreement and related Transaction Documents

Dated: December 4, 2025

**KROLL**

Electronic Proof of Claim Confirmation:  3950-1-RDXAC-281662536

Claim Electronically Submitted on (UTC) :  2025-12-04T20:45:44.899Z

Submitted by:  GLAS Trust Company LLC
tarik.johnson@glas.agency

**KROLL**