**Exhibit 42**

**United States Bankruptcy Court, Southern District of Texas**

---

**Fill in this information to identify the case (Select only one Debtor per claim form):**

**Debtor:** Carnaby Inventory III, LLC

**Case Number:** 25-90390

---

Modified Official Form 410

# Proof of Claim

**4/25**

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

---

| Part 1: | Identify the Claim |
|---|---|

| 1. | **Who is the current creditor?** | GLAS Trust Company LLC as administrative agent for the Carnaby II Secured Lenders |
|---|---|---|
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |

| 2. | **Has this claim been acquired from someone else?** | ☑ No |
|---|---|---|
| | | ☐ Yes. From whom? |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Address1: 3 Second Street | Address1: |
| Address2: Suite 203 | Address2: |
| Address3: | Address3: |
| Address4: | Address4: |
| City: Jersey City | City: |
| State: NEW JERSEY | State: |
| Postal Code: 07311 | Postal Code: |
| Country: | Country: |
| Contact phone 2018392200 | Contact phone |
| Contact email Tarik.Johnson@glas.agency | Contact email |

**Uniform Claim Identifier (if you use one)**

| 4. | **Does this claim amend one already filed?** | ☑ No | | |
|---|---|---|---|---|
| | | ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on _____ | MM / DD / YYYY |

| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No |
|---|---|---|
| | | ☐ Yes. Who made the earlier filing? |

---

Claim Number: 2668      **Proof of Claim**      page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|----------------------------------------------------------------|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ Not less than $160,717,187 .

**Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See Addendum

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:   See Addendum

**Basis for perfection:**   See Addendum

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $ See Addendum

**Amount of the claim that is secured:**   $ See Addendum

**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**Proof of Claim**   page 2

| | |
|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:*                                            **Amount entitled to priority**<br><br>☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).     $ _____<br><br>☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).     $ _____<br><br>☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).     $ _____<br><br>☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).     $ _____<br><br>☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).     $ _____<br><br>☐ Other. Specify subsection of 11 U.S.C. § 507(a)(\_\_\_\_\_) that applies.     $ _____<br><br>* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. |
| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☑ No<br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**     $ _____ |

---

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*Jeffrey Schoenfeld*  07/07/2026

_____
Electronic Signature            Date

**Name of the person who is completing and signing this claim**

Name      Jeffrey Schoenfeld
            First name         Middle name         Last name

Title/Company      Vice President / GLAS TRUST COMPANY LLC
            Identify the corporate servicer as the company if the authorized agent is a servicer.

            3 Second Street, Suite 203

Address
            Number      Street

            Jersey City          NEW JERSEY 07311
            City            State       ZIP Code     Country

Contact phone      2018392200          Email     jeffrey.schoenfeld@glas.agency

---

**Proof of Claim**                                      page 3

**Additional Noticing Addresses (if provided):**

**Additional Address 1**

Name: GLAS Trust Company LLC as administrative agent for the Carnaby II Secured Lenders

Address1: C/O DECHERT LLP

Address2: 1095 Avenue of the Americas

Address3:

Address4:

City: New York

State: NY

Postal Code: 10036

Country:

Contact Phone: 2126983599

Contact Email: allan.brilliant@dechert.com, stephen.wolpert@dechert.com

**Additional Address 2**

Name:

Address1:

Address2:

Address3:

Address4:

City:

State:

Postal Code:

Country:

Contact Phone:

Contact Email:

**Additional Supporting Documentation Provided**

☑ Yes

☐ No

-------------------------------------------------------------------------------------------------

Attachment Filename:

First Brands - Omnibus Proof of Claim Addendum for FBG Debtors (Dechert 07-06-2026).pdf

**KROLL**

**OMNIBUS ADDENDUM TO PROOFS OF CLAIM FILED BY
GLAS TRUST COMPANY LLC, AS ADMINISTRATIVE AGENT TO
THE CARNABY II AND III SECURED LENDERS**

GLAS Trust Company LLC, in its capacity as administrative agent (the "Administrative Agent") for the Lenders[1] under (i) that certain credit agreement dated as of May 31, 2022 (the "Carnaby II Credit Agreement") among Carnaby Inventory II, LLC ("Carnaby II"), as Borrower; First Brands Group, LLC ("FBG"), as Servicer; First Brands Group Holdings, LLC ("FB Holdings") and Carnaby Inventory Holdings II, LLC ("Carnaby Holdings II"), as Guarantors; the Lenders party thereto (the "Carnaby II Secured Lenders"); and GLAS Trust Company LLC, as Administrative Agent, and acknowledged and agreed to by Brake Parts Inc LLC ("BPI"), BPI Brake Manufacturing Juarez, S.A. de C.V. ("BPIJ"), and BPI Braking Systems Mexico, S.A. de C.V. ("BPIM")  and (ii) that certain credit agreement dated as of July 6, 2022 (the "Carnaby III Credit Agreement," and together with the Carnaby II Credit Agreement, the "Credit Agreements") among Carnaby Inventory III, LLC ("Carnaby III"), as Borrower; FBG, as Servicer; FB Holdings and Carnaby Inventory Holdings III, LLC ("Carnaby Holdings III"), as Guarantors; the Lenders party thereto (the "Carnaby III Secured Lenders," and together with the Carnaby II Secured Lenders, the "Carnaby II and III Secured Lenders"); and GLAS Trust Company LLC, as Administrative Agent and acknowledged and agreed to by Trico Products Corporation ("TPC"), Trico Technologies Corporation ("TTC" and together with TPC, "Trico"), Trico Componentes, S.A. de C.V. ("TC") and Subensambles Internacionales, S. de R.J. de C.V. ("SI"), *hereby submits* this omnibus addendum (the "Addendum") in support of its proofs of claim (together with the applicable proof of claim form, each a "Proof of Claim") submitted against (a) FBG; (b) FB

---

[1]   Capitalized terms not defined herein shall have the meanings ascribed to those terms in the Credit Agreements and the Transaction Documents, as applicable.

