**Exhibit 2**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| FIRST BRANDS GROUP, LLC, *et al.*, | § | Case No. 25-90399 (CML) |
| | § | |
| | § | (Jointly Administered) |
| | § | |
| | § | |
| Debtors.[1] | § | |

**DEBTORS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
LAM PARTIES' INTERROGATORY NOS. 5, 6, 8, 10, 14 & 16**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable to the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") through Rules 7026, 7033, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), the Court's order of July 21, 2026, and other applicable law, First Brands Group, LLC and its debtor affiliates (collectively, the "**Debtors**"), by and through their undersigned counsel, hereby submit these supplemental responses and objections (the "**Supplemental Responses**," and each specific response and objection, a "**Supplemental Response**") to Interrogatory Nos. 5, 6, 8, 10, 14 & 16 set forth in the *LAM Parties' First Set of Interrogatories to First Brands in Connection with Plan Confirmation*, dated June 24, 2026 (the "**Interrogatories**," and each specific interrogatory, an "**Interrogatory**"). The Reservation of Rights, General Objections, Objections to Instructions, and Objections to Definitions set forth in the *Debtors' Responses and Objections to LAM Parties' First Set of Interrogatories in Connection with Plan Confirmation*, dated July 10, 2026, are incorporated as if set forth fully herein.

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

**SUPPLEMENTAL RESPONSES**

**INTERROGATORY NO. 5:**

To the extent You intend to present evidence at the Confirmation Hearing regarding any Estate Claims, identify the Estate Claims with respect to which You intend to present evidence and describe the evidence You intend to present, including any evidence regarding (i) the identity of the defendants or potential defendants; (ii) the amount sought to be recovered through such Estate Claim; and (iii) the value or valuation, if any, that You ascribe to such Estate Claim, including any range of values as appropriate, and any assessment You will present regarding the merits of such claim, defenses to the claim, collectability, or any other factors bearing on value.

**RESPONSE**:

Subject to and without waiving any objections, the Debtors supplement their Response as follows: The Debtors refer the LAM Parties to the *Declaration of Charles M. Moore*, filed July 14, 2026 (the "**Moore Declaration**"), which sets forth Mr. Moore's testimony regarding the Estate Claims, including information requested in subparts (i)–(iii), and to the Documents marked FBG_CH1_00044086, FBG_CH1_00063211 through FBG_CH1_00063213, FBG_CH1_00093754 through FBG_CH1_00104648, FBG_CH1_00104890 through FBG_CH1_00183250, FBG_CH1_00206939 through FBG_CH1_00207212, and FBG_CH1_00207214 through FBG_CH1_00208472, which provide support for Mr. Moore's testimony.

For testimony regarding Estate Claims related to factoring, the Debtors refer the LAM Parties to the Moore Declaration (¶¶ 80–95), and to the Documents marked FBG_CH1_00044086, FBG_CH1_00093754 through FBG_CH1_00093761, FBG_CH1_00095410 through FBG_CH1_00095421, FBG_CH1_00095564 through FBG_CH1_00095574, FBG_CH1_00095766 through FBG_CH1_00095814, FBG_CH1_00096207 through FBG_CH1_00096208, FBG_CH1_00096540 through FBG_CH1_00096544, FBG_CH1_00096550 through FBG_CH1_00096551,

2

FBG_CH1_00096594 through FBG_CH1_00096609, FBG_CH1_00096707 through FBG_CH1_00096758, FBG_CH1_00096763 through FBG_CH1_00096797, FBG_CH1_00096999 through FBG_CH1_00097015, FBG_CH1_00098204 through FBG_CH1_00098205, FBG_CH1_00098235, FBG_CH1_00206939 through FBG_CH1_00207212, and FBG_CH1_00207214 through FBG_CH1_00208472, which provide support for that testimony.

For testimony regarding Estate Claims related to supply chain financing, the Debtors refer the LAM Parties to the Moore Declaration (¶¶ 96–102), and to the Documents marked FBG_CH1_00063211 through FBG_CH1_00063213, FBG_CH1_00095422, FBG_CH1_00097548, FBG_CH1_00097752, FBG_CH1_00097862, FBG_CH1_00098197, FBG_CH1_00104186, FBG_CH1_00206939 through FBG_CH1_00207212, and FBG_CH1_00208213, which provide support for that testimony.

