# EXHIBIT PJ13

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIRST BRANDS GROUP LLC, *et al.*, | § | CASE NO. 25-90399 (CML) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |

| | | |
|---|---|---|
| FIRST BRANDS GROUP LLC *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Adversary Proc. No. 25-03803 (CML) |
| PATRICK JAMES, THE PATRICK JAMES TRUST, ALBION REALTY, LLC, ALESTER TECHNOLOGIES LLC, BATTERY PARK HOLDINGS LLC, LARCHMONT LLC, PEGASUS AVIATION, LLC, MICHAEL BAKER, PETER ANDREW BRUMBERGS, STEPHEN GRAHAM, JOHN AND JANE DOE(S) 1-100, and ABC CORPORATION(S) 1-100, | § § § § § § § § § § § § | |
| | § | |
| Defendants. | § | |

## UNITED STATES OF AMERICA'S AMENDED[2] MOTION TO INTERVENE AND STAY DISCOVERY AND SUPPORTING MEMORANDUM OF LAW

---

[1] A complete list of Debtors in these chapter 11 cases may be obtained on the website of Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] For the convenience of the Court and the Parties, a redline comparison of this Amended Motion to the United States of America's Motion to Intervene and Stay Discovery and Supporting Memorandum of Law, ECF Dkt. No. 166 filed on April 12, 2026, is attached hereto as Exhibit G.

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

UNITED STATES OF AMERICA'S AMENDED MOTION TO INTERVENE
AND STAY DISCOVERY AND SUPPORTING MEMORANDUM OF LAW

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………… i

TABLE OF AUTHORITIES……………………………………………………………... ii

PRELIMINARY STATEMENT..…………………………………………………………… 1

JURISDICTION AND VENUE...………………………………………………………... 3

BACKGROUND………………………………………………………………………. 3

I.  THE CRIMINAL CASE………………………………………………………... 3

II.  THE ADVERSARY PROCEEDING………………………………………….. 6

ARGUMENT…………………………………………………………………………... 8

I.  THE UNITED STATES IS ENTITLED TO INTERVENE………………….. 8

II.  DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF
    THE CRIMINAL CASE…………………………………………………………... 11

    A.  Applicable Law………………………………………………………….. 11

    B.  Application of the Stay Factors………………………………………... 13

        1.  *Substantial Overlap Exists*…..…………………………….. 13

        2.  *The Criminal Case is Proceeding Expeditiously*………………………. 14

        3.  *The Debtors' Interests Do Not Outweigh the Need for a Stay*………….. 14

        4.  *The Defendants' Interests Support a Stay*……………………………. 15

        5.  *Judicial Economy Favors a Stay*……………………………………. 17

        6.  *The Public Interest Strongly Supports a Stay*………………………… 18

CONCLUSION………………………………………………………………………... 20

CERTIFICATE OF CONFERENCE…………………………….…………………… 21

CERTIFICATE OF SERVICE……………………………………..…………….. 22

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391 (S.D. Tex. 2009) ...................................... 11, 12

*Bd. of Governors v. Pharaon*, 140 F.R.D. 634 (S.D.N.Y. 1991) .................................................. 19, 20

*Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951)...............................................................10

*Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) .......................................................................9

*Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962)........................................................................19

*DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007)........................................................11

*Dominguez v. Hartford Fin. Serv.Group Inc.*, 530 F. Supp.2d 902
    (S.D. Tex. 2008) ...................................................................................................... 9, 13

*Heller Healthcare Fin., Inc. v. Boyes*, No. Civ. A. 300CV1335D,
    2002 WL 1558337 (N.D. Tex. July 15, 2002)....................................................................12

*In re Eisenberg*, 654 F. 2d 1107 (5th Cir. 1981)...............................................................................19

*In re Marceca*, 131 B.R. 774 (Bankr. S.D.N.Y. 1991).......................................................................12

*In re Ramu Corp.*, 903 F.2d 312 (5th Cir. 1990) ........................................................................... 9, 11

*In re SK Foods, L.P.*, CA No. S–10–1492 LKK, 2010 WL 5136189
    (E.D. Cal. Dec. 10,2010) ..............................................................................................12

*In re Zinnel*, CA No. 2:12–cv–00249–MCE, 2013 WL 1284339
    (E.D. Cal. March 28, 2013)............................................................................................12

*Landis v. North American Co.*, 299 U.S. 248 (1936) ........................................................................11

*Mayo v. Tri-Bell Indus.*, 787 F.2d 1007 (5th Cir. 1986)...................................................................11

*S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07 Civ., 1188,
    2008 WL 866065 (N.D. Tex. Mar. 17, 2008) ................................................................13

*S.E.C. v. Calabrigo*, No. 22 Civ. 3096 (LJL), 2022 WL 4752427
    (S.D.N.Y. Sept. 30, 2022)......................................................................................... 16, 19

*S.E.C. v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*, No. 11 Civ. 6500 (RA),
    2012 WL 5505738 (S.D.N.Y. Nov. 9, 2012) ................................................................17

*S.E.C. v. Shkreli*, 15 Civ. 7175 (KAM), 2016 WL 1122029
(E.D.N.Y. Mar. 22, 2016) ...............................................................................13, 14, 15

*SEC v. Beacon Hill Asset Mgmt. LLC*, 2003 WL 554618 (S.D.N.Y. Feb. 27, 2003) ..................19

*SEC v. Blaszczak*, No. 17-CV.-3919 (AJN), 2018 WL 301091 (S.D.N.Y. Jan. 3, 2018) ..........10

*SEC v. Chestman*, 861 F.2d 49 (2d Cir. 1988) ........................................................................9

*SEC v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir. 1980).........................................12

*SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660 (5th Cir. 1981)......................................11

*SEC v. Mutuals.com, Inc.*, CA No. 3:03–CV–2912–D, 2004 WL 1629929
(N.D. Tex. July 20, 2004) .................................................................................. 8, 9

*SEC v. Nicholas*, 569 F. Supp. 2d 1065 (C.D. Cal. 2008) ........................................ 18, 19

*SEC v. Stanford Int'l Bank, Ltd.*, CA No. 3:09-CV-298-N,
2010 WL 11492395 (N.D. Tex. Jan. 5, 2010).....................................................................8

*SEC. v. Tuzman*, No. 15-cv.-7057 (AJN), ECF No. 43,
(S.D.N.Y. Mar. 1, 2016) ...............................................................................13, 14, 18

*State Farm Lloyds v. Wood*, No. 06 Civ. 503, 2006 WL 3691115
(S.D. Tex. Dec. 12, 2006)............................................................................... 13, 18

*Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*,
886 F. Supp. 1134 (S.D.N.Y. 1995)....................................................................... 12, 14

*Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007 (E.D.N.Y. 1992) .......................... 8, 17

*United States v. Cherry*, 876 F. Supp. 547 (S.D.N.Y. 1995)................................................10

*United States v. Gross*, 24 F.R.D. 138 (S.D.N.Y. 1959) ...................................................10

*United States v. Kordel*, 397 U.S. 1 (1970) ........................................................................11

*United States v. Little Al*, 712 F.2d 133 (5th Cir. 1983)................................................11

*United States v. McCarthy*, 292 F. Supp. 937 (2d Cir. 1968)..............................................18

*United States v. Murray*, 297 F.2d 812 (2d Cir. 1962) ......................................................10

*United States v. Percevault*, 490 F.2d 126 (2d Cir. 1974)................................................18

*Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993)..............................13

**Statutes**

18 U.S.C. § 2………………………………………………………….....................     4

18 U.S.C. § 225…………………………………………………………...............     4

18 U.S.C. § 1343………………………………………………………..............     4

18 U.S.C. § 1344………………………………………………………..............     4

18 U.S.C. § 1349………………………………………………………..............     4

18 U.S.C. § 1956(a)(1)(B)(i)………………………………………….............     4

28 U.S.C. §§ 157(b)(2)(A),(B),(H), and (O)…………………………………     3

28 U.S.C. §1409……………………………………………………………..     3

18 U.S.C. § 3500………………………………………………………………..     18, 19

**Rules**

Federal Rule of Bankruptcy Procedure 7024...………………………………….............     8

Federal Rule of Civil Procedure 24(a)(2)…………………………………….............     8

Federal Rule of Civil Procedure 24(b)(1)(B)...…………………………….............     8

Federal Rule of Criminal Procedure 16(b)…………………………………………     11, 12

Federal Rule of Criminal Procedure 17(c)………………………………………..     9, 10, 16

FED. R. CRIM. PROC. 17(c)(3)……………………………………………………     10

Local Bankruptcy Rule (LBR) 7007-1...…………………………….……………     1

**PRELIMINARY STATEMENT**

The United States of America (the "Government" or the "United States"), moves to intervene in the above-captioned adversary proceeding for the limited purpose of seeking a stay of all discovery including, without limitation, depositions and witness testimony, pending resolution of the parallel criminal case, *United States* v. *Patrick James & Edward James*, 26 Cr. 29 (AT) (S.D.N.Y.), and submits this memorandum in support of same.

The adversary proceeding and the criminal case arise from the same or related fraud schemes at First Brands Group, LLC ("First Brands"). The Debtors have brought claims against defendants Patrick James and entities affiliated with Patrick James (together with Patrick James, the "Patrick James Defendants"), Michael Baker, Andrew Brumbergs, and Stephen Graham. Except for the Patrick James Defendants, all defendants consent to the Government's requested relief. Further, the Debtors and the United States Trustee do not oppose the Government's motion.[3] A certificate of conference as required by LBR 7007-1 accompanies this Motion.

A stay is necessary to protect the integrity of the criminal prosecution. Without a stay, Patrick James—a defendant in the criminal case—can exploit the Federal Rules of Bankruptcy Procedure and the civil discovery process to circumvent discovery limits imposed by the Federal Rules of Criminal Procedure. Patrick James may depose cooperating witnesses whose statements the United States need not produce until trial. In so doing, Patrick James would force others to choose between: (a) jeopardizing their criminal defense by waiving their Fifth

---

[3] The Debtors are supportive of a stay of discovery for 60 days and take no position on a stay going beyond 60 days.

Amendment rights; or (b) invoking their Fifth Amendment rights and suffering adverse inferences in the civil proceedings.   Meanwhile, Patrick James could tailor his own testimony based upon information unavailable through proper criminal discovery channels.   These risks are not speculative: Patrick James has already sought to depose witnesses and issued subpoenas demanding documents—including, without limitation, for records produced to the U.S. Department of Justice during its investigation into the James brothers—with return dates that have already elapsed.   The Court should stay all discovery beyond the existing stay (which expires in early April 2026) to preserve the integrity of both proceedings.

As the criminal case will likely resolve multiple factual issues present in this adversary proceeding, a stay will not prejudice the parties.   Because of the differing burdens of proof in the criminal and civil cases, and a criminal defendant's right to a speedy trial, the criminal case will continue regardless of whether this matter is stayed.   As it advances, the criminal case will likely marshal the evidence of, and adjudicate, Patrick James's awareness of at least some of the fraudulent conduct alleged in both proceedings.   The criminal case will also surface evidence regarding Patrick James's control of First Brands' business; Patrick James's and Edward James's roles in selling fictitious and inflated accounts receivable and accounts payable; Patrick James's and Edward James's role in acquiring and concealing "off-balance sheet" financing for First Brands; acquisition of fraudulent lender proceeds by Patrick and Edward James; the nature and value of First Brands' indebtedness, both disclosed and undisclosed, and the relationship between First Brands and its lenders.   Without a stay, these issues would have to be litigated twice in different fora under different burdens of proof.   If this action is stayed, however, the criminal case, which is proceeding expeditiously, will likely

UNITED STATES OF AMERICA'S AMENDED MOTION TO INTERVENE
AND STAY DISCOVERY AND SUPPORTING MEMORANDUM OF LAW                    PAGE 2

streamline and simplify this adversary proceeding through judicial determination of the key issues and collateral estoppel, and thereby enhance judicial economy and preserve assets for creditor recovery.

Accordingly, for these reasons and the reasons set forth in greater detail *infra*, the United States files this Amended Motion to Intervene and Stay Discovery and Supporting Memorandum of Law ("Motion"), and respectfully requests that the Court stay discovery until the criminal case concludes.

## JURISDICTION AND VENUE

The Debtors' adversary proceeding and amended complaint seeking monetary, injunctive, and equitable relief were filed pursuant to sections 105(a), 502, 542, 544, 548, 550, and 551 of the Bankruptcy Code and Rules 3007, 6009, and 7001 of the Federal Rules of Bankruptcy Procedure. The amended complaint alleges this is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A),(B),(H), and (O) and this Court has jurisdiction to hear and determine this proceeding and to enter a final order and judgment. The amended complaint also alleges that venue is proper in the Court pursuant to 28 U.S.C. § 1409. Although the United States is not a party to this adversary proceeding, and is only seeking to intervene for the limited purpose of staying discovery, the United States denies that this is a core proceeding and does not consent to the entry of final orders or judgments by this Court.

## BACKGROUND

### I.  THE CRIMINAL CASE

On January 27, 2026, a grand jury sitting in the United States District Court for the Southern District of New York returned a nine-count indictment (the "Indictment" or "Ind.").

The Indictment charges Patrick James with organizing, managing, and supervising a continuing financial crimes enterprise, in violation of Title 18, United States Code, Sections 225 and 2) (Count One). The Indictment further charges both Patrick James and Edward James—Patrick's brother and a former senior executive of First Brands—with: (i) conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349 (Count Two); (ii) multiple counts of wire fraud affecting a financial institution, in violation of Title 18, United States Code, Sections 1343 and 2 (Counts Three, Four, Six, and Eight); (iii) multiple counts of bank fraud, in violation of Title 18, United States Code, Sections 1344 and 2 (Counts Five and Seven); and (iv) conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) (Count Nine). *See United States v. Patrick James & Edward James*, No. 26 Cr. 29 (AT) (S.D.N.Y. Dec. 15, 2024) (Dkt. 2). A copy of the grand jury's Indictment is attached hereto as Exhibit A.

As alleged in the Indictment, from 2018 through September 2025, Patrick James and Edward James, together with their co-conspirators, perpetrated a series of fraudulent schemes against First Brands' lenders and financing partners. *See* Exhibit A, Indictment at ¶ 2. As part of the defendants' schemes, First Brands: faked and falsely inflated invoices for accounts receivable and payable; double- and triple-pledged loan collateral; falsified corporate financial statements; and concealed substantial liabilities from lenders. *Id.* These schemes yielded billions of dollars in financing necessary to fuel First Brands growth-through-acquisition strategy. *Id.* at ¶ 7. The schemes also enabled Patrick James and Edward James to reap millions of dollars in proceeds derived from their fraud. *Id.* at ¶ 2.

---

By 2025, however, First Brands' fraudulent schemes could not forestall acute cash shortages and mounting liabilities at the company, which ultimately declared bankruptcy on September 28, 2025. *Id.* at ¶ 36. In the months prior, Patrick James and Edward James recognized the company's dire position and attempted to refinance First Brands' debt or sell the company. As that process was underway, Patrick James and Edward James closed ranks, restricting the flow of information outside the company in an effort to prevent the true financial picture at First Brands from being disclosed to creditors, auditors, and potential purchasers. *Id.* at ¶ 34.

Even as the frauds unraveled and First Brands' financial issues mounted, Patrick James continued to enrich himself as the owner of First Brands. Through the series of frauds he directed, Patrick James caused billions of dollars in gross proceeds to flow into First Brands from counterparties and received at least hundreds of millions of dollars in gross proceeds into his personal accounts. *Id.* at ¶ 35.

The scale of the defendants' fraud was staggering. At the time of its bankruptcy, First Brands—a company that reported approximately $5 billion in net annual sales worldwide— declared $12 million in cash in its corporate bank accounts and over $9 billion in liabilities. As a consequence of the defendants' fraudulent schemes, First Brands' lenders and creditors now face billions in losses. *Id.* at ¶ 3.

Two former First Brands executives, VP of Finance Peter Andrew Brumbergs and CFO Stephen Graham, pled guilty on January 27, 2026 and March 2, 2026, respectively, and

UNITED STATES OF AMERICA'S AMENDED MOTION TO INTERVENE
AND STAY DISCOVERY AND SUPPORTING MEMORANDUM OF LAW                    PAGE 5

agreed to cooperate with the Government, including by offering testimony when requested.[4] *See United States v. Brumbergs et al.*, No. 26 Cr. 25 (AT) (S.D.N.Y.). Their sentencing hearings have not yet been scheduled. The criminal case against Patrick James and Edward James, assigned to Judge Analisa Torres, is proceeding expeditiously, with a trial date set for July 13, 2026. Since the initial pretrial conference on February 4, 2026, the Government has produced more than a million documents in discovery, including search warrant returns for multiple electronic accounts, as well as corporate records from the Debtors and other third-party custodians. *See* Affirmation of Assistant United States Attorney Nicholas W. Chiuchiolo ("Chiuchiolo Aff."), attached hereto as Exhibit B. The next conference before Judge Torres is scheduled for April 27, 2026. *Id.*

## II.      THE ADVERSARY PROCEEDING

On November 3, 2025, the Debtors initiated an adversary proceeding against Patrick James and various entities (the "Patrick James Adversary Proceeding"). (Dkt. 17). Like the Indictment, the complaint in the Patrick James Adversary Proceeding, ECF Dkt. No. 17 ("AP Complaint") alleges that Patrick James committed fraud while leading First Brands by: (1) incurring billions in liabilities through the use of non-existent or doctored invoices for accounts receivable; and (2) using purported "special purpose vehicles" ("SPVs") to incur additional billions in financing, including by double-pledging collateral that was already encumbered. *See* AP Complaint at ¶¶ 5-6. The AP Complaint further alleges that Patrick

---

[4]      At sentencing in the criminal cases, Judge Torres may consider against Graham and Brumbergs any statements or admissions they are compelled to make in this proceeding. The sentencing hearings for Brumbergs and Graham will occur after the criminal case against Patrick James and Edward James has concluded.

James did not use all of the financing for the benefit of the debtors; rather, he pilfered certain company assets to maintain his lavish lifestyle. *Id.* at ¶ 7. This Court subsequently entered a temporary restraining order to preserve the status quo before denying First Brands' request for a preliminary injunction. *See* Order Denying Application for Preliminary Judgment, ECF Dkt. No. 5514.

On January 19, 2026, First Brands filed an amended complaint in the Patrick James Adversary Proceeding. *See* Amended Complaint, ECF Dkt. No. 141 ("Amended AP Complaint"). Among other things, the Amended AP Complaint alleges additional claims against defendant Patrick James and adds additional defendants, including Peter Andrew Brumbergs, Stephen Graham, and Michael Baker. The Amended AP Complaint sets forth various fraud schemes allegedly perpetrated by the defendants, including: (1) fraud in connection with First Brands' accounts receivable factoring programs; (2) double-pledging of collateral to inventory lenders; (3) fraud in connection with First Brands' supply chain factoring programs; and (4) the preparation and submission of fraudulent financial reports to First Brands' lenders. *See Id.* at ¶¶ 4-9.

The Patrick James Defendants have moved aggressively to obtain discovery in the bankruptcy proceeding. In doing so, Patrick James has sought to skirt the federal rules governing criminal discovery and gain an early preview of the Government's evidence against him in the criminal matter. For example, on January 23, 2026, the Patrick James Defendants issued a subpoena to PrimeRevenue (a supply-chain financing entity) seeking, among other records, "all [d]ocuments and information" provided to "any government agency (SEC, DOJ, FBI)." The return date on that subpoena was February 6, 2026, well before Patrick James

would have expected to receive criminal discovery.  On January 29, 2026, the Patrick James Defendants issued another subpoena to a bill-processing entity seeking, among other records, "[a]ll Communications with or relating to [among others] Stephen Graham, Michael Baker, Peter Andrew Brumbergs, Shekar Kumar, Matthew Liebson," and "all [d]ocuments and information" provided to "any government agency (SEC, DOJ, FBI)."  The return date on that subpoena was February 12, 2026.  Patrick James has issued at least 34 subpoenas, mostly to entities that are victims and/or witnesses in the criminal case against him. *See* Exhibit B, Chiuchiolo Aff. at ¶ 7.

## ARGUMENT

### I.  THE UNITED STATES IS ENTITLED TO INTERVENE

The Government has both the right and the interest to intervene.  Federal Rule of Civil Procedure 24(a)(2), as incorporated into the Patrick James Adversary Proceeding through Rule 7024 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), provides that anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests….'"  Alternatively, Bankruptcy Rule 7024 incorporating Federal Rule of Civil Procedure 24(b)(1)(B) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact."  Both standards are satisfied here.

Courts "have allowed the government to intervene in civil actions … for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007,

1009 (E.D.N.Y. 1992); *see also SEC v. Stanford Int'l Bank, Ltd.*, CA No. 3:09-CV-298-N, 2010 WL 11492395, at *1 (N.D. Tex. Jan. 5, 2010) (granting Government's motion to intervene and stay discovery in parallel civil case); *SEC v. Mutuals.com, Inc.,* CA No. 3:03–CV–2912–D, 2004 WL 1629929, at *1 (N.D. Tex. July 20, 2004) (same). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988). The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation, including authority to control the scope and pace of discovery. *In re Ramu Corp.,* 903 F.2d 312, 318 (5th Cir. 1990); *Dominguez v. Hartford Fin. Serv.Group Inc.*, 530 F. Supp.2d 902, 904 (S.D. Tex. 2008).

Intervention is warranted here because the existing parties cannot adequately protect the Government's interest in enforcing federal criminal laws. *See Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996). Allowing discovery without intervention in the case at bar would impair and interfere with the Government's ability to prosecute its criminal case. Many facts overlap between the Patrick James Adversary Proceeding and the criminal case, meaning witnesses may be required to testify multiple times regarding the same events. Civil discovery and witness testimony in a civil trial or evidentiary hearing before the criminal trial creates serious risks of improper witness preparation that undermine the truth-seeking function of criminal proceedings. Indeed, absent a stay of discovery, the Patrick James Defendants will likely continue to exploit civil procedural and discovery rules to circumvent the careful limits on criminal discovery in the Federal Rules of Criminal Procedure designed to prevent, among other things, perjury and witness intimidation.

For example, Federal Rule of Criminal Procedure 17(c) sets forth limitations concerning the issuing of subpoenas by criminal defendants and requires defense counsel to obtain authorization from the presiding judge in the criminal matter before subpoenaing personal or confidential information regarding a victim. Victims also must be provided notice and a chance to object. *See* FED. R. CRIM. PROC. 17(c)(3). Moreover, a criminal defendant can only issue a subpoena for records that are both admissible and relevant. *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 220-21 (1951); *United States v. Murray*, 297 F.2d 812, 821 (2d Cir. 1962) (observing that subpoenaed materials must themselves be admissible). Critically, the criminal rules of procedure differ from the civil rules of procedure, which permit the issuance of subpoenas to seek production of documents or materials which, although themselves not admissible, may lead to admissible evidence. *See United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995); *United States v. Gross*, 24 F.R.D. 138, 141 (S.D.N.Y. 1959) (Criminal Rule 17(c) cannot be used "to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case. This type of discovery ... has not been authorized for criminal trials.").

The careful and considered limitations on criminal discovery are designed to protect the integrity of the proceedings. "The public's interest in preserving the integrity of criminal proceedings can be undermined in three major ways when discovery proceeds in parallel civil and criminal litigation[.]" *SEC v. Blaszczak*, No. 17-CV.-3919 (AJN), 2018 WL 301091, at *3 (S.D.N.Y. Jan. 3, 2018). As the Court explained in *Blaszczak*:

> First, 'broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence.' Second, 'revelation of the identity of prospective witnesses may create the opportunity for intimidation.' Third, 'criminal defendants may unfairly surprise the prosecution at trial with

---

UNITED STATES OF AMERICA'S AMENDED MOTION TO INTERVENE
AND STAY DISCOVERY AND SUPPORTING MEMORANDUM OF LAW                    PAGE 10

information developed through discovery, while the self[-] incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.'

*Id.*, 2018 WL 301091 at *3 (citation omitted).

In addition, witnesses and defendants (such as Brumbergs and Graham) will likely be forced to choose between: (a) jeopardizing their criminal defenses and strategies by waiving their Fifth Amendment rights; or (b) invoking their Fifth Amendment rights and suffering adverse inferences in this civil proceeding.

Considering these circumstances, the Government respectfully submits that its motion to intervene should be granted.

## II. DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF THE CRIMINAL CASE

### A. Applicable Law

Courts possess inherent authority to stay proceedings "to control the disposition of the causes on [their] docket with economy of time and effort," *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), and "to control the scope and pace of discovery." *In re Ramu Corp.*, 903 F.2d at 318. This authority includes a court's wide discretion to stay civil proceedings, postpone discovery, or impose protective orders and conditions during parallel criminal prosecutions "when the interests of justice seemed to require such action." *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *see also DeLeon v. City of Corpus Christi,* 488 F.3d 649, 655 (5th Cir. 2007); *Mayo v. Tri-Bell Indus.*, 787 F.2d 1007, 1012 (5th Cir. 1986). The Fifth Circuit has recognized the propriety of such stays. *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983); *SEC v. First Fin. Grp. of Tex., Inc.,* 659 F.2d 660, 668 (5th Cir. 1981). They are appropriate even when requested by the prosecution. *Kordel*, 397 U.S. at 12 n.27. Moreover,

they are particularly "warranted … to preserve a defendant's Fifth Amendment right against self-incrimination" and "to prevent extending criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b)." *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 397 (S.D. Tex. 2009) (citing *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980)).

In bankruptcy cases, courts have stayed proceedings where Fifth Amendment rights of parties and witnesses are seriously implicated. *See, e.g.*, *In re Zinnel*, CA No. 2:12–cv–00249–MCE, 2013 WL 1284339, *1, 4, 6-7 (E.D. Cal. March 28, 2013) (granting stay of bankruptcy appeal where debtor was criminally accused of engaging in enterprise through which he allegedly obtained assets); *In re SK Foods, L.P.*, CA No. S–10–1492 LKK, 2010 WL 5136189, *1, 7-9 (E.D. Cal. Dec. 10, 2010); (reversing denial of stay where bankruptcy litigation threatened principal's privilege against self-incrimination); *In re Marceca*, 131 B.R. 774, 778 (Bankr. S.D.N.Y. 1991) (granting stay pending criminal investigation).

Courts in this Circuit considering whether to grant a stay of discovery weigh six factors: "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest." *Alcala*, 625 F. Supp. 2d at 398-99 (collecting cases); *see also Heller Healthcare Fin., Inc. v. Boyes*, No. Civ. A. 300CV1335D, 2002 WL 1558337, at *2 (N.D. Tex. July 15, 2002) (citing *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

### B. Application of the Stay Factors

All six factors considered within this Circuit favor a stay of discovery in the Patrick James Adversary Proceeding, including depositions and witness testimony, while the criminal case is pending.

#### 1. *Substantial Overlap Exists*

The extent of overlap between proceedings is the "most important factor" in determining whether a stay is appropriate. *S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07 Civ. 1188, 2008 WL 866065, at *2 (N.D. Tex. Mar. 17, 2008) (quoting *Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)). And when there are "overlapping issues", that "weigh[s] heavily in favor of granting a stay." *State Farm Lloyds v. Wood*, No. 06 Civ. 503, 2006 WL 3691115, at *2 (S.D. Tex. Dec. 12, 2006); *Dominguez*, 530 F. Supp 2d at 904-907. The relevant question is whether substantially the same facts would be proven twice, wasting resources and burdening witnesses. *S.E.C. v. Shkreli*, 15 Civ. 7175 (KAM), 2016 WL 1122029, at *4 (E.D.N.Y. Mar. 22, 2016); *S.E.C. v. Tuzman*, No. 15-cv.-7057 (AJN), ECF No. 43, (S.D.N.Y. Mar. 1, 2016) at 3, (a true and correct copy of which is attached hereto as Exhibit C); *Dominguez*, 530 F. Supp 2d at 907.

Here, the answer is unambiguously yes. The overlap between this proceeding and the criminal case is nearly complete. Both arise from the same alleged fraud schemes. Both involve Patrick James, as well as his co-conspirators Brumbergs and Graham. Both will require proof of substantially the same facts through the same witnesses. Indeed, most of the Debtors' allegations in the Patrick James Adversary Proceeding mirror the allegations in the

Indictment, and the jury's verdict in the criminal case is likely to have preclusive effect in this adversary proceeding.

### 2. *The Criminal Case is Proceeding Expeditiously*

Patrick James has already been indicted, which weighs in favor of a stay. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (quotation and citation omitted). For good reason: "the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved." *Transworld Mechanical, Inc.*, 886 F. Supp. at 1139; *see also Tuzman*, No. 15-cv-7057, Exhibit C, at 3 (noting that an indictment normally weighs heavily in favor of a stay absent particular facts indicating that the criminal case may not be resolved expeditiously). Moreover, there is every indication that the criminal case is proceeding expeditiously. Indeed, Judge Torres has set trial in the criminal case for July 13, 2026—just four months from now. In preparation for trial, the Government has produced (and is continuing to produce) substantial discovery material. *See* Exhibit B, Chiuchiolo Aff. at ¶ 5.

Likewise, the Government has filed criminal informations against both Peter Andrew Brumbergs and Stephen Graham—both of whom consent to the Government's motion for a stay. Their criminal cases will remain pending during the pendency of the criminal case against Patrick and Edward James, as discussed further in § 4 *infra*.

### 3. *The Debtors' Interests Do Not Outweigh the Need for a Stay*

The Debtors do not oppose this motion. The criminal case is advancing rapidly. Resolution of the criminal charges will likely narrow or resolve issues in the Patrick James

---

Adversary Proceeding, ultimately serving the Debtors' interests. Indeed, the criminal case will likely also have the effect of freezing and preserving assets, and resolution of the criminal case may result in the forfeiture of assets that would otherwise be the subject of the preliminary injunction motion. This factor favors a stay.

4. *The Defendants' Interests Support a Stay*

A stay also protects the defendants' interests. As noted *supra*, the sentencing hearings for Defendants Brumbergs and Graham will occur after the criminal case against Patrick James and Edward James has concluded. During sentencing, Judge Torres may consider against Graham and Brumbergs any statements or admissions they are compelled to make in this proceeding, which means their Fifth Amendment rights continue to be implicated by discovery in the case at bar despite their guilty pleas in the criminal case. In other words, without a stay, the defendants in the Patrick James Adversary Proceeding—such as Brumbergs and Graham—face an impossible and unjust choice: assert their Fifth Amendment rights in civil discovery and suffer adverse inferences in this proceeding or waive those rights and jeopardize their criminal defense. Courts recognize this dilemma as a compelling reason for a stay. *See Shkreli*, 2016 WL 1122029, at *3 n.3 ("[C]riminal defendants frequently seek stays in parallel civil enforcement proceedings, often due to an adverse inference that can arise from a party's invocation of the Fifth Amendment privilege against self-incrimination."). The stay eliminates this dilemma. It allows defendants, including the defendants cooperating with the Government in the criminal case, to fully participate in civil discovery after the criminal case concludes, when Fifth Amendment concerns no longer exist. Far from burdening defendants, the stay protects their constitutional rights while ensuring fair proceedings in both

cases. This is particularly true with respect to Edward James, who has consented to a stay of discovery pending the conclusion of the criminal case against him and Patrick James in the adversary proceeding against Edward James *et alia* in this Court (AP No. 26-3005). This factor weighs in favor of a stay.

While the Court can and should consider the views of the Patrick James Defendants, those views should not outweigh the rights and interests of the other defendants, such as Brumbergs and Graham. Moreover, the views of the Patrick James Defendants should be weighed against their conduct to date: they have refused to participate in the very civil discovery process they seek to use affirmatively to their advantage. *See, e.g., S.E.C. v. Calabrigo*, No. 22 Civ. 3096 (LJL), 2022 WL 4752427, at *5 (S.D.N.Y. Sept. 30, 2022) (discussing strategic use by a defendant of his Fifth Amendment right in civil proceedings). For example, on the one hand Patrick James has asserted his Fifth Amendment rights in response to the Debtors' discovery requests. *See, e.g.*, Patrick James's Responses and Objections to Debtors' First Set of Requests for Production of Documents to Defendants dated January 9, 2026, a true and correct copy of which is attached hereto as Exhibit D (asserting Fifth Amendment objections to all 78 document requests); Defendants' Consolidated Objections to Debtors' First Set of Interrogatories to Defendants dated January 9, 2025 [*sic.*], a true and correct copy of which is attached hereto as Exhibit E (asserting Fifth Amendment objections to all 18 interrogatories and "declin[ing] to respond" to any). On the other hand, Patrick James has affirmatively used the discovery process to, among other things, circumvent the discovery rules in his criminal case and seek broad categories of records that would be improper in the criminal case under Rule 17(c). *See, e.g.*, Notice of Non-Party Subpoena *Duces Tecum* to VERCYFi LLC dated

January 29, 2026, a true and correct copy of which is attached hereto as Exhibit F, at 8 (requesting "All Communications with or relating to [among others] Stephen Graham, Michael Baker, Peter Andrew Brumbergs, Shekar Kumar, Matthew Liebson"), and 9 (requesting "All Documents and Communications between VERCYFi LLC and … (d) any government agency (SEC, DOJ, FBI, U.S. Trustee, or other regulatory authority) concerning the bankruptcy, the Document Requests You have received, alleged fraud, invoice irregularities, and any investigation of First Brands Group or the Company's factoring practices."); Exhibit B, Chiuchiolo Aff. at ¶ 7 (listing 34 subpoenas issued by the Patrick James Defendants between December 3, 2025, and January 29, 2026).

