UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FORTRESS VALUE RECOVERY FUND I LLC, <br><br>                 Plaintiff, <br><br>        -against- <br><br> COLUMBUS COMPONENTS GROUP, LLC, CCG HOLDINGS, LLC, PJ MANAGEMENT GROUP, LLC, HAWTHORN MANUFACTURING CORPORATION, and PATRICK JAMES, <br><br>                 Defendants. | Civ. <br><br> **COMPLAINT** |

Plaintiff Fortress Value Recovery Fund I LLC ("Plaintiff"), by its counsel Chadbourne & Parke LLP, as and for its complaint herein against Defendants Columbus Components Group, LLC ("CCG"), CCG Holdings, LLC ("CCG Holdings"), PJ Management Group, LLC ("PJ"), Hawthorn Manufacturing Corporation ("Hawthorn"), and Patrick James ("James"), respectfully alleges as follows:

**NATURE OF THE ACTION**

1. In December 2004, Plaintiff's predecessor-in-interest issued a $6 million loan to CCG. CCG Holdings and PJ executed guarantees at that time which obligated them to make full and prompt payment when due of all of CCG's obligations under the loan agreement. At all relevant times, Hawthorn and James exerted total control over, and were the alter egos of, CCG, CCG Holdings, and PJ.

2. CCG defaulted on its payment obligations under the loan, and the entire amount of the $6 million principal, as well as $6,460,333.34 in accrued interest and contractually mandated

FBG_CH1_00097002

**DEBTORS' EXHIBIT NO. 18**
**Page 1 of 14**

fees, remains due and outstanding.  Plaintiff brings this action against all defendants to recover damages resulting from CCG's breach of its loan agreement, and PJ and CCG Holdings' breaches of their unconditional guarantees.

## THE PARTIES

3.  Plaintiff is a limited liability company organized under the laws of Delaware with its principal place of business at 1345 Avenue of the Americas, 46th floor, New York, New York 10105.  Plaintiff was known as D.B. Zwirn Special Opportunities Fund, L.P. ("DBZ") until DBZ converted to a limited liability company and changed its name to Fortress Value Recovery Fund I LLC in 2009.

4.  On information and belief, Defendant CCG is a limited liability company organized under the laws of Ohio with its principal place of business at 2020 15th Street, Columbus, Indiana 47201.

5.  On information and belief, Defendant CCG Holdings is a limited liability company organized under the laws of Ohio with its principal place of business at 30505 Bainbridge Road, Suite 100, Solon, Ohio 44139.

6.  On information and belief, Defendant PJ is a limited liability company organized under the laws of Ohio with its principal place of business at 30505 Bainbridge Road, Suite 100, Solon, Ohio 44139.  PJ Management was formerly known as PMJ Management, LLC d/b/a Viking Management.

7.  On information and belief, Defendant Hawthorn is a corporation organized under the laws of Ohio with its principal place of business at 30505 Bainbridge Road, Suite 100, Solon,

2

FBG_CH1_00097003

Ohio 44139.   On further information and belief, Hawthorn is also known as Viking Industries, LLC.

8.   On information and belief, Defendant James is a natural person residing at 15676 North Ridge, Novelty, Ohio 44072.

## JURISDICTION AND VENUE

9.   The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as it involves citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

10.   Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred, and a substantial part of the property that is the subject of this action is situated in, this District.   Furthermore, the agreements at issue herein provide that CCG, CCG Holdings and PJ agree that this action may be commenced in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.   **CCG Defaulted On Its Loan From Plaintiff**

11.   On or about December 9, 2004, Plaintiff's predecessor-in-interest, Brantley Mezzanine Finance, LLC ("Brantley") and CCG executed a Note Purchase Agreement pursuant to which Brantley loaned CCG $6 million (originally, and as subsequently amended, the "Note Purchase Agreement").   A true and correct copy of the Note Purchase Agreement is attached hereto as Exhibit A.

