# EXHIBIT 38

**Morgan Lewis**

INSIGHT

# RECENT BANKRUPTCY CASES AND MANAGING FRAUD RISK

February 10, 2026

Recent high-profile bankruptcy filings underscore how rapidly financial distress can escalate when aggressive growth strategies, complex financing structures, and weak controls intersect. The *Tricolor Auto Group* and *First Brands Group* cases illustrate recurring themes that lenders, investors, and advisors should be watching closely—particularly around off-balance sheet financing, information asymmetry, and fraud risk.

## KEY TAKEAWAYS

### Fraud Risk Often Hides in Complexity, Not Novelty

Both *Tricolor* and *First Brands* relied on familiar financing tools—funded indebtedness, securitizations, factoring, inventory monetization, and supply-chain financing. None of these structures were inherently problematic. Instead, risk accumulated as layers of financing were stacked across multiple entities and counterparties on and off the balance sheet under the tight day-to-day control of the founders/owners, creating opacity and weakening oversight.

In Tricolor's case, customer installment loans were allegedly double pledged, repackaged, or sold multiple times, while inventory collateral remained on borrowing bases after vehicles were sold. At First Brands, receivables and inventory were allegedly used simultaneously to support on-balance sheet debt, off-balance sheet SPV financing, and factoring arrangements—often without full disclosure.

### Off-Balance Sheet Financing Can Materially Distort Leverage and Liquidity

A key lesson from *First Brands* is how off-balance sheet obligations can mask true leverage until liquidity evaporates. Although the company was already highly levered on a reported basis, billions of dollars in inventory financing, factoring, and supply-chain obligations were allegedly excluded from traditional debt metrics. Once these obligations surfaced, confidence collapsed quickly, trading values deteriorated, and refinancing options disappeared. This dynamic highlights the importance of scrutinizing not just headline leverage ratios, but also the economic substance of transactions that may sit outside conventional debt definitions.

### Borrowing Base Integrity Remains a Critical Pressure Point

AUTHORS



**STEPHAN E. HORNUNG**
Partner
New York



**EDWIN E. SMITH**
Senior Consultant
Boston / New York



**KATHERINE G. WEINSTEIN**
Partner
New York



**PENELOPE L. CHRISTOPHOROU**
Partner
New York



**JASON R. ALDERSON**
Of Counsel
New York

## RELATED RESOURCES

### PRACTICES

* > **Bankruptcy, Restructuring & Insolvency**

FBG_CH1_00093492

In both cases, alleged manipulation of borrowing base data played a central role. Tricolor's chapter 7 trustee has alleged widespread falsification of loan performance data, inflated collateral values, double pledging, and fabricated receivables designed to defeat audits. These allegations reinforce a long-standing reality: asset-based lending structures are only as reliable as the controls supporting collateral reporting. Weak verification processes, overreliance on borrower-provided data, or infrequent audits can allow problems to compound undetected.

### Documentation Gaps Can Magnify Downstream Disputes

Recent filings also highlight how credit documentation can either mitigate or exacerbate risk. Broad carve-outs for securitizations, receivables financings, or other off-balance sheet transactions—particularly when paired with general debt or lien baskets—can create unintended exposure if not carefully calibrated. Ambiguities around "true sale" treatment, recourse, permitted investments, affiliate transactions, and mandatory prepayments may only become visible once multiple creditor groups assert competing claims in bankruptcy. In both cases, litigation among lenders, factors, and other stakeholders is now central to determining value and priority.

### Early Warning Signs Often Precede Rapid Collapse

In hindsight, warning signals were present well before each filing. For First Brands, the stalled quality-of-earnings process, sudden CDS activity, and sharp secondary market price declines foreshadowed distress. For Tricolor, aggressive growth coupled with tight insider control and heavy reliance on structured financing created conditions where misconduct could allegedly persist. These cases reinforce the value of monitoring market signals, audit delays, governance red flags, and unexplained shifts in financing behavior.

## LOOKING AHEAD: DILIGENCE, DISCIPLINE, AND DOCUMENTATION MATTER MORE THAN EVER

As private credit asset-based lending and structured finance continue to expand, these cases serve as a reminder that growth in complexity must be matched by growth in controls and basic due diligence steps for perfecting and achieving priority for security interests. Lenders and investors should consider heightened scrutiny of off-balance sheet arrangements, more robust diligence around receivables and inventory including security interest perfection and priority steps, and tighter drafting around permitted financings and leverage calculations. In an environment where liquidity can evaporate quickly, proactive risk management—rather than reactive enforcement—may be the most effective tool for preserving value when market conditions turn.

© 2026 Morgan, Lewis & Bockius LLP. Morgan Lewis is a registered trademark of Morgan, Lewis & Bockius LLP. All rights reserved.

FBG_CH1_00093493