# EXHIBIT 52

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>TRIBUNE COMPANY, et al.,<br><br>                  Debtors. | Chapter 11<br><br>Cases No. 08-13141 (KJC)<br>Jointly Administered |

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, on behalf of TRIBUNE COMPANY, et al.,

                                   Plaintiff,

                         -against-

DENNIS J. FITZSIMONS, ENRIQUE HERNANDEZ JR., BETSY D. HOLDEN, ROBERT S. MORRISON, WILLIAM A. OSBORN, CHRISTOPHER REYES, DUDLEY S. TAFT, MILES D. WHITE, JEFFREY CHANDLER, ROGER GOODAN, WILLIAM STINEHART JR., CHANDLER BIGELOW, DONALD C. GRENESKO, MARK W. HIANIK, DANIEL G. KAZAN, CRANE H. KENNEY, THOMAS D. LEACH, LUIS E. LEWIN, R. MARK MALLORY, RUTHELLYN MUSIL, HARRY AMSDEN, STEPHEN D. CARVER, THOMAS S. FINKE, ROBERT GREMILLION, DAVID DEAN HILLER, TIMOTHY P. KNIGHT, TIMOTHY J. LANDON, RICHARD H. MALONE, DURHAM J. MONSMA, IRVING L. QUIMBY, JOHN E. REARDON, SCOTT C. SMITH, JOHN J. VITANOVEC, KATHLEEN M. WALTZ, DAVID D. WILLIAMS, JOHN D. WORTHINGTON IV, CHANDLER TRUST NO. 1, CHANDLER TRUST NO. 2, ROBERT R. McCORMICK FOUNDATION, CANTIGNY FOUNDATION, SAMUEL ZELL, EQUITY GROUP INVESTMENTS, L.L.C., EGI-TRB, L.L.C., SAM INVESTMENT TRUST, TOWER CH, L.L.C., TOWER DC, L.L.C., TOWER DL, L.L.C., TOWER EH, L.L.C., TOWER GREENSPUN DGSPT, LLC, TOWER GREENSPUN JGGSTP, LLC, TOWER GREENSPUN SGFFT, LLC, TOWER GREENSPUN, L.L.C., TOWER HZ, L.L.C., TOWER JB, L.L.C., TOWER JK, L.L.C., TOWER JP, L.L.C., TOWER JS, L.L.C., TOWER KS, L.L.C., TOWER LL, L.L.C., TOWER LM, L.L.C., TOWER LZ, L.L.C., TOWER MH, L.L.C., TOWER MS, L.L.C., TOWER MZ, L.L.C., TOWER NL, L.L.C., TOWER PH, L.L.C., TOWER PT, L.L.C., TOWER SF, L.L.C., TOWER TT, L.L.C., TOWER VC, L.L.C., TOWER WP, L.L.C., GREATBANC TRUST COMPANY, DUFF & PHELPS, LLC, VALUATION RESEARCH CORPORATION, DOES 1-25, MORGAN STANLEY & CO. INC., MORGAN STANLEY CAPITAL SERVICES, INC. and the defendants listed in the attached Exhibit A,

                         -and-

THE DFA INVESTMENT TRUST COMPANY, DFA INVESTMENT DIMENSIONS GROUP, INC., THE ALLIANCE BERNSTEIN PORTFOLIOS, FRANK W. DENIUS, DONALD M. HINMAN JR., LEWIS TAMAN, and WILLIAM F. WARCHOL, on behalf of themselves and a class of similarly situated persons and legal entities, including but not limited to those listed in the attached Exhibit A,

                                   Defendants.

Adversary Proceeding
No. 10-54010 (KJC)

## FIRST AMENDED COMPLAINT

Plaintiff, The Official Committee of Unsecured Creditors ("Plaintiff" or the "Committee") of the debtors and debtors-in-possession in the above-captioned Chapter 11 cases (collectively, "Debtors"),[1] on behalf of the Debtors' Chapter 11 estates, respectfully alleges as follows:

## NATURE OF THE ACTION

1. The Committee brings this action to hold accountable the persons and entities responsible for crippling the Tribune Company ("Tribune" or "the Company"), once one of the country's most venerable companies. Through a leveraged buyout transaction ("LBO" or "LBO Transaction") tainted from start to finish, that venerable company lost billions of dollars

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

in value between the closing of the LBO Transaction and the Company's bankruptcy filing less than a year later. This LBO Transaction is among the worst in American corporate history. One of the engineers of the deal referred to it in the following apt terms: "This is like carrying a fat person up Everest, hopefully it doesn't kill us." Predictably, the LBO Transaction killed the Company soon enough.

2.      The LBO was designed to cash out the large shareholders of Tribune, and to line the pockets of defendant Samuel Zell ("Zell") and Tribune's directors and officers. Faced with a severe decline in Tribune's stock price, starting in 2005, and continuing through the relevant time period, certain large shareholders of Tribune that collectively owned 33% of its shares began exerting extreme pressure on the Company to take prompt action to maximize the value of their investment.

3.      In response to this pressure from the dominant shareholders, in September 2006, Tribune began a strategic review process to solicit and consider proposals that would alter the Company's future. In February 2007, billionaire Zell masterminded a plan in which he used very little of his own assets to acquire control of Tribune while shifting the risk that the transaction would fail onto the Company's shareholders. Zell's plan used an employee stock ownership plan ("ESOP") as the takeover vehicle, and leveraged Tribune to the hilt to buy out all of its publicly owned shares. To accomplish his plan, Zell induced those charged with running and protecting Tribune to turn a blind eye to the unsustainable level of debt that would inevitably cause Tribune's demise. Among other things, Zell succeeded by enticing Tribune's directors and officers with tens of millions of dollars in stock sale proceeds and special incentives to close his deal.

3