**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*,[1] | Case No. 25-90399 (CML) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF THE CHUBB COMPANIES TO JOINT CHAPTER 11 PLAN OF**
**FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS**

Indemnity Insurance Company of North America, ACE American Insurance Company, Chubb Indemnity Insurance Company, Illinois Union Insurance Company, ACE Fire Underwriters Insurance Company, Federal Insurance Company, Great Northern Insurance Company, Indemnity Insurance Corporation of North America, Executive Risk Indemnity Inc., Westchester Fire Insurance Company, Westchester Surplus Lines Insurance Company, Vigilant Insurance Company, Chubb Custom Insurance Company, and each of their respective U.S.-based affiliates and successors (collectively, the "Chubb Companies"), by and through their undersigned counsel, hereby file this objection (the "Objection") [2] to the *Joint Chapter 11 Plan of First Brands, Group, LLC and Certain Affiliated Debtors* [Docket No. 3019] (the "Plan"),[3] and in support of this Objection, the Chubb Companies respectfully state as follows:

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]    The Chubb Companies' deadline to object to the Plan was extend by agreement up to and including 5:00 p.m. (prevailing Central Time) on July 24, 2026.

[3]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan.

**BACKGROUND**

A.     **The Bankruptcy Case**

1.     On September 28, 2025 (the "Petition Date"), First Brands Group, LLC and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").

B.     **Plan Procedural History**

2.     On June 5, 2026, the FBG Debtors filed the initial version of the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 2907), which was amended at Docket No. 2981.

3.     Also, on June 5, 2026, the FBG Debtors filed the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 2912) (as amended, the "Disclosure Statement"), which was amended at Docket No. 2982.

4.     On June 6, 2026, the FBG Debtors filed an emergency motion seeking conditional approval of the Disclosure Statement and approval of solicitation procedures (Docket No. 2914) (the "Disclosure Statement Motion").

5.     A hearing on the Disclosure Statement Motion took place on June 12, 2026 and thereafter the Bankruptcy Court entered an order (Docket No. 2990) (the "Disclosure Statement Order") approving the Disclosure Statement Motion.

6.     On June 16, 2026, the FBG Debtors filed the Plan.

7.     On June 17, 2026, the FBG Debtors filed the solicitation version of the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3020).

8.      On June 23, 2026, the FBG Debtors filed the Plan Supplement and Liquidation Analysis (Docket No. 3046).

### C.      The Insurance Programs

9.      Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to the Debtors as named insureds.

10.     Prior to the Petition Date, the Chubb Companies and the Debtors also entered into certain written agreements in connection with the Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements").

11.     Pursuant to certain Policies and Insurance Agreements (the "ACE Insurance Program"), ACE American Insurance Company, Indemnity Insurance Company of North America, ACE Fire Underwriters Insurance Company, Westchester Fire Insurance Company, Westchester Surplus Lines Insurance Company, Illinois Union Insurance Company, ACE Property & Casualty Insurance Company, provide, *inter alia*, certain property, environmental, workers' compensation, International Advantage® Package, modular general package, crime package, automobile liability, commercial liability, umbrella excess, directors' and officers', marine cargo, accident and health, cyber, fidelity, general liability, employment practices liability, fiduciary liability, private company, inland marine, errors and omissions, excess fire, chemical, casualty, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded

3

deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (collectively, the "ACE Program Obligations").

12.     Pursuant to certain other Policies and any agreements related thereto (collectively, the "Federal Insurance Program," and together with the ACE Insurance Program, the "Insurance Programs"),[4] Indemnity Insurance Company of North America, Federal Insurance Company, Chubb Indemnity Insurance Company, Great Northern Insurance Company, Vigilant Insurance Company, Executive Risk Indemnity Inc., Pacific Indemnity Company, and/or certain of their U.S.-based affiliates provides, *inter alia*, certain cargo, automobile liability, general liability, workers' compensation, crime, directors' and officers' liability, employment practices liability, special coverage, fiduciary liability, package, cargo, umbrella, kidnap, ransom and extortion liability, international, worldnet, accident blanket, export package, package, workers' compensation, employed lawyers professional liability, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (collectively, the "Federal Program Obligations," and together with the ACE Program Obligations, the "Obligations").[5]

---

[4]     The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to amend, modify or waive, any of the terms or conditions of the Insurance Programs.  Reference is made to the Insurance Programs for a complete description of their terms and conditions.

