<u>**Exhibit 1**</u>

**Transcript for November 6, 2025 Second Day Hearing on Debtors' DIP Financing, Cash Management, and Cash Collateral Motions**

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

_____)

IN RE:                         )

)  Chapter 11

)

FIRST BRANDS GROUP, LLC,  )  Case No. 25-90399

)

Debtor.  )

_____)

DIP HEARING

VOLUME 1

DATE:     November 6, 2025

TIME:     9:03 a.m.

PLACE:    Federal Courthouse - Houston, Texas

BEFORE:   Melinda Barre

JOB No:   1419

Deposition of DIP hearing                                   First Brands Group, LLC, et al.

                            APPEARANCES

FOR THE DEBTOR:

        Mr. Robert Barr
                    Mr. Sunny Singh
        Ms. Jessica Lynn Falk
                    Mr. Robert Berezin
        WEIL GOTSHAL AND MANGES, LLP
                    767 5th Avenue
        New York, New York 10153

        Telephone: 212.310.8000
                    E-mail: robert.barr@weil.com


FOR THE COMMITTEE:

        Mr. Michael Winograd
                    Mr. Jeff Jonas
        Mr. Hayden Miller
                    Mr. Andrew Carty
        BROWN RUDNICK
                    7 Times Square
        New York, New York 10036

        Telephone: 212.209.4800
                    E-mail: mwinograd@brownrudnick.com


FOR ONSET FINANCIAL:

        Mr. Bryan Kotliar
                    Mr. Ben Butterfield
        Ms. Julia Koch
                    MORRISON FOERSTER
        250 West 55th Street
                    New York, New York 10019

                    Telephone: 212.468.8000
        E-mail: bkotliar@mofo.com

Deposition of DIP hearing                                    First Brands Group, LLC, et al.

APPEARANCES

FOR CARNABY II AND III, SECURED PARTIES:

Mr. Allan Brilliant
Mr. Gary Mennitt
Mr. Stephen Wolpert
DECHERT LLP
1095 6th Avenue
New York, New York 10036

Telephone: 212.398.3500
E-mail: allan.brilliant@dechert.com

FOR THE DEPARTMENT OF JUSTICE:

Mr. Jayson Ruff
OFFICE OF THE UNITED STATES TRUSTEE
515 Rusk Street, Suite 3516
Houston, Texas 77002

Telephone: 713.718.4650
E-mail: jason.ruff@usdoj.gov

FOR JEFFERIES:

Mr. Emil Kleinhaus
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019

Telephone: 212.403.1357
E-mail: ekleinhaus@wlrk.com

FOR RAISTONE CAPITAL, LLC; RAISTONE PURCHASING
LLC-SERIES XXXII, RAISTONE PURCHASING LLC-SERIES XXVIII:

Ms. Laura Metzger
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019

Telephone: 212.506.5000
E-mail: ametzger@orrick.com

APPEARANCES

FOR KATSUMI SERVICING, LLC:

Mr. Charles Kelley
Mr. Rich Stieglitz
MAYER BROWN
700 Louisiana, Suite 3400
Houston, Texas 77002

Telephone: 212.506.5000
E-mail: ckelley@mayerbrown.com

FOR BANK OF AMERICA:

Mr. Dan McGuire
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10017

Telephone: 212.506.5000
E-mail: d.mcguire@winston.com

FOR EVOLUTION CREDIT PARTNERS:

Mr. Vincent Indelicato
Mr. Charles Dale
Mr. Matthew Koch
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036

Telephone: 212.969.3000
E-mail: vindelicato@proskauer.com

APPEARANCES


                     FOR THE AD HOC GROUP OF LENDERS:


                          Mr. Scott J. Greenberg
          Mr. Jason Goldstein
                          Ms. AnnElyse Gains
          GIBSON DUNN
                          200 Park Avenue
          New York, New York 10153


          Telephone: 212.351.4000
                          E-mail: sgreenberg@gibsondunn.com



   FOR AEQUUM CAPITAL FINANCIAL II LLC:


          Mr. Kenneth J. Ottaviano
                          BLANK ROME LLP
          444 W. Lake Street, Suite 1650
                          Chicago, Illinois 60606


                          Telephone: 312.776.2600
          E-mail: ken.ottaviano@blankrome.com



                     FOR UMB BANK, N.A.:


                          Mr. Stephen Blank
          ALSTON & BIRD
                          90 Park Avenue
          New York, New York 10016


          Telephone: 212.210.9400
                          E-mail: stephen.blank@alston.com

Deposition of DIP hearing                                          First Brands Group, LLC, et al.

APPEARANCES


FOR FACTOFRANCE S.A.:


Mr. Casey Doherty
DENTONS US LLP
1300 Post Oak Boulevard, Suite 701
Houston, Texas 77056

Telephone: 713.658.4600
E-mail:

FOR ING BELGIUM S.A./N.V.:


Mr. Douglas Deutsch
CLIFFORD CHANCE US LLP
375 9th Avenue
New York, New York 10001
Telephone: 212.878.8000

DIP HEARING DAY 1

JUDGE LOPEZ:  Today is November 6th.  Going to call the 9:00 docket.  25-90399, First Brands Group, second day hearings.  Turning my camera on.  Why don't I take appearances in the courtroom, and then there may be some folks online who wish to make appearances.  I'll give you that opportunity to do so now, and we'll see where we go from here.

MR. BARR:  Good morning, Your Honor.  Matthew Barr with Weil Gotshal & Manges on behalf of the Debtors.  With me in the courtroom I have Mr. Sunny Singh, Mr. Cliff Carlson, Rob Berezin and Jessica Falk, among others.  And thank you for your time this morning.

JUDGE LOPEZ:  Thank you.

MR. RUFF:  Good morning, Your Honor.  Jayson Ruff.

MR. PHILLIPS:  Good morning, Your Honor, Ian Ross Phillips of

DIP HEARING DAY 1

Cole Schotz on behalf of the Unsecured Debtors Committee.

JUDGE LOPEZ:  Thank you. Welcome.

MR. GREENBERG:  Good morning, Your Honor.  Scott Greenberg, Gibson Dunn & Crutcher, on behalf of the ad hoc prepetition lenders and the DIP lenders.  I'm joined in the courtroom by my partners Jason Goldstein, AnnElyse Gains and others.

JUDGE LOPEZ:  Okay.

MR. JONAS:  Good morning, Your Honor.  Jeff Jonas from Brown Rudnick for the Committee.  You'll also be hearing from Mike Winograd and Hayden Miller today.  Thank you.

JUDGE LOPEZ:  Good morning.

MR. KELLEY:  Good morning, Judge.  How are you?

JUDGE LOPEZ:  Good.

MR. KELLEY:  Charles Kelley from Mayer Brown on behalf of

DIP HEARING DAY 1

Katsumi Servicing.  I'm joined in the courtroom with my partner, Rich Stieglitz, and on the video, Sean Scott, who you probably saw yesterday.  And Kyle TumSuden.

JUDGE LOPEZ:  Perfect.  Thank you.

MR. BUTTERFIELD:  Good morning, Your Honor.  Ben Butterfield, Morrison Foerster, for Onset Financial.  I'm joined here by my colleagues Bryan Kotliar and Julia Koch.

JUDGE LOPEZ:  Good morning.

MR. BRILLIANT:  Good morning, Your Honor.  Allan Brilliant from Dechert LLP on behalf of the Carnaby Secured Lenders.  I'm here with my partner Gary Mennitt and colleague, Stephen Wolpert in the courtroom, as well as our local counsel at Porter Hedges, Megan Young-John.

JUDGE LOPEZ:  Good morning.  I see you there.

DIP HEARING DAY 1

MR. OTTAVIANO:  Good morning, Your Honor.  Kenneth Ottaviano, Blank Rome LP, on behalf of one of the SPV lenders, Aequum Capital Financial II LLC.

JUDGE LOPEZ:  Good morning.

MR. BLANK:  Good morning, Judge.  Steve Blank from Alston Bird on behalf of UMB as agent for the lenders under the facility by Debtors, Global Assets LLC and Global Assets GmbH.  I'm joined by some of my colleagues on the line, and my declarant is in the audience today, who is also Mr. Ottaviano's declarants.

JUDGE LOPEZ:  Good morning.

MR. McGUIRE:  Good morning, Your Honor.  Dan McGuire from Winston & Strawn on behalf of Bank of America.

JUDGE LOPEZ:  All right.  Good morning.

MR. KLEINHAUS:  Good morning,

Deposition of DIP hearing                                          First Brands Group, LLC, et al.

DIP HEARING DAY 1

Your Honor.  Emil Kleinhaus, Wachtell Lipton Rosen & Katz here on behalf of Leucadia Asset Management LLC, which is an affiliate of Jefferies Group and associated funds.  I'm here with (inaudible) Lee from Vinson Elkins.

JUDGE LOPEZ:  Good morning.

MS. METZGER:  Good morning, Your Honor.  Laura Metzger from Orrick Herrington & Sutcliffe on behalf of Raistone Purchasing LLC-Series XXXII and Raistone Purchasing LLC-Series XXVIII.  I'm joined here by my colleague, Nick Sabatino as well as my partner on the line, Manuel (inaudible).

JUDGE LOPEZ:  Good morning. Good to see you.

MR. DEUTSCHE:  Good morning, Your Honor.  Doug Deutsche, Clifford Chance, on behalf of ING Bank. We're one of the factors.

JUDGE LOPEZ:  Good morning.

DIP HEARING DAY 1

MR. INDELICATO:  Your Honor, good morning.  For the record, Vincent Indelicato Proskauer Rose LLP on behalf of Evolution Credit Partners.  With me today in the courtroom, my partners Charles Dale and Matt Koch and co-counsel from the Gray Reed firm, Jason Bruckner.

JUDGE LOPEZ:  Good morning.

MS. DOHERTY:  Good morning, Your Honor.  Casey Doherty with Dentons US LLP, representing FactoFrance S.A.

JUDGE LOPEZ:  Good to see you.

UNIDENTIFIED SPEAKER:  Good morning, Your Honor.  Ivan Mack (inaudible) store LBA, RV company 17, LP.

JUDGE LOPEZ:  Good morning.  Okay.  Can we turn to the phone line.  Who wishes to make an appearance?

UNIDENTIFIED SPEAKER:  Your Honor, this is Stag (inaudible).  I

DIP HEARING DAY 1

only advise the Court that my pro hac vice application has been filed but has not yet been approved.  We represent US Bank.

JUDGE LOPEZ:  Good morning. Anyone else has a pending pro hac, we'll get to it.  We've been working through them, but you're more than welcome to appear for purposes of today.  We'll get to it.  Thank you.

UNIDENTIFIED SPEAKER:  I'm not sure how I mute this again.

JUDGE LOPEZ:  Just mute yourself on your own.

UNIDENTIFIED SPEAKER:  Thank you.

JUDGE LOPEZ:  Anyone else?  One more line and I'll turn to the Debtors.

UNIDENTIFIED SPEAKER:  Good morning, your Honor.  Elana (inaudible) from Jennings Haug Keleher McLeod Waterfall on behalf of RLI Insurance Company.

DIP HEARING DAY 1

JUDGE LOPEZ:  Okay.  Good morning.  Okay.

MR. BARR:  Good morning again, Your Honor.  Matthew Barr of Weil Gotshal.

JUDGE LOPEZ:  Good morning.

MR. BARR:  After all those intros, Your Honor, I have a request for a short adjournment.  We have a number of proposals out to a number of parties to resolve some of the open objections.  We may even resolve a lot of them.  And we think another 30 minutes will be helpful. If we can't resolve it in the 30 minutes, we will be prepared to move forward.

JUDGE LOPEZ:  Okay.

MR. BARR:  There's one other question.

JUDGE LOPEZ:  Go ahead.

MR. BARR:  You may have seen last night in connection with our adversary proceeding and the

DIP HEARING DAY 1

temporary restraining order we filed a stipulation with the defendants. Your Honor, we would ask, if possible, that you consider that. Only because of the timing, we the Debtors, have consented to certain payments being made to make sure that those operations can continue. And that's a consensual statement that we filed on the docket.

JUDGE LOPEZ:  I did see it.  If the parties are okay with me doing it now, I'll sign it right now.

MR. BARR:  Thank you, Your Honor.

JUDGE LOPEZ:  I have not had a chance to read it.  I'll get it signed and on the docket during the break.

We'll take a 30-minute break.  And I know there was also a request that parties can bring in chairs.  If you can find one, good. I've got no issues.  The only

DIP HEARING DAY 1

request is just remember where you got it because you need to put it back.  And it's easier if you find it and put it back wherever you are.

Okay.  We'll take a 30-minute break.  Thank you.

(Recess taken)

JUDGE LOPEZ:  Good morning. Back on the record in First Brands. Mr. Singh?

MR. SINGH:  Good morning, Your Honor.  Sunny Singh, Weil Gotshal, proposed counsel to the Debtors.

Your Honor, the parties are still in conference rooms and in the hallways, trying to see if we can get this settlement done.  We respectfully request another brief adjournment to a 10:00 start time if that's acceptable to Your Honor.

JUDGE LOPEZ:  Another 20 minutes?

MR. SINGH:  Yeah.  Another 20 minutes would be much appreciated.

DIP HEARING DAY 1

JUDGE LOPEZ:  Okay.  We'll give everyone another 20 minutes.  And folks on the line, I just want to make sure that they knew as well.

MR. SINGH:  Appreciate it.

JUDGE LOPEZ:  So I will step back off and come back on at 10:00 a.m.  Thank you.

MR. SINGH:  Thank you, Your Honor.

(Recess taken)

JUDGE LOPEZ:  Okay.  Back on the record in case No. 25-90399, First Brands Group.

Mr. Barr?

MR. BARR:  Good morning. Matthew Barr of Weil Gotshal.  Can you please tell us we have one 15 minutes left on the record and we will start?

JUDGE LOPEZ:  Oh, I can promise you that one.

MR. BARR:  Appreciate that.

JUDGE LOPEZ:  We'll take

DIP HEARING DAY 1

another 15-minute break, and then we will start with openings.

MR. BARR:  Thank you.

JUDGE LOPEZ:  No question about it.

MR. BARR:  Appreciate it, Your Honor.  Apologies.

JUDGE LOPEZ:  No worries.

(Recess taken)

JUDGE LOPEZ:  Okay.  Morning. This is Judge Lopez.  We're back on the record in First Brands, Case No. 25-90399.

MR. BARR:  Yes.  Thank you, Your Honor.  Matt Barr on behalf of the Debtors.

Your Honor, we would like to start.  I would like to give you an update on the last 36 days of the case, and then Mr. Singh will take authority and give you an update on where we stand with respect to the proposed settlements that we've been continuing to negotiate.

DIP HEARING DAY 1

JUDGE LOPEZ:  Okay.

MR. BARR:  We're not there yet on one very large proposed settlement, but we understand that they are talking to their clients.

JUDGE LOPEZ:  Okay.

MR. BARR:  So it could be that after we start to update you somebody waves and says, We've accepted.

JUDGE LOPEZ:  Okay.

MR. BARR:  Which we think is in the best interest of everyone, but we can get started now if that's okay.

JUDGE LOPEZ:  Okay.

MR. BARR:  Thank you, Your Honor.

So as I mentioned, give you an update on -- a report on the 36 days since the first day of hearing.  First, stabilizing the business.  The Debtors and the advisors have focused on stabilizing

DIP HEARING DAY 1

the business and learning as much as they could about the operations of the business.

