## Exhibit 2

**Transcript for November 7, 2025 Continued Second Day Hearing on Debtors' DIP Financing, Cash Management, and Cash Collateral Motions**

Case 25-90399   Document 3386-2   Filed in TXSB on 07/24/26   Page 2 of 94

Deposition of DIP HEARING(VOL 2)                    First Brands Group, LLC, et al.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____ )

IN RE:                                    )

                                          )   Chapter 11

                                          )

FIRST BRANDS GROUP, LLC,   )   Case No. 25-90399

                                          )

                     Debtor.   )

_____ )

DIP HEARING

VOLUME 2

DATE:     November 7, 2025

TIME:     9:02 a.m.

PLACE:    Federal Courthouse - Houston, Texas

BEFORE:   Melinda Barre

JOB No:   1420

APPEARANCES

FOR THE DEBTOR:

Mr. Robert Barr
          Mr. Sunny Singh
Ms. Jessica Lynn Falk
          Mr. Robert Berezin
WEIL GOTSHAL AND MANGES, LLP
          767 5th Avenue
New York, New York 10153

Telephone: 212.310.8000
          E-mail: robert.barr@weil.com

FOR THE COMMITTEE:

Mr. Michael Winograd
          Mr. Jeff Jonas
Mr. Hayden Miller
          Mr. Andrew Carty
BROWN RUDNICK
          7 Times Square
New York, New York 10036

Telephone: 212.209.4800
          E-mail: mwinograd@brownrudnick.com

FOR ONSET FINANCIAL:

Mr. Bryan Kotliar
          Mr. Ben Butterfield
Ms. Julia Koch
          MORRISON FOERSTER
250 West 55th Street
          New York, New York 10019

          Telephone: 212.468.8000
E-mail: bkotliar@mofo.com

APPEARANCES

FOR CARNABY II AND III, SECURED PARTIES:

Mr. Allan Brilliant
Mr. Gary Mennitt
Mr. Stephen Wolpert
DECHERT LLP
1095 6th Avenue
New York, New York 10036

Telephone: 212.398.3500
E-mail: allan.brilliant@dechert.com

FOR THE DEPARTMENT OF JUSTICE:

Mr. Jayson Ruff
OFFICE OF THE UNITED STATES TRUSTEE
515 Rusk Street, Suite 3516
Houston, Texas 77002

Telephone: 713.718.4650
E-mail: jason.ruff@usdoj.gov

FOR JEFFERIES:

Mr. Emil Kleinhaus
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019

Telephone: 212.403.1357
E-mail: ekleinhaus@wlrk.com

FOR RAISTONE CAPITAL, LLC; RAISTONE PURCHASING
LLC-SERIES XXXII, RAISTONE PURCHASING LLC-SERIES XXVIII:

Ms. Laura Metzger
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019

Telephone: 212.506.5000
E-mail: ametzger@orrick.com

APPEARANCES


FOR KATSUMI SERVICING, LLC:


Mr. Charles Kelley
Mr. Rich Stieglitz
MAYER BROWN
700 Louisiana, Suite 3400
Houston, Texas 77002

Telephone: 212.506.5000
E-mail: ckelley@mayerbrown.com


FOR BANK OF AMERICA:

Mr. Dan McGuire
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10017

Telephone: 212.506.5000
E-mail: d.mcguire@winston.com


FOR EVOLUTION CREDIT PARTNERS:

Mr. Vincent Indelicato
Mr. Charles Dale
Mr. Matthew Koch
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036

Telephone: 212.969.3000
E-mail: vindelicato@proskauer.com

APPEARANCES


FOR THE AD HOC GROUP OF LENDERS:


Mr. Scott J. Greenberg
Mr. Jason Goldstein
Ms. AnnElyse Gains
GIBSON DUNN
200 Park Avenue
New York, New York 10153


Telephone: 212.351.4000
E-mail: sgreenberg@gibsondunn.com


FOR AEQUUM CAPITAL FINANCIAL II LLC:

Mr. Kenneth J. Ottaviano
BLANK ROME LLP
444 W. Lake Street, Suite 1650
Chicago, Illinois 60606


Telephone: 312.776.2600
E-mail: ken.ottaviano@blankrome.com



FOR UMB BANK, N.A.:

Mr. Stephen Blank
ALSTON & BIRD
90 Park Avenue
New York, New York 10016


Telephone: 212.210.9400
E-mail: stephen.blank@alston.com

                    APPEARANCES


         FOR FACTOFRANCE S.A.:

                Mr. Casey Doherty
DENTONS US LLP
                1300 Post Oak Boulevard, Suite 701
Houston, Texas 77056

Telephone: 713.658.4600
                E-mail:

         FOR ING BELGIUM S.A./N.V.:

                Mr. Douglas Deutsch
CLIFFORD CHANCE US LLP
                375 9th Avenue
New York, New York 10001
                Telephone: 212.878.8000

DIP HEARING DAY 2

JUDGE LOPEZ:  Good morning. This is Judge Lopez.  Today is November 7th, starting in one minute in First Brands.  Everyone's appearance, it's just a continuation of yesterday.  So no need to reappear.  But if you do address the Court, I would just ask so we have a good, clean record today, just state your name for the record; and we'll get started.  Just give me 30 seconds.

Okay.  Good morning.

MR. BEREZIN:  Good morning, Your Honor.  Robert Berezin on behalf of the Debtors.

Your Honor, with the Court's permission, there's a scheduling issue related to the hearing -- the preliminary injunction hearing on Monday.

JUDGE LOPEZ:  Okay.

MR. BEREZIN:  And defense counsel had requested that we raise

DIP HEARING DAY 2

this now as opposed to later in the hearing.

JUDGE LOPEZ:  Okay.

MR. BEREZIN:  So if it's okay, I don't think it will take too long.

So, Your Honor, as you know, the temporary restraining order was filed on Monday.  The Court so ordered it on that day and set the hearing for the preliminary injunction hearing for one week, which is on Monday.

JUDGE LOPEZ:  Okay.

MR. BEREZIN:  But on that day the debtors' witness, interim CEO Chuck Moore, has a critical meeting for the debtors' business with a major customer on the West Coast.

The debtors are seeking two additional days to Wednesday, assuming the Court's available, or thereafter at the Court's earliest convenience, so that the debtors can bring Mr. Moore to the hearing live

DIP HEARING DAY 2

for direct, cross-examination, and redirect.  The defendants will not agree to move the hearing even two days.

Prejudice to the defendants, Your Honor, is not an issue for a few reasons.  The Court will recall that after the TRO was entered, the defendants filed an emergency motion to vacate due to the alleged harm to operating businesses.

The parties quickly resolved that motion via stipulation which the Court so ordered on Thursday at ECF28.  Now, the stipulation is good to Monday.  The debtors have already agreed to extend it to Wednesday or thereafter until the Court can hear the preliminary injunction hearing.  That was not good enough for the defendants.

The debtors have also

DIP HEARING DAY 2

already agreed to entertain any

reasonable enhancement that is

proposed to get us from Monday to

Wednesday or thereafter at the

Court's convenience.  That also was

not good enough for the defendants;

but if the hearing's on Monday, the

debtors will be significantly

prejudiced.

Mr. Moore would have to

appear remotely when this hearing

cries out for in-court testimony,

this hearing in particular.  The

allegations are of profound

wrongdoing by Mr. James and

attendant risk to the estate.  That

kind of testimony must be presented

live before the Court.

Monday also does not give

the parties or the Court enough time

with Mr. Moore.  The hearing is

scheduled for 9:00.  Mr. Moore would

have to be up at dawn, and he has a

hard stop at 10:30 to attend this

DIP HEARING DAY 2

really critical customer meeting.

This is one of the major customers

of First Brands.  That's just not

enough time for openings and the

examinations.

JUDGE LOPEZ:  How long is the

hearing supposed -- do you estimate

the hearing going?

MR. BEREZIN:  We believe three

hours, Your Honor.

