# Exhibit 9

**Transcript for July 23, 2026 Status Conference**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

First Brands Group, LLC and    )  CASE NO: 25-90399
Official Committee of          )  Houston, Texas
Unsecured Creditors            )
          Debtor.              )
                               )
                               )  Thursday,
                               )  July 23, 2026
------------------------------)  8:30 AM to 8:53 AM


STATUS CONFERENCE
BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For First Brands Group, LLC:
                         THEODORE E. TSEKERIDES
                         Weil, Gotshal and Manges LLP
                         700 Louisiana Street, Suite 3700
                         Houston, TX 77002

For Katsumi Servicing, LLC:
                         CHARLES S. KELLEY
                         Mayer Brown LLP
                         700 Louisiana Street, Suite 3400
                         Houston, TX 77002


For the Leucadia Parties:
                         EMIL A. KLEINHAUS
                         Wachtell, Lipton, Rosen & Katz
                         51 West 52nd Street
                         New York, NY 10019


Court Reporter:

Courtroom Deputy:        YESENIA LILA

Transcribed by:          Veritext Legal Solutions
                         330 Old Country Road, Suite 300
                         Mineola, NY 11501
                         Tel: 800-727-6396

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

HOUSTON, TEXAS; THURSDAY, JULY 23, 2026; 8:30 AM

(Call to Order)

THE COURT:  All right.  Good morning.  This is Judge Lopez.  Today is July 23rd.  I'm going to call the 8:30 a.m. virtual status conference in First Brands, 25-90399.  I'm going to turn on my camera.  I will unmute a few lines, and folks can tell me where we are and what's going on.  Good morning.  All right.  I'm just going to unmute a few lines.

I've unmuted a 212 number, and another 212 number, and another 212 number.  I suspect that's Tsekerides, Kleinhaus, and Kelley.  Where are we?

MR. KELLEY:  Thank you, Your Honor.  Charles Kelley for Mayer Brown, on behalf of Katsumi Servicing.

THE COURT:  All righty.

MR. KELLEY:  The parties are working hard this week.  It's a very tight schedule.  As Your Honor knows, we had a very vigorous hearing on Monday, and the Court ruled in a very thorough ruling on Tuesday.  The parties nonetheless have been proceeding with depositions.  What has happened is -- and just to set the stage, Your Honor, appropriately, we've noticed up Mr. Moore in his individual capacity in accordance with the rules for a deposition.

We also provided the Debtors a 30(b)(6) notice, and the Debtors effectively identified Mr. Moore earlier

this week as the deponent on each of the 30(b)(6) categories. So Mr. Moore, as I understand it, will be appearing today in both capacities, as a 30(b)(6) witness and in his individual capacity to be questioned about the declaration, 112-page declaration, which contains a lot of information, Your Honor.

Notwithstanding the rulings from the Court and the ability to get documents, we still have not received the foundational materials that are behind a number of the conclusions Mr. Moore makes associated with the causes of action at the individual listings outside of the Debtors or Debtors' pre-petition management.

We did receive a report that was submitted by A&M to the independent directors, which served as one of the foundational documents, but it is entirely devoted to, in my review of it, it's a rather lengthy document, the investigation into pre-petition management, which we understand they performed.

Obviously, there's a lot to cover here. Yesterday, we received a nine-gigabyte production. Normal glitches occur. We got the password about 6 p.m., we opened it up. It's about 1,100 Excel spreadsheets that are foundational documents for Mr. Moore's opinion, we were advised. We are still uploading those to our vendor. And Alex, partners, and my team have been working through the

night, but we don't have an opportunity to process those.

We also received, after midnight, I noticed this morning

that we received what are fundamental declarations

associated with the witness who's going to be providing

opinion testimony, prior testimony, the Rule 26 disclosures

associated with that.

