**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, et al.,** [1] | § | |
| | § | **Case No. 25-90399 (cml)** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF NON-UNION RETIREES TO
EMERGENCY MOTION OF DEBTORS FOR ORDER (I) AUTHORIZING DEBTORS
TO MODIFY RETIREE BENFITS AND (II) GRANTING RELATED RELIEF**

The Official Committee of Non-Union Retirees (the "**Retiree Committee**") files this *Objection to Emergency Motion of Debtors for Order (i) Authorizing Debtors to Modify Retiree Benefits and (ii) Granting Related Relief* (the "**Objection**"), and in support thereof, respectfully states as follows:

## I.  BACKGROUND

1.      On September 24, 2025, Global Assets LLC and 12 of the above-captioned debtors (the "**Debtors**") each filed with the Court a voluntary petition under chapter 11 of title 11 of the U.S. Code (the "**Bankruptcy Code**").  Commencing on September 28, 2025, First Brands Group, LLC and the remaining Debtors each filed with the Court a voluntary petition under chapter 11.

2.      The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed in these cases.

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

3.       The Debtors' chapter 11 cases are being jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas.

4.       On June 25, 2026, the Court entered its *Order (I) Authorizing and Directing the United States Trustee to Appoint a Committee of Retired Employees, and (II) Granting Related Relief* (the "**Retiree Committee Order**").[2]  Pursuant to the Retiree Committee Order, the Office of the United States Trustee appointed four individuals to the Retiree Committee and filed its *Notice of Appointment of Committee of Retirees* on July 9, 2026.[3]

5.       On June 16, 2026, the Debtors filed the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (the "**Plan**").[4]  In connection with the Joint Plan, the Debtors filed their *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*  (the "**Disclosure Statement**") on June 17, 2026.[5]

6.       On July 11, 2026, the Debtors issued a proposal (the "**Proposal**") to the Retiree Committee.  On July 14, 2026, the counsel for the Debtors and for the Retiree Committee met to discuss the Proposal.

7.       On July 14, 2026, the Debtors filed their *Emergency Motion for Order (i) Authorizing Debtors to Modify Retiree Benefits and (ii) Granting Related Relief* (the "**Retiree Benefit Motion**").[6]  The Retiree Benefit Motion requests an order of the Court allowing the

---

[2]     ECF No. 3060.

[3]     ECF No. 3148.

[4]     ECF No. 3019.

[5]     ECF No. 3020.

[6]     ECF No. 3194.

termination of the retiree benefits of the Debtors' non-union retirees, effective seventeen (17) days after the filing of the Retiree Benefit Motion, which is the same treatment as provided under the Proposal.

## II.  OBJECTION

8.      Section 1114(e)(1)(B) of the Bankruptcy Code provides, in pertinent part:

> Notwithstanding any other provision of this title, the debtor in possession, or the trustee if one has been appointed under the provisions of this chapter (hereinafter in this section "trustee" shall include a debtor in possession), shall timely pay and shall not modify any retiree benefits, except that… the trustee and the authorized representative of the recipients of those benefits may agree to modification of such payments, after which such benefits as modified to be paid by the trustee.[7]

9.      Pursuant to section 1114(b)(2) of the Bankruptcy Code and the Retiree Committee Order, the Retiree Committee is the "authorized representative" with respect to non-union retirees.[8]

10.     The Debtors assert that they are unable to continue paying the retiree benefits. Likewise, to date, the Debtors and the Retiree Committee have not reached any agreement with respect to modification of the retiree benefits.  Accordingly, the Debtors are unable to satisfy section 1114(e)(1)(B) of the Bankruptcy Code.  The Debtors' only remaining alternative is to satisfy section 1114(e)(1)(A), which states that "the court, on motion of the trustee or authorized representative, and after notice and a hearing, may order modification of such payments, pursuant to the provisions of subsections (g) and (h) of this section."[9]

11.     Section 1114(g) provides:

> The court shall enter an order providing for modification in the payment of retiree benefits if the court find that –

---

[7]   11 U.S.C. § 1114(e)(1)(B).

[8]   11 U.S.C. § 1114(b)(2).

[9]   11 U.S.C. § 1114(e)(1).

(1) The trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (f);

(2) The authorized representative of the retirees has refused to accept such proposal without good cause; and

(3) Such modification is necessary to permit the reorganization of the debtor and assures that all creditors, the debtor, and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities. [10]

### A.   The Debtors Are Unable to Meet the Section 1114(g) Standards

12.   The burden is on the Debtors to establish the requirements under section 1114(g) of the Bankruptcy Code. [11]   For the reasons set forth below, the Debtors are unable to meet the section 1114(g) criteria.

