## Exhibit 34

**Katsumi's First Request for Production from First Brands in Connection with the Plan and Disclosure Statement**

# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| **Debtors.[1]** | § | **(Jointly Administered)** |
| | § | |

**KATSUMI SERVICING, LLC'S FIRST REQUEST
FOR PRODUCTION OF DOCUMENTS FROM FIRST BRANDS
IN CONNECTION WITH THE PLAN AND DISCLOSURE STATEMENT**

**PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 34 of the Federal Rules of Civil

Procedure, made applicable herein by Bankruptcy Rules 9014, 7026, and 7034, Katsumi Servicing,

LLC ("Katsumi"), by and through its undersigned counsel, hereby serves its First Requests for

Production of Documents (the "Requests"), attached hereto as **Exhibit A**, on First Brands Group,

LLC, and its debtor and non-debtor affiliates (collectively, "First Brands") in connection with the

Plan and Disclosure Statement (as such terms are defined below).

**PLEASE TAKE FURTHER NOTICE** that First Brands is directed to produce true and

correct copies of all Documents and Communications responsive to the Requests on or before **4:00**

**p.m. (prevailing Central Time) on July 9, 2026**, at the offices of Mayer Brown LLP, 700

Louisiana Street, Suite 3400, Houston, Texas 77002, Attention: Charles S. Kelley, including by e-

mail to Charles S. Kelley (ckelley@mayerbrown.com), Gary Johnson

(gjohnson@mayerbrown.com), Kaitlyn Barry (kbarry@mayerbrown.com) and Kyle TumSuden

(ktumsuden@mayerbrown.com), or at such other time and place as may be mutually agreed to by

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

the parties.  The Requests shall be deemed to be continuing in nature, and Katsumi requests that

First Brands supplement the response to the Requests if at any time additional Documents or

Communications responsive to the Requests come into their possession, custody, or control.

[*Remainder of Page Intentionally Left Blank*]

**PLEASE TAKE FURTHER NOTICE** that Katsumi reserves its rights under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"), and any applicable law regarding the subject matter of this Notice and to amend, supplement, and/or modify the Requests in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and other applicable law.

Dated:  June 22, 2026
Houston, Texas

/s/ Charles S. Kelley
**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, Texas 77002
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com

Sean T. Scott (admitted *pro hac vice*)
Kyle J. TumSuden (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Email: stscott@mayerbrown.com
         ktumsuden@mayerbrown.com

Richard A. Stieglitz (admitted *pro hac vice*)
Lauren C. Blanchard (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Email: rstieglitz@mayerbrown.com
         lblanchard@mayerbrown.com

*Counsel to Katsumi Servicing, LLC*

## EXHIBIT A

**Requests**

## **DEFINITIONS[2]**

1. "ABL Claims" has the meaning set forth in the Plan.

2. "ABL Collateral Trust" has the meaning set forth in the Plan.

3. "ABL Collateral Trust Assets" has the meaning set forth in the Plan.

4. "ABL Lenders" has the meaning set forth in the Plan.

5. "Ad Hoc Group" has the meaning set forth in the Plan.

6. "Adverse Conduct" has the meaning set forth in the Plan.

7. "Additional Litigation Trust Funding" has the meaning set forth in the Plan.

8. "Administrative Expense Claims" has the meaning as set forth in the Plan.

9. "Adversary Proceeding" means any adversary proceeding filed in, arising in,

arising under, or related to the Chapter 11 Cases.

10. "Communications" means any recorded oral or written communication of any kind, including emails, text messages, chat messages, Microsoft Teams messages, WhatsApp messages or communications, social media communications, written communications, letters, electronic messages communicated via electronic means such as by computer, phone, or other electronic device, or any other exchange, transfer, or dissemination of information, notifications, regardless of the means by which it was accomplished.

11. "Conditional Disclosure Statement Hearing" has the meaning set forth in the Disclosure Statement.

12. "Confirmation Hearing" has the meaning set forth in the Plan.

13. "Creditors' Committee" has the meaning set forth in the Plan.

14. "Cause of Action" has the meaning as set forth in the Plan.

15. "Chapter 11 Cases" means, with respect to each of the Debtors, each and every one of such Debtor's cases under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court, and also includes the cases under Chapter 7 of the Bankruptcy Code for the Evolution SPV Debtors and any Adversary Proceedings filed in connection with such Chapter 11 Cases.

16. "concerning", "referencing", "regarding", "reflecting", "relating to", and "in connection with" mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, made pursuant to, containing, analyzing,

---

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Plan.

evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed in conjunction with, consulting with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

17.     "DIP Secured Parties" has the meaning set forth in the Plan.

18.     "DIP A Claims" has the meaning set forth in the Plan.

19.     "DIP Collateral Trust" has the meaning set forth in the Plan.

20.     "DIP Collateral Trust Assets" has the meaning set forth in the Plan.

21.     "DIP Collateral Trust Funding" has the meaning set forth in the Plan.

22.     "DIP Collateral Trust Funding Contributors" has the meaning set forth in the Plan."

23.     "Direct Creditor Claims" has the meaning set forth in the Plan.

24.     "Debtors" means each of the debtors and debtors in possession in the Chapter 11 Cases, together with each of their employees, managers, officers, directors, agents, representatives, subsidiaries, special purpose vehicles, and affiliates.

25.     "Disclosure Statement" means the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at Dkt. No. 2982, including all exhibits and schedules thereto, as may be amended, revised, supplemented, or otherwise modified from time to time.

