## Exhibit 35

**Katsumi's First Set of Interrogatories from First Brands in Connection with the Plan and Disclosure Statement (Dkt. No. 3211)**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

**EMERGENCY MOTION OF KATSUMI SERVICING, LLC TO COMPEL DEBTORS TO PRODUCE COMPLETE RESPONSES AND DOCUMENTS IN RESPONSE TO DISCOVERY SERVED UPON THE DEBTORS, INCLUDING KATSUMI SERVICING, LLC'S FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND OTHER ISSUES**

EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN JULY 16, 2026. THE EXACT DATE AND TIME WILL BE SET BY THE COURT.

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

---

[1] A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these Chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Pursuant to Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas, Katsumi Servicing, LLC ("Katsumi") files this Emergency Motion to Compel Debtor First Brands Group, LLC and its Debtor affiliates (collectively, the "Debtors") to provide complete responses and documents in response to Katsumi's First Set of Interrogatories (Nos. 1–24) and Katsumi's First Request for Production of Documents (Nos. 1–31), each served June 22, 2026 in connection with final approval of the *Disclosure Statement for the Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Dkt. 3020) (the "Disclosure Statement") and confirmation of the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Dkt. 3019) (the "Plan")[2] (this "Motion").

*LAM Parties' Discovery is Also Subject of this Motion*: For avoidance of doubt, Katsumi communicated with the LAM Parties who similarly served discovery, and Katsumi attempted to serve requests covering different topics, in reliance on the topics (and anticipated responses) the LAM Parties would receive. Because inadequate responses were provided to the LAM Parties' interrogatories and requests for production, Katsumi would also join in and seek relief that reaches the subject matter of those requests. To avoid duplication, Katsumi incorporates by reference the *LAM Parties' Emergency Motion to Compel Production of Documents and Interrogatory Responses from Debtors*, as if set forth in full herein. The remainder of this Motion shall otherwise focus on the responses required of Katsumi's formal discovery requests.

In support of this Motion, Katsumi, by and through its undersigned counsel, hereby respectfully states as follows:

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## **PRELIMINARY STATEMENT**

1.      Katsumi served discovery on the Debtors because the Plan, if confirmed, will determine the treatment and ultimate recovery on Katsumi's claims—and the Debtors are the sole parties with access to the information Katsumi needs to evaluate, object to, and challenge the Plan. The Debtors control the documents, financial analyses, projections, and internal communications bearing on each of these issues. Without the requested discovery, Katsumi cannot assess whether the Plan satisfies the Bankruptcy Code's requirements for confirmation or the permissibility of certain Plan provisions.

2.      The Debtors' refusal to provide substantive responses does not merely inconvenience Katsumi; it threatens to deprive Katsumi of the ability to be heard on whether the Plan should be confirmed. The confirmation of a plan determines the rights of all parties in interest, and creditors are entitled to adequate discovery to evaluate the plan and to prepare for the confirmation hearing. This enables "creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it." *Lauter v. Citgo Petroleum Corp.*, No. CV H-17-2028, 2018 WL 801601, at \*12 (S.D. Tex. Feb. 8, 2018). This Court should not permit the Debtors to seek confirmation of a plan while simultaneously denying a creditor the tools to scrutinize it.

3.      The Debtors' responses to Katsumi's discovery are deficient in virtually every respect. Rather than responding in any meaningful way, the Debtors deployed a wall of boilerplate objections—blanket assertions of mediation and common interest privilege, rote recitations of "overbroad and unduly burdensome," improper deferrals to unspecified future witness declarations, and outright refusals to respond—that are designed to stonewall. Indeed, across 24

interrogatories and 31 document requests, the Debtors provided substantive answers to virtually no interrogatories, instead recycling identical objections verbatim from one response to the next.

4. Katsumi is a substantial creditor and active party in interest in these Chapter 11 Cases, and the Debtors' complete (or meaningful, at the very least) interrogatory responses and document productions are critically important to Katsumi's ability to evaluate the Plan and the Disclosure Statement and to pursue timely objections to confirmation of the Plan and final approval of the Disclosure Statement. Specifically, the discovery at issue bears directly on issues central to Plan confirmation, including (among others): (1) the Bankruptcy Code's confirmation requirements; (2) valuation of the Estate Claims and other Litigation Trust Assets; (3) the Estate Claims Credit Transaction; and (4) permissibility of the Plan's selective use of substantive consolidation for certain purposes, but not others. Katsumi is entitled to meaningful discovery on these and other issues in advance of the Confirmation Hearing. The Debtors' wholesale obstruction should not be countenanced, and Katsumi submits that the Court should compel the Debtors to comply with their discovery obligations.

## <u>JURISDICTION</u>

5. This Court has jurisdiction over these Chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6. The statutory predicates for the relief sought herein are Bankruptcy Rules 2004, 7026, 7034, and 7037, Rules 26, 33, 34, and 37 of the Federal Rules of Civil Procedure ("<u>Federal Rules</u>"), and Section 105(a) of the Bankruptcy Code.

**RELEVANT BACKGROUND**

7. On September 28, 2025, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8. As this Court is aware, Katsumi purchased receivables from the Debtors and Debtors' affiliates through third-party factoring transactions.

9. On June 22, 2026, Katsumi served its First Set of Interrogatories and First Request for Production of Documents (collectively, the "Discovery Requests")[3] seeking information directly relevant to, among other things: (a) the negotiation, formulation, and terms of the Plan and the Plan Settlement; (b) the proposed Litigation Trust and the Causes of Action and Estate Claims to be contributed thereto; (c) the Estate Claims Marketing Process and the Estate Claims Credit Bid Transaction; (d) the Debtors' prepetition factoring transactions and the use and tracing of factoring proceeds; (e) the Specified Non-Released Parties Schedule and the criteria for inclusion therein; (f) the projected timeline for the Effective Date and the feasibility of the Plan; and (g) the funding commitments for the Litigation Trust and the DIP Collateral Trust.

10. On July 10, 2026, the Debtors served their Responses and Objections to each set of Discovery Requests.[4] Although the responses span dozens of pages, they are substantively devoid of any meaningful response. Instead, the Debtors assert 22 "General Objections" and numerous objections to definitions and instructions, each of which is incorporated by reference into every specific response, and then layer additional objections on top to each request. The result is that,

---

[3] A true and accurate copy of Katsumi's Discovery Requests are attached as Exhibit 1.

[4] A true and correct copy of Debtor's Responses and Objections to each set of Discovery Requests are attached as Exhibit 2.

across 55 discovery requests, the Debtors provided no substantive answer to most requests and only partial, evasive answers to the remainder.

## RELIEF REQUESTED

11.     Katsumi respectfully requests that the Court enter an order: (1) compelling the Debtors to provide complete responses and documents to Katsumi's First Set of Interrogatories (Nos. 1–24) and First Request for Production of Documents (Nos. 1–31); (2) overruling the Debtors' blanket, boilerplate objections; (3) ordering the Debtors to produce a privilege log compliant with Federal Rule 26(b)(5)(A); and (4) awarding Katsumi its reasonable expenses, including attorneys' fees, incurred in connection with this Motion pursuant to Federal Rule 37(a)(5).

12.     **Unfair Surprise**:  Importantly, the Debtors' affirmatively disguised the identity of a witness and expert on whom they intend to rely for confirmation until the filing of their respective declarations on July 14, 2026.  *See* Dkt. Nos. 3188, 3190.  Katsumi seeks relief as a result.  Rather than duplicate the same briefing the LAM Parties provided on that issue, Katsumi also specifically incorporates by reference the arguments set forth in the *LAM Parties' Emergency Motion to Compel Production of Documents and Interrogatory Responses from Debtors*, and shall argue the same in regards to Debtors' submission of such declarations.  Because the relief associated with such abuses should be either the preclusion of the admissibility of such witness and expert or the continuance of the scheduled Confirmation Hearing, Katsumi will be prepared to address Debtors' conduct accordingly.

## EMERGENCY CONSIDERATION

13.     Emergency consideration is warranted because the discovery that is the subject of the Motion concerns the Confirmation Hearing scheduled to begin on July 28, 2026.  Attempts to

resolve these disputes consensually have not been successful, and in light of imminent confirmation-related deadlines, Katsumi respectfully submits that the Court's prompt intervention is necessary for Katsumi to obtain the information required for a full and fair adjudication of objections to confirmation.

**BASIS FOR REQUESTED RELIEF**

14.     The Debtors' failure to produce responsive documents and complete interrogatory responses to Katsumi's Discovery Requests handicaps and prejudices Katsumi's ability to evaluate the Plan and the Disclosure Statement, assess the treatment of its claims, and formulate meaningful objections to confirmation of the Plan.

15.     The discovery rules are given a "broad and liberal treatment." *Davis v. United States Marshals Serv.*, 849 F. App'x 80, 86–87 (5th Cir. 2021). The Federal Rules (as incorporated by the Bankruptcy Rules) allow for broad discovery of any non-privileged matter. *Trevino v. Caliber Home Loans, Inc. (In re Trevino)*, 564 B.R. 890, 904–06 (Bankr. S.D. Tex. 2017). Federal Rule 26(b) and the scope of discovery is to be interpreted broadly to allow parties to be adequately informed. *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *1 (S.D. Tex. Jan. 29, 2015).

16.     The Debtors' deficiencies in responding fall into the following categories:

**A.     Improper Blanket Assertion of Mediation Privilege.**

17.     The Debtors invoke the Agreed Mediation Orders (Dkt. Nos. 1822, 2005, 2186) as a blanket shield across virtually every response, claiming that the mediation privilege bars disclosure of information "relating to" or "concerning" the Plan, the Plan Settlement, the Litigation Trust, the Estate Claims Marketing Process, the Specified Non-Released Parties Schedule, and more. This sweeping invocation is improper and must be rejected.

7

18.     There is no generally recognized federal mediation privilege. Federal Rule of Evidence 501 provides that claims of privilege in federal proceedings "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Where courts have recognized a mediation privilege, they have construed it narrowly, limiting its protection to communications made to the mediator, between the parties during the mediation, or in preparation for the mediation. *See In re RDM Sports Grp., Inc.*, 277 B.R. 415, 431 (Bankr. N.D. Ga. 2002).

19.     The Fifth Circuit has squarely addressed the distinction between mediation confidentiality and privilege, holding that "confidential" does not necessarily mean "privileged." *In re Grand Jury Subpoena*, 148 F.3d 487, 492 (5th Cir. 1998). The court emphasized that while parties may agree to keep mediation communications confidential, such agreements do not create an evidentiary privilege that bars discovery or compelled disclosure in federal proceedings. *Id.* at 492. The Debtors' invocation of the "mediation privilege" as a blanket bar to discovery thus rests on a foundation that the Fifth Circuit has expressly refused to build.

20.     The Debtors' invocation of mediation privilege here is particularly egregious because it is deployed broader than just the actual days they were in a mediation session before Mediator Judge Isgur and broader than just the submissions to Judge Isgur; Debtors are using it to shield approximately five months of communications. Moreover, it is affirmatively being used to shield *factual information*. For example, Interrogatory No. 1 asks the Debtors to identify persons who participated in negotiating or drafting the Plan. The Debtors refuse entirely, citing mediation privilege. But the *identity* of Plan negotiators is factual information, not a mediation communication.

21.     Similarly, Interrogatory No. 7 asks about the criteria for the Specified Non-Released Parties Schedule, a document filed as Plan Supplement Exhibit 8 (Dkt. 3046–8). The Debtors respond that the schedule "was prepared by the Debtors and their advisors, in consultation with the Ad Hoc Group and the Creditors' Committee, pursuant to the common interest and mediation privileges" and that "[a]ll Documents and Communications concerning the development of the Schedule of Specified Non-Released Parties are protected by privilege."  There are structures with those releases that should be explored in discovery from the various parties, including different fiduciaries, but Debtors are refusing to provide such responses.  The Debtors filed the schedule publicly but now claim that any information about *how* or *why* they created it is privileged.

22.     The Debtors' mediation privilege assertions are independently deficient for a second reason: they extend far beyond the temporal scope of the mediation and the matters mediated therein. The mediation in these Chapter 11 Cases concluded on March 27, 2026, the result of which produced the material terms and structure of the Chapter 11 Plan of Premier Marketing Group, LLC (Dkt. No. 2733) and related "Global Settlement" (as such term is defined therein).  Yet, the Debtors invoke the mediation privilege to withhold information about events, communications, and decisions that concern an entirely new Plan (Dkt. 3019) and post-date the mediation by months. Even assuming that some form of mediation confidentiality applied during the mediation sessions themself, it cannot plausibly extend to shield interim and post-mediation conduct, negotiations, and decision-making that occurred weeks or months after the mediation ended. *See In re RDM Sports Grp., Inc.*, 277 B.R. at 431 (mediation privilege "should operate to protect only those communications made to the mediator, between the parties during the mediation, or in preparation for the mediation"). Indeed, when in both meet and confer meetings that were

9

conducted Debtors were requested to at least identify the specific dates they mediated the case before Judge Isgur, Debtors refused to even provide that basic factual information.

23. The Debtors cannot use the fact that a mediation once occurred as a perpetual cloak over all subsequent plan-related activity. To allow that position to hold would allow any party that participates in a mediation to immunize all future communications on the same subject matter from discovery indefinitely—a result no court has endorsed and one that would fundamentally undermine the discovery rights of creditors in Chapter 11 cases.

24. The same pattern repeats across the Debtors' responses to requests concerning the Estate Claims Marketing Process (ROG 2; RFP 11), the Litigation Trust and its assets (ROGs 4, 9, 10; RFPs 6, 29, 30), the use of factoring proceeds (ROGs 5, 6; RFPs 21, 26, 27), the Special Committee Investigation (RFP 14), the Plan Settlement negotiations (RFP 5), and the Adverse Conduct determinations (ROGs 3; RFPs 8, 9). In each instance, the Debtors assert the mediation privilege in boilerplate fashion without identifying which specific communications were made during mediation, to whom, or on what date. This fails to satisfy the Debtors' burden of establishing the privilege applies. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) ("[T]he party asserting the privilege bears the burden of demonstrating its applicability.").

25. Request for Production No. 15 illustrates the flaw in the Debtors' position. That Request seeks communications between the Debtors and the Ad Hoc Group or DIP Secured Parties during a 28-day *pre-petition* window, September 1, 2025 through September 28, 2025. The Debtors asserted the mediation privilege to resist this Request related to the period before the First Brands Bankruptcy cases were ever filed. But the mediation in these Chapter 11 Cases was not even contemplated in September 2025; it was not authorized until months later. The Debtors' assertion of mediation privilege over pre-mediation communications lays bare what is really

10

happening here: the Debtors are wielding the label of "mediation privilege" not as a targeted protection for the mediation process, but as a blanket shield to excuse or avoid producing documents they simply do not want Katsumi to see.

26. Moreover, the Debtors have failed to produce even a privilege log identifying what specific documents or communications they are withholding on mediation grounds, as required by Federal Rule 26(b)(5)(A). A log would evidence at least a case-by-case evaluation before asserting privilege. But we were advised no such scrutiny or evaluation was conducted, and not a single factual witness can declare under oath that all such communications were mediation-based communications, let alone privileged (which Katsumi contends they are not privileged). Without a privilege log, neither Katsumi nor this Court can evaluate whether the privilege has been properly invoked. *See Peacock v. Merrill,* No. 08-01-B-M2, 2008 WL 687195, at *3 (M.D. La. Mar. 10, 2008) ("Without ... the privilege log, it is not possible for [a party] to legitimately contest the asserted privilege and for the Court to rule intelligently upon whether the claim of privilege should be sustained."). The Court should overrule the Debtors' blanket mediation privilege objections, compel full responses, and require production of a detailed privilege log.

**B. Failure to Produce a Privilege Log.**

27. The Debtors assert attorney-client privilege, work product protection, common interest privilege, joint defense privilege, mediation privilege, and the Supplemental Agreed Protective Order between the Debtors and the Examiner (Dkt. 1364) across virtually every response, yet no privilege log has been produced or referenced. The Debtors' responses do not identify a single document being withheld, the date of any withheld communication, the author or recipients, or the privilege asserted for each document or even categories of documents. These documents are relevant for a number of issues to be litigated before this Court at the Confirmation

11

Hearing, yet Debtors are now using privilege and the protective order as another shield from discovery.

28.     Federal Rule 26(b)(5)(A) is clear: "When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." The Debtors have not complied with this requirement. The Fifth Circuit has consistently held that blanket privilege assertions without a privilege log are insufficient. *See In re Santa Fe,* 272 F.3d at 710 ("[T]he party asserting the privilege bears the burden of demonstrating its applicability."); *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999) ("[B]lanket assertions of privilege are extremely disfavored."). Without a privilege log, the Debtors' privilege claims should be deemed waived, or at minimum, the Court should order production of a compliant privilege log within five days.

**C.     Boilerplate "Overbroad and Unduly Burdensome" Objections.**

29.     Every single response—all 24 interrogatories and all 31 document requests— recites that the request is "overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing." Not once do the Debtors identify or quantify the burden, explain what makes a request disproportionate, identify the number of documents that would need to be reviewed, estimate the cost of compliance, or propose any narrowing.

30.     The Fifth Circuit has held that simply objecting to requests as overly broad, burdensome, or irrelevant without showing how each request is specifically not relevant, burdensome, or overly broad is inadequate to voice a successful objection. *See McLeod, Alexander, Powel, & Appfel P.C. v. Quarles*, 894 F. 2d 1482, 1485–86 (5th Cir. 1990). Therefore, boilerplate

12

and "conclusory objections that the requested discovery is 'overly broad, burdensome, oppressive and irrelevant' are insufficient[.]" *Scott v. United States Postal Serv.*, No. CV 15-712, 2016 WL 7440468, at \*4 (M.D. La. Dec. 27, 2016) (citations omitted); *see also Romero v. United States*, No. 6:23-CV-00032, 2024 WL 436892 at \*2 (W.D. La. Feb. 2, 2024) ("Boilerplate objections are unacceptable."); *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021) (holding that the only thing a boilerplate objection accomplishes is waiver of the objection).

31. Further, the Debtors' proportionality objection under Federal Rule 26(b)(1) is meritless. The Discovery Requests seek information directly relevant to core confirmation issues: the feasibility of the Plan, the adequacy of the Disclosure Statement, the value and treatment of claims contributed to the Litigation Trust, and the use of Katsumi's factoring proceeds. These are not peripheral matters; they go to the heart of what this Court must evaluate at the Confirmation Hearing. The Debtors cannot credibly argue that targeted discovery on these subjects is disproportionate to the needs of a multi-billion dollar bankruptcy case. These objections should be overruled in their entirety.

