**Exhibit 37**

**Debtor's Responses and Objections to Katsumi's First Set of Interrogatories (Dkt. No. 3211)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re<br><br>FIRST BRANDS GROUP, LLC *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 25-90399 (CML)<br><br>(Jointly Administered) |

**ONSET FINANCIAL, INC.'S JOINDER AND STATEMENT IN SUPPORT
OF LAM PARTIES' AND KATSUMI SERVICING, LLC'S
MOTIONS TO COMPEL PRODUCTION OF
DOCUMENTS AND INTERROGATORY RESPONSES FROM DEBTORS**

Onset Financial, Inc. ("Onset") submits this *Joinder and Statement in Support of LAM Parties' and Katsumi Servicing, LLC's Motions to Compel Production of Documents and Interrogatory Responses from Debtors* (the "Statement in Support") in support of the *LAM Parties' Motion to Compel Production of Documents and Interrogatory Responses from Debtors* [Dkt. No. 3210] (the "LAM Parties' Motion") and the *Emergency Motion of Katsumi Servicing, LLC to Compel Debtors to Produce Complete Responses and Documents in Response to Discovery Served Upon the Debtors, Including Katsumi Servicing, LLC's First Set of Interrogatories and First Request for Production of Documents and Other Issues* [Dkt. No. 3211] ("Katsumi's Motion").[2]

In support of this Statement in Support, Onset respectfully states as follows:[3]

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands/. The Debtors' service address for these chapter 11 cases (the "Chapter 11 Cases") is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] "LAM Parties" means, collectively, Leucadia Asset Management LLC, acting through its Point Bonita Capital Division, LAM Trade Finance Group LLC, and LAM TFG I SPV LLC. "Katsumi" means Katsumi Servicing, LLC.

[3] Capitalized terms not defined herein shall have the meaning assigned to them in the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Dkt. No. 3019].

## BACKGROUND

### A. Onset's Plan-Related Document Requests

1. Onset's discovery requests related to the process and negotiations underlying the FBG Plan began in early June. On June 2, 2026, Onset served document requests on the Debtors concerning the *Motion of FBG Debtors for Entry of an Order (I) Approving Global Settlement; (II) Authorizing and Directing Sale and Transfer of Assets in Connection Therewith; (III) Converting Certain Chapter 11 Cases to Chapter 7; and (IV) Granting Related Relief* [Dkt. No. 2783] (the "Global Settlement Motion"). Onset's requests in connection with the Global Settlement Motion sought documents central to plan-related issues, including in connection with the assets to be transferred or sold; the valuation of estate assets; the Estate Claims Credit Bid Transaction and the DIP Collateral Credit Bid Transaction (and the marketing process for each); the Litigation Trust structure, assets, and waterfall; the designation of Onset as a Specified Non-Released Party; and any chapter 7 conversion analysis, among other things. *See* Ex. 1 (Onset's First Requests to the Debtors for the Production of Documents in Connection with the Global Settlement Motion).

2. After receiving no response from the Debtors, Onset followed up with the Debtors on June 5 to inquire about the status of the Debtors' productions concerning the Global Settlement Motion. *See* Ex. 2 (June 5, 2026 Email from Onset to the Debtors). The Debtors responded on the same day and stated that they would be withdrawing the Global Settlement Motion. *Id.* The Debtors then filed the first version of their multi-Debtor chapter 11 plan. *See Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Dkt. No. 2907] (as amended, modified, or supplemented, the "FBG Plan").

3. On June 10, 2026, Onset and the Debtors met-and-conferred regarding discovery in connection with a separate contested matter. At that meeting, Onset forewarned the Debtors

that Onset would soon be serving additional document requests concerning the FBG Plan should the Disclosure Statement be conditionally approved on June 12, 2026, and that those requests would be substantially similar to Onset's previous document requests concerning the Global Settlement Motion given that they involved the same plan-related issues.

4. On June 12, 2026, the Disclosure Statement was conditionally approved, and on June 16, 2026, the Debtors filed the solicitation version of the FBG Plan.

5. Shortly thereafter, on June 17, 2026, Onset served the Debtors with the previewed document requests concerning the FBG Plan, which were, as promised, substantially similar to the document requests concerning the Global Settlement Motion. Ex. 3 (Onset's First Requests to the Debtors for the Production of Documents in Connection with the Plan) (the "Plan RFPs"). As with Onset's requests in connection with the Global Settlement Motion, Onset's Plan RFPs sought documents concerning issues relevant to the FBG Plan and Plan Settlement, including in connection with the assets to be transferred or sold; the valuation of estate assets; the Estate Claims Credit Bid Transaction and the DIP Collateral Credit Bid Transaction (and the marketing process for each); the Litigation Trust structure, assets, and waterfall; the designation of Onset as a Specified Non-Released Party; and any chapter 7 conversion analysis, among other things.

6. Onset's Plan RFPs requested that the Debtors commence rolling productions immediately and conclude production no later than July 6, 2026—nearly three weeks after service on June 17 and two weeks before Onset's objection to the FBG Plan was due on July 20, 2026.

**B. The Debtors' Overly Expansive and Presumptive Claims of Privilege and Nonresponsive, Incomplete Productions**

7. On July 6, 2026, after having produced zero documents in response to Onset's Plan RFPs, the Debtors served responses and objections to Onset's Plan RFPs. *See* Ex. 4 (Debtors' Responses and Objections to Onset's First Requests for Production of Documents in Connection

with Plan) (the "Debtors' Rs&Os"). The Debtors' Rs&Os generally agreed to produce non-privileged documents responsive to Onset's Plan RFPs, except as to two of Onset's requests. Onset's Request for Production No. 7 sought documents and communications, including communications among the Plan Negotiation Parties (defined to include the Ad Hoc Group of DIP Lenders, the Official Committee of Unsecured Creditors, and the Asset-Based Lenders), "concerning the decision to designate certain parties, including Onset, as a Specified Non-Released Party under the Plan and Plan Settlement . . . ." *See* Ex. 4 (Debtors' Rs&Os) at 15–16. Onset's Request for Production No. 8 sought documents and communications, including communications among the Plan Negotiation Parties, "concerning the decision to designate certain parties as Released Parties or Exculpated Parties under the Plan and Plan Settlement . . . ." *Id.* at 16. As to each of these requests, the Debtors stated that they were "not aware of any non-privileged Documents" responsive to the request. *Id.* at 16–17. In following correspondence and conferences, Onset tried to seek clarity as to whether the Debtors would even attempt to search and review for non-privileged documents in response to those two requests; to date, the Debtors have not provided an answer.

8. On July 8, 2026, two days after the deadline to complete the production, the Debtors made their first production in response to Onset's Plan RFPs. *See* Ex. 5 (July 8, 2026 Email from Debtors to Onset). This first production consisted of 812 documents, which were nearly entirely publicly available documents, deposition exhibits, and unintelligible XML files. The production was scant of communications; indeed, of the 812 documents, only four documents reflected invoice-related communications, none of which were responsive to Onset's Plan RFPs.

9. The next day, July 9, Onset responded to the Debtors' production email, pointing out the deficiencies in the production and seeking to understand whether the Debtors were planning

4

to make further document productions.  *See* Ex. 5 (July 9, 2026 Email from Onset to the Debtors).

After receiving no response, Onset followed up again the next day, July 10, and reiterated its

request for a meet-and-confer with the Debtors given the impending plan objection deadline.  The

Debtors did not respond until July 12, and the parties met and conferred on July 13.

10.     At the parties' July 13 meet-and-confer, the Debtors for the first time clarified that

they were asserting various privileges in such a manner that, in effect, resulted in the withholding

of essentially all of the Debtors' communications with the Plan Negotiation Parties since the

Petition Date.  Onset requested that the bases for these expansive privilege assertions be provided

in writing.  During that meeting, the Debtors also committed to provide a categorical privilege log

and a list of the search parameters used to identify documents responsive to Onset's Plan RFPs,

including custodians and search terms.  To date, however, the Debtors' privilege log, custodians,

and confirmation of search terms and parameters have not been provided to Onset.

11.     On July 14, the Debtors filed the declarations of Charles M. Moore and Marc S.

Kirschner in support of confirmation, each of which selectively discloses conclusions drawn from

the Debtors' purportedly privileged investigation while relying upon substantive materials that the

Debtors refuse to produce.  *See Declaration of Charles M. Moore in Support of Confirmation of

FBG Debtors' Chapter 11 Plan* [Dkt. No. 3188] (the "Moore Declaration"); *Declaration of Marc

S. Kirschner* [Dkt. No. 3190] (the "Kirschner Declaration").[4]

12.     On July 16, in email correspondence, the Debtors confirmed the staggeringly

narrow scope of their search.  The Debtors stated they were only producing communications for

three limited windows: (i) September 1-28, 2025, (ii) January 1-28, 2026, and (iii) March 27-May

20, 2026—all of which are before the first version of the FBG Plan was filed.  Even within those

---

[4]     The documents listed in Exhibit B to the Kirschner Declaration were produced to Onset on July 16, 2026.

windows, the Debtors appeared to have used presumptive domain searches rather than targeted keyword searches. In other words, the Debtors unilaterally determined that the vast majority of communications relating to the negotiations, formulation, and solicitation of the FBG Plan are simply off-limits, without conducting any meaningful privilege review. The Debtors stated:

> The Debtors have produced responsive non-privileged communications between the Debtors and the UCC, AHG, and ABL for two periods and are finalizing communications across a third period for production: (i) September 1, 2025-September 28, 2025 (prepetition period), (ii) January 1, 2026-January 28, 2026 (the period before formal mediation), and (iii) March 27, 2026 (the close of formal discovery) - May 20, 2026 (the date the Debtors announced an agreement in principle with the AHG, UCC, and ABL). For these periods, the Debtors have used domain searches to capture all communications between (i) the Debtors and their advisors and the UCC, AHG, and/or ABL and their advisors and (ii) have otherwise reviewed for responsiveness.

*See* Ex. 6 (July 16, 2026 Email from Debtors to Onset).

13. That same day, Onset sought confirmation that (i) the Debtors were treating all communications with or among the Ad Hoc Group of DIP Lenders, the Official Committee of Unsecured Creditors, the Asset-Based Lenders, or their advisors as presumptively privileged during those time periods and simply were declining to review documents during those windows rather than conducting any privilege review at all, (ii) whether any communications with third parties beyond those mentioned parties would be produced (as requested in the Plan RFPs), and (iii) additional clarity as to the custodians those parameters were applied to and if that was the extent of their search and review process. Onset has not yet received a response.

14. All told, in the last eight days, with only four days remaining before the Plan objection deadline, the Debtors have made five productions purportedly in response to Onset's Plan RFPs. But those productions have included remarkably few communications, virtually none concerning Plan negotiations or the Plan itself, and instead are padded with thousands of documents, such as Court filings and account statements, that shed little light on the issues relevant

to the Debtors' burden while presumably all relevant communications are shielded by the Debtors' broad and unsupported privilege claims.

## STATEMENT IN SUPPORT

15.     The Debtors have had more than enough time to respond to Onset's Plan RFPs. The Debtors set the expedited confirmation schedule, yet elected to provide astonishingly few documents with probative value. Since early June, the Debtors have used delay, obfuscation, and sweeping privilege claims to prevent Onset from obtaining the documents that would permit it to adequately consider and prepare an objection to confirmation of the FBG Plan. Onset is not alone; as they did to the LAM Parties and Katsumi, the Debtors rebuffed Onset's requests and refused to produce relevant documents, instead producing inflated productions full of thousands of irrelevant documents, while substantive documents concerning plan negotiations, credit bid transactions, the Litigation Trust, and the release provisions are shielded behind unsupported privilege assertions. The recently-filed Moore and Kirschner declarations rely in large part on certain of these privileged materials, yet the Debtors refuse to produce them. This is the prototypical use of privilege as both sword and shield: the Debtors selectively deployed privileged materials to support their Plan while denying creditors the ability to test the foundation of their case.

16.     While the Debtors have produced plenty of non-responsive documents in response to Onset's requests, including over 12,000 documents produced today composed nearly entirely of account-statement-type documents, the Debtors have not provided Onset with substantive communications, nor have they provided Onset with a privilege log. Further, the Debtors have not identified their custodians or confirmed their search terms and parameters. Without such information, Onset cannot evaluate the sufficiency of the Debtors' productions nor the propriety of their privilege claims. The deficiency of the Debtors' production effectively prevents scrutiny of the FBG Plan and process supporting it.

7

17.     The LAM Parties' Motion and Katsumi's Motion thoroughly demonstrate the Debtors' pervasive discovery failures.  Onset's experience confirms the same pattern: blanket privilege assertions, incomplete productions, and delay tactics that have prejudiced Onset's ability to meaningfully object to the FBG Plan.  Based on the foregoing, Onset joins in the LAM Parties' Motion and Katsumi's Motion and respectfully requests that the Court enter an order (i) compelling the Debtors to produce all responsive, non-privileged documents, (ii) requiring the Debtors to produce a privilege log compliant with Federal Rule 26(b)(5)(A), (iii) striking or precluding the Moore and Kirschner declarations and ability to testify to the extent they rely on materials the Debtors refuse to produce, (iv) continuing the confirmation hearing to afford adequate time to review compelled productions and conduct depositions, and (v) granting such other and further relief as the Court deems just and proper.

## RESERVATION OF RIGHTS

18.     Onset reserves the right to amend or supplement this Statement in Support; to join in any additional related pleadings; and to participate in any hearing regarding the LAM Parties' Motion, Katsumi's Motion, and/or any related matters.


*[Remainder of page intentionally left blank]*

Dated: July 16, 2026
Houston, Texas

**MUNSCH HARDT KOPF & HARR, PC**

*/s/ Deborah M. Perry*
Deborah M. Perry
Texas Bar No. 24002755
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com

-and-

**MORRISON & FOERSTER LLP**

Carrie H. Cohen (admitted *pro hac vice*)
James Newton (admitted *pro hac vice*)
Ben Butterfield (admitted *pro hac vice*)
Bryan Kotliar (admitted *pro hac vice*)
250 West 55th Street
New York, NY 10019
Email: ccohen@mofo.com
Email: jnewton@mofo.com
Email: bbutterfield@mofo.com
Email: bkotliar@mofo.com

-and-

**MORRISON & FOERSTER LLP**

Anthony S. Fiotto (admitted *pro hac vice*)
Julia C. Koch (admitted *pro hac vice*)
200 Clarendon Street
Boston, MA 02116
Email: afiotto@mofo.com
Email: jkoch@mofo.com

-and-

**MORRISON & FOERSTER LLP**

Brian R. Michael (admitted *pro hac vice*)
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Email: bmichael@mofo.com

-and-

**MILBANK LLP**
Dennis F. Dunne (admitted *pro hac vice*)
Lisa Laukitis (admitted *pro hac vice*)
Jason Kestecher (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5858
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
Email: llaukitis@milbank.com
Email: jkestecher@milbank.com

-and-

**MILBANK LLP**
Andrew M. Leblanc (admitted *pro hac vice*)
Erin E. Dexter (admitted *pro hac vice*)
1101 New York Avenue NW,
Washington, DC 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586
Email: aleblanc@milbank.com
Email: edexter@milbank.com

*Attorneys for Onset Financial, Inc.*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed on this 16th day of July 2026, with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

/s/ *Deborah M. Perry*
Deborah M. Perry

# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| FIRST BRANDS GROUP, LLC *et al.*,[1] | Case No. 25-90399 (CML) |
| Debtors. | (Jointly Administered) |

### ONSET'S FIRST REQUESTS TO THE DEBTORS FOR THE PRODUCTION OF DOCUMENTS IN CONNECTION WITH THE GLOBAL SETTLEMENT MOTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to the above-captioned chapter 11 cases pursuant to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 7026, 7034, and 9014, and the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), Onset Financial, Inc. ("Onset"), by and through its undersigned counsel, submits these requests for the production of documents (the "Document Requests," and each a "Request") to First Brands Group, LLC and its associated debtors and debtors-in-possession (the "Debtors", "First Brands", or "You") concerning the *Motion of FBG Debtors for Entry of an Order (I) Approving Global Settlement; (II) Authorizing and Directing Sale and Transfer of Assets in Connection Therewith; (III) Converting Certain Chapter 11 Cases to Chapter 7; and (IV) Granting Related Relief* [Dkt. No. 2783] (the "Global Settlement Motion"). Onset hereby requests that You (as further defined below) produce the documents described herein for inspection and copying at the offices of Milbank, LLP, located at 55 Hudson Yards, New York, New York 10001 on an immediate and

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands/. The Debtors' service address for these chapter 11 cases (the "Chapter 11 Cases") is 127 Public Square, Suite 5300, Cleveland, OH 44114.

rolling basis to be concluded no later than June 9, 2026, at 5:00 p.m. ET. Onset reserves the right to serve supplemental and additional discovery requests.

## DEFINITIONS

The following definitions shall apply to the terms used in these Document Requests, regardless of whether they are capitalized or uncapitalized. Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1. "ABL Collateral Trust Assets" has the meaning set forth in the Plan.

2. "ABL Secured Parties" has the meaning set forth in the DIP Order, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any ABL Secured Party's behalf or retained by any ABL Secured Party, and any predecessor or successor of any of the foregoing.

3. "Administrative Expense Claim" has the meaning set forth in the Plan.

4. "Advisors" means any and all former or current advisors or professionals that previously advised or provided services or are currently advising or providing services.

5. "Affiliate" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code (11 U.S.C. §§ 101–1532, as amended).

6. "BDO" means BDO USA, LLP, BDO USA, P.A., BDO USA, P.C., and any Advisors, Affiliates, agents, assigns, directors, employees, officers, parents, partners, representatives, subsidiaries, independent contractors, attorneys, and/or any other Person or entities purporting to act on its behalf, and/or under its control.

2

7.     "Carnaby Debtors" means Carnaby Inventory IV, LLC; Carnaby Inventory Holdings IV, LLC; Carnaby Capital Holdings, LLC; Carnaby Capital, LLC; Carnaby FA, LLC; Carnaby FA Holdings, LLC, and Eagle Casting Holdings, LLC.

8.     "Communication(s)" means the transmittal or exchange of information, in any form and by any means, including, but not limited to, documents, writings, letters, notes, correspondence, electronic mail, text message, sound recordings, video recordings, instant message, or other exchange of information in any form, and any recordings or memorialization, in any format, of face-to-face conversations, telephone conversations, meetings, or conferences.

9.     "Converting Debtor" has the meaning set forth in the Plan.

10.    "Creditors' Committee" has the meaning set forth in the Plan, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any unsecured creditor's behalf or retained by any unsecured creditor, and any predecessor or successor of any of the foregoing.

11.    "Debtors", "You", and "Your" means the debtors and debtors in possession in the above-captioned Chapter 11 Cases, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any Debtor's behalf or retained by any Debtor, and any predecessor or successor of any of the foregoing.

12.    "DIP Agent" has the meaning set forth in the DIP Order, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any DIP Agent's behalf or retained by any DIP Agent, and any predecessor or successor of any of the foregoing.

13.     "DIP Collateral Credit Bid" has the meaning set forth in the Plan.

14.     "DIP Collateral Credit Bid Transaction" has the meaning set forth in the Plan.

15.     "DIP Collateral Trust Assets" has the meaning set forth in the Plan.

16.     "DIP Order" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Priorities; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Dkt. No. 608].

17.     "DIP Secured Parties" has the meaning set forth in the DIP Order, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any DIP Secured Party's behalf or retained by any DIP Secured Party, and any predecessor or successor of any of the foregoing.

18.     "Disclosure Statement" means the *Disclosure Statement for Chapter 11 Plan of Premier Marketing Group, LLC* [Dkt. No. 2786], and as it may be amended, modified, or supplemented.

19.     "Documents" is intended to have the broadest possible meaning under the Federal Rules and Bankruptcy Rules, and includes, but is not limited to, all originals, non-identical copies and copies with marginal notations or interlineations of any written Communications, writings, sworn statements, deposition transcripts, affidavits, recordings, photographs, phone records, computer data, electronic mail or other item containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form maintained. "Document" also includes all Electronically Stored Information.  "Document" further means any document in the possession, custody or control of the entities and individuals to whom this document request is directed (together with any employees, agents, and attorneys).  Without

4

limitation to the term "control" as used in the preceding sentence, an entity or individual is deemed to be in control of a document if that entity or individual has the right to secure the document or a copy thereof from another entity or individual having actual possession thereof. A draft or non-identical copy is a separate Document within the meaning of this term.

20. "Electronically Stored Information" has the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and refers to all computer or electronically stored or generated data and information, and includes all attachments to and enclosures with any requested item, and all drafts thereof. "Electronically Stored Information" includes information stored in any format and on any storage media, including: hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable. "Electronically Stored Information" also includes all associated metadata that is maintained or saved, which includes: a document's title or name; file name; date and time of creation; date and time of last edit; identity of author; identity of owner; identities of editors; identities of recipients; changes; history of changes; email header information; history of who viewed an email and when; and email routing information.

21. "Estate Claims Credit Bid" has the meaning set forth in the Plan.

22. "Estate Claims Credit Bid Transaction" has the meaning set forth in the Plan.

23. "Estate Claims Marketing Process" has the meaning set forth in the Disclosure Statement.

24. "Global Settlement" has the meaning set forth in the Plan.

25. "Litigation Trust Assets" has the meaning set forth in the Plan.

26. "Litigation Trust Interest" has the meaning set forth in the Plan.

27. "Litigation Trust Waterfall" has the meaning set forth in the Plan.

28.     "Plan" means the *Chapter 11 Plan of Premier Marketing Group, LLC* [Dkt. No. 2784], and as it may be amended, modified, or supplemented.

29.     "Plan Negotiation Parties" means the Debtors, the DIP Secured Parties, the ABL Secured Parties, and the Creditors' Committee.

30.     "Person" includes both the singular and the plural, and means any natural person, business entity, corporation, cooperative, public corporation, partnership, joint venture, or organization.  Each reference to a natural Person shall be deemed to include that Person's agents, attorneys, and any Person who acted or purported to act on that Person's behalf.

31.     "Specified Non-Released Parties" has the meaning set forth in the Plan.

32.     "SPV Lender" has the meaning set forth in the Plan.

33.     "Valuation" means any formal or informal assessment, appraisal, estimate, or analysis of financial worth, including reports, models, spreadsheets, presentations, or other Communications or Documents reflecting methodologies, assumptions, or determinations regarding asset values or enterprise value.

34.     The terms "all," "each," and "any" shall be construed to mean all, each, every, any, "each and every," and "any one."

35.     The connectives "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the request.

36.     The words "concerning," "comprising," "regarding," "reflecting," "in connection with," or "relating to" shall expansively mean, directly or indirectly, referring to, reflecting, concerning, embodying, regarding, mentioning, analyzing, describing, pertaining to, relating to, arising out of or in connection with or in any way legally, logically, or factually connected with the matter discussed.

37.     The words "including" or "includes" shall mean "including but not limited to and without limitation" or "includes but is not limited to and without limitation."

38.     Any ambiguity in a request shall be construed to bring within the scope of the request all responses that otherwise could be construed to be outside of its scope.

## **INSTRUCTIONS**

1.     You are instructed to produce all Documents responsive to the Document Requests that are within Your possession, custody, or control, or in the possession, custody, or control of any other Person or entity acting or purporting to act on Your behalf.

2.     Unless otherwise stated, these Document Requests seek production of Documents dated, prepared, generated, transmitted, or received during the period from and including August 1, 2025 to present (the "Relevant Period").

