IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

**NOTICE OF FILING OF
(I) PLAN SUPPLEMENT AND (II) LIQUIDATION ANALYSIS**

**PLEASE TAKE NOTICE THAT:**

1.      In September 2025, First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), each commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

2.      On June 16, 2026, the FBG Debtors filed the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3019) (including any exhibits and schedules thereto and as may be amended, supplemented or otherwise modified from time to time, the "**Plan**").[2]

3.      On June 12, 2026, the Bankruptcy Court entered the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and Form and (B) Confirmation of Plan, (II) Conditionally Approving Disclosure Statement and Manner of Notice of Conditional*

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

FBG_CH1_00092400

**DEBTORS' EXHIBIT NO. 178
Page 1 of 360**

*Disclosure Hearing, (III) Establishing Solicitation and Voting Procedures, (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt-In Procedures, (V) Establishing Preference Settlement Notice and Opt-In Procedures, (VI) Establishing Notice and Objection Procedures for Confirmation of Plan, and (VII) Granting Related Relief* (Docket No. 2990) (the "**Disclosure Statement Order**"), authorizing the FBG Debtors to solicit acceptances on the Plan, and approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

4.      In accordance with the Plan and Disclosure Statement Order, the FBG Debtors hereby file (i) certain draft documents and forms of documents, schedules, and exhibits relevant to implementation of the Plan (as may be amended, supplemented or otherwise modified from time to time, the "**Plan Supplement**"), and (ii) the Liquidation Analysis (as defined in the Disclosure Statement):

| Exhibit 1 | Schedule of Retained Causes of Action |
|---|---|
| Exhibit 2 | 1129(a)(5) Disclosures (Wind Down Administrator) |
| Exhibit 3 | 1129(a)(5) Disclosures (Claims Ombudsman) |
| Exhibit 4 | Litigation Trust Agreement (including List of Litigation Trust Assets) |
| Exhibit 5 | Litigation Trust Backstop Agreement |
| Exhibit 6 | DIP Collateral Trust Agreement (including List of DIP Collateral Trust Assets) |
| Exhibit 7 | ABL Collateral Trust Agreement (including List of ABL Collateral Trust Assets) |
| Exhibit 8 | Schedule of Specified Non-Released Parties |
| Exhibit 9 | Liquidation Analysis |

5.      The documents contained in the Plan Supplement are integral to, and are considered part of, the Plan.  These documents have not yet been approved by the Bankruptcy

FBG_CH1_00092401

DEBTORS' EXHIBIT NO. 178
Page 2 of 360

Court.  If the Plan is confirmed, the documents contained in this Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

6.     The Plan Supplement documents attached hereto remain subject to further review, negotiation, and modification.  The FBG Debtors reserve all rights to amend, supplement or otherwise modify the Plan Supplement, and any of the documents contained therein, in accordance with the terms of the Plan.  If material amendments or other modifications are made to any of these documents, the FBG Debtors will file a redline with the Bankruptcy Court marked to reflect the same.

7.     A hearing to consider confirmation of the Plan and final approval of the Disclosure Statement is currently scheduled to begin on **Tuesday, July 28, 2026, at 9:00 a.m. (prevailing Central Time)** before the Court (the "**Combined Hearing**").  The Combined Hearing may be continued as necessary, and may be adjourned or further continued in accordance with the Disclosure Statement Order.

8.     Copies of the exhibits contained in this Plan Supplement, the Liquidation Analysis, and all documents filed in these chapter 11 cases, including the Plan and Disclosure Statement, are available free of charge by visiting https://restructuring.ra.kroll.com/firstbrands. You may also obtain copies of the pleadings by visiting the Bankruptcy Court's website at https://ecf.txsb.uscourts.gov.

FBG_CH1_00092402

**DEBTORS' EXHIBIT NO. 178**
**Page 3 of 360**

Dated: June 23, 2026
  Houston, Texas

          */s/ Clifford W. Carlson*
          WEIL, GOTSHAL & MANGES LLP
          Gabriel A. Morgan (24125891)
          Clifford W. Carlson (24090024)
          700 Louisiana Street, Suite 3700
          Houston, Texas 77002
          Telephone:  (713) 546-5000
          Facsimile:  (713) 224-9511
          Email:   gabriel.morgan@weil.com
             clifford.carlson@weil.com

          -and-

          WEIL, GOTSHAL & MANGES LLP
          Matthew S. Barr (admitted *pro hac vice*)
          Sunny Singh (admitted *pro hac vice*)
          Andriana Georgallas (admitted *pro hac vice*)
          Kevin Bostel (admitted *pro hac vice*)
          Jason H. George (admitted *pro hac vice*)
          767 Fifth Avenue
          New York, New York 10153
          Telephone:  (212) 310-8000
          Facsimile:  (212) 310-8007
          Email:   matt.barr@weil.com
             sunny.singh@weil.com
             andriana.georgallas@weil.com
             kevin.bostel@weil.com
             jason.george@weil.com

          *Attorneys for Debtors*
          *and Debtors in Possession*

FBG_CH1_00092403

**DEBTORS' EXHIBIT NO. 178**
**Page 4 of 360**

### Certificate of Service

I hereby certify that on June 23, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Clifford W. Carlson*
Clifford W. Carlson

FBG_CH1_00092404

## Exhibit 1

**Schedule of Retained Causes of Action**

FBG_CH1_00092405

## Schedule of Retained Causes of Action

In accordance with and as provided by section 1123(b) of the Bankruptcy Code, Section 13.10 of the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3019) (including any exhibits and schedules thereto, and as may be modified, amended, or supplemented, the "**Plan**"),[1] except as otherwise provided in the Plan, including Sections 13.5(a), 13.5(b), 13.6, and 13.7, any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the FBG Debtors had immediately prior to the Confirmation Date on behalf of the Estates of the FBG Debtors or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, but not limited to, any actions specifically enumerated herein, and such rights to commence, pursue, prosecute, and/or settle such Claims or Causes of Action (including, without limitation, any avoidance action, preference, or other Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, including, without limitation, sections 502(d), 544, 545, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code) (collectively, the "**Retained Causes of Action**") shall be preserved notwithstanding the occurrence of the Confirmation Date and/or the Effective Date.

As provided by Section 3.3 and Section 13.10 of the Plan and the Confirmation Order, except as otherwise provided in the Plan, including Sections 13.5(a), 13.5(b), 13.6, and 13.7, the FBG Debtors, the ABL Collateral Trust, the DIP Collateral Trust, and the Litigation Trust, as applicable, shall have, retain, reserve, and be entitled to assert all such Retained Causes of Action as fully as if the Chapter 11 Cases had not been commenced, and all of the FBG Debtors' legal and equitable rights and defenses in respect of any Unimpaired Claim may be asserted after the Confirmation Date and/or the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.  For the avoidance of doubt, in pursuing any Retained Causes of Action, the Litigation Trustee shall be deemed a trustee for all purposes under section 108 of the Bankruptcy Code, shall be entitled to all extension of time and/or tolling provisions provided under section 108 of the Bankruptcy Code, and shall succeed to the FBG Debtors' rights with respect to the periods in which any of the Retained Causes of Action may be brought under section 546 of the Bankruptcy Code.

Unless any Causes of Action against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or pursuant to a Bankruptcy Court order in these Chapter 11 Cases, the FBG Debtors, the ABL Collateral Trust, the DIP Collateral Trust, and the Litigation Trust, as applicable, expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or consummation of the Plan.

**No Person or Entity may rely on the absence of a specific reference in the Confirmation Order, the Plan, the Plan Supplement, or the Disclosure Statement, to any Cause of Action against it as any indication that the FBG Debtors, the ABL Collateral Trust, the DIP Collateral Trust, or the Litigation Trust, as applicable, will not pursue any and all available Causes of Action against it.  Notwithstanding the foregoing, nothing herein shall**

---

[1]  Unless otherwise defined, capitalized terms used herein have the meanings ascribed to them in the Plan.

DEBTORS' EXHIBIT NO. 178
Page 7 of 360

**modify the effect of any release or exculpation under the Plan to the extent applicable.  The FBG Debtors, the ABL Collateral Trust, the DIP Collateral Trust, and the Litigation Trust, as applicable, expressly reserve all rights to prosecute any and all Retained Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article III and Article IV of the Plan**.

In accordance with section 1123(b)(3) of the Bankruptcy Code and <u>Section 11.1</u> of the Plan, except as otherwise provided in the Plan, herein, or in the Confirmation Order, any Retained Causes of Action that an FBG Debtor may hold against any Person or Entity shall vest in the FBG Debtors, the ABL Collateral Trust, the DIP Collateral Trust, and/or the Litigation Trust, as applicable.  The FBG Debtors, the ABL Collateral Trust, the DIP Collateral Trust, and/or the Litigation Trust, as applicable, shall retain and may enforce any and all Retained Causes of Action. The FBG Debtors, the ABL Collateral Trust, the DIP Collateral Trust, and/or the Litigation Trust, as applicable, shall have the right, authority, and discretion to determine, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Retained Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of, the Bankruptcy Court.

For the avoidance of doubt, any and all Causes of Action released pursuant to <u>Section 13.5</u> (Releases) of the Plan are not Retained Causes of Action. Notwithstanding and without limiting the generality of <u>Section 13.10</u> of the Plan, unless otherwise released by the Plan, any and all Retained Causes of Action including, but not limited to, the following, are reserved by the FBG Debtors, the ABL Collateral Trust, the DIP Collateral Trust, and/or the Litigation Trust, as applicable:

- all Claims and Causes of Action asserted or assertable by any of the FBG Debtors related to the James Complaint and the Onset Complaint;

- all Claims, Causes of Action, counterclaims, and/or defenses asserted or assertable by any of the FBG Debtors in Adversary Proceeding Nos. 25-03800, 25-03803, 26-03005, 26-03038, 26-03006, 26-03052, 26-03091, and 26-03143;

- all Claims, Causes of Action, counterclaims, and/or defenses asserted or assertable by any of the FBG Debtors related to the *Motion of the Official Committee of Unsecured Creditors for (I) Leave, Standing, and Authority to Commence and Prosecute Certain Claims and Causes of Action on Behalf of the Debtors' Estates and (II) Exclusive Settlement Authority* (Docket No. 2881), including but not limited to the FBG Debtors' Claims against Aequum Capital Financial II LLC;

- all Claims and Causes of Action previously scheduled as assets of the FBG Debtors;

- all Claims and Causes of Action asserted or assertable by any of the FBG Debtors against any SPV Lender or their affiliates;

- all Claims and Causes of Action asserted or assertable by any of the FBG Debtors or the Estate(s) of the FBG Debtors against any Persons arising from or relating to any transaction involving any FBG Debtor and the payment of unlawful dividends, the avoidance of

FBG_CH1_00092407

prepetition distributions or other distributions, fraud or misrepresentation, or one or more breaches of fiduciary or other duties;

- all Claims and Causes of Action asserted or assertable by any of the FBG Debtors or the Estate(s) of the FBG Debtors against any Specified Non-Released Parties; [2]

- all Claims and Causes of Action asserted or assertable by any of the FBG Debtors or the Estate(s) of the FBG Debtors against a Specified Non-Released Party, whether personally, individually, and/or in his capacity as an officer, manager, director, and/or shareholder of any one or more of the FBG Debtors for their work as an officer, manager, director, and/or shareholder of any FBG Debtors, including, without limitation, fraud, willful misconduct, or gross negligence;

- all Claims and Causes of Action related to insurance contracts and insurance policies to which any FBG Debtor is a party or pursuant to which any FBG Debtor has any rights whatsoever, including but not limited to, Causes of Actions against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, overpayment of premiums, or fees;

- all Claims and Causes of Action related to tax obligations or refunds, including, without limitation, Claims or Causes of Action against or related to all Persons or Entities that owe or that may in the future owe money related to tax refunds to the FBG Debtors;

- all Claims and Causes of Action related to tariff refunds or amounts collected under the International Emergency Economic Powers Act;

- all Claims, Causes of Action, defenses, cross-claims, indemnification, third-party claims, and counterclaims related to litigation and possible litigation, whether based in tort, contract, equity, or otherwise, including any personal injury claims and wrongful death

---

[2] "**Specified Non-Released Parties**" means (i) any Person (or Affiliate of any Person) against which any action has been commenced on behalf of a Debtor or its Estate in this Bankruptcy Court or any court of competent jurisdiction prior to the Confirmation Hearing, including, for the avoidance of doubt, any defendants named or to be named by the Debtors in the James Complaint or named by the Debtors in the Onset Complaint; (ii) any Person (or Affiliate of any Person) identified as a defendant or a potential defendant of a Cause of Action in the Plan Supplement; (iii) any Person (or Affiliate of any Person) that is charged with a crime (whether before or after the Confirmation Date) based on conduct related to the Debtors; (iv) any Person (or Affiliate of any Person) that meets the definition of Adverse Conduct, as determined by a Final Order of the Bankruptcy Court; and (v) any subsequent transferee of any of the foregoing with respect to any assets of or transfers by the Debtors or their Affiliates or Representatives. Specified Non-Released Parties include, without limitation,(i) the Persons and Entities listed on Exhibit 8 of the Plan Supplement, incorporated herein by reference, and (ii) any other Person or Entity identified by the FBG Debtors on any subsequent Schedule of Specified Non-Released Parties. For the avoidance of doubt, the Schedule of Specified Non-Released Parties does not provide an exhaustive list of Parties that meet the definition of Adverse Conduct under the Plan, some of which will only meet the definition following entry of a Final Order. Pursuant to the Plan, including, but not limited to, Section 6.11 thereof, even if a Party is not included on the non-exhaustive Schedule of Specified Non-Released Parties, the Litigation Trust may still have Estate Claims against such Party that can be pursued by the Litigation Trust and are not released under the Plan.

FBG_CH1_00092408

actions, as well as all claims against or related to all Persons or Entities that are party to or that may in the future become party to arbitration, or any other type of adversarial dispute resolution proceeding, whether formal or informal, or judicial or nonjudicial;

- all Claims and Causes of Action related to contracts or leases or similar instruments to which any of the FBG Debtors, as applicable, is a party or pursuant to which any of the FBG Debtors has any rights whatsoever, including, without limitation, all contracts and leases that are assumed pursuant to the Plan or were previously assumed by the FBG Debtors. The Claims and Causes of Action reserved include, but are not limited to, Causes of Action against vendors, lessors, suppliers of goods or services, suppliers of utilities, contractors, customers, purchasers, or any other parties;

- all Claims and Causes of Action related to accounts receivable and accounts payable, including, but not limited to, all Claims and Causes of Action against or related to all Persons or Entities that owe or that may in the future owe money to the FBG Debtors. Furthermore, the FBG Debtors expressly reserve all Causes of Action against or related to all Persons or Entities who assert or may assert that the FBG Debtors owe money to them;

- all Claims and Causes of Action related to postings of a security deposit, adequate assurance payment, or any other type of deposit, prepayment, or collateral;

- all Claims and Causes of Action related to liens, including Causes of Action under Section 547 and 550 of the Bankruptcy Code, regardless of whether such lien is released, returned to the FBG Debtors or the Estate(s) of the FBG Debtors, or otherwise avoided, invalidated or terminated through any means, and regardless of whether such lien is specifically identified herein or in the Plan;

- all Claims, Causes of Action, defenses, appeals, cross-claims, and counterclaims related to any Claims or Causes of Action asserted by any Governmental Unit;

- all Claims, Causes of Action, defenses, appeals, cross-claims, and counterclaims related to any government enforcement action, including as a result of any forfeiture proceeding, order of restitution, or governmental settlement agreement;

- all Claims and Causes of Action related to vendor obligations;

- all Claims and Causes of Action related to current or former employee matters;

- all Claims and Causes of Action based in and/or related to the FBG Debtors' intellectual property and related rights;

- all Claims and Causes of Action related to environmental matters;

- all Claims and Causes of Action related to conversion;

- all Claims and Causes of Action related to Avoidance Actions, preferences, surcharge, or other claims pursuant to chapter 5 of the Bankruptcy Code, including, but not limited to, all Claims and Causes of Action for fraudulent transfer asserted or assertable by any of the

4

FBG_CH1_00092409

FBG Debtors or the Estate(s) of the FBG Debtors, pursuant to Bankruptcy Code Sections 544, 548(a)(1)(A), 548(a)(1)(B), and 550 and applicable state fraudulent transfer law;

- all Claims and Causes of Action asserted or assertable by any of the FBG Debtors or the Estate(s) of the FBG Debtors for aiding and abetting, civil conspiracy, knowing participation in, or receipt of the proceeds of, or other wrongful conduct, including, without limitation, Claims and Causes of Action arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, whether asserted under federal or state law, and whether based on conduct occurring before, on, or after the Petition Date;

- all Claims and Causes of Action asserted or assertable by any of the FBG Debtors or the Estate(s) of the FBG Debtors sounding in tort, including, but not limited to, commercial negligence, professional malpractice, or breach of any duties of care or loyalty;

- all Claims and Causes of Action (including, without limitation, against a Released Party) that are expressly not released pursuant to Section 13.5(a) or 13.5(b) of the Plan; and

- all other Claims and Causes of Action belonging to the FBG Debtors.

Notwithstanding anything to the contrary herein, upon establishment of the Litigation Trust and following consummation of the Estate Claims Credit Bid Transaction, the Litigation Trust Assets, including any Causes of Action that constitute Litigation Trust Assets, shall be transferred, to the Litigation Trust in accordance with the Plan and the Litigation Trust Agreement.

**The FBG Debtors reserve all rights to amend, revise, or supplement this <u>Exhibit 1</u> to the Plan Supplement, and any of the documents and designations contained herein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court.**

5

FBG_CH1_00092410

## Schedule 1

### Specified Non-Released Parties

- See Exhibit 8 to the Plan Supplement.

FBG_CH1_00092411

**Exhibit 2**

**1129(a)(5) Disclosures (Wind Down Administrator)**

FBG_CH1_00092412

### Identity and Affiliations of the Wind Down Administrator[1]

Under the Plan, the Wind Down Administrator means the administrator appointed by the FBG Debtors, the Ad Hoc Group SteerCo, and the Creditors' Committee whose duties will include, among other things, effectuating the Wind Down in accordance with the Plan, as contemplated by Section 5.7 of the Plan.

NOTICE IS HEREBY GIVEN that, in accordance with section 1129(a)(5) of the Bankruptcy Code, the identity and affiliations of the Wind Down Administrator are as follows:

Name & Contact Information:

Alex Calderone
Calderone Advisory Group, LLC
550 W. Merrill St., Suite 100
Birmingham, MI 48009
alex@calderoneag.com

---

[1]    Capitalized terms used but not otherwise defined in this Exhibit shall have the meaning assigned to such term in the Plan.

FBG_CH1_00092413

**Exhibit 3**

**1129(a)(5) Disclosures (Claims Ombudsman)**

FBG_CH1_00092414

## Identity and Affiliations of the Claims Ombudsman[1]

Under the Plan, the Claims Ombudsman means a Person selected by the Creditors' Committee, with the consent of the FBG Debtors and Ad Hoc Group SteerCo, that shall have the qualifications, duties, and responsibilities described in Section 5.2(g) of the Plan, subject to the terms of the Litigation Trust Agreement.

NOTICE IS HEREBY GIVEN that, in accordance with section 1129(a)(5) of the Bankruptcy Code, the identity and affiliations of the Claims Ombudsman are as follows:

Name & Contact Information:

Patrick A. Jackson, Esq.
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
patrick.jackson@faegredrinker.com

---

[1] Capitalized terms used but not otherwise defined in this Exhibit shall have the meaning assigned to such term in the Plan.

FBG_CH1_00092415

**Exhibit 4**

**Litigation Trust Agreement**

FBG_CH1_00092416

## LITIGATION TRUST AGREEMENT

This LITIGATION TRUST AGREEMENT is made this ___ day of ____, 2026 (this "Agreement"), by and among:

(a) Gerard Uzzi, as trustee of the Litigation Trust referred to herein (in such capacity, the "Litigation Trustee"),

(b) Wilmington Savings Fund Society, FSB, as Delaware statutory trustee of the Litigation Trust referred to herein (in such capacity, the "Delaware Trustee"),

(c) Wilmington Savings Fund Society, FSB, as Registrar (defined below) of the Litigation Trust referred to herein,

(d) Wilmington Savings Fund Society, FSB, as Disbursing Agent of the Litigation Trust referred to herein,

(e) the recipients of Class 1 Litigation Trust Interests,

(f) the recipients of Class 2 Litigation Trust Interests,

(g) the recipients of Class 3(a) Litigation Trust Interests,

(h) the recipients of Class 3(c) Litigation Trust Interests, and

(i) [____], as Claims Ombudsman of the Litigation Trust referred to herein and on behalf of the recipients of Class 3(b) Litigation Trust Interests,

and creates and establishes the trust known as the FBG Victims Litigation Trust (the "Litigation Trust") referenced herein in order to facilitate the implementation of the [*Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*] dated [_____], 2026 [Docket No. ___] (as the same may be amended, supplemented, or otherwise modified from time to time in accordance with the terms and provisions thereof) (the "Plan"). Each of the FBG Debtors, the Litigation Trustee, the Delaware Trustee, the holders of Class 1 Litigation Trust Interests, the holders of Class 2 Litigation Trust Interests, the holders of Class 3(a) Litigation Trust Interests, the holders of Class 3(c) Litigation Trust Interests, and the Claims Ombudsman, on behalf of the recipients of Class 3(b) Litigation Trust Interests, may be referred to herein individually as a "Party" and, collectively, as the "Parties."

### RECITALS

WHEREAS, in September 2025, First Brands Group, LLC and its affiliated Debtors each filed a voluntary petition for relief (collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court");

WHEREAS, on [_____], 2026, the Bankruptcy Court entered its order confirming the Plan [Docket No. ___] (the "Confirmation Order");

FBG_CH1_00092417

WHEREAS, the Confirmation Date occurred today, [_____], 2026;

WHEREAS, the Plan provides, among other things, that, on the Confirmation Date or as soon as reasonably practicable thereafter and following the consummation of the Estate Claims Credit Bid Transaction, the Litigation Trust shall be established in accordance with this Agreement for the purpose of being vested with and liquidating the Litigation Trust Assets and making distributions to the Litigation Trust Beneficiaries and payments to holders of Allowed Settled Administrative Expense Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims, in each case, in accordance with the terms of this Agreement and the Plan;

WHEREAS, the Plan further provides, that, on the Confirmation Date and following the consummation of the Estate Claims Credit Bid Transaction, the FBG Debtors shall be deemed to have, without any further action, automatically and irrevocably transferred, assigned, and delivered, and (except as provided for U.S. federal, state, and local income tax purposes) automatically vested in the DIP Secured Parties their remaining rights, title, and interests in the Litigation Trust Assets, and the DIP Secured Parties and, with respect to Direct Creditor Claims, each Preference Settlement Electing Creditor shall be deemed to have, without any further action, automatically and irrevocably transferred, assigned, and delivered, and (except as provided for U.S. federal, state, and local income tax purposes) automatically vested in the Litigation Trust their remaining rights, title, and interests in the Litigation Trust Assets, and all such assets shall be deemed to have vested in the Litigation Trust (without recourse and free and clear of all Liens, Claims, encumbrances and Interests (legal, beneficial or otherwise)) on the Confirmation Date, to be administered by the Litigation Trustee, in accordance with this Agreement;

WHEREAS, for U.S. federal income tax purposes, the Litigation Trust is intended to be classified as (a) a "liquidating trust" pursuant to the Internal Revenue Code of 1986, as amended (the "IRC") and the regulations promulgated thereunder (the "Treasury Regulations"), including pursuant to Treasury Regulations Section 301.7701-4(d), and, therefore, (b) a "grantor trust" within the meaning of Sections 671-677 of the IRC and the Treasury Regulations promulgated thereunder, with the Litigation Trust Beneficiaries treated for U.S. federal income tax purposes as the grantors and owners of their respective shares of the Litigation Trust Assets, other than with respect to any assets allocable to, or retained on account of, Disputed Claims (i.e., the Disputed Claim Reserve);

WHEREAS, the Litigation Trust shall not be deemed a successor in interest of the FBG Debtors for any purpose other than as specifically set forth in the Plan, the Confirmation Order, or this Agreement, and upon the transfer by the FBG Debtors of the Litigation Trust Assets to the DIP Secured Parties, no Debtor will have a reversionary or further interest in or with respect to the Litigation Trust Assets or the Litigation Trust; and

WHEREAS, subject to the limited powers reserved to the Delaware Trustee hereunder and the consent rights of the Litigation Trust Oversight Committee (defined below) hereunder, and subject to the provisions of this Agreement, the Plan, and the Confirmation Order, the Litigation Trustee shall have all powers necessary to manage the Litigation Trust and cause the Litigation Trust to implement the provisions of this Agreement, the Plan, and the Confirmation Order.

2

FBG_CH1_00092418

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the Parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

For all purposes of this Agreement, capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or Confirmation Order, as applicable.[1]

## ARTICLE II
## ESTABLISHMENT OF THE LITIGATION TRUST

2.1     Establishment of the Litigation Trust; Appointment of the Litigation Trustee, Delaware Trustee, and Litigation Trust Oversight Committee.

(a)     There is hereby created, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, the Litigation Trust for the benefit of the Litigation Trust Beneficiaries, which shall be known as the "FBG Victims Litigation Trust," on the terms set forth herein.  It is the intention of the Parties hereto that the Litigation Trust created hereby constitute a statutory trust under Chapter 38 of Title 12 of the Delaware Code, 12 Del. C. § 3801 et seq. (the "Delaware Act") and that this Agreement constitutes the governing instrument of the Litigation Trust.  The Litigation Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as **Exhibit A**.

(b)     Gerard Uzzi is hereby appointed as the initial Litigation Trustee effective as of the Confirmation Date.

(c)     An oversight committee (the "Litigation Trust Oversight Committee") is hereby appointed to exercise solely the powers and authority with regard to the Litigation Trust set forth herein.  In accordance with Section 6.1 of this Agreement, the initial members of the Litigation Trust Oversight Committee (each such Person and any other Person appointed to be a member of the Litigation Trust Oversight Committee pursuant to this Agreement, a "Member"), to the extent known, are identified on **Exhibit B** hereto.  At all times, a majority of the Members of the Litigation Trust Oversight Committee shall be "United States persons" as such term is defined in Section 7701(a)(30) of the IRC.

(d)     The Litigation Trustee agrees to manage the Litigation Trust, subject to the provisions of the Plan, the Confirmation Order, and this Agreement, including, without limitation, the consent rights of the Litigation Trust Oversight Committee set forth in Article VI of this Agreement.

---

[1]     A non-exhaustive list of Supply Chain Financers and Factors is attached hereto as **Exhibit G** as required by the Plan.

FBG_CH1_00092419

(e)     Each Litigation Trustee serving from time to time hereunder shall have all the rights, powers, and duties as set forth herein.

(f)     Each Litigation Trustee shall be a "United States person" as such term is defined in Section 7701(a)(30) of the IRC.

(g)     <u>Delaware Trustee</u>.

(i)     Wilmington Savings Fund Society, FSB is hereby appointed as the initial Delaware Trustee effective as of the Confirmation Date.

(ii)     There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Delaware Act.  The Delaware Trustee shall either be (A) a natural person who is at least twenty-one (21) years of age and a resident of the State of Delaware or (B) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law to be eligible to serve as the Delaware Trustee, and shall act through one or more persons authorized to bind such entity.  If at any time the then-serving Delaware Trustee shall cease to be eligible to serve as Delaware Trustee in accordance with the provisions of this <u>Section 2.1(g)</u>, the Delaware Trustee shall resign immediately in the manner and with the effect hereinafter specified in <u>Section 2.1(g)(iv)</u> below.  For the avoidance of doubt, the Delaware Trustee will only have such rights, duties, and obligations as expressly provided with reference to the Delaware Trustee hereunder.  The Litigation Trustee and each Member of the Litigation Trust Oversight Committee shall have no liability for the acts or omissions of the Delaware Trustee.  The Delaware Trustee shall be a "United States person" as such term is defined in Section 7701(a)(30) of the IRC.

(iii)     The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Litigation Trustee or the Litigation Trust Oversight Committee set forth herein.  The Delaware Trustee shall be a trustee of the Litigation Trust for the sole and limited purpose of fulfilling the requirements of section 3807(a) of the Delaware Act and for taking such actions as are required to be taken by a Delaware Trustee under the Delaware Act.  The duties, liabilities, and obligations of the Delaware Trustee shall be limited to accepting legal process served on the Litigation Trust in the State of Delaware and the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Delaware Act.  There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.  To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating to the Litigation Trust, the Litigation Trustee, the Litigation Trust Oversight Committee, or the Litigation Trust Beneficiaries, such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Agreement.  The Delaware Trustee shall have no liability for the acts or omissions of any Litigation Trustee, Member of the Litigation Trust Oversight Committee, or any

4

FBG_CH1_00092420

other Person. Any permissive rights of the Delaware Trustee to do things enumerated in this Agreement shall not be construed as a duty, and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable for other than its willful misconduct, gross negligence, or fraud as found by a Final Order. The Delaware Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Agreement at the request or direction of the Litigation Trustee, the Litigation Trust Oversight Committee, or any other Person pursuant to the provisions of this Agreement unless the Litigation Trustee, the Litigation Trust Oversight Committee, or such other Person shall have offered to the Delaware Trustee security or indemnity (satisfactory to the Delaware Trustee in its reasonable discretion) against the costs, expenses, and liabilities that may be incurred by it in compliance with such request or direction. The Delaware Trustee shall be entitled to request and receive written instructions from the Litigation Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Litigation Trustee, except those acts found by a Final Order to be arising out of the Delaware Trustee's willful misconduct, gross negligence, or fraud. The Delaware Trustee may, at the expense of the Litigation Trust, request, rely on, and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel.

(iv)    The Delaware Trustee shall serve until such time as the Litigation Trustee, with the consent of the Litigation Trust Oversight Committee, removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Litigation Trustee, with the consent of the Litigation Trust Oversight Committee, in accordance with the terms of Section 2.1(g)(v) below. The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Litigation Trustee and the Litigation Trust Oversight Committee; *provided* that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed in accordance with Section 2.1(g)(v) below. If the Litigation Trustee does not act within such sixty (60)-day period, the Delaware Trustee, at the expense of the Litigation Trust, may apply to the Court of Chancery of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(v)    Upon the resignation or removal of the Delaware Trustee, the Litigation Trustee, with the consent of the Litigation Trust Oversight Committee, shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of section 3807 of the Delaware Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee, the Litigation Trustee, and the Litigation Trust Oversight Committee. Following compliance with

5

FBG_CH1_00092421

the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties, and obligations of the outgoing Delaware Trustee under this Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of all duties and obligations under this Agreement. The successor Delaware Trustee shall make any related filings required under the Delaware Act, including filing a Certificate of Amendment to the Certificate of Trust of the Litigation Trust in accordance with, and as defined with respect to, section 3810 of the Delaware Act.

(vi)    Notwithstanding anything herein to the contrary, the Delaware Trustee shall be entitled to retain counsel or advisors reasonably necessary in connection with the Delaware Trustee's rights and obligations under this Agreement, which counsel and advisors' fees and expenses shall be payable by the Litigation Trust.

(vii)    Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion, or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the Parties hereto.

(viii)    The Delaware Trustee shall be entitled to compensation for its services as agreed pursuant to a separate fee agreement between the Litigation Trust and the Delaware Trustee, which compensation shall be paid by the Litigation Trust in accordance with the terms hereof. Such compensation is intended for the Delaware Trustee's services as contemplated by this Agreement. The terms of this paragraph shall survive termination of this Agreement and/or the earlier resignation or removal of the Delaware Trustee.

(ix)    The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document other than this Agreement, whether or not an original or a copy of such agreement has been provided to the Delaware Trustee. The Delaware Trustee shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument, or document other than this Agreement. Delivery of reports, information, and documents to the Delaware Trustee is for informational purposes only and the Delaware Trustee's receipt of the foregoing shall not constitute constructive notice of any information contained therein or determinable from information contained therein. The Delaware Trustee may rely on the accuracy of any document delivered to it and shall have no responsibility to verify the accuracy of it or be required to calculate or verify any numerical information in it. Neither the Delaware Trustee nor any of its directors, officers, employees, agents, or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the Litigation Trust, the

6

FBG_CH1_00092422

Litigation Trustee, any Member of the Litigation Trust Oversight Committee, or any other Person, or any of their directors, members, officers, agents, affiliates, or employees, nor shall it have any liability in connection with the malfeasance or nonfeasance of any of the foregoing.  The Delaware Trustee may assume performance by all such Persons of their respective obligations.  The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other Person.  The Delaware Trustee shall have no responsibilities (except as expressly set forth herein) as to the validity, sufficiency, value, genuineness, ownership, or transferability of any Litigation Trust Assets, written instructions, or any other documents in connection therewith, and will not be regarded as making, nor be required to make, any representations thereto.

(x)      The Delaware Trustee is hereby authorized to take such action as the Litigation Trustee specifically directs in written instructions delivered to the Delaware Trustee and shall have no liability for acting in accordance therewith, except those acts found by a Final Order to be arising out of the Delaware Trustee's willful misconduct, gross negligence, or fraud.

(xi)      Notwithstanding anything herein to the contrary, the Delaware Trustee shall not be required to take any action that is in violation of applicable law.

(h)      The Litigation Trustee, the Delaware Trustee, and the Members may serve without bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

(i)      Subject to the terms of this Agreement, any action by the Litigation Trust, Litigation Trustee, the Delaware Trustee, and/or the Litigation Trust Oversight Committee that affects the interests of more than one Litigation Trust Beneficiary shall be binding and conclusive on all Litigation Trust Beneficiaries even if such Litigation Trust Beneficiaries have different or conflicting interests.

(j)      For the avoidance of doubt, none of the FBG Debtors is or shall be deemed a fiduciary or agent of the Litigation Trust, and such parties owe no duties or obligations to the Litigation Trust, the Litigation Trustee, the Claims Ombudsman, the Delaware Trustee, the Registrar, the Disbursing Agent, or the Litigation Trust Beneficiaries, except as are expressly set forth in the Plan, the Confirmation Order, this Agreement, or other future written agreements between such Persons and the Litigation Trust.

(k)      To the fullest extent permitted under applicable law, including without limitation the Delaware Act, none of the Members, each, respectively, in their capacities as such, is or shall be deemed a fiduciary or agent of the Litigation Trust or of the Litigation Trust Beneficiaries, and such parties owe no duties or obligations to each other, to the Litigation Trust, to the Litigation Trustee, to the Claims Ombudsman, to the Delaware Trustee, or to the Litigation Trust Beneficiaries, and each AHG Member may act in the interest of Class 1 Litigation Trust Interests and/or Class 2 Litigation Trust Interests and each UCC Member may act in the interest

7

DEBTORS' EXHIBIT NO. 178
Page 24 of 360

of Class 3 Litigation Trust Interests; *provided* that, for the avoidance of doubt, all Members shall negotiate in good faith and to act in accordance with and be bound by the terms of this Agreement.

2.2     Transfer of the Litigation Trust Assets.

(a)     Pursuant to the Plan, following the occurance of the Confirmation Date and the consummation of the Estate Claims Credit Bid Transaction, the FBG Debtors, the DIP Secured Parties (as purchasers), and, with respect to Direct Creditor Claims, each Preference Settlement Electing Creditor, shall be deemed to have, without any further action, automatically and irrevocably transferred, sold, assigned, and delivered, and (except as provided for U.S. federal, state, and local income tax purposes in Sections 2.2(e), 2.6, and 9.1 hereof) automatically vested in the Litigation Trust its remaining interests in the Litigation Trust Assets, and all such assets shall be deemed to have vested in the Litigation Trust (without recourse and free and clear of all Liens, Claims, encumbrances and Interests (legal, beneficial or otherwise)) on the Confirmation Date, to be administered by the Litigation Trustee, in accordance with the Plan and this Agreement, for the benefit of the Litigation Trust Beneficiaries, including, without limitation, the Litigation Trust Cash Funding, the Transferred Privileges (defined below), and the Transferred Privileged Information (defined below).  The list of Litigation Trust Assets is attached hereto as **Exhibit F**. Upon the transfer of the Litigation Trust Assets from the FBG Debtors to the DIP Secured Parties and from the DIP Secured Parties to the Litigation Trust, the FBG Debtors, their Estates, and/or their successors shall have no recourse, claim, right, or interest, whether direct, residual, contingent, or otherwise, in or with respect to the Litigation Trust Assets.

(b)     From and after the Confirmation Date, the FBG Debtors (including through the Wind Down Administrator) shall provide the Litigation Trust with originals or copies of or access to all documents, business records, and other information of the FBG Debtors, including electronic records or documents, and including non-privileged or privileged communications, reasonably necessary, as reasonably determined by the Litigation Trustee, for the administration of the Litigation Trust Assets; *provided* that all reasonable and documented costs and expenses of the FBG Debtors in furtherance of the foregoing shall be borne by the Litigation Trust.

(c)     Cooperation Provisions.

(i)     On the Confirmation Date, or promptly after the Confirmation Date, the FBG Debtors shall cause the Wind Down Administrator, or any other authorized Person, to (i) execute and/or deliver or make available (including providing access to) any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed) in respect to Litigation Trust Assets to the Litigation Trust; and (ii) take, or cause to be taken, such further actions necessary to evidence or effectuate the transfer of the Litigation Trust Assets to the Litigation Trust; *provided* that all reasonable and documented costs and expenses of the Wind Down Administrator in furtherance of the foregoing shall be borne by the Litigation Trust.

(ii)     To the extent not physically provided to the Litigation Trust on the Confirmation Date, on and after the Confirmation Date, the FBG Debtors and their advisors, the independent directors and/or managers of the FBG Debtors and their

FBG_CH1_00092424

advisors, the Examiner and the advisors to the Examiner (subject to a mutual agreement on cooperation/transfer), and the Creditors' Committee and its advisors (collectively, the "Investigation Parties") shall provide the Litigation Trust with all books, records, and investigative and/or discovery findings under their ownership and/or control and of the FBG Debtors with respect to the Litigation Trust Assets; *provided* that (a) the FBG Debtors' Professionals, (b) any independent director or manager of the FBG Debtors, (c) the Examiner and the advisors thereto (subject to a mutual agreement on cooperation/transfer), and (d) the Creditors' Committee's Professionals shall compile (in a digest or other appropriate format) its material findings, information, work product, communications, records, and similar materials and provide the Litigation Trust with such compilation and/or enter into common interest or other agreements sufficient to facilitate the turnover of work product or communications to the Litigation Trust; *provided, further,* that the reasonable and documented costs and expenses of each Investigation Party in furtherance of the foregoing shall be borne by the Litigation Trust.

(iii)    Each of the Investigation Parties shall reasonably cooperate with respect to Litigation Trust Assets pursued by the Litigation Trust following the Confirmation Date; *provided* that such reasonable cooperation shall not materially interfere with such Person's normal job responsibilities and shall not impose unreasonable costs on such cooperating party; *provided, further* that the cooperation obligations of the Examiner and his advisors, if any, shall be limited to those set forth in a mutual agreement as between such parties and the Litigation Trust.

(iv)    The Litigation Trust has the authority to enter into a formal cooperation and/or transfer agreement with any Person.

(d)    All proceeds of the Litigation Trust Assets received by the Litigation Trust shall be added to the Litigation Trust Assets and held as a part thereof (and title thereto shall be vested in the Litigation Trust), subject to expenditure and distribution as further provided herein.

(e)    For all U.S. federal, state, and local income tax purposes, all parties (including, without limitation, the FBG Debtors, the Litigation Trust, the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman, and the Litigation Trust Beneficiaries) shall treat the transfer of the Litigation Trust Assets to the Litigation Trust in accordance with Section 9.1 hereof.

(f)    In accordance with the Plan, the transfer of Litigation Trust Assets to the Litigation Trust shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code.

(g)    Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Litigation Trust Assets to the Litigation Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer.

9

FBG_CH1_00092425

(h)     Each of the Causes of Action, claims, rights, and interests transferred, assigned, or otherwise conveyed to the Litigation Trust by the DIP Secured Parties or Preference Settlement Electing Creditors, as applicable, shall remain separate and distinct from each of the other Causes of Action, claims, rights, and interests held or acquired by the Litigation Trust. The Litigation Trust shall have standing to pursue all Causes of Action, claims, rights, and interests transferred, assigned, or otherwise conveyed to it. No defendant, counterparty, or other party against whom a Cause of Action is asserted by the Litigation Trust shall be entitled to assert, as a defense, setoff, recoupment, counterclaim, or reduction of any kind, any claim, defense, or right arising from or relating to such party's dealings, transactions, or relationships with any FBG Debtor or Preference Settlement Electing Creditor, as applicable, other than the specific FBG Debtor or Preference Settlement Electing Creditor, as applicable, who or whose Estate originally held the Cause of Action being prosecuted. For the avoidance of doubt, the consolidation of Causes of Action within the Litigation Trust for administrative convenience shall not operate to merge, consolidate, or otherwise combine the separate and distinct claims of the respective FBG Debtor Estates or Preference Settlement Electing Creditors, as applicable, nor shall such consolidation permit any party to assert cross-FBG Debtor and/or cross-Preference Settlement Electing Creditor defenses, as applicable, or to reduce its liability on a Cause of Action held by one FBG Debtor's Estate or a Preference Settlement Electing Creditor, as applicable, by reference to any claim, credit, or defense arising from such party's relationship with a different FBG Debtor or Preference Settlement Electing Creditor, as applicable.

(i)     Pursuant to the Plan, any Person against whom an Estate Claim is asserted by the Litigation Trust shall be prohibited from asserting, filing, or prosecuting any affirmative claim against the Litigation Trust arising out of, or related to, any Claim against a FBG Debtor or its Estate.

2.3     Privileges.

(a)     Pursuant to the Plan, following the occurance of the Confirmation Date and the consummation of the Estate Claims Credit Bid Transaction, all attorney-client privileges, work product protections, joint client privilege, mediation privilege, common interest or joint defense privilege or protection and all other privileges, immunities or protections from disclosure (the "Privileges") held by (1) any one or more of the FBG Debtors or (2) any prepetition or postpetition committee or subcommittee of the board of managers or equivalent governing body of any of the FBG Debtors and their predecessors (together, the "Privilege Transfer Parties") related in any way to the Litigation Trust Assets or the purpose of the Litigation Trust (the "Transferred Privileges"), along with all information, documents, and other materials covered by any of the Transferred Privileges (the "Transferred Privileged Information"), shall be transferred and assigned to the DIP Secured Parties, who in turn shall be deemed to have transferred and assigned to, and vested in, the Litigation Trust and its authorized representatives such Transferred Privileged Information. The Transferred Privileged Information shall include documents and information of all manner, whether oral, written or digital, and whether or not previously disclosed or discussed. For the avoidance of doubt, the Transferred Privileges shall include any right or obligation to preserve or enforce or waive a privilege that arises from any joint defense, common interest or similar agreement involving any of the Privilege Transfer Parties.

10

FBG_CH1_00092426

(b)    [The foregoing transfers and assignments shall vest the Transferred Privileges concerning the Transferred Privileged Information in the Litigation Trust, pursuant to the Plan, including Section 6.2.]

(c)    The Privilege Transfer Parties (including through the Wind Down Administrator) agree to take all necessary actions to effectuate the transfer of Transferred Privileges and Transferred Privileged Information, and to provide to the Litigation Trust without the necessity of a subpoena all Transferred Privileged Information in their respective possession, custody, or control.  Subject to Section 2.2(c), the Litigation Trust is further expressly authorized to formally or informally request or subpoena documents, testimony, or other information that would constitute Transferred Privileged Information from any Persons, including attorneys, professionals, consultants, and experts that may possess Transferred Privileged Information, and no such Person may object to the production to the Litigation Trust of such Transferred Privileged Information on the basis of a Privilege held by a Privilege Transfer Party.

(d)    No Privileges shall be waived by the transfer and assignment of the Transferred Privileges or the production of any Transferred Privileged Information to the Litigation Trust or any of its respective employees, professionals or representatives, or by disclosure of such Transferred Privileged Information between the Privilege Transfer Parties, on the one hand, and the Litigation Trust, on the other hand, or any of their respective employees, professionals or representatives.

(e)    If a Privilege Transfer Party, the Litigation Trust, any of their respective employees, professionals or representatives or any other Person inadvertently produces or discloses Transferred Privileged Information to any third party, such disclosure shall not be deemed to destroy any of the Transferred Privileges, or be deemed a waiver of any confidentiality protections afforded to such Transferred Privileged Information.  In such circumstances, the disclosing party shall promptly upon discovery of the disclosure notify the Litigation Trust of the disclosure and shall demand that all recipients of the inadvertently disclosed Transferred Privileged Information return or confirm the destruction of such materials.  Notwithstanding anything herein to the contrary, the Litigation Trustee has no obligation to waive privilege over any communications, information, or other similar materials when fulfilling its duties to meet and confer with any party in interest.

(f)    The Litigation Trustee, in its sole discretion and with no obligation to do so, may also share any Transferred Privileged Information or other privileged documents or communications with the Delaware Trustee, the Members of the Litigation Trust Oversight Committee and their respective advisors, subject to applicable common-interest or other joint agreements or, if deemed necessary or appropriate by the Litigation Trustee, entry into new common interest and non-disclosure agreements that preserve the privileged nature of the documents or communication, it being acknowledged that the subject matter of such communications is with respect to common litigation interests, to the extent permitted by federal, state, or other law.

(g)    All communications between the Litigation Trustee, the Delaware Trustee, and the Litigation Trust Oversight Committee shall be confidential communications.  Such communications shall not be disclosed to any third parties except as may be required by a final,

11

FBG_CH1_00092427

non-appealable order of a court of competent jurisdiction upon prior written notice to the Litigation Trustee, the Delaware Trustee, and the Members.

2.4     Payments of Certain Allowed Claims Under the Plan.   In addition to making distributions to the Litigation Trust Beneficiaries on account of their Litigation Trust Interests as set forth in the Plan and herein, the Litigation Trust also shall make payments to holders of Allowed Settled Administrative Expense Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims to the extent set forth in the Plan and as set forth herein.   Notwithstanding anything herein to the contrary, but subject in all cases to the Litigation Trust Waterfall and the distribution and other payment mechanics set forth in the Plan and herein, the holders of Allowed Settled Administrative Expense Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims shall have or otherwise be subject to, as applicable, the same general rights, benefits, obligations, protections, and limitations as Litigation Trust Beneficiaries holding Class 3 Litigation Trust Interests with respect to their interests in such payments under the Plan and hereunder, including without limitation the limitations as to the Litigation Trust Beneficiaries and the Litigation Trust Interests set forth in Sections 2.6(b), 3.3, 3.4, and 3.11, and the duties owed to the Litigation Trust Beneficiaries holding Class 3 Litigation Trust Interests by any Person hereunder shall also be owed to such holders of Allowed Settled Administrative Expense Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims.

2.5     Title to the Litigation Trust Assets.   The transfer of the Litigation Trust Assets to the Litigation Trust pursuant to the Plan and Section 2.2 hereof is being made for the sole benefit, and on behalf, of the Litigation Trust Beneficiaries to the extent such Litigation Trust Beneficiaries are entitled to the Litigation Trust Interests and the holders of Allowed Settled Administrative Expense Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims to the extent such holders are entitled to payments under the Plan. The Litigation Trust Interests shall be comprised of five tranches of beneficial interests, which will be issued on or after the Confirmation Date: (a) Class 1 Litigation Trust Interests to Litigation Trust Class 1 Funding Contributors or, if applicable, to any Additional Class 1 Litigation Trust Funding Contributors; (b) Class 2 Litigation Trust Interests to holders of Allowed DIP A Claims against the FBG Debtors; (c) Class 3(a) Litigation Trust Interests to holders of Allowed Roll-Up Claims against the FBG Debtors; (d) Class 3(b) Litigation Trust Interests held by the Claims Ombudsman as agent to the holders of Allowed General Unsecured Claims and Allowed Subordinated Claims against the FBG Debtors; and (e) Class 3(c) Litigation Trust Interests to holders of Allowed First Lien Claims and Allowed Second Lien Claims against the FBG Debtors. The Litigation Trust Interests shall have the respective rights to share in the Litigation Trust Waterfall specified in Section 6.5 of the Plan (and excerpted for convenience in **Exhibit D** hereto). Upon the transfer of the Litigation Trust Assets to the Litigation Trust, the Litigation Trust shall succeed to all of the DIP Secured Parties', the FBG Debtors' (and their Estates'), the Preference Settlement Electing Creditors', and the other Litigation Trust Beneficiaries' rights, title, and interests in the Litigation Trust Assets and no other Person shall have any interest, legal, beneficial, or otherwise, in the Litigation Trust or the Litigation Trust Assets upon the assignment and transfer of such assets to the Litigation Trust.

12

FBG_CH1_00092428

2.6     <u>Nature and Purpose of the Litigation Trust</u>.

(a)     <u>Purpose</u>.  The Litigation Trust is organized and established as a statutory trust under the Delaware Act, and the Litigation Trust, subject to the terms and conditions of this Agreement, shall implement the Plan with respect to all FBG Debtors on behalf, and for the benefit, of the Litigation Trust Beneficiaries and the holders of Allowed Settled Administrative Expense Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims to the extent such holders are entitled to payments under the Plan.  The purpose of the Litigation Trust is to (i) serve as a mechanism for prosecuting and otherwise monetizing the Litigation Trust Assets, resolving Disputed Claims, and distributing the proceeds realized from the Litigation Trust Assets (the "<u>Litigation Trust Proceeds</u>"), in each case, in accordance with the Plan, the Confirmation Order, and this Agreement and (ii) liquidate and administer the Litigation Trust Assets in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or any other business, except to the extent reasonably necessary to, and consistent with, the purpose of the Litigation Trust.

(b)     <u>Relationship</u>.  Subject to <u>Section 5.2(p)</u>, the Litigation Trust is not intended to be, and shall not be deemed to be, or be treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company, or association, nor shall the Litigation Trustee, the Delaware Trustee, the Litigation Trust Oversight Committee (or any Member thereof), or the Litigation Trust Beneficiaries for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The Litigation Trust Beneficiaries are solely beneficial owners of the Litigation Trust, and their rights shall be limited solely to those conferred upon them by the Plan, the Confirmation Order, and this Agreement.  Notwithstanding the foregoing, in the event of a final determination under Section 1313(a) of the IRC that the Litigation Trust does not qualify as a grantor trust, the Litigation Trust shall be treated as a partnership for U.S. federal income tax purposes, and the Litigation Trust Beneficiaries and the Litigation Trust will take all actions reasonably necessary to cause the Litigation Trust to be treated as such.

(c)     <u>No Waiver of Claims</u>.  On and after the Confirmation Date, in accordance with section 1123(b)(3) of the Bankruptcy Code and subject to the terms and conditions of the Plan and this Agreement, the Litigation Trust may enforce all rights to commence and pursue, as appropriate, any and all Litigation Trust Assets and the Claims Ombudsman may, subject to the terms of this Agreement (including <u>Article VII</u> hereof), the Plan, and Bankruptcy Court approval (if necessary), object to, compromise, allow, and/or otherwise resolve Disputed Claims on account of any Claims that have not been Allowed by the Bankruptcy Court as of the Confirmation Date.  No Person or Entity may rely on the absence of a specific reference in the Plan to any Claim against it as any indication that the Litigation Trust will not pursue any and all Claims and Causes of Action against such Person or Entity; nor may any creditor rely on the absence of a specific reference in the Plan to any Disputed Claim as any indication that the Litigation Trust and/or the Claims Ombudsman, as applicable, will not challenge, object to, and/or otherwise reduce (or seek to reduce) any asserted Claim; *provided* that the Litigation Trust shall not commence or prosecute any Claims released under Article XIII of the Plan against any Released Party.  The Litigation Trust expressly reserves all Litigation Trust Assets for later adjudication, resolution, abandonment, or settlement, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise),

FBG_CH1_00092429

**DEBTORS' EXHIBIT NO. 178**
**Page 30 of 360**

or laches, shall apply to the Litigation Trust Assets upon, after, or as a consequence of entry of the Confirmation Order.

2.7     Appointment as Representative.     Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Litigation Trust shall be the duly appointed representative of the FBG Debtors' Estates for certain limited purposes and, as such, to the extent provided herein, the Litigation Trust succeeds to the rights and powers of a trustee in bankruptcy solely with respect to prosecution, resolution, and settlement of the Estate Claims. To the extent that any of the Estate Claims cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Estate Claims and rights shall be deemed to have been retained by the applicable FBG Debtor and the Litigation Trust shall be deemed to have been designated as a representative of such FBG Debtor to the extent provided herein pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely to enforce and pursue such Estate Claims on behalf of such FBG Debtor and its Estate for the benefit of the Litigation Trust Beneficiaries. Notwithstanding the foregoing, all Litigation Trust Proceeds shall be expended by the Litigation Trust or distributed to the Litigation Trust Beneficiaries, in each case, consistent with the provisions of the Plan, the Confirmation Order, and this Agreement.

2.8     Valuation of the Litigation Trust Assets.     As soon as practicable following the establishment of the Litigation Trust, the Litigation Trustee shall make a good faith determination of the fair market value of the Litigation Trust Assets (on an asset-by-asset basis, if applicable) as of the date the Litigation Trust is established, taking into account (among other things) the anticipated recoveries on the respective Litigation Trust Assets; it being understood that the aggregate fair market value of the Litigation Trust Assets shall be equal to the amount of the Estate Claims Credit Bid for U.S. federal, and applicable state and local, income tax purposes. The Litigation Trustee shall provide, or otherwise make accessible to, the Litigation Trust Beneficiaries such valuation as relevant from time to time for U.S. federal, and applicable state and local, income tax purposes. For any other purposes, such provision shall be conditioned upon entry into applicable non-disclosure agreements and/or similar agreements designed to preserve the privileged and/or confidential nature of such valuation. The valuation shall be used consistently by all Persons (including the Litigation Trust and the Litigation Trust Beneficiaries) for all U.S. federal (and applicable state, local, and non-U.S.) income tax purposes. In connection with the preparation of any valuation contemplated hereby, the Litigation Trust shall be entitled to retain such Litigation Trust Professionals as the Litigation Trustee shall determine to be appropriate or necessary in accordance with the terms of this Agreement. The Litigation Trust shall bear all of the reasonable and documented costs and expenses incurred in connection with determining such value, including the fees and expenses of any Litigation Trust Professionals retained in connection therewith.

## ARTICLE III
## LITIGATION TRUST INTERESTS

3.1     Litigation Trust Interests.     On or after the date hereof, in accordance with the procedures approved by the Bankruptcy Court, the Plan, and the Litigation Trust Participation Notice (as defined in the Disclosure Statement Order), the Litigation Trust shall issue the Litigation Trust Interests to the Litigation Trust Beneficiaries in accordance with the Litigation Trust

14

FBG_CH1_00092430

Waterfall specified in Section 6.5 of the Plan (and excerpted for convenience in **Exhibit D** hereto), the Confirmation Order, and this Agreement. The Litigation Trust Beneficiaries shall be entitled to distributions from the Litigation Trust Proceeds in accordance with the terms of the Plan, the Confirmation Order, and this Agreement. The Litigation Trust Interests will be represented solely by a register in the books and records of the Litigation Trust as set forth in Section 3.6. The Litigation Trust will not issue any certificate or certificates to evidence any Litigation Trust Interests. The Litigation Trust Interests shall consist of:

(a)    Class 1 Litigation Trust Interests.

(i)    As of the date hereof, the Litigation Trust shall be authorized to issue Class 1 Litigation Trust Interests to the Litigation Trust Class 1 Funding Contributors (including the Litigation Trust Backstop Parties) that have provided the Initial Litigation Trust Funding Commitments. The Litigation Trust Class 1 Funding Contributors' Initial Litigation Trust Funding Commitments as of the date hereof in the aggregate amount of $50,000,000 are set forth on **Exhibit E** hereto, which, due to its confidential nature, is on file with the Litigation Trustee. Each Litigation Trust Class 1 Funding Contributor hereby commits, subject only to the satisfaction of the conditions precedent thereto specified in the Plan (and excerpted for convenience in **Exhibit D** hereto), severally and not jointly, to fund Initial Litigation Trust Funding Commitments in an aggregate amount up to the amount specified across from its name on **Exhibit E**. The terms and conditions of such funding are set forth in the Plan (and excerpted for convenience in **Exhibit D** hereto). Such Initial Litigation Trust Funding Commitments shall be treated as having been made to the FBG Debtors, with the FBG Debtors transferring such Initial Litigation Trust Funding Commitments to the Litigation Trust as of the date hereof and the FBG Debtors settling the claims arising from making such Class 1 Commitments by the issuance of Class 1 Litigation Trust Interests.

(ii)    As of the date hereof, the Litigation Trust shall be authorized to issue from time to time Additional Class 1 Litigation Trust Interests to Litigation Trust Class 1 Funding Contributors that commit, pursuant to the terms hereof, to fund any Additional Class 1 Litigation Trust Funding. The terms and conditions upon which the Litigation Trustee may accept commitments to fund Additional Class 1 Litigation Trust Funding are set forth in the Plan (and excerpted for convenience in **Exhibit D** hereto). The Litigation Trustee may in its sole discretion decide not to seek or accept commitments to fund any Additional Class 1 Litigation Trust Funding if, among other reasons, it determines that such actions may result in the Litigation Trust or Litigation Trust Interests being or having been subject to registration and/or reporting requirements of the Securities Act of 1933, as amended (the "Securities Act"), the Securities Exchange Act of 1934, as amended (the "Exchange Act"), the Trust Indenture Act of 1939, as amended (the "TIA"), or the Investment Company Act of 1940, as amended (the "Investment Company Act").

(b)    Class 2 Litigation Trust Interests. As of the date hereof, in accordance with the Litigation Trust Participation Notice and the process approved by the Bankruptcy Court, the

15

FBG_CH1_00092431

Litigation Trust shall be authorized to issue the Class 2 Litigation Trust Interests to holders of Allowed DIP A Claims in excess of $1,000 in principal amount of Allowed DIP A Claims.

(c)      Class 3(a) Litigation Trust Interests.  As of the date hereof, in accordance with the Litigation Trust Participation Notice and the process approved by the Bankruptcy Court, the Litigation Trust shall be authorized to issue the Class 3(a) Litigation Trust Interests to holders of Allowed Roll-Up Claims in excess of $1,000 in principal amount of Allowed Roll-Up Claims.

(d)      Class 3(b) Litigation Trust Interests.  As of the date hereof, in accordance with the Plan, the Litigation Trust shall be authorized to issue the Class 3(b) Litigation Trust Interests to the holders of Allowed General Unsecured Claims and Allowed Subordinated Claims against the FBG Debtors, which Class 3(b) Litigation Trust Interests shall be held by the Claims Ombudsman as agent for such holders of Allowed General Unsecured Claims and Allowed Subordinated Claims against the FBG Debtors.

(e)      Class 3(c) Litigation Trust Interests.  As of the date hereof, in accordance with the Litigation Trust Participation Notice and the process approved by the Bankruptcy Court, the Litigation Trust shall be authorized to issue the Class 3(c) Litigation Trust Interests to holders of Allowed First Lien Claims and/or Allowed Second Lien Claims in excess of $1,000 in principal amount of Allowed First Lien Claims or Allowed Second Lien Claims, respectively.

3.2      Litigation Trust Waterfall.  Except as may be altered by the provisions of any Additional Waterfall Litigation Trust Funding, Litigation Trust Proceeds, net of fees, costs, or other expenses pursuant to the terms of this Agreement, including reasonably projected fees, costs or expenses, shall be distributed to Litigation Trust Beneficiaries pursuant to the Litigation Trust Waterfall specified in Section 6.5 of the Plan (and excerpted for convenience in **Exhibit D** hereto).

3.3      Litigation Trust Interests Beneficial Only.  The ownership of the Litigation Trust Interests shall not entitle the Litigation Trust Beneficiaries to any title in or to the Litigation Trust Assets as such (which title shall be vested in the Litigation Trust) or to any right to call for a partition or division of the Litigation Trust Assets or to require an accounting.  No Litigation Trust Beneficiary shall have any oversight, consent, governance, or right to direct Litigation Trust activities in its capacity as a Litigation Trust Beneficiary, other than to the extent such Litigation Trust Beneficiary has any such rights hereunder as a Member of the Litigation Trust Oversight Committee.  Nothing herein shall impair the right of the Members, in their or its capacity as such, to enforce enumerated consent and consultation rights as specified in the Plan, the Confirmation Order, and/or this Agreement.

3.4      Transferability of Litigation Trust Interests.  No transfer, assignment, pledge, hypothecation, or other disposition of a Litigation Trust Interest may be effected other than by will, intestate succession, or operation of law.

3.5      Tax Treatment of Litigation Trust Interests.  The Parties intend that the Litigation Trust qualify as a "liquidating trust" for U.S. federal income tax purposes under Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 and that the Litigation Trust be treated as a grantor trust within the meaning of Sections 671-677 of the

FBG_CH1_00092432

IRC.  The Litigation Trustee shall administer the Litigation Trust in a manner consistent with such treatment.

3.6     Register of Litigation Trust Beneficiaries.

(a)     Registrar.  The Litigation Trust shall appoint a registrar, which may be the Litigation Trustee (the "Registrar"), for the purpose of recording ownership of the Litigation Trust Interests as herein provided.  For its services hereunder, the Registrar, unless it is the Litigation Trustee, shall be a Litigation Trust Professional entitled to receive reasonable compensation from the Litigation Trust, as well as reimbursement of all reasonable and documented fees and expenses without the need for any approvals, authorizations, actions, or consents, subject to Article VI, in each case as a cost of administering the Litigation Trust.

(b)     Litigation Trust Register.  The Litigation Trustee on behalf of the Litigation Trust shall cause to be kept, in whole or in parts, at the office of the Litigation Trustee, the Registrar, the Claims Ombudsman, and/or at such other place or places as shall be designated by the Registrar or the Claims Ombudsman, as applicable, from time to time and acceptable to the Litigation Trustee, a register of the Litigation Trust Beneficiaries (the "Litigation Trust Register"), which shall be maintained pursuant to such reasonable regulations as the Litigation Trustee on behalf of the Litigation Trust and the Registrar and/or Claims Ombudsman, as applicable, may prescribe.

(c)     Initial Registrar.  As of the date hereof, Wilmington Savings Fund Society, FSB is hereby appointed as the initial Registrar; *provided* that the Claims Ombudsman shall maintain the Litigation Trust Register with respect to the Class 3(b) Litigation Trust Interests.

3.7     Exemption from Registration.  The Parties hereto intend that the Litigation Trust Interests and the rights of the Litigation Trust Beneficiaries arising under this Litigation Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that the Litigation Trust Interests or such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If the Litigation Trust Interests or such rights constitute securities, the Parties hereto intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws to apply to the issuance of the Litigation Trust Interests under the Plan.  Subject to Section 3.4 hereof, the Litigation Trustee may amend this Agreement in accordance with Article XI hereof to make such changes as are deemed necessary or appropriate, with the advice of counsel, to ensure that the Litigation Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act.  The Litigation Trust Interests shall not have consent or voting rights or otherwise confer on the Litigation Trust Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken by the Litigation Trustee in connection with the Litigation Trust; *provided* that a Litigation Trust Beneficiary may serve as a Member of the Litigation Trust Oversight Committee as set forth herein, and may have the powers and authority of a Member in such capacity to the extent set forth herein.  Consistent with Section 3.4 hereof, neither the Litigation Trust Oversight Committee nor the Litigation Trustee shall take any action to establish or support the establishment of an active trading market with respect to the Litigation Trust Interests.

17

FBG_CH1_00092433

DEBTORS' EXHIBIT NO. 178
Page 34 of 360

3.8     Effect of Death, Incapacity or Bankruptcy.  The death, incapacity, or bankruptcy of any Litigation Trust Beneficiary during the term of the Litigation Trust shall not (i) operate to terminate the Litigation Trust, (ii) entitle the representatives or creditors of the deceased, incapacitated, or bankrupt party to an accounting, (iii) entitle the representatives or creditors of the deceased, incapacitated, or bankrupt party to take any action in the Bankruptcy Court or elsewhere for the distribution of the Litigation Trust Assets or for a partition thereof, or (iv) otherwise affect the rights and obligations of any of the Litigation Trust Beneficiaries under this Agreement.

3.9     Change of Address.  Any Litigation Trust Beneficiary may, after the Confirmation Date, select an alternative distribution address by providing notice to the Litigation Trustee or, as applicable, the Registrar or Claims Ombudsman (with respect to Allowed General Unsecured Claims and/or Allowed Subordinated Claims against the FBG Debtors), identifying such alternative distribution address.  Such notification shall be effective only upon receipt by the Litigation Trustee or, as applicable, the Registrar or Claims Ombudsman (with respect to Allowed General Unsecured Claims and/or Allowed Subordinated Claims against the FBG Debtors).  Absent actual receipt of such notice by the Litigation Trustee or, as applicable, the Registrar or Claims Ombudsman (with respect to Allowed General Unsecured Claims and/or Allowed Subordinated Claims against the FBG Debtors), the Litigation Trustee shall not recognize any such change of distribution address.

3.10     Absolute Owners.  The Litigation Trust may deem and treat any Litigation Trust Beneficiary reflected as the owner of a Litigation Trust Interest on the applicable Litigation Trust Register as the absolute owner thereof for the purposes of receiving distributions and payments on account thereof, for U.S. federal, state, local, and non-U.S. income tax purposes and for all other purposes whatsoever.

3.11     Standing.  No Litigation Trust Beneficiary, in their capacity as such, shall have standing to direct the Litigation Trust, the Litigation Trustee, the Delaware Trustee, or the Litigation Trust Oversight Committee to do or not to do any act or to institute any action or proceeding at law or in equity against any party on or with respect to the Litigation Trust Assets.

**ARTICLE IV**
**THE LITIGATION TRUSTEE GENERALLY**

4.1     Independent Litigation Trustee.  The Litigation Trustee shall be a professional natural person, or entity or financial institution with banking or trust powers, with relevant experience, and may not be a Member of the Litigation Trust Oversight Committee.

4.2     Litigation Trustee's Term of Service, Compensation, and Reimbursement.

(a)     Term of Service.  The Litigation Trustee shall serve as of the Confirmation Date until the earlier of:  (a) the termination of the Litigation Trust in accordance with this Agreement; or (b) the Litigation Trustee's death or Disability (as defined in Section 6.4(b) below) (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is not a natural person), bankruptcy, resignation, or removal.

(b)     Compensation.  The Litigation Trustee shall receive compensation from the Litigation Trust as provided on **Exhibit C** hereto (the "Litigation Trustee Compensation").  The

18

FBG_CH1_00092434

Litigation Trustee Compensation may be modified from time to time by agreement of the Litigation Trustee and the Litigation Trust Oversight Committee in accordance with Article VI. [Notice of any modification of the Litigation Trustee Compensation shall be posted on a website or other electronic depository maintained by or on behalf of the Litigation Trust and accessible by Litigation Trust Beneficiaries.]

(c)     Expenses.  The Litigation Trust will reimburse the Litigation Trustee for all actual, reasonable, and documented out-of-pocket expenses incurred by the Litigation Trustee (including certain expenses incurred prior to the Confirmation Date) in connection with the performance of the duties of the Litigation Trustee hereunder or under the Confirmation Order and/or the Plan, including but not limited to, actual, reasonable, and documented fees and disbursements of Litigation Trustee Professionals, including those of the Litigation Trustee's counsel incurred prior to the Confirmation Date in connection with the review, execution, and delivery of this Agreement and related documents in an amount not to exceed $[100,000] (collectively, the "Litigation Trustee Expenses" and, together with the Litigation Trustee Compensation, the "Litigation Trustee Fees").

(d)     Payment.  Subject to Article VI and Section 5.5(b) hereof, the Litigation Trustee Fees shall be paid by the Litigation Trust to the Litigation Trustee without necessity for review or approval by the Bankruptcy Court or any other Person.  To the extent there is any dispute regarding any portion of the Litigation Trustee Fees, the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute.

4.3     Resignation.  The Litigation Trustee may resign by giving not less than sixty (60) days' prior written notice thereof by delivery of such notice to the Delaware Trustee and the Members of the Litigation Trust Oversight Committee and posting such notice on a website maintained by the Litigation Trust and accessible by all Litigation Trust Beneficiaries.  Such resignation shall become effective on the day specified in such notice; *provided* that such resignation shall not be effective until the appointment of a successor Litigation Trustee, as approved by the Litigation Trust Oversight Committee, satisfying the requirements set out in Section 4.5 below and the acceptance by such successor of such appointment.  Notwithstanding the foregoing, upon the Termination Date (as defined in Section 10.1 below), the Litigation Trustee shall be deemed to have resigned, except as otherwise provided for in Section 10.2 herein.  Written notice of the resignation of the Litigation Trustee and the appointment of a successor Litigation Trustee shall be posted promptly to the website or other electronic depository maintained by or on behalf of the Litigation Trust and accessible by Litigation Trust Beneficiaries and provided to the Delaware Trustee and the Members.

4.4     [Removal.

(a)     The then-serving Litigation Trustee may be removed by the Litigation Trust Oversight Committee in accordance with Section 6.10(f) hereof (i) for Cause or Disability (as defined in Section 6.4(b) below), immediately upon notice thereof, or (ii) without Cause, upon not less than thirty (30) days' prior written notice delivered to the Litigation Trustee and the Delaware Trustee; *provided* that the Litigation Trustee may not be removed solely to avoid paying the Litigation Trustee the agreed Litigation Trustee Compensation.

19

FBG_CH1_00092435

(b)     To the extent there is any dispute regarding the removal of a Litigation Trustee, the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute. Notwithstanding the foregoing, the Litigation Trustee will continue to serve as the Litigation Trustee after his, her, or its removal other than for Cause until the earlier of (i) the time when appointment of a successor Litigation Trustee will become effective in accordance with Section 4.5 below or (ii) such date as the Bankruptcy Court otherwise orders.][2]

4.5     Appointment of Successor Litigation Trustee.  In the event of the death or Disability (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is not a natural person), bankruptcy, resignation, or removal of the Litigation Trustee (each, a "Succession Event"), the Litigation Trust Oversight Committee shall, in accordance with Section 6.10(f) hereof, promptly designate a successor Litigation Trustee satisfying the requirements set forth in Section 4.1 above.  Such appointment shall specify the date on which such appointment shall be effective.  Every successor Litigation Trustee appointed hereunder shall execute, acknowledge, and deliver to the Litigation Trust, the Delaware Trustee, and the Litigation Trust Oversight Committee an instrument accepting the appointment under this Agreement and agreeing to be bound as Litigation Trustee hereto and subject to the terms of this Agreement, and thereupon the successor Litigation Trustee, without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of the predecessor Litigation Trustee and the successor Litigation Trustee shall not be personally liable for any act or omission of the predecessor Litigation Trustee; *provided* that a predecessor Litigation Trustee shall, nevertheless, when requested in writing by the successor Litigation Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Litigation Trustee under the Litigation Trust all the estates, properties, rights, powers, and trusts of such predecessor Litigation Trustee and otherwise assist and cooperate, without cost or expense to the predecessor Litigation Trustee, in effectuating the assumption by the successor Litigation Trustee of his/her/its obligations and functions hereunder.  For notice purposes only and not for approval, the successor Litigation Trustee shall post a notice upon his/her/its appointment on a website or other electronic depository maintained by or on behalf of the Litigation Trust and accessible by Litigation Trust Beneficiaries.

4.6     Effect of Resignation or Removal.  The death or Disability (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is not a natural person), bankruptcy, resignation, or removal of the Litigation Trustee, as applicable, shall not operate to terminate the Litigation Trust created by this Agreement or to revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Litigation Trustee or any prior Litigation Trustee.  In the event of the resignation or removal of the Litigation Trustee, such Litigation Trustee will promptly (a) execute and deliver such documents, instruments, and other writings as may be ordered by the Bankruptcy Court (or) any other court of competent jurisdiction or reasonably requested by the Litigation Trust Oversight Committee or the successor Litigation Trustee to effect the termination of such Litigation Trustee's capacity under this Agreement, (b) deliver to the Bankruptcy Court (if required), the Litigation Trust Oversight Committee, and the successor Litigation Trustee all documents, instruments, records, and other writings related to the Litigation Trust and/or Litigation Trust Assets as may be in the possession of such Litigation Trustee, and shall not retain any copies of such materials,

---

[2]     Under continued review.

FBG_CH1_00092436

DEBTORS' EXHIBIT NO. 178
Page 37 of 360

except for archival purposes, and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Litigation Trustee.

4.7     Confidentiality.  The Litigation Trustee shall, during the period that the Litigation Trustee serves as Litigation Trustee under this Agreement and for a period of [five (5) years] following the termination of this Agreement, hold strictly confidential and not use for personal gain or for the gain of any Entity or Person for whom such Litigation Trustee may be employed any non-public information of or pertaining to the Litigation Trust, including without limitation any non-public information regarding any Person to which any of the Litigation Trust Assets relate or of which the Litigation Trustee has become aware in the Litigation Trustee's capacity as Litigation Trustee, until (a) such information is made public other than by disclosure by the Litigation Trust, the Litigation Trustee, or any Litigation Trust Professionals, Litigation Trustee Professionals, and/or UCC Member Professionals in violation of this Agreement; (b) the Litigation Trustee is required by law to disclose such information (in which case the Litigation Trustee shall provide the relevant Person reasonable advance notice and an opportunity to protect his, her, or its rights); or (c) the Litigation Trustee obtains a waiver of confidentiality from the applicable Person.

**ARTICLE V**
**RIGHTS, POWERS, AND DUTIES OF LITIGATION TRUSTEE**

5.1     Role of the Litigation Trustee.  In furtherance of and consistent with the purpose of the Litigation Trust and the Plan, and subject to the terms and conditions contained in the Plan, the Confirmation Order, and this Agreement, including without limitation the consent rights of the Litigation Trust Oversight Committee set forth herein, the Litigation Trustee shall have the power and authority to manage the Litigation Trust and make decisions on behalf of the Litigation Trust and otherwise perform the functions and take the actions or cause the Litigation Trust to perform the functions and take the actions, as applicable, provided and/or permitted under the Plan, the Confirmation Order, and/or this Agreement, including without limitation those functions and actions set forth in Section 5.2.  The Litigation Trustee shall not, through action or inaction, undertake the foregoing in a manner that is adverse to the interests of the Litigation Trust Beneficiaries.  In all circumstances, the Litigation Trustee shall act in the best interests of all Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust and shall use commercially reasonable efforts to protect, prosecute, settle, and/or otherwise monetize the Litigation Trust Assets and make timely distributions of Litigation Trust Proceeds realized therefrom (including distributions of Available Cash in accordance with Section 6.19(b) of the Plan) and not unreasonably prolong the duration of the Litigation Trust.

5.2     Functions of Litigation Trustee.  On and after the date the Litigation Trust is established, subject to the terms and conditions contained in this Agreement, including without limitation the consent rights of the Litigation Trust Oversight Committee set forth herein, the Litigation Trustee shall, in the Litigation Trustee's discretion, carry out or cause the Litigation Trust to carry out the functions and take the actions or cause the Litigation Trust to take the actions set forth in this Section 5.2, as long as such actions are consistent with the Litigation Trust's status as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) and are merely incidental to its liquidation and dissolution.  Such actions may be carried out or taken without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, other than any restrictions expressly imposed by the

21

**DEBTORS' EXHIBIT NO. 178**
**Page 38 of 360**

Plan, the Confirmation Order, or this Agreement (including Article VI). Such functions and actions shall include the following:

(a)     perform all actions and execute all agreements, instruments and other documents necessary to effectuate the purpose of the Litigation Trust;

(b)     take any actions necessary to (i) resolve all matters related to the Litigation Trust Assets and (ii) vest such assets in the Litigation Trust;

(c)     select the banking institution(s) at which the Litigation Trust opens bank, escrow, or other account(s) (and open and maintain any such bank, escrow, or other accounts) on behalf of or in the name of the Litigation Trust;

(d)     maintain the books and records and accounts of the Litigation Trust;

(e)     provide timely reporting to the Litigation Trust Oversight Committee and the Litigation Trust Beneficiaries, as applicable, in accordance with in Article VI and Section 5.5, respectively.

(f)     determine the appropriate insurance coverage for the Litigation Trust and the Litigation Trust Assets;

(g)     obtain reasonable insurance coverage with respect to the potential liabilities and obligations under this Agreement of the Litigation Trust, the Litigation Trustee, the Delaware Trustee, the Litigation Trust Oversight Committee, the Members, and, subject to Section 7.2(b), the Claims Ombudsman in the form of a directors and officers' policy, an errors and omissions policy, or otherwise, in each case, as applicable, all (subject to Section 7.2(b) with respect to the Claims Ombudsman) at the sole cost and expense of the Litigation Trust;

(h)     coordinate with the Wind Down Administrator, the other Trustees, and any chapter 7 trustees appointed in any chapter 7 cases of the Debtors;

(i)     accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, abandon, supervise, prosecute, settle, and protect, as applicable, the Litigation Trust Assets in accordance with this Agreement;

(j)     take or refrain from taking any and all actions the Litigation Trustee reasonably deems necessary for the continuation, protection, and maximization of the Litigation Trust Assets consistent with the purpose of the Litigation Trust;

(k)     conduct investigations of the Estate Claims and Direct Creditor Claims, including pursuant to Bankruptcy Rule 2004;

(l)     pursue, prosecute, settle, abandon, or otherwise resolve the Litigation Trust Assets (including any Estate Claims and Direct Creditor Claims and including through the commencement, participation, defense, or continuation of legal proceedings, including judicial, arbitration or administrative proceedings, in any domestic or foreign jurisdiction) in accordance with this Agreement;

22

FBG_CH1_00092438

(m)     take all actions the Litigation Trustee reasonably deems necessary to comply with the Plan, the Confirmation Order, and this Agreement (including all obligations thereunder);

(n)     protect and enforce the rights of the Litigation Trust in and to the Litigation Trust Assets by any method deemed reasonably appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law (whether foreign or domestic) and general principles of equity;

(o)     administer the Litigation Trust's tax obligations, including filing tax returns and other reports (including any amended returns or claims for refund), paying tax obligations and representing the interest and account of the Litigation Trust before any taxing authority in all matters, including, without limitation, any action, suit, proceeding, audit or examination;

(p)     in the event that the Litigation Trust shall fail or cease to qualify as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d), in consultation with the Litigation Trust Oversight Committee, take any and all necessary actions as it shall reasonably deem appropriate to have such assets treated as held by an entity classified as a partnership for U.S. federal tax purposes;

(q)     calculate and make distributions to the Litigation Trust Beneficiaries in accordance with this Agreement and the Plan (including, without limitation, through a Disbursing Agent, the Claims Ombudsman, or another applicable intermediary);

(r)     invest Cash, as available, and any income earned thereon;

(s)     retain, compensate, and employ Litigation Trust Professionals to represent the Litigation Trust and, subject to Section 5.12, Litigation Trustee Professionals to represent the Litigation Trustee, as applicable;

(t)     determine and cause the Litigation Trust to satisfy any and all liabilities created, incurred, or assumed by the Litigation Trust in accordance with the Plan, the Confirmation Order, and/or this Agreement, as applicable;

(u)     dissolve, wind down, and terminate the Litigation Trust in accordance with the terms of this Agreement; and

(v)     take any other actions not inconsistent with the provisions hereof, the Plan, and/or the Confirmation Order that the Litigation Trustee deems reasonably necessary or desirable in connection with the foregoing functions or the management of the Litigation Trust and exercise such other powers as may be vested in the Litigation Trustee pursuant to applicable law, the Plan, the Confirmation Order, this Agreement, or any order of the Bankruptcy Court, that are determined to be reasonably necessary and proper to carry out the obligations of the Litigation Trustee in relation to the Litigation Trust.

5.3     Reserved.

23

FBG_CH1_00092439

5.4     <u>Limitations on Power and Authority of the Litigation Trustee</u>.  Notwithstanding anything in this Agreement to the contrary, the Litigation Trustee will not have the authority to do any of the following:

(a)     take or cause the Litigation Trust to take any action in contravention of the Plan, the Confirmation Order, or this Agreement;

(b)     take or cause the Litigation Trust to take any action that would make it impossible to carry on the activities of the Litigation Trust;

(c)     possess property or permit the Litigation Trust to possess property or assign the Litigation Trust's rights in specific property for any purpose other than as provided herein;

(d)     cause or permit the Litigation Trust to engage in any trade or business or utilize or dispose of any part of the Litigation Trust Assets or the proceeds, revenue, or income therefrom in furtherance of any trade or business;

(e)     receive or cause or permit the Litigation Trust to receive transfers of any listed stocks or securities or any readily marketable assets or any operating assets of a going business to the extent that the Litigation Trust receiving any such investment would jeopardize treatment of the Litigation Trust as a "liquidating trust" for U.S. federal income tax purposes under Treasury Regulations Section 301.7701-4(d) or any successor provision thereof;

(f)     receive or retain (i) any operating assets of an operating business, (ii) a partnership interest in a partnership that holds operating assets, or (iii) fifty percent (50%) or more (in either vote or value) of the interests of any entity that is treated as a corporation for U.S. federal income tax purposes with operating assets (or receive or retain or cause the Litigation Trust to receive or retain any such asset or interest that would jeopardize the treatment of the Litigation Trust as a "liquidating trust" for U.S. federal income tax purposes under Treasury Regulations Section 301.7701-4(d) or any successor provision thereof); *provided* that the Litigation Trust may form entities classified as C corporations for U.S. federal income tax purposes in order to hold certain assets that the Litigation Trustee determines will not result in jeopardizing the treatment of the Litigation Trust as a "liquidating trust" for U.S. federal income tax purposes under Treasury Regulations Section 301.7701-4(d);

(g)     take any other action or engage in any investments or activities that would jeopardize treatment of the Litigation Trust as a "liquidating trust" for U.S. federal income tax purposes under Treasury Regulations Section 301.7701-4(d), or any successor provision thereof; or

(h)     cause the Litigation Trust to issue any Litigation Trust Interests other than as expressly contemplated by the Plan and the Confirmation Order.

5.5     <u>Reports</u>.

(a)     <u>Financial and Status Reports</u>.  [The fiscal year of the Litigation Trust shall be the calendar year.  Within ninety (90) days after the end of each calendar year during the term of the Litigation Trust, and as soon as practicable upon termination of the Litigation Trust, the

FBG_CH1_00092440

Litigation Trustee shall make available to the applicable Litigation Trust Beneficiaries appearing in the Litigation Trust Register as of the end of such period or such date of termination, a written report including: (i) unaudited financial statements of the Litigation Trust for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant employed by the Litigation Trust) reflecting the result of such procedures relating to the financial accounting administration of the Litigation Trust as may be adopted by the Litigation Trustee; (ii) a summary description of any action taken by the Litigation Trust which, in the judgment of the Litigation Trustee, materially affects the Litigation Trust and of which notice has not previously been given to the Litigation Trust Beneficiaries; *provided* that any such descriptions shall not include any privileged or confidential information of the Litigation Trust; (iii) a description of the progress of liquidating the Litigation Trust Assets and making distributions to the Litigation Trust Beneficiaries, which description shall include a written report providing, among other things, a summary of the litigation status of the Litigation Trust Assets transferred to the Litigation Trust, any settlements entered into by the Litigation Trust with respect to the Litigation Trust Assets, the Litigation Trust Proceeds recovered to date, and the distributions made by the Litigation Trust to date; *provided* that any such descriptions shall not include any privileged or confidential information of the Litigation Trust; (iv) a summary of public material litigation developments; and (v) any other material information relating to the Litigation Trust Assets and the administration of the Litigation Trust deemed appropriate to be disclosed by the Litigation Trustee; *provided* in each case that, subject to consultation with the Litigation Trust Oversight Committee, a report shall not be provided to any Litigation Trust Beneficiary(ies) if doing so could negatively impact any action undertaken by the Litigation Trust to maximize the value of the Litigation Trust Assets. Subject to the foregoing, the Litigation Trustee may post reports on a website or other electronic depository maintained by or on behalf of the Litigation Trust and accessible to Litigation Trust Beneficiaries in lieu of providing on an individualized basis.][3]

(b) <u>Strategic Plan and Budget(s)</u>. The Litigation Trustee shall prepare a strategic plan and budget(s) for the Litigation Trust in such detail as is reasonably requested from time to time by the Litigation Trust Oversight Committee, which strategic plan and budget(s), including any modifications and/or permitted variances thereto, shall be subject to the consent of the Litigation Trust Oversight Committee pursuant to <u>Article VI</u>.

(c) <u>Reserved</u>.

5.6 <u>Power to Contract</u>. In furtherance of the purpose of the Litigation Trust, and except as otherwise specifically restricted in the Plan, the Confirmation Order, or this Agreement, the Litigation Trustee shall have the right and power on behalf of the Litigation Trust, and also may cause the Litigation Trust, to enter into any contracts, instruments, or other agreements or commitments binding the Litigation Trust, and to execute, acknowledge, and deliver any and all contracts, instruments, or other agreements or commitments that are necessary or deemed by the Litigation Trustee to be consistent with and advisable in furthering the purpose of the Litigation Trust.

---

[3] Under continued review.

25

FBG_CH1_00092441

      5.7     <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Litigation Trustee from taking or refraining to take any action on behalf of the Litigation Trust that, based upon the advice of counsel or other Litigation Trust Professionals or Litigation Trustee Professionals, the Litigation Trustee determines in good faith that it is obligated to take or to refrain from taking in the performance of any duty that the Litigation Trustee may owe the Litigation Trust Beneficiaries or any other Person pursuant to the Plan, Confirmation Order, or this Agreement.

      5.8     <u>Authority to Prosecute and Settle Claims and Causes of Action</u>.

      (a)     Subject to the provisions of this Agreement, including Article VI and <u>Article IX</u> hereof, the Litigation Trust shall prosecute, pursue, compromise, settle, monetize, or abandon any and all Litigation Trust Assets. Subject to the provisions of this Agreement, including Article VI hereof, the Litigation Trustee shall have the absolute right to cause the Litigation Trust to pursue, not pursue, release, abandon, and/or settle any and all Claims and Causes of Action belonging to the Litigation Trust (including any counterclaims asserted against the Litigation Trust) as the Litigation Trustee determines is in the best interests of the Litigation Trust Beneficiaries, and consistent with the purposes of the Litigation Trust.

      (b)     To the extent that any action has been taken to prosecute or otherwise resolve any Claims and/or Causes of Action belonging to the Litigation Trust prior to the Confirmation Date by the FBG Debtors, on the Confirmation Date, the Litigation Trust shall be substituted for the FBG Debtors in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable to the litigation by Bankruptcy Rules 7025 and 9014, as applicable, and, if desired by the Litigation Trust, the caption with respect to such pending litigation shall be changed to the following "FBG Victims Litigation Trust v. [Defendant]." Without limiting the foregoing, the Litigation Trustee shall cause the Litigation Trust to take any and all actions necessary or prudent (in the Litigation Trustee's reasonable discretion) to intervene as plaintiff, movant, or additional party, as appropriate, with respect to any applicable Claim and/or Cause of Action. For purposes of exercising its powers, the Litigation Trust, if desired by the Litigation Trust, shall be deemed to be a representative of the FBG Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

      (c)     On the Confirmation Date, the Litigation Trustee shall be substituted as the party in interest for the Creditors' Committee without the need for any court order or Final Order with respect to any (i) motion filed by the Creditors' Committee seeking standing to assert any cause of action on behalf of the FBG Debtors not released or waived under the Plan; and (ii) complaint filed by the Creditors' Committee on behalf of the FBG Debtors against any party in interest pursuant to a grant of standing by the Bankruptcy Court. The Litigation Trustee shall inherit all "challenge" rights possessed by the Creditors' Committee not otherwise waived in the Plan on the same terms and with the same deadlines as possessed by the Creditors' Committee on the Confirmation Date, and to the extent the Creditors' Committee is not bound by any stipulation of the Debtors pending resolution of such "challenge," the Litigation Trustee shall not be bound by such stipulation. For the avoidance of doubt, nothing in this paragraph modifies or affects the expiration of the Challenge Deadline (as defined in the DIP Order) as set forth in the Plan.

FBG_CH1_00092442

(d)     Subject to the provisions of this Agreement, including Article VI hereof, any determinations by the Litigation Trust with regard to the amount or timing of settlement or other disposition of any Claims and/or Causes of Action belonging to the Litigation Trust settled in accordance with the terms of this Agreement, shall be conclusive and binding on the Litigation Trust Beneficiaries.

5.9     <u>Liquidation of Litigation Trust Assets</u>.  The Litigation Trustee, in the exercise of its reasonable business judgment, shall, in an expeditious but orderly manner and subject to the other provisions of this Agreement, including Article VI hereof, cause the Litigation Trust to liquidate and convert to Cash the Litigation Trust Assets, make timely distributions in accordance with the terms of this Agreement, and not unduly prolong the existence of the Litigation Trust. The Litigation Trustee shall exercise reasonable business judgment and cause the Litigation Trust to liquidate the Litigation Trust Assets to maximize net recoveries to the Litigation Trust Beneficiaries in accordance with the Plan, the Confirmation Order, and this Agreement; *provided* that the Litigation Trustee shall take into consideration the risks, timing, and costs of potential actions (including any material adverse tax effects and related costs) in making determinations as to the methodologies to be employed to maximize such recoveries.  Subject to the provisions of this Agreement, including Article VI hereof, such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment, or dismissal of any or all of the Litigation Trust Assets or otherwise, or through the sale or other disposition of the Litigation Trust Assets (in whole or in combination).  Subject to the provisions of this Agreement, including Article VI hereof and any budget approved in accordance with <u>Section 5.5(b)</u>, the Litigation Trustee may cause the Litigation Trust to incur reasonable and necessary expenses in connection with the liquidation of the Litigation Trust Assets and distribution of the Litigation Trust Proceeds.

5.10    <u>Distributions</u>.

(a)     The Litigation Trust Proceeds will be distributed in accordance with the Litigation Trust Waterfall set forth in Section 6.5 of the Plan (and excerpted for convenience in **Exhibit D** hereto).

(b)     The Litigation Trustee shall cause the Litigation Trust to make distributions of the Litigation Trust Proceeds to the applicable Litigation Trust Beneficiaries only in accordance with the terms of the Plan, the Confirmation Order, and this Agreement after Litigation Trust Proceeds are received by the Litigation Trust, and only to the extent that the Litigation Trust has sufficient Litigation Trust Proceeds available to make such distributions in accordance with and to the extent provided for in this Agreement, including <u>Sections 6.10(k)</u> and 6.11<u>(b)</u> hereof, and after funding any reserves deemed necessary or appropriate by the Litigation Trustee.

(c)     In accordance with the Plan, this Agreement, and the Confirmation Order, to the extent practicable, including pursuant to <u>Section 5.10(a)</u> hereof, and subject to the requirements of Treasury Regulations Section 301.7701-4(d), the guidance in IRS Revenue Procedure 94-45, 1994-2 C.B. 684, and <u>Section 3.5</u> hereof, the Litigation Trustee shall cause the Litigation Trust to distribute, no less frequently than annually, all Available Cash (including, but not limited to, the net income and the Litigation Trust Proceeds, if any, from any disposition of Litigation Trust Assets, any Cash received on account of or representing Litigation Trust Proceeds, and treating as Cash for purposes of this <u>Section 5.10(c)</u> any permitted investments under

27

FBG_CH1_00092443

Section 5.14 below) to the applicable Litigation Trust Beneficiaries in accordance with the Litigation Trust Waterfall after taking into consideration reserves reasonably necessary to maintain the value of the Litigation Trust Assets or to meet claims and contingent liabilities and any other restriction under this Agreement. For the avoidance of doubt, this Section 5.10(c) shall not prohibit the Litigation Trust from (i) using the Litigation Trust Assets to timely pay obligations and liabilities of the Litigation Trust duly incurred in accordance with this Agreement, including, without limitation, with respect to the payment of any taxes or other amounts owed to Governmental Units and to timely compensate Litigation Trust Professionals, Litigation Trustee Professionals, and UCC Member Professionals engaged by the Litigation Trust, the Litigation Trustee, and/or the UCC Member, as applicable, or the counsel and advisors engaged by the Delaware Trustee, the Registrar, or the Disbursing Agent, in each case, in accordance with the terms of this Agreement or (ii) complying with Section 5.10(b) above.

(d)     The Litigation Trust shall make distributions to Litigation Trust Beneficiaries at the last-known address for each such Litigation Trust Beneficiary as indicated on the Litigation Trust's, the Registrar's, or the Claims Ombudsman's records, as applicable and as of the applicable distribution date. Distributions on account of Class 1 Litigation Trust Interests, Class 2 Litigation Trust Interests, Class 3(a) Litigation Trust Interests, and Class 3(c) Litigation Trust Interests shall be made to Wilmington Savings Fund Society, FSB, as Disbursing Agent, and distributed by Wilmington Savings Fund Society, FSB, as Disbursing Agent, to the applicable holders of Class 1 Litigation Trust Interests, Class 2 Litigation Trust Interests, Class 3(a) Litigation Trust Interests, and/or Class 3(c) Litigation Trust Interests. Distributions on account of Class 3(b) Litigation Trust Interests shall be made to the Claims Ombudsman and distributed by the Claims Ombudsman to the applicable recipients of the Class 3(b) Litigation Trust Interests in accordance with Section 7.7 hereof. Any distribution of Cash by the Litigation Trust shall be made by the Litigation Trust via (i) a check drawn on, or (ii) wire transfer from, a bank, escrow, or other account established in the name of the Litigation Trust at a domestic bank selected by the Litigation Trustee, the selection of which shall be in the sole discretion of the Litigation Trustee. If any distribution to any Litigation Trust Beneficiary is returned as undeliverable, no distribution to such Litigation Trust Beneficiary shall be made unless and until the Litigation Trustee or, as applicable, the Registrar or Claims Ombudsman, is notified in writing of the then-current address of such holder, at which time all currently due missed distributions shall be made to such Litigation Trust Beneficiary on the next distribution date; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of [six (6) months] from the applicable distribution date. After such date, all "unclaimed property" or interests in property shall revert to the Litigation Trust (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) for redistribution in accordance with the terms of the Plan and this Agreement, and the claim of any Litigation Trust Beneficiary to such property or interest in property shall be forever barred. Nothing contained herein shall require the Litigation Trustee to attempt to locate any holder of a Litigation Trust Interest.

(e)     The Litigation Trustee shall have the authority to cause the Litigation Trust to enter into agreements with one or more Disbursing Agents to facilitate the distributions required under the Plan and this Agreement; *provided* that as of the Confirmation Date Wilmington Savings Fund Society, FSB shall be appointed as Disbursing Agent for the holders of Class 1 Litigation Trust Interests, Class 2 Litigation Trust Interests, Class 3(a) Litigation Trust Interests, and Class

28

FBG_CH1_00092444

**DEBTORS' EXHIBIT NO. 178**
**Page 45 of 360**

3(c) Litigation Trust Interests. The Litigation Trust may pay to Wilmington Savings Fund Society, FSB, as Disbursing Agent, all reasonable and documented fees and expenses without the need for any approvals, authorizations, actions, or consents, subject to Article VI.

(f)    The Litigation Trustee, in the Litigation Trustee's reasonable judgment, may, in accordance with Section 9.4 hereof, cause the Litigation Trust to deduct and withhold taxes required by this Agreement, any law, regulation, rule, ruling, directive, treaty, or other governmental requirement from any and all amounts otherwise payable or distributable to any Entity or person.

(g)    Notwithstanding anything herein to the contrary, the Litigation Trust shall not be required to make, on account of any Litigation Trust Interests:  (i) payments of fractions of dollars; (ii) payments of interest; or (iii) with respect to Class 1 Litigation Trust Interests, Class 2 Litigation Trust Interests, Class 3(a) Litigation Trust Interests, and Class 3(c) Litigation Trust Interests, a distribution if the amount of Cash to be distributed (A) is less than $500 to any one claimant in a single distribution or (B) does not exceed any transaction costs associated with such distribution; *provided* that, with respect to clause (iii) any funds so withheld and not distributed shall be held in reserve and distributed to such claimant in subsequent distributions except if the aggregate distributions (including the final distribution) to be made by the Litigation Trust to such claimant is less than $500, in which case such amount shall be included in the Winding Up Process (defined below) set forth in Section 10.1 of this Agreement.

(h)    Any check issued by the Litigation Trust on account of a Litigation Trust Interest shall be null and void if not negotiated within one hundred twenty (120) days after the issuance of such check.  Requests for reissuance of any check shall be made directly to the Litigation Trustee by the holder of the relevant Litigation Trust Interest with respect to which such check originally was issued.  If any holder of a Litigation Trust Interest holding an un-negotiated check does not request reissuance of that check within six (6) months after the date the check was mailed or otherwise delivered to the holder, the entitlement of the holder regarding such un-negotiated check and the funds represented thereby shall be released and the holder thereof shall be forever barred, estopped, and enjoined from asserting any Claim with respect to such un-negotiated check and the funds represented thereby against the Litigation Trust, including against the Litigation Trustee, any Disbursing Agent, or the Claims Ombudsman.  In such cases, any Cash held for payment on account of such un-negotiated check shall be property of the Litigation Trust, free and clear of any Claims of such holder with respect thereto.  Nothing contained herein shall require the Litigation Trustee to attempt to locate any holder of a Litigation Trust Interest.

(i)    Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

5.11    Retention of Litigation Trust Professionals.

(a)    Counsel and Other Professionals.  Except as otherwise provided in the Plan, the Confirmation Order, or this Agreement, the Litigation Trust may (subject to the consent rights of the Litigation Trust Oversight Committee set forth in Article VI), but shall not be required to, retain such professionals, consultants, and advisors to aid it in fulfilling its obligations hereunder, including, without limitation, to monetize the Litigation Trust Assets, review and/or audit the

29

FBG_CH1_00092445

financial books and records of the Litigation Trust, and prepare and file any tax returns or informational returns for the Litigation Trust (the "Litigation Trust Professionals") as the Litigation Trustee, in good faith, deems necessary and on whatever commercially reasonable and appropriate fee arrangements the Litigation Trustee, in good faith, deems appropriate, including contingency fee arrangements (in each case, without application to or order of the Bankruptcy Court). The Litigation Trust may pay the reasonable and documented salaries, fees, and expenses of such Persons in the ordinary course of business and neither the Litigation Trustee, the Delaware Trustee, the Registrar, the Claims Ombudsman, any Disbursing Agent, any Member, nor any Litigation Trust Beneficiary shall have any liability or obligation for any fees or expenses of any such professionals. For the avoidance of doubt, prior retention in any capacity in the Debtors' bankruptcy cases on behalf of the Debtors, their Estates, the Ad Hoc Group, or any creditors shall not, in and of itself, preclude the Litigation Trust's retention of such professionals, consultants, or other Persons; *provided* that an actual or apparent conflict of interest shall be disqualifying.

(i)     Litigation Trust Professionals shall be required to submit reasonably detailed invoices on a monthly basis to the Litigation Trustee and include in such invoices a description of the work performed and who performed such work, and if billing on an hourly basis, the hourly rate of each such person, plus an itemized statement of expenses. The Litigation Trust may pay those invoices [•] days after copies of such invoices are provided to the Litigation Trustee and the Litigation Trust Oversight Committee, without Bankruptcy Court approval, unless the Litigation Trustee (in consultation with the Litigation Trust Oversight Committee) objects. If there is a dispute as to a part of an invoice, the Litigation Trust shall pay the undisputed portion and any disputed amounts shall be resolved as set forth in the applicable retention agreements with such professionals.

(b)     Employees or Consultants. Except as otherwise provided in the Plan, the Confirmation Order, or this Agreement, with the consent rights of the Litigation Trust Oversight Committee set forth in Article VI hereof, the Litigation Trust may, but shall not be required to, hire or employ any Person as employee or consultant that the Litigation Trustee deems reasonably appropriate to aid it in fulfilling its obligations under this Agreement and the Plan, and on whatever reasonable and/or customary fee arrangements the Litigation Trustee deems appropriate, including consulting arrangements (in each case, without application to or order of the Bankruptcy Court). The Litigation Trust may pay the reasonable and documented salaries, fees, and expenses of such Persons in the ordinary course of business and neither the Litigation Trustee, the Delaware Trustee, the Registrar, the Claims Ombudsman, any Disbursing Agent, any Member, nor any Litigation Trust Beneficiary shall have any liability or obligation for any fees or expenses of any such Person. For the avoidance of doubt, prior retention in any capacity in the Debtors' bankruptcy cases on behalf of the Debtors, their Estates, the Ad Hoc Group, or any creditors shall not, in and of itself, preclude the Litigation Trust's retention of such Person; *provided* that an actual or apparent conflict of interest shall be disqualifying.

(i)     Any such Person hired, employed, or retained by the Litigation Trust shall be required to submit to the Litigation Trustee periodic invoices containing information with sufficient detail to assess the reasonableness of the fees and/or charges. The Litigation Trust may pay those invoices [•] days after copies of such invoices are provided to the Litigation Trustee and the Litigation Trust Oversight

30

FBG_CH1_00092446

DEBTORS' EXHIBIT NO. 178
Page 47 of 360

Committee, without Bankruptcy Court approval, unless the Litigation Trustee (in consultation with the Litigation Trust Oversight Committee) objects.  If there is a dispute as to a part of an invoice, the Litigation Trust shall pay the undisputed portion and any disputed amounts shall be resolved as set forth in the applicable retention agreements with such Persons.

5.12    Retention of Litigation Trustee Professionals.  Except as otherwise provided in the Plan, the Confirmation Order, or this Agreement, the Litigation Trustee (subject to Section 5.5(b) and the consent rights of the Litigation Trust Oversight Committee set forth in Article VI) may, but shall not be required to, retain such professionals, consultants, and advisors to aid it in fulfilling its obligations under the Plan, the Confirmation Order, and this Agreement (such professionals, the "Litigation Trustee Professionals") as the Litigation Trustee, in good faith, deems necessary and on whatever commercially reasonable and appropriate fee arrangements the Litigation Trustee, in good faith, deems appropriate (without application to or order of the Bankruptcy Court).  The Litigation Trust may pay the reasonable and documented salaries, fees, and expenses of such Persons in the ordinary course of business and neither the Litigation Trustee, the Delaware Trustee, the Registrar, the Claims Ombudsman, any Disbursing Agent, any Member, nor any Litigation Trust Beneficiary shall have any liability or obligation for any fees or expenses of any such professionals.  For the avoidance of doubt, prior retention in any capacity in the Debtors' bankruptcy cases on behalf of the Debtors, their Estates, the Ad Hoc Group, or any creditors shall not, in and of itself, preclude the Litigation Trustee's retention of such professionals, consultants, or other Persons; *provided* that an actual or apparent conflict of interest shall be disqualifying.

(a)    Litigation Trustee Professionals shall be required to submit reasonably detailed invoices on a monthly basis to the Litigation Trustee and include in such invoices a description of the work performed and who performed such work, and if billing on an hourly basis, the hourly rate of each such person, plus an itemized statement of expenses.  The Litigation Trust may pay those invoices [•] days after copies of such invoices are provided to the Litigation Trustee and the Litigation Trust Oversight Committee, without Bankruptcy Court approval, unless the Litigation Trustee (in consultation with the Litigation Trust Oversight Committee) objects.  If there is a dispute as to a part of an invoice, the Litigation Trust shall pay the undisputed portion and any disputed amounts shall be resolved as set forth in the applicable retention agreements with such Litigation Trustee Professionals.

5.13    Management of Litigation Trust Assets.

(a)    Except as otherwise provided in this Agreement, including with respect to the consent rights of the Litigation Trust Oversight Committee set forth in Article VI, and subject to the Treasury Regulations governing "liquidating trusts" within the meaning of Treasury Regulations Section 301.7701-4(d) without prior or further authorization, the Litigation Trustee may control and exercise authority over the Litigation Trust Assets, over the management and disposition thereof, and over the management and conduct of the Litigation Trust, in each case, as necessary or advisable to enable the Litigation Trustee to fulfill the intents and purposes of this Agreement.  No Person dealing with the Litigation Trust will be obligated to inquire into the authority of the Litigation Trustee in connection with the acquisition, management, or disposition of the Litigation Trust Assets.

31

FBG_CH1_00092447

(b)      In connection with the management and use of the Litigation Trust Assets and except as otherwise expressly limited in this Agreement, including with respect to the consent rights of the Litigation Trust Oversight Committee set forth in Article VI, the Litigation Trust will have, in addition to any powers conferred upon the Litigation Trust by any other provision of this Agreement, the power to take any and all actions as, in the Litigation Trustee's reasonable discretion, are necessary or advisable to effectuate the primary purposes of the Litigation Trust, including, without limitation, the power and authority to (i) pay any taxes and other obligations owed by the Litigation Trust; (ii) engage and/or compensate the Litigation Trust Professionals, Litigation Trustee Professionals, and the UCC Member Professionals, as applicable; (iii) commence and/or pursue any and all actions involving the Litigation Trust Assets that could arise or be asserted at any time, unless otherwise limited, waived, released, compromised, settled, or relinquished in the Plan, the Confirmation Order, or this Agreement; and (iv) enact and implement the Plan, this Agreement, and applicable orders of the Bankruptcy Court (including, as applicable, the Confirmation Order).

5.14    Investment of Cash.  The right and power of the Litigation Trustee to cause the Litigation Trust to invest the Litigation Trust Assets, the Litigation Trust Proceeds, and/or any income earned by the Litigation Trust shall be limited to the right and power to invest such assets only in Cash (to be held in interest-bearing accounts) and U.S. Government securities as defined in section 2(a)(16) of the Investment Company Act; *provided* that (a) the scope of any such permissible investments shall be further limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulations section 301.7701-4(d) may be permitted to hold pursuant to the Treasury Regulations or the Internal Revenue Service guidelines (whether set forth in Internal Revenue Service rulings, other Internal Revenue Service pronouncements, or otherwise), (b) the Litigation Trust may retain any Litigation Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly liquidation of such assets, and (c) the Litigation Trust may expend the Litigation Trust Assets (i) as reasonably necessary to meet contingent liabilities and maintain the value of the Litigation Trust Assets pending liquidation, (ii) to pay reasonable and documented expenses (including, but not limited to, any taxes imposed on the Litigation Trust or reasonable fees and expenses in connection with liquidating the Litigation Trust Assets) authorized under this Agreement, and (iii) to satisfy other liabilities incurred or assumed by the Litigation Trust (or to which the Litigation Trust Assets are otherwise subject) in accordance with, and to the extent set forth in, the Plan or this Agreement. Subject to the foregoing, the Litigation Trustee is authorized (but not directed), with respect to any trust power or authority that the Litigation Trustee may exercise under this Agreement, to acquire and retain investments on behalf of the Litigation Trust not regarded as traditional for trusts, including investments that would be forbidden or would be regarded as imprudent, improper or unlawful by the "prudent person" rule, "prudent investor" rule, 12 Del. C. § 3302, any rule or law concerning the duty of loyalty, any rule or law limiting, prescribing, or voiding or making voidable any interested party or self-dealing transaction, or any other rule or law which restricts a fiduciary's capacity to invest.  Notwithstanding the foregoing, the Litigation Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Litigation Trustee's administration of the Litigation Trust.  Neither the Litigation Trust nor the Litigation Trustee shall have any liability for interest or producing income on any moneys received by them and held for distribution or payment to the Litigation Trust Beneficiaries except as such interest shall actually be received by the Litigation Trust, which

32

FBG_CH1_00092448

shall be distributed as provided in this Agreement, the Plan, and/or the Confirmation Order, as applicable.

5.15    Books and Records. The Litigation Trustee shall maintain or cause the Litigation Trust to maintain books and records relating to the Litigation Trust Assets (including income realized therefrom and the Litigation Trust Proceeds) and the payment of, costs and expenses of, and liabilities for Claims against or which, pursuant to the Plan, are the responsibility of the Litigation Trust in such detail and for such period of time as may be necessary to enable the Litigation Trust to make full and proper accounting in respect thereof and in accordance with applicable law. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Litigation Trust. Nothing in this Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust or as a condition for managing any payment or distribution out of the Litigation Trust Assets, except as may otherwise be set forth in the Plan or the Confirmation Order.

5.16    Other Payments. On or after the Confirmation Date, the Litigation Trustee shall cause the Litigation Trust to pay all reasonable and documented fees and expenses (to the extent not already paid) owed to the Ad Hoc Group Advisors with respect to the Litigation Trust solely to the extent needed to implement the terms of the Plan in relation to Allowed Lender Claims and issuance and reconciliation of Class 1 Litigation Trust Interests, Class 2 Litigation Trust Interests, Class 3(a) Litigation Trust Interests, and Class 3(c) Litigation Trust Interests.

## ARTICLE VI
## RIGHTS, POWERS, AND DUTIES OF LITIGATION TRUST OVERSIGHT COMMITTEE

6.1    The Litigation Trust Oversight Committee.

(a)    Initial Composition. Prior to a Class 2 Satisfaction Event (defined below) and except to the extent expanded as set forth below, the Litigation Trust Oversight Committee shall consist of four (4) Members. Prior to a Class 2 Satisfaction Event (defined below) and except to the extent expanded as set forth below, three (3) Members will be appointed by the Ad Hoc Group SteerCo (each, an "AHG Member") and one Member will be appointed by the Creditors' Committee (the "UCC Member"). The initial Members of the Litigation Trust Oversight Committee are identified on **Exhibit B** hereto. The Litigation Trust Oversight Committee may, by majority vote, expand the size of the Litigation Trust Oversight Committee either (a) prior to the Class 2 Satisfaction Event, to include an additional UCC Member or (b) following the Class 2 Satisfaction Event, to include an additional AHG Member.

(b)    Role of the Litigation Trust Oversight Committee. In addition to any and all other rights, powers, and authority set forth in this Agreement, the Litigation Trust Oversight Committee shall have right, power, and authority to monitor and oversee the management and administration of the Litigation Trust, including without limitation regarding the actions taken by the Litigation Trustee on behalf of the Litigation Trust or which the Litigation Trustee has caused the Litigation Trust to take; *provided* that to the fullest extent permitted by applicable law, the Members of the Litigation Trust Oversight Committee shall have no duty to monitor any other

33

FBG_CH1_00092449

Member, the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman, the Registrar, the Disbursing Agents, the Litigation Trust, or any other Person, or to determine whether or not any other Member, the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman, the Registrar, the Disbursing Agents, the Litigation Trust, or any other Person is satisfying their responsibilities hereunder. To the fullest extent permitted by applicable law, the Members of the Litigation Trust Oversight Committee shall have no liability for the actions or inactions of any other Member, the Ligation Trustee, the Delaware Trustee, the Claims Ombudsman, the Registrar, the Disbursing Agents, the Litigation Trust, or any other Person. Additionally, as set forth herein, the Litigation Trust Oversight Committee shall have the right, power, and authority to grant or withhold consent to certain actions proposed to be taken or decisions proposed to be made by the Litigation Trustee or the Litigation Trust, as applicable, which proposed actions and decisions are referred to herein as Major Decisions and Sacred Rights, as applicable, which consent shall be granted or withheld, in each case, in accordance with the voting thresholds set forth in Section 6.12 below (the "Voting Thresholds"). Unless otherwise provided herein, if any tie breaker vote is needed, the Litigation Trustee shall provide such vote.

6.2     Initial Member Appointment and Service Requirements.

(a)     All Members. In order to sit on the Litigation Trust Oversight Committee, each Member must agree to standard and customary common interest, privilege, material non-public information, and any other confidentiality restrictions that the Litigation Trustee and applicable Litigation Trust Professionals require to protect the sensitive nature of the Litigation Trust Assets.

(b)     AHG Members. On the Confirmation Date, each AHG Member will be appointed by the Ad Hoc Group SteerCo. Following the Confirmation Date, each AHG Member must at all relevant times hold both Class 1 Litigation Trust Interests and Class 2 Litigation Trust Interests, be a principal or employee associated with a holder of both Class 1 Litigation Trust Interests and Class 2 Litigation Trust Interests, or be a Representative Member (as defined below). Following the Class 2 Satisfaction Event, the AHG Member must at all relevant times hold Class 1 Litigation Trust Interests, be a principal or employee associated with a holder of Class 1 Litigation Trust Interests, or be a Representative Member.

(c)     UCC Member.

(i)     On the Confirmation Date, one (1) member (or employee of a member) of the Creditors' Committee will be appointed by the Creditors' Committee as the initial UCC Member; *provided* that such member (A) has not withdrawn, sold or transferred its Allowed General Unsecured Claim against an FBG Debtor, (B) is the holder of an Allowed General Unsecured Claim against an FBG Debtor, and (C) meets the additional criteria set forth in Section 6.2(c)(ii)(F) below (such members of the Creditors' Committee meeting the foregoing criteria, collectively, the "UCC Candidates").

(ii)     Following the Confirmation Date, any UCC Candidate (or employee of a UCC Candidate) may be selected as a replacement or additional UCC Member pursuant to Section 6.5(c). If a replacement or additional UCC Member is to be

34

FBG_CH1_00092450

appointed pursuant to Section 6.5(c), and no UCC Candidates (or their employees) wish to be a UCC Member, a UCC Member may be appointed pursuant to Section 6.5(c) from the pool of candidates that, as of the time of such appointment and at all relevant times following such appointment: (A) hold (or are employees of a holder of) an Allowed General Unsecured Claim against an FBG Debtor, in each case, that is not subject to Dispute by the Claims Ombudsman and in excess of $10 million, and that would be entitled to recover from the Litigation Trust exclusively as a Class 3(b) Litigation Trust Interest, (B) are not actual or potential defendants or the employees of or otherwise related or affiliated with actual or potential defendants (other than a third party defendant subject to a cross claim by an actual or potential defendant) in any litigation that the Litigation Trust is pursuing (including pursuant to any joint prosecution agreement that the Litigation Trust may be a party to); (C) are not (or are not employees of) of a Government Unit, taxing authority, or affiliated with any other governmental or quasi-governmental entity; (D) hold (or are employees of a holder of) an Allowed General Unsecured Claim against an FBG Debtor; (E) have at least five (5) years of full-time experience in sophisticated financial matters (for example, as a chief executive officer or chief financial officer of one or more organizations, or as a financial professional in an accounting, consulting, or management capacity, or other comparable experience); and (F) are not currently serving (or reasonable anticipate serving) as a trustee, member, or board member (or any other similar position, whether paid or unpaid) of any other trust or other similar vehicle formed (including that consolidates, aggregates, and/or prosecutes the claims of multiple unaffiliated entities) in connection with non-Estate Claims that seeks to sue common defendants of the Litigation Trust (collectively, the "UCC Candidate Criteria").

6.3     Resignation.  A Member may resign by giving not less than thirty (30) days' prior written notice thereof to the Litigation Trustee and the other Members.  Such resignation shall become effective on the earlier to occur of (i) the date specified in such notice and (ii) the appointment of a successor in accordance with Section 6.4 below.  Notwithstanding the foregoing, in accordance with Section 10.1, upon the occurrence of the Termination Date, all of the Members shall be deemed, automatically and without further action by any of them, to have resigned.

6.4     Removal.

(a)     A majority of the Litigation Trust Oversight Committee may remove any Member for Cause or Disability.  Any AHG Member may be removed by the Ad Hoc Group SteerCo with or without cause and without any approval or consent by any other party.  Any Representative Member (defined below) may be removed by the unanimous consent of the other two (2) AHG Members without any approval or consent by any other party.

(b)     For purposes of Sections 4.4, 6.4, and 7.4 of this Agreement:

(i)     "Cause" shall mean (i) a Person's willful failure to perform his/her/its material duties hereunder (including, without limitation, with respect to a Member or, to the extent applicable, the Litigation Trustee or the Claims Ombudsman, regular attendance at meetings of the Litigation Trust Oversight

35

FBG_CH1_00092451

DEBTORS' EXHIBIT NO. 178
Page 52 of 360

Committee), which is not remedied within thirty (30) days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his/her/its duties hereunder; or (v) a Person's breach of duties hereunder or an unresolved conflict of interest; and

(ii)     "Disability" of the Litigation Trustee, the Claims Ombudsman, or a Member who is a natural person shall have occurred if, as a result of such Person's incapacity due to physical or mental illness as determined by a physician selected by the Litigation Trust Oversight Committee, in the case of the Litigation Trustee or the Claims Ombudsman, or the Litigation Trustee, in the case of a Member, as applicable, and reasonably acceptable to the Litigation Trust Oversight Committee in the case of a selection by the Litigation Trustee, the Person shall have been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of one hundred eighty (180) days during any period of twelve (12) consecutive months.

6.5     Vacancies; Replacement of Members.

(a)     Appointment of a Successor or Additional Member.   In the event of a vacancy on the Litigation Trust Oversight Committee (whether by removal, death, resignation, increase in the number of Members pursuant to Section 6.1, or reconstitution pursuant to Section 6.6), a new Member may be appointed to fill such position as set forth below.   The appointment of a successor or additional Member shall be further evidenced by the Litigation Trustee's posting on a website or other electronic depository maintained by or on behalf of the Litigation Trust a notice of appointment, at the direction of the Litigation Trust Oversight Committee.   Immediately upon the appointment of any successor or additional Member, all rights, powers, duties, authority, and privileges of the predecessor Member (if any) hereunder will be vested in and undertaken by the successor or additional Member without any further act, and such successor or additional Member will not be liable personally for any act or omission of any applicable predecessor Member. Every successor or additional Member appointed hereunder shall execute, acknowledge, and deliver to the Litigation Trustee and, as applicable, the other Members an instrument accepting the appointment under this Agreement and agreeing to be bound hereto, and thereupon the successor or additional Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of a Member hereunder.

(b)     AHG Members.

(i)     If there is a vacancy in any AHG Member position, Ad Hoc Group SteerCo shall appoint a replacement or, if applicable, additional AHG Member to fill such vacancy.

(ii)     At any time, all of the AHG Members may unanimously agree to replace one AHG Member with a representative or proxy on the Litigation Trust Oversight Committee that is not a principal or employee associated with holders of

36

FBG_CH1_00092452

Class 1 Litigation Trust Interests and/or Class 2 Litigation Trust Interests (such member, a "Representative Member").

(iii)     If a Representative Member is appointed, it will have the same rights, duties, and voting powers as if it were an "AHG Member," including without limitation, for purposes of the right to vote with regard to consenting to approving any Major Decision or Sacred Right.

(iv)     The Representative Member may be replaced by the unanimous consent of two (2) of the other AHG Members without any approval or consent by any other party.

(c)     UCC Member(s).

(i)     If there is a vacancy in any UCC Member position, the Claims Ombudsman shall be in charge of coordinating the process for a replacement or additional UCC Member in accordance with the following procedures:

(A)     The UCC Candidates may, upon a majority vote (excluding the vote of any UCC Candidate that cannot satisfy the UCC Candidate Criteria), select the replacement or additional UCC Member from (1) among themselves or (2) the pool of holders of Allowed General Unsecured Claims against one or more FBG Debtors; *provided* that such appointee satisfies the UCC Candidate Criteria. Any candidate selected pursuant to clause (2) shall be interviewed by the Litigation Trustee and at least one AHG Member (with such interview(s) to be conducted virtually, at a mutually convenient time, and in a commercially reasonable manner).

(B)     In the event the UCC Candidates do not select a replacement or additional UCC Member within fourteen (14) calendar days after a vacancy, the Claims Ombudsman shall be authorized to appoint the replacement or additional UCC Member; *provided* that such replacement or additional UCC Member satisfies the UCC Candidate Criteria and shall be interviewed by the Litigation Trustee and at least one AHG Member (with such interview(s) to be conducted virtually, at a mutually convenient time, and in a commercially reasonable manner).

(C)     If no UCC Member is appointed by the Claims Ombudsman within thirty (30) calendar days after a vacancy, the Claims Ombudsman shall assume the responsibilities of the UCC Member until the UCC Member is appointed. Once a UCC Member is appointed, the Claims Ombudsman shall promptly inform the Litigation Trustee and the other Members.

(D)     If at any point in time, the Litigation Trust has an unavoidable need for a vote that implicates a Sacred Right and there is no duly appointed UCC Member, the Claims Ombudsman shall temporarily assume the responsibilities of the UCC Member.

6.6     Mandatory Reconstitution of the Litigation Trust Oversight Committee. The satisfaction of the Final Return Threshold shall constitute the "Class 2 Satisfaction Event." Upon

37

FBG_CH1_00092453

DEBTORS' EXHIBIT NO. 178
Page 54 of 360

the occurrence of the Class 2 Satisfaction Event, the Litigation Trust Oversight Committee shall be reconstituted as follows, subject to any expansion of the Litigation Trust Oversight Committee under Section 6.1:  (a) one (1) AHG Member and (b) two (2) UCC Members.

6.7     Compensation and Reimbursement of Expenses.  Members may be compensated by their employers, their appointing party, or otherwise.  No compensation shall be paid from Litigation Trust Assets or Trust Class 1 Funding Contributions, except as follows:

(a)     UCC Member.

(i)     The Litigation Trustee and the UCC Member may agree to compensation terms for the UCC Member in the amount of $125,000 per annum, paid as a ratable advance against distributions to the recipients of Class 3(b) Litigation Trust Interests.  There will be no clawback rights as to such compensation in the event such advance cannot be repaid.

(ii)     The Litigation Trustee and the UCC Member may also agree to additional compensation terms for the UCC Member; *provided* that such compensation shall be payable exclusively from amounts allocable to the recipients of Class 3(b) Litigation Trust Interests.

(b)     AHG Members.

(i)     The Litigation Trustee and any AHG Member may agree to compensation terms for any AHG Member in the amount of $125,000 per annum to be paid by the Litigation Trust to the AHG Member, prior to the Class 2 Satisfaction Event, as a ratable advance against distributions to holders of Class 1 Litigation Trust Interests and Class 2 Litigation Trust Interests, and following the Class 2 Satisfaction Event, as a ratable advance against distributions to holders of Class 1 Litigation Trust Interests.  There will be no clawback rights as to such compensation in the event such advance cannot be repaid.

(ii)     The Litigation Trustee and any AHG Member may also agree to additional compensation terms for any AHG Member; *provided* that such compensation shall be payable, prior to the Class 2 Satisfaction Event, as a ratable advance against distributions to holders of Class 1 Litigation Trust Interests and Class 2 Litigation Trust Interests, and following the Class 2 Satisfaction Event, as a ratable advance against distributions to holders of Class 1 Litigation Trust Interests.

(c)     Representative Member.  The AHG Members and the Litigation Trustee may agree to provide compensation to a Representative Member; *provided* that such amount may not exceed the amount payable to the highest compensated UCC Member.

(d)     Members Generally.  Each Member shall be entitled to standard and customary reimbursement by the Litigation Trust for his or her documented and reasonable out-of-pocket expenses (other than outside professionals) incurred solely in his or her capacity as a Member in connection with his or her service on the Litigation Trust Oversight Committee;

38

FBG_CH1_00092454

*provided* that any expenses of such Member in excess of $10,000 individually or $50,000 in the aggregate over any 12-month period shall require the prior written approval (email being sufficient) of the Litigation Trustee.

(e)    Public Disclosure of Compensation.  The compensation terms and amounts of the initial Members, to the extent known as of the date hereof, is set forth on **Exhibit B** hereto. Any future changes to such compensation or terms, including with respect to replacement or additional Members, shall be posted to the website or other electronic depository maintained by or on behalf of the Litigation Trust.

6.8    Retention of UCC Member Professionals.   The UCC Member may engage professionals (the "UCC Member Professionals") to advise on the enforcement of Sacred Rights subject to a budget of $250,000; *provided* that neither the Litigation Trustee, any Member, the Delaware Trustee, the Claims Ombudsman, the Registrar, the Disbursing Agents, nor any Litigation Trust Beneficiary shall have any liability or obligation for any fees or expenses of any such professionals.  Prior to engaging any UCC Member Professionals, the UCC Member shall (i) deliver written notice to the Litigation Trustee and the AHG Members describing in reasonable detail the proposed engagement, the scope of work, the reasons the engagement is reasonably necessary, the expected budget or spend, and the details of the dispute concerning the interpretation, implementation, or enforcement of Sacred Rights, and (ii) such UCC Member and the Litigation Trustee shall meet in good faith in an effort to resolve such dispute.

(a)    UCC Member Professionals shall be required to submit reasonably detailed invoices on a monthly basis to the Litigation Trustee and include in such invoices a description of the work performed and who performed such work, and if billing on an hourly basis, the hourly rate of each such person, plus an itemized statement of expenses.  The Litigation Trust may pay those invoices [  ] calendar days after copies of such invoices are provided to the Litigation Trustee and the Litigation Trust Oversight Committee, without Bankruptcy Court approval, unless the Litigation Trustee (in consultation with the Litigation Trust Oversight Committee) objects.  If there is a dispute as to a part of an invoice, the Litigation Trust shall pay the undisputed portion and any disputed amounts shall be resolved as set forth in the applicable retention agreements with such professionals.

6.9    Additional Authority.  The Litigation Trust Oversight Committee shall, as and when requested by the Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult with and advise the Litigation Trustee as to the administration and management of the Litigation Trust in accordance with the Plan, the Confirmation Order, and this Agreement and shall have the other powers as set forth herein.

6.10   Major Decisions.  The Litigation Trustee, the Litigation Trust, and the Claims Ombudsman, as applicable, including through any Litigation Trust Professionals, any Litigation Trustee Professionals, or any other Person working on behalf of or in conjunction with any of the foregoing, shall not take any of the following actions or make any of the following decisions

FBG_CH1_00092455

without the prior written consent of the Litigation Trust Oversight Committee, subject to the Voting Threshold set forth in Section 6.12(a) (the "Major Decisions"):

(a)     the retention, replacement, and fee structures of all Litigation Trust Professionals, including counsel and expert witnesses;

(b)     the settlement, compromise, and/or other resolution of any Claim or Cause of Action that either (i) involves an expected net recovery to the Litigation Trust of $1,000,000 or more (as reasonably estimated by the Litigation Trustee based on advice of counsel and, where appropriate, other professionals) or (ii) relates to insider and/or SPV transactions;[4]

(c)     the settlement, compromise, objection, allowance, and/or other resolution of any Claim against a FBG Debtor that is (i) an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, or an Other Secured Claim that, in each case, is asserted in an amount in excess of $[500,000]; (ii) a General Unsecured Claim or a Subordinated Claim that, in each case, is asserted in an amount in excess of $[•], (iii) asserted by a Governmental Unit; or (iv) asserted by a Non-Specified Released Party in an amount in excess of $[•] (each, a "Major Decision Disputed Claim");

(d)     the abandonment or other decision not to prosecute any Claim, Cause of Action, or other Litigation Trust Asset for which the expected net recovery to the Litigation Trust is $500,000 or more (as reasonably estimated by the Litigation Trustee based on advice of counsel and, where appropriate, other professionals); *provided* that for any abandonment for which the expected net recovery exceeds $250,000 (as reasonably estimated by the Litigation Trustee based on advice of counsel and, where appropriate, other professionals), the Litigation Trustee shall provide not less than ten (10) business days' prior written notice to the Litigation Trust Oversight Committee summarizing the basis for the abandonment;[5]

(e)     prior to the Class 2 Satisfaction Event, any actions or inactions reasonably expected to create taxable events for the Litigation Trust and/or the Litigation Trust Beneficiaries;

(f)     the terms of engagement of the Litigation Trustee, including the termination, removal, and replacement of the Litigation Trustee;

(g)     adoption and approval of any budget (including any budget(s) prepared by the Litigation Trustee in accordance with Section 5.5(b)), including any modifications and/or permitted variances thereto;

(h)     with respect to the prosecution of Preference Actions, those Major Decisions provided for in the Preference Settlement set forth in Section 6.11 of the Plan;

---

[4]   For purposes of the monetary thresholds in this subsection, related Claims and/or settlements against the same defendant or defendants, as applicable, arising from the same transaction or series of transactions shall be aggregated.

[5]   For purposes of the monetary thresholds in this subsection, related Claims and/or settlements against the same defendant or defendants, as applicable, arising from the same transaction or series of transactions shall be aggregated.

FBG_CH1_00092456

(i)       subject to the terms of Section 6.4 of the Plan, prior to the Class 2 Satisfaction Event, the timing and amount of contributions from any Initial Litigation Trust Funding Commitments or Additional Litigation Trust Funding;

(j)       except as otherwise provided herein, authorizing any releases of third parties not otherwise within the discretion of the Litigation Trustee or constituting a Sacred Right;

(k)       the timing and amount of distributions of Litigation Trust Proceeds;

(l)       determinations with respect to the joint prosecution, acquisition, and/or management of third-party direct claims against parties that overlap with Litigation Trust Assets;

(m)       subject to section 6.4 of the Plan, the borrowing or contribution of any Additional Class 1 Litigation Trust Funding;

(n)       causing the Litigation Trust to form entities classified as C-corporations for U.S. federal income tax purposes in order to hold certain assets that the Litigation Trustee determines will not result in jeopardizing the treatment of the Litigation Trust as a "liquidating trust" for U.S. federal income tax purposes under Treasury Regulations Section 301.7701-4(d);

(o)       the dissolution of the Litigation Trust, including the filing of a motion with the Bankruptcy Court therefore (to the extent necessary);

(p)       the sale of Litigation Trust Assets that:  (i) are not Estate Claims, (ii) are non-cash proceeds (including property and/or collateral) recovered as a result of the prosecution or settlement of Estate Claims, regarding which the Litigation Trust, prior to seeking approval of the sale, conducted an Agreed Market Check, or (iii) are Estate Claims, regarding which the Litigation Trust, prior to seeking approval of the sale, conducted an Agreed Market Check; and

(q)       (i) exercising any termination rights, (ii) agreeing to any costs, fees or expenses, and (iii) exercising any settlement authority provided to the Litigation Trust in connection with any joint prosecution agreement.

6.11     Sacred Rights.   The Litigation Trustee, the Litigation Trust, and the Claims Ombudsman, as applicable, including through any Litigation Trust Professionals, any Litigation Trustee Professionals, or any other Person working on behalf of or in conjunction with any of the foregoing, shall not take any of the following actions or make any of the following decisions without the prior written consent of the Litigation Trust Oversight Committee, subject to the Voting Threshold set forth in Section 6.12(b) (the "Sacred Rights"):

(a)       other than as expressly provided in the Plan or this Agreement, adjustments to the Litigation Trust Waterfall;

(b)       the approval of any distribution to holders of Litigation Trust Interests at a time when (i) the Litigation Trust has less than $25,000,000 in either cash on hand or in committed funding; or (ii) where the impact of such proposed distribution would be reasonably expected to reduce total cash on hand to less than $25,000,000, taking into account committed funding other

41

FBG_CH1_00092457

than in connection with the wind-down of the Litigation Trust following the liquidation, settlement or other resolution of substantially all of the Litigation Trust Assets;

(c)    with respect to the prosecution of Preference Actions, those Sacred Rights provided for in the Preference Settlement set forth in section 6.11 of the Plan;

(d)    the sale (directly or indirectly) of any Litigation Trust Asset to any Person that is (or that is affiliated with any Person that is) (i) a current or former Member, (ii) the Litigation Trustee, (iii) an insider of the Debtors' Estates, and/or (iv) any Person that is or may be a defendant being prosecuted pursuant to an Estate Claim;

(e)    prior to the Class 2 Satisfaction Event, the sale (directly or indirectly) of any Litigation Trust Asset to any Person that is (or that is affiliated with any Person that is) a member of the Ad Hoc Group SteerCo;

(f)    following the Class 2 Satisfaction Event, the sale (directly or indirectly) of any Litigation Trust Asset to any Person that is (i) a recipient of a Class 3(b) Litigation Trust Interest, (ii) a current or former UCC Candidate, or (iii) any affiliate of the foregoing (i) or (ii) unless the Litigation Trust, prior to seeking approval of the sale, conducted an Agreed Market Check;

(g)    subject to the terms set forth in Section 6.4 of the Plan, the incurrence of the Additional Waterfall Litigation Trust Funding;

(h)    other than the Additional Litigation Trust Funding, the borrowing or contribution of any funds, except to the extent such borrowing or contribution of any funds constitutes a Major Decision;

(i)    any amendment to this Agreement that materially alters the UCC Member's governance rights or the treatment of Class 3(b) Litigation Trust Interests (in each instance, as determined by the UCC Member in its reasonable judgment) under this Agreement; *provided* that, for the avoidance of doubt, any modification to this Agreement that (i) causes (A) a Sacred Right to become a Major Decision or a decision in the sole discretion of the Litigation Trustee or (B) a Major Decision to become a decision in the sole discretion of the Litigation Trustee; or (ii) eliminates (or alters the Voting Threshold as to) any of the Sacred Rights or Major Decisions listed herein, shall be deemed to materially alter the UCC Member's governance rights;

(j)    following the Class 2 Satisfaction Event, any amendment to this Agreement that materially alters the AHG Member's governance rights or that alters the treatment of Class 1 Litigation Trust Interests, Class 3(a) Litigation Trust Interests, and/or Class 3(c) Litigation Trust Interests (in each instance, as determined by the AHG Member in its reasonable judgment) under this Agreement; *provided* that, for the avoidance of doubt, any modification to the Litigation Trust Agreement that (i) causes (A) a Sacred Right to become a Major Decision or a decision in the sole discretion or judgment of the Litigation Trustee or (B) a Major Decision to become a decision in the sole discretion or judgment of the Litigation Trustee; or (ii) eliminates (or alters the Voting Threshold as to) any of the Sacred Rights or Major Decisions listed herein, shall be deemed to materially alter the AHG Member's governance rights;

42

FBG_CH1_00092458

DEBTORS' EXHIBIT NO. 178
Page 59 of 360

(k)     any modification to the budget prepared by the Litigation Trustee in accordance with Section 5.5(b) which negatively impacts the UCC Member's compensation or the Claims Ombudsman's compensation;

(l)     following the Class 2 Satisfaction Event, any modifications to the budget prepared by the Litigation Trustee in accordance with Section 5.5(b) which negatively impacts the AHG Member's compensation or the compensation of any Disbursing Agent(s) for Class 1 Litigation Trust Interests, Class 3(a) Litigation Trust Interests, and/or Class 3(c) Litigation Trust Interests;

(m)     following the Class 2 Satisfaction Event, timing and amount of any Additional Litigation Trust Funding;

(n)     following the Class 2 Satisfaction Event, any actions or inactions reasonably expected to create taxable events or alter the tax treatment or other corporate or securities-related considerations for Class 1 Litigation Trust Interests, Class 3(a) Litigation Trust Interests, and/or Class 3(c) Litigation Trust Interests; and

(o)     following the Class 2 Satisfaction Event, any releases or waivers for the benefit of recipients of Class 3(b) Litigation Trust Interests.

Notwithstanding the foregoing, any matter that qualifies for approval as a Major Decision shall require approval solely in accordance with the Voting Thresholds for Major Decisions thresholds and shall not additionally require approval in accordance with the Voting Thresholds for Sacred Rights.

6.12     Voting Thresholds.  Except as set forth below regarding Major Decisions or Sacred Rights or otherwise in this Agreement, including without limitation any voting requirements regarding certain amendments to this Agreement under Article XI, the decision of the majority of Members shall be the decision of the Litigation Trust Oversight Committee.

(a)     Major Decisions.

(i)     Prior to the Class 2 Satisfaction Event, all Major Decisions by the Litigation Trust Oversight Committee require the affirmative vote of at least two (2) of the AHG Members and a majority of the Members of the Litigation Trust Oversight Committee.

(ii)     Following the Class 2 Satisfaction Event, all Major Decisions by the Litigation Trust Oversight Committee require the affirmative vote of the majority of the Members of the Litigation Trust Oversight Committee.

(b)     Sacred Rights.

(i)     Prior to the Class 2 Satisfaction Event, all decisions of the Litigation Trust Oversight Committee that are Sacred Rights require the affirmative vote of at least two (2) AHG Members and a UCC Member.

43

DEBTORS' EXHIBIT NO. 178
Page 60 of 360

(ii)     Following the Class 2 Satisfaction Event, all decisions of the Litigation Trust Oversight Committee that are Sacred Rights require the affirmative vote of one (1) AHG Member and one (1) UCC Member.

6.13     Governance of Litigation Trust Oversight Committee.

(a)     Meetings. Meetings of the Litigation Trust Oversight Committee are to be held not less often than [quarterly]. Special meetings of the Litigation Trust Oversight Committee may be held whenever and wherever called for by the Litigation Trustee or any Member; *provided* that notice of any such meeting shall be duly given in writing no less than [48 hours] prior to such meeting (such notice being subject to waiver by the Members); *provided, further,* that if the Person calling the meeting reasonably believe that a vote will be required at a Litigation Trust Oversight Committee meeting that will implicate a Sacred Right, the notice of the meeting must be clear on its face that a Sacred Right vote may be requested. Any action required or permitted to be taken by the Litigation Trust Oversight Committee at a meeting may be taken without a meeting if the action is taken by written consent of the requisite Members that would be required at a meeting with all Members present, as evidenced by one or more written consents describing the action taken, signed by all such Members, and recorded in the minutes, if any, or other transcript, if any, of proceedings of the Litigation Trust Oversight Committee, with a copy of such or similar documentation provided to the Litigation Trustee for retention with the books and records of the Litigation Trust. If a meeting of the Litigation Trust Oversight Committee occurs during a period of time when there is no duly appointed UCC Member, the Claims Ombudsman shall be given notice in writing no less than [48 hours] prior to such meeting and permitted to participate in such meeting; *provided* that any fees, costs, and expenses of the Claims Ombudsman associated therewith shall be subject to Section 7.2(b) below.

(b)     Manner of Acting.

(i)     A majority of the Members shall constitute a quorum for the transaction of business at any meeting of the Litigation Trust Oversight Committee. Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference, or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Any Member participating in a meeting by this means is deemed to be present in person at the meeting. Voting (including on negative notice) may be conducted by electronic mail or individual communications by the Litigation Trustee and each Member.

(ii)     Any Member who is present and entitled to vote at a meeting of the Litigation Trust Oversight Committee (including any meeting of the Litigation Trustee and the Litigation Trust Oversight Committee) when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Litigation Trust Oversight Committee, unless: (A) such Member of the Litigation Trust Oversight Committee objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (B) his/her

44

FBG_CH1_00092460

DEBTORS' EXHIBIT NO. 178
Page 61 of 360

dissent or abstention from the action taken is entered in the minutes of the meeting; and/or (C) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the meeting of the Litigation Trust Oversight Committee before its adjournment.  The right of dissent or abstention is not available to any Member of the Litigation Trust Oversight Committee who votes in favor of the action taken.

(iii)    Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member of the Litigation Trust Oversight Committee shall report to the Litigation Trust Oversight Committee any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue, other than solely as a Holder of Litigation Trust Interests).  A Member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such Member's interests are adverse to the interests of the Litigation Trust shall be deemed to be a "Conflicted Member" who shall not be entitled to vote or take part in any action with respect to such matter or issue.  The vote or action with respect to such matter or issue shall be undertaken only by Members of the Litigation Trust Oversight Committee who are not Conflicted Members and the affirmative vote of only a majority of the other Members of the Litigation Trust Oversight Committee who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Litigation Trust Oversight Committee; *provided* that a Member shall not be deemed to be a Conflicted Member with respect to a particular matter or issue if such Member merely has an economic interest in the outcome of such matter or issue solely as a holder, or the representative or employee of a holder, of Litigation Trust Interests.

(c)    Additional Governance Process Items.

(i)    If a UCC Member (or, following the Class 2 Satisfaction Event, an AHG Member) is notified of an Litigation Trust Oversight Committee meeting and/or vote that may implicate a Sacred Right and does not attend such meeting and is unreachable by the Litigation Trustee or the other Members, following at least three (3) business days' notice, such UCC Member (or, following the Class 2 Satisfaction Event, AHG Member) shall be deemed to have consented, and the Litigation Trustee and other Members may nevertheless reconvene and hold such vote without requiring the affirmative vote of such UCC Member (or, following the Class 2 Satisfaction Event, AHG Member).

(ii)    Subject to Section 6.13(c)(iii), all Members will have the same access to all documents pertaining to the Litigation Trust and its operations.

(iii)    Subject to applicable privileges and work-product protections and consistent with the Litigation Trust's strategic interests, the Litigation Trustee shall provide the Members with all information regarding the management and

45

FBG_CH1_00092461

administration of the Litigation Trust reasonably requested by the Litigation Trust Oversight Committee. Each Member shall implement and maintain effective information barriers to prevent the dissemination or use of any material non-public information to or by any trading affiliate. As a condition to receiving privileged or confidential information, each Member shall execute a common interest and/or joint defense agreement in form and substance reasonably acceptable to the Litigation Trustee and counsel to the Litigation Trust. The Litigation Trustee shall control all attorney-client privileges and work-product protections appurtenant to the Litigation Trust Assets and shall not be deemed to have waived any such privilege by sharing information under a common interest and joint defense arrangement.

6.14 <u>Confidentiality</u>. Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, as applicable, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to the Litigation Trust, including without limitation any non-public information regarding any Person to which any of the Litigation Trust Assets relate or of which such Member has become aware in the Member's capacity as a Member, except as otherwise required by law; *provided* this <u>Section 6.14</u> shall not apply if such Member merely has personal gain with respect to material non-public information in their capacity as a holder of Litigation Trust Interests; *provided, further* that the Members may utilize this information, and may share such information with any Litigation Trust Oversight Committee Professional, in connection with the exercise of the rights, powers, and authority of the Members under this Agreement.

6.15 <u>Limitation of Litigation Trust Oversight Committee's Authority</u>. Notwithstanding anything herein to the contrary, the Litigation Trust Oversight Committee shall not (a) engage or cause the Litigation Trust to engage in any trade or business; (b) take any action or cause the Litigation Trust to take any action inconsistent with the orderly liquidation of the assets of the Litigation Trust as is required or contemplated by applicable law, this Agreement, the Confirmation Order, and the Plan; or (c) engage or cause the Litigation Trust to engage in any investments or activities inconsistent with the treatment of the Litigation Trust as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and in accordance with IRS Revenue Procedure 94-45, 1994-2 C.B. 684.

6.16 <u>Ultimate Right to Act Based on Advice of Counsel or Other Litigation Trust Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Litigation Trust Oversight Committee (or any Member thereof) from taking or refraining to take any action on behalf of the Litigation Trust that, based upon the advice of counsel or other Litigation Trust Professionals or UCC Member Professionals, as applicable, the Litigation Trust Oversight Committee (or any Member thereof) determines in good faith that it is obligated to take or to refrain from taking in the performance of any duty that the Litigation Trust Oversight Committee

FBG_CH1_00092462

(or any Member thereof) may owe the Litigation Trust Beneficiaries or any other Person pursuant to the Plan, Confirmation Order, and/or this Agreement.

## ARTICLE VII
## CLAIMS OMBUDSMAN

7.1     Duties.

(a)     Holder of Record.  Pursuant to the Plan, the Claims Ombudsman shall be appointed on or prior to the Confirmation Date and shall serve as the holder of record of the Class 3(b) Litigation Trust Interests as agent for the recipients of the Class 3(b) Litigation Trust Interests and not individually (and, in such capacity shall provide the Litigation Trustee with a properly completed IRS Form W-9) and, except as provided in this Agreement or in the Plan or Confirmation Order, shall not have any duties until distributions of Litigation Trust Assets are anticipated to be paid to holders of Class 3 Litigation Trust Interests.

(b)     Litigation Trust Register.  As set forth in Section 3.6(c) above, the Claims Ombudsman shall maintain the Litigation Trust Register solely with respect to the Class 3(b) Litigation Trust Interests; *provided* that, subject to Section 7.2 hereof, the Claims Ombudsman may retain a service provider to assist in the administration and management of such Litigation Trust Register.

(c)     Claims Reconciliation.  In connection with distributions to recipients of Class 3(b) Litigation Trust Interests, as well as payments to holders of Allowed Settled Administrative Expense Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims against the FBG Debtors pursuant to the Plan, the Claims Ombudsman shall be responsible for reconciling Claims against the FBG Debtors in accordance with the procedures set forth in Section 7.6 below (the "Reconciliation Procedures") and making distributions to recipients of Class 3(b) Litigation Trust Interests (and Cash payments to holders of Allowed Settled Administrative Expense Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims against the FBG Debtors) in accordance with the Plan and this Agreement, including all federal, state, and local income tax reporting obligations associated therewith.  As permitted or required by applicable law, the Claims Ombudsman may treat any Litigation Trust Assets allocable to, or held on account of, any Class 3(b) Litigation Trust Interests as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9 or other separate taxable entity.  The Claims Ombudsman shall only withhold distributions where necessary and shall otherwise be required to make minimum and/or interim distributions expeditiously.

(d)     Fiduciary Duties.  With respect to his or her role in connection with the reconciliation of Settled Administrative Expense Claims, Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims against the FBG Debtors, the Claims Ombudsman shall have a fiduciary duty to all holders of Litigation Trust Interests; *provided* that with respect to his or her role as agent for the recipients of Class 3(b) Litigation Trust Interests, the Claims Ombudsman's fiduciary duty shall be to only such recipients.  The Claims Ombudsman shall also have an independent duty to respect and not act in violation of the governance rights set forth herein, including, without limitation, Article V and Article VI hereof.

47

FBG_CH1_00092463

7.2     Compensation.

(a)     Reconciliation and Distribution.  All fees, costs, and expenses of the Claims Ombudsman to reconcile Claims and make distributions to recipients of Class 3(b) Litigation Trust Interests (and Cash payments to holders of Allowed Settled Administrative Expense Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims against the FBG Debtors) shall be paid from the distributions otherwise distributable to holders of Class 3 Litigation Trust Interests and shall not be otherwise chargeable against the FBG Debtors or the Litigation Trust.  The Litigation Trust shall either (i) advance funds to the Claims Ombudsman to fund the Claims reconciliation process, subject to an agreed budget with the Claims Ombudsman, or (ii) wait until there are adequate cash reserves from amounts to be distributed to holders of Class 3 Litigation Trust Interests to self-fund the Claims reconciliation process.  The Litigation Trustee and Claims Ombudsman shall negotiate any applicable budget in good faith.

(b)     Other Costs.  Subject to an agreement among the Litigation Trustee, the Ad Hoc Group SteerCo, the Creditors' Committee, and the Claims Ombudsman prior to the Confirmation Date, the Litigation Trust will fund certain additional non-reconciliation and distribution fees, costs, and expenses of the Claims Ombudsman.  If an agreement cannot be reached, all fees, costs, and expenses of the Claims Ombudsman shall be paid from the distributions otherwise distributable to holders of Class 3 Litigation Trust Interests.  The Claims Ombudsman may request additional funding from the Litigation Trust at any time; *provided* that the Litigation Trust is under no obligation to provide such additional funding but the Litigation Trustee and the Claims Ombudsman shall negotiate any such additional funding request in good faith.

7.3     Resignation.  The Claims Ombudsman may resign by giving not less than sixty (60) days' prior written notice thereof by delivery of such notice to the Delaware Trustee, the Litigation Trustee, and the Members of the Litigation Trust Oversight Committee and posting such notice on a website or other electronic depository maintained by or on behalf of the Litigation Trust and accessible by Litigation Trust Beneficiaries.  Such resignation shall become effective on the day specified in such notice; *provided* that such resignation shall not be effective until the appointment of a successor Claims Ombudsman satisfying the requirements set forth in Section 7.5(b), as approved by the UCC Member, satisfying the requirements set out in Section 7.5(a), and the acceptance by such successor of such appointment.  Notwithstanding the foregoing, upon the Termination Date (as defined in Section 10.1 below), the Claims Ombudsman shall be deemed to have resigned, except as otherwise provided for in Section 10.2 herein.  Written notice of the resignation of the Claims Ombudsman and the appointment of a successor Litigation Trustee shall be posted promptly to the website or other electronic depository maintained by or on behalf of the Litigation Trust and accessible by Litigation Trust Beneficiaries and provided to the Delaware Trustee, the Litigation Trustee, and the Members.

7.4     Removal.  The Claims Ombudsman may be removed by the Litigation Trust Oversight Committee (a) for Cause or Disability (as defined in Section 6.4(b)), immediately upon notice thereof, or (b) without Cause, upon not less than ninety (90) days' prior written notice delivered to the Litigation Trustee and the Delaware Trustee; *provided* that the removal of the Claims Ombudsman pursuant to clause (b) shall require the prior written consent of the UCC

48

FBG_CH1_00092464

DEBTORS' EXHIBIT NO. 178
Page 65 of 360

Member unless there is a vacancy in the UCC Member position, in which case, such removal can be made without such UCC Member consent but only with respect to the Claims Ombudsman's role in connection with the reconciliation of Claims and Disputed Claims and as agent for the recipients of Class 3(b) Litigation Trust Interests (and not with respect to the Claims Ombudsman's role as interim UCC Member).

     7.5     <u>Vacancy; Replacement</u>.

     (a)     Following the Confirmation Date, any replacement Claims Ombudsman shall be appointed by the UCC Member.  In the case of a resignation, the resigning Claims Ombudsman shall remain in office until a successor is appointed, unless the UCC Member otherwise agrees in writing.

     (b)     Any successor Claims Ombudsman must have (i) prior experience serving as a Claims Ombudsman, a trustee of a post-confirmation trust in a chapter 11 case, or in a similar role; and (ii) at least five (5) years of full-time experience in sophisticated financial matters.

     7.6     <u>Reconciliation Procedures</u>.

     (a)     <u>Bar Date</u>.  The Claims Ombudsman may, in furtherance of his duties hereunder and under the Plan and Confirmation, seek entry of an order (such order, a "<u>Bar Date Order</u>") setting the deadline (or deadlines, as applicable) (each, a "<u>Bar Date</u>") for each Person to file proofs of claim (each, a "<u>Proof of Claim</u>") based on any Claims against the FBG Debtors, including, without limitation, Settled Administrative Expense Claims, Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, and General Unsecured Claims.

     (b)     <u>Claim Objections</u>.  Except insofar as a Claim has been Allowed under the Plan or a Final Order of the Bankruptcy Court, the Claims Ombudsman shall be entitled to object to any Claims against the FBG Debtors; *provided* that objections with respect to any Major Decision Disputed Claim shall be subject to Litigation Trust Oversight Committee consent as set forth <u>Section 6.10(c)</u>; *provided, further,* that the Claims Ombudsman, may seek entry of a Final Order (which may be the Bar Date Order) that authorizes the omnibus rejection of Claims pursuant to procedures approved by the Bankruptcy Court.

     (c)     <u>Estimation of Claims</u>.  The Claims Ombudsman may at any time request the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim against the FBG Debtors pursuant to section 502(c) of the Bankruptcy Code; *provided* that requests with respect to any Major Decision Disputed Claim shall be subject to Litigation Trust Oversight Committee consent as set forth <u>Section 6.10(c)</u>.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim against the FBG Debtors, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Claims Ombudsman may, subject to the terms of this Agreement, pursue supplementary proceedings to object to the allowance of such Claim.

     (d)     <u>Claim Settlement and Allowance</u>.  The Claims Ombudsman shall have the authority to settle, compromise, allow, and/or otherwise resolve any Disputed Claim; *provided* that actions with respect to any Major Decision Disputed Claim shall be subject to Litigation Trust

49

FBG_CH1_00092465

Oversight Committee consent as set forth Section 6.10(c); *provided, further,* that the Claims Ombudsman may seek entry of a Final Order (which may be the Bar Date Order) that authorizes the Allowance (including with respect to proposed settlements and/or other consensual resolutions) of Claims pursuant to procedures approved by the Bankruptcy Court.

      7.7     Distributions.

      (a)     Accounts.   The distributions allocable to Class 3(b) Litigation Trust Interests (including amounts for Cash payments to holders of Allowed Settled Administrative Expense Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims against the FBG Debtors) from the Litigation Trust may be held in a segregated account, escrow, or entity (in whole or in part) by the Claims Ombudsman pending the reconciliation of Claims in accordance with the Reconciliation Procedures.

      (b)     Disputed Claim Reserve.   The Claims Ombudsman shall be authorized to establish and maintain Disputed Claim Reserves (as defined in Section 9.2 below) on account of any Claims that have not been Allowed under the Plan or pursuant to an entered Final Order of the Bankruptcy Court in the FBG Debtors' Chapter 11 Cases.

      (c)     Conflicting Claims to Distributions.   If any conflicting claims or demands are made or asserted with respect to the Litigation Trust Interests of a Litigation Trust Beneficiary under this Agreement, or if there is any disagreement between the heirs, representatives, or legatees of a Litigation Trust Beneficiary succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any such events, the Claims Ombudsman, the Litigation Trustee, the Disbursing Agents, and the Registrar shall be entitled, in their sole discretion, to refuse to comply with any such conflicting claims or demands.

      (i)     The Claims Ombudsman, the Litigation Trustee, and the Disbursing Agents, as applicable, may elect to make no payment or distribution of Litigation Trust Proceeds with respect to the Litigation Trust Interests subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands.   Neither the Litigation Trust, the Litigation Trustee, the Disbursing Agents, the Registrar, nor the Claims Ombudsman shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Litigation Trust, the Litigation Trustee, the Disbursing Agents, the Registrar, nor the Claims Ombudsman be liable for interest on any funds which may be so withheld.

      (ii)     The Litigation Trust, the Litigation Trustee, the Disbursing Agents, the Registrar, and the Claims Ombudsman shall be entitled to refuse to act until either (A) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (B) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Litigation Trust, the Litigation Trustee, the Disbursing Agents, the Registrar, and/or the Claims Ombudsman, as applicable, which agreement shall include a complete release of

FBG_CH1_00092466

the Litigation Trust, the Litigation Trustee, the Disbursing Agents, the Registrar, and the Claims Ombudsman, as applicable. Until the Litigation Trust, the Litigation Trustee, the Disbursing Agents, the Registrar, and/or the Claims Ombudsman, as applicable, receives written notice that one of the conditions of the preceding sentence is met, the Litigation Trust, the Litigation Trustee, the Disbursing Agents, the Registrar, and/or the Claims Ombudsman, as applicable, may deem and treat as the absolute owner under this Agreement of the Litigation Trust Interests the Litigation Trust Beneficiary identified as the owner of that interest in the Litigation Trust's books and records. The Litigation Trust, the Litigation Trustee, the Disbursing Agents, the Registrar, and the Claims Ombudsman shall treat such Litigation Trust Beneficiary as the absolute owner for purposes of receiving distributions of Litigation Trust Proceeds and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

(iii)     In acting or refraining from acting under and in accordance with this Section 7.7(c), the Litigation Trust, the Litigation Trustee, the Disbursing Agents, the Registrar, and the Claims Ombudsman shall be fully protected and incur no liability to any purported claimant or any other Person.

**ARTICLE VIII**
**LIABILITY AND INDEMNIFICATION**

8.1     No Further Liability.

(a)     Each of the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman, the Registrar, the Disbursing Agents, the Members, and their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives shall have no liability for any actions or omissions in accordance with this Agreement or with respect to the Litigation Trust unless arising out of such Person's own fraud, willful misconduct, or gross negligence, as ultimately determined by a Final Order of a court of competent jurisdiction. Without limiting the generality of the foregoing, the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman, the Registrar, the Disbursing Agents, the Members, and their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by such Person to be genuine and shall have no liability for actions taken in reliance thereon. None of the provisions of this Agreement shall require the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman, the Registrar, the Disbursing Agents, the Members, or their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers. Each of the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman, the Registrar, the Disbursing Agents, the Members, and their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives may rely without inquiry upon writings delivered to such Person pursuant to the Plan, the Confirmation Order, or this Agreement (including in the execution of such Person's duties

51

FBG_CH1_00092467

**DEBTORS' EXHIBIT NO. 178**
**Page 68 of 360**

hereunder or thereunder) that such Person reasonably believes to be genuine and to have been properly given. Notwithstanding the foregoing, nothing in this Section 8.1 shall relieve the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman, the Registrar, the Disbursing Agents, the Members, or their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives from any liability for any actions or omissions arising out of such Person's own fraud, willful misconduct, or gross negligence, as ultimately determined by a Final Order of a court of competent jurisdiction. Any action taken or omitted to be taken in the case of the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman, the Registrar, the Disbursing Agents, the Litigation Trust Oversight Committee, or their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives with the express approval of the Bankruptcy Court will conclusively be deemed not to constitute fraud, willful misconduct, or gross negligence. No termination of this Agreement or amendment, modification, or repeal of this Section 8.1 shall adversely affect any right or protection of the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman, the Registrar, the Disbursing Agents, the Members of the Litigation Trust Oversight Committee, or their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives that exist at the time of such amendment, modification, or repeal.

8.2     Indemnification of the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman, and the Litigation Trust Oversight Committee.

(a)     From and after the Confirmation Date, each of the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman (subject to Section 7.2), the Members, the Litigation Trust Professionals, the Litigation Trustee Professionals, the officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives of any of the foregoing, and the successors and assigns of any of the foregoing (each, a "Litigation Trust Indemnified Party" and, collectively, the "Litigation Trust Indemnified Parties") shall be, and hereby is, indemnified by the Litigation Trust, to the fullest extent permitted by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, Causes of Action, bonds, covenants, judgments, damages, attorneys' fees, defense costs, and other assertions of liability arising out of any such Litigation Trust Indemnified Party's actions or omissions to act regarding the Litigation Trust, except to the extent arising from such Litigation Trust Indemnified Party's own fraud, willful misconduct, or gross negligence that is determined by a Final Order (not subject to further appeal or review) or a court of competent jurisdiction. The foregoing indemnification shall extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to: (i) this Agreement; (ii) the services to be rendered pursuant to this Agreement; (iii) any document or information, whether oral or written, referred to herein or supplied to such Litigation Trust Indemnified Party and (iv) proceedings by or on behalf of any creditor. Reasonable out-of-pocket expenses, including attorneys' fees and other expenses and disbursements, incurred by a Litigation Trust Indemnified Party, in defending or investigating a threatened or pending action, suit, or proceeding shall be paid or reimbursed by the Litigation Trust, solely out of the Litigation Trust Assets (including any insurance policy obtained by the Litigation Trust for the benefit of Litigation Trust Indemnified Parties), in advance of the final disposition of such action, suit, or proceeding; *provided* that any Litigation Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines, by a Final Order, that such Litigation Trust

52

FBG_CH1_00092468

Indemnified Party is not entitled to indemnification hereunder.  Any indemnification claim of a Litigation Trust Indemnified Party shall be entitled to a priority distribution from the Litigation Trust Assets, ahead of the Litigation Trust Interests and any other claim to or interest in such assets. In any matter covered by the first two sentences of this subsection, any party entitled to indemnification shall have the right to employ such party's own separate counsel, at the Litigation Trust's expense, subject to the foregoing terms and conditions.  In addition, the Litigation Trust shall purchase insurance coverage as set forth herein, including fiduciary or similar liability insurance using funds from the Litigation Trust for the benefit of the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman (subject to Section 7.2), and the Members.  The indemnification provided under this Section 8.2 shall survive the death, dissolution, resignation, or removal, as may be applicable, of the Litigation Trustee, the Litigation Trust Oversight Committee, any Member, the Claims Ombudsman, or any other Litigation Trust Indemnified Party and shall inure to the benefit of the Litigation Trustee's, each Member's, and each other Litigation Trust Indemnified Party's respective heirs, successors, and assigns.

(b)      The foregoing indemnity in respect of any Litigation Trust Indemnified Party shall survive the termination of such Litigation Trust Indemnified Party from the capacity for which such party is indemnified.  Termination or modification of this Agreement shall not limit or negatively affect any indemnification rights or obligations set forth herein.

(c)      The Litigation Trust may, with the approval of the Litigation Trust Oversight Committee, indemnify any Person who is not a Litigation Trust Indemnified Party for any loss, cost, damage, expense, or liability for which a Litigation Trust Indemnified Party would be entitled to mandatory indemnification under this Section 8.2.

(d)      Any Litigation Trust Indemnified Party may waive the benefits of indemnification under this Section 8.2, but only by an instrument in writing executed by such Litigation Trust Indemnified Party.

(e)      The rights to indemnification under this Section 8.2 are not exclusive of other rights which any Litigation Trust Indemnified Party may otherwise have at law or in equity, including, without limitation, common law rights to indemnification or contribution.  Nothing in this Section 8.2 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party.  Further, the Litigation Trust hereby agrees:  (i) that the Litigation Trust is the indemnitor of first resort (i.e., in the event any Litigation Trust Indemnified Party has the right to receive indemnification from one or more third party, the Litigation Trust's obligations to such Litigation Trust Indemnified Party are primary); (ii) that the Litigation Trust shall be required to pay the full amount of expenses (including attorneys' fees) actually incurred by such Litigation Trust Indemnified Party in connection with any proceeding as to which the Litigation Trust Indemnified Party is entitled to indemnification hereunder in advance of the final disposition of such proceeding from Litigation Trust Assets or Litigation Trust Proceeds; (iii) that the Litigation Trust irrevocably waives, relinquishes, and releases such third parties from any and all claims by the Litigation Trust against such third parties for contribution, subrogation, or any other recovery of any kind in respect thereof; and (iv) no Litigation Trust Indemnified Party shall have the obligation to reduce, offset, allocate, pursue, or apportion any indemnification advancement, contribution, or insurance coverage among multiple parties owing indemnification obligations to such Litigation Trust

53

FBG_CH1_00092469

Indemnified Party prior to the Litigation Trust's satisfaction of its indemnification obligations hereunder. For the avoidance of doubt, each Litigation Trust Indemnified Party shall be entitled, subject to the terms hereof, to indemnification for any reasonable out-of-pocket costs and attorneys' fees such Litigation Trust Indemnified Party may incur in connection with enforcing any of its rights under this Article VIII.

8.3     Litigation Trust Liabilities. All liabilities of the Litigation Trust, including, without limitation, indemnity obligations under Section 8.2 of this Agreement and applicable law, will be liabilities of the Litigation Trust and will be paid or satisfied solely from the Litigation Trust Assets and paid on a priority basis, *provided* that the Litigation Trust may obtain liability insurance to satisfy its indemnity obligations under Section 8.2 and applicable law. No liability of the Litigation Trust will be payable in whole or in part by any Litigation Trust Beneficiary individually or in the Litigation Trust Beneficiary's capacity as a Litigation Trust Beneficiary, by the Litigation Trustee individually or in the Litigation Trustee's capacity as Litigation Trustee, by the Delaware Trustee individually or in the Delaware Trustee's capacity as Delaware Trustee, by any Member individually or in the Member's capacity as Member, by any Claims Ombudsman individually or in the Claims Ombudsman's capacity as the Claims Ombudsman, by any Registrar individually or in the Registrar's capacity as the Registrar, by any Disbursing Agent individually or in the Disbursing Agent's capacity as a Disbursing Agent, or by any representative, member, partner, shareholder, director, officer, professional, employee, agent, affiliate, or advisor of any Litigation Trust Beneficiary, any Member, the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman, the Registrar, the Disbursing Agents, or any of their respective affiliates.

8.4     Limitation of Liability. None of the Litigation Trust Indemnified Parties shall be liable for direct, indirect, monetary, punitive, exemplary, consequential, special, or other damages for a breach of this Agreement, except to the extent his/her/its actions or omissions to act, as ultimately determined by a Final Order of a court of competent jurisdiction, are due to such Litigation Trust Indemnified Party's own fraud, willful misconduct, or gross negligence and any of the foregoing damages are awarded pursuant to any such Final Order.

8.5     Burden of Proof. In making a determination with respect to entitlement to exculpation or indemnification hereunder, the court or Person making such determination shall presume that any Litigation Trust Indemnified Party is entitled to exculpation and indemnification under this Agreement and any Person seeking to overcome such presumption shall have the burden of proof to overcome that presumption.

## ARTICLE IX
## TAX MATTERS

9.1     Treatment of Litigation Trust Assets Transfer. For all U.S. federal, state, local, and non-U.S. income tax purposes, all Persons (including, without limitation, the Debtors, the Litigation Trustee, and the Litigation Trust Beneficiaries) shall treat the transfer of the Litigation Trust Assets (other than Direct Creditor Claims) to the Litigation Trust for the benefit of the Litigation Trust Beneficiaries, whether their Claims are Allowed on or after the Confirmation Date, including any amounts or other assets subsequently transferred to the Litigation Trust (but only at such time as actually transferred) as (a) a transfer of the Litigation Trust Assets (subject to any obligations relating to such Litigation Trust Assets) directly to the Litigation Trust Beneficiaries

54

FBG_CH1_00092470

and, to the extent the Litigation Trust Assets are allocable to Disputed Claims that are the responsibility of the Litigation Trust to resolve, to the applicable Disputed Claim Reserve, followed by (b) the transfer by the Litigation Trust Beneficiaries to the Litigation Trust of the Litigation Trust Assets (other than the Litigation Trust Assets allocable to the Disputed Claim Reserves) in exchange for Litigation Trust Interests. At the same time, and pursuant to the Plan, the Litigation Trust Assets that are Direct Creditor Claims will have been directly contributed to the Litigation Trust by the Preference Settlement Electing Creditors for all U.S. federal, state, local, and non-U.S. income tax purposes. Accordingly, the Litigation Trust Beneficiaries shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the Litigation Trust Assets (other than such Litigation Trust Assets as are allocable to the Disputed Claim Reserves). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state, local, and non-U.S. income tax purposes.

       9.2    Tax Treatment of Disputed Claim Reserves.

       (a)    Subject to contrary definitive guidance from the Internal Revenue Service or a court of competent jurisdiction (including the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Litigation Trustee), the Litigation Trustee may, with the consent of the Litigation Trust Oversight Committee, cause the Litigation Trust to (A) elect to treat any Litigation Trust Assets allocable to, or retained on account of, any reserve established for Disputed Claims (a "Disputed Claim Reserve") as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9 or treat as a separate taxable entity and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made with respect to a Disputed Claim Reserve or is otherwise treated as a separate taxable entity, all parties (including, without limitation and as applicable, the Debtors, the Litigation Trustee, and the Litigation Trust Beneficiaries) shall report for U.S. federal, state, and local income tax purposes consistently with the foregoing election.

       (b)    With respect to any Litigation Trust Assets and any other income or gain of the Litigation Trust allocable to Disputed Claims, the Litigation Trustee shall cause the Litigation Trust to pay any taxes imposed on the Litigation Trust by any U.S. federal, state, or local, or any non-U.S. Governmental Unit. A Disputed Claim Reserve will be responsible for payment out of the assets of the Disputed Claim Reserve, of any taxes imposed on the Disputed Claim Reserve or its assets. In the event, and to the extent, any Cash in the Disputed Claim Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such reserve (including any income that may arise upon the distribution of the assets in such reserve), assets of the Disputed Claim Reserve may be sold to pay such taxes.

       9.3    Tax Reporting.

       (a)    The "taxable year" of the Litigation Trust shall be the "calendar year" as such terms are defined in Section 441 of the IRC. The Litigation Trustee shall cause the Litigation Trust to prepare or cause to be prepared all tax returns for the Litigation Trust treating the Litigation Trust as a "grantor trust" pursuant to Treasury Regulations Section 1.671-4(a) (and in accordance with this Section 9.3 and Article VI of the Plan), and shall cause the Litigation Trust

55

FBG_CH1_00092471

to duly and timely file, or cause to be duly and timely filed, the IRS annual tax return for the Litigation Trust on IRS Form 1041. In addition, the Litigation Trust shall prepare or cause to be prepared, and duly and timely file or cause to be duly and timely filed, any other tax returns, including any state, local, and non-U.S. tax returns, as are required by applicable law and pay any taxes shown as due thereon out of the Litigation Trust Assets (or the income or proceeds thereof). The Litigation Trustee shall cause the Litigation Trust to annually provide to each Litigation Trust Beneficiary a separate statement setting forth such Litigation Trust Beneficiary's share of items of income, gain, loss, deduction, or credit, in accordance with applicable Treasury Regulations and IRS Revenue Procedure 94-45, 1994-2 C.B. 684. The Litigation Trustee shall also cause the Litigation Trust to duly and timely file or provide (or cause to be duly and timely filed or provided) any other statement, return, or disclosure relating to the Litigation Trust that is required by any Governmental Unit and such other statement, return, or disclosure shall be true, correct, and complete.

(b)     Subject to Section 9.2(b), allocations of Litigation Trust taxable income among the Litigation Trust Beneficiaries (other than taxable income allocable to the Disputed Claim Reserves) shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Disputed Claim Reserves) to the Litigation Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Litigation Trust. Similarly, taxable loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Litigation Trust Assets. The tax book value of the Litigation Trust Assets for purposes of this Section 9.3(b) shall equal their fair market value on the Confirmation Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(c)     The Litigation Trustee shall, in its discretion and subject to approval from the Litigation Trust Oversight Committee, make any applicable tax elections on behalf of the Litigation Trust.

9.4     Tax Cooperation; Consultation on Settlements and Material Tax Matters. Prior to entering into any settlement agreement, agreeing to the language of any consent order or agreed judgment, or taking any other action with respect to any Estate Claim that could reasonably be expected to materially affect the U.S. federal income tax consequences to the Litigation Trust or the Litigation Trust Beneficiaries (including the characterization of any proceeds, the allocation of settlement consideration among categories of recovery, or the applicability or rate of withholding on distributions), the Litigation Trustee shall consult in good faith with tax counsel to the Litigation Trust and shall provide tax counsel designated by the Ad Hoc Group SteerCo with written notice and a reasonable opportunity to comment, which comments the Litigation Trustee shall consider in good faith; *provided* that this consultation requirement is procedural only, is in addition to (and does not limit) the consent rights of the Litigation Trust Oversight Committee under Article VI, does not require the Litigation Trustee to adopt any particular tax position or to refrain from any action it determines, in the exercise of its fiduciary duties, is in the best interests of the Litigation

56

FBG_CH1_00092472

DEBTORS' EXHIBIT NO. 178
Page 73 of 360

Trust Beneficiaries as a whole, and shall not delay any action required to meet a court or other applicable deadline.

      9.5    <u>Withholding of Taxes</u>.

      (a)    The Litigation Trustee shall cause the Litigation Trust to deduct and withhold and timely pay to the appropriate Governmental Unit all amounts required to be deducted or withheld pursuant to the IRC or any provision of any state, local, or non-U.S. tax law with respect to any payment or distribution to the Litigation Trust Beneficiaries. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. All such amounts withheld and paid to the appropriate Governmental Unit shall be treated as amounts distributed to such Litigation Trust Beneficiaries for all purposes of this Agreement.

      (b)    The Litigation Trust shall be authorized to collect such tax information from the Litigation Trust Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as the Litigation Trustee, in its sole judgment, deems necessary to effectuate the Plan, the Confirmation Order, and this Agreement. As a condition to receiving distributions under the Plan, all Litigation Trust Beneficiaries may be required to identify themselves to the Litigation Trust and provide tax information and the specifics of their holdings, to the extent the Litigation Trustee deems appropriate, including a properly completed and validly executed IRS Form W-9 or, in the case of Litigation Trust Beneficiaries that are not United States persons within the meaning of Section 7701(a)(30) of the IRC, certification of foreign status on an applicable IRS Form W-8 that is properly completed and validly executed.

      (c)    The Litigation Trust may refuse to make a distribution to any Litigation Trust Beneficiary that fails to furnish such information in a timely fashion until such information is delivered; *provided* that, (i) upon the delivery of such information by a Litigation Trust Beneficiary, the Litigation Trust shall make such distribution to which the Litigation Trust Beneficiary is entitled, without interest and (ii) if the Litigation Trust fails to withhold in respect of amounts received or distributable with respect to any such Holder and the Litigation Trust is later held liable for the amount of such withholding, such Holder shall be required to reimburse the Litigation Trust for such liability, unless such liability arises out of the Litigation Trustee's fraud, willful misconduct, or gross negligence, as ultimately determined by a Final Order of a court of competent jurisdiction. If a Litigation Trust Beneficiary fails to comply with such a request for tax information within one hundred eighty (180) days, the Litigation Trustee may cause the Litigation Trust to file a document with the Bankruptcy Court, or if the Chapter 11 Cases have been closed or dismissed, post a document on a website or other electronic depository maintained by or on behalf of the Litigation Trust, that will provide twenty-one (21) days' notice before such distribution may be deemed an unclaimed distribution and treated in accordance with Article XI.D of the Plan.

      (d)    In the event that the Litigation Trust elects to make distributions through an intermediary, the party who would be the withholding agent with respect to distributions to the Litigation Trust Beneficiary under U.S. federal income tax principles shall be responsible for

FBG_CH1_00092473

withholding tax compliance with respect to any such distribution, based on instructions on the character of the income from the Litigation Trustee.

9.6   Valuation.   The valuation of the Litigation Trust Assets prepared pursuant to Section 2.8 of this Agreement shall be used consistently by all parties (including, without limitation, the Litigation Trust) for all U.S. federal income tax purposes.   The Litigation Trust also shall duly and timely file (or cause to be duly and timely filed) any other statements, returns, or disclosures relating to the Litigation Trust that are required by any Governmental Unit and such other statements, returns, or disclosures shall be true, correct, and complete.

9.7   Expedited Determination of Taxes.   The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the termination of the Litigation Trust.

9.8   Non-U.S. Tax Matters.   The Litigation Trustee shall cause the Litigation Trust to duly comply on a timely basis with all obligations and satisfy all liabilities imposed on the Litigation Trust under non-U.S. law relating to taxes, interest, penalties, and other amounts.   The Litigation Trust shall not distribute the Litigation Trust Assets or proceeds thereof without having first obtained all certificates required to have been obtained under applicable non-U.S. law relating to taxes.

9.9   Intention of Parties to Establish a Liquidating Trust.   This Agreement is intended to create a "liquidating trust" for U.S. federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Agreement may be amended in accordance with Article XI hereof to comply with such U.S. federal income tax laws, which amendments may apply retroactively.

## ARTICLE X
## TERMINATION OF LITIGATION TRUST

10.1   Termination.   The Litigation Trust shall be dissolved and wound up upon the earlier of (a) (i) the Litigation Trust having liquidated and/or abandoned all Litigation Trust Assets, and (ii) all distributions required to be made by the Litigation Trust hereunder having been made; and (b) if at any time the Litigation Trustee determines, in reliance upon the advice of any Litigation Trust Professionals and with the consent of the Litigation Trust Oversight Committee in accordance with Section 6.10(o) hereof, that the expense of administering the Litigation Trust so as to make a final distribution to the Litigation Trust Beneficiaries is likely to exceed the value of the Litigation Trust Assets then remaining in the Litigation Trust, the Litigation Trustee having received authority from the Bankruptcy Court to (i) reserve any amount necessary to dissolve the Litigation Trust, (ii) donate any balance to a charitable organization (A) described in Section 501(c)(3) of the IRC, (B) exempt from U.S. federal income tax under Section 501(a) of the IRC, (C) not a "private foundation," as defined in Section 509(a) of the IRC, and (D) that is unrelated to the Debtors, the Litigation Trust, the Litigation Trustee, the Delaware Trustee, the Registrar, the Disbursing Agents, the Members, the Claims Ombudsman, any Litigation Trust Professionals, and any insider of any of the foregoing, and (iii) wind up the Litigation Trust; *provided* that in no

58

FBG_CH1_00092474

event shall the Termination Date be later than five (5) years from the Confirmation Date unless (x) the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-month period prior to the end of any extension period), orders that the term of the Litigation Trust may be extended for a fixed period extension (not to exceed three (3) years, including any prior extensions), if it is necessary to facilitate or complete the recovery and liquidation of the Litigation Trust Assets, and not unduly extend the term of the Litigation Trust, and (y) the Litigation Trust obtains a favorable private letter ruling from the Internal Revenue Service or a "should" level opinion of counsel satisfactory to the Litigation Trustee and the Litigation Trust Oversight Committee that any further extension would not adversely affect the status of the Litigation Trust as a "liquidating trust" for U.S. federal income tax purposes. The process of winding up the Litigation Trust, including without limitation taking the actions set forth in Section 10.1(b)(i) and Section 10.1(b)(ii), if applicable, shall be referred to herein as the "Winding Up Process"). The date upon which the Litigation Trust shall be finally wound up and a "Certificate of Cancellation" shall be filed with the Secretary of State of the State of Delaware shall be referred to herein as the "Termination Date." Notwithstanding anything to the contrary contained in this Agreement, the existence of the Litigation Trust as a separate legal entity shall continue until the filing of a Certificate of Cancellation with the Secretary of State of the State of Delaware. A certified copy of the Certificate of Cancellation shall be given to the Delaware Trustee for its records promptly following such filing.

10.2     Continuance of Litigation Trust for Winding Up. During the Winding Up Process, the Litigation Trustee, the Claims Ombudsman, the Registrar, the Disbursing Agents, and the Litigation Trust Oversight Committee, solely for the purpose of liquidating and winding up the affairs of the Litigation Trust, and the Delaware Trustee, solely in connection with its obligations under this Agreement, shall continue to act as such until its duties have been fully performed. During the Winding Up Process, the Litigation Trustee, the Delaware Trustee, the Members, the Registrar, the Disbursing Agents, and the Claims Ombudsman, as applicable, shall continue to be entitled to receive all fees and expenses authorized hereunder. Upon distribution of all the Litigation Trust Assets, the Litigation Trustee shall retain the books, records, and files that shall have been delivered or created in connection with the administration of the Litigation Trust to the extent not otherwise required to be handled by the Litigation Trustee hereunder. At the Litigation Trustee's discretion, but subject in all cases to approval of the Litigation Trust Oversight Committee, all of such records and documents may be destroyed no earlier than the Termination Date as deemed appropriate (unless such records and documents are necessary to fulfill the Litigation Trustee's or the Litigation Trust Oversight Committee's obligations hereunder). Except as otherwise specifically provided herein, upon the Termination Date, the Litigation Trustee shall be deemed discharged and have no further duties or obligations hereunder, except to account to the Litigation Trust Beneficiaries as provided herein. Upon the Termination Date, the Litigation Trust Interests shall be cancelled and the Litigation Trust will be terminated.

## ARTICLE XI
## AMENDMENT AND WAIVER

11.1     Amendments and Modifications. Subject to the terms of this Article XI and any provisions implicating Major Decisions or Sacred Rights, the Litigation Trustee may amend,

59

DEBTORS' EXHIBIT NO. 178
Page 76 of 360

supplement, or waive any provision of this Agreement with the consent of the Litigation Trust Oversight Committee and/or Bankruptcy Court approval, as applicable; *provided* that:

(a)     no amendment, supplement, or waiver of or to this Agreement shall (i) violate the Plan or the Confirmation Order, (ii) adversely affect the U.S. federal income tax status of the Litigation Trust as a "liquidating trust" or (iii) be inconsistent with the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Litigation Trust Assets in accordance with Treasury Regulations Section 301.7701-4(d);

(b)     [no amendment, supplement, or waiver of or to this Agreement shall (i) amend, supplement, waive, or otherwise modify the Litigation Trust Waterfall in a manner that adversely and disparately affects a holder of Class 1 Litigation Trust Interests without the prior written consent of such holder or (ii) amend, supplement, waive, or otherwise modify the Class 1 Litigation Trust Commitment Termination Date[6] in a manner that adversely affects a holder of Class 1 Litigation Trust Interests without the prior written consent of such holder; *provided* that, in each case, this Agreement may be amended to facilitate the implementation of Additional Waterfall Litigation Trust Funding approved in accordance with Article VI hereof;]

(c)     the Litigation Trust Oversight Committee may, no more than quarterly, review and adjust settlement and abandonment monetary thresholds applicable to Major Decisions to reflect the evolving size and complexity of the Litigation Trust Assets being administered;

(d)     prior to the Class 2 Satisfaction Event, no changes or modifications to this Agreement governing the scope of Major Decisions may occur without the affirmative consent of at least two (2) AHG Members and following the Class 2 Satisfaction Event, no changes or modifications to this Agreement governing the scope of Major Decisions may occur without the affirmative consent of a majority of the Litigation Trust Oversight Committee;

(e)     prior to the Class 2 Satisfaction Event, no changes or modifications to this Agreement governing the scope of the Sacred Rights may occur without the affirmative consent of each of a UCC Member and two (2) AHG Members and following the Class 2 Satisfaction Event, no changes or modifications to this Agreement governing the scope of the Sacred Rights may occur without the affirmative consent of each of one (1) UCC Member and one (1) AHG Member; and

(f)     no failure by the Litigation Trust, the Litigation Trustee, the Delaware Trustee, the Claims Ombudsman, the Registrar, the Disbursing Agents, or the Litigation Trust Oversight Committee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

---

[6]   "Class 1 Litigation Trust Commitment Termination Date" means the date that is the fifth anniversary of the Confirmation Date.

FBG_CH1_00092476

DEBTORS' EXHIBIT NO. 178
Page 77 of 360

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.1   Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without reference to principles of conflicts of law that would require or permit application of the law of another jurisdiction); PROVIDED, HOWEVER, THAT THE PARTIES HERETO AND THE LITIGATION TRUST BENEFICIARIES INTEND THAT THE PROVISIONS HEREOF SHALL CONTROL OVER ANY CONTRARY OR LIMITING STATUTORY OR COMMON LAW OF THE STATE OF DELAWARE (OTHER THAN THE DELAWARE STATUTORY TRUST ACT) AND THAT, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THERE SHALL NOT BE APPLICABLE TO THE LITIGATION TRUST, THE LITIGATION TRUSTEE, THE LITIGATION TRUST OVERSIGHT COMMITTEE, THE DELAWARE TRUSTEE, LITIGATION TRUST BENEFICIARIES, OR THIS AGREEMENT ANY PROVISION OF THE LAWS (STATUTORY OR COMMON) OF THE STATE OF DELAWARE (OTHER THAN THE DELAWARE STATUTORY TRUST ACT) PERTAINING TO TRUSTS WHICH RELATE TO OR REGULATE IN A MANNER INCONSISTENT WITH THE TERMS HEREOF, INCLUDING: (A) THE FILING WITH ANY COURT OR GOVERNMENTAL BODY OR AGENCY OF TRUSTEE ACCOUNTS OR SCHEDULES OF TRUSTEE FEES AND CHARGES, (B) AFFIRMATIVE REQUIREMENTS TO POST BONDS FOR TRUSTEES, OFFICERS, AGENTS, OR EMPLOYEES OF A TRUST, (C) THE NECESSITY FOR OBTAINING COURT OR OTHER GOVERNMENTAL APPROVAL CONCERNING THE ACQUISITION, HOLDING OR DISPOSITION OF REAL OR PERSONAL PROPERTY, (D) FEES OR OTHER SUMS PAYABLE TO TRUSTEES, OFFICERS, AGENTS OR EMPLOYEES OF A TRUST, (E) THE ALLOCATION OF RECEIPTS AND EXPENDITURES TO INCOME OR PRINCIPAL, (F) RESTRICTIONS OR LIMITATIONS ON THE PERMISSIBLE NATURE, AMOUNT OR CONCENTRATION OF TRUST INVESTMENTS OR REQUIREMENTS RELATING TO THE TITLING, STORAGE OR OTHER MANNER OF HOLDING OF TRUST ASSETS, (G) THE EXISTENCE OF RIGHTS OR INTERESTS (BENEFICIAL OR OTHERWISE) IN TRUST ASSETS, (H) THE ABILITY OF BENEFICIAL OWNERS OR OTHER PERSONS TO TERMINATE OR DISSOLVE A TRUST, OR (I) THE ESTABLISHMENT OF FIDUCIARY OR OTHER STANDARDS OR RESPONSIBILITIES OR LIMITATIONS ON THE ACTS OR POWERS OF TRUSTEES OR BENEFICIAL OWNERS THAT ARE INCONSISTENT WITH THE LIMITATIONS ON LIABILITY OR AUTHORITIES AND POWERS OF THE LITIGATION TRUSTEE, DELAWARE TRUSTEE, LITIGATION TRUST OVERSIGHT COMMITTEE, OR THE LITIGATION TRUST BENEFICIARIES SET FORTH OR REFERENCED IN THIS TRUST AGREEMENT.

12.2   Jurisdiction.  The Parties agree that the Bankruptcy Court and the Delaware Court of Chancery shall have non-exclusive jurisdiction over the Litigation Trust; *provided* that the Litigation Trustee shall have power and authority to bring any action in any court of competent jurisdiction to prosecute or pursue any recoveries in respect of any Litigation Trust Assets.  Each Party to this Agreement hereby irrevocably consents to the jurisdiction of the Bankruptcy Court and the Delaware Court of Chancery in any action to enforce, interpret or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court or

61

FBG_CH1_00092477

DEBTORS' EXHIBIT NO. 178
Page 78 of 360

the Delaware Court of Chancery. Each Party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret, or construe any provision of this Agreement.

12.3 <u>Severability</u>. In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by a Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

12.4 <u>Notices</u>. Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile or electronic communication, sent by nationally recognized overnight delivery service, or mailed by first-class mail. The date of receipt of such notice shall be the earliest of (a) the date of actual receipt by the receiving party, (b) the date of personal delivery (or refusal upon presentation for delivery), (c) the date of the transmission confirmation or (d) three (3) Business Days after service by first-class mail, to the receiving party's below address(es):

(i) if to the Litigation Trustee, to:

Gerard Uzzi
Uzzi & Lall, a division of CBMN Advisors LLC
115 Broadway, 5th Floor
New York, NY 10006
Attn: Gerard Uzzi
Keshav Lall
Matthew Feldman
Griffin Dunne
Emails: guzzi@uzzilall.com
klall@uzzilall.com
mfeldman@uzzilall.com
gdunne@uzzilall.com

FBG_CH1_00092478

with a copy to:

> Gibson, Dunn & Crutcher LLP
> 200 Park Avenue, New York, NY 10166-0193
> Attn:   Scott J. Greenberg
>         AnnElyse Scarlett Gains
>         C. Lee Wilson
>         Christina M. Brown
>         Robert Marsters Jr.
> Emails:  SGreenberg@gibsondunn.com
>          agains@gibsondunn.com
>          clwilson@gibsondunn.com
>          christina.brown@gibsondunn.com
>          rmarsters@gibsondunn.com

(ii)   If to Delaware Trustee, to:

> Wilmington Savings Fund Society, FSB
> 500 Delaware Avenue, 11th Floor
> Wilmington, DE 19801
> Attn:   GCM/Raye Goldsborough
>         Patrick Healy
> Emails:  rgoldsborough@wsfsbank.com
>          phealy@wsfsbank.com

with a copy to:

> ArentFox Schiff, LLP
> 1301 Avenue of the Americas, 42nd Floor
> New York, NY 10019 United States
> Attn:   Jeffrey R. Gleit
> Email:   jeffrey.gleit@afslaw.com

(iii)  if to the Claims Ombudsman, to:

> [Claims Ombudsman]

(iv)   if to the Registrar, to:

> Wilmington Savings Fund Society, FSB
> 500 Delaware Avenue, 11th Floor
> Wilmington, DE 19801
> Attn:   GCM/Raye Goldsborough
>         Patrick Healy
> Emails:  rgoldsborough@wsfsbank.com
>          phealy@wsfsbank.com

FBG_CH1_00092479

**DEBTORS' EXHIBIT NO. 178**
**Page 80 of 360**

with a copy to:

> ArentFox Schiff, LLP
> 1301 Avenue of the Americas, 42nd Floor
> New York, NY 10019 United States
> Attn:     Jeffrey R. Gleit
> Email:    jeffrey.gleit@afslaw.com

(v)     if to the Disbursing Agent, to:

> Wilmington Savings Fund Society, FSB
> 500 Delaware Avenue, 11th Floor
> Wilmington, DE 19801
> Attn:     GCM/Raye Goldsborough
>           Patrick Healy
> Emails:   rgoldsborough@wsfsbank.com
>           phealy@wsfsbank.com

with a copy to:

> ArentFox Schiff, LLP
> 1301 Avenue of the Americas, 42nd Floor
> New York, NY 10019 United States
> Attn:     Jeffrey R. Gleit
> Email:    jeffrey.gleit@afslaw.com

(vi)     if to any Litigation Trust Beneficiary, to the last known address of such Litigation Trust Beneficiary according to the Litigation Trustee's or Claims Ombudsman's records, as applicable; and

(vii)     if to a Member of the Litigation Trust Oversight Committee, to the applicable address(es) set forth on **Exhibit B**.

12.5     Headings. The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

12.6     Plan and Confirmation Order. The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates the Plan and Confirmation Order by reference and is subject to the provisions of the Plan and the Confirmation Order. To that end, the Litigation Trust shall have full power and authority to take any action consistent with the purpose and provisions of the Plan, to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan that directly affect the interests of the Litigation Trust, and to seek any orders from the Bankruptcy Court solely in furtherance of this Agreement. In the event of any direct conflict or inconsistency between any provision of this Agreement, on the one hand, and the provisions of the Plan or the Confirmation Order, on the other hand, the provisions of this Agreement shall govern and control in all respects.

FBG_CH1_00092480

12.7    Entire Agreement. This Agreement and the exhibits attached hereto, together with the Plan and the Confirmation Order, contain the entire agreement between the Parties and supersede all prior and contemporaneous agreements or understandings between the Parties with respect to the subject matter hereof.

12.8    Cumulative Rights and Remedies.   The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity, subject to any limitations provided under the Plan and the Confirmation Order.

12.9    Meanings of Other Terms.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa, and words importing persons shall include firms, associations, corporations, and other entities.  All references herein to Articles, Sections, and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute, or regulation, refer to the corresponding Articles, Sections, and other subdivisions of this Agreement and the words "herein," "hereof," and "herewith" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  The term "including" shall mean "including, without limitation."

12.10   Successors in Interest.  This Agreement shall be binding upon and inure to the benefit of any successor in interest to any one or more of the FBG Debtors, including any trustee appointed in their Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of their Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (as limited by the Plan and the Confirmation Order), that shall, upon becoming any such successor be subject to and obligated to comply with the terms and conditions hereof.  The obligations of the Litigation Trust and Litigation Trustee to any one or more of the FBG Debtors pursuant to this Agreement shall also be obligations of the Litigation Trust and Litigation Trustee to any such successor in interest.

12.11   Limitations.  Except as otherwise specifically provided in this Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the Parties hereto any rights or remedies under or by reason of this Agreement.  The Parties hereby acknowledge and agree that nothing herein is intended to, does, or shall be construed to prejudice or harm in any way the rights, remedies, or treatment (including any releases, exculpation, indemnification, or otherwise) of any Released Party or Exculpated Party, solely in their capacity as a Released Party or Exculpated Party, under the Plan.

12.12   Further Assurances.  From and after the Confirmation Date, the Parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

12.13   Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

FBG_CH1_00092481

12.14   Authority.   Each Party hereby represents and warrants to the other Parties that: (i) such Party has full corporate power and authority to enter into this Agreement, to carry out its obligations hereunder, and to consummate the transactions contemplated hereby; (ii) the execution and delivery by such Party of this Agreement and the performance by such Party of its obligations hereunder has been duly authorized by all requisite corporate action on the part of such Party; (iii) this Agreement has been duly executed and delivered by such Party, and (assuming due authorization, execution, and delivery by the other Parties hereto) this Agreement constitutes a legal, valid, and binding obligation of such Party enforceable against such Party in accordance with its terms.

*   *   *   *   *

FBG_CH1_00092482

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

GERARD UZZI, AS TRUSTEE OF THE FBG
VICTIMS LITIGATION TRUST


By: _____
Name:
Title:

[SIGNATURE PAGE TO LITIGATION TRUST AGREEMENT]

FBG_CH1_00092483

WILMINGTON SAVINGS FUND SOCIETY, FSB, AS DELAWARE TRUSTEE OF THE FBG VICTIMS LITIGATION TRUST

By: _____
Name:
Title:

[SIGNATURE PAGE TO LITIGATION TRUST AGREEMENT]

FBG_CH1_00092484

WILMINGTON SAVINGS FUND SOCIETY, FSB, AS REGISTRAR OF THE FBG VICTIMS LITIGATION TRUST

By: _____

Name:

Title:

[SIGNATURE PAGE TO LITIGATION TRUST AGREEMENT]

FBG_CH1_00092485

WILMINGTON SAVINGS FUND SOCIETY,
FSB, AS DISBURSING AGENT OF THE FBG
VICTIMS LITIGATION TRUST


By: _____
Name:
Title:


[SIGNATURE PAGE TO LITIGATION TRUST AGREEMENT]

FBG_CH1_00092486

[_____], AS CLAIMS OMBUDSMAN OF
THE FBG VICTIMS LITIGATION TRUST


By: _____
Name:
Title:

[SIGNATURE PAGE TO LITIGATION TRUST AGREEMENT]

FBG_CH1_00092487

## EXHIBIT A

**Form of Certificate of Trust of the FBG Victims Litigation Trust**

FBG_CH1_00092488

**CERTIFICATE OF TRUST**
**OF**
**FBG VICTIMS LITIGATION TRUST**

This Certificate of FBG Victims Litigation Trust (the "<u>Litigation Trust</u>") has been duly executed and is being filed by the undersigned, as the trustees of the Litigation Trust, to form a statutory trust pursuant to the Delaware Statutory Trust Act (12 Del. C. §§ 3801, *et seq.*).

     1.    *Name.* The name of the statutory trust formed hereby is FBG Victims Litigation Trust.

     2.    *Delaware Trustee.* The name and address of the trustee of the Litigation Trust with a principal place of business in the State of Delaware is [•], [•].

     3.    *Effective Date.* This Certificate of Trust shall become effective upon filing in the Office of the Secretary of State of the State of Delaware.

IN WITNESS WHEREOF, the undersigned have executed this Certificate of Trust as of [_____], 2026.

> [•], not in its individual capacity but solely as Delaware Trustee
>
>
> By: _____
> Name: _____
> Title: _____
>
>
> [•], not in its individual capacity but solely as Litigation Trustee
>
>
> By: _____
> Name: _____
> Title: _____

FBG_CH1_00092489

## <u>EXHIBIT B</u>

**Initial Members of the Litigation Trust Oversight Committee and Compensation**

<u>AHG Members</u>:

1.  [Name, address, and compensation terms and amount]

<u>UCC Member</u>:

1.  [Name, address, and compensation terms and amount]

FBG_CH1_00092490

## EXHIBIT C

### Compensation of Litigation Trustee

Compensation.   The Litigation Trustee shall receive (a) $600,000 annually, paid monthly in advance and (b) a scaled success fee calculated as a percentage of Litigation Trust Proceeds distributed to Litigation Trust Beneficiaries (including, for the avoidance of doubt, all distributions made pursuant to Section 6.5(d) of the Plan) in accordance with the table below:[1]

| Scaled Tier | Litigation Trust Proceeds Distributed to Litigation Trust Beneficiaries | Percentage Success Fee |
|---|---|---|
| Tier 1 | $0 - $400 million | 1.0% |
| Tier 2 | $400 million - $1 billion | 2.0% |
| Tier 3 | $1 billion - $2 billion | 3.0% |
| Tier 4 | $2 billion + | 4.5% |

Expenses.  The Litigation Trust will reimburse the Litigation Trustee for all actual, reasonable and documented out-of-pocket expenses incurred by the Litigation Trustee in connection with the performance of the duties of the Litigation Trustee under the Confirmation Order, the Plan, or this Agreement; *provided* that the Litigation Trust shall receive a 25% discount on the hourly rates of supporting professionals employed by the Litigation Trustee's firm, Uzzi & Lall, in exchange for the success fee noted above.

---

[1]   For example, if the Litigation Trust distributes $1.5 billion in Litigation Trust Proceeds, the success fee would be 1% on the first $400 million, 2% on the next $600 million, and 3% on the final $500 million.  The Litigation Trustee's engagement letter is expected to contain customary protections relating to such success fee.

FBG_CH1_00092491

## <u>EXHIBIT D</u>

## Plan Excerpts of Litigation Trust Economic Terms

| Topic | Term | Plan Section |
|---|---|---|
| **Initial Litigation Trust Funding** | (i)   $25,000,000 of Litigation Trust Cash Funding, and<br><br>(ii)  $50,000,000 of Initial Litigation Trust Funding Commitments provided and backstopped by certain holders of DIP A Claims.<br><br>• <u>Commitment Period</u>: Five (5) years.<br><br>• <u>Minimum Funding</u>: Available in one or more draws, equal to the lesser of (i) $10 million and (ii) the undrawn commitment amount. | §§ 1.1, 6.3 |
| **Additional Litigation Trust Funding** | The Litigation Trust may obtain Additional Litigation Trust Funding on the following terms and conditions:<br><br>(i)   the Litigation Trust may obtain all or a portion of the Additional Class 1 Litigation Trust Funding as Additional Class 1 Litigation Trust Interests if such commitments are (a) on the same terms as the Initial Litigation Trust Funding Commitments (including <u>Section 6.5(b)(i) -(iv)</u> of the Plan), and (b) approved by the Litigation Trust Oversight Committee as a Major Decision; and<br><br>(ii)  if the Litigation Trust has already obtained all Additional Class 1 Litigation Trust Funding, the Litigation Trust may obtain Additional Waterfall Litigation Trust Funding if such Additional Waterfall Litigation Trust Funding is (a) approved by a unanimous vote of the Litigation Trust Oversight Committee, including the UCC Member(s), or (b) approved by the Bankruptcy Court pursuant to the Court-Approved Additional Waterfall Litigation Funding.<br><br>All Additional Litigation Trust Funding obtained by the Litigation Trust shall be subject to the following conditions:<br><br>(i)   the Litigation Trustee shall conduct an Agreed Market Check;[1]<br><br>(ii)  at the time of seeking such funding, the Litigation Trust has, or the Litigation Trustee reasonably expects, that the Litigation Trust will have in the near term, less than $7,500,000 (on a pro forma basis); and<br><br>(iii) if the Additional Litigation Trust Funding is provided by an insider (including an existing holder of Class 1 Litigation Trust Interests), then the Additional Litigation Trust Funding must be on economic terms no more expensive for the Litigation Trust than <u>Section 6.5(b)(i)–(iii)</u> of the Plan. | § 6.4(a)–(b) |
| **Preemptive Rights** | Any additional funding of the Litigation Trust (including any Additional Litigation Trust Funding) shall be offered first to holders of Class 1 Litigation | § 6.4(d) |

[1] **"Agreed Market Check"** means a third-party solicitation or marketing process conducted by or on behalf of the Litigation Trust to solicit funding, bids, or other expressions of competitive interest, including from multiple unaffiliated and independent market participants, that is: (i) designed and implemented in good faith by the Litigation Trustee in consultation with its retained professionals; (ii) reasonably tailored to prevailing market conditions, the nature of the Litigation Trust Assets, and the objectives of the Litigation Trust; (iii) inclusive of meaningful outreach to a sufficient number of credit and active market participants to permit an informed comparison of available alternatives; and (iv) documented in writing and performed consistent with the Litigation Trustee's duties.

FBG_CH1_00092492

| Topic | Term | Plan Section |
|---|---|---|
| | Trust Interests on a pro rata basis pursuant to the terms of the Litigation Trust Agreement and in accordance with applicable law.  Each holder of a Class 1 Litigation Trust Interest shall be deemed to have declined such offer if it has not committed to provide such additional funding within ten (10) business days of a request therefor. | |
| **Oversubscription Rights** | To the extent that any Litigation Trust Class 1 Funding Contributor fails to fund, declines to fund, or is otherwise unable to fund all or any portion of its pro rata share of  the Initial Litigation Trust Funding Commitments (the "**Unfunded Amount**"), the Litigation Trust Backstop Parties, pursuant to the terms of any backstop commitment letter, shall subscribe for and fund such Unfunded Amount, on a pro rata basis based on their respective commitments (or as otherwise agreed among such participating parties).  Each applicable Litigation Trust Backstop Party shall be entitled to receive Class 1 Litigation Interests in respect of any Unfunded Amount actually funded by such party. | § 6.3(d) |
| **Funding Conditions Precedent and Timing** | The Litigation Trust Class 1 Funding Contributors may decline to fund a requested Litigation Trust Class 1 Funding Contribution in the reasonable discretion of the Required Litigation Trust Funding Contributors (as defined in the Litigation Trust Agreement) if they determine based on a written valuation or status report from the Litigation Trustee that the remaining liquidation value of the Litigation Trust Assets would be insufficient to repay the outstanding Class 1 Litigation Trust Interests; *provided* that, if a Litigation Trust Class 1 Funding Contributor declines to fund a requested Litigation Trust Class 1 Funding Contribution, the Litigation Trust shall be prohibited from obtaining any future Additional Litigation Waterfall Trust Funding from such holder of Class 1 Litigation Trust Interests or its Affiliates. <br><br> Subject to satisfaction of applicable conditions precedent, the Litigation Trust Class 1 Funding Contributors shall fund a requested Litigation Trust Class 1 Funding Contribution within ten (10) Business Days of receipt of a written request therefor from the Litigation Trustee. | § 6.4(f) |
| **Litigation Trust Beneficiaries** | The Litigation Trust will have three beneficiary classes: <br><br> • Class 1 Litigation Trust Interests will be held by the Litigation Trust Class 1 Funding Contributors. <br><br> • Class 2 Litigation Trust Interests will be held by holders of Allowed DIP A Claims. <br><br> • Class 3(a) Litigation Trust Interests shall be held by holders of Allowed Roll-Up Claims. <br><br> • Class 3(b) Litigation Trust Interests shall be held by the Claims Ombudsman, as agent to the holders of Allowed General Unsecured Claims and Allowed Subordinated Claims. <br><br> • Class 3(c) Litigation Trust Interests shall be held by holders of Allowed First Lien Claims and Allowed Second Lien Claims. | § 1.1 |
| **Transfer Restrictions** | The Litigation Trust Interests shall not be certificated and shall be nontransferable and non-assignable except by will, intestate, succession, or operation of law. <br><br> Upon the Confirmation Date, the lender registers maintained by the applicable agents under the DIP Credit Agreement, First Lien Term Loan Agreement, | § 6.18, § 7.14(c) |

FBG_CH1_00092493

| Topic | Term | Plan Section |
|---|---|---|
| | and Second Lien Term Loan Agreement shall be and remain frozen and will not be transferable other than to facilitate:<br><br>(i) transfers among Affiliates;<br><br>(ii) transfers required in connection with the termination, wind-down, or expiration of a collateralized loan obligation vehicle, collateralized debt obligation, or similar structured finance vehicle that holds such claims (including transfers to a liquidating trust, warehouse facility, or other entity established in connection with such wind-down);<br><br>(iii) transfers required in connection with a replacement of, or succession to, the investment manager or collateral manager of any collateralized loan obligation vehicle, collateralized debt obligation, or similar structured finance vehicle that holds such claims, including transfers to a new vehicle managed by a successor manager; and<br><br>(iv) transfers required by applicable law or by the organizational or governing documents of the holder in effect as of the Confirmation Date. | |
| **Litigation Trust Waterfall** | Except as may be altered by the provisions of Additional Waterfall Litigation Trust Funding, proceeds from the monetization of Litigation Trust Assets, net of fees, costs, or other expenses pursuant to the terms of the Litigation Trust Agreement, shall be distributed to Litigation Trust Beneficiaries as follows:<br><br>(i) *First*, to holders of Class 1 Litigation Trust Interests (or, if applicable, Additional Class 1 Litigation Trust Interests), which shall receive the amounts to which they are entitled pursuant to Section 6.5(b)(i), (ii), and (iii) of the Plan in respect of principal and investment return from the Litigation Trust Class 1 Funding Commitments, the Litigation Trust Class 1 Funding Contributions, and any Additional Class 1 Litigation Trust Funding (the "**First Return Threshold**");<br><br>(ii) *Second*, following satisfaction of the First Return Threshold until aggregate distributions from the Litigation Trust (including distributions pursuant to Section 6.5(b) of the Plan) equal $350,000,000 (the "**Second Return Threshold**"):<br><br>&bull; 15% to the holders of Class 1 Litigation Trust Interests (and Additional Class 1 Litigation Trust Interests, if applicable), and<br><br>&bull; 85% to holders of Class 2 Litigation Trust Interests;<br><br>(iii) *Third*, following the satisfaction of the Second Return Threshold until aggregate distributions to holders of Class 2 Litigation Trust Interests from the Litigation Trust equal to the amount of the Allowed DIP A Claims as of the Confirmation Date (excluding, for the avoidance of doubt, any reduction for the Credit Bid Claims) (the "**Final Return Threshold**"):<br><br>&bull; 10% to holders of Class 1 Litigation Trust Interests (and Additional Class 1 Litigation Trust Interests, if applicable),<br><br>&bull; 74% to holders of Class 2 Litigation Trust Interests, and<br><br>&bull; 16% to the holders of Class 3 Litigation Trust Interests (subject to payment of Allowed Settled Administrative Expense Claims, Allowed Administrative Expense Claims, Allowed Priority Tax | § 6.5(a) |

FBG_CH1_00092494

| Topic | Term | Plan Section |
|---|---|---|
| | Claims, and Allowed Other Priority Claims in full, set forth in accordance with Section 6.5(d) of the Plan); and<br><br>(iv) *Fourth*, following the satisfaction of the Final Return Threshold: (1) 10% to the holders of Class 1 Litigation Trust Interests (and Additional Class 1 Litigation Trust Interests, if applicable), and (2) 90% to the holders of Class 3 Litigation Trust Interests (subject to payment of Allowed Settled Administrative Expense Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims in full, set forth in accordance with Section 6.5(d) of the Plan). | |
| **Litigation Trust Waterfall: Class 1 Litigation Trust Interests Distributions** | Distributions to the holders of Class 1 Litigation Trust Interests (and Additional Class 1 Litigation Trust Interests, if applicable) pursuant to the Litigation Trust Waterfall shall be paid as follows:<br><br>(i) *First*, to the Litigation Trust Class 1 Funding Contributors, pro rata in accordance with their respective Litigation Trust Class 1 Funding Contributions, until each Litigation Trust Class 1 Funding Contributor has received an amount equal to the greater of (a) an internal rate of return on such Litigation Trust Class 1 Funding Contributions equal to 20.0% and (b) a multiple on invested capital on such Litigation Trust Class 1 Funding Contributions of 1.75x, with such returns being measured from the date of each Litigation Trust Class 1 Funding Contribution;<br><br>(ii) *Second*, to the Litigation Trust Class 1 Funding Contributors, in an amount accrued on the daily undrawn amounts of their respective Litigation Trust Class 1 Funding Commitments, at the rate of 5.0% per annum; *provided* that no Litigation Trust Class 1 Funding Contributor shall be entitled to receive any such distribution in respect of undrawn Litigation Trust Class 1 Funding Commitments for any period during which such Litigation Trust Class 1 Funding Contributor is a Defaulting Contributor;<br><br>(iii) *Third*, to the Litigation Trust Backstop Parties until each such Litigation Trust Backstop Party has received an amount equal to 5.0% of the amount of such Litigation Trust Backstop Party's Litigation Trust Class 1 Funding Commitment (whether drawn or undrawn) backstopped by such Litigation Trust Backstop Party; *provided* that (1) no Litigation Trust Backstop Party shall be entitled to receive any such distribution for any period during which such Litigation Trust Backstop Party is a Defaulting Contributor and (2) if a Litigation Trust Backstop Party becomes a Defaulting Contributor, such Litigation Trust Backstop Party's Litigation Trust Backstop Commitments and fees in respect thereof may be terminated or reallocated in Litigation Trustee's reasonable discretion; and<br><br>(iv) *Fourth*, to the Litigation Trust Class 1 Funding Contributors, pro rata in accordance with the amounts of their respective Litigation Trust Class 1 Funding Commitments (whether drawn or undrawn, and whether or not the Commitment Period (as defined in the Litigation Trust Agreement) has lapsed), for all Litigation Trust Class 1 Funding Contributors, for the life of the Litigation Trust; *provided* that no Litigation Trust Class 1 Funding Contributor shall be entitled to receive any such distribution for any period during which such Litigation Trust Class 1 Funding Contributor is a Defaulting Contributor. | § 6.5(b) |

FBG_CH1_00092495

| Topic | Term | Plan Section |
|---|---|---|
| **Litigation Trust Waterfall: Class 2 Litigation Trust Interests Distributions** | Distributions to the holders of Class 2 Litigation Trust Interests pursuant to the Litigation Trust Waterfall shall be paid pro rata based on the Class 2 Litigation Trust Interests held by such holders. | § 6.5(c) |
| **Litigation Trust Waterfall: Class 3 Litigation Trust Interests Distributions** | Distributions to the holders of Class 3 Litigation Trust Interests (and holders of Settled Administrative Expense Claims, Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims) pursuant to the Litigation Trust Waterfall shall be paid as follows:<br><br>(i) *First*, to the holders of Settled Administrative Expense Claims, pro rata based on the aggregate amount of Allowed Settled Administrative Expense Claims, until each such holder has received distributions equal to the amount of its Allowed Settled Administrative Expense Claim;<br><br>(ii) *Second*, to the holders of Allowed Administrative Expense Claims (other than Settled Administrative Expense Claims), pro rata based on the aggregate amount of Allowed Administrative Expense Claims (other than Settled Administrative Expense Claims) held by such holders, until each such holder has received distributions equal to the amount of its Allowed Administrative Expense Claim;<br><br>(iii) *Third*, to holders of Allowed Other Priority Claims, pro rata based on the aggregate amount of Allowed Other Priority Claims held by such holders, until each such holder has received distributions equal to the amount of its Allowed Other Priority Claim;<br><br>(iv) *Fourth*, to holders of Priority Tax Claims, pro rata based on the aggregate amount of Allowed Priority Tax Claims held by such holders, until each such holder has received distributions equal to the amount of its Allowed Priority Tax Claim;<br><br>(v) *Fifth*, to holders of Allowed Roll-Up Claims, Allowed First Lien Claims, Allowed Second Lien Claims, and Allowed General Unsecured Claims, pro rata based on the aggregate amount of $3,300,000,000 of Allowed Roll-Up Claims, Allowed First Lien Claims as of the Confirmation Date, Allowed Second Lien Claims as of the Confirmation Date, and Allowed General Unsecured Claims held by such holders, until each holder has received distributions equal to the amount of its respective $3,300,000,000 of Allowed Roll-Up Claims, Allowed First Lien Claims, Allowed Second Lien Claims, and Allowed General Unsecured Claims, as applicable; and<br><br>(vi) *Sixth*, to holders of Allowed Subordinated Claims, pro rata based on the amount of Allowed Subordinated Claims held by such holders, until each such holder has received distributions equal to the amount of its Allowed Subordinated Claim.<br><br>Following aggregate distributions equal to the amount of all Allowed Subordinated Claims, any residual value shall be paid as directed by the Litigation Trust Oversight Committee, subject to Bankruptcy Court approval; *provided* that no such residual value shall be distributable to or for the benefit of the FBG Debtors. | § 6.5(d) |
| **Defaulting Contributor** | ***Defaulting Contributor*** means any Litigation Trust Class 1 Funding Contributor that | § 1.1 |

FBG_CH1_00092496

**DEBTORS' EXHIBIT NO. 178**
**Page 97 of 360**

| Topic | Term | Plan Section |
|---|---|---|
| | (a) has failed to fund all or any portion of its Litigation Trust Class 1 Funding Contributions within ten (10) Business Days of the date the same were required to be funded hereunder, | |
| | (b) has notified the Litigation Trustee in writing that it does not intend to comply with its funding obligations hereunder, or has made a public statement to that effect, | |
| | (c) has, prior to the full funding of its Litigation Trust Class 1 Funding Contributions, failed, within ten (10) Business Days after written request by the Litigation Trustee, to confirm in writing to the Litigation Trustee that it will comply with its prospective funding obligations hereunder (provided that such Litigation Trust Class 1 Funding Contributor shall cease to be a Defaulting Contributor pursuant to this clause (c) upon receipt of such written confirmation by the Litigation Trustee), or | |
| | (d) has, or has a direct or indirect parent company that has, prior to the full funding of its Litigation Trust Class 1 Funding Contributions, (i) become the subject of a proceeding under the Bankruptcy Code or any other applicable debtor relief law or (ii) had appointed for it a receiver, custodian, conservator, trustee, administrator, assignee for the benefit of creditors or similar Person charged with reorganization or liquidation of its business or assets, including the Federal Deposit Insurance Corporation or any other state or federal regulatory authority acting in such a capacity. | |
| | Any determination by the Litigation Trustee that a Litigation Trust Class 1 Funding Contributor is a Defaulting Contributor shall be conclusive and binding absent manifest error.  The Litigation Trustee may agree in writing in its sole discretion, subject to the satisfaction of any conditions determined by the Litigation Trustee in its sole discretion, that a Defaulting Contributor is no longer a Defaulting Contributor, whereupon such Litigation Trust Class 1 Funding Contributor will, to the extent applicable, purchase at par that portion of outstanding Litigation Trust Class 1 Funding Contributions of the other Litigation Trust Class 1 Funding Contributors or take such other actions as the Litigation Trustee may determine to be necessary to cause the Litigation Trust Class 1 Funding Contributions to be held pro rata by the Litigation Trust Class 1 Funding Contributors in accordance with their applicable Litigation Trust Class 1 Funding Commitments, whereupon such Litigation Trust Class 1 Funding Contributor will cease to be a Defaulting Contributor; *provided* that no adjustments will be made retroactively with respect to fees payable in respect of such Litigation Trust Class 1 Funding Contributor's Litigation Trust Class 1 Funding Commitment while that Litigation Trust Class 1 Funding Contributor was a Defaulting Contributor; and provided, further, that except to the extent otherwise expressly agreed by the affected parties, such cessation of Defaulting Contributor status will not constitute a waiver or release of any claim of any party hereunder arising from that Litigation Trust Class 1 Funding Contributor having been a Defaulting Contributor. | |
| **Survival of Claims** | The Remaining Lender Claims and ABL Deficiency Claims against the Estates of the FBG Debtors are preserved and may continue to be asserted against the Estates of the applicable FBG Debtors and shall not be reduced by the amount of any Trust distributions made on or after the Confirmation Date.  For the avoidance of doubt, no Allowed Claims shall be reduced by any Trust distributions on or after the Confirmation Date.  The Remaining First Lien Claims and Remaining Second Lien Claims shall be deemed to be released | §§ 5.2(h) |

FBG_CH1_00092497

| Topic | Term | Plan Section |
|-------|------|--------------|
|  | against the FBG Debtors on the Effective Date.  Any property recovered on account of the Remaining Lender Claims (other than any Litigation Trust SPV Recoveries) shall be deemed to be contributed to the DIP Collateral Trust and shall constitute DIP Collateral Trust Assets. |  |

FBG_CH1_00092498

**EXHIBIT E**

**Litigation Trust Class 1 Funding Contributors'
Initial Litigation Trust Funding Commitments**

[On file with the Litigation Trustee]

FBG_CH1_00092499

## EXHIBIT F

### List of Litigation Trust Assets

The list of Litigation Trust Assets is set forth below, provided that (i) any asset, claim, right, or proceeds that the Litigation Trust asserts constitutes a Litigation Trust Asset shall be preserved for the Litigation Trust pending entry of a Final Order, settlement, or other agreed resolution pursuant to Section 5.2(j) of the Plan; (ii) no asset, claim, right, or proceeds shall be excluded from Litigation Trust Assets solely because the ABL Collateral Trust, DIP Collateral Trust or any other Person asserts an adverse claim thereto; (iii) in no event shall any assets that are determined by Final Order to constitute ABL Collateral Trust Assets or DIP Collateral Trust Assets be considered Litigation Trust Assets; (iv) Litigation Trust Assets shall not include any assets that are determined by Final Order to be property of the SPV Debtors or their Estates, any of the Factors; and (v) any disputes as to whether an asset is a Litigation Trust Asset, DIP Collateral Trust Asset, or ABL Collateral Trust Asset shall be resolved as provided in Section 5.2(j) of the Plan.

Failure to list an asset on this Exhibit that is subject to a bona fide dispute under the Plan shall not limit such disputed asset's inclusion in the Litigation Trust in accordance with the Plan.

1. The Litigation Trust Cash Funding.

2. All Estate Claims, including, for the avoidance of doubt, all 506(c), 552(b), and other surcharge rights, claims, and/or causes of action that the FBG Debtors have and/or are entitled to assert against any Person.

3. All rights, privileges, and defenses of the FBG Debtors relating to the Estate Claims, including the following Claims and Causes of Action:

   a. all Claims and Causes of Action asserted or assertable by any of the FBG Debtors related to the James Complaint and the Onset Complaint;

   b. all Claims, Causes of Action, counterclaims, and/or defenses asserted or assertable by any of the FBG Debtors in Adversary Proceeding Nos. 25-03800, 25-03803, 26-03005, 26-03038, 26-03006, 26-03052, 26-03091, and 26-03143;

   c. all Claims, Causes of Action, counterclaims, and/or defenses asserted or assertable by any of the FBG Debtors related to the *Motion of the Official Committee of Unsecured Creditors for (I) Leave, Standing, and Authority to Commence and Prosecute Certain Claims and Causes of Action on Behalf of the Debtors' Estates and (II) Exclusive Settlement Authority* (Docket No. 2881), including but not limited to the FBG Debtors' Claims against Aequum Capital Financial II LLC;

   d. all Claims and Causes of Action previously scheduled as assets of the FBG Debtors;

   e. all Claims and Causes of Action asserted or assertable by any of the FBG Debtors against any SPV Lender or their affiliates;

FBG_CH1_00092500

**DEBTORS' EXHIBIT NO. 178**
**Page 101 of 360**

f.  all Claims and Causes of Action asserted or assertable by any of the FBG Debtors or the Estate(s) of the FBG Debtors against any Persons arising from or relating to any transaction involving any FBG Debtor and the payment of unlawful dividends, the avoidance of prepetition distributions or other distributions, fraud or misrepresentation, or one or more breaches of fiduciary or other duties;

g.  all Claims and Causes of Action asserted or assertable by any of the FBG Debtors or the Estate(s) of the FBG Debtors against any Specified Non-Released Parties, whether or not such Parties are expressly listed on the non-exhaustive scheduled of Specified Non-Released Parties or subsequently meet the definition of being a Specified Non-Released Party, including pursuant to a Final Order;[1]

h.  all Claims and Causes of Action asserted or assertable by any of the FBG Debtors or the Estate(s) of the FBG Debtors against a Specified Non-Released Party, whether personally, individually, and/or in his capacity as an officer, manager, director, and/or shareholder of any one or more of the FBG Debtors for their work as an officer, manager, director, and/or shareholder of any FBG Debtors, including, without limitation, fraud, willful misconduct, or gross negligence;

i.  all Claims and Causes of Action related to insurance contracts and insurance policies to which any FBG Debtor is a party or pursuant to which any FBG Debtor has any rights whatsoever, including but not limited to, Causes of Actions against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, overpayment of premiums, or fees;

j.  all Claims and Causes of Action related to tax obligations or refunds, including, without limitation, Claims or Causes of Action against or related to all Persons or Entities that owe or that may in the future owe money related to tax refunds to the FBG Debtors;

k.  all Claims and Causes of Action related to tariff refunds or amounts collected under the International Emergency Economic Powers Act;

---

[1]  "**Specified Non-Released Parties**" means (i) any Person (or Affiliate of any Person) against which any action has been commenced on behalf of a Debtor or its Estate in this Bankruptcy Court or any court of competent jurisdiction prior to the Confirmation Hearing, including, for the avoidance of doubt, any defendants named or to be named by the Debtors in the James Complaint or named by the Debtors in the Onset Complaint; (ii) any Person (or Affiliate of any Person) identified as a defendant or a potential defendant of a Cause of Action in the Plan Supplement; (iii) any Person (or Affiliate of any Person) that is charged with a crime (whether before or after the Confirmation Date) based on conduct related to the Debtors; (iv) any Person (or Affiliate of any Person) that meets the definition of Adverse Conduct, as determined by a Final Order of the Bankruptcy Court; and (v) any subsequent transferee of any of the foregoing with respect to any assets of or transfers by the Debtors or their Affiliates or Representatives.  Specified Non-Released Parties include, without limitation, (i) the Persons and Entities listed on Schedule 1 annexed to the Schedule of Retained Causes of Action filed as part of the Plan Supplement, (ii) any Person or Entity that meets the definition of Adverse Conduct, and (iii) any other Person or Entity identified by the FBG Debtors on any subsequent Schedule of Specified Non-Released Parties..

FBG_CH1_00092501

l.  all Claims, Causes of Action, defenses, cross-claims, indemnification, third-party claims, and counterclaims related to litigation and possible litigation, whether based in tort, contract, equity, or otherwise, including any personal injury claims and wrongful death actions, as well as all claims against or related to all Persons or Entities that are party to or that may in the future become party to arbitration, or any other type of adversarial dispute resolution proceeding, whether formal or informal, or judicial or nonjudicial;

m.  all Claims and Causes of Action related to contracts or leases or similar instruments to which any of the FBG Debtors, as applicable, is a party or pursuant to which any of the FBG Debtors has any rights whatsoever, including, without limitation, all contracts and leases that are assumed pursuant to the Plan or were previously assumed by the FBG Debtors.  The Claims and Causes of Action reserved include, but are not limited to, Causes of Action against vendors, lessors, suppliers of goods or services, suppliers of utilities, contractors, customers, purchasers, or any other parties;

n.  all Claims and Causes of Action related to accounts receivable and accounts payable, including, but not limited to, all Claims and Causes of Action against or related to all Persons or Entities that owe or that may in the future owe money to the FBG Debtors.  Furthermore, the FBG Debtors expressly reserve all Causes of Action against or related to all Persons or Entities who assert or may assert that the FBG Debtors owe money to them;

o.  all Claims and Causes of Action related to postings of a security deposit, adequate assurance payment, or any other type of deposit, prepayment, or collateral;

p.  all Claims and Causes of Action related to liens, including Causes of Action under Section 547 and 550 of the Bankruptcy Code, regardless of whether such lien is released, returned to the FBG Debtors or the Estate(s) of the FBG Debtors, or otherwise avoided, invalidated or terminated through any means, and regardless of whether such lien is specifically identified herein or in the Plan;

q.  all Claims, Causes of Action, defenses, appeals, cross-claims, and counterclaims related to any Claims or Causes of Action asserted by any Governmental Unit;

r.  all Claims, Causes of Action, defenses, appeals, cross-claims, and counterclaims related to any government enforcement action, including as a result of any forfeiture proceeding, order of restitution, or governmental settlement agreement;

s.  all Claims and Causes of Action related to vendor obligations;

t.  all Claims and Causes of Action related to current or former employee matters;

u.  all Claims and Causes of Action based in and/or related to the FBG Debtors' intellectual property and related rights;

v.  all Claims and Causes of Action related to environmental matters;

FBG_CH1_00092502

w.  all Claims and Causes of Action related to conversion;

x.  all Claims and Causes of Action related to Avoidance Actions, preferences, surcharge, or other claims pursuant to chapter 5 of the Bankruptcy Code, including, but not limited to, all Claims and Causes of Action for fraudulent transfer asserted or assertable by any of the FBG Debtors or the Estate(s) of the FBG Debtors, pursuant to Bankruptcy Code Sections 544, 548(a)(1)(A), 548(a)(1)(B), and 550 and applicable state fraudulent transfer law;

y.  all Claims and Causes of Action asserted or assertable by any of the FBG Debtors or the Estate(s) of the FBG Debtors for aiding and abetting, civil conspiracy, knowing participation in, or receipt of the proceeds of, or other wrongful conduct, including, without limitation, Claims and Causes of Action arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, whether asserted under federal or state law, and whether based on conduct occurring before, on, or after the Petition Date;

z.  all Claims and Causes of Action asserted or assertable by any of the FBG Debtors or the Estate(s) of the FBG Debtors sounding in tort, including, but not limited to, negligence, professional malpractice, or breach of any duties of care or loyalty;

aa. all Claims and Causes of Action (including, without limitation, against a Released Party) that are expressly not released pursuant to Section 13.5(a) or 13.5(b) of the Plan; and

bb. all other Claims and Causes of Action belonging to the FBG Debtors.

4.  The FBG Debtors' and Creditors' Committees rights, privileges, and defenses in respect of the D&O Proceeds Appeals.

5.  All Insurance Rights of the FBG Debtors with respect to Insurance.

6.  Policies that provide or may provide coverage for the Estate Claims, including for the avoidance of doubt, the rights to the proceeds of the D&O Policies.

7.  All Direct Creditor Claims of Preference Settlement Electing Creditors (which claims are thus contributed to the Litigation Trust by Preference Settlement Electing Creditors and are not assets of the FBG Debtors transferred in connection with the Estate Claims Credit Bid Transaction).

8.  All books, records, and investigative and/or discovery findings of the FBG Debtors, including to the extent such records are owned or controlled by advisors to the FBG Debtors, any independent director or manager of the FBG Debtors, the Examiner and the advisors thereto (subject to a mutual agreement on cooperation/transfer), and the advisors to the Creditors' Committee; *provided* that (a) the FBG Debtors' Professionals, (b) any independent director or manager of the FBG Debtors, (c) the Examiner and the advisors thereto (subject to a mutual agreement on cooperation/transfer), and (d) the Creditors' Committee's Professionals shall not be required to turnover all work product and

FBG_CH1_00092503

communications but each such professional, in its sole discretion, may compile (in a digest or other appropriate format) its material findings, information, and records and provide the Litigation Trust with such compilation and/or enter into common interest or other agreements sufficient to facilitate the turnover of work product or communications.

9.  All Litigation Trust SPV Recoveries.

10. All assets or other interests in property made payable to or otherwise acquired by any of the FBG Debtors (or their Estates) as a result of any government enforcement action, including as a result of any forfeiture proceeding, order of restitution, or governmental settlement agreement.

11. All other Litigation Trust Assets.

FBG_CH1_00092504

## EXHIBIT G

### List of Factors and Supply Chain Financers

Factors:[1]

1. Arab Banking Corporation B.S.C.

2. Credit Agricol

3. Evolution Credit Partners Management LLC

4. FactoFrance

5. ING Belgium S.A./N.V.

6. Jefferies Financial Group, Inc.

7. Kars Funding, LLC

8. Katsumi Servicing, LLC

9. Raistone Capital LLC

10. Raistone Purchasing LLC - Series XXXII

Supply Chain Financers:[2]

1. 1977 O'Connor

2. A&Q METRIC SPC - GLOBAL OPPORTUNISTIC II SP - Class Auto Receivables

3. ACS FB LLC

---

[1]  This list of Factors is non-exhaustive, as the term "Factor" is defined in the Plan to mean "means any Person that purchased, or intended or agreed to purchase, accounts receivable at a discount from one or more FBG Debtors, and as identified in an exhibit to the Litigation Trust Agreement." Therefore, a parties' exclusion from the list is not indicative of whether such party qualifies as a Factor pursuant to the Plan.

[2]  This list of Supply Chain Financers is non-exhaustive, as the term "Supply Chain Financer" is defined in the Plan to mean "any financial institution, fund, or other Person (other than any ABL Lender in its capacity as such) that (i) provided (or asserts that it provided) financing or liquidity to suppliers or vendors of one or more FBG Debtors or reimbursed any FBG Debtor Affiliate for providing such financing or liquidity in connection with such suppliers' or vendors' accounts receivable arising from the supply of goods or services to such FBG Debtors, whether through supply chain financing programs, reverse factoring arrangements, receivables purchase facilities, or similar arrangements; or (ii) remitted payments (or asserts that it remitted payments) on behalf of one or more FBG Debtors relating to accounts payable arising from the supply of goods or services to such FBG Debtors, and as identified in an exhibit to the Litigation Trust Agreement." Therefore, a parties' exclusion from the list is not indicative of whether such party qualifies as Supply Chain Financer pursuant to the Plan.

FBG_CH1_00092505

4.  Arab Bank ABC

5.  Atlantic Capital Bank

6.  BAML

7.  BankUnited N.A.

8.  Cedar Grove Holdings Ltd.

9.  CIT Group, Inc.

10. D-Star Ltd

11. ECO II SPV LLC

12. ECP Credit Strategies - A Offshore Holdings, L.P.

13. Ellington Income Opportunities Fund

14. Ellington Opportunities Main Master Fund LP

15. Evolution Credit Partners Trade Finance, LP

16. Fasanara

17. FASANARA INVESTMENTS III S.A., SICAV-RAIF – DIGITAL RECEIVABLES FUND

18. FASANARA INVESTMENTS S.A. SICAV-RAIF -FASANARA DIGITAL LENDING FUND

19. Fasanara Investments SA, SICAV-RAIF - GLOBAL DIVERSIFIED ALTERNATIVE DEBT FUND

20. First Citizens Bank & Trust Company

21. First-Citizens Bank & Trust Company

22. HFS

23. Interface

24. ITS Traffic Systems

25. Ivy American Installment LLC / Ivy Evergreen Fund LP

26. Ivy Retail Finance, LLC

FBG_CH1_00092506

27. LiquidX

28. Napier Park Lake Credit Fund LP

29. Napier Park Lake Credit Fund LP

30. Napier Park Leopard Opportunistic Credit Fund Ltd.

31. Napier Park Select Master Fund LP

32. NextProcess

33. Nineteen77 Global Multi-Strategy Alpha Master Limited

34. Nineteen77 Working Capital Finance Opportunistic Fund Master Limited

35. Nomura Credit Opportunities Fund LP

36. Orbian Supply Chain Financing Investors

37. Pemberton Asset Management

38. Prime Revenue, Inc.

39. Raistone Capital LLC

40. Raistone Capital Soteria DE LLC

41. Raistone Receivables Finance Yield Fund LP

42. Regions

43. Select Alternative Strategies II ICAV - UBS Working Capital Finance Opportunistic Fund (EU)

44. SouthState Bank

45. SouthState Bank, N.A.

46. Supply Chain Investments 1IC

47. Trade Finance Company (TFC Holdings, Ltd.)

48. US Bank NA

49. VERCYFi

50. Wafra (WSS-Stone Ltd.)

51. Wellsfargo

FBG_CH1_00092507

52. White Pine Capital Ltd.

53. Worthy Lending III, LLC

54. WSS-Stone Ltd.

55. YieldStreet Prism Fund Inc.

56. YS Rais PBC L LLC

57. YS Rais PBC XL LLC

58. YS Rais PBC XLI LLC

59. YS Rais PBC XLII LLC

60. YS Rais PBC XLIII LLC

61. YS RAIS PBC XLIV LLC

62. YS Rais PBC XLIX LLC

63. YS Rais PBC XLV LLC

64. YS Rais PBC XLVI LLC

65. YS Rais PBC XLVII LLC

66. YS Rais PBC XLVIII

67. Zenith

FBG_CH1_00092508

**<u>Exhibit 5</u>**

**Litigation Trust Backstop Agreement**

FBG_CH1_00092509

**LITIGATION TRUST BACKSTOP COMMITMENT AGREEMENT**

**Dated [July 31], 2026**

**by and among**

**THE COMMITMENT BACKSTOP PARTIES**

**identified as such on Schedule A hereto**

FBG_CH1_00092510

**Table of Contents**

**Article I The Funding Commitment**..................................................................................................**1**

Section 1.1     The Funding Opportunity.......................................................................................1
Section 1.2     The Backstop Commitments ..................................................................................1
Section 1.3     The Backstop Premium ..........................................................................................1
Section 1.4     Designations and Transfers ...................................................................................2
Section 1.5     Defaults ..................................................................................................................2
Section 1.6     Withholding............................................................................................................3
Section 1.7     Non-Transferability...............................................................................................3

**Article II Representations and Warranties of the Litigation Trust** ......................................**3**

Section 2.1     Formation and Authority.......................................................................................3
Section 2.2     Execution and Delivery..........................................................................................4
Section 2.3     Issuance of Class 1 Litigation Trust Interests .....................................................4
Section 2.4     No Conflict..............................................................................................................4
Section 2.5     No Broker's Fees.....................................................................................................4

**Article III Representations and Warranties of the Commitment Backstop Parties**............**4**

Section 3.1     Formation ...............................................................................................................4
Section 3.2     Power and Authority .............................................................................................4
Section 3.3     Execution and Delivery..........................................................................................5
Section 3.4     Governmental Filings; No Violations; Etc............................................................5
Section 3.5     Intent of Funding...................................................................................................5
Section 3.6     Sophistication.........................................................................................................5
Section 3.7     No Broker's Fees.....................................................................................................6
Section 3.8     Sufficient Funds .....................................................................................................6
Section 3.9     Legal Proceedings ..................................................................................................6

**Article IV Additional Covenants** ..............................................................................................**6**

Section 4.1     Further Assurances................................................................................................6
Section 4.2     Tax Matters ............................................................................................................6

**Article V effectiveness of backstop commitments**..................................................................**7**

**Article VI Termination**..............................................................................................................**7**

Section 6.1     Termination by the Required Commitment Backstop Parties..............................7
Section 6.2     Mutual Termination................................................................................................8
Section 6.3     Effect of Termination.............................................................................................8

**Article VII Miscellaneous**..........................................................................................................**8**

Section 7.1     Survival ...................................................................................................................8
Section 7.2     Notices.....................................................................................................................8
Section 7.3     Assignment.............................................................................................................9
Section 7.4     Third-Party Beneficiaries .....................................................................................9
Section 7.5     Prior Negotiations; Entire Agreement..................................................................9
Section 7.6     Governing Law; Submission to Jurisdiction; Forum Selection...........................9

FBG_CH1_00092511

DEBTORS' EXHIBIT NO. 178
Page 112 of 360

Section 7.7      Counterparts ........................................................................................................ 9
Section 7.8      Amendments and Waivers .................................................................................... 9
Section 7.9      Several Liability ................................................................................................. 10
Section 7.10     Specific Performance; Remedies........................................................................ 10
Section 7.11     Other Interpretive Matters ................................................................................. 10
Section 7.12     Damages ............................................................................................................. 10
Section 7.13     No Recourse Against Others .............................................................................. 10
Section 7.14     Severability ........................................................................................................ 10

**Article VIII Definitions..........................................................................................................11**

FBG_CH1_00092512

**DEBTORS' EXHIBIT NO. 178**
**Page 113 of 360**

## LITIGATION TRUST BACKSTOP COMMITMENT AGREEMENT

THIS LITIGATION TRUST BACKSTOP COMMITMENT AGREEMENT, dated as of [July 31], 2026 (this "*Agreement*"), is by and among each holder of DIP A Claims in the Ad Hoc Group SteerCo named in **Schedule A** hereto (collectively, the "*Commitment Backstop Parties*" and, each, a "*Commitment Backstop Party*". The Commitment Backstop Parties and any additional Related Transferees that execute a joinder hereto pursuant to Section 1.4 are referred to herein, individually, as a "*Party*" and, collectively, as the "*Parties*"; provided, however, that upon the execution of a joinder to this Agreement, the Litigation Trust shall become a party to this Agreement and thereafter, shall also be deemed a "*Party*"). Capitalized terms used in this Agreement but not defined herein shall have the meanings set forth in the Litigation Trust Agreement (as defined below) or the Plan.

WHEREAS, in September 2025, First Brands Group, LLC, a Delaware limited liability company (formerly known as Trico Group, LLC), and affiliated Debtors (as defined below) each commenced a voluntary case under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "*Bankruptcy Code*") before the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "*Bankruptcy Court*") (collectively, the "*Chapter 11 Cases*"), and the Chapter 11 Cases are jointly administered under Case No. 25-90399 (CML);

WHEREAS, the FBG Debtors have proposed a chapter 11 plan of liquidation Docket No. [3019] (as amended, supplemented, or otherwise modified from time to time, the "*Plan*") that provides for the formation of the Litigation Trust on the Confirmation Date, or as soon thereafter as reasonably practicable, and the vesting in the Litigation Trust of the Litigation Trust Assets;

WHEREAS, pursuant to the Plan, the Litigation Trust is to be funded with (i) $25,000,000 in cash from the FBG Debtors' balance sheet on or before the Confirmation Date and (ii) up to $50,000,000 of committed funding (the "*Committed Funding*") from holders of DIP A Claims who elect to become Litigation Trust Class 1 Funding Contributors, in exchange for Class 1 Litigation Trust Interests entitling such holders to distributions from the Litigation Trust if, as and when made, in each case, in accordance with the Litigation Trust Waterfall;

WHEREAS, the Commitment Backstop Parties are holders of DIP A Claims that are members of the Ad Hoc Group SteerCo and desire, on a several and not joint basis, to backstop the Committed Funding by committing to fund any portion of the Committed Funding that is not otherwise subscribed to by eligible holders of DIP A Claims (the "*Unsubscribed Amount*") in accordance with each Commitment Backstop Party's Backstop Percentage (as defined below), on the terms and subject to the conditions set forth in this Agreement; and

WHEREAS, upon the terms and subject to the conditions set forth herein, in consideration for the Backstop Commitments (as defined below), each Commitment Backstop Party shall be entitled to receive the Backstop Premium (as defined below) set forth in this Agreement;

NOW, THEREFORE, in consideration of the foregoing, and the representations, warranties and covenants set forth herein, and other good and valuable consideration, the Commitment Backstop Parties agree as follows:

FBG_CH1_00092513

## ARTICLE I
## THE FUNDING COMMITMENT

### Section 1.1      The Funding Opportunity

Pursuant to the Plan and the Litigation Trust Agreement, on or prior to the Confirmation Date, the FBG Debtors shall offer to each holder of at least $1,000 in principal amount of Allowed DIP A Claims (each, an "*Eligible Contributor*") the opportunity to commit to provide funding to the Litigation Trust, from time to time during the Commitment Period, in an aggregate amount up to such Eligible Contributor's pro rata share (calculated based on the aggregate principal amount of Allowed DIP A Claims held by such Eligible Contributor relative to the aggregate principal amount of all Allowed DIP A Claims held by all Eligible Contributors) of the Committed Funding Amount, in each case, in exchange for Class 1 Litigation Trust Interests entitling such Eligible Contributor to distributions in accordance with the Litigation Trust Waterfall (the "*Funding Opportunity*").

Each Commitment Backstop Party hereby agrees, subject to the terms and conditions set forth herein, to participate in the Funding Opportunity and to thereby irrevocably commit, on the terms and conditions provided in the Litigation Trust Agreement, to provide up to the full amount of such Commitment Backstop Party's pro rata (as set forth in the preceding paragraph) share of the Committed Funding Amount in exchange for Class 1 Litigation Trust Interests and to be a Litigation Trust Class 1 Funding Contributor.

### Section 1.2      The Backstop Commitments

On the terms and subject to the conditions set forth herein, each Commitment Backstop Party hereby severally, and not jointly, irrevocably commits (each such commitment, a "*Backstop Commitment*" and, collectively, the "*Backstop Commitments*") to fund a dollar amount equal to such Commitment Backstop Party's Backstop Percentage of any Unsubscribed Amount, if, as and when called by the Litigation Trust (which may be called once or more than once during the Commitment Period) in accordance with the terms of the Litigation Trust Agreement.

The obligations of the Commitment Backstop Parties with respect to the Backstop Commitments are several, and not joint, obligations, such that no Commitment Backstop Party shall be liable or otherwise responsible for the Backstop Commitments of any other Commitment Backstop Party.

The mechanics by which the Litigation Trustee may call Litigation Trust Class 1 Funding Contributions from the Commitment Backstop Parties (in their capacity as Litigation Trust Class 1 Funding Contributors), including the conditions to each draw, the minimum draw size, the Commitment Period, the decline right of the Required Litigation Trust Funding Contributors, and all related procedures, shall be governed exclusively by the Litigation Trust Agreement. This Agreement does not impose any obligation on any Commitment Backstop Party to make any Litigation Trust Class 1 Funding Contributions except as set forth in this Section 1.2 and pursuant to a valid draw request under the Litigation Trust Agreement.

### Section 1.3      The Backstop Premium

In consideration for each Commitment Backstop Party's agreement to provide its Backstop Commitment hereunder, each Commitment Backstop Party shall be entitled to receive distributions from the Litigation Trust in an amount not to exceed 5.0% of the amount of such Commitment Backstop Party's Litigation Trust Class 1 Funding Commitment (whether drawn or undrawn) backstopped by such Commitment Backstop Party, if, as and when paid, in each case, pursuant to the Litigation Trust Waterfall (such proceeds, the "*Backstop Premium*"); provided, however, that no Commitment Backstop Party shall

2

FBG_CH1_00092514

**DEBTORS' EXHIBIT NO. 178**
**Page 115 of 360**

be entitled to receive any distribution of the Backstop Premium for any period during which such Commitment Backstop Party is a Defaulting Contributor. The Backstop Premium shall be incorporated, and part of, such Commitment Backstop Party's Class 1 Litigation Trust Interest.

The provisions for the payment of the Backstop Premium are an integral part of the transactions contemplated by this Agreement and the Plan, and without these provisions, the Commitment Backstop Parties would not have entered into this Agreement. Subject to the foregoing proviso, the right to receive Backstop Premium, if, as and when paid, pursuant to the Plan and the Litigation Trust Agreement shall be fully vested on the date hereof, and regardless of whether any portion of the Unsubscribed Amount is actually drawn upon or funded pursuant to any Backstop Commitment; *provided*, however, that no Backstop Premium shall be paid or payable if this Agreement is validly terminated prior to the Confirmation Date in accordance with its terms.

**Section 1.4     Designations and Transfers**

Each Commitment Backstop Party may designate one or more of its Related Transferees (as defined below) (each such designee, a "***Related Designee***") to receive any Class 1 Litigation Trust Interests to be issued pursuant to this Agreement in lieu of such Commitment Backstop Party, by providing written notice of such designation to the Ad Hoc Group Advisors (with a copy to Debtors' counsel), which notice shall be delivered no later than three (3) Business Days prior to the Confirmation Date (such date, the "***Notification Date***"); *provided* that (i) no such designation shall relieve such Commitment Backstop Party from its obligations under this Agreement. No designations will be honored following the Notification Date.

[Each Commitment Backstop Party shall have the right to Transfer all or any portion of its Backstop Commitment, prior to the Notification Date, to (i) one or more of the other Commitment Backstop Parties, (ii) one or more of such Commitment Backstop Party's Affiliates or Affiliated Funds or (iii) any other holder of a DIP A Claim with the prior written consent of the Ad Hoc Group Advisors (each Person referred to in clauses (i) through (iii), a "***Related Transferee***"); provided that, in each case, such Transfer shall not relieve such Commitment Backstop Party of its obligations hereunder; *provided further*, that, in each case, (x) the relevant transferee shall have consented and agreed to such transfer in writing satisfactory to the Litigation Trustee, (y) the transferring Commitment Backstop Party and the transferee shall provide written notice to the Ad Hoc Group Advisors of such Transfer on or before the Notification Date and (z) unless such transferee is already a Commitment Backstop Party, such transferee shall execute a joinder to this Agreement in form and substance reasonably acceptable to the Ad Hoc Group Advisors (and pursuant to which such transferee shall among other things, make each of the representations and warranties set forth in Article III as of the date of such joinder and as of the Confirmation Date and assume all rights and obligations of the transferring Commitment Backstop Party hereunder in respect of the Transferred portion of the Backstop Commitment). No Transfer shall be permitted following the Notification Date. Any purported designation or Transfer of all or any portion of any Backstop Commitment in violation of this Section 1.4 shall be void *ab initio* and of no force or effect.]

**Section 1.5     Defaults**

In the event that any Commitment Backstop Party fails to comply with its Backstop Commitment obligations hereunder when required to do so (each, a "***Commitment Backstop Party Default***" and each such defaulting party, a "***Defaulting Commitment Backstop Party***"), the unfunded portion of such Defaulting Commitment Backstop Party's Backstop Commitment (the "***Default Backstop Amount***") shall be offered to each non-defaulting Commitment Backstop Party (each, a "***Non-Defaulting Commitment Backstop Party***"), which shall have the right, but not the obligation, within five (5) Business Days after receipt of written notice of such default, to fund all or a portion of such Default Backstop Amount pro rata

3

FBG_CH1_00092515

based on their respective Backstop Percentages (as adjusted to remove any Defaulting Commitment Backstop Party) or in such other proportion as the Non-Defaulting Commitment Backstop Parties may agree; provided, however, that in lieu of offering such Default Backstop Amount to the Non-Defaulting Commitment Backstop Parties, the Litigation Trustee may, in his or her reasonable discretion, elect to terminate or reallocate any Defaulting Commitment Backstop Party's Default Backstop Amount and the fees in respect thereof. Each Non-Defaulting Commitment Backstop Party that actually funds any Default Backstop Amount shall be entitled to receive the applicable Backstop Premium that would otherwise have been payable to the Defaulting Commitment Backstop Party in respect of such funded amount had such Defaulting Commitment Backstop Party funded such Default Backstop Amount in full, pro rata in proportion to the Default Backstop Amount actually funded by such Non-Defaulting Commitment Backstop Party and thereupon Schedule A attached hereto shall be updated accordingly. For the avoidance of doubt, no Defaulting Commitment Backstop Party shall be entitled to any Backstop Premium in respect of its Default Backstop Amount, including in the event that the Default Backstop Amount is terminated by the Litigation Trustee.

Each Defaulting Commitment Backstop Party shall be liable to the Non-Defaulting Commitment Backstop Parties and to the Litigation Trust for the consequences of its breach, including its failure to comply with its Backstop Commitment obligations, and each non-defaulting party (including the Litigation Trust) may enforce its rights to money damages or specific performance against such Defaulting Commitment Backstop Party.

If a Commitment Backstop Party becomes a Defaulting Commitment Backstop Party, then notwithstanding anything in the Plan or the Litigation Trust Agreement to the contrary, the Litigation Trustee may decline to offer such Commitment Backstop Party the opportunity to participate in any Additional Litigation Trust Funding.

### Section 1.6    Withholding

Notwithstanding anything to the contrary contained in this Agreement, the Litigation Trust and any other applicable withholding agent shall be entitled to deduct and withhold from any payments made pursuant to this Agreement or the Litigation Trust Agreement such amounts as such withholding agent reasonably determines are required to be deducted and withheld with respect to the recipient of such payment under the Code or any applicable provision of state, local, or non-United States tax law.  To the extent that amounts are so withheld and paid to the appropriate governmental authority, such amounts shall be treated for all purposes of this Agreement as having been paid to the Person in respect of which such deduction and withholding was made.

### Section 1.7    Non-Transferability

Notwithstanding anything to the contrary contained in this Agreement, the Parties acknowledge and agree that all Litigation Trust Interests are not and will not be certificated and are not and will not be transferable or assignable except by will, intestate succession or operation of law.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF THE LITIGATION TRUST

By executing a joinder to this Agreement, the Litigation Trust represents and warrants to each Commitment Backstop Party as set forth below.  Each representation and warranty is made as of the date of such joinder.

### Section 2.1    Formation and Authority

4

FBG_CH1_00092516

The Litigation Trust has been duly formed and is validly existing as a trust under applicable law pursuant to the Plan and the Litigation Trust Agreement, with full power and authority to enter into this Agreement (through its joinder) and to perform its obligations hereunder.  The Litigation Trustee has been duly appointed and has full power and authority, on behalf of the Litigation Trust, to execute and deliver this Agreement and to perform the obligations of the Litigation Trust hereunder.

### Section 2.2      Execution and Delivery

The joinder to this Agreement has been duly and validly executed and delivered by the Litigation Trust, and this Agreement and the Joinder constitute the valid and binding obligation of the Litigation Trust, enforceable against the Litigation Trust in accordance with their respective terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other similar laws now or hereafter in effect affecting creditors' rights generally and limitations on the availability of equitable remedies.

### Section 2.3      Issuance of Class 1 Litigation Trust Interests

The Class 1 Litigation Trust Interests to be issued to each Commitment Backstop Party pursuant to this Agreement and the Litigation Trust Agreement have been duly authorized pursuant to the Plan and the Litigation Trust Agreement, and when issued and delivered to such Commitment Backstop Party in accordance with the terms hereof and thereof, will be validly issued and free and clear of all liens and encumbrances (other than restrictions imposed by the Litigation Trust Agreement or applicable securities law).

### Section 2.4      No Conflict

The execution, delivery, and performance of the joinder to this Agreement by the Litigation Trust does not and will not require any consent, approval, or authorization of any governmental authority not already obtained pursuant to the Confirmation Order applicable to the Litigation Trustee or the Litigation Trust.

### Section 2.5      No Broker's Fees

The Litigation Trust is not a party to any contract or agreement that would give rise to a valid claim against any Commitment Backstop Party for a brokerage commission, finder's fee, or like payment in connection with the transactions contemplated hereby.

### ARTICLE III
### REPRESENTATIONS AND WARRANTIES OF THE COMMITMENT BACKSTOP PARTIES

Each of the Commitment Backstop Parties, severally and not jointly, represents and warrants to the Litigation Trust and the Litigation Trustee as set forth below.  Except for representations, warranties and agreements that are expressly limited as to their date, each representation, warranty and agreement is made as of the date hereof and as of the Confirmation Date.

**Section 3.1      Formation**Such Commitment Backstop Party is a legal entity duly incorporated, organized or formed, as applicable, and is validly existing as a corporation or other entity under the applicable Laws of its jurisdiction of organization or formation.

**Section 3.2      Power and Authority**Such Commitment Backstop Party has the requisite power and authority to enter into, execute and deliver this Agreement and any other transaction documents to which it is a party, and to perform its obligations hereunder and thereunder and has taken all necessary

5

FBG_CH1_00092517

action required for the due authorization, execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated hereby and thereby.

**Section 3.3     Execution and Delivery**This Agreement and all Transaction Documents have been duly and validly executed and delivered by such Commitment Backstop Party and constitute its valid and binding obligation, enforceable against such Commitment Backstop Party in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other similar laws now or hereafter in effect affecting creditors' rights generally and limitations on the availability of equitable remedies.

**Section 3.4     Governmental Filings; No Violations; Etc.**No filings, reports, notices, consents, registrations, approvals, permits or authorizations are required to be made by such Commitment Backstop Party with, nor are any consents, registrations, approvals, permits or authorizations required to be obtained by such Commitment Backstop Party from, any Governmental Entity or other third party in connection with the execution, delivery and performance of this Agreement or any other Transaction Documents by such Commitment Backstop Party and the consummation by such Commitment Backstop Party of the transactions contemplated hereby and thereby.

(b)     The execution, delivery and performance of this Agreement and the other applicable Transaction Documents by such Commitment Backstop Party does not, and the consummation by such Commitment Backstop Party of the transactions contemplated hereunder will not, constitute or result in (i) a breach, modification, termination or violation of, or a default under, the organizational documents of such Commitment Backstop Party, (ii) a breach or violation of any applicable laws, rules and regulations to which such Commitment Backstop Party is subject, or (iii) conflict with, or result in a breach or violation of, any of the terms or provisions of, or constitute a default under (with or without notice or lapse of time, or both), or result, in the acceleration of, or the creation of any Lien under, or cause any payment or consent to be required under any material agreement to which such Commitment Backstop Party is a party to, except, with respect to the foregoing clauses (ii) and (iii), as would not, individually or in the aggregate, reasonably be expected to prohibit or materially and adversely impact such Commitment Backstop Party's performance of its obligations under this Agreement or any other Transaction Document or its ability to consummate the transactions contemplated hereby and thereby.

**Section 3.5     Intent of Funding**Such applicable Commitment Backstop Party is acquiring the Class 1 Litigation Trust Interests, for its own account or for the accounts for which it is acting as investment advisor or manager, and not with the view to, or for resale in connection with, any distribution thereof and such Commitment Backstop Party has no intention of selling, granting any participation in, or otherwise distributing the same and understands that such Class 1 Litigation Trust Interests are not and will not be certificated and are not and will not be transferable or assignable, except by will, intestate succession or operation of law.

**Section 3.6     Sophistication**Such Commitment Backstop Party (i) has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of its funding of the Litigation Trust Interests, and (ii) understands and is able to bear any economic risks associated with such funding (including, without limitation, the inability to transfer or otherwise dispose of any Litigation Trust Interests).

(b)     Such Commitment Backstop Party has independently evaluated the merits and risks of its decision (including consulting its own legal, tax, economic and other advisors) to enter into this Agreement (including the execution of any joinder hereto) and disclaims reliance on any representations or warranties, either express or implied, by or on behalf of any of the Debtors.

6

FBG_CH1_00092518

**Section 3.7     No Broker's Fees**Such Commitment Backstop Party is not a party to any contract, agreement or understanding with any person (other than this Agreement) that would give rise to a claim against the Litigation Trust for a brokerage commission, finder's fee or like payment in connection with the transactions contemplated hereby.

**Section 3.8     Sufficient Funds**Such Commitment Backstop Party has, and shall maintain through the Confirmation Date and, with respect to ongoing Backstop Commitment obligations, through the end of the Commitment Period, sufficient cash, cash equivalents, liquid assets, available credit, undrawn capital commitments, letters of credit or other debt or equity facilities or commitments, or access to the foregoing, providing it with the financial capability to perform its funding obligations under this Agreement, including the ability to fund its Backstop Commitment and its pro rata share of the Committed Funding Amount.  Such Commitment Backstop Party acknowledges and agrees that its obligations under this Agreement are not conditioned in any manner upon its obtaining financing.

**Section 3.9     Legal Proceedings**Other than as may exist or arise in the Chapter 11 Cases, there are no action, suit, arbitration, investigation or proceeding pending or, to the knowledge of such Commitment Backstop Party, threatened in writing, to which such Commitment Backstop Party or any of its subsidiaries is a party or to which any property of such Commitment Backstop Party or any of its subsidiaries is the subject, in each case that will (or would be reasonably likely to) prohibit, delay, or adversely impact such Commitment Party's performance of its obligations under this Agreement or the other agreements contemplated hereunder.

**ARTICLE IV**
**ADDITIONAL COVENANTS**

**Section 4.1     Further Assurances**Subject to the terms and conditions of this Agreement, each of the Commitment Backstop Parties and the Litigation Trust (upon becoming party hereto) hereby covenants and agrees to cooperate with one another in good faith with respect to the pursuit, approval, implementation, and consummation of the transactions contemplated in this Agreement and the Plan, as well as the negotiation, drafting, execution, and delivery of documents (including any related orders, agreements, instruments, schedules, or exhibits) described in this Agreement or the Litigation Trust Agreement (the "***Transaction Documents***") or the Plan, or as may otherwise be reasonably necessary to facilitate the transactions contemplated in this Agreement in accordance with this Agreement and the other Transaction Documents and the Plan.

Furthermore, subject to the terms and conditions hereof, each of the Parties shall use its commercially reasonable efforts to take, or cause to be taken, such action as may be reasonably necessary or reasonably requested by the other Party to carry out the purpose and intent of this Agreement and the Plan.

If the Litigation Trust Agreement as executed and in effect on the Confirmation Date is materially inconsistent with the Plan, as determined by the Required Commitment Backstop Parties in good faith, the Required Commitment Backstop Parties and the Litigation Trust shall cooperate in good faith to cure such inconsistency.

**Section 4.2     Tax Matters**

For U.S. federal and applicable state and local income tax purposes, the Parties agree that the Backstop Premium shall be treated as Class 1 Litigation Trust Interests issued to the Commitment Backstop Parties in exchange for their Litigation Trust Class 1 Funding Contributions and Backstop Commitments, and not as a separate fee, commission, or item of income.  The Parties shall prepare and file all tax returns

7

FBG_CH1_00092519

**DEBTORS' EXHIBIT NO. 178**
**Page 120 of 360**

consistent with that tax treatment except as otherwise required pursuant to a final determination within the meaning of Section 1313(a) of the Code.

## ARTICLE V
## EFFECTIVENESS OF BACKSTOP COMMITMENTS

The Backstop Commitments shall become effective on the satisfaction of the following conditions (unless waived in writing by the Required Commitment Backstop Parties) on or prior to the Confirmation Date:

(a)     *Representations and Warranties.*   The representations and warranties of the Litigation Trust set forth in Article II of this Agreement shall be true and correct in all material respects as of the Confirmation Date with the same effect as if made as of such time.

(b)     *Covenants.*  The Litigation Trust shall have joined this Agreement and shall have performed and complied in all material respects with all obligations and agreements required to be performed or complied with by the Litigation Trust on or prior to the Confirmation Date.

(c)     *Confirmation Order.*  The Bankruptcy Court shall have entered the Confirmation Order and in form and substance acceptable to the Ad Hoc Group Advisors.

(d)     *Plan Supplement Documents.*  All Plan Supplement documents shall be in final form and in form and substance acceptable to the Ad Hoc Group Advisors.

(e)     *Debtors' Cash Contribution.*   The FBG Debtors shall have contributed $25,000,000 in cash from the FBG Debtors' balance sheet to the Litigation Trust in accordance with the terms of the Plan and the Litigation Trust Agreement.

(f)     *Litigation Trust Agreement.*  The Litigation Trust Agreement shall have been executed and shall be in full force and effect, and shall be in all material respects consistent with the Plan or otherwise reasonably satisfactory to the Ad hoc Group SteerCo. All or any of the conditions set forth in this Article V may only be waived in whole or in part with respect to all Commitment Backstop Parties by a written instrument delivered by the Required Commitment Backstop Parties, and if so waived, all Commitment Backstop Parties shall be bound by such waiver.

## ARTICLE VI
## TERMINATION

### Section 6.1     Termination by the Required Commitment Backstop Parties

The Required Commitment Backstop Parties may terminate this Agreement as to all Parties by delivery of written notice to all other Parties at any time upon the occurrence of any of the following events:

(a)     **Litigation Trust Breach**. The Litigation Trust has materially breached any representation, warranty, covenant, or other agreement made in the joinder to this Agreement and such breach or inaccuracy has not been cured by the Litigation Trust within ten (10) Business Days after receipt of written notice thereof from the Required Commitment Backstop Parties; provided that this Agreement may not be terminated pursuant to this Section 6.1(a) if any such Required Commitment Backstop Party or its Related Transferee is then in breach of this Agreement;

8

FBG_CH1_00092520

(b)    *Enjoining Order*. The issuance by any Governmental Entity of any final, non-appealable ruling or order that enjoins the consummation of a material portion of the transactions contemplated by this Agreement or any other Transaction Documents, and such ruling or order remains in effect for thirty (30) days after the Required Commitment Backstop Parties transmit written notice detailing such issuance to the Litigation Trust; provided that this termination right may not be exercised by any Required Commitment Backstop Party that sought or requested such ruling or order in contravention of any obligation set out in this Agreement; or

(c)    *Confirmation Denied*. The Bankruptcy Court enters an order denying confirmation of the Plan, and such order has not been reversed or vacated within fourteen (14) days of entry.

### Section 6.2    Mutual Termination

This Agreement may be terminated by mutual written agreement of the Required Commitment Backstop Parties and the Litigation Trust.

### Section 6.3    Effect of Termination

(a)    Upon the termination of this Agreement in accordance with this Article VI, and except as expressly provided in this Article VI, this Agreement shall forthwith become null and void and of no further force or effect as to all Parties, and each Party shall, except as expressly provided otherwise in this Agreement, be immediately released from its liabilities, obligations, commitments, undertakings, and agreements under or related to this Agreement; provided, however, that (i) in no event shall any such termination relieve a Party from liability for its actual and intentional fraud or any Willful or Intentional Breach of this Agreement, and (ii) the provisions set forth in this Section 6.3 and Article VII hereof shall survive the termination of this Agreement in accordance with their terms.

(b)    If this Agreement is validly terminated prior to the Confirmation Date in accordance with its terms, no Backstop Premium shall be paid or payable by the Litigation Trust to any Commitment Backstop Party.

## ARTICLE VII
## MISCELLANEOUS

### Section 7.1    Survival

The representations and warranties made in this Agreement will not survive the Confirmation Date and thereupon shall terminate and be of no further force and effect. Covenants and agreements that by their terms are to be performed after the Confirmation Date shall survive in accordance with their terms.

### Section 7.2    Notices

All notices, requests, and other communications to any Party hereunder shall be in writing (including facsimile transmission and electronic mail ("e-mail") transmission, so long as a receipt of such e-mail is requested and received) and shall be given, if to the Commitment Backstop Parties, to the address set forth on their respective signature pages or such other address as may be designated in writing from time to time; if to the Litigation Trust, to the address set forth in the Litigation Trust Agreement or such other address as the Litigation Trust may designate in writing from time to time.

FBG_CH1_00092521

All such notices, requests, and other communications shall be deemed received on the date of receipt by the recipient thereof if received prior to 5:00 p.m., New York Time and such day is a Business Day in the place of receipt. Otherwise, any such notice, request, or communication shall be deemed not to have been received until the next succeeding Business Day, New York Time.

### Section 7.3      Assignment

Neither this Agreement nor any of the rights, interests, or obligations under this Agreement may be assigned by any of the Parties (whether by operation of law or otherwise) without the prior written consent of the other Parties; provided that the Commitment Backstop Parties' obligations hereunder may be assigned, delegated, or transferred, in whole or in part, by any Commitment Backstop Party pursuant to and to the extent permitted by Section 1.4 hereof. Any attempted or purported assignment in violation of this Section 7.3 shall be null and void.

### Section 7.4      Third-Party Beneficiaries

Prior to the date on which the Litigation Trust executes and delivers a joinder to this Agreement, the FBG Debtors shall be express third party beneficiaries under this Agreement with the right to exercise and enforce the rights of the Litigation Trust hereunder, including the enforcement of any of the obligations of the Commitment Backstop Parties. Except as expressly set forth in this Agreement with respect to the FBG Debtors, the Litigation Trust and the Non-Recourse Parties (as defined below) as intended third-party beneficiaries, nothing in this Agreement, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit, or remedy of any nature under or by reason of this Agreement.

### Section 7.5      Prior Negotiations; Entire Agreement

This Agreement, including the exhibits and schedules hereto, constitutes the entire agreement of the Parties and supersedes all prior and contemporaneous negotiations, agreements, and understandings, whether written or oral, among the Parties with respect to the subject matter hereof; provided, however, that any confidentiality agreement between any of the Commitment Backstop Parties and any member of the Debtors shall survive the execution and delivery of this Agreement and shall not be superseded or amended hereby.

### Section 7.6      Governing Law; Submission to Jurisdiction; Forum Selection

Sections 12.1 and 12.2 of the Litigation Trust Agreement are hereby incorporated herein, *mutatis mutandis*.

### Section 7.7      Counterparts

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by PDF, electronic transmission, or other electronic signature shall be equally effective as delivery of an original executed counterpart.

### Section 7.8      Amendments and Waivers

No amendment, modification, waiver, or supplement of or to this Agreement shall be binding unless made in writing and duly executed by the Required Commitment Backstop Parties and, from and after the Litigation Trust joins this Agreement, the Litigation Trust; provided that no amendment, modification, waiver, or supplement that adversely affects the rights or increases the obligations of any individual

10

FBG_CH1_00092522

Commitment Backstop Party in a manner that is disproportionate to other Commitment Backstop Parties shall be effective against such Commitment Backstop Party without the prior written consent of such Commitment Backstop Party.  No waiver by any Party of any breach or default of any provision of this Agreement shall be deemed a waiver of any subsequent breach or default, and shall not affect the other terms of this Agreement.

### Section 7.9    Several Liability

The obligations of the Commitment Backstop Parties under this Agreement are several, and not joint, obligations.

### Section 7.10    Specific Performance; Remedies

The Parties acknowledge and agree that any breach of the terms of this Agreement would give rise to irreparable harm for which money damages would not be an adequate remedy.  Accordingly, the Parties agree that, in addition to any other remedies, each Party shall be entitled to enforce the terms of this Agreement by a decree of specific performance without the necessity of proving the inadequacy of money damages as a remedy and without the necessity of posting any bond or other undertaking.  This Section 7.10 is without prejudice to any other rights or remedies, whether at law or equity, that any Party may have against any other Party for any failure to perform its obligations under this Agreement.

### Section 7.11    Other Interpretive Matters

In this Agreement, unless the context otherwise requires: (i) references to an Article, Section, Exhibit, or Schedule are to an Article or Section of, or an Exhibit or Schedule to, this Agreement; (ii) the headings are for convenience only and shall not affect the interpretation of this Agreement; (iii) "or" is not exclusive; (iv) "including" and its variants mean "including, without limitation" and its variants; (v) references to any statute, rule, or regulation shall be deemed to refer to such statute, rule, or regulation as amended from time to time and to any rules, regulations, and interpretations promulgated thereunder; (vi) references to any Person include such Person's successors and permitted assigns; (vii) references to a "day" or a "month" are to a calendar day or calendar month, respectively, unless expressly stated to be a Business Day; and (viii) dollar amounts are in U.S. dollars.

### Section 7.12    Damages

In no event shall any party hereto be liable for any punitive, special, indirect, incidental, or consequential damages of any kind in connection with this Agreement, even if advised in advance of the possibility of such damages.

### Section 7.13    No Recourse Against Others

This Agreement may only be enforced against the named Parties hereto (and their permitted successors and assigns).  No past, present, or future director, officer, employee, incorporator, member, manager, partner, stockholder, Affiliate, controlling Person, agent, attorney, or other representative of any Party (the "*Non-Recourse Parties*") shall have any liability (whether in contract, tort, equity, or otherwise) for any obligations of or claims against a Party arising under this Agreement or in connection with the transactions contemplated herein.

### Section 7.14    Severability

11

FBG_CH1_00092523

If any provision of this Agreement is held to be invalid, illegal, or unenforceable under applicable law, the invalidity, illegality, or unenforceability of such provision shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein; provided that the Parties shall use reasonable best efforts to amend this Agreement so as to give effect, to the greatest extent possible, to the original intent of such provision.

## ARTICLE VIII
## DEFINITIONS

Except as otherwise expressly provided in this Agreement, whenever used in this Agreement (including any Exhibits and Schedules hereto), the following terms shall have the respective meanings specified therefor below:

"*Affiliate*" means, with respect to any Person, any other Person that directly or indirectly controls, is controlled by, or is under common control with, such Person. The term "control" (including its correlative meanings "controlled by" and "under common control with") means possession, directly or indirectly, of the power to direct or cause the direction of management or policies (whether through ownership of securities or partnership or other ownership interests, by contract, or otherwise) of a Person.

"*Affiliated Fund*" means, with respect to any Commitment Backstop Party, any fund, investment vehicle, managed account, or other entity advised, managed, or controlled by the same investment advisor or manager as such Commitment Backstop Party or by an Affiliate of such investment advisor or manager.

"*Backstop Commitment*" has the meaning set forth in Section 1.2.

"*Backstop Percentage*" means, with respect to each Commitment Backstop Party, the percentage set forth opposite such party's name on **Schedule A** hereto;[1] "*Backstop Premium*" has the meaning set forth in Section 1.3.

"*Bankruptcy Code*" has the meaning set forth in the recitals to this Agreement.

"*Bankruptcy Court*" has the meaning set forth in the recitals to this Agreement.

"*Chapter 11 Cases*" has the meaning set forth in the recitals to this Agreement.

"*Code*" means the Internal Revenue Code of 1986, as amended.

"*Commitment Amount*" means, with respect to each Commitment Backstop Party, the product of (a) such Commitment Backstop Party's Backstop Percentage multiplied by (b) the Committed Funding Amount.

"*Commitment Backstop Party*" and "Commitment Backstop Parties" have the meanings set forth in the preamble to this Agreement.

"*Commitment Period*" has the meaning set forth in Section 6.3(e) of the Plan.

---

[1] For the avoidance of doubt, Schedule A shall be provided to the advisors to the Company only and shall otherwise be considered PEO and strictly confidential and not filed or distributed to any other party absent the written consent of the Ad Hoc Group Advisors. Any amendment to Schedule A that does not reduce overall commitments shall only require the consent of the Commitment Backstop Parties.

12

FBG_CH1_00092524

"*Committed Funding Amount*" means $50,000,000.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"*Default Backstop Amount*" has the meaning set forth in Section 1.5.

"*Defaulting Commitment Backstop Party*" has the meaning set forth in Section 1.5.

"*Eligible Contributor*" has the meaning set forth in Section 1.1.

"*FBG Debtors*" has the meaning set forth in the Plan.

"*Funding Opportunity*" has the meaning set forth in Section 1.1.

"*Governmental Entity*" means any government, political subdivision, or governmental, regulatory, or administrative authority, agency, board, bureau, commission, instrumentality, or court or tribunal, or any subdivision thereof, whether domestic or foreign, federal, state, or local.

"*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment.

"*Non-Defaulting Commitment Backstop Party*" has the meaning set forth in Section 1.5.

"*Notification Date*" has the meaning set forth in Section 1.4.

"*Person*" means any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or Governmental Entity.

"*Related Designee*" has the meaning set forth in Section 1.4.

"*Related Transferee*" has the meaning set forth in Section 1.4.

"*Required Commitment Backstop Parties*" means, as of any date of determination, Commitment Backstop Parties (i) holding a majority (by Commitment Amount) of the aggregate amount of all then-outstanding Backstop Commitments and (ii) at least three unaffiliated Commitment Backstop Parties; provided that if there are fewer than three (3) Commitment Backstop Parties at any time, "Required Commitment Backstop Parties" shall mean all Commitment Backstop Parties.

"*Transaction Documents*" has the meaning set forth in Section 4.1.

"*Transfer*" means any sale, assignment, transfer, conveyance, hypothecation, or other disposition, whether direct or indirect, voluntary or involuntary, by operation of law or otherwise.

"*Unsubscribed Amount*" means the portion of the Committed Funding Amount that is not subscribed to by Eligible Contributors (other than the Commitment Backstop Parties in their capacity as backstop providers hereunder) on or before the Confirmation Date.

"*Willful or Intentional Breach*" shall mean a breach of this Agreement that is a consequence of an act undertaken by the breaching party with the knowledge that the taking of such act would, or would reasonably be expected to, cause a breach of this Agreement.

FBG_CH1_00092525

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**COMMITMENT BACKSTOP PARTY:**

[●]

By:_____
Name:
Title:
Address:
Attention:
Email:

*[Litigation Trust Backstop Commitment Agreement]*

FBG_CH1_00092526

The undersigned hereby (a) executes this Agreement as a joinder, accepting the benefit of the obligations of the Commitment Backstop Parties hereunder and agreeing to be bound by the provisions of this Agreement applicable to the Litigation Trust, and (b) makes the representations and warranties set forth in Article II hereof as of the date hereof and as of the Confirmation Date.

**LITIGATION TRUST**

**By: GERARD UZZI, not individually, but solely in its capacity as Litigation Trustee of the Litigation Trust**

By:_____
Name:
Title:

Notice Address:
Address:
Attention:
Email:

*[Litigation Trust Backstop Commitment Agreement]*

FBG_CH1_00092527

Schedule A

Backstop Percentage

[On file with the Litigation Trustee]

FBG_CH1_00092528

<u>**Exhibit 6**</u>

**DIP Collateral Trust Agreement**

FBG_CH1_00092529

*Filing Version 06/23/2026*

## DIP COLLATERAL TRUST AGREEMENT

This DIP COLLATERAL TRUST AGREEMENT is made this [●] day of [●], 2026 (this "Agreement"), by and among First Brands Group, LLC, a Delaware limited liability company ("First Brands"), on behalf of itself and the other FBG Debtors, as settlors, Tom A. Howley, as trustee of the DIP Collateral Trust referred to herein (in such capacity, the "Trustee"), Wilmington Savings Fund Society, FSB, as Delaware statutory trustee of the DIP Collateral Trust referred to herein (in such capacity, the "Delaware Trustee"), and each of the holders of Class 1 DIP Collateral Trust Interests and Class 2 DIP Collateral Trust Interests (as such terms are defined herein) and creates and establishes the trust known as the First Brands DIP Collateral Trust (the "DIP Collateral Trust") referenced herein in order to facilitate the implementation of the plan of liquidation as set forth in the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* dated [●], 2026 (as the same may be amended, supplemented, or otherwise modified from time to time in accordance with the terms and provisions thereof) (the "Plan"). Each of the FBG Debtors, the Trustee, the Delaware Trustee, and each of the holders of Class 1 DIP Collateral Trust Interests and Class 2 DIP Collateral Trust Interests may be referred to herein individually as a "Party" and, collectively, as the "Parties."

## RECITALS

WHEREAS, in September 2025, First Brands Group, LLC and its affiliated Debtors each filed a voluntary petition for relief (collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court");

WHEREAS, on [_____], 2026, the Bankruptcy Court entered its order confirming the Plan [Docket No. ____] (the "Confirmation Order");

WHEREAS, the Confirmation Date occurred today, [_____], 2026;

WHEREAS, the Plan provides, among other things, that on the Confirmation Date, or as soon thereafter as is reasonably practicable, the following shall occur automatically and without any further order of the Bankruptcy Court or any action by any FBG Debtor: (a) the creation and establishment of the DIP Collateral Trust, in accordance with Article VII of the Plan, for the benefit of holders of interests in the DIP Collateral Trust (such interests, including the Class 1 DIP Collateral Trust Interests and Class 2 DIP Collateral Trust Interests, collectively, the "DIP Collateral Trust Interests" and such holders, collectively, the "Beneficiaries"), (b) the automatic transfer to the DIP Collateral Trust of those particular assets set forth in Schedule I (the "DIP Collateral Trust Assets"), as well as the rights and powers of each FBG Debtor in such DIP Collateral Trust Assets, free and clear of all Liens, Claims, encumbrances and Interests (legal, beneficial or otherwise), and (c) the pursuit or liquidation of the DIP Collateral Trust Assets and the distribution of the proceeds therefrom to the Beneficiaries in each case, in accordance with the Plan, the Confirmation Order and this Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the Plan and liquidating purpose of the DIP Collateral Trust;

FBG_CH1_00092530

WHEREAS, the DIP Collateral Trust is intended to qualify as (i) a "liquidating trust" pursuant to the Internal Revenue Code of 1986, as amended (the "IRC") and the regulations promulgated thereunder ("Treasury Regulations"), including Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or another business, except to the extent reasonably necessary to, and consistent with, the purpose of the Collateral Trust and (ii) as a "grantor trust" for U.S. federal income tax purposes, pursuant to sections 671-677 of the IRC and the Treasury Regulations promulgated thereunder;

WHEREAS, pursuant to the Plan, the Debtors, the DIP Collateral Trust, the Trustee, and the Beneficiaries shall treat, for all U.S. federal income tax purposes, the transfer of the DIP Collateral Trust Assets to the DIP Collateral Trust as (A) a first step transfer of the DIP Collateral Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims under the Plan (provided that, in the case of certain DIP Collateral Trust Assets, the Debtors shall instead be treated as directly transferring such DIP Collateral Trust Assets, on behalf of the Beneficiaries, to one or more corporations formed by the DIP Collateral Trust (each, a "Blocker") in exchange for equity interests in such Blocker), followed by (B) a second step transfer of the DIP Collateral Trust Assets by the Beneficiaries (other than those DIP Collateral Trust Assets held by the Blockers, in which case the Beneficiaries shall be treated as transferring their respective equity interests in such Blockers) to the DIP Collateral Trust in exchange for their respective DIP Collateral Trust Interests, and to treat the Beneficiaries as the grantors and owners of their respective share of the DIP Collateral Trust Assets (including the equity of the Blockers) for U.S. federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes;

WHEREAS, the DIP Collateral Trust shall not be deemed a successor in interest of the FBG Debtors for any purpose other than as specifically set forth in the Plan, the Confirmation Order or this Agreement, and upon the transfer by the FBG Debtors of the DIP Collateral Trust Assets to the DIP Collateral Trust, the FBG Debtors will not have a reversionary or further interest in or with respect to the DIP Collateral Trust Assets or the DIP Collateral Trust; and

WHEREAS, subject to the authority of the DIP Collateral Trust Oversight Committee (as defined below) to direct the Trustee hereunder, the Trustee shall have all powers necessary to implement the provisions hereof and administer the DIP Collateral Trust as provided herein and in accordance with the Plan and Confirmation Order.

NOW, THEREFORE, pursuant to and in accordance with the Plan and the Confirmation Order, in consideration of the promises, the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree and declare as follows:

## ARTICLE I
## DEFINITIONS

For all purposes hereof, capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

2

FBG_CH1_00092531

## ARTICLE II
## ESTABLISHMENT OF THE DIP COLLATERAL TRUST

2.1     Establishment of the DIP Collateral Trust and Appointment of the Trustee, the Delaware Trustee, and the DIP Collateral Trust Oversight Committee.

(a)     There is hereby created, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, the DIP Collateral Trust for the benefit of the Beneficiaries, which shall be known as the "First Brands DIP Collateral Trust," on the terms set forth herein.  It is the intention of the Parties hereto that the DIP Collateral Trust created hereby constitute a statutory trust under Chapter 38 of Title 12 of the Delaware Code, 12 Del. C. § 3801 et seq. (the "Delaware Act") and that this Agreement constitutes the governing instrument of the DIP Collateral Trust.  The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as Exhibit A.

(b)     Tom A. Howley is hereby appointed as the initial Trustee effective as of the Confirmation Date.  Tom A. Howley accepts his appointment as Trustee of the DIP Collateral Trust and shall perform all duties and obligations imposed upon the Trustee under the Plan, this Agreement, and applicable orders of the Bankruptcy Court.

(c)     As discussed in Section 7.1 hereof, the initial members of the DIP Collateral Trust Oversight Committee (each such Person and any other Person appointed to be a member of the DIP Collateral Trust Oversight Committee pursuant to this Agreement, a "Committee Member"), to the extent known, are identified on Exhibit B hereto and were appointed by the Ad Hoc Group SteerCo in accordance with the Plan.

(d)     The Trustee agrees to manage the DIP Collateral Trust, the assets of which will be held by the DIP Collateral Trust, subject to the provisions of the Plan, the Confirmation Order and this Agreement.

(e)     Each Trustee serving from time to time hereunder shall have all the rights, powers, and duties as set forth herein.  Each Trustee shall be, a "United States person" as such term is defined in section 7701(a)(30) of the IRC.  The Trustee, the Delaware Trustee, and the Committee Members may serve without bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

(f)     Delaware Trustee.

(i)     Wilmington Savings Fund Society, FSB is hereby appointed as the initial Delaware Trustee effective as of the Confirmation Date.

(ii)     There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Delaware Act.  The Delaware Trustee shall either be (A) a natural person who is at least twenty-one (21) years of age and a resident of the State of Delaware or (B) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law to be eligible to serve as the Delaware Trustee, and shall act through one or

FBG_CH1_00092532

more persons authorized to bind such entity. If at any time the then-serving Delaware Trustee shall cease to be eligible to serve as Delaware Trustee in accordance with the provisions of this Section 2.1(f), the Delaware Trustee shall resign immediately in the manner and with the effect hereinafter specified in Section 2.1(f)(iv) below. For the avoidance of doubt, the Delaware Trustee will only have such rights, duties, and obligations as expressly provided by reference to the Delaware Trustee hereunder. The Trustee and each Committee Member of the DIP Collateral Trust Oversight Committee shall have no liability for the acts or omissions of any Delaware Trustee. Each Delaware Trustee shall be a "United States person" as such term is defined in section 7701(a)(30) of the IRC.

(iii) The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Trustee or the DIP Collateral Trust Oversight Committee set forth herein. The Delaware Trustee shall be a trustee of the DIP Collateral Trust for the sole and limited purpose of fulfilling the requirements of section 3807(a) of the Delaware Act and for taking such actions as are required to be taken by a Delaware Trustee under the Delaware Act. The duties, liabilities, and obligations of the Delaware Trustee shall be limited to accepting legal process served on the DIP Collateral Trust in the State of Delaware and the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under section 3811 of the Delaware Act. There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating to the DIP Collateral Trust, the Trustee, the DIP Collateral Trust Oversight Committee, or the Beneficiaries, such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Agreement. The Delaware Trustee shall have no liability for the acts or omissions of any Trustee, Committee Member or any other Person. Any permissive rights of the Delaware Trustee to do things enumerated in this Agreement shall not be construed as a duty, and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable for other than its willful misconduct, gross negligence, or fraud as found by a Final Order. The Delaware Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Agreement at the request or direction of the Trustee, the DIP Collateral Trust Oversight Committee, or any other Person pursuant to the provisions of this Agreement unless the Trustee, the DIP Collateral Trust Oversight Committee, or such other Person shall have offered to the Delaware Trustee security or indemnity (satisfactory to the Delaware Trustee in its reasonable discretion) against the costs, expenses, and liabilities that may be incurred by it in compliance with such request or direction. The Delaware Trustee shall be entitled to request and receive written instructions from the Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Trustee, except those acts found by a Final Order to be arising out of the Delaware Trustee's willful misconduct, gross negligence, or fraud. The Delaware Trustee may, at the expense of the DIP Collateral Trust,

FBG_CH1_00092533

DEBTORS' EXHIBIT NO. 178
Page 134 of 360

request, rely on, and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel.

(iv)     The Delaware Trustee shall serve until such time as the Trustee, with the consent of the DIP Collateral Trust Oversight Committee, removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustee, with the consent of the DIP Collateral Trust Oversight Committee, in accordance with the terms of Section 2.1(f)(v) below.  The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee and the DIP Collateral Trust Oversight Committee; *provided* that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed in accordance with Section 2.1(f)(v) below.  If the Trustee does not act within such sixty (60)-day period, the Delaware Trustee, at the expense of the DIP Collateral Trust, may apply to the Court of Chancery of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(v)     Upon the resignation or removal of the Delaware Trustee, the Trustee, with the consent of the DIP Collateral Trust Oversight Committee, shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee.  Any successor Delaware Trustee must satisfy the requirements of section 3807 of the Delaware Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee, the Trustee, and the DIP Collateral Trust Oversight Committee.  Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties, and obligations of the outgoing Delaware Trustee under this Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of all duties and obligations under this Agreement.  The successor Delaware Trustee shall make any related filings required under the Delaware Act, including filing a Certificate of Amendment to the Certificate of Trust of the DIP Collateral Trust in accordance with section 3810 of the Delaware Act.

(vi)     Notwithstanding anything herein to the contrary, the Delaware Trustee shall be entitled to retain counsel or advisors reasonably necessary in connection with the Delaware Trustee's rights and obligations under this Agreement, which counsel and advisors' fees and expenses shall be payable by the DIP Collateral Trust.

(vii)     Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion, or consolidation to which the Delaware Trustee shall be a party, or any entity

5

FBG_CH1_00092534

succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

(viii)   The Delaware Trustee shall be entitled to compensation for its services as agreed pursuant to a separate fee agreement between the DIP Collateral Trust and the Delaware Trustee, which compensation shall be paid by the DIP Collateral Trust in accordance with the terms hereof.   Such compensation is intended for the Delaware Trustee's services as contemplated by this Agreement. The terms of this paragraph shall survive termination of this Agreement and/or the earlier resignation or removal of the Delaware Trustee.

(ix)   The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document other than this Agreement, whether or not an original or a copy of such agreement has been provided to the Delaware Trustee.  The Delaware Trustee shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument, or document other than this Agreement.  Delivery of reports, information, and documents to the Delaware Trustee is for informational purposes only and the Delaware Trustee's receipt of the foregoing shall not constitute constructive notice of any information contained therein or determinable from information contained therein.   The Delaware Trustee may rely on the accuracy of any document delivered to it and shall have no responsibility to verify the accuracy of it or be required to calculate or verify any numerical information in it.  Neither the Delaware Trustee nor any of its directors, officers, employees, agents, or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the DIP Collateral Trust, the Trustee, any Member of the DIP Collateral Trust Oversight Committee, or any other Person, or any of their directors, members, officers, agents, affiliates, or employees, nor shall it have any liability in connection with the malfeasance or nonfeasance of any of the foregoing.   The Delaware Trustee may assume performance by all such Persons of their respective obligations.  The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other Person.  The Delaware Trustee shall have no responsibilities (except as expressly set forth herein) as to the validity, sufficiency, value, genuineness, ownership, or transferability of any DIP Collateral Trust Assets, written instructions, or any other documents in connection therewith, and will not be regarded as making, nor be required to make, any representations thereto.

(x)   The Delaware Trustee is hereby authorized to take such action as the Trustee specifically directs in written instructions delivered to the Delaware Trustee and shall have no liability for acting in accordance therewith, except those acts found by a Final Order to be arising out of the Delaware Trustee's willful misconduct, gross negligence, or fraud.

FBG_CH1_00092535

(xi)    Notwithstanding anything herein to the contrary, the Delaware Trustee shall not be required to take any action that is in violation of applicable law.

(g)    Subject to the terms hereof, any action by the Trustee, the Delaware Trustee and/or the DIP Collateral Trust Oversight Committee that affects the interests of more than one Beneficiary shall be binding and conclusive on all Beneficiaries even if such Beneficiaries have different or conflicting interests.

(h)    None of the Debtors is or shall be deemed a fiduciary or agent of the DIP Collateral Trust, and such parties owe no duties or obligations to the DIP Collateral Trust or to the Beneficiaries except as are expressly set forth in the Plan, the Confirmation Order, this Agreement or other future written agreements between such Persons and the DIP Collateral Trust.

(i)    To the fullest extent permitted under applicable law, none of the Committee Members, in their capacities as such, is or shall be deemed a fiduciary or agent of the DIP Collateral Trust or of the Beneficiaries, and such parties owe no duties or obligations to each other, the DIP Collateral Trust, the Trustee, the Delaware Trustee, the Beneficiaries or any other Person; *provided*, *however*, that, the Committee Members shall be bound by the terms hereof, as applicable.

2.2    Distribution and Reserve of DIP Collateral Trust Assets.  Following the transfer of the DIP Collateral Trust Assets to the DIP Collateral Trust, the DIP Collateral Trust shall make continuing efforts to collect, liquidate, and distribute all DIP Collateral Trust Assets, subject to the reserves deemed necessary by the DIP Collateral Trust pursuant to this Agreement, in accordance with the Plan and the Confirmation Order.

2.3    Retention of Counsel and Other Professionals and Employees.

(a)    Counsel and Other Professionals.

(i)    Except as otherwise provided in the Plan, the Confirmation Order or this Agreement, the DIP Collateral Trust may, but shall not be required to, retain such DIP Collateral Trust Professionals as the Trustee deems necessary and on whatever reasonable and/or customary fee arrangements the Trustee deems appropriate, including contingency fee arrangements (without application to or order of the Bankruptcy Court).  The Trustee may cause the DIP Collateral Trust to pay the reasonable and documented salaries, fees and expenses of such Persons out of the DIP Collateral Trust Reserve in the ordinary course of business and neither the Trustee nor any Beneficiary shall have any liability or obligation for any fees or expenses of any such professional.  For the avoidance of doubt, prior retention in any capacity in the Debtors' bankruptcy cases on behalf of the Debtors, their estates, or any creditors shall not preclude the DIP Collateral Trust's or Trustee's retention of such professionals, consultants, or other persons.  For the avoidance of doubt, any advisors or professionals hired, requested, and/or directed by the DIP Collateral Trust Oversight Committee to litigate or otherwise take actions in furtherance of the preservation of DIP Collateral Trust Assets and/or any Allowed Lender Claims shall be directed, paid and funded by the DIP Collateral Trust.

FBG_CH1_00092536

(ii)     DIP Collateral Trust Professionals shall be required to submit reasonably detailed invoices on a monthly basis to the Trustee, including in such invoices a description of the work performed, who performed such work, and if billing on an hourly basis, the hourly rate of each such person, plus an itemized statement of expenses.   The DIP Collateral Trust may pay those invoices [fourteen (14) calendar] days after a copy of such invoices is provided to the Trustee, without Bankruptcy Court approval, unless the Trustee objects.  If there is a dispute as to a part of an invoice, the DIP Collateral Trust shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount.

(b)     Employees or Consultants.

(i)     Except as otherwise provided in the Plan, the Confirmation Order or this Agreement, the DIP Collateral Trust may, but shall not be required to, hire or employ any individual as the Trustee deems necessary to aid it in fulfilling its obligations under this Agreement and the Plan, and on whatever reasonable and/or customary fee arrangements the Trustee deems appropriate, including consulting arrangements (without application to or order of the Bankruptcy Court).  The DIP Collateral Trust may pay the reasonable and documented salaries, fees and expenses of such Persons out of the DIP Collateral Trust Reserve in the ordinary course of business and neither the Trustee nor any Beneficiary shall have any liability or obligation for any fees or expenses of any such individual.  For the avoidance of doubt, prior employment in any capacity in the Debtors' bankruptcy cases on behalf of the Debtors, their estates, or any creditors shall not preclude the DIP Collateral Trust's retention of such professionals, consultants, or other persons.

(ii)     Any such individual hired, employed, or retained by the DIP Collateral Trust shall be required to submit to the Trustee periodic invoices containing information with sufficient detail to assess the reasonableness of the fees and/or charges.  The DIP Collateral Trust may pay those invoices [fourteen (14) calendar] days after a copy of such invoices is provided to the Trustee, without Bankruptcy Court approval, unless the Trustee objects.  If there is a dispute as to a part of an invoice, the DIP Collateral Trust shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount.

(c)     Reserves; Pooling of Reserved Funds.  Subject to Article VIII hereof, before any distribution of DIP Collateral Trust Proceeds can be made, the DIP Collateral Trust shall, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all expenses and liabilities of the DIP Collateral Trust, including attorneys' fees and expenses, and the fees and expenses of other professionals. In accordance with the Plan and the Confirmation Order, the DIP Collateral Trust shall also maintain the DIP Collateral Trust Reserves.  The DIP Collateral Trust need not maintain any of the DIP Collateral Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the DIP Collateral Trust; *provided, however*, that the DIP Collateral Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

8

FBG_CH1_00092537

(d)      Distributions Net of Reserves and Costs.  Distributions of DIP Collateral Trust Proceeds shall be made net of reserves in accordance with the Plan, the Confirmation Order and this Agreement, including any reserves necessary to pay the expenses and liabilities of the DIP Collateral Trust, and also net of the actual and reasonable costs of making such distributions.

2.4      Transfer of the DIP Collateral Trust Assets.

(a)      Pursuant to the Plan, upon the occurrence of the Confirmation Date, the FBG Debtors shall be deemed to have, without any further action, automatically and irrevocably granted, released, transferred, conveyed, assigned and delivered, on behalf of the Beneficiaries, and (except as provided for U.S. federal, state and local income tax purposes in Sections 4.1(g), 4.1(j), and Article X hereof) shall have automatically vested in the DIP Collateral Trust (or the applicable Blocker, as the case may be), without recourse, all of their respective rights, title and interest in the DIP Collateral Trust Assets, free and clear of all Liens, Claims, encumbrances and Interests (legal, equitable, beneficial or otherwise), contractually imposed restrictions, and other interests, except as specifically provided in the Plan for the benefit of the Beneficiaries, including, without limitation, (i) assets held or controlled by third parties and (ii) any and all attorney-client privileges, work-product privileges, accountant-client privileges and any other evidentiary privileges or immunity in respect of the DIP Collateral Trust Assets that, prior to the Confirmation Date, belonged to the FBG Debtors pursuant to applicable U.S. federal, state and other law, which shall vest in the DIP Collateral Trust, in trust and, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Beneficiaries in connection with the DIP Collateral Trust Assets (the "**Transferred Privileges**"); *provided, however,* that the Debtors shall only be deemed to have transferred any documents, information or privileges related to any claims or causes of action for purposes that are consistent with the Plan, and the DIP Collateral Trust shall not attempt to use the Transferred Privileges for purposes that are inconsistent with the Plan, including, but not limited to, pursuing any claims or causes of action against Released Parties.[1]  The FBG Debtors shall have no claim to, right, or interest in, whether direct, residual, contingent or otherwise, the DIP Collateral Trust Assets once such assets have been transferred to the DIP Collateral Trust.

(b)      The DIP Collateral Trust shall be authorized, among other things, to obtain possession or control of, liquidate, and collect all of the DIP Collateral Trust Assets in the possession or control of third parties, and assert and/or exercise all rights of setoff and recoupment and defenses of the FBG Debtors or their estates that may be asserted in connection with DIP Collateral Trust Assets.  On the Confirmation Date, the DIP Collateral Trust shall be substituted for the FBG Debtors for all purposes with respect to the DIP Collateral Trust Assets, and administration and reconciliation of any claims or causes of action.  To the extent any law or regulation prohibits the transfer of ownership of any of the DIP Collateral Trust Assets from the FBG Debtors to the DIP Collateral Trust and such law is not superseded by the Bankruptcy Code, the DIP Collateral Trust's interest shall be a Lien upon and security interest in such DIP Collateral Trust Assets, in trust, nevertheless, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages.  The DIP

---

[1] "**Released Parties**" shall have the meaning set forth in the Plan.

FBG_CH1_00092538

Collateral Trust hereby accepts all of such property as DIP Collateral Trust Assets, to be held in trust for the Beneficiaries, subject to the terms hereof, and the Plan and the Confirmation Order.

(c)     From and after the Confirmation Date, the FBG Debtors shall provide access to copies of all of the FBG Debtors' records and information relating to the DIP Collateral Trust Assets, including electronic records or documents and including non-privileged and privileged communications, copies of which shall be provided or made available (including by providing access to) to the Trustee and the DIP Collateral Trust's advisors upon reasonable written request, in each case, to the extent within their possession or control and in compliance with applicable law.  For the avoidance of doubt, the failure of the Parties to enter into a formal written common interest agreement shall not operate to waive any common legal interests that exist among the Parties or otherwise constitute a breach hereof.

(d)     <u>Cooperation Provisions.</u>

(i)     As promptly as possible after the Confirmation Date, but in any event no later than thirty (30) days after the Confirmation Date, the FBG Debtors and any Person under their control shall execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) in respect to the DIP Collateral Trust Assets, and take or cause to be taken such further action as the DIP Collateral Trust may reasonably deem necessary or appropriate, to evidence or effectuate the transfer of the DIP Collateral Trust Assets of the Debtors to the DIP Collateral Trust and vest or perfect in the DIP Collateral Trust or confirm to the DIP Collateral Trust title to and possession of the DIP Collateral Trust Assets.

(ii)     The FBG Debtors and any Person under their control shall as promptly as possible after the Confirmation Date, but in any event no later than thirty (30) days after the Confirmation Date, transfer or make readily available to the DIP Collateral Trust and its advisors (including by providing access to) all records, documents, information, and work product in respect of the DIP Collateral Trust Assets (including all electronic records, documents, information and work product) in the possession of the FBG Debtors and any Person under their control.

(iii)     The FBG Debtors and any Person under their control shall reasonably cooperate with reasonable requests of the DIP Collateral Trust (including, with respect to requests for telephone conferences, interviews, and appearances of directors, officers, employees, agents and professionals as witnesses (by affidavits, at depositions, and at hearings/trials, as necessary)), in each case in order to permit the DIP Collateral Trust to liquidate all DIP Collateral Trust Assets.

(iv)     In advance of the Confirmation Date, the Debtors shall use reasonable best efforts to retain all books, records and other documents relating to the DIP Collateral Trust Assets within their control and not destroy such records.

10

FBG_CH1_00092539

(e)     Subject to Section 8.1, all of the proceeds received by the DIP Collateral Trust from the pursuit of any claims shall be added to the DIP Collateral Trust Assets and held as a part thereof (and title thereto shall be vested in the DIP Collateral Trust).

(f)     For all U.S. federal, state and local income tax purposes, all parties (including, without limitation, the Debtors, the DIP Collateral Trust, the Trustee and the Beneficiaries) shall treat the transfer of the DIP Collateral Trust Assets to the DIP Collateral Trust in accordance with Section 10.1 hereof.

(g)     Such transfers pursuant to the Plan shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to and to the maximum extent permitted under section 1146(a) of the Bankruptcy Code.

(h)     The DIP Collateral Trust shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan or the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

(i)     Costs of Cooperation.  All reasonable and documented costs, fees, and expenses incurred by the FBG Debtors or any Person under their control in connection with the cooperation, record production, transfer, assignment or other obligations requested by the DIP Collateral Trust and/or under this Agreement, shall be paid in advance or reasonably promptly following incurrence of such cost, fee or expense by the DIP Collateral Trust (and, if applicable, pursuant to a pre-agreed budget that has been agreed to by the DIP Collateral Trust and the FBG Debtors or their successor) and shall constitute DIP Collateral Trust Expenses.

2.5     Payment of Fees and Expenses.  In accordance with this Agreement and subject to the terms of Section 5.6 hereof, the DIP Collateral Trust may incur reasonable and necessary fees, costs, and expenses in connection with the performance of its obligations under the Plan, the Confirmation Order and this Agreement ("DIP Collateral Trust Expenses"), including fees and expenses incurred to monetize the DIP Collateral Trust Assets by retaining attorneys, financial advisors, accountants, appraisers, disbursing agents and other agents, independent contractors, professionals, consultants, advisors and third parties to aid it in fulfilling its obligations under this Agreement and the Plan (the "DIP Collateral Trust Professionals").  All reasonable, documented, out-of-pocket DIP Collateral Trust Expenses of the DIP Collateral Trust shall be paid from the DIP Collateral Trust Reserves, and shall solely be the obligation of, the DIP Collateral Trust. Except as contemplated by the Plan, the Beneficiaries shall have no obligation to provide any funding with respect to the DIP Collateral Trust.

2.6     Title to the DIP Collateral Trust Assets.  The transfer of the DIP Collateral Trust Assets to the DIP Collateral Trust pursuant to Section 2.4 hereof is being made for the sole benefit, and on behalf, of the Beneficiaries.  Upon the transfer of the DIP Collateral Trust Assets to the DIP Collateral Trust, the DIP Collateral Trust shall succeed to all of the FBG Debtors' and the Beneficiaries' rights, title and interest in the DIP Collateral Trust Assets and no other Person shall have any interest, legal, beneficial or otherwise, in the DIP Collateral Trust or the DIP Collateral Trust Assets upon the assignment and transfer of such assets to the DIP Collateral Trust.

11

FBG_CH1_00092540

2.7     Nature and Purpose of the DIP Collateral Trust.

(a)     Purpose.  The DIP Collateral Trust is organized and established as a statutory trust under the Delaware Act, and the Trustee, subject to the terms and conditions hereof, including without limitation the authority of the DIP Collateral Trust Oversight Committee to direct the Trustee hereunder, shall implement the Plan with respect to all FBG Debtors on behalf, and for the benefit, of the Beneficiaries.  The purpose of the DIP Collateral Trust is to liquidate and administer the DIP Collateral Trust Assets and perform such other duties as set forth in this Agreement, the Plan and in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or any other business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the DIP Collateral Trust and otherwise in compliance with the ruling guidelines set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.

(b)     Relationship.  The DIP Collateral Trust is not intended to be, and shall not be deemed to be, or be treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Trustee, the Delaware Trustee, the DIP Collateral Trust Oversight Committee (or any Committee Member thereof) or the Beneficiaries for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The Beneficiaries are solely the beneficial owners of the DIP Collateral Trust, and their rights shall be limited solely to those conferred upon them by the Plan, the Confirmation Order and this Agreement.  Notwithstanding the foregoing, in the event of a final determination under section 1313(a) of the IRC that the DIP Collateral Trust does not qualify as a grantor trust, the DIP Collateral Trust is intended to be treated as a partnership for U.S. federal income tax purposes, and the Beneficiaries and the DIP Collateral Trust will take all actions reasonably necessary to cause the DIP Collateral Trust to be treated as such.

(c)     Capacity of Trust.  The DIP Collateral Trust, on behalf of the FBG Debtors, may execute any and all documents and instruments necessary to effectuate the purposes of the DIP Collateral Trust to the extent permissible under section 1123(b)(3)(B) of the Bankruptcy Code and under the Plan and the Confirmation Order.  Notwithstanding any state or federal law to the contrary or anything herein, the DIP Collateral Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The DIP Collateral Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

(d)     Fiduciary and Other Duties.  Notwithstanding anything in the Plan, the Confirmation Order or this Agreement to the contrary, the Trustee shall always act in the best interests of the Beneficiaries and in furtherance of the purpose of the DIP Collateral Trust set forth in the Plan and the Confirmation Order.  The Trustee shall have fiduciary duties to the Beneficiaries consistent with the fiduciary duties that a member of an official committee appointed pursuant to section 1102 of the Bankruptcy Code has to the creditor constituents represented by such committee and shall exercise his, her, or its responsibilities accordingly.  Except for obligations expressly imposed on the Trustee by this Agreement, to the extent that, at law or in equity, the Trustee has duties (including fiduciary duties) to the Beneficiaries or to any other person

FBG_CH1_00092541

that is a Party to or is otherwise bound by this Agreement, such duties are hereby eliminated by this Agreement to the fullest extent permitted by applicable law; *provided*, that this Agreement does not eliminate the implied contractual covenant of good faith and fair dealing.

(e)     No Waiver of Claims. In accordance with section 1123(b)(3) of the Bankruptcy Code and subject to the terms and conditions of the Plan, the DIP Collateral Trust may enforce all rights to commence and pursue, as appropriate, any and all claims related to or involving the DIP Collateral Trust or DIP Collateral Trust Assets after the Confirmation Date. No Person or Entity, other than the holders of Allowed Lender Claims may rely on the absence of a specific reference in the Plan to any claim against it as any indication that the DIP Collateral Trust will not pursue any and all such claims against such Person or Entity; nor may any Person or Entity, other than the holders of Allowed Lender Claims, rely on the absence of a specific reference in the Plan to any claim as any indication that the DIP Collateral Trust will not pursue any objections thereto; *provided*, *however*, that the DIP Collateral Trust shall not commence or prosecute any claims released under Article XIII of the Plan against any Released Party. The Trustee expressly reserves all claims and causes of action for later adjudication, resolution, abandonment, settlement, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to such claims and causes of action upon, after or as a consequence of the Plan.

(f)     No Retention of Excess Cash. Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the DIP Collateral Trust retain cash or cash equivalents in excess of a reasonable amount to meet claims, expenses, and contingent liabilities, to maintain the value of the DIP Collateral Trust Assets during administration of the DIP Collateral Trust, or to fund the reserves established in accordance with the Plan and/or pursuant to this Agreement, and shall distribute all amounts not required to be retained for such purposes to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan, the Confirmation Order and this Agreement.

2.8     [Appointment as Representative. Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the DIP Collateral Trust shall be the duly appointed representative of the FBG Debtors' estates for certain limited purposes and, as such, to the extent provided herein, the DIP Collateral Trust succeeds to the rights and powers of a trustee in bankruptcy solely with respect to prosecution, resolution and settlement of any claims or causes of action that are DIP Collateral Trust Assets or relate to the DIP Collateral Trust or DIP Collateral Trust Assets (the "Trust Claims"). To the extent that any right to prosecute, settle or dispose of a Trust Claim cannot be transferred to the DIP Collateral Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Trust Claims and rights shall be deemed to have been retained by the FBG Debtors (other than for tax purposes) and the DIP Collateral Trust shall be deemed to have been designated as a representative of the FBG Debtors to the extent provided herein pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely to enforce and pursue such Trust Claims on behalf of the FBG Debtors for the benefit of the Beneficiaries or settle or otherwise dispose of such Trust Claims. For the avoidance of doubt, any claims subject to this Section 2.8 shall be treated by the Parties for U.S. federal, state and local income tax purposes as

13

FBG_CH1_00092542

a disposition of such claims by the FBG Debtors as described in Section 2.2 herein.  All costs and expenses of pursuing any Trust Claims shall be satisfied from the DIP Collateral Trust Assets.]

2.9     Valuation of the DIP Collateral Trust Assets.  As soon as reasonably practicable following the establishment of the DIP Collateral Trust and transfer of the DIP Collateral Trust Assets to the DIP Collateral Trust, the Trustee shall make a good faith determination of the fair market value of the DIP Collateral Trust Assets (on an asset-by-asset basis) as of the date the DIP Collateral Trust is established, taking into account (among other things) the anticipated recoveries on the respective DIP Collateral Trust Assets based on probability of success, timing of such recoveries and estimated litigation costs and expenses, it being understood that the aggregate fair market value of the DIP Collateral Trust Assets shall be equal to the amount of the DIP Collateral Credit Bid for U.S. federal and applicable state and local income tax purposes.  The Trustee shall provide, or otherwise make accessible to, the Beneficiaries such valuation as relevant from time to time for U.S. federal income, and applicable state and local, tax purposes.  For any other purposes, such provision shall be conditioned upon entry into applicable non-disclosure agreements and/or similar agreements designed to preserve the privileged and/or confidential nature of such valuation.  In connection with the preparation of any valuation contemplated hereby, the DIP Collateral Trust shall be entitled to retain such DIP Collateral Trust Professionals as the Trustee shall determine to be appropriate or necessary in accordance with the terms hereof, and the Trustee shall take or cause the DIP Collateral Trust to take such other actions in connection therewith as it determines to be appropriate or necessary.  The DIP Collateral Trust shall bear all of the reasonable and documented costs and expenses incurred in connection with determining such value, including the fees and expenses of any DIP Collateral Trust Professionals retained in connection therewith.

2.10    No Bond Required; Procurement of Insurance.  Notwithstanding any state or other applicable law to the contrary, the DIP Collateral Trust, the Trustee, the Delaware Trustee, and the Committee Members shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The DIP Collateral Trust is hereby authorized, but not required to obtain all reasonable insurance coverage for itself, the Trustee, the Delaware Trustee, the Committee Members, and their respective agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the DIP Collateral Trust and its agents, representatives, employees, or independent contractors under this Agreement.  The cost of any such insurance coverage shall be a DIP Collateral Trust Expense.

**ARTICLE III**
**DIP COLLATERAL TRUST INTERESTS**

3.1     DIP Collateral Trust Interests.  On the date hereof, the DIP Collateral Trust shall issue the DIP Collateral Trust Interests to the Beneficiaries in accordance with the terms of the Plan, the Confirmation Order and this Agreement.  The Beneficiaries, on account of the DIP Collateral Trust Interests held, shall be entitled to distributions from the DIP Collateral Trust in accordance with the terms of the Plan, the Confirmation Order and this Agreement.  The DIP Collateral Trust Interests will be represented by book entries on the books and records of the DIP Collateral Trust.  The DIP Collateral Trust will not issue any certificate, security or receipt to evidence any beneficial interests in the DIP Collateral Trust.

14

FBG_CH1_00092543

(a)    Primary Funding DIP Collateral Trust Interests.  As of the Confirmation Date, the DIP Collateral Trust shall be authorized to issue Primary Funding DIP Collateral Trust Interests to the Primary DIP Collateral Trust Funding Contributors that have provided the Primary DIP Collateral Trust Funding Contributions.  The Primary DIP Collateral Trust Funding Contributors' Primary DIP Collateral Trust Funding Contributions as of the date hereof in the aggregate amount of $20,000,000 (the "DIP Collateral Funding Amount") are set forth on Schedule II hereto, which, due to its confidential nature, is on file with the Trustee.  Each Primary DIP Collateral Trust Funding Contributor hereby irrevocably commits, subject only to the satisfaction of the conditions precedent thereto specified in the Plan (and excerpted for convenience in Exhibit D hereto), severally and not jointly, to fund Primary DIP Collateral Trust Funding Contributions via the withholding of collateral sale proceeds and not new-money funding in an aggregate amount up to the amount specified across from its name on Schedule II.  The terms and conditions of such funding are set forth in the Plan (and excerpted for convenience in Exhibit D hereto).  Such Primary DIP Collateral Trust Funding Contributions shall be treated as having been made to the FBG Debtors, with the FBG Debtors transferring such Primary DIP Collateral Trust Funding Contributions to the DIP Collateral Trust as of the date hereof and the FBG Debtors settling the claims arising from making such Primary DIP Collateral Trust Funding Contributions by the issuance of Primary Funding DIP Collateral Trust Interests.

(b)    Secondary Funding DIP Collateral Trust Interests.  The DIP Collateral Trust may seek and obtain additional commitments from the Secondary DIP Collateral Trust Funding Contributors to fund the Secondary DIP Collateral Trust Funding Contributions, including via the withholding of collateral sale proceeds, and shall be authorized to issue Secondary Funding DIP Collateral Trust Interests to the Secondary DIP Collateral Trust Funding Contributors (such Secondary Funding DIP Collateral Trust Interests, if any, together with the Primary Funding DIP Collateral Trust Interests, the "Class 1 DIP Collateral Trust Interests").  The terms and conditions upon which the Trustee may accept Secondary DIP Collateral Trust Funding Contributions are set forth in the Plan (and excerpted for convenience in Exhibit D hereto).  The DIP Collateral Trustee may in his sole discretion decide not to obtain or cause the funding of Secondary DIP Collateral Trust Funding Contributions if it determines that such actions may result in the DIP Collateral Trust or DIP Collateral Trust Interests being or having been subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA or the Investment Company Act.

(c)    Class 2 DIP Collateral Trust Interests.  As of the Confirmation Date, the DIP Collateral Trust shall be authorized to issue the Class 2 DIP Collateral Trust Interests to holders of Allowed DIP A Claims of $1,000 or greater in principal amount of Allowed DIP A Claims.

(d)    Notwithstanding anything in the Plan or herein to the contrary, no fractional interests of DIP Collateral Trust Interests shall be issued, and no Cash shall be distributed in lieu of such fractional amounts.  If any issuance or distribution on account of an Allowed Claim would otherwise result in the issuance of a number of interests of DIP Collateral Trust Interests that is not a whole number, the actual distribution of shares of DIP Collateral Trust Interests shall be rounded as follows: (i) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (ii) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor.  The total number of authorized interests of DIP Collateral Trust Interests shall be adjusted as necessary to account for the foregoing rounding.

FBG_CH1_00092544

3.2     DIP Collateral Trust Waterfall.  DIP Collateral Trust Proceeds, net of fees, costs, or other expenses pursuant to the terms of this Agreement, shall be distributed to the Beneficiaries pursuant to the DIP Collateral Trust Waterfall specified in the Plan (and excerpted for convenience in Exhibit D hereto).  All such distributions shall be subject to the withholding, setoff and other rights provided in Section 10.4 and the other distribution mechanics set forth in Article IV.

3.3     Interests Beneficial Only.  The ownership of DIP Collateral Trust Interests shall not entitle the Beneficiaries to any title in or to the DIP Collateral Trust Assets as such (which title shall be vested in the DIP Collateral Trust) or to any right to call for a partition or division of the DIP Collateral Trust Assets.  No Beneficiary shall have any oversight, fiduciary or governance right, or other right to direct DIP Collateral Trust activities in their capacity as a Beneficiary, other than to the extent such Beneficiary has any such rights hereunder as a Committee Member of the DIP Collateral Trust Oversight Committee.  Nothing herein shall impair the right of any Person under the Plan, the Confirmation Order or this Agreement.  Except as set forth in Section 5.10, neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the DIP Collateral Trust, and the DIP Collateral Trust shall not be obligated to provide any accounting to any Person.  Nothing in this Agreement is intended to require the DIP Collateral Trust at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the DIP Collateral Trust or as a condition for making any advance, payment, or distribution of the DIP Collateral Trust Proceeds or out of any other proceeds of DIP Collateral Trust Assets.

3.4     Transferability of DIP Collateral Trust Interests.

(a)     The DIP Collateral Trust Interests shall be non-certificated, non-transferable and non-assignable other than by will, intestate succession, or operation of law.  Any purported transfer of DIP Collateral Trust Interests in violation of this Section 3.4 shall be null and void ab initio and of no force or effect whatsoever, and the Trustee shall not register or otherwise recognize any such purported transfer on the books and records of the Trust.  Each Beneficiary, by accepting a DIP Collateral Trust Interest, shall be deemed to have acknowledged and agreed to the transfer restrictions set forth in this Section 3.4.  Notwithstanding anything herein to the contrary, no transfer of DIP Collateral Trust Interests under this Section 3.4 by will, intestate succession or operation of law shall be effective unless and until the transferee executes and delivers to the Trustee a written instrument, in form and substance reasonably satisfactory to the Trustee, pursuant to which such transferee assumes all obligations of the transferring Beneficiary with respect to such DIP Collateral Trust Interests and agrees to be bound by all terms and conditions of this Trust Agreement.

3.5     Registry of Beneficial Interests and Allowed Lender Claims.

(a)     The Trustee on behalf of the DIP Collateral Trust shall appoint a registrar (the "Registrar"), which initially will be Wilmington Savings Fund Society, FSB, for the purpose of recording ownership of the DIP Collateral Trust Interests as herein provided.  For its services hereunder, the Registrar, unless it is the Trustee, shall be entitled to receive reasonable compensation from the DIP Collateral Trust as a cost of administering the DIP Collateral Trust.

FBG_CH1_00092545

(b)      The Trustee on behalf of the DIP Collateral Trust shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time and acceptable to the Trustee, a registry of the Beneficiaries (the "Trust Register"), which shall be maintained pursuant to such reasonable regulations as the Trustee on behalf of the DIP Collateral Trust and the Registrar may prescribe.

(c)      Maintenance of the lender registers for holders of any Allowed Lender Claims shall vest to the DIP Agent upon the Confirmation Date, subject to Section 7.14 of the Plan; *provided*, *however*, any costs associated with the maintenance of the lender registers after the Confirmation Date shall be paid by the DIP Collateral Trust.

3.6      Exemption from Registration.  The Parties hereto intend that the rights of the Beneficiaries arising under this DIP Collateral Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If such rights constitute securities, the Parties hereto intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws to apply to the issuance of the DIP Collateral Trust Interests to the Beneficiaries under the Plan.  The Trustee may amend this Agreement in accordance with Article XII hereof to make such changes as are deemed necessary or appropriate, with the advice of counsel, to ensure that the DIP Collateral Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA or the Investment Company Act.  Except as provided in Sections 2.1(c) and 2.4(d) and Article VI, the DIP Collateral Trust Interests shall not have consent or voting rights or otherwise confer on the Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken by the Trustee in connection with the DIP Collateral Trust.  Subject to Section 3.4 hereof, neither the DIP Collateral Trust Oversight Committee nor the Trustee shall take any action to establish or support the establishment of an active trading market with respect to the DIP Collateral Trust Interests.

3.7      Effect of Death, Incapacity or Bankruptcy.  The death, incapacity or bankruptcy of any Beneficiary during the term of the DIP Collateral Trust shall not (i) operate to terminate the DIP Collateral Trust, (ii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to an accounting, (iii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to take any action in the Bankruptcy Court or elsewhere for the distribution of the DIP Collateral Trust Assets or for a partition thereof, or (iv) otherwise affect the rights and obligations of any of the Beneficiaries under this Agreement.

3.8      Change of Address.  Any Beneficiaries may, after the Confirmation Date, select an alternative distribution address by providing notice to the Trustee or, as applicable, the Registrar, identifying such alternative distribution address.  Such notification shall be effective only upon receipt by the Trustee or, as applicable, the Registrar.  Absent actual receipt of such notice by the Trustee or, as applicable, the Registrar, the Trustee shall not recognize any such change of distribution address.

3.9      Absolute Owners.  The DIP Collateral Trust may deem and treat any Beneficiary reflected as the owner of a DIP Collateral Trust Interest on the applicable Trust Register as the

17

FBG_CH1_00092546

absolute owner thereof for the purposes of receiving distributions and payments on account thereof, for U.S. federal and state income tax purposes and for all other purposes whatsoever.

3.10   Standing.  No Beneficiary, in their capacity as such, shall have standing to direct or seek to direct the DIP Collateral Trust, the Trustee, the Delaware Trustee, or the DIP Collateral Trust Oversight Committee to do or not to do any act or to institute any action or proceeding at law or in equity against any Party upon or with respect to the DIP Collateral Trust Assets. Notwithstanding the foregoing, nothing in this Section 3.10 shall affect or reduce the rights of the Ad Hoc Group Advisors, the Committee Members, or the members of the Ad Hoc Group SteerCo in their respective capacities as such, set forth in the Plan, the Confirmation Order or this Agreement.

3.11   Requirement of Undertaking.  The DIP Collateral Trust may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the DIP Collateral Trust or Trustee for any action taken or omitted by it as DIP Collateral Trust or Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this Section 3.11 shall not apply to any suit by the DIP Collateral Trust or Trustee.

**ARTICLE IV**
**DISTRIBUTIONS**

4.1   Distributions.

(a)   The DIP Collateral Trust Proceeds will be distributed in accordance with the DIP Collateral Trust Waterfall set forth in the Plan (and excerpted for convenience in Exhibit D hereto).

(b)   The DIP Collateral Trust shall distribute the net Cash income and net Cash proceeds from the liquidation of the DIP Collateral Trust Assets (the "DIP Collateral Trust Proceeds") to the Beneficiaries, no less frequently than annually, except the DIP Collateral Trust may retain an amount of net income and other DIP Collateral Trust Assets reasonably necessary to maintain the value of the DIP Collateral Trust Assets pending their liquidation during the term of the DIP Collateral Trust or that are determined to be necessary to meet expenses, claims and contingent liabilities of the DIP Collateral Trust and Trustee, and retention of such amount may preclude distributions to Beneficiaries.

(c)   The DIP Collateral Trust shall make distributions of the DIP Collateral Trust Proceeds to the applicable Beneficiaries only in accordance with the terms of the Plan, the Confirmation Order and this Agreement after the DIP Collateral Trust Proceeds are received by the DIP Collateral Trust, and only to the extent that the DIP Collateral Trust has sufficient DIP Collateral Trust Proceeds available to make such distributions in accordance with and to the extent provided for in this Agreement and after funding any reserves required herein.  Notwithstanding anything herein to the contrary, upon each distribution, the DIP Collateral Trustee shall have no obligation to make a distribution that would be in an amount that is either (i) less than $500 in Cash or (ii) less than the cost for the Trustee to make the distribution.

18

FBG_CH1_00092547

(d)     The DIP Collateral Trust may engage a third-party disbursing agent and other Persons to help distribute any DIP Collateral Trust Proceeds. The DIP Collateral Trust shall pay or reserve for all DIP Collateral Trust Expenses before making any distributions of DIP Collateral Trust Proceeds.

(e)     In accordance with the Plan and this Agreement, to the extent practicable, including pursuant to Section 5.6, and subject to the requirements of Treasury Regulation section 301.7701-4(d), the guidance in Revenue Procedure 94-45, 1994-2 C.B. 684, and Section 5.6 hereof, the DIP Collateral Trust shall distribute, no less frequently than annually, [all Cash on hand] (including, but not limited to, the net income and the DIP Collateral Trust Proceeds, any Cash received on account of or representing DIP Collateral Trust Proceeds, and treating as Cash for purposes of this Section 4.1(e) any permitted investments under Section 8.2) to the applicable Beneficiaries on a *pro rata* basis. For the avoidance of doubt, this Section 4.1 shall not prohibit the DIP Collateral Trust from using the DIP Collateral Trust Assets to timely pay obligations and liabilities of the DIP Collateral Trust duly incurred in accordance with this Agreement, including with respect to the payment of any taxes or other amounts owed to Governmental Units and to timely compensate DIP Collateral Trust Professionals (as defined below) engaged by the DIP Collateral Trust in accordance with this Agreement.

(f)     The DIP Collateral Trust shall make distributions to Beneficiaries at the last-known address for each such Beneficiary as indicated on the DIP Collateral Trust's or Registrar's (as defined below) records as of the applicable distribution date. Any distribution of Cash by the DIP Collateral Trust shall be made via (i) a check drawn on, or (ii) wire transfer from, a bank account established in the name of the DIP Collateral Trust on or subsequent to the Confirmation Date at a domestic bank selected by the Trustee on behalf of the DIP Collateral Trust, the option of which shall be in the sole discretion of the Trustee.

(g)     If any distribution to any Beneficiary is returned to the DIP Collateral Trust as undeliverable or is otherwise unclaimed (including, for the avoidance of doubt, by failure to cash a distribution check within ninety (90) days of first issuance), no distribution to such Beneficiary shall be made unless and until the Trustee or, as applicable, the Registrar, is notified in writing of the then-current address of such Beneficiary, at which time all currently due missed distributions shall be made to such Beneficiary on the next distribution date; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six (6) months from the applicable distribution date. After such date, all "unclaimed property" or interests in property shall revert to the DIP Collateral Trust (notwithstanding any applicable federal, state provincial or local escheat, abandoned or unclaimed property laws to the contrary) for redistribution in accordance with the terms of the Plan, the Confirmation Order and this Agreement, and the claim of any Beneficiary to such property or interest in property shall be forever barred. The DIP Collateral Trust, by and through the Trustee, may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate such Beneficiary, but nothing contained herein shall require the Trustee to attempt to do so. Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check within ninety (90) days after the check was first issued. All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted DIP Collateral Trust Assets under this Section 4.1. The Beneficiary shall bear all the risk that, and shall indemnify and hold the DIP

FBG_CH1_00092548

Collateral Trust and Trustee harmless against any loss that may arise if, the DIP Collateral Trust does not reissue a check promptly after receiving a request for its reissuance.

(h)     The Trustee shall have the authority to cause the DIP Collateral Trust to enter into agreements with one or more distribution agents to facilitate the distributions required under the Plan and this Agreement.  The DIP Collateral Trust may pay to the distribution agents from the DIP Collateral Trust Reserve all reasonable and documented fees and expenses of the distribution agents without the need for any approvals, authorizations, actions or consents.

(i)     Reserved.

(j)     The DIP Collateral Trust shall, to the extent applicable, comply with all withholding, payment and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority, and all distributions of DIP Collateral Trust Proceeds shall be subject to any such withholding, payment and reporting requirements.  The DIP Collateral Trust shall deduct and withhold taxes from any and all amounts otherwise distributable from the DIP Collateral Trust to any Beneficiary or other Entity determined in the Trustee's reasonable discretion, required by this Agreement, or that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, treaty or other governmental requirement on such Beneficiary or Entity or the DIP Collateral Trust with respect to the amount to be distributed to such Beneficiary, in accordance with Section 10.4 hereof.  The DIP Collateral Trust shall determine such maximum amount to be withheld by the DIP Collateral Trust in its sole, reasonable discretion and shall distribute to the Beneficiary any excess amount withheld.

(k)     Subject to Sections 5.8, 5.10 and 5.11 hereof, and the provisions of this Section 4.1, any non-Cash property of the DIP Collateral Trust may be sold, transferred, abandoned or otherwise disposed of by the DIP Collateral Trust.  Notice of such sale, transfer, abandonment or disposition shall be provided to the Beneficiaries pursuant to the reporting obligations provided in Section 5.10(a) hereof.  If, in the Trustee's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the Trustee believes, in good faith, such property has no value to the DIP Collateral Trust, the Trustee shall have the right, subject to the approval of the DIP Collateral Trust Oversight Committee, to cause the DIP Collateral Trust to abandon or otherwise dispose of such property.  Except in the case of fraud, willful misconduct, or gross negligence, no party in interest shall have a claim or cause of action against the DIP Collateral Trust, the Trustee, the Delaware Trustee, the DIP Collateral Trust Oversight Committee, any Committee Member, or any of their directors, officers, employees, consultants, or professionals arising from or related to the disposition of non-Cash property in accordance with this Section 4.1(k).

(l)     In determining the amount of any DIP Collateral Trust Proceeds or reserves, the DIP Collateral Trust may rely and shall be fully protected in relying on the advice and opinion of any DIP Collateral Trust Professionals.

(m)     Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

20

FBG_CH1_00092549

4.2     Reserved.

4.3     Conflicting Claims to Distributions.  If any conflicting claims or demands are made or asserted with respect to the DIP Collateral Trust Interests of a Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the DIP Collateral Trust shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

(a)     The DIP Collateral Trust may elect to make no payment or distribution of DIP Collateral Trust Proceeds with respect to the DIP Collateral Trust Interests subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands.  Neither the DIP Collateral Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the DIP Collateral Trust or Trustee be liable for interest on any funds which may be so withheld.

(b)     [The DIP Collateral Trust shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the DIP Collateral Trust, which agreement shall include a complete release of the DIP Collateral Trust and Trustee.  Until the DIP Collateral Trust receives written notice that one of the conditions of the preceding sentence is met, the DIP Collateral Trust may deem and treat as the absolute owner under this Agreement of the DIP Collateral Trust Interests the Beneficiary identified as the owner of that interest in the books and records maintained by the DIP Collateral Trust.  The DIP Collateral Trust shall treat such Beneficiary as the absolute owner for purposes of receiving distributions of DIP Collateral Trust Proceeds and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.]

(c)     In acting or refraining from acting under and in accordance with this Section 4.3, the DIP Collateral Trust and Trustee shall be fully protected and incur no liability to any purported claimant or any other Person.

**ARTICLE V**
**RIGHTS, POWERS AND DUTIES OF TRUSTEE**

5.1     Role of the Trustee.

(a)     In furtherance of and consistent with the purpose of the DIP Collateral Trust and the Plan, subject to the terms and conditions contained in the Plan, the Confirmation Order and this Agreement, including without limitation the authority of the DIP Collateral Trust Oversight Committee to direct the Trustee hereunder, the Trustee shall have the power and authority to manage the DIP Collateral Trust, make all decisions on behalf of the DIP Collateral Trust, otherwise perform the functions and take the actions or cause the DIP Collateral Trust to perform the functions and take the actions, as applicable, provided or permitted in this Agreement, and in an expeditious but commercially reasonable manner:

21

FBG_CH1_00092550

    (i)     manage, supervise and protect the DIP Collateral Trust Assets upon the receipt of same by the DIP Collateral Trust on behalf of and for the benefit of the Beneficiaries;

    (ii)     cause the DIP Collateral Trust to investigate, analyze, prosecute and, if necessary and appropriate, settle and compromise any Trust Claims and any objections thereto;

    (iii)     cause the DIP Collateral Trust to prepare and file all required tax returns and pay all taxes and all other obligations of the DIP Collateral Trust;

    (iv)     cause the DIP Collateral Trust to liquidate and convert the DIP Collateral Trust Assets to Cash and make distributions to the Beneficiaries in accordance with Section 4.1 herein;

    (v)     on behalf of the DIP Collateral Trust, pursuant to section 363(k) of the Bankruptcy Code, credit bid up to the full amount of the Remaining DIP A Claims in any sale of DIP Collateral, whether such sale is effectuated through sections 363, 1123, or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise; and

    (vi)     have all such other responsibilities as may be vested in the Trustee pursuant to the Plan, the Confirmation Order, this Agreement, and all other applicable orders of the Bankruptcy Court, including, but not limited to, establishment of the DIP Collateral Trust Reserve;

*provided*, that the Trustee shall not through action or inaction, undertake the foregoing in a manner that is adverse to the interests of the Beneficiaries.

    (b)     All decisions and duties with respect to the DIP Collateral Trust and the DIP Collateral Trust Assets to be made and fulfilled, respectively, by the Trustee shall be carried out in accordance with the Plan, the Confirmation Order, this Agreement and all other applicable orders of the Bankruptcy Court. In all circumstances, the Trustee shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the DIP Collateral Trust and shall (i) use commercially reasonable efforts to monetize the DIP Collateral Trust Assets and (ii) prosecute, settle or otherwise resolve any Trust Claims.

    5.2    Power to Contract. In furtherance of the purpose of the DIP Collateral Trust, and except as otherwise specifically restricted in the Plan, the Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the DIP Collateral Trust, and also may cause the DIP Collateral Trust, to enter into any contracts, instruments, or other agreements or commitments binding the DIP Collateral Trust, and to execute, acknowledge and deliver any and all contracts, instruments, or other agreements or commitments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the DIP Collateral Trust.

    5.3    Ultimate Right to Act Based on Advice of Counsel or Other Professionals. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any

22

FBG_CH1_00092551

action on behalf of the DIP Collateral Trust that, based upon the advice of counsel or other professionals, the Trustee determines in good faith that it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person pursuant to the Plan, the Confirmation Order or this Agreement.

5.4     Liquidation of DIP Collateral Trust Assets.  The Trustee, in the exercise of his reasonable business judgment, shall, in an expeditious but orderly manner and subject to the other provisions of the Plan, the Confirmation Order and this Agreement (including Section 2.2), cause the DIP Collateral Trust to liquidate and convert to Cash the DIP Collateral Trust Assets, make timely distributions, including of DIP Collateral Trust Proceeds, in accordance with the terms of the Plan, the Confirmation Order and this Agreement, and not unduly prolong the existence of the DIP Collateral Trust with due regard that undue haste in the administration of the DIP Collateral Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interest of the Beneficiaries.  The Trustee shall exercise reasonable business judgment and cause the DIP Collateral Trust to liquidate the DIP Collateral Trust Assets to maximize net recoveries to the Beneficiaries in accordance with the Plan; *provided*, *however*, that the Trustee shall take into consideration the risks, timing, and costs of potential actions (including any adverse tax effects and related costs) in making determinations as to the methodologies to be employed to maximize such recoveries.  Such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any Trust Claims or otherwise or through the sale or other disposition of the DIP Collateral Trust Assets (in whole or in combination).  Pursuant to an agreed-upon budget in accordance with Section 5.10(b) hereof, if any, the Trustee may cause the DIP Collateral Trust to incur any reasonable and necessary expenses in connection with the liquidation of the DIP Collateral Trust Assets and distribution of the DIP Collateral Trust Proceeds.

5.5     Management of DIP Collateral Trust Assets.

(a)     Except as otherwise provided in the Plan, the Confirmation Order or this Agreement, and subject to Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Trustee may, subject to the oversight and direction authority of the DIP Collateral Trust Oversight Committee, control and exercise authority over the DIP Collateral Trust Assets, over the management and disposition thereof, and over the management and conduct of the DIP Collateral Trust, in each case, as necessary or advisable to enable the Trustee to fulfill the intents and purposes hereof.  No Person dealing with the DIP Collateral Trust will be obligated to inquire into the validity, expediency or propriety of any transaction by the DIP Collateral Trust, Trustee or any agent of the DIP Collateral Trust or the authority of the Trustee in connection with the acquisition, management or disposition of the DIP Collateral Trust Assets.

(b)     In connection with the management and use of the DIP Collateral Trust Assets and except as otherwise expressly limited in the Plan, the Confirmation Order or this Agreement, the DIP Collateral Trust will have, in addition to any powers conferred upon the DIP Collateral Trust by any other provision hereof, the power to take any and all actions as, in the Trustee's reasonable discretion, are necessary or advisable to effectuate the primary purposes of the DIP Collateral Trust, subject to any approvals and direction authority of the DIP Collateral Trust Oversight Committee as set forth herein, including, without limitation, the power and

23

FBG_CH1_00092552

authority to (i) pay taxes and other obligations owed by the DIP Collateral Trust; (ii) engage and compensate the DIP Collateral Trust Professionals, subject to Section 2.3 hereof, to assist the Trustee and the DIP Collateral Trust Oversight Committee with respect to their respective responsibilities; and (iii) commence, pursue, object to, compromise, and settle all actions involving any Trust Claims, subject to Bankruptcy Court approval, if applicable, that could arise or be asserted at any time, unless otherwise limited, waived, released, compromised, settled, or relinquished in the Plan, the Confirmation Order or this Agreement; and (iv) enact and implement the Plan, the Confirmation Order, this Agreement, and applicable orders of the Bankruptcy Court.

5.6     Safekeeping and Investment of Cash.  All moneys and other assets received by the DIP Collateral Trust shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other DIP Collateral Trust Assets, unless and to the extent required by law, the Plan or the Confirmation Order.  Except as otherwise provided by the Plan or the Confirmation Order, the right and power of the Trustee to cause the DIP Collateral Trust to invest the DIP Collateral Trust Assets, the proceeds thereof, or any income earned by the DIP Collateral Trust shall be limited to the right and power to invest such DIP Collateral Trust Assets only in Cash (to be held in interest-bearing accounts) and U.S. Government securities as defined in section 2(a)(16) of the Investment Company Act; *provided, however,* that (a) the scope of any such permissible investments shall be further limited to include only demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills or money market funds and those investments that a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service guidelines, whether set forth in Internal Revenue Service rulings, other Internal Revenue Service pronouncements, or otherwise (including Revenue Procedure 94-45, 1994 2 C.B. 684), (b) the DIP Collateral Trust may retain any DIP Collateral Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly liquidation of such assets, and (c) the DIP Collateral Trust may expend the DIP Collateral Trust Assets (i) as reasonably necessary to meet contingent liabilities and maintain the value of the DIP Collateral Trust Assets during liquidation, (ii) to pay reasonable and documented administrative expenses (including, but not limited to, any taxes imposed on the DIP Collateral Trust or reasonable fees and expenses in connection with liquidating the DIP Collateral Trust Assets), subject in all cases to Section 2.5 hereof, and (iii) to satisfy other liabilities incurred or assumed by the DIP Collateral Trust (or to which the DIP Collateral Trust Assets are otherwise subject) in accordance with the Plan or this Agreement (including, as applicable, Section 2.5). Subject to the foregoing, the Trustee is authorized (but not directed), with respect to any trust power or authority that the Trustee may exercise under this Agreement, to acquire and retain investments on behalf of the DIP Collateral Trust not regarded as traditional for trusts, including investments that would be forbidden or would be regarded as imprudent, improper or unlawful by the "prudent person" rule, "prudent investor" rule, 12 Del. C. § 3302, any rule or law concerning the duty of loyalty, any rule or law limiting, prescribing, or voiding or making voidable any interested party or self-dealing transaction, or any other rule or law which restricts a fiduciary's capacity to invest.  Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on his own account, provided that such activity does not interfere or conflict with the Trustee's administration of the DIP Collateral Trust.  Neither the DIP Collateral Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for distribution or payment to the Beneficiaries except as such interest

24

FBG_CH1_00092553

shall actually be received by the DIP Collateral Trust, which shall be distributed as provided in the Plan and the Confirmation Order.

5.7     Additional Powers of the Trustee.  In addition to any and all of the powers enumerated above, and except as otherwise provided in the Plan, the Confirmation Order or this Agreement, and subject to the Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, the Trustee, subject to the approval and direction authority of the DIP Collateral Trust Oversight Committee as provided in this Agreement, shall be empowered to take the following actions on behalf of the DIP Collateral Trust and any powers reasonably incidental thereto that the Trustee, in his reasonable discretion, deems necessary or appropriate to fulfill the purpose of the DIP Collateral Trust, unless otherwise specifically limited or restricted by the Plan, the Confirmation Order, this Agreement or the DIP Collateral Trust Oversight Committee, as long as such actions are consistent with the DIP Collateral Trust's status as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) and are merely incidental to its liquidation and dissolution:

(a)     perform all actions and execute all agreements, instruments and other documents necessary to effectuate the purpose of the DIP Collateral Trust;

(b)     take any actions necessary to (i) resolve all matters related to the DIP Collateral Trust Assets and (ii) vest such assets in the DIP Collateral Trust;

(c)     open and maintain bank accounts on behalf of or in the name of the DIP Collateral Trust;

(d)     maintain the books and records and accounts of the DIP Collateral Trust and obtain any necessary insurance;

(e)     administer the SPV-DIP Wind Down Account in accordance with the Wind Down Order;

(f)     coordinate with the Wind Down Administrator and the other Trustees;

(g)     accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, abandon, supervise, prosecute, settle, and protect, as applicable, the DIP Collateral Trust Assets in accordance with this Agreement;

(h)     administer the DIP Collateral Trust's tax obligations, including filing tax returns and other reports (including any amended returns or claims for refund), paying tax obligations and representing the interest and account of the DIP Collateral Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, audit or examination;

(i)     subject to maintaining the status of the DIP Collateral Trust as a grantor trust for U.S. federal income tax purposes or otherwise as provided in Section 5.7(t) hereof, make tax elections by and on behalf of the DIP Collateral Trust, which are deemed by the Trustee, either independently or with the advice of DIP Collateral Trust Professionals, to be in the best interest of maximizing the liquidation value of the DIP Collateral Trust Assets;

25

FBG_CH1_00092554

(j)    form, organize, capitalize, fund, hold and vote the equity of, and dissolve, liquidate or wind up, one or more Blockers, and cause any Blocker to acquire, hold, manage, sell, transfer, abandon or otherwise dispose of any DIP Collateral Trust Asset, in each case as the Trustee determines to be necessary or appropriate to facilitate the orderly liquidation of the DIP Collateral Trust Assets and distribution of the net proceeds to the Beneficiaries;

(k)    calculate and make distributions to the Beneficiaries in accordance with this Agreement and the Plan;

(l)    invest Cash, as available, and any income earned thereon;

(m)    retain, compensate and employ professionals to represent the DIP Collateral Trust or the DIP Collateral Trustee, as applicable;

(n)    form, organize, capitalize, recapitalize, dissolve, and liquidate any Blocker or other wholly-owned subsidiary of the DIP Collateral Trust;

(o)    hold and exercise all rights of equity ownership in any Blocker or other wholly-owned subsidiary of the DIP Collateral Trust, including the appointment and removal of officers and directors, and cause any such subsidiary to engage in transactions consistent with the purposes of the DIP Collateral Trust, including the acquisition, holding, monetization, sale, exchange, and other disposition of assets;

(p)    maintain, control, administer, and oversee the voting and economic rights of any DIP Claims, First Lien Claims, and Second Lien Claims (subject to the terms and conditions of the Plan and the applicable oversight and direction from the DIP Collateral Trust Oversight Committee);

(q)    dissolve the DIP Collateral Trust in accordance with this Agreement; and

(r)    take any other actions not inconsistent with the provisions hereof that the DIP Collateral Trustee deems reasonably necessary or desirable in connection with the foregoing functions.

5.8    <u>Limitations on Power and Authority of the Trustee</u>.  Notwithstanding anything in this Agreement to the contrary, the Trustee will not have the authority to do any of the following:

(a)    take or cause the DIP Collateral Trust to take any action in contravention of the DIP Order, the Plan, the Confirmation Order or this Agreement;

(b)    take or cause the DIP Collateral Trust to take any action that would make it impossible to carry on the activities of the DIP Collateral Trust;

(c)    possess or cause the DIP Collateral Trust to possess property or assign or cause the DIP Collateral Trust to assign the DIP Collateral Trust's rights in specific property for any purpose other than as provided herein;

FBG_CH1_00092555

**DEBTORS' EXHIBIT NO. 178**
**Page 156 of 360**

(d)      cause or permit the DIP Collateral Trust to engage in any trade or business or utilize or dispose of any part of the DIP Collateral Trust Assets or the proceeds, revenue or income therefrom in furtherance of any trade of business;

(e)      receive or cause the DIP Collateral Trust to receive transfers of any listed stocks or securities or any readily marketable assets or any operating assets of a going business to the extent that the DIP Collateral Trust receiving any such investment would jeopardize treatment of the DIP Collateral Trust as a "liquidating trust" for U.S. federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof;

(f)      receive or retain or cause the DIP Collateral Trust to receive or retain any operating assets of an operating business, a partnership interest in a partnership that holds operating assets or fifty percent (50%) or more of the stock of a corporation with operating assets; *provided*, *however*, that in no event shall the Trustee receive or retain or cause the DIP Collateral Trust to receive or retain any such asset or interest that would jeopardize treatment of the DIP Collateral Trust as a "liquidating trust" for U.S. federal income tax purposes under Treasury Regulation section 301.7701-4(d) or any successor provision thereof;

(g)      take or cause the DIP Collateral Trust to take any other action or engage or cause the DIP Collateral Trust to engage in any investments or activities that would jeopardize treatment of the DIP Collateral Trust as a liquidating trust for U.S. federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof; or

(h)      cause the DIP Collateral Trust to issue any DIP Collateral Trust Interests other than as expressly contemplated by the Plan or the Confirmation Order;

*provided*, *however*, that nothing contained in this Agreement shall be construed to limit, restrict, or otherwise impair the DIP Collateral Trustee's right to credit bid the Remaining DIP A Claims for any DIP Collateral.

Notwithstanding the foregoing clauses of this Section 5.8 or any other provision of this Agreement, the Trustee may organize, capitalize, fund, hold the equity of, and liquidate the Blockers, and cause the Blockers to acquire, hold and dispose of DIP Collateral Trust Assets, in each case in accordance with Section 10.1 of this Agreement and the Plan; *provided* that each Blocker is held solely to facilitate the orderly liquidation of the DIP Collateral Trust Assets, no Blocker shall engage in any trade or business other than as reasonably necessary to preserve and dispose of its assets, and the Trustee shall cause each Blocker to be liquidated as promptly as is consistent with maximizing recoveries to the Beneficiaries; provided, further, that the organization, holding and liquidation of the Blockers as contemplated by Section 10.1 of this Agreement and the Plan shall not be treated as causing the DIP Collateral Trust to fail to qualify as a "liquidating trust" within the meaning of Treasury Regulations section 301.7701-4(d).

5.9      Books and Records. The Trustee shall maintain or cause the DIP Collateral Trust to maintain accurate books and records relating to administration of the DIP Collateral Trust Assets (including income realized therefrom and the DIP Collateral Trust Proceeds) and the payment of, costs and expenses of, and liabilities for claims against or which, pursuant to the Plan, are the responsibility of the DIP Collateral Trust in such detail and for such period of time as may be

FBG_CH1_00092556

necessary to enable the DIP Collateral Trust to make full and proper accounting in respect thereof and in accordance with applicable law.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the DIP Collateral Trust. Nothing in this Agreement requires the Trustee to file any accounting or seek approval of any court with respect to the administration of the DIP Collateral Trust or as a condition for managing any payment or distribution out of the DIP Collateral Trust Assets, except as may otherwise be set forth in the Plan or the Confirmation Order.  The books and records maintained by the DIP Collateral Trust and any records of the FBG Debtors transferred to the DIP Collateral Trust may be disposed of by the Trustee at the later of (i) such time as the DIP Collateral Trust determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the DIP Collateral Trust or its Beneficiaries and (ii) upon the termination of the DIP Collateral Trust.

      5.10    <u>Reports</u>.

      (a)    [<u>Financial and Status Reports</u>.  The fiscal year of the DIP Collateral Trust shall be the calendar year.  Within [ninety (90)] days after the end of each calendar year during the term of the DIP Collateral Trust, the Trustee shall make available to the applicable Beneficiaries appearing in the Trust Register as of the end of such period or such date of termination, a written report including: (i) unaudited financial statements of the DIP Collateral Trust for such period; (ii) a summary description of any action taken by the DIP Collateral Trust which, in the judgment of the Trustee, materially affects the DIP Collateral Trust and of which notice has not previously been given to the Beneficiaries; *provided*, that any such description shall not include any privileged or confidential information of the DIP Collateral Trust; (iii) a description of the progress of liquidating the DIP Collateral Trust Assets and making distributions to the Beneficiaries, which description shall include a written report providing, among other things, the DIP Collateral Trust Proceeds recovered to date and the distributions made by the DIP Collateral Trust to date; and (iv) any other material information relating to the DIP Collateral Trust Assets and the administration of the DIP Collateral Trust deemed appropriate to be disclosed by the Trustee or reasonably requested by the DIP Collateral Trust Oversight Committee; *provided*, that any such report shall not be provided to any Beneficiary if doing so could negatively impact any action undertaken by the DIP Collateral Trust to maximize the value of the DIP Collateral Trust Assets. The Trustee may post any such report on a website maintained by the DIP Collateral Trust or electronically file it with the Bankruptcy Court in lieu of actual notice to each Beneficiary.]

      (b)    <u>Additional Information</u>.  The Trustee shall provide to the DIP Collateral Trust Oversight Committee: (i) updates as to all material ongoing and planned monetization processes in respect of the assets of the DIP Collateral Trust; (ii) periodic updates as to the liquidation of the DIP Collateral Trust Assets (including any enforcement, collection or other recovery efforts); and (iii) other information as reasonably requested by the DIP Collateral Trust Oversight Committee including, if instructed by the DIP Collateral Trust Oversight Committee, an annual plan and budget in such detail as is reasonably requested.  The Trustee shall also provide such information to the Beneficiaries in the Trustee's reasonable discretion and subject to reasonable and customary requirements related to entry into common interest, non-disclosure agreements, or other similar documents.

      (c)    <u>Reserved</u>.

FBG_CH1_00092557

5.11   Other Payments.  On or after the Confirmation Date, the DIP Collateral Trustee shall cause the DIP Collateral Trust to pay all reasonable and documented fees and expenses (to the extent not already paid) owed to the Ad Hoc Group Advisors with respect to the DIP Collateral Trust to the extent needed to implement the terms of the Plan.

**ARTICLE VI**
**THE TRUSTEE GENERALLY**

6.1   Independent Trustee.  The Trustee shall be a professional natural person, or entity financial institution with banking or trust powers, with experience administering other DIP Collateral Trusts, and may not be a Committee Member of the DIP Collateral Trust Oversight Committee.

6.2   Trustee's Term of Service, Compensation and Reimbursement.

(a)   Term of Service.  The Trustee shall serve as of the Confirmation Date until the earlier of: (i) termination of the DIP Collateral Trust in accordance with this Agreement; or (ii) the Trustee's death, dissolution, liquidation, Disability (as defined below), resignation or removal.

(b)   Compensation.  The Trustee shall receive compensation from the DIP Collateral Trust as provided on Exhibit C hereto (the "Trustee Compensation"), which shall be a charge solely against and solely paid out of the DIP Collateral Trust Assets in accordance with the Plan and the Confirmation Order.  The compensation of the Trustee may be modified from time to time by agreement of the Trustee and DIP Collateral Trust Oversight Committee.

(c)   Expenses.  The DIP Collateral Trust will reimburse the Trustee from the DIP Collateral Trust Reserves for all actual, reasonable and documented out-of-pocket expenses, costs and obligations incurred by the Trustee in connection with the performance of the duties of the Trustee hereunder or under the Plan or the Confirmation Order, including but not limited to, actual, reasonable and documented fees and disbursements of the Trustee's legal counsel incurred in connection with the review, execution, and delivery hereof and related documents (such expenses, together with the Trustee Compensation, the "Trustee Fees").  In the event that the Trustee's appointment terminates by reason of death, dissolution, liquidation, Disability, resignation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced.

(d)   Payment.  The Trustee Fees shall be paid to the Trustee from the DIP Collateral Trust Reserves without necessity for review or approval by the Bankruptcy Court or any other Person.  The Bankruptcy Court shall retain jurisdiction until the closing or dismissal of the Chapter 11 Cases to adjudicate any dispute regarding the Trustee Fees.

6.3   Appointment of Supplemental Trustee.  If the Trustee has a conflict or any of the DIP Collateral Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "Supplemental Trustee") solely with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Trustee such security as may be designated

FBG_CH1_00092558

by the Trustee in his discretion. In the event the Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so. The Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Trustee any or all of the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations hereof, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent necessary). To the extent the Supplemental Trustee is appointed by the Trustee, the Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all property. The Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal. To the extent a Supplemental Trustee is serving, with regard to the rights, powers, privileges and duties delegated to such Supplemental Trustee hereunder, any provisions applicable to the Trustee under this Agreement shall be applicable to the Supplemental Trustee, including without limitation with regard to the standard of conduct, exculpation, and indemnification provisions, other than any provisions that govern the relationship between the Trustee and the Supplemental Trustee and the appointment and removal of the Supplemental Trustee.

6.4     Resignation. The Trustee may resign by giving not less than sixty (60) days' prior written notice thereof by filing a notice with the Bankruptcy Court (and such notice shall be served on the Beneficiaries and the Delaware Trustee and Committee Members); *provided, however*, after the closing or dismissal of the Chapter 11 Cases, such notice shall be posted by the Registrar and served on the Beneficiaries and the Delaware Trustee and Committee Members. Such resignation shall become effective on the day specified in such notice; *provided, however*, such resignation shall not be effective until the appointment of a successor Trustee satisfying the requirements set out in Section 6.6 or by the Bankruptcy Court and the acceptance by such successor of such appointment. Notwithstanding the foregoing, upon the Termination Date (as defined in Section 11.2 below), the Trustee shall be deemed to have resigned. Written notice of the resignation of the Trustee and the appointment of a successor Trustee shall be provided promptly to the Beneficiaries and the Delaware Trustee and the Committee Members. In the event of a resignation, the resigning Trustee shall render to the DIP Collateral Trust Oversight Committee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

6.5     Removal.

(a)     The then-serving Trustee may be removed (i) by the DIP Collateral Trust Oversight Committee, for Cause (as defined in Section 7.7(b) herein), immediately upon notice thereof, or without Cause, upon not less than thirty (30) days' prior written notice delivered to the Trustee and the Delaware Trustee.

(b)     To the extent there is any dispute regarding the removal of a Trustee (including any dispute relating to any portion of the Trustee Fees), the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute. Notwithstanding the foregoing, the Trustee will continue to serve as the Trustee after his, her or its removal other than for Cause until

FBG_CH1_00092559

the earlier of (i) the time when appointment of a successor Trustee will become effective in accordance with Section 6.6 hereof or (ii) such date as the Bankruptcy Court otherwise orders.

6.6    Appointment of Successor Trustee.

(a)    In the event of the death or Disability (as defined in Section 7.7 herein) (in the case of a Trustee that is a natural person), dissolution (in the case of a Trustee that is not a natural person), resignation, or removal of the Trustee (each, a "Succession Event"), the DIP Collateral Trust Oversight Committee shall promptly designate a successor Trustee satisfying the requirements set forth in Section 6.1 hereof; *provided, however,* the Bankruptcy Court may designate a successor Trustee to the extent that the DIP Collateral Trust Oversight Committee have not designated a successor Trustee within thirty (30) days of their notice of a Succession Event resulting from the death, Disability, dissolution, or resignation of the Trustee. Such appointment shall specify the date on which such appointment shall be effective. Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to the Beneficiaries, the Delaware Trustee, and the DIP Collateral Trust Oversight Committee an instrument accepting the appointment under this Agreement and agreeing to be bound as Trustee hereto and subject to the terms hereof, and thereupon the successor Trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, privileges, trusts and duties of the predecessor Trustee and the successor Trustee shall not be personally liable for any act or omission of the predecessor Trustee; *provided, however*, that a predecessor Trustee shall, nevertheless, when requested in writing by the successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee under the DIP Collateral Trust all the estates, properties, rights, powers and trusts of such predecessor Trustee and otherwise assist and cooperate, without cost or expense to the predecessor Trustee, in effectuating the assumption by the successor Trustee of his/her/its obligations and functions hereunder. For notice purposes only and not for approval, the successor Trustee shall file with the Bankruptcy Court (or post on a website / data room maintained by the Registrar if the Chapter 11 Cases have been closed) a notice upon appointment of the successor Trustee.

(b)    To the extent that the DIP Collateral Trust Oversight Committee is unable to appoint a successor Trustee and the Chapter 11 Cases have been closed or dismissed, the Chapter 11 Cases may be reopened for the limited purpose of seeking an order of the Bankruptcy Court to appoint a successor Trustee.

6.7    Effect of Resignation or Removal. The death, Disability, dissolution, bankruptcy, resignation, or removal of the Trustee, as applicable, shall not operate to terminate the DIP Collateral Trust created by this Agreement or to revoke any existing agency created pursuant to the terms hereof or invalidate any action theretofore taken by the Trustee or any prior Trustee. In the event of the resignation or removal of the Trustee, such Trustee will promptly (a) execute and deliver such documents, instruments and other writings as may be ordered by the Bankruptcy Court (or any other court of competent jurisdiction) or reasonably requested by the DIP Collateral Trust Oversight Committee or the successor Trustee to effect the termination of such Trustee's capacity under this Agreement, (b) deliver to the Bankruptcy Court (if required), the DIP Collateral Trust Oversight Committee and/or the successor Trustee all documents, instruments, records and other writings related to the DIP Collateral Trust as may be in the possession of such Trustee, and shall

31

FBG_CH1_00092560

DEBTORS' EXHIBIT NO. 178
Page 161 of 360

not retain any copies of such materials, even for archival purposes, and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Trustee.

6.8     Confidentiality.   The Trustee shall, during the period that the Trustee serves as Trustee under this Agreement and for a period of [two (2)] years following the termination hereof or following such Trustee's ceasing to serve as Trustee, hold strictly confidential and not use for personal gain or for the gain of any Entity or Person for whom such Trustee may be employed any non-public information of or pertaining to the DIP Collateral Trust, including without limitation any non-public information regarding any Person to which any of the DIP Collateral Trust Assets relates or of which the Trustee has become aware in the Trustee's capacity as Trustee until (a) such information is made public other than by disclosure by the DIP Collateral Trust, the Trustee, or any DIP Collateral Trust Professionals in violation hereof; (b) the DIP Collateral Trust is required by law to disclose such information (in which case the DIP Collateral Trust shall provide the relevant Person reasonable advance notice and an opportunity to protect his, her, or its rights); or (c) the DIP Collateral Trust obtains a waiver of confidentiality from the applicable Person.

## ARTICLE VII
## DIP COLLATERAL TRUST OVERSIGHT COMMITTEE

7.1     DIP Collateral Trust Oversight Committee.   On or prior to the Confirmation Date, a DIP Collateral Trust Oversight Committee of the DIP Collateral Trust (the "DIP Collateral Trust Oversight Committee") shall consist of three (3) holders of DIP Claims selected by the Ad Hoc Group SteerCo, whose initial Committee Members are identified on Exhibit B hereto.

7.2     Authority and Responsibilities.

(a)     In addition to any and all other rights, powers, and authority set forth in this Agreement, the DIP Collateral Trust Oversight Committee shall have the right, power, and authority to (i) oversee, review and direct the activities of the DIP Collateral Trust and the performance of the Trustee, and (ii) consult with and advise the Trustee as to the administration and management of the DIP Collateral Trust in accordance with the Plan, the Confirmation Order and this Agreement and shall have the other responsibilities and powers as set forth herein; provided, however, to the fullest extent permitted by applicable law, the Committee Members of the DIP Collateral Trust Oversight Committee shall have no duty to monitor any other Committee Member, the Trustee, the Delaware Trustee, the Registrar, the DIP Collateral Trust, or any other Person, or to determine whether or not any other Committee Member, the Trustee, the Delaware Trustee, the Registrar, the DIP Collateral Trust, or any other Person is satisfying their responsibilities hereunder. To the fullest extent permitted by applicable law, the Committee Members of the DIP Collateral Trust Oversight Committee shall have no liability for the actions or inactions of any other Committee Member, the Trustee, the Delaware Trustee, the Registrar, the DIP Collateral Trust, or any other Person.

(b)     The Trustee shall consult with and provide information to the DIP Collateral Trust Oversight Committee in accordance with and pursuant to the terms of the Plan, the Confirmation Order and this Agreement sufficient in scope and detail to enable the DIP Collateral Trust Oversight Committee to exercise its rights, powers, and authority hereunder.

FBG_CH1_00092561

(c)      Notwithstanding any provision hereof to the contrary, the Trustee shall not be required to obtain the approval of the DIP Collateral Trust Oversight Committee to the extent that the DIP Collateral Trust Oversight Committee has authorized the Trustee to take any action that the Trustee, in good faith, reasonably determines, based on the advice of legal counsel, is required to be taken by applicable law.

(d)      In accordance with this Agreement, the Plan and the Confirmation Order, with respect to any DIP Claims, First Lien Claims, and Second Lien Claims not contributed into the DIP Collateral Trust, the Required Lenders (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, the Required Lenders (as defined in the First Lien Term Loan Agreement) under the First Lien Term Loan Agreement[, the Required Lenders (as defined in the Side-Car Term Loan Agreement) under the Side-Car Term Loan Agreement] and the Required Lenders (as defined in the Second Lien Term Loan Agreement) under the Second Lien Term Loan Agreement, in each case, have delegated all voting and economic rights with respect thereto to the DIP Collateral Trust, to be exercised pursuant to the direction of the DIP Collateral Trust Oversight Committee.

7.3      Meetings of the DIP Collateral Trust Oversight Committee.  Meetings of the DIP Collateral Trust Oversight Committee are to be held not less often than [quarterly].  Special meetings of the DIP Collateral Trust Oversight Committee may be held whenever and wherever called for by the Trustee or any Committee Member; provided, however, that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice being subject to waiver by the Committee Members).  Any action required or permitted to be taken by the DIP Collateral Trust Oversight Committee at a meeting may be taken without a meeting if the action is taken by written consent of the number of Committee Members that would have been required at a duly called meeting of the DIP Collateral Trust Oversight Committee at which all Committee Members were present, which written consent shall be recorded in the minutes, if any, or other transcript, if any, of proceedings of the DIP Collateral Trust Oversight Committee.

7.4      Manner of Acting.

(a)      A majority of the Committee Members shall constitute a quorum for the transaction of business at any meeting of the DIP Collateral Trust Oversight Committee.  Except as otherwise required by law or as provided for in this Agreement or the Plan, the majority vote of the Committee Members present at a duly called meeting at which a quorum is present throughout shall be the act of the DIP Collateral Trust Oversight Committee.  Any or all of the Committee Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any Committee Member participating in a meeting by this means is deemed to be present in person at the meeting.  Voting (including on negative notice) may be conducted by electronic mail or individual communications by the Trustee and each Committee Member.

(b)      Any Committee Member who is present and entitled to vote at a meeting of the DIP Collateral Trust Oversight Committee (including any meeting of the Trustee and the DIP

33

FBG_CH1_00092562

Collateral Trust Oversight Committee) when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the DIP Collateral Trust Oversight Committee, unless: (i) such Committee Member of the DIP Collateral Trust Oversight Committee objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the DIP Collateral Trust Oversight Committee before its adjournment. The right of dissent or abstention is not available to any Committee Member of the DIP Collateral Trust Oversight Committee who votes in favor of the action taken.

(c)    Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Committee Member of the DIP Collateral Trust Oversight Committee shall report to the DIP Collateral Trust Oversight Committee any conflict of interest such Committee Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Committee Member may have with respect to or in connection with such matter or issue, other than solely as a holder of DIP Collateral Trust Interests). A Committee Member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such Committee Member's interests are adverse to the interests of the DIP Collateral Trust (i) shall be deemed to be a "Conflicted Committee Member" who shall not be entitled to vote or take part in any action with respect to such matter or issue, (ii) the vote or action with respect to such matter or issue shall be undertaken only by Committee Members of the DIP Collateral Trust Oversight Committee who are not Conflicted Committee Members and (iii) the affirmative vote of only a majority of the other Committee Members of the DIP Collateral Trust Oversight Committee who are not Conflicted Committee Members shall be required to approve of such matter or issue and the same shall be the act of the DIP Collateral Trust Oversight Committee; _provided_, _however_, that a Committee Member shall not be deemed to be a Conflicted Committee Member with respect to a particular matter or issue if such Committee Member merely has an economic interest in the outcome of such matter or issue solely as a holder, or the representative or employee of a holder, of DIP Collateral Trust Interests.

7.5    Tenure of the Committee Members of the DIP Collateral Trust Oversight Committee. The authority of the Committee Members will be effective as of the Confirmation Date and will remain and continue in full force and effect until the DIP Collateral Trust is terminated in accordance with Section 11.2 hereof. The Committee Members will serve until such Committee Member's earlier death, resignation pursuant to Section 7.6 below, or removal pursuant to Section 7.7 below.

7.6    Resignation. A Committee Member may resign by giving not less than thirty (30) days' prior written notice thereof to the Trustee and the other Committee Members. Such resignation shall become effective on the earlier to occur of: (a) the day specified in such notice and (b) the appointment of a successor in accordance with Section 7.8 below.

7.7    Removal.

(a)    A majority of the DIP Collateral Trust Oversight Committee may remove any Committee Member for Cause or Disability. Notwithstanding the foregoing, upon the

34

FBG_CH1_00092563

occurrence of the Termination Date (as defined in Section 11.2 below), any or all of the Committee Members shall be deemed, automatically and without further action by any of them, to have resigned.

(b)    For purposes of Section 6.5 hereof and this Section 7.7:

(i)    "Cause" shall mean (i) a Person's willful failure to perform his/her/its material duties hereunder (including, without limitation, with respect to a Committee Member or, to the extent applicable, the Trustee, regular attendance at meetings of the DIP Collateral Trust Oversight Committee), which is not remedied within thirty (30) days of notice; (ii) a Person's commission of an act of fraud, theft or embezzlement; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his/her/its duties hereunder; or (v) a Person's breach of their duties hereunder or an unresolved conflict of interest; and

(ii)    "Disability" of the Trustee or a Committee Member who is a natural person shall have occurred if, as a result of such Person's incapacity due to physical or mental illness as determined by a physician selected by the Trustee or the Committee Member, as applicable, and reasonably acceptable to the DIP Collateral Trust Oversight Committee, the Trustee or the Committee Member shall have been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of one hundred eighty (180) days during any period of twelve (12) consecutive months.

7.8    Appointment of a Successor Committee Member.

(a)    In the event of a vacancy on the DIP Collateral Trust Oversight Committee (whether by removal, death or resignation), a new Committee Member may be appointed to fill such position by the remaining Committee Members acting unanimously. The appointment of a successor Committee Member will be further evidenced by the Trustee's filing with the Bankruptcy Court (so long as the Chapter 11 Cases have not been closed or dismissed) and posting on a website/ data site maintained by the Registrar a notice of appointment, as provided by the DIP Collateral Trust Oversight Committee.

(b)    Immediately upon the appointment of any successor Committee Member, all rights, powers, duties, authority and privileges of the predecessor Committee Member hereunder will be vested in and undertaken by the successor Committee Member without any further act, and such successor Committee Member will not be liable personally for any act or omission of the predecessor Committee Member.

(c)    Every successor Committee Member appointed hereunder shall execute, acknowledge and deliver to the Trustee and other Committee Members an instrument accepting the appointment under this Agreement and agreeing to be bound hereto, and thereupon the successor Committee Member without any further act, deed or conveyance, shall become vested with all rights, powers, trusts and duties of the retiring Committee Member.

35

FBG_CH1_00092564

7.9     Compensation and Reimbursement of Expenses.  Unless otherwise determined by the Trustee as a reasonable and appropriate expenditure of the DIP Collateral Trust Assets, no Committee Member shall be entitled to compensation in connection with his or her service to the DIP Collateral Trust Oversight Committee.  However, the DIP Collateral Trust will reimburse the Committee Members for all reasonable and documented out-of-pocket expenses incurred by the Committee Members in connection with the performance of each of their duties hereunder (including reasonable fees, costs and expenses of legal counsel only as set forth in this Agreement).

7.10    Confidentiality.   Each Committee Member shall, during the period that such Committee Member serves as a Committee Member under this Agreement and following the termination hereof or following such Committee Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to the DIP Collateral Trust, including without limitation any non-public information regarding any Person to which any of the DIP Collateral Trust Assets relates or of which such Committee Member has become aware in the Committee Member's capacity as a Committee Member, except as otherwise required by law; provided, however, this Section 7.10 shall not apply if such Committee Member merely has personal gain with respect to material non-public information in their capacity as a holder of DIP Collateral Trust Interests.

7.11    Delegation by Required Lenders.

(a)     Pursuant to the terms of the Plan and the Confirmation Order, the DIP Order has been amended pursuant to the Confirmation Order to the extent necessary to delegate the DIP Lenders' governance and economic rights to the DIP Collateral Trust, subject to the direction of the DIP Collateral Trust Oversight Committee.  The DIP Required Lenders have been deemed to have consented to and directed each of the foregoing transactions, transfers, and delegations. Pursuant to the Plan, with respect to any DIP Claims, First Lien Claims, Second Lien Claims[, and Side-Car Term Loan Claims] not contributed into the DIP Collateral Trust, the DIP Required Lenders[, the Sidecar Required Lenders,] the First Lien Required Lenders, and the Second Lien Required Lenders are deemed to have irrevocably delegated all voting, consent, direction, and economic rights with respect thereto to the DIP Collateral Trust, subject to the direction of the DIP Collateral Trust.  The DIP Collateral Trust, as directed by the DIP Collateral Trust Oversight Committee, is thereby authorized to exercise all rights and remedies that the DIP Required Lenders may exercise under the DIP Order, the DIP Credit Agreement[, the Side-Car Term Loan Agreement,] the First Lien Term Loan Agreement, and the Second Lien Term Loan Agreement, and the DIP Required Lenders[, the Sidecar Required Lenders,] the First Lien Required Lenders, and the Second Lien Required Lenders have consented to and directed such exercise.  The Trustee is further authorized to exercise all rights and remedies with respect to the Collateral, subject to the direction of the DIP Collateral Trust Oversight Committee, and the Required Lenders have consented to and/or directed the DIP Collateral Trust Oversight Committee and the Trustee as to the foregoing.  Any reference to "Required Lenders," "direction of the Required Lenders," or "consent of the Required Lenders" shall, from and after the Confirmation Date, be deemed a reference to the DIP Collateral Trust Oversight Committee.  For the avoidance of doubt, this Section 7.11 does not impact the survival or claims and/or liens under the Plan under the DIP Credit Agreement[, the Side-Car Term Loan Agreement,] the First Lien Term Loan Agreement, and the Second Lien Term Loan Agreement.

FBG_CH1_00092565

(b)     Payment of all advisors and/or agents in connection with this Section 7.11, any actions directed or taken by the DIP Collateral Trust Oversight Committee in furtherance thereof, and the maintenance of lender registers under Section 7.14 of the Plan or Section 7.7 of the Plan, shall be paid by the DIP Collateral Trust.

(c)     The Trustee, on behalf of the DIP Collateral Trust, shall have the right, pursuant to section 363(k) of the Bankruptcy Code, to credit bid up to the full amount of the DIP Claims, First Lien Claims, Second Lien Claims[, and Side-Car Term Loan Claims] in any sale of DIP Collateral, whether such sale is effectuated through sections 363, 1123, or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise. No provision of this Agreement, other than the right of the DIP Collateral Trust Oversight Committee to direct the Trustee hereunder, shall be construed to limit, restrict, or otherwise impair the Trustee's right to credit bid the DIP Claims, First Lien Claims, Second Lien Claims[, and Side-Car Term Loan Claims] for any DIP Collateral.

## ARTICLE VIII
## DIP COLLATERAL TRUST RESERVES

8.1     Establishment of DIP Collateral Trust Reserves.  On the Confirmation Date, the Trustee shall establish the DIP Collateral Trust Reserve (the "DIP Collateral Trust Reserve"). The DIP Collateral Trust Reserve shall be used to fund the DIP Collateral Trust Expenses. Any excess funds in the DIP Collateral Trust Reserve remaining after the payment or funding of amounts required under the preceding sentences shall be deemed to be DIP Collateral Trust Proceeds and shall be available for distribution in accordance with the Plan and Sections 4.1 hereof.

8.2     Cash in the DIP Collateral Trust Reserves.  Cash held in the DIP Collateral Trust Reserves (including any earnings that have accrued on such Cash, net of any expenses, including any tax, relating thereto) shall be retained by the DIP Collateral Trust for the benefit of Beneficiaries as contemplated in Section 8.1, the Plan, the Confirmation Order and this Agreement pending determination of their entitlement thereto under the terms of the Plan. Cash shall be either (x) held by the DIP Collateral Trust in an interest-bearing account or (y) invested in interest-bearing obligations issued by the U.S. government and guaranteed by the U.S. government, and having (in either case) a maturity date of not more than thirty (30) days. All such Cash or investments shall be held by the DIP Collateral Trust in an account at a nationally recognized bank, financial institution, trust company or investment/brokerage firm chosen by the Trustee and bearing the name "First Brands DIP Collateral Trust Reserve Account" or words of similar import (the "DIP Collateral Trust Reserve Account"). Cash held in the DIP Collateral Trust Reserve Account will (i) be held in trust, pending distribution by the DIP Collateral Trust and (ii) be accounted for separately from the DIP Collateral Trust Assets.

## ARTICLE IX
## LIABILITY AND INDEMNIFICATION

9.1     No Further Liability.  Each of the Trustee, the Delaware Trustee, the Committee Members and their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives shall have no liability for any actions or omissions in accordance with this Agreement or with respect to the DIP Collateral Trust unless

37

FBG_CH1_00092566

DEBTORS' EXHIBIT NO. 178
Page 167 of 360

arising out of such Person's own fraud, willful misconduct or gross negligence.  Without limiting the generality of the foregoing, the Trustee, the Delaware Trustee, the Committee Members and their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by such Person to be genuine and shall have no liability for actions taken in reliance thereon.  None of the provisions hereof shall require the Trustee, the Delaware Trustee, the Committee Members or their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers.  Each of the Trustee, the Delaware Trustee, the Committee Members and their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives may rely without inquiry upon writings delivered to such Person pursuant to the Plan, the Confirmation Order or this Agreement (including in the execution of such Person's duties hereunder or thereunder) that such Person reasonably believes to be genuine and to have been properly given.  Notwithstanding the foregoing, nothing in this Section 9.1 shall relieve the Trustee, the Delaware Trustee, the Committee Members or respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives from any liability for any actions or omissions arising out of such Person's fraud, willful misconduct or gross negligence.  To the fullest extent permitted under applicable law, any action taken or omitted to be taken in the case of the Trustee, the Delaware Trustee, the DIP Collateral Trust Oversight Committee, or their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives with the express approval of the Bankruptcy Court (so long as the Chapter 11 Cases have not been closed or dismissed) and, in the case of the Trustee, the Delaware Trustee, and their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives, with the express approval or at the direction of the DIP Collateral Trust Oversight Committee, will conclusively be deemed not to constitute fraud, willful misconduct or gross negligence.  No termination hereof or amendment, modification or repeal of this Section 9.1 shall adversely affect any right or protection of the Trustee, the Delaware Trustee, the Committee Members of the DIP Collateral Trust Oversight Committee or their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives that exists at the time of such amendment, modification or repeal.

9.2     Reliance on Documents and Advice of Counsel or Other Persons.   The DIP Collateral Trust may, in connection with the performance of its functions, in its sole and absolute discretion, consult with its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done on reasonable reliance on the advice or opinions rendered by such persons, regardless of whether such advice or opinions are in writing.  Notwithstanding such authority, neither the DIP Collateral Trust nor the Trustee shall be under any obligation to consult with any such attorneys, accountants, advisors, or agents, and any determination not to do so shall not result in the imposition of liability on the DIP Collateral Trust or the Trustee unless such determination is based on willful misconduct, gross negligence, or fraud.  Except as otherwise provided herein, the DIP Collateral Trust, by and through the Trustee, may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be

FBG_CH1_00092567

DEBTORS' EXHIBIT NO. 178
Page 168 of 360

genuine and to have been signed or presented by the proper party or parties.  The DIP Collateral Trust, by and through the Trustee, also may engage and consult with its respective legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered in good faith reliance upon the advice of such counsel, agents, or advisors to the DIP Collateral Trust to the extent permitted by law.

9.3     No Liability for Acts of Other Persons.  None of the Trustee, the Delaware Trustee, or any Committee Member  shall be liable for the act or omission of each other or the respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives of each other.

9.4     Limitation of Debtors' Liability.  The Debtors or their respective successors shall have no liabilities or obligations to the Trustee, the Delaware Trustee, or any Committee Member, the Beneficiaries or the DIP Collateral Trust, other than the liabilities and obligations expressly contemplated by the Plan, the Confirmation Order and this Agreement.

9.5     Indemnification of the Trustee and DIP Collateral Trust Oversight Committee.

(a)     In exercising the rights granted herein, the DIP Collateral Trust and the Trustee shall exercise their best judgment in accordance with their fiduciary duties, to the end that the affairs of the DIP Collateral Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded.  Notwithstanding the foregoing, from and after the Confirmation Date, each of the Trustee, the Delaware Trustee, the Committee Members, the DIP Collateral Trust Professionals, the officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives of any of the foregoing, the successors and assigns of any of the foregoing(each, a "DIP Collateral Trust Indemnified Party," and collectively, the "DIP Collateral Trust Indemnified Parties") shall be, and hereby is, indemnified and held harmless by the DIP Collateral Trust, to the fullest extent permitted by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, losses, liabilities, fines, penalties, demands, costs, expenses (including attorneys' fees), covenants, judgments, damages, attorneys' fees, defense costs and other assertions of liability, whether sounding in tort, contract or otherwise, arising out of any such DIP Collateral Trust Indemnified Party's actions or omissions to act regarding the DIP Collateral Trust, except to the extent arising from such DIP Collateral Trust Indemnified Party's own fraud, bad faith, gross negligence, willful misconduct or criminal misconduct that is determined by a Final Order (not subject to further appeal or review) or a court of competent jurisdiction.  The foregoing indemnification shall extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to: (i) this Agreement; (ii) the services to be rendered pursuant to this Agreement; (iii) any document or information, whether oral or written, referred to herein or supplied to the DIP Collateral Trust Indemnified Party; or (iv) proceedings by or on behalf of any creditor.  Reasonable out-of-pocket expenses, including attorney's fees and other expenses and disbursements, incurred by a DIP Collateral Trust Indemnified Party in defending or investigating a threatened or pending action, suit or proceeding shall be paid or reimbursed by the DIP Collateral Trust, solely out of the DIP Collateral Trust Assets (including any insurance policy obtained by the DIP Collateral Trust for the benefit of DIP Collateral Trust Indemnified Parties), in advance of the final disposition of such action, suit or proceeding; *provided*, *however*, that any DIP Collateral Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a

39

FBG_CH1_00092568

court of competent jurisdiction ultimately determines, by Final Order, that such DIP Collateral Trust Indemnified Party is not entitled to indemnification hereunder due to such Person's own fraud, bad faith, gross negligence, willful misconduct or criminal misconduct. Any indemnification claim of a DIP Collateral Trust Indemnified Party shall be entitled to a priority distribution from the DIP Collateral Trust Assets, ahead of the DIP Collateral Trust Interests and any other claim to or interest in such assets. In any matter covered by the first two sentences of this subsection, any party entitled to indemnification shall have the right to employ such party's own separate counsel, at the DIP Collateral Trust's expense, subject to the foregoing terms and conditions. In addition, the DIP Collateral Trust shall purchase insurance coverage as set forth in Section 5.7(i) hereof, including fiduciary or similar liability insurance using funds from the DIP Collateral Trust Reserve for the benefit of the Trustee, the Delaware Trustee and the Committee Members. The indemnification provided under this Section 9.5 shall survive the death, dissolution, resignation or removal, as may be applicable, of the Trustee, the Delaware Trustee, the DIP Collateral Trust Oversight Committee, any Committee Member or any other DIP Collateral Trust Indemnified Party and shall inure to the benefit of the Trustee's, each Committee Member's and each other DIP Collateral Trust Indemnified Party's respective heirs, successors and assigns.

(b) To the extent the DIP Collateral Trust indemnifies and holds harmless any DIP Collateral Trust Indemnified Parties as provided above, the reasonable and documented legal fees and related costs incurred by counsel to the DIP Collateral Trust in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as DIP Collateral Trust Expenses payable in accordance with this Agreement. The costs and expenses incurred in enforcing the right of indemnification in this Section 9.5 shall be paid by the DIP Collateral Trust. This provision and the foregoing indemnity in respect of any DIP Collateral Trust Indemnified Party shall survive the termination of such DIP Collateral Trust Indemnified Party from the capacity for which such party is indemnified. Termination or modification hereof shall not limit or negatively affect any indemnification rights or obligations set forth herein.

(c) The DIP Collateral Trust may, with the approval of the DIP Collateral Trust Oversight Committee, indemnify any Person who is not a DIP Collateral Trust Indemnified Party for any loss, cost, damage, expense or liability for which a DIP Collateral Trust Indemnified Party would be entitled to mandatory indemnification under this Section 9.5.

(d) Any DIP Collateral Trust Indemnified Party may waive the benefits of indemnification under this Section 9.5, but only by an instrument in writing executed by such DIP Collateral Trust Indemnified Party.

(e) The rights to indemnification under this Section 9.5 are not exclusive of other rights which any DIP Collateral Trust Indemnified Party may otherwise have at law or in equity, including, without limitation, common law rights to indemnification or contribution. Nothing in this Section 9.5 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party. Further, the DIP Collateral Trust hereby agrees: (i) that the DIP Collateral Trust is the indemnitor of first resort (*i.e.*, in the event any DIP Collateral Trust Indemnified Party has the right to receive indemnification from one or more third party, the DIP Collateral Trust's obligations to such DIP Collateral Trust Indemnified Party are primary); (ii) that the DIP Collateral Trust shall

40

FBG_CH1_00092569

be required to pay the full amount of expenses (including attorneys' fees) actually incurred by such DIP Collateral Trust Indemnified Party in connection with any proceeding as to which the DIP Collateral Trust Indemnified Party is entitled to indemnification hereunder in advance of the final disposition of such proceeding from the DIP Collateral Trust Reserves; (iii) that the DIP Collateral Trust irrevocably waives, relinquishes and releases such third parties from any and all claims by the DIP Collateral Trust against such third parties for contribution, subrogation or any other recovery of any kind in respect thereof; and (iv) no DIP Collateral Trust Indemnified Party shall have the obligation to reduce, offset, allocate, pursue or apportion any indemnification advancement, contribution or insurance coverage among multiple parties owing indemnification obligations to such DIP Collateral Trust Indemnified Party prior to the DIP Collateral Trust's satisfaction of its indemnification obligations hereunder. For the avoidance of doubt, each DIP Collateral Trust Indemnified Party shall be entitled, subject to the terms hereof, to indemnification for any reasonable out-of-pocket costs and attorneys' fees such DIP Collateral Trust Indemnified Party may incur in connection with enforcing any of its rights under this Article IX.

9.6    DIP Collateral Trust Liabilities.    All liabilities of the DIP Collateral Trust, including, without limitation, indemnity obligations under Section 9.5 hereof and applicable law, will be liabilities of the DIP Collateral Trust and will be paid or satisfied solely from the DIP Collateral Trust Assets and paid on a priority basis, *provided*, *however*, that the DIP Collateral Trust may obtain liability insurance to satisfy its indemnity obligations under Section 9.5 and applicable law. No liability of the DIP Collateral Trust will be payable in whole or in part by any Beneficiary individually or in the Beneficiary's capacity as a Beneficiary, by the Trustee individually or in the Trustee's capacity as Trustee, by the Delaware Trustee individually or in the Delaware Trustee's capacity as Delaware Trustee, by any Committee Member individually or in the Committee Member's capacity as Committee Member or by any representative, member, partner, shareholder, director, officer, professional, employee, agent, affiliate or advisor of any Beneficiary, any Committee Member, the Trustee or their respective affiliates.

9.7    Limitation of Liability.    None of the DIP Collateral Trust or DIP Collateral Trust Indemnified Parties shall be liable for direct, indirect, monetary, punitive, exemplary, consequential, special or other damages or losses (including but not limited to lost profits) whatsoever, for a breach hereof, except to the extent his/her/its actions or omissions to act, as determined by a Final Order, are due to such DIP Collateral Trust Indemnified Party's own fraud, willful misconduct or gross negligence and any of the foregoing damages are awarded pursuant to any such Final Order. The DIP Collateral Trust and DIP Collateral Trust Indemnified Parties shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the DIP Collateral Trust or DIP Collateral Trust Indemnified Parties.

9.8    Burden of Proof.    In making a determination with respect to entitlement to exculpation or indemnification hereunder, the court, Person or Entity making such determination shall presume that any DIP Collateral Trust Indemnified Party is entitled to exculpation and indemnification under this Agreement and any Person seeking to overcome such presumption shall have the burden of proof to overcome that presumption.

41

FBG_CH1_00092570

## ARTICLE X
## TAX MATTERS

10.1     Treatment of DIP Collateral Trust Assets Transfer.  For all U.S. federal, state and local income tax purposes, all Persons (including, without limitation, the Debtors, the Trustee and the Beneficiaries) shall treat the transfer of the DIP Collateral Trust Assets by the Debtors to the DIP Collateral Trust for the benefit of the Beneficiaries, whether their Claims are Allowed on or after the Confirmation Date, including any amounts or other assets subsequently transferred to the DIP Collateral Trust (but only at such time as actually transferred) as (a) a transfer of the DIP Collateral Trust Assets (subject to any obligations relating to such DIP Collateral Trust Assets) directly to the Beneficiaries (*provided*, that, in the case of certain DIP Collateral Trust Assets, the Debtors shall instead be treated as directly transferring, on behalf of the Beneficiaries, such DIP Collateral Trust Assets to the Blockers), followed by (b) the transfer by the Beneficiaries to the DIP Collateral Trust of the DIP Collateral Trust Assets (other than those DIP Collateral Trust Assets held by the Blockers, in which case the Beneficiaries shall be treated as transferring their respective equity interests in such Blockers) in exchange for DIP Collateral Trust Interests.  At the same time, and pursuant to the Plan, the DIP Collateral Trust Assets that are Remaining Lender Claims will have been directly contributed to the DIP Collateral Trust by the holders of Allowed DIP A Claims for all U.S. federal, state, local, and non-U.S. income tax purposes.  Accordingly, the Beneficiaries shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the DIP Collateral Trust Assets.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for U.S. state and local income tax purposes.

10.2     Tax Status of the Blockers.  Each Blocker is intended to be classified as a corporation for U.S. federal income tax purposes and may be organized as a domestic corporation or as a non-U.S. entity, as the Trustee determines to be appropriate to facilitate the orderly liquidation of the DIP Collateral Trust Assets and the maximization of recoveries to the Beneficiaries. Each Blocker shall bear all entity-level taxes imposed on it with respect to its assets and operations. With respect to any Blocker that is treated as a domestic corporation and that holds a United States real property interest, the Trustee shall, in consultation with its tax advisors, use commercially reasonable efforts to cause such Blocker, prior to any liquidating or other distribution by such Blocker to the DIP Collateral Trust or any disposition of the equity of such Blocker, to dispose of all United States real property interests then held by such Blocker in transactions in which gain or loss is recognized in full, so that the equity of such Blocker is not a United States real property interest under section 897(c)(1)(B) of the IRC as of the date of such distribution or disposition. Nothing in this Section requires the Trustee to take any action it determines is not consistent with maximizing recoveries to the Beneficiaries as a whole.

10.3     Tax Reporting.

(a)     The "taxable year" of the DIP Collateral Trust shall be the "calendar year" as such terms are defined in section 441 of the IRC.  The Trustee shall cause the DIP Collateral Trust to file tax returns for the DIP Collateral Trust treating the DIP Collateral Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 10.3 and shall duly and timely file with the IRS annual tax returns on Form 1041.  In addition, the DIP Collateral Trust shall duly and timely file such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon out of the DIP

42

FBG_CH1_00092571

Collateral Trust Assets (or the income or proceeds thereof). The Trustee also will annually cause the DIP Collateral Trust to send within seventy-five (75) days after the end of each taxable year to each Beneficiary a Schedule K-1 or other applicable information statement setting forth such holder's share of items of income, gain, loss, deduction or credit (including the receipts and expenditures of the DIP Collateral Trust) as relevant for U.S. federal income tax purposes and will instruct all such Beneficiaries to use such information in preparing their U.S. federal income tax returns; *provided,* that if the DIP Collateral Trust elects to make distributions through an intermediary, it shall provide such Schedule K-1 or statement to such intermediaries for them to provide to such Beneficiaries. The Trustee shall also cause the DIP Collateral Trust to duly and timely file or provide (or cause to be duly and timely filed or provided) any other statement, return or disclosure relating to the DIP Collateral Trust that is required by any Governmental Unit and such other statement, return or disclosure shall be true, correct, and complete.

(b)      Allocations of taxable income of the DIP Collateral Trust among the Beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time, and without regard to any restrictions on distributions set forth in the Plan or this Agreement) if, immediately prior to such deemed distribution, the DIP Collateral Trust had distributed all its assets (valued at their tax book value) to the Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the DIP Collateral Trust. Similarly, taxable loss of the DIP Collateral Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining DIP Collateral Trust Assets. The tax book value of the DIP Collateral Trust Assets for purposes of this Section 10.3(b) shall equal their fair market value on the Confirmation Date, adjusted in accordance with tax accounting principles prescribed by the IRC, applicable Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

(c)      The DIP Collateral Trust shall be responsible for payment, out of the DIP Collateral Trust Assets, of any taxes imposed on the DIP Collateral Trust or the DIP Collateral Trust Assets.

10.4   Withholding of Taxes.

(a)      The Trustee shall cause the DIP Collateral Trust to deduct and withhold and timely pay to the appropriate Governmental Unit all amounts required to be deducted or withheld pursuant to the IRC or any provision of any state, local or non-U.S. tax law with respect to any payment or distribution to the Beneficiaries. Notwithstanding the above, each holder of an Allowed Lender Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution. All such amounts withheld and paid to the appropriate Governmental Unit shall be treated as amounts distributed to such Beneficiaries for all purposes hereof.

(b)      The DIP Collateral Trust shall be authorized to collect such tax information from the Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the

43

FBG_CH1_00092572

Confirmation Order and this Agreement. As a condition to receive distributions under the Plan, all Beneficiaries may be required to identify themselves to the DIP Collateral Trust and provide tax information and the specifics of their holdings, to the extent the Trustee deems appropriate, including an IRS Form W-9 or, in the case of Beneficiaries that are not United States persons within the meaning of IRC section 7701(a)(30), certification of foreign status on an applicable IRS Form W-8.

(c)     The DIP Collateral Trust may refuse to make a distribution to any Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; *provided*, *however*, that, (i) upon the delivery of such information by a Beneficiary, the DIP Collateral Trust shall make such distribution to which the Beneficiary is entitled, without interest and (ii) if the DIP Collateral Trust fails to withhold in respect of amounts received or distributable with respect to any such holder and the DIP Collateral Trust is later held liable for the amount of such withholding, such holder shall be required to reimburse the DIP Collateral Trust for such liability, unless such liability arises out of the Trustee's fraud, willful misconduct or gross negligence. The identification requirements in Section 10.4(b) and this Section 10.4(c) may, in certain cases, extend to holders who hold their claims in street name. If a Beneficiary fails to comply with such a request for tax information within one hundred eighty (180) days, the Trustee may cause the DIP Collateral Trust to file a document with the Bankruptcy Court, or if the Chapter 11 Cases have been closed or dismissed, post a document on a website / data room maintained by the Registrar, that will provide twenty-one (21) days' notice before such distribution may be deemed an unclaimed distribution and treated in accordance with Section 9.7 of the Plan.

(d)     In the event that the DIP Collateral Trust elects to make distributions through an intermediary, the party who would be the withholding agent with respect to distributions to the Beneficiary under U.S. federal income tax principles shall be responsible for withholding tax compliance with respect to any such distribution, based on instructions on the character of the income from the Trustee.

10.5    Valuation. The valuation of the DIP Collateral Trust Assets prepared pursuant to Section 2.9 hereof shall be used consistently by all parties (including, without limitation, the DIP Collateral Trust) for all U.S. federal, state and local income tax purposes (and other tax purposes, to the extent permitted by applicable law). The DIP Collateral Trust also shall duly and timely file (or cause to be duly and timely filed) any other statements, returns or disclosures relating to the DIP Collateral Trust that are required by any Governmental Unit and such other statements, returns or disclosures shall be true, correct, and complete.

10.6    Expedited Determination of Taxes. The Trustee may request an expedited determination of taxes of the DIP Collateral Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the DIP Collateral Trust for all taxable periods through the termination of the DIP Collateral Trust.

10.7    Non-U.S. Tax Matters. The Trustee shall cause the DIP Collateral Trust to duly comply on a timely basis with all obligations, and satisfy all liabilities, imposed on the DIP Collateral Trust under non-U.S. law relating to taxes, interest, penalties, and other amounts. The DIP Collateral Trust shall not distribute the DIP Collateral Trust Assets or proceeds thereof

44

FBG_CH1_00092573

without having first obtained all certificates required to have been obtained under applicable non-U.S. law relating to taxes.

10.8    Tax Cooperation.  Prior to entering into any settlement agreement, agreeing to the language of any consent order or agreed judgment, or taking any other action with respect to any estate claim or other material trust matter that could reasonably be expected to affect the U.S. federal income tax consequences to the Trust or any Trust Beneficiary, including without limitation the characterization of any proceeds or consideration for U.S. federal income tax purposes, the allocation of any settlement consideration among categories of recovery, and any determination regarding the applicability or rate of withholding on distributions to Trust Beneficiaries, the Trustee shall consult in good faith with Trust Tax Counsel and shall provide each [AHG Tax Counsel] with written notice and a reasonable opportunity to submit written comments, which comments the Trustee shall consider in good faith prior to taking such action. The Trustee's obligation to consult and consider comments in good faith shall not require the Trustee to adopt any particular tax position or to refrain from any action that the Trustee, in the exercise of his fiduciary duties, determines is in the best interests of the Trust Beneficiaries as a whole.

## ARTICLE XI
## DURATION AND TERMINATION OF DIP COLLATERAL TRUST

11.1    Duration.  Once the DIP Collateral Trust becomes effective upon the Confirmation Date of the Plan, the DIP Collateral Trust and this Agreement shall remain and continue in full force and effect until the DIP Collateral Trust is terminated in accordance with the terms hereof.

11.2    Termination.  The DIP Collateral Trust shall dissolve and be wound up upon the earlier of (a) such time as the DIP Collateral Trust has (i) paid all costs, expenses and other obligations incurred in connection with the administration of the DIP Collateral Trust including all DIP Collateral Trust Expenses (ii) liquidated or abandoned all DIP Collateral Trust Assets other than Trust Claims, (iii) distributed all distributions required to be made by the DIP Collateral Trust under the Plan including all DIP Collateral Trust Proceeds; and (iv) determined, with the approval of the DIP Collateral Trust Oversight Committee, that the pursuit of any Trust Claims is not likely to yield sufficient additional DIP Collateral Trust Proceeds to justify further pursuit of such Trust Claims and (b) at any time the Trustee determines, in reliance upon the advice of any DIP Collateral Trust Professionals, that the expense of administering the DIP Collateral Trust so as to make a final distribution to the Beneficiaries is likely to exceed the value of the Litigation Trust Assets then remaining in the Litigation Trust, the Litigation Trustee having received authority from the Bankruptcy Court to (i) reserve any amount necessary to dissolve the DIP Collateral Trust, (ii) donate any balance to a charitable organization (A) described in Section 501(c)(3) of the IRC, (B) exempt from U.S. federal income tax under Section 501(a) of the IRC, (C) not a "private foundation," as defined in Section 509(a) of the IRC, and (D) that is unrelated to the Debtors, the DIP Collateral Trust, the Trustee, the Delaware Trustee, the Committee Members, any DIP Collateral Trust Professionals, and any insider of any of the foregoing, and (iii) wind up the DIP Collateral Trust; *provided, however*, that in no event shall the Termination Date be later than five (5) years from the Confirmation Date unless (x) the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-month period prior to the end of any extension period), orders that a fixed period extension (not to exceed three (3) years,

45

FBG_CH1_00092574

including any prior extensions, without a favorable private letter ruling from the Internal Revenue Service or a "should" level opinion of counsel satisfactory to the Trustee that any further extension would not adversely affect the status of the DIP Collateral Trust as a "liquidating trust" for U.S. federal income tax purposes) (y) after the closing or dismissal of the Chapter 11 Cases, the DIP Collateral Trust obtains a favorable private letter ruling from the Internal Revenue Service or a "should" level opinion of counsel satisfactory to the Trustee that any further extension would not adversely affect the status of the DIP Collateral Trust as a "liquidating trust" for U.S. federal income tax purposes, in either case, is necessary to facilitate or complete the recovery and liquidation of the DIP Collateral Trust Assets. The process of winding up the Litigation Trust, including without limitation taking the actions set forth in Section 11.2(b)(i) and Section 11.2(b)(ii), if applicable, shall be referred to herein as the "Winding Up Process". The date upon which the Litigation Trust shall be finally wound up and a "Certificate of Cancellation" shall be filed with the Secretary of State of the State of Delaware shall be referred to herein as the the "Termination Date." The DIP Collateral Trust may not be terminated and dissolved at any time by the Beneficiaries. Notwithstanding anything to the contrary contained in this Agreement, the existence of the DIP Collateral Trust as a separate legal entity shall continue until the filing of a Certificate of Cancellation with the Secretary of State of the State of Delaware. A certified copy of the Certificate of Cancellation shall be given to the Delaware Trustee for its records promptly following such filing.

11.3   Continuance of DIP Collateral Trust for Winding Up. During the Winding Up Process and solely for the purpose of liquidating and winding up the affairs of the DIP Collateral Trust, the Trustee and the Delaware Trustee shall continue to act as such until their duties have been fully performed. During the Winding Up Process, the Trustee shall continue to be entitled to receive the Trustee Fees called for by Section 6.2(b) hereof and subject to Section 2.5 hereof and the Delaware Trustee shall be entitled to all fees hereunder. Upon distribution of all DIP Collateral Trust Assets, the Trustee shall retain the books, records and files that shall have been delivered or created in connection with the administration of the DIP Collateral Trust to the extent not otherwise required to be handled by the Trustee in accordance with Section 5.9 hereof. At the Trustee's discretion, but subject in all cases to Section 5.9 hereof, all of such records and documents may be destroyed no earlier than two (2) years following the Termination Date as the Trustee deems appropriate (unless such records and documents are necessary to fulfill the Trustee's obligations hereunder). Except as otherwise specifically provided herein, upon the Termination Date, the Trustee and the DIP Collateral Trust Professionals shall be deemed discharged and have no further duties or obligations hereunder, except to account to the Beneficiaries as provided herein, the DIP Collateral Trust Interests shall be cancelled, and the DIP Collateral Trust will be terminated. In connection with the foregoing, upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee and the DIP Collateral Trust and Trustee's employees, professionals, and agents of any further duties, discharging and releasing the Trustee and their employees, professionals, and agents from all liability related to the DIP Collateral Trust.

**ARTICLE XII**
**AMENDMENT AND WAIVER**

12.1   Subject to Sections 12.2 and 12.3 hereof, the Trustee may amend, supplement or waive any provision hereof with the consent of the DIP Collateral Trust Oversight Committee or by order of the Bankruptcy Court. Subject to Sections 12.2 and 12.3, technical amendments,

FBG_CH1_00092575

including but not limited to corrections to ministerial errors, to this Agreement may be made, as necessary to clarify this Agreement or enable the Trustee to effectuate the terms hereof, by the Trustee with prior written notice to the advisors to the DIP Collateral Trust Oversight Committee.

12.2    Notwithstanding <u>Section 12.1</u> hereof, no amendment, supplement or waiver of or to this Agreement shall (a) be inconsistent with the Plan or the Confirmation Order, (b) adversely affect the U.S. federal income tax status of the DIP Collateral Trust as a "liquidating trust" or (c) be inconsistent with the purpose and intention of the DIP Collateral Trust to liquidate in an expeditious but orderly manner the DIP Collateral Trust Assets in accordance with Treasury Regulation section 301.7701-4(d).

12.3    No failure by the DIP Collateral Trust, the Trustee, the Delaware Trustee, or the DIP Collateral Trust Oversight Committee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

## ARTICLE XIII
## <u>MISCELLANEOUS PROVISIONS</u>

13.1    <u>Recitals</u>.  The Recitals are incorporated into and made terms hereof.

13.2    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without reference to principles of conflicts of law that would require or permit application of the law of another jurisdiction); PROVIDED, HOWEVER, THAT THE PARTIES HERETO AND THE BENEFICIARIES INTEND THAT THE PROVISIONS HEREOF SHALL CONTROL OVER ANY CONTRARY OR LIMITING STATUTORY OR COMMON LAW OF THE STATE OF DELAWARE (OTHER THAN THE DELAWARE STATUTORY TRUST ACT) AND THAT, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THERE SHALL NOT BE APPLICABLE TO THE DIP COLLATERAL TRUST, THE TRUSTEE, THE DIP COLLATERAL TRUST OVERSIGHT COMMITTEE, THE DELAWARE TRUSTEE, DIP COLLATERAL TRUST BENEFICIARIES, OR THIS AGREEMENT ANY PROVISION OF THE LAWS (STATUTORY OR COMMON) OF THE STATE OF DELAWARE (OTHER THAN THE DELAWARE STATUTORY TRUST ACT) PERTAINING TO TRUSTS WHICH RELATE TO OR REGULATE IN A MANNER INCONSISTENT WITH THE TERMS HEREOF, INCLUDING: (A) THE FILING WITH ANY COURT OR GOVERNMENTAL BODY OR AGENCY OF TRUSTEE ACCOUNTS OR SCHEDULES OF TRUSTEE FEES AND CHARGES, (B) AFFIRMATIVE REQUIREMENTS TO POST BONDS FOR TRUSTEES, OFFICERS, AGENTS, OR EMPLOYEES OF A TRUST, (C) THE NECESSITY FOR OBTAINING COURT OR OTHER GOVERNMENTAL APPROVAL CONCERNING THE ACQUISITION, HOLDING OR DISPOSITION OF REAL OR PERSONAL PROPERTY, (D) FEES OR OTHER SUMS PAYABLE TO TRUSTEES, OFFICERS, AGENTS OR EMPLOYEES OF A TRUST, (E) THE ALLOCATION OF RECEIPTS AND EXPENDITURES TO INCOME OR PRINCIPAL, (F) RESTRICTIONS OR LIMITATIONS ON THE PERMISSIBLE NATURE, AMOUNT OR CONCENTRATION OF TRUST INVESTMENTS OR REQUIREMENTS RELATING TO THE TITLING, STORAGE OR OTHER MANNER OF HOLDING OF TRUST ASSETS, (G) THE EXISTENCE OF

FBG_CH1_00092576

RIGHTS OR INTERESTS (BENEFICIAL OR OTHERWISE) IN TRUST ASSETS, (H) THE ABILITY OF BENEFICIAL OWNERS OR OTHER PERSONS TO TERMINATE OR DISSOLVE A TRUST, OR (I) THE ESTABLISHMENT OF FIDUCIARY OR OTHER STANDARDS OR RESPONSIBILITIES OR LIMITATIONS ON THE ACTS OR POWERS OF TRUSTEES OR BENEFICIAL OWNERS THAT ARE INCONSISTENT WITH THE LIMITATIONS ON LIABILITY OR AUTHORITIES AND POWERS OF THE DIP COLLATERAL TRUSTEE, DELAWARE TRUSTEE, DIP COLLATERAL TRUST OVERSIGHT COMMITTEE, OR THE DIP COLLATERAL TRUST BENEFICIARIES SET FORTH OR REFERENCED IN THIS TRUST AGREEMENT.

13.3    Jurisdiction.  Subject to the proviso below and so long as the Chapter 11 Cases have not been closed or dismissed, the Parties agree that the Bankruptcy Court shall have jurisdiction over the DIP Collateral Trust, the Trustee and the Delaware Trustee and the DIP Collateral Trust Assets including, without limitation, the administration and activities of the DIP Collateral Trust and the Trustee and the Delaware Trustee and any disputes arising out of or related to administration of the DIP Collateral Trust to the fullest extent permitted by law.  Each Party hereby irrevocably consents to the jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision hereof or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.  Until the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision hereof will be brought only in the Bankruptcy Court; *provided*, *however*, that in the event that the Bankruptcy Court does not have jurisdiction pursuant to the foregoing provision, including after the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision hereof will be brought in either a state or federal court of competent jurisdiction in the city of Wilmington in the state of Delaware (without prejudice to the right of any Party to seek to reopen the Chapter 11 Cases to hear matters with respect to this Agreement).  Each Party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret, or construe any provision hereof.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions hereof shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

13.4    Severability.  In the event any term, provision, covenant or restriction contained in this Agreement or the application thereof to any person or circumstances shall be determined by Final Order to be invalid, void, unenforceable or against its regulatory policy, to any extent, the remainder hereof or the application of such provision to Persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision hereof shall remain in full force and effect, shall be valid and enforceable to the fullest extent permitted by law and shall in no way be affected, impaired or invalidated.

FBG_CH1_00092577

13.5 <u>Notices</u>. Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile or electronic communication, sent by nationally recognized overnight delivery service or mailed by first-class mail. The date of receipt of such notice shall be the earliest of (a) the date of actual receipt by the receiving party, (b) the date of personal delivery (or refusal upon presentation for delivery), (c) the date of the transmission confirmation or (d) three (3) Business Days after service by first-class mail, to the receiving party's below address(es):

(i)     if to the Trustee, to:

Tom A. Howley
Howley Law PLLC
700 Louisiana Street, Suite 4220
Houston, Texas 77002
Email: tom@howley-law.com

(ii)    If to the Delaware Trustee, to:

Wilmington Savings Fund Society, FSB
500 Delaware Avenue, 11th Floor
Wilmington, DE 19801
Attn: GCM/Raye Goldsborough, Patrick Healy
Email: RGoldsborough@wsfsbank.com, PHealy@wsfsbank.com

and

ArentFox Schiff, LLP
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019 United States
Attn: Jeffrey R. Gleit
Email: jeffrey.gleit@afslaw.com

(iii)   if to any Beneficiary, to the last known address of such Beneficiary according to the Trustee's records;

(iv)    if to the Debtors, to:

First Brands Group Holdings, LLC
127 Public Square, Suite 5300
Cleveland, Ohio 44114
Attn:  Charles M. Moore, Chief Executive Officer
Email:  cmoore@alvarezandmarsal.com

and

49

FBG_CH1_00092578

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Matthew S. Barr, Sunny Singh, Andriana Georgallas, Kevin Bostel,
Jason H. George
Email: matt.barr@weil.com, sunny.singh@weil.com,
andriana.georgallas@weil.com, kevin.bostel@weil.com,
jason.george@weil.com

(v)    if to a Committee Member of the DIP Collateral Trust Oversight Committee, to the applicable address(es) set forth on Exhibit B;

(vi)    if to the Ad Hoc Group Advisors, to:

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Attn: Scott J. Greenberg, Matthew J. Williams, and AnnElyse Scarlett Gains
Email: SGreenberg@gibsondunn.com, MJWilliams@gibsondunn.com,
AGains@gibsondunn.com

or to such other address as may from time to time be provided in written notice by the DIP Collateral Trust.

13.6    **Interpretation; Headings**.  The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation hereof or of any term or provision hereof.

13.7    **Plan and Confirmation Order**.  The principal purpose hereof is to aid in the implementation of the Plan and the Confirmation Order and, therefore, this Agreement incorporates the Plan and the Confirmation Order by reference and is subject to the provisions of the Plan and the Confirmation Order.  To that end, the Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan or the Confirmation Order, to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and the Confirmation Order that directly affect the interests of the DIP Collateral Trust, and to seek any orders from the Bankruptcy Court solely in furtherance hereof.  In the event of any direct conflict or inconsistency between any provision hereof, on the one hand, and the provisions of the Plan or the Confirmation Order, on the other hand, the provisions of this Agreement shall govern and control in all respects (unless stated otherwise in this Agreement or the Confirmation Order).

13.8    **Entire Agreement**.  This Agreement and the exhibits attached hereto, together with the Plan and the Confirmation Order, contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

FBG_CH1_00092579

13.9    Cumulative Rights and Remedies.   The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity, subject to any limitations provided under the Plan and the Confirmation Order.

13.10    Meanings of Other Terms.   Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities.  All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan, the Confirmation Order or provisions of the Bankruptcy Code, the Bankruptcy Rules or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions hereof and the words "herein," "hereof" or "herewith" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision hereof.  The term "including" shall mean "including, without limitation."  All references herein to specific provisions of the Plan or the Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or the Confirmation Order.  All references to the DIP Collateral Trust shall include the Trustee acting on behalf of the DIP Collateral Trust.

13.11    Successors in Interest.   This Agreement shall be binding upon and inure to the benefit of any successor in interest to any one or more of the FBG Debtors (as limited by the Plan and the Confirmation Order), that shall, upon becoming any such successor be subject to and obligated to comply with the terms and conditions hereof.  The obligations of the DIP Collateral Trust and Trustee to any one or more of the FBG Debtors pursuant to this Agreement shall also be obligations of the DIP Collateral Trust and Trustee to any such successor in interest.  For the avoidance of doubt, in the event that any Person becomes a successor in interest to a Debtor, the claims, privileges, books and records and directors, officers, employees, agents and professionals of such Person, to the extent not otherwise subject to the provisions and requirements hereof prior to such Person becoming a successor in interest to the applicable Debtor, shall not become subject to the provisions and requirements hereof solely because such Person becomes a successor in interest to the applicable Debtor.

13.12    Limitations.   Except as otherwise specifically provided in this Agreement, the Plan, or the Confirmation Order nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto any rights or remedies under or by reason hereof.  The parties hereby acknowledge and agree that nothing herein is intended to, does, or shall be construed to prejudice or harm in any way the rights, remedies or treatment (including any releases, exculpation, indemnification, or otherwise) of any Released Party or Exculpated Party, solely in their capacity as a Released Party or Exculpated Party, under the Plan.

13.13    Execution.   All funds in the DIP Collateral Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the DIP Collateral Trust Assets or the Trustee in any manner or compel payment from the DIP Collateral Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan, the Confirmation Order and this Agreement.

FBG_CH1_00092580

DEBTORS' EXHIBIT NO. 178
Page 181 of 360

13.14   <u>No Waiver</u>.   No failure or delay of any Person to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

13.15   <u>Further Assurances</u>.   From and after the Confirmation Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes hereof, and to consummate the transactions contemplated hereby.

13.16   <u>Counterparts</u>.   This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument.   A facsimile or electronic mail signature of any Party shall be considered to have the same binding legal effect as an original signature.

13.17   <u>Authority</u>.   Each Party hereby represents and warrants to the other Parties that: (i) such Party has full corporate power and authority to enter into this Agreement, to carry out its obligations hereunder and to consummate the transactions contemplated hereby; (ii) the execution and delivery by such Party hereof and the performance by such Party of its obligations hereunder have been duly authorized by all requisite corporate action on the part of such Party; (iii) this Agreement has been duly executed and delivered by such Party, and (assuming due authorization, execution and delivery by the other Parties hereto) this Agreement constitutes a legal, valid and binding obligation of such Party enforceable against such Party in accordance with its terms.

*     *     *     *     *

52

FBG_CH1_00092581

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

TOM A. HOWLEY, AS TRUSTEE OF THE
FIRST BRANDS DIP COLLATERAL TRUST

By: _____

[Signature Page to First Brands DIP Collateral Trust Agreement]

FBG_CH1_00092582

## EXHIBIT A

**Form of Certificate of Trust of First Brands DIP Collateral Trust**

FBG_CH1_00092583

### CERTIFICATE OF TRUST
### OF
### FIRST BRANDS DIP COLLATERAL TRUST

This Certificate of First Brands DIP Collateral Trust (the "Trust") has been duly executed and is being filed by the undersigned, as the trustees of the Trust, to form a statutory trust pursuant to the Delaware Statutory Trust Act (12 Del. C. §§ 3801, *et seq.*).

1.   *Name.* The name of the statutory trust formed hereby is First Brands DIP Collateral Trust.

2.   *Delaware Trustee.* The name and address of the trustee of the Trust with a principal place of business in the State of Delaware is Wilmington Savings Fund Society, FSB, [•].

3.   *Effective Date.* This Certificate of Trust shall become effective upon filing in the Office of the Secretary of State of the State of Delaware.

IN WITNESS WHEREOF, the undersigned have executed this Certificate of Trust as of [_____], 2026.

Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Delaware Trustee

By: _____
Name: Raye Goldsborough
Title: Senior Vice President, Director of Loan
          Agency Services

Tom A. Howley, not in his individual capacity but solely as Trustee

By: _____

FBG_CH1_00092584

## EXHIBIT B

**Initial Committee Members of the DIP Collateral Trust Oversight Committee**

[To be provided.]

FBG_CH1_00092585

## EXHIBIT C

### Compensation of Trustee

Compensation.  For the term of that certain DIP Collateral Trust Agreement by and among the FBG Debtors and the Trustee, dated as of the Confirmation Date, the Trustee will receive hourly compensation in an amount equal to $850.00 to be paid in arrears on the first Business Day of each proceeding month.

Expenses.  The DIP Collateral Trust will reimburse the Trustee from the DIP Collateral Trust Reserves for all actual, reasonable and documented out-of-pocket expenses incurred by the Trustee in connection with the performance of the duties of the Trustee under the Plan, the Confirmation Order or the DIP Collateral Trust Agreement, including but not limited to, actual, reasonable and documented fees and disbursements of the Trustee's legal counsel incurred in connection with the review, execution, and delivery of the DIP Collateral Trust Agreement and related documents.

FBG_CH1_00092586

**EXHIBIT D[2]**

| Topic | Term | Plan Section |
|---|---|---|
| **DIP Collateral Trust Funding Amount** | On the Confirmation Date, the DIP Collateral Trust shall be funded in the amount of $20 million (the "**DIP Collateral Cash Funding Amount**"). The DIP Collateral Cash Funding Amount shall be funded from the proceeds of any sale of assets of the FBG Debtors allocated but not yet distributed to holders of DIP A Claims on or before the Confirmation Date (the "**DIP Collateral Sale Proceeds**").<br><br>Pursuant to the Confirmation Order and Plan, the DIP Collateral Cash Funding Amount shall be withheld from and deemed contributed as follows:<br><br>1. *first*, in an amount up to the DIP Collateral Funding Amount, to be withheld from the portion of DIP Collateral Sale Proceeds that would otherwise be payable to the members of the Ad Hoc Group Steerco (the "**Primary DIP Collateral Trust Funding Contributors**") on a pro rata basis according to DIP A Claims among the Primary DIP Collateral Trust Funding Contributors; and<br>2. *second*, to the extent that the funding pursuant to the preceding clause *first* is less than the DIP Collateral Funding Amount, to be withheld from the remainder of the DIP Collateral Sale Proceeds that would otherwise be payable to non-Ad Hoc Group Steerco members (the "**Secondary DIP Collateral Trust Funding Contributors**") on a pro rata basis according to DIP A Claims among the Secondary DIP Collateral Trust Funding Contributors. | § 1.1 |
| **DIP Collateral Trust Interests** | • Class 1 DIP Collateral Trust Interests shall be granted to the Primary DIP Collateral Trust Funding Contributors and the Secondary DIP Collateral Trust Funding Contributors.<br><br>• Class 2 DIP Collateral Trust Interests shall be granted to holders of DIP A Claims; provided that no Class 2 DIP Collateral Trust Interests shall be granted to a holder of DIP A Claims that holds less than $1,000 in principal amount of DIP A Claims. | § 1.1 |
| **Application of Proceeds for DIP Collateral Trust** | Proceeds of the DIP Collateral Trust Assets, net of expenses, shall be distributed to DIP Collateral Trust Beneficiaries as follows (the "**DIP Collateral Trust Waterfall**"):<br><br>• **First**, to the Primary DIP Collateral Trust Funding Contributors, pro rata in accordance with their respective Primary DIP Collateral Trust Funding Contributions, until each Primary DIP Collateral Trust Funding Contributor has received an amount equal to the greater of (a) an internal rate of return on such Primary DIP Collateral Trust Funding Contribution equal to 20.0% and (b) a multiple on invested capital on such Primary DIP Collateral Trust Funding Contribution of 1.75x, with such returns being measured from the date of the Primary DIP Collateral Trust Funding Contributions; | § 7.4 |

---

[2] To the extent of any inconsistency between the summary of the terms of the Plan herein and the terms of the Plan, the terms of the Plan shall control.

FBG_CH1_00092587

| | | |
|---|---|---|
| | • **Second**, to the Secondary DIP Collateral Trust Funding Contributors, pro rata in accordance with their respective Secondary DIP Collateral Trust Funding Contributions, until each Secondary DIP Collateral Trust Funding Contributor has received an amount equal to the greater of (a) an internal rate of return on such Secondary DIP Collateral Trust Funding Contribution equal to 20.0% and (b) a multiple on invested capital on such Secondary DIP Collateral Trust Funding Contribution of 1.75x, with such returns being measured from the date of the Secondary DIP Collateral Trust Funding  Contributions;

• **Third**, to the holders of Class 2 DIP Collateral Trust Interests until such holders receive aggregate distributions equal to the sum of the amount of the Allowed DIP A Claims as of the Confirmation Date (excluding, for the avoidance of doubt, any reduction for the Credit Bid Claims); and

• **Fourth**, to the extent that at any time (a) aggregate distributions to holders of Class 2 DIP Collateral Trust Interests and Class 2 Litigation Trust Interests equal the amount of the Allowed DIP A Claims as of the Confirmation Date (excluding, for the avoidance of doubt, any reduction for the Credit Bid Claims) and (b) all Allowed Administrative Expense Claims (including Allowed Settled Administrative Expense Claims) have not been repaid in full from the proceeds of the Litigation Trust Assets, to holders of Allowed Administrative Expense Claims until such Allowed Claims are paid in full.

Following aggregate distributions equal to the amount of Allowed DIP A Claims as of the Confirmation Date, any residual value shall be paid as directed by the DIP Collateral Trust Oversight Committee, subject to Bankruptcy Court approval; provided that no such residual value shall be distributable to or for the benefit of the FBG Debtors.

Distributions to each class of interests shall be made pro rata.  Notwithstanding the foregoing, upon each distribution, the DIP Collateral Trustee shall have no obligation to make a distribution to a Beneficiary that would be in an amount that is either (i) less than $500 in Cash or (ii) less than the cost for the DIP Collateral Trustee to make the distribution. | |
| **DIP Collateral Trust Funding Conditions** | For the effectiveness of the Primary DIP Collateral Trust Funding Contributions and the Secondary DIP Collateral Trust Funding Contributions on the Effective Date:

  (a) The DIP Collateral Trust shall have received the DIP Collateral Cash Funding Amount from the DIP Collateral Sale Proceeds; and
  (b) The Confirmation Date shall have occurred. | |
| **Characterization** | All disbursements from the DIP Collateral Trust shall be payable solely from the net liquidation proceeds of the Collateral and shall not constitute a guaranteed payment independent of such proceeds. | |
| **Tax Treatment** | The parties intend that the DIP Collateral Trust qualify as a liquidating trust for U.S. federal income tax purposes under Treas. Reg. § 301.7701-4(d) and Rev. Proc. 94-45 and that the DIP Collateral Trust be treated as a grantor trust.  The Agent and the DIP Collateral Trustee shall administer the DIP Collateral Trust in a manner consistent with such treatment. | § 7.15 |

FBG_CH1_00092588

**DEBTORS' EXHIBIT NO. 178**
**Page 189 of 360**

## SCHEDULE I

### DIP Collateral Trust Assets[3]

The list of DIP Collateral Trust Assets is set forth below, *provided*, that (i) any asset, claim, right, or proceeds that the DIP Collateral Trust asserts constitutes a DIP Collateral Trust Asset shall be preserved for the DIP Collateral Trust pending entry of a Final Order, settlement, or other agreed resolution pursuant to Section 5(j) of the Plan; (ii) no asset, claim, right, or proceeds shall be excluded from DIP Collateral Trust Assets solely because the Litigation Trust, ABL Collateral Trust, or any other Person asserts an adverse claim thereto; (iii) in no event shall any assets that are determined by Final Order to constitute Litigation Trust Assets or ABL Collateral Trust Assets be considered DIP Collateral Trust Assets; (iv) DIP Collateral Trust Assets shall not include any assets that are determined by Final Order to be (a) property of the SPV Debtors or their Estates, any of the Factors, or any of the SPV Lenders, or (b) subject to a validly perfected first-priority Lien asserted by a Factor, the SPV Lenders, or the ABL Secured Parties; and (v) any disputes as to whether an asset is a Litigation Trust Asset, DIP Collateral Trust Asset, or ABL Collateral Trust Asset shall be resolved as provided in Section 5.2(j) of the Plan.  If an asset listed on this Schedule is determined to be the property of the Litigation Trust or the ABL Collateral Trust, it shall promptly be transferred to the corresponding trust pursuant to the terms of the Plan.  Failure to list a disputed asset on this Schedule shall not limit such disputed asset's inclusion in the DIP Collateral Trust in accordance with the Plan.

1. All real property of the FBG Debtors located at the following addresses:
    i. 281 Chatham Street South, Blenheim, Ontario, Canada
    ii. Lincoln & Jefferson Streets, Warsaw, IN, US
    iii. 1010 First Ave, Jasper, IN, US
    iv. 1093 W. First Ave., Jasper, IN, US
    v. 1055 W. First Ave, Jasper, IN, US
    vi. 310 Ellis Street, Stryker, OH, US
    vii. 1011 First Ave., Jasper, IN, US
    viii. 3302 and 3401 W 6th Street, Emporia, KS, US
    ix. [705 N. Fayette Street, Fayette, OH, US]

2. All machinery and equipment (M&E) of the FBG Debtors located at the following addresses: [4]

---

[3] Each capitalized term that is used but not defined herein has the meaning ascribed to it in the DIP Collateral Trust Agreement to which this Schedule I is attached, the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3019) (as amended, supplemented or otherwise modified from time to time, the "**Plan**"), or the Confirmation Order (as defined in the Plan), as applicable.  Certain of the DIP Collateral Trust Assets set forth herein are subject to ongoing sales that are being negotiated by the FBG Debtors and certain third parties.  To the extent such assets are sold prior to establishment of the DIP Collateral Trust, such assets shall be removed from the list set forth herein.

[4] For purposes of the M&E listed herein, the DIP Collateral Trust is receiving the FBG Debtors' interest in these assets, but the assets themselves shall remain in the Chapter 11 Estates of the FBG Debtors post-Confirmation Date.  The ongoing liquidation of these assets will proceed through the Winddown Administrator and pursuant to the terms of the Winddown Order, subject to any cost sharing and/or proceed splits as may be agreed among the parties.

FBG_CH1_00092589

    i.    14528 Bonelli Street, City of Industry, CA, USA
    ii.    59756 Market Street, South Bend, IN, USA
    iii.    310 Ellis Street, Stryker, OH, USA
    iv.    400 East Middle Street, Hanover, PA, USA
    v.    1840 McCullough Street, Lima, OH, USA
    vi.    230 East Walnut Street, Albion, IL, USA
    vii.    285 East Walnut Street, Albion, IL, USA
    viii.    329 Industrial Drive, Albion, IL, USA
    ix.    549 Illinois Route 130, Albion, IL, USA
    x.    810 Leininger Road, Fairfield, IL, USA
    xi.    1055 West 1st Avenue, Jasper, IN, USA
    xii.    1093 West 1st Avenue, Jasper, IN, USA
    xiii.    2705 Quality Lane, Brownsville, TX, USA
    xiv.    1835 Airport Exchange Boulevard, Erlanger, KY, USA
    xv.    3569 East Central Avenue, Fresno, CA, USA
    xvi.    13845 Alvarez Road, Suite 100, Jacksonville, FL, USA
    xvii.    423 Bank Street, Suite 140, Southlake, TX, USA
    xviii.    3402 West 6th Avenue, Emporia, KS, USA
    xix.    1219 Hatcher Street, Emporia, KS, USA
    xx.    6700 Paredes Line Road, Brownsville, TX, USA
    xxi.    11 East Park Drive, Fayetteville, TN 37334, USA
    xxii.    645 Trailview Court, Building 2, Units 7, 8 and 9, Waterford, WI 53185, USA
    xxiii.    1705 Billy Mitchell Boulevard, Brownsville, TX, USA
    xxiv.    2035 Rojas Drive, El Paso, TX 79936, USA
    xxv.    9581 Joe Rodriguez Drive, El Paso, TX 79927, USA
    xxvi.    1990 Billy Mitchell Boulevard, Brownsville, TX, USA
    xxvii.    615 Elca Lane, Brownsville, TX, USA
    xxviii.    2500 Courage Boulevard, Brownsville, TX, USA
    xxix.    14225 West Warren Avenue, Dearborn, MI, USA

3. All Intellectual Property[5] of the FBG Debtors in or related to the following business segments of the FBG Debtors:
    i.    Subject to the Contribution Agreement, dated December 30, 2022, by and between Alester Technologies, LLC and TAE Brakes, LLC, the "Brakes" business, consisting of the development, design, manufacture, sourcing, marketing, distribution and sale of products and services under or primarily associated with (a) brake pads and shoes, rotors, and calipers and (b) the following brand names: Centric Parts and Raybestos.
    ii.    Subject to the Contribution Agreement, dated July 3, 2023, by and between Alester Technologies, LLC and Cardone Industries, Inc., the "Cardone" business, consisting of the development, design, manufacture, remanufacture, sourcing,

---

[5] "**Intellectual Property**" means all: (a) patents and patent applications, including reissues, divisions, continuations, continuations-in-part, extensions and reexaminations; (b) copyrights, moral rights, mask work rights, database rights and design rights, including all applications, registrations, extensions, renewals and reversions of the foregoing; (c) trademarks; (d) trade Secrets; (e) internet domain names; and (f) other intellectual property rights in or to technology.

FBG_CH1_00092590

               marketing, distribution and sale of products and services under or primarily associated with (a) calipers, power boosters and steering and (b) the following brand names: Cardone.

    iii.    The "Hopkins" business, consisting of the development, design, manufacture, sourcing, marketing, distribution and sale of products and services under or primarily associated with (a) towing electronics, fluid management, winter and vehicle cleaning solutions, interior and exterior convenience accessories and functional automotive and RV accessories and (b) the following brand names: Hopkins and FloTool.

4.    Any equity interests in non-Debtor Affiliates held by the FBG Debtors, including Walbro Fuel Systems and Technology (Thailand) Co., Ltd. and Walbro Co., Ltd.

5.    All reversionary interests and/or second lien interests of the DIP Secured Parties, the First Lien Secured Parties, or the Second Lien Term Loan Secured Parties in the ABL Priority Collateral.

6.    All Ultinon Claims and Interests.

7.    Any DIP Collateral Trust SPV Recoveries and the DIP Collateral Trust Additional Payments.

8.    All other DIP Collateral (other than the Litigation Trust Assets) for which, on the date the DIP Collateral Trust is established, (x) no bona fide dispute exists as to whether the DIP Secured Parties, the First Lien Secured Parties, or the Second Lien Term Loan Secured Parties have a validly perfected Lien in such collateral, senior in lien priority to the Liens securing the ABL Claims, or (y) if such a bona fide dispute exists, it is subsequently determined by a court of competent jurisdiction pursuant to a Final Order or settlement that the DIP Secured Parties, the First Lien Secured Parties, or the Second Lien Term Loan Secured Parties have a validly perfected Lien in such collateral, senior in lien priority to the Liens securing the ABL Claims.

FBG_CH1_00092591

## SCHEDULE II

**Primary DIP Collateral Trust Funding Contributors'
Primary DIP Collateral Trust Funding Contributions**

[On file with the Trustee.]

FBG_CH1_00092592

**<u>Exhibit 7</u>**

**ABL Collateral Trust Agreement**

FBG_CH1_00092593

*Filing Version 06/23/2026*

## ABL COLLATERAL TRUST AGREEMENT

This ABL COLLATERAL TRUST AGREEMENT is made this [●] day of [●], 2026 (this "Agreement"), by and among First Brands Group, LLC, a Delaware limited liability company ("First Brands"), on behalf of itself and the other FBG Debtors, as settlors, [Bank of America N.A.], as trustee of the ABL Collateral Trust referred to herein (in such capacity, the "Trustee"), [●], [as Delaware statutory trustee] of the ABL Collateral Trust referred to herein (in such capacity, the "Delaware Trustee"), and each of the holders of ABL Collateral Trust Interests (as such terms are defined herein) and creates and establishes the trust known as the First Brands ABL Collateral Trust (the "ABL Collateral Trust") referenced herein in order to facilitate the implementation of the plan of liquidation as set forth in the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* dated [●], 2026 (as the same may be amended, supplemented, or otherwise modified from time to time in accordance with the terms and provisions thereof) (the "Plan"). Each of the FBG Debtors, the Trustee, the Delaware Trustee, and each of the holders of ABL Collateral Trust Interests may be referred to herein individually as a "Party" and, collectively, as the "Parties."

## RECITALS

WHEREAS, in September 2025, First Brands Group, LLC and its affiliated Debtors each filed a voluntary petition for relief (collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court");

WHEREAS, on [_____], 2026, the Bankruptcy Court entered its order confirming the Plan [Docket No. ____] (the "Confirmation Order");

WHEREAS, the Confirmation Date occurred today, [_____], 2026;

WHEREAS, the Plan provides, among other things, that on the Confirmation Date, or as soon thereafter as is reasonably practicable, the following shall occur automatically and without any further order of the Bankruptcy Court or any action by any FBG Debtor: (a) the creation and establishment of the ABL Collateral Trust, in accordance with Article VIII of the Plan, for the benefit of holders of interests in the ABL Collateral Trust (such interests, collectively, the "ABL Collateral Trust Interests" and such holders, collectively, the "Beneficiaries"), (b) the deemed foreclosure upon and automatic transfer to the ABL Collateral Trust of those particular assets set forth in the List of ABL Collateral Trust Assets, attached hereto as **Exhibit D** (the "ABL Collateral Trust Assets"), as well as the rights and powers of each FBG Debtor in such ABL Collateral Trust Assets, free and clear of all Liens, Claims, encumbrances and Interests (legal, beneficial or otherwise), and (c) the pursuit or liquidation of the ABL Collateral Trust Assets and the distribution of the proceeds therefrom to the Beneficiaries in each case, in accordance with the Plan, the Confirmation Order and this Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the Plan and liquidating purpose of the ABL Collateral Trust;

WHEREAS, the ABL Collateral Trust is intended to qualify as (i) a "liquidating trust" pursuant to the Internal Revenue Code of 1986, as amended (the "IRC") and the regulations promulgated thereunder ("Treasury Regulations"), including Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or another business, except to the extent reasonably necessary to, and consistent with, the purpose of the

FBG_CH1_00092594

ABL Collateral Trust and (ii) as a "grantor trust" for U.S. federal income tax purposes, pursuant to sections 671-677 of the IRC and the Treasury Regulations promulgated thereunder;

WHEREAS, pursuant to the Plan, the Debtors, the ABL Collateral Trust, the Trustee, and the Beneficiaries shall treat, for all U.S. federal and applicable state and local income tax purposes, the transfer of the ABL Collateral Trust Assets to the ABL Collateral Trust as (A) a first step transfer of the ABL Collateral Trust Assets by the Debtors to the Beneficiaries (as defined for this purpose in Section 10.1 below) in satisfaction of their Allowed Claims under the Plan, followed by (B) a second step transfer of the ABL Collateral Trust Assets by the Beneficiaries to the ABL Collateral Trust in exchange for their respective ABL Collateral Trust Interests, and to treat the Beneficiaries as the grantors and owners of their respective share of the ABL Collateral Trust Assets for federal income tax purposes to the extent permitted by applicable law for state and local income tax purposes;

WHEREAS, the ABL Collateral Trust shall not be deemed a successor in interest of the FBG Debtors for any purpose other than as specifically set forth in the Plan, the Confirmation Order or this Agreement, and upon the transfer by the FBG Debtors of the ABL Collateral Trust Assets to the ABL Collateral Trust, the FBG Debtors will not have a reversionary or further interest in or with respect to the ABL Collateral Trust Assets or the ABL Collateral Trust; and

WHEREAS, the Trustee shall have all powers necessary to implement the provisions hereof and administer the ABL Collateral Trust as provided herein and in accordance with the Plan and Confirmation Order.

NOW, THEREFORE, pursuant to and in accordance with the Plan and the Confirmation Order, in consideration of the promises, the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree and declare as follows:

## ARTICLE I
## DEFINITIONS

For all purposes hereof, capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

## ARTICLE II
## ESTABLISHMENT OF THE ABL COLLATERAL TRUST

2.1     Establishment of the ABL Collateral Trust and Appointment of the Trustee[, and the Delaware Trustee].

(a)     There is hereby created, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, the ABL Collateral Trust for the benefit of the Beneficiaries, which shall be known as the "First Brands ABL Collateral Trust," on the terms set forth herein.  It is the intention of the Parties hereto that the ABL Collateral Trust created hereby constitute a statutory trust under Chapter 38 of Title 12 of the Delaware Code, 12 Del. C. § 3801 et seq. (the "Delaware Act") and that this Agreement constitutes the governing instrument of the ABL Collateral Trust.  The Trustee [and the Delaware Trustee are] hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as Exhibit A.

2

FBG_CH1_00092595

(b)     [ ] is hereby appointed as the initial Trustee effective as of the Confirmation Date. [ ] accepts its appointment as Trustee of the ABL Collateral Trust and shall perform all duties and obligations imposed upon the Trustee under the Plan, this Agreement, and applicable orders of the Bankruptcy Court. The initial ABL Collateral Trustee shall be selected and appointed by the ABL Agent, and the ABL Agent shall have the sole right to remove and replace the Trustee.

(c)     [Reserved.]

(d)     The Trustee agrees to manage the ABL Collateral Trust, the assets of which will be held by the ABL Collateral Trust, subject to the provisions of the Plan, the Confirmation Order and this Agreement.

(e)     Each Trustee serving from time to time hereunder shall have all the rights, powers, and duties as set forth herein. Each Trustee shall be a "United States person" as such term is defined in section 7701(a)(30) of the IRC. The Trustee [and the Delaware Trustee] may serve without bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

(f)     [Delaware Trustee.]

(i)     [ ], [ ] is hereby appointed as the initial Delaware Trustee effective as of the Confirmation Date.

(ii)     There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Delaware Act. The Delaware Trustee shall either be (A) a natural person who is at least twenty-one (21) years of age and a resident of the State of Delaware or (B) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law to be eligible to serve as the Delaware Trustee, and shall act through one or more persons authorized to bind such entity. If at any time the then-serving Delaware Trustee shall cease to be eligible to serve as Delaware Trustee in accordance with the provisions of this Section 2.1(f), the Delaware Trustee shall resign immediately in the manner and with the effect hereinafter specified in Section 2.1(f)(iv) below. For the avoidance of doubt, the Delaware Trustee will only have such rights, duties, and obligations as expressly provided by reference to the Delaware Trustee hereunder. The Trustee shall have no liability for the acts or omissions of any Delaware Trustee. Each Delaware Trustee shall be a "United States person" as such term is defined in section 7701(a)(30) of the IRC.

(iii)     The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Trustee set forth herein. The Delaware Trustee shall be a trustee of the ABL Collateral Trust for the sole and limited purpose of fulfilling the requirements of section 3807(a) of the Delaware Act and for taking such actions as are required to be taken by a Delaware Trustee under the Delaware Act. The duties, liabilities, and obligations of the Delaware Trustee shall be limited to accepting legal process served on the ABL Collateral Trust in the State of Delaware and the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee

3

FBG_CH1_00092596

is required to execute under section 3811 of the Delaware Act. There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating to the ABL Collateral Trust, the Trustee, or the Beneficiaries, such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Agreement. The Delaware Trustee shall have no liability for the acts or omissions of any Trustee or any other Person. Any permissive rights of the Delaware Trustee to do things enumerated in this Agreement shall not be construed as a duty, and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable for other than its willful misconduct, gross negligence, or fraud as found by a Final Order. The Delaware Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Agreement at the request or direction of the Trustee or any other Person pursuant to the provisions of this Agreement unless the Trustee or such other Person shall have offered to the Delaware Trustee security or indemnity (satisfactory to the Delaware Trustee in its reasonable discretion) against the costs, expenses, and liabilities that may be incurred by it in compliance with such request or direction. The Delaware Trustee shall be entitled to request and receive written instructions from the Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Trustee, except those acts found by a Final Order to be arising out of the Delaware Trustee's willful misconduct, gross negligence, or fraud. The Delaware Trustee may, at the expense of the ABL Collateral Trust, request, rely on, and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel.

(iv)     The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of Section 2.1(f)(v) below. The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee; *provided* that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed in accordance with Section 2.1(f)(v) below. If the Trustee does not act within such sixty (60)-day period, the Delaware Trustee, at the expense of the ABL Collateral Trust, may apply to the Court of Chancery of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(v)     Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of section 3807 of the Delaware Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee. Following compliance with the preceding

4

FBG_CH1_00092597

sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties, and obligations of the outgoing Delaware Trustee under this Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of all duties and obligations under this Agreement. The successor Delaware Trustee shall make any related filings required under the Delaware Act, including filing a Certificate of Amendment to the Certificate of Trust of the ABL Collateral Trust in accordance with section 3810 of the Delaware Act.

(vi)     Notwithstanding anything herein to the contrary, the Delaware Trustee shall be entitled to retain counsel or advisors reasonably necessary in connection with the Delaware Trustee's rights and obligations under this Agreement, which counsel and advisors' fees and expenses shall be payable by the ABL Collateral Trust.

(vii)     Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion, or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

(viii)     The Delaware Trustee shall be entitled to compensation for its services as agreed pursuant to a separate fee agreement between the ABL Collateral Trust and the Delaware Trustee, which compensation shall be paid by the ABL Collateral Trust in accordance with the terms hereof. Such compensation is intended for the Delaware Trustee's services as contemplated by this Agreement. The terms of this paragraph shall survive termination of this Agreement and/or the earlier resignation or removal of the Delaware Trustee.

(ix)     The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document other than this Agreement, whether or not an original or a copy of such agreement has been provided to the Delaware Trustee. The Delaware Trustee shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument, or document other than this Agreement. Delivery of reports, information, and documents to the Delaware Trustee is for informational purposes only and the Delaware Trustee's receipt of the foregoing shall not constitute constructive notice of any information contained therein or determinable from information contained therein. The Delaware Trustee may rely on the accuracy of any document delivered to it and shall have no responsibility to verify the accuracy of it or be required to calculate or verify any numerical information in it. Neither the Delaware Trustee nor any of its directors, officers, employees, agents, or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the ABL Collateral Trust, the Trustee, or any other Person, or any of their directors, members, officers, agents, affiliates, or employees, nor shall it have any liability in connection with the malfeasance or nonfeasance of any of the foregoing. The Delaware Trustee may assume performance by all

5

FBG_CH1_00092598

such Persons of their respective obligations. The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other Person. The Delaware Trustee shall have no responsibilities (except as expressly set forth herein) as to the validity, sufficiency, value, genuineness, ownership, or transferability of any ABL Collateral Trust Assets, written instructions, or any other documents in connection therewith, and will not be regarded as making, nor be required to make, any representations thereto.

(x)  The Delaware Trustee is hereby authorized to take such action as the Trustee specifically directs in written instructions delivered to the Delaware Trustee and shall have no liability for acting in accordance therewith, except those acts found by a Final Order to be arising out of the Delaware Trustee's willful misconduct, gross negligence, or fraud.

(xi)  Notwithstanding anything herein to the contrary, the Delaware Trustee shall not be required to take any action that is in violation of applicable law.

(g)  Subject to the terms hereof, any action by the Trustee [and/or the Delaware Trustee] that affects the interests of more than one Beneficiary shall be binding and conclusive on all Beneficiaries even if such Beneficiaries have different or conflicting interests.

(h)  None of the Debtors is or shall be deemed a fiduciary or agent of the ABL Collateral Trust, and such parties owe no duties or obligations to the ABL Collateral Trust or to the Beneficiaries except as are expressly set forth in the Plan, the Confirmation Order, this Agreement or other future written agreements between such Persons and the ABL Collateral Trust.

(i)  [Reserved.]

2.2  Distribution and Reserve of ABL Collateral Trust Assets. Following the transfer of the ABL Collateral Trust Assets to the ABL Collateral Trust, the ABL Collateral Trust shall make continuing efforts to collect, liquidate, and distribute all ABL Collateral Trust Assets, subject to the reserves deemed necessary by the ABL Collateral Trust pursuant to this Agreement, in accordance with the Plan and the Confirmation Order.

2.3  Retention of Counsel and Other Professionals and Employees.

(a)  Counsel and Other Professionals.

(i)  Except as otherwise provided in the Plan, the Confirmation Order or this Agreement, the ABL Collateral Trust may, but shall not be required to, retain such ABL Collateral Trust Professionals as the Trustee deems necessary and on whatever reasonable and/or customary fee arrangements the Trustee deems appropriate, including contingency fee arrangements (without application to or order of the Bankruptcy Court). The Trustee may cause the ABL Collateral Trust to pay the reasonable and documented salaries, fees and expenses of such Persons out of the ABL Collateral Trust Reserve in the ordinary course of business and neither the Trustee nor any Beneficiary shall have any liability or obligation for any fees or expenses of any such

6

FBG_CH1_00092599

professional.  For the avoidance of doubt, prior retention in any capacity in the Debtors' bankruptcy cases on behalf of the Debtors, their estates, or any creditors shall not preclude the ABL Collateral Trust's or Trustee's retention of such professionals, consultants, or other persons.  For the avoidance of doubt, any advisor or professional hired, requested, and/or directed by the Trustee to litigate or otherwise take actions in furtherance of the preservation of ABL Collateral Trust Assets and/or any Allowed ABL Claims shall be directed, paid, and funded by the ABL Collateral Trust.

(ii)    ABL Collateral Trust Professionals shall be required to submit reasonably detailed invoices on a monthly basis to the Trustee, including in such invoices a description of the work performed, who performed such work, and if billing on an hourly basis, the hourly rate of each such person, plus an itemized statement of expenses.  The ABL Collateral Trust may pay those invoices [fourteen (14) calendar] days after a copy of such invoices is provided to the Trustee, without Bankruptcy Court approval, unless the Trustee objects.  If there is a dispute as to a part of an invoice, the ABL Collateral Trust shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount.

(b)    Employees or Consultants.

(i)    Except as otherwise provided in the Plan, the Confirmation Order or this Agreement, the ABL Collateral Trust may, but shall not be required to, hire or employ any individual as the Trustee deems necessary to aid it in fulfilling its obligations under this Agreement and the Plan, and on whatever reasonable and/or customary fee arrangements the Trustee deems appropriate, including consulting arrangements (without application to or order of the Bankruptcy Court).  The ABL Collateral Trust may pay the reasonable and documented salaries, fees and expenses of such Persons out of the ABL Collateral Trust Reserve in the ordinary course of business and neither the Trustee nor any Beneficiary shall have any liability or obligation for any fees or expenses of any such individual.  For the avoidance of doubt, prior employment in any capacity in the Debtors' bankruptcy cases on behalf of the Debtors, their estates, or any creditors shall not preclude the ABL Collateral Trust's retention of such professionals, consultants, or other persons.

(ii)    Any such individual hired, employed, or retained by the ABL Collateral Trust shall be required to submit to the Trustee periodic invoices containing information with sufficient detail to assess the reasonableness of the fees and/or charges. The ABL Collateral Trust may pay those invoices [fourteen (14) calendar] days after a copy of such invoices is provided to the Trustee, without Bankruptcy Court approval, unless the Trustee objects.  If there is a dispute as to a part of an invoice, the ABL Collateral Trust shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount.

(c)    Reserves; Pooling of Reserved Funds.  Subject to Article VIII hereof, before any distribution of ABL Collateral Trust Proceeds can be made, the ABL Collateral Trust shall, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all expenses and liabilities of the ABL Collateral Trust,

FBG_CH1_00092600

including attorneys' fees and expenses, and the fees and expenses of other professionals. In accordance with the Plan and the Confirmation Order, the ABL Collateral Trust shall also maintain the ABL Collateral Trust Reserves described at Article VIII hereof. The ABL Collateral Trust need not maintain any of the ABL Collateral Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the ABL Collateral Trust; *provided, however*, that the ABL Collateral Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

(d)     Distributions Net of Reserves and Costs.     Distributions of ABL Collateral Trust Proceeds shall be made net of reserves in accordance with the Plan, the Confirmation Order and this Agreement, including any reserves necessary to pay the expenses and liabilities of the ABL Collateral Trust, and also net of the actual and reasonable costs of making such distributions.

2.4     Transfer of the ABL Collateral Trust Assets.

(a)     Pursuant to the Plan, on the Confirmation Date, or as soon thereafter as reasonably practicable, and in connection with the foreclosure of the ABL Collateral Trust Assets by the ABL Collateral Trust, the FBG Debtors shall be deemed to have, without any further action, automatically and irrevocably granted, released, transferred, conveyed, assigned and delivered, and (except as provided for U.S. federal, state, and local income tax purposes4.1(f)4.1(i)Article X) automatically vested in the ABL Collateral Trust its remaining interests in the ABL Collateral Trust Assets, and all such assets shall be deemed to have vested in the ABL Collateral Trust (without recourse and free and clear of all Liens, Claims, encumbrances and Interests (legal, equitable, beneficial, or otherwise)) on the Confirmation Date, to be administered by the Trustee, in accordance with the Plan, including, without limitation, (i) assets held or controlled by third parties and (ii) any and all attorney-client privileges, work-product privileges, accountant-client privileges and any other evidentiary privileges or immunity in respect of the ABL Collateral Trust Assets and this Agreement. The Trustee shall have the authority to create additional sub-accounts in trust accounts and sub-trusts within the ABL Collateral Trust, which may have a separate legal existence, but which shall be considered sub-accounts or sub-trusts of the ABL Collateral Trust. Upon the transfer of the ABL Collateral Trust Assets to the ABL Collateral Trust, the Debtors shall have no interest in the ABL Collateral Trust Assets or the ABL Collateral Trust. Upon delivery of the ABL Collateral Trust Assets to the ABL Collateral Trust, the FBG Debtors and their predecessors, successors and assigns, shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the ABL Collateral Trust Assets or the ABL Collateral Trust. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, *the transfer of the ABL Collateral Trust Assets to the ABL Collateral Trust shall not affect the mutuality of obligations* that otherwise may have existed prior to the effectuation of such transfer. In connection with the transfer of such assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any claims or causes of action for purposes that are consistent with the releases under the Plan, documents, or communications (whether written or oral) transferred to the ABL Collateral Trust, shall vest in the ABL Collateral Trust and its representatives, and the Trustee is directed to take all necessary actions to effectuate the transfer of such privileges. The ABL Collateral Trust shall not attempt to use the Transferred Privileges for purposes that are inconsistent with the Plan, including, but not limited to, pursuing any claims or causes of action

8

FBG_CH1_00092601

against Released Parties.[1] The FBG Debtors shall have no claim to, right, or interest in, whether direct, residual, contingent or otherwise. The Trustee shall agree to accept and hold the ABL Collateral Trust Assets, including, for the avoidance of doubt, any amounts or proceeds realized on account of any ABL Deficiency Claims, in the ABL Collateral Trust for the benefit of the Beneficiaries, subject to the terms of the Plan and this Agreement.

(b)       The ABL Collateral Trust shall be authorized, among other things, to obtain possession or control of, liquidate, and collect all of the ABL Collateral Trust Assets in the possession or control of third parties, and assert and/or exercise all rights of setoff and recoupment and defenses of the FBG Debtors or their estates that may be asserted in connection with ABL Collateral Trust Assets. On the Confirmation Date, the ABL Collateral Trust shall be substituted for the FBG Debtors for all purposes with respect to the ABL Collateral Trust Assets, and administration and reconciliation of any claims or causes of action. To the extent any law or regulation prohibits the transfer of ownership of any of the ABL Collateral Trust Assets from the FBG Debtors to the ABL Collateral Trust and such law is not superseded by the Bankruptcy Code, the ABL Collateral Trust's interest shall be a Lien upon and security interest in such ABL Collateral Trust Assets, in trust, nevertheless, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages. The ABL Collateral Trust hereby accepts all of such property as ABL Collateral Trust Assets, to be held in trust for the Beneficiaries, subject to the terms hereof, and the Plan and the Confirmation Order.

(c)       From and after the Confirmation Date, the FBG Debtors shall provide access to copies of all of the FBG Debtors' records and information relating to the ABL Collateral Trust Assets, including electronic records or documents and including non-privileged and privileged communications, copies of which shall be provided or made available (including by providing access to) to the Trustee and the ABL Collateral Trust's advisors upon reasonable written request, in each case, to the extent within their possession or control and in compliance with applicable law. For the avoidance of doubt, the failure of the Parties to enter into a formal written common interest agreement shall not operate to waive any common legal interests that exist among the Parties or otherwise constitute a breach hereof.

(d)       Cooperation Provisions.

(i)       As promptly as possible after the Confirmation Date, but in any event no later than thirty (30) days after the Confirmation Date, the FBG Debtors and any Person under their control shall execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) in respect of the ABL Collateral Trust Assets, and take or cause to be taken such further action as the ABL Collateral Trust may reasonably deem necessary or appropriate, to evidence or effectuate the transfer of the ABL Collateral Trust Assets of the Debtors to the ABL Collateral Trust and vest or perfect in the ABL Collateral Trust or confirm to the ABL Collateral Trust title to and possession of the ABL Collateral Trust Assets.

(ii)      The FBG Debtors and any Person under their control shall as promptly as possible after the Confirmation Date, but in any event no later than thirty (30) days after the Confirmation Date, transfer or make readily available

_____

[1] "**Released Parties**" shall have the meaning set forth in the Plan.

9

FBG_CH1_00092602

to the ABL Collateral Trust and its advisors (including by providing access to) all records, documents, information, and work product in respect of the ABL Collateral Trust Assets (including all electronic records, documents, information and work product) in the possession of the FBG Debtors and any Person under their control.

(iii)    The FBG Debtors and any Person under their control shall reasonably cooperate with reasonable requests of the ABL Collateral Trust (including, with respect to requests for telephone conferences, interviews, and appearances of directors, officers, employees, agents and professionals as witnesses (by affidavits, at depositions, and at hearings/trials, as necessary)), in each case in order to permit the ABL Collateral Trust to liquidate all ABL Collateral Trust Assets.

(e)    Subject to Section 8.1, all of the proceeds received by the ABL Collateral Trust from the pursuit of any claims shall be added to the ABL Collateral Trust Assets and held as a part thereof (and title thereto shall be vested in the ABL Collateral Trust).

(f)    The Wind Down Administrator shall administer the Factored Receivables Account and prosecute the Debtors' interests in the funds on deposit in the Factored Receivables Account in accordance with the Plan, at the ABL Collateral Trust's sole cost and expense.  The ABL Agent shall have the right to direct the Wind Down Administrator with respect to the prosecution of the FBG Debtors' interests in the Factored Receivables Account, and the ABL Agent's prior written consent shall be required for any settlement, compromise, or other disposition of such interests.

(g)    As soon as reasonably practicable following the Confirmation Date, the SPV-ABL Wind Down Account shall be transferred to the ABL Collateral Trust and the ABL Collateral Trust shall assume the obligations for administering such account in accordance with the Wind Down Order.

(h)    For all U.S. federal, state and local income tax purposes, all parties (including, without limitation, the Debtors, the ABL Collateral Trust, the Trustee and the Beneficiaries) shall treat the transfer of the ABL Collateral Trust Assets to the ABL Collateral Trust in accordance with Section 10.1 hereof.

(i)    Such transfers pursuant to the Plan shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to and to the maximum extent permitted under section 1146(a) of the Bankruptcy Code.

(j)    The ABL Collateral Trust shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan or the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

(k)    Costs of Cooperation.  All reasonable and documented costs, fees, and expenses incurred by the FBG Debtors or any Person under their control in connection with the cooperation, record production, transfer, assignment or other obligations requested by the ABL Collateral Trust and/or under this Agreement, shall be paid in advance by the ABL Collateral Trust and shall constitute ABL Collateral Trust Expenses.

10

FBG_CH1_00092603

2.5     Payment of Fees and Expenses.  Following the establishment of the ABL Collateral Trust, and in accordance with this Agreement and subject to the terms of Section 5.6 hereof, the ABL Collateral Trust may incur reasonable and necessary expenses in connection with the performance of its obligations under the Plan, the Confirmation Order and this Agreement, including fees and expenses incurred to monetize the ABL Collateral Trust Assets by retaining attorneys, financial advisors, accountants, appraisers, disbursing agents and other agents, independent contractors, professionals, consultants, advisors and third parties to aid it in fulfilling its obligations under this Agreement and the Plan (the "ABL Collateral Trust Professionals"), in each case without any further notice to any party or action, order or approval of the Bankruptcy Court. All reasonable, documented, out-of-pocket fees, expenses, and costs of the ABL Collateral Trust shall be paid from the ABL Collateral Trust Reserves in the ordinary course of business, and shall solely be the obligation of, the ABL Collateral Trust. Except as contemplated by the Plan, the Beneficiaries shall have no obligation to provide any funding with respect to the ABL Collateral Trust.

2.6     Title to the ABL Collateral Trust Assets.  The transfer of the ABL Collateral Trust Assets to the ABL Collateral Trust pursuant to Section 2.4 hereof is being made for the sole benefit, and on behalf, of the Beneficiaries.  Upon the transfer of the ABL Collateral Trust Assets to the ABL Collateral Trust, the ABL Collateral Trust shall succeed to all of the FBG Debtors' and the Beneficiaries' rights, title and interest in the ABL Collateral Trust Assets and no other Person shall have any interest, legal, beneficial or otherwise, in the ABL Collateral Trust or the ABL Collateral Trust Assets upon the assignment and transfer of such assets to the ABL Collateral Trust.

2.7     Nature and Purpose of the ABL Collateral Trust.

(a)     Purpose.  The ABL Collateral Trust is organized and established as a statutory trust under the Delaware Act, and the Trustee, subject to the terms and conditions hereof, shall implement the Plan with respect to all FBG Debtors on behalf, and for the benefit, of the Beneficiaries.  The ABL Collateral Trust shall liquidate and administer the ABL Collateral Trust Assets and perform such other duties as set forth in this Agreement, the Plan and in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or any other business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the ABL Collateral Trust and otherwise in compliance with the ruling guidelines set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.

(b)     Relationship.  The ABL Collateral Trust is not intended to be, and shall not be deemed to be, or be treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Trustee, [the Delaware Trustee,] or the Beneficiaries for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The Beneficiaries are solely the beneficial owners of the ABL Collateral Trust, and their rights shall be limited solely to those conferred upon them by the Plan, the Confirmation Order and this Agreement. Notwithstanding the foregoing, in the event of a final determination under section 1313(a) of the IRC that the ABL Collateral Trust does not qualify as a grantor trust, the ABL Collateral Trust is intended to be treated as a partnership for U.S. federal income tax purposes, and the Beneficiaries and the ABL Collateral Trust will take all actions reasonably necessary to cause the ABL Collateral Trust to be treated as such.

11

FBG_CH1_00092604

(c)    Capacity of Trust.    The ABL Collateral Trust, on behalf of the FBG Debtors, may execute any and all documents and instruments necessary to effectuate the purposes of the ABL Collateral Trust to the extent permissible under section 1123(b)(3)(B) of the Bankruptcy Code and under the Plan and the Confirmation Order.  Notwithstanding any state or federal law to the contrary or anything herein, the ABL Collateral Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The ABL Collateral Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

(d)    Fiduciary and Other Duties.    Notwithstanding anything in the Plan, the Confirmation Order or this Agreement to the contrary, the Trustee shall always act consistently with, and not contrary to, the purpose of the ABL Collateral Trust as set forth in the Plan and the Confirmation Order.  Except for obligations expressly imposed on the Trustee by this Agreement, to the extent that, at law or in equity, the Trustee has duties (including fiduciary duties) to the Beneficiaries or to any other person that is a Party to or is otherwise bound by this Agreement, such duties are hereby eliminated by this Agreement to the fullest extent permitted by applicable law; *provided*, that this Agreement does not eliminate the implied contractual covenant of good faith and fair dealing.

(e)    No Waiver of Claims.    In accordance with section 1123(b)(3) of the Bankruptcy Code and subject to the terms and conditions of the Plan, the ABL Collateral Trust may enforce all rights to commence and pursue, as appropriate, any and all claims related to or involving the ABL Collateral Trust or ABL Collateral Trust Assets after the Confirmation Date, including the ABL Reserved Claims.  No Person or Entity may rely on the absence of a specific reference in the Plan to any claim against it as any indication that the ABL Collateral Trust will not pursue any and all such claims against such Person or Entity; *provided*, *however*, that the ABL Collateral Trust shall not commence or prosecute any claims released under Article XIII of the Plan against any Released Party.  The Trustee expressly reserves all claims and causes of action for later adjudication, resolution, abandonment, settlement, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to such claims and causes of action upon, after or as a consequence of the Plan.

(f)    No Retention of Excess Cash.    Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the ABL Collateral Trust retain cash or cash equivalents in excess of a reasonable amount to meet claims, expenses, and contingent liabilities, to maintain the value of the ABL Collateral Trust Assets during administration of the ABL Collateral Trust, or to fund the reserves established in accordance with the Plan and/or pursuant to this Agreement, and shall distribute all amounts not required to be retained for such purposes to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan, the Confirmation Order and this Agreement.

2.8    [Appointment as Representative.    Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the ABL Collateral Trust shall be the duly appointed representative of the FBG Debtors' estates for certain limited purposes and, as such, to the extent provided herein, the ABL Collateral Trust succeeds to the rights and powers of a trustee in bankruptcy solely with respect to prosecution, resolution and settlement of any claims or causes of action that are ABL Collateral Trust Assets or relate to the ABL Collateral Trust or ABL Collateral Trust Assets (the "Trust Claims").  To the extent that any right to prosecute, settle or dispose of a

12

FBG_CH1_00092605

Trust Claim cannot be transferred to the ABL Collateral Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Trust Claims and rights shall be deemed to have been retained by the FBG Debtors (other than for tax purposes) and the ABL Collateral Trust shall be deemed to have been designated as a representative of the FBG Debtors to the extent provided herein pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely to enforce and pursue such Trust Claims on behalf of the FBG Debtors for the benefit of the Beneficiaries or settle or otherwise dispose of such Trust Claims.  For the avoidance of doubt, any claims subject to this Section 2.8 shall be treated by the Parties for U.S. federal, state and local income tax purposes as a disposition of such claims by the FBG Debtors as described in Section 2.24 or Section 10.1 (as applicable) herein.  All costs and expenses of pursuing any Trust Claims shall be satisfied from the ABL Collateral Trust Assets.]

2.9    Valuation of the ABL Collateral Trust Assets.   As soon as reasonably practicable following the establishment of the ABL Collateral Trust, the Trustee shall make a good-faith determination of the fair market value of the ABL Collateral Trust Assets (on an asset-by-asset basis) as of the date the ABL Collateral Trust is established.  The Trustee shall provide all parties with such valuation as relevant from time to time for U.S. federal income, and applicable state and local, tax purposes.  The valuation shall be used consistently by all parties for all U.S. federal, and applicable state and local income tax purposes.  In connection with the preparation of any valuation contemplated hereby, the ABL Collateral Trust shall be entitled to retain such ABL Collateral Trust Professionals as the Trustee shall determine to be appropriate or necessary in accordance with the terms hereof, and the Trustee shall take or cause the ABL Collateral Trust to take such other actions in connection therewith as it determines to be appropriate or necessary.  The ABL Collateral Trust shall bear all of the reasonable and documented costs and expenses incurred in connection with determining such value, including the fees and expenses of any ABL Collateral Trust Professionals retained in connection therewith.

2.10    No Bond Required; Procurement of Insurance.  Notwithstanding any state or other applicable law to the contrary, the ABL Collateral Trust, the Trustee, [the Delaware Trustee,] and their respective agents shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The ABL Collateral Trust is hereby authorized, but not required, to obtain all reasonable insurance coverage for itself, the Trustee, [the Delaware Trustee,] and their respective agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the ABL Collateral Trust and its agents, representatives, employees, or independent contractors under this Agreement.  The cost of any such insurance coverage shall be an expense of the ABL Collateral Trust and paid out of ABL Collateral Trust Reserves as an expense of the ABL Collateral Trust paid in furtherance of the purposes of the ABL Collateral Trust as set forth in the Plan, the Confirmation Order and this Agreement (an "ABL Collateral Trust Expense").

**ARTICLE III**
**ABL COLLATERAL TRUST INTERESTS**

3.1    ABL Collateral Trust Interests.  On the date hereof, the ABL Collateral Trust shall issue the ABL Collateral Trust Interests to the Beneficiaries in accordance with the terms of the Plan, the Confirmation Order and this Agreement.  The Beneficiaries, on account of the ABL Collateral Trust Interests held, shall be entitled to distributions from the ABL Collateral

13

FBG_CH1_00092606

Trust in accordance with the terms of the Plan, the Confirmation Order and this Agreement. The ABL Collateral Trust Interests will be represented by book entries on the books and records of the ABL Collateral Trust. The ABL Collateral Trust will not issue any certificate, security or receipt to evidence any beneficial interests in the ABL Collateral Trust.

(a)     As of the Confirmation Date, the ABL Collateral Trust shall be authorized to issue ABL Collateral Trust Interests to holders of Allowed ABL Claims. Each holder of an Allowed ABL Claim shall receive, on account of its Allowed ABL Claim, its Pro Rata Share of the ABL Collateral Trust Interests.

(b)     [Reserved.]

(c)     [Reserved.]

(d)     Notwithstanding anything in the Plan or herein to the contrary, no fractional interests of ABL Collateral Trust Interests shall be issued, and no Cash shall be distributed in lieu of such fractional amounts. If any issuance or distribution on account of an Allowed Claim would otherwise result in the issuance of a number of interests of ABL Collateral Trust Interests that is not a whole number, the actual distribution of shares of ABL Collateral Trust Interests shall be rounded as follows: (i) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (ii) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefore. The total number of authorized interests of ABL Collateral Trust Interests shall be adjusted as necessary to account for the foregoing rounding.

3.2     ABL Collateral Trust Waterfall. ABL Collateral Trust Proceeds, net of fees, costs, or other expenses pursuant to the terms of this Agreement, shall be distributed to ABL Collateral Trust Beneficiaries pursuant to the ABL Collateral Trust Waterfall specified in the Plan (and excerpted for convenience below):

(a)     *First*, one hundred percent (100%) of such proceeds shall be distributed to the ABL Collateral Trust Beneficiaries in accordance with the waterfall under the ABL Credit Agreement until aggregate distributions equal the Allowed amount of the ABL Claims; and

(b)     *Second*, any proceeds of the ABL Collateral Trust Assets in excess of the Allowed amount of the ABL Claims shall be deemed to be DIP Collateral Trust Assets and shall be turned over to the DIP Collateral Trust and distributed in accordance with the Plan.

(c)     Distributions to holders of ABL Collateral Trust Interests shall be paid in accordance with the ABL Credit Agreement.

(d)     [Reserved.]

3.3     Interests Beneficial Only. The ownership of ABL Collateral Trust Interests shall not entitle the Beneficiaries to any title in or to the ABL Collateral Trust Assets as such (which title shall be vested in the ABL Collateral Trust) or to any right to call for a partition or division of the ABL Collateral Trust Assets. No Beneficiary shall have any fiduciary, governance right, or other right to direct ABL Collateral Trust activities in their capacity as a Beneficiary. Nothing herein shall impair the right of any Person under the Plan, the Confirmation Order or this Agreement. Except as set forth in Section 5.11, neither the

14

FBG_CH1_00092607

Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the ABL Collateral Trust, and the ABL Collateral Trust shall not be obligated to provide any accounting to any Person.  Nothing in this Agreement is intended to require the ABL Collateral Trust at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the ABL Collateral Trust or as a condition for making any advance, payment, or distribution of the ABL Collateral Trust Proceeds or out of any other proceeds of ABL Collateral Trust Assets.

3.4    Transferability of ABL Collateral Trust Interests.

(a)    The ABL Collateral Trust Interests shall be non-certificated, non-transferable and non-assignable except by will, intestate succession, or operation of law.  Any purported transfer of ABL Collateral Trust Interests in violation of this Section 3.4 shall be null and void ab initio and of no force or effect whatsoever, and the Trustee shall not register or otherwise recognize any such purported transfer on the books and records of the Trust.  Each Beneficiary, by accepting an ABL Collateral Trust Interest, shall be deemed to have acknowledged and agreed to the transfer restrictions set forth in this Section 3.4. Notwithstanding anything herein to the contrary, no transfer of ABL Collateral Trust Interests under this Section 3.4 by will, intestate succession or operation of law shall be effective unless and until the transferee executes and delivers to the Trustee a written instrument, in form and substance reasonably satisfactory to the Trustee, pursuant to which such transferee assumes all obligations of the transferring Beneficiary with respect to such ABL Collateral Trust Interests and agrees to be bound by all terms and conditions of this Agreement.

(b)    Notwithstanding Section 3.4(a), a holder of an Allowed ABL Claim may transfer all or any portion of its ABL Collateral Trust Interest to another holder of an Allowed ABL Claim with the prior written consent of the ABL Agent.

3.5    Registry of Beneficial Interests.  The Trustee or the ABL Agent shall cause to be kept a registry of the Beneficiaries (the "Trust Register") for the purpose of recording ownership of the ABL Collateral Trust Interests as herein provided, which shall be maintained pursuant to such reasonable regulations as the Trustee or the ABL Agent, as applicable, may prescribe.  References herein to the "Registrar" shall mean the Trustee or the ABL Agent, as applicable.

3.6    Exemption from Registration.  The Parties hereto intend that the rights of the Beneficiaries arising under this ABL Collateral Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If such rights constitute securities, the Parties hereto intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws to apply to the issuance of the ABL Collateral Trust Interests to the Beneficiaries under the Plan.  The Trustee may amend this Agreement in accordance with Article XI hereof to make such changes as are deemed necessary or appropriate, with the advice of counsel, to ensure that the ABL Collateral Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA or the Investment Company Act.  Except as provided in 02.4(d) and Article VI, the ABL Collateral Trust Interests shall not have consent or voting rights or otherwise confer on the Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken by the Trustee in connection with the ABL Collateral Trust.  Subject to Section 3.4 hereof, neither the ABL Agent nor the Trustee

15

FBG_CH1_00092608

shall take any action to establish or support the establishment of an active trading market with respect to the ABL Collateral Trust Interests.

3.7     Effect of Death, Incapacity or Bankruptcy.  The death, incapacity or bankruptcy of any Beneficiary during the term of the ABL Collateral Trust shall not (i) operate to terminate the ABL Collateral Trust, (ii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to an accounting, (iii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to take any action in the Bankruptcy Court or elsewhere for the distribution of the ABL Collateral Trust Assets or for a partition thereof, or (iv) otherwise affect the rights and obligations of any of the Beneficiaries under this Agreement.

3.8     Change of Address.  Any Beneficiaries may, after the Confirmation Date, select an alternative distribution address by providing notice to the Trustee or, as applicable, the Registrar, identifying such alternative distribution address.  Such notification shall be effective only upon receipt by the Trustee or, as applicable, the Registrar.  Absent actual receipt of such notice by the Trustee or, as applicable, the Registrar, the Trustee shall not recognize any such change of distribution address.

3.9     Absolute Owners.  The ABL Collateral Trust may deem and treat any Beneficiary reflected as the owner of an ABL Collateral Trust Interest on the applicable Trust Register as the absolute owner thereof for the purposes of receiving distributions and payments on account thereof, for U.S. federal and state income tax purposes and for all other purposes whatsoever.

3.10    Standing.  No Beneficiary, in their capacity as such, shall have standing to direct or seek to direct the ABL Collateral Trust, the Trustee[, or the Delaware Trustee] to do or not to do any act or to institute any action or proceeding at law or in equity against any Party upon or with respect to the ABL Collateral Trust Assets.3.10

3.11    Requirement of Undertaking.  The ABL Collateral Trust may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the ABL Collateral Trust or Trustee for any action taken or omitted by it as ABL Collateral Trust or Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this Section 3.11 shall not apply to any suit by the ABL Collateral Trust or Trustee.

**ARTICLE IV**
**DISTRIBUTIONS**

4.1     Distributions.

(a)     The ABL Collateral Trust shall distribute the net Cash income and net Cash proceeds from the liquidation of the ABL Collateral Trust Assets (the "ABL Collateral Trust Proceeds") to the Beneficiaries, no less frequently than annually, except the ABL Collateral Trust may retain an amount of net income and other ABL Collateral Trust Assets reasonably necessary to maintain the value of the ABL Collateral Trust Assets pending their liquidation during the term of the ABL Collateral Trust or that are determined to be necessary to meet expenses, claims and contingent liabilities of the ABL Collateral Trust and Trustee, and retention of such amount may preclude distributions to Beneficiaries.

16

FBG_CH1_00092609

(b)     The ABL Collateral Trust shall make distributions of the ABL Collateral Trust Proceeds to the applicable Beneficiaries only in accordance with the terms of the Plan, the Confirmation Order and this Agreement after the ABL Collateral Trust Proceeds are received by the ABL Collateral Trust, and only to the extent that the ABL Collateral Trust has sufficient ABL Collateral Trust Proceeds available to make such distributions in accordance with and to the extent provided for in this Agreement and after funding any reserves required herein.  Notwithstanding anything herein to the contrary, upon each distribution, the Trustee shall have no obligation to make a distribution that would be in an amount that is either (i) less than $500 in Cash or (ii) less than the cost for the Trustee to make the distribution.

(c)     The ABL Collateral Trust may engage a third-party disbursing agent and other Persons to help distribute any ABL Collateral Trust Proceeds.  The ABL Collateral Trust shall pay or reserve for all ABL Collateral Trust Expenses before making any distributions of ABL Collateral Trust Proceeds.

(d)     In accordance with the Plan and this Agreement, to the extent practicable, including pursuant to Section 5.6, and subject to the requirements of Treasury Regulation section 301.7701-4(d), the guidance in Revenue Procedure 94-45, 1994-2 C.B. 684, and Section 5.6 hereof, the ABL Collateral Trust shall distribute, no less frequently than annually, [all Available Cash on hand] (including, but not limited to, the net income of the ABL Collateral Trust, the ABL Collateral Trust Proceeds, any Cash received on account of or representing ABL Collateral Trust Proceeds, and treating as Cash for purposes of this Section 4.1(d) any permitted investments under Section 8.2) to the applicable Beneficiaries on a *pro rata* basis.  For the avoidance of doubt, this Section 4.1 shall not prohibit the ABL Collateral Trust from using the ABL Collateral Trust Assets to timely pay obligations and liabilities of the ABL Collateral Trust duly incurred in accordance with this Agreement, including with respect to the payment of any taxes or other amounts owed to Governmental Units and to timely compensate ABL Collateral Trust Professionals engaged by the ABL Collateral Trust in accordance with this Agreement.

(e)     The ABL Collateral Trust shall make distributions to Beneficiaries at the last-known address for each such Beneficiary as indicated on the ABL Collateral Trust's or Registrar's (as defined below) records as of the applicable distribution date.  Any distribution of Cash by the ABL Collateral Trust shall be made via (i) a check drawn on, or (ii) wire transfer from, a bank account established in the name of the ABL Collateral Trust on or subsequent to the Confirmation Date at a domestic bank selected by the Trustee on behalf of the ABL Collateral Trust, the option of which shall be in the sole discretion of the Trustee.

(f)     If any distribution to any Beneficiary is returned to the ABL Collateral Trust as undeliverable or is otherwise unclaimed (including, for the avoidance of doubt, by failure to cash a distribution check within ninety (90) days of first issuance), no distribution to such Beneficiary shall be made unless and until the Trustee or, as applicable, the Registrar, is notified in writing of the then-current address of such Beneficiary, at which time all currently due missed distributions shall be made to such Beneficiary on the next distribution date; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six (6) months from the applicable distribution date.  After such date, all "unclaimed property" or interests in property shall revert to the ABL Collateral Trust (notwithstanding any applicable federal, state, provincial, or local escheat, abandoned or unclaimed property laws to the contrary) for redistribution in accordance with the terms of the Plan, the Confirmation Order and this Agreement, and the claim of any Beneficiary to such property or interest in property shall be

17

FBG_CH1_00092610

forever barred. The ABL Collateral Trust, by and through the Trustee, may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate such Beneficiary, but nothing contained herein shall require the Trustee to attempt to do so. Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check within ninety (90) days after the check was first issued. All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted ABL Collateral Trust Assets under this Section 4.1. The Beneficiary shall bear all the risk that, and shall indemnify and hold the ABL Collateral Trust and Trustee harmless against any loss that may arise if, the ABL Collateral Trust does not reissue a check promptly after receiving a request for its reissuance.

(g)     The Trustee shall have the authority to cause the ABL Collateral Trust to enter into agreements with one or more distribution agents to facilitate the distributions required under the Plan and this Agreement. The ABL Collateral Trust may pay to the distribution agents from the ABL Collateral Trust Reserve all reasonable and documented fees and expenses of the distribution agents without the need for any approvals, authorizations, actions or consents.

(h)     Reserved.

(i)     The ABL Collateral Trust shall, to the extent applicable, comply with all withholding, payment and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority, and all distributions of ABL Collateral Trust Proceeds shall be subject to any such withholding, payment and reporting requirements. The ABL Collateral Trust shall deduct and withhold taxes from any and all amounts otherwise distributable from the ABL Collateral Trust to any Beneficiary or other Entity determined in the Trustee's reasonable discretion, required by this Agreement, or that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, treaty or other governmental requirement on such Beneficiary or Entity or the ABL Collateral Trust with respect to the amount to be distributed to such Beneficiary, in accordance with Section 10.3 hereof. The ABL Collateral Trust shall determine such maximum amount to be withheld by the ABL Collateral Trust in its sole, reasonable discretion and shall distribute to the Beneficiary any excess amount withheld.

(j)     Subject to Sections 5.85.11 and 5.12 hereof, and the provisions of this Section 4.1, any non-Cash property of the ABL Collateral Trust may be sold, transferred, abandoned or otherwise disposed of by the ABL Collateral Trust. Notice of such sale, transfer, abandonment or disposition shall be provided to the Beneficiaries pursuant to the reporting obligations provided in Section 5.11(a) hereof. If, in the Trustee's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the Trustee believes, in good faith, such property has no value to the ABL Collateral Trust, the Trustee shall have the right to cause the ABL Collateral Trust to abandon or otherwise dispose of such property. Except in the case of fraud, willful misconduct, or gross negligence, no party in interest shall have a claim or cause of action against the ABL Collateral Trust, the Trustee, the Delaware Trustee, or any of their directors, officers, employees, consultants, or professionals arising from or related to the disposition of non-Cash property in accordance with this Section 4.1(j).

(k)     In determining the amount of any ABL Collateral Trust Proceeds or reserves, the ABL Collateral Trust may rely and shall be fully protected in relying on the advice and opinion of any ABL Collateral Trust Professionals.

18

FBG_CH1_00092611

(l)     Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

4.2     Distribution Waterfall.

(a)     Subject to the Plan, and after funding all ABL Collateral Trust Reserves and paying or reserving for all ABL Collateral Trust Expenses and other amounts required to be paid or reserved under the Plan and this Agreement, all ABL Collateral Trust Proceeds shall be distributed in accordance with the ABL Collateral Trust Waterfall set forth in Section 3.2.

(b)     All distributions under the Distribution Waterfall are subject to (i) withholding, setoff and other rights provided in Sections 4.1(h) and 10.3, (ii) establishment and maintenance of reserves pursuant to Article VIII, and (iii) the other distribution mechanics set forth in Section 4.1.

4.3     Conflicting Claims to Distributions.  If any conflicting claims or demands are made or asserted with respect to the ABL Collateral Trust Interests of a Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the ABL Collateral Trust shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

(a)     The ABL Collateral Trust may elect to make no payment or distribution of ABL Collateral Trust Proceeds with respect to the ABL Collateral Trust Interests subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands.  Neither the ABL Collateral Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the ABL Collateral Trust or Trustee be liable for interest on any funds which may be so withheld.

(b)     [The ABL Collateral Trust shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the ABL Collateral Trust, which agreement shall include a complete release of the ABL Collateral Trust and Trustee.  Until the ABL Collateral Trust receives written notice that one of the conditions of the preceding sentence is met, the ABL Collateral Trust may deem and treat as the absolute owner under this Agreement of the ABL Collateral Trust Interests the Beneficiary identified as the owner of that interest in the books and records maintained by the ABL Collateral Trust.  The ABL Collateral Trust shall treat such Beneficiary as the absolute owner for purposes of receiving distributions of ABL Collateral Trust Proceeds and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.]

(c)     In acting or refraining from acting under and in accordance with this Section 4.3, the ABL Collateral Trust and Trustee shall be fully protected and incur no liability to any purported claimant or any other Person.

19

FBG_CH1_00092612

## ARTICLE V
## RIGHTS, POWERS AND DUTIES OF TRUSTEE

5.1     Role of the Trustee.

(a)     In furtherance of and consistent with the purpose of the ABL Collateral Trust and the Plan, subject to the terms and conditions contained in the Plan, the Confirmation Order and this Agreement, the Trustee shall have the power and authority to manage the ABL Collateral Trust, make all decisions on behalf of the ABL Collateral Trust, otherwise perform the functions and take the actions or cause the ABL Collateral Trust to perform the functions and take the actions, as applicable, provided or permitted in this Agreement, and in an expeditious but commercially reasonable manner:

(i)     manage, supervise and protect the ABL Collateral Trust Assets upon the receipt of same by the ABL Collateral Trust on behalf of and for the benefit of the Beneficiaries;

(ii)     cause the ABL Collateral Trust to investigate, analyze, prosecute and, if necessary and appropriate, settle and compromise any Trust Claims and any objections thereto;

(iii)     cause the ABL Collateral Trust to prepare and file all required tax returns and pay all taxes and all other obligations of the ABL Collateral Trust;

(iv)     cause the ABL Collateral Trust to liquidate and convert the ABL Collateral Trust Assets to Cash and make distributions to the Beneficiaries in accordance with Section 4.1 herein;

(v)     on behalf of the ABL Collateral Trust, pursuant to section 363(k) of the Bankruptcy Code, credit bid up to the full amount of the ABL Claims in any sale of ABL Collateral, whether such sale is effectuated through sections 363, 1123, or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise; and

(vi)     have all such other responsibilities as may be vested in the Trustee pursuant to the Plan, the Confirmation Order, this Agreement, and all other applicable orders of the Bankruptcy Court, including, but not limited to, establishment of the ABL Collateral Trust Reserve;

*provided*, that the Trustee shall not through action or inaction, undertake the foregoing in a manner that is adverse to the interests of the Beneficiaries.

(b)     All decisions and duties with respect to the ABL Collateral Trust and the ABL Collateral Trust Assets to be made and fulfilled, respectively, by the Trustee shall be carried out in accordance with the Plan, the Confirmation Order, this Agreement and all other applicable orders of the Bankruptcy Court.  In all circumstances, the Trustee shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the ABL Collateral Trust and shall (i) use commercially reasonable efforts to monetize the ABL Collateral Trust Assets and (ii) prosecute, settle or otherwise resolve any Trust Claims.

20

FBG_CH1_00092613

5.2     Power to Contract.  In furtherance of the purpose of the ABL Collateral Trust, and except as otherwise specifically restricted in the Plan, the Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the ABL Collateral Trust, and also may cause the ABL Collateral Trust, to enter into any contracts, instruments, or other agreements or commitments binding the ABL Collateral Trust, and to execute, acknowledge and deliver any and all contracts, instruments, or other agreements or commitments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the ABL Collateral Trust.

5.3     Ultimate Right to Act Based on Advice of Counsel or Other Professionals. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the ABL Collateral Trust that, based upon the advice of counsel or other professionals, the Trustee determines in good faith that it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person pursuant to the Plan, the Confirmation Order or this Agreement.

5.4     Liquidation of ABL Collateral Trust Assets.  The Trustee, in the exercise of its reasonable business judgment, shall, in an expeditious but orderly manner and subject to the other provisions of the Plan, the Confirmation Order and this Agreement (including Section 2.2), cause the ABL Collateral Trust to liquidate and convert to Cash the ABL Collateral Trust Assets, make timely distributions, including of ABL Collateral Trust Proceeds, in accordance with the terms of the Plan, the Confirmation Order and this Agreement, and not unduly prolong the existence of the ABL Collateral Trust with due regard that undue haste in the administration of the ABL Collateral Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interest of the Beneficiaries.  The Trustee shall exercise reasonable business judgment and cause the ABL Collateral Trust to liquidate the ABL Collateral Trust Assets to maximize net recoveries to the Beneficiaries in accordance with the Plan; *provided, however*, that the Trustee shall take into consideration the risks, timing, and costs of potential actions (including any adverse tax effects and related costs) in making determinations as to the methodologies to be employed to maximize such recoveries.  Such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any Trust Claims or otherwise or through the sale or other disposition of the ABL Collateral Trust Assets (in whole or in combination).  Pursuant to an agreed-upon budget in accordance with Section 5.10(b) hereof, if any, the Trustee may cause the ABL Collateral Trust to incur any reasonable and necessary expenses in connection with the liquidation of the ABL Collateral Trust Assets and distribution of the ABL Collateral Trust Proceeds.

5.5     Management of ABL Collateral Trust Assets.

(a)     Except as otherwise provided in the Plan, the Confirmation Order or this Agreement, and subject to Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Trustee may control and exercise authority over the ABL Collateral Trust Assets, over the management and disposition thereof, and over the management and conduct of the ABL Collateral Trust, in each case, as necessary or advisable to enable the Trustee to fulfill the intents and purposes hereof.  No Person dealing with the ABL Collateral Trust will be obligated to inquire into the validity, expediency or propriety of any transaction by the ABL Collateral Trust, Trustee or any agent of the ABL Collateral Trust or the authority of the Trustee in connection with the acquisition, management or disposition of the ABL Collateral Trust Assets.

21

FBG_CH1_00092614

(b)     In connection with the management and use of the ABL Collateral Trust Assets and except as otherwise expressly limited in the Plan, the Confirmation Order or this Agreement, the ABL Collateral Trust will have, in addition to any powers conferred upon the ABL Collateral Trust by any other provision hereof, the power to take any and all actions as, in the Trustee's reasonable discretion, are necessary or advisable to effectuate the primary purposes of the ABL Collateral Trust, including, without limitation, the power and authority to (i) pay taxes and other obligations owed by the ABL Collateral Trust; (ii) engage and compensate the ABL Collateral Trust Professionals, subject to Section 2.3 hereof, to assist the Trustee with respect to its responsibilities; and (iii) commence, pursue, object to, compromise, and settle all actions involving any Trust Claims, subject to Bankruptcy Court approval, if applicable, that could arise or be asserted at any time, unless otherwise limited, waived, released, compromised, settled, or relinquished in the Plan, the Confirmation Order or this Agreement; and (iv) enact and implement the Plan, the Confirmation Order, this Agreement, and applicable orders of the Bankruptcy Court.

5.6     Safekeeping and Investment of Cash.  All moneys and other assets received by the ABL Collateral Trust shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other ABL Collateral Trust Assets, unless and to the extent required by law, the Plan or the Confirmation Order.  Except as otherwise provided by the Plan or the Confirmation Order, the right and power of the Trustee to cause the ABL Collateral Trust to invest the ABL Collateral Trust Assets, the proceeds thereof, or any income earned by the ABL Collateral Trust shall be limited to the right and power to invest such ABL Collateral Trust Assets only in Cash (to be held in interest-bearing accounts) and U.S. Government securities as defined in section 2(a)(16) of the Investment Company Act; *provided, however*, that (a) the scope of any such permissible investments shall be further limited to include only demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills or money market funds and those investments that a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service guidelines, whether set forth in Internal Revenue Service rulings, other Internal Revenue Service pronouncements, or otherwise (including Revenue Procedure 94-45, 1994-2 C.B. 684), (b) the ABL Collateral Trust may retain any ABL Collateral Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly liquidation of such assets, and (c) the ABL Collateral Trust may expend the ABL Collateral Trust Assets (i) as reasonably necessary to meet contingent liabilities and maintain the value of the ABL Collateral Trust Assets during liquidation, (ii) to pay reasonable and documented administrative expenses (including, but not limited to, any taxes imposed on the ABL Collateral Trust or reasonable fees and expenses in connection with liquidating the ABL Collateral Trust Assets), subject in all cases to Section 2.5 hereof, and (iii) to satisfy other liabilities incurred or assumed by the ABL Collateral Trust (or to which the ABL Collateral Trust Assets are otherwise subject) in accordance with the Plan or this Agreement (including, as applicable, Section 2.5).  Subject to the foregoing, the Trustee is authorized (but not directed), with respect to any trust power or authority that the Trustee may exercise under this Agreement, to acquire and retain investments on behalf of the ABL Collateral Trust not regarded as traditional for trusts, including investments that would be forbidden or would be regarded as imprudent, improper or unlawful by the "prudent person" rule, "prudent investor" rule, 12 Del. C. § 3302, any rule or law concerning the duty of loyalty, any rule or law limiting, prescribing, or voiding or making voidable any interested party or self-dealing transaction, or any other rule or law which restricts a fiduciary's capacity to invest.  Notwithstanding the foregoing, the Trustee

FBG_CH1_00092615

shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the ABL Collateral Trust. Neither the ABL Collateral Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for distribution or payment to the Beneficiaries except as such interest shall actually be received by the ABL Collateral Trust, which shall be distributed as provided in the Plan and the Confirmation Order.

5.7    Additional Powers of the Trustee.  In addition to any and all of the powers enumerated above, and except as otherwise provided in the Plan, the Confirmation Order or this Agreement, and subject to the Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, the Trustee shall be empowered to take the following actions on behalf of the ABL Collateral Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the ABL Collateral Trust, unless otherwise specifically limited or restricted by the Plan, the Confirmation Order or this Agreement, as long as such actions are consistent with the ABL Collateral Trust's status as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) and are merely incidental to its liquidation and dissolution:

(a)    open and maintain bank accounts on behalf of and in the name of the ABL Collateral Trust and perform all actions and execute all agreements, instruments, and other documents necessary to effectuate the purpose of the ABL Collateral Trust;

(b)    cause the ABL Collateral Trust to calculate, authorize, and make all distributions of ABL Collateral Trust Proceeds to the Beneficiaries as provided for in, or contemplated by, the Plan, the Confirmation Order and this Agreement and take all actions necessary to (i) resolve all matters related to the ABL Collateral Trust and (ii) vest such assets in the ABL Collateral Trust;

(c)    cause the ABL Collateral Trust to pay all of its lawful expenses, debts, charges, taxes and other liabilities, and make all other payments relating to the ABL Collateral Trust Assets, as ABL Collateral Trust Expenses, solely out of the ABL Collateral Trust Assets;

(d)    perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code with respect to the ABL Collateral Trust Assets, including the right to assert claims, defenses, offsets, and privileges;

(e)    cause the ABL Collateral Trust to protect and enforce the rights of the ABL Collateral Trust in and to the ABL Collateral Trust Assets by any method deemed reasonably appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law (whether foreign or domestic) and general principles of equity;

(f)    determine and cause the ABL Collateral Trust to satisfy any and all liabilities created, incurred or assumed by the ABL Collateral Trust;

(g)    cause the ABL Collateral Trust to assert, enforce, release, or waive any Privilege or defense on behalf of the ABL Collateral Trust, the ABL Collateral Trust Assets, or the Beneficiaries, as applicable;

23

FBG_CH1_00092616

(h)      cause the ABL Collateral Trust to make all payments relating to the ABL Collateral Trust;

(i)      cause the ABL Collateral Trust to obtain and carry reasonable insurance coverage and policies with respect to the potential liabilities and obligations of the ABL Collateral Trust and the Trustee under this Agreement (in the form of a directors and officers' policy, an errors and omissions policy, or otherwise, all at the sole cost and expense of the ABL Collateral Trust) and cause the ABL Collateral Trust to pay all associated insurance premiums and costs solely out of ABL Collateral Trust Assets;

(j)      cause the ABL Collateral Trust to (i) receive, maintain, conserve, collect, settle, manage, adjust, invest, supervise, protect, enforce, liquidate, dissolve and/or wind up the ABL Collateral Trust Assets, and (ii) withdraw and make distributions from and pay taxes and other obligations owed by the ABL Collateral Trust from funds held by the ABL Collateral Trust, in each case as long as such actions are consistent with the ABL Collateral Trust's status as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and are merely incidental to its liquidation and dissolution;

(k)      cause the ABL Collateral Trust to prepare, or have prepared, and timely file, if necessary, with the appropriate Governmental Unit any and all tax returns, information returns, and other required documents with respect to the ABL Collateral Trust (including, without limitation, U.S. federal, state, local or foreign tax or information returns required to be filed by the ABL Collateral Trust), pay taxes properly payable by the ABL Collateral Trust, if any, and cause all taxes payable by the ABL Collateral Trust, if any, to be paid exclusively out of the ABL Collateral Trust Assets, make all tax withholdings, timely file and prosecute tax refund claims by and on behalf of the ABL Collateral Trust;

(l)      cause the ABL Collateral Trust to withhold from the amount distributable to any Person the maximum amount needed to pay or remit any tax or other charge that the ABL Collateral Trust has determined, based upon the advice of its agents and/or professionals, may be required to be withheld or deducted from such distribution of ABL Collateral Trust Proceeds under the income tax or other laws of the United States or of any state or political subdivision thereof;

(m)      request any appropriate tax determination with respect to the Debtors, the ABL Collateral Trust, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(n)      cause the ABL Collateral Trust, as determined by the Trustee to be necessary or desirable, to send to Beneficiaries, in accordance with the applicable tax laws, a separate statement stating a Beneficiary's interest in the ABL Collateral Trust and its share of the ABL Collateral Trust's income, gain, loss, deduction, or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns, as applicable;

(o)      subject to maintaining the status of the ABL Collateral Trust as a grantor trust for U.S. federal income tax purposes or otherwise as provided in Section 5.7(y) hereof, make tax elections by and on behalf of the ABL Collateral Trust, which are deemed by the Trustee, either independently or with the advice of ABL Collateral Trust Professionals, to be in the best interest of maximizing the liquidation value of the ABL Collateral Trust Assets;

24

FBG_CH1_00092617

(p)      cause the ABL Collateral Trust to review, reconcile investigate, analyze, compromise, adjust, arbitrate, mediate, collect, release, waive, withdraw, abandon, resolve, sue on or defend, pursue, protect, prosecute, abandon, dismiss, exercise rights, powers and privilege with respect to or otherwise deal with and settle, in accordance with the terms forth in this Agreement, any Trust Claims in favor of or against the ABL Collateral Trust or relating to or involving the ABL Collateral Trust Assets;

(q)      retain or cause the ABL Collateral Trust to retain and cause the ABL Collateral Trust to reasonably compensate for services rendered and expenses incurred by ABL Collateral Trust Professionals to perform such reviews and/or audits of the financial books and records of the ABL Collateral Trust as may be appropriate in the Trustee's reasonable discretion and to prepare and file any tax returns or informational returns for the ABL Collateral Trust as may be required;

(r)      cause the ABL Collateral Trust to take or refrain from taking any and all actions the Trustee reasonably deems necessary for the continuation, protection, and maximization of the ABL Collateral Trust Assets consistent with the purposes hereof;

(s)      cause the ABL Collateral Trust to enter into any agreement or execute any document or instrument the Trustee reasonably deems necessary to effectuate the ABL Collateral Trust, or required by or consistent with the Plan, the Confirmation Order or this Agreement, and to perform all obligations thereunder;

(t)      cause the ABL Collateral Trust to collect and liquidate any remaining ABL Collateral Trust Assets, and provide for the distributions therefrom in accordance with the provisions of the Plan, the Confirmation Order and this Agreement;

(u)      take all actions or cause the ABL Collateral Trust to take all action the Trustee reasonably deems necessary to comply with the Plan, the Confirmation Order and this Agreement (including all obligations thereunder);

(v)      cause the ABL Collateral Trust to abandon the ABL Collateral Trust Assets, including causing (but not obligating) the ABL Collateral Trust to invest any moneys held as ABL Collateral Trust Assets;

(w)      cause the ABL Collateral Trust to abandon or otherwise dispose of, including by donation to a charitable organization, any ABL Collateral Trust Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the ABL Collateral Trust and the Beneficiaries in accordance with the Plan and the Confirmation Order;

(x)      in the event that the ABL Collateral Trust shall fail or cease to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), take or cause the ABL Collateral Trust to take any and all necessary actions as it shall reasonably deem appropriate to have such assets treated as held by an entity classified as a partnership for U.S. federal tax purposes;

(y)      undertake all administrative functions of the ABL Collateral Trust, including overseeing the winding down and termination of the ABL Collateral Trust;

25

FBG_CH1_00092618

(z)      exercise, implement, enforce, and discharge all of the applicable and relevant terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order and this Agreement; and;

(aa)    exercise such other powers as may be vested in the Trustee pursuant to the Plan, the Confirmation Order, this Agreement, any order of the Bankruptcy Court or as otherwise determined by the Trustee to be reasonably necessary and proper to carry out the obligations of the Trustee in relation to the ABL Collateral Trust or desirable to administer the ABL Collateral Trust.

(bb)    coordinate with the Wind Down Administrator, the Claims Ombudsman, and the other Trustees;

(cc)    provide funding for the administration of the Factored Receivables Account and prosecution of the FBG Debtors' interests in the Factored Receivables Account in accordance with the Plan; and

(dd)    administer the SPV-ABL Wind Down Account in accordance with the Wind Down Order.

5.8     Limitations on Power and Authority of the Trustee.  Notwithstanding anything in this Agreement to the contrary, the Trustee will not have the authority to do any of the following:

(a)     take or cause the ABL Collateral Trust to take any action in contravention of the DIP Order, the Plan, the Confirmation Order or this Agreement;

(b)     take or cause the ABL Collateral Trust to take any action that would make it impossible to carry on the activities of the ABL Collateral Trust;

(c)     possess or cause the ABL Collateral Trust to possess property or assign or cause the ABL Collateral Trust to assign the ABL Collateral Trust's rights in specific property for any purpose other than as provided herein;

(d)     cause or permit the ABL Collateral Trust to engage in any trade or business or utilize or dispose of any part of the ABL Collateral Trust Assets or the proceeds, revenue or income therefrom in furtherance of any trade of business;

(e)     receive or cause the ABL Collateral Trust to receive transfers of any listed stocks or securities or any readily marketable assets or any operating assets of a going business to the extent that the ABL Collateral Trust receiving any such investment would jeopardize treatment of the ABL Collateral Trust as a "liquidating trust" for U.S. federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof;

(f)     receive or retain or cause the ABL Collateral Trust to receive or retain any operating assets of an operating business, a partnership interest in a partnership that holds operating assets or fifty percent (50%) or more of the stock of a corporation with operating assets; provided, however, that in no event shall the Trustee receive or retain or cause the ABL Collateral Trust to receive or retain any such asset or interest that would jeopardize treatment of the ABL Collateral Trust as a "liquidating trust" for U.S. federal income tax purposes under Treasury Regulation section 301.7701-4(d) or any successor provision thereof;

26

FBG_CH1_00092619

(g)     take or cause the ABL Collateral Trust to take any other action or engage or cause the ABL Collateral Trust to engage in any investments or activities that would jeopardize treatment of the ABL Collateral Trust as a liquidating trust for U.S. federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof; or

(h)     cause the ABL Collateral Trust to issue any ABL Collateral Trust Interests other than as expressly contemplated by the Plan or the Confirmation Order; *provided, however*, that nothing contained in this Agreement shall be construed to limit, restrict, or otherwise impar the Trustee's right credit bid the remaining ABL Claims for any ABL Collateral.

5.9     Books and Records.  The Trustee shall maintain or cause the ABL Collateral Trust to maintain accurate books and records relating to administration of the ABL Collateral Trust Assets (including income realized therefrom and the ABL Collateral Trust Proceeds) and the payment of, costs and expenses of, and liabilities for claims against or which, pursuant to the Plan, are the responsibility of the ABL Collateral Trust in such detail and for such period of time as may be necessary to enable the ABL Collateral Trust to make full and proper accounting in respect thereof and in accordance with applicable law.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the ABL Collateral Trust.  Nothing in this Agreement requires the Trustee to file any accounting or seek approval of any court with respect to the administration of the ABL Collateral Trust or as a condition for managing any payment or distribution out of the ABL Collateral Trust Assets, except as may otherwise be set forth in the Plan or the Confirmation Order.  The Trustee shall be provided with originals or copies of or access to all documents, business records, and other information of the Debtors necessary, as reasonably determined by the Trustee, for the disposition of ABL Collateral Trust Assets, subject to the payment of any fees, costs, or expenses of providing such documents, business records, and other information. The books and records maintained by the ABL Collateral Trust and any records of the FBG Debtors transferred to the ABL Collateral Trust may be disposed of by the Trustee at the later of (i) such time as the ABL Collateral Trust determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the ABL Collateral Trust or its Beneficiaries and (ii) upon the termination of the ABL Collateral Trust.

5.10     Turnover of ABL Collateral Trust Assets.  If the DIP Collateral Trust or the Litigation Trust receives, or otherwise obtains possession or ownership of, ABL Collateral Trust Assets, such ABL Collateral Trust Assets shall be assigned, turned over, or otherwise transferred to (or held in trust for the benefit of) the ABL Collateral Trust.

5.11     Reports.

(a)     [Financial and Status Reports.  The fiscal year of the ABL Collateral Trust shall be the calendar year.  Within [ninety (90)] days after the end of each calendar year during the term of the ABL Collateral Trust, the Trustee shall make available to the applicable Beneficiaries appearing in the Trust Register as of the end of such period or such date of termination, a written report including: (i) unaudited financial statements of the ABL Collateral Trust for such period; (ii) a summary description of any action taken by the ABL Collateral Trust which, in the judgment of the Trustee, materially affects the ABL Collateral Trust and of which notice has not previously been given to the Beneficiaries; *provided*, that any such description shall not include any privileged or confidential information of the ABL Collateral Trust; (iii) a description of the progress of liquidating the ABL Collateral Trust Assets and

27

making distributions to the Beneficiaries, which description shall include a written report providing, among other things, the ABL Collateral Trust Proceeds recovered to date and the distributions made by the ABL Collateral Trust to date; and (iv) any other material information relating to the ABL Collateral Trust Assets and the administration of the ABL Collateral Trust deemed appropriate to be disclosed by the Trustee; *provided*, that any such report shall not be provided to any Beneficiary if doing so could negatively impact any action undertaken by the ABL Collateral Trust to maximize the value of the ABL Collateral Trust Assets.  The Trustee may post any such report on a website maintained by the ABL Collateral Trust or electronically file it with the Bankruptcy Court in lieu of actual notice to each Beneficiary.

      (b)     Reserved.

      (c)     Reserved.

5.12   [Reserved.]

## ARTICLE VI
## THE TRUSTEE GENERALLY

6.1   Reserved.

6.2   Trustee's Term of Service, Compensation and Reimbursement.

      (a)     Term of Service.  The Trustee shall serve as of the Confirmation Date until the earlier of: (i)  termination of the ABL Collateral Trust in accordance with this Agreement; or (ii) the Trustee's death, dissolution, liquidation, Disability (as defined below), resignation or removal.

      (b)     Compensation.  The Trustee shall receive compensation from the ABL Collateral Trust as provided on Exhibit C hereto (the "Trustee Compensation"), which shall be a charge solely against and solely paid out of the ABL Collateral Trust Assets in accordance with the Plan and the Confirmation Order.  The compensation of the Trustee may be modified from time to time by agreement of the Trustee and the ABL Agent.

      (c)     Expenses.  The ABL Collateral Trust will reimburse the Trustee from the ABL Collateral Trust Reserves for all actual, reasonable and documented out-of-pocket expenses, costs and obligations incurred by the Trustee in connection with the performance of the duties of the Trustee hereunder or under the Plan or the Confirmation Order, including but not limited to, actual, reasonable and documented fees and disbursements of the Trustee's legal counsel incurred in connection with the review, execution, and delivery hereof and related documents (such expenses, together with the Trustee Compensation, the "Trustee Fees").  In the event that the Trustee's appointment terminates by reason of death, dissolution, liquidation, Disability, resignation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced.

      (d)     Payment.  The Trustee Fees shall be paid to the Trustee from the ABL Collateral Trust Reserves without necessity for review or approval by the Bankruptcy Court or any other Person.  The Bankruptcy Court shall retain jurisdiction until the closing or dismissal of the Chapter 11 Cases to adjudicate any dispute regarding the Trustee Fees.

FBG_CH1_00092621

6.3     Functions Without Court Approval.  Following the establishment of the ABL Collateral Trust, the Trustee and/or the ABL Collateral Trust, as applicable, shall carry out its functions and may take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan, the Confirmation Order or this Agreement.  If the Trustee has a conflict or any of the ABL Collateral Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "Supplemental Trustee") solely with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion.  In the event the Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.  The Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Trustee any or all of the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations hereof, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent necessary).  To the extent the Supplemental Trustee is appointed by the Trustee, the Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all property.  The Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.  To the extent a Supplemental Trustee is serving, with regard to the rights, powers, privileges and duties delegated to such Supplemental Trustee hereunder, any provisions applicable to the Trustee under this Agreement shall be applicable to the Supplemental Trustee, including without limitation with regard to the standard of conduct, exculpation, and indemnification provisions, other than any provisions that govern the relationship between the Trustee and the Supplemental Trustee and the appointment and removal of the Supplemental Trustee.

6.4     Resignation.  The Trustee may resign by giving not less than sixty (60) days' prior written notice thereof by filing a notice with the Bankruptcy Court (and such notice shall be served on the Beneficiaries, the ABL Agent, [and the Delaware Trustee]); *provided, however,* after the closing or dismissal of the Chapter 11 Cases, such notice shall be posted by the Registrar and served on the Beneficiaries, the ABL Agent, [and the Delaware Trustee]. Such resignation shall become effective on the day specified in such notice; *provided, however,* such resignation shall not be effective until the appointment of a successor Trustee satisfying the requirements set out in Section 6.6 or by the Bankruptcy Court and the acceptance by such successor of such appointment.  Notwithstanding the foregoing, upon the Termination Date (as defined in Section 11.2 below), the Trustee shall be deemed to have resigned.  Written notice of the resignation of the Trustee and the appointment of a successor Trustee shall be provided promptly to the Beneficiaries, the ABL Agent, [and the Delaware Trustee].  In the event of a resignation, the resigning Trustee shall render to the ABL Agent a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

6.5     Removal.

(a)     The then-serving Trustee may be removed by the ABL Agent, for Cause (as defined in Section 6.5(b) herein), immediately upon notice thereof, or without Cause, upon

29

FBG_CH1_00092622

not less than thirty (30) days' prior written notice delivered to the Trustee [and the Delaware Trustee].

(b)     To the extent there is any dispute regarding the removal of a Trustee (including any dispute relating to any portion of the Trustee Fees), the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute.  Notwithstanding the foregoing, the Trustee will continue to serve as the Trustee after its removal other than for Cause until the earlier of (i) the time when appointment of a successor Trustee will become effective in accordance with Section 6.6 hereof or (ii) such date as the Bankruptcy Court otherwise orders. For purposes of this Agreement, (A) "Cause" shall mean (i) a Person's willful failure to perform its material duties hereunder, which is not remedied within thirty (30) days of notice; (ii) a Person's commission of an act of fraud, theft or embezzlement; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of its duties hereunder; or (v) a Person's breach of their duties hereunder or an unresolved conflict of interest; and (B) "Disability" of the Trustee who is a natural person shall have occurred if, as a result of such Person's incapacity due to physical or mental illness as determined by a physician selected by the Trustee and reasonably acceptable to the ABL Agent, the Trustee shall have been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of one hundred eighty (180) days during any period of twelve (12) consecutive months.

6.6     Appointment of Successor Trustee.

(a)     In the event of the death or Disability (as defined in Section 6.5(b) herein) (in the case of a Trustee that is a natural person), dissolution (in the case of a Trustee that is not a natural person), resignation, or removal of the Trustee (each, a "Succession Event"), the ABL Agent shall promptly designate a successor Trustee6.1; *provided, however,* the Bankruptcy Court may designate a successor Trustee to the extent that the ABL Agent has not designated a successor Trustee within thirty (30) days of notice of a Succession Event resulting from the death, Disability, dissolution, or resignation of the Trustee.  Such appointment shall specify the date on which such appointment shall be effective.  Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to the Beneficiaries[, the Delaware Trustee,] and the ABL Agent an instrument accepting the appointment under this Agreement and agreeing to be bound as Trustee hereto and subject to the terms hereof, and thereupon the successor Trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, privileges, trusts and duties of the predecessor Trustee and the successor Trustee shall not be personally liable for any act or omission of the predecessor Trustee; *provided, however,* that a predecessor Trustee shall, nevertheless, when requested in writing by the successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee under the ABL Collateral Trust all the estates, properties, rights, powers and trusts of such predecessor Trustee and otherwise assist and cooperate, without cost or expense to the predecessor Trustee, in effectuating the assumption by the successor Trustee of his/her/its obligations and functions hereunder.  For notice purposes only and not for approval, the successor Trustee shall file with the Bankruptcy Court (or post on a website / data room maintained by the Registrar if the Chapter 11 Cases have been closed) a notice upon appointment of the successor Trustee.

(b)     To the extent that the ABL Agent is unable to appoint a successor Trustee and the Chapter 11 Cases have been closed or dismissed, the Chapter 11 Cases may be

FBG_CH1_00092623

reopened for the limited purpose of seeking an order of the Bankruptcy Court to appoint a successor Trustee.

6.7    Effect of Resignation or Removal.   The death, Disability, dissolution, bankruptcy, resignation, or removal of the Trustee, as applicable, shall not operate to terminate the ABL Collateral Trust created by this Agreement or to revoke any existing agency created pursuant to the terms hereof or invalidate any action theretofore taken by the Trustee or any prior Trustee.   In the event of the resignation or removal of the Trustee, such Trustee will promptly (a) execute and deliver such documents, instruments and other writings as may be ordered by the Bankruptcy Court (or any other court of competent jurisdiction) or reasonably requested by the ABL Agent or the successor Trustee to effect the termination of such Trustee's capacity under this Agreement, (b) deliver to the Bankruptcy Court (if required), the ABL Agent and/or the successor Trustee all documents, instruments, records and other writings related to the ABL Collateral Trust as may be in the possession of such Trustee, and shall not retain any copies of such materials, even for archival purposes, and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Trustee.

6.8    Confidentiality.  The Trustee shall, during the period that the Trustee serves as Trustee under this Agreement and for a period of [two (2)] years following the termination hereof or following such Trustee's ceasing to serve as Trustee, hold strictly confidential and not use for personal gain or for the gain of any Entity or Person for whom such Trustee may be employed any non-public information of or pertaining to the ABL Collateral Trust, including without limitation any non-public information regarding any Person to which any of the ABL Collateral Trust Assets relates or of which the Trustee has become aware in the Trustee's capacity as Trustee until (a) such information is made public other than by disclosure by the ABL Collateral Trust, the Trustee, or any ABL Collateral Trust Professionals in violation hereof; (b) the ABL Collateral Trust is required by law to disclose such information (in which case the ABL Collateral Trust shall provide the relevant Person reasonable advance notice and an opportunity to protect his, her, or its rights); or (c) the ABL Collateral Trust obtains a waiver of confidentiality from the applicable Person.

## ARTICLE VII
## [RESERVED]

7.0    [Reserved.]

## ARTICLE VIII
## ABL COLLATERAL TRUST RESERVES

8.1    Establishment of ABL Collateral Trust Reserves.  On the Confirmation Date, the Trustee shall establish the ABL Collateral Trust Reserve (the "ABL Collateral Trust Reserve").  The ABL Collateral Trust Reserve shall be used to fund the ABL Collateral Trust Expenses.  Any excess funds in the ABL Collateral Trust Reserve remaining after the payment or funding of amounts required under the preceding sentences shall be deemed to be ABL Collateral Trust Proceeds and shall be available for distribution in accordance with the Plan and Sections 4.1 and 4.2 hereof.

8.2    Cash in the ABL Collateral Trust Reserves.  Cash held in the ABL Collateral Trust Reserves (including any earnings that have accrued on such Cash, net of any expenses, including any tax, relating thereto) shall be retained by the ABL Collateral Trust for the benefit

31

FBG_CH1_00092624

of Beneficiaries as contemplated in Section 8.1, the Plan, the Confirmation Order and this Agreement pending determination of their entitlement thereto under the terms of the Plan. Cash shall be either (x) held by the ABL Collateral Trust in an interest-bearing account or (y) invested in interest-bearing obligations issued by the U.S. government and guaranteed by the U.S. government, and having (in either case) a maturity date of not more than thirty (30) days. All such Cash or investments shall be held by the ABL Collateral Trust in an account at a nationally recognized bank, financial institution, trust company or investment/brokerage firm chosen by the Trustee and bearing the name "First Brands ABL Collateral Trust Reserve Account" or words of similar import (the "ABL Collateral Trust Reserve Account"). Cash held in the ABL Collateral Trust Reserve Account will (i) be held in trust, pending distribution by the ABL Collateral Trust and (ii) be accounted for separately from the ABL Collateral Trust Assets.

## ARTICLE IX
## LIABILITY AND INDEMNIFICATION

9.1    No Further Liability. Each of the Trustee, [the Delaware Trustee,] the ABL Agent and their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives shall have no liability for any actions or omissions in accordance with this Agreement or with respect to the ABL Collateral Trust unless arising out of such Person's own fraud, bad faith, willful misconduct, gross negligence, or criminal misconduct. Without limiting the generality of the foregoing, the Trustee, [the Delaware Trustee,] the ABL Agent and their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by such Person to be genuine and shall have no liability for actions taken in reliance thereon. None of the provisions hereof shall require the Trustee, [the Delaware Trustee,] the ABL Agent or their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers. Each of the Trustee, [the Delaware Trustee,] the ABL Agent and their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives may rely without inquiry upon writings delivered to such Person pursuant to the Plan, the Confirmation Order or this Agreement (including in the execution of such Person's duties hereunder or thereunder) that such Person reasonably believes to be genuine and to have been properly given. Notwithstanding the foregoing, nothing in this Section 9.1 shall relieve the Trustee, [the Delaware Trustee,] the ABL Agent or their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives from any liability for any actions or omissions arising out of such Person's fraud, bad faith, willful misconduct, gross negligence, or criminal misconduct. Any action taken or omitted to be taken by the Trustee, [the Delaware Trustee,] the ABL Agent, or their respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives with the express approval of the Bankruptcy Court (so long as the Chapter 11 Cases have not been closed or dismissed) will conclusively be deemed not to constitute fraud, bad faith, willful misconduct, gross negligence, or criminal misconduct. No termination hereof or amendment, modification or repeal of this Section 9.1 shall adversely affect any right or protection of the Trustee, [the Delaware Trustee,] the ABL Agent or their respective officers, managers, directors, equity holders, employees,

FBG_CH1_00092625

designees, agents, consultants, professionals and other representatives that exists at the time of such amendment, modification or repeal.

9.2     Reliance on Documents and Advice of Counsel or Other Persons.  The ABL Collateral Trust may, in connection with the performance of its functions, in its sole and absolute discretion, consult with its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done on reasonable reliance on the advice or opinions rendered by such persons, regardless of whether such advice or opinions are in writing.  Notwithstanding such authority, neither the ABL Collateral Trust nor the Trustee shall be under any obligation to consult with any such attorneys, accountants, advisors, or agents, and any determination not to do so shall not result in the imposition of liability on the ABL Collateral Trust or the Trustee unless such determination is based on willful misconduct, gross negligence, or fraud.  Except as otherwise provided herein, the ABL Collateral Trust, by and through the Trustee, may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.  The ABL Collateral Trust, by and through the Trustee, also may engage and consult with its respective legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered in good faith reliance upon the advice of such counsel, agents, or advisors to the ABL Collateral Trust to the extent permitted by law.

9.3     No Liability for Acts of Other Persons.  None of the Trustee or [the Delaware Trustee] shall be liable for the act or omission of each other or the respective officers, managers, directors, equity holders, employees, designees, agents, consultants, professionals and other representatives of each other.

9.4     Limitation of Debtors' Liability.  The Debtors or their respective successors shall have no liabilities or obligations to the Trustee, [the Delaware Trustee], the Beneficiaries or the ABL Collateral Trust, other than the liabilities and obligations expressly contemplated by the Plan, the Confirmation Order and this Agreement.

9.5     Indemnification of the Trustee and ABL Agent.

(a)     In exercising the rights granted herein, the ABL Collateral Trust and the Trustee shall exercise their best judgment in accordance with their fiduciary duties, to the end that the affairs of the ABL Collateral Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded.  Notwithstanding the foregoing, from and after the Confirmation Date, each of the Trustee and the ABL Agent, in their capacities as such (each, an "ABL Collateral Trust Indemnified Party," and collectively, the "ABL Collateral Trust Indemnified Parties") shall be, and hereby is, indemnified and held harmless by the ABL Collateral Trust, to the fullest extent permitted by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, losses, liabilities, fines, penalties, demands, costs, expenses (including attorneys' fees), covenants, judgments, damages, attorneys' fees, defense costs and other assertions of liability, whether sounding in tort, contract or otherwise, arising out of any such ABL Collateral Trust Indemnified Party's actions or omissions to act regarding the ABL Collateral Trust, except to the extent such losses were the result of such party's fraud, bad faith, willful misconduct, gross negligence, or criminal misconduct. The foregoing indemnification shall extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to: (i) this Agreement; (ii) the services to be rendered pursuant to this Agreement; (iii) any document or

33

FBG_CH1_00092626

**DEBTORS' EXHIBIT NO. 178**
**Page 227 of 360**

information, whether oral or written, referred to herein or supplied to the ABL Collateral Trust Indemnified Party; or (iv) proceedings by or on behalf of any creditor. Reasonable out-of-pocket expenses, including attorney's fees and other expenses and disbursements, incurred by an ABL Collateral Trust Indemnified Party in defending or investigating a threatened or pending action, suit or proceeding shall be paid or reimbursed by the ABL Collateral Trust, solely out of the ABL Collateral Trust Assets, in advance of the final disposition of such action, suit or proceeding; *provided*, *however*, that any ABL Collateral Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines, by Final Order, that such ABL Collateral Trust Indemnified Party is not entitled to indemnification hereunder due to such party's own fraud, bad faith, gross negligence, willful misconduct, or criminal misconduct. Any indemnification claim of an ABL Collateral Trust Indemnified Party shall be entitled to a priority distribution from the ABL Collateral Trust Assets, ahead of the ABL Collateral Trust Interests and any other claim to or interest in such assets. In any matter covered by the first two sentences of this subsection, any party entitled to indemnification shall have the right to employ such party's own separate counsel, at the ABL Collateral Trust's expense, subject to the foregoing terms and conditions. The indemnification provided under this Section 9.5 shall survive the death, dissolution, resignation or removal, as may be applicable, of the Trustee or any other ABL Collateral Trust Indemnified Party and shall inure to the benefit of the Trustee's and each other ABL Collateral Trust Indemnified Party's respective heirs, successors and assigns.

(b)     To the extent the ABL Collateral Trust indemnifies and holds harmless any ABL Collateral Trust Indemnified Parties as provided above, the reasonable and documented legal fees and related costs incurred by counsel to the ABL Collateral Trust in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as ABL Collateral Trust Expenses payable in accordance with this Agreement. The costs and expenses incurred in enforcing the right of indemnification in this Section 9.5 shall be paid by the ABL Collateral Trust. This provision and the foregoing indemnity in respect of any ABL Collateral Trust Indemnified Party shall survive the termination of such ABL Collateral Trust Indemnified Party from the capacity for which such party is indemnified. Termination or modification hereof shall not limit or negatively affect any indemnification rights or obligations set forth herein.

(c)     The ABL Collateral Trust may, in the Trustee's sole discretion, indemnify any Person who is not an ABL Collateral Trust Indemnified Party for any loss, cost, damage, expense or liability for which an ABL Collateral Trust Indemnified Party would be entitled to mandatory indemnification under this Section 9.5.

(d)     Any ABL Collateral Trust Indemnified Party may waive the benefits of indemnification under this Section 9.5, but only by an instrument in writing executed by such ABL Collateral Trust Indemnified Party.

(e)     The rights to indemnification under this Section 9.5 are not exclusive of other rights which any ABL Collateral Trust Indemnified Party may otherwise have at law or in equity, including, without limitation, common law rights to indemnification or contribution. Nothing in this Section 9.5 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party. Further, the ABL Collateral Trust hereby agrees: (i) that the ABL Collateral Trust is the indemnitor of first resort (*i.e.*, in the event any ABL Collateral Trust Indemnified Party has the right to receive indemnification from one or more third party, the ABL Collateral Trust's obligations to such ABL Collateral Trust Indemnified Party are primary); (ii) that the ABL

34

FBG_CH1_00092627

**DEBTORS' EXHIBIT NO. 178**
**Page 228 of 360**

Collateral Trust shall be required to pay the full amount of expenses (including attorneys' fees) actually incurred by such ABL Collateral Trust Indemnified Party in connection with any proceeding as to which the ABL Collateral Trust Indemnified Party is entitled to indemnification hereunder in advance of the final disposition of such proceeding from the ABL Collateral Trust Reserves; (iii) that the ABL Collateral Trust irrevocably waives, relinquishes and releases such third parties from any and all claims by the ABL Collateral Trust against such third parties for contribution, subrogation or any other recovery of any kind in respect thereof; and (iv) no ABL Collateral Trust Indemnified Party shall have the obligation to reduce, offset, allocate, pursue or apportion any indemnification advancement, contribution or insurance coverage among multiple parties owing indemnification obligations to such ABL Collateral Trust Indemnified Party prior to the ABL Collateral Trust's satisfaction of its indemnification obligations hereunder. For the avoidance of doubt, each ABL Collateral Trust Indemnified Party shall be entitled, subject to the terms hereof, to indemnification for any reasonable out-of-pocket costs and attorneys' fees such ABL Collateral Trust Indemnified Party may incur in connection with enforcing any of its rights under this Article VIII.

9.6     ABL Collateral Trust Liabilities.  All liabilities of the ABL Collateral Trust, including, without limitation, indemnity obligations under Section 9.5 hereof and applicable law, will be liabilities of the ABL Collateral Trust and will be paid or satisfied solely from the ABL Collateral Trust Assets and paid on a priority basis, *provided*, *however*, that the ABL Collateral Trust may obtain liability insurance to satisfy its indemnity obligations under Section 9.5 and applicable law.  No liability of the ABL Collateral Trust will be payable in whole or in part by any Beneficiary individually or in the Beneficiary's capacity as a Beneficiary, by the Trustee individually or in the Trustee's capacity as Trustee, [by the Delaware Trustee individually or in the Delaware Trustee's capacity as Delaware Trustee,] or by any representative, member, partner, shareholder, director, officer, professional, employee, agent, affiliate or advisor of any Beneficiary, the Trustee or their respective affiliates.

9.7     Limitation of Liability.  None of the ABL Collateral Trust or ABL Collateral Trust Indemnified Parties shall be liable for direct, indirect, monetary, punitive, exemplary, consequential, special or other damages or losses (including but not limited to lost profits) whatsoever, for a breach hereof, except to the extent his/her/its actions or omissions to act, as determined by a Final Order, are due to such ABL Collateral Trust Indemnified Party's own fraud, willful misconduct or gross negligence and any of the foregoing damages are awarded pursuant to any such Final Order.  The ABL Collateral Trust and ABL Collateral Trust Indemnified Parties shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the ABL Collateral Trust or ABL Collateral Trust Indemnified Parties.

9.8     Burden of Proof.  In making a determination with respect to entitlement to exculpation or indemnification hereunder, the court, Person or Entity making such determination shall presume that any ABL Collateral Trust Indemnified Party is entitled to exculpation and indemnification under this Agreement and any Person seeking to overcome such presumption shall have the burden of proof to overcome that presumption.

**ARTICLE X**
**TAX MATTERS**

10.1     Treatment of ABL Collateral Trust Assets Transfer.  The ABL Collateral Trust is intended to be treated for U.S. federal income tax purposes as a "liquidating trust" described in Treasury Regulation section 301.7701-4(d) that is a "grantor trust" for U.S. federal income

35

FBG_CH1_00092628

**DEBTORS' EXHIBIT NO. 178**
**Page 229 of 360**

tax purposes (except to the extent any assets allocable to, or held on account of, Disputed Claims are treated as a "disputed ownership fund" within the meaning of Treasury Regulations section 1.468B-9 or other separate taxable entity). For all U.S. federal, state and local income tax purposes, all Persons (including, without limitation, the Debtors, the Trustee and the Beneficiaries) shall treat the transfer of the ABL Collateral Trust Assets to the ABL Collateral Trust for the benefit of the Beneficiaries, whether their Claims are Allowed on or after the Confirmation Date, including any amounts or other assets subsequently transferred to the ABL Collateral Trust (but only at such time as actually transferred) as (i) a transfer of the ABL Collateral Trust Assets (subject to any obligations relating to such ABL Collateral Trust Assets) directly to the Beneficiaries (including, for purposes of Article X, by reason of the DIP Collateral Trust's beneficial interest in any excess proceeds from the sale of ABL Collateral Trust Assets, the holders of Allowed Claims entitled to receive DIP Collateral Trust Interests) other than to the extent any assets allocable to, or held on account of, Disputed Claims are treated as a "disputed ownership fund" or other separate taxable entity, followed by (ii) the transfer by the Beneficiaries to the ABL Collateral Trust of the ABL Collateral Trust Assets (in the case of holders of DIP Collateral Trust Interests, indirectly by first transferring such assets to the DIP Collateral Trust), other than to the extent any such assets allocable to, or held on account of, Disputed Claims are treated as a disputed ownership fund or other separate taxable entity, in exchange for ABL Collateral Trust Interests. Accordingly, absent definitive guidance to the contrary, the Beneficiaries (including the holders of Allowed Claims entitled to receive ABL Collateral Trust Interests in respect of the ABL Collateral Trust's beneficial interest in the ABL Collateral Trust and holders of Allowed Claims entitled to receive DIP Collateral Trust Interests in respect of the DIP Collateral Trust's beneficial interest in the ABL Collateral Trust) shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of ABL Collateral Trust Assets (other than to the extent any such assets allocable to, or held on account of, Disputed Claims are treated as a disputed ownership fund or other separate taxable entity). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state, local, and non-U.S. income tax purposes.

10.2    Tax Reporting.

(a)    The "taxable year" of the ABL Collateral Trust shall be the "calendar year" as such terms are defined in section 441 of the IRC. The Trustee shall cause the ABL Collateral Trust to file tax returns for the ABL Collateral Trust treating the ABL Collateral Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 10.2 and shall duly and timely file with the IRS annual tax returns on Form 1041. In addition, the ABL Collateral Trust shall duly and timely file such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon out of the ABL Collateral Trust Assets (or the income or proceeds thereof). The Trustee also will annually cause the ABL Collateral Trust to send within seventy-five (75) days after the end of each taxable year to each Beneficiary a Schedule K-1 or other applicable information statement setting forth such holder's share of items of income, gain, loss, deduction or credit (including the receipts and expenditures of the ABL Collateral Trust) as relevant for U.S. federal income tax purposes and will instruct all such Beneficiaries to use such information in preparing their U.S. federal income tax returns; *provided,* that if the ABL Collateral Trust elects to make distributions through an intermediary, it shall provide such Schedule K-1 or statement to such intermediaries for them to provide to such Beneficiaries. The Trustee shall also cause the ABL Collateral Trust to duly and timely file or provide (or cause to be duly and timely filed or provided) any other statement, return or disclosure relating

36

FBG_CH1_00092629

to the ABL Collateral Trust that is required by any Governmental Unit and such other statement, return or disclosure shall be true, correct, and complete.

(b)      Allocations of taxable income of the ABL Collateral Trust among the Beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time, and without regard to any restrictions on distributions set forth in the Plan or this Agreement) if, immediately prior to such deemed distribution, the ABL Collateral Trust had distributed all its assets (valued at their tax book value) to the Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the ABL Collateral Trust.  Similarly, taxable loss of the ABL Collateral Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining ABL Collateral Trust Assets.  The tax book value of the ABL Collateral Trust Assets for purposes of this Section 10.2(b) shall equal their fair market value on the Confirmation Date, adjusted in accordance with tax accounting principles prescribed by the IRC, applicable Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

(c)      The ABL Collateral Trust shall be responsible for payment, out of the ABL Collateral Trust Assets, of any taxes imposed on the ABL Collateral Trust or the ABL Collateral Trust Assets.  More particularly, any taxes imposed on any Disputed Claim Reserve established within the ABL Collateral Trust or its assets will be paid out of the assets of such Disputed Claim Reserve (including any ABL Collateral Trust Assets allocable to, or held on account of, Disputed Claims), and netted against any subsequent distributions in respect of the allowance or disallowance of such Claims.  In the event, and to the extent, any Cash in such Disputed Claim Reserve is insufficient to pay the portion of any taxes attributable to taxable income arising from assets of such Disputed Claim Reserve (including any income that may arise upon an actual or constructive distribution of the assets of the reserve in respect of the resolution of Disputed Claims), assets of such Disputed Claim Reserve (including those otherwise distributable) may be sold to pay such taxes.

10.3   Withholding of Taxes.

(a)      The Trustee shall cause the ABL Collateral Trust to deduct and withhold and timely pay to the appropriate Governmental Unit all amounts required to be deducted or withheld pursuant to the IRC or any provision of any state, local or non-U.S. tax law with respect to any payment or distribution to the Beneficiaries.  Notwithstanding the above, each holder of an Allowed Lender Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution.  All such amounts withheld and paid to the appropriate Governmental Unit shall be treated as amounts distributed to such Beneficiaries for all purposes hereof.

(b)      The ABL Collateral Trust shall be authorized to collect such tax information from the Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order and this Agreement.  As a condition to receive distributions under the Plan, all Beneficiaries may be required to identify themselves to the ABL Collateral Trust and provide tax information and the specifics of their holdings, to the extent the Trustee deems appropriate, including an IRS Form W-9 or, in the case of Beneficiaries that are not United

37

FBG_CH1_00092630

States persons within the meaning of IRC section 7701(a)(30), certification of foreign status on an applicable IRS Form W-8.

(c)    The ABL Collateral Trust may refuse to make a distribution to any Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; *provided, however*, that, (i) upon the delivery of such information by a Beneficiary, the ABL Collateral Trust shall make such distribution to which the Beneficiary is entitled, without interest and (ii) if the ABL Collateral Trust fails to withhold in respect of amounts received or distributable with respect to any such holder and the ABL Collateral Trust is later held liable for the amount of such withholding, such holder shall be required to reimburse the ABL Collateral Trust for such liability, unless such liability arises out of the Trustee's fraud, willful misconduct or gross negligence.  The identification requirements in Section 10.3(b) and this Section 10.3(c) may, in certain cases, extend to holders who hold their claims in street name.  If a Beneficiary fails to comply with such a request for tax information within one hundred eighty (180) days, the Trustee may cause the ABL Collateral Trust to file a document with the Bankruptcy Court, or if the Chapter 11 Cases have been closed or dismissed, post a document on a website / data room maintained by the Registrar, that will provide twenty-one (21) days' notice before such distribution may be deemed an unclaimed distribution and treated in accordance with Section 9.7 of the Plan.

(d)    In the event that the ABL Collateral Trust elects to make distributions through an intermediary, the party who would be the withholding agent with respect to distributions to the Beneficiary under U.S. federal income tax principles shall be responsible for withholding tax compliance with respect to any such distribution, based on instructions on the character of the income from the Trustee.

10.4    Valuation.  The valuation of the ABL Collateral Trust Assets prepared pursuant to Section 2.9 hereof shall be used consistently by all parties (including, without limitation, the ABL Collateral Trust) for all U.S. federal, and applicable state and local, income tax purposes.  The ABL Collateral Trust also shall duly and timely file (or cause to be duly and timely filed) any other statements, returns or disclosures relating to the ABL Collateral Trust that are required by any Governmental Unit and such other statements, returns or disclosures shall be true, correct, and complete.

10.5    Expedited Determination of Taxes.  The Trustee may request an expedited determination of taxes of the ABL Collateral Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the ABL Collateral Trust for all taxable periods through the termination of the ABL Collateral Trust.

10.6    Disputed Ownership Fund Election.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Trustee of a private letter ruling if the Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Trustee), the Trustee may elect to treat any ABL Collateral Trust Assets allocable to, or held on account of, any Disputed Claims as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9 or other separate taxable entity, and shall report consistently therewith for state and local income tax purposes.  All parties (including the Trustee and Beneficiaries) shall report for U.S. federal, state and local income taxes consistently with the foregoing.

10.7    Non-U.S. Tax Matters.  The Trustee shall cause the ABL Collateral Trust to duly comply on a timely basis with all obligations, and satisfy all liabilities, imposed on the

38

DEBTORS' EXHIBIT NO. 178
Page 232 of 360

ABL Collateral Trust under non-U.S. law relating to taxes, interest, penalties, and other amounts. The ABL Collateral Trust shall not distribute the ABL Collateral Trust Assets or proceeds thereof without having first obtained all certificates required to have been obtained under applicable non-U.S. law relating to taxes.

10.8 <u>Tax Cooperation</u>. Prior to entering into any settlement agreement, agreeing to the language of any consent order or agreed judgment, or taking any other action with respect to any estate claim or other material trust matter that could reasonably be expected to affect the U.S. federal income tax consequences to the ABL Collateral Trust or any Beneficiary, including without limitation the characterization of any proceeds or consideration for U.S. federal income tax purposes, the allocation of any settlement consideration among categories of recovery, and any determination regarding the applicability or rate of withholding on distributions to Beneficiaries, the Trustee shall consult in good faith with [ABL Tax Counsel] and shall provide [ABL Tax Counsel] with written notice and a reasonable opportunity to submit written comments, which comments the Trustee shall consider in good faith prior to taking such action. The Trustee's obligation to consult and consider comments in good faith shall not require the Trustee to adopt any particular tax position or to refrain from any action that the Trustee, in the exercise of its duties, determines is in the best interests of the Beneficiaries as a whole.

10.9 <u>Assignment of ABL Collateral Trust Assets</u>. To the extent any ABL Collateral Trust Asset can be validly assigned under applicable law (including applicable provisions of the Internal Revenue Code, Treasury Regulations, and U.S. Customs regulations), the FBG Debtors and their successors shall, at the direction of the ABL Agent and at the ABL Collateral Trust's sole cost and expense (paid in advance), take all commercially reasonable actions to assign such assets to the ABL Collateral Trust, including the execution of any assignment forms, powers of attorney, or other instruments required by the applicable governmental authority. To the extent any such assets cannot be validly assigned under applicable law, the FBG Debtors and their successors shall, to the extent applicable, liquidate such assets at the direction and sole cost and expense of the ABL Collateral Trust (paid in advance), and any proceeds received shall be held in trust for the ABL Collateral Trust and promptly remitted to the ABL Collateral Trust.

10.10 <u>ABL Credit Bidding Rights</u>. Following the foreclosure of the ABL Collateral Trust Assets by the ABL Collateral Trust, the ABL Agent, for itself and on behalf of the ABL Secured Parties, shall have the right, pursuant to section 363(k) of the Bankruptcy Code, to credit bid up to the full amount of the ABL Deficiency Claim (as determined in accordance with Sections 4.6(b) and 8.11(d)(ii) of the Plan) in any sale of any ABL Priority Collateral by the FBG Debtors that has not been foreclosed upon, whether such sale is effectuated through sections 363, 1123, or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

10.11 <u>Postpetition Interest on Oversecured Claims</u>. To the extent the ABL Secured Parties hold Allowed ABL Claims against the FBG Debtors that are oversecured (i.e., the value of the ABL Priority Collateral exceeds the Allowed amount of the ABL Claims), as determined by the Bankruptcy Court, the holders of such Allowed ABL Claims shall be entitled to receive postpetition interest on such Claims at the applicable contractual rate under the ABL Credit Agreement to the extent permitted by section 506(b) of the Bankruptcy Code, which interest shall be paid from the ABL Collateral Trust Assets prior to any turnover of excess proceeds to the DIP Collateral Trust pursuant to Section 7.12 of the Plan.

FBG_CH1_00092632

## ARTICLE XI
## DURATION AND TERMINATION OF ABL COLLATERAL TRUST

11.1    Duration.    Once the ABL Collateral Trust becomes effective upon the Confirmation Date of the Plan, the ABL Collateral Trust and this Agreement shall remain and continue in full force and effect until the ABL Collateral Trust is terminated in accordance with the terms hereof.

11.2    Termination.    The ABL Collateral Trust shall dissolve and be wound up at such time as the ABL Collateral Trust has (i) paid all costs, expenses and other obligations incurred in connection with the administration of the ABL Collateral Trust including all ABL Collateral Trust Expenses, (ii) liquidated or abandoned all ABL Collateral Trust Assets, (iii) distributed all distributions required to be made by the ABL Collateral Trust under the Plan including all ABL Collateral Trust Proceeds, and (iv) turned over to the ABL Collateral Trust any proceeds of the ABL Collateral Trust Assets in excess of the Allowed amount of the ABL Claims; provided, however, that in no event shall the Termination Date be later than [five (5)] years from the date the ABL Collateral Trust is established unless the Bankruptcy Court, upon motion made within the six (6) month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made within the six (6) month period before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the Internal Revenue Service or an opinion of counsel satisfactory to the Trustee that any further extension would not adversely affect the status of the ABL Collateral Trust as a "liquidating trust" for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the ABL Collateral Trust Assets. Notwithstanding the foregoing, if at any time the Trustee determines, in reliance upon the advice of the ABL Collateral Trust Professionals (or any one or more of them), that the expense of administering the ABL Collateral Trust so as to make a final distribution to the Beneficiaries is likely to exceed the value of the ABL Collateral Trust Assets then remaining in the ABL Collateral Trust, the Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the ABL Collateral Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from U.S. federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC and (D) that is unrelated to the Debtors, the ABL Collateral Trust, the Trustee, [the Delaware Trustee,] any ABL Collateral Trust Professionals and any insider of any of the foregoing and (iii) wind up the ABL Collateral Trust (all of the foregoing actions in clauses (i) through (iii) being referred to as the "Winding Up Process"). Such date upon which the ABL Collateral Trust shall finally be wound up shall be referred to herein as the "Termination Date." The ABL Collateral Trust may not be terminated and dissolved at any time by the Beneficiaries. Notwithstanding anything to the contrary contained in this Agreement, the existence of the ABL Collateral Trust as a separate legal entity shall continue until the filing of a Certificate of Cancellation with the Secretary of State of the State of Delaware. A certified copy of the Certificate of Cancellation shall be given to the Delaware Trustee for its records promptly following such filing.

11.3    Continuance of ABL Collateral Trust for Winding Up.    During the Winding Up Process and solely for the purpose of liquidating and winding up the affairs of the ABL Collateral Trust, the Trustee and the Delaware Trustee shall continue to act as such until their duties have been fully performed. During the Winding Up Process, the Trustee shall continue to be entitled to receive the Trustee Fees called for by Section 6.2(b) hereof and subject to

40

FBG_CH1_00092633

Section 2.5 hereof and the Delaware Trustee shall be entitled to all fees hereunder. Upon distribution of all ABL Collateral Trust Assets, the Trustee shall retain the books, records and files that shall have been delivered or created in connection with the administration of the ABL Collateral Trust to the extent not otherwise required to be handled by the Trustee in accordance with Section 5.9 hereof. At the Trustee's discretion, but subject in all cases to Section 5.9 hereof, all of such records and documents may be destroyed no earlier than two (2) years following the Termination Date as the Trustee deems appropriate (unless such records and documents are necessary to fulfill the Trustee's obligations hereunder). Except as otherwise specifically provided herein, upon the Termination Date, the Trustee and the ABL Collateral Trust Professionals shall be deemed discharged and have no further duties or obligations hereunder, except to account to the Beneficiaries as provided herein, the ABL Collateral Trust Interests shall be cancelled, and the ABL Collateral Trust will be terminated. In connection with the foregoing, upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee and the ABL Collateral Trust and Trustee's employees, professionals, and agents of any further duties, discharging and releasing the Trustee and their employees, professionals, and agents from all liability related to the ABL Collateral Trust.

## ARTICLE XII
## AMENDMENT AND WAIVER

12.1    Subject to Sections 12.2 and 12.3 hereof, the Trustee may amend, supplement or waive any provision hereof with the consent of the ABL Agent or by order of the Bankruptcy Court. Subject to Sections 12.2 and 12.3, technical amendments, including but not limited to corrections to ministerial errors, to this Agreement may be made, as necessary to clarify this Agreement or enable the Trustee to effectuate the terms hereof, by the Trustee with prior written notice to the ABL Agent.

12.2    Notwithstanding Section 12.1 hereof, no amendment, supplement or waiver of or to this Agreement shall (a) adversely affect the interests, rights or treatment of the Beneficiaries or the Lenders under the Plan or the Confirmation Order, (b) adversely affect the payments and/or distributions to be made under the Plan (including in respect of Section 7.4(a)(iv) of the Plan), the Confirmation Order or this Agreement, (c) amend Sections 2.1(h) or 5.2(b) hereof, (d) be inconsistent with the Plan or the Confirmation Order, (e) adversely affect the U.S. federal income tax status of the ABL Collateral Trust as a "liquidating trust" or (f) be inconsistent with the purpose and intention of the ABL Collateral Trust to liquidate in an expeditious but orderly manner the ABL Collateral Trust Assets in accordance with Treasury Regulation section 301.7701-4(d).

12.3    No failure by the ABL Collateral Trust, the Trustee, [the Delaware Trustee,] or the ABL Agent to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1    Recitals. The Recitals are incorporated into and made terms hereof.

13.2    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without reference to principles of conflicts of law that would require or permit application of the law of another jurisdiction); PROVIDED,

41

FBG_CH1_00092634

HOWEVER, THAT THE PARTIES HERETO AND THE BENEFICIARIES INTEND THAT THE PROVISIONS HEREOF SHALL CONTROL OVER ANY CONTRARY OR LIMITING STATUTORY OR COMMON LAW OF THE STATE OF DELAWARE (OTHER THAN THE DELAWARE STATUTORY TRUST ACT) AND THAT, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THERE SHALL NOT BE APPLICABLE TO THE ABL COLLATERAL TRUST, THE TRUSTEE, THE DELAWARE TRUSTEE, ABL COLLATERAL TRUST BENEFICIARIES, OR THIS AGREEMENT ANY PROVISION OF THE LAWS (STATUTORY OR COMMON) OF THE STATE OF DELAWARE (OTHER THAN THE DELAWARE STATUTORY TRUST ACT) PERTAINING TO TRUSTS WHICH RELATE TO OR REGULATE IN A MANNER INCONSISTENT WITH THE TERMS HEREOF, INCLUDING: (A) THE FILING WITH ANY COURT OR GOVERNMENTAL BODY OR AGENCY OF TRUSTEE ACCOUNTS OR SCHEDULES OF TRUSTEE FEES AND CHARGES, (B) AFFIRMATIVE REQUIREMENTS TO POST BONDS FOR TRUSTEES, OFFICERS, AGENTS, OR EMPLOYEES OF A TRUST, (C) THE NECESSITY FOR OBTAINING COURT OR OTHER GOVERNMENTAL APPROVAL CONCERNING THE ACQUISITION, HOLDING OR DISPOSITION OF REAL OR PERSONAL PROPERTY, (D) FEES OR OTHER SUMS PAYABLE TO TRUSTEES, OFFICERS, AGENTS OR EMPLOYEES OF A TRUST, (E) THE ALLOCATION OF RECEIPTS AND EXPENDITURES TO INCOME OR PRINCIPAL, (F) RESTRICTIONS OR LIMITATIONS ON THE PERMISSIBLE NATURE, AMOUNT OR CONCENTRATION OF TRUST INVESTMENTS OR REQUIREMENTS RELATING TO THE TITLING, STORAGE OR OTHER MANNER OF HOLDING OF TRUST ASSETS, (G) THE EXISTENCE OF RIGHTS OR INTERESTS (BENEFICIAL OR OTHERWISE) IN TRUST ASSETS, (H) THE ABILITY OF BENEFICIAL OWNERS OR OTHER PERSONS TO TERMINATE OR DISSOLVE A TRUST, OR (I) THE ESTABLISHMENT OF FIDUCIARY OR OTHER STANDARDS OR RESPONSIBILITIES OR LIMITATIONS ON THE ACTS OR POWERS OF TRUSTEES OR BENEFICIAL OWNERS THAT ARE INCONSISTENT WITH THE LIMITATIONS ON LIABILITY OR AUTHORITIES AND POWERS OF THE ABL COLLATERAL TRUSTEE, DELAWARE TRUSTEE, OR THE ABL COLLATERAL TRUST BENEFICIARIES SET FORTH OR REFERENCED IN THIS AGREEMENT.

13.3    Jurisdiction.  Subject to the proviso below and so long as the Chapter 11 Cases have not been closed or dismissed, the Parties agree that the Bankruptcy Court shall have jurisdiction over the ABL Collateral Trust, the Trustee and the Delaware Trustee and the ABL Collateral Trust Assets including, without limitation, the administration and activities of the ABL Collateral Trust and the Trustee and the Delaware Trustee and any disputes arising out of or related to administration of the ABL Collateral Trust to the fullest extent permitted by law. Each Party hereby irrevocably consents to the jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision hereof or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Until the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision hereof will be brought only in the Bankruptcy Court; *provided*, *however*, that in the event that the Bankruptcy Court does not have jurisdiction pursuant to the foregoing provision, including after the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision hereof will be brought in either a state or federal court of competent jurisdiction in the city of Wilmington in the state of Delaware (without prejudice to the right of any Party to seek to reopen the Chapter 11 Cases to hear matters with respect to this Agreement). Each Party hereby

42

DEBTORS' EXHIBIT NO. 178
Page 236 of 360

irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret, or construe any provision hereof. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions hereof shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

13.4    Severability. In the event any term, provision, covenant or restriction contained in this Agreement or the application thereof to any person or circumstances shall be determined by Final Order to be invalid, void, unenforceable or against its regulatory policy, to any extent, the remainder hereof or the application of such provision to Persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision hereof shall remain in full force and effect, shall be valid and enforceable to the fullest extent permitted by law and shall in no way be affected, impaired or invalidated.

13.5    Notices. Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile or electronic communication, sent by nationally recognized overnight delivery service or mailed by first-class mail. The date of receipt of such notice shall be the earliest of (a) the date of actual receipt by the receiving party, (b) the date of personal delivery (or refusal upon presentation for delivery), (c) the date of the transmission confirmation or (d) three (3) Business Days after service by first-class mail, to the receiving party's below address(es):

(i)      if to the Trustee, to:

[Bank of America, N.A.]
[Address]
[City, State, Zip]
Attn: []
Email: []

(ii)     [If to the Delaware Trustee, to:]

[NAME]
[ADDRESS]
[Attn: ]
[Email: ]

(iii)    if to any Beneficiary, to the last known address of such Beneficiary according to the Trustee's records;

(iv)     if to the Debtors, to:

First Brands Group Holdings, LLC
127 Public Square, Suite 5300
Cleveland, Ohio 44114

43

FBG_CH1_00092636

DEBTORS' EXHIBIT NO. 178
Page 237 of 360

Attn: Charles M. Moore, Chief Executive Officer
Email: cmoore@alvarezandmarsal.com


and

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Matthew S. Barr, Sunny Singh, Andriana Georgallas, Kevin
Bostel, Jason H. George
Email: matt.barr@weil.com, sunny.singh@weil.com,
andriana.georgallas@weil.com, kevin.bostel@weil.com,
jason.george@weil.com


(v)     If to the ABL Secured Parties, to:
Winston Taylor LLP
300  N. LaSalle Drive
Suite 440
Chicago, IL 60654
Attn: Daniel J. McGuire
Jason Bennett
Email: dan.mcguire@winstontaylor.com
jason.bennett@winstontaylor.com

or to such other address as may from time to time be provided in written notice by the ABL Collateral Trust.

13.6    Interpretation; Headings.  The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation hereof or of any term or provision hereof.

13.7    Plan and Confirmation Order.  The principal purpose hereof is to aid in the implementation of the Plan and the Confirmation Order and, therefore, this Agreement incorporates the Plan and the Confirmation Order by reference and is subject to the provisions of the Plan and the Confirmation Order.  To that end, the Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan or the Confirmation Order, to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and the Confirmation Order that directly affect the interests of the ABL Collateral Trust, and to seek any orders from the Bankruptcy Court solely in furtherance hereof.  In the event of any direct conflict or inconsistency between any provision hereof, on the one hand, and the provisions of the Plan or the Confirmation Order, on the other hand, the provisions of the Plan and the Confirmation Order shall govern and control in all respects (unless stated otherwise in the Plan or in the Confirmation Order).

13.8    Entire Agreement.  This Agreement and the exhibits attached hereto, together with the Plan and the Confirmation Order, contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

44

FBG_CH1_00092637

13.9    Cumulative Rights and Remedies. The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity, subject to any limitations provided under the Plan and the Confirmation Order.

13.10    Meanings of Other Terms. Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities. All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan, the Confirmation Order or provisions of the Bankruptcy Code, the Bankruptcy Rules or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions hereof and the words "herein," "hereof" or "herewith" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision hereof. The term "including" shall mean "including, without limitation." All references herein to specific provisions of the Plan or the Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or the Confirmation Order. All references to the ABL Collateral Trust shall include the Trustee acting on behalf of the ABL Collateral Trust.

13.11    Successors in Interest. This Agreement shall be binding upon and inure to the benefit of any successor in interest to any one or more of the FBG Debtors (as limited by the Plan and the Confirmation Order), that shall, upon becoming any such successor be subject to and obligated to comply with the terms and conditions hereof. The obligations of the ABL Collateral Trust and Trustee to any one or more of the FBG Debtors pursuant to this Agreement shall also be obligations of the ABL Collateral Trust and Trustee to any such successor in interest. For the avoidance of doubt, in the event that any Person becomes a successor in interest to a Debtor, the claims, privileges, books and records and directors, officers, employees, agents and professionals of such Person, to the extent not otherwise subject to the provisions and requirements hereof prior to such Person becoming a successor in interest to the applicable Debtor, shall not become subject to the provisions and requirements hereof solely because such Person becomes a successor in interest to the applicable Debtor.

13.12    Limitations. Except as otherwise specifically provided in this Agreement, the Plan, or the Confirmation Order nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto any rights or remedies under or by reason hereof. The parties hereby acknowledge and agree that nothing herein is intended to, does, or shall be construed to prejudice or harm in any way the rights, remedies or treatment (including any releases, exculpation, indemnification, or otherwise) of any Released Party or Exculpated Party, solely in their capacity as a Released Party or Exculpated Party, under the Plan.

13.13    Execution. All funds in the ABL Collateral Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the ABL Collateral Trust Assets or the Trustee in any manner or compel payment from the ABL Collateral Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan, the Confirmation Order and this Agreement.

13.14    No Waiver. No failure or delay of any Person to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

13.15    Further Assurances. From and after the Confirmation Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such

45

FBG_CH1_00092638

further actions as may reasonably be required from time to time to carry out the intent and purposes hereof, and to consummate the transactions contemplated hereby.

13.16   Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument.  A facsimile or electronic mail signature of any Party shall be considered to have the same binding legal effect as an original signature.

13.17   Authority.  Each Party hereby represents and warrants to the other Parties that: (i) such Party has full corporate power and authority to enter into this Agreement, to carry out its obligations hereunder and to consummate the transactions contemplated hereby; (ii) the execution and delivery by such Party hereof and the performance by such Party of its obligations hereunder have been duly authorized by all requisite corporate action on the part of such Party; (iii) this Agreement has been duly executed and delivered by such Party, and (assuming due authorization, execution and delivery by the other Parties hereto) this Agreement constitutes a legal, valid and binding obligation of such Party enforceable against such Party in accordance with its terms.

*     *     *     *     *

FBG_CH1_00092639

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

[BANK OF AMERICA, N.A.], AS TRUSTEE OF THE FIRST BRANDS ABL COLLATERAL TRUST

By: _____

[Signature Page to First Brands ABL Collateral Trust Agreement]

FBG_CH1_00092640

**DEBTORS' EXHIBIT NO. 178**
**Page 241 of 360**

<u>**EXHIBIT A**</u>

**Form of Certificate of Trust of First Brands ABL Collateral Trust**

FBG_CH1_00092641

## CERTIFICATE OF TRUST
## OF
## FIRST BRANDS ABL COLLATERAL TRUST

This Certificate of First Brands ABL Collateral Trust (the "Trust") has been duly executed and is being filed by the undersigned, as the trustees of the Trust, to form a statutory trust pursuant to the Delaware Statutory Trust Act (12 Del. C. §§ 3801, *et seq.*).

1.    *Name.* The name of the statutory trust formed hereby is First Brands ABL Collateral Trust.

2.    *Delaware Trustee.* The name and address of the trustee of the Trust with a principal place of business in the State of Delaware is Wilmington Savings Fund Society, FSB, [•].

3.    *Effective Date.* This Certificate of Trust shall become effective upon filing in the Office of the Secretary of State of the State of Delaware.

IN WITNESS WHEREOF, the undersigned have executed this Certificate of Trust as of [_____], 2026.

[ ], not in its individual capacity but solely as Delaware Trustee

By: _____
_____

Name: [ ]_____
Title: [ ]_____
          [ ]_____

[Bank of America, N.A.], not in its individual capacity but solely as Trustee

By: _____
_____

FBG_CH1_00092642

**<u>EXHIBIT B</u>**

**[Reserved]**

FBG_CH1_00092643

## EXHIBIT C

**Compensation of Trustee**

**[To be determined.]**

FBG_CH1_00092644

## EXHIBIT D

## ABL Collateral Trust Assets

FBG_CH1_00092645

## EXHIBIT D

### List of ABL Collateral Trust Assets[1]

The list of ABL Collateral Trust Assets is set forth below, provided that (i) any asset, claim, right, or proceeds that the ABL Agent asserts constitutes ABL Priority Collateral shall be preserved for the ABL Collateral Trust pending entry of a Final Order, settlement, or other agreed resolution; (ii) no asset, claim, right, or proceeds shall be excluded from ABL Collateral Trust Assets solely because the Litigation Trust, DIP Collateral Trust, any Factor, any SPV Lender, any SPV Debtor, the DIP Secured Parties, or any other Person asserts an adverse claim thereto; (iii) in no event shall any assets that are determined by Final Order to constitute Litigation Trust Assets or DIP Collateral Trust Assets be considered ABL Collateral Trust Assets; (iv) ABL Collateral Trust Assets shall not include any assets that are determined by Final Order to be (a) property of the SPV Debtors or their Estates, any of the Factors, or any of the SPV Lenders, or (b) subject to a validly perfected first-priority Lien asserted by a Factor, the SPV Lenders, or the DIP Secured Parties; and (v) any disputes as to whether an asset is a Litigation Trust Asset, DIP Collateral Trust Asset, or ABL Collateral Trust Asset shall be resolved as provided in Section 5.2(j) of the Plan. Assets listed on this Exhibit are not necessarily free from a bona fide dispute and, if subject to a bona fide dispute, remain subject to the terms of Section 5.2(j) of the Plan. If an asset listed on this Exhibit is determined to be the property of the DIP Collateral Trust or the Litigation Trust, it shall promptly be transferred to the corresponding trust pursuant to the terms of the Plan. Failure to list a disputed asset shall not limit such asset's inclusion in the ABL Collateral Trust in accordance with the Plan. The inclusion of any asset in this Exhibit shall not constitute an admission by any Debtor, the Ad Hoc Group or the Creditors Committee that any asset constitutes an ABL Collateral Trust Asset not subject to a bona fide dispute.

1.  All Inventory of the FBG Debtors constituting ABL Priority Collateral, whether now owned or hereafter acquired and wherever located, including, without limitation, Inventory in transit, returned goods, raw materials, work-in-process, finished goods, Inventory held by vendors, warehousemen, bailees, customers, or other third parties, and Inventory located at the following addresses:
    i.    59756 Market Street, South Bend, IN, USA
    ii.   310 Ellis Street, Stryker, OH, USA
    iii.  1900 East Jefferson Street, Warsaw, IN, USA
    iv.   705 North Fayette Street, Fayette, OH, USA
    v.    400 East Middle Street, Hanover, PA, USA
    vi.   1840 McCullough Street, Lima, OH, USA
    vii.  230 East Walnut Street, Albion, IL, USA
    viii. 285 East Walnut Street, Albion, IL, USA
    ix.   810 Leininger Road, Fairfield, IL, USA
    x.    51180 Celeste Drive, Shelby Township, MI, USA

---

[1] Each capitalized term that is used but not defined herein has the meaning ascribed to it in the ABL Collateral Trust Agreement to which this Exhibit D is attached, the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3019) (as amended, supplemented or otherwise modified from time to time, the "**Plan**"), the Confirmation Order (as defined in the Plan), or the ABL Credit Agreement (as defined in the Plan), as applicable.

FBG_CH1_00092646

    xi.    1010 West 1st Avenue, Jasper, IN, USA
    xii.    1055 West 1st Avenue, Jasper, IN, USA
    xiii.    1093 West 1st Avenue, Jasper, IN, USA
    xiv.    2705 Quality Lane, Brownsville, TX, USA
    xv.    1835 Airport Exchange Boulevard, Erlanger, KY, USA
    xvi.    3569 East Central Avenue, Fresno, CA, USA
    xvii.    13845 Alvarez Road, Suite 100, Jacksonville, FL, USA
    xviii.    423 Bank Street, Suite 140, Southlake, TX, USA
    xix.    2400 G Street NW, Miami, OK, USA
    xx.    515 East Gypsy Lane, Bowling Green, OH, USA
    xxi.    645 Trailview Court, Building 2, Units 7, 8 and 9, Waterford, WI 53185, USA
    xxii.    1990 Billy Mitchell Boulevard, Brownsville, TX, USA
    xxiii.    2500 Courage Boulevard, Brownsville, TX, USA
    xxiv.    6242 Garfield Avenue, Cass City, MI, USA
    xxv.    5141 36th Street SE, Grand Rapids, MI, USA

2. All Accounts and accounts receivable of the FBG Debtors constituting ABL Priority Collateral, whether arising prepetition or postpetition, including all related rights to payment, collections, lockbox proceeds, payment-card receivables, rebates, chargebacks, deductions, offsets, Supporting Obligations, and proceeds; provided that, to the extent any such asset cannot be transferred to the ABL Collateral Trust or a subsidiary thereof pursuant to applicable law, the FBG Debtors' economic rights, beneficial interests, and proceeds thereof shall be preserved for, and transferred or assigned to, the ABL Collateral Trust to the maximum extent permitted by applicable law.

3. All Deposit Accounts, Securities Accounts, Commodity Accounts, collection accounts, lockboxes, cash, Money, cash equivalents, Financial Assets, Securities Entitlements, and other assets contained in or credited to any of the foregoing, in each case to the extent constituting ABL Priority Collateral or proceeds of ABL Priority Collateral, including, without limitation:
    i.    "ABL Escrow" from Ford, Stellantis and other OEM collections and Walbro proceeds
    ii.    "Hilco Escrow" from accounts receivable collection and inventory sales by Hilco
    iii.    "Debtor Restricted Cash" from prepetition accounts receivable, post-petition accounts receivable, Evolution adequate protection, unapplied receipts and other sources
    iv.    "Debtor Escrow" from tariff refunds and OEM inventory diminution

4. All refunds, rebates, credits, claims, Causes of Action, rights to payment, and proceeds in respect of tariffs, duties, and other governmental charges, including refunds pursuant to the International Emergency Economic Powers Act and the proceeds thereof, and all income tax refunds, corporate tax refunds, net operating loss-related refunds, net operating loss carryback-related refunds, and other tax refunds of any kind, including any tax refund arising from or attributable to any net operating loss, net operating loss carryback, or other tax attribute of any FBG Debtor or any entity in which an FBG Debtor holds an interest,

2

FBG_CH1_00092647

regardless of whether such net operating loss or tax attribute is itself classified as Term Priority Collateral.

5.  Rights, title, and interests of the holders of ABL Deficiency Claims in respect of any amounts or proceeds to be realized on account of such ABL Deficiency Claims (which rights, title, and interests are contributed to the ABL Collateral Trust pursuant to Section 4.6(b) of the Plan by holders of ABL Deficiency Claims and are not assets of the FBG Debtors transferred in connection with the foreclosure upon the ABL Collateral Trust Assets of the FBG Debtors).

6.  Any amounts in the Factored Receivables Account that are determined by a Final Order to be property of an FBG Debtor's Estate, but excluding any amounts in the Factored Receivables Account that the Bankruptcy Court determines by a Final Order that a Factor has a validly perfected first-priority security interest in such amounts.

7.  The ABL Reserved Claims.

8.  All Insurance Rights of the FBG Debtors in respect of ABL Priority Collateral, including, without limitation, 50% of any business interruption insurance, all rights to credit insurance with respect to Accounts, and all insurance policies and proceeds to the extent evidencing, governing, securing, or otherwise relating to ABL Priority Collateral, in each case regardless of whether the ABL Collateral Agent is named as loss payee.

9.  All other ABL Priority Collateral for which, on the date the ABL Collateral Trust is established, (x) no bona fide dispute exists as to whether the ABL Secured Parties have a validly perfected first-priority Lien on such collateral, senior in lien priority to the Liens securing the DIP Claims, or (y) if such a bona fide dispute exists, it is subsequently determined by a court of competent jurisdiction pursuant to a Final Order or settlement that the ABL Secured Parties have a validly perfected first-priority Lien on such collateral, senior in lien priority to the Liens securing the DIP Claims.

FBG_CH1_00092648

**Exhibit 8**

**Schedule of Specified Non-Released Parties**

FBG_CH1_00092649

Schedule[1]
Specified Non-Released Parties[2]

1.      10302 Madison Avenue, LLC
2.      16533 Chillicothe Road LLC
3.      16590 Munn Road, LLC
4.      300 MPH Acres, LLC
5.      304 W Avenue 44, LLC
6.      705 North Fayette Street, LLC
7.      Aequum Capital Financial II LLC
8.      Albion Realty (Delaware LLC)
9.      Alester (Delaware LLC)
10.     Alester Technologies Holdings, LLC
11.     Archwood Group LLC
12.     Archwood Group Member LLC
13.     ASC (Beijing) Consulting (Holding) Company Limited
14.     ASC (Tianjin) Auto Parts Inc.
15.     ASC (Tianjin) Water Pump Co., Ltd.
16.     ASC Tianjin (Holdings) Company Limited
17.     Asilia (Utah LLC)
18.     Atlantic Oceanview LLC
19.     Atlantic Oceanview Member
20.     Auto Electricos de Mexico SAPI de CV
21.     Auto-Electricos de Mexico S.A.P.l. de C.V. (Mexico)
22.     Autoparts Holdings (Luxembourg) I s.a.r.l.
23.     Autoparts Holdings (Luxembourg) s.a.r.l.
24.     Bank ABC
25.     Battery Park (Delaware LLC)
26.     BDO USA, P.C.
27.     Bleecker Belgium BV
28.     Bleecker Group Holdings, LLC
29.     Bleecker Group, LLC
30.     Bond Street Asset Management, LLC
31.     Bond Street Financing, LLC
32.     Bowery Finance Holdings, LLC

---

[1] Pursuant to the Plan, the following is a non-exhaustive list of Specified Non-Released Parties. For the avoidance of doubt, if a Person is not included in the list of Specified Non-Released Parties, it does not mean such Person is receiving a release under the Plan or qualifies as a Released Party.

[2] This Schedule does not provide an exhaustive list of Parties that meet the definition of Adverse Conduct under the Plan, some of which will only meet the definition following entry of a Final Order. Pursuant to the Plan, including, but not limited to, Section 6.11 thereof, even if a Party is not included in this non-exhaustive Schedule of Specified Non-Released Parties, the Litigation Trust may still have Estate Claims against such Party that can be pursued by the Litigation Trust and are not released under the Plan.

FBG_CH1_00092650

33. Bowery Finance II  Holdings, LLC
34. Bowery Finance II, LLC
35. Bowery Finance III, LLC
36. Bowery Receivables I Holdings, LLC
37. Bowery Receivables I, LLC
38. Bowery Receivables II Holdings, LLC
39. Bowery Receivables II, LLC
40. Bowery Receivables, LLC
41. BPI Brake Manufacturing Juarez SA de CV
42. BPI Brake Manufacturing Juarez, S.A. de C.V. (Mexico)
43. BPI Braking Systems (Qingdao) Co., Ltd
44. BPI Braking Systems (Qingdao) Co., Ltd. (China)
45. BPI Braking Systems Mexico SA de CV
46. BPI Braking Systems Mexico, S.A. de C.V. (Mexico)
47. BPI Distribution Mexico S.A. de C.V. (Mexico)
48. BPI Distribution Mexico SA de CV
49. Brake Parts Inc Hong Kong Limited
50. Brake Parts Inc Hong Kong Limited (Hong Kong)
51. Brake Parts Inc Investment Limited
52. Brake Parts Inc Investment Limited (Hong Kong)
53. Brake Parts India Private Limited
54. Brake Parts India Private Limited (India)
55. Branzino Acquisition Vehicle, Inc.
56. Broad Street Financial Holdings, LLC
57. Broad Street Financial, LLC
58. Broad Street Inventory Holdings, LLC
59. Broad Street Inventory, LLC
60. Calico Properties LLC
61. Cardone de Mexico, S de R.L. de C.V.
62. Cardone de Mexico, S de R.L. de C.V. (Mexico)
63. Cardone Industries ULC
64. Cardone Industries ULC (Canada, Nova Scotia)
65. Carnaby Capital GmbH
66. Carnaby Capital Holdings, LLC
67. Carnaby Capital, LLC
68. Carnaby Cargo Holdings, LLC
69. Carnaby Cargo, LLC
70. Carnaby FA Holdings, LLC
71. Carnaby FA, LLC
72. Carnaby Inventory Holdings I, LLC
73. Carnaby Inventory Holdings II, LLC
74. Carnaby Inventory Holdings III, LLC
75. Carnaby Inventory Holdings IV, LLC
76. Carnaby Inventory Holdings V, LLC
77. Carnaby Inventory Holdings VI, LLC
78. Carnaby Inventory I, LLC

2

FBG_CH1_00092651

79.     Carnaby Inventory II, LLC
80.     Carnaby Inventory III, LLC
81.     Carnaby Inventory IV, LLC
82.     Carnaby Inventory V, LLC
83.     Carnaby Inventory VI, LLC
84.     CarVal Contingent Credit Fund LP
85.     CarVal GCF Master Fund I LP
86.     Centurion Packaging, LLC
87.     Cequent Towing Products of Canada Ltd.
88.     Chaucer Financial LLC
89.     CI Supply, LLC
90.     Clerestory Collaborative LLC
91.     CNBY MX, S.A.
92.     Coral Dunes LLC (Delaware LLC)
93.     Crenshaw Capital Holdings, LLC
94.     Crenshaw Capital, LLC
95.     Crowne Group Holdings, LLC
96.     Crowne Group, LLC
97.     CVI AA Master Fund I LP
98.     CVI AV Master Fund I LP
99.     CVI CSF Master Fund I LP
100.    CVI CVF V Pooling Fund I LP
101.    CVI EMCOF US LLC
102.    Dale P. Holt
103.    Dragon Acquisition Corp, LLC
104.    Dynamic Motion Components, LLC
105.    Eagle Casting Holdings, LLC
106.    Edward James
107.    Evolution Credit Opportunity Master Fund II-B, L.P
108.    Evolution Credit Opportunity Master Fund III-B, L.P.,
109.    Executive American Mortgage Company Holdings,  LLC
110.    Executive American Mortgage Company,  LLC
111.    Family Office Lease, LLC
112.    Fenyes Engineered Technology Private Limited (India)
113.    Filtros Champion Laboratories, S. de R.L. de C.V.
114.    Filtros Champion Sales de Mexico, S. de R.L. de C.V.
115.    FRAM Filtration Operations Mexico, S.A. de C.V.
116.    FRAM Group Canada, Inc.
117.    FRAM Group Holdings Mexico, S.A. de C.V.
118.    FRAM Group Operations Mexicali, S.A. de C.V.
119.    FRAM Group Operations Mexico City
120.    FRAM Group Services Mexico S.A., de C.V.
121.    FRAM Group Trading (Shanghai) Co., Ltd.
122.    Geauga Management Group, LLC
123.    General Store Productions LLC
124.    Global Assets GmbH

3

FBG_CH1_00092652

125.   Global Assets LLC
126.   Global Lease Assets Holdings, LLC
127.   Global Lease Assets, LLC
128.   Hanover Realty Holdings, LLC
129.   Hanover Realty, LLC
130.   HARAS de TOUT L'OR L.L.C.
131.   Helios Credit Opportunity Fund I
132.   Helios Credit Opportunity Fund II
133.   Helios Strategic Advisors, LLC[3]
134.   Holt Investments (Utah LLC)
135.   Hopkins Canada, Inc.
136.   Hopkins Manufacturing de Mexico S. De R.L. de C.V.
137.   IBI Auto Components (Shanghai) Co., Ltd.
138.   IBI Auto Components (Shanghai) Co., Ltd. (China)
139.   IBI Latin America, S De RI de CV (Mexico)
140.   IBI Latin America, S. de R.L. de C.V.
141.   Ignite Acquisition Holdings, LLC
142.   Ignite Acquisition Sub, LLC
143.   ING Belgium S.A./N.V.
144.   ITS Traffic Systems
145.   JA Gardner (Utah LLC)
146.   JCMC (Delaware LLC)
147.   Jefferies Financial Group, Inc.
148.   Jonathan Gardner
149.   Joshua Tree (Utah LLC)
150.   Justin Nielsen
151.   Katsumi Servicing, LLC
152.   LAM TFG I SPV LLC
153.   LAM Trade Finance Group LLC
154.   Larchmont (Ohio LLC)
155.   Leucadia Asset Management LLC
156.   Longkou Haimeng Machinery Co., LTD.
157.   Mayfair Enterprises, LLC
158.   Mayfair Inventory Holdings LLC
159.   Mayfair Inventory LLC
160.   Michael Baker
161.   New Dalton Holdings Corporation
162.   NextProcess
163.   Nielsen Investments (Utah LLC)
164.   Onset (Utah Corp.)
165.   Optimus (Delaware LLC)
166.   PAC Racing Springs – South LLC
167.   Patrick James
168.   Patrick James Trust

---

[3] Including any and all principals of Helios Strategic Advisors, LLC.

FBG_CH1_00092653

169. Patterson Inventory Holdings, LLC
170. Patterson Inventory, LLC
171. Pegasus Aviation (Delaware LLC)
172. Peter Andrew Brumbergs
173. Peterson American Corporation
174. Peterson Spring of Canada Limited
175. PJ Management Group, LLC
176. Point Bonita Capital Division (of LAM LLC)
177. Pylon Automotive Mexico S. de R.L. de C.V.
178. Python Acquisition Holdings, LLC
179. Python Acquisition Sub, LLC
180. Resortes y Productos Metálicos S. DE R.L. DE C.V.
181. RTE Acquisition Holdings, Ltd.
182. RTE Parent, LLC
183. SA Eagle Holdings, LLC
184. Sandor Foundation
185. SC Collateral Finance LLC
186. Scott Miller
187. Securus Insurance Holdings , LLC
188. Securus Insurance, LLC
189. Seddie LLC (Utah LLC)
190. Shanghai BPI Trading Co., Ltd (China)
191. Shine Acquisition Co., LLC
192. Spartacus Shipping Co, LLC
193. Spartacus Shipping, LLC
194. Starlight Inventory Holdings I, LLC
195. Starlight Inventory Holdings II, LLC
196. Starlight Inventory Holdings III, LLC
197. Starlight Inventory I, LLC
198. Starlight Inventory II, LLC
199. Starlight Inventory III, LLC
200. Stephen Graham
201. Strategic Global Co LLC
202. Subensambles Internacionales S de R
203. Talleres Mecanicos Montserrat, S.A. de C.V.
204. The 9 Leases, LLC
205. The Garden Street Group, Inc.
206. Todd Pedersen
207. Toledo Molding de Mexico SRL de CV
208. Trico Anco Distribución de México S. de R. L. de C. V.
209. Trico Componentes S.A. De C.V.
210. Trico Distribuidora de Mexico, S.A. de C.V.
211. Trico RO S.R.L.
212. Tridonex, S de R.L. de C.V.
213. Tridonex, S de R.L. de C.V. (Mexico)
214. TS Holdings I, LLC

FBG_CH1_00092654

215.   Tulip Transportation, LLC
216.   UCI (Beijing) Consulting Company, Ltd.
217.   UMB Bank, N.A.
218.   VCAA Holdings LLC
219.   VCAA, LLC
220.   VERCYFi
221.   VICEROY ACQUISITION HOLDINGS, LLC
222.   VICEROY ACQUISITION OPS, LLC
223.   VICEROY HOLDINGS I, LLC
224.   VICEROY HOLDINGS II, LLC
225.   VICEROY HOLDINGS III, LLC
226.   VICEROY HOLDINGS IV, LLC
227.   VICEROY INVENTORY FINANCE, LLC
228.   VICEROY IP FINANCE, LLC
229.   Viceroy Logistics, LLC
230.   VICEROY RECEIVABLES FINANCE, LLC
231.   Viceroy Transportation, LLC
232.   Walbro (Thailand) Co., Ltd.
233.   Walbro (Tianjin) Industries Co. Ltd.
234.   Walbro Co., Ltd.
235.   Walbro Fuel Systems and Technology (Thailand) Co. Ltd.
236.   Walbro International Holding B.V.
237.   Walbro Italy S.r.l.
238.   Walbro Suisse Group GmbH
239.   Weekend RE Holdings, LLC
240.   Willow Rock Farm LLC
241.   Young at Heart Entertainment LLC
242.   Yuma (Delaware LLC)
243.   Each Affiliate (as such term is defined in 11 U.S.C. § 101(2)) of an FBG Debtor that is not specifically identified as a Released Party, other than the FBG Debtors themselves, shall be deemed a Specified Non-Released Party.

FBG_CH1_00092655

**Exhibit 9**

**Liquidation Analysis**

FBG_CH1_00092656

## LIQUIDATION ANALYSIS[1]

### Introduction

To demonstrate that the Plan satisfies the "best interests of creditors" test, the FBG Debtors have prepared a hypothetical liquidation analysis (the "**Liquidation Analysis**"), which is based upon certain assumptions discussed in the Disclosure Statement and herein, including the accompanying global notes to the Liquidation Analysis.

The Liquidation Analysis sets forth estimated recovery values for each Class of Claims and Interests under the Plan upon disposition of the FBG Debtors' assets pursuant to a hypothetical chapter 7 liquidation.  As detailed below, the FBG Debtors believe that creditors, other than holders of Other Priority Claims, Other Secured Claims, DIP A Claims, and ABL Claims, will not receive any recovery in a chapter 7 liquidation and that the Plan therefore satisfies the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code (the "**Best Interests Test**").

### Key Assumptions

- All assets of FBG Debtors (or proceeds thereof) are encumbered by liens.

- In a chapter 7 liquidation, a chapter 7 trustee would not have access to any unencumbered assets to finance the chapter 7 cases or adequately protect any secured parties' interests.

- The DIP Secured Parties would foreclose on the Estate Claims, including proceeds thereof, or purchase such collateral and own such claims outright, with no duty to share with junior creditors.

- Due to an inability to finance the prosecution of the Estate Claims, a chapter 7 trustee would either consent to the DIP Secured Parties' foreclosure or agree to a sale of the Estate Claims to the DIP Secured Parties via credit bid or cash, for an amount substantially less than the amount of outstanding DIP A Claims.

- Any cash proceeds paid by holders of DIP A Claims are Avoidance Proceeds and therefore are subject to liens of DIP Secured Parties and would be used by the chapter 7 trustee to pay down the DIP A Claims, after subtracting chapter 7 trustee fees.

- Accordingly, no creditors besides holders of DIP A Claims will receive any recovery on account of the Estate Claims in chapter 7.

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3019) (as amended, supplemented, or otherwise modified from time to time, the "**Plan**").

FBG_CH1_00092657

- Any assets subject to ongoing disputes are assumed to be owned by the FBG Debtors and/or subject to the liens of the FBG Debtors' secured creditors in this Liquidation Analysis. But even if that were not the case, it would not alter the conclusions of this Liquidation Analysis.

- The amount of DIP A Claims would be substantially higher in a chapter 7 liquidation due to the continued accrual of interest.

- With respect to the FBG Debtors' remaining operating assets, such assets would be liquidated in a chapter 7 for the same value as in a chapter 11, but any creditor recoveries in a chapter 7 on account of such assets would be reduced for costs of a chapter 7 trustee, the chapter 7 trustee's professionals, and other wind down costs.

**<u>Statement of Limitations</u>**

The preparation of a liquidation analysis is an uncertain process involving the use of estimates and assumptions that, although considered reasonable by the FBG Debtors based upon their business judgment and input from their advisors, are inherently subject to significant business, economic, and competitive risks, uncertainties and contingencies, most of which are difficult to predict and many of which are beyond the control of the FBG Debtors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation and unanticipated events and circumstances could materially affect the ultimate results in an actual chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the FBG Debtors' assets were liquidated and distributed in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information ("**Financials**") in the Liquidation Analysis and values stated herein have not been subject to any review, compilation, or audit by any independent accounting firm. As a result, the actual amount of Claims that would ultimately be Allowed against the FBG Debtors' estates could vary significantly from the estimates stated herein, depending on the nature and amount of Claims asserted during the pendency of the chapter 7 cases. Similarly, the value of the FBG Debtors' assets in a liquidation scenario is uncertain and could vary significantly from the values set forth in the Liquidation Analysis.

The Liquidation Analysis should not be used for any purpose other than assessing the Best Interests Test, as set forth herein. More specific assumptions are detailed in the notes below. ACCORDINGLY, NEITHER THE FBG DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS OF A LIQUIDATION OF THE FBG DEBTORS WOULD OR WOULD NOT, IN WHOLE OR IN PART, APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED HEREIN. THE ACTUAL LIQUIDATION VALUE OF THE FBG DEBTORS IS SPECULATIVE AND RESULTS COULD VARY MATERIALLY FROM ESTIMATES PROVIDED HEREIN.

FBG_CH1_00092658

In addition, the Liquidation Analysis includes estimates for Claims not currently asserted in the chapter 11 cases, but which could be asserted and allowed in a chapter 7 liquidation, including unpaid chapter 11 Administrative Expense Claims and chapter 7 administrative expense claims such as wind-down costs and trustee fees.  To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing this Liquidation Analysis.  Therefore, the FBG Debtors' estimate of Allowed Claims set forth in this Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims under the Plan.  NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE FBG DEBTORS.  THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

FBG_CH1_00092659

**Basis of Presentation**

This Liquidation Analysis has been prepared assuming that the FBG Debtors' chapter 11 cases are converted to chapter 7 cases on or about July 28, 2026 (the "**Liquidation Date**").  It is assumed that on the Liquidation Date, the Bankruptcy Court would appoint one or more chapter 7 trustees to oversee the liquidation of the FBG Debtors' estates.

The Liquidation Analysis assumes chapter 7 wind down activities will be complete within one year after the Liquidation Date, although the actual time to complete such wind down activities may vary.

The Liquidation Analysis is based on estimated asset and liability values as of the Liquidation Date (except as otherwise indicated).  The actual assets available for distribution to the FBG Debtors' estates and claims arising in the event of an actual liquidation may differ from the assets assumed to be available pursuant to the Liquidation Analysis.

The FBG Debtors have neither fully evaluated all Claims filed against the FBG Debtors or adjudicated all such Claims before the Bankruptcy Court.  Accordingly, the amount of the total Allowed Claims against the FBG Debtors' estates may differ from the claim amounts used in the Liquidation Analysis.  In preparing the Liquidation Analysis, the FBG Debtors estimated Allowed Claims based upon a review of books and records and a review of claims asserted against the FBG Debtors to account for estimated liabilities.

In addition, in the event of a chapter 7 liquidation, it is possible that a chapter 7 liquidation would result in increased costs and expenses arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee.  This Liquidation Analysis assumes that the FBG Debtors' costs of liquidation under chapter 7 includes the fees payable to the chapter 7 trustee as well as those fees that might be payable to attorneys and other professionals that the chapter 7 trustee might engage.

**Liquidation Analysis Conclusion**

The FBG Debtors believe that holders of Claims other than the Other Priority Claims, Other Secured Claims, DIP A Claims and ABL Claims will not receive any recovery in a chapter 7 liquidation.

FBG_CH1_00092660

***Estate Claims***

Should the FBG Debtors' chapter 11 cases  convert to chapter 7, the FBG Debtors believe that holders of DIP A Claims will seek to foreclose on the Estate Claims, including proceeds of the Estate Claims (i.e., the Avoidance Proceeds), or otherwise purchase such collateral via credit bid or cash.  The DIP Facility would mature on June 29, 2026.  The chapter 7 trustee(s) would not have access to any unencumbered assets to finance the chapter 7 cases or an ability to adequately protect any secured party (including the DIP Lenders and Prepetition Secured Parties). Accordingly, a chapter 7 trustee would either consent to such a foreclosure by the holders of DIP A Claims or otherwise sell such claims to such holders in an amount that is substantially less than the outstanding balance of the DIP A Claims (~$1.35 billion).  The FBG Debtors are running a marketing process for the Estate Claims and there currently is no indication that a third party is willing to acquire the Estate Claims in an amount sufficient to satisfy the DIP A Claims (which following the Liquidation Date would accrue interest at the default rate) and provide equal or greater value to the FBG Debtors' other constituents compared to the proposed chapter 11 Plan. Therefore, the FBG Debtors believe that the holders of DIP A Claims would take outright ownership of the Estate Claims without any obligation to share proceeds with any other creditors. Even in the event of a sale, a chapter 7 trustee would receive up to a 3% fee on the sale proceeds for the sale of the Estate Claims, and the remaining sale proceeds would flow to the holders of DIP A Claims (as they hold a valid lien on such proceeds).  Additionally, in the event of a sale, any cash paid by the holders of DIP A Claims to purchase the Estate Claims constitute Avoidance Proceeds, and therefore, would be subject to the liens of the DIP Secured Parties and would be required to be paid back to the holders of DIP A Claims to pay down their Claims.

***Remaining Operating Assets***

Should the FBG Debtors' chapter 11 cases convert to chapter 7, the chapter 7 trustee would seek to liquidate the FBG Debtors' remaining operating assets, including accounts receivable, inventory, machinery & equipment, real estate, and intellectual property.  The chapter 7 trustee would retain a liquidator to liquidate such assets.  The anticipated proceeds of the liquidation of the FBG Debtors' remaining operating assets is assumed to be the same in chapter 7 as under the Plan, but the proceeds available for distribution to creditors would be further reduced by chapter 7 trustee fees and professionals and other wind down costs.  In a  chapter 7 liquidation, the FBG Debtors believe that holders of Allowed Roll-Up, First Lien, Second Lien, Administrative Expense, Priority Tax, General Unsecured, Subordinated Claims, and FBG Debtor Interests would receive zero recovery on account of their Claims and Interests and therefore are not expected to receive a greater recovery in a chapter 7 liquidation as compared to the Plan where recoveries are possible for all such holders.  The Plan therefore satisfies the Best Interests Test.

FBG_CH1_00092661

The Liquidation Analysis for the FBG Debtors was prepared on an entity-by-entity basis. The following overview is displayed on a combined basis and is for summary purposes only. The following should be reviewed in conjunction with the associated notes and individual legal entity analyses.

| | Class | CH. 11 Operating Asset Recovery | CH. 11 Litigation Trust Recovery | CH. 11 Total Recovery | CH. 7 Operating Asset Recovery | Best Interests Test |
|---|---|---|---|---|---|---|
| 1 | Other Priority Claims | 100% | n/a | 100% | 100% | PASS |
| 2 | Other Secured Claims | 100% | n/a | 100% | 100% | PASS |
| 3 | Roll-Up Claims | – | LTI [1] | LTI [1] | – | PASS |
| 4 | First Lien Claims | – | LTI [1] | LTI [1] | – | PASS |
| 5 | Second Lien Claims | – | LTI [1] | LTI [1] | – | PASS |
| 6 | ABL Claims | 19% | n/a | 19% | 11% | PASS |
| 7 | General Unsecured Claims | – | LTI [1] | LTI [1] | – | PASS |
| 8 | Subordinated Claims | – | – | – | – | PASS |
| 9 | Intercompany Claims | – | – | – | – | PASS |
| 10 | FBG Debtor Interest | – | – | – | – | PASS |

[1] Beneficial interest in the Litigation Trust. These interests entitle holders to receive distributions from the Litigation Trust in accordance with the below table, as set forth in the Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors at docket 3020.

| Class | Aggregate Distributions | | | | |
|---|---|---|---|---|---|
| | $0 –$90 million [2] | $90 million – $350 million | $350 million – $1.8 billion | $1.8 billion – $1.9 billion [3] | Over $1.9 billion |
| Class 1 (Litigation Funding) | 100% | 15% | 10% | 10% | 10% |
| Class 2 (DIP A Claims) | – | 85% | 74% | – | – |
| Settled Administrative Expense Claims, Administrative Expense Claims, Priority Tax Claims, Other Priority Claims | – | – | 16% | 90% | – |
| Class 3 (Roll-Up Claims, General Unsecured Claims, First Lien Claims, and Second Lien Claims) | – | – | – | – | 90% |
| Total | 100% | 100% | 100% | 100% | 100% |

(2) This assumes (x) there is no Additional Litigation Trust Funding and (y) the 1.75x multiple on invested capital exceeds the 20.0% internal rate of return on the Litigation Trust Class 1 Funding Contributions.

(3) This assumes no participation in the Administrative Expense Claims Consent Program.

6

FBG_CH1_00092662

## LIQUIDATION ANALYSIS

The Liquidation Analysis for the FBG Debtors was analyzed on an entity-by-entity basis. The following Liquidation Analysis is displayed on a combined basis for summary purposes and should be reviewed in conjunction with the associated notes and individual legal entity analyses below.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $302 | ($277) | $25 | – | – | – | – | – |
| Accounts Receivable, net | [B] | 410 | (6) | 404 | 17% | 69 | (6) | 63 | 16% |
| Inventory | [C] | 1,241 | (837) | 404 | 5% | 21 | (12) | 9 | 2% |
| Goodwill & Intangible Assets, net | [D] | 2,124 | (2,124) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | 3,986 | – | 3,986 | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 149 | (134) | 14 | 100% | 14 | (1) | 14 | 96% |
| Machinery & Equipment, net | [H] | 490 | (463) | 27 | 40% | 11 | (4) | 7 | 25% |
| All Other Assets | [I] | 661 | (110) | 551 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$9,362** | **($3,951)** | **$5,411** | **2%** | **$116** | **($23)** | **$92** | **2%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 20 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 5 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 3 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 3 | 3% |
| **Total Wind Down Costs** | | | | | | | | **$30** | **33%** |

| Net Proceeds Available for Secured Claims | | | | | | | | $62 | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | 14 | 1% |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | 48 | 11% |
| First Lien Claims | [Q] | | | 2,317 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$62** | **1%** |

| Net Proceeds Available for Admin & Priority Claims | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 222 | | | | – | – |
| Priority Claims | | | | 77 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$300** | | | | **–** | **–** |

| Remaining Proceeds for Unsecured Claims | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 5,641 | | | | – | – |
| **Total Unsecured Claims** | | | | **$5,641** | | | | **–** | **–** |

7

FBG_CH1_00092663

## Global Notes to Liquidation Analysis

**[A] Cash:**  The Liquidation Analysis assumes all unrestricted cash is utilized by the Liquidation Date, except for $25 million of DIP minimum cash.  Conversion to chapter 7 will trigger funding of the professional fee carve out utilizing the $25 million DIP minimum cash.  Estimated restricted cash on hand at the Liquidation Date (estimated to be $103 million) is assumed to be inaccessible to a chapter 7 trustee.  Approximately $97 million of that amount is in the Factored Receivables Account, which will either be subject to the liens held by ABL Lenders or DIP Lenders or property of the Third-Party Factors, subject to a determination by the Court, and such cash is therefore assumed to be inaccessible to a chapter 7 trustee.

**[B] Accounts Receivable, net:**  Accounts Receivable constitutes ABL Priority Collateral.  Liquidation Date balance is based on recent accounts receivable aging, net of applicable credits, and adjusted for balances collected with recent asset sales (Horizon, TMD, and Walbro).  Gross and Net recovery percentages are based on liquidator estimates and are net of estimated direct liquidation costs.  Liquidation efforts are underway which may result in some accounts receivable being converted to cash prior to the Liquidation Date, which would reduce estimated recoveries and associated secured debt amounts.

**[C] Inventory:**  Inventory owned by the FBG Debtors constitutes ABL Priority Collateral.  Liquidation Date balance is based on recent liquidator estimate of saleable inventory which excludes inventory at sites where liquidator recommends not pursuing sales due to costs associated with the liquidation process.  Gross and Net recovery percentages are based on liquidator estimates and are net of the estimated direct liquidation costs.  Liquidation efforts are underway which may result in some inventory being converted to cash prior to the Liquidation Date, which would reduce estimated recoveries and associated secured debt amounts.

**[D] Goodwill & Intangible Assets, net:**  Goodwill and Intangible Assets constitute DIP Collateral.  The Liquidation Analysis assumes all remaining intellectual property assets of the FBG Debtors are sold prior to the Liquidation Date with the proceeds reducing the DIP A Claims prior to the Liquidation Date.

**[E] Investment in Subsidiaries:**  Investment in subsidiaries constitutes DIP Collateral.  The Liquidation Analysis assumes all non-US Debtor entities enter into local insolvency or similar proceedings, as required by local laws and regulations.  This analysis assumes liabilities exceed asset recovery values, if any, in these non-US Debtor entities, resulting in no recovery to FBG Debtors, as equity holders.

**[F] Intercompany Receivable (Payable), net:**  Intercompany receivables constitute DIP Collateral.  The Liquidation Analysis assumes all non-US Debtor entities enter into local insolvency or similar proceedings, as required by local laws and regulations.  This analysis assumes liabilities exceed asset recovery values, if any, in these non-US Debtor entities, resulting in no recoveries to FBG Debtors' on account of intercompany claims.

**[G] Real Property, net:**  Real Property constitutes DIP Collateral.  Estimated Liquidation Date balance and recoveries are based on trial balance values (net of depreciation) for legal entities where liquidator expects property sales to occur.  Recoveries are net of estimated liquidator fees.

FBG_CH1_00092664

**[H] Machinery & Equipment, net:**  Machinery and equipment owned by the FBG Debtors constitute DIP Collateral.  Liquidation Date balance is based on fair market value for sites included in liquidator's appraisal and adjusted for asset sales expected to be completed before the Liquidation Date.  Only sites located in the United States are included as recovery from assets in foreign jurisdictions are assumed to be utilized in local proceedings and/or require expenses (i.e., severance) in excess of estimated recoveries.  Recoveries are based on high auction value per liquidator's latest estimates and net of applicable liquidation costs.

**[I] All Other Assets:**  Estimated Liquidation Date balance is based on trial balance values and adjusted for legal entities sold as prior to Liquidation Date (Walbro, TMD, Horizon).  Includes accounts such as operating lease right of use assets, prepaids, and deposits.  No recoveries are expected in a hypothetical chapter 7.

**[J] Wind Down Professionals:**  Costs for professionals required to assist Chapter 7 Trustee with wind down.  This is estimated at $20 million based on the circumstances of the case and condition of the books and records.  Activities a chapter 7 trustee may seek assistance with include, among others, reconciliation and adjudication of filed claims, filing of tax returns, liquidation of remaining assets, forensic accounting services, resolution of claims disputes, general reporting and management of the estates, and evaluation and pursuit of claims and causes of action against third parties. Costs are allocated to holders or DIP A Claims and ABL Claims based on percentage of secured asset recoveries.

**[K] Chapter 7 Operating Costs:**  All other operating costs required by a chapter 7 trustee to carry out its mandate.  This is initially estimated at $5 million based on the circumstances of the case and condition of the books and records.  A chapter 7 trustee may incur costs related to personnel, access to software and systems, insurance, and other administrative functions.  Costs are allocated to holders of DIP A Claims and ABL Claims based on percentage of secured asset recoveries.

**[L] Chapter 7 Trustee Fee:**  3% statutory fee on all asset recoveries.  Costs are allocated to holders of DIP A Claims and ABL Claims based on percentage of secured asset recoveries.

**[M] Liquidator Overhead Expenses:**  Remaining personnel costs to liquidate accounts receivable and inventory per liquidator estimates.  Costs are allocated to holders of ABL Claims based on recoveries realized on accounts receivable and inventory.

**[N] DIP A Claims:**  Per latest estimate for claim balance and adjusted for expected asset sale proceeds prior to the Liquidation Date.  Includes estimated accrued interest through chapter 7 wind down activities.

**[O] Roll-Up Claims:** Per latest estimate for claim balance and includes estimated accrued interest through chapter 7 wind down activities.

**[P] ABL Claims:**  Per latest estimate for claim balance and adjusted for expected asset sale proceeds prior to the Liquidation Date.  Includes estimated accrued interest through chapter 7 wind down activities.

**[Q] First Lien and Second Lien Claims:**  Per latest estimate for claim balance and includes estimated accrued interest through chapter 7 wind down activities.

FBG_CH1_00092665

[R] <u>Administrative Claims:</u>  Based on latest estimate of 503(b)9 claims and post-petition AP. Includes 20% contingency for additional potential claims.  Since DIP A Claims are not paid in full in a chapter 7 liquidation, the Administrative Expense Claims Basket is not triggered under the DIP Order.

10

FBG_CH1_00092666

## Airtex Industries, LLC Chapter 7 Liquidation Analysis

**Airtex Industries, LLC**

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| Net Proceeds Available for Secured Claims | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| Net Proceeds Available for Admin & Priority Claims | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| Remaining Proceeds for Unsecured Claims | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

11

FBG_CH1_00092667

## Airtex Products, LP Chapter 7 Liquidation Analysis

### Airtex Products, LP

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $0 | (0) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 1 | (1) | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$1** | **($1)** | **–** | **–** | **–** | **–** | **–** | **–** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$0** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | **–** | **–** |

12

FBG_CH1_00092668

## APC Intermediate Holdings, LLC Chapter 7 Liquidation Analysis

### APC Intermediate Holdings, LLC

| $ In Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$0** | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 0 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

13

FBG_CH1_00092669

## APC Parent, LLC Chapter 7 Liquidation Analysis

### APC Parent, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | 47 | – | 47 | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$47** | **–** | **$47** | **–** | **–** | **–** | **–** | **–** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |
| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 7 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$14** | | | | **–** | **–** |

14

FBG_CH1_00092670

**DEBTORS' EXHIBIT NO. 178**
**Page 271 of 360**

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 16 of 104

## ASC Industries, Inc. Chapter 7 Liquidation Analysis

### ASC Industries, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $5 | (5) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 38 | (13) | 25 | 18% | 5 | (0) | 4 | 16% |
| Inventory | [C] | 20 | 43 | 63 | 6% | 4 | (3) | 1 | 2% |
| Goodwill & Intangible Assets, net | [D] | 29 | (29) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | 65 | – | 65 | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 9 | (9) | – | – | – | – | – | – |
| All Other Assets | [I] | 11 | – | 11 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$177** | **($13)** | **$164** | **5%** | **$8** | **($3)** | **$5** | **3%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 1 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$2** | **34%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$4** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | 4 | 1% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$4** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 2 | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$2** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 5 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$12** | | | | **–** | **–** |

15

FBG_CH1_00092671

DEBTORS' EXHIBIT NO. 178
Page 272 of 360

## Autolite Operations LLC Chapter 7 Liquidation Analysis

### Autolite Operations LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 43 | (30) | 13 | 23% | 3 | (0) | 3 | 21% |
| Inventory | [C] | 19 | (19) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | (10) | 10 | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 0 | (0) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 18 | (18) | – | – | – | – | – | – |
| All Other Assets | [I] | 2 | – | 2 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$72** | **($58)** | **$14** | **20%** | **$3** | **($0)** | **$3** | **18%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Wind Down Professionals | [J] | | | | | | | 1 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$1** | **34%** |
| **Net Proceeds Available for Secured Claims** | | | | | | | | **$2** | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | 2 | 0% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$2** | **0%** |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| General Unsecured Claims | | | | 8 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$14** | | | | **–** | **–** |

16

FBG_CH1_00092672

**DEBTORS' EXHIBIT NO. 178**
**Page 273 of 360**

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 18 of 104

## AVM Export, Inc. Chapter 7 Liquidation Analysis

### AVM Export, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

17

FBG_CH1_00092673

## BPI Acquisition Company, LLC Chapter 7 Liquidation Analysis

### BPI Acquisition Company, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | 488 | – | 488 | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$488** | **–** | **$488** | **–** | **–** | **–** | **–** | **–** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 8 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$8** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 5 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$12** | | | | **–** | **–** |

18

FBG_CH1_00092674

## BPI EC, LLC Chapter 7 Liquidation Analysis

### BPI EC, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Chapter 7 Liquidation | | | | |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 0 | (0) | – | – | – | – | – | – |
| Inventory | [C] | 0 | (0) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | $0 | ($0) | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

19

FBG_CH1_00092675

**DEBTORS' EXHIBIT NO. 178**
**Page 276 of 360**

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 21 of 104

## BPI Holdings International, LLC Chapter 7 Liquidation Analysis

### BPI Holdings International, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 1 | (1) | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$1** | **($1)** | **–** | **–** | **–** | **–** | **–** | **–** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$0** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 0 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | **–** | **–** |

20

FBG_CH1_00092676

**DEBTORS' EXHIBIT NO. 178**
**Page 277 of 360**

## Brake Parts Inc China LLC Chapter 7 Liquidation Analysis

**Brake Parts Inc China LLC**

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | (0) | 0 | – | – | – | – | – | – |
| Inventory | [C] | 4 | (4) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$4** | **($4)** | **–** | **–** | **–** | **–** | **–** | **–** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |

| Net Proceeds Available for Secured Claims | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |

| Net Proceeds Available for Admin & Priority Claims | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |

| Remaining Proceeds for Unsecured Claims | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | **–** | **–** |

21

FBG_CH1_00092677

## Brake Parts Inc India LLC Chapter 7 Liquidation Analysis

### Brake Parts Inc India LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | 8 | – | 8 | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$8** | **–** | **$8** | **–** | **–** | **–** | **–** | **–** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | **–** | **–** |

22

FBG_CH1_00092678

## Brake Parts Inc LLC Chapter 7 Liquidation Analysis

### Brake Parts Inc LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $4 | (4) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 420 | (308) | 112 | 14% | 15 | (1) | 14 | 12% |
| Inventory | [C] | 518 | (211) | 307 | 5% | 15 | (8) | 7 | 2% |
| Goodwill & Intangible Assets, net | [D] | 512 | (512) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | (7) | 7 | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 34 | (32) | 3 | 102% | 3 | (1) | 2 | 61% |
| All Other Assets | [I] | 82 | – | 82 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$1,565** | **($1,061)** | **$504** | **7%** | **$34** | **($10)** | **$23** | **5%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 5 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 1 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 1 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 1 | 3% |
| **Total Wind Down Costs** | | | | | | | | **$8** | **33%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$15** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | 1 | 0% |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | 14 | 3% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$15** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 21 | | | | – | – |
| Priority Claims | | | | 1 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$22** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 303 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$310** | | | | **–** | **–** |

23

FBG_CH1_00092679

DEBTORS' EXHIBIT NO. 178
Page 280 of 360

Case 25-90399 Document 3046-9 Filed in TXSB on 06/23/26 Page 25 of 104

### Cardone Industries, Inc. Chapter 7 Liquidation Analysis

**Cardone Industries, Inc.**

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $5 | (5) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 414 | (377) | 37 | 14% | 5 | (0) | 5 | 13% |
| Inventory | [C] | 93 | (93) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 72 | (72) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 71 | (71) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | (37) | 37 | – | – | – | – | – | – |
| All Other Assets | [I] | 26 | – | 26 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$645** | **($582)** | **$63** | **8%** | **$5** | **($0)** | **$5** | **7%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 1 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$2** | **34%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$3** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | 3 | 1% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$3** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 8 | | | | – | – |
| Priority Claims | | | | 3 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$10** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 110 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$117** | | | | **–** | **–** |

24

FBG_CH1_00092680

DEBTORS' EXHIBIT NO. 178
Page 281 of 360

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 26 of 104

## Carrand Companies, Inc. Chapter 7 Liquidation Analysis

### Carrand Companies, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

25

FBG_CH1_00092681

DEBTORS' EXHIBIT NO. 178
Page 282 of 360

### Carter Carburetor Holdings, LLC Chapter 7 Liquidation Analysis

**Carter Carburetor Holdings, LLC**

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 17 | | | | – | – |
| **Total Admin & Priority Claims** | | | | $17 | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 6 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $12 | | | | – | – |

26

FBG_CH1_00092682

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 28 of 104

## Carter Carburetor, LLC Chapter 7 Liquidation Analysis

### Carter Carburetor, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $23 | (23) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | (25) | 25 | 1 | 19% | 0 | (0) | 0 | 18% |
| Inventory | [C] | 1 | (1) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 48 | (48) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 0 | (0) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 11 | (11) | – | – | – | – | – | – |
| All Other Assets | [I] | 1 | (1) | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$60** | **($59)** | **$1** | **19%** | **$0** | **($0)** | **$0** | **18%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Wind Down Professionals | [J] | | | | | | | 0 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$0** | **34%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$0** | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | 0 | 0% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$0** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Administrative Claims | [R] | | | 0 | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$0** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| General Unsecured Claims | | | | 7 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$13** | | | | **–** | **–** |

27

FBG_CH1_00092683

DEBTORS' EXHIBIT NO. 178
Page 284 of 360

## Carter Fuel Export, Inc. Chapter 7 Liquidation Analysis

### Carter Fuel Export, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |
| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 4 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$10** | | | | – | – |

28

FBG_CH1_00092684

## Carter Fuel Systems, LLC Chapter 7 Liquidation Analysis

### Carter Fuel Systems, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 35 | (4) | 30 | 23% | 7 | (1) | 6 | 21% |
| Inventory | [C] | 89 | (77) | 12 | 6% | 1 | (1) | 0 | 2% |
| Goodwill & Intangible Assets, net | [D] | 7 | (7) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | (0) | 0 | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 7 | (7) | – | – | – | – | – | – |
| All Other Assets | [I] | 31 | – | 31 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$169** | **($96)** | **$73** | **11%** | **$8** | **($1)** | **$7** | **9%** |

| Wind Down Costs | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | 1 | 22% |
| Chapter 7 Operating Costs | [K] | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | **$2** | **34%** |

| **Net Proceeds Available for Secured Claims** | | | | | **$4** | |

| Secured Claims | | | Est. Claim | | Amount | Recovery % |
|---|---|---|---|---|---|---|
| DIP A | [N] | | 1,520 | | – | – |
| Roll-Up Claims | [O] | | 4,061 | | – | – |
| ABL Facility & SCF | [P] | | 427 | | 4 | 1% |
| First Lien L/C Facility | [Q] | | 34 | | – | – |
| First Lien Term Loans | [Q] | | 2,168 | | – | – |
| Side-Car Term Loans | [Q] | | 115 | | – | – |
| Second Lien Term Loans | [Q] | | 730 | | – | – |
| **Total Secured Claims** | | | **$9,054** | | **$4** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | **–** | |

| Admin & Priority Claims | | | Est. Claim | | Amount | Recovery % |
|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | 5 | | – | – |
| Priority Claims | | | 2 | | – | – |
| **Total Admin & Priority Claims** | | | **$7** | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | **–** | |

| Unsecured Claims | | | Est. Claim | | Amount | Recovery % |
|---|---|---|---|---|---|---|
| General Unsecured Claims | | | 13 | | – | – |
| PBGC Claim | | | 7 | | – | – |
| **Total Unsecured Claims** | | | **$19** | | **–** | **–** |

29

FBG_CH1_00092685

DEBTORS' EXHIBIT NO. 178
Page 286 of 360

## Champion Laboratories, Inc. Chapter 7 Liquidation Analysis

### Champion Laboratories, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $2 | (2) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 117 | (90) | 27 | 37% | 10 | (1) | 9 | 34% |
| Inventory | [C] | 89 | (89) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 197 | (197) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | 0 | – | 0 | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 0 | (0) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 35 | (35) | – | – | – | – | – | – |
| All Other Assets | [I] | 50 | – | 50 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$491** | **($413)** | **$78** | **13%** | **$10** | **($1)** | **$9** | **12%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 2 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$3** | **34%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$6** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | 6 | 1% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$6** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 9 | | | | – | – |
| Priority Claims | | | | 1 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$10** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 37 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$44** | | | | **–** | **–** |

30

FBG_CH1_00092686

DEBTORS' EXHIBIT NO. 178
Page 287 of 360

## CWD Holding, LLC Chapter 7 Liquidation Analysis

### CWD Holding, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | $0 | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| General Unsecured Claims | | | | 0 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

31

FBG_CH1_00092687

## CWD Intermediate Holdings I, LLC Chapter 7 Liquidation Analysis

### CWD Intermediate Holdings I, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$0** | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 0 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

32

FBG_CH1_00092688

## CWD Intermediate Holdings II, LLC Chapter 7 Liquidation Analysis

**CWD Intermediate Holdings II, LLC**

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |
| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | $0 | | | | – | – |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 0 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

33

FBG_CH1_00092689

DEBTORS' EXHIBIT NO. 178
Page 290 of 360

## CWD, LLC Chapter 7 Liquidation Analysis

### CWD, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $2 | (2) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | (18) | 59 | 42 | 7% | 3 | (0) | 3 | 6% |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | (32) | 32 | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | (0) | 0 | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | (0) | 0 | – | – | – | – | – | – |
| All Other Assets | [I] | 12 | – | 12 | – | – | – | – | – |
| **Total Asset Proceeds** | | **($36)** | **$90** | **$54** | **5%** | **$3** | **($0)** | **$3** | **5%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 1 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$1** | **34%** |
| **Net Proceeds Available for Secured Claims** | | | | | | | | **$2** | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | 2 | 0% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$2** | **0%** |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 1 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$1** | | | | **–** | **–** |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 41 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$48** | | | | **–** | **–** |

34

FBG_CH1_00092690

## Dalton Corporation Chapter 7 Liquidation Analysis

### Dalton Corporation

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 0 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

35

FBG_CH1_00092691

## Dalton Corporation, Ashland Manufacturing Facility Chapter 7 Liquidation Analysis

### Dalton Corporation, Ashland Manufacturing Facility

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

36

FBG_CH1_00092692

## Dalton Corporation, Kendallville Manufacturing Facility Chapter 7 Liquidation Analysis

### Dalton Corporation, Kendallville Manufacturing Facility

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

37

FBG_CH1_00092693

## Dalton Corporation, Stryker Machining Facility Co. Chapter 7 Liquidation Analysis

**Dalton Corporation, Stryker Machining Facility Co.**

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | 0 | (0) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 2 | (2) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 5 | (5) | – | – | – | – | – | – |
| All Other Assets | [I] | 0 | – | 0 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$7** | **($7)** | **$0** | **–** | **–** | **–** | **–** | **–** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |
| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| General Unsecured Claims | | | | 0 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | **–** | **–** |

38

FBG_CH1_00092694

## Dalton Corporation, Warsaw Machining Facility Chapter 7 Liquidation Analysis

### Dalton Corporation, Warsaw Manufacturing Facility

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $3 | (3) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 11 | (9) | 2 | 21% | 0 | (0) | 0 | 19% |
| Inventory | [C] | 3 | (3) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 174 | (174) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 13 | (13) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 57 | (57) | – | – | – | – | – | – |
| All Other Assets | [I] | 14 | – | 14 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$274** | **($259)** | **$15** | **2%** | **$0** | **($0)** | **$0** | **2%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 0 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$0** | **34%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$0** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | 0 | 0% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$0** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 2 | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$2** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 22 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$28** | | | | **–** | **–** |

39

FBG_CH1_00092695

**DEBTORS' EXHIBIT NO. 178**
**Page 296 of 360**

## Eagle Casting Holdings, LLC Chapter 7 Liquidation Analysis

### Eagle Casting Holdings, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

40

FBG_CH1_00092696

Case 25-90399 Document 3046-9 Filed in TXSB on 06/23/26 Page 42 of 104

## Eagle Casting, LLC Chapter 7 Liquidation Analysis

### Eagle Casting, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $0 | (0) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 0 | 0 | 0 | 18% | 0 | (0) | 0 | 16% |
| Inventory | [C] | 1 | (1) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 62 | (62) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 12 | (12) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 50 | (50) | – | – | – | – | – | – |
| All Other Assets | [I] | 2 | – | 2 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$127** | **($125)** | **$2** | **3%** | **$0** | **($0)** | **$0** | **3%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 0 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$0** | **34%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$0** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | 0 | 0% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$0** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 1 | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$1** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 4 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$10** | | | | **–** | **–** |

41

FBG_CH1_00092697

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 43 of 104

## Eagle Machining, LLC Chapter 7 Liquidation Analysis

### Eagle Machining, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $1 | (1) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 1 | (1) | – | – | – | – | – | – |
| Inventory | [C] | 7 | (7) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 44 | (44) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 7 | – | 7 | 100% | 7 | (0) | 7 | 96% |
| Machinery & Equipment, net | [H] | 22 | (20) | 2 | 72% | 1 | (0) | 1 | 52% |
| All Other Assets | [I] | 5 | – | 5 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$88** | **($74)** | **$14** | **60%** | **$8** | **($1)** | **$8** | **56%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 2 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **$2** | **30%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$5** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | 5 | 0% |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$5** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 1 | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$1** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 4 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$10** | | | | **–** | **–** |

42

FBG_CH1_00092698

DEBTORS' EXHIBIT NO. 178
Page 299 of 360

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 44 of 104

## First Brands Group Holdings, LLC Chapter 7 Liquidation Analysis

### First Brands Group Holdings, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | – | | | | – | – |
| First Lien L/C Facility | [Q] | | | – | | | | – | – |
| First Lien Term Loans | [Q] | | | – | | | | – | – |
| Side-Car Term Loans | [Q] | | | – | | | | – | – |
| Second Lien Term Loans | [Q] | | | – | | | | – | – |
| **Total Secured Claims** | | | | $5,581 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 1 | | | | – | – |
| **Total Admin & Priority Claims** | | | | $1 | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 4,673 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $4,679 | | | | – | – |

43

FBG_CH1_00092699

**DEBTORS' EXHIBIT NO. 178**
**Page 300 of 360**

## First Brands Group Intermediate, LLC Chapter 7 Liquidation Analysis

### First Brands Group Intermediate, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$0** | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 0 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

44

FBG_CH1_00092700

## First Brands Group, LLC Chapter 7 Liquidation Analysis

### First Brands Group, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $204 | (179) | $25 | – | – | – | – | – |
| Accounts Receivable, net | [B] | 43 | (43) | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | 2,449 | – | 2,449 | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 0 | (0) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 68 | (68) | – | – | – | – | – | – |
| All Other Assets | [I] | 39 | – | 39 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$2,802** | **($289)** | **$2,513** | **–** | **–** | **–** | **–** | **–** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 2 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$2** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | **–** | **–** |

45

FBG_CH1_00092701

## FRAM Group IP LLC Chapter 7 Liquidation Analysis

### FRAM Group IP LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $0 | (0) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 5 | (5) | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 95 | (95) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$100** | **($100)** | **–** | | **–** | **–** | **–** | **–** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | **–** | **–** |

46

FBG_CH1_00092702

## FRAM Group Operations LLC Chapter 7 Liquidation Analysis

### FRAM Group Operations LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $12 | (12) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | (302) | 312 | 10 | 34% | 3 | (0) | 3 | 31% |
| Inventory | [C] | 51 | (51) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 98 | (98) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 1 | (1) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 38 | (32) | 6 | 8% | 1 | (0) | 0 | 1% |
| All Other Assets | [I] | 132 | – | 132 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$28** | **$119** | **$148** | **3%** | **$4** | **($1)** | **$3** | **2%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 1 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$1** | **34%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$2** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | 0 | 0% |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | 2 | 0% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$2** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 21 | | | | – | – |
| Priority Claims | | | | 1 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$21** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 33 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$39** | | | | **–** | **–** |

47

FBG_CH1_00092703

**DEBTORS' EXHIBIT NO. 178**
**Page 304 of 360**

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 49 of 104

## FRAMAuto Holdings, LLC Chapter 7 Liquidation Analysis

### FRAMAuto Holdings, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | (0) | 0 | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | ($0) | $0 | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | $0 | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| General Unsecured Claims | | | | 0 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

48

FBG_CH1_00092704

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 50 of 104

## Fuel Filter Technologies, Inc. Chapter 7 Liquidation Analysis

### Fuel Filter Technologies, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

49

FBG_CH1_00092705

DEBTORS' EXHIBIT NO. 178
Page 306 of 360

## Global Reman Ventures, LLC Chapter 7 Liquidation Analysis

### Global Reman Ventures, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

50

FBG_CH1_00092706

## Heatherton Holdings, LLC Chapter 7 Liquidation Analysis

### Heatherton Holdings, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | 1 | (1) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 0 | (0) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 0 | (0) | – | – | – | – | – | – |
| All Other Assets | [I] | 0 | – | 0 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$1** | **($1)** | **$0** | **–** | **–** | **–** | **–** | **–** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 0 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | **–** | **–** |

51

FBG_CH1_00092707

DEBTORS' EXHIBIT NO. 178
Page 308 of 360

## Hopkins Acquisition, Inc. Chapter 7 Liquidation Analysis

### Hopkins Acquisition, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Facility & SCF | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Term Loans | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

52

FBG_CH1_00092708

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 54 of 104

## Hopkins Manufacturing Corporation Chapter 7 Liquidation Analysis

### Hopkins Manufacturing Corporation

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $1 | (1) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 68 | (40) | 27 | 27% | 7 | (1) | 7 | 24% |
| Inventory | [C] | 56 | (56) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 178 | (178) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 7 | – | 7 | 100% | 7 | (0) | 7 | 96% |
| Machinery & Equipment, net | [H] | 18 | (15) | 3 | 38% | 1 | (1) | 0 | 15% |
| All Other Assets | [I] | 32 | – | 32 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$360** | **($291)** | **$69** | **23%** | **$16** | **($2)** | **$14** | **20%** |

| Wind Down Costs | | | | | Amount | Burden % |
| --- | --- | --- | --- | --- | --- | --- |
| Wind Down Professionals | [J] | | | | 3 | 22% |
| Chapter 7 Operating Costs | [K] | | | | 1 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | 0 | 2% |
| **Total Wind Down Costs** | | | | | **$4** | **32%** |

| **Net Proceeds Available for Secured Claims** | | | | | **$10** | |
| --- | --- | --- | --- | --- | --- | --- |

| Secured Claims | | | | Est. Claim | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- |
| DIP A | [N] | | | 1,520 | 5 | 0% |
| Roll-Up Claims | [O] | | | 4,061 | – | – |
| ABL Facility & SCF | [P] | | | 427 | 4 | 1% |
| First Lien L/C Facility | [Q] | | | 34 | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | – | – |
| Side-Car Term Loans | [Q] | | | 115 | – | – |
| Second Lien Term Loans | [Q] | | | 730 | – | – |
| **Total Secured Claims** | | | | **$9,054** | **$10** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | **–** | |
| --- | --- | --- | --- | --- | --- | --- |

| Admin & Priority Claims | | | | Est. Claim | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- |
| Administrative Claims | [R] | | | 10 | – | – |
| Priority Claims | | | | 2 | – | – |
| **Total Admin & Priority Claims** | | | | **$12** | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | **–** | |
| --- | --- | --- | --- | --- | --- | --- |

| Unsecured Claims | | | | Est. Claim | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- |
| General Unsecured Claims | | | | 52 | – | – |
| PBGC Claim | | | | 7 | – | – |
| **Total Unsecured Claims** | | | | **$59** | **–** | **–** |

53

FBG_CH1_00092709

**DEBTORS' EXHIBIT NO. 178**
**Page 310 of 360**

## Horizon Euro Finance LLC Chapter 7 Liquidation Analysis

### Horizon Euro Finance LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | 67 | – | 67 | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$67** | **–** | **$67** | **–** | **–** | **–** | **–** | **–** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | **–** | **–** |

54

FBG_CH1_00092710

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 56 of 104

## Horizon Global Americas Inc. Chapter 7 Liquidation Analysis

### Horizon Global Americas Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $2 | (2) | -- | -- | -- | -- | -- | -- |
| Accounts Receivable, net | [B] | 102 | (89) | 13 | 21% | 3 | (0) | 3 | 19% |
| Inventory | [C] | 53 | (53) | -- | -- | -- | -- | -- | -- |
| Goodwill & Intangible Assets, net | [D] | (19) | 19 | -- | -- | -- | -- | -- | -- |
| Investment in Subsidiaries | [E] | 208 | -- | 208 | -- | -- | -- | -- | -- |
| Intercompany Receivable (Payable), net | [F] | -- | -- | -- | -- | -- | -- | -- | -- |
| Real Property, net | [G] | 0 | (0) | -- | -- | -- | -- | -- | -- |
| Machinery & Equipment, net | [H] | 13 | (13) | -- | -- | -- | -- | -- | -- |
| All Other Assets | [I] | 58 | (58) | -- | -- | -- | -- | -- | -- |
| **Total Asset Proceeds** | | **$417** | **($196)** | **$221** | **1%** | **$3** | **($0)** | **$3** | **1%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 1 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$1** | **34%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$2** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | -- | -- |
| Roll-Up Claims | [O] | | | 4,061 | | | | -- | -- |
| ABL Claims | [P] | | | 427 | | | | 2 | 0% |
| First Lien L/C Facility | [Q] | | | 34 | | | | -- | -- |
| First Lien Term Loans | [Q] | | | 2,168 | | | | -- | -- |
| Side-Car Term Loans | [Q] | | | 115 | | | | -- | -- |
| Second Lien Claims | [Q] | | | 730 | | | | -- | -- |
| **Total Secured Claims** | | | | **$9,054** | | | | **$2** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **--** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 7 | | | | -- | -- |
| Priority Claims | | | | 0 | | | | -- | -- |
| **Total Admin & Priority Claims** | | | | **$8** | | | | **--** | **--** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **--** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 65 | | | | -- | -- |
| PBGC Claim | | | | 7 | | | | -- | -- |
| **Total Unsecured Claims** | | | | **$72** | | | | **--** | **--** |

55

FBG_CH1_00092711

DEBTORS' EXHIBIT NO. 178
Page 312 of 360

## Horizon Global Company LLC Chapter 7 Liquidation Analysis

### Horizon Global Company LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $0 | (0) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 1 | (1) | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | 70 | – | 70 | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 0 | (0) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 0 | (0) | – | – | – | – | – | – |
| All Other Assets | [I] | 0 | (0) | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$71** | **($2)** | **$70** | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| General Unsecured Claims | | | | 3 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$9** | | | | – | – |

56

FBG_CH1_00092712

DEBTORS' EXHIBIT NO. 178
Page 313 of 360

## Horizon Global Corporation Chapter 7 Liquidation Analysis

### Horizon Global Corporation

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | (220) | 220 | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 205 | (205) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | 448 | – | 448 | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 8 | (8) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 5 | (5) | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$446** | **$2** | **$448** | – | – | – | – | – |
| Wind Down Costs | | | | | | | Amount | Burden % | |
| Wind Down Professionals | [J] | | | | | | – | – | |
| Chapter 7 Operating Costs | [K] | | | | | | – | – | |
| Chapter 7 Trustee Fee | [L] | | | | | | – | – | |
| Liquidator Overhead Expenses | [M] | | | | | | – | – | |
| **Total Wind Down Costs** | | | | | | | – | – | |
| **Net Proceeds Available for Secured Claims** | | | | | | | – | | |
| Secured Claims | | | | Est. Claim | | | Amount | Recovery % | |
| DIP A Claims | [N] | | | 1,520 | | | – | – | |
| Roll-Up Claims | [O] | | | 4,061 | | | – | – | |
| ABL Claims | [P] | | | 427 | | | – | – | |
| First Lien L/C Facility | [Q] | | | 34 | | | – | – | |
| First Lien Term Loans | [Q] | | | 2,168 | | | – | – | |
| Side-Car Term Loans | [Q] | | | 115 | | | – | – | |
| Second Lien Claims | [Q] | | | 730 | | | – | – | |
| **Total Secured Claims** | | | | **$9,054** | | | – | – | |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | – | | |
| Admin & Priority Claims | | | | Est. Claim | | | Amount | Recovery % | |
| Administrative Claims | [R] | | | 0 | | | – | – | |
| Priority Claims | | | | 0 | | | – | – | |
| **Total Admin & Priority Claims** | | | | **$0** | | | – | – | |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | – | | |
| Unsecured Claims | | | | Est. Claim | | | Amount | Recovery % | |
| General Unsecured Claims | | | | 0 | | | – | – | |
| PBGC Claim | | | | 7 | | | – | – | |
| **Total Unsecured Claims** | | | | **$7** | | | – | – | |

57

FBG_CH1_00092713

**DEBTORS' EXHIBIT NO. 178**
**Page 314 of 360**

Case 25-90399 Document 3046-9 Filed in TXSB on 06/23/26 Page 59 of 104

## Horizon International Holdings LLC Chapter 7 Liquidation Analysis

### Horizon International Holdings LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $0 | (0) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | 121 | – | 121 | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$121** | **($0)** | **$121** | **–** | **–** | **–** | **–** | **–** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | **–** | **–** |

58

FBG_CH1_00092714

**DEBTORS' EXHIBIT NO. 178**
**Page 315 of 360**

## IBI International Holding Company, Inc. Chapter 7 Liquidation Analysis

### IBI International Holding Company, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| Net Proceeds Available for Secured Claims | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| Net Proceeds Available for Admin & Priority Claims | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| Remaining Proceeds for Unsecured Claims | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

59

FBG_CH1_00092715

**DEBTORS' EXHIBIT NO. 178**
**Page 316 of 360**

## International Brake Industries, Inc. Chapter 7 Liquidation Analysis

### International Brake Industries, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 1 | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | $1 | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 5 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $11 | | | | – | – |

60

FBG_CH1_00092716

## Jasper Acquisition Corp. Chapter 7 Liquidation Analysis

### Jasper Acquisition Corp.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | Amount | Burden % |
| --- | --- | --- | --- | --- | --- | --- |
| Wind Down Professionals | [J] | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | – | – |
| **Total Wind Down Costs** | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- |

| Secured Claims | | | | Est. Claim | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- |
| DIP A Claims | [N] | | | 1,520 | – | – |
| Roll-Up Claims | [O] | | | 4,061 | – | – |
| ABL Claims | [P] | | | 427 | – | – |
| First Lien L/C Facility | [Q] | | | 34 | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | – | – |
| Side-Car Term Loans | [Q] | | | 115 | – | – |
| Second Lien Claims | [Q] | | | 730 | – | – |
| **Total Secured Claims** | | | | $9,054 | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- |

| Admin & Priority Claims | | | | Est. Claim | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- |
| Administrative Claims | [R] | | | – | – | – |
| Priority Claims | | | | 1 | – | – |
| **Total Admin & Priority Claims** | | | | $1 | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- |

| Unsecured Claims | | | | Est. Claim | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- |
| General Unsecured Claims | | | | 0 | – | – |
| PBGC Claim | | | | 7 | – | – |
| **Total Unsecured Claims** | | | | $7 | – | – |

FBG_CH1_00092717

## Jasper Rubber Products, Inc Chapter 7 Liquidation Analysis

### Jasper Rubber Products, Inc

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $0 | (0) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 0 | (0) | 0 | 18% | 0 | (0) | 0 | 16% |
| Inventory | [C] | 2 | (2) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 7 | (7) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 9 | (9) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 4 | (4) | – | – | – | – | – | – |
| All Other Assets | [I] | 2 | – | 2 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$24** | **($22)** | **$2** | **0%** | **$0** | **($0)** | **$0** | **0%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 0 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$0** | **34%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$0** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | 0 | 0% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$0** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 1 | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$1** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 6 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$13** | | | | **–** | **–** |

62

FBG_CH1_00092718

**DEBTORS' EXHIBIT NO. 178**
**Page 319 of 360**

## KTRI Holdings, Inc. Chapter 7 Liquidation Analysis

### KTRI Holdings, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 8 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$8** | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 3 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$9** | | | | – | – |

63

FBG_CH1_00092719

## KTRI Offshore Holdings, LLC Chapter 7 Liquidation Analysis

### KTRI Offshore Holdings, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

64

FBG_CH1_00092720

**DEBTORS' EXHIBIT NO. 178**
**Page 321 of 360**

## Longman Enterprises, Inc. Chapter 7 Liquidation Analysis

### Longman Enterprises, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

65

FBG_CH1_00092721

**DEBTORS' EXHIBIT NO. 178**
**Page 322 of 360**

## PHNX Acquisition Corp. Chapter 7 Liquidation Analysis

### PHNX Acquisition Corp.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |
| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 10 | | | | – | – |
| **Total Admin & Priority Claims** | | | | $10 | | | | – | – |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 7 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $13 | | | | – | – |

66

FBG_CH1_00092722

DEBTORS' EXHIBIT NO. 178
Page 323 of 360

## Premier Marketing Group, LLC Chapter 7 Liquidation Analysis

### Premier Marketing Group, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

67

FBG_CH1_00092723

DEBTORS' EXHIBIT NO. 178
Page 324 of 360

## Pylon Manufacturing Corp. Chapter 7 Liquidation Analysis

### Pylon Manufacturing Corp.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 1 | (1) | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 218 | (218) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 0 | (0) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 1 | (1) | – | – | – | – | – | – |
| All Other Assets | [I] | 3 | – | 3 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$223** | **($220)** | **$3** | **–** | **–** | **–** | **–** | **–** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$0** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 3 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$9** | | | | **–** | **–** |

FBG_CH1_00092724

## Pylon South Bend, Inc. Chapter 7 Liquidation Analysis

### Pylon South Bend, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

69

FBG_CH1_00092725

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 71 of 104

## Qualis Automotive, L.L.C. Chapter 7 Liquidation Analysis

**Qualis Automotive, L.L.C.**

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $0 | (0) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | (0) | 0 | 0 | 17% | 0 | (0) | 0 | 16% |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 0 | (0) | – | – | – | – | – | – |
| All Other Assets | [I] | 0 | – | 0 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$0** | **$0** | **$0** | **7%** | **$0** | **($0)** | **$0** | **6%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Wind Down Professionals | [J] | | | | | | | 0 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$0** | **34%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$0** | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | 0 | 0% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$0** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | **–** | **–** |

70

FBG_CH1_00092726

**DEBTORS' EXHIBIT NO. 178**
**Page 327 of 360**

## Qualis Enterprises, LLC Chapter 7 Liquidation Analysis

### Qualis Enterprises, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

71

FBG_CH1_00092727

## Qualitor Acquisition Inc. Chapter 7 Liquidation Analysis

**Qualitor Acquisition Inc.**

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

72

FBG_CH1_00092728

## Qualitor Automotive, LLC Chapter 7 Liquidation Analysis

### Qualitor Automotive, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $1 | (1) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 48 | (42) | 7 | 19% | 1 | (0) | 1 | 18% |
| Inventory | [C] | 2 | (2) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 20 | (20) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | (0) | 0 | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 2 | (2) | – | – | – | – | – | – |
| All Other Assets | [I] | 7 | – | 7 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$80** | **($66)** | **$14** | **10%** | **$1** | **($0)** | **$1** | **9%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 0 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$0** | **34%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$1** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | 1 | 0% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$1** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 6 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$13** | | | | **–** | **–** |

73

FBG_CH1_00092729

**DEBTORS' EXHIBIT NO. 178**
**Page 330 of 360**

## Qualitor Subsidiary H, Inc. Chapter 7 Liquidation Analysis

### Qualitor Subsidiary H, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Costs | | | | | | | | | |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |
| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

74

FBG_CH1_00092730

DEBTORS' EXHIBIT NO. 178
Page 331 of 360

## Qualitor Subsidiary S, Inc. Chapter 7 Liquidation Analysis

### Qualitor Subsidiary S, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Costs | | | | | | | | | |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |
| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

75

FBG_CH1_00092731

**DEBTORS' EXHIBIT NO. 178**
**Page 332 of 360**

## Qualitor, Inc. Chapter 7 Liquidation Analysis

### Qualitor, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |
| Wind Down Costs | | | | | | | | Amount | Burden % |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |
| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

76

FBG_CH1_00092732

**DEBTORS' EXHIBIT NO. 178**
**Page 333 of 360**

## Reman Management International LLC Chapter 7 Liquidation Analysis

### Reman Management International LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

77

FBG_CH1_00092733

**DEBTORS' EXHIBIT NO. 178**
**Page 334 of 360**

## SDC TX, LLC Chapter 7 Liquidation Analysis

### SDC TX, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |
| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

78

FBG_CH1_00092734

DEBTORS' EXHIBIT NO. 178
Page 335 of 360

## Smart Choice, LLC Chapter 7 Liquidation Analysis

### Smart Choice, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

79

FBG_CH1_00092735

DEBTORS' EXHIBIT NO. 178
Page 336 of 360

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 81 of 104

## Specialty Pumps Group, Inc. Chapter 7 Liquidation Analysis

### Specialty Pumps Group, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$0** | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 0 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

80

FBG_CH1_00092736

## Strongarm, LLC Chapter 7 Liquidation Analysis

### Strongarm, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $1 | (1) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 8 | (5) | 2 | 19% | 0 | (0) | 0 | 17% |
| Inventory | [C] | 16 | (16) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 1 | (1) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 0 | (0) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 3 | (3) | – | – | – | – | – | – |
| All Other Assets | [I] | 13 | – | 13 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$42** | **($27)** | **$15** | **3%** | **$0** | **($0)** | **$0** | **3%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 0 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$0** | **34%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$0** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | 0 | 0% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$0** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 1 | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$1** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 4 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$11** | | | | **–** | **–** |

81

FBG_CH1_00092737

## TAE Brakes, LLC Chapter 7 Liquidation Analysis

**TAE Brakes, LLC**

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

82

FBG_CH1_00092738

## TAE China Holdings, Inc. Chapter 7 Liquidation Analysis

### TAE China Holdings, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

83

FBG_CH1_00092739

**DEBTORS' EXHIBIT NO. 178**
**Page 340 of 360**

## Toledo Molding & Die, LLC Chapter 7 Liquidation Analysis

### Toledo Molding & Die, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $1 | (1) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 63 | (51) | 11 | 12% | 1 | (0) | 1 | 11% |
| Inventory | [C] | 12 | (12) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 12 | (12) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 26 | (26) | – | – | – | – | – | – |
| All Other Assets | [I] | 42 | (42) | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$156** | **($144)** | **$11** | **12%** | **$1** | **($0)** | **$1** | **11%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 0 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 4% |
| **Total Wind Down Costs** | | | | | | | | **$0** | **34%** |

| | | | | | | | | Amount | |
|---|---|---|---|---|---|---|---|---|---|
| **Net Proceeds Available for Secured Claims** | | | | | | | | **$1** | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | 1 | 0% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$1** | **0%** |

| | | | | | | | | Amount | |
|---|---|---|---|---|---|---|---|---|---|
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 18 | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$18** | | | | **–** | **–** |

| | | | | | | | | Amount | |
|---|---|---|---|---|---|---|---|---|---|
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 37 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$43** | | | | **–** | **–** |

84

FBG_CH1_00092740

DEBTORS' EXHIBIT NO. 178
Page 341 of 360

## Transportation Aftermarket Enterprise, LLC Chapter 7 Liquidation Analysis

### Transportation Aftermarket Enterprise, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

85

FBG_CH1_00092741

**DEBTORS' EXHIBIT NO. 178**
**Page 342 of 360**

## Trico Holding Corporation Chapter 7 Liquidation Analysis

### Trico Holding Corporation

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | 10 | – | 10 | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$10** | **–** | **$10** | **–** | **–** | **–** | **–** | **–** |
| Wind Down Costs | | | | | | | Amount | Burden % |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |
| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |
| Secured Claims | | | | Est. Claim | | | Amount | Recovery % |
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
| Admin & Priority Claims | | | | Est. Claim | | | Amount | Recovery % |
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
| Unsecured Claims | | | | Est. Claim | | | Amount | Recovery % |
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | **–** | **–** |

86

FBG_CH1_00092742

**DEBTORS' EXHIBIT NO. 178**
**Page 343 of 360**

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 88 of 104

## Trico Products Corporation Chapter 7 Liquidation Analysis

### Trico Products Corporation

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $20 | (20) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | (463) | 507 | 43 | 9% | 4 | (0) | 3 | 8% |
| Inventory | [C] | 190 | (167) | 23 | 6% | 1 | (1) | 0 | 2% |
| Goodwill & Intangible Assets, net | [D] | 152 | (152) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | 6 | – | 6 | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 0 | (0) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 15 | (2) | 13 | 37% | 5 | (1) | 3 | 26% |
| All Other Assets | [I] | 83 | – | 83 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$2** | **$165** | **$167** | **6%** | **$10** | **($3)** | **$7** | **4%** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | 2 | 22% |
| Chapter 7 Operating Costs | [K] | | | | | | | 0 | 5% |
| Chapter 7 Trustee Fee | [L] | | | | | | | 0 | 3% |
| Liquidator Overhead Expenses | [M] | | | | | | | 0 | 2% |
| **Total Wind Down Costs** | | | | | | | | **$2** | **32%** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **$5** | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | 2 | 0% |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | 3 | 1% |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **$5** | **0%** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | 112 | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$112** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 131 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$137** | | | | **–** | **–** |

87

FBG_CH1_00092743

**DEBTORS' EXHIBIT NO. 178**
**Page 344 of 360**

## Trico Technologies Corporation Chapter 7 Liquidation Analysis

### Trico Technologies Corporation

| | | | | | Chapter 7 Liquidation | | | | |
| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $0 | (0) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 2 | (2) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 69 | (69) | – | – | – | – | – | – |
| All Other Assets | [I] | 6 | – | 6 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$77** | **($70)** | **$6** | **–** | **–** | **–** | **–** | **–** |
| Wind Down Costs | | | | | | | | Amount | Burden % |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |
| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |
| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
| General Unsecured Claims | | | | 4 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$11** | | | | **–** | **–** |

88

FBG_CH1_00092744

## Tridonex USA LLC Chapter 7 Liquidation Analysis

**Tridonex USA LLC**

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | – | – |

FBG_CH1_00092745

### UCI Acquisition Holdings (No. 4) LLC Chapter 7 Liquidation Analysis

**UCI Acquisition Holdings (No. 4) LLC**

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| | Global Notes | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Costs | | | | | | | | | |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |
| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | Global Notes | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | Global Notes | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

90

FBG_CH1_00092746

DEBTORS' EXHIBIT NO. 178
Page 347 of 360

## UCI International Holdings Parent Inc. Chapter 7 Liquidation Analysis

### UCI International Holdings Parent Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 10 | | | | – | – |
| **Total Admin & Priority Claims** | | | | $10 | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 3 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $10 | | | | – | – |

FBG_CH1_00092747

**DEBTORS' EXHIBIT NO. 178**
**Page 348 of 360**

## UCI International Holdings, Inc. Chapter 7 Liquidation Analysis

**UCI International Holdings, Inc.**

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 4 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$4** | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 1 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$8** | | | | – | – |

92

FBG_CH1_00092748

## UCI International, LLC Chapter 7 Liquidation Analysis

### UCI International, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 0 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

93

FBG_CH1_00092749

**DEBTORS' EXHIBIT NO. 178**
**Page 350 of 360**

## UCI Pennsylvania, Inc. Chapter 7 Liquidation Analysis

### UCI Pennsylvania, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **–** | **–** | **–** | **–** | **–** | **–** | **–** | **–** |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | **–** | **–** |

94

FBG_CH1_00092750

**DEBTORS' EXHIBIT NO. 178**
**Page 351 of 360**

Case 25-90399   Document 3046-9   Filed in TXSB on 06/23/26   Page 96 of 104

## UCI-Airtex Holdings, Inc. Chapter 7 Liquidation Analysis

**UCI-Airtex Holdings, Inc.**

| | | | | | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

95

FBG_CH1_00092751

## United Components, LLC Chapter 7 Liquidation Analysis

### United Components, LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $0 | (0) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | 1 | – | 1 | – | – | – | – | – |
| **Total Asset Proceeds** | | **$1** | **($0)** | **$1** | **–** | **–** | **–** | **–** | |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |

| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | **–** | | | | **–** | **–** |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$7** | | | | **–** | **–** |

96

FBG_CH1_00092752

**DEBTORS' EXHIBIT NO. 178**
**Page 353 of 360**

## Universal Auto Filter LLC Chapter 7 Liquidation Analysis

### Universal Auto Filter LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | (0) | 0 | – | – | – | – | – | – |
| Inventory | [C] | (0) | 0 | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | ($0) | $0 | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

97

FBG_CH1_00092753

## Viceroy Private Capital, LLC Chapter 7 Liquidation Analysis

**Viceroy Private Capital, LLC**

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| Net Proceeds Available for Secured Claims | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | – | | | | – | – |
| First Lien L/C Facility | [Q] | | | – | | | | – | – |
| First Lien Term Loans | [Q] | | | – | | | | – | – |
| Side-Car Term Loans | [Q] | | | – | | | | – | – |
| Second Lien Claims | [Q] | | | – | | | | – | – |
| **Total Secured Claims** | | | | $5,581 | | | | – | – |

| Net Proceeds Available for Admin & Priority Claims | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |

| Remaining Proceeds for Unsecured Claims | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

98

FBG_CH1_00092754

DEBTORS' EXHIBIT NO. 178
Page 355 of 360

## Viper Acquisition I, Inc. Chapter 7 Liquidation Analysis

### Viper Acquisition I, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 4 | | | | – | – |
| **Total Admin & Priority Claims** | | | | $4 | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 3 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $10 | | | | – | – |

99

FBG_CH1_00092755

**DEBTORS' EXHIBIT NO. 178**
**Page 356 of 360**

## Viper Acquisition, Inc. Chapter 7 Liquidation Analysis

### Viper Acquisition, Inc.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |
| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | – | | | | – | – |
| **Total Admin & Priority Claims** | | | | – | | | | – | – |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | – | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

100

FBG_CH1_00092756

**DEBTORS' EXHIBIT NO. 178**
**Page 357 of 360**

## Walbro LLC Chapter 7 Liquidation Analysis

### Walbro LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | $15 | (15) | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | 18 | (18) | – | – | – | – | – | – |
| Inventory | [C] | 14 | (14) | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | 65 | (65) | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | 12 | (12) | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | 17 | (17) | – | – | – | – | – | – |
| All Other Assets | [I] | 8 | (8) | – | – | – | – | – | – |
| **Total Asset Proceeds** | | **$149** | **($149)** | **–** | | **–** | **–** | **–** | **–** |
| Wind Down Costs | | | | | | | **Amount** | | **Burden %** |
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | **–** | **–** |
| **Net Proceeds Available for Secured Claims** | | | | | | | | **–** | |
| Secured Claims | | | | **Est. Claim** | | | | **Amount** | **Recovery %** |
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | **$9,054** | | | | **–** | **–** |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | **–** | |
| Admin & Priority Claims | | | | **Est. Claim** | | | | **Amount** | **Recovery %** |
| Administrative Claims | [R] | | | 2 | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | **$2** | | | | **–** | **–** |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | | **–** | |
| Unsecured Claims | | | | **Est. Claim** | | | | **Amount** | **Recovery %** |
| General Unsecured Claims | | | | 18 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | **$25** | | | | **–** | **–** |

101

FBG_CH1_00092757

**DEBTORS' EXHIBIT NO. 178**
**Page 358 of 360**

## Walbro Midco LLC Chapter 7 Liquidation Analysis

### Walbro Midco LLC

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Chapter 7 Liquidation Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |
| Wind Down Costs | | | | | | | Amount | | Burden % |
| Wind Down Professionals | [J] | | | | | | – | | – |
| Chapter 7 Operating Costs | [K] | | | | | | – | | – |
| Chapter 7 Trustee Fee | [L] | | | | | | – | | – |
| Liquidator Overhead Expenses | [M] | | | | | | – | | – |
| **Total Wind Down Costs** | | | | | | | – | | – |
| **Net Proceeds Available for Secured Claims** | | | | | | | – | | |
| Secured Claims | | | | Est. Claim | | | Amount | | Recovery % |
| DIP A Claims | [N] | | | 1,520 | | | – | | – |
| Roll-Up Claims | [O] | | | 4,061 | | | – | | – |
| ABL Claims | [P] | | | 427 | | | – | | – |
| First Lien L/C Facility | [Q] | | | 34 | | | – | | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | – | | – |
| Side-Car Term Loans | [Q] | | | 115 | | | – | | – |
| Second Lien Claims | [Q] | | | 730 | | | – | | – |
| **Total Secured Claims** | | | | $9,054 | | | – | | – |
| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | – | | |
| Admin & Priority Claims | | | | Est. Claim | | | Amount | | Recovery % |
| Administrative Claims | [R] | | | – | | | – | | – |
| Priority Claims | | | | – | | | – | | – |
| **Total Admin & Priority Claims** | | | | – | | | – | | – |
| **Remaining Proceeds for Unsecured Claims** | | | | | | | – | | |
| Unsecured Claims | | | | Est. Claim | | | Amount | | Recovery % |
| General Unsecured Claims | | | | – | | | – | | – |
| PBGC Claim | | | | 7 | | | – | | – |
| **Total Unsecured Claims** | | | | $7 | | | – | | – |

102

FBG_CH1_00092758

**DEBTORS' EXHIBIT NO. 178**
**Page 359 of 360**

## WEM US Co. Chapter 7 Liquidation Analysis

### WEM US Co.

| $ in Millions | Global Notes | April 2026 Trial Balance | Adj | Est. Liquidation Date Balance | Gross Recovery % | Gross Recovery | Less: Direct Expenses | Net Recovery | Net Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Asset Proceeds** | | | | | | | | | |
| Cash | [A] | – | – | – | – | – | – | – | – |
| Accounts Receivable, net | [B] | – | – | – | – | – | – | – | – |
| Inventory | [C] | – | – | – | – | – | – | – | – |
| Goodwill & Intangible Assets, net | [D] | – | – | – | – | – | – | – | – |
| Investment in Subsidiaries | [E] | – | – | – | – | – | – | – | – |
| Intercompany Receivable (Payable), net | [F] | – | – | – | – | – | – | – | – |
| Real Property, net | [G] | – | – | – | – | – | – | – | – |
| Machinery & Equipment, net | [H] | – | – | – | – | – | – | – | – |
| All Other Assets | [I] | – | – | – | – | – | – | – | – |
| **Total Asset Proceeds** | | – | – | – | – | – | – | – | – |

| Wind Down Costs | | | | | | | | Amount | Burden % |
|---|---|---|---|---|---|---|---|---|---|
| Wind Down Professionals | [J] | | | | | | | – | – |
| Chapter 7 Operating Costs | [K] | | | | | | | – | – |
| Chapter 7 Trustee Fee | [L] | | | | | | | – | – |
| Liquidator Overhead Expenses | [M] | | | | | | | – | – |
| **Total Wind Down Costs** | | | | | | | | – | – |

| **Net Proceeds Available for Secured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Secured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| DIP A Claims | [N] | | | 1,520 | | | | – | – |
| Roll-Up Claims | [O] | | | 4,061 | | | | – | – |
| ABL Claims | [P] | | | 427 | | | | – | – |
| First Lien L/C Facility | [Q] | | | 34 | | | | – | – |
| First Lien Term Loans | [Q] | | | 2,168 | | | | – | – |
| Side-Car Term Loans | [Q] | | | 115 | | | | – | – |
| Second Lien Claims | [Q] | | | 730 | | | | – | – |
| **Total Secured Claims** | | | | $9,054 | | | | – | – |

| **Net Proceeds Available for Admin & Priority Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Admin & Priority Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| Administrative Claims | [R] | | | – | | | | – | – |
| Priority Claims | | | | 0 | | | | – | – |
| **Total Admin & Priority Claims** | | | | $0 | | | | – | – |

| **Remaining Proceeds for Unsecured Claims** | | | | | | | | – | |
|---|---|---|---|---|---|---|---|---|---|

| Unsecured Claims | | | | Est. Claim | | | | Amount | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Claims | | | | 0 | | | | – | – |
| PBGC Claim | | | | 7 | | | | – | – |
| **Total Unsecured Claims** | | | | $7 | | | | – | – |

103

FBG_CH1_00092759