**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>FIRST BRANDS GROUP, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-90399 (CML)<br><br>(Jointly Administered)<br><br>Re: 2685, 2895 |

**THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS'
REPLY IN SUPPORT OF MOTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR (I) LEAVE,
STANDING, AND AUTHORITY TO COMMENCE AND PROSECUTE
CERTAIN CLAIMS AND CAUSES OF ACTION ON BEHALF OF THE
DEBTORS' ESTATES AND (II) EXCLUSIVE SETTLEMENT AUTHORITY**

The Official Committee of Unsecured Creditors (the "Committee" or the "Official Committee") in the above-captioned chapter 11 cases of First Brands Group, LLC and its affiliated debtors (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this reply (the "Reply") in Support of the *Motion of the Official Committee of Unsecured Creditors for (i) Leave, Standing, and Authority to Commence and Prosecute Certain Claims and Causes of Action on Behalf of the Debtors' Estates and (ii) Exclusive Settlement Authority* (Dkt. No. 2685, the "Standing Motion") and in response to *Aequum Capital Financial II LLC's Objection to Motion of the Official Committee of Unsecured Creditors for (i) Leave, Standing, and Authority to Commence and Prosecute Certain Claims and Causes of Action on Behalf of the Debtors' Estates*

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

FBG_CH1_00093263

**DEBTORS' EXHIBIT NO. 182**
**Page 1 of 28**

*and (ii) Exclusive Settlement Authority* (Dkt. No. 2895, the "Objection").[2]  In support of this Reply

and the Standing Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The situation at hand presents precisely the circumstances in which derivative standing is warranted.  Aequum's Objection does not contradict this, but confirms it.

2.      Rather than address the limited, threshold standing inquiry before the Court, Aequum attempts to litigate the merits of the proposed claims—advancing fact-intensive defenses, disputing well-pled allegations, and recasting the record in its favor.  That is not the applicable standard.  At this stage, the Committee need only demonstrate that the claims are colorable, that the Debtors have unjustifiably failed to pursue them, and that prosecution of those claims may benefit the estate.  Each of those requirements is readily satisfied.

3.      At bottom, Aequum's Objection rests on a flawed premise—that the existence of a $45 million credit facility (which, Aequum asserts, is wholly legitimate) insulates the $11.7 million in challenged transfers from avoidance as a matter of law.  But the Committee does not challenge the mere existence of a loan; it challenges a series of transactions that were structured, executed, and used as part of a broader fraudulent scheme.  By isolating the loan from the surrounding facts— the evident "red flags" which put Aequum on inquiry notice of impropriety—Aequum ignores the very allegations that render the proposed claims not only colorable, but substantial.

4.      Aequum's arguments regarding reasonably equivalent value and fraudulent intent similarly depend on a premature and improper merits analysis.  The Committee has alleged that the loan proceeds were not used for the benefit of the FBG Debtors, but were instead diverted to

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Standing Motion or in the Proposed Complaint attached to the Standing Motion as Exhibit B, as applicable.

FBG_CH1_00093264

DEBTORS' EXHIBIT NO. 182
Page 2 of 28

insiders, leaving the FBG Debtors' estates with repayment obligations but without any corresponding value. The Committee further alleges a cohesive fraudulent scheme supported by badges of fraud and, independently, the Ponzi scheme presumption. Whether those allegations ultimately prevail is a question for plenary litigation. For standing purposes, they easily clear the "not without merit" standard required to establish colorability.

5. Aequum's arguments that the Debtors' refusal to bring claims is "justified" are similarly unavailing. Aequum points to the existence of a Special Committee, an Examiner, and parallel investigations, but ignores the relevant standard: when a debtor "is unable or unwilling to fulfill its obligation" to pursue a colorable cause of action that would benefit the estate, failure to bring such claims is "unjustifiable" under the case law, and it is appropriate for the committee to receive standing to do so.[3] The Debtors' challenge deadline to pursue certain claims against Aequum has expired. Their failure to bring colorable claims amounts to a failure to maximize value for the estate, which is unjustifiable under Fifth Circuit case law. Moreover, the Debtors have not objected to Committee standing, rendering the Objection moot.[4]

6. Aequum's cost-benefit arguments are equally unavailing. The Committee seeks to recover at least $11.7 million, along with additional post-petition transfers and potential claim disallowance or subordination—relief that would materially benefit the estate. Aequum's assertion that any recovery would be "circular" rests on disputed assumptions regarding financing structure and lien validity that are the subject of ongoing litigation. In the Committee's Proposed Complaint, the FBG Debtors are the plaintiffs, with Broad Street as an initial transferee. Aequum appears to be arguing that Broad Street should be the plaintiff, and asserts that because it is the

---

[3] *Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 252 (5th Cir. 1988).

[4] *See Order Denying Motion to Amend, In re Exco Resources, Inc.*, No. 18-30155, Dkt. No. 1799 (Bankr. S.D. Tex. Apr. 9, 2019).

FBG_CH1_00093265

only creditor at Broad Street, there would be no recoveries to any other creditors if payments to Aequum are recovered by Broad Street. Even if the Proposed Complaint had been drafted with Broad Street as plaintiff, Aequum's argument would fail: there has been no bar date established, and there are likely to be significant intercompany claims by other FBG Debtors against Broad Street in part based on the claims in this litigation. At minimum, the potential upside is substantial, and Aequum fails to put forward evidence of costs that would outweigh it.

7.      Ultimately, Aequum's Objection is an effort to foreclose valuable estate claims by introducing factual disputes that are not properly considered in adjudicating a derivative standing motion. That effort fails. The Committee has identified substantial, unpursued causes of action supported by specific and compelling allegations. Here, controlling precedent permits, indeed requires, the Court to allow the Committee to step into the breach. The Court should overrule the Objection and grant the Standing Motion in full.

