

**LEASE SCHEDULE NO. 022**
**TO**
**MASTER LEASE AGREEMENT NO. OFI1445416**



This Lease Schedule No. 022 dated September 12, 2024 (the "Schedule") between **ONSET FINANCIAL, INC.** (the "Lessor") and **CARNABY INVENTORY IV, LLC** (the "Lessee") incorporates by reference the terms and conditions of Master Lease Agreement No. OFI1445416 dated June 28, 2022 (the "Master Lease"), the Exhibit A ("Property") and the Exhibit B ("Stipulated Loss Schedule"), and constitutes a separate lease between Lessor and Lessee and is referred to herein as the "Lease". Lessor shall have the right to replace this Schedule with multiple Schedules for the purpose of segregating the Property into separate Lease Schedules. All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Lease.

SECTION 1    PROPERTY: All inventory, whether now in place or hereafter acquired, as identified by specific part numbers and/or by specific material numbers, consisting of raw components, work in progress, component parts, all after-acquired raw components and finished goods, maintained, kept and/or stored at Hopkins Manufacturing Corporation facility located at 30900 West 185th Street, Edgerton, Kansas 66021, or any other future location(s), and other items of Property as more fully described on the attached Exhibit A to the Acceptance and Delivery Certificate, together with any and all attachments, accessions, additions, enhancements and replacements thereto. Notwithstanding anything herein or in the Master Lease to the contrary, Lessor and Lessee acknowledge that the Property is inventory and will be sold, transferred, assigned, conveyed or distributed by Lessee in its ordinary course of business and will be replenished by Lessee also in its ordinary course of business. Lessor acknowledges that, subject to the terms hereof, Lessee is entitled to all proceeds from the sale or transfer of the Property. Lessor agrees that its lien on any Property and any right, title or interest it has in any Property shall be automatically released upon the sale or transfer of such Property by Lessee in the ordinary course of its business. Upon request of Lessee, Lessor shall execute any documents reasonably requested by Lessee to evidence the release of Lessor's lien on the Property. Lessee agrees to provide to Lessor on a quarterly basis, or at such time as otherwise requested by Lessor, an updated inventory listing in substantially the same form delivered by Lessee to Lessor prior to the date hereof showing the inventory levels at the Property Location and status as of the date of each provided inventory listing ("Inventory List"). Lessee agrees that upon Lessor's request, it will increase the inventory balance to a level and amount equal to or greater than the then current Stipulated Loss Value as set forth in the Stipulated Loss Schedule.

For each facility referenced above, and notwithstanding the foregoing, if at any time during the term of the Lease the Inventory Value is less than thirty percent (30%) of the Inventory Value determined as of the execution of this Schedule, the Lessee grants to the Lessor a security interest in the proceeds of the Property and authorizes Lessor to amend the UCC description to include proceeds. To determine the Inventory Value, Lessee shall provide to Lessor the current valuation of the inventory that specifically constitutes Property hereunder, which valuation shall be in accordance with GAAP standards ("Inventory Value") and will be evidenced on the Inventory List. Lessee's failure to comply with the terms set forth in this Section shall constitute an additional Event of Default under the Lease.

SECTION 2    PROPERTY LOCATION:  Location(s) as set forth on the Exhibit A to the Acceptance and Delivery Certificate

SECTION 3    BASE PERIOD:  Eight (8) months starting on the Lease Commencement Date

SECTION 4    TOTAL PROPERTY COST: $40,000,000.00

SECTION 5    MONTHLY LEASE RATE FACTOR:    Months 1-6:    0.20000
                                                                                    Month 7:        0.16667
                                                                                    Month 8:        0.10000

SECTION 6    MONTHLY RENTAL:  Months 1-6:    $8,000,000.00
                                                        Month 7:        $6,666,800.00
                                                        Month 8:        $4,000,000.00

SECTION 7    RENTAL FREQUENCY: Monthly in advance

\\PTSRVS-WPSR1.OSPIT.oqd1.one Operation\Master Library\Schedule Enhancement\ease Schedule - NT.docx

