IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*, | § § § | Case No. 25-90399 (CML) |
|  | § § | (Jointly Administered) |
| Debtors.[1] | § § | (Emergency Hearing Requested) |

EMERGENCY MOTION OF DEBTORS FOR
ORDER (I) AUTHORIZING DEBTORS TO MODIFY
RETIREE BENEFITS AND (II) GRANTING RELATED RELIEF

> EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 9:00 A.M. (CENTRAL TIME) ON JULY 28, 2026.
>
> IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.
>
> THE DEBTORS HAVE REQUESTED THAT A HEARING BE CONDUCTED ON THIS MATTER ON JULY 28, 2026 AT 9:00 A.M. (CENTRAL TIME) IN COURTROOM 402, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.
>
> YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.
>
> AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY.  YOU MAY ACCESS THE FACILITY AT 832-917-1510.  ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER.  JUDGE LOPEZ'S CONFERENCE ROOM NUMBER IS 590153. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE LOPEZ'S HOME PAGE. THE MEETING CODE IS "JUDGELOPEZ."  CLICK THE SETTINGS ICON IN

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.

HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS.  TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE LOPEZ'S HOME PAGE.  SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.

First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or "**First Brands**"), respectfully represent as follows:

### Preliminary Statement[2]

1.      The FBG Debtors[3] are working expeditiously to wind down their estates in a manner that maximizes value for their stakeholders.  To that end, the FBG Debtors are in the process of soliciting votes on their proposed Plan[4] and are seeking confirmation of the Plan by the end of July.  The Plan provides for the wind down of the Debtors' estates and the transfer of the Debtors' remaining assets to a series of liquidating trusts.  As the Court is aware, the Debtors' liquidity is extremely limited, providing just enough runway to achieve confirmation on the current timeline—a result that took months to achieve and required the cooperation of and concessions from several key stakeholders.  The Debtors' Confirmation Budget (as defined in the Plan) does not provide the Debtors with the funds necessary to continue administering and funding the Retiree Benefits Arrangements following confirmation.

---

[2]     Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings ascribed to such terms elsewhere in the Motion.

[3]     "**FBG Debtors**" includes First Brands Group Holdings, LLC ("**FBGH**"), FBGH's direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC.

[4]     The "**Plan**" means the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3019).

2

2.      In accordance with section 1114 of the Bankruptcy Code, the Debtors made a good-faith proposal to the Unions and the Non-Union Retiree Committee for termination of the Retiree Benefit Arrangements.  The Debtors' proposal, a copy of which is annexed hereto as **Exhibit A** (the "**Proposal**"), was based on the most complete and accurate information available to the Debtors at the time the Proposal (and any additions to it) were made, and the justification for the Proposal was provided to both the Unions and the Non-Union Retiree Committee.  To date, the Unions and the Non-Union Retiree Committee have not accepted the Proposal.

3.      As discussed herein, the Debtors have met the substantive and procedural requirements for relief under section 1114 of the Bankruptcy Code.  Modification of the Retiree Benefit Arrangements in accordance with the Proposal is necessary for confirmation of the Plan, which provides for distributions to creditors (including administrative, priority, and general unsecured creditors).  The Debtors have commenced discussions with the Unions and the Non-Union Retiree Committee with respect to the Proposal and intend to continue negotiations pending the hearing on this Motion.  If those discussions do not lead to a consensual modification of the Retiree Benefit Arrangements, the Debtors request entry of an order approving the termination of the Retiree Benefit Arrangements on the terms set forth in the Proposal.

4.      Section 1114(k)(1) of the Bankruptcy Code states that the Court "shall schedule" a hearing on this Motion not later than 14 days after the date hereof.  Given the interrelatedness of the issues, the Debtors are requesting that this Motion be heard at the confirmation hearing scheduled for July 28, 2026 at 9:00 a.m. (Central Time).  Notwithstanding the requirements of section 1114(k)(1) with respect to scheduling, the Debtors have included a request for emergency consideration in accordance with paragraphs 16 and 17 of the *Procedures for Complex Cases in the Southern District of Texas* (the "**Complex Case Procedures**").

3

**Relief Requested**

5.      By this motion (the "**Motion**"), pursuant to sections 105(a) and 1114 of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors request entry of an order (i) authorizing the Debtors to modify retiree benefits in accordance with the terms of the Proposal and (ii) granting related relief.

6.      In support of the Motion, the Debtors submit the *Declaration of Nicholas Haughey in Support of Emergency Motion of Debtors for Order (I) Authorizing Debtors to Terminate Retiree Benefits and (II) Granting Related Relief* (the "**Haughey Declaration**"), which is being filed contemporaneously herewith and is incorporated by reference herein.

7.      A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit B** (the "**Proposed Order**").

**Background**

8.      On September 24, 2025, Global Assets LLC and 12 of the Debtors in the above-captioned chapter 11 cases each filed with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  Commencing on September 28, 2025 (the "**Petition Date**"), First Brands Group, LLC and the remaining Debtors each filed with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed in these chapter 11 cases.

9.      On October 9, 2025, the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (Docket No. 313) (the "**Creditors' Committee**").

10.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure

4

(the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

11.     Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (Docket No. 22) (the "**First Day Declaration**"),[5] filed on September 29, 2025, and incorporated herein by reference.

### Jurisdiction and Venue

12.     The Court has jurisdiction and authority to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### The Non-Union Retiree Benefit Arrangements

13.     Under the First Brands Group, LLC Health and Welfare Employee Benefit Plan (the "**First Brands Welfare Plan**"), the Debtors provided eligible active employees and currently provide eligible retired employees (and their spouses and eligible dependents as well as approximately 50 individuals who as of the date hereof have elected to receive continuation coverage under the Consolidated Omnibus Budget Reconciliation Act ("**COBRA**")) with certain welfare benefits, including medical, dental, vision and prescription drug coverage, as well as life insurance benefits (collectively, the "**Non-Union Retiree Benefit Arrangements**").  The Debtors also sponsor, maintain, or contribute to a number of other life insurance and death benefit arrangements for eligible retired employees.

---

[5]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

**DEBTORS' EXHIBIT NO. 8**
**Page 5 of 42**

14.     The below paragraphs summarize the Debtors' various health benefit arrangements (collectively, the "**Non-Union Retiree Health Benefits**") and life insurance and death benefit arrangements (collectively, the "**Non-Union Retiree Life Benefits**" and together with the Retiree Health Benefits, the "**Non-Union Retiree Benefits**"), including those provided under the First Brands Welfare Plan, for eligible retired employees (and their spouses and eligible dependents) that are not represented by a Union (the "**Non-Union Retirees**").

### A.  Non-Union Retiree Health Benefits

15.     As of June 1, 2026, the Debtors have no remaining active employees receiving medical, prescription drug, dental, or vision coverage under the First Brands Welfare Plan.  However, the retiree group health benefits for Non-Union Retirees and Union Retirees are provided under the same First Brands Welfare Plan that covered active employees (and continues to cover approximately 50 individuals who have elected to receive COBRA continuation coverage, and could potentially cover up to an additional approximately 229 individuals which have until August 1, 2026 to elect to receive COBRA continuation coverage) and cannot be separated and maintained separately.  The medical, dental, vision, and prescription drug benefits provided under the First Brands Welfare Plan are fully self-insured with no stop-loss coverage, with estimated monthly claims-related costs for the entire Retiree population (both Union Retirees and Non-Union Retirees) averaging approximately $28,000 per month in 2026 plus an additional approximately $75,000 per month in administrative costs.  However, as these benefits are fully self-insured by the Debtors, any catastrophic/high-cost claim or claims could greatly increase the cost to the Debtors of continuing this coverage.  For context, in 2025, the group health plan portion of the First Brands Welfare Plan covered 3,351 current and former employees and 2,361 covered spouse and dependents and paid approximately $53.4 million in group health claims.  In 2025, there were

100 claims in excess of $100,000 (of which 30 were in excess of $250,000 and the highest claim was $891,570).

