**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| | § | |
| **Debtors.**[1] | § | |

**DECLARATION OF**
**NICHOLAS HAUGHEY IN SUPPORT OF**
**EMERGENCY MOTION OF DEBTORS FOR**
**ORDER (I) AUTHORIZING DEBTORS TO MODIFY**
**RETIREE BENEFITS AND (II) GRANTING RELATED RELIEF**

I, Nicholas Haughey, pursuant to § 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      I submit this declaration (the "**Declaration**") in support of the *Emergency Motion of Debtors for Order (I) Authorizing Debtors to Modify Retiree Benefits and (II) Granting Related Relief* (Docket No. 3194) (the "**Motion**")[2] filed by First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**," and together with their non-Debtor affiliates, the "**Company**"), in these chapter 11 cases.  The Motion seeks entry of an order (i) authorizing the Debtors to modify retiree benefits in accordance with the terms of the Proposal and (ii) granting related relief, each as set forth therein.

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]    Capitalized terms used but not otherwise defined in this Declaration shall have the meanings ascribed to them in the Motion or the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (Docket No. 22), as applicable.

2. This Declaration is based on my personal knowledge, education, experience and review of documents and other information relevant to my testimony.  If called to testify, I could and would testify competently to the matters set forth in my Declaration.  My compensation is not contingent upon or influenced by the substance of my testimony or the outcome of the Motion.  I am authorized to submit this Declaration on behalf of the Debtors.

### <u>Qualifications and Professional Background</u>

3. I am a Managing Director at Alvarez & Marsal North America LLC ("**A&M**").  On September 5, 2025, A&M was retained by the Company to, among other things, assist with liquidity management and forecasting, identify cost-reduction opportunities, and undertake contingency preparations for a potential chapter 11 filing.  On September 24, 2025, Global Assets, LLC and twelve of the Debtors each filed with the Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), and commencing on September 28, 2025 (as applicable, the "**Petition Date**"), First Brands Group, LLC and the remaining Debtors each filed with the Court a voluntary case under chapter 11 of the Bankruptcy Code.

4. I have been a member of the A&M team working on this matter since shortly after our retention.  From the outset of A&M's retention, we have worked in coordination with the Debtors' other advisors on numerous activities to support the Debtors' restructuring efforts.  As a result of A&M's work with the Debtors, their affiliates, and the Debtors' other advisors, I have become familiar with the Company's day-to-day operations, business and financial affairs, and the circumstances leading to the commencement of these chapter 11 cases.

5. I have over seventeen years of experience providing turnaround consulting, advisory services, and executive leadership to organizations across a variety of industries.  I earned my bachelor's degree in finance from Wofford College and my master's degree in accountancy

**DEBTORS' EXHIBIT NO. 9**
**Page 2 of 10**

from the University of Notre Dame.  In 2016, after seven years providing consulting and advisory services at A&M, I departed to serve as Vice President of Finance for Dex Media, a provider of advertising and customer relationship management software to small and medium-sized businesses.  During my three years with Dex Media, I helped guide the company through a successful pre-packaged bankruptcy reorganization and negotiated key terms of the exit financing package, which reduced the company's debt from more than $2 billion to $600 million.  Following Dex Media's successful turnaround, I joined A&M's Restructuring & Turnaround group, where I have spent approximately the last seven years advising company-side clients on financial modeling, cash forecasting and analysis, and corporate restructuring.  During that time, I led the chapter 11 bankruptcy planning and preparation, asset sale analysis, and estate liquidation work for Dean Foods Company, the largest dairy bottling operation in the United States.  Recently, I served as Chief Restructuring Officer of Red Lobster, a restaurant chain with approximately 550 locations in the United States and Canada and more than 25 franchised locations in Latin America and Asia.

6.        I have substantial experience serving either in senior management positions or as a restructuring advisor in large organizations and in assisting companies with stabilizing their financial condition, analyzing their operations, and developing a business plan to accomplish restructuring objectives.  I regularly advise distressed companies on matters such as liquidity management, cost reductions, mergers and acquisitions, negotiations with customers, and strategic planning.

