**DALTON CORPORATION, WARSAW MANUFACTURING FACILITY
PENSION PLAN
January 1, 2015 Restatement**

**DEBTORS' EXHIBIT NO. 23
Page 1 of 82**

## TABLE OF CONTENTS

PREAMBLE ............................................................................................................................ 1

ARTICLE I DEFINITIONS ................................................................................................ 2

    1.1    **Plan Definitions** ......................................................................................... 2
    1.2    **Construction** ............................................................................................... 8

ARTICLE II HOURS OF SERVICE .................................................................................. 9

    2.1    **Crediting of Hours of Service** ................................................................... 9

ARTICLE III SERVICE AND CREDITED SERVICE ..................................................... 10

    3.1    **Service and Credited Service Prior to January 1, 2015** ....................... 10
    3.2    **Service and Credited Service On or After January 1, 2015** ................ 10
    3.3    **Transfers** .................................................................................................. 10
    3.4    **Retirement or Termination and Reemployment** ................................. 11
    3.5    **Finality of Determinations** ..................................................................... 12

ARTICLE IV ELIGIBILITY FOR PARTICIPATION .................................................... 13

    4.1    **Participation** ............................................................................................ 13
    4.2    **Termination of Participation** ................................................................. 13
    4.3    **Participation Upon Reemployment** ....................................................... 13
    4.4    **Finality of Determinations** ..................................................................... 13

ARTICLE V NORMAL RETIREMENT .......................................................................... 14

    5.1    **Eligibility** ................................................................................................. 14
    5.2    **Amount** .................................................................................................... 14
    5.3    **Adjustment to Normal Retirement Benefit for Employment After Normal Retirement Date** ........................................................................ 15
    5.4    **Payment** .................................................................................................. 15

ARTICLE VI EARLY RETIREMENT ............................................................................. 16

    6.1    **Eligibility** ................................................................................................. 16
    6.2    **Amount** .................................................................................................... 16
    6.3    **Payment** .................................................................................................. 16

ARTICLE VII VESTED RIGHTS ..................................................................................... 17

    7.1    **Vesting** ..................................................................................................... 17
    7.2    **Eligibility for Deferred Vested Retirement Benefit** ........................... 17
    7.3    **Amount of Deferred Vested Retirement Benefit** ................................. 17
    7.4    **Payment** .................................................................................................. 17
    7.5    **Change in Vesting Schedule** ................................................................... 18

ARTICLE VIII ANCILLARY DISABILITY BENEFIT .................................................. 19

    8.1    **Eligibility** ................................................................................................. 19
    8.2    **Amount** .................................................................................................... 19

    DB2-PLN

DEBTORS' EXHIBIT NO. 23
Page 2 of 82

8.3    **Payment** ........................................................................................................19

8.4    **Termination of Ancillary Disability Benefit Prior to Normal Retirement Date** ..............................................................................................................19

8.5    **Service Crediting While Receiving Ancillary Disability Benefit** ...........................20

**ARTICLE IX FORMS OF PAYMENT** ...................................................................... 21

9.1    **Normal Form of Payment** ...............................................................................21

9.2    **Optional Forms of Payment** ............................................................................22

9.3    **Designation of Beneficiary and Beneficiary in Absence of Designated Beneficiary** ......................................................................................................23

9.4    **Notice Regarding Forms of Payment** ..............................................................23

9.5    **Retroactive Annuity Starting Date** ..................................................................24

9.6    **Election Period** ...............................................................................................26

9.7    **Spousal Consent Requirements** .......................................................................26

9.8    **Death Prior to Annuity Starting Date** .............................................................27

9.9    **Effect of Reemployment on Form of Payment** .................................................27

**ARTICLE X SURVIVOR BENEFITS** ....................................................................... 28

10.1    **Eligibility for Qualified Preretirement Survivor Annuity** ...................................28

10.2    **Amount of Qualified Preretirement Survivor Annuity** .......................................28

10.3    **Payment of Qualified Preretirement Survivor Annuity** .....................................28

10.4    **Supplemental Preretirement Spouse Benefit** ....................................................29

10.5    **No Non-Spouse Preretirement Death Benefit** ...................................................29

**ARTICLE XI GENERAL PROVISIONS AND LIMITATIONS  REGARDING BENEFITS** ................................................................................................................. 30

11.1    **Effect on Benefit Payments of Continued Employment After Normal Retirement Date or Reemployment** ...................................................................30

11.2    **Non-Alienation of Retirement Rights or Benefits** ............................................30

11.3    **Payment of Benefits to Others** ........................................................................30

11.4    **Missing Payees and Unclaimed Benefits** .........................................................31

11.5    **Payment of Small Benefits; Deemed Cashout** ..................................................32

11.6    **Direct Rollovers** ............................................................................................32

11.7    **Limitations on Commencement** ......................................................................33

11.8    **Post Age 70-1/2 Payments** .............................................................................34

11.9    **Offset to Accrual After Normal Retirement Date** ............................................34

11.10    **Purchase of Annuity Contracts** ......................................................................34

**ARTICLE XII MAXIMUM RETIREMENT BENEFITS** ........................................... 35

12.1    **Definitions** .....................................................................................................35

12.2    **Maximum Limitation on Annual Benefits** .......................................................41

12.3    **Grandfather Prior Benefits** .............................................................................41

12.4    **Manner of Reduction** .....................................................................................42

12.5    **Cost of Living Adjustment** .............................................................................42

**ARTICLE XIII PENSION FUND** .............................................................................. 43

DB2-PLN

13.1    **Pension Fund**..........................................................................................43

13.2    **Contributions by the Employers**..........................................................43

13.3    **Expenses of the Plan**.............................................................................43

13.4    **No Reversion**.........................................................................................43

13.5    **Forfeitures Not to Increase Benefits**....................................................44

13.6    **Change of Funding Medium**.................................................................44

**ARTICLE XIV ADMINISTRATION**........................................................................ 45

14.1    **Authority of the Sponsor**......................................................................45

14.2    **Action of the Sponsor**...........................................................................45

14.3    **Claims Review Procedure**.....................................................................46

14.4    **Exhaustion of Remedies**.......................................................................51

14.5    **Grounds for Judicial Review**...............................................................51

14.6    **Qualified Domestic Relations Orders**.................................................52

14.7    **Indemnification**....................................................................................52

14.8    **Actions Binding**....................................................................................52

14.9    **Prudent Man Standard of Care**...........................................................52

**ARTICLE XV ADOPTION BY OTHER ENTITIES** ............................................... 53

15.1    **Adoption by Affiliated Entities**............................................................53

15.2    **Effective Plan Provisions**.....................................................................53

**ARTICLE XVI AMENDMENT AND TERMINATION OF PLAN** ....................... 54

16.1    **Sponsor's Right of Amendment**...........................................................54

16.2    **Termination of the Plan**........................................................................54

16.3    **Allocations Resulting in Discrimination**..............................................54

16.4    **Residual Assets**.....................................................................................54

16.5    **Payments by the Funding Agent**..........................................................54

16.6    **Residual Assets Distributable to the Employers**.................................55

16.7    **Withdrawal of an Employer**.................................................................55

**ARTICLE XVII MISCELLANEOUS** ....................................................................... 56

17.1    **No Commitment as to Employment**......................................................56

17.2    **Claims of Other Persons**.......................................................................56

17.3    **Governing Law**......................................................................................56

17.4    **Nonforfeitability of Benefits Upon Termination or Partial Termination**..............56

17.5    **Merger, Consolidation, or Transfer of Plan Assets**............................56

17.6    **Funding Agreement**..............................................................................57

17.7    **Benefit Offsets for Overpayments**........................................................57

17.8    **Special Rules Applicable to Participants Absent Due to Military Leave**..............57

17.9    **Revocation of Beneficiary Designation Upon Divorce**.......................57

**ARTICLE XVIII CODE SECTION 401(a)(9) COMPLIANCE** ............................. 58

18.1    **Definitions**.............................................................................................58

18.2    **Applicability**..........................................................................................58

18.3    **Precedence**.............................................................................................58

DB2-PLN

**DEBTORS' EXHIBIT NO. 23**
**Page 4 of 82**

18.4    Requirements of Treasury Regulations Incorporated ...............................................59
18.5    Commencement as of Required Beginning Date..................................................59
18.6    Death of Participant Before Distributions Begin .................................................59
18.7    Form of Distribution .................................................................................59
18.8    General Annuity Requirements .....................................................................60
18.9    Amount Required to be Distributed by Required Beginning Date.........................61
18.10   Additional Accruals After First Distribution Calendar Year ................................62
18.11   Joint Life Annuities Where the Beneficiary Is Not the Participant's Spouse........62
18.12   Period Certain Annuities ............................................................................62
18.13   Participant Survived by Designated Beneficiary................................................62
18.14   No Designated Beneficiary...........................................................................63
18.15   Death of Surviving Spouse Before Distributions to Surviving Spouse Begin ........63
18.16   Change to Annuity Payout Period ..................................................................63
18.17   Payments to a Surviving Child......................................................................64
18.18   5-Year Rule Applicable to Certain Distributions to Designated
        Beneficiaries...........................................................................................64
18.19   Death of Participant After Distributions Begin.................................................64
18.20   TEFRA 242(b)(2) Elections .........................................................................64

ARTICLE XIX Code Section 436 Compliance ........................................................... 67
19.1    Definitions ...............................................................................................67
19.2    Restriction on "Unpredictable Contingent Event Benefits" ...............................68
19.3    Restriction on Amendments Increasing Benefit Liabilities.................................68
19.4    Restriction on Accelerated Benefit Payments..................................................69
19.5    Suspension of Benefit Accruals for Plans with Severe Funding Shortfalls............72
19.6    Notice of Restrictions ................................................................................72
19.7    Methods to Avoid or Terminate Benefit Restrictions .......................................72
19.8    Presumed Underfunding..............................................................................73

ARTICLE XX HEALTH CARE SPENDING ACCOUNT PLAN ....................................... 75
20.1    Definitions ...............................................................................................75
20.2    Health Care Spending Account.....................................................................75
20.3    Payment of "Qualifying Health Care Expenses" ............................................76

iv

DB2-PLN

## PREAMBLE

The Dalton Corporation, Warsaw Manufacturing Facility Pension Plan, originally effective as of January 14, 1973, is hereby amended and restated in its entirety. The Plan, as amended and restated hereby, is intended to qualify as a defined benefit pension plan under Code Section 401(a). The Plan is maintained for the exclusive benefit of eligible Employees and their beneficiaries.

Except as otherwise specifically provided in the Plan, this amended and restated Plan shall be effective as of January 1, 2015, and the rights of any person who did not have an Hour of Service under the Plan on or after January 1, 2015, shall generally be determined in accordance with the terms of the Plan as in effect on the date for which he was last credited with an Hour of Service.

Notwithstanding the foregoing, the following special effective dates shall apply:

(a)     Effective June 26, 2013, the definition of "Spouse" in Section 1.1(gg) has been modified to comply with the Supreme Court's decision in United States v. Windsor; provided, however, that for the period June 26, 2013 through September 15, 2013, the Plan recognized a person as a Participant's Spouse only if the marriage was recognized under the laws of the state or country in which the participant was domiciled.

Notwithstanding any other provision of the Plan to the contrary, a Participant's vested interest in his Accrued Benefit under the Plan on and after the effective date of this amendment and restatement shall be not less than his vested interest in his Accrued Benefit on the day immediately preceding the effective date.

DEBTORS' EXHIBIT NO. 23
Page 6 of 82

## ARTICLE I
## DEFINITIONS

### 1.1     Plan Definitions

As used herein, the following words and phrases, when they appear with initial letters capitalized as indicated below, have the meanings hereinafter set forth:

(a)     A Participant's "**Accrued Benefit**" as of any date means the portion of his monthly normal retirement benefit, payable in the normal form described in Section 9.1(a), accrued as of that date determined as provided in Article V, based on his years of Credited Service and the benefit rate in effect on that date.

(b)     An "**Active Participant**" means a Participant who is accruing Credited Service under the Plan in accordance with the provisions of Article III.

(c)     The "**Actuarial Equivalent**" of a value means its equivalent value determined using the actuarial factors specified in the Plan. For purposes other than converting to an optional form of payment that is subject to the requirements of Code Section 417(e)(3), Actuarial Equivalence is determined using an interest rate equal to 6% and mortality based on the fixed blend of 50% of the unloaded male and 50% of the unloaded female mortality rates underlying the GAR mortality table, projected to 2002. For purposes of converting to an optional form of payment that is subject to the requirements of Code Section 417(e)(3) (e.g., a single sum payment) Actuarial Equivalence is determined using the following factors:

   (1)     the applicable Code Section 417(e)(3) mortality table; and

   (2)     the "417(e) interest rate" determined as of the second calendar month preceding the Plan Year in which the distribution is made. For purposes of this paragraph, the "417(e) interest rate" means the adjusted first, second and third segment rates applied under Code Section 430(h)(2)(C), computed without regard to a 24 month average.

   (3)     Notwithstanding the foregoing, present value of a single sum payment shall be determined using the fixed blend of 50% of the unloaded male and 50% of the unloaded female mortality rates underlying the GAR mortality table, projected to 2002 and an interest rate equal to 6 if that provides a larger present value.

The present value of a benefit with respect to a Participant who has or would have reached Normal Retirement Date at the time present value is being determined shall be calculated based on the immediate annuity payable as of the determination date. The present value of a benefit with respect to a Participant who has not yet or would not yet have reached Normal Retirement Date at the time present value is being determined shall be calculated based on a deferred annuity payable commencing at the Participant's Normal Retirement Date . For purposes of this paragraph, present value of any single

2                                                                                          DB2-PLN

**DEBTORS' EXHIBIT NO. 23**
**Page 7 of 82**

sum payment to a Participant shall be determined based on the present value of immediate and deferred annuities payable in the normal form applicable under Section 9.1(a) of the Plan.

(d)     The "**Actuary**" means an independent actuary selected by the Sponsor, who is an enrolled actuary as defined in Code Section 7701(a)(35), or a firm or corporation of actuaries having such a person on its staff, which person, firm, or corporation is to serve as the actuarial consultant for the Plan.

(e)     The "**Administrator**" means the Sponsor unless the Sponsor designates another person or persons to act as such.

The term "Administrator" includes any qualified termination administrator charged with the task of holding the assets of an orphan plan, as permitted by the Department of Labor. A qualified termination administrator must be an eligible custodian for Plan assets such as a bank, mutual fund house, or insurance company. A third-party recordkeeper may not be a qualified termination administrator. However, in the case of a single Participant, owner only Plan, the Spouse of a deceased owner may continue to operate the Plan in accordance with Revenue Procedure 2006-17.

(f)     An "**Affiliated Entity**" means any entity, other than an Employer, which is (1) a member of an affiliated service group (under Code Section 414(m)) with an Employer, (2) a member of a controlled group (under Code Section 414(b)) with an Employer, (3) a trade or business under common control (under Code Section 414(c)) with an Employer, or (4) required to be aggregated with an Employer under Code Section 414(o).

(g)     A Participant's, or Beneficiary's, if the Participant has died, "**Annuity Starting Date**" means the first day of the first period for which an amount is paid as an annuity or, in the case of a single sum payment, the first day on which all events have occurred which entitle the Participant, or his Beneficiary, if applicable, to such benefit.

If a Participant whose Annuity Starting Date has occurred is reemployed by an Employer or an Affiliated Entity resulting in a suspension of benefits in accordance with the provisions of Section 11.1, for purposes of determining the form of payment of such Participant's benefit upon his subsequent retirement, such prior Annuity Starting Date shall apply to benefits accrued prior to the Participant's reemployment. Such prior Annuity Starting Date shall also apply to benefits accrued following the Participant's reemployment if such prior Annuity Starting Date occurred on or after the Participant's Normal Retirement Date. Such prior Annuity Starting Date shall not apply to benefits accrued following the Participant's reemployment if such prior Annuity Starting Date occurred prior to the Participant's Normal Retirement Date.

(h)     A Participant's "**Beneficiary**" means any beneficiary who is entitled to receive a benefit under the Plan upon the death of the Participant.

DB2-PLN

**DEBTORS' EXHIBIT NO. 23**
**Page 8 of 82**

(i)     A "**Break in Service**" with respect to any Covered Employee means any 12-consecutive month period beginning on his Employment Severance Date and anniversaries of his Employment Severance Date in which he does not complete an Hour of Service.

(j)     The "**Code**" means the Internal Revenue Code of 1986, as amended from time to time. Reference to a Code section shall include (i) such section and any comparable section or sections of any future legislation that amends, supplements, or supersedes such section and (ii) all rulings, regulations, notices, announcements, and other pronouncements issued by the U.S. Treasury Department, the Internal Revenue Service, and any court of competent jurisdiction that relate to such section.

(k)     A "**Covered Employee**" means any Employee of an Employer who is covered by a collective bargaining agreement with the Union.

Notwithstanding the foregoing, the term "Covered Employee" shall not include the following:

- any individual with respect to whom an Employer does not withhold income or employment taxes and file Form W-2 (or any replacement Form) with the Internal Revenue Service because such individual has executed a contract, letter of agreement, or other document acknowledging his status as an independent contractor, even if such individual is later adjudicated to be a common law employee of his Employer, unless and until the Employer extends coverage to such individual.

- any Employee acquired in an asset or stock acquisition, merger, or similar transaction described in Code Section 410(b)(6)(C) until the date the acquiring Employer extends coverage to such Employees.

- any Leased Employee.

- any Employee hired or rehired on or after April 13, 2008.

(l)     A Participant's "**Credited Service**" means his period of service for purposes of determining the amount of any benefit for which he is eligible under the Plan, as computed in accordance with the provisions of Article III.

(m)    An "**Employee**" means any common law employee of an Employer or an Affiliated Entity and any Leased Employee.

(n)     An "**Employer**" means any entity which has adopted the Plan as may be provided under Article XV, including Dalton Corporation, Warsaw Manufacturing Facility.

(o)     A Covered Employee's "**Employment Commencement Date**" means the date he first completes an Hour of Service or, in the case of a Covered Employee whose Employment Severance Date has occurred and who has been absent from work for at least 12 months,

DB2-PLN

the first date following his Employment Severance Date on which he again completes an Hour of Service.

(p)     A Covered Employee's "**Employment Severance Date**" means the earlier of (a) the date on which he retires, dies, or his employment as a Covered Employee is otherwise terminated or (b) the first anniversary of the date on which he is absent from work with all Employers as a Covered Employee for any other reason; provided, however, that the following special rules shall apply:

   (1)     A Covered Employee's Employment Severance Date shall not occur if he is absent from work with his Employer on account of service with the armed forces of the United States, he is eligible for reemployment rights under the Uniformed Services Employment and Reemployment Rights Act of 1994, and he returns to work with an Employer within the period during which he retains such reemployment rights, but, if he does not return to work within such period, his Employment Severance Date shall be the earlier of the date which is one year after his absence commenced or the last day of the period during which he retains such reemployment rights.

   (2)     Solely for purposes of determining whether a Covered Employee has incurred a Break in Service, if the Covered Employee is absent from work with his Employer on account of the birth of a child, pregnancy, the adoption of a child, or the caring for a child for a period beginning following the birth or adoption of such child (a "maternity/paternity absence"), beyond the first anniversary of the first day of such maternity/paternity absence, his Employment Severance Date shall be the second anniversary of the first day of such maternity/paternity absence.

   Notwithstanding the foregoing, if a person retires, dies, or his employment as a Covered Employee is otherwise terminated during a period in which he is absent from work with all Employers for any reason other than service with the armed forces of the United States, his Employment Severance Date shall be the date of such retirement, death, or other termination of employment.

(q)     "**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended from time to time. Reference to a section of ERISA shall include such section and any comparable section or sections of any future legislation that amends, supplements, or supersedes such section.

(r)     The "**Funding Agent**" means the person or persons which at the time shall be designated, qualified, and acting under the Funding Agreement and shall include (i) any trustee for a trust established pursuant to the Funding Agreement, (ii) any insurance company that issues an annuity or insurance contract pursuant to the Funding Agreement, or (iii) any person holding assets in a custodial account pursuant to the Funding Agreement. The Sponsor may designate a person or persons other than the Funding Agent to perform any responsibilities of the Funding Agent under the Plan, other than trustee responsibilities as

DB2-PLN

defined in ERISA Section 405(c)(3), and the Funding Agent shall not be liable for the performance of such person in carrying out such responsibilities except as otherwise provided by ERISA. The term Funding Agent shall include any delegate of the Funding Agent as may be provided in the Funding Agreement.

