# VEBA TRUST and SCHEDULES

## for Dalton Corporation, Warsaw Manufacturing Facility

## Warsaw, IN

## VEBA Trust and Schedules

### TABLE OF CONTENTS

Section 1.    Definitions. ................................................................................................5

Section 2.    Creation of VEBA Trust. ...................................................................8

Section 3.    Funding of VEBA Trust. ...................................................................8

Section 4.    Benefits. .............................................................................................9

Section 5.    Key Employees. ................................................................................9

Section 6.    Authority of Administrator. .........................................................10

Section 7.    Duties and Authority of Trustee. ................................................10

Section 8.    Standard of Conduct. ...................................................................10

Section 9.    Directions. .......................................................................................11

Section 10.    Selection of Investment Options. .............................................12

Section 11.    Mutual Funds. ...............................................................................13

Section 12.    Trustee Powers. ...........................................................................15

Section 13.    Payments by Trustee. .................................................................16

Section 14.    Fees and Expenses. .....................................................................17

Section 15.    Resignation or Removal. .............................................................18

Section 16.    Failure to Appoint Successor. ...................................................18

Section 17.    Successor Trustee. .......................................................................19

Section 18.    Exempt Purpose; Termination. .................................................19

Section 19.    Recordkeeping and Administrative Services. .........................20

Section 20.    Electronic Services. .....................................................................22

Section 21.    Data Privacy. .................................................................................23

Section 22.    ERISA Claims/Appeals. ...............................................................24

Section 23.    Indemnification. ...........................................................................24

Section 24.    Plan Benefit Claims Litigation. ..................................................25

Section 25.    Amendment of Trust Agreement. .............................................26

Section 26.    Duration. ........................................................................................26

Section 27.    Not an Insurer or Guarantor. ....................................................26

Section 28.    Notices of Resignation, Removal, and Termination. ..............26

Section 29.     Assignment. .................................................................................26

Section 30.    Force Majeure. ..............................................................................27

Section 31.    Confidentiality. .............................................................................27

Section 32.    General. ..........................................................................................28

## VEBA Trust and Schedules

Section 33.   Governing Law ................................................................. 29

Schedule A   Investment Options and Related Services .................................................. 29

Schedule B   Fees for Trust Services .............................................................. 30

Schedule C   Employer's and Trustee's Contact Information ......................................... 31

## VEBA Trust and Schedules

THIS TRUST AGREEMENT is made and entered into as of the Effective Date by and between Dalton Corporation, Warsaw Manufacturing Facility (the "Employer") and TIAA Trust, N.A. (the "Trustee"), having an office at 8500 Andrew Carnegie Boulevard, Charlotte, North Carolina 28262.

**WITNESSETH:**

**WHEREAS,** the Employer has established and may establish in the future certain employee welfare benefit plans providing certain health insurance and medical expense reimbursement benefits for eligible retired employees of the Employer and (to the extent permitted by the plan) their eligible spouses, domestic partners, and dependents; and

**WHEREAS,** the Employer is wishes to offer a TIAA Retirement Health Plan under the TIAA Retirement Healthcare Program (the "TIAA Program"), and is appointing Teachers Insurance and Annuity Association of America ("TIAA") as third-party administrator and recordkeeper; and

**WHEREAS,** the Employer wishes to utilize the Trust in connection with the Plan, and intends to make contributions to the Trust to fund all or part of the benefits for all or some of the Participants in the Plan; and

**WHEREAS,** the Employer intends that the Trust qualify as a "voluntary employees' beneficiary association," which is exempt from taxation to the extent permitted under sections 501(c)(9) and 512 of the Internal Revenue Code of 1986, as amended (the "Code"); and

**WHEREAS,** the Trustee is willing to hold the aforesaid plan assets in trust and invest the plan assets as directed among investment options selected by the Employer; and

**WHEREAS,** the Employer wishes to have the Trustee provide trust services as a directed trustee, perform certain ministerial recordkeeping and administrative functions in coordination with TIAA, and cooperate with other third-party service providers to provide services to the Plan and the Trust established and maintained under the TIAA Program; and

**WHEREAS,** the Trustee is willing to provide such trust services in its role as directed trustee and to perform certain recordkeeping and administrative functions in coordination with TIAA, if the services

are purely ministerial in nature and/or properly directed by the Employer in its capacity as the Named Fiduciary and/or the Administrator, and such services are provided within a framework of plan provisions, guidelines and interpretations conveyed in writing by the Employer to the Trustee; and

WHEREAS, the Trustee is willing to work cooperatively with TIAA and various third party service providers with whom TIAA has contracted.

NOW, THEREFORE, the Employer and the Trustee agree as follows:

Section 1.    Definitions.

The following terms as used in this Agreement have the meaning indicated unless the context clearly requires otherwise:

(a)    "ACH" means Automated Clearing House.

(b)    "Administrator" means the Employer or such other person or committee as may be appointed by the Employer to supervise the administration of the Plan in accordance with section 3(16)(A) of ERISA.

(c)    "Agreement" means this Trust Agreement and the Schedules attached hereto, as the same may be amended and in effect from time to time.

(d)    "Business Day" means each day the NYSE is open.

(e)    "Code" means the Internal Revenue Code of 1986, as it has been or may be amended from time to time.

(f)    "Confidential Information" means any and all written, oral, and visual trade secrets or business information of a party that, under the relevant facts and circumstances, may be considered confidential by a reasonable, prudent business person, including, but not limited to, inventions, know-how, business affairs, prospect lists, templates, product designs, product plans, business strategies, finances, fee structures and other proprietary information.

(g)    "EDT" means electronic data transfer via an electronic portal maintained by the Trustee and/or TIAA through which portal TIAA collects data and assets from the Employer and Administrator, and

5

TIAA transmits and receives data from the Third Party Disbursement Service Provider relating to the provision of retiree welfare benefits, including, but not limited to, reimbursements of qualified medical expenses.

(h)     "Effective Date" means the August 1, 2025 (the "Effective Date"), which is the first day services are performed under this Agreement.

(i)     "ERISA" means the Employee Retirement Income Security Act of 1974, as it has been or may be amended from time to time.

(j)     "Fiscal Year" means the calendar year.

(k)     "HIPAA" means the Health Insurance Portability and Accountability Act of 1996, as it has been or may be amended from time to time.

(l)     "In Good Order" means in a state or condition acceptable to the Trustee in its sole discretion, which the Trustee determines is reasonably necessary for accurate execution of the intended transaction.

(m)     "Mutual Funds" means the mutual funds selected by the Named Fiduciary from amongst those made available under the TIAA Program and identified in a Direction as defined in Section 9 and 10 of this Agreement, from the Employer to the Trustee.

