IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| FIRST BRANDS GROUP, LLC, *et al.*, | § | Case No. 25-90399 (CML) |
| | § | |
| Debtors.* | § | (Jointly Administered) |
| | § | |

**SUPPLEMENTAL OBJECTION OF LAM PARTIES AND KATSUMI SERVICING, LLC TO CONFIRMATION OF JOINT CHAPTER 11 PLAN OF FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS**

---

* A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Leucadia Asset Management LLC, acting through its Point Bonita Capital Division, LAM Trade Finance Group LLC, and LAM TFG I SPV LLC (collectively, the "**LAM Parties**"), and Katsumi Servicing, LLC ("**Katsumi**") hereby submit this supplemental objection to the Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors (the "**Plan**") [Dkt. 3019].

The LAM Parties and Katsumi respectfully refer the Court to the objections filed on July 20, 2026 [Dkt. 3262 (the "**LAM Objection**") and Dkt. 3271 (the "**Katsumi Objection**")] for background and more comprehensive arguments.[1]  This supplement focuses solely on the Voting Declaration,[2] which was filed by the Debtors on July 24, four days after the objections to the Plan were submitted.

## Supplemental Objection

1.      The Voting Declaration filed on July 24 demonstrates that the Plan depends on gerrymandering creditor classes.  One of the arguments made in the LAM Objection and the Katsumi Objection is that classifying the deficiency claims of the prepetition secured lenders separately from general unsecured creditors violates the Fifth Circuit's decision in *Greystone III*.[3]  *See* LAM Objection, Point V; Katsumi Objection, Point V.  But that issue has now taken on a new dimension, because the results of the voting demonstrate that—if the deficiency claims of the prepetition secured lenders are classified together with those of other prepetition unsecured

---

[1] Capitalized terms not otherwise defined have the same meanings as in the LAM Objection or the Plan.  All emphases are added unless otherwise noted.

[2] *Declaration of Alex Orchowski of Kroll Restructuring Administration LLC Regarding the (I) Solicitation of Votes and Tabulation of Ballots Cast on the Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors and (II) Solicitation and Collection of Third-Party Release Opt-In Elections Made Through Ballots, Third-Party Release Opt-In Forms, and Preference Settlement Opt-In Forms* [Dkt. 3351].

[3] *In re Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir. 1991).

creditors—the Debtors do not have the votes to confirm the Plan.  The Plan therefore violates *Greystone III*'s commandment that "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan."  995 F.2d at 1279.

2.      Specifically, the First Lien Claims, Second Lien Claims, and ABL claims collectively amount to $2,384,469,748.74 for voting purposes, and they have voted to accept.  By contrast, there are at least $1.5 billion in rejecting unsecured claims at 30 Debtors.  Accordingly, if all prepetition unsecured claims voted in the same class, the Plan would then not have a class of claims voting to accept by the requisite two-thirds-in-amount majority at all Debtors, and therefore would fail under Section 1129(a)(10) of the Bankruptcy Code.[4]

3.      The Debtors may argue that they should be allowed to treat the DIP Roll-Up Claims as an impaired accepting class to satisfy Section 1129(a)(10).  For two Debtor entities, First Brands Group Holdings, LLC and Viceroy Private Capital, LLC, that is their only argument, because the only other voting class of claims at those entities voted to reject.  *See* Dkt. 3351-1 at 4, 11.[5]

4.      The DIP Roll-Up Claims do not count as a valid impaired accepting class.  The prepetition secured claims that gave rise to the DIP Roll-Up Claims were "deemed exchanged via assignment on a cashless basis into and … deemed to constitute DIP Obligations" as of either the Interim or Final DIP Order.  *See* Final DIP Order (Dkt. 608) ¶ H.(vi).  The consequence of a prepetition claim being "exchanged" into a postpetition claim is that the prepetition claim no longer exists.  *See* "Exchange," Black's Law Dictionary (12th ed. 2024) ("The act of transferring

---

[4]  The Appendix to this Supplemental Objection provides a list of the Debtor entities for which there are insufficient votes to satisfy Section 1126(c) if all prepetition unsecured claims are treated as having voted in the same class.

