**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al*.,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

**KATSUMI SERVICING, LLC'S AND LAM PARTIES'**
**EMERGENCY MOTION *IN LIMINE* TO EXCLUDE EXPERT**
**DECLARATION AND TESTIMONY OF MARC S. KIRSCHNER**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 9:00 A.M. CENTRAL TIME ON JULY 28, 2026.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Katsumi Servicing, LLC ("Katsumi"), and the LAM Parties, [2] by and through their undersigned counsel, hereby files this emergency motion *in limine* (this "Motion") to exclude the *Declaration of Marc S. Kirschner* [Dkt. No. 3190] (the "Kirschner Declaration" or "Declaration")[3] and any anticipated testimony by Mr. Kirschner with respect to matters addressed in the Kirschner Declaration at the July 28, 2026 hearing on confirmation of the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Dkt. No. 3019] (the "Plan") and final approval of the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Dkt. No. 3020] (the "Disclosure Statement"). In support of this Motion, the movants respectfully state as follows:

## PRELIMINARY STATEMENT

1. This Motion asks the Court to perform the gatekeeping function that Rule 702 and *Daubert* require before the Court decides whether to confirm a Plan whose feasibility rests, in material part, on a thinly-supported expert report of Mr. Kirschner. The FBG Debtors ask this Court to accept, essentially on faith, Mr. Kirschner's bottom-line forecast that the Litigation Trust will recover "in excess of $2 billion" by the end of 2028. Kirschner Decl. ¶ 143. Katsumi and the LAM Parties respectfully submit that the Kirschner Declaration does not meet the requirements of Rule 702, and thus his testimony should be excluded from the evidentiary record at the Combined Hearing.

2. Start with who Mr. Kirschner is, and who he is not. He is, by his own account, an accomplished bankruptcy lawyer and restructuring advisor, but he is not a finance expert, an accounting expert, or a valuation expert. Kirschner Dep. Tr. 56:23-57:6. He holds no CPA license,

---

[2] The "LAM Parties" are Leucadia Asset Management LLC, acting through its Point Bonita Capital Division, LAM Trade Finance Group LLC, and LAM TFG I SPV LLC.

[3] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Kirschner Declaration.

no Certified Fraud Examiner or Certified Valuation Analyst credential, no Chartered Financial Analyst designation, and no graduate training in finance or statistics. *Id.* Asked directly what he considered his area of expertise for this assignment, Mr. Kirschner answered "[b]ankruptcy and restructuring law, financial advisory, fiduciary matters," none of which involves claims valuation or financial forecasting. Kirschner Dep. Tr. 58:25-59:6. Yet the FBG Debtors retained him to forecast, to the dollar and to the year, the amount and timing of recoveries from a portfolio of largely unasserted and wholly unliquidated litigation claims. Kirschner Decl. ¶¶ 18, 21. Decades spent practicing bankruptcy law is not the specialized expertise Rule 702 demands for that assignment.

3.      Nor did Mr. Kirschner do independent work to salvage his opinions. Mr. Kirschner was retained effective June 20, 2026, and just 24 days later—working alone, without support staff of any kind—he signed a 56-page report purporting to value and estimate the amount recoverable, and the timing for recoveries, in connection with $25.4 billion in alleged, gross pre-petition transfers by the Debtors. Kirschner Decl. ¶¶ 19, 149; Kirschner Dep. Tr. 12:24-13:18, 21:14-25, 24:7-14. In that report, Mr. Kirschner cites the Moore Declaration no fewer than 144 times. And at his deposition taken on Friday, July 24, 2026, he admitted that he did not independently test, audit, or verify the facts and figures that Mr. Moore and Debtors' counsel gave him.[4] Kirschner Dep. Tr. 73:4-14, 79:6-19, 211:15-24. An expert who simply accepts what an interested party tells him, without independent verification, is not offering "expert" testimony; instead, he is parroting the party's own arguments, dressing it up in an expert's clothing.

