**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST BRANDS GROUP, LLC, *et al.*, | Case No. 25-90399 (CML) |
| Debtors.[1] | (Jointly Administered) |

**EVOLUTION CREDIT PARTNERS' REPLY IN SUPPORT OF
MOTION TO COMPEL SEGREGATION AND TURNOVER
OF POST-PETITION ACCOUNTS RECEIVABLE COLLECTED**

Evolution Credit Opportunity Master Fund II-B, L.P. (the "Evolution Inventory Lender" and, together with its affiliated lending entities, Evolution Credit Partners Trade Finance Master, L.P., Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution affiliated funds, collectively, "Evolution"), by and through its undersigned counsel, respectfully submits this reply (the "Reply") in further support of the *Emergency Motion of Evolution Credit Partners to Compel Segregation and Turnover of Post-Petition Accounts Receivable Collected* [Docket No. 3144] (the "Motion")[2] and in response to: (i) the *Debtors' Objection to Emergency Motion of Evolution Credit Partners to Compel Segregation and Turnover of Post-Petition Accounts Receivable Collected* [Docket No. 3218] (the "Debtors' Objection"); (ii) the *Preliminary Objection of the Ad Hoc Group to Evolution's Emergency Motion to Compel Segregation and Turnover of Post-Petition Accounts Receivable Collected* [Docket No. 3208] (the "Ad Hoc Group Objection"); and (iii) the *Limited Objection of Bank of America, N.A., in its Capacity as ABL Agent to Emergency Motion of Evolution Credit Partners to Compel Segregation and Turnover of Post-*

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

*Petition Accounts Receivable Collected* [Docket No. 3209] (the "ABL Agent Objection", and together with the Debtors' Objection and the Ad Hoc Group Objection, the "Objections"). In support of this Reply, Evolution respectfully states as follows.

## PRELIMINARY STATEMENT

1.       This is not, as the Debtors would have this Court believe, a dispute over whether the Debtors were required to retroactively segregate cash receipts collected before January 20, 2026. It is a dispute over the Debtors' undisputed, ongoing use of Evolution's collateral—inventory located at four warehouses and all accounts receivable generated from selling that inventory—in direct violation of this Court's express oral ruling prohibiting any such use. (See Motion ¶ 3. The Debtors' Objection spends sixteen pages rebutting an argument Evolution never made. It devotes almost none to the argument Evolution did make: that the Debtors kept collecting and spending Evolution's cash collateral for other business purposes after they were told, in no uncertain terms, that they could not.

2.       The relevant history is not in serious dispute. On January 20, 2026, following an evidentiary hearing, this Court found that the Debtors had breached the *Stipulation and Agreed Order Regarding Adequate Protection Among Debtors and Evolution Credit Partners* [Docket No. 609] (the "Adequate Protection Stipulation"). See Motion ¶¶ 3, 12. The Court ruled from the bench that the Debtors were "prohibited from using or purchasing Evolution cash collateral or Evolution collateral absent further order of the court."  Motion ¶ 12 (quoting Jan. 20, 2026 Hr'g Tr. at 46:4–7). The Debtors themselves quote this ruling in their own papers. *See* Debtors' Objection ¶¶ 16–17. Yet in the six months that followed, the Debtors collected no less than $21.2 million in postpetition accounts receivable generated from selling that very collateral, and segregated barely $1.5 million of it. Motion ¶ 2. The Debtors do not deny collecting this money. *See* Debtors'

Objection ¶ 19. They do not deny using it. Their sole defense is that nobody made them retroactively account for it. *See* Debtors' Objection ¶ 4. That is neither a defense to a claim Evolution has raised, nor is it accurate.

3.        Any doubt about where that money went was resolved at the July 26, 2026 deposition of the Debtors' own Chief Executive Officer, Charles Moore, a true and correct excerpt of which is attached hereto as Exhibit A (the "<u>Moore Deposition</u>").[3] ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████. He further testified that ████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████. In other words, the very collateral the Debtors were ordered not to touch has been consumed in the ordinary course of these cases, and what little remains is about to be handed to another party without any recourse to Evolution.

