**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| *In re:* | Case No. 25-90399 (CML) |
| **FIRST BRANDS GROUP, LLC**, *et al.,* | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

**PATRICK JAMES'S NOTICE OF FILING OF DEMONSTRATIVE**

**PLEASE TAKE NOTICE** that attached hereto as **Appendix A** is Patrick James's Demonstrative in support of Patrick James' Motion to Exclude Portions of Moore Declaration and Kirschner Declaration (ECF No. 3289).

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Dated: July 28, 2026
Houston, Texas
Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

/s/ Cameron M. Kelly

Cameron Kelly
TX SBN: 24120936
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: (713) 221-7000
cameronkelly@quinnemanuel.com

James C. Tecce*
Anil Makhijani*
Jack Robbins*
Grace Sullivan*
295 5th Avenue
New York, NY  10016
Telephone: (212) 849-7000

-and-

**DEBEVOISE & PLIMPTON LLP**
Erica S. Weisgerber*
Matthew J. Sorensen*
Emily Morgan*
66 Hudson Boulevard
New York, NY  10001
Telephone: (212) 909-6000
eweisgerber@debevoise.com
mjsorensen@debevoise.com
emorgan@debevoise.com
*admitted *pro hac vice*

*Attorneys for Patrick James*

2

**CERTIFICATE OF SERVICE**

I certify that, on July 28, 2026, a true and correct copy of the foregoing document was served through the Court's Electronic Case Filing system of the United States Bankruptcy Court for the Southern District of Texas, and on counsel of record by electronic mail.

Dated: July 28, 2026                    /s/ Cameron M. Kelly
Houston, Texas                          Cameron M. Kelly

# APPENDIX A

## PowerPoint Demonstrative



# MOTION TO EXCLUDE PORTIONS OF MOORE DECLARATION AND KIRSCHNER DECLARATION [DKT. NO. 3289]

## IN RE FIRST BRANDS GROUP, ET AL., CASE NO. 25-90399 (CLM) (BANKR. S.D. TEX.)

July 28, 2026

# MR. MOORE PROPOSES TO TESTIFY ABOUT MR. BRUMBERGS' INTERACTIONS WITH GOVERNMENT
### [SEE DKT. NO. 3188 ¶¶ 70, 79, 80, 122, 127]

¶ 70: "***Based on the allocution of Andy Brumbergs*** (Brumbergs Plea at 27-28), I understand that, beginning at least as early as 2018, Patrick James and Edward James, among others, ***caused the FBG Debtors to provide lenders with a version of financial statements that did not reflect the Company's true financial position***."

¶ 79: "***Andy Brumbergs likewise admitted that, from approximately 2018 through 2025, he agreed with others to provide misleading financial statements to lenders*** that 'included accounting adjustments that misstated First Brands' financial condition and results,' and misrepresented the existence of inventory and equipment pledged or sold as collateral."

¶ 80: "***Andy Brumbergs has admitted under oath that, between approximately 2020 and 2025, he and others knowingly submitted falsified invoice information to factoring companies and investors in order to secure 'a higher financing or higher proceeds'*** than the true receivables would have justified."

¶ 122: "***Andy Brumbergs admitted under oath that, between approximately 2020 and 2025, he and others misrepresented the nature and existence of collateral pledged to off-balance-sheet lenders***, including by failing to disclose that the collateral had already been pledged to lenders. (Brumbergs Plea at 29.)."

¶ 127: "***In his plea allocution***, ***Andy Brumbergs admitted*** that, between approximately 2020 and 2025, he and others misrepresented the nature and existence of collateral pledged to off-balance-sheet lenders, and further admitted that, from approximately 2022 to 2025, ***he agreed to structure cash transfers to conceal the source of proceeds obtained from off-balance-sheet lenders by dividing them into smaller amounts sent to multiple company-owned accounts***. (Brumbergs Plea at 30)."

2

## MR. KIRSCHNER PROPOSES TO TESTIFY ABOUT MR. BRUMBERGS' AND MR. GRAHAM'S INTERACTIONS WITH GOVERNMENT
### [SEE DKT. NO. 3190 ¶¶ 23, 94, 97, 98, 112, 115]

¶ 23: "I understand that in connection with his guilty plea, *Stephen Graham admitted under oath that as CFO he agreed with others to 'inflate and report the financial performance of FBG on financial statements* that were issued to FBG's lenders,' knowing those statements contained false and misleading information, and that he personally presented the false and inflated statements in lender presentations to obtain financing on better terms. *I also understand that in connection with his guilty plea, Andy Brumbergs admitted that, from approximately 2018 through 2025, he agreed with others to provide misleading financial statements and balance sheets to lenders that 'included accounting adjustments that misstated First Brands' financial condition and results,'* and misrepresented the existence of inventory and equipment pledged or sold as collateral."

