**EXHIBIT D**


**APPLIED**
Industrial Technologies®

APPLIED INDUSTRIAL TECHNOLOGIES
2628 A NORTH CULLEN AVE
EVANSVILLE IN 47715-2170
US

(USD)
**2664** **Invoice**

**Phone:** 812-473-2529
**Fax:** 812-473-2623    FID:34-0117420



| BILL- TO: | Account: 0001394351 | Invoice Date: 12/30/2025 | Reprint: 0000 | Invoice Number: 7033647463 | Page: 1 / 2 |
|---|---|---|---|---|---|

| Sales Order #: 1522599256 | PO #: 5423-14059 |
|---|---|
| | Req #: |

BILL- TO:

JASPER RUBBER PRODUCTS - DIP
1010 1ST AVE W
JASPER IN 47546-3201

SHIP TO:       Account: 0001394351

JASPER RUBBER PRODUCTS - DIP
1010 1ST AVE W
JASPER IN 47546-3201
US

| Payment Terms: NET 15 DAYS | | | Delivery Number: | Ship Date: | Ship Via: | AIT DELIVERY AIT DELIVERY |
|---|---|---|---|---|---|---|

Customer Contact:

Customer Contact Phone:

| Quantity | | | Manufacturer Part Number | PO Item # | UOM | Unit Price (USD) | Extended Price (USD) |
|---|---|---|---|---|---|---|---|
| Total Ordered | Back Ordered | Shipped | Customer Part Number | | | | |
| 1.000 | | 1.000 | AUTOMATIC SWITCH CO. XF210D014K15329 Shipped Direct on Applied PO:4514920392 Description:ASCO_XF210D014K15329 1 X 1 NO INSTR AIR OPER | | EA | 1642.260 | 1642.26 |

SUBTOTAL WITHOUT TAX:    1642.26
TAX    114.96

| SUBJECT TO TERMS & CONDITIONS OF SALE AT WWW.APPLIED.COM | Unless there is a written signed agreement between Seller and Buyer, Seller expressly rejects any additional or different terms and conditions contained in Buyer's Purchase order. | TOTAL (USD): | **$1757.22** |
|---|---|---|---|
| | | DATE DUE : | 01/14/2026 |

A LATE FEE OF 1.5% PER MONTH CAN BE ASSESSED

**Special Information:**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Go Green with Email Invoicing!    Contact your local service center to get set up to receive invoices electronically.

**PLEASE RETURN THIS PORTION WITH YOUR PAYMENT**

**BILL TO:**

JASPER RUBBER PRODUCTS - DIP
1010 1ST AVE W
JASPER IN 47546-3201
US

**REMIT TO:**

APPLIED INDUSTRIAL TECHNOLOGIES, INC.
22510 NETWORK PLACE
CHICAGO IL 60673-1225
US

| CUSTOMER # | INVOICE DATE | INVOICE NUMBER | AMOUNT DUE |
|---|---|---|---|
| 1394351 | 12/30/2025 | 7033647463 | **$1757.22** |

00013943519 70336474633 1 00001757228 00001757228 0

**GOODS AND SERVICES SOLD BY APPLIED INDUSTRIAL TECHNOLOGIES, INC. OR ITS AFFILIATED COMPANIES ("SELLER") ARE EXPRESSLY SUBJECT TO THE TERMS AND CONDITIONS SET FORTH BELOW. ANY DIFFERENT OR ADDITIONAL TERMS OR CONDITIONS IN BUYER'S PURCHASE ORDER OR SIMILAR COMMUNICATION ARE OBJECTED TO AND SHALL NOT BE BINDING ON SELLER UNLESS AGREED TO IN WRITING BY A SELLER CORPORATE OFFICER. BY ISSUING A PURCHASE ORDER, ACCEPTING SHIPMENT OR PERFORMANCE, AND/OR PAYING FOR THE GOODS OR SERVICES, BUYER AGREES THAT IT ACCEPTS SELLER'S TERMS AND CONDITIONS OF SALES, INCLUDING WARRANTY POLICY. BUYER FURTHER AGREES THAT ALL INFORMATION PROVIDED BY SELLER, INCLUDING PRICING, IS SELLER'S CONFIDENTIAL INFORMATION AND MAY NOT BE DISCLOSED WITHOUT SELLER'S PRIOR WRITTEN CONSENT.**

