## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

---------------------------------------------------------------x-----------------------------------------------------

| | |
|---|---|
| In re | :     Chapter 11 |
| | : |
| **FIRST BRANDS GROUP, LLC,** *et al.*,[1] | :     **Case No. 25-90399 (CML)** |
| | : |
| Debtors. | :     **(Jointly Administered)** |
| | : |
| | : |

---------------------------------------------------------------x------------------------------------------------------

| | |
|---|---|
| **FIRST BRANDS GROUP, LLC,** *et al.*, | : |
| | : |
| Plaintiffs, | :     **Adv. Pro. No. 25-_____ (CML)** |
| | : |
| v. | : |
| | : |
| **PATRICK JAMES, THE PATRICK JAMES** | : |
| **TRUST, ALBION REALTY, LLC,** | : |
| **ALESTER TECHNOLOGIES LLC,** | : |
| **BATTERY PARK HOLDINGS LLC, BOND** | : |
| **STREET ASSET MANAGEMENT LLC,** | : |
| **IGNITE ACQUISITION HOLDINGS LLC,** | : |
| **LARCHMONT LLC,** | : |
| **PEGASUS AVIATION, LLC,** | : |
| **JOHN AND JANE DOE(S) 1-100, and ABC** | : |
| **CORPORATION(S) 1-100,** | : |
| | : |
| Defendants. | : |
| | : |

**AFFIDAVIT OF CHARLES MOORE, INTERIM CHIEF EXECUTIVE OFFICER IN
SUPPORT OF DEBTORS' EMERGENCY APPLICATION FOR PRELIMINARY
INJUNCTIVE RELIEF INCLUDING AN EMERGENCY MOTION FOR A
<u>TEMPORARY RESTRAINING ORDER AND REQUEST FOR HEARING</u>**

---

[1] A complete list of Debtors in these chapter 11 cases may be obtained on the website of Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

FBG_CH1_00089783

Pursuant to 28 U.S.C. § 1746, I, Charles Moore, interim Chief Executive Officer, hereby submit this affidavit (this "**Affidavit**") under penalty of perjury:

1.      I am interim Chief Executive Officer of First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or "**Plaintiffs**" and together with Debtors' non-debtor affiliates, "**First Brands**" or the "**Company**"). I am familiar with the claims and allegations set forth in the Adversary Complaint and in the Emergency Application for Injunctive Relief, Including an Emergency Motion for a Temporary Restraining Order ("**Application**").

2.      Except as otherwise indicated herein, all facts set forth in this Affidavit are based upon my personal knowledge of the Debtors' operations, assets, finances and employees; information learned from my review of relevant documents, including emails, invoices and financial analyses, information provided to me by my team, employees of the Company, the Company's advisors, or my opinion based on my experience, knowledge, and information concerning the Debtors' operations, financial conditions, and the transfers.

3.      I am over the age of 18 and authorized to submit this Affidavit on behalf of the Debtors. If called upon to testify, I could and would competently testify to the facts set forth herein.

**FACTS**

**I.    MR. JAMES CAUSED FIRST BRANDS TO FRAUDULENTLY INCUR BILLIONS OF DOLLARS IN FINANCING**

4.      Founded by Mr. James in 2013, First Brands is a Delaware limited liability company with its principal place of business in Cleveland, Ohio that spans five continents and comprises over 100 entities, all 100% indirectly owned by Mr. James. First Brands is a leading global supplier of aftermarket automotive parts, including brakes, filters, wipers, lights, pumps, and towing solutions. First Brands employs approximately 26,000 individuals worldwide and is

FBG_CH1_00089784

**DEBTORS' EXHIBIT NO. 165**
**Page 2 of 16**
**JOINT EXHIBIT NO. 41**
**Page 2 of 16**

purported to have generated net sales of approximately $5 billion in 2024.

5. Mr. James remains the sole equity holder of the Company.

6. The Patrick James Trust ("**Patrick James Trust**") was created on March 10, 2005, with Patrick James as Grantor and Thomas A. Haught as Trustee. The Patrick James Trust was created in, and continues to be held in, the United States. The Patrick James Trust has bank accounts located in the United States. The remaining corporate Defendants—entities controlled by Mr. James that are not part of First Brands—all were created in, and continue to operate in, the United States.

