## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : |
| FIRST BRANDS GROUP, *et al.*, | : Case No. 25-90399 (CML) |
|  | : |
| Debtors.[1] | : (Jointly Administered) |
|  | : |
|  | : |
| FIRST BRANDS GROUP, LLC, *et al.*, | : |
|  | : Adv. Pro. No. 25-03803 (CML) |
| Plaintiffs, | : |
|  | : |
| v. | : |
|  | : |
| PATRICK JAMES; THE PATRICK JAMES | : |
| TRUST; ALBION REALTY, LLC; ALESTER | : |
| TECHNOLOGIES LLC; BATTERY PARK | : |
| HOLDINGS LLC; LARCHMONT LLC; PEGASUS | : |
| AVIATION, LLC; MICHAEL BAKER; PETER | : |
| ANDREW BRUMBERGS; STEPHEN GRAHAM; | : |
| JOHN AND JANE DOES 1-100; and ABC | : |
| CORPORATIONS 1-100, | : |
|  | : |
| Defendants. | : |
|  | : |

## DEFENDANT MICHAEL BAKER'S MOTION TO DISMISS
## PLAINTIFFS' AMENDED COMPLAINT

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

FBG_CH1_00089934

**DEBTORS' EXHIBIT NO. 169**
**Page 1 of 32**
**JOINT EXHIBIT NO. 45**
**Page 1 of 32**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

MOTION TO DISMISS ........................................................................................................... 6

I.      All Claims Against Mr. Baker Fail Federal Pleading Standards. ...................................... 6

        A.      Plaintiffs' Improper Group Pleading and Conclusory Allegations Against Mr.
                Baker Fail to Satisfy Fed. R. Civ. P. 8(a). ............................................................ 8

        B.      Plaintiffs' Generic Fraud-Based Allegations Against Mr. Baker Fail to Satisfy Fed.
                R. Civ. P. 9(b). .................................................................................................... 10

II.     Plaintiffs Fail to State Any Fiduciary Duty Claims Against Mr. Baker. ........................... 14

        A.      Plaintiffs Failed to Plausibly Allege a Fiduciary Duty Owed by Mr. Baker to Any
                Specific Entity, or that Mr. Baker Breached Any Fiduciary Duty Owed. ............. 14

        B.      The LLC Agreements Validly Eliminated Any Fiduciary Duties. ........................ 16

        C.      Any *Caremark* Oversight Claim Fails to Satisfy Federal Pleading Standards. .... 19

        D.      The Amended Complaint Fails to Plead Facts Sufficient to Overcome the
                Business Judgment Rule. ..................................................................................... 21

III.    Any Aiding and Abetting Claim Against Mr. Baker Fails. ............................................... 23

        A.      The Elimination of Fiduciary Duties Renders Aiding and Abetting Impossible. . 23

        B.      Any Aiding and Abetting Claim Fails on Multiple Other Grounds. ..................... 23

IV.     Plaintiffs Fail to State a Civil Conspiracy Claim Against Mr. Baker. ............................... 26

        A.      Plaintiffs Fail to Identify an Underlying Tort. ..................................................... 26

        B.      The Intra-Corporate Conspiracy Doctrine Independently Bars Any Conspiracy
                Claim Against Mr. Baker. ..................................................................................... 29

CONCLUSION ...................................................................................................................... 29

FBG_CH1_00089935

DEBTORS' EXHIBIT NO. 169
Page 2 of 32
JOINT EXHIBIT NO. 45
Page 2 of 32

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Defendant Michael Baker ("Mr. Baker") respectfully moves to dismiss all claims against him under Fed. R. Civ. P. 12(b)(6), 8(a), and 9(b), made applicable to this adversary proceeding by corresponding Bankruptcy Rules 7012, 7008, and 7009.

## PRELIMINARY STATEMENT

1.     Mr. Baker does not belong as a defendant in this proceeding.  Neither the Amended Complaint's allegations, nor the law, nor the facts provides a basis for including him.  Mr. Baker is the only individual defendant who has not been criminally charged.  Patrick James is alleged to have orchestrated a multi-billion-dollar fraud.  Peter Brumbergs pled guilty to eight federal counts, including wire fraud, bank fraud, and money laundering.  Stephen Graham pleaded guilty to four counts and signed a cooperation agreement with the government.  Mr. Baker has not been charged with anything, by anyone, anywhere.

2.     When it became clear to Mr. Baker that significant information was being withheld from him—information that had never been disclosed to him and would later be revealed by the bankruptcy filing and thereafter—Mr. Baker did exactly what an innocent person would do: he resigned.  He made that decision independently, on his own volition, without any communication from or direction by the Special Committee, restructuring advisors, or any other party as has been erroneously suggested in the Debtors' prior pleadings.  And although the Debtors now accuse Mr. Baker of breaching fiduciary duties and other wrongful conduct, their counsel questioned Mr. Baker's months-earlier resignation from certain overseas entities, ironically taking the position

1

FBG_CH1_00089936

**DEBTORS' EXHIBIT NO. 169**
**Page 3 of 32**
**JOINT EXHIBIT NO. 45**
**Page 3 of 32**

after filing the Amended Complaint that he was still a director because of the Debtors' failure to properly effectuate his resignation. Should this case proceed to the merits (and it should not), the facts ultimately will exonerate Mr. Baker and demonstrate he has been unfairly targeted and besmirched. Even at this early stage, however, when the well-pleaded, non-conclusory factual allegations of the Amended Complaint must be treated as true, Plaintiffs have failed to allege any valid claim against him.

3. With respect to the matters addressed in the Amended Complaint, Mr. Baker was not a part of the First Brands inner circle. He believes that a fundamental element of the alleged fraud was keeping him in the dark. Patrick James and his brother, Edward (who is mysteriously omitted from the Amended Complaint notwithstanding his indictment and apparently significant efforts in furthering the alleged scheme) could not have sustained billions in fraudulent financing by deploying only knowing participants in front of sophisticated institutional lenders. The lenders who extended credit to First Brands knew Mr. Baker's name and reputation on Wall Street as a Chambers-ranked leveraged finance partner at two leading international law firms; they knew he would not sacrifice a decades-long career of credibility for a salary far less than what he would have been earning as a law firm partner during the same period. His genuine belief in what he was representing was necessary to his willingness to work for First Brands. The alleged scheme therefore depended structurally on Mr. Baker's unawareness, not least so that those involved could continue benefitting from Mr. Baker's reputation in the marketplace.

4. To perpetrate the scheme, evidence uncovered by the government demonstrates Mr. James and his inner circle maintained separate books and imposed strict controls over access to financial information.[2] Consistent with the foregoing, these same individuals also excluded Mr.

---

[2] *See U.S. v. Brumbergs*, Case No. 26-cr-25 (S.D.N.Y.), Dkt. No. 13 at 27-31.

FBG_CH1_00089937

**DEBTORS' EXHIBIT NO. 169**
**Page 4 of 32**
**JOINT EXHIBIT NO. 45**
**Page 4 of 32**

Baker from information regarding cash movements and tightly controlled his access to the Onset Financial relationship, while concealing from him the double-pledging, fabricated invoices, and hidden liabilities behind financial statements that the former CFO has now admitted he knew were false.

5.      Also consistent with Mr. Baker's exclusion, the Debtors' counsel—despite having had access to countless documents and despite interviewing numerous First Brands employees—never once sought to interview him while he remained at the Company about the wrongdoing now alleged in this Amended Complaint.  If counsel's work had revealed evidence of Mr. Baker's participation in fraud or other wrongdoing, there would have been every reason to confront him with it then or to plead facts showing that wrongdoing now.  But the Debtors have not pleaded a single document, *indeed not even a single action*, in the Amended Complaint in support of the claims against Mr. Baker.  That should tell the Court and the world all they need to know.

