**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST BRANDS GROUP, *et al.* | Case No. 25-90399 (CML) |
| Debtors.[1] | (Jointly Administered) |
| FIRST BRANDS GROUP, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 25-03803 (CML) |
| PATRICK JAMES, THE PATRICK JAMES TRUST, ALBION REALTY, LLC, ALESTER TECHNOLOGIES LLC, BATTERY PARK HOLDINGS LLC, LARCHMONT LLC, PEGASUS AVIATION, LLC, MICHAEL BAKER, PETER ANDREW BRUMBERGS, STEPHEN GRAHAM, JOHN AND JANE DOE(S) 1-100, and ABC CORPORATION(S) 1-100, | |
| Defendants. | |

**STEPHEN GRAHAM'S MOTION TO DISMISS DEBTORS'
AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) OR,
ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT
PURSUANT TO FED. R. CIV. P. 12(e)**

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

FBG_CH1_00089966

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

ARGUMENT.............................................................................................................................. 5

I.      THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
        STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)...................................................... 5

        A.      The Amended Complaint Fails to Plead Adequately a Claim for Breach of
                Fiduciary Duty Against Stephen Graham ................................................................ 6

        B.      The Amended Complaint Fails to Plead Adequately a Claim for Aiding and
                Abetting Breach of Fiduciary Duty Against Stephen Graham ............................. 10

        C.      The Amended Complaint Fails to Plead Adequately a Claim for Conspiracy
                Against Stephen Graham ...................................................................................... 13

II.     ALTERNATIVELY, THE COURT SHOULD ORDER THE DEBTORS TO
        PROVIDE A MORE DEFINITE STATEMENT UNDER FED. R. CIV. P. 12(e) ......... 14

CONCLUSION ........................................................................................................................ 17

RESERVATION OF RIGHTS ................................................................................................. 17

i

FBG_CH1_00089967

DEBTORS' EXHIBIT NO. 170
Page 2 of 25
JOINT EXHIBIT NO. 46
Page 2 of 25

Stephen Graham files this motion pursuant to Fed. R. Civ. P. ("**Rule**") 12(b)(6) and Rule 12(e) and Fed. R. Bankr. P. 7012 to dismiss First Brands Group, LLC and its debtor affiliates' ("**Debtors**," "**First Brands**," or "**Company**") amended complaint in the above-captioned proceeding, Adv. Proc. Dkt. No. 141 (the "**Amended Complaint**"), for failure to state a claim or, in the alternative, for a more definite statement.

## PRELIMINARY STATEMENT

1.      The Amended Complaint is, at bottom, a case about Patrick James.  It alleges that Mr. James fraudulently secured billions of dollars in financing for First Brands, which he then misappropriated to enrich himself and his family at the expense of First Brands.  Mr. Graham is merely an afterthought: He is mentioned only sparingly and largely in conclusory, undifferentiated group allegations that fail to tie him to any specific misconduct.  The Debtors' three claims against Mr. Graham—breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy—rest on threadbare recitals of the elements of the causes of action and pervasive group pleading and are devoid of any particularized facts necessary to establish liability.

2.      While the Amended Complaint's pleading deficiencies are severe and pervasive, the claims against Mr. Graham face a more fundamental obstacle:  The governing LLC agreements indisputably eliminate *all fiduciary duties*, and such contractual disclaimers are valid and enforceable under applicable Delaware law.  In other words, Mr. Graham and his co-defendants owed no fiduciary duties to First Brands.  This is fatal to their breach of fiduciary duty claim, aiding and abetting breach of fiduciary duty claim, and conspiracy claim to the extent that it too is predicated on a breach of fiduciary duty.  For this reason alone, the claims in the Amended Complaint against Mr. Graham must be dismissed with prejudice.

1

FBG_CH1_00089968

3.      Further, even if Mr. Graham and his co-defendants did owe a fiduciary duty to First Brands, the Amended Complaint must be dismissed because the Debtors have failed to plead non-conclusory facts that make the claims against him plausible.  Specifically:

    a.  The breach of fiduciary duty claim (Count IX) against Mr. Graham must be dismissed for failure to plead adequately that Mr. Graham breached his fiduciary duty, that he did so with scienter, and/or that his alleged breach caused First Brands damages.

    b.  The aiding and abetting breach of fiduciary duty claim (Count X) against Mr. Graham must similarly be dismissed for failure to plead adequately any breach of fiduciary duty or Mr. Graham's scienter.

    c.  The conspiracy claim (Count XI) against Mr. Graham must be dismissed: (i) for failure to plead adequately a malicious combination, that Mr. Graham was a party to any such malicious combination, or an unlawful act independent of the purported conspiracy; or (ii) as barred by the intracorporate conspiracy doctrine.

4.      Mr. Graham also joins in any other arguments raised in Mr. James' previously filed motion to dismiss the Amended Complaint and in co-defendants Michael Baker's and Peter Andrew Brumbergs' contemporaneously-filed motions to dismiss to the extent applicable to Mr. Graham.

5.      Alternatively, if any claim survives, the Court should order a more definite statement under Rule 12(e) because the Amended Complaint's pervasive group pleading and conclusory assertions render it so vague and ambiguous that Mr. Graham cannot reasonably prepare a response.

## BACKGROUND

6.      The factual allegations concerning Mr. Graham in the Amended Complaint are minimal and largely conclusory.

7.      The Amended Complaint alleges that this action arises out of—not Mr. Graham's conduct—but "grievous misconduct by Patrick James," the founder and former Chief Executive Officer of First Brands. (Am. Compl. ¶ 1.) Specifically, the Amended Complaint alleges that Mr.

2

FBG_CH1_00089969

James "fraudulently secured billions of dollars of financing for First Brands, only to turn around and enrich himself and his family by misappropriating hundreds of millions (if not billions) of dollars from First Brands . . . ." *Id.*

8. The Amended Complaint alleges, again, that Mr. James (and not Mr. Graham) perpetuated "this fraud" through four "discrete" types of misconduct: (a) third-party factoring of accounts receivable based on "non-existent or doctored invoices"; (b) off-balance sheet financing through special purpose vehicles; (c) supply chain financing arrangements; and (d) alterations of First Brands' financial statements, which resulted in misrepresentations regarding First Brands' financial condition. (Am. Compl. ¶¶ 4-8, 46-69.) The Amended Complaint then alleges that the proceeds of this fraud were transferred to Mr. James and entities under his control or for his benefit "to fund James' and his family's lavish lifestyle." (Am. Compl. ¶¶ 70-71.)

9. The Debtors do not claim that Mr. Graham was involved in the vast majority of the alleged misconduct detailed in the Amended Complaint. Indeed, he is barely mentioned in the more than 70 paragraphs that purport to detail the manner in which Mr. James fraudulently obtained financing and diverted money for his personal use. (Am. Compl. ¶¶ 40-112.) Instead, the minimal allegations against Mr. Graham fall into two broad categories:

10. *First*, the Amended Complaint repeatedly engages in group pleading, indiscriminately lumping Mr. Graham together with co-defendants Michael Baker and Peter Andrew Brumbergs, alleging that they collectively engaged in wrongdoing without identifying specific acts attributable to Mr. Graham. (Am. Compl. ¶¶ 113-116.) For example, the Amended Complaint contains the conclusory allegation (among other similar allegations) that "Baker, Brumbergs, and Graham provided substantial assistance to James, either by helping the Company

3

FBG_CH1_00089970

incur financing through fraudulent means, and/or by ensuring the delivery of funds to James, his family trust, or third parties acting for James' and his family's benefit." (Am. Compl. ¶ 114.)

11.     *Second*, the few allegations in the Amended Complaint that are specific to Mr. Graham are nothing more than general descriptions of his role as CFO and conclusory claims of wrongdoing.  Indeed, it describes Mr. Graham's role as CFO to include the following:

   a. "oversaw First Brands' financial reporting, accounting, and treasury practices, and participated in communications with lenders and financing counterparties";

   b. "routinely received and reviewed lender-facing materials, provided financial information in response to lender requests, and participated in communications concerning financing capacity and availability";

   c. "bore responsibility for the accuracy of First Brands' financial reporting and certifications";

   d. "approved, reviewed, and/or signed financial statements, management representations, and lender certifications for First Brands and its subsidiaries;" and

   e. "coordinated with James and senior finance personnel regarding the presentation of EBIDTA, classification of expenses, and timing of liability recognition."

(Am. Compl. ¶¶ 124-125.)

12.     The only allegations of purported misconduct specific to Mr. Graham are that he:

   a. "failed to implement controls or halt financing practices that caused First Brands to incur obligations far beyond its ability to repay";

   b. "supervised or permitted manual changes to Company financial statements . . . that masked deteriorating liquidity and mounting covenant pressure"; and

   c. "personally directed transfers of First Brands' funds to James or entities under his control."

(Am. Compl. ¶¶ 124-126.)  The Amended Complaint does not identify any particular financial statement that Mr. Graham "approved, reviewed, and/or signed" that was false when made nor does it claim that Mr. Graham had knowledge of such falsity.  The Amended Complaint also fails to identify a single improper transfer of First Brands' funds that Mr. Graham "personally directed."

4

FBG_CH1_00089971

13. These allegations are insufficient to state a claim against Mr. Graham and must be dismissed under Fed. R. Civ. P. 12(b)(6) or, alternatively, are so vague and ambiguous that Mr. Graham cannot reasonably prepare a response and a more definite statement is required under Fed. R. Civ. P. 12(e).

**ARGUMENT**

## I. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)

14. Fed. R. Civ. P. 12(b)(6) applies to this adversary proceeding by virtue of Fed. R. Bankr. P. 7012. To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible" only if the alleged facts permit a "reasonable inference that the defendant is liable for the alleged misconduct." *Id.* at 678. Allegations that are "merely consistent with" liability are not sufficient. *Id.*

15. In assessing the sufficiency of a complaint under Rule 12(b)(6), the Court must accept as true only the well-pleaded factual allegations. *See Alexander v. Philip R. Taft Psy D & Assocs., PLLC*, 165 F.4th 309, 319 (5th Cir. 2025), *petition for cert. filed*, --- U.S.L.W. ---- (U.S. Mar. 23, 2026) (No. 25-1128); *Allen v. Walmart Stores, LLC*, 907 F.3d 170, 177 (5th Cir. 2018). Courts must disregard and cannot consider:

    a. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action," *Iqbal*, 556 U.S. at 678; *see also Allen*, 907 F.3d at 177;

    b. "Speculative or conclusory statements of fact," *Alexander*, 165 F.4th at 319, and "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (cleaned up) (quoting *Twombly*, 550 U.S. at 557); *Allen*, 907 F.3d at 177; and

    c. Allegations that "lump[] together multiple defendants without identifying who is responsible for which acts," *Del Castillo v. PMI Holdings N. Am., Inc.*, No. 4:14-

5

FBG_CH1_00089972

CV-03435, 2016 WL 3745953, at *13 (S.D. Tex. July 13, 2016); *see also Wesner v. Southall*, 772 F. Supp. 3d 700, 707 (N.D. Tex. 2023).

16. Here, the Amended Complaint asserts three claims against Mr. Graham: breach of fiduciary duty (Count IX), aiding and abetting breach of fiduciary duty (Count X), and conspiracy (Count XI). For the reasons that follow, these claims should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**A.** **The Amended Complaint Fails to Plead Adequately a Claim for Breach of Fiduciary Duty Against Stephen Graham**

17. The Debtors' breach of fiduciary duty claim against Mr. Graham should be dismissed on the following grounds:

a. First Brands' LLC agreement includes an exculpation clause that eliminates any fiduciary duties Mr. Graham may have otherwise had to the entity, and "[t]here cannot be a breach of non-existent fiduciary duties," *Riverside Risk Advisors LLC v. Chao*, No. 2019-0789-KSJM, 2022 WL 14672745, at *30 (Del. Ch. Oct. 26, 2022), *aff'd*, 303 A.3d 51 (Del. 2023), and

b. the allegations against Mr. Graham are conclusory and otherwise fail to state a claim for relief.

Mr. James has already argued that the breach of fiduciary duty claim should be dismissed in its entirety because, among other things, it is barred by the applicable exculpation clause(s). *See* Renewed Mot. of Patrick James to Dismiss, Adv. Proc. Dkt. No. 155, ¶¶ 30-38, 66-68. Rather than duplicate that briefing, Mr. Graham joins that argument, which is equally applicable to him, and incorporates it herein by reference.

18. Assuming arguendo that Mr. James' arguments do not fully dispense with this claim against Mr. Graham, the well-pleaded, non-conclusory allegations against Mr. Graham fail to state a claim for breach of fiduciary duty.

19. The Debtors' breach of fiduciary duty claim against Mr. Graham is based on his alleged failure either: (i) to "implement[] any reporting or information systems or controls" or (ii)

6

FBG_CH1_00089973

**DEBTORS' EXHIBIT NO. 170**
**Page 8 of 25**
**JOINT EXHIBIT NO. 46**
**Page 8 of 25**

to "monitor or oversee" the systems that were in place. (Am. Compl. ¶ 200.)[2]  This is commonly referred to as the *Caremark* theory of liability under Delaware law. *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996), *aff'd sub nom. Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362 (Del. 2006).

20.     Officers and directors can be liable on *Caremark* grounds for: (a) "utterly fail[ing] to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously fail[ing] to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone*, 911 A.2d at 370.  However, proving liability under the *Caremark* line of cases "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark*, 698 A.2d at 967; *accord Desimone v. Barrows*, 924 A.2d 908, 939 (Del. Ch. 2007).  This is, in part, because "the lack of good faith is a necessary condition to liability." *Stone*, 911 A.2d at 369.

21.     To plead a *Caremark* claim, a plaintiff must allege "particularized facts that allow a reasonable inference that the directors acted with scienter, which, in turn, requires [not only] proof that a director acted inconsistent[ly] with his fiduciary duties"—*i.e.*, he satisfies one of the two prongs outlined above—"but also most importantly, that the director knew he was so acting." *Pettry ex rel. FedEx Corp. v. Smith*, No. 2019-0795-JRS, 2021 WL 2644475, at *7 (Del. Ch. June 28, 2021) (alterations in original) (internal quotation marks and citation omitted), *aff'd*, 273 A.3d

---

[2] While the Amended Complaint also purports to base its breach of fiduciary duty claim against Mr. Graham on unidentified "other misconduct" (Am. Compl. ¶ 200), such a vague, catch-all allegation fails to satisfy Fed. R. Civ. P. 8, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7008, because it does not provide fair notice of the basis for the claim. *See, e.g.*, *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 416 (D.D.C. 2017) (dismissing a complaint for failure to comply with Rule 8, where the alleged causes of action "fail[ed] to give any indication of the particular allegations that correspond to the legal theories and claims that are alleged," leaving the reader to "guess at what factual allegations underpin each claim"), *aff'd*, 2017 WL 5664737 (D.C. Cir. 2017).

FBG_CH1_00089974

**DEBTORS' EXHIBIT NO. 170**
**Page 9 of 25**
**JOINT EXHIBIT NO. 46**
**Page 9 of 25**

750 (Del. 2022). In addition, a plaintiff must plead the causation and damages elements of a traditional common law tort. *See, e.g.*, *Canadian Com. Workers Indus. Pension Plan v. Alden*, No. Civ.A. 1184–N, 2006 WL 456786, at \*6 (Del. Ch. Feb. 22, 2006) (to plead a *Caremark* claim, a plaintiff must allege facts that show that the oversight failure "proximately resulted in the losses complained of" (internal quotations marks and citation omitted)). The Amended Complaint fails to satisfy this standard.

22.     *First*, the Amended Complaint does not contain any non-conclusory allegations that Mr. Graham either failed to implement any systems or controls or, if such controls were in place, consciously failed to monitor or oversee them. Indeed, the Amended Complaint does not contain a single non-conclusory allegation concerning First Brands' systems and controls (or lack thereof), let alone allegations concerning Mr. Graham's knowledge of or involvement in the implementation or oversight of such systems and controls. Instead, it simply parrots the standard verbatim. (*See, e.g.*, Am. Compl. ¶ 200.) Such a conclusory recitation of the elements of a cause of action is insufficient to survive a motion to dismiss. *See Firefighters' Ret. Sys. v. Grant Thornton, LLP*, 894 F.3d 665, 669 (5th Cir. 2018) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (alteration in original) (internal quotation marks and citation omitted)).

23.     *Second*, the Amended Complaint contains no non-conclusory allegations concerning Mr. Graham's scienter—*i.e.*, that he was acting in bad faith and knew he was violating his fiduciary duties in not implementing and/or overseeing systems and controls. *See Pettry*, 2021 WL 2644475, at \*7. Instead, the Debtors' argument appears to be that, given Mr. Graham's role as CFO, he should have known he was violating his fiduciary duty. (Am. Compl. ¶ 124.) However, this is not the standard. Courts "routinely reject the conclusory allegation that because illegal

FBG_CH1_00089975

**DEBTORS' EXHIBIT NO. 170**
**Page 10 of 25**
**JOINT EXHIBIT NO. 46**
**Page 10 of 25**

behavior occurred, internal controls must have been deficient, and the board must have known so." *Desimone*, 924 A.2d at 940.

24. To survive a motion to dismiss, the Debtors must plead non-conclusory allegations that Mr. Graham "knew of evidence of corporate misconduct—the proverbial 'red flag'—yet acted in bad faith by consciously disregarding [his] duty to address that misconduct." *Pettry*, 2021 WL 2644475, at *7 (cleaned up). Here, while the Amended Complaint details different categories of documents that Mr. Graham reviewed or would have had access to during his tenure as CFO, there are no allegations that he was actually aware of any false statements in those documents. Nor are there any allegations that Mr. Graham was either aware of the manner in which Mr. James was allegedly fraudulently securing financing or ignored particular red flags. These omissions are fatal to Debtors' breach of fiduciary duty claim against Mr. Graham.

25. *Finally*, the Amended Complaint fails to plead facts supporting a plausible causal connection between any alleged control failure and First Brands' purported damages. The Amended Complaint alleges that Mr. James—First Brands' founder, 100% ultimate owner, CEO, and manager—exercised complete control over First Brands. (Am. Compl. ¶ 3 (he "commandeered" First Brands to engage in purportedly fraudulent conduct); *id.* ¶¶ 114-15 (he was the "ringleader" and "ultimate decision-maker").) These allegations defeat any plausible inference that additional internal controls would have prevented any damage that First Brands purportedly suffered. Indeed, the Amended Complaint pleads no facts suggesting that Mr. Graham had authority to override Mr. James, block any challenged transactions, or otherwise prevent the alleged scheme. Absent such allegations, any inference that any alleged control or oversight failure caused harm is entirely speculative and without factual support.

9

FBG_CH1_00089976

26.     Accordingly, because the allegations concerning any purported breach by Mr. Graham of his fiduciary duty are nothing more than threadbare, conclusory recitals of the elements of the cause of action, this claim must be dismissed.

### B.    The Amended Complaint Fails to Plead Adequately a Claim for Aiding and Abetting Breach of Fiduciary Duty Against Stephen Graham

27.     The Debtors' aiding and abetting breach of fiduciary duty claim against Mr. Graham should be dismissed on the following grounds:

a.   the exculpation clauses in the relevant LLC agreements disclaim any fiduciary duties, *see, e.g., In re Optim Energy, LLC*, No. 14-10262, 2014 WL 1924908, at *6 (Bankr. D. Del. May 13, 2014) ("[D]ue to the specific statement in the Debtors' operating agreement that no fiduciary duties were owed, the Court determines that the breach of fiduciary duty claims against [defendant] and the aiding and abetting breach of fiduciary duties claim against [defendant] must fail"), *aff'd*, 527 B.R. 169 (Del. 2015), and

b.   the allegations against Mr. Graham are conclusory and otherwise fail to state a claim for relief.

Mr. James has already argued that the aiding and abetting breach of fiduciary duty claim should be dismissed in its entirety because, among other things, it is barred by the applicable exculpation clause(s). *See* Renewed Mot. of Patrick James to Dismiss, Adv. Proc. Dkt. No. 155, ¶¶ 27-38,66-68.  Rather than duplicate that briefing, Mr. Graham joins that argument, which is equally applicable to him, and incorporates it herein by reference.

28.     Assuming arguendo that Mr. James' arguments do not fully dispense with this claim against Mr. Graham, the well-pleaded, non-conclusory allegations against Mr. Graham fail to state a claim for aiding and abetting breach of fiduciary duty.  To state this claim, the Debtors must allege facts that allow a reasonable inference of: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach." *In re Hennessy Cap. Acquisition Corp. IV S'holder Litig.*, 318 A.3d 306, 329 (Del. Ch. 2024) (alteration in original), *aff'd*, 337 A.3d 1214

10

FBG_CH1_00089977

(Del. 2024).  Here, the Amended Complaint fails to plead adequately a breach of fiduciary duty or Mr. Graham's knowing participation in that breach.

29.     *First*, the Debtors fail to plead adequately a breach of fiduciary duty.  The Amended Complaint alleges that Mr. James', Mr. Baker's, Mr. Brumbergs's, and Mr. Graham's purported breaches satisfy this element of their aiding and abetting claim.  (Am. Compl. ¶ 207.)  However, Mr. Graham cannot aid and abet his own purported breach, *see, e.g.*, *In re DSI Renal Holdings, LLC*, 574 B.R. 446, 474 (Bankr. D. Del. 2017) ("Under Delaware law, . . . [f]iduciaries cannot aid and abet their own breaches of fiduciary duty."), and he incorporates by reference the arguments of his co-defendants in support of their respective motions to dismiss Debtors' breach of fiduciary duty claims against them, *see, e.g.*, Renewed Mot. of Patrick James to Dismiss, Adv. Proc. Dkt. No. 155, ¶¶ 69-79.  Without a breach, there is nothing to aid and abet, and this claim against Mr. Graham must be dismissed.

30.     *Second*, the Debtors have failed to plead sufficient non-conclusory allegations that Mr. Graham knowingly participated in any breach of fiduciary duty.  The requirement that an aider and abettor act with scienter makes an aiding and abetting a breach of fiduciary duty claim "among the most difficult to prove."  *Witmer v. Armistice Cap., LLC*, 344 A.3d 632, 659 (Del. Ch. 2025), *aff'd*, --- A.3d ----, 2026 WL 849994 (Del. 2026).  To adequately plead scienter, the Debtors must allege both that Mr. Graham had "actual knowledge" that the underlying conduct constituted a breach of fiduciary duty and that he actively participated in that breach.  *Id.* at 660.

31.     The Debtors' allegations concerning knowledge are insufficient.  The Amended Complaint's sole allegation regarding Mr. Graham's scienter is the conclusory claim that "James, Baker, Brumbergs, and Graham each knew or acted with reckless disregard for the fact that the others were engaging in conduct that constituted breaches of their fiduciary duties." (Am. Compl.

11

FBG_CH1_00089978

**DEBTORS' EXHIBIT NO. 170**
**Page 13 of 25**
**JOINT EXHIBIT NO. 46**
**Page 13 of 25**

¶ 208.) However, Delaware law requires actual knowledge—allegations of recklessness are insufficient. *See In re Columbia Pipeline Grp. Merger Litig.*, 342 A.3d 324, 356 (Del. 2025) (explicitly rejecting recklessness as sufficient to satisfy the scienter element of aiding and abetting breach of fiduciary duty).

32.     While Fed. R. Civ. P. 8 permits alternative pleading, it does not allow a claim to proceed where the well-pleaded facts support only a legally insufficient theory. Here, the Amended Complaint pleads no facts supporting a reasonable inference that Mr. Graham had *actual* knowledge that his co-defendants' purported conduct breached their fiduciary duties to First Brands. It does not allege that he was aware that any of the challenged transactions were improper, that any of the financing arrangements were fraudulent, or that he knowingly approved or signed false or fraudulent statements. *At most*, it alleges that he failed to detect alleged misconduct. But reckless or negligent behavior does not satisfy the "knowing participation" requirement. *In re Columbia Pipeline*, 342 A.3d at 356.

33.     The Debtors' allegations concerning active participation are also insufficient. Again, the Amended Complaint contains nothing more than the conclusory allegation that Mr. Graham "knowingly—or, at a minimum, recklessly" assisted in the purported fiduciary breaches. (Am. Compl. ¶ 124.) But, even if the Court could consider such a conclusory allegation in assessing the sufficiency of the Amended Complaint, "active participation" again requires that "the aider and abettor had *actual* knowledge that their conduct was legally improper." *In re Mindbody, Inc., S'holder Litig.*, 332 A.3d 349, 390-91 (Del. 2024) (emphasis added) (internal quotation marks and citation omitted); *see also Witmer*, 344 A.3d at 660.

34.     Here, the Amended Complaint contains no facts supporting a reasonable inference that Mr. Graham had actual knowledge that his own conduct was unlawful. At most, the Amended

FBG_CH1_00089979

**DEBTORS' EXHIBIT NO. 170**
**Page 14 of 25**
**JOINT EXHIBIT NO. 46**
**Page 14 of 25**

Complaint alleges that Mr. Graham engaged in routine corporate conduct—participating in communications with lenders and financing counterparties, reviewing financial statements, and directing transfers of funds—that "assisted in concealing the Company's true financial condition and facilitat[ed] James' misconduct." (Am. Compl. ¶¶ 124-25.)  However, substantial assistance alone is insufficient.  *See, e.g.*, *In re Mindbody*, 332 A.3d at 391.  Without any well-pleaded allegations that Mr. Graham knew that this conduct was unlawful, the aiding and abetting breach of fiduciary duty claim must be dismissed.

> **C.     The Amended Complaint Fails to Plead Adequately a Claim for Conspiracy Against Stephen Graham**

35.     The Debtors' conspiracy claim against Mr. Graham should be dismissed because the Amended Complaint "lacks an allegation regarding a required element necessary to obtain relief." *Torch Liquidating Tr. ex rel. Bridge Assocs. LLC v. Stocksill*, 561 F.3d 377, 384 (5th Cir. 2009).

36.     The necessary elements of a conspiracy claim under Ohio law[3] are: "(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself." *See Colley v. Crabtree*, 235 N.E.3d 562, 577 (Ohio Ct. App. 2024).  Mr. James has already argued that the conspiracy claim should be dismissed in its entirety on the grounds that it is barred by the intracorporate conspiracy doctrine and the Amended Complaint fails to plead adequately either the existence of a malicious combination or an unlawful act independent of the purported conspiracy, among other things.  *See* Renewed Mot. of Patrick James to Dismiss, Adv. Proc. Dkt. No. 155, ¶¶ 30-38, 79.

---

[3] For the purposes of this motion only, Mr. Graham assumes, without conceding, that Ohio law governs the Debtors' alleged conspiracy claim.  Mr. Graham expressly reserves all rights to contest the applicability of Ohio law, including through a choice-of-law analysis, at a later stage of this proceeding.

FBG_CH1_00089980

Rather than duplicate that briefing, Mr. Graham joins in those arguments, which are equally applicable to him, and incorporates them herein by reference.

37.     In addition, even if the Debtors sufficiently alleged the existence of a "malicious combination," which they have not, the Amended Complaint does not contain a single non-conclusory allegation that Mr. Graham was a party to it and shared in its conspiratorial objective. *See Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 538 (6th Cir. 2000) (explaining that an Ohio civil conspiracy claim "focuses on whether the defendant *agreed to join in* the wrongful conduct" (emphasis in original) (internal quotation marks and citation omitted)).  As explained above, the Amended Complaint is devoid of factual allegations that Mr. Graham knew his or his co-defendants' conduct was unlawful—a necessary finding to plead his agreement to join a malicious combination.  *See id.* at 534 (explaining that "[k]nowledge of wrongful purpose" is a "crucial element" of civil conspiracy under Ohio law).  Accordingly, the civil conspiracy claim against Mr. Graham must be dismissed.

## II.     ALTERNATIVELY, THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE A MORE DEFINITE STATEMENT UNDER FED. R. CIV. P. 12(e)

38.     In the alternative, and to the extent the Court finds that the Amended Complaint is not subject to dismissal under Fed. R. Civ. P. 12(b)(6), the Court should order a more definite statement under Fed. R. Civ. P. 12(e), made applicable here through Fed. R. Bankr. P. 7012(b). Rule 12(e) permits a party to move for a more definite statement of a pleading that "is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  "In deciding whether to grant a 12(e) motion, the court is given considerable discretion." *See In re Briar Bldg. Hous. LLC*, No. 18-32218, 2021 WL 2460979, at *11 (Bankr. S.D. Tex. 2021) (exercising its discretion to grant a Rule 12(e) motion where the pleading was "so vague and ambiguous" that the moving party was "not on proper notice to respond").  Here, relief under Rule

14

FBG_CH1_00089981

12(e) is warranted because the Amended Complaint's undifferentiated group pleading and conclusory allegations of wrongdoing renders it so vague and ambiguous that Mr. Graham cannot reasonably prepare a response.

39.     As detailed above, there are minimal allegations concerning Mr. Graham.  The Amended Complaint describes Mr. James'—not Mr. Graham's—purported efforts to "fraudulently secure[] billions of dollars of financing for First Brands" through four "discrete strategies": (a) third-party factoring, (b) off-balance sheet financing, (c) supply chain financing arrangements, and (d) alterations of First Brands' financial statements.  *See* Am. Compl. ¶¶ 4-8, 46-69.  Notably, in the more than thirty paragraphs dedicated to describing these "discrete" strategies, there is not a single allegation concerning Mr. Graham's role, if any, as distinct from his that of his co-defendants.  Indeed, he is only mentioned three times, and each mention is in a group pleading:

   a. "Upon information and belief, James, Brumbergs, and Graham regularly reviewed the Company's cash position, including the availability of [funding obtained through the allegedly improper supply chain financing]" (Am. Compl. ¶ 65);

   b. "Brumbergs and Graham were directly involved in preparing and reviewing financial statements related to [supply chain financing disclosures]" (Am. Compl. ¶ 66); and

   c. "James, through the actions of Brumbergs and Graham, concealed First Brands' true financial condition from counterparties, creditors, and lenders by personally directing the alteration of First Brands' financial statements" (Am. Compl. ¶ 67).

Nor is he mentioned in the Amended Complaint's discussion of the alleged misappropriation of First Brands' funds for Mr. James' personal benefit.  (Am. Compl. ¶¶ 70-112.)

40.     Yet elsewhere the Amended Complaint broadly alleges, again in vague, group pleading fashion, that Mr. Graham was somehow involved in every aspect of the alleged fraud. (Am. Compl. ¶ 9 (alleging that "certain senior executives and directors, including Baker, Brumbergs, and Graham, knowingly participated, substantially assisted, and/or conspired with

15

FBG_CH1_00089982

James in implementing *each* of the [four discrete strategies outlined above]" (emphasis added));
*see also, e.g., id.* ¶ 115-16 (alleging that Mr. James "worked closely with Baker, Brumbergs, and
Graham to implement the fraudulent financings and improper transfers" and that Mr. James
"sometimes delegated authority to Baker, Brumbergs, or Graham, or allowed them some autonomy
in how to accomplish the various misconduct").)  The Amended Complaint also contains vague
references to actions taken by unspecified "Defendants" or "senior First Brands executives." (*See,
e.g.*, Am. Compl. ¶ 64, 66.)

41.     These allegations fail to provide fair notice of the factual basis for the claims against
Mr. Graham, who cannot meaningfully discern what acts or omissions he is alleged to have
undertaken or what role he purportedly played, if any, in the four "discrete strategies" through
which the alleged fraud was perpetrated.  Without this information, Mr. Graham cannot
meaningfully admit or deny allegations, evaluate possible defenses, or identify relevant documents
for discovery.  This is precisely the circumstance that justifies relief under Rule 12(e).  *See, e.g.,
Weiszmann v. Kirkland & Ellis*, 732 F. Supp. 1540, 1549 (D. Colo. 1990) (granting a motion for a
more definite statement where the complaint alleged conduct by defendants collectively and "d[id]
not specify which [entity] defendant did what," finding that, where there are multiple defendants,
a complaint must "specify what conduct by each defendant gives rise to the asserted claim"); *Bliss
v. Adewusi*, No. 3:23-cv-00650-HZ, 2023 WL 6961979, at *30 (D. Or. Oct. 20, 2023) (granting a
motion for a more definite statement where the complaint relied excessively on "inadequate
'shotgun pleadings,'" which failed to connect the factual allegations to the individual defendants).

42.     If the claims against Mr. Graham are not dismissed, the Debtors should be required
to file an amended pleading that includes a more definite statement about, at a minimum, the
following, to enable Mr. Graham to prepare a responsive pleading:

FBG_CH1_00089983

**DEBTORS' EXHIBIT NO. 170**
**Page 18 of 25**
**JOINT EXHIBIT NO. 46**
**Page 18 of 25**

a. Mr. Graham's alleged role, if any, in the "third-party factoring" detailed in Paragraphs 46-52 of the Amended Complaint;

b. Mr. Graham's alleged role, if any, in the "off-balance sheet financing practices" detailed in Paragraphs 53-61 of the Amended Complaint;

c. Mr. Graham's alleged role, if any, in unspecified "misconduct" related to supply chain financing, including the creation of false "cover invoices," and/or "conceal[ing] the extent of the [supply chain financing]," as referenced in Paragraphs 64 and 66 of the Amended Complaint;

d. Which financial statements Mr. Graham is alleged to have personally altered or directed or overseen the alteration of and what was false or misleading in those financial statements, as referenced in Paragraphs 67 and 125 of the Amended Complaint;

e. Which management representations and/or lender certifications for First Brands and its subsidiaries Mr. Graham allegedly "approved, reviewed, and/or signed" and what was false or misleading about them, as referenced in Paragraph 125 of the Amended Complaint;

f. The time periods during which the Debtors contend that Mr. Graham engaged in the alleged conduct for each "distinct strategy" and for each cause of action against him; and

g. What "other misconduct" forms the basis of the Debtors' breach of fiduciary duty claim against Mr. Graham, as referenced in Paragraph 200 of the Amended Complaint.

## CONCLUSION

43.     For the reasons stated above and for the reasons stated in the motions to dismiss filed by Mr. Graham's co-defendants, the Court should dismiss the claims in the Debtors' Amended Complaint against Mr. Graham in their entirety or, alternatively, order a more definite statement.

## RESERVATION OF RIGHTS

Mr. Graham expressly reserves and does not waive the following rights and defenses, each of which is preserved in addition to, and not in limitation of, the arguments set forth in this motion:

17

FBG_CH1_00089984

(i)     Mr. Graham reserves all rights to challenge this Court's subject matter jurisdiction, including whether claims are "core" or "non-core," whether they are "related to" the bankruptcy case, and whether the Court has constitutional authority to enter final judgment.

(ii)     Mr. Graham further reserves all rights to request that the District Court withdraw the reference, in whole or in part, and to demand a jury trial on any claim triable to a jury, together with all rights concerning consent (or lack thereof) to the entry of final orders or judgments by the Bankruptcy Court.

(iii)     Without conceding any claim is timely, Mr. Graham reserves all limitations and repose defenses arising under applicable non-bankruptcy law and the Bankruptcy Code, and any tolling, accrual, or relation-back issues.

(iv)     Mr. Graham reserves all affirmative defenses.

(v)     Mr. Graham reserves the right to contest the applicability of Ohio law to Count XI.

(vi)     Mr. Graham reserves the right to raise any additional grounds for dismissal, summary judgment, or other relief as may become appropriate, and to amend or supplement his defenses and objections if and when facts are developed, without prejudice to any rights under federal bankruptcy procedure and the Local Rules of the United States Bankruptcy Court for the Southern District of Texas.

Nothing in this reservation of rights constitutes consent to the entry of final orders or judgments by this Court on any non-core matter, or on any core matter as to which the Court lacks constitutional authority to enter final judgment, and Mr. Graham expressly reserves the right to have any such matters adjudicated by the United States District Court, with a jury where applicable.

FBG_CH1_00089985

Dated:    April 6, 2026                   Respectfully submitted,

                                          **KOBRE & KIM LLP**

                                          */s/ Daniel J. Saval*
                                          Daniel J. Saval (S.D. Tex. No. 3591233)
                                          Danielle L. Rose (pro hac vice)
                                          800 Third Avenue
                                          New York, New York 10022
                                          Telephone: + 1 212 488 1200
                                          danielle.rose@kobrekim.com
                                          daniel.saval@kobrekim.com

                                          Adriana Riviere-Badell (S.D. Tex. No. 3727876)
                                          201 S. Biscayne Blvd., Suite 1900
                                          Miami, Florida 33131
                                          Telephone: +1 305 967 6100
                                          adriana.riviere-badell@kobrekim.com

                                          *Counsel for Stephen Graham*

19

FBG_CH1_00089986

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed on the 6th day of April, 2026, with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

/s/ *Daniel J. Saval*
Daniel J. Saval

20

FBG_CH1_00089987

**DEBTORS' EXHIBIT NO. 170**
**Page 22 of 25**
**JOINT EXHIBIT NO. 46**
**Page 22 of 25**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>FIRST BRANDS GROUP, *et al.*<br><br>        Debtors.[1] | Chapter 11<br><br>Case No. 25-90399 (CML)<br><br>(Jointly Administered) |
| FIRST BRANDS GROUP, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>PATRICK JAMES, THE PATRICK JAMES TRUST, ALBION REALTY, LLC, ALESTER TECHNOLOGIES LLC, BATTERY PARK HOLDINGS LLC, LARCHMONT LLC, PEGASUS AVIATION, LLC, MICHAEL BAKER, PETER ANDREW BRUMBERGS, STEPHEN GRAHAM, JOHN AND JANE DOE(S) 1-100, and ABC CORPORATION(S) 1-100,<br><br>    Defendants. | Adv. Pro. No. 25-03803 (CML) |

**[PROPOSED] ORDER GRANTING STEPHEN GRAHAM'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6) DEBTORS' AMENDED COMPLAINT
OR, ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT
PURSUANT TO FED. R. CIV. P. 12(e)**
(Related to Docket No. ____)

The Court has considered the motion to dismiss (the "**Motion**") filed by Stephen Graham

pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for a more definite statement

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

FBG_CH1_00089988

pursuant to Federal Rule of Civil Procedure 12(e).  These rules apply to this adversary proceeding by virtue of Federal Rule of Bankruptcy Procedure 7012, which incorporates Rule 12 of the Federal Rules of Civil Procedure.  This Court, having reviewed the Motion and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and for sufficient cause, it is therefore:

**ORDERED** that the Motion is granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and the claims in the Amended Complaint against Mr. Graham are dismissed in their entirety.

Dated:   _____, 2026
       Houston, Texas

_____
CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

FBG_CH1_00089989

**DEBTORS' EXHIBIT NO. 170**
**Page 24 of 25**
**JOINT EXHIBIT NO. 46**
**Page 24 of 25**

3

FBG_CH1_00089990

**DEBTORS' EXHIBIT NO. 170**
**Page 25 of 25**
**JOINT EXHIBIT NO. 46**
**Page 25 of 25**