**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re<br><br>FIRST BRANDS GROUP, LLC *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 25-90399 (CML)<br><br>(Jointly Administered) |
| FIRST BRANDS GROUP, LLC *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>ONSET FINANCIAL, INC. *et al.*,<br><br>    Defendants. | Adv. Pro. No. 26-03005 (CML)<br><br>**ONSET FINANCIAL, INC.'S MOTION FOR JUDGMENT ON PLAINTIFFS' CLAIMS AGAINST ONSET FINANCIAL, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(c)** |
| ONSET FINANCIAL, INC.,<br><br>    Counterclaim Plaintiff,<br><br>v.<br><br>BRAKE PARTS INC LLC; CARDONE INDUSTRIES, INC.; CARNABY CAPITAL HOLDINGS, LLC; CARNABY CAPITAL, LLC; CARNABY FA HOLDINGS, LLC; CARNABY FA, LLC; CARNABY INVENTORY IV, LLC; CARTER FUEL SYSTEMS, LLC; CHAMPION LABORATORIES, INC.; DALTON CORPORATION; EAGLE CASTING HOLDINGS, LLC; EAGLE CASTING, LLC; FIRST BRANDS GROUP HOLDINGS, LLC; FIRST BRANDS GROUP, LLC; FRAMAUTO HOLDINGS, LLC; FRAM GROUP OPERATIONS LLC; HOPKINS MANUFACTURING CORPORATION; HORIZON GLOBAL | |

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands/. The Debtors' service address for these chapter 11 cases (the "Chapter 11 Cases") is 127 Public Square, Suite 5300, Cleveland, OH 44114.

FBG_CH1_00090127

AMERICAS INC.; HORIZON GLOBAL COMPANY LLC; TOLEDO MOLDING & DIE, LLC; TRICO PRODUCTS CORPORATION; TRICO TECHNOLOGIES CORPORATION; VICEROY PRIVATE CAPITAL, LLC; and WALBRO LLC,

     Counterclaim Defendants.

ONSET FINANCIAL, INC.,

     Cross-Claim Plaintiff,

v.

EDWARD JAMES,

     Cross-Claim Defendant.

ONSET FINANCIAL, INC.,

     Third-Party Plaintiff,

v.

AIRTEX PRODUCTS, S.A.; BRAKE PARTS INC INDIA LLC; CARNABY INVENTORY HOLDINGS IV, LLC; DALTON CORPORATION, WARSAW MANUFACTURING FACILITY; EAGLE MACHINING, LLC; FIRST BRANDS GROUP INTERMEDIATE, LLC; JASPER RUBBER PRODUCTS, INC.; STRONGARM, LLC; BPI BRAKE MANUFACTURING JUÁREZ, S.A. DE C.V.; BPI BRAKE SYSTEM (QINGDAO) CO., LTD.; BRAKE PARTS INDIA PRIVATE LIMITED; CARDONE DE MÉXICO, S. DE R.L. DE C.V.; CEQUENT ELECTRICAL PRODUCTS DE MÉXICO, S. DE R.L. DE C.V.; FRAM GROUP OPERATIONS MEXICALI, S.A. DE C.V.; FRAM GROUP OPERATIONS MEXICO CITY, S.A. DE C.V.; HOPKINS

FBG_CH1_00090128

MANUFACTURING DE MÉXICO S. DE R.L. DE C.V.; LONGKOU HAIMENG MACHINERY CO., LTD.; PETERSON AMERICAN CORPORATION; SUBENSAMBLES INTERNACIONALES, S. DE R.L. DE C.V.; TALLERES MECANICOS MONTSERRAT, S.A. DE C.V.; TRICO BELGIUM; TRICO COMPONENTES, S.A. DE C.V.; TRICO ITALY S.R.L.; TRICO WIPERS PLOIESTI S.R.L.; TRIDONEX, S. DE R.L. DE C.V.; ULTINON MOTION GERMANY GMBH (F/K/A LUMILEDS GERMANY GMBH); WALBRO LOS MOCHIS, S. DE R.L. DE C.V.; WESTFALIA-AUTOMOTIVE GMBH; WITTER BRASOV S.R.L.;WILMINGTON SAVINGS FUND SOCIETY, FSB; BANK OF AMERICA, N.A.; SAGARD HOLDINGS MANAGER (US) LLC; GLAS USA LLC; JEFFERIES FINANCE LLC;[2] AEQUUM CAPITAL FINANCIAL II LLC; EVOLUTION CREDIT OPPORTUNITY MASTER FUND II-B, L.P.; GLAS TRUST COMPANY LLC; UMB BANK, N.A.; PATRICK JAMES TRUST; ALBION REALTY, LLC; ALESTER TECHNOLOGIES LLC; BATTERY PARK HOLDINGS LLC; LARCHMONT, LLC; PEGASUS AVIATION, LLC; BOWERY FINANCE II, LLC; PATRICK JAMES; MICHAEL BAKER; PETER ANDREW BRUMBERGS; STEPHEN GRAHAM; SHEKHAR KUMAR; ABC CORPORATION(S) 1–100; and JOHN AND JANE DOE(S) 1–100,

      Third-Party Defendants.

---

[2]   Onset has been informed that Jefferies Finance LLC is no longer serving in the capacity in which it was named as a defendant in the Third-Party Claims. The parties are in discussions with Jefferies Finance LLC regarding a stipulation of voluntary dismissal.

FBG_CH1_00090129

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL STANDARD.............................................................................................................. 6

ARGUMENT.......................................................................................................................... 8

I.    THE DEBTORS FAIL TO SATISFY PLEADING STANDARDS UNDER RULES
      8 AND 9(B)................................................................................................................ 8

A.    The Debtors fail to satisfy Rule 8's basic pleading requirements. ..................................... 8

B.    The Debtors do not meet the heightened pleading standard of Rule 9(b) for the Onset
      Claims that sound in fraud. ............................................................................................ 11

C.    The Debtors engage in improper group pleading. ............................................................. 13

II.   The Onset claims are barred as a matter of law.............................................................. 16

A.    The Onset claims are barred by an explicit, bargained-for release...................................... 16

B.    The doctrine of *in pari delicto* bars certain Onset Claims............................................... 19

C.    The applicable lookback periods or statutes of limitations bar numerous Onset
      Claims. ........................................................................................................................ 23

III.  THE DEBTORS FAIL TO ADEQUATELY PLEAD THE ELEMENTS OF THE
      ONSET CLAIMS......................................................................................................... 25

A.    The Debtors fail to adequately plead the constructive and actual fraudulent transfer
      claims related to certain cash transfers (Counts I and II)................................................... 25

B.    The Debtors fail to adequately plead the constructive and actual fraudulent transfer
      claims related to certain Guaranty Agreements (Counts IV and V). ................................... 34

C.    The Debtors fail to adequately plead the preferential transfer claims (Counts XVIII
      and XIX). ..................................................................................................................... 37

D.    The Debtors fail to adequately plead the aiding and abetting breach of fiduciary duty
      claim (Count XI). ......................................................................................................... 49

E.    The Debtors fail to adequately plead the tortious interference with contract claims
      (Counts VII & IX).......................................................................................................... 55

F.    The Debtors fail to adequately plead the recharacterization claim (Count XII)................... 61

FBG_CH1_00090130

**DEBTORS' EXHIBIT NO. 174**
**Page 4 of 99**
**JOINT EXHIBIT NO. 50**
**Page 4 of 99**

G.     The Debtors fail to adequately plead the avoidance claim (Count XIII). ......................... 62

H.     The Debtors fail to adequately plead the declaratory judgment claims (Counts XIV-XVII). .................................................................................................................. 66

I.     The Debtors fail to adequately plead the equitable subordination claim (Count XX)...... 67

J.     The Debtors fail to adequately plead the unjust enrichment claim (Count XIX). ............ 69

K.     The Debtors fail to adequately plead the disallowance claim (Count XXII)..................... 73

CONCLUSION ........................................................................................................................ 74

FBG_CH1_00090131

**DEBTORS' EXHIBIT NO. 174**
**Page 5 of 99**
**JOINT EXHIBIT NO. 50**
**Page 5 of 99**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 1701 Com., LLC,*
   511 B.R. 812 (Bankr. N.D. Tex. 2014)......................................................................26

*Advon Corp. v. Coopwood's Air Conditioning Inc.,*
   517 F. Supp. 3d 656 (S.D. Tex. 2021) .......................................................................7

*Akula v. Telestax, Inc.,*
   No. 17-1740-CJB, 2018 WL 5004862 (D. Del. Oct. 11, 2018)................................69

*Alameda Rsch. Ltd. v. Giles (In re FTX Trading Ltd.),*
   No. 22-11068 (JTD), 2024 WL 4562675 (Bankr. D. Del. Oct. 23, 2024)...............32

*In re All Tex. Elec. Contractors, Inc. v. NSPS Metals LLC,*
   No. 20-34656, 2022 WL 162786 (Bankr. S.D. Tex. Jan. 18, 2022)...................26, 28

*Allen v. El Paso Pipeline GP Co.,*
   113 A.3d 167 (Del. Ch. 2014)..................................................................................57

*Allstate Ins. Co. v. Countrywide Fin. Corp.,*
   842 F. Supp. 2d 1216 (C.D. Cal. 2012) ..............................................................34, 36

*In re Am. Int'l Grp., Inc., Consol. Derivative Litig.,*
   976 A.2d 872 (Del. Ch. 2009)..............................................................................20, 22

*Anderson v. Meyers (In re Infinity Bus. Grp., Inc.),*
   612 B.R. 76 (Bankr. D.S.C. 2019).......................................................................20, 22

*Anderson v. Wachovia Mortg. Corp.,*
   497 F. Supp. 2d 572 (D. Del. 2007).........................................................................55

*Anesthesia Servs., P.A. v. Anesthesia Advantage, P.C.,*
   No. CV N11C-03-005 MJB, 2013 WL 3352672 (Del. Super. Ct. June 27,
   2013) ......................................................................................................................57

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................................8

*Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.,*
   C.A. No. N15C-06-245 CEB, 2017 WL 1842899 (Del. Super. Ct. Apr. 20,
   2017) ......................................................................................................................57

*Bay Ctr. Apts. Owner, LLC v. Emery Bay PKI, LLC,*
   No. 3658-VCS, 2009 WL 1124451 (Del. Ch. Apr. 20, 2009)...................................53

iii

FBG_CH1_00090132

*BCG Masonic Cleveland, LLC v. Live Nation Ent., Inc.*,
   570 F. Supp. 3d 552 (N.D. Ohio 2021)........................................................................56

*Becker v. Cardinal Health, Inc.*,
   179 N.E.3d 769 (Ohio Ct. App. 2021).......................................................................57

*Beeter v. Tri-City Prop. Mgmt. Servs., Inc. (In re Beeter)*,
   173 B.R. 108 (Bankr. W.D. Tex. 1994)......................................................................41

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................8

*Berry v. Indianapolis Life Ins. Co.*,
   608 F. Supp. 2d 785 (N.D. Tex. 2009) .......................................................................11

*Berry v. Indianapolis Life Ins. Co.*,
   No. 3:08-CV-0248-B, 2011 WL 3555869 (N.D. Tex. Aug. 11, 2011).......................69

*Bihn v. Fifth Third Mortg. Co.*,
   No. 3:13-CV-00057, 2013 WL 5657598 (S.D. Ohio Oct. 16, 2013) .........................71

*Blue Chip Capital Fund II L.P. v. Tubergen*,
   906 A.2d 827 (Del. Ch. 2006)....................................................................................49

*In re Bos. Generating LLC*,
   617 B.R. 442 (Bankr. S.D.N.Y. 2020)........................................................................70

*Bosarge v. Miss. Bureau of Narcotics*,
   796 F.3d 435 (5th Cir. 2015) .......................................................................................7

*In re BP p.l.c. Sec. Litig.*,
   51 F. Supp. 3d 693 (S.D. Tex. 2014) ..........................................................................24

*Brewer Body Shop, LLC v. State Farm Mut. Auto. Ins. Co.*,
   101 F. Supp. 3d 1256 (M.D. Fla. 2015)......................................................................14

*Brooks v. Lehman Bros., Inc.*,
   No. 5:05-cv-160, 2006 WL 8440764 (E.D. Tex. Sept. 20, 2006)..............................25

*Brown v. Douglas (In re Specialty Select Care Ctr. of San Antonio, LLC)*,
   2021 WL 3083522 (N.D. Tex. July 21, 2021).............................................................39

*Browning Interests v. Allison (In re Holloway)*,
   955 F.2d 1008 (5th Cir. 1992) ....................................................................................43

*Bunn Enters., Inc. v. Ohio Operating Eng'rs Fringe Ben. Programs*,
   7 F. Supp. 3d 752 (S.D. Ohio 2014) ...........................................................................56

FBG_CH1_00090133

**DEBTORS' EXHIBIT NO. 174**
**Page 7 of 99**
**JOINT EXHIBIT NO. 50**
**Page 7 of 99**

*Burkhart v. Genworth Fin., Inc.*,
 250 A.3d 842 (Del. Ch. 2020)..........................................................................................23, 24

*Burtch v. Zachem (In re TZEW Holdco LLC)*,
 No. AP 22-50255 (TMH), 2023 WL 6140247 (Bankr. D. Del. Sept. 19, 2023) .........13–14, 15

*Byman v. RRL Cap. Invs., LLC (In re Providence Hosp. of N. Houston, LLC)*,
 653 B.R. 612 (Bankr. S.D. Tex. 2023) .....................................................................................66

*Cage v. Hardy Rawls Enters., LLC (In re Moye)*,
 No. H-10-956, 2010 WL 11519301 (S.D. Tex. Dec. 23, 2010) ........................................44, 45

*Callier v. Nat'l United Grp., LLC*,
 No. EP-21-CV-71-DB, 2021 WL 5393829 (W.D. Tex. Nov. 17, 2021)..................................13

*Carickhoff v. Goodwin (In re Decade, S.A.C., LLC)*,
 635 B.R. 735 (Bankr. D. Del. 2021) ........................................................................................22

*Chaplin v. NationsCredit Corp.*,
 307 F.3d 368 (5th Cir. 2002) ...................................................................................................18

*In re Chris Pettit & Assocs., P.C.*,
 670 B.R. 602 (Bankr. W.D. Tex. 2025)....................................................................................55

*In re Clifford*,
 566 F.2d 1023 (5th Cir. 1978) .................................................................................................62

*Clingman & Hanger Mgm't Assocs. LLC v. Rieck*,
 701 F. Supp. 3d 565 (S.D. Tex. 2023) ...............................................................................54, 58

*Collins v. Morgan Stanley Dean Witter*,
 224 F.3d 496 (5th Cir. 2000) ................................................................................................7, 16

*In re Coral Petroleum, Inc.*,
 50 B.R. 830 (Bankr. S.D. Tex. 1985) .......................................................................................63

*Couzens v. Union Bank & Tr. Co.*,
 234 N.E.3d 661 (Ohio Ct. App. 2024)......................................................................................60

*Cred Inc. Liquidation Trust v. Uphold HQ Inc. (In re Cred Inc.)*,
 650 B.R. 803 (Bankr. D. Del. 2023) ........................................................................................54

*Crescent Res. Litig. Tr. v. Nexen Pruet, LLC (In re Crescent Res., LLC)*,
 No. 09-11597-CAG, 2012 WL 195528 (Bankr. W.D. Tex. Jan. 23, 2012)...........26–27, 36, 39

*Curtis v. Chapman Family Tr. (In re Chapman)*,
 628 B.R. 512 (Bankr. S.D. Tex. 2021) .....................................................................................46

v

FBG_CH1_00090134

*Cygnus Opportunity Fund, LLC v. Washington Prime Grp., LLC*,
   302 A.3d 430 (Del. Ch. 2023).................................................................................................20

*DavCo Acquisition Holding, Inc. v. Wendy's Int'l, Inc.*,
   No. 2:07-CV-1064, 2008 WL 755283 (S.D. Ohio Mar. 19, 2008)..........................................71

*In re Davis*,
   889 F.2d 658 (5th Cir. 1989) ..................................................................................................73

*Dean v. Pivotal Grp.*,
   No. 2:04-cv-732 TS, 2006 WL 1699698 (D. Utah June 15, 2006)..........................................19

*Del Castillo v. PMI Holdings N. Am. Inc*,
   No. 4:14-CV-03435, 2016 WL 3745953 (S.D. Tex. July 13, 2016) ........................................13

*Doe v. Univ. of Tex. M.D. Anderson Cancer Ctr.*,
   653 F. Supp. 3d 359 (S.D. Tex. 2023) .......................................................................................7

*Dorsey v. Portfolio Equities, Inc.*,
   540 F.3d 333 (5th Cir. 2008) ..................................................................................................11

*In re Dublin Sec., Inc.*,
   133 F.3d 377 (6th Cir. 1997) ............................................................................................19, 20

*Elledge v. Friberg-Cooper Water Supply Corp.*,
   240 S.W.3d 869 (Tex. 2007)....................................................................................................25

*Enduring Wellness, L.L.C. v. Roizen*,
   No. CV-19-909042, 2020 WL 3001027 (Ohio Ct. App. June 4, 2020)...................................58

*Enigma Holdings Inc. v. Gemplus Int'l S.A.*,
   Civil Action No. 3: 05-CV-1168-B ECF, 2006 WL 2859369 (N.D. Tex. Oct.
   6, 2006) ..............................................................................................................................11, 62

*Ent. Mktg. & Mgmt., Ltd. v. Fontenot*,
   No. CV H-24-1461, 2024 WL 3243487 (S.D. Tex. June 26, 2024)...................................11, 30

*In re Equip. Equity Holdings, Inc.*,
   491 B.R. 792 (Bankr. N.D. Tex. 2013)................................................................................61, 62

*Exxon Mobil Corp. v. Rincones*,
   520 S.W.3d 572 (Tex. 2017)....................................................................................................25

*In re Fair Fin. Co.*,
   13 F.4th 547 (6th Cir. 2021) ...................................................................................................64

*Faulkner v. Lone Star Brokering, LLC (In re Reagor-Dykes Motors, LP)*,
   2021 WL 2546664 (Bankr. N.D. Tex. June 18, 2021)..............................................................48

vi

DEBTORS' EXHIBIT NO. 174
Page 9 of 99
JOINT EXHIBIT NO. 50
Page 9 of 99

*Fed. Housing Fin. Agency v. Countrywide Fin. Corp. (In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.)*,
No. 2:11-ML-02265-MRP, 2013 WL 12148482 (C.D. Cal. June 7, 2013) ........................34, 37

*First Brands Grp., LLC et al. v. Patrick James*,
No. 25-03803 (CML) (Bankr. S.D. Tex.) [*hereinafter FBG v. James*] ECF No.
141 ................................................................................................................................ *passim*

*Footlick v. Topstep LLC*,
No. 1:22-cv-6152, 2024 WL 1283702 (N.D. Ill. Mar. 26, 2024) ............................................50

*Forsell v. Squirrels, LLC*,
No. 5:22-CV-01454-CEH, 2024 WL 4825973 (N.D. Ohio Nov. 19, 2024) ......................23, 24

*Foster v. Churchill*,
665 N.E.2d 153 (N.Y. 1996) ................................................................................................59

*Franklin Tractor Sales v. New Holland N. Am., Inc.*,
106 F. App'x 342 (6th Cir. 2004) .....................................................................................59–60

*Frith v. Guardian Life Ins. Co. of Am.*,
9 F. Supp. 2d 734 (S.D. Tex. 1998) ....................................................................................12

*Garrett v. PNC Mortg. Co.*,
No. 3:11-CV-02286-O, 2012 WL 527899 (N.D. Tex. Jan. 31, 2012) ....................................72

*Gasmark Ltd. Liquidating Tr. v. Louis Dreyfus Nat. Gas Corp.*,
158 F.3d 312 (5th Cir. 1998) ...............................................................................................47

*Goldman v. Pogo.com, Inc.*,
No. CIV.A. 18532-NC, 2002 WL 1358760 (Del. Ch. June 14, 2002) ....................................56

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) .............................................................................................6, 7

*Greene v. NYMEX, Inc. (In re NYMEX S'holder Litig.)*,
No. 3621-VCN, 2009 WL 3206051 (Del. Ch. Sept. 30, 2009) ...............................................54

*Guffy v. Brown (In re Brown Med. Ctr., Inc.)*,
552 B.R. 165 (S.D. Tex. 2016) .............................................................................................32

*Hall v. Chrysler Credit Corp. (In re JKJ Chevrolet, Inc.)*,
412 F.3d 545 (4th Cir. 2005) ...............................................................................................41

*Husted v. Taggart (In re ECS Ref., Inc.)*,
625 B.R. 425 (Bankr. E.D. Cal. 2020) ..................................................................................48

FBG_CH1_00090136

DEBTORS' EXHIBIT NO. 174
Page 10 of 99
JOINT EXHIBIT NO. 50
Page 10 of 99

*In re IFS Fin. Corp.*,
   No. 02-39553, 2008 WL 4533713 (Bankr. S.D. Tex. Oct. 2, 2008)......................................73

*Infinity Emergency Mgmt. Grp., LLC v. Neighbors Health Sys., Inc. (In re
   Neighbors Legacy Holdings, Inc.)*,
   645 B.R. 864 (Bankr. S.D. Tex. 2022) ..............................................................28, 35

*Innovative Custom Brands, Inc. v. Minor*,
   No. 15-CV-2955 (AJN), 2016 WL 308805 (S.D.N.Y. Jan. 25, 2016) ...................................29

*In re Jack Kline Co.*,
   440 B.R. 712 (Bankr. S.D. Tex. 2010) ......................................................................67

*Javo Beverage Co. v. Javy Coffee Co.*,
   C.A. No. 22-547-RGA, 2023 WL 387587 (D. Del. Jan. 25, 2023) ........................................70

*JLL Consultants, Inc. v. Hormel Foods Corp. (In re AgFeed USA, LLC)*,
   No. 13-11761 (BLS), 2015 WL 9133627 (Bankr. D. Del. 2015)..........................................18

*Juliano v. Engel*,
   Case No. 2:23-cv-351-TS-CMR, 2025 WL 315880 (D. Utah Jan. 28, 2025) ..........................19

*Katchadurian v. NGP Energy Cap. Mgmt., LLC (In re Northstar Offshore Grp.,
   LLC)*,
   616 B.R. 695 (Bankr. S.D. Tex. 2020) ......................................................................30

*Kirschner v. Fitzsimons (In re Trib. Co. Fraudulent Conv. Litig.)*,
   No. 11-MD-2296 (RJS), 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017) ..................................31–32

*Koloni Reklam, Sanayi, Ticaret LTD/STI v. Viacom, Inc.*,
   No. 16-285-SLR, 2017 WL 726660 (D. Del. Feb. 23, 2017) ..................................................50

*La. Indus. Coatings, Inc. v. Pertuit (In re La. Indus. Coatings, Inc.)*,
   31 B.R. 688 (Bankr. E.D. La. 1983) ........................................................................42

*In re Lauren Eng'rs & Constructors, Inc.*,
   No. 21-10051-RLJ, 2024 WL 2947606 (Bankr. N.D. Tex. June 11, 2024) ...........................53

*In re Legendary Field Exhibitions, LLC*,
   Case No. 19-50900-cag, 2023 WL 7852657 (Bankr. W.D. Tex. Nov. 13,
   2023) ....................................................................................................52, 53

*In re Lothian Oil Inc.*,
   650 F.3d 539 (5th Cir. 2011) ..............................................................................61, 62

*Lowe v. B.R.B. Enters., Ltd. (In re Calvillo)*,
   263 B.R. 214 (W.D. Tex. 2000)............................................................................32–33

FBG_CH1_00090137

**DEBTORS' EXHIBIT NO. 174**
**Page 11 of 99**
**JOINT EXHIBIT NO. 50**
**Page 11 of 99**

*Manbro Energy Corp. v. Chatterjee Advisors, LLC,*
    No. 20-civ-3773 (LGS), 2021 WL 2037552 (S.D.N.Y. May 21, 2021)...................................51

*Marina Grp. LLC v. Shirley May Int'l US Inc.,*
    No. 2:21-cv-8733 (BRM) (MAH), 2022 WL 17622679 (D.N.J. Dec. 13, 2022)....................14

*Mascaro Aviation, L.L.C. v. Diamond Aircraft Indus., Inc.,*
    No. 10-60556, 2011 WL 856805 (S.D. Fla. Mar. 8, 2011).......................................................31

*Matson v. Strickland (In re Strickland),*
    230 B.R. 276 (Bankr. E.D. Va. 1999)........................................................................................30

*McGrath v. Nationwide Mut. Ins. Co.,*
    295 F. Supp. 3d 796 (S.D. Ohio 2018) ......................................................................................57

*In re MDIP Inc.,*
    332 B.R. 129 (Bankr. D. Del. 2005) ..........................................................................................26

*Meister v. State Nat'l Bank (In re Mailbag Int'l, Inc.),*
    28 B.R. 905 (Bankr. D. Conn. 1983) .....................................................................................40–41

*Melder v. Morris,*
    27 F.3d 1097 (5th Cir. 1994) .....................................................................................................11

*Merv Props., L.L.C. v. Forcht Bancorp, Inc. (In re Merv Props., L.L.C.),*
    539 B.R. 516 (B.A.P. 6th Cir. 2015)..........................................................................................19

*Meyers v. Textron, Inc.,*
    540 F. App'x 408 (5th Cir. 2013) ..............................................................................................16

*In re Mid-Am. Waste Sys.,*
    284 B.R. 53 (Bankr. D. Del. 2002) ............................................................................................68

*Miller v. ANConnect, LLC (In re Our Alchemy LLC),*
    No. 16-11596 (KG), 2019 WL 4447541 (Bankr. D. Del. Sept. 16, 2019) ...............................53

*Miller v. Black Diamond Cap. Mgmt., LLC (In re Bayou Steel BD Holdings,*
    *L.L.C.),*
    642 B.R. 371 (Bankr. D. Del. 2022) ..........................................................................................53

*Miller v. Kirkland & Ellis LLP (In re IH 1, Inc.),*
    No. 09-10982 (LSS), 2016 WL 6394296 (Bankr. D. Del. Sept. 28, 2016) ..............................30

*Mitchell v. Ca. Cas. Gen. Ins. Co. of Or.,*
    No. 3:18-CV-228, 2019 WL 6877648 (S.D. Ohio Dec. 17, 2019).........................................69

*Mortensen v. Mortensen,*
    564 P.3d 508 (Utah Ct. App. 2025) ..........................................................................................19

FBG_CH1_00090138

DEBTORS' EXHIBIT NO. 174
Page 12 of 99
JOINT EXHIBIT NO. 50
Page 12 of 99

*In re Murchison (Lynn v. Cont'l Bank, N.A.)*,
   154 B.R. 909 (Bankr. N.D. Tex. 1993)...............................................................43, 44

*N. Canton Bd. of Educ. v. AT&T Inc.*,
   Case No. 5:16-cv-1420, 2017 WL 4430251 (N.D. Ohio Oct. 5, 2017).............................60–61

*In re Nat'l Century Fin. Enter., Inc.*,
   783 F. Supp. 2d 1003 (S.D. Ohio 2011) ..................................................................22

*In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*,
   604 F. Supp. 2d 1128 (S.D. Ohio 2009) ..................................................................20

*Navient Sols., LLC v. BPG Off. Partners XIII Iron Hill LLC*,
   315 A.3d 1164 (Del. Super. Ct. 2024) ....................................................................63

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) ................................................................................72

*Nestor v. Poore*,
   No. 2022-0066-SEM, 2024 WL 326666 (Del. Ch. Jan. 29, 2024).............................13

*In re Nw. Senior Housing Corp.*,
   No. 22-30659-mvl11, 2024 WL 2822148 (Bankr. N.D. Tex. June 3, 2024)....................67–68

*O'Quin v. Gautreaux*,
   No. CV 14-00098-BAJ-EWD, 2016 WL 3538377 (M.D. La. June 22, 2016)........................13

*In re Oakwood Homes Corp.*,
   389 B.R. 357 (D. Del. 2008)..............................................................................22

*Off. Comm. of Unsecured Creditors of Midway Games Inc. v. Nat'l Amusements,*
   *Inc. (In re Midway Games Inc.)*,
   428 B.R. 303 (Bankr. D. Del. 2010) .................................................................33, 36

*OptimisCorp v. Waite*,
   C.A. No. 8773-VCP, 2015 WL 5147038 (Del. Ch. Aug. 26, 2015).........................61

*Orthodontic Ctrs. of Tex., Inc. v. Wetzel*,
   410 F. App'x 795 (5th Cir. 2001) .....................................................................22–23

*Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.*,
   710 F. Supp. 2d 458 (D. Del. 2010).....................................................................72

*In re Parkcentral Glob. Litig.*,
   884 F. Supp. 2d 464 (N.D. Tex. July 26, 2012).....................................................12

*In re PennySaver USA Publ'g, LLC*,
   587 B.R. 445 (Bankr. D. Del. 2018) ...................................................................14

x

FBG_CH1_00090139

**DEBTORS' EXHIBIT NO. 174**
**Page 13 of 99**
**JOINT EXHIBIT NO. 50**
**Page 13 of 99**

*Perry v. Lockhart, Morris & Montgomery, Inc.*,
No. 3:24-CV-00021, 2024 WL 1840484 (S.D. Tex. Apr. 26, 2024)................................64–65

*Phillips v. Josmic 2 LLC (In re ONH AFC CS Invs, LLC)*,
671 B.R. 680 (Bankr. D. Del. 2025) ....................................................................29, 35

*PilePro, LLC v. Chang*,
152 F. Supp. 3d 659 (W.D. Tex. 2016)....................................................................51

*In re ProvideRx of Grapevine, LLC*,
507 B.R. 132 (Bankr. N.D. Tex. 2014)....................................................................62

*Quadrant Structured Prods. Co. v. Vertin*,
102 A.3d 155 (Del. Ch. 2014)...............................................................................31

*Reagor Auto Mall, Ltd. v. FirstCapital Bank of Tex., N.A. (In re Reagor-Dyke
Motors, LP)*,
No. 18-50214-RLJ, 2020 WL 4939180 (Bankr. N.D. Tex. Aug. 24, 2020)..........38, 39, 42, 43

*In re Reagor-Dykes Motors, LP*,
No. 18-50214-RLJ-11, 2022 WL 2046144 (Bankr. N.D. Tex. June 3, 2022) .........................46

*Redwood Resort Props., LLC v. Holmes Co.*,
2006 WL 3531422 (N.D. Tex. Nov. 27, 2006)...........................................................71

*Residents Against Flooding v. Reinvestment Zone No. Seventeen*,
260 F. Supp. 3d 738 (S.D. Tex. 2017) ....................................................................61

*Roddy v. Kleberg Cnty. Att'y Kira Talip*,
No. 2:19-CV-361, 2020 WL 11028765 (S.D. Tex. Nov. 30, 2020) .........................................7

*Ruiz v. Kennedy (In re Kennedy)*,
566 B.R. 690 (Bankr. D.N.J. 2017) ........................................................................18

*In re Schuette*,
No. 07-1067-R, 2008 WL 77767 (Bankr. N.D. Okla. Jan. 4, 2008).......................................67

*Shuler Drilling Co. v. Disiere Partners LLC*,
No. 3:22-CV-2062-X, 2023 WL 4497264 (N.D. Tex. July 12, 2023)....................................14

*In re SI Restructuring, Inc.*,
532 F.3d 355 (5th Cir. 2008) .................................................................................67

*Silverman v. Actrade Cap. Inc. (In re Actrade Fin. Techs. Ltd.)*,
337 B.R. 791 (Bankr. S.D.N.Y. 2005)............................................................34, 36–37

*Smith v. US Health Res. & Servs. Admin.*,
No. CV 23-1425, 2025 WL 3124848 (W.D. La. Sept. 30, 2025).......................................66–67

FBG_CH1_00090140

DEBTORS' EXHIBIT NO. 174
Page 14 of 99
JOINT EXHIBIT NO. 50
Page 14 of 99

*Smith v. Weinshanker (In re Draw Another Circle)*,
  602 B.R. 878 (Bankr. D. Del. 2019) .....................................................................54

*SS&C Technologies Holdings, Inc. v. D.E. Shaw & Co., L.P.*,
  2026 WL 322630 (S.D.N.Y. Feb. 6, 2026)................................................................1

*State Bank & Tr. Co. v. Spaeth (In re Motorwerks, Inc.)*,
  371 B.R. 281 (Bankr. S.D. Ohio 2007)....................................................................20

*State v. Watson Pharms. Inc.*,
  440 P.3d 727 (Utah Ct. App. 2019) .......................................................................13

*Stewart v. Wilmington Tr. SP Servs., Inc.*,
  112 A.3d 271 (Del. Ch. 2015)..................................................................................22

*Suhar v. Pension Benefit Guar. Corp. (In re R.C.A. Rubber Co.)*,
  No. 16-52757, 2020 WL 1488759 (Bankr. N.D. Ohio Mar. 26, 2020) .............40, 41

*In re Supplement Spot, LLC*,
  409 B.R. 187 (Bankr. S.D. Tex. 2009) ...................................................................23

*Syed v. Poulos*,
  No. CV-14-826625, 2016 WL 3020066 (Ohio Ct. App. 2016)...............................59

*Textron Inc. v. Endurance Am. Ins. Co.*,
  346 A.3d 639 (Del. Super. Ct. 2025) ...............................................................56–57

*THQ, Inc. v. Starcom Worldwide, Inc. (In re THQ Inc.)*,
  No. 16-30782, 2016 WL 1599798 (Bankr. D. Del. Apr. 18, 2016).........................29

*Travelers Cas. & Sur. Co. of Am. v. Blackbaud, Inc.*,
  No. N22C-12-130 KMM, 2024 WL 1298762 (Del. Super. Ct. Mar. 27, 2024)......56

*Truinject Corp. v. Galderma, S.A.*,
  No. 19-CV-592-LPS-JLH, 2020 WL 5095448 (D. Del. Aug. 28, 2020)................58

*In re U.S. Abatement Corp.*,
  39 F.3d 556 (5th Cir. 1994) ....................................................................................67

*United States v. Patrick James*,
  No. 26-CR-00029 (S.D.N.Y. Jan. 27, 2026)..............................................................2

*United States v. Peter Andrew Brumbergs*,
  No. 26-cr-00025-AT-1 (S.D.N.Y. Jan. 29, 2026).......................................................3

*United States v. Steven Graham*,
  No. 26-cr-00025-AT-2 (S.D.N.Y. Mar. 2, 2026).......................................................3

FBG_CH1_00090141

**DEBTORS' EXHIBIT NO. 174**
**Page 15 of 99**
**JOINT EXHIBIT NO. 50**
**Page 15 of 99**

*Unsecured Creditors Comm. v. Cmty. Bank (In re Stinson Petroleum Co.),*
 506 F. App'x 305 (5th Cir. 2013) .............................................41

*In re Uplift RX, LLC,*
 667 B.R. 665 (Bankr. S.D. Tex. 2024) ..........................................51–52

*Valley Media Inc. v. Borders, Inc. (In re Valley Media, Inc.),*
 288 B.R. 189 (Bankr. D. Del. 2003) ............................................38, 38–39

*Van Duzer v. U.S. Bank Nat. Ass'n,*
 995 F. Supp. 2d 673 (S.D. Tex. 2014) ..........................................6–7

*Van-Am. Ins. Co. v. Schiappa,*
 191 F.R.D. 537 (S.D. Ohio 2000) ..............................................32

*Vichi v. Koninklijke Philips Electronics N.V.,*
 No. 2578-VCP, 2009 WL 4345724 (Del. Ch. Dec. 1, 2009)..........................51

*Villarreal v. Capital One, N.A.,*
 No. H-14-3423, 2015 WL 12766256 (S.D. Tex Feb. 9, 2015)..........................66

*Vornado PS, L.L.C. v. Primestone Inv. Partners, L.P.,*
 821 A.2d 296 (Del.Ch. 2002).................................................59

*VTX Commc'ns, LLC v. AT&T Inc.,*
 No. 7:19-cv-00269, 2020 WL 4465968 (S.D. Tex. Aug. 4, 2020) ....................24, 49

*Walker v. Beaumont Indep. Sch. Dist.,*
 938 F.3d 724 (5th Cir. 2019) ................................................7

*WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.,*
 49 A.3d 1168 (Del. 2012) ...................................................59

*Whittaker v. Groves Venture, LLC (In re Bolon),*
 538 B.R. 391 (Bankr. S.D. Ohio 2015)........................................24

*Wick v. Ach,*
 139 N.E.3d 480 (Ohio Ct. App. 2019).........................................71

*Williams v. Phillips Petroleum Co.,*
 23 F.3d 930 (5th Cir. 1994) .................................................18

*WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.,*
 No. 09-cv-02487-dmg, 2013 WL 12203024 (C.D. Cal. Apr. 4, 2013)..................49

*In re Zedda,*
 103 F.3d 1195 (5th Cir. 1997) ...............................................64

FBG_CH1_00090142

**DEBTORS' EXHIBIT NO. 174**
**Page 16 of 99**
**JOINT EXHIBIT NO. 50**
**Page 16 of 99**

**Statutes**

11 U.S.C. § 101(31) ...........................................................................................................43

11 U.S.C. § 547(b) ............................................................................................24, 38, 43, 45

11 U.S.C. § 547(c)(2) ........................................................................................................47

11 U.S.C. § 548(a) .......................................................................................................23, 25

11 U.S.C. § 550(a) .............................................................................................................25

Del. Code Ann. tit. 6, § 9-310 ...........................................................................................65

Del. Code Ann. tit. 6, § 9-317 ...........................................................................................65

Del. Code Ann. tit. 6, § 9-516 ...........................................................................................65

Del. Code § 1304(a)(1)-(2) ................................................................................................25

Del. Code § 1304(b) ..........................................................................................................31

Del. Code § 1309(1)-(2) .....................................................................................................23

Ohio Rev. Code Ann. § 1309.310 ......................................................................................65

Ohio Rev. Code Ann. § 1309.317 ......................................................................................65

Ohio Rev. Code Ann. § 1309.516 ......................................................................................65

Ohio Rev. Code Ann. § 1336.04(A) .............................................................................23, 25

Ohio Rev. Code § 1336.04(A)(2) ......................................................................................25

Ohio Rev. Code § 1336.04(B) ...........................................................................................31

Tex. Civ. Prac. & Rem. Code Ann. § 16.003 ....................................................................25

Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(5) ...........................................................25

**Other Authorities**

*Black's Law Dictionary* (12th ed. 2024) ...........................................................................40

Fed. R. Civ. P. 8(a)(2) .....................................................................................................3, 8

Fed. R. Civ. P. 9(b) ............................................................................................ 3, 11,12, *passim*

Fed. R. Civ. P. 12(c) ............................................................................................ 1, *passim*

FBG_CH1_00090143

DEBTORS' EXHIBIT NO. 174
Page 17 of 99
JOINT EXHIBIT NO. 50
Page 17 of 99

Fed. R. Bankr. P. 7012 ............................................................................................................1

xv

FBG_CH1_00090144

Onset Financial, Inc. ("Onset") submits this motion (the "Motion"), pursuant to Rule 12(c) of the Federal Rule of Civil Procedure ("Rule 12(c)") made applicable in bankruptcy cases under Rule 7012 of the Federal Rules of Bankruptcy Procedure, for judgment on the pleadings with respect to the complaint [Dkt. No. 1] (the "Complaint") filed by the debtors in the above-captioned proceedings (the "Debtors") and the answer [Dkt. No. 16] (the "Answer") filed by Onset.[3]

In support of the Motion, Onset respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Onset should not be a defendant in this adversary proceeding.  The Debtors seek to tar Onset—one of the largest victims of First Brands' fraudulent scheme—with the same brush as the true culprits:  former CEO Patrick James ("Patrick"), his brother and former Executive Vice President Edward James ("Ed"), and their insider co-conspirators.  The Debtors know this attempt to recast Onset's role will fail:  they are in possession of books and records detailing the full history of Onset's business relationship with First Brands.  Yet the Debtors do not cite a single piece of evidence demonstrating that Onset had any knowledge of the James brothers' carefully concealed fraud, much less that Onset was a knowing participant.  Instead, the Debtors repeatedly and improperly conflate Ed's misconduct with Onset's good faith.  So too do they conflate entirely separate Debtor entities, frequently failing to identify which Debtors are bringing which claims or in which transactions various Debtors were involved.  That this obfuscation is necessary for the Debtors to tell the story contained in the Complaint is revealing:  only with a high degree of misdirection can the Debtors attempt to piece together a narrative in which Onset is liable.  Not

---

[3]   This Motion only addresses the claims asserted against Onset in the Complaint.  This Motion does not take into account the separate counterclaims asserted by Onset against the Debtors.  *See SS&C Technologies Holdings, Inc. v. D.E. Shaw & Co., L.P.*, 2026 WL 322630, at *2–3 (S.D.N.Y. Feb. 6, 2026) (finding defendant's Rule 12(c) motion, filed before plaintiff had responded to defendant's counterclaims, ripe for review because the motion "relate[d] solely to the [plaintiff's] claims in the amended complaint and [did] not concern [the defendant's] counterclaims" (citation omitted)).

FBG_CH1_00090145

only is this disingenuous, this failure of specificity in pleading is fatal to the claims brought against Onset. Onset is entitled to judgment on the pleadings dismissing all claims.

2. The Debtors' story does not hang together. They tie themselves in knots with patently implausible allegations concerning Onset. Unable to offer any rational explanation for why Onset would willingly hand over, again and again, hundreds of millions of dollars it knew would be misappropriated by Patrick and Ed, the Complaint simply states, and only "upon information and belief," that Onset knowingly facilitated Ed's "abuse of his position . . . to divert hundreds of millions of dollars away from Debtors."[4] What goes unsaid is that this "hundreds of millions of dollars" was ***Onset's own funding***—funding Onset expected to be repaid. The Complaint also does not, and cannot, explain why Onset would knowingly provide hundreds of millions of dollars to purchase assets from an insolvent company when Onset (again, "upon information and belief") knew that these title-securing "transactions . . . were not intended to be and were not carried out."[5] Why Onset would invest real, significant funding into transactions it knew to be fraudulent and therefore knew could not generate funds to repay Onset is a question the Complaint cannot answer.

3. The real story is readily available. The Debtors themselves tell it in their adversary complaint filed against Patrick,[6] as does the federal indictment filed by the United States Department of Justice against Patrick and Ed, unsealed on January 27, 2026, charging them with multiple criminal offenses, including conspiracy to commit wire fraud, bank fraud, and money laundering.[7] These public documents allege without equivocation that, under Patrick and Ed's

---

[4] Complaint ¶ 84.

[5] *Id.*

[6] *First Brands Grp., LLC et al. v. Patrick James*, No. 25-03803 (CML) (Bankr. S.D. Tex.) [*hereinafter FBG v. James*] ECF No. 141, ¶ 67 (the "Patrick Amended Complaint"), attached to the Answer as Exhibit 2.

[7] *United States v. Patrick James and Edward James*, No. 26-CR-00029 (S.D.N.Y. Jan. 27, 2026) [hereinafter *U.S. v. James* or the "James Brothers Indictment"], ECF No. 2, attached to the Answer as Exhibit 1. Onset respectfully

2

FBG_CH1_00090146

leadership, the Debtors perpetrated a complex, elaborately concealed fraud for many years. Both documents make clear that Onset was a longtime and consistent provider of funding to the Debtors that was deceived and defrauded, as were the Debtors' many other sophisticated creditors. And most recently, Onset, through its counterclaim, cross-claim, and third-party complaint (together, the "Counterclaims"), filed with its Answer, offers a detailed account of how it was deceived and defrauded by the James brothers and their insider cohorts[8] at the Debtors, with reference to numerous communications, transaction documents, and other specific evidence, in marked contrast to the Debtors' hollow and factually unsupported allegations.

4.      It is certainly alarming that the Debtors, through the Complaint, misrepresent well-known or otherwise demonstrable facts (belied not only by their own and other public filings but also by the voluminous information in their possession). Should this case proceed to discovery, the Debtors' many misrepresentations will be laid bare. But even as pled in the Complaint, the Debtors fail to state any claim on which they are entitled to relief.

5.      *First*, with respect to their claims against Onset (the "Onset Claims"),[9] the Debtors fail to meet the pleading standards required by Federal Rules of Civil Procedure 8(a) or 9(b) (respectively, "Rule 8" and "Rule 9(b)"). Time and again, the Debtors resort to improper group pleading with respect to the defendants in a transparent effort to shift Ed's misconduct onto Onset. But Onset and Ed are not interchangeable, and the Debtors fail to plead any facts demonstrating

---

requests that the Court consider Exhibit 1 attached to the Answer (the James Brothers Indictment), along with all other Answer exhibits referenced herein, pursuant to Rule 12(c). *See infra* ¶ 15.

[8]    The Debtors' former Chief Financial Officer Steven Graham and former Vice President of Finance Peter Andrew ("Andy") Brumbergs have both pleaded guilty to multiple felony counts arising from their participation in the James brothers' fraud scheme. *See* Minute Entry, *United States v. Peter Andrew Brumbergs*, No. 26-cr-00025-AT-1 (S.D.N.Y. Jan. 29, 2026); Minute Entry, *United States v. Steven Graham*, No. 26-cr-00025-AT-2 (S.D.N.Y. Mar. 2, 2026).

[9]    Specifically, the Onset Claims are Counts I, II, IV, V, VII, IX, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, and XXII.

3

FBG_CH1_00090147

**DEBTORS' EXHIBIT NO. 174**
**Page 21 of 99**
**JOINT EXHIBIT NO. 50**
**Page 21 of 99**

that they should be treated as such.  The Debtors do not (and cannot) state plausible allegations against **Onset** based on **Onset's** purported conduct.

6.      The Debtors also engage in improper pleading on the other side of the "v":  they consistently conflate alleged harms felt by the undefined "FBG Debtors" with alleged harms done to Carnaby Inventory IV, LLC and Carnaby FA, LLC (together, the "Carnaby Debtors").  The FBG Debtors and Carnaby Debtors are separate groups of entities; while Onset had relationships with several Debtor entities, each transaction and relationship is distinct.  To the extent that there are causes of action among and between Debtors—*i.e.*, if the so-called "FBG Debtors" have claims against the Carnaby Debtors—those claims do not involve Onset.  That is an intra-Debtor dispute that must be resolved among those Debtors and should not be resolved under this Complaint.

7.      *Second*, the Debtors fail utterly to satisfy Rule 9(b)'s heightened pleading standing for the Onset Claims that sound in fraud.  They can offer only vague allegations made "on information and belief"—again, despite being in possession of documents spanning the full period of the relationship with Onset—without the "who, what, when, where, and why" required to plead with particularity.  This should astonish the Court.  As these fraud allegations stem from *the Debtors'* transactions and *the Debtors'* former management's conduct, it is *the Debtors*, surely, who are in the best possible position to make particularized factual claims.  These pleading failures are all the more glaring given that the Debtors are in possession of Rule 2004 discovery materials that Onset cooperatively produced, including extensive communications between Onset and the Debtors' former management (including Ed).  The Debtors' lack of specificity regarding Onset's purported culpability proves the point—it confirms that no more can be said.

8.      *Third*, various Onset Claims are barred as a matter of law.  Beginning in May 2025, at the Carnaby Debtors' urging, Onset entered into certain forbearance agreements in which it

4

FBG_CH1_00090148

DEBTORS' EXHIBIT NO. 174
Page 22 of 99
JOINT EXHIBIT NO. 50
Page 22 of 99

agreed to refrain from calling a default or exercising available remedies against the Debtors. In exchange for this and other extremely valuable concessions from Onset, the Debtors agreed to release *any and all* claims they may have had against Onset arising from transactions between the parties. This express, bargained-for release compels the blanket dismissal of the Onset Claims. What's more, the Debtors have already confirmed their participation in a fraudulent scheme in both this Complaint and the Patrick James Adversary Complaint; the doctrine of *in pari delicto* thus also bars the Debtors from pursuing certain Onset Claims. And the Debtors also seek to assert claims relating to transactions dating back to April 2018, more than three years outside even the longest lookback period and accordingly barred by the applicable statute of limitations. Each of these failures is a complete bar to some or all of the Onset Claims.

9.     *Finally*, the Debtors fail, again and again, to adequately plead the merits of the Onset Claims. For the constructive fraudulent transfer claims, the Debtors do not (i) identify the transferor for each transfer, (ii) allege that the relevant transferor was insolvent at the time of each transfer, or (iii) provide the basis for asserting that *each* individual transfer was for less than reasonably equivalent value. The preference claims are similarly deficient, as the Debtors (i) do not identify which Debtor entities transferred the funds at issue, (ii) fail to tie the transfers to specific antecedent debts outstanding at the time of the transfers, and (iii) lump together cumulative dollar amounts allegedly owed without identifying the actual transfers at issue. The tortious interference claim, too, must fail, for the Debtors do not identify any contractual provision that Ed allegedly breached, let alone establish that Onset had knowledge of such provisions; the aiding and abetting breach of fiduciary duty claim also fails, for in addition to failing to identify the duty breached, or what Onset purportedly did to aid and abet such breach, it rests entirely on the implied covenant of good faith and fair dealing, a contractual principle that creates no fiduciary duty under

FBG_CH1_00090149

applicable law.  The unjust enrichment claim fails because it is duplicative and, in any event, is barred because this dispute arises from the parties' relationships under contract.  And more.  No Onset Claim is pled in a manner sufficient to sustain a plausible claim for relief.

10.     Instead of providing Onset fair notice of the claims asserted, the Debtors submit a classic shotgun pleading that cannot be entertained.  When the Complaint's conclusory, information-and-belief, and speculative allegations against Onset are disregarded, as they must be under Rules 8 and 9(b), what remains for the Court to consider are only the well-pled allegations of fraud by Ed in this Complaint (which are supported by the allegations of fraud by Patrick and his insider cohorts in the Patrick James Adversary Proceeding and by the compelling allegations of fraud against Ed and Patrick in the James Brothers Indictment).

11.     These cases follow from one of the largest corporate fraud schemes in recent memory.  Outrageous harms have been done to many—but not by Onset.  Onset is a victim, and the Debtors know this to be true.  That they cannot plead with adequate specificity Onset's involvement in or knowledge of the Debtors' fraudulent activity puts paid to the patchwork narrative set out in the Complaint.

12.     For the reasons set forth herein, the Debtors fail to state any plausible claim for relief against Onset.  The Court should enter a judgment on the pleadings dismissing all of the Onset Claims.

<b><u>LEGAL STANDARD</u></b>

13.     "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citation and internal quotations omitted).  A Rule 12(c) motion is "subject to the same standard as a motion to dismiss for failure

6

FBG_CH1_00090150

to state a claim." *Van Duzer v. U.S. Bank Nat. Ass'n*, 995 F. Supp. 2d 673, 683 (S.D. Tex. 2014), *aff'd*, 582 F. App'x 279 (5th Cir. 2014).

14.     Accordingly, to survive a motion for judgment on the pleadings, a complaint's allegations must be more than merely conceivable—the relief requested must be plausible. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." (citation and internal quotations omitted)).  The Court "will not . . . 'accept as true conclusory allegations or unwarranted deductions of fact.'"  *Great Plains Tr. Co.*, 313 F.3d at 313 (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).  As is true in a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Debtors bear the burden of "rais[ing] a right to relief above the speculative level." *Roddy v. Kleberg Cnty. Att'y Kira Talip*, No. 2:19-CV-361, 2020 WL 11028765, at *4 (S.D. Tex. Nov. 30, 2020) (citation omitted).

15.     In considering a motion for judgment on the pleadings under Rule 12(c), the court may consider the "the contents of the pleadings, including attachments thereto" as well as any judicially-noticed facts.  *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015) (citation and internal quotations omitted); *see also Great Plains Tr. Co.*, 312 F.3d at 313; *Advon Corp. v. Coopwood's Air Conditioning Inc.*, 517 F. Supp. 3d 656, 661–62 (S.D. Tex. 2021).  Importantly, "[i]f the plaintiff's allegations are contradicted by facts disclosed by a document attached to the complaint or by facts disclosed by a document attached to the motion to dismiss that is central to the claim and referenced by the complaint, then the plaintiff's contradicted allegations are ***not*** accepted as true." *Doe v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 653 F. Supp. 3d 359, 370 (S.D. Tex. 2023) (emphasis added).

FBG_CH1_00090151

**DEBTORS' EXHIBIT NO. 174**
**Page 25 of 99**
**JOINT EXHIBIT NO. 50**
**Page 25 of 99**

## ARGUMENT

16.     All the Onset Claims are infirm for numerous reasons.  *First*, none of such claims meet the pleading requirements under Rule 8 and Rule 9(b), and the Debtors consistently engage in impermissible group pleading.  *Second*, the Onset Claims are barred by (a) releases granted in favor of Onset in pre-petition forbearance agreements, (b) the doctrine of *in pari delicto*, and/or (c) applicable look-back periods and statutes of limitation.  *Third*, each Onset Claim fails as pled, as the Debtors not only fail to adequately allege all the elements for each claim but also ***include*** factual allegations that give rise to affirmative defenses precluding certain claims.  For all of these reasons, Onset is entitled to judgment on the Onset Claims.

**I.      The Debtors fail to satisfy pleading standards under Rules 8 and 9(b).**

**A.      The Debtors fail to satisfy Rule 8's basic pleading requirements.**

17.     To survive a motion for judgment on the pleadings, a plaintiff must meet the pleading requirements of Rule 8 for each of its claims:  the plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotations omitted); *see also* FED. R. CIV. P. 8(a)(2).  A claim has facial plausibility when it is supported by "factual content that allows the court to draw that reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and thereby provides "fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, "[t]hreadbare recitals of the elements of a cause of action," "conclusory statements," "legal conclusions," factual allegations that are "merely consistent with a defendant's liability," or any combination of the foregoing do not state a plausible claim.  *See Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted).

8

FBG_CH1_00090152

18.     Here, the Debtors fail to plead sufficient factual content to give Onset fair notice under Rule 8.  Most glaringly, the Debtors routinely fail to identify which Debtor entities are making allegations against specified Defendants, such that it is impossible for Onset or the Court to properly evaluate any given claim because it is unclear which entity is actually asserting harm.[10] Given the complexity and number of the transactions at issue, this information is critical for evaluating the elements of each cause of action.  While the Debtors often refer to the so-called "FBG Debtors," they *never* define "FBG Debtors" in the Complaint.  Onset and the Court are left to guess which of the 112 Debtors fall into this undefined term.  In addition, and as further detailed herein, the Debtors repeatedly describe alleged misconduct without identifying the factual basis[11] or timing[12] of such misconduct (often relying purely on "information and belief").  Perhaps most troublingly, and as described in more detail herein,[13] the Debtors consistently (and baselessly) conflate Onset and Ed, such that it is impossible to ascertain what conduct is being attributed to which party, and on what grounds, in support of the respective claims against each Defendant.

19.     These deficiencies infect each of the Onset Claims.  Such failures for certain claims are summarized below:

- *Constructive Fraudulent Transfer.*  The Debtors fail to both identify the relevant transferors and specify which assets were at issue in such transfers.  Instead, they merely allege that the transfers were made by the "FBG Debtors"—an undefined

---

[10]   *See, e.g.,* Compl. ¶¶ 160 (asserting "[t]he Debtors are . . . entitled to a judgment" on Count I), 170 (asserting the "Debtors are . . . entitled to a judgment" on Count II).

[11]   *See, e.g., id.* ¶¶ 83 (alleging on "information and belief" that "Onset and Edward James agreed to the element of the scheme and the role of each conspirator in furtherance of it"), 176 ("At all relevant times, Edward James, Optimus, JCMC, and the other Onset Investors acted in bad faith before and throughout the scheme, including when receiving transfers from Onset which were funded by the Onset Transaction Transfers made for no or less than reasonably equivalent value"), 218 ("By engaging in the scheme with James and entering into the Onset Transactions, Onset knowingly, wrongfully, intentionally, and without justification caused Edward James to breach the Employment Agreement and the obligations set forth therein.").

[12]   *See, e.g., id.* ¶ 292 (alleging that the alleged preferential cash transfers "were made to Onset during the year preceding the Petition Date" without specifying any dates or timeframes).

[13]   *See infra* Section I.C.

9

FBG_CH1_00090153

**DEBTORS' EXHIBIT NO. 174**
**Page 27 of 99**
**JOINT EXHIBIT NO. 50**
**Page 27 of 99**

term—and involved "obligations" and "hundreds of millions of dollars."[14]   The Debtors do not plead any facts demonstrating that the *relevant transferor* was insolvent at the time of *each* transfer at issue.[15]   The list attached as Exhibit B to the Complaint, which purportedly describes the relevant transfers, provides no better guidance regarding the Debtors' fraudulent transfer claims—it merely lists dates and dollar figures and provides no corresponding information that would enable Onset to properly evaluate the alleged transfers.[16]

- *Preferential Transfers.*   Among other deficiencies, the Debtors do not identify which specific Debtor entity transferred the funds at issue, tie the transfers to specific antecedent debts outstanding at the time of such transfer, or date such transfers.   In fact, the Debtors fail to identify specific alleged preferential transfers at all and instead lump the total amount of the alleged transfers together in the year and 90-days preceding September 28, 2025 (the "Petition Date").[17]

- *Tortious Interference with Contract.*   Among other deficiencies, the Debtors do not adequately allege that there was, in fact, a breach of underlying contracts.   The Debtors do not even provide the contractual provisions or duties that Ed allegedly violated.   The Debtors further fail to allege facts showing that Onset was aware of—let alone intentionally aided and abetted—any purported breaches of contract by Ed.

- *Declaratory Judgments.*   As it relates to certain declaratory judgment claims, the Debtors fail to identify both (i) the "lease schedules" or specific inventory necessary to assess Count XIV seeking a declaratory judgment that Onset does not have a property interest in the certain replacement inventory; and (ii) the agreements allegedly breached, and specific bases for the breaches, to assess Count XV seeking a declaratory judgment that any security interest held by Onset in PP&E or inventory is subordinate to the ABL/Term Loan Lenders' liens in the same.

- *Equitable Subordination.*   The Debtors do not describe the nature of Onset's allegedly inequitable conduct, provide factual allegations showing how such conduct harmed the Debtors or advantaged Onset, or even identify which of the Debtors purportedly suffered harm.   Instead, the Debtors merely allege that Onset

---

[14]   Compl. ¶¶ 161–70.

[15]   *Id.*

[16]   *See id.* Ex. B.  Notably, in Exhibit A to the Complaint, the Debtor list numerous alleged transactions and identify the transferors and assets at issue in such transactions; the Debtors, however, do not tie those transactions to any of the allegedly fraudulent transfers listed in Exhibit B.  *Compare, e.g., id.* Ex. A at 14 (listing lease schedules dated December 11, 2023) *with id.* Ex. B (not listing any transfers on December 11, 2023).

[17]   *Id.* ¶¶ 283–96.

FBG_CH1_00090154

**DEBTORS' EXHIBIT NO. 174**
**Page 28 of 99**
**JOINT EXHIBIT NO. 50**
**Page 28 of 99**

"engaged in inequitable conduct" that gave Onset an "unfair advantage."[18]  Such vague, conclusory statements fall short of the requirements of Rule 8.

20.     As the Debtors do not satisfy the pleading standards nor provide fair notice under Rule 8, the Court should dismiss the Onset Claims.[19]

> **B.     The Debtors do not meet the heightened pleading standard of Rule 9(b) for the Onset Claims that sound in fraud.**

21.     Under Rule 9(b), in addition to the basic pleading requirements of Rule 8, a plaintiff alleging fraud must do so with "particularity."  *See* FED. R. CIV. P. 9(b).  "Pleading fraud with particularity in this circuit requires the particulars of time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby."  *Ent. Mktg. & Mgmt., Ltd. v. Fontenot*, No. CV H-24-1461, 2024 WL 3243487, at *12 (S.D. Tex. June 26, 2024) (internal citations and quotations omitted).

22.     "Put simply, Rule 9(b) requires the complaint to set forth *'the who, what, when, where, and how'* of the events at issue."  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (citation omitted and emphasis added).  Moreover, "Rule 9(b) applies whenever fraud is an essential element of the claim," *Fontenot*, 2024 WL 3243487, at *12, and requires that a complaint set forth "specific facts to support an inference of fraudulent intent[.]" *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994).

23.     Here, the Debtors fail to satisfy this heightened standard for the Onset Claims that sound in fraud.  The Debtors' theory of Onset's liability for such Counts hinges on Onset's

---

[18]   *Id.* ¶¶ 298, 300.

[19]   Moreover, the Debtors fail to identify the governing law applicable to the majority of the state-law claims the Debtors bring.  This, too, is fatal.  *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 801 n.16 (N.D. Tex. 2009) ("A complaint should be dismissed when the governing law cannot be determined from the facts alleged therein."); *Enigma Holdings Inc. v. Gemplus Intern S.A.*, Civil Action No. 3:05-CV-1168-B ECF, 2006 WL 2859369, at *7–8 (N.D. Tex. Oct. 6, 2006) (granting a motion to dismiss without prejudice where plaintiff had "not alleged sufficient facts for the Court to determine choice of law for the fraud-based claims").  Nevertheless, unless otherwise indicated, Onset assumes that state-law claims are brought under either Delaware or Ohio law, consistent with the law selected for the state fraudulent transfer claims.

FBG_CH1_00090155

purported participation in a large "scheme to defraud creditors,"[20] yet the Debtors do not allege

any specific facts describing *Onset's* purported involvement or fraudulent conduct.  Among other

failures, the Debtors do not identify specific misrepresentations (the "what") caused *by Onset*;

indicate to whom such misrepresentations were made (the "who"); identify the date of the alleged

fraud (the "when"); explain the nature of such misrepresentations; or otherwise explain how Onset

purportedly benefitted from such alleged misrepresentations (the "how").  To the extent that the

Debtors allege that Onset participated in this scheme with fraudulent intent, such statements are

wholly conclusory and unsupported by specific factual claims.  Such general allegations, devoid

of sufficiently specific factual support, do not satisfy the stringent standard of Rule 9(b).

24.     The shortcomings of each of the claims that sound in fraud are summarized below:

- *Actual Fraudulent Transfer.*  The Debtors fail to allege *any* facts indicating the transferors' indicating intent—both because the Debtors routinely fail to identify the specific transferor and because the Debtors fail to provide factual allegations regarding specific badges of fraud indicative of the transferors' fraudulent intent.

- *Aiding and Abetting Breach of Fiduciary Duty.*  Because the Debtors allege that the breach of fiduciary duty underlying this claim arises from Ed's participation in a fraudulent scheme,[21] this claim sounds in fraud and is subject to Rule 9(b).  *See In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d 464, 470 (N.D. Tex. July 26, 2012).  Here, the Debtors fail to plead particular facts establishing the underlying breach of fiduciary duty, including what duties were breached, to whom those duties were owed, what conduct allegedly breached those duties and allegedly aided and abetted such breaches, and when that conduct occurred.  Further, the Debtors fail entirely to allege with particularity any facts that show Onset acted with the requisite intent to aid Ed in his purported breach.

- *Unjust Enrichment.*  Because the basis of the Debtors' alleged unjust enrichment claim is an "unlawful scheme to defraud creditors[,]"[22] Rule 9(b) applies.  *See, e.g., Frith v. Guardian Life Ins. Co. of Am.,* 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998).  Here, the Debtors do not identify with particularity which of the hundreds of transactions referenced in the Complaint supposedly enriched Onset, when such

---

[20]  Compl. ¶ 1.

[21]  *See, e.g., id.* ¶ 223.

[22]  *See id.* ¶¶ 1, 304.

12

FBG_CH1_00090156

**DEBTORS' EXHIBIT NO. 174**
**Page 30 of 99**
**JOINT EXHIBIT NO. 50**
**Page 30 of 99**

transactions occurred, how such transactions enriched Onset **_unjustly_**, or which specific debtor entities suffered as a result of said enrichment.

As the Debtors fail to satisfy the heightened requirements of Rule 9(b) for the Onset Claims that sounds in fraud, Onset is entitled to judgment on such claims.

      **C.**      **The Debtors engage in improper group pleading.**

25.      The Complaint is riddled through with group pleading, the impermissibility of which is well-recognized and independently warrants dismissal. *See O'Quin v. Gautreaux*, No. CV 14-00098-BAJ-EWD, 2016 WL 3538377, at *2 (M.D. La. June 22, 2016) (granting a motion for judgment on the pleadings because plaintiffs did not properly specify which actions were attributable to which defendants); *Burtch v. Zachem (In re TZEW Holdco LLC)*, No. AP 22-50255 (TMH), 2023 WL 6140247, at *3 (Bankr. D. Del. Sept. 19, 2023) ("The problem with group pleading is that it forc[es] both the Defendants and the Court to guess who did what to whom and when. Such speculation is anathema to contemporary pleading standards." (citation modified)).[23] Here, the Debtors routinely lump Onset together with Ed in a transparent effort to improperly assign Ed's fraudulent conduct to Onset without ever sufficiently alleging a factual basis to do so. This practice is particularly egregious as the Debtors attempt to group plead Onset—a victim— into the fraudulent conduct of Debtors' own former management by which Onset itself was so badly harmed.

---

[23]    *See also Del Castillo v. PMI Holdings N. Am. Inc*, No. 4:14-CV-03435, 2016 WL 3745953, at *13 (S.D. Tex. July 13, 2016) ("[L]umping together multiple defendants without identifying who is responsible for which acts does not satisfy the requirements of Rules 8(a)(2) and 12(b)(6)."); *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, at *4 (W.D. Tex. Nov. 17, 2021) ("A pleading must provide specific factual allegations of violations against specific defendants to suffice."); *Nestor v. Poore*, No. 2022-0066-SEM, 2024 WL 326666, at *1 (Del. Ch. Jan. 29, 2024), *report and recommendation adopted*, 2024 WL 690005 (Del. Ch. 2024) (dismissing all of claims for impermissible group pleading for failing to provide defendants notice of which particular claims were pled against them); *State v. Watson Pharms. Inc.*, 440 P.3d 727, 732 (Utah Ct. App. 2019) (holding that "it is not enough for the State to simply claim that the . . . [d]efendants were aware of the allegations against each entity specifically," but "[r]ather, the district court was tasked with discerning whether the State had particularized its claims with respect to each defendant").

13

FBG_CH1_00090157

**DEBTORS' EXHIBIT NO. 174**
**Page 31 of 99**
**JOINT EXHIBIT NO. 50**
**Page 31 of 99**

26.     "Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." *Burtch*, 2023 WL 6140247, at *3 (citation and internal quotation marks omitted).  Accordingly, for each Onset Claim, the Debtors must identify Onset's specific alleged actions and liability. *See e.g., id.* (finding that the complaint failed to sufficiently identify breach of fiduciary duty allegations against separate defendants); *Shuler Drilling Co., Inc. v. Disiere Partners LLC*, No. 3:22-CV-2062-X, 2023 WL 4497264, at *1 (N.D. Tex. July 12, 2023) (dismissing fraudulent transfer claims because "general allegations which lump all defendants together cannot meet the requirements of Rule 9(b)" (internal citations and quotations omitted)); *Marina Grp. LLC v. Shirley May Int'l US Inc.*, No. 2:21-cv-8733 (BRM) (MAH), 2022 WL 17622679, at *9 (D.N.J. Dec. 13, 2022) (dismissing breach of contract claims); *Brewer Body Shop, LLC v. State Farm Mut. Auto. Ins. Co.*, 101 F. Supp. 3d 1256, 1266 (M.D. Fla. 2015) (dismissing tortious interference claims); *In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 462 (Bankr. D. Del. 2018) (dismissing preferential transfer claims).  Yet the Debtors do not.

27.     Rules 8 and 9 foreclose the Debtors' baseless attempts to impute the conduct of Ed to Onset throughout the Complaint, most noticeably through the Debtors' pervasive failure to differentiate between Onset and Ed.  That failure to differentiate is reflected in allegations concerning fraudulent conduct,[24] transfers,[25] intent,[26] and knowledge.[27]  For example, the Debtors allege that "in furtherance of the scheme with Onset, Edward James established an intentionally deceptive flows of funds to obscure from auditors and the FBG Debtors' creditors what were in

---

[24]   *See e.g.*, Compl. ¶¶ 1, 70, 74, 79, 81, 93, 96, 100, 114, 118–22, 124, 128–29, 132, 134, 152, 181, 230, 285, 307.

[25]   *See e.g., id.* ¶¶ 70, 76, 80, 129, 152.

[26]   *See, e.g., id.* ¶¶ 70, 74, 78, 93, 96, 100, 120–22, 124, 128–29, 131, 134, 152, 181, 218, 229.

[27]   *See, e.g., id.* ¶¶ 131–32, 147, 204, 218, 229–30.

14

FBG_CH1_00090158

**DEBTORS' EXHIBIT NO. 174**
**Page 32 of 99**
**JOINT EXHIBIT NO. 50**
**Page 32 of 99**

reality the FBG Debtors' loan payments to Onset."[28]  Likewise, the Debtors allege that "Edward James, in furtherance of its scheme with Onset, intentionally caused the Plaintiffs to incur excessive fees and interest costs on numerous occasions so that the profits could be reaped by Onset and Edward James."[29]  Beyond resulting in pleading failures under Rules 8 and 9(b), these allegations are nonsensical:  Onset is indisputably distinct and separate from Ed (who is neither a principal nor insider of Onset).  Onset has only ever been a counterparty of Ed, in either his capacity as an agent of the Debtors or his capacity as one of Onset's many arms' length funding partners.[30]  Furthermore, the Debtors also impermissibly lump transfers to Ed with transfers to Onset,[31] improperly combining the value of distinct transfers.[32]  Not only is it unclear to which transfers the Debtors are actually referring, but these allegations also entirely lack sufficiently specific facts to give Onset proper notice.

28.     Further (and fatally) compounding these shortcomings—and despite having access to their own books, records, and documents—the Debtors also engage in group pleading on the other side of the "v":  they consistently conflate alleged harms attributable to the (undefined) FBG Debtors with the Carnaby Debtors.[33]  The FBG Debtors (which, though undefined, do not appear to encompass the Carnaby Debtors) and Carnaby Debtors are distinct entities that had different relationships (if indeed they had a relationship at all) with Onset.[34]  As a result, the Debtors have failed to put Onset on notice of specific allegations against it by specific Plaintiffs.  *See Burtch*

---

[28]  *Id.* ¶ 93.

[29]  *Id.* ¶ 128.

[30]  *See e.g., id.* ¶¶ 1, 70, 74, 76, 78, 80–88, 93–98, 100, 103–04, 116, 118–29, 131–32, 138, 146, 148, 150, 152, 175–76, 181, 199, 204–06, 212, 217–18, 223, 229–30, 234, 268, 285–91, 298, 301, 307.

[31]  *See e.g., id.* ¶¶ 1, 70, 76, 80, 96, 100, 114, 118–21, 126–27, 129.

[32]  *See id.* ¶¶ 1, 70, 76, 80, 118–19, 126, 128–29.

[33]  *See e.g. , id.* ¶¶ 89–91, 94, 98, 237.

[34]  *See e.g., id.* ¶¶ 92, 101–04, 111, 113–14, 142.

FBG_CH1_00090159

DEBTORS' EXHIBIT NO. 174
Page 33 of 99
JOINT EXHIBIT NO. 50
Page 33 of 99

2023 WL 6140247, at *3 (dismissing complaint for lack of specificity because it "collapse[d] the Debtors into the term the 'Company' or the 'Debtors' and fail[ed] to identify which Debtor may have been involved in any particular action or inaction").

29.    Under any pleading standard, the Debtors cannot leave it to the Court to piece together what alleged conduct can actually be attributed to Onset, and what Plaintiffs Onset is alleged to have harmed.  Puzzling through poorly pled allegations is not the Court's province; this burden resides squarely with the plaintiff.  Because the Debtors have failed to meet their burden, the Onset Claims must fail.

## II.    The Onset Claims are barred as a matter of law.

### A.    The Onset Claims Are Barred by an Explicit, Bargained-For Release.

30.    Even were the Onset Claims pled with sufficient particularity to survive a motion for judgment on the pleadings (they are not), the Onset Claims fail at the threshold: in several forbearance agreements, the Debtors *released* these claims.[35]

31.    In 2025, certain Debtor entities[36] granted Onset a sweeping release of "***any and all claims of any kind***" in exchange for Onset's agreement to forbear from declaring an event of

---

[35]   Onset and certain Debtors entered into a first forbearance agreement, effective as of May 1, 2025, a second forbearance agreement, effective as of June 1, 2025, the third forbearance agreement, effective June 30, 2025 (this third agreement, the "Third Forbearance Agreement" and, together with the two other agreements, the "Forbearance Agreements").  *See* Answer ¶¶ 112, 123–25 (attaching the three Forbearance Agreements as Exhibits 50, 51, and 52 to the Answer, respectively).

The Debtors rely on the Forbearance Agreements in their Complaint, alleging that, "As part of Onset's and Edward James' scheme, they caused three Forbearance Agreements to be executed shortly before the Plaintiffs filed for bankruptcy." Compl. ¶ 123; *see also id.* ¶¶ 95, 112, 124, 125, 132.  This Court may therefore consider the Forbearance Agreements in connection with Onset's motion under Rule 12(c).  *See Collins*, 224 F.3d at 498–99 (In deciding a motion to dismiss under Rule 12(b)(6), court may consider materials "referred to in the plaintiff's complaint and . . . central to her claim." (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (quotation marks omitted)); *see also Meyers v. Textron, Inc.*, 540 F. App'x 408, 409–10 (5th Cir. 2013) (collecting cases).  Accordingly, Onset respectfully requests that the Court consider Exhibits 50, 51, and 52 attached to the Answer (the Forbearance Agreements) pursuant to Rule 12(c).

[36]   These entities included Carnaby Inventory IV, LLC and Carnaby FA, LLC (together defined as "Lessee"); the Guarantors identified in the guaranty agreements attached to each Forbearance Agreement; and, in the second and third Forbearance Agreements, First Brands Group, LLC and its affiliates (defined as "FBG").  *See, e.g.,*

16

FBG_CH1_00090160

**DEBTORS' EXHIBIT NO. 174**
**Page 34 of 99**
**JOINT EXHIBIT NO. 50**
**Page 34 of 99**

default and exercising its remedies[37]—which Onset was unquestionably entitled to do.[38]  This comprehensive and express release of all claims against Onset arising from the direct lease transactions (the "Direct Leases"), the sale-leaseback transactions (the "Sale-Leaseback Transactions"), the guarantees (the "Guarantees"), and the Forbearance Agreements (together, the "Onset Transactions") is stated in unambiguous terms.  For example, Section 11 of the Third Forbearance Agreement states:

> ***FBG, Lessee, and Guarantors . . . hereby release, waive, and forever discharge [Onset Financial, Inc.],*** and all of [Onset Financial, Inc.'s] past and present affiliates, shareholders, officers, directors, employees, attorneys, agents, predecessors, successors, assigns, and Funding Sources, ***from any and all claims of any kind***, lawsuits, actions, claims for relief, demands, debts, covenants, contracts, obligations, liabilities, damages, setoffs, counterclaims, breaches of contract, or of any relationship, acts, omissions, claims of recoupment, defenses to payment or performance, costs, and expenses of whatever type, kind, description, character or nature, ***whether know or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated***, each as though fully set forth herein at length (each, a "Released Claim" and collectively, the "Released Claims"), that any FBG Releasing Party now has or which may subsequently accrue based on actions that were taken prior to the date of this Agreement, including without limitation, those Released Claims which are in any way related to or connected with the Lease, the Guarantees, or this Agreement, or the dealings of the parties hereto or any of them with respect to the Lease, the Guarantees, or this Agreement, or the transactions related thereto, in each case whether now existing or hereafter arising, and whether sounding in contract, tort (whether intentional or negligent) or otherwise.

(hereinafter, the "Release").[39]

32.    The Release outright bars the Onset Claims.  The Debtor-releasing entities—which include the Carnaby Debtors, Carnaby Capital, LLC ("Carnaby Capital"), Carnaby Capital

---

Third Forbearance Agreement, at 1–2; *see also id.* Ex. B.  These entities are collectively defined in Section 11(a) of the Third Forbearance Agreement as the "FBG Releasing Parties."

[37]   *Id.* § 11(a) (emphasis added).

[38]   *See* Compl. ¶ 123 ("At the time of the Forbearance Agreements, the Plaintiffs no longer had the cash to pay Onset . . . $200 million ostensibly due each month."); *see generally id.* ¶¶ 123–25.

[39]   Third Forbearance Agreement § 11(a) (emphasis added).

FBG_CH1_00090161

Holdings, LLC ("Carnaby Capital Holdings"), Carnaby Inventory Holdings IV, LLC ("Carnaby Inventory Holdings IV"), Carnaby FA Holdings ("Carnaby FA Holdings"), Viceroy Private Capital ("Viceroy"), First Brands Group Holdings, LLC and its affiliates ("FBG Holdings"), Eagle Casting, LLC ("Eagle Casting"), and Eagle Casting Holdings, LLC ("Eagle Casting Holdings" (together, the "Guarantors"))[40]—agreed that the Release "shall constitute an absolute bar to any Released Claim of any kind, whether any such Released Claim is based on contract, tort, warranty, mistake or any other theory, whether legal, statutory, or equitable."[41] And those Debtors expressly "agree[d] to assume the risk of any and all unknown, unanticipated, or misunderstood defenses and Released Claims" and "waive[d] and release[d] all rights and benefits" they might otherwise have had under applicable law.[42] The Release thus bars *every* Onset Claim.

33. This unremarkable bar is effective and enforceable here. Bankruptcy courts routinely dismiss claims barred by releases agreed to among parties in prepetition agreements. *See, e.g., JLL Consultants, Inc. v. Hormel Foods Corp. (In re AgFeed USA, LLC)*, No. 13-11761 (BLS), 2015 WL 9133627, at *5 (Bankr. D. Del. 2015) (dismissing fraudulent transfer and unjust enrichment, among others, on basis of prepetition settlement granting release of all "disputes between the parties accruing prior to" the settlement agreement); *Ruiz v. Kennedy (In re Kennedy)*, 566 B.R. 690, 731–33 (Bankr. D.N.J. 2017) (enforcing broad prepetition "Irrevocable General Release" and dismissing creditor's § 523(a) claims to the extent based on pre-release conduct).[43]

---

[40]   *See, e.g., id.* Ex. B.

[41]   *E.g., id.* § 11(d)(ii).

[42]   *Id.* § 11(b).

[43]   In the Fifth Circuit, "a general release of 'any and all' claims applies to all possible causes of action, unless a statute specifically and expressly requires a release to mention the statute for the release to bar a cause of action under the statute." *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372–73 (5th Cir. 2002) (extending release language to ERISA claims); *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 936 (5th Cir. 1994) (extending release language to WARN claims that were not specifically mentioned in the releases). The Bankruptcy Code contains no such requirements, and claims arising under the Bankruptcy Code have therefore been released.

FBG_CH1_00090162

DEBTORS' EXHIBIT NO. 174
Page 36 of 99
JOINT EXHIBIT NO. 50
Page 36 of 99

And despite Debtors' conclusory assertions to the contrary, it is obvious that the Release was given for valuable consideration.[44] *See, e.g., Merv Props., L.L.C. v. Forcht Bancorp, Inc. (In re Merv Props., L.L.C.)*, 539 B.R. 516, 527 (B.A.P. 6th Cir. 2015) (finding forbearance and loan restructuring valid consideration for broad release in forbearance agreement). Accordingly, the Release requires that Onset be granted judgment on all of the Onset Claims.

### B.    The doctrine of *in pari delicto* bars certain Onset Claims.

34.    The Debtors' claims for tortious interference with contract (Counts VII, IX), aiding and abetting breach of fiduciary duty (Count XI), declaratory judgment (Counts XIV–XVII), and unjust enrichment (Count XXI) each independently fail because the Debtors' allegations in the Complaint, accepted as true for purposes of this Rule 12 Motion, mean that the Debtors themselves bear responsibility for the allegedly unlawful conduct they now challenge.

35.    The doctrine of *in pari delicto* bars a plaintiff from recovering damages when it "participat[ed] in the same wrongdoing as the defendant" on the principle that "[n]o Court will lend its aid to a man who founds his cause of action upon an immoral or illegal act." *See In re Dublin Sec., Inc.*, 133 F.3d 377, 380 (6th Cir. 1997) (internal citations omitted); *see also Anderson*

---

Even assuming that certain Bankruptcy Code claims could survive an agreed prepetition release (they cannot), the Debtors' state law claims are independently barred. Under Utah law (the governing law of the Forbearance Agreements), clear and unambiguous releases are enforced as written. *Juliano v. Engel*, Case No. 2:23-cv-351-TS-CMR, 2025 WL 315880, at *4–5 (D. Utah Jan. 28, 2025); *Dean v. Pivotal Grp.*, No. 2:04-cv-732 TS, 2006 WL 1699698, at *1 (D. Utah June 15, 2006) (holding that under the "four [corners]" rule, a release is enforceable if it is "sufficiently clear and unambiguous," explaining that each party has a burden to understand a contract before signing it).

[44]    That the Debtors allege they held claims against Onset, or that the period of agreed forbearance was relatively limited, does not render the Release unsupported by consideration. Under Utah law, which governed the Forbearance Agreements, forbearance from exercising contractual remedies (even for a brief time) constitutes valid consideration that may support a release. *See Mortensen v. Mortensen*, 564 P.3d 508, 514 (Utah Ct. App. 2025) ("Consideration may be found when there is any act or forbearance bargained for and given in exchange for the promise of another[,]" and "[a]ny detriment can support a promise, no matter how economically inadequate." (citations and internal quotation marks omitted)); *see also id.* ("Ordinarily, courts will not inquire into the adequacy of consideration unless it is so insufficient or illusory as to render enforcement of the contract unconscionable." (citation and internal quotations omitted)).

19

FBG_CH1_00090163

**DEBTORS' EXHIBIT NO. 174**
**Page 37 of 99**
**JOINT EXHIBIT NO. 50**
**Page 37 of 99**

*v. Meyers (In re Infinity Bus. Grp., Inc.)*, 612 B.R. 76, 133–35 (Bankr. D.S.C. 2019) (imputing knowledge of alleged wrongdoing of debtor's management to debtor when assessing *in pari delicto* defense); *In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 604 F. Supp. 2d 1128, 1141 (S.D. Ohio 2009) (acknowledging that the doctrine of *in pari delicto* bars a plaintiff from "recovering damages resulting from [its] own wrongdoing" (citing *Pinter v. Dahl*, 486 U.S. 622, 632 (1988))). As courts have emphasized, *in pari delicto* "prevent[s] one wrongdoer from recovering from the other because each should bear the consequences of his own actions without recourse against the other." *State Bank & Tr. Co. v. Spaeth (In re Motorwerks, Inc.)*, 371 B.R. 281, 291 n.6 (Bankr. S.D. Ohio 2007).

36.     Dismissal on the pleadings is appropriate where, as here, the *in pari delicto* defense is evident on the face of the Complaint. *See Dublin Sec.*, 133 F.3d at 380–81; *In re Am. Int'l Grp., Inc., Consol. Derivative Litig.*, 976 A.2d 872, 895 (Del. Ch. 2009) (granting motion to dismiss on grounds of *in pari delicto*), *aff'd sub nom.*, *Teachers' Ret. Sys. of La. v. Gen. Re Corp.*, 11 A.3d 228 (Del. 2010). The Debtors' own allegations make unmistakably clear that the Debtors and their employees, principally Ed in his senior officer capacity as Executive Vice President,[45] engaged in the allegedly unlawful conduct at the heart of the Debtors' claims. And while the Debtors have utterly failed to allege with particularity that Onset engaged in any of the fraudulent conduct the Debtors jointly ascribe to Onset and Ed, the coterminous nature of the allegations dooms the Debtors' claims. As alleged, "the Debtors' former management engaged in an intentionally fraudulent scheme to generate sufficient liquidity to mask the FBG Debtors' financial condition

---

[45]   *See* Compl. ¶ 28 ("Defendant Edward James is a former executive vice president, board member, and officer of Debtors[.]"). *Cygnus Opportunity Fund, LLC v. Washington Prime Grp., LLC*, 302 A.3d 430, 448 (Del. Ch. 2023) ("As an agent, an officer has an obligation to comply with directives from its principal or from more senior agents to whom the officers reports.").

20

FBG_CH1_00090164

**DEBTORS' EXHIBIT NO. 174**
**Page 38 of 99**
**JOINT EXHIBIT NO. 50**
**Page 38 of 99**

and inability to satisfy existing obligations."[46]  It was the "FBG Debtors' former management," not Onset, "that oversaw an effort in which customer invoices were secretly factored multiple times contrary to express representations, were inflated or were simply fabricated out of whole cloth."[47]  It was Ed and other First Brands officers and employees, ***not Onset***, who created the Carnaby Debtors as off-balance sheet entities.[48]  And it was ***Ed*** who allegedly prevented Onset from communicating with the Debtors' other employees[49] (although this is belied by the many Onset Transaction documents executed by multiple other senior officers in addition to Ed).

37.     The Debtors' own pleadings in their lawsuit against Patrick James confirm the centrality of the Debtors' participation in the alleged misconduct.  As alleged in the Patrick Amended Complaint, the Debtors falsified records,[50] factored certain receivables multiple times,[51] and participated in the allegedly fraudulent conduct forming the basis of the claims asserted there.[52]  Those admissions foreclose any attempt to recast the Debtors as victims of third-party conduct.

---

[46]  *See* Compl. ¶ 70; *see also* James Brothers Indictment ¶ 21 ("As part of their schemes to deceive counterparties and lenders, the defendants deliberately concealed massive amounts of debt incurred through inventory-financing arrangements.").

[47]  *See* Compl. ¶ 72; *see also* James Brothers Indictment ¶ 23 ("The financing arrangements with the Off-Sheet Lenders were directed by PATRICK JAMES, the defendant, negotiated by EDWARD JAMES, the defendant, and implemented through a series of deliberate and coordinated acts of fraud designed to conceal debt, mislead lenders, and obscure the true source and use of funds.").

[48]  *See* Compl. ¶ 118 ("In fact, the Carnaby Entities were considered to be nothing more than 'vendors' set up by Edward James to pass the FBG Debtors' payments to Onset without triggering FBG auditor or creditor scrutiny."); *see also* James Brothers Indictment ¶ 22 ("The off-balance-sheet debt principally related to inventory-financing arrangements executed by entities wholly owned and controlled by PATRICK JAMES, the defendant (the 'James Entities').").

[49]  *See, e.g.*, Compl. ¶ 97 ("Edward James directly and strictly policed the communications of the Debtors' other officers and employees' communications with Onset."), ¶ 98 ("Edward James also shut down any attempts by others to negotiate with Onset, including specifically for better terms than what Onset was offering.").

[50]  *See* Patrick Amended Complaint ¶¶ 50–52.

[51]  *See id.* ¶¶ 49–50.

[52]  *See, e.g., id.* ¶ 71 (alleging First Brands transferred money to Patrick James or his affiliated entities); ¶ 50 (alleging First Brands sold erroneous or fabricated invoices to third-party factors).

FBG_CH1_00090165

**DEBTORS' EXHIBIT NO. 174**
**Page 39 of 99**
**JOINT EXHIBIT NO. 50**
**Page 39 of 99**

38.    And the allegations of rampant criminal misconduct by the Debtors' former management are also alleged in the James Brothers Indictment.  That charging instrument describes a sweeping fraud scheme orchestrated by the James brothers at the expense of their creditors, including Onset.  Consistent with the Patrick James Complaint, the James Brothers Indictment alleges that responsibility for the Debtors' financial ruin falls where it belongs: with the Debtors' former senior management.  If ever a case warranted application of the doctrine of *in pari delicto*, it is this one.

39.    Judgment on the pleadings should be granted here.  Because the Debtors' own allegations establish their unambiguous participation in the alleged wrongdoing—and because no relevant exception applies[53]—the doctrine of *in pari delicto* compels judgment on the Debtors' claims for tortious interference, aiding and abetting breach of fiduciary duty, declaratory judgment, and unjust enrichment at the pleadings stage.  *See, e.g. In re Am. Int'l Grp.*, 976 A.2d at 883–84 (granting motion to dismiss aiding and abetting breach of fiduciary duty claims on basis of *in pari delicto*); *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 308–09 (Del. Ch. 2015) (dismissing breach of contract claims on basis of *in pari delicto*); *see also Carickhoff v. Goodwin (In re Decade, S.A.C., LLC)*, 635 B.R. 735, 772–73 (Bankr. D. Del. 2021) (declaratory judgment claims dismissed after trial on basis of *in pari delicto* (applying California law)); *Orthodontic Ctrs.*

---

[53]   Two of the recognized exceptions to the *in pari delicto* defense are not applicable here. *First*, for the reasons discussed further below, the corporate insider exception does not apply because the Debtors do not allege any facts (nor could they) showing Onset had such domination or control over the Debtors to be considered insiders. *See In re Oakwood Homes Corp.*, 389 B.R. 357, 371 (D. Del. 2008) (finding lender to debtor in "precarious financial position" was not an insider).  At all times, Onset was only ever an arms'-length counterparty to certain Debtors. *Second*, the adverse interest exception does not apply because the Complaint does not indicate Ed (or Patrick) "totally abandoned [the Debtors'] interests" and acted "solely for their own personal gain." *Infinity Bus. Grp.*, 612 B.R. at 146 & 146 n.64. Here, even if the James brothers personally benefited from the alleged scheme, the Debtors benefited as well—receiving, by their own allegations, approximately $1.7 billion in financing from Onset. *See* Compl. ¶ 119.  Where, as here, the corporation derives a benefit from the agent's misconduct, the adverse interest exception is inapplicable. *See In re Nat'l Century Fin. Enter., Inc.*, 783 F. Supp. 2d 1003, 1015–22 (S.D. Ohio 2011) (finding adverse interest exception inapplicable under the sole actor rule, when "the principal and agent are one and the same").

22

FBG_CH1_00090166

**DEBTORS' EXHIBIT NO. 174**
**Page 40 of 99**
**JOINT EXHIBIT NO. 50**
**Page 40 of 99**

*of Tex., Inc. v. Wetzel*, 410 F. App'x 795, 798–99 (5th Cir. 2001) (*per curiam*) (affirming summary judgment barring unjust enrichment claims on basis of *in pari delicto*).[54]

### C.     The applicable lookback periods or statutes of limitations bar numerous Onset Claims.

i.     <u>Many of the alleged fraudulent and preferential transfers fall outside the applicable look-back periods.</u>

40.     ***All*** of the 287 allegedly fraudulent transfers referenced in Exhibit B of the Complaint is subject to either a four-year look-back period, *see* Ohio Rev. Code Ann. § 1336.04(A) *and* 6 Del. Code § 1309(1)-(2), or a two-year lookback period, *see* 11 U.S.C. § 548(a)(1).  The Debtors bring Counts I and IV, claims for actual fraudulent transfer, and Counts II and V, claims for constructive fraudulent transfer, under Ohio law, Delaware law, and title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The limitations period for fraudulent transfer causes of action runs from the time of the transfer.  *See Burkhart v. Genworth Fin., Inc.*, 250 A.3d 842, 859 (Del. Ch. 2020) (finding the cause of action accrued at the time of the transfer); *In re Supplement Spot, LLC*, 409 B.R. 187, 199 (Bankr. S.D. Tex. 2009) (same); *Forsell v. Squirrels, LLC*, No. 5:22-CV-01454-CEH, 2024 WL 4825973, at *4–5 (N.D. Ohio Nov. 19, 2024) (same).  Accordingly, all alleged fraudulent transfers must fall within the lookback periods:  after September 28, 2023, under federal law, and after September 28, 2021, under state law.

41.     Notwithstanding clear statutory limitations, the Debtors improperly seek to assert claims relating to purported fraudulent transfers dating back to at least April 2018 (over three years outside even the longest look back period).[55]  Claims outside the mandatory lookback periods must be dismissed.  *See Burkhart*, 250 A.3d at 859 (dismissing Delaware fraudulent transfer claims

---

[54]   A plaintiff must allege an underlying breach of contract claim to sustain a claim for tortious interference.  *See infra* Section II.E.

[55]   *See* Compl. ¶ 77 (alleging lease arrangements between Onset and First Brands dating back to 2018 resulting in transfers to Onset); *id.* Ex. B (listing transfers dating back to April 2018).

FBG_CH1_00090167

when plaintiffs failed to file suit within four years after the transfer); *Whittaker v. Groves Venture, LLC (In re Bolon)*, 538 B.R. 391, 403 (Bankr. S.D. Ohio 2015) (dismissing fraudulent transfer claim brought under 11 U.S.C. § 548(a) because the transfer occurred outside the lookback period); *Forsell*, 2024 WL 4825973, at *4–5 (dismissing Ohio UFTA fraudulent transfer claims brought outside four-year lookback period).

42.   Debtors also bring Count XIX, a claim for preferential transfer involving alleged cash transfers barred under the Bankruptcy Code.  That claim is subject to a ninety-day lookback period because, as further discussed herein,[56] the Debtors fail to plausibly allege that Onset is an insider of the Debtors.  *See* 11 U.S.C. § 547(b)(4)(A).  Accordingly, the lookback period extends only to June 30, 2025.  The Debtors, however, improperly assert purported preferential transfers made up to one year prior to the Petition Date.[57]  Claims outside the mandatory lookback period must be dismissed.

> ii.   <u>Several of the Debtors' claims are barred by the applicable statute of limitations.</u>

43.   A number of the other Onset Claims must be dismissed to the extent that they are time-barred by the statute of limitations.  Generally, Texas law treats statutes of limitation as "procedural in nature," and therefore applies its own statute of limitations period regardless of any choice-of-law analysis.  *In re BP p.l.c. Sec. Litig.*, 51 F. Supp. 3d 693, 697 (S.D. Tex. 2014); *VTX Commc'ns, LLC v. AT&T Inc.*, No. 7:19-cv-00269, 2020 WL 4465968, at *11 (S.D. Tex. Aug. 4, 2020) ("Irrespective of the Court's choice of law analysis . . . the Court is bound to apply the statute of limitations in the State in which it sits, here Texas.").  As a result, several Onset Claims are subject to the statute of limitations under Texas law.

---

[56]   *See infra* section III.C.iii.

[57]   *See, e.g.*, Compl. ¶ 284 (referencing alleged cash transfers made "within one year of the Petition Date).

FBG_CH1_00090168

- A claim for aiding and abetting breach of fiduciary duty is subject to a four-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(5).

- Claims for tortious interference of contract are subject to a two-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003; *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 591 (Tex. 2017).

- Unjust enrichment claims face a statute of limitations of two years. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007); *Brooks v. Lehman Bros., Inc.*, No. 5:05-cv-160, 2006 WL 8440764, at *2 (E.D. Tex. Sept. 20, 2006).

44.     Here, the aiding and abetting breach of fiduciary duty is subject to a statute of limitations that requires the conduct at issue to have arisen after September 28, 2021, and the tortious interference and unjust enrichment claims are subject to a statute of limitations that requires the conduct at issue to have arisen after September 28, 2023.  At a minimum, to the extent that Debtors' claims are predicated on conduct occurring outside the applicable statute of limitations—though this is unclear owing to the Debtors' pleading deficiencies (an independent basis for dismissal under Rule 8)—those claims must be dismissed.

**III.     The Debtors fail to adequately plead the elements of the Onset Claims.**

**A.     The Debtors fail to adequately plead the constructive and actual fraudulent transfer claims related to certain cash transfers (Counts I and II).**

45.     The Debtors' constructive and actual fraudulent transfer claims fail under both the Bankruptcy Code and Ohio and Delaware law for several reasons.[58]  *First*, the Debtors fail to adequately plead that there was a lack of reasonably equivalent value for each transaction and that

---

[58]     *See* 11 U.S.C. § 548(a)(1)(B); Ohio Rev. Code § 1336.04(A)(2); 6 Del. Code § 1304(a)(2) (constructive fraudulent transfer statutes); *and* 11 U.S.C. §§ 548(a)(1)(A), 550(a); Ohio Rev. Code Ann. § 1336.04(A)(1); and 6 Del. Code § 1304(a)(1) (actual fraudulent transfer statutes).

There is no material difference between Delaware and Ohio fraudulent transfer law because both states have adopted the Uniform Fraudulent Transfer Act (the "UFTA"). *See In re MDIP Inc.*, 332 B.R. 129, 132 (Bankr. D. Del. 2005) (declining to conduct a choice of law analysis for fraudulent transfer claims because Ohio and Delaware law are "based on the [UFTA], [so] the outcome in this case would be the same under any of [them]").

FBG_CH1_00090169

the transferor was insolvent at time of each transfer. *Second*, the actual fraudulent transfer claim fails for additional reasons, including because the Debtors do not adequately plead badges of fraud.

          i.          <u>The Debtors fail to properly allege lack of reasonably equivalent value.</u>

46.      To state a claim for constructive fraudulent transfer, a plaintiff must plausibly allege facts showing the transferor received less than reasonably equivalent value ***for each transfer at issue***. *See In re All Tex. Elec. Contractors, Inc. v. NSPS Metals LLC*, No. 20-34656, 2022 WL 162786, at *7 (Bankr. S.D. Tex. Jan. 18, 2022) (finding it is a plaintiff's "burden to break down each transfer and show that it did not receive reasonably equivalent value"); *Crescent Res. Litig. Tr. v. Nexen Pruet, LLC (In re Crescent Res., LLC)*, No. 09-11597-CAG, 2012 WL 195528, at *8 (Bankr. W.D. Tex. Jan. 23, 2012) (dismissing constructive fraudulent transfer claim devoid of factual support that transferor received less than reasonably equivalent value). Failure to adequately plead such facts also weighs heavily against a claim for actual fraudulent transfer. *See, e.g.*, *In re 1701 Com., LLC*, 511 B.R. 812, 841 (Bankr. N.D. Tex. 2014) (three badges of fraud insufficient to state claim for actual fraudulent transfer, especially because there was reasonably equivalent value for the transfer).

47.      The Debtors' constructive fraudulent transfer claims fail because the Debtors do not plead facts demonstrating that the relevant transferors (which are unidentified) received less than reasonably equivalent value for each individual transfer. For example, the Debtors do not allege which assets listed in Exhibit A to the Complaint relate to the purportedly fraudulent transfers listed in Exhibit B to the Complaint, rendering any claim for lack of reasonably equivalent value as to any particular transfer pure conjecture. *In re Crescent Res., LLC*, 2012 WL 195528, at *8 (dismissing constructive fraudulent transfer claim wherein complaint stated transfer's date,

26

FBG_CH1_00090170

payment amount, and check or wire number, but failed to adequately plead facts showing "less than reasonably equivalent value" was received for the transfers).[59]

48.    Instead, the Debtors offer conclusory assertions that the transfers and obligations to Onset were incurred for less than reasonably equivalent value on account of alleged rates of return. The Debtors do not distinguish between "internal rates of return" and "effective interest rates," and use vague, qualifying language to describe the Carnaby Debtors' payment obligations under dozens of different agreements.[60] Allegations of this nature are meaningless because the Debtors do not tie specific rates of return or interest rates to specific leases, assets, or transactions.[61] As a result, Onset—and the Court—are left to guess why each transfer was for less than reasonably equivalent value in connection with the specific leased equipment.

49.    As to the obligations incurred, by conflating the so-called "FBG Debtors" with the "Carnaby Debtors," the Debtors fail to identify which Debtor entities actually incurred the purportedly avoidable obligations.[62] As a result, again, neither Onset nor the Court can know which plaintiffs seek to avoid what specific obligations.

  ii. <u>The Debtors fail to adequately plead insolvency.</u>

50.    For a constructive fraudulent transfer claim to survive a motion for judgment on the pleadings, a plaintiff must also plausibly allege facts demonstrating that the relevant transferor

---

[59] *Cf.* Compl., Ex. A (omitting any valuations of the listed property).

[60] Specifically, the Debtors allege that reasonably equivalent value was not exchanged because the "active Direct Leases have internal rates of return ranging from approximately 16% to 59%," and "*most* of the effective interest rates set [for the Sale-Leaseback Transactions] were in the high-double and triple digits (e.g., as high as nearly 200%)." *See id.* ¶¶ 77, 119 (emphasis added).

[61] The Debtors suggest that they cannot actually value the assets as they are not identifiable in the governing documents, but then rely on lease schedules that specifically identify such assets. *See id.* Ex. A; *see also* Lease Schedule No. 027 to Master Lease Agreement No. OFI1445416 between Onset Financial, Inc. and Carnaby Inventory IV, LLC, dated April 7, 2025, attached to the Answer as Exhibit 25 ("<u>Lease Schedule No. 027</u>") at 1 (ONSET_00032910, Section 1 (identifying property subject to lease schedule)). The Debtors rely on Lease Schedule No. 027 to assert allegations in the Complaint. *See* Compl., Ex. A at 17.

[62] *See, e.g., id.* ¶¶ 74, 78, 85, 118.

FBG_CH1_00090171

was insolvent *at the time* of each transfer. *See In re All Tex. Elec. Contractors*, 2022 WL 162786, at *8 (finding allegations that debtor "was insolvent on the date that such transfer was made or became insolvent as a result of such transfer" and "intended to incur . . . debts that would be beyond [its] ability to pay as such debts matured" provided "no factual support . . . such as balance sheets or additional financial information").

51.     Yet the Debtors fail to make any factual allegations as to any Debtor's insolvency on the date of any particular transfer.  Instead, the Debtors seek to cast a veil of general insolvency among the related entities, and in so doing again lump the Carnaby Debtors with other Debtor entities.  For example, the Debtors state that "[t]he Debtors were insolvent at the time of, or were rendered insolvent by the Onset Transactions," and that "[t]he Company was rendered insolvent well before the Petition Date."[63]  These vague, conclusory allegations do not demonstrate that the (unidentified) specific transferor of the assets at issue was insolvent at the time of the transfer. *See Infinity Emergency Mgmt. Grp., LLC v. Neighbors Health Sys., Inc. (In re Neighbors Legacy Holdings, Inc.)*, 645 B.R. 864, 895 (Bankr. S.D. Tex. 2022) ("The . . . general allegation that '[t]he Neighbors Debtor Entities were insolvent . . . as the fair market value of their assets exceeded their liabilities' is not a 'specific reference to [each relevant Neighbors Debtor Entity's] financial condition.'" (citations and internal quotations omitted)).

52.     In the Debtors' version of events, from the very first Direct Lease in 2018, "the Debtors were insolvent . . . or were rendered insolvent by the Onset Transactions."[64]  But the Complaint fails to identify *which* of the 112 Debtors were insolvent, allege any basic balance sheet

---

[63]  *Id*. ¶¶ 133–34; *see also id*. ¶ 137 ("On information and belief, after accounting for this excess and obsolete inventory, the Company was undercapitalized and functionally insolvent at the time of—or rendered insolvent by—the Onset Transactions.").

[64]  *Id*. ¶ 89.

28

FBG_CH1_00090172

**DEBTORS' EXHIBIT NO. 174**
**Page 46 of 99**
**JOINT EXHIBIT NO. 50**
**Page 46 of 99**

information suggesting insolvency, or explain how Debtors could have continued in a perpetual state of insolvency for seven years until the Petition Date. Nevertheless, the Complaint alleges that "[t]he Debtors' financial distress, and insolvency, during and as a result of the Onset Transactions were, upon information and belief, known to Onset since they began."[65]

53.     Further, the Debtors offer **no** balance sheet or other financial information indicating that any particular Debtor was insolvent when a subject transfer occurred.[66] *See Innovative Custom Brands, Inc. v. Minor*, No. 15-CV-2955 (AJN), 2016 WL 308805, at *3 (S.D.N.Y. Jan. 25, 2016) (noting that "[a]n adequate pleading of insolvency requires some sort of balance sheet . . . information . . . that the Court can use to infer that the corporation's liabilities exceeded their assets *at the time the transfers took place*"; a plaintiff fails to adequately plead insolvency when it fails to provide such information (internal citation and quotations omitted)); *THQ, Inc. v. Starcom Worldwide, Inc. (In re THQ Inc.)*, No. 16-30782, 2016 WL 1599798, at *4 (Bankr. D. Del. Apr. 18, 2016) (dismissing constructive fraudulent transfer claim for alleging insolvency "without citing any facts which support that legal conclusion"). The Debtors also fail to support their allegation that, at the time of the three Forbearance Agreements discussed above, "the Plaintiffs no longer had the cash to pay Onset (and its partner [Ed]) $200 million ostensibly due each month,"[67] with any financial information from which solvency could be determined. *See Phillips v. Josmic 2 LLC ( In re ONH AFC CS Invs, LLC)*, 671 B.R. 680, 698 (Bankr. D. Del. 2025) (finding "conclusory assertion that the debtors were left with 'unreasonably small capital' after each of the transfers . . . insufficient as a matter of law"). Likewise, the Debtors' allegation that "[a]t all times,

---

[65]  *Id.* ¶ 88.

[66]  *See id.* ¶ 91 ("The Carnaby Entities were not capitalized and instead had no assets whatsoever **when they were formed** in connection with the contemplated Onset transactions." (emphasis added)).

[67]  *See id.* ¶ 123.

FBG_CH1_00090173

**DEBTORS' EXHIBIT NO. 174**
**Page 47 of 99**
**JOINT EXHIBIT NO. 50**
**Page 47 of 99**

the Carnaby Entities had only obligations, not assets, and were mere empty shells,"[68] is conclusory and not sufficiently specific. *See Ent. Mktg. & Mgmt., Ltd. v. Fontenot*, No. H-24-1461, 2024 WL 3243487, at \*12 (S.D. Tex. June 26, 2024) (dismissing fraudulent transfer claims on Rule 12(c) motion for failure to allege facts establishing that the "estate was insolvent at the time of the transfers, [or] that the estate became insolvent as a result of the transfers").

54.    At any rate, the Carnaby Debtors' alleged insolvency is undercut by the Debtors' own admission that Onset provided the Carnaby Debtors with $1.7 ***billion*** in financing between January 2022 and April 2025.[69]  The Carnaby Debtors continued to operate for months—and, for the vast majority of transfers, years—after the allegedly fraudulent transfers.  This weighs heavily against the Carnaby Debtors' supposed insolvency.  *Katchadurian v. NGP Energy Cap. Mgmt., LLC (In re Northstar Offshore Grp., LLC)*, 616 B.R. 695, 738 (Bankr. S.D. Tex. 2020) (finding alleged funding need in 2013 "far too tenuous" to create inference of insolvency in 2012 to support fraudulent transfer claim); *see also Miller v. Kirkland & Ellis LLP (In re IH 1, Inc.)*, No. 09-10982 (LSS), 2016 WL 6394296, at \*31 (Bankr. D. Del. Sept. 28, 2016) (no evidence of insolvency at time of dividend where company "continued to operate after the dividend was paid for a full 22 months, in an acutely distressed economy"); *Matson v. Strickland (In re Strickland)*, 230 B.R. 276, 283 (Bankr. E.D. Va. 1999) (finding allegation of insolvency "nine months after the alleged transfer . . . immaterial" as "significantly distant in time from the date of the alleged transfer").

iii.    The actual fraudulent transfer claim fails for other reasons.

55.    To sufficiently plead a claim for actual fraudulent transfer, a plaintiff must allege facts showing the alleged transferor acted with the "actual intent to hinder, delay, or defraud" a

---

[68]    *Id.* ¶ 113.

[69]    *Id.* ¶ 119; *see* Answer ¶ 119.

FBG_CH1_00090174

DEBTORS' EXHIBIT NO. 174
Page 48 of 99
JOINT EXHIBIT NO. 50
Page 48 of 99

future creditor with sufficient specificity to satisfy Rule 9(b)'s heightened pleading standard. *See Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 196 (Del. Ch. 2014).

56.     The Delaware and Ohio fraudulent transfer statutes list eleven non-exclusive "badges of fraud" that may be considered in determining whether a transfer was made with actual intent to defraud. *See* Ohio Rev. Code § 1336.04(B); 6 Del. Code § 1304(b).[70] The Debtors do not specifically tie *any* badges of fraud to this claim, and their factual allegations do not plausibly support an inference that the unspecified transferors had an "actual intent to hinder, delay, or defraud" any of the Carnaby Debtors' unidentified creditors.

57.     As previously explained,[71] the Debtors do not adequately plead lack of reasonably equivalent value (badge 8) or insolvency (badge 9) as to the challenged transfers, especially in light of the heightened pleading requirement imposed by Rule 9(b). *See Mascaro Aviation, L.L.C. v. Diamond Aircraft Indus., Inc.*, No. 10-60556, 2011 WL 856805, at *10 (S.D. Fla. Mar. 8, 2011) (dismissing plaintiffs' fraud claims under Rule 9(b) for failure "to separate their unique transactions into different claims" and show "individualized facts and proofs"), *report and recommendation adopted*, 2011 WL 1114317 (S.D. Fla. Mar. 25, 2011). Even if these badges were adequately pled, lack of reasonably equivalent value and insolvency alone are insufficient to support a claim for actual fraudulent transfer. *Kirschner v. Fitzsimons (In re Trib. Co. Fraudulent Conv. Litig.)*, No. 11-MD-2296 (RJS), 2017 WL 82391, at *15 (S.D.N.Y. Jan. 6, 2017) (noting

---

[70]   Those badges of fraud are: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. *See* Ohio Rev. Code § 1336.04(B); 6 Del. Code § 1304(b).

[71]   *See supra* Sections III.A.i, III.A.ii.

31

FBG_CH1_00090175

that such a finding "would turn every constructive fraudulent conveyance claim into an actual fraudulent conveyance claim and thereby undermine the distinction between the two claims"); *see also Guffy v. Brown (In re Brown Med. Ctr., Inc.)*, 552 B.R. 165, 170–71 (S.D. Tex. 2016) (dismissing actual fraudulent transfer claim for failure to state allegations beyond insolvency and insufficient consideration); *Alameda Rsch. Ltd. v. Giles (In re FTX Trading Ltd.)*, No. 22-11068 (JTD), 2024 WL 4562675, at *9–10 (Bankr. D. Del. Oct. 23, 2024) (same).

58.     To the extent the Debtors invoke any of the remaining badges of fraud—again, none of which are specifically tied to the fraudulent transfer claims—their allegations are vague, made only "upon information and belief," and fail to carry the Debtors' burden to "allege the existence of facts sufficient to warrant the pleaded conclusion that fraud has occurred." *In re Brown Med. Ctr., Inc.*, 552 B.R. at 168 (badges of fraud must be pleaded with particularity); *see also Van-Am. Ins. Co. v. Schiappa*, 191 F.R.D. 537, 543 (S.D. Ohio 2000) (same). To wit:

- *Badge 1 (insider status).* The Debtors do not specifically allege that Onset was an insider for purposes of their actual fraudulent transfer claim.[72] Regardless, for the reasons explained below,[73] Onset was not an insider.

- *Badge 2 (retention of control over the asset transferred).* No fraudulent intent may be gleaned from the Carnaby Debtors' continued possession of the equipment and inventory because it allowed the Carnaby Debtors to continue operating the business (and Onset's purchase of those assets injected significant liquidity). *See Lowe v. B.R.B. Enters., Ltd. (In re Calvillo)*, 263 B.R. 214, 220 (W.D. Tex. 2000) (finding that sale-leaseback transaction for real property provided debtors with "economic value . . . because it enabled them to retain possession of the premises and to continue operating [their business]").[74]

- *Badge 3 (the transfer or obligation was concealed).* The Debtors allege that "Edward James and Onset agreed to secretly impose on the FBG Debtors billions

---

[72]  *See* Compl. ¶¶ 149–60.

[73]  *See infra* Section III.C.iii.b.

[74]  To the extent there are disputes between the FBG Debtors and the "Carnaby Entities" regarding who controlled the assets, that is an intra-Debtor dispute and does not support the presence of this badge of fraud with respect to Onset.

FBG_CH1_00090176

of dollars . . . of short-term debt obligations."[75] But the Debtors do not explain how Onset allegedly imposed such obligations on the so-called "FBG Debtors," considering that only Trico Products Corporation and the Carnaby Debtors were transferors under the Direct Leases and the Sale-Leaseback Transactions.[76] Accordingly, these allegations fall short of the heightened pleading requirements and, frankly, are puzzling. Further, allegations that "Onset did not notify the lenders or seek to participate in intercreditor agreements, and . . . intentionally filed UCC-1 financing statements against the Carnaby Entities but not Onset's true borrower"[77] say nothing of the **Carnaby Debtors' intent** and are, accordingly, inapposite. *Off. Comm. of Unsecured Creditors of Midway Games Inc. v. Nat'l Amusements, Inc. (In re Midway Games Inc.)*, 428 B.R. 303, 325 (Bankr. D. Del. 2010) ("A plaintiff charging a violation under Section 548(a)(1) must prove that the *transferor* . . . made the transfer with the 'actual intent to hinder, delay or defraud creditors.'" (quoting *In re Pinto Trucking Serv., Inc.*, 93 B.R. 379, 386 (Bankr. E.D. Pa. 1988)) (emphasis added)).

- **Badge 7 (the debtor removed or concealed assets).** The Debtors allege that the FBG Debtors maintained possession of the inventory and equipment subject to the Sale-Leaseback Transactions.[78] While title to the inventory and equipment was sold to Onset under those agreements, the FBG Debtors retained possession—as under any sale-leaseback transaction.[79] Thus, the assets were not "removed or concealed," as is clear from the face of the Complaint.

- **Badge 10 (the transfer occurred shortly before or shortly after a substantial debt was incurred).** The Debtors allege that "many of the transfers to Onset occurred at or near when First Brands Group incurred significant on balance sheet debt."[80] But Exhibit A to the Complaint identifies 287 purportedly fraudulent transfers (many of which are outside the relevant lookback periods, as discussed *supra*),[81] and the

---

[75] Compl. ¶ 78; *see also id.* ¶ 117 ("[T]he Sale-leaseback Onset Transactions imposed debt obligations on the FBG Debtors utilizing as collateral the FBG Debtors' inventory and PP&E, while intentionally concealing these facts from the FBG Debtors' lenders and other creditors."), ¶ 130 ("Documentation of asset transfers ostensibly between the Carnaby Entities and Onset, and leases masked massive loan obligations of the FBG Debtors. The scheme also included a complex flow of funds intended to disguise transfers from the FBG Debtors to Onset via the Carnaby Entities.").

[76] *See id.* ¶ 77; *see also id.* ¶¶ 111, 113–14, 126–27, 132.

[77] *See id.* ¶ 130.

[78] *See id.* ¶¶ 113–15.

[79] *See id.* ¶ 113.

[80] *Id.* ¶ 129.

[81] *See id.* Ex. B.

33

FBG_CH1_00090177

DEBTORS' EXHIBIT NO. 174
Page 51 of 99
JOINT EXHIBIT NO. 50
Page 51 of 99

Debtors fail to specify which transfers "occurred at or near when First Brands Group incurred significant on balance sheet debt."[82]  Rule 9(b) requires more.[83]

59.    For these reasons, none of the Debtors' allegations raise a plausible inference of fraudulent intent.  *See, e.g., Allstate Ins. Co. v. Countrywide Fin. Corp.*, 842 F. Supp. 2d 1216, 1230 (C.D. Cal. 2012) (granting motion to dismiss where only two badges of fraud were pleaded); *Silverman v. Actrade Cap. Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 809–10 (Bankr. S.D.N.Y. 2005) (granting motion to dismiss because complaint contained few, if any, "badges of fraud" to establish fraudulent intent); *Fed. Housing Fin. Agency v. Countrywide Fin. Corp. (In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.)*, No. 2:11-ML-02265-MRP (MANx), 2013 WL 12148482, at *5–6 (C.D. Cal. June 7, 2013) (complaint failed to plead sufficient "badges of fraud" to establish an intent to defraud).  Thus, Onset is entitled to judgment on the pleadings.

**B.      The Debtors fail to adequately plead the constructive and actual fraudulent transfer claims related to certain Guaranty Agreements (Counts IV and V).**

60.    The Debtors' constructive and actual fraudulent transfer claims related to the Guarantees provided to Onset by the Guarantors are similarly devoid of factual allegations sufficient to satisfy the Debtors' burden under Rule 8, let alone Rule 9(b)'s heightened pleading standard.

61.    The Debtors mention the Guarantees only in passing.[84]  As to the Guarantors, the Debtors merely allege that Viceroy and FBG Holdings guaranteed "[t]he obligations of the

---

[82]   *Id.* ¶ 129.

[83]   The Debtors do not make any allegations that could plausibly support many of the still remaining badges, including badge 4 (the debtor had been sued or threatened with suit before the transfer was made or obligation was incurred), badge 5 (the transfer was of substantially all the debtor's assets), badge 6 (the debtor absconded), and badge 11 (the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor).

[84]   *See id.* ¶¶ 116 ("[T]he terms and structure of the Sale-leaseback Onset Transactions themselves placed the Carnaby Entities irredeemably in the red, and incapable of paying Onset what it was owed.  That fact, the guarantees issued by various Debtors of the Carnaby Entities' obligations and various provisions of the Sale-leaseback Onset Transactions ensured the FBG Debtors would have no choice but to service the debt imposed on them by Onset and Edward James."), 132 ("Under the literal terms of the Onset Transactions, for example,

34

FBG_CH1_00090178

**DEBTORS' EXHIBIT NO. 174**
**Page 52 of 99**
**JOINT EXHIBIT NO. 50**
**Page 52 of 99**

Carnaby Entities" and that Viceroy's "majority interest in FBG Holdings" was pledged in 2025.[85] Eagle Casting only appears once in the factual allegations,[86] while Eagle Casting Holdings is not mentioned in the factual allegations and appears only in reference to these claims.[87] Carnaby Capital, Carnaby Capital Holdings, and Carnaby FA Holdings are not mentioned in the factual allegations or in reference to these claims, appearing only in the Complaint's list of plaintiffs.[88] Finally, Carnaby Inventory Holdings IV does not appear once in the Complaint, not even as a plaintiff.

62. Nowhere do the Debtors plead any specific facts showing the Guarantors were insolvent at any time or that the Guarantees were provided for less than reasonable equivalent value. Instead, the Debtors simply recite the elements of a constructive fraudulent transfer claim.[89] Mere recitals cannot sustain a constructive fraudulent transfer claim. *See ONH AFC CS Invs.*, 671 B.R. at 698 ("[T]he conclusory assertion that the debtors were left with 'unreasonably small capital' after each of the transfers is insufficient as a matter of law"); *Neighbors Legacy Holdings, Inc.*, 645 B.R. at 895 (dismissing fraudulent transfer claims where plaintiff's "general allegation" that the debtors were insolvent because the value of their assets exceeds their liabilities was "not

---

enormous, above-market financial obligations were imposed on the Carnaby Entities (and by extension, by virtue of guarantees, contractual obligation or practical reality, the Plaintiffs as a whole) that they could not possibly satisfy, e.g., servicing lease obligations for PP&E they neither owned nor benefited from and with no other means even suggested in the transaction documents to generate revenue, or servicing obligations for leasing inventory intended to be sold and replaced in the ordinary course without any means for doing so.").

[85] *Id.* ¶ 102.

[86] *See id.* ¶ 104 (alleging Onset filed a UCC-1 financing statement against Eagle Casting).

[87] *See id.* ¶¶ 180, 187.

[88] *See id.* ¶¶ 8 (Carnaby Capital), 5 (Carnaby Capital Holdings), 9 (Carnaby FA Holdings).

[89] *See id.* ¶¶ 192 ("At the time of, or as a result of, the execution of the Guarantees and Onset Transaction Transfers, the Guarantors were insolvent, or were rendered insolvent."), 189 ("The obligations undertaken by the Guarantors pursuant to the Guarantee Agreements were made for less than reasonably equivalent value."), 190 ("The Guarantors incurred billions of dollars of guarantee obligations to Onset for no or less than reasonably equivalent value.").

FBG_CH1_00090179

DEBTORS' EXHIBIT NO. 174
Page 53 of 99
JOINT EXHIBIT NO. 50
Page 53 of 99

a specific reference to [each debtor's] financial condition" but a bald, insufficient recitation); *In re Crescent Res. LLC*, 2012 WL 195528, at *8 (dismissing constructive fraudulent transfer claim devoid of factual support that transferor received less than reasonably equivalent value).

63.     Likewise, the Debtors make only conclusory allegations as to two badges of fraud in pleading this actual fraudulent transfer claim.[90]  And the Debtors' allegations that "Edward James *and Onset* caused the Guarantors to enter into the Guarantee Agreements in furtherance of the scheme"[91] and that "*Onset* acted in bad faith before and throughout the scheme, including when in connection with the execution of the Guarantee Agreements"[92] are not only conclusory but also irrelevant because, as discussed previously, it is the *transferor's* intent that matters, not the transferee's.[93]  *See Midway Games*, 428 B.R. at 325 ("A plaintiff charging a violation under Section 548(a)(1) must prove that the *transferor* . . . made the transfer with the 'actual intent to hinder, delay or defraud creditors.'" (emphasis added) (citation and internal quotation marks omitted)).  Beyond this, the Debtors again make only conclusory allegations that the Guarantors "incurred billions of dollars of guarantee obligations to Onset for no or less than reasonable equivalent value" and that the "Guarantee Agreements harmed creditors of the Guarantors and other Debtors."[94]  These allegations lack the specificity required by Rule 9(b) and do not raise an inference of fraudulent intent.  *See, e.g.*, *Allstate*, 842 F. Supp. at 1230 (granting motion to dismiss where only two badges of fraud were pleaded); *Actrade Fin. Techs.*, 337 B.R. at 809–10 (granting

---

[90]   *See id.* ¶¶ 181 ("Edward James and Onset caused the Guarantors to enter into the Guarantee Agreements in furtherance of the scheme with the intent to hinder, delay or defraud creditors of the Guarantors."), 182 ("The Guarantors incurred billions of dollars of guarantee obligations to Onset for no or less than reasonable equivalent value."), 183 ("The Onset Transaction Transfers and Guarantee Agreements harmed creditors of the Guarantors and other Debtors.").

[91]   *Id.* ¶ 181 (emphasis added).

[92]   *Id.* ¶ 184 (emphasis added).

[93]   *See supra* ¶¶ 55–56, 58.

[94]   Compl. ¶¶ 182–83.

FBG_CH1_00090180

**DEBTORS' EXHIBIT NO. 174**
**Page 54 of 99**
**JOINT EXHIBIT NO. 50**
**Page 54 of 99**

motion to dismiss because complaint contained few, if any, "badges of fraud" to establish fraudulent intent); *Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2013 WL 12148482, at \*5–6 (complaint failed to plead sufficient "badges of fraud" to establish an intent to defraud).

64.     Accordingly, Onset is entitled to judgment on this actual fraudulent transfer claim.

\*       \*       \*

65.     As to all of their fraudulent transfer claims against Onset, the Debtors fail to adequately plead that any particular transfer lacked reasonably equivalent value, any transferor was insolvent at the time of any purportedly fraudulent transfer, or any transfer was made with fraudulent intent.  These deficiencies require judgment for Onset on all such claims.

**C.     The Debtors fail to adequately plead the preferential transfer claims (Counts XVIII and XIX).**

66.     Pursuant to Sections 547(b) and 550(a) of the Bankruptcy Code, the Debtors seek to avoid two sets of alleged preferential transfers made to Onset:

- by Count XVIII, the Debtors seek to avoid the perfection of Onset's security interest in Viceroy's majority interest in FBG Holdings (the "Perfection Preference Claim"),[95] and

- by Count XIX, the Debtors seek to avoid approximately $1 billion in "cash transfers" (the "Cash Transfers Preference Claim") allegedly sent from unspecified Debtors, either directly or through unspecified Carnaby Entities, to Onset during the year preceding the Petition Date, of which $46 million was allegedly transferred within 90 days of the Petition Date.[96]

---

[95]   Taking the Debtors' allegations as true, pursuant to two separate agreements executed in 2022 and 2023 respectively, Viceroy guaranteed the Carnaby Entities' obligations under certain lease agreements. *Id.* ¶¶ 274–82; *see also* Answer ¶ 180. And, in 2025, Viceroy also pledged its majority interest in FBG Holdings as further support. Compl. ¶ 275.  Onset then sought to perfect its interests in that pledge by filing a UCC statement against Viceroy on September 12, 2025. *Id.* ¶ 276; *see also* Answer ¶¶ 276, 278.

[96]   Compl. ¶ 284.

FBG_CH1_00090181

67.     To plead an avoidable preferential transfer under Section 547(b), the Debtors must allege each element of the claim,[97] and in support of such claim must identify (a) the nature and amount of each antecedent debt and (b) each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee, and (iv) the amount of the transfer.  *See Valley Media Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189, 192 (Bankr. D. Del. 2003); *see also Reagor Auto Mall, Ltd. v. FirstCapital Bank of Tex., N.A. (In re Reagor-Dyke Motors, LP),* No. 18-50214-RLJ, 2020 WL 4939180, at *6 (Bankr. N.D. Tex. Aug. 24, 2020) (surveying caselaw and concluding that courts generally "require the specific-pleading standard of *Valley Media*" even when courts do not "expressly adopt[]" the standard).

68.     The Debtors must also demonstrate that they conducted reasonable due diligence into their *prima facie* case and took into account Onset's known or reasonably knowable affirmative defenses under section 547(c).  *See* 11 U.S.C. § 547(b).

69.     The Debtors do neither; they offer ***none*** of what they must to withstand judgment on the pleadings.  They fail both to adequately plead the elements for either preference claim and to demonstrate that they have conducted diligence on preference defenses.  Thus, both preferential transfer claims fail.

       i.     <u>The Debtors fail to adequately plead that the alleged preferential transfers were for or on the account of an antecedent debt.</u>

70.     To sufficiently plead a preferential transfer claim, the plaintiff must identify "the nature and amount of each antecedent debt" underlying each transfer.  *See In re Valley Media*, 288

---

[97] Here, the elements of a preference claim require that the transfer (1) was made to or for the benefit of Onset; (2) for or on account of an antecedent debt; (3) while the transferor Debtor was insolvent; (4) on or within 90 days of the petition date (or within one year if the transferee is an insider—as discussed herein, Onset is not); and (5) enabled Onset to receive more than it would have if (a) the case was a Chapter 7 liquidation, (b) the transfer had not been made, and (c) Onset received payment of the debt to the extent provided by the Bankruptcy Code. *See* 11 U.S.C. § 547(b).

FBG_CH1_00090182

**DEBTORS' EXHIBIT NO. 174**
**Page 56 of 99**
**JOINT EXHIBIT NO. 50**
**Page 56 of 99**

B.R. at 192.  Failure to do so warrants dismissal.  *See e.g.*, *In re Specialty Select Care Ctr. of San Antonio, LLC*, 2021 WL 3083522, at *19; *In re Crescent Res., LLC*, 2012 WL 195528, at *7 (dismissing preferential transfer claim for failing to sufficiently plead the existence of an antecedent debt); *see also In re Reagor-Dykes Motors, LP*, 2020 WL 4939180, at *5 (dismissing preferential transfer claim because, among other issues, plaintiffs failed to connect the transfers at issue with antecedent debts).  Yet the antecedent debt underlying each preference claim here is not specifically identified.

71.     For the Perfection Preference Claim, the Debtors allege that the perfection of Onset's interests was "on account of antecedent debt in the form of the Viceroy guarantee."[98]  But the Debtors do not plead the nature and amount of said guarantee; the Debtors do not even specify which guaranty agreement gave rise to the debt at issue.[99]  This failure, alone, is fatal.

72.     The Cash Transfers Preference Claim fares no better.  There, the Debtors allege that they made such transfers "purely on account of antecedent debt owing . . . under the Leases."[100]  Not only is this assertion the exact kind of "bald" allegation that warrants dismissal (*see, e.g., In re Specialty Select Care Ctr. of San Antonio, LLC*, 2021 WL 3083522, at *19), but the Debtors also fail to identify which of the 49 purported "Leases" actually underlie the cash transfers preference claim.  According to the Debtors, the parties began entering into such leases as early as 2022, and, as of the Petition Date, ***only 12 of the 49 remained active***.[101]  But the Debtors fail to

---

[98]   Compl. ¶ 280.

[99]   For example, elsewhere in the Complaint, the Debtors allege that Viceroy entered into (at least) two different guaranty agreements involving different debtor entities: one on June 28, 2022, to guarantee the obligations of Carnaby IV to Onset, and another on October 24, 2023, to guarantee the obligations of Carnaby FA to Onset. *Id.* ¶ 188.  But the Debtors fail to identify which (if either) guaranty agreement constitutes the antecedent debt for the Perfection Preference Claim. *See also* Answer ¶ 180 (noting that Onset had entered into two different guaranty agreements with Viceroy).

[100]  Compl. ¶ 293.

[101]  *Id.* ¶ 103.

FBG_CH1_00090183

state when the inactive leases terminated and whether the Debtors made payments pursuant to the active leases during the statutory lookback period. Onset—and this Court—therefore have no way of knowing which leases (if any) constitute the antecedent debt that supposedly underlies the cash transfers at issue, the amount owed under such leases, and whether such purported debt was actually outstanding at the time of such cash transfers.

73.     Because the Debtors plainly fail to provide the information necessary to identify the antecedent debt underlying either of preferential transfer claim, both claims fail.

ii.     <u>The Debtors fail to plead other elements in support of the Perfection Preference Claim.</u>

a.     *Perfection is not a transfer within the meaning of Section 547(b).*

74.     The Perfection Preference Claim seeks to avoid "Onset's attempted perfection of its security interest[.]"[102]   But the perfection of a security interest, by itself, is not an avoidable "transfer" within the meaning of Section 547(b) of the Bankruptcy Code. *See Suhar v. Pension Benefit Guar. Corp. (In re R.C.A. Rubber Co.)*, No. 16-52757, 2020 WL 1488759, at *5 (Bankr. N.D. Ohio Mar. 26, 2020) ("[P]erfection alone is not a 'transfer[.]'").   Rather, perfection "is the means by which a transferee secures superior rights in the transferred property relative to the rights of competing third parties . . . [I]t is not itself a further or second transfer." *Id.* at *4; *see also Black's Law Dictionary* (12th ed. 2024) (defining "perfection" as the "*[v]alidation* of a security interest *as against other creditors*, usually by filing a statement with some public office or by taking possession of the collateral" (emphasis added)); *see also Meister v. State Nat'l Bank (In re Mailbag Int'l, Inc.)*, 28 B.R. 905, 908 (Bankr. D. Conn. 1983) ("[T]he question of perfection only

---

[102]   *Id.* ¶ 282.

FBG_CH1_00090184

**DEBTORS' EXHIBIT NO. 174**
**Page 58 of 99**
**JOINT EXHIBIT NO. 50**
**Page 58 of 99**

becomes relevant *after* it has been determined that a transfer has taken effect between the transferor and the transferee." (quotation modified)).

75. Section 547 itself treats perfection and transfer as distinct. For example, Section 547(e)(2)(A) states that a transfer is deemed to occur when it "takes effect between the transferor and the transferee, if such transfer is *perfected* at, or within 30 days after, such time." 11 U.S.C. § 547(e)(2)(A) (emphasis added). If perfection qualified as a transfer, Section 547(e)(2)'s definition of transfer date becomes impossible to apply. Every grant of a security interest would actually involve two, separate transfers (the transfer of the security interest and the subsequent perfection thereof), with the transfer date for each turning on whether it was perfected within 30 days of the transaction. But perfection, itself, cannot be further perfected. Interpreting the Bankruptcy Code's definition of transfer to include perfection therefore leads to absurdity, and Section 547 thus "cannot be fairly read to suggest that perfection is itself a transfer." *See In re R.C.A. Rubber Co.*, 2020 WL 1488759, at *4; *see also Beeter v. Tri-City Prop. Mgmt. Servs., Inc. (In re Beeter)*, 173 B.R. 108, 123 (Bankr. W.D. Tex. 1994) ("Courts, in construing statutes, should strive to avoid attributing absurd designs to Congress.").

> b. *The Debtors fail to allege the perfection enables Onset to recover more than it would in a Chapter 7 liquidation.*

76. The Debtors also fail to adequately allege that the transfer to be avoided through the Perfection Preference Claim enabled Onset "to receive more than [it] would have received upon liquidation under Chapter 7." *Unsecured Creditors Comm. v. Cmty. Bank (In re Stinson Petroleum Co.)*, 506 F. App'x 305, 309 (5th Cir. 2013) (citation and internal quotation marks omitted); *Hall v. Chrysler Credit Corp. (In re JKJ Chevrolet, Inc.)*, 412 F.3d 545, 549 (4th Cir. 2005). They attempt to satisfy this requirement by alleging that the perfection gives Onset "a perfected security interest in Viceroy's interest in FBG Holdings," thereby entitling Onset "to the

FBG_CH1_00090185

**DEBTORS' EXHIBIT NO. 174
Page 59 of 99
JOINT EXHIBIT NO. 50
Page 59 of 99**

value of the equity interest ahead of [Viceroy's] unsecured creditors."[103]   Conversely, had the perfection not occurred, in a chapter 7 liquidation, Onset would just "be an unsecured creditor at Viceroy and would share ratably in the value of the equity interest with other unsecured creditors[.]"[104]

77.   But the Debtors then turn around and allege that both Viceroy and FBG Holdings are insolvent, meaning Viceroy's equity interest in FBG Holdings is effectively worthless.[105] Equity interests in an insolvent company have no value: an insolvent company, by definition, lacks sufficient funds to cover its liabilities and therefore cannot yield any value to equity holders. *See La. Indus. Coatings, Inc. v. Pertuit (In re La. Indus. Coatings, Inc.)*, 31 B.R. 688, 695 (Bankr. E.D. La. 1983) (noting that the transfer of stock in an insolvent corporation was worthless and therefore did not constitute new value).   By alleging that Viceroy and FBG Holdings are insolvent, the Debtors admit that the collateral Viceroy pledged to secure Onset's interests has no meaningful value and does not improve Onset's relative recovery.   The Debtors therefore fail to satisfy the requirements of Section 547(b)(5).

        iii.    <u>The Debtors fail to plead other elements in support of the Cash Transfers Preference Claim.</u>

        a.    *The Debtors fail to adequately identify the cash transfers at issue.*

78.   At a minimum, to provide Onset with fair notice of the transfers the Debtors seek to avoid, the Debtors must sufficiently describe each alleged preferential transfer.   *See In re Reagor-Dykes Motors, LP*, 2020 WL 4939180, at *6.   Here—other than alleging, in conclusory fashion, that the cash transfers amount to roughly $1 billion—the Debtors fail to provide even the

---

[103]   *Id.* ¶ 281.

[104]   *Id.*

[105]   *See, e.g., id.* ¶ 192.

FBG_CH1_00090186

most basic information:  the Debtors do not identify the transferor, the date of the transfer, or connect the transfers with antecedent debt.  These defects, alone, warrant the dismissal of the Cash Transfers Preference Claim.  *See id.* at *8 (dismissing preferential transfer claim as the plaintiff failed to "match-up transfers with antecedent debt"; "[t]he transfers [we]re identified as having been made over a range of time"; and "the transferor [wa]s not identified" because there were multiple entities that could have been the transferor).

> b.    *The Debtors fail to support their allegation that Onset is an "insider."*

79.    A claimant may avoid preferential transfers made to a creditor up to a year before the date of the filing of the bankruptcy petition "if such creditor at the time of such was an insider." 11 U.S.C. § 547(b)(4)(B).  Onset is not a statutory insider under the Bankruptcy Code; the Debtors do not plead to the contrary.  *See* 11 U.S.C. § 101(31).[106]

80.    Nor is Onset a non-statutory insider.  Whether a party is a non-statutory insider is determined with reference to "(1) the closeness of the relationship between the transferee and the debtor and (2) whether the transactions between the transferee and the debtor were conducted at arm's length."  *Browning Interests v. Allison (In re Holloway)*, 955 F.2d 1008, 1011 (5th Cir. 1992).  Application of these factors confirms that Onset was not an insider.

81.    Adequately pleading insider status requires alleging managerial control.  In *In re Murchison*, the bankruptcy court concluded that a creditor is "not an 'insider' for [Section] 547(b) purposes unless it is able to exercise actual managerial control over the debtor or has some special affinity with the debtor that extends beyond a business relationship."  *In re Murchison (Lynn v. Cont'l Bank, N.A.)*, 154 B.R. 909, 913 (Bankr. N.D. Tex. 1993).  That court further observed that

---

[106]  *See id.* ¶ 293 (alleging that Onset's relationship with Ed "qualifies it as an insider").

FBG_CH1_00090187

the requisite level of "actual managerial control" for insider status is "sufficient authority over the corporate debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *Id.* (citation and internal quotation marks omitted). Under this standard, alleging that the defendant "was in a superior bargaining position relative to [the debtor] and enjoyed a close business relationship with [the debtor's] agents" does ***not*** establish insider status; rather, a creditor "active[ly] maneuvering to negotiate a better position for itself . . . indicates . . . nothing other than arm's-length dealing." *Id.* at 915–16 (finding that the plaintiffs had failed to show that the lender bank was non-statutory insider as "[n]owhere … do the Plaintiffs point to any instance of [the lender bank's] actually making managerial decisions for [the debtor]"); *see also Cage v. Hardy Rawls Enters., LLC (In re Moye)*, No. H-10-956, 2010 WL 11519301, at *12 (S.D. Tex. Dec. 23, 2010) (finding that the plaintiff failed to establish that the defendant was an insider as plaintiff had not alleged that the defendant had any managerial control over the debtor's decisions).

82.     While the Debtors allege that Onset qualifies as an insider due to its "close partnership with Edward James,"[107] ***nowhere*** do the Debtors allege that Onset exercised actual managerial control over the Debtors (because it did not). There are ***no*** allegations that Onset dictated the Debtors' corporate policy, directed the disposition of the Debtors' assets, or otherwise controlled the Debtors' management, governance, or operations.

83.     Although the Debtors describe how ***Ed*** misused his influence and power over the Debtors, such allegations have no bearing on whether ***Onset*** is an insider. For example, the Debtors allege that Ed "instructed Onset to exclude other officers and employees of the Company from communications regarding the transactions at issue," including by allegedly telling Onset's

---

[107]   *Id.* ¶ 290.

44

FBG_CH1_00090188

**DEBTORS' EXHIBIT NO. 174**
**Page 62 of 99**
**JOINT EXHIBIT NO. 50**
**Page 62 of 99**

CFO that all communications should go solely through Ed.[108] This allegation shows that *Ed* limited Onset's negotiation with the Debtors, not that *Onset* exercised any control over the Debtors. The Debtors also allege that Ed prevented the Debtors from negotiating with Onset for better terms by allegedly instructing the Debtors' employees not to comment on Onset's deal documents.[109] Taken as true, this allegation (again) establishes only that Ed—not Onset— exercised control. Finally, the fact that Ed invested his own money in certain Onset Transactions does not establish Onset's insider status.[110] It remains true that Onset had *no* managerial control over *any* Debtor, even though Ed himself might have; the Debtors' allegations (taken as true) do not establish otherwise.

84. Because the Debtors fail to adequately allege that Onset is an insider, all their claims for preferential claims that fall outside the 90-day statutory lookback period must be dismissed. *See* 11 U.S.C. § 547(b)(4)(B); *In re Moye*, 2010 WL 11519301, at *12 (dismissing preferential transfer claim against a payment outside the 90-day statutory lookback period because the plaintiff failed to establish that the transferee was an insider).

       c.     *The Debtors fail to support their allegation that the Debtors were insolvent at the time of the alleged cash transfers.*

85. The Debtors allege, in conclusory fashion, that the cash transfers were made "while the Debtors were insolvent."[111] But as discussed herein in the context of the Debtors' fraudulent transfer claims,[112] the Debtors fail to allege facts indicating insolvency during the relevant period, let alone on the date of each respective unidentified transfer. The Debtors offer no balance sheet

---

[108]  *Id.* ¶ 97.

[109]  *Id.* ¶ 98.

[110]  *Id.* ¶¶ 70, 86, 287.

[111]  *Id.* ¶ 292.

[112]  *See supra* Section III.A.ii.

FBG_CH1_00090189

**DEBTORS' EXHIBIT NO. 174**
**Page 63 of 99**
**JOINT EXHIBIT NO. 50**
**Page 63 of 99**

information, no analysis of the Debtors' assets and liabilities, and no facts supporting the insolvency of the relevant Debtor entities within the required timeframe.

> d. *The Debtors fail to allege that the alleged cash transfers enable Onset to recover than it would in a Chapter 7 liquidation.*

86.     The Debtors attempt to satisfy their burden under section 547(b)(5)—demonstrating that the cash transfers allowed Onset to recover more than it otherwise would in a chapter 7 a liquidation—by alleging that the cash transfers "enabled Onset to receive more than they [sic] would receive if (a) the Debtors' case was a case under chapter 7, (b) the transfers had not been made, and (c) Onset received payment of such debt to the extent provided by the provisions of the Bankruptcy Code."[113]   The Debtors say nothing more in support of this legal conclusion; they do not, for example, compare what Onset received through the cash transfers against what Onset would recover under a hypothetical chapter 7 liquidation absent the cash transfers.   Nor do the Debtors allege any facts to satisfy their burden of showing that the cash transfers are not the proceeds of Onset's collateral.   *See In re Reagor-Dykes Motors, LP*, No. 18-50214-RLJ-11, 2022 WL 2046144, at *12 (Bankr. N.D. Tex. June 3, 2022) (noting that, under section 547(b)(5), the plaintiff bears the burden of showing that the preferential payments were not sourced from the transferee-creditor's collateral).

87.     The Debtors' conclusory allegation, which only recites the elements of section 547(b)(5), falls far short of the standard for fair notice under Rule 8.   *See, e.g.*, *Curtis v. Chapman Family Tr. (In re Chapman)*, 628 B.R. 512, 533 (Bankr. S.D. Tex. 2021) (finding that the plaintiff's recitation of the elements of 547(b)(5) failed to provide the defendants with fair notice of the claim

---

[113]   Compl. ¶ 295.

46

FBG_CH1_00090190

**DEBTORS' EXHIBIT NO. 174**
**Page 64 of 99**
**JOINT EXHIBIT NO. 50**
**Page 64 of 99**

and the grounds for it).  This failure is yet another independent basis for granting Onset judgment on the Cash Transfers Preference Claim.

> e.   *The Debtors' own allegations indicate the alleged cash transfers were ordinary course payments.*

88.    Under Section 547(c)(2) of the Bankruptcy Code, a plaintiff may not avoid a transfer that "was in payment of a debt incurred by the debtor in the ordinary course of business" and "made in the ordinary course of business or financial affairs of the debtor and the transferee" or "made according to ordinary business terms."  11 U.S.C 547(c)(2).

89.    Although the Fifth Circuit lacks a "precise legal test" for whether payments are made in the ordinary course of business, courts generally review the time in which the debtor ordinarily paid the creditor and whether the timing of the challenged payments reflect "some consistency" with the timing of similar payments made outside the avoidance period. *See Gasmark Ltd. Liquidating Tr. v. Louis Dreyfus Nat. Gas Corp.*, 158 F.3d 312, 317 (5th Cir. 1998).

90.    Here, the Debtors admit they paid lease payments in the ordinary course, pursuant to at least 49 leases, dating back to 2022.[114]  Furthermore, according to the Debtors, they satisfied and extinguished their obligations under 37 of the leases.[115]  And, as evidenced by Exhibit B to the Complaint, the Debtors have transacted with Onset hundreds of times over the course of at least seven years.[116]  The Debtors' own allegations thus establish that the lease payments were part of a consistent pattern of transactions between the Debtors and Onset.

_____

[114]   *Id.* ¶ 103.

[115]   *Id.*

[116]   *See id.* Ex. B.

FBG_CH1_00090191

**DEBTORS' EXHIBIT NO. 174
Page 65 of 99
JOINT EXHIBIT NO. 50
Page 65 of 99**

       iv.     <u>The Debtors fail to allege that they conducted reasonable due diligence into the circumstances of the case and Onset's affirmative defenses.</u>

91.     A plaintiff alleging preferential transfer must demonstrate that it conducted reasonable due diligence into the defendant's known or reasonably knowable affirmative defenses under Section 547(c) of the Bankruptcy Code with enough detail such that the court may assess whether such efforts were sufficient. *See Faulkner v. Lone Star Brokering, LLC (In re Reagor-Dykes Motors, LP)*, 2021 WL 2546664, at \*2 (Bankr. N.D. Tex. June 18, 2021) ("A recital . . . that [the plaintiff] exercised sufficient diligence, thus mimicking the language of the statute, is not helpful."). A court may dismiss a preferential transfer claim where the plaintiff fails to sufficiently describe its due diligence efforts. *See Husted v. Taggart (In re ECS Ref., Inc.)*, 625 B.R. 425, 457–58 (Bankr. E.D. Cal. 2020) (dismissing preferential transfer claim under Section 547(c) as the complaint did not "expressly recite the efforts [the plaintiff] undertook to evaluate the merits of a prima facie case or reasonably knowable affirmative defenses").

92.     The Debtors do not even attempt to plead sufficient diligence. None of the Debtors' allegations regarding the preferential transfers describe any investigative efforts—the Debtors do not even provide a conclusory allegation that they conducted reasonable due diligence into their *prima facie* case. The Debtors similarly fail to describe their consideration of Onset's reasonably knowable affirmative defenses, despite the fact that, as discussed above, the Debtors' own allegations support that Onset may avail itself of at least one such defense.[117] The absence of any allegations relating to diligence warrants dismissal of both preferential transfer claims. *See In re ECS Ref., Inc.*, 625 B.R. at 457–58.

*   *   *

---

[117] *See infra* Section III.C.iii.e.

48

FBG_CH1_00090192

93.     In sum, with respect to both the Perfection Preference Claim and the Cash Transfers Preference Claim, the Debtors fail to satisfy the elements of preferential transfer (indeed, for the Perfection Preference Claim, they fail to adequately allege a *transfer*) and do not describe their due diligence efforts investigating such claims.  Furthermore, on the Cash Transfer Preference Claim, the Debtors' own allegations make clear that the transfers at issue were made in the ordinary course and cannot be avoided.   Onset is entitled to judgment on both claims.

**D.     The Debtors fail to adequately plead the aiding and abetting breach of fiduciary duty claim (Count XI).**

    i.     <u>The Debtors improperly allege a contractual principle as a fiduciary duty.</u>

94.     At the forefront, a claim for aiding and abetting a breach of fiduciary duty cannot survive when the thrust of the fiduciary breach rests on the "implied covenant of good faith and fair dealing." *Blue Chip Capital Fund II L.P. v. Tubergen*, 906 A.2d 827, 834 (Del. Ch. 2006) (dismissing breach of fiduciary duty claims in-part because the alleged breach arose out of breach of the implied covenant of good faith and fair dealing); *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, No. 09-cv-02487-dmg, 2013 WL 12203024, at *13 (C.D. Cal. Apr. 4, 2013) ("Delaware courts routinely dismiss stockholders' breach of fiduciary duty claims against corporate directors where the gravamen of the complaint is breach of a contractual duty or the implied covenant of good faith and fair dealing relating thereto.").

95.     Yet here, the ***only*** basis alleged for Ed's breach of fiduciary duty is the implied covenant of good faith and fair dealing.[118]  This creates no fiduciary duty and therefore cannot form the basis for this claim.  *See, e.g., VTX Commc'ns, LLC*, Civil Action No. 7:19-cv-00269, 2020 WL 4465968, at *24  ("The implied covenant [of good faith and fair dealing] is a doctrine that implies terms in a contract; it does not create any 'free-floating' fiduciary duty . . ." (applying

_____

[118]  *See, e.g.*, Compl. ¶ 146.

49

FBG_CH1_00090193

**DEBTORS' EXHIBIT NO. 174**
**Page 67 of 99**
**JOINT EXHIBIT NO. 50**
**Page 67 of 99**

Delaware law)); *Footlick v. Topstep LLC*, No. 1:22-cv-6152, 2024 WL 1283702, at *6–7 (N.D. Ill. Mar. 26, 2024) ("The implied covenant of good faith and fair dealing 'is a creature of contract, distinct from the fiduciary duties that . . . plaintiff asserts here.'" (citation omitted) (applying Delaware law)).

96.     Because the Debtors conflate a contractual concept with a fiduciary one, this claim must be dismissed.

ii.     The Debtors' duplicative claims must be dismissed.

97.     The Debtors' claim for aiding and abetting breach of fiduciary duty also fails because the underlying breach of fiduciary duty claim is duplicative of the Debtors' breach of contract claim.  Count VI, the claim for breach of LLC agreement, is based on the allegation that "Edward James, as a manager and officer of the Debtors, was bound by fiduciary and contractual duties," including, allegedly, the implied covenant of good faith and fair dealing, and that Ed violated those obligations by engaging in the alleged scheme.[119]  Count X, the claim for breach of fiduciary duties under Delaware law, rests on the same premise:  that "Edward James owed fiduciary duties to the Debtors, including the implied covenant of good faith and fair dealing," and breached them through the same conduct.[120]

98.     Delaware law "does not allow fiduciary duty claims to proceed in parallel with breach of contract claims unless there is an independent basis for the fiduciary duty claim[] apart from the contractual claim[.]" *Koloni Reklam, Sanayi, Ticaret LTD/STI v. Viacom, Inc.*, No. 16-285-SLR, 2017 WL 726660, at *4 (D. Del. Feb. 23, 2017) (quoting *CIM Urban Lending GP, LLC v. Cantor Com. Real Estate Sponsor, L.P.*, No. 11060-VCN, 2016 WL 768904, at *3 (Del. Ch.

---

[119]   *See id.* ¶ 198.

[120]   *See id.* ¶ 122.

50

FBG_CH1_00090194

DEBTORS' EXHIBIT NO. 174
Page 68 of 99
JOINT EXHIBIT NO. 50
Page 68 of 99

Feb. 26, 2016)); *see also Manbro Energy Corp. v. Chatterjee Advisors, LLC*, No. 20-civ-3773 (LGS), 2021 WL 2037552, at *8 (S.D.N.Y. May 21, 2021) (finding the fiduciary duty claim is duplicative of the implied contract claim when the same "improper self-dealing" allegations support both claims) (applying Delaware law).

99.     Here, because Ed's alleged fiduciary breaches (or, rather, breaches of the implied covenant of good faith and fair dealing) are based on the same supposed "scheme" that forms the basis of the contract claim, they necessarily fail for the reasons discussed above; as those claims fail, so, too, must the derivative aiding and abetting breach of fiduciary duty claim against Onset be dismissed.   *See Vichi v. Koninklijke Philips Electronics N.V.*, No. 2578-VCP, 2009 WL 4345724, at *20–21 (Del. Ch. Dec. 1, 2009) (dismissing aiding and abetting claim because underlying breach of fiduciary duty claim was dismissed as a matter of law).

   iii. <u>The claim must be dismissed to the extent it alleges breaches of fiduciary duties against Debtors incorporated outside of Delaware.</u>

100.     Moreover, the Debtors plead the aiding and abetting claim exclusively under Delaware law, even though the Debtors are incorporated across multiple states.[121]  For a breach of fiduciary duty claim, and the derivative aiding and abetting breach of fiduciary claim, Texas courts apply the internal affairs doctrine and thus apply "the law of the state of incorporation" to such claims.   *See PilePro, LLC v. Chang*, 152 F. Supp. 3d 659, 674–75 (W.D. Tex. 2016) *aff'd*, 676 Fed. App'x 341 (5th Cir. 2017) (applying Nevada law to the breach of fiduciary duty claim for duties owed to a Nevada corporation and Delaware law to the breach of fiduciary duty claim for duties owed to a Delaware LLC); *see also In re Uplift RX, LLC*, 667 B.R. 665, 684 (Bankr. S.D. Tex. 2024) (holding that breach of fiduciary duty claim, as well as the aiding and abetting claim,

---

[121]  *See also id.* ¶¶ 12 (alleging Debtor Dalton Corporation is incorporated in Indiana), 16 (alleging Debtor Trico Products Corporation is incorporated in New York), 24 (alleging Debtor Hopkins Manufacturing Corporation is incorporated in Ohio), 26 (alleging Debtor ASC Industries, Inc. is incorporated in Ohio).

FBG_CH1_00090195

DEBTORS' EXHIBIT NO. 174
Page 69 of 99
JOINT EXHIBIT NO. 50
Page 69 of 99

should be governed by the same law); *In re Legendary Field Exhibitions, LLC*, Case No. 19-50900-cag, 2023 WL 7852657, at \*16 (Bankr. W.D. Tex. Nov. 13, 2023) (same).

101.    Echoing a persistent deficiency in the Complaint, the Debtors fail to identify which Debtor entities were allegedly owed fiduciary duties by Ed.[122]  As a result of this (impermissible) grouping, the Debtors purport to impose Delaware law as the governing law for a claim involving non-Delaware entities.  Delaware law cannot be reflexively applied to fiduciary duties owed to Debtor entities incorporated elsewhere.  The Debtors leave both Onset and the Court to guess at which law governs the claims pled against Onset.  This independently compels dismissal.

> iv.    <u>The Debtors fail to sufficiently plead the specific elements of the breach claim.</u>

102.    Finally, the Debtors fail to adequately plead each (indeed, any) element of the aiding and abetting claim, warranting its dismissal.  Under Delaware law,[123] a plaintiff must show "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, and (3) knowing participation in that breach by the non-fiduciary." *In re Uplift RX, LLC*, 667 B.R. at 685 (applying Delaware law).

103.    *First*, the Debtors inadequately plead the existence of a fiduciary relationship.  The Debtors allege only that Ed was a "former executive vice president, board member, and officer of the Debtors" and thus "owed fiduciary duties to the Debtors, including the implied covenant of good faith and fair dealing."[124]  The Complaint provides *no* allegations that Ed held these positions

---

[122]    *Id*. ¶¶ 227–28 (alleging that Onset aided and abetted Ed in breaching his fiduciary duties "to the Debtors").

[123]    This is one of the rare occasions that the Debtors plead an applicable state law governing a claim.  As stated above, however, the choice-of-law is governed by the state of incorporation, and not all Debtors are incorporated in Delaware.

[124]    *See id*. ¶¶ 28 ("Defendant Edward James is a former executive vice president, board member, and officer of Debtors . . .."), 227 ("Edward James owed fiduciary duties to the Debtors, including the implied covenant of good faith and fair dealing.").

FBG_CH1_00090196

**DEBTORS' EXHIBIT NO. 174**
**Page 70 of 99**
**JOINT EXHIBIT NO. 50**
**Page 70 of 99**

at the specific relevant Debtor entities at the relevant times of the challenged conduct. [125]  Debtors cannot shift the burden to Onset to guess at which entities, and for what reasons, Ed may have owed fiduciary duties.  "A breach of fiduciary duty claim must be pled by specifically pointing out the entity that was involved in the challenged transaction."  *Miller v. ANConnect, LLC (In re Our Alchemy LLC)*, No. 16-11596 (KG), 2019 WL 4447541, at *16 (Bankr. D. Del. Sept. 16, 2019); *Miller v. Black Diamond Capital Management, LLC (In re Bayou Steel BD Holdings, L.L.C.),* 642 B.R. 371, 399 (Bankr. D. Del. 2022); *see also In re Lauren Eng'rs & Constructors, Inc.*, No. 21-10051-RLJ, 2024 WL 2947606, at *2 (Bankr. N.D. Tex. June 11, 2024).  Accordingly, this claim should be dismissed.

104.    *Second*, the Debtors fail to allege a breach of any legally cognizable fiduciary duty. Pleading an underlying breach of fiduciary duty is a necessary predicate to a claim for aiding and abetting a breach of fiduciary duty.  *See In re Legendary Field Exhibitions, LLC*, 2023 WL 7852657, at *16 ("[A]iding and abetting a breach of fiduciary duty is necessarily dependent on the success of a breach of fiduciary duty claim . . ." (applying Delaware law)).  Under Delaware law, the only recognized fiduciary duties are the duties of loyalty and care.  *Bay Ctr. Apts. Owner, LLC v. Emery Bay PKI, LLC*, No. 3658-VCS, 2009 WL 1124451, at *8 (Del. Ch. Apr. 20, 2009) ("[I]n the absence of a contrary provision in the LLC agreement, the manager of an LLC owes the traditional fiduciary duties of loyalty and care to the members of the LLC.").  The Debtors fail to plead facts sufficient to establish a breach of either duty, instead relying solely on the contractual

---

[125]   *See, e.g., id.* ¶ 28.

FBG_CH1_00090197

principle of the implied covenant of good faith and fair dealing.[126] As discussed above, courts have routinely held that this is fatal to a claim for breach of fiduciary duty.[127]

105. *Third*, Delaware law requires that a defendant *knowingly* participate in the breach to sustain an aiding and abetting claim. *Smith v. Weinshanker (In re Draw Another Circle)*, 602 B.R. 878, 904–05 (Bankr. D. Del. 2019) (recognizing that failure "to allege specific facts showing *actual* knowledge" is fatal to an aiding and abetting fiduciary duty claim (emphasis added)). Conclusory allegations, "such as [that the purported aiding and abetting defendant] had knowledge of the Defendants' breaches of fiduciary duty, and, therefore, aided and abetted such breaches of fiduciary duties are insufficient as a matter of law." *Greene v. NYMEX, Inc. (In re NYMEX S'holder Litig.)*, No. 3621-VCN, 2009 WL 3206051, at *12–14 (Del. Ch. Sept. 30, 2009) (dismissing aiding and abetting breach of fiduciary duty claim for conclusory allegation when plaintiffs did not allege defendants "*induced*" plaintiffs to breach their fiduciary duty (cleaned up)); *see also Cred Inc. Liquidation Trust v. Uphold HQ Inc. (In re Cred Inc.)*, 650 B.R. 803, 827 (Bankr. D. Del. 2023), *aff'd,* 658 B.R. 783 (D. Del. 2024).

106. Here, the Debtors rely entirely on conclusory allegations, insinuating that because *Ed* had knowledge, *Onset* must have had knowledge as well.[128] This argument fails as a matter of logic and law. "Merely alleging that [a defendant] 'should have known' based on 'red flags'" that another party was breaching its fiduciary duties "does not establish that [a defendant] knowingly

---

[126] *See id.* ¶¶ 146, 222, 227, 229.

[127] To the extent the Debtors are LLCs, the Debtors fail to allege that fiduciary duties were *not* disclaimed in the governing LLC Agreements or that Ed was *not* exculpated from any fiduciary duties thereunder. Failure to so allege results in an insufficiently pled breach of fiduciary duty claim. *See Clingman & Hanger Mgm't Assocs. LLC v. Rieck,* 701 F. Supp. 3d 565, 588–90 (S.D. Tex. 2023) (dismissing claims for breach of fiduciary duty against officers, and claims for aiding and abetting such breaches, with prejudice where the governing LLC agreement exculpated all fiduciary duties).

[128] *See* Compl. ¶ 123 ("Edward James, in furtherance of his scheme with Onset, plainly knew [of the Debtors' true financial condition]. Onset knew or should have known [] as well.").

FBG_CH1_00090198

**DEBTORS' EXHIBIT NO. 174**
**Page 72 of 99**
**JOINT EXHIBIT NO. 50**
**Page 72 of 99**

permitted" that party to commit such breaches because "[k]nowing means *knowing*." *In re Chris Pettit & Assocs., P.C.*, 670 B.R. 602, 628 (Bankr. W.D. Tex. 2025) (emphasis in original). Nor does the allegation that Onset obtained actual knowledge through its purported awareness of Ed's job title or position as an alleged board member for one or more of the entities at issue fare any better.[129] Because the Debtors fail to allege non-conclusory facts showing that Onset had actual knowledge of, and knowingly participated in, any breach of fiduciary duty, Onset is entitled to judgment on this claim.

*     *     *

107.   Accordingly:  the aiding and abetting breach of fiduciary duty claim is premised on the implied covenant of good faith and fair dealing, which does not create a fiduciary duty; it is duplicative of the Debtors' claim for breach of contract; the Debtors bring the claim under only Delaware law, while the Debtors are incorporated across multiple states; and the Debtors do not plausibly allege any specific facts meeting any of the elements of this claim. Each of these deficiencies is a sufficient basis for judgment on this claim in Onset's favor.

**E.   The Debtors fail to adequately plead the tortious interference with contract claims (Counts VII & IX).**

108.   The Debtors fail to plead non-conclusory facts sufficient to satisfy the elements of their tortious interference claim. Under both Ohio and Delaware law, the elements for tortious interference with a contract are substantially similar:  (i) there must be a valid contract, (ii) about which defendant knew, (iii) an intentional act that is a significant factor in causing the breach of such contract, (iv) without justification, (v) which causes injury. *Anderson v. Wachovia Mortg.*

---

[129]   *See id.* ¶¶ 147–48 ("Upon information and belief, Onset knew that, as Debtors' officer and manager, Edward James would have owed such standard duties to the Debtors, and that the Onset Transactions and personal investment in them was plainly violative of such duties. . . . Onset induced Edward James to join and implement the scheme in violation of his obligations and duties.").

55

FBG_CH1_00090199

*Corp.,* 497 F. Supp. 2d 572, 583 (D. Del. 2007); *Bunn Enters., Inc. v. Ohio Operating Eng'rs Fringe Ben. Programs,* 7 F. Supp. 3d 752, 759 (S.D. Ohio 2014), *aff'd,* 606 F. App'x 798 (6th Cir. 2015). No elements are properly pled, and judgment on this claim is warranted.

109. *First,* and at the threshold, the Debtors' tortious interference with contract claims fail because they do not sufficiently plead any underlying breach of contract. This is an essential predicate to such claims. *Goldman v. Pogo.com, Inc.,* No. CIV.A. 18532-NC, 2002 WL 1358760, at *8 (Del. Ch. June 14, 2002) ("A claim of tortious interference with a contractual right requires, *inter alia,* a contract, a breach of that contract, and an injury."); *BCG Masonic Cleveland, LLC v. Live Nation Ent., Inc.,* 570 F. Supp. 3d 552, 558 (N.D. Ohio 2021) ("A claim for tortious interference with a contract requires the plaintiff to prove, as an element, an actual breach of contract." (quoting *Lamson & Sessions Co. v. Peters,* 576 F. App'x 538, 542 (6th Cir. 2014))).

110. Importantly, the Debtors "must identify the ***particular contractual terms*** that were breached." *Travelers Cas. & Sur. Co. of Am. v. Blackbaud, Inc.,* No. N22C-12-130 KMM, 2024 WL 1298762 at *9 (Del. Super. Ct. Mar. 27, 2024) (citation and internal quotation marks omitted) (emphasis added). The Debtors fail to identify ***any*** specific contractual provision that Ed allegedly breached in the LLC agreements and/or the employment agreements, relying instead on vague references to unspecified "fiduciary and contractual duties" and "standard terms."[130] Such allegations, untethered to any contractual text, do not state a breach of contract, and therefore cannot support any alleged tortious interference on Onset's part. *See Textron Inc. v. Endurance Am. Ins. Co.,* 346 A.3d 639, 654 (Del. Super. Ct. 2025) ("[The claimant] must establish an 'express

---

[130] *Id.* ¶¶ 198, 145, 211.

FBG_CH1_00090200

**DEBTORS' EXHIBIT NO. 174**
**Page 74 of 99**
**JOINT EXHIBIT NO. 50**
**Page 74 of 99**

contractual obligation that was breached' to proceed on a breach of contract claim." (internal citation omitted)).[131]

111.    *Second*, and more fundamentally, the Debtors fail to allege that Onset had actual knowledge of the specific terms of the LLC agreements and the employment agreements.  Under both Ohio and Delaware law, tortious interference claims require actual knowledge of the contract's specific terms. *See Becker v. Cardinal Health, Inc.*, 179 N.E.3d 769, 779 (Ohio Ct. App. 2021) ("[C]onstructive knowledge is not sufficient to sustain a cause of action for tortious interference with contract, actual knowledge is required."); *Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.*, C.A. No. N15C-06-245 CEB, 2017 WL 1842899, at *16 n.126 (Del. Super. Ct. Apr. 20, 2017) ("There must be proof that the defendant knew about the specific clause in the contract with which it is alleged he interfered").  Courts will not impose a duty of inquiry or infer knowledge from surrounding circumstances.  *See Anesthesia Servs., P.A. v. Anesthesia Advantage, P.C.,* No. CV N11C-03-005 MJB, 2013 WL 3352672, at *4 (Del. Super. Ct. June 27, 2013) ("This Court is reluctant to impose a duty of inquiry . . . or find constructive knowledge of the restriction to be sufficient to establish actual or imputed knowledge.").

112.    Here, in addition to failing to allege any specific contractual terms, the Debtors allege no facts demonstrating Onset's ***actual*** knowledge of any of these (apparently unknown) contractual terms.  They merely assert that "Onset knew or acted with reckless disregard of the

---

[131] Nor can the Debtors salvage their claim by invoking the implied covenant of good faith and fair dealing. *See id.* ¶¶ 146, 198 204, 205.  The implied covenant is a narrow doctrine that operates only to fill contractual gaps; it cannot be used to rewrite agreements or impose obligations that the parties did not bargain for. *See Allen v. El Paso Pipeline GP Co.*, 113 A.3d 167, 182 (Del. Ch. 2014), *aff'd*, 2015 WL 803053 (Del. Feb. 26, 2015) ("The implied covenant of good faith and fair dealing is the doctrine by which Delaware law cautiously supplies terms to fill gaps in the express provisions of a specific agreement."); *see also McGrath v. Nationwide Mut. Ins. Co.*, 295 F. Supp. 3d 796, 808 (S.D. Ohio 2018) ("There can be no implied covenants in a contract in relation to any matter specifically covered by the written terms of the contract itself." (quoting *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Co.*, 714 N.E.2d 898 (Ohio 1999))).  The Debtors do not allege the existence of any contractual gap—let alone explain why the express terms of the LLC agreement are insufficient—and thus any allegation of breach relying solely on the implied covenant must fail.

FBG_CH1_00090201

facts that Edward James, as a manager and officer of the Debtors, would be bound by fiduciary and contractual duties"[132] and would "serve the Company faithfully and to the best of his ability[.]"[133]   These conclusory allegations are nothing more than assumptions based on Ed's purported titles and are insufficient as a matter of law.  The Debtors offer no explanation as to how or why Onset would have known the specific terms of Ed's agreements or that particular conduct violated them.  This pleading deficiency alone warrants judgment in favor of Onset.[134]

113.   *Third*, the Debtors also fail to allege any intentional act by Onset that was a significant factor in causing a breach.  They rely entirely on conclusory allegations that Onset "intentionally" caused Ed to breach his (once again, unidentified) agreements by "engaging in the scheme" and "entering into the Onset Transactions.[135]  But the Debtors identify no specific conduct alleging Onset asked, induced, or procured any breach by Ed.  *See Truinject Corp. v. Galderma, S.A.*, No. 19-CV-592-LPS-JLH, 2020 WL 5095448, at *5 (D. Del. Aug. 28, 2020), *report and recommendation adopted*, 2020 WL 6817088 (D. Del. Nov. 20, 2020) (dismissing claim for failure to allege defendants "asked or induced" breach); *Enduring Wellness, L.L.C. v. Roizen,* No. CV-19-909042, 2020 WL 3001027 at *4 (Ohio Ct. App. June 4, 2020) ("[E]ven assuming a breach occurred, the complaint fails to allege that Roizen intentionally procured the contract's breach.").

---

[132]   Compl. ¶ 205.

[133]   *Id.* ¶ 217.

[134]   As with the aiding and abetting fiduciary breach claim, Ed's exculpation for liability under the LLC Agreements is fatal to this claim.  The Debtors fail to allege that Ed was not exculpated.  Accordingly, they fail to allege that there is an underlying breach, and this element of their argument fails therefore with respect to tortious interference with the LLC Agreements.  *See Clingman & Hanger Mgm't Assocs. LLC*, 701 F. Supp. 3d at 588.

[135]   *See* Compl. ¶¶ 218 ("By engaging in the scheme with James and entering into the Onset Transactions, Onset knowingly, wrongfully, intentionally, and without justification caused Edward James to breach the Employment Agreement and the obligations set forth therein"), 206 ("By engaging in the scheme with Edward James and entering into the Onset Transactions, Onset knowingly, wrongfully, intentionally, and without justification caused Edward James to breach the LLC Agreements and the obligations set forth therein.").

58

FBG_CH1_00090202

114.    Nor do the Debtors allege that that any action by Onset was a "significant" or "substantial" factor in causing Ed to breach. To the contrary: the Debtors allege that Ed acted on his own accord, in his own self-interest, and not at Onset's behest.[136]  It cannot be shown that Onset induced an alleged breach to any extent, so the tortious interference claims must fail. *See Vornado PS, L.L.C. v. Primestone Inv. Partners, L.P.,* 821 A.2d 296, 318 (Del.Ch. 2002), *aff'd,* 822 A.2d 397 (Del. 2003) ("To prevail on its [tortious interference] claim, [plaintiff] must show "there would not have been a breach *but for* the activities of [defendant]." (quoting *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990)) (emphasis added)).

115.    *Fourth*, even if intent were adequately alleged (it is not), a tortious interference claim still fails unless the defendant's conduct was independently wrongful and without justification. *See Syed v. Poulos*, No. CV-14-826625, 2016 WL 3020066, at *3 (Ohio Ct. App. 2016). Critically, the Debtors must allege that Onset's "sole motive" was to interfere with Ed's contracts. *See WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012) ("Only if the defendant's *sole* motive was to interfere with the contract will this factor support a finding of improper interference." (emphasis in original)).  Where, by contrast, a defendant acts to advance its own legitimate economic interests, that conduct is not "improper" as a matter of law, absent allegations of malice or illegality. *See Foster v. Churchill*, 665 N.E.2d 153, 156 (N.Y. 1996) ("[E]conomic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality."); *Franklin Tractor Sales v. New Holland*

---

[136]  *See id.* ¶¶ 146 ("On information and belief, Edward James also did not fully disclose the material terms of his self-interest in the Onset Transactions and the extent to which he colluded with Onset on structuring them to his and Onset's own benefit."), 127 ("Furthermore, the obligations incurred and transfers made to the Debtors, via the Carnaby Entities, were for the benefit of an insider, Edward James, who was a co-conspirator with, and joint-venturer and partner of, Onset."); *see also* James Brothers Indictment ¶ 23 ("The financing arrangements with the Off-Sheet Lenders were directed by PATRICK JAMES, the defendant, negotiated by EDWARD JAMES, the defendant, and implemented through a series of deliberate and coordinated acts of fraud designed to conceal debt, mislead lenders, and obscure the true source and use of funds.").

FBG_CH1_00090203

**DEBTORS' EXHIBIT NO. 174**
**Page 77 of 99**
**JOINT EXHIBIT NO. 50**
**Page 77 of 99**

*N. Am., Inc.*, 106 F. App'x 342, 345–46 (6th Cir. 2004) (finding privilege for an equipment manufacturer's strategy to allow direct sales, despite negative impact to distributors); *Couzens v. Union Bank & Tr. Co.*, 234 N.E.3d 661, 666 (Ohio Ct. App. 2024) (finding legitimate business interest privilege when a bank conditioned future business with church on termination of plaintiff-pastor regardless of whether such condition interfered with plaintiff's employment contract).

116.    The face of the Complaint confirms that Onset's "sole motivation" was far from interfering with Ed's contracts and was instead motivated by proper economic interests.  The Debtors' own allegations confirm that Onset entered into ordinary course commercial transactions at the request of the debtors.[137]  And throughout the multi-year business relationship with First Brands, the allegations make clear that Onset undertook actions to protect its investments and preserve the viability of its business dealings.[138]  That is ordinary commercial activity—precisely the type of lawful economic-interest conduct that defeats a tortious interference claim at the threshold.

117.    *Finally*, a tortious interference claim independently fails where a plaintiff does not plead damages distinct from the underlying breach.  *N. Canton Bd. of Educ. v. AT&T Inc.*, Case No. 5:16-cv-1420, 2017 WL 4430251, at *3 (N.D. Ohio Oct. 5, 2017) ("As a consequence, plaintiff's complete failure to allege such additional damages is not merely a flaw in its pleading.

---

[137]   Compl. ¶ 77 ("First Brands' relationship with Onset began in 2018.  Allegedly, Onset was first brought in when a First Brands employee responded to a 'cold call' by asking if Onset would do a deal that First Brands' banking partner had refused to participate in.  Beginning in May 2018, the Company entered a series of "direct" lease transactions with Onset."); Answer ¶ 77 ("Onset admits that beginning in May 2018, First Brands and Onset entered into the transactions relating to inventory, furniture, fixtures, manufacturing, and other equipment.").

[138]   *See* Compl. ¶¶ 87 ("Upon information and belief, these transfers from Onset to Edward James were funded by transfers made by the Plaintiffs to Onset."), 124 ("[T]he Forbearance Agreements could be used to show potential lenders or buyers who might become or remain interested in refinancing Onset's debt or otherwise providing the James' with the means of paying it.  This directly benefited Onset and Edward James."); *see generally* James Brothers Indictment; *see also* Answer ¶¶ 145–48 (denying involvement in the scheme or knowledge of the agreements).

FBG_CH1_00090204

Rather . . . that failure is fatal to its claim." (emphasis in original)); *OptimisCorp v. Waite,* C.A. No. 8773-VCP, 2015 WL 5147038, at *79 (Del. Ch. Aug. 26, 2015) ("There also has been no effort to quantify the purported harm to Optimis, if any, caused by the delay in not receiving financing. Thus, . . . Plaintiffs' claim for tortious interference with the B of I financing will be dismissed."). The Debtors here allege no specific damages stemming from Onset's alleged interference. The Debtors offer only a conclusory assertion that they and their creditors "suffered damages,"[139] without identifying any distinct loss, estimate, or causal link to the alleged interference. That is insufficient as a matter of law. Onset is entitled to judgment on this claim.

F.      **The Debtors fail to adequately plead the recharacterization claim (Count XII).**

118.    The Debtors ask this Court to recharacterize the Sale Leaseback Transactions as secured financing transactions under Section 105(a) of the Bankruptcy Code.[140] But the Fifth Circuit does not recognize a recharacterization claim under Section 105(a). *See In re Lothian Oil Inc.,* 650 F.3d 539, 542–43 (5th Cir. 2011) (concluding that recharacterization is part of the bankruptcy court's authority to disallow claims under section 502(b)); *In re Equip. Equity Holdings, Inc.,* 491 B.R. 792, 851 (Bankr. N.D. Tex. 2013) ("[T]he authority of bankruptcy courts to recharacterize debts is derived from the authority to allow or disallow claims under section 502(b) of the Bankruptcy Code rather than from the general equitable powers of bankruptcy courts under section 105(a) of the Bankruptcy Code."). Accordingly, the Debtors fail to adequately plead a recharacterization claim on this basis alone.[141]

---

[139]    Compl. ¶ 207; *see also id.* ¶ 219 ("Debtors and their creditors suffered damages that were proximately caused by Onset's tortious interference with the Employment Agreement").

[140]    *Id.* ¶ 240.

[141]    It is the Debtors' burden to conduct a reasonable inquiry into the law and plead claims that are adequately grounded in law. *See Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Hou., Tex.,* 260 F. Supp. 3d 738, 756 (S.D. Tex. 2017), *aff'd sub nom. Residents Against Flooding v. Reinvestment Zone No. Seventeen,* 734 F. App'x 916 (5th Cir. 2018) ("Dismissal under Rule 12(b) (6) is proper not only where the

61

FBG_CH1_00090205

**DEBTORS' EXHIBIT NO. 174**
**Page 79 of 99**
**JOINT EXHIBIT NO. 50**
**Page 79 of 99**

119.    Looking properly to Section 502(b) of the Bankruptcy Code, the Fifth Circuit applies applicable state law to recharacterization claims.  *Lothian Oil*, 650 F.3d at 542 ("Our analysis of 'applicable law' under § 502(b) is therefore an application of state law."); *Equip. Equity,* 491 B.R. at 852 (noting that in following the standard articulated by *Lothian Oil*, the court "must decide **what state law** is the 'applicable law' for the purposes of evaluating the Plaintiffs' recharacterization argument").  Yet the Debtors do not identify which state's law governs their claim.  Nor do they plead (i) governing law provisions for the relevant leases, (ii) the respective locations for assets governed by specific leases, or (iii) the relevant transferors—facts necessary for a meaningful choice-of-law analysis.  Without these foundational allegations, the Court cannot evaluate this claim, and judgment is proper for the Debtors' failure to plead sufficient facts.  *See Enigma Holdings, Inc. v. Gemplus Int'l S.A.*, 2006 WL 2859369, at *7 ("[C]hoice of law is a threshold inquiry that must be made before the Court can adequately address the sufficiency of the pleadings.").

### G.    The Debtors fail to adequately plead the avoidance claim (Count XIII).

120.    If the Onset Transactions are recharacterized, the Debtors seek to avoid certain security interests in inventory and PP&E held by Onset against the FBG Debtors under Section 544(a) of the Bankruptcy Code.[142]  That theory fails as pled.  "Under § 544, the debtor can avoid any conveyance as a hypothetical lien creditor if the conveyance is unperfected when the case begins."  *In re ProvideRx of Grapevine, LLC*, 507 B.R. 132, 167 (Bankr. N.D. Tex. 2014).  The validity of and perfection of a lien—and thus the rights of a hypothetical lien creditor—are determined by applicable state law.  *See In re Clifford*, 566 F.2d 1023, 1025 (5th Cir. 1978) ("State

---

plaintiff fails to plead sufficient facts to support a cognizable legal theory, but also where the plaintiff fails to allege a cognizable legal theory.").

[142]  Compl. ¶¶ 241–49.

FBG_CH1_00090206

DEBTORS' EXHIBIT NO. 174
Page 80 of 99
JOINT EXHIBIT NO. 50
Page 80 of 99

law determines the rights of a judgment lien creditor as against other claimants."); *In re Coral Petroleum, Inc.*, 50 B.R. 830, 836 (Bankr. S.D. Tex. 1985) ("Under 11 U.S.C. § 544(a), the rights of a judicial lien creditor are to be determined by state law."). The Debtors do not plausibly allege that Onset's security interests were unperfected or otherwise avoidable under governing state law as of the Petition Date.

121. *First,* in addition to failing to identify which governing state law governs this claim, the Debtors have not identified the specific inventory or PP&E at issue, nor where the alleged assets at issue are located. The Debtors' pleadings must put Onset on notice of the Debtors' claims and the grounds upon which they rest, *Atascocita Realty Inc.*, No. H-10-4519, 2012 WL 423395 at *2 (S.D. Tex. Feb. 8, 2012), and here again the Debtors have failed to do so. Notwithstanding these pleading deficiencies, assuming either Delaware or Ohio law governs, the Debtors fail to adequately plead an avoidance claim under either Delaware or Ohio law because Onset's interests have priority over that of a hypothetical judicial lien creditor.

122. Under Delaware law, "a prior perfected secured creditor has priority over a later lien creditor." *Navient Sols., LLC v. BPG Off. Partners XIII Iron Hill LLC*, 315 A.3d 1164, 1175 (Del. Super. Ct. 2024); *see also id.* at 1180 (finding that prior perfected secured creditor had priority over subsequent lien creditor pursuant to the clear priority set forth in section 9-317 of Delaware's Uniform Commercial Code and the secured creditor was not required to take remedial action to preserve its priority). Here, Onset is a prior perfected secured creditor and, consequently, has priority over a hypothetical lien creditor exercising avoidance powers under Section 544(a).

123. The Debtors' claim fares no better under Ohio law. Under Ohio law, "[c]onflicting perfected security interests rank according to priority in time of perfection. A perfected security interest has priority over a conflicting unperfected security interest . . . And between two

FBG_CH1_00090207

DEBTORS' EXHIBIT NO. 174
Page 81 of 99
JOINT EXHIBIT NO. 50
Page 81 of 99

unperfected interests, the first security interest to attach has priority." *In re Fair Fin. Co.*, 13 F.4th 547, 554 (6th Cir. 2021) (citation modified); *see also id.* at 555 (finding creditor's bad faith did not render its perfected interest "[in]effective against the holder of a judicial lien subsequently obtained in a hypothetical UCC priority contest," because "[t]he UCC's priority rules help answer only one question—priority among competing creditors." (internal quotation marks and citations omitted)).  The Debtors cannot rely on Section 544(a)'s avoidance power, because the status of hypothetical creditor is conferred upon the commencement of the case, and "the commencement of the case is synonymous with the filing of the bankruptcy petition." *In re Zedda*, 103 F.3d 1195, 1201 (5th Cir. 1997).  Here, Onset has priority over a hypothetical lien creditor because Onset perfected its interests prior to the commencement of the case.[143]

124.    *Second*, the Debtors make contradictory allegations regarding Onset's alleged security interests in the FBG Debtors.  In the body of the Complaint, the Debtors allege that "[b]eginning on or about September 13, 2025—just days before the Petition Date—Onset . . . caused UCC-1 financing statements to be filed for its benefit against FBG entities."[144]  Then, in an about face, the Debtors allege that "[a]s of the Petition Date, Onset had not filed applicable UCC-1 financing statements in the applicable jurisdictions against any of the FBG Debtors."[145]  Either Onset filed UCC-1s against the FBG Debtors or it did not.  These conflicting statements warrant judgment against the claims resting on them.  "Where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss. Thus, this claim should fail." *Perry v. Lockhart, Morris & Montgomery, Inc.*, No. 3:24-CV-00021, 2024 WL 1840484, at

---

[143]   *Id.* ¶ 104.
[144]   *Id.*
[145]   *Id.* ¶ 245.

FBG_CH1_00090208

*4 (S.D. Tex. Apr. 26, 2024), *report and recommendation adopted*, 2024 WL 2193404 (S.D. Tex. May 15, 2024).

125.    *Third*, and in the alternative:  as the Debtors themselves allege that Onset did file UCC-1 financing statements against the FBG Debtors beginning on September 13, 2025,[146] such interests are perfected and cannot be avoided by a hypothetical judgment creditor.  Del. Code Ann. tit. 6, § 9-317; Ohio Rev. Code Ann. § 1309.317.  Filing a financing statement perfects a security interest, and "communication of a record to a filing office and tender of the filing fee or acceptance of the record by the filing office constitutes filing."  Del. Code Ann. tit. 6, §§ 9-310, 9-516; Ohio Rev. Code Ann. §§ 1309.310, 1309.516.  By the Debtors' own allegations, Onset satisfied these requirements.

126.    Unable to dispute the filings, the Debtors instead contend that Onset lacked "prior approval" from either Carnaby Debtor to perfect its security interests.[147]  But the Debtors simply ignore the facts that contradict its allegations.  The Carnaby Debtors expressly authorized Onset to file UCC-1 financing statements and related filings in the lease agreements[148] between Onset and the Carnaby Debtors.[149]  The Debtors cannot plead around those contractual authorizations with conclusory allegations that are belied by the very documents on which the Debtors rely.  Onset was expressly authorized to file UCC-1 financing statements by the Carnaby Debtors against the

---

[146]    *Id.* ¶ 104; Answer ¶ 104.

[147]    Compl. ¶ 104.

[148]    MASTER LEASE AGREEMENT NO. OF11445416, June 28, 2022; MASTER LEASE AGREEMENT NO. OF11445416 June 28, 2022, attached to the Answer as Exhibits 23 & 24 ("Master Leases").  The Debtors rely on the Master Leases to assert certain allegations in the Complaint.  *See* Compl. ¶¶ 102–03, 117, 143.

[149]    *See* Master Lease Agreement No. OF11445416, § 20p ("Lessee hereby authorizes Lessor to file UCC-1 financing statements, fixture filings, real property waivers, and all other filings and recordings, as may be deemed necessary by Lessor that includes collateral descriptions that are consistent with the Property. Lessee hereby authorizes and/or ratifies the filing of any UCC-1 financing statements by Lessor before or after the execution of this Lease.") Master Lease Agreement No. OF11545465, § 20p (same).

FBG_CH1_00090209

FBG Debtors, did so prepetition, and thus its security interests were perfected as of the Petition Date.

127.    Accordingly, Onset held no unperfected security interests as of the Petition Date, and there is nothing for the Debtors to avoid and recover under Section 544(a).

**H.    The Debtors fail to adequately plead the declaratory judgment claims (Counts XIV-XVII).**

128.    The Debtors' claims for declaratory judgment, too, are infirm.  The allegations supporting such claims are entirely conclusory and are therefore insufficient to put Onset on notice of any of the declaratory judgment claims against it, as required under Rule 8 and discussed *supra* in Section I.A.  *See Villarreal v. Capital One, N.A.*, No. H-14-3423, 2015 WL 12766256, at *2 (S.D. Tex Feb. 9, 2015) (dismissing complaint since it was "impossible to discern the substance of [p]laintiff's actual allegations against" defendant).  Judgment on the pleadings is therefore warranted.

129.    Further, the Debtors improperly ask this Court to decide the rights and interests of a non-party.  In Count XVI of the Complaint, the Debtors ask this Court to render a declaratory judgment finding that certain Mexican manufacturers (the "Maquiladoras Entities") did not have legal or equitable title to the assigned inventory and PP&E transferred to Onset, and accordingly, could not transfer title or equitable interest directly or indirectly to Onset.[150]  But the Maquiladoras Entities are not named parties in this adversary proceeding.[151]  Since this Court does not have the ability to issue declaratory relief concerning the rights and interests of a non-party, Count XVI fails.  *See Byman v. RRL Cap. Invs., LLC (In re Providence Hosp. of N. Houston, LLC)*, 653 B.R. 612, 624–25 (Bankr. S.D. Tex. 2023); *Smith v. US Health Res. & Servs. Admin.*, No. CV 23-1425,

---

[150]    *See* Compl. ¶¶ 263–69.

[151]    *See generally id.*

66

DEBTORS' EXHIBIT NO. 174
Page 84 of 99
JOINT EXHIBIT NO. 50
Page 84 of 99

2025 WL 3124848, at *5 (W.D. La. Sept. 30, 2025) (concluding that "the relief sought is not likely to redress [p]laintiffs' alleged constitutional injuries because the intended defendants of [p]laintiffs' tort claims are nonparties who would not be bound by this Court's judgment").

**I.      The Debtors fail to adequately plead the equitable subordination claim (Count XX).**

130.     Equitable subordination, an extraordinary discretionary remedy applied only in limited circumstances, is not adequately pled here and is unwarranted. *See In re Jack Kline Co.*, 440 B.R. 712, 742-43 (Bankr. S.D. Tex. 2010).  To be entitled to equitable subordination as a remedy, the proponent must show that "(1) the claimant . . . engaged in inequitable conduct; (2) the misconduct . . . resulted in injury to the creditors or conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code." *In re SI Restructuring, Inc.*, 532 F.3d 355, 360 (5th Cir. 2008) (citing *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977)); *see also In re Nw. Senior Housing Corp.*, No. 22-30659-mvl11, 2024 WL 2822148, at *9 (Bankr. N.D. Tex. June 3, 2024) (applying the same requirements in considering a motion for judgment on the pleadings).  The Debtors do not sufficiently allege any of these requirements. *See In re Schuette*, No. 07-1067-R, 2008 WL 77767, at *3 (Bankr. N.D. Okla. Jan. 4, 2008) (dismissing equitable subordination claim premised on "conclusory allegations" incorporating exhibit that failed to describe inequitable conduct).

131.     Foremost, the Debtors do not allege that Onset engaged in inequitable conduct. Inequitable conduct may include "(1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; [or] (3) when a third party actually defrauds other creditors." *In re U.S. Abatement Corp.*, 39 F.3d 556, 561 (5th Cir. 1994); *see also In re Nw. Senior Housing Corp.*, 2024 WL 2822148, at *9 (noting equitable subordination is appropriate in the same three scenarios in the

67

FBG_CH1_00090211

**DEBTORS' EXHIBIT NO. 174**
**Page 85 of 99**
**JOINT EXHIBIT NO. 50**
**Page 85 of 99**

context of a motion for judgment on the pleadings). Here, the Debtors do not allege—and cannot plausibly allege—that Onset was a fiduciary of the Debtors. Nor do the Debtors sufficiently allege facts showing that Onset exercised control over the Debtors; Onset does not, and had no ability to, control the Debtors to the disadvantage of other creditors. And most importantly, as discussed at length herein,[152] the Debtors fail to plead that Onset is an insider of the Debtors under Bankruptcy Code or otherwise, which is damning: "[t]he most important factor in determining if a claimant has engaged in inequitable conduct for the purposes of equitable subordination is whether the claimant was an insider or outsider in relation to the debtor at the time of the act." *In re Mid-Am. Waste Sys.*, 284 B.R. 53, 69 (Bankr. D. Del. 2002).

132. Further, the Debtors fail to allege any injury to creditors or unfair advantage resulting from Onset's conduct. Instead, the Debtors describe ordinary commercial dealings conducted at arms' length, and acknowledge that the parties' business dealings conferred only the benefits for which the parties bargained.[153] This is neither unfair nor harmful. In fact, the Debtors' allegations reveal that ***Onset*** itself was harmed, rather than effecting harm on others. Onset entered into these transactions in reliance on false information and material misrepresentations by Ed and other officers of the Debtors.[154] Onset's actions did not injure other creditors or earn Onset an unfair advantage. Any misconduct is instead properly laid at the feet of Ed and his insider co-conspirators.

133. As the Debtors fail to allege that Onset engaged in inequitable conduct or that Onset caused any injury, their equitable subordination claim fails.

---

[152] *See infra* Section III.C.iii.b.

[153] *See* Compl. ¶ 103 (describing frequent contracting between Debtors and Onset).

[154] *See e.g., id.* ¶ 117 ("The Leases expressly required the FBG Debtors to acknowledge Onset's ability to take away this business property.").

FBG_CH1_00090212

**DEBTORS' EXHIBIT NO. 174**
**Page 86 of 99**
**JOINT EXHIBIT NO. 50**
**Page 86 of 99**

**J.      The Debtors fail to adequately plead the unjust enrichment claim (Count XIX).**

134.    The Debtors' unjust enrichment claim fails for at least three reasons: (i) the alleged dispute is governed by contract, (ii) the claim is duplicative of the fraudulent transfer claims, and (iii) the Debtors fail to sufficiently plead the elements of the claim.

135.    *First*, unjust enrichment claims are precluded when the dispute is governed by a valid, express contract over the subject matter. *See Akula v. Telestax, Inc.*, No. 17-1740-CJB, 2018 WL 5004862, at *1 (D. Del. Oct. 11, 2018) (dismissing unjust enrichment claim where there was a valid contract that governed the obligations of the parties); *Mitchell v. Ca. Cas. Gen. Ins. Co. of Or.*, No. 3:18-CV-228, 2019 WL 6877648, at *2 (S.D. Ohio Dec. 17, 2019) (same).  The subject contracts here preclude this claim.

136.    As pled, the Debtors' unjust enrichment claim arises entirely from contractual negotiations and performance.  For example, the Debtors allege that they did not "receive reasonably equivalent value" *through their contractual arrangements with Onset* and, as a result, were "left burdened with liabilities without corresponding assets or value."[155]  The Debtors further allege that they were harmed because *their contracts with Onset* imposed "exorbitant," "above-market," or "predatory" financial obligations.[156]  Because any alleged enrichment by Onset resulted from these contractual agreements,[157] no unjust enrichment claim will lie.  Given the admitted presence of these contractual relationships, the Debtors' unjust enrichment claim fails.

137.    *Second*, an unjust enrichment claim that "rises and falls with [a] fraud claim" such that "the attempt to plead unjust enrichment as a separate claim adds nothing" must fail.  *Berry v.*

---

[155]   *Id.* ¶ 307.
[156]   *Id.* ¶¶ 80, 81, 86.
[157]   *Id.* ¶¶ 307–08

FBG_CH1_00090213

**DEBTORS' EXHIBIT NO. 174**
**Page 87 of 99**
**JOINT EXHIBIT NO. 50**
**Page 87 of 99**

*Indianapolis Life Ins. Co.,* No. 3:08-CV-0248-B, 2011 WL 3555869, at *9 (N.D. Tex. Aug. 11, 2011) (holding that unjust enrichment claims should be dismissed because if plaintiffs were to succeed on their fraud claims, they may seek restitution which is "synonymous with unjust enrichment as a remedy"); *In re Bos. Generating LLC*, 617 B.R. 442, 475–76 (Bankr. S.D.N.Y. 2020) (dismissing unjust enrichment claim because it arose from the "same wrongdoing" underlying the fraudulent transfer claims and thus was "duplicative"). Here, the Debtors' unjust enrichment claim is premised on the same allegations as the fraudulent transfer claims. *See Bos. Generating*, 617 B.R. at 475–76. For example, in support of unjust enrichment, the Debtors plead that Onset "was enriched and received economic benefits from the Debtors through the receipt of funds and purported transfer of interests in PP&E and inventory from Debtors via the Onset Transactions."[158] Similarly, as to the actual fraudulent cash transfer claim, the Debtors allege that Onset implemented a fraudulent scheme through the Onset Transactions which included "transfers of inventory, PP&E, and cash"[159] under which Onset obtained "more than $2.9 billion."[160] Both the actual fraudulent cash transfer claim and this claim rest on the same factual allegations—the allegedly fraudulent scheme involving the transfers of the Debtors' PP&E and inventory.[161] The unjust enrichment claim therefore has no unique value and is duplicative. *See Javo Beverage Co. v. Javy Coffee Co.*, C.A. No. 22-547-RGA, 2023 WL 387587, at *3 (D. Del. Jan. 25, 2023) (dismissing an unjust enrichment claim on the basis that trademark claims provided an adequate remedy at law, and if the trademark claims were unproven, then Defendants would have done nothing wrong).

---

[158]  *Id.* ¶ 304.
[159]  *Id.* ¶ 159.
[160]  *Id.* ¶ 152.
[161]  *Compare id.* ¶¶ 159–60 *with id.* ¶¶ 307, 310.

FBG_CH1_00090214

138.  *Finally*, even if this claim could possibly survive the foregoing infirmities, the Debtors have failed to sufficiently plead the elements of an unjust enrichment claim under both Delaware and Ohio law.[162]

139.  Under Ohio law, a plaintiff must sufficiently plead:  (1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge of the benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Bihn v. Fifth Third Mortg. Co.,* No. 3:13-CV-00057, 2013 WL 5657598, at *5 (S.D. Ohio Oct. 16, 2013).  The Debtors do not plausibly allege these elements.  The Debtors merely assert that Onset benefitted through the receipt of vague "funds" and "purported transfer of interests in PP&E and inventory."[163]  Such allegations leave "too much to the imagination" and fail to adequately plead that any benefit was actually conferred.  *Wick v. Ach,* 139 N.E.3d 480, 486 (Ohio Ct. App. 2019) ("Simply pleading . . . that the other party was unjustly enriched by keeping money that 'properly belongs' to [plaintiff]" was not enough to establish a benefit conferred.).

140.  Additionally, the Debtors fail to plead the required "superior equity" showing that it would be "unconscionable" for Onset to retain the benefit.  *See DavCo Acquisition Holding, Inc. v. Wendy's Int'l, Inc.*, No. 2:07-CV-1064, 2008 WL 755283, at *13 (S.D. Ohio Mar. 19, 2008). As mentioned above, any value exchanged was governed by contracts, which were negotiated at arms' length and voluntarily entered into by both parties.  And the equipment was not freely transferred to Onset; it was paid for in full.  The Debtors therefore fail to meet their burden under Ohio law.

---

[162]  As described herein, the Debtors fail to sufficiently allege the governing law applicable to this claim, or the facts necessary to make that determination.  Failure to plead the relevant state law is particularly consequential here, where certain states prohibit an independent cause of action for unjust enrichment, such as Texas.  *See Redwood Resort Props., LLC v. Holmes Co.,* 2006 WL 3531422, at *9 (N.D. Tex. Nov. 27, 2006) (dismissing unjust enrichment claim and holding that it is not an independent cause of action).

[163]  Compl. ¶¶ 304–05.

71

FBG_CH1_00090215

141.   This claim similarly fails under Delaware law.  Under Delaware law, a plaintiff must plead (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law. *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

142.   Again, the Debtors do not plausibly allege these elements.  In particular, the Debtors fail to plead a clear and direct relation between the alleged impoverishment and any purported enrichment.  At most, the Debtors allege that there is a "close and proximate relationship between Onset's enrichment and the Debtors' losses, as Onset conspired with Edward James to siphon funds away from the Debtors' themselves."[164]  But mere recitation of a relationship between the alleged enrichment and impoverishment does not suffice without facts explaining "the requisite causal nexus between the alleged wrongful conduct" and "the injuries suffered." *Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 485 (D. Del. 2010).

143.   Further, the Debtors fail to plead the absence of justification.  The alleged benefits purportedly received by Onset—"receipt of funds and purported transfers of interests in PP&E and inventory from the Debtors via the Onset Transactions"[165]—were conferred pursuant to written transaction documents negotiated and executed by agents of the Debtors.  "[T]here can be no unjust enrichment claim when there is a binding contract between the parties." *Garrett v. PNC Mortg. Co.*, No. 3:11-CV-02286-O, 2012 WL 527899, at *3 (N.D. Tex. Jan. 31, 2012) (citation omitted), *report and recommendation adopted*, 2012 WL 527898 (N.D. Tex. Feb. 16, 2012).  Simply reciting that Onset's retention of those benefits "has no lawful claim or justification"[166] is a conclusory

---

[164]   *Id.* ¶ 307.
[165]   *Id.* ¶ 304.
[166]   *Id.* ¶ 306.

72

FBG_CH1_00090216

**DEBTORS' EXHIBIT NO. 174**
**Page 90 of 99**
**JOINT EXHIBIT NO. 50**
**Page 90 of 99**

assertion, not a factual assertion. And the Debtors do not—and cannot—allege that Onset received any extra-contractual benefit to which it was not contractually entitled.

144. Additionally, there is no absence of a remedy provided by law. As discussed just above, the Debtors' unjust enrichment claim is "simply a recharacterization" of the Debtors' other fraud-based claims, which themselves fail. Because the Debtors' other alleged claims would provide—or would purport to provide—a remedy for the same conduct, an unjust enrichment claim is unavailable.

**K.      The Debtors fail to adequately plead the disallowance claim (Count XXII).**

145. The Debtors' claim for disallowance under Section 502(d) of the Bankruptcy Code fails as a matter of law because Section 502(d) does not create an independent cause of action. Rather, it is a remedial provision that may be invoked after a creditor has been adjudicated liable on an underlying claim. *See In re IFS Fin. Corp.*, No. 02-39553, 2008 WL 4533713, at *4 (Bankr. S.D. Tex. Oct. 2, 2008) (emphasizing the remedial nature of Section 502(d) in that it is intended to "serve as a mechanism to enforce orders and judgments").

146. Even if Section 502(d) could be pled in this posture, the Debtors' request is plainly premature. Section 502(d) is intended to be coercive (rather than punitive) and is designed to compel compliance with a final judgment. *See In re Davis*, 889 F.2d 658, 661 (5th Cir. 1989) ("The legislative history and policy behind Section 502(d) illustrates that the section is intended to have the coercive effect of insuring compliance with judicial orders"). As a result, Section 502(d) cannot apply until (i) there has been a final determination on liability and (ii) there has been a sufficient amount of time for the creditor to comply with any order and turn over property. *See id.* at 662 (holding that "[Section 502(d)] is designed to be triggered after a creditor has been afforded a reasonable time in which to turn over amounts adjudicated to belong to the bankruptcy estate."). Neither has occurred here; no liability has been established, and, given the multitude of

73

FBG_CH1_00090217

pleading deficiencies in the Complaint, it is unlikely that it ever will be.  The Debtors therefore cannot state a cognizable claim for disallowance under Section 502(d), and judgment for Onset on this claim must be entered.

## **CONCLUSION**

147.    For the reasons set forth herein, the Court should grant the Motion and enter judgment for Onset on all of the Onset Claims.

74

FBG_CH1_00090218

Dated: March 6, 2026
       Houston, Texas

**MUNSCH HARDT KOPF & HARR, PC**

*/s/ Deborah M. Perry*
Deborah M. Perry
Texas Bar No. 24002755
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com

-and-

*with respect to all Defendants except Wilmington Savings Fund Society, FSB; Bank of America, N.A.; Sagard Holdings Manager (US) LLC; GLAS USA LLC; Jefferies Finance LLC; GLAS Trust Company LLC; and UMB Bank, N.A.*

**MORRISON & FOERSTER LLP**
Carrie H. Cohen (admitted *pro hac vice*)
James Newton (admitted *pro hac vice*)
Ben Butterfield (admitted *pro hac vice*)
Bryan Kotliar (admitted *pro hac vice*)
250 West 55th Street
New York, NY 10019
Email: ccohen@mofo.com
Email: jnewton@mofo.com
Email: bbutterfield@mofo.com
Email: bkotliar@mofo.com

-and-

**MORRISON & FOERSTER LLP**
Anthony S. Fiotto (admitted *pro hac vice*)
Julia C. Koch (admitted *pro hac vice*)
200 Clarendon Street
Boston, MA 02116
Email: afiotto@mofo.com
Email: jkoch@mofo.com

-and-

FBG_CH1_00090219

**MORRISON & FOERSTER LLP**
Brian R. Michael (admitted *pro hac vice*)
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Email: bmichael@mofo.com

-and-

*with respect to all Defendants except Wilmington
Savings Fund Society, FSB; Bank of America, N.A.;
Sagard Holdings Manager (US) LLC; GLAS USA
LLC; Jefferies Finance LLC; GLAS Trust Company
LLC; and UMB*

**MILBANK LLP**
Dennis F. Dunne (*pro hac vice* forthcoming)
Lisa Laukitis (*pro hac vice* forthcoming)
Jason Kestecher (*pro hac vice* forthcoming)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530 5858
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
Email: llaukitis@milbank.com
Email: jkestecher@milbank.com

-and-

**MILBANK LLP**
Andrew M. Leblanc (*pro hac vice* forthcoming)
Erin E. Dexter (*pro hac vice* forthcoming)
1101 New York Avenue NW,
Washington, DC 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586
Email:  aleblanc@milbank.com
Email: edexter@milbank.com

*Attorneys for Onset Financial, Inc.*

FBG_CH1_00090220

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed on this 6th day of March 2026, with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

/s/ *Deborah M. Perry*
Deborah M. Perry

FBG_CH1_00090221

Case 26-03005   Document 32-1   Filed in TXSB on 03/06/26   Page 1 of 4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re<br><br>FIRST BRANDS GROUP, LLC *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-90399 (CML)<br><br>(Jointly Administered) |
| FIRST BRANDS GROUP, LLC *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ONSET FINANCIAL, INC. *et al.*,<br><br>Defendants. | Adv. Pro. No. 26-03005 (CML) |
| ONSET FINANCIAL, INC.,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>BRAKE PARTS INC LLC; CARDONE INDUSTRIES, INC.; CARNABY CAPITAL HOLDINGS, LLC; CARNABY CAPITAL, LLC; CARNABY FA HOLDINGS, LLC; CARNABY FA, LLC; CARNABY INVENTORY IV, LLC; CARTER FUEL SYSTEMS, LLC; CHAMPION LABORATORIES, INC.; DALTON CORPORATION; EAGLE CASTING HOLDINGS, LLC; EAGLE CASTING, LLC; FIRST BRANDS GROUP HOLDINGS, LLC; FIRST BRANDS GROUP, LLC; FRAMAUTO HOLDINGS, LLC; FRAM GROUP OPERATIONS LLC; HOPKINS MANUFACTURING CORPORATION; HORIZON GLOBAL AMERICAS INC.; HORIZON GLOBAL COMPANY LLC; TOLEDO MOLDING & | |

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands/.  The Debtors' service address for these chapter 11 cases (the "Chapter 11 Cases") is 127 Public Square, Suite 5300, Cleveland, OH 44114.

FBG_CH1_00090222

DIE, LLC; TRICO PRODUCTS
CORPORATION; TRICO
TECHNOLOGIES CORPORATION;
VICEROY PRIVATE CAPITAL, LLC; and
WALBRO LLC,

      Counterclaim Defendants.

ONSET FINANCIAL, INC.,

      Cross-Claim Plaintiff,

v.

EDWARD JAMES,

      Cross-Claim Defendant.

ONSET FINANCIAL, INC.,

      Third-Party Plaintiff,

v.

AIRTEX PRODUCTS, S.A.; BRAKE
PARTS INC INDIA LLC; CARNABY
INVENTORY HOLDINGS IV, LLC;
DALTON CORPORATION, WARSAW
MANUFACTURING FACILITY; EAGLE
MACHINING, LLC; FIRST BRANDS
GROUP INTERMEDIATE, LLC; JASPER
RUBBER PRODUCTS, INC.;
STRONGARM, LLC; BPI BRAKE
MANUFACTURING JUÁREZ, S.A. DE
C.V.; BPI BRAKE SYSTEM (QINGDAO)
CO., LTD.; BRAKE PARTS INDIA
PRIVATE LIMITED; CARDONE DE
MÉXICO, S. DE R.L. DE C.V.; CEQUENT
ELECTRICAL PRODUCTS DE MÉXICO,
S. DE R.L. DE C.V.; FRAM GROUP
OPERATIONS MEXICALI, S.A. DE C.V.;
FRAM GROUP OPERATIONS MEXICO
CITY, S.A. DE C.V.; HOPKINS
MANUFACTURING DE MÉXICO S. DE
R.L. DE C.V.; LONGKOU HAIMENG
MACHINERY CO., LTD.; PETERSON
AMERICAN CORPORATION;
SUBENSAMBLES INTERNACIONALES,

FBG_CH1_00090223

S. DE R.L. DE C.V.; TALLERES
MECANICOS MONTSERRAT, S.A. DE
C.V.; TRICO BELGIUM; TRICO
COMPONENTES, S.A. DE C.V.; TRICO
ITALY S.R.L.; TRICO WIPERS PLOIESTI
S.R.L.; TRIDONEX, S. DE R.L. DE C.V.;
ULTINON MOTION GERMANY GMBH
(F/K/A LUMILEDS GERMANY GMBH);
WALBRO LOS MOCHIS, S. DE R.L. DE
C.V.; WESTFALIA-AUTOMOTIVE
GMBH; WITTER BRASOV
S.R.L.;WILMINGTON SAVINGS FUND
SOCIETY, FSB; BANK OF AMERICA,
N.A.; SAGARD HOLDINGS MANAGER
(US) LLC; GLAS USA LLC; JEFFERIES
FINANCE LLC; AEQUUM CAPITAL
FINANCIAL II LLC; EVOLUTION
CREDIT OPPORTUNITY MASTER FUND
II-B, L.P.; GLAS TRUST COMPANY LLC;
UMB BANK, N.A.; PATRICK JAMES
TRUST; ALBION REALTY, LLC;
ALESTER TECHNOLOGIES LLC;
BATTERY PARK HOLDINGS LLC;
LARCHMONT, LLC; PEGASUS
AVIATION, LLC; BOWERY FINANCE II,
LLC; PATRICK JAMES; MICHAEL
BAKER; PETER ANDREW BRUMBERGS;
STEPHEN GRAHAM; SHEKHAR
KUMAR; ABC CORPORATION(S) 1–100;
and JOHN AND JANE DOE(S) 1–100,

Third-Party Defendants.

FBG_CH1_00090224

**DEBTORS' EXHIBIT NO. 174**
**Page 98 of 99**
**JOINT EXHIBIT NO. 50**
**Page 98 of 99**

**[PROPOSED] ORDER GRANTING
ONSET FINANCIAL, INC.'S MOTION FOR JUDGMENT ON
PLAINTIFFS' CLAIMS AGAINST ONSET FINANCIAL, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(c)**

The Court considered the motion filed by Onset Financial, Inc. ("Onset") pursuant to Federal Rule of Civil Procedure 12(c) (the "Motion for Judgment on the Pleadings"), any responses thereto, the pleadings, and the arguments of counsel, if any.

It is therefore:

**ORDERED** that the Motion for Judgment on the Pleadings is granted pursuant to Federal Rule of Civil Procedure 12(c), and Plaintiffs' claims against Onset are dismissed with prejudice.

Dated: _____, 2026
        Houston, Texas

_____
CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

FBG_CH1_00090225