Holdings; (c) BPI; (d) TPC; (e) TTC (together with FBG, FB Holdings, BPI, and TPC, collectively, the "FBG Debtors"); (f) Carnaby Holdings II; (g) Carnaby Holdings III, each in its capacity as further described in the applicable Proof of Claim.  This Addendum is intended to be and should be treated as part of each applicable Proof of Claim.

1.      On September 24, 2025 (the "Initial Petition Date"), certain Debtors,[2] including Carnaby Holdings II and Carnaby Holdings III, commenced these Chapter 11 Cases by filing voluntary bankruptcy petitions with the United States Bankruptcy Court for the Southern District of Texas (the "Court").  Between September 28, 2025, and September 29, 2025, approximately 99 additional Debtors, including the FBG Debtors, filed their own bankruptcy petitions (each, in the case of an FBG Debtor, its respective "Petition Date").

## BASIS FOR CLAIM

2.      The Credit Agreements.  On or about May 31, 2022, Carnaby II, as Borrower, FBG, as Servicer, FB Holdings and Carnaby Holdings II, as Guarantors, the Carnaby II Secured Lenders as Lenders from time to time, and GLAS Trust Company LLC, as Administrative Agent, executed the Carnaby II Credit Agreement (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time) along with BPI, BPIJ, and BPIM.

3.      On or about July 6, 2022, Carnaby III, as Borrower, FBG, as Servicer, FB Holdings and Carnaby Holdings III, as Guarantors, the Carnaby III Secured Lenders as Lenders from time to time, and GLAS Trust Company LLC, as Administrative Agent, executed the Carnaby III Credit Agreement (as may be amended, restated, amended and restated, supplemented or otherwise

---

[2]   A complete list of the Debtors in these Chapter 11 cases (the "Chapter 11 Cases") may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address is 127 Public Square, Suite 5300, Cleveland, OH 44114.

modified from time to time) along with Trico, TC, and SI. [3]  On July 6, 2022, the parties to each of the Carnaby II Credit Agreement and the Carnaby III Credit Agreement entered into a Cross-Collateralization Agreement (the "Cross-Collateralization Agreement"), pursuant to which the liens securing the Obligations[4] and Guaranteed Obligations[5] outstanding under each Credit Agreement secured the Obligations and Guaranteed Obligations outstanding under the other Credit Agreement, and vice versa.

4.      The Carnaby II Credit Agreement provides for an asset-based revolving loan facility in the aggregate principal amount of up to $60 million aggregate principal amount and the Carnaby III Credit Agreement provides for an asset-based revolving loan facility in the aggregate principal amount of up to $100 million aggregate principal amount, under which funds were advanced by the Carnaby II Secured Lenders and the Carnaby III Secured Lenders, respectively.

5.      Obligations. Each Borrower's obligations under the applicable Credit Agreement and the Transaction Documents[6] thereunder are secured by first-priority liens granted by Carnaby

---

[3]   On May 30, 2025, the parties to the Carnaby II Credit Agreement and to the Carnaby III Credit Agreement entered into Extension Agreements, extending the Maturity Date originally set forth in the Carnaby II Credit Agreement and the Carnaby III Credit Agreement to December 1, 2025.

[4]   Each Credit Agreement defines "Obligations" in identical terms as "all present and future indebtedness, reimbursement obligations, and other liabilities and obligations (howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, or due or to become due, now existing or hereafter arising) of the Loan Parties to Administrative Agent, any Lender and/or any Indemnified Party, arising under or in connection with this Agreement or any other Transaction Document or the transactions contemplated hereby or thereby, and shall include, without limitation, the aggregate principal amount of Loans outstanding hereunder, all Interest, fees and all other amounts due or to become due under the Transaction Documents (whether in respect of fees, costs, expenses, indemnifications or otherwise), including interest, fees and other obligations that accrue after the commencement of any Event of Bankruptcy with respect to the Loan Parties (in each case whether or not allowed as a claim in such proceeding)." Carnaby II Credit Agreement, Ex. I; Carnaby III Credit Agreement, Ex. I.

[5]   Each Credit Agreement defines "Guaranteed Obligations" in identical terms as "the Obligations and all costs and expenses including, without limitation, all court costs and attorneys' and paralegals' fees (including allocated costs of in-house counsel and paralegals) and expenses paid or incurred by the Administrative Agent, and the Secured Parties in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, any Borrower, any Guarantor or any other guarantor of all or any part of the Obligations[.]" Carnaby II Credit Agreement, section 11.1; Carnaby III Credit Agreement, section 11.1.

[6]   Each Credit Agreement defines the "Transaction Documents" in identical terms as "collectively, [the applicable Credit Agreement], each Borrowing Notice, the Security Documents, Purchase Orders, the Maquiladora Agreements, the Purchase Agreement, the Sale Agreement, the Manufacturing Agreement and all other

II, Carnaby III, Carnaby Holdings II, and Carnaby Holdings III, on the applicable Collateral (as defined below) pursuant to the U.S. Security Agreements (as defined below) and the applicable Mexican Security Agreement (as defined below), as further detailed below.

6.     The Administrative Agent holds, on behalf of the Carnaby II Secured Lenders, loans totaling $58,964,276.00 in outstanding principal amount plus accrued and unpaid interest thereon of not less than $658,704.05 under the Carnaby II Credit Agreement and, on behalf of the Carnaby III Secured Lenders, loans totaling $100,000,000.00 in outstanding principal amount plus accrued and unpaid interest thereon of not less than $1,094,207.28 under the Carnaby III Credit Agreement (together, the "Loans"), each due and payable by the Borrowers and Guarantors under the Credit Agreements.  In addition to the obligation to repay the principal amount of the Loans, each of the Borrowers and the Guarantors (including FB Holdings) assumed the obligation to pay accrued and unpaid interest and all other Obligations and Guaranteed Obligations outstanding under the respective Credit Agreement and other Transaction Documents.

7.     Promissory Notes.  Each Borrower's obligations to repay the Obligations under the respective Credit Agreement were also evidenced through Promissory Notes executed by such Borrower with respect to each advance, and guaranteed, in each case, jointly and severally, by the applicable Guarantors under such Credit Agreement.

8.     U.S. Security Agreements.  On or about May 31, 2022, Carnaby II, Carnaby Holdings II, and the Administrative Agent for the benefit of the Carnaby II Secured Lenders entered into a Pledge and Security Agreement, as amended, restated, amended and restated, supplemented or otherwise modified from time to time (the "Carnaby II U.S. Security

---

instruments, documents, certificates, reports and agreements required to be executed and delivered pursuant hereto." Carnaby II Credit Agreement, Ex. I; Carnaby III Credit Agreement, Ex. I.

Agreement"). On or about July 6, 2022, Carnaby III, Carnaby Holdings III, and the Administrative Agent for the benefit of the Carnaby III Secured Lenders entered into a Pledge and Security Agreement, as amended, restated, amended and restated, supplemented or otherwise modified from time to time (the "Carnaby III U.S. Security Agreement," and together with the Carnaby II U.S. Security Agreement, the "U.S. Security Agreements").

9.      As security for the prompt and complete payment or performance in full of the applicable "Obligations" (as defined in the U.S. Security Agreements, as amended by the Cross-Collateralization Agreement[7]), each Borrower and the Carnaby Holdings II or Carnaby Holdings III, as applicable, entity pledged, collaterally assigned and granted to the Administrative Agent, on behalf of and for the benefit of the applicable Secured Parties, a continuing security interest in all of their right, title and interest in, to and under all of the following personal property and other assets, whether now owned by or owing to, or hereafter acquired by or arising in favor of, such party, and regardless of where located: (i) all Accounts; (ii) all Cash; (iii) all Chattel Paper (including without limitation, all Tangible Chattel Paper and all Electronic Chattel Paper); (iv) all Commercial Tort Claims; (v) all Contracts, together with all Contract Rights arising thereunder; (vi) all Deposit Accounts; (vii) all Documents; (viii) all Equipment; (ix) all Financial Assets; (x)

---

[7]   As amended by the Cross Collateralization Agreement, "Obligations" under the Carnaby II U.S. Security Agreement means "(i) 'Obligations' (as defined in the [Carnaby II] Credit Agreement), (ii) Guaranteed Obligations (as defined in the [Carnaby II] Credit Agreement) and (iii) 'Obligations' (as defined in the Pledge and Security Agreement, dated as of July 6, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time) by and among, Carnaby Inventory III, LLC, as borrower, Carnaby Inventory Holdings III, LLC, and GLAS Trust Company LLC, as administrative agent)." Cross-Collateralization Agreement, section 4(b)(ii).

As amended by the Cross Collateralization Agreement, "Obligations" under the Carnaby III U.S. Security Agreement means "(i) "Obligations" (as defined in the [Carnaby III] Credit Agreement), (ii) Guaranteed Obligations (as defined in the [Carnaby III] Credit Agreement) and (iii) "Obligations" (as defined in the Pledge and Security Agreement, dated as of May 31, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time) by and among, Carnaby Inventory II, LLC, as borrower, Carnaby Inventory Holdings II, LLC, and GLAS Trust Company LLC, as administrative agent)." Cross-Collateralization Agreement, section 4(b)(iv).

all Fixtures; (xi) all General Intangibles; (xii) all Goods; (xiii) all Governmental Authorizations; (xiv) all Instruments; (xv) all Intellectual Property Collateral; (xvi)  all Inventory; (xvii) all Investment Property, Pledged Stock and other Pledged Collateral; (xviii) all letters of credit and Letter-of-Credit Rights; (xix) all Licenses; (xx) all Proceeds of insurance; (xxi) all Receivables; (xxii) all Real Estate Assets; (xxiii) all Securities Accounts, Money, Securities, and other investments therein, and all Security Entitlements in respect thereof; (xxiv) all Software and all recorded data of any kind or nature, regardless of the medium of recording; (xxv) all Supporting Obligations relating to any of the foregoing; and (xxvi) all accessions to, substitutions and replacements for, and Proceeds and products of the foregoing, together with all books and Records, customer lists, credit files, computer files, programs, printouts and other computer materials and Records related thereto and any General Intangibles at any time evidencing or relating to any of the foregoing and all collateral security and Guarantees given by any Person with respect to any of the foregoing (collectively, the "U.S. Collateral"), thereby achieving a complete cross-collateralization of the Carnaby II Credit Agreement and Carnaby III Credit Agreement in respect of all obligations owing under such facilities and all collateral pledged under them.

10.     Mexican Security Agreements. As additional security for the payment, performance and satisfaction in full of any and all of the Obligations, (i) on May 31, 2022, Carnaby II, as Pledgor, the Administrative Agent for the benefit of the Carnaby II Secured Lenders, as Pledgee, BPIJ and BPIM, as depositaries (jointly, the "Carnaby II Depositaries"), and BPI entered into a Floating Lien Pledge Agreement (*Contrato de Prenda sin Transmisión de Posesión*), under Mexican law (the "Carnaby II Mexican Security Agreement"); and (ii) on July 6, 2022, Carnaby III, as Pledgor, the Administrative Agent for the benefit of the Carnaby III Secured Lenders, as Pledgee, TC and SI, as depositaries (jointly, the "Carnaby III Depositaries"), and TPC and TTC

6

entered into a Floating Lien Pledge Agreement (*Contrato de Prenda sin Transmisión de Posesión* ), under Mexican law (the "Carnaby III Mexican Security Agreement," and together with the Carnaby II Mexican Security Agreement, the "Mexican Security Agreements").

11.     Under the Carnaby II Mexican Security Agreement, Carnaby II granted to the Administrative Agent, for the benefit of the Carnaby II Secured Lenders, a first-priority floating lien pledge and security interest over the "Pledged Assets" to secure the due and timely payment, performance and satisfaction when due (whether at stated maturity, by acceleration or otherwise) of any and all of the Obligations.  Under the Carnaby III Mexican Security Agreement, Carnaby III granted to the Administrative Agent, for the benefit of the Carnaby III Secured Lenders, a first-priority floating lien pledge and security interest over the "Pledged Assets" to secure the due and timely payment, performance and satisfaction when due (whether at stated maturity, by acceleration or otherwise) of any and all of the Obligations.  Each Mexican Security Agreement defines Pledged Assets as any and all property and inventory located in Mexico, currently owned by the applicable Pledgor, or acquired by the applicable Pledgor or arising in the future, including without limitation, all Raw Materials,[8] together with (i) all documents, documents of title, warehouse receipts (or similar documents), bills of lading or orders for delivery of all, or any portion of the foregoing; and (ii) all products and/or sale proceeds of any and all of the foregoing, including, without limitation, insurance proceeds (collectively, the "Mexican Collateral" and together with the U.S. Collateral, the "Collateral").  Each Mexican Security Agreement also

---

[8]     "Raw Materials" are defined under the Mexican Security Agreements as "all the assets that comprise the inventory of the Pledgor, whether now owned or hereafter acquired, including without limitation, all inventory of the Pledgor (i) held for sale or lease, (ii) furnished or to be furnished under any service agreement, (iii) held for display or demonstration, or (iv) on lease or consignment, in favor of third parties; including accessories, packaging and shipping materials, spare parts, repair parts, returned and repossessed inventory, all raw materials, work-in-process, finished inventory and supplies used or consumed in the Pledgor business together with all documents, documents of title, warehouse receipts, pledge bonds, bills of lading, deposit certificates or orders for the delivery of all, or any portion, of the foregoing, including without limitation the assets listed in Exhibit C [attached thereto]."

provides that the applicable Pledgor is the sole, legal, and beneficial owner of the Mexican Collateral, free and clear of any liens or other encumbrances, and that the security interest granted thereunder constitutes a legal, valid, binding, and enforceable security over the Mexican Collateral.

12.     Perfection. The security interests granted under the U.S. Security Agreements were properly perfected by filing UCC financing statements with the Delaware Secretary of State.[9]  As a result, the Administrative Agent holds, on behalf of and for the benefit of the Carnaby II and III Secured Lenders, properly perfected security interests in all assets of each of Carnaby II, Carnaby III, Carnaby Holdings II, and Carnaby Holdings III.

13.     In turn, each Mexican Security Agreement was executed in compliance with Mexican law, before a Mexican Notary Public and is duly registered before the Mexican Sole Registry of Liens over Movable Assets (*Registro Unico de Garantias Mobiliarias*).  As a result, the Carnaby II Mexican Security Agreement created in favor of the Administrative Agent, on behalf and for the benefit of the Carnaby II Secured Lenders, a valid and perfected first-priority security interest in the applicable Mexican Collateral owned by Carnaby II,[10] and the Carnaby III Mexican Security Agreement created in favor of the Administrative Agent, on behalf and for the

---

*See* (i) UCC Financing Statement File No. 2022 4634697, filed at 12:39 PM on June 2, 2022, against Carnaby Inventory II, LLC as debtor; (ii) UCC Financing Statement File No. 2022 4634796, filed at 12:42 PM on June 2, 2022, against Carnaby Inventory Holdings II, LLC as debtor; (iii) UCC Financing Statement File No. 2022 5629043, filed at 3:58 PM on July 6, 2022, against Carnaby Inventory III, LLC as debtor; and (iv) UCC Financing Statement File No. 2022 5628912, filed at 3:55 PM on July 6, 2022, against Carnaby Inventory Holdings III, LLC as debtor.

[10]    The Carnaby II Mexican Security Agreement was registered with the RUG on June 7, 2022 (at 15:08:37 ZULU GMT/UTC), as Asiento No. 31302386, Garantía Mobiliaria No. 16927095, Folio Electrónico R20220601MG36, with a maximum secured amount of USD $60,000,000, covering all movable goods and inventory located in Mexico, currently or hereafter owned by Carnaby II.  On July 6, 2022, the Carnaby II Mexican Security Agreement was amended by the Amendment Agreement (Convenio Modificatorio) to extend the secured obligations to cover the Carnaby III Credit Agreement obligations as well, consistent with the Cross-Collateralization Agreement.  This amendment was registered with the RUG on July 8, 2022 (at 19:21:38 ZULU GMT/UTC), as Asiento No. 32022878, Garantía Mobiliaria No. 16927095 (same folio as the Carnaby II Original Pledge), amending the maximum secured amount to USD $160,000,000.

8

benefit of the Carnaby III Secured Lenders, a valid and perfected first-priority security interest in the applicable Mexican Collateral owned by Carnaby III.[11]

14.     Cross-Collateralization Agreement.   As noted in paragraph 2 above, on July 6, 2022, the parties to the Carnaby II Credit Agreement and the Carnaby III Credit Agreement entered into the Cross-Collateralization Agreement, pursuant to which the Collateral securing each Credit Agreement also secures the obligations under the other Credit Agreement, and vice versa.   This cross-collateralization was also reflected in and effected through the U.S. Security Agreements, and in the Mexican Security Agreements as set forth above.

15.     Other Obligations Under the Transaction Documents.   FBG executed each of the Credit Agreements as "Servicer" and made various representations and warranties and undertakings in favor of the Carnaby II and III Secured Lenders thereunder including, without limitation, (i) to cause each of BPI and Trico to comply with the terms of the Transaction Documents; (ii) to act as Servicer under the Credit Agreements and to perform (or cause to be performed) certain functions for Carnaby II and Carnaby III.   Accordingly, FBG is responsible for ensuring the Carnaby II, Carnaby III, BPI, and Trico, and the Guarantors under the Credit Agreements each perform their obligations under the Transaction Documents (including, without limitation, obligations to maintain and preserve adequate records of the purchases and sales of inventory, to deliver regular reporting, and to maintain corporate separateness of the entities).   (*See* Credit Agreements Sec. 6.2(a)–(f), Sec. 5.1(s), (t); *see also* Sec. 5.1(a), (f), (g), (m), (n), (o), (p), (v), (w), (bb), and (dd); Sec. 5.2(j).   In their respective Credit Agreements, each of BPI and Trico

---

[11]   The Carnaby III Mexican Security Agreement was formalized before Corredor Público No. 7 (Licenciado José Carlos Reyes Cadena) in the State of Nuevo León, Mexico, and was registered with the RUG on July 8, 2022 (at 18:50:02 ZULU GMT/UTC), as Asiento No. 32020337, Garantía Mobiliaria No. 17265862, Folio Electrónico R20220708MSF5, with a maximum secured amount of USD $160,000,000 (covering both facilities per the Cross-Collateralization Agreement), covering all movable goods and inventory located in Mexico, currently or hereafter owned by Carnaby III.

9

covenanted for the benefit of the Carnaby II and III Secured Lenders to timely perform all of their respective obligations under the Transaction Documents to which they are party. *See* Credit Agreement, Sec. 5.1(aa).

16.     As contemplated by the Carnaby II Credit Agreement, Carnaby II maintains a manufacturing business relationship with BPI, as evidenced by a Manufacturing Agreement, pursuant to which Carnaby II provides to BPI and the Carnaby II Depositaries the Raw Material for manufacture in accordance with BPI's Maquiladora Agreements with the Carnaby II Depositaries. The Manufacturing Agreement between Carnaby II and BPI was executed on May 31, 2022, and created valid and binding obligations of BPI, enforceable against it in accordance with its terms. Under that Manufacturing Agreement, Carnaby II hired and requested certain manufacturing services from BPI to manufacture and produce the products requested by Carnaby II. BPI was authorized to perform the manufacturing processes required by Carnaby II through its "maquiladora program" with the Carnaby II Depositaries in accordance with the Decree for the development of the Manufacturing, Maquiladora and Expert Services Industry, and certain IMMEX Permits (as defined in the Manufacturing Agreement).

17.     As contemplated by the Carnaby III Credit Agreement, Carnaby III maintains a manufacturing business relationship with Trico, as evidenced by the Manufacturing Agreements, pursuant to which Carnaby III provides to Trico and the Carnaby III Depositaries the Raw Material for manufacture in accordance with Trico's Maquiladora Agreements with the Carnaby III Depositaries. The Manufacturing Agreements between Carnaby III and Trico were executed on July 6, 2022, and created valid and binding obligations of Trico, enforceable against them in accordance with its terms. Under the Manufacturing Agreements, Carnaby III hired and requested certain manufacturing services from Trico to manufacture and produce the products requested by

Carnaby III.  Trico was authorized to perform the manufacturing processes required by Carnaby III through its "maquiladora program" with the Carnaby III Depositaries in accordance with the Decree for the development of the Manufacturing, Maquiladora and Expert Services Industry, and certain IMMEX Permits (as defined in the Manufacturing Agreements).

18.     The Manufacturing Agreements between Carnaby II and Carnaby III and BPI and Trico, as applicable, provide that neither BPI, Trico, the Carnaby II Depositaries, or the Carnaby III Depositaries, as applicable, shall under any circumstances be considered to have any proprietary interest in the Materials (as defined in the Manufacturing Agreements) which Carnaby II and Carnaby III may deliver to BPI, Trico, the Carnaby II Depositaries, or Carnaby III Depositaries, as applicable, nor on the Products (as defined in the Manufacturing Agreements).  They also provide that BPI, Trico, the Carnaby II Depositaries, and the Carnaby III Depositaries, as applicable, shall provide necessary administrative services for shipment, including the arrangement of proper transportation of the Materials and the Products between Mexico and the United States.  The Manufacturing Agreement also provides that the Carnaby II Depositaries and the Carnaby III Depositaries shall be the importer and exporter of record for Mexican customs purposes and shall obtain and maintain all necessary IMMEX Permits to import the Materials and Products, but that under no circumstances does acting as importer and exporter result in the conveyance of ownership of the Materials or Products to the Carnaby II Depositaries or Carnaby III Depositaries.

19.     Carnaby II executed a Purchase Agreement and Sale Agreement with BPI on May 31, 2022, which provided for the recurring purchase and sale of inventory assets that would constitute the Materials and Products under their Manufacturing Agreement.  Carnaby III executed a Purchase Agreement and Sale Agreement with each of Trico on July 6, 2022 which provided for

11

the recurring purchase and sale of inventory assets that would constitute the Materials and Products under their Manufacturing Agreements.  As buyers and sellers under the Purchase Agreements and Sale Agreements, the parties thereto intended to effect absolute and irrevocable 'true sales' for all purposes under applicable law and accounting principles, including, without limitation, in their respective books, records, computer files, tax returns (federal, state and local), regulatory and governmental filings and undertook to reflect such sales in their respective financial statements).  Each Purchase Agreement and Sale Agreement further required that the parties advise anyone inquiring about the ownership of any assets purchases thereunder that all applicable assets had been sold to the applicable buyer.  Additionally, each of applicable selling parties under the Purchase Agreements and Sale Agreements represented and warranted to in their respective Purchase Agreements and Sale Agreements that they had good title to the assets being sold, in each case free and clear of any liens.

20.     Purchases and sales of inventory between Carnaby II and BPI occurred beginning on or about May 31, 2022 and continued up until and after the Petition Date (including during the 20 days before the Petition Date).  Purchases and sales of inventory between Carnaby III and Trico occurred beginning on or about July 6, 2022 and continued up until and after the Petition Date (including during the 20 days before the Petition Date).

**ASSERTION OF CLAIM**

21.     <u>Proof of Claim</u>.  This Proof of Claim is filed by the Administrative Agent for the benefit of the Carnaby II and III Secured Lenders and sets forth their claims against each of Carnaby Holdings II, Carnaby Holdings III, and the FBG Debtors as follows:

22.     <u>Carnaby Holdings II and Carnaby Holdings III Guarantee Claims</u>.  Each of Carnaby Holdings II and Carnaby Holding III executed an absolute, unconditional payment guaranty of all Obligations and Guaranteed Obligations under both the Carnaby II Credit Agreement (Article XI)

and the Carnaby III Credit Agreement (Article XI), jointly and severally with the applicable Borrower and the other Guarantors.  The Administrative Agent's claims against Carnaby Holdings II and Carnaby Holdings III therefore include the full amount of the Guaranteed Obligations under both Credit Agreements (in the aggregate principal amount of at least **$158,964,276.00** plus at least **$1,752,911.33** of accrued and unpaid interest, plus all other fees, and other amounts due thereunder).

23.     First Brands Group Holdings, LLC Guarantee Claims.  FB Holdings executed an absolute, unconditional payment guaranty of all Obligations and Guaranteed Obligations under both the Carnaby II Credit Agreement (Article XI) and the Carnaby III Credit Agreement (Article XI), jointly and severally with the applicable Borrower and the other Guarantors.  The Administrative Agent's claims against FB Holdings therefore include: (1) the full amount of the Guaranteed Obligations under both Credit Agreements include the full amount of the Guaranteed Obligations under both Credit Agreements (in the aggregate principal amount of at least **$158,964,276.00** plus at least **$1,752,911.33** of accrued and unpaid interest, plus all other fees, and other amounts due thereunder).

24.     503(b)(9) Claims Against BPI and Trico:  The Administrative Agent also asserts claims in an amount to be determined against each of BPI and Trico pursuant to Section 503(b)(9) of the Bankruptcy Code for the fair value of inventory BPI and Trico received from Carnaby II and Carnaby III during the 20 days preceding the Petition Date to the extent Carnaby II and Carnaby III did not receive payment equal to such fair value from BPI and Trico.

25.     Additional Claims.  The Administrative Agent also asserts against FBG, on behalf of itself and the Carnaby II and III Secured Lenders, claims in an amount not less than **$160,717,187.33** for payment in full of damages stemming from, among other things, (i) any all

13

outstanding aggregate principal amounts of the loans under the Credit Agreements and all accrued and unpaid interest (including post-petition and default interest) thereon; (ii) any and all unpaid fees and expenses owed to the Administrative Agent and/or any of the Carnaby II and III Secured Lenders; (iii) any indemnifications, out-of-pocket fees and expenses (including, but not limited to, the fees, charges and disbursements of outside counsel, special counsel, local counsel and consultants to the Administrative Agent and/or the Carnaby II and III Secured Lenders), premiums, reimbursements, charges, damages, and/or claims (as defined in the Bankruptcy Code) arising under the applicable Transaction Documents; (iv) all obligations owed to the Carnaby II and III Secured Lenders until all Obligations have been paid in full; (v) all damages arising from breach by any of Carnaby Holdings II, Carnaby Holdings III, or any of the FBG Debtors of its respective representations, warranties, and obligations under the Credit Agreements, the U.S. Security Agreements, the Mexican Security Agreements, the Manufacturing Agreements, the Maquiladora Agreements, the Cross-Collateralization Agreement, and/or any other Transaction Documents to which it is party; and (vi) all damages arising from the fraudulent misrepresentations and omissions made by any of Carnaby Holdings II, Carnaby Holdings III, or any of the FBG Debtors in connection with the Transaction Documents and the transactions contemplated thereby, including without limitation all amounts necessary to compensate the Carnaby II and III Secured Lenders for losses caused by such misrepresentations and omissions (collectively, the "Additional Claims," and together with the aggregate outstanding principal amount of the Loans, accrued and unpaid interest, fees, costs, and all other Obligations and Guaranteed Obligations due and payable under the Credit Agreements and the related Transaction Documents, the "Claims"). The Administrative Agent also asserts Additional Claims against BPI arising out of the Carnaby II Credit Agreement and related Transaction Documents in an amount not less than $59,622,980.05 and Additional

14

Claims arising out of the Carnaby III Credit Agreement and related Transaction Documents against Trico in an amount not less than $101,094,207.28. The Administrative Agent also asserts Additional Claims arising out of the Carnaby Credit Agreements against each of FB Holdings, Carnaby Holdings II and Carnaby Holdings III in an amount to be determined.

26. <u>Breach of Contract and Fraud Claims</u>. In addition to any Claims set forth above, the Administrative Agent, on behalf of itself and the Carnaby II and III Secured Lenders, asserts claims against each of Carnaby Holdings II, Carnaby Holdings III, and the FBG Debtors for breach of contract and common law fraud/fraudulent misrepresentation. Each FBG Debtor was party to, and breached, one or more of the Credit Agreements, the U.S. Security Agreements, the Mexican Security Agreements, the Manufacturing Agreements, the Maquiladora Agreements, the Cross-Collateralization Agreement, and/or the other Transaction Documents, and each failed to perform its obligations thereunder, including without limitation by failing to maintain, preserve, and protect the Collateral; failing to comply with applicable covenants, representations, and warranties; and failing to satisfy the Obligations and Guaranteed Obligations when due.

27. The FBG Debtors committed fraud by making material misrepresentations and omissions in connection with the Transaction Documents and the transactions contemplated thereby, upon which the Administrative Agent and the Carnaby II and III Secured Lenders reasonably relied in advancing funds, extending credit, and entering into the Transaction Documents, and such misrepresentations and omissions caused damage to the Carnaby II and III Secured Lenders in an amount to be determined. The Administrative Agent expressly reserves the right to supplement the factual basis for these claims as additional information becomes available through discovery or otherwise.

28.      Federal Rule of Bankruptcy Procedure 3001(e)(3) states that "[i]f a claim other than one based on a publicly traded note, bond, or debenture has been transferred for security before proof of the claim has been filed, the transferor or transferee or both may file a proof of claim for the full amount." Fed. R. Bankr. P. 3001(e)(3). Section 101(54) of the Bankruptcy Code defines "transfer" as "the creation of a lien." 11 U.S.C. § 101(54)(A). Pursuant to the U.S. Security Agreements, the Administrative Agent has been granted properly perfected, first-priority liens, for the benefit of the Carnaby II and III Secured Lenders, over, *inter alia,* all Contracts and Contract Rights of each of Carnaby II and Carnaby III and each of Carnaby Holdings II and Carnaby Holdings III. Accordingly, the Administrative Agent holds any claims arising out of any such Contracts or Contract Rights that may be asserted by any of Carnaby II, Carnaby III, Carnaby Holdings II, and Carnaby Holdings III against any person or entity, including, without limitation, any other Debtor and non-Debtor entities (including the FBG Debtors). Such claims include, in the case of the FBG Debtors that are counterparties to the Transaction Documents, any claims held by Carnaby II, Carnaby III, Carnaby Holdings II, or Carnaby Holdings III for breach of contract, in each case up to the full amount of the Obligations and Guaranteed Obligations.

29.      <u>Nature of the Claims Against Carnaby Holdings II and Carnaby Holdings III</u>. The Claims asserted against each of Carnaby Holdings II and Carnaby Holdings III are secured by properly perfected, valid and enforceable first-priority liens and pledges on all of its assets as contemplated by the U.S. Security Agreement, and all of the assets of each of Carnaby II and Carnaby III as contemplated by the Cross-Collateralization Agreement. Consequently, the Claims are secured, except to the extent that the value of the Collateral securing the Claims is insufficient to satisfy the Claims in full. To the extent of any remaining deficiency, the remainder of the Claim is asserted as a general unsecured claim.

30.     Nature of the Claims Against the FBG Debtors:  Except as set forth in the following paragraph, the Claims against the FBG Debtors are asserted as general unsecured claims.

31.     Nature of 503(b)(9) Claims Against BPI and Trico:  The Claims asserted against BPI and Trico pursuant to Section 503(b)(9) of the Bankruptcy Code are asserted as administrative expense priority Claims.

## RESERVATION OF RIGHTS

32.     By filing this Proof of Claim, the Administrative Agent does not waive, and expressly reserves, all rights and remedies at law or in equity under any applicable law or jurisdiction that the Administrative Agent has or may have against each of Carnaby Holdings II, Carnaby Holdings III, or any of the FBG Debtors any guarantor or obligor (including but not limited to Carnaby Holdings II, Carnaby Holdings III, and FB Holdings), and any of their respective affiliates and subsidiaries, or any other person or entity, including without limitation its rights to seek payment as an oversecured creditor of all amounts to which it may be entitled under 11 U.S.C. § 506.  Without limiting the generality of the foregoing, this Proof of Claim is not, *nor shall it be deemed or construed to be*: (a) a waiver or release of any terms or provisions of the Credit Agreements, the Cross-Collateralization Agreement, any of the related Transaction Documents, or any order of the Bankruptcy Court; (b) an election of remedies or waiver of any past, present or future breaches, defaults or events of default under the Credit Agreements, the Cross-Collateralization Agreement, any of the related Transaction Documents, or any order of the Bankruptcy Court; (c) a waiver of the rights and remedies against any other person or entity that may be liable for all or part of the claims set forth herein, whether an affiliate or guarantor of any of the Debtors or an assignee or otherwise; (d) consent by the Administrative Agent to the jurisdiction of the Court with respect to any proceeding commenced against or otherwise involving the Administrative Agent; (e) a waiver of any right to (1) withdraw the reference, or otherwise

17

challenge the jurisdiction of the Court, with respect to the subject matter of these claims, any objection or any other proceeding commenced in this case against or otherwise involving the Administrative Agent, or (2) assert that the reference has already been withdrawn with respect to the subject matter of these claims, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving the Administrative Agent; (f) a waiver or release of, or any other limitation on, the Administrative Agent's right to assert that any portion of the claims asserted herein or any other claims are entitled to treatment as priority claims including under sections 503(b) and 507(a)(2) of the Bankruptcy Code; (g) a waiver of any rights that the Administrative Agent may have pursuant to section 506(b) of the Bankruptcy Code; (h) a waiver or release of any lien, pledge or security interest against any Debtor or any third parties; (i) a waiver or release of, or any other limitation on, the Administrative Agent's rights to assert that any nonrecourse claim should be treated as a recourse claim, including but not limited to the exercise of any right that the Administrative Agent may have pursuant to section 1111(b) of the Bankruptcy Code; (j) consent to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto pursuant to 28 U.S.C. section 157(e) or otherwise; (k) a waiver by the Administrative Agent of the right to have final orders in non-core matters entered only by a United States District Court judge; (l) a waiver or release of the Administrative Agent's right to have any and all final orders in any and all noncore matters or proceedings entered only after de novo review by a United States District Court Judge; or (m) a waiver of any claim, at law or in equity or under any applicable law, including without limitation administrative claims, priority claims, secured claims, unsecured claims, constructive trust claims, claims based upon common law fraud, misrepresentation, subrogation, indemnity, contribution, unjust enrichment, fraudulent

18

conveyance, failure to fulfill contractual and fiduciary obligations, breach of the implied covenant of good faith and fair dealing, tortious interference, quantum meruit, or any other theory available under applicable law or equity, including, without limitation, the right to assert a constructive trust against assets or cash held by any Debtor, and any and all amounts owed, in damages or otherwise, whether known or unknown, and whether presently asserted or to be asserted, all of which singularly or collectively may have caused the Administrative Agent to incur damages. Nothing herein shall be deemed to waive, stop, or derogate from the rights of the Administrative Agent under the Transaction Documents, including, without limitation, in connection with the Credit Agreements, the Cross-Collateralization Agreement, the U.S. Security Agreements, the Mexican Security Agreements, and any order of the Court, or to prejudice any and all of the Administrative Agent's rights, claims, and defenses under the Bankruptcy Code or otherwise, including, but not limited to, the right to vote on any plan(s) in the Debtors' Chapter 11 Cases.

33. The Administrative Agent expressly reserves the right to amend, replace, update, or supplement this Proof of Claim (including the proof of claim form) at any time and in any respect (including, without limitation, as necessary or appropriate to amend, quantify, or correct amounts, to provide additional detail regarding the Claims set forth herein, to fix the amount of any contingent or unliquidated component of the Claims, or to include any claim, at law or in equity), to add or amend documents and other information, to file additional proofs of claim or further pleadings for additional claims, to contest the validity, priority, and extent of any other purported liens and security interests other than those described herein, and to assert any and all other claims, actions, defenses, setoffs, recoupments, rights or remedies of whatever kind or nature that it currently has, or may have in the future against any of Carnaby Holdings II, Carnaby Holdings III, any FBG Debtor, and/or any other Debtors or non-Debtors, or any other person or

entity, including without limitation, rights against guarantors, officers, directors, and other creditors any of Carnaby Holdings II, Carnaby Holdings III, or any FBG Debtor, at law or in equity, including, without limitation, administrative or other priority claims, setoff and recoupment rights, lien rights, interest, and the right to assert claims that are otherwise warranted in any related actions.

34.     The Administrative Agent reserves the right to claim that the portion of its fees, interest, costs, expenses, and other charges incurred or accruing after the applicable Petition Date of each of any of Carnaby Holdings II, Carnaby Holdings III, or any FBG Debtor, constitute administrative expenses of the applicable Debtor's estate to the extent such expenses are not otherwise paid in full, and reserves the right to file a claim or application for payment of such administrative expenses.

35.     No judgment has been rendered on the Claims set forth in this Proof of Claim.

36.     With respect to any portion of the Claims that is unliquidated or as to which the amount is undetermined, the Administrative Agent does not waive their rights thereto by not claiming specific amounts at this time.

37.     The Administrative Agent expressly reserves, and does not waive, its right to payment of any amounts due from any guarantor in respect of the Credit Agreements from any other sources under any applicable law and jurisdiction.

38.     The Administrative Agent expressly reserves its rights to exercise judicial actions under any applicable law and jurisdiction against non-Debtor entities during and after these Chapter 11 Cases.

39.     Nothing contained in this Proof of Claim shall be deemed an admission by the Administrative Agent.

40.     To the best of the Administrative Agent's knowledge, the claims set forth herein are not subject to setoff or counterclaim, <u>provided</u>, <u>however</u>, that the Administrative Agent (on behalf of the Carnaby II and III Secured Lenders) expressly reserves and does not waive any right of set-off or recoupment it may possess.

41.     The Administrative Agent does not consent to the surcharge of the Collateral by any Debtor's estate, their representatives, or any other person or party-in-interest pursuant to 11 U.S.C. §506(c) or otherwise.

42.     The Administrative Agent expressly reserves the right to withdraw this Proof of Claim as if it had never been filed.

**<u>NOTICES AND COMMUNICATIONS</u>**

43.     Any and all notices and communications concerning the Proof of Claim shall be sent to the following addresses both in hard copy and via e-mail:

Tarik Johnson
**GLAS TRUST COMPANY LLC**, in its capacity as Administrative Agent
3 Second Street, Suite 206, Jersey City, NJ 07311
Tel.: +1 201 201 8642
E-mails:
Tarik.Johnson@glas.agency

with a copy to (which shall not constitute notice)

Allan S. Brilliant
Stephen Wolpert
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Tel.: +1 212 698 3599
E-mails:
allan.brilliant@dechert.com
stephen.wolpert@dechert.com

21

## **SUPPORTING DOCUMENTS**

44.     The Administrative Agent's claims are based on the Credit Agreements, the Cross-Collateralization Agreement, the U.S. Security Agreements, the Mexican Security Agreements, the Purchase Agreements, the Promissory Notes, the Sale Agreements, and other related Transaction Documents.  Copies of these documents and additional related documents are not attached to the Proof of Claim because of their voluminous nature.  Counsel to the Administrative Agent will provide copies of such documents to any party in interest in these Chapter 11 Cases, upon a reasonable written request (and entry into an appropriate confidentiality agreement, if necessary) addressed to counsel to the Administrative Agent at the address set forth herein.

45.     Each and every description in this Addendum to the Credit Agreements and the other Transaction Documents is qualified in its entirety by reference to the applicable provisions of such documents, and all such documents are incorporated herein by reference.  In the event of any inconsistency between this Addendum and any such document, including the proof of claim form, the relevant document shall control.

**GLAS Trust Company LLC**
In its capacity as Administrative Agent under the
Carnaby II and Carnaby III Credit Agreements,
related Transaction Documents

Dated: July 6, 2026

22

Electronic Proof of Claim Confirmation:   3950-1-MZCXR-276207545

Claim Electronically Submitted on (UTC) :   2026-07-07T02:05:41.443Z

Submitted by:   GLAS TRUST CO LLC, AGENT FBO CARNABY II SEC. LENDERS
jeffrey.schoenfeld@glas.agency

**KROLL**