For testimony regarding Estate Claims related to SPV funding arrangements, the Debtors refer the LAM Parties to the Moore Declaration (¶¶ 103–139), and to the Documents marked FBG_CH1_00095399, FBG_CH1_00095423 through FBG_CH1_00095434, FBG_CH1_00095542 through FBG_CH1_00095544, FBG_CH1_00096111 through FBG_CH1_00096173, FBG_CH1_00096192 through FBG_CH1_00096195, FBG_CH1_00096205 through FBG_CH1_00096206, FBG_CH1_00096442 through FBG_CH1_00096539, FBG_CH1_00096762, FBG_CH1_00097544 through FBG_CH1_00097546, FBG_CH1_00097590 through FBG_CH1_00097592, FBG_CH1_00097723 through FBG_CH1_00097732, FBG_CH1_00098142 through FBG_CH1_00098195, FBG_CH1_00098199 through FBG_CH1_00098201, FBG_CH1_00098203, FBG_CH1_00098209, FBG_CH1_00098212 through

3

FBG_CH1_00098225, FBG_CH1_00098228 through FBG_CH1_00098233, FBG_CH1_00099780 through FBG_CH1_00103519, FBG_CH1_00104270 through FBG_CH1_00104648, FBG_CH1_00104890 through FBG_CH1_00183250, FBG_CH1_00206939 through FBG_CH1_00207212, and FBG_CH1_00208213, which provide support for that testimony.

For testimony regarding Estate Claims related to insider transactions, the Debtors refer the LAM Parties to the Moore Declaration (¶¶ 140–160), and to the Documents marked FBG_CH1_00095400 through FBG_CH1_00095409, FBG_CH1_00095497 through FBG_CH1_00095563, FBG_CH1_00095575 through FBG_CH1_00095765, FBG_CH1_00095815 through FBG_CH1_00096065, FBG_CH1_00096174 through FBG_CH1_00096184, FBG_CH1_00096202 through FBG_CH1_00096204, FBG_CH1_00096209 through FBG_CH1_00096441, FBG_CH1_00096548 through FBG_CH1_00096549, FBG_CH1_00096552 through FBG_CH1_00096593, FBG_CH1_00096610 through FBG_CH1_00096706, FBG_CH1_00097547, FBG_CH1_00097549 through FBG_CH1_00097589, FBG_CH1_00097593 through FBG_CH1_00097712, FBG_CH1_00097719 through FBG_CH1_00097722, FBG_CH1_00097733 through FBG_CH1_00097749, FBG_CH1_00097755 through FBG_CH1_00097861, FBG_CH1_00097863, FBG_CH1_00097876 through FBG_CH1_00098141, FBG_CH1_00098196, FBG_CH1_00098199, FBG_CH1_00098202, FBG_CH1_00098210, FBG_CH1_00098238, FBG_CH1_00098344 through FBG_CH1_00098420, FBG_CH1_00098360 through FBG_CH1_00099779, FBG_CH1_00206939 through FBG_CH1_00207212, and FBG_CH1_00208213, which provide support for that testimony.

For testimony regarding Estate Claims related to acquisitions, the Debtors refer the LAM Parties to the Moore Declaration (¶¶ 161–162), and to the Documents marked FBG_CH1_00093807 through FBG_CH1_00095398 and FBG_CH1_00206939 through FBG_CH1_00207212, which provide support for that testimony.

For testimony regarding Estate Claims related to preferences, the Debtors refer LAM Parties to the Moore Declaration (¶ 164), and to the Documents marked FBG_CH1_00098199, FBG_CH1_00104890 through FBG_CH1_00183250, and FBG_CH1_00208213, which provide support for that testimony.

For testimony regarding other Estate Claims, the Debtors refer LAM Parties to the Moore Declaration (¶¶ 165–167), and to the Documents marked FBG_CH1_00095435, FBG_CH1_00096066 through FBG_CH1_00096107, FBG_CH1_00096759 through FBG_CH1_00096761, FBG_CH1_00097713 through FBG_CH1_00097718, FBG_CH1_00098199, FBG_CH1_00098207, FBG_CH1_00103867 through FBG_CH1_00103879, FBG_CH1_00206939 through FBG_CH1_00207212, and FBG_CH1_00208213, which provide support for that testimony.

In addition, the Debtors refer the LAM Parties to the *Declaration of Marc S. Kirschner*, filed on July 14, 2026 (Dkt. 3190) (the "**Kirschner Declaration**"), which sets forth Mr. Kirschner's testimony regarding the value of the Estate Claims. For testimony that the Estate Claims are valuable, with a total assertable value of approximately $25.4 billion across all claim categories and likely recovery in excess of $2 billion that could be received by the end of 2028, the Debtors refer the LAM Parties to the Kirschner Declaration (¶¶ 21, 31, 143); for testimony regarding the criminal proceedings and the Ponzi Scheme Presumption, the Debtors refer the LAM Parties to the Kirschner Declaration (¶¶ 22–25, 33–39); for testimony regarding Estate

5

Claims related to factoring, the Debtors refer the LAM Parties to the Kirschner Declaration (¶¶ 34–49); for testimony regarding Estate Claims related to supply chain financing, the Debtors refer the LAM Parties to the Kirschner Declaration (¶¶ 50–55); for testimony regarding Estate Claims related to SPV funding arrangements, the Debtors refer the LAM Parties to the Kirschner Declaration (¶¶ 56–86); for testimony regarding Estate Claims related to insider transactions, the Debtors refer the LAM Parties to the Kirschner Declaration (¶¶ 87–125); for testimony regarding Estate Claims related to acquisitions, the Debtors refer the LAM Parties to the Kirschner Declaration (¶¶ 126–131); and for testimony regarding other Estate Claims, the Debtors refer the LAM Parties to the Kirschner Declaration (¶¶ 132–142).  In addition, for testimony regarding collectability, the Debtors refer the LAM Parties to the Kirschner Declaration (¶¶ 144–146).

In responding to this Interrogatory, the Debtors are not waiving their right to file additional or supplemental declarations thereafter.

**INTERROGATORY NO. 6**:

**State whether You intend to present testimony or evidence relating to the value, viability, collectability, or likelihood of success of an Estate Claim or on related topics that was not disclosed to all bidders, potential bidders, or prospective bidders as part of the Estate Claims Marketing Process or that is in any way based on or informed by information or evidence that was not made available to all bidders, all potential bidders, or all prospective bidders, including any such information that You claim is subject to applicable Privileges or non-public. If so, describe such evidence or information with particularity.**

**RESPONSE**:

Subject to and without waiving any objections, the Debtors supplement their Response as follows: The Debtors reserve the right to present any evidence produced in discovery.  In addition, the Debtors refer the LAM Parties to the Moore Declaration (¶¶ 38–40), which sets forth Mr. Moore's testimony regarding the Estate Claims Marketing Process and the materials provided as part of that process.  The Debtors further refer the LAM Parties to Exhibit E to the Disclosure

Statement, which annexes Marketing Materials; to the Documents marked FBG_CH1_00001095 through FBG_CH1_00014683, FBG_CH1_00044126 through FBG_CH1_00046593, FBG_CH1_00104649 through FBG_CH1_00104658, FBG_CH1_00204642 through FBG_CH1_00206725, FBG_CH1_00206799 through FBG_CH1_00206801, and FBG_CH1_0206914 through FBG_CH1_00206938 relating to the Estate Claims Marketing Process; and to FBG_CH1_00089754 through FBG_CH1_00104648 and FBG_CH1_00104890 through FBG_CH1_00183250, which were provided as supplemental Marketing Materials.

**INTERROGATORY NO. 8**:

**State whether any information has at any time been shared with or otherwise made available to the Ad Hoc Group (or any member thereof) or any participant in the Estate Claims Credit Bid Transaction that in any way relates to the Estate Claims or the value of such Estate Claims that was not made available to all bidders, all potential bidders, or all prospective bidders as part of the Estate Claims Marketing Process. If so, describe such information with particularity.**

**RESPONSE**:

Subject to and without waiving any objections, the Debtors supplement their Response as follows: certain Documents and Communications exchanged between the Debtors and the Ad Hoc Group relating to the Estate Claims are protected by the common interest privilege, and any materials exchanged during mediation would also be protected by the mediation privilege (in addition to the common interest privilege). The Debtors assert that the mediation privilege applies from January 29, 2026 when the Court entered the initial mediation order (Dkt. 1822) through March 27, 2026 as related to topics concerning the Estate Claims, the Plan, and the Plan Settlement, except as applied to information provided to the Ad Hoc Group in its capacity as a credit bidder. The Debtors additionally assert that the common interest privilege applies from September 27, 2025 to present as related to certain topics, including the Estate Claims. The Debtors are not

7

claiming privilege with respect to Documents and Communications exchanged with any bidders participating in the Estate Claims Marketing Process.

Consistent with the Court's order, the Debtors are conducting a review of email communications to confirm whether the Ad Hoc Group received any information, in its role as a credit bidder, that was not made available to all bidders, potential bidders, or prospective bidders as part of the Estate Claims Marketing Process. To the extent the Debtors identify any communications, they will be produced and identified by Bates number. Aside from any information that may have been exchanged via email communications, the Debtors are not aware of any information that has been shared with the Ad Hoc Group or any participant in the Estate Claims Credit Bid Transaction that was not likewise shared with all potential bidders.

**INTERROGATORY NO. 10**:

**Do You contend that, if the Estate Claims Credit Bid Transaction is selected as the winning bid following the Estate Claims Marketing Process, the monetization and distribution of the Litigation Trust Assets in accordance with the Litigation Trust Waterfall will be distributions on account of assets that will have been purchased under section 363 of the Bankruptcy Code by the DIP Secured Parties and transferred to the Litigation Trust, such that any distributions from the Litigation Trust will be distributions of proceeds from the DIP Secured Parties' properly acquired property, and not of property of the Debtors' estates following the consummation of the Estate Claims Credit Bid Transaction?**

**RESPONSE**:

Subject to and without waiving any objections, the Debtors supplement their Response as follows: Yes, subject to the following clarifications. If the Estate Claims Credit Bid Transaction is consummated, the Litigation Trust Assets will be sold to the DIP Secured Parties and then transferred by the DIP Secured Parties to the Litigation Trust. Accordingly, following the consummation of the Estate Claims Credit Bid Transaction, the Debtors contend the Litigation Trust Assets will be property of the Litigation Trust and distributions by the Litigation Trust will be distributions of proceeds of property owned by the Litigation Trust.

**INTERROGATORY NO. 14**:

Section 5.1 of the Plan states that: "Pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and the releases contained in the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, equitable, and subordination rights that a holder of a Claim or Interest may have with respect to any Claim against or Interest in an FBG Debtor and any distribution to be made on account of such Claim or Interest. The Plan shall be deemed a motion to approve the compromises and settlements contained in the Plan, including the Plan Settlement. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, including the Plan Settlement, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the FBG Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed non-severable from each other and from all other terms of the Plan."

Section 5.2(a) of the Plan states that: "Pursuant to sections 105(a), 361, 363, 364, 1123(b)(3)(A), and 1123(b)(6) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan effect a compromise and settlement among the FBG Debtors, the Ad Hoc Group, and the Creditors' Committee (the 'Plan Settlement'). The compromises and settlements included in the Plan Settlement are each (i) integrated with and dependent on all other compromises and settlements contemplated in connection with the Plan and (ii) necessary and integral to the Plan. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Plan Settlement under sections 105(a), 361, 363, 364, 1123(b)(3)(A), and 1123(b)(6) of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that the Plan Settlement is fair, equitable, reasonable and in the best interests of the FBG Debtors' Estates. The terms of the Plan Settlement are reflected below."

Section 12.3 of the Plan states that: "If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against or any Interests in the FBG Debtors, (ii) prejudice in any manner the rights of any Entity, or (iii) constitute an admission, acknowledgement, offer, or undertaking by the FBG Debtors or any other Entity; *provided* that the foregoing shall not alter the protections afforded to any Person under sections 363(m) or 364(e) of the Bankruptcy Code to the extent applicable to any transactions consummated in connection with the Plan following entry of the Confirmation Order."

If the Effective Date does not occur, specify which sections or subsections of Articles II, IV, V, VI, VII, VIII, IX, X, XI, XIII, XIV, and XV of the Plan that You contend will become null and void pursuant to the first portion of Section 12.3 of the Plan, and which sections or subsections that You contend will remain in effect by virtue of the protections

9

**afforded to a Person under sections 363(m) and 364(e) of the Bankruptcy Code as set forth in the second portion of Section 12.3 of the Plan?**

**RESPONSE**:

Subject to and without waiving any objections, the Debtors supplement their Response as follows: If the Effective Date does not occur, the Debtors contend that the Estate Claims Credit Bid Transaction, Litigation Trust Funding, Administrative Expense Claims Consent Program, DIP Collateral Credit Bid Transaction, DIP Collateral Trust Funding, and foreclosure by the ABL Secured Parties on the ABL Priority Collateral, on the terms and condition set forth in Articles VI, VII, and VIII, the applicable Plan Supplement documents, and any other terms of the Plan that implement the foregoing Articles, as well as Sections 13.5(a) (Debtor Releases), 13.6 (Exculpation), 13.7, and 13.8 of the Plan, will not be null and void and will be protected by Sections 363(m) and 364(e), as applicable, in accordance with the Confirmation Order approving such transactions.  These transactions will preserve the benefits obtained under the Plan Settlement, including the agreement with respect to the Litigation Trust Waterfall, and will protect the interests of creditors, including administrative and priority creditors.  The remaining provisions of the Plan will become null and void in accordance with Section 12.3 of the Plan.

**INTERROGATORY NO. 16**:

**State the basis for Your contention that each entity listed on the Schedule of Non-Released Parties in the Plan engaged in Adverse Conduct.**

**RESPONSE**:

Subject to and without waiving any objections, the Debtors supplement their Response as follows: This is not the Debtors' contention.  The individuals and entities listed on the Schedule of Specified Non-Released Parties were selected because they qualified for at least one of the criteria set forth in the definition of Specified Non-Released Parties.  The Debtors refer the LAM

10

Parties to that definition, which can be found at page 27 of the Plan (Dkt. 3019).  The Debtors are not contending that each entity listed on the Schedule of Non-Released Parties in the Plan engaged in Adverse Conduct.

Dated:   July 22, 2026
Houston, Texas

/s/ Clifford W. Carlson

**WEIL, GOTSHAL & MANGES LLP**
Clifford W. Carlson (2490024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Clifford.Carlson@weil.com


-and-

Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Robert S. Berezin (admitted *pro hac vice*)
Theodore E. Tsekerides (admitted pro hac vice)
Christine A. Calabrese (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
            Sunny.Singh@weil.com
            Robert.Berezin@weil.com
            Theodore.Tsekerides@weil.com
            Christine.Calabrese@weil.com


*Attorneys for Debtors and Debtors in Possession*

# **VERIFICATION**

I, Charles M. Moore, am authorized to verify the Responses to Interrogatory Nos. 1 through 17 on behalf of the Debtors in the above-captioned cause of action.  I am the Chief Executive Officer of First Brands Group, LLC, and I have read the LAM Parties' Interrogatory Nos. 1 through 17, as well as the Debtors' responses and objections thereto.  I either have personal knowledge that the matters stated herein are true, or I am informed and believe that such matters are true and on those grounds, certify that the same are true and correct.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and under the laws of the United States of America that the facts set forth in the Responses to Interrogatory Nos. 1 through 17 are true and correct.

Dated:  July 22, 2026

*/s / Charles M. Moore*
Charles M. Moore

13

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 22, 2026, a true and correct copy of the foregoing document was served upon counsel of record via electronic mail.

*/s/ Christine A. Calabrese*
Christine A. Calabrese