5. *Judicial Economy Favors a Stay*

Considerations of judicial economy also weigh in favor of granting a stay. Resolving common issues in the criminal case first will streamline this proceeding. The criminal case's outcome will likely affect the scope and conduct of the Patrick James Adversary Proceeding, potentially establishing facts that narrow or resolve civil claims. Requiring witnesses to testify twice regarding the same events wastes judicial resources and burdens the truth-finding process. Courts routinely recognize these efficiency concerns. *See S.E.C. v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *4 (S.D.N.Y. Nov. 9, 2012) ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered). The parralel criminal case co-defendant Edward James has consented to a stay of discovery in connection with the adversary proceeding against him in this Court. A stay in this adversary proceeding against Patrick James pending the

conclusion of the criminal cases against both Patrick James and Edward James avoids duplicative proceedings and conserves this Court's resources. This factor supports the Government's application.

6. *The Public Interest Strongly Supports a Stay*

The public interest in this case is paramount. *Wood*, 2006 WL 3691115 at *3 ("'[T]he public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant.'") (citation omitted). Allowing unfettered civil discovery would undermine the careful balance struck by Congress in the Federal Rules of Criminal Procedure. Criminal discovery is purposefully limited to prevent three specific harms: perjury and manufactured evidence; witness intimidation; and unfair surprise at trial. *Tuzman*, 15-cv-70577057, Exhibit C, at 3-4 (internal citations and quotations omitted). These are not abstract concerns. Broad civil discovery allows criminal defendants to preview the prosecution's case, learn witness identities, and tailor testimony accordingly—all while invoking the Fifth Amendment to avoid reciprocal disclosure. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070-72 (C.D. Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from

harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

The asymmetry here would be stark. Patrick James would depose witnesses (including cooperating co-conspirators whose statements the government need not produce until trial under 18 U.S.C. § 3500), propound interrogatories, and submit requests for admission—all while refusing to answer questions himself. The Debtors would be powerless to obtain reciprocal discovery because of Patrick James's certain invocation of Fifth Amendment rights. *See Calabrigo*, 2022 WL 4752427, at \*5 (S.D.N.Y. Sept. 30, 2022) (discussing strategic use by a defendant of his Fifth Amendment right in civil proceedings); *Nicholas*, 569 F. Supp. 2d at 1070 (noting that when defendants invoke Fifth Amendment rights "the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants"). This is precisely the circumvention of criminal discovery rules that courts consistently reject. *See In re Eisenberg,* 654 F. 2d 1107, 1113 (5th Cir. 1981) (Liberal discovery procedures are not to be used as a back door to access information beyond the reach of criminal discovery); *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit."); *SEC v. Beacon Hill Asset Mgmt. LLC*, 2003 WL 554618, at \*1 (S.D.N.Y. Feb. 27, 2003) ("The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Bd. of Governors v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("A litigant should not be allowed

to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery.").

The public also has a strong interest in ensuring that cooperating witnesses can fulfill their obligations without being subjected to premature depositions that may affect their willingness to testify. Brumbergs and Graham have entered into cooperation agreements with the government. Forcing them to testify now—before the criminal trial—could compromise their cooperation, undermine the criminal prosecution, and discourage future cooperators from coming forward. That concern is underscored here, where Brumbergs and Graham are also defendants in the Patrick James Adversary Proceeding.

Therefore, to avoid circumvention of the criminal discovery restrictions, including the provisions designed to prevent a defendant from tailoring his testimony and obtaining asymmetrical discovery, and because neither Patrick James nor any other defendant will be prejudiced in preparing and defending themselves, this factor weighs in favor of the United States' motion.

## <u>CONCLUSION</u>

For the reasons set forth above, the United States respectfully requests that its motion to intervene for the limited purpose of seeking a stay of discovery in the Patrick James Adversary Proceeding until the conclusion of the Criminal Case be granted.

---

Dated: March 23, 2026

Respectfully submitted,

JOHN G.E. MARCK
Acting United States Attorney


By:  */s/ Paul B. Moore*
Paul B. Moore
Assistant United States Attorney
Attorney-in-Charge
Texas Bar No. 24032755
Southern District No. 802542
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9779
Fax: (713) 718-3300
E-mail: Paul.Moore@usdoj.gov

ATTORNEYS FOR THE
UNITED STATES OF AMERICA

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the United States conferred with the Patrick James Defendants' counsel, Scott Hartman, by email on March 6, 2026, regarding the relief requested in this Motion.   The Patrick James Defendants oppose the relief sought in this Motion.

I hereby certify that counsel for the United States conferred with Debtors' counsel, Robert Berezin, by email on March 10, 2026, regarding the relief requested in this Motion. The Debtors support a stay of discovery for 60 days and take no position on a stay going beyond 60 days.

I hereby certify that counsel for the United States conferred with the Edward James Defendants' counsel, David Shargel, by email on March 6 and 9, 2026, regarding the relief requested in this Motion.   The Edward James Defendants do not oppose the relief sought in this Motion and requested the following statement of their position be included here:

> "Edward James does not oppose the government's request to stay discovery but respectfully urges the Court to go further and stay the adversary proceeding in its entirety.   As the recently filed counterclaims, crossclaims, motion for judgment on the pleadings by Onset, and the motion to dismiss filed by other defendants make clear, motion practice in this matter will be substantial. Requiring the parties to litigate complex legal questions while stopping short of discovery would be an inefficient use of the Court's and parties' resources —

---

including the estate's resources, which are already severely strained by the demands of multiple adversary proceedings, an ongoing mediation, and the broader administration of the bankruptcy case. Furthermore, given the number of parties and claims involved, permitting only a portion of the adversary proceeding to go forward creates a risk of inconsistent outcomes."

I hereby certify that counsel for the United States conferred with the respective counsel for Stephen Graham, Peter Brumbergs, Michael Baker, Shekhar Kumar, and Jeffries Finance LLC, by email on March 5-6, 2026, regarding the relief requested in this Motion. These parties consent to the Government's request for a stay of discovery as sought in this Motion.

I hereby certify that counsel for the United States conferred with the respective counsel for: the Onset affiliated entities; Justin Nielsen; Nielson Investments; Jonathan Gardner; JA Gardner Holdings; Dake P. Holt; Holt Investments; Todd Pederson; Yuma; Coral Dunes LLC; Seddie LLC; Asilia; Scott Miller; Joshua Tree, and the Evolution Credit Partners entities by email on March 5-6, 2026, regarding the relief requested in this Motion. These parties have no position (*i.e.*, neither consent to nor oppose) regarding the Government's request for a stay of discovery as sought in this Motion.

/s/ *Paul B. Moore*

Paul B. Moore
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served on March 23, 2026, by the Court's ECF system or other electronic means on the service list therein.

/s/ *Paul B. Moore*

Paul B. Moore
Assistant United States Attorney

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICK JAMES and<br>EDWARD JAMES,<br><br>Defendants. | **SEALED INDICTMENT**<br><br>26 Cr.<br><br>26 CRIM 029 |

## COUNT ONE
### (Continuing Financial Crimes Enterprise)

The Grand Jury charges:

1.     From at least in or about 2018 through in or about 2025, PATRICK JAMES and EDWARD JAMES, the defendants, built and bankrupted First Brands Group, LLC ("First Brands"), fraudulently obtaining billions of dollars from lenders and enriching themselves.

2.     PATRICK JAMES and EDWARD JAMES, the defendants, and their co-conspirators, perpetrated a series of fraudulent schemes against the company's lenders and financing partners. As part of the defendants' schemes, First Brands faked and falsely inflated invoices for accounts receivable and payable; double- and triple-pledged loan collateral; falsified corporate financial statements; and concealed substantial liabilities from lenders. These schemes yielded billions of dollars in financing to First Brands and enabled PATRICK JAMES and EDWARD JAMES to reap millions of dollars in proceeds derived from their fraud.

3.     The defendants' schemes coincided with, and initially may have contributed to, the growth of First Brands, but those schemes also sowed the seeds of First Brands' demise. After years of acquisitions and expansion using fraudulently obtained financing, First Brands faced overwhelming liabilities and unsustainable cash requirements. In 2025, PATRICK JAMES and

EDWARD JAMES, the defendants, led efforts to refinance First Brands' debt or to sell the company, including through last-ditch attempts to deceive lenders and potential acquirers by disseminating false financials. These efforts failed when First Brands was unable to provide the prospective counterparties with the financial diligence they sought. On September 28, 2025, First Brands filed for bankruptcy. At the time of its bankruptcy, First Brands—a company that reported approximately $5 billion in net annual sales worldwide—declared $12 million in cash in its corporate bank accounts and over $9 billion in liabilities. As a consequence of the defendants' fraudulent schemes, First Brands' lenders and creditors now face billions in losses.

### First Brands and Its Financing Arrangements

4.  First Brands operated as an automotive aftermarket parts supplier that developed, marketed, and sold replacement parts such as brakes, filters, wipers, and lights under various brand names. The company sold its products into established retail and wholesale distribution channels that, in turn, sold them to commercial and individual consumers. First Brands' customer base included large automative retailers, wholesale part distributors, and the world's largest commercial retailers.

5.  PATRICK JAMES, the defendant, founded First Brands and served as its Chief Executive Officer. EDWARD JAMES, the defendant, was First Brands' former Senior Vice President and is PATRICK JAMES's brother. The defendants, along with other executives with whom they conspired, formed the senior business leadership team at First Brands.

6.  Since founding the company in 2013, PATRICK JAMES, the defendant, grew First Brands' market share by buying other automotive-parts businesses, including many well-known auto-parts brands. By in or about 2025, following numerous corporate acquisitions, PATRICK JAMES had built First Brands into one of the largest auto-parts businesses in the world.

2

7.    Under the direction of PATRICK JAMES, the defendant, First Brands' business required substantial cash to sustain its operations. First Brands' customers routinely negotiated extended payment terms—at times permitting payment up to a year after delivery—creating a significant gap between First Brands' manufacturing costs and cash receipts. PATRICK JAMES's growth-through-acquisition strategy added further financial pressure. He arranged for First Brands to acquire other businesses with borrowed money, accumulating significant debt and heavy recurring interest and repayment obligations.

8.    To address the cash lag from extended payment terms, First Brands used factoring. Factoring is a financing arrangement in which a business typically sells or assigns its accounts receivable (invoices) to a third party—commonly a bank or specialized finance company—in exchange for near-term cash, typically at a discount. The third party, called a "factor," then collects full payment when invoices become due. First Brands used two forms of receivable factoring: customer-linked factoring and third-party factoring. Under customer-linked factoring, once a customer verified and approved a First Brands invoice, a bank or financing company affiliated with that customer paid First Brands relatively quickly, even though the customer itself would not pay for months. When invoices ultimately came due, the customer then paid the bank or financing company directly, rather than First Brands. By contrast, when First Brands used third-party factoring, First Brands sold its customer invoices to finance companies unaffiliated with any customer. These factors advanced cash shortly after invoicing, but when customer invoices came due, First Brands—rather than the customer—remained responsible for collecting payment and remitting the full invoice amount to the factor. Because third-party factoring involved no relationship with the customer, invoices were generally not subject to customer verification.

9. First Brands also used third-party financing to pay its suppliers through accounts-payable factoring (also called supply-chain financing). Under these arrangements, financial institutions advanced funds against invoices First Brands owed to its suppliers. In some instances, the financer paid suppliers directly at a discount and First Brands repaid the financer on a later, fixed due date. In other instances, the financer paid First Brands, which then paid the supplier, with repayment due later to the financer. Each of these factoring arrangements had a maximum limit or "capacity" for borrowing. While the arrangements allowed First Brands to delay paying suppliers and improved short-term cash flow, they added another layer of financial obligations that depended on continuing access to cash.

10. Besides its widespread use of invoice factoring, First Brands relied on asset-based lending to finance its operations and acquisitions. Under these arrangements, the company borrowed billions of dollars from lenders secured by inventory and other physical assets such as manufacturing plants, equipment, and other fixed assets. The amount First Brands could borrow depended on the value of these assets, and the company was required to comply with the terms of its loan agreements, including regularly reporting to its lenders about the assets and their value.

11. These financing arrangements left First Brands vulnerable to cash-flow disruptions, sensitive to changes in collateral values, and dependent upon continued access to external financing.

### Accounts Receivable Financing Fraud

12. First Brands factored billions of dollars' worth of customer invoices through arrangements with lenders. At the direction and with the approval of PATRICK JAMES and EDWARD JAMES, the defendants, First Brands systematically obtained invoice-based financing from factors through a series of fraudulent schemes. As part of those schemes, and under the

4

defendants' direction and supervision, First Brands employees routinely submitted fake invoices, fraudulently inflated invoices, and double-pledged invoices for the purpose of selling and pledging them to factoring counterparties as if they represented valid, collectible receivables from customers. In some instances, invoices were generated for transactions that had never occurred, while in others the dollar amounts on invoices were altered to make them appear more valuable. At the defendants' direction, this fraudulent conduct was directed at and affected at least four factoring partners. Through the defendants' fraud schemes, First Brands sold its factoring partners billions of dollars of purported customer receivables that did not exist.

13. PATRICK JAMES, the defendant, and his co-conspirators took steps to ensure that factoring firms did not learn of the company's fraudulent schemes, including by falsely representing that the invoices were bona fide accounts receivable, even where they were fictitious or overstated. Indeed, when First Brands' factoring counterparties raised questions about some of the company's invoices, PATRICK JAMES directed his co-conspirators to take steps to conceal their fraudulent conduct and to ensure that counterparties did not obtain information that might reveal the fraud. For instance, in approximately 2023, one of First Brands' third-party factors ("Factor-1") contacted First Brands seeking information about certain invoices that Factor-1 had purchased. When a lower-level First Brands employee provided the requested invoices to Factor-1, Factor-1's audit partner began questioning EDWARD JAMES, the defendant, and others about what the audit partner described as "huge" discrepancies between the amounts reflected on the First Brands invoices and the information about those same invoices that First Brands had previously provided to Factor-1. After EDWARD JAMES told PATRICK JAMES about the discovery that had been made by Factor-1, PATRICK JAMES directed that future emails from certain third parties, including Factor-1, be restricted to an inner circle of First Brands executives

5

involved in the fraudulent scheme, so that no low-level employee would inadvertently supply accurate information to an inquiring lender.

14.     The defendants continued their scheme to defraud third-party factors even after Factor-1 had flagged falsified invoices. For example, in April 2025, First Brands sold to Factor-1 a fictitious customer invoice in the amount of $3,239.18. As another example, in June 2025, after invoicing a customer for $8,976.24 in automotive parts, First Brands sold to Factor-1 what purported to be the same customer invoice, but it falsely claimed the invoiced amount to be $17,826.26. Three days later, First Brands sold the same customer invoice to another third-party factor, falsely claiming that the invoice amount was $463,734.92.

15.     In total, third-party factors now hold approximately $2.7 billion of fake accounts receivable.

### Accounts Payable Financing Fraud

16.     First Brands also defrauded its accounts payable factoring partners. At the direction and with the approval of PATRICK JAMES and EDWARD JAMES, the defendants, First Brands submitted false and misleading invoice information and false and misleading information about First Brands' financial position to induce financers to increase the amount of funds advanced. Those false representations were material to the lenders. At First Brands' direction, certain financers sent funds to a third-party bill-processing intermediary based on fabricated invoices manufactured by First Brands. Contrary to the understanding of the financers, those funds were not used by the bill processor to pay First Brands' suppliers. Instead, those funds were routed to First Brands itself. At First Brands, these self-payments were referred to as "round trips" or, euphemistically, as "corporate initiatives." Their purpose was to inject additional cash into First Brands at moments when the company was unable to meet its payment obligations with legitimate

6

cash on hand. Rather than paying suppliers, "round trip" funds went toward paying interest on debt, rent, leases, or other operating costs.

17.     The mechanics of these fraudulent schemes were straightforward: To nominate invoices for funding, First Brands used online platforms provided by supply-chain financers. First Brands employees did not upload invoices themselves. Instead, they submitted spreadsheet-style data entries reflecting purported supplier invoice information—such as invoice amounts and dates—that was then transmitted to the financer. To maximize borrowing from the financers, First Brands fabricated the amounts it purportedly owed to suppliers. Those fabricated amounts did not correspond to real invoices or legitimate supplier payables. After submitting the fictitious line item amounts, First Brands directed the financer to transmit the funds to the third-party bill processor, which First Brands instructed to remit the proceeds back to First Brands.

18.     PATRICK JAMES and EDWARD JAMES, the defendants, closely monitored and managed these "round trip" transactions as part of First Brands' daily cash-management process. Internal treasury reports circulated to senior executives tracked available borrowing capacity, net cash flow, and the impact of "corporate initiatives." In multiple communications, PATRICK JAMES, EDWARD JAMES, and other senior executives discussed the scale, timing, and necessity of round-trip payments to manage short-term liquidity, including concerns by the Vice President of Finance—shared with PATRICK JAMES and EDWARD JAMES in August 2021—that the volume of round-trip activity was "getting out of control."

19.     As financers began requesting support for funding requests, First Brands engaged in further fraud to conceal their earlier deceptions. Around May 2023, for example, when a particular supply-chain financer requested the invoices underlying a particular line-item submission, a First Brands employee fabricated a "cover" invoice purporting to show aggregate

7

amounts owed to, or billed by, a third-party payment processor. These fabricated invoices were created solely to satisfy financer diligence requests and did not reflect real transactions. On multiple occasions, when different financers sought documentation for funded amounts, First Brands fabricated and submitted false aggregate invoices to conceal the absence of legitimate supplier obligations._When falsified aggregated invoices did not satisfy certain lenders, the defendants considered terminating that factor relationship. EDWARD JAMES, the defendant, for example, expressed concern when one financer requested physical invoices, asking another First Brands employee whether the factor had asked for such invoices in the past and declaring that he wanted to "kill" the relationship after the requested invoices had been collected.

20.     PATRICK JAMES and EDWARD JAMES, the defendants, also concealed from First Brands' lenders the enormity of First Brands' accounts-payable financing obligations. In consolidated financial statements, at the direction of PATRICK JAMES and EDWARD JAMES, the company reported supplier-finance amounts that were a fraction of the actual liabilities incurred through these programs. In reality, the company maintained outstanding supply-chain financing liabilities exceeding $1 billion.

**Fraud on First Brands' Senior Lenders**
*Off-Balance-Sheet Debt*

21.     As part of their schemes to deceive counterparties and lenders, the defendants deliberately concealed massive amounts of debt incurred through inventory-financing arrangements. While this debt was, by design, nominally incurred by entities outside the First Brands corporate structure, it was purportedly secured by First Brands' inventory. Using that inventory, that is, finished goods and work-in-progress or raw materials held for sale, First Brands received billions of dollars in cash infusions. At the direction of PATRICK JAMES, the defendant, this inventory financing arrangement, which was maintained outside the First Brands corporate

8

balance sheet, was concealed from the company's lenders, who routinely requested and received First Brands' financial statements.

22. The off-balance-sheet debt principally related to inventory-financing arrangements executed by entities wholly owned and controlled by PATRICK JAMES, the defendant (the "James Entities"). The James Entities were nominally separate from First Brands but, in fact, had no independent business operations. Through the James Entities, PATRICK JAMES entered financing arrangements with at least three inventory financers. These three lenders (the "Off-Sheet Lenders") advanced funds to the James Entities, which purportedly used those funds to purchase inventory from First Brands, which was pledged back to the Off-Sheet Lenders as collateral. In other cases, the James Entities entered sale-leaseback transactions, purportedly purchasing inventory from First Brands, selling it to Off-Sheet Lenders, and then leasing back the inventory to the James Entities—funneling the cash from the Off-Sheet Lenders to First Brands. These financing arrangements through the James Entities, and purportedly secured by First Brands' inventory, were not included on First Brands' financial statements.

23. The financing arrangements with the Off-Sheet Lenders were directed by PATRICK JAMES, the defendant, negotiated by EDWARD JAMES, the defendant, and implemented through a series of deliberate and coordinated acts of fraud designed to conceal debt, mislead lenders, and obscure the true source and use of funds.

24. First, the defendants defrauded First Brands' senior lenders by concealing the nature and scale of the off-balance-sheet financing, and, at times, by expressly disavowing that it had such agreements, even as the James Entities incurred billions of dollars in inventory-backed obligations using First Brands' inventory. First Brands repeatedly denied having undisclosed inventory-financing facilities at all. For example, in July 2025, in a response to high-priority lender

9

diligence requests, at the direction of PATRICK JAMES, the defendant, one of First Brands' senior executives falsely represented that First Brands had "no off-balance sheet financing" involving "special purpose entities" and that "all related party relationships" were fully disclosed in the company's financial statements. Those representations were materially false and misleading. By that time, First Brands had incurred approximately $2 billion in undisclosed off-balance-sheet debt through the James Entities.

25. Second, the defendants made false and misleading representations to the Off-Sheet Lenders to fraudulently induce them to extend and expand financing. The James Entities pledged inventory that PATRICK JAMES and EDWARD JAMES, the defendants, purported to be unencumbered but in fact was already subject to liens by, or otherwise pledged to, First Brands' senior lenders and remained on First Brands' balance sheet. In addition, the defendants submitted falsified inventory schedules and account documentation to the Off-Sheet Lenders. The defendants repeatedly caused fake inventory schedules to be provided to satisfy lender diligence and reporting requirements. At the direction of EDWARD JAMES, bank transfers through various James Entities were structured to mimic the purchase and resale of inventory from First Brands, creating the false appearance of legitimate collateral and transaction activity supporting the loans.

26. Third, PATRICK JAMES and EDWARD JAMES, the defendants, undertook extensive acts of concealment to disguise both the source of proceeds obtained from the Off-Sheet Lenders and flowing into First Brands and the repayment of obligations from First Brands to the Off-Sheet Lenders. Loan proceeds from the Off-Sheet Lenders were deliberately routed through a customer collections entity maintained outside the First Brands corporate structure and then were disbursed across First Brands subsidiaries before being swept back into First Brands' operating account. The defendants designed this flow of funds specifically so that the funds appeared to be

ordinary customer receipts from retail subsidiaries rather than loan proceeds from related-party financing arrangements with the James Entities. For example, the chart below depicts a December 2024 financing from one of the Off-Sheet Lenders, with funds being circuitously transferred from the lender to one of the James Entities, to a First Brands customer collections account, and then transferred and split across five different First Brands operating entities at arbitrary pre-determined percentages, where the funds were disguised as customer receipts.



27.     At the direction of PATRICK JAMES and EDWARD JAMES, the defendants, repayments to the Off-Sheet Lenders were similarly disguised by routing payments first through a third-party bill processor and then through the James Entities, supported by sham invoices falsely representing payables for inventory owed by First Brands. These circuitous transactions were designed to evade related-party-transaction disclosures in the company's audited financials, obscure the company's true leverage, and prevent lenders and auditors from detecting the existence and magnitude of the off-balance sheet debt.

11

28.     By laundering proceeds fraudulently obtained from Off-Sheet Lenders, the defendants were able to both conceal and advance their criminal schemes and personally profit from them. The inventory-financing arrangements functioned as a parallel borrowing structure designed to inject liquidity into the company while evading covenants, borrowing-base limitations, and disclosure requirements imposed by lenders. Additionally, through these transactions, PATRICK JAMES, the defendant, personally siphoned millions of dollars of Off-Sheet Lenders' funds into his personal accounts before the funds reached First Brands' corporate coffers. EDWARD JAMES, the defendant, also sought to personally enrich himself from the financing arrangements. As one example, while executing the financing agreements on behalf of the James Entities, EDWARD JAMES received millions in commission fees for brokering one of the purported inventory financings.

29.     As a result of these purported inventory financing arrangements, the defendants concealed enormous liabilities and thereby misrepresented First Brands' true financial condition, misrepresented the nature and extent of collateral to its inventory financers, and enriched themselves at the expense of lenders and other stakeholders.

### *False and Misleading Statements about First Brands' Financial Condition*

30.     PATRICK JAMES and EDWARD JAMES, the defendants, also defrauded First Brands' lenders by disseminating materially false and misleading financial information about the company and secretly encumbering assets subject to the lenders' borrowing base and priority liens.

31.     First, beginning at least as early as 2020, PATRICK JAMES and EDWARD JAMES, the defendants, caused First Brands to provide asset-backed lenders with financial statements that did not reflect the company's true financial position. At the direction and with the approval of PATRICK JAMES, First Brands employees made financial statement adjustments

untethered to business realities and instead designed to meet financial benchmarks set by PATRICK JAMES. For example, in August 2021, the Chief Financial Officer directed the Vice President for Finance to make fraudulent adjustments to First Brands' financials, at the direction of PATRICK JAMES: "Talked with PJ [PATRICK JAMES]. Want to: reduce factoring by 3. Reduce interest by 6. Reduce non cash by 14. Increase restructuring 14." PATRICK JAMES directed these adjustments to First Brands' financial reporting, which were designed to artificially decrease expenses and improve margins reported to First Brands' lenders. To implement these directives, First Brands employees maintained internal "bridge" files that juxtaposed accurate corporate financials with spurious financial adjustments needed to meet the benchmarks set by PATRICK JAMES. Those bridge files were then used to manually adjust entries in the corporate books of various First Brands' subsidiaries and were reflected in First Brands' financial statements and presentations. PATRICK JAMES caused these manipulated financials to be disseminated to lenders as accurate representations of the company's performance and condition.

32.     Second, PATRICK JAMES, the defendant, reinforced and sustained these falsehoods by misleading First Brands' outside auditors. PATRICK JAMES repeatedly certified that First Brands had no related-party arrangements, despite knowing that First Brands had purportedly sold billions of dollars' worth of inventory to the James Entities—wholly owned and controlled by PATRICK JAMES—and that the James Entities had incurred billions of dollars of liabilities using First Brands' inventory as collateral. These misrepresentations were intended to prevent auditors and lenders from discovering the existence and magnitude of First Brands' debts.

33.     Third, PATRICK JAMES and EDWARD JAMES, the defendants, also caused materially false and misleading information to be provided to the asset-backed lenders regarding the collateral allegedly securing their loans. Under the governing loan agreements, the asset-

backed lenders held priority liens on specific First Brands assets, such as inventory. Without the lenders' knowledge or approval, the defendants encumbered those assets, purporting to sell them free and clear to the Off-Sheet Lenders through the James Entities, notwithstanding the lenders' existing security interests.

### The First Brands Frauds Unravel

34.     By 2025, First Brands' fraudulent schemes could not forestall acute cash shortages and mounting liabilities at the company. PATRICK JAMES and EDWARD JAMES, the defendants, recognized the company's dire position and attempted to refinance First Brands' debt or sell the company. As that process was underway, the defendants closed ranks, restricting the flow of information outside the company in an effort to prevent the true financial picture at First Brands from being disclosed to creditors, auditors, and potential purchasers. In April and May 2025, at the defendants' direction, employees in their inner circle withheld information from factor partners and auditors. Members of the inner circle expressed concern in an email among themselves that if other employees were permitted to speak to First Brands' counterparties they might "slip and say the wrong thing," such as inadvertently revealing the existence of the James Entities or the off-balance-sheet debt.

35.     Even as the frauds unraveled and First Brands' financial issues mounted, PATRICK JAMES, the defendant, continued to enrich himself as the owner of First Brands. Through the series of frauds he directed, PATRICK JAMES caused billions of dollars in gross proceeds to flow into First Brands from counterparties and received at least hundreds of millions of dollars in gross proceeds into his personal accounts.

36.     On or about September 28, 2025, First Brands filed for bankruptcy. At that time, the company had over $9 billion in liabilities, stemming from debt obligations recorded on the

14

company's balance sheet, debt omitted from the company's balance sheet, and factoring liabilities in both accounts receivable and accounts payable.

## Statutory Allegations

37.     From at least in or about 2018 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, PATRICK JAMES, the defendant, knowingly organized, managed, and supervised a continuing financial crimes enterprise, in that the defendant committed violations of Title 18, United States Code, Sections 1343 and 1344, including Counts Three through Eight set forth below, which violations were part of a series of violations of those statutes committed by at least four persons acting in concert, and from which the defendant received $5,000,000 and more in gross receipts from such enterprise during any 24-month period. The series of violations, as defined by Title 18, United States Code, Section 225, includes the violations set forth below in Counts Three through Eight of this Indictment.

(Title 18, United States Code, Sections 225 and 2.)

## COUNT TWO
### (Conspiracy to Commit Wire Fraud Affecting a Financial Institution and Bank Fraud)

The Grand Jury further charges:

38.     The allegations contained in paragraphs 1 through 36 of this Indictment are repeated and realleged as if fully set forth herein.

39.     From at least in or about 2018 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, PATRICK JAMES and EDWARD JAMES, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, which affected a financial institution, in violation of Title 18, United States Code, Section 1343, and to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

15

40.     It was a part and object of the conspiracy that PATRICK JAMES and EDWARD JAMES, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, which affected a financial institution, in violation of Title 18, United States Code, Section 1343, to wit, PATRICK JAMES and EDWARD JAMES, and others, agreed to make and cause to be made false and misleading statements to First Brands' lenders and financers regarding its financial condition and the existence, nature, and value of collateral that First Brands pledged or sold to its lenders and financers.

41.     It was further a part and an object of the conspiracy that PATRICK JAMES and EDWARD JAMES, the defendants, and others known and unknown, knowingly would and did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344, to wit, PATRICK JAMES and EDWARD JAMES, and others, agreed to make and cause to be made false and misleading statements to financial institutions regarding its financial condition and the existence, nature, and value of collateral that First Brands pledged to its lenders and financers.

(Title 18, United States Code, Section 1349.)

16

## COUNT THREE
### (Wire Fraud Affecting a Financial Institution)

The Grand Jury further charges:

42.     The allegations contained in paragraphs 1 through 36 of this Indictment are repeated and realleged as if fully set forth herein.

43.     From at least in or about 2020 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, PATRICK JAMES and EDWARD JAMES, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit, PATRICK JAMES and EDWARD JAMES, and others, devised a scheme and artifice to defraud and to obtain money from First Brands' factors through fraudulent representations and promises regarding the nature, value, and existence of First Brands' accounts receivable, which affected a financial institution, and caused others to send and receive, emails, telephone calls, videoconferences, and other electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR
### (Wire Fraud Affecting a Financial Institution)

The Grand Jury further charges:

44.     The allegations contained in paragraphs 1 through 36 of this Indictment are repeated and realleged as if fully set forth herein.

17

45. From at least in or about 2020 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, PATRICK JAMES and EDWARD JAMES, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit, PATRICK JAMES and EDWARD JAMES, and others, devised a scheme and artifice to defraud and to obtain money from First Brands' supply chain financers through fraudulent representations and promises regarding the nature, value, and existence of First Brands' accounts payable and First Brands' financial condition, which affected a financial institution, and sent and received, and caused others to send and receive, emails, telephone calls, videoconferences, and other electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FIVE
### (Bank Fraud)

The Grand Jury further charges:

46. The allegations contained in paragraphs 1 through 36 of this Indictment are repeated and realleged as if fully set forth herein.

47. From at least in or about 2020 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, PATRICK JAMES and EDWARD JAMES, the defendants, knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to

18

obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, PATRICK JAMES and EDWARD JAMES, and others, executed a scheme and artifice to defraud financial institutions that provided supply chain financing to First Brands through fraudulent representations and promises regarding the nature, value, and existence of First Brands' accounts payable and First Brands' financial condition.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT SIX
### (Wire Fraud Affecting a Financial Institution)

The Grand Jury further charges:

48. The allegations contained in paragraphs 1 through 36 of this Indictment are repeated and realleged as if fully set forth herein.

49. From at least in or about 2020 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, PATRICK JAMES and EDWARD JAMES, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit, PATRICK JAMES and EDWARD JAMES, and others, devised a scheme and artifice to defraud and to obtain money from First Brands' lenders through fraudulent representations and promises regarding First Brands' financial condition, which affected a financial institution, and sent and received, and caused others to send and receive, emails, telephone calls, videoconferences, and

19

other electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT SEVEN
### (Bank Fraud)

The Grand Jury further charges:

50. The allegations contained in paragraphs 1 through 36 of this Indictment are repeated and realleged as if fully set forth herein.

51. From at least in or about 2020 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, PATRICK JAMES and EDWARD JAMES, the defendants, knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, PATRICK JAMES and EDWARD JAMES, and others, executed a scheme and artifice to defraud financial institutions that provided asset-backed financing to First Brands through fraudulent representations and promises regarding First Brands' financial condition.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT EIGHT
### (Wire Fraud Affecting a Financial Institution)

The Grand Jury further charges:

52. The allegations contained in paragraphs 1 through 36 of this Indictment are repeated and realleged as if fully set forth herein.

20

53.     From at least in or about 2020 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, PATRICK JAMES and EDWARD JAMES, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit, PATRICK JAMES and EDWARD JAMES, and others, devised a scheme and artifice to defraud and to obtain money from First Brands' off-sheet lenders through fraudulent representations and promises regarding First Brands' financial condition and the nature, value, and existence of collateral and property that were the subject of financing agreements, which affected a financial institution, and sent and received, and caused others to send and receive, emails, telephone calls, videoconferences, and other electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT NINE
### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

54.     The allegations contained in paragraphs 1 through 36 of this Indictment are repeated and realleged as if fully set forth herein.

55.     From at least in or about 2022 up to and including at least in or about 2025, in the Southern District of New York and elsewhere, PATRICK JAMES and EDWARD JAMES, the defendants, and others known and unknown, willfully and knowingly combined, conspired,

21

confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

56. It was a part and an object of the conspiracy that PATRICK JAMES and EDWARD JAMES, the defendants, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, PATRICK JAMES and EDWARD JAMES, and others, agreed to disguise the proceeds of fraudulent representations to the Off-Sheet Lenders of First Brands, including through transactions designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity alleged in Count 8, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATIONS

57. As a result of committing the offenses alleged in Counts One through Eight of this Indictment, PATRICK JAMES and EDWARD JAMES, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Eight, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that the defendants personally obtained.

22

23

58.     As a result of committing the offense alleged in Count Nine of this Indictment, PATRICK JAMES and EDWARD JAMES, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

<u>Substitute Assets Provision</u>

59.     If any of the above-described forfeitable property, as a result of any act or omission by the defendants:

        a.       cannot be located upon the exercise of due diligence;

        b.       has been transferred or sold to, or deposited with, a third party;

        c.       has been placed beyond the jurisdiction of the court;

        d.       has been substantially diminished in value; or

        e.       has been commingled with other property which cannot be divided

without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

(Title 18, United States Code, Sections 981, 982; Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461.)

_____
FORE[REDACTED]

Jay Clayton
_____
JAY CLAYTON
United States Attorney

24

# EXHIBIT B

---

**AFFIRMATON OF ASSISTANT UNITED STATES ATTORNEY**
**NICHOLAS W. CHIUCHIOLO**

---

NICHOLAS W. CHIUCHIOLO hereby affirms under penalty of perjury as follows:

1. I am an Assistant United States Attorney ("AUSA") in the Office of Jay Clayton, United States Attorney for the Southern District of New York (the "Government").

2. I am one of the AUSAs in charge of the federal criminal cases *United States* v. *Patrick James & Edward James*, 26 Cr. 29 (AT) (S.D.N.Y.), and *United States v. Peter Andrew Brumbergs & Stephen Graham*, No. 26 Cr. 25 (AT) (S.D.N.Y.). I have personal knowledge of the facts and circumstances set forth herein through my involvement in these criminal cases, including through my communications with others and review of documents.

3. On January 27, 2026, a grand jury in the Southern District of New York returned an indictment charging Patrick James and Edward James.

4. Two former First Brands Group executives—Vice President for Finance Peter Andrew Brumbergs, and CFO Stephen Graham—have been charged by criminal informations and pled guilty on January 27, 2026 and March 2, 2026, respectively, and agreed to cooperate with the Government, including by offering testimony when requested. Brumbergs's and Graham's sentencing hearings will occur after the criminal case against Patrick James and Edward James has concluded.

5. The criminal case against Patrick James and Edward James, assigned to Judge Analisa Torres, is proceeding expeditiously, with a trial date set for July 13, 2026. Since the initial pretrial conference on February 4, 2026, the Government has produced more than a

million documents in discovery, including search warrant returns for multiple electronic accounts, as well corporate records from the Debtors and other third-party custodians.

6. The next conference before Judge Torres is scheduled for April 27, 2026.

7. The Government has learned that Patrick James has issued subpoenas in this adversary proceeding to at least 34 entities: Jeffries Financial Group Inc.; Apollo Global Management; LAM Trade Finance Group I SPV; LAM Trade Finance Group II LLC; LAM Trade Finance Group LLC; Leucadia Asset Management LLC; Point Bonita Capital Fund LLC; Aequum Capital Financial II, LLC; Asilia Investments, LLC; Evolution Credit Opportunity Master Fund II-B, L.P.; Keystone National Group, LLC; UMB Bank, N.A.; BDO USA, P.C.; GLAS Trust Company LLC; GLAS USA LLC; UBS O'Connor Investor LLC; UBS O'Connor LLC; AB CarVal Credit Opportunities Fund; AB Carval Investors, L.P.; CarVal AA General Partner LP; CarVal AV General Partner LP; CarVal Contingent Credit Fund LP; CarVal GCF Master Fund I LP; CVI AA Master Fund I LP; CVI AV Master Fund I LP; CVI CSF Master Fund I LP; CVI CVF V Pooling Fund I LP; CVI EMCOF US LLC; CVI General Partner, LLC; Katsumi Global, LLC; Katsumi Servicing, LLC; Raistone Capital, LLC; Raistone Purchasing LLC – Series XXXII; Helios Strategic Advisors, LLC; Onset Financial, Inc.; VERCYFi LLC. Nearly all of these entities are victims and/or witnesses in the criminal case against Patrick James and Edward James.

By: _____
Nicholas W. Chiuchiolo
Assistant United States Attorney
Telephone: (212) 637-1247

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Securities and Exchange Commission,

Plaintiff,

—v—

Kaleil Isaza Tuzman and Robin Smyth,

Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED MAR 0 1 2016

15-CV-7057 (AJN)

MEMORANDUM AND
ORDER

ALISON J. NATHAN, District Judge:

The Securities and Exchange Commission ("SEC") initiated this action against Kaleil

Isaza Tuzman ("Tuzman") and Robin Smyth ("Smyth") alleging civil violations of the Securities

Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"). Dkt.

No. 1. Tuzman and Smyth were subsequently indicted on related criminal charges by the U.S.

Attorney's Office for the Southern District of New York. *See* Dkt. No. 26. Currently before the

Court is the Government's motion to intervene and implement a limited stay of discovery

pending resolution of the criminal charges. Dkt. No. 28. While Smyth consents to the requested

stay, Tuzman has filed an opposition. Dkt. No. 36. For the reasons articulated below, the

Government's motion is granted.

## I. MOTION TO INTERVENE

Under Federal Rule of Civil Procedure 24(a), the court must allow a party to intervene if

it "claims an interest relating to the . . . transaction that is the subject of the action, and is so

situated that disposing of the action may as a practical matter impair or impede the movant's

ability to protect its interest. . . ." Fed. R. Civ. P. 24(a)(2). Tuzman does not articulate any

objection to this portion of the Government's request, *see* Opp. Br., and the Government's

1

motion to intervene is granted. *See S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) ("The government had a discernible interest in intervening . . . to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter.").

## II. MOTION TO STAY DISCOVERY

The Government requests a partial stay of discovery delaying depositions, interrogatories, requests for admission, and disclosure of 3500 material until parallel criminal proceedings have concluded. Br. at 1. In evaluating whether to grant such a stay, courts in this circuit consider:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012) (quoting *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (Chin, J.)).

In support of its request, the Government primarily argues that "asymmetrical discovery" would allow Tuzman to "tailor his defenses" to the criminal charges and create a risk of witness intimidation. Tuzman responds that his criminal case is meaningfully different that the civil case, that the criminal case will not be resolved quickly, and that any delay in his ability to take depositions and preserve witness testimony will prejudice his defense of the civil suit. The Court will evaluate these arguments in light of the factors articulated above.

### A. Overlap Between Parallel Proceedings

Tuzman first argues that the Government's stay request must be denied because the indictment against him does not include allegations in paragraphs 15 through 59 of the SEC's complaint. Opp. Br. at 18-19. On this point, Tuzman argues that he should not be precluded

2

from seeking discovery regarding "allegations that the government must concede it has no interest in pursuing criminally." *Id.* at 19. In response, the Government argues that this conduct is intertwined with the charged conduct and that it will seek to introduce it "as direct evidence and/or prior act evidence in the criminal trial." Reply Br. at 10. Although the SEC's complaint and the indictment do not contain identical allegations, because the "civil and criminal proceedings arise out of the same or related transactions," the court finds that the substantial overlap between the civil and criminal proceedings weighs in favor of a stay. *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966).

### B. Status of the Case

Courts in this district have generally held that "stays will generally not be granted before an indictment is issued." *Trs. of Plumbers & Pipefitters Nat'l Pension Fund*, 886 F. Supp. at 1139 (Chin, J.). This rule is in place partially because "the prejudice to the plaintiffs in the civil case is reduced" once an indictment has been filed because "the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." *Id.* While an indictment has been filed here, it is not clear that the case "will [] be quickly resolved" due to Tuzman's pending extradition proceedings in Colombia. *See id.*; Opp. Br. at 16. As a result, the Court cannot conclude that this factor weighs as heavily in favor of a stay as it normally does. *See In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment.").

### C. The Government's Interest in the Requested Stay

Courts have articulated three primary government interests justifying a stay of discovery of civil proceedings while parallel criminal proceedings are pending. First, "broad disclosure of

3

the essentials of the prosecution's case may lead to perjury and manufactured evidence." *S.E.C. v. Cioffi*, No. 08-CV-2457 (FB), 2008 WL 4693320, at *2 (E.D.N.Y. Oct. 23, 2008) (quoting *Nakash v. United States Dep't of Justice*, 708 F. Supp. 1354, 1366 (S.D.N.Y. 1988)). Second, "revelation of the identity of prospective witnesses may create the opportunity for intimidation." *Id*. Third, "criminal defendants may unfairly surprise the prosecution at trial with information developed through discovery, while the self[-]incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants." *Id*. The Government argues that these factors weigh heavily in favor of the requested stay.

First, the Government discusses the "asymmetrical discovery" that would result without the requested stay. Reply Br. at 3. Due to the pending criminal matter, the Government argues that Tuzman will likely invoke his Fifth Amendment privilege against self-incrimination in the civil case. *Id*. For this reason, as one court put it, denying a stay "would render civil discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the Defendants." *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008). In such a circumstance, discovery could not be completed and the civil case could not be resolved until after the criminal case has ended. For this reason, the Government expresses concern that the real value for Tuzman in obtaining discovery at this early stage is to allow Tuzman to "tailor his defenses" in preparation for the criminal trial. Reply Br. at 3.

The possibility of "asymmetrical discovery" is apparent from Tuzman's surreply, which asks the Court to deny the Government's motion to stay, but to stay Tuzman's deposition. *See* Surreply at 5-6. In the alternative, Tuzman argues that he is "fully prepared to proceed with discovery and risk the entry of an adverse inference should be choose to assert his Fifth

4

Amendment rights." *Id.* at 5. Based on Tuzman's filings, the Court finds it highly likely that Tuzman would invoke his Fifth Amendment right against self-incrimination during discovery, rendering discovery incomplete and one-sided until the criminal proceedings have ended. This asymmetry would prevent meaningful progress from being made to complete discovery to resolve this lawsuit and would permit Tuzman to use witness testimony to shape his defense to the criminal charges. Tuzman's acceptance of the possibility of an adverse inference does not rectify the situation. In fact, his willingness to risk an adverse inference in order to obtain discovery in this civil suit reinforces the Government's argument that the real value of civil discovery is not to defend the civil suit, but to allow Tuzman to "tailor his defenses" in preparation for the criminal trial. Reply Br. at 3. As a result, the Court finds that this factor weighs in favor of the requested stay.

The Government also argues that disclosing the substance of statements and conducting depositions of its prospective witnesses during discovery puts those witnesses at risk of intimidation by Tuzman. In support of this contention, the Government cites two emails and numerous interviews where potential witnesses in the criminal case have reported "fears of violence and intimidation from Tuzman," including at least two reports of threatened physical violence in the past. Reply Br. at 9. Tuzman points out that the evidence proffered by the Government is hearsay and argues that the Court "should not credit or rely on the government's say-so." Surreply at 7. Tuzman does not point to any authority indicating that it is improper for the Government to rely such evidence at the motion to stay stage. *See United States v. Approximately $104,770 in U.S. Currency*, No. C 11-0249 (MMC), 2011 WL 2224624, at \*1 (N.D. Cal. June 8, 2011). Based on these emails and the other representations of the

5

Government, the Court finds that the risk of witness intimidation weighs strongly in favor of the requested stay.

### D. The Prejudice to Tuzman by the Requested Stay

Unlike other defendants opposing similar stay requests from the Government, Tuzman does not argue that he has a "compelling need to proceed expeditiously in [his] civil case" to bring it to a resolution. *See, e.g., S.E.C. v. Doody*, 186 F. Supp. 2d 379, 381 (S.D.N.Y. 2002). As noted above, Tuzman's right against self-incrimination in the face of parallel criminal proceedings make it almost impossible resolve this civil matter until after the criminal matter is complete. Instead, Tuzman argues that staying depositions will inhibit his ability to preserve testimony before "memories fade," noting that some of the conduct alleged in the SEC's complaint dates back to 2008. Opp. Br. at 12-13. Although memories may fade as time passes, *see United States v. Blaustein*, 325 F. Supp. 233, 238 (S.D.N.Y. 1971), the parallel criminal proceedings here actually mitigate this concern. For example, witnesses' statements are likely preserved in interview notes and will further be memorialized in the form of trial testimony to which Tuzman will have access after the conclusion of the criminal proceedings. Furthermore, the Government has indicated that at least some witness testimony has already been preserved in the form of transcripts of testimony before the SEC with respect to this civil matter.[1] Br. at 1. Even without such preserved statements, Tuzman "has failed to demonstrate" that any possible prejudice to him in his civil case from fading memory "outweighs the government's interest in obtaining a stay." *Doody*, 186 F. Supp. 2d at 382.

---

[1] It is also worth noting that a stay eliminates the possibility of any adverse inference against Tuzman for invoking his Fifth Amendment rights, a factor mitigating potential prejudice even further.

## III.   CONCLUSION

For the foregoing reasons, the Government's motion is granted.  The following discovery is hereby stayed:

(1) Rule 26(a)(i)(A) discovery;

(2) Depositions, interrogatories, and requests for admission; and

(3) production of transcripts of SEC testimony and notes of interviews of any person whom the United States Attorney's office certifies may be called as a witness in the criminal case.

*See Doody*, 186 F. Supp. 2d at 382.  Tuzman may move to lift the stay if the parallel criminal matter does not proceed expeditiously.

This resolves Dkt. No. 28.


SO ORDERED.

Dated: March 31, 2016
          New York, New York

_____
ALISON J. NATHAN
United States District Judge

# EXHIBIT D

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| FIRST BRANDS GROUP, *et al.*, | : | Case No. 25-90399 (CML) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |
|  | : |  |
|  | : |  |
| FIRST BRANDS GROUP, *et al.*, | : |  |
| Plaintiffs | : | Adv. Pro. No. 25-3803 (CML) |
|  | : |  |
| v. | : |  |
|  | : |  |
| PATRICK JAMES, THE PATRICK JAMES | : |  |
| TRUST, ALBION REALTY, LLC, ALESTER | : |  |
| TECHNOLOGIES LLC, BATTERY PARK | : |  |
| HOLDINGS LLC, BOND STREET ASSET | : |  |
| MANAGEMENT LLC, IGNITE ACQUISITION | : |  |
| HOLDINGS LLC, LARCHMONT LLC, PEGASUS | : |  |
| AVIATION, LLC, JOHN DOE(S) 1-100, AND | : |  |
| ABC CORPORATION(S) 1-100, | : |  |
| Defendants | : |  |
|  | ; |  |

## PATRICK JAMES'S RESPONSES AND OBJECTIONS TO DEBTORS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, as incorporated into Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure, and pursuant to the corresponding Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), Patrick James ("Mr. James"), by and through his undersigned counsel, hereby serves the following responses and objections (the "Responses and Objections") to First

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Brands Group, LLC and its debtor affiliates' ("Debtors" or "Plaintiffs") First Set of Requests for Production of Documents ("Requests" and each a "Request") in the above-captioned adversary proceeding (the "Adversary Proceeding").

## GENERAL OBJECTIONS AND RESERVATION OF RIGHTS

1. The following General Objections and Objections to Definitions and Instructions ("General Objections") apply to and shall have the same force and effect as if set forth in full in response to, each specific Request, to the General Definitions, to the Specific Definitions, and to the Instructions. No objection, or lack thereof, made in these Responses and Objections or in the production of documents or information in response to the specific Requests, shall be deemed an admission by Mr. James that such documents or information are relevant, material, or admissible, nor deemed a waiver of Mr. James's rights to raise further objections. Mr. James's investigation and discovery are ongoing as to all matters referred to in these Responses and Objections. Mr. James's Responses and Objections reflect his investigation to date. Mr. James reserves the right to modify and supplement his Responses and Objections as appropriate and to produce, introduce, or rely upon additional or subsequently acquired or discovered information, evidence, documents, facts, and/or other things in any proceedings or at any trial held hereafter.

2. Mr. James notes that there is an ongoing criminal investigation and to that end reserves any and all rights, claims, and defenses in connection with that investigation, including specifically any right, claim, or defense under the United States Constitution or any other applicable law against self-incrimination. Mr. James objects to each Request to the extent that it calls for disclosure of information protected by the Fifth Amendment privilege against self-incrimination under the United States Constitution.

3. Mr. James objects to the Requests, to each specific Request, to the General Definitions, to the Specific Definitions, and to the Instructions to the extent that they purport to

2

impose requirements different than, or beyond those specified in, the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, as incorporated into Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure (including Rules 26 and 34 of the Federal Rules of Civil Procedure), the Local Rules, and/or any other applicable rules, laws, regulations, or court orders (collectively, the "Applicable Rules") or Orders of the Court overseeing this Adversary Proceeding (the "Court"). To the extent any Definition, Instruction, or Request does not comport with the Applicable Rules, or the ordinary meaning of any word itself, Mr. James will follow the Applicable Rules or apply the ordinary meaning of the word.

4. Mr. James objects to the Requests, to each specific Request, to the General Definitions, to the Specific Definitions, and to the Instructions to the extent that they seek Electronically Stored Information ("ESI") that is not proportional to the needs of the case or to the extent that they are inconsistent with the parameters regarding production of ESI set forth in the Applicable Rules and/or any other orders of the Court overseeing this Adversary Proceeding.

5. Mr. James objects to the Requests, to each specific Request, to the General Definitions, to the Specific Definitions, and to the Instructions to the extent that they purport to impose burdens or obligations on Mr. James that exceed, differ from, or purport to supersede those imposed by the Applicable Rules.

6. Mr. James objects to the Requests, to each specific Request, to the General Definitions, to the Specific Definitions, and to the Instructions to the extent that they are vague and ambiguous, overbroad, unduly burdensome, duplicative, vexatious, harassing, oppressive, and/or seek information that is not material and necessary in the prosecution or defense of this Adversary Proceeding, that is not otherwise relevant to the subject matter of this Adversary

3

Proceeding, that does not bear on the controversy or assist in preparation for trial, or that is not likely to lead to the discovery of admissible evidence.

7. Mr. James objects to the Requests, to each specific Request, to the General Definitions, to the Specific Definitions, and to the Instructions to the extent they call for disclosure of information or documents protected by the attorney-client privilege, attorney work-product doctrine, mediation privilege, the joint defense privilege, the common interest doctrine, the taxpayer privilege, or any other applicable privilege, doctrine, law, rule or protection from disclosure, or call for information or documents protected by any immunities under the United States Constitution, including but not limited to the rights, privileges, and immunities afforded by the Fifth Amendment of the United States Constitution, or any applicable federal or state laws and regulations (collectively, "Privileged Information"). Mr. James does not waive any rights and/or privileges with respect to any pending or future investigations or prosecutions and expressly reserves and does not waive any and all rights, privileges, and immunities under the United States Constitution, including but not limited to the rights, privileges, and immunities afforded by the Fifth Amendment of the United States Constitution, or any applicable federal or state laws and regulations, including to the extent that the act of producing any documents or information could be construed as a waiver of any such protection. Mr. James specifically reserves the right to not produce such documents or information and reserves the right to redact such information from any otherwise responsive document produced in a response to any Request. Mr. James further reserves the right, consistent with Federal Rules of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26, to demand the return of any documents or information that inadvertently may be produced during discovery if Mr. James determines that such documents or information contain Privileged Information. Consistent with Federal Rule of Evidence 502(b),

4

if any Privileged Information is inadvertently disclosed by Mr. James, such disclosure shall not constitute a waiver of any Privileged Information. Mr. James also specifically reserves the right to demand the return, destruction, or segregation of any documents that may be produced during discovery, if Mr. James determines, in his sole discretion, that such documents contain Privileged Information and Mr. James has not consented to their production.

8. Mr. James objects to the Requests to the extent that they seek the production of documents about entities that are not related to the dispute in the Adversary Proceeding.

9. Mr. James objects to the Requests, to each specific Request, to the General Definitions, to the Specific Definitions, and to the Instructions to the extent that they seek documents or information that are not in Mr. James's possession, custody, and control or are not reasonably available to Mr. James, including requests for documents or information that are in the possession, custody, and control of entities or persons other than Mr. James.

10. Mr. James objects to the Requests, to each specific Request, to the General Definitions, to the Specific Definitions, and to the Instructions to the extent that they seek the production of documents or information that are (a) already in the possession, custody, and control of the Debtors; (b) publicly available or otherwise equally available to the Debtors; or (c) more appropriately obtained from other sources or by other means of pretrial discovery. Mr. James disclaims any obligation to collect or produce documents from any entity other than himself.

11. Mr. James objects to the Requests, to each specific Request, to the General Definitions, to the Specific Definitions, and to the Instructions to the extent that they seek commercially sensitive, proprietary, highly personal, or otherwise confidential information. Mr. James reserves the right to object to the production of highly sensitive, highly personal, and proprietary information in responding to the Requests. To the extent that any such material is

5

responsive to the Requests, Mr. James will only provide it subject to these Responses and Objections and in accordance with a protective order entered in this Adversary Proceeding.

12. Mr. James objects to the Requests to the extent they seek commercially sensitive, proprietary, highly personal, or otherwise confidential information of third parties or seek documents from third parties.

13. Mr. James objects to the Requests, to each specific Request, to the General Definitions, to the Specific Definitions, and to the Instructions to the extent that they purport to require Mr. James to search for and produce ESI from sources that are not reasonably accessible because of undue burden or cost or not otherwise proportional to the needs of the case.

14. Mr. James objects to the Requests to the extent they impose an obligation on Mr. James to produce documents that are created or received after receipt of the Requests.

15. Mr. James reserves the right to produce documents on a rolling basis.

16. Mr. James objects to the Requests, to each specific Request, to the General Definitions, to the Specific Definitions, and to the Instructions as overbroad and unduly burdensome to the extent they seek "each," "any," "all," or "every" Document, Communication, or information that exists or has existed relating to a given subject matter where production of a subset would be sufficient. Mr. James's responses that state that non-privileged documents or communications will be produced do not constitute a representation that such documents exist, but only that responsive documents or communications will be produced if they exist and can be located through a reasonably diligent, good faith search of readily accessible files identified as most likely to contain documents and within e-mails of a set of relevant custodians, using search terms and/or technology-assisted review parameters, and will produce responsive, non-privileged

6

documents or communications located as a result of that search, subject to the responses and objections contained herein.

17.     Mr. James objects to each Request to the extent that it seeks the production of documents where the parties have not agreed to reasonable search terms, custodians, and time parameters.

18.     Mr. James objects to each Request to the extent that it is duplicative or cumulative of another Request.

19.     Mr. James objects to the Requests, to each specific Request, to the General Definitions, to the Specific Definitions, and to the Instructions to the extent they assume or state disputed facts; call for interpretations of, or otherwise characterize, contracts and other documents, the terms of which speak for themselves; or purport to require Mr. James to draw, or are predicated on, legal conclusions or arguments. By responding to the Requests, Mr. James does not agree to any assumption, factual predicate, contractual interpretation, characterization, or legal conclusion contained therein, and any response or provision of information in response to the Requests is not intended to provide, and shall not constitute or be construed as providing, a legal conclusion or admission.

20.     Should Mr. James agree to meet and confer regarding any Requests or ultimately provide documents responsive to any Requests, the fact that Mr. James agrees to meet and confer or endeavors to identify responsive documents shall not be interpreted as implying that Mr. James has any responsive documents in his possession, custody, and control, or that any responsive material is reasonably accessible to Mr. James without undue burden, or that any such responsive material will be provided with respect to that Request.

21.     Any response to a Request is made expressly reserving the right to object on the grounds of admissibility, competency, privilege, including Fifth Amendment privilege, relevance or materiality, or any other proper grounds, to the use of the Response, for any purpose in any subsequent proceeding in this or any other action.

22.     The Responses and Objections herein are based on Mr. James's present knowledge, information, and belief.  Mr. James reserves the right to amend, revise, correct, supplement, or clarify any of the Responses and Objections herein for any reason, including the discovery of additional evidence, or following any court order that affects the nature or scope of appropriate discovery.

23.     Mr. James objects to the Requests, to each specific Request, to the General Definitions, to the Specific Definitions, and to the Instructions because the Debtors have not entered into the Transition Protocol, pursuant to Section 6 of the Resignation Agreement, which is to govern Mr. James's and the Company's access to certain information.

## OBJECTIONS TO GENERAL DEFINITIONS

1.     Unless specified otherwise, Mr. James does not adopt Plaintiffs' definitions of words and phrases.  Mr. James objects to the "General Definitions" stated in the Requests to the extent they are susceptible to more than one distinct interpretation or are inconsistent with the ordinary and customary meaning of such words and phrases or the rules governing the permissible scope of discovery.

2.     Mr. James objects to the scope of the Definitions of "Communications" and "Documents" (i) as overbroad and unduly burdensome; (ii) covering documents and other information that is not relevant or is beyond the scope of the Adversary Proceeding; (iii) to the extent it seeks documents that are not proportional to the needs of the case; (iv) to the extent the Requests seek to impose obligations or requirements in addition to, different from, or beyond the

8

scope of those imposed by the Applicable Rules; and (v) to the extent it seeks (a) information or documents that are protected from disclosure under any applicable privilege, immunity, or protection, including but not limited to the attorney-client privilege and the work-product doctrine, or (b) information or documents outside of Mr. James's possession, custody, or control. Mr. James will interpret the terms "Communication" and "Documents" consistently with Federal Rule of Civil Procedure 34(a) and will limit his Responses and Objections accordingly.

3. Mr. James further objects to the scope of the Definition of "Communications" as vague, ambiguous, overly broad, and unduly burdensome because it defines the term to include references to communications with business entities to include "all officers, directors, employees, personnel, agents, attorneys, accountants, consultants, independent contractors, and/or other representatives of such entities." Mr. James will interpret a reference to a business entity to mean only that business entity and its directors, employees, officers, parents, and subsidiaries.

4. Mr. James objects to the Definition of "Concerning" as (i) overbroad and unduly burdensome; (ii) seeking information that it is beyond the scope of the Applicable Rules; and (iii) not proportional to the needs of the case. Mr. James will interpret the term as referring to, evidencing, constituting, or discussing.

5. Mr. James objects to the Definition of "Electronically Stored Information" as overly broad, unduly burdensome, and not proportional to the needs of the case. Mr. James further objects to the extent it seeks the production of "all associated metadata," including date and time of last edit and history of who viewed an email and when, among other information. Mr. James is willing to meet and confer with Plaintiffs on the scope and format of metadata provided.

6. Mr. James objects to the Definition of "Person," and to any Definition, Instruction, or Request that incorporates the Definition, to the extent it seeks (a) information or documents

that are protected from disclosure under any applicable privilege, immunity, or protection, including but not limited to the attorney-client privilege and the work-product doctrine, or (b) information or documents outside of Mr. James's possession, custody, and control.

## OBJECTIONS TO SPECIFIC DEFINITIONS

1. Unless specified otherwise, Mr. James does not adopt Plaintiffs' definitions of words and phrases. Mr. James objects to the "Specific Definitions" stated in the Requests to the extent that they are susceptible to more than one distinct interpretation or are inconsistent with the ordinary and customary meaning of such words and phrases or the rules governing the permissible scope of discovery.

2. Mr. James objects to the definition of "You," and "Your" and to any Definition, Instruction, or Request that incorporates these Definitions to the extent it (i) seeks Documents and Communications from individuals or entities over which Mr. James does not have control; (ii) seeks information that is not within Mr. James's possession, custody, and control; (iii) seeks information that is beyond the scope of the Applicable Rules; (iv) is not proportional to the needs of the case; and (v) requires Mr. James to access, review, and produce information that is not reasonably accessible and is unduly burdensome to access, review, and produce. Mr. James further objects to these definitions insofar as they purport to include Mr. James's attorneys and/or yield requests that seek the production of Privileged Information. Mr. James will construe the terms "You" and "Your" to mean Patrick James.

3. Mr. James objects to Definition Nos. 2-3, 7, 9-11, 13-17, 20, 24-25, 27-28, 30-34, 36-38, 40-44, 49, 56-59 as vague, ambiguous, overly broad, and unduly burdensome to the extent that it defines those terms to include an entity's "Affiliates, agents, assigns, directors, employees, officers, parents, partners, representatives, subsidiaries, independent contractors, advisors,

10

attorneys, and/or any other Persons purporting to act on its behalf and/or under its control." For each respective entity, Mr. James will interpret the term to mean the entity and its directors, employees, officers, parents, and subsidiaries.

4. Mr. James objects to the Definition of "Accounts Receivable Factoring Company" as overly broad and unduly burdensome to the extent it defines the terms to include "any" Person participating in "any" Receivables Facility. Mr. James will interpret the term to include "Katsumi, KARS, Jefferies, Evolution, Raistone, Factofrance, ABC, and/or ING Belgium," subject to the objections to the Definitions of those specific entities elsewhere in these Responses and Objections.

5. Mr. James objects to the Definition of "Asset" as vague, ambiguous, overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it includes items of value that are not at issue in this Adversary Proceeding.

6. Mr. James objects to the Definition of "Company" as vague, ambiguous, overly broad, and unduly burdensome because it defines the term to include any of First Brand Group LLC's "Affiliates, agents, assigns, directors, employees, officers, parents, partners, representatives, subsidiaries, independent contractors, advisors, attorneys, and/or any other Persons purporting to act on its behalf and/or under its control." Mr. James will interpret the term as it is defined in the Complaint in this Adversary Proceeding, Adv. Dkt. No. 17.

7. Mr. James objects to the Definition of "Defendants" insofar as he objects to the Definitions of Albion Realty, Alester Technologies, Battery Park, Bond Street, Ignite, Larchmont, Pegasus, John and Jane Does(s), and ABC Corporation(s) elsewhere in these Responses and Objections.

11

8.      Mr. James objects to the Definition of "Entity Defendants" insofar as he objects to the Definitions of Albion Realty, Alester Technologies, Battery Park, Bond Street, Ignite, Larchmont, Pegasus, John and Jane Does(s), and ABC Corporation(s) elsewhere in these Responses and Objections.

9.      Mr. James objects to the Definition of "John and Jane Doe(s)" to the extent that is requires a legal conclusion because it defines the term to include that these Persons "received Transfers and/or participated in or aided and abetted various frauds . . . ."

10.      Mr. James objects to the Definition of "Liability" as vague, ambiguous, overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it includes financial obligations that are not at issue in this Adversary Proceeding.

11.      Mr. James objects to the Definition of "Reinvestments" and to any Definition, Instruction, or Request that incorporates this Definition, to the extent it requires Mr. James to adopt as accurate the meaning of the term set forth in Paragraph 16 of the Emergency Motion to Vacate or Amend Order Granting Temporary Restraining Order, filed at ECF No. 25, and Paragraph 16 of the Opposition to Debtors' Application For Preliminary Injunction, filed at ECF No. 37.  Mr. James further objects to this Definition to the extent it assumes disputed facts.

12.      Mr. James objects to the Definition of "Related Party" as overly broad and unduly burdensome because it defines the terms to include any related party of "the Company's Affiliates, equity holders, managers, officers, employees, other insiders, and/or any Affiliate."  Mr. James will interpret the term to mean "the Company's Affiliates, equity holders, managers, officers, employees, other insiders, and/or any Affiliate."

13.      Mr. James objects to the Definition of "Transfer" insofar as he objects to the Definition of "Asset" elsewhere in these Responses and Objections.

12

## OBJECTIONS TO INSTRUCTIONS

1.      Mr. James objects to the Instructions on the grounds that they are overly broad and unduly burdensome, seek discovery that is not proportional to the needs of the case, and to the extent they purport to impose on Mr. James obligations that are different than or exceed those imposed by the Applicable Rules.

2.      Mr. James objects to Instruction No. 2 to the extent it seeks documents and communications from January 1, 2017 through the present as overly broad, unduly burdensome, and not proportional to the needs of the case.  Unless otherwise stated in the Responses and Objections to the specific Requests below, Mr. James will produce non-privileged, responsive documents and communications for the period of September 28, 2021 through September 28, 2025, which corresponds to the relevant lookback period for the claims alleged in the Complaint.

3.      Mr. James objects to Instruction No. 4 as unduly burdensome to the extent that it indicates that these Requests are continuing in nature.  Unless otherwise stated in the Responses and Objections to the specific Requests below, Mr. James will produce non-privileged, responsive documents and communications in his possession, custody, and control as of the date these Responses and Objections are served.

4.      Mr. James objects to Instruction No. 5 because it requests that Mr. James respond to the Requests using information and knowledge that is in the possession of third parties, including agents and other representatives.  Mr. James further objects to Instruction No. 5 to the extent it requires Mr. James to search through his attorneys' files on the basis that it would be unduly burdensome to search through such files to identify responsive, non-privileged materials.  Mr. James will not search the files of his counsel.  Mr. James will respond to the Requests with

13

non-privileged, responsive documents and communications in his own possession, custody and control, and reasonably available to him.

5.      Mr. James objects to Instruction No. 7 as overly broad and unduly burdensome. Mr. James will respond to the Requests with knowledge and information in his own possession, custody and control, and reasonably available to him.

6.      Mr. James objects to Instruction No. 8 to the extent that it seeks commercially sensitive, proprietary, highly personal, or otherwise confidential information.  To the extent that any such material is responsive to this Request, Mr. James will only provide it subject to these Responses and Objections and in accordance with a protective order entered in this Adversary Proceeding.

7.      Mr. James objects to Instruction No. 13 to the extent that it seeks to impose obligations or requirements in addition to the scope of those imposed by the Applicable Rules, including by seeking Mr. James to "explain with particularity the construction or interpretation selected by You in responding to the Request."  Mr. James will respond to the Requests consistently with Federal Rule of Civil Procedure 34.

8.      Mr. James objects to Instruction No. 15 as unduly burdensome and beyond the scope of the Applicable Rules because it seeks information not reasonably available to Mr. James and seeks speculation about documents that may or may not have existed, as well as speculation about why those documents no longer exist.  Mr. James will not attempt to identify any such documents.

9.      Mr. James objects to Instruction No. 16 and reserves the right to object to produce documents produced by another Defendant or Person if it would be unduly burdensome for Mr. James to also produce those documents.

14

10.    Mr. James objects to Instruction No. 19 as unduly burdensome and beyond the scope of the Applicable Rules, including Mr. James's previous objections to the Definitions of "Documents" and "Communications" and the requirement to produce "all" associated metadata. Mr. James will not produce materials to the extent that it is unduly burdensome.

11.    Mr. James objects to Instruction No. 20 to the extent that it is unduly burdensome. Mr. James will produce documents in the manner most efficient, cost effective, and reasonable. Mr. James objects to Instruction No. 20a to the extent that it requires identification of the location of the document and the person or custodian in whose possession it was found.  Mr. James will not provide such information.  Mr. James objects to Instruction No. 20c to the extent that it calls for processing documents in Universal Time Coordinate ("UTC").  Mr. James will produce all documents in the (UTC-05:00) Eastern Time (US & Canada) zone.  Mr. James objects to Instruction No. 20e to the extent that it calls for Privileged Information.  Mr. James does not waive any rights and/or privileges with respect to any pending or future investigations or prosecutions and expressly reserves and does not waive any and all rights, privileges, and immunities under the United States Constitution, including but not limited to the rights, privileges, and immunities afforded by the Fifth Amendment of the United States Constitution, or any applicable federal or state laws and regulations, including to the extent that the act of producing any documents or information could be construed as a waiver of any such protection.  Mr. James specifically reserves the right to not produce such documents or information and reserves the right to redact such information from any otherwise responsive document produced in a response to any Request. Mr. James objects to Instruction No. 20(n) to the extent that it requires Mr. James to separately parse the date and time fields.  Mr. James will consolidate this information into a single field for simplicity and consistency.

## SPECIFIC RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

Each of the foregoing General Objections and Objections to Definitions and Instructions is incorporated into each of the Responses below to the specific Requests as though fully set forth therein:

**REQUEST NO. 1**: Documents sufficient to show the relationship between Defendant James and each of the other Defendants.

## RESPONSE TO REQUEST NO. 1

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 2**: All articles of association, articles of incorporation, partnership agreements, limited liability partnership agreements, limited liability company agreements, joint venture agreements, share ledgers, charters, bylaws, corporate foundational documents, and/or board materials (Including but not limited to minutes of meetings of the board of directors and committees thereto and/or any related informational packages and presentations shared with, distributed to, or presented by or to the board of directors or committees thereto) Concerning each Entity Defendant.

16

**RESPONSE TO REQUEST NO. 2**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" "articles of association, articles of incorporation, partnership agreements, limited liability partnership agreements, limited liability company agreements, joint venture agreements, share ledgers, charters, bylaws, corporate foundational documents, and/or board materials (Including but not limited to minutes of meetings of the board of directors and committees thereto and/or *any* related informational packages and presentations shared with, distributed to, or presented by or to the board of directors or committees thereto)."

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 3**: All governing documents, organizational documents, trust agreements, trust amendments, certificates of trust, schedules of trust assets, trustee resolutions, trustee minutes,

17

trust accounting records, bills of transfer, materials relating to trust formation or modification, and/or Documents identifying all trustees, advisors, and/or other fiduciaries Concerning Defendant Patrick James Trust.

## RESPONSE TO REQUEST NO. 3

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" "governing documents, organizational documents, trust agreements, trust amendments, certificates of trust, schedules of trust assets, trustee resolutions, trustee minutes, trust accounting records, bills of transfer, materials relating to trust formation or modification, and/or Documents identifying *all* trustees, advisors, and/or other fiduciaries Concerning Defendant Patrick James Trust."

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

18

**REQUEST NO. 4**: All organizational charts Concerning each Entity Defendant.

**RESPONSE TO REQUEST NO. 4**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" organizational charts concerning each Entity Defendant. Mr. James further objects to this Request to the extent it seeks Documents that are duplicative of materials sought by other Requests, including, Request No. 3.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 5**: Documents sufficient to identify each Entity Defendant's shareholders, members, partners, limited partners, general partners, owners, trustees, beneficiaries, directors, officers, and/or managers, as well as the nature, extent, and/or value of each such Person's interests and/or roles in each Entity Defendant.

**RESPONSE TO REQUEST NO. 5**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth

Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request to the extent it seeks Documents and Communications that are duplicative of materials sought by other Requests, including, Request Nos. 1, 2, and 3.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 6**: All management materials and/or management subcommittee materials Concerning each Entity Defendant, Including but not limited to draft and final agendas, presentations, packets, memoranda, minutes, pitch decks, and/or summaries.

**RESPONSE TO REQUEST NO. 6**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" "management materials and/or management subcommittee materials . . ., Including but not limited to draft and final agendas, presentations, packets, memoranda, minutes, pitch decks, and/or summaries." Mr. James further objects to this Request on the grounds that its use of the terms "management materials," "management subcommittee materials," "agendas," "presentations," "packets," "memoranda," "minutes," "pitch decks," and "summaries" are vague and ambiguous.

20

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 7**: All capitalization tables, statements of shareholder equity, shareholder registers, and/or shareholder agreements Concerning each Entity Defendant.

**RESPONSE TO REQUEST NO. 7**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request to the extent it seeks Documents and Communications that are duplicative of materials sought by other Requests, including, Request Nos. 1, 2, and 3.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 8**: All Documents and Communications Concerning the equity capital structure of the Company, each Entity Defendant, and each SPV, Including but not limited to shares, warrants, options, and/or other instruments reflecting a right to ownership.

21

**RESPONSE TO REQUEST NO. 8**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning the equity capital structure . . . . Including but not limited to shares, warrants, options, and/or other instruments reflecting a right to ownership." Mr. James further objects to this Request to the extent that it seeks Documents and Communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 9**: All Documents and Communications Concerning the debt structure of the Company, each Entity Defendant, and each SPV, Including but not limited to bonds, mortgages, debentures, loans or other debt arrangements, commercial paper, lines of credit, and/or other debt instruments.

**RESPONSE TO REQUEST NO. 9**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* the debt structure of the Company, each Entity Defendant, and each SPV, Including but not limited to bonds, mortgages, debentures, loans or other debt arrangements, commercial paper, lines of credit, and/or other debt instruments." Mr. James further objects to this Request to the extent that it seeks Documents and Communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 10**: All Documents and Communications Concerning any and all ownership interests, financial interests, and/or other interests that any Defendant, Edward James, and/or any

23

Family Member of Defendant James currently holds or previously held in the Company, each Entity Defendant, each SPV, and/or each SPV Financing Counterparty.

**RESPONSE TO REQUEST NO. 10**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any and all* ownership interests, financial interests, and/or other interests." Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding to the extent it seeks documents concerning "any Family Member of Defendant James" because the "ownership interests, financial interests, and/or other interests" of Mr. James's Family Members are not put at issue in the Complaint. Mr. James further objects to this Request to the extent that it seeks documents and communications that are already in the Debtors' possession, custody, and control or are otherwise in Edward James's possession, custody, and control.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States

24

Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 11**: Documents sufficient to show any and all liens on each Defendant's Assets.

**RESPONSE TO REQUEST NO. 11**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding and to the extent it calls for Documents sufficient to show all liens on each of Defendants' Assets.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 12**: All Documents and Communications Concerning the financial condition and/or financial performance of the Company, each Entity Defendant, and/or each SPV, Including but not limited to any analysis, summary, and/or information Concerning solvency, ability to pay debts as they come due, adequacy of capital position, value of Assets, value of Liabilities, leverage, debt capacity, enterprise value, equity value, cash flows, profitability, and/or balance sheets.

25

**RESPONSE TO REQUEST NO. 12**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning the financial condition and/or financial performance . . . Including but not limited to *any* analysis, summary, and/or information Concerning solvency, ability to pay debts as they come due, adequacy of capital position, value of Assets, value of Liabilities, leverage, debt capacity, enterprise value, equity value, cash flows, profitability, and/or balance sheets." Mr. James further objects to the extent that this Request seeks Documents and Communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request to the extent it seeks Documents and Communications concerning the financial condition or financial performance of the Entity Defendants as such information is not relevant to any claim or defense in this action.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

26

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 13**: All Documents and Communications reflecting any valuation of the Company, any Entity Defendant, and/or any SPVs.

**RESPONSE TO REQUEST NO. 13**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "reflecting *any* valuation." Mr. James further objects to this Request to the extent it seeks Documents and Communications concerning any valuation of the Entity Defendants, as such information is not relevant to any claim or defense in this Action.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 14**: Documents sufficient to show the names of all customers, suppliers, and/or vendors of each Entity Defendant.

27

**RESPONSE TO REQUEST NO. 14**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request to the extent it seeks Documents concerning the names of all customers, suppliers, and/or vendors of the Entity Defendants because such information is not relevant to any claim or defense in this Action.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 15**: Documents sufficient to show the names, titles, roles, and time periods of employment for each employee of each Entity Defendant.

**RESPONSE TO REQUEST NO. 15**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request to the extent it seeks Documents concerning the names, titles, roles, and time periods of employment for each employee of the Entity Defendants because such information is not relevant to any claim or defense in this Action. Mr. James further

objects to this Request on the grounds that it is overly broad to the extent that is call for "the names titles, roles, and time periods of employment for *each* employee of the Entity Defendants."

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 16**: All Documents and Communications Concerning the calculation of any amounts paid to the Company by any Defendant and/or any SPV, received from the Company by any Defendant and/or any SPV, owed by the Company to any Defendant and/or any SPV, and/or owed to the Company by any Defendant and/or any SPV.

**RESPONSE TO REQUEST NO. 16**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning the calculation of *any* amounts paid." Mr. James also objects to this Request as overly broad until the Debtors allege which specific transfers are the subject of their claims in the Complaint. Mr. James further objects to the extent that this Request seeks Documents and Communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation,

29

the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 17**: All Documents and Communications Concerning any and all Transfers between and/or among the Company, any Defendant, any Family Member of Defendant James, any Person under Defendant James' control, any SPV, and/or any SPV Financing Counterparty, Including but not limited to Documents Concerning the dates, amounts, consideration, and purpose of each Transfer, the accounts or Persons from which and to which each Transfer was made, any collateral provided in connection with any such Transfer, and/or any subsequent disposition and/or Transfer of any proceeds of such Transfer.

**RESPONSE TO REQUEST NO. 17**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any and all* Transfers." Mr. James also objects to this Request as overly broad until the Debtors allege which specific transfers are the subject of their claims in the Complaint.

30

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding to the extent it seeks documents and communications concerning "any Family Member of Defendant James" because Mr. James's Family Members are not put at issue in the Complaint. Mr. James further objects to this Request as overly broad and unduly burdensome to the extent it seeks documents and communications from "any Person under Defendant James' control."

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 18**: All contracts, agreements, and/or other arrangements pursuant to which any Transfers between and/or among the Company, any Defendant, any Family Member of Defendant James, any Person under Defendant James' control, any SPV, and/or any SPV Financing Counterparty were made.

**RESPONSE TO REQUEST NO. 18**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth

Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome to the extent that it seeks "All" "contracts, agreements, and/or other arrangements pursuant to which *any* Transfers between and/or among the Company, any Defendant, any Family Member of Defendant James, any Person under Defendant James' control, any SPV, and/or any SPV Financing Counterparty were made." Mr. James further objects to the extent that this Request seeks Documents and Communications that are already in the Debtors' possession, custody, and control.

Mr. James also objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding to the extent it seeks documents concerning "any Family Member of Defendant James" because Mr. James's Family Members are not put at issue in the Complaint. Mr. James further objects to this Request as overly broad and unduly burdensome to the extent it seeks documents from "any Person under Defendant James' control."

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 19**: All general ledgers, subledgers, bank statements, wire transfer confirmations, trial balances, journal entries, account reconciliations, and associated debit or credit entries reflecting any Transfers between and/or among the Company, any Defendant, any Family Member of Defendant James, any Person under Defendant James' control, any SPV, and/or any SPV Financing Counterparty.

**RESPONSE TO REQUEST NO. 19**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome to the extent that it seeks "All" "general ledgers, subledgers, bank statements, wire transfer confirmations, trial balances, journal entries, account reconciliations, and associated debit or credit entries reflecting *any* Transfers between and/or among the Company, any Defendant, any Family Member of Defendant James, any Person under Defendant James' control, any SPV, and/or any SPV Financing Counterparty." Mr. James further objects to the extent that this Request seeks Documents and Communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding to the extent it seeks documents concerning "any Family Member of Defendant James" because Mr. James's Family Members are not put at issue in the Complaint. Mr. James further objects to this Request as overly broad and unduly burdensome to the extent it seeks documents from "any Person under Defendant James' control."

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 20**: All Documents and Communications Concerning each Reinvestment and the purpose of each Reinvestment.

33

**RESPONSE TO REQUEST NO. 20**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *each* Reinvestment and the purpose of *each* Reinvestment." Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 21**: All Documents and Communications Concerning the Transfer of Assets by any Defendant, any Family Member of Defendant James, and/or any Person under Defendant James' control.

**RESPONSE TO REQUEST NO. 21**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See

34

<u>Davis-Lynch v. Moreno</u>, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* the Transfer of Assets." Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding to the extent it seeks documents and communications concerning "any Family Member of Defendant James" because Mr. James's Family Members are not put at issue in the Complaint. Mr. James further objects to this Request as overly broad and unduly burdensome to the extent it seeks documents and communications from "any Person under Defendant James' control."

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 22**: All Documents and Communications Concerning any payments, loans or other debt proceeds, dividends, distributions, disbursements, remunerations, and/or other funds made and/or provided by the Company to any Defendant, any Family Member of Defendant James, and/or any Person under Defendant James' control, Including but not limited to any

35

Documents reflecting the calculation, authorization, and/or recording of any such payments, loans or other debt proceeds, dividends, distributions, disbursements, remunerations, and/or other funds.

**RESPONSE TO REQUEST NO. 22**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any* payments, loans or other debt proceeds, dividends, distributions, disbursements, remunerations, and/or other funds" "Including but not limited to *any* Documents reflecting the calculation, authorization, and/or recording of any such payments, loans or other debt proceeds, dividends, distributions, disbursements, remunerations, and/or other funds." Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding to the extent it seeks documents and communications concerning "any payments, loans or other debt proceeds, dividends, distributions, disbursements, remunerations, and/or other funds made and/or provided by the Company to" "any Family Member of Defendant James" such transactions are not put at issue in the Complaint. Mr. James further objects to this Request as overly broad and unduly burdensome to the extent it seeks documents and communications from "any Person under Defendant James' control."

36

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 23**: All Documents and Communications involving Defendant James and/or any and all Persons involved in managing his finances, taxes, trusts, and/or businesses Concerning Assets received from the Company.

**RESPONSE TO REQUEST NO. 23**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "involving Defendant James and/or *any and all* Persons involved in managing his finances, taxes, trusts, and/or businesses." Mr. James further objects to this Request to the extent it seeks information involving Persons "*involved in managing*" Mr. James's finances, taxes, and/or businesses, which phrase is undefined, vague, and ambiguous.

Mr. James further objects to this Request to the extent it calls for the production of documents and communications outside of Mr. James's possession, custody, and control.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 24**: All Documents and Communications Concerning any transactions between the Company and any Defendant.

**RESPONSE TO REQUEST NO. 24**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any* transaction." Mr. James also objects to this Request as overly broad until the Debtors allege which specific transfers are the subject of their claims in the Complaint. Mr. James further objects to this Request to the extent it

38

seeks Documents and Communications that are duplicative of materials sought by other Requests, including, Request No. 17.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 25**: All contracts and/or agreements, Including but not limited to employment, management, and/or compensation agreements, between any Defendant and the Company and between and/or among any Defendants.

**RESPONSE TO REQUEST NO. 25**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" contracts and/or agreements. Mr. James further objects to this Request on the grounds that it calls for the production of documents and communications that are already in the Debtors' possession, custody, and control.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 26**: All Documents and Communications reflecting any account activity, Including but not limited to bank statements, brokerage statements, account statements, checks, canceled checks, check images, deposit information, withdrawal information, wire confirmations, ACH Records, journal entries, ledgers, and/or other financial or accounting records, for any

39

account owned, controlled, and/or used by any Defendant, Including but not limited to accounts jointly held with other Persons.

**RESPONSE TO REQUEST NO. 26**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "reflecting *any* account activity, Including but not limited to bank statements, brokerage statements, account statements, checks, canceled checks, check images, deposit information, withdrawal information, wire confirmations, ACH Records, journal entries, ledgers, and/or other financial or accounting records, for *any* account owned, controlled, and/or used by any Defendant.". Mr. James further objects to this Request to the extent it calls for the production of documents and communications outside of Mr. James's possession, custody, and control.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 27**: All Documents and Communications Concerning the financial statements of each Entity Defendant, Including but not limited to cash flow statements, income statements, and/or balance sheets.

40

**RESPONSE TO REQUEST NO. 27**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* the financial statements of each Entity Defendant, Including but not limited to cash flow statements, income statements, and/or balance sheets." Mr. James further objects to this Request to the extent it seeks Documents and Communications concerning the financial statements of the Entity Defendants because such information is not relevant to any claim or defense in this Action.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 28**: All Documents and Communications Concerning any Assets, services, entities, and/or other consideration provided by any Defendant to the Company.

41

**RESPONSE TO REQUEST NO. 28**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any* Assets, services, entities, and/or other consideration provided by any Defendant to the Company." Mr. James further objects to this Request to the extent it seeks information concerning "services," "entities," and "consideration," which terms are undefined and vague.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 29**: All Documents and Communications Concerning the valuation and/or pricing of any Assets, entities, and/or services provided by any Defendant to the Company.

**RESPONSE TO REQUEST NO. 29**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning the valuation and/or pricing of *any* Assets, entities, and/or services provided by any Defendant to the Company."

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 30**: Documents sufficient to show all Assets owned by and/or otherwise in the possession, custody, and/or control of any Defendant.

**RESPONSE TO REQUEST NO. 30**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See

43

Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request to the extent it seeks documents concerning the Assets owned by the Defendants because such information is not relevant to any claim or defense in this Action. Mr. James further objects to this Request to the extent it calls for the production of documents and communications outside of Mr. James's possession, custody, and control.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 31**: Documents sufficient to show all Liabilities of each Defendant.

**RESPONSE TO REQUEST NO. 31**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request to the extent it seeks documents concerning the Liabilities of each Defendant because such information is not relevant to any claim or defense in this Action.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 32**: Documents sufficient to show all real property owned by any Defendant, or in which any Defendant holds any ownership interest directly or indirectly, Including but not limited to any real property jointly owned by any Defendant and any other Person.

44

**RESPONSE TO REQUEST NO. 32**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request to the extent it seeks documents concerning real property owned by any Defendant because such information is not relevant to any claim or defense in this action. Mr. James further objects to this Request to the extent it calls for the production of documents and communications outside of Mr. James's possession, custody, and control.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 33**: Documents sufficient to show the sources of funds or financing that any Defendant used to purchase any real property owned by a Defendant, or in which a Defendant holds any ownership interest directly or indirectly, Including but not limited to any real property jointly owned by any Defendant and any other Person.

**RESPONSE TO REQUEST NO. 33**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

45

Mr. James further objects to this Request to the extent it seeks sources of funds or financing used by any Defendant because such information concerning sources of funds or financing is not relevant to any claim or defense in this Action if the sources of funds is not from the Debtors.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 34**: Documents sufficient to show all leases of real property to the Company by any Defendant or to any Defendant by the Company, the terms of any such lease, and all records of payments and expense reimbursements related thereto.

**RESPONSE TO REQUEST NO. 34**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request to the extent it seeks Documents sufficient to show all leases of real property to the Company by any Defendant or to any Defendant by the Company, the terms of any such lease, and all records of payments and expense reimbursements related thereto because such information is not relevant to any claim or defense in this Action. Mr. James further objects to this Request on the grounds that it calls for the production of documents and communications that are already in the Debtors' possession, custody, and control.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 35**: All Documents and Communications Concerning the creation, purpose, and use of the Bowery Entities.

**RESPONSE TO REQUEST NO. 35**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* the creation, purpose, and use of the Bowery Entities."

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 36**: All Documents and Communications Concerning any Transfers to or from any Bowery Entity.

**RESPONSE TO REQUEST NO. 36**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See

47

Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any* Transfers to or from any Bowery Entity." Mr. James also objects to this Request as overly broad until the Debtors allege which specific transfers are the subject of their claims in the Complaint, as the Complaint alleges that "nearly $12 billion flowed through" the Bowery Entities.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 37**: All Documents and Communications Concerning any tax distributions and/or dividends from the Company to any Defendant, any amounts received or allocated to any Defendant for taxes and/or dividends, and/or the tax treatment of any Transfer from the Company to any Defendant, Including but not limited to Schedule K-1s, tax returns, Form 990s, work papers, Documents reflecting the calculation of taxes, and/or Documents reflecting the calculation, authorization, or recording of any such distributions, dividends, or Transfers.

48

**RESPONSE TO REQUEST NO. 37**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any* tax distributions and/or dividends from the Company to any Defendant, *any* amounts received or allocated to any Defendant for taxes and/or dividends, and/or the tax treatment of *any* Transfer from the Company to any Defendant." Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Notwithstanding the foregoing, and subject to and without waiving the foregoing General Objections and Specific Objections, Mr. James will produce documents not otherwise protected by the Fifth Amendment.

**REQUEST NO. 38**: All Documents and Communications Concerning any Sale-Leaseback Agreements, Including but not limited to any purchase agreements, loan agreements, security agreements, collateral agreements, forbearance agreements, customer agreements, engagement

49

letters, financial statements, audits, reconciliations, valuations, property appraisals, fairness opinions, solvency analyses, going concern analyses, credit analyses, tax analyses, impairment analyses, cash flow analyses, business segment reporting analyses, quarterly or annual reports, risk assessments, and/or other analyses.

## RESPONSE TO REQUEST NO. 38

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any* Sale-Leaseback Agreements, Including but not limited to *any* purchase agreements, loan agreements, security agreements, collateral agreements, forbearance agreements, customer agreements, engagement letters, financial statements, audits, reconciliations, valuations, property appraisals, fairness opinions, solvency analyses, going concern analyses, credit analyses, tax analyses, impairment analyses, cash flow analyses, business segment reporting analyses, quarterly or annual reports, risk assessments, and/or other analyses."

Mr. James further objects to this Request to the extent that it seeks documents and communications that are already in the Debtors' possession, custody, and control. Mr. James s further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or

any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 39**: All Documents and Communications Concerning any and all invoices and/or requests for reimbursements sent to the Company by any Defendant, any Family Member of Defendant James, and/or any Person under Defendant James' control.

**RESPONSE TO REQUEST NO. 39**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any and all* invoices and/or requests for reimbursements."

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding to the extent it seeks documents and communications concerning "any Family Member of Defendant James" because Mr. James's Family Members are not put at issue in the Complaint.

51

Mr. James further objects to this Request as overly broad and unduly burdensome to the extent it seeks documents and communications from "any Person under Defendant James' control."

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 40**: All Documents and Communications Concerning any and all payments by the Company, Including but not limited to payments to third parties for expenses incurred by any Defendant, any Family Member of Defendant James, and/or any Person under Defendant James' control, Including but not limited to any and all payments Concerning housing, rent, transportation, aviation, security, consulting, internet services, technical support, wellness, personal training, financial planning, and/or personal chef services.

**RESPONSE TO REQUEST NO. 40**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any and all* payments by the Company," "Including but not limited to *any and all* payments Concerning housing, rent, transportation, aviation, security, consulting, internet services, technical support, wellness, personal training, financial planning, and/or personal chef services."

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary

52

Proceeding to the extent it seeks documents and communications concerning "any Family Member of Defendant James" because Mr. James's Family Members are not put at issue in the Complaint. Mr. James further objects to this Request as overly broad and unduly burdensome to the extent it seeks documents and communications from "any Person under Defendant James' control."

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 41**: All Communications between any Person associated with any Entity Defendant and/or any entity under Defendant James' control, on the one hand, and officers, directors, employees, personnel, agents, attorneys, accountants, consultants, independent contractors, and/or other representatives of the Company, on the other hand.

**RESPONSE TO REQUEST NO. 41**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding, and not proportional to the needs of this Adversary Proceeding. Mr. James further objects to this Request as overly broad and unduly burdensome to the extent it seeks communications "between any Person *associated with* any Entity Defendant and/or any entity under Defendant James' control, on the one hand, and officers, directors, employees, personnel, agents, attorneys, accountants, consultants, independent contractors, and/or other representatives

53

of the Company, on the other hand" on the grounds that the phrase "associated with" is undefined, vague, and ambiguous.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 42**: All Documents and Communications between and/or among any of the Defendants Concerning any SPV.

**RESPONSE TO REQUEST NO. 42**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding, and not proportional to the needs of this Adversary Proceeding. Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "between and/or among any of the Defendants *Concerning* any SPV."

54

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 43**: All Documents and Communications Concerning the Company's transactions with any SPVs, Including but not limited to whether the transactions were negotiated and performed at arms' length and in good faith.

**RESPONSE TO REQUEST NO. 43**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* the Company's transactions with any SPVs." Mr. James further objects to this Request on the grounds that it calls for the production of documents and communications that are already in the Debtors' possession, custody, and control.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 44**: All Documents and Communications Concerning Assets that any Defendant received from or paid to any SPV Financing Counterparty, Supply Chain Financing Company, and/or Accounts Receivable Factoring Company.

**RESPONSE TO REQUEST NO. 44**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* Assets that any Defendant received from or paid to *any* SPV Financing Counterparty, Supply Chain Financing Company, and/or Accounts Receivable Factoring Company."

Mr. James further objects to this Request on the grounds of relevance because there are no substantive allegations in the Complaint concerning assets received from or paid to any Supply Chain Financing Party or Accounts Receivable Factoring Company. Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 45**: All Documents and Communications Concerning any and all agreements, financing structures, and/or other financial arrangements between and/or among any Defendant and any SPV Financing Counterparty, Supply Chain Financing Company, and/or Accounts Receivable Factoring Company, Including but not limited to any and all lease, inventory, saleleaseback, receivables, payables, and/or equipment financing arrangements.

**RESPONSE TO REQUEST NO. 45**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any and all* agreements, financing structures, and/or other financial arrangements" "Including but not limited to *any and all* lease, inventory, saleleaseback, receivables, payables, and/or equipment financing arrangements."

Mr. James further objects to this Request on the grounds of relevance because there are no substantive allegations in the Complaint concerning agreements, financing structures, and/or other financial arrangements between and/or among any Supply Chain Financing Party or Accounts Receivable Factoring Company.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation,

57

the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 46**: All Documents and Communications Concerning any relationships, Transfers, and/or transactions between and/or among any Related Party (Including but not limited to Michael Baker, Edward James, Stephen Graham, and/or Peter Andrew Brumbergs) and any SPV Financing Counterparty, Supply Chain Financing Company, and/or Accounts Receivable Factoring Company.

**RESPONSE TO REQUEST NO. 46**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any* relationships, Transfers, and/or transactions." Mr. James further objects to this Request to the extent it seeks Documents and Communications "Concerning any *relationships*" on the grounds that the term "relationships" is undefined and vague.

Mr. James further objects to this Request on the grounds of relevance because there are no substantive allegations in the Complaint concerning relationships, Transfers, and/or transactions

58

between and/or among any Related Party and any Supply Chain Financing Party or Accounts Receivable Factoring Company.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 47**: All Documents and Communications Concerning any SPV Financing Arrangements, Including but not limited to Documents and Communications Concerning each and every Transfer from any SPV and/or any SPV Financing Counterparty to any Defendant.

**RESPONSE TO REQUEST NO. 47**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any* SPV Financing Arrangements, Including but not limited to Documents and Communications Concerning *each and every* Transfer from any SPV and/or any SPV Financing Counterparty to any Defendant." Mr. James further

59

objects to this Request to the extent that it seeks documents and communications that are already in the Debtors' possession, custody, and control.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 48**: All Documents and Communications Concerning any SPV Financing Arrangement.

**RESPONSE TO REQUEST NO. 48**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad, unduly burdensome, and vague because it seeks "All" Documents and Communications "Concerning *any* SPV Financing Arrangement." Mr. James further objects to this Request as duplicative of Request No. 47. Mr. James further objects to this Request to the extent that it seeks documents and communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

60

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 49**: All Documents and Communications Concerning any Supply Chain Financing.

**RESPONSE TO REQUEST NO. 49**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad, unduly burdensome, and vague because it seeks "All" Documents and Communications "Concerning *any* Supply Chain Financing." Mr. James further objects to this Request on the grounds of relevance because there are no substantive allegations in the Complaint concerning any Supply Chain Financing.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 50**: All Documents and Communications Concerning SPV Financing Counterparties, Supply Chain Financing Companies, and/or Accounts Receivable Factoring

61

Companies, Including but not limited to all agreements between any Defendant and any SPV Financing Counterparty, Supply Chain Financing Company, and/or Accounts Receivable Factoring Company.

**RESPONSE TO REQUEST NO. 50**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning SPV Financing Counterparties, Supply Chain Financing Companies, and/or Accounts Receivable Factoring Companies, Including but not limited to *all* agreements between any Defendant and any SPV Financing Counterparty, Supply Chain Financing Company, and/or Accounts Receivable Factoring Company."

Mr. James further objects to this Request on the grounds of relevance because there are no substantive allegations in the Complaint concerning any Supply Chain Financing Company or Accounts Receivable Factoring Company.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States

62

Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 51**: All Documents and Communications Concerning the pledging of the Company's Assets as security for any loan or debt financing arrangement of any kind.

**RESPONSE TO REQUEST NO. 51**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning the pledging of the Company's Assets as security for *any* loan or debt financing arrangement *of any kind*."

Mr. James further objects to this Request on the grounds of relevance because there are no substantive allegations in the Complaint concerning this Request.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

63

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 52**: All Documents and Communications Concerning Michael Baker, Vlad Botescu, Peter Andrew Brumbergs, Maks Chernyavskiy, Nicolas Cortes, Nigel Crighton, Joe DiFranco, Eric French, Zach Gold, Stephen Graham, Edward James, Shekhar Kumar, Kevin Ruminski, Joe Salvia, Nelly Luna, Victor Esquivel, Jessica Yaz, Luis Blanco, Jay Machado, and/or Scott Wallace.

**RESPONSE TO REQUEST NO. 52**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* Michael Baker, Vlad Botescu, Peter Andrew Brumbergs, Maks Chernyavskiy, Nicolas Cortes, Nigel Crighton, Joe DiFranco, Eric French, Zach Gold, Stephen Graham, Edward James, Shekhar Kumar, Kevin Ruminski, Joe Salvia, Nelly Luna, Victor Esquivel, Jessica Yaz, Luis Blanco, Jay Machado, and/or Scott Wallace." Mr. James further objects to this Request to the extent that it seeks documents and communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request on the grounds of relevance because there are no substantive allegations in the Complaint concerning Michael Baker, Vlad Botescu, Peter Andrew Brumbergs, Maks Chernyavskiy, Nicolas Cortes, Nigel Crighton, Joe DiFranco, Eric French, Zach

Gold, Stephen Graham, Edward James, Shekhar Kumar, Kevin Ruminski, Joe Salvia, Nelly Luna, Victor Esquivel, Jessica Yaz, Luis Blanco, Jay Machado, or Scott Wallace.

Mr. James will not produce any documents in response to this Request.

**REQUEST NO. 53**: All Documents and Communications Concerning any Receivables Facility, Including but not limited to any contracts, agreements, financial statements, audits, reconciliations, valuations, property appraisals, fairness opinions, solvency analyses, going concern analyses, credit analyses, tax analyses, impairment analyses, cash flow analyses, business segment reporting analyses, quarterly or annual reports, risk assessments, and/or other analyses.

**RESPONSE TO REQUEST NO. 53**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any* Receivables Facility, Including but not limited to *any* contracts, agreements, financial statements, audits, reconciliations, valuations, property appraisals, fairness opinions, solvency analyses, going concern analyses, credit analyses, tax analyses, impairment analyses, cash flow analyses, business segment reporting analyses, quarterly or annual reports, risk assessments, and/or other analyses." Mr. James further objects to this Request to the extent it seeks "contracts, agreements, financial statements, audits, reconciliations, valuations, property appraisals, fairness opinions, solvency analyses, going

65

concern analyses, credit analyses, tax analyses, impairment analyses, cash flow analyses, business segment reporting analyses, quarterly or annual reports, risk assessments, and/or other analyses," which terms are undefined, vague, and ambiguous.

Mr. James further objects to this Request to the extent that it seeks documents and communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce any documents in response to this Request.

**REQUEST NO. 54**: All Documents and Communications reflecting any assignment, sale, and/or transfer of rights, title, and/or obligations under any Receivables Facility to any third party, Including but not limited to ABC, ING Belgium, KARS, and/or SGSF.

**RESPONSE TO REQUEST NO. 54**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

66

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "reflecting *any* assignment, sale, and/or transfer of rights, title, and/or obligations under *any* Receivables Facility to any third party, Including but not limited to ABC, ING Belgium, KARS, and/or SGSF." Mr. James further objects to this Request to the extent that it seeks documents and communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request on the grounds of relevance because there are no substantive allegations in the Complaint concerning any Receivables Facility.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce any documents in response to this Request.

**REQUEST NO. 55**: All Documents and Communications Concerning any enforcement, collection efforts, disputes, and/or settlements Concerning any Receivables Facility, any Supply Chain Financing, and/or any SPV Financing Arrangement.

**RESPONSE TO REQUEST NO. 55**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth

67

Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any* enforcement, collection efforts, disputes, and/or settlements Concerning *any* Receivables Facility, any Supply Chain Financing, and/or any SPV Financing Arrangement."  Mr. James further objects to this Request to the extent that it seeks documents and communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James further objects to this Request on the grounds of relevance because there are no substantive allegations in the Complaint concerning any Receivables Facility or Supply Chain Financing.

Mr. James will not produce any documents in response to this Request.

**REQUEST NO. 56**: All Documents and Communications Concerning the Company's records and practices Concerning Receivables Facilities, Including but not limited to receivables not reflected in the Company's books and records, receivables for which documentation was altered, and/or receivables that had already been factored with the Company's customers or other parties.

**RESPONSE TO REQUEST NO. 56**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* the Company's records and practices *Concerning* Receivables Facilities, Including but not limited to receivables not reflected in the Company's books and records, receivables for which documentation was altered, and/or receivables that had already been factored with the Company's customers or other parties."

Mr. James further objects to this Request to the extent that it seeks documents and communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce any documents in response to this Request.

69

**REQUEST NO. 57**: All Documents and Communications Concerning Transfers between and/or among any Defendant and any SPV Financing Counterparty, Supply Chain Financing Company, and/or Accounts Receivable Factoring Company.

**RESPONSE TO REQUEST NO. 57**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* Transfers between and/or among any Defendant and any SPV Financing Counterparty, Supply Chain Financing Company, and/or Accounts Receivable Factoring Company." Mr. James further objects to this Request to the extent that it seeks documents and communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request on the grounds of relevance because there are no substantive allegations in the Complaint concerning any Supply Chain Financing Company.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States

70

Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 58**: All Documents and Communications Concerning the operations of any Persons associated with the domain name virabus.com, any services provided to the Company by any Persons associated with the domain name virabus.com, and/or any agreements between any Persons associated with the domain name virabus.com and the Company.

**RESPONSE TO REQUEST NO. 58**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding, and not proportional to the needs of this Adversary Proceeding. Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning the operations of *any* Persons associated with the domain name virabus.com, *any* services provided to the Company by *any* Persons associated with the domain name virabus.com, and/or *any* agreements between *any* Persons associated with the domain name virabus.com and the Company."

71

Mr. James further objects to this Request as overly broad and unduly burdensome to the extent it seeks communications "Concerning the operations of any Persons *associated with* the domain name virabus.com, any services provided to the Company by any Persons *associated with* the domain name virabus.com, and/or any agreements between any Persons *associated with* the domain name virabus.com and the Company" on the grounds that the phrase "associated with" is undefined, vague, and ambiguous.

Mr. James will not produce any documents in response to this Request.

**REQUEST NO. 59**: All Documents and Communications showing Transfers between and/or among any Persons associated with the domain name virabus.com, any Defendant, and/or the Company.

**RESPONSE TO REQUEST NO. 59**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding, and not proportional to the needs of this Adversary Proceeding. Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "showing Transfers between and/or among *any* Persons associated with the domain name virabus.com, any Defendant, and/or the Company."

72

Mr. James further objects to this Request as overly broad and unduly burdensome to the extent it seeks communications "showing Transfers between and/or among any Persons *associated with* the domain name virabus.com, any Defendant, and/or the Company" on the grounds that the phrase "associated with" is undefined, vague, and ambiguous.

Mr. James will not produce any documents in response to this Request.

**REQUEST NO. 60**: All Documents and Communications Concerning Archive Health, Including but not limited to the Company's use of Archive Health; any goods and/or services that Archive Health provided to the Company; the process by which Archive Health was selected as a vendor or service provider of the Company; and any and all Transfers to or from Archive Health.

**RESPONSE TO REQUEST NO. 60**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning Archive Health, Including but not limited to the Company's use of Archive Health; *any* goods and/or services that Archive Health provided to the Company; the process by which Archive Health was selected as a vendor or service provider of the Company; and *any and all* Transfers to or from Archive Health."

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work

73

product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 61**: All Documents and Communications Concerning Eagle Machining, Eagle Casting, and/or Dalton Corporation, Including but not limited to the value of Eagle Machining, Eagle Casting, and/or Dalton Corporation and/or their Assets; the purchase and/or sale of Eagle Machining, Eagle Casting, and/or Dalton Corporation by the Company, any Defendant, and/or any Person under any Defendant's control; and/or any Transfer of any proceeds from the purchase or sale of Eagle Machining, Eagle Casting, and/or Dalton Corporation, Including but not limited to Transfers to the Bowery Entities.

**RESPONSE TO REQUEST NO. 61**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Including but not limited to the value of Eagle Machining, Eagle Casting, and/or Dalton Corporation and/or their Assets; the purchase and/or sale of Eagle Machining, Eagle Casting, and/or Dalton Corporation by the Company, any Defendant,

74

and/or any Person under any Defendant's control; and/or *any* Transfer of *any* proceeds from the purchase or sale of Eagle Machining, Eagle Casting, and/or Dalton Corporation, Including but not limited to Transfers to the Bowery Entities." Mr. James further objects to this Request on the grounds of relevance because there are no allegations in the Complaint concerning Eagle Machining, Eagle Casting, or Dalton Corporation.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce any documents in response to this Request.

**REQUEST NO. 62**: All Documents and Communications Concerning the creation, purpose, and/or use of CI Supply LLC.

**RESPONSE TO REQUEST NO. 62**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* the creation, purpose, and/or use of

75

CI Supply LLC." Mr. James further objects to this Request on the grounds of relevance because there are no allegations in the Complaint concerning CI Supply LLC.

Mr. James will not produce any documents in response to this Request.

**REQUEST NO. 63**: All Documents and Communications Concerning any Transfers between and/or among CI Supply LLC, any SPV, and/or any SPV Financing Counterparty.

**RESPONSE TO REQUEST NO. 63**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any* Transfers between and/or among CI Supply LLC, any SPV, and/or any SPV Financing Counterparty." Mr. James further objects to this Request on the grounds of relevance because there are no allegations in the Complaint concerning CI Supply LLC.

Mr. James will not produce any documents in response to this Request.

**REQUEST NO. 64**: All Documents and Communications Concerning additions, changes, and/or adjustments to journal entries on the Company's general ledgers on or about the end of each quarter, Including but not limited to quarter end adjusting journal entries, and/or on or about September 23, 2025, Including but not limited to the recording of Supply Chain Financing.

76

**RESPONSE TO REQUEST NO. 64**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* additions, changes, and/or adjustments to journal entries on the Company's general ledgers on or about the end of each quarter."

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 65**: All Documents and Communications Concerning Liabilities that were kept off of the books and/or records of the Company.

**RESPONSE TO REQUEST NO. 65**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against

77

self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding, and not proportional to the needs of this Adversary Proceeding. Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* Liabilities that were kept off of the books and/or records of the Company." Mr. James further objects to this Request as overly broad and unduly burdensome to the extent it seeks communications "Liabilities that were *kept off of the books*" on the grounds that the phrase "kept off of the books" is undefined, vague, and ambiguous. Mr. James further objects to this Request to the extent that it seeks documents and communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 66**: All Documents and Communications Concerning decisions not to consolidate SPVs.

78

**RESPONSE TO REQUEST NO. 66**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, ambiguous, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding, and not proportional to the needs of this Adversary Proceeding. Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* decisions not to consolidate SPVs."

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 67**: All Documents and Communications Concerning financial statements provided to lenders and/or other creditors of the Company and/or SPVs.

79

**RESPONSE TO REQUEST NO. 67**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* financial statements provided to lenders and/or other creditors of the Company and/or SPVs."

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 68**: All Documents and Communications Concerning policies, procedures, internal controls, board approvals, and/or corporate governance measures in effect during the Relevant Period Concerning payments, loans or other debt arrangements, dividends, distributions, disbursements, remunerations, Related Party transactions, reimbursements, SPVs, Receivables Facilities, Factoring, and/or Transfers to or from any Defendant, any Person under Defendant James' control, and/or any Family Member of Defendant James.

**RESPONSE TO REQUEST NO. 68**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth

80

Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* policies, procedures, internal controls, board approvals, and/or corporate governance measures in effect during the Relevant Period *Concerning* payments, loans or other debt arrangements, dividends, distributions, disbursements, remunerations, Related Party transactions, reimbursements, SPVs, Receivables Facilities, Factoring, and/or Transfers to or from any Defendant, any Person under Defendant James' control, and/or any Family Member of Defendant James."

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding to the extent it seeks documents and communications concerning "any Family Member of Defendant James" because Mr. James's Family Members are not put at issue in the Complaint. Mr. James further objects to this Request as overly broad and unduly burdensome to the extent it seeks documents and communications from "any Person under Defendant James' control."

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

81

**REQUEST NO. 69**: All Documents and Communications Concerning adherence to corporate formalities within the Company, any SPV, and/or any Bowery Entity.

**RESPONSE TO REQUEST NO. 69**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* adherence to corporate formalities." Mr. James further objects to this Request on the grounds of relevance because there are no substantive allegations in the Complaint concerning the subject of this Request. Mr. James further objects to this Request as overly broad and unduly burdensome to the extent it seeks documents and communications "Concerning adherence to *corporate formalities*" on the grounds that the phrase "corporate formalities" is undefined, vague, and ambiguous.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

82

**REQUEST NO. 70**: All Documents and Communications Concerning any and all audits of the Company and/or any Entity Defendant, Including but not limited to all Communications with auditors.

**RESPONSE TO REQUEST NO. 70**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any and all* audits of the Company and/or any Entity Defendant, Including but not limited to *all* Communications with auditors."

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 71**: Without regard to the Relevant Period, all demand letters, complaints, and settlement agreements Concerning claims that Defendant James, any Defendant, and/or any Person

under Defendant James' control fraudulently obtained funds, Including but not limited to through loans or other debt financing, and/or misappropriated funds.

**RESPONSE TO REQUEST NO. 71**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request on the grounds that it is overly broad, unduly burdensome, and calls for information that is not relevant to any claim or defense in this Adversary Proceeding, and not proportional to the needs of this Adversary Proceeding. Mr. James further objects to this Request as overly broad and unduly burdensome to the extent it seeks documents from "any Person under Defendant James' control."

Mr. James further objects to this Request and its use of the phrase "fraudulently obtained" as this is a legal conclusion.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

84

**REQUEST NO. 72**: All Documents and Communications Concerning legal actions, regulatory inquiries or investigations, and/or criminal investigations or actions threatened and/or pending against any Defendant.

**RESPONSE TO REQUEST NO. 72**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "*Concerning* legal actions, regulatory inquiries or investigations, and/or criminal investigations or actions threatened and/or pending against any Defendant."

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 73**: All Documents and Communications produced in response to any inquiry, notice, audit, and/or investigation by the United States Department of Justice, any United States

Attorney's Office, the United States Securities and Exchange Commission, the Internal Revenue Service, and/or any other regulatory and/or law enforcement agency Concerning the Company, any Defendant, and/or any of their Affiliates.

**RESPONSE TO REQUEST NO. 73**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "produced in response to *any* inquiry, notice, audit, and/or investigation by the United States Department of Justice, *any* United States Attorney's Office, the United States Securities and Exchange Commission, the Internal Revenue Service, and/or *any* other regulatory and/or law enforcement agency Concerning the Company, any Defendant, and/or any of their Affiliates."

Mr. James further objects to this Request to the extent that it seeks documents and communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States

86

Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 74**: All Documents and Communications Concerning any and all white papers, position papers, advocacy submissions, presentations, slide decks, talking points, briefing books, and/or data analyses submitted or presented to the United States Department of Justice and/or any United States Attorney's Office, the United States Securities and Exchange Commission, and/or any other regulatory and/or law enforcement agency Concerning the Company, any Defendant, and/or any of their Affiliates.

**RESPONSE TO REQUEST NO. 74**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Concerning *any and all* white papers, position papers, advocacy submissions, presentations, slide decks, talking points, briefing books, and/or data analyses submitted or presented to the United States Department of Justice and/or any United States Attorney's Office, the United States Securities and Exchange Commission, and/or any other regulatory and/or law enforcement agency Concerning the Company, any Defendant, and/or any of their Affiliates."

87

Mr. James further objects to this Request to the extent that it seeks documents and communications that are already in the Debtors' possession, custody, and control.

Mr. James further objects to this Request to the extent it seeks Privileged Information, including documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege or protection, including without limitation, the common interest doctrine, joint defense doctrine, and immunities under the United States Constitution, and to the extent it seeks information that is proprietary, confidential, and/or subject to confidentiality agreements.

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 75**: Without regard to the Relevant Period, all Documents and Communications that support or are inconsistent with Your defense of the allegations, claims, and/or causes of action set forth in the Complaint.

**RESPONSE TO REQUEST NO. 75**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Without regard to the Relevant Period."

Mr. James will not produce documents in response to this Request.

88

**REQUEST NO. 76**: Without regard to the Relevant Period, all Documents and Communications that support or are inconsistent with the allegations, claims, and/or causes of action set forth in the Complaint.

**RESPONSE TO REQUEST NO. 76**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request as overly broad and unduly burdensome because it seeks "All" Documents and Communications "Without regard to the Relevant Period."

Mr. James will not produce documents in response to this Request.

**REQUEST NO. 77**: Without regard to the Relevant Period, all Documents and Communications You intend to use or rely on at any deposition, hearing, and/or trial in connection with this Action.

**RESPONSE TO REQUEST NO. 77**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James will not produce documents in response to this Request.

89

**REQUEST NO. 78**: Without regard to the Relevant Period, all Documents and Communications Concerning the deletion and/or concealment of Documents or Communications by any Defendant and/or the Company.

**RESPONSE TO REQUEST NO. 78**

Mr. James objects to this Request to the extent that it seeks information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.").

Mr. James further objects to this Request because the Debtors have no basis at this point to conduct discovery on discovery.

Mr. James will not produce documents in response to this Request.

Dated: January 9, 2026

**DEBEVOISE & PLIMPTON LLP**


*/s/ Erica Weisgerber*
Erica S. Weisgerber (admitted *pro hac vice*)
Matthew J. Sorensen (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY  10001
Telephone: (212) 909-6000
eweisgerber@debevoise.com
mjsorensen@debevoise.com


-and-

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Cameron Kelley (TX SBN: 24120936)
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: (713) 221-7000
Email: cameronkelly@quinnemanuel.com


Michael B. Carlinsky (admitted *pro hac vice*)
James C. Tecce (admitted *pro hac vice*)
Scott Hartman (admitted *pro hac vice*)
Eric S. Kay (admitted *pro hac vice*)
Anil Makhijani (admitted *pro hac vice*)
Reece Pelley (admitted *pro hac vice*)
Grace Sullivan (admitted *pro hac vice*)
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000

*Attorneys for Defendant Patrick James*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been duly served electronically to all counsel of record.

Dated:  January 9, 2026

/s/ Erica Weisgerber

Erica S. Weisgerber (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NJ 10001
Telephone: (212) 909-6000
Email: eweisgerber@debevoise.com


*Attorney for Defendant Patrick James*

# EXHIBIT E

Case 25-90930 Document 386-5 Filed in TXSB on 03/24/26 Page 150 of 256

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| FIRST BRANDS GROUP, *et al.*, | : | Case No. 25-90399 (CML) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |
| | : | |
| | : | |
| FIRST BRANDS GROUP, *et al.*, | : | |
| Plaintiffs | : | Adv. Pro. No. 25-3803 (CML) |
| | : | |
| v. | : | |
| | : | |
| PATRICK JAMES, THE PATRICK JAMES | : | |
| TRUST, ALBION REALTY, LLC, ALESTER | : | |
| TECHNOLOGIES LLC, BATTERY PARK | : | |
| HOLDINGS LLC, BOND STREET ASSET | : | |
| MANAGEMENT LLC, IGNITE ACQUISITION | : | |
| HOLDINGS LLC, LARCHMONT LLC, PEGASUS | : | |
| AVIATION, LLC, JOHN DOE(S) 1-100, AND | : | |
| ABC CORPORATION(S) 1-100, | : | |
| Defendants | : | |
| | ; | |

**DEFENDANTS' CONSOLIDATED OBJECTIONS TO DEBTORS' FIRST SET OF
INTERROGATORIES TO DEFENDANTS**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, made applicable by

Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, and any other applicable law,

rules, or orders of the Court, Defendants Patrick James ("**Mr. James**"), The Patrick James Trust,

Albion Realty, LLC, Alester Technologies, LLC, Battery Park Holdings LLC, Bond Street Asset

Management LLC, Ignite Acquisition Holdings LLC, Larchmont LLC, and Pegasus Aviation LLC

---

[1] A complete list of the Debtors ("**Plaintiff**" or "**Debtors**") in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

1

("**Entity Defendants**") (together, with Mr. James, "**Defendants**"), by and through their undersigned counsel and pursuant to Federal Rules of Civil Procedure 26 and 33, object to Debtors' First Set of Interrogatories to Defendants, dated December 10, 2025 ("**Interrogatories**"), as follows ("**Objections**").

Defendants are willing to meet and confer with Debtors concerning these Objections at a time mutually agreeable for the parties.

### INTRODUCTORY STATEMENT

All of the General Objections set forth herein are incorporated into each of the specific Objections to the Interrogatories set forth herein and have the same force and effect as if fully set forth therein. Without waiving any of the General Objections to the extent they apply to each of the Interrogatories, Defendants may specifically refer to certain General Objections in objecting to particular Interrogatories. Defendants' failure to object to any specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of the right to object on any additional ground(s). Defendants reserve the right to supplement, revise, amend, or modify these Objections.

As explained *infra*, there are numerous valid objections that prevent Defendants from responding. Both parties' investigations are vast and ongoing, complicated by the sheer volume of entities, transactions, and time periods at issue, requiring coordination across multiple counsel, forensic accountants, and other experts to piece together a preliminary factual record. As the Debtors have admitted themselves, their records are rife with disorganization and systematic data integration issues. Moreover, most of the records at issue are in the Debtors' possession, not Defendants'. Debtors' premature rush to propound over, when properly counted, 100 interrogatories at this early stage of discovery, before an investigation can be completed or even

properly established, is improper and prejudicial.  Most acutely, Defendants object to Debtors'

violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1) ("**Rule**

**33(a)(1)**"), which states that "[u]nless otherwise stipulated or ordered by the court, a party may

serve on any other party no more than 25 written interrogatories, including all discrete subparts."

Fed. R. Civ. P. 33(a)(1); see also Local Rule 33.1 ("No more than twenty-five interrogatories

(counting sub-parts) may be served without leave of Court.").  Defendants cannot discern which

25 interrogatories, from among the more than 100 discrete requests propounded, Debtors actually

want Defendants to answer, nor could Defendants respond piecemeal without risking waiver.

Accordingly, we object.

## GENERAL OBJECTIONS

The following General Objections apply to each and every one of the Interrogatories for

all Defendants:

1. Defendants object to the Interrogatories because the number of Interrogatories, including

   all discrete subparts, exceeds 25, in violation of Rule 33(a)(1).  For example, Interrogatory

   No. 1 contains 18 lettered subparts (a) through (r), each of which is "separate and distinct,"

   rather than "logically or factually subsumed within and necessarily related to the primary

   question."[2]  And each of these 18 subparts demands separate responses for "***each and every***

   Transfer."[3]  Because "each subpart can be answered independent of one another,"[4] and

   indeed all 18 subparts can be answered independently as to each transfer, Interrogatory No.

   1 alone contains a minimum of 18 subparts multiplied by the number of transfers for which

---

[2]    Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co., 315 F.R.D. 191, 196-97 (E.D. Tex. 2016).

[3]    United Life Ins. Co. of New York v. Trustmark Ins. Co., 2005 WL 8168057, at *4 (D. Conn. Dec. 1, 2005) (holding that an interrogatory that "requested information on eighteen distinct contracts" contained eighteen discrete subparts).

[4]    Moser v. Navistar Int'l Corp., 2018 WL 3614012, at *8 (E.D. Tex. July 27, 2018).

3

Interrogatory No. 1 must be answered. And the topics covered are far-ranging; they include the "date," the "amount," the "accounts" involved, and the "collateral" relied upon for each transfer,[5] as well as inquiries totally untethered to the transfers themselves into "whether the Company and/or Affiliate(s) from which and/or to which the Transfer was made each had surplus or net profits at the time of the Transfer." Indeed, some of the individually lettered subparts break down even further. By way of example only, Interrogatory No. 1(r) asks "if Defendants contend that the Transfer was made in accordance with the Company's policies, Identify the particular policies, any Documents showing that the Transfer was made in accordance with the policies, and all facts supporting Defendants' contention." Because "[a]n interrogatory asking about a general practice and then the application of that practice to particular facts contains two subparts," Interrogatory No. 1(r)'s inquiry into company policies is clearly a separate and distinct subpart from Interrogatory No. 1(r)'s inquiry into the application of such policies to particular transfers.[6] Because Interrogatory No. 1 (of 18 total interrogatories) alone contains a minimum of nineteen interrogatories, then Debtors have plainly exceeded the 25-interrogatory minimum.[7] Because each discrete

---

[5] Although these facts about transfers might be "related," "each is independent of the other." <u>Duron v. Costco Wholesale Corp.</u>, 2024 WL 2243305, at *3 (W.D. Tex. Feb. 2, 2024).

[6] <u>Johnson v. MidFirst Bank</u>, 2025 WL 3175281, at *3 (E.D. Tex. Nov. 13, 2025).

[7] Additionally, Interrogatory No. 2 appears to contain at least three subparts calling for a distinct response as to "*each* Reinvestment made by Defendants;" Interrogatory No. 3 appears to contain at least 17 subparts calling for a distinct response as to "*each and every* transaction between and/or among the Company, Defendants, any Family Member of Defendant James, any Person under Defendant James' control, any Bowery Entity, any SPV, any SPV Financing Counterparty, any Supply Chain Financing Company, and/or any Accounts Receivable Factoring Company;" Interrogatory No. 4 appears to contain at least nine subparts calling for a distinct response as to "*each and every* Asset owned by and/or otherwise in the possession, custody, and/or control of any Defendant;" Interrogatory No. 5 appears to contain at least nine subparts calling for a distinct response as to "*each and every* Asset traceable to any Transfer to any Defendant from the Company, any Bowery Entity, any SPV, any SPV Financing Counterparty, any Supply Chain Financing Company, and/or any Accounts Receivable Factoring Company;" Interrogatory No. 8 appears to contain at least six subparts; Interrogatory No. 9 appears to contain at least two subparts; Interrogatory No. 10 appears to contain at least five subparts; Interrogatory No. 11 appears to contain at least five subparts calling for a distinct response as to "the relationship between Defendant

4

subpart of Debtors' Interrogatories counts against Debtors' limit of 25 interrogatories, see Fed. R. Civ. P. 33(a)(1), Debtors have far exceeded the permissible number of interrogatories in this litigation. Debtors' violation of Rule 33(a)(1) precludes Defendants from answering any of Debtors' interrogatories because, if Defendants were to attempt to respond to a selection of 25 of Debtors' excessive interrogatories, Defendants would risk waiving their objection.[8]

2. Defendants object to the Interrogatories to the extent they are vague, ambiguous, overbroad, oppressive, or unduly burdensome; or impose burdens, conditions, obligations, or requirements inconsistent with, or in addition to, or beyond those set forth in the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States District Court for the Southern District of Texas, the Local Rules of the United States Bankruptcy Court for the Southern District of Texas and any prior order of this Court in this action (the "**Applicable Rule's**").

3. Defendants object to the Interrogatories to the extent they exceed the Applicable Rule's limitations as to timing and/or subject matter, are premature, and are not a more practical method of obtaining the information sought than a request for production or a deposition.

---

James and *each* Entity Defendant;" Interrogatory No. 12 appears to contain at least twelve subparts calling for a distinct response as to "*each and every* trust in which Defendant James and/or any Family Member of Defendant James has held or currently holds any legal and/or beneficial interest, control, affiliation, and/or role;" and Interrogatory No. 14 appears to contains at least five subparts.

[8] Johnson, 2025 WL 3175281, at *5 (E.D. Tex. Nov. 13, 2025) (finding a party was not obliged to respond at all to sets of interrogatories exceeding the 25 maximum); 8B Wright & Miller, Federal Practice & Procedure § 2168.1 (3d ed.) ("[I]f a party believes that the numerical limitation has been exceeded, it waives the objection if it selectively answers some of the interrogatories and objects on this ground to the rest."); Mondragon v. Scott Farms, Inc., 329 F.R.D. 533, 541 (E.D.N.C. Jan. 5, 2019) ("If a party . . . decides to answer some or all of the allegedly excessive interrogatories, it waives its objection that the requesting party has violated Rule 33's limit on the number of interrogatories a party may serve."); Knit With v. Knitting Fever, Inc., 2010 WL 11474937, at *1 n.2 (E.D. Pa. Jan. 22, 2010) ("Notwithstanding Defendant's non-waiver statement, it remains established that if a party selectively answers interrogatories, it has waived its objections [under Rule 33(a)] as to the remaining interrogatories." (alteration in original)).

5

4. Defendants object to the Interrogatories to the extent they are overbroad, not proportional to the needs of the case, and seek information that is not relevant to any claim or defense in this action.

5. Defendants object to the Interrogatories, and to each Definition and Instruction contained therein, to the extent they purport to require Defendants to draw legal or factual conclusions, or are predicated on legal or factual conclusions or arguments. No response to any specific Interrogatories is, or shall be construed as, a legal or factual conclusion concerning any of the terms used in the Request. Further, no response to any specific Interrogatory is, or shall be construed as, agreement with any legal or factual conclusion concerning any of the terms used in the Interrogatory.

6. Defendants objects to the Interrogatories, and to each Definition and Instruction contained therein, to the extent they assume the existence of facts that do not exist or the occurrence of events that did not take place. No response to any specific Interrogatory is, or shall be construed as, an admission that any factual predicate stated in or implied by the Interrogatory is accurate.

7. Defendants object to the Interrogatories to the extent they call for disclosure of information or documents protected by the attorney-client privilege, work-product doctrine, mediation privilege, taxpayer privilege or any other applicable privilege or protection from disclosure. Defendants specifically reserve the right not to disclose such information and/or to redact documents. Defendants further reserve the right, consistent with Federal Rule of Civil Procedure 26, to demand the return of any information or documents that inadvertently may be produced during discovery if any Defendant determines that such information or documents contain privileged information. Consistent with Federal Rule of Evidence

6

502(b) and the Protective Order in the bankruptcy, Dkt. No. 408 ("**Protective Order**"), if any privileged information is inadvertently disclosed by any Defendant, such disclosure shall not constitute a waiver of any Privilege. Defendants also specifically reserve the right to demand the return, destruction, or segregation of any information or documents that may be produced during discovery, if any Defendant determines, in such Defendant's sole discretion, that such information or documents contain privileged information of such Defendant and such Defendant has not consented to their production.

8. Defendants object to the Interrogatories to the extent they are cumulative or duplicative.

9. Defendants object to the Interrogatories to the extent they call for information that is already in the possession, custody, or control of Debtors; readily available to Debtors; and/or obtainable by Debtors from public sources. Defendants also object to the Interrogatories to the extent they call for information in the possession, custody, or control of any other Persons other than Defendants or that is not readily accessible to Defendants.

10. Defendants object to the Interrogatories to the extent they seek discovery of proprietary or confidential information; sensitive business or commercial information; trade secrets; strategic planning information; other private, personal, or confidential information; or information that, if produced or disclosed, would result in the violation of any contractual obligation to third parties.

11. Defendants object to the Interrogatories to the extent they seek information not within Defendants' possession, custody, or control. Unless otherwise expressly stated, these Objections shall not be construed as a representation regarding the existence or nonexistence of specific information or documents in Defendants' possession, custody, or control.

12. Defendants object to the Interrogatories to the extent they are argumentative, call for a legal conclusion, assume facts, imply facts, lack foundation, or incorporate allegations or assertions that are disputed or erroneous. These Objections do not constitute, and shall not be interpreted as, Defendants' agreement with, or admission as to the truth or accuracy of, any legal or factual characterization or allegation stated or implied in any of Debtors' Interrogatories.

13. The failure of Defendants to object to any of the Interrogatories on a particular ground shall not be construed as a waiver of their right to object on any additional ground(s).

14. Defendants object to the use of "all," "any," or "each" where these terms are defined to mean "any and all," to the extent the incorporation of these terms into the Interrogatories renders them overbroad and unduly burdensome, including to the extent the Interrogatories seek identification of individuals with even passing or superficial knowledge or involvement.

15. Defendants object to the Interrogatories to the extent they purport to impose obligations to produce documents. While Defendants reserve the right to employ Federal Rule of Civil Procedure 33(d) in the appropriate circumstance, the appropriate discovery tool for Debtors to request production of documents is a request for production pursuant to Federal Rule of Civil Procedure 34, not an interrogatory pursuant to Federal Rule of Civil Procedure 33.

16. No incidental or implied admissions are intended by the objections herein, nor shall the fact that Defendants have objected to a particular Interrogatory be construed as an admission or indication that Defendants possesses documents or information responsive to such Interrogatory or any other Interrogatory.

8

17. These Objections are based solely on facts reasonably known to Defendants at the time of responding to the Interrogatories. Defendants reserve the right, but does not assume the obligation, to amend, supplement, or otherwise modify the content of these Objections at any time.

The following General Objections apply to each and every one of the Interrogatories with respect to Mr. James:

18. Mr. James objects to the Interrogatories to the extent they seek information not within his possession, custody, or control, or information available to Debtors from other sources, including the Entity Defendants. Unless otherwise expressly stated, these Objections shall not be construed as a representation regarding the existence or nonexistence of specific information or documents in Mr. James' possession, custody, or control.

19. Mr. James objects to the Interrogatories to the extent they seek information that might tend to incriminate him or lead to incriminating information in violation of Mr. James's privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution. See Davis-Lynch v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) ("[A] party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents."); see also Hoffman v. United States, 341 U.S. 479, 486 (1951) ("The privilege afforded [under the Fifth Amendment] extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.").

9

## OBJECTIONS TO DEFINITIONS

1. Defendants object to each of the Definitions, and to any Definition, Instruction, or Interrogatory that incorporates the Definitions, to the extent they purport to impose on Defendants any burden or obligation that is broader than or inconsistent with the Applicable Rules.

2. Defendants object to the Definition of "You" and "Your", to the Definition of "Defendants," and to the Definitions of "Defendant James," "Albion Realty," "Alester Technologies," "Battery Park," "Bond Street," "Ignite," "Larchmont," and "Pegasus," and to any Definition, Instruction, or Request that incorporates these Definitions, to the extent (i) they seek (a) information or documents outside of Defendants' possession, custody, or control or (b) information or documents that are protected from disclosure under any applicable privilege, immunity, or protection, including but not limited to the attorney-client privilege and the work-product doctrine; and (ii) they include entities other than The Patrick James Trust, Albion Realty, LLC, Alester Technologies LLC, Battery Park Holdings LLC, Bond Street Asset Management LLC, Ignite Acquisition Holdings LLC, Larchmont LLC, and Pegasus Aviation, LLC, including "any of their Affiliates, agents, assigns, directors, employees, officers, parents, partners, representatives, subsidiaries, independent contractors, advisors, attorneys, and/or any other Person or entities purporting to act on their behalf and/or under their control." Each Entity Defendant will construe the terms "You" and "Your" to mean The Patrick James Trust, Albion Realty, LLC, Alester Technologies LLC, Battery Park Holdings LLC, Bond Street Asset Management LLC, Ignite Acquisition Holdings LLC, Larchmont LLC, and Pegasus Aviation, LLC, respectively, and each such entity's directors, employees, officers, parents, and subsidiaries.

3. Defendants object to the Definition of "Communication" or "Communications," and to any Definition, Instruction, or Request that incorporates this Definition, on the ground that the language "transmittal of information of any kind in any form" is vague and burdensome, and

10

to the extent (i) it seeks (a) information or documents that are protected from disclosure under any applicable privilege, immunity, or protection, including but not limited to the attorney-client privilege and the work-product doctrine, or (b) information or documents outside of Defendants' possession, custody, or control; (ii) it seeks to impose obligations or requirements in addition to, different from, or beyond the scope of those imposed by the Applicable Rules; and (iii) it seeks discovery that is not proportional to the needs of the case.

4.     Defendants object to the Definition of "Document" or "Documents," and to any Definition, Instruction, or Request that incorporates the Definition, to the extent (i) it seeks (a) information or documents that are protected from disclosure under any applicable privilege, immunity, or protection, including but not limited to the attorney-client privilege and the work-product doctrine, or (b) information or documents outside of Defendants' possession, custody, or control; (ii) it seeks to impose obligations or requirements in addition to, different from, or beyond the scope of those imposed by the Applicable Rules; and (iii) it seeks discovery that is not proportional to the needs of the case.

5.     Defendants object to the Definition of "Person," and to any Definition, Instruction, or Request that incorporates the Definition, to the extent it seeks (a) information or documents that are protected from disclosure under any applicable privilege, immunity, or protection, including but not limited to the attorney-client privilege and the work-product doctrine, or (b) information or documents outside of Defendants' possession, custody, or control.

<u>**OBJECTIONS TO INSTRUCTIONS**</u>

1.     Defendants object to each of the Instructions contained in the Interrogatories, and to any Definition, Instruction, or Request that incorporates the Instructions, to the extent they purport to impose on Defendants any burden or obligation that is broader than, inconsistent with,

or exceeds the requirements of, the Applicable Rules.  Defendants will construe the Instructions in accordance with its understanding of the Applicable Rules.

2.      Defendants object to each of the Instructions contained in the Requests, and to any Definition, Instruction, or Request that incorporates the Instructions, to the extent they seek documents outside of Defendants' possession, custody, or control.

3.      Defendants object to the Instruction that they "furnish ***all information*** . . . including but not limited to information that has been obtained by or is in the possession, custody, or control of Your attorneys (subject to applicable privileges), agents, or other representatives, and not merely the information known by You or Your own knowledge" to the extent it seeks disclosure of information beyond that required by the Applicable Rules, is unduly burdensome and disproportionate to the needs of the case, and seeks the disclosure of information protected from disclosure under any applicable privilege, immunity, or protection, including but not limited to the attorney-client privilege and the work-product doctrine.

## SPECIFIC OBJECTIONS TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each and every Transfer between and/or among the Company, Defendants, any Family Member of Defendant James, any Person under Defendant James' control, any Bowery Entity, any SPV, any SPV Financing Counterparty, any Supply Chain Financing Company, and/or any Accounts Receivable Factoring Company, Including (a) the date of the Transfer; (b) the amount and/or value of the Transfer; (c) any Assets, entities, services, and/or other consideration provided in exchange for the Transfer; (d) the valuation of any Assets, services, entities, and/or other consideration provided in exchange for the Transfer; (e) the Person(s) that requested the Transfer; (f) the Person(s) that sent the Transfer; (g) all Persons who arranged, facilitated, coordinated, and/or participated in the Transfer; (h) any Person(s) that provided any Assets in exchange for the Transfer; (i) the accounts (by institution, account number, account holder, signatories, and opening/closing dates) and Persons from which and to which the Transfer was made; (j) the purpose of the Transfer; (k) any collateral provided in connection with the Transfer; (l) any Individual(s) who approved the Transfer; (m) any receipts, records, documentation, and/or other Documents generated, maintained, and/or received by Defendants reflecting such Transfer, Including invoices, wire confirmations, checks, ledger entries, emails, and/or agreements; (n) the method(s) by which Defendants confirmed and/or verified that any such Transfer was made, Including any accounting entries, notations, and/or internal procedures used to document cash payments; (o) whether the Company and/or Affiliate(s) from which and/or to which the Transfer was made each had surplus or net profits at the time of the Transfer; (p) all facts supporting Defendants' contention that the Transfer complied with applicable corporate law, Including Delaware General Corporation Law §§ 160 and 174; (q) the subsequent disposition of any Assets transferred; and (r) if Defendants contend that the Transfer was made in accordance with the Company's policies, Identify the particular policies, any Documents showing that the Transfer was made in accordance with the policies, and all facts supporting Defendants' contention.

### OBJECTION TO INTERROGATORY NO. 1:

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

13

As stated in the Introductory Statement, both parties' investigations are ongoing and in their preliminary stage. Thus, asking Defendants to identify, for example, "any Individual(s) who approved the Transfer[s]" when the exact Transfers at issue are still being discovered is necessarily premature.

Likewise, Defendants further object to this Interrogatory to the extent subpart (p),which seeks "all facts supporting Defendants' contention that the Transfer complied with applicable corporate law, Including Delaware General Corporation Law §§ 160 and 174," and subpart (r), which seeks "if Defendants contend that the Transfer was made in accordance with the Company's policies, Identify the particular policies, any Documents showing that the Transfer was made in accordance with the policies, and all facts supporting Defendants' contention," are contention interrogatories that improperly seek to require Defendants to articulate theories of their case prior to the substantial completion of discovery. See, e.g., Layne Heavy Civ., Inc. v. Healtheon, Inc., 2018 WL 11457410, at *3 (E.D. La. Sept. 4, 2018) ("Premature contention interrogatories may not be propounded."); Trident Mgmt. Grp., LLC v. GLF Constr. Corp., 2017 WL 3011144, at *3 (E.D. La. July 14, 2017) (precluding contention interrogatories at early stage of discovery and noting "the unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed" (quoting Sigman v. CSX Corp., 2016 WL 7444947, at * 2 (S.D. W. Va. Dec. 27, 2016))); Murphy v. Piper, 2017 WL 11885690, at *2 (D. Minn. Aug. 21, 2017) ("Given the nature of contention interrogatories, district courts have determined that contention interrogatories need not be answered until discovery is complete or nearing completion").

Defendants further object to this Interrogatory to the extent it is ambiguous and vague, including in its use, without definition, of the terms "Person under Defendant James' control,"

14

"arranged, facilitated, coordinated, and/or participated in 'subsequent disposition,'" and "in accordance with the Company's policies."

Defendants further object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it calls for identification of "*each and every* Transfer," "*all* Persons," "*any* Individual(s)," etc. This would require an unduly extensive and unnecessarily expensive investigation across a litany of transactions, including transfers that are undoubtedly not the subject of this litigation, i.e. "each and every Transfer" between Mr. James and his Family Members.

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors' advisors. Defendants also object to this Interrogatory to the extent it calls for information in the possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants, including information regarding Transfers to the Debtors and accounting practices, which is within Debtors' superior possession and control. For example, Debtors, with their team of restructuring experts and possession of all relevant company documents, are in a significantly better position than Defendants to answer "whether *the Company* and/or Affiliates had surplus or net profits at the time of each Transfer."

Defendants further object to this Interrogatory to the extent it purports to impose obligations to produce documents, e.g., by seeking "any Documents showing that the Transfer was made in accordance with [Company] policies." While Defendants reserve the right to employ Federal Rule of Civil Procedure 33(d) in the appropriate circumstance, the appropriate discovery

15

tool for Debtors to request production of documents is a request for production pursuant to Federal Rule of Civil Procedure 34, not an interrogatory pursuant to Federal Rule of Civil Procedure 33.

Defendants further object to this Interrogatory to the extent it calls for legal conclusions, including plainly asking whether Defendants complied with Delaware General Corporation Law §§ 160 and 174.

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson v. MidFirst Bank, 2025 WL 3175281, at *5 (E.D. Tex. Nov. 13, 2025).

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d 1130, 1131 (5th Cir. 1985). Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

**INTERROGATORY NO. 2:**

Identify each Reinvestment made by Defendants, the purpose of each Reinvestment, and all Documents and Communications Concerning each Reinvestment.

**OBJECTION TO INTERROGATORY NO. 2:**

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

16

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Defendants further object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it calls for identification of "*each* Reinvestment" and "*all* Documents and Communications Concerning each Reinvestment."

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors' advisors. Defendants also object to this Interrogatory to the extent it calls for information in the possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants, including information regarding Reinvestments made by Defendants in the Debtors, which is within Debtors' superior possession and control.

Defendants further object to this Interrogatory to the extent it purports to impose obligations to produce documents, e.g., by seeking "all Documents and Communications Concerning each Reinvestment." While Defendants reserve the right to employ Federal Rule of Civil Procedure 33(d) in the appropriate circumstance, the appropriate discovery tool for Debtors to request production of documents is a request for production pursuant to Federal Rule of Civil Procedure 34, not an interrogatory pursuant to Federal Rule of Civil Procedure 33.

17

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d at 1131. Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

## INTERROGATORY NO. 3:

Identify each and every transaction between and/or among the Company, Defendants, any Family Member of Defendant James, any Person under Defendant James' control, any Bowery Entity, any SPV, any SPV Financing Counterparty, any Supply Chain Financing Company, and/or any Accounts Receivable Factoring Company, Including (a) the date of the transaction; (b) the amount and/or value of the transaction; (c) any Assets, entities, services, and/or other consideration exchanged in the transaction; (d) the valuation of any Assets, services, entities, and/or other consideration exchanged in the transaction; (e) the Person(s) that requested the transaction; (f) all Person(s) who arranged, facilitated, coordinated, and/or participated in the transaction; (g) any Person(s) that provided any Assets in the transaction; (h) the accounts (by institution, account number, account holder, signatories, and opening/closing dates) and Person(s) from which and to which any consideration was transferred; (i) the purpose of the transaction; (j) any collateral provided in connection with the transaction; (k) any Individual(s) who approved the transaction; (l) any receipts, records, documentation, and/or other Documents generated, maintained, and/or received by Defendants reflecting such transaction, Including but not limited to invoices, wire confirmations, checks, ledger entries, emails, contracts, and/or agreements; (m) the method(s) by which Defendants confirmed and/or verified that any consideration was exchanged in connection with the transaction, Including any accounting entries, notations, and/or internal procedures used to document cash payments; (n) whether the Company and/or Affiliate(s) from which and/or to which any consideration was transferred each had surplus or net profits at the time of the Transfer; (o) all facts supporting Defendants' contention that the transaction complied with applicable corporate law, Including Delaware General Corporation Law §§ 160 and 174; (p) the subsequent disposition of any Assets transferred; and (q) if Defendants contend that the transaction was carried out in accordance with the Company's policies, Identify the particular policies, any Documents showing that the transaction was made in accordance with the policies, and all facts supporting Defendants' contention.

## OBJECTION TO INTERROGATORY NO. 3:

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition. As stated in the Introductory Statement, both parties' investigations are ongoing and in their

19

preliminary stage. Thus, asking Defendants to identify, for example, "any Individual(s) who approved the transaction[s]" when the exact transactions at issue are still being determined is necessarily premature.

Likewise, Defendants further object to this Interrogatory to the extent subpart (o), which seeks "all facts supporting Defendants' contention that the transaction complied with applicable corporate law, Including Delaware General Corporation Law §§ 160 and 174," and subpart (q), which seeks "if Defendants contend that the transaction was carried out in accordance with the Company's policies, Identify the particular policies, any Documents showing that the transaction was made in accordance with the policies, and all facts supporting Defendants' contention," are contention interrogatories that seek to require Defendants to articulate theories of their case prior to the substantial completion of discovery. See, e.g., Layne Heavy Civ., Inc. v. Healtheon, Inc., 2018 WL 11457410, at *3 (E.D. La. Sept. 4, 2018) ("Premature contention interrogatories may not be propounded."); Trident Mgmt. Grp., LLC v. GLF Constr. Corp., 2017 WL 3011144, at *3 (E.D. La. July 14, 2017) (precluding contention interrogatories at early stage of discovery and noting "the unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed'" (quoting Sigman v. CSX Corp., 2016 WL 7444947, at * 2 (S.D. W. Va. Dec. 27, 2016)); Murphy v. Piper, 2017 WL 11885690, at *2 (D. Minn. Aug. 21, 2017) ("Given the nature of contention interrogatories, district courts have determined that contention interrogatories need not be answered until discovery is complete or nearing completion").

Defendants further object to this Interrogatory to the extent it is ambiguous and vague, including in its use, without definition, of the terms "Person under Defendant James' control," "arranged, facilitated, coordinated, and/or participated in the transaction," and "in accordance with the Company's policies."

20

Defendants further object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it calls for identification of "*each and every* transaction," "*all* Person(s)," "*any* Individual(s)," etc. This would require an unduly extensive and unnecessarily expensive investigation across a litany of transactions, including transfers that are undoubtedly not the subject of this litigation, i.e. "each and every transaction" between Mr. James and his Family Members.

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors' advisors. Defendants also object to this Interrogatory to the extent it calls for information in the possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants. For example, Debtors, with their team of restructuring experts and possession of all relevant company documents, are in a significantly better position than Defendants to answer "whether the Company and/or Affiliate(s) from which and/or to which any consideration was transferred each had surplus or net profits" at any given time.

Defendants further object to this Interrogatory to the extent it purports to impose obligations to produce documents, e.g., by seeking "any receipts, records, documentation, and/or other Documents generated, maintained, and/or received by Defendants reflecting such transaction, Including but not limited to invoices, wire confirmations, checks, ledger entries, emails, contracts, and/or agreements." While Defendants reserve the right to employ Federal Rule of Civil Procedure 33(d) in the appropriate circumstance, the appropriate discovery tool for Debtors to request production of documents is a request for production pursuant to Federal Rule of Civil Procedure 34, not an interrogatory pursuant to Federal Rule of Civil Procedure 33.

21

Defendants further object to this Interrogatory to the extent it calls for legal conclusions, including plainly asking whether Defendants complied with Delaware General Corporation Law §§ 160 and 174.

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d at 1131. Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

## INTERROGATORY NO. 4:

Identify and describe each and every Asset owned by and/or otherwise in the possession, custody, and/or control of any Defendant, Including (a) a description of the Asset (Including but not limited to the address of any real property and the make, model, and VIN of any vehicle); (b) whether the Asset was directly or indirectly received from the Company, any Bowery Entity, any SPV, any SPV Financing Counterparty, any Supply Chain Financing Company, and/or any Accounts Receivable Factoring Company; (c) whether the Asset was acquired using any Asset directly or indirectly received from the Company, any Bowery Entity, any SPV, any SPV Financing Counterparty, any Supply Chain Financing Company, and/or any Accounts Receivable Factoring Company; (d) how the Asset (or any Asset used to acquire the Asset) was directly or indirectly received from the Company, any Bowery Entity, any SPV, any SPV Financing Counterparty, any Supply Chain Financing Company, and/or any Accounts Receivable Factoring Company; (e) the purchase or acquisition date of the Asset; (f) the purchase or acquisition price of the Asset; (g) the valuation of the Asset; (h) the owner(s) of the Asset (Including but not limited to titled and beneficial owner(s)); and (i) the current location or disposition of the Asset.

## OBJECTION TO INTERROGATORY NO. 4:

22

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Defendants further object to this Interrogatory to the extent it is ambiguous and vague, including in its use, without definition, of the term "***directly or indirectly received from*** the Company, any Bowery Entity, any SPV, any SPV Financing Counterparty, any Supply Chain Financing Company, and/or any Accounts Receivable Factoring Company."

Defendants further object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it calls for identification of "***each and every*** Asset." This would require an unduly extensive amount of information concerning mundane assets that are not the subject of this litigation, i.e. Mr. James' homes and vehicles, including vehicles purchased outside of the timeframe at issue.

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors' advisors. Defendants also object to this Interrogatory to the extent it calls for information in the possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants.

23

Defendants further object to this Interrogatory to the extent it purports to impose obligations to produce documents. While Defendants reserve the right to employ Federal Rule of Civil Procedure 33(d) in the appropriate circumstance, the appropriate discovery tool for Debtors to request production of documents is a request for production pursuant to Federal Rule of Civil Procedure 34, not an interrogatory pursuant to Federal Rule of Civil Procedure 33.

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d at 1131. Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

**INTERROGATORY NO. 5:**

Identify and describe each and every Asset traceable to any Transfer to any Defendant from the Company, any Bowery Entity, any SPV, any SPV Financing Counterparty, any Supply Chain Financing Company, and/or any Accounts Receivable Factoring Company, Including (a) a description of the Asset (Including but not limited to the address of any real property and the make, model, and VIN of any vehicle); (b) how the Asset is traceable to a Transfer from the Company, any Bowery Entity, any SPV, any SPV Financing Counterparty, any Supply Chain Financing Company, and/or any Accounts Receivable Factoring Company; (c) the purchase or acquisition date of the Asset; (d) the purchase or acquisition price of the Asset; (e) the valuation of the Asset; (f) the owner(s) of the Asset (Including but not limited to titled and beneficial owner(s)); (g) the current location or disposition of the Asset; (h) any and all Transfers, commingling, conversions, and/or dispositions of the Asset after it was transferred to the Defendant; and (i) the date, price, transferor, transferee, and purpose of each such subsequent downstream Transfer.

**OBJECTION TO INTERROGATORY NO. 5:**

24

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Defendants further object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it calls for identification of "*each and every* Asset" and "*any and all* Transfers."

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors' advisors. Defendants also object to this Interrogatory to the extent it calls for information in the possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants.

Defendants further object to this Interrogatory to the extent it purports to impose obligations to produce documents. While Defendants reserve the right to employ Federal Rule of Civil Procedure 33(d) in the appropriate circumstance, the appropriate discovery tool for Debtors to request production of documents is a request for production pursuant to Federal Rule of Civil Procedure 34, not an interrogatory pursuant to Federal Rule of Civil Procedure 33.

25

Defendants further object to this Interrogatory to the extent it calls for legal conclusions, including regarding "commingling, conversions, and/or dispositions."

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d at 1131. Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

### INTERROGATORY NO. 6:

Identify each and every bank account (by institution, account number, account holder, signatories, and opening and/or closing dates) maintained by Defendants, any Family Member of Defendant James, and/or any Person under Defendant James' control that received Assets originating from the Company, any Bowery Entity, any SPV, any SPV Financing Counterparty, any Supply Chain Financing Company, and/or any Accounts Receivable Factoring Company.

### OBJECTION TO INTERROGATORY NO. 6:

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more

26

practical method of obtaining the information sought than a request for production or a deposition. As stated in the Introductory Statement, both parties' investigations are ongoing and in their preliminary stage. Thus, asking Defendants to identify, for example, bank accounts "that received Assets originating from the Company, any Bowery Entity, any SPV, any SPV Financing Counterparty, any Supply Chain Financing Company, and/or any Accounts Receivable Factoring Company" when the exact Transfers at issue are still being discovered is necessarily premature.

Defendants further object to this Interrogatory to the extent it is ambiguous and vague, including in its use, without definition, of the terms "Person under Defendant James' control" and "originating from" as used in the phrase "received Assets *originating from* the Company, any Bowery Entity, any SPV, any SPV Financing Counterparty, any Supply Chain Financing Company, and/or any Accounts Receivable Factoring Company."

Defendants further object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it calls for identification of "*each and every* bank account." This would require an unduly burdensome investigation, including into bank accounts "maintained by Family Member[s] of Defendant James."

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors' advisors. Defendants also object to this Interrogatory to the extent it calls for information in the possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants.

27

Defendants further object to this Interrogatory to the extent it calls for legal conclusions, including regarding any Person "under Defendant James' control."

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d at 1131. Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

**INTERROGATORY NO. 7:**

Identify each Person, Including but not limited to current and former employees and representatives of Defendants, with knowledge and/or information Concerning any tax distributions and/or dividends from the Company to any Defendant, any amounts received or allocated to any Defendant for taxes, and/or the tax treatment of any Transfer from the Company to any Defendant.

**OBJECTION TO INTERROGATORY NO. 7:**

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the taxpayer privilege, attorney-client privilege, work product doctrine, or other applicable legal privilege.

28

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Defendants further object to this Interrogatory to the extent it seeks discovery of information that is not relevant to any claim or defense in this action and not proportional to the needs of this case.

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors' advisors. Defendants also object to this Interrogatory to the extent it calls for information in the possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants. For example, Debtors, with their team of restructuring experts and possession of all relevant company documents, are in a significantly better position than Defendants to provide information concerning "tax distributions and/or dividends *from the Company* to any Defendant."

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d at 1131. Accordingly, Mr. James invokes his rights

against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

**INTERROGATORY NO. 8:**

Identify and describe all Receivables Facilities in which Defendants participated and/or that Defendants approved and/or directed, Including (a) all invoices submitted (by customer, date, and amount); (b) any modifications to invoice amounts; (c) any instances in which accounts receivable were factored more than once and/or factored to both third-party and customer-affiliated factors; (d) all facts supporting Defendants' contention that factored invoices reflect true receivables; (e) each Person, Including but not limited to current and former employees and representatives of Defendants, with knowledge and/or information Concerning Defendant James' involvement in Receivables Facilities; and (f) and the Company's policies and/or practices Concerning Receivables Facilities.

**OBJECTION TO INTERROGATORY NO. 8:**

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Likewise, Defendants further object to this Interrogatory to the extent subpart (d), which seeks "all facts supporting Defendants' contention that factored invoices reflect true receivables," is a contention interrogatory that improperly seeks to require Defendants to articulate theories of their case prior to the substantial completion of discovery. See, e.g., Layne Heavy Civ., Inc. v. Healtheon, Inc., 2018 WL 11457410, at *3 (E.D. La. Sept. 4, 2018) ("Premature contention interrogatories may not be propounded."); Trident Mgmt. Grp., LLC v. GLF Constr. Corp., 2017 WL 3011144, at *3 (E.D. La. July 14, 2017) (precluding contention interrogatories at early stage

30

of discovery and noting "the unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed'" (quoting Sigman v. CSX Corp., 2016 WL 7444947, at * 2 (S.D. W. Va. Dec. 27, 2016)); Murphy v. Piper, 2017 WL 11885690, at *2 (D. Minn. Aug. 21, 2017) ("Given the nature of contention interrogatories, district courts have determined that contention interrogatories need not be answered until discovery is complete or nearing completion").

Defendants further object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it calls for identification of "*all* Receivables Facilities" and "*all* invoices."

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors' advisors. Defendants also object to this Interrogatory to the extent it calls for information in the possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants.

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d at 1131. Accordingly, Mr. James invokes his rights

31

against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

**INTERROGATORY NO. 9:**

Identify all instances in which inventory and/or PP&E transferred to any SPV remained on the Company's balance sheets, was included in borrowing bases, and/or was otherwise double-pledged, and state all facts supporting Defendants' position regarding the legitimacy of such Transfers and collateralization.

**OBJECTION TO INTERROGATORY NO. 9:**

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Defendants further object to this Interrogatory to the extent it seeks discovery of information that is not relevant to any claim or defense in this action and not proportional to the needs of this case.

Likewise, Defendants further object to this Interrogatory's inquiry into "all facts supporting Defendants' position regarding the legitimacy of such Transfers and collateralization" to the extent it constitutes a contention interrogatory that improperly seeks to require Defendants to articulate theories of their case prior to the substantial completion of discovery. See, e.g., Layne Heavy Civ., Inc. v. Healtheon, Inc., 2018 WL 11457410, at *3 (E.D. La. Sept. 4, 2018) ("Premature contention interrogatories may not be propounded."); Trident Mgmt. Grp., LLC v. GLF Constr. Corp., 2017

32

WL 3011144, at *3 (E.D. La. July 14, 2017) (precluding contention interrogatories at early stage of discovery and noting "the unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed'" (quoting Sigman v. CSX Corp., 2016 WL 7444947, at * 2 (S.D. W. Va. Dec. 27, 2016))); Murphy v. Piper, 2017 WL 11885690, at *2 (D. Minn. Aug. 21, 2017) ("Given the nature of contention interrogatories, district courts have determined that contention interrogatories need not be answered until discovery is complete or nearing completion").

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors' advisors. Defendants also object to this Interrogatory to the extent it calls for information in the possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants.

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d at 1131. Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

33

**INTERROGATORY NO. 10:**

Identify and describe all Sale-Leaseback Arrangements, Including (a) the Assets purportedly sold; (b) the sale price; (c) the cash proceeds received; (d) any subsequent Transfers of proceeds (Including but not limited to Defendants, Carnaby, and/or the Bowery Entities); and (e) the present location of the proceeds or substituted Assets.

**OBJECTION TO INTERROGATORY NO. 10:**

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Defendants further object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it calls for identification of "*all* Sale-Leaseback Arrangements."

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors' advisors. Defendants also object to this Interrogatory to the extent it calls for information in the possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants.

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

34

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d at 1131. Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

## INTERROGATORY NO. 11:

Identify and describe the nature of the relationship between Defendant James and each Entity Defendant, Including (a) the nature of the relationship (Including but not limited to employment, agency, ownership, management, contractual, and/or other relationship); (b) the dates during which the relationship existed; (c) the roles, responsibilities, and authority, if any, that Defendant James exercised with respect to each Entity Defendant; (d) the Identity of all Individuals with knowledge or information Concerning the relationship; and (e) any Documents Concerning the relationship, Including but not limited to organizational charts, operating agreements, bylaws, shareholder ledgers, employment agreements, independent contractor agreements, agency or distribution agreements, other oral and/or written agreements, board minutes or resolutions, delegations of authority, powers of attorney, and/or Communications.

## OBJECTION TO INTERROGATORY NO. 11:

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

35

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Defendants further object to this Interrogatory to the extent it is ambiguous and vague, including in its use, without definition, of the phrase "nature of the relationship".

Defendants further object to this Interrogatory to the extent it seeks discovery of information that is not relevant to any claim or defense in this action and not proportional to the needs of this case.

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors' advisors. Defendants also object to this Interrogatory to the extent it calls for information in the possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants.

Defendants further object to this Interrogatory to the extent it purports to impose obligations to produce documents, e.g., by seeking "any Documents Concerning the relationship, Including but not limited to organizational charts, operating agreements, bylaws, shareholder ledgers, employment agreements, independent contractor agreements, agency or distribution agreements, other oral and/or written agreements, board minutes or resolutions, delegations of authority, powers of attorney, and/or Communications." While Defendants reserve the right to employ Federal Rule of Civil Procedure 33(d) in the appropriate circumstance, the appropriate discovery tool for Debtors to request production of documents is a request for production pursuant

36

to Federal Rule of Civil Procedure 34, not an interrogatory pursuant to Federal Rule of Civil Procedure 33.

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1).  Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory.  Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him."  In re Grand Jury Subpoena, 767 F.2d at 1131 ("If the identification of an entity as one in which [the witness] had control would tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him, that communicative disclosure would be protected by the Fifth Amendment privilege.").  Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

37

**INTERROGATORY NO. 12:**

Identify and describe each and every trust in which Defendant James and/or any Family Member of Defendant James has held or currently holds any legal and/or beneficial interest, control, affiliation, and/or role, Including but not limited to grantor, settlor, trustee, protector, investment advisor, distribution advisor, beneficiary (current, contingent, residual, or discretionary), and/or holder of a power of appointment. For each such trust, state (a) the trust's full name; (b) its jurisdiction of formation; (c) its date of formation (and, if applicable, termination); (d) the Identity and role(s) of all current and former fiduciaries and beneficiaries, and the period(s) they served or held such positions; (e) the nature and extent of any interest, control, and/or role held by Defendant James and/or any Family Member of Defendant James (Including but not limited to grantor, settlor, trustee, protector, investment advisor, distribution advisor, beneficiary (current, contingent, residual, or discretionary), and/or holder of a power of appointment); (f) the dates during which Defendant James and/or any Family Member of Defendant James held such interest, control, and/or role; and (g) whether the trust received, directly or indirectly, any Transfer, contribution, loan, distribution, guarantee, assignment, and/or other conveyance of value in whole or in part from the Company (Including through intermediaries, layered entities, pass-through accounts, Related Parties, and/or other trusts), and, if so, for each such Transfer or other transaction, (i) the date, amount, form, and consideration, if any; (ii) the transferor(s) and transferee(s), Including all intermediate entities and/or accounts; (iii) the stated purpose of the Transfer or other transaction; (iv) any agreements and/or Communications Concerning the Transfer or other transaction; and (v) the Identity of all Person(s) with knowledge or information Concerning the Transfer or other transaction.

**OBJECTION TO INTERROGATORY NO. 12:**

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Defendants further object to this Interrogatory to the extent it is ambiguous and vague, including in its use, without definition, of the phrase "whether the trust *received, directly or indirectly,* any Transfer, contribution, loan, distribution, guarantee, assignment, and/or other

38

conveyance of value *in whole or in part from* the Company (Including through intermediaries, layered entities, pass-through accounts, Related Parties, and/or other trusts)."

Defendants further object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it calls for identification of "*each and every* trust." This would require an unduly burdensome inquiry into trusts connected to "*any* Family Member of Defendant James."

Defendants further object to this Interrogatory to the extent it purports to impose obligations to produce documents, e.g., by seeking "any agreements and/or Communications Concerning the Transfer or other transaction." While Defendants reserve the right to employ Federal Rule of Civil Procedure 33(d) in the appropriate circumstance, the appropriate discovery tool for Debtors to request production of documents is a request for production pursuant to Federal Rule of Civil Procedure 34, not an interrogatory pursuant to Federal Rule of Civil Procedure 33.

Defendants further object to this Interrogatory to the extent it calls for legal conclusions, including the "nature and extent of any interest, control, and/or role held by" specified persons.

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d at 1131. Accordingly, Mr. James invokes his rights

39

against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

**INTERROGATORY NO. 13:**

Describe with specificity the purpose and use, and the time period for each such purpose and use, of each Bowery Entity and each SPV.

**OBJECTION TO INTERROGATORY NO. 13:**

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Defendants further object to this Interrogatory to the extent it is ambiguous and vague, including in its use, without definition, of the terms "purpose and use."

Defendants further object to this Interrogatory to the extent it seeks discovery of information that is not relevant to any claim or defense in this action and not proportional to the needs of this case.

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors' advisors. Defendants also object to this Interrogatory to the extent it calls for information in the

40

possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants.

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1).  Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory.  Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him."  In re Grand Jury Subpoena, 767 F.2d at 1131.  Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

**INTERROGATORY NO. 14:**

Identify each and every Person associated with the domain name virabus.com; the owners, managers, employees, and agents of each Person associated with the domain name virabus.com; the nature of the operations of each Person associated with the domain name virabus.com; any services provided to the Company by each Person associated with the domain name virabus.com; and any agreements between any Person associated with the domain name virabus.com and the Company.

**OBJECTION TO INTERROGATORY NO. 14:**

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

41

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Defendants further object to this Interrogatory to the extent it is ambiguous and vague, including in its use, without definition, of the terms "***associated with*** the domain name virabus.com," "the ***nature of the operations of*** each Person associated with the domain name virabus.com," and "***any services provided to*** the Company."

Defendants further object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it calls for identification of "***each and every*** Person."

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors' advisors. Defendants also object to this Interrogatory to the extent it calls for information in the possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants. For example, Debtors are presumably able to identify "any agreements between any Person associated with the domain name virabus.com ***and the Company***."

Defendants further object to this Interrogatory to the extent it purports to impose obligations to produce documents, e.g., by seeking "any agreements between any Person associated with the domain name virabus.com and the Company." While Defendants reserve the right to employ Federal Rule of Civil Procedure 33(d) in the appropriate circumstance, the appropriate discovery tool for Debtors to request production of documents is a request for

42

production pursuant to Federal Rule of Civil Procedure 34, not an interrogatory pursuant to Federal Rule of Civil Procedure 33.

Defendants further object to this Interrogatory to the extent it calls for legal conclusions, including regarding "agents" of each Person.

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d at 1131. Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

**INTERROGATORY NO. 15:**

Identify all work and/or personal mobile devices, laptops, desktop computers, tablets and/or tablet computers, other computing devices, and/or external media (Including but not limited to CDs, DVDs, thumb drives, memory sticks, and/or external hard drives) and/or any other storage media in Defendant James' possession, custody, and/or control.

**OBJECTION TO INTERROGATORY NO. 15:**

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

43

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Defendants further object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it calls for identification of "*all* work and/or personal mobile devices."

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors' advisors. Defendants also object to this Interrogatory to the extent it calls for information in the possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants. For example, Debtors are presumably aware of any work devices that may have been issued by the Company to Mr. James.

Defendants further object to this Interrogatory to the extent it improperly seeks "discovery on discovery" without the requisite showing that responsive documents have been improperly withheld. Salzgitter Mannesmann Int'l (USA) Inc. v. Sun Steel Co. LLC, 2022 WL 3041134, at *2 (S.D. Tex. Aug. 2, 2022) (noting that "discovery on discovery" is impermissible absent "any factual reason to believe that any [responsive] documents . . . have been withheld").

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson, 2025 WL 3175281, at *5.

44

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d at 1131. Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

## **INTERROGATORY NO. 16:**

Identify all Person(s) who are or have been employed and/or retained as internal or external accountants, auditors, and/or financial advisors for the Company and/or each Defendant, Including the services such Person(s) provided and the dates during which such Persons provided those services.

## **RESPONSE TO INTERROGATORY NO. 16:**

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Defendants further object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it calls for identification of "*all* Person(s)."

Defendants further object to this Interrogatory to the extent it calls for information that is already in the possession, custody, or control of Debtors; readily available to Debtors from their own books and records; and/or obtainable by Debtors from public sources or from the Debtors'

45

advisors.  Defendants also object to this Interrogatory to the extent it calls for information in the possession, custody, or control of Persons other than Defendants or that is not readily accessible to Defendants.  For example, Debtors are in a significantly better position than Defendants to identify professionals employed by "*the Company*."

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1).  Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory.  Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him."  In re Grand Jury Subpoena, 767 F.2d at 1131.  Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

## INTERROGATORY NO. 17:

Identify each and every audit of each Entity Defendant, Including but not limited to the date of such audit, all Person(s) and Individuals who audited the Entity Defendant.

## RESPONSE TO INTERROGATORY NO. 17:

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Defendants further object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it calls for identification of "*each and every* audit."

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d at 1131. Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

**INTERROGATORY NO. 18:**

Identify any and all legal actions, regulatory inquiries or investigations, and/or criminal investigations or actions threatened and/or pending against each Defendant.

**RESPONSE TO INTERROGATORY NO. 18:**

Defendants incorporate all objections in the Introductory Statement, General Objections, Objections to Definitions, and Objections to Instructions, as if fully stated herein.

Defendants further object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable legal privilege.

Defendants further object to this Interrogatory to the extent it violates any Applicable Rules, the Rules' limitations as to timing and/or subject matter, is premature, and is not a more practical method of obtaining the information sought than a request for production or a deposition.

Defendants further object to this Interrogatory to the extent it seeks discovery of information that is not relevant to any claim or defense in this action and not proportional to the needs of this case.

Defendants further object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it calls for identification of "*any and all . . . threatened*" legal actions, regulatory inquiries or investigations.

Defendants further object to this Interrogatory to the extent it is ambiguous and vague, including in its use, without definition, of the term "threatened".

Defendants further object to this Interrogatory to the extent it seeks information protected by applicable law enforcement and investigatory privileges, to the extent it seeks information subject to statutory confidentiality protections, and to the extent it seeks information protected by grand jury secrecy rules under Federal Rule of Criminal Procedure 6(e) and matters occurring before any grand jury.

Defendants further object to Debtors' inclusion of compound, multi-part Interrogatories.

Defendants further object to Debtors' violation of the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Because Debtors served this Interrogatory in violation

48

of the limit on interrogatories, including subparts, and in light of the foregoing objections, Defendants will not respond to this Interrogatory. Johnson, 2025 WL 3175281, at *5.

Finally, Mr. James objects to this Interrogatory on the grounds that it seeks information that might "tend to incriminate him or furnish a link in the chain of evidence needed to prosecute him." In re Grand Jury Subpoena, 767 F.2d at 1131. Accordingly, Mr. James invokes his rights against self-incrimination under the Fifth Amendment to the United States Constitution and declines to respond.

DATED: January 9, 2025  
Houston, Texas

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Cameron Kelly*  
Cameron Kelly (SBN: 24120936)  
700 Louisiana, Suite 3900  
Houston, Texas 77002  
Telephone: 713-221-7000  
Email: cameronkelly@quinnemanuel.com

Michael B. Carlinsky (admitted *pro hac vice*)  
James C. Tecce (admitted *pro hac vice*)  
Scott Hartman (admitted *pro hac vice*)  
Reece Pelley (admitted *pro hac vice*)  
Grace Sullivan (admitted *pro hac vice*)  
295 Fifth Avenue  
New York, New York 10016  
Telephone: 212-849-7000

**DEBEVOISE & PLIMPTON LLP**

By: */s/ Erica Weisgerber*  
Erica S. Weisgerber (admitted *pro hac vice*)  
Matthew J. Sorensen (admitted *pro hac vice*)  
66 Hudson Boulevard  
New York, New York 10001  
Telephone: 212-909-6000  
Email: eweisgerber@debevoise.com  
Email: mjsorensen@debevoise.com

*Attorneys for Defendants*

49

# EXHIBIT F

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| FIRST BRANDS GROUP, *et al.*, | : | Case No. 25-90399 (CML) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |
|  | : |  |
| FIRST BRANDS GROUP, *et al.*, | : |  |
| Plaintiffs | : | Adv. Pro. No. 25-3803 (CML) |
|  | : |  |
| v. | : |  |
|  | : |  |
| PATRICK JAMES, THE PATRICK JAMES TRUST, | : |  |
| ALBION REALTY, LLC, ALESTER | : |  |
| TECHNOLOGIES LLC, BATTERY PARK | : |  |
| HOLDINGS LLC, LARCHMONT LLC, PEGASUS | : |  |
| AVIATION, LLC, MICHAEL BAKER, PETER | : |  |
| ANDREW BRUMBERGS, STEPHEN GRAHAM, | : |  |
| JOHN AND JANE DOE(S) 1-100, and ABC | : |  |
| CORPORATION(S): 1-100, | : |  |
| Defendants | : |  |
|  | : |  |

## NOTICE OF NON-PARTY SUBPOENA *DUCES TECUM*

**PLEASE TAKE NOTICE** that pursuant to Rule 45 of the Federal Rules of Civil

Procedure, made applicable by Rule 9016 of the Federal Rules of Bankruptcy Procedure, the

undersigned Defendants, by and through their undersigned counsel, have caused the enclosed

subpoena to be served upon the following non-party:

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

VERCYFi LLC
c/o Thomas Wenz
6984 E 1st Ave,
Denver, CO 80230

The subpoena commands that the non-party produce documents for inspection at the

time, date, and location set forth therein.

**Dated: January 29, 2026**

| | |
|---|---|
| **QUINN EMANUEL URQUHART & SULLIVAN, LLP** | **DEBEVOISE & PLIMPTON LLP** |

Cameron Kelly (TX SBN: 24120936)
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: (713) 221-7000
Email: cameronkelly@quinnemanuel.com

-and-

Michael B. Carlinsky (admitted *pro hac vice*)
William A. Burck (admitted *pro hac vice*)
James C. Tecce (admitted *pro hac vice*)
Scott Hartman (admitted *pro hac vice*)
Anil Makhijani (admitted *pro hac vice*)
Eric S. Kay (admitted *pro hac vice*)
Reece Pelley (admitted *pro hac vice*)

*/s/ Erica Weisgerber*_____
Erica S. Weisgerber (admitted *pro hac vice*)
Matthew Sorensen (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Email: eweisgerber@debevoise.com
mjsorensen@debevoise.com

*Attorneys for Patrick James, the Patrick James Trust, Albion Realty, LLC, Alester Technologies, LLC, Battery Park Holdings LLC, Larchmont LLC, and Pegasus Aviation LLC*

2

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ Southern _____ District of _____ Texas _____

In re  First Brands Group, LLC, et al.
_____
Debtor

*(Complete if issued in an adversary proceeding)*

First Brands Group, LLC, et al.
_____
Plaintiff

v.

Patrick James, et al.
_____
Defendant

Case No.  25-90399 (CML)

Chapter  11

Adv. Proc. No.  25-03803

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: VERCYFi LLC, c/o Thomas Wenz, 6984 E 1st Ave, Denver, CO 80230
_____
*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE<br>Roland Process Service & Investigations LLC, 1660 S. Albion Street, Suite 718, Denver, CO 80222 | DATE AND TIME<br>February 12, 2026 at 5:00 PM |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: January 28, 2026

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

*/s/ Erica Weisgerber*
_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* __the parties listed on Exhibit B_, who issues or requests this subpoena, are:
 Erica Weisgerber, Debevoise & Plimpton LLP, 66 Hudson Blvd E, New York, NY 10001

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
   (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
   *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
   *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
   *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| FIRST BRANDS GROUP, *et al.*, | : | Case No. 25-90399 (CML) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |
|  | : |  |
|  | : |  |
| FIRST BRANDS GROUP, *et al.*, | : |  |
| Plaintiffs | : | Adv. Pro. No. 25-3803 (CML) |
|  | : |  |
| v. | : |  |
|  | : |  |
| PATRICK JAMES, THE PATRICK JAMES | : |  |
| TRUST, ALBION REALTY, LLC, ALESTER | : |  |
| TECHNOLOGIES LLC, BATTERY PARK | : |  |
| HOLDINGS LLC, LARCHMONT LLC, | : |  |
| PEGASUS AVIATION, LLC, MICHAEL | : |  |
| BAKER, PETER ANDREW BRUMBERGS, | : |  |
| STEPHEN GRAHAM, JOHN AND JANE | : |  |
| DOE(S) 1-100, and ABC CORPORATION(S): | : |  |
| 1-100, | : |  |
| Defendants | ; |  |

**EXHIBIT A TO SUBPOENA**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, made applicable by Rule 9016 of the Federal Rules of Bankruptcy Procedure, and the Definitions and General Instructions to follow, Defendants Patrick James, the Patrick James Trust, Albion Realty, LLC, Alester Technologies, LLC, Battery Park Holdings LLC, Larchmont LLC, and Pegasus Aviation LLC (together, "**Defendants**") hereby request that VERCYFi LLC ("**VERCYFi**" or "**You**") produce stored information, and other tangible things that are in its possession, custody, or control, in

---

[1]      A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

1

accordance with the Definitions and General Instructions set forth herein (the "**Requests**").

Production will take place by February 12, 2026 at 5:00 PM, either electronically or by hand

delivery to Roland Process Service & Investigations LLC, 1660 S. Albion Street, Suite 718,

Denver, CO 80222, or at such other time, place, or manner as the parties agree.

## GENERAL INSTRUCTIONS

1. These instructions incorporate by reference the requirements and duties of the Bankruptcy Rules, the Federal Rules, and the Local Rules.

2. In responding to these Requests, You are required to make a diligent search of Your records, papers, and materials in your possession, custody or control or otherwise available to You and furnish all information available to You or subject to Your reasonable inquiry. If there is no information responsive to a particular Request, You are instructed to so state in writing.

3. The duty to produce Documents shall not be limited or affected by the fact that the same Document is available through another source. All Documents should be produced that are not subject to an objection and are known by, possessed or controlled by, or available to you or any of your attorneys, consultants, representatives, employees, officers, directors, partners, or other agents.

4. For purposes of interpreting or construing the scope of these Requests, all terms shall be given their most expansive and inclusive interpretation. This includes, without limitation, construing:

    a. the terms "and" as well as "or" in the disjunctive or conjunctive, as necessary to make the Request at issue more inclusive and bring within the scope of the Request any information that might otherwise be construed to be outside the scope of the Request;

2

b.      the singular form of the word to include the plural, and vice versa;

c.      the term "concerning" to mean relating to, referring to, describing, evidencing, or constituting;

d.      the terms "include" and "including" to mean "including but not limited to" and "including without limitation";

e.      the term "all" to mean "any and all," and vice versa;

f.      the term "each" to include "every," and vice versa;

g.      the term "between" to include "among," and vice versa;

h.      the use of a verb in any tense as the use of the verb in all other tenses; and

i.      all spelling, syntax, grammar, abbreviations, idioms, and proper nouns to give proper meaning and consistency to their context.

5. The fact that investigation is continuing or that discovery is not complete is not an excuse for failure to produce all Documents and information currently in Your possession, custody, or control or otherwise available to You.

6. These Requests are continuing in nature. Any Document that is created, is identified, or comes into Your possession, custody, or control after service of any response to these Requests that would have been produced had the Document then existed, been identified, or been within Your possession, custody, or control shall promptly be produced.

7. Documents shall be produced in the order in which they are kept in the ordinary course. All Documents that are physically attached to each other when located for production shall be left so attached. Documents that are segregated or separated from other Documents, whether by inclusion in binders, files, or sub-files, or by use of dividers, tabs, clips, or any other method, shall be left so segregated or separated.

8.     If any copy of any Document, the production of which is requested, is not identical to any other copy thereof, by reason of any alterations, marginal notes, comments, metadata, omissions, or material contained therein or attached thereto, or otherwise, then all such non-identical copies shall be produced separately.  For the avoidance of doubt, a Document with handwritten, typewritten, or other notes, editing marks, etc. is not and shall not be deemed to be identical to one without such modifications.

9.     If any portion of any Document is responsive to any Request, then the entire Document shall be produced.

10.     For any responsive Documents stored in electronic format, including email, you will produce those Documents in searchable electronic format (e.g., single-page .tiff format with corresponding OCR or full-text files) via file transfer, such as FTP or Kiteworks or other widely-used electronic or optical storage media.  All Microsoft Excel and PowerPoint documents will be produced in native format, and Defendants reserve the right, as needed, to seek production of additional Documents, or categories of Documents in native format.  All responsive electronic Documents will be produced with sufficient metadata to convey where these items begin and end (including attachments), the original file name, and the original timestamps and attributes, including the following metadata fields: "BEGBATES," "ENDBATES," "BEGATTACH," "ENDATTACH," "to," "from," "cc," "bcc," "subject," "custodian," "creation date," "last modified," "SentDate," "FileName," "TextLink," "NativeLink," and "MD5HASH."  If a Document exists in both physical (*i.e.*, "hard copy") form and electronic form, then the Document shall be produced in both forms.

11.     In the event You assert any form of privilege or protection from disclosure as a ground for not answering a Request or any part of a Request, You must set forth the legal grounds and facts upon which the privilege or protection is based.  If the claim of privilege or

4

protection from disclosure relates to only part of the document, the document must be produced in redacted form. With respect to any document that is withheld or redacted on a claim of privilege, You shall provide a statement setting forth as to each such document the following information:

  a) the name(s) of the sender(s) of the document;

  b) the name(s) of the author(s) of the document;

  c) the name(s) of the person(s) to whom the document or copies were sent;

  d) the date of the document;

  e) a brief description of the nature and subject matter of the document; and

  f) the nature of the privilege or the authority which is claimed to give rise to it.

12. If You object to any portion of a Request, produce all documents and information responsive to all other portions of the Request to which you assert no objection. For such documents that You may object to as too burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved, and the estimated costs of the search.

13. If, in responding to a Request, You encounter a perceived ambiguity, either in the request itself or in any applicable definition or instruction, respond to the Request fully, and include in Your response an identification of the perceived ambiguity and the construction thereof used in Your response.

14. If a Document which would be responsive to these requests is no longer in existence or in Your Possession, custody, or control, please state whether it is missing, lost, destroyed or otherwise disposed of and, in each instance, explain the circumstances surrounding such disposition and the date of such disposition. Additionally, describe the nature of the Document or Communication, identify the persons who created, sent, received, or reviewed the

5

Document or Communication, and state in as much as detail as possible the contents of the Document or Communication.

15.     Unless otherwise stated, the time period for these Requests is January 1, 2017 to the present.

16.     By serving these Requests, Defendants expressly reserves their right to modify or otherwise supplement these Requests.

## DEFINITIONS

1.     "**VERCYFi**," "**You**," and "**Your**" means VERCYFi LLC and any of its affiliates, agents, assigns, directors, employees, officers, parents, partners, representatives, subsidiaries, independent contractors, advisors, attorneys, and/or any other person or entities purporting to act on its behalf, and/or under its control.

2.     "**Communication**" or "**Communications**" shall be construed in the broadest possible sense under the Federal Rules of Civil Procedure and refers to the transmittal of information of any kind in any form.   This includes but is not limited to any oral or written transmittal or receipt of facts, information, thoughts, inquiries, and opinions, including meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements, press releases, and newspaper stories.   References to Communications with business entities shall be deemed to include all officers, directors, employees, personnel, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

3.     "**Company**" means Debtors, together with Debtors' non-debtor affiliates.

4.     "**Debtors**" means First Brands Group, LLC and its debtor affiliates in the above-captioned chapter 11 cases.

6

5. "**Defendants**" means Patrick James, the Patrick James Trust, Albion Realty, LLC, Alester Technologies, LLC, Battery Park Holdings LLC, Larchmont LLC, and Pegasus Aviation LLC.

6. "**Document**" or "**Documents**" is used in the broadest possible sense and refers to all information stored in any form whatsoever, including data stored or contained in computers, on computer tapes, computer discs or any other computer-related storage device, audio recording, video recordings, still photographs, and all written or printed matter of any kind, including the originals and all non-identical copies, whether different from the original by reason of any notes made on such copies or otherwise, so long as they are in Your possession, custody, or control. Examples of Documents include, but are not limited to, correspondence, memoranda, e-mails, text messages, messages on applications such as but not limited to WhatsApp, Signal, Telegram, Skype, and Teams, voicemail messages, notes (handwritten, typed or otherwise), affidavits, statements, letters, minutes, agendas, contacts, reports, studies, checks, statements, receipts, summaries, interoffice and intraoffice communications, ledgers, excel spreadsheets, appointment calendars, offers, notations of any sort of conversation (including without limitation telephone conversations or meetings) and all drafts, alterations, modifications, changes or amendments of any of the foregoing, and any and all mechanical, magnetic or electronic recordings or reproductions of any kind of any of the foregoing.

7. "**Discovery Requests**" means any formal or informal document requests, requests for depositions or interviews, and/or subpoenas sent to You in connection with any proceeding relating to First Brands Group or the Company.

8. "**First Brands Group**" means First Brands Group, LLC and its affiliates.

## **REQUESTS FOR PRODUCTION**

1.      Documents sufficient to show any agreements entered into by You regarding the Company or First Brands Group.

2.      Documents sufficient to show bank accounts used to make or receive payments by, to, or on behalf of the Debtors or the Company, including bank account numbers, names of financial institution(s), and the names of individuals or entities controlling the bank accounts.

3.      All Documents concerning Your supply chain financing, auditing, payment, or reporting services for the Debtors or the Company, or with respect to the Debtors or the Company.

4.      Documents sufficient to show all payments by the Debtors or the Company to You.

5.      Documents sufficient to show all payments by you to third parties for, on behalf of, at the direction of, or on account of the Debtors or the Company.

6.      Documents sufficient to show all payments by any of the Debtors' or the Company's supply chain financing parties to You.

7.      Documents sufficient to show all payments by You to the Debtors or the Company.

8.      All Communications with or relating to the Debtors, Patrick James, Edward James, Stephen Graham, Michael Baker, Peter Andrew Brumbergs, Shekar Kumar, Matthew Liebson, and any other director, officer or manager of a Debtor, including but not limited to written correspondence, emails and text messages regarding any payments to Debtors or the Company or payments made at the direction of the Debtors or the Company or any of their directors, officers, or managers.

8

9. All Documents and Communications between VERCYFi LLC and (a) the Debtors or their counsel (Weil Gotshal & Manges); (b) Alvarez & Marsal; (c) the Special Committee or its advisors; or (d) any government agency (SEC, DOJ, FBI, U.S. Trustee, or other regulatory authority) concerning the bankruptcy, the Document Requests You have received, alleged fraud, invoice irregularities, and any investigation of First Brands Group or the Company's factoring practices. This request includes all Documents and information You have produced or provided to any of the entities listed in subsections (a) through (d) in response to any document requests, subpoenas, civil investigative demands, or other compulsory process.

**Dated: January 28, 2026**

| QUINN EMANUEL URQUHART & SULLIVAN, LLP | DEBEVOISE & PLIMPTON LLP |
| --- | --- |
| Cameron Kelly (TX SBN: 24120936)<br>700 Louisiana Street, Suite 3900<br>Houston, Texas 77002<br>Telephone: (713) 221-7000<br>Email: cameronkelly@quinnemanuel.com<br><br>-and-<br><br>Michael B. Carlinsky (admitted *pro hac vice*)<br>William A. Burck (admitted *pro hac vice*)<br>James C. Tecce (admitted *pro hac vice*)<br>Scott Hartman (admitted *pro hac vice*)<br>Anil Makhijani (admitted *pro hac vice*)<br>Eric S. Kay (admitted *pro hac vice*)<br>Reece Pelley (admitted *pro hac vice*) | /s/ Erica Weisgerber<br>Erica S. Weisgerber (admitted *pro hac vice*)<br>Matthew J. Sorensen (admitted *pro hac vice*)<br>66 Hudson Boulevard<br>New York, NY 10001<br>Telephone: (212) 909-6000<br>Email: eweisgerber@debevoise.com<br>mjsorensen@debevoise.com |

*Attorneys for Patrick James, the Patrick James Trust, Albion Realty, LLC, Alester Technologies, LLC, Battery Park Holdings LLC, Larchmont LLC, and Pegasus Aviation LLC*

## EXHIBIT B

Patrick James, the Patrick James Trust, Albion Realty, LLC, Alester Technologies, LLC, Battery Park Holdings LLC, Larchmont LLC, and Pegasus Aviation LLC

# EXHIBIT G

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIRST BRANDS GROUP LLC, *et al.*, | § | CASE NO. 25-90399 (CML) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |

| | | |
|---|---|---|
| FIRST BRANDS GROUP LLC *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary Proc. No. 25-03803 (CML) |
| | § | |
| PATRICK JAMES, THE PATRICK JAMES TRUST, ALBION REALTY, LLC, ALESTER TECHNOLOGIES LLC, BATTERY PARK HOLDINGS LLC, LARCHMONT LLC, PEGASUS AVIATION, LLC, MICHAEL BAKER, PETER ANDREW BRUMBERGS, STEPHEN GRAHAM, JOHN AND JANE DOE(S) 1-100, and ABC CORPORATION(S) 1-100, | § § § § § § § § § § | |
| | § | |
| Defendants. | § | |

## ~~THE~~ UNITED STATES OF AMERICA'S AMENDED[2] MOTION TO INTERVENE

## AND STAY DISCOVERY AND SUPPORTING MEMORANDUM OF LAW

---

[1] A complete list of Debtors in these chapter 11 cases may be obtained on the website of Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] For the convenience of the Court and the Parties, a redline comparison of this Amended Motion to the United States of America's Motion to Intervene and Stay Discovery and Supporting Memorandum of Law, ECF Dkt. No. 166 filed on April 12, 2026, is attached hereto as Exhibit G.

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

## TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………………  i

TABLE OF AUTHORITIES…………………………………………………...  ii

PRELIMINARY STATEMENT..……………………………………………….  1

JURISDICTION AND VENUE...……………………………………………...  3

BACKGROUND……………………………………………………………….  3

I.      THE CRIMINAL CASE…………………………………………………...  3

II.     THE ADVERSARY PROCEEDING………………………………………...  6

ARGUMENT…………………………………………………………………...  8

I.      THE UNITED STATES IS ENTITLED TO INTERVENE………………..  8

II.     DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF
        THE CRIMINAL CASE………………………………………………...  11

        A.      Applicable Law……….……………………………………………..  11

        B.      Application of the Stay Factors………………………………………...  13

                1.      *Substantial Overlap Exists*…….…………………………………..  13

                2.      *The Criminal Case is Proceeding Expeditiously*………………………  14

                3.      *The Debtors' Interests Do Not Outweigh the Need for a Stay*…………..  14

                4.      *The Defendants' Interests Support a Stay*……………………………  15

                5.      *Judicial Economy Favors a Stay*……………………………………  17

                6.      *The Public Interest Strongly Supports a Stay*…………………………  18

CONCLUSION………………………………………………………………...  20

CERTIFICATE OF CONFERENCE……………………………….……………  21

CERTIFICATE OF SERVICE………………………………………...…………  22

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391 (S.D. Tex. 2009) ...................................... 11, 12

*Bd. of Governors v. Pharaon*, 140 F.R.D. 634 (S.D.N.Y. 1991) ................................................. 19, 20

*Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951)......................................................10

*Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) .............................................................9

*Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962)...........................................................19

*DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007) ..........................................11

*Dominguez v. Hartford Fin. Serv.Group Inc.*, 530 F. Supp.2d 902
    (S.D. Tex. 2008) ......................................................................................................... 9, 13

*Heller Healthcare Fin., Inc. v. Boyes*, No. Civ. A. 300CV1335D,
    2002 WL 1558337 (N.D. Tex. July 15, 2002).....................................................12

*In re Eisenberg*, 654 F. 2d 1107 (5th Cir. 1981)..................................................................19

*In re Marceca*, 131 B.R. 774 (Bankr. S.D.N.Y. 1991) .......................................................12

*In re Ramu Corp.*, 903 F.2d 312 (5th Cir. 1990) .......................................................... 9, 11

*In re SK Foods, L.P.*, CA No. S–10–1492 LKK, 2010 WL 5136189
    (E.D. Cal. Dec. 10,2010)  ...................................................................................12

*In re Zinnel*, CA No. 2:12–cv–00249–MCE, 2013 WL 1284339
    (E.D. Cal. March 28, 2013).................................................................................12

*Landis v. North American Co.*, 299 U.S. 248 (1936) .........................................................11

*Mayo v. Tri-Bell Indus.*, 787 F.2d 1007 (5th Cir. 1986).....................................................11

*S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07 Civ., 1188,
    2008 WL 866065 (N.D. Tex. Mar. 17, 2008) ...................................................13

*S.E.C. v. Calabrigo*, No. 22 Civ. 3096 (LJL), 2022 WL 4752427
    (S.D.N.Y. Sept. 30, 2022)............................................................................... 16, 19

*S.E.C. v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*, No. 11 Civ. 6500 (RA),
    2012 WL 5505738 (S.D.N.Y. Nov. 9, 2012) .....................................................17

*S.E.C. v. Shkreli*, 15 Civ. 7175 (KAM), 2016 WL 1122029
(E.D.N.Y. Mar. 22, 2016) .................................................................................. 13, 14, 15

*SEC v. Beacon Hill Asset Mgmt. LLC*, 2003 WL 554618 (S.D.N.Y. Feb. 27, 2003) ................... 19

*SEC v. Blaszczak*, No. 17-CV.-3919 (AJN), 2018 WL 301091 (S.D.N.Y. Jan. 3, 2018) ........... 10

*SEC v. Chestman*, 861 F.2d 49 (2d Cir. 1988) ................................................................... 9

*SEC v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir. 1980) ....................................... 12

*SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660 (5th Cir. 1981) .................................... 11

*SEC v. Mutuals.com, Inc.*, CA No. 3:03–CV–2912–D, 2004 WL 1629929
(N.D. Tex. July 20, 2004) ................................................................................. 8, 9

*SEC v. Nicholas*, 569 F. Supp. 2d 1065 (C.D. Cal. 2008) ....................................... 18, 19

*SEC v. Stanford Int'l Bank, Ltd.*, CA No. 3:09-CV-298-N,
2010 WL 11492395 (N.D. Tex. Jan. 5, 2010) ....................................................... 8

*SEC. v. Tuzman*, No. 15-cv.-7057 (AJN), ECF No. 43,
(S.D.N.Y. Mar. 1, 2016) ........................................................................... 13, 14, 18

*State Farm Lloyds v. Wood*, No. 06 Civ. 503, 2006 WL 3691115
(S.D. Tex. Dec. 12, 2006) .......................................................................... 13, 18

*Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*,
886 F. Supp. 1134 (S.D.N.Y. 1995) ........................................................... 12, 14

*Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007 (E.D.N.Y. 1992) ................. 8, 17

*United States v. Cherry*, 876 F. Supp. 547 (S.D.N.Y. 1995) .............................................. 10

*United States v. Gross*, 24 F.R.D. 138 (S.D.N.Y. 1959) .................................................... 10

*United States v. Kordel*, 397 U.S. 1 (1970) ..................................................................... 11

*United States v. Little Al*, 712 F.2d 133 (5th Cir. 1983) ................................................. 11

*United States v. McCarthy*, 292 F. Supp. 937 (2d Cir. 1968) .......................................... 18

*United States v. Murray*, 297 F.2d 812 (2d Cir. 1962) .................................................... 10

*United States v. Percevault*, 490 F.2d 126 (2d Cir. 1974) ............................................... 18

*Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993)................................13

**Statutes**

18 U.S.C. § 2………………………………………………………..................... 4

18 U.S.C. § 225………………………………………………………................. 4

18 U.S.C. § 1343………………………………………………………............... 4

18 U.S.C. § 1344………………………………………………………............... 4

18 U.S.C. § 1349………………………………………………………............... 4

18 U.S.C. § 1956(a)(1)(B)(i)…………………………………………………........... 4

28 U.S.C. §§ 157(b)(2)(A),(B),(H), and (O)……………………………………… 3

28 U.S.C. §1409…………………………………………………………….. 3

18 U.S.C. § 3500………………………………………………………... 18, 19

**Rules**

Federal Rule of Bankruptcy Procedure 7024...……………………………............. 8

Federal Rule of Civil Procedure 24(a)(2)…………………………………............. 8

Federal Rule of Civil Procedure 24(b)(1)(B)...………………………............... 8

Federal Rule of Criminal Procedure 16(b)……………………………………… 11, 12

Federal Rule of Criminal Procedure 17(c)……………………………………….. 9, 10, 16

FED. R. CRIM. PROC. 17(c)(3)………………………………………………… 10

Local Bankruptcy Rule (LBR) 7007-1...……………………………………………… 1

**PRELIMINARY STATEMENT**

The United States of America (the "Government" or the "United States"), moves to intervene in the above-captioned adversary proceeding for the limited purpose of seeking a stay of all discovery including, without limitation, depositions and witness testimony, pending resolution of the parallel criminal case, *United States* v. *Patrick James & Edward James*, 26 Cr. 29 (AT) (S.D.N.Y.), and submits this memorandum in support of same.

The adversary proceeding and the criminal case arise from the same or related fraud schemes at First Brands Group, LLC ("First Brands"). The Debtors have brought claims against defendants Patrick James and entities affiliated with Patrick James (together with Patrick James, the "Patrick James Defendants"), Michael Baker, Andrew Brumbergs, and Stephen Graham. Except for the Patrick James Defendants, all defendants consent to the Government's requested relief. Further, the Debtors and the United States Trustee do not oppose the Government's motion.[3] A certificate of conference as required by LBR 7007-1 accompanies this Motion.

A stay is necessary to protect the integrity of the criminal prosecution. Without a stay, Patrick James—a defendant in the criminal case—can exploit the Federal Rules of Bankruptcy Procedure and the civil discovery process to circumvent discovery limits imposed by the Federal Rules of Criminal Procedure. Patrick James may depose cooperating witnesses whose statements the United States need not produce until trial. In so doing, Patrick James would force others to choose between: (a) jeopardizing their criminal defense by waiving their Fifth

---

[3] The Debtors are supportive of a stay of discovery for 60 days and take no position on a stay going beyond 60 days.

THE UNITED STATES OF AMERICA'S AMENDED MOTION TO INTERVENE
AND STAY DISCOVERY AND SUPPORTING MEMORANDUM OF LAW · · · · · · · · · · · · · · · · PAGE 1

Amendment rights; or (b) invoking their Fifth Amendment rights and suffering adverse inferences in the civil proceedings. Meanwhile, Patrick James could tailor his own testimony based upon information unavailable through proper criminal discovery channels. These risks are not speculative: Patrick James has already sought to depose witnesses and issued subpoenas demanding documents—including, without limitation, for records produced to the U.S. Department of Justice during its investigation into the James brothers—with return dates that have already elapsed. The Court should stay all discovery beyond the existing stay (which expires in early April 2026) to preserve the integrity of both proceedings.

As the criminal case will likely resolve multiple factual issues present in this adversary proceeding, a stay will not prejudice the parties. Because of the differing burdens of proof in the criminal and civil cases, and a criminal defendant's right to a speedy trial, the criminal case will continue regardless of whether this matter is stayed. As it advances, the criminal case will likely marshal the evidence of, and adjudicate, Patrick James's awareness of at least some of the fraudulent conduct alleged in both proceedings. The criminal case will also surface evidence regarding Patrick James's control of First Brands' business; Patrick James's and Edward James's roles in selling fictitious and inflated accounts receivable and accounts payable; Patrick James's and Edward James's role in acquiring and concealing "off-balance sheet" financing for First Brands; acquisition of fraudulent lender proceeds by Patrick and Edward James; the nature and value of First Brands' indebtedness, both disclosed and undisclosed, and the relationship between First Brands and its lenders. Without a stay, these issues would have to be litigated twice in different fora under different burdens of proof. If this action is stayed, however, the criminal case, which is proceeding expeditiously, will likely

THE UNITED STATES OF AMERICA'S AMENDED MOTION TO INTERVENE
AND STAY DISCOVERY AND SUPPORTING MEMORANDUM OF LAW                    PAGE 2

streamline and simplify this adversary proceeding through judicial determination of the key issues and collateral estoppel, and thereby enhance judicial economy and preserve assets for creditor recovery.

Accordingly, for these reasons and the reasons set forth in greater detail *infra*, the United States files this Amended Motion to Intervene and Stay Discovery and Supporting Memorandum of Law ("Motion"), and respectfully requests that the Court stay discovery until the criminal case concludes.

## JURISDICTION AND VENUE

The Debtors' adversary proceeding and amended complaint seeking monetary, injunctive, and equitable relief were filed pursuant to sections 105(a), 502, 542, 544, 548, 550, and 551 of the Bankruptcy Code and Rules 3007, 6009, and 7001 of the Federal Rules of Bankruptcy Procedure. The amended complaint alleges this is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A),(B),(H), and (O) and this Court has jurisdiction to hear and determine this proceeding and to enter a final order and judgment. The amended complaint also alleges that venue is proper in the Court pursuant to 28 U.S.C. § 1409. Although the United States is not a party to this adversary proceeding, and is only seeking to intervene for the limited purpose of staying discovery, the United States denies that this is a core proceeding and does not consent to the entry of final orders or judgments by this Court.

## BACKGROUND

### I. THE CRIMINAL CASE

On January 27, 2026, a grand jury sitting in the United States District Court for the Southern District of New York returned a nine-count indictment (the "Indictment" or "Ind.").

The Indictment charges Patrick James with organizing, managing, and supervising a continuing financial crimes enterprise, in violation of Title 18, United States Code, Sections 225 and 2) (Count One).  The Indictment further charges both Patrick James and Edward James—Patrick's brother and a former senior executive of First Brands—with: (i) conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349 (Count Two); (ii) multiple counts of wire fraud affecting a financial institution, in violation of Title 18, United States Code, Sections 1343 and 2 (Counts Three, Four, Six, and Eight); (iii) multiple counts of bank fraud, in violation of Title 18, United States Code, Sections 1344 and 2 (Counts Five and Seven); and (iv) conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) (Count Nine). *See United States v. Patrick James & Edward James*, No. 26 Cr. 29 (AT) (S.D.N.Y. Dec. 15, 2024) (Dkt. 2). A copy of the grand jury's Indictment is attached hereto as Exhibit A.

As alleged in the Indictment, from 2018 through September 2025, Patrick James and Edward James, together with their co-conspirators, perpetrated a series of fraudulent schemes against First Brands' lenders and financing partners. *See* Exhibit A, Indictment at ¶ 2.   As part of the defendants' schemes, First Brands: faked and falsely inflated invoices for accounts receivable and payable; double- and triple-pledged loan collateral; falsified corporate financial statements; and concealed substantial liabilities from lenders. *Id.*   These schemes yielded billions of dollars in financing necessary to fuel First Brands growth-through-acquisition strategy. *Id.* at ¶ 7.  The schemes also enabled Patrick James and Edward James to reap millions of dollars in proceeds derived from their fraud. *Id.* at ¶ 2.

THE UNITED STATES OF AMERICA'S AMENDED MOTION TO INTERVENE
AND STAY DISCOVERY AND SUPPORTING MEMORANDUM OF LAW                    PAGE 4

By 2025, however, First Brands' fraudulent schemes could not forestall acute cash shortages and mounting liabilities at the company, which ultimately declared bankruptcy on September 28, 2025. *Id.* at ¶ 36. In the months prior, Patrick James and Edward James recognized the company's dire position and attempted to refinance First Brands' debt or sell the company. As that process was underway, Patrick James and Edward James closed ranks, restricting the flow of information outside the company in an effort to prevent the true financial picture at First Brands from being disclosed to creditors, auditors, and potential purchasers. *Id.* at ¶ 34.

Even as the frauds unraveled and First Brands' financial issues mounted, Patrick James continued to enrich himself as the owner of First Brands. Through the series of frauds he directed, Patrick James caused billions of dollars in gross proceeds to flow into First Brands from counterparties and received at least hundreds of millions of dollars in gross proceeds into his personal accounts. *Id.* at ¶ 35.

The scale of the defendants' fraud was staggering. At the time of its bankruptcy, First Brands—a company that reported approximately $5 billion in net annual sales worldwide—declared $12 million in cash in its corporate bank accounts and over $9 billion in liabilities. As a consequence of the defendants' fraudulent schemes, First Brands' lenders and creditors now face billions in losses. *Id.* at ¶ 3.

Two former First Brands executives, VP of Finance Peter Andrew Brumbergs and CFO Stephen Graham, pled guilty on January 27, 2026 and March 2, 2026, respectively, and

agreed to cooperate with the Government, including by offering testimony when requested.[4] *See United States v. Brumbergs et al.*, No. 26 Cr. 25 (AT) (S.D.N.Y.).   Their sentencing hearings have not yet been scheduled.   The criminal case against Patrick James and Edward James, assigned to Judge Analisa Torres, is proceeding expeditiously, with a trial date set for July 13, 2026.   Since the initial pretrial conference on February 4, 2026, the Government has produced more than a million documents in discovery, including search warrant returns for multiple electronic accounts, as well as corporate records from the Debtors and other third-party custodians. *See* Affirmation of Assistant United States Attorney Nicholas W. Chiuchiolo ("Chiuchiolo Aff."), attached hereto as Exhibit B.   The next conference before Judge Torres is scheduled for April 27, 2026. *Id.*

## II.     THE ADVERSARY PROCEEDING

On November 3, 2025, the Debtors initiated an adversary proceeding against Patrick James and various entities (the "Patrick James Adversary Proceeding"). (Dkt. 17).   Like the Indictment, the complaint in the Patrick James Adversary Proceeding, ECF Dkt. No. 17 ("AP Complaint") alleges that Patrick James committed fraud while leading First Brands by: (1) incurring billions in liabilities through the use of non-existent or doctored invoices for accounts receivable; and (2) using purported "special purpose vehicles" ("SPVs") to incur additional billions in financing, including by double-pledging collateral that was already encumbered. *See* AP Complaint at ¶¶ 5-6.   The AP Complaint further alleges that Patrick

---

[4]     At sentencing in the criminal cases, Judge Torres may consider against Graham and Brumbergs any statements or admissions they are compelled to make in this proceeding.   The sentencing hearings for Brumbergs and Graham will occur after the criminal case against Patrick James and Edward James has concluded.

James did not use all of the financing for the benefit of the debtors; rather, he pilfered certain company assets to maintain his lavish lifestyle. *Id.* at ¶ 7. This Court subsequently entered a temporary restraining order to preserve the status quo before denying First Brands' request for a preliminary injunction. *See* Order Denying Application for Preliminary Judgment, ECF Dkt. No. 5514.

On January 19, 2026, First Brands filed an amended complaint in the Patrick James Adversary Proceeding. *See* Amended Complaint, ECF Dkt. No. 141 ("Amended AP Complaint"). Among other things, the Amended AP Complaint alleges additional claims against defendant Patrick James and adds additional defendants, including Peter Andrew Brumbergs, Stephen Graham, and Michael Baker. The Amended AP Complaint sets forth various fraud schemes allegedly perpetrated by the defendants, including: (1) fraud in connection with First Brands' accounts receivable factoring programs; (2) double-pledging of collateral to inventory lenders; (3) fraud in connection with First Brands' supply chain factoring programs; and (4) the preparation and submission of fraudulent financial reports to First Brands' lenders. *See Id.* at ¶¶ 4-9.

The Patrick James Defendants have moved aggressively to obtain discovery in the bankruptcy proceeding. In doing so, Patrick James has sought to skirt the federal rules governing criminal discovery and gain an early preview of the Government's evidence against him in the criminal matter. For example, on January 23, 2026, the Patrick James Defendants issued a subpoena to PrimeRevenue (a supply-chain financing entity) seeking, among other records, "all [d]ocuments and information" provided to "any government agency (SEC, DOJ, FBI)." The return date on that subpoena was February 6, 2026, well before Patrick James

THE UNITED STATES OF AMERICA'S AMENDED MOTION TO INTERVENE
AND STAY DISCOVERY AND SUPPORTING MEMORANDUM OF LAW                    PAGE 7

would have expected to receive criminal discovery. On January 29, 2026, the Patrick James Defendants issued another subpoena to a bill-processing entity seeking, among other records, "[a]ll Communications with or relating to [among others] Stephen Graham, Michael Baker, Peter Andrew Brumbergs, Shekar Kumar, Matthew Liebson," and "all [d]ocuments and information" provided to "any government agency (SEC, DOJ, FBI)." The return date on that subpoena was February 12, 2026. Patrick James has issued at least 34 subpoenas, mostly to entities that are victims and/or witnesses in the criminal case against him. *See* Exhibit B, Chiuchiolo Aff. at ¶ 7.

## ARGUMENT

### I.   THE UNITED STATES IS ENTITLED TO INTERVENE

The Government has both the right and the interest to intervene. Federal Rule of Civil Procedure 24(a)(2), as incorporated into the Patrick James Adversary Proceeding through Rule 7024 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), provides that anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests….'" Alternatively, Bankruptcy Rule 7024 incorporating Federal Rule of Civil Procedure 24(b)(1)(B) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." Both standards are satisfied here.

Courts "have allowed the government to intervene in civil actions … for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007,

1009 (E.D.N.Y. 1992); *see also SEC v. Stanford Int'l Bank, Ltd.*, CA No. 3:09-CV-298-N, 2010 WL 11492395, at *1 (N.D. Tex. Jan. 5, 2010) (granting Government's motion to intervene and stay discovery in parallel civil case); *SEC v. Mutuals.com, Inc.,* CA No. 3:03–CV–2912–D, 2004 WL 1629929, at *1 (N.D. Tex. July 20, 2004) (same). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988). The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation, including authority to control the scope and pace of discovery. *In re Ramu Corp.,* 903 F.2d 312, 318 (5th Cir. 1990); *Dominguez v. Hartford Fin. Serv.Group Inc.*, 530 F. Supp.2d 902, 904 (S.D. Tex. 2008).

Intervention is warranted here because the existing parties cannot adequately protect the Government's interest in enforcing federal criminal laws. *See Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996). Allowing discovery without intervention in the case at bar would impair and interfere with the Government's ability to prosecute its criminal case. Many facts overlap between the Patrick James Adversary Proceeding and the criminal case, meaning witnesses may be required to testify multiple times regarding the same events. Civil discovery and witness testimony in a civil trial or evidentiary hearing before the criminal trial creates serious risks of improper witness preparation that undermine the truth-seeking function of criminal proceedings. Indeed, absent a stay of discovery, the Patrick James Defendants will likely continue to exploit civil procedural and discovery rules to circumvent the careful limits on criminal discovery in the Federal Rules of Criminal Procedure designed to prevent, among other things, perjury and witness intimidation.

For example, Federal Rule of Criminal Procedure 17(c) sets forth limitations concerning the issuing of subpoenas by criminal defendants and requires defense counsel to obtain authorization from the presiding judge in the criminal matter before subpoenaing personal or confidential information regarding a victim. Victims also must be provided notice and a chance to object. *See* FED. R. CRIM. PROC. 17(c)(3). Moreover, a criminal defendant can only issue a subpoena for records that are both admissible and relevant. *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 220-21 (1951); *United States v. Murray*, 297 F.2d 812, 821 (2d Cir. 1962) (observing that subpoenaed materials must themselves be admissible). Critically, the criminal rules of procedure differ from the civil rules of procedure, which permit the issuance of subpoenas to seek production of documents or materials which, although themselves not admissible, may lead to admissible evidence. *See United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995); *United States v. Gross*, 24 F.R.D. 138, 141 (S.D.N.Y. 1959) (Criminal Rule 17(c) cannot be used "to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case. This type of discovery ... has not been authorized for criminal trials.").

The careful and considered limitations on criminal discovery are designed to protect the integrity of the proceedings. "The public's interest in preserving the integrity of criminal proceedings can be undermined in three major ways when discovery proceeds in parallel civil and criminal litigation[.]" *SEC v. Blaszczak*, No. 17-CV.-3919 (AJN), 2018 WL 301091, at *3 (S.D.N.Y. Jan. 3, 2018). As the Court explained in *Blaszczak*:

> First, 'broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence.' Second, 'revelation of the identity of prospective witnesses may create the opportunity for intimidation.' Third,

'criminal defendants may unfairly surprise the prosecution at trial with information developed through discovery, while the self[-] incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.'

*Id.*, 2018 WL 301091 at \*3 (citation omitted).

In addition, witnesses and defendants (such as Brumbergs and Graham) will likely be forced to choose between: (a) jeopardizing their criminal defenses and strategies by waiving their Fifth Amendment rights; or (b) invoking their Fifth Amendment rights and suffering adverse inferences in this civil proceeding.

Considering these circumstances, the Government respectfully submits that its motion to intervene should be granted.

## II. DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF THE CRIMINAL CASE

### A. Applicable Law

Courts possess inherent authority to stay proceedings "to control the disposition of the causes on [their] docket with economy of time and effort," *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), and "to control the scope and pace of discovery." *In re Ramu Corp.*, 903 F.2d at 318. This authority includes a court's wide discretion to stay civil proceedings, postpone discovery, or impose protective orders and conditions during parallel criminal prosecutions "when the interests of justice seemed to require such action." *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *see also DeLeon v. City of Corpus Christi,* 488 F.3d 649, 655 (5th Cir. 2007); *Mayo v. Tri-Bell Indus.*, 787 F.2d 1007, 1012 (5th Cir. 1986). The Fifth Circuit has recognized the propriety of such stays. *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983); *SEC v. First Fin. Grp. of Tex., Inc.,* 659 F.2d 660, 668 (5th Cir. 1981). They are

appropriate even when requested by the prosecution. *Kordel*, 397 U.S. at 12 n.27. Moreover, they are particularly "warranted … to preserve a defendant's Fifth Amendment right against self-incrimination" and "to prevent extending criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b)." *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 397 (S.D. Tex. 2009) (citing *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980)).

In bankruptcy cases, courts have stayed proceedings where Fifth Amendment rights of parties and witnesses are seriously implicated. *See, e.g.*, *In re Zinnel*, CA No. 2:12–cv–00249–MCE, 2013 WL 1284339, *1, 4, 6-7 (E.D. Cal. March 28, 2013) (granting stay of bankruptcy appeal where debtor was criminally accused of engaging in enterprise through which he allegedly obtained assets); *In re SK Foods, L.P.*, CA No. S–10–1492 LKK, 2010 WL 5136189, *1, 7-9 (E.D. Cal. Dec. 10, 2010); (reversing denial of stay where bankruptcy litigation threatened principal's privilege against self-incrimination); *In re Marceca*, 131 B.R. 774, 778 (Bankr. S.D.N.Y. 1991) (granting stay pending criminal investigation).

Courts in this Circuit considering whether to grant a stay of discovery weigh six factors: "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest." *Alcala*, 625 F. Supp. 2d at 398-99 (collecting cases); *see also Heller Healthcare Fin., Inc. v. Boyes*, No. Civ. A. 300CV1335D, 2002 WL 1558337, at *2 (N.D. Tex. July 15, 2002) (citing *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

**B. Application of the Stay Factors**

All six factors considered within this Circuit favor a stay of discovery in the Patrick James Adversary Proceeding, including depositions and witness testimony, while the criminal case is pending.

1. *Substantial Overlap Exists*

The extent of overlap between proceedings is the "most important factor" in determining whether a stay is appropriate. *S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07 Civ. 1188, 2008 WL 866065, at *2 (N.D. Tex. Mar. 17, 2008) (quoting *Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)). And when there are "overlapping issues", that "weigh[s] heavily in favor of granting a stay." *State Farm Lloyds v. Wood*, No. 06 Civ. 503, 2006 WL 3691115, at *2 (S.D. Tex. Dec. 12, 2006); *Dominguez*, 530 F. Supp 2d at 904-907. The relevant question is whether substantially the same facts would be proven twice, wasting resources and burdening witnesses. *S.E.C. v. Shkreli*, 15 Civ. 7175 (KAM), 2016 WL 1122029, at *4 (E.D.N.Y. Mar. 22, 2016); *S.E.C. v. Tuzman*, No. 15-cv.-7057 (AJN), ECF No. 43, (S.D.N.Y. Mar. 1, 2016) at 3, (a true and correct copy of which is attached hereto as Exhibit C); *Dominguez*, 530 F. Supp 2d at 907.

Here, the answer is unambiguously yes. The overlap between this proceeding and the criminal case is nearly complete. Both arise from the same alleged fraud schemes. Both involve Patrick James, as well as his co-conspirators Brumbergs and Graham. Both will require proof of substantially the same facts through the same witnesses. Indeed, most of the Debtors' allegations in the Patrick James Adversary Proceeding mirror the allegations in the

---

Indictment, and the jury's verdict in the criminal case is likely to have preclusive effect in this adversary proceeding.

### 2. *The Criminal Case is Proceeding Expeditiously*

Patrick James has already been indicted, which weighs in favor of a stay. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (quotation and citation omitted). For good reason: "the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved." *Transworld Mechanical, Inc.*, 886 F. Supp. at 1139; *see also Tuzman*, No. 15-cv-7057, Exhibit C, at 3 (noting that an indictment normally weighs heavily in favor of a stay absent particular facts indicating that the criminal case may not be resolved expeditiously). Moreover, there is every indication that the criminal case is proceeding expeditiously. Indeed, Judge Torres has set trial in the criminal case for July 13, 2026—just four months from now. In preparation for trial, the Government has produced (and is continuing to produce) substantial discovery material. *See* Exhibit B, Chiuchiolo Aff. at ¶ 5.

Likewise, the Government has filed criminal informations against both Peter Andrew Brumbergs and Stephen Graham—both of whom consent to the Government's motion for a stay. Their criminal cases will remain pending during the pendency of the criminal case against Patrick and Edward James, as discussed further in § 4 *infra*.

### 3. *The Debtors' Interests Do Not Outweigh the Need for a Stay*

The Debtors do not oppose this motion. The criminal case is advancing rapidly. Resolution of the criminal charges will likely narrow or resolve issues in the Patrick James

Adversary Proceeding, ultimately serving the Debtors' interests. Indeed, the criminal case will likely also have the effect of freezing and preserving assets, and resolution of the criminal case may result in the forfeiture of assets that would otherwise be the subject of the preliminary injunction motion. This factor favors a stay.

    4.  *The Defendants' Interests Support a Stay*

  A stay also protects the defendants' interests. As noted *supra*, the sentencing hearings for Defendants Brumbergs and Graham will occur after the criminal case against Patrick James and Edward James has concluded. During sentencing, Judge Torres may consider against Graham and Brumbergs any statements or admissions they are compelled to make in this proceeding, which means their Fifth Amendment rights continue to be implicated by discovery in the case at bar despite their guilty pleas in the criminal case. In other words, without a stay, the defendants in the Patrick James Adversary Proceeding—such as Brumbergs and Graham—face an impossible and unjust choice: assert their Fifth Amendment rights in civil discovery and suffer adverse inferences in this proceeding or waive those rights and jeopardize their criminal defense. Courts recognize this dilemma as a compelling reason for a stay. *See Shkreli*, 2016 WL 1122029, at *3 n.3 ("[C]riminal defendants frequently seek stays in parallel civil enforcement proceedings, often due to an adverse inference that can arise from a party's invocation of the Fifth Amendment privilege against self-incrimination."). The stay eliminates this dilemma. It allows defendants, including the defendants cooperating with the Government in the criminal case, to fully participate in civil discovery after the criminal case concludes, when Fifth Amendment concerns no longer exist. Far from burdening defendants, the stay protects their constitutional rights while ensuring fair proceedings in both

cases. This is particularly true with respect to Edward James, who has consented to a stay of discovery pending the conclusion of the criminal case against him and Patrick James in the adversary proceeding against Edward James *et alia* in this Court (AP No. 26-3005). This factor weighs in favor of a stay.

While the Court can and should consider the views of the Patrick James Defendants, those views should not outweigh the rights and interests of the other defendants, such as Brumbergs and Graham. Moreover, the views of the Patrick James Defendants should be weighed against their conduct to date: they have refused to participate in the very civil discovery process they seek to use affirmatively to their advantage. *See, e.g., S.E.C. v. Calabrigo*, No. 22 Civ. 3096 (LJL), 2022 WL 4752427, at *5 (S.D.N.Y. Sept. 30, 2022) (discussing strategic use by a defendant of his Fifth Amendment right in civil proceedings). For example, on the one hand Patrick James has asserted his Fifth Amendment rights in response to the Debtors' discovery requests. *See*, *e.g.*, Patrick James's Responses and Objections to Debtors' First Set of Requests for Production of Documents to Defendants dated January 9, 2026, a true and correct copy of which is attached hereto as Exhibit D (asserting Fifth Amendment objections to all 78 document requests); Defendants' Consolidated Objections to Debtors' First Set of Interrogatories to Defendants dated January 9, 2025 [*sic*.], a true and correct copy of which is attached hereto as Exhibit E (asserting Fifth Amendment objections to all 18 interrogatories and "declin[ing] to respond" to any). On the other hand, Patrick James has affirmatively used the discovery process to, among other things, circumvent the discovery rules in his criminal case and seek broad categories of records that would be improper in the criminal case under Rule 17(c). *See*, *e.g.*, Notice of Non-Party Subpoena *Duces Tecum* to VERCYFi LLC dated

January 29, 2026, a true and correct copy of which is attached hereto as Exhibit F, at 8 (requesting "All Communications with or relating to [among others] Stephen Graham, Michael Baker, Peter Andrew Brumbergs, Shekar Kumar, Matthew Liebson"), and 9 (requesting "All Documents and Communications between VERCYFi LLC and … (d) any government agency (SEC, DOJ, FBI, U.S. Trustee, or other regulatory authority) concerning the bankruptcy, the Document Requests You have received, alleged fraud, invoice irregularities, and any investigation of First Brands Group or the Company's factoring practices."); Exhibit B, Chiuchiolo Aff. at ¶ 7 (listing 34 subpoenas issued by the Patrick James Defendants between December 3, 2025, and January 29, 2026).

5.    *Judicial Economy Favors a Stay*

Considerations of judicial economy also weigh in favor of granting a stay.   Resolving common issues in the criminal case first will streamline this proceeding.   The criminal case's outcome will likely affect the scope and conduct of the Patrick James Adversary Proceeding, potentially establishing facts that narrow or resolve civil claims.   Requiring witnesses to testify twice regarding the same events wastes judicial resources and burdens the truth-finding process. Courts routinely recognize these efficiency concerns. *See S.E.C. v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *4 (S.D.N.Y. Nov. 9, 2012) ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered).   The parralel criminal case co-defendant Edward James has consented to a stay of discovery in connection with the adversary proceeding against him in this Court.   A stay in this adversary proceeding against Patrick James pending the

conclusion of the criminal cases against both Patrick James and Edward James avoids duplicative proceedings and conserves this Court's resources. This factor supports the Government's application.

6. *The Public Interest Strongly Supports a Stay*

The public interest in this case is paramount. *Wood*, 2006 WL 3691115 at *3 ("'[T]he public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant.'") (citation omitted). Allowing unfettered civil discovery would undermine the careful balance struck by Congress in the Federal Rules of Criminal Procedure. Criminal discovery is purposefully limited to prevent three specific harms: perjury and manufactured evidence; witness intimidation; and unfair surprise at trial. *Tuzman*, 15-cv-70577057, Exhibit C, at 3-4 (internal citations and quotations omitted). These are not abstract concerns. Broad civil discovery allows criminal defendants to preview the prosecution's case, learn witness identities, and tailor testimony accordingly—all while invoking the Fifth Amendment to avoid reciprocal disclosure. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070-72 (C.D. Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from

harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

The asymmetry here would be stark. Patrick James would depose witnesses (including cooperating co-conspirators whose statements the government need not produce until trial under 18 U.S.C. § 3500), propound interrogatories, and submit requests for admission—all while refusing to answer questions himself. The Debtors would be powerless to obtain reciprocal discovery because of Patrick James's certain invocation of Fifth Amendment rights. *See Calabrigo*, 2022 WL 4752427, at *5 (S.D.N.Y. Sept. 30, 2022) (discussing strategic use by a defendant of his Fifth Amendment right in civil proceedings); *Nicholas*, 569 F. Supp. 2d at 1070 (noting that when defendants invoke Fifth Amendment rights "the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants"). This is precisely the circumvention of criminal discovery rules that courts consistently reject. *See In re Eisenberg,* 654 F. 2d 1107, 1113 (5th Cir. 1981) (Liberal discovery procedures are not to be used as a back door to access information beyond the reach of criminal discovery); *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit."); *SEC v. Beacon Hill Asset Mgmt. LLC*, 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) ("The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Bd. of Governors v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("A litigant should not be allowed

to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery.").

The public also has a strong interest in ensuring that cooperating witnesses can fulfill their obligations without being subjected to premature depositions that may affect their willingness to testify. Brumbergs and Graham have entered into cooperation agreements with the government. Forcing them to testify now—before the criminal trial—could compromise their cooperation, undermine the criminal prosecution, and discourage future cooperators from coming forward. That concern is underscored here, where Brumbergs and Graham are also defendants in the Patrick James Adversary Proceeding.

Therefore, to avoid circumvention of the criminal discovery restrictions, including the provisions designed to prevent a defendant from tailoring his testimony and obtaining asymmetrical discovery, and because neither Patrick James nor any other defendant will be prejudiced in preparing and defending themselves, this factor weighs in favor of the United States' motion.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that its motion to intervene for the limited purpose of seeking a stay of discovery in the Patrick James Adversary Proceeding until the conclusion of the Criminal Case be granted.

Dated: March ~~12~~23, 2026

Respectfully submitted,

JOHN G.E. MARCK
Acting United States Attorney


By:   /s/ Paul B. Moore
Paul B. Moore
Assistant United States Attorney
Attorney-in-Charge
Texas Bar No. 24032755
Southern District No. 802542
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9779
Fax: (713) 718-3300
E-mail: Paul.Moore@usdoj.gov

ATTORNEYS FOR THE
UNITED STATES OF AMERICA

### CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the United States conferred with the Patrick James Defendants' counsel, Scott Hartman, by email on March 6, 2026, regarding the relief requested in this Motion.   The Patrick James Defendants oppose the relief sought in this Motion.

I hereby certify that counsel for the United States conferred with Debtors' counsel, Robert Berezin, by email on March 10, 2026, regarding the relief requested in this Motion. The Debtors support a stay of discovery for 60 days and take no position on a stay going beyond 60 days.

I hereby certify that counsel for the United States conferred with the Edward James Defendants' counsel, David Shargel, by email on March 6 and 9, 2026, regarding the relief requested in this Motion.   The Edward James Defendants do not oppose the relief sought in this Motion and requested the following statement of their position be included here:

"Edward James does not oppose the government's request to stay discovery but respectfully urges the Court to go further and stay the adversary proceeding in its entirety.   As the recently filed counterclaims, crossclaims, motion for judgment on the pleadings by Onset, and the motion to dismiss filed by other defendants make clear, motion practice in this matter will be substantial. Requiring the parties to litigate complex legal questions while stopping short of

---

~~THE~~ UNITED STATES OF AMERICA'S AMENDED MOTION TO INTERVENE
AND STAY DISCOVERY AND SUPPORTING MEMORANDUM OF LAW                                    PAGE 21

discovery would be an inefficient use of the Court's and parties' resources — including the estate's resources, which are already severely strained by the demands of multiple adversary proceedings, an ongoing mediation, and the broader administration of the bankruptcy case. Furthermore, given the number of parties and claims involved, permitting only a portion of the adversary proceeding to go forward creates a risk of inconsistent outcomes."

I hereby certify that counsel for the United States conferred with the respective counsel for Stephen Graham, Peter Brumbergs, Michael Baker, Shekhar Kumar, and Jeffries Finance LLC, by email on March 5-6, 2026, regarding the relief requested in this Motion. These parties consent to the Government's request for a stay of discovery as sought in this Motion.

I hereby certify that counsel for the United States conferred with the respective counsel for: the Onset affiliated entities; Justin Nielsen; Nielson Investments; Jonathan Gardner; JA Gardner Holdings; Dake P. Holt; Holt Investments; Todd Pederson; Yuma; Coral Dunes LLC; Seddie LLC; Asilia; Scott Miller; Joshua Tree, and the Evolution Credit Partners entities by email on March 5-6, 2026, regarding the relief requested in this Motion. These parties have no position (*i.e.*, neither consent to nor oppose) regarding the Government's request for a stay of discovery as sought in this Motion.

/s/ *Paul B. Moore*
Paul B. Moore
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served on March 1223, 2026, by the Court's ECF system or other electronic means on the service list therein.

/s/ *Paul B. Moore*
Paul B. Moore
Assistant United States Attorney

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIRST BRANDS GROUP LLC, *et al.*, | § | CASE NO. 25-90399 (CML) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |

| | | |
|---|---|---|
| FIRST BRANDS GROUP LLC *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Adversary Proc. No. 25-03803 (CML) |
| PATRICK JAMES, THE PATRICK JAMES TRUST, ALBION REALTY, LLC, ALESTER TECHNOLOGIES LLC, BATTERY PARK HOLDINGS LLC, LARCHMONT LLC, PEGASUS AVIATION, LLC, MICHAEL BAKER, PETER ANDREW BRUMBERGS, STEPHEN GRAHAM, JOHN AND JANE DOE(S) 1-100, and ABC CORPORATION(S) 1-100, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Upon consideration of the United States of America's Amended Motion to Intervene and Stay Discovery and Supporting Memorandum of Law ("Motion"), ECF Dkt. No. 167, the Court finds that good cause exists for such intervention and discovery stay and the Motion is hereby **GRANTED**. This Court has the inherent power to enter a stay of proceedings in the

---

[1] A complete list of Debtors in these chapter 11 cases may be obtained on the website of Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

---

**ORDER**            **PAGE 1**

Case 25-90980 Document 866 Filed in TXSB on 07/24/26 Page 256 of 256

interest of justice, or in order to advance the interest of judicial economy or to preserve the resources of the parties. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

In light of the reasons set forth in the Motion, the Court hereby **STAYS** all discovery in this case, pending the resolution of the parallel criminal case, *United States* v. *Patrick James & Edward James*, 26 Cr. 29 (AT) (S.D.N.Y.). The parties are directed to file as to the status of the parallel criminal case no later than July 13, 2026, and advise whether any modification of this stay is warranted.

Dated: _____

_____
HON. CHRISTOPHER LOPEZ
United States Bankruptcy Judge

---