3

FBG_CH1_00097004

12.  Plaintiff extended a loan to Brantley pursuant to a Senior Finance Agreement dated September 17, 2004.  Brantley defaulted on that loan in or around early 2007 and, in April of that year, Plaintiff notified Brantley that it would exercise its right under the Senior Finance Agreement to assume all of Brantley's right, title and interest in the Note Purchase Agreement, and every other agreement concerning Brantley's investment in CCG.  Plaintiff thus became Brantley's successor-in-interest under the agreements described herein and, accordingly, Brantley and Plaintiff will hereinafter be jointly referred to as Plaintiff.

13.  CCG is and has been in default of its payment obligations under the Note Purchase Agreement.

14.  Specifically, CCG ceased making its required monthly interest payments to Plaintiff in or around February 2009.  Plaintiff notified CCG of this payment default in a letter dated April 1, 2009.  However, CCG failed to cure its payment defaults in the following months and, on August 13, 2009, Plaintiff exercised its right under the Note Purchase Agreement to declare all obligations under that agreement immediately due and payable, including CCG's obligation to repay the principal amount of the loan in full.

15.  CCG made one additional, de minimus payment to Plaintiff in December 2009, but the entire $6 million principal amount of the loan currently remains due and outstanding.

16.  The Note Purchase Agreement also required CCG to pay Plaintiff a $4.5 million success fee at the time it repays the loan because CCG failed to repay the loan in full on December 9, 2009.  This success fee has never been paid.

4

FBG_CH1_00097005

17. The entire $6 million principal amount of the loan, accrued interest in an amount of not less than $1,960,333.34, and the $4.5 million success fee, are all currently due and owing to Plaintiff under the Note Purchase Agreement. Accordingly, CCG is currently indebted to Plaintiff in an amount of not less than $12,460,333.34.

**B.  CCG Holdings And PJ Guaranteed Payment
Of The Note Purchase Agreement**

18. CCG Holdings is the record and beneficial owner of all of the issued and outstanding member interests of CCG. PJ purported to provide management services to CCG in exchange for a monthly fee.

19. CCG Holdings and PJ derived substantial benefit and advantage from the financial accommodations to CCG set forth in the Note Purchase Agreement.

20. Accordingly, on or about December 9, 2004, the same date as the execution of the Note Purchase Agreement, CCG Holdings and PJ each entered a separate guaranty agreement with Plaintiff (the "CCG Holdings Guaranty" and the "PJ Guaranty," respectively). True and correct copies of the CCG Holdings Guaranty and the PJ Guaranty are attached hereto as Exhibits B and C.

21. Neither CCG Holdings nor PJ has ever made any payment to Plaintiff in connection with their guarantees.

**C.  Hawthorn And James Controlled CCG, CCG Holdings, And
PJ, And Their Exercise Of That Control Injured Plaintiff**

22. On information and belief, James is the sole or controlling owner, directly or indirectly, of CCG, CCG Holdings, PJ, and Hawthorn.

5

FBG_CH1_00097006

23. Hawthorn and James exercised control over the daily operations of CCG, CCG Holdings, and PJ. On information and belief, Hawthorn and James exercised such extensive control over CCG, CCG Holdings, and PJ, that those entities effectively lacked any mind, will, or existence of their own. On further information and belief, CCG, CCG Holdings, and PJ were thus a mere façade for the operations of Hawthorn and James.

24. Hawthorn and James were able to assert this control because of James' majority ownership interest in those entities, and because James also served as the Chairman of each of CCG, CCG Holdings, PJ, and Hawthorn.

25. The illusory nature of the supposed distinctions between James, Hawthorn, CCG, CCG Holdings, and PJ is evidenced by, among other things, the fact these entities shared management and employees. For example, Jay Schabel served as the President of CCG and PJ, and as the Chief Executive Officer of Hawthorn. Charles Schiavello performed management services on behalf of CCG and other entities owned by James.

26. CCG Holdings, PJ, and Hawthorn also all shared the same office address at 30505 Bainbridge Road, Suite 100, Solon Ohio 44139.

27. On information and belief, none of CCG, CCG Holdings, PJ, and Hawthorn observed corporate formalities or maintained separate books and records.

28. On information and belief, CCG, CCG Holdings, and PJ suffered from grossly inadequate capitalization, as evidenced by their failure to satisfy their undisputed payment obligations to Plaintiff.

6

FBG_CH1_00097007

**DEBTORS' EXHIBIT NO. 18**
**Page 6 of 14**

29. On information and belief, one reason James created this web of affiliated companies was for the purpose of transferring funds from CCG, which was heavily indebted to Plaintiff and others, to management companies such as Hawthorn and PJ. On further information and belief, James diverted tens of thousands of dollars each month in "management fees" from CCG to PJ and/or other affiliated companies, such as Hawthorn.

30. Prior to 2009, the financial information CCG provided to Plaintiff reflected that Plaintiff's loan was adequately secured and that CCG was not in violation of any of the covenants contained in the Note Purchase Agreement. On information and belief, those representations were false. On further information and belief, CCG had certain liabilities that it intentionally failed to disclose to Plaintiff.

31. CCG was not permitted to make management fee payments to its affiliates while in default of the Note Purchase Agreement. On information and belief, Plaintiff intentionally withheld accurate information concerning its financial condition from Plaintiff in order to prevent the occurrence of an event of default under the Note Purchase Agreement, so that CCG could continue paying management fees to PJ and/or Hawthorn. On further information and belief, PJ, Hawthorn and/or James used these management fees for their own purposes, rather than for any purpose relating to the business of CCG.

32. On information and belief, CCG undertook these actions at the instruction of Hawthorn and/or James. Indeed, throughout the course of Plaintiff's relationship with CCG, CCG Holdings, and PJ, its primary contacts -- including James, Jeffrey Lynn, Jay Schabel, and Richard Adante -- represented that they were employees of Hawthorn.

7

FBG_CH1_00097008

33. Hawthorn and James thus exerted control over CCG, CCG Holdings, and PJ in such a manner as to commit fraud or an unlawful act against Plaintiff.

34. On information and belief, this deception was part of a pattern in which Hawthorn and James used the web of entities they controlled in order to defraud the creditors of those entities. For example, a creditor of Red Rock Stamping, LLC ("Red Rock") -- another corporation owned and controlled by Hawthorn and James -- brought an action in this Court on the basis of allegations that Hawthorn and James fraudulently misrepresented the solvency of Red Rock so that Red Rock could continue paying management fees to Hawthorn and an entity identified as "PJ Management." See Tristate Capital Bank v. Red Rock Stamping, LLC, Hawthorn Manufacturing Corporation, Columbus Components Group, LLC, Patrick James, et al., No. 09-cv-01455 (N.D. Ohio).

35. On information and belief, Hawthorn and James' pattern of deception has resulted in their closure of at least ten manufacturing plants in the last twelve years. On further information and belief, a number of those closures have left substantial unpaid creditor claims, despite the fact that Hawthorn and/or James received substantial management fees and/or salary up until the time those businesses were shuddered.

36. Plaintiff was injured as a result of the control that Hawthorn and James exerted over CCG, CCG Holdings, and PJ.

37. James and Hawthorn should therefore be considered the alter egos of, and Plaintiff should be entitled to pierce the corporate veils of, CCG, CCG Holdings, and PJ.

FBG_CH1_00097009

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Breach of Note Purchase Agreement -
Plaintiff Against CCG, Hawthorn and James)

38.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37 hereof as though fully set forth herein.

39.  As a result of CCG's above-described failures to make the payments required by the Note Purchase Agreement, CCG has breached the Note Purchase Agreement.

40.  The Note Purchase Agreement provides that it shall continue in full force and effect until "the note has been indefeasibly repaid in cash in full . . . ." Ex. A, § 13.1.

41.  The Note Purchase Agreement provides that all "costs and expenses including, without limitation, reasonable attorneys' fees and disbursements incurred by the Purchaser . . . in all efforts made to enforce payment of any Obligation . . . in connection with the . . . enforcement of this Agreement . . . shall be paid on demand by [CCG] and until paid shall be added to and become a part of [its] Obligations" under the Note Purchase Agreement. Ex. A, § 16.9.

42.  CCG's breaches of the Note Purchase Agreement were the proximate cause of, and CCG is liable for, damages to Plaintiff in an amount of not less than $12,460,333.34, plus any and all attorneys' fees and costs incurred by Plaintiff in connection with this action.

43.  As the alter egos of CCG, and on the basis of the allegations set forth above, Hawthorn and James are also the proximate cause of, and liable to Plaintiff for, damages in an

FBG_CH1_00097010

amount of not less than $12,460,333.34, plus any and all attorneys' fees and costs incurred by Plaintiff in connection with this action.

**SECOND CLAIM FOR RELIEF**
**(Breach of CCG Holdings Guaranty -**
**Plaintiff Against CCG Holdings, Hawthorn and James)**

44. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 hereof as though fully set forth herein.

45. In order to induce Plaintiff to enter into the Note Purchase Agreement, CCG Holdings guaranteed to Plaintiff the due and punctual payment of all of CCG's obligations under the Note Purchase Agreement.

46. The CCG Holdings Guaranty provided that CCG Holdings "unconditionally guarantees the full and prompt payment to [Plaintiff], whether when due, upon demand, at maturity or by reason of acceleration or otherwise and at all times thereafter, of any and all of the Secured Obligations." Ex. B, § 1(a).

47. CCG Holdings' secured obligations include, <u>inter alia</u>, "(i) all Obligations as set forth in the Note Purchase Agreement, [and] (ii) all costs and expenses (including, without limitation, to the extent permitted by law, reasonable attorneys' fees and other legal expenses), incurred by [Plaintiff] in the enforcement and collection of any of the liabilities, obligations or indebtedness arising under this Guaranty . . . ." Ex. B, § 1(d).

48. The nature of the CCG Holdings Guaranty was continuing, absolute and unconditional, and the Guaranty did not impose any cap on CCG Holdings' liability. Ex. B, § 3.

10

FBG_CH1_00097011

**DEBTORS' EXHIBIT NO. 18**
**Page 10 of 14**

49. The CCG Holdings Guaranty "shall remain in full and effect until all of the Secured Obligations shall be finally and irrevocably paid in full and the commitments under the Note Purchase Agreement have been terminated." Ex. B, § 9.

50. CCG is in default of its obligations under the Note Purchase Agreement, and it is presently indebted to Plaintiff in an amount of not less than $12,460,333.34 thereunder.

51. By failing to make payment when due of CCG's obligations under the Note Purchase Agreement, CCG Holdings breached the CCG Holdings Guaranty.  CCG Holdings is therefore liable to Plaintiff in an amount of not less than $12,460,333.34, plus any and all attorneys' fees and costs incurred by Plaintiff in connection with this action.

52. As the alter egos of CCG Holdings, and on the basis of the allegations set forth above, Hawthorn and James are also the proximate cause of, and liable to Plaintiff for, damages in an amount of not less than $12,460,333.34, plus any and all attorneys' fees and costs incurred by Plaintiff in connection with this action.

**THIRD CLAIM FOR RELIEF**
**(Breach of PJ Guaranty -**
**Plaintiff Against PJ, Hawthorn and James)**

53. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 52 hereof as though fully set forth herein.

54. In order to induce Plaintiff to enter into the Note Purchase Agreement, PJ guaranteed to Plaintiff the payment of CCG's obligations under the Note Purchase Agreement.

55. The PJ Guaranty provided that PJ "unconditionally guarantees the full and prompt payment to [Plaintiff], whether when due, upon demand, at maturity or by reason of

11

FBG_CH1_00097012

acceleration or otherwise and at all times thereafter, of any and all of the Secured Obligations." Ex. C, § 1(a).

56. PJ's secured obligations include, inter alia, "(i) all Obligations as set forth in the Note Purchase Agreement, [and] (ii) all costs and expenses (including, without limitation, to the extent permitted by law, reasonable attorneys' fees and other legal expenses), incurred by [Plaintiff] in the enforcement and collection of any of the liabilities, obligations or indebtedness arising under this Guaranty . . . ." Ex. C, § 1(d).

57. The PJ Guaranty imposed a $3 million cap on the amount of PJ's liability under its guaranty (id.), but the nature of the PJ Guaranty was otherwise continuing, absolute and unconditional. Ex. C, § 3.

58. The PJ Guaranty "shall remain in full and effect until all of the Secured Obligations shall be finally and irrevocably paid in full and the commitments under the Note Purchase Agreement have been terminated." Ex. C, § 9.

59. CCG is in default of its obligations under the Note Purchase Agreement, and it is presently indebted to Plaintiff in an amount of not less than $12,460,333.34 thereunder.

60. By failing to make payment when due of CCG's obligations under the Note Purchase Agreement, PJ breached the PJ Guaranty. PJ is therefore liable to Plaintiff in an amount of not less than $3 million.

61. As the alter egos of PJ, and on the basis of the allegations set forth above, Hawthorn and James are also the proximate cause of, and liable to Plaintiff for, damages in an amount of not less than $3 million.

12

FBG_CH1_00097013

### FOURTH CLAIM FOR RELIEF
#### (Unjust Enrichment –
#### Plaintiff Against Hawthorn and James)

62. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 61 hereof as though fully set forth herein.

63. On information and belief, Hawthorn and James induced Plaintiff to enter the Note Purchase Agreement.

64. The execution of that agreement conferred a benefit upon Hawthorn and James. In particular, Hawthorn and James benefitted from the $6 million loaned to CCG because, as alleged in the paragraphs above, CCG was their alter ego, which they controlled in a manner that redounded to their financial advantage.

65. Hawthorn and James had knowledge they were receiving such benefit and that Plaintiff's loan was made with the expectation that it would be repaid.

66. On information and belief, Hawthorn and James did not provide any consideration in exchange for their receipt and retention of the benefit conferred by Plaintiff's execution of the Note Purchase Agreement.

67. By virtue of their retention of this benefit, Hawthorn and James were unjustly enriched at the expense of Plaintiff, and the circumstances are such that equity and good conscience require Hawthorn and James to make restitution to Plaintiff.

68. Hawthorn and James are therefore liable to Plaintiff in an amount to be determined at trial, but believed to be not less than $6 million.

13

FBG_CH1_00097014

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that judgment be entered as follows:

(i)     against CCG, CCG Holdings, Hawthorn, and James, awarding Plaintiff an amount of not less than $12,460,333.34, plus any and all attorneys' fees and costs incurred by Plaintiff in connection with this action;

(ii)    against PJ, awarding Plaintiff an amount of not less than $3 million; and

(iii)   awarding Plaintiff pre- and post-judgment interest at the maximum rate allowable by law; and

(iv)    granting Plaintiff such other further relief which this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this action which are so triable.

Dated:   New York, New York
         January 26, 2011

CHADBOURNE & PARKE LLP


By   _____/s/ Scott S. Balber_____
              Scott S. Balber
            A Member of the Firm
            Robert E. Grossman
         Attorneys for Plaintiff
         30 Rockefeller Plaza
         New York, NY  10112
         Tel. (212) 408-5100
         Fax (212) 541-5369
         sbalber@chadbourne.com
         rgrossman@chadbourne.com

14

FBG_CH1_00097015