[5]     The Obligations include both monetary and non-monetary obligations that the insureds, including one or more of the Debtors, may have.

13.     The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

14.     Certain of the Obligations are secured by certain collateral, including letters of credit.  The Obligations may also be secured by other letters of credit, trusts, escrows, surety bonds, cash collateral, other paid loss deposit funds, or other amounts.

**D.     The Plan**

15.      The Plan purports to provide for the assumption of at least certain of the FBG Debtors' insurance policies and agreements while also seeking to impermissibly modify the form thereof, assigning certain rights to differing trusts, and not sufficiently addressing the FBG Debtors' obligations to insurers under such insurance policies or related agreements, or the handling of claims thereunder.  *See e.g.,* Plan, Sections 1.1, 6.2, and 11.4.

16.     With respect to insurance policies generally, Plan provides:

**(a)** Each of the FBG Debtors' Insurance Policies and any agreements, documents, or instruments related thereto, as of the Confirmation Date, shall be deemed to be and treated as executory contracts and shall be assumed by the FBG Debtors and shall continue in full force and effect thereafter in accordance with their respective terms.

**(b)** Nothing in the Plan shall alter, supplement, change, decrease, or modify the terms (including the conditions, limitations, and/or exclusions) of the FBG Debtors' Insurance Policies; *provided* that, notwithstanding anything in the foregoing to the contrary, the enforceability and applicability of the terms (including the conditions, limitations, and/or exclusions) of the Insurance Policies, and thus the rights or obligations thereof, are subject to the Bankruptcy Code and applicable law.

**(c)** All officers, managers, directors, agents, or employees who served in such capacity at any time before the Confirmation Date shall be entitled to the full benefits of the D&O Policies in effect as of, or purchased on or before, the Confirmation Date for the full term of such D&O Policies regardless of whether such officers, managers, directors, agents, and/or employees remain in such

positions as of the Confirmation Date, in each case, to the extent set forth in such D&O Policies.

**(d)** On the Confirmation Date, all rights and obligations of the FBG Debtors, if any, under the D&O Policies shall transfer to the Litigation Trust in accordance with the Plan and the Litigation Trust shall assume the FBG Debtors' obligations for administering such policies. For the avoidance of doubt, the transfer of the Insurance Rights of the FBG Debtors' and their Estates to recover proceeds from D&O Policies to the Litigation Trust shall not hinder the ability of any beneficiaries or insureds of such D&O Policies to submit claims and otherwise pursue and obtain coverage under the D&O Policies.

**(e)** On the Confirmation Date, the Wind Down Administrator shall assume the FBG Debtors' obligations, if any, for administering the Independent Manager Policies, subject to the Wind Down Budget.

Plan, Section 11.4.

17. Section 6.2 of the Plan provides that the FBG Debtors shall irrevocably transfer to the Litigation Trust all of their "remaining interests in the Litigation Trust Assets, and all such assets shall be deemed to have vested in the Litigation Trust (without recourse and free and clear of all Liens, Claims, encumbrances and Interests (legal, beneficial or otherwise)) on the Confirmation Date, to be administered by the Litigation Trustee, in accordance with the Plan and the Litigation Trust …. " Plan, Section 6.2.

18. "Litigation Trust Assets means … (v) all Insurance Rights of the FBG Debtors with respect to Insurance Policies that provide or may provide coverage for the Estate Claims, including for the avoidance of doubt, the rights to the proceeds of the D&O Policies …." Plan, Section 1.1.

19. "ABL Collateral Trust Assets means … (c) all Insurance Rights of the FBG Debtors in respect of ABL Priority Collateral (solely to the extent such rights result from insured assets or

property that constituted ABL Priority Collateral prior to the event giving rise to such Insurance Rights)." Plan, Section 1.1. [6]

20.     The Plan also has embedded in its Injunction a "gatekeeping" provision. Plan, Section 13.4(c).

## OBJECTION

21.     The Chubb Companies object to the Plan[7] on the grounds that (I) while it appears that the FBG Debtors seek to retain the benefits of the Insurance Programs (*see, e.g.*, Plan, Sections 6.2 and 11.4) the Plan fails to adequately address the fact that, in order to do so, the FBG Debtors' successors must remain liable for the Obligations under the Insurance Programs; (II) the terms of the Insurance Programs cannot be altered through the Plan; (III) the Plan contains an improper "gatekeeping" provisions; and (IV) the Plan must provide that workers' compensation and direct action claims must continue in the ordinary course.

---

[6]     Debtors' counsel advised there is similar treatment with regarding Insurance Rights for the DIP Collateral with regard to the DIP Collateral Trust, however, undersigned counsel has not located such treatment but all arguments herein apply equally to any such treatment in the Plan or any amended version of the Plan.

[7]     This Objection focuses on the Chubb Companies' objections to the Plan. As for the disclosure requirements, section 1125 of the Bankruptcy Code provides that a plan proponent may not solicit acceptance or rejection of a plan unless, before such solicitation, the plan proponent transmits to the parties to be solicited the plan and a disclosure statement containing "adequate information," as defined in section 1125(a) of the Bankruptcy Code, which has been approved by the bankruptcy court after notice and a hearing. *See* 11 U.S.C. § 1125(b). A disclosure statement contains "adequate information" if it provides information concerning the proposed plan of a kind and in sufficient detail that would enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan. *See* 11 U.S. C. § 1125(a). Courts consistently refuse to approve disclosure statements that lack the information that a "reasonable hypothetical investor" would require to make an informed decision about the proposed plan. *See, e.g.*, *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417-18 (3d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988); *In re Route 202 Corp.*, 37 B.R. 367, 375 76 (Bankr. E.D. Pa. 1984); *In re Fierman*, 21 B.R. 314 (Bankr. E.D. Pa. 1982); *In re E. Redley Corp.*, 16 B.R. 429 (Bankr. E.D. Pa. 1982); *In re Civitella*, 15 B.R. 206 (Bankr. E.D. Pa. 1981). In this case, the Chubb Companies cannot determine with complete certainty how the Debtors propose to treat the Insurance Programs and the Chubb Companies' claims thereunder and, therefore, object to the disclosure contained the Global Disclosure Statement and the Digital Disclosure Statement being finally approved on that basis.

**I.     The FBG Debtors' Successors Cannot Continue To Receive The Benefits Of The Insurance Programs Without Remaining Liable For The Obligations Thereunder.**

22.     As set forth above, the FBG Debtors appear to seek to retain the benefits of their insurance policies; however, the Plan fails to adequately address the treatment of the FBG Debtors' obligations under their insurance policies and related agreements.

23.     To the contrary, the Plan contains provisions which provide for the release of liens (*see e.g.*, Plan, Section 6.2), the vesting of assets in the FBG Debtors' successors, "free and clear of all Claims, Liens, and other interests" (*see, e.g., Id.)*; releases of certain third-parties (*see e.g.,* Plan, Section 13.5), and exculpation and injunctions against certain actions (*see e.g.,* Plan, Sections 13.4 and 13.6).

24.     It is well-established that debtors (and their successors) cannot seek to receive benefits of a contract without being liable for obligations thereunder.  *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln, Neb.,* 73

F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract"); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . .[.]"); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

25. Moreover, each of the Insurance Programs is a consolidated insurance program and therefore must be read, interpreted and enforced in their entirety.[8] *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225, 233 (D. Del. 2015) (finding that separately drafted agreements dated at different times but relating to the same subject constitute one cohesive agreement); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract"); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-

---

[8] The Chubb Companies reserve the right to object to the treatment of the Policies and any related insurance agreements as executory if the Debtors seek to reject any such contracts or seek to treat them as non-executory.

severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

26.     Further, as discussed below, the FBG Debtors and/or any successor of the FBG Debtors through the Plan (or any documents related thereto) cannot modify the Insurance Programs, or impact Chubb's rights with regard to any Collateral provided to secure the FBG Debtors' Obligations.  Moreover, the rights under the Insurance Programs cannot be split from the Obligations, which the Plan provides for, by splitting the rights, through the "Insurance Rights" concept from the Obligations. *See, e.g., In re Fleming Cos.*, 499 F.3d at 308 (3d Cir. 2007) ("if the debtor] accepts the contract he accepts it *cum onere*.") (internal citations omitted).

27.     Accordingly, the Plan must be clarified to provide that, to the extent that the FBG Debtors or their successors, seek to retain the benefits of any portion of the Insurance Programs, the entirety of each of the Insurance Programs shall be assumed by the FBG Debtors' successors, and the FBG Debtors' successors shall remain liable in full for all of the Obligations arising under the Insurance Programs.

## II.     The Plan Cannot Modify, Alter Or Impair The Insurance Programs.

28.     Neither the FBG Debtors nor this Court can rewrite the Insurance Programs, but rather, the Insurance Programs must be enforced as written.  *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) *aff'd*, 988 F.2d 414 (3d Cir. 1993) ("Courts

10

do not rewrite contracts to include terms not assented to by the parties."); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included.") (citation omitted); *Ally Financial Inc., v. Wells Fargo Bank, N.A. (In re Residential Capital, LLC)*, 531 B.R. 25, 45 (Bankr. S.D.N.Y. 2015) (a party cannot convince a court to "rewrite [a] contract to fulfill [its] unspoken expectation"); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D. N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court"); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

29.     Additionally, as discussed above, each of the Insurance Programs must be read, interpreted and enforced in its entirety.

30.     Despite this clear legal precedent, the Plan contains multiple provisions that purport to improperly alter or modify the Insurance Programs and the terms and conditions thereof.

31.     The Plan contains provisions that provide for the release of liens, the vesting of assets in the FBG Debtors' successors free and clear of liens, releases of certain third parties, limitations on setoff rights, the assignment of Insurance Rights under the Insurance Programs to

different entities, the splitting of the Insurance Rights from the Obligations, and exculpation and injunctions against certain actions. *See, e.g.*, Plan, Sections 6.2, 9.11, 13.4, 13.5 and 13.6.

32.      Moreover, despite the requirement for the intact maintenance of the Insurance Programs as described above, the Plan purports to transfer certain Insurance Rights to the Litigation Trust and certain to the ABL Collateral Trust (and may propose some transfer to the DIP Collateral Trust). The very concept of assigning some parts of the Insurance Programs, to differing entities (and splitting obligations from rights), as proposed under this Plan is an inappropriate modification of the Insurance Programs.

33.      Further, any attempt to transfer rights and benefits under the Insurance Programs between the FBG Debtors and their successors under the Plan, could result in the Chubb Companies being forced to respond to competing demands for proceeds (including under the same Policies) from various separate and unrelated entities, which is not contemplated by or proper under the Insurance Programs.  The Plan must clarify that this is not the result.

34.      The Plan must clarify that nothing therein or in any of the documents related thereto, shall modify, alter or impair the Insurance Programs, including the rights and obligations of the Chubb Companies, the FBG Debtors, and/or any other entities thereunder.

35.      Accordingly, the Chubb Companies further object to the Plan on this basis.

**III.      The Plan contains an improper "gatekeeping" provision.**

36.      The Plan provides that certain claims against the FBG Debtors and certain third parties, which may include claims covered by insurance, can only go forward if, among other things, the claimant first obtains from the Court a determination that its claim is "colorable," which determination the Court will purportedly "have sole and exclusive jurisdiction" to make.  *See* Plan, Section 13.4(c).

37.    As an initial matter, it is well-established that a plan cannot confer on a bankruptcy court jurisdiction over any dispute or proceeding. *See In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002) ("[T]he source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan."); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 228 (3d Cir. 2004) ("[J]urisdiction cannot be conferred … in a plan of reorganization"); *In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484, 515 (N.D. Tex. 2019), *aff'd sub nom. Matter of Acis Cap. Mgmt., L.P.*, 850 F. App'x 302 (5th Cir. 2021) ("Parties may not, in the course of ordering their private affairs, enlarge *or shrink* Article III or the federal statutes governing subject matter jurisdiction.") (emphasis in original).

38.    It is also well-established that bankruptcy courts lack core jurisdiction over the liquidation or estimation of contingent or unliquidated personal injury tort claims. *See* 28 U.S.C. § 157(b)(2)(B); *see also In re Schepps Food Stores, Inc.*, 169 B.R. 374, 377 (Bankr. S.D. Tex. 1994) ("Congress did *not* want proceedings affecting the liquidation of personal injury or wrongful death claims to be core matters. Thus, bankruptcy courts lack the power to finally adjudicate these causes of action.").

39.    Thus, to the extent the Plan purports to confer on the Court any jurisdiction, including any exclusive jurisdiction and/or jurisdiction to estimate or finally adjudicate personal injury claims, this is contrary to applicable law.

40.    Accordingly, the Chubb Companies further object to the Plan on this basis.

## IV.    The Plan Must Provide That Workers' Compensation Claims and Direct Action Claims Must Continue In The Ordinary Course.

41.    The Plan does not provide for the handling of workers' compensation claims and direct action claims.

42.     Both workers' compensation claims and direct action claims are subject to state-law regulations that dictate the resolution of such claims, which cannot be modified by the terms of the Plan.  *See, e.g.*, *Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108 (6th Cir. 1981) (finding that the administration of workers' compensation claims was a valid exercise of a state's police powers and exempt from the automatic stay provisions); *see also* La. R.S. 22:1269 (2012) (Louisiana grants injured persons a right of direct action against a tortfeasor's insurer, which, in several instances, may be brought against the insurer alone, or against both the insured and insurer jointly and *in solido*); Wis. Stat. § 632.24 (2012) (Wisconsin grants injured persons a right of direct action against a tortfeasor's insurer irrespective of whether liability is presently established or is contingent and to become fixed or certain by final judgment against the insured).

43.     Accordingly, the Plan must clarify that workers' compensation and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course, and relatedly, that the Chubb Companies may continue to so administer, handle, defend, settle, and/or pay such covered claims in the ordinary course, and pursuant to the terms of the Insurance Programs and applicable non-bankruptcy law.

**<u>RESERVATION OF RIGHTS</u>**

44.     The Chubb Companies specifically reserve all of their rights with respect to the Insurance Programs and their right to assert additional objections to the Plan and/or any related documents thereto.

WHEREFORE, the Chubb Companies respectfully request that this Court: (a) either (i) deny confirmation of the Plan, or (ii) condition confirmation of the Plan on inclusion of the clarifications requested herein; and (b) grant such other relief as the Court deems appropriate.

Dated: July 24, 2026.

Respectfully submitted,

*/s/ James Billingsley*
James Billingsley P.C.
Texas Bar No. 00787084
jbillingsley@duanemorris.com
**DUANE MORRIS LLP**
200 Crescent Court, Suite 900
Dallas, Texas 75201
Telephone: 214.257.7200
Facsimile: 214.257.7201


-and-

Wendy M. Simkulak, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Email: wmsimkulak@duanemorris.com

-and-

Jessica Kenney Bonteque, Esquire
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, NY 10017-4669
Telephone: (212) 692-1036
Fax: (212) 954-5310
Email: JBonteque@duanemorris.com

*Counsel for the Chubb Companies*

15

## CERTIFICATE OF SERVICE

I certify that on July 24, 2026, I caused a true and correct copy of the foregoing *OBJECTION OF THE CHUBB COMPANIES TO JOINT CHAPTER 11 PLN OF FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS* to be served electronically via the Court's CM/ECF electronic noticing system on all parties registered to receive electronic service in the above cases as permitted by Federal Rule of Bankruptcy Procedure 9036.

*/s/ James Billingsley*
James Billingsley