Mr. Moore and his team have met and continue to meet with employees, held numerous town halls. We have set up communication protocols and hotlines for employees to ask questions or provide information.  Mr. Moore and his team also send out weekly updates to employees, which have been very well received.

The appointment of A&M as CEO, CFO and co-CROs has been helpful to build confidence we needed with the employee base, as they recognize the great products this company has, irrespective of the noise around the business and these cases.

The Debtors are finalizing the terms of a key employee retention program, which we will

DIP HEARING DAY 1

present to Your Honor in due course.

Mr. Moore and his team have met with

over 20 of our major customers, in

person or by phone, and is in

regular contact with major

customers, suppliers and vendors.

We have established working groups

with some of our major customers to

address open issues and identify

ways to improve product flow.  The

patience, support and understanding

expressed by our customers has,

frankly, been overwhelming.

Mr. Moore and his team

have implemented a vendor strategy

program and negotiated trade

agreements to ensure continued

receipt of goods, services and

payments.  The team is assessing the

businesses, both in the United

States and abroad, to ensure we

allocate sufficient resources and

appropriate resources to the

businesses that are valuable or

DIP HEARING DAY 1

potentially valuable and assessing whether businesses should be sold sooner rather than later or shut down.  This, of course, is a fluid and ongoing process, Your Honor.

Mr. Moore and his team have participated in this week's major industry trade show, AAPEX, wearing the First Brands logo literally on their chest and on their sleeve, reminding folks about our products.  And we still have great products and are open for business.

The business is operating and filling orders and taking new orders.  It's taking longer than we all would have hoped to refill the pipeline with inventory, but progress is being made and we project to have more inventory at the end of this month than we did in October.

The Debtors' current

DIP HEARING DAY 1

expectation is to complete a detailed review of the businesses and produce a long-term business plan by January 31st of 2026.

Corporate changes.  Legacy management has been largely changed. Patrick James resigned from all executive and board positions of the Debtors shortly after the petition date.  Mr. Moore was appointed interim CEO.  The CFO agreed to retire and was replaced by Mr. Kostorus from A&M on an interim basis.

The vice president of finance was terminated from all positions, and others in the organization have been identified to assist and are working with the team.  Mr. Jerneycic and Mr. Malhotra, both of A&M, were appointed co-CROs.  The executive team is now A&M and some internal folks, not the legacy executive

DIP HEARING DAY 1

team.

What did we have as of the petition date?  The team has focused on figuring out what businesses, inventory, raw material, equipment, et cetera, existed as of the petition date and every day.  The team has conducted significant diligence on mapping the many businesses that make up this enterprise and which entities own which assets, share certain assets, are dependent on one another to operate their businesses, whether United States or abroad, and whether they're a debtor or a non-debtor foreign entity.  This is ongoing as well.

HillCo, among others, is assisting the Debtors with these efforts including inventory, machinery and equipment appraisals. Some of our financing parties have been extremely helpful in providing

DIP HEARING DAY 1

information and paperwork to assist us figuring out what they believe they had as of the petition date and who potentially has claims against those assets. And we thank them and continue to thank them for their efforts.

With respect to factoring, the Debtors have made significant progress understanding the company's historic factoring practices and reconciling receipts. Unfortunately, as reported in Mr. Moore's declarations, we have uncovered significant issues with respect to those programs. We are in the process of working with the factoring counterparties to collect data, reconcile receipts, develop a transparent process, which you'll hear about more today, to unlock these funds and distribute them to their rightful owner.

There is still work to be

DIP HEARING DAY 1

done, but a large part of progressing was getting a basic understanding of how these programs actually work.  And, again, many of the factoring parties have been extremely helpful in getting us the information necessary, and we thank them as well.

Many of our employees have been essential in helping us figure out the true operations of our businesses.  All of this is still ongoing.  We have a lot more to do. But we now, in 36 days, have a great base knowledge of our businesses, our operations and our assets and people's -- we're trying to sort out people's relative rights with respect to those.

We understand and appreciate parties' concerns and frustrations and are trying our best to be as transparent as possible as we sort through which assets and

DIP HEARING DAY 1

liabilities and which parties have rights against them.  We will figure it out and all parties' rights and claims, of course, reserved.

With respect to the investigation, the special committee and advisors have made substantial progress in connection with the investigation.  The scope of the investigation to date includes, among other things, off-balance-sheet finance practices and arrangements, including account receivable factoring practices, prepetition financing transactions, related party transactions, including among sister companies owned by Mr. James, and transfers to insiders.

The Debtors have entered into a common interest agreement and protective order with the official committee of unsecured creditors and are cooperating with its advisors

DIP HEARING DAY 1

and coordinating with its advisors in connection with the investigation. The team has taken substantial steps to advance the investigation and to preserve critical information, including collecting more than 7 million documents, conducting interviews with current and former employees, drafting and serving 2004 examinations and deposition notices, pursuing bank account records from more than 600 banks, collecting electronic devices and imaging them, including computers, cell phones, et cetera, placed numerous litigation holds on current and former employees, disabled the company's two-year auto delete policy and established a whistleblowing hotline.

The company's also shoring up financials, historic financials. The Debtors are in the process of

DIP HEARING DAY 1

engaging advisors to perform a quality of earnings report and audit past financial information.  A&M is working to review historic financials as well.

As Your Honor knows, the Debtors commenced an adversary proceeding against Mr. James and other defendants on November 3rd as a result of the investigation performed to date and obtained a temporary restraining order to protect against the dissipation of assets.  The Debtors have been and will continue to cooperate with the government and governmental agencies in connection with their investigation.

Non-debtor rest-of-world. The rest-of-world consists of eight distinct business units that are not currently in Chapter 11 now.  The Debtors are experiencing various levels of financial operational

Deposition of DIP hearing                                          First Brands Group, LLC, et al.

DIP HEARING DAY 1

distress and financial distress, and the advisors are working with stakeholders to analyze what options these particular businesses and non-debtor entities have.

Two of the businesses in particular are subject to creditor agreements, Ultinon with Santander and Horizon with UBS.  We currently have forbearance agreements in place with those lenders and the company is in discussion with those lenders for further funding support as we try to figure out what to do with those businesses.

Certain other businesses, plastics and Trico, have received funding through the DIP financing, approximately $5.3 million, to meet short-term operational liquidity needs while options for those businesses are discussed.

Unfortunately, no further funding or strategic investor could

DIP HEARING DAY 1

be identified for the plastics business.  And on November 3rd, the plastics business filed an insolvency proceeding in Germany. An independent administrator has been appointed for that non-debtor entity, and we will be working with them to figure out potential restructuring options for the plastics business.

JUDGE LOPEZ:  What was the name of that entity?

MR. BARR:  It's a plastics business.  We can get you the -- and it's a non-debtor foreign entity.

JUDGE LOPEZ:  Okay.

MR. BARR:  The company continues to assess the options available to these business units, and it's possible we'll have to file other local insolvency proceedings throughout the world.  The Debtors have communicated and are in constant communication with our key

DIP HEARING DAY 1

stakeholders, the creditors committee, the DIP lenders, the factoring parties.  And we will continue to do that and be as transparent as possible as we try to figure this out.

So unless Your Honor has any questions for me --

JUDGE LOPEZ:  No questions at this time.

MR. BARR:  Thank you, Your Honor.

JUDGE LOPEZ:  I will make a small note that I am working hard to get the AC down.  Feel free to loosen ties and all that stuff while we proceed.  Thank you.

Mr. Singh.

MR. SINGH:  Good morning, Your Honor, Sunny Singh, Weil Gotshal, proposed counsel to the Debtors.

Your Honor, you'll have to indulge me a little bit.  I have a whole script here and points, but

Deposition of DIP hearing                                First Brands Group, LLC, et al.

DIP HEARING DAY 1

parties are literally in the hallway and talking to their clients about a settlement.  So I'm hopeful that I can cross a lot of this out as we go.  But we're going to get started.

What I'd like to get started with is some good news that we do have some settlements that I think we can put on the record to make a little bit of progress while others continue in the hallway.  And I'm hopeful we'll be able to report on other settlements as well.  If not, then I'll just proceed with my remarks.

I think, Your Honor, as Mr. Barr said, though, you know, we have been very busy over the last 30 or so days, trying to stabilize the business, advance the investigation and work transparently with our stakeholders.  But there's still a lot of open questions and a lot of work that needs to be done.

DIP HEARING DAY 1

As it relates to the DIP and if we get to the evidence, should we need it, as the evidence will show, many of the key facts are still being investigated and are still unknown.  And that's the approach.  With that background, we took an approach to today's final DIP hearing with that background and with that context.

It's much like when I was before you at the first day hearing.  What we're trying to do is get approval of critical relief, today the DIP, on a final basis and maintain status quo as we figure out what's going on and some of the facts and the circumstances that, frankly, need more time and work amongst the parties.

Just a few examples of those is, Your Honor read a lot about the SPV issues.  There's a lot of work that needs to be done there

DIP HEARING DAY 1

to get to the bottom of what happened and what rights and claims people have.  There's information issues.  You know, you can't just rely, at A&M in particular, on prepetition information and protocols and continue business as usual with respect to those types of items.

Much of that has been rebuilt and continues to be rebuilt by the A&M team.  Your Honor knows about the number of findings -- or preliminary findings coming out of the investigation.  Today is not the day for that, but obviously, that has a cloud around everything we are doing here and the information that will be put into evidence and will be discussed.

So, Your Honor, to put it mildly, it's a very uncertain situation.  We're simply not in a position to have, you know, what you

DIP HEARING DAY 1

would consider or see as a more traditional final DIP hearing, where we're stipulating to liens and claims and talking about things like challenge periods and carve-outs and leaving it at that. You know, we've got to take a little bit of a different approach here, given the facts and circumstances in which we find ourselves.

Our approach today, Your Honor, is two key objectives. One, we have to get the DIP approved. We have to get the DIP approved on a final basis. Whether it's consensual or on a nonconsensual basis, it's got to be done. There's a lot at stake here, Judge. As we've said in our papers and as the evidence will show, the final DIP if it's not approved, the company will liquidate.

I think we all believe that. The evidence will show that.

DIP HEARING DAY 1

We simply don't have the funds to operate.  We are talking high stakes, as high as they get, and without the DIP, it's, frankly, game over, Your Honor.

The DIP lenders, with or without any further settlements, have agreed to a number of significant concessions for the benefit of the Debtors' estates.  I will review those.  They're in our reply papers, but I do think it's important to highlight for Your Honor.  Those are real and material changes for the benefit of the estate and, you know, we're glad we were able to negotiate those.  And they address a lot of the issues that were raised in the committee's objections.

With those changes, Your Honor, we believe that we have negotiated the best possible DIP from our only source of financing

DIP HEARING DAY 1

and will demonstrate to you why we think that's fair and reasonable and complies with all of the legal requirements for the Court to grant the relief we are seeking as modified by the extension of the reply.

Your Honor, objective No. 2, maintain the status quo, particularly with respect to our SPV lenders. As the evidence will show, Your Honor, there's a lot of issues there with the SPVs. It is a difficult and complicated web of transactions that need to be reviewed and addressed, and really, to get to the bottom of a pretty fundamental question, whose collateral is it and -- well, let me take it back.

What is the collateral and, step two, whose collateral is it? What's the priority? And while those disputed issues are addressed

DIP HEARING DAY 1

and resolved, Your Honor, what we propose is, in our reply, an adequate protection package to maintain the status quo.  I'll report on a couple of settlements we have there.  But that was our thinking in approaching today.

We're not trying to prejudice the rights of parties to assert their claims, to figure all these issues out.  But at the same time we can't stop operating, right? We can't shut down the business today and not have access to inventory that's disputed, not have access to PP&E that potentially may be disputed, because that's going to be value destructive for everybody, and then there will be -- if we're going to fight, there will be much less to fight about.

So, Your Honor, that's our approach today.  I think we also say that we are also trying to maintain

DIP HEARING DAY 1

status quo with respect to the factoring counterparties, right? There are no liens being granted on any of the Debtors' receipts that constitute factored monies that's traceable and that actually belongs to one or more of the factors, whether it's through sale or through a senior lien. But that is the question, right? How much money should actually -- actually was factored on a prepetition basis and belongs to those parties?

We have a declaration in evidence for Mr. Moore. You know, his team has started to do a lot of that reconciliation. We've been working transparently with the factoring counterparties to get them information. They've been very helpful in giving us information to get to that reconciliation.

Unfortunately, as the declaration says, we don't think a

DIP HEARING DAY 1

lot of that money is actually factored.  A lot of that money is -- and when I say factored, Your Honor, remember we're talking about third-party factoring versus customers.  We're talking about the third party, really.  We think a lot of that money at the end of the day is frankly, you know, estate cash that can be used subject to the DIP, subject to, you know, liens on avoidance and cash collateral stipulations.

It's fundamental and critical to have access to that money as part of the DIP.  But we're not fighting about that today.  We want to review this process with the factoring counterparties.  We want to get them information about what we did to reconcile all of this information that's been provided.

And then we frankly, Your Honor, are going to need to file a

DIP HEARING DAY 1

motion, most likely on an emergency basis with you, for relief to start using money that we can clearly identify is not factored cash subject to dispute as to, you know, it's not property of the estate, et cetera.  But anything else, which we think is a significant chunk, we do want access to use.  And we're going to try to work with everybody cooperatively.

We've been telling them that this motion was coming.  We're in the process of drafting it. We're hopeful it's going to be consensual and it's going to have procedures so people can take some time to validate the information that we're putting in front of them.

If we can't agree, we'll have to have a disputed hearing.  I really hope that that's not going to be necessary.  But we really need access to this cash, right?  It

DIP HEARING DAY 1

makes the entire DIP model.  It makes everything work.  And, Your Honor, the other piece of it is customers are concerned.  So they're withholding payments generally, right, which is creating another cash strain on the company because they are concerned because they don't know who to pay, right?

They've gotten debtor notices from most, if not all, the factor counterparties.  So we're hoping to resolve all of this as part of this motion and ultimately do it in a consensual way.  But today, you know, we are not priming -- to the extent it's factored cash -- and that's the key.  To the extent, right?  We're going to figure that out.  But if it is, no DIP liens, no adequate protection liens.  We're not priming, we're not doing anything.  The money is going to sit there.

DIP HEARING DAY 1

And by the way, you know, all receipts that have come in, we've agreed to the factoring counterparties as we get to the interim hearing, we're not spending that until this reconciliation effort happens and people consent that we can spend it or Your Honor orders that we can spend it, you know, what wasn't factored.

So, Your Honor, with that background, that's the approach we took today on status quo. I'm pleased to report I can run through a couple of the settlements that we have, Your Honor.

First, Your Honor, we have a settlement with Evolution. Evolution is one of our SPV lenders represented by Proskauer Rose. We've entered into a stipulation with them, Your Honor, that is essentially the terms that we describe in our reply brief that we

DIP HEARING DAY 1

took with respect to all of these counterparties, the SPV counterparties.

Specifically, we're going to keep them flat at the inventory level at the petition date, right? And how are we going to do that? We're either going to purchase and put more inventory subject to their disputed liens under review, or we'll cash collateralize, right? And then we're going to have a true-up period.

So I think every seven days or so, if it turns out that that value relative to the petition date value fell down, we'll put cash in there.  If it's gone up, then excess cash can be swept back. And we're making sure that we're leaving them at status quo, pending the resolution of whose collateral is it, who's got senior liens, right, and figuring that all out.

DIP HEARING DAY 1

Full reservation of rights of all parties as to that collateral dispute.  We're going to try to work with parties to see if we can come up with an answer.  If not, they've filed an adversary proceeding. We'll figure out if that's the best way to go, what makes the most sense, given that it's not just a one-on-one issue really, right? It's kind of everybody is involved in this because if it's not their collateral, it could be the L collateral, could be one of the other SPV collaterals.

So it's not simply we can just kind of duke it out with Evolution or settle the issue with Evolution without involving other parties.  So that will be an issue for another day.

All parties are reserving rights with respect to surcharge, you know, with respect to these

DIP HEARING DAY 1

boxes.  They're reserving rights also to accrue interest and fees to the extent it turns out they're oversecured.  The stipulation period is 60 days.  We're going to try to do this over the next 60 days.  If we think it's making progress, the parties are going to agree to extend.  But, you know, that's generally the approach we're taking here.

And, Your Honor, Evolution, you might have seen, and I know we're going to have a scheduling conference with respect to some of the motions that were filed by the SPV counterparties regarding trustees, et cetera.  So this resolution does address that. They've agreed to withdraw their objection to the DIP motion, not going to put on any evidence or cross.  They're good with their settlement.

DIP HEARING DAY 1

They've agreed to withdraw their objection to Weil's retention application.  They've agreed to adjourn their motion for a Chapter 11 trustee at their entities, you know, during this interim period, with an obligation to give notice if they need to bring it back up.

So, you know, with that, Your Honor, I think we're done.  We actually have a signed stipulation that we'll file with the Court in connection with the final order that's continuing to move.  The parties are still working.

Your Honor, I'll move to the next one, you know, tick through them.  I'm sorry.

JUDGE LOPEZ:  Go ahead.

MR. SINGH:  I'm actually going to ask my partner, Cliff Carlson, because he's been working on CarVal and Aequum.  And I think we have a

DIP HEARING DAY 1

similar type of resolution, where we can adjourn some of these disputes, not exactly on the terms as Evolution, but I'll let him come up and just describe those to Your Honor, since he's had the most latest conversation, if that's okay.

JUDGE LOPEZ:  Perfect.  Thank you.

MR. SINGH:  Thank you.

MR. CARLSON:  Good morning, Your Honor.

JUDGE LOPEZ:  Good morning.

MR. CARLSON:  I'll start with the CarVal settlement and, thus, we have been speaking with Mr. Brilliant on.

We have an interim stipulation in place with CarVal. It's at docket No. 230.  And the agreement is to extend that stipulation through December 8th.  I understand the Court has availability for a hearing on that

DIP HEARING DAY 1

date that's available that we would have our hearing on this issue, the added protection for their client. I'll stop there just to make sure.

JUDGE LOPEZ:  Yes.  That's Monday, December 8th?

MR. CARLSON:  Yep.  And that hearing would be continuation of these issues.  They've also filed a motion to dismiss their SPV Debtors and in the alternative, appoint a trustee.

JUDGE LOPEZ:  For adequate protection?

MR. CARLSON:  Right.  We would have what I call a scheduling conference on those motions at that hearing, as well; and hopefully, we're resolved on those issues when we come back to you on the 8th.  To the extent we're not, though, then we would have -- we would schedule a final hearing the first week of January -- subject to Your Honor's

DIP HEARING DAY 1

availability, a final hearing on the motion to --

JUDGE LOPEZ: So what would we be taking care of? What would happen on December 8th?

MR. BRILLIANT: Your Honor, I don't know if we have a disagreement, or I think it's just nomenclature. What we agreed was as part of the DIP motion they have a motion for use of our cash collateral and, you know, they want to provide us adequate protection. That's not going to be heard today. That's going to be pushed to December 8th.

If we were to extend the interim stipulation, as counsel said, also to December 8th. That requires just a few changes in the stipulation. One, you know, the termination date was originally, I believe, October 22. We extended that to November 7th, till today.

DIP HEARING DAY 1

We'll extend that again to December 8th.

Then there's a provision in there that limited their ability to use any of the cash collateral other than certain terms, also would have expired on October 22, was extended to November 7th. I think that's in paragraph 3. And that will be extended as well.

The last change in the interim stipulation is under the current stipulation, they're allowed to purchase inventory in only -- in that stipulation three ways. One, you know, for cash on delivery, second was by providing raw materials, you know, at the time of delivery of the inventory. And the third was there was a process where they could deliver it directly to the company and we would have retained a lien on the accounts receivables.

DIP HEARING DAY 1

With respect to whatever we have in terms of accounts receivables that were created, you know, prior to today -- you know, it was a $20 million cap -- they'll still continue to have that. With respect to after today, they won't be able to sell with the receivables anymore. They'll only be able to, you know, settle for cash or for raw materials as provided in the stipulation.

So that's just going to come out for the convenience of the parties. There's been issues with tracking the AR. So no reason to create more administrative headaches in doing something that the parties can't have a confidence level in it. So that will be the change with the stipulation.

And then on December 8th we would have this continued hearing on the motion, you know, to use our

DIP HEARING DAY 1

cash collateral and a request for adequate protection.  We would also have the interim hearing on our motion to lift stay.

JUDGE LOPEZ:  Got it.

MR. BRILLIANT:  So that will be on December 8th as well.  And then we agree that for a date, we understand you have availability the first week of January, that we would have a hearing on the motion to dismiss adequate protection in the -- or alternative -- motion to dismiss or, alternatively, for appointment of a trustee, and the final hearing on the motion to lift stay, the first week of January.

JUDGE LOPEZ:  The first week of January being January 5th?

MR. BRILLIANT:  Yes, Your Honor.

JUDGE LOPEZ:  January 1st falls on a Thursday.  Don't get me in trouble with that.  So yeah.  I

DIP HEARING DAY 1

think by the week of -- let's just say December 8th would work conceptually for me.  I'd rather start -- just to give everyone a full day, if we can just kind of start maybe 9:00 a.m. on December the 8th.  Just block it out.

And then if we had to do something, you know, y'all can figure out in terms of witnesses and all that stuff, January 7th or the 8th.  That's like a Wednesday or a Thursday.  Just get with your -- it's a little bit away.  I'm looking at 2026.  January 7th or 8th, whatever time it works.  Just get with my case manager and pick a date.  That would work for me.

MR. BRILLIANT:  Sure.  Thank you, Your Honor.

JUDGE LOPEZ:  All right.

MR. BRILLIANT:  So we would have that hearing on the 8th.  In the meantime, as Mr. Singh and

DIP HEARING DAY 1

Mr. Barr mentioned, there's just been ongoing investigation into the validity of the liens at the SPVs, including there was a supplemental declaration from Mr. Moore.

Obviously, you know, the hearing's being put off.  Part of it is to investigate some of these assertions in Mr. Moore's supplemental declaration for the Debtors to continue to do their investigation on issues that, you know, potentially would be relevant into the hearing.

They've agreed to give us, you know, additional discovery, as I said, another deposition of Mr. Moore, and prior to that, to produce the documents that he relied on and the relevant information in connection with that matter.

And then, you know, we're all going to be -- given that it's going to be -- the hearing is going

DIP HEARING DAY 1

to be later and we're going to have

additional information, there may be

additional witnesses, including

appraisal witnesses, in connection

with the hearing and the interim

hearing on the motion to lift stay,

we've agreed that, you know, none of

the findings of fact that occur in

this hearing will be binding in

connection with these other

hearings.

            With us leaving, we're

going to -- we're going to continue

our hearing, and then we're going

to, subject to other things I'm

going to tell you, withdraw our

objection to --

        JUDGE LOPEZ:  Not binding with

respect to your client?

        MR. BRILLIANT:  Yes.  Then,

Your Honor, the -- that's what I

wanted to -- do you want to go back

or I can finish?

        MR. CARLSON:  Go ahead.

DIP HEARING DAY 1

MR. BRILLIANT:  Your Honor.

JUDGE LOPEZ:  Get closer to the mic.

MR. BRILLIANT:  Thank you, Your Honor.  In addition to our objection to the use of cash collateral and other collateral and requests for adequate protection, as Your Honor probably knows, we filed an objection --

JUDGE LOPEZ:  Yes.

MR. BRILLIANT:  -- to the DIP. Subject to an agreement we have to make certain changes in the DIP order, you know, we would withdraw that objection as well.

The Debtors and the first-lien lenders have agreed to, you know, clarify language that the SPV Debtors, special purpose vehicle Debtors, CarVal Debtors in particular, are not subject to the carve-out.  I think that's always been the intention but there's been

DIP HEARING DAY 1

ambiguity.

All the parties, you know, reserve their rights in connection with future motions and proceedings to seek to surcharge collateral or to, you know, obviously oppose that or to seek to -- if they want to try to do a carve-out later, they can do that, but it's nothing in the order that's going to be entered, or the DIP financing agreements are going to provide for that with respect to the Carnaby entities, the other SPV entities that are borrowers and guarantors.

There's going to be changes to the language to ensure that the screening guarantees don't apply to the special purpose vehicles or the Maquiladora entities.  And then, given that this investigation is going on onto the liens, you know, currently, in the proposed DIP order, individual

DIP HEARING DAY 1

creditors would only have till the end of the month to file claims against -- asserting that other people's collateral isn't appropriate.

That's going to be extended for us to be the same deadline that the committee has. And to the extent a Chapter 11 trustee is appointed, that party would get to 60 days after the appointment of the trustee rather than 30 days.

So, Your Honor, with those changes which we've agreed, we'd withdraw our motion on the DIP. And with respect to the cash collateral, that would be put off to the 8th, and with respect to the other motions, they'd be put off until the first week of January.

JUDGE LOPEZ: Perfect. Thank you very much.

Counsel, it might be

DIP HEARING DAY 1

helpful -- can we just have you --

Counsel, I know your name, but just

so we have a clean record, just

state your name for the record.

MR. BRILLIANT:  Yes.  For the

record, Alan Brilliant on behalf of

the Carnaby Secured Lenders.

JUDGE LOPEZ:  Thank you very

much.

MR. CARLSON:  Your Honor, we

agree with all that with just one

clarification, that this is just

with respect to the SPV debtor

entities with his client?  I just

wanted to --

JUDGE LOPEZ:  Correct.  Yeah.

That's what I said.

MR. CARLSON:  And then, Your

Honor, the other settlement is with

Aequum, and it's very similar.  It's

an extension of the interim

stipulation for adequate protection

that we had with Aequum.  That's at

docket No. 215.  We would be

DIP HEARING DAY 1

extending that stipulation, consensual use of that collateral through December 8th, the same date and ask to have a hearing -- or the hearing adjourned with respect to the use of their collateral to that date as well.

And the modifications to that stipulation are very similar. One is, you know, we can transfer -- we can no longer transfer inventory from the SPV debtor to the First Brands Group, FBG, debtor in exchange for granting accounts receivable.  So that option is no longer available.

In lieu of that, we can -- two options, either through cash or through, you know, replacing their inventory with new inventory as it cycles in.  So those are the two options.

JUDGE LOPEZ:  You're kind of keeping it at a certain level.

DIP HEARING DAY 1

MR. CARLSON:  Exactly.  The same structure that Mr. Singh walked through.  And with respect to the accounts receivable that was granted to them during the petition date to today, in lieu of that, it will be the same.  It will be the inventory that's cycled through during that period of time.  We'll have to replace it with that.

All of this is with a full reservation of rights as to the issues of whose collateral was it as of the petition date and validity, extended priority, et cetera.  So we're not stipulating to any of that today.

JUDGE LOPEZ:  As far as this stip, is it going to mirror?

MR. CARLSON:  It's going to mirror the carve-out, so it's also to December 8th for that hearing.

JUDGE LOPEZ:  Okay.

MR. CARLSON:  I think that's

DIP HEARING DAY 1

it.  I'll stop there.

JUDGE LOPEZ:  If you could just state your name for the record.

MR. OTTAVIANO:  Kenneth Ottaviano, Blank Rome, on behalf of Aequum Capital Finance II LLC.  I concur that our deal is essentially the same as the CarVal's deal.  And we're going to come back on the 8th and have it out if we don't have a final DIP.

JUDGE LOPEZ:  Okay.

MR. OTTAVIANO:  Thank you, Your Honor.

JUDGE LOPEZ:  Thank you.

MR. CARLSON:  Your Honor, that's all I have.  I'll turn it back over to Mr. Singh.

JUDGE LOPEZ:  Thank you.

MR. BLANK:  Your Honor, before Mr. Singh goes back, can I quickly comment?  Only because we are one of the parties who did not yet get a deal.  So I just wanted to say a few

DIP HEARING DAY 1

comments into the record.

JUDGE LOPEZ:  State your name for the record.

MR. BLANK:  Sure, Your Honor.  Stephen Blank from Alston & Bird on behalf of UMB.

JUDGE LOPEZ:  Oh, yes.

MR. BLANK:  Apologies.  Of course, when I came up here, my computer closed out.

JUDGE LOPEZ:  Are you giving me intro or are you just kind of outlining -- I've read your objection.

MR. BLANK:  This is a little different.  There's been some issues that have come to light, Your Honor.

JUDGE LOPEZ:  Okay.

MR. BLANK:  So, Your Honor, Stephen Blank from Alston & Bird on behalf of UMB Bank, N.A. in its capacity as administrative agent for the lenders under a revolving credit facility, together as Global Assets

DIP HEARING DAY 1

LLC and Debtor Global Assets GmbH.

So the facility we're talking about, this was initially a $45 million facility and my clients are currently owed in excess of 33 million, all of which is or was at the outset of the case secured, and our proof of claim is on file. Our collateral generally consists of finished products and some raw materials, which is held in three locations in Europe and one location in the U.S.

In all instances, this is segregated in readily identifiable collateral which has been subject to ongoing audits, one of which ended just a couple of days ago. I mean, with respect to the European collateral it's literally in a warehouse in a cordoned-off section to comply with the protection requirements under local law. So let me start with the punchline, and

DIP HEARING DAY 1

then we can move backwards from there.

The debtors are giving away property owned by a debtor SPV to a non-debtor affiliate for zero value.  In concrete terms, our debtor's SPV owns cordoned-off property sitting in a non-debtor warehouse.  And the non-debtor entity, who is also represented by Weil, is taking that inventory out of that cordoned-off area and selling it.

Our understanding from Weil is that this collateral is needed to help facilitate an out-of-court financing for the non-debtor, which non-debtor is having liquidity issues.  So in short, they're using debtor collateral to shore up a non-debtor. The debtor SPV is getting nothing in exchange.  My client's getting nothing.

DIP HEARING DAY 1

The gifting of our collateral needs to stop, and at a minimum, my client's entitled to adequate protection and we've been offered nothing.

So as I'm sure you remember, we previously negotiated an adequate protection step.  Among other things in that stipulation, we agreed that the Debtors could access up to $20 million of our collateral, subject to various restrictions. And frankly, the fact that the cap was 20 mil in and of itself shows that the Debtors were putting a significant value on this stuff.

The Debtors breached that stipulation immediately.  Standing here today, we have no idea how much of our collateral was used since the petition date; and frankly, I don't think the Debtors have any idea how much of it was used.

On Tuesday --

DIP HEARING DAY 1

JUDGE LOPEZ:  Are you arguing the emergency motion?

MR. BLANK:  Your Honor, I'm arguing for adequate protection because at the end of the day, we were told on Tuesday that the Debtors have come to the decision that they don't think our stuff is our stuff.  It's owned by a non-debtor.  They're refusing to assert the automatic stay.  They're effectively doing an abandonment motion without giving due process to anyone.

And this was on Tuesday, for the first time, they relayed on a phone call that there may be a dispute between the debtor SPV and the non-debtor entity over the ownership of that collateral.  The Debtors point to that dispute as a basis to not provide any adequate protection to my client.  The most shocking part of all this is that

DIP HEARING DAY 1

the Debtors's doing nothing to end the status quo.

Mr. Singh has said about four or five different times, We want to maintain the status quo. He apparently forgot the carve-out that that doesn't include my client. So let's be perfectly clear. Weil represents both entities in this dispute, the SPV debtor and the non-debtor, and, yet, the decision has been made to prioritize a non-debtor entity over the debtor SPV and the estate and the creditors, giving away millions of dollars in collateral for nothing in return.

And frankly, this flies in the face of bankruptcy law, which is expressly designed to provide breathing room and prevent this sort of dissipation of estate property. So as of now, the Debtors have only flagged this as a dispute. Nothing

DIP HEARING DAY 1

certain at this point.  Even if the Debtors were to take a more definitive position that this property doesn't belong to the debtor SPV, they'd be doing so on admittedly less than all of the relevant information.

There's no evidence establishing definitively that these are nonestate assets.  As of late last night, Debtors admitted in phone calls that they don't have and haven't reviewed all of the documents relevant to this dispute. So it's pretty insane that without reading the documents, the Debtors' fallback position is, Let's just give it to the non-debtor rather than take refuge in the automatic stay until the dispute can be resolved.

Weil is conflicted from representing this non-debtor in a dispute with a debtor SPV.  The

DIP HEARING DAY 1

debtor SPV deserves unconflicted counsel.  Now, the debtor fiduciary, similarly, must act in the best interest of the debtor SPV.  It's obviously in the best interest of the debtor SPV to vigorously assert the automatic stay and its turnover rights.  That's what these provisions were designed for.

Instead, the Debtors have effectively abandoned this property without a 554 motion.  They haven't sought court permission and transferred the property outside the ordinary course of business as required by Section 363.  And because these transfers aren't authorized by court order, they're avoidable under 549.  The Debtors cannot circumvent due process by omission, which is what's happening here.  There needs to be a process. It needs to be fair.

We offered them an

DIP HEARING DAY 1

offering.  We said, Hey, put this on ice.  Maintain the status quo until we can all negotiate something.  We proposed they freeze any sale of the collateral for a short period of time, or instead, just trap the proceeds in an account so that it's safe, and we can all just hash it out in short order.  We wanted to maintain our status quo.

The Debtors refused to do any of these things, and they're intent on letting a non-debtor continue to take and sell estate assets.  It's obvious that certain important parties will benefit from this, but it's clearly not my client here.  There's no legal justification to give away the debtor SPV's property to achieve this goal.

And so as we sit here today, our collateral -- or stand here, our collateral is continuing

DIP HEARING DAY 1

to be taken without any adequate protection.  The estate is being drained of an asset in direct violation of the law.  So we're asking for adequate protection to preserve our status quo.

JUDGE LOPEZ:  What's the difference between what you're arguing and your emergency motion?

MR. BLANK:  The emergency motion was enforcement of the previous stipulation.

JUDGE LOPEZ:  It also had a second component to it, right?

MR. BLANK:  It did.  It was enforcement of the stipulation they previously entered into, as well as it was also an objection to the DIP; and there was a breakdown objection that was previously filed with respect to that.

JUDGE LOPEZ:  Because I remember reading it.  So what's different?

DIP HEARING DAY 1

MR. BLANK:  What is different now is that before we were talking about adequate protection for the use of estate assets.  And here they're effectively saying, We've just decided these aren't estate assets, so there's no need to have any adequate protection.

JUDGE LOPEZ:  I see.

MR. BLANK:  There's no evidence that these aren't estate assets. They've made the decision, told us Tuesday night.  There's nothing in the record of it.  So until this stuff has been hashed out, they have to offer us something to maintain the status quo.

And we have offered a bunch of suggestions, and they said, yeah, no, but trying to get all the parties on the phone.  That's not going to do it.  We're not going to stand here naked, hoping that people come to play.  Things need to be

DIP HEARING DAY 1

frozen.  Our status quo needs to be retained, and then we can figure it out.

We're trying to be reasonable, but we were told on Tuesday, By the way, we've decided without any evidence that maybe this isn't your property.  So you guys are different from everyone else, and we're going to carve you out.

If that's really where they want to go, then this is something the Debtors shouldn't be protecting.  We believe this is a debtor estate asset.  No one is disputing this is worth tens of millions of dollars.  It should not be just given over to a non-debtor SPE.

The debtor should be enforcing the automatic stay.  And if the debtor doesn't want it, then I'll orderly move to lift the automatic stay so we can protect our

DIP HEARING DAY 1

rights.  But the debtor as a fiduciary to this SPE entity is not doing that right now.

So our witness is here. We're ready to go.  I don't think I'm being unreasonable.  We reserve all rights.  We're looking for adequate protection to preserve our status quo so that we can all keep talking and trying to figure this out.  So thank you for indulging me on that.

JUDGE LOPEZ:  Thank you very much.  Are there any other deals?

MR. SINGH:  Yeah, Your Honor. I wasn't completely finished with my remarks.

JUDGE LOPEZ:  That's okay. Everybody can speak.  I can tell everybody the way this is kind of going because I know there may be some parties that want to speak. I'd rather -- looking at it, it's 11:00 Central.  I think we ought to

DIP HEARING DAY 1

read into the record proposed agreements.  Let me hear from parties who wish to be heard.  We're going to probably get close to the noon hour.

At that point I don't want to put a witness up.  Maybe we can talk about getting some evidence into some housekeeping, and then maybe we start officially around 1:00.

MR. SINGH:  Yeah.

JUDGE LOPEZ:  That's the way this is kind of just going.

MR. SINGH:  One second, Your Honor.

Your Honor, one of our witnesses is -- I think we filed a motion for Mr. Cowan to appear virtually.  He's actually overseas and running six hours ahead, Your Honor.  He slotted out time to try to get this done.

If there's any chance that

DIP HEARING DAY 1

we could take his testimony and cross earlier, that would be --

JUDGE LOPEZ:  How much direct do you have for him?

MR. SINGH:  I think we're just submitting his direct through his declarations.

JUDGE LOPEZ:  Does anyone have any cross for this witness?

MR. WINOGRAD:  Yes, Your Honor, we do.

JUDGE LOPEZ:  How much cross do you have?

MR. WINOGRAD:  It's hard to say and I don't know what will happen with the technology, but I suspect it will probably be an hour or so, potentially a little bit longer.

MR. KOTLIAR:  Your Honor, Bryan Kotliar from Morrison & Foerster for Onset Financial.  We probably have 15 to 20 minutes of cross for Mr. Cowan.

JUDGE LOPEZ:  I guess we could

DIP HEARING DAY 1

work for an hour, take a break and
then come back.

MR. SINGH:  Let's see where we
are, Your Honor.  And we'll do the
best we can with Mr. Cowan.  I just
wanted to let you know he's seven
hours ahead.

MR. KELLEY:  We're reserving
rights for cross, Judge.  We're
going to wait and see how the
debtor's case presents.  We're still
discussing some of those issues.  I
just didn't want -- the lack of
standing up, to let you know there
might be another party crossing.

JUDGE LOPEZ:  Thank you.  So
let's keep talking.  I don't think
he's going to get on, but we'll keep
it going.

MR. SINGH:  Understood, Your
Honor.  We'll do the best we can.

JUDGE LOPEZ:  Appreciate it.

MR. SINGH:  So, Your Honor,
going back to settlements, I think

DIP HEARING DAY 1

the other ones that I wanted to mention is the ABL lenders.  We are not quite done with the ABL lenders, but people are talking and I think we will get done, Your Honor, and I have to review the language. They're represented by Mr. McGuire of Winston, who is here.

So rather than, you know, lay out a settlement that's still being finalized, I think we'll just come back to it.  I'm very confident we will get that done.

JUDGE LOPEZ:  Okay.

MR. SINGH:  Your Honor, that leaves in terms of -- and the last one I would say is, you know, we put in some factoring language consistent with my remarks earlier. I think we've gotten sign-off from some of the factoring counterparties.  I'm not going to try to say which ones they are because it's moving.

DIP HEARING DAY 1

I think the language is consistent with everything I've said earlier. People are still reviewing language. So if any of them end up getting up, I'm not trying to say they can't; but I'm hopeful that they'll all agree that this is just some language and we can clean it up.

So I think what that leaves, Your Honor, at this point, to my knowledge, is -- or the main objectors -- and I'm not trying to minimize anybody else -- but I think we've either got language out to people or are resolved in principle, you know, the landlords and things like that.

So, to my knowledge, sort of the main show for today right now is the UCC objection, as well as Onset represented by Morrison & Foerster. So those are the two main ones and, again, I'm not trying to

Deposition of DIP hearing                                First Brands Group, LLC, et al.

DIP HEARING DAY 1

prevent anybody from standing up.  I could have a little bit of that wrong but I think that's the current state of play.

So, Your Honor, before we move to the evidence, I would like to make a few remarks with respect to those objections to set the stage from the debtor's perspective.  And I think others will have remarks as well for it again.  So if that's okay, I'll keep it quick.

Judge, you know, we couldn't get there.  I'm hopeful we can still get there, but we couldn't get there right now.  We're not at a final settlement.  But where we have gotten to, you know, thanks in many parts to the UCC's objections and the work we've all been doing in the background, working with the DIP lenders and the UCC, is a number of material concessions that have been achieved, right.

DIP HEARING DAY 1

So if there's no UCC settlement, there's a bunch of things that I'll review now that are in our reply papers that address the objections or a lot of the objections that the UCC has raised; and I think all enure to the benefit of the estate.

Starting most significantly, Your Honor, from our perspective is the administrative expense claims basket.  You know, there was some objections filed by the UCC and other parties that, hey, there's a risk of administrative insolvency here.

We don't have any evidence of that and if we have to get to it, we'll get to it.  But notwithstanding, the concern was that if you have a roll-up, you know, the amount of the roll-up here is going to swap, potentially, other administrative expense claims.  It's

Deposition of DIP hearing                                    First Brands Group, LLC, et al.

DIP HEARING DAY 1

a superpriority claim, et cetera, et cetera.

So what we've agreed to with our DIP lenders is to carve out a $200 million administrative expense claims basket that would only be subject to the new money portion of the DIP.  So it would only be subordinate to that.  And if we're administratively insolvent then $200 million of admin expense claims, properly allowed, have to go through the process, et cetera, go next, right?  So before the roll-up amount is paid.

So we think that's a significant change, gives people some good assurance in terms of the administrative, you know, sort of downside scenario in this case, which we hope doesn't happen.

And besides that, you know, Mr. Moore, he's got some stuff in his declaration.  We will work

DIP HEARING DAY 1

with the UCC's advisors.  We will work with the advisors to the ad hoc group and our DIP lenders to really size that based on spend that's happening in the case, you know, what's going on with the employees, how often do we pay them, et cetera.

It's not perfect, right? We don't know what we don't know. But we didn't just kind of pick a number out of thin air.  We actually sat down and tried to size it and show it to people.  $200 million, we think, is a massive win for the debtor's estate.

JUDGE LOPEZ:  Mr. Ruff is going to stand up at some point and tell me that there's still not anything to show where the examiner is going to get paid.

MR. SINGH:  Yes.

JUDGE LOPEZ:  At some point he's going to stand up and say it. So I will save him the time.

DIP HEARING DAY 1

MR. RUFF:  Thank you, Your Honor.

JUDGE LOPEZ:  Again, it's not up for today.  I will tell everyone I intentionally pushed that out.  A committee had not been formed yet.  There were a lot of moving pieces and the motions got filed.  They obviously need to be heard.  But I wanted to make sure, in part, that a committee got up, that a committee got formed, that a committee was able to hire professionals, a committee was able to get up to speed to then have conversations so that when I took it up, everyone was a little bit smarter about what was going on and, you know, 30, 40 days would have passed in connection with this case.

So I wanted to put that out there.  It's not for today.  The scope of it is something completely different.  I don't want to talk

Deposition of DIP hearing

First Brands Group, LLC, et al.

DIP HEARING DAY 1

about that today.  I just know that that objection is coming.

MR. SINGH:  Yeah.

JUDGE LOPEZ:  So that's one of the outstanding ones.

MR. SINGH:  Your Honor, it's a good -- first, Your Honor, we appreciate the way in which you scheduled that motion.  And I think it was very helpful because it's not up for today but, as you said, it is somewhat connected.

What I would tell Your Honor is if we have a settlement, you know, with the players on this, I think we're going to have an agreed approach.  I'm not trying to (inaudible) Mr. Ruff or anybody that moved; but at least as between the UCC, the DIP lenders and the Debtors, we're trying to come up with an agreed approach that makes sense and is efficient for these cases to go talk to people.  We're

DIP HEARING DAY 1

not there yet, right.

JUDGE LOPEZ:  Yeah.

MR. SINGH:  Assuming we don't get there, Your Honor, I don't think we have consent today from our DIP lenders to say, yeah, they're going to foot the bill on an examiner. This is where it's going to sit in the carve-out.  Frankly they've made it clear that they're not consenting to that today.

Obviously, the motion's going to be heard by Your Honor. You're going to either have a settlement before you with respect to that motion or you're going to make some determination.  And I think we'll have to address, when we know the scope, the anticipated cost of a potential examiner, where it fits within the structure.  Does it fit within the carve-out?  Does it fit within the $200 million admin claim basket?

DIP HEARING DAY 1

We're not trying to prejudice that conversation either way.

JUDGE LOPEZ:  Let me just say -- I don't want to say too much, but I conceptually understand that if you create a carve-out someone will meet the carve-out, right?  So without knowing what the scope is, you've got to have more information before you can do it.  I try and give folks, Mr. Ruff, some comfort.

The code says there has to be one, so there's going to be one. The scope of what it is, I think everyone should look closely at the text and see exactly what examiners do; and I'm going to stick fairly close to what that is.

So I know that in some instances, some cases, examiners did some extra stuff.  They won't be doing it in this case.  We're going to stick right to the text in terms

DIP HEARING DAY 1

of what examiners are there to do. The text will guide us to what that is.  Everybody knows the cases in which they exist, I think.

I'll share this thought and then we can move on to something else because I don't want to talk about it anymore.  But it may be helpful as parties think about -- we have to think about this in terms of what parties could present to me. It seems someone getting appointed, disappearing for four months, then showing up with a report is not helpful.  I think four to five months out, six months out, it's just not beneficial.  I think at some point there are some questions that need to be answered to and someone can get them.

And I know there's a bunch of other professionals who are working on this.  So it's finding that balance.  I think if you look

DIP HEARING DAY 1

at some other -- you-all know the cases. Some of them -- and it was just the nature of the case, you know. It took a year for an examiner to write a report. I think those are too long for purposes of this case. I think, you know, somewhere around eight months later is probably just not going to -- just the nature of the case, it's just too long.

So I think as parties think about what it is, I think it ought to be tied to the point and relevant to what the parties would need to provide answers to to provide some clarity to an independent person that the statute requires. So that's the most I'll say; but obviously whoever that is, which I think is going to require some specialized expertise.

And then also, someone can write something in plain English,

DIP HEARING DAY 1

kind of out there for the public.  I know it's really hard in a case like this.  I think whoever that is, they will be paid but today is not the day to pick out a budget for it or scope.

MR. SINGH:  Yep.

JUDGE LOPEZ:  I don't want folks contemplating.  Stick to the text.  Stick to what is relevant.  Stick to what someone could provide some public information on and that is important and figure out a budget.  I have no insight into what that would be or what that would cost, but I do know that there are -- someone who wants an examiner to do 15 things, I don't want that.  I want targeted -- I think the parties can present what they want.  I'm just sharing my thoughts up front, but let the text guide you.

MR. SINGH:  Thank you, Your Honor.  That's helpful.

DIP HEARING DAY 1

So, Your Honor, going through the other key changes, we do have -- you know, one of the other issues that the UCC has raised in its objection is by rolling up the -- sorry, Your Honor.  Just one second.

Your Honor, breaking news. I'm told that we have a settlement with the creditors committee on its objection.  So, Your Honor, what I would suggest is if we could maybe -- yeah, Your Honor.  Rather than proceed, it might make sense if we could take a quick 15-minute break to confirm or correct.  And then I can, or somebody can, read the settlement into the record and we'll see if we can also finalize some of the other objections because they were contingent -- not necessarily done, but I think it would be helpful to clear this out.

So I defer, Your Honor, on

DIP HEARING DAY 1

how you want to proceed.

JUDGE LOPEZ:  I'm going to step off and let folks confer with each other and make sure that we've got a deal.  You don't have one until you have one.  So I think you mentioned 15 minutes.

Do you think that would be adequate?

MR. SINGH:  No, Your Honor. I'm sorry.  I wish.  Your Honor, why don't we do 30 minutes if that's okay.

JUDGE LOPEZ:  So let's do this. Here's what I'd like to do because there's a number of parties on the line.  Just within 30 minutes we'll come back on the record and at least announce kind of where we are.  And then maybe at some point -- if there's no deal, at some point someone is going to have to get on the stand, get exhibits in and make rulings.

DIP HEARING DAY 1

MR. SINGH:  Yeah.

JUDGE LOPEZ:  And I'll do it. Maybe it makes more sense if there's a deal that you read it into the record and then the parties can then start to talk about what the other ones look like.  And maybe for the last 15 minutes, for example, if Onset wishes to tell me something or Mr. Ruff wishes to tell me something, we can use that time.

MR. SINGH:  Exactly.

JUDGE LOPEZ:  And then everybody can break and we can take an hour and then come back.

MR. SINGH:  Thank you, Your Honor.  That would be great.  Thank you.

(Recess taken)

JUDGE LOPEZ:  We're back on the record in First Brands Group. Mr. Ruff, is there anything you wish to tell me at this time?

MR. RUFF:  Yeah, no.  Fair

DIP HEARING DAY 1

enough, Your Honor.  I appreciate it.

For the record, Jayson Ruff, United States Trustees Office. Your Honor, we did file our reservation of rights.  I think you saw that at docket 427.  And I think your comments I was very appreciative of earlier.

We understand that, you know, whatever is in the budget or is going to need to be in the budget is really going to be tied to the scope of an examiner, presuming that one is appointed.  So we just need to see that at some point.

I was a little surprised to see that an examiner was specifically excluded from our carve-out; but I understand and appreciate the debtor's comments on that, that maybe they're in the $200 million general admin fund. But I think they're like, if there's

DIP HEARING DAY 1

professionals and estate professionals, the U.S. Trustees Office believes they belong in the carve-out. So we just wanted to reserve those rights.

And then just finally, Your Honor, as far as a standing for a challenge period, I understand the committee has -- and I saw in the revised order they had extended the challenge period out. Look, Your Honor is going to order not only the scope of the examiner but you're also going to be telling the examiner how long he or she has to do their work and to get their report online.

I don't think what anybody wants to see is where a report is filed and we learn all these things. And the value of a report obviously -- and I'll save most of this for when -- but it's a report to the Court. It's an uncolored

DIP HEARING DAY 1

report.  It doesn't worry about how does this look for my client because Your Honor is essentially the client.  So there's a value in that.

So when that report comes out, whatever it tells us, if there's claims there, if there is a challenge -- or excuse me, a basis to challenge any of the releases, we think that those need to be preserved.

So that's just, I think, the things that we wanted to mention for the record.  I think that will be it for today.

JUDGE LOPEZ:  Thank you, Mr. Ruff.

Let me just ask counsel for Onset if there's anything you wish to tell me at this time or if anyone else wishes to address the Court.

MR. BUTTERFIELD:  Good morning.  Ben Butterfield, Morrison &

DIP HEARING DAY 1

Foerster.  Your Honor, you've read our objection so I'll keep this short.

Onset is the largest inventory equipment vendor to the debtors.  Based on our calculations, the claim is 2.2 billion.  We just read a complaint that the Debtors have filed against the sole shareholder of the company which suggested that 200 million of our cash would stay at the door of the sole shareholder.

So in addition to being the largest creditor of the company, individual creditor of the company, we may be the largest or one of the largest victims of the fraud that happened, if it did happen.  So we're looking at the stip very closely.

Based on reps from debtor's counsel and based on settlements that have happened to

DIP HEARING DAY 1

date, I think we're really down to

one issue and that issue is Viceroy.

I don't know if you recall that from

our objection.

JUDGE LOPEZ:  I do.

MR. BUTTERFIELD:  We have a

$1.5 billion guaranty claim against

Viceroy.  We think we are the only

creditor of Viceroy.  And it's an

SPV entity.  If you look at that big

org chart with, you know, 200 boxes

on it, it sits at the far right

upper corner of the org chart, above

all of the SPV entities, and it owns

a hundred percent of their equity.

As part of our SPV

transaction, it's part of our

off-balance sheet financing

transaction, we obtained a guaranty

from that box and the only guaranty

offered by that box for our deals.

Look, the Debtors are

proposing to have that box grant the

DIP guaranty.  There's an issue.

DIP HEARING DAY 1

Maybe we actually don't care because information flow here in the debtors -- no fault of the Debtors, is not good.  No one knows what's in the box.  No one knows if it has assets.

We were offered it as a guaranty because we were told it had value.  So we think it has value. And I think the fact that we think it has value, although we have no real knowledge of that.  We're just -- this is just based on information that was told to us, which may be completely wrong -- they want it, right?  So because we want it, they want it and because they want it, we want it.  We're in one of these situations.

We are working on a settlement.  And I think the fact that the committee has gotten their deal over the finish line apparently is going to be helpful towards that.

DIP HEARING DAY 1

But if we are not able to resolve the issue, the things that you should be thinking about today as you hear evidence are things like whether this guaranty makes sense for Viceroy.  Is the guaranty and entering into the DIP facility in the best interest of Viceroy?

When you think about what's in the best interest of Viceroy, you think about it's a savings to creditors.  The way that the guaranty is structured, it would be 1-point-something billion dollars of new money.  There would be no marshaling away from the business assets, meaning if they go to repay the DIP, they can just start with the business assets of Viceroy until they're exhausted, and then they can move on to the operational side.

No marshaling, dollar in, dollar out on the new DIP line, even though these boxes, this Viceroy

DIP HEARING DAY 1

box, is really not operational.  It sits there and holds equity.  We're told it has no actual assets.  All of the assets that it has are by virtue of its equity.  So it really shouldn't need that much money.

If there are professional fees that need to be covered, let us know what they are, and we'll cover it.  But we are struggling with the idea that Viceroy, exercising its own business judgment, could look at this DIP guaranty and say, out of this DIP, I get what?  I get maybe a couple million dollars for my legal fees.  And what am I giving in exchange?  I'm giving a $1.1 billion guaranty claim outside of bankruptcy.

If they had done something like this right before bankruptcy, it would be a fraudulent transfer. It would be gone.  But they didn't. They're doing it in bankruptcy and

DIP HEARING DAY 1

it's getting blessed by the Court.

So that's the issue.

I'll stop.  There were a

few other, you know, collateral

issues, things like we want notice

of new DIP obligors and we think the

challenge period should be our

challenge period.  Because we're the

only creditor in a lot of boxes, it

should actually mirror the

committee's challenge period, stuff

like that.  I don't think that's

going to hold up the deal.  The big

issue right now is Viceroy.

That's where we are.

We're going to use the one hour to

try to settle it, and we'll see if

we can get there.  Maybe we'll get

there, maybe not.  But as you hear

evidence this afternoon, if that

ends up happening, that's what you

should be thinking about.

JUDGE LOPEZ:  Thank you.

Before I turn to Mr. Singh, let me

DIP HEARING DAY 1

see if there's anyone else who wishes to address the Court at this time.

Okay, Mr. Singh.

MR. SINGH:  Thank you, Your Honor.

Your Honor, again, for the record, Sunny Singh of Weil Gotshal, proposed counsel to the Debtors.

Your Honor, I'm not going to respond on Onset.  We have a different view.  I'm just hopeful that we can settle this.  But, you know, later at some point, if I need to, I will address those issues.

Let me review for you, Your Honor, the proposed -- the terms, not proposed -- of the settlement --

JUDGE LOPEZ:  Hold on.

MR. SINGH:  Oh, I'm sorry. That's -- I need a minute, Your Honor.  I'm sorry.

JUDGE LOPEZ:  Okay.

DIP HEARING DAY 1

MR. KELLEY:  We have objections on file.  I think there was a misstatement earlier to suggest that our objections have been addressed as it relates to the debtor.  We've resolved our objections with the debtor.  I believe conceptually we're waiting on language with the cash management order.  And we understand the Debtors are turning their attention to the unsecured creditors committee.

I reserve my statements.  Probably before the hearing ends, we're going to make some statements to the Court.  But we intend to use the lunch hour and see if the language we floated to them can be resolved.  There are a number of receivable counterparties who are talking about language we need in the order.  And I understand the debtors have not yet had a chance to turn their attention to that.

DIP HEARING DAY 1

I think the lunch hour may need to be a little bit longer than a lunch hour; but I think there's room to make things happen.  I'll leave that for Your Honor to decide.

JUDGE LOPEZ:  Thank you.

MR. KELLEY:  Excuse me.  It's the second time I've done that. Charles Kelley.

JUDGE LOPEZ:  Mr. Barr, maybe what makes sense is that we all come back at 1:30 with something. Someone starts putting on evidence at 1:30, and if there's a deal with all the language, sounds like -- I think that's in everyone's best interest to just take a little bit of time and get some food and hammer out language.  If not, we just need to start just because of logistics.

MR. BARR:  Understood.  My only pushback -- and I apologize for pushing back -- is if we have the deal finalized, I would love to

DIP HEARING DAY 1

announce it because an hour and a half would give people time to rethink things.

JUDGE LOPEZ:  No, no, no.  I'm just thinking in terms of buttoning everything up.  It may take some time to be able to leave, a bunch of folks leave.  I'm thinking about logistics in terms of leaving, a bunch of folks exiting and then having to come back into the building.  I'm really only giving you an hour.

MR. BARR:  Yeah.

JUDGE LOPEZ:  That's exactly right.  So I'm going to wait five minutes.  I'm just going to turn my camera off.  I was just thinking in terms of it's going to take a long time to get through security and all that stuff.  I want to give everyone a full hour to kind of go and do the deal and get to wherever they need to be.  So I think 1:30 would make

First Brands Group, LLC, et al.

DIP HEARING DAY 1

the most sense from a logistics standpoint.

Folks on the line, I am going to stay here and we'll wait and see what happens.  I'm just going to mute the line -- actually, I'll keep my camera on and just mute the line.

Mr. Barr?

MR. BARR:  Thank you, Your Honor.  We don't want to take up more of your or anybody else's time. They are talking.  They said a minute, but I think we should just break.  Take the risk.

JUDGE LOPEZ:  Let's just take -- it's 12:02.  At 12:05 I'll break.  Folks are walking back in. We'll see where we are.

MR. BARR:  Thank you, Your Honor.  I apologize to everyone.

JUDGE LOPEZ:  No, no, no.

Mr. Barr?

MR. BARR:  Thank you, Your

DIP HEARING DAY 1

Honor.  I think we could use that break.  And we'll either be here putting our first witness up at 1:30 or Mr. Singh will be here explaining the settlement.

JUDGE LOPEZ:  Okay.  Thank you very much.  I'll see everyone at 1:30.  Thank you.  We are taking our break.  We are going to come back at 1:30.  For those on the line, we will come back at 1:30.  There were no updates other than we need to take a break.

I apologize.  I had the phone line on mute.  I just wanted to let everybody know.  Thank you.

(Luncheon recess)

JUDGE LOPEZ:  Okay.  Good afternoon.  This is Judge Lopez. It's November 6th.  Going to call First Brands.  It is now a little past 1:30.  Good afternoon.

MR. BARR:  Good afternoon. Matt Barr, Weil Gotshal, on behalf

DIP HEARING DAY 1

of Debtors.

Your Honor, the committee has asked for a ten-minute recess. However, there is a procedural issue that we would like to put in front of you with the committee; and the folks that are from the committee can handle that that are in the courtroom.

JUDGE LOPEZ:  Okay.

MR. BARR:  And that may take the ten minutes.  So maybe then we will roll right into it.

JUDGE LOPEZ:  Okay.

MR. BARR:  And the reason for it is we understand some of the committee professionals are on the phone with their client finalizing some conversations.

JUDGE LOPEZ:  Okay.

MR. BARR:  Thank you for the time.  It was hopefully helpful.  We do believe it was.

The issue that we have --

DIP HEARING DAY 1

and I'm sure Your Honor remembers --

one of our witnesses, Mr. Cowan --

JUDGE LOPEZ:  Oh, yes.

MR. BARR:  -- is in Paris on

his anniversary date walking into a

show and dinner.  We messed up by

obviously asking for the

adjournments, and they've all been

helpful, but we missed a window.

We've asked the

committee -- because if we're not

going to get to a deal, it is highly

likely we're going to be here

tomorrow as well -- if we could hear

that witness tomorrow morning.  And

I believe they object, believing

that it's unfair that the Debtors

get to put their witness on

potentially last as opposed to

putting on our burden and then

having the ability to object.

My response to that, Your

Honor, is we're not in front of a

jury.  We're in front of Your Honor.

DIP HEARING DAY 1

Your Honor could take the evidence in how you see fit, whether it's in order or out of order.  So if we are going to go forward --

JUDGE LOPEZ:  What would he testify to?

MR. BARR:  He's testifying to the propriety of the DIP, the process of getting the DIP, the fees, the roll-up, the economics of the DIP.

JUDGE LOPEZ:  Okay.

MR. BARR:  So that's our request, Your Honor.  I'm sure the committee would like to speak on it as well.

JUDGE LOPEZ:  Well, I'm just going to shut this down; and we'll start back up in the morning.  I'm going to do all this at one time. It's going to live or die on the merits.  Everybody's asking for adjournments.  No one's objected to any of the adjournments.

DIP HEARING DAY 1

I'll just shut this down and we'll start tomorrow morning but we won't leave. It may go into Saturday. It's just going to be one of those hearings, if that's what we end up doing. I don't know if he's going to go first or last but we will be doing it on Friday, if that's what we end up doing, but it will all be done at one time.

MR. BARR: Understood, Your Honor.

JUDGE LOPEZ: I think that there's concerns with travel and stuff like that, but everybody's asking me for the time. We're going to do this once and do it the right way and you're going to get to put on your case in chief, be able to cross and we'll just go.

MR. BARR: Okay. I appreciate that, Your Honor. Obviously we will move forward that way.

MR. CARLSON: I've been told

DIP HEARING DAY 1

the audio is not working.

MR. MENNITT:  Your Honor, I'm getting texts that the audio is muted and needs to be unmuted.

JUDGE LOPEZ:  Let me just tell folks.  You've missed nothing exciting.

The question is there is a witness who is essentially part of the Debtors' case in chief, and he will be unable to testify today.  So the question is can this witness go last?  There's an objection by the committee as to the procedure.

I indicated that if that witness is unable to testify today, that we would then start tomorrow morning.  I will let folks know I've got first-day around I think 2:00 p.m.  So we would have to take a break if that's what we did and then we'd keep working and we may go into Saturday to can get it done.

But I think we just do it one time.

DIP HEARING DAY 1

Maybe there's documents we can get in.  Is there major housekeeping where we can figure it out?  If we're not there, we're just going.  I'm prepared to go, and we'll just see where we go.

MR. BARR:  Understood, Your Honor.

JUDGE LOPEZ:  Okay.

MR. BARR:  So I guess then we would request the remainder of that ten-minute recess that the UCC asked for.

JUDGE LOPEZ:  I think where we are now is -- we can stay here, and you can continue to talk.  But at some point if things don't feel final, we'll start in the morning at 9:00 a.m.  Just let me know in ten minutes from a timing standpoint what we're doing.  We'll just -- I would like to use the time we've got.  I'll give you as much time as you want.

DIP HEARING DAY 1

What I think makes the most sense -- someone tell me if it doesn't -- I'll just step off and y'all can -- if someone needs me, you can -- whatever makes the most sense.  Just call me back up and then we'll take -- I will say if there are other witnesses, that it doesn't matter the order in which they go, y'all should think about that.  We've just got to use the time productively because we're here this afternoon.  But I got it.

MR. BARR:  We'll give it a try, Your Honor.

JUDGE LOPEZ:  Yeah, just to see where it goes.  I'll give you as much time.

So for the folks on the phone, I don't mean to keep you hanging; but I did want to do some periodic check-ins.  What makes the most sense?

MR. GEORGE:  Your Honor, Jayson

DIP HEARING DAY 1

George, Weil Gotshal Manges, on behalf of the Debtors.

We filed an emergency motion on Monday.  It was at docket No. 502 for an order authorizing the Debtors to enter into a surety credit facility with RLI.

JUDGE LOPEZ:  I did see that, yes.

MR. GEORGE:  I understand that the Court has not yet docketed that motion.

JUDGE LOPEZ:  No.  And I'll tell you why, because you were all coming today.  I wanted to figure out if there were any objections to it.  I knew everybody who I needed to talk to would be here.  So it was easier for me to just ask if -- can you remind me of the docket number?

MR. GEORGE:  It's 502.

JUDGE LOPEZ:  Any objection to 502?

Okay.  I'll get it on the

First Brands Group, LLC, et al.

DIP HEARING DAY 1

docket.

MR. GEORGE:  Thank you, Your Honor.

JUDGE LOPEZ:  Let me ask the committee.  How much time do you think -- I do want to do periodic check-ins just because there's currently 306 people on the phone, and I don't want them to just -- what makes the most sense?  How much time do you think you need?

I'm going to find this docket.  Remind me the docket number again.

MR. GEORGE:  502, Your Honor.

JUDGE LOPEZ:  502.  I'll get that signed right now.

MR. WINOGRAD:  Your Honor, Mike Winograd from Brown Rudnick for the committee.

When you ask how much time we need, I'm not sure what you're referring to.  Are you referring to --

DIP HEARING DAY 1

JUDGE LOPEZ:  I heard you needed ten minutes.

MR. WINOGRAD:  That was the first we heard as well.  But I assume what counsel meant is that our clients are talking to some of our other colleagues.  I don't think we need more time for that adjournment.

MR. CARTY:  Good afternoon, Your Honor.  Andrew Carty from Brown Rudnick on behalf of the official creditors committee.

I think at this point maybe an hour to try to get folks on the phone and talk through what we hope will be sort of final issues. I think that would be the request.

JUDGE LOPEZ:  Okay.  I'm going to give y'all that.  It's 1:42. We'll come back at 2:42.  I really am encouraging the parties.

I don't know what the outstanding issues are.  So I can

DIP HEARING DAY 1

just say that I think it's in everyone's best interest to just -- it's an expensive room.  Just get a deal done or let's figure out what the issues are and go.  But I do think it makes a lot of sense for the parties to continue to talk if it's productive and clients want to try and see if they can get this done.  You've got an hour.

I'm going to sit here and sign 502s so I don't forget and have to ask counsel one more time what the docket number is.  We'll come back at 2:45.

MR. CARTY:  Thank you, Your Honor.

MR. BARR:  Thank you, Your Honor.

(Recess taken)

JUDGE LOPEZ:  Okay.  This is Judge Lopez.  We are back on the record in First Brands.  Mr. Singh, good afternoon.

DIP HEARING DAY 1

MR. SINGH:  Good afternoon, Your Honor.  For the record, Sunny Singh, Weil Gotshal.  First, I want to thank you for your patience and to your staff.

The current status update is the UCC advisors are right now on the phone with their clients in one of the conference rooms, talking about settlement.  So I'm hopeful they'll come out and say, We have a deal.

In the meantime, Your Honor, and we've spoken with some of the parties, our suggestion would be that we should use the time wisely. Your Honor, I would be prepared to finish my opening remarks.  I would ask that nobody tap me on the shoulder unless it's to say we have a deal so that I can actually get through it this time.

I think counsel for the DIP lenders, Mr. Greenberg, has some

DIP HEARING DAY 1

opening remarks, and then we can let any opposing parties make their remarks and get into evidence, Your Honor.  With respect to evidence, Mr. Moore is here.  He's one of our declarants.  We can put him on today.  He's here live.

Then if we're not done by then, Your Honor, we can break to -- tomorrow starting with Mr. Cowan. This way we can use the rest of the afternoon productively; and then any parties opposing still at that time can oppose it, if that works for Your Honor.

JUDGE LOPEZ:  Let me just -- I have one -- yeah.  That works for me.  That's part of your case in chief anyway.

MR. SINGH:  Yeah.

JUDGE LOPEZ:  So I don't think I need intros, though.  I'll give everyone six, seven minutes of intro.  I'm well-versed between the

DIP HEARING DAY 1

briefing and today, I know exactly -- I just don't know which issues to hone in on quite yet because y'all are still talking. But I'm fully prepared. I know where you're going. I know what the case is. I know the economics as I currently understood them.

MR. SINGH: Yeah.

JUDGE LOPEZ: So I'm ready to go. I just have one housekeeping question. It's First Brands-related and it is -- things are happening in real-time as well for me. I have a hearing on Monday at 10:00 a.m. I know I approved the stips. I think the stip gets us through Monday. Do we have a sense of timing on Monday? I have a first-day matter scheduled.

MR. SINGH: Your Honor, let me just confer with Mr. Barr.

MR. BARR: Matt Barr, for the record, Your Honor, Weil Gotshal.

Are you asking about how

First Brands Group, LLC, et al.

DIP HEARING DAY 1

long we think that would take?

JUDGE LOPEZ:  Yeah.  I'm just going to -- I know I scheduled for 10:00 a.m., and I may just give everyone the morning.  Maybe start at 9:00 and go for a few hours.  And then I'll make a call on that.  So I'm just going to ask if we can start at 9:00 a.m. on Monday.  I'll let my case manager know because I think I'm going to have to schedule a first-day around 1:00 p.m., if that's okay.

MR. BARR:  That's fine.

JUDGE LOPEZ:  If we have to do a little bit more work, I've got a first-day.  We can at least work for a few hours and then see where we are and then pick back up.  If not, we can --

MR. BARR:  No problem.  We'll renotice that for 9:00 a.m.

JUDGE LOPEZ:  Thank you.

MR. SINGH:  Thank you, Your

DIP HEARING DAY 1

Honor.  Sunny Singh on behalf of First Brands.

Your Honor, so all I'm going to do is, I was in the middle of the key changes that I was summarizing.  I'm just going to finish through that list.  That will be my five minutes to just summarize for you, just so you know where we currently stand with respect to the Debtors' proposal so we use this time productively.

Your Honor, I already mentioned the administrative expense claims basket.  That's that $200 million.  In the event we've got an administrative insolvency situation, that it would effectively prime or sit in between the new money DIP and the roll-up DIP should Your Honor approve the roll-up. That's for administrative expense claims.

We've got the cram-down

DIP HEARING DAY 1

option that's built into the plan, where the ad hoc group and the DIP lenders have agreed that with respect to the roll-up amount of the DIP should Your Honor approve it, we can seek to cram that up.  Of course, it complies with the bankruptcy code.  They have their rights to object.  But there's no prejudice which the committee was talking about in its objection to say, look, that's treated as an admin exclusively.  You can only pay it in cash.  So we've got this other option.

Your Honor, marshaling, there's a lot of papers about marshaling, which I'm sure you've read.  Our current proposal is that with respect to the roll-up obligations, the DIP lenders agree, if Your Honor approves it, that they would marshal away, so look to other assets first before they look to

DIP HEARING DAY 1

avoidance and other unencumbered litigation proceeds, (inaudible) actually unencumbered prepetition, right.

But that doesn't apply -- and I think this is part of a sticking point with the committee -- that does not apply to the new money DIP obligations.  The DIP lenders are not agreeing to marshal with respect to that sort of -- you know, those sort of dollars.  I think, really, a couple of things on that.

I mean, one, our view is we believe we're getting fair consideration for that.  We're getting the entire DIP.  We're getting the structure, the only DIP that's currently on the table.

Your Honor, we also think that, you know, generally speaking -- it's in the papers; I'm not going to belabor the point -- this is secured creditor remedy.

First Brands Group, LLC, et al.

DIP HEARING DAY 1

I'm not sure the creditors committee can actually bring this claim.  And that's perhaps why they're objecting to the entire roll-up, right, and not just focusing on this particular issue, just in case they can't.

But really at the end of the day, this is part of the economic package under consideration that we've been able to negotiate. And I think we've sort of taken this as far as we can.  But that's the proposed treatment with respect to the new money versus the roll-up obligations, which only the roll-up obligations would be marshaled, effectively.

The last few points I think we had on this was there were a couple of other changes in the order that I don't know that we need to necessarily go through, but things like, you know, expanding the challenge period has moved.  So I'm

DIP HEARING DAY 1

not going to go through every last point, but those things --

JUDGE LOPEZ:  Those things still stand.  They all have been pushed out.

MR. SINGH:  Exactly.  They're all getting pushed out.  The DIP milestones have all been pushed out to new dates, particularly, the RSA is now the end of March.  We don't know what that RSA will say, but we've got plenty of time to figure it out.

Q of E has been pushed out.  And I'll just say this on the financial record, Your Honor. Milestone or no milestone, we are working as hard as we possibly can to get those things done, the financial basics that we need for all stakeholders that have information so that they can make reliable decisions here.

So, you know, I told --

DIP HEARING DAY 1

we've sort of made it clear to everybody, this work stream is happening.  We've been interviewing people.  I won't bore you with a number of conflicts of interest where people were disqualified.  So we're working through all of that.  But that work stream is moving forward, milestone or no milestone.  So, Your Honor, that's really the issue at the end of the day in terms of where we were.

Then, you know, what you're going to hear about in the evidence is that this is the economic package, roll-up included, fees included.  You'll hear all about it.  There are no other DIP proposals.  We've tried, we've looked.  There's nobody else that has come to the table.

And under that circumstance the special committee, which is two independent directors

DIP HEARING DAY 1

highly regarded, highly experienced advised by independent advisors, why Lazard and A&M believe this is the best DIP on the table and it should be approved.

With that, Your Honor, I'll turn it over.

JUDGE LOPEZ:  Thank you.  Just one question that I think I had as I'm trying to understand the DIP. Let's just talk about actions.

MR. SINGH:  Yes.

JUDGE LOPEZ:  Let's just say that it was a 542 action to get something back, but then we find out it really belonged to someone else, right?  What happens in that instance?

It's not something I need an answer to now.  It's just something I've been thinking about, where -- look, we're in a situation where something may come back into the estate but then someone else may

DIP HEARING DAY 1

claim actual ownership of the asset. Let's just say something is double pledged or something.

MR. SINGH:  Yeah.

JUDGE LOPEZ:  This is really my stuff, but you brought it back.  How do we sort through that scenario? At least I just want to make sure that -- someone else having a lien on it, that's one thing because the DIP addresses that.

I just don't know if someone is claiming an ownership interest in something that would then come back into the estate, I just want to make sure people are thinking about that.  I'm sure they have.  I'm just stating on the record because I keep -- there's a lot of discussion about, you know, claims to ownership of assets.  And I just want to make sure that we're clear about how that would be treated.

DIP HEARING DAY 1

MR. SINGH:  Your Honor, others have commented.  We have been talking about it because it's actually come up more so it happens in the factoring counterparties.

JUDGE LOPEZ:  Correct.

MR. SINGH:  Right.  And so the way we think about it is estate causes of action versus direct causes of action that may just belong to the factoring counterparties or, frankly, another third party.

All we can grant liens on are estate causes of action, right?  And so, Your Honor, it would frankly really depend on the claim and the nature of the claim, ultimately, that's brought at the end of the day and the DIP order doesn't make a predetermination with respect to any particular claim.  All it says is should it turn out that that is an estate cause of action in your

DIP HEARING DAY 1

hypothetical under 542, then it's subject to the liens and the structure that I just described with respect to the DIP.

But if it turns out that that was a direct cause of action and one of the factoring counterparties somehow had a direct claim to those proceeds, the DIP order doesn't prejudice them at all. So that will be an issue for another day.  Frankly I think you might hear some comments.  In fact, I'm glad you raised it because I think some factoring counterparties actually wanted to make that comment to make it clear that, of course, they're not waiving any rights to argue that something is potentially a direct claim and all this order does is say, to the extent it is an estate claim, what happens in terms of liens and how you rack up the proceeds.

DIP HEARING DAY 1

JUDGE LOPEZ:  I understand.

Thank you.

MR. SINGH:  Thank you, Your Honor.

MR. GREENBERG:  Good afternoon, Your Honor.  Scott Greenberg, Gibson Dunn & Crusher on behalf of the DIP term loan lenders and the prepetition term lenders.

And, Your Honor, I heard your comments loud and clear.  So this is the short version.  And if we get there because there's no deal, we'll save it for closing.

JUDGE LOPEZ:  Okay.

MR. GREENBERG:  But just to frame it a little bit, Your Honor, we as the DIP loan lenders are here today obviously supporting the debtors in obtaining the final approval of the DIP financing, without which, Your Honor, there's no path for preserving and maximizing the value of the benefit

DIP HEARING DAY 1

for all stakeholders.

There's no path for keeping these debtors together as a going concern, and there's no path for preserving tens of thousands of jobs and insuring that key counterparties have a company to transact with on a go-forward basis. As I'm sure Your Honor has already read our reply, that's at docket No. 550.

Your Honor, I know some of this will pick up on the theme from the first day, but I'll say without hesitation this is certainly the riskiest DIP financing I've personally ever been involved in in my career. The case circumstances, as Your Honor are well aware, are unique; and the DIP has to be considered in light of that reality.

The reality is, Your Honor, that my clients are funding into what appears to be, at least

Deposition of DIP hearing                                    First Brands Group, LLC, et al.

DIP HEARING DAY 1

looking backwards, a massive fraud case. There is no way to sugarcoat that reality for our clients. That alone obviously sets this case apart from most other cases we all deal with. So what's happened since we were before Your Honor, at least virtually, in early October?

Candidly, Your Honor, and I'm sure you've picked up on some of this in the declarations that the debtors have submitted, is the situation hasn't necessarily gotten better from our vantage point. The results of the investigation to date, as well as developments in the case generally have not been encouraging. And as set forth in the affidavit that Your Honor saw with the TRO motion filed against Mr. James on Monday, the debtors have uncovered serious allegations of fraud and misconduct by the founder and people associated with

DIP HEARING DAY 1

him.

Moreover, as Your Honor knows from monitoring this docket, there have been numerous motions filed in this case.  We've had multiple motions for extraordinary relief, including two motions to appoint an examiner, a motion for appointment of a Chapter 11 trustee, motions to dismiss certain of the cases, all of which, as Your Honor knows, puts significant stress on the timeline of this case and a path to a clean exit, which is eventually what we're all hoping for.

The debtors themselves have filed supplemental declarations, Mr. Cowan from Lazard, the Debtors' new banker, talking about performance since the petition date and problems they've been confronting on what we refer to as rest-of-world or out of North America.

DIP HEARING DAY 1

The debtors further fled heightened uncertainty and risk since the petition date.  It just underscores the fact, Your Honor -- and we say it in our pleading and we mean it -- that the risk our client faced on petition date in some respects has gotten even worse in the early stages of these cases as we learn more, as we talked about in October.

Just to be honest, Your Honor, I know we talk a lot about everyone's problems with the DIP and people's alleged infirmities but the reality is despite all the people in the courtroom, I've not seen anyone line up to fund this DIP.  Not just by the sheer size and complexity of these cases but by the overhang of fraud, obviously it makes it tough. So it's pretty obvious that people aren't fighting us to put up alternative capital.

DIP HEARING DAY 1

The irony, Your Honor, that's embedded in some of the various DIP objections as we read them as the DIP lenders is that obviously, as always the case, people will complain about the DIP and fees and in this case roll-up and other issues.  But in the same breath, as people don't like this DIP, there's a lot of paperwork that's been laid out to suggest that it's not enough, right?  So while you don't like the DIP in one breath, in the other breath we're not doing enough.

They need more money. There needs to be more adequate protection, more cash, more for professionals.  So it's a little bit ironic from our standpoint, the objections that have been filed, although we do understand that we have to deal with them.

Everyone wants something

DIP HEARING DAY 1

from these estates, Your Honor, but my clients are the only ones that I've seen that are ready, willing and able to carry the freight and pay the cost of these cases.  And as Your Honor has seen in the pleadings and we'll talk about through the evidence, that's not just the freighted entities in which we own collateral.  We're actually funding outside of entities where we have collateral, and we don't have direct liens.  And that bleeds into the ABL and inventory as well, which we'll get to.

We need to fund broadly across all the entities and coupled with the circumstances, complexity, and uncertainty of these cases, it makes this DIP financing, in our opinion, wholly unprecedented.  In pricing this DIP, Your Honor, with its risk profile, is effectively an impossible task.  It truly is.

DIP HEARING DAY 1

To that end, Your Honor, I just want to highlight a couple features of the DIP financing, which I don't think we sufficiently focused on in the first day, but just to put some broad-brush strokes around the risk in addition to the obvious risk of this case.

Despite all the noise here, Your Honor, we're not asking for any DIP liens or claims at the SPV debtors. This is practically unheard of for a new money loan, especially because we are paying the freight and funding down -- you heard commentary about Viceroy. We'll talk about that. It's part of the case. But we're effectively funding down from Viceroy into the SPV debtors, even though we're not taking any claims or liens at those boxes.

Second, Your Honor, what the debtors refer to as

DIP HEARING DAY 1

rest-of-world funding overseas -- again, a bunch of these entities are non-debtors.  We're funding money -- I think millions of dollars have already been shipped overseas from our DIP proceeds.  We're not taking any direct liens.  And structurally we're going to sit behind any claims that sit at those boxes in those foreign entities.

And the last part, Your Honor, which is very unusual from my standpoint, is we don't have an ABL partner participating in the DIP currently.  So effectively at this point in time DIP dollars are being used to purchase inventory. Pursuant to the waterfall we sit behind the ABL.  So we're effectively putting money in on a junior basis so the company can function in ordinary course.

So it's important to think about not just the big picture of

DIP HEARING DAY 1

why this is a risky DIP, obviously the allegations overhanging this company.  But also the structure which as far as my persons, couple examples, put our new money DIP dollars at risk every day we fund into the entity.  And I do believe, Your Honor, that when we get to the end of this hearing, you will agree with us that the debtors have carried their burden of proof, and the fees and the associated provisions and economics are warranted under the circumstances.

Your Honor, we've agreed to a bunch of bespoke provisions, some of which Mr. Singh took you through, in the DIP order and the revised DIP order.  And despite what I would characterize as off-the-shelf accusations that we were the only DIP lender, and therefore, we had the proverbial gun to the Debtors' head and got

DIP HEARING DAY 1

whatever we wanted, I think the changes to the order, since you've seen between interim and final, would rebut that argument.

To put it bluntly, Your Honor, you can't have it both ways. They expect our clients, everyone in this room, including the debtors, to effectively lend into a black box which doesn't seem to have a bottom but complain in the same breath that we haven't lent enough or we haven't funded enough professionals, while at the same time stripping both the mechanical and the economic protections that we negotiated with the debtor to underwrite this DIP at the outset.

Your Honor, I said I was going to do the Reader's Digest version. So I'll stick with it. I think to the extent we don't get to a deal with the creditors committee, obviously we'll reserve for closing

DIP HEARING DAY 1

more details.  Thank you, Your

Honor.

MR. SINGH:  Your Honor, if I

can come back up.  Again,

Sunny Singh on behalf of the

debtors.  I'm pleased to announce we

have a deal.  I just really wanted

Mr. Greenberg to get through that.

He's been dying all morning to make

his statements.

Your Honor, if it's okay

with you -- and this deal is with

the UCC, the debtors and the DIP

lenders that will resolve the UCC's

objections.

If it's okay with you, the

parties have agreed that I can read

into the record the terms of the

deal in principle.  I'm not going to

read the actual language of where we

are, obviously answer any questions

Your Honor may have with respect to

this.

And then what we would do,

DIP HEARING DAY 1

at least with respect to the UCC, is work on the order language, which will probably take us the rest of the day, and either submit it to Your Honor overnight, or we'll be back -- if we've got an agreed order, we'll be back before Your Honor tomorrow if you can hear us.

There's still other parties that are, I think, getting closer.  But at least we'll be done with the UCC, and we can take stock of where we are with everybody else and then finish that overnight as well.

JUDGE LOPEZ:  Okay.

MR. SINGH:  If that's okay, Judge.

JUDGE LOPEZ:  Let me just confirm that.

Are you okay with him reading these terms on the record?

MR. CARTY:  Subject to hearing them.

DIP HEARING DAY 1

Your Honor, for the record, Andrew Carty, Brown Rudnick, on behalf of the committee.  We're fine with Mr. Singh reading into the record his view of the deal.  To the extent we have comments, we'll make those comments and then we'll --

JUDGE LOPEZ:  Why don't we get you a chair.  You can hang close.

MR. SINGH:  Your Honor, I'll live by their role.  As my wife always says, just because I say it, doesn't mean you're right.

Okay.  I'm going to start.  So, Your Honor, the settlement is all of the terms that I outlined for Your Honor this morning that are already in the proposed order, the administrative claims basket, the cram-up, that sticks.  So this is just on top of that, the remaining terms --

JUDGE LOPEZ:  The extension of the milestones as well?

DIP HEARING DAY 1

MR. SINGH:  The extension of the milestones, the committee budget, the extension of the challenge period, everything that was in the -- by the way, we've agreed to make on some of the smaller points a couple of more additional modifications in favor of the committee.  I'm not going to necessarily read through those today but we've got a couple of additional things.

So the settlement is that the roll-up will be -- the committee will drop its objection.  Should Your Honor approve it, the roll-up will be approved on a 3-to-1 basis, as proposed, with all of the fees, subject to the following:  That with respect to proceeds of avoidance actions or commercial tort claims that are not otherwise encumbered already -- I'm just going to come back to that -- so litigation

DIP HEARING DAY 1

proceed recovery, right, in that category -- the roll-up would be approved on a 1-to-1 basis, right?

I'll explain this in a second.  Let me get it all out.  And the way that would work is it would be -- when you're thinking about just the avoidance proceeds, it's the new money DIP obligations, including interest, plus only the principal amount of the roll-up.  So on a 1-to-1 basis, so $1.1 billion.

So the way to think about it is at that level, right, the DIP lenders will agree that they will marshal away from avoidance proceeds for those amounts and look just to their other assets, right, including the unencumbered assets.

The way I sort of think about it, Your Honor, is basically assume that interest is 3, $400 million.  So the first $2.5 billion if you add up the

DIP HEARING DAY 1

principal amount, 2.1, plus the new

money DIP with interest, 1.4 --

sorry, principal amount 1.1 of the

roll-up obligations, plus you've got

the new money DIP with interest.

That's about 1.4.  We're just

estimating.  So you've got

$2.5 billion of what we call -- you

know what I'm talking about here.

JUDGE LOPEZ:  Uh-huh.

MR. SINGH:  So what they're

going to do with the DIP lenders is

with respect to that 2.5 billion,

they'll first look to enterprise

value, right?  So nonlitigation

proceed recovery.  If they get cash

out from that, then the balance of

the roll-up does not attach to the

avoidance proceeds.

But what happens with

respect to that is the DIP lenders

retain their adequate protection

liens, right, so we treat that as if

it was prepetition.  They have to

DIP HEARING DAY 1

prove and they have a right to prove diminution in value.  Creditors committee and others can object. And if there's no diminution in value or if there is, whatever is left over to the extent they have a deficiency claim, there's no waiver with respect to the deficiency claim, right?  So they have an unsecured claim with respect to that.

So that's how we would sort of, you know, try to resolve this issue on an asset proposed settlement.  The one other point, just going back to what I said, it includes not only avoidance proceeds, but commercial tort claims to the extent they are not already encumbered.  That issue we're reserving rights on.

So the DIP lenders can say, look, I already had prepetition liens on this particular commercial

DIP HEARING DAY 1

tort claim.  And the UCC or the debtors could say, well, no, you didn't and we can sort of fight about that issue.  It is what it is. But the DIP lenders are not waiving those rights, if you follow what I'm saying.

And then the rest of the order is basically they get the 3-to-1 roll-up with respect to all other assets that we're talking about here.  So I know that's insanely complicated, but it's really -- if you think about the avoidance proceeds, what we focused on is what is the hurdle that you have to clear with respect to other assets.

And, you know, assuming my interest rates that I went through, it's basically $2.5 billion, right? Then if you clear that with other assets, then the DIP liens, which includes the 1-to-1 roll-up on a

Deposition of DIP hearing                                    First Brands Group, LLC, et al.

                         DIP HEARING DAY 1

principal basis, don't get to

collect from the avoidance proceeds

or the litigation recovery proceeds.

          JUDGE LOPEZ:  I get it.

          MR. SINGH:  Okay.  A couple of

other points to this, Your Honor.

The idea here is, you know, timing

should not affect the settlement.

So if avoidance proceeds come in

first versus sale proceeds coming in

second or vice versa, the idea is we

can do things that make sense and

sort of deal with timing and

allocation at the end, right?

               The idea is -- the timing

is not supposed to prejudice either

side, right?  So when proceeds come

in sort of doesn't matter.  Under

the settlement this deal applies.

          JUDGE LOPEZ:  The allocation.

          MR. SINGH:  The allocation,

exactly.

               Then Your Honor, with

respect to the examiner motion, you

DIP HEARING DAY 1

know, I mentioned earlier that we were going to get together.  And we are still going to do that, right? The idea is, look, we really want to have an efficient case.  I think from the DIP lenders' perspective they're buying not just a piece of the settlement, they're going to buy global peace on that issue and whatever else makes sense for us to move forward in a more efficient way in these cases.  Obviously we're not binding anybody to anything.

But what we've agreed and thanks to Raistone, who's been helpful on this, they filed their motion, supposed to be heard right now on the 17th.  What we've agreed is to request that Your Honor -- and, of course, we want to consult with the U.S. Trustees Office if they're okay with all of this.  I didn't get a chance to talk to Mr. Ruff -- is to just push that

DIP HEARING DAY 1

motion onto the December 8th hearing if Your Honor -- that Your Honor provided this morning for CarVal and some of the other stuff we're adjourning.

In the meantime, we would also push discovery off for a week, come up with a schedule but really use this week to see if we can agree on scope and potentially a budget in line with Your Honor's comments this morning and what we think makes sense.

So hopefully this will lead to a path to resolution of the examiner motion as well.  If it doesn't, we'll have to deal with it on the 8th.  So we're not binding anybody to this.  But the idea is let's see if we can wrap this up together.  So that's how we would treat the examiner motion.

JUDGE LOPEZ:  I'll just schedule with respect to the

DIP HEARING DAY 1

examiner motion, and then there was a schedule, I think, extending the time to file a response and a Sunday reply.

MR. SINGH:  Yes.  I should have mentioned.  We've agreed to extend those.  We don't have the dates but everybody's agreed that we're going to push all that out, including the discovery, so that we don't --

JUDGE LOPEZ:  I will sign the order.  I'll tell everybody.  I will sign the stipulation that pushes it out.  I'm not guaranteeing I'll read it if you file it on Sunday night, but I promise you I'll sign the order if you want to file a reply at that time.  So just use your time wisely.

MR. SINGH:  I appreciate your confidence, Your Honor.  We'll come back to you and give you a better -- a more refined schedule.

Your Honor, I'm going to

DIP HEARING DAY 1

let --

JUDGE LOPEZ:  Obviously I want to consult Mr. Ruff on that.

Mr. Ruff, my gut is if everybody's rights are preserved with respect to the motion and the parties want to engage in free dialogue, I'm open to it.  But obviously I want folks to be able to talk to me, and I want to be able to talk to you folks and give you as much time as you need.  And we have time.  It isn't up till --

MR. RUFF:  It's currently scheduled for the 17th.

JUDGE LOPEZ:  I think parties have time to talk.

MR. RUFF:  We have time to talk and I need to talk with my client. I have no authority to do anything today.

JUDGE LOPEZ:  I don't want you to do anything today other than --

MR. RUFF:  It's my first time

DIP HEARING DAY 1

hearing of it, just as you are, Your Honor.

JUDGE LOPEZ:  You got it. Thank you, Mr. Ruff.  Let's not say any more about that.

MR. SINGH:  Yeah.  And Your Honor, I'll personally apologize to Mr. Ruff.  This is moving.  He's been patiently waiting here all day, and I didn't get a chance to update him before.

So, Your Honor, again, those are the key terms of the settlement that I just outlined.  So what we'd like to do is work on the order, you know.  It will probably take us the better part of today and into the night.  Then we can figure out where we are with the other parties.  We are advancing the ball there as well.

So I'll let Mr. Carty or anybody stand up if they've got any clarifications -- or Mr. Greenberg.

DIP HEARING DAY 1

But that was all I wanted to say on the settlement.  Thank you.

MR. CARTY:  Good afternoon, Your Honor.  Andrew Carty from Brown Rudnick on behalf of the official creditors committee.  First off, thank you, Your Honor, for your accommodations today, very productive, very fruitful.

I think Mr. Singh's summation generally captures the deal.  We obviously need to document it, and we're going to be working very hard to do that over the next couple of hours.  There are some other items -- Mr. Singh, I think, alluded to some of them -- that kind of get into the weeds.  I don't think we need to get into that and I don't think there should be an issue finalizing language on that.

There is going to be some language around that cram-up option that's in the order that we're going

DIP HEARING DAY 1

to have to clarify some things, especially how it's going to function and then there was also discussion to the extent that exclusivity is opened up, the committee would also have.  I think right now it's limited to the debtors, but the committee would have that to the extent exclusivity is opened.

With that, Your Honor, the only other thing -- this is sort of a funky one.  And, again, this is something that I discussed with Mr. Singh and I believe he discussed it with Mr. Greenberg, which is that to the extent that the debtors or the committee, to the extent exclusivity is opened up, propose a cram-up plan, there can't be a provision in the RSA, for example, or some other agreement with the lenders that would trigger a default of the DIP that would essentially

DIP HEARING DAY 1

undo the spirit of that deal.

So we'll have to work through that.  It's odd because I think it's sort of a time issue.  We have this RSA milestone, as an example, that's five months from now.  So what we do here in the DIP essentially can't be undone by requirements of an RSA-acceptable plan that prohibit what we've agreed to in the DIP and that would result in a default under the DIP to the extent the debtors move forward with it.

That's the idea.  Again, I think we can work some language on that, but with that, Your Honor, thank you very much.

JUDGE LOPEZ:  Thank you very much.  So, Mr. Greenberg, yes.

MR. GREENBERG:  Thank you, Your Honor.  Scott Greenberg, Gibson Dunn & Crutcher.

Since this is kind of a

DIP HEARING DAY 1

tri-parte discussion that's been going on.  I'm glad to see my opening served a purpose.  I've burned enough time for the committee to finally tell us we're good to go. But in all seriousness, obviously we're happy to try to get this resolved and behind us.  I know there's probably some ancillary parties we still need to deal with.

As it relates to kind of the key economics that Mr. Singh outlined, it's our understanding as well -- I mean, obviously, as you know from all of the adjournments, working hard to try to get this done.

I think at this point I wouldn't belabor the record.  I think we've just got to get it in the order and agree on it and put something in front of Your Honor, but the key economic terms I just wanted to confirm were good with the

DIP HEARING DAY 1

DIP lenders.

JUDGE LOPEZ:  Thank you.  I had some things scheduled for 10:00 a.m., not the entire morning. I've got a first-day at 1:00.  Does 9:00 a.m. make sense for tomorrow morning?

MR. SINGH:  Yes, Your Honor.

JUDGE LOPEZ:  So what I would ask is -- if it's possible, what I'd really like to do is sometime, like 7:00 a.m., just come in.  If somebody could have something -- even if it's the latest and greatest statement that everyone can read, something on the docket.  That way, someone can take an hour in the morning, like sometime between -- in the morning so myself, Mr. Ruff and others can just read whatever the latest version of the proposed order is if you've got something there, so we can at least get my head wrapped around what version it is.

DIP HEARING DAY 1

If it gets filed late tonight, that's fine.  What I would like to do is kind of walk in around 7:30 in the morning and just read for an hour, hour and a half before I kind of just got in.  But also at the same time, give everyone else an opportunity to kind of read and see to what extent -- and I've got things to move by the time that paper gets here, but at least I know and the general public has something here.

Other than that, I'm going to end up taking an hour reading it on the spot.  That's fine.  I don't want to do that or give people just as much notice as we can in terms of what the order would look like.  And I know you're going to be talking about other parties.  I got it. Subject, you can put all the reservation of rights language and all that good stuff in there on the

DIP HEARING DAY 1

one page.  But I really just need --
it would help me to just take an
hour and read kind of where things
are.  I understand it conceptually.
It all makes sense to me.  I think
the latest and greatest, just for
the people -- so many people in this
case and I think it would be helpful
to give the positive notes as well.

MR. SINGH:  No problem,
Your Honor.  We're obviously happy
to do that.  We'll be sharing
versions, not just with the UCC and
the DIP lenders, but with the ABLs,
all the people, Onset, et cetera,
et cetera.  We're happy to circulate
it to as many people as we can.  So
that makes sense, Your Honor.

I think, to move forward
there's a couple of options.  I
mean, I think -- I don't want to ask
for another brief recess to just
take stock of where we are.

JUDGE LOPEZ:  It's so much fun.

DIP HEARING DAY 1

MR. SINGH:  I think we'd want to move our evidence in for the record since we are moving forward with that.  I'm not hesitant to do that.  I just want to know if people are going to cross, et cetera, if we still have any open issues.

So I'm trying to figure out if we're resolved or people are okay to defer, how others want to proceed.  And I haven't had a chance to speak to people because they're just now learning of this news.

JUDGE LOPEZ:  Let's just break, figure out what evidence you've got tomorrow.  Just have the witness available, I guess, just in case.

MR. SINGH:  Okay.  That makes sense, Your Honor.

JUDGE LOPEZ:  Let both parties keep working and get it all buttoned up.

MR. SINGH:  That makes sense, Your Honor.

DIP HEARING DAY 1

JUDGE LOPEZ:  Let's just have a good morning.

MR. CARLSON:  Sorry.  We settled -- we reached a short-term settlement with UMB.

JUDGE LOPEZ:  Oh, yes.  Can we get that on the record.

MR. CARLSON:  I can read that into the record and come back tomorrow.

So, Your Honor, it's a one-week --

JUDGE LOPEZ:  This is with UMB?

MR. CARLSON:  Yes, UMB.

JUDGE LOPEZ:  Thank you.

MR. CARLSON:  It's a one-week settlement.  There's a dispute over ownership of the inventory, whether it's owned by the Debtors' entities or non-debtor entities.  And that's obviously not going to be decided today and rights are reserved.

To keep the status quo over the next seven days, it's -- to

DIP HEARING DAY 1

the extent that UMB holds an interest in the inventory as of the petition date, you know, a lien will attach to any interest of the debtors in the inventory to the extent that the inventory is replenished.  So we'll have a replacement lien, again, to the extent that they had it as of the petition date, over the next seven days.

JUDGE LOPEZ:  Got it.

MR. CARLSON:  So that's -- at those sites.

And then the second piece of the settlement for the next seven days is that the debtors will undertake to have Ultinon, the non-debtor, operating in the ordinary course over the next seven days, consistent with how it's been operating over the past few weeks as a distressed company, but the way in which it buys and sells inventory at

DIP HEARING DAY 1

those facilities.

Did I get that right?

JUDGE LOPEZ:  So I'll ask you, what happens on November 13th?

MR. CARLSON:  So we were in discussion -- we're going to set up a call to try to resolve this is the short answer.

JUDGE LOPEZ:  The reason I'm saying is I won't be in town on those days.  And I'm on a flight on the 12th.  What I'm saying is if we do something, we may have to go --

MR. BLANK:  Do you want to supply them with more time?  I don't know if --

JUDGE LOPEZ:  No, no.  What I'm saying is just on the 13th, if we had to do something, it's going to have to be like old school like on the phone, you know, dial in, no video kind of stuff.  It will just be an old school dial-in hearing and you can figure out if you want that.

DIP HEARING DAY 1

If you want to stip it out just till a Monday or something, I'd be fine with that as well. Obviously I'm just -- yeah. That's going to be --

MR. CARLSON: I think we should be fine to have it extended to Monday.

JUDGE LOPEZ: We'll keep it there. I'm just giving you that. Just giving everyone timing.

MR. BLANK: Steve Blank, for the record, from Alston for UMB. More than okay going old school. The only thing I would point out is if we don't get to a resolution, then we're going to be back in front of you asking for more adequate protection, which also means it's going to be an evidentiary hearing.

So clearly, reserving rights with whether it's Mr. Moore and to be able to cross-examine him, to bring my witness back. I'm

DIP HEARING DAY 1

recognizing there's going to be limitations with doing that old school on the phone.

JUDGE LOPEZ:  Yeah.  That's why I'm saying if it's just -- that's fine.  Everybody's rights would be preserved.  Just wanted to give you a sense of my schedule on the record as you think about this.  That makes perfect sense.  With an extension, we've got no issue.

MR. BLANK:  Then a few other clarifications, Your Honor.  And just to be clear, my understanding of the way the DIP order is working is that -- well, no, because just to make clear that any of the goodies that were in the DIP order clarifying that the liens are not attaching to SPEs, that the collateral is carved out, all of that stuff is going to apply to us as well.

There's no admin claims

DIP HEARING DAY 1

when it comes to 549, Chapter 5,
none of those types of causes of --
the DIP is not getting anything like
that at our boxes right now, and we
clearly reserve rights with all
Chapter 5s and 549s.  Then yeah,
continuing to reserve rights.  I
appreciate the debtors working with
us to get an extension.  Either
we'll be back in front of you on the
13th or that Monday.

JUDGE LOPEZ:  All right.  Thank
you.

MR. BLANK:  And Your Honor, to
the extent that it ends up having to
be for Monday, I assume the
protections would roll to Monday?

JUDGE LOPEZ:  That's my
understanding.  That's what I mean.
Just give that some thought.  Yeah.
You're already coming on Monday,
Monday the 17th.

MR. CARLSON:  That may move in
light of the settlement.

DIP HEARING DAY 1

JUDGE LOPEZ:  So just give that some thought.  We'll all be here.

MR. BLANK:  Appreciate it, Your Honor.

MR. CARLSON:  One other brief update.  We've also reached a deal in principle with the ABL lenders. I told Mr. McGuire, counsel for the ABL lenders, that we wanted to -- we're still working out stuff in the order but we've got a deal in principle.  We can talk about what that settlement is tomorrow as well.

JUDGE LOPEZ:  Okay.  Thank you.

MR. KELLEY:  Good afternoon, Judge.  Charles Kelley from Mayer Brown on behalf of one of the more recently christened ancillary parties by Mr. Greenberg on behalf of Katsumi Finance -- excuse me, Katsumi Servicing.  Forgive me.

There are a number of receivable parties who may have similar or additional views on this

DIP HEARING DAY 1

and they'll probably speak to this. I have some things that I will want to address before the end of the hearing.  We have floated some ideas with the debtors, and I'm not going to announce what those ideas are, giving the debtors a chance to process those.

If we can reach agreement, we'll be explaining those tomorrow. If we do not, we'll be arguing those tomorrow.  So I appreciate the record won't be built until tomorrow, because that will determine whether we're cross-examining witnesses or challenging admission of exhibits.

JUDGE LOPEZ:  That's correct.

MR. KELLEY:  But for now I was heartened by the Court's comments recognizing a fundamental issue that we've been focused on, which is we attempted prepetition to purchase, and we do believe those transactions

DIP HEARING DAY 1

are defensible and structured as true sales of receivables.  On first-day we started with the declaration that informed us that there might have been some double charging or double billing of those receivables to third parties where maybe proceeds weren't made there.

The protections we put in the interim order were constructed specifically to protect our rights. Either we own outright separate property and, therefore, it's not property of the estate, or we've got proceeds that are proceeds that we have to go track down, but those are our proceeds.

We now were told, as of three or four days ago, there's a little bit of ground shifting going on, size and proportion we're going to get into.  And now there's maybe bigger issues than just double selling receivables is what we've

DIP HEARING DAY 1

heard.

We have been talking about process and procedure with the debtors and we have to have more flesh on the bones on that.  But the big thing from our perspective is those are individual harms to these parties, not estate causes of action, individual harms.  So we have been trying to be very judicious in the way we put our objections together and a lot of the remedies we see which are all tied to those claims.

We don't really think the challenge period applies to us because these are individual causes of action, not estate causes of action.  We've been trying to draw clearly where we think that line is. There may be some things that we have to look at as to how we deal with that through procedures we're talking about with the debtors.

Deposition of DIP hearing

First Brands Group, LLC, et al.

DIP HEARING DAY 1

But those causes of action are ours.  The cause of action related to whether they're actual receivables, meaning there's money in the hands of the debtors that we have to get, whether there's been defrauding and our proceeds were stolen property from us, the money went somewhere else.  We have rights in and to recover those against third parties.  Obviously the stay prevents us from going directly after the debtor, and we respect that.

We are concerned about those parameters and how we have to deal with -- we're the biggest perhaps parties here who are trying to find information.  We've provided a lot of information to the debtors. The debtors have assured us that they're going to reciprocate and provide us information.  We don't have it as we stand here today.

DIP HEARING DAY 1

For that reason there's a lot of protections we've been asking because on day one we were looking at one sort of problem.  Now here we are on the second day, looking at a variety of different issues and we've put some language out there that we think protects us.

I heard the settlement with the committee talked about commercial tort claims going to the committee.  That's fine but those are estate causes of action, not our causes of action, and those are issues that we'll be looking at the language on.  But we were heartened that the Court recognized those issues and we've been very crisp on staying focused on those because we still don't know the full scope of what we're talking about.

We will be constructive. We hope everything will be able to be addressed in language in the

DIP HEARING DAY 1

order.  We've had some very robust conversations with the debtors.  But for now we did not want to be a creditor of this estate.  We were thinking we were doing a transaction of buying separate property and would not be.

We have been told obviously by these actions we may be involuntary creditors here of the estate to an order of magnitude we're going to learn about.  But for that reason, I wanted to say a few words before you got a chance to see the form of order so you know what issues we're going to be attuned to.

We're going to try to work within the parameters of what is an estate cause of action versus what maybe are individual causes of action.  We are open to working very cooperatively with the estate on how we navigate those channels.  But we find ourselves with a landscape that

DIP HEARING DAY 1

has dramatically changed in the past 72 hours.  We're still learning and processing in our positioning ourselves, Judge.

Thank you for the opportunity.  I'm going to want to speak more after we figure out what we can work out with the debtors. If not, we'll be making arguments of what we think should belong in that order.

JUDGE LOPEZ:  Thank you very much.

One thing I wanted to clarify on the record, Mr. Carlson. I know I said we'd be back on the 17th.  I know at the same time you asked that potentially that hearing get moved.  What I intended to say is that there's time already slotted out for First Brands on that day. So if we had to move to the 17th, that time slot works, in other words.  If that's a better time

DIP HEARING DAY 1

slot.

I understand that there may be a hearing that day or not, and I want to let y'all work that out. But at least there was a slot available, and we could use that time slot as an available time slot. That's what I meant.

MR. CARLSON: Understood.

JUDGE LOPEZ: Thank you.

MR. BLANK: Your Honor, since you brought us back up, just to clarify the second point that he said in terms of the ordinary course and what the non-debtor entity would continue to do, conceptually this is just to make sure that in the next week all of our collateral is taken out of the box and nothing new goes back in.

JUDGE LOPEZ: I got it. Thanks.

Okay. All right. Thank you very much. I very much

DIP HEARING DAY 1

appreciate everyone's time.  We'll see each other at 9:00 a.m.  I'm going to sit here.  There are chairs -- why don't we just put them back and grab them in the morning because the people who are here will remember where they are and they may not be back tomorrow.

So if you took a chair, please put it back.  If not, it will be me and my law clerks trying to figure out what you did.  If not, I thank everyone.  We'll see each other tomorrow morning.  We're adjourned.

(Proceedings adjourned.)

STATE OF TEXAS

COUNTY OF HARRIS

REPORTER'S CERTIFICATE

DIP HEARING PROCEEDINGS

VOLUME 1

NOVEMBER 6, 2025

I, the undersigned Certified Shorthand Reporter in and for the State of Texas, certify that the facts stated in the foregoing pages are true and correct.

I further certify that I am neither attorney or counsel for, related to, nor employed by any parties to the action in which this testimony is taken and, further, that I am not a relative or employee of any counsel employed by the parties hereto or financially interested in the action.

SUBSCRIBED AND SWORN TO under my hand and seal of office on this the 6th day of November, 2025.

Melinda Barre, CSR
Texas CSR 2192
Expiration:  12/31/25