JUDGE LOPEZ:  Let me hear from

the other side.  I can hear you now,

Mr. Tecce.  Good morning.

MR. TECCE:  Thank you very

much.  Good morning, Judge Lopez.

Thank you for taking us in the

middle of the hearing.  I know you

have a lot of pressing business

today.  So I will be brief.

But we are respectfully

asking the Court to keep the

November 10 hearing date.  On Monday

of this week, the debtors came into

the court ex parte and on

DIP HEARING DAY 2

a supposedly emergency basis with no advance notice to Mr. James or his counsel.  And they asked you to enter the TRO.

The law doesn't support the application, the record doesn't support the application, and had Mr. James been given an opportunity by the debtors to notify, he would have made those arguments then. What resulted is a blunt instrument that indiscriminately preexists any and all accounts, including business accounts for operating companies all around the world and the factual predicate that I believe with Mr. Moore. And ever since the TRO has been entered, Mr. James and his companies have been waiting to challenge the order and injunctive relief.

Within 48 hours, Mr. James filed an emergency motion to stay and vacate the injunction at ECF25,

DIP HEARING DAY 2

requested an emergency hearing.  And while that didn't go forward earlier this week because of the stipulations that the parties entered into which is at ECF28 -- we appreciate the Court signing that -- that stipulation is only a fraction of the relief from the TRO that is required, and it lasts only through Monday.

If this were a routine order, we might consider a two-day adjournment; but there's nothing routine about the order.  It creates uncertainty for anybody who does business with Mr. James' companies. They're very confused.  The order is inconsistent with a hundred years of Supreme Court precedent that a party cannot get an injunction before obtaining a judgment unless, at a bare minimum and, among other things, it identifies the specific piece of property in question and

DIP HEARING DAY 2

details how it's connected to the claims at issue.

An adjournment to Wednesday means for another 48 hours all accounts will be frozen on the basis of an application that did not identify a single piece of property or an individual bank account.

And as for negotiating around the extension, Your Honor, it took an emergency motion to vacate the TRO and days to fix something that should have been obvious to the debtors from the beginning, which is don't harm the businesses with the TRO.  And, yet, as drafted, it stops the foreign companies from making payments for taxes, suppliers, and employees; and the limited carve-out in that stipulation will only carry it through to Monday.

So respectfully, Your Honor, we're asking for the opportunity to make our case to the

DIP HEARING DAY 2

Court as soon as possible and to challenge injunctive relief and get a decision, Your Honor, from your court one way or the other.

Respectfully, Your Honor, it's not easy to say this; but the dispute may not end on Monday. Given the gravity and the weight of the issues that are present, we may have to consider appellate options. And we already lost a week on this. It's not easy to say that, Your Honor; but it's a very significant order.

The last thing I'll say, Your Honor, as for convenience, we've made several accommodations already.  First, we're foregoing Mr. Moore's deposition because the Debtor said he's not available. Second, we're crossing him by Zoom, which is not optimal but he said he's not available, so we'll make that work.  And we're prepared to

DIP HEARING DAY 2

start as early as is convenient for the Court.

But he was the witness and the affiant when the order was entered, and the Court set the hearing for November 10th.  And I do apologize if it's inconvenient for the witness, Your Honor.  Convenience is always a relevant factor.  That is absolutely true.  But here there's a balancing, Your Honor.

There's a request for relief that's extraordinary.  The continued impact on the client and his companies is extraordinary.  And we're asking that it be reviewed as soon as possible.  And under the circumstances I respectfully submit, Your Honor, it does outweigh convenience.  And so we're asking to go forward Monday.

MR. BEREZIN:  May I respond?

JUDGE LOPEZ:  Yes.

DIP HEARING DAY 2

MR. BEREZIN:  So, first of all, on the issue of prejudice, we have a stipulation that was negotiated between the parties to get from point A, the filing of the TRO, to point B, the preliminary injunction motion.  That stipulation was good enough to get us to Monday.  It should, by definition, be good enough to get us to Wednesday or whenever the Court can hear it.

Further, if there are any advancements, we stand ready to negotiate with them.  And if they're dissatisfied, Monday the stipulation is still in place; and they can raise it with the Court.  But the Court can so order the stipulation right now and extend it to Wednesday.  So at a minimum, the baseline stipulation that they already agreed to can be extended by the Court.

JUDGE LOPEZ:  That was an

Deposition of DIP HEARING(VOL 2)                                    First Brands Group, LLC, et al.

DIP HEARING DAY 2

agreement between both of you-all.
I never ordered that.  I never
entered that order.  I mean, I
entered the order; but I was
agreeing the deal.  I'm not going to
unilaterally extend your deal.

MR. BEREZIN:  Understood.

JUDGE LOPEZ:  It's a little bit
different.

It seems to me -- and just
for a matter of logistics, Tuesday
is -- the courts are closed on that
day.  I'm not bringing in my staff
on that day.  And Wednesday I
just -- I literally just cannot give
three hours on Wednesday.  Monday is
the day and it was picked for a
reason.  And it was also an
emergency motion filed.

I said I would consider
vacating on an emergency basis and
y'all entered into a stip.  Other
than that, I was going to have to
hold something today, being pushed

DIP HEARING DAY 2

out till Monday.  I'm willing to move the time on Monday but I can't move the date.  So I've got a first-day hearing at 1:00 p.m. Well, I don't know what I don't know.  But I'm willing to start at 3:00 or 4:00 p.m., depending on how -- I just don't know.  I haven't read first-day papers on that, so I don't know what that looks like.

So I'm willing to kind of move later on in the day but I'm not moving the day.  That's what I can do.  Y'all can figure that out.

MR. BEREZIN:  Your Honor, we appreciate that very much and we will accommodate the 3:00 or the 4:00 time period.

JUDGE LOPEZ:  Mr. Tecce, I think what would make sense to me is the parties -- first-day hearings are virtual.  And so I don't mind if the parties just came in at 3:00 and then we just got started as soon

DIP HEARING DAY 2

as -- give me 15 minutes, just between the two hearings and we can get started.

Y'all could come in -- the courtroom will be empty -- to kind of get settled in and we can start at 3:00.  And we'll just go till we're done on that day but we're not moving the day.  I don't know if Mr. Moore is going to be ready or not to go on at that time, but that's the most I'll do.  I can change the time but not the day.  We'll take it up on that day.

MR. BEREZIN:  Thank you, Your Honor.  The Debtors will make it work.

JUDGE LOPEZ:  Okay.  Mr. Tecce.

MR. TECCE:  Can you hear me, Your Honor?

JUDGE LOPEZ:  Yes, I can hear you.

MR. TECCE:  I just want to say thank you for doing that and we'll

DIP HEARING DAY 2

make the time work for the Court, however that is.  Thank you very much, Your Honor.

JUDGE LOPEZ:  All right.  Look forward to Monday.  Thank you.

MR. TECCE:  Thank you very much.

JUDGE LOPEZ:  Okay.  Mr. Singh.

MR. SINGH:  Good morning, Your Honor.  Sunny Singh, Weil Gotshal proposed counsel to the debtors.

Your Honor, we did file an order earlier this morning on the docket.  At the time we filed it it did not yet incorporate -- we're just going to address the UCC for a second -- did not incorporate their comments which have come in which people are finalizing in the hallway.  So I expect that will land pretty shortly.  I'm not really expecting any issues.

So what we would propose

DIP HEARING DAY 2

to do -- and I think Onset, similarly, is very close on their stipulation; and language is being exchanged.

JUDGE LOPEZ:  Is that (inaudible)?

MR. SINGH:  Yeah.  Yeah.  So I think people are just looking at it.

So, Your Honor, what we would propose to do rather than take any breaks is I do believe that the factoring counterparties, some of them may have some comments on the order.  I don't expect but I'm happy to see if any of them believe they need to cross any of our witnesses.

So what I would like to do, Your Honor, or propose is can we go through any objections that people have that doesn't pertain to evidence.  And as long as the UCC and Onset are done, we won't need to have any cross.  And this way they're not going to be prejudiced

DIP HEARING DAY 2

by us putting our witnesses up now. We don't need to waste everybody's time going through a cross.

JUDGE LOPEZ:  Before I forget, there was a question that I had. It's a defining term.  I just couldn't find it.  It was called curative actions.

MR. SINGH:  In the Onset stipulation?

JUDGE LOPEZ:  In the proposal order.  It was capital C, capital A, curative action.  And I think it was -- curative was the word.  I just couldn't find where that word was.

MR. SINGH:  Your Honor, if you'll give me a minute.

JUDGE LOPEZ:  I should be better and tell you exactly where it was.

MR. SINGH:  I recognize that from our stipulations with our SPV counterparties.

DIP HEARING DAY 2

MR. CARLSON:  It's also in the DIP order.

JUDGE LOPEZ:  DIP order. That's what I was looking for.  What page?  66 of the redline?  At some point.  It's not a --

MR. SINGH:  I think I can address it now, Your Honor.

JUDGE LOPEZ:  Okay.

MR. SINGH:  I'm pretty sure I know what that is.  Just give me a second.  66 of the filed redline. Yes.  Curative Action.

So, Your Honor, what we were referring to there -- and we'll just add a footnote or something referring to the stipulation.  So you recall yesterday -- this applies really both to Evolution and to Onset.  So to the extent -- remember, we're going to keep them flat at an inventory level as of petition date.

If that inventory level

DIP HEARING DAY 2

drops at any point, then the debtors have to cure by either putting cash collateral in an amount equal to the difference and/or putting more inventory of the same like, so that either of those steps is a curative action.  So we'll add a reference back to the stipulations when they get filed but that's what that refers to.

JUDGE LOPEZ:  Okay.  Thank you.

Just one other -- I think I understand conceptually because it's broader; but can you walk me through treatment of defined term "avoidance actions" and then defined term "recovery action" --

MR. SINGH:  Yes.

JUDGE LOPEZ:  -- and how the two work, just so we have a clean record.  I know that they're in there.

MR. SINGH:  Yeah.

JUDGE LOPEZ:  We were able to

DIP HEARING DAY 2

find the definition of recovery actions and recovery action proceeds; but just so that there's a clear record with the way those two interact.

MR. SINGH:  Sure.  Your Honor, avoidance actions is limited to statutory actions under Chapter 5 of the bankruptcy code, right?  There's certain treatment throughout the order with respect to, you know, the more typical avoidance actions.

The settlement with the creditors committee goes further than just applying to avoidance actions and it includes recovery action proceeds.  What else does it include, right?  It includes other estate causes of action, including commercial tort claims, to the extent they were not already encumbered, right?

So if they're not encumbered, then you take those

DIP HEARING DAY 2

litigations or the proceeds and that's the formula and the settlement that I walked through yesterday with the creditors committee with that DIP hurdle of 2.5 billion estimated that would have to be cleared.

So it's not just limited to avoidance actions in terms of the settlement.  It's anything else that was an estate cause of action, including commercial tort claims, but only to the extent they were not already encumbered on a prepetition basis and people reserve rights to, you know, determine -- or argue to the Court whether or not some cause of action was encumbered or unencumbered.

JUDGE LOPEZ:  Thank you.

MR. SINGH:  Thank you, Your Honor.  So, Your Honor, with that, perhaps what I'll do is just turn it over to any of the factoring

DIP HEARING DAY 2

counterparties.

Your Honor, if you do want to cross, we might have to revisit how we want to proceed.  But, to my knowledge -- and I'm not trying to -- I haven't had a chance to speak to everybody here.  People are still reviewing the order -- I don't believe anybody intends to cross.

JUDGE LOPEZ:  Before we do, let me just -- I do think we can be productive, but what I want to know is -- there may be some folks who still need some time to review the order that was filed on the docket. If any of the factoring folks need time to see the language and see if they're okay with the language or if they're going to argue what those words mean and whether someone wants something different, I'm more than happy to take it now; but if someone needs ten minutes to finish reviewing, I'm happy to do that as

DIP HEARING DAY 2

well.

MR. SINGH:  Yeah.  Your Honor, it sounds like people think it would be beneficial to take the time.

JUDGE LOPEZ:  Okay.

MR. SINGH:  Maybe we could take --

JUDGE LOPEZ:  Why don't we take ten minutes.  I was reviewing it. I'll continue to review the redline. It's 9:20.  Why don't we come back at 9:30.  How much time do you think you need to review it?

UNIDENTIFIED SPEAKER:  Maybe half an hour would be more appropriate.

JUDGE LOPEZ:  Yeah.  I was just going to say.  It's a long order, right?  It's not a lift stay order. Yeah.  Why don't we come back at 10:00.

MR. SINGH:  Yeah.

JUDGE LOPEZ:  But at 10:00 --

MR. SINGH:  We're going

DIP HEARING DAY 2

forward.

JUDGE LOPEZ:  Yeah.  We're going forward, we're putting stuff in.  And the goal would be to work through any outstanding issues and put whatever we need to on the record and get this --

MR. SINGH:  Thank you, Your Honor.

JUDGE LOPEZ:  Thank you.  Yes?

MR. GOLD:  Good morning.

JUDGE LOPEZ:  Good morning.

MR. GOLD:  Ivan Gold with Allen Matkins for one of the debtors' landlords.

JUDGE LOPEZ:  Yes.

MR. GOLD:  I just want you to know I have some comments independent of (inaudible) factors about a specific paragraph.  We can do that now.  We can do it when we come back.

JUDGE LOPEZ:  Can you just tell me --

DIP HEARING DAY 2

MR. GOLD:  Preview of coming attractions?  Yes, Your Honor.

Paragraph 8(b), which is the basket.  The administrative expense basket is paragraph 8(b).

JUDGE LOPEZ:  Yeah, yeah.

MR. GOLD:  I take issue with a single word or maybe three, depending on how we want to approach it, and that's the word "may."

JUDGE LOPEZ:  Just give me one moment so I can look for the record.

MR. GOLD:  I'm happy to explain why I'm concerned.

JUDGE LOPEZ:  Just give me one second.

MR. SINGH:  If I can address this, Your Honor, again. Sunny Singh for the Debtors.

The language that I think Mr. Gold is highlighting is "may be paid."  The UCC had a similar comment.  So what I suggest is why don't I show Mr. Gold the language

DIP HEARING DAY 2

we're landing on, and I think that will address it.

JUDGE LOPEZ:  Okay.  We'll start at 10:00.

(Recess taken)

JUDGE LOPEZ:  Okay.  Good morning.  Back on the record in First Brands.

Okay, Mr. Singh.

MR. SINGH:  Thank you, Your Honor.  Again, for the record, Sunny Singh, Weil Gotshal, proposed counsel to the Debtors.

Your Honor, thank you for the time.  We used it very productively, and I'm very happy to report that the final version of the order that's been agreed, subject to maybe some typos or things, which I hope will be certainly circulated to the parties.

We are done with the UCC. We are done with Onset.  We are done with, I believe, the factoring

DIP HEARING DAY 2

parties, although some of them may still want to be heard on certain issues just to address the Court.

I think I've got agreement from everybody that I've been able to talk to in the courtroom that there's no need for cross on any of our witnesses.  That said, we would still like to move our evidence into the record for the hearing.

So if Your Honor is okay with that, what I would propose is we move forward with evidence and then allow any parties to make whatever statements they want to the Court and I'll just reserve some time to reply.

JUDGE LOPEZ:  Mr. Singh, just give me one second.

MR. SINGH:  Sure.

JUDGE LOPEZ:  I had a question on one other -- just going through my notes, make sure I don't have any additional questions.

DIP HEARING DAY 2

You answered all my questions.  Going through the fine-tooth comb redline page 67, 22R little 7 in the hole.  There maybe an extra "in" in there.  Someone caught it.

MR. SINGH:  Yep.  Thank you, Your Honor.  You'll see that --

JUDGE LOPEZ:  I'm sure it will be underway.  I was just throwing it out there.

MR. SINGH:  Your Honor, if it's okay I'm going to turn it over to my partner, Mr. Berezin, just to deal with the evidence.

JUDGE LOPEZ:  Okay.  Mr. Berezin.

MR. BEREZIN:  Good morning, Your Honor, Robert Berezin, Weil Gotshal on behalf of the debtors.

The debtors would seek to admit their exhibits into the record if that's acceptable.

JUDGE LOPEZ:  Can you just

DIP HEARING DAY 2

identify the document numbers.

MR. BEREZIN:  Sure.  So the debtors have filed a witness and exhibit list at Docket 518, as well as amended witness and exhibit list at 571.  The debtors seek to admit all of the exhibits identified in those -- under those two docket entries with the exception of the declarations which are the Cowan declaration at 518-2, the Moore declaration at 518-4, the supplemental Moore declaration at 571-2, and the supplemental Cowan declaration at 571-1.

JUDGE LOPEZ:  Carving those out?

MR. BEREZIN:  Carving those out.  All other exhibits that are appended to docket No. 518 and docket No. 571 the debtors offer.

JUDGE LOPEZ:  Any objection to the admission of the exhibits at 518 and 571 less 518-2, 518-4, 571-1 and

DIP HEARING DAY 2

571-2.

MR. WINOGRAD:  Your Honor, Mike Winograd of Brown Rudnick for the Committee.  We have no objection.

JUDGE LOPEZ:  Thank you. Anyone else.

MR. BLANK:  Your Honor, if I may, this is Stephen Blank from Alston & Bird on behalf of UMB. Apologies for not appearing on camera.

I'm not going to have any objection.  I just realized we talked about it yesterday with respect to any evidence and also any testimony that's being offered, any of the declarations, just clearly don't want that to prejudice us with respect to how we (inaudible) of our issues.  So all rights reserved to be able to call any of the witnesses later, questions about any of the exhibits.

Just wanted to make sure

DIP HEARING DAY 2

that to the extent anything was being added to the official record now, it wasn't going to prejudice us to the extent we have to come back in front of Your Honor later on with the issues that we've resolved temporarily.

JUDGE LOPEZ:  Mr. Berezin?

MR. BEREZIN:  I believe that was our agreement, Your Honor.  This is in respect to UMB?

JUDGE LOPEZ:  Yeah.  My understanding is I'm admitting documents in connection with the hearing today.  And your deal is your deal, and I'll honor your deal. So I think you're covered.  Okay?

MR. BLANK:  Thank you, Your Honor.

JUDGE LOPEZ:  Thank you.

MR. BEREZIN:  Thank you, Your Honor.  Then we'd like to move to admit -- or to the first witness, Mr. Tyler Cowan, and we would seek

DIP HEARING DAY 2

to introduce his declaration in lieu of direct testimony. He should be on the line.

JUDGE LOPEZ: Let me just ask this. Are you going to try to move in these four decs?

MR. BEREZIN: Yes, sir.

JUDGE LOPEZ: Any objection to the admission of any of these four declarations?

MR. WINOGRAD: Your Honor, Michael Winograd again. On behalf of the Committee, we have no objection.

JUDGE LOPEZ: Anyone else?

MR. KOTLIAR: Good morning, Your Honor. Bryan Kotliar of Morrison & Foerster on behalf of Onset Financial. No objections today. As you heard earlier, Onset has negotiated in good faith a consensual resolution of the issues that are on for today, which is adequate protection.

DIP HEARING DAY 2

There are other issues in this case that will get worked out later, and we just wanted to make the record crystal clear that nothing in the testimony that relates to these other issues and these other matters --

JUDGE LOPEZ:  I'm only considering the declarations for purposes of the motion and in connection with today's hearing.

MR. KOTLIAR:  Thank you, Your Honor.

MR. KELLEY:  Charles Kelley on behalf of Katsumi Servicing.  No objection to the use of those declarations for the purpose of today's hearing.

JUDGE LOPEZ:  Okay.  Thank you. They're admitted.

MR. BEREZIN:  I was looking forward to doing each one, but I appreciate it.

JUDGE LOPEZ:  Mr. Singh,

DIP HEARING DAY 2

anything else?

MR. SINGH:  Your Honor, there's nothing further from the Debtors. I'll just reserve some time to respond to the extent anybody wants to make any further comments.  Thank you, Your Honor.

JUDGE LOPEZ:  Okay.

MR. CARTY:  Your Honor, Andrew Carty from Brown Rudnick on behalf of the Official Creditors Committee.

Your Honor, this is obviously a pretty tough case.  Our overarching goal was to try to preserve as much of the unencumbered litigation values as possible for unsecureds and give unsecured creditors a real shot at a meaningful recovery here.  We think that this settlement will ultimately accomplish that goal.

There's the roll-up.  The roll-up as it relates to those particular unencumbered litigation

DIP HEARING DAY 2

assets is going to be limited essentially to a 1-to-1.  That's sort of how we view it.  And then in combination with marshaling concepts, there's 1129-B rights that are baked into it.

So we think overall the package is going to give us a meaningful shot at getting a recovery.  So with that, we think that it makes sense and is appropriate.

JUDGE LOPEZ:  Thank you.

MR. CARTY:  Thank you, Judge.

MR. KELLEY:  Thank you, Your Honor.  Charles Kelley.  Good morning.

JUDGE LOPEZ:  Good morning.

MR. KELLEY:  We have had a number of robust conversations with the Debtors about some issues of concern, and I wanted to speak to the Court about them.

Each of the factoring

DIP HEARING DAY 2

counterparties has provided ample documentation to the Debtors to assist them as they have tried to deal with the limitations on the Debtors' -- excuse me, the Debtors' professionals as they try to deal with the limitations that apparently exist on the Debtors' records. We've heard a lot about that from opening statements from the lawyers.

Within the past 72 hours we've gotten some preliminary information from the Debtors. We're still processing it. We're still a little bit in the dark on this. But what is evident is we have our own individual rights, which we appreciate the Court acknowledging yesterday, and we have been doing our best in all of the orders to protect and preserve those and work alongside the Debtors.

There are still some ongoing review of materials that

DIP HEARING DAY 2

will happen.  There are some things that people don't have actual knowledge of.  But parties are going to need to pursue their individual rights.  We intend to work cooperatively with the Debtors and vice versa.  It is not our intention to somehow seize an opportunity to assert an estate cause of action. That is absolutely not what we're intending to do.

We do need to perhaps move quickly, so we will be making decisions in the near term, Your Honor.  But one of the things that we probably won't have time to do is that comfort prophylactic motion to lift stay order so that we don't step on any toes.  I can assure Your Honor whatever we assert, we'll assert in good faith.

We will work cooperatively with the Debtors if they think that we have some issues and we'll try to

DIP HEARING DAY 2

solve those.  But what I don't want, given the situation, given the limited information we have and what we're trying to move quickly to address remedies that I think our clients are justly entitled to, is to be worried about the sort of dameclase (phonetic), which is the intentional violation of the automatic stay.

And so I'm hopeful this Court will keep this in mind if for some reason some dispute arises. I'm confident we'll do everything in our power to avoid that.  But I have comfort with Your Honor knowing that we will be asserting our claims in good faith and trying to work through this.  But we are still learning a lot.  This is a big issue for a lot of people to process.

And from what we've heard from the Debtors in the presentation of the case, the breadth and scope

DIP HEARING DAY 2

of what occurred under prior management has inflicted harm on a lot of people, not the least of which is the estate.  So we want to be mindful of the estate's rights; but I think as I mentioned yesterday, we're sort of an involuntary creditor to some extent, the extent of which we don't fully understand yet.  But we're independent of that, and we have our own independent rights.

We are intending to vigorously protect our rights, but we simply request that the Court keep those in mind and help us.  We will never disrespect this Court.

JUDGE LOPEZ:  Thank you.

MR. KELLEY:  Appreciate it.

JUDGE LOPEZ:  Good morning.

MS. GARZA:  Good morning, Your Honor, Vianey Garza on behalf of U.S. Trustees.  I know Mr. Ruff raised reservation of rights that we

DIP HEARING DAY 2

had and his issues, or the trustees' issues, with the challenge period and the carve-out, particularly if an examiner is going to be appointed.  So I just wanted to reiterate that again for the record for Your Honor's consideration.

JUDGE LOPEZ:  Thank you.

MR. GOLD:  Good morning again, Your Honor.  Ivan Gold of Allen Matkins for LBA RV company XVII, which unfortunately is Roman numerals, LP.  Always looks great in a signature block but not designed to be said out loud.

We had previously filed an objection at 397.  I want to thank the Debtor team, Mr. Singh, Mr. Barr, Mr. Carlson for candid and constructive conversations.  Our ordinary group of issues, things like the lien on the lease and how to handle insurance proceeds, access to collateral in the building, my

DIP HEARING DAY 2

client has a 400,000-square-foot warehouse full of the lender's collateral.  We've resolved all those issues.

Our final concern had been postpetition RAC because, as we've learned from many cases, including unfortunately several in this court, just being in the budget is very frequently not enough.  Probably City II (phonetic) perhaps provides an excellent and recent example of that.

Now, we thank the Debtors and lenders for coming up with the concept of the administrator expense basket, the $200 million which has been set aside at paragraph 8(b).  And this morning we have gone from "may" to "shall" at a segregated reserve, which is outstanding.

Here's the final point I want to make, and I have discussed this with Debtor's counsel.  It's

DIP HEARING DAY 2

all really great to have all these numbers and all these budgets and all these projections, but you have to execute.  I acknowledge that this is a complex, challenging, risky case.  We've heard a lot about debtors trying to get their arms around or legs under the lack or incomplete, inconsistent financial records and information.

We didn't hear anything kind of remarkable for a bankruptcy hearing, we did not hear much about value maximization the last couple days.  We have heard about value preservation.  Mr. Barr referred to stabilizing the business for now as the primary objective and you see that reflected in the change in milestones.

But what happens in cases like this that have all this complexity or, again, to borrow a phrase from Mr. Barr yesterday,

Case 25-90399 Document 3386-2 Filed in TXSB on 07/24/26 Page 50 of 94

Deposition of DIP HEARING(VOL 2)                    First Brands Group, LLC, et al.

DIP HEARING DAY 2

trying to separate from all the noise. There's still a company to run. And for whatever harm was inflicted prepetition on various stakeholders, we're not supposed to do it postpetition.

The reason I mention that is I know from my client and other landlords rent was late last month. Last month was a tough month. First-days were on the 1st. You entered your order on the 3rd. But they were funded the next week, half a billion dollars. I don't throw those numbers around lightly. Those are big numbers. But half a billion dollars (inaudible) doesn't pay till the 15th.

We don't have it yet this month. It was in the budget for last week. So I wish everyone well in this case, and we've made a lot of progress and there's still a lot of work to do and there's still a

DIP HEARING DAY 2

company to preserve, a company that can run on a day-to-day level. We're going to hear about investigations at the DOJ and all this other stuff; but let's not forget we have a case to run. We have a business to preserve.

Arrangements are being made to be paid. And that's really the root of my concern about paragraph 8(b). That's why "may" is now "shall" because there's no discretion as to day-to-day operational payments. Those kind of controls need -- we still have a company to run here and we can't lose sight of that.

I know everyone will tell me, yeah, you have all your remedies if something goes wrong. And certainly we do. We know how to find Your Honor. It's way too early -- we're at that point, yeah, last month it was way too early in

DIP HEARING DAY 2

the case to be talking about this,

but not anymore.  Now the Debtor has

$1.1 billion in DIP funding.  It

shouldn't be late on postpetition

payments.

I hope we can now, armed

with this, the Debtors have some

wind in their sails and can start

moving forward with the process.  I

hope we move behind the difficult

times.  Thank you, Your Honor.

JUDGE LOPEZ:  Thank you.

Anything else?

MR. GAUTIER:  Your Honor, can

people hear me?  This is Scott

Gautier with Faegre Drinker on

behalf of US Bank.

We have not filed an

objection to the relief sought in

the last two days for modifications

to the proposed order that we

believe are objectionable with

respect to US Bank's interests.  And

I've asked the Weil team via

DIP HEARING DAY 2

e-mail -- I know they're very busy and they're talking to lots of people and I know there's some confusion because we are part of the ABL lender group -- but I would simply request that before we finish here that someone from the Weil team call and talk to me because we would object to the form of the order, proposed order.

It seeks to separately classify our interest, US Bank's interest, even though it's been disputed, which is not permissible under the law.  And I can cite the law for you, but I prefer just to be able to talk to the Weil team and I think we can work it out.  But in the past two days, no one has returned my calls.  And I perfectly understand why.

That's it.  I don't want to take too much of the Court's time.  If someone would simply call

DIP HEARING DAY 2

me back, we can work this out.  Or if the Court would prefer that I go on further with the argument, I can.

JUDGE LOPEZ:  Let me hear from everyone, and then I'll hear from the Debtors.  What I'd like to do is just hear from everyone who wishes to be heard and then give the others an opportunity to respond.

There's a 212 number on the meeting.  I've got three folks on the line.  There's a 212-403 number.

MR. KLEINHAUS:  Yes.  Good morning, Your Honor.  Emil Kleinhaus From Wachtell Lipton.  Can you hear me?

JUDGE LOPEZ:  Just fine.

MR. KLEINHAUS:  Thank you. Good morning.

I represent Leucadia Asset Management, LLC, LAM Trade Finance Group, LLC and LAM Trade Finance Group, among other parties.

DIP HEARING DAY 2

I was in the courtroom yesterday.  I apologize for appearing by Zoom today.  I had an obligation that required me to come back.  I'll be very brief because I think the ground has been covered.

My clients, the LAM entities, were purchasers of receivables under two sale agreements we filed under technical objection setting out the basic facts.  Based on revelations over the last several days regarding the receivables, including in the complaint that the Debtors filed that alleged that receivables were either invented or inflated on a large scale, the conclusion, or at least the presumption at this point is that our clients were victims of fraud here, potentially on a large scale.

Those facts will have to be developed and investigated, if

DIP HEARING DAY 2

not in front of the Court today, we'll have some things to say about the examiner motion and other related matters.  But given how fast this has been developing and the daily flow of new information, our focus has been on preserving the status quo in connection with the DIP and the cash management order, which has really meant a few things.

One is we want it to be clear that the DIP financing does not grant liens on property that's owned by the factors and the proceeds of the same.  We want it to be clear that this DIP does not grant priming liens on a nonconsensual basis to the extent that the factors including our clients have liens on estate property.

And we want it to be clear that nothing in these orders, including the challenge period

DIP HEARING DAY 2

provisions, would in any way affect or impair rights or causes of action that belong to our clients as opposed to the Debtors.  That goes to what Mr. Kelley was referencing.

Then, likewise, on the cash management order, we wanted to make clear that the Debtors would provide information on a regular basis regarding the receivables that will be collected and, moreover, given the extreme flux and uncertainty regarding the facts and the investigation as to what happened with the receivables, that for the time being, that collections all be placed in a segregated account that was agreed upon.

The Debtors, after some back-and-forth, have accommodated all of these concerns, in some cases proactively, so we appreciate the Debtors working through these issues with us.  We'll be back to the

DIP HEARING DAY 2

Court, no doubt, if this case continues.  But given that those objectives of preserving the status quo were achieved, we're not objecting further.  Thank you.

JUDGE LOPEZ:  Thank you.

Here's a 914 number.  A 914-261 number, if that's you.

All right.  How about a 312 number?

UNIDENTIFIED SPEAKER:  Your Honor, the 212 number is Dan McGuire (inaudible.)

Your Honor, very briefly, we have just a handful of items that we have shared with counsel for the Debtors on the revised order.  Some of them are already being addressed.  A couple of others we can send an e-mail afterwards.  They're fairly minor on this.  The only other issue on our end is the financial advisors (inaudible) language and the reporting related thereto.  They

DIP HEARING DAY 2

were first discussed this morning, I understand; and once they work that out and the issues are resolved, we will be done.

So we expect that our issues will be resolved and the advisors will work out issues, which I'm sure they will.  If they handle all our issues, hopefully they will be addressed in the revised order; and we'll be done.

JUDGE LOPEZ:  Thank you. Anyone else wish to be heard?

MR. WOLPERT:  Your Honor, I apologize.  My phone was muted.

JUDGE LOPEZ:  No worries.

MR. WOLPERT:  Good morning. Stephen Wolpert from Dechert on behalf of the Carnaby secured lenders.  Two minor points on form of order.

We sent comments over to the Debtors consistent with our agreement that we read into the

DIP HEARING DAY 2

record yesterday.  I think there was one that was missed, which is in paragraph 27, the challenge period. There's a Romanette (ii) starts with, "If the Chapter 11 cases are converted to Chapter 7."  And this is about the timing of the challenge period for an appointment of a Chapter 7 or a Chapter 11 trustee.

We'd move for appointment of a Chapter 11 trustee as alternative relief.  And we would ask that that date be 60 days rather than 30.  I don't know if this was not picked up, but we thought that was agreed per our agreement that was read on the record yesterday.

JUDGE LOPEZ:  I'll give you just a second.

Go ahead.  Keep going, Mr. Wolpert.

MR. WOLPERT:  Sure.  The second point is there's two places where it says that objections are overruled

DIP HEARING DAY 2

to the extent not resolved.

Obviously there were things that were adjourned or continued to December and January. And we just wanted to make sure that that language, you know, carves out any issues that will be resolved later on the continued dates.

JUDGE LOPEZ: On this one I can certainly say that if I have set dates, that language cannot be used offensively for a hearing that's set in December or January based on a deal.

MR. WOLPERT: Okay, yeah. We have sent some language over to the Debtors and others instead. We know they're busy. So they may not have addressed it yet.

JUDGE LOPEZ: I don't view that as part of my overruling any objection if I've set a further date. We can put language in there, but I just want to give you or

DIP HEARING DAY 2

anyone else who has a deal for future dates with respect to other matters.

If the parties have agreed to push or set another date, that language won't be used offensively in any way.  It's not just for you, but I appreciate you bringing that up.

MR. WOLPERT:  Thank you, Your Honor.

JUDGE LOPEZ:  Okay.  Let's see. Anyone else?  Mr. Singh, did you want to -- you don't have to do it now; but just cash management, where we sit with that as well.  If somebody could just give me a --

MR. SINGH:  One second, Your Honor.  Let me just get the latest on that.

JUDGE LOPEZ:  You got it.

MR. SINGH:  Good morning, Your Honor, again.  Sunny Singh, Weil Gotshal, proposed counsel for

DIP HEARING DAY 2

the Debtors.

Your Honor, the cash management order is done.  It's agreed by the parties, and we filed a COC last night.  So it's on the docket.

JUDGE LOPEZ:  Okay.

MR. SINGH:  Your Honor, I might go a little out of order because some of these --

JUDGE LOPEZ:  Take them in whichever order.

MR. SINGH:  Yeah.  I'll just be quick.  On the challenge period, 60 days is fine --

JUDGE LOPEZ:  Okay.

MR. SINGH:  -- in response to the last comment.  And, of course, Your Honor, if we adjourn things, we're not intending and agree we're not going to use the order offensively.  I'm happy to look at the language.  Frankly, I don't think we need language.  If we can work it out quickly, great.

DIP HEARING DAY 2

JUDGE LOPEZ:  No.  And to me you have me on the record.

MR. SINGH:  Yeah, exactly.  So just a couple of quick things.

Your Honor, with respect to US Bank --

JUDGE LOPEZ:  Yes.

MR. SINGH:  Mr. Carlson is somewhere.  He might be on the phone now with counsel.  We're trying to reach them, and I apologize that given everything going on, we haven't been able to get back to them; but the issue is relatively simple and straightforward, and I think I have a proposed solution that hopefully should work for everybody.

So, Your Honor, under the prepetition credit agreement there's something called the cash management obligations.  And to the extent one of the ABL lenders was a supply chain financing counterparty to the

DIP HEARING DAY 2

Debtors, which US Bank was one, as well as B of A and Truist, as long as they complied with certain conditions of the agreement, including things that required forms to be submitted and executed, et cetera, as long as that was complied with prepetition, those obligations are secured by -- treated and secured by ABL collateral.

We've reviewed information that was provided to us that the Debtors had their own information on and have gotten comfortable that we can stipulate with respect to Bank of America and Truist that they did what they needed to do.  We have questions around US Bank we're not in a position to consent today. Maybe we never get there.  I don't know.

So what we were proposing is -- and we're going to agree to

DIP HEARING DAY 2

pay cash interest on these obligations as well.  And I think the issue was we were comfortable paying US Bank.  We were comfortable paying -- Bank of America, not US Bank -- and Truist, but not US Bank because of these issues.  So we were proposing to pick interest.

Instead, I think given the dollar amounts are not large relative to the size of these cases, I think we can get comfortable, Your Honor, that we will pay US Bank in cash just like the others but reserve our rights if it later turns out that they weren't secured on this amount, that we would be able to recharacterize those obligations just like you would -- I think that language is generally throughout the order anyway and it's consistent with bankruptcy code, that those payments would then be reapplied to other distributions or credited to

DIP HEARING DAY 2

other distributions that they were

otherwise properly entitled to.

So, Your Honor, with that,

I think that brings up a parity with

Bank of America and with Truist,

which is what they were asking for,

but gives us some comfort that this

issue can be resolved in the future

if it needs to be and the Debtors

won't be prejudiced.

So if that works for

Your Honor and works for counsel for

US Bank, it works for us.

JUDGE LOPEZ:  Counsel?

UNIDENTIFIED SPEAKER:  Thank

you, Your Honor, and thank you,

Mr. Singh.

Again, I very sincerely

appreciate what the Weil team is

doing there.  That is perfectly

fine.  We had suggested cash be paid

and be held in escrow by the agent.

And if it is found that we don't

have a secured claim, that we accept

DIP HEARING DAY 2

Mr. Singh's treatment.

I would just say for the record -- and I don't think that it was done deliberately -- but I don't agree necessarily with the representations to the Court as to what the requirements under the ABL credit agreement are with respect to designating and being secured.  But that is certainly something for another day.

JUDGE LOPEZ:  Thank you.

UNIDENTIFIED SPEAKER:  Thank you.

And thank you, Mr. Singh.

MR. SINGH:  Thank you.  Appreciate that.

Okay.  So, Your Honor, that leaves two issues, I think -- or a few others.  Sorry.

With respect to the examiner comments from the United States Trustee, we want to obviously continue to work with the U.S.

DIP HEARING DAY 2

Trustees Office.  We heard Your Honor loud and clear yesterday just about how you're thinking about the issues, which are extremely helpful and allow us to go forward.

So, Your Honor, U.S. Trustee is not in a position, or I'm not sure they're not going to agree or if they're still evaluating to move the dates just yet.  So we do have a response deadline for Monday.  If we have to file a response -- oh, I'm sorry.

MS. GARZA:  Your Honor, U.S. Trustee is not agreeing to extend the deadline the fiduciaries have to respond.  So we would request a response by Monday and a hearing on the 17th, as the Court previously scheduled.

JUDGE LOPEZ:  Okay.  Thank you.

MR. SINGH:  Understood. Okay.

JUDGE LOPEZ:  So on the 17th it's just to appoint one, right?

DIP HEARING DAY 2

MS. GARZA:  A hearing on appointment of the examiner would also include the scope of that examiner, yes.

JUDGE LOPEZ:  And is the U.S. Trustee prepared to recommend what it wants in the scope?

MS. GARZA:  Your Honor, our proposed order did address what we believe the appropriate scope is. It is consistent with the statute, or we believe it's consistent with the statute, and perhaps some additional requirements because of the alleged fraud and mismanagement in this case.

And, Your Honor, the motion that we filed is --

JUDGE LOPEZ:  340, right?

MS. GARZA:  Yes.

JUDGE LOPEZ:  All right.  So here's the concern.  I'm just telling everyone that I think that is a properly drafted order.  Maybe

DIP HEARING DAY 2

we can think about this if we have to go on the 17th or not.  But what I am saying is that could lead someone to show up in August of next year with a report that cost $16 million or $60 million.  There's no -- and that -- I'm focused on scope.

You can look at a couple of -- I'm just giving everyone thoughts.  You look at other cases and they're not a surprise to anyone.  You can look at Caesar's. You can look at Celsius.  You can look at Spirit.  CRED, the Delaware case.  You can look at -- I'm missing one.  FTX obviously.  FTX had scope.  Some were just broad.

I think -- for me I think what would make sense is I think once you figure out scope, then you figure out who can do it.  So I think scope is really important. The question is what they're doing.

DIP HEARING DAY 2

So I just encourage people to talk.

Some of them went long.  I think Celsius went over a year, right?  Caesar's went well over a year.  It's not the day to talk about it.  I think scope is going to be important.  So y'all just keep talking.  If you want to go forward on the 17th, I'm going to give you a hearing on the 17th.

I may not be able to -- well, I know that this order won't work for me but that doesn't mean -- this case needs, in my opinion, like real work streams, very FTX-like work streams that just kind of say, We will investigate this and this.  And if you find some other stuff, let me know; and maybe we can open up order but like very directed work streams.  Because just investigating -- I don't know where an examiner -- this case -- I think this case is even more complicated

DIP HEARING DAY 2

than FTX because I think there it was pretty directed in terms of here, there's -- I don't know what work stream one would start with and go.

That's why I'm hoping the parties can talk and come up with a budget.  Then we can -- so that someone really has direction. Because what I don't want to do is give someone an open-ended question with a budget and then -- I think I'll keep my thoughts there.

I'm not saying anything anyone else out there isn't thinking.  I think we're on the same wavelength.  If you want to go forward on the 17th, you'll have your hearing.  There's no question about it.

MS. GARZA:  Okay.  Thank you, Your Honor.

MS. METZGER:  Good morning, Laura Metzger from Orrick,

DIP HEARING DAY 2

Herrington & Sutcliffe on behalf of Raistone Purchasing LLC Series XXXII.

We filed the initial examiner's motion.  I don't have the docket number for you at this moment.  We agreed yesterday as part of the DIP negotiations with the added group of DIP lenders as well as the Debtors to push things out for a week.  Maybe we could just spell out for you what we agreed to.

The idea is that we would come to a resolution, hopefully on agreed order, by next Friday and we have discovery starting next week in connection with our -- we had witnesses scheduled for next week in connection with our motion.  We've agreed to push those out as well to give the parties an opportunity to make -- reach an agreement on what the scope, what the budget should be and take your comments under

DIP HEARING DAY 2

advisement in those conversations.

We are concerned that going forward on the 17th would --

JUDGE LOPEZ:  The 17th may just be I appoint -- I agree that there needs to be an examiner appointed if the parties are continuing to work on scope.  That just may be the answer.

MS. METZGER:  That just may be the answer.

JUDGE LOPEZ:  It happens sometimes like that in cases.  I'm just saying it happens sometimes like that in cases, but the U.S. Trustee is going to have able to have their hearing.  I'm just saying that may be the answer because -- if you want a hearing, I'll set it.  The answer may just be, I agree we should have one.  The statute says we should have one if the parties continue working on scope.

DIP HEARING DAY 2

In other words, I'm going to have to agree on the scope and get comfortable, right, because the statute says "as is appropriate." So I've got to get comfortable with the "as is appropriate."  And what I'm saying is I really want a lot of input on what that means so that I can come up and sign an order that I do think would be appropriate under these circumstances.  And that's where I'm going.

So I'm not going to be comfortable just signing a broad statute because I don't think it's as appropriate here.  I think there needs to be some refinement on that; but that's why I'm saying it now. The answer may just be I agree there needs to be one, but I'm not sure who would it be without determining the scope.  Because that's going to -- that's why I set it out for people to think about to come up

DIP HEARING DAY 2

with a work stream and think about this.

I'm sharing my thoughts now so that people can -- not that I can't be convinced otherwise.  Just the way I'm thinking about this and what I think would be helpful in a case where you have a collective problem that needs information, but ultimately, as counsel has informed, kind of viable businesses that are still going.  So that's what I'm saying.

Anyway, I'm going to ask the Trustee to think about this a little bit more and the parties continue to talk.  But that may just be it on the 17th.

MS. METZGER:  Sure.  We certainly don't object to the appointment of an examiner.  That is exactly what we moved for.  We just wanted to provide the opportunity --

JUDGE LOPEZ:  I'm just

DIP HEARING DAY 2

saying -- and the parties will continue to talk and the Trustee certainly has the right to their hearing and that's the day that we set.  So I don't want to move it. But I'm going to ask the Trustee -- and there's been a lot of moving pieces and a lot of this information came up yesterday.

So I think the parties continue to talk.  If the Trustee thinks December 8th would be a better date, just let me know.  I don't have issues moving it if it makes sense and the parties continue to work collectively.  If not, then we'll have the hearing on the 17th and I'll rule on Sunday.  Okay?

That's probably all I can say to that; but.  Everybody's rights are preserved.

MS. GARZA:  Thank you, Your Honor.  The U.S. Trustee will continue to work with the Debtors

DIP HEARING DAY 2

about the scope, but I know they've been busy with other problems.

JUDGE LOPEZ:  Yeah.  Thank you so much.  I really appreciate it. Thank you for being here.

MR. SINGH:  Thank you, Your Honor.  Appreciate those comments and we'll work with everybody with respect to the scope.

JUDGE LOPEZ:  It's a case where everybody's been working incredibly hard around the clock.  UCC has come up working really hard.  Debtors' counsel been working multiple work streams.

Complicated case where you've got SPV parties.  You've got, right, other factoring parties. You've got landlords.  You've got Maquiladora in Mexico.  You've got truckers worried about product, and you've got multiple product lines. You've got the First Brands side of the house.  You've got the SPV side

DIP HEARING DAY 2

of the house.

There's a lot of --
multiple work streams and the
parties are doing what they can.  So
I just really appreciate the
tremendous effort that has been put
into getting to where we are today.
I know when dockets are quiet,
people are working.

MR. SINGH:  Thank you,
Your Honor.

JUDGE LOPEZ:  So I know the
time has been spent productively,
even if I haven't seen something.  I
know that means parties have been
working.  I think parties have a
right to file motions and seek
relief requested and I understand
it.  And no one is working harder, I
can tell you that, than the Office
of the United States Trustee in the
Southern District, under really,
really extraordinary times.

So just heartfelt

DIP HEARING DAY 2

appreciation to the work that everyone's been doing here today.  I really mean it.  I'm ready.

MR. SINGH:  Thank you, Your Honor.  I think with that, Your Honor, what we would propose is that's the Debtors' case.  We thank all the parties who have worked with us.  What we're going to do just with respect to the proposed order, which I can address after you rule, I think it's -- I'll get the latest update on whether it's been finalized.

JUDGE LOPEZ:  We'll just start with the cash management motion.  The Court entered the interim order.  And the purpose of a cash management motion on a first-day basis -- and I know there's a little over 200 people listening and some folks may not understand exactly everything that's been happening today.  So I'll take a moment.

DIP HEARING DAY 2

When a debtor files for Chapter 11 bankruptcy, a number of requirements are there in Section 345 of the bankruptcy code, one of those provisions.  But really the purpose of the motion is to allow the Debtor to ease into the Chapter 11 case.  It already has an existing cash management system where money comes in, money goes out, money gets paid.  And sometimes that involves bank accounts with debtors.

Sometimes debtors move money from debtors to nondebtors as part of the ordinary course because not every company affiliated with an overall enterprise files for bankruptcy.  So sometimes it's a subset of them.  So there are requirements under the bankruptcy code, the Office of the United States Trustee has guidelines.

You've got to look at

Case 25-90399   Document 3386-2   Filed in TXSB on 07/24/26   Page 83 of 94

Deposition of DIP HEARING(VOL 2)                           First Brands Group, LLC, et al.

DIP HEARING DAY 2

where the money is, whether those are approved depositories, whether they're banks that everybody gets comfortable with, and understand that sometimes there are requirements that you had to change kind of the name on the bank account to put debtor-in-possession accounts.  There used to be additional requirements where sometimes you have to close an account and open up a new account.

So a cash management motion is really filed by debtors to recognize that perhaps stopping the way money moves in many ways can be value destructive.  Opening up new bank accounts is really hard and takes a lot of time.  You have, you know, what they call know-your-customer requirements. You can't just walk in and create a new corporate bank account.  But that can disrupt business operations

DIP HEARING DAY 2

and vendors getting paid and truckers getting paid and employees getting paid if the banks just froze everything.

And banks need some comfort as well.  So the purpose of a cash management motion is to kind of recognize and provide some transparency on the bank's structure and where the money moves and the bank, at the same time, provide some controls so that we know where the money is and the debtor money is and everybody's isn't just kind of leach out to non-debtors with no way of knowing where the money went.

So the cash management motion is intended to address those issues.  I approved one on an interim basis.  I saw that there was some concerns from parties because you had kind of the SPV side of the house and then the First Brands side of the house.  There were some silos

DIP HEARING DAY 2

where some cash was sometimes placed and the parties wanted to preserve their rights.  So this is an incredibly complicated cash management structure.  So the parties have been working for quite some time.

I have reviewed the proposed order.  There were many objections that were filed to the cash management order.  I reviewed -- I read every single one of them.  And the parties have worked out language that preserves those rights.  So I'm going to grant the order.  I've seen it under certification of counsel.  I've reviewed the order independently, and I'm going to grant the final cash management order.  I appreciate all the parties working on that.

Turning to the debtor-in-possession financing order, I look at the first-day

DIP HEARING DAY 2

declarations and the number of interested parties and the different types of parties we have here, ranging from general unsecured creditors to -- there are different types of unsecured creditors.

On the first day we had someone concerned about who was going to pay for the trucking.  We had parties wondering where their cash was and whether it was in a bank account.  Some discovered that there was less money than they thought was there, significantly, and factors, those who purchased receivables and allegations of double pledging of collateral.  So there are questions from the beginning of this case swirling about how much money, you know, is really there, whose assets and how many assets are there and who they belong to.

A group of lenders were

DIP HEARING DAY 2

willing to lend into that facility to try to stabilize the business. Some you've got to stabilize before you can maximize, but stabilizing in some ways can be -- in a lot of ways is maximizing.  So I granted relief on an interim basis and today we consider final approval.

During that time an official committee of unsecured creditors was appointed and in many ways has done an extraordinary job, I think, of getting up to speed, working through complicated issues. And the parties have reached agreement with the lender group, I think, who is -- you know, 3-to-1 roll-ups aren't common, but this is anything but a common case.  So I think the parties recognize that.

I think 364 is -- from a code standpoint is easily satisfied. The debtors have declarations to support this and sought financing,

DIP HEARING DAY 2

and no one has been willing to step up and provide additional financing on better terms than the ones that are before me.  There's no question that this case has been out there.

So if somebody wanted to step up and provide a better form of financing, they could have; and no one did.  So this is the deal that's on the table.  And part of the deal is that nothing is put into overhaul, I think, considering the estate and its creditors has improved.  The challenge period has expired.

I had real concerns about the RSA part, but I got comfortable with it because it got pushed out. I was concerned about 30 days, how am I going to grant 30 days in this case.  So I got comfortable with the milestones being pushed out.  It still preserves.  Everyone's rights are preserved.

DIP HEARING DAY 2

I think the roll-up and the changes there makes sense to me. The lenders made a number of concessions kind of before we even got here today, and I think it helped facilitate where we are today, which is all with the intent to kind of stabilize the number of businesses to ensure -- send a message that folks who do business with the company will continue to get paid in the ordinary course.

I know there's been a number of changes to management.  So I think the company's still getting, in a lot of ways, its new legs under it.  And so I suspect rent will get paid on time in the future.  It's just going to take a minute to kind of get everybody up and running and up to speed.

So 364 has been satisfied. There's no other better terms out there.  And the Debtors, there's no

DIP HEARING DAY 2

other -- the priming that has been done has been done, all in accordance with applicable provisions of the bankruptcy code. Stipulations are appropriate.

I think the administrative bucket is creative and makes sense here.  A lot of hard work went into this.  I've reviewed the proposed -- the one I've seen, and I've heard the proposed changes to the others. And really to have reached agreement with this number of parties is remarkable.  I know that there's a lot of work to do, but today at least stabilizes and allows the parties to continue to work as we move on.

So I will approve the financing.  I will approve the adequate protection package for every party involved.  I will approve the carve-outs, the reservations of rights for each

DIP HEARING DAY 2

party that are recognized here.  The roll-up is approved as far as the terms, the financing.  The terms of the financings are approved.  The stipulations are approved.

Just give me a second.

I know that we've reached an agreement.  I'll say this for the record, I'll just make the finding that the terms of the overall structure are fair and reasonable and Debtors are satisfied easily in their own business judgment in connection with this case.  The concept of the marshaling and what's been done here, it's all appropriate, makes sense.

And I appreciate the clarifications on the record and the depth of defining terms.  I know the parties are going to go through with a fine-tooth comb to make sure that each term is defined and a name will be turned into a (inaudible) there.

DIP HEARING DAY 2

That's really important, and I understand and recognize why it's important.

I'll sign the order. Just get it to me. I suspect it's going to take some time to kind of work it out. What I'll just ask is the COC version and then we'll take things one day at a time.

I know there are a number of parties listening, and there are a number of parties in the court. I just -- I know there are a lot of moving pieces to this court and parties may seek relief from the court, but they're always welcome to do so. I've read every word of every pleading that has been filed before me in this case, and I will continue to do so.

The parties will seek relief and we'll take it one day at a time, one hearing at a time, one step at a time. I don't think we're

DIP HEARING DAY 2

at the point where we need to do omnibus stuff, but I'm open to if we need to and just we'll work out things and all that stuff and go old school.  But if we need to, then let's figure out times to do it.  I don't think we're there.  But if we need to get there, then let's get there.

I want to make sure that if parties need court time, that they get it and as much time as they need; otherwise, it sounds like a subset you want on Monday.  And I wish everyone a good day.

MR. SINGH:  Thank you, Your Honor.

JUDGE LOPEZ:  I'll sign the orders, and I wish everyone a good weekend.  Thank you.

MR. SINGH:  Thank you, Your Honor.

(Proceedings concluded.)

STATE OF TEXAS

COUNTY OF HARRIS

                    REPORTER'S CERTIFICATE

                  DIP HEARING PROCEEDINGS

                         VOLUME 2

                     NOVEMBER 7, 2025


    I, the undersigned Certified Shorthand Reporter in and for the State of Texas, certify that the facts stated in the foregoing pages are true and correct.

    I further certify that I am neither attorney or counsel for, related to, nor employed by any parties to the action in which this testimony is taken and, further, that I am not a relative or employee of any counsel employed by the parties hereto or financially interested in the action.

    SUBSCRIBED AND SWORN TO under my hand and seal of office on this the 7th day of November, 2025.


                        _____

                        Melinda Barre, CSR
                                Texas CSR 2192
                        Expiration:  12/31/25