All of it is the long way of saying,

notwithstanding how hard the parties are working, it is

fundamentally impractical for us to have processed those

documents and proceed with Mr. Moore's deposition.  In

addition, we received Debtors' -- as you may recall, Your

Honor, one of the issues we needed was there was a response

from interrogatory which referenced documents, but they were

required to identify the documents.  I don't have share

screen, so I apologize for that, Your Honor, but I forwarded

to Rosario this morning, shortly before this, a copy of

those ROG responses.

The very first one, which I believe is ROG 6, goes

on for about four pages and cross-references a number of

documents that we are still working through to prepare to

examine Mr. Moore.  These are all important foundational

documents.  I recognize that with both a 30(b)(6) and a

personal notice that the rules provide substantial time for

Mr. Moore to be deposed, we are not seeking delay for the

sake of delay, but we are trying to coordinate completing

the discovery and getting the information that we need in order to be able to proceed with a confirmation hearing.

A couple of things.  One, there are three depositions scheduled tomorrow, and we are in discussion with -- Mr. Tsekerides and I are in discussion about a witness whose name became apparent based upon yesterday's deposition.  I'm not going to go into other fights until we think it's right before the Court.  But right now, the issue is we are trying to figure out -- and there was no logistical way to try to deal with Mr. Moore.  We believe the Debtors are in a position where they can agree to move the hearing.  Nonetheless, in order for us to have ample time to do more, even if we work throughout the entire weekend, we could get his deposition done on, or try to start his deposition on Tuesday of next week.

That contemplates whether we have to travel to New York or Mr. Moore comes to Houston.  We'll figure that out.  But the point is we need time to process the information.  I'm not at any way, shape, or form accusing the Debtors of playing games.  It is what it is, but it's also not a situation of our creation.  We have issues with the discovery and whether they properly disclosed the documents we needed to have in advance to prepare.  Your Honor addressed that.  We also have, frankly, just an inordinate amount, nine gigs.  It's taken a long period of time just to

upload that.  That is a massive amount of material.

And, Your Honor, look, I'm happy -- I cannot have my ability to depose the witness limited by saying, "Well, you can start, and then if you want to make an argument that you didn't have a document because of something we gave you."  The shape and the way I want to present my examination of the witness ought to be built around the documents I think are necessary to properly explore the witness.

I don't want to commence a deposition and then be told I have no more time and I still haven't reviewed the documents.  I'm happy to go over to Wiles' offices and take a deposition for three or four hours today, but I need to reserve time, and I need ample time to be able to take the examination.

Fundamentally, and this is the last point, Your Honor, Debtors have provided an expert witness.  The expert witness, Mr. Kirshner, depends entirely on Mr. Moore's testimony.  It's not one leg of a three-legged stool.  It's all three legs.

Mr. Moore is the foundational fact witness for what Mr. Kirshner does.  We need to complete Mr. Moore's deposition before we take Mr. Kirshner.  That is why I proposed to the Debtor we would take Mr. Moore's deposition on Tuesday, and Mr. Kirshner's the day after we finish,

which may be Thursday or Friday.

But in either event, those are the issues that we're dealing with logistically. And we recognize that it hinges upon the scheduling of the hearing. And so I wanted Your Honor to -- while we appreciate Your Honor's scheduling us for 1:30 on Friday, this just became more preeminent. And we apologize, but we're thankful for the Court carving some time out before your 10 a.m. hearing.

THE COURT: Thank you.

Mr. Kleinhaus, any thoughts before I turn to Mr. Tsekerides?

MR. KLEINHAUS: Sure. And good morning, Your Honor. Emil Kleinhaus, Wachtell Lipton on behalf of the Leucadia parties. I'll be brief and non-duplicative. As I said on, I guess it was Monday, our clients would have preferred to go forward on the original schedule. We have no -- we don't benefit from delay, more expense on litigation. And we've been working around the clock to do that. But at some point, it just becomes not possible to try a case in a responsible way.

And I'll just hit three bullet points. I mean, the first is document production. When we were here on Tuesday, the Court, as part of its ruling, said the rolling productions need to be done, and there needs to be a final production. We got three rolling productions yesterday.

First, a very substantive deck with a bunch of redactions, then 1,200 Excel files later in the day, and then several hours ago, 40,000 pages, which we haven't been able to load, yet.  So that's documents.

On interrogatories, the Court compelled responses.  There's one response, Number 8, which goes to the different information between the Ad Hoc Group and other bidders, where our view is we still haven't gotten a clear response.  Instead, the Debtor said, "We will produce some documents and point you to them."

And then the third thing is a privilege log.  At 1:23 a.m., we got a two-page privilege log with seven categories that doesn't have the number of documents in each category, doesn't have any names of individuals.  And after we thought everybody agreed on Tuesday that mediation privilege ended on March 27th, this privilege log asserts mediation privilege going into April.  So we haven't had time to understand or meet and confer on these issues, but I think suffice it to say, there are some open issues here regarding discovery, and Your Honor offered to do in camera review if necessary.  I don't know yet if that's necessary, but that's in part because we got a privilege log at 1:23 a.m. that doesn't even list individuals, let alone document by document.  So we are willing to be creative and work nonstop to get to a trial here, but as I said, Your

Honor, we're just at a point where it's just coming in at a pace that's not possible to digest and depose people and move to trial in a responsible way.

THE COURT:  All right.

MR. KLEINHAUS:  Thank you, Your Honor.

THE COURT:  Mr. Tsekerides?

MR. TSEKERIDES: Yes.  Well, they really don't want to have the hearing next week.  So let me give you the process, and then I'm going to give you what I think we should be doing.

THE COURT:  Okay.

MR. TSEKERIDES:  So we had the hearing on Monday. You ruled on Tuesday, and the productions are all done.  Let me just say that.  And after you ruled, we went back, and you said, "Identify specific documents in the ROG."  So that's what we did.  But importantly, and this is critical because Mr. Kelley is missing one piece.  The documents that are relevant to Mr. Moore were produced in the main, almost all of the documents that are -- I have his sheet that he submitted this morning.  Almost all of those documents were produced on July 16th, last week.  We got Wachtell, Mayer Brown, Milbank.  We got a lot of lawyers over there.

A week ago, the bulk of the documents for Mr. Moore were produced, a week ago.  We gave one Excel or a PowerPoint yesterday.  And even in conversations with

Counsel, there isn't a lot in there besides insider claims. So I want to stress that the bulk of Mr. Moore's documents were produced a week ago.  What did we do in the ROG responses?  We went even further than Your Honor said. We have spoon-fed, if you take a look at them, spoon-fed by claim, by claim, which documents go to which claims.  But these documents, again, were produced a week ago in the main, a week ago.

I'll get to the privilege logs in a second.  But I think, as relates to Mr. Moore, what should have happened, we were going to move the deposition up to 8:30.  They didn't even come today.  They could have started a deposition.  We could have had an hour in already.  They're not even here at our office right now.  We could have been here, taken a deposition for the day if they happened to see a document that they think would be relevant, even though they had them for over a week.

The way this works in normal litigation, when we have timing like this, take the deposition, under protest, whatever you want to call it, call you up for tomorrow, we could have been on the phone with you, which we have a conference, and say, "Hey, look, they gave us these documents.  We think they're relevant.  We want the guy back for two or three hours," whatever.  And maybe I lose that argument.

But what we should not be doing is not even showing up to start a deposition today, trying to push off depositions so that we don't have this hearing until September, it feels like.  And the sequencing makes no sense.  Okay.  Maybe you want to put a witness on a trial in a certain way, but they had the declarations from July 14th.  Okay?  They know what they're going to cross the wooden slot.  Moore does not have to go before Kirshner.

So by sequencing the way Mr. Kelley wants to do, we're never having this trial next week.  But there's no basis for sequencing in the rules.  And I do want to make one point about Mr. Moore.  Yeah, he's giving certain expert testimony on certain points, I guess, but in this Circuit and in the rules, Rule 26 does not apply to a confirmation hearing.  This is not an adversary proceeding.  It's a contested matter.  And we have cases, if we need to go down this road.  We've met those elements, but I do want to point out that Rule 26, the expert disclosures, do not apply in contested matters.

So what we have is they've had documents about Mr. Moore for over a week, the bulk of the documents.  The documents that were produced yesterday were in response to Your Honor's ruling that we had to give some data, information, and communications with the Ad Hoc Group as relates to if there were facts of that nature.  The bulk of

that has nothing to do with Mr. Moore.

Now, I know Counsel's saying they don't know that yet, but I'm representing that to the Court.  But even if it turns out that some documents in there are relevant to him, they have plenty of documents and plenty of time and two declarations to work from.  They should have started today at 8:30.  The fact that they're not even here and they didn't get started -- I'm not accusing them of delaying, but, you know, they should have been here.  We should have gotten going already, and we should not be wasting time with this.

But the way this should go, they come to our office, they depose Mr. Moore, they see where they are tomorrow.  We're going to be on the phone with you tomorrow. Take Mr. Kirshner tomorrow.  They have Mr. Goldman tomorrow. We'll talk about this other witness at another time.  That's what should have happened, not get on the phone and try to blow everything up.

THE COURT:  Mr. Kelley, I'll give you a brief response before I rule.  And Mr. Kleinhaus.

MR. KELLEY:  Yes, Your Honor.  I mean, one of the issues we complained about was the way the discovery was responded to did not direct us to the right documents. Directing us to the documents was critical.  And in particular, we need to understand what the Debtors are

relying on for purposes of the foundational issue with Mr. Moore. We --

THE COURT: Why aren't you there?

MR. KELLEY: We noticed the deposition for 9:30, and there have been email exchanges, and we had indicated we would be there immediately after this hearing, depending on what the Court said. And as noted, I'm prepared to take the deposition and get as much as I can in. But Your Honor, I need to know I have the additional time. That's the fundamental issue. I can not process the documents. And so I'm just down the street. I can be there very briefly. And there's a long email chain amongst the various parties. Yesterday, I informed the parties immediately when we had the status conference that there's a status conference, we filed a notice that we would (indiscernible).

THE COURT: What's the ask of me today? What's the purpose of the status conference today as opposed to the one tomorrow? What's the ask?

MR. KELLEY: The ask, specifically, Your Honor, is to make sure we have ample time to complete the deposition by processing the documents. When I had my meeting to confer with Mr. Tsekerides, he basically contended that we should proceed with the deposition, and then I have to make an argument that the documents that we receive award us more time as opposed to giving us time to review the documents

and structuring the deposition.  I'm prepared to make use of the time today, and other parties are, too, but I need to know I have time to complete after we review the documents.

The only time that works, given the schedule and the religious holidays that are involved, would be to take up the deposition on Tuesday.  And we are trying to schedule another deposition on Monday, which is the witness we should have been taking yesterday, but we didn't get adequate disclosures in the discovery.  And so it was a witness that wasn't identified to us until we took Mr. Malloy's deposition, and we requested immediately that we'd be able to speak to this person.  So we believe it's the A&M person who may have had some of the foundational issues that are still missing for Mr. Moore's declaration.

THE COURT:  Mr. Kleinhaus?

MR. KLEINHAUS:  Your Honor, may I have just 10 seconds?  Two quick points.  One is my colleagues are over at Weil Gotshal and ready to depose Mr. Moore, if that's what the Court's ruling.  So we are there and ready.  The production emails that we got yesterday, I'm reading one of them, said, "This production contains supplemental materials related to the declaration of Charles M. Moore, including invoice nomination files underlying the consolidated nominations data produced in updated prior productions," and then lists other things.

So what was produced yesterday was 1,200 files, and the cover email said explicitly there are supplemental materials related to the declaration of Charles Moore. So I accept Counsel's representation, but it's a little bit hard to understand, given what -- it just emphasizes the timing issue we're having here. So my colleagues are there and ready to depose Mr. Moore. I just think we've gotten into a situation here where there's a disconnect between what's happening on discovery on the ground and actually starting a deposition right now, which again, we're prepared to do.

THE COURT: Mr. Tsekerides, any final words?

MR. TSEKERIDES: Your Honor, my final words are we should have started the deposition at 8:30, and what I'm hearing from Mr. Kelley, he could have made all these arguments, we could have been almost two hours in, and then brought them to Your Honor if any of these new documents are even relevant. It had the declaration since July 14th, and they had the documents with three powerhouse law firms since last week. So I think we should have gotten started. What should happen is they should get over here, take the deposition, see how it goes, and continue on our schedule, and then we'll talk with you tomorrow. That's what I think should happen.

THE COURT: All right. I'm hearing everyone, and I do understand that if someone just received nine gigs, I'm

not really sure what's in there, but if someone sees stuff and it says it's related supplemental to Moore, one would not just want to rely on representations that it's not that important and that the really important stuff has come a week earlier.

Mr. Kelley, Mr. Kleinhaus, I think what makes the most sense is to start the depo, do the work.  If it finds -- maybe tomorrow, you know the answer about what you need and what you don't need.  But I certainly am going to be open to, if there's additional time and there's really important stuff there that you just got or that you think is important, I'm not going to kind of hold anyone to a litmus test on relevancy or importance.  I'm going to give you the extra time.

Moore is going to have to be in Houston, and everyone will be available.  And if it needs to happen on Tuesday, then it'll happen on Tuesday, and if it needs to happen on Monday or Tuesday, I'll let the parties kind of know.  I want to just try to see how much we can accomplish between Tuesday and Thursday so that if -- let's just start today and let's just see where things go.

Maybe you feel like you've gotten everything you need.  Maybe there's something in there that you say, "This is really important."  And I'm speaking to any of the objecting parties, but if there's something in there, I do

think you're entitled to have a few days to process it and for you to make your own determination as to what you think is relevant or not relevant.

So take the depo, do the time, and if there's something you need to supplement, then Moore will be made available for it. And we can talk time parameters and all that, either tomorrow, we can do it on Monday, quite frankly, if we have to. I'll be here. So we can do that on Monday as well, but just make sure that we're not waiting until Tuesday to then start talking about it. So if we need to talk on Friday and talk again on Monday, talk on Saturday, I don't really care. Let's just figure out what makes the most sense.

And I don't know whether what you received is going to be relevant to the parties or not, but I get the point. Let's just start and see where things go. Parties, just reach out to Ms. Saldaña either -- but let's talk tomorrow and see what you find. But I don't want to hold you till tomorrow to have everything to process in 24, 48 hours. Maybe you find something in there over the weekend that you think is important. Moore should be in Houston starting on Monday, and let's just see where it goes.

MR. TSEKERIDES: Your Honor, we're still on for tomorrow, right?

THE COURT: Huh?

MR. TSEKERIDES:  I'm sorry.  Tsekerides.  We're still on for tomorrow, right?  We have a conference.

THE COURT:  Yeah, no, no, I think we are, but what I'm saying is just in case they find something over the weekend that they think is important, and I'm not going to kind of hold them to tomorrow.  And I think whatever depositions should continue, should continue, but I think Moore should be ready to be in Houston.  Tell him to dress comfortably.  It's hot out here these days.

MR. TSEKERIDES:  Understood.

THE COURT:  And let's just see where it goes.  I get the point.  I get where everything is going.  Let's just start.  And maybe we need to talk more and talk deeper about some of these issues, but let's get started today and see where things go.  All right?

MR. KELLEY:  We'll do that, Your Honor.  You've got a preview of some of the issues that we will probably be chatting about tomorrow, but thank you for your time.  We know you have a full schedule.  And we'll proceed.  But I feel comfortable that I'm not going to be losing my opportunity to process the documents and conclude the deposition appropriately.

THE COURT:  Yeah.  Thank you very much, everyone.  Have a good day.

MR. KLEINHAUS:  Thank you, Your Honor.

MR. TSEKERIDES:  Thank you, Your Honor.

THE COURT:  Thank you.

(Proceedings adjourned at 8:53 AM)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

Nathan Kiprotich Too

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date: July 23, 2026