#### i.   The Proposed Modification Is Not Necessary to Permit the Reorganization of the Debtor

13.   As quoted above, one of the requirements under section 1114(g)(3) is that the proposed modification "is necessary to permit the reorganization of the debtor."  11 U.S.C. § 1114 (g)(3).  Here, the reorganization of the debtor appears to be impossible, and the Debtors are no longer attempting to reorganize.  Therefore, the proposed modification does not meet the standard of being necessary for the reorganization of the debtor.

14.   "Statutory interpretation begins and, if possible, ends with the language of the statute.  When the language is plain, the court must enforce the statute's plain meaning, unless absurd." [12]

---

[10]   11 U.S.C. § 1114(g).

[11]   *See, e.g., In re Patriot Coal Corp.*, 493 B.R. 65, 112 (Bankr. E.D. Mo. 2013).

[12]   *Statoil USA E&P, Inc. v. United States Dep't of Interior*, 801 Fed. Appx. 232, 235 (5th Cir. 2020) (quoting *United States v. Lauderdale Co.*, 914 F.3d 960, 964 (5th Cir. 2019)).  *See also Johnson v. Sawyer*, 120 F.3d 1307, 1319 (5th Cir. 1997) (stating "in applying this rule of statutory construction, we must apply a reasoned, objective method for determining whether a result is actually 'absurd' or whether, instead, it is simply personally disagreeable"); *In re Hot'z Power Wash, Inc.*, 655 B.R. 107, 118 (Bankr. S.D. Tex. 2023) (quoting *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991) (stating "The Supreme Court has routinely held that the plain meaning of

15.     In ascertaining a statute's plain meaning, a court is to assume that "Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning."[13]

16.     To be sure, the Retiree Benefit Motion cites to a few older cases from other jurisdictions, which cases equate "reorganization" with "confirmation of a Chapter 11 plan" in the context of section 1114(g).[14]

17.     Such a contorted interpretation does not comport with controlling Fifth Circuit authority.  The language of section 1114(g)(3) is plain; the court therefore "must enforce the statute's plain meaning, unless absurd."[15]  "In statutory interpretation, an absurdity is not mere oddity.  The absurdity bar is high, as it should be.  The result must be preposterous, one that 'no reasonable person could intend.'"[16]

18.     There is nothing preposterous about Congress's requirement that a debtor prove that its proposed modification to retirement benefits is necessary to an actual reorganization, as a prerequisite to the approval of any such modification.  As suggested in the *Santander Consumer USA* case, the final version of a statute is often the result of compromise.  Section 1114(g)(3) may very well represent a compromise between factions seeking to facilitate a debtor's reorganization and those seeking to shore up the reliability of retirement benefits.  A ruling that casually equates "reorganization" with "confirmation of a Chapter 11 plan" disregards the importance of that type

---

legislation should be conclusive unless literal application of a statute 'is so bizarre that Congress could not have intended it'")).

[13]   *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993).  *See also Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (noting "[l]egislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of passage").

[14]   *See* Retiree Benefit Motion, ¶ 51.

[15]   *Statoil USA*, 801 Fed. Appx. at 235.

[16]   *Texas Brine Co., L.L.C. v. American Arbitration Ass'n*, 955 F.3d 482, 486 (5th Cir. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading the Law: Interpretation of Legal Texts* 237 (2012)).

of compromise in the legislative process.  The Court must therefore apply the plain language of section 1114(g)(3), and once the plain language is applied, the Debtors are unable to meet that standard.

**ii.     The Retiree Committee Has Refused the Proposal with Good Cause**

19.     As noted above and in the Retiree Benefit Motion, the Debtors have made a Proposal under which retiree benefits would be terminated on July 31, 2026.  To date, the Retiree Committee has refused to accept the Proposal.  Accordingly, the only issue under section 1114(g)(2) is whether the Retiree Committee's refusal to accept the Proposal is with good cause.

20.     The Retiree Committee rejected the Proposal because, for all intents and purposes, the Proposal would confer no value at all to retirees.  The only semblance of value is a general unsecured claim for "the estimated present value of any unpaid Retiree Life Benefits which shall be determined based on reasonable assumptions to be mutually agreed upon in good faith by the Debtors and the authorized representatives."[17]

21.     As the Court knows, the chances are bleak that unsecured claimants will receive any distribution in these bankruptcy cases.   The only recovery for general unsecured claims is a pro rata share of the Class 3(b) Litigation Trust Interests, which in turn will begin to receive distributions only if the Litigation Trust recovers over $1.9 billion.[18]  Even in the unlikely event that the Litigation Trust recovers over $1.9 billion, the Debtors estimate that there will be $5.6 billion in allowed unsecured claims.[19]  The likelihood of an unsecured creditor receiving any appreciable recovery in these cases is, therefore, extremely low.[20]

---

[17]     Retiree Benefit Motion, ¶ 31.

[18]     Disclosure Statement, pp. 11-34.

[19]     *Id.*

[20]     *See In re Speco Corp.*, 195 B.R. 674, 679 (Bankr. S.D. Ohio 1996) (stating "debtor in possession's latest proposed modification, and the one currently before the court, is for the debtor in possession's retirees to surrender their §

22.     Moreover, significant amounts of time are likely to pass before the Litigation Trust begins making any material recoveries on the Estate Claims (as defined in the Plan), much less significant enough recoveries to pass the $1.9 billion threshold.  Suffice it to say, retirees naturally have less tolerance for the passage of time than other constituencies might.  A recovery that does not require a multi-year wait would be more meaningful for retirees.

23.     Finally, the methodology in the Proposal for determining the value of the Retiree Life Benefits leaves too much to the Debtors.  The Proposal contemplates that the Debtors and the Retiree Committee would work in good faith on such a calculation, but the Retiree Committee Order provides that the Retiree Committee will be dissolved when the Plan is confirmed – which leaves no time whatsoever for the Retiree Committee to work with the Debtors on the present value calculation.  As a result, the Retiree Committee's participation in the present value calculation is illusory; in reality the Debtors will be left to make any determination they wish, with no recourse for retirees.

24.     In light of the low likelihood of recovery for unsecured claimants, the amount of time that would pass before unsecured claimants might make any recovery, and the Debtors' ability to unilaterally dictate the size of retirees' claims, the supposed value provided in the Proposal is illusory.

### iii.     The Proposed Modification Does Not Assure that all Creditors, Debtors, and Affected Parties are Treated Fairly and Equitably

25.     For the same reason, the proposed modification falls disproportionately on the Debtors' retirees.  The Debtors' proposal is to terminate the retiree benefits altogether as of the end

---

1114 statutory rights to health benefits in exchange for absolutely nothing. (The debtor in possession's contention that the retirees would be given an unsecured claim in exchange for their surrendering their rights is unpersuasive.)").

of this month.  In return, they propose to give retirees an unsecured claim for one component of what is being terminated.  The unsecured claim is highly unlikely to yield any recovery.  In the unlikely event that it does, retirees will suffer during the significant amount of time that passes between plan confirmation and the start of any recoveries for the Litigation Trust.

26.    "Congress drafted § 1114 to insure that debtors did not seek to effect reorganizations 'on the back of retirees' for the benefit of other parties in interest."[21]

27.    "The debtor must show that it has not placed a disproportionate share of the financial burden of avoiding liquidation upon the union or retirees.  The court must thus look to whether the proposal treats the union [or retirees] fairly when compared with the burden imposed on other parties by the debtor's additional cost-cutting measures and the Chapter 11 process generally." [22]

28.    Here, the Proposal places a disproportionate share of the financial burden upon the retirees.  Worse, it does so without even "avoiding liquidation."[23] Under the Proposal, the retirees will lose all health and life insurance coverage, leaving many of them extremely vulnerable to future life events.  Meanwhile, in a case that should be a liquidation, certain creditors are receiving more than they would receive in chapter 7.  For that reason, not all parties are treated fairly and equitably under the Proposal.

### iv.    The Balance of the Equities Weighs Against the Proposed Modification

29.    "Section 1114's statutory scheme and Congress' expressed intent indicates that the statute was enacted to achieve the very specific and focused objective of protecting retiree benefits

---

[21]    *Patriot Coal*, 493 B.R. at 130 (quoting *In re Ionosphere Clubs, Inc.*, 134 B.R. 515, 523 (Bankr. S.D.N.Y. 1991)).

[22]    *Patriot Coal*, 493 B.R. at 130 (internal punctuation omitted) (quoting *In re National Forge Co.*, 279 B.R. 493, 501 (Bankr. W.D. Pa. 2002); *In re Northwest Airlines Corp.*, 346 B.R. 307, 326 (Bankr. S.D.N.Y. 2006)).

[23]    *Patriot Coal*, 493 B.R. at 130.

from unilateral termination."[24]   Because the Proposal is essentially nothing more than unilateral termination, the purpose of section 1114 is subverted by any relief afforded to the Debtors approximating the Proposal.

30.    In much of the relevant case law, the courts' overriding concerns were with preventing the liquidation of the debtor.[25]   Other courts have similarly focused on "whether imposing the requested pay cuts or other concessions would still be preferable to the loss of everyone's jobs."[26]   Those concerns are moot here, and they therefore must be non-factors, as the Debtors are unquestionably going to be liquidated – and every union and non-union job is already terminated.

31.    Likewise, most of the equitable factors articulated by courts over the years are framed in terms of a choice between concessions made by a union or retirees and the liquidation that would result from an absence of concessions.[27]   Because that choice does not exist here, the equitable factors are not germane.  For example, it is impossible to apply "the likelihood and consequences of liquidation if rejection is not permitted," considering that liquidation is certain whether rejection is permitted or not.[28]

32.    Rather, the balancing of the equities should be as follows.  Retirees of the Debtors worked their entire working careers for the sake of the Debtors (and their predecessor companies), taking on faith that the Debtors would satisfy their contractual and moral obligations to provide

---

[24]   *Nelson v. Stewart*, 422 F.3d 463, 474 (7th Cir. 2005).

[25]   *See, e.g., In re Alpha Natural Res., Inc.*, 552 B.R. 314, 337 (Bankr. E.D. Va. 2016) (stating the "threat of liquidation and loss of every union and non-union job permeates the Court's concern in this case, and overrides the other equitable considerations").

[26]   *In re Pinnacle Airlines Corp.*, 483 B.R. 381, 410 (Bankr. S.D.N.Y. 2012).

[27]   *See Alpha Natural Res.*, 552 B.R. at 337 (listing six equitable factors).

[28]   *Id.*

retiree benefits as part of the ongoing consideration for years of service.  The Debtors are now no longer able to satisfy those obligations.  Fault for the Debtors' grave condition can be spread among a number of different parties, but the retirees are not among those deserving blame.[29]

33.     The section 1114(g) framework makes sense in a scenario in which a recalcitrant bloc of retirees stands in the way of an otherwise viable reorganization.     In that scenario, the retirees' refusal to make proportionate accommodations should be overridden by the court for the sake of the greater good served by a successful reorganization.  In just about every respect imaginable, however, this case is the opposite of that scenario.  There is no way an impartial observer could conclude that the balance of equities should weigh against the retirees.

B.     **The Proposal Fails to Provide for a Claim for Vested Benefits**

34.     Separate from the Debtors' inability to satisfy section 1114(g), the Retiree Benefits Motion is deficient for an independent reason: it seeks to terminate retiree benefits that have contractually vested, while providing the affected retirees no claim for the value of those benefits. Section 1114 permits the Court to authorize the modification of retiree benefits in a chapter 11 case under prescribed conditions; it does not license the Debtors to extinguish vested contractual rights without recognizing the corresponding claims that arise when those rights are impaired. Although employers are generally free to modify or terminate welfare benefits, they may bind themselves by conferring vested benefits through clear and express plan language.[30]   Where they do, a reservation of the right to amend or terminate cannot vitiate those contractually vested or

---

[29]   *See In re Farmland Indus.*, 294 B.R. 903 (Bankr. W.D. Mo. 2003) (stating "retirees as a class are unique in a bankruptcy proceeding and … they are deserving of special protection… As a general rule, retirees are particularly vulnerable when their former employer goes bankrupt, because of their ages, their reduced incomes, and their inability to replace the benefits … that are being terminated").

[30]   *Hunter v. Berkshire Hathaway, Inc.*, 829 F.3d 357, 363 (5th Cir. 2016).

bargained-for rights.[31]   At least one of the arrangements the Debtors propose to terminate—the Dalton President/VP medical arrangement (the "**Dalton PVP Plan**")—confers such vested benefits. Neither the Proposal nor the Retiree Benefit Motion accounts for the claims that termination of those vested benefits creates.

35.   The Employee Retirement Income Security Act of 1994 ("**ERISA**"), 29 U.S.C. §§ 1001 *et seq.*, imposes minimum funding requirements and vesting standards for pension plans, but generally not for welfare benefits plans.[32] "Welfare benefits plans must be established and maintained pursuant to a written instrument… but employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans."[33]

36.   "Employers have large leeway to design disability and other welfare plans as they see fit."[34] Among the modifications that employers may make is to provide for vesting of the plan, which confers "unalterable and irrevocable benefits on its employees."[35]   In other words, whereas rights are vested statutorily with respect to a pension, they become vested with respect to a welfare benefit plan contractually.[36]

37.   Here, the rights under the Dalton PVP Plan have vested, because the text of the plan makes clear the parties' intent for the vesting of those rights. First, the Dalton PVP Plan does not merely describe benefits offered at the Debtors' discretion; it styles itself as an agreement that, by its terms, is "intended to become effective upon retirement."   Group Medical Benefits for

---

[31]   *Halliburton Co. Benefits Comm. v. Graves*, 463 F.3d 360, 378 (5th Cir. 2006)*, decision clarified on denial of reh'g*, 479 F.3d 360 (5th Cir. 2007).

[32]   *See* 29 U.S.C. §§ 105(a), 1053, 1081(a), 1083.

[33]   *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015) (internal citations omitted).

[34]   *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2002).

[35]   *Halliburton*, 463 F.2d at 368.

[36]   *See Hunter*, 829 F.3d at 363; *Wise v. El Paso Nat. Gas. Co.*, 986 F.2d 929, 937 (5th Cir. 1993).

Presidents and VPs.[37]  Second, upon the retirement of a covered President or Vice President, the

Dalton PVP Plan obligates the company in mandatory terms to fund coverage: the company "will

pay the premium at 100%" for the retiree and covered dependents until age 65.  Group Medical

Benefits for Presidents and VPs. Moreover, upon the retiree's attaining age 65, the company "will

pay the premium for coverage under the Dalton Corporation 'Retiree with Medicare Policy'" for

the remainder of the retiree's life.  Group Medical Benefits for Presidents and VPs.  This is the

affirmative, granting language that the Fifth Circuit requires: an employer vests a benefit when it

intends to confer unalterable and irrevocable benefits and does so by using clear and express

language.[38]  A claimant establishes vesting by pointing to strong prohibitory or granting language

in the plan documents.[39]

38.     Because the rights under the Dalton Plan have vested, the retirees covered by the

Dalton PVP Plan (the "**Dalton Claimholders**") have claims for the value of the promised

benefits.[40]

39.     Neither the Proposal nor the treatment requested under the Retiree Benefit Motion

provide for a claim to the Dalton Claimholders.  Such treatment violates sections 1114 and

1129(a)(13) of the Bankruptcy Code.

      **C.**        **The Dissolution of the Retiree Committee May Prevent Further Cooperation**

---

[37]   Citations to health care plan provisions are based on documents provided by the debtors, which in some cases are unsigned.  The Retiree Committee would need further access to documents to confirm that the signed versions of the plans are identical to the unsigned versions relied upon herein.

[38]   *See Halliburton*, 463 F.2d at 368.

[39]   *Wise*, 986 F.2d at 937.

[40]    *See* 11 U.S.C. § 1129(a)(13) (requiring payment "for the duration of the period the debtor has obligated itself to provide such benefits").  *See also In re Farmland Indus., Inc.*, 294 B.R. 903 (Bankr. W.D. Mo. 2003); *In re North Am. Royalties, Inc.*, 276 B.R. 860 (Bankr. E.D. Tenn. 2002).

40.     Finally, the Retiree Committee raises a logistical issue.  The proposed order ("**Proposed Order**") filed with the Retiree Benefit Motion includes a directive that the "Non-Union Retiree Committee, the Unions, and the Retirees shall cooperate with, and take all steps reasonably requested by, the Debtors in connection with implementation of the Proposal." [41]

41.     Under the terms of the Retiree Committee Order, however, the Retiree Committee is set to be dissolved upon the confirmation of the Plan.[42]     Given the timing of the relevant hearings, it appears likely that there will be little to no time between the Court's entry of an Order on the Retiree Benefit Motion and the dissolution of the Retiree Committee.

42.     In the event that the Court ultimately grants the Retiree Benefit Motion, its order should reflect the possibility that the Retiree Committee may be unable to cooperate with the implementation of the Proposal due to its dissolution.

WHEREFORE, the Retiree Committee respectfully requests that the Court (a) deny the Retiree Benefits Motion, and (b) grant the Retiree Committee such further relief as the Court deems just.

Dated: July 20, 2026
Houston, Texas

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C.**

By:    */s/ Mark D. Sherrill*
Mark D. Sherrill (TBN 24034678)
1200 Smith Street, Suite 1400
Houston, TX  77002
Telephone:    (713) 658-1818
Facsimile:    (713) 658-2553
e-mail: mark.sherrill@chamberlainlaw.com

***Proposed Counsel for The Official Committee Of Non-Union Retirees***

---

[41]    Proposed Order, ¶ 4.

[42]    *See* Retiree Committee Order, ¶ 6.

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 24, 2026, a true and correct copy of the foregoing Notice was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system and by first class mail on the attached master mailing matrix.

*/s/ Mark D. Sherrill*
Mark D. Sherrill