26.     "Documents" is used in the broadest sense and means any kind of printed, recorded, written, graphic, or photographic matter (including tape recordings), however printed, produced, reproduced, coded or stored, of any kind or description, whether sent or received or not, including originals, copies, drafts, and both sides thereof, and including papers, books, charts, graphs, photographs, drawings, correspondence, telegrams, cables, telex messages, memoranda, notes, notations, work papers, routing slips, intra and inter-office communications, electronic mail, text messages, chat messages, Microsoft Teams messages, WhatsApp messages or communications, social media communications, affidavits, statements, opinions, court pleadings, reports, indices, studies, analyses, forecasts, evaluations, contracts, computer printouts, data processing input and output, computer programs, microfilms, microfiche, all other records kept by electronic, photographic, or mechanical means, and things similar to any of the foregoing, regardless of their authority, preparer, or origin, or any kind.

27.     "Effective Date" has the meaning set forth in the Plan.

28.     "Entity" has the meaning set forth in the Plan.

29.     "Estates" has the meaning set forth in the Plan.

30.     "Estate Claims" has the meaning set forth in the Plan.

2

31.    "Estate Claims Credit Bid" has the meaning set forth in the Plan.

32.    "Estate Claims Credit Bid Transaction" has the meaning set forth in the Plan.

33.    "Estate Claims Marketing Process" has the meaning set forth in the Disclosure Statement.

34.    "Examiner" has the meaning set forth in the Plan.

35.    "Factor" has the meaning set forth in the Plan.

36.    "FBG Debtors" has the meaning set forth in the Plan.

37.    "First Brands" means the Debtors, together with all non-debtor subsidiaries or affiliates and each of their employees, managers, officers, directors, agents, subsidiaries, and special purpose vehicles.

38.    "First Lien Claims" has the meaning set forth in the Plan.

39.    "General Unsecured Claims" has the meaning set forth in the Plan.

40.    "including" means including, without limitation, or without in any way qualifying or restricting the foregoing.

41.    "Initial Litigation Trust Funding Commitments" has the meaning as set forth in

the Plan.

42.    "Litigation Trust" has the meaning set forth in the Plan.

43.    "Litigation Trust Assets" has the meaning set forth in the Plan.

44.    "Litigation Trust Backstop Commitments" has the meaning set forth in the Plan.

45.    "Litigation Trust Cash Funding" has the meaning set forth in the Plan.

46.    "Litigation Trust Funding Agreements" has the meaning set forth in the Plan.

47.    "Other Priority Claims" has the meaning set forth in the Plan.

48.    "Person" has the meaning set forth in the Plan.

49.    "Petition Date" has the meaning set forth in the Plan.

50.    "Plan" means the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at ECF No. 2981 in the Chapter 11 Cases, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time.

3

51. "Plan Settlement" has the meaning set forth in the Plan.

52. "Plan Supplement" has the meaning set forth in the Plan.

53. "Prepetition Secured Parties" has the meaning as set forth in the Plan.

54. "Preference Actions" has the meaning set forth in the Plan.

55. "Preference Settlement" has the meaning set forth in the Plan.

56. "Preference Settlement Electing Creditor" has the meaning set forth in the Plan.

57. "Priority Tax Claims" has the meaning as set forth in the Plan.

58. "Premier Marketing Group Global Settlement" has the meaning set forth in the Premier Marketing Group Plan.

59. "Premier Marketing Group Plan" means the Chapter 11 Plan of Premier Marketing Group, LLC filed at ECF No. 2733 in the Chapter 11 Cases, as amended, revised, supplemented, or otherwise modified.

60. "Receivables Sellers" means, collectively, the entities specified on Schedule 1 attached hereto.

61. "Roll-Up Claims" has the meaning set forth in the Plan.

62. "Second Lien Claims" has the meaning set forth in the Plan.

63. "Subordinated Claims" has the meaning as set forth in the Plan.

64. "Special Committee Investigation" has the meaning set forth in the Disclosure Statement.

65. "Special Committee" has the meaning set forth in the Plan.

66. "Specified Non-Released Parties" has the meaning set forth in the Plan.

67. "Third-Party Factoring" has the meaning set forth in the Disclosure Statement..

68. "You" or "Your" means First Brands.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for the purposes of the Requests, the following Instructions shall be followed:

1. Unless otherwise stated, the time period covered by the following Requests is September 1, 2025 through the present (the "Relevant Period"), and each Request covers any and all Documents and Communications created, dated, sent, received, in effect, or in Your possession, custody, or control at any time during the Relevant Period.

2. You are to produce all responsive Documents and Communications in Your possession, custody, or control, wherever located, including those in the custody of Your agents, representatives, advisors, or professionals.

3. You are to produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document or Communication requested together with all non-identical copies and drafts of that Document or Communication. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

4. A request for any Document or Communication shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to such Document or Communication, in addition to the Document or Communication in its full and unexpurgated form.

5. Where only a portion of a Document or Communication relates to the subject of a request, the entire Document or Communication is to be produced nevertheless, inclusive of any and all attachments, appendices, and exhibits.

6. Each copy of a Document that differs in any way from another copy of that Document (by marginalia, highlighting, completeness/incompleteness, inclusion/exclusion of

5

attachments, or otherwise) should be considered a separate Document and produced separately. The Requests call for production of all drafts of Documents in addition to final versions of Documents.

7.      If there are no Documents or Communications responsive to any particular request, please state so in writing.

8.      If a Document or Communication cannot be produced in full, produce it to the extent possible, identify the portion that cannot be produced, and specify the reasons for your inability to produce the remainder.

9.      To the extent You withhold any Document or Communication by reason of a claim of privilege, provide a privilege log identifying such Document or Communication together with: (a) the date of the Document or Communication; (b) the identity of the author(s), preparer(s) or sender(s), as applicable; (c) the identity of each recipient(s) who was sent or furnished with the Document or Communication or who received or had possession or custody of the Document or Communication; (d) a description of the Document or Communication, including identification of any attachments or appendices; and (e) a statement of the basis of the claim of privilege.

10.     To the extent You assert that any responsive Documents and Communications are subject to mediation privilege, the privilege log should demonstrate the basis for such assertion, including information sufficient to show the dates for which such privilege is being claimed.

11.     In each of the Requests, the use of either the singular or plural shall not be deemed a limitation, and the use of the singular includes the plural, and vice versa.

12.     In each of the Requests, the words "and" and "or" are interchangeable and shall be construed either disjunctively or conjunctively or both, as broadly as necessary to bring within the scope of each Request those responses that might otherwise be construed to be outside the scope.

6

13.     If a responsive Document or Communication was, but no longer is, within Your possession, custody, or control, please state in detail: (a) the type of Document or Communication and the author(s), preparer(s), sender(s), recipient(s), and copy(ies) of the Document or Communication; (b) a summary of the contents of the Document or Communication; (c) what disposition was made of such Document or Communication; (d) the date of such disposition; (e) whether the original or a copy thereof is within the possession, custody, or control of any other person(s); and (f) if the answer to clause (e) is affirmative, the identity of such person(s).

14.     The Requests herein are to be deemed continuing so as to require further and supplemental productions if You discover, receive, or generate additional responsive documents between the time of Your original production and the time of the final hearing held in this action

15.     Any Request for analyses, reports, assessments, investigations, valuations, projections, forecasts, estimates, summaries, charts, lists, diligence materials, or other information includes all such items in Your possession, custody, or control, regardless of whether prepared by You, Your professionals, any other plan proponent, the DIP Secured Parties, the Prepetition Secured Parties, the Creditors' Committee, the Ad Hoc Group, any other constituency, or any advisor or professional to any of the foregoing.

[<em>Remainder of Page Intentionally Left Blank</em>]

## **DOCUMENT REQUESTS**

1. All transcripts of any deposition (including exhibits thereto) taken in connection with the Chapter 11 Cases or any Adversary Proceeding, except for transcripts at which Katsumi or its undersigned counsel appeared.

2. All responses to interrogatories or requests for admission (including all documents referenced therein or identified pursuant to Fed. R. Civ. P. Rule 33(d)) provided by any of the Debtors in connection with the Chapter 11 Cases or any Adversary Proceeding.

3. All Communications provided to or exchanged with the Examiner or the Examiner's professionals in connection with the Chapter 11 Cases or any Adversary Proceeding. This Request specifically includes all notes taken at any meeting with the Examiner or the Examiner's professionals and all notes documenting Communications provided to or exchanged with the Examiner or the Examiner's professionals.

4. All Documents produced to, provided to or exchanged with the Examiner or the Examiner's professionals in connection with the Chapter 11 Cases or any Adversary Proceeding, including any and all supplemental or additional Documents produced to, provided to or exchanged with the Examiner or the Examiner's professionals, whether based on further follow up, interviews, requests for further clarification or supplementation, or otherwise.

5. All Documents and Communications exchanged among You and the DIP Secured Parties (or any of its members), the Ad Hoc Group (or any of its members), the Creditors' Committee (or any of its members), the Special Committee (or any of its members), or the ABL Lenders relating to the Premier Marketing Group Plan, the Premier Marketing Group Global Settlement, the Estate Claims Credit Bid Transaction, the Plan, or the Plan Settlement. The Documents and Communications responsive to this request include all communications relating to

8

any terms or aspects of those plans, settlements or transactions, as well as all Communications reflecting negotiations of those plans, settlements or transactions.  For the avoidance of doubt, this Request specifically includes (i) all Communications, Documents, summaries, charts or other information related to (in any respect) any Cause of Action, Estate Claim or other claim, cause of action, or asset to be included in, contributed to or otherwise retained for inclusion in the Litigation Trust or the Litigation Trust Assets and (ii) any and all Documents and Communications exchanged among the Debtors' financial advisors (or any personnel of the Debtors' financial advisors) and any other Person.

6.	All Documents and Communications relating to or referencing the Litigation Trust or the Litigation Trust Assets, including any Cause of Action, Estate Claim or other claim, cause of action, or asset to be included in, contributed to or otherwise retained in the Litigation Trust or the Litigation Trust Assets, including any and all estimations, valuations, projections, forecasts, and lists (and any drafts of the foregoing) relating to the foregoing.

7.	All Documents and Communications exchanged between You and Gerard Uzzi of Uzzi & Lall.  This Request specifically includes any and all Documents and Communications exchanged among the Ad Hoc Group (or any of its members or respective professionals), the Special Committee (or any of its members or respective professionals) and/or the Creditors' Committee (or any of its members or respective professionals) and Gerard Uzzi of Uzzi & Lall on which Debtors or any of Debtors' representatives, counsel, financial advisors, or other professionals were copied, forwarded, or otherwise included as recipients.

8.	All Documents and Communications relating to "Adverse Conduct" as defined in the Plan, including any and all Communications relating to any assessment or conclusion regarding which Persons or Entities engaged in "Adverse Conduct."

9

9. All Documents and Communications identifying any Person or Entity that may be characterized as having engaged in Adverse Conduct.

10. All Documents and Communications relating to substantive consolidation in connection with the Plan, including any and all Communications relating to any consideration of consolidating any Debtors for particular purposes, and any and all Communications relating to consolidation for purposes of any defenses to preference actions or other avoidance actions, whether in connection with the Preference Settlement or otherwise. This Request specifically includes all analyses, reports, assessments or investigations performed by Debtors or any of their professionals into the whether substantive consolidation of some or all of the Debtors is or was factually accurate or appropriate.

11. All Documents and Communications relating to the Estate Claims Marketing Process, including (i) all diligence materials provided to any potential bidders, prospective bidders, bidders, or other participants, including all Documents in the "data room"; (ii) all indications of interest received from any prospective bidder; (iii) all bids received; (iv) all indications of interest for any Estate Claims being sold; (v) all "teaser" materials or other information used to solicit potential or prospective bidders; (vi) any Documents or Communications provided to the Ad Hoc Group or the participants in the Estate Claims Credit Bid in connection with the Estate Claims; (vii) any Documents or Communications exchanged with any potential bidder, prospective bidders, or other participants; and (viii) any and all data rooms containing or purporting to contain any information regarding the assets, businesses, entities, operations, inventory, receivables or causes of action provided to prospective bidders or purchasers. This Request expressly includes any Documents and Communications provided to or exchanged with the Ad Hoc Group or other

10

participants in the Estate Claims Marketing Process that are in any way connected to the Estate Claims Credit Bid Transaction or the Estate Claims.

12.     All Documents and Communications relating to or referencing the "claims", "causes of action," "transactions," or consideration paid, in each instance without any limitation, as referenced by Charles M. Moore as described at Pages 24-25 and 131-132 of the transcript of the Conditional Disclosure Statement Hearing.

13.     All Documents and Communications reviewed by or relied upon by Charles M. Moore in connection with reviewing and signing the Plan, the Disclosure Statement, or any declaration submitted in connection therewith, or in connection with providing testimony at the Conditional Disclosure Statement Hearing.

14.     All Documents and Communications relating to or referencing the Special Committee Investigation.

15.     All Communications between You and the Ad Hoc Group (or any of its members) or the DIP Secured Parties (or any of those parties) between September 1, 2025 and September 28, 2025.

16.     All Documents and Communications produced to any other Person in connection with the Confirmation Hearing or the Conditional Disclosure Statement Hearing.

17.     All Documents and Communications on which the Debtors intend to rely at the Confirmation Hearing.

18.     All Documents and Communications on which any witness called by the Debtors has relied on or will rely on in connection with any testimony relating to the Confirmation Hearing, including any and all Documents and Communications on which any such witness shall be called to testify regarding any Cause of Action, Estate Claim or other claim, cause of action, or asset to

11

be included in, contributed to or otherwise retained for inclusion in the Litigation Trust or the Litigation Trust Assets.

19.     All Documents and Communications relating to, reflecting, or forming the basis for the Debtors' statement on Page 27 of the Disclosure Statement that "Based on the FBG Debtors' reasonable estimates, the FBG Debtors are estimating that the Effective Date is reasonably likely to occur in the second half of 2028, although the Effective Date may reasonably or in fact occur earlier or later than the second half of 2028."

20.     All Documents and Communications relating to, reflecting, constituting, or forming the basis for related to when the Effective Date is reasonably likely to occur.  This Request includes all such analyses, estimates, projections, forecasts or other information prepared by any plan proponent or its respective professionals

21.     All Documents and Communications relating to the ABL Collateral Trust Assets, including all Communications relating to the exclusion of assets therefrom. This Request specifically includes any summaries, notes, accountings, or assessments relating to outstanding receivables or invoices that remain uncollected and the Debtors' interests (or purported) interests therein.

22.     All Documents and Communications relating to the Preference Settlement as defined in the Plan, including any and all Communications relating to eligibility to participate in the Preference Settlement, the benefits afforded to Preference Settlement Electing Creditors, the releases to be granted by Preference Settlement Electing Creditors under Section 13.5(b) of the Plan, the contribution of Direct Creditor Claims to the Litigation Trust, and the governance, procedures and protections applicable to the prosecution of Preference Actions.

23.     All Documents and Communications comprising or relating to the Plan Supplement or any document, materials, agreements constituting to be contained in the Plan Supplement, , including the schedule of Specified Non-Released Parties and any and all Communications regarding the composition of such schedule and assessments and determinations regarding which Persons are included in such schedule.

24.     All Documents and Communications relating to the conditions precedent to the occurrence of the Effective Date set forth in Section 12.1(o) of the Plan, including Documents and Communications sufficient to show any facts, circumstances, or contingencies presently known that may prevent or delay the satisfaction of such condition.

25.     All Documents and Communications relating to the Debtors' assessment, analysis, or consideration of the consequences of nonoccurrence of the Effective Date, including (i) any steps, actions, or processes that would need to be taken to reverse, unwind, or otherwise remediate the effects of actions already undertaken in furtherance of the Plan or the Effective Date, (ii) any contingency planning or proposed remedial solutions in the event the Effective Date does not occur within a reasonable period following the projected date of occurrence, and (ii) any analysis of the procedural, operational, or legal implications of such nonoccurrence, including the identification of all transactions, transfers, or other actions that would need to be reversed or unwound.

26.     To the extent the Debtors or any plan proponent contends that Debtors' prepetition management and/or the operations of any or all of the Receivables Sellers observed, maintained, complied with or otherwise respected the separateness or corporate formalities of any Receivables Sellers, all Documents or Communications referencing, related to or otherwise identifying Debtors' prepetition actions, communications or business practices relating to the prepetition treatment of those corporate formalities, including:

13

a.  All minutes of any prepetition meeting of the board of directors or managers (or any committee or sub-committee thereof) of the Receivables Sellers;

b.  All Documents evidencing the transactions conducted in the bank accounts of each Receivables Seller, in each case sufficient to show when and from whom payments and receipts of monies were received, to whom such payments and receipts were directed, and how such payments and receipts were used;

c.  All Documents evidencing how proceeds from the purchase of receivables by Katsumi and the other Factors were used, distributed or applied by First Brands or its prepetition management (or any Entities controlled by prepetition management) from and after January 1, 2023 through the Petition Date, including any and all Documents sufficient to identify which Debtor and non-Debtor entities' obligations such proceeds were applied to, used for, directed to, or expended on.

d.  Documents supporting the Debtors' or any plan proponent's contention that the Receivables Sellers respected their corporate formalities with regard to the use of assets, including expenditures paid and payments or distributions of cash by such Receivables Sellers relating to or for obligations of other Debtors;

e.  Any and all Documents sufficient to track or trace the use of cash from the Debtors' accounts in which any proceeds from sales of receivables by the Receivables Sellers was deposited, wired or transferred; and

f.  All Documents and Communications that constitute, contain, reference or relate to Debtors' or any of their professionals' analysis, assessment, or investigation of the Debtors' use of cash or proceeds resulting from any Factor's purchase of receivables from June 2022 through and including the Petition Date.

14

27.     All Documents and Communications relating to the segregation of invoices, receipts or collections in respect of any Third-Party Factoring (as defined in the Disclosure Statement) arrangements from September 1, 2025 through September 28, 2025.

28.     All Documents and Communications purporting to preserve privilege of any kind (including common interest, joint defense protection, mediation privilege or otherwise), confidentiality, or otherwise protect from disclosure any Documents or Communications exchanged among or between the Debtors, the DIP Secured Parties (or any of their members), the Prepetition Secured Parties (or any of their members), the Ad Hoc Group (or any of its members), the ABL Lenders, and/or Creditors' Committee (or any of its members), including any written agreements, protocols, confidentiality undertakings, common interest agreements, joint defense agreements, mediation agreements, or other arrangements governing information sharing among any such parties.

29.     All Documents and Communications relating to (i) the amount, timing, or likelihood of recoveries or distributions under or from the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, or the Estate Claims; (ii) the time required to satisfy DIP A Claims, Roll-Up Claims, Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, First Lien Claims, Second Lien Claims, ABL Claims, General Unsecured Claims, or Subordinated Claims; or (iii) the timing or likelihood of the occurrence of the Effective Date.

30.     All Documents and Communications relating to the Litigation Trust Cash Funding, Initial Litigation Trust Funding Commitments, Litigation Trust Backstop Commitments, Additional Litigation Trust Funding, Litigation Trust Funding Agreements, DIP Collateral Trust Funding, DIP Collateral Trust Funding Contributors, or any actual or potential financing, funding,

15

backstop, commitment, contribution, draw, default, decline-to-fund determination, or replacement funding source for the Litigation Trust or the DIP Collateral Trust, including any Documents or Communications concerning efforts to raise, syndicate, allocate, backstop, approve, document, enforce, or decline any such funding.

31.     All Documents and Communications relating to or forming the basis for any responses to Katsumi Servicing, LLC's First Set of Interrogatories to First Brands in Connection with the Plan and Disclosure Statement served on First Brands on or about the date hereof.

16

## Schedule 1

### (Receivables Sellers)

First Brands Group, LLC
ASC Industries, INC.
Autolite Operations LLC
Brake Parts INC LLC
Carter Fuel Systems, LLC
Champion Laboratories, INC.
FRAM Group Operations LLC
Strongarm, LLC
Trico Products Corporation
Qualis Automotive, L.L.C.
CWD, LLC, L.L.C.
Horizon Global Corporation
Horizon Global Company LLC
Horizon Global Americas INC.
Horizon International Holdings LLC
Horizon Euro Finance LLC
Cardone Industries, Inc.
Carrand Companies, Inc.
Carter Carburetor Holdings, LLC
Carter Carburetor, LLC
Global Reman Ventures, LLC
Hopkins Acquisition, Inc.
Hopkins Manufacturing Corporation
Reman Management International LLC
2SDC TX, LLC
Smart Choice, LLC
Tridonex USA LLC
Walbro LLC
Walbro Midco LLC
WEM US Co.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

## KATSUMI SERVICING, LLC'S FIRST SET OF INTERROGATORIES TO FIRST BRANDS IN CONNECTION WITH THE PLAN AND DISCLOSURE STATEMENT

**PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rules 9014, 7026, and 7033, Katsumi Servicing, LLC ("Katsumi"), by and through its undersigned counsel, hereby serves its First Set of Interrogatories (the "Interrogatories"), attached hereto as **Exhibit A**, on First Brands Group, LLC, and its debtor and non-debtor affiliates (collectively, "First Brands") in connection with the Plan and Disclosure Statement (as such terms are defined below).

**PLEASE TAKE FURTHER NOTICE** that First Brands is directed to serve verified answers to the Interrogatories on or before **4:00 p.m. (prevailing Central Time) on July 9, 2026**, at the offices of Mayer Brown LLP, 700 Louisiana Street, Suite 3400, Houston, Texas 77002, Attention: Charles S. Kelley, including by e-mail to Charles S. Kelley (ckelley@mayerbrown.com), Gary Johnson (gjohnson@mayerbrown.com), Kyle TumSuden (ktumsuden@mayerbrown.com), and Kaitlyn Barry (kbarry@mayerbrown.com), or at such other time and place as may be mutually agreed to by the parties. The Interrogatories shall be deemed to be continuing in nature, and Katsumi requests that First Brands supplement the answers to the

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Interrogatories if at any time additional information responsive to the Interrogatories comes into their possession, custody, or control.

[*Remainder of Page Intentionally Left Blank*]

**PLEASE TAKE FURTHER NOTICE** that Katsumi reserves its rights under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"), and any applicable law regarding the subject matter of this Notice and to amend, supplement, and/or modify the Interrogatories in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and other applicable law.

Dated:  June 22, 2026
Houston, Texas

/s Charles S. Kelley
**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, Texas 77002
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com

Sean T. Scott (admitted *pro hac vice*)
Kyle J. TumSuden (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Email: stscott@mayerbrown.com
        ktumsuden@mayerbrown.com

Richard A. Stieglitz (admitted *pro hac vice*)
Lauren C. Blanchard (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Email: rstieglitz@mayerbrown.com
        lblanchard@mayerbrown.com

*Counsel to Katsumi Servicing, LLC*

3

# EXHIBIT A

**Interrogatories**

**DEFINITIONS[2]**

1.      "ABL Collateral Trust Assets" has the meaning set forth in the Plan.

2.      "Administrative Expense Claim" has the meaning set forth in the Plan.

3.      "Adverse Conduct" has the meaning set forth in the Plan.

4.      "Allowed" has the meaning set forth in the Plan.

5.      "Cause of Action" has the meaning set forth in the Plan.

6.      "Communications" means any recorded oral or written communication of any kind, including emails, text messages, chat messages, Microsoft Teams messages, WhatsApp messages or communications, social media communications, written communications, letters, electronic messages communicated via electronic means such as by computer, phone, or other electronic device, or any other exchange, transfer, or dissemination of information, notifications, regardless of the means by which it was accomplished.

7.      "Conditional Disclosure Statement Hearing" has the meaning set forth in the Disclosure Statement.

8.      "Confirmation Hearing" has the meaning set forth in the Plan.

9.      "Chapter 11 Cases" means, with respect to each of the Debtors, each and every one of such Debtor's cases under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court, and also includes the cases under Chapter 7 of the Bankruptcy Code for the Evolution SPV Debtors and any Adversary Proceedings filed in connection with such Chapter 11 Cases.

10.      "concerning", "referencing", "regarding", "reflecting", "relating to", and "in connection with" mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, made pursuant to, containing, analyzing, evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed in conjunction with, consulting with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

11.      "DIP Secured Parties" has the meaning set forth in the Plan.

12.      "Direct Creditor Claims" has the meaning set forth in the Plan.

13.      "Debtors" means each of the debtors and debtors in possession in the Chapter 11 Cases, together with each of their employees, managers, officers, directors, agents, representatives, subsidiaries, special purpose vehicles, and affiliates.

14.      "DIP A Claims" has the meaning set forth in the Plan.

---

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Plan.

1

15.    "DIP Collateral Trust" has the meaning set forth in the Plan.

16.    "Disclosure Statement" means the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at Dkt. No. 2982, including all exhibits and schedules thereto, as may be amended, revised, supplemented, or otherwise modified from time to time.

17.    "Documents" is used in the broadest sense and means any kind of printed, recorded, written, graphic, or photographic matter (including tape recordings), however printed, produced, reproduced, coded or stored, of any kind or description, whether sent or received or not, including originals, copies, drafts, and both sides thereof, and including papers, books, charts, graphs, photographs, drawings, correspondence, telegrams, cables, telex messages, memoranda, notes, notations, work papers, routing slips, intra and inter-office communications, electronic mail, text messages, chat messages, Microsoft Teams messages, WhatsApp messages or communications, social media communications, affidavits, statements, opinions, court pleadings, reports, indices, studies, analyses, forecasts, evaluations, contracts, computer printouts, data processing input and output, computer programs, microfilms, microfiche, all other records kept by electronic, photographic, or mechanical means, and things similar to any of the foregoing, regardless of their authority, preparer, or origin, or any kind.

18.    "Effective Date" has the meaning set forth in the Plan.

19.    "Entity" has the meaning set forth in the Plan.

20.    "Estate Claims" has the meaning set forth in the Plan.

21.    "Estate Claims Marketing Process" has the meaning set forth in the Disclosure Statement.

22.    "Factors" has the meaning set forth in the Plan.

23.    "Final Return Threshold" has the meaning set forth in the Plan.

24.    "First Brands" means the Debtors, together with all non-debtor subsidiaries or affiliates and each of their employees, managers, officers, directors, agents, subsidiaries, and special purpose vehicles.

25.    "First Return Threshold" has the meaning set forth in the Plan.

26.    "including" means including, without limitation, or without in any way qualifying or restricting the foregoing.

27.    "Litigation Trust" has the meaning set forth in the Plan.

28.    "Litigation Trust Assets" has the meaning set forth in the Plan.

29.    "Litigation Trust Class 1 Funding Contributors" has the meaning set forth in the Plan.

2

30.     "Other Priority Claims" has the meaning set forth in the Plan.

31.     "Person" has the meaning set forth in the Plan.

32.     "Petition Date" has the meaning set forth in the Plan.

33.     "Plan" means the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at ECF No. 2981 in the Chapter 11 Cases, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time.

34.     "Premier Marketing Group Global Settlement" has the meaning set forth in the Premier Marketing Group Plan.

35.     "Premier Marketing Group Plan" means the Chapter 11 Plan of Premier Marketing Group, LLC filed at ECF No. 2733 in the Chapter 11 Cases, as amended, revised, supplemented, or otherwise modified.

36.     "Prepetition Secured Parties" has the meaning set forth in the Plan.

37.     "Professional" has the meaning set forth in the Plan.

38.     "Professional Fee Claim" has the meaning set forth in the Plan.

39.     "Second Return Threshold" has the meaning set forth in the Plan.

40.     "Special Committee" has the meaning set forth in the Plan.

41.     "Specified Non-Released Parties" has the meaning set forth in the Plan.

42.     "Third-Party Factoring" has the meaning set forth in the Disclosure Statement..

43.     "You" or "Your" means First Brands.

3

## <u>INSTRUCTIONS</u>

The preceding Definitions apply to each of these Instructions, and for the purposes of the Interrogatories, the following Instructions shall be followed:

1.      Unless otherwise stated, the time period covered by the following Interrogatories is September 1, 2025 through the present (the "<u>Relevant Period</u>").

2.      Each Interrogatory shall be answered separately and fully in writing under oath, in accordance with Federal Rule of Civil Procedure 33.

3.      Where You lack sufficient information to answer an Interrogatory fully, so state, provide such information as is available, and describe the efforts made to obtain the information necessary to provide a full answer.

4.      If You object to any Interrogatory in whole or in part, state the grounds for such objection with specificity and answer the Interrogatory to the extent it is not objectionable.

5.      If You contend that any Interrogatory calls for information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, identify the information withheld and state the factual and legal basis for the privilege claim with sufficient specificity to enable Katsumi to assess the claim.

6.      To the extent You elect to produce business records in response to any Interrogatory pursuant to Federal Rule of Civil Procedure 33(d), identify with specificity the records from which the answer may be derived or ascertained, and specify the records to be produced in sufficient detail to enable Katsumi to locate and identify them as readily as You could.

7.      In each of the Interrogatories, the use of either the singular or plural shall not be deemed a limitation, and the use of the singular includes the plural, and vice versa.

4

8.      In each of the Interrogatories, the words "and" and "or" are interchangeable and shall be construed either disjunctively or conjunctively or both, as broadly as necessary to bring within the scope of each Interrogatory those responses that might otherwise be construed to be outside the scope.

9.      The Interrogatories herein are to be deemed continuing so as to require further and supplemental answers if You obtain additional responsive information between the time of Your original answer and the time of the final hearing held in this action.

[*Remainder of Page Intentionally Left Blank*]

## INTERROGATORIES

1.     Identify each Person who participated in, was consulted regarding, or has knowledge of the negotiation, drafting, or formulation of the Plan, the Plan Settlement, the Premier Marketing Group Plan, or the Premier Marketing Group Global Settlement, including each such Person's role and the subject matter of such Person's knowledge.

2.     Identify each Person who participated in, was consulted regarding, or has knowledge of the Estate Claims Marketing Process, including the role of each such Person and the dates of such Person's involvement.

3.     Identify each Person or Entity that First Brands contends engaged in Adverse Conduct, and for each such Person or Entity, describe with particularity: (a) the specific conduct that constitutes Adverse Conduct; (b) the date(s) on which such conduct occurred; (c) how and when First Brands became aware of such conduct; and (d) any investigation or analysis undertaken by First Brands or its professionals to assess whether such conduct constitutes Adverse Conduct.

4.     Identify each Cause of Action, Estate Claim or other claim or cause of action to be included in, contributed to, or otherwise retained for inclusion in the Litigation Trust or the Litigation Trust Assets, and for each such Cause of Action, Estate Claim or other claim or cause of action, state: (a) the nature and legal basis of the claim; (b) the parties against whom the claim may be asserted; (c) the estimated value of the claim; (d) the methodology used to arrive at such valuation; and (e) the Person(s) who performed or directed such valuation.

5.     Identify all outstanding receivables or invoices that remain uncollected and are related to any Third-Party Factoring arrangement, including: (a) the identity of each obligor; (b) the amount outstanding; (c) the current status of collection efforts; and (d) the Debtors' assessment of the collectability of such receivables.

6

6.      Describe with particularity how proceeds from the purchase of receivables by Katsumi and the other Factors were used, distributed, or applied by First Brands or its prepetition management (or any Entities controlled by prepetition management) from January 1, 2023 through the Petition Date, including the identity of each Debtor and non-Debtor entity whose obligations such proceeds were applied to, used for, directed to, or expended on.

7.      Describe the criteria, methodology, and process used to determine which Persons are included on the schedule of Specified Non-Released Parties, including: (a) who made such determinations; (b) when such determinations were made; (c) the factual basis for including each Person on such schedule; and (d) whether any Person was considered for inclusion but ultimately excluded, and if so, the basis for such exclusion.

8.      Identify each witness the Debtors intend to call at the Confirmation Hearing, and for each such witness, state: (a) the subject matter of the expected testimony; (b) the witness's relationship to the Debtors; and (c) all Documents and Communications on which such witness has relied or will rely in connection with such testimony.

9.      Identify each Cause of Action, Estate Claim or other claim or cause of action contemplated to be included in the Litigation Trust or the Litigation Trust Assets, and for each such claim or cause of action, state: (a) the nature and legal basis of the claim or cause of action; (b) the identity of each defendant or potential defendant; (c) the current status of any proceedings related thereto; and (d) the estimated value of the claim or cause of action.

10.      Describe with particularity the Debtors' forecasted duration or timeline to monetize each Cause of Action, Estate Claim, or other claim or cause of action to be included in the Litigation Trust or the Litigation Trust Assets, and for each such claim or cause of action, state:

(a) the projected timeline for prosecution; (b) the forecasted amount of recoveries on such timeline; and (c) all assumptions underlying such forecasts.

11.     Describe with particularity the Debtors' forecasted duration or timeline satisfy the First Return Threshold, the Second Return Threshold, and the Final Return Threshold, and for each such threshold, state all assumptions underlying such forecasts.

12.     Identify each Administrative Expense Claim and Other Priority Claim to be satisfied prior to the Effective Date, and for each such claim, state:  (a) the asserted amount of such claim; (b) the projected allowed amount of such claim; and (f) the Debtors' methodologies for estimating such allowed amount.

13.     Describe with particularity whether the Special Committee (or any of its members) or the Debtors investigated whether any Prepetition Secured Parties or DIP Secured Parties engaged in prepetition conduct for which claims can be asserted against such parties, including: (a) the scope and nature of such investigation; (b) who conducted or directed such investigation; (c) the period of time covered by such investigation; (d) the conclusions reached; and (e) whether any claims were identified that could be asserted against such secured parties. If no such investigation was conducted, state the reasons why not.

14.     Describe with particularity the Debtors' work and conclusions under applicable state law as to which Causes of Action, Estate Claims or other claims or causes of action may be transferred or contributed to the Litigation Trust or the Litigation Trust Assets, including (a) the specific state law analyses performed; (b) the identity of the professionals who performed such analyses; (c) the conclusions reached for each such claim or cause of action; and (d) any such claim or cause of action that the Debtors have determined cannot be transferred or foreclosed upon and the basis for such determination.

15.     Identify all uncollected prepetition receivables or invoices under the Third-Party Factoring arrangements for which the Debtors believe they have rights to obtain payment (without regard to whether such prepetition receivables were sold to a customer or third-party factor), including for each such receivable: (a) the receivable number; (b) the amount; (c) the date of the receivable; (d) the date payment was due; (e) any related credit memos; (f) the seller; (g) the account obligor; and (h) the number of days delinquent.

16.     Identify all Litigation Trust Class 1 Funding Contributors , and for each such contributor, state: (a) the name of the contributor; (b) the name and title of the representative communicating the commitment on behalf of each lender; (c) the amounts committed to fund by each contributor; (d) the terms and conditions of such funding commitment; (e) all documentary evidence supporting the fact that each contributor has committed to fund such amounts; and (f) the Debtors' assessment of, or concerns regarding, the risk of non-funding by any such contributor.

17.     Identify the total aggregate amount of anticipated fees and expenses of the DIP Collateral Trust.

18.     Identify the amount of Allowed DIP A Claims to be paid or satisfied from sources other than litigation recoveries, including: (a) the projected amounts and timing of such payments; and (c) the sources of repayment.

19.     Identify the total aggregate amount of anticipated Professional Fee Claims to be incurred from the Conditional Disclosure Statement Hearing to the Confirmation Hearing, and for each Professional Fee Claim, state: (a) the Professional and (b) the estimated amount of such Professional's Professional Fee Claim.

20.     Identify the total aggregate amount of anticipated professional fees to be incurred under Section 2.3(e) of the Plan, including: (a) the professionals anticipated to incur such fees, (b)

9

the estimated amount of fees to be incurred by each such professional, (c) any anticipated limitations on such compensation; and (d) the process for winding down professional engagements.

21.　Describe with particularity the Debtors' assessment of when the Effective Date is reasonably likely to occur, including (a) the factual and legal bases for such assessment and (b) the criteria by which the Debtors propose that failure be determined.

22.　Describe with particularity the Debtors' assessment of any Direct Creditor Claims that may be contributed to the Litigation Trust, including: (a) the identity of the holder of each such claim; (b) the estimated value of each such claim; and (c) the basis for such valuation.

23.　State the Debtors' intent with respect to all claims against non-debtor affiliates, including: (a) whether such claims will be transferred to the Litigation Trust; (b) during the pendency of the post-Confirmation period, who has exclusive rights over all claims transferred to the Litigation Trust, including the right to determine whether to pursue, settle, or litigate such claims; and (c) the governance and oversight mechanisms applicable to the exercise of such rights.

24.　Describe with particularity the Litigation Trust Backstop Commitments, including: (a) any commitment parties and (b) the amounts committed.

10

1760915099