**D.      Improper Deferral to Future Witness Declarations.**

32. There is no caselaw nor rule nor privilege that allows a party to refuse to respond to interrogatory requests based on the assertion that later we will file comprehensive declarations that go well beyond this question, so we will ignore our discovery obligations in response to the interrogatories.  Indeed, Debtors finally filed late on July 14 incredibly lengthy declarations.  This avoidance of responding is particularly egregious, and even now, despite being requested, Debtors have not even attempted to cross reference provisions, paragraphs or subsections linking these declarations to the specific Interrogatory request to which such sworn statements relate. In effect,

13

the requesting parties are denied the fundamental purposes of the interrogatory: sworn statements addressing specific, discrete inquiries.

33. Specifically, rather than provide substantive responses, the Debtors repeatedly state that "information informing a response will be reflected in witness declarations to be filed in prosecution of the Plan" and that materials "will be produced on a rolling basis thereafter." This formulation appears in the Debtors' responses to Interrogatory Nos. 3, 4, 6, 9, 10, 11, 12, 21, and 22. It is not an answer—it is a deferral to some unspecified future date, on the Debtors' own timeline, with no commitment as to scope or completeness.

34. Federal Rule 33(b)(3) requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." In addition, a response to a request for production of documents which merely says the requested documents will be produced at some unidentified time in the future, without offering a specific time, place and manner, is not a complete answer as required by Federal Rule 34(b) and, therefore, is treated as a failure to answer or respond pursuant to Federal Rule 37(a)(3). *See Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 656 (D. Md. 1997). The Debtors should not be permitted to further delay providing responsive discovery, particularly when the schedule for the Confirmation Hearing requires that Katsumi have adequate time to review, analyze, and respond to the Debtors' positions. Similarly, the Debtors refuse to identify their witnesses for the Confirmation Hearing (ROG 8), claiming they "will disclose their witnesses on the witness and exhibit list." This is non-responsive evasion that prejudices Katsumi's preparation for the Confirmation Hearing.

35. The problem is compounded by the Debtors' pervasive use of the formulation "subject to and without waiving any objections," which leaves Katsumi entirely in the dark about which grounds for objection the Debtors are actually relying on to withhold specific documents or

14

categories of documents. Katsumi has no way to know what is being withheld, or on what basis. Federal Rule 34(b)(2)(C) requires that a party stating an objection to a document request "must state whether any responsive materials are being withheld on the basis of that objection." The Debtors have not done so for a single request. The practical effect is that the Debtors have given themselves unilateral, unreviewable discretion to produce whatever they choose and withhold whatever they prefer, while maintaining the appearance of compliance. This is precisely the kind of evasive response that Rule 37(a)(3)(B)(iv) treats as a failure to respond. The Court should order the Debtors to state, for each request, whether responsive materials are being withheld and, if so, on what specific basis.

**E.      Improper "Premature Contention Interrogatory" Objections.**

36.      The Debtors label over half of the interrogatories—thirteen in total—as "premature contention interrogatories" and use this characterization to refuse responses. (Interrogatories 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 22).  But they relate to Debtors filed Plan.  They are not premature. Federal Rule 33(a)(2) expressly provides that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."

37.      Moreover, with the Confirmation Hearing approaching, these interrogatories are anything but premature, as they seek information that Katsumi needs *now* for its evaluation of the Plan's feasibility, the adequacy of the Disclosure Statement, the value and structure of the proposed Litigation Trust, and the propriety of the third-party releases the Plan demands, each of which is a prerequisite to confirmation that Katsumi is entitled to test through discovery. Without timely responses, Katsumi will be forced to confront the Confirmation Hearing unable to meaningfully challenge core aspects of the Plan that directly affect its recovery. The Debtors' contention-interrogatory objection is particularly hollow with respect to interrogatories asking

15

about the Litigation Trust, the Estate Claims, and the Plan Settlement (Interrogatories 3, 4, 9, 10, 14), as the Debtors are the Plan proponents and bear the burden of demonstrating confirmability under 11 U.S.C. § 1129. The Debtors cannot simultaneously seek confirmation of the Plan while refusing to answer questions about its terms.

38.     This is a case in which hundreds of millions of dollars have been paid to professionals, and now that the case is coming to its Plan Confirmation hearing, the responses do not reflect anything in terms of substance the expenditures of this case warrant and deserve.

**F.     Outright Refusals to Respond.**

39.     The Debtors flatly state they "will not respond" to four interrogatories (Nos. 1, 14, 17, and 20), and provide zero substantive information. Interrogatory No. 1 asks only for the identity of persons who participated in drafting the Plan; the Debtors refuse. Interrogatory No. 14 seeks the Debtors' state-law analysis regarding the legal transferability of claims to the Litigation Trust, *which is not a successor entity to the Debtors under this Plan*, this is a core confirmability issue, and the Debtors refuse. Interrogatory No. 17 asks for the anticipated fees of the DIP Collateral Trust; the Debtors refuse, claiming the information is not in their possession, custody, or control, an assertion that strains credulity for Plan proponents administering the DIP Collateral Trust. Interrogatory No. 20 asks about professional fees under Section 2.3(e) of the Plan; the Debtors refuse.

40.     A party may not simply refuse to answer discovery. The proper remedy, which the Debtors did not pursue, is a motion for protective order under Federal Rule 26(c). *See Lampe v. Kash*, No. 1:03-CV-162, 2004 WL 7321353, at *1 (S.D. Ohio July 13, 2004). Absent a court order, the Debtors' outright refusals violate Federal Rules 33 and 37, and constitute waivers of defenses. The Court should compel responses to all four interrogatories.

16

### G. Improper "Already in Katsumi's Possession" Objections.

41. The Debtors repeatedly claim that requested information is "publicly available," "equally available to Katsumi," or "already in Katsumi's possession, custody, or control." This objection appears in responses to Interrogatory Nos. 3, 4, 7, 9, 15, 19, 20, and 24.

42. A responding party cannot shift its discovery obligations to the requesting party simply because some information may be publicly available. *See Alanis Logistics, Inc. v. JPMorgan Chase Bank, N.A.*, No. 7:21-CV-00235, 2022 WL 304994, at *4 (S.D. Tex. Feb. 2, 2022) ("Federal Rule of Civil Procedure 26 does not generally permit a proponent of discovery to shift the burden of researching public information onto the respondent."). While Federal Rule 33(d) permits a party to answer by producing business records from which the answer may be derived, the party must "specif[y] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). The Debtors utterly failed to meet this obligation. Hence, Debtors must provide substantive answers.

### H. The Debtors' Privilege Assertions Are Waived Under the Sword-and-Shield Doctrine.

43. Independent of the deficiencies addressed above, the Debtors' privilege assertions must be overruled under the sword-and-shield doctrine. It is a bedrock principle of privilege law that a party may not use privilege as both a sword and a shield—selectively disclosing privileged information when it advances the party's position while withholding the underlying materials when an adversary seeks to test or challenge that position. *See Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 495 (W.D. Tex. 2020) (examining work product privilege being used as both a sword and shield); *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 704 (10th Cir. 1998) ("a litigant cannot use the work product doctrine as both a sword and shield"); *United States v. Bilzerian*, 926

17

F.2d 1285, 1292 (2d Cir. 1991) ("The attorney-client privilege cannot at once be used as a shield and a sword.").

44. That is precisely what the Debtors are doing here. The Debtors have revealed that Charles M. Moore, the CEO of First Brands Group, LLC, the same individual who verified the Debtors' interrogatory responses, will testify at the Confirmation Hearing about the Debtors' analysis of the flow of funds from the factoring transactions. Yet the Debtors have asserted privilege over all work papers and analyses related to that very funds-flow tracing. In their response to Interrogatory No. 6, which asks the Debtors to describe how proceeds from the purchase of receivables by Katsumi and other Factors were used, distributed, or applied, the Debtors objected on the basis of "the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege," and "any other applicable privilege, including any tracing analysis performed by the Debtors or their advisors." The Debtors cannot refuse disclosure, and then put Mr. Moore on the witness stand to testify about a funds-flow analysis while simultaneously claiming that the underlying work papers supporting that analysis are privileged. Due process mandates that any subject that is part of the Plan or any declaration must be subject to full discovery, and no privilege may be asserted to preclude full and fair adjudication of such issue.

45. The same sword-and-shield problem pervades the Debtors' treatment of their investigation and claims analysis. The Debtors have opened the door on these subjects by repeatedly stating in their interrogatory responses that "information informing a response to this Interrogatory will be reflected in witness declarations to be filed in prosecution of the Plan," and by directing Katsumi to publicly filed documents such as the Schedule of Retained Causes of Action (Dkt. 3046-1), the Litigation Trust Agreement (Dkt. 3046-4), and the Specified Non-

18

Released Parties Schedule (Dkt. 3046-8). The Debtors have thus selectively disclosed the *conclusions* of their investigation and claims analysis, which claims to pursue, which parties to include on the non-released parties schedule, and which causes of action to transfer to the Litigation Trust, while asserting privilege over all of the underlying analyses, methodology, and communications that produced those conclusions. Having placed the results of their investigation squarely at issue in support of confirmation ***and the sole means to try and achieve feasibility*** (through the litigation trust and the litigation claims), the Debtors cannot now shield the analytical foundation from scrutiny.

46. The Debtors cannot have it both ways. They chose to try and implement a plan built entirely around the possibility of obtaining litigation recoveries. By electing to present testimony about funds-flow analyses, by publicly filing the results of their investigation and claims analysis, and by relying on those results to support confirmation of the Plan, the Debtors have waived any privilege over the underlying work papers, analyses, and communications. *See In re Toshiba Int'l Corp. v. Kalaga*, No. CV H-19-4274, 2020 WL 13413222, at *3 (S.D. Tex. May 26, 2020) (The sword-shield doctrine allows a waiver of privilege when "a party possessing the documents [sought] to selectively present the materials to prove a point, but then attempts to invoke the privilege to prevent the opponent from challenging the assertion."). The Court should deem the Debtors' privilege waived as to the funds-flow tracing analysis, the investigation and claims analysis, and all related work papers, and compel their production.

## **MEET AND CONFER**

47. Counsel for Katsumi and the Debtors have met and conferred at least twice to address and wherever possible resolve this dispute but have been unable to reach a resolution.

## RESERVATION OF RIGHTS

48.     Katsumi reserves its right to file other motions to address discovery disputes that cannot be resolved.

## NOTICE

49.     Notice of this Motion has been provided to all parties listed in the Master Service List. In light of the nature of the relief requested herein, Katsumi respectfully submits that no other or further notice need be provided.

## CONCLUSION

50.     Based on the foregoing, Katsumi respectfully requests that the Court grant its Motion and enter an Order (i) ordering Debtors to respond more completely to the interrogatories and requests for production, (ii) continuing the Confirmation Hearing to a date necessary to allow the objecting parties sufficient time to (a) respond to the surprise testimony of Mr. Kirschner, (or alternatively, striking Mr. Kirschner's declaration and ability to testify) and (b) sufficient time to process Debtors' compelled discovery responses to obtain deposition testimony thereafter prior to any confirmation hearing.

51.     Specifically, Katsumi requests that the Court enter in order substantially in the form attached to this Motion, scheduling the confirmation hearing at a time when due process and fairness ensures justice is served, and grant such other relief as is just and proper under the circumstances.

Dated: July 15, 2026
Houston, Texas

/s/ Charles S. Kelley
**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, Texas 77002
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com

Sean T. Scott (admitted *pro hac vice*)
Kyle J. TumSuden (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Email: stscott@mayerbrown.com
ktumsuden@mayerbrown.com

Richard A. Stieglitz (admitted *pro hac vice*)
Lauren C. Blanchard (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Email: rstieglitz@mayerbrown.com
lblanchard@mayerbrown.com

*Counsel to Katsumi Servicing, LLC*

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 13, 2026, counsel for Katsumi Servicing, LLC conferred with

counsel of record for Debtors.  The parties could not come to an agreement and reached an impasse.

/s/ Charles S. Kelley
Charles S. Kelley

21

## CERTIFICATE OF SERVICE

I certify that on July 15, 2026, a true and correct copy of this document was electronically filed with the Clerk of the Court using the CM/ECF system, which automatically sends notification of such filing to all attorneys of record.

/s/ Charles S. Kelley
Charles S. Kelley

# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| **Debtors.[1]** | § | **(Jointly Administered)** |
| | § | |

## KATSUMI SERVICING, LLC'S FIRST REQUEST
## FOR PRODUCTION OF DOCUMENTS FROM FIRST BRANDS
## IN CONNECTION WITH THE PLAN AND DISCLOSURE STATEMENT

**PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rules 9014, 7026, and 7034, Katsumi Servicing, LLC ("Katsumi"), by and through its undersigned counsel, hereby serves its First Requests for Production of Documents (the "Requests"), attached hereto as **Exhibit A**, on First Brands Group, LLC, and its debtor and non-debtor affiliates (collectively, "First Brands") in connection with the Plan and Disclosure Statement (as such terms are defined below).

**PLEASE TAKE FURTHER NOTICE** that First Brands is directed to produce true and correct copies of all Documents and Communications responsive to the Requests on or before **4:00 p.m. (prevailing Central Time) on July 9, 2026**, at the offices of Mayer Brown LLP, 700 Louisiana Street, Suite 3400, Houston, Texas 77002, Attention: Charles S. Kelley, including by e-mail to Charles S. Kelley (ckelley@mayerbrown.com), Gary Johnson (gjohnson@mayerbrown.com), Kaitlyn Barry (kbarry@mayerbrown.com) and Kyle TumSuden (ktumsuden@mayerbrown.com), or at such other time and place as may be mutually agreed to by

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

1

2

the parties. The Requests shall be deemed to be continuing in nature, and Katsumi requests that First Brands supplement the response to the Requests if at any time additional Documents or Communications responsive to the Requests come into their possession, custody, or control.

[*Remainder of Page Intentionally Left Blank*]

**PLEASE TAKE FURTHER NOTICE** that Katsumi reserves its rights under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"), and any applicable law regarding the subject matter of this Notice and to amend, supplement, and/or modify the Requests in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and other applicable law.

Dated: June 22, 2026
Houston, Texas

/s/ Charles S. Kelley
**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, Texas 77002
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com

Sean T. Scott (admitted *pro hac vice*)
Kyle J. TumSuden (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Email: stscott@mayerbrown.com
         ktumsuden@mayerbrown.com

Richard A. Stieglitz (admitted *pro hac vice*)
Lauren C. Blanchard (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Email: rstieglitz@mayerbrown.com
         lblanchard@mayerbrown.com

*Counsel to Katsumi Servicing, LLC*

## EXHIBIT A

**Requests**

Case 25-90099 Document 321 Filed in TXSB on 07/24/26 Page 28 of 188

**DEFINITIONS**[2]

1.      "ABL Claims" has the meaning set forth in the Plan.

2.      "ABL Collateral Trust" has the meaning set forth in the Plan.

3.      "ABL Collateral Trust Assets" has the meaning set forth in the Plan.

4.      "ABL Lenders" has the meaning set forth in the Plan.

5.      "Ad Hoc Group" has the meaning set forth in the Plan.

6.      "Adverse Conduct" has the meaning set forth in the Plan.

7.      "Additional Litigation Trust Funding" has the meaning set forth in the Plan.

8.      "Administrative Expense Claims" has the meaning as set forth in the Plan.

9.      "Adversary Proceeding" means any adversary proceeding filed in, arising in,

arising under, or related to the Chapter 11 Cases.

10.      "Communications" means any recorded oral or written communication of any kind, including emails, text messages, chat messages, Microsoft Teams messages, WhatsApp messages or communications, social media communications, written communications, letters, electronic messages communicated via electronic means such as by computer, phone, or other electronic device, or any other exchange, transfer, or dissemination of information, notifications, regardless of the means by which it was accomplished.

11.      "Conditional Disclosure Statement Hearing" has the meaning set forth in the Disclosure Statement.

12.      "Confirmation Hearing" has the meaning set forth in the Plan.

13.      "Creditors' Committee" has the meaning set forth in the Plan.

14.      "Cause of Action" has the meaning as set forth in the Plan.

15.      "Chapter 11 Cases" means, with respect to each of the Debtors, each and every one of such Debtor's cases under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court, and also includes the cases under Chapter 7 of the Bankruptcy Code for the Evolution SPV Debtors and any Adversary Proceedings filed in connection with such Chapter 11 Cases.

16.      "concerning", "referencing", "regarding", "reflecting", "relating to", and "in connection with" mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, made pursuant to, containing, analyzing,

---

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Plan.

1

evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed in conjunction with, consulting with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

17. "DIP Secured Parties" has the meaning set forth in the Plan.

18. "DIP A Claims" has the meaning set forth in the Plan.

19. "DIP Collateral Trust" has the meaning set forth in the Plan.

20. "DIP Collateral Trust Assets" has the meaning set forth in the Plan.

21. "DIP Collateral Trust Funding" has the meaning set forth in the Plan.

22. "DIP Collateral Trust Funding Contributors" has the meaning set forth in the Plan."

23. "Direct Creditor Claims" has the meaning set forth in the Plan.

24. "Debtors" means each of the debtors and debtors in possession in the Chapter 11 Cases, together with each of their employees, managers, officers, directors, agents, representatives, subsidiaries, special purpose vehicles, and affiliates.

25. "Disclosure Statement" means the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at Dkt. No. 2982, including all exhibits and schedules thereto, as may be amended, revised, supplemented, or otherwise modified from time to time.

26. "Documents" is used in the broadest sense and means any kind of printed, recorded, written, graphic, or photographic matter (including tape recordings), however printed, produced, reproduced, coded or stored, of any kind or description, whether sent or received or not, including originals, copies, drafts, and both sides thereof, and including papers, books, charts, graphs, photographs, drawings, correspondence, telegrams, cables, telex messages, memoranda, notes, notations, work papers, routing slips, intra and inter-office communications, electronic mail, text messages, chat messages, Microsoft Teams messages, WhatsApp messages or communications, social media communications, affidavits, statements, opinions, court pleadings, reports, indices, studies, analyses, forecasts, evaluations, contracts, computer printouts, data processing input and output, computer programs, microfilms, microfiche, all other records kept by electronic, photographic, or mechanical means, and things similar to any of the foregoing, regardless of their authority, preparer, or origin, or any kind.

27. "Effective Date" has the meaning set forth in the Plan.

28. "Entity" has the meaning set forth in the Plan.

29. "Estates" has the meaning set forth in the Plan.

30. "Estate Claims" has the meaning set forth in the Plan.

31. "<u>Estate Claims Credit Bid</u>" has the meaning set forth in the Plan.

32. "<u>Estate Claims Credit Bid Transaction</u>" has the meaning set forth in the Plan.

33. "<u>Estate Claims Marketing Process</u>" has the meaning set forth in the Disclosure Statement.

34. "<u>Examiner</u>" has the meaning set forth in the Plan.

35. "<u>Factor</u>" has the meaning set forth in the Plan.

36. "<u>FBG Debtors</u>" has the meaning set forth in the Plan.

37. "<u>First Brands</u>" means the Debtors, together with all non-debtor subsidiaries or affiliates and each of their employees, managers, officers, directors, agents, subsidiaries, and special purpose vehicles.

38. "<u>First Lien Claims</u>" has the meaning set forth in the Plan.

39. "<u>General Unsecured Claims</u>" has the meaning set forth in the Plan.

40. "<u>including</u>" means including, without limitation, or without in any way qualifying or restricting the foregoing.

41. "<u>Initial Litigation Trust Funding Commitments</u>" has the meaning as set forth in the Plan.

42. "<u>Litigation Trust</u>" has the meaning set forth in the Plan.

43. "<u>Litigation Trust Assets</u>" has the meaning set forth in the Plan.

44. "<u>Litigation Trust Backstop Commitments</u>" has the meaning set forth in the Plan.

45. "<u>Litigation Trust Cash Funding</u>" has the meaning set forth in the Plan.

46. "<u>Litigation Trust Funding Agreements</u>" has the meaning set forth in the Plan.

47. "<u>Other Priority Claims</u>" has the meaning set forth in the Plan.

48. "<u>Person</u>" has the meaning set forth in the Plan.

49. "<u>Petition Date</u>" has the meaning set forth in the Plan.

50. "<u>Plan</u>" means the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at ECF No. 2981 in the Chapter 11 Cases, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time.

3

51. "Plan Settlement" has the meaning set forth in the Plan.

52. "Plan Supplement" has the meaning set forth in the Plan.

53. "Prepetition Secured Parties" has the meaning as set forth in the Plan.

54. "Preference Actions" has the meaning set forth in the Plan.

55. "Preference Settlement" has the meaning set forth in the Plan.

56. "Preference Settlement Electing Creditor" has the meaning set forth in the Plan.

57. "Priority Tax Claims" has the meaning as set forth in the Plan.

58. "Premier Marketing Group Global Settlement" has the meaning set forth in the Premier Marketing Group Plan.

59. "Premier Marketing Group Plan" means the Chapter 11 Plan of Premier Marketing Group, LLC filed at ECF No. 2733 in the Chapter 11 Cases, as amended, revised, supplemented, or otherwise modified.

60. "Receivables Sellers" means, collectively, the entities specified on Schedule 1 attached hereto.

61. "Roll-Up Claims" has the meaning set forth in the Plan.

62. "Second Lien Claims" has the meaning set forth in the Plan.

63. "Subordinated Claims" has the meaning as set forth in the Plan.

64. "Special Committee Investigation" has the meaning set forth in the Disclosure Statement.

65. "Special Committee" has the meaning set forth in the Plan.

66. "Specified Non-Released Parties" has the meaning set forth in the Plan.

67. "Third-Party Factoring" has the meaning set forth in the Disclosure Statement..

68. "You" or "Your" means First Brands.

**INSTRUCTIONS**

The preceding Definitions apply to each of these Instructions, and for the purposes of the Requests, the following Instructions shall be followed:

1. Unless otherwise stated, the time period covered by the following Requests is September 1, 2025 through the present (the "Relevant Period"), and each Request covers any and all Documents and Communications created, dated, sent, received, in effect, or in Your possession, custody, or control at any time during the Relevant Period.

2. You are to produce all responsive Documents and Communications in Your possession, custody, or control, wherever located, including those in the custody of Your agents, representatives, advisors, or professionals.

3. You are to produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document or Communication requested together with all non-identical copies and drafts of that Document or Communication. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

4. A request for any Document or Communication shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to such Document or Communication, in addition to the Document or Communication in its full and unexpurgated form.

5. Where only a portion of a Document or Communication relates to the subject of a request, the entire Document or Communication is to be produced nevertheless, inclusive of any and all attachments, appendices, and exhibits.

6. Each copy of a Document that differs in any way from another copy of that Document (by marginalia, highlighting, completeness/incompleteness, inclusion/exclusion of

5

attachments, or otherwise) should be considered a separate Document and produced separately. The Requests call for production of all drafts of Documents in addition to final versions of Documents.

7.     If there are no Documents or Communications responsive to any particular request, please state so in writing.

8.     If a Document or Communication cannot be produced in full, produce it to the extent possible, identify the portion that cannot be produced, and specify the reasons for your inability to produce the remainder.

9.     To the extent You withhold any Document or Communication by reason of a claim of privilege, provide a privilege log identifying such Document or Communication together with: (a) the date of the Document or Communication; (b) the identity of the author(s), preparer(s) or sender(s), as applicable; (c) the identity of each recipient(s) who was sent or furnished with the Document or Communication or who received or had possession or custody of the Document or Communication; (d) a description of the Document or Communication, including identification of any attachments or appendices; and (e) a statement of the basis of the claim of privilege.

10.     To the extent You assert that any responsive Documents and Communications are subject to mediation privilege, the privilege log should demonstrate the basis for such assertion, including information sufficient to show the dates for which such privilege is being claimed.

11.     In each of the Requests, the use of either the singular or plural shall not be deemed a limitation, and the use of the singular includes the plural, and vice versa.

12.     In each of the Requests, the words "and" and "or" are interchangeable and shall be construed either disjunctively or conjunctively or both, as broadly as necessary to bring within the scope of each Request those responses that might otherwise be construed to be outside the scope.

13.     If a responsive Document or Communication was, but no longer is, within Your possession, custody, or control, please state in detail: (a) the type of Document or Communication and the author(s), preparer(s), sender(s), recipient(s), and copy(ies) of the Document or Communication; (b) a summary of the contents of the Document or Communication; (c) what disposition was made of such Document or Communication; (d) the date of such disposition; (e) whether the original or a copy thereof is within the possession, custody, or control of any other person(s); and (f) if the answer to clause (e) is affirmative, the identity of such person(s).

14.     The Requests herein are to be deemed continuing so as to require further and supplemental productions if You discover, receive, or generate additional responsive documents between the time of Your original production and the time of the final hearing held in this action

15.     Any Request for analyses, reports, assessments, investigations, valuations, projections, forecasts, estimates, summaries, charts, lists, diligence materials, or other information includes all such items in Your possession, custody, or control, regardless of whether prepared by You,  Your professionals, any other plan proponent, the DIP Secured Parties, the Prepetition Secured Parties, the Creditors' Committee, the Ad Hoc Group, any other constituency, or any advisor or professional to any of the foregoing.

[*Remainder of Page Intentionally Left Blank*]

**DOCUMENT REQUESTS**

1. All transcripts of any deposition (including exhibits thereto) taken in connection with the Chapter 11 Cases or any Adversary Proceeding, except for transcripts at which Katsumi or its undersigned counsel appeared.

2. All responses to interrogatories or requests for admission (including all documents referenced therein or identified pursuant to Fed. R. Civ. P. Rule 33(d)) provided by any of the Debtors in connection with the Chapter 11 Cases or any Adversary Proceeding.

3. All Communications provided to or exchanged with the Examiner or the Examiner's professionals in connection with the Chapter 11 Cases or any Adversary Proceeding. This Request specifically includes all notes taken at any meeting with the Examiner or the Examiner's professionals and all notes documenting Communications provided to or exchanged with the Examiner or the Examiner's professionals.

4. All Documents produced to, provided to or exchanged with the Examiner or the Examiner's professionals in connection with the Chapter 11 Cases or any Adversary Proceeding, including any and all supplemental or additional Documents produced to, provided to or exchanged with the Examiner or the Examiner's professionals, whether based on further follow up, interviews, requests for further clarification or supplementation, or otherwise.

5. All Documents and Communications exchanged among You and the DIP Secured Parties (or any of its members), the Ad Hoc Group (or any of its members), the Creditors' Committee (or any of its members), the Special Committee (or any of its members), or the ABL Lenders relating to the Premier Marketing Group Plan, the Premier Marketing Group Global Settlement, the Estate Claims Credit Bid Transaction, the Plan, or the Plan Settlement. The Documents and Communications responsive to this request include all communications relating to

any terms or aspects of those plans, settlements or transactions, as well as all Communications reflecting negotiations of those plans, settlements or transactions. For the avoidance of doubt, this Request specifically includes (i) all Communications, Documents, summaries, charts or other information related to (in any respect) any Cause of Action, Estate Claim or other claim, cause of action, or asset to be included in, contributed to or otherwise retained for inclusion in the Litigation Trust or the Litigation Trust Assets and (ii) any and all Documents and Communications exchanged among the Debtors' financial advisors (or any personnel of the Debtors' financial advisors) and any other Person.

6.      All Documents and Communications relating to or referencing the Litigation Trust or the Litigation Trust Assets, including any Cause of Action, Estate Claim or other claim, cause of action, or asset to be included in, contributed to or otherwise retained in the Litigation Trust or the Litigation Trust Assets, including any and all estimations, valuations, projections, forecasts, and lists (and any drafts of the foregoing) relating to the foregoing.

7.      All Documents and Communications exchanged between You and Gerard Uzzi of Uzzi & Lall. This Request specifically includes any and all Documents and Communications exchanged among the Ad Hoc Group (or any of its members or respective professionals), the Special Committee (or any of its members or respective professionals) and/or the Creditors' Committee (or any of its members or respective professionals) and Gerard Uzzi of Uzzi & Lall on which Debtors or any of Debtors' representatives, counsel, financial advisors, or other professionals were copied, forwarded, or otherwise included as recipients.

8.      All Documents and Communications relating to "Adverse Conduct" as defined in the Plan, including any and all Communications relating to any assessment or conclusion regarding which Persons or Entities engaged in "Adverse Conduct."

9

9. All Documents and Communications identifying any Person or Entity that may be characterized as having engaged in Adverse Conduct.

10. All Documents and Communications relating to substantive consolidation in connection with the Plan, including any and all Communications relating to any consideration of consolidating any Debtors for particular purposes, and any and all Communications relating to consolidation for purposes of any defenses to preference actions or other avoidance actions, whether in connection with the Preference Settlement or otherwise. This Request specifically includes all analyses, reports, assessments or investigations performed by Debtors or any of their professionals into the whether substantive consolidation of some or all of the Debtors is or was factually accurate or appropriate.

11. All Documents and Communications relating to the Estate Claims Marketing Process, including (i) all diligence materials provided to any potential bidders, prospective bidders, bidders, or other participants, including all Documents in the "data room"; (ii) all indications of interest received from any prospective bidder; (iii) all bids received; (iv) all indications of interest for any Estate Claims being sold; (v) all "teaser" materials or other information used to solicit potential or prospective bidders; (vi) any Documents or Communications provided to the Ad Hoc Group or the participants in the Estate Claims Credit Bid in connection with the Estate Claims; (vii) any Documents or Communications exchanged with any potential bidder, prospective bidders, or other participants; and (viii) any and all data rooms containing or purporting to contain any information regarding the assets, businesses, entities, operations, inventory, receivables or causes of action provided to prospective bidders or purchasers. This Request expressly includes any Documents and Communications provided to or exchanged with the Ad Hoc Group or other

participants in the Estate Claims Marketing Process that are in any way connected to the Estate Claims Credit Bid Transaction or the Estate Claims.

12. All Documents and Communications relating to or referencing the "claims", "causes of action," "transactions," or consideration paid, in each instance without any limitation, as referenced by Charles M. Moore as described at Pages 24-25 and 131-132 of the transcript of the Conditional Disclosure Statement Hearing.

13. All Documents and Communications reviewed by or relied upon by Charles M. Moore in connection with reviewing and signing the Plan, the Disclosure Statement, or any declaration submitted in connection therewith, or in connection with providing testimony at the Conditional Disclosure Statement Hearing.

14. All Documents and Communications relating to or referencing the Special Committee Investigation.

15. All Communications between You and the Ad Hoc Group (or any of its members) or the DIP Secured Parties (or any of those parties) between September 1, 2025 and September 28, 2025.

16. All Documents and Communications produced to any other Person in connection with the Confirmation Hearing or the Conditional Disclosure Statement Hearing.

17. All Documents and Communications on which the Debtors intend to rely at the Confirmation Hearing.

18. All Documents and Communications on which any witness called by the Debtors has relied on or will rely on in connection with any testimony relating to the Confirmation Hearing, including any and all Documents and Communications on which any such witness shall be called to testify regarding any Cause of Action, Estate Claim or other claim, cause of action, or asset to

11

be included in, contributed to or otherwise retained for inclusion in the Litigation Trust or the Litigation Trust Assets.

19. All Documents and Communications relating to, reflecting, or forming the basis for the Debtors' statement on Page 27 of the Disclosure Statement that "Based on the FBG Debtors' reasonable estimates, the FBG Debtors are estimating that the Effective Date is reasonably likely to occur in the second half of 2028, although the Effective Date may reasonably or in fact occur earlier or later than the second half of 2028."

20. All Documents and Communications relating to, reflecting, constituting, or forming the basis for related to when the Effective Date is reasonably likely to occur. This Request includes all such analyses, estimates, projections, forecasts or other information prepared by any plan proponent or its respective professionals

21. All Documents and Communications relating to the ABL Collateral Trust Assets, including all Communications relating to the exclusion of assets therefrom. This Request specifically includes any summaries, notes, accountings, or assessments relating to outstanding receivables or invoices that remain uncollected and the Debtors' interests (or purported) interests therein.

22. All Documents and Communications relating to the Preference Settlement as defined in the Plan, including any and all Communications relating to eligibility to participate in the Preference Settlement, the benefits afforded to Preference Settlement Electing Creditors, the releases to be granted by Preference Settlement Electing Creditors under Section 13.5(b) of the Plan, the contribution of Direct Creditor Claims to the Litigation Trust, and the governance, procedures and protections applicable to the prosecution of Preference Actions.

23. All Documents and Communications comprising or relating to the Plan Supplement or any document, materials, agreements constituting to be contained in the Plan Supplement, , including the schedule of Specified Non-Released Parties and any and all Communications regarding the composition of such schedule and assessments and determinations regarding which Persons are included in such schedule.

24. All Documents and Communications relating to the conditions precedent to the occurrence of the Effective Date set forth in Section 12.1(o) of the Plan, including Documents and Communications sufficient to show any facts, circumstances, or contingencies presently known that may prevent or delay the satisfaction of such condition.

25. All Documents and Communications relating to the Debtors' assessment, analysis, or consideration of the consequences of nonoccurrence of the Effective Date, including (i) any steps, actions, or processes that would need to be taken to reverse, unwind, or otherwise remediate the effects of actions already undertaken in furtherance of the Plan or the Effective Date, (ii) any contingency planning or proposed remedial solutions in the event the Effective Date does not occur within a reasonable period following the projected date of occurrence, and (ii) any analysis of the procedural, operational, or legal implications of such nonoccurrence, including the identification of all transactions, transfers, or other actions that would need to be reversed or unwound.

26. To the extent the Debtors or any plan proponent contends that Debtors' prepetition management and/or the operations of any or all of the Receivables Sellers observed, maintained, complied with or otherwise respected the separateness or corporate formalities of any Receivables Sellers, all Documents or Communications referencing, related to or otherwise identifying Debtors' prepetition actions, communications or business practices relating to the prepetition treatment of those corporate formalities, including:

a. All minutes of any prepetition meeting of the board of directors or managers (or any committee or sub-committee thereof) of the Receivables Sellers;

b. All Documents evidencing the transactions conducted in the bank accounts of each Receivables Seller, in each case sufficient to show when and from whom payments and receipts of monies were received, to whom such payments and receipts were directed, and how such payments and receipts were used;

c. All Documents evidencing how proceeds from the purchase of receivables by Katsumi and the other Factors were used, distributed or applied by First Brands or its prepetition management (or any Entities controlled by prepetition management) from and after January 1, 2023 through the Petition Date, including any and all Documents sufficient to identify which Debtor and non-Debtor entities' obligations such proceeds were applied to, used for, directed to, or expended on.

d. Documents supporting the Debtors' or any plan proponent's contention that the Receivables Sellers respected their corporate formalities with regard to the use of assets, including expenditures paid and payments or distributions of cash by such Receivables Sellers relating to or for obligations of other Debtors;

e. Any and all Documents sufficient to track or trace the use of cash from the Debtors' accounts in which any proceeds from sales of receivables by the Receivables Sellers was deposited, wired or transferred; and

f. All Documents and Communications that constitute, contain, reference or relate to Debtors' or any of their professionals' analysis, assessment, or investigation of the Debtors' use of cash or proceeds resulting from any Factor's purchase of receivables from June 2022 through and including the Petition Date.

27.	All Documents and Communications relating to the segregation of invoices, receipts or collections in respect of any Third-Party Factoring (as defined in the Disclosure Statement) arrangements from September 1, 2025 through September 28, 2025.

28.	All Documents and Communications purporting to preserve privilege of any kind (including common interest, joint defense protection, mediation privilege or otherwise), confidentiality, or otherwise protect from disclosure any Documents or Communications exchanged among or between the Debtors, the DIP Secured Parties (or any of their members), the Prepetition Secured Parties (or any of their members), the Ad Hoc Group (or any of its members), the ABL Lenders, and/or Creditors' Committee (or any of its members), including any written agreements, protocols, confidentiality undertakings, common interest agreements, joint defense agreements, mediation agreements, or other arrangements governing information sharing among any such parties.

29.	All Documents and Communications relating to (i) the amount, timing, or likelihood of recoveries or distributions under or from the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, or the Estate Claims; (ii) the time required to satisfy DIP A Claims, Roll-Up Claims, Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, First Lien Claims, Second Lien Claims, ABL Claims, General Unsecured Claims, or Subordinated Claims; or (iii) the timing or likelihood of the occurrence of the Effective Date.

30.	All Documents and Communications relating to the Litigation Trust Cash Funding, Initial Litigation Trust Funding Commitments, Litigation Trust Backstop Commitments, Additional Litigation Trust Funding, Litigation Trust Funding Agreements, DIP Collateral Trust Funding, DIP Collateral Trust Funding Contributors, or any actual or potential financing, funding,

backstop, commitment, contribution, draw, default, decline-to-fund determination, or replacement funding source for the Litigation Trust or the DIP Collateral Trust, including any Documents or Communications concerning efforts to raise, syndicate, allocate, backstop, approve, document, enforce, or decline any such funding.

31.     All Documents and Communications relating to or forming the basis for any responses to Katsumi Servicing, LLC's First Set of Interrogatories to First Brands in Connection with the Plan and Disclosure Statement served on First Brands on or about the date hereof.

# Schedule 1

## (Receivables Sellers)

First Brands Group, LLC
ASC Industries, INC.
Autolite Operations LLC
Brake Parts INC LLC
Carter Fuel Systems, LLC
Champion Laboratories, INC.
FRAM Group Operations LLC
Strongarm, LLC
Trico Products Corporation
Qualis Automotive, L.L.C.
CWD, LLC, L.L.C.
Horizon Global Corporation
Horizon Global Company LLC
Horizon Global Americas INC.
Horizon International Holdings LLC
Horizon Euro Finance LLC
Cardone Industries, Inc.
Carrand Companies, Inc.
Carter Carburetor Holdings, LLC
Carter Carburetor, LLC
Global Reman Ventures, LLC
Hopkins Acquisition, Inc.
Hopkins Manufacturing Corporation
Reman Management International LLC
2SDC TX, LLC
Smart Choice, LLC
Tridonex USA LLC
Walbro LLC
Walbro Midco LLC
WEM US Co.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

## KATSUMI SERVICING, LLC'S FIRST SET OF INTERROGATORIES TO FIRST BRANDS IN CONNECTION WITH THE PLAN AND DISCLOSURE STATEMENT

**PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rules 9014, 7026, and 7033, Katsumi Servicing, LLC ("Katsumi"), by and through its undersigned counsel, hereby serves its First Set of Interrogatories (the "Interrogatories"), attached hereto as **Exhibit A**, on First Brands Group, LLC, and its debtor and non-debtor affiliates (collectively, "First Brands") in connection with the Plan and Disclosure Statement (as such terms are defined below).

**PLEASE TAKE FURTHER NOTICE** that First Brands is directed to serve verified answers to the Interrogatories on or before **4:00 p.m. (prevailing Central Time) on July 9, 2026**, at the offices of Mayer Brown LLP, 700 Louisiana Street, Suite 3400, Houston, Texas 77002, Attention: Charles S. Kelley, including by e-mail to Charles S. Kelley (ckelley@mayerbrown.com), Gary Johnson (gjohnson@mayerbrown.com), Kyle TumSuden (ktumsuden@mayerbrown.com), and Kaitlyn Barry (kbarry@mayerbrown.com), or at such other time and place as may be mutually agreed to by the parties. The Interrogatories shall be deemed to be continuing in nature, and Katsumi requests that First Brands supplement the answers to the

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

2

Interrogatories if at any time additional information responsive to the Interrogatories comes into their possession, custody, or control.

[*Remainder of Page Intentionally Left Blank*]

**PLEASE TAKE FURTHER NOTICE** that Katsumi reserves its rights under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"), and any applicable law regarding the subject matter of this Notice and to amend, supplement, and/or modify the Interrogatories in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and other applicable law.

Dated: June 22, 2026
Houston, Texas

*/s Charles S. Kelley*
**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, Texas 77002
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com

Sean T. Scott (admitted *pro hac vice*)
Kyle J. TumSuden (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Email: stscott@mayerbrown.com
        ktumsuden@mayerbrown.com

Richard A. Stieglitz (admitted *pro hac vice*)
Lauren C. Blanchard (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Email: rstieglitz@mayerbrown.com
        lblanchard@mayerbrown.com

*Counsel to Katsumi Servicing, LLC*

3

## EXHIBIT A

**Interrogatories**

## **DEFINITIONS**[2]

1. "<u>ABL Collateral Trust Assets</u>" has the meaning set forth in the Plan.

2. "<u>Administrative Expense Claim</u>" has the meaning set forth in the Plan.

3. "<u>Adverse Conduct</u>" has the meaning set forth in the Plan.

4. "<u>Allowed</u>" has the meaning set forth in the Plan.

5. "<u>Cause of Action</u>" has the meaning set forth in the Plan.

6. "<u>Communications</u>" means any recorded oral or written communication of any kind, including emails, text messages, chat messages, Microsoft Teams messages, WhatsApp messages or communications, social media communications, written communications, letters, electronic messages communicated via electronic means such as by computer, phone, or other electronic device, or any other exchange, transfer, or dissemination of information, notifications, regardless of the means by which it was accomplished.

7. "<u>Conditional Disclosure Statement Hearing</u>" has the meaning set forth in the Disclosure Statement.

8. "<u>Confirmation Hearing</u>" has the meaning set forth in the Plan.

9. "<u>Chapter 11 Cases</u>" means, with respect to each of the Debtors, each and every one of such Debtor's cases under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court, and also includes the cases under Chapter 7 of the Bankruptcy Code for the Evolution SPV Debtors and any Adversary Proceedings filed in connection with such Chapter 11 Cases.

10. "<u>concerning</u>", "<u>referencing</u>", "<u>regarding</u>", "<u>reflecting</u>", "<u>relating to</u>", and "<u>in connection with</u>" mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, made pursuant to, containing, analyzing, evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed in conjunction with, consulting with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

11. "<u>DIP Secured Parties</u>" has the meaning set forth in the Plan.

12. "<u>Direct Creditor Claims</u>" has the meaning set forth in the Plan.

13. "<u>Debtors</u>" means each of the debtors and debtors in possession in the Chapter 11 Cases, together with each of their employees, managers, officers, directors, agents, representatives, subsidiaries, special purpose vehicles, and affiliates.

14. "<u>DIP A Claims</u>" has the meaning set forth in the Plan.

---

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Plan.

1

15. "<u>DIP Collateral Trust</u>" has the meaning set forth in the Plan.

16. "<u>Disclosure Statement</u>" means the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at Dkt. No. 2982, including all exhibits and schedules thereto, as may be amended, revised, supplemented, or otherwise modified from time to time.

17. "<u>Documents</u>" is used in the broadest sense and means any kind of printed, recorded, written, graphic, or photographic matter (including tape recordings), however printed, produced, reproduced, coded or stored, of any kind or description, whether sent or received or not, including originals, copies, drafts, and both sides thereof, and including papers, books, charts, graphs, photographs, drawings, correspondence, telegrams, cables, telex messages, memoranda, notes, notations, work papers, routing slips, intra and inter-office communications, electronic mail, text messages, chat messages, Microsoft Teams messages, WhatsApp messages or communications, social media communications, affidavits, statements, opinions, court pleadings, reports, indices, studies, analyses, forecasts, evaluations, contracts, computer printouts, data processing input and output, computer programs, microfilms, microfiche, all other records kept by electronic, photographic, or mechanical means, and things similar to any of the foregoing, regardless of their authority, preparer, or origin, or any kind.

18. "<u>Effective Date</u>" has the meaning set forth in the Plan.

19. "<u>Entity</u>" has the meaning set forth in the Plan.

20. "<u>Estate Claims</u>" has the meaning set forth in the Plan.

21. "<u>Estate Claims Marketing Process</u>" has the meaning set forth in the Disclosure Statement.

22. "<u>Factors</u>" has the meaning set forth in the Plan.

23. "<u>Final Return Threshold</u>" has the meaning set forth in the Plan.

24. "<u>First Brands</u>" means the Debtors, together with all non-debtor subsidiaries or affiliates and each of their employees, managers, officers, directors, agents, subsidiaries, and special purpose vehicles.

25. "<u>First Return Threshold</u>" has the meaning set forth in the Plan.

26. "<u>including</u>" means including, without limitation, or without in any way qualifying or restricting the foregoing.

27. "<u>Litigation Trust</u>" has the meaning set forth in the Plan.

28. "<u>Litigation Trust Assets</u>" has the meaning set forth in the Plan.

29. "<u>Litigation Trust Class 1 Funding Contributors</u>" has the meaning set forth in the Plan.

2

30.     "Other Priority Claims" has the meaning set forth in the Plan.

31.     "Person" has the meaning set forth in the Plan.

32.     "Petition Date" has the meaning set forth in the Plan.

33.     "Plan" means the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* filed at ECF No. 2981 in the Chapter 11 Cases, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time.

34.     "Premier Marketing Group Global Settlement" has the meaning set forth in the Premier Marketing Group Plan.

35.     "Premier Marketing Group Plan" means the Chapter 11 Plan of Premier Marketing Group, LLC filed at ECF No. 2733 in the Chapter 11 Cases, as amended, revised, supplemented, or otherwise modified.

36.     "Prepetition Secured Parties" has the meaning set forth in the Plan.

37.     "Professional" has the meaning set forth in the Plan.

38.     "Professional Fee Claim" has the meaning set forth in the Plan.

39.     "Second Return Threshold" has the meaning set forth in the Plan.

40.     "Special Committee" has the meaning set forth in the Plan.

41.     "Specified Non-Released Parties" has the meaning set forth in the Plan.

42.     "Third-Party Factoring" has the meaning set forth in the Disclosure Statement..

43.     "You" or "Your" means First Brands.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for the purposes of the Interrogatories, the following Instructions shall be followed:

1. Unless otherwise stated, the time period covered by the following Interrogatories is September 1, 2025 through the present (the "Relevant Period").

2. Each Interrogatory shall be answered separately and fully in writing under oath, in accordance with Federal Rule of Civil Procedure 33.

3. Where You lack sufficient information to answer an Interrogatory fully, so state, provide such information as is available, and describe the efforts made to obtain the information necessary to provide a full answer.

4. If You object to any Interrogatory in whole or in part, state the grounds for such objection with specificity and answer the Interrogatory to the extent it is not objectionable.

5. If You contend that any Interrogatory calls for information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, identify the information withheld and state the factual and legal basis for the privilege claim with sufficient specificity to enable Katsumi to assess the claim.

6. To the extent You elect to produce business records in response to any Interrogatory pursuant to Federal Rule of Civil Procedure 33(d), identify with specificity the records from which the answer may be derived or ascertained, and specify the records to be produced in sufficient detail to enable Katsumi to locate and identify them as readily as You could.

7. In each of the Interrogatories, the use of either the singular or plural shall not be deemed a limitation, and the use of the singular includes the plural, and vice versa.

8. In each of the Interrogatories, the words "and" and "or" are interchangeable and shall be construed either disjunctively or conjunctively or both, as broadly as necessary to bring within the scope of each Interrogatory those responses that might otherwise be construed to be outside the scope.

9. The Interrogatories herein are to be deemed continuing so as to require further and supplemental answers if You obtain additional responsive information between the time of Your original answer and the time of the final hearing held in this action.

[*Remainder of Page Intentionally Left Blank*]

## INTERROGATORIES

1.      Identify each Person who participated in, was consulted regarding, or has knowledge of the negotiation, drafting, or formulation of the Plan, the Plan Settlement, the Premier Marketing Group Plan, or the Premier Marketing Group Global Settlement, including each such Person's role and the subject matter of such Person's knowledge.

2.      Identify each Person who participated in, was consulted regarding, or has knowledge of the Estate Claims Marketing Process, including the role of each such Person and the dates of such Person's involvement.

3.      Identify each Person or Entity that First Brands contends engaged in Adverse Conduct, and for each such Person or Entity, describe with particularity: (a) the specific conduct that constitutes Adverse Conduct; (b) the date(s) on which such conduct occurred; (c) how and when First Brands became aware of such conduct; and (d) any investigation or analysis undertaken by First Brands or its professionals to assess whether such conduct constitutes Adverse Conduct.

4.      Identify each Cause of Action, Estate Claim or other claim or cause of action to be included in, contributed to, or otherwise retained for inclusion in the Litigation Trust or the Litigation Trust Assets, and for each such Cause of Action, Estate Claim or other claim or cause of action, state: (a) the nature and legal basis of the claim; (b) the parties against whom the claim may be asserted; (c) the estimated value of the claim; (d) the methodology used to arrive at such valuation; and (e) the Person(s) who performed or directed such valuation.

5.      Identify all outstanding receivables or invoices that remain uncollected and are related to any Third-Party Factoring arrangement, including: (a) the identity of each obligor; (b) the amount outstanding; (c) the current status of collection efforts; and (d) the Debtors' assessment of the collectability of such receivables.

6. Describe with particularity how proceeds from the purchase of receivables by Katsumi and the other Factors were used, distributed, or applied by First Brands or its prepetition management (or any Entities controlled by prepetition management) from January 1, 2023 through the Petition Date, including the identity of each Debtor and non-Debtor entity whose obligations such proceeds were applied to, used for, directed to, or expended on.

7. Describe the criteria, methodology, and process used to determine which Persons are included on the schedule of Specified Non-Released Parties, including: (a) who made such determinations; (b) when such determinations were made; (c) the factual basis for including each Person on such schedule; and (d) whether any Person was considered for inclusion but ultimately excluded, and if so, the basis for such exclusion.

8. Identify each witness the Debtors intend to call at the Confirmation Hearing, and for each such witness, state: (a) the subject matter of the expected testimony; (b) the witness's relationship to the Debtors; and (c) all Documents and Communications on which such witness has relied or will rely in connection with such testimony.

9. Identify each Cause of Action, Estate Claim or other claim or cause of action contemplated to be included in the Litigation Trust or the Litigation Trust Assets, and for each such claim or cause of action, state: (a) the nature and legal basis of the claim or cause of action; (b) the identity of each defendant or potential defendant; (c) the current status of any proceedings related thereto; and (d) the estimated value of the claim or cause of action.

10. Describe with particularity the Debtors' forecasted duration or timeline to monetize each Cause of Action, Estate Claim, or other claim or cause of action to be included in the Litigation Trust or the Litigation Trust Assets, and for each such claim or cause of action, state:

(a) the projected timeline for prosecution; (b) the forecasted amount of recoveries on such timeline; and (c) all assumptions underlying such forecasts.

11. Describe with particularity the Debtors' forecasted duration or timeline satisfy the First Return Threshold, the Second Return Threshold, and the Final Return Threshold, and for each such threshold, state all assumptions underlying such forecasts.

12. Identify each Administrative Expense Claim and Other Priority Claim to be satisfied prior to the Effective Date, and for each such claim, state: (a) the asserted amount of such claim; (b) the projected allowed amount of such claim; and (f) the Debtors' methodologies for estimating such allowed amount.

13. Describe with particularity whether the Special Committee (or any of its members) or the Debtors investigated whether any Prepetition Secured Parties or DIP Secured Parties engaged in prepetition conduct for which claims can be asserted against such parties, including: (a) the scope and nature of such investigation; (b) who conducted or directed such investigation; (c) the period of time covered by such investigation; (d) the conclusions reached; and (e) whether any claims were identified that could be asserted against such secured parties. If no such investigation was conducted, state the reasons why not.

14. Describe with particularity the Debtors' work and conclusions under applicable state law as to which Causes of Action, Estate Claims or other claims or causes of action may be transferred or contributed to the Litigation Trust or the Litigation Trust Assets, including (a) the specific state law analyses performed; (b) the identity of the professionals who performed such analyses; (c) the conclusions reached for each such claim or cause of action; and (d) any such claim or cause of action that the Debtors have determined cannot be transferred or foreclosed upon and the basis for such determination.

15.     Identify all uncollected prepetition receivables or invoices under the Third-Party Factoring arrangements for which the Debtors believe they have rights to obtain payment (without regard to whether such prepetition receivables were sold to a customer or third-party factor), including for each such receivable: (a) the receivable number; (b) the amount; (c) the date of the receivable; (d) the date payment was due; (e) any related credit memos; (f) the seller; (g) the account obligor; and (h) the number of days delinquent.

16.     Identify all Litigation Trust Class 1 Funding Contributors , and for each such contributor, state: (a) the name of the contributor; (b) the name and title of the representative communicating the commitment on behalf of each lender; (c) the amounts committed to fund by each contributor; (d) the terms and conditions of such funding commitment; (e) all documentary evidence supporting the fact that each contributor has committed to fund such amounts; and (f) the Debtors' assessment of, or concerns regarding, the risk of non-funding by any such contributor.

17.     Identify the total aggregate amount of anticipated fees and expenses of the DIP Collateral Trust.

18.     Identify the amount of Allowed DIP A Claims to be paid or satisfied from sources other than litigation recoveries, including: (a) the projected amounts and timing of such payments; and (c) the sources of repayment.

19.     Identify the total aggregate amount of anticipated Professional Fee Claims to be incurred from the Conditional Disclosure Statement Hearing to the Confirmation Hearing, and for each Professional Fee Claim, state: (a) the Professional and (b) the estimated amount of such Professional's Professional Fee Claim.

20.     Identify the total aggregate amount of anticipated professional fees to be incurred under Section 2.3(e) of the Plan, including: (a) the professionals anticipated to incur such fees, (b)

Case 25-90039 Document 329-1 Filed in TXSB on 07/24/26 Page 59 of 138

the estimated amount of fees to be incurred by each such professional, (c) any anticipated limitations on such compensation; and (d) the process for winding down professional engagements.

21. Describe with particularity the Debtors' assessment of when the Effective Date is reasonably likely to occur, including (a) the factual and legal bases for such assessment and (b) the criteria by which the Debtors propose that failure be determined.

22. Describe with particularity the Debtors' assessment of any Direct Creditor Claims that may be contributed to the Litigation Trust, including: (a) the identity of the holder of each such claim; (b) the estimated value of each such claim; and (c) the basis for such valuation.

23. State the Debtors' intent with respect to all claims against non-debtor affiliates, including: (a) whether such claims will be transferred to the Litigation Trust; (b) during the pendency of the post-Confirmation period, who has exclusive rights over all claims transferred to the Litigation Trust, including the right to determine whether to pursue, settle, or litigate such claims; and (c) the governance and oversight mechanisms applicable to the exercise of such rights.

24. Describe with particularity the Litigation Trust Backstop Commitments, including: (a) any commitment parties and (b) the amounts committed.

1760915099

# EXHIBIT 2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**DEBTORS' RESPONSES AND OBJECTIONS TO KATSUMI SERVICING, LLC'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable to the above-captioned proceeding by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), and other applicable law, First Brands Group LLC and its debtor affiliates ("**the Debtors**") by and through their undersigned counsel, hereby submits these responses and objections (the "**Responses**," and each specific response and objection, a "**Response**") to *Katsumi Servicing, LLC's First Request for Production of Documents From First Brands In Connection with the Plan and Disclosure Statement*, dated June 22, 2026 (the "**Requests**," and each specific request for documents, a "**Request**") issued by Katsumi (as defined in the Requests). The Debtors expressly reserve their rights to supplement, modify, revise, or correct the Responses herein at any time in accordance with the applicable rules.

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

**RESERVATION OF RIGHTS**

1.      With all of their rights expressly reserved, the Debtors respond to the Requests in good faith and in accordance with the Federal Rules, the Bankruptcy Rules, the Local Rules and/or any other rules, law, or court order governing the proper scope, timing, and extent of discovery in these proceedings.

2.      The Debtors submit the Responses subject to, without intending to waive, and expressly preserving: (a) any objections as to the competence, relevance, materiality, privilege, and/or admissibility into evidence of any Response herein or materials produced in response to any Request; (b) the right to object to other discovery procedures involving or relating to the subject matter of the Requests, the Responses, or documents produced in response to the Requests; (c) any objections to overbreadth, undue burden, vagueness, or ambiguity, and (d) the right to revise, correct, supplement, or clarify the Responses herein at any time.

3.      The Responses are made pursuant to and subject to the General Objections, Objections to Definitions, Objections to Instructions, and Specific Responses and Objections set forth herein.  The Debtors do not waive, and expressly preserve, all available objections.

4.      The Debtors do not admit, adopt, or acquiesce in any factual or legal contention, assertion, assumption, characterization, or implication contained in the Requests.  By responding and objecting to the Requests or producing documents in response to the Requests, the Debtors do not intend to waive, and do not waive, any defenses to the Requests or any other demand, subpoena, request, action, or any other case brought by Katsumi or any other party.

5.      Any document produced by the Debtors in response to the Requests does not constitute an admission or acknowledgement that any such Request is proper, that the information sought is relevant or admissible in any proceeding, or that requests for similar information will be

2

treated in a similar fashion. Whether the Debtors have produced documents or responded to any particular Request should not be interpreted as an admission that the Debtors accept or admit the existence of any fact(s) set out or assumed by such Request.

6.     None of the Responses shall be construed as admitting that the Debtors have in their possession, custody, or control any documents responsive to any Request. The Debtors do not represent that any responsive documents exist in response to any particular Request, but rather that they will undertake a reasonably diligent search across a reasonable universe of documents and produce non-privileged documents responsive to the Request (if any).

7.     The Debtors do not waive, and hereby assert and preserve, all applicable privileges and protections, including the attorney-client privilege, attorney-work-product doctrine, and any other applicable privilege or immunity.

8.     Any document produced by the Debtors in response to the Requests is produced pursuant to, and shall be subject to, the terms of the *Agreed Protective Order* (Dkt. 408) entered in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

## GENERAL OBJECTIONS

1.     These General Objections are applicable to the Requests in their entirety and are incorporated into each specific Response as if fully repeated therein. The Objections to Definitions and Objections to Instructions shall likewise apply equally to any definition, instruction, or Request that incorporates that definition or instruction. The Debtors reserve the right to assert additional objections to the Requests as necessary and/or appropriate.

2.     The Debtors object to the Requests insofar as they are overbroad, unduly burdensome, vague, ambiguous, redundant, harassing, or oppressive. The Debtors further object to the Requests to the extent they seek the production of information that is neither relevant nor

proportionate to the discovery needs of these Chapter 11 Cases, including with respect to confirmation of the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Dkt. No. 2981) (the "**Plan**"). The Debtors additionally object to the Requests to the extent they seek documents and communications that the Debtors have already produced to Katsumi or their counsel in connection with these Chapter 11 Cases.

3. The Debtors object to the Requests insofar as they seek the production of "all" or "any" documents and communications on the grounds that it is impracticable, overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases.

4. The Debtors object to the Requests to the extent that they call for the production of documents not within the Debtors' possession, custody, or control, or for the production of documents not obtainable by means of a reasonably diligent search proportionate to the discovery needs of these Chapter 11 Cases.

5. The Debtors object to the Requests to the extent that they call for the production of documents and the disclosure of information subject to: (a) the attorney-work-product doctrine; (b) the attorney-client privilege; (c) the common interest privilege; (d) the mediation privilege, and/or (e) any other applicable privilege, protection, or immunity from discovery. The Debtors reserve the right to redact any material covered by items (a) through (e) of this paragraph, as well as to demand the return and/or destruction of any document and all copies thereof that are protected by such privilege, rule, doctrine, or immunity.

6. The Debtors object to the Requests to the extent they call for the production of documents and the disclosure of information protected by the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364).

7. If the Debtors disclose any privileged information pursuant to the Requests, the disclosure is inadvertent and shall not constitute a waiver of the applicable privilege, rule, doctrine, immunity, or other protection.

8. The Debtors object to the Requests to the extent that any Request may be construed as seeking the disclosure of information that contains and/or constitutes private, confidential, financial, personal, commercial, competitively sensitive, or trade secret information made confidential by law or agreement, or other information of the Debtors or any third party. The Debtors further object to the Requests to the extent they call for the production of documents or information covered by a non-disclosure agreement or other contract barring dissemination.

9. The Debtors object to the Requests to the extent that they require any disclosure that may constitute a violation of any law or regulation.

10. The Debtors object to the Requests to the extent they seek information that is already in the possession, custody, or control of Katsumi and/or information that is in the public domain. The Debtors further object to the Requests to the extent they seek information that is not kept by the Debtors in the ordinary course of business including, but not limited to, data compilations.

11. The Debtors object to the Requests to the extent that they incorporate allegations, characterizations, and/or assertions that are disputed. The Debtors do not admit the correctness of any such allegations, characterizations, or assertions and the Responses and/or production of documents shall not be deemed an admission of any allegation, characterization, and/or assertion contained in the Requests.

12. The Debtors object to the Requests, including without limitation, the Definitions and Instructions contained therein, to the extent they purport to impose on the Debtors any

requirement or obligation greater than, different from, or otherwise inconsistent with those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

13.     The following Responses are made solely for the purpose of the Chapter 11 Cases and shall not be used with respect to any other matter, in any other proceeding, or for any other purpose whatsoever.

14.     The Debtors object to the Requests to the extent they seek legal conclusions or require the Debtors to form a legal conclusion to provide a response.

15.     The Debtors object to the Requests to the extent that they seek responses on a timeframe different from those imposed under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

16.     The Debtors hereby object and respond to the Requests to the best of their present knowledge and reserve their rights to revise, correct, amend, and/or supplement the Responses to the Requests.

### OBJECTIONS TO DEFINITIONS

1.     The Debtors object to the Definitions to the extent they purport to extend beyond a reasonable scope, define words beyond their ordinary meaning, and/or impose obligations beyond those contained in the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other rules, applicable law, or other court orders governing the proper scope, timing, and extent of discovery in this contested matter.  The Debtors will interpret the Requests reasonably and in good faith in accordance with common English usage and the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing and extent of discovery in the Plan.

2.        The Debtors object to Definition 9 ("Adversary Proceeding") as overbroad, unduly burdensome, vague, ambiguous, and not proportionate to the discovery needs of the Chapter 11 cases as the defined term purports to include "any adversary proceeding filed in, arising in, arising under, or related to the Chapter 11 Cases."

3.        The Debtors object to Definition 10 ("Communications") as overbroad, unduly burdensome, vague, ambiguous, and not proportionate to the discovery needs of these Chapter 11 Cases. The Debtors further object to Definition 10 to the extent that it purports to include the production of Communications that are protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364) or any other applicable privilege.

4.        The Debtors object to Definition 15 ("Chapter 11 Cases") as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases as the defined term purports to include "the cases under Chapter 7 of the Bankruptcy Code for the Evolution SPV Debtors" and "any Adversary Proceedings filed in connection with such Chapter 11 Cases."

5.        The Debtors object to Definition 16 ("concerning," "referencing," "regarding," "reflecting," "relating to," and "in connection with") and Definition 40 ("including") as overbroad, unduly burdensome, vague, and ambiguous to the extent they purport to impose discovery obligations beyond those set forth in the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing and extent of discovery in connection with confirmation of the Plan.

6.        The Debtors object to Definition 24 ("Debtors") as overbroad, unduly burdensome, vague, and ambiguous to the extent the term encompasses "employees, managers, officers,

directors, agents, representatives, subsidiaries, special purpose vehicles, and affiliates." The Debtors will interpret "Debtors" as referring to First Brands Group, LLC and its debtor affiliates in these Chapter 11 Cases. A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Claims and Noticing Agent as detailed herein at footnote 1.

7. The Debtors object to Definition 26 ("Documents") as overbroad, unduly burdensome, ambiguous, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent it purports to require the production of documents of "any kind of printed, recorded, written, graphic, or photographic matter (including tape recordings), however, printed, produced, reproduced, coded, or stored, of any kind or description, whether sent or received or not, including original copies, drafts, and both sides thereof, and including . . . computer programs, microfilms, microfiche, all other records kept by electronic, photographic, or mechanical means, and things similar to any of the foregoing," and to the extent it purports to include materials that are publicly available or not within the Debtors' possession, custody, or control, including to the extent it purports to require the production of documents "regardless of their authority, preparer, or origin[.]"

8. The Debtors object to Definition 37 ("First Brands") and Definition 68 ("You" or "Your") as overbroad, unduly burdensome, vague, and ambiguous to the extent the terms encompass "employees, managers, officers, directors, agents, subsidiaries, and special purpose vehicles." The Debtors will interpret "You" and "Your" as referring to the Debtors in these Chapter 11 Cases. The Debtors will interpret "Debtors" as referring to First Brands Group, LLC and its debtor affiliates in these Chapter 11 Cases. A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Claims and Noticing Agent as detailed herein at footnote 1.

8

## OBJECTIONS TO INSTRUCTIONS

1.      The Debtors object to the Instructions to the extent they purport to impose on the Debtors any obligation different from and/or broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing and extent of discovery.

2.      The Debtors object to Instruction No. 1 (defining the "Relevant Period" as September 1, 2025 through the present) as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases to the extent it purports to require responses covering a period that is not relevant or proportionate to confirmation of the Plan, and the Debtors further object to any Request that purports to seek information predating the Relevant Period.

3.      The Debtors object to Instruction No. 2 as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases to the extent it purports to require that the Debtors produce information outside their possession, custody, or control, including to documents held by the Debtors' "agent, representatives, advisors, or professionals." The Debtors further object to Instruction No. 2 to the extent it purports to require disclosures beyond what is reasonably known to the Debtors.

4.      The Debtors object to Instruction No. 3 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

5.      The Debtors object to Instruction No. 4 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of

9

the Court.  The Debtors further object to Instruction No. 4 to the extent that it purports to include the production of Documents and Communications that are protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege.

6.     The Debtors object to Instruction No. 5 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.  The Debtors further object to Instruction No. 5 to the extent that it purports to include the production of Documents and Communications that are protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege.

7.     The Debtors object to Instruction No. 6 as overbroad, unduly burdensome, ambiguous, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent it purports to require the production of "all drafts of Documents in addition to final versions of Documents."  The Debtors further object to Instruction No. 6 to the extent that it purports to include the production of Documents and Communications that are protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege.  The Debtors also object to the extent that this Instruction purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

8.     The Debtors object to Instruction No. 7 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal

10

Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court. Unless otherwise stated in the Debtors' Specific Objections and Responses to Document Requests herein, the Debtors will work in good faith to identify and produce responsive, non-privileged Documents and Communications for each Request, to the extent they exist.

9. The Debtors object to Instruction No. 9 to the extent that it calls for the generation of a privilege log with respect to documents that are subject to the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, mediation privilege, or which are otherwise protected from disclosure. The Debtors further object to Instruction No. 6 to the extent it seeks to impose on the Debtors any obligation different from and broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing, and extent of discovery needs of these Chapter 11 Cases.

10. The Debtors object to Instruction No. 10 to the extent that it calls for the generation of a privilege log with respect to documents that are subject to the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, mediation privilege, or which are otherwise protected from disclosure. The Debtors further object to Instruction No. 6 to the extent it seeks to impose on the Debtors any obligation different from and broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing, and extent of the discovery needs of these Chapter 11 Cases.

11. The Debtors object to Instruction No. 13 as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases to the extent it purports to require that the Debtors produce information outside their possession, custody, or control. The Debtors

11

further object to Instruction No. 13 to the extent it purports to require disclosures beyond what is reasonably known to the Debtors.  The Debtors further object to Instruction No. 13 to the extent that it calls for the generation of a privilege log with respect to documents that are subject to privilege, work product immunity or other immunity from discovery.  The Debtors further object to Instruction No. 13 to the extent it seeks to impose on the Debtors any obligation different from and broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing and extent of discovery in the Relevant Motions.

12.	The Debtors object to Instruction No. 14 to the extent it purports to impose on the Debtors obligations to perform anything more than a reasonable search for responsive Documents and information.  The Debtors further object to Instruction No. 14 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

13.	The Debtors object to Instruction No. 15 as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases to the extent it purports to require that the Debtors produce information outside their possession, custody, or control.  The Debtors further object to Instruction No. 15 to the extent it purports to require disclosures beyond what is reasonably known to the Debtors.  The Debtors also object to Instruction No. 15 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

## SPECIFIC RESPONSES AND OBJECTIONS

**REQUEST FOR PRODUCTION NO. 1**:

**All transcripts of any deposition (including exhibits thereto) taken in connection with the Chapter 11 Cases or any Adversary Proceeding, except for transcripts at which Katsumi or its undersigned counsel appeared.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including because the Request broadly seeks all deposition transcripts and exhibits without regard to relevance. The Debtors further object to this Request to the extent it seeks information outside the Debtors possession, custody, or control. The Debtors additionally object to this Request to the extent it seeks confidential or highly confidential information.

Subject to and without waiving any objections, the Debtors will produce non-privileged documents responsive to this Request that the Debtors are reasonably able to identify and collect.

**REQUEST FOR PRODUCTION NO. 2**:

**All responses to interrogatories or requests for admission (including all documents referenced therein or identified pursuant to Fed. R. Civ. P. Rule 33(d)) provided by any of the Debtors in connection with the Chapter 11 Cases or any Adversary Proceeding.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent it seeks "all responses to

13

interrogatories or requests for admission" and "all documents referenced therein," without regard to relevance to confirmation of the Plan.

Subject to and without waiving any objections, the Debtors will produce non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 3**:

**All Communications provided to or exchanged with the Examiner or the Examiner's professionals in connection with the Chapter 11 Cases or any Adversary Proceeding. This Request specifically includes all notes taken at any meeting with the Examiner or the Examiner's professionals and all notes documenting Communications provided to or exchanged with the Examiner or the Examiner's professionals.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request as seeking Documents and Communications expressly protected from disclosure by the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364). The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 4**:

All Documents produced to, provided to or exchanged with the Examiner or the Examiner's professionals in connection with the Chapter 11 Cases or any Adversary Proceeding, including any and all supplemental or additional Documents produced to, provided to or exchanged with the Examiner or the Examiner's professionals, whether based on further follow up, interviews, requests for further clarification or supplementation, or otherwise.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request as seeking Documents and Communications expressly protected from disclosure by the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364). The Debtors additionally object to this Request as directly seeking documents that are protected from production by the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364). The Debtors also object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are not aware of any non-privileged Documents or Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 5**:

All Documents and Communications exchanged among You and the DIP Secured Parties (or any of its members), the Ad Hoc Group (or any of its members), the Creditors' Committee (or any of its members), the Special Committee (or any of its members), or the ABL Lenders relating to the Premier Marketing Group Plan, the Premier Marketing Group

15

**Global Settlement, the Estate Claims Credit Bid Transaction, the Plan, or the Plan Settlement. The Documents and Communications responsive to this request include all communications relating to any terms or aspects of those plans, settlements or transactions, as well as all Communications reflecting negotiations of those plans, settlements or transactions. For the avoidance of doubt, this Request specifically includes (i) all Communications, Documents, summaries, charts or other information related to (in any respect) any Cause of Action, Estate Claim or other claim, cause of action, or asset to be included in, contributed to or otherwise retained for inclusion in the Litigation Trust or the Litigation Trust Assets and (ii) any and all Documents and Communications exchanged among the Debtors' financial advisors (or any personnel of the Debtors' financial advisors) and any other Person.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request as vague and ambiguous regarding the meaning of "relating to any terms or aspects of those plans, settlements or transactions," which is also overbroad and unduly burdensome. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 6**:

**All Documents and Communications relating to or referencing the Litigation Trust or the Litigation Trust Assets, including any Cause of Action, Estate Claim or other claim, cause of action, or asset to be included in, contributed to or otherwise retained in the**

**Litigation Trust or the Litigation Trust Assets, including any and all estimations, valuations, projections, forecasts, and lists (and any drafts of the foregoing) relating to the foregoing.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request to the extent it seeks documents and communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 7**:

**All Documents and Communications exchanged between You and Gerard Uzzi of Uzzi & Lall. This Request specifically includes any and all Documents and Communications exchanged among the Ad Hoc Group (or any of its members or respective professionals), the Special Committee (or any of its members or respective professionals) and/or the Creditors' Committee (or any of its members or respective professionals) and Gerard Uzzi of Uzzi & Lall on which Debtors or any of Debtors' representatives, counsel, financial advisors, or other professionals were copied, forwarded, or otherwise included as recipients.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents

and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are not aware of any non-privileged Documents or Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 8**:

**All Documents and Communications relating to "Adverse Conduct" as defined in the Plan, including any and all Communications relating to any assessment or conclusion regarding which Persons or Entities engaged in "Adverse Conduct."**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

18

**REQUEST FOR PRODUCTION NO. 9**:

All Documents and Communications identifying any Person or Entity that may be characterized as having engaged in Adverse Conduct.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection. The Debtors also object to this request as duplicative to the extent this Request seeks Documents requested by the Debtors in Request for Production No. 8.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 10**:

All Documents and Communications relating to substantive consolidation in connection with the Plan, including any and all Communications relating to any consideration of consolidating any Debtors for particular purposes, and any and all Communications relating to consolidation for purposes of any defenses to preference actions or other avoidance actions, whether in connection with the Preference Settlement or otherwise. This Request specifically includes all analyses, reports, assessments or investigations performed by Debtors or any of their professionals into the whether substantive consolidation of some or all of the Debtors is or was factually accurate or appropriate.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request to the extent it seeks documents and communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 11**:

**All Documents and Communications relating to the Estate Claims Marketing Process, including (i) all diligence materials provided to any potential bidders, prospective bidders, bidders, or other participants, including all Documents in the "data room"; (ii) all indications of interest received from any prospective bidder; (iii) all bids received; (iv) all indications of interest for any Estate Claims being sold; (v) all "teaser" materials or other information used to solicit potential or prospective bidders; (vi) any Documents or Communications provided to the Ad Hoc Group or the participants in the Estate Claims Credit Bid in connection with the Estate Claims; (vii) any Documents or Communications exchanged with any potential bidder, prospective bidders, or other participants; and (viii) any and all data rooms containing or purporting to contain any information regarding the assets, businesses, entities, operations, inventory, receivables or causes of action provided to prospective bidders or purchasers. This Request expressly includes any Documents and Communications provided to or exchanged with the Ad Hoc Group or other participants in the Estate Claims Marketing Process that are in any way connected to the Estate Claims Credit Bid Transaction or the Estate Claims.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the

Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 12**:

**All Documents and Communications relating to or referencing the "claims," "causes of action," "transactions," or consideration paid, in each instance without any limitation, as referenced by Charles M. Moore as described at Pages 24-25 and 131-132 of the transcript of the Conditional Disclosure Statement Hearing.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

21

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 13**:

**All Documents and Communications reviewed by or relied upon by Charles M. Moore in connection with reviewing and signing the Plan, the Disclosure Statement, or any declaration submitted in connection therewith, or in connection with providing testimony at the Conditional Disclosure Statement Hearing.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are willing to further meet and confer with Katsumi regarding this request.

**REQUEST FOR PRODUCTION NO. 14**:

**All Documents and Communications relating to or referencing the Special Committee Investigation.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the

discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 15**:

**All Communications between You and the Ad Hoc Group (or any of its members) or the DIP Secured Parties (or any of those parties) between September 1, 2025 and September 28, 2025.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Communications not relevant to confirmation of the Plan and seeks "all" Communications. The Debtors additionally object to this Request to the extent it seeks Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

23

**REQUEST FOR PRODUCTION NO. 16**:

All Documents and Communications produced to any other Person in connection with the Confirmation Hearing or the Conditional Disclosure Statement Hearing.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 17**:

All Documents and Communications on which the Debtors intend to rely at the Confirmation Hearing.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as premature to the extent it purports to require that the Debtors produce the documentary evidence on which the Debtors intend to rely in connection with the Confirmation Hearing in advance of the applicable deadlines. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client

24

privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will provide Documents and Communications responsive to this request on their witness and exhibit list to be filed in connection with the Confirmation Hearing.

**REQUEST FOR PRODUCTION NO. 18**:

**All Documents and Communications on which any witness called by the Debtors has relied on or will rely on in connection with any testimony relating to the Confirmation Hearing, including any and all Documents and Communications on which any such witness shall be called to testify regarding any Cause of Action, Estate Claim or other claim, cause of action, or asset to be included in, contributed to or otherwise retained for inclusion in the Litigation Trust or the Litigation Trust Assets.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as premature to the extent it purports to require that the Debtors produce the documentary evidence on which the Debtors intend to rely in connection with the Confirmation Hearing in advance of the applicable deadlines. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will provide Documents and Communications responsive to this request on their witness and exhibit list to be filed in connection with the Confirmation Hearing.

25

**REQUEST FOR PRODUCTION NO. 19**:

All Documents and Communications relating to, reflecting, or forming the basis for the Debtors' statement on Page 27 of the Disclosure Statement that "Based on the FBG Debtors' reasonable estimates, the FBG Debtors are estimating that the Effective Date is reasonably likely to occur in the second half of 2028, although the Effective Date may reasonably or in fact occur earlier or later than the second half of 2028."

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request to the extent it seeks documents and communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 20**:

All Documents and Communications relating to, reflecting, constituting, or forming the basis for related to when the Effective Date is reasonably likely to occur. This Request includes all such analyses, estimates, projections, forecasts or other information prepared by any plan proponent or its respective professionals.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the

26

discovery needs of these Chapter 11 Cases including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request to the extent it seeks documents and communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection. The Debtors also object to this request as duplicative to the extent this Request seeks Documents requested by Katsumi in Request for Production No. 19.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 21**:

**All Documents and Communications relating to the ABL Collateral Trust Assets, including all Communications relating to the exclusion of assets therefrom. This Request specifically includes any summaries, notes, accountings, or assessments relating to outstanding receivables or invoices that remain uncollected and the Debtors' interests (or purported) interests therein.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request to the extent it seeks documents and communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged

Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 22**:

**All Documents and Communications relating to the Preference Settlement as defined in the Plan, including any and all Communications relating to eligibility to participate in the Preference Settlement, the benefits afforded to Preference Settlement Electing Creditors, the releases to be granted by Preference Settlement Electing Creditors under Section 13.5(b) of the Plan, the contribution of Direct Creditor Claims to the Litigation Trust, and the governance, procedures and protections applicable to the prosecution of Preference Actions.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to

Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the

Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the

discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents

and Communications not relevant to confirmation of the Plan and seeks "all" Documents and

Communications. The Debtors further object to this Request to the extent it seeks documents and

communications protected by the attorney-client privilege, work product doctrine, common

interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the

Debtors

Subject to and without waiving any objections, the Debtors will produce non-privileged

Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 23**:

**All Documents and Communications comprising or relating to the Plan Supplement or any document, materials, agreements constituting to be contained in the Plan Supplement, including the schedule of Specified Non-Released Parties and any and all Communications regarding the composition of such schedule and assessments and determinations regarding which Persons are included in such schedule.**

28

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request to the extent it seeks documents and communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection, including the request for all Communications regarding the composition of such schedule and assessments and determinations regarding which Persons are included in such schedule.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 24**:

**All Documents and Communications relating to the conditions precedent to the occurrence of the Effective Date set forth in Section 12.1(o) of the Plan, including Documents and Communications sufficient to show any facts, circumstances, or contingencies presently known that may prevent or delay the satisfaction of such condition.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and

Communications. The Debtors further object to this Request to the extent it seeks documents and communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection. The Debtors also object to this request as duplicative to the extent this Request seeks Documents requested by Katsumi in Requests for Production Nos. 19 and 20.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 25**:

**All Documents and Communications relating to the Debtors' assessment, analysis, or consideration of the consequences of nonoccurrence of the Effective Date, including (i) any steps, actions, or processes that would need to be taken to reverse, unwind, or otherwise remediate the effects of actions already undertaken in furtherance of the Plan or the Effective Date, (ii) any contingency planning or proposed remedial solutions in the event the Effective Date does not occur within a reasonable period following the projected date of occurrence, and (ii) any analysis of the procedural, operational, or legal implications of such nonoccurrence, including the identification of all transactions, transfers, or other actions that would need to be reversed or unwound.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request to the extent it seeks documents and communications protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection, including Katsumi's request for analyses related to contingency planning, unwinding, and the procedural, operation, or legal implications of such nonoccurrence.

The Debtors also object to this request as duplicative to the extent this Request seeks Documents requested by Katsumi in Requests for Production Nos. 19, 20, and 24. The Debtors further object to this Request as containing multiple discrete subparts that should be counted as separate Requests.

Subject to and without waiving any objections, the Debtors are not aware of any non-privileged Documents or Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 26**:

**To the extent the Debtors or any plan proponent contends that Debtors' prepetition management and/or the operations of any or all of the Receivables Sellers observed, maintained, complied with or otherwise respected the separateness or corporate formalities of any Receivables Sellers, all Documents or Communications referencing, related to or otherwise identifying Debtors' prepetition actions, communications or business practices relating to the prepetition treatment of those corporate formalities, including:**

a. **All minutes of any prepetition meeting of the board of directors or managers (or any committee or sub-committee thereof) of the Receivables Sellers;**
b. **All Documents evidencing the transactions conducted in the bank accounts of each Receivables Seller, in each case sufficient to show when and from whom payments and receipts of monies were received, to whom such payments and receipts were directed, and how such payments and receipts were used;**
c. **All Documents evidencing how proceeds from the purchase of receivables by Katsumi and the other Factors were used, distributed or applied by First Brands or its prepetition management (or any Entities controlled by prepetition management) from and after January 1, 2023 through the Petition Date, including any and all Documents sufficient to identify which Debtor and non-Debtor entities' obligations such proceeds were applied to, used for, directed to, or expended on.**
d. **Documents supporting the Debtors' or any plan proponent's contention that the Receivables Sellers respected their corporate formalities with regard to the use of assets, including expenditures paid and payments or distributions of cash by such Receivables Sellers relating to or for obligations of other Debtors;**
e. **Any and all Documents sufficient to track or trace the use of cash from the Debtors' accounts in which any proceeds from sales of receivables by the Receivables Sellers was deposited, wired or transferred; and**
f. **All Documents and Communications that constitute, contain, reference or relate to Debtors' or any of their professionals' analysis, assessment, or investigation of the Debtors' use of cash or proceeds resulting from any Factor's purchase of receivables from June 2022 through and including the Petition Date.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan, seeks "all" Documents and Communications, and to the extent it requires the Debtors to produce information outside their possession, custody, or control, including to the extent Katsumi requests the Debtors produce documents held by the plan proponents. The Debtors further object to this Request to the extent it seeks documents and communications protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. The Debtors further object to this Request as containing multiple discrete subparts that should be counted as separate Requests. The Debtors also object to the extent that Katsumi's Request for "all Documents sufficient to track or trace the use of cash from the Debtors' accounts in which any proceeds from sales of receivables by the Receivables Sellers was deposited, wired, or transferred," is impractical and overly burdensome to produce in its entirety prior to the Confirmation Hearing. The Debtors also object to this Request to the extent it requires the Debtors to take a position regarding whether Debtors' prepetition management and/or the operations of any or all of the Receivables Sellers observed, maintained, complied with or otherwise respected the separateness or corporate formalities of any Receivables Sellers. The Debtors do not take a position with respect to separateness or corporate formalities in these Responses.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 27**:

All Documents and Communications relating to the segregation of invoices, receipts or collections in respect of any Third-Party Factoring (as defined in the Disclosure Statement) arrangements from September 1, 2025 through September 28, 2025.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent it seeks documents and information not relevant for the discovery needs of these Chapter 11 Cases as confirmation does not turn on the collection of the factored receivables and to the extent this Request seeks "all" Documents and Communications. The Debtors further object to this Request to the extent it seeks documents and communications protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 28**:

All Documents and Communications purporting to preserve privilege of any kind (including common interest, joint defense protection, mediation privilege or otherwise), confidentiality, or otherwise protect from disclosure any Documents or Communications exchanged among or between the Debtors, the DIP Secured Parties (or any of their members), the Prepetition Secured Parties (or any of their members), the Ad Hoc Group (or any of its members), the ABL Lenders, and/or Creditors' Committee (or any of its members), including any written agreements, protocols, confidentiality undertakings, common interest agreements, joint defense agreements, mediation agreements, or other arrangements governing information sharing among any such parties.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the

Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the

discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents

and Communications not relevant to confirmation of the Plan and seeks "all" Documents and

Communications. The Debtors further object to this Request to the extent it seeks documents and

communications protected by the attorney-client privilege, work product doctrine, or any other

applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged

Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 29**:

**All Documents and Communications relating to (i) the amount, timing, or likelihood of recoveries or distributions under or from the Litigation Trust, the Litigation Trust Assets, the DIP Collateral Trust, the DIP Collateral Trust Assets, the ABL Collateral Trust, the ABL Collateral Trust Assets, or the Estate Claims; (ii) the time required to satisfy DIP A Claims, Roll-Up Claims, Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, First Lien Claims, Second Lien Claims, ABL Claims, General Unsecured Claims, or Subordinated Claims; or (iii) the timing or likelihood of the occurrence of the Effective Date.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to

Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the

Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the

discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents

and Communications not relevant to confirmation of the Plan and seeks "all" Documents and

Communications. The Debtors further object to this Request to the extent it seeks documents and

communications protected by attorney-client privilege, work product doctrine, common interest

privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors

and the Examiner (Dkt. 1364), or any other applicable privilege or protection. The Debtors further

34

object to this Request as containing multiple discrete subparts that should be counted as separate Requests.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 30**:

**All Documents and Communications relating to the Litigation Trust Cash Funding, Initial Litigation Trust Funding Commitments, Litigation Trust Backstop Commitments, Additional Litigation Trust Funding, Litigation Trust Funding Agreements, DIP Collateral Trust Funding, DIP Collateral Trust Funding Contributors, or any actual or potential financing, funding, backstop, commitment, contribution, draw, default, decline-to-fund determination, or replacement funding source for the Litigation Trust or the DIP Collateral Trust, including any Documents or Communications concerning efforts to raise, syndicate, allocate, backstop, approve, document, enforce, or decline any such funding.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request to the extent it seeks documents and communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection. The Debtors also object to this request as duplicative to the extent this Request seeks Documents requested by the Debtors in Requests for Production Nos. 6 and 29.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 31**:

All Documents and Communications relating to or forming the basis for any responses to Katsumi Servicing, LLC's First Set of Interrogatories to First Brands in Connection with the Plan and Disclosure Statement served on First Brands on or about the date hereof.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request to the extent it seeks documents and communications protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce those non-privileged documents that the Debtors specifically reference in its responses to *Katsumi Servicing, LLC's First Set of Interrogatories to First Brands in Connection with the Plan and Disclosure Statement* served on July 10, 2026.

Dated: July 10, 2026
       Houston, Texas

/s/ Clifford W. Carlson
**WEIL, GOTSHAL & MANGES LLP**
Clifford W. Carlson (2490024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Clifford.Carlson@weil.com

-and-

Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Robert S. Berezin (admitted *pro hac vice*)
Theodore E. Tsekerides (admitted pro hac vice)
Christine A. Calabrese (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
       Sunny.Singh@weil.com
       Robert.Berezin@weil.com
       Theodore.Tsekerides@weil.com
       Christine.Calabrese@weil.com

*Attorneys for Debtors and Debtors in Possession*

37

## CERTIFICATE OF SERVICE

I hereby certify that, on July 10, 2026, I caused the foregoing to be served upon counsel of record via electronic mail.


/s/ Christine A. Calabrese
Christine A. Calabrese

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| | § | |
| **Debtors.[1]** | § | |

**DEBTORS' RESPONSES AND OBJECTIONS TO KATSUMI SERVICING, LLC'S**
**FIRST SET OF INTERROGATORIES TO FIRST BRANDS**
**IN CONNECTION WITH THE PLAN AND DISCLOSURE STATEMENT**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable to the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") through Rules 7026, 7033, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), and other applicable law, First Brands Group, LLC and its debtor affiliates (collectively, the "**Debtors**"), by and through their undersigned counsel, hereby submit these responses and objections (the "**Responses**," and each specific response and objection, a "**Response**") to Katsumi Servicing, LLC's ("**Katsumi**") First Set of Interrogatories to First Brands in Connection with the Plan and Disclosure Statement, dated June 22, 2026 (the "**Interrogatories**," and each specific interrogatory, an "**Interrogatory**"). The Debtors expressly reserve their right to supplement, modify, revise, or correct the Responses herein at any time in accordance with the applicable rules.

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

## <u>RESERVATION OF RIGHTS</u>

1. With all of their rights expressly reserved, the Debtors respond to the Interrogatories in good faith and in accordance with the Federal Rules, the Bankruptcy Rules, the Local Rules and/or any other rules, law, or court order governing the proper scope, timing, and extent of discovery in these proceedings. The following Responses are made for the sole purpose of the above-captioned proceeding.

2. The Debtors submit the Responses subject to, without intending to waive, and expressly preserving: (a) any objections as to the competence, relevance, materiality, privilege, and/or admissibility into evidence of any response herein or materials produced in response to any Interrogatory; (b) the right to object to other discovery procedures involving or relating to the subject matter of the Interrogatories, the Responses, or documents produced in response to the Interrogatories; (c) any objections to overbreadth, undue burden, vagueness, or ambiguity, and (d) the right to revise, correct, supplement, or clarify the Responses at any time.

3. The Responses are made pursuant to and subject to the General Objections, Objections to Definitions, Objections to Instructions, and Specific Responses and Objections set forth herein. The Debtors do not waive, and expressly preserve, all available objections.

4. The Debtors do not admit, adopt, or acquiesce in any factual or legal contention, assertion, assumption, characterization, or implication contained in the Interrogatories. By producing documents (if any) in response to the Interrogatories, the Debtors do not intend to waive, and do not waive, any defenses to the Interrogatories or any other demand, subpoena, request, or action.

5. Any document produced by the Debtors in response to the Interrogatories does not constitute an admission or acknowledgement that any such Interrogatory is proper, that the

2

information sought is relevant or admissible in any proceeding, or that requests for similar information will be treated in a similar fashion. Whether the Debtors have produced documents or objected to any particular Interrogatory should not be interpreted as an admission that the Debtors accept or admit the existence of any fact(s) set out or assumed by such Interrogatory.

6. None of the Responses shall be construed as admitting that the Debtors have in their possession, custody, or control any documents or information responsive to any Interrogatory unless expressly stated.

7. The Debtors do not waive, and hereby assert and preserve, all applicable privileges and protections, including the attorney-client privilege, attorney-work-product doctrine, and any other applicable privilege or immunity.

8. Any documents that the Debtors may produce in response to the Interrogatories are produced pursuant to, and shall be subject to, the terms of the *Agreed Protective Order* (Dkt. 408) (the "**Protective Order**") entered in the Chapter 11 Cases.

## GENERAL OBJECTIONS

1. These General Objections are applicable to the Interrogatories in their entirety and are incorporated into each specific Response as if fully repeated therein. The Objections to Definitions and Objections to Instructions shall likewise apply equally to any instruction, definition, or Interrogatory that incorporates that instruction or definition. The Debtors reserve the right to assert additional objections to the Interrogatories as necessary and/or appropriate.

2. The Debtors object to the Interrogatories insofar as they are overbroad, unduly burdensome, vague, ambiguous, redundant, harassing, or oppressive. The Debtors further object to the Interrogatories as seeking information that is neither relevant nor proportionate to the discovery needs of the combined hearing detailed in the Scheduling Order (the "**Confirmation**

**Hearing**"), including with respect to confirmation of the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Dkt. 3019] (the "**Plan**") and approval of the related *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Dkt. 3020] (the "**Disclosure Statement**").

3. The Debtors object to the Interrogatories insofar as they seek the information contained in, or the production of, "all" or "any" Documents and Communications on the grounds that it is impracticable, overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing.

4. The Debtors object to the Interrogatories to the extent that they call for the production of documents not within the Debtors' possession, custody, or control, or for the production of documents not obtainable by means of a reasonably diligent search proportional to the discovery needs for litigating the confirmation of the Plan.

5. The Debtors object to the Interrogatories to the extent that they call for the production of documents and the disclosure of information subject to: (a) the attorney-work-product doctrine; (b) the attorney-client privilege; (c) the common interest privilege; (d) the mediation privilege; and/or (e) any other applicable privilege, protection, or immunity from discovery. The Debtors reserve the right to redact any material covered by items (a) through (e) of this paragraph, as well as to demand the return and/or destruction of any document and all copies thereof that are protected by such privilege, rule, doctrine, or immunity.

6. If the Debtors disclose any privileged information pursuant to the Interrogatories, the disclosure is inadvertent and shall not constitute a waiver of the applicable privilege, rule, doctrine, immunity, or other protection.

7.      The Debtors object to the Interrogatories to the extent that any Interrogatory may be construed as seeking the disclosure of information that contains and/or constitutes private, confidential, financial, personal, commercial, competitively sensitive, or trade secret information made confidential by law or agreement, or other information of the Debtors or any third party.  The Debtors further object to the Interrogatories to the extent they call for the production of Documents or information covered by a non-disclosure agreement, confidentiality agreement, protective order, or other contract barring or limiting dissemination.

8.      The Debtors object to the Interrogatories to the extent that any Interrogatory may be construed as seeking the disclosure of information covered by the Protective Order.

9.      The Debtors object to the Interrogatories to the extent that they require any disclosure that may constitute a violation of any law or regulation.

10.      The Debtors object to the Interrogatories to the extent they seek information that is already in the possession, custody, or control of Katsumi and/or information that is in the public domain.  The Debtors further object to the Interrogatories to the extent they seek information that is not kept by the Debtors in the ordinary course of business.  And the Debtors object to the Interrogatories to the extent they purport to seek the creation of Documents or data compilations that are not created and/or are kept in the Debtors' ordinary course of business.

11.      The Debtors object to the Interrogatories to the extent that they incorporate allegations, characterizations, and/or assertions that are disputed.  The Debtors do not admit the correctness of any such allegations, characterizations, or assertions and the Debtors' responses, objections, and/or production of documents shall not be deemed an admission of any allegation, characterization, and/or assertion contained in the Interrogatories.

12. The Debtors object to the Interrogatories to the extent they seek legal conclusions or require the Debtors to form a legal conclusion to provide a response.

13. The Debtors object to the Interrogatories, including the instructions and definitions contained therein, to the extent that they purport to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

14. Any response to the Interrogatories is made solely for the purpose of this contested matter and shall not be used with respect to any other matter, in any other proceeding, or for any other purpose whatsoever.

15. The Debtors hereby object and respond to the Interrogatories to the best of their present knowledge and reserve their rights to revise, correct, amend, and/or supplement the Responses to the Interrogatories.

16. The Debtors object to the Interrogatories, and to the Instructions, to the extent they purport to require information or document production on a timeline that is not established by, and that is inconsistent with, the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan, (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing, (III) Establishing Solicitation and Voting Procedures, (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt-In Procedures, (V) Establishing Preference Settlement Notice and Opt-In Procedures, (VI) Establishing Notice and Objection Procedures for Confirmation of Plan, and (VII) Granting Related Relief* [Dkt. 2990] (the "**Scheduling Order**"), the Federal Rules, the Bankruptcy Rules, and the Local Rules, including to the extent the Interrogatories purport to require that verified answers be served by July 9, 2026.

6

17. The Debtors further object to the Interrogatories, and to the Instructions, to the extent they are not proportionate to the discovery needs of the Confirmation Hearing.

18. The Debtors object to the Interrogatories to the extent they seek the disclosure of mediation information protected by the *Agreed Mediation Orders* [Dkt. Nos. 1822, 2005, 2186]. The Debtors will not produce any such mediation information.

19. The Debtors respond to the Interrogatories solely on behalf of the Debtors and debtors in possession in the above-captioned chapter 11 cases, and will produce responsive, non-privileged Documents within the Debtors' possession, custody, or control. Notwithstanding the definition of "Debtors," "You," and "Your," the Debtors do not respond on behalf of, and do not purport to speak for, the estates of any SPV Debtors whose chapter 11 cases have been converted to cases under chapter 7 or any chapter 7 trustee therefor, the Examiner, the Creditors' Committee, the DIP Secured Parties, the ABL Secured Parties, the Ad Hoc Group, or any other Person, each of which is a separate party in interest, and the Debtors do not undertake to produce Documents within the possession, custody, or control of any such separate party that are not also within the Debtors' possession, custody, or control.

20. Where the Debtors state in a Response that they will produce Documents, or will answer by producing documents pursuant to Rule 33(d) of the Federal Rules, the Debtors will produce responsive, non-privileged Documents within their possession, custody, or control as described in that Response, and, except as expressly stated therein, are withholding from production Documents responsive to that Interrogatory on the basis of the objections asserted herein.

21. The Debtors also object to these Interrogatories to the extent they purport to impose any additional burden of proof on the Debtors.

22.     The verification of these Interrogatories provided by Charles M. Moore excludes any purely legal issues, including analyses related to privilege and the legal interpretation of the Plan.

## OBJECTIONS TO INSTRUCTIONS

1.      The Debtors object to the Instructions to the extent they purport to impose on the Debtors any obligation different from and/or broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law, or court orders governing the proper scope, timing, and extent of discovery in connection with confirmation of the Plan.

2.      The Debtors object to Instruction No. 1 (defining the "Relevant Period" as September 1, 2025 through the present) as overbroad, unduly burdensome, and disproportionate to the discovery needs for litigating the confirmation of the Plan to the extent it purports to require responses covering a period that is not relevant or proportionate to confirmation of the Plan, and the Debtors further object to any Interrogatory that purports to seek information predating the Relevant Period, including Interrogatory No. 6, which purports to reach back to January 1, 2023.

3.      The Debtors object to Instruction No. 2 to the extent it purports to impose any requirement greater than or different from those required under Rule 33 of the Federal Rules. Subject to and without waiving their objections, the Debtors will serve verified answers in accordance with Rule 33 of the Federal Rules.

4.      The Debtors object to Instruction No. 3 to the extent it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, and the Local Rules, including any obligation to describe efforts to obtain information beyond what those rules require.

8

5.      The Debtors object to Instruction No. 5 to the extent it purports to require the Debtors to identify withheld information or to provide a privilege log or other showing greater than or different from that required by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable orders of the Court, including with respect to information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, or the joint defense privilege.

6.      The Debtors object to Instruction No. 6 to the extent it purports to impose requirements greater than or different from those permitted under Rule 33(d) of the Federal Rules. The Debtors reserve the right to answer any Interrogatory by specifying and producing business records in accordance with Rule 33(d) of the Federal Rules.

7.      The Debtors object to Instruction No. 8 (construing "and" and "or" disjunctively or conjunctively, and as broadly as necessary) as overbroad, unduly burdensome, vague, and ambiguous to the extent it purports to expand the scope of any Interrogatory beyond what is relevant and proportionate to confirmation of the Plan.

8.      The Debtors object to Instruction No. 9 to the extent it purports to impose any continuing or supplemental obligation greater than or different from that provided for under Rule 26(e) of the Federal Rules.

## OBJECTIONS TO DEFINITIONS

1.      The Debtors object to the Definitions to the extent they purport to extend beyond a reasonable scope and/or the natural meaning of the terms defined therein. The Debtors will interpret the Interrogatories reasonably and in good faith in accordance with common English usage and the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules,

9

case law, or court orders governing the proper scope, timing, and extent of discovery in connection with confirmation of the Plan.

2.     The Debtors object to Definition No. 6 ("Communications") as overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the discovery needs for litigating the confirmation of the Plan, and to the extent it purports to encompass Communications protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege, protection, or immunity from discovery.

3.     The Debtors object to Definition No. 9 ("Chapter 11 Cases") as overbroad and disproportionate to the discovery needs for litigating the confirmation of the Plan to the extent it purports to encompass the chapter 7 cases of the Evolution SPV Debtors and any Adversary Proceedings, and thereby to seek information concerning matters and parties on whose behalf the Debtors do not respond and that are not within the Debtors' possession, custody, or control.

4.     The Debtors object to Definition No. 10 (defining "concerning," "referencing," "regarding," "reflecting," "relating to," and "in connection with") and Definition No. 26 (defining "including") as overbroad, unduly burdensome, vague, and ambiguous to the extent they purport to impose discovery obligations beyond those set forth in the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law, or court orders governing the proper scope, timing, and extent of discovery in connection with confirmation of the Plan.

5.     The Debtors object to Definition No. 13 ("Debtors"), Definition No. 24 ("First Brands"), Definition No. 43 ("You" or "Your"), and Definition No. 31 ("Person") as overbroad, unduly burdensome, vague, and ambiguous, and as disproportionate to the discovery needs for litigating the confirmation of the Plan, to the extent they purport to encompass employees,

10

managers, officers, directors, agents, representatives, subsidiaries, special purpose vehicles, non-debtor affiliates, or any other Person purporting to act on behalf of any such party, and thereby purport to require the Debtors to search for or provide information or Documents that are not within the Debtors' possession, custody, or control, including the information and Documents of separately represented parties. As set forth in the General Objections, the Debtors respond solely on behalf of the FBG Debtors and debtors in possession in these chapter 11 cases.

6. The Debtors object to Definition No. 33 ("Plan") and Definition No. 16 ("Disclosure Statement") to the extent they refer to and incorporate superseded versions of those documents. The operative Plan is the Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors [Dkt. 3019] (the "Plan"), and the operative disclosure statement is the related Disclosure Statement [Dkt. 3020] (the "Disclosure Statement"), and the Debtors respond to the Interrogatories by reference to those operative documents, as each may be further amended, supplemented, or otherwise modified.

7. The Debtors object to Definition No. 17 ("Documents") as overbroad, unduly burdensome, and disproportionate to the discovery needs for litigating the confirmation of the Plan, including to the extent it purports to require the identification or production of drafts, non-identical copies, notes, work papers, and similar materials, and to the extent it purports to include materials that are publicly available, protected from disclosure, or not within the Debtors' possession, custody, or control.

### SPECIFIC OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1**:

**Identify each Person who participated in, was consulted regarding, or has knowledge of the negotiation, drafting, or formulation of the Plan, the Plan Settlement, the Premier Marketing Group Plan, or the Premier Marketing Group Global Settlement, including each such Person's role and the subject matter of such Person's knowledge.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as overbroad and unduly burdensome because it purports to require that the Debtors identify "*each Person*," which is neither relevant nor proportionate to the discovery needs of the Confirmation Hearing. The Debtors further object to this Interrogatory as vague and ambiguous to the extent it refers to the "Premier Marketing Group Plan" and the "Premier Marketing Group Global Settlement," which the Interrogatories define by reference to a separate plan document and which are not the Plan or the Plan Settlement that are the subject of these Interrogatories. The Debtors further object to this Interrogatory on the grounds that it seeks information protected by the mediation privilege, including in seeking "each Person's role and the subject matter of such Person's knowledge." The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, or any other applicable privilege, protection, or immunity from discovery. Subject to the foregoing objections, the Debtors will not respond to this Interrogatory.

**INTERROGATORY NO. 2**:

**Identify each Person who participated in, was consulted regarding, or has knowledge of the Estate Claims Marketing Process, including the role of each such Person and the dates of such Person's involvement.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as overbroad and unduly burdensome because it purports to

12

require that the Debtors identify "*each Person*," which is neither relevant nor proportionate to the discovery needs of the Confirmation Hearing.  The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege, including to the extent it purports to require that the Debtors provide "the role of each such Person and the dates of such Person's involvement."

Subject to and without waiving any objections, the Debtors respond as follows: pursuant to Rule 33(d) of the Federal Rules, the Debtors will produce responsive non-privileged Documents and Communications concerning the Estate Claims Marketing Process from which non-privileged responsive information may be derived.

**INTERROGATORY NO. 3**:

**Identify each Person or Entity that First Brands contends engaged in Adverse Conduct, and for each such Person or Entity, describe with particularity: (a) the specific conduct that constitutes Adverse Conduct; (b) the date(s) on which such conduct occurred; (c) how and when First Brands became aware of such conduct; and (d) any investigation or analysis undertaken by First Brands or its professionals to assess whether such conduct constitutes Adverse Conduct.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory.  The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.  The Debtors further object to this

13

Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing, including to the extent it purports to require that the Debtors "describe with particularity" the information requested in subparts (a)-(d). The Debtors further object to this Interrogatory to the extent it seeks information that is a matter of public record or otherwise equally available to Katsumi. The Debtors also object to this Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing, including because the definition of Adverse Conduct, in connection with the Specified Non-Released Parties, must be "determined by a Final Order of the Bankruptcy Court." The Debtors further object to this Interrogatory as containing multiple discrete subparts that should be counted as separate interrogatories.

Subject to and without waiving any objections, the Debtors respond as follows: information responsive to this Interrogatory can be determined by reviewing the adversary proceedings that the Debtors have filed in connection with these Chapter 11 Cases and the Specified Non-Released Parties Schedule (Plan Supplement Exhibit 8 [Dkt. 3046-8]). In addition, Information informing a response to this Interrogatory will be reflected in witness declarations to be filed in prosecution of the Plan, and materials underlying those declarations will be produced on a rolling basis thereafter. In responding to this Interrogatory, the Debtors are not waiving their right to file additional or supplemental declarations thereafter.

**INTERROGATORY NO. 4**:

**Identify each Cause of Action, Estate Claim or other claim or cause of action to be included in, contributed to, or otherwise retained for inclusion in the Litigation Trust or the Litigation Trust Assets, and for each such Cause of Action, Estate Claim or other claim or cause of action, state: (a) the nature and legal basis of the claim; (b) the parties against whom the claim may be asserted; (c) the estimated value of the claim; (d) the methodology used to arrive at such valuation; and (e) the Person(s) who performed or directed such valuation.**

14

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors additionally object to this Interrogatory to the extent it seeks information that is publicly available. For example, the Causes of Action, Estate Claims, and other claims and causes of action to be transferred to, contributed to, or retained for the Litigation Trust are identified in the Schedule of Retained Causes of Action (Plan Supplement Exhibit 1 [Dkt. 3046-1]), which preserves such claims on a non-exclusive basis pursuant to section 1123(b)(3) of the Bankruptcy Code, and in the Litigation Trust Agreement (Plan Supplement Exhibit 4 [Dkt. 3046-4]). The Debtors further object to this Interrogatory as containing multiple discrete subparts that should be counted as separate interrogatories.

Subject to and without waiving any objections, the Debtors respond as follows: the Causes of Action, Estate Claims, and other claims and causes of action to be transferred to, contributed to, or retained for the Litigation Trust are identified in the Schedule of Retained Causes of Action (Plan Supplement Exhibit 1 [Dkt. 3046-1]), which preserves such claims on a non-exclusive basis pursuant to section 1123(b)(3) of the Bankruptcy Code, and in the Litigation Trust Agreement (Plan Supplement Exhibit 4 [Dkt. 3046-4]). Information informing a response to this Interrogatory will be reflected in witness declarations to be filed in prosecution of the Plan, and materials

15

underlying those declarations will be produced on a rolling basis thereafter. In responding to this Interrogatory, the Debtors are not waiving their right to file additional or supplemental declarations thereafter.

**INTERROGATORY NO. 5**:

Identify all outstanding receivables or invoices that remain uncollected and are related to any Third-Party Factoring arrangement, including: (a) the identity of each obligor; (b) the amount outstanding; (c) the current status of collection efforts; and (d) the Debtors' assessment of the collectability of such receivables.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as seeking information that is overbroad, unduly burdensome, and neither relevant nor proportionate to the discovery needs of the Confirmation Hearing. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors also object to this Interrogatory to the extent it seeks information that is more appropriate to seek through a different discovery mechanism. The Debtors further object to this Interrogatory to the extent it seeks information that is not in the Debtors' possession, custody, or control and/or already in Katsumi's possession, custody, or control. The Debtors further object to this Interrogatory as containing multiple discrete subparts that should be counted as separate interrogatories.

Subject to and without waiving any objections, the Debtors respond as follows: pursuant to Rule 33(d) of the Federal Rules, the Debtors will produce responsive non-privileged documents concerning the Third-Party Factoring arrangement that are within the Debtors' possession,

16

custody, or control and from which any non-privileged information requested by subparts (a) through (d) may be derived, to the extent such records exist and can be discovered without undue burden.

**INTERROGATORY NO. 6**:

**Describe with particularity how proceeds from the purchase of receivables by Katsumi and the other Factors were used, distributed, or applied by First Brands or its prepetition management (or any Entities controlled by prepetition management) from January 1, 2023 through the Petition Date, including the identity of each Debtor and non-Debtor entity whose obligations such proceeds were applied to, used for, directed to, or expended on.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as seeking information that is neither relevant nor proportionate to the discovery needs of the Confirmation Hearing, including because it seeks a prepetition tracing of the use of factoring proceeds that is not relevant to the Combined Hearing or confirmation of the Plan. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege, including any tracing analysis performed by the Debtors or their advisors. The Debtors further object to this Interrogatory as overbroad, unduly burdensome, and as seeking information that is, in part, already in Katsumi's possession, custody, or control.

Subject to and without waiving any objections, the Debtors respond as follows: pursuant to Rule 33(d) of the Federal Rules and subject to the Protective Order, the Debtors will produce non-privileged summaries tracing the use of factoring proceeds. The Debtors further refer Katsumi

17

to the Plan and the Disclosure Statement, including the description of the Debtors' prepetition factoring and other off-balance-sheet financing arrangements set forth in the Disclosure Statement. In addition, Information informing a response to this Interrogatory will be reflected in witness declarations to be filed in prosecution of the Plan, and materials underlying those declarations will be produced on a rolling basis thereafter. In responding to this Interrogatory, the Debtors are not waiving their right to file additional or supplemental declarations thereafter.

**INTERROGATORY NO. 7**:

**Describe the criteria, methodology, and process used to determine which Persons are included on the schedule of Specified Non-Released Parties, including: (a) who made such determinations; (b) when such determinations were made; (c) the factual basis for including each Person on such schedule; and (d) whether any Person was considered for inclusion but ultimately excluded, and if so, the basis for such exclusion.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as seeking information protected the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors further object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing. The Debtors further object to this Interrogatory to the extent it seeks information that is a matter of public record or otherwise equally available to Katsumi, including as set forth in the Plan and the Schedule of Specified Non-Released Parties. The Debtors further

object to this Interrogatory as containing multiple discrete subparts that should be counted as separate interrogatories.

Subject to and without waiving any objections, the Debtors respond as follows: the Schedule of Specified Non-Released Parties was prepared by the Debtors and their advisors, in consultation with the Ad Hoc Group and the Creditors' Committee, pursuant to the common interest and mediation privileges. All Documents and Communications concerning the development of the Schedule of Specified Non-Released Parties are protected by privilege, including as attorney work product and/or pursuant to the mediation privilege and/or common interest privilege.

**INTERROGATORY NO. 8**:

**Identify each witness the Debtors intend to call at the Confirmation Hearing, and for each such witness, state: (a) the subject matter of the expected testimony; (b) the witness's relationship to the Debtors; and (c) all Documents and Communications on which such witness has relied or will rely in connection with such testimony.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors further object to this Interrogatory to the extent it purports to require that the Debtors disclose their witnesses in advance of filing their witness and exhibit list.

Subject to and without waiving any objections, the Debtors respond as follows: the Debtors will disclose their witnesses on the witness and exhibit list, which the Debtors will file in accordance with the Local Rules in advance of the Confirmation Hearing.

**INTERROGATORY NO. 9**:

**Identify each Cause of Action, Estate Claim or other claim or cause of action contemplated to be included in the Litigation Trust or the Litigation Trust Assets, and for each such claim or cause of action, state: (a) the nature and legal basis of the claim or cause of action; (b) the identity of each defendant or potential defendant; (c) the current status of any proceedings related thereto; and (d) the estimated value of the claim or cause of action.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory to the extent it purports to impose obligations on the Debtors that conflict with the Scheduling Order. The Debtors will file witness declaration(s) and their witness and exhibit list consistent with the Scheduling Order and as appropriate under the timeline of these Chapter 11 Cases leading up to the Combined Hearing. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors also object to this Interrogatory to the extent it seeks information that is a matter of public record or otherwise equally available to Katsumi, including as set forth in the Plan Supplement and Litigation Trust Agreement. The Debtors further object to this Interrogatory as containing multiple discrete subparts that should be counted as separate interrogatories.

20

The Causes of Action, Estate Claims, and other claims or causes of action contemplated to be included in the Litigation Trust are identified in the Schedule of Retained Causes of Action (Plan Supplement Exhibit 1 [Dkt. 3046-1]) and the Litigation Trust Agreement (Plan Supplement Exhibit 4 [Dkt. 3046-4]); the Debtors refer Katsumi to those documents. Information informing a response to this Interrogatory will be reflected in witness declarations to be filed in prosecution of the Plan, and materials underlying those declarations will be produced on a rolling basis thereafter. In responding to this Interrogatory, the Debtors are not waiving their right to file additional or supplemental declarations thereafter.

**INTERROGATORY NO. 10**:

**Describe with particularity the Debtors' forecasted duration or timeline to monetize each Cause of Action, Estate Claim, or other claim or cause of action to be included in the Litigation Trust or the Litigation Trust Assets, and for each such claim or cause of action, state: (a) the projected timeline for prosecution; (b) the forecasted amount of recoveries on such timeline; and (c) all assumptions underlying such forecasts.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.

Subject to and without waiving any objections, the Debtors respond as follows: Information informing a response to this Interrogatory will be reflected in witness declarations to be filed in prosecution of the Plan, and materials underlying those declarations will be produced on a rolling

basis thereafter. In responding to this Interrogatory, the Debtors are not waiving their right to file additional or supplemental declarations thereafter.

**INTERROGATORY NO. 11**:

**Describe with particularity the Debtors' forecasted duration or timeline satisfy the First Return Threshold, the Second Return Threshold, and the Final Return Threshold, and for each such threshold, state all assumptions underlying such forecasts.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.

Subject to and without waiving any objections, the Debtors respond as follows: Information informing a response to this Interrogatory will be reflected in witness declarations to be filed in prosecution of the Plan, and materials underlying those declarations will be produced on a rolling basis thereafter. In responding to this Interrogatory, the Debtors are not waiving their right to file additional or supplemental declarations thereafter.

**INTERROGATORY NO. 12**:

**Identify each Administrative Expense Claim and Other Priority Claim to be satisfied prior to the Effective Date, and for each such claim, state: (a) the asserted amount of such claim; (b) the projected allowed amount of such claim; and (f) the Debtors' methodologies for estimating such allowed amount.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.

Subject to and without waiving any objections, the Debtors respond as follows: Information informing a response to this Interrogatory will be reflected in witness declarations to be filed in prosecution of the Plan, and materials underlying those declarations will be produced on a rolling basis thereafter. In responding to this Interrogatory, the Debtors are not waiving their right to file additional or supplemental declarations thereafter.

**INTERROGATORY NO. 13**:

**Describe with particularity whether the Special Committee (or any of its members) or the Debtors investigated whether any Prepetition Secured Parties or DIP Secured Parties engaged in prepetition conduct for which claims can be asserted against such parties, including: (a) the scope and nature of such investigation; (b) who conducted or directed such investigation; (c) the period of time covered by such investigation; (d) the conclusions reached; and (e) whether any claims were identified that could be asserted against such secured parties. If no such investigation was conducted, state the reasons why not.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense

23

privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors further object to this Interrogatory as not proportionate to the discovery needs of the Confirmation Hearing including because the information requested is irrelevant given the releases set forth and approved in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Dkt. 608] (the "**Final DIP Order**").

**INTERROGATORY NO. 14**:

**Describe with particularity the Debtors' work and conclusions under applicable state law as to which Causes of Action, Estate Claims or other claims or causes of action may be transferred or contributed to the Litigation Trust or the Litigation Trust Assets, including (a) the specific state law analyses performed; (b) the identity of the professionals who performed such analyses; (c) the conclusions reached for each such claim or cause of action; and (d) any such claim or cause of action that the Debtors have determined cannot be transferred or foreclosed upon and the basis for such determination.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory on the grounds that it seeks a legal conclusion. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors further object to this Interrogatory as seeking information that is neither relevant nor proportionate to the discovery

24

needs of the Confirmation Hearing. Subject to the foregoing objections, the Debtors will not respond to this Interrogatory.

**INTERROGATORY NO. 15**:

**Identify all uncollected prepetition receivables or invoices under the Third-Party Factoring arrangements for which the Debtors believe they have rights to obtain payment (without regard to whether such prepetition receivables were sold to a customer or third-party factor), including for each such receivable: (a) the receivable number; (b) the amount; (c) the date of the receivable; (d) the date payment was due; (e) any related credit memos; (f) the seller; (g) the account obligor; and (h) the number of days delinquent.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory as seeking information that is neither relevant nor proportionate to the discovery needs of the Confirmation Hearing, and as overlapping with Interrogatory No. 5. The Debtors further object to this Interrogatory to the extent it seeks information that is already in Katsumi's possession, custody, or control. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors further object to this Interrogatory as containing multiple discrete subparts that should be counted as separate interrogatories.

Subject to and without waiving any objections, the Debtors respond as follows: pursuant to Rule 33(d) of the Federal Rules, the Debtors will produce responsive non-privileged documents concerning the Third-Party Factoring arrangement that are within the Debtors' possession,

custody, or control and from which any non-privileged information requested by subparts (a) through (h) may be derived, to the extent such records exist.

**INTERROGATORY NO. 16**:

**Identify all Litigation Trust Class 1 Funding Contributors, and for each such contributor, state: (a) the name of the contributor; (b) the name and title of the representative communicating the commitment on behalf of each lender; (c) the amounts committed to fund by each contributor; (d) the terms and conditions of such funding commitment; (e) all documentary evidence supporting the fact that each contributor has committed to fund such amounts; and (f) the Debtors' assessment of, or concerns regarding, the risk of non-funding by any such contributor.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory to the extent it purports to require that the Debtors provide information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege, including with respect to subpart (f), "the Debtors' assessment of or concerns regarding the risk of non-funding." The Debtors further object to this Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing, including to the extent subpart (b) seeks "the name and title of each representative communicating each commitment on behalf of each lender." The Debtors additionally object to this Interrogatory as seeking information that is neither relevant nor proportionate to the discovery needs of the Confirmation Hearing, including with respect to the level of detail requested.

Subject to and without waiving any objections, the Debtors respond as follows: the Debtors do not currently know the identity of the Litigation Trust Class 1 Funding Contributors.

26

**INTERROGATORY NO. 17**:

Identify the total aggregate amount of anticipated fees and expenses of the DIP Collateral Trust.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory and as calling for speculation. The Debtors also object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors additionally object to this Interrogatory to the extent it seeks information outside of the Debtors' possession, custody, or control. The Debtors further object to this Interrogatory as the information is not in the Debtors' possession, custody, or control. Subject to the foregoing objections, the Debtors will not respond to this Interrogatory.

**INTERROGATORY NO. 18**:

Identify the amount of Allowed DIP A Claims to be paid or satisfied from sources other than litigation recoveries, including: (a) the projected amounts and timing of such payments; and (c) the sources of repayment.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory to the extent it purports to impose obligations on the Debtors that conflict with the Scheduling Order. The Debtors further object to this Interrogatory to the extent

27

it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. Subject to the foregoing objections, the Debtors are willing to meet and confer regarding this Interrogatory.

**INTERROGATORY NO. 19**:

**Identify the total aggregate amount of anticipated Professional Fee Claims to be incurred from the Conditional Disclosure Statement Hearing to the Confirmation Hearing, and for each Professional Fee Claim, state: (a) the Professional and (b) the estimated amount of such Professional's Professional Fee Claim.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory and as calling for speculation. The Debtors further object to this Interrogatory to the extent it purports to impose obligations on the Debtors that are inconsistent with Section 2.3(e) of the Plan ("Professional Fee Claims") . The Debtors additionally object to this Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing. The Debtors also object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors further object to this Interrogatory to the extent it seeks information that is a matter of public record or otherwise equally available to Katsumi, including pursuant to the monthly fee statements and interim fee applications

28

filed on the docket in these Chapter 11 Cases. The Debtors additionally object to this Interrogatory to the extent it seeks information outside of the Debtors' possession, custody, or control.

Subject to and without waiving any objections, the Debtors respond as follows: pursuant to Rule 33(d) of the Federal Rules, the Debtors will produce responsive non-privileged Documents and Communications concerning the total aggregate amount of anticipated Professional Fee Claims.

**INTERROGATORY NO. 20**:

**Identify the total aggregate amount of anticipated professional fees to be incurred under Section 2.3(e) of the Plan, including: (a) the professionals anticipated to incur such fees, (b) the estimated amount of fees to be incurred by each such professional, (c) any anticipated limitations on such compensation; and (d) the process for winding down professional engagements.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory and as calling for speculation. The Debtors further object to this Interrogatory to the extent it purports to impose obligations on the Debtors that are inconsistent with Section 2.3(e) of the Plan ("Professional Fee Claims"). The Debtors additionally object to this Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing, including to the extent it seeks information that is not relevant to the Combined Hearing. The Debtors also object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors further object to this

29

Interrogatory to the extent it seeks information that is a matter of public record or otherwise equally available to Katsumi, including pursuant to the monthly fee statements and interim fee applications filed on the docket in these Chapter 11 Cases. The Debtors additionally object to this Interrogatory to the extent it seeks information outside of the Debtors' possession, custody, or control. Subject to the foregoing objections, the Debtors will not respond to this Interrogatory and are willing to meet and confer.

**INTERROGATORY NO. 21**:

**Describe with particularity the Debtors' assessment of when the Effective Date is reasonably likely to occur, including (a) the factual and legal bases for such assessment and (b) the criteria by which the Debtors propose that failure be determined.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors further object to this Interrogatory to the extent it purports to require that the Debtors disclose their witnesses in advance of filing their witness and exhibit list.

Subject to and without waiving any objections, the Debtors respond as follows: Information informing a response to this Interrogatory will be reflected in witness declarations to be filed in prosecution of the Plan, and materials underlying those declarations will be produced on a rolling

30

basis thereafter. In responding to this Interrogatory, the Debtors are not waiving their right to file additional or supplemental declarations thereafter.

**INTERROGATORY NO. 22**:

**Describe with particularity the Debtors' assessment of any Direct Creditor Claims that may be contributed to the Litigation Trust, including: (a) the identity of the holder of each such claim; (b) the estimated value of each such claim; and (c) the basis for such valuation.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors further object to this Interrogatory to the extent it purports to require that the Debtors disclose their witnesses in advance of filing their witness and exhibit list.

Subject to and without waiving any objections, the Debtors respond as follows: Information informing a response to this Interrogatory will be reflected in witness declarations to be filed in prosecution of the Plan, and materials underlying those declarations will be produced on a rolling basis thereafter. In responding to this Interrogatory, the Debtors are not waiving their right to file additional or supplemental declarations thereafter.

**INTERROGATORY NO. 23**:

**State the Debtors' intent with respect to all claims against non-debtor affiliates, including: (a) whether such claims will be transferred to the Litigation Trust; (b) during the pendency of the post-Confirmation period, who has exclusive rights over all claims**

31

**transferred to the Litigation Trust, including the right to determine whether to pursue, settle, or litigate such claims; and (c) the governance and oversight mechanisms applicable to the exercise of such rights.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors further object to this Interrogatory as a premature contention interrogatory. The Debtors further object to this Interrogatory as overbroad, unduly burdensome, and not proportionate to the discovery needs of the Confirmation Hearing. The Debtors additionally object to this Interrogatory as vague and ambiguous with respect to the phrase "all claims against non-debtor affiliates." The Debtors further object to this Interrogatory as containing multiple discrete subparts that should be counted as separate interrogatories. The Debtors also object to this Interrogatory to the extent it calls for a legal conclusion.

Subject to and without waiving any objections, the Debtors respond as follows: The scope of the Causes of Action transferred to the Litigation Trust, the exclusive rights over those claims during the post-Confirmation period, and the information requested by subparts (a)-(c) are set forth in the Plan and the Litigation Trust Agreement, filed as Exhibit 4 to the Plan Supplement (Dkt. 3046-4); the Debtors refer Katsumi to those documents.

**INTERROGATORY NO. 24**:

**Describe with particularity the Litigation Trust Backstop Commitments, including: (a) any commitment parties and (b) the amounts committed.**

32

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Interrogatory to the extent it seeks information that is confidential or competitively sensitive or that is subject to the Protective Order. The Debtors further object to this Interrogatory to the extent it seeks information that is a matter of public record or otherwise equally available to Katsumi, including as set forth in the Litigation Trust Backstop Agreement filed as Exhibit 5 to the Plan Supplement (Dkt. 3046-5). The Debtors further object to this Interrogatory as unduly burdensome and not proportionate to the discovery needs of the Confirmation Hearing to the extent it purports to require that the Debtors "describe with particularity" the details of the Litigation Trust Backstop Commitments, which is equally available to Katsumi.

Subject to and without waiving any objections, the Debtors respond as follows: the Debtors refer Katsumi to the Litigation Trust Backstop Agreement, filed as Exhibit 5 to the Plan Supplement (Dkt. 3046-5), which sets forth the Litigation Trust Backstop Commitments, including the commitment parties requested by subpart (a) and the amounts committed requested by subpart (b).

Dated: July 10, 2026
         Houston, Texas

/s/ Clifford W. Carlson
**WEIL, GOTSHAL & MANGES LLP**
Clifford W. Carlson (2490024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Clifford.Carlson@weil.com


-and-

Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Robert S. Berezin (admitted *pro hac vice*)
Theodore E. Tsekerides (admitted pro hac vice)
Christine A. Calabrese (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
       Sunny.Singh@weil.com
       Robert.Berezin@weil.com
       Theodore.Tsekerides@weil.com
       Christine.Calabrese@weil.com


*Attorneys for Debtors and Debtors in Possession*

**VERIFICATION**

I, Charles M. Moore, am authorized to verify the Responses to Interrogatory Nos. 1 through 24 on behalf of the Debtors in the above-captioned cause of action. I am the Chief Executive Officer of First Brands Group, LLC, and I have read Katsumi Servicing, LLC's Interrogatory Nos. 1 through 24, as well as the Debtors' responses thereto. I either have personal knowledge that the matters stated herein are true, or I am informed and believe that such matters are true and on those grounds, certify that the same are true and correct.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and under the laws of the United States of America that the facts set forth in the Responses to Interrogatory Nos. 1 through 24 are true and correct.

Dated: July 10, 2026

/s / Charles M. Moore
Charles M. Moore

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2026, a true and correct copy of the foregoing document was served upon counsel of record via electronic mail.

/s/ *Christine A. Calabrese*
Christine A. Calabrese

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  | § |  |
|---|---|---|
| **In re:** | § | **Chapter 11** |
|  | § |  |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
|  | § |  |
| **Debtors.[1]** | § | **(Jointly Administered)** |
|  | § |  |

### ORDER GRANTING EMERGENCY MOTION OF KATSUMI SERVICING, LLC TO COMPEL DEBTORS' RESPONSES TO FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Upon the motion (the "Motion")[2] of Katsumi Servicing, LLC ("Katsumi") for entry of an order (this "Order") compelling First Brands Group, LLC and its debtor affiliates (collectively, the "Debtors") to provide full, complete, verified, and non-evasive responses to Katsumi's First Set of Interrogatories (Nos. 1–24) and produce all responsive, non-privileged documents to Katsumi's First Request for Production of Documents (Nos. 1–31), and the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (d) notice of the Motion and the opportunity for a hearing on the Motion was sufficient under the circumstances and no other or further notice is necessary, (e) the Court may enter a final order consistent with Article III of the United States Constitution, (f) this Court having reviewed the Motion and having heard the statement of the relief requested therein at a hearing before this Court, if any; and this Court having determined that the legal and factual bases set forth

---

[1] A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these Chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

in the Motion establish just cause for the relief granted herein; and after due deliberation thereon and sufficient just cause for the relief granted herein;

**IT IS HEREBY ORDERED THAT:**

1.      The Debtors shall, as soon as reasonably practicable after entry of this Order, provide full, complete, verified, and non-evasive responses to Katsumi's First Set of Interrogatories (Nos. 1–24), without the previously asserted objections that are overruled by this Order.

2.      The Debtors shall, as soon as reasonably practicable after entry of this Order, produce all responsive, non-privileged documents to Katsumi's First Request for Production of Documents (Nos. 1–31), without the previously asserted objections that are overruled by this Order.

3.      The Debtors' objections to the Discovery Requests, including but not limited to the objections that the Discovery Requests are "overbroad," "unduly burdensome," "not proportionate to the discovery needs of the Confirmation Hearing," "publicly available," already in Katsumi's possession, premature contention interrogatories, or deferring responses to witness declarations are overruled.

4.      The Debtors' assertions of mediation privilege are overruled to the extent asserted as a basis to withhold factual information, business records, communications, or discoverable information that does not constitute a communication made during or in preparation for the mediation.

5.      The Debtors' assertions of privilege as to the subject of the testimony of Charles Moore, including funds-flow tracing analysis, the investigation and claims analysis, all facts developed in the Special Committee Investigation, and all related work papers are overruled.

6.      The Debtors shall, as soon as reasonably practicable after entry of this Order, produce a privilege log compliant with Federal Rule of Civil Procedure 26(b)(5)(A) for all documents and communications withheld on the basis of any privilege, including but not limited to the attorney-client privilege, attorney work product doctrine, common interest privilege, joint defense privilege, and mediation privilege. The privilege log shall identify, for each withheld document or communication: (a) the date of the document or communication; (b) the author(s) and recipient(s); (c) the general subject matter; and (d) the specific privilege(s) asserted.

7.      The Confirmation Hearing is continued to a date to be determined to (a) allow Katsumi sufficient time to respond to the surprise testimony of Mr. Kirschner, (b) review and respond to Debtors' compelled supplemental productions and responses, and (c) obtain deposition testimony from Mr. Kirschner based on information disclosed in his July 14, 2026 declaration.

8.      Pursuant to Federal Rule of Civil Procedure 37(a)(5), the Debtors are directed to pay Katsumi's reasonable expenses, including attorneys' fees, incurred in connection with the Motion within seven (7) business days of the entry of this Order, in an amount to be established upon submission of an affidavit of fees by Katsumi's counsel.

9.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

10.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.     Katsumi is authorized to take all actions necessary to effectuate the relief granted by this Order in accordance with the Motion.

3

4

12.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated: _____, 2026          _____

Houston, Texas                              HON. CHRISTOPHER M. LOPEZ
                                            UNITED STATES BANKRUPTCY JUDGE