3.     Each request for the production of Documents shall be deemed to be continuing in nature.  If at any time additional Documents come into Your possession, custody, or control or are brought to Your attention, You will promptly supplement Your response to these Document Requests.

4.     Each Request shall be responded to completely, separately, and fully.  If there are no Documents responsive to any particular Request, Your response shall so state in writing.

5.     If, in responding to the Document Requests, You encounter any ambiguities when construing a request or definition, Your response shall set forth the matter deemed ambiguous and the construction used in responding.

6.     In construing the Document Requests, the singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

7.      All Documents shall be produced in the manner in which they are maintained in the usual course of Your business and/or You shall organize and label the Documents to correspond to each request contained herein.  A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself. Documents attached to each other shall not be separated.

8.      You shall produce all Electronically Stored Information in accordance with the following specifications:

a.  <u>TIFFs</u>.  Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata.  Name each tiff file with a unique name matching the bates number labeled on the corresponding page.  Group every 10,000 tiffs into a new folder; do not create a separate folder for each document.

b.  <u>Native Format</u>.  For files created by Excel or other spreadsheet programs, PowerPoint or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats.  Name the produced native file with the bates number on the first page of the corresponding tiff production of the file / document.  Group native files within incrementally named "NATIVE" directories, separate from images directories.

c.  <u>Text Files</u>.  For each document a text file should be provided.  Each text file should bear the name of the beginning page of each document.  To the extent possible, the text of native files should be extracted directly from the native files, except that for a text file corresponding to a redacted document the text may be extracted from OCR of the redacted TIFF file (instead of the native document).

d.  <u>Unique IDs</u>.  Each TIFF image should have a unique, sequential identifying number which is the Bates number of the page as specified herein.  Each native file should have a unique, sequential identifying number which corresponds with the TIFF numbering scheme as specified herein.

e.  <u>Metadata Fields</u>.  The following metadata fields should be populated to the extent field values are available in the source data:

| Field Name | Field Type | Description |
| --- | --- | --- |
| BegDoc | Text | Document ID number associated with the first page. |

| Field Name | Field Type | Description |
| --- | --- | --- |
| EndDoc | Text | Document ID number associated with the last page. |
| BegAttach | Text | Document ID number associated with the first page of a parent. |
| EndAttach | Text | Document ID number associated with the last page of the last attachment to a parent. |
| Doc_Pages | Numeric | Number of pages. |
| Document Author | Paragraph | Display name of the author of a document. |
| From | Paragraph | Display name of the sender of an email. |
| To | Paragraph | Display name of the recipient(s) of an email. |
| CC | Paragraph | Combine CC and CC Email field into one CC field |
| BCC | Paragraph | Display name of the blind copyee(s) of a document. |
| Subject | Paragraph | Subject line of an email. |
| Custodian | Text | Custodian of an email. |
| Custodian Duplicates | | List of all custodians for a particular document. |
| File Original Path | Paragraph | Full path to a native copy of an email in source data or the folder of a document. |
| File Ext | Paragraph | File extension. |
| File Name | Paragraph | File name. |
| File Type | Paragraph | File Type. (ex. Word, Excel, E-mail etc.) |
| File Size | Paragraph | File size. |
| Full/OCR Text | Paragraph | Path to where the Extracted or OCR text can be found. |
| Date Modified | Date in MM/DD/YYYY format | Last Modified date. |
| Date Sent | Date in MM/DD/YYYY format | Email sent date. |
| Date Created | Date in MM/DD/YYYY format | File created date. |
| Time Modified | Time in HH:MM format | Last Modified time. |
| Time Sent | Time in HH:MM format | Email sent time. |
| Time Created | Time in HH:MM format | File created time. |
| Message ID | Paragraph | Email Internal message ID |
| MD5HASH | Paragraph | Algorithm that represents a unique value; the MD5 hash fingerprint of an email. |

| Field Name | Field Type | Description |
|---|---|---|
| Redactions | Y/N | Descriptor for documents that have been redacted. |
| Confidentiality Designations | Paragraph | Descriptor for confidentiality designation applied to document during production. |

Metadata pertaining to date/time should be maintained in Universal Coordinated Time (UTC).

f. <u>Database Load Files and Cross Reference Files</u>. Documents should be provided with a Concordance (e.g., .dat)-delimited file utilizing the standard Concordance delimiters (Comma: ASCII 20 Quote: ASCII 254 Newline: ASCII 174) as specified in the Concordance User Manual and an Opticon-delimited file. Every TIFF and native file in each production must be referenced in the corresponding Load File. The total number of TIFF files referenced in the Opticon-delimited Load File within the production should match the total number of image files in the production.

g. <u>File Format Examples</u>.

- <u>Opticon Delimited File</u>
  PROD00000001,20081123,IMAGES\001\PROD00000001.TIF,Y,,,60

- <u>Concordance Delimited File</u>
  þBEGDOCþ þENDDOCþ þBEGATTþ þENDATTþ þDOCIDþ

- <u>Text Comma Delimited File</u>
  PROD00000001,TEXT\001\PROD00000001.TXT

h. <u>De-Duplication</u>. Produce a single copy of each electronic document for which exact duplicates exist. For e-mail messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For e-mail attachments and stand-alone electronic files, consolidate duplicates based on MD5 hash of the entire file.

9. Any Document withheld from production based on privilege or any similar claim shall be identified by (i) the type of document, (ii) the general subject matter of the Document, (iii) the date of the Document, and (iv) such other information as is sufficient to identify the Document, including the author of the Document, the addressee of the Document, other recipients of the Document and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth in such writing. If a portion of a Document

contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

10.     If any Document within the scope of these Document Requests has been modified or altered in any way, including in part, identify (i) each such Document; (ii) its custodian; and (iii) the Person who modified or altered it.  The circumstances of such modification or alteration shall be set forth in such writing, including how and why the Document was modified or altered.

11.     If any Document within the scope of these Document Requests is no longer in Your possession or subject to Your control, state whether it is (i) missing or lost; (ii) destroyed; (iii) transferred voluntarily or involuntarily to others; or (iv) otherwise disposed of.  In each instance, identify the current or last known custodian and the circumstances surrounding such disposition.

12.     If You object to any part of any Document Request, You shall state fully with specificity the nature of the objection.  Notwithstanding any objections, You shall nonetheless comply fully with the other parts of the Document Request not objected to.

13.     Onset reserves the right to request additional Documents as needed and to submit additional or supplemental document requests or other discovery requests, provided, further, that it expressly reserves its rights to supplement or amend the Document Requests.

**DOCUMENT REQUESTS**

1.     All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning any Valuation, appraisal, description, diligence, analysis, financial information, modeling, evaluation, or assessment of any assets to be transferred, sold, assigned, abandoned, conveyed, or otherwise treated pursuant to the Plan, or any other disposition of assets of the Debtors' estates, including the ABL Collateral Trust Assets, the DIP Collateral Trust Assets, and the Litigation Trust Assets.  For the avoidance of any doubt, this Request includes all

11

Documents and Communications concerning any assets in which SPV Lenders assert an interest and which may or may not remain subject to dispute under the Plan.

2.      All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the Estate Claims Credit Bid, the Estate Claims Credit Bid Transaction, or the Estate Claims Marketing Process, including any underwriting materials, Valuations, financial projections, analyses, assessments, evaluations, marketing materials, diligence, bid materials, presentations, indications of interest, or proposals conducted, prepared, sent, received, reviewed, or exchanged by or among You, any bidder or potential bidder, or any third party, including any advisors, consultants, agents, or representatives of any of the foregoing.

3.      All Documents comprising, relating to, or reflecting the contents of any virtual data room, diligence file, document repository, shared drive, or other platform or collection of materials established, maintained, accessed, or used in connection with the Estate Claims Marketing Process.

4.      All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the DIP Collateral Credit Bid and DIP Collateral Credit Bid Transaction, including any underwriting materials, Valuations, financial projections, analyses, assessments, evaluations, marketing materials, diligence, bid materials, presentations, indications of interest, or proposals conducted, prepared, sent, received, reviewed, or exchanged by or among You, the DIP Secured Parties, the DIP Agent, or any third party, including any advisors, consultants, agents, or representatives of any of the foregoing.

5.      All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning any Valuation, appraisal, assessment, analysis, diligence, evaluation, or estimate of the value, merits, risks, or potential recoveries of any claims, causes of action, or potential causes of action that has been, could have been, or may be asserted against

12

BDO by You; any of Your creditors, lenders, or stakeholders; or any litigation trust or similar entity or representative established under the Plan.

6. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the amount, nature, or status of any accrued or outstanding Administrative Expense Claims at or attributable to the Carnaby Debtors, including any analyses, schedules, reports, ledgers, summaries, or other records reflecting amounts owed on account of postpetition obligations incurred by or attributable to the Carnaby Debtors, and any Communications concerning the treatment of such claims under the Plan or the Global Settlement.

7. All Documents and Communications, including Communications among the Plan Negotiation Parties or with any third party, concerning the decision to designate certain parties, including Onset, as a Specified Non-Released Party under the Plan and Global Settlement, including any analyses, memoranda, presentations, discussion materials, negotiations, or Communications regarding the criteria for, scope of, or implications of such designation, and any discussions with any third parties concerning the same.

8. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the negotiation of the Global Settlement, including any term sheets, proposals, counterproposals, or drafts exchanged among the Debtors, the Ad Hoc Group, the Creditors' Committee, or the DIP Secured Parties, and any analyses of the benefits, costs, risks, or alternatives considered in connection therewith.

9. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the Litigation Trust Waterfall, including any analyses, models, projections, or estimates of potential recoveries by any class of Litigation Trust Interest holders, any analyses of the impact of the Litigation Trust Waterfall on creditors (including administrative

expense creditors), and any alternative waterfall structures or distribution methodologies considered during the negotiation of the Global Settlement.

10. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the decision to convert certain of the Debtors' chapter 11 cases to cases under chapter 7, including any analyses of the impact of such conversion on the claims or interests of creditors of the Converting Debtors, and any alternatives to conversion that were considered.

11. All Documents and Communications produced, provided, or made available to any Person in response to any requests for the production of documents or similar discovery requests relating, in whole or in part, to the Global Settlement, Plan, or Disclosure Statement.

*[Remainder of page left blank intentionally]*

Dated: June 2, 2026
       Houston, Texas

**MUNSCH HARDT KOPF & HARR, PC**

*/s/ Deborah M. Perry*
Deborah M. Perry
Texas Bar No. 24002755
500 N. Akard Street, Suite 4000
Dallas, TX 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com

-and-

**MORRISON & FOERSTER LLP**
Carrie H. Cohen (admitted *pro hac vice*)
James Newton (admitted *pro hac vice*)
Ben Butterfield (admitted *pro hac vice*)
Bryan Kotliar (admitted *pro hac vice*)
250 West 55th Street
New York, NY 10019
Email: ccohen@mofo.com
Email: jnewton@mofo.com
Email: bbutterfield@mofo.com
Email: bkotliar@mofo.com

-and-

**MORRISON & FOERSTER LLP**
Anthony S. Fiotto (admitted *pro hac vice*)
Julia C. Koch (admitted *pro hac vice*)
200 Clarendon Street
Boston, MA 02116
Email: afiotto@mofo.com
Email: jkoch@mofo.com

-and-

**MORRISON & FOERSTER LLP**
Brian R. Michael (admitted *pro hac vice*)
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Email: bmichael@mofo.com

-and-

**MILBANK LLP**
Dennis F. Dunne (admitted *pro hac vice*)
Lisa Laukitis (admitted *pro hac vice*)
Jason Kestecher (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530 5858
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
Email: llaukitis@milbank.com
Email: jkestecher@milbank.com

-and-

**MILBANK LLP**
Andrew M. Leblanc (admitted *pro hac vice*)
Erin E. Dexter (admitted *pro hac vice*)
1101 New York Avenue NW,
Washington, DC 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586
Email: aleblanc@milbank.com
Email: edexter@milbank.com

*Attorneys for Onset Financial, Inc.*

# EXHIBIT 2

| | |
|---|---|
| **From:** | Chesky, Allie |
| **To:** | Lorente Sorolla, Juan; O"Brien, Elliott; Dunne, Dennis; Blazek, Hannah; Leblanc, Andrew; Laukitis, Lisa; Dexter, Erin; Kestecher, Jason |
| **Cc:** | Carlson, Clifford; Berezin, Robert; Singh, Sunny; Bostel, Kevin; Calabrese, Christine; Aquila, Elaina; Ferrier, Kyle; Bascoy, Alejandro; Jones, Taylor; Findlay, Loren; Winograd, Joshua; Nicholson, Tansy; Michael, Brian R.; Cohen, Carrie H.; Kotliar, Bryan; Fiotto, Anthony S.; Butterfield, Benjamin W.; Koch, Julia; Newton, James A.; MoFo_FBG; #First Brands_SPC; #FirstBrandsLit; dperry@munsch.com |
| **Subject:** | RE: First Brands - Onset"s Discovery Requests |
| **Date:** | Monday, July 13, 2026 2:07:37 PM |
| **Attachments:** | 2026.07.13 - Notice to Nicholas Haughey.pdf<br>2026.07.13 - Rule 30b6 Notice re Debtors Mtn to Extend Exclus.pdf |

Counsel,

Please find attached a re-set 30(b)(6) deposition notice and a re-set deposition notice for Nicholas Haughey in his personal capacity, both for July 17, 2026 at 1 p.m. ET.

Thank you.

Allie Chesky | Milbank | Associate
Pronouns: she/her/hers
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7553
achesky@milbank.com | milbank.com

---

**From:** Chesky, Allie
**Sent:** Tuesday, July 7, 2026 9:24 AM
**To:** Lorente Sorolla, Juan <Juan.LorenteSorolla@weil.com>; O'Brien, Elliott <eobrien@milbank.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>
**Cc:** Carlson, Clifford <Clifford.Carlson@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Subject:** RE: First Brands - Onset's Discovery Requests

Counsel,

Please find attached a re-set 30(b)(6) deposition notice and a re-set deposition notice for Nicholas Haughey in his personal capacity, both for July 13, 2026 at 3 p.m. ET.

Thank you.

Allie Chesky | Milbank | Associate
Pronouns: she/her/hers
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7553
achesky@milbank.com | milbank.com

---

**From:** Chesky, Allie
**Sent:** Monday, June 22, 2026 2:27 PM
**To:** Lorente Sorolla, Juan <Juan.LorenteSorolla@weil.com>; O'Brien, Elliott <eobrien@milbank.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>
**Cc:** Carlson, Clifford <Clifford.Carlson@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Subject:** RE: First Brands - Onset's Discovery Requests

Counsel,

Please find attached a re-set 30(b)(6) deposition notice and a re-set deposition notice for Nicholas Haughey in his personal capacity, both for July 7, 2026 at 2 p.m. ET.

Thank you.

Allie Chesky | Milbank | Associate
Pronouns: she/her/hers
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7553
achesky@milbank.com | milbank.com

**From:** Lorente Sorolla, Juan <Juan.LorenteSorolla@weil.com>
**Sent:** Monday, June 22, 2026 1:51 PM
**To:** Chesky, Allie <achesky@milbank.com>; O'Brien, Elliott <eobrien@milbank.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>
**Cc:** Carlson, Clifford <Clifford.Carlson@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Subject:** [EXT] RE: First Brands - Onset's Discovery Requests

Counsel,

Further to the Debtors' Amended and Supplemental Responses and Objections to Onset's First Set of Interrogatories, served June 20, the Debtors are producing the summary of the Carnaby Debtors' estimated administrative expense claims that the Debtors identified, pursuant to Federal Rule of Civil Procedure 33(d), in their responses to Interrogatory Nos. 1 and 5. This is the Debtors' fourteenth production to Onset.

The document is available for download via the CloudShare link that you will receive in a separate email. The Bates range for the production and the password to access the zip file are below:

- Production: FBGH014
- Bates range: FBGH00109753 - FBGH00109754
- Password: 0WRBO9hW8zW1JkBuV864UxiD

The production is designated Highly Confidential under the Protective Order [ECF No. 408].

Best regards,

Juan

**Juan Lorente Sorolla**
**Weil, Gotshal & Manges LLP**
Office: +1 650 802 3009
Cell: +1 917 745 2905

---

**From:** Lorente Sorolla, Juan
**Sent:** Saturday, June 20, 2026 4:40 PM
**To:** 'Chesky, Allie' <achesky@milbank.com>; O'Brien, Elliott <eobrien@milbank.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>
**Cc:** Carlson, Clifford <Clifford.Carlson@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Subject:** RE: First Brands - Onset's Discovery Requests

Counsel,

On behalf of the Debtors, Weil, Gotshal & Manges LLP hereby provides, pursuant to the governing Protective Order [ECF No. 408], Debtors' Amended and Supplemental Responses and Objections to Onset Financial, Inc.'s First Set of Interrogatories in Connection with the Second Exclusivity Motion (attached).

The Debtors are also providing, with this email, the summary referenced in the Debtors' responses to Interrogatory Nos. 1 and 5. The Debtors will produce that summary formally, at which time it will be identified by Bates number. The summary is designated HIGHLY CONFIDENTIAL under the Protective Order.

The summary reflects the Debtors' own information. Other than that summary, to the extent these Interrogatories seek Mediation Information as defined in the Court's mediation orders [ECF Nos. 1822 and 2186], the Debtors withhold such information as strictly

confidential and not discoverable under those orders and Rule 408, and without waiver of any applicable privilege.

The Debtors expressly reserve all rights, including to supplement pursuant to Federal Rule of Civil Procedure 26 as their analysis is finalized.

Please let us know if you have any questions.

Sincerely,
Juan

**Juan Lorente Sorolla**
**Weil, Gotshal & Manges LLP**
Office: +1 650 802 3009
Cell: +1 917 745 2905

---

**From:** Chesky, Allie <achesky@milbank.com>
**Sent:** Friday, June 19, 2026 12:27 PM
**To:** Aquila, Elaina <Elaina.Aquila@weil.com>; O'Brien, Elliott <eobrien@milbank.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Lorente Sorolla, Juan <Juan.LorenteSorolla@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>
**Cc:** Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Subject:** RE: First Brands - Onset's Discovery Requests

Elaina,

Please find attached a revised 30(b)(6) notice setting the time at 2pm ET on Monday.  As previewed, a notice of deposition of Mr. Haughey in his individual capacity for the same date and time is also attached.

Regarding Onset's document requests: can you confirm whether the Debtors' productions in response to Onset Financial, Inc.'s First Set of Requests for Production of Documents in Connection with the Second Exclusivity Motion are complete?  In particular, please confirm (1) whether the Debtors intend to produce documents in response to Request No. 5, (2) whether the Debtors are withholding documents responsive to Request No. 5, and (3) if so, please provide the basis for withholding those documents.

Thank you.

Allie Chesky | Milbank | Associate
Pronouns: she/her/hers
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7553
achesky@milbank.com | milbank.com

---

**From:** Aquila, Elaina <Elaina.Aquila@weil.com>
**Sent:** Wednesday, June 17, 2026 5:21 PM
**To:** O'Brien, Elliott <eobrien@milbank.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Lorente Sorolla, Juan <Juan.LorenteSorolla@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>
**Cc:** Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Subject:** [EXT] RE: First Brands - Onset's Discovery Requests

Elliott,

The Debtors are working expeditiously to finish the analysis going into the document we promised last week. Further, we are preparing R&Os to the subsequently served interrogatories, which we aim to provide by 5 PM ET tomorrow.

The Debtors 30(b)(6) witness will be Nicholas Haughey.

We will respond with further information as soon as we can.

Best,
Elaina


**Elaina Aquila | Weil**
Tel:  +1 212 310 8814
Cell: +1 646 469 2168

---

**From:** O'Brien, Elliott <eobrien@milbank.com>
**Sent:** Wednesday, June 17, 2026 5:03 PM
**To:** Carlson, Clifford <Clifford.Carlson@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Lorente Sorolla, Juan <Juan.LorenteSorolla@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>
**Cc:** Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Subject:** RE: First Brands - Onset's Discovery Requests


Counsel,

We still have not received any updates from you following our meet and confer last Wednesday regarding our document requests related to the Second Exclusivity Motion. We have not received the surcharge-related document you indicated would be forthcoming during the meet and confer, nor have we received any follow-up regarding any other responsive documents you may have.  Please let us know the status of these items as soon as possible given the hearing one week from today.

Further, we again request that you let us know who you intend to designate as the Debtors' Rule 30(b)(6) representative for the deposition noticed for Monday at 10am ET.  Additionally, please identify any witness you intend to call at the June 24 hearing on the Second Exclusivity Motion and provide us with any documents you intend to offer in

evidence at the hearing.

Finally, we assume you intend to respond to the interrogatories sent to you on June 12 in connection with the Second Exclusivity Motion by the noticed deadline, June 18 at 5pm ET, and we look forward to receiving those responses.

Best,

Elliott O'Brien | Milbank | Associate
Pronouns: he/him/his
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7588
eobrien@milbank.com | milbank.com

---

**From:** O'Brien, Elliott
**Sent:** Tuesday, June 16, 2026 2:03 PM
**To:** Aquila, Elaina <Elaina.Aquila@weil.com>; Lorente Sorolla, Juan <Juan.LorenteSorolla@weil.com>
**Cc:** Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Subject:** RE: First Brands - Onset's Discovery Requests

Counsel,

We have not received any updates from you following our meet and confer last Wednesday regarding our document requests related to the Second Exclusivity Motion. We would appreciate an update from you on the status of the one further document you indicated would be forthcoming as well as on your follow-up regarding what other responsive documents you may have.

We are available to meet and confer further to the extent helpful regarding our interrogatories and deposition notice. Please let us know who the Debtors intend to

designate as their 30(b)(6) representative.  We will provide links for Monday's virtual deposition later this week.

Best,

Elliott O'Brien | Milbank | Associate
Pronouns: he/him/his
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7588
eobrien@milbank.com | milbank.com

---

**From:** O'Brien, Elliott
**Sent:** Friday, June 12, 2026 9:56 PM
**To:** Aquila, Elaina <Elaina.Aquila@weil.com>; Lorente Sorolla, Juan <Juan.LorenteSorolla@weil.com>; Blazek, Hannah <hblazek@milbank.com>; Dunne, Dennis <DDunne@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Koch, Julia <JKoch@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Cc:** Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>
**Subject:** RE: First Brands - Onset's Discovery Requests

Counsel,

As previewed during our meet-and-confer on June 10, attached please find (i) Onset's 30(b)(6) deposition notice, noticing a remote deposition on June 22, and (ii) Onset's First Interrogatories In Connection With The Second Exclusivity Motion, requesting responses by June 18 at 5pm ET.

We appreciate your prompt attention to these and are happy to discuss.

Best,

Elliott O'Brien | Milbank | Associate

Pronouns: he/him/his
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7588
eobrien@milbank.com | milbank.com

---

**From:** O'Brien, Elliott
**Sent:** Thursday, June 11, 2026 4:39 PM
**To:** Aquila, Elaina <Elaina.Aquila@weil.com>; Lorente Sorolla, Juan <Juan.LorenteSorolla@weil.com>; Blazek, Hannah <hblazek@milbank.com>; Dunne, Dennis <DDunne@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Koch, Julia <JKoch@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Cc:** Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>
**Subject:** RE: First Brands - Onset's Discovery Requests

Elaina,

Following up on yesterday's call, please let us know if you have any further updates or information regarding our document requests.

Best,

Elliott O'Brien | Milbank | Associate
Pronouns: he/him/his
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7588
eobrien@milbank.com | milbank.com

---

**From:** O'Brien, Elliott <eobrien@milbank.com>
**Sent:** Tuesday, June 9, 2026 2:02 PM
**To:** Aquila, Elaina <Elaina.Aquila@weil.com>; Lorente Sorolla, Juan <Juan.LorenteSorolla@weil.com>; Blazek, Hannah <hblazek@milbank.com>; Dunne, Dennis <DDunne@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H.

<CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Koch, Julia <JKoch@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com

**Cc:** Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>
**Subject:** RE: First Brands - Onset's Discovery Requests

Elaina,

Tomorrow at 4pm ET works on our end; would appreciate if you could distribute an invitation to myself, Lisa Laukitis, Erin Dexter, Jason Kestecher, and Hannah Blazek from our team.

Best,

Elliott O'Brien | Milbank | Associate
Pronouns: he/him/his
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7588
eobrien@milbank.com | milbank.com

---

**From:** Aquila, Elaina <Elaina.Aquila@weil.com>
**Sent:** Tuesday, June 9, 2026 1:34 PM
**To:** O'Brien, Elliott <eobrien@milbank.com>; Lorente Sorolla, Juan <Juan.LorenteSorolla@weil.com>; Blazek, Hannah <hblazek@milbank.com>; Dunne, Dennis <DDunne@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Koch, Julia <JKoch@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Cc:** Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Jones, Taylor

<Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua
<Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>
**Subject:** [EXT] RE: First Brands - Onset's Discovery Requests


Elliott, we are available tomorrow between 4 and 6:30 PM ET or Thursday between 3–3:30 or 4–6
PM ET.


Elaina Aquila | Weil
Tel: +1 212 310 8814
Cell: +1 646 469 2168

---

**From:** O'Brien, Elliott <eobrien@milbank.com>
**Sent:** Tuesday, June 9, 2026 12:01 PM
**To:** Lorente Sorolla, Juan <Juan.LorenteSorolla@weil.com>; Blazek, Hannah
<hblazek@milbank.com>; Dunne, Dennis <DDunne@milbank.com>; Leblanc, Andrew
<ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin
<EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R.
<BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan
<BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W.
<BButterfield@mofo.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Koch, Julia
<JKoch@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Kotliar, Bryan
<BKotliar@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>;
MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>;
#FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Cc:** Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel,
Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Aquila,
Elaina <Elaina.Aquila@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Bascoy, Alejandro
<Alejandro.Bascoy@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren
<Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy
<Tansy.Nicholson@weil.com>
**Subject:** RE: First Brands - Onset's Discovery Requests


Counsel,


We would like to meet and confer regarding your production, as well as your responses and
objections to Onset's requests.  Please let us know your availability to meet today after
3pm ET or tomorrow after 9:30am ET.


Sincerely,

Elliott O'Brien | Milbank | Associate
Pronouns: he/him/his
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7588

eobrien@milbank.com | milbank.com

**From:** Lorente Sorolla, Juan <Juan.LorenteSorolla@weil.com>
**Sent:** Monday, June 8, 2026 4:01 PM
**To:** Blazek, Hannah <hblazek@milbank.com>; Dunne, Dennis <DDunne@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Koch, Julia <JKoch@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Cc:** Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>
**Subject:** [EXT] RE: First Brands - Onset's Discovery Requests

Counsel,

On behalf of Debtors, Weil, Gotshal & Manges LLP hereby provides (i) Debtors' Responses and Objections to Onset Financial, Inc.'s First Set of Requests for Production (attached) and (ii) Debtors' corresponding production of documents.

All documents produced are provided pursuant to the governing Protective Order [ECF No. 408], entered in *In re First Brands Group, LLC, et al.* (Case No. 25-90399 (CML)). Debtors expressly reserve any and all rights to assert objections on any appropriate grounds. Any production of privileged or otherwise protected information is inadvertent and does not constitute a waiver of such protections.

All documents are available for download via the Cloudshare link that you will soon receive in a separate email. The information below lists the Bates range for the production and the password to access the zip file:

- Production: FBGH013
- Bates Range: FBGH00109155 – FBGH00109752
- Password: _A6ReSw?Su!piqi*Ed

To the extent necessary, Debtors will supplement this document production pursuant to

Federal Rule of Civil Procedure 26.

Please do not hesitate to contact us should you have any questions or issues accessing the documents.

Sincerely,
Juan

**Juan Lorente Sorolla**
**Weil, Gotshal & Manges LLP**
Office: +1 650 802 3009
Cell: +1 917 745 2905

---

**From:** Aquila, Elaina <Elaina.Aquila@weil.com>
**Sent:** Friday, June 5, 2026 12:02 PM
**To:** Blazek, Hannah <hblazek@milbank.com>; Ferrier, Kyle <Kyle.Ferrier@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>; Lorente Sorolla, Juan <Juan.LorenteSorolla@weil.com>
**Cc:** Dunne, Dennis <DDunne@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Koch, Julia <JKoch@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Subject:** RE: First Brands - Onset's Discovery Requests

The Debtors will be withdrawing the Global Settlement Motion. We are working on providing formal responses, and related documents, to your other request.

The Debtors reserve all rights.

Elaina Aquila | Weil
Tel: +1 212 310 8814

Cell: +1 646 469 2168

---

**From:** Blazek, Hannah <hblazek@milbank.com>
**Sent:** Friday, June 5, 2026 2:19 PM
**To:** Ferrier, Kyle <Kyle.Ferrier@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Bascoy, Alejandro <Alejandro.Bascoy@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>
**Cc:** Dunne, Dennis <DDunne@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Koch, Julia <JKoch@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com
**Subject:** RE: First Brands - Onset's Discovery Requests

Counsel,

We write to follow up regarding the Requests we served on Tuesday morning. Given the upcoming deadline to respond to the Global Settlement Motion, we would appreciate an update on the status of the Debtors' document productions.

We remain available to discuss.

Kind regards,

Hannah

Hannah Blazek | Milbank | Associate
Pronouns: she/her/hers
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7504
HBlazek@milbank.com | milbank.com

---

**From:** Blazek, Hannah
**Sent:** Tuesday, June 2, 2026 10:18 AM
**To:** Ferrier, Kyle <Kyle.Ferrier@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Bascoy, Alejandro

<Alejandro.Bascoy@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Jones, Taylor <Taylor.Jones@weil.com>; Findlay, Loren <Loren.Findlay@weil.com>; Winograd, Joshua <Joshua.Winograd@weil.com>; Nicholson, Tansy <Tansy.Nicholson@weil.com>
**Cc:** Dunne, Dennis <DDunne@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Koch, Julia <JKoch@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; Perry, Deborah <dperry@munsch.com>
**Subject:** First Brands - Onset's Discovery Requests

Counsel,

Attached please find (i) Onset's First Requests to the Debtors for the Production of Documents in Connection with the Global Settlement Motion, and (ii) Onset's First Requests to the Debtors for the Production of Documents in Connection with the Second Exclusivity Motion (together, the "Requests").  The Requests require that document production commence on an immediate and rolling basis, to be concluded no later than June 9, 2026, at 5:00 PM ET.

We appreciate your prompt attention to these Requests and are happy to discuss.

Kind regards,

Hannah

Hannah Blazek | Milbank | Associate
Pronouns: she/her/hers
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7504
HBlazek@milbank.com | milbank.com


===================================== IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor. ===================================== This e-mail message may contain

legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you. ====================================== IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor. ====================================== This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you. ====================================== IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor. ====================================== This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or

the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you. ======================================= IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor. ======================================= This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

# EXHIBIT 3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re<br><br>FIRST BRANDS GROUP, LLC *et al.*,[1]<br><br>  Debtors. | Chapter 11<br>Case No. 25-90399 (CML)<br>(Jointly Administered) |

**ONSET'S FIRST REQUESTS TO THE DEBTORS FOR THE PRODUCTION OF
DOCUMENTS IN CONNECTION WITH THE PLAN**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to the above-captioned chapter 11 cases pursuant to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 7026, 7034, and 9014, and the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), Onset Financial, Inc. ("Onset"), by and through its undersigned counsel, submits these requests for the production of documents (the "Document Requests," and each a "Request") to First Brands Group, LLC and its associated debtors and debtors-in-possession (the "Debtors", "First Brands", or "You") concerning the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Dkt. No. 3019], and as it may be amended, modified, or supplemented (the "Plan"). Onset hereby requests that You (as further defined below) produce the documents described herein for inspection and copying at the offices of Milbank, LLP, located at 55 Hudson Yards, New York, New York 10001 on an immediate and rolling basis to be concluded no later than July 6, 2026, at 5:00 p.m. ET. Onset reserves the right to serve supplemental and additional discovery requests.

---

[1]  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands/. The Debtors' service address for these chapter 11 cases (the "Chapter 11 Cases") is 127 Public Square, Suite 5300, Cleveland, OH 44114.

**DEFINITIONS**

The following definitions shall apply to the terms used in these Document Requests, regardless of whether they are capitalized or uncapitalized. Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1.      "ABL Collateral Trust Assets" has the meaning set forth in the Plan.

2.      "ABL Secured Parties" has the meaning set forth in the DIP Order, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any ABL Secured Party's behalf or retained by any ABL Secured Party, and any predecessor or successor of any of the foregoing.

3.      "Ad Hoc Group" has the meaning set forth in the DIP Order, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on behalf of any member of the Ad Hoc Group, and any predecessor or successor of any of the foregoing.

4.      "Administrative Expense Claim" has the meaning set forth in the Plan.

5.      "Advisors" means any and all former or current advisors or professionals that previously advised or provided services or are currently advising or providing services.

6.      "Affiliate" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code (11 U.S.C. §§ 101–1532, as amended).

7.      "BDO" means BDO USA, LLP, BDO USA, P.A., BDO USA, P.C., and any Advisors, Affiliates, agents, assigns, directors, employees, officers, parents, partners, representatives, subsidiaries, independent contractors, attorneys, and/or any other Person or entities purporting to act on its behalf, and/or under its control.

2

8. "Carnaby Debtors" means Carnaby Inventory IV, LLC; Carnaby Inventory Holdings IV, LLC; Carnaby Capital Holdings, LLC; Carnaby Capital, LLC; Carnaby FA, LLC; Carnaby FA Holdings, LLC, and Eagle Casting Holdings, LLC.

9. "Communication(s)" means the transmittal or exchange of information, in any form and by any means, including, but not limited to, documents, writings, letters, notes, correspondence, electronic mail, text message, sound recordings, video recordings, instant message, or other exchange of information in any form, and any recordings or memorialization, in any format, of face-to-face conversations, telephone conversations, meetings, or conferences.

10. "Creditors' Committee" has the meaning set forth in the Plan, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any unsecured creditor's behalf or retained by any unsecured creditor, and any predecessor or successor of any of the foregoing.

11. "Debtors", "You", and "Your" means the debtors and debtors in possession in the above-captioned Chapter 11 Cases, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any Debtor's behalf or retained by any Debtor, and any predecessor or successor of any of the foregoing.

12. "DIP Agent" has the meaning set forth in the DIP Order, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any DIP Agent's behalf or retained by any DIP Agent, and any predecessor or successor of any of the foregoing.

13. "DIP Collateral Credit Bid" has the meaning set forth in the Plan.

14. "DIP Collateral Credit Bid Transaction" has the meaning set forth in the Plan.

15. "DIP Collateral Trust Assets" has the meaning set forth in the Plan.

16. "DIP Order" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Priorities; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Dkt. No. 608].

17. "DIP Secured Parties" has the meaning set forth in the DIP Order, as well as any Advisors, Affiliates, agents, assigns, consultants, directors, employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any DIP Secured Party's behalf or retained by any DIP Secured Party, and any predecessor or successor of any of the foregoing.

18. "Disclosure Statement" means the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Dkt. No. 3020], and as it may be amended, modified, or supplemented.

19. "Documents" is intended to have the broadest possible meaning under the Federal Rules and Bankruptcy Rules, and includes, but is not limited to, all originals, non-identical copies and copies with marginal notations or interlineations of any written Communications, writings, sworn statements, deposition transcripts, affidavits, recordings, photographs, phone records, computer data, electronic mail or other item containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form maintained. "Document" also includes all Electronically Stored Information. "Document" further means any document in the possession, custody or control of the entities and individuals to whom this document request is directed (together with any employees, agents, and attorneys). Without limitation to the term "control" as used in the preceding sentence, an entity or individual is deemed

to be in control of a document if that entity or individual has the right to secure the document or a copy thereof from another entity or individual having actual possession thereof.  A draft or non-identical copy is a separate Document within the meaning of this term.

20.     "Electronically Stored Information" has the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and refers to all computer or electronically stored or generated data and information, and includes all attachments to and enclosures with any requested item, and all drafts thereof.  "Electronically Stored Information" includes information stored in any format and on any storage media, including: hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable.  "Electronically Stored Information" also includes all associated metadata that is maintained or saved, which includes: a document's title or name; file name; date and time of creation; date and time of last edit; identity of author; identity of owner; identities of editors; identities of recipients; changes; history of changes; email header information; history of who viewed an email and when; and email routing information.

21.     "Estate Claims Credit Bid" has the meaning set forth in the Plan.

22.     "Estate Claims Credit Bid Transaction" has the meaning set forth in the Plan.

23.     "Estate Claims Marketing Process" has the meaning set forth in the Disclosure Statement.

24.     "Examiner" has the meaning set forth in the Plan.

25.     "Exculpated Parties" has the meaning set forth in the Plan.

26.     "Insurance Rights" has the meaning set forth in the Plan.

27.     "Litigation Trust Agreement" has the meaning set forth in the Plan.

28.     "Litigation Trust Assets" has the meaning set forth in the Plan.

29.     "Litigation Trust Interests" has the meaning set forth in the Plan.

30. "Litigation Trust Waterfall" has the meaning set forth in the Plan.

31. "Person" includes both the singular and the plural, and means any natural person, business entity, corporation, cooperative, public corporation, partnership, joint venture, or organization. Each reference to a natural Person shall be deemed to include that Person's agents, attorneys, and any Person who acted or purported to act on that Person's behalf.

32. "Plan Negotiation Parties" means the Debtors, the DIP Secured Parties, the ABL Secured Parties, and the Creditors' Committee.

33. "Plan Settlement" has the meaning set forth in the Plan.

34. "Released Parties" has the meaning set forth in the Plan.

35. "Specified Non-Released Parties" has the meaning set forth in the Plan.

36. "SPV Debtors" has the meaning set forth in the Plan.

37. "SPV Lender" has the meaning set forth in the Plan.

38. "Valuation" means any formal or informal assessment, appraisal, estimate, or analysis of financial worth, including reports, models, spreadsheets, presentations, or other Communications or Documents reflecting methodologies, assumptions, or determinations regarding asset values or enterprise value.

39. The terms "all," "each," and "any" shall be construed to mean all, each, every, any, "each and every," and "any one."

40. The connectives "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the request.

41. The words "concerning," "comprising," "regarding," "reflecting," "in connection with," or "relating to" shall expansively mean, directly or indirectly, referring to, reflecting, concerning, embodying, regarding, mentioning, analyzing, describing, pertaining to, relating to,

arising out of or in connection with or in any way legally, logically, or factually connected with the matter discussed.

42. The words "including" or "includes" shall mean "including but not limited to and without limitation" or "includes but is not limited to and without limitation."

43. Any ambiguity in a request shall be construed to bring within the scope of the request all responses that otherwise could be construed to be outside of its scope.

## INSTRUCTIONS

1. You are instructed to produce all Documents responsive to the Document Requests that are within Your possession, custody, or control, or in the possession, custody, or control of any other Person or entity acting or purporting to act on Your behalf.

2. Unless otherwise stated, these Document Requests seek production of Documents dated, prepared, generated, transmitted, or received during the period from and including August 1, 2025 to present (the "Relevant Period").

3. Each request for the production of Documents shall be deemed to be continuing in nature. If at any time additional Documents come into Your possession, custody, or control or are brought to Your attention, You will promptly supplement Your response to these Document Requests.

4. Each Request shall be responded to completely, separately, and fully. If there are no Documents responsive to any particular Request, Your response shall so state in writing.

5. If, in responding to the Document Requests, You encounter any ambiguities when construing a request or definition, Your response shall set forth the matter deemed ambiguous and the construction used in responding.

6. In construing the Document Requests, the singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense

7

shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

7.      All Documents shall be produced in the manner in which they are maintained in the usual course of Your business and/or You shall organize and label the Documents to correspond to each request contained herein.  A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself. Documents attached to each other shall not be separated.

8.      You shall produce all Electronically Stored Information in accordance with the following specifications:

    a.   <u>TIFFs</u>.  Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata.  Name each tiff file with a unique name matching the bates number labeled on the corresponding page.  Group every 10,000 tiffs into a new folder; do not create a separate folder for each document.

b. <u>Native Format</u>. For files created by Excel or other spreadsheet programs, PowerPoint or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the bates number on the first page of the corresponding tiff production of the file / document. Group native files within incrementally named "NATIVE" directories, separate from images directories.

c. <u>Text Files</u>. For each document a text file should be provided. Each text file should bear the name of the beginning page of each document. To the extent possible, the text of native files should be extracted directly from the native files, except that for a text file corresponding to a redacted document the text may be extracted from OCR of the redacted TIFF file (instead of the native document).

d. <u>Unique IDs</u>. Each TIFF image should have a unique, sequential identifying number which is the Bates number of the page as specified herein. Each native file should have a unique, sequential identifying number which corresponds with the TIFF numbering scheme as specified herein.

e. <u>Metadata Fields</u>. The following metadata fields should be populated to the extent field values are available in the source data:

| Field Name | Field Type | Description |
| --- | --- | --- |
| BegDoc | Text | Document ID number associated with the first page. |
| EndDoc | Text | Document ID number associated with the last page. |
| BegAttach | Text | Document ID number associated with the first page of a parent. |
| EndAttach | Text | Document ID number associated with the last page of the last attachment to a parent. |
| Doc_Pages | Numeric | Number of pages. |
| Document Author | Paragraph | Display name of the author of a document. |
| From | Paragraph | Display name of the sender of an email. |
| To | Paragraph | Display name of the recipient(s) of an email. |
| CC | Paragraph | Combine CC and CC Email field into one CC field |
| BCC | Paragraph | Display name of the blind copyee(s) of a document. |
| Subject | Paragraph | Subject line of an email. |
| Custodian | Text | Custodian of an email. |
| Custodian Duplicates | | List of all custodians for a particular document. |
| File Original Path | Paragraph | Full path to a native copy of an email in source data or the folder of a document. |
| File Ext | Paragraph | File extension. |

9

| Field Name | Field Type | Description |
|---|---|---|
| File Name | Paragraph | File name. |
| File Type | Paragraph | File Type. (ex. Word, Excel, E-mail etc.) |
| File Size | Paragraph | File size. |
| Full/OCR Text | Paragraph | Path to where the Extracted or OCR text can be found. |
| Date Modified | Date in MM/DD/YYYY format | Last Modified date. |
| Date Sent | Date in MM/DD/YYYY format | Email sent date. |
| Date Created | Date in MM/DD/YYYY format | File created date. |
| Time Modified | Time in HH:MM format | Last Modified time. |
| Time Sent | Time in HH:MM format | Email sent time. |
| Time Created | Time in HH:MM format | File created time. |
| Message ID | Paragraph | Email Internal message ID |
| MD5HASH | Paragraph | Algorithm that represents a unique value; the MD5 hash fingerprint of an email. |
| Redactions | Y/N | Descriptor for documents that have been redacted. |
| Confidentiality Designations | Paragraph | Descriptor for confidentiality designation applied to document during production. |

Metadata pertaining to date/time should be maintained in Universal Coordinated Time (UTC).

f.  Database Load Files and Cross Reference Files.  Documents should be provided with a Concordance (e.g., .dat)-delimited file utilizing the standard Concordance delimiters (Comma: ASCII 20 Quote: ASCII 254 Newline: ASCII 174) as specified in the Concordance User Manual and an Opticon-delimited file.  Every TIFF and native file in each production must be referenced in the corresponding Load File. The total number of TIFF files referenced in the Opticon-delimited Load File within the production should match the total number of image files in the production.

g.  File Format Examples.

- Opticon Delimited File
  PROD00000001,20081123,IMAGES\001\PROD00000001.TIF,Y,,,60

10

- Concordance Delimited File
  þBEGDOCþ þENDDOCþ þBEGATTþ þENDATTþ þDOCIDþ

- Text Comma Delimited File
  PROD00000001,TEXT\001\PROD00000001.TXT

h. <u>De-Duplication</u>. Produce a single copy of each electronic document for which exact duplicates exist. For e-mail messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For e-mail attachments and stand-alone electronic files, consolidate duplicates based on MD5 hash of the entire file.

9. Any Document withheld from production based on privilege or any similar claim shall be identified by (i) the type of document, (ii) the general subject matter of the Document, (iii) the date of the Document, and (iv) such other information as is sufficient to identify the Document, including the author of the Document, the addressee of the Document, other recipients of the Document and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth in such writing. If a portion of a Document contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

10. If any Document within the scope of these Document Requests has been modified or altered in any way, including in part, identify (i) each such Document; (ii) its custodian; and (iii) the Person who modified or altered it. The circumstances of such modification or alteration shall be set forth in such writing, including how and why the Document was modified or altered.

11. If any Document within the scope of these Document Requests is no longer in Your possession or subject to Your control, state whether it is (i) missing or lost; (ii) destroyed; (iii) transferred voluntarily or involuntarily to others; or (iv) otherwise disposed of. In each instance, identify the current or last known custodian and the circumstances surrounding such disposition.

11

12.     If You object to any part of any Document Request, You shall state fully with specificity the nature of the objection.  Notwithstanding any objections, You shall nonetheless comply fully with the other parts of the Document Request not objected to.

13.     Onset reserves the right to request additional Documents as needed and to submit additional or supplemental document requests or other discovery requests, provided, further, that it expressly reserves its rights to supplement or amend the Document Requests.

## DOCUMENT REQUESTS

1.     All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning any Valuation, appraisal, description, diligence, analysis, financial information, modeling, evaluation, or assessment of any assets to be transferred, sold, assigned, abandoned, conveyed, or otherwise treated pursuant to the Plan, or any other disposition of assets of the Debtors' estates, including the ABL Collateral Trust Assets, the DIP Collateral Trust Assets, and the Litigation Trust Assets.  For the avoidance of any doubt, this Request also includes all Documents and Communications concerning any assets in which SPV Lenders assert an interest and which may or may not remain subject to dispute under the Plan.

2.     All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the Estate Claims Credit Bid, the Estate Claims Credit Bid Transaction, or the Estate Claims Marketing Process, including any underwriting materials, Valuations, financial projections, analyses, assessments, evaluations, marketing materials, diligence, bid materials, presentations, indications of interest, or proposals conducted, prepared, sent, received, reviewed, or exchanged by or among You, any bidder or potential bidder, or any third party, including any Advisors, Affiliates, consultants, agents, or representatives of any of the foregoing.

12

3. All Documents comprising, relating to, or reflecting the contents of any virtual data room, diligence file, document repository, shared drive, or other platform or collection of materials established, maintained, accessed, or used in connection with the Estate Claims Marketing Process.

4. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the DIP Collateral Credit Bid and DIP Collateral Credit Bid Transaction, including any underwriting materials, Valuations, financial projections, analyses, assessments, evaluations, marketing materials, diligence, bid materials, presentations, indications of interest, or proposals conducted, prepared, sent, received, reviewed, or exchanged by or among You, the DIP Secured Parties, the DIP Agent, or any third party, including any Advisors, Affiliates, consultants, agents, or representatives of any of the foregoing.

5. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning any Valuation, appraisal, assessment, analysis, diligence, evaluation, or estimate of the value, merits, risks, or potential recoveries of any claims, causes of action, or potential causes of action that has been, could have been, or may be asserted against BDO by You; any of Your creditors, lenders, or stakeholders; or any litigation trust or similar entity or representative established under the Plan.

6. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the amount, nature, or status of any accrued or outstanding Administrative Expense Claims at or attributable to each of the Debtors, including any analyses, schedules, reports, ledgers, summaries, or other records reflecting amounts owed on account of postpetition obligations incurred by or attributable to each of the Debtors, and any Communications concerning the treatment of such claims under the Plan or the Plan Settlement.

7. All Documents and Communications, including Communications among the Plan Negotiation Parties or with any third party, concerning the decision to designate certain parties,

including Onset, as a Specified Non-Released Party under the Plan and Plan Settlement, including any analyses, memoranda, presentations, discussion materials, negotiations, or Communications regarding the criteria for, scope of, or implications of such designation, and any discussions with any third parties concerning the same.

8. All Documents and Communications, including Communications among the Plan Negotiation Parties or with any third party, concerning the decision to designate certain parties as Released Parties or Exculpated Parties under the Plan and Plan Settlement, including any analyses, memoranda, presentations, discussion materials, negotiations, or Communications regarding the criteria for, scope of, or implications of such designations, and any discussions with any third parties concerning the same.

9. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the negotiation of the Plan Settlement, including any term sheets, proposals, counterproposals, or drafts exchanged among the Debtors, the Ad Hoc Group, the Creditors' Committee, the DIP Secured Parties, or any third party, and any analyses of the benefits, costs, risks, or alternatives considered in connection therewith.

10. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the Litigation Trust Waterfall, including any analyses, models, projections, or estimates of potential recoveries by any class of Litigation Trust Interest holders, any analyses of the impact of the Litigation Trust Waterfall on creditors (including administrative expense creditors), and any alternative waterfall structures or distribution methodologies considered during the negotiation of the Plan Settlement.

11. All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the negotiation of the Litigation Trust Agreement, including any term sheets, proposals, counterproposals, or drafts exchanged among the Debtors, the Ad Hoc

14

Group, the Creditors' Committee, the DIP Secured Parties, or any third party, and any analyses of the benefits, costs, risks, or alternatives considered in connection therewith.

12.     All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the Litigation Trust Assets and their transfer to the Litigation Trust, including but not limited to (i) all Documents and Communications concerning the Insurance Rights; and (ii) all Documents and Communications concerning the books, records, and investigative and/or discovery findings of the Debtors, the Examiner, and the Creditors' Committee, and any Advisors, Affiliates, consultants, agents, or representatives of any of the foregoing.

13.     All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the decision to or not to convert any of the Debtors' chapter 11 cases to cases under chapter 7, including but not limited to any analyses of the impact of conversion on the claims or interests of creditors of the SPV Debtors.

14.     All Documents and Communications produced, provided, or made available to any Person in response to any requests for the production of documents or similar discovery requests relating, in whole or in part, to the Plan Settlement, Plan, or Disclosure Statement.

*[Remainder of page left blank intentionally]*

Dated: June 17, 2026  
       Houston, Texas

**MUNSCH HARDT KOPF & HARR, PC**

*/s/ Deborah M. Perry*  
Deborah M. Perry  
Texas Bar No. 24002755  
500 N. Akard Street, Suite 4000  
Dallas, TX 75201-6659  
Telephone: (214) 855-7500  
Facsimile: (214) 855-7584  
Email: dperry@munsch.com

-and-

**MORRISON & FOERSTER LLP**  
Carrie H. Cohen (admitted *pro hac vice*)  
James Newton (admitted *pro hac vice*)  
Ben Butterfield (admitted *pro hac vice*)  
Bryan Kotliar (admitted *pro hac vice*)  
250 West 55th Street  
New York, NY 10019  
Email: ccohen@mofo.com  
Email: jnewton@mofo.com  
Email: bbutterfield@mofo.com  
Email: bkotliar@mofo.com

-and-

**MORRISON & FOERSTER LLP**  
Anthony S. Fiotto (admitted *pro hac vice*)  
Julia C. Koch (admitted *pro hac vice*)  
200 Clarendon Street  
Boston, MA 02116  
Email: afiotto@mofo.com  
Email: jkoch@mofo.com

-and-

**MORRISON & FOERSTER LLP**  
Brian R. Michael (admitted *pro hac vice*)  
707 Wilshire Boulevard  
Los Angeles, CA 90017-3543  
Email: bmichael@mofo.com

-and-

16

**MILBANK LLP**
Dennis F. Dunne (admitted *pro hac vice*)
Lisa Laukitis (admitted *pro hac vice*)
Jason Kestecher (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530 5858
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
Email: llaukitis@milbank.com
Email: jkestecher@milbank.com

-and-

**MILBANK LLP**
Andrew M. Leblanc (admitted *pro hac vice*)
Erin E. Dexter (admitted *pro hac vice*)
1101 New York Avenue NW,
Washington, DC 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586
Email: aleblanc@milbank.com
Email: edexter@milbank.com

*Attorneys for Onset Financial, Inc.*

17

# EXHIBIT 4

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| ------------------------------------------------------- | § | |

**DEBTORS' RESPONSES AND OBJECTIONS TO ONSET'S FIRST REQUESTS FOR
PRODUCTION OF DOCUMENTS IN CONNECTION WITH PLAN**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable to the above-captioned proceeding by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), and other applicable law, First Brands Group, LLC and its debtor affiliates ("**the Debtors**") by and through their undersigned counsel, hereby submit these responses and objections (the "**Responses**," and each specific response and objection, a "**Response**") to *Onset's First Requests to the Debtors for the Production of Documents in Connection with the Plan*, dated June 17, 2026 (the "**Requests**," and each specific request for production, a "**Request**") issued by Onset (as defined in the Requests). The Debtors expressly reserve their rights to supplement, modify, revise, or correct the Responses herein at any time in accordance with the applicable rules.

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

**<u>RESERVATION OF RIGHTS</u>**

1.      With all of their rights expressly reserved, the Debtors respond to the Requests in good faith and in accordance with the Federal Rules, the Bankruptcy Rules, the Local Rules and/or any other rules, law, or court order governing the proper scope, timing, and extent of discovery in these proceedings.

2.      The Debtors submit the Responses subject to, without intending to waive, and expressly preserving: (a) any objections as to the competence, relevance, materiality, privilege, and/or admissibility into evidence of any Response herein or materials produced in response to any Request; (b) the right to object to other discovery procedures involving or relating to the subject matter of the Requests, the Responses, or documents produced in response to the Requests; (c) any objections to overbreadth, undue burden, vagueness, or ambiguity; and (d) the right to revise, correct, supplement, or clarify the Responses herein at any time.

3.      The Responses are made pursuant to and subject to the General Objections, Objections to Definitions, Objections to Instructions, and Specific Responses and Objections set forth herein.  The Debtors do not waive, and expressly preserve, all available objections.

4.      The Debtors do not admit, adopt, or acquiesce in any factual or legal contention, assertion, assumption, characterization, or implication contained in the Requests.  By responding and objecting to the Requests or producing documents in response to the Requests, the Debtors do not intend to waive, and do not waive, any defenses to the Requests or any other demand, subpoena, request, action, or any other case brought by Onset or any other party.

5.      Any document produced by the Debtors in response to the Requests does not constitute an admission or acknowledgement that any such Request is proper, that the information sought is relevant or admissible in any proceeding, or that requests for similar information will be

2

treated in a similar fashion. Whether the Debtors have produced documents or responded to any particular Request should not be interpreted as an admission that the Debtors accept or admit the existence of any fact(s) set out or assumed by such Request.

6. None of the Responses shall be construed as admitting that the Debtors have in their possession, custody, or control any documents responsive to any Request. The Debtors do not represent that any responsive documents exist in response to any particular Request, but rather that they will undertake a reasonably diligent search across a reasonable universe of documents and produce non-privileged documents responsive to the Request (if any).

7. The Debtors do not waive, and hereby assert and preserve, all applicable privileges and protections, including the attorney-client privilege, attorney-work-product doctrine, and any other applicable privilege or immunity.

8. Any document produced by the Debtors in response to the Requests is produced pursuant to, and shall be subject to, the terms of the Protective Order (ECF No. 408) entered in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

## GENERAL OBJECTIONS

1. These General Objections are applicable to the Requests in their entirety and are incorporated into each specific Response as if fully repeated therein. The Objections to Definitions and Objections to Instructions shall likewise apply equally to any definition, instruction, or Request that incorporates that definition or instruction. The Debtors reserve the right to assert additional objections to the Requests as necessary and/or appropriate.

2. The Debtors object to the Requests insofar as they are overbroad, unduly burdensome, vague, ambiguous, redundant, harassing, or oppressive. The Debtors further object to the Requests to the extent they seek the production of information that is neither relevant nor

proportionate to the discovery needs of these Chapter 11 Cases, including with respect to confirmation of the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Dkt. No. 2981) (the "**Plan**"). The Debtors additionally object to the Requests to the extent they seek documents and communications that the Debtors have already produced to Onset or their counsel in connection with these Chapter 11 Cases.

3. The Debtors object to the Requests insofar as they seek the production of "all" or "any" documents and communications on the grounds that it is impracticable, overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases.

4. The Debtors object to the Requests to the extent that they call for the production of documents not within the Debtors' possession, custody, or control, or for the production of documents not obtainable by means of a reasonably diligent search proportionate to the discovery needs of these Chapter 11 Cases.

5. The Debtors object to the Requests to the extent that they call for the production of documents and the disclosure of information subject to: (a) the attorney-work-product doctrine; (b) the attorney-client privilege; (c) the common interest privilege; (d) the mediation privilege; and/or (e) any other applicable privilege, protection, or immunity from discovery. The Debtors reserve the right to redact any material covered by items (a) through (e) of this paragraph, as well as to demand the return and/or destruction of any document and all copies thereof that are protected by such privilege, rule, doctrine, or immunity.

6. The Debtors object to the Requests to the extent they call for the production of documents and the disclosure of information protected by the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364).

7.      If the Debtors disclose any privileged information pursuant to the Requests, the disclosure is inadvertent and shall not constitute a waiver of the applicable privilege, rule, doctrine, immunity, or other protection.

8.      The Debtors object to the Requests to the extent that any Request may be construed as seeking the disclosure of information that contains and/or constitutes private, confidential, financial, personal, commercial, competitively sensitive, or trade secret information made confidential by law or agreement, or other information of the Debtors or any third party.  The Debtors further object to the Requests to the extent they call for the production of documents or information covered by a non-disclosure agreement or other contract barring dissemination.

9.      The Debtors object to the Requests to the extent that they require any disclosure that may constitute a violation of any law or regulation.

10.     The Debtors object to the Requests to the extent they seek information that is already in the possession, custody, or control of Onset and/or information that is in the public domain.  The Debtors further object to the Requests to the extent they seek information that is not kept by the Debtors in the ordinary course of business including, but not limited to, data compilations.

11.     The Debtors object to the Requests to the extent that they incorporate allegations, characterizations, and/or assertions that are disputed.  The Debtors do not admit the correctness of any such allegations, characterizations, or assertions and the Responses and/or production of documents shall not be deemed an admission of any allegation, characterization, and/or assertion contained in the Requests.

12.     The Debtors object to the Requests, including without limitation, the Definitions and Instructions contained therein, to the extent they purport to impose on the Debtors any

5

requirement or obligation greater than, different from, or otherwise inconsistent with those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

13. The following Responses are made solely for the purpose of the Chapter 11 Cases and shall not be used with respect to any other matter, in any other proceeding, or for any other purpose whatsoever.

14. The Debtors object to the Requests to the extent they seek legal conclusions or require the Debtors to form a legal conclusion to provide a response.

15. The Debtors object to the Requests to the extent that they seek responses on a timeframe different from those imposed under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

16. The Debtors hereby object and respond to the Requests to the best of their present knowledge and reserve their rights to revise, correct, amend, and/or supplement the Responses to the Requests.

## OBJECTIONS TO DEFINITIONS

1. The Debtors object to the Definitions to the extent they purport to extend beyond a reasonable scope, define words beyond their ordinary meaning, and/or impose obligations beyond those contained in the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other rules, applicable law, or other court orders governing the proper scope, timing, and extent of discovery in this contested matter. The Debtors will interpret the Requests reasonably and in good faith in accordance with common English usage and the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing and extent of discovery in the Plan.

2.      The Debtors object to Definition No. 9 ("Communications") as overbroad, unduly burdensome, vague, ambiguous, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent such term purports to include "any recordings or memorialization, in any format."  The Debtors further object to Definition No. 9 to the extent that it purports to include the production of Communications that are protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.

3.      The Debtors object to Definition No. 11 ("Debtors," "You," and "Your") as overbroad, unduly burdensome, vague, and ambiguous to the extent the term encompasses "employees, officers, parents, partners, representatives, subsidiaries, or any Person or entities acting or purporting to act on any Debtor's behalf or retained by any Debtor."  The Debtors will interpret "Debtors" as referring to First Brands Group, LLC and its debtor affiliates in these Chapter 11 Cases.  A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Claims and Noticing Agent as detailed herein at footnote 1.

4.      The Debtors object to Definition No. 15 ("Electronically Stored Information") as overbroad, unduly burdensome, ambiguous, and not proportionate to the discovery needs of the confirmation of the Plan.

5.      The Debtors object to Definition No. 19 ("Documents") as overbroad, unduly burdensome, vague, ambiguous, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent such term purports to include any "item containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form maintained." The Debtors further object to Definition No. 19 to the extent that it

7

purports to include the production of Communications that are protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors further object to Definition No. 19 to the extent it includes documents not within the Debtors' possession, custody, or control.

6. The Debtors object to Definitions Nos. 39, 40, 41, and 42 ("all," "each," "any," "and," "or," "concerning," "comprising," "regarding," "reflecting," "in connection with," "relating to," "including," and "includes") as overbroad, unduly burdensome, vague, and ambiguous to the extent they purport to impose discovery obligations beyond those set forth in the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing, and extent of discovery.

## OBJECTIONS TO INSTRUCTIONS

1. The Debtors object to the Instructions to the extent they purport to impose on the Debtors any obligation different from and/or broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing and extent of discovery.

2. The Debtors object to Instruction No. 1 as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases to the extent it purports to require that the Debtors produce information outside their possession, custody, or control. The Debtors further object to Instruction No. 1 to the extent it purports to require disclosures beyond what is reasonably known to the Debtors. The Debtors also object to Instruction No. 1 to the extent it calls

for the production of "all" responsive Documents, which is overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases.

3. The Debtors object to Instruction No. 2 as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases to the extent it identifies the Relevant Period as beginning August 1, 2025, nearly two months before the petition date.

4. The Debtors object to Instruction No. 3 to the extent it purports to impose on the Debtors obligations to perform anything more than a reasonable search for responsive Documents and information. The Debtors further object to Instruction No. 3 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court. The Debtors further object to Instruction No. 3 to the extent it purports to require the production of Communications that are protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.

5. The Debtors object to Instruction No. 4 to the extent it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

6. The Debtors object to Instruction No. 5 to the extent it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

7.      The Debtors object to Instruction No. 7 to the extent it purports to impose on the Debtors obligations to perform anything more than a reasonable search for responsive Documents and information.  The Debtors further object to Instruction No. 7 to the extent it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

8.      The Debtors object to Instruction No. 8 to the extent it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.  The Debtors will produce all Electronically Stored Information consistent with the Debtors' prior productions made throughout these Chapter 11 Cases.

9.      The Debtors object to Instruction No. 9 to the extent that it calls for the generation of a privilege log with respect to documents that are protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.  The Debtors further object to Instruction No. 9 to the extent it seeks to impose on the Debtors any obligation different from and broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing, and extent of discovery.  The Debtors finally object to Instruction No. 9 as unduly burdensome and not proportionate to the discovery needs of these Chapter 11 Cases.

10.      The Debtors object to Instruction Nos. 10, 11, 12, and 13 to the extent they purport to impose on the Debtors obligations to perform anything more than a reasonable search for

responsive Documents and information.  The Debtors further object to Instruction Nos. 10, 11, 12, and 13 to the extent they purport to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

## SPECIFIC RESPONSES AND OBJECTIONS

**REQUEST FOR PRODUCTION NO. 1**:

**All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning any Valuation, appraisal, description, diligence, analysis, financial information, modeling, evaluation, or assessment of any assets to be transferred, sold, assigned, abandoned, conveyed, or otherwise treated pursuant to the Plan, or any other disposition of assets of the Debtors' estates, including the ABL Collateral Trust Assets, the DIP Collateral Trust Assets, and the Litigation Trust Assets. For the avoidance of any doubt, this Request also includes all Documents and Communications concerning any assets in which SPV Lenders assert an interest and which may or may not remain subject to dispute under the Plan.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications.  The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

11

**REQUEST FOR PRODUCTION NO. 2**:

**All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the Estate Claims Credit Bid, the Estate Claims Credit Bid Transaction, or the Estate Claims Marketing Process, including any underwriting materials, Valuations, financial projections, analyses, assessments, evaluations, marketing materials, diligence, bid materials, presentations, indications of interest, or proposals conducted, prepared, sent, received, reviewed, or exchanged by or among You, any bidder or potential bidder, or any third party, including any Advisors, Affiliates, consultants, agents, or representatives of any of the foregoing.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 3**:

**All Documents comprising, relating to, or reflecting the contents of any virtual data room, diligence file, document repository, shared drive, or other platform or collection of materials established, maintained, accessed, or used in connection with the Estate Claims Marketing Process.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection. The Debtors additionally object to this Request as duplicative of Request for Production No. 2.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 4**:

**All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the DIP Collateral Credit Bid and DIP Collateral Credit Bid Transaction, including any underwriting materials, Valuations, financial projections, analyses, assessments, evaluations, marketing materials, diligence, bid materials, presentations, indications of interest, or proposals conducted, prepared, sent, received, reviewed, or exchanged by or among You, the DIP Secured Parties, the DIP Agent, or any third party, including any Advisors, Affiliates, consultants, agents, or representatives of any of the foregoing.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents

13

and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 5**:

**All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning any Valuation, appraisal, assessment, analysis, diligence, evaluation, or estimate of the value, merits, risks, or potential recoveries of any claims, causes of action, or potential causes of action that has been, could have been, or may be asserted against BDO by You; any of Your creditors, lenders, or stakeholders; or any litigation trust or similar entity or representative established under the Plan.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

14

**REQUEST FOR PRODUCTION NO. 6**:

**All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the amount, nature, or status of any accrued or outstanding Administrative Expense Claims at or attributable to each of the Debtors, including any analyses, schedules, reports, ledgers, summaries, or other records reflecting amounts owed on account of postpetition obligations incurred by or attributable to each of the Debtors, and any Communications concerning the treatment of such claims under the Plan or the Plan Settlement.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 7**:

**All Documents and Communications, including Communications among the Plan Negotiation Parties or with any third party, concerning the decision to designate certain parties, including Onset, as a Specified Non-Released Party under the Plan and Plan Settlement, including any analyses, memoranda, presentations, discussion materials, negotiations, or Communications regarding the criteria for, scope of, or implications of such designation, and any discussions with any third parties concerning the same.**

15

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are not aware of any non-privileged Documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 8**:

**All Documents and Communications, including Communications among the Plan Negotiation Parties or with any third party, concerning the decision to designate certain parties as Released Parties or Exculpated Parties under the Plan and Plan Settlement, including any analyses, memoranda, presentations, discussion materials, negotiations, or Communications regarding the criteria for, scope of, or implications of such designations, and any discussions with any third parties concerning the same.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications

protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are not aware of any non-privileged Documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 9**:

**All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the negotiation of the Plan Settlement, including any term sheets, proposals, counterproposals, or drafts exchanged among the Debtors, the Ad Hoc Group, the Creditors' Committee, the DIP Secured Parties, or any third party, and any analyses of the benefits, costs, risks, or alternatives considered in connection therewith.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 10**:

17

**All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the Litigation Trust Waterfall, including any analyses, models, projections, or estimates of potential recoveries by any class of Litigation Trust Interest holders, any analyses of the impact of the Litigation Trust Waterfall on creditors (including administrative expense creditors), and any alternative waterfall structures or distribution methodologies considered during the negotiation of the Plan Settlement.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 11**:

**All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the negotiation of the Litigation Trust Agreement, including any term sheets, proposals, counterproposals, or drafts exchanged among the Debtors, the Ad Hoc Group, the Creditors' Committee, the DIP Secured Parties, or any third party, and any analyses of the benefits, costs, risks, or alternatives considered in connection therewith.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the

Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 12**:

**All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the Litigation Trust Assets and their transfer to the Litigation Trust, including but not limited to (i) all Documents and Communications concerning the Insurance Rights; and (ii) all Documents and Communications concerning the books, records, and investigative and/or discovery findings of the Debtors, the Examiner, and the Creditors' Committee, and any Advisors, Affiliates, consultants, agents, or representatives of any of the foregoing.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection. The Debtors further object

19

to this Request as seeking Documents and Communications expressly protected from disclosure by the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364).

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 13**:

**All Documents and Communications, including Communications among the Plan Negotiation Parties, concerning the decision to or not to convert any of the Debtors' chapter 11 cases to cases under chapter 7, including but not limited to any analyses of the impact of conversion on the claims or interests of creditors of the SPV Debtors.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 14**:

**All Documents and Communications produced, provided, or made available to any Person in response to any requests for the production of documents or similar discovery requests relating, in whole or in part, to the Plan Settlement, Plan, or Disclosure Statement.**

20

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

Dated: July 6, 2026
Houston, Texas

*Clifford W. Carlson*
**WEIL, GOTSHAL & MANGES LLP**
Clifford W. Carlson (2490024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email:   Clifford.Carlson@weil.com


-and-


Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Robert S. Berezin (admitted *pro hac vice*)
Theodore E. Tsekerides (admitted *pro hac vice*)
Christine A. Calabrese (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
          Sunny.Singh@weil.com
          Robert.Berezin@weil.com
          Theodore.Tsekerides@weil.com
          Christine.Calabrese@weil.com

*Attorneys for Debtors and Debtors in Possession*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 6, 2026, the foregoing was served upon counsel for Onset via electronic mail.

<u>*Christine A. Calabrese*</u>
Christine A. Calabrese

# EXHIBIT 5

| **From:** | Patel, Keya |
| **To:** | O"Brien, Elliott; Calabrese, Christine; Dunne, Dennis; Blazek, Hannah; Leblanc, Andrew; Laukitis, Lisa; Dexter, Erin; Kestecher, Jason; Michael, Brian R.; Cohen, Carrie H.; Kotliar, Bryan; Fiotto, Anthony S.; Butterfield, Benjamin W.; Koch, Julia; Newton, James A.; MoFo_FBG; #First Brands_SPC; #FirstBrandsLit; dperry@munsch.com; Smith, Garrick; Valentine, Heather; Ramos, Katherine |
| **Cc:** | Tsekerides, Theodore; Berezin, Robert; Aquila, Elaina; Project Overdrive Lit Associates; Jewett, Laura (LJ); Ting, Lara; Rhine, Fredrick |
| **Subject:** | [EXT] RE: In re: First Brands Group, LLC, et. al — Debtors' Production in Response to Onset's First Set of Requests for Production |
| **Date:** | Monday, July 13, 2026 11:33:20 AM |

Hi Elliot,

The Debtors' prior productions were in connection with the below matters:

- DIP Financing Motion (Dkt. 49)
- Factoring Procedures Motion (Dkt. 807)
- *Evolution Credit Opportunity Master Fund II-B, L.P. et al v. First Brands Group, LLC et al* (Adv. Pro. No. 25-03800)
- *Bank of America, N.A. et al v. Aequum Capital Financial II LLC et al* (Adv. Pro. No. 26-03091)
- Rule 2004 Requests

Best,
Keya

---

**From:** O'Brien, Elliott <eobrien@milbank.com>
**Sent:** Sunday, July 12, 2026 12:13 PM
**To:** Calabrese, Christine <Christine.Calabrese@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com; Smith, Garrick <gsmith@munsch.com>; Valentine, Heather <hvalentine@munsch.com>; Ramos, Katherine <kramos@munsch.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>; Ting, Lara <Lara.Ting@weil.com>; Rhine, Fredrick <Fredrick.Rhine@weil.com>
**Subject:** RE: In re: First Brands Group, LLC, et. al — Debtors' Production in Response to Onset's First Set of Requests for Production

Hi Christine,

We are available to meet tomorrow at 3:30pm ET; could you distribute a meeting link?

As to the Debtors' prior productions, could you identify the relevant contested matter or adversary proceeding for each production?

Thank you,

Elliott O'Brien | Milbank | Associate
Pronouns: he/him/his
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7588
eobrien@milbank.com | milbank.com

---

**From:** Calabrese, Christine <Christine.Calabrese@weil.com>
**Sent:** Sunday, July 12, 2026 9:08 AM
**To:** O'Brien, Elliott <eobrien@milbank.com>; Patel, Keya <Keya.Patel@weil.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com; Smith, Garrick <gsmith@munsch.com>; Valentine, Heather <hvalentine@munsch.com>; Ramos, Katherine <kramos@munsch.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>; Ting, Lara <Lara.Ting@weil.com>; Rhine, Fredrick <Fredrick.Rhine@weil.com>
**Subject:** [EXT] RE: In re: First Brands Group, LLC, et. al — Debtors' Production in Response to Onset's First Set of Requests for Production

Hi Elliott,

We are actively preparing additional documents for production (including communications), which we intend to make over the next few days on a rolling basis. We are available to confer tomorrow at 3:30pm ET if that works on your end.

Additionally, Onset's request for production No. 14 requests "All Documents and Communications produced, provided, or made available to any Person in response to any

requests for the production of documents or similar discovery requests relating, in whole or in part, to the Plan Settlement, Plan, or Disclosure Statement." Other parties have issued discovery requests seeking copies of all documents the Debtors have produced to any party in connection with the chapter 11 cases or any adversary proceeding. Please let us know if you would also like to receive the Debtors' prior production volumes, noting the size is over ~2000 GB of data.

Thank you,
Christine


**Christine A. Calabrese**

Weil, Gotshal & Manges LLP
+ 1 212 310-8083 Direct
+1 202 213-7892 Mobile

---

**From:** O'Brien, Elliott <eobrien@milbank.com>
**Sent:** Friday, July 10, 2026 6:08 PM
**To:** Patel, Keya <Keya.Patel@weil.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com; Smith, Garrick <gsmith@munsch.com>; Valentine, Heather <hvalentine@munsch.com>; Ramos, Katherine <kramos@munsch.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>; Ting, Lara <Lara.Ting@weil.com>
**Subject:** RE: In re: First Brands Group, LLC, et. al — Debtors' Production in Response to Onset's First Set of Requests for Production

Counsel,

Following up on the below.  Given the looming plan objection deadline, can we schedule a meet and confer at your earliest convenience to discuss outstanding productions?

Best,

Elliott O'Brien | Milbank | Associate
Pronouns: he/him/his
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7588
eobrien@milbank.com | milbank.com

---

**From:** O'Brien, Elliott
**Sent:** Thursday, July 9, 2026 5:01 PM
**To:** Patel, Keya <Keya.Patel@weil.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com; Smith, Garrick <gsmith@munsch.com>; Valentine, Heather <hvalentine@munsch.com>; Ramos, Katherine <kramos@munsch.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>; Ting, Lara <Lara.Ting@weil.com>
**Subject:** RE: In re: First Brands Group, LLC, et. al — Debtors' Production in Response to Onset's First Set of Requests for Production

Counsel,

We are writing to confirm receipt of the Debtors' first document production yesterday, July 8, in response to Onset's First Requests for Production of Documents in Connection with the Plan dated June 17, 2026 (the "Requests").  Having scanned through the production, it appears to consist of 812 documents that are largely PDFs, publicly available documents, deposition exhibits, and unintelligible XML files.  Notably, the production does not appear to contain any email communications responsive to our Requests—which sought, among other things, communications concerning the disposition of assets, the credit bid transactions and marketing process, recoveries of claims, administrative expense claims, plan negotiations, the litigation trust (including the waterfall, assets, and trust agreement), release and exculpation designations, and chapter 7 conversion analyses.  We also do not see any drafts of the plan, term sheets, or similar negotiation documents or communications.

Given that the plan objection deadline is July 20, 2026, we would appreciate prompt confirmation as to whether additional productions—including communications responsive

to our Requests—are forthcoming, and if so, when we can expect to receive them. As you may recall, we flagged at our June 10 meet-and-confer that plan-related requests would be forthcoming and would be similar to the requests we served on June 2 in connection with the Debtors' Global Settlement Motion. We then served our Requests promptly after conditional approval of the disclosure statement, requesting that productions be completed by July 6, 2026.

We are concerned with the content and timing of the production to date. We are happy to meet and confer at your earliest convenience to discuss the scope and timing of any further productions.

Best,

Elliott O'Brien | Milbank | Associate
Pronouns: he/him/his
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7588
eobrien@milbank.com | milbank.com

---

**From:** Patel, Keya <Keya.Patel@weil.com>
**Sent:** Wednesday, July 8, 2026 12:07 PM
**To:** O'Brien, Elliott <eobrien@milbank.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com; Smith, Garrick <gsmith@munsch.com>; Valentine, Heather <hvalentine@munsch.com>; Ramos, Katherine <kramos@munsch.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>; Ting, Lara <Lara.Ting@weil.com>
**Subject:** [EXT] In re: First Brands Group, LLC, et. al — Debtors' Production in Response to Onset's First Set of Requests for Production

**In re: First Brands Group, LLC, et. al — Debtors' Production in Response to Onset's First Set of Requests for Production**

Counsel,

You will soon receive a CloudShare link to the Debtors' first production volume. The information

below lists the Bates range for the productions and the passwords to access the zip files:

> Production: FBG_CH1_001
> Bates Range: FBG_CH1_00000001 - FBG_CH1_00044099
> Password:  _RuphE_*t6aSpl?E

The Debtors make this production subject to the governing Protective Order [ECF No. 408] entered in *In re First Brands Group, LLC, et al.* (Case No. 25-90399 (CML)) and the *Debtors' Responses and Objections to Onset's First Requests for Production of Documents in Connection with Plan*, dated July 6, 2026. To the extent that any privileged information is inadvertently produced, such production should not constitute a waiver of such applicable privilege. The Debtors reserve all rights.

Please contact us should you have any questions or issues accessing the documents.

Sincerely,
Keya Patel



**Keya Patel**
Associate
She/her/hers

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Keya.Patel@weil.com
+1 212 310 8408 Direct
+1 212 310 8007 Fax

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you. ====================================== IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor. ====================================== This e-mail message may contain

legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you. ======================================= IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor. ======================================= This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

# EXHIBIT 6

| | |
|---|---|
| **From:** | O"Brien, Elliott |
| **To:** | Calabrese, Christine; Patel, Keya; Dunne, Dennis; Blazek, Hannah; Leblanc, Andrew; Laukitis, Lisa; Dexter, Erin; Kestecher, Jason; Michael, Brian R.; Cohen, Carrie H.; Kotliar, Bryan; Fiotto, Anthony S.; Butterfield, Benjamin W.; Koch, Julia; Newton, James A.; MoFo_FBG; #First Brands_SPC; #FirstBrandsLit; dperry@munsch.com; Smith, Garrick; Valentine, Heather; Ramos, Katherine |
| **Cc:** | Tsekerides, Theodore; Berezin, Robert; Rhine, Fredrick; Aquila, Elaina; Ward, Jon; Project Overdrive Lit Associates; Jewett, Laura (LJ); Carlson, Clifford; Singh, Sunny; Bostel, Kevin |
| **Subject:** | RE: In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Onset's First Set of Requests for Production |
| **Date:** | Thursday, July 16, 2026 5:53:00 PM |

Hi Christine,

Thank you for the update.  We have many concerns.  First, nearly four weeks have elapsed since Onset served its document requests on June 17—and considerably longer since Onset served substantially identical requests in connection with the prior plan and settlement motion on June 2.  Yet the Debtors' productions remain incomplete mere days before the plan objection deadline.  Please confirm when we can expect productions to conclude.

Second, we remain concerned about the lack of transparency concerning privilege invocations and the custodians and search parameters used to identify documents responsive to Onset's requests.  Please identify: (1) the custodians selected for this discovery process; (2) whether any search terms or parameters beyond domain searches were applied, and if so, what they were; and (3) whether the Debtors have reviewed and intend to produce any documents and communications from May 20, 2026 forward.

Third, it appears the Debtors are treating all communications with the DIP Lenders, ABL Lenders, and the UCC as presumptively privileged during certain periods and have simply declined to review documents during those windows rather than conducting any privilege review at all.  Please confirm whether that is accurate.  Please also confirm that the Debtors have refused to search for non-privileged materials responsive to Requests 7 and 8, to which your responses state the Debtors "are not aware of any non-privileged Documents responsive."  Please also confirm when we can expect to receive the privilege log and please confirm it will include detailed reasoning for your privilege assertions.

Fourth, the productions to date remain conspicuously light on communications.  Production 5, for example, appears to consist of over 12,000 account-statement-type documents—not the substantive communications our requests seek.  Please confirm if additional communications are forthcoming.  Moreover, our requests encompass communications with third parties beyond the DIP Lenders, ABL Lenders, and the UCC.  Your email suggests third parties would not have been fully captured from the Debtors' search parameters.  Please confirm whether such communications will be produced—and

if not, on what basis.

Lastly, thank you for providing information on the confirmation witnesses and depositions; please keep us apprised of any changes to the deposition schedule. We can confirm that we will not be seeking to depose Mr. Cowan and that you can respond via email to our Rule 30(b)(6) notice concerning the Plan.

Best,

Elliott O'Brien | Milbank | Associate
Pronouns: he/him/his
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7588
eobrien@milbank.com | milbank.com

---

**From:** Calabrese, Christine <Christine.Calabrese@weil.com>
**Sent:** Thursday, July 16, 2026 11:46 AM
**To:** O'Brien, Elliott <eobrien@milbank.com>; Patel, Keya <Keya.Patel@weil.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com; Smith, Garrick <gsmith@munsch.com>; Valentine, Heather <hvalentine@munsch.com>; Ramos, Katherine <kramos@munsch.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Rhine, Fredrick <Fredrick.Rhine@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ward, Jon <Jon.Ward@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>; Carlson, Clifford <Clifford.Carlson@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Bostel, Kevin <Kevin.Bostel@weil.com>
**Subject:** [EXT] RE: In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Onset's First Set of Requests for Production

Elliott,

The Debtors made two additional productions this morning and anticipate making another production later today. The production volume FBG_CH1_004 contains Mr. Kirschner's materials. Regarding the other topics addressed in your email:

- ***Communications / Search Parameters***. The Debtors have produced responsive non-

privileged communications between the Debtors and the UCC, AHG, and ABL for two periods and are finalizing communications across a third period for production: (i) September 1, 2025-September 28, 2025 (prepetition period), (ii) January 1, 2026-January 28, 2026 (the period before formal mediation), and (iii) March 27, 2026 (the close of formal discovery) - May 20, 2026 (the date the Debtors announced an agreement in principle with the AHG, UCC, and ABL).  For these periods, the Debtors have used domain searches to capture all communications between (i) the Debtors and their advisors and the UCC, AHG, and/or ABL and their advisors and (ii) have otherwise reviewed for responsiveness.

- ***Categorical Privilege Log***.  The Debtors are preparing a categorical privilege log.

- ***Confirmation Hearing Witnesses***.  The Debtors anticipate calling Mr. Moore, Mr. Kirschner, and Alex Orchowski (from Kroll) at the confirmation hearing, in addition to reserving all rights to call additional witnesses, including rebuttal witnesses.

- ***Onset's Rule 30(b)(6) Notice***.  Would Onset agree to the Debtors responding to Onset's Rule 30(b)(6) notice by email in lieu of formal responses and objections?  Please let us know and we'll revert via email, reserving all rights.

- ***Regarding Depositions***.  Mr. Moore's deposition will take place on July 23.  Mr. Kirschner's deposition will take place on July 24.  Both depositions will take place at Weil's offices in New York.  Regarding the noticed deposition of Mr. Cowan, we can confirm that Mr. Cowan was not involved in litigation trust financing.  Mr. Moore will cover that topic.  Under the circumstances, we do not believe that Mr. Cowan's deposition is appropriate or necessary and we ask that you withdraw the notice.

Best,
Christine


**Christine A. Calabrese**

Weil, Gotshal & Manges LLP
+ 1 212 310-8083 Direct
+1 202 213-7892 Mobile

---

**From:** O'Brien, Elliott <eobrien@milbank.com>
**Sent:** Wednesday, July 15, 2026 5:05 PM

**To:** Patel, Keya <Keya.Patel@weil.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com; Smith, Garrick <gsmith@munsch.com>; Valentine, Heather <hvalentine@munsch.com>; Ramos, Katherine <kramos@munsch.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Rhine, Fredrick <Fredrick.Rhine@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ward, Jon <Jon.Ward@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>
**Subject:** RE: In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Onset's First Set of Requests for Production

Counsel,

We have received and are reviewing your most recent production from early this morning. Are you planning to make any further productions in response to our requests?

We are also following up concerning a few issues discussed during our meet and confer this past Monday, July 13, which remain outstanding despite our understanding that this information would be provided today, at the latest. First, when can we expect to receive (i) the search parameters applied in response to our discovery requests, including the various positions you are taking regarding your numerous privilege assertions, and (ii) a categorical privilege log concerning your productions in response to our requests? Second, can you confirm that the Debtors plan to offer the testimony of only Charles Moore and Marc Kirschner at the confirmation hearing scheduled for July 28, and do not plan to offer any other witnesses in support of the plan? Relatedly, please identify the witness(es) the Debtors plan to offer in connection with Onset's Rule 30(b)(6) notice served on July 10 concerning the plan. We are glad to meet and confer regarding scheduling depositions of Mr. Moore, Mr. Kirschner, and any other witnesses the Debtors intend to call at the confirmation hearing or identify as witnesses responsive to Onset's Rule 30(b)(6) notice.

Finally, Exhibit B to Marc Kirschner's Declaration lists "Materials Considered." If these documents have not yet been produced, please make these available to us immediately. If the documents listed have already been produced to Onset, please identify those documents by their Bates numbers.

Sincerely,

Elliott O'Brien | Milbank | Associate
Pronouns: he/him/his
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7588
eobrien@milbank.com | milbank.com

---

**From:** O'Brien, Elliott
**Sent:** Monday, July 13, 2026 8:44 PM
**To:** Patel, Keya <Keya.Patel@weil.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com; Smith, Garrick <gsmith@munsch.com>; Valentine, Heather <hvalentine@munsch.com>; Ramos, Katherine <kramos@munsch.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Rhine, Fredrick <Fredrick.Rhine@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ward, Jon <Jon.Ward@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>
**Subject:** RE: In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Onset's First Set of Requests for Production

Understood, thank you.

Elliott O'Brien | Milbank | Associate
Pronouns: he/him/his
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7588
eobrien@milbank.com | milbank.com

---

**From:** Patel, Keya <Keya.Patel@weil.com>
**Sent:** Monday, July 13, 2026 8:39 PM
**To:** O'Brien, Elliott <eobrien@milbank.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG

<MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com; Smith, Garrick <gsmith@munsch.com>; Valentine, Heather <hvalentine@munsch.com>; Ramos, Katherine <kramos@munsch.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Rhine, Fredrick <Fredrick.Rhine@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ward, Jon <Jon.Ward@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>
**Subject:** [EXT] RE: In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Onset's First Set of Requests for Production

Hi Elliott,

The hard drive contains all prior productions except for the Debtors' prior productions to the UCC in connection with the hearing regarding DIP financing, which were sent earlier via Weil CloudShare (volumes FBG_UCC_001, FBG_UCC_002, FBG_UCC_003, FBG_UCC_004, FBG_UCC_005, FBG_UCC_006, FBG_UCC_007, and FBG_UCC_008).

We will ship the hard drive to provided address.

Best,
Keya

---

**From:** O'Brien, Elliott <eobrien@milbank.com>
**Sent:** Monday, July 13, 2026 8:24 PM
**To:** Patel, Keya <Keya.Patel@weil.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com; Smith, Garrick <gsmith@munsch.com>; Valentine, Heather <hvalentine@munsch.com>; Ramos, Katherine <kramos@munsch.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Rhine, Fredrick <Fredrick.Rhine@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ward, Jon <Jon.Ward@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>
**Subject:** RE: In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Onset's First Set of Requests for Production

Thanks, Keya. To confirm, will the hard drive include all 201 of the production volumes listed in the spreadsheet (i.e., all prior productions)?

Please ship the hard drive to the below address:

Milbank LLP
Attn: Sachin Chandani / Bill Ma / Thomas Lin
55 Hudson Yards
New York, NY 10001

Best,

Elliott O'Brien | Milbank | Associate
Pronouns: he/him/his
1101 New York Avenue, NW | Washington D.C. 20005-4269
T: +1 202.835.7588
eobrien@milbank.com | milbank.com

---

**From:** Patel, Keya <Keya.Patel@weil.com>
**Sent:** Monday, July 13, 2026 6:46 PM
**To:** O'Brien, Elliott <eobrien@milbank.com>; Dunne, Dennis <DDunne@milbank.com>; Blazek, Hannah <hblazek@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Laukitis, Lisa <llaukitis@milbank.com>; Dexter, Erin <EDexter@milbank.com>; Kestecher, Jason <jkestecher@milbank.com>; Michael, Brian R. <BMichael@mofo.com>; Cohen, Carrie H. <CCohen@mofo.com>; Kotliar, Bryan <BKotliar@mofo.com>; Fiotto, Anthony S. <AFiotto@mofo.com>; Butterfield, Benjamin W. <BButterfield@mofo.com>; Koch, Julia <JKoch@mofo.com>; Newton, James A. <JNewton@mofo.com>; MoFo_FBG <MoFo_FBG@mofo.com>; #First Brands_SPC <FirstBrands_SPC@milbank.com>; #FirstBrandsLit <FirstBrandsLit@milbank.com>; dperry@munsch.com; Smith, Garrick <gsmith@munsch.com>; Valentine, Heather <hvalentine@munsch.com>; Ramos, Katherine <kramos@munsch.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Rhine, Fredrick <Fredrick.Rhine@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ward, Jon <Jon.Ward@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>
**Subject:** [EXT] In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Onset's First Set of Requests for Production

**In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Onset's First Set of Requests for Production**

Counsel,

You will soon receive the Debtors' third production volume via KLD FTP and Weil CloudShare, which contains the Debtors' prior productions. The production volume names and passwords can be found in the attached excel file. An additional production of these volumes is forthcoming and due to size will be shipped to you via hard drive. <u>Please provide us with your preferred shipping address.</u>

The Debtors make this production subject to the governing Protective Order [ECF No. 408] entered in *In re First Brands Group, LLC, et al.* (Case No. 25-90399 (CML)) and the *Debtors' Responses and Objections to Onset's First Requests for Production of Documents in Connection with Plan*, dated July 6, 2026. To the extent that any privileged information is inadvertently produced, such production should not constitute a waiver of such applicable privilege. The Debtors reserve all rights.

Please contact us should you have any questions or issues accessing the documents.

Sincerely,

Keya Patel



**Keya Patel**
Associate
She/her/hers

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Keya.Patel@weil.com
+1 212 310 8408 Direct
+1 212 310 8007 Fax

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you. ===================================== IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters

addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.

========================================= This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

========================================= IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.

========================================= This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FIRST BRANDS GROUP, LLC, *et al.*, | ) | Case No. 25-90399 (CML) |
|  | ) |  |
| Debtors.[1] | ) | Jointly Administered |
|  | ) |  |

**EVOLUTION'S JOINDER TO LAM PARTIES',
KATSUMI'S EMERGENCY MOTIONS TO COMPEL
PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES**

Evolution[2] hereby joins in the *LAM Parties' Emergency Motion to Compel Production of Documents and Interrogatory Responses from Debtors* [Docket No. 3210] ("LAM Motion") and the *Emergency Motion of Katsumi Servicing, LLC to Compel Debtors to Produce Complete Responses and Documents in Response to Discovery Served Upon the Debtors, Including Katsumi Servicing, LLC's First Set of Interrogatories and First Request for Production of Documents and Other Issues* [Docket No. 3211] ("Katsumi Motion").

**JOINDER**

1.      Evolution served discovery requests on the FBG Debtors in connection with their proposed Plan.  *See* Exhibit 1 (FBG Debtors' Responses and Objections to Evolution's First Set of Requests for Production).  These requests seek substantially the same information as the requests served by the LAM Parties and Katsumi (the "LAM/Katsumi Requests"), and the FBG Debtors have taken the same wildly overbroad approach to privilege and common interest in connection with the LAM/Katsumi Requests.  *See* LAM Motion at Ex. D (Debtors' R&Os to LAM Parties' RFPs); Katsumi Motion at Ex. 2 (Debtors' R&Os to Katsumi's RFPs).

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] "Evolution" means, collectively, Evolution Credit Opportunity Master Fund II-B, L.P., Evolution Credit Partners Trade Finance Master, L.P. (as successor in interest to Evolution Credit Partners Trade Finance L.P.), Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution affiliated funds.

2.      As they did in response to the LAM/Katsumi Requests, the FBG Debtors provided deficient responses to Evolution's requests and made blanket assertions of privilege unsupported by law.  Namely, in a meet-and-confer held on July 13, 2026, counsel for the FBG Debtors stated that the mediation privilege protected *every communication occurring after January 29, 2026* responsive to Evolution's requests, and that *all* responsive communications after March 27, 2026 are also shielded by the common interest privilege.  Today, after LAM and Katsumi filed their Motions, they reversed course on some, but not all, of their baseless privilege assertions.  *See* Ex. 2 (July 16, 2026 1:56pm email from C. Calabrese).  Material deficiencies in their productions from their groundless privilege assertions remain.

3.      For the reasons set out in the LAM and Katsumi Motions, the FBG Debtors' positions on privilege and common interest are untenable, and Evolution joins those Motions in full.[3]

4.      In addition to the points made in the LAM and Katsumi Motions, the Court should reject the FBG Debtors' assertion of common interest because it is inconsistent with binding Fifth Circuit precedent which sets out the "narrow[]" scope of the common interest privilege.  *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).  For the common interest privilege to apply, there must be a "***palpable threat of litigation*** at the time of the communication." *Id.* at 711 (emphasis added).  The privilege only applies to "two types of communications … (1) communications between co-defendants in actual litigation and their counsel; and (2) communications between potential co-defendants and their counsel.  Courts have not extended the common legal interest privilege to generalized shared business interests." *Tonti Mgmt. Co. v. Soggy Doggie, LLC*, 2020 WL 9172077, at *4 (E.D. La. June 25, 2020) (emphasis added).

5.      It is inconceivable that *every* communication between the Debtors and the UCC, and the Debtors and the Ad Hoc Group, about the Estate Claims and related investigations *from*

---

[3] While Evolution has not served interrogatories on the FBG Debtors, it is plain that the responses provided to the LAM Parties' and Katsumi's interrogatories are insufficient.

***the beginning of these Chapter 11 cases*** is either a "communication[] between co-defendants in actual litigation and their counsel" or a "communication between potential co-defendants and their counsel," made under a "palpable threat of litigation." Yet that is what the FBG Debtors now claim. *See* Exhibit 2 (July 16, 2026 1:56pm email from C. Calabrese). The FBG Debtors' attempt to apply the common interest privilege to ***every*** communication after March 27, 2026 responsive to Evolution's requests (with a carveout for communications with the UCC, Ad Hoc Group, and ABL Lenders regarding Plan negotiations from March 27 through May 20) similarly stretches credulity. *See also United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) ("[T]he attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents … The privilege must be specifically asserted with respect to particular documents." (internal citation omitted)); *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 n.16 (5th Cir. 1999) ("Blanket claims of privilege are disfavored … A bald assertion of privilege is insufficient." (cleaned up)); *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (discussing the requirement to produce a privilege log and noting that "[c]ontinual failure to adhere to Rule 26's prescription may result in waiver of the privilege where a court finds that the failure results from unjustified delay, inexcusable conduct, or bad faith" (internal citation omitted)).

6. The prejudice from the FBG Debtors' discovery misconduct is compounded because there are only two business days until the Plan objection deadline and seven business days until the Plan confirmation hearing. The FBG Debtors should not be allowed to evade discovery and deny Evolution and similarly-situated creditors a genuine opportunity to develop a record and object to the Plan. The Plan confirmation deadline (and associated objection deadlines) should be extended until the FBG Debtors comply with their discovery obligations.

## **CONCLUSION**

7. Evolution respectfully requests that the Court enter an order compelling the FBG Debtors to produce documents in response to Evolution's discovery requests, and extending the

Plan confirmation deadline and associated deadlines until the FBG Debtors have complied with

their discovery obligations.

Respectfully submitted this 16th day of July 2026,

**GRAY REED**

By: */s/ Jason S. Brookner*
     Jason S. Brookner
     Texas Bar No. 24033684
     Emily F. Shanks
     Texas Bar No. 24110350
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:    (713) 986-7000
Facsimile:    (713) 986-7100
Email:       jbrookner@grayreed.com
           eshanks@grayreed.com

- and -

**ELSBERG BAKER & MARURI PLLC**
     Michael Duke (admitted *pro hac vice*)
     David Elsberg (admitted *pro hac vice*)
     Vivek Tata (admitted *pro hac vice*)
     Garrett Gerber (admitted *pro hac vice*)
     Andrew Parks (admitted *pro hac vice*)
     Ella Epstein (admitted *pro hac vice*)
350 Fifth Avenue, 38th Floor
New York, NY 10018
Telephone:    (212) 597-2600
Email:       mduke@elsberglaw.com
           delsberg@elsberglaw.com
           vtata@elsberglaw.com
           ggerber@elsberglaw.com
           aparks@elsberglaw.com
           eepstein@elsberglaw.com

- and -

**PROSKAUER ROSE LLP**
    Vincent Indelicato (admitted *pro hac vice*)
    Matthew R. Koch (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email:       vindelicato@proskauer.com
          mkoch@proskauer.com

4

- and -

Charles A. Dale (admitted *pro hac vice*)
One International Plaza
Boston, MA 02110-2600
Telephone: (617) 526-9600
Email: cdale@proskauer.com

- and -

Jordan E. Sazant (admitted *pro hac vice*)
70 West Madison St., Ste. 3800
Chicago, IL 60602
Telephone: (312) 962-3500
Email: jsazant@proskauer.com

## Certificate of Service

The undersigned hereby certifies that on the 16th day of July 2026, he caused a true and correct copy of the foregoing document by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Jason S. Brookner*
Jason S. Brookner

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Michael Duke*
Michael Duke

## Certificate of Conference

I hereby certify that I have made a good faith effort to resolve this discovery dispute without the Court's action. Counsel for Evolution and the FBG Debtors met and conferred on July 13, 2026 but have not reached a consensual resolution.

*/s/ Michael Duke*
Michael Duke

# Exhibit 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § § § | **Case No. 25-90399 (CML)** |
| | § § § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**DEBTORS' RESPONSES AND OBJECTIONS TO**
**EVOLUTION'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable to the above-captioned proceeding by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), and other applicable law, First Brands Group LLC and its debtor affiliates ("**the Debtors**") by and through their undersigned counsel, hereby submits these responses and objections (the "**Responses**," and each specific response and objection, a "**Response**") to *Evolution's First Set of Requests for the Production of Documents to FBG Debtors*, dated June 23, 2026 (the "**Requests**," and each specific request for admission, a "**Request**") issued by Evolution (as defined in the Requests). The Debtors expressly reserve their rights to supplement, modify, revise, or correct the Responses herein at any time in accordance with the applicable rules.

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

## RESERVATION OF RIGHTS

1.      With all of their rights expressly reserved, the Debtors respond to the Requests in good faith and in accordance with the Federal Rules, the Bankruptcy Rules, the Local Rules and/or any other rules, law, or court order governing the proper scope, timing, and extent of discovery in these proceedings.

2.      The Debtors submit the Responses subject to, without intending to waive, and expressly preserving: (a) any objections as to the competence, relevance, materiality, privilege, and/or admissibility into evidence of any Response herein or materials produced in response to any Request; (b) the right to object to other discovery procedures involving or relating to the subject matter of the Requests, the Responses, or documents produced in response to the Requests; (c) any objections to overbreadth, undue burden, vagueness, or ambiguity, and (d) the right to revise, correct, supplement, or clarify the Responses herein at any time.

3.      The Responses are made pursuant to and subject to the General Objections, Objections to Definitions, Objections to Instructions, and Specific Responses and Objections set forth herein.  The Debtors do not waive, and expressly preserve, all available objections.

4.      The Debtors do not admit, adopt, or acquiesce in any factual or legal contention, assertion, assumption, characterization, or implication contained in the Requests.  By responding and objecting to the Requests or producing documents in response to the Requests, the Debtors do not intend to waive, and do not waive, any defenses to the Requests or any other demand, subpoena, request, action, or any other case brought by Evolution or any other party.

5.      Any document produced by the Debtors in response to the Requests does not constitute an admission or acknowledgement that any such Request is proper, that the information sought is relevant or admissible in any proceeding, or that requests for similar information will be

2

treated in a similar fashion.  Whether the Debtors have produced documents or responded to any particular Request should not be interpreted as an admission that the Debtors accept or admit the existence of any fact(s) set out or assumed by such Request.

6.      None of the Responses shall be construed as admitting that the Debtors have in their possession, custody, or control any documents responsive to any Request.  The Debtors do not represent that any responsive documents exist in response to any particular Request, but rather that they will undertake a reasonably diligent search across a reasonable universe of documents and produce non-privileged documents responsive to the Request (if any).

7.      The Debtors do not waive, and hereby assert and preserve, all applicable privileges and protections, including the attorney-client privilege, attorney-work-product doctrine, and any other applicable privilege or immunity.

8.      Any document produced by the Debtors in response to the Requests is produced pursuant to, and shall be subject to, the terms of the Protective Order (ECF No. 408) entered in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

## GENERAL OBJECTIONS

1.      These General Objections are applicable to the Requests in their entirety and are incorporated into each specific Response as if fully repeated therein.  The Objections to Definitions and Objections to Instructions shall likewise apply equally to any definition, instruction, or Request that incorporates that definition or instruction.  The Debtors reserve the right to assert additional objections to the Requests as necessary and/or appropriate.

2.      The Debtors object to the Requests insofar as they are overbroad, unduly burdensome, vague, ambiguous, redundant, harassing, or oppressive.  The Debtors further object to the Requests to the extent they seek the production of information that is neither relevant nor

3

proportionate to the discovery needs of these Chapter 11 Cases, including with respect to confirmation of the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Dkt. No. 2981) (the "**Plan**"). The Debtors additionally object to the Requests to the extent they seek documents and communications that the Debtors have already produced to Evolution or their counsel in connection with these Chapter 11 Cases.

3. The Debtors object to the Requests insofar as they seek the production of "all" or "any" documents and communications on the grounds that it is impracticable, overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases.

4. The Debtors object to the Requests to the extent that they call for the production of documents not within the Debtors' possession, custody, or control, or for the production of documents not obtainable by means of a reasonably diligent search proportionate to the discovery needs of these Chapter 11 Cases.

5. The Debtors object to the Requests to the extent that they call for the production of documents and the disclosure of information subject to: (a) the attorney-work-product doctrine; (b) the attorney-client privilege; (c) the common interest privilege; (d) the mediation privilege, and/or (e) any other applicable privilege, protection, or immunity from discovery. The Debtors reserve the right to redact any material covered by items (a) through (e) of this paragraph, as well as to demand the return and/or destruction of any document and all copies thereof that are protected by such privilege, rule, doctrine, or immunity.

6. The Debtors object to the Requests to the extent they call for the production of documents and the disclosure of information protected by the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364).

7. If the Debtors disclose any privileged information pursuant to the Requests, the disclosure is inadvertent and shall not constitute a waiver of the applicable privilege, rule, doctrine, immunity, or other protection.

8. The Debtors object to the Requests to the extent that any Request may be construed as seeking the disclosure of information that contains and/or constitutes private, confidential, financial, personal, commercial, competitively sensitive, or trade secret information made confidential by law or agreement, or other information of the Debtors or any third party. The Debtors further object to the Requests to the extent they call for the production of documents or information covered by a non-disclosure agreement or other contract barring dissemination.

9. The Debtors object to the Requests to the extent that they require any disclosure that may constitute a violation of any law or regulation.

10. The Debtors object to the Requests to the extent they seek information that is already in the possession, custody, or control of Evolution and/or information that is in the public domain. The Debtors further object to the Requests to the extent they seek information that is not kept by the Debtors in the ordinary course of business including, but not limited to, data compilations.

11. The Debtors object to the Requests to the extent that they incorporate allegations, characterizations, and/or assertions that are disputed. The Debtors do not admit the correctness of any such allegations, characterizations, or assertions and the Responses and/or production of documents shall not be deemed an admission of any allegation, characterization, and/or assertion contained in the Requests.

12. The Debtors object to the Requests, including without limitation, the Definitions and Instructions contained therein, to the extent they purport to impose on the Debtors any

5

requirement or obligation greater than, different from, or otherwise inconsistent with those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

13. The following Responses are made solely for the purpose of the Chapter 11 Cases and shall not be used with respect to any other matter, in any other proceeding, or for any other purpose whatsoever.

14. The Debtors object to the Requests to the extent they seek legal conclusions or require the Debtors to form a legal conclusion to provide a response.

15. The Debtors object to the Requests to the extent that they seek responses on a timeframe different from those imposed under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

16. The Debtors hereby object and respond to the Requests to the best of their present knowledge and reserve their rights to revise, correct, amend, and/or supplement the Responses to the Requests.

## OBJECTIONS TO DEFINITIONS

1. The Debtors object to the Definitions to the extent they purport to extend beyond a reasonable scope, define words beyond their ordinary meaning, and/or impose obligations beyond those contained in the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other rules, applicable law, or other court orders governing the proper scope, timing, and extent of discovery in this contested matter. The Debtors will interpret the Requests reasonably and in good faith in accordance with common English usage and the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing and extent of discovery in the Plan.

6

2.     The Debtors object to Definition No. 5 ("Chapter 11 Cases") as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases as the defined term purports to include "the cases under Chapter 7 of the Bankruptcy Code for the Evolution SPV Debtors" and "any Adversary Proceedings filed in connection with such Chapter 11 Cases."

3.     The Debtors object to Definition 5 ("Communications") as overbroad, unduly burdensome, vague, ambiguous, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent such term purports to include "any act or instance of transferring, transmitting, passing, delivering, giving, or recording information by oral, written or electronic means." The Debtors further object to Definition 5 to the extent that it purports to include the production of Communications that are protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege.

4.     The Debtors object to Definition 9 ("Debtors") as overbroad, unduly burdensome, vague, and ambiguous to the extent the term encompasses "employees, managers, officers, directors, agents, subsidiaries, special purpose vehicles, and affiliates." The Debtors will interpret "Debtors" as referring to First Brands Group, LLC and its debtor affiliates in these Chapter 11 Cases. A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Claims and Noticing Agent as detailed herein at footnote 1.

5.     The Debtors object to Definition 12 ("Documents") as overbroad, unduly burdensome, ambiguous, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent it purports to require the production of "any writing, record, or other tangible or intangible thing from which data or information can be obtained, translated, or decoded

7

by any means," drafts, original documents, non-identical copies, notes, work papers, and similar materials, and to the extent it purports to include materials that are publicly available or not within the Debtors' possession, custody, or control.

6. The Debtors object to Definition 13 ("Electronically stored") as overbroad, unduly burdensome, ambiguous, and not proportionate to the discovery needs of these Chapter 11 Cases. The Debtors will produce all Electronically Stored Information consistent with the Debtors' prior productions made throughout these Chapter 11 Cases.

7. The Debtors object to Definition 15 ("ESI") as overbroad, unduly burdensome, ambiguous, and not proportionate to the discovery needs of the confirmation of the Plan. The Debtors further object to this Definition the extent it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court. The Debtors will produce all Electronically Stored Information consistent with the Debtors' prior productions made throughout these Chapter 11 Cases.

8. The Debtors object to Definition 28 ("Person") as overbroad, unduly burdensome, vague, and ambiguous to the extent the term purports to encompasses "natural person, proprietorship, corporation, partnership, trust, joint venture, group, association organization, and entity regardless of form and all of its, directors, officers, employees, representatives, trustees, or agents." The Debtors further object to this Definition to the extent it purports to requires that the Debtors produce documents outside their possession, custody, or control.

9. The Debtors object to Definition 29 ("You" and "Your") as overbroad, unduly burdensome, vague, and ambiguous to the extent the term encompasses "any and each of FBG Debtors' predecessors, successors, assigns, parent companies, subsidiaries, affiliates, legal

8

representatives, managers, directors, officers, employees, representatives, trustees, or agents." The Debtors will interpret "You" and "Your" as referring to the Debtors in these Chapter 11 Cases. The Debtors will interpret "Debtors" as referring to First Brands Group, LLC and its debtor affiliates in these Chapter 11 Cases. A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Claims and Noticing Agent as detailed herein at footnote 1.

10. The Debtors object to Definition 27 ("including") and Definition 31 ("concerning," "reflecting," "relating to," and "regarding") as overbroad, unduly burdensome, vague, and ambiguous to the extent they purport to impose discovery obligations beyond those set forth in the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing and extent of discovery in connection with confirmation of the Plan.

## OBJECTIONS TO INSTRUCTIONS

1. The Debtors object to the Instructions to the extent they purport to impose on the Debtors any obligation different from and/or broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing and extent of discovery.

2. The Debtors object to Instruction No. 1 as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases to the extent it purports to require that the Debtors produce information outside their possession, custody, or control, including to documents held by the Debtors' "current or former directors, officers, partners, members, employees, advisors, agents, representatives, subsidiaries, managing agents, affiliates, attorneys, accountants, auditors, investigators, servants, or other persons acting or purporting to act on"

9

Debtors' behalf. The Debtors further object to Instruction No. 1 to the extent it purports to require disclosures beyond what is reasonably known to the Debtors.

3. The Debtors object to Instruction No. 2 as overbroad, unduly burdensome, ambiguous, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent it purports to require the production of documents already in Evolution's possession and not within the Debtors' possession, custody, or control. The Debtors further object to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

4. The Debtors object to Instruction No. 3 as overbroad, unduly burdensome, ambiguous, and not proportionate to the discovery needs of the Plan, including to the extent it purports to require the production of "all drafts, and non-identical copies of such Documents or Communications[.]" The Debtors further object to Instruction No. 3 to the extent that it purports to include the production of Documents and Communications that are protected by the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, the mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege. The Debtors also object to to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

5. The Debtors object to Instruction No. 4 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal

Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

6. The Debtors object to Instruction No. 5 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

7. The Debtors object to the rules of construction set forth in Instruction No. 6 to the extent they purport to impose on the Debtors obligations to perform anything more than a reasonable search for responsive Documents and information. The Debtors further object to Instruction No. 6 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

8. The Debtors object to the rules of construction set forth in Instruction No. 7 to the extent they purport to impose on the Debtors obligations to perform anything more than a reasonable search for responsive Documents and information. The Debtors further object to Instruction No. 6 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

9. The Debtors object to Instruction No. 8 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal

11

Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

10. The Debtors object to Instruction No. 9 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

11. The Debtors object to Instruction No. 10 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

12. The Debtors object to Instruction No. 11 to the extent that it calls for the generation of a privilege log with respect to documents that are subject to the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege, mediation privilege, or which are otherwise protected from disclosure. The Debtors further object to Instruction No. 11 to the extent it seeks to impose on the Debtors any obligation different from and broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing, and extent of discovery in connection with confirmation of the Plan. The Debtors finally object to Instruction No. 11 as unduly burdensome and not proportionate to the discovery needs of the Chapter 11 Cases.

13. The Debtors object to Instruction No. 12 to the extent that it calls for the generation of a privilege log with respect to documents that are subject to the attorney-client privilege, the attorney-work-product doctrine, the common interest privilege, the joint defense privilege,

12

mediation privilege, or which are otherwise protected from disclosure. The Debtors further object to Instruction No. 12 to the extent it seeks to impose on the Debtors any obligation different from and broader than that provided for, required by, or permitted by the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any applicable rules, case law or court orders governing the proper scope, timing, and extent of discovery in connection with confirmation of the Plan. The Debtors finally object to Instruction No. 12 as unduly burdensome and not proportionate to the discovery needs of the Chapter 11 Cases.

14.     The Debtors object to Instruction No. 13 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court. The Debtors further object to Instruction No. 13 to the extent it purports to require that the Debtors produce privileged information.

15.     The Debtors object to Instruction No. 15 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

16.     The Debtors object to Instruction No. 16 to the extent they purport to impose on the Debtors obligations to perform anything more than a reasonable search for responsive Documents and information. The Debtors further object to Instruction No. 16 to the extent that it purports to impose any requirement or discovery obligation greater than or different from those required under the Federal Rules, the Bankruptcy Rules, the Local Rules, and/or any other applicable law, rules, or orders of the Court.

13

17.     The Debtors object to Instruction No. 17 (defining the "Relevant Period" as September 1, 2025 through the present) as overbroad, unduly burdensome, and not proportionate to the discovery needs for litigating the confirmation of the Plan to the extent it purports to require responses covering a period that is not relevant or proportionate to confirmation of the Plan, and the Debtors further object to any Interrogatory that purports to seek information predating the Relevant Period.

**SPECIFIC OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS**

**REQUEST FOR PRODUCTION NO. 1**:

**All transcripts of any deposition (including exhibits thereto) taken in connection with the Chapter 11 Cases or any Adversary Proceeding.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including because the Request broadly seeks all deposition transcripts and exhibits without regard to relevance. The Debtors further object to this Request to the extent it seeks information outside the Debtors possession, custody, or control. The Debtors additionally object to this Request to the extent it seeks confidential or highly confidential information. The Debtors also object to this Request as seeking information that is otherwise available to Evolution.

Subject to and without waiving any objections, the Debtors will produce non-privileged documents responsive to this Request that the Debtors are reasonably able to identify and collect.

14

**REQUEST FOR PRODUCTION NO. 2**:

All responses to interrogatories or requests for admission (including all documents referenced therein or identified pursuant to Fed. R. Civ. P. Rule 33(d)) provided by any of the Debtors in connection with the Chapter 11 Cases or any Adversary Proceeding.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent it seeks "all responses to interrogatories or requests for admission" and "all documents referenced therein," without regard to relevance to confirmation of the Plan.

Subject to and without waiving any objections, the Debtors will produce non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 3**:

All Documents and Communications exchanged among You and the Ad Hoc Group (or any of its members), the Creditors' Committee (or any of its members), or the ABL Lenders relating to the Premier Marketing Group Plan, the Premier Marketing Group Global Settlement, the Estate Claims Credit Bid Transaction, the Plan, or the Plan Settlement. The Documents and Communications responsive to this request include all communications relating to any terms or aspects of those plans, settlements or transactions, as well as all communications reflecting negotiations of those plans, settlements or transactions.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and

15

Communications. The Debtors additionally object to this Request as vague and ambiguous regarding the meaning of "relating to any terms or aspects of those plans, settlements or transactions," which is also overbroad and unduly burdensome. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 4**:

**All Documents and Communications exchanged between You and Gerard Uzzi of Uzzi & Lall.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are not aware of any non-privileged Documents or Communications responsive to this Request.

16

**REQUEST FOR PRODUCTION NO. 5**:

All Documents and Communications relating to "Adverse Conduct" as defined in the Plan, including any and all Communications relating to any assessment or conclusion regarding which persons or entities engaged in "Adverse Conduct."

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors further object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 6**:

All Documents and Communications relating to substantive consolidation in connection with the Plan, including any and all Communications relating to any consideration of consolidating any Debtors for particular purposes, and any and all Communications relating to consolidation for purposes of any defenses to preference or other avoidance actions (in connection with the Preference Settlement as defined in the Plan or otherwise).

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the

17

discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are not aware of any non-privileged Documents or Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 7**:

**All Documents and Communications relating to the Preference Settlement as defined in the Plan, including any and all Communications relating to eligibility to participate in the settlement.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

18

**REQUEST FOR PRODUCTION NO. 8**:

All Documents relating to the schedule of Specified Non-Released Parties in the Plan Supplement, including any and all Communications regarding the composition of the schedule and determinations regarding which persons or entities are included in the schedule.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are not aware of any non-privileged Documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 9**:

All Documents and Communications relating to the Estate Claims Marketing Process, including (i) all diligence materials provided to any potential bidders, prospective bidders, bidders, or other participants, including all Documents in the "data room"; (ii) all indications of interest received from any prospective bidder; (iii) all bids received; (iv) all indications of interest for any Estate Claims being sold; (v) all "teaser" materials or other information used to solicit potential or prospective bidders; (vi) any Documents or Communications provided to the Ad Hoc Group or the participants in the Estate Claims Credit Bid in connection with the Estate Claims; and (vii) any Documents or Communications exchanged with any potential bidder, prospective bidders, or other participants. This Request expressly encompasses any Documents and Communications provided to or exchanged with the Ad Hoc Group or other participants in the Estate Claims Marketing Process that are in any way connected to the Estate Claims Credit Bid Transaction or the Estate Claims..

<u>**RESPONSE**</u>:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

<u>**REQUEST FOR PRODUCTION NO. 10**</u>:

**All Documents and Communications relating to the Estate Claims Credit Bid Transaction.**

<u>**RESPONSE**</u>:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common

interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 11**:

**All Documents and Communications relating to the "causes of action" and "transactions" referenced by Charles M. Moore as described at Pages 24-25 and 131-132 of the transcript of the Conditional Disclosure Statement Hearing.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

**REQUEST FOR PRODUCTION NO. 12**:

**All Documents and Communications reviewed by or relied upon by Charles M. Moore in connection with reviewing and signing the Plan, the Disclosure Statement, or any declaration submitted in connection therewith, or in connection with providing testimony at the Conditional Disclosure Statement Hearing.**

21

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are willing to meet and confer with Evolution regarding this request.

**REQUEST FOR PRODUCTION NO. 13**:

**All Documents and Communications relating to the Special Committee Investigation (as defined in the Disclosure Statement).**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common

interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

**REQUEST FOR PRODUCTION NO. 14**:

**All Documents and Communications relating to, reflecting, or forming the basis for the FBG Debtors' conclusion that "Based on the FBG Debtors' reasonable estimates, the FBG Debtors are estimating that the Effective Date is reasonably likely to occur in the second half of 2028, although the Effective Date may reasonably or in fact occur earlier or later than the second half of 2028." (Disclosure Statement at 27.).**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Documents and Communications not relevant to confirmation of the Plan and seeks "all" Documents and Communications. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request.

23

**REQUEST FOR PRODUCTION NO. 15**:

All Communications between You and the Ad Hoc Group (or any of its members) or the DIP Secured Parties (or any of those parties) between September 11, 2025 and September 28, 2025.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent this Request seeks Communications not relevant to confirmation of the Plan and seeks "all" Communications. The Debtors additionally object to this Request to the extent it seeks Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors are willing to meet and confer with Evolution regarding this Request.

**REQUEST FOR PRODUCTION NO. 16**:

All Documents and Communications on which the FBG Debtors intend to rely at the Confirmation Hearing.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as premature to the extent it purports to require that the Debtors produce the documentary evidence on which the Debtors intend to rely in connection with the Confirmation Hearing in advance of the applicable deadlines. The Debtors additionally object to

24

this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will provide Documents and Communications, if any, responsive to this request on their witness and exhibit list to be filed in connection with the Confirmation Hearing.

**REQUEST FOR PRODUCTION NO. 17**:

**All Documents and Communications on which any witness called by the FBG Debtors has relied on or will rely on in connection with any testimony relating to the Confirmation Hearing.**

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtors object to this Request as premature to the extent it purports to require that the Debtors produce the documentary evidence on which the Debtors intend to rely in connection with the Confirmation Hearing in advance of the applicable deadlines. The Debtors additionally object to this Request to the extent it seeks Documents and Communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will provide Documents and Communications, if any, responsive to this request on their witness and exhibit list to be filed in connection with the Confirmation Hearing.

25

**REQUEST FOR PRODUCTION NO. 18**:

All general ledgers and trial balances created for, or reflecting activity of, Brake Parts Inc., LLC.

**RESPONSE**:

In addition to the foregoing Reservation of Rights, General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Debtor objects to this Request as overbroad, unduly burdensome, and not proportionate to the discovery needs of these Chapter 11 Cases, including to the extent it seeks Documents not relevant to the Plan and seeks "all" general ledgers and trial balances. The Debtors additionally object to this Request to the extent it seeks documents and communications protected by the attorney-client privilege, work product doctrine, common interest privilege, mediation privilege, the *Supplemental Agreed Protective Order* between the Debtors and the Examiner (Dkt. 1364), or any other applicable privilege or protection.

Subject to and without waiving any objections, the Debtors will produce non-privileged Documents and Communications responsive to this Request, if any.

Dated:  July 7, 2026
     Houston, TX

/s/ Clifford W. Carlson
**WEIL, GOTSHAL & MANGES LLP**
Clifford W. Carlson (2490024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:    Clifford.Carlson@weil.com

-and-

Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Robert S. Berezin (admitted *pro hac vice*)
Theodore E. Tsekerides (admitted pro hac vice)
Christine A. Calabrese (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007
Email:    Matt.Barr@weil.com
             Sunny.Singh@weil.com
             Robert.Berezin@weil.com
             Theodore.Tsekerides@weil.com
             Christine.Calabrese@weil.com

*Attorneys for Debtors and Debtors in Possession*

27

## CERTIFICATE OF SERVICE

I hereby certify that, on July 7, 2026, I caused the foregoing to be served upon counsel of record via electronic mail.

*/s/ Christine A. Calabrese*
Christine A. Calabrese

# Exhibit 2

| | |
|---|---|
| **From:** | Calabrese, Christine |
| **To:** | Michael Duke; Patel, Keya; Ella Epstein; David Elsberg; Vivek Tata; Garrett Gerber; Andrew Parks; #Evolution; Fox, Rachel L. |
| **Cc:** | Tsekerides, Theodore; Berezin, Robert; Rhine, Fredrick; Aquila, Elaina; Ward, Jon; Project Overdrive Lit Associates; Jewett, Laura (LJ) |
| **Subject:** | RE: In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Evolution's First Set of Requests for Production |
| **Date:** | Thursday, July 16, 2026 1:56:45 PM |

> **External Sender** - From: ("Calabrese, Christine"  Learn More
> <Christine.Calabrese@weil.com>)
> This message came from outside your organization.

Hi Michael – for the March 27-May 20 period, we are not asserting privilege between the Debtors and the UCC, AHG, and ABL regarding Plan negotiations. We are, however, continuing to assert privilege with the UCC and the AHG on communications concerning the merits of the Estate Claims and related investigations. As mentioned in my email, with respect to Estate Claims and related investigations, the Debtors and the UCC shared a common interest from the UCC's inception and the Debtors and the AHG shared a common interest from September 27, 2025, the date an agreement on the DIP was reached in principle.

**Christine A. Calabrese**

Weil, Gotshal & Manges LLP
+ 1 212 310-8083 Direct
+1 202 213-7892 Mobile

---

**From:** Michael Duke <mduke@elsberglaw.com>
**Sent:** Thursday, July 16, 2026 10:57 AM
**To:** Calabrese, Christine <Christine.Calabrese@weil.com>; Patel, Keya <Keya.Patel@weil.com>; Ella Epstein <eepstein@elsberglaw.com>; David Elsberg <delsberg@elsberglaw.com>; Vivek Tata <vtata@elsberglaw.com>; Garrett Gerber <ggerber@elsberglaw.com>; Andrew Parks <aparks@elsberglaw.com>; #Evolution <001114-000001@elsberglaw.com>; Fox, Rachel L. <rfox@proskauer.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Rhine, Fredrick <Fredrick.Rhine@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ward, Jon <Jon.Ward@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>
**Subject:** RE: In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Evolution's First Set of Requests for Production

1

Hi Christine—are you asserting mediation privilege and the common interest doctrine from March 27 through May 20?  You say that you are producing "responsive non-privileged communications" from that period, but I do not know what you are treating as privileged because previously you were saying every document during that period was privileged. Thanks

Michael Duke

Partner [Bio]

_____

ELSBERG BAKER & MARURI PLLC [Web]
212.597.2605 (o)
901.870.6975 (m)

---

**From:** Calabrese, Christine <Christine.Calabrese@weil.com>
**Sent:** Thursday, July 16, 2026 1:33 AM
**To:** Patel, Keya <Keya.Patel@weil.com>; Ella Epstein <eepstein@elsberglaw.com>; David Elsberg <delsberg@elsberglaw.com>; Michael Duke <mduke@elsberglaw.com>; Vivek Tata <vtata@elsberglaw.com>; Garrett Gerber <ggerber@elsberglaw.com>; Andrew Parks <aparks@elsberglaw.com>; #Evolution <001114-000001@elsberglaw.com>; Fox, Rachel L. <rfox@proskauer.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Rhine, Fredrick <Fredrick.Rhine@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ward, Jon <Jon.Ward@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>
**Subject:** RE: In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Evolution's First Set of Requests for Production

Ella – further to Keya's email, we wanted to confirm that the Debtors will also be producing responsive non-privileged communications between the Debtors and the AHG, UCC, and/or ABL for the period March 27, 2026 (the close of formal mediation) to May 20, 2026 (the date the Debtors announced an agreement in principle with the AHG, UCC, and ABL on the record) regarding Plan negotiations.  The Debtors continue to assert the mediation/common interest privilege with the AHG, UCC, and ABL from May 20 to present.  For the avoidance of doubt, this does not change the Debtors' position with respect to Estate Claims and related investigations: the Debtors and the UCC shared a common interest from the UCC's inception and the Debtors and the AHG shared a common interest from September 27, 2025, the date an agreement on the DIP was reached in principle.  We anticipate making this production later in the day tomorrow.

Best,
Christine

**Christine A. Calabrese**

2

Weil, Gotshal & Manges LLP

+ 1 212 310-8083 Direct

+1 202 213-7892 Mobile

---

**From:** Patel, Keya <Keya.Patel@weil.com>
**Sent:** Wednesday, July 15, 2026 11:57 PM
**To:** Ella Epstein <eepstein@elsberglaw.com>; David Elsberg <delsberg@elsberglaw.com>; Michael Duke <mduke@elsberglaw.com>; Vivek Tata <vtata@elsberglaw.com>; Garrett Gerber <ggerber@elsberglaw.com>; Andrew Parks <aparks@elsberglaw.com>; #Evolution <001114-000001@elsberglaw.com>; Fox, Rachel L. <rfox@proskauer.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Rhine, Fredrick <Fredrick.Rhine@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ward, Jon <Jon.Ward@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>
**Subject:** RE: In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Evolution's First Set of Requests for Production

Hi Ella,

This production volume contains documents relating to:
- Lien Searches (including bringdown searches and IP searches)
- Minutes of Meetings of the Special Committee of the Board of Managers of FBG
- Pre-mediation email communications with the UCC and/or the Ad Hoc Group and/or the ABL (January 1, 2026 through January 28, 2026)
- Surcharge Demand Letters
- As-filed Final DIP Order
- Cash Tracing Analysis
- Common Interest Agreement between Debtors, the UCC, and the Ad Hoc Group

The Debtors are working to produce the documents relied upon in Mr. Moore's declaration tomorrow.

Best,
Keya

---

**From:** Ella Epstein <eepstein@elsberglaw.com>
**Sent:** Wednesday, July 15, 2026 10:35 AM
**To:** Patel, Keya <Keya.Patel@weil.com>; David Elsberg <delsberg@elsberglaw.com>; Michael Duke <mduke@elsberglaw.com>; Vivek Tata <vtata@elsberglaw.com>; Garrett Gerber <ggerber@elsberglaw.com>; Andrew Parks <aparks@elsberglaw.com>; #Evolution <001114-000001@elsberglaw.com>; Fox, Rachel L. <rfox@proskauer.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Rhine,

3

Fredrick <Fredrick.Rhine@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ward, Jon <Jon.Ward@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>
**Subject:** RE: In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Evolution's First Set of Requests for Production

Keya,

Can you please identify the contents of this production? Does it contain all the documents relied upon in the drafting of Mr. Moore's most recent declaration (Docket No. 3188)? Thank you.

Best,
Ella

Ella Epstein
Associate [Bio]

_____
ELSBERG BAKER & MARURI PLLC [Web]
212.597.2611 (o)
347.472.2272 (m)
(she/her/hers)

---

**From:** Patel, Keya <Keya.Patel@weil.com>
**Sent:** Wednesday, July 15, 2026 2:53 AM
**To:** Ella Epstein <eepstein@elsberglaw.com>; David Elsberg <delsberg@elsberglaw.com>; Michael Duke <mduke@elsberglaw.com>; Vivek Tata <vtata@elsberglaw.com>; Garrett Gerber <ggerber@elsberglaw.com>; Andrew Parks <aparks@elsberglaw.com>; #Evolution <001114-000001@elsberglaw.com>; Fox, Rachel L. <rfox@proskauer.com>
**Cc:** Tsekerides, Theodore <theodore.tsekerides@weil.com>; Berezin, Robert <robert.berezin@weil.com>; Calabrese, Christine <Christine.Calabrese@weil.com>; Rhine, Fredrick <Fredrick.Rhine@weil.com>; Aquila, Elaina <Elaina.Aquila@weil.com>; Ward, Jon <Jon.Ward@weil.com>; Project Overdrive Lit Associates <Project.Overdrive.Lit.Associates@weil.com>; Jewett, Laura (LJ) <Laura.Jewett@weil.com>
**Subject:** In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Evolution's First Set of Requests for Production

**In re: First Brands Group, LLC, et. al — Debtors' Third Production in Response to Evolution's First Set of Requests for Production**

Counsel,

You will soon receive a CloudShare link to the Debtors' production volume. The information below lists the Bates range for the productions and the passwords to access the zip files:

Production: FBG_CH1_003

Bates Range: FBG_CH1_00063364 - FBG_CH1_00089753

Password: ph#y20LwRodri0=i

The Debtors make this production subject to the governing Protective Order [ECF No. 408] entered in *In re First Brands Group, LLC, et al.* (Case No. 25-90399 (CML)) and the *Debtors' Responses and Objections to Evolution's First Set of Requests for Production of Documents*, dated July 7, 2026. To the extent that any privileged information is inadvertently produced, such production should not constitute a waiver of such applicable privilege. The Debtors reserve all rights.

Please contact us should you have any questions or issues accessing the documents.

Sincerely,
Keya Patel



**Keya Patel**
Associate
She/her/hers

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Keya.Patel@weil.com
+1 212 310 8408 Direct
+1 212 310 8007 Fax

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent

5

responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

6

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| **In re:** | § | **Chapter 11** |
|  | § |  |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
|  | § |  |
|  | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | **Re: Docket Nos. 3210, 3211, 3223 & 3224** |

**DEBTORS' OMNIBUS OBJECTION TO THE EMERGENCY MOTIONS TO COMPEL
FILED BY THE LAM PARTIES (DKT. 3210) AND KATSUMI (DKT. 3211)
AND THE JOINDERS FILED BY ONSET (DKT. 3223) AND EVOLUTION (DKT. 3224)**

First Brands Group, LLC ("**FBG**") and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"),[2] file this omnibus objection (this "**Objection**") to (i) the *LAM Parties' Emergency Motion to Compel Production of Documents and Interrogatory Responses from Debtors* (Dkt. 3210) (the "**LAM Motion**"), filed by the LAM Parties (as defined in the LAM Motion) and (ii) the *Emergency Motion of Katsumi Servicing, LLC to Compel Debtors to Produce Complete Responses and Documents in Response to Discovery Served Upon the Debtors* (Dkt. 3211) (the "**Katsumi Motion**," and together with the LAM Motion, the "**Motions**"), filed by Katsumi (as defined in the Katsumi Motion). The Debtors also object to (i) *Onset Financial, Inc.'s Joinder and Statement in Support of LAM Parties' and Katsumi Servicing, LLC's Motions to Compel Production of Documents and Interrogatory Responses from Debtors* (Dkt. 3223) (the "**Onset Joinder**") filed

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan (Dkt. 3019) or the Motions (each, as defined herein), as applicable. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (Docket No. 22) (the "**First Day Declaration**").

by Onset (as defined in the Onset Motion) and (ii) *Evolution's Joinder to LAM Parties', Katsumi's Emergency Motions to Compel Production of Documents And Interrogatory Responses* (Dkt. 3224) (the "**Evolution Joinder**" and together, the "**Joinders**") filed by Evolution (as defined in the Evolution Motion). The Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1.       The LAM Parties and Katsumi know they are targets of identified claims that are included among the Estate Claims. They are not mere "creditors" seeking to understand a Plan. Similarly, Onset is already a defendant in an adversary proceeding brought by the Debtors and Evolution has been involved in what can best be described as near constant litigation with the Debtors. These parties appear to have two primary goals: attempt to secure discovery into the Debtors' privileged analyses related to claims against them and force the Debtors into a chapter 7 liquidation along the way. To advance these goals, the LAM Parties and Katsumi inundated the Debtors with burdensome and disproportionate discovery requests, and now seek to leverage those requests to push the confirmation hearing by claiming that the Debtors' responses are deficient. They also take issue with the timing of the Debtors' disclosure of the expert declaration of Marc Kirschner and argue that, by filing the declaration of Charles Moore, the Debtors have purportedly waived privilege over "facts developed" in the Special Committee Investigation related to the Estate Claims. As detailed herein, none of these kitchen-sink-style arguments are persuasive and the Motions should be denied.

2.       Most notably, the Motions completely mischaracterize the status of discovery in this matter and the scope of the Debtors' privilege assertions, which were narrowed in response to the meet and confer process, even before the Motions were filed. Contrary to the LAM Parties' characterizations, for example, the Debtors are *not* taking the position that *"every*

2

*single communication"* with the Ad Hoc Group is privileged.  *See* LAM Mot. ¶ 4 (emphasis added).  Nor are the Debtors arguing that "they enjoy a common interest privilege with the Ad Hoc Group that covers *every* communication dating to early January."  *See* LAM Mot. ¶ 5 (emphasis added).  Katsumi repeats similarly incorrect characterizations, claiming that the Debtors are using mediation privilege as a "blanket shield" and implying that the Debtors have refused to produce prepetition communications from September 1, 2025 to September 28, 2025 between the Debtors and the Ad Hoc Group or DIP Secured Parties.  Katsumi Mot. ¶¶ 17, 25.  None of this is true.

3. The Debtors have already produced—among *many* other documents—responsive communications between (1) the Debtors' advisors and the Ad Hoc Group advisors from September 1, 2025 to September 28, 2025 (the "**Prepetition Period**"), (2) the Debtors' advisors and the Ad Hoc Group advisors, Creditors' Committee advisors, and ABL advisors from January 1, 2026 to January 28, 2026 (the "**Pre-mediation Period**"), and (3) the Debtors' advisors and the Ad Hoc Group advisors, Creditors' Committee advisors, and ABL advisors from March 27, 2026 to May 20, 2026 (the "**Post-mediation Period**").  The Motions do not mention any of these productions, despite Katsumi and the LAM Parties having already received two of the three productions *before* filing their Motions and, at least Katsumi's counsel, being aware that the Debtors were finalizing for production communications from the Post-mediation Period (which have since been produced).  These productions align with the Debtors' positions on privilege:

4. **First**, the mediation privilege protects documents, information, and communications exchanged in relation to mediation between the Debtors, the Ad Hoc Group, the Creditors' Committee, and the ABL Lenders (the "**Negotiation Parties**") during the Court-ordered mediation period, which ran from January 29, 2026 to March 27, 2026, as extended and renewed (the "**Formal Mediation Period**").

5. **Second**, the common interest privilege protects documents, information, and communications related to the Plan (including the Plan settlement) and prosecuting the Plan exchanged between the Negotiation Parties from May 20, 2026 (the date the Debtors, the Ad Hoc Group, and the Creditors' Committee reached an agreement in principle and announced such agreement in open Court[3]) to present (the "**Post-settlement Period**").

6. **Third**, with respect to potential claims and causes of action that the Debtors may have, the Debtors have a common interest with the UCC from its inception and with the Ad Hoc Group from September 27, 2025, the date the terms of a DIP financing agreement were agreed in principle.

7. The LAM Parties and Katsumi (in addition to Evolution and Onset) ignore all of this. They also incorrectly claim that the Debtors refuse to provide a categorical privilege log and misrepresent the scope of the Debtors' document productions. Regarding a categorical privilege log, the Debtors had already agreed to provide one and are currently finalizing it for production. That is more than *EXCO* required, where Judge Isgur declined to order any privilege log for mediation documents at all. Hr'g Tr. 42:7–12, *In re EXCO Res., Inc.*, No. 18-30155 (Bankr. S.D. Tex. Nov. 30, 2018) [Dkt. 1413] (mediation documents are "totally privileged" and "no log would have to occur for those"). On the scope of the Debtors' document productions, for example, the LAM Parties write that "[A]s recently as July 15, the Debtors have produced documents, including productions made to others in these cases, and have provided dataroom information (largely public documents)." LAM Mot. ¶ 18. This is a misleading description of the Debtors' productions. First, the Debtors produced extensive information from across these chapter 11 cases—including deposition transcripts and exhibits, responses to prior discovery requests, and the

---

[3] May 20, 2026 Hr'g Tr. 12:17–13:1 [Dkt. 2789]

Debtors' many prior document productions (which were burdensome and largely irrelevant)—*as expressly requested* by the LAM Parties and Katsumi. There should be absolutely no implication that the Debtors dumped prior data on these parties—they received exactly what they asked for— or that this prior data is all that the Debtors have produced. Indeed, the Debtors' productions have included (among other documents) board minutes and materials, emails to potential bidders in connection with the Estate Claims Marketing Process, non-privileged documents provided to the Examiner, the documents underlying the declarations of Mr. Moore and Mr. Kirschner, executed common interest agreements, data-rich excel spreadsheets concerning various topics, including administrative expense and priority claims, and negotiation materials during the Pre-mediation Period and Post-mediation Period. To suggest that the Debtors have been stonewalling discovery is demonstrably false.

8. The LAM Parties and Katsumi raise other arguments, including claiming prejudice based on insufficient interrogatory responses and the alleged delayed disclosure of Mr. Kirschner as a litigation assessment expert for the Debtors. But these claims are also without merit. The Debtors' interrogatory responses were sufficient, and will be supplemented in any event to account for the filed Declarations. And the Debtors' disclosure of Mr. Kirschner creates no prejudice, including because all parties in interest will have an opportunity to depose Mr. Kirschner next week (ten days after his declaration was filed) and cross examine Mr. Kirschner at the hearing (two weeks after his declaration was filed).

9. For these reasons and as set forth in more detail herein, the Court should deny the Motions and the Joinders.

**BACKGROUND**

10.    On June 17, 2026, the LAM Parties served their First Set of Requests for Production (Nos. 1–21); on June 17, 2026 Onset served its First Set of Requests for Production (Nos. 1–14); on June 22, 2026, Katsumi served its First Set of Interrogatories (Nos. 1–24) and First Request for Production of Documents (Nos. 1–31); and on June 24, 2026, the LAM Parties served their First Set of Interrogatories (Nos. 1–17).  The Debtors served responses and objections and began producing documents on a rolling basis.  The Debtors' productions, which are substantially complete, include new collection volumes FBG_CH1_001 through FBG_CH1_007, comprising FBG_CH1_00000001 through FBG_CH1_00206938, together with re-productions of the Debtors' prior productions in these chapter 11 cases.  The Debtors have also produced communications, across responsive periods, as detailed herein.  The parties conferred regarding the various discovery requests, and through the meet and confer process, the Debtors narrowed their initial assertion of privilege to the scope detailed herein.  The Debtors are currently preparing a categorical privilege log.

11.    On July 14, 2026, the Debtors filed the *Declaration of Charles M. Moore in Support of Confirmation of FBG Debtors' Chapter 11 Plan* (Dkt. 3188) and the *Declaration of Marc S. Kirschner* (Dkt. 3190), with an application to retain Mr. Kirschner as an expert effective June 20, 2026.  Mr. Moore and Mr. Kirschner are scheduled to be deposed on July 23 and July 24 respectively.

12.    Shortly before midnight on July 15, 2026, the LAM Parties and Katsumi filed the Motions, which Evolution and Onset joined the following day.  The Motions seek to compel document production, interrogatory responses, and to continue the Confirmation Hearing scheduled to begin July 28, 2026, among other relief.

6

**ARGUMENT**

### A. The Debtors' Assertion of Mediation Privilege is Consistent with the Mediation Orders

13. The LAM Parties and Katsumi argue that the Debtors are misapplying the mediation privilege and (at least Katsumi) argues that the mediation privilege extends to "just the submissions to Judge Isgur" and only to "the actual days [the Debtors] were in a mediation session before Mediator Judge Isgur." Katsumi Motion ¶ 20. But these narrow applications of the mediation privilege run counter to the mediation orders entered by the Court. *See Agreed Mediation Order Appointing Judge Marvin Isgur As Mediator* (Dkt. 1822) (the "**First Mediation Order**") (order entered January 29, 2026); *Notice of Extension of Mediation Period* (Dkt. 1974) (extending mediation through February 27, 2026); *Second Agreed Mediation Order Appointing Judge Marvin Isgur as Mediator* (Dkt. 2005) (the "**Second Mediation Order**"); and *Third Agreed Mediation Order Appointing Judge Marvin Isgur as Mediator* (Dkt. 2186) (the "**Third Mediation Order**," and together with the First Mediation Order and the Second Mediation Order, the "**Mediation Orders**") (extending mediation to March 27, 2026).

14. The plain language of the Mediation Orders provides in most relevant part that "[a]ny (a) discussions among the Parties, including discussions with or in the presence of the Mediator; (b) mediation statements or any other documents or information provided to the Mediator or the Parties in the course of the Mediation; (c) correspondence, draft resolutions produced in connection with, or as a result of, the Mediation; and (d) offers and counteroffers" . . . shall "*not be admissible, discoverable or otherwise used for any purpose in any proceeding outside of the Mediation, including any judicial or administrative proceeding*" (among other protections). Mediation Orders ¶ 8 (emphasis added). The Mediation Orders further prohibit the Debtors from disclosing the information detailed in (a)-(d). *Id*. The Mediation Orders therefore

7

unambiguously support the Debtors' position: information exchanged during the Formal Mediation Period between the Negotiation Parties concerning topics addressed during mediation is expressly protected by the mediation privilege. *See id.* Judge Isgur reached the same conclusion from the bench in *In re EXCO Resources, Inc.*, holding that the mediation privilege applies "outside of the four corners of the mediation rooms" and reaches "all the communications in furtherance of the mediation proceedings." Hr'g Tr. 39:24–40:2, *In re EXCO Res., Inc.*, No. 18-30155 (Bankr. S.D. Tex. Nov. 30, 2018) [Dkt. 1413] ("[I]t just makes no sense to limit it to the room. . . . [T]he idea is to have confidential mediation.").

15.     For periods *outside* the Formal Mediation Period, the Debtors are not claiming privilege (except with respect to the two common interest subjects detailed below) and have produced responsive communications between the Negotiation Parties across three periods that are responsive to the LAM Parties' and Katsumi's requests: (i) the Prepetition Period, (ii) the Pre-mediation Period, and (iii) the Post-mediation Period. This reflects that the Debtors have in fact taken an appropriately tailored privilege approach, producing communications outside the Formal Mediation Period while asserting the mediation privilege over only the Formal Mediation Period. The arguments asserted by the LAM Parties and Katsumi are thus belied by the Debtors' document productions and should be denied.

### B.     The Debtors' Common Interest Assertions are Narrowly Drawn and Well Founded

16.     The LAM Parties argue that the Debtors have asserted "an extremely broad, blanket common interest position," that "[a] bidder and a seller do not have a common interest with respect to a bid" so "the Estate Claims Credit Bid Transaction simply cannot be a matter of common interest," and that, absent document-by-document review and a privilege log, the Court should "find that the privilege has been waived." LAM Mot. ¶¶ 32, 36, 38. Katsumi likewise

describes the Debtors' responses as "blanket assertions of mediation and common interest privilege." Katsumi Mot. ¶ 3. Evolution joins both motions and adds that the doctrine reaches only actual or "potential co-defendants" facing a "palpable threat of litigation." Evolution Mot. ¶¶ 4-5. Onset likewise contends the Debtors are withholding "essentially all of the Debtors' communications with the Plan Negotiation Parties since the Petition Date." Onset Mot. ¶ 10. These are strawman arguments, as none of them align with the Debtors' actual position on common interest privilege.

17. The Debtors are asserting common interest over two subjects: **(1)** the investigation into and the prosecution of Estate Claims (shared with the Creditors' Committee from its inception and the Ad Hoc Group from September 27, 2025, when an agreement in principle was reached on DIP financing) (the "**Estate Claims Common Interest**") and **(2)** Plan settlement negotiations and prosecution of the Plan (shared with the Negotiation Parties from May 20, 2026—the date an agreement in principle was reached—to present) (the "**Plan Settlement Common Interest**"). The Debtors are simply not asserting common interest privilege over every communication.

18. Regarding the Estate Claims Common Interest, the Debtors share a common legal interest with the Creditors' Committee and the Ad Hoc Group in maximizing the estate's recoveries and preparing strong cases against potential defendants (like the LAM Parties, Katsumi, Onset, and Evolution). The discovery requests at issue in the Motions underscore the importance of the Estate Claims Common Interest: the very parties that the Debtors, the Creditors' Committee, and the Ad Hoc Group are developing claims against should not be able to use plan discovery to secure analysis and strategic assessment, for example, related to prosecuting claims against them. This is consistent with settled law. In *In re Hardwood P-G, Inc.*, the court held a common interest

9

properly asserted among a debtor, the creditors' committee, and the lenders because "[t]he common legal goal of investigating and recovering the debtors' assets existed between the debtors, the Committee, and the Banks," which were "working in concert to recover, through litigation, causes of action of the estate." 403 B.R. 445, 461 (Bankr. W.D. Tex. 2009); *accord In re Age Refining, Inc.*, 447 B.R. 786, 806 (Bankr. W.D. Tex. 2011) (counsel for parties sharing a common interest in current or potential litigation may exchange information without waiver); *In re Maxus Energy Corp.*, 617 B.R. 806, 824 (Bankr. D. Del. 2020) ("It is not surprising that the Debtors would be discussing case strategy with the OCC from the inception of the OCC.").

19.     The Plan Settlement Common Interest is equally well grounded.  Once parties reach agreement on the material terms of a restructuring, even where their interests "are not completely in accord," they "share the common legal interest of obtaining approval of their settlement and confirmation" of the plan.  *In re Tribune Co.*, 2011 WL 386827, at *4 (Bankr. D. Del. Feb. 3, 2011).  The interest arises when material terms are agreed, not when the plan is filed, *id.* at *5, and courts fix the date with precision.  *See In re Imerys Talc Am., Inc.*, 2021 WL 12302368, at *5, *8 (Bankr. D. Del. Feb. 23, 2021) (fixing the specific dates on which the plan proponents "had a common legal interest in confirming the Plan" and in maximizing estate assets); *see also In re Imerys Talc Am., Inc.*, 2021 WL 12217315, at *3-4 (Bankr. D. Del. Aug. 10, 2021) (no protection for exchanges between still-adverse negotiating counterparties).

20.     To the extent the LAM Parties, Katsumi, Evolution, or Onset are advancing (or joining) an argument that the Debtors' and the Ad Hoc Group have waived privilege with respect to the Estate Claims Common Interest because the DIP Secured Parties are credit bidding on the Estate Claims, this argument is without merit.  Courts have found a common legal interest between a debtor and the very lenders credit-bidding for its assets and serving as stalking horse.

10

*See Velo Holdings, Inc. v. Paymentech, LLC (In re Velo Holdings, Inc.)*, 473 B.R. 509, 517 (Bankr. S.D.N.Y. 2012).

21. Nor is there anything to the argument that the Ad Hoc Group, as a participant in the Estate Claims Marketing Process, received "factual information beyond what other bidders received." LAM Mot. ¶ 31. That the Ad Hoc Group knows more about the assets than potential bidders is not unusual nor a basis for requiring the production of privileged documents. Additionally, the remedy for correcting this alleged asymmetry (which the Debtors' dispute) would be disclosure to the potential bidders pursuant to a confidentiality agreement. Not production to the very defendants the estate is focused on pursuing.

22. Instead, if the LAM Parties, Katsumi, and others want to advance a challenge to the Estate Claims Marketing Process based on an alleged asymmetry of information or any other perceived flaw, they can make that legal argument in their objection to the Plan. At a higher level, the attempt to use the Estate Claims Marketing Process as a hook for waiver and an avenue for accessing privileged information on Estate Claims further highlights that the discovery requests are not really about the confirmation hearing, but rather pretext for future defendants securing legal analyses concerning the claims that will be filed against them.

23. Finally, the demand that the Court "find that the privilege has been waived" unless the Debtors undertake a document-by-document review, LAM Mot. ¶ 38 (citing *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017)), fails on its own terms. *BDO* requires that a log "provide sufficient information to permit courts and other parties to test the merits of" the privilege claim, and it locates waiver in "unjustified delay, inexcusable conduct, or bad faith," not in an adversary's preference for a different logging format. 876 F.3d at 697. Here, the Debtors

11

have agreed to prepare a categorical privilege log, which will provide sufficient information to assess the Debtors' privilege positions (which are also detailed herein).

### C. The Debtors Have Not Waived Privilege By Detailing Facts Relevant to the Estate Claims In the Moore Declaration

24. The LAM Parties argue that by filing Mr. Moore's declaration the Debtors "waived privilege over the facts developed in their Special Committee Investigation," and that the Debtors "cannot selectively disclose the conclusions from their investigation that suit their interests and then claim privilege or work product over other facts discovered in the course of the investigation on related matters." LAM Mot. ¶¶ 8, 42. Katsumi similarly argues that the Debtors "cannot refuse disclosure, and then put Mr. Moore on the witness stand to testify about a funds-flow analysis while simultaneously claiming that the underlying work papers supporting that analysis are privileged." Katsumi Mot. ¶ 44. Onset extends the argument to the confirmation declarations, each of which, it contends, "selectively discloses conclusions drawn from the Debtors' purportedly privileged investigation while relying upon substantive materials that the Debtors refuse to produce." Dkt. 3223 ¶ 11. These arguments are squarely foreclosed by well-established case law.

25. First, it is well established that *facts* are not privileged, and the Debtors are not claiming privilege over facts. "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *see SEC v. Brady*, 238 F.R.D. 429, 439 (N.D. Tex. 2006) (the privilege "does not protect against discovery of underlying facts from their source merely because those facts have been communicated to an attorney"). The same is true of work product. "[T]he work product immunity protects only the documents themselves and not the underlying facts." *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir.

12

1982).  Applying this fundamental principle, the LAM Parties' argument that the Debtors "waived privilege over the facts developed in their Special Committee Investigation" makes no sense. LAM Mot. ¶ 8.

26.     The Debtors are not claiming privilege over *facts* discovered during the course of the investigation, which is what Mr. Moore's testimony covers.  Instead, the Debtors are asserting privilege over their privileged analyses, assessment, and strategic communications regarding those facts.  In *Doe 1 v. Baylor University*, the court required the university's corporate representative to testify to "the factual bases of the Findings of Fact" produced by outside counsel's internal investigation while protecting "the significance that attorneys have attached to the facts, or the conclusions drawn from them." 2018 WL 11471254, at *2 (W.D. Tex. Oct. 11, 2018).  This is analogous to the fact-based testimony set forth in Mr. Moore's declaration.

27.     Nor have the Debtors wielded any sword.  A "sword/shield" waiver occurs only when a client "affirmatively rel[ies] on attorney-client communications to support an element of a legal claim or defense."  *In re Itron, Inc.*, 883 F.3d 553, 558 (5th Cir. 2018).  That privileged material might be "helpful" to an adversary "is not a sufficient basis for abrogating the privilege," *id.* at 561 (quoting *In re Burlington N., Inc.*, 822 F.2d 518, 533 (5th Cir. 1987)), and the client "must rely on privileged advice from his counsel to make his claim or defense," *id.* (quoting *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008)).  Mr. Moore's testimony concerning the facts underlying the Estate Claims is completely distinguishable.

28.     Movants' own authorities confirm the line, because in every one of their cases, the "sword" was privileged material itself (not facts).  For example, in *In re Anadarko Petroleum Corp. Sec. Litig.*, No. 4:20-cv-00576, 2023 WL 2733401 (S.D. Tex. Mar. 31, 2023), counsel disclosed the substance of the privileged investigation, including witness interviews and

internal documents, to the company's outside auditor across a dozen conference calls, and then withheld the same materials in litigation. *Id.* at *1, *3. *Willy v. Administrative Review Board* states the same requirement, that waiver follows when a party "uses confidential information against his adversary." 423 F.3d 483, 497 (5th Cir. 2005). And in *Toshiba International Corp. v. Kalaga*, a court in this district held that the sword-shield doctrine "does not apply" absent selective presentation of privileged materials to prove a point. 2020 WL 13413222, at *3 (S.D. Tex. May 26, 2020). Mr. Moore's declaration presents no privileged material at all. It recites facts, which were never privileged and which the LAM Parties, Katsumi, Evolution, and Onset remain free to test, including based on the extensive underlying materials produced and in the deposition of Mr. Moore.

29.     This Court has already confronted, and rejected, precisely this "sword/shield" objection. At the confirmation hearing in *Steward*, objectors moved to strike a witness's recovery analysis because certain inputs came from counsel. The Court declined, reasoning that the witness "took that input, but he provided an analysis and he created . . . a chart. So it's not all . . . like pay down of Class A, estimated allowed admin claims. There's a lot there and you can't just strike the entire chart." *In re Steward Health Care Sys., LLC*, No. 24-90213 (Bankr. S.D. Tex.), Hr'g Tr. July 14, 2025 (Day 1) 175:11-15 [Dkt. 5723]. The Court ruled that "a number that has been stated from counsel," as to which the witness could provide no further detail, would come in for what it was worth. *Id.* at 180:22-181:4. "It will be what it is. In other words, I'm not striking it. But certainly, that number will have the meaning that it has . . . which will be . . . an untested number," one that, as the Court agreed, "goes to credibility." *Id.* at 181:6-15. And when the objection was renewed, the Court framed the question as one of proof rather than

14

privilege, whether the Debtors "presented enough facts for the Court to make an independent determination about certain issues." Hr'g Tr. July 15, 2025 (Day 2) 100:3-7 [Dkt. 5746].

30. This framework governs here, and is even more applicable because the factual inputs in Mr. Moore's declaration were not provided by counsel. The Debtors bear their burden with facts, Movants may test those facts, and anything they cannot test goes to weight. It is not a basis for waiver, and it is certainly not a basis for the LAM Parties' alternative demand that the Moore and Kirschner testimony be excluded wholesale, or for Onset's request to strike the declarations to the extent they rest on unproduced materials. Dkt. 3223 at 8.

**D.      The Debtors' Expert Disclosure Is Not Prejudicial**

31. Although they provide no specifics, Katsumi and the LAM Parties argue that they are prejudiced by the timing of the Debtors' disclosure of Marc Kirschner as an expert witness on assessing litigation claims and suggest that the Debtors were obligated to disclose Mr. Kirschner by the interrogatory "deadlines" that the LAM Parties and Katsumi unilaterally declared. *See* LAM Mot. ¶ 10; Katsumi Mot. ¶ 12. This argument is without merit. First, the Debtors were not obligated to disclose Mr. Kirschner or submit his declaration by any specific date in the context of the confirmation hearing. *See* Fed. R. Bankr. P. 9014(c) (Rule 26(a)(2)'s expert-disclosure requirements do not apply in a contested matter unless the court directs otherwise); *In re Couture Hotel Corp.*, 536 B.R. 712, 723–24 (Bankr. N.D. Tex. 2015) ("a hearing to consider confirmation of a plan of reorganization is a contested matter, not an adversary proceeding," and Rule 26(a)(2) is among the provisions that "shall not apply in a contested matter unless the court directs otherwise"); *In re Yellow Corp.*, 676 B.R. 516, 532–33 (Bankr. D. Del. 2025) (denying motion to exclude confirmation testimony of debtors' financial advisor who provided no Rule 26(a)(2) report, because "[t]he confirmation hearing is a 'contested matter'" and the court would "apply the rules as they are written"). The Court entered a scheduling order setting forth a "Solicitation and

15

Confirmation Timetable" with relevant deadlines—including a deadline for objections to the disclosure statement and Plan—leading up to the July 28, 2026 combined hearing. *See* Order Scheduling Combined Hearing at 7 (Dkt. 2990) (the "**Scheduling Order**"). The Scheduling Order does not set a declaration or expert disclosure deadline. *See id.* Nor can the LAM Parties and Katsumi create a deadline by requesting (without court order) interrogatory responses by a certain date.

32. Second, the Debtors' expert disclosure is not prejudicial. Absent a deadline, the Debtors filed Mr. Kirschner's declaration at a reasonable time, two weeks before the confirmation hearing, with all interested parties having ten days to prepare for the July 24 deposition of Mr. Kirschner. This timeline does not prejudice Katsumi or the LAM Parties, who will have an opportunity to depose and cross examine Mr. Kirschner, nor do they explain how it creates any prejudice (because there is *no* prejudice): all parties in interest will have had approximately ten days to prepare for Mr. Kirschner's deposition, the opportunity to depose him, and the opportunity to cross examine him at the confirmation hearing. Additionally, Mr. Kirschner is presenting expert opinion on his assessment of the litigation claims and related issues relevant to the Debtors' burden at the confirmation hearing. While significant, his opinions are not of the type that—like an economist opining on damages or an engineer opining on design flaws—would require significant preparation to depose or cross examine.

33. Rather than identify the prejudice that they will purportedly suffer, the LAM Parties and Katsumi imply that the Debtors intentionally and improperly withheld information and suggest that adjourning the confirmation hearing or excluding Mr. Kirschner's testimony is the remedy. Katsumi Mot. ¶ 50. But the Debtors were not playing games and there is no reason to adjourn the confirmation hearing. The Debtors reasonably engaged Mr. Kirschner as a consulting

16

expert on June 20, provided him with information so that he could consider if he would provide a report, and proceeded to file a supporting expert report and put forth Mr. Kirschner as a testifying witness thereafter. This is a normal process and the Debtors were entitled to consult with Mr. Kirschner and understand his opinions before presenting him as a testifying expert.

### E. The Debtors' Interrogatory Responses Are Not Deficient

34. Katsumi and the LAM Parties both argue that the Debtors' interrogatory responses are deficient and seek to compel the Debtors to supplement them. LAM Motion at 1; Katsumi Mot. ¶ 3. The Court should deny this relief. First, the interrogatories served by the LAM Parties and Katsumi predominately target privileged information and were admittedly prepared in collaboration to purposely "serve requests covering different topics." Katsumi Mot. at 2. This highlights the bigger picture: Katsumi and the LAM Parties are working together to access broader scope discovery and fighting tooth and nail—under the guise of confirmation discovery—to secure privileged information and analyses to inform their defense to the claims that a litigation trustee will likely pursue against them. The Court should not permit this.

35. Second, the Debtors' interrogatory responses are sufficient and comply with their obligations. For the vast majority of the interrogatories, the Debtors responded with reference to what was then their forthcoming declarations and supporting evidence, which were filed and produced shortly after the Debtors served their interrogatory responses. The Debtors are currently finalizing supplemental interrogatories identifying responsive documents that the Debtors produced (by production bates number) and citations to the responsive declaration sections for those interrogatories that reference the Debtors' declarations and/or documents. This should resolve the majority of the objections raised by Katsumi and the LAM Parties.

36. Additionally, both Katsumi and the LAM Parties served interrogatories that appear designed to invade the mediation and common interest privileges. For example, Katsumi

17

Interrogatory No. 14 asks the Debtors to "[d]escribe with particularity the ***Debtors' work and conclusions*** under applicable state law as to which Causes of Action, Estate Claims or other claims or causes of action may be transferred or contributed to the Litigation Trust or the Litigation Trust Assets." Katsumi Mot., Ex. 2 at 63 (Debtors' Responses and Objections to Katsumi Interrogatory No. 14) (emphasis added). The Debtors should not be required to divulge privileged information.

37. It is also inaccurate to suggest that the Debtors have not provided substantive responses to interrogatories. For example, LAM Interrogatory No. 11 asked whether creditors in Classes 4, 5, and 6 hold secured claims, and not only deficiency claims, at each Debtor entity. The Debtors answered directly: the First Lien Claims in Class 4 and the Second Lien Claims in Class 5 are treated as unsecured under the Plan; the ABL Claims in Class 6 are treated as secured; the collateral securing the ABL Claims will be transferred to the ABL Collateral Trust; and the amount of any deficiency claims will depend on the proceeds the ABL Collateral Trust generates. *See* LAM Motion, Ex. G (Debtors' Responses and Objections to LAM Interrogatories) at 112 (Interrogatory No. 11); *see also id*. at 113–14, 116 (Interrogatory Nos. 12, 13, and 15).

38. Overall, the Debtors' responses are sufficient, comply with their discovery obligations, and will soon be supplemented in any event to account for the Debtors' recently filed declarations and document productions. The Court should therefore deny the LAM Parties' and Katsumi's requests to compel interrogatory responses.

**F. No Award of Expenses to Katsumi Under Rule 37(a)(5) Is Appropriate**

39. Katsumi asks for its reasonable expenses, including attorneys' fees, incurred in connection with its Motion. Katsumi Mot. ¶ 11; Fed. R. Civ. P. 37(a)(5), made applicable by Fed. R. Bankr. P. 7037 and 9014(c). The request fails at the threshold because Rule 37(a)(5)(A) permits an award only if the motion is granted, and the Katsumi Motion should be denied for the reasons stated above. Even where a motion succeeds, the court must not order

18

payment if the opposing party's position was "substantially justified" or if "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii). Both exceptions apply here.

40. The Debtors' positions are substantially justified. A position meets that standard where there is a "genuine dispute," where "reasonable people could differ as to [the appropriateness of the contested action]," or, put differently, where it is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (construing the phrase in light of the identical standard governing "attorney's fees for resisting discovery"). The Advisory Committee said the same when it adopted the provision: where "the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court," "the losing party is substantially justified in carrying the matter to court." Fed. R. Civ. P. 37 advisory committee's note to 1970 amendment. The Debtors' objections rest on the Court's mediation orders (Dkt. Nos. 1822, 2005, 2186) and on the common interest doctrine as the courts of this circuit have applied it, *see supra* §§ A, B; they were stated in the Debtors' responses and objections, explained at the parties' conferences, and confirmed in writing on July 16, 2026. A privilege position grounded in the Court's own orders and in settled authority is a genuine dispute, whatever its ultimate resolution.

41. An award would in any event be unjust. Katsumi certified an impasse on July 13, 2026 and filed its Motion two days later, on an emergency basis, requesting relief by July 16, 2026. Katsumi Mot. at 1, 21. By that time, however, the Debtors' rolling productions were already continuing, the Debtors had already confirmed they would be producing of the Post-mediation Period communications, and were already actively preparing a categorical privilege log. The expenses Katsumi seeks would be borne by the Debtors' estates, and so by their creditors, on

19

the eve of confirmation, against a record of production volumes exceeding 200,000 pages, re-productions of the Debtors' prior productions, and a categorical privilege log (among other things). The rule exists "to deter a party from pressing to a court hearing frivolous requests for or objections to discovery," Fed. R. Civ. P. 37 advisory committee's note to 1970 amendment, not to tax an estate for defending considered objections.

## CONCLUSION

42. For the foregoing reasons, the Debtors respectfully request that the Court deny the Motions and the Joinders and grant such other and further relief as is just and proper.

Dated:  July 17, 2026
        Houston, Texas

 /s/ Clifford W. Carlson
WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   gabriel.morgan@weil.com
         clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Robert S. Berezin (admitted *pro hac vice*)
Theodore E. Tsekerides (admitted *pro hac vice*)
Christine A. Calabrese (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  matt.barr@weil.com
        sunny.singh@weil.com
        robert.berezin@weil.com
        theodore.tsekerides@weil.com
        christine.calabrese@weil.com


*Attorneys for Debtors*
*and Debtors in Possession*

**Certificate of Service**

I hereby certify that on July 17, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                     */s/ Christine A. Calabrese*
                     Christine A. Calabrese