## REPLY

8.      In the Fifth Circuit, a committee may obtain standing to pursue an estate cause of action where (i) a colorable claim exists, (ii) the debtor unjustifiably refuses to pursue the claim, and (iii) the Court grants permission to initiate the action on behalf of the debtor's estate.[5] For the reasons set forth below and in the Standing Motion, the Committee satisfies the Fifth Circuit's standing requirements here.

---

[5]    *See, e.g., In re Louisiana World Exposition, Inc.*, 832 F.2d 1391,1397 (5th Cir. 1987).

FBG_CH1_00093266

## I.     The Proposed Complaint Asserts Colorable Claims.[6]

### A.     A Colorable Claim Is A Low Threshold To Satisfy.

9.     A "colorable" claim is one that is "not without merit"—a deliberately low threshold.[7] At the standing stage, the Court does not conduct a mini-trial.[8] The Court simply ensures that the proposed litigation "will not be a hopeless fling."[9] As part of its inquiry, the Court may consider the likelihood of success and recovery, along with anticipated litigation costs.[10]

10.     Colorable claims must merely "raise serious issues for determination" even if those claims would not ultimately survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[11] And once a determination has been made that the claims are colorable, "the issues will be decided where they should be decided—in the plenary litigation itself, where the need to prove allegations will remain, and where factual and legal claims and defenses can and will be considered on their individual merits."[12]

11.     The Committee's findings, set forth herein and in the Motion and Proposed Complaint, strongly support the claims against Aequum. The claims could yield up to $11.7 million for the estate and readily satisfy the colorability threshold.

---

[6]   Aequum offers no substantive challenge to the colorability of the Committee's disallowance claim, beyond a cursory statement that the claim is not colorable.

[7]   *In re Distributed Energy Sys., Corp.*, No. 08-11101 (KG), ECF No. 315, at 44:15-18 (Bankr. D. Del. July 30, 2008) (transcript).

[8]   *Adelphia Commc'ns Corp. v. Bank of Am., N.A.* (*In re Adelphia Commc'ns Corp.*), 330 B.R. 364, 377 (Bankr. S.D.N.Y. 2005).

[9]   *Id.* at 386.

[10]   *In re iPCS, Inc.*, 297 B.R. 283, 291 (Bankr. N.D. Ga. 2003).

[11]   *In re ABC Utils. Servs,* No. 89-41420-BJH-7, 2001 Bankr. LEXIS 2240, at *27 (Bankr. N.D. Tex. Oct. 9, 2001); *see also In re Distributed Energy Sys., Corp.*, No. 08-11101 (KG), ECF No. 315, at 44:15-18 (Bankr. D. Del. July 30, 2008) (transcript) (noting that the colorability standard is less than a Rule 12(b)(6) standard and requires only plausibility and that the claims be not "without merit"); *In re Adelphia Commc'ns Corp.*, 330 B.R. at 378 (granting committee standing despite holding that some claims would likely be dismissed under Rule 12(b)(6)).

[12]   *In re Adelphia Commc'ns Corp.*, 330 B.R. at 381.

FBG_CH1_00093267

**DEBTORS' EXHIBIT NO. 182**
**Page 5 of 28**

**B.     The Committee's Fraudulent Transfer Claims Are Colorable.**

12.     The Committee has asserted colorable claims for actual and constructive fraudulent transfer (Counts I, II, VI, and VII).  The Bankruptcy Code and applicable law allow for avoidance of transfers as (i) actually fraudulent upon a showing that the transfer was made with actual intent to hinder, delay, or defraud a creditor,[13] and (ii) constructively fraudulent upon a showing that the debtor did not receive reasonably equivalent value in respect of the transfer and was or became insolvent.

13.     As discussed below and in depth in the Standing Motion, the Proposed Complaint alleges facts which, taken as true, establish that the transfers made pursuant to the Broad Street Facility are actually and constructively fraudulent.  The Committee pleads with particularity that First Brands operated a Ponzi scheme using SPV borrowers, including Broad Street, as conduits to mask and enable the Debtors' and James' fraud.  Aequum ignored blatant red flags and extended tens of millions of dollars at above-market rates against inventory that Broad Street never came into possession of.   The loan proceeds were immediately diverted away from First Brands and into the hands of Patrick James, enabling Aequum to benefit to the tune of millions in interest payments while draining the Debtors' estates.  Together, these facts (i) supply badges of fraud and support an inference of the FBG Debtors' intent to hinder, delay, and defraud creditors, (ii) support application of the Ponzi scheme presumption, from which insolvency and reasonably equivalent value is presumed as a matter of law, and (iii) notwithstanding the Ponzi scheme presumption, show that the Debtors did not receive reasonably equivalent value for the challenged transfers.

14.     Aequum argues that the Committee's claims are not colorable because it has purported defenses to these claim—that is, it claims to have been a good-faith lender.  It also

---

[13]     *See* 11 U.S.C. § 548(a)(1)(A).

FBG_CH1_00093268

asserts that (contrary to the allegations in the Proposed Complaint) the Broad Street Facility was a "legitimate lending arrangement" and that therefore the Ponzi presumption does not apply. Neither of these arguments is relevant to the question of colorability, which is assessed on a standard *lower* than a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[14] If and when the Committee is granted standing, Aequum will have a full and fair opportunity to make these arguments. But these arguments do not defeat the Committee's request for standing.

### 1.   Aequum's Exclusive Focus On Broad Street Is Unavailing.

15.   Aequum argues that the Proposed Complaint puts forth an impermissible "selective analysis" of value and obligation with respect to the Broad Street Facility, and that instead the Court must focus only on "the specific transfer challenged and the value exchanged in connection with that transfer."[15]   It argues that the Committee "ignores the value conferred by the Aequum Loan" and that therefore the fraudulent transfer claims are not colorable.  Aequum is mistaken.

16.   The Proposed Complaint alleges that the Aequum Transfers ultimately originated from the FBG Debtors, and that the FBG Debtors did not receive value in exchange, because most (if not all) of the loan proceeds from Aequum were immediately diverted from Broad Street and instead inured to the benefit of Patrick James, his family, and related entities.  In other words, the FBG Debtors are plaintiffs seeking a recovery that would bypass Broad Street.  The Aequum Transfers of approximately $12 million were primarily interest payments made on approximately $44 million of funded loans; the Transfers are also inclusive of nominal principal repayments, professional fees, and transaction costs.[16]  As stated in the Proposed Complaint, the loan proceeds

---

[14]   *In re ABC Utils. Servs.*, Bankr. LEXIS 2240, at *27; *see In re Centaur, LLC*, No. 10-10799 (KJC), 2010 WL 4624910, at *4 (Bankr. D. Del. Nov. 5, 2010) (in determining whether a claim is colorable, a court should undertake a Rule 12(b)(6) analysis); *In re Am.'s Hobby Ctr., Inc.*, 223 B.R. 275, 282-88 (Bankr. S.D.N.Y. 1998) (observing that standing should only be denied if a claim is "facially defective").

[15]   Objection ¶¶ 62.

[16]   Proposed Complaint ¶¶ 87-88.

FBG_CH1_00093269

**DEBTORS' EXHIBIT NO. 182**
**Page 7 of 28**

(roughly $43 million) were, upon receipt, same-day transferred by Broad Street to Bowery for the benefit of Patrick James.[17]  So the FBG Debtors effectively made $12 million on payments in return for no benefit at all.  Aequum's argument that the Broad Street Facility conferred value upon Broad Street thus contradicts the allegations in the Proposed Complaint.  Broad Street was, at best, a pass-through entity that was merely designed to perpetuate the James brothers' fraud.

17.    Aequum further argues that off-balance sheet lending is a common good-faith lending practice.  That may very well be true, and the Committee does not dispute that in other circumstances, untainted by pervasive fraud and double-pledged assets, it may be appropriate to use SPV lending structures.  But that does not undermine the allegations in the Proposed Complaint that here, it was used to commit fraud.  Nor does it undermine the allegations in the Proposed Complaint that Aequum ignored red flags that the Debtors and the James brothers were committing fraud, including outsized returns, involvement of intermediaries (Helios), and denial of a required appraisal—but nevertheless proceeded with funding.[18][19]  That willful blindness will, at trial, defeat any good faith defense Aequum attempts to raise, and reinforces the plausibility of the Committee's fraudulent transfer claims.

18.    In any case, this analysis is wholly premature, and should be reserved for a merits determination, not whether the Committee's claims are colorable.  The Committee's burden is

---

[17]   *Id.* ¶¶ 134-135.

[18]   *Id.* ¶¶ 86, 114.

[19]   A transferee does not receive a transfer in good faith when (1) the transferee was "'on inquiry notice that the transferor was insolvent or that the transfer might be made with a fraudulent purpose,'" and (2) if put on inquiry notice, the transferee failed to engage in a "'diligent investigation.'" *See In re Am. Hous. Found.*, 785 F.3d 143, 164 (5th Cir. 2015) (quoting *Horton v. O'Cheskey (In re Am. Hous. Found.)*, 544 F. App'x 516, 520 (5th Cir. 2013)); To invoke the TUFTA good faith defense, a transferee similarly "cannot possess either actual or inquiry notice of a transfer's fraudulent nature." *Janvey v. GMAG, L.L.C.*, 925 F.3d 229, 233 (5th Cir. 2019); *Hahn v. Love*, 321 S.W.3d 517, 527 (Tex. App. - Houston [1st Dist.] 2009, pet. denied) ("A transferee who takes property with knowledge of such facts as would excite the suspicions of a person of ordinary prudence and put him on inquiry of the fraudulent nature of an alleged transfer does not take the property in good faith and is not a bona fide purchaser").

FBG_CH1_00093270

**DEBTORS' EXHIBIT NO. 182**
**Page 8 of 28**

merely to satisfy "a really low standard"[20] intended to make sure the proposed litigation will not be "hopeless."[21]

**2.     The Proposed Complaint**
**Adequately Alleges That The Ponzi Scheme**
**Presumption Should Apply To The Broad Street Facility.**

19.     The Fifth Circuit has defined a Ponzi scheme as a "fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments."[22]   The Proposed Complaint alleges that as early as 2020, First Brands obtained funding, including from factoring, supply chain financing, and M&A activity, to perpetuate outsized returns and distributions, and to prop up the perceived value of its assets, which it used to attract more investment.[23] The federal government shares the view that the Debtors were a Ponzi scheme.[24]  A finding that the Debtors were a Ponzi scheme, as alleged in the Proposed Complaint, would establish as a matter of law the fraudulent intent necessary to avoid and recover every transfer made in furtherance of such

---

[20]     *See In re Chesapeake*, No. 20-33233, ECF No. 2906, at 325:5-11 (Bankr. S.D. Tex. Jan. 13, 2021) (transcript); *In re Adelphia Commc'ns Corp.* 330 B.R. at 376 ("Caselaw construing requirements for 'colorable' claims has made it clear that the required showing is a relatively easy one to make.").

[21]     *In re Adelphia Commc'ns Corp.*, 330 B.R. at 386.

[22]     *Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. 2011) (quoting BLACK'S LAW DICTIONARY 1198 (8th ed. 2004)). Other jurisdictions have considered the following factors in determining a Ponzi scheme: to determine whether a fraudulent scheme is a Ponzi scheme, (1) the absence of any legitimate business connected to the investment program; (2) the unrealistic promises of low risk and high returns; (3) commingling investor money; (4) the use of agents and brokers paid high commissions to perpetuate the scheme; (5) misuse of investor funds; (6) the payment of excessively large fees to the perpetrator; and (7) the use of false financial statements. *In re EPD Inv. Co., LLC*, 114 F.4th 1148, 1159 (9th Cir. 2024); *In re Dreier LLP*, No. 08-15051 (SMB), 2014 WL 47774, at *9 (Bankr. S.D.N.Y. Jan. 3, 2014); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 528 F. Supp. 3d 219, 237–38 (S.D.N.Y. 2021) *aff'd sub nom. Picard v. JABA Assocs. LP*, 49 F.4th 170 (2d Cir. 2022)); *In re Diamond Fin. Co., Inc.*, 658 B.R. 748, 767 (Bankr. E.D.N.Y. 2024); *Commodity Futures Trading Comm'n v. Alexandre*, No. 22-cv-3822 (VEC), 2025 WL 252435, at *4 (S.D.N.Y. Jan. 21, 2025).

[23]     Proposed Complaint ¶¶ 2, 54-50, 144.

[24]     Matt Ott, *Former First Brands CEO Patrick James and His Brother Are Indicted for Bilking Billions from Banks*, Associated Press (Jan. 29, 2026), https://apnews.com/article/first-brands-indictment-fraud-patrick-james-7762ad05a881f335c5f6a5059fc1cc1c.

9

FBG_CH1_00093271

**DEBTORS' EXHIBIT NO. 182**
**Page 9 of 28**

scheme.[25]

20.     Aequum makes three arguments that the Ponzi scheme presumption is inapplicable. First, it argues that it cannot be applied because the payments made by Broad Street to Aequum were made under a credit facility and were not investor distributions.[26]  But this argument fails, because the Ponzi scheme presumption applies equally to schemes where creditors played the role of investors.[27]

21.     Second, it argues that the Ponzi scheme presumption does not apply because the Broad Street Facility was a "legitimate lending arrangement."  The Proposed Complaint alleges otherwise: the Broad Street Facility was manufactured by the James brothers with the specific intent to conceal additional financing used to perpetuate their fraud.[28]  The Proposed Complaint alleges fabricated invoices, double-pledged collateral, and off-balance sheet financing (including the Broad Street Facility), all executed as part of a ruse to increase First Brands Group's lending capacity.[29]  First Brands Group continuously found ways to fabricate their financial statements to facilitate further lending arrangements they would not have access to but for the perpetuated fraud.[30]  The fraud is rife with signs of little legitimate business,[31] comingling of creditors'

---

[25]   *S.E.C. v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007) (proving that a debtor operated as a Ponzi scheme establishes the fraudulent intent behind the transfers it made).

[26]   Objection ¶¶ 74-78.

[27]   *See Sec. Inv. Prot. Corp.*, 528 F. Supp. 3d at 238 (applying the Ponzi scheme presumption in the context of creditors rather than investors).

[28]   Proposed Complaint ¶ 143.

[29]   *Id.* ¶¶ 93, 108-114.

[30]   *Id.* ¶ 93.

[31]   *Id.* ¶¶ 96-99.

FBG_CH1_00093272

**DEBTORS' EXHIBIT NO. 182**
**Page 10 of 28**

money,[32] misuse of creditors' funds,[33] payment to insiders of First Brands Group,[34] and the use of false financial statements to keep the Ponzi scheme going.[35]

22. Aequum will have the opportunity to litigate the merits of the case and assert defenses if and when the Committee is granted standing—but not now. Moreover, at trial, once the Committee establishes badges of fraud or the applicability of the Ponzi presumption by a preponderance of the evidence, Aequum will bear the burden of persuasion to demonstrate that a legitimate business purpose existed for the challenged transfer.[36] But at the standing stage, all the Committee needs to do is establish a colorable basis for the Ponzi presumption, and the allegations in the Proposed Complaint have done so.

23. Third, Aequum argues that the Standing Motion fails because the Proposed Complaint does not sufficiently allege that the Broad Street Facility was "in furtherance of" the Debtors' Ponzi scheme. They claim that the Proposed Complaint "does not plausibly allege that the Debtors' operations depended upon the Aequum Loan to avoid imminent collapse, that the Revolving Credit Facility was used to attract new investors, or that the challenged payments were necessary to conceal or perpetuate any alleged fraud."[37] The Committee disputes that courts have established a strict test that requires each of these elements in order to satisfy the "in furtherance" requirement, and Aequum has not cited any such test. Nonetheless, the Proposed Complaint does in fact include these allegations. The transfers pursuant to the Broad Street Facility were off-

---

[32]   *Id.* ¶¶ 115-126.

[33]   *Id.* ¶¶ 115-126.

[34]   *Id.* ¶¶ 127-137.

[35]   *Id.* ¶¶ 59, 93, 126.

[36]   *See In re The Heritage Org. L.L.C.,* 413 B.R. 438 (Bankr. N.D. Tex. 2009)

[37]   Objection ¶ 81.

FBG_CH1_00093273

**DEBTORS' EXHIBIT NO. 182**
**Page 11 of 28**

balance sheet financing, created specifically to conceal the Debtors' fraud.[38]   The SPV  loans, including the Broad Street Facility, were designed to hide the Debtors' true financial condition from their lenders.[39]   Broad Street would not have entered into the Broad Street Facility but for the Debtors' goal of concealing the off-balance sheet financing.[40]   Broad Street would not have sought this off-balance sheet financing but for the James brothers' goal of siphoning money for their own benefit, and shuttling funds to keep their Ponzi scheme alive.[41]

24.     Notably, the Proposed Complaint alleges that in 2025, Jefferies launched a global refinancing process on behalf of the FBG Debtors.  During this global refinancing process, the off-balance sheet financing was discovered.[42]  First Brands Group's credit rating was downgraded by multiple creditors.  This ultimately led to an unsuccessful refinancing process and ultimately led to the FBG Debtors experiencing a credit crunch.  Once First Brands Group was no longer able to pursue refinancing opportunities because the creditor community was aware of their shady dealings, they were forced to resort to forbearance agreements, further deteriorating their financial position. The transfers pursuant to the off-balance sheet arrangement thus did affect investor confidence and once discovered, played an integral part in the collapse of the Ponzi façade.[43]  The Ponzi presumption allegations in the Proposed Complaint are therefore colorable.

---

[38]   Proposed Complaint ¶¶ 108-114.

[39]   *Id.* ¶ 139.

[40]   *Id.* ¶¶ 108-126, 149.

[41]   *Id.* ¶¶ 127-137, 144, 152.

[42]   *Id.* ¶¶ 63-64.

[43]   *Id.* ¶¶ 63-70.

FBG_CH1_00093274

**DEBTORS' EXHIBIT NO. 182**
**Page 12 of 28**

### 3.     The Proposed Complaint Adequately Alleges Badges Of Fraud.

25.     Aequum argues that the Standing Motion should be denied because the badges of fraud asserted by the Committee hold little weight,[44] and that the Committee has offered no direct evidence that the transfers were made with actual intent to hinder, delay, or defraud creditors.[45] Putting aside the Committee' argument that the Ponzi presumption applies to establish actual fraud, the Proposed Complaint is replete with allegations regarding both direct evidence of fraud, and the badges of fraud.

26.     In particular, Edward James possessed actual intent to defraud creditors through the Aequum Facility.[46] Edward James helped create the Aequum lending relationship for First Brands. In essence, Edward James purposely structured the off-balance sheet Aequum Facility to divert estate value away from the Debtors as part of a greater effort to hinder and defraud creditors, which was deliberately hidden from those creditors.[47] The Committee is confident that with additional discovery, even more direct evidence would be uncovered.

27.     When determining whether a transfer was made with actual intent to hinder, delay, or defraud, courts can consider direct evidence, or circumstantial evidence to prove actual intent through a "badge of fraud" analysis.[48]

---

[44]  Objection ¶¶ 97-98.

[45]  *Id.* ¶¶ 90-92.

[46]  *Matter of Life Partners Holdings, Inc.,* 926 F.3d 103, 117 (5th Cir. 2019) (stating that under TUFTA, a transfer made or obligation incurred by a debtor is fraudulent if the debtor made the transfer or incurred the obligation with the actual intent to hinder, delay or defraud any creditor); *see also In re Tegeler,* 586 B.R. 598, 673-74 (Bankr. S.D. Tex. 2018) (establishing the badges of fraud analysis); *see also See Sec. Inv. Prot. Corp.,* 528 F. Supp. 3d at 237-38 (stating that the Ponzi scheme presumption satisfies the actual intent prong of an intentional fraudulent transfer).

[47]  *Id.*

[48]  *Matter of Galaz,* 850 F.3d 800, 804 (5th Cir. 2017) (citing *Walker v. Anderson,* 232 S.W.3d 899, 914 (Tex. Ct. App. 2007) (holding that direct proof of fraudulent intent is often unavailable thus courts consider circumstantial evidence).

FBG_CH1_00093275

**DEBTORS' EXHIBIT NO. 182**
**Page 13 of 28**

28.     In the Fifth Circuit courts have considered whether (1) the transfer was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer was concealed; (4) before the transfer was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.[49]

### 4.     The Committee's Constructive Fraud Claims are Colorable.

29.     As discussed in depth in the Proposed Complaint, the Committee has alleged facts, which taken as true, are sufficient to establish that the transfers made pursuant to the Broad Street Facility are constructively fraudulent.

30.     Aequum mischaracterizes the reasonably equivalent value inquiry, asserting that it focuses only on "the value received by the debtor at the time of the challenged transaction."[50] In the Fifth Circuit, it is well established law that the proper focus is on the *net effect* of the transaction on the debtor's estate.[51] Stated differently, the proper inquiry in "analyzing the exchange of

---

[49]    *In re Tegeler*, 586 B.R. at 673; *In re Ritz*, 567 B.R. 715, 740 (Bankr. S.D. Tex. 2017).

[50]    Objection ¶ 104; *Id.* ¶¶ 105-107.

[51]    *See In re TransTexas Gas Corp.*, 597 F.3d 298, 306 (5th Cir. 2010) (stating that "[t]o measure reasonably equivalent value, we judge the consideration given for a transfer from the standpoint of creditors….The proper focus is on the net effect of the transfers on the debtor's estate, [and] the funds available to the unsecured creditors") (internal quotes omitted).

14

FBG_CH1_00093276

value...is the degree to which the transferor's net worth is preserved."[52] Aequum itself acknowledges that a borrower receives reasonably equivalent value only when "the borrower obtains the use and benefit of the loan proceeds."[53] Because the loan proceeds here were immediately diverted to Bowery for the benefit of Patrick James, the FBG Debtors received no such value. Instead, the FBG Debtors' estates were drained of roughly $12 million, to the benefit of Aequum and its investors.

31.     Aequum further argues that the Committee's allegations with respect to insolvency are conclusory. But, the Proposed Complaint alleges facts with sufficient particularity to support a claim for the FBG Debtors' insolvency.[54] As alleged in the Proposed Complaint, First Brands fabricated invoices and manipulated financials to obtain fresh factoring and off-balance-sheet financing, then cycled those funds to cover prior obligations and enrich insiders, the hallmark of a Ponzi scheme. Management double- and triple-pledged the same inventory and funneled tens of millions through entities like Broad Street.[55] And, under the Ponzi scheme presumption, a business that survives only by using new financing obtained through fraud to pay existing obligations is deemed insolvent from the scheme's inception.[56]

---

[52] *S.E.C. v. Resource Dev. Intern., LLC*, 487 F.3d 295 (5th Cir. 2007) (noting that "[c]onsideration having no utility from a creditor's viewpoint does not satisfy the statutory definition" for reasonably equivalent value) (internal quotes omitted).

[53] Objection ¶ 106.

[54] *See In re PennySaver USA Publishing, LLC*, 587 B.R. 445, 456 (Bankr. D. Del 2018) (stating that "[a]t the motion to dismiss stage, to plead adequately a constructive fraud claim 'all that is needed...is an allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent'" and the trustee "needs only to state facts with sufficient particularity to provide the defendant with fair notice of the charges against him").

[55] Proposed Complaint ¶¶ 93-142.

[56] *See e.g.*, *Finn v. All. Bank*, 860 N.W.2d 638, 645-46 (Minn. 2015) (finding upon establishment of Ponzi Scheme presumption that 1) "the mere existence of a Ponzi scheme would prove as a matter of law that the debtor was insolvent at the time of a disputed transfer, regardless of the transfer's timing and the actual operations of the debtor" and 2) "a court would be required to presume that any transfer from a Ponzi scheme was not for reasonably equivalent value, which would both establish the second requirement of a constructive-fraud claim and negate the statutory defense to an actual-fraud claim") (internal citations and quotations omitted).

FBG_CH1_00093277

**DEBTORS' EXHIBIT NO. 182**
**Page 15 of 28**

32.     In any event, insolvency is a fact-intensive determination that should be resolved in plenary proceedings, not at the standing stage.[57]  As noted in the Proposed Complaint[58] and the Examiner's Report,[59] First Brands' financial records are so unreliable that the typical insolvency analyses cannot be completed until those records are reconstructed.  Even so, the Committee expects that accurate financials will reveal that the FBG Debtors were insolvent during the relevant transfer period.

33.     Therefore, the Proposed Complaint states particular facts sufficient to support a colorable claim for constructive fraud against Aequum and the Aequum Investors.

### C.     The Committee's Equitable Subordination Claim Is Colorable.

34.     Despite Aequum's arguments to the contrary, the Committee has asserted a colorable claim for equitable subordination of Aequum's claims against the FBG Debtors pursuant to 11 U.S.C. § 510(c) for the amounts purportedly owed under the Broad Street Facility. *In re Mobile Steel Co.* provides that equitable subordination is appropriate where (i) the claimant has engaged in inequitable conduct, (ii) the misconduct injured other creditors or conferred an unfair advantage, and (iii) the equitable subordination is not inconsistent with the Bankruptcy Code.[60]

35.     Further discovery will determine whether the heightened non-insider standard Aequum invokes applies;[61] even assuming it does—requiring more egregious conduct such as

---

[57]     *See In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 457 (Bankr. D. Del 2018) (stating that "reasonably equivalent value and insolvency are generally factual determinations that should be reserved for discovery" and collecting cases supporting that insolvency is a factual determination not appropriate for a motion to dismiss or pleading stage).

[58]     Proposed Complaint ¶ 160.

[59]     *Sealed Examiner's Report* at 69, Dkt. No. 2479.

[60]     *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699-700 (5th Cir. 1977).

[61]     Objection ¶ 114.

FBG_CH1_00093278

fraud, spoliation, or overreaching[62]—the Committee's allegations still clear the colorability threshold. The relevant question at this stage is not whether Aequum was an insider, but whether its conduct—viewed against either standard—presents a colorable claim for sufficiently inequitable conduct which caused creditor injury or conferred unfair advantage.

36.     Aequum attempts to recast its conduct as typical of an ordinary course commercial lending facility,[63] but the facts pleaded in the Proposed Complaint depict otherwise. Among other things, the Proposed Complaint alleges that Aequum proceeded with the transaction despite the FBG Debtors' denial (through Edward James) of its commonplace appraisal request,[64] imposed above-market economics,[65] and realized outsized returns as a result of those economics.[66] This combination of facts plausibly reflects inquiry-notice of glaring red flags, willful blindness, and unjust enrichment at the expense of the FBG Debtors' creditors sufficient to meet even a heightened showing for inequitable conduct at the standing stage.

37.     As pled in the Standing Motion and Proposed Complaint, Aequum's inequitable conduct caused the FBG Debtors' creditors concrete harm by enabling the fraud, and Aequum's lien positions it to capture recoveries at the expense of unsecured creditors.[67] In sum, the Proposed Complaint sufficiently pleads a colorable claim for equitable subordination.

---

[62]   *See In Matter of Fabricators, Inc.*, 926 F.2d 1458, 1465 (1991).

[63]   Objection ¶¶ 115-116.

[64]   Proposed Complaint ¶¶ 79-80.

[65]   *Id.* ¶¶ 78-88.

[66]   *Id.* ¶ 88.

[67]   *Id.* ¶ 86, 98, 158; *Fabricators, Inc. v. Tech. Fabricators, Inc. (In re Fabricators, Inc.)*, 109 B.R. 186, 195 (Bankr. S.D. Miss. 1987), *opinion aff'd*, 126 B.R. 239 (S.D. Miss. 1989), *judgment aff'd*, 926 F.2d. 1458 (5th Cir. 1991).

FBG_CH1_00093279

DEBTORS' EXHIBIT NO. 182
Page 17 of 28

## II.        The Debtors Have Unjustifiably Refused To Bring Claims Against Aequum.

38.      The Proposed Complaint adequately alleges that the Debtors have unjustifiably refused to pursue estate claims against Aequum and its investors.  Under 11 U.S.C. § 704(a)(1), a debtor in possession must pursue estate causes of action when doing so would maximize estate value.[68]  When a colorable claim exists but the debtor unjustifiably is "unable or unwilling to fulfill its obligations," it is appropriate for a creditors' committee to be granted standing to prosecute such claims. [69]

39.      Because colorable claims exist here and the cost-benefit analysis establishes that prosecution of these claims will maximize the value of the estate, failure to bring these causes of action is unjustified.[70]  The Debtors' challenge deadline to pursue claims against Aequum expired on March 4, 2026.[71]  Their delay, culminating in the loss of their ability to bring estate value-maximizing causes of action, is effective refusal, and failure to do so is "unjustified" under the Bankruptcy Code.[72]

40.      Absent the Committee's request for standing, viable causes of action would have been released.  Moreover, the Debtors do not oppose the Committee's request for derivative

---

[68]   *See Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d at 253.

[69]   *Id.* at 252.

[70]   *Id.* (finding that where a debtor fails to fulfill its obligation to maximize value for the estate through pursuit of colorable and potentially profitable claims, the committee may assert those claims); *Louisiana World Exposition, Inc.*, 832 F.2d at 1397-98 (finding that a debtor's failure to bring a colorable claim which is likely to benefit the estate is sufficient to meet the unjustified refusal element for derivative standing); *see also In re iPCS, Inc.*, 297 B.R. at 290 (stating that "[I]f a debtor has a cognizable claim, but refuses to pursue that claim, an important objective of the Code [the recovery and collection of estate property] would be impeded if the bankruptcy court has no power to authorize another party to proceed on behalf of the estate in the debtor's stead").

[71]   *Stipulation and Agreed Order Regarding Adequate Protection of the Aequum Secured Parties* ¶ 3, Dkt No. 1018 (stipulating as to challenge period).

[72]   *See, e.g., Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Grp., Inc.)*, 66 F.3d 1436, 1441 (6th Cir. 1995) (holding that debtor's failure to bring a value-maximizing claim is "unjustified" for the purposes of committee standing even if the motive of the debtor in failing to bring that claim is justified) (citing *In re Louisiana World Exposition, Inc.*, 832 F.2d at 1398-99).

FBG_CH1_00093280

**DEBTORS' EXHIBIT NO. 182**
**Page 18 of 28**

standing.   In fact, the revised plan contemplates that, on the Confirmation Date, the Committee's standing shall revert to the Litigation Trustee; the Litigation Trustee will "inherit all 'challenge' rights posed by the Creditors' Committee not otherwise waived" and be substituted in as the "party in interest" with respect to "any motion filed by the Creditor's Committee seeking standing to assert any cause of action on behalf of the FBG Debtors."[73]   Where there is no dispute between the Debtors and the Committee, and pursuit of such claims maximizes estate value, the case for granting the Committee derivative standing is even stronger.[74]

### III.   The Benefits Of Prosecuting The Claims Will Exceed The Costs.

41.   Aequum argues that the Committee should be denied standing because the anticipated litigation costs, risks, and delay outweigh any speculative benefit to the estate.   It further argues that the Aequum Secured Parties are the only creditors of Broad Street, and therefore avoidance of the Aequum Transfers would round-trip back to them. Not so.

42.   First, the Committee seeks standing to avoid transfers made *by the FBG Debtors*. The Proposed Complaint alleges that the SPV scheme was designed to defraud creditors of the FBG Debtors and that the SPV loans did not function in practice as they were purported to function on paper.[75] Isolating Broad Street is therefore inappropriate. The Proposed Complaint will benefit the creditors of the FBG Debtors' estates, writ large.

43.   Second, even if the Court accepts Aequum's argument that it should limit its analysis to creditors of Broad Street, the allegations in the Proposed Complaint are sufficient to make out claims by the FBG Debtors against Broad Street—and to subordinate Aequum's claims.

---

[73]   *Chapter 11 Plan of Reorganization*, Dkt No. 2981, § 6.2(h).

[74]   *Order Denying Motion to Amend, In re Exco Resources, Inc.*, No. 18-30155, Dkt. No. 1799 (Bankr. S.D. Tex. Apr. 9, 2019) (concluding that the LSP Entities' objection to the Committee's derivative standing was moot in light of the Committee's and Debtors' agreement on standing).

[75]   Proposed Complaint ¶¶ 86-92.

FBG_CH1_00093281

DEBTORS' EXHIBIT NO. 182
Page 19 of 28

There has been no bar date established in these cases, the question of how intercompany claims will be dealt with in these Chapter 11 cases has been preserved, and Mr. Duster has been appointed to ensure that all conflict matters, including intercompany claims, are assessed fairly. Therefore, the Committee submits that the FBG Debtors (and, by extension, its creditors) are creditors of Broad Street.

## IV.   Aequum's Good Faith Argument Fails.

44.    As explained in the Standing Motion, the potential availability of a "good faith" affirmative defense for Aequum does not impact the colorability of a claim.[76] Although Aequum does not dispute this legal principle,[77] Aequum nevertheless argues (without supporting law) that Aequum acted in good faith which "further confirms that the Proposed Claims are not colorable[.]"[78]

45.    Although not necessary for the Committee to establish at this stage because good faith is an affirmative defense for which Aequum will bear the burden of proof,[79] the good faith affirmative defense is unavailable, contrary to Aequum's assertions. Aequum argues it was not on "inquiry notice" of potential insolvency or fraud. But Aequum was aware of the "red flags" discussed above and in the Proposed Complaint,[80] triggering a duty to investigate which Aequum does not assert it complied with.[81] Although Aequum asserts that "allegations directed at third parties and former management" cannot "establish Aequum was on inquiry notice" of insolvency

---

[76]   *In re Roman Catholic Diocese of Harrisburg*, 640 B.R. 59, 70 (Bankr. M.D. Pa. 2022).

[77]   *See* Objection ¶¶ 130-34.

[78]   *Id.* ¶ 130.

[79]   *See In re Hannover Corp.*, 310 F.3d 796, 799 (5th Cir. 2002).

[80]   *See, e.g.*, Proposed Complaint ¶¶ 85-88.

[81]   *See In re Am. Hous. Found.*, 785 F.3d at 164; *Janvey v. GMAG, L.L.C.*, 977 F.3d 422, 426 (5th Cir. 2020); *In re Sentinel Mgmt. Grp., Inc.*, 809 F.3d 958, 962 (7th Cir. 2016).

FBG_CH1_00093282

DEBTORS' EXHIBIT NO. 182
Page 20 of 28

or fraud, it offers no support for that assertion,[82] while ignoring the allegation that Aequum requested an appraisal as a condition for a transaction and was denied,[83] which courts have found can trigger inquiry notice.[84]

46.     In sum, Aequum's arguments regarding good faith are legally irrelevant, and in any case misconstrue applicable law and ignore inconvenient facts.

### V.     The Committee's Allegations Regarding the Post-Petition Transfer Are Well-Pleaded And Based On Evidence Produced By The Debtors.

47.     Aequum claims that the Committee's allegation that it received a post-petition transfer of approximately $570,000 is false.  If and when the Committee is granted standing, Aequum will be able to dispute the Committee's well-pleaded factual allegations.  At this stage, however, the Court need only consider whether the facts as alleged in the Proposed Complaint make out colorable claims.[85]

48.     Nonetheless, attached hereto as **Exhibit A** is the declaration of Jasnoor Hundal, counsel to the Committee, attaching a bank statement produced to the Committee by the Debtors showing that Broad Street paid Aequum $570,341.09 on September 30, 2025.  To the extent a discrepancy exists between Aequum's books and records (which Aequum has steadfastly refused to produce to the Committee) and what the Committee received from the Debtors in discovery, this is a factual inquiry appropriately reserved for plenary litigation.

---

[82]   *See* Objection ¶ 132.

[83]   Proposed Complaint ¶¶ 156-57.

[84]   *See, e.g., Horwitt v. Sarroff*, No. 3:17-cv-1902, 2020 WL 5504471, at *21 (D. Conn. Sep. 11, 2020) (noting that defendants' requests to investment manager for additional diligence regarding investments may, if denied, constitute inquiry notice).

[85]   *See In re Adelphia Commc'ns Corp.*, 330 B.R. at 381 (citing *In re STN Enterprises*, 779 F.2d 901, 905 (2d Cir. 1985).

FBG_CH1_00093283

## CONCLUSION

For the foregoing reasons, and those articulated in the Standing Motion, the Committee respectfully requests that the Court enter an order, substantially in the form attached to the Standing Motion as Exhibit A, granting the Standing Motion and granting such other and further relief as the Court deems necessary and appropriate.

Dated: June 12, 2026

Respectfully submitted,

/s/ *Ian R. Phillips*
Ian R. Phillips, Esq.
Texas Bar No. 24091239
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Justin R. Alberto, Esq. (admitted *pro hac vice*)
**COLE SCHOTZ P.C.**
901 Main Street, Suite 4120
Dallas, TX 75202
Tel:    (469) 557-9390
Fax:    (469) 533-1587
iphillips@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com

-*and*-

Robert J. Stark, Esq. (admitted *pro hac vice*)
Jeffrey L. Jonas, Esq. (admitted *pro hac vice*)
Michael S. Winograd, Esq. (admitted *pro hac vice*)
Bennett S. Silverberg, Esq. (admitted *pro hac vice*)
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Andrew M. Carty, Esq. (admitted *pro hac vice*)
Hayden A. Miller, Esq. (admitted *pro hac vice*)
**BROWN RUDNICK LLP**
Seven Times Square
New York, NY 10036
Tel:    (212) 209-4800
Fax:    (212) 209-4801
rstark@brownrudnick.com
jjonas@brownrudnick.com
mwinograd@brownrudnick.com
bsilverberg@brownrudnick.com
kaulet@brownrudnick.com
acarty@brownrudnick.com
hmiller@brownrudnick.com

22

FBG_CH1_00093284

Sharon I. Dwoskin, Esq. (admitted *pro hac vice*)
Tristan G. Axelrod, Esq. (admitted *pro hac vice*)
Matthew A. Sawyer, Esq. (admitted *pro hac vice*)
**BROWN RUDNICK LLP**
One Financial Center
Boston, MA 02111
Tel:    (617) 856-8200
Fax:    (617) 856-8201
sdwoskin@brownrudnick.com
taxelrod@brownrudnick.com
msawyer@brownrudnick.com


*Co-Counsel to the Official Committee of Unsecured
Creditors*

FBG_CH1_00093285

## Certificate of Service

I certify that on June 12, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Ian R. Phillips*
Ian R. Phillips

FBG_CH1_00093286

## EXHIBIT A

Declaration of Jasnoor Hundal

FBG_CH1_00093287

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ----------------------------------------------------------- § | | |
| | § | Chapter 11 |
| In re | § | |
| | § | Case No. 25-90399 (CML) |
| FIRST BRANDS GROUP, LLC, *et al.*,[1] | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | |
| ----------------------------------------------------------- § | | |

**DECLARATION OF JASNOOR HUNDAL**
**IN SUPPORT OF MOTION OF THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS FOR (I) LEAVE,**
**STANDING, AND AUTHORITY TO COMMENCE AND PROSECUTE**
**CERTAIN CLAIMS AND CAUSES OF ACTION ON BEHALF OF THE**
**DEBTORS' ESTATES AND (II) EXCLUSIVE SETTLEMENT AUTHORITY**

I, Jasnoor Hundal, hereby declare under penalty of perjury:

**Introduction**

1.      I am an associate at the law firm Brown Rudnick LLP, Co-Counsel to the Official

Committee of Unsecured Creditors appointed in the above-captioned chapter 11 cases

(the "Committee").

2.      I submit this declaration (this "Declaration") in support of *the Motion of the*

*Official Committee of Unsecured Creditors for (i) Leave, Standing, and Authority to Commence*

*and Prosecute Certain Claims and Causes of Action on Behalf of the Debtors' Estates and (ii)*

*Exclusive Settlement Authority* (to be filed contemporaneously herewith) and in response to

*Aequum Capital Financial II LLC's Objection to Motion of the Official Committee of Unsecured*

---

[1]      A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors'
claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these
Chapter 11 Cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

FBG_CH1_00093288

*Creditors for (i) Leave, Standing, and Authority to Commence and Prosecute Certain Claims and Causes of Action on Behalf of the Debtors' Estates and (ii) Exclusive Settlement Authority* (Dkt. No. 2895, the "Aequum Objection").

3.      The statements in this Declaration are based upon my personal knowledge, information, and belief.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4.      Attached hereto as **Exhibit 1** is a true and correct copy of the bank statement for Broad Street Financial LLC produced to the Committee by the Debtors on October 27, 2025.  The bank statement is for the period spanning from August 30, 2025, to September 30, 2025.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.


Executed on June 12, 2026

                                                                        */s/ Jasnoor Hundal*_____
                                                                        Jasnoor Hundal

2

FBG_CH1_00093289

<u>**EXHIBIT 1**</u>

Broad Street Financial LLC Bank Statement

# FILED UNDER SEAL

FBG_CH1_00093290