CONFIDENTIAL
CONFIDENTIAL

ONSET_00001538
FBG_CH1_00093503

SECTION 8      THIS SECTION INTENTIONALLY LEFT BLANK

SECTION 9      DATE OF ACCEPTANCE:  As specified in the Acceptance and Delivery Certificate

SECTION 10     THIS SECTION INTENTIONALLY LEFT BLANK

SECTION 11     ADDITIONAL PROVISIONS:

    a.  PAYMENT BY ELECTRONIC TRANSFER:  In the event that a Monthly Rental payment and other monies due under the Lease are not received by Lessor or its assigns within ten (10) days of the due date, Lessee authorizes Lessor or its assigns to electronically transfer payment due under any past due invoice from Lessee's account maintained with its financial institution, and Lessee agrees to execute and deliver a written "Authorization for Electronic Transfer" form to Lessor to affect such transfers. Failure or refusal of Lessee to authorize such transfers or failure of Lessor or its assigns to receive such payments by electronic transfer shall constitute an additional Event of Default under Section 18 of the Master Lease. Upon the occurrence of the Event of Default specified above, Lessor shall be entitled to exercise its rights and remedies under the Lease.

    b.  LATE FEES:  For purposes of this Schedule, the second paragraph of Section 3 of the Master Lease shall be deleted and replaced with the following: "If any rental or other payment due under the Lease shall be unpaid five (5) days after its due date, Lessee will pay on demand, as a late charge, but not as interest, $50,000 per day commencing on the 6th day after its due date through and including the 10th day after its due date. If any rental or other payment due under the Lease shall be unpaid ten (10) days after its due date, and in addition to the amounts set forth above, Lessee will pay on demand, as an additional late charge, but not as interest, ten percent (10%) per month on any such unpaid amount but in no event to exceed maximum lawful charges."

    c.  ADDITIONAL EVENT OF DEFAULT – CROSS DEFAULT:  In addition to the Events of Default set forth in the Master Lease, the following shall constitute an additional Event of Default under the Lease:  Breach by any of Lessee's affiliates of any agreements that such affiliates may have in place with Lessor, now or hereafter in effect during the term of this Schedule, including but not limited to Master Lease Agreement No. OFI1045321 by and between TRICO PRODUCTS CORPORATION and Lessor, and any and all Lease Schedules thereunder, Master Lease Agreement No. OFI1345400 by and between EAGLE MACHINING, LLC and Lessor, and any and all Lease Schedules thereunder, Master Lease Agreement No. OFI1445408 by and between CARNABY INVENTORY I, LLC and Lessor, and any and all Lease Schedules thereunder, and Master Lease Agreement No. OFI1545465 by and between CARNABY FA, LLC and Lessor, and any and all Lease Schedules thereunder. Upon the occurrence of an Event of Default under the Lease, including without limitation, the additional Event of Default specified herein, Lessor shall be entitled to exercise any of its rights or remedies under the Lease.

    d.  RENT AND PAYMENT:  For purposes of this Schedule only, in the third sentence of Section 3 of the Master Lease, the phrase "by a daily rental equal to one-thirtieth (1/30) of the Monthly Rental" shall be deleted and replaced with "by a daily rental equal to the Total Cost of Property multiplied by 0.20000 then divided by 30".

    e.  PURCHASE OPTION:  For purposes of this Schedule only, and provided no Event of Default has occurred and is continuing under the Lease, at the end of the Base Period, the following amendment shall apply:  Option (1) of Section 20(n) of the Master Lease shall be revised to state "purchase the Property for a price equal to $101.00. Lessor's sale of Property to the Lessee pursuant to this clause shall be on an "as-is, where-is" basis, without any representation or warranty by, or recourse to, the Lessor, except as to the absence of liens created by or through Lessor." All other terms and conditions of the Master Lease shall continue in full force and effect without change.

    f.  RETURN OPTION:  For purposes of this Schedule only, Section 20(n) of the Master Lease shall be revised by deleting option (2) in its entirety together with any and all terms and references specific to option (2) thereunder.

    g.  EVENTS OF DEFAULT:  Notwithstanding Section 18(c) of the Master Lease, it shall not be an Event of Default if Lessee sells, transfers, assigns, conveys or distributes any Property in the ordinary course of its business.

\\FTSRVN-WFSRI.OSPI\LocalLease Operation\Master Library\Schedule Documents\Lease Schedule - 3Y.dotx

CONFIDENTIAL
CONFIDENTIAL

ONSET_00001539
FBG_CH1_00093504

**DEBTORS' EXHIBIT NO. 187**
**Page 2 of 6**

h.  <u>EARLY TERMINATION OPTION:</u>  For purposes of this Schedule only, provided no Event of Default has occurred and is continuing under the Lease, and further provided Lessee has provided Lessor thirty (30) days prior written notice, Lessee may elect to early terminate this Schedule and to purchase the Property for an amount equal to the aggregate of the remaining Base Period Monthly Rental payments, together with a prepayment penalty of five percent (5%) of such amount, together with all applicable taxes and other amounts due under the Lease, including but not limited to sales and use tax, property tax, late charges, and any and all other sums due.  Lessor's sale of Property to the Lessee pursuant to this clause shall be on an "as-is, where-is" basis, without any representation or warranty by, or recourse to, the Lessor, except as to the absence of liens created by or through Lessor.

i.  <u>INSPECTION</u>:  Pursuant to the terms and conditions of the Master Lease, Lessor requires a third-party inspection of each item of Property.  Upon Lessor's receipt of a satisfactory third-party inspection of the Property evidencing that the Property is delivered, installed and in good working order and condition, Lessor will provide Lessee a final Acceptance and Delivery Certificate, as provided in the Master Lease. Upon receipt of the final Acceptance and Delivery Certificate, and further upon Lessee's inspection, satisfaction and acceptance of the Property (subject to the terms and conditions of the Master Lease), Lessee shall execute and deliver to Lessor the final Acceptance and Delivery Certificate.

j.  <u>WAIVERS:</u>  For purposes of this Lease and to ensure that Lessor shall be granted all right, title and interest in and to the Property, and to further ensure that Lessor shall be indemnified from and against any loss or damage it might incur resulting from liens, claims, security interest or encumbrances existing or of records against the Property Location or the Property, Lessee agrees (i) to provide to Lessor any documentation reasonably requested, including but not limited to bills of sale, waivers of interest, lien releases, mechanic's lien releases, mortgagee waivers, and any additional waivers (collectively the "Waivers"), and (ii) to use its commercially reasonable efforts to cause any third parties reasonably deemed necessary by Lessor to execute such Waivers.  As long as the Property leased under this Schedule remains personal property and the Lessee has used commercially reasonable efforts to obtain a third-party Waiver, Lessee's failure to provide Waivers shall not constitute an additional Event of Default under the Lease.

k.  <u>ADDITIONAL REMEDIES ON DEFAULT- INJUNCTIVE RELIEF</u>:  Upon the occurrence of a monetary Event of Default under the Lease, upon demand by Lessor, in addition to the remedies set forth in Section 19 of the Master Lease, Lessee shall thereupon immediately cease the use of any and all Property under each and every Schedule under the Master Lease whether such use is by Lessee or any affiliate of Lessee.  In the enforcement of the remedies described in this Section, Lessor shall be entitled to an injunction restraining Lessee, or any of Lessee's affiliates, from using the Property and any Property under any other Schedules executed in connection with the Master Lease.  Lessee agrees that a violation of such will cause immediate and irreparable damage to Lessor and that the detriment which Lessor will suffer as a result of a breach by Lessee of the obligations contained in the Lease cannot be adequately compensated by monetary damages, and therefore Lessor shall be entitled to injunctive and other equitable relief to enforce the provisions of this Section.

Nothing contained herein shall prohibit Lessor from also pursuing any other remedies available under the Master Lease, the Schedule, or otherwise at law, and no action by Lessor in pursuing any other remedies shall constitute an election to forego other remedies.  Lessee agrees that the foregoing remedies are in addition to all other rights and remedies available to Lessor under the Master Lease, the Schedule, or otherwise available provided by law.  In connection with Lessor's exercise of any or all of the above-listed remedies, Lessor shall be entitled to recover all costs and expenses incurred by Lessor in the enforcement of the Lease and/or the exercise of its rights hereunder, including in disabling the Property, including without limitation, reasonable attorney fees and costs incurred by Lessor.  In the event of enforcement by Lessor through judicial proceedings, Lessee hereby waives any requirement that Lessor post a bond.  Lessor's failure to promptly enforce any right or remedy hereunder shall not operate as a waiver of such right or remedy, and Lessor's waiver of any default shall not constitute a waiver of any subsequent or other default.  Lessee further agrees that the rights and remedies available to Lessor under the Lease may be enforced by specific performance, including by injunction.

\\OUSD-VN-WFS01.O5F1\Local\Lease Operations\Master Library\Schedule Documents\pLease Schedule - ST.dotx

CONFIDENTIAL
CONFIDENTIAL

ONSET_00001540
FBG_CH1_00093505

l.  MAINTENANCE OF PROPERTY:  For purposes of this Schedule only, Lessee shall, undertake all reasonable and customary actions to preserve and protect the Property and maintain, keep and/or store the Property so that it is ready to assemble, sell or distribute in the ordinary course of business.  By fulfilling these requirements, Lessee shall meet and satisfy the requirements to maintain the Property as found in the Master Lease.

m.  TRANSACTION FEE:  For and in consideration of Lessor entering into this Lease, Lessee shall pay to Lessor a non-refundable transaction fee equal to $1,600,000.00 (the "Transaction Fee") which shall be paid concurrently with Lessee's execution and delivery of this Schedule.  Lessee agrees that the Transaction Fee is paid in consideration of Lessor's work in underwriting, due diligence and originating the Lease. The Transaction Fee is in addition to, and shall not be applied to, any other amounts due or owed by Lessee under or in connection with the Lease, whether denominated rents, charges, fees, or expenses, including without limitation, any inspection fees, documentation fees, out of pocket expenses chargeable to Lessee, or any other fee or charge provided for in the Lease.

n.  CURRENCY:  Unless otherwise specifically stated, all monies referenced in the Lease and any accompanying documents shall be deemed to be in U.S. Dollars.  All payments due to Lessor and/or its assigns, shall be due and payable in U.S. Dollars.

o.  FURTHER ASSURANCES:  Lessee agrees as follow: i) Lessee will cooperate with Lessor in protecting Lessor's interests in the Property, ii) Lessor is authorized to take any measures necessary to protect its ownership and/or interest in the Property, and iii) Lessee agrees to execute any further documents, and to take any further actions, reasonably requested by Lessor to evidence ownership or to perfect the security interest granted under the Lease or to effectuate the rights granted to Lessor under the Lease.

p.  TAX INDEMNIFICATION:  Notwithstanding anything to the contrary contained in the Lease, Lessee agrees to defend, indemnify, reimburse and hold Lessor harmless against any and all taxes imposed upon Lessor by any State, jurisdiction or taxing authority, for failure to pay any such taxes due or incurred based on (a) the Property, and (b) any payments required to be made under the Lease or otherwise with respect to the Lease.  Upon any assessment against or final payment by Lessor of any taxes as provided herein, Lessee agrees to pay such assessments or reimburse Lessor for its payments of such assessments.  This Indemnity shall survive the termination of the Lease and shall continue to bind Lessee as long as any tax assessments with respect to the Property or Lease is pending or may be imposed on Lessor.

q.  PROPERTY TAX:  For purposes of this Schedule only, notwithstanding anything to the contrary contained in the Lease, and effective the date hereof and continuing throughout the term of the Schedule, including any renewals thereof, Lessee agrees to file in its name and remit directly to the proper taxing authority, all property taxes due under the Schedule.  Lessee shall maintain records of filing and evidence of payment and shall provide proof of such filing and/or payment to Lessor upon request by Lessor. Lessee agrees to indemnify Lessor for any unpaid property tax, penalties and interest resulting from Lessee's failure to timely file property taxes or its failure to remit payment to the proper taxing authority. Lessee's failure to comply with the requirements set forth in this Section shall constitute an additional Event of Default under the Lease.

r.  ASSIGNMENT:  Notwithstanding anything to the contrary herein, Lessor and Lessee acknowledge and agree that all or a portion of this Lease may be structured as an Assignment, whereby Lessor may take an Assignment of all or a portion of the Property from Lessee for purposes of leasing the Property back to Lessee, in accordance with the terms and conditions set forth in an Assignment and Transfer of Inventory, which may be executed in connection with this Lease.

s.  BAILEE:  Notwithstanding anything to the contrary contained herein or in the Master Lease, Lessor and Lessee acknowledge and agree that Lessee may deliver possession of the Property to one or more related companies (collectively, the "Bailee").  Inasmuch as the Property may be located at and in use by the Bailee, Lessee agrees, to (i) cooperate with Lessor in protecting Lessor's interests in the Property, (ii) authorize Lessor to take any measures necessary to protect its ownership and/or interest in the Property, and (iii) execute, or cause each Bailee to execute, any further documentation and to take any further actions, reasonably requested by Lessor to evidence ownership or to perfect the security interest granted under the Lease or to effectuate the rights granted to Lessor under the Lease.

C:\TS3-V3-WFNH\CSF1\Loud\Loan Operations\Master Library\Schedule Documents\Lease Schedule - ST.doc

CONFIDENTIAL
CONFIDENTIAL

ONSET_00001541
FBG_CH1_00093506

**DEBTORS' EXHIBIT NO. 187**
**Page 4 of 6**

t.   ADDITIONAL CONDITIONS PRECEDENT AND REPRESENTATIONS OF LESSEE:  For purposes of this Schedule, and as an inducement for Lessor entering into this Schedule, Lessee agrees that under no circumstances, including, but not limited to problems with (i) supply chain disruption, (ii) labor shortages, (iii) rising interest rates, (iv) global pandemic, (v) inflation, and/or (vi) geopolitical turmoil, will the Lessee request any kind of payment reduction or offsets to the payments set forth in this Schedule.  Lessee represents and warrants that it has the financial ability to make the payments due under this Schedule regardless of any kind of problems or change in circumstances, including but not limited to those listed above.  Lessee acknowledges that Lessor is under no obligation to reduce or modify the payments due under this Schedule, and instead recognizes that Lessee is obligated to timely make all payments due under the Schedule.  Specifically, Lessee hereby reaffirms that all of Lessee's payment and other obligations shall be without notice or demand, are absolute, unconditional and not subject to abatement, reduction or setoff for any reason, including any of the circumstances listed above and any other circumstances, unforeseen or not, and Lessee will not request or receive any abatement, reduction, setoff, deferment, modification, or other accommodation relating thereto.

u.   MASTER LEASE TERMS AND CONDITIONS:  Unless otherwise specifically modified herein, all terms and conditions of the Master Lease shall continue to be in full force and effect without change.

SECTION 12    REPRESENTATION OF LESSEE:  Lessor and Lessee agree that this Schedule is a "Finance Lease" as defined by the Uniform Commercial Code Article 2A, in that (i) Lessee has selected the Property in its sole discretion, (ii) Lessor has acquired the Property solely for the purpose of leasing such Property under this Schedule, and (iii) Lessee has received a copy of the contract evidencing Lessor's purchase of the Property.

[Signature(s) on following page]

CUTSLVS-WFS01.OSFL/cvl/Lease Operations/Master Library/Schedule Documents/cLease Schedule - ST.docx

CONFIDENTIAL
CONFIDENTIAL

ONSET_00001542
FBG_CH1_00093507

[Lease Schedule No. 022 Signature Page]

LESSOR:                                          LESSEE:

**ONSET FINANCIAL, INC.**                        **CARNABY INVENTORY IV, LLC**

BY:  _Kristina Allen_                            BY:  _Edward James_
     Kristina Allen                                   Edward James
TITLE:  Executive Vice President                 TITLE:  Executive Vice President

ORIGINAL

CONFIDENTIAL
CONFIDENTIAL

ONSET_00001543
FBG_CH1_00093508

**DEBTORS' EXHIBIT NO. 187**
**Page 6 of 6**