16.     The third-party administrators that administer those benefits and review and process claims have each agreed to continue administering those benefits under the First Brands Welfare Plan under a re-rated structure under certain circumstances (due to the fact that the total number of participants under the First Brands Welfare Plan dropped significantly following the cessation of operations and corresponding termination of employment of active employees) for the remaining Retirees (and their spouses and eligible dependents) and individuals who have elected to receive COBRA continuation coverage.   The Non-Union Retirees receiving medical and prescription drug benefits consists of four retired employees and two spouses (resulting in a total of six individuals) eligible to receive such retiree benefits.

### B.  Non-Union Life Insurance Benefits Under Symetra

17.     Under the First Brands Welfare Plan, the Debtors also provide life insurance for approximately 840 Non-Union Retirees through Symetra Life Insurance Company ("**Symetra**" and such policy, the "**Symetra Policy**").   The Non-Union Retiree population receiving such benefits is comprised of three groups (Dalton Corporation, Champion Labs, and ASC).   Relating to the non-union groups, the Symetra Policy provides a benefit ranging from $2,000 to $88,500. Symetra has agreed to continue the Symetra Policy for Retirees only up until August 31, 2026 and, as a result of a decrease in the population covered under the Symetra Policy following the termination of all active employees and the resulting end of their coverage, Symetra has proposed premium increases of approximately thirty-five percent for July and August 2026, resulting in premium payments of approximately $60,000 per month, in the aggregate, under the Symetra Policy.

**DEBTORS' EXHIBIT NO. 8**
**Page 7 of 42**

### C. Trico Products Non-Union Retiree Life Insurance Plan

18.     Approximately 223 non-union Trico Products Corporation ("**Trico Products**") retirees receive life insurance coverage provided by the Debtors under a life insurance policy with The Hartford Insurance Group, Inc. (the "**Hartford Policy**").  Gates Corporation is the policyholder of the Hartford Policy and the Debtors reimburse Gates Corporation for the portion of premiums attributable to the Trico Products retirees, in an amount equal to approximately $11,000 per month.  Trico Products retirees receive a death benefit ranging from $500 to $124,000.

### D. Airtex Non-Union Postretirement Death Benefits

19.     Approximately 36 Non-Union Retirees of Airtex Products, LP ("**Airtex**") are eligible to receive an uninsured death benefit ranging from $2,000 to $10,000.  The Fedeli Group administers this benefit on behalf of the Debtors and invoices the Debtors when it becomes aware of an approved death benefit claim.

**The Union Retiree Benefit Arrangements**

20.     The Debtors also sponsor, maintain, or contribute to certain welfare benefit arrangements (the "**Union Retiree Benefit Arrangements**" and together with the Non-Union Retiree Benefit Arrangements, the "**Retiree Benefit Arrangements**") for eligible retired employees (and their spouses and eligible dependents) that are represented by Unions (the "**Union Retirees**" and together with the Non-Union Retirees, the "**Retirees**").  The below paragraphs summarize the Debtors' various health benefit arrangements (collectively, the "**Union Retiree Health Benefits**" and together with the Non-Union Retiree Health Benefits, the "**Retiree Health Benefits**") and life insurance and death benefit arrangements (collectively, the "**Union Retiree Life Benefits**" and together with the Non-Union Retiree Life Benefits, the "**Retiree Life Benefits**"), for Union Retirees.

8

**DEBTORS' EXHIBIT NO. 8**
**Page 8 of 42**

### A. Union Group Health Benefits

21.     Under the First Brands Welfare Plan, the Debtors currently provide the Union Retirees with certain welfare benefits, including medical, dental, vision and prescription drug coverage, as well as life insurance benefits.  The Union Retirees, as it relates to group health benefits, include retired (i) bargaining unit employees covered at the time of retirement under the collective bargaining agreement between FRAM Group Operations, LLC and the United Automobile, Aerospace and Agricultural Implement Workers of America (with respect to the Greenville, Ohio plant) (the "**FRAM Greenville CBA**") covering approximately 18 Retirees and three spouses, (ii) bargaining unit employees covered at the time of retirement under the collective bargaining agreement between FRAM Group Operations, LLC Autolite Spark Plug Plant and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, Local 533 (the "**FRAM Fostoria CBA**") covering approximately 16 Retirees and eight spouses, and (iii) bargaining unit employees covered at the time of retirement under the collective bargaining agreement between Carter Fuel System, Logansport and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union on behalf of Local Union No. 4863 (the "**Carter CBA**") covering approximately 12 retirees, four spouses, and four dependents.

### B. Dalton 401(h) Accounts

22.     Debtor Dalton Corporation, Warsaw Manufacturing Facility sponsored the Dalton Corporation, Warsaw Manufacturing Facility Pension Plan (the "**Pension Plan**") for the benefit of certain former employees covered by the collective bargaining agreement between Dalton Corporation, Warsaw Manufacturing Facility (Warsaw, Indiana) and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers

International Union, AFL-CIO-CLC and its Local 6805 (the "**USW**" and such agreement, the "**CBA**").

23.     Section XX of the Pension Plan includes "health care spending accounts" established in accordance with Section 401(h) of the Internal Revenue Code (the "**401(h) Accounts**") which provides approximately 140 participants who have met normal or early retirement eligibility requirements with an individual account that is solely to be used to reimburse such participants for qualifying health care expenses on a non-taxable basis.  The 401(h) Account portion of the Pension Plan is administered by Teachers Insurance and Annuity Association of America ("**TIAA**") and the assets are held in a tax-qualified trust of which TIAA Trust, N.A. is trustee (which trust is not a Debtor asset) (the "**401(h) Trust**").  The assets in the 401(h) Trust are approximately $1,535,881 and the aggregate account balance of the 401(h) Accounts is approximately $1,535,881 (inclusive of at least $133,000 in a forfeiture/suspense account).

24.     Pursuant to the Agreement for Appointment of Trustee and Termination of Plan entered into between the Pension Benefit Guaranty Corporation ("**PBGC**") and Dalton Corporation, Warsaw Manufacturing Facility dated June 12, 2026, PBGC terminated the Pension Plan under 29 U.S.C. Section 1342(c), effective as of April 30, 2026 and was appointed trustee of the Pension Plan.  On June 24, 2026, counsel for Debtors contacted PBGC regarding the 401(h) Accounts under the Pension.   On June 26, 2026, counsel for Debtors spoke with PBGC regarding the 401(h) Accounts under the Pension Plan. On July 9, 2026, PBGC notified counsel for Debtors that, notwithstanding PBGC appointment as trustee, PBGC does not guarantee benefits under and cannot trustee or administer the 401(h) Accounts.  On July 10, 2026 and on July 13, 2026, counsel for Debtors conferred with PBGC on its determination that PBGC cannot continue the benefits

**DEBTORS' EXHIBIT NO. 8**
**Page 10 of 42**

under the 401(h) Accounts.  On July 13, 2026, counsel for Debtors discussed this issue with counsel for the USW.

### C.  Union Life Insurance Benefits

25.     Under the First Brands Welfare Plan, the Debtors also provide life insurance for approximately 258 Union Retirees through Symetra. The Retiree population receiving such benefits is comprised of four union groups (FRAM Greenville, FRAM Fostoria, Carter Fuel, and ASC).  The Union Retirees, as it relates to life insurance benefits, include retired (i) bargaining unit employees covered at the time of retirement under the FRAM Greenville CBA covering approximately 110 Retirees under the Symetra Policy providing a benefit ranging from $7,500 to $10,000, (ii) bargaining unit employees covered at the time of retirement under the FRAM Fostoria CBA covering approximately 36 Retirees under the Symetra Policy providing a benefit of $15,000, (iii) bargaining unit employees covered at the time of retirement under the Carter CBA covering approximately 99 Retirees under the Symetra Policy providing a benefit ranging from $7,000 to $37,000, and (iv) bargaining unit employees of ASC Industries, Inc. covering up to approximately 13 retirees under the Symetra Policy providing a benefit ranging from $4,000 to $25,500.

### D.  Airtex Union Postretirement Death Benefits

26.     Approximately 42 Union Retirees of the Airtex business line are eligible to receive an uninsured death benefit ranging from $1,000 to $23,000.  The Fedeli Group administers this benefit on behalf of the Debtors and invoices the Debtors when it becomes aware of an approved death benefit claim.

### Unions and Non-Union Retiree Committee as Authorized Representatives

27.     On June 23, 2026, representatives of the United Automobile, Aerospace and Agricultural Implement Workers of America ("**UAW**") and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy Allied Industrial and Service Workers International Union on

11

**DEBTORS' EXHIBIT NO. 8**
**Page 11 of 42**

behalf of Local Union No. 4863 ("**USW**" and, together with UAW, the "**Unions**") confirmed to the Debtors that they will serve as authorized representative for the Union Retirees they represent in connection with section 1114 discussions with the Debtors.[6]  The Unions are represented by Cohen, Weiss & Simon LLP, as counsel ("**Union Counsel**").

28.   On June 25, 2026, the Court entered the *Order (I) Authorizing and Directing the United States Trustee to Appoint a Committee of Retired Employees and (II) Granting Related Relief* (Docket No. 3060), authorizing the U.S. Trustee to appoint an official committee of retired employees to act as the authorized representative for the Non-Union Retirees in discussions with the Debtors regarding modification and/or termination of the Retiree Benefit Arrangements (the "**Non-Union Retiree Committee Order**").

29.   On July 9, 2026, in accordance with the Non-Union Retiree Committee Order, the U.S. Trustee appointed the Non-Union Retiree Committee.  Following its appointment, the Non-Union Retiree Committee engaged Chamberlain, Hrdlicka, White, Williams & Aughtry as counsel ("**Non-Union Retiree Committee Counsel**").

30.   On June 15, 2026, prior to issuing the initial version of the Proposal (as defined herein), pursuant to section 1114 of the Bankruptcy Code, the Debtors contacted the Unions to commence discussions and negotiations regarding the proposed termination of the Retiree Benefit Arrangements.  The Debtors also commenced discussions with the Non-Union Retiree Committee on July 11, 2026 following its appointment.  In light of the proposed hearing to consider confirmation of the Plan on July 28, 2026, the Debtors have communicated to counsel

---

[6]   UAW representatives have agreed to represent the Union Retirees who were covered under collective bargaining agreements with FRAM Group Operations, LLC (with respect to the Greenville, Ohio plant and the Fostoria, Ohio plant), as well as 42 members of Airtex Products, LP and 13 members of ASC Industries, Inc.  USW representatives have agreed to represent the Union Retirees who were covered under a collective bargaining agreement with Carter Fuel System, Logansport.

for the Unions and the Non-Union Retiree Committee that an agreement on termination of the Retiree Benefit Arrangements would need to be reached as soon as possible so that court approval of such modifications could be obtained concurrently with or prior to confirmation of the Plan.

### The Proposal

31.     Following initial discussions, on June 25 and July 11, 2026, the Debtors sent a letter to the Unions and the Non-Union Retiree Committee, respectively, proposing, among other things, to terminate the Retiree Benefit Arrangements effective as of 11:59 p.m. (Eastern Time) on July 31, 2026 (the "**Termination Date**").    The Proposal included the following additional terms:

- **Retiree Health Benefits**. Retirees receiving Retiree Health Benefits must submit any claims incurred on or prior to July 31, 2026 for processing to the applicable claims administrator no later than October 31, 2026, and any such claims submitted on or after November 1, 2026 will not be considered for payment.  Retirees will continue to be responsible to remit contributions for Retiree Health Benefits coverage to the extent applicable through and including July 31, 2026.

- **Retiree Life Benefits**. Retirees shall have an allowed general unsecured claim equal to the estimated present value of any unpaid Retiree Life Benefits which shall be determined based on reasonable assumptions to be mutually agreed upon in good faith by the Debtors and the authorized representatives.

- **Releases**. Retirees and their representatives and each of their successors and assigns shall release the Debtors and their representatives and each of their successors and assigns in full and final satisfaction of the claims of Retirees on account of the Retiree Benefit Arrangements.

- **Support for Plan**. The applicable authorized representative shall support and not object to confirmation of the Plan.

32.     On July 14, 2026, the Debtors sent a letter to the USW with an updated Proposal containing the following additional term:

13

**DEBTORS' EXHIBIT NO. 8**
**Page 13 of 42**

- **Dalton 401(h) Account**. Debtors shall (i) terminate the 401(h) Accounts and the 401(h) Trust, effective as of August 31, 2026, (ii) allocate any amounts in the 401(h) Trust forfeiture/suspense account (less any amounts needed for Trustee fees and expenses or any taxes due in connection with the foregoing) pro-rata among participants with a 401(h) Account who are eligible to receive benefits under the 401(h) Accounts, and (iii) distribute assets in the 401(h) Trust to participants (subject to applicable taxes and withholding), unless Debtors reach a resolution with PBGC and/or TIAA allowing for the continuation of the 401(h) Accounts.

33. To assist the Unions and the Non-Union Retiree Committee in evaluating the Proposal, the Debtors provided each with copies of the Disclosure Statement,[7] the Liquidation Analysis attached as Exhibit 9 to the Plan Supplement[8] (the "**Liquidation Analysis**"), summaries of the various Retiree Benefit Arrangements (Union and Non-Union), plan documents, summary plan descriptions, a census for each of the Retiree Benefits, life insurance policies, certificates of coverage related to the life insurance policies, claims and utilization reports, details on the conversion option for the Retiree Life Benefits, details on COBRA costs and plan benefits under which Retirees receiving Retiree Health Benefits would be eligible to elect COBRA coverage, and details on health insurance alternatives. The Debtors also provided documents related to the 401(h) account, including plan documents, account balances, and VEBA Trust documents. The Unions sent the Debtors information requests on June 25, 2026, requesting among other things, copies of plan documents, censuses, cost information, and claims history. The Debtors provided all requested information available to the Unions on an expedited and rolling basis, including on June

---

[7] The "**Disclosure Statement**" refers to the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3020) (as may be amended, supplemented, or otherwise modified from time to time).

[8] The "**Plan Supplement**" refers to the *Notice of Filing of (I) Plan Supplement and (II) Liquidation Analysis* (Docket No. 3046) (as may be amended, supplemented, or otherwise modified from time to time).

**DEBTORS' EXHIBIT NO. 8**
**Page 14 of 42**

26, June 27, June 29, July 5, and July 8, and July 14.  The information the Debtors provided was the most complete and reliable information available to the Debtors.

34.     As set forth above, the Plan provides for the liquidation and wind down of the Debtors' estates and does not contemplate any ongoing operations that would allow the Debtors to continue to satisfy their retiree benefit obligations on a go-forward basis.  Absent termination of the Retiree Benefit Arrangements (as requested under the Proposal), the Debtors will be unable to satisfy the requirements for confirmation of the Plan set forth in section 1129(a) of the Bankruptcy Code and will be forced to immediately convert their chapter 11 cases to cases under chapter 7, which is much worse for the Retirees and other junior creditors (including administrative creditors).

35.     As reflected in the Liquidation Analysis, conversion of these cases to chapter 7 is unlikely to generate any recovery for the Debtors' general unsecured creditors, including the Retirees.  By contrast, the Proposal provides Retirees with consideration that exceeds the zero recovery they would obtain upon conversion, and the Debtors and their professionals were mindful of these considerations when they formulated the Proposal to appropriately and fairly balance of the interests of Retirees and the Debtors' other stakeholders.

36.     In connection with negotiations with respect to the terms of the Proposal, Union Counsel met with representatives of Weil, Gotshal & Manges LLP and Alvarez & Marsal Holdings, LLC, counsel and financial advisor to the Debtors, on July 1, 2026 with respect to the USW, on July 8, 2026 with respect to the UAW, and on July 14, 2026 with respect to the Non-Union Retiree Committee to discuss, among other things, additional diligence requests and to reiterate the Debtors' position regarding the necessity of modifying the Retiree Benefit Arrangements.  Representatives of the Debtors described their proposals and the necessity thereof,

15

answered questions, offered to supply further information, and solicited counter proposals.  By way of example, the Debtors explained the financial difficulties of their estates, the estimated costs and risks associated with leaving the First Brands Welfare Plan open beyond July 31, 2026, and the administrative complexities related to certain alternate proposals raised by the Unions related to the Retiree Life Benefits.  The Debtors held a similar negotiation with the Non-Union Retiree Committee on July 14, 2026.  The Debtors also met with Union Counsel on July 13, 2026 to discuss the status of the 401(h) accounts.

37.    The Debtors have received (i) a written counterproposal from the USW on July 10, 2026 and (ii) a written counterproposal from the UAW on July 14, 2026.  The Non-Union Retiree Committee has not formally responded to the Proposal.  The Debtors have evaluated and will continue to evaluate any and all counterproposals in good faith and are working to assess the financial impact to the estate of the USW's and the UAW's counters.

38.    The Debtors intend to continue negotiating with the Unions and the Non-Union Retiree Committee regarding a consensual termination of the Retiree Benefit Arrangements prior to the hearing on this Motion.  As further set forth herein, to the extent the parties are unable to reach a consensual resolution during the timeframe required, the Debtors respectfully request that the Retiree Benefit Arrangements are terminated in accordance with the terms of the Proposal.

**Basis for Relief**

**A.    Legal Standard**

39.    Section 1114(e)(1) of the Bankruptcy Code provides that a chapter 11 debtor generally "shall timely pay and shall not modify any retiree benefits" 11 U.S.C. § 1114(e)(1).  "Retiree Benefits" are defined to include payments for retired employees and their dependents for "medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance

DEBTORS' EXHIBIT NO. 8
Page 16 of 42

or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title." *Id.* § 1114(a).

40.     However, section 1114(e)(1) of the Bankruptcy Code allows a debtor to modify retiree benefits pursuant to a court order modifying the retiree benefits or an agreement between the debtor and the authorized representative of the recipients of the retiree benefits permitting such modification.  Section 1114(e)(1) provides, in pertinent part, as follows:

> (A) [T]he court, on motion of the trustee or authorized representative, and after notice and a hearing, may order modification of [retiree benefits] pursuant to the provisions of subsections (g) and (h) of this section, or
>
> (B) [T]the trustee and the authorized representative of the recipients of those benefits may agree to modification of such payments, after which such benefits as modified shall continue to be paid by the trustee.

11 U.S.C. § 1114(e)(1).[9]

41.     Section 1114 of the Bankruptcy Code sets forth the process for negotiating modification or termination of a debtor's existing retiree benefits.  *See* 11 U.S.C. § 1114(f), (g). Pursuant to section 1114(g) of the Bankruptcy Code, the Bankruptcy Court shall enter an order modifying retiree benefits if the Bankruptcy Court finds that:

> (1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (f);
>
> (2) the authorized representative of the retirees has refused to accept such proposal without good cause; and

---

[9]   Courts have found that the substantive and procedural requirements of sections 1113 (related to rejection of collective bargaining agreements) and 1114 (related to payment of insurance benefits to retired employees) of the Bankruptcy Code are the same or substantially similar. *See In re Horsehead Indus., Inc.*, 300 B.R. 573, 583 (Bankr. S.D.N.Y. 2003) ("Sections 1113 and 1114 govern, respectively, the rejection of collective bargaining agreements and the termination of retiree benefits.  The statutory requirements under both sections are the same."); *In re Ionosphere Clubs, Inc.*, 134 B.R. 515, 520 (Bankr. S.D.N.Y. 1991) ("[C]ompliance with § 1114 is substantively and procedurally the same as compliance with § 1113").  Accordingly, certain of the authorities cited in this Motion include cases involving section 1113 of the Bankruptcy Code.

**DEBTORS' EXHIBIT NO. 8**
**Page 17 of 42**

(3) such modification is necessary to permit the reorganization of the debtor and assures that all creditors, the debtor, and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities. . . .

11 U.S.C. § 1114(g).

42.     Pursuant to section 1114(f) of the Bankruptcy Code, the Bankruptcy Code,

(1) Subsequent to filing a petition and prior to filing an application seeking modification of the retiree benefits, the trustee shall—

(A) make a proposal to the authorized representative of the retirees, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the retiree benefits that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

(B) provide, subject to subsection (k)(3), the representative of the retirees with such relevant information as is necessary to evaluate the proposal.

(2) During the period beginning on the date of the making of a proposal provided for in paragraph (1), and ending on the date of the hearing provided for in subsection (k)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such retiree benefits.

11 U.S.C. § 1114(f).

43.     In addition to the requirements related to retiree benefits under section 1114, section 1129 of the Bankruptcy Code provides that "[t]he court shall confirm a plan only if[,]" among other requirements, "[t]he plan provides for the continuation after its effective date of payment of all retiree benefits . . . at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of [the Bankruptcy Code], at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits."   11 U.S.C. § 1129(a)(13).  Thus, to confirm a chapter 11 plan, a debtor must either propose a chapter 11 plan

**DEBTORS' EXHIBIT NO. 8**
**Page 18 of 42**

that provides for full payment of retiree benefits or payment of retiree benefits as modified pursuant to section 1114 of the Bankruptcy Code.

44.     For the reasons set forth below, the Debtors have satisfied each of the conditions required by section 1114(g) of the Bankruptcy Code for termination of the Retiree Benefit Arrangements.  Accordingly, the Court should approve termination of the Retiree Benefit Arrangements in accordance with the terms of the Proposal.

**B.      The Debtors' Proposal Fulfilled the Requirements of Section 1114(f) of the Bankruptcy Code**

45.     In accordance with their obligations under section 1114(f) of the Bankruptcy Code, the Debtors have: (1) made a proposal to the Unions and Non-Union Retiree Committee for the termination of the Retiree Benefit Arrangements that (a) was based on the most complete and reliable information available to the Debtors, (b) is necessary for confirmation of the Plan, and (c) treats the Retirees fairly and equitably; (2) provided the Unions and Non-Union Retiree Committee with the relevant information to evaluate the Proposal; and (3) met and conferred in good faith with the Unions and the Non-Union Retiree Committee (and will continue to do until the hearing on the Motion).  Accordingly, the requirements of section 1114(f) of the Bankruptcy Code have been or will soon be satisfied.

**i.      The Debtors' Proposal Satisfied Subsection 1(A) of Section 1114(f) of the Bankruptcy Code**

**a.  *The Debtors' Proposal is Based Upon the Most Complete and Reliable Information Available***

46.     What information constitutes the "most complete and reliable" available will vary with the circumstances.  *See In re AMR Corp.*, 477 B.R. 384, 409 (Bankr. S.D.N.Y. 2012); *In re Mesaba Aviation, Inc.*, 341 B.R. 693, 714 (Bankr. D. Minn. 2006), *aff'd in part*, *rev'd in part*, *Ass'n of Flight Attendants-CWA, AFL-CIO v. Mesaba Aviation, Inc.*, 350 B.R. 435, 454

(D. Minn. 2006).   The Debtor's proposal must "firmly grounded in the historical reality of operational economics, an unvarnished evaluation of [the debtor's] current straits, and a thorough analysis of all of the incidents of income and expense that would bear on its ability to maintain a going concern in the future." *In re AMR Corp.*, 477 B.R. at 415 (quoting *In re Mesaba Aviation, Inc.*, 341 B.R. at 712).

47.     The requirement "essentially bars a debtor in possession from making a proposal that is cursory or arbitrary, or one whose specific terms are result-driven in isolation rather than process-derived and based on actual experience." *AMR Corp.*, 477 B.R. at 415 (*quoting In re Karykeion, Inc.*, 435 B.R. 663, 677 (Bankr. C.D. Cal. 2010)).   However, the debtor need not achieve perfection; it must simply "gather the most complete information available at the time and base its proposal on the information it considers reliable," excluding "hopeful wishes, mere possibilities and speculation." *Id.* at 415 (quoting *Karykeion*, 435 B.R. at 678); *see also Mesaba Aviation, Inc.*, 350 B.R. at 435 (quoting *In re U.S. Truck Co. Holdings*, No. 99-59972 (WS), 2000 Bankr. LEXIS 1376, at *39 (Bankr. E.D. Mich. Sept. 29, 2000) (stating the debtor must make "an honest effort to compile all data relevant to making its proposal").

48.     The Proposal was made based on the most complete and reliable information available to the Debtors—including all of the information provided to the Unions and the Non-Union Retiree Committee discussed above.   The Debtors are no longer operating, lack the ability to continue sponsoring, administering, and funding the Retiree Benefit Arrangements past confirmation, and are pursuing a plan of liquidation that does not provide for the continuation of the Retiree Benefit Arrangements.   There is no dispute as to the Debtors' current state of financial affairs.   Further, in formulating the Proposal, the Debtors, with assistance from their advisors, closely reviewed their current budget and forecasted liquidity to determine how long they could

DEBTORS' EXHIBIT NO. 8
Page 20 of 42

continue to provide the Retiree Benefit Arrangements and what concessions they could offer the Retirees in exchange for their consent to terminate the Retiree Benefit Arrangements.  The Debtors also conferred with their key stakeholders—the Ad Hoc Group, the ABL Secured Parties, and the Creditors' Committee—in developing the Proposal.

49.     Accordingly, the Proposal was based on the most complete and reliable information available to the Debtors.

### b.  *The Proposal is Necessary to Permit Confirmation of the Plan*

50.     Section 1114(f)(1)(A) and (g)(3) require a debtor's proposal to be "necessary to permit the reorganization of the debtor."  11 U.S.C. § 1114(f)(1)(A), (g)(3).

51.     In the context of liquidating cases, like these chapter 11 cases, courts have concluded that the "necessary" requirement must be interpreted to mean "necessary to accommodate confirmation of a Chapter 11 plan."  *See, e.g.*, *Ionosphere Clubs*, 134 B.R. at 525; *U.S. Truck Co. Holdings*, 2000 Bankr. LEXIS 1376, at *26–8 ("[A]pplying § 1113 to a liquidating Chapter 11 . . . is somewhat problematic because many of the § 1113 requirements and the case law interpreting them focus on or presuppose efforts to rehabilitate an ongoing business [but] . . . [t]hese standards must necessarily be construed, if possible, in a way that gives them meaning in this liquidation setting.").

52.     To confirm the Plan, the Debtors must satisfy section 1129(a)(13) of the Bankruptcy Code, which requires the Debtors to either propose a chapter 11 plan that provides for full payment of retiree benefits or payment of retiree benefits as modified pursuant to section 1114 of the Bankruptcy Code.  As the Debtors are no longer operating and have proposed a liquidating Plan, the Debtors' only path to satisfying section 1129(a)(13) is terminating the Retiree Benefit Arrangements in accordance with section 1114 of the Bankruptcy Code.

53.     Accordingly, the Proposal is necessary for the Debtors to confirm the Plan.

**DEBTORS' EXHIBIT NO. 8**
**Page 21 of 42**

### ii.   The Debtors' Proposal Treats All Parties Fairly and Equitably

54.   Under sections 1114(f)(1)(A) and (g)(3) of the Bankruptcy Code, a debtor's proposal must ensure that all creditors and affected parties "are treated fairly and equitably."  The purpose of this requirement is to "spread the burden of saving the company to every constituency while ensuring that all sacrifice to a similar degree."  *In re Patriot Coal Corp.*, 493 B.R. 65, 130 (Bankr. E.D. Mo. 2013) (quoting *In re Nw. Airlines Corp.*, 346 B.R. 307, 325 (Bankr. S.D.N.Y. 2006)).

55.   "[E]quity means fairness under the circumstances" and does not require that the proposal provide every constituency with the very same treatment.  *See In re Walter Energy, Inc.*, 542 B.R. 859, 892 (Bankr. N.D. Ala. 2015), *aff'd sub nom. United Mine Workers of Am. 1974 Pension Plan & Tr. v. Walter Energy, Inc.*, 579 B.R. 603 (N.D. Ala. 2016), *aff'd* 911 F.3d 1121 (11th Cir. 2018) ("A debtor can meet the [fair and equitable] requirement 'by showing that its proposal treats the union fairly when compared with the burden imposed on other parties[.]'") (internal citations omitted); *In re Amherst Sparkle Mkt., Inc.,* 75 B.R. 847, 851 (Bankr. N.D. Ohio 1987) ("Simply because the proposed modifications do not provide for identical treatment with respect to all affected parties, this does not necessarily result in unfair or inequitable treatment . . . ."); *Patriot Coal Corp.*, 493 B.R. at 131 (stating that courts exercise flexibility to determine what constitutes fair and equitable treatment because "differing sacrifices of parties in interest are not always easy to compare").

56.   With respect to the Retirees, the Proposal provides Retirees receiving identical benefits with the same proposed treatment.  Further the Proposal does not treat Union Retirees differently from Non-Union Retirees.  Thus, the Proposal is fair and equitable as and among the Retirees.

57.     Moreover, this not a situation where the Debtors are attempting to reorganize on the backs of the retirees.  All stakeholders are making meaningful concessions under the Plan.

58.     The Plan is built on a global settlement in which senior secured creditors (DIP Secured Parties, First Lien, Second Lien, and ABL Secured Parties) agree to let value flow to junior creditors that their liens would otherwise capture entirely, while junior creditors accept impaired, waterfall-based recoveries (including through Litigation Trust interests rather than cash) instead of being paid in full.  For example, the DIP Secured Parties agreed to reduce the minimum liquidity covenant under the DIP Documents from $50 million to $25 million, consent to continued use of cash collateral under an agreed budget, provide litigation funding to the Litigation Trust, and allow holders of administrative and priority claims to receive distributions ahead of DIP A Claims being satisfied in full.  Rather than being paid first in full ahead of general unsecured creditors, First Lien and Second Lien Lenders will receive only their Pro Rata Share of Class 3(c) Litigation Trust Interests, sharing the Litigation Trust Waterfall alongside Roll-Up Claims and General Unsecured Claims. Lastly, under the Administrative Expense Claims Consent Program, holders who opt in accept a reduced claim that is settled at 50% of the Reconciled Amount in exchange for earlier recovery ahead of non-opting Administrative Expense claimants under the Litigation Trust Waterfall.  Absent the global settlement embodied in the Plan, the Debtors believe junior creditors (including Retirees) would likely receive no recovery at all, given that DIP Claims and prepetition secured obligations total roughly $7.5 billion against the same collateral.  The relief requested herein is therefore critical to securing the benefits of the Plan settlement.

59.     Accordingly, the Proposal is fair and equitable as and among the Retirees and the Debtors' other stakeholders.

**DEBTORS' EXHIBIT NO. 8**
**Page 23 of 42**

> ### iii. The Debtors Provided the Unions and the Non-Union Retiree Committee with the Relevant Information to Evaluate the Proposal

60.     Section 1114(f)(1)(B) requires that the debtor provide "the representative of the retirees with such relevant information as is necessary to evaluate the proposal." 11 U.S.C. § 1114(f)(1)(B).   The breadth and depth of the requisite information will vary with the circumstances, but, generally, a debtor must provide enough information to "test and confirm the fundamental premise underlying the [debtor's] proposals." *Id.* at *18.   Section 1114(f)(1)(B) does not require perfection or the production of every conceivable document that an authorized representative might request. Rather, it requires the debtor to provide relevant information necessary to evaluate the proposal.

61.     The information the debtor provides for this purpose need not be perfect; the debtor has no greater obligation than to make an honest effort to compile all data relevant to making its proposal. *See In re Trump Ent. Resorts, Inc.,* 519 B.R. 76, 89 (Bankr. D. Del. 2014).

62.     Like the other factors listed under section 1114, this factor requires a reasonableness analysis, ensuring that the Unions and the Non-Union Retiree Committee are provided a reasonable quantum of information as necessary to evaluate the Proposal. *See In re Patriot Coal Corp.*, 493 B.R. at 116–17 (rejecting union's argument the debtors had not provided enough information to evaluate proposals, where, *inter alia*, union's request for fully dynamic projection model was "completely unrealistic and well beyond the requirements of the statute"); *In re Appletree Mkts. Inc.*, 155 B.R. 431, 438 (S.D. Tex. 1993) (debtor supplied necessary information when it provided union access to its financial books and current financial statements).

63.     In accordance with section 1114(f)(1)(B) of the Bankruptcy Code, the Debtors provided the Non-Union Retiree Committee and the Unions with information sufficient to permit them to evaluate the proposed modifications and to engage meaningfully with the

**DEBTORS' EXHIBIT NO. 8**
**Page 24 of 42**

Debtors regarding the Proposal.  In addition to responding to questions during negotiations with the Unions and the Non-Union Retiree Committee, the Debtors responded to fulsome information requests with the most complete and accurate information available to them.  The Debtors, moreover, did so on an expeditious basis—within days of receiving such requests.  The information provided was the most complete and reliable information available to the Debtors at the time and was compiled in good faith from the Debtors' books and records and other information available to them.

64.     Specifically, the Debtors provided the Unions and Non-Union Retiree Committee with materials that included copies of the Disclosure Statement, the Liquidation Analysis, summaries of the various Retiree Benefit Arrangements (Union and Non-Union), plan documents, summary plan descriptions, a census for each of the Retiree Benefits, life insurance policies, certificates of coverage related to the life insurance policies, claims and utilization reports, details on the conversion option for the Retiree Life Benefits, details on COBRA costs and plan benefits under which Retirees receiving Retiree Benefits would be eligible to elect COBRA coverage, and details on health insurance alternatives.  The Debtors also provided documents related to the 401(h) account, including plan documents, account balances, and VEBA Trust documents.

65.     These materials addressed, among other things, the Debtors' financial condition, the basis for the proposed modifications, the affected retiree population, and the consequences of the proposed relief not being effectuated.  Additionally, the Debtors have been and will continue to respond to reasonable requests by the Unions and Non-Union Retiree Committee for further information.

DEBTORS' EXHIBIT NO. 8
Page 25 of 42

66. Accordingly, the Debtors have provided the Unions and the Non-Union Retiree Committee with the information necessary to assess the Proposal and its underlying basis, the Debtors satisfied section 1114(f)(1)(B).

### iv. The Debtors Met and Conferred with the Unions and the Non-Union Retiree Committee in Good Faith (and Will Continue to Do So)

67. Under Section 1114(f)(2), a debtor must meet with the retiree committee "at reasonable times . . . to confer in good faith" in attempting to reach consensual modification or termination of retiree benefits during the negotiation period. 11 U.S.C. § 1114(f)(2). There is no minimum, bright-line requirement for the number of meetings between the debtor and the union or retiree committee to satisfy this factor. *See Amherst Sparkle Mkt., Inc.*, 75 B.R. at 852 (two meetings with union to discuss proposal was reasonable where parties engaged in written communication regarding the modifications).

68. The Debtors have made themselves available to both the Unions and the Non-Union Retiree Committee and have met and conferred with each of them (and will continue to do so). During the Debtors' meetings with the Unions and the Non-Union Retiree Committee, the Debtors explained the Proposal and the context in which they were seeking to modify the Retiree Benefits. In addition, the Debtors made several representatives available during the meetings and responded and continue to respond to any inquiries or requests for information by the Unions and the Non-Union Retiree Committee to the best of the Debtors' ability. The Debtors have repeatedly told the Unions and the Non-Union Retiree Committee that they are available to meet at a moment's notice to reach a mutually agreeable termination.

69. Accordingly, the Debtors have satisfied the meet and confer requirements of section 1114(f)(2) of the Bankruptcy Code.

**DEBTORS' EXHIBIT NO. 8**
**Page 26 of 42**

**C.      The Unions and Non-Union Retiree Committee Have Not Refused to Accept the Debtors' Proposal With Good Cause**

70.      Pursuant to section 1114(g)(2), a court will not approve modification or termination unless the retiree committee has rejected a proposal "without good cause."  11 U.S.C. § 1114(g)(2).  Once a debtor establishes the retiree committee refused to accept its proposal, the burden shifts to the authorized representative to prove that it had good cause to refuse the proposal. *AMR Corp.*, 477 B.R. at 409–10 ("[T]he union must come forward with evidence of 'its reasons for declining to accept the debtor's proposal in whole or in part.'") (internal citations omitted); *Patriot Coal Corp.*, 493 B.R. at 112.

71.      Courts determining whether there was good cause to reject a proposal will consider, among other things, the respective positions and conduct of the debtor and the authorized representative, the terms of the proposal that was rejected, and the context in which the authorized representative decided to reject it.  *In re Pinnacle Airlines*, 483 B.R. 381, 409 (Bankr. S.D.N.Y. 2012).

72.      A retiree committee does not have "good cause" for rejecting a debtor's proposals based on demands that are not economically feasible or alternatives that would not permit the debtor to reorganize—or liquidate—successfully.  *See Nw. Airlines Corp.*, 346 B.R. at 307, 328; *see also In re Horizon Nat. Res. Co.*, 316 B.R. 268, 282 (Bankr. E.D. Ky. 2004) (stating "Sections 1113 and 1114 apply in liquidation Chapter 11 cases" and that in the liquidation context, "'necessary to permit reorganization' means 'necessary to confirmation of the plan'").  If the Debtors satisfy the other procedural prerequisites for a section 1114 motion, and the Debtors' proposal is made in good faith, there is almost never good cause to reject it.  *See, e.g.*, *In re Mission Coal Co., LLC*, No. 18-04177-TOM11, 2019 WL 1024933, at *30 (Bankr. N.D. Ala. Mar. 1, 2019) ("Where a proposal is necessary for the debtor's viability and the other requirements under sections

1113 and 1114 are met, no good causes exists to reject the proposal, even if the proposal requires sacrifices by the union or retirees"); *In re Walway Co.*, 69 B.R. 967, 975 (Bankr. E.D. Mich. 1987) (holding union's rejection of modification was without good cause because proposal was necessary and equitable pursuant to section 1113); *In re Allied Delivery Sys.*, 49 B.R. 700, 704 (Bankr. N.D. Ohio 1985) (same).

73. The Debtors received a written counterproposal from the USW on July 10, 2026 and a written counterproposal from the UAW on July 14, 2026. The Non-Union Retiree Committee has not formally responded to the Proposal. The Debtors have evaluated and will continue to evaluate any and all counterproposals in good faith and are working to assess the financial impact to the estate of the USW's counter. However, the Debtors believe that the Unions and the Non-Union Retiree Committee will not be able to establish good cause and reserve the right to supplement the Motion to update the Court on this factor prior to the hearing.

74. Here, there is no cause, let alone good cause, to reject the Proposal because, as discussed above, the Debtors have satisfied each of the other factors required by section 1114 of the Bankruptcy Code. Rather, the Proposal is more than fair and equitable to the Unions and Non-Union Retiree Committee under the circumstances of these cases. Failure to terminate the Retiree Benefit Arrangements will make it impossible for the Debtors to confirm the Plan and will likely lead to a conversion of the Debtors' cases which will ultimately reduce distributions to the Debtors' creditors (including the Retirees). Such an outcome is not in the best interests of the Debtors' estates and their creditors.

75. Accordingly, the Debtors believe that any rejection of the Proposal will be without good cause, satisfying section 1114(g)(2) of the Bankruptcy Code.

### D.     The Balance of the Equities Favors Granting the Relief Requested

76.     The final requirement under Section 1114(g) requires the debtors show that the termination or modification of the retiree benefits is "favored by the balance of equities." 11 U.S.C. § 1114(g)(3).  The "balance of the equities" standard considers non-exclusive equitable factors to determine whether the balance of the equities favors modification of the retiree benefits. *See In re Tex. Sheet Metals, Inc.*, 90 B.R. 260, 272 (Bankr. S.D. Tex. 1988) (considering, among other factors, the likely reduction in the value of creditors' claims if the debtors' proposal is not approved).  However, "[the] Bankruptcy Code does not authorize freewheeling consideration of every conceivable equity, but rather only how the equities relate to the success of the reorganization [or liquidation]." *Nw. Airlines*, 346 B.R. at 329 (quoting *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527 (1984)).

77.     "Congress drafted § 1114 to ensure that debtors did not seek to effect reorganizations 'on the back of retirees' for the benefit of other parties in interest." *Ionosphere Clubs*, 134 B.R. at 523.  This is not a concern here.  The Debtors have extremely limited liquidity, no longer have any operating business lines, and are seeking confirmation of a chapter 11 plan that will allow certain Debtors to wind down their remaining assets.  As a result, the Debtors simply cannot provide retiree benefits consistent with the programs previously provided.  Further, since there are no material differences between the mechanics of liquidation in chapter 11 or chapter 7, Congress could not have intended the results of such liquidations to differ so markedly by enhancing the claim of retirees in one instance (a chapter 11 liquidation) but not the other (a chapter 7 liquidation). *See id.* at 522, 525 (holding that where a debtor is liquidating under chapter 11, "necessary to permit the reorganization of the debtor" is robbed of its meaning if construed literally and must instead be interpreted to mean "necessary to accommodate confirmation of a Chapter 11 plan").

DEBTORS' EXHIBIT NO. 8
Page 29 of 42

78.     The liquidating Plan does not allocate any amounts for payment of the Retiree Benefits and instead treats Retirees as general unsecured creditors entitled to their pro rata share of interests in the Litigation Trust (as defined in the Plan), which will entitle holders to share in distributions from the monetization of the assets of the Litigation Trust in accordance with a waterfall set forth in the Plan.  The recoveries of all parties in these chapter 11 cases, including the Retirees, are at significant risk in a chapter 7 liquidation.  However, if the Proposal is implemented and the Plan is confirmed, each of the Debtors' eligible creditors, including the Retirees, stand to benefit from amounts that are recovered by the Litigation Trust and available for distribution in accordance with the Plan.

79.     If the Proposal is not implemented and the Plan cannot be confirmed, the Debtors will be forced to immediately convert to cases under chapter 7 of the Bankruptcy Code. As previously noted, such a result would reduce recoveries for creditors, including the Retirees. The balance of the equities, therefore, weighs in favor of allowing the Debtors to terminate the Retiree Benefit Arrangements on the terms set forth in the Proposal if the parties cannot reach agreement on acceptable settlement terms by the date this Motion is heard.

80.     For the foregoing reasons, termination of the Retiree Benefit Arrangements, as permitted under section 1114 of the Bankruptcy Code and on the terms set forth in the Proposal, is necessary, appropriate, and in the best interests of the Debtors, their estates, the Retirees and all other parties in interest in these chapter 11 cases.  Accordingly, the Court should grant the relief requested in this Motion.

## Basis for Emergency Relief

81.     The Debtors respectfully request emergency consideration of this Motion in accordance with Bankruptcy Local Rule 9013-1(i).  Section 1114(k)(1) of the Bankruptcy Code requires the Court to schedule a hearing on this Motion not later than fourteen days after the date

hereof.  Given the interrelatedness of the issues, the Debtors are requesting that this Motion be heard at the confirmation hearing scheduled for July 28, 2026 at 9:00 a.m. (Central Time), exactly 14 days after the date of the filing of this Motion.  Further, notwithstanding the requirements of section 1114(k)(1) with respect to scheduling, the Debtors have included a request for emergency consideration in accordance with paragraphs 16 and 17 of the Complex Case Procedures and Bankruptcy Local Rule 9013-1(i).

82.    Termination of the Retiree Benefit Arrangements upon good faith negotiations with authorized representatives of the Retirees are prerequisites to confirmation of the Plan.  As set forth in the Haughey Declaration, support from the Debtors' secured lenders for the plan process is predicated on a budget and proposed confirmation timeline that contemplates confirmation of the Plan by the end of July 2026.  To the extent that the Proposal is not implemented and the termination of the Retiree Benefit Arrangements is not effectuated in the near term, the Debtors may be unable to achieve confirmation of the Plan on the requisite timeframe. Such a result would likely lead to conversion of these chapter 11 cases to cases under chapter 7 and reduced recoveries for creditors, including the Retirees.  Accordingly, emergency consideration of the Motion is appropriate.

## Reservation of Rights

83.    Other than as set forth in the Proposal, nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity, priority or character of any claim against the Debtors (including any claim for any retiree benefits), (ii) an agreement or obligation to pay any claims, (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (iv) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, (v) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (vi) a waiver of the

31

**DEBTORS' EXHIBIT NO. 8**
**Page 31 of 42**

obligation of any party in interest to file a proof of claim, or (vii) an approval, assumption, rejection, termination, or modification of any unexpired lease or executory contract (including any plan or agreement providing for retiree benefits) under section 365 of the Bankruptcy Code or otherwise.  The Debtors expressly reserve all rights with respect to the foregoing matters.

## Notice

84.     Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## No Previous Request

85.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

32

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:   July 14, 2026
    Houston, Texas

                                          /s/  Clifford W. Carlson
                                    WEIL, GOTSHAL & MANGES LLP
                                    Gabriel A. Morgan (24125891)
                                    Clifford W. Carlson (24090024)
                                    700 Louisiana Street, Suite 3700
                                    Houston, Texas 77002
                                    Telephone:  (713) 546-5000
                                    Facsimile:  (713) 224-9511
                                    Email:  gabriel.morgan@weil.com
                                            clifford.carlson@weil.com

                                    -and-

                                    WEIL, GOTSHAL & MANGES LLP
                                    Matthew S. Barr (admitted *pro hac vice*)
                                    Sunny Singh (admitted *pro hac vice*)
                                    Andriana Georgallas (admitted *pro hac vice*)
                                    Kevin Bostel (admitted *pro hac vice*)
                                    Alejandro Bascoy (admitted *pro hac vice*)
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone:  (212) 310-8000
                                    Facsimile:  (212) 310-8007
                                    Email:   matt.barr@weil.com
                                            sunny.singh@weil.com
                                            andriana.georgallas@weil.com
                                            kevin.bostel@weil.com
                                            alejandro.bascoy@weil.com

                                    *Attorneys for Debtors*
                                    *and Debtors in Possession*

33

**DEBTORS' EXHIBIT NO. 8**
**Page 33 of 42**

## Certificate of Service

I hereby certify that on July 14, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


 */s/  Clifford W. Carlson*
Clifford W. Carlson

**Exhibit A**

**Proposal**

**Proposed Terms for Modification of Retiree Benefits**
**Necessary to Permit Confirmation of the Proposed Joint Chapter 11 Plan of First Brands**
**Group, LLC and Certain Affiliated Debtors (Updated as of 7/14/2026)**

First Brands Group, LLC and certain affiliated debtors (collectively, the "**Debtors**"), propose that the medical, dental, vision and prescription drug coverage, as well as life insurance benefits and health care spending accounts, provided to eligible retired employees of certain of the Debtors (and their spouses and eligible dependents), including under the First Brands Group, LLC Health and Welfare Employee Plan and the Dalton Corporation, Warsaw Manufacturing Facility Pension Plan (the "**Pension Plan**") (collectively, the "**Retiree Benefit Arrangements**") be modified, as follows:

1. **Retiree Benefits**: Certain of the Debtors provide various combinations of retiree health (including medical, prescription drug, dental and vision coverage) benefits (the "**Retiree Health Benefits**"), retiree health care spending account benefits (the "**401(h) Accounts**") and retiree life insurance benefits (the "**Retiree Life Benefits**" and, collectively with the Retiree Health Benefits and the 401(h) Accounts, the "**Retiree Benefits**") to certain current retired employees and their spouses and/or eligible dependents (collectively, the "**Retirees**").

2. **Effective Date of Termination**: The Retiree Health Benefits and Retiree Life Benefits, in each case, provided under the Retiree Benefit Arrangements shall be terminated effective July 31, 2026 (the "**Termination Date**") and the 401(h) Accounts provided under the Retiree Benefit Arrangements and the trust established in connection therewith shall be terminated effective August 31, 2026.

3. **Authorized Representatives**.

   a. The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("**UAW**") have agreed to represent the Retirees who were covered under collective bargaining agreements with FRAM Group Operations, LLC (with respect to the Greenville, Ohio plant and the Fostoria, Ohio plant), as well as Retirees who were covered under collective bargaining agreements with ASC Industries, Inc. and Airtex Products, LP.

   b. The United Steelworkers ("**USW**") have agreed to represent Retirees who were covered under collective bargaining agreements with Carter Fuel System, Logansport as well as Retirees who were covered under collective bargaining agreements with Dalton Corporation, Warsaw Manufacturing Facility (Warsaw, Indiana).

   c. William R. Shrode, John David Gaither, John Evans and William K. Vinson have been appointed to represent the Retirees who are not represented by the UAW or the USW by the United States Trustee for Region 7 pursuant to 11 U.S.C. Section 1114(d) and the United States Bankruptcy Court for the Southern District of Texas,

Houston Division pursuant to the Order entered at ECF No. 3060 (such individuals, the "**Non-Union Retiree Committee**").

The USW, UAW and the Non-Union Retiree Committee are referred to collectively as the "**Authorized Representatives**".

4. **Proposed Modification of Retiree Benefits**: The Debtors propose to modify the Retiree Benefits as follows:

   a. **Retiree Health Benefits**.  The Debtors will maintain the Retiree Health Benefits in respect of the applicable covered Retirees through and including July 31, 2026.  The Debtors will terminate such Retiree Health Benefits and the corresponding Retiree Benefit Arrangements effective as of 11:59pm ET on July 31, 2026.  Retirees receiving Retiree Health Benefits must submit any claims incurred on or prior to July 31, 2026 for processing to the applicable claims administrator no later than October 31, 2026, and any such claims submitted on or after November 1, 2026 will not be considered for payment.  Retirees will continue to be responsible to remit contributions for Retiree Health Benefits coverage to the extent applicable through and including July 31, 2026.

   b. **401(h) Accounts**. The Debtors will maintain the 401(h) Accounts and the trust established in connection therewith in respect of the applicable covered Retirees through and including August 31, 2026.  The Debtors will terminate such 401(h) Accounts and the corresponding Retiree Benefit Arrangements and the trust in connection therewith effective as of 11:59pm ET on August 31, 2026. Retirees with 401(h) Accounts must submit any claims to Teachers Insurance and Annuity Association of America ("**TIAA**") by no later than August 21, 2026, and any claims submitted on or after August 22, 2026 will not be considered for payment.  Any amounts in the forfeiture/suspense account (less any amounts needed for Trustee fees and expenses or any other permitted amounts) will be allocated pro-rata among participants with a 401(h) Account who are eligible to receive benefits under the 401(h) Accounts.  Applicable covered Retirees will receive a lump sum cash payment, unless Debtors reach a resolution with PBGC and/or  TIAA allowing for the continuation of the 401(h) Accounts.

   c. **Retiree Life Benefits**.  The Debtors will maintain the Retiree Life Benefits in respect of the applicable covered Retirees through and including July 31, 2026.  The Debtors will terminate such Retiree Life Benefits and the corresponding Retiree Benefit Arrangements effective as of 11:59pm ET on July 31, 2026.

   d. Retirees shall have an allowed general unsecured claim equal to the estimated present value of any unpaid Retiree Life Benefits (which shall be determined based on reasonable assumptions to be mutually agreed upon in good faith by the Debtors and the Authorized Representatives).

2

5. **Releases**.  Retirees and their representatives and each of their successors and assigns shall release the Debtors and their representatives and each of their successors and assigns in full and final satisfaction of the claims of Retirees on account of the Retiree Benefits.

6. **Support for Plan**.   The Authorized Representatives shall support and not object to confirmation of the Debtors' chapter 11 plan, which is currently scheduled to be heard on July 28, 2026.

7. **Availability to Meet and Confer**. The Debtors are available to meet with each Authorized Representative to discuss and confer in good faith with respect to this proposal or any other related relevant matter. To that end, the Debtors desire to have a meeting with the USW tomorrow, July 14, 2026, to discuss the 401(h) Accounts in light of PBGC's position regarding the inability to trustee or administer them notwithstanding that PBGC took over the Pension Plan, effective April 30, 2026. Please contact us to schedule a meeting date and time.

3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § § | **Case No. 25-90399 (CML)** |
| | § § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**ORDER (I) AUTHORIZING DEBTORS TO TERMINATE**
**RETIREE BENEFITS AND (II) GRANTING RELATED RELIEF**

Upon the motion, dated July [●], 2026 (the "**Motion**"),[2] of First Brands Group, LLC and

its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), for entry of an order, pursuant to sections 105(a) and 1114 of the

Bankruptcy Code, (i) authorizing the Debtors to modify retiree benefits in accordance with the

terms of the Proposal and (ii) granting related relief, all as more fully set forth in the Motion; and

this Court having jurisdiction and authority to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b); and consideration of the Motion and the

requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that

venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper

notice of the Motion having been provided; and such notice having been adequate and appropriate

under the circumstances, and it appearing that no other or further notice need be provided; and this

Court having reviewed the Motion; and upon the Haughey Declaration and the record of any

hearing held on the Motion; and all objections, if any, to the Motion having been withdrawn,

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.      The Motion is granted to the extent set forth in this Order.

2.      The Debtors have satisfied each of the standards for relief under section 1114 of the Bankruptcy Code with respect to the relief requested in the Motion, including termination of the Retiree Benefit Arrangements as set forth in the Proposal.

3.      Pursuant to section 1114 of the Bankruptcy Code, the Debtors are authorized to terminate the Retiree Benefit Arrangements and any obligations thereunder, effective July 31, 2026, in accordance with the Proposal.

4.      Pursuant to section 1114 of the Bankruptcy Code and the terms of this Order, the Proposal attached hereto as **Exhibit 1** is hereby approved.  The Debtors are authorized to implement, and perform under, the Proposal, and to take any and all actions that may be reasonably necessary or appropriate to effectuate the same.  The Non-Union Retiree Committee, the Unions, and the Retirees shall cooperate with, and take all steps reasonably requested by, the Debtors in connection with implementation of the Proposal.

5.      Other than as set forth in the Proposal, nothing in the Motion or this Order is intended to be or shall be construed as (i) an admission as to the validity, priority or character of any claim against the Debtors (including any claim for any retiree benefits), (ii) an agreement or obligation to pay any claims, (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (iv) a waiver of the Debtors' or any appropriate party in

**DEBTORS' EXHIBIT NO. 8**
**Page 40 of 42**

interest's rights to dispute any claim, (v) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (vi) a waiver of the obligation of any party in interest to file a proof of claim, or (vii) an approval, assumption, rejection, termination, or modification of any unexpired lease or executory contract (including any plan or agreement providing for retiree benefits) under section 365 of the Bankruptcy Code or otherwise.

6.       The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Order.

7.       The terms and conditions of this Order shall be immediately enforceable and effective upon its entry.

8.       This Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2026
          Houston, Texas

_____
CHRISTOPHER LOPEZ
UNITED STATES BANKRUPTCY JUDGE

DEBTORS' EXHIBIT NO. 8
Page 41 of 42

## <u>Exhibit 1</u>

**Proposal**

**[See Exhibit A to Motion]**