**The Debtors' Liquidity Situation and Proposed Plan**

7.        Following several going-concern and other sales of the Debtors' assets and operations, the Debtors are in the process of winding down their estates.  At this point, all of the

3

Case 25-90399   Document 3406-9   Filed in TXSB on 07/24/26   Page 4 of 10

Case 25-90399   Document 3195   Filed in TXSB on 07/14/26   Page 4 of 10

Debtors' operations in North America and the vast majority of their operations in foreign countries have ceased.  In furtherance of their efforts to wind down their estates, the FBG Debtors[3] are in the process of seeking approval of a proposed Plan[4] by the end of July.  In connection with the confirmation process, the Debtors reached an agreement with their key stakeholders on a budget (the "**Confirmation Budget**")[5] that provides the Debtors with a limited amount of liquidity to seek confirmation of the Plan by the end of July.  The Confirmation Budget does not provide the Debtors with funding to continue any operations after that point.  Accordingly, the Confirmation Budget does not provide the FBG Debtors with the liquidity necessary to continue paying the Retiree Benefits incurred after the end of July.

8.      In addition, the Plan, which is the product of months of arm's length, good faith negotiations between the Debtors, the ABL Secured Parties, the Ad Hoc Group, and the Creditors' Committee, does not provide the Debtors or their successors with a path to continue paying the Retiree Benefits after confirmation.  Specifically, the Plan contemplates the transfer of the Debtors' remaining assets to various trusts that will seek to monetize those assets and distribute the proceeds therefrom to the trust beneficiaries.  Thus, the Debtors will not be continuing any level of operations following confirmation of the Plan that would allow them to continue paying the Retiree Benefits.

---

[3]  "**FBG Debtors**" includes First Brands Group Holdings, LLC ("**FBGH**"), FBGH's direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC.

[4]  The "**Plan**" means the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3019).

[5]  The Confirmation Budget is attached as Exhibit A to the *Declaration of Charles M. Moore in Support of (I) the Proposed Confirmation Schedule and (II) the Debtors' Objection to United States Trustee's Motion to Convert or Dismiss Pursuant to 11 U.S.C. § 1112(b)* (Docket No. 2911)

4

**DEBTORS' EXHIBIT NO. 9**
**Page 4 of 10**

**Negotiations With the Unions and Non-Union Retiree Committee**

9.       On June 15, 2026, prior to issuing the Proposal (as defined herein), pursuant to section 1114 of the Bankruptcy Code, the Debtors contacted the Unions to commence discussions and negotiations regarding the proposed termination of the Retiree Benefit Arrangements.  The Debtors also commenced discussions with the Non-Union Retiree Committee on July 11, 2026 following its appointment.   In light of the proposed hearing to consider confirmation of the Plan on July 28, 2026, the Debtors have communicated to counsel for the Unions and the Non-Union Retiree Committee that an agreement on termination of the Retiree Benefit Arrangements would need to be reached as soon as possible, so that court approval of such modifications could be obtained concurrently with or prior to confirmation of the Plan.

10.       On June 25 and July 11, 2026, respectively, the Debtors sent letters to the Unions and the Non-Union Retiree Committee, respectively, proposing, among other things, to terminate the Retiree Benefit Arrangements effective as of 11:59 p.m. (Eastern Time) on July 31, 2026 (the "**Proposal**").  The Proposal included the following additional terms:

- **Retiree Health Benefits**. Retirees receiving Retiree Health Benefits must submit any claims incurred on or prior to July 31, 2026 for processing to the applicable claims administrator no later than October 31, 2026, and any such claims submitted on or after November 1, 2026 will not be considered for payment.  Retirees will continue to be responsible to remit contributions for Retiree Health Benefits coverage to the extent applicable through and including July 31, 2026.

- **Retiree Life Benefits**. Retirees shall have an allowed general unsecured claim equal to the estimated present value of any unpaid Retiree Life Benefits which shall be determined based on reasonable assumptions to be mutually agreed upon in good faith by the Debtors and the authorized representatives.

- **Releases**. Retirees and their representatives and each of their successors and assigns shall release the Debtors and their representatives and each of their successors and assigns in full and

5

**DEBTORS' EXHIBIT NO. 9**
**Page 5 of 10**

final satisfaction of the claims of Retirees on account of the Retiree Benefit Arrangements.

- **Support for Plan**. The applicable authorized representatives shall support and not object to confirmation of the Plan.

11.     On July 14, 2026, the Debtors sent a letter to the USW with an updated Proposal containing the following additional term:

- **Dalton 401(h) Account**.  Debtors shall (i) terminate the 401(h) Account, (ii) allocate any amounts in the 401(h) Trust forfeiture/suspense account (less any amounts needed for Trustee fees and expenses) among participants with a 401(h) Account who are eligible to receive benefits under the 401(h) Account and (iii) distribute assets in the 401(h) Trust in an amount equal to each such participant's 401(h) Account (subject to applicable taxes and withholding), unless Debtors reach a resolution with PBGC and/or TIAA allowing for the continuation of the 401(h) Accounts.

12.     The Proposal was based on the most complete and reliable information available to the Debtors.  The Proposal was formulated by my team and the Debtors' other advisors and based on, among other things, the Debtors' books and records, the current state of the Debtors' financial affairs and the facts and circumstances of the chapter 11 cases, including the months-long negotiations that took place between the Debtors and their key stakeholders to reach an agreement on the Plan.

13.     The Debtors provided the Unions and the Non-Union Retiree Committee with the necessary and relevant information to evaluate the Proposal.  Specifically, to assist the Unions and the Non-Union Retiree Committee in evaluating the Proposal, the Debtors provided each with copies of the Disclosure Statement,[6] the Liquidation Analysis attached as Exhibit 9 to

---

[6]   The "**Disclosure Statement**" refers to the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3020) (as may be amended, supplemented, or otherwise modified from time to time).

the Plan Supplement[7] (the "**Liquidation Analysis**"), summaries of the various Retiree Benefit Arrangements (Union and Non-Union), plan documents, summary plan descriptions, a census for each of the Retiree Benefits, life insurance policies, certificates of coverage related to the life insurance policies, claims and utilization reports, details on the conversion option for the Retiree Life Benefits, details on COBRA costs and plan benefits under which Retirees receiving Retiree Benefits would be eligible to elect COBRA coverage, details on health insurance alternatives, and the costs associated with leaving the Debtors' healthcare plans open beyond July 31, 2026, among other information.  In addition, the Unions sent the Debtors information requests on June 25, 2026, requesting, among other things, copies of plan documents, censuses, cost information, and claims history.  The Debtors provided all requested information available to the Unions on an expedited and rolling basis, including on June 25, June 29, July 5, and July 8, 2026.  The information the Debtors provided was the most complete and reliable information available to the Debtors at the time.

14.     The Debtors also conferred with the Unions and the Non-Union Retiree Committee in an attempt to reach a mutually satisfactory agreement with respect to termination of the Retiree Benefit Arrangements.  Specifically, representatives of Weil, Gotshal & Manges LLP and members of my team at A&M met with Union Counsel on July 1, 2026 with respect to the USW, on July 8, 2026 with respect to the UAW, and on July 14, 2026 with respect to the Non-Union Retiree Committee to discuss, among other things, additional diligence requests and to reiterate the Debtors' position regarding the necessity of modifying the Retiree Benefit Arrangements.  At all times, discussions with the Unions and the Non-Union Retiree Committee

---

[7]     The "**Plan Supplement**" refers to the *Notice of Filing of (I) Plan Supplement and (II) Liquidation Analysis* (Docket No. 3046) (as may be amended, supplemented, or otherwise modified from time to time).

**DEBTORS' EXHIBIT NO. 9**
**Page 7 of 10**

were held in good faith and at arm's length.  The Debtors plan to continue discussions in the same manner with both the Unions and the Non-Union Retiree Committee prior to the hearing on the Motion in an effort to reach a consensual agreement with respect to the termination of the Retiree Benefit Arrangements.  The Debtors have received (i) a written counterproposal from the USW on July 10, 2026 and (ii) a written counterproposal from the UAW on July 14, 2026.  The Non-Union Retiree Committee has not formally responded to the Proposal.  The Debtors have evaluated and will continue to evaluate any and all counterproposals in good faith and are working to assess the financial impact to the estate of the USW's and the UAW's counters.  The Non-Union Retiree Committee has not formally responded to the Proposal.

### The Proposal Provides a Better Alternative Than a Chapter 7 Liquidation

15.    As reflected in the Liquidation Analysis, the FBG Debtors' general unsecured creditors are not expected to receive any recovery in a chapter 7 liquidation.  Pursuant to the Liquidation Analysis, based on the estimates and assumptions discussed therein, a chapter 7 liquidation of the FBG Debtors' estates would yield net distributable proceeds of approximately $62 million.

16.    Because the FBG Debtors' secured debt would not be satisfied in full in a chapter 7 liquidation, no proceeds would be available for junior creditors, such as holders of Administrative Expense Claims, Priority Tax Claims, and General Unsecured Claims.  I believe the Proposal is more favorable to Retirees than the treatment they would receive in a chapter 7 liquidation, in which Retirees, like all other general unsecured creditors, would not receive any recovery on account of their claims.  By contrast, the Proposal provides Retirees with valuable consideration.  The Debtors and their professionals, including my team, were mindful of these

8

circumstances when formulating the Proposal to ensure the Debtors appropriately balanced the interests of Retirees and the Debtors' other stakeholders.

17.     As set forth above, the Plan provides for the liquidation and wind down of the FBG Debtors' estates and does not contemplate any ongoing operations that would allow the Debtors to continue to satisfy their retiree benefit obligations on a go-forward basis.  Absent termination of the Retiree Benefit Arrangements (as requested under the Proposal), I understand the Debtors will be unable to satisfy the requirements for confirmation of the Plan set forth in section 1129(a) of the Bankruptcy Code and will be forced to immediately convert their chapter 11 cases to cases under chapter 7—an outcome that is likely worse for the Retirees and other junior creditors (including administrative creditors).

**Timing and Necessity of Expedited Approval of the Motion**

18.     The Confirmation Budget reflects the Debtors' ability to fund these cases only through the proposed Confirmation Date—July 28, 2026.  The Plan and the Confirmation Budget are the product of months of arm's length, good faith negotiations between the Debtors, the ABL Secured Parties, the Ad Hoc Group, and the Creditors' Committee.  The support of the Debtors' key stakeholders for the Plan is predicated on adherence to the Confirmation Budget.

19.     The Debtors do not have, and have not received funding commitments for, the liquidity that would be necessary to confirm the Plan after the end of July.  Thus, if the Proposal is not approved or a consensual agreement to terminate the Retiree Benefits is not reached on or before July 28, 2026, the Debtors' ability to confirm the Plan (or any other value-maximizing chapter 11 plan) will be jeopardized.  In this scenario, the Debtors will likely be required to immediately convert their chapter 11 cases to cases under chapter 7.  I believe that such a result would likely reduce or eliminate potential recoveries of the Retirees and other creditors from those contemplated under the Plan.

**DEBTORS' EXHIBIT NO. 9**
**Page 9 of 10**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: July 14, 2026
        Atlanta, Georgia

_/s/ Nicholas Haughey_
Nicholas Haughey, Managing Director
Alvarez & Marsal North America LLC

**DEBTORS' EXHIBIT NO. 9**
**Page 10 of 10**