(s)     The "**Funding Agreement**" means the agreement entered into between the Sponsor and the Funding Agent relating to the holding, investment, and reinvestment of the assets of the Plan, together with all amendments thereto and shall include any agreement establishing a trust, a custodial account, an annuity contract, or an insurance contract (other than a life, health or accident, property, casualty, or liability insurance contract) for the investment of assets; provided, however, that any custodial account or contract established hereunder meets the requirements of Code Section 401(f).

(t)     A "**Highly Compensated Employee**" means any Covered Employee or former Covered Employee who is a highly compensated active employee or a highly compensated former employee as defined hereunder.

A "highly compensated active employee" includes any Covered Employee who performs services for an Employer or any Affiliated Entity during the Plan Year and who (i) was a 5% owner at any time during the Plan Year or the look back year or (ii) received compensation from the Employers and Affiliated Entities during the look back year in excess of the dollar amount in effect under Code Section 414(q)(1)(B) ($100,000 for look back years beginning in 2007, subject to adjustment annually at the same time and in the same manner as under Code Section 415(d)). The dollar amount in (ii) shall be pro-rated for any Plan Year of fewer than 12 months.

A "highly compensated former employee" includes any Covered Employee who (i) separated from service from an Employer and all Affiliated Entities (or is deemed to have separated from service from an Employer and all Affiliated Entities) prior to the Plan Year, (ii) performed no services for an Employer or any Affiliated Entity during the Plan Year, and (iii) for either the separation year or any Plan Year ending on or after the date the Covered Employee attains age 55, was a highly compensated active employee, as determined under the rules in effect under Code Section 414(q) for such year.

The determination of who is a Highly Compensated Employee hereunder shall be made in accordance with the provisions of Code Section 414(q) and regulations issued thereunder.

For purposes of this definition, the following terms have the following meanings:

(1)     An Employee's "compensation" means his "415 compensation" as defined in Section 12.1(g).

(2)     The "look back year" means the 12-month period immediately preceding the Plan Year.

6

DB2-PLN

(u)     An "**Hour of Service**" with respect to any Covered Employee means an hour which is determined and credited as such in accordance with the provisions of Article II.

(v)     A "**Leased Employee**" means any person (other than an "excludable leased employee") who performs services for an Employer or an Affiliated Entity (the "recipient") (other than an employee of the "recipient") pursuant to an agreement between the "recipient" and any other person (the "leasing organization") on a substantially full-time basis for a period of at least one year, provided that such services are performed under primary direction of or control by the "recipient". An "excludable leased employee" means any Leased Employee of the "recipient" who is (a) covered by a money purchase pension plan maintained by the "leasing organization" which provides for (i) a nonintegrated employer contribution on behalf of each participant in the plan equal to at least 10% of compensation (as defined under Code Section 415(c) and regulations issued thereunder), (ii) full and immediate vesting, and (iii) immediate participation by employees of the "leasing organization" or (b) performs substantially all of his services for the "leasing organization", or (c) whose compensation from the "leasing organization" in each Plan Year during the 4-year period ending with the Plan Year is less than $1,000. Notwithstanding the foregoing, a person shall not be treated as an "excludable leased employee" if Leased Employees (including any individual who would otherwise be considered an "excludable leased employee") constitute more than 20% of the "recipient's" nonhighly compensated work force. For purposes of this Section, contributions or benefits provided to a Leased Employee by the "leasing organization" that are attributable to services performed for the "recipient" shall be treated as provided by the "recipient".

Notwithstanding the foregoing, if any person who performed services for a "recipient" pursuant to an agreement between the "recipient" and the "leasing organization" becomes a Covered Employee, all service performed by such person for the "recipient" shall be treated as employment with an Employer as an Employee, even if performed on less than a full-time basis, for less than a full year, or while an "excludable leased employee."

(w)     A Participant's "**Normal Retirement Date**" for purposes of benefit eligibility means the later of (i) the date he attains age 65 or (ii) the 5th anniversary of the date he commenced participation in the Plan, but no later than the date he attains age 70. For all other purposes, Normal Retirement Date means the first day of the month coinciding with or immediately following such date.

(x)     A "**Participant**" means any person who becomes eligible to participate in the Plan in accordance with the provisions of Article IV and who retains an Accrued Benefit under the Plan.

(y)     The "**Pension Fund**" means the fund or funds maintained under the Funding Agreement for purposes of accumulating contributions made by the Employers and paying benefits under the Plan.

7                                                                        DB2-PLN

(z)  The "**Plan**" means this Dalton Corporation, Warsaw Manufacturing Facility Pension Plan, established effective January 14, 1973, as amended and restated by this instrument, with all amendments, modifications, and supplements hereafter made.

(aa)  A "**Plan Year**" means the 12-consecutive-month period ending each December 31st.

(bb)  A "**Qualified Joint and Survivor Annuity**" is an immediate annuity payable to the Participant for his life with a survivor benefit payable upon the death of the Participant to the Participant's Spouse (determined as of his Annuity Starting Date) for the remainder of such Spouse's lifetime. The amount of the survivor benefit payable under a Qualified Joint and Survivor Annuity shall be equal to at least 50% of the amount the Participant was receiving on his date of death.

(cc)  A "**Qualified Preretirement Survivor Annuity**" is an annuity payable to the surviving Spouse of a Participant for such Spouse's life as provided in Article X.

(dd)  A Participant's "**Required Beginning Date**" means the April 1 following the calendar year in which occurs the later of (i) the Participant's attainment of age 70-1/2 or (ii) the date the Participant retires; provided, however, that clause (ii) shall not apply to a Participant who is a 5% owner, as defined in Code Section 416(i), with respect to the Plan Year ending with or within the calendar year in which the Participant attains age 70-1/2. The Required Beginning Date of a Participant who is a 5% owner hereunder shall not be redetermined if the Participant ceases to be a 5% owner with respect to any subsequent Plan Year.

(ee)  A Participant's "**Service**" means his period of service for purposes of determining his eligibility for a benefit under the Plan, as computed in accordance with the provisions of Article III.

(ff)  The "**Sponsor**" means Neenah Enterprises, Inc., and any successor thereto.

(gg)  A Participant's "**Spouse**" means the person to whom the participant is legally married under the laws of the state or country in which the marriage was celebrated, without regard to whether such marriage is recognized under the laws of the state or country in which the Participant resides.

(hh)  A "**Supplement Preretirement Spouse Benefit**" means the monthly benefit payable to a Participant's surviving Spouse in accordance with the provisions of Section 10.4.

(ii)  The "**Union**" means the United Steelworkers, Local Union 6805.

## 1.2    Construction

Where required by the context, the noun, verb, adjective, and adverb forms of each defined term shall include any of its other forms. Wherever used herein, the masculine pronoun shall include the feminine, the singular shall include the plural, and the plural shall include the singular.

**DEBTORS' EXHIBIT NO. 23**
**Page 13 of 82**

## ARTICLE II
## HOURS OF SERVICE

**2.1     Crediting of Hours of Service**

A Covered Employee shall be credited with an Hour of Service under the Plan for each hour for which he is paid, or entitled to payment, for the performance of duties for an Employer as a Covered Employee.

9                                                                                          DB2-PLN

**ARTICLE III**
**SERVICE AND CREDITED SERVICE**

**3.1      Service and Credited Service Prior to January 1, 2015**

Each person who is a Covered Employee on or after January 1, 2015, shall be credited with Service and Credited Service for purposes of the Plan for periods prior to such date equal to the Service and Credited Service with which he had been credited in accordance with the Plan provisions in effect immediately prior to such date.

**3.2      Service and Credited Service On or After January 1, 2015**

Each person who is a Covered Employee on or after January 1, 2015, shall be credited with Service and Credited Service with respect to periods of employment on or after such date, for purposes of the Plan as follows:

(a)      He shall be credited with Service for the period beginning on the later to occur of (i) January 1, 2015 or (ii) his Employment Commencement Date and ending on his Employment Severance Date. Service shall be computed in completed full years. For this purpose, partial years of Service shall be aggregated in 1/12ths, treating each full calendar month of Service as 1/12th year of Service and aggregating partial calendar months of Service on the basis that 30 days of Service is 1/12th year of Service.

(b)      In addition, Service, but not Credited Service, shall be credited for his period of absence from work after his Employment Severance Date if he returns to work with an Employer as a Covered Employee within 12 months of his most recent date of absence from employment for any reason.

(c)      Subject to any limitations set forth in Article V, he shall be credited with Credited Service for the period beginning on the later to occur of (i) January 1, 2015 or (ii) his Employment Commencement Date and ending on his Employment Severance Date. Credited Service shall be computed in completed full years and fractions of years as follows: The Covered Employee shall be credited with a year of Credited Service for each completed full year during his period of service. Completed partial years shall be aggregated in 1/12ths, treating each full calendar month of Credited Service as 1/12th year of Credited Service and aggregating partial calendar months of Credited Service on the basis that 30 days of Credited Service is 1/12th year of Credited Service.

(d)      Notwithstanding any other provision of the Plan to the contrary, if an Employee is rehired by an Employer or an Affiliated Company on or after April 13, 2008, he shall not be credited with Credited Service for his period of reemployment.

**3.3      Transfers**

Notwithstanding the foregoing, Service and Credited Service credited to a person shall be subject to the following:

DB2-PLN

**DEBTORS' EXHIBIT NO. 23**
**Page 15 of 82**

(a)     Any person who transfers or retransfers to employment with an Employer as a Covered Employee directly from other employment (i) with an Employer in a capacity other than as a Covered Employee or (ii) with any other Affiliated Entity, shall be credited with Service, but not Credited Service, for such other employment as if such other employment were employment with an Employer as a Covered Employee.

(b)     Any person who transfers from employment with an Employer as a Covered Employee directly to other employment (i) with an Employer in a capacity other than as a Covered Employee or (ii) with any other Affiliated Entity, shall be deemed by such transfer not to lose his Service or Credited Service, and shall be deemed not to retire or otherwise terminate his employment as a Covered Employee until such time as he is no longer in the employment of an Employer or any other Affiliated Entity, at which time he shall become entitled to benefits if he is otherwise eligible therefore under the provisions of the Plan; provided, however, that up to such time he shall receive credit only for Service, but not for Credited Service, for such other employment as if such other employment were employment with an Employer as a Covered Employee.

**3.4     Retirement or Termination and Reemployment**

If a Covered Employee retires or otherwise terminates employment with the Employers and all Affiliated Entities, his eligibility for and the amount of any benefit to which he may be entitled under the Plan shall be determined based upon the Service and Credited Service with which he is credited at the time of such retirement or other termination of employment. If such retired or former Employee is reemployed by an Employer or any Affiliated Entity, the following shall apply:

(a)     The Service and Credited Service with which he was credited at the time of such prior retirement or other termination of employment shall be reinstated and his prior Service shall be aggregated with the Service with which he is credited following his reemployment for purposes of determining his eligibility for and the amount of any benefit to which he may be entitled under the Plan upon his subsequent retirement or other termination of employment if:

   (1)     he was eligible for any retirement benefit at the time of his previous retirement or other termination of employment; or

   (2)     he terminated his employment before satisfying the conditions of eligibility for any retirement benefit under the Plan and either (i) the aggregate number of his years of Service (not including any years of Service not required to be aggregated because of previous Breaks in Service) is greater than the number of his consecutive Breaks in Service or (ii) the number of his consecutive Breaks in Service is less than 5.

(b)     Notwithstanding any other provision of this Section, if the Participant received a single sum payment of the present value of his vested Accrued Benefit as provided in Section 11.5, other than a deemed distribution, because of his prior retirement or termination of employment, his Credited Service credited at the time of such prior retirement or

11                                                                 DB2-PLN

termination of employment shall be lost. Payment of the present value of a Participant's vested Accrued Benefit is deemed to be made because of his prior retirement or termination of employment if it is made before the end of the second Plan Year following the Plan Year in which such retirement or termination occurred.

(c)     Notwithstanding any other provision of this Section, if a retired or former Employee returns to employment in a capacity other than as a Covered Employee, his period of employment shall be treated for the purposes of the Plan solely in accordance with the transfer provisions of this Article III.

## 3.5     Finality of Determinations

All determinations with respect to the crediting of Service and Credited Service under the Plan shall be made on the basis of the records of the Employers, and all determinations so made shall be final and conclusive upon Employees, former Employees, and all other persons claiming a benefit interest under the Plan. Notwithstanding anything to the contrary contained in this Article, there shall be no duplication of Service and Credited Service.

DEBTORS' EXHIBIT NO. 23
Page 17 of 82

## ARTICLE IV
## ELIGIBILITY FOR PARTICIPATION

**4.1     Participation**

Participation in the Plan was frozen effective April 13, 2008. Any Covered Employee who was an Active Participant on that date shall continue as an Active Participant hereunder until his participation is terminated in accordance with the provisions of the Plan. No other person shall become a Participant hereunder after that date.

**4.2     Termination of Participation**

A Participant shall remain an Active Participant as long as he continues in employment as a Covered Employee. A person shall remain a Participant as long as he retains an Accrued Benefit under the Plan.

**4.3     Participation Upon Reemployment**

Because participation in the Plan was frozen effective April 13, 2008, no person who is reemployed after that date shall become or again become an Active Participant following such reemployment. Although such person will not actively participate in the Plan, if he retains an Accrued Benefit under the Plan, he will earn Service following reemployment in accordance with the transfer provisions of Section 3.3 as if he had transferred to employment other than as a Covered Employee.

**4.4     Finality of Determinations**

All determinations with respect to the eligibility of a Covered Employee to become a Participant under the Plan shall be made on the basis of the records of the Employers, and all determinations so made shall be final and conclusive for all Plan purposes. Each Employee who becomes a Participant shall be entitled to the benefits, and be bound by all the terms, provisions, and conditions of the Plan and the Funding Agreement.

DB2-PLN

DEBTORS' EXHIBIT NO. 23
Page 18 of 82

**ARTICLE V**
**NORMAL RETIREMENT**

**5.1     Eligibility**

Each Participant who retires from employment with his Employer and all Affiliated Entities on or after his Normal Retirement Date shall be eligible for a normal retirement benefit.

**5.2     Amount**

An eligible Participant's monthly normal retirement benefit shall be equal to the sum of the following:

(a)      $10.00 multiplied by his number of full and partial years of Credited Service credited prior to January 1, 1987; plus

(b)      the applicable benefit rate determined from the table below multiplied by the Participant's number of full and partial years of Credited Service credited after December 31, 1986:

| Date Participant Ceased to be a Covered Employee | Applicable Benefit Rate |
|---|---|
| Before September 30, 1987 | $11.00 |
| On or after September 30, 1987, but before April 1, 1994 | $22.00 |
| On or after April 1, 1994, but before April 1, 1995 | $23.00 |
| On or after April 1, 1995, but before April 1, 1996 | $24.00 |
| On or after April 1, 1996, but before April 1, 1997 | $25.00 |
| On or after April 1, 1997, but before April 6, 1998 | $26.00 |
| On or after April 6, 1998, but before April 9, 2003 | $28.00 |
| On or after April 9, 2003, but before January 1, 2006 | $30.00 |
| On or after January 1, 2006, but before January 1, 2012 | $31.50 |
| On or after January 1, 2012, but before January 1, 2013 | $32.50 |
| On or after January 1, 2013 | $33.50 |

In no event will the normal retirement benefit payable to a Participant be less than the amount that would have been payable to him under the same form of payment had he retired prior to his Normal Retirement Date when eligible for an early retirement benefit.

14                                                                                                  DB2-PLN

**5.3    Adjustment to Normal Retirement Benefit for Employment After Normal Retirement Date**

The monthly normal retirement benefit payable with respect to each Participant who continues in employment with his Employer or an Affiliated Entity after his Normal Retirement Date shall be determined as provided in paragraph (a), and, if applicable, (b).

(a)    For the period beginning on the Participant's Normal Retirement Date and ending on the April 1 following the calendar year in which he reaches age 70-1/2, his "adjusted normal retirement benefit" shall be the greater of:

(1)    the Participant's Accrued Benefit as of the date such benefit is being determined; or

(2)    the Actuarial Equivalent of the Participant's Accrued Benefit as of his Normal Retirement Date.

(b)    For the period beginning on the April 1 following the calendar year in which he reaches age 70-1/2, the Participant's monthly retirement benefit shall be adjusted as of each "determination date" (as defined in this Section). His "adjusted normal retirement benefit" shall be the greater of:

(1)    the Participant's Accrued Benefit as of the "determination date"; or

(2)    the Actuarial Equivalent on the "determination date" of the Participant's "adjusted normal retirement benefit" determined under this Section for the prior "determination date" (as defined in this Section).

For purposes of this Section, a "determination date" means the last day of each calendar year during the period beginning with the calendar year following the calendar year in which the Participant attains age 70-1/2 and ending on the earlier of (i) the date the Participant retires from employment with his Employer and all Affiliated Entities, or (ii) his Annuity Starting Date, except that the first "determination date" is the April 1 following the calendar year in which the Participant attains age 70-1/2.

No further adjustments shall be made to a Participant's monthly normal retirement benefit as provided in paragraphs (a)(2) and (b)(2) after the earlier of (i) the date the Participant retires from employment with his Employer and all Affiliated Entities, or (ii) his Annuity Starting Date, and, if he continues to accrue benefits under the Plan, such continued accruals shall be reduced as provided in Section 11.9.

**5.4    Payment**

A monthly normal retirement benefit shall be paid to an eligible Participant commencing as of the first day of the month following the month in which he retires, but not later than his Required Beginning Date.

**DEBTORS' EXHIBIT NO. 23**
**Page 20 of 82**

## ARTICLE VI
## EARLY RETIREMENT

**6.1 Eligibility**

Each Participant who retires from employment with his Employer and all Affiliated Entities at or after age 60, but prior to his Normal Retirement Date and who has at least 15 years of Service shall be eligible for an early retirement benefit.

**6.2 Amount**

An eligible Participant's monthly early retirement benefit shall be equal to his vested Accrued Benefit on the date of his early retirement; provided, however, that the amount of such benefit shall be reduced by .6% for each full calendar month by which his Annuity Starting Date precedes his Normal Retirement Date. Notwithstanding the foregoing, effective May 12, 2013, a Participant's monthly early retirement benefit shall not be reduced for early commencement if the Participant retires after reaching age 62 and such retirement occurs prior to May 14, 2016.

A Participant's vested interest in his Accrued Benefit shall be determined in accordance with Section 7.1.

**6.3 Payment**

A monthly early retirement benefit shall be paid to an eligible Participant commencing as of the first day of the month coinciding with or next following the month in which he retires or, if later, the month in which he makes written application for the benefit, but not later than his Normal Retirement Date.

DB2-PLN

DEBTORS' EXHIBIT NO. 23
Page 21 of 82

## ARTICLE VII
## VESTED RIGHTS

### 7.1    Vesting

A Participant's vested interest in his Accrued Benefit shall be determined in accordance with the following schedule, based upon the number of full years of Service credited to him.

| Years of Service | Vested Interest |
|---|---|
| less than 5 | 0% |
| 5 or more | 100% |

Notwithstanding the foregoing, a Participant's vested interest in his Accrued Benefit shall be 100% regardless of whether he has completed the number of years of Service required under the schedule for 100% vesting if he is employed by an Employer or an Affiliated Entity on his Normal Retirement Date.

### 7.2    Eligibility for Deferred Vested Retirement Benefit

Each Participant who terminates employment with his Employer and all Affiliated Entities, who has a vested interest in his Accrued Benefit, and who is not eligible for a normal or early retirement benefit under the Plan shall be eligible for a deferred vested retirement benefit.

### 7.3    Amount of Deferred Vested Retirement Benefit

An eligible Participant's monthly deferred vested retirement benefit shall be equal to his vested Accrued Benefit on the date of his termination of employment; provided, however, that if the Participant is eligible to elect to begin benefit payments before his Normal Retirement Date as provided in Section 7.4, the amount of such benefit shall be reduced by .6% for each full calendar month by which commencement of payment of the benefit precedes his Normal Retirement Date.

### 7.4    Payment

A monthly deferred vested retirement benefit shall be paid to an eligible Participant commencing as of his Normal Retirement Date. Notwithstanding the foregoing, a Participant may elect to begin benefit payments as of the first day of any month following:

(a)    if the Participant is credited with at least 15 years of Service, the month in which he attains age 60; or

(b)    the date the Participant first becomes eligible for reduced Federal Social Security old-age retirement benefits.

17                                                                                    DB2-PLN

**7.5     Change in Vesting Schedule**

If there is a direct or an indirect amendment to the Plan that affects the computation of a Participant's vested interest in his Accrued Benefit, the following special rules shall apply:

(a)     In no event shall a Participant's vested interest in his Accrued Benefit determined as of the later of (i) the effective date of such amendment or (ii) the date such amendment is adopted be less than his vested interest in his Accrued Benefit determined immediately prior to such date.

(b)     In no event shall a Participant's vested interest in his Accrued Benefit determined as of the later of (i) the effective date of such amendment or (ii) the date such amendment is adopted, be determined on and after the effective date of such amendment under a vesting schedule that is more restrictive than the vesting schedule applicable to such Accrued Benefit immediately prior to the effective date of such amendment.

(c)     Any Participant with 3 or more years of Service shall have a right to have his vested interest in his Accrued Benefit (including amounts accrued following the effective date of such amendment) continue to be determined under the vesting provisions in effect prior to the amendment rather than under the new vesting provisions, unless the vested interest of the Participant in his Accrued Benefit under the Plan as amended is not at any time less than such vested interest determined without regard to the amendment. A Participant shall exercise his right under this Section by giving written notice of his exercise thereof to the Administrator within 60 days after the latest of (i) the date he receives notice of the amendment from the Administrator, (ii) the effective date of the amendment, or (iii) the date the amendment is adopted.

DB2-PLN

**DEBTORS' EXHIBIT NO. 23**
**Page 23 of 82**

## ARTICLE VIII
## ANCILLARY DISABILITY BENEFIT

**8.1     Eligibility**

Each Participant who suffers permanent and total disability after becoming a Participant in the Plan and while actively employed by an Employer or an Affiliated Entity, but prior to his Normal Retirement Date and who has at least 10 years of Service shall be eligible for an ancillary disability benefit. For purposes of this Article, "permanent and total disability" means any physical or mental condition of a Participant resulting from bodily injury, disease, or mental disorder which prevents the Participant from engaging in any regular occupation or employment, other than employment for purposes of rehabilitation, and which constitutes permanent and total disability under Title II of the Social Security Act.

Notwithstanding any other provision of this Section to the contrary, a Participant shall not be deemed to have suffered permanent and total disability if his condition resulted directly or indirectly from engaging in a criminal enterprise.

**8.2     Amount**

An eligible Participant's monthly ancillary disability benefit shall be equal to his Accrued Benefit on the date his disability commenced.

**8.3     Payment**

A monthly ancillary disability benefit shall be paid to an eligible Participant commencing as of the first day of the month following the month in which he makes written application for the benefit.

A Participant's Annuity Starting Date will not be deemed to have occurred simply because payment of ancillary disability benefits has commenced to him hereunder.

Payment of a monthly ancillary disability benefit shall continue to a Participant until his Normal Retirement Date, or until otherwise terminated as hereinafter provided. Any Participant who continuously up to his Normal Retirement Date receives an ancillary disability benefit under the Plan shall be deemed for all Plan purposes to have retired upon the occurrence of his Normal Retirement Date and shall be eligible for a normal retirement benefit in an amount determined as provided in Section 5.2, but based on his years of Credited Service and the provisions of the Plan in effect on the date his disability commenced.

**8.4     Termination of Ancillary Disability Benefit Prior to Normal Retirement Date**

Ancillary disability benefit payments shall terminate if, prior to the Participant's Normal Retirement Date, the Participant

(a)     ceases to be disabled;

DB2-PLN

**DEBTORS' EXHIBIT NO. 23**
**Page 24 of 82**

(b)      dies; or

(c)      elects to commence retirement benefits under the terms of the Plan.

If a Participant's ancillary disability benefit ceases prior to his Normal Retirement Date, and if he does not return promptly to work with his Employer, his employment thereupon shall be deemed terminated for all Plan purposes, and he shall be eligible for an early retirement benefit in an amount determined in the same manner as specified in Section 6.2, or a deferred vested retirement benefit in an amount determined in the same manner as specified in Section 7.3, but based on his years of Credited Service and the provisions of the Plan in effect on the date his disability commenced and only if he meets the eligibility requirements for such benefit as in effect on the date his disability commenced. If such Participant's ancillary disability benefit ceases prior to his Normal Retirement Date, and if he returns promptly to work with an Employer, he shall not be entitled to any benefits under this Article VIII on account of his prior disability (or on account of the cessation of his disability benefit), and he thereupon shall continue as a Covered Employee in accordance with and subject to the remaining provisions of the Plan.

### 8.5      Service Crediting While Receiving Ancillary Disability Benefit

A Participant who is receiving ancillary disability benefits hereunder shall not be credited with Service or Credited Service for periods for which he is paid ancillary disability benefits hereunder, except as otherwise specifically provided in Article III.

DB2-PLN

**DEBTORS' EXHIBIT NO. 23**
**Page 25 of 82**

## ARTICLE IX
## FORMS OF PAYMENT

**9.1      Normal Form of Payment**

A Participant who is eligible to receive any retirement benefit under Section 5.1, 6.1, or 7.2 of the Plan shall receive payment of such benefit in accordance with one of the following normal forms of payment:

(a)     A Participant who does not have a Spouse on his Annuity Starting Date shall receive such benefit in the form of a single life annuity. Such Participant shall receive a monthly retirement benefit payable for his lifetime, the last monthly payment being for the month in which his death occurs.

(b)     A Participant who has a Spouse on his Annuity Starting Date shall receive such benefit in the form of a 50% Qualified Joint and Survivor Annuity. Such Participant shall receive an adjusted monthly retirement benefit payable for his lifetime, the last monthly payment being for the month in which his death occurs. If the Participant's Spouse survives him, then commencing with the month following the month in which the Participant's death occurs, his Spouse shall receive a monthly benefit for his or her remaining lifetime equal to one-half of the adjusted amount payable during the Participant's lifetime, the last payment being for the month in which the Spouse's death occurs. A Participant who has a Spouse may elect to increase the survivor benefit payable to his Spouse under the Qualified Joint and Survivor Annuity to 100% or 75% of the adjusted amount payable during the Participant's lifetime. Any such election must be made during the election period described in Section 9.6.

The adjusted monthly payments to be made to the Participant under this paragraph shall be in an amount which, on the date of commencement thereof, is the Actuarial Equivalent of the monthly benefit otherwise payable to the Participant under the form of payment described in paragraph (a).

To receive a benefit under the Qualified Joint and Survivor Annuity form of payment described in paragraph (b) above, a Participant's Spouse must be the same Spouse to whom the Participant was married on his Annuity Starting Date. Once a Participant's Annuity Starting Date occurs and retirement benefit payments commence under one of the normal forms of payment, the form of payment will not change even if the Participant's marital status changes; provided, however, that if the Participant is reemployed by an Employer or an Affiliated Entity, any benefits he accrues under the Plan following such reemployment with respect to which a separate Annuity Starting Date occurs shall be payable in the form elected by the Participant as of such separate Annuity Starting Date.

Subject to the requirements of Section 9.7, a Participant may waive the normal form of payment applicable to him and elect to receive payment of his benefit in one of the optional forms of payment provided in Section 9.2.

21

DB2-PLN

**9.2      Optional Forms of Payment**

Within the election period described in Section 9.6, a Participant who is eligible to receive a normal, early or deferred vested retirement benefit may elect to receive payment of such benefit in accordance with any one of the following options. If the Participant has a Spouse on his Annuity Starting Date, any such election must satisfy the requirements of Section 9.7.

If the Participant's Beneficiary under an optional form of payment dies prior to the Participant's Annuity Starting Date, the election shall become inoperative and ineffective, and benefit payments, if any, shall be made under the normal form of payment provided in Section 9.1, unless the Participant elects another optional form of payment provided under the Plan prior to his Annuity Starting Date. Once a Participant's Annuity Starting Date occurs, however, the optional form of payment elected by the Participant will not change even if the Participant's marital status changes or his Beneficiary predeceases him; provided, however, that if the Participant is reemployed by an Employer or an Affiliated Entity, any benefits he accrues under the Plan following his reemployment with respect to which a separate Annuity Starting Date occurs shall be payable in the form elected by the Participant as of such separate Annuity Starting Date.

The monthly payments made under any optional form of payment hereunder shall be the Actuarial Equivalent of the monthly benefit otherwise payable to the Participant in the single life annuity form described in Section 9.1(a).

(a)      **Single Life Annuity**. The Participant shall receive a monthly retirement benefit payable for his lifetime, the last monthly payment being for the month in which his death occurs.

(b)      **100% Joint and Survivor Annuity**. The Participant shall receive an adjusted monthly retirement benefit payable for his lifetime, the last monthly payment being for the month in which his death occurs. If the Participant's joint annuitant survives him, then commencing with the month following the month in which the Participant's death occurs, his joint annuitant shall receive a monthly benefit for his or her remaining lifetime equal to the adjusted amount payable during the Participant's lifetime, the last monthly payment being for the month in which the joint annuitant's death occurs.

(c)      **75% Joint and Survivor Annuity**. The Participant shall receive an adjusted monthly retirement benefit payable for his lifetime, the last monthly payment being for the month in which his death occurs. If the Participant's joint annuitant survives him, then commencing with the month following the month in which the Participant's death occurs, his joint annuitant shall receive a monthly benefit for his or her remaining lifetime equal to 75% of the adjusted amount payable during the Participant's lifetime, the last monthly payment being for the month in which the joint annuitant's death occurs.

(d)      **50% Joint and Survivor Annuity**. The Participant shall receive an adjusted monthly retirement benefit payable for his lifetime, the last monthly payment being for the month in which his death occurs. If the Participant's joint annuitant survives him, then commencing with the month following the month in which the Participant's death occurs, his joint annuitant shall receive a monthly benefit for his or her remaining lifetime equal

**DEBTORS' EXHIBIT NO. 23**
**Page 27 of 82**

to one-half of the adjusted amount payable during the Participant's lifetime, the last monthly payment being for the month in which the joint annuitant's death occurs.

(e)     **25% Joint and Survivor Annuity**. The Participant shall receive an adjusted monthly retirement benefit payable for his lifetime, the last monthly payment being for the month in which his death occurs. If the Participant's joint annuitant survives him, then commencing with the month following the month in which the Participant's death occurs, his joint annuitant shall receive a monthly benefit for his or her remaining lifetime equal to one-quarter of the adjusted amount payable during the Participant's lifetime, the last monthly payment being for the month in which the joint annuitant's death occurs.

Notwithstanding any other provision of the Plan to the contrary, distribution under an optional form of payment shall be made in accordance with Code Section 401(a)(9) and regulations issued thereunder, including the minimum distribution incidental benefit requirement. If a Participant designates a person other than his Spouse as his Beneficiary under an optional form of payment, and if payments under the optional form elected would not meet the minimum distribution incidental benefit requirement, the election shall be ineffective and benefit payments, if any, shall be made under the normal form of payment provided in Section 9.1, unless the Participant elects another optional form of payment provided under the Plan prior to his Annuity Starting Date.

**9.3     Designation of Beneficiary and Beneficiary in Absence of Designated Beneficiary**

A Participant's joint annuitant under an optional joint and survivor annuity form of payment may be any individual selected by the Participant. A Participant's designation of a Beneficiary is subject to the spousal consent requirements of Section 9.7.

**9.4     Notice Regarding Forms of Payment**

The Administrator shall provide a Participant with a written description of (i) the terms and conditions of the normal forms of payment provided in Section 9.1, (ii) the optional forms of payment provided in Section 9.2, (iii) the Participant's right to waive the normal form of payment provided in Section 9.1 and to elect an optional form of payment and the effect, including the financial effect, of such a waiver, (iv) the relative value of the optional forms of payment in comparison to one of the normal forms, (v) the rights of the Participant's Spouse with respect to the Qualified Joint and Survivor Annuity form of payment, and (vi) the Participant's right to revoke a waiver of the normal form of payment or to change his election of an option and the effect thereof. The explanation shall notify the Participant of his right to defer payment of his retirement benefit under the Plan until his Normal Retirement Date, or such later date as may be provided under the Plan, and the effect if the Participant does not defer payment. Except as otherwise provided below and in Section 9.5, the Administrator shall provide such explanation no fewer than 30 days and no more than 180 days before a Participant's Annuity Starting Date.

Notwithstanding the foregoing, a Participant's Annuity Starting Date may occur fewer than 30 days after receipt of such explanation if the Administrator clearly informs the Participant:

**DEBTORS' EXHIBIT NO. 23**
**Page 28 of 82**

(a)     of his right to consider his form of payment election for a period of at least 30 days following his receipt of the explanation;

(b)     the Participant, after receiving the explanation, affirmatively elects an early Annuity Starting Date, with his Spouse's written consent, if necessary;

(c)     the Participant's Annuity Starting Date occurs after the date the explanation is provided to him;

(d)     the election period described in Section 9.6 does not end until the later of his Annuity Starting Date or the expiration of the 7-day period beginning the day after the date the explanation is provided to him; and

(e)     actual payment of the Participant's retirement benefit does not begin to the Participant before such revocation period ends.

## 9.5     Retroactive Annuity Starting Date

Notwithstanding any other provision of the Plan to the contrary, payment of a Participant's benefit may be made as of a retroactive Annuity Starting Date. A "retroactive Annuity Starting Date" means an Annuity Starting Date that occurs on or before the date the written notice described in Section 9.4 is provided to the Participant.

Payment of a Participant's benefit shall be made as of a retroactive Annuity Starting Date only if the Participant affirmatively elects a retroactive Annuity Starting Date. If a Participant elects a "retroactive Annuity Starting Date", the following special rules shall apply:

(a)     A Participant may not elect a retroactive Annuity Starting Date that is earlier than the first date on which he would have been eligible to commence benefit payments under the terms of the Plan (other than the notice and election requirements of this Article IX) based on the terms of the Plan in effect on such date and on the Participant's age, Service and Credited Service, and employment status on such date.

(b)     The date on which benefit payments actually commence to a Participant shall be the Participant's payment date.

(c)     The monthly amount of benefit payable to a Participant shall be equal to the amount that would have been payable to the Participant under the form of payment elected by the Participant if benefit payments had actually commenced on his retroactive Annuity Starting Date.

(d)     The Participant shall receive a make-up payment equal to the aggregate payments that would have been made during the period beginning on his retroactive Annuity Starting Date and ending on his payment date, plus interest. Interest shall be credited with respect to each missed payment from the date such payment would have been made to the Participant until the date such amount is actually paid. The interest rate used shall be 6%.

**DEBTORS' EXHIBIT NO. 23**
**Page 29 of 82**

(e)     The Administrator shall provide the written explanation described in Section 9.4 of the Plan no fewer than 30 days and no more than 180 days before the Participant's payment date; provided, however, that a Participant's "payment date" may be fewer than 30 days after receipt of such explanation if the Administrator clearly informs the Participant: (i) of his right to consider his form of payment election for a period of at least 30 days following his receipt of the explanation; (ii) the Participant, after receiving the explanation, affirmatively elects an early "payment date", with his Spouse's written consent, if necessary; (iii) the election period described in Section 9.6 does not end until the Participant's payment date; and (iv) the Participant's payment date does not occur until the expiration of the 7-day period beginning the day after the date the explanation is provided to the Participant. Notwithstanding the foregoing, a Participant's payment date may be more than 180 days after the explanation described in Section 9.4 is provided to the Participant if such delay is due solely to administrative delay.

(f)     Except as otherwise required under any domestic relations order qualified under Code Section 414(p), if a Participant has a Spouse on his payment date, he shall be treated as having had such Spouse on his retroactive Annuity Starting Date and the provisions of Article IX, including the spousal consent requirements of Section 9.7, shall be applied with respect to such Spouse rather than any other person who may have been the Participant's actual Spouse on his retroactive Annuity Starting Date.

(g)     If a Participant has a Spouse on his payment date (or the provisions of a domestic relations order qualified under Code Section 414(p) require that an alternate payee be treated as the Participant's Spouse as of such payment date), such Spouse must consent to the Participant's election of a retroactive Annuity Starting Date if the survivor benefit that would be payable to the Spouse under the Qualified Joint and Survivor Annuity elected by the Participant (or, if the Participant elects a form of payment other than a Qualified Joint and Survivor Annuity, the survivor benefit that would have been payable under the normal form of payment described in Section 9.1(b)) determined as of such retroactive Annuity Starting Date is less than 50% of the monthly amount payable to the Participant under the normal form of payment described in Section 9.1(b) determined as of the Participant's payment date.

(h)     The amount of the benefit payable to the Participant may not exceed the Code Section 415 limitations applicable on the Participant's retroactive Annuity Starting Date. In addition, the amount of benefit payable to the Participant must satisfy the Code Section 415 limits applicable on the Participant's payment date unless (1) the Participant's payment date is no more than 12 months after his retroactive Annuity Starting Date and (2) the form of payment elected by the Participant is a non-decreasing annuity as described in Section 1.417(e)-1(d)(6) of Treasury Regulations. For purposes of determining whether the form of payment elected by a Participant is a non-decreasing annuity, any missed payments described in paragraph (d) above shall be treated as having been made on the date due and interest credited for purposes of the make-up payment shall not be taken into account.

25

DB2-PLN

**DEBTORS' EXHIBIT NO. 23**
**Page 30 of 82**

(i)     If the form of payment elected by the Participant is not a non-decreasing annuity and is therefore subject to Code Section 417(e)(3), the amount of the benefit payable to the Participant as of his "retroactive Annuity Starting Date" shall not be less than the amount of the benefit payable to the Participant on his "payment date" using the interest rate and mortality table prescribed under the definition of Actuarial Equivalent for converting to a form of payment that is subject to Code Section 417(e)(3), as in effect on such "payment date". For purposes of determining whether the form of payment elected by a Participant is a non-decreasing annuity, any missed payments described in paragraph (d) above shall be treated as having been made on the date due and interest credited for purposes of the make-up payment shall not be taken into account.

## 9.6     Election Period

A Participant may waive or revoke a waiver of the normal form of payment provided in Section 9.1 and elect, modify, or change an election of an optional form of payment provided in Section 9.2 by written notice delivered to the Administrator at any time during the election period; provided, however, that no waiver of the normal form of payment and election of an optional form of payment shall be valid unless the Participant has received the written explanation described in Section 9.4. Subject to the provisions of Sections 9.4 and 9.5 extending a Participant's election period under certain circumstances, a Participant's "election period" means the 180-day period ending on his Annuity Starting Date.

The form in which a Participant shall receive payment of his retirement benefit shall be determined upon the later of his Annuity Starting Date or the date his election period ends, based upon any waiver and election in effect on such date. Except as otherwise specifically provided in the Plan, in no event shall the form in which a Participant's retirement benefit is paid be changed on or after such date.

## 9.7     Spousal Consent Requirements

A Participant's waiver of the normal Qualified Joint and Survivor Annuity form of payment and his election, modification, or change of an election of an optional form of payment must include the written consent of the Participant's Spouse, if any. A Participant's Spouse shall be deemed to have given written consent to the Participant's waiver and election if the Participant establishes to the satisfaction of a Plan representative that such consent cannot be obtained because of any of the following circumstances:

(a)     the Spouse cannot be located,

(b)     the Participant is legally separated or has been abandoned within the meaning of local law, and the Participant has a court order to that effect, or

(c)     other circumstances set forth in Code Section 401(a)(11) and regulations issued thereunder.

Notwithstanding the foregoing, written spousal consent shall not be required if the Participant elects an optional form of payment that is a Qualified Joint and Survivor Annuity.

Any written spousal consent given pursuant to this Section shall acknowledge the effect of the waiver of the Qualified Joint and Survivor Annuity form of payment and of the election of an optional form of payment and shall be witnessed by a Plan representative or a notary public. In addition, the written spousal consent shall either (i) specify the optional form of payment selected by the Participant and that such form may not be changed (except to a Qualified Joint and Survivor Annuity) without written spousal consent and specify any Beneficiary designated by the Participant and that such Beneficiary may not be changed without written spousal consent or (ii) acknowledge that the Spouse has the right to limit consent as provided in clause (i), but permit the Participant to change the optional form of payment or the designated Beneficiary without the Spouse's further consent. Any written consent given or deemed to be given by a Participant's Spouse shall be irrevocable and shall be effective only with respect to such Spouse and not with respect to any subsequent Spouse.

## 9.8     Death Prior to Annuity Starting Date

Notwithstanding any other provision of the Plan to the contrary, should a Participant die prior to his Annuity Starting Date neither he nor any person claiming under or through him shall be entitled to any retirement benefit under the Plan; and no benefit shall be paid under the Plan with respect to such Participant except any survivor benefit payable under the provisions of Article X.

## 9.9     Effect of Reemployment on Form of Payment

Notwithstanding any other provision of the Plan, if a former Employee is reemployed, his prior election of a form of payment hereunder shall become ineffective, except to the extent that the Participant's Annuity Starting Date occurred prior to such reemployment and such prior Annuity Starting Date is preserved with respect to a portion or all of the Participant's retirement benefit.

DEBTORS' EXHIBIT NO. 23
Page 32 of 82

## ARTICLE X
## SURVIVOR BENEFITS

### 10.1   Eligibility for Qualified Preretirement Survivor Annuity

If a Participant dies before his Annuity Starting Date, his surviving Spouse shall be eligible for a Qualified Preretirement Survivor Annuity if all of the following requirements are met on the Participant's date of death:

(a)   The Participant has a Spouse as defined in Section 1.1(gg).

(b)   The Participant has a vested Accrued Benefit.

### 10.2   Amount of Qualified Preretirement Survivor Annuity

The monthly amount of the Qualified Preretirement Survivor Annuity payable to a surviving Spouse shall be equal to the survivor benefit that would have been payable to the Spouse if the Participant had:

(a)   separated from service on the earlier of his actual separation from service date or his date of death;

(b)   survived to the date as of which payment of the Qualified Preretirement Survivor Annuity to his surviving Spouse commences;

(c)   elected to commence retirement benefits as of the date described in paragraph (b) above in the form of a 50% Qualified Joint and Survivor Annuity; and

(d)   died on his Annuity Starting Date.

Notwithstanding the foregoing, if prior to a Participant's death the Participant elected an optional form of payment in accordance with the provisions of Article IX that is a Qualified Joint and Survivor Annuity, for purposes of determining the amount of the Qualified Preretirement Survivor Annuity, the optional form of payment elected by the Participant shall be substituted for the 50% Qualified Joint and Survivor Annuity in paragraph (c) above.

### 10.3   Payment of Qualified Preretirement Survivor Annuity

Payment of a Qualified Preretirement Survivor Annuity to a Participant's surviving Spouse shall commence as of the first day of the month following the later of (i) the month in which the Participant dies or (ii) the month in which the Participant would have attained earliest retirement age (as defined herein) under the Plan.

Notwithstanding the foregoing, a Participant's surviving Spouse may elect to defer commencement of payment of the Qualified Preretirement Survivor Annuity to a date no later than the first day of the month in which the Participant would have attained age 70-1/2. If a Participant's surviving Spouse dies before the date as of which payment of the Qualified

DB2-PLN

**DEBTORS' EXHIBIT NO. 23**
**Page 33 of 82**

Preretirement Survivor Annuity is to commence to such Spouse, no Qualified Preretirement Survivor Annuity shall be payable hereunder.

Payment of a Qualified Preretirement Survivor Annuity shall continue to a Participant's surviving Spouse for such Spouse's lifetime, the last monthly payment being for the month in which the Spouse's death occurs.

For purposes of this Article, a Participant's "earliest retirement age" means the earliest age at which the Participant could have elected to commence retirement benefits under the Plan if he had survived, but based on his years of Service on his date of death.

### 10.4     Supplemental Preretirement Spouse Benefit

A Participant's surviving Spouse who is entitled to a Qualified Preretirement Survivor Annuity shall also be entitled to a Supplemental Preretirement Spouse Benefit if all of the following requirements are met on the Participant's date of death:

(a)     The Participant dies while actively employed;

(b)     The Participant was married to the surviving Spouse throughout the 12-month period preceding the Participant's date of death; and

(c)     The Participant is credited with at least 10 years of Service.

The Supplemental Preretirement Spouse Benefit shall be equal to the greater of $200 or 50% of the Participant's Accrued Benefit determined as of the Participant's date of death. The Supplemental Preretirement Spouse Benefit shall be payable monthly beginning on the first day of the month following the month in which the Participant's death occurs until the last day of the month in which the surviving Spouse dies or remarries.

### 10.5     No Non-Spouse Preretirement Death Benefit

If a Participant dies prior to his Annuity Starting Date and does not have a surviving Spouse who is entitled to a Qualified Preretirement Survivor Annuity in accordance with the provisions of this Article, no death benefits shall be payable under the Plan.

**DEBTORS' EXHIBIT NO. 23**
**Page 34 of 82**

# ARTICLE XI
# GENERAL PROVISIONS AND LIMITATIONS
# REGARDING BENEFITS

**11.1    Effect on Benefit Payments of Continued Employment After Normal Retirement
            Date or Reemployment**

Except as otherwise provided hereunder or in Section 11.8, if a Participant continues
employment with an Employer or an Affiliated Entity after reaching his Normal Retirement Date
or a retired or former Employee is reemployed by an Employer or an Affiliated Entity, the
Participant, or retired or former Employee, as applicable, shall not be entitled to any benefit
payments under the Plan during the period of such employment or reemployment, as applicable.

If a retired or former Employee whose Annuity Starting Date occurred prior to reemployment
again becomes eligible to receive benefits under the Plan, the amount of benefit payable to the
Participant shall be reduced to its Actuarial Equivalent to reflect the value of any benefit
payments made to the Participant prior to his Normal Retirement Date.

**11.2    Non-Alienation of Retirement Rights or Benefits**

Except as provided in Code Section 401(a)(13)(B) (relating to qualified domestic relations
orders), Code Sections 401(a)(13)(C) and (D) (relating to offsets ordered or required under a
criminal conviction involving the Plan, a civil judgment in connection with a violation or alleged
violation of fiduciary responsibilities under ERISA, or a settlement agreement between the
Participant and the Department of Labor in connection with a violation or alleged violation of
fiduciary responsibilities under ERISA), Section 1.401(a)-13(b)(2) of the Treasury Regulations
(relating to Federal tax levies), or as otherwise required by law, no benefit under the Plan at any
time shall be subject in any manner to anticipation, alienation, assignment (either at law or in
equity), encumbrance, garnishment, levy, execution, or other legal or equitable process; and no
person shall have the power in any manner to anticipate, transfer, assign (either at law or in
equity), alienate or subject to attachment, garnishment, levy, execution, or other legal or
equitable process, or in any way encumber his benefits under the Plan, or any part thereof, and
any attempt to do so shall be void.

**11.3    Payment of Benefits to Others**

If the Administrator finds that any individual to whom a benefit is payable hereunder is
incapable of attending to his financial affairs because of any mental or physical condition,
including the infirmities of advanced age, any payment due may, in the discretion of the
Administrator, be paid to such individual's court appointed guardian, to another person with a
valid power of attorney, or to another person authorized under state law to receive the benefit.
The monthly payment of a benefit to a person for the month in which he dies shall, if not paid to
such person prior to his death, be paid to his Spouse, parent, brother, sister, or estate as provided
in Article IX or X of the Plan, if applicable, or in accordance with local or state law. The
Funding Agent shall make any such payments only upon receipt of written instructions to such
effect from the Administrator. Any payment made in accordance with the provisions of this

**DEBTORS' EXHIBIT NO. 23**
**Page 35 of 82**

Section shall be a complete discharge of any liability of the Plan with respect to the benefit so paid.

If payment of a benefit is to be made to a minor Beneficiary, the Administrator may, in its discretion, pay the amount to a duly qualified guardian or other legal representative, to the authorized person or entity (e.g., custodian or guardian) under the applicable state Uniform Gifts to Minors Act or Uniform Transfers to Minors Act, or to a trust that has been established for the benefit of the minor. Any payment made in accordance with the provisions of this Section shall be a complete discharge of any liability of the Plan with respect to the benefit so paid.

## 11.4    Missing Payees and Unclaimed Benefits

With respect to a Participant or Beneficiary who has not claimed any benefit (the "missing payee") to which such missing payee is entitled, and with respect to any Participant or Beneficiary who has not satisfied the administrative requirements for benefit payment, the Administrator may elect, in its discretion, to do any of the following:

(a)    segregate the benefit into an interest bearing account, in which event an annual maintenance fee as may be set from time to time in a policy established by the Sponsor may be assessed against the segregated account;

(b)    subject to a policy established by the Administrator, distribute the benefit at any time in any manner which is sanctioned by the Internal Revenue Service and/or the Department of Labor, which may include (but not be limited to) (1) distributing the benefit in an automatic direct rollover to an individual retirement plan designated by the Administrator; such individual retirement plan, as defined in Code Section 7701(a)(37), may be either an individual retirement account within the meaning of Code Section 408(a) or an individual retirement annuity within the meaning of Code Section 408(b); or (2) distributing the benefit to the Pension Benefit Guarantee Corporation or any other authorized Federal Department or agency;

(c)    distribute the benefit to any person or entity who is appointed under State (or Commonwealth) law to act as a duly authorized guardian, legal representative, conservator, or power of attorney; or

(d)    treat the entire benefit as a forfeiture.

If a missing payee whose benefit has been forfeited is located, or if a payee whose benefit has been forfeited for failure to satisfy the administrative requirements for benefit payment subsequently satisfies such administrative requirements and claims his benefit, and if the Plan has not terminated (or if the Plan has terminated, all benefits have not yet been paid), then the benefit will be restored. The Administrator, on a case by case basis, may elect to restore the benefit by the use of earnings from non-segregated assets of the Pension Fund, by Employer contributions, or by any combination thereof. However, if any such payee has not been located (or satisfied the administrative requirements for benefit payment) by the time the Plan terminates and all benefits have been distributed from the Plan, then the forfeiture of any such unpaid benefit will not be restored.

31                                                                         DB2-PLN

DEBTORS' EXHIBIT NO. 23
Page 36 of 82

**11.5    Payment of Small Benefits; Deemed Cashout**

If the Actuarially Equivalent present value of any retirement benefit payable under Section 5.1, 6.1, or 7.2 or any survivor benefit is $1,000 or less, such Actuarially Equivalent present value shall be paid to the Participant, or his Beneficiary, if applicable, in a single sum payment, in lieu of all other benefits under the Plan, as soon as practicable following the date of the Participant's retirement, death, or other termination of employment and he shall cease to be a Participant under the Plan as of the date of such payment.

If the nonforfeitable Accrued Benefit of a Participant is zero, such Participant shall be deemed to have received distribution of his entire vested Accrued Benefit under the Plan, in lieu of all other benefits under the Plan, as of the date of his termination of employment with his Employer and all Affiliated Entities and he shall cease to be a Participant under the Plan as of such date.

A former Participant who received a distribution hereunder, other than a deemed distribution, because of his retirement or other termination of employment shall lose the Credited Service with which he was credited at the time of his prior termination of employment or retirement. If such former Participant is reemployed, such prior Credited Service shall not be reinstated.

A distribution hereunder is deemed to be made because of a Participant's retirement or termination of employment if it is made before the end of the second Plan Year following the Plan Year in which such retirement or termination occurred.

**11.6    Direct Rollovers**

Notwithstanding any other provision of the Plan to the contrary, in lieu of receiving a single sum payment as provided in Section 11.5, a "qualified distributee" may elect in writing, in accordance with rules prescribed by the Sponsor, to have any portion or all of such payment that is an "eligible rollover distribution" paid directly by the Plan to the "eligible retirement plan" designated by the "qualified distributee"; provided, however, that this provision shall not apply if the total distribution is less than $200. Any such payment by the Plan to another "eligible retirement plan" shall be a direct rollover. For purposes of this Section, the following terms have the following meanings:

(a)     An "eligible retirement plan" with respect to a "qualified distributee" who is the Participant, his surviving Spouse, or his Spouse or former Spouse who is an alternate payee under a qualified domestic relations order means any of the following: (i) an individual retirement account described in Code Section 408(a), (ii) an individual retirement annuity described in Code Section 408(b), (iii) an annuity plan described in Code Section 403(a), (iv) a qualified trust described in Code Section 401(a) that accepts rollovers, (v) an annuity contract described in Code Section 403(b) that accepts rollovers, (vi) an eligible plan under Code Section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan, or (vii) a Roth IRA, as described in Code Section 408A.

DB2-PLN

An "eligible retirement plan" with respect to a "qualified distributee" other than the Participant, his surviving Spouse, or his Spouse or former Spouse who is an alternate payee under a qualified domestic relations order means (i) an individual retirement account described in Code Section 408(a), (ii) an individual retirement annuity described in Code Section 408(b), or (iii) effective for distributions made on or after January 1, 2008, a Roth IRA, as described in Code Section 408A, (collectively-referred to as an "IRA"). Such IRA must be treated as an IRA inherited from the deceased Participant by the "qualified distributee" and must be established in a manner that identifies it as such.

(b)     An "eligible rollover distribution" means any distribution of all or any portion of a Participant's Accrued Benefit or a distribution of all or any portion of a survivor benefit under Article X; provided, however, that an eligible rollover distribution does not include: (1) any distribution that is one of a series of substantially equal periodic payments made not less frequently than annually for the life or life expectancy of the qualified distributee or the joint lives or joint life expectancies of the qualified distributee and the qualified distributee's designated beneficiary, or for a specified period of 10 years or more or (2) any distribution to the extent such distribution is required under Code Section 401(a)(9).

(c)     A "qualified distributee" means a Participant, his surviving Spouse, or his Spouse or former Spouse who is an alternate payee under a qualified domestic relations order, as defined in Code Section 414(p). A "qualified distributee" also includes a Participant's non-Spouse Beneficiary who is his designated beneficiary within the meaning of Code Section 401(a)(9)(E).

## 11.7    Limitations on Commencement

Notwithstanding any other provision of the Plan to the contrary, payment of a Participant's retirement benefit shall commence not later than the earlier of:

(a)     the 60th day after the end of the Plan Year in which occurs the Participant's Normal Retirement Date, the 10th anniversary of the date on which he first became a Participant, or the Participant's retirement or other termination of employment, whichever is latest; or

(b)     his Required Beginning Date.

Distributions required to commence under this Section shall be made in accordance with Code Section 401(a)(9) and regulations issued thereunder, as described in Article XIX. If payment of a Participant's retirement benefit does not commence until his Required Beginning Date, his Required Beginning Date shall be considered his Annuity Starting Date for all purposes of the Plan.

Subject to the requirements of Code Sections 401(a)(9) and 411(d)(6), no benefit payments shall commence under the Plan until the Participant, or his surviving Spouse, if applicable, makes written application therefor on a form satisfactory to the Administrator. Failure of a Participant or his surviving Spouse to apply for a benefit shall be deemed an election to postpone payment of such benefit. If the amount of a monthly retirement benefit payable to a Participant cannot be

33                                                          DB2-PLN

determined for any reason (including lack of information as to whether the Participant is still living or his marital status) on the date payment of such benefit is to commence under this Section, payment shall be made retroactively to such date no later than 60 days after the date on which the amount of such monthly retirement benefit can be determined.

**11.8    Post Age 70-1/2 Payments**

A Participant who is a 5% owner (as defined in Code Section 416(i)) with respect to the Plan Year ending with or within the calendar year in which he attains age 70-1/2 and who continues employment with an Employer or any Affiliated Entity shall receive distribution of his retirement benefit beginning as of the April 1 of the calendar year following the calendar year in which he attains age 70-1/2.

**11.9    Offset to Accrual After Normal Retirement Date**

The amount of benefit accrued by a Covered Employee for each year of Credited Service that he completes after the date retirement income becomes payable to him by reasons other than his retirement or termination of employment shall be reduced (but not below zero) by the Actuarial Equivalent of the retirement benefits paid to the Covered Employee for the period for which he accrues such year of Credited Service.

**11.10   Purchase of Annuity Contracts**

The Administrator may satisfy any liability to a Participant or his Beneficiary through the purchase of a single premium, nontransferable annuity contract that provides for payments as provided under the terms of the Plan. The terms of any annuity contract purchased hereunder and distributed to a Participant or his Beneficiary shall comply with the requirements of the Plan. In the event of any conflict, the terms of the Plan shall control.

34

DB2-PLN

## ARTICLE XII
## MAXIMUM RETIREMENT BENEFITS

### 12.1   Definitions

For purposes of this Article XII, the following terms have the following meanings.

(a)   An "**affiliated employer**" means any corporation or business, other than an Employer, which would be aggregated with an Employer for a relevant purpose under Code Section 414 as modified by Code Section 415(h).

(b)   A Participant's "**aggregate annual retirement benefit**" means the sum of his "annual retirement benefit" under the Plan and his "annual retirement benefit", if any, under any and all other "defined benefit plans" (whether or not terminated) maintained by an Employer, any "affiliated employer", or a "predecessor employer" that are required to be aggregated with the Plan in accordance with the provisions of Treasury Regulations Section 1.415(f)-1.

For purposes of applying the "defined benefit compensation limitation", a Participant's "aggregate annual retirement benefit" shall exclude any benefits accrued by the Participant under a multiemployer plan. For purposes of applying the "defined benefit dollar limitation", a Participant's "aggregate annual retirement benefit" shall exclude benefits accrued by the Participant under a multiemployer plan, except to the extent such benefits are provided by the Employer (or an "affiliated employer").

(c)   A Participant's "**annual retirement benefit**" means the amount of retirement benefit attributable to Employer contributions which is payable to him annually under the Plan adjusted to the actuarially equivalent straight life annuity form using the factors prescribed in the following paragraphs if such benefit is to be paid in a manner other than to the Participant for his life only. A Participant's "annual retirement benefit" includes Social Security supplements described in Code Section 411(a)(9) and benefits transferred from another "defined benefit plan", other than transfers of distributable benefits pursuant to Treasury Regulations Section 1.411(d)-4, Q&A-3(c), but shall not include benefits attributable to a Participant's "employee contributions."

For purposes of determining a Participant's "annual retirement benefit", the following shall apply:

(1)   If payment is to be made in a form other than to the Participant for his life only, and such form is not subject to the requirements of Code Section 417(e)(3), the actuarially equivalent straight life annuity shall be the greater of the following:

(A)   the annual amount of straight life annuity, if any, payable to the Participant under the Plan commencing at the same Annuity Starting Date as the Participant's form of payment; or

DEBTORS' EXHIBIT NO. 23
Page 40 of 82

      (B)     the annual amount of straight life annuity commencing at the same Annuity Starting Date that has the same actuarially equivalent present value as the Participant's form of payment computed using the "applicable mortality table" and an interest rate of 5%.

(2)     If payment is to be made to the Participant in a form that is subject to the requirements of Code Section 417(e)(3), the actuarially equivalent straight life annuity form shall be the annual amount of straight life annuity commencing on the same Annuity Starting Date that has the same actuarially equivalent present value as the Participant's form of payment determined using the following, whichever provides the greatest annual amount:

      (A)     the mortality table and interest rate otherwise used under the Plan for purposes of determining Actuarial Equivalence of such optional form;

      (B)     the applicable Code Section 417(e)(3) mortality table and an interest rate of 5.5%; or

      (C)     the applicable Code Section 417(e)(3) mortality table and the "417(e) interest rate" (as defined in Section 1.1(c)(2)) determined as of the second calendar month preceding the Plan Year in which the distribution is made, divided by 1.05.

(3)     A form of payment is not subject to the requirements of Code Section 417(e)(3) if the form of payment is either (A) a nondecreasing annuity (other than a straight life annuity) payable for a period not less than the life of the Participant (or in the case of a Qualified Preretirement Survivor Annuity, the life of the Participant's Spouse) or (B) an annuity that decreases during the life of the Participant merely because of (I) the death of the Participant's Beneficiary under a joint and survivor annuity, but only if the reduction is not below 50% of the benefit payable before the death of the Beneficiary or (II) cessation or reduction of Social Security supplements or qualified disability payments, as defined in Code Section 411(a)(9).

(4)     No actuarial adjustment shall be made hereunder for (A) survivor benefits payable to a surviving Spouse under a Qualified Joint and Survivor Annuity to the extent such benefits would not be payable if the Participant's benefit were paid in another form, (B) benefits that are not directly related to retirement benefits (such as qualified disability benefits, preretirement incidental death benefits, and post-retirement medical benefits), or (C) the inclusion in the form of payment of an automatic benefit increase feature, provided that (I) the form of payment is not subject to Code Section 417(e)(3) and would otherwise satisfy the limitations of this Article XII and (II) the Plan provides that the amount payable under the form of payment in any "limitation year" shall not exceed the limits of this Article XII applicable as of the Annuity Starting Date, increased in subsequent years pursuant to Code Section 415(d). For purposes of clause (C), an automatic benefit increase

36

**DEBTORS' EXHIBIT NO. 23**
**Page 41 of 82**

feature is included in a form of payment if the form of payment provides for automatic, periodic increases to benefits paid in that form.

(5)  If a Participant has or will have distributions commencing at more than one Annuity Starting Date, the "annual retirement benefit" shall be determined as of each Annuity Starting Date (and shall satisfy the limitations of this Article XII as of each such date), actuarially adjusting for past and future distributions of benefits commencing as of other Annuity Starting Dates. For purposes of this paragraph (v), the determination of whether a new Annuity Starting Date has occurred shall be made without regard to Treasury Regulations Section 1.401(a)-20, Q&A 10(d), but with regard to Treasury Regulations Sections 1.415(b)-1(b)(1)(iii)(B) and (C).

(d)  "**Defined benefit plan**" and "**defined contribution plan**" have the meanings given such terms in Code Section 415(k).

(e)  "**Defined benefit compensation limitation**" means 100% of a Participant's average "415 compensation" for his high 3 consecutive calendar years of service. In the case of a Participant who has fewer than 10 years of service with the employer, the "defined benefit compensation limitation" shall be multiplied by a fraction, (i) the numerator of which is the number of years (or part thereof, but not less than one) of service with the employer and (ii) the denominator of which is 10. For purposes of this subsection, a Participant is credited with a "year of service" (computed to fractional years) equal to the years of Credited Service with which he would have been credited under the Plan, taking into account service with the Employers, any "affiliated employer", or a "predecessor employer."

(f)  "**Defined benefit dollar limitation**" means $160,000, as adjusted, effective January 1 of each year, under Code Section 415(d) in such manner as the Secretary of the Treasury shall prescribe, and payable in the form of a straight life annuity. A limitation adjusted under Code Section 415(d) will apply to "limitation years" ending with or within the calendar year for which the adjustment applies. A Participant's "annual retirement benefit" shall not be adjusted to reflect increases in the "defined benefit dollar limitation" effective for "limitation years" beginning after the "limitation year" in which his termination occurred.

The "defined benefit dollar limitation" shall be adjusted as follows:

(1)  If the Participant has fewer than 10 years of participation in the Plan, the "defined benefit dollar limitation" shall be multiplied by a fraction, (i) the numerator of which is the number of years (or part thereof, but not less than one) of participation in the plan and (ii) the denominator of which is 10. For purposes of this paragraph (1), a Participant is credited with a "year of participation" (computed to fractional years) for each year (or fraction of a year) of Credited Service with which he is credited under the Plan, provided that (A) he is included as a Participant under the eligibility provisions of the Plan for at least one day of

37                                                        DB2-PLN

**DEBTORS' EXHIBIT NO. 23**
**Page 42 of 82**

each such year (or fraction of a year) and (B) the Plan is established no later than the last day of such year (or fraction of a year).

(2)     If the benefit of a Participant begins prior to age 62, the "defined benefit dollar limitation" applicable to the Participant at such earlier age is an annual benefit payable in the form of a straight life annuity beginning at the Participant's Annuity Starting Date that is the following, as applicable:

   (A)     If the plan does not provide an immediately commencing straight life annuity commencing at both age 62 and the Participant's age at his Annuity Starting Date, the actuarial equivalent of the "defined benefit dollar limitation" (adjusted under (1) above for years of participation, if required) determined using the "applicable mortality table" (expressing the Participant's age based on completed calendar months as of the Annuity Starting Date) and an interest rate of 5%.

   (B)     If the plan does provide an immediately commencing straight life annuity commencing at both age 62 and the Participant's age at his Annuity Starting Date, the lesser of: (a) the amount determined under (A) above or (b) the "defined benefit dollar limitation" (adjusted under (1) above for years of participation, if required) multiplied by the ratio of the annual amount of the immediately commencing straight life annuity under the Plan at the Participant's Annuity Starting Date to the annual amount of the immediately commencing straight life annuity under the Plan at age 62, both determined without applying the limitations of this Article XII.

Any decrease in the "defined benefit dollar limitation" determined in accordance with paragraph (2)(A) or (2)(B)(I) above shall not reflect a mortality decrement if benefits are not forfeited upon the death of the Participant. If any benefits are forfeited upon death, the full mortality decrement is taken into account. For this purpose, no forfeiture is treated as occurring upon the Participant's death if the Plan does not charge Participants for providing Qualified Preretirement Survivor Annuity coverage.

(3)     If the benefit of a Participant begins after the Participant attains age 65, the "defined benefit dollar limitation" applicable to the Participant at the later age is an annual benefit payable in the form of a straight life annuity beginning at the Annuity Starting Date that is:

   (A)     If the plan does not provide an immediately commencing straight life annuity commencing at both age 65 and the Participant's age at his Annuity Starting Date, the actuarial equivalent of the "defined benefit dollar limitation" (adjusted under (1) above for years of participation, if required) determined using the "applicable mortality table" (expressing the Participant's age based on completed calendar months as of the Annuity Starting Date) and an interest rate of 5%.

DEBTORS' EXHIBIT NO. 23
Page 43 of 82

(B) If the plan does provide an immediately commencing straight life annuity commencing at both age 65 and the Participant's age at his Annuity Starting Date, the lesser of:

(I) the amount determined under (A) above; or

(II) the "defined benefit dollar limitation" (adjusted under (1) above for years of participation, if required) multiplied by the ratio of the annual amount of the adjusted immediately commencing straight life annuity under the Plan at the Participant's Annuity Starting Date to the annual amount of the adjusted immediately commencing straight life annuity under the Plan at age 65, both determined without applying the limitations of this Article XII. The adjusted immediately commencing straight life annuity at the Participant's Annuity Starting Date is the annual amount of such annuity payable to the Participant computed disregarding accruals after age 65, but including actuarial adjustments even if those adjustments are used to offset accruals and the adjusted immediately commencing straight life annuity under the Plan at age 65 is the annual amount of such annuity that would be payable to a hypothetical Participant who is age 65 and has the same Accrued Benefit as the Participant.

Any adjustment to the "defined benefit dollar limitation" determined in accordance with paragraph (3)(A) above shall not reflect a mortality decrement if benefits are not forfeited upon the death of the Participant. If any benefits are forfeited upon death, the full mortality decrement is taken into account. For this purpose, no forfeiture is treated as occurring upon the Participant's death if the Plan does not charge Participants for providing Qualified Preretirement Survivor Annuity coverage.

(g) A Participant's "**415 compensation**" with respect to any calendar year means the wages within the meaning of Code Section 3401(a) (for purposes of income tax withholding at the source), determined without regard to any rules that limit compensation included in wages based on the nature or location of the employment or services performed, and all other payments made to him in the course of employment with an Employer or an "affiliated employer" for which his employer is required to furnish the Participant a written statement under Code Sections 6041(d), 6051(a)(3), and 6052 (commonly referred to as W 2 earnings).

"415 compensation" includes (i) any elective deferral, as defined in Code Section 402(g)(3) and (ii) any amount contributed or deferred by the Employer at the Participant's election which is not includable in the Participant's gross income by reason of Code Section 125, 132(f)(4), or 457.

If a Participant has a severance of employment (as defined in Treasury Regulations Section 1.415(a)-1(f)(5)) with the Employer and all "affiliated employers", "415

DEBTORS' EXHIBIT NO. 23
Page 44 of 82

compensation" does not include amounts received by the Participant following such severance of employment except amounts paid before the later of (a) the close of the "limitation year" in which the Participant's employment terminates or (b) within 2 ½ months of such severance if such amounts:

(1)     would otherwise have been paid to the Participant in the course of his employment and are regular compensation for services during the Participant's regular working hours, compensation for services outside the Participant's regular working hours (such as overtime or shift differential pay), commissions, bonuses, or other similar compensation

(2)     are payments for accrued bona fide sick, vacation or other leave, but only if the Participant would have been able to use such leave if his employment had continued and such amounts would have been includable in "415 compensation" if his employment had continued

(3)     are received by the Participant pursuant to a non-qualified, unfunded deferred compensation plan, but only if the Participant would have received such payments at the same time if he had continued in employment and only to the extent the payments are includable in the Participant's gross income

For purposes of this subsection, a Participant will not be considered to have incurred a severance from employment if his new employer continues to maintain the plan with respect to such Participant.

Notwithstanding any other provision of the Plan to the contrary, if a Participant is absent from employment as an Employee to perform service in the uniformed services (as defined in Chapter 43 of Title 38 of the United States Code), his "415 compensation" will include any differential pay, as defined hereunder, he receives or is entitled to receive from his Employer. For purposes of this paragraph, "differential pay" means any payment made to the Participant by the Employer with respect to a period during which the Participant is performing service in the uniformed services while on active duty for a period of more than 30 days that represents all or a portion of the wages the Participant would have received if he had continued employment with the Employer as an Employee.

In no event, however, shall the compensation of a Participant taken into account under the Plan for any calendar year exceed the Code Section 401(a)(17) limit in effect for such calendar year ($265,000 for the calendar year beginning in 2015, subject to adjustment annually as provided in Code Section 401(a)(17)(B) and Code Section 415(d); provided, however, that the dollar increase in effect on January 1 of any calendar year, if any, is effective for calendar years beginning in such calendar year. Effective for calendar years beginning on and after July 1, 2007, the limit described in this paragraph shall be applied annually to "415 compensation" earned in such calendar year and "415 compensation" for a calendar year shall not increase as a result of an increase in the Code Section 401(a)(17) limit applicable to a future calendar year.

DEBTORS' EXHIBIT NO. 23
Page 45 of 82

To be included in a Participant's "415 compensation" for a particular calendar year, an amount must have been received by the Participant (or would have been received, but for the Participant's election under Code Section 125, 132(f)(4), 401(k), 402(h)(1)(B), 403(b), 408(p)(2)(A)(i), or 457) within such calendar year. Notwithstanding the foregoing, amounts earned during a particular calendar year, that are not paid until the subsequent calendar year because of the timing of pay periods and pay dates, are included in "415 compensation" for the calendar year in which they were earned if (1) the amounts are paid within the first few weeks of the next calendar year, (2) are included on a uniform and consistent basis with respect to similarly-situated employees, and (3) are not also included as "415 compensation" in the subsequent calendar year.

(h)　　The "**limitation year**" means the Plan Year.

(i)　　A "**predecessor employer**" means (1) any former employer with respect to which an Employer or "affiliated employer" maintains a plan that provides benefits that the Participant accrued while performing services for such other employer or (2) a former entity that antedates an Employer or an "affiliated employer" if under the facts and circumstances the Employer or "affiliated employer" constitutes a continuation of all or a part of the trade or business of the former entity.

## 12.2　Maximum Limitation on Annual Benefits

The "aggregate annual retirement benefit" accrued or payable to a Participant may not at any time within any "limitation year" exceed the lesser of the "defined benefit compensation limitation" or the "defined benefit dollar limitation"; provided, however, that the "aggregate annual retirement benefit" accrued or payable to a Participant shall be deemed not to exceed such limits if:

(a)　　The "aggregate annual retirement benefit" payable for a "limitation year" under any available form of payment does not exceed $10,000 multiplied by a fraction, the numerator of which is the Participant's number of years of service (as defined in Section 12.1(e) above with respect to the "defined benefit compensation limitation"), not to exceed 10 years of service, and the denominator of which is 10; and

(b)　　The Employers, all "affiliated employers", and any "predecessor employer" have not at any time maintained a separate "defined contribution plan" in which the Participant participated.

## 12.3　Grandfather Prior Benefits

Notwithstanding any other provision of this Article XII to the contrary, in no event will application of the limits contained in this Article XII reduce the "aggregate annual retirement benefit" accrued or payable to a Participant below the "aggregate annual retirement benefit" accrued or payable to the Participant as of the end of the last "limitation year" beginning before July 1, 2007 under the provisions of the Plan adopted and in effect before April 5, 2007, provided that such provisions satisfied the requirements of Code Section 415 and the regulations

DB2-PLN

DEBTORS' EXHIBIT NO. 23
Page 46 of 82

and published guidance issued thereunder in effect as of the end of the last "limitation year" beginning before July 1, 2007, as provided in Treasury Regulations Section 1.415(a)-1(g)(4).

## 12.4    Manner of Reduction

If a Participant's "annual retirement benefit" that would otherwise accrue or be payable for a "limitation year" would exceed the limitations specified in this Article, his "annual retirement benefit" accrued or payable for such "limitation year" shall be reduced to the extent necessary. If a Participant is also covered by another "defined benefit plan" required to be aggregated with the Plan under Treasury Regulations Section 1.415(f)-1 and his "aggregate annual retirement benefit" that would otherwise accrue or be payable for a "limitation year" would exceed the limitations of this Section, his "annual retirement benefit" accrued or payable for such "limitation year" shall be reduced by an amount equal to the amount by which his "aggregate annual retirement benefit" for such "limitation year" would exceed the limitations of this Section multiplied by a fraction, the numerator of which is his "annual retirement benefit" (determined without regard to this Section) and the denominator of which is his "aggregate annual retirement benefit" (determined without regard to the limitations of this Section or any corresponding limitation in any other "defined benefit plan" maintained by an Employer, any "affiliated employer," or any predecessor employer").

If the limitations contained in this Article XII are nevertheless exceeded with respect to a Participant for any "limitation year," correction shall be made in accordance with the Employee Plans Compliance Resolution System, as set forth in Revenue Procedure 2006-27, or any superseding guidance.

## 12.5    Cost of Living Adjustment

In the case of a Participant who has separated from service, the Participant's "defined benefit compensation limitation" will be automatically adjusted by multiplying the Participant's "415 compensation" by the cost of living adjustment factor prescribed by the Secretary of the Treasury under Code Section 415(d) in such manner as the Secretary shall prescribe. The adjusted "defined benefit compensation limitation" will apply to "limitation years" ending within the calendar year of the date of the adjustment.

**DEBTORS' EXHIBIT NO. 23**
**Page 47 of 82**

## ARTICLE XIII
## PENSION FUND

### 13.1   Pension Fund

The Pension Fund is maintained by the Funding Agent for the Plan under a Funding Agreement with the Sponsor. Subject to the provisions of Title IV of ERISA, benefits under the Plan shall be only such as can be provided by the assets of the Pension Fund, and no liability for payment of benefits shall be imposed upon the Employers or any Affiliated Entity, or any of their officers, Employees, directors, or stockholders.

### 13.2   Contributions by the Employers

So long as the Plan continues, contributions will be made by the Employers at such times and in such amounts as the Sponsor in its sole discretion shall from time to time determine, based on the advice of the Actuary and consistent with the funding policy for the Plan. Subject to the provisions of Section 13.5, all such contributions shall be delivered to the Funding Agent for deposit in the Pension Fund. Participants shall make no contributions under the Plan.

### 13.3   Expenses of the Plan

The expenses of administration of the Plan, including the expenses of the Administrator and fees of the Funding Agent and any investment advisor, shall be paid from the Pension Fund, unless the Sponsor or an Employer elects to make payment.

### 13.4   No Reversion

The Pension Fund shall be for the exclusive benefit of Participants and persons claiming under or through them. All contributions pursuant to Section 13.2 hereof shall be based on the facts then understood by the Sponsor, shall be conditioned upon the initial qualification of the Funding Agreement and Plan under Code Sections 401 and 501(a), and, unless otherwise specified by the Sponsor, shall be conditioned upon deductibility of the contributions under Code Section 404 in the year for which such contributions were made. All such contributions shall be irrevocable and such contributions as well as the Pension Fund, or any portion of the principal or income thereof, shall never revert to or inure to the benefit of the Employers or any Affiliated Entity except that:

(a)     the residual amounts specified in Article XVI may be returned to the Employers;

(b)     any contributions which are made under a mistake of fact (reduced by any losses attributable thereto) may be returned to the Employers within one year after the contributions were made;

(c)     any contributions made for years during which the Funding Agreement and Plan were not initially qualified under Code Sections 401 and 501(a) may be returned to the Employers within one year after the date of denial of initial qualification, but only if an application

43                                                                                                    DB2-PLN

for determination was filed within the period of time prescribed under ERISA Section 403(c)(2)(B); and

(d)     any contributions, which are not, in whole or in part, deductible under Code Section 404 for the year for which they were made, may to the extent such contributions were not so deductible, be returned to the Employers within one year after the disallowance of the deduction.

The Sponsor shall determine, in its sole discretion, whether the contributions described above, other than the residual amounts described in paragraph (a), shall be returned to an Employer. If any such contributions are to be returned, the Sponsor shall so direct the Funding Agent, in writing, no later than 10 days prior to the last day upon which they may be returned.

## 13.5     Forfeitures Not to Increase Benefits

Any forfeitures arising from the termination of employment or death of a Covered Employee, or for any other reason, shall be used to reduce Employer contributions to the Pension Fund, and shall not be applied to increase the benefits any Participant otherwise would receive under the Plan at any time prior to the termination of the Plan.

## 13.6     Change of Funding Medium

The Sponsor shall have the right to change at any time the means through which benefits under the Plan shall be provided. No such change shall constitute a termination of the Plan or result in the diversion to the Employers of any funds previously contributed in accordance with the Plan.

**DEBTORS' EXHIBIT NO. 23**
**Page 49 of 82**

## ARTICLE XIV
## ADMINISTRATION

### 14.1    Authority of the Sponsor

The Sponsor, which shall be the administrator for purposes of ERISA and the plan administrator for purposes of the Code, shall have all the powers and authority expressly conferred upon it herein and further shall have the sole discretionary right, authority, and power to interpret and construe the Plan, and to determine any disputes arising thereunder, subject to the provisions of Section 14.6. In exercising such powers and authority, the Sponsor at all times shall exercise good faith, apply standards of uniform application, and refrain from arbitrary action. The Sponsor may employ such attorneys, agents, and accountants as it may deem necessary or advisable to assist it in carrying out its duties hereunder. The Sponsor shall be a "named fiduciary" as that term is defined in ERISA Section 402(a)(2). The Sponsor may:

(a)    allocate any of the powers, authority, or responsibilities for the operation and administration of the Plan (other than trustee responsibilities as defined in ERISA Section 405(c)(3)) among named fiduciaries; and

(b)    designate a person or persons other than a named fiduciary to carry out any of such powers, authority, or responsibilities;

except that no allocation by the Sponsor of, or designation by the Sponsor with respect to, any of such powers, authority, or responsibilities to another named fiduciary or a person other than a named fiduciary shall become effective unless such allocation or designation shall first be accepted by such named fiduciary or other person in a writing signed by it and delivered to the Sponsor.

Any interpretation of Plan provisions and any findings of fact, including eligibility to participate and eligibility for benefits, made by the Sponsor (or any named fiduciary to whom the Sponsor has allocated authority to make such interpretations and findings of fact) are final and will not be subject to "de novo" review unless shown to be arbitrary and capricious.

### 14.2    Action of the Sponsor

Any act authorized, permitted, or required to be taken by the Sponsor under the Plan, which has not been delegated in accordance with Section 14.1, may be taken by a majority of the members of the board of directors of the Sponsor, either by vote at a meeting, or in writing without a meeting or by the Employee or Employees of the Sponsor designated by the board of directors to carry out such acts on behalf of the Sponsor. All notices, advice, directions, certifications, approvals, and instructions required or authorized to be given by the Sponsor under the Plan shall be in writing and signed by either (i) a majority of the members of the board of directors of the Sponsor, or by such member or members as may be designated by an instrument in writing, signed by all the members thereof, as having authority to execute such documents on its behalf, or (ii) the Employee or Employees of the Sponsor who have the authority to act on behalf of the Sponsor.

DB2-PLN

**DEBTORS' EXHIBIT NO. 23**
**Page 50 of 82**

**14.3    Claims Review Procedure**

Except to the extent that the provisions of any applicable collective bargaining agreement provide another method of resolving claims under the Plan, the provisions of this Section shall control whenever a claim for benefits under the Plan is filed by any person (referred to in this Section as the "claimant") is denied, in whole or in part. The provisions of this Section shall also control whenever a claimant seeks a remedy under any provision of ERISA or other applicable law in connection with any error regarding his benefit under the Plan and such claim is denied, in whole or in part.

(a)     <u>Standard Claims Review</u>: The provisions of this Section 14.3(a) shall apply to any claim that is not subject to review under the provisions of Section 14.3(b) below.

      (1)     Whenever the Administrator decides for whatever reason to deny, whether in whole or in part, a claim for benefits filed by a claimant, the Administrator shall transmit to the claimant a written notice of its decision within 90 days of the date the claim was filed or, if special circumstances require an extension, within 180 days of such date. If the claimant does not receive notice from the Administrator regarding disposition of his claim within 90 days of the date his claim for benefits was received by the Administrator (or, if special circumstances require an extension, within 180 days of that date; provided that the delay and the reasons for the delay are communicated to the claimant within the initial 90-day period), the claimant's claim for benefits shall be deemed to have been denied.

          The notice shall be written in a manner calculated to be understood by the claimant and shall contain the following information:

          (A)     the specific reasons for the denial of the claim;

          (B)     specific reference to pertinent Plan provisions on which the denial is based;

          (C)     a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such information is necessary;

          (D)     a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim;

          (E)     a description of the review procedures and in the event of an adverse review decision, a statement describing any voluntary review procedures and the claimant's right to obtain copies of such procedures; and

          (F)     a statement that if the claimant requests a review of the Administrator's decision and the review fiduciary's decision on review is adverse to the claimant, there is no further administrative review following such initial

46

DB2-PLN

review, and that the claimant then has a right to bring a civil action under ERISA Section 502(a).

The notice shall also include a statement advising the claimant that, within 60 days of the date on which he receives such notice, he may obtain review of the decision of the Administrator in accordance with the procedures set forth in Section 14.7(a)(2) below.

(2)     Within the 60-day period beginning on the earlier of (i) the date the claimant receives notice regarding disposition of his claim or (ii) the date the claimant's claim for benefits is deemed denied hereunder, the claimant or his authorized representative may request that the claim denial be reviewed by filing with the Administrator a written request therefor, which request shall contain the following information:

(A)     the date on which the claimant's request was received by the Administrator provided that the date on which the claimant's request for review was in fact received by the Administrator shall control in the event that the date of the actual filing is later than the date stated by the claimant pursuant to this paragraph;

(B)     the specific portions of the denial of his claim which the claimant requests the Administrator to review;

(C)     a statement by the claimant setting forth the basis upon which he believes the Administrator should reverse its previous denial of his claim for benefits and accept his claim as made; and

(D)     any written or other material (offered as exhibits) which the claimant desires the Administrator to examine in its consideration of his position as stated pursuant to paragraph (C) of this Section.

(3)     Within 60 days of the date determined pursuant to Section 14.3(a)(2)(A) (or, if special circumstances require an extension, within 120 days of that date; provided that the delay and the reasons for the delay are communicated to the claimant within the initial 60-day period), the reviewing fiduciary shall conduct a full and fair review of its decision denying the claimant's claim for benefits and shall render its written decision on review to the claimant. The reviewing fiduciary's decision on review shall be written in a manner calculated to be understood by the claimant and shall contain the following information:

(A)     the specific reasons for the denial on review;

(B)     specific reference to pertinent Plan provisions on which the denial is based;

47                                                          DB2-PLN

       (C)     a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim;

       (D)     a statement describing any voluntary review procedures and the claimant's right to obtain copies of such procedures; and

       (E)     a statement that there is no further administrative review of the reviewing fiduciary's decision upon review, and that the claimant has a right to bring a civil action under ERISA Section 502(a).

(b)    Disability Claims Review: The provisions of this Section 14.3(b) shall apply to any claim that requires a determination as to whether or not a Participant is disabled, unless disability is determined under the Plan solely by reference to whether the Participant is entitled to disability benefits under the Social Security Act or under the Employer's long term disability plan.

    (1)    Whenever the Administrator decides for whatever reason to deny, whether in whole or in part, a claim for benefits filed by a claimant, the Administrator shall transmit to the claimant a written notice of its decision within 45 days of the date the claim was filed. If special circumstances require an extension, the Administrator will notify the claimant before the end of the 45-day review period that additional review time is necessary. The notice will:

       (A)     specify the circumstances requiring a delay and the date a decision is expected to be made;

       (B)     explain the standards for approving a disability claim;

       (C)     state the unresolved issues that prevent the Administrator from reaching a decision; and

       (D)     describe any additional information needed to resolve the issues.

    Unless the Administrator requires additional information from the Participant to process the disability claim, the review period cannot be extended beyond an additional 30 days. If the Administrator requires additional information from the Participant to process the disability claim, the Participant must respond within 45 days of the date the notice is provided and the review period may be extended accordingly. If special circumstances require a further extension, the Administrator will notify the claimant before the end of the initial 30-day extension that additional review time is necessary and the date by which a final decision is expected.

    If within 45 days of the date his claim for benefits was received by the Administrator the claimant does not receive notice from the Administrator either disposing of his claim or requesting an extension of the review period, the

48

DB2-PLN

DEBTORS' EXHIBIT NO. 23<br>Page 53 of 82

claimant's claim for benefits shall be deemed to have been denied. Similarly, if the Administrator notifies the Participant that the review period has been extended, but does not provide further notice within the prescribed review period, the claimant's claim for benefits shall be deemed to have been denied.

(2)     The notice denying a claimant's claim for disability benefit shall be written in a manner calculated to be understood by the claimant and shall contain the following information:

(A)     the specific reasons for the denial of the claim;

(B)     specific reference to pertinent Plan provisions on which the denial is based;

(C)     a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such information is necessary;

(D)     a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim;

(E)     if the claim denial is based on an internal rule, guideline, protocol, or other similar provision, a statement that a copy of the provision is available upon request, free of charge;

(F)     if the claim denial is based on an exclusion or limit (such as a medical necessity requirement or an experimental treatment exclusion) that an explanation of the scientific or clinical judgment applying the exclusion or limit is available upon request, free of charge;

(G)     a description of the review procedures and in the event of an adverse review decision, a statement describing any voluntary review procedures and the claimant's right to obtain copies of such procedures; and

(H)     a statement that if the claimant requests a review of the Administrator's decision and the reviewing fiduciary's decision on review is adverse to the claimant, there is no further administrative review following such initial review, and that the claimant then has a right to bring a civil action under ERISA Section 502(a).

The notice shall also include a statement advising the claimant that, within 180 days of the date on which he receives such notice, he may obtain review of the decision of the Administrator in accordance with the procedures set forth in Section 14.3(b)(3) below.

49

DB2-PLN

**DEBTORS' EXHIBIT NO. 23**
**Page 54 of 82**

(3)   Within the 180-day period beginning on the earlier of (i) the date the claimant receives notice regarding disposition of his claim or (ii) the date the claimant's claim for benefits is deemed denied hereunder, the claimant or his authorized representative may request that the claim denial be reviewed by filing with the reviewing fiduciary a written request therefor, which request shall contain the following information:

> (A)   the date on which the claimant's request was received by the Administrator provided that the date on which the claimant's request for review was in fact received by the Administrator shall control in the event that the date of the actual filing is later than the date stated by the claimant pursuant to this paragraph;

> (B)   the specific portions of the denial of his claim which the claimant requests the reviewing fiduciary to review;

> (C)   a statement by the claimant setting forth the basis upon which he believes the reviewing fiduciary should reverse the Administrator's previous denial of his claim for benefits and accept his claim as made; and

> (D)   any written or other material (offered as exhibits) which the claimant desires the reviewing fiduciary to examine in its consideration of his position as stated pursuant to paragraph (C) of this Section.

(4)   Review of a disability claim that has been denied in accordance with the provisions of Sections 14.3(b)(1) and (2) will be conducted by a Plan fiduciary who is different from and not subordinate to the fiduciary who denied the claim. If the original claim was denied based on a medical judgment, the reviewing fiduciary shall consult with an appropriate health care professional who (i) was not consulted on the original claim and (ii) is not subordinate to someone who was consulted on the original claim. Any medical or vocational experts who were consulted on the original claim must be identified during the review. The claimant may request, in writing, a list of such experts.

(5)   Within 45 days of the date determined pursuant to Section 14.3(b)(3)(A), the reviewing fiduciary shall conduct a full and fair review of the original decision denying the claimant's claim for benefits and shall render its written decision on review to the claimant. The reviewing fiduciary's decision on review shall be written in a manner calculated to be understood by the claimant and shall contain the following information:

> (A)   the specific reasons for the denial on review;

> (B)   specific reference to pertinent Plan provisions on which the denial is based;

50

DB2-PLN

**DEBTORS' EXHIBIT NO. 23**
**Page 55 of 82**

(C)   a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim;

(D)   if the claim denial is based on an internal rule, guideline, protocol, or other similar provision, a statement that a copy of the provision is available upon request, free of charge;

(E)   if the claim denial is based on an exclusion or limit (such as a medical necessity requirement or an experimental treatment exclusion) that an explanation of the scientific or clinical judgment applying the exclusion or limit is available upon request, free of charge;

(F)   a statement describing any voluntary review procedures and the claimant's right to obtain copies of such procedures; and

(G)   the following statement: "You and your Plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency."

## 14.4   Exhaustion of Remedies

No civil action for benefits under the Plan shall be brought unless and until the aggrieved person has:

(a)   submitted a timely claim for benefits in accordance with the provisions of the Plan;

(b)   been notified by the Administrator that the claim has been denied (or such claim is deemed denied);

(c)   filed a written request for a review of the claim in accordance with Section 14.3(a)(2) or 14.3(b)(2), as applicable; and

(d)   been notified in writing of an adverse benefit determination on review.

## 14.5   Grounds for Judicial Review

Any civil action by an aggrieved person shall be based solely on the contentions advanced by the aggrieved person in the administrative review process and the judicial review will be limited to the Plan document and the record developed during the administrative review process.

DEBTORS' EXHIBIT NO. 23
Page 56 of 82

## 14.6    Qualified Domestic Relations Orders

The Administrator shall establish reasonable procedures to determine the status of domestic relations orders and to administer distributions under domestic relations orders which are deemed to be qualified orders. Such procedures shall be in writing and shall comply with the provisions of Code Section 414(p) and regulations issued thereunder.

Notwithstanding any other provision of the Plan to the contrary, if a qualified domestic relations order so provides, distribution may be made to an alternate payee pursuant to a qualified domestic relations order, as defined in Code Section 414(p), regardless of whether the Participant has retired or otherwise terminated employment or whether the Participant is otherwise entitled to receive a distribution under the Plan.

## 14.7    Indemnification

In addition to whatever rights of indemnification the members of the board of directors of the Sponsor or any Employee or Employees to whom any power, authority, or responsibility is delegated pursuant to Section 14.2, may be entitled under the articles of incorporation, regulations, or bylaws of the Sponsor, under any provision of law, or under any other agreement, the Sponsor shall satisfy any liability actually and reasonably incurred by any such person or persons, including expenses, attorneys' fees, judgments, fines, and amounts paid in settlement (other than amounts paid in settlement not approved by the Sponsor), in connection with any threatened, pending, or completed action, suit, or proceeding which is related to the exercise or failure to exercise by such person or persons of any of the powers, authority, responsibilities, or discretion as provided under the Plan and the Funding Agreement, or reasonably believed by such person or persons to be provided thereunder, and any action taken by such person or persons in connection therewith, unless the same is judicially determined to be the result of such person's or persons' gross negligence or willful misconduct.

## 14.8    Actions Binding

Subject to the provisions of Section 14.6, any action taken by the Sponsor which is authorized, permitted, or required under the Plan shall be final and binding upon the Employers, the Funding Agent, all persons who have or who claim an interest under the Plan, and all third parties dealing with the Employers or the Funding Agent.

## 14.9    Prudent Man Standard of Care

The Plan fiduciaries shall discharge their duties under the Plan solely in the interests of Participants and Beneficiaries and, in accordance with the requirements of ERISA Section 404(a)(1)(B), with the care, skill, prudence, and diligence under the prevailing circumstances that a prudent man acting in a like capacity and familiar with such matters would use in conducting an enterprise of like character with like aims.

**DEBTORS' EXHIBIT NO. 23**
**Page 57 of 82**

## ARTICLE XV
## ADOPTION BY OTHER ENTITIES

### 15.1   Adoption by Affiliated Entities

An Affiliated Entity that is not an Employer may, with the consent of the Sponsor, adopt the Plan and become an Employer hereunder by causing an appropriate written instrument evidencing such adoption to be executed in accordance with the requirements of its organizational authority. Any such instrument shall specify the effective date of the adoption. Unless otherwise specified in the adoption instrument, for purposes of computing the Service of a Covered Employee who is in the employ of the Employer on the effective date of the adoption, employment with the Employer before the effective date of the adoption shall be treated as employment with an Employer. Unless otherwise specifically provided in the adoption instrument, for purposes of computing the Credited Service of a Covered Employee, only employment with the Employer for periods on or after the effective date of the adoption shall be treated as employment with an Employer. Any Employer shall undertake to contribute its appropriate share, as determined by the Sponsor, of any contributions made to the Funding Agent hereunder. Notwithstanding the foregoing, however, any adoption of the Plan by an Employer shall be subject to the receipt of a determination from the Internal Revenue Service to the effect that with respect to such Employer the Plan meets the requirements for qualification under Code Section 401(a), and, should an adverse determination be issued by the Internal Revenue Service, the adoption of the Plan by said Employer shall be null and void and of no effect whatsoever.

### 15.2   Effective Plan Provisions

An Employer who adopts the Plan shall be bound by the provisions of the Plan in effect at the time of the adoption and as subsequently in effect because of any amendment to the Plan.

**DEBTORS' EXHIBIT NO. 23**
**Page 58 of 82**

## ARTICLE XVI
## AMENDMENT AND TERMINATION OF PLAN

### 16.1    Sponsor's Right of Amendment

The Sponsor reserves the right at any time and from time to time, by means of a written instrument executed in the name of the Sponsor by its duly authorized representatives, to amend or modify the Plan and, to the extent provided therein, to amend or modify the Funding Agreement. To the extent protected under Code Section 411(d)(6) or other applicable law, no pension or other benefit granted prior to the time of any amendment or modification of the Plan shall be reduced, suspended, or discontinued as a result thereof, except to the extent necessary to enable the Plan to meet the requirements for qualification under the Code or the requirements of any governmental authority. Moreover, no such action shall operate to recapture for the Employers any contributions made to the Pension Fund, except as provided in Section 13.4 or Section 16.4

### 16.2    Termination of the Plan

The Sponsor reserves the right, by means of a written instrument executed in the name of the Sponsor by its duly authorized representatives, at any time to terminate the Plan. In the event of termination, no further benefits shall accrue, no further contributions shall be made, except as may be required under Title IV of ERISA or Code Section 412, and all assets remaining in the Pension Fund, after provision has been made for payment of the expenses of administration and liquidation in connection with the termination, shall be allocated by the Funding Agent upon the advice of the Actuary, among the Participants and Beneficiaries of the Plan, in the order of priority established under ERISA Section 4044.

### 16.3    Allocations Resulting in Discrimination

If the Secretary of the Treasury determines that the allocation made pursuant to this Article (without regard to this Section) results in discrimination prohibited by Code Section 401(a)(4),then the assets shall be reallocated consistent with ERISA Section 4044 to the extent necessary to prevent the disqualification of the Plan (or any trust or annuity contract under the Plan) under Code Section 401(a).

### 16.4    Residual Assets

Subject to applicable claims review procedures and the provisions of any applicable collective bargaining agreement, any residual assets of the Plan shall be distributable to the Employers if:

(a)    all liabilities of the Plan to Participants and their beneficiaries have been satisfied; and

(b)    the distribution does not contravene any provision of law.

### 16.5    Payments by the Funding Agent

DB2-PLN

The Funding Agent shall make the payments specified in a written direction of the Sponsor in accordance with the provisions of Section 16.2 until the same shall be superseded by a further written direction. The obligation of the Funding Agent to make any payment hereunder in all events shall be limited to the amount of the Pension Fund at the time any such payment shall become due.

## 16.6    Residual Assets Distributable to the Employers

Upon written notice from the Sponsor that any residual assets of the Plan are distributable to the Employers in accordance with the provisions of Section 16.4, then the Funding Agent shall pay over such residual assets, or an amount equal to the fair market value of that portion of such residual assets which are not so paid, to the Employers; provided, however, that, under no circumstances or conditions other than as set forth in Section 16.4 and in Section 13.4, shall any contribution of the Employers, or any portion of the proceeds or avails thereof, ever revert, be paid, or inure to the benefit, directly or indirectly, of the Employers or any Affiliated Entity; nor shall any portion of the principal or the income from the Pension Fund ever be used for or diverted to any purpose other than for the exclusive benefit of Participants and persons claiming under or through them pursuant to the Plan.

## 16.7    Withdrawal of an Employer

Each Employer shall have the right to withdraw from the Plan by action in accordance with its organizational authority, and by filing with the Sponsor written notice thereof, in which event the Employer shall cease to be an Employer for purposes of the Plan. An Employer shall be deemed automatically to withdraw from the Plan in the event it completely discontinues contributions to the Plan or it ceases to be an Affiliated Entity.

If such withdrawal is for the purpose of establishing or merging with a separate plan which meets the requirements for qualification under applicable provisions of the Code, the portion of the assets of the Pension Fund which is applicable to the withdrawing Employer, as determined by the Sponsor upon the advice of the Actuary, on a fair and equitable basis, taking into account the contributions made by the Employer, benefit payments made with respect to its Employees and retired and former Employees, and other relevant factors, shall be transferred to and become a part of the trust fund or other financing medium maintained in connection with the separate plan, subject to the limitations on merger, consolidation, or transfers of Plan assets set forth in Section 17.5.

55

DB2-PLN

**ARTICLE XVII**
**MISCELLANEOUS**

**17.1    No Commitment as to Employment**

Nothing contained herein shall be construed as a commitment or agreement on the part of any person to continue his employment with his Employer, or as a commitment on the part of his Employer to continue the employment, compensation, or benefits of any person for any period, and all Employees of an Employer shall remain subject to discharge, layoff, or disciplinary action to the same extent as if the Plan had never been put into effect.

**17.2    Claims of Other Persons**

Nothing in the Plan or Funding Agreement shall be construed as giving any Participant or any other person, firm, or corporation, any legal or equitable right as against the Employers, their officers, Employees, or directors, or as against the Funding Agent, except such rights as are specifically provided for in the Plan or Funding Agreement or hereafter created in accordance with the terms and provisions of the Plan.

**17.3    Governing Law**

Except as provided under Federal law, the provisions of the Plan shall be governed by and construed in accordance with the laws of the State or Commonwealth in which the Sponsor has its principal place of business.

**17.4    Nonforfeitability of Benefits Upon Termination or Partial Termination**

Notwithstanding any other provision of the Plan, in the event of the termination or a partial termination of the Plan, including the complete discontinuation of contributions to the Plan, the rights of all Employees who are affected by such termination to benefits accrued to the date of such termination, to the extent funded as of such date, shall be nonforfeitable.

**17.5    Merger, Consolidation, or Transfer of Plan Assets**

The Plan shall not be merged or consolidated with any other plan, nor shall any of its assets or liabilities be transferred to another plan, unless, immediately after such merger, consolidation, or transfer of assets or liabilities, each Participant in the Plan would receive a benefit under the Plan which is at least equal to the benefit he would have received immediately prior to such merger, consolidation, or transfer of assets or liabilities (assuming in each instance that the Plan had then terminated).

If another qualified plan merges or consolidates with the Plan, notwithstanding any other provision of the Plan to the contrary, the forms of payment and other provisions that were available with respect to benefits accrued immediately prior to the transfer or merger under such other qualified plan and that may not be eliminated under Code Section 411(d)(6) shall continue

DB2-PLN

to be available under the Plan with respect to the benefit that the Participant would have received immediately prior to such merger, consolidation or transfer of assets or liabilities.

## 17.6    Funding Agreement

The Funding Agreement and the Pension Fund maintained thereunder shall be deemed to be a part of the Plan as if fully set forth herein and the provisions of the Funding Agreement are hereby incorporated by reference into the Plan.

## 17.7    Benefit Offsets for Overpayments

If a Participant or Beneficiary receives benefits hereunder for any period in excess of the amount of benefits to which he was entitled under the terms of the Plan as in effect for such period, such overpayment shall be offset against current or future benefit payments, as applicable, until such time as the overpayment is entirely recouped by the Plan.

## 17.8    Special Rules Applicable to Participants Absent Due to Military Leave

Notwithstanding any other provision of the Plan to the contrary, contributions, benefits, and service credit with respect to qualified military service shall be provided in accordance with Code Section 414(u).

If a Participant who is absent from employment as an Employee because of military service dies after December 31, 2006, while performing qualified military service (as defined in Code Section 414(u)), the Participant shall be treated as having returned to employment as an Employee on the day immediately preceding his death for purposes of service crediting, retirement eligibility, determining the Participant's vested interest in his Accrued Benefit, and determining his Beneficiary's eligibility for a survivor benefit under the Plan. Notwithstanding the foregoing, such a Participant shall not be entitled to additional accruals with respect to his period of military leave.

## 17.9    Revocation of Beneficiary Designation Upon Divorce

If a Participant designates his or her Spouse as Beneficiary under the Plan, such designation shall automatically become null and void as of the date of any final divorce or similar decree or order unless (i) such Spouse's rights have vested under Code Section 417, (ii) the Participant re-designates such former Spouse as his or her Beneficiary after the date of the final decree or order or (iii) such former Spouse is designated as the Participant's Beneficiary under a qualified domestic relations order; provided, however, that such former Spouse shall be the Participant's Beneficiary under this clause (iii) only to the extent required in accordance with the qualified domestic relations order.

**DEBTORS' EXHIBIT NO. 23**
**Page 62 of 82**

## ARTICLE XVIII
## CODE SECTION 401(a)(9) COMPLIANCE

### 18.1    Definitions

For purposes of this Article the following terms have the following meanings. Except as otherwise specifically provided herein, any term defined in Section 1.1 of the Plan has the meaning given such term in such Section.

(a)    "**Actuarial gain**" means the difference between an amount determined using the actuarial assumptions (*i.e.*, investment return, mortality, expense, and other similar assumptions) used to calculate the initial payments before adjustment for any increases and the amount determined under the actual experience with respect to those factors. Actuarial gain also includes differences between the amount determined using actuarial assumptions when an annuity was purchased or commenced and such amount determined using actuarial assumptions used in calculating payments at the time the actuarial gain is determined.

(b)    A Participant's "**designated beneficiary**" means the individual who is designated as the Participant's Beneficiary under the Plan and is the designated beneficiary under Code Section 401(a)(9) and Section 1.401(a)(9)-4, of the Treasury regulations.

(c)    A "**distribution calendar year**" means a calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first "distribution calendar year" is the calendar year immediately preceding the calendar year which contains the Participant's Required Beginning Date. For distributions beginning after the Participant's death, the first "distribution calendar year" is the calendar year in which distributions are required to begin under Section 18.6.

(d)    A Participant's or Beneficiary's "**life expectancy**" means his life expectancy as computed by use of the Single Life Table in Section 1.401(a)(9)-9, Q&A 1 of the Treasury regulations.

### 18.2    Applicability

This Article is intended to comply with final and temporary regulations issued under Code Section 401(a)(9). The provisions of this Article are intended to comply with the required commencement and minimum distribution rules applicable under the Code. Nothing hereunder is intended to postpone payments required under the terms of the Plan other than this Article or to create a form of payment or death benefit that is not otherwise provided under the terms of the Plan other than this Article.

### 18.3    Precedence

The requirements of this Article will take precedence over any inconsistent provisions of the Plan; provided, however, that nothing in this Article shall operate to create a form of payment or death benefit not otherwise provided under the terms of the Plan other than this Article.

**DEBTORS' EXHIBIT NO. 23**
**Page 63 of 82**

**18.4    Requirements of Treasury Regulations Incorporated**

All distributions required under this Article will be determined and made in accordance with the Treasury regulations under Code Section 401(a)(9), including the incidental death benefit requirements of Code Section 401(a)(9)(G).

**18.5    Commencement as of Required Beginning Date**

A Participant's entire interest will be distributed, or begin to be distributed, to the Participant no later than the Participant's Required Beginning Date.

**18.6    Death of Participant Before Distributions Begin**

If a Participant dies before distributions begin, the Participant's entire interest will be distributed, or begin to be distributed, no later than as follows:

(a)      If the Participant's surviving Spouse is the Participant's sole "designated beneficiary", then, except as provided in Section 18.16, distributions to the surviving Spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age 70-1/2, if later.

(b)      If the Participant's surviving Spouse is not the Participant's sole "designated beneficiary", then, except as provided in Section 18.16, distributions to the "designated beneficiary" will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died.

(c)      If there is no "designated beneficiary" as of September 30 of the year following the year of the Participant's death, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(d)      If the Participant's surviving Spouse is the Participant's sole "designated beneficiary" and the surviving Spouse dies after the Participant but before distributions to the surviving Spouse begin, this Section 18.6, other than Section 18.6(a), will apply as if the surviving Spouse were the Participant.

For purposes of this Section 18.6 and Sections 18.13, 18.14, and 18.15, distributions are considered to begin on the Participant's Required Beginning Date (or, if Section 18.6(d) applies, the date distributions are required to begin to the surviving Spouse under Section 18.6(a)). If annuity payments irrevocably commence to a Participant before the Participant's Required Beginning Date (or to the Participant's surviving Spouse before the date distributions are required to begin to the surviving Spouse under Section 18.6(a)), the date distributions are considered to begin is the date distributions actually commence.

**18.7    Form of Distribution**

Unless a Participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the Required Beginning Date, as of the first

59

"distribution calendar year", distributions will be made in accordance with Sections 18.8 through 18.16. If a Participant's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Code Section 401(a)(9) and the Treasury regulations. Any part of a Participant's interest that is in the form of an individual account described in Code Section 414(k) will be distributed in a manner satisfying the requirements of Code Section 401(a)(9) and the Treasury regulations that apply to individual accounts.

## 18.8     General Annuity Requirements

If a Participant's interest is paid in the form of annuity distributions under the Plan, payments under the annuity will satisfy the following requirements:

(a)      the annuity distributions will be paid in periodic payments made at intervals not longer than one year;

(b)      the distribution period will be over a life (or lives) or over a period certain not longer than the period described in Sections 18.11 and 18.12 or Section 18.13, 18.14, and 18.15;

(c)      once payments have begun over a period certain, the period certain will not be changed even if the period certain is shorter than the maximum permitted;

(d)      payments will either be nonincreasing or increase only as follows:

(1)      by an annual percentage increase that does not exceed the percentage increase in an eligible cost-of-living index (as described in paragraphs (b)(2), (3), or (4) of Treasury Regulations Section 1.401(a)(9)-6, Q&A-14) for a 12-month period ending in the year during which the increase occurs or a prior year;

(2)      by a percentage increase that occurs at specified times and does not exceed the cumulative total annual percentage increases in an eligible cost-of-living index (as described in paragraphs (b)(2), (3), or (4) of Treasury Regulations Section 1.401(a)(9)-6, Q&A-14) since the Annuity Starting Date or, if later, the date of the most recent percentage increase; provided that if a Participant's benefit is increased as provided herein, his benefit shall not be actuarially increased to reflect that increases were not provided in the interim years;

(3)      by a constant percentage of less than 5% per year, applied not less frequently than annually;

(4)      as a result of dividend or other payments that result from "actuarial gains", provided that:

(A)      the "actuarial gain" is measured not less frequently than annually;

(B)      the resulting dividend or other payments are either paid no later than the year following the year for which the actuarial experience is measured or paid in the same form as the payment of the annuity over the remaining

60

period of the annuity, beginning no later than the year following the year for which the actuarial experience is measured;

(C)    the "actuarial gain" taken into account is limited to "actuarial gain" from investment experience;

(D)    the assumed interest rate used to calculate such "actuarial gain" is not less than 3%; and

(E)    the annuity payments are not increased by a constant percentage as described in 18.8(d)(3) above;

(5)    to the extent of the reduction in the amount of the Participant's payments to provide for a survivor benefit upon death, but only if the Beneficiary whose life was being used to determine the distribution period described in Sections 18.11 and 18.12 dies or is no longer the Participant's Beneficiary pursuant to a qualified domestic relations order within the meaning of Code Section 414(p); or

(6)    to provide a final payment upon the Participant's death not greater than the excess of the Actuarially Equivalent present value of the Participant's Accrued Benefit (within the meaning of Code Section 411(a)(7)) calculated as of the Annuity Starting Date using the applicable interest rate and applicable mortality table described in the definition of "Actuarial Equivalent" in Section 1.1 over the total payments before the Participant's death;

(7)    to allow a Beneficiary to convert the survivor portion of a joint and survivor annuity into a single sum distribution upon the Participant's death; or

(8)    to pay increased benefits that result from a Plan amendment.

## 18.9    Amount Required to be Distributed by Required Beginning Date

The amount that must be distributed on or before a Participant's Required Beginning Date (or, if the Participant dies before distributions begin, the date distributions are required to begin under Section 18.6(a) or 18.6(b)) is the payment that is required for one payment interval. The second payment need not be made until the end of the next payment interval even if that payment interval ends in the next calendar year. Payment intervals are the periods for which payments are received, e.g., bi-monthly, monthly, semi-annually, or annually. All of the Participant's benefit accruals as of the last day of the first "distribution calendar year" will be included in the calculation of the amount of the annuity payments for payment intervals ending on or after the Participant's Required Beginning Date.

61

## 18.10   Additional Accruals After First Distribution Calendar Year

Any additional benefits accruing to a Participant in a calendar year after the first "distribution calendar year" will be distributed beginning with the first payment interval ending in the calendar year immediately following the calendar year in which such amount accrues.

## 18.11   Joint Life Annuities Where the Beneficiary Is Not the Participant's Spouse

If a Participant's interest is being distributed in the form of a joint and survivor annuity for the joint lives of the Participant and a non-Spouse Beneficiary, annuity payments to be made on or after the Participant's Required Beginning Date to the "designated beneficiary" after the Participant's death must not at any time exceed the applicable percentage of the annuity payment for such period that would have been payable to the Participant using the table set forth in Section 1.401(a)(9)-6, Q&A-2(c)(2), in the manner described in Section 1.401(a)(9)-6, Q&A(2)(c)(1) of the Treasury regulations. If the form of distribution combines a joint and survivor annuity for the joint lives of the Participant and a non-Spouse Beneficiary and a period certain annuity, the requirement in the preceding sentence will apply to annuity payments to be made to the "designated beneficiary" after the expiration of the period certain.

## 18.12   Period Certain Annuities

Unless the Participant's Spouse is the sole "designated beneficiary" and the form of distribution is a period certain and no life annuity, the period certain for an annuity distribution commencing during the Participant's lifetime may not exceed the applicable distribution period for the Participant under the Uniform Lifetime Table set forth in Section 1.401(a)(9)-9 of the Treasury regulations for the calendar year that contains the Annuity Starting Date. If the Annuity Starting Date precedes the year in which the Participant reaches age 70, the applicable distribution period for the Participant is the distribution period for age 70 under the Uniform Lifetime Table set forth in Section 1.401(a)(9)-9 of the Treasury regulations plus the excess of 70 over the age of the Participant as of the Participant's birthday in the year that contains the Annuity Starting Date. If the Participant's Spouse is the Participant's sole "designated beneficiary" and the form of distribution is a period certain and no life annuity, the period certain may not exceed the longer of the Participant's applicable distribution period, as determined under this Section, or the joint life and last survivor expectancy of the Participant and the Participant's Spouse as determined under the Joint and Last Survivor Table set forth in Section 1.401(a)(9)-9 of the Treasury regulations, using the Participant's and Spouse's attained ages as of the Participant's and Spouse's birthdays in the calendar year that contains the Annuity Starting Date.

## 18.13   Participant Survived by Designated Beneficiary

Except as provided in Section 18.16, if a Participant dies before the date distribution of his or her interest begins and there is a "designated beneficiary", the Participant's entire interest will be distributed, beginning no later than the time described in Section 18.6(a) or 18.6(b), over the life of the "designated beneficiary" or over a period certain not exceeding:

(a)      unless the Annuity Starting Date is before the first "distribution calendar year", the "life expectancy" of the "designated beneficiary" determined using the Beneficiary's age as of

the Beneficiary's birthday in the calendar year immediately following the calendar year of the Participant's death, reduced by one for each calendar year that has elapsed after the calendar year of the Participant's death; or

(b)     if the Annuity Starting Date is before the first "distribution calendar year", the "life expectancy" of the "designated beneficiary" determined using the Beneficiary's age as of the Beneficiary's birthday in the calendar year that contains the Annuity Starting Date.

## 18.14   No Designated Beneficiary

If a Participant dies before the date distributions begin and there is no "designated beneficiary" as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

## 18.15   Death of Surviving Spouse Before Distributions to Surviving Spouse Begin

If a Participant dies before the date distribution of his or her interest begins, the Participant's surviving Spouse is the Participant's sole "designated beneficiary", and the surviving Spouse dies before distributions to the surviving Spouse begin, this Section will apply as if the surviving Spouse were the Participant, except that the time by which distributions must begin will be determined without regard to Section 18.6(a).

## 18.16   Change to Annuity Payout Period

The period over which an annuity is to be paid out may not be changed except as follows:

(a)     The annuity payout period may be changed in association with an increase in the annuity payment described in Section 18.8(d).

(b)     The annuity payout period may be changed and payments modified if all of the following requirements are satisfied:

(1)     any of the following applies:

(A)     the modification occurs when the Participant retires or in connection with the Plan's termination; or

(B)     the payment period prior to modification is a period certain without life contingencies; or

(C)     annuity payments after the modification are paid under a Qualified Joint and Survivor Annuity, the Participant's Spouse is the sole "designated beneficiary", and the modification occurs in connection with the Participant marrying such Spouse.

(2)     future payments after the modification satisfy the requirements of Code Section 401(a)(9), regulations issued thereunder, and this Article, determined by treating

63

the date of the change as a new Annuity Starting Date and the Actuarially Equivalent present value of the remaining payments prior to modification as the entire interest of the Participant;

(3)     the modification is treated as a new Annuity Starting Date for purposes of Code Sections 415 and 417;

(4)     the annuity, including all past and future payments, satisfies the requirements of Code Section 415 determined as of the original Annuity Starting Date, using the interest rates and mortality tables in effect on such date, but taking into account the modification; and

(5)     any period certain provided under the modified payment does not end later than the date a period certain would have been required to end under Code Section 401(a)(9) and this Article, determined as of the original Annuity Starting Date.

## 18.17   Payments to a Surviving Child

For purposes of this Article, payments made to a Participant's surviving child before the child reaches the age of majority (or dies, if earlier) shall be treated as if such payments were made to the Participant's surviving Spouse to the extent the payments become payable to the surviving Spouse upon cessation of payments to the child. For purposes of this Section, a child shall be treated as not having reached the age of majority if the child has not completed a specified course of education and is under the age of 26. In addition, a child who is disabled shall be treated as not having reached the age of majority so long as the child continues to be disabled.

## 18.18   5-Year Rule Applicable to Certain Distributions to Designated Beneficiaries

If a Participant dies before distributions begin, there is a "designated beneficiary", and the benefit payable to such "designated beneficiary" is to be made in a lump sum pursuant to the cashout provisions of Section 11.5 of the Plan, distribution to the "designated beneficiary" is not required to begin by the date specified in Section 18.6, but the Participant's entire interest will be distributed to the "designated beneficiary" by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

## 18.19   Death of Participant After Distributions Begin

If a Participant dies after distributions begin, the Participant's remaining interest, if any, will be distributed at least as rapidly as under the form of distribution in effect on the date of the Participant's death.

## 18.20   TEFRA 242(b)(2) Elections

Notwithstanding any other provision of this Article and subject to the requirements of Article IX (with respect to the Qualified Joint and Survivor Annuity provisions), distribution on behalf of any Participant, including a 5% owner, who has made a designation under Section 242(b)(2) of the Tax Equity and Fiscal Responsibility Act (a "242(b)(2) election") may be made in

DEBTORS' EXHIBIT NO. 23
Page 69 of 82

accordance with all of the following requirements, regardless of when such distribution commences:

(a)      The distribution is one which would not have disqualified the Plan under Code Section 401(a)(9) as in effect prior to amendment by the Deficit Reduction Act of 1984.

(b)      The method of distribution is the method designated by the Participant whose interest in the Plan is being distributed or, if the Participant has died, his Beneficiary.

(c)      The designation was in writing, was signed by the Participant or his Beneficiary, as applicable, and was made before January 1, 1984.

(d)      The Participant had an Accrued Benefit under the Plan as of December 31, 1984.

(e)      The method of distribution designated by the Participant or his Beneficiary, as applicable, specifies the time at which distribution will commence, the period over which distributions will be made, and in the case of any distribution upon the Participant's death, the Participant's Beneficiaries listed in order of priority.

A distribution upon the Participant's death will not be covered by the transitional rules applicable to 242(b)(2) elections unless the information in the designation contained the required information described above with respect to the distributions to be made upon the death of the Participant.

For any distribution that commences before January 1, 1984, but continues after December 31, 1983, the Participant or Beneficiary to whom such distribution is being made will be presumed to have designated the method of distribution under which the distribution is being made if the method of distribution was specified in writing and the distribution satisfies the requirements of paragraphs (a) through (e) above.

If a 242(b)(2) election is revoked, any subsequent distribution must satisfy the requirements of Code Section 401(a)(9) and the regulations thereunder. If a 242(b)(2) election is revoked subsequent to the date distributions are required to begin, the Plan must distribute by the end of the calendar year following the calendar year in which the revocation occurs the total amount not yet distributed that would have been required to be distributed to satisfy Code Section 401(a)(9) and the regulations thereunder, but for the 242(b)(2) election. For calendar years beginning after December 31, 1988, such distributions must meet the minimum distribution incidental benefit requirements.

Except as otherwise specifically provided herein, any change in the designation made under a 242(b)(2) election will be considered to be a revocation of the 242(b)(2) election. However, the mere substitution or addition of a Beneficiary will not be considered a revocation of the 242(b)(2) election if such substitution or addition does not, directly or indirectly, alter the period over which distributions are to be made under the 242(b)(2) election (e.g., by altering the relevant measuring life).

65

In the case in which an amount is transferred to the Plan from another plan, the provisions in Treasury Regulations Section 1.401(a)(9)-8, Q&A-14 and Q&A-15 shall apply.

66

**ARTICLE XIX**
**CODE SECTION 436 COMPLIANCE**

**19.1    Definitions**

For purposes of this Article the following terms have the following meanings:

(a)    The "**AFTAP**" of the Plan for a Plan Year means the adjusted funding target attainment percentage determined for the Plan Year under Treasury Regulations Section 1.436-1(j)(1).

(b)    A Participant's or Beneficiary's "**Annuity Starting Date**" means the date described in Section 1.1(g), modified as provided in Treasury Regulations Section 1.436-1(j)(2).

(c)    A "**predecessor plan**" means any of the following: (1) the Plan as maintained by a "predecessor employer", as defined in Section 12.1(i); (2) another defined benefit plan maintained by a "predecessor employer" within the preceding 5 years if any Participants in the Plan participated in the other defined benefit plan; or (3) another defined benefit plan maintained by an Employer within the preceding 5 years if any Participants in the Plan participated in the other defined benefit plan.

(d)    A "**prohibited payment**" means the following:

(1)    except as provided in (2) below, any payment in excess of the monthly amounts paid under a single life annuity (plus any Social Security supplement described in the last sentence of Code Section 411(a)(9)), to a Participant or Beneficiary whose Annuity Starting Date occurs during any period a restriction under Section 19.3 is in effect;

(2)    in the case of a Beneficiary that is not an individual, the monthly amount payable in installments over 240 months that is the Actuarial Equivalent of the benefit described in (1) above;

(3)    any payment for the purchase of an irrevocable commitment from an insurer to pay benefits; or

(4)    any other payment specified by the Secretary of the Treasury in regulations.

(d)    A "**section 436 measurement date**" means a date used to determine when the restrictions in Section 19.3 or 19.4 apply or cease to apply and shall be determined in accordance with Treasury Regulations Section 1.436-1(j)(8).

(e)    An "**unpredictable contingent event**" means (i) a plant shutdown (full or partial) or similar event, as determined by the Secretary of the Treasury or (ii) any other event other than attainment of a specified age, performance of any service, receipt or derivation of any compensation, or occurrence of death or disability.

67

(f)      An "**unpredictable contingent event benefit**" is a benefit or increase in benefits that would not be payable absent the occurrence of an "unpredictable contingent event".

**19.2    Restriction on "Unpredictable Contingent Event Benefits"**

Payment of "unpredictable contingent event benefits" shall be subject to the following rules:

(a)      Certified "AFTAP" < 60%. No "unpredictable contingent event benefits" shall be payable with respect to an "unpredictable contingent event" that occurs during a Plan Year in which the certified "AFTAP" is less than 60% (or would be less than 60% taking into account the occurrence of the "unpredictable contingent event"). Notwithstanding the foregoing, "unpredictable contingent event benefits" shall be payable, retroactively effective as of the first day of the Plan Year in which the event occurred, if the Employer makes a contribution for that Plan Year in accordance with the provisions of Treasury Regulations Section 1.436-1(f)(2) to avoid application of the limitation. If the Employer does not make such a contribution, the Plan shall operate as if the "unpredictable contingent event" never occurred and "unpredictable contingent event benefits" with respect to that event shall never be payable from the Plan, even if the certified "AFTAP" for a subsequent Plan Year is 60% or more.

(b)      Presumed "AFTAP" < 60%. If an "unpredictable contingent event" occurs during a Plan Year before the Actuary has certified the "AFTAP" for the Plan Year, no "unpredictable contingent event benefits" shall be payable with respect to that event if either (a) an assumption is in effect under Code Section 436(h) and the presumed "AFTAP" determined under Code Section 436(h), adjusted to take into account the "unpredictable contingent event", is less than 60% or (b) no assumption is in effect under Code Section 436 and the presumed "AFTAP" determined under Treasury Regulations Section 1.436-(1)(g)(3)(ii) is less than 60%. If the actual certified "AFTAP" for the Plan Year is 60% or more, taking into account the occurrence of the "unpredictable contingent event", "unpredictable contingent event benefits", including benefits that were not previously paid, shall be payable with respect to that event.

"Unpredictable contingent event benefits" payable with respect to an event that occurred in a Plan Year during which the above restrictions did not apply are not affected if the "AFTAP" for a subsequent Plan Year is less than 60%.

**19.3    Restriction on Amendments Increasing Benefit Liabilities**

Implementation of a Plan amendment increasing benefit liabilities shall be subject to the rules described in this Section. A Plan amendment increases benefit liabilities if it (i) increases Plan benefits, (ii) establishes new benefits, (iii) changes the rate of benefit accrual, or (iv) changes the rate at which benefits become nonforfeitable.

(a)      Certified "AFTAP" < 80%. No amendment increasing benefit liabilities shall take effect during a Plan Year if the certified "AFTAP" is less than 80% (or would be less than 80% taking into account the amendment). Notwithstanding the foregoing, an amendment shall take effect if the Employer makes an additional contribution for the Plan Year containing

68

the amendment effective date in accordance with the provisions of Treasury Regulations Section 1.436-1(f)(2). For purposes of this paragraph (a), if the amount of the additional contribution determined under Treasury Regulations Section 1.436-1(f)(2) is $0 because the amendment only increases benefits for future periods, the Employer will be treated as having made the additional contribution. The amendment shall be effective as of the later of (1) the effective date of the amendment or (2) the first day of the Plan Year for which the Employer makes the contribution. If the Employer does not make such a contribution, the Plan shall operate as if the amendment was never adopted, even if the certified "AFTAP" for a subsequent Plan Year is 80% or more, unless the amendment specifically provides otherwise.

(b)     Presumed "AFTAP" < 80%. If an amendment increasing benefit liabilities would be effective for a Plan Year before the Actuary has certified the "AFTAP" for the Plan Year, the amendment shall not take effect if either (a) an assumption is in effect under Code Section 436(h) and the presumed "AFTAP" determined under Code Section 436(h), taking into account the amendment, is less than 80% or (b) no assumption is in effect under Code Section 436 and the presumed "AFTAP" determined under Treasury Regulations Section 1.436-(1)(g)(3)(ii) is less than 80%. If the actual certified "AFTAP" for the Plan Year is 80% or more, taking into account the amendment, the amendment shall be effective as of the later of (1) the effective date of the amendment or (2) the first day of the Plan Year.

(c)     Exceptions. Notwithstanding the foregoing, the following amendments shall be treated as not increasing benefits and shall not be subject to the limitations described above:

(1)     An amendment that increases benefits under a formula that is not based on a Participant's compensation shall be treated as not increasing benefit liabilities for purposes of this Section if the rate of the increase is not in excess of the contemporaneous rate of increase in average wages of Participants covered by the amendment. The rate of increase in average wages shall be determined as provided in Treasury Regulations Section 1.436-1(c)(4)(i).

(2)     An amendment or pre-existing Plan provision that accelerates vesting shall be treated as not increasing benefit liabilities for purposes of this Section if such amendment or provision is required for the Plan to qualify under Code Section 401(a). For example, accelerated vesting is permitted to satisfy top-heavy requirements or to meet the requirements of Code Section 411 if there is a partial Plan termination.

(3)     Any other amendment identified by the Commissioner in accordance with Treasury Regulations Section 1.436-1(c)(4)(iii) shall be treated as not increasing benefit liabilities for purposes of this Section.

### 19.4   Restriction on Accelerated Benefit Payments

No "prohibited payment" may be made to a Participant or Beneficiary whose Annuity Starting Date occurs (i) after the applicable "section 436 measurement date" for a Plan Year in which the

69

"AFTAP" is less than 60%, (ii) during any period that the Employer is a debtor in a case under Title 11 of the United States Code (or any similar Federal or State law), unless the Plan's Actuary has certified that the "AFTAP" is at least 100%, or (iii) after the applicable "section 436 measurement date" for a Plan Year in which the "AFTAP" is 60% or more, but less than 80% to the extent the present value of the portion of the benefit that is paid in a "prohibited payment" exceeds the lesser of (I) 50% of the present value of the benefit payable in the optional form that includes the "prohibited payment" or (II) 100% of the Pension Benefit Guaranty Corporation maximum benefit guarantee amount, as defined in Treasury Regulations Section 1.436-1(d)(3)(iii)(C). No more than one "prohibited payment" may be made under clause (iii) with respect to a Participant's Accrued Benefit during any period of consecutive Plan Years to which the limitations under this Section 19.4 apply. For purposes of applying the one-time limit on "prohibited payments," a Participant and any Beneficiary of the Participant (including any alternate payee under a qualified domestic relations order) shall be treated as one person. If the Participant's Accrued Benefit is allocated to an alternate payee and one or more other persons, the amount that may be distributed in accordance with this Section 19.4 shall be allocated among such persons in the same manner as the Accrued Benefit is allocated, unless the terms of the qualified domestic relations order provide otherwise.

Notwithstanding any other provision of this Article to the contrary, the following shall apply:

(a)   Exceptions to Benefit Restrictions: This Section 19.4 shall ***not*** apply:

    (1)   To benefits that may be immediately distributed in accordance with Code Section 411(a)(11) without Participant consent;

    (2)   To payments made to carry out the termination of the Plan in accordance with applicable law; or

    (3)   For any Plan Year if the terms of the Plan as in effect for the period beginning on September 1, 2005 and ending with such Plan Year provide for no benefit accruals with respect to any Participant during such period. This paragraph (3) shall cease to apply as of the date any benefits accrue under the Plan, including any increase in benefits resulting from increases in the Code Section 415(b) limits.

(b)   Options for Postponing Payment During Restricted Periods: If a Participant's or Beneficiary's benefit becomes payable during a period in which payments are restricted in accordance with the provisions of this Section 19.4, the Participant or Beneficiary may only postpone the Annuity Starting Date until the latest date otherwise permitted under the Plan. If clause (iii) applies so that only a portion of the benefit is restricted, a Participant or Beneficiary may not elect separate Annuity Starting Dates with respect to the restricted and unrestricted portions of the benefit.

(c)   Form of Payment During Restricted Periods. If a Participant's or Beneficiary's Annuity Starting Date occurs during a period in which benefit payments are restricted under this Section 19.4, payment shall be made in accordance with the following:

70

**DEBTORS' EXHIBIT NO. 23**
**Page 75 of 82**

(1)    Payment to a Participant:

    (A)    If clause (iii) above does not apply, the Participant may elect payment in the applicable normal form or in any of the optional forms that does not include a "prohibited payment". If the Plan's "AFTAP" increases so that prohibited payments are no longer restricted or are only partially restricted, a Participant whose Annuity Starting Date occurred under the conditions described in this paragraph (A) may not change his prior election of a form of payment.

    (B)    If clause (iii) above does apply, the Participant may elect either:

        (I)    to receive payment of his full benefit in the applicable normal form or in any of the optional forms that would not constitute a "prohibited payment"; or

        (II)    to bifurcate his benefit into restricted and unrestricted portions, as described in Treasury Regulations Section 1.436-1(d)(3)(iii)(D), and receive payment of the unrestricted portion in an optional form that includes a "prohibited payment" and payment of the restricted portion in any form that does not include a "prohibited payment". If the Plan's "AFTAP" increases so that prohibited payments are no longer restricted, a Participant whose Annuity Starting Date occurred under the conditions described in this paragraph (B) may not change his prior election of a form of payment.

(2)    Payment to a Beneficiary:

    (A)    If clause (iii) above does not apply, the Beneficiary may elect payment in any available form that does not include a "prohibited payment". If there is no such form otherwise available under the Plan, payment shall be made to a Beneficiary who is an individual in the form of a single life annuity that is the Actuarial Equivalent of the benefit payable to the Beneficiary in the prohibited form. If the Beneficiary is not an individual, payment shall be made in monthly installments over a period of 240 months that is the Actuarial Equivalent of the benefit payable to the Beneficiary in the prohibited form. If the Plan's "AFTAP" increases so that prohibited payments are no longer restricted or are only partially restricted, a Participant whose Annuity Starting Date occurred under the conditions described in this paragraph (A) may not change his prior election of a form of payment.

    (B)    If clause (iii) above does apply, the Beneficiary may elect either:

        (I)    to receive payment of his full benefit in any available form that does not include a "prohibited payment". If there is no such form

71

**DEBTORS' EXHIBIT NO. 23**
**Page 76 of 82**

otherwise available under the Plan, payment shall be made in accordance with the provisions of paragraph (II) below.

(II)     to bifurcate his benefit into restricted and unrestricted portions, as described in Treasury Regulations Section 1.436-1(d)(3)(iii)(D), and receive payment of the unrestricted portion in an optional form that includes a "prohibited payment" and payment of the restricted portion in any form that does not include a "prohibited payment". If there is no form of payment otherwise available to the Beneficiary that does not include a "prohibited payment", payment of the restricted portion shall be made to a Beneficiary who is an individual in the form of a single life annuity that is the Actuarial Equivalent of the restricted portion of the benefit payable to the Beneficiary in the prohibited form. If the Beneficiary is not an individual, payment of the restricted portion shall be made in monthly installments over a period of 240 months that is the Actuarial Equivalent of the restricted portion of the benefit payable to the Beneficiary in the prohibited form. If the Plan's "AFTAP" increases so that prohibited payments are no longer restricted, a Beneficiary whose Annuity Starting Date occurred under the conditions described in this paragraph (B) may not change his prior election of a form of payment.

## 19.5     Suspension of Benefit Accruals for Plans with Severe Funding Shortfalls

If the Plan's "AFTAP" for a Plan Year is less than 60%, benefit accruals under the Plan shall cease effective as of the valuation date for such Plan Year and no further benefits shall accrue. In addition, the Plan shall not be amended in a manner that would increase Plan liabilities, even if such amendment would otherwise be permitted under Section 19.3.

If accruals are suspended in accordance with this 19.5, benefit accruals shall not recommence unless and until the Plan is amended to provide for such re-commencement; provided, however, that in no event will benefit accruals re-commence prior to the first day of the Plan Year in which the Employer makes a contribution (in addition to any minimum contribution required under Code Section 430) equal to the amount sufficient to result in an "AFTAP" of 60%.

## 19.6     Notice of Restrictions

The Administrator shall provide written notice in accordance with ERISA Section 101(j) to Participants and Beneficiaries within 30 days of certain specified dates if the Plan becomes subject to the restriction described in Section 19.2, 19.4, or 19.5.

## 19.7     Methods to Avoid or Terminate Benefit Restrictions

Code Sections 436(b)(2), (c)(2), (e)(2), and (f) and Treasury Regulations Section 1.436-1(f) prescribe methods by which the Employers may avoid or terminate application of the restrictions described in this Article. These include (i) increasing the Plan assets taken into account in

72

determining the "AFTAP" (e.g., by reducing the prefunding balance or funding standard carryover balance), (ii) making an additional Employer contribution for the current Plan Year that is designated as being made to avoid or terminate benefit restrictions in effect under this Article, or (iii) providing security to the Plan.

## 19.8   Presumed Underfunding

For any Plan Year before the Actuary certifies the Plan's "AFTAP", the Plan shall be presumed to be underfunded in accordance with the following:

(a)   <u>Presumption of Continued Underfunding</u>. If a restriction described in this Article applied to the Plan on the last day of the preceding Plan Year, for the period beginning on the first day of the current Plan Year and ending on the earlier of (i) the date the Actuary certifies the actual "AFTAP" for the current Plan Year or (ii) the date paragraph (b) or (c) below applies to the Plan, the following shall apply:

  (1)   the Plan's "AFTAP" for the current Plan Year is presumed to be the "AFTAP" in effect on the last day of the preceding Plan Year; and

  (2)   the first day of the current Plan Year is the "section 436 measurement date".

(b)   <u>No Certified "AFTAP" on First day of 4th Month</u>. If the Plan's "AFTAP" for the preceding Plan Year was either at least 60%, but less than 70%, or at least 80%, but less than 90%, or the Plan is described in Treasury Regulations Section 1.436-1(h)(2)(ii), and the Actuary has not certified the "AFTAP" for the current Plan Year by the first day of the 4th month of the current Plan Year, for the period beginning on the first day of the 4th month of the current Plan Year and ending on the earlier of (i) the date the Actuary certifies the actual "AFTAP" for the current Plan Year or (ii) the date paragraph (c) below applies to the Plan, the following shall apply:

  (1)   the Plan's "AFTAP" for the current Plan Year is presumed to be the "AFTAP" in effect on the last day of the preceding Plan Year reduced by 10 percentage points; and

  (2)   the first day of the 4th month of the current Plan Year is the "section 436 measurement date".

(c)   <u>No Certified "AFTAP" on First day of 10th Month</u>. If the Actuary either (i) has not certified the Plan's "AFTAP" for the current Plan Year before the first day of the 10th month of such Plan Year or (ii) the Actuary has provided a range certification pursuant to Treasury Regulations Section 1.436-1(h)(4)(ii) prior to such date, but has not certified the Plan's specific "AFTAP" by the last day of the current Plan Year, beginning on the first day of the 10th month of the current Plan Year, the following shall apply:

  (1)   the Plan's "AFTAP" for the current Plan Year is conclusively deemed to be less than 60%; and

73

(2)      the first day of the 10th month of the current Plan Year is the "section 436 measurement date".

During any period in which none of the above presumptions apply to the Plan and the Plan's actuary has not yet issued a certification of the Plan's "AFTAP" for the Plan Year, the limitations under Section 19.3 and Section 19.4 shall be based on the inclusive presumed "AFTAP" for the Plan, calculated in accordance with the rules of Treasury Regulations Section 1.436-1(g)(2)(iii).

74

## ARTICLE XX
## HEALTH CARE SPENDING ACCOUNT PLAN

**20.1    Definitions**

For purposes of this Article XX, the following terms have the following meanings.

(a)    The "**coverage period**" with respect to a "retired participant" means the Plan Year.

(b)    A "**dependent**" means an individual who qualifies as a dependent in accordance with the provisions of the Dalton Corporation Employees Health Benefit Plan (Dalton Corporation and Dalton Corporation, Warsaw Manufacturing Facility – Hourly and Salaried Groups).

(c)    A Participant's "**health care spending account**" means the separate account established by the Administrator to track the Participant's health care contributions and claims.

(d)    A "**qualifying health care expense**" means an expense incurred by a Participant or his "dependent" for medical care, as defined in Code Section 213(d), including an expense that would be eligible for reimbursement under the accident and health coverage provided by the Employer (or the "dependent's" employer) but for application of the deductible or co-payment provisions of the coverage, provided that:

(1)    the expense is not reimbursed by accident and health coverage; and

(2)    the expense id not for elective cosmetic surgery, as defined in Code Section 213(e).

"Qualifying health care expenses" must be incurred during the "coverage period" to be eligible for reimbursement and shall be submitted within 90 days following such "coverage period".

(e)    A "**retired participant**" means a former Employee who is eligible to receive a retirement benefit under Section 5.1 or Section 6.1.

**20.2    Health Care Spending Account**

(a)    The Committee will establish and maintain a "health care spending account" for each Participant. As of each pay period, the Employer shall contribute the following amount to the "health care spending account" for each Participant who is accruing Credited Service pursuant to Article III:

| Date of Contribution | Rate per Hour Worked |
|---|---|
| April 6, 1998 – May 14, 2016 | $0.05 |

75

In addition to the above amount, the Employer will contribute $500 per year to the accumulation fund of each Employee who has at least 30 years of Credited Service on December 31 of each contract year.

(b)     If a Participant terminates employment prior to the date he becomes a "retired participant", his "health care spending account" shall be forfeited following the date the Participant incurs 5 consecutive Breaks in Service. Any forfeiture made in accordance with this Section shall be used to reduce future contributions by the Employer. If, however, a former Participant returns to employment before incurring 5 consecutive Breaks in Service, the "health care spending account" shall be reinstated.

(c)     At such time as "qualifying health care expenses" are reimbursed, a "retired participant's" "health care spending account" will be reduced by an equal amount. In no event, however, shall a "retired participant" be reimbursed for an amount in excess of his "health care spending account".

(d)     As of each December 31, Pension Fund income or loss incurred during the preceding Plan Year shall be allocated to each Participant's "health care spending account". After the Pension Fund income or loss has been determined, it shall be allocated to the "health care spending account" of each Participant in an amount which bears the same ratio to the total amount of the Pension Fund's income or loss as the balance in each such account bears to the balance of the Pension Fund.

## 20.3   Payment of "Qualifying Health Care Expenses"

(a)     A "retired participant" in the Health Care Spending Account Plan may apply to the Administrator for reimbursement of "qualifying health care expenses" by submitting:

  (1)     a written statement that the medical expense has not been reimbursed and is not reimbursable under any other health plan coverage; and

  (2)     a written statement from an independent third party indicating that the expense has been incurred and the amount of the expense.

The reimbursement submission must be made on a form acceptable to the Administrator and include any additional documentation that the Administrator may reasonably request.

(b)     On receipt of satisfactory proof of claim, the Administrator will reimburse the Participant from the Participant's "health care spending account" for "qualifying health care expense" incurred during the "coverage period". Expenses will be paid up to the balance of such account.

(c)     If at the date of death of a "retires participant", a balance remains in his "health care spending account", his Spouse of "dependent" shall be entitled to submit additional "qualifying health care expenses". In no event, however, shall the Spouse or "dependent" be reimbursed for an amount in excess of the "health care spending account".

76

Executed at _____WARSAW_____, ___In___, this __19__ day of

__January__, 2016 .


**Dalton Corporation, Warsaw Manufacturing Facility**

By: _____SBHall_____

Title: __V.P. - H.R - Dalton__