(n)     "Named Fiduciary" means the "named fiduciary" (within the meaning of section 402(a) of ERISA), which shall be the Employer unless otherwise set forth in the Plan document.

(o)     "NYSE" means the New York Stock Exchange.

(p)     "Participant" means, with respect to the Plan, any employee, former employee, or alternate account holder with an account under the Plan, which has not yet been fully distributed and/or forfeited, and shall include (to the extent permitted by the Plan) the designated spouse, domestic partner, and/or dependents with respect to the account of any deceased employee or former employee until such account has been fully distributed and/or forfeited.

(q)     "Personal Data" means data relating to a specific individual, including, but not limited to,

compensation, benefits, tax, marital/family status and other similar information about a Participant, his or her spouse, domestic partner, and dependents.

(r)       "Plan" means the Dalton Corporation, Warsaw Manufacturing Facility Pension Plan – Healthcare Spending Account for the Employer, the terms of which are set forth in the Plan document, its accompanying adoption agreement, and any amendments thereto, providing, in whole or in part, medical expense reimbursement benefits to eligible Participants and (to the extent permitted by the Plan) their eligible spouses, domestic partners, and dependents, which is an "Employee Welfare Benefit Plan" within the meaning of Section 3(1) of ERISA (and as such, is subject to the requirements of Parts 1 and 4 of Subtitle B, Title I of ERISA), to be funded, in whole or in part, through the Trust established pursuant to the terms of this Agreement.

(s)       "Reporting Date" means the last day of each fiscal quarter of the Plan and, if not on the last day of a fiscal quarter, the date as of which the Trustee resigns or is removed pursuant to Section 15 hereof or the date as of which this Agreement terminates pursuant to Section 18 hereof.

(t)       "Third Party Disbursement Service Provider" means the entity (or entities) providing third party administrative and disbursement services to Employers and Participants in the TIAA Program relating to the administration of the welfare benefits provided under the terms of the Plan and the adjudication and processing of qualified medical expense claims submitted by Participants.

(u)       "TIAA" means Teachers Insurance and Annuity Association of America, a New York stock life insurance company.

(v)       "TIAA Program" means the TIAA Retirement Healthcare Program, the collection of documents and services provided by TIAA, the Trustee, and any third parties.

(w)       "Trust" means this VEBA Trust for the Plan for the Employer, being the trust operated pursuant to the provisions of this Agreement.

(x)       "Trust Fund" means all sums of money or other property acceptable to the Trustee as may, from time to time, be paid or delivered to the Trustee, or transferred from other funding agents,

7

together with all earnings, profits, increments and accruals thereon, without distinction between principal and income, less the payments which at the time of reference will have been made by the Trustee as authorized herein.

(y)    "Trustee" means TIAA Trust, N.A. and any successor to all or substantially all of its trust business as described in Section 17.  The term Trustee shall also include any successor trustee appointed pursuant to Section 17 to the extent such successor trustee agrees to serve as Trustee under this Agreement.

**Section 2.        Creation of VEBA Trust.**

The Employer, having established the Plan for the purpose stated therein, hereby operates the Trust, subject to the terms of this Agreement, to be funded by Employer contributions or certain employee after-tax contributions, as permitted under the terms of the Plan.  The Trust shall operate on the Fiscal Year set forth above.  The Employer intends that the Trust qualify as a "voluntary employees' beneficiary association," which is exempt from taxation to the extent permitted under Code Sections 501(c)(9) and 512.  The Employer acknowledges its obligation to prepare and file Form 1024 and attachments with the Internal Revenue Service for the purpose of establishing the  Trust's qualified status under Code Section 501(c)(9).  The Trustee hereby accepts the Trust on the terms and conditions set forth in this Agreement.  In accepting this Trust, the Trustee shall hold the Trust Fund in trust and be accountable for the assets received by it, subject to the terms and conditions of this Agreement.

**Section 3.        Funding of VEBA Trust.**

The Trust shall be funded by contributions in such forms as permitted under the Plan and such amounts as the Employer determines are necessary and appropriate to fund the benefits, costs, and expenses of the Plan.  The Employer shall establish a funding policy for the Trust in accordance with the provisions of the Plan, which shall be stated in the Plan's adoption agreement, and it shall provide such funding policy, and any revisions thereto, to the Trustee as soon as practicable following its adoption or revision. The Trustee (or its delegee) shall establish for each Participant a separate account in accordance

with the terms of the Plan and, if necessary, a forfeiture account held in accordance with the terms of the Plan. No Participant (and no Participant's spouse (or domestic partner), dependent child, or dependent relative) shall have any right to amounts held in the account of any other Participant, in any forfeiture account, or in the general assets of the Trust, if any, except as expressly provided under the Plan. Benefits or premiums funded through this Trust shall be paid out of Trust assets alone and nothing herein shall give any Participant, spouse, domestic partner, dependent child, or dependent relative the right to any benefit or premium payment from the Employer or the Trustee. Employer contributions may be made in cash or in other property acceptable to the Administrator and the Trustee, subject to the requirements of the Code, ERISA and other applicable law.

**Section 4.          Benefits.**

(a)          The benefits to be funded through this Trust shall be the benefits set forth in the Plan and the other costs and expenses of the Plan. The Employer by itself and through its agents, including its Administrator(s), will administer the Plan as provided therein, and the Trustee will have no duty related to, and will not be responsible in any respect for, the administration of the Plan, nor will the Trustee be responsible for the adequacy of contributions to the Trust to meet or discharge any payments or liabilities under the Plan. The Trustee will be entitled conclusively to rely upon any notice, instruction, direction or other communication from the Employer or Administrator, subject to any other provisions of this Agreement to the contrary.

(b)          The Trustee shall not be responsible for the validity of any contract of insurance issued in connection with the Plan or Trust or held in the Trust (and under which benefits are provided), its pricing, the failure on the part of the insurer to make payments or provide coverage in accordance with the terms of such contract or the financial condition or insolvency of the insurance companies issuing the contracts.

**Section 5.          Key Employees.**

Notwithstanding any provisions of the Plan to the contrary, medical benefits within the meaning of Code Section 419A(d)(1) shall not be paid out of the Trust to or on behalf of any key employee within

9

the meaning of Code Section 416(i), unless a separate account has been established and maintained for such benefits, and the benefits or premiums for such benefits are paid solely from that separate account.

**Section 6.**       **Authority of Administrator.**

The Administrator shall have the authority and discretion to decide all benefit claims and disputes of any nature arising out of the Plan, and such decisions shall be final and binding on all Participants, their spouses (or domestic partners), dependent children, and dependent relatives in the absence of clear and convincing evidence that the Administrator acted arbitrarily and capriciously.  Under no circumstances shall TIAA or the Trustee be considered the Administrator for any purpose under this Agreement.

**Section 7.**       **Duties and Authority of Trustee.**

(a)       Subject to the Employer's funding policy, the provisions of the Plan (which the Employer or Administrator has provided to the Trustee), and the Participants' investment directions communicated to the Trustee from time to time, the Employer hereby directs and authorizes the Trustee (i) to hold, invest and reinvest the Trust Fund in accordance with the provisions of this Agreement; (ii) to pay monies from the Trust Fund to, or on order of, the Administrator in accordance with Section 13; and (iii) to pay the expenses of the Plan and Trust in accordance with Section 14.

(b)       The Employer recognizes that the Trustee is a wholly-owned subsidiary of TIAA, and in accordance with Section 32(a) of this Agreement, authorizes the Trustee (i) to engage TIAA and/or any subsidiary or affiliate of TIAA (collectively, TIAA and such entities are hereinafter referred to as an "Affiliate") to perform services hereunder; and (ii) to the extent consistent with the attached Schedule A and any Directions the Trustee shall receive, to invest any part of the Trust assets in any financial instrument or investment vehicle sold, managed, advised or currently distributed, underwritten or issued by any Affiliate including, but not limited to, money market funds and other mutual funds.

**Section 8.**       **Standard of Conduct.**

Subject to the other provisions of this Agreement, the Trustee shall discharge its duties with respect to the Trust solely as a directed trustee under ERISA and shall act: (a) for the exclusive purpose of

providing benefits to Participants and their spouses (or domestic partners), dependent children, and dependent relatives, and defraying reasonable expenses of administering the Plan and Trust; (b) with  the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a   like character and with like aims; and (c) in accordance with the documents and instruments governing the Plan and Trust insofar as such documents and instruments are consistent with the provisions of ERISA and have been provided to the Trustee in writing.  The Trustee is not required to be bonded under Section 412 of ERISA.

**Section 9.        Directions.**

The Administrator shall provide to the Trustee such data, documents, policies, instructions, interpretations, rules, practices and procedures within its possession or control with respect to the Plan and/or services required or requested to enable the Trustee to perform the services in accordance with this Agreement, including a copy of the Plan document, its accompanying adoption agreement, and any amendments thereto (individually and collectively, "Directions").  Such Directions shall be given by the Administrator in such time and manner as the Trustee may from time to time require.  The Employer authorizes and directs the Trustee to accept and act upon any Directions which the Administrator provides to the Trustee, subject to the provisions of this Agreement.  The Trustee may, in its sole discretion, refuse to honor a Direction if it is not made or confirmed in writing, or by other acceptable electronic means, or if it conflicts with applicable law or with any provision of this Agreement.  Notwithstanding the foregoing, the Trustee shall have no responsibility to ascertain the accuracy or appropriateness of any Direction.

The Employer and/or the Administrator (or TIAA, to the extent the authority to do so has  been delegated by the Employer to TIAA in a written document that has been properly executed) shall: (i) interpret the provisions of the Plan; and (ii) verify and ensure that all Directions provided by the Employer and the Administrator to the Trustee in relation to the Trustee's services are consistent with the applicable terms of such Plan.  The Employer shall provide written notice to the Trustee of those individuals

11

authorized on behalf of the Employer and the Administrator to provide Directions to the Trustee with respect to the Employer's Plan or the TIAA Program.  The Employer and the Administrator shall provide the Trustee with immediate written notice of the termination or suspension of any such individual's authority to provide Directions to the Trustee. Any such notice shall include, but not be limited to, the individual's name and all other relevant information the Trustee needs to prevent the Trustee from accepting Directions from such individual.  For purposes of this Agreement, Directions may be given in writing or via facsimile or EDT in accordance with procedures agreed to by the Employer and the Trustee. The Trustee shall be fully protected in relying on such Direction provided by facsimile or EDT as if it were a Direction made in writing to the Trustee.

**Section 10.** **Selection of Investment Options.**

(a)     Under the terms of the TIAA Program, the Named Fiduciary is responsible for selecting Mutual Funds to be utilized as investment options for Participants in its Plan from a menu of Mutual Funds made available under the TIAA Program ("TIAA Menu"). The Named Fiduciary's selected Mutual Funds will be identified in accordance with Schedule A and in Directions sent to the Trustee and may be updated from time to time. Trust assets shall be invested exclusively in the selected Mutual Funds.

(b)     TIAA may add or remove Mutual Funds from the TIAA Menu from time to time after providing advance notice to the Named Fiduciary and the Employer. If a Mutual Fund is added to the TIAA Menu, the prospectus will be delivered to the Named Fiduciary, Employer, and Participants, as applicable, prior to such change in the manner described in Section 11. If a Mutual Fund in which the assets of the Trust are invested is removed from the TIAA Menu, TIAA shall provide notice thereof to the Named Fiduciary and the Employer, which notice shall describe the responsibilities of the Named Fiduciary and the Employer.

(c)     If the Named Fiduciary chooses to add an investment fund option to its Plan from among the Mutual Funds on the TIAA Menu, the Named Fiduciary shall issue a Direction to the Trustee in the manner requested by the Trustee. If the Named Fiduciary chooses to remove an investment fund option

**VEBA Trust and Schedules**

from its Plan, it shall similarly issue a Direction to the Trustee.

(d)      Each Participant shall direct the Trustee, in such time and manner as the Trustee may require, as to how Trust assets in his or her account shall be allocated from time to time among the investment options. Such directions by each Participant shall constitute Directions as defined in Section 9. Any Direction by Participants relating to such allocation shall be subject to the Trustee's administrative requirements in effect from time to time, including but not limited to, the Trustee's requirements relating to the frequency of Directions relating to such allocation, the Trustee's requirements (or those of the Mutual Fund or recordkeeper) relating to the minimum and maximum limitations on the dollar value of such transactions, the manner in which the Trustee is to be notified of any such Directions, and the date such Directions shall be effective. The Trustee shall be under no duty to question any Direction of a Participant and the Trustee shall be fully protected from acting in accordance with such Direction. Such Directions may be made by Participants by use of the call center, the voice response system, the internet or in such other manner as may be agreed upon from time to time by the Employer and the Trustee. The Trustee shall not be liable for any loss or expense that arises from a Participant's exercise or non-exercise of rights under this Section 10 over the assets in the Participant's accounts, except to the extent the Trustee fails to properly act upon a Participant's proper Direction. The Named Fiduciary hereby directs that in the event that the Trustee fails to receive a proper Direction from the Participant, the assets shall be invested in the default investment options established for the TIAA Program by TIAA and set forth in accordance with Schedule A until the Trustee receives a proper Direction from the Participant.

(e)      The Trustee shall have no responsibility for the selection of the investment options or the allocation of Trust assets in the investment options, and the Trustee shall not offer or provide investment advice to any person in connection with the selection or allocation of such investment options.

**Section 11.      Mutual Funds.**

(a)      <u>Prospectus Delivery to Employer</u>.   On the Effective Date of this Agreement, in lieu of receiving a printed copy of the prospectus for each Mutual Fund that the Named Fiduciary has selected

**DEBTORS' EXHIBIT NO. 24**
**Page 13 of 34**

as an investment option for its Plan, the Employer hereby consents to receiving such documents electronically.  The Trustee represents that on the Effective Date of this Agreement, a current version of each such prospectus is available at http://www.tiaa.org or such successor website as the TIAA may notify the Employer in writing from time to time.  The Employer shall be responsible for accessing each prospectus on the internet after receiving notice from the TIAA that a current version is available online at a website maintained by the Trustee or its affiliates.  Notwithstanding the foregoing, the Employer is free to request a paper copy of such documents at any time.

(b)	Prospectus Delivery to Participants.  The Trustee represents that TIAA and its affiliates shall ensure the delivery of the prospectus for each Mutual Fund that is made available under the Plan (in accordance with Section 10)  to Participants (and each spouse, domestic partner, or dependent who  is authorized, pursuant to Plan provisions, to direct investments after a Participant dies) and to provide each of them an opportunity to elect to receive a printed copy of the prospectuses, or consent to  receive such documents electronically in a manner consistent with the requirements of the Investment Company Act of 1940 and ERISA.

(c)	Execution of Purchases and Sales.  The Trustee shall execute the purchase and sale of mutual fund shares if such purchase(s) and sale(s) are based on a proper Direction under the Plan and this Agreement from the Participant.  Purchases and sales of mutual funds shall be made on the date on which the Trustee receives from the Employer or Participant In Good Order all information, documentation and wire transfer of funds (if applicable), necessary to accurately effect such transactions.

(d)	Voting.  At the time of mailing of notice of each annual or special stockholders' meeting of any Mutual Fund, the Trustee shall send a copy of the notice and all proxy solicitation materials to each Participant who has shares of such Mutual Fund credited to the Participant's accounts, together with a voting Direction form for return to the Trustee or its designee.   The Participant shall have the right to direct the Trustee as to the manner in which the Trustee is to vote the shares credited to the Participant's accounts. The Trustee shall vote the shares as directed by the Participant.  The Trustee  shall not vote

shares for which it has received no timely Directions from the Participant.

(e)     Rights Other Than Voting.  With respect to all rights other than the right to vote under subsection (d) above, the Trustee shall follow the Directions of the Participant and if no such Directions are received, the Directions of the Employer; provided, however, that the Trustee shall not have any duty to solicit Directions from the Employer, the Administrator, the Participants, or any other person or entity, and shall not be liable for failing to solicit any Directions at any time.

**Section 12.     Trustee Powers.**

Subject to the other provisions of this agreement, the Trustee shall have the following powers and authorities:

(a)        To sell, exchange, convey, transfer, or otherwise dispose of any property held in the Trust, by private contract, or at public auction.  No person dealing with the Trustee shall be bound to see to the application of the purchase money or other property delivered to the Trustee or to inquire into the validity, expediency, or propriety of any such sale or other disposition.

(b)        To designate and hold property with a sub-custodian, subject to the Trustee's reasonable care in selecting such sub-custodian.  The Trustee shall not be liable for any failure or losses from a sub-custodian, except to the extent any failure or loss is the result of the Trustee's negligence or willful misconduct in exercising reasonable care in its selection of a sub-custodian.

(c)     To cause any securities or other property held as part of the Trust to be registered in the Trustee's own name, in the name of one or more of its nominees, or in the Trustee's account with the Depository Trust Company of New York or any other similar institution and to hold any investments in bearer form, but the books and records of the Trustee shall at all times show that all such investments are part of the Trust.

(d)     To keep that portion of the Trust in cash or cash balance as the Employer or Administrator may, from time to time, deem to be in the best interest of the Trust.

(e)     To make, execute, acknowledge, and deliver any and all documents of transfer or

conveyance and to carry out the powers herein granted.

(f)      As and when directed by the Employer or Administrator, to borrow funds from a bank not affiliated with the Trustee in order to provide sufficient liquidity to process Plan transactions in a timely fashion, provided that the cost of borrowing shall be allocated in a reasonable fashion to the investment fund(s) in need of liquidity.

(g)      As and when directed by the Employer or Administrator, to settle, compromise, or submit to arbitration any claims, debts, or damages due to or arising from the Trust; to commence or defend suits or legal or administrative proceedings; to represent the Trust in all suits and legal and administrative hearings, subject to Sections 23 and 24, and to pay all reasonable expenses arising from any such action from the Trust if not paid by the Employer.

(h)      To employ legal, accounting, clerical, and other assistance as may be required in  carrying out the provisions of this Trust Agreement, subject to the privacy provisions at Section 21, and to pay their reasonable expenses and compensation from the Trust if not paid by the Employer.

(i)      To do all other acts although not specifically mentioned herein, as the Trustee may deem necessary to carry out any of the foregoing powers and the purposes of the Trust.

**Section 13.      Payments by Trustee.**

The Trustee shall pay monies from the Trust Fund, as the Administrator shall from time to time direct (to the extent permitted by the Plan), for the purpose of (1) distributing to Participants and their spouses (or domestic partners), dependent children, and dependent relatives the benefits due them under the Plan, (2) paying for benefits administration services, including but not limited to, recordkeeping and services related thereto; and (3) paying any taxes which may be payable or assessed related to this Trust or its assets.

(a)      To facilitate such distributions and payments for this Plan and other welfare benefit plans established under the TIAA Program, the Trustee may establish a disbursement account to and from which all disbursements shall be made based on the current market values of the assets being disbursed, not

advanced or estimated values.

(b)      The Administrator's Direction(s) shall be in such form as the Trustee may from time to time require.  Directions from the Third Party Disbursement Service Provider to pay qualified medical expense reimbursements under the terms of the Plan from the account(s) of a Participant shall constitute Directions by the Administrator to pay such reimbursements, and the Trustee shall be fully protected in relying on such Directions.

(c)      Under no circumstances shall TIAA be considered the Administrator for purposes of this Section 13, and under no circumstances shall TIAA have any authority to direct the Trustee to pay any monies from the Trust Fund.  Under no circumstances shall the Third Party Disbursement Service Provider acting on a nondiscretionary basis solely at the Direction of the Administrator be considered the Administrator.

**Section 14.      Fees and Expenses.**

The Employer and the Trustee agree that the Trustee's compensation for its services hereunder shall be paid to the Trustee by TIAA as set forth in the attached Schedule B.  The Employer directs the Trustee to pay the respective fees of TIAA and the Third-Party Disbursement Service Provider within 30 days of the date the payment is due.  Notice of any fee increase provided to the Employer, if considered unacceptable by the Employer, shall constitute the Trustee's notice of resignation effective 60 days after the delivery of such notice in accordance with Section 15.  All expenses properly incurred by the Trustee in the performance of its duties hereunder, and all other proper charges and disbursements of the Trustee, including disbursements to the Third Party Disbursement Service Provider of its fees, and all taxes of any and all kinds whatsoever, including interest and penalties, that may be levied or assessed under existing or future laws of any jurisdiction upon or in respect of the Trust hereby created or the Trust Fund or any money, property or securities forming a part thereof, shall be paid by the Trustee out of the Trust Fund, unless paid by the Employer in whole or in part, and the same, to the extent that they are not paid by the Employer, shall constitute a charge upon the Trust Fund.

17

**Section 15.**     **Resignation or Removal.**

The Trustee may resign at any time upon 60 days' advance notice in writing to the Employer or upon such other period of notice as may be satisfactory to the Employer and the Trustee, except that in the event that the Trust is determined to be a taxable trust by the Internal Revenue Service or other authority, the Trustee may resign as of the date of such determination. Notwithstanding anything in this Agreement to the contrary, the Trustee reserves the right to resign effective on the effective date of the termination of TIAA's services as record keeper for Employer.

In the event of a material breach of this Agreement by the Trustee, the Employer may remove the Trustee upon 60 days' advance notice in writing to the Trustee or upon other such period of notice as may be satisfactory to the Trustee. In the event that the Employer withdraws from the TIAA Program, the Trustee may resign upon 60 days' advance notice to the Employer, and, if the Trustee so resigns, the Employer bears responsibility for identifying an independent trustee for any continuing trust arrangements for its Plan.

Upon the notice of removal or resignation of the Trustee, the Employer shall within 60 days appoint and designate a successor Trustee who shall qualify as such by delivering a written acceptance of the Trust to the Employer. The Trustee who has resigned shall take such action, including the execution of such instruments of assignment and transfer and other documents, as may reasonably be requested by the Employer in order to confirm the title of the successor Trustee to the assets of the Trust Fund. Any such resignation or removal will be effective upon the Trustee's receipt of the successor trustee's acceptance to serve as such under this Agreement.

**Section 16.**     **Failure to Appoint Successor.**

If, by the termination date, the Employer has not notified the Trustee in writing, or electronically if acceptable to the Trustee, as to the individual or entity to which the Trust assets and cash are to be transferred and delivered, the Trustee may bring an appropriate action or proceeding for leave to deposit the Trust assets and cash with a court of competent jurisdiction, resign as Trustee, and  terminate all

services under this Agreement.  The Trustee shall be reimbursed by the Employer for all costs and expenses of any such action or proceeding including, without limitation, reasonable attorneys' fees and disbursements.

**Section 17.**     **Successor Trustee.**

(a)     Rights and Powers.  The successor trustee shall have all of the rights, powers, privileges, obligations, duties, liabilities, and immunities granted to the Trustee under this Agreement.  The successor trustee and predecessor trustee shall not be liable for the acts or omissions of the other with respect to the Trust.  No successor trustee shall be required to audit the books, records and actions of any predecessor trustee.

(b)     Acceptance.  As of the date the successor trustee accepts its appointment under this Agreement, title to and possession of the Trust assets shall immediately vest in the successor trustee without any further action on the part of the predecessor trustee, except as may be required to evidence such transition.  The predecessor trustee shall execute all instruments and do all acts that may be reasonably necessary and requested in writing by the Employer or the successor trustee to vest title to all Trust assets in the successor trustee or to deliver all Trust assets to the successor trustee.

(c)     Corporate Action.  Any successor to the Trustee or successor trustee, either through sale or transfer of the business or trust department of the Trustee or successor trustee, or through reorganization, consolidation, or merger, or any similar transaction of either the Trustee or successor trustee, shall, upon consummation of the transaction, become the successor trustee under this Agreement.

**Section 18.**     **Exempt Purpose; Termination.**

The Trust will be operated only for the purpose of providing benefits permitted under Section 501(c)(9) of the Code and under no circumstances shall any part of the Trust be used for, or diverted to, purposes other than for the exclusive purpose of providing such benefits to eligible Participants and their eligible spouses, domestic partners, and dependents and paying reasonable expenses of the Plan and

19

Trust.  In the event of the termination of the Plan and Trust, any assets remaining after the satisfaction of all liabilities and expenses of the Plan shall be applied by the Trustee, in accordance with the Directions of the Employer, to provide one or more benefits permitted under Code Section  501(c)(9).

**Section 19.**        **Recordkeeping and Administrative Services.**

(a)        General.  The recordkeeping and administrative services relating to the Plan shall be provided by TIAA pursuant to a Recordkeeping Agreement between Employer and TIAA.   These services shall be performed within the framework of the Administrator's directions to the Trustee and TIAA, provided in a form and manner acceptable to the Trustee and TIAA, regarding the Plan's provisions, guidelines and interpretations.  The Trustee and TIAA shall not perform any service that might cause the Trustee and TIAA, in its sole judgment, to be deemed to: (i) exercise any discretionary authority or discretionary control respecting management of the Plan or exercise any authority or control respecting management or disposition of its assets; (ii) render investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such Plan, or have any authority or responsibility to do so; or (iii) have any discretionary authority or discretionary responsibility for the administration of the Plan.

(b)        Accounts. The Trustee shall keep accurate accounts of all investments, receipts, disbursements, and other transactions hereunder, and shall report the value of the assets held in the Trust as of each Reporting Date.  Within thirty (30) days following each Reporting Date or within sixty (60) days in the case of a Reporting Date caused by the resignation or removal of the Trustee, or the termination of this Agreement, the Trustee shall file with the Employer a written account setting forth  all investments, receipts, disbursements, and other transactions effected by the Trustee between the Reporting Date and the prior Reporting Date, and setting forth the value of the Trust as of the Reporting Date.  The Employer shall use all reasonable efforts to bring to the Trustee's attention, as soon as possible, any concerns or objections it may have relating to the accounts.  Notwithstanding the preceding sentence and except as otherwise required under ERISA, upon the expiration of twelve (12) months from the date

of filing such account with the Employer, the Trustee shall have no liability or further accountability to the Employer with respect to the propriety of its acts or transactions shown in such account (or any Participant-level report provided to a Participant), except with respect to such acts or transactions as to which a written objection shall have been filed with the Trustee within such twelve (12) month period.

(c)    Inspection and Audit.  Prior to the termination of this Agreement, all records generated by the Trustee in accordance with subsections (a) and (b), above, shall be open to inspection and audit by the Administrator or any persons designated by the Administrator, during the Trustee's regular business hours upon reasonable advance notice (but not less than 5 business days) and subject to the Trustee's audit procedures as in effect from time to time.  During the term of this Agreement, the Trustee shall maintain records created or received by on behalf of the Trust and necessary for the ongoing recordkeeping of the Plan for a period of seven (7) years or such longer period as may be required to provide for the ongoing operation of the Plan.  Upon the resignation or removal of the Trustee or the termination of this Agreement, TIAA or the Trustee shall provide to the Employer, at no expense to the Employer, in the format regularly provided to the Employer, a statement of each Participant's accounts as of the resignation, removal, or termination, and TIAA or the Trustee shall provide to the Employer  or the Plan's new recordkeeper such further records as may be reasonably requested, at the Employer's expense.

(d)    Returns, Reports and Information.    Except as  otherwise agreed to between Employer and TIAA, the Employer shall be responsible for the preparation and filing of all returns, reports and information required of the Trust or Plan by law. The Trustee shall provide the Employer with such information as the Employer may reasonably request in connection with these filings.  Except as specifically stated elsewhere in this Agreement, the Employer shall also be responsible for making any disclosures to Participants which may be required by law.

(e)    Information and Data Exchange with Third Party Service Providers to the TIAA Program.  In the event that TIAA  engages one or more third parties to provide recordkeeping and/or other administrative services to Employers, Plans and/or Participants under the TIAA Program (regardless

21

whether such services are in addition to or in lieu of those services provided by the Trustee, TIAA, or the Third Party Disbursement Service Provider) the Trustee shall facilitate the timely provision of information and data to such third parties in accordance with industry standards.  In such cases, a direction issued by TIAA to the Trustee regarding the transmission of such information and data to the third party service provider, which is issued after TIAA has provided written notice of the introduction of the third party service provider to the Employer, shall be deemed a Direction from the Administrator to the Trustee.  In no event, however, shall the Trustee transfer information or data to any third-party service provider, except in accordance with the requirements of Section 21.

**Section 20.**      **Electronic Services.**

(a)            The Trustee may provide services and communications to the Employer and Participants via electronic media, including, but not limited to services delivered via www.tiaa.org, ("Electronic Services").  The Employer agrees to use such Electronic Services only in the course of its reasonable administration of or participation in the TIAA Program and to keep confidential and not alter, publish, copy, broadcast, retransmit, reproduce, link to, commercially exploit or otherwise re-disseminate the Electronic Services, any content associated therewith, or any portion thereof  (including, without limitation, any trademarks and service marks associated therewith), without the written consent of the Trustee. To the extent permission is granted to make Electronic Services available to administrative personnel designated by the Employer, it shall be the responsibility of the Employer to keep the Trustee informed of which Employer personnel are authorized to have such access.  Except to the extent otherwise specifically agreed by the parties, the Trustee reserves the right, upon notice when  reasonably feasible, to modify or discontinue Electronic Services, or any portion thereof, at any time.

(b)            Without limiting the responsibilities of the Trustee or the rights of the Employer stated elsewhere in this Agreement, Electronic Services shall be provided to the Employer without acceptance of legal liability related to or arising out of the electronic nature of the delivery or provision of such Electronic Services.  To the extent that any Electronic Services utilize internet services to transport data or

communications, the Trustee will take, and the Employer agrees to follow, reasonable security precautions consistent with industry standards.  However, the Trustee disclaims any liability for interception of any such data or communications, except as a result of the Trustee's negligence, bad faith, or willful misconduct in accordance with Section 23.  The Trustee reserves the right not to accept data or communications transmitted electronically or via electronic media by the Employer or a third party if it determines that the method of delivery does not provide adequate data security, or if it is not administratively feasible for the Trustee to use the data security provided.  Notwithstanding the terms of Section 23, the Trustee shall not be responsible for, and makes no warranties regarding access, speed or availability of Internet or network services, or any other service required for electronic communication, nor does the Trustee make any implied warranties of merchantability, fitness for a particular purpose, or non-infringement.

(c)      The Employer acknowledges that certain web sites through which the Electronic Services are accessed may be protected by passwords or require a login, and the Employer agrees that neither the Employer nor, where applicable, Participants, will obtain or attempt to obtain unauthorized access to such Electronic Services or to any other protected materials or information, through any  means not intentionally made available by the Trustee for the specific use of the Employer.

**Section 21.      Data Privacy.**

(a)      General.  In order to fulfill its obligations under this Agreement, the Trustee may receive Personal Data.  The Trustee acknowledges that it is receiving Personal Data only in connection with the performance of the services it provides in connection with this Agreement and the TIAA Program. The Trustee shall maintain Personal Data in full compliance with the terms of the Recordkeeping Agreement between TIAA and the Employer.  The Trustee shall not use or disclose Personal Data without the permission of the Employer, TIAA (to the extent authorized under the Recordkeeping Agreement) or the Participant for any purpose other than fulfilling its obligations under this Agreement.  Notwithstanding the foregoing, the Trustee may disclose such Personal Data provided that the Personal Data and its

23

derivatives are aggregated and do not identify individuals, including to the TIAA Program for business and/or benefit plan management purposes, including, but not limited to, the identification of trends and the formulation of statistics, and the Trustee may make disclosures that are required by law or legal process.  In addition, the Employer may monitor the Trustee's interactions with the Employer's Plan Participants and their spouses, domestic partners, and dependents.

(b)       HIPAA Data Privacy.  The Employer and the Trustee acknowledge and agree that the Trustee's services are outside the scope of activities regulated by the provisions of the Standards for Privacy of Individually Identifiable Health Information, 45 CFR Part 160 and Part 164 (the "Privacy Rule") and the Standards for Electronic Transactions, 45 CFR Part 160, Subpart A and Part 162, (the "Electronic Transaction Rule") and do not involve the creation or receipt of Electronic Health Records or Personal Health Records within the meaning of the Health Information Technology for Economic and Clinic Health Act provisions of the American Recovery and Reinvestment Act of 2009, 42 U.S.C. § 17921 ("HITECH").

**Section 22.       ERISA Claims/Appeals.**

The Trustee and the Employer agree that the Trustee has no fiduciary responsibility for any Participant claims and/or appeals under ERISA Section 503 in providing its services.  The Trustee's services with respect to health insurance and reimbursement benefits provided under the Plan are limited to its making payments in accordance with Section 13.  The Trustee and the Employer agree that the Employer, or its designee, is the proper recipient of any Participant appeals under ERISA Section 503 with respect to the reimbursement of qualified medical expenses, and the Trustee has no responsibility for any such appeals.  Upon request, the Trustee shall provide the Employer, or its designee, with the information in its possession that the Employer, or its designee, determines to be necessary in order to consider the appeal and to make a final decision.

**Section 23.       Indemnification.**

The Employer shall indemnify the Trustee against, and hold the Trustee harmless from, any and all liabilities, losses, costs or expenses (including reasonable legal fees and expenses) of whatsoever kind

and nature which may be incurred by, imposed upon, or asserted against the Trustee at any time related to the Plan or Trust, including but not limited to payments made in accordance with the Direction of the Employer, excepting only any and all liabilities, losses, costs or expenses arising from the Trustee's negligence, bad faith or willful misconduct. The Trustee will not be liable for any payment made pursuant to the Administrator's Direction.  Any Direction from the Administrator will constitute a certification that the distribution or payment so directed is one which the Administrator is authorized to direct under the terms of the Plan and ERISA.

(a)      The Trustee shall indemnify the Employer against, and hold the Employer harmless  from, any and all liabilities, losses, costs or expenses (including reasonable legal fees and expenses) of whatsoever kind and nature which may be incurred by, imposed upon, or asserted against the Employer arising from Trustee's negligence, bad faith or willful misconduct.

(b)      Neither party shall be liable to the other party for any indirect, special, consequential or punitive damages, regardless of the form of action, which may arise from the performance, nonperformance, default or other breach of this Agreement.

**Section 24.       Plan Benefit Claims Litigation.**

If litigation, mediation or arbitration is commenced by a person or entity seeking recovery of Plan benefits, appealing a decision under ERISA Section 503 and/or seeking the recovery of other related damages against the Employer or the Trustee (or an Affiliate of the Trustee), or a combination thereof (the "Plan Benefits Litigation"), the following shall apply:

(a)      Notice.  If the Employer or the Trustee becomes aware of the assertion of Plan Benefits Litigation, it shall promptly notify the other party and the Named Fiduciary.

(b)      Responsibility. Whether the Plan Benefits Litigation is directed toward the Named Fiduciary, the Employer, a Plan, or the Trustee, or a combination thereof, the Employer shall be  primarily responsible for retaining counsel for all parties and for directing the response to and bearing the cost of the Plan Benefits Litigation.  All legal costs and expenses related to Plan Benefits Litigation involving the

25

Trustee shall be a charge against the assets of the Trust to the extent not otherwise paid for by a person or entity other than the Trustee.

(c)     Cooperation.   In any Plan Benefits Litigation, the Trustee and the Employer shall reasonably cooperate in the defense of such litigation and shall provide the services of their appropriate respective employees and/or agents deemed necessary to the defense of the litigation.

**Section 25.      Amendment of Trust Agreement.**

This Trust Agreement may be amended only by an instrument executed by both the Employer and the Trustee.  The individuals authorized to sign such instrument on behalf of the Employer shall be those authorized by the Employer.

**Section 26.      Duration.**

This Trust shall continue in effect without limit as to time, subject to the provisions of this Agreement relating to amendment, modification, and termination thereof.

**Section 27.      Not an Insurer or Guarantor.**

Neither the Named Fiduciary nor the Trustee is an insurer, underwriter or guarantor of any benefit due, or alleged to be due, under any Plan, and neither the Named Fiduciary nor the Trustee shall be liable under any circumstances for the payment of such benefits or any costs or expenses related to such benefits.

**Section 28.      Notices of Resignation, Removal, and Termination.**

All notices of resignation, removal, or termination under this Agreement must be in writing and mailed to the party to which the notice is being given by certified or registered mail, return receipt requested, to the Employer and Trustee at the addresses set forth on Schedule C or to such other addresses as the parties have notified each other of in the foregoing manner.  Notwithstanding the foregoing, such notices may be provided electronically, if acceptable to the recipient, in the form and manner designated by such recipient.

**Section 29.      Assignment.**

This Agreement, and any of its rights and obligations hereunder, may not be assigned by any party without the prior written consent of the other party, and such consent may be withheld in any party's sole discretion.  Notwithstanding the foregoing, the Trustee may assign this Agreement in whole or in part, and any of its rights and obligations hereunder, to a subsidiary or affiliate of the Trustee without consent of the Employer.  All provisions in this Agreement shall extend to and be binding upon the parties hereto and their respective successors and permitted assigns.

**Section 30.**     **Force Majeure.**

No party shall be deemed in default of this Agreement to the extent that any delay or failure in performance of its obligation(s) results, without its fault or negligence, from any cause beyond its reasonable control, such as acts of God, acts of civil or military authority, acts of terrorism (whether actual or threatened), quarantines, embargoes, epidemics, war, riots, insurrections, fires, explosions, earthquakes, floods, unusually severe weather conditions, power outages or strikes.  This clause shall not excuse any party to the Agreement from any liability that results from failure to have in place reasonable disaster recovery and safeguarding plans adequate for protection of all data which each party to the Agreement is responsible for maintaining on behalf of the Plan.

**Section 31.**     **Confidentiality.**

Both parties to this Agreement recognize that in the course of implementing and providing the services described herein, each party may disclose to the other Confidential Information.  All such Confidential Information, individually and collectively, and other proprietary information disclosed by either party shall remain the sole property of the party disclosing the same, and the receiving party shall have no interest or rights with respect thereto if so designated by the disclosing party to the receiving party. Each party agrees to maintain all such Confidential Information in trust and confidence to the same extent that it protects its own proprietary information, and not to disclose such Confidential Information to any third party without the written consent of the other party, except as otherwise permitted by the terms of this Trust Agreement.  Each party further agrees to take all reasonable precautions to prevent

any unauthorized disclosure of Confidential Information.  In addition, each party agrees not to disclose or make public to anyone, in any manner, the terms of this Agreement, except as required by law, without the prior written consent of the other party.

**Section 32.**     **General.**

(a)     <u>Performance by Trustee, its Agents or Affiliates.</u>     The Employer acknowledges and authorizes that the services to be provided under this Agreement may be provided by the Trustee, its agents or Affiliates, including but not limited to TIAA, TIAA-CREF Individual & Institutional Services, LLC, or the successor to any of them, and that certain of such services may be provided pursuant to one or more separate contractual agreements or relationships.

(b)     <u>Entire Agreement</u>.  This Agreement together with the schedules attached hereto, which are hereby incorporated by reference herein, contains all of the terms agreed upon between the parties with respect to the subject matter hereof.

(c)     <u>Waiver</u>.  No waiver by either party of any failure or refusal to comply with an obligation hereunder shall be deemed a waiver of (1) any other obligation hereunder or (2) any subsequent failure or refusal to comply with any other obligation hereunder.

(d)     <u>Successors and Assigns</u>.  The stipulations in this Agreement shall inure to the benefit of, and shall bind, the successors and permitted assigns of the respective parties.

(e)     <u>Partial Invalidity</u>.  If any term or provision of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

(f)     <u>Section Headings</u>. The headings of the various sections and subsections of this Agreement have been inserted only for the purposes of convenience and are not part of this Agreement and shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of  this

**VEBA Trust and Schedules**

Agreement.

**Section 33.** **Governing Law.**

(a)    North Carolina Law Controls.  This Agreement is being made in the State of North Carolina, and the Trust shall be administered as a North Carolina trust.  The validity, construction, effect, and administration of this Agreement shall be governed by and interpreted in accordance with the laws of the State of North Carolina, except to the extent those laws are superseded under federal law or regulations.

(b)    Trust Agreement Controls.  The Trustee is not a party to the Plan, and in the event of any conflict between the provisions of the Plan and the provisions of this Agreement, the provisions of this Agreement shall control.

**DEBTORS' EXHIBIT NO. 24**
**Page 29 of 34**

## VEBA Trust and Schedules

**IN WITNESS WHEREOF,** the parties hereto have caused this Trust Agreement to be executed by their duly authorized officers as of the Effective Date.  By executing below, the undersigned represent that they are authorized to execute this Trust Agreement on behalf of the respective parties.  Each party may rely without duty of inquiry on the foregoing representation.

**Dalton Corporation, Warsaw Manufacturing Facility ("Employer")**

**TIAA TRUST, N.A. ("Trustee")**

By: _____

By: _____

Title: _Director and Secretary_____

Title: _____

Date: _07-14-2025_____

Date: _____

**DEBTORS' EXHIBIT NO. 24**
**Page 30 of 34**

**SCHEDULES TO THE VEBA TRUST**

**FOR Dalton Corporation, Warsaw Manufacturing Facility**

**Warsaw, IN**

31

**VEBA Trust and Schedules**

**Schedule A**

**Investment Options and Related Services**

This Schedule A is made effective as of the Effective Date and is incorporated by reference into and made a part of the VEBA Trust Agreement between the Trustee and the Employer ("Agreement"), to which this Schedule A is attached.  The Agreement shall remain in full force and effect, except that it shall be supplemented as set forth in this Schedule.  This Schedule may be amended from time to time by the parties.  Any capitalized terms that are not defined in this Schedule A shall have the meaning set forth in the Agreement.

Subject to Section 10 of the Agreement, each Participant shall be permitted to direct the investment of Trust assets in the account established for him or her under the Trust in the Mutual Funds selected by the Named Fiduciary from among those investment options made available under the TIAA Program. Notwithstanding the availability of Participant direction under the terms of the Plan associated with this Trust, the Named Fiduciary may limit the investment of the Trust Fund to money market or other similar cash-equivalent investments to protect the value of Trust Fund assets needed to process disbursements relating to benefits, such as the reimbursement of qualified medical expenses.  Similarly, the Named Fiduciary may require Participants who are seeking the reimbursement of qualified medical expenses via the Trust to properly allocate sufficient assets in their accounts to money market or other similar cash-equivalent investments.

All investment options made available shall be mutual funds that are registered under the Investment Company Act of 1940.  The Named Fiduciary shall provide TIAA with a list of mutual funds available as investments options under the Plan.  TIAA shall communicate such list to the Trustee.  TIAA shall also communicate any changes to such list to the Trustee.

32

**Schedule B**

**Fees For Trust Services**

This Schedule B is made effective as of the Effective Date and is incorporated by reference into and made a part of the VEBA Trust Agreement between the Trustee and the Employer ("Agreement"), to which this Schedule B is attached.  The Agreement shall remain in full force and effect, except that it shall be supplemented as set forth in this Schedule.  This Schedule may be amended from time to time by the parties.  Any capitalized terms that are not defined in this Schedule B shall have the meaning set forth in the Agreement.

**A)      Trustee's Fee**

For its services under the Agreement as Trustee, the Trustee shall receive compensation, which shall be paid by TIAA out of the compensation TIAA will receive, which is described in the Recordkeeping Agreement entered into between TIAA and the Employer.  TIAA may change the fee that it pays to the Trustee from time to time, but it will not change the fee that the Plan and Participants pay to TIAA, except as agreed by the Employer under the terms of the Recordkeeping Agreement.

**B)      Fees to Other Service Providers**

The Employer acknowledges that in addition to the Trustee's Fee, as described in Paragraph A,   TIAA shall earn fees arising from its administrative, recordkeeping and investment management services provided to the Plan and Participants.

**C)      Collection of Fees**

TIAA shall be responsible for the collection of fees in accordance with the terms of the Recordkeeping Agreement between Employer and TIAA, as amended from time to time.

**DEBTORS' EXHIBIT NO. 24**
**Page 33 of 34**

**VEBA Trust and Schedules**

**Schedule C**

**Employer's and Trustee's Contact Information**

This Schedule C is made effective as of the Effective Date and is incorporated by reference into and made a part of the VEBA Trust Agreement between the Trustee and the Employer ("Agreement"), to which this Schedule C is attached. The Agreement shall remain in full force and effect, except that it shall be supplemented as set forth in this Schedule. This Schedule may be amended from time to time by the parties. Any capitalized terms that are not defined in this Schedule C shall have the meaning set forth in the Agreement.

For purposes of Section 28 of the Agreement (Notices of Resignation, Removal, and Termination), the name and address of:

The individual or office at the Employer to whom notice shall be sent is:

Dalton Corporation, Warsaw Manufacturing Facility

_____
_____
_____
_____

The individual or office of the Trustee to whom notice shall be sent is:

TIAA Trust, N.A.
8500 Andrew Carnegie Boulevard,
Charlotte, NC 28262
Attention: Senior Director, Institutional Trust

With a copy to:

TIAA
8500 Andrew Carnegie Boulevard
Charlotte, NC 28262
ATTN: TIAA Retirement Healthcare Product Owner
CC: General Counsel

34

**DEBTORS' EXHIBIT NO. 24**
**Page 34 of 34**