[5]  The prepetition secured creditors did not have claims against those entities, and their unsecured creditors voted to reject.  *Id.*

interests, each in consideration for the other.").[6]  The DIP Order also makes clear that the DIP Roll-Up Claims are superpriority administrative expenses allowable under Section 503(b) of the Bankruptcy Code with priority over all other such claims.  Final DIP Order ¶ 8(a).

5.      That right to priority disqualifies the DIP Roll-Up Claims from voting for purposes of satisfying Section 1129(a)(10).  Section 1123(a)(1) provides that "a plan shall designate … classes of claims, *other than claims of a kind specified in section 507(a)(2)*[.]" 11 U.S.C. § 1123(a)(1).  Claims allowable under Section 503(b) are entitled to priority pursuant to Section 507(a)(2).  *See* 11 U.S.C. § 507(a)(2).  For that reason, a "class" of DIP Roll-Up Claims is not properly designated as a voting class for purposes of Section 1123.

6.      Section 1126(a) of the Bankruptcy Code likewise provides that only "[t]he holder of a claim or interest allowed under section 502 of this title may accept or reject a plan." 11 U.S.C. § 1126(a).  Under Section 501, to file a proof of claim, one must be a "creditor." 11 U.S.C. § 501(a).  "Creditor" is defined as an "entity that has a claim against the debtor *that arose at the time of or before the order for relief* concerning the debtor."  11 U.S.C. § 101(10)(A).  Again, the DIP Roll-Up Claims—as post-petition claims—are not "claims" that can be "allowed" under Section 502 of the Bankruptcy Code for the purposes of voting.

7.      Accordingly, the Fifth Circuit has held that the holder of an administrative expense claim "is not entitled to vote on a plan of reorganization."  *Greystone III*, 995 F.2d at

---

[6] *See also In re Serta Simmons Bedding, LLC*, 2026 WL 1968535, at *13–18 (Bankr. S.D. Tex. July 7, 2026) (treating debt-for-debt exchange as repayment of old debt and issuance of new debt); D.H. Baird, A. Casey & R. Picker, *The Bankruptcy Partition*, 166 U. Pa. L. Rev. 1675, 1710 (2018) ("The effect of such a 'roll-up' is to pay off prepetition debt.  The bank ceases to be a prepetition creditor and instead becomes an extender of postpetition credit and enjoys the stronger rights associated with that status.  Roll-ups, by their nature, lead to prepetition debt being paid off—and paid off with first priority.").

1281.[7] Votes from holders of DIP Roll-Up Claims therefore cannot be considered in determining whether the Plan has an impaired accepting voting class.[8]

8.    Nothing in the Final DIP Order changes that result.  The Final DIP Order contains a narrow exception permitting the DIP Roll-Up Claims to vote solely in connection with proposed treatment of those claims that otherwise would not comply with *those holders'* rights under the Bankruptcy Code.  Paragraph 25(e) of the Final DIP Order states:

> Notwithstanding anything herein to the contrary, **the Roll-Up Obligations will not be required to be repaid in full in cash, subject to compliance with the terms and conditions of this paragraph**.  **Notwithstanding that the Roll-Up Obligations are and remain superpriority administrative expense claims**, any party with requisite authority to solicit a plan pursuant to Section 1121 of the Bankruptcy Code may classify the Roll-Up Obligations as one or more class(es) of claims entitled to vote, *solely for the purposes outlined in this paragraph* (any such plan, a "Roll-Up Classification Plan"). Under any Roll-Up Classification Plan, the holders of Roll-Up Obligations may be given non-cash treatment as long as the Roll-Up Classification Plan meets all applicable standards under the Bankruptcy Code, other than any Bankruptcy Code requirement to un-impair or pay the Roll-Up Obligations in full in cash.  In the event a class of holders of Roll-Up Obligations does not vote to accept the Roll-Up Classification Plan under section 1126(c) of the Bankruptcy Code, any party with requisite authority to solicit a plan pursuant to Section 1121 of the Bankruptcy Code shall have the right to seek confirmation of such Roll-Up Classification Plan pursuant to section 1129(b) of the Bankruptcy Code.  Holders of Roll-Up Obligations shall be entitled to object to the Roll-Up Classification Plan on any ground or for any reason whatsoever (without limitation, that the plan does not meet all applicable standards under section 1129(b), or any other section, of the Bankruptcy Code) other than (i) that the Roll-Up Obligations are not being un-impaired or repaid in full in cash; (ii) the fact that the Debtors are seeking to provide treatment respecting any Roll-Up Obligations pursuant to section 1129(b) of the Bankruptcy; or (ii[i]) that the Roll-Up Obligations are classified as a voting class.

---

[7]  *Accord In re Bos. Post Road Ltd. P'Ship*, 21 F.3d 477, 484 (2d Cir. 1994); *In re Shin*, 306 B.R. 397, 401 (Bankr. D.D.C. 2004) ("[A]dministrative claims share the same three characteristics: they (i) are not asserted via a proof of claim (but via a § 503(a) request); (ii) are not allowed under § 502 (but under § 503(b)); and (iii) do not give rise to a right to vote on the plan (see § 1126(a)).").

[8]  *E.g.*, *In re Bryson Properties, XVIII*, 961 F.2d 496, 501 n.8 (4th Cir. 1992) ("We agree that priority tax claimants, which receive preferential treatment under the Code (*see* 11 U.S.C. § 1129(a)(9)(C)), are not an impaired class that can accept a plan and bind other truly impaired creditors to a cram down."); *In re Seasons Apartments, Ltd. P'Ship*, 215 B.R. 953, 956 (Bankr. W.D. La. 1997); *In re Equitable Dev. Corp.*, 196 B.R. 889, 893–94 (Bankr. S.D. Ala. 1996).

Final DIP Order ¶ 25(e).

9.      Paragraph 25(e) is an agreement between the Debtors and the DIP Lenders allowing for alternate treatment of the DIP Roll-Up Claims, assuming the holders of such claims consent via the requisite voting majorities or the requirements of Section 1129(b) are met.  But, in view of the express limitation in Paragraph 25(e) that the DIP Roll-Up voting mechanism is *solely for the purposes outlined in the paragraph* (namely, determining whether holders of DIP Roll-Up Claims accept a Roll-Up Classification Plan), Paragraph 25(e) is not reasonably construed to allow the Debtors to satisfy a core Code requirement—acceptance of a plan by an impaired accepting class of prepetition claims—using the votes of administrative claimants.  *See Comput. Sci. Corp.* v. *Tata Consultancy Servs. Ltd.*, 159 F.4th 429, 439 (5th Cir. 2025) (citing dictionary definitions of "solely" as "to the exclusion of all else" and synonyms as "just," "only," and "exclusively").  The "*solely for the purposes outlined in this paragraph*" language would serve no purpose if DIP Roll-Up Claims could be treated as a regular voting class for purposes of being an impaired accepting class and satisfying other plan requirements—the paragraph would mean the same thing if that language were simply deleted.

10.      To whatever extent the Final DIP Order is ambiguous, the Order should be construed to conform with the Bankruptcy Code's voting rules.[9]  Section 1129(a)(9) permits holders of DIP Roll-Up Claims to agree to alternative treatment, including on a class basis if they

---

[9] *See, e.g.*, *In re Flying Star Cafes, Inc.*, 568 B.R. 129, 137 (Bankr. D.N.M. 2017) ("Ambiguous plans should be interpreted to comply with the Bankruptcy Code."); *In re Forklift LP Corp.*, 363 B.R. 388, 394 (Bankr. D. Del. 2007) ("When multiple interpretations of a plan are possible, courts should favor an interpretation that is consistent with the Bankruptcy Code over one that contravenes it"); *In re Burnsed*, 2021 WL 3013300, at *11 (Bankr. S.D. Ga. July 15, 2021) ("[T]he Court will not interpret either its own form plan or the order confirming the Modified Plan to violate the provisions of the Bankruptcy Code"); *In re Sunnyland Farms, Inc.*, 2016 WL 1212723, at *4 (Bankr. D.N.M. Mar. 28, 2016); Restatement (Second) of Contracts § 203(a) ("In the interpretation of a promise or agreement or a term thereof … an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").

so agree.  On the other hand, permitting superpriority claims to carry a vote to accept a plan, over the objection of prepetition creditors, would violate the Bankruptcy Code.

11.     The clincher, however, is that Paragraph 25(e) applies on its face to all Debtors, including the two Debtors—First Brands Group Holdings, LLC and Viceroy Private Capital, LLC—where the prepetition secured creditors did not have preexisting claims.  Even if the DIP Roll-Up could somehow be unwound at other Debtors and those claims treated as prepetition unsecured claims for voting purposes, there is no way to retroactively grant the DIP Roll-Up Claims the status of prepetition creditors at those two entities.  There is no legal basis to permit those Debtors' plans to be confirmed on the basis of claims *created* after the Petition Date, and Paragraph 25(e) should not be interpreted to allow for that outcome.  It also makes no sense to construe Paragraph 25(e) to permit the DIP Roll-Up Claims to serve as an impaired accepting class at every *other* Debtor, but *not* to permit that result at First Brands Group Holdings, LLC and Viceroy Private Capital, LLC.  The same paragraph has to have the same meaning at *all* Debtors.[10]  Interpreting the DIP Roll-Up voting mechanic to apply solely for purposes of determining consent to non-cash treatment is internally consistent, consistent with Section 1123(a)(1), and prevents unfair surprise to other constituencies.

### Conclusion

12.     For the reasons set forth in the LAM Objection, the Katsumi Objection, and this Supplemental Objection focused solely on the Voting Declaration, the LAM Parties and Katsumi respectfully request that the Court deny confirmation of the Plan.

---

[10] *See Cochise Consultancy, Inc.* v. *United States ex rel. Hunt*, 587 U.S. 262, 268 (2019) ("In all but the most unusual situations, a single use of a statutory phrase must have a fixed meaning."); *In re Buffets, L.L.C.*, 979 F.3d 366, 373 (5th Cir. 2020) ("Buffets wants us to do something even more drastic: give the exact same word in a statute different meanings depending on the context in which it is applied. Doing so would defy congressional intent and foster confusion."), *abrogated on other grounds*, *Siegel* v. *Fitzgerald*, 596 U.S. 464 (2022).

Dated:  July 27, 2026
Houston, Texas

*/s/ Paul E. Heath*
**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Matthew D. Struble (TX 24102544)
845 Texas Avenue, Suite 4700
Houston, TX  77002
Tel:  713.758.2222
Email: pheath@velaw.com
      mstruble@velaw.com

**WACHTELL, LIPTON, ROSEN & KATZ**
Emil A. Kleinhaus (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
Angela K. Herring (admitted *pro hac vice*)
51 West 52nd Street
New York, NY  10019
Tel:  212.403.1000
Email: eakleinhaus@wlrk.com
      mhcassel@wlrk.com
      akherring@wlrk.com

*Counsel to LAM Parties*

*/s/ Charles S. Kelley*
**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, Texas 77002
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com

Sean T. Scott (admitted pro hac vice)
Kyle J. TumSuden (admitted pro hac vice)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Email: stscott@mayerbrown.com
ktumsuden@mayerbrown.com

Richard A. Stieglitz (admitted pro hac vice)
Lauren C. Blanchard (admitted pro hac vice)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Email: rstieglitz@mayerbrown.com
lblanchard@mayerbrown.com

*Counsel for Katsumi Servicing, LLC*

-8-

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Paul E. Heath*
One of Counsel

**Appendix:  Debtor Entities Lacking 2/3 Majority in Voting Amount With Unsecured Prepetition Claims Voting as Single Class**

| Debtor | Accepting Vote Amount (Class 4–7) | Rejecting Vote Amount (Class 4–7) | Percentage |
|---|---|---|---|
| ASC Industries, Inc. | $2,963,527,922.42 | $2,304,702,600.96 | 56.25% |
| Autolite Operations LLC | $2,391,524,833.26 | $1,506,968,722.00 | 61.34% |
| Brake Parts Inc LLC | $3,006,529,288.01 | $2,492,903,400.92 | 54.67% |
| Cardone Industries, Inc. | $2,918,858,832.83 | $1,591,091,086.28 | 64.72% |
| Carrand Companies, Inc. | $2,390,985,748.74 | $1,506,968,722.00 | 61.34% |
| Carter Carburetor Holdings, LLC | $2,910,050,505.05 | $1,506,968,722.00 | 65.88% |
| Carter Carburetor, LLC | $2,963,275,510.68 | $1,506,968,722.00 | 66.29% |
| Carter Fuel Systems, LLC | $2,969,487,823.19 | $2,311,654,477.10 | 56.23% |
| Champion Laboratories, Inc. | $2,968,560,406.86 | $2,462,628,450.72 | 54.66% |
| CWD, LLC | $2,543,905,403.89 | $2,222,237,084.00 | 53.37% |
| First Brands Group Holdings, LLC | $6,585,075.96 | $321,434,376.66 | 2.01% |
| First Brands Group, LLC | $2,997,230,209.44 | $2,927,678,235.35 | 50.59% |
| FRAM Group Operations LLC | $2,972,811,931.92 | $2,464,000,496.97 | 54.68% |
| Global Reman Ventures, LLC | $2,390,985,748.74 | $1,506,968,722.00 | 61.34% |
| Hopkins Acquisition, Inc. | $2,390,985,748.74 | $1,506,968,722.00 | 61.34% |
| Hopkins Manufacturing Corporation | $2,921,954,472.00 | $1,590,127,369.24 | 64.76% |
| Horizon Euro Finance LLC | $2,910,050,505.05 | $1,506,968,722.00 | 65.88% |

| Debtor | Accepting Vote Amount (Class 4–7) | Rejecting Vote Amount (Class 4–7) | Percentage |
|---|---|---|---|
| Horizon Global Americas Inc. | $2,916,829,496.23 | $1,747,844,809.42 | **62.53%** |
| Horizon Global Company LLC | $2,910,155,861.17 | $1,506,968,722.00 | **65.88%** |
| Horizon Global Corporation | $2,962,845,376.87 | $1,506,968,722.00 | **66.29%** |
| Horizon International Holdings LLC | $2,910,050,505.05 | $1,506,968,722.00 | **65.88%** |
| Qualis Automotive, L.L.C. | $2,540,881,263.05 | $2,221,593,283.00 | **53.35%** |
| Reman Management International LLC | $2,390,985,748.74 | $1,506,968,722.00 | **61.34%** |
| Smart Choice, LLC | $2,390,985,748.74 | $1,506,968,722.00 | **61.34%** |
| Strongarm, LLC | $2,963,221,903.36 | $1,594,780,843.70 | **65.01%** |
| Trico Products Corporation | $3,000,192,824.21 | $2,517,999,758.33 | **54.37%** |
| Tridonex USA LLC | $2,391,488,950.52 | $1,506,968,722.00 | **61.34%** |
| Viceroy Private Capital, LLC | $6,516,000.00 | $2.00 | **\*(Passes amount requirement but fails numerosity requirement)** |
| Walbro LLC | $2,913,528,781.87 | $1,506,974,084.01 | **65.91%** |
| Walbro Midco LLC | $2,910,052,985.73 | $1,506,968,722.00 | **65.88%** |
| WEM US Co. | $2,903,534,505.05 | $1,506,968,722.00 | **65.83%** |