---

[4] Following conclusion of Mr. Moore's and Mr. Kirschner's depositions, Ms. Kerri Palen, a Senior Director from A&M's Disputes and Investigations group, testified that errors in certain calculations that Mr. Moore relied upon in the Moore Declaration and during his deposition are withdrawn and Mr. Moore will no longer testify based on those calculations used in the Moore Declaration. This admission leaves Mr. Kirschner's election to use information exclusively fed to him by Mr. Moore and the Debtors even more inherently unreliable and further afoul of Rule 702 and *Daubert*.

4.       Nor does Mr. Kirschner offer any methodology that this Court or opposing counsel could test, replicate, or evaluate.  He cannot explain how he moved from $25.4 billion in alleged, gross transfers to a projected $2 billion in net recoveries—he offers no discount rate, no probability weighting, no sensitivity analyses, nothing.  Kirschner Decl. ¶ 31; Kirschner Dep. Tr. 379:18-380:6.  By his own admission, he "did not apply a percentage" at all.  Kirschner Dep. Tr. 379:18-380:6.  That unexplained leap from aggregate potential exposure to a specific recovery figure, on a particular timetable, is precisely the kind of "analytical gap" that renders expert testimony inadmissible.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

5.       Finally, where Mr. Kirschner does offer analysis, much of it consists of legal conclusions that improperly aim to usurp this Court's role.  He does not merely describe facts; he tells the Court that the Ponzi Scheme Presumption "would apply," that a "majority of the badges of fraud are present," that Katsumi "should have known" of fraud and "would face liability," and that FBG was insolvent at multiple points in time.  Kirschner Decl. ¶¶ 25, 33, 39, 41, 73, 76, 82, 84, 101, 105, 131.  Those are legal conclusions reserved exclusively to this Court, not proper expert opinions.

6.       For all of these reasons, the Kirschner Declaration cannot satisfy Rule 702, and Mr. Kirschner should not be permitted to testify about its contents at the Combined Hearing.  Katsumi and the LAM Parties respectfully urge the Court to grant this Motion in exercise of its gatekeeping function.

**BACKGROUND**

7.       On or about September 28, 2025, the FBG Debtors commenced these chapter 11 cases.  The FBG Debtors subsequently filed their Plan [Dkt. No. 3019] and Disclosure Statement

[Dkt. No. 3020]. A combined hearing on final approval of the Disclosure Statement and confirmation of the Plan is scheduled for July 28, 2026.

8. On July 14, 2026, the FBG Debtors filed the Kirschner Declaration, in which Mr. Kirschner opines "as to the amount of proceeds that are reasonably expected to be generated from [the] Estate Claims and the anticipated timing thereof." Kirschner Decl. ¶ 18. At the same time, the FBG Debtors filed an application to retain Marc Kirschner as an expert consultant and expert witness [Dkt. No. 3192] (the "Retention Application"), seeking *nunc pro tunc* approval of his retention effective June 20, 2026.

9. Also on July 14, 2026, the FBG Debtors filed a companion declaration of Charles M. Moore in support of confirmation of the Plan [Dkt. No. 3188] (the "Moore Declaration"), reflecting a supposed 10-month investigation (beginning September 5, 2025) of the FBG Debtors' books and records, financial data, and pre-petition transactions. Moore Decl. ¶¶ 3, 58.

10. On July 20, 2026, Katsumi and the LAM Parties filed objections to confirmation of the Plan and final approval of the Disclosure Statement [Dkt. Nos. 3262, 3271], in which Katsumi and the LAM Parties each expressly reserved all rights to seek to exclude the Kirschner Declaration and any related testimony. This motion is filed jointly to avoid duplication.

## RELIEF REQUESTED

11. By this Motion, Katsumi and the LAM Parties respectfully request that this Court (i) exclude the Kirschner Declaration from the evidentiary record for the Combined Hearing, and (ii) preclude Mr. Kirschner from testifying at the Combined Hearing with respect to the opinions offered and any other matters addressed in the Kirschner Declaration.

## EMERGENCY CONSIDERATION

12. Pursuant to Bankruptcy Local Rule 9013-1, Katsumi and the LAM Parties respectfully request that this Motion be considered on an emergency basis. The Combined Hearing

4

is set for July 28, 2026.  Emergency consideration is warranted to ensure compliance with the Federal Rules of Evidence and to avoid compromising this Court's ability to adjudicate the merits of the Plan at the Combined Hearing.  Mr. Kirschner's deposition occurred on July 24, 2026.[5]

**ARGUMENT**

13.     Rule 702 of the Federal Rules of Evidence ("Rule 702"), made applicable in these cases by Bankruptcy Rule 9017, permits a *qualified* witness to offer expert testimony only "if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993).  The proponent of the expert testimony bears the burden of establishing by a preponderance of the evidence that it meets all of these requirements.  *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

14.     Under *Daubert* and its progeny, judges are charged to act as "gatekeepers" to ensure that testimony "is not only relevant, but reliable."  *Daubert*, 509 U.S. at 589; *see also General Elec. Co. v. Joiner*, 522 U.S. 136 (1997).  In making this determination, courts generally consider (i) whether the witness' theory or method can be (and has been) tested, (ii) whether the theory or method has been subjected to peer review and publication, (iii) the known or potential rate of error of the method used, and (iv) whether the method has been generally accepted by the relevant scientific community.  *See Daubert*, 509 U.S. at 593-94; *see also Dart v. Kitchens Bros. Mfg. Co.*, 253 F. App'x 395, 397 (5th Cir. 2007).

---

[5] A copy of the transcript of Mr. Kirschner's deposition is attached hereto as **Exhibit A** and filed under seal.

15. Notably, *Daubert*'s gatekeeping obligation applies to all expert testimony, including experience-based and non-scientific testimony, to ensure that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 150-52 (1999).  While trial courts often apply safeguards somewhat more leniently in the absence of a jury, the Fifth Circuit has cautioned that "the existence of sufficient facts and reliable methodology is in all instances mandatory" before admitting expert testimony.  *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007); *see also In re Wyly*, 552 B.R. 338, 359–63 (Bankr. N.D. Tex. 2016).

## I.      Mr. Kirschner is Not Qualified

16. As a threshold matter, Rule 702 requires that a witness be "qualified as an expert by knowledge, skill, experience, training, or education" before he may offer opinion testimony. Fed. R. Evid. 702(a).  Whether a witness is qualified as an expert "can only be determined by comparing the area in which the witness has superior knowledge, skill, experience or education with the subject matter of the witness's testimony." *Kozak v. Medtronic, Inc.*, 512 F. Supp. 2d 913, 917-18 (S.D. Tex. 2007).  Although an expert may be qualified by experience alone, that experience must be tied specifically to the subject matter of the opinion offered. *See Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (explaining that a court "should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject").  Nor can an expert's testimony rest on "self-proclaimed accuracy" in place of demonstrated, subject-matter-specific expertise.  *Kozak*, 512 F. Supp. 2d at 918 (citing *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

17. The FBG Debtors cannot meet their burden to show that Mr. Kirschner is qualified to offer the opinions he is offering.  Although he has spent decades as a restructuring advisor and bankruptcy lawyer and has served as liquidation trustee and in other post-confirmation fiduciary

6

capacities in cases such as *Refco Capital Markets*, *Tribune*, and *Highland*, his career has focused on legal advocacy, fiduciary service and restructuring advice.  He is not an expert in claims valuation and recovery forecasting—the expertise his offered testimony actually demands.

18.     Conspicuously absent from Mr. Kirschner's CV is any credential, certification, or license in claims valuation, fraud examination or damages modeling.  Mr. Kirschner holds no CPA license, no Certified Fraud Examiner certification, no Certified Valuation Analyst designation, no Chartered Financial Analyst certification, and no graduate degree or other specialized training in finance or statistics.  *See* Kirschner Dep. Tr. 56:23-57:6 ("Q. Do you consider yourself a finance expert? A. No. Q. Do you consider yourself an accounting expert? A. No. Q. Do you consider yourself a valuation expert? A. No.")  Nor does Mr. Kirschner's prior expert-witness experience matter.  Indeed, by his own account, Mr. Kirschner has previously provided expert testimony only twice as to "bankruptcy law matters" (Kirschner Decl., Ex. A) and "the reasonableness of settlements" (Kirschner Decl. ¶ 12), the latter of which is a fundamentally different, backward-looking exercise (typically with an assessment of potential defenses and counterclaims) in contrast to projecting a specific dollar amount and timeline for future litigation recoveries.  Kirschner Decl. ¶¶ 12-13.

19.     Make no mistake about what Mr. Kirschner was actually asked to do: he was retained "to provide expert analysis and opinions as to the amount of proceeds that are reasonably expected to be generated from [the] Estate Claims and the anticipated timing thereof"—that is, to forecast the specific timing and specific dollar amount of recoveries from an indisputably complex litigation portfolio.  Kirschner Decl. ¶ 18.  The subject matter of his testimony would therefore require quantitative forecasting, but Mr. Kirschner has no training, credential, experience or any semblance of expertise in modeling recoveries or projecting cash-flow timing of this kind.  *See*

Kirschner Dep. Tr. 58:25-59:6 ("Q. For purposes of this assignment, what do you consider your area of expertise? A. Bankruptcy and restructuring law, financial advisory, fiduciary matters. Those are the general categories."). Legal acumen and restructuring experience does not constitute the specialized expertise necessary to project the proceeds and timing of litigation recoveries, and courts do not treat one as an acceptable substitute for the other. *See Kozak*, 512 F. Supp. 2d at 917-18 (excluding damages testimony where proponent "point[ed] to no specialized knowledge, education, training, or experience" tailored to specific "economic calculations" at issue).

20. Nor can the FBG Debtors rehabilitate Mr. Kirschner by pointing to his years spent dealing with distressed situations. Practical familiarity with an industry, without more, does not create the specialized expertise needed to forecast a particular recovery amount and timeline; instead, the proffered expertise must relate specifically to the opinion offered. *See Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) (affirming exclusion of putative valuation expert who, despite years of experience buying and selling property, lacked formal training in appraisal methods and could not answer questions about standard appraisal theory); *In re Med Diversified, Inc.*, 334 B.R. 89, 96-97 (Bankr. E.D.N.Y. 2005) (excluding expert valuation testimony where decades of bankruptcy and trustee experience were no substitute for independent analysis of comparable companies and underlying data).

21. For all of these reasons, Mr. Kirschner does not qualify to offer the specific recovery-amount and timing opinions for which he was retained. This alone bars admission of his testimony.

## II.     Mr. Kirschner's Testimony is Not Based on Sufficient Facts or Data

22. Mr. Kirschner's testimony is inadmissible on another, independent ground. Rule 702 also requires that expert testimony be "based on sufficient facts or data[.]" Fed. R. Evid. 702. Courts interpreting that requirement have consistently held opinion testimony to be inadmissible

when it rests on insufficient information or the expert simply adopts, without independent verification or testing, facts supplied by an interested party or counsel. *See, e.g., Paz v. Brush Engineered Materials Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) ("Where an expert's opinion is based on insufficient information, the analysis is unreliable."); *Brickley v. Scattered Corp. (In re H&M Oil & Gas, LLC)*, 511 B.R. 408, 416-17 (Bankr. N.D. Tex. 2014) ("[W]hen an expert relies upon information given to him by a party or counsel, he must independently verify that information before utilizing it in his calculations."); *MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, No. H-05-1634, 2007 WL 150606, at \*4 (S.D. Tex. Jan. 16, 2007) (excluding testimony where expert "did not conduct independent analysis and instead relied primarily on what an interested party told him"); *JRL Enters. v. Procorp Assocs.*, No. 01-2893, 2003 WL 21284020, at \*7 (E.D. La. June 3, 2003) (excluding expert who "merely accepted as true the facts given him" by the retaining party and "performed no independent analysis of the numbers given to him"); *Diabetes Ctrs. of Am., Inc. v. Healthpia Am., Inc.*, No. H-06-3457, 2008 WL 375505, at \*2 (S.D. Tex. Feb. 11, 2008) (excluding testimony where expert "fails to show any basis for believing someone else's projections").

23.     Mr. Kirschner's recovery and timing opinions are built entirely on facts drawn from the Moore Declaration and information provided by the FBG Debtors without any independent investigation or testing.[6] The Kirschner Declaration cites the Moore Declaration directly no less than 144 times for the basis of its opinions, and Mr. Kirschner concedes that the entire $25.4 billion "Assertable Value" chart underlying his ultimate recovery opinion comes directly "[f]rom

---

[6] As acknowledged at deposition, Mr. Kirschner did not select or request most of the materials he reviewed, but rather received a set of documents that FBG Debtors' counsel sent to him, and acknowledged that the facts reflected in his own working notes were simply "told" to him by Mr. Moore and FBG Debtors' counsel during their conversations. *See* Kirschner Dep. Tr. 49:4-13 ("Q. [I]n determining what documents to send to you, counsel was the one who put this list together and sent it to you; right? A. That's correct. I received it from counsel."); *id.* at 187:17-188:6 ("Q. So your notes reflected facts that were being told to you from Weil and Mr. Moore? A. Correct.").

information provided by the Debtors[,]" in each case, with no description of any effort to audit, test, or independently verify those FBG Debtor-supplied inputs.  Kirschner Decl. ¶ 31; *see also* Kirschner Dep. Tr. 73:4-14 ("Q. Right. But if something's referred to in Mr. Moore's declaration, that doesn't mean you read it; does it? A. That's correct, it does not. Q. So you read Mr. Moore's declaration. You didn't read all the underlying materials that he cites; did you? A. I did not."); 211:22-24 ("I read it in Moore's declaration. And I didn't think I had to do any further verification of those facts.").  Indeed, Mr. Kirschner acknowledges that he did not independently investigate, test, or verify any fact or assumption set forth in the Moore Declaration or provided to him by FBG Debtors' counsel.  *See, e.g.*, Kirschner Dep. Tr. 79:6-19 ("Q. Did you assume those facts to be true, the facts in paragraphs eighty to one hundred two of the Moore declaration? A. Yes. Q. Did you independently verify that all those facts were true? A. No. Q. If there are statements in paragraphs eighty to one hundred two that are not true, you don't know that; right? A. I would not know whether they're true or not.").  In short, Mr. Kirschner is serving as a mouthpiece for the Debtors.[7] This is not the type of "expert" analysis that Rule 702 requires.  *See Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) ("[A]n expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him").

24.    For these reasons, Mr. Kirschner's opinions are not "based on sufficient facts or data" as Rule 702(b) requires.  This is an independent ground on which to bar his testimony.

---

[7] Indeed, the compressed timeline of Mr. Kirschner's retention confirms that he could never have been in a position to perform any meaningful independent validation of the facts supplied to him.  He was retained on June 20, 2026, and just 24 days later, on July 14, 2026, signed and filed a 56-page expert report purporting to forecast a specific recovery estimate and related timing on a complex litigation portfolio totaling $25.4 billion in aggregate, assertable claims.  Kirschner Decl. ¶¶ 19, 149.  Mr. Kirschner confirmed that he undertook the assignment entirely alone, with no associates, analysts or support staff of any kind.  Kirschner Dep. Tr. 12:24-13:18, 21:14-25.  Mr. Kirschner's entire engagement totals, at most, a few hundred hours of a single person's time to independently investigate, test, and verify the facts underlying a $25.4 billion portfolio of supposed litigation claims arising in a case that this Court has described as "among the most complicated cases ever filed." *See* July 21, 2026 Hr'g Tr. 5:23-24.  The parameters of his retention thus corroborate, rather than excuse, his wholesale and unverified adoption of the facts supplied by the Moore Declaration and the FBG Debtor's advisors.

### III.    Mr. Kirschner's Testimony Is Unreliable and Methodologically Unsupported

25.    Mr. Kirschner's testimony is inadmissible on another, independent ground.  Rule 702 further requires that expert testimony be "the product of reliable principles and methods" and that the expert have "reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702(c), (d).  The reliability inquiry "extends to all aspects of an expert's testimony, including the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion."  *Jacked Up*, 807 F. App'x at 348; *see also Robles*, 619 F. Supp. 3d at 647.  Reliability is further assessed by asking whether the expert's theory or technique can be and has been tested, has been subjected to peer review, has a known or potential rate of error, and is generally accepted in the relevant community.  *See, e.g.*, *Daubert*, 509 U.S. at 592-93.  The court's gatekeeper function in this respect is to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Dart*, 253 F. App'x at 397 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

26.    Mr. Kirschner's opinions cannot withstand this scrutiny because he identifies no methodology for this Court to test.  His Declaration is silent as to what, if any method he used to translate the $25.4 billion in purported, gross assertable transfers into his opinion that "recoveries in excess of $2 billion could be received by the end of 2028."  Kirschner Decl. ¶ 143.  And he acknowledged the same at deposition.  *See* Kirschner Dep. Tr. 379:20-380:6 ("Q. So you're not opining that the $25 billion would be recoverable; are you?  I think you're opining that that would be the total amount of all claims that could possibly be brought; right?  A. Correct.  I think my report's clear on that.  Q. Did you apply some percentage to that what you think would be likely recoverable? A. I did not apply a percentage.").  He fails to employ any quantitative valuation methodology to determine how $25.4 billion in gross claims is likely to yield approximately 8% in expected net recovery, and not one of the basic principles of valuation (assumed discount rate,

11

sensitivity analyses, probability weighting, Monte Carlo simulations, or comparable-settlement analysis) is discussed. Moreover, Mr. Kirschner has candidly acknowledged that, when he states certain parties "should have known" about the First Brands fraud, presumably to suggest that those parties face greater risk of liability, he is *not* "relying on any particular standard in academic or professional literature." Kirschner Dep. Tr. 65:2-6.

27. Even accepting the $25.4 billion aggregate figure at face value, the unexplained leap from an aggregate, unadjudicated claim total of $25.4 billion to a projected $2 billion recovery in a specific timeframe is "too great an analytical gap between the data and the opinion proffered" for this Court to admit. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Robles*, 619 F. Supp. 3d at 648 (excluding testimony where "there is simply too great an analytical gap between the basis for the expert opinion and the opinion proffered") (citation omitted); *Johnson v. Arkema Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (expert opinion must be "more than unsupported speculation or subjective belief"). Because Mr. Kirschner articulates no theory or technique in the first place, none of *Daubert*'s reliability factors—testability, peer review, rate of error, or general acceptance—can even be applied to his opinions.

28. The remainder of Mr. Kirschner's Declaration likewise consists of conclusions not based on any stated methodology or verifiable data. As noted, at deposition, Mr. Kirschner repeatedly agreed that he was relying on general experience rather than "any particular standard" or any "data." Kirschner Dep. Tr. 65:2-6, 139:15-21. The Supreme Court, however, has made clear that courts need not admit opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert[.]" *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

29. For example, Mr. Kirschner asserts that "litigation trustees recover approximately 10% of the amount of preference claims" based on his "experience" rather than objective criteria.

Kirschner Decl. ¶ 142; Kirschner Dep. Tr. 127:4-14.[8]  He identifies no cases or specific data set from which this 10% figure is drawn, much less the size or comparability of any sample, or any method for adjusting that figure to account for the Plan's Preference Settlement, the nature of the transactions from which these claims arise, and any defenses that are or may be asserted.  *Id.* ¶¶ 140–142.[9]  This omission is not an isolated instance: throughout the Declaration, Mr. Kirschner asserts that he "believe[s] it is reasonable to conclude" that a litigation trustee "would succeed" or "is likely to establish" a given recovery, without tying those conclusions to any stated methodology or verifiable data.  *Id.* ¶¶ 33, 55, 77, 100, 111, 124.  Repeated conclusory assertions of this kind do not become reliable simply by repetition.  *See In re Med Diversified, Inc.*, 334 B.R. 89, 102 (Bankr. E.D.N.Y. 2005) (excluding expert opinion "loaded with multiple *ipse dixits*" that "did nothing to assist" the court's role as fact finder); *In re TMI Litig.*, 193 F.3d 613, 703–04 (3d Cir. 1999) (excluding testimony based on "purely subjective" methodology, because "it is impossible to test a hypothesis generated by a subjective methodology" where "only person capable of testing or falsifying the hypothesis is the creator of the methodology").

30.     For these reasons, too, Mr. Kirschner's opinions do not pass muster under Rule 702 and should be excluded.

---

[8] Mr. Kirschner further conceded under oath that his 10% recovery estimate on preference claims is nothing more than an unquantified recollection.  Kirschner Dep. Tr. 126:9-127:3 ("Q. At the very -- at the end of this section you say, 'based on my experience, litigation trustees recover approximately ten percent of the amount 13 of preference claims'; right?  A. … That's my experience in a lot of cases where I've been trustee and other lawyers were handling preference litigations.  Most of them do it on contingent fees, occasionally time charges.  But this is my recollection of what my cases have basically led to settlements of approximately ten percent of the claims.")

[9] Nor could Mr. Kirschner even confirm under oath that the 10% recovery estimate applies to preference claims in these cases.  Kirschner Dep. Tr. 127:4-14 ("Q. Are you expressing an opinion that in this case there's going to be a ten percent recovery level on preference claims?  A. No, I'm saying, based on my experience, litigation trustees recover approximately ten percent of the amount of preference claims.  That's based on my experience and cases I've been involved in and on cases I know have been prosecuted by others.").

**IV.      Mr. Kirschner's Testimony Should be Excluded as Legal Advocacy**

31.      Setting aside that Mr. Kirschner is unqualified to offer the opinions made, and his opinions are not based on sufficient facts or any semblance of a reliable methodology, a large share of his testimony is inadmissible for a *fourth* independent reason—much of the Declaration contains inadmissible legal conclusions.

32.      An expert witness may not render a legal opinion, which necessarily is "not helpful for the trier of fact to understand the evidence." *See Green v. CBS Broad., Inc.*, No. 3:98-CV-2740-T, 2000 WL 33243748, at \*4 (N.D. Tex. Dec. 19, 2000) (noting that Fifth Circuit "has repeatedly held that legal opinions are not a proper subject of expert testimony"). Indeed, "allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *see also C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001) ("[N]either Rule 704(a) nor Rule 702 permit[s] . . . expert witnesses to offer conclusions of law."); *Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996) ("We have repeatedly held that this rule does not allow an expert to render conclusions of law.").

33.      Mr. Kirschner repeatedly oversteps his role as an "expert." Time and again Mr. Kirschner tells this Court which legal doctrines apply and what legal conclusions this Court must draw from them. For example, he opines that a litigation trustee could invoke the "Ponzi Scheme Presumption" to establish actual fraudulent intent under section 548 of the Bankruptcy Code and then concludes, based on his own recitation of the elements of that presumption, that "it is reasonable to conclude that the Ponzi Scheme Presumption would apply" to FBG's third-party factoring and supply chain financing programs. Kirschner Decl. ¶¶ 25, 33, 39, 73, 76. He does the same with the "badges of fraud" doctrine, reciting the six-factor test recognized by the Fifth Circuit before declaring that "a majority of the badges of fraud are present" as to specific transfers.

14

*Id.* ¶¶ 26, 82, 101.  Whether the Ponzi Scheme Presumption applies, and whether the evidence satisfies the badges-of-fraud test for actual intent, are legal conclusions reserved exclusively to this Court.  *See Guzman v. Memorial Hermann Hosp. Sys.*, 637 F. Supp. 2d 464, 476–77 (S.D. Tex. 2009) (striking expert's opinion that defendant violated a statute as  inadmissible legal conclusion); *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (experts may not opine on what applicable law means or whether it has been satisfied).

34.     Mr. Kirschner goes further still, declaring that Katsumi "would face liability," because Katsumi "'should have known' of FBG's fraudulent scheme," rather than simply describing what he thought Katsumi knew and when.  Kirschner Decl. ¶ 41.  Mr. Kirschner likewise opines directly on the ultimate legal question of insolvency and on the availability of statutory defenses.  He states that "there is a good faith basis to conclude that FBG was insolvent" at multiple points in time relevant to the Estate Claims (*id.* ¶¶ 40, 84, 105, 131), and with respect to anticipated defenses, he opines that the SPV Lenders' "good faith transferee" defense under Section 550(b)(2) is "unlikely to succeed" based on application of the "knowledge or inquiry notice of fraud or insolvency" standard to the facts he was given.  *Id.* ¶ 85.  These are quintessential legal conclusions, not opinions that assist the Court in understanding the evidence.  *See Wyly*, 552 B.R. at 359–60 (expert testimony that "tells the fact finder what law to apply" or "states a legal opinion that tells the fact finder what result to reach" is improper).

35.     A witness who recites facts provided by a party, and then purports to apply the law to those asserted facts, does not assist the court.  Instead, that kind of witness effectively seeks to take the court's role.  *See In re Lyondell Chem. Co.*, 558 B.R. 661, 666–67 (Bankr. S.D.N.Y. 2016) (expert may not usurp the role of the court and "may not merely recite a factual narrative that does not draw technical or scientific conclusions").  That is precisely what Mr. Kirschner has done here:

15

he has taken the FBG Debtors' advisors' and Mr. Moore's selective factual disclosure, layered in his own recitation of the controlling legal standards, and then told this Court which way to resolve each of the disputed legal questions.  Because these portions of the Kirschner Declaration consist of inadmissible legal conclusions rather than "expert" opinion, they (and any related testimony repeating them) should, at a minimum, be excluded.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Katsumi and the LAM Parties respectfully request that this Court (i) exclude the Kirschner Declaration from the evidentiary record for the Combined Hearing, (ii) preclude Mr. Kirschner from testifying at the Combined Hearing with respect to the matters addressed in the Kirschner Declaration, and (iii) grant such other relief as this Court deems just and proper.

*[Remainder of page intentionally left blank]*

16

Dated: July 27, 2026
Houston, Texas


*/s/  Charles S. Kelley*

**MAYER BROWN LLP**
Charles S. Kelley (TX Bar No. 11199580)
700 Louisiana Street, Suite 3400
Houston, Texas 77002
Telephone: (713) 238-3000
Email: ckelley@mayerbrown.com

Sean T. Scott (admitted *pro hac vice*)
Kyle J. TumSuden (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Email: stscott@mayerbrown.com
          ktumsuden@mayerbrown.com

Richard A. Stieglitz (admitted *pro hac vice*)
Lauren C. Blanchard (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Email: rstieglitz@mayerbrown.com
          lblanchard@mayerbrown.com


*Counsel to Katsumi Servicing, LLC*

*/s/ Paul E. Heath*

**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Matthew D. Struble (TX 24102544)
845 Texas Avenue, Suite 4700
Houston, TX  77002
Tel:  713.758.2222
Email: pheath@velaw.com
          mstruble@velaw.com


**WACHTELL, LIPTON, ROSEN & KATZ**
Emil A. Kleinhaus (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
Angela K. Herring (admitted *pro hac vice*)
51 West 52nd Street
New York, NY  10019
Tel:  212.403.1000
Email: eakleinhaus@wlrk.com
          mhcassel@wlrk.com
          akherring@wlrk.com


*Counsel for LAM Parties*

17

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on July 27, 2026, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which automatically sends notification of such filing to all attorneys of record.

*/s/ Charles S. Kelley*
Charles S. Kelley

**<u>Exhibit A</u>**

**[FILED UNDER SEAL]**