4.        The remaining Objections do not salvage the Debtors' position. The Ad Hoc Group's argument that no "emergency" exists (see Ad Hoc Group Objection ¶¶ 2–3) rings hollow now that the Debtors' own witness has confirmed that ████████████████████████

██████████████████████████████████████████. The ABL Agent's position that competing claims to disputed collateral generally call for preservation rather than release to one party (see ABL Agent Objection ¶ 6) cuts against the Debtors and in favor of

---

[3] Because portions of Mr. Moore's testimony unrelated to this dispute have been designated by certain parties as highly confidential, the transcript of Mr. Moore's deposition is being filed under seal.

immediate relief, not against Evolution, because preservation is precisely what did not happen here. Moore Dep. at 761:5–10. Not only that, but the Debtors affirmatively refuse to consider this amount disputed under the terms of the Plan, because they could not otherwise consummate the Plan's transactions if they respected Evolution's interests.[4] Finally, none of the Objections' procedural arguments under Bankruptcy Rule 7001 (see ABL Agent Objection ¶ 21) excuse the Debtors from complying with an order already on the books: enforcing an existing prohibition on use of estate property is not the same as adjudicating a new claim to it.

5.      For these reasons, and those set forth below, Evolution respectfully requests that the Court overrule the Objections and grant the Motion.

## ARGUMENT

### A.  The Debtors Mischaracterize Evolution's Argument

6.      The heart of the Debtors' Objection is a straw man: that Evolution asked this Court, back on January 20, 2026, to order retroactive segregation of receipts collected since the Petition Date, and that the Court declined to do so. *See* Debtors' Objection ¶ 4. From that premise, the Debtors argue that nothing required them to segregate or account for any of the $21.2 million at issue. *See* Debtors' Objection ¶¶ 4, 20. That argument mischaracterizes both the record and Evolution's Motion.

---

[4] This is yet the latest example of the Debtors' impunity and disregard for Court-ordered adequate protection of their non-favored lenders. *See, e.g.*, *Statement Regarding Evolution's Emergency Motion to Enforce Its Adequate Protection Stipulation* [Docket No. 1278] ¶ 1 ("[Silver Point] files this Statement to apprise the Court that violations of adequate protection stipulations similar to those described in the Evolution Motion are in fact widespread, affecting parties beyond the movants."); *see also Aequum Capital Financial II LLC's (1) Emergency Motion to Enforce Stipulation and Agreed Order Regarding Adequate Protection of Aequum Financial II LLC and the Aequum Lenders and (2) Second Objection and Reservation of Rights to Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 485] (identifying defaults in agreed adequate protection stipulation); *Emergency Motion of the Carnaby Secured Lenders for Relief From the Automatic Stay for Cause, Including Lack of Adequate Protection* [Docket No. 469] (same).

7.     Evolution's Motion does not rest on a theory that the January 20 Ruling imposed a freestanding, backward-looking segregation obligation. See Motion ¶¶ 25, 30(a). Indeed, that is why Evolution filed this Motion *to segregate* such proceeds. Instead, Evolution seeks to require the Debtors to comply with the Court's express, unqualified prohibition on any further **use** of Evolution's collateral after the Debtors were "prohibited from using or purchasing Evolution cash collateral or Evolution collateral absent further order of the court." Motion ¶ 12 (quoting Jan. 20, 2026 Hr'g Tr. at 46:4–7). The Debtors' own Objection concedes this is what the Court ruled. *See* Debtors' Objection ¶ 17 (quoting Jan. 20 Tr. at 44:3–19, 48:6–16). That prohibition is continuing in nature. It does not merely require the Debtors to account for the $21.2 million already collected—it bars the Debtors as of January 20 from collecting, holding, or spending any further accounts receivable generated from sales of Evolution's inventory unless and until the Court orders otherwise. The Debtors' blatant disregard for the Court's direction mandates additional protections, including segregation and turnover of collateral. Evolution seeks an order that stops the ongoing practice, reinforced independently by section 363(c)(4) of the Bankruptcy Code, which requires a debtor in possession to "segregate and account for any cash collateral in [its] possession, custody, or control" for so long as it lacks consent or authorization to use that collateral. Motion ¶ 28.

8.     The accounts receivable at issue are not a separate category of property outside that prohibition. They are proceeds of the same collateral the Court barred the Debtors from using: the inventory at the Warehouses—proceeds which are equally Evolution Collateral. *See* Motion ¶ 26. Proceeds of collateral are themselves collateral under Article 9 of the Uniform Commercial Code. Motion ¶ 26 (citing U.C.C. § 9-315(a)(2)). The Debtors cannot credibly argue that the January 20 Ruling's prohibition on using "Evolution collateral" excludes the collected accounts receivable,

since receivables generated from the sale of that collateral are themselves proceeds of it under governing law. The prohibition on using the collateral necessarily reached its proceeds.

9.      The Debtors' go-forward tracking methodology confirms, rather than excuses, the violation. The Debtors admit that, after the January 20 Ruling, they negotiated a methodology to track and segregate receipts collected from that date forward. *See* Debtors' Objection ¶¶ 20–21. That agreement addressed how to measure and report collections; it did not, and could not, retroactively authorize the Debtors to keep using collateral the Court had already told them not to touch. *See* Debtors' Objection ¶ 22. An agreement about measurement going forward is not a license to keep spending collateral in the interim while that measurement is worked out.

**B.  The Debtors' Own Admissions, Confirmed by Their CEO, Establish the Violation**

10.     The Debtors do not dispute the core facts. They admit they collected $21.2 million in postpetition receipts generated from inventory sourced from the Warehouses. *See* Debtors' Objection ¶ 19. They admit that a portion of those collections continued after the January 20 Ruling barred any further use of Evolution's collateral, even though only the post-Ruling collections have ever been segregated. See Debtors' Objection ¶ 22. And they admit that only approximately $1.5 to $1.6 million of that amount has ever been segregated. *Id.*; Motion ¶ 2. The Debtors do not argue that the remaining $19.6 to $20 million was preserved somewhere else on their books pending resolution of the parties' dispute. *See* Debtors' Objection ¶¶ 19–22.  They do not make that argument because they cannot.

11.     Any remaining doubt was eliminated by the Debtors' own Chief Executive Officer. ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████. Mr. Moore confirmed that ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████ .

12.     This testimony forecloses the Debtors' implicit suggestion that the $21.2 million is simply sitting somewhere, awaiting an orderly resolution of competing claims. The Debtors' own Objection all but admits as much, arguing that Evolution cannot show the collected funds "even still exist" given the Debtors' "significant cash burn." Debtors' Objection ¶ 28. But the Debtors cannot flaunt their violation of the Court's order as a panacea to relief. The Debtors' use of Evolution's collateral is not a mere technicality. It is the precise conduct section 363(c)(2) of the Bankruptcy Code was designed to prevent: a debtor in possession may not use cash collateral absent consent or court authorization, and here neither existed. *See* Motion ¶ 27 (citing 11 U.S.C. § 363(c)(2).

## C. The Objections' Procedural and Priority Arguments Do Not Excuse the Debtors' Ongoing Violation

13.     The Debtors, the Ad Hoc Group, and the ABL Agent each argue that Evolution's Motion is procedurally improper because it seeks relief that can only be obtained through an adversary proceeding under Bankruptcy Rule 7001. *See* Debtors' Objection ¶ 2; ABL Agent Objection ¶¶ 19–21. That argument conflates two different things. Evolution is not asking this Court to adjudicate, in the first instance, the ultimate validity, extent, or priority of its lien in the Warehouses' inventory or receivables—that dispute remains pending in Evolution's separate adversary proceedings. Evolution is merely asking this Court to enforce an order the Court has already entered: the January 20 Ruling's prohibition on using Evolution's collateral pending further order. *See* Motion ¶ 12. A bankruptcy court has broad authority under section 105(a) of the Bankruptcy Code to enforce compliance with its own orders without commencing a new adversary

7

proceeding. Motion ¶ 31 (citing 11 U.S.C. § 105(a)). Enforcement of an existing prohibition is not the same as litigating a new claim to property, and Rule 7001 does not require Evolution to file a second lawsuit merely to make the Debtors comply with the first.

14.     The Ad Hoc Group's argument that no "emergency" justifies expedited consideration (see Ad Hoc Group Objection ¶¶ 2–3) is likewise overtaken by events. Whatever force that argument had when filed on July 15, 2026, it cannot survive Mr. Moore's July 26, 2026 testimony that the disputed collateral is "long gone" and that the FBG Debtors' estates will soon hold as little as $5 million, an amount already committed to the wind-down administrator. Moore Dep. at 760:16–761:10. This is not the "self-created urgency" the Ad Hoc Group describes. *See* Ad Hoc Group Objection ¶ 3. It is the confirmed, ongoing dissipation of Evolution's collateral while these chapter 11 cases race toward a confirmation hearing that would irreversibly and without recourse transfer all of the Debtors' assets to their favored lenders, leaving nothing behind.

15.     The ABL Agent's priority argument fares no better as a basis to deny relief altogether. The ABL Agent contends that it holds a competing first-priority lien on the same funds and that the appropriate interim remedy is preservation in a neutral account, not release to Evolution. *See* ABL Agent Objection ¶ 6. Evolution does not need this Court to resolve that priority dispute today. But the ABL Agent's own proposed remedy—preservation of the disputed funds pending resolution—is precisely what the Debtors failed to do, and precisely what Evolution's Motion seeks to correct. *See* ABL Agent Objection ¶ 6. Whether the funds are ultimately distributed to Evolution or held for later allocation among competing claimants, they must first exist to be distributed at all. Immediate segregation of whatever amount remains, together with an accounting of amounts already dissipated, is the only remedy consistent with every objecting party's stated position that the status quo should have been preserved.

**D. The Ongoing Dissipation of Evolution's Collateral Threatens Confirmation and Warrants Immediate Relief**

16.     The confirmation hearing is less than 12 hours from commencing, and the Debtors' plan proposes to distribute the estates' remaining assets—including the $25 million allocated to fund the litigation trust—while leaving in place no mechanism to stop the Debtors from continuing to collect and use whatever accounts receivable remain outstanding from sales of Evolution's collateral. Moore Dep. at 760:9–15. Mr. Moore's testimony ██████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████

17.     The Debtors make great waves in the Plan and Disclosure Statement, arguing that all parties' rights will be preserved and that no disputed assets will be transferred to the trusts created under the Plan.  *See, e.g.*, Dislosure Statement at 2 ("Disputed assets of the Debtors, including the SPV Debtors, will not be transferred to any Trust prior to a Court determination or consensual resolution regarding the ownership of such assets, and all rights are reserved with respect to any disputes regarding ownership of assets between the FBG Debtors and the SPV Debtors, including disputes as to ownership of Inventory and certain Claims and Causes of Action.").  But the Debtors are seemingly reserving to themselves the right to determine whether a dispute exists as, despite the Motion, the Debtors fully intend to implement the Plan transactions, leave the estates penniless, and leave harmed creditors behind without recourse.

18.     Nothing about granting the Motion now prejudices any party's substantive rights. Evolution's underlying entitlement to the funds remains subject to adjudication in the pending adversary proceedings, and any accounting the Debtors provide will simply establish, with

precision, what was collected, when, and where it went. *See* Motion ¶ 21. What cannot be undone is the Debtors' blatant violations of this Court's orders, and their attempts to ram through confirmation of the Plan to paper over those violations. This is not how bankruptcy, an open and equitable court, is intended to function.

## CONCLUSION

19.     WHEREFORE, for the reasons set forth herein, Evolution respectfully requests that the Court overrule the Objections, grant the Motion, and enter the Proposed Order (i) prohibiting the Debtors from any further use, collection, or disbursement of accounts receivable or other proceeds generated from sales of Evolution's collateral absent further order of this Court; (ii) compelling the Debtors to immediately segregate and turn over the postpetition accounts receivable already collected; (iii) compelling an accounting of all such collections, past and ongoing; and (iv) directing ongoing weekly reporting of any further collections, together with such other and further relief as the Court deems just and proper.

Respectfully submitted this 28th day of July 2026.

**GRAY REED**

By: */s/ Jason S. Brookner*
    Jason S. Brookner
    Texas Bar No. 24033684
    Emily F. Shanks
    Texas Bar No. 24110350
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email:    jbrookner@grayreed.com
        eshanks@grayreed.com

- and -

**PROSKAUER ROSE LLP**
   Vincent Indelicato (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
Email:         vindelicato@proskauer.com

- and -

   Charles A. Dale (admitted *pro hac vice*)
One International Plaza
Boston, MA 02110-2600
Telephone:  (617) 526-9600
Email:         cdale@proskauer.com

- and -

   Jordan E. Sazant (admitted *pro hac vice*)
70 W Madison St., Suite 3800
Chicago, IL 60602
Telephone:  (312) 962-3500
Email:         jsazant@proskauer.com

*Counsel to Evolution*

11

**<u>Certificate of Service</u>**

The undersigned hereby certifies that on the 28th day of July 2026, he caused a true and correct copy of the foregoing document by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Jason S. Brookner*
Jason S. Brookner

## <u>EXHIBIT A</u>

July 26, 2026 Moore Deposition Transcript

FILED UNDER SEAL