¶ 97: "Andy Brumbergs is FBG's former Senior Vice President of Finance.  Brumbergs pleaded guilty in January 2026 to eight counts, including wire fraud, conspiracy to commit wire fraud, bank fraud, and conspiracy to commit money laundering. *In his plea, Brumbergs admitted that between 2018 and 2025, he worked with others to provide lenders with misleading statements,* including misstating FBG's financial condition, as well as the existence of inventory and equipment pledged or sold as collateral."

¶ 98 : "*Stephen Graham is FBG's former Chief Financial Officer.*  Graham pleaded guilty on March 2, 2026, to four counts of bank fraud, wire fraud, and conspiracy to commit bank fraud and wire fraud.  *In his plea, Graham admitted working with others to inflate and misrepresent FBG's finances in statements to lenders.*"

¶ 115: "*And Brumbergs admitted under oath* that between 2018 and 2025, *he worked with others to provide misleading financial statements to lenders.*"

3

# LIMITATIONS OF LIMITING INSTRUCTION

Debtors argue, "The Court's consideration of Mr. Moore's and Mr. Kirschner's testimony in connection with confirmation will not impair the James Defendants' ability to defend themselves in those independent proceedings" and "[t]o that end, courts in this Circuit have repeatedly refused to bind parties in an adversary proceeding to facts presented in support of plan confirmation."  - Opposition ¶¶ 15-16 (p. 6).  See also ¶ 2 (pp. 1-2) ("Moreover, nothing the Court finds at plan confirmation will bind the James Defendants in the adversary proceeding.  They will have every opportunity to litigate the merits of the claims against them—in both the pending criminal proceeding and, once the stay lifts, any claims remaining in the adversary proceeding that were not resolved in the criminal action.  Evaluating claims and the prospect of recovery for plan purposes is not adjudicating the claims on the merits.").

- **Debtors are asking court to <u>validate</u> and <u>value</u> claims to show they will fund DIP and administrative expense claims**

- **Debtors insist on doing so on one-sided record—that cannot be brought into balance by "cross examination"**

- **Nothing prevents parties in subsequent civil litigation or the Government in criminal proceedings from using one-sided "evidence" and "facts" elicited in this hearing**

- **Nothing prevents potential jurors in civil or criminal cases from learning Federal Court found claims against James are valid and worth billions**

4

# ARGUMENT EXPERTS CAN EMBRACE ULTIMATE ISSUE MISSES POINT

Debtors argue "expert opinions are not objectionable just because they embrace an ultimate issue to be decided by the trier of fact." Stringer v. Pablos, 2017 WL 11638257, at *2 (W.D. Tex. Nov. 14, 2017) (cleaned up); see Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue."). - Opposition ¶ 39 (p. 14).

NATIONAL OILWELL VARCO, L.P. v. AUTO-DRIL, INC.

Cite as 68 F.4th 206 (5th Cir. 2023)

mate issue." *Id.* 704(a). But "Rule 704(a) 'does not allow a witness to give legal conclusions.'" *United States v. Williams,* 343 F.3d 423, 435 (5th Cir. 2003) (quoting *United States v. Izydore,* 167 F.3d 213, 218 (5th Cir. 1999)). "In evaluating challenged testimony, the court must distinguish 'between an impermissible opinion on an ultimate legal issue and "a mere explanation of the [witness's] analysis of facts which would tend to support a jury finding on the ultimate issue."'" *United States v. Keys,* 747 F. App'x 198, 207 (5th Cir. 2018) (per curiam) (alteration in original) (quoting *United States v. Buchanan,* 70 F.3d 818, 833 n.20 (5th Cir. 1995)).

5

# "FRAUD" IS AN IMPERMISSIBLE LEGAL OPINION

**UNITED STATES of America, Appellee,**

v.

**Alan SCOP, Raphael Bloom, Herbert Stone and Jack Ringer, Defendants–Appellants.**

Nos. 393, 391, 408 and 392, Dockets 87–1255, 87–1261, 87–1262 and 87–1270.

United States Court of Appeals, Second Circuit.

Argued Nov. 2, 1987.

Decided May 4, 1988.

Had Whitten merely testified that controlled buying and selling of the kind alleged here can create artificial price levels to lure outside investors, no sustainable objection could have been made. Instead, however, Whitten made no attempt to couch the opinion testimony at issue in even conclusory factual statements but drew directly upon the language of the statute and accompanying regulations concerning "manipulation" and "fraud". *See supra* note 1. In essence, his opinions were legal conclusions that were highly prejudicial and went well beyond his province as an expert in securities trading. Moreover, because his opinions were calculated to "invade the province of the court to determine the applicable law and to instruct the jury as to that law," *FAA v. Landy*, 705 F.2d 624, 632 (2d Cir.), *cert. denied*, 464 U.S. 895, 104 S.Ct. 243, 78 L.Ed.2d 232 (1983), they could not have been helpful to the jury in carrying out its legitimate functions. "The admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case." *Marx &*

6

# MR. MOORE PROPOSES TO TESTIFY ABOUT MATTERS WHERE HE HAS NO PERSONAL KNOWLEDGE
### [SEE E.G. DKT. NO. 3188 ¶¶ 31, 59, 71, 75, 78, 82, 97, 105, 143]

¶ 59:   Patrick James was "fabricating financial statements to misrepresent the FBG Debtors' dire financial condition"; "fabricating accounts receivable to obtain cash from third party factoring": and "fabricating supplier and vendor payables to obtain cash from supply chain financing."

¶ 71:   "FBG Debtors' former management manipulated the Company's financial records according to a top-down process[,]" including by dictating "false manual adjustments to the Company's financials."

¶ 73:   "Debtors' former management improperly commingled the funds of the FBG Debtors and certain affiliates in order to conceal their financial misconduct."

¶ 75:   "Debtors' operating businesses were losing money, could not pay all their obligations when due, and had liabilities far in excess of their assets for years preceding the Petition Date" and that "FBG Debtors' true earnings were a fraction of what was reported."

¶ 78:   "[I]n addition to underreporting liabilities, prior management overreported assets on the FBG Debtors' historical financial statements."

¶ 82:   "[V]ast majority of amounts transferred from and paid to factoring parties was on account of falsified invoices."

¶ 97:   "Debtors' former management systematically created, and received payments on account of, billions of dollars of fake invoices, using either Excel schedules of fake supplier invoices or fake 'cover' invoices" and "100% of the transfers to Bowery made pursuant to an SCF program were made on account of fake invoices."

¶ 105:   "[C]ash proceeds from the transactions contemplated by the SPV Facilities would not have been and were not sufficient to perform under the SPV Facilities, and that the SPV Entities had effectively no capitalization or other legitimate means to uphold their obligations to the SPV Lenders under the SPV Facilities."

¶ 143:   "[E]ntities lacked sufficient surplus, net profits, or distributable capital to lawfully authorize dividends or distributions under applicable law, and the transfers rendered or contributed to the transferor's insolvency."

7

# MR. MOORE DISCLAIMED OFFERING EXPERT OPINIONS DURING HIS DEPOSITION; EXPERTS CANNOT SIMPLY BE CONDUIT FOR HEARSAY



First you have misrepresented my declaration. I think it's very important to highlight this. There are no conclusions. My declaration lays out facts. …. I don't have any conclusions in my declaration.
- Mr. Moore Tr., 132:17-24.

**U.S. v. MEJIA**
Cite as 545 F.3d 179 (2nd Cir. 2008)

[6]  The expert may not, however, simply transmit that hearsay to the jury. *Id.* at 54 ("When an expert is no longer applying his extensive experience and a reliable methodology, *Daubert* teaches that the testimony should be excluded."). Instead, the expert must form his own opinions by "applying his extensive experience and a reliable methodology" to the inadmissible materials. *Id.* at 58. Otherwise, the expert is simply "repeating hearsay evidence without applying any expertise whatsoever," a practice that allows the Government "to circumvent the rules prohibiting hearsay." *Id.* at 58–59.

**FACTORY MUT. INS. CO. v. ALON USA L.P.**
Cite as 705 F.3d 518 (5th Cir. 2013)

selves when not in court." *Id.* Courts nevertheless must serve a gate-keeping function with respect to Rule 703 opinions to ensure "the expert isn't being used as a vehicle for circumventing the rules of evidence." *In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir.1992). Rule 703 "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 808 (N.D.Ill.2005). The rule "was never intended to allow oblique evasions of the hearsay rule." *Id.*

8

# DEBTORS CANNOT USE MR. MOORE'S PURPORTED INVESTIGATION TO BACKDOOR HEARSAY

"[M]r. Moore's] testimony will address facts drawn from his own involvement in the investigation, his extensive experience, and his review of company books and records, as he has done many times before." - Opposition ¶ 3 (p. 2).

**U.S. v. HAMANN**
Cite as 33 F.4th 759 (5th Cir. 2022)

[14] We have also repeatedly warned the government against "[b]ackdooring highly inculpatory hearsay via an explaining-the-investigation rationale." *Sharp*, 6 F.4th at 582. Those warnings predate even *Crawford*, which heightened courts' scrutiny of evidence incorporating nontestifying witnesses' testimonial statements. In *United States v. Evans*, 950 F.2d 187, 191 (5th Cir. 1991), we explained that such evidence is "inadmissible hearsay if it ... points directly at the defendant and his guilt"; we admonished the government to be "circumspect in its use" and "trial court[s] [to] be vigilant in preventing its abuse." And we have long recognized that "testimony tend[ing] to point directly to a [defendant's guilt is] purely hearsay evidence of that fact." *United States v. Gomez*, 529 F.2d 412, 416 (5th Cir. 1976); *see also Brown v. United States*, 202 F.2d 474, 475 (5th Cir. 1953). Despite our litany of epistles on the

[15] The government must advance a specific reason why it needs to provide inculpatory "context" for its investigation. For instance, it may do so if the defendant opens the door by "challeng[ing] the adequacy of [the] investigation." *Kizzee*, 877 F.3d at 659. Otherwise, there is no reason why it cannot begin its account by explaining that it got a search warrant or that "a tip prompted" it to begin investigating a suspect. *Sharp*, 6 F.4th at 582. Or, if it wishes to include the specifics of the tip, it is always free to call the tipster to testify.

But it may not introduce "highly inculpatory out-of-court statement[s]" and call them nonhearsay context because their value for that purpose "pale[s] in comparison to the risk that the jury will consider" them for the truth of the matters asserted. *Id.*

9

# DEBTORS CANNOT USE MR. MOORE'S PURPORTED INVESTIGATION TO BACKDOOR HEARSAY

"This Declaration is based on my **personal knowledge** ...." - Moore Decl. ¶ 2.

2024 WL 3488079

Only the Westlaw citation is currently available.

United States District Court, W.D. Louisiana, Shreveport Division.

FLAT RIVER FARMS, LLC, et al.

v.

MRC ENERGY COMPANY

CIVIL ACTION NO. 19-1249

|

Signed July 19, 2024

Record Document 112 at 3. This scenario does not render Rambo's testimony permissive under Rules 602 or 701, as Plaintiffs cannot law a proper foundation that he has personal knowledge as contemplated by the Federal Rules of Evidence. Plaintiffs hired Rambo because of his experience as a landman specializing in valuation. His perceptions are not based on his personal experience with the instant matter or his personal knowledge of this matter, *i.e.*, what he heard or saw. Rather, his knowledge was gleaned from his later review of documents. His analysis of data and the creation of the comprehensive spreadsheet does not equate to personal knowledge as required by Rules 602 and 701. Rambo has no firsthand knowledge of the facts of this case, is not a proper lay witness, and his testimony would be impermissible expert opinion. Thus, MRC's Motion in Limine to Exclude Josh Rambo's Testimony (Record Document 102) is **GRANTED**.

10

# RELIEF REQUESTED

- To the extent Mr. Moore's declaration is admitted into evidence, paragraphs 58-163 should be excluded.  Otherwise, Mr. Moore should be precluded from testifying as to:
  - the validity or amount of the claims;
  - statements made by any witness that could have been deposed in the Adversary Proceeding but were not because of the stay—particularly Mr. Graham and Mr. Brumbergs
  - documents that could have been produced in the Adversary Proceeding—and would have but for the Government's stay—particularly those prepared by Mr. Graham and Mr. Brumbergs
  - allocutions or government pleadings

- Mr. Moore should not be able to testify about subjects where he lacks first-hand knowledge, e.g., the investigation can be described (interviewing witnesses) without testifying about what those witnesses said or what the documents purport to say.

- Mr. Moore cannot draw conclusions with respect to subjects where he is not qualified as an expert witness.

- Mr. Kirschner's declaration should be precluded from admission and he should be precluded from testifying on the topics proposed.