**PRICE:** Prices in effect at time of shipment of goods or performance of services shall prevail. All prices quoted by SELLER are subject to correction or change without notice. Prices do not include freight, shipping, handling fees and/ or duties, any present or future sales, use, excise, value-added or similar taxes. Where applicable, such taxes shall be billed as a separate item and paid by Buyer. A standard shipping charge is applied to each invoice for goods to cover the material preparation, packaging, freight and/or any additional costs associated with each shipment based on value and/or weight of the shipment. Additional charges for local delivery may also apply. Export orders may be subject to other special pricing.

**PAYMENT TERMS:** Unless otherwise agreed in writing, terms of payment are thirty (30) days net, without setoff or deduction, from date invoice was mailed or goods are delivered, whichever is earliest, if Buyer's credit has been approved prior to sale. A late payment charge of 1 1/2% per month (an annual percentage rate of 18%) shall be charged on all past due accounts and Buyer shall pay SELLER all costs incurred by it in collecting any past due account from Buyer, including, but not limited to, all court costs and attorney's fees. However, if the foregoing charges exceed that rate which is the maximum permitted by law, then such charges shall be calculated to be the highest allowable lawful rate. The remittance portion of the invoice shall accompany payment. Alternatively, payments and other adjustments must reference the invoice number to assure proper credit.

**CREDIT BALANCE:** Any credit balance issued will be applied within one (1) year of its issuance. IF NOT APPLIED WITHIN ONE (1) YEAR, THE BALANCE REMAINING SHALL BE CANCELLED, AND SELLER SHALL HAVE NO FURTHER LIABILITY EXCEPT AS REQUIRED BY APPLICABLE LAW.

**DELIVERY:** Unless otherwise noted, all domestic sales of goods are made f.o.b. point of shipment (Uniform Commercial Code) and all international sales of goods are made EXW point of shipment Incoterms® 2020. In all cases, title shall pass upon delivery and thereafter all risk of loss or damage shall be upon Buyer. Delivery dates given in advance of actual shipment of goods or performance of services are estimates and shall not be deemed to represent fixed or guaranteed delivery dates. Buyer shall notify SELLER of any nonconforming goods within a commercially reasonable time after Buyer becomes aware of such nonconforming goods.

**WARRANTIES:** Goods are sold only with such warranties as may be extended by the manufacturer of the goods. Services performed by third parties are subject only to those warranties extended by such third parties. For additional warranty information, please review SELLER's Warranty Policy available at WWW.APPLIED.COM or upon request to SELLER. **TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT AS SPECIFICALLY SET FORTH IN THE WARRANTY POLICY.** Buyer is responsible for installation and use in accordance with manufacturer's instructions. Goods are sold for commercial use only and are not intended for use by consumers. SELLER personnel are not authorized to alter this policy. Buyer shall be solely responsible for any warranty it grants to its customer.

**LIMITATION OF LIABILITY:** SELLER takes no responsibility for goods selection, operation, and use, regardless of any recommendations or suggestions made by the SELLER. Buyer shall make selections based upon its own analysis with regard to function, material compatibility, fitness for use or intended purpose, and goods ratings. Any such analysis, including testing, shall be the sole responsibility of Buyer. Proper installation, operation, and maintenance are solely the responsibility of Buyer or its customer. Any specifications listed in SELLER's datasheets, catalog and website are for reference only and are subject to change without notice. **NOTWITHSTANDING ANYTHING TO THE CONTRARY, SELLER'S LIABILITY FOR ANY CLAIM ARISING OUT OF THIS AGREEMENT OR FROM THE PERFORMANCE OR BREACH THEREOF, OR CONNECTED WITH ANY GOODS OR SERVICES SUPPLIED HEREUNDER, OR THE SALE, RESALE, OPERATION OR USE OF GOODS, WHETHER BASED ON CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE OR INDEMNITY) OR OTHER GROUNDS, SHALL NOT EXCEED THE PRICE ALLOCABLE TO SUCH GOODS OR SERVICES OR PART THEREOF INVOLVED IN THE CLAIM, REGARDLESS OF CAUSE OR FAULT.** This limitation of liability reflects a deliberate and bargained-for allocation of risks between SELLER and Buyer and constitutes the basis of the parties' bargain, without which SELLER would not have agreed to the price or terms of this agreement. SELLER shall not under any circumstances, be liable for any labor charges without its prior written consent. **SELLER SHALL NOT IN ANY EVENT BE LIABLE WHETHER AS A RESULT OF BREACH OF CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE OR INDEMNITY) OR OTHER GROUNDS FOR CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL, LIQUIDATED, OR PUNITIVE DAMAGES** including, but not limited to, loss of profits or revenue, loss of use of goods or associated goods, cost of capital, cost of substitute goods, facilities or services, downtime costs, or claims of customers of Buyer for such damage. If SELLER furnishes Buyer with advice or other assistance regarding any goods or services supplied hereunder, or any system or equipment in which any such goods may be installed, and which is not required pursuant to this agreement, the furnishing of the advice or assistance will not subject SELLER to any liability, whether based on agreement, warranty, tort (including negligence or indemnity) or other grounds. Buyer agrees to defend, indemnify and hold Seller harmless from any third party claims arising out of the use, resale, or lease of said furnished goods or services.

**INTELLECTUAL PROPERTY:** Each party will retain exclusive interest in and ownership of its intellectual property developed before this agreement or outside the scope of this agreement. Upon mutual agreement, SELLER hereby grants to Buyer a non-exclusive, world-wide, non-transferable, non-sublicensable, and royalty-free license to use SELLER's pre-existing intellectual property solely for the purpose of using the goods and service provided by the SELLER.

Any intellectual property developed under or related to this agreement shall be the sole and exclusive property of SELLER.

**SUBCONTRACT/SUBSTITUTIONS/INTERCHANGEABILITY:** Buyer agrees that SELLER may subcontract all or any portion of the supply of goods and performance of services to third parties. Buyer agrees that SELLER may store, process and use data and other information provided by Buyer, and Buyer authorizes SELLER to disclose all such data and other information, including Buyer's confidential information, to SELLER's affiliated companies, representatives, suppliers and subcontractors as necessary for such supply of goods or performance of services. Unless specifically restricted on a purchase order, SELLER reserves the right to interchange an

equivalent available goods in place of the goods ordered where the interchangeability of the goods is based on form, fit, and function.

**EQUAL OPPORTUNITY AND L ABOR PRACTICES:** The contract provisions in Section 202 of Executive Order 11246, as amended, and the regulations promulgated thereunder are incorporated by reference as if fully written with respect to any order. SELLER certifies that the goods covered by this invoice have been produced in accordance with the Fair Labor Standards Act of 1938, as amended.

**SAFETY DATA SHEETS ("SDS"):** Unless requested, SELLER will not furnish paper copies of Safety Data Sheets ("SDS"). SDS for OSHA defined hazardous substances are supplied by the manufacturers and/or suppliers and electronically available online at WWW.APPLIED.COM. SELLER MAKES NO WARRANTIES AND EXPRESSLY DISCLAIMS ALL LIABILITY TO ANY CUSTOMER OR USER WITH RESPECT TO THE ACCURACY OF THE INFORMATION OR THE SUITABILITY OF THE INFORMATION IN ANY SDS. CUSTOMER END USER IS SOLELY RESPONSIBLE FOR ANY RELIANCE ON, OR USE OF, ANY INFORMATION, AND FOR USE OR APPLICATION OF ANY GOODS. SELLER will continue to furnish paper copies of SDS for those goods for which a SDS is not electronically available. Paper copies of SDS for all goods may be requested by contacting Seller at 1-877-279-2799 to receive a copy of any SDS via web, facsimile or U.S. mail.

**HAZARDOUS ACTIVITIES:** Unless specifically agreed to in writing by an authorized officer of SELLER, goods or services sold hereunder are not intended for use in connection with any nuclear facility or any other application or hazardous activity which SELLER, in its sole discretion, determines to be high risk or hazardous, or where failure of a single component could cause substantial harm to persons or property. If so used, SELLER disclaims any and all liability for any nuclear damage, contamination or other damage or injury and Buyer shall indemnify and hold SELLER harmless from such liability whether as a result of breach of contract warranty, tort (including negligence or indemnity) or other grounds. SELLER and its suppliers shall not be liable to Buyer or its insurers based on agreement, warranty, tort (including negligence or indemnity), or other grounds for onsite damage to property located at a nuclear facility.

**CANCELLATION AND RETURNS:** Buyer may cancel an order by mutual agreement based upon payment to SELLER of reasonable and proper cancellation charges. Goods shall not be returned by Buyer without SELLER's prior written authorization and payment by Buyer of a minimum restocking charge of 15%. Authorized returns shall be returned at Buyer's sole expense, freight prepaid. There are NO returns of special order or made-to-order items. No returns shall be accepted following 60 days after delivery. No credit will be issued for shipping charges or other special expenses.

**SHORTAGE/OVERAGES:** All shortages and/or overages must be identified within 14 days of the date of shipment.

**FORCE MAJEURE:** SELLER shall not be liable for failure to deliver or for delay in delivery or performance due to: (i) a cause beyond its reasonable control; (ii) an act of God, act or omission of Buyer, act of civil or military authority, governmental priority or other allocation or control, fire, strike or other labor difficulty, riot or other civil disturbance, public health emergency or outbreak, terrorist act, insolvency or other inability to perform by the manufacturer, delay in transportation; or, (iii) telecommunication outage, power outage, security event, or any other commercial impracticability. If such a delay occurs, delivery or performance shall be extended for a period equal to the time lost by reason of delay.

**CHANGE IN BUYER'S FINANCIAL CONDITION:** SELLER reserves the right by written notice to cancel any order or require full or partial payment or adequate assurance of performance from Buyer without liability to SELLER in the event

of: (i) Buyer's insolvency, (ii) the filing of a voluntary petition in bankruptcy by Buyer, (iii) the appointment of a receiver or trustee for Buyer, or (iv) the execution by Buyer of an assignment for the benefit of creditors. SELLER reserves the right to suspend its performance until payment or adequate assurance of performance has been received. SELLER also reserves the right to cancel Buyer's credit at any time for any reason. Buyer, in order to provide security for the payment of the full price of goods furnished hereunder, grants SELLER a security interest in the goods and the proceeds thereof. Buyer agrees to execute any documents or furnish information necessary to perfect this security interest. A copy of the invoice may be filed at any time as a financing and/or chattel mortgage, in order to perfect SELLER's security interest. SELLER may, in its sole discretion require, and Buyer hereby grants to SELLER, a continuing purchase money security interest in all inventory, equipment, and goods sold by SELLER to or for the benefit of Buyer, wherever located, and all accessions and goods and all proceeds from the sale thereof; and all accounts and accounts receivable which may from time to time hereafter come into existence during the term of this Security Agreement. SELLER's purchase money security interest is explicitly limited to outstanding obligations between SELLER and Buyer.

**ASSIGNMENT OR DELEGATION:** Buyer shall not assign, transfer or delegate, whether by operation of law or otherwise, any or all of its duties or rights hereunder without SELLER's prior written consent.

**WAIVER, CHOICE OF LAW AND DISPUTE RESOLUTION:** The failure of either party to assert a right hereunder or to insist upon compliance with any term or condition will not constitute a waiver of that right or excuse any subsequent nonperformance of any such term or condition by the other party. All transactions shall be governed by the laws of the State of Ohio, United States of America, excluding conflict of law rules. Any dispute with a party located in U.S. arising out of or relating to transactions hereunder shall be brought only before any state or federal court with jurisdiction and venue over Cleveland, Ohio, unless all such courts refuse to exercise jurisdiction and venue, and the parties hereby consent to exclusive jurisdiction in such courts. Any claims brought by Buyer shall be escalated to senior management level within both organizations prior to Buyer filing a lawsuit. Trial by jury is hereby waived. Any dispute with a party located outside of U.S., except actions by Seller for nonpayment by Buyer of the purchase price of goods or services sold, shall be settled by binding arbitration in Cleveland, Ohio under Ohio law administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The arbitrators will have the powers a state court judge would have had if the matter had been filed in such court, including equitable powers, except for the power to award punitive damages, which they shall not have. The provisions of the United Nations Convention on Contracts for the International Sale of Goods shall not apply.

**COMPLIANCE WITH L AWS:** Buyer recognizes the goods are utilized in many regulated applications and that from time to time standards and regulations are in conflict with one another. SELLER makes no promise or representation that the goods will conform to any federal, state or local laws, ordinances, regulations, codes or standards, except as particularly specified and agreed upon, in writing as part of the agreement between Buyer and SELLER. SELLER prices do not include the cost of any related inspections, permits or inspection fees.

**SPECIAL TOOLS:** Unless specifically agreed in writing by SELLER, and unless paid for by Buyer as shown on the invoice, all special tools, dies, jigs, patterns, machinery and/ or equipment needed by SELLER for the performance of this sale are, and shall remain, the property of SELLER.

**ORDER ACCEPTANCE:** Buyer acknowledges that no order shall be deemed accepted unless and until it is verified and accepted by SELLER, or any of its U.S. affiliates, subsidiaries and divisions, at a continental U.S. facility or at any of its websites. Buyer further consents that submission of its order shall subject Buyer to the jurisdiction of the federal courts of the United States of America and of the State where acceptance occurred in the United States of America.

**EXPORT CONTROLS AND REL ATED REGUL ATIONS:** Buyer represents and warrants that it is not on, or associated with any organization on the United States Department of Commerce's Bureau of Industry and Security's Denied Persons List or Unverified List; or the United States Department of the Treasury's Office of Foreign Assets Control lists, Specially Designated Nationals, Specially Designated Global Terrorists, Specially Designated Narcotics Traffickers, Specially Designated Narcotic Traffickers-Kingpin, or Specially Designated Terrorists List; or the United States Department of State's Designated Foreign Terrorist Organizations, Embargoed Countries list, or Debarred Persons List; or is subject to a denial order issued by the United States Department of Commerce. Buyer shall comply with all relevant laws and regulations of governmental bodies or agencies, including but not limited to all applicable export control laws of the United States or other governing agencies and their successors. Any commodities, technology and software will be exported from the U.S. in accordance with the U.S. Export Administration Regulations and other applicable laws or regulations. Diversion contrary to U.S. law is prohibited. If requested by SELLER, Buyer shall provide documentation satisfactory to SELLER verifying delivery at the designated country. BUYER AGREES TO INDEMNIFY AND HOLD SELLER HARMLESS FROM ANY AND ALL COSTS, LIABILITIES, PENALTIES, SANCTIONS AND FINES RELATED TO NON-COMPLIANCE WITH APPLICABLE EXPORT LAWS AND REGULATIONS.

**FOREIGN PRINCIPAL PARTY IN INTEREST: FREIGHT FORWARDER AND DOCUMENTATION:** For any export sales, it is specifically agreed that Buyer shall be the foreign principal party in interest and/or that its freight forwarder shall act as Buyer's agent in such capacity for Export Administration Act or other applicable purposes; and Buyer and freight forwarder shall assume responsibility for all export or routed transactions documentation. At SELLER's request, Buyer or its freight forwarder shall provide copies of any export, shipping, or import documentation prepared by Buyer or its freight forwarder related to sales to them by SELLER.

**ANTI-BRIBERY AND ANTI-CORRUPTION:** Buyer states that it is an independent contractor, and represents, warrants, and covenants that it is in compliance with U.S. the Foreign Corrupt Practices Act and all applicable laws and regulations relating to bribery and corruption in all countries in which Buyer conducts business.

**PERMITS, EXPORT, AND IMPORT LICENSES:** Buyer shall be responsible for obtaining any licenses or other official authorizations that may be required by the country of importation and/or under the Export Administration Regulations, International Traffic in Arms Regulations, Toxic Substances Control Act, or other applicable laws or regulations.

**GENERAL:** All orders are subject to acceptance by SELLER. The terms and conditions in SELLER's forms are incorporated herein by reference, and constitute the entire and exclusive agreement between Buyer and SELLER. Any representation, affirmation of fact and course of dealing, promise or condition in connection therewith or usage of trade not incorporated herein, shall not be binding on either party. If any provision hereof shall be unenforceable, invalid or void for any reason, such provision shall be automatically voided and shall not be part of this agreement and the enforceability or validity of the remaining provisions shall not be affected thereby.

Copyright© 2024 Applied Industrial Technologies, Inc. All Rights Reserved. (Rev. 04/09/2024)