7. On September 5, 2025, the Debtors retained Alvarez & Marsal North America ("**A&M**") to, among other things, assist with liquidity management and forecasting, identify cost-reduction opportunities, and assist with contingency preparations for a potential chapter 11 filing. On September 24, 2025, Global Assets LLC and 12 of the Debtors each filed with the Court a voluntary case under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), and commencing on September 28, 2025 ("**Petition Date**"), First Brands Group LLC and the remaining Debtors each filed with the Court a voluntary case under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases.

8. As of the Petition Date, First Brands had approximately $6.1 billion in aggregate principal of on-balance sheet outstanding funded debt obligations, at least $2.3 billion in aggregate "off-balance sheet" financings incurred through special purpose vehicles, and approximately $800 million in unsecured supply chain financing liabilities. First Brands, additionally, had at least $2.3 billion in factoring liabilities.

9. As of the Petition Date, the Debtors had approximately $12 million in cash in corporate bank accounts.

FBG_CH1_00089785

**DEBTORS' EXHIBIT NO. 165**
**Page 3 of 16**
**JOINT EXHIBIT NO. 41**
**Page 3 of 16**

10.     Since the Petition Date, the Debtors and the Company's advisors have been working tirelessly to obtain a better understanding of the Debtors' prepetition operations while the Debtors were under the control of their former Chief Executive Officer and founder, Mr. Patrick James.

11.     Since the Petition Date, there have been significant changes to the Debtors' executive management team at the insistence of the Special Committee and recommendation of the Debtors' advisors. Several senior managers who led the Debtors' day-to-day operations before the chapter 11 filing are no longer with the Company, including:

    a.  On September 25, 2025, Mr. Michael Baker, the Debtors' former Chief Corporate Strategy Officer and board member, resigned from all positions he held as an officer, director, manager or board member at all Company entities.

    b.  On September 25, 2025, Mr. Ed James, Mr. Patrick James' brother and former Executive Vice President and board member, resigned from all positions he held as an officer, director, manager or board member at all Company entities.

    c.  On October 12, 2025, Mr. Patrick James, the Debtors' founder and former Chief Executive Officer and controlling shareholder, resigned from all positions he held as an officer, director, manager or board member at all Company entities.

    d.  On October 30, 2025, Mr. Stephen Graham, the Debtors' former Chief Financial Officer and board member, retired from all positions he held as an officer, director, manager or board member at all Company entities. Mr. Graham stopped working as of October 22, 2025.

    e.  On October 30, 2025, Mr. Andy Brumbergs, the Debtors' former Vice President, Finance and board member, was terminated from all positions he held as an officer, director, manager or board member at all Company entities. Mr. Brumbergs stopped working as of October 22, 2025.

12.     On October 13, 2025, I was appointed interim Chief Executive Officer of the Debtors.

13.     On October 24, 2025, Daniel Jerneycic and Gaurav Malhotra were appointed as co-Chief Restructuring Officers of the Debtors.

14.     On October 30, 2025, Paul Kosturos was appointed Chief Financial Officer of the Debtors. His appointment is effective as of November 3, 2025.

4

FBG_CH1_00089786

**DEBTORS' EXHIBIT NO. 165**
**Page 4 of 16**
**JOINT EXHIBIT NO. 41**
**Page 4 of 16**

## II.    MR. JAMES FRAUDULENTLY SECURED FUNDING FOR FIRST BRANDS

15.    While more work needs to be done, based on information learned to date, the Debtors' believe Mr. James improperly secured billions of dollars in financing for First Brands from third parties.

16.    On information and belief, the Company's vendors, customers, and creditors, were largely unaware of the practices described herein.

17.    *First*, Mr. James caused First Brands to incur at least $2.3 billion in accounts receivable factoring liabilities based, at least in significant part, on non-existent and doctored invoices.

18.    *Second*, Mr. James engaged in financing transactions involving special purpose vehicles ("**SPVs**"), which incurred another at least $2.3 billion in debt, including by double-pledging collateral that First Brands could not itself borrow against a second time.

### A.  Third-Party Factoring

19.    Prior to the Petition Date, the Debtors used a variety of factoring arrangements to obtain liquidity. Under these arrangements, First Brands would sell accounts receivable generated from the sale of goods in exchange for near-term payment on invoices with extended payment terms.

20.    First Brands historically entered into two primary types of factoring arrangements before the Petition Date, including arrangements with (i) customers and their financial institution partners ("**Customer Factoring**") and (ii) unaffiliated third-parties ("**Third-Party Factoring**"). In both Customer Factoring and Third-Party Factoring, the Company would transfer a receivable to either a customer partner (by way of a customer) or third-party factor in exchange for a near-term discounted payment on an invoice with lengthy payment terms. Under Customer Factoring arrangements, the customer would pay the factor directly when the receivable came due. However,

FBG_CH1_00089787

**DEBTORS' EXHIBIT NO. 165**
**Page 5 of 16**
**JOINT EXHIBIT NO. 41**
**Page 5 of 16**

under Third-Party Factoring arrangements, the third-party factor would purchase invoices from the Debtors and the Debtors were then required to turn over the payment, once received, to the third-party factor.

21.     The Debtors believe that at least $2.3 billion has accrued with respect to Third-Party Factoring arrangements as of the Petition Date.

22.     The Company's advisors have undertaken significant efforts to understand more about the Third-Party Factoring liabilities. Following interviews and conversations with legacy executive management and other employees, the Company's advisors became aware that the Company had incurred significant liabilities to the third-party factors. A&M subsequently deployed its team to conduct a forensic audit and investigate transactions related to the Third-Party Factoring liabilities, conduct background investigations, and trace cash flows. The Company's advisors worked collaboratively with the Company's third-party factors to obtain other parties' external data regarding what invoices were purchased and the amounts due on account of such invoices. The Company's advisors then reconciled the data acquired from the third-party factors against the Company's internal records, leading to the discovery of significant discrepancies.

23.     Specifically, the Special Committee and Company's advisors have identified three significant issues or discrepancies with the Company's prepetition factoring practices under Mr. James' leadership and direction:

    a.  *First*, in many instances, the amount set forth on a factored invoice did not accurately reflect a customer's order, without any apparent reason for the discrepancy. For example, in some instances, the amount set forth in a factored invoice was ten or more times higher than the actual amount of an invoice.

    b.  *Second*, in many instances, purported invoices representing customer orders were created and submitted to third-party factoring parties for payment *even though the Debtors' books and records, in some cases, do not reflect that such customer invoices existed.*

FBG_CH1_00089788

**DEBTORS' EXHIBIT NO. 165**
**Page 6 of 16**
**JOINT EXHIBIT NO. 41**
**Page 6 of 16**

c. ***Third***, in many instances the same invoice was factored more than once to different third-party factors. There were also instances of factoring the same receivable to both a customer partner factor and a separate third-party factor.

24. In other words, it appears that in certain instances the Debtors sold erroneous or fabricated invoices to the third-party factors.

25. As an example, on May 9, 2025, Brake Parts Inc. LLC sold automotive parts to General Motors Corporation SPO. An invoice for this sale showed a total of $179.84. On May 19, 2025, that invoice, along with thousands of others, were sent to a former First Brands Executive as part of a package of invoices to be nominated to Katsumi Global, LLC, d/b/a Ja Mitsui Capital America ("**Katsumi**") for factoring. When the executive sent the list to Katsumi later that day, it listed the very same Brake Parts Inc. LLC invoice, but this time with a value of $9,271.25, representing an extreme modification from the original May 9, 2025 invoice amount of $179.84. The values of numerous other invoices in the package also had been changed, including some invoices that were listed at net values and purchase prices approximately more than $15,000 and $12,000 higher, respectively, than the invoice value listed in the original document. Ultimately, the factoring company purchased the package of invoices including the modified invoice (along with other invoices) at a cost of approximately $11.18 million, but the actual value of the invoices was only approximately $2.3 million.

26. Upon information and belief, at Mr. James' direction, First Brands fabricated and sold non-existent receivables to unsuspecting third parties, totaling millions of dollars.

**B.** ***Off-Balance Sheet Financing Practices Utilizing* Special Purpose Vehicles**

27. The SPV Debtors are party to off-balance sheet financing structures, including lease, inventory, sale-leaseback and equipment financing arrangements. These arrangements include the CarVal Facilities, Aequum Facilities, Evolution Facilities, and the Onset Master Lease and transactions related thereto (the "**Onset Facility**"). Certain of these off-balance sheet facilities,

FBG_CH1_00089789

including the Evolution Facilities and Onset Facilities, involve an arrangement whereby an SPV Debtor (i) first purchases inventory and/or equipment from certain subsidiaries of First Brands and then (ii) utilizes those assets either as (a) collateral to support a loan from a SPV Lender (in the case of the Evolution Facilities) or (b) in connection with an alleged sale-leaseback transaction (in the case of the Onset Facilities). The Special Committee and Company's advisors have identified multiple potential issues with the Company's off-balance sheet financing arrangements under Mr. James' leadership and direction, each of which is subject to ongoing investigation.

28. *First*, it is the Company's advisors' current understanding that, in the case of the Onset facilities, upon information and belief, in many cases, the amounts paid from the off-balance sheet SPV to the FBG subsidiary for inventory and/or property, plant and equipment (PP&E) was less than the stated sale price specified in the relevant asset purchase agreements. As a result, the Debtors expect significant questions will need to be resolved to determine if the transfers were in compliance with the Prepetition Credit Agreements, which provide for the automatic release of liens in the event collateral is exchanged for fair value.

29. *Second*, upon information and belief, it appears that inventory that was purportedly transferred by First Brands subsidiaries to the SPV Debtors in connection with certain of the off-balance sheet facilities, namely the Evolution Facility and the Onset Facility, remained on the First Brands subsidiaries' balance sheets, notwithstanding the alleged transfers. Also, the value of such inventory appears to have remained in the borrowing base for the First Brands credit facilities, including the Debtors' ABL Facility. Accordingly, it is the Debtors' current understanding that the value of the same inventory was used to support loans to both (i) the First Brands subsidiaries and (ii) the SPV Debtors.

30. *Third*, based on the Debtors' current knowledge and belief, cash from Onset was

FBG_CH1_00089790

transferred to a non-Debtor entity controlled by Mr. James known as "Bowery Finance II." Upon information and belief, inadequate books or records were maintained for these SPV Debtors, and cash that was supposed to be transferred to the FBG subsidiaries under the applicable transaction documents was transferred to Bowery Finance II instead. Upon information and belief, the Bowery Finance II account was used as a slush fund. From 2022 through 2025, nearly $12 billion flowed through the account, including transfers between Patrick James, his Trust and his affiliated entities, and transfers with FBG and FBG's business units. The transfers were apparently made to facilitate repayments due to Onset and the factoring companies.

31.    Similarly, upon information and belief, Evolution Credit Opportunity Master Fund II-B, L.P. ("**Evolution**") lent approximately $240 million to a SPV Debtor, against what First Brands represented was $370 million of First Brands' inventory on the SPVs balance sheet. First Brands, however, kept that inventory for itself, without paying the SPV, and by the end of September 2025, few if any assets remained in the SPV.

32.    The Company's advisors are currently reviewing to determine which transactions and proceeds related to the Onset Facility benefitted either the applicable SPV Debtors or FBG or if fair consideration was never received by the FBG subsidiaries for inventory and PP&E transferred.

## III.    MR. JAMES MISAPPROPRIATION OF DEBTORS' FUNDS FOR HIS AND HIS FAMILY'S PERSONAL BENEFIT

33.    At the same time as First Brands, under Mr. James' leadership and direction, was engaged in the activities described above, Mr. James was misappropriating hundreds of millions, if not billions, of dollars from First Brands.

FBG_CH1_00089791

34.     Upon information and belief, Mr. James' misappropriation of funds from First Brands involved, at a minimum, (i) improper dividends or distributions to the Patrick James Trust, (ii) direct transfers of the proceeds of financing transactions, and (iii) brazen use of First Brands' funds to pay for Mr. James' and his family's lifestyle and personal businesses.[2]

### A. Improper Dividends and Distributions to Mr. James' Trust

35.     While the Debtors' investigation remains ongoing, upon information and belief, hundreds of millions of dollars were transferred from First Brands directly to Mr. James or his affiliated entities from 2018 to 2025, with the majority of such transfers occurring between 2023 and 2025. The Debtors also understand that during this period, funds may have been transferred into the Company from Mr. James or his affiliated entities, but Mr. James has never provided a comprehensive accounting of the amounts or purposes of all of the transfers made between and among First Brands and Mr. James and his affiliated entities.

36.     The majority of these funds transferred out of the Company appear to have been distributed to Mr. James' family trust. The Debtors are currently not aware of any information to suggest these transactions were made for any benefit or consideration received by the Company.

37.     Upon information and belief, Mr. James personally directed distributions from the Company to his trust, specifying the amount and destination accounts for each payment. For example, in January 2024, internal communications among senior individuals at First Brands indicated that Mr. James "wanted to have the distribution funds sent" to two accounts belonging to Mr. James' Trust, divided into batches of $21 million and $4 million. That day, First Brands distributed $25 million into an account belonging to Mr. James' Trust. Again, in October 2024, a

_____

[2] These include at least the entities controlled by Mr. James named as Defendants in this action.

FBG_CH1_00089792

DEBTORS' EXHIBIT NO. 165
Page 10 of 16
JOINT EXHIBIT NO. 41
Page 10 of 16

senior individual at First Brands indicated that he had been "instructed to make a $25 million USD distribution" to a Patrick James Trust account. First Brands distributed $25 million into the specified account that same day.

38.    Aside from entries in the Company's general ledger, the Company's advisors are unaware of any formal documentation indicating that all of these payments constituted dividends or distributions in the ordinary course. These payments continued well into 2025, irrespective of First Brands' true financial position.

39.    Upon information and belief, there was no legitimate business reason for Mr. James to transfer hundreds of millions of dollars from First Brands to the Patrick James Trust, especially given that First Brands was left with just $12 million in the bank as of the Petition Date. Over $700 million was funneled from First Brands directly to Mr. James and his affiliated entities from 2018 to 2025. Over $600 million was distributed directly from First Brands' bank accounts to Defendant Patrick James Trust, a trust held by Mr. James, for no consideration and for no valid business purpose.

### B.   Fraudulent Transfers of the Proceeds of Debt Financings

40.    On information and belief, Mr. James' dissipation of First Brands' funds for his own personal use was directly and proximately connected to his efforts to secure funding for First Brands described above.

41.    For example, at the start of the day on April 4, 2025, Carnaby FA, an SPV that sits under Viceroy Private Capital, LLC (both siloed SPVs that are not subsidiaries of First Brands Group, LLC) had just $4,833.98 in its account. On that same day Carnaby FA received $67.2 million as part of a purported sale-leaseback transaction from Onset, ostensibly collateralized by First Brands' assets. Then, also on April 4, 2025, Carnaby FA—an entity which, that very morning had less than five thousand dollars in its bank account—paid the Patrick James Trust

FBG_CH1_00089793

DEBTORS' EXHIBIT NO. 165
Page 11 of 16
JOINT EXHIBIT NO. 41
Page 11 of 16

approximately $17 million.

42.     Additionally, on January 15, 2025, the bank account for Carnaby Inventory IV LLC ("**Carnaby IV**")—another SPV sitting under Viceroy Private Capital, LLC—had just $22,137.40 in its account at the beginning of the day. On that same day, Onset provided approximately $192 million in a purported sale-leaseback, again ostensibly collateralized by First Brands' assets. The same day, Carnaby IV paid $25 million into an account for the Patrick James Trust.

43.     Similarly, Onset provided a purported sale-leaseback in the amount of $115.2 million on March 10, 2025, which was followed the same day by a $35 million transfer from Carnaby IV to Defendant Patrick James Trust. Following additional transfers, Carnaby IV held only $16.9 million in its account by March 11, and on March 12, Onset provided another $57.6 million from a purported sale-leaseback. On March 13, Carnaby IV transferred an additional $35 million to Patrick James Trust. By the beginning of the day on March 17, 2025, Carnaby IV held only a balance of $2,952.95.

44.     The Debtors' investigation has revealed over $1 billion in total financing received from Onset between April 2024 and March 2025, over approximately $200 million of which was paid to Mr. James or his affiliated entities. We continue to investigate amounts paid to Mr. James from earlier Onset transactions.

### C. Mr. James Commingled His Personal Accounts With Company Accounts and Diverted First Brands' Funds to Pay for His and His Family's Lavish Lifestyle

45.     Upon information and belief, Mr. James also intentionally commingled First Brands' business accounts with personal funds and used First Brands' funds for his and his family's personal expenses and personal businesses.

46.     Indeed, upon information and belief, certain of the SPV Debtors' cash was frequently commingled with the cash of non-Debtor entities, including Bowery Finance II,

FBG_CH1_00089794

DEBTORS' EXHIBIT NO. 165
Page 12 of 16
JOINT EXHIBIT NO. 41
Page 12 of 16

controlled by Mr. James.

47.     Upon information and belief, the funds received by Defendants have not been returned by Mr. James to First Brands and contributed to First Brands' insolvency. Aside from entries in the Company's general ledger, the Company's advisors are unaware of any formal documentation indicating that these payments constituted dividends or distributions in the ordinary course.

48.     The Debtors have identified payments that were made directly from First Brands accounts to Mr. James, his family, and their personal staff and businesses. These include over $2 million in 2025 in payroll for Mr. James' "family office," at least $3 million between 2019 through 2024 paid towards rent of Mr. James New York City townhouse, and approximately $500,000 paid to Mr. James' private celebrity chef in in 2025.

49.     Similarly, from 2021 through 2025, First Brands transferred approximately $8 million from First Brands to his son-in-law's "wellness" company, Archive Health LLC. At least one transfer to Archive Health was requested by Mr. James' son-in-law to help "cover payroll." It is unclear if fair value was ever received by First Brands for the funds transferred to Archive Health.

50.     In 2024 alone, Mr. James moved over $100 million out of bank accounts belonging to First Brands and into bank accounts belonging to him or entities associated with him, including personal businesses and Defendant Patrick James Trust.

51.     Other payments were made from First Brands to entities controlled by Mr. James, named as Defendants in this action. For example, Battery Park Holdings LLC ("**Battery Park**")— which is not directly affiliated with First Brands—is 100% owned by Mr. James and is described as a "personal" business in Mr. James' financial documents. On information and belief, more than

FBG_CH1_00089795

$10 million was transferred from First Brands to Battery Park from 2018 to 2025 to pay Mr. James and his family's personal expenses, including approximately $150,000 for a celebrity personal trainer.

52.     Indeed, upon information and belief, Mr. James directed colleagues to submit invoices to First Brands for reimbursement to Battery Park, wherein line items for personal and business expenses were included in the same invoice. For example, in an invoice submitted by Battery Park to First Brands on August 23, 2023, Mr. James' entity, Battery Park, sought reimbursement for over $110,000 for a six week "Southampton hotel" stay for two individuals who were not affiliated with First Brands.

53.     Upon information and belief, Defendants Albion Realty, LLC, Alester Technologies LLC, Battery Park Holdings LLC, Bond Street Asset Management LLC, Ignite Acquisition Holdings LLC, Larchmont LLC, Pegasus Aviation, LLC were likewise recipients of transfers of funds from First Brands during this period.

54.     From 2018 to 2025, approximately $35 million was transferred to Larchmont LLC, another entity owned and controlled by Mr. James that is unrelated to First Brands and appears to bear no legitimate business relationship to First Brands. Significant additional transfers totaling in the millions of dollars were also made from First Brands to Mr. James' real estate holding company (Albion Realty LLC) over the same period.

55.     Upon information and belief, money transferred from First Brands to Mr. James also occurred in close proximity to his acquisition of various real estate properties and cars. For example, in the two months prior to purchasing a home in Malibu on September 13, 2019, various entities unrelated to First Brands over which Mr. James has complete control received disbursements from First Brands amounting to several million dollars. Likewise, in the

FBG_CH1_00089796

DEBTORS' EXHIBIT NO. 165
Page 14 of 16
JOINT EXHIBIT NO. 41
Page 14 of 16

two months prior to purchasing a home in the Hamptons on August 31, 2021, certain entities controlled by Mr. James received over $1 million from First Brands.

56. On information and belief, Mr. James owns at least seven properties. Mr. James also owns an extensive car collection, including at least seventeen exotic cars.

57. The transaction documentation that Debtors have uncovered fails to show that Mr. James' transfers were made for any legitimate business purpose.

58. Upon information and belief, many of the transactions seem to have been made without any contemporaneous documentation of their purpose at all.

59. Mr. James continues to have the ability to further deplete the estates' funds by spending or diverting money that has been transferred to accounts and entities under his control. If his assets are not frozen, there is an immediate and significant risk that he will transfer the estates' funds to entities outside of the United States, potentially in ways that may make these funds difficult or impossible to recover in First Brands' bankruptcy proceedings.

60. Mr. James, moreover, is a Malaysian national with hundreds of millions of dollars at his disposal and is reported to be the subject of an investigation by the United States Attorney for the Southern District of New York, and others, giving rise to significant concerns regarding abscondment.

<strong><u>CONCLUSION</u></strong>

61. My counsel has advised me that all of the requirements for emergency injunctive relief have been met. Debtors request emergency injunctive relief to freeze any and all bank accounts and other property owned or controlled by Defendants or any other entities under their control, and prevent further transfer or depletion of the property of the Debtors.

FBG_CH1_00089797

<strong>DEBTORS' EXHIBIT NO. 165<br>Page 15 of 16<br>JOINT EXHIBIT NO. 41<br>Page 15 of 16</strong>

Dated: November 3, 2025

/s/ Charles M. Moore
Charles M. Moore
Interim Chief Executive Officer

16

FBG_CH1_00089798

**DEBTORS' EXHIBIT NO. 165**
**Page 16 of 16**
**JOINT EXHIBIT NO. 41**
**Page 16 of 16**