6.      The truth is that the real reason Mr. Baker was added to this complaint is not the evidence—it is the insurance.  Given the alleged (and for some, admitted) criminal conduct by the other individual defendants, Mr. Baker is the only individual defendant whose inclusion in this lawsuit could trigger potential recovery under the company's directors' and officers' insurance policy. James is the alleged mastermind. Brumbergs and Graham have pleaded guilty.  The entity defendants are James-controlled shells.  None of these defendants offers a viable path to a D&O insurance recovery.  Mr. Baker does.  He is a former officer with the profile that could sustain a covered claim—but no such claim is viable.  His status as a former employee might explain why he was singled out because other individuals who were involved in the financing transactions described in the Amended Complaint remained with the Debtors post-bankruptcy and have not been sued here.

3

FBG_CH1_00089938

7. The Amended Complaint, however, fails to state any valid claims against Mr. Baker. Despite identifying "four discrete strategies" by which Patrick James allegedly defrauded third-party lenders—factoring, supply chain financing, SPV lending, and the alteration of First Brands' financial statements—the Amended Complaint does not even attempt to tie Mr. Baker to three of those four strategies. Plaintiffs do not allege that Mr. Baker was involved in doctoring or falsifying invoices to be factored; committing fraud on supply chain financers; or manipulating First Brands' financial statements. Rather, Plaintiffs only allege—with precisely worded imprecision—that Mr. Baker somehow was "responsible" for certain financing initiatives, "including off-balance sheet SPV structures." Am. Compl. ¶ 117. Such allegations are marked by a conspicuous omission: the lack of any allegations that Mr. Baker was involved in falsifying borrowing certificates or acting wrongfully in connection with SPV transactions. The Debtors' entire theory reduces to this: Mr. Baker "assisted [Patrick] James in structuring transactions." *Id.* ¶ 118. That describes a job function and, to the extent it complains about the incurrence of debt without more, a non-cognizable deepening insolvency theory—not a fraud or wrongful conduct.

8. The legal structures attacked by the Debtors were designed and documented by outside counsel—both for the Debtors and the lenders. Any fraud lay in how others subsequently operated and exploited those structures—through false certifications, concealed liabilities, and cash movements from which Mr. Baker was deliberately kept ignorant because his ignorance was essential to perpetuating the scheme and trading on his name.

9. The Debtors disingenuously characterize Mr. Baker's $13.1 million in compensation over five years as evidence of misconduct. The Amended Complaint incomprehensibly alleges, in substance, that Mr. Baker would choose to throw away his hard-earned, excellent reputation—built over more than twenty years of distinguished legal practice—

FBG_CH1_00089939

for compensation less than what he previously was earning, and significantly less than what he would have been earning today, as a partner at an AmLaw 20 law firm. The characterization is wrong. First Brands owes Mr. Baker approximately $4 million in guaranteed compensation it never paid. A person to whom the company owes that sum is among its creditors, not a beneficiary of the fraud, and is now named as a defendant by the very company that owes him his salary.

10. Although the Debtors' three conclusory claims against Mr. Baker—for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and civil conspiracy—also suffer from numerous legal flaws, basic pleading deficiencies require dismissing Mr. Baker from this case.

11. *First*, the Amended Complaint fails to articulate what fiduciary duties Mr. Baker owed and to which entities. Setting aside that the absence of these allegations is fatal, the LLC agreement for First Brands Group, LLC (and other Debtor operating agreements) eliminated fiduciary duties entirely, as permitted by Delaware law. Courts recognize that such clauses preclude claims for breach of fiduciary duty, like the one Plaintiffs advance here. Even if those clauses could somehow be disregarded, the claim still would fail: to the extent the breach of fiduciary duty claim is founded on fraud, the Amended Complaint's bare-bones allegations as to Mr. Baker fail to satisfy Rule 9(b)'s heightened pleading standard; to the extent premised on supposed lack of oversight, Plaintiffs impermissibly rely on the fact of their losses rather than detailed allegations of Mr. Baker's role and what he did or failed to do. *Second*, the elimination of fiduciary duties in the LLC agreements likewise precludes the aiding and abetting claim, and the Amended Complaint's assertions of Mr. Baker's supposed knowledge and substantial assistance amount to nothing more than group-pled and conclusory generalities. And in any event, Delaware does not recognize deepening insolvency as a basis for a breach of fiduciary duty. *Third*, the civil conspiracy claim under Ohio law fails because First Brands does not specify the

5

FBG_CH1_00089940

**DEBTORS' EXHIBIT NO. 169**
**Page 7 of 32**
**JOINT EXHIBIT NO. 45**
**Page 7 of 32**

underlying tort, sets forth no allegations of Mr. Baker's participation in a "malicious combination," and runs headlong into the intra-corporate conspiracy doctrine. Each of these flaws separately compels dismissal. For these and other reasons discussed below, the claims against Mr. Baker should be dismissed in their entirety with prejudice.

12. Under Fed. R. Bankr. P. 7012(b), Mr. Baker does not consent to the entry of final orders or judgment by the Bankruptcy Court. Mr. Baker also denies any suggestion in the Amended Complaint that the claims against him are core. *See* Am. Compl. ¶ 34 (globally alleging that "[t]his adversary proceeding is a core proceeding" even though the only causes of action against Mr. Baker are non-core, pre-petition fiduciary duty and conspiracy claims under state law).

## MOTION TO DISMISS

### I. All Claims Against Mr. Baker Fail Federal Pleading Standards.

13. Under Supreme Court pleading standards, "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Conclusory statements "are not entitled to the assumption of truth." *Id.* at 679-81. A complaint therefore must "contain sufficient *factual matter*, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (emphasis added).

14. Failure to meet federal pleading standards under Rule 8(a)(2) mandates dismissal under Rule 12(b)(6). *See Cunningham v. PlainsCapital Bank*, No. CV H-25-2602, 2025 WL 2174765, at *2 (S.D. Tex. July 31, 2025). Importantly, "[a] pleading must provide specific factual allegations of violations against specific defendants to suffice," and "[u]sing the collective term Defendants . . . with no distinction as to what acts are attributable to whom fails to meet the fair notice standard under Rule 8." *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71, 2021 WL 5393829, at *4 (W.D. Tex. Nov. 17, 2021) (cleaned up) (in a telephone solicitation case,

6

FBG_CH1_00089941

DEBTORS' EXHIBIT NO. 169
Page 8 of 32
JOINT EXHIBIT NO. 45
Page 8 of 32

considering only the details of a single alleged telephone call as against the movant, while declining to consider "assertions [made] against all defendants generally," because the plaintiff had only connected one call to that defendant with "specific factual allegations"); *In re Goodman Networks, Inc.*, No. 22-31641-MVL7, 2025 WL 73072, at *8 (Bankr. N.D. Tex. Jan. 10, 2025) ("[A]ttributing discrete actions . . . to all or multiple defendants without explaining the basis for such grouping or distinguishing between the relevant conduct of the named Defendants—is often insufficient under Rule 8(a) within the Fifth Circuit.") (cleaned up); *Rowland v. Sw. Corr., LLC*, No. 4:20-CV-00847, 2021 WL 4206409, at *13 (E.D. Tex. Aug. 17, 2021), *report and recommendation adopted*, 2021 WL 4191433 (E.D. Tex. Sept. 15, 2021) ("Plaintiff's live pleading impermissibly lumps Defendants together without any allegations of individualized conduct. The Court is unable to discern the specific duties owed, and conduct alleged to have breached those duties, as to each Defendant. Plaintiff cannot hide behind group pleading.").

15.     Despite an investigation in which Plaintiffs and their counsel presumably reviewed countless documents (including those from Mr. Baker's corporate email account), ***Plaintiffs failed to allege even a single event of misconduct by Mr. Baker*** in their 50-page Amended Complaint; only generic allegations and group pleading where he is named alongside others or Plaintiffs offer sweeping, categorical conclusions about his conduct without any supporting allegations of fact. As explained more fully below, this mandates dismissal of all claims against him.  *See Goodman Networks*, 2025 WL 73073 (finding trustee's allegations sufficient against certain defendants, but not as to others, noting that "the significant time and energy [the complaint] spends detailing MSouth, 1Path, and the Onepath Defendants' collective actions only draws more attention to the lack of any tangible tie to the others."); *Coulter v. Deere & Co.*, No. CV H-21-2105, 2022 WL 912778, at *3 (S.D. Tex. Mar. 29, 2022) (plaintiffs' "general allegations of actual knowledge"

FBG_CH1_00089942

**DEBTORS' EXHIBIT NO. 169**
**Page 9 of 32**
**JOINT EXHIBIT NO. 45**
**Page 9 of 32**

were conclusory and insufficient without any pleading of "specific facts to support their conclusory allegations that the defendants had actual knowledge of a defect").

A. **Plaintiffs' Improper Group Pleading and Conclusory Allegations Against Mr. Baker Fail to Satisfy Fed. R. Civ. P. 8(a).**

16. The Amended Complaint identifies "four discrete strategies" by which Patrick James allegedly defrauded Plaintiffs' third-party lenders: (1) factoring, (2) supply chain financing, (3) SPV lending, and (4) altering First Brands' financial statements. For three of those four strategies, the Amended Complaint makes no attempt to allege facts in support of a claim against Mr. Baker. Specifically, Plaintiffs allege no facts which, taken as true, would show that that Mr. Baker was involved in doctoring or falsifying invoices to be factored, committing fraud on supply chain financers, or manipulating financial statements. *See* Am. Compl. ¶¶ 4-8 (summary of strategies); ¶¶ 46-52 (factoring, naming only James and Brumbergs); ¶¶ 62-66 (supply chain financing, naming only James, Brumbergs, and Graham); ¶¶ 67-69 (altered financial statements, naming only James, Brumbergs, and Graham).

17. As for the remaining category, SPV lending, Plaintiffs allege—albeit in purely conclusory fashion—that Mr. Baker was "responsible for evaluating, structuring, and implementing financing initiatives and strategic initiatives, including off-balance sheet SPV structures." *See* Am. Compl. ¶ 117. These vague allegations are marked by a conspicuous omission: the lack of any facts which, taken as true, would support a finding that Mr. Baker violated any legal duties in the course of this work. At their core, these minimal allegations show Mr. Baker in his capacity as Chief Corporate Strategy Officer was doing his job: helping source financing for his employer.

18. There is nothing inherently wrong with SPVs (or "evaluating, structuring, and implementing financing initiatives and strategic initiatives"), and the Amended Complaint does

8

FBG_CH1_00089943

not allege otherwise.  Indeed, many companies use special purpose entities as part of their financing arrangements.  Likewise, the Amended Complaint alleges "on information and belief" that Mr. Baker "reviewed, authorized, or directed the preparation and transmission of borrowing base certificates, amendments, and related transaction documents."  *Id*.  But again, these conclusory allegations do not contain a single statement of fact showing that Mr. Baker did anything wrong—or knew anything in those documents was wrong—and therefore cannot support any claims.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557).

19.     The same is true for the next paragraph, ¶ 118, which generically alleges that Mr. Baker exercised responsibility for the design of financing structures, had visibility into collateral and cash movements, coordinated borrowing-base submissions, communicated with lenders regarding collateral, created facilities in which the same inventory was presented as collateral to multiple lenders, and assisted in transaction structures that resulted in the transfer of First Brands' funds to other entities.  Fundamentally missing is any allegation that Mr. Baker did anything wrong in these transactions or knew there was anything wrong with these transactions.  There is nothing inherently wrong with any of the events alleged in paragraph 118, so merely alleging that Mr. Baker participated in them does not supply well-pleaded factual allegations that Mr. Baker breached a duty or conspired with others.[3]  For example, even assuming, as alleged, that Mr. Baker

---

[3] *See Iqbal*, 556 U.S. at 678; *see also United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 Fed. Appx. 892, 897 (5th Cir. 2020) ("Rule 8(a) prohibits any claims that are merely conceivable rather than plausible. A claim is merely conceivable and not plausible if the facts pleaded are consistent with both the claimed misconduct and a legal and "obvious alternative explanation.") (footnotes omitted) (rejecting claims based on conduct that was consistent both with wrongdoing and with legitimate behavior)

FBG_CH1_00089944

**DEBTORS' EXHIBIT NO. 169**
**Page 11 of 32**
**JOINT EXHIBIT NO. 45**
**Page 11 of 32**

coordinated borrowing base submissions (which is inaccurate), were the specific submissions that *he* coordinated false? If so, did *he* know they were false? Likewise, assuming the same inventory was presented as collateral to multiple lenders in a transaction with Mr. Baker's involvement, did the lenders know about it (in those specific transactions)? Did Mr. Baker? Assuming that Mr. Baker designed financing structures, did he know they would be abused? If he saw cash and collateral moving (which he did not), did anything appear amiss? The Amended Complaint does not plead facts to answer any of these questions because its allegations against Mr. Baker are conclusory and inadequate under Rule 8.

20.     Rather than pleading facts sufficient to establish wrongdoing by and an entitlement to relief from Mr. Baker, the Amended Complaint relies on guilt by association—far from sufficient under federal pleading standards. *See Callier*, 2021 WL 5393829, at *4 ("[T]he Court will not consider Mr. Callier's assertions against all defendants generally when they are not supported by specific factual allegations."); *see also* Am. Compl. ¶¶ 114-15 (referring to Mr. James as the "ringleader" while making only vague and conclusory allegations that Mr. Baker "help[ed] the Company incur financing through fraudulent means," helped ensure the delivery of funds for Mr. James's benefit, and "worked closely" with the other individual defendants in transactions similar to those described in paragraph 118). This basic deficiency of conclusory group pleading is reason enough alone to dismiss Mr. Baker from this case.

   **B.     Plaintiffs' Generic Fraud-Based Allegations Against Mr. Baker Fail to Satisfy Fed. R. Civ. P. 9(b).**

21.     Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "This higher standard stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to a

10

**DEBTORS' EXHIBIT NO. 169**
**Page 12 of 32**
**JOINT EXHIBIT NO. 45**
**Page 12 of 32**

defendant's reputation." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992).[4] Longstanding Fifth Circuit precedent requires a plaintiff to plead "the who, what, when, where, and how" of any fraud. *See Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). As is true under Rule 8, "general allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another, do not meet the requirements of Rule 9(b)." *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 382 (S.D. Tex. 2011), *aff'd sub nom.*, 464 Fed. Appx. 334 (5th Cir. 2012); *see also United States ex rel. Park v. Legacy Heart Care, LLC*, No. 3:16-CV-803-S, 2018 WL 5313884, at *6 (N.D. Tex. Oct. 26, 2018) (general allegations against all defendants insufficient to state conspiracy claim).

22.     As relevant here, Rule 9(b) governs all claims, regardless of label, to the extent they are "predicated on fraud." *See Brown v. Bilek*, 401 F. App'x 889, 893 (5th Cir. 2010) (breach of fiduciary duty); *Nat'l Rifle Ass'n of Am. v. Ackerman McQueen, Inc.*, No. 3:19-CV-2074-G, 2020 WL 5526548, at *8 (N.D. Tex. Sept. 14, 2020) (conspiracy to commit fraud). Accordingly, because Plaintiffs' underlying theory of this case is one of fraud, Plaintiffs cannot escape Rule 9(b)'s requirements merely by labeling their claims against Mr. Baker as breach of fiduciary duty, aiding and abetting, and conspiracy.

23.     In contrast to the other defendants, the Amended Complaint lacks any factual allegations showing *how*, *where*, or *when* Mr. Baker participated in the fraudulent transactions at issue in this case, or *what* specifically he did. With one exception—a description of Mr. Baker's compensation in paragraph 116—every single allegation against him is generic and conclusory,

_____

[4] This concern is particularly important here, because other litigants are already parroting the Debtors' conclusory allegations against Mr. Baker. *See, e.g.*, *Complaint* in *Bank of America, N.A., et al. v. Aequum Capital Financial II LLC, et al.*, Dkt. 2281 in No. 25-90399 (Bankr. S.D. Tex.), ¶ 91 (relying on the Amended Complaint in this case for the proposition that Mr. Baker worked closely with Edward James to implement fraudulent financings).

11

FBG_CH1_00089946

DEBTORS' EXHIBIT NO. 169
Page 13 of 32
JOINT EXHIBIT NO. 45
Page 13 of 32

and by no means particularized with the "who, what, when, where, and how" Rule 9(b) requires. *See* Am. Compl. ¶¶ 43, 114-18. Plaintiffs' repetitive and generic allegations to the effect that Mr. Baker "helped" others commit fraud or "implement[ed]" various broadly-labeled schemes comes nowhere close to particularized pleading of specific wrongful acts or omissions by *Mr. Baker*. *See Guidry*, 954 F.2d at 288 ("Guidry's similar allegations against Martinez . . . that he advised Guidry to participate in Martin's scheme also are devoid of appropriate specificity;" "Guidry has charged only that the banks are somehow culpable in Martin's fraud. He has not alleged specific acts or omissions by either bank or their officers that would give rise to such culpability.").

24.     The Amended Complaint also lacks any allegation that Mr. Baker knew or was aware of any fraud, which independently is fatal. *See United States ex rel. Guzder v. MKM Engineers, Inc.*, No. CV H-05-895, 2010 WL 11595351, at *12 (S.D. Tex. Jan. 14, 2010), *report and recommendation adopted*, 2010 WL 11595361 (S.D. Tex. Mar. 3, 2010) (false claims act claims failed because Plaintiff alleged that the defendant's cost projections were understated, but failed to allege facts indicating those projections were knowingly false when made; in other words, Plaintiff alleged facts *consistent* with liability, but failed to allege facts sufficient to make the claim *plausible* on its face); *Litson-Gruenber v. JPMorgan Chase & Co.*, No. CIV.A. 7:09-CV-056-0, 2009 WL 4884426, at *5 (N.D. Tex. Dec. 16, 2009) (holding plaintiff's fraud-based fiduciary duty claims did not satisfy the heightened pleading requirements of Rule 9(b) because "conclusory statements [were] insufficient" to prove actual knowledge of fraudulent acts). The Amended Complaint also fails to identify any specific Plaintiff entity through which Mr. Baker allegedly engaged in fraudulent activity.

25.     The Amended Complaint alleges much more as to the other defendants:

- The Amended Complaint covers Mr. James's misconduct at length, with a list of challenged transfers on Exhibit A. *See, e.g.*, Am. Compl. ¶¶ 64-65, 70-102, & Ex. A.

FBG_CH1_00089947

DEBTORS' EXHIBIT NO. 169
Page 14 of 32
JOINT EXHIBIT NO. 45
Page 14 of 32

- As to Mr. Brumbergs, the Amended Complaint alleges that he doctored invoices to increase the amount for which they could be factored, including specific invoices on specific dates, *id*. at ¶ 51, while also explaining that "[n]ot only did [Brumbergs] directly supervise First Brands' factoring program, but Brumbergs personally participated in the factoring fraud, including by altering invoice nomination files and submitting fake invoices to multiple third-party factors." *Id*. at ¶ 120.

- As to Mr. Brumbergs and Mr. Graham, the Amended Complaint alleges that they prepared financial statements "which failed to disclose a substantial portion of the liabilities that First Brands had incurred through the SCF program." *Id*. at ¶ 66.

- Without mentioning Mr. Baker, the Amended Complaint alleges that "James, through the actions of Brumbergs and Graham, concealed First Brands' true financial condition . . . by personally directing the alteration of First Brands' financial statements." *Id*. at ¶ 67.

- Unlike Mr. Baker, the Amended Complaint alleges that Mr. Brumbergs "was aware of the use of false invoices" and instructed "employees regarding the use of SCF funds." *Id*. at ¶ 122.

26.     There are no similar allegations against Mr. Baker (no specific acts, specific documents, specific transactions, or allegations that Mr. Baker knew of any wrongdoing). Exhibit A, the chart of transfers from Plaintiffs to James and his affiliated entities, contains no transfer to Mr. Baker. The factual allegations about the factoring fraud, supply chain financing, and financial statement manipulation do not mention Mr. Baker. The entire Amended Complaint does not cite a single, specific wrongful act by Mr. Baker. He is simply named in conclusory accusations or mentioned alongside other defendants in group-pled allegations. Rule 9(b) does not allow this Court to "make guesses to fill in the blanks." *United States ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, LLC*, 157 F.4th 758, 762 (5th Cir. 2025).[5]  And Plaintiffs may not merely "assume guilt by association;" they must allege what "each defendant did that allegedly caused harm." *See Bustos v. Invierte En Tex., LLC*, No. 4:22-CV-02690, 2024 WL 3364039, at

---

[5] Again, Plaintiffs have Mr. Baker's emails and other records. If those records supported pleading claims against him with the particularity required under Rule 9(b), the Amended Complaint would have done so.

FBG_CH1_00089948

**DEBTORS' EXHIBIT NO. 169**
**Page 15 of 32**
**JOINT EXHIBIT NO. 45**
**Page 15 of 32**

*8 n.17 (S.D. Tex. June 3, 2024), *report and recommendation adopted*, 2024 WL 3371041 (S.D. Tex. July 9, 2024) (cleaned up); *see also Ingalls v. Edgewater Priv. Equity Fund III, L.P.*, No. CIV.A. H-05-1392, 2005 WL 2647962, at *6 (S.D. Tex. Oct. 17, 2005) (dismissing fraud-based fiduciary duty claim because allegations of fraud that grouped defendants together failed to meet the particularity requirement of Rule 9(b)); *Neukranz v. Conestoga Settlement Servs., LLC*, No. 3:19-CV-1681-L, 2022 WL 19518462, at *18 (N.D. Tex. Nov. 23, 2022), *report and recommendation adopted sub nom.*, 2023 WL 2555551 (N.D. Tex. Mar. 16, 2023) (same). All claims thus fail to satisfy Rule 9(b)—in addition to failing under Rule 8(a).

II.     **Plaintiffs Fail to State Any Fiduciary Duty Claims Against Mr. Baker.**

A.     **Plaintiffs Failed to Plausibly Allege a Fiduciary Duty Owed by Mr. Baker to Any Specific Entity, or that Mr. Baker Breached Any Fiduciary Duty Owed.**

27.     The Amended Complaint fails to plead facts sufficient to show what fiduciary duty Mr. Baker owed to which of the Debtor entities. It collectively defines "First Brands Group, LLC and its debtor affiliates"—more than 100 separate entities—as "Debtors," "First Brands," and "Company" on the first page, without ever alleging which of those entities employed Mr. Baker as Chief Corporate Strategy Officer. *See* Am. Compl., p. 1, ¶¶ 4, 27. This fails to satisfy Rule 8(a) because it does not plausibly establish a fiduciary relationship. *See Austin v. Brown & Fortunato, P.C. (In re Uplift RX, LLC)*, No. 21-3936, 2023 WL 5355353, at *13 (Bankr. S.D. Tex. Aug. 21, 2023) (rejecting as insufficient allegations that individuals were officers of a group of entities known as "Alliance" because "the complaint fails to allege which duties to which entities the officers breached;" similarly explaining that "[t]he assertion that they had fiduciary duties because they were some sort of 'control person' of the greater 'Alliance' enterprise is insufficient to support the legal conclusion that they owed a fiduciary duty to any Alliance entity"). Because

14

FBG_CH1_00089949

Plaintiffs fail to identify any specific fiduciary duty that Mr. Baker allegedly owed to what Plaintiffs, the fiduciary duty claim must be dismissed.

28.     Even if Plaintiffs had identified specific Debtor entities to which Mr. Baker allegedly owed fiduciary duties, Plaintiffs' allegations about Mr. Baker's conduct still would be inadequate to state any claims.  There are no pleaded facts supporting the unidentified breaches of duties, only a conclusory allegation in paragraph 198 that Mr. Baker "help[ed] structure off-balance sheet debt and SPV financing facilities, ultimately causing First Brands to incur debt that it could not repay" and vaguely failed to monitor or oversee operations.

29.     Without more (e.g., allegations that Mr. Baker did not believe specific debts were in the best interest of specific entities that incurred them but approved them anyway, or allegations sufficient to state an oversight claim as described in Section II.C. below), none of these conclusory allegations states a claim.  For example, paragraph 198 does not identify Mr. Baker's role in any specific financing, plead facts showing that Mr. Baker could not have appropriately approved any specific debts as being in the best interest of a particular entity,[6] or even allege that Mr. Baker had authority to approve or disapprove any specific debts.  Likewise, paragraph 198 does not allege whether Mr. Baker had authority to assume a greater role in oversight for any specific entity.  Without attacking some specific act or transaction, it is no less conclusory than the other allegations against Mr. Baker.

---

[6] *See In re SI Restructuring, Inc.*, 532 F.3d 355, 363 (5th Cir. 2008) ("deepening insolvency is not a valid theory of damages"); *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 174 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007) (rejecting "deepening insolvency" as a cause of action, and explaining "[e]ven when a firm is insolvent, its directors may, in the appropriate exercise of their business judgment, take action that might, if it does not pan out, result in the firm being painted in a deeper hue of red.").

15

FBG_CH1_00089950

**DEBTORS' EXHIBIT NO. 169**
**Page 17 of 32**
**JOINT EXHIBIT NO. 45**
**Page 17 of 32**

**B.      The LLC Agreements Validly Eliminated Any Fiduciary Duties.**

30.      Even though it does not identify a specific fiduciary duty or the entity to which such fiduciary duty was owed, Count IX purports to state a claim against Mr. Baker for breach of fiduciary duty under Delaware law.[7]  Because a claim for breach of fiduciary duty requires the existence of a fiduciary duty, Plaintiffs' claim fails based on the elimination of fiduciary duties in the applicable LLC agreements.

The Delaware Limited Liability Company Act provides as follows:

> To the extent that, at law or in equity, a member or manager or other person has duties (including **fiduciary duties**) to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement, the member's or manager's or other person's duties **may be expanded or restricted or eliminated** by provisions in the limited liability company agreement; provided, that the limited liability company agreement may not eliminate the implied contractual covenant of good faith and fair dealing.

6 Del. C. § 18-1101(c) (emphasis added).  Delaware courts routinely reject fiduciary-duty claims when LLC agreements disclaim fiduciary duties. For example, in *Miller v. HCP & Co.*, the court granted the defendants' motion to dismiss where the LLC agreement "waive[d] any fiduciary duties that [the entity's] members or managers would otherwise have owed one another." 2018 WL 656378, at *10 (Del. Ch. Feb. 1, 2018), *aff'd*, 194 A.3d 908 (Del. 2018); *see also Riverside Risk Advisors LLC v. Chao*, 2022 WL 14672745, at *30 (Del. Ch. Oct. 26, 2022) ("[T]he 2015 LLC Agreement expressly eliminated fiduciary duties as is permitted under Delaware's LLC Act. There cannot be a breach of non-existent fiduciary duties.") (footnotes omitted); *MKE Holdings,*

---

[7] As discussed above in Section II.A, the Amended Complaint fails to allege which entity or entities to which Mr. Baker purportedly owed fiduciary duties.  Moreover, the Debtors' bankruptcy cases have not been substantively consolidated.  The lack of specificity on these issues requires dismissal.

FBG_CH1_00089951

DEBTORS' EXHIBIT NO. 169
Page 18 of 32
JOINT EXHIBIT NO. 45
Page 18 of 32

*Ltd. v. Schwartz*, 2019 WL 4723816, at \*22 (Del. Ch. Sep. 26, 2019) ("Verdesian was formed as a Delaware limited liability company and, therefore, pursuant to Delaware law its operating or governing agreement may eliminate the fiduciary duties its managers would otherwise owe.").

31.   Courts in this circuit applying Delaware law reach the same results.  For instance, in *Clingman & Hanger Management Associates LLC v. Rieck*, 701 F. Supp. 3d 565 (S.D. Tex. 2023), the district court dismissed claims for breach of fiduciary duty and aiding and abetting fiduciary duties based on language stating that "[t]o the fullest extent permitted by applicable law, no manager of the Board or officer of the Company . . . shall have any duty, fiduciary or otherwise, to the Company in connection with the business and affairs of the Company[.]" *Id.* at 588-89.

32.   No meaningful distinction exists between the language at issue in *Clingman* and the language used in Plaintiffs' LLC agreements.  The relevant LLC agreements disclaim fiduciary duties with language substantially as follows:

> No Fiduciary Duties. Any duties (including fiduciary duties) of a Covered Person to the Company or to any other Covered Person that would otherwise apply at law or in equity are hereby eliminated to the fullest extent permitted under the Act and any other applicable law, provided that (i) the foregoing shall not eliminate the obligation of each Covered Person to act in compliance with the express terms of this Agreement and (ii) the foregoing shall not be deemed to eliminate the implied contractual covenant of good faith and fair dealing. In furtherance of the foregoing (but subject to the provisos in the foregoing), when any Covered Person takes any action under this Agreement to give or withhold its consent, such Covered Person shall have no duty (fiduciary or other) to consider the interests of the Company, its Subsidiaries, or the other Members, and may act exclusively in its own interest (or in the interest of the Member that appointed it).

17

FBG_CH1_00089952

**DEBTORS' EXHIBIT NO. 169**
**Page 19 of 32**
**JOINT EXHIBIT NO. 45**
**Page 19 of 32**

*See* Second Amended and Restated Limited Liability Company Agreement of Patterson Inventory, LLC § 8.3, Main Bankr. Dkt. 571-6.[8] Accordingly, just as in *Clingman* and in the Delaware cases cited above, any claim for breach of fiduciary duty fails because Mr. Baker did not owe fiduciary duties to Plaintiffs in the first place.

33.    The only duty that cannot be eliminated under the Delaware Limited Liability Company Act is one not applicable here: the implied covenant of good faith and fair dealing. *See* 6 Del. Code § 18-1101(c). Delaware courts have recognized that the implied covenant only ensures the proper performance of "contractual obligations," *Wood v. Baum*, 953 A.2d 136, 143 (Del. 2008), rather than "operat[ing] as a fiduciary substitute." *New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 580 n.235 (Del. Ch. 2023). In *CLK Energy Partners, LLC*, No. 09–05042, 2011 WL 1312275 (Bankr. W.D. La. 2011), a bankruptcy court considered the implications of this restriction, concluding that the implied covenant of good faith and fair dealing could only save an otherwise-eliminated breach of fiduciary duty claim if specific contractual duties were pled in the complaint. *See id*. at *8. Because the complaint neither "identif[ed] any specific implied contractual obligation flowing from the LLC Agreement, nor d[id] it plead how that implied obligation was breached," the bankruptcy court dismissed the breach of fiduciary duty claim. *Id.* The same result should occur here because the Amended Complaint identifies no contractual obligations that Mr. Baker allegedly breached.

34.    Finally, although Plaintiffs assert, again in conclusory fashion without actually referencing any language from the LLC agreements, that the disclaimer of fiduciary duties "do[es] not extend to the bad faith, willful misconduct, and self-dealing alleged," Am. Compl. ¶ 202, such

---

[8] *See, e.g.*, Amended and Restated Limited Liability Company Agreement of First Brands Group, LLC, § 8.3. Mr. Baker was a Covered Person to the extent he was an officer of any Plaintiff LLCs, which are not identified specifically in the Amended Complaint.

18

FBG_CH1_00089953

argumentative characterizations miss the point.  As Delaware courts have recognized, breach of fiduciary duty allegations "must be analyzed in light of the terms of the LLC Agreement." *Erisman v. Zaitsev*, No. 2020-0903, 2021 WL 6134034, at *15 (Del. Ch. Dec. 29, 2021) (disregarding allegations that "attempt[ed] to characterize what fiduciary duties, if any, are still in play under the LLC Agreement" because plaintiffs' "construction... of the LLC Agreement ignore[d] its clear terms").  Some LLC agreements expressly preserve liability to the extent that a member engages in "fraud, criminal action, bad faith, or gross negligence." *Shamrock Holdings of Cal., Inc. v. Arenson*, 2005 WL 400198, at *3 (D. Del. Jan. 27, 2005); *In re ALH Holdings LLC*, 675 F. Supp. 2d 462, 478 (D. Del. 2009) (same).  But Plaintiffs' LLC agreements did not.  Thus, even if Plaintiffs had alleged facts showing bad faith, willful misconduct, or self-dealing by Mr. Baker (which they did not), Plaintiffs are not free to "ignore . . . [the] clear terms" of those agreements and avoid the consequences of the clauses eliminating fiduciary duties. *See Erisman*, 2021 WL 6134034, at *15.

> **C.** **Any *Caremark* Oversight Claim Fails to Satisfy Federal Pleading Standards.**

35.     The Amended Complaint's conclusory suggestion in paragraph 198 that Mr. Baker failed to implement appropriate controls or failed to monitor the company's operations ignores that such oversight liability (or *Caremark*)[9] claims are "among the most difficult fiduciary claims to prove under Delaware law." *In re Think3, Inc.*, 529 B.R. 147, 180 (Bankr. W.D. Tex. 2015). Oversight liability requires proof that the directors or officers "utterly failed to implement any reporting or information system or controls; or having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of the risks or problems requiring their attention." *In re Xtreme Power, Inc.*, 563 B.R.

---

[9] *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996).

FBG_CH1_00089954

614, 638 (Bankr. W.D. Tex. 2016) (quoting *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006)). Although Plaintiffs repeat this governing legal standard nearly verbatim in the Amended Complaint, they allege no facts whatsoever with respect to First Brands' supposedly deficient controls, what role and authority (if any) Mr. Baker had with respect to those controls, whether Mr. Baker's job description as Chief Strategy Officer required him to oversee or implement any controls, what information Mr. Baker had available but supposedly did not consider, or what red flags Mr. Baker supposedly ignored.[10] Such omitted facts, in addition to being required under federal pleading standards—which do not afford an assumption of truth to bare conclusions such as those in paragraph 198—also are critical in establishing the scope of any duties owed and how Mr. Baker's conduct compared to such duties. In *In re McDonald's Corporation Stockholder Derivative Litigation*, 289 A.3d 343, 370 (Del. Ch. 2023), for example, the court explained that, although corporate officers owe a fiduciary duty of oversight (similar to that of directors) "officers generally only will be responsible for addressing or reporting red flags within their areas of responsibility." *Id*. at 370.

36.     These omissions are particularly notable in light of the fact that, to plead an oversight liability claim, Plaintiffs plausibly must allege that Mr. Baker acted with "conscious disregard for [his] duties," *i.e.*, that Mr. Baker "knew that internal controls were inadequate, that the inadequacies could leave room for illegal or materially harmful behavior, and that [he] chose to do nothing about the control deficiencies that [he] knew existed." *In re Soporex, Inc.*, 463 B.R. 344 (N.D. Tex. 2011) (quoting *In re Citigroup Shareholder Deriv. Litig.*, 964 A.2d 106, 125 (Del.

---

[10] Were this matter to proceed, it would become abundantly clear that Mr. Baker did not have independent authority to control any of the Debtors.

20

FBG_CH1_00089955

**DEBTORS' EXHIBIT NO. 169**
**Page 22 of 32**
**JOINT EXHIBIT NO. 45**
**Page 22 of 32**

Ch. 2009) and *Desimone v. Barrows*, 924 A.3d 908, 940 (Del. Ch. 2007)).  There are no factual allegations showing that Mr. Baker did any of these things—only conclusions.

37.    Because it lacks any facts regarding the company's control environment or Mr. Baker's role with respect thereto, the Amended Complaint does not allege facts sufficient to show that Mr. Baker "improperly monitored business risk or declined to act on apparent red flags." *Xtreme Power Inc.*, 563 B.R. at 639.  Instead, it relies on the same broad-brush allegations of fraud and misconduct for the oversight claim as the others.  Again, not only federal pleading standards but also governing substantive Delaware law routinely reject the "conclusory allegation that because illegal behavior occurred, internal controls must have been deficient." *In re Cabot Oil & Gas Corp. Deriv. Litig.*, 709 F. Supp. 3d 305, 330 (S.D. Tex. 2024) (collecting cases), *aff'd sub. nom. Ezell v. Dinges*, 137 F.4th 291 (5th Cir. 2025) (citation omitted).  The Amended Complaint offers nothing more than that.  Accordingly, Plaintiffs fail to state any claim based on lack of oversight.

**D.    The Amended Complaint Fails to Plead Facts Sufficient to Overcome the Business Judgment Rule.**

38.    Delaware's business judgment rule presumes that directors and officers "acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Dura Medic Holdings, Inc. Consol. Litig.*, 331 A.3d 796, 820 (Del. Ch. 2025) (citation omitted); *see also Gantler v. Stephens*, 965 A.2d 695, 705–06, 708–09 (Del. 2009) (applying business judgment rule to claim for breach of officers' duty of care). Decisions about whether to enter a particular transaction are squarely within directors' and officers' business judgment.  *See, e.g., In re Orchard Enters., Inc. Stockholder Litig.*, 88 A.3d 1, 34 (Del. Ch. 2014).

21

FBG_CH1_00089956

39.     Any fiduciary duty claim against Mr. Baker must be dismissed because Plaintiffs failed to meet their burden to plead *facts* sufficient to overcome the default presumption that Mr. Baker's actions (none of which are even specifically faulted in the Amended Complaint) were valid exercises of his business judgment. *See In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 998 (Del. Ch. 2014); *Katchadurian v. NGP Energy Capital Mgmt., LLC (In re Northstar Offshore Grp., LLC)*, 616 B.R. 695, 739 (Bankr. S.D. Tex. 2020) ("To survive a motion to dismiss when the issue [of the business judgment rule] appears within the complaint itself, the plaintiff must plead around the business judgment rule to show it is inapplicable.") (quotation marks and citations omitted).

40.     All of the transactions described in the Amended Complaint—transfers, financings, SPVs, and the like—were matters of business judgment.  Specifically as to Mr. Baker, the only activity he is alleged to have been engaged in is having been "responsible for evaluating, structuring, and implementing financing initiatives and strategic initiatives, including off-balance sheet SPV structures." *See* Am. Compl. ¶ 117.  Those are quintessential activities to which the business judgment rule applies. *See Havens v. Attar*, No. 15134, 1997 WL 55957, at *11 (Del. Ch. Jan. 30, 1997) (holding "[t]he decision by the Board to incur . . . increased debt is protected by the business judgment rule"); *see also Weiss v. Samsonite Corp.*, 741 A.2d 366, 376 (Del. Ch.), *aff'd*, 746 A.2d 277 (Del. 1999) (finding the decision to leverage the company to be a business decision that is entitled to business judgment rule protection).  It therefore was incumbent on Plaintiffs to plead around the business judgment rule—with facts, not merely conclusory allegations—showing that *Mr. Baker* was uninformed, did not act in good faith, did not believe his actions were in the best interest of the (unidentified) entities at which he served, or breached a duty

FBG_CH1_00089957

of loyalty in connection with some specific transaction. The Amended Complaint comes nowhere close, and therefore, any fiduciary duty claim is barred by the business judgment rule.

**III.    Any Aiding and Abetting Claim Against Mr. Baker Fails.**

**A.    The Elimination of Fiduciary Duties Renders Aiding and Abetting Impossible.**

41.    It is well-established under Delaware law that, when an LLC agreement eliminates fiduciary duties, no claim for aiding and abetting can proceed because it is impossible to aid and abet the breach of a non-existent duty. *See Bandera Master Fund LP v. Boardwalk Pipeline Partners, LP*, No. CV 2018-0372-JTL, 2019 WL 4927053, at *8 (Del. Ch. Oct. 7, 2019) ("Once Section 7.9(e) of the Partnership Agreement eliminated the General Partner's fiduciary duties, there was no fiduciary relationship that could support a claim for aiding and abetting a breach of fiduciary duty. Count V is therefore dismissed"); *Gerber v. EPE Holdings, LLC*, No. CIV.A. 3543-VCN, 2013 WL 209658, at *11 (Del. Ch. Jan. 18, 2013); *Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 194 (Del. Ch. 2014), *aff'd*, No. 399, 2014, 2015 WL 803053 (Del. Feb. 26, 2015). Count X (aiding and abetting) thus fails as a matter of law based on the same contractual eliminations of fiduciary duty that negate Count IX (breach of fiduciary duty).

**B.    Any Aiding and Abetting Claim Fails on Multiple Other Grounds.**

42.    Alternatively, if Mr. Baker somehow owed fiduciary duties to one or more Plaintiffs despite the disclaimers in the LLC agreements, then his status as a fiduciary independently negates any aiding-and-abetting claim. *See CMS Inv. Holdings, LLC v. Castle*, No. CV 9468-VCP, 2015 WL 3894021, at *20 (Del. Ch. June 23, 2015) ("Delaware cases dealing with claims for aiding and abetting a breach of fiduciary duty have held that, as a matter of law, aiding and abetting liability generally cannot attach to defendants who themselves owe fiduciary duties to the relevant entity and plaintiff."); *In re Legendary Field Exhibitions, LLC*, No. 19-50900-CAG, 2023 WL 7852657, at *16 (Bankr. W.D. Tex. Nov. 13, 2023) ("Delaware courts 'generally prohibit

23

FBG_CH1_00089958

aiding and abetting claims against parties that already stand in direct fiduciary relationships.'") (citation omitted).

43.    As the Delaware Court of Chancery explained in *Mesirov v. Enbridge Energy Co., Inc.*, No. 11314-VCS, 2018 WL 4182204 (Del. Ch. Aug. 29, 2018), this "not-a-fiduciary" requirement avoids duplication: because fiduciaries already "owe their own duties" to the corporation, they cannot be held liable for aiding and abetting a breach of those same duties. *Id.* at *12 and n.115.  Thus, when the putative defendants are alleged to be fiduciaries, dismissal is warranted. *Manti Holdings, LLC v. Carlyle Group Inc.*, No. 2020-0657-SG, 2022 WL 1815759, at *14 (Del. Ch. Jun. 3, 2022).  Accordingly, no legally cognizable aiding-and-abetting claim against Mr. Baker could exist unless Plaintiff both concedes that Mr. Baker was not a fiduciary *and* shows that Mr. James, Mr. Graham, or Mr. Brumbergs owed a fiduciary duty that was not eliminated by the relevant LLC agreements.  The Amended Complaint, with its simultaneous zeal to allege that everyone owed fiduciary duties while relying on only conclusory allegations against Mr. Baker and about the LLC agreements, does neither.  The aiding and abetting claim thus fails.

44.    Even if Plaintiffs were to concede that Mr. Baker was not a fiduciary and to show that another defendant owed a non-eliminated fiduciary duty, it would then have to show that Mr. Baker "knowingly participate[d]" in that defendant's breach. *RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 861-62 (Del. 2015) (internal quotation marks omitted).  This element involves "two distinct concepts that are sometimes analyzed separately: knowledge and participation." *Sjunde AP-Fonden v. Activision Blizzard, Inc.*, No. 2022-1001-KSJM, 2025 WL 2803254, at *25 (Del. Ch. Oct. 2, 2025).  Neither is alleged here.

45.    To the extent the aiding-and-abetting claim rests on breaches of duty relating to factoring, supply chain financing, or the alteration of financial statements, Plaintiffs have not even

24

FBG_CH1_00089959

attempted to allege facts showing Mr. Baker's "awareness" (passive or otherwise) of such conduct, much less any participation with respect thereto. Although Plaintiffs allege that Mr. Baker played a role with respect to SPV lending and the purported "structuring" of transactions involving Mr. James, the Amended Complaint's conclusory assertion that Mr. Baker thereby provided "substantial assistance" never provides the factual tissue to connect such actions to others' breaches of fiduciary duty. *See* Am. Compl. ¶¶ 207-209 (offering only conclusory group pleading in support of an aiding and abetting claim, without identifying any specific participation by Mr. Baker in acts constituting a fiduciary breach by others). As a result, the Amended Complaint lacks sufficient "facts from which a claim for aiding and abetting breaches of fiduciary duty could be stated." *In re Santa Fe Pac. Corp. Shareholders Litig.*, 669 A.2d 59, 72 (Del. 1995) (dismissing claim premised on "conclusory statement that [defendant] had knowledge of the Individual Defendants' fiduciary duties and knowingly and substantially participated and assisted in the Individual Defendants' breaches of fiduciary duty").

46. Similarly, any aiding and abetting claim against Mr. Baker would founder on the equally essential requirement of knowledge. Under Delaware law, aiding and abetting liability requires that the defendant have "actual knowledge of the wrongful nature of [his] own conduct" *and* "actual knowledge of the underlying tortious conduct." *In re Columbia Pipeline Group, Inc. Merger Litig.*, 342 A.3d 324, 356 (Del. 2025). As to Mr. Baker's understanding of his own conduct, Plaintiffs never allege that Mr. Baker knew there was anything wrong with the SPV structures or that he committed any other act while knowing it was wrong (and he had no such knowledge, which was fundamental to the other defendants' scheme). Nor have Plaintiffs alleged that Mr. Baker understood that the company was insolvent, that debts were being incurred other than in the company's best interest, or that Mr. James was receiving improper distributions. *See*

FBG_CH1_00089960

DEBTORS' EXHIBIT NO. 169
Page 27 of 32
JOINT EXHIBIT NO. 45
Page 27 of 32

*In re SI Restructuring, Inc.*, 532 F.3d at 363 ("deepening insolvency is not a valid theory of damages"); *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d at 174, *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007) (rejecting "deepening insolvency" as a cause of action, and explaining "[e]ven when a firm is insolvent, its directors may, in the appropriate exercise of their business judgment, take action that might, if it does not pan out, result in the firm being painted in a deeper hue of red."). In fact, Plaintiffs have not pled any specific wrongful acts by Mr. Baker at all. For these reasons, Plaintiffs have not stated a claim for aiding and abetting.

## IV.     Plaintiffs Fail to State a Civil Conspiracy Claim Against Mr. Baker.

### A.     Plaintiffs Fail to Identify an Underlying Tort.

47.     Plaintiffs' purported conspiracy claim rests on a conclusory allegation that Mr. Baker agreed "to effectuate the fraud and misconduct that caused First Brands to suffer damages" and group pleading that all of the individual defendants "worked in concert" to commit the misconduct alleged in this case. *See* Am. Compl. ¶¶ 213-14. This fails to satisfy both Rule 8 and Rule 9(b). It does not supply particularized facts, or indeed any facts, sufficient to show as to Mr. Baker (1) the tortious conduct underlying the conspiracy claim or (2) the "malicious combination" in which Mr. Baker purportedly engaged. *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E. 2d 863, 866 (Ohio 1995) (civil conspiracy requires "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages"). Both failures compel dismissal.

48.     Moreover, the Amended Complaint ignores that Ohio "does not recognize civil conspiracy as an independent cause of action" but, instead, uses the doctrine to impose vicarious liability for "an underlying unlawful act." *Bender v. Logan*, 76 N.E. 3d 336, 360 (Ohio Ct. App. 2016). Where no underlying tortious act exists, "there is no actionable civil conspiracy claim."

FBG_CH1_00089961

DEBTORS' EXHIBIT NO. 169
Page 28 of 32
JOINT EXHIBIT NO. 45
Page 28 of 32

*Doane v. Givaudan Flavors Corp.*, 919 N.E. 2d 290, 298 (Ohio Ct. App. 2009). Perhaps because any conspiracy claim founded on breaches of supposed fiduciary duties would fail for the reasons stated above, the Amended Complaint never makes clear what precise tort forms the basis for its civil conspiracy claim. Because "[c]onspiracy allegations add nothing further to a plaintiff's action other than the underlying wrongdoing that is the basis of the conspiracy," Plaintiffs' failure to plead the underlying tort with specificity defeats its civil conspiracy claim. *Palmer v. Westmeyer*, 549 N.E. 2d 1202, 1207 (Ohio Ct. App. 1988).

49. Likewise, the Amended Complaint fails to allege any "common understanding or design . . . to commit an unlawful act," as necessary to plead that a "malicious combination" existed. *Gosden v. Louis*, 687 N.E. 2d 481, 496 (Ohio Ct. App. 1996). As with their oversight liability theory, Plaintiffs recite the elements of a claim rather than alleging facts to support it.[11]

50. Specifically, the Amended Complaint asserts, without any elaboration or defendant-by-defendant allegations, that in connection with the alleged conspiracy, the defendants purportedly "worked in concert to, among other misconduct, coordinate (a) off-balance sheet SPV facilities and related cash flows; (b) third-party factoring and supply-chain financing practices; (c) unsupported, manual financial statement changes and reclassifications that obscured First Brands' true financial condition; and (d) improper transfers to James, his trust, entities under his control, or other third parties for James' benefit." Am. Compl. ¶ 214.

51. The Amended Complaint entirely lacks any allegations connecting Mr. Baker to two of these four categories (*i.e.*, categories "b" and "c," involving factoring fraud, supply chain

---

[11] *See* Am. Compl. ¶ 213 (alleging that Patrick James "together with (at least) Baker, Brumbergs, and Graham, formed a malicious combination or combinations through express agreement or common understanding to effectuate the fraud and misconduct that caused First Brands to suffer damages.")

27

FBG_CH1_00089962

financing fraud, and financial statement alteration).  As to the remaining two categories (*i.e.*, categories "a" and "d, involving SPV facilities and transfers to Mr. James), the Amended Complaint lacks any allegations showing that Mr. Baker understood the SPVs were being improperly used or did anything improper with respect to the SPVs, and also lacks any allegations that Mr. Baker understood any transfers were going to Mr. James or entities he controlled or that such transfers were improper (based on the true financial condition of the applicable Debtors or otherwise).  There is nothing inherently wrong with SPVs or transfers of money.  A conspiracy requires agreement to commit a wrongful act—an agreement between Mr. Baker and James, Brumbergs and Graham that the Plaintiffs have not alleged with any specificity.  There are no standalone, non-conclusory allegations that Mr. Baker committed any wrongful act.  Lumping Mr. Baker alongside others in a group allegation satisfies neither Rule 8(a) nor Rule 9(b).

52.    Finally, aside from alleging that all defendants worked at the vaguely-defined First Brands, the Amended Complaint alleges no facts that would demonstrate an express or implied agreement between Mr. Baker or any of the other defendants to commit the alleged fraudulent conduct or Mr. Baker's intent to participate in any alleged misconduct.  *See Spears v. Chrysler, LLC*, No. 3:08-CV-331, 2011 WL 540284, at *12 (S.D. Ohio Feb. 8, 2011) (dismissing civil conspiracy claim that lacked any "factual allegations that support the conclusory statement that the Defendants agreed to act in concert or did, in fact, act in concert").  Alleging that a group of defendants were "engaged in the same or similar type of activity" or even that they shared a "[s]imilarity of acts or objectives" does not establish the "malicious combination" required to state a claim for conspiracy.  *Wheeler v. Gen. Motors Corp.*, No. 5889, 1979 WL 208353, at *4 (Ohio Ct. App. Jan. 12, 1979).  The Amended Complaint's conspiracy allegations as to Mr. Baker are

FBG_CH1_00089963

mere recitations of the claim's elements without supporting facts. This fails to satisfy federal pleading standards, so any conspiracy claim should be dismissed.

**B.      The Intra-Corporate Conspiracy Doctrine Independently Bars Any Conspiracy Claim Against Mr. Baker.**

53.      Separate and apart from the above, the Amended Complaint's civil conspiracy claim is barred by the intra-corporate conspiracy doctrine, which provides that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Innovative Architectural Planners, Inc. v. Ohio Dep't of Admin Servs.*, 239 N.E. 3d 942, 955 (Ohio Ct. App. 2024) (quotation marks and citation omitted). This doctrine follows from settled principles of agency law: "[w]hen two agents of the same legal entity make an agreement in the course of their official duties . . . their acts are attributed to their principal," such that "there has not been an agreement between two or more separate people." *Id.* To the extent the Amended Complaint alleges any agreement, it is only among First Brands' former employees acting as officers for First Brands. No civil conspiracy claim can proceed on such facts.

<u>**CONCLUSION**</u>

For the foregoing reasons, Mr. Baker respectfully requests that the Court dismiss all claims against him in the Amended Complaint with prejudice[12] and grant Mr. Baker such other and further relief to which he is entitled.

---

[12] The Debtors did not sue Mr. Baker in the original complaint. 77 days later, after additional investigation (which started pre-bankruptcy), and shortly before Brumbergs pled guilty, the Debtors filed an Amended Complaint to, among other things, allege claims against Mr. Baker. The fact that he was omitted from the original complaint but then added to the Amended Complaint with only bare-bones, conclusory allegations against him after a lengthy investigation demonstrates that the Debtors have already had an adequate opportunity to amend but simply came up short on the merits. The Amended Complaint should be dismissed with prejudice as to Baker.

FBG_CH1_00089964

**DEBTORS' EXHIBIT NO. 169
Page 31 of 32
JOINT EXHIBIT NO. 45
Page 31 of 32**

Date: April 6, 2026                          Respectfully submitted,

                                             /s/ Jordan W. Leu
                                             **KING & SPALDING LLP**
                                             Jordan W. Leu (TX Bar No. 24070139)
                                             2601 Olive Street, Suite 2300
                                             Dallas, TX 75201
                                             Telephone: (214) 764-4419
                                             Email: jleu@kslaw.com

                                             -and-

                                             **KING & SPALDING LLP**
                                             Thaddeus D. Wilson (*pro hac vice* forthcoming)
                                             1180 Peachtree Street NE
                                             Atlanta, Georgia 30309
                                             Telephone: (404) 572-4842
                                             Email: thadwilson@kslaw.com

                                             *Counsel for Michael Baker*

### CERTIFICATE OF SERVICE

I certify that, on April 6, 2026, a true and correct copy of the foregoing instrument was served on all counsel of record in this adversary proceeding through the Court's electronic case filing system.

                                             /s/ Jordan W. Leu
                                             Jordan W. Leu

30

FBG_CH1_00089965

**DEBTORS' EXHIBIT NO. 169**
**Page 32 of 32**
**JOINT EXHIBIT NO. 45**
**Page 32 of 32**