**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.[1]** | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND**
**ORDER (I) APPROVING DISCLOSURE STATEMENT ON**
**A FINAL BASIS AND (II) CONFIRMING JOINT CHAPTER 11 PLAN**
<u>**OF FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS**</u>

First Brands Group Holdings, LLC ("**FBG Holdings**"), FBG Holdings' direct and indirect Debtor subsidiaries, Viceroy Private Capital, LLC ("**Viceroy**" and, together with FBG Holdings and its direct and indirect Debtor subsidiaries, the "**FBG Debtors**"), and the SPV Debtors[2] (together with the FBG Debtors, the "**Debtors**"), having:

a. commenced, in September 2025, these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (this "**Court**" or the "**Bankruptcy Court**"); and

b. on September 29, 2025, obtained entry of the *Order Directing Joint Administration of Chapter 11 Cases* (Docket No. 9).

The FBG Debtors having:

a. proposed and filed the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, dated June 16, 2026 (Docket No. 3019) (including any exhibits and schedules thereto and as may be amended, supplemented, or otherwise modified from time to time, the "**Plan**"),[3] and filed the *Disclosure Statement for Joint Chapter 11 Plan*

---

[1]  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands.  The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]  "**SPV Debtors**" means the direct and indirect Debtor subsidiaries of Viceroy other than the FBG Debtors.  For the avoidance of doubt, Viceroy is not an SPV Debtor.

[3]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement Order (as defined below), as applicable.  The rules of interpretation set forth in

*of First Brands Group, LLC and Certain Affiliated Debtors*, dated June 17, 2026 (Docket No. 3020) (including any exhibits and schedules thereto and as may be amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**");

b.  on June 12, 2026, obtained, after notice and hearing, entry of the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan, (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing, (III) Establishing Solicitation and Voting Procedures, (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt-In Procedures, (V) Establishing Preference Settlement Notice and Opt-In Procedures, (VI) Establishing Notice and Objection Procedures for Confirmation of Plan, and (VII) Granting Related Relief* (Docket No. 2990) (the "**Disclosure Statement Order**");

c.  caused to be served, through their claims, noticing, and solicitation agent, Kroll Restructuring Administration LLC ("**Kroll**") and the DIP Agent (as applicable), (i) the Disclosure Statement, (ii) the Plan, and (iii) related solicitation materials, including the (u) Ballots, (v) Notice of Non-Voting Status, (w) Release Opt-In Forms,  (y) the Preference Settlement Opt-In Forms, (z) the Litigation Trust Participation Notice (as defined in the Disclosure Statement Order) and the DIP Collateral Trust Participation Notice (as defined in the Disclosure Statement Order) (collectively, the "**Lender Forms**"), and (z) notice of the hearing (the "**Combined Hearing**") to consider final approval of the Disclosure Statement and confirmation of the Plan for July 28, 2026 at 9:00 a.m. (Central Time) (collectively, (i) – (iii), the "**Solicitation Materials**") to holders of Claims and Interests and other parties in interest in accordance with the Disclosure Statement Order, as described in the *Affidavit of Service of Solicitation Materials* filed at Docket No. 3347 (the "**Solicitation Affidavit**") and the *Affidavit of Supplemental Service of Solicitation Materials* filed at Docket No. 3346 (the "**Supplemental Solicitation Affidavit**" and together with the Solicitation Affidavit, the "**Solicitation Affidavits**") and the *Declaration of Alex Orchowski of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3351), filed on July 24, 2026 (the "**Solicitation Declaration**");

d.  caused to be published in the *New York Times*, the notice of the Combined Hearing as set forth in the *Certificate of Publication*, filed by Kroll on June 30, 2026 (Docket No. 3087) (the "**Certificate of Publication**");

e.  filed on June 23, 2026, the *Notice of Filing of (I) Plan Supplement and (II) Liquidation Analysis* (Docket No. 3046) (as may be further amended or supplemented from time to time, the "**Plan Supplement**");

---

Article I of the Plan and the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this order (this "**Order**").

f.   filed, on July 14, 2026 the (i) *Declaration of Charles M. Moore in Support of Confirmation of Chapter 11 Plan* (Docket No. 3188) (the "**Moore Declaration**"); and the *Declaration of Marc S. Kirschner* (Docket No. 3190) (the "**Kirschner Declaration**") (collectively, with the Solicitation Declaration, the "**Confirmation Declarations**"); and

g.   filed, on July 27, 2026, the (i) *FBG Debtors' Memorandum of Law in Support of (I) Final Approval of the Disclosure Statement and (II) Confirmation of Joint Chapter 11 Plan* (Docket No. 3426) and the (ii) *FBG Debtors' Omnibus Reply to Objections to (I) Final Approval of the Disclosure Statement and (II) Confirmation of Joint Chapter 11 Plan* (Docket No. 3433);

This Court having:

a.   approved, under the Disclosure Statement Order, the forms of notice setting forth, among other things, the procedures for holders of Claims in Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), and Class 5 (Second Lien Claims) and DIP A Claims to certify, elect, and participate in the Litigation Trust and the DIP Collateral Trust, as applicable;

b.   established, under the Disclosure Statement Order, July 20, 2026 at 5:00 p.m. (Central Time) as the deadline for voting on the Plan;

c.   established, under the Disclosure Statement Order, July 20, 2026 at 5:00 p.m. (Central Time) as the deadline by which objections to final approval of the Disclosure Statement and confirmation of the Plan must be filed;

d.   established, under the Disclosure Statement Order, July 28, 2026 at 9:00 a.m. (Central Time) as the date and time for the Combined Hearing pursuant to rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e.   reviewed the Disclosure Statement, the Plan, the Confirmation Brief, the Plan Supplement, the Confirmation Declarations, including the Solicitation Declaration, exhibits, statements, responses, and comments regarding confirmation, including any and all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

f.   held the Combined Hearing beginning July 28, 2026;

g.   heard the arguments and considered the evidence presented, proffered, and adduced at the Combined Hearing;

h.   considered the entire record of the Combined Hearing;

i.   taken judicial notice of the entire record of these Chapter 11 Cases; and

3

j.   overruled all objections, statements, and reservations of rights with respect to final approval of the Disclosure Statement and confirmation of the Plan not consensually resolved or withdrawn, except as expressly provided herein.

NOW, THEREFORE, based on the foregoing, and after due deliberation and sufficient cause appearing therefor, this Court hereby FINDS, DETERMINES, and CONCLUDES as follows:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

a.   Jurisdiction, Venue, Core Proceeding.   This Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan and final approval of the Disclosure Statement are core proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

b.   Burden of Proof.  The Plan satisfies the requirements for confirmation of section 1129 of the Bankruptcy Code by a preponderance of evidence.

c.   Transmittal and Mailing of Materials; Notice.  The Solicitation Materials (including the Lender Forms), have been transmitted and served in compliance with the Disclosure Statement Order, the Plan, the Bankruptcy Rules, and the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").  Such transmittal and service were adequate and sufficient, and no other or further notice is or shall be required, including, for the syndication, allocation, and distribution of the Litigation Trust Interests and the DIP Collateral Trust Interests.

d.   Adequacy of Disclosure Statement.  The Disclosure Statement contains "adequate information," as such term is defined in section 1125(a)(1) of the Bankruptcy Code, including with respect to the circumstances of these Chapter 11 Cases, the FBG Debtors, the Plan, and the

4

transactions contemplated therein, and the Disclosure Statement complies with all other applicable requirements of the Bankruptcy Code.

e.      Solicitation.  The Plan was solicited in good faith and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Bankruptcy Local Rules, and the Disclosure Statement Order.  The Released Parties and the Exculpated Parties are entitled to the protections of section 1125(e) of the Bankruptcy Code.

f.      Good Faith.  The Plan has been proposed in good faith and not by any means forbidden by law.  In so finding, the Court has considered the totality of the circumstances of the Chapter 11 Cases.  The Plan is the result of extensive, good faith, arm's length negotiations among the FBG Debtors and their principal constituencies.

g.      Plan Supplement.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, the FBG Debtors reserve the right to alter, amend, update, or modify the Plan Supplement at any time before the Confirmation Date in accordance with section 1127(b) of the Bankruptcy Code.

h.      Cram Down Requirements.  The Plan does not "unfairly discriminate" and is "fair and equitable" with respect to each Class that is Impaired and voted to reject the Plan or is deemed to reject the Plan, in accordance with section 1129(b) of the Bankruptcy Code.

i.      Exculpation, and Injunction Provisions.  The exculpation and injunction provisions contained in the Plan are appropriately tailored to the circumstances of these Chapter 11 Cases, and are essential components of the Plan.

j.      Releases.  The FBG Debtors have demonstrated good and valid justification in support of the releases granted by the FBG Debtors, their Estates, and successors and assigns, including the Wind Down Administrator, the Claims Ombudsman, the Litigation Trust, the

Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, the ABL Collateral Trust, and the ABL Collateral Trustee (the "**Debtor Releases**"), and the Debtor Releases represent a sound exercise of the FBG Debtors' business judgment, offer protection to parties that played an integral role in the Chapter 11 Cases, and are an integral part of the consideration to be provided in exchange for the compromises and resolutions embodied in the Plan.  The third-party releases contained in Section 13.5(b) of the Plan are appropriate and consensual as to all relevant parties, including on the part of the Releasing Parties.

k.      Notice.  As evidenced by the Solicitation Affidavits, the Certificate of Publication, and the Solicitation Declaration, due, proper, adequate, timely, and sufficient notice of the Combined Hearing has been given in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (effective as of September 18, 2024) (the "**Complex Case Procedures**"), and all other applicable non-bankruptcy rules, laws, and regulations, and such parties had an opportunity to appear and be heard with respect thereto.  No other or further notice is required with respect thereto.

l.      Approval of Solicitation Materials.  The Solicitation Materials (including the Lender Forms) and the Plan were properly and timely distributed by Kroll and the DIP Agent (as applicable) to (i) holders in the Voting Classes that held a Claim or Interest as of June 15, 2026 (the "**Voting Record Date**") and (ii) holders of Claims in Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), and Class 5 (Second Lien Claims) and DIP A Claims as of the Litigation Trust Distribution Record Date and DIP Collateral Trust Distribution Record Date (collectively, the "**Lender Record Dates**"), respectively.  The establishment and notice of the Voting Record Date and the Lender Record Dates were proper, timely, reasonable, adequate, and sufficient.  The

Solicitation Materials (including the Lender Forms) contained all necessary, sufficient, and appropriate information, notices, and disclosures as may be required under applicable bankruptcy and non-bankruptcy law, including, without limitation, the Bankruptcy Code, for the proper and appropriate solicitation of holders of Class 3 (Roll-Up Claims), Class 4 (First Lien Claims), Class 5 (Second Lien Claims), Class 6 (ABL Claims), and DIP A Claims.  The dissemination of the Solicitation Materials (including the Lender Forms) and the submission and collection of the Solicitation Materials (including the Lender Forms) was proper and appropriate.  As evidenced by the Solicitation Affidavits, all parties required to be given notice of the Voting Record Date, the Lender Record Dates, and any other dates in the Solicitation Materials and the Lender Forms have been given due, proper, timely, reasonable, adequate, and sufficient notice of such in accordance with the Disclosure Statement Order, and such parties had an opportunity to appear and be heard with respect thereto.

m.        <u>Lender Forms and Related Processes</u>.   Entry of this Order shall reaffirm and approve in full the provisions of the Disclosure Statement Order that approved the notice and process for dissemination, solicitation, and collection of the Lender Forms, pursuant to which, upon entry of the Disclosure Statement Order, each holder of a DIP A Claim was offered the right to commit to its *pro rata* allocation of the Litigation Trust Funding Commitments (with such allocation backstopped by the certain members of the Ad Hoc Group SteerCo).  The Lender Forms and related procedures for solicitation of the Litigation Trust Funding Commitments were proper, reasonable, adequate, and sufficient, and were formulated in good faith by the FBG Debtors, Kroll, the Ad Hoc Group, and the DIP Secured Parties in order to reasonably identify the Opportunity (as defined in the Lender Forms) to participate as a Litigation Trust Class 1 Funding Contributor. The Disclosure Statement Order authorized the FBG Debtors, Kroll, the Ad Hoc Group, and the

DIP Secured Parties to implement and to comply with the Lender Forms. The Lender Forms and all related procedures and the allocations with respect thereto (as may be confirmed by the FBG Debtors, Kroll, the Ad Hoc Group, or the DIP Secured Parties, in writing (email being sufficient)) are approved in their entirety pursuant to the Disclosure Statement Order and this Order, and shall govern the syndication, allocation, and participation of the Litigation Trust Class 1 Interests. The FBG Debtors, Kroll, the Ad Hoc Group, and the DIP Secured Parties (and their respective advisors) are hereby authorized to take all actions necessary or appropriate to continue to effectuate the Lender Forms and related allocation and syndication procedures for the Class 1 Litigation Trust Interests without further notice, hearing, or order of the Court.  For the avoidance of doubt, any actions taken in accordance with the Lender Forms and related procedures shall be deemed to comply with the terms of this Order and shall not constitute a transfer subject to avoidance, recharacterization, or subordination under the Bankruptcy Code or applicable law.  As evidenced by the Solicitation Affidavits all parties required to be given notice of the Opportunity and issuance of Class 1 Litigation Trust Interests have been given due, proper, timely, reasonable, adequate, and sufficient notice of such in accordance with the Disclosure Statement Order, and such parties had an opportunity to appear and be heard with respect thereto.

n.	<u>Lender Delegation and Related Rights</u>.  The solicitation versions of the Plan and Disclosure Statement, and the DIP Collateral Trust Agreement filed as a Plan Supplement, contained adequate and sufficient notice and information that put the DIP Secured Parties, the First Lien Secured Parties (including, for the avoidance of doubt, the Sidecar Term Loan Secured Parties), and the Second Lien Secured Parties on notice of the contents of the Plan pertaining to the contribution of voting and economic rights to the DIP Collateral Trust, including "required lender" delegations for the anticipated role of the DIP Collateral Trust Oversight Committee, as

described in Sections 7.7 and 7.14 of the Plan, and Section 7.7 and 7.14 of the Disclosure Statement, and Article VII of the DIP Collateral Trust Agreement.  No objections from any party were received to these provisions of the Plan, the Disclosure Statement, or the Plan Supplement.

o.      Tabulation.  As described in the Solicitation Declaration, the holders of Claims in Classes 3 (Roll-Up Claims), 4 (First Lien Claims), 5 (Second Lien Claims, and 6 (ABL Claims) are Impaired under the Plan and voted to accept the Plan in the numbers and amounts required by section 1126 of the Bankruptcy Code.  All procedures used to tabulate the Ballots were fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Case Procedures, the Disclosure Statement Order, and all other applicable non-bankruptcy rules, laws, and regulations.  Pursuant to the Disclosure Statement Order, the holders of Claims in Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) are Unimpaired and presumed to accept the Plan, the holders of Claims in Class 9 (Intercompany Claims) are Impaired and not entitled to vote because they are either plan proponents or controlled by plan proponents and therefore are presumed to accept the Plan, and the holders of Interests in Class 10 (FBG Debtor Interests) are Impaired and deemed to reject the Plan.

p.      Retention of Causes of Action and Reservation of Rights.  In accordance with section 1123(b) of the Bankruptcy Code and Section 13.10 of the Plan, except as otherwise provided in the Plan, any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the FBG Debtors had immediately prior to the Confirmation Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, but not limited to, any actions specifically enumerated herein, and such rights to commence, pursue, prosecute, and/or settle such Estate

Claims, Claims, and/or Causes of Action (including, without limitation, any avoidance action, preference, or other Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, including, without limitation, sections 502(d), 506, 544, 545, 547, 548, 549, 550, 551, 552, 553(b) of the Bankruptcy Code) (collectively, the "**Retained Causes of Action**") shall be preserved, including for the benefit of the FBG Debtors and the Trusts, as applicable, notwithstanding the occurrence of the Confirmation Date and/or the Effective Date.  Except as otherwise provided in the Plan and this Order, the FBG Debtors and the Trusts, as applicable, shall have, retain, reserve, and be entitled to assert all such Retained Causes of Action as fully as if the Chapter 11 Cases had not been commenced, and all of the FBG Debtors' and each Trust's legal and equitable rights and defenses in respect of any Unimpaired Claim may be asserted after the Confirmation Date (including through and after the Effective Date) to the same extent as if the Chapter 11 Cases had not been commenced, and shall be entitled to all extension of time and/or tolling provisions provided under section 108 of the Bankruptcy Code.  Except as otherwise provided in the Plan, the Schedule of Retained Causes of Action, or herein, any Causes of Action that an FBG Debtor may hold against any Person shall vest in the FBG Debtors or the Trusts, as applicable.  The FBG Debtors and the Trusts, as applicable, shall retain and may enforce any and all such Claims and Causes of Action, including the Retained Causes of Action.  The Trusts, as applicable, shall have the right, authority, and discretion to determine, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Claims and Causes of Action, including the Retained Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of, the Bankruptcy Court; *provided* that nothing in the foregoing shall authorize any Trust to prosecute, settle, compromise, release, withdraw, or otherwise dispose of, or take any action with respect to,

any Cause of Action or other asset that constitutes an asset of another Trust without the prior written consent of the Trustee of such other Trust.

q.        Best Interest of Creditors.  The Liquidation Analysis (Docket No. 3046-9), and the other evidence presented, proffered, or adduced at the Combined Hearing, including, but not limited to, the Moore Declaration, (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the FBG Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

r.        Feasibility.  The information contained in the Disclosure Statement, and the other evidence presented, proffered, or adduced at the Combined Hearing, including, but not limited to the Moore Declaration and the Kirschner Declaration, (i) are persuasive and credible, (ii) have not been controverted by any evidence, and (iii) establish that the Plan is feasible and provides adequate and appropriate means for its implementation and an orderly wind down and liquidation of the FBG Debtors' Estates, as contemplated by the Plan, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

s.        Managers, Officers, and Directors.  The managers, officers, and directors of the FBG Debtors shall be relieved of any and all duties with respect to the FBG Debtors as of the Confirmation Date.  The identity of the Wind Down Administrator, who shall serve as the initial director or manager, as applicable, and sole officer of each FBG Debtor, as applicable, on and after the Confirmation Date shall be fully disclosed in the Plan Supplement, and the appointment to, or continuance in, such office of such person as described in Section 5.8 of the Plan and in the Plan

11

Supplement is consistent with the interests of holders of Claims against and Interests in the FBG Debtors and with public policy.

t. <u>Preservation of Privilege</u>. Nothing contained in this Order, the Plan, and all documents necessary to effectuate the Plan, contained in the Plan, or contemplated by the Plan, including the Disclosure Statement, Plan Supplement, and for the avoidance of doubt, the Solicitation Materials and the Definitive Documents (collectively, the "**Plan Documents**"), the Confirmation Declarations, any and all documents produced in connection with confirmation of the Plan, or any and all other documents related thereto is intended to, nor constitutes, nor should be deemed to constitute, a waiver by the FBG Debtors, their Estates, or any successors in interest, including but not limited to the Litigation Trust, the DIP Collateral Trust, or the ABL Collateral Trust, of any relevant privilege(s) or rules, including, but not limited to, the attorney-client privilege, mediation privilege, the common-interest privilege, and the attorney work-product rule.

u. <u>Special Committees; A&M Officers</u>. The record in these Chapter 11 Cases further supports that the members of the Special Committees, the Independent Managers, and the Specified Executives exhibited the highest standards of professionalism and due diligence in the performance of all of their roles as managers, directors, and officers of the FBG Debtors in these cases. The members of the Special Committees, Independent Managers, and the Specified Executives (i) were integral to the restructuring, (ii) exercised the highest level of prudent business judgment after exhaustive diligence in their decision making; and (iii) satisfied such duties fully, completely, professionally and admirably at all times and in their capacities as managers, directors, and officers of the FBG Debtors throughout these Chapter 11 Cases.

v. <u>Administrative Expense Claims Consent Program</u>. The Bankruptcy Court established July 10, 2026 as the record date for determining which holders of Administrative

Expense Claims are entitled to participate in the Administrative Expense Claims Consent Program and receive the Administrative Expense Claims Consent Program Opt-In Form (the "**Administrative Claims Record Date**"), which date may be waived or modified by the Claims Ombudsman.  The establishment and notice of the Administrative Claims Record Date were reasonable and sufficient.  The Administrative Expense Claims Consent Program Opt-In Procedures and the deadline by which holders of Administrative Expense Claims must submit the Administrative Expense Claims Consent Program Opt-In Form, which is the date that is sixty (60) days following the Confirmation Date, are reasonable, appropriate, and approved.

w.        Certain holders of Claims entitled to priority under section 507 of the Bankruptcy Code have entered into, or will enter into, settlements with the FBG Debtors (including, for the avoidance of doubt, by opting in to the Administrative Expense Claims Consent Program after being duly served with an election form in accordance with the Disclosure Statement Order) whereby such holder has consented to the treatment set forth in the Administrative Expense Claims Consent Program.  For any holder that has not agreed to such an alternative treatment, Section 2.1 of the Plan provides that such holder shall receive treatment consistent with section 1129(a)(9) of the Bankruptcy Code.  Accordingly, the Plan complies with the requirements of section 1129(a)(9) of the Bankruptcy Code.

x.        As evidenced by the Solicitation Affidavits and the Solicitation Declaration, all parties required to be given notice of the Administrative Expense Claims Consent Program have been given due, proper, adequate, timely, and sufficient notice of the Administrative Expense Claims Consent Program in accordance with the Disclosure Statement Order, and such parties had an opportunity to appear and be heard with respect thereto.

y.      Compromises and Plan Settlement.   Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions, releases, and other benefits provided under the Plan and with the support of the various creditors, stakeholders, and other parties in interest, including the DIP Secured Parties, the Ad Hoc Group and its members, and the Creditors' Committee and its members, the provisions of the Plan, including all settlements provided for under the Plan, including, but not limited to, the Plan Settlement and the Preference Settlement (collectively, the "**Settlements**"), constitute a good faith compromise and settlement of all Claims, Causes of Action, disputes, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.   The compromises and Settlements embodied in the Plan are integral to the Plan and preserve value by enabling the FBG Debtors to avoid extended, value-eroding litigation.   Entry of this Order constitutes this Court's approval of the Settlements, and a finding by this Court that the Settlements are fair, equitable, reasonable, and in the best interests of the FBG Debtors, the FBG Debtors' Estates, and holders of Claims and Interests.

z.      Good Faith; No Collusion – Estate Claims Credit Bid Transaction.   The FBG Debtors and their advisors adequately marketed the Estate Claims and conducted a robust and extensive sale process to solicit and develop the highest or otherwise best offer for the Estate Claims.  The FBG Debtors were free to deal with any other party interested in acquiring the Estate Claims, and adequate notice and a full, fair, and reasonable opportunity was given to all persons to make a higher or otherwise better offer to purchase some or all of the Estate Claims.  No person submitted any bid for the Estate Claims, let alone a higher or otherwise better bid for the Estate Claims than the consideration for value provided by the DIP Secured Parties under the Plan and Settlements.  The FBG Debtors' determination that the Estate Claims Credit Bid is the highest or

otherwise best offer for the Estate Claims constitutes a valid and sound exercise of the FBG Debtors' business judgment.

aa.     The Estate Claims Credit Bid Transaction was proposed, negotiated, and entered into by the FBG Debtors, the Ad Hoc Group, and the DIP Secured Parties without collusion or fraud, in good faith, and from arm's-length bargaining positions.  None of the Ad Hoc Group, the DIP Secured Parties, the Litigation Trust, the Litigation Trustee, or the Litigation Trustee Beneficiaries (collectively, the **"Estate Claims Credit Bid Parties"**) is an "insider" or "affiliate" of the FBG Debtors, as those terms are defined in the Bankruptcy Code.  The consideration and value provided by the DIP Secured Parties for the Litigation Trust Assets pursuant to the Estate Claims Credit Bid and the Estate Claims Credit Bid Transaction, including, without limitation, the consideration and value provided in the Plan and Settlements, constitutes reasonably equivalent value and fair consideration.  None of the FBG Debtors, the Estate Claims Credit Bid Parties, nor any of their respective affiliates, officers, directors, managers, members, partners, principals, or shareholders (or equivalent), or any of their respective advisors, representatives, attorneys, successors, or assigns, nor any other Persons have engaged in any conduct that would cause or permit the Estate Claims Credit Bid Transaction (or any documents related thereto) to be avoided, or any costs or damages to be imposed, under the applicable provisions of the Bankruptcy Code, including under section 363(n) of the Bankruptcy Code, or any other applicable law of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable law.  Accordingly, the Estate Claims Credit Bid Parties are good-faith purchasers within the meaning of, and are entitled to all of the protections afforded by, section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law, including

in the event this Order or any portion hereof is reversed or modified on appeal, and otherwise have proceeded in good faith in all respects in connection with these Chapter 11 Cases.

bb.  Good Faith; No Collusion – DIP Collateral Credit Bid Transaction.  The DIP Collateral Credit Bid Transaction was proposed, negotiated, and entered into by the FBG Debtors, the Ad Hoc Group, and the DIP Secured Parties without collusion or fraud, in good faith, and from arm's-length bargaining positions.  None of the Ad Hoc Group, the DIP Secured Parties, the DIP Collateral Trust, the DIP Collateral Trustee, or the DIP Collateral Trust Beneficiaries (collectively, the "**DIP Collateral Credit Bid Parties**") is an "insider" or "affiliate" of the FBG Debtors, as those terms are defined in the Bankruptcy Code.  The consideration and value provided by the DIP Secured Parties for the DIP Collateral Trust Assets pursuant to the DIP Collateral Credit Bid and the DIP Collateral Credit Bid Transaction, including, without limitation, the consideration and value provided in the Plan and Settlements, constitutes reasonably equivalent value and fair consideration.  None of the FBG Debtors, the DIP Collateral Credit Bid Parties, nor any of their respective affiliates, officers, directors, managers, members, partners, principals, or shareholders (or equivalent), or any of their respective advisors, representatives, attorneys, successors, or assigns, nor any other Persons have engaged in any conduct that would cause or permit the DIP Collateral Credit Bid Transaction (or any documents related thereto) to be avoided, or any costs or damages to be imposed, under the applicable provisions of the Bankruptcy Code, including under section 363(n) of the Bankruptcy Code, or any other applicable law of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable law.  Accordingly, the DIP Collateral Credit Bid Parties are good-faith purchasers within the meaning of, and are entitled to all of the protections afforded by, section 363(m) of the Bankruptcy Code and  any other  applicable  or  similar  bankruptcy  and  non-bankruptcy  law, including in the event this

16

Order or any portion hereof is reversed or modified on appeal, and otherwise have proceeded in good faith in all respects in connection with these Chapter 11 Cases.

cc.     Adequate Marketing; Highest or Best Offer.  The FBG Debtors' marketing and sale process with respect to the Estate Claims Credit Bid Transaction afforded a full, fair, and reasonable opportunity for any Person to make a higher or otherwise better offer for the Litigation Trust Assets. The marketing process allowed the FBG Debtors to consider actionable proposals, if any, from third parties. The FBG Debtors conducted the Estate Claims Marketing Process (as defined in the Disclosure Statement) on the terms set forth in the Disclosure Statement.  The FBG Debtors did not receive any bids, including any bids constituting "Required Bids" pursuant to the requirements set forth in the Disclosure Statement, for the Litigation Trust Assets. No other Person has offered to acquire the Litigation Trust Assets for greater overall value to the FBG Debtors' Estates than the Estate Claims Credit Bid Parties.  The Estate Claims Credit Bid constitutes the highest or best offer for the Litigation Trust Assets and will provide a greater recovery for the FBG Debtors' Estates than any other available alternative.  The FBG Debtors' determination that the Estate Claims Credit Bid constitutes the highest or best offer is a valid and sound exercise of the FBG Debtors' business judgment.  Approval and consummation of the Estate Claims Credit Bid Transaction is in the best interests of the FBG Debtors' Estates, their creditors, and other parties in interest.  The consideration provided by the Estate Claims Credit Bid Parties pursuant to the Plan (i) is fair and reasonable, (ii) is the highest or best offer for the Litigation Trust Assets, and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

dd.     The Estate Claims Credit Bid Parties and the DIP Collateral Credit Bid Parties are Not Successors.  Except as expressly provided in the Plan or this Order, by reason of (i) the Estate

17

Claims Credit Bid Transaction, (ii) the DIP Collateral Credit Bid Transaction, or (iii) the transfer or vesting of the Litigation Trust Assets or the DIP Collateral Trust Assets, neither the Estate Claims Credit Bid Parties nor the DIP Collateral Credit Bid Parties shall (a) be deemed a successor, successor-in-interest, or continuation of any FBG Debtor or any Estate; (b) be deemed to have merged or consolidated with, or to be a mere or substantial continuation of, any FBG Debtor or any Estate; or (c) have any successor, transferee, derivative, or vicarious liability of any kind, whether known or unknown, fixed or contingent, asserted or unasserted, and whether arising under any theory of law or equity, for any Claim against, Interest in, or liability or obligation of any FBG Debtor or any Estate. The transfer and vesting of the Litigation Trust Assets and the DIP Collateral Trust Assets does not constitute a consolidation, merger, or de facto merger of any Estate Claims Credit Bid Parties or DIP Collateral Credit Bid Parties with any FBG Debtor or any Estate.

ee. Notwithstanding the foregoing, nothing in this paragraph or in paragraph 22 shall (x) limit, impair, or modify the status of the Litigation Trust, the DIP Collateral Trust, the ABL Collateral Trust, the Litigation Trustee, the DIP Collateral Trustee, or the ABL Collateral Trustee as representatives of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (as applicable); (y) limit or impair the right, standing, or authority of such Trusts or Trustees to pursue the Retained Causes of Action, or their succession to the FBG Debtors' rights in respect thereof (including any extension of time or tolling available under sections 108 and 546 of the Bankruptcy Code); or (z) otherwise affect the vesting of the Retained Causes of Action in such Trusts or the FBG Debtors as provided in the Plan and this Order.

ff. Necessity of Order. The Estate Claims Credit Bid Parties and the DIP Collateral Credit Bid Parties have agreed to the Estate Claims Credit Bid Transaction and the DIP Collateral Credit Bid Transaction, respectively, in each case in material reliance on, and with fair

18

consideration provided for, the transfer and vesting of the Litigation Trust Assets and the DIP Collateral Trust Assets, respectively, free and clear of all Liens, Claims, encumbrances, and Interests (legal, beneficial, or otherwise) relating to the FBG Debtors and arising prior to the applicable transfer, including any successor, transferee, derivative, or vicarious liability of any kind or nature.  Neither the Estate Claims Credit Bid Parties nor the DIP Collateral Credit Bid Parties would have agreed to the applicable transaction without all of the relief, terms, and findings provided for in this Order.

gg.     Satisfaction of Section 363(f); Free and Clear.  The FBG Debtors may transfer, assign, convey, deliver, and vest the Litigation Trust Assets and the DIP Collateral Trust Assets pursuant to the Estate Claims Credit Bid Transaction and the DIP Collateral Credit Bid Transaction, respectively, free and clear of all Liens, Claims, encumbrances, and Interests (legal, beneficial, or otherwise) of any kind or nature whatsoever because, in each case, one or more of the standards set forth in sections 363(f)(1)–(5), 1129(b)(2)(A)(ii), or 1141 of the Bankruptcy Code has been satisfied. All holders of Liens, Claims, encumbrances, or Interests against the FBG Debtors, their Estates, or any of the Litigation Trust Assets or the DIP Collateral Trust Assets either (a) did not object, or withdrew their objections, to the applicable transaction or the Plan and are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code, (b) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claims or Interests pursuant to section 363(f)(5) of the Bankruptcy Code, or (iii) otherwise fall within the provisions of section 363(f) of the Bankruptcy Code, and are bound by this Order and the Plan pursuant to section 1141(a) of the Bankruptcy Code.  All holders of such Liens, Claims, encumbrances, or Interests are adequately protected by having such Liens, Claims, encumbrances, or Interests, if any and to the extent valid and enforceable, attach to the consideration provided in

respect of the applicable transaction and to the distributions payable under the Plan on account thereof, in each case in the same order of priority and with the same validity, force, and effect that such holder had immediately prior to consummation of the applicable transaction, subject to any claims, defenses, setoffs, or rights of recoupment that the FBG Debtors and their Estates may possess with respect thereto, and with such Liens, Claims, encumbrances, or Interests being treated in accordance with the Plan.

hh.      Title to Purchased Assets.  The Litigation Trust Assets and the DIP Collateral Trust Assets to be transferred, assigned, conveyed, or delivered, as applicable, by the FBG Debtors pursuant to the Plan and this Order are property of the FBG Debtors' Estates, and good title thereto is presently vested in the FBG Debtors' Estates within the meaning of section 541(a) of the Bankruptcy Code.  The FBG Debtors are the sole and rightful owners of such assets, with all rights, title, and interests thereto, and no other Person has any ownership right, title, or interest therein, other than the security interests therein that secure the FBG Debtors' obligations to the DIP Secured Parties, the Prepetition Secured Parties, and holders of Allowed Other Secured Claims, as applicable.

ii.      Litigation Trust Funding.  The Litigation Trust Cash Funding, the Initial Litigation Trust Funding Commitments, and the Additional Litigation Trust Funding were proposed, negotiated, and entered into by all parties without collusion or fraud, in good faith, and from arm's-length bargaining positions.  None of the FBG Debtors, the Ad Hoc Group, the DIP Secured Parties, nor any other Persons have engaged in any conduct that would cause or permit such funding for the Litigation Trust to be avoided under the applicable provisions of the Bankruptcy Code or any other applicable law.

jj.      DIP Collateral Trust Funding.  The DIP Collateral Trust Funding was proposed, negotiated, and entered into by all parties without collusion or fraud, in good faith, and from arm's-length bargaining position.  None of the FBG Debtors, the Ad Hoc Group, the DIP Secured Parties, nor any other Persons have engaged in any conduct that would cause or permit such funding for the DIP Collateral Trust to be avoided under the applicable provisions of the Bankruptcy Code or any other applicable law.

kk.      Class 1 Funding Interests.  Issuance of the Class 1 Funding Interests (as defined herein) constitute an actual and necessary cost and expense to preserve the FBG Debtors' Estates and is reasonable and warranted on the terms set forth in the Plan in light of, among other things, (i) the necessity to induce the Trust Funders (as defined herein) to provide funding to the Litigation Trust and the DIP Collateral Trust on a post-Confirmation Date basis; (ii) the significant benefit provided to the FBG Debtors' Estates and all creditors by having committed financing to fund the Plan after the Confirmation Date; and (iii) the substantial benefit provided to the FBG Debtors' Estates and all creditors by the Trust Funders who are agreeing to, among other things, provide new money commitments, credit bid their DIP A Claims, and impair their DIP Claims to facilitate the Plan.

ll.      Testimony of FBG Debtors.  The testimony set forth in the Confirmation Declarations was (i) submitted solely on behalf of the FBG Debtors, and not the SPV Debtors, and (ii) admitted solely for purposes of the Combined Hearing and is not an admission by any of the SPV Debtors in this proceeding, any ancillary proceeding, or any pending or future proceeding, before this Court or any other court, tribunal, arbitration panel, arbiter, mediator, administrative agency, regulatory body, or other adjudicatory, quasi-judicial, or alternative dispute resolution

21

forum of any kind, wherever located.  Nothing in this Order is a resolution as to the merits of any inter-Debtor claims or defenses, and all parties' rights with respect thereto are fully preserved.

mm.     Consolidation for Distribution Purposes.  The evidence in support of the Plan that was proffered or adduced at or prior to the Combined Hearing, including the Moore Declaration and all other pleadings in support of the Plan, established that the consolidation of the Chapter 11 Cases of the FBG Debtors solely for distribution purposes pursuant to this Order and Section 5.2(k) of the Plan is (i) in the best interests of the FBG Debtors, their Estates, and all holders of Claims against, and Interests in, the FBG Debtors, (ii) fair, equitable, and reasonable, (iii) effected after due notice and opportunity for a hearing, and (iv) appropriate under Bankruptcy Code sections 105(a) and 1123(a)(5)(C) and other applicable law.

nn.     Satisfaction of Confirmation Requirements.  The Plan satisfies the requirements for confirmation by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation, as set forth in section 1129 of the Bankruptcy Code.

oo.     Likelihood of Satisfaction of Conditions Precedent to Effective Date.  Each of the conditions precedent to the Effective Date, as set forth in Article XII of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with the Plan.

## ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

**A. Findings of Fact and Conclusions of Law**

1.     The findings of fact and conclusions of law referenced above and announced by this Court on the record at the Combined Hearing in respect of confirmation of the Plan and/or final approval of the Disclosure Statement are hereby incorporated by reference as though fully

set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable hereto by Bankruptcy Rule 9014.

**B.   Final Approval of Disclosure Statement**

2.      The Disclosure Statement is approved on a final basis as containing adequate information as contemplated by section 1125 of the Bankruptcy Code.

**C.   Confirmation of Plan**

3.      The Plan and each of its provisions are confirmed pursuant to section 1129 of the Bankruptcy Code.  The Plan Documents, including, without limitation, the Plan Supplement, are hereby authorized and approved.  The terms of the Plan and the Plan Documents are incorporated herein by reference in their entirety and are an integral part of this Order.  The terms of the Plan, the Plan Documents, all exhibits thereto, and all other relevant and necessary documents related thereto or contemplated thereby shall be effective and binding as of the Confirmation Date or Effective Date, as applicable, upon the FBG Debtors, the Estates, the Trusts, the Trustees, the Wind Down Administrator, the Claims Ombudsman, any and all holders of Claims or Interests (irrespective of whether holders of such Claims or Interests have, or are deemed to have, accepted the Plan), any trustee appointed in any successor cases, and any other successors in interest, all Persons that are parties to or are subject to the terms of the Plan, including the Settlements, all other settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan, all Trade Creditors, Supply Chain Financers, and Factors, all holders of Settled Administrative Expense Claims, all Preference Settlement Electing Creditors, any and all non-Debtor parties to executory contracts and unexpired leases with the FBG Debtors, all Insurance Companies, and all beneficiaries of the Trusts.  The failure to specifically include or refer to any particular article, section, or provision of the Plan or the Plan Documents in this Order shall not diminish or impair the effectiveness or enforceability of such article, section,

or provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

4.      All actions contemplated to take place upon or following the Confirmation Date pursuant to the Plan or any of the Plan Documents are hereby authorized.  The Debtors, the Estates, the Trusts, the Trustees, the Wind Down Administrator, the Claims Ombudsman, and any other party contemplated by the Plan Documents, as applicable, are authorized to take all actions required under the Plan or the Plan Documents to effectuate the Plan and the Plan Documents and the transactions contemplated therein.

**D.  Objections**

5.      To the extent any objections (including any reservation of rights contained therein) to confirmation of the Plan or other responses or reservations of rights with respect thereto have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, such objections and responses are denied and overruled on the merits with prejudice.

6.      <u>Reservations of Rights</u>.  The reservations of rights included on **Schedule 1** attached hereto are incorporated by reference herein.

**E.  No Action**

7.      Pursuant to the appropriate provisions of any applicable state's general corporation or limited liability company laws, other applicable non-bankruptcy law, and section 1142(b) of the Bankruptcy Code, (i) no action of the respective directors, managers, members, stockholders, or other equity holders of the FBG Debtors shall be required to authorize the FBG Debtors or other applicable Estate representatives to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, including any Plan Document, and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including any Plan Document, and (ii) to the

extent the FBG Debtors determine (a) any Person is a necessary party to execute and deliver or join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the Plan, including any Plan Document, or (b) any Person is a necessary party to perform any other act in furtherance of the transactions contemplated by the Plan and the transactions contemplated by the Plan or this Order, including any Plan Document, and this Order, and in furtherance of consummation of the Plan, and, in each case, such Person is so informed by the FBG Debtors or other applicable Estate representative, then such Person is directed to take such steps as necessary to comply with the foregoing and section 1142(b) of the Bankruptcy Code.

**F.  Plan Transactions**

8.       Approval of the Estate Claims Credit Bid Transaction and the DIP Collateral Credit Bid Transaction.  Pursuant to sections 105, 363, 1123, and 1129 of the Bankruptcy Code, the Estate Claims Credit Bid Transaction and the DIP Collateral Credit Bid Transaction, all Plan Documents related thereto, all of the terms and conditions thereof, and all of the transactions contemplated thereby are hereby authorized and approved.

9.       Estate Claims Credit Bid Transaction. Upon the establishment of the Litigation Trust and execution of the Litigation Trust Agreement, the FBG Debtors, pursuant to sections 105, 363(b) and (f), and 1123(a)(5)(D) of the Bankruptcy Code, shall be deemed to have sold, assigned, conveyed, transferred, delivered and vested the Litigation Trust Assets to the DIP Secured Parties and such assets shall be immediately deemed to have been sold, assigned, conveyed, transferred, delivered, and vested in the Litigation Trust, in both instances, free and clear of all Liens, Claims, encumbrances, and Interests (legal, beneficial, or otherwise).  The sale of the Litigation Trust Assets pursuant to the Estate Claims Credit Bid Transaction is undertaken without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate

the Estate Claims Credit Bid Transaction shall not affect the validity of the Estate Claims Credit Bid Transaction, or any aspects of the Estate Claims Credit Bid Transaction that are integral to the sale and the Plan, including the distribution of the Litigation Trust Interests to the Litigation Trust Beneficiaries and the Litigation Trust Waterfall.

10.     The FBG Debtors' determination that the Estate Claims Credit Bid constitutes the highest or best offer is a valid and sound exercise of the FBG Debtors' business judgment. Approval and consummation of the Estate Claims Credit Bid Transaction is in the best interests of the FBG Debtors' Estates, their creditors, and other parties in interest.

11.     DIP Collateral Credit Bid Transaction. The DIP Collateral Credit Bid Transaction is hereby approved.  Upon the establishment of the DIP Collateral Trust and execution of the DIP Collateral Trust Agreement, the FBG Debtors, pursuant to sections 105, 363(b) and (f), and 1123(a)(5)(D) of the Bankruptcy Code, shall be deemed to have sold, assigned, conveyed, transferred, delivered, and vested the DIP Collateral Trust Assets to the DIP Secured Parties and such assets shall be immediately deemed to have been sold, assigned, conveyed, transferred, delivered, and vested in the DIP Collateral Trust (or the direct subsidiaries of the DIP Collateral Trust, as applicable), in both instances, free and clear of all Liens, Claims, encumbrances and Interests (legal, beneficial, or otherwise).  The sale of the DIP Collateral Trust Assets pursuant to the DIP Collateral Credit Bid Transaction is undertaken without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly,  the reversal  or modification on appeal of the authorization provided herein to consummate the DIP Collateral Credit Bid Transaction shall not affect the validity of the DIP Collateral Credit Bid Transaction, or any aspects of the DIP Collateral Credit Bid Transaction that are integral to the sale and the

Plan, including the distribution of the DIP Collateral Trust Interests to the DIP Collateral Trust Beneficiaries and the DIP Collateral Trust Waterfall.

12.     DIP Collateral Trust Interests and Litigation Trust Interests on account of DIP Claims for DIP Euro tranches will be calculated by first converting such DIP Claims to U.S. dollars using the Specified Exchange Rate (as defined in the DIP Credit Agreement) of $1.17 per €1.00.  Litigation Trust Interests on account of First Lien Claims for the prepetition Euro tranche will be calculated by first converting such First Lien Claims to U.S. dollars using the exchange rate as of the Petition Date of $1.17 per €1.00.

13.     The FBG Debtors, the Trustees, the Trusts, and the Wind Down Administrator (each as applicable) are authorized and directed to take all actions necessary or appropriate to implement and effectuate the relief granted in this Order and the transfers contemplated by the Estate Claims Credit Bid Transaction and the DIP Collateral Credit Bid Transaction, including executing and delivering any further instruments of sale, transfer, conveyance, assignment, confirmation, or correction reasonably necessary to transfer, convey, assign, and vest in the Litigation Trust and the DIP Collateral Trust (or the direct subsidiaries of the DIP Collateral Trust, as applicable) all Litigation Trust Assets and DIP Collateral Trust Assets, respectively, and any additional assets or properties that should have been transferred, assigned, or vested as Litigation Trust Assets or DIP Collateral Trust Assets under the Plan, the Litigation Trust Agreement, or the DIP Collateral Trust Agreement, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, or the vote, consent, authorization, or approval of any Person.

14.     On and after the Confirmation Date, the FBG Debtors shall provide the DIP Collateral Credit Bid Parties any documentation reasonably requested or take any action

reasonably requested by the DIP Collateral Credit Bid Parties to effectuate the transfer of the DIP Collateral Trust Assets to the DIP Collateral Trust pursuant to the DIP Collateral Credit Bid Transaction at the sole cost and expense of the DIP Collateral Trust, paid in a commercially reasonable manner.

15.     Each of the Estate Claims Credit Bid Parties and the DIP Collateral Credit Bid Parties shall reasonably cooperate with the FBG Debtors in implementing and consummating the Estate Claims Credit Bid Transaction, the DIP Collateral Credit Bid Transaction, the Plan, and this Order, including by furnishing information as the FBG Debtors may reasonably request in support of the transactions contemplated hereby.

16.     <u>Free and Clear</u>.  Pursuant to section 363(f) of the Bankruptcy Code, except as expressly provided in the Plan or this Order, and other than the right to receive distributions under the Plan, all Persons and Entities are hereby forever prohibited and permanently enjoined from commencing or continuing any action, or asserting or enforcing any Lien, Claim, encumbrance, Interest, or successor, transferee, derivative, or vicarious liability, against (a) any Estate Claims Credit Bid Parties with respect to the Litigation Trust Assets, (b) any DIP Collateral Credit Bid Parties with respect to the DIP Collateral Trust Assets, (c) the Litigation Trust Assets, or (d) the DIP Collateral Trust Assets, in each case arising from or relating to any act, omission, obligation, or liability of any FBG Debtor or any Estate arising prior to the transfer or vesting of such assets. For the avoidance of doubt, nothing in this paragraph shall enjoin, bar, limit, or impair the right of any defendant to a Cause of Action transferred to or held by a Trust to assert, in response to such Cause of Action, any defense, counterclaim, setoff, recoupment, or other right or argument that such defendant would otherwise be entitled to assert.

17.     Trust Funding.  Entry of this Order constitutes full and final approval of (i) the Litigation Trust Cash Funding, the Initial Litigation Trust Funding Commitments, the Additional Litigation Trust Funding, and the DIP Collateral Trust Funding (collectively, the "**Trust Funding**") and (ii) all related processes and procedures, as outlined in the Solicitation Materials (including the Lender Forms), the Plan, the Plan Supplement, and this Order, effective upon the Confirmation Date.  The contributors of the Trust Funding, including certain members of the Ad Hoc Group, the Ad Hoc Group SteerCo, the Litigation Trust Backstop Parties, the Litigation Trust Class 1 Funding Contributors, and the DIP Collateral Trust Funding Contributors (collectively, the "**Trust Funders**"), are extending credit to the DIP Collateral Trust and Litigation Trust, as applicable, in good faith and, as such, the Trust Funders are entitled to all the protections afforded under section 364(e) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization provided herein with respect to the Trust Funding shall not affect the validity of any such funding or the protections afforded to the Trust Funders.

18.     Litigation Trust Funding.  Upon entry of this Order and execution of the Litigation Trust Agreement, the Trust Funders for the Litigation Trust, pursuant to sections 105, 363(b) and (f), and 1123(a)(5)(D) of the Bankruptcy Code, the Lender Forms, and the terms of the Plan, shall be deemed to have committed their Initial Litigation Trust Funding Commitments and shall be deemed to have sold, assigned, conveyed, transferred, and delivered their Initial Litigation Trust Funding Commitments to the Litigation Trust, and such assets shall be deemed to have vested in the Litigation Trust free and clear of all Liens, Claims, encumbrances, and Interests (legal,

beneficial, or otherwise) in accordance with the terms of the Plan, the Solicitation Materials (including the Lender Forms), and the Plan Documents.

19.     Entry of this Order constitutes full and final approval of the Trust Funding, including the Initial Litigation Trust Funding Commitments and the Litigation Trust Backstop Commitments, including the commitments of the Litigation Trust Backstop Parties and all premiums, fees, and obligations payable in connection therewith, as provided in the Plan and the Class 1 Litigation Trust Waterfall, each a bargained-for and integral component of the Plan and the Plan Settlement.   The interests, premiums, returns, and other consideration payable to the Litigation Trust Backstop Parties are approved as actual and necessary, fair and reasonable, and earned in full as of entry of this Order.   Upon entry of this Order and execution of the Litigation Trust Agreement, the Initial Litigation Trust Funding Commitments and the Litigation Trust Backstop Commitments shall constitute legal, valid, and binding obligations of the parties thereto and be enforceable in accordance with their respective terms, and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, usury, or subordination under applicable law, the Plan, or this Order, and the Litigation Trust shall be authorized to incur or enforce the obligations under the Litigation Trust Agreement or in any Litigation Trust Funding Agreement with respect to the Initial Litigation Trust Funding Commitments and the Litigation Trust Backstop Commitments and use the proceeds of such Initial Litigation Trust Funding Commitments and Litigation Trust Backstop Commitments, in each case, in accordance with the terms of the Plan, this Order, the Litigation Trust Agreement, and any Litigation Trust Funding Agreement, without further notice to or order of the Bankruptcy Court,

act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person.

20.     DIP Collateral Trust Funding.  Upon entry of this Order and execution of the DIP Collateral Trust Agreement, (a) the Administrative Agent (as defined in the DIP Credit Agreement) is authorized to disburse proceeds of sales of Collateral (as defined in the DIP Credit Agreement) to the DIP Collateral Trust on behalf of the DIP Collateral Trust Funding Contributors, (b) the DIP Collateral Trust Funding Contributors for the DIP Collateral Trust, pursuant to sections 105, 363(b) and (f), and 1123(a)(5)(D) of the Bankruptcy Code, shall be deemed to have sold, assigned, conveyed, transferred, and delivered the DIP Collateral Trust Funding to the DIP Collateral Trust, and (c) such funding shall be deemed to have vested in the DIP Collateral Trust free and clear of all Liens, Claims, encumbrances, and Interests (legal, beneficial, or otherwise) in accordance with the terms of the Plan, the Solicitation Materials (including the Lender Forms), and the Plan Documents.

21.     Class 1 Funding Interests.  Entry of this Order constitutes full and final approval of requirements for the issuance of Class 1 Litigation Trust Interests and Class 1 DIP Collateral Trust Interests (collectively, the "**Class 1 Funding Interests**").  The issuance of the Class 1 Funding Interests is fair and reasonable, complies with the Bankruptcy Code, and is an essential component of the Plan. As of the date of entry of this Order, the terms and conditions of the Class 1 Funding Interests shall have been fully satisfied by the Trust Funders, the Trust Funding and related Class 1 Funding Interests shall have been fully earned, and the amount of the Class 1 Funding Interests

shall be a bargained-for and integral part of the transactions and Settlements contemplated under the Plan.

22.     Litigation Trust Agreement and DIP Collateral Trust Agreement.   Upon the establishment of the DIP Collateral Trust and the Litigation Trust, each holder of Litigation Trust Interests and DIP Collateral Trust Interests, as applicable, shall be deemed to be a party to the Litigation Trust Agreement and the DIP Collateral Trust Agreement, as applicable, without the need for execution by such holder.  The Litigation Trust Agreement and the DIP Collateral Trust Agreement, as appliable, shall be binding on all Persons receiving, and all holders of, Litigation Trust Interests and DIP Collateral Trust Interests (and their respective successors), including holders of Litigation Trust Class 3(b) Interests, whether such Litigation Trust Interests and DIP Collateral Trust Interests are received or are to be received on or after the Confirmation Date, and regardless of whether such Person executes or delivers a signature page to the Litigation Trust Agreement and DIP Collateral Trust Agreement.

23.     The foreclosure upon the ABL Collateral Trust Assets by the ABL Secured Parties (the "**ABL Foreclosure**") is hereby approved.  Upon the establishment of the ABL Collateral Trust, the ABL Secured Parties, pursuant to sections 105, 363(b) and (f), and 1123(a)(5)(D) of the Bankruptcy Code, shall be deemed to have foreclosed upon the ABL Collateral Trust Assets and such assets shall be deemed to have vested in the ABL Collateral Trust free and clear of all Liens, Claims, encumbrances and Interests (legal, beneficial, or otherwise).  The ABL Foreclosure was negotiated among all parties at arm's-length, without collusion or fraud, and in good faith.  The consideration provided in connection with the ABL Foreclosure constitutes reasonably equivalent value and fair consideration.  None of the FBG Debtors, the ABL Secured Parties, nor any of their respective affiliates, officers, directors, managers, members, partners, principals, or shareholders

(or equivalent), or any of their respective advisors, representatives, attorneys, successors, or assigns, nor any other Persons have engaged in any conduct that would cause or permit the ABL Foreclosure to be avoided, or any costs or damages to be imposed, under the applicable provisions of the Bankruptcy Code or any other applicable law, including under section 363(n) of the Bankruptcy Code.  The ABL Secured Parties, the ABL Collateral Trust, and the ABL Collateral Trust Beneficiaries are entitled to all the protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law.  The ABL Foreclosure is undertaken without collusion and in good faith as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the ABL Foreclosure shall not affect the validity of the ABL Foreclosure, or any aspects of the ABL Foreclosure that are integral to the transaction, including the distribution of the ABL Collateral Trust Interests to the ABL Collateral Trust Beneficiaries and the ABL Collateral Trust Waterfall, unless such authorization and consummation of such sale are duly and properly stayed pending such appeal.  None of the ABL Secured Parties, the ABL Collateral Trust, the ABL Collateral Trustee, the ABL Collateral Trust Beneficiaries, or the ABL Collateral Trust Assets shall be deemed a successor to, or continuation of, any FBG Debtor or Estate by reason of the ABL Foreclosure.  The ABL Foreclosure and the vesting of the ABL Collateral Trust Assets in the ABL Collateral Trust shall not be subject to any bulk sales law of any jurisdiction and shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or similar tax pursuant to section 1146(a) of the Bankruptcy Code. For U.S. federal income tax purposes, the transfer of the ABL Collateral Trust Assets described in

this Order shall be treated in the manner provided in the ABL Collateral Trust Agreement, and nothing in this Order shall be construed to alter such treatment.

**G.  Implementation**

24.      The FBG Debtors, the Trusts, the Trustees, the Wind Down Administrator, the Claims Ombudsman, and the appropriate officers, representatives, trustees, and members of the boards of managers or boards of directors thereof (including, for the avoidance of doubt, the Litigation Trust Oversight Committee and the DIP Collateral Trust Oversight Committee), as applicable, shall be authorized to and may issue, execute, deliver, file, or record such documents, securities, contracts, instruments, releases, and other agreements, including the Plan Documents, and take any other actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, including any and all transactions or other actions delineated in the Plan or otherwise contemplated by the Plan or the Plan Documents (including, without limitation, the transactions, undertakings, obligations, guarantees, and fees and expenses contemplated by the Litigation Trust Agreement and the DIP Collateral Trust Agreement), without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person (including, without limitation, by any stockholder, member, equity holder, board of directors, or board of managers), except for those expressly required pursuant to the Plan.  All actions contemplated by the Plan and this Order, including all actions in connection with any Plan Document, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, without further application to, or order of this Court, or further action by the respective officers, directors, managers, members, stockholders, or equity holders of the FBG Debtors.

25.      Pursuant to the terms of the Plan (in accordance with the Litigation Trust Agreement, the DIP Collateral Trust Agreement, and the ABL Collateral Trust Agreement, as

applicable), on and after the date each Trust is established (as applicable), the Trustees and the Wind Down Administrator (as applicable) may use, acquire, and dispose of property and prosecute, compromise, or settle any Claims and Interests without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than, with respect to the Trustees, restrictions expressly imposed by the Plan, this Order, or the Trust Agreements.

26.     In accordance with the Plan and pursuant to this Order, confirmation of the Plan does not provide any of the FBG Debtors with a discharge under section 1141 of the Bankruptcy Code.

27.     <u>Delegation of Economic and Voting Rights to the DIP Collateral Trust</u>.  Upon entry of this Order and execution of the DIP Collateral Trust Agreement, with respect to any DIP Claims, First Lien Claims, or Second Lien Claims that are not contributed into the DIP Collateral Trust, in accordance with the Plan, the DIP Collateral Trust Agreement, and this Order, Required Lenders (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, Required Lenders (as defined in the Side-Car Term Loan Agreement) under the Side-Car Term Loan Agreement, Required Lenders (as defined in the First Lien Term Loan Agreement) under the First Lien Term Loan Agreement, and Required Lenders (as defined in the Second Lien Term Loan Agreement) under the Second Lien Term Loan Agreement, shall be automatically and without any further notice, deemed to delegate all voting and economic rights with respect to the Secured Lending Agreements[4] to the DIP Collateral Trust Oversight Committee and the DIP Collateral Trust, respectively.  Entry of this Order shall constitute full and final approval of such delegation, and

---

[4]     "**Secured Lender Agreements**" shall mean, collectively, the DIP Credit Agreement, the Side-Car Term Loan Agreement, the First Lien Term Loan Agreement, and the Second Lien Term Loan Agreement.

the applicable administrative and collateral agents under the Secured Lender Agreements shall be fully authorized to exercise all rights and remedies with respect to the collateral under the Secured Lender Agreements, and Required Lenders under the Secured Lender Agreements will be deemed to have consented to and/or directed the applicable agents as such.  To the extent a Secured Lender Agreement must be amended to effectuate this delegation, this Order shall be deemed to be such applicable amendment.

28.     Further, upon entry of this Order and execution of the Litigation Trust Agreement and the DIP Collateral Trust Agreement, the following shall be deemed approved by Required Lenders (in each case, as defined in the respective Secured Lender Agreement) under the Secured Lender Agreements, by virtue of the Plan and the solicitation, voting, notice, and objection procedures attached to the Disclosure Statement Order, and the Solicitation Materials (including the Lender Forms):  (i) the Estate Claims Credit Bid Transaction and the DIP Collateral Credit Bid Transaction; (ii) upon consummation of the DIP Collateral Credit Bid Transaction, the DIP Collateral Trust Assets, including all DIP Collateral Sale Proceeds and any property recovered on account of the Remaining Lender Claims (other than Litigation Trust SPV Recoveries), shall be deemed automatically and irrevocably transferred to, and vested in, the DIP Collateral Trust (or the direct subsidiaries of the DIP Collateral Trust, as applicable), free and clear of all Liens, Claims, encumbrances, and Interests, and no such property shall revert to the FBG Debtors or their Estates; (iii) upon consummation of the DIP Collateral Credit Bid Transaction, the delegation of all voting rights to the DIP Collateral Trustee such that the DIP Collateral Trustee will be authorized to exercise all rights and remedies with respect to the DIP Collateral, and (iv) the Required Lenders (in each case, as defined in the respective Secured Lender Agreement) under the Secured Lender Agreements shall delegate all voting and economic rights with respect thereto to

the DIP Collateral Trust Oversight Committee and the DIP Collateral Trust, respectively, and will be deemed to have consented to or directed the DIP Collateral Trustee as such; and (iv) upon consummation of the Estate Claims Credit Bid Transaction, the Litigation Trust Assets shall be deemed automatically and irrevocably transferred to, and vested in, the Litigation Trust, free and clear of all Liens, Claims, encumbrances, and Interests, and no such property shall revert to the FBG Debtors or their Estates.

29.     In addition, upon entry of this Order and execution of the Litigation Trust Agreement and the DIP Collateral Trust Agreement, (i) the obligations of GLAS USA LLC ("**GLAS**") as the Side-Car Term Loan Agent under or in connection with the Side-Car Term Loan Agreement shall be discharged and its duties thereunder shall be deemed fully satisfied and, subject to payment of the GLAS's fees and expenses (including those of its counsel) invoiced to the FBG Debtors no later than 3 days before the Effective Date, Wilmington Savings Fund Society, FSB ("**WSFS**") shall replace GLAS USA LLC as the SideCar Term Loan Agent under the Side-Car Term Loan Agreement, with all rights, powers, duties, and obligations of the replaced agents vesting in WSFS; *provided* that, for the avoidance of doubt, GLAS as the former or replaced Side-Car Term Loan Agent shall continue be entitled to all protections, benefits, privileges, indemnities, and related rights under the DIP Order, the Plan, this Order and the Side-Car Term Loan Agreement and related documents; (ii) the Required Lenders (as defined in the Sidecar Term Loan Agreement) under the Sidecar Term Loan Agreement shall be deemed to approve the succession of GLAS by WSFS as the Side-Car Term Loan Agent; and (iii) upon WSFS succeeding GLAS as the Side-Car Term Loan Agent, the documentation governing the Sidecar Term Loan Collateral shall be deemed modified to reflect that WSFS is the Sidecar Term Loan collateral agent without the necessity of the execution, recordation, or filing by any party of mortgages, security

37

agreements, control agreement, pledge agreements, financing statements, intellectual property filing or similar documents, any notation of certificates of title for titled goods or similar documents, instruments, deeds, charges or certificates without any further action by any party.

30.     On and after the Confirmation Date, no individual holder of DIP Claims, First Lien Claims (including, for the avoidance of doubt, the Side-Car Term Loan Claims) or Second Lien Claims, whose rights have been delegated to the DIP Collateral Trust Oversight Committee may, individually or in any sub-group: (i) accelerate, terminate, demand payment, exercise any remedy, or take enforcement or collection action; (ii) file or join any motion for stay relief, trustee appointment, or conversion; (iii) commence or join any action against any Debtor, the Litigation Trust, the DIP Collateral Trust, or any trust asset; or (iv) direct any agent to take such actions. This provision (i) constitutes both (A) an enforcement of the existing collective-action limitations in the DIP Credit Agreement and DIP Order and (B) an independent injunction enforceable by the DIP Collateral Trust, the DIP Collateral Trustee, and the DIP Collateral Trust Oversight Committee, and (ii) binds each lender and its successors, assigns, participants, and transferees.

31.     For the avoidance of doubt, Intercompany Claims and any other intercompany claims held by an FBG Debtor against any SPV Debtor or non-Debtor Affiliate of an FBG Debtor shall be included in the definition of "Estate Claims" and controlled by the Litigation Trust, with consultation rights for the Wind Down Administrator in connection with non-litigation matters that implicate the Estates post-Confirmation Date.

**H.  Administrative Expense Claims Consent Program**

32.     The terms of the Administrative Expense Claims Consent Program, including all other relevant and necessary documents related thereto, is hereby approved and shall be effective immediately and binding on all parties upon the entry of this Order.

33.     Unless otherwise agreed or stipulated to by the FBG Debtors, following the FBG Debtors' noticing and conduct of the Administrative Expense Claims Consent Program in accordance with the Plan, all Settled Administrative Expense Claims shall be deemed Allowed subject to and in accordance with the terms of the Administrative Expense Claims Consent Program and this Order.  Kroll is thereafter authorized to update the claims register for these Chapter 11 Cases to reflect the terms of this paragraph 33.  Holders of Administrative Expense Claims that timely, properly, and affirmatively opt in to the Administrative Expense Claims Consent Program are deemed to accept treatment under the Plan and the Administrative Expense Claims Consent Program in accordance therewith in satisfaction of section 1129(a)(9) of the Bankruptcy Code.  Holders of Administrative Expense Claims that do not agree to participate in the Administrative Expense Claims Consent Program shall receive treatment under the Plan consistent with section 1129(a)(9) of the Bankruptcy Code.

34.     Notwithstanding anything in the Plan, in the event a Disputed Administrative Expense Claim ultimately becomes Allowed, the holder of such claim may, within 30 days of such Allowance, complete and submit an Administrative Expense Claims Consent Program Opt-In Form to share pro rata with any remaining unpaid Settled Administrative Expense Claims on a go-forward basis.

35.     For the avoidance of doubt, holders of Allowed Administrative Expense Claims and Allowed Priority Claims shall begin receiving distributions from the Litigation Trust in accordance with the terms of the Plan and the Litigation Trust Waterfall, prior to and regardless of the occurrence of the Effective Date.

## I.  Preference Settlement

36.     The terms of the Preference Settlement, including all other relevant and necessary documents related thereto, is hereby approved and shall be effective immediately and binding on all parties upon the entry of this Order.

37.     For the avoidance of doubt and notwithstanding anything to the contrary in the Preference Settlement Election Form attached as Exhibit 12 to the Disclosure Statement Order, any party that objects to the Plan, this Order, any related settlement, or any relief sought in furtherance thereof, will not be barred from participating in the Preference Settlement as a result of such party's objection.

38.     For the avoidance of doubt, notwithstanding anything to the contrary in Section 6.11(a)(i) of the Plan, a determination that a Trade Creditor, Supply Chain Financer, or Factor meets the definition of Adverse Conduct and therefore is ineligible for the Preference Settlement requires a Final Order.

## J.  Claim Allowance and Disallowance

**39.**     All Claims expressly Allowed or Disallowed pursuant to the Plan and/or this Order shall be Allowed or Disallowed, respectively, and Kroll is authorized to update the claims register maintained in the Chapter 11 Cases accordingly.

## K. Distributions

**40.**     The FBG Debtors, the Trustees, and the Claims Ombudsman are authorized and directed to make all distributions under the Plan pursuant to the terms of the Plan and the Trust Agreements and to pay, as applicable, any fees and expenses approved by this Order or any other order of this Court.

**L.  Executory Contracts and Unexpired Leases**

41.     Entry of this Order shall constitute approval of the assumptions, assumptions and assignments, or rejections, as applicable, provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by this Court that the FBG Debtors or applicable Estate representative, or the assignee of such executory contract or unexpired lease (as applicable) have provided adequate assurance of future performance under such executory contract or unexpired lease.  Each executory contract and unexpired lease assumed pursuant to the Plan shall vest in and be fully enforceable in accordance with its terms, except as modified by the provisions of the Plan, any Final Order of this Court authorizing and providing for its assumption, or applicable law.

42.     Notwithstanding anything to the contrary in the Plan or this Order, any unexpired lease subject to a stipulation and agreed order extending the time, pursuant to section 365(d)(4)(B)(i) of the Bankruptcy Code, by which an FBG Debtor may assume or reject such lease, including the stipulations and agreed orders filed on the docket,[5] shall not be rejected as of the Confirmation Date but shall be rejected or assumed in accordance with the deadline set forth in the applicable stipulation and agreed order (as may be further extended from time to time). Such stipulations and agreed orders shall remain in full force and effect and shall be binding on the parties following the Confirmation Date.

**M. Compromises and Settlements**

43.     The compromises, settlements, and releases described in the Plan and Plan Supplement shall be deemed non-severable from each other and from all other terms of the Plan. In accordance with and subject to the provisions of the Plan (including the consent rights

---

[5]    *See* Docket Nos. 3139, 3105, 3094, 3054, 2526, 2528, 3042, 2500, 2464, 2523, 2414, 2435, 2446, 2463, 2501, 2525, 2524, 2530.

thereunder), pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of this Court, after the Confirmation Date, the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, or the applicable Estate representative may compromise and settle any Claims against, and Interests in, the FBG Debtors and their Estates; *provided* that nothing in this paragraph shall authorize the Wind Down Administrator, the Claims Ombudsman, or any Estate representative to compromise, settle, release, or otherwise dispose of any Claim, Cause of Action, or asset that constitutes an asset of any Trust without the prior written consent of the Trustee of such Trust.

44.     Certain Claims and Causes of Action may exist between one or more of the FBG Debtors, which Claims and Causes of Action may have been settled, and any such settlements are reflected in the treatment of the Intercompany Claims and the Claims against and Interests in each FBG Debtor.  The Plan shall be deemed a motion to approve the good faith compromise and settlement of any such Intercompany Claims and Causes of Action pursuant to Bankruptcy Rule 9019.

**N.  Consolidation for Distribution Purposes**

45.     Entry of this Order shall constitute approval, pursuant to sections 105(a) and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, of the treatment of the FBG Debtors as a single consolidated Estate solely for purposes of distributions under the Plan, as provided for in Section 5.2(k) of the Plan.  The foregoing consolidation of the FBG Debtors solely for distribution purposes under the Plan shall not result in the merger or otherwise affect the separate legal existence of each FBG Debtor other than with respect to distribution rights under the Plan.  The Plan Settlement shall not (other than for purposes related to funding Plan Distributions under the Plan) affect (u) the legal and organizational structure of the FBG Debtors, (v) executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will

be assumed or rejected, (w) any agreements entered into by the Trusts on or after the date such Trusts are established, (x) the FBG Debtors' or any other Person's ability to subordinate or otherwise challenge Claims, (y) any Causes of Action or Avoidance Actions or defenses thereto, which in each case shall survive entry of this Order as if there had been no Plan Settlement, and (z) distributions to the FBG Debtors or Trusts from any insurance policies or the proceeds thereof.

**O.  Conditions Precedent to Effective Date**

46.     The Plan shall not become effective unless and until all conditions set forth in Section 12.1 of the Plan have been satisfied or waived (if applicable) pursuant to Section 12.2 of the Plan.

47.     No condition precedent that relates to or affects the DIP Claims, the First Lien Claims, the Second Lien Claims, the DIP Collateral, the First Lien Term Loan Collateral, the Second Lien Term Loan Collateral, the DIP Collateral Trust, the DIP Collateral Trust Assets, or any other right of the DIP Secured Parties, the First Lien Secured Parties, or the Second Lien Secured Parties under the Plan may be waived without the prior written consent of the DIP Collateral Trustee.

48.     No condition precedent that relates to or affects the ABL Claims, the ABL Priority Collateral, the ABL Collateral Trust, the ABL Collateral Trust Assets, the Factored Receivables Account, the ABL Intercreditor Agreement, or any other right of the ABL Secured Parties under the Plan may be waived without the prior written consent of the ABL Agent.

**P.  Release, Exculpation, and Injunction Provisions**

49.     As of the Confirmation Date and the Effective Date, as applicable, except for the rights that remain in effect from and after the Confirmation Date or the Effective Date, as applicable, to enforce the Plan or any Plan Document, all injunction, release, discharge, and exculpation provisions embodied in the Plan, including those contained in Article XIII of the Plan

43

and in this Order, are hereby approved and shall be effective and binding on all Persons, to the extent provided in the Plan, without further order or action by this Court; *provided* that the FBG Debtors' right to withdraw or revoke the Plan in accordance with Section 15.7 of the Plan is expressly preserved.

50.     Any Person (including any Affiliate of any Person), whether directly, derivatively, or otherwise, is hereby permanently enjoined from the commencement or prosecution of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released or exculpated pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan.

51.     Notwithstanding anything to the contrary in the Plan or this Order, all rights of setoff and recoupment of the DIP Secured Parties and the Prepetition Secured Parties against the FBG Debtors, any Trust, or any other Person, whether arising under section 553 of the Bankruptcy Code, any DIP Document, any Prepetition Credit Document (as defined in the DIP Order), or applicable non-bankruptcy law, are fully preserved and shall not be waived, released, discharged, enjoined, or otherwise impaired by the Plan, this Order, or any Definitive Document.

52.     Notwithstanding anything in the Plan (including, for the avoidance of doubt, the Plan Supplement) or the Disclosure Statement, nothing in this Order or the Plan shall release any claims or causes of action (including any Estate Claims) against Jefferies Finance LLC and its affiliates or representatives, including, for the avoidance of doubt, Jefferies Investment Advisers, Point Bonita Capital or Point Bonita Capital Fund, and Point Bonita Capital Master Fund A L.L.C., except in Jefferies Finance LLC's capacity as a former administrative and collateral agent under

the First Lien Term Loan Agreement and a former administrative and collateral agent under the Second Lien Term Loan Agreement.

## Q.   Dissolution of Creditors' Committee

53.    On the Confirmation Date, the Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided* that the Creditors' Committee shall continue to exist for the sole purpose of prosecuting any final fee applications of the Professionals of the Creditors' Committee.  The FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Trusts, and the Trustees shall not be responsible for paying the fees or expenses incurred by the members of or advisors to the Creditors' Committee after the Confirmation Date.

## R.   Discharge of Examiner

54.    On the Confirmation Date, the Examiner (as defined in Docket Nos. 726 and 1260) shall be discharged from all rights and duties arising from, or related to the Chapter 11 Cases; *provided* that the Examiner shall continue to exist for the sole purpose of prosecuting any final fee applications of the Professionals of the Examiner.  None of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Trusts, or the Trustees shall be responsible for paying the fees or expenses incurred by the Examiner or advisors to the Examiner after the Confirmation Date.

## S.   Discharge of Retiree Committee

55.    On the Confirmation Date, the Non-Union Retiree Committee (as defined in  the *Order (I) Authorizing and Directing the United States Trustee to Appoint a Committee of Retired Employees and (II) Granting Related Relief* (Docket No. 3060)) shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, these chapter 11 cases; *provided* that the Non-Union Retiree Committee shall continue to exist for the

sole purpose of prosecuting any final fee applications of the professionals of the Non-Union Retiree Committee. None of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Trusts, or the Trustees shall be responsible for paying the fees or expenses incurred by the Non-Union Retiree Committee or advisors to the Non-Union Retiree Committee after the Confirmation Date.

## T.  Other Secured Claims

56.     Notwithstanding anything in the Plan or this Order to the contrary, to the extent any assets of the FBG Debtors that are subject to a validly perfected first-priority Lien securing an Other Secured Claim are transferred to the DIP Collateral Trust or the ABL Collateral Trust, such Lien shall attach to the DIP Collateral Trust's or the ABL Collateral Trust's assets, as applicable, to the same extent and with the same priority as before such transfer, and such Other Secured Claim shall be satisfied from the proceeds from the sale of such assets.

## U.  Release of Liens

57.     Subject to Section 4.10 of the Plan, and except as otherwise provided in the Plan (including for the purpose of evidencing a right to a distribution pursuant to the Plan) or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and without the need for any further organizational action or approval of any member, board of directors, board of managers, managers, management, or holders of FBG Debtor Interests, all notes, instruments, other securities, and other evidence of debt issued by the FBG Debtors, and any rights of any holder in respect thereof, shall be deemed canceled and of no force or effect and the obligations of the FBG Debtors thereunder shall be deemed fully satisfied, settled, and released; *provided* that the foregoing shall not apply to the DIP Documents, Remaining DIP A Claims, Remaining Roll-Up Claims, First Lien Term Loan Liens, Sidecar Term Loan Liens, Second Lien Term Loan Liens, the ABL Credit Documents, the ABL Claims, or the ABL Secured

Parties' Liens on the ABL Priority Collateral (each, as defined in the DIP Order or the Plan, as applicable); *provided further* that notwithstanding anything in this Order or the Plan to the contrary, nothing in this Order or in the Plan shall, or shall be construed to (a) release, vitiate, or otherwise impair any interest held by, or any rights of, any Professional Person(s) in the Professional Fees Escrow Account or the Carve-Out (which excludes, for the avoidance of doubt, the Litigation Trust Assets, the DIP Collateral Trust Assets, and the ABL Collateral Trust Assets) pursuant to the terms of the DIP Order, and all such interests and rights are hereby preserved, or (b) modify any rights of the Trusts or obligations of the Estates with respect to the Litigation Trust Assets, the DIP Collateral Trust Assets, or the ABL Collateral Trust Assets, as applicable.

58.     Subject to paragraph 58 of this Order, pursuant to the terms of the Plan, the Remaining Lender Claims, the Adequate Protection Liens, the Adequate Protection Obligations, and all other rights of the DIP Secured Parties and the Prepetition Secured Parties shall survive pursuant to the terms of the DIP Order and are not modified, impaired, or discharged by entry of this Order unless expressly provided herein or agreed by the applicable Agents.  Such obligations shall continue in full force and effect against the FBG Debtors and the Estates until the later of (i) the Effective Date and (ii) the date that all bona fide lien disputes and adversary proceedings are fully adjudicated and as otherwise provided by the Plan and this Order.

59.     Notwithstanding anything else provided in this Order or the Plan, in consideration of the settlements reached in connection with the Plan, including the Plan Settlement, and the treatment provided under the Plan, the Adequate Protection Claims and DIP Superpriority Claims (each as defined in the DIP Order) held by each of the Prepetition Secured Parties against the FBG Debtors, if any, shall not be entitled to any recoveries under the Plan through the Litigation Trust

Waterfall.  The occurrence of the Effective Date is not subject to the payment, in any amount, of any DIP Superpriority Claims or Adequate Protection Claims.

60.     Notwithstanding anything to the contrary in the Plan, this Order, any Plan Supplement, or prior order of the Bankruptcy Court, any reference to (x) "DIP Collateral," "DIP assets," or similar related term or (y) "Prepetition Term Priority Collateral," "Term Priority Collateral," or similar related term shall be interchangeable with the other if (i) a subsequent Final Order or (ii) a settlement agreement between the DIP Secured Parties and the Prepetition Secured Parties provides that any asset initially identified by reference to "DIP Collateral," "DIP assets," or similar related term, on the one hand, or "Prepetition Term Priority Collateral," Term Priority Collateral," or similar related term, on the other hand, is collateral of the other; *provided* that nothing in this paragraph shall modify, impair, or affect the definition or scope of "ABL Collateral," "ABL Priority Collateral," "ABL Junior Collateral," "ABL assets," or any similar related term, or any right, title, or interest of the ABL Agent, ABL Lenders, or any of the ABL Secured Parties with respect thereto, it being understood that this paragraph is intended solely to clarify rights as between the DIP Secured Parties and the parties other than the ABL Secured Parties.

## V.  Retention of Jurisdiction

61.     Subject to <u>Article XIV</u> of the Plan, pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this Court shall retain exclusive jurisdiction with respect to all matters arising from or related to these Chapter 11 Cases, the Plan, and the implementation of this Order, including, without limitation, those matters set forth in <u>Article XIV</u> of the Plan.

62.     Notwithstanding anything in the Plan to the contrary, (i) the Bankruptcy Court shall not retain exclusive jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers

48

disputes to a different court, and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents and (ii) the Litigation Trust's prosecution, settlement, negotiation, and other related actions in connection with the Litigation Trust Assets shall not be subject to the exclusive jurisdiction of the Bankruptcy Court, and the Litigation Trustee shall have the ability to pursue, prosecute, settle, abandon, or otherwise resolve the Litigation Trust Assets, including through the commencement, participation, defense, or continuation of legal proceedings, including judicial, arbitration or administrative proceedings, in any domestic or foreign jurisdiction.

## W. Documents, Mortgages, and Instruments

63.     Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Order and directed pursuant to section 1142 of the Bankruptcy Code to take such steps with respect to the foregoing to implement the transactions necessary to consummate the Plan.

64.     No bulk sales law or similar law of any state or other jurisdiction shall apply to the Estate Claims Credit Bid Transaction, the DIP Collateral Credit Bid Transaction, or the transfer or vesting of any Litigation Trust Assets or DIP Collateral Trust Assets under the Plan or this Order. Each federal, state, commonwealth, local, or other governmental agency, and each recorder, registrar, filing officer, or similar official, is authorized and directed to accept and rely upon this Order as sole and sufficient evidence of the transfer and vesting of the applicable Litigation Trust Assets or DIP Collateral Trust Assets in the Litigation Trust or DIP Collateral Trust, as applicable, free and clear of all Liens, Claims, encumbrances, and Interests, and to record, file, register, or release any documents or instruments necessary or appropriate to effectuate or evidence such transfer, in each case without further order of the Bankruptcy Court or act of any Person.

65. Transfers of the Litigation Trust Assets to the Litigation Trust or the DIP Collateral Trust Assets to the DIP Collateral Trust (or the direct subsidiaries of the DIP Collateral Trust, as applicable) pursuant to the Estate Claims Credit Bid Transaction or the DIP Collateral Credit Bid Transaction, respectively, shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code. For U.S. federal income tax purposes, the transfers of Litigation Trust Assets and the DIP Collateral Trust Assets described in this Order shall be treated in a manner provided in the Litigation Trust Agreement or the DIP Collateral Trust Agreement, as applicable, and nothing in this Order shall be construed to alter such treatment.

66. Each of the Litigation Trustee and the DIP Collateral Trustee is authorized to execute, deliver, and perform under the Litigation Trust Agreement and the DIP Collateral Trust Agreement, respectively, and all other documents necessary or appropriate to implement the Plan, and all such documents shall be deemed executed and delivered as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person. The Litigation Trust Agreement and the DIP Collateral Trust Agreement, as applicable, shall be binding on all Entities receiving, and all holders of, Litigation Trust Interests and DIP Collateral Trust Interests (and their respective successors), including holders of Litigation Trust Class 3(b) Interests, whether such Litigation Trust Interests and DIP Collateral Trust Interests are received or are to be received on or after the Confirmation Date, and regardless of whether such Entity executes or delivers a signature page to the Litigation Trust Agreement and DIP Collateral Trust Agreement.

## X.  Reversal, Stay, Modification, Reconsideration, or Vacatur of Order

67. Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, reconsidered, or stayed by subsequent order of

this Court, or any other court, such reversal, stay, modification, reconsideration, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the FBG Debtors or the applicable Estate representative, or any other Person authorized or required to take action to implement the Plan, as applicable, prior to the effective date of such reversal, stay, modification, reconsideration, or vacatur. Notwithstanding any such reversal, stay, modification, reconsideration, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, reconsideration, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

## Y.  Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent

68.     This Order shall constitute a judicial determination and provides that each term and provision of the Plan, as it may have been altered or interpreted in accordance with Section 15.14 of the Plan, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the FBG Debtors or the applicable Trust (as the case may be), and (c) non-severable and mutually dependent.

## Z.  Applicable Non-Bankruptcy Law

69.     Pursuant to sections 1123(a) and 1142 of the Bankruptcy Code, the provisions of this Order, the Plan, the Plan Documents, and any other related documents or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

## AA.    Rights to Bring Causes of Action

70.     In pursuing any Retained Causes of Action, the Trustees, as applicable, shall be deemed trustees for all purposes under section 108 of the Bankruptcy Code, and for the avoidance

of doubt, are entitled to all extension of time and/or tolling provisions provided under section 108 of the Bankruptcy Code in any judicial, arbitration or administrative proceeding, during or after the pendency of these Chapter 11 Cases, including all such benefits to which any of the FBG Debtors as debtor-in-possession would have been entitled had the Trusts not been established, and shall succeed to the FBG Debtors' rights with respect to the periods in which any of the Retained Causes of Action may be brought under section 546 of the Bankruptcy Code.  Upon the dates the Trusts are established, as applicable, and notwithstanding anything to the contrary in the Plan or any other Definitive Document, the Trusts and the Trustees, as applicable, shall be representatives of the Estate of each of the FBG Debtors, appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, for the purposes of pursuing the Retained Causes of Action and carrying out the Trusts' duties under the Trust Agreements, the Plan, this Order, or any other Definitive Document, without modifying the fiduciary duties applicable to the Trusts and the Trustees, as applicable, under the Trust Agreements.  The act of transferring the assets of the Trusts, as authorized by this Order, the Plan, and the Trust Agreements, shall not, and shall not be construed to, destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights (specifically including any extensions available to a trustee or debtor-in-possession under 11 U.S.C. § 108) may be asserted by the Trusts, in any judicial, arbitration, or administrative proceeding, during or after the pendency of these Chapter 11 Cases, as if the asset or right asserted in such judicial, arbitration, or administrative proceeding were an action or other asset still held by the applicable FBG Debtor or FBG Debtor-in-possession.

71.     The Trustees are hereby (a) authorized to execute and perform under the Litigation Trust Agreement, DIP Collateral Trust Agreement, or ABL Collateral Trust Agreement, as applicable, to appear and be heard before the Bankruptcy Court or any other court of competent

jurisdiction on all matters related to the Chapter 11 Cases and/or the Litigation Trust Assets, the DIP Collateral Trust Assets, or the ABL Collateral Trust Assets, as applicable (as a representative of the applicable Trust and/or under section 1123(b) of the Bankruptcy Code as a representative of the FBG Debtors' Estates, as applicable, without modifying the fiduciary duties applicable to the applicable Trustee under the Litigation Trust Agreement, the DIP Collateral Trust Agreement, or the ABL Collateral Trust Agreement, as applicable) and to present to creditors, other courts of competent jurisdiction, and any other Entity the Litigation Trust Agreement, the DIP Collateral Trust Agreement, the ABL Collateral Trust Agreement, the Plan, and this Order as evidence of its authority, and (b) vested with all of the powers and authority set forth in this Order, the Plan, the Litigation Trust Agreement, the DIP Collateral Trust Agreement, the ABL Collateral Trust Agreement, and otherwise as is necessary or proper to carry out the provisions of the Plan, the Litigation Trust Agreement, the DIP Collateral Trust Agreement, or the ABL Collateral Trust Agreement, as applicable (including any rights of the FBG Debtors and the Creditors' Committee's to conduct discovery and oral examinations of any party under Bankruptcy Rule 2004 as such rights existed prior to the dates the Trusts are established, as applicable).

**BB.     Notice of Entry of Confirmation Order and Effective Date**

*72.*     In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Confirmation Date or the Effective Date, as applicable, the FBG Debtors shall serve notice of (i) the entry of this Order substantially in the form attached as **Exhibit B** hereto (the "**Confirmation Notice**") and (ii) the occurrence of the Effective Date, substantially in the form attached as **Exhibit C** hereto (the "**Effective Date Notice**") on all parties who hold a Claim or Interest in these Chapter 11 Cases, the U.S. Trustee, and any other known parties in interest. The FBG Debtors shall cause a summary version of the Confirmation Notice to be published in the *New York Times*, as well as such other publications as the FBG Debtors deem appropriate, as

soon as reasonably practicable following the Confirmation Date.  The Confirmation Notice and Effective Date Notice are hereby approved in all respects and shall be deemed good and sufficient notice of the contents thereof, including the entry of this Order and the occurrences of the Confirmation Date and Effective Date, as applicable.

73.     Following service of the Confirmation Notice, the Trustees shall have no duty or responsibility to file and/or serve any amendments to the Plan Supplement for matters that are not subject to ongoing Bankruptcy Court approval.

**CC.    No Waiver**

74.     Any failure of this Order to specifically include or refer to any particular article, section, or provision of the Plan, the documents contained in the Plan Supplement, or any exhibit or document related thereto, or contemplated thereby, does not, and shall not be, deemed to diminish or impair the effectiveness or enforceability of such article, section, or provision nor constitute a waiver thereof; it being the intention of the Court that all such documents are approved in their entirety.  Nothing in this Order shall constitute or be deemed to be a waiver, modification, or suspension of section 525 of the Bankruptcy Code or any party's rights thereunder.

**DD.    Final Order**

75.     This Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

**EE.    Immediate Binding Effect**

76.     Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Confirmation Date, the terms of this Order shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Trustees, the holders of Claims or Interests (regardless of whether the holders of such Claims or Interests are presumed to have accepted or deemed to

have rejected the Plan), the holders of Settled Administrative Expense Claims, the Preference Settlement Electing Creditors, the Released Parties, the Releasing Parties, the Exculpated Parties, and each of their respective successors and assigns.

**FF.Inconsistency**

77.     In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or this Order).  In the event of an inconsistency between the Plan and the Disclosure Statement, the Plan shall control.  The provisions of the Plan (including the Plan Supplement) and of this Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each.  If there is any inconsistency between any Plan (including any Plan Supplement) provision and any provision of this Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Order shall govern and any such provision of this Order shall be deemed a modification of the Plan.

78.     Notwithstanding anything to the contrary in the Plan, any Plan Supplement, or this Order, nothing in any Plan Supplement, this Order, or any other prior Order of the Court shall serve to modify the defined term "Estate Claims" as defined in the Plan absent the express, written, and unequivocal consent of the Litigation Trustee, subject to further Order of the Court.

**GG.     Term of Injunctions or Stays**

79.     Unless otherwise provided in the Plan or in this Order, all injunctions or stays arising under or entered during these Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**HH.    Substantial Consummation**

**80.**    Upon the occurrence of the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

**II.  First-Day and Other Orders**

81.    Upon entry of this Order, and notwithstanding any prior order of this Court to the contrary, the FBG Debtors shall no longer be required and shall no longer have any obligation to comply with any notice or reporting obligations under the orders at Docket Nos. 187, 196, 519, 520, 567, 604, and 608.

82.    Unless explicitly provided otherwise herein, any stipulation, settlement, or order previously entered by the Bankruptcy Court in these Chapter 11 Cases shall remain in full force and effect in accordance with its terms following the Confirmation Date, and all rights and remedies thereunder relating to the Litigation Trust Assets, the DIP Collateral Trust Assets, or the ABL Collateral Trust Assets shall be enforceable by, and shall inure to the benefit of, the Litigation Trust, the DIP Collateral Trust, or the ABL Collateral Trust, as applicable.

83.    For purposes of enforcing any stipulation, settlement, or order entered in these Chapter 11 Cases, each reference to an "FBG Debtor," "debtor," or "debtor-in-possession" therein shall, to the extent such order relates to Litigation Trust Assets, the DIP Collateral Trust Assets, or the ABL Collateral Trust Assets, be deemed to include, and be enforceable by, the Litigation Trust, the DIP Collateral Trust, or the ABL Collateral Trust, as applicable.

84.    Any amounts payable to, recoverable by, or recovered by the FBG Debtors or their Estates under any stipulation, settlement, or order entered in these Chapter 11 Cases that would have otherwise constituted DIP Collateral Trust Assets shall be contributed and paid to the DIP Collateral Trust, shall constitute DIP Collateral Trust Assets, and shall not be retained by, or revert to, the FBG Debtors or their Estates. For the avoidance of doubt, Trust Assets (as defined in the

*Motion of Debtors for an Order (I) Directing Trustee To Turn Over And Deliver Trust Assets To the Debtors, (II) Authorizing the Debtors to Exercise Ownership Rights Over Such Assets, (III) Authorizing Termination of Trust, (IV) Authorizing Termination of Deferred Compensation Plan Effective as of Petition Date, and (V) Granting Related Relief* (Docket No. 3109) (the "**Rabbi Trust Motion**") must be escrowed by the FBG Debtors once received pursuant to the order granting the relief requested by the Rabbi Trust Motion (Docket No. 3372), and may not be used by the FBG Debtors or any of their successors, including the Wind Down Administrator, absent the consent of (i) prior to execution of the DIP Collateral Trust Agreement, the Ad Hoc Group and (ii) after the execution of the DIP Collateral Trust Agreement, the DIP Collateral Trustee.

**JJ.     Factored Receivables Account**

85.     The FBG Debtors shall continue to direct, to the extent received by the FBG Debtors, and segregate all prepetition collections into the Factored Receivables Account in accordance with the Cash Management Order.[6]   The FBG Debtors and the Wind Down Administrator shall not disburse any such segregated funds from the Factored Receivables Account pending further order of the Bankruptcy Court after notice to the ABL Agent, the Ad Hoc Group, and all other affected parties and all such parties being provided an opportunity to be heard; provided, for the avoidance of doubt, that the FBG Debtors and the Wind Down Administrator shall not be required to segregate any funds received on account of any postpetition sale and related invoice; *provided further* that nothing in the foregoing shall release, impair, or otherwise affect any DIP Liens or Prepetition Secured Parties' Liens on, or any DIP Collateral, Prepetition Term

---

[6]     "**Cash Management Order**" shall mean the *Final Order (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Bank Accounts, (B) Implement Ordinary Course Changes to Cash Management System, and (C) Honor Certain Related Prepetition Obligations, (II) Granting Administrative Expense Priority for Postpetition Intercompany Claims, (III) Extending Time to Comply With Requirements of 11 U.S.C. § 345(b), and (IV) Granting Related Relief* (Docket No. 604).

Priority Collateral (as defined in the DIP Order), or ABL Priority Collateral status of, any such funds, as applicable.

86.     The Wind Down Administrator shall be authorized to administer the Factored Receivables Account and prosecute the FBG Debtors' interests in the funds on deposit in the Factored Receivables Account; *provided* that the Wind Down Administrator shall do so at the ABL Collateral Trust's sole cost and expense (paid in commercially reasonable manner); *provided further* that the ABL Agent shall have the right to direct the Wind Down Administrator with respect to the prosecution of the FBG Debtors' interests in the Factored Receivables Account and the ABL Agent's prior written consent shall be required for any settlement, compromise, or other disposition of such interests; *provided further* that if such assets are subject to a bona fide dispute between the DIP Secured Parties and any other Party, the consent of the DIP Collateral Trustee shall also be required.

87.     On and after the Confirmation Date, all proceeds of any insurance policy covering DIP Collateral or Prepetition Term Priority Collateral shall be provided to the DIP Collateral Trust for further distribution and shall not be applied to the ABL Obligations, the Wind Down Reserve, or any other obligation without the prior written consent of the DIP Collateral Trustee.

88.     On and after the Confirmation Date, all proceeds of any insurance policy covering ABL Priority Collateral (including, without limitation, any property insurance, business interruption insurance, or credit insurance with respect to accounts) shall be applied first to the ABL Obligations in accordance with the ABL Intercreditor Agreement and the ABL Credit Agreement, and shall not be applied to the DIP Obligations, the Wind Down Reserve, or any other obligation without the prior written consent of the ABL Agent.

**KK.     DIP Secured Party and Prepetition Secured Party Protections**

89.     Nothing in the Plan, this Order, or any Definitive Document, except as expressly set forth in the Plan, this Order, the DIP Order, the Litigation Trust Agreement, the DIP Collateral Trust Agreement, the DIP Forbearance Stipulation,[7] or the ABL Collateral Trust Agreement, as applicable, nothing shall modify, amend, waive, reject, or otherwise impair any of the rights, protections, or interests of the DIP Secured Parties or the Prepetition Secured Parties under the DIP Order or the Intercreditor Agreements (as defined in the DIP Order), except to the extent expressly agreed to in writing by the DIP Agent and Prepetition Agents (as defined in the DIP Order), as applicable; *provided* that, upon the Confirmation Date, the Debtors and any of their successors will be relieved of any and all covenants and reporting under the DIP Documents, and the Debtors' breach of any such covenants or reporting requirements will not trigger any default or Event of Default (as defined in the DIP Credit Agreement).

90.     Notwithstanding anything in the Plan to the contrary, no FBG Debtor shall dissolve, liquidate, wind up, file a certificate of dissolution or cancellation, or otherwise cease to exist as a legal entity until all of the following conditions have been satisfied or waived in writing by the Trustees: (i) all amended federal, state, and local tax returns that may give rise to tax refunds have been prepared, executed by an authorized officer or representative of the applicable FBG Debtor, and filed with the applicable taxing authorities; (ii) all applications, protests, or other filings necessary to obtain tariff refunds, duty refunds, or other governmental charge refunds have been filed with the applicable governmental authorities; (iii) all such tax refund claims and tariff refund claims have been finally resolved (whether by receipt of the refund, denial by Final Order, or

---

[7]     "**DIP Forbearance Stipulation**" means the *Stipulation and Agreed Order Regarding Forbearance From the Exercise of Remedies Arising From the Occurrence of the Maturity Date Under the DIP Credit Agreement* filed at Docket No. 3434.

settlement); and (iv) all other assets of the Trusts that require the continued legal existence of an FBG Debtor for their prosecution, collection, or realization have been resolved or validly assigned. The Wind Down Administrator shall not take any action to dissolve any FBG Debtor without providing the Trustees at least thirty (30) days' prior written notice and certifying in writing that the foregoing conditions have been satisfied.

**LL.    ABL Secured Party Protections**

91.    Nothing in any Trust Agreements or this Order shall modify section 5.2(i) of the Plan.

92.    Nothing in the Plan, this Order, or any Definitive Document shall waive, release, or otherwise impair the right of the ABL Secured Parties to assert that any Estate Claim or Cause of Action constitutes proceeds of ABL Priority Collateral under the ABL Intercreditor Agreement, and all such rights of the ABL Secured Parties are hereby expressly reserved.

93.    Notwithstanding anything in the Plan or this Order to the contrary, no release, discharge, or injunction under the Plan or this Order shall apply to the ABL Claims or the ABL Secured Parties' Liens on the ABL Priority Collateral, except to the extent of actual Cash distributions received by the ABL Secured Parties from the ABL Collateral Trust on account of such ABL Claims.

94.    Notwithstanding Section 12.2 of the Plan or any other provision of the Plan or this Order, the following may not be waived, modified, or amended without the prior written consent of the ABL Agent: (i) any provision of the Plan or this Order relating to ABL Intercreditor Agreement Preservation, ABL Proceeds Reservation, Insurance Proceeds with respect to ABL Collateral, ABL Cash Collateral, Adequate Protection, ABL Events of Default, ABL Remedies, Wind Down Budget ABL Protections, and the Professional Fees Escrow Account (as defined in the DIP Order); (ii) any provision of the Plan or this Order relating to the Assignment of ABL

Collateral Trust Assets and ABL Credit Bidding Rights; (iii) any provision of Section 4.6 of the Plan (relating to the treatment of ABL Claims); (iv) any provision of Section 5.2(h) of the Plan (relating to the survival of ABL Claims); (v) any provision of Section 5.2(i) of the Plan (relating to Intercreditor Agreement Preservation); (vi) any provision of Section 5.4 of the Plan (relating to the Factored Receivables Account); (vii) any provision of Section 5.7(b) of the Plan (relating to the authority of the Wind Down Administrator with respect to ABL Priority Collateral, ABL Collateral Trust Assets, and ABL Cash Collateral); (viii) any provision of Section 15.6 of the Plan (relating to Amendments); (ix) any provision of Article VIII of the Plan (relating to the ABL Collateral Trust); and (x) any provision of this Order relating to the ABL Secured Party Protections set forth herein. Any purported waiver, modification, or amendment of any of the foregoing without the prior written consent of the ABL Agent shall be void and of no force or effect.

**MM.   Wind Down**

95.    The initial Wind Down Budget is hereby approved and shall be effective immediately and binding on all parties upon the entry of this Order and the execution of the Trust Agreements.   The Wind Down Budget covers the first twelve (12) months following the Confirmation Date, with each of (i) the ABL Secured Parties and (ii) the Ad Hoc Group, through the use of DIP Collateral Sale Proceeds, having agreed to (a) fund 50% of the Wind Down Budget for the first twelve (12) months, with the ABL Secured Parties' contribution being provided exclusively from ABL Collateral proceeds, and (b) provide additional funding after the initial period, at such point in conjunction with the Litigation Trust, subject to an extended Wind Down Budget to be agreed by the Wind Down Administrator, the ABL Secured Parties, the Litigation Trustee, and the DIP Collateral Trustee in good faith.  Any modifications to the initial Wind Down Budget shall be subject to consent of the Wind Down Administrator, the ABL Secured Parties, and the DIP Collateral Trustee.

96.     For any services requested of the Wind Down Administrator by any of the Trustees that falls outside the scope of the Wind Down Budget, the requesting Trustee shall pay all related costs and expenses of such work on terms to be agreed in good faith between the Wind Down Administrator and the requesting Trustee.  The ABL Collateral Trustee, the DIP Collateral Trustee, and the Litigation Trustee, as applicable, shall retain a consent right over the subsequent Wind Down Budget (after the twelve (12) month period following the Confirmation Date) and any amendment or supplement thereto, solely to the extent the Wind Down Budget (or any amendment or supplement thereto) affects the assets held in the respective Trust.

97.     Pursuant to the Plan and subject to the Wind Down Budget, the Wind Down Administrator shall implement the Wind Down.  The Wind Down Administrator is authorized to perform his duties under the Plan and to receive compensation for his services rendered pursuant to the Plan, in each case without further action from this Court.

98.     Notwithstanding anything to the contrary in the Plan, the ABL Agent and the DIP Collateral Trustee, acting jointly and by mutual written agreement, may remove the Wind Down Administrator, or any professional retained by the Wind Down Administrator, (i) for Cause, immediately upon written notice, or (ii) without Cause, upon not less than thirty (30) days' prior written notice, and may jointly designate a successor Wind Down Administrator or retained professional, as applicable, in each case without further order of the Bankruptcy Court; *provided* that the Bankruptcy Court shall retain jurisdiction to resolve any dispute regarding whether Cause exists or regarding the fees of the Wind Down Administrator or any retained professional.

**NN.     Status Conferences.**

99.     Status conferences regarding the FBG Debtors' progress towards satisfying the conditions to the Effective Date shall be held approximately every six (6) months, as determined by the Court, after the date of entry of this Order.

Dated: _____, 2026
         Houston, Texas

_____
CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

## **Schedule 1**

## **Reservations of Rights**

1.      *United States*.  As to the United States, its agencies or any instrumentalities thereof, solely in their capacity as such instrumentality of the United States or its agencies (collectively, the "**United States**"), notwithstanding anything to the contrary contained in the Plan and any other Definitive Documents, nothing shall:

i.      limit or be intended to or be construed to bar the United States from pursuing any police or regulatory action or any criminal action;

ii.      discharge, release, exculpate, impair or otherwise preclude: (a) any obligation or liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (b) any Claim of the United States arising on or after the Confirmation Date; (c) any liability of the Debtors under police or regulatory statutes or regulations to the United States as the owner, lessor, lessee or operator of property that such Entity owns, operates or leases after the Effective Date; or (d) any liability owed to the United States, including but not limited to any liabilities arising under the federal environmental, criminal, civil or common law, by any non-Debtor, including the Released Parties and Exculpated Parties; *provided*, however, that the foregoing shall not diminish the scope of any exculpation to which any Person is entitled under section 1125(e) of the Bankruptcy Code;

iii.      enjoin or otherwise bar the United States from asserting or enforcing, outside the Bankruptcy Court, any obligation or liability described in the preceding clause (ii); provided, however, that the rights and defenses of all Entities with respect to (a)–(d) in clause (ii) are likewise fully preserved;

iv.      affect any right of setoff or recoupment of the United States against any of the Debtors; *provided*, however, that the rights and defenses of the Debtors with respect thereto are fully preserved;

v.      confer exclusive jurisdiction upon the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

vi.      authorize the assumption, assignment, sale or other transfer of any federal (a) grants, (b) grant funds, (c) contracts, (d) agreements, (e) awards, (f) task orders, (g) property, (h) intellectual property, (i) patents, (j) leases, (k) certifications, (l) applications, (m) registrations, (n) billing numbers, (o) national provider identifiers, (p) provider transaction access numbers, (q) licenses, (r) permits, (s) covenants, (t) inventory, (u) guarantees, (v) indemnifications, (w) data,

(x) records, or (y) any other interests belonging to the United States (collectively, "**Federal Interests**") without compliance with all terms of the Federal Interests and with all applicable non-bankruptcy law or authorize the transfer or assignment of any governmental (i) lease, (ii) license, (iii) permit, (iv) registration, (v) authorization, or (vi) certification, without compliance with all applicable legal requirements under non-bankruptcy laws, regulations, and rules (including police or regulatory law or environmental law, or otherwise);

vii.    be interpreted to set cure amounts related to any Federal Interests or to require the United   States to novate, approve or otherwise consent to the assumption, assignment, sale or other transfer of any Federal Interests;

viii.    constitute or be deemed an approval or consent by the United States;

ix.    waive, alter, or otherwise limit the United States' property rights;

x.    be construed as a compromise or settlement of any liability, Claim, Cause of Action or interest of the United States;

xi.    modify the scope of section 525 of the Bankruptcy Code;

xii.    cause Rejection Damage Claims to have to be filed before the governmental bar date or alter the priority and treatment of such Rejection Damage Claims under the Bankruptcy Code;

xiii.    preclude or alter the Internal Revenue Service's priority claims from receiving the Internal Revenue Code rate of interest, as set forth in 26 U.S.C. §§ 6621 and 6622 in accordance with section 511 of the Bankruptcy Code, for payments made under the Plan; or

xiv.    extend any Expedited Determination of Tax requests by the FBG Debtors and/or the Wind Down Administrator under Section 505(b) of the Bankruptcy Code in perpetuity; *provided* that any Expedited Determination of Tax request by the FBG Debtors and/or the Wind Down Administrator under Section 505(b) of the Bankruptcy Code with respect to any given tax return must be filed no later than 270 days after the later of (i) the filing of such tax return (including any amended return) for the applicable tax period and (ii) the Effective Date;

xv.    preclude the normal course liquidation under non-bankruptcy law of any entry of merchandise made by the Debtors; or

xvi.    affect or impair any rights, claims, or causes of action that the U.S. Customs and Border Protection ("**CBP**") has or may have against any surety under any customs bond pursuant to applicable non-bankruptcy law, nor shall anything in this Order, Plan or Disclosure Statement preclude or prohibit the ability of CBP to make demand on, be paid by, or otherwise pursue any surety that is jointly and severally liable for any debt owed to CBP.  For the avoidance of doubt, CBP reserves, and the entirety of this Order, the Plan, or the Disclosure

2

Statement is without prejudice to, any and all rights or causes of action CBP has or may have against any surety under any bond, and nothing shall release, discharge, or exculpate any surety from its obligations or liabilities pursuant to non-bankruptcy law, including any obligation or liability of any surety of the Debtor(s) with respect to any bond.

Further, in the event of an inconsistency or conflict between any provision of the Definitive Documents and any provision of this Order, then, as to the United States, the provisions of this Order shall control. For the avoidance of doubt, nothing in this Order shall expand or otherwise enlarge the police or regulatory powers, if any, of the United States with respect to the Debtors and/or their successors, and nothing in this Order or the Definitive Documents shall cause state law to preempt federal law, in the event of any conflict. The United States shall not be deemed to have opted in to grant any of the releases set forth in Section 13.5(b) of the Plan.

2.      *Berkley Surety*. For purposes of this paragraph 2, the term "Surety" shall mean Berkley Insurance Company and/or Berkley Regional Insurance Company, and their successors, assigns, co-sureties, fronting companies, and/or reinsurers (collectively, "**Berkley**"). Berkley has executed that certain Surety Bond #0227210, made effective January 3, 2020 (the "**Existing Surety Bond**") on behalf of Trico Technologies Corporation (for purposes of this section, "**Trico**").

Nothing in the Plan Documents, and/or any document or agreement contemplated by or in connection therewith, shall: (i) limit or impair the rights of Berkley under the Existing Surety Bond, common law, statute, or otherwise, including without limitation the right to cancel or non-renew the Existing Surety Bond pursuant to its terms and applicable law; (ii) release, discharge, preclude, or enjoin any obligations of any non-Debtors (other than the post Effective Date Debtors, the successors and assigns of the Debtors, the Trusts, and the Trustees) to Berkley, whether related to, arising out of, or granted or created under any Existing Surety Bond, Agreement, contract, common law, and/or statute; and/or (iii) be deemed to provide Berkley's consent, whether express or implied, to the involuntary substitution of any principal under any Existing Surety Bond; provided, however, that nothing in the foregoing shall be deemed to expand any obligations of Trico and/or any non-Debtor under any Existing Surety Bond, contract common law, and/or statute.

For the avoidance of doubt: (i) without any further action by Berkley, including the execution or submission of a Ballot, Berkley shall be deemed to have not opted in to any Third Party Release set forth in Article XIII of the Plan; (ii) Berkley's right of subrogation, restitution or other common law rights against non-Debtors with respect to the Existing Surety Bond shall not be canceled, impaired or modified by the Plan Documents, and the Debtors' (and the Debtors' successors') defenses with respect thereto are expressly preserved; provided that nothing herein shall be construed to affect any General Unsecured Claims related to the Existing Surety Bond; (iii) with respect to any liability or claim that may be alleged or brought against Berkley, all rights, claims, and defenses of Berkley that may arise from or relate to any release or transaction contemplated by the Plan Documents are expressly preserved in favor of Berkley; and (iv) no waiver of Berkley's rights, claims, or defenses shall be implied from any failure to object to the Plan Documents; *provided* that Berkley is precluded from objecting to the Plan Documents at a later time.

3

Notwithstanding anything to the contrary in the Plan Documents generally, or this paragraph 2 specifically, the Debtors reserve all rights and defenses with respect to all rights, claims, interests, obligations, documents, and agreements related to the Existing Surety Bond.

Notwithstanding anything else herein to the contrary, any Claim of Berkley under common law arising out of the Existing Surety Bond shall be a General Unsecured Claim, to the extent Allowed.

To the extent of any conflict between this paragraph 2, on the one hand, and any other provision in the Plan Documents, on the other hand, this paragraph 2 shall govern and control.

3.     *PBGC.*  Notwithstanding any provision in the Plan or this Order to the contrary, no provision contained in the Plan, this Order, the Bankruptcy Code (including section 1141 thereof), or any other document filed in the FBG Debtors' bankruptcy cases shall be construed as discharging, releasing, exculpating or relieving any Person (other than the FBG Debtors) from any fiduciary duties or liabilities under Title I of ERISA with respect to (i) the Cardone Industries, Inc. Union Employees' Pension Plan (sponsored by Cardone Industries, Inc.); (ii) the Dalton Corporation, Warsaw Manufacturing Facility Pension Plan (sponsored by Dalton Corporation, Warsaw Manufacturing Facility); and (iii) the Retirement Plan for Bargaining Unit Employees of Fostoria and Greenville (sponsored by FRAM Group Operations, LLC) ((i) – (iii), collectively, the "**Pension Plans**").  PBGC and the Pension Plans shall not be enjoined or precluded from enforcing such fiduciary duties or liabilities under Title I of ERISA as a result of any of the provisions of the Plan, this Order, the Bankruptcy Code, or any other document filed in the FBG Debtors' bankruptcy cases.

4.     *Securities & Exchange Commission*.  Notwithstanding any language to the contrary in the Disclosure Statement, Plan and/or this Order, no provision of the Plan or this Order shall (i) preclude the United States Securities and Exchange Commission ("**SEC**") from enforcing its police or regulatory powers; or, (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.

5.     *Fidelity & Deposit Company of Maryland* ("**F&D**").  On November 8, 2017, F&D issued surety bond No. LPM9240751 (the "**F&D Surety Bond**") on behalf of TMD Tennessee, LLC, a non-Debtor subsidiary of Toledo Molding & Die, Inc. ("**TMD**"). On November 8, 2017, TMD entered into an agreement providing for the indemnification of F&D for losses and liabilities incurred in connection with the F&D Surety Bond (the "**F&D Indemnity Agreement**").  Nothing in this Order, the Plan, or any sale transaction authorized by the Plan, shall be deemed to be a sale, transfer, assumption or assumption and assignment of the F&D Surety Bond or the F&D Indemnity Agreement, or any documents or rights related to any F&D Surety Bond or the F&D Indemnity Agreement.  Nothing herein shall be deemed to provide F&D's consent to the substitution of any principal under the F&D Surety Bond.  Nothing in this Order or the Plan shall be interpreted to alter, diminish or enlarge the rights or obligations of F&D in regard to state and federal agencies, third parties or otherwise under the F&D Surety Bond, the F&D Indemnity Agreement, or applicable law nor shall any of the foregoing be deemed to enjoin F&D from asserting any rights, claims or defenses, in regard to or against any state and federal agencies, third parties including, without limitation, any of F&D's non-Debtor indemnitors, insurers, or otherwise under the F&D

4

Surety Bond, the F&D Indemnity Agreement, or applicable law.  Notwithstanding anything to the contrary herein, the Debtors, any successors in interest of the Debtors, the Litigation Trust, the Litigation Trustee, the DIP Collateral Trust, the DIP Collateral Trustee, or F&D, as applicable reserve all rights and defenses with respect to all rights, claims, interests, obligations, documents, and agreements related to the F&D Surety Bond and the F&D Indemnity Agreement.  F&D shall not be deemed to have opted in to granting of any release provided for under Section 13.5(b) of the Plan.

6. *AutoZone.*  Nothing in this Order or the Plan will (i) be construed as an acceleration of the due date of any amounts owing from AutoZone, Inc. or AutoZone Parts, Inc. (collectively, "**AutoZone**") to any of the Debtors; (ii) alter or impair the rights or obligations of AutoZone under sections 542(b) or 553 of the Bankruptcy Code; or (iii) alter or impair the rights or obligations under any applicable contract or other applicable non-bankruptcy law regarding any Factored Receivables or Non-Factored Receivables (including for the avoidance of doubt accounts receivable relating to postpetition sales or related invoices) (each as defined in the *Motion of Debtors for Order (I) Establishing Third Party Factoring Procedures for (A) the Review and Reconciliation of the Debtors' Receipts, and (B) the Release of Funds to the Debtors' Estates and the Third Party Factors; (II) Authorizing Customers to Remit Receivables Without Liability; and (III) Granting Related Relief* (Docket No. 807)), including, without limitation, common law or other rights of recoupment or setoff, if any.  Notwithstanding anything to the contrary herein, the Debtors, any successors in interest of the Debtors, the Litigation Trust, or the Litigation Trustee, as applicable reserve all rights and defenses (provided that AutoZone's rights of recoupment or setoff, if any, are preserved) with respect to all rights, claims, interests, obligations, documents, and agreements related to any contract between the Debtors and AutoZone.

7. *RLI.*  As to RLI Insurance Company ("**RLI**"), and notwithstanding any other contrary provision of this Order, the Plan, Definitive Documents, or any other contract, instrument, release, or document created or entered into in connection with the Plan (including the Plan Supplement), nothing shall

  i.   alter, modify, limit, or impair the Court's November 6, 2025 *Order (I) Authorizing Debtors to (A) Enter into Surety Credit Facility with RLI Insurance Company and (B) Assume Prepetition Indemnity Agreement, and (II) Granting Related Relief* (Docket No. 584), together with that related Collateral Security Agreement dated November 7, 2025 by and between First Brands Group, LLC and RLI;

  ii.  alter, modify, limit, impair, release, enjoin, or discharge any rights, obligations, claims or defenses of RLI against any non-Debtor, including any surety bond claimant, with respect to surety bonds issued by RLI, whether under bankruptcy law or any applicable non-bankruptcy law, including but not limited to statutory law and the common law of suretyship; or

  iii. alter, modify, limit, impair, release, enjoin, or discharge any Lien held by RLI (including but not limited to equitable lien), right of subrogation, or defenses of setoff and/or recoupment, as may be allowable by under bankruptcy law or any applicable non-bankruptcy law, which are fully preserved; *provided* that

the Debtors' successors', the Litigation Trust's, the Litigation Trustee's, the DIP Collateral Trust's, and the DIP Collateral Trust's rights and defenses with respect to such claims and defenses are also fully preserved.

8.      *PIC.*   Pennsylvania Insurance Company ("**PIC**") issued certain surety bonds on behalf of and at the request of certain of the Debtors (the "**Existing Surety Bonds**").  PIC issued the Existing Surety Bonds pursuant to one or more indemnity agreements executed by one or more of the Debtors (the "**Existing Indemnity Agreements**" and, together with the Existing Surety Bonds, the "**Surety Documents**").  Nothing in this Order or the Plan Documents shall bar, release, impair, expand, alter, modify, amend, limit, and/or enjoin (a) any terms, conditions, and/or provisions of any of the Surety Documents, (b) any of PIC's rights, claims, and remedies under and/or relating to the Surety Documents, including, without limitation, trust and/or subrogation rights against non-Debtors with respect to the Existing Surety Bonds, and the Debtors' (and the Debtors' successors', the Litigation Trust's, the Litigation Trustee's, the DIP Collateral Trust's, and the DIP Collateral Trust's) defenses with respect thereto are expressly preserved, and/or (c) any of PIC's rights against any non-Debtor.  For the avoidance of doubt, nothing in the Plan, including, without limitation, the exculpation, release, injunction, exclusions and/or discharge provisions contained in Article XIII of the Plan shall bar, alter, limit, impair, release, modify or enjoin any rights, claims, and obligations including, without limitation, trust and/or subrogation rights as against non-Debtors in respect of the Surety Documents or applicable law.  PIC shall not be deemed to have opted in to any of the third-party releases under Article XIII of the Plan.

9.      *Factofrance.* For the avoidance of doubt, the Plan does not represent or contain any finding or holding that Factofrance S.A. ("**Factofrance**") entered into, or intended to enter into, any factoring or purchase agreement with the FBG Debtors.

10.     *U.S. Bank.*  For the avoidance of doubt, the release in favor of the ABL Parties is not modified, altered, or limited by references in Section 13.5 of the Plan regarding the U.S. Bank Obligations.  Such references only relate to Claims relating to the allowance, amount, priority, or secured status of the U.S. Bank Obligations.

For the avoidance of doubt, upon a determination by this Court, or mutual agreement of the applicable parties, that the U.S. Bank Obligations are Allowed Secured Claims, such U.S. Bank Obligations shall be treated as ABL Claims against the FBG Debtors in accordance with the Plan. If the U.S. Bank Obligations are determined by this Court, or through mutual agreement of the applicable parties, not to be Allowed Secured Claims, then such U.S. Bank Obligations shall be treated as General Unsecured Claims against the FBG Debtors in accordance with the Plan, and any provision regarding contributions to the ABL Collateral Trust shall be deemed inapplicable to the U.S. Bank Obligations. Nothing in the Plan or this Order affects any valid rights of setoff in accordance with section 553 of the Bankruptcy Code.

11.     *Michael Bueno.*  Notwithstanding anything to the contrary in the Plan, this Order, or any injunction, discharge, release, exculpation, or other provision implemented thereunder, nothing shall impair, prejudice, enjoin, release, or otherwise affect Michael Bueno's right to seek and obtain relief from any applicable stay or injunction, to liquidate, adjudicate, or try his personal injury tort claim, to continue prosecution of the motion filed at Docket No. 3079 (the "**Bueno Stay Relief Motion**"), and to pursue all rights and remedies related thereto.  For the avoidance of doubt,

6

confirmation of the Plan shall not render the Bueno Stay Relief Motion moot, and the Bankruptcy Court shall retain jurisdiction to adjudicate the Bueno Stay Relief Motion notwithstanding confirmation of the Plan. Further, nothing in the Plan or this Order shall affect, impair, waive, limit, or prejudice Michael Bueno's rights, if any, to pursue recovery from any applicable insurance policies and insurance proceeds. Notwithstanding the foregoing and for the avoidance of doubt, all of the Debtors' and Michael Bueno's defenses, objections, and arguments to the foregoing, including the Bueno Stay Relief Motion and any Claim held by Michael Bueno, are fully preserved.

12. *ENRD (U.S. DOJ)*.  Nothing in the Plan, any Plan Supplement, or this Order shall discharge, release, impair, enjoin, or exculpate any liability to any Governmental Unit of any non-debtor, including, but not limited to, the Environmental Obligations (as defined in the 2016 Confirmation Order in *In re: UCI International, LLC*, et al., No. 16-11354 (Bankr. D. Del.) (Docket No. 992) (the "**UCI Confirmation Order**," at para. 25)). Additionally, the Environmental Obligations Account established pursuant to the UCI Confirmation Order shall be transferred to the Wind Down Administrator on the Confirmation Date and any funds remaining in such the Environmental Obligations Account as of the Confirmation Date shall remain accessible to the United States Environmental Protection Agency and the Illinois Environmental Protection Agency to fund the performance of the remaining Environmental Obligations in accordance with the UCI Confirmation Order.

13. *PrimeRevenue*.  Notwithstanding entry of the Order, PrimeRevenue, Inc.'s ("**PrimeRevenue**") right to argue and present evidence that it meets the definition of a Trade Creditor under the Plan is hereby preserved; *provided* that the rights and defenses of the Debtors, any successors in interest of the Debtors, the Wind Down Administrator, the Litigation Trust, and the Litigation Trustee, as applicable, with respect to such classification are also preserved.

14. *Horizon Purchase Agreement*.  In accordance with the Horizon Sale Order[2] and Section 6.17 of the Plan, to the extent the resolution, final judgment, or settlement of the James Complaint results in the avoidance of purported transfers of Business Registered IP covered by the Alester Agreements and to the recovery of such Business Registered IP by one or more of the FBG Debtors or the Litigation Trust, such FBG Debtors or the Litigation Trust, as applicable, shall execute the Second IPAA covering all additional Intellectual Property that such FBG Debtors or the Litigation Trust, as applicable, have the right or obligation to transfer in accordance with Section 7.02(g) of the Horizon Purchase Agreement. The provisions of this paragraph and any rights of Buyer related to the Business Registered IP Claims shall survive the Closing, the Wind-Up Date, and the closure of the Bankruptcy Cases, and shall be binding upon the Litigation Trust and its trustees in accordance with the Litigation Trust Agreement.

---

[2] Capitalized terms used in this paragraph but not defined herein or in the Plan shall have the meanings ascribed to them in (i) that certain *Stock and Asset Purchase Agreement*, dated as of May 19, 2026 (as amended, supplemented or otherwise modified, the "**Horizon Purchase Agreement**") or (ii) the *Order (A) Authorizing and Approving the Debtors' Entry Into Stock and Asset Purchase Agreement with Flex-N-Gate for Sale of Debtors' Horizon Business Assets and Transferred Equity Interests Free and Clear of Liens, Claims, Encumbrances, and Interest, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (Docket No. 2800) (the " **Horizon Sale Order**"), as applicable.

7

15.     *LBA*.  Notwithstanding anything to the contrary herein, nothing in the Plan or this Order shall modify the rights, if any, of LBA RV-Company XVII, LP ("**LBA**"), in its capacity as landlord under that certain Industrial Space Lease, dated September 9, 2010, as subsequently amended (the "**Patterson Lease**") to assert any valid right or defense of setoff or recoupment that LBA may have under applicable law, including, but not limited to, the (i) assertion of setoff or recoupment with respect to a security deposit held pursuant to the terms of the Patterson Lease, (ii) assertion of rights of setoff or recoupment, if any, in connection with claims reconciliation, or (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors, or any successors in interest of the Debtors; *provided* that the Debtors, any successors in interest of the Debtors, the Trusts, or the Trustees, as applicable, reserve all rights and defenses with respect to all rights, claims, interests, obligations, documents, and agreements relating to LBA.

16.     *TCEQ*.  Nothing in this Order, the Plan, any amendments thereto, or related documents, discharges, releases, precludes, or enjoins: (i) any liability to the Texas Commission on Environmental Quality ("**TCEQ**") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("**Claim**"); (ii) any Claim of TCEQ arising on or after the Confirmation Date; (iii) any liability to a TCEQ under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to TCEQ on the part of any Person other than the Debtors, their successors, or the Trusts. Nor shall anything in this Order enjoin or otherwise bar TCEQ from asserting or enforcing, outside this Court, any liability described in the preceding sentence.  All parties reserve all rights and defenses regarding any of the possible claims or liabilities described herein.

Further, nothing in this Order, the Plan, any amendments thereto, or related documents, authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order shall relieve any entity from any obligation to address or comply with information requests or inquiries from TCEQ. Nothing in this Order shall affect any setoff or recoupment rights of TCEQ. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

For the avoidance of doubt, the Texas Commission on Environmental Quality opts out of any and all third-party releases provided in the Plan.

17.     *Chubb*.  Notwithstanding anything to the contrary in the Plan (including, without limitation, and for the avoidance of doubt, Sections 6.2, 9.11, 11.1, 11.4 or 13.4 of the Plan, including any corresponding sections of this Order), any other of the Definitive Documents, and any other document related to any of the foregoing:

    i.   on the Confirmation Date, all of the insurance policies that have been issued at any time by ACE American Insurance Company and/or any of its U.S.-based affiliates or predecessors (collectively, "**Chubb**") to (or which provide coverage to) the FBG Debtors or any of their predecessors, and all agreements, documents, or instruments related thereto (collectively, the "**FBG Chubb Insurance Program**") shall neither be assumed nor rejected by the FBG Debtors, instead following the Confirmation

Date: (i) all of the FBG Debtors' rights and obligations under any Insurance Policy that provides coverage for the Estate Claims, including the rights to the proceeds of any D&O Policies, shall vest in the Litigation Trust, (ii) all of the FBG Debtors' rights and obligations under any Insurance Policy that provides coverage for the DIP Collateral Trust Assets shall vest in the DIP Collateral Trust, (iii) all of the FBG Debtors' rights and obligations under any Insurance Policy that provides coverage for the ABL Collateral Trust Assets, shall vest in the ABL Collateral Trust, and (iv) any of the FBG Debtors' rights and obligations under any Insurance Policy that is part of the FBG Chubb Insurance Program that does not vest pursuant to (i) – (iii) hereof shall vest with the Wind Down Administrator; *provided*, that, to the extent any claim arises with respect to an asset that: (i) is assigned to a Trust, (ii) is not covered under the rights vested in the respective Trust; and (iii) may be covered by an Insurance Policy that the FBG Debtors' rights and obligations vested with the Wind Down Administrator pursuant to clause (iv) hereof, the Wind Down Administrator may pursue such claim in accordance with the terms of the FBG Chubb Insurance Program, and, if applicable, turn over to the applicable Trust any insurance proceeds (each, a "Proceed Turnover"), *provided, however*, that Chubb shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover; *provided, however,* the rights and obligations that vest hereby shall include all of the FBG Debtors' obligations regardless of when such arise or become due;

ii.   on and after the Confirmation Date, the FBG Debtors, the Wind Down Administrator, and the Trusts, as applicable, shall become and remain liable in full for all of their respective obligations under the FBG Chubb Insurance Program, as provided in subsection (a) hereof, without the need or requirement for Chubb to file or serve a request, motion, or application for payment of such obligations, including a Proof of Claim or Administrative Claim; *provided*, however, that all monetary obligations of the FBG Debtors, the Wind Down Administrator, or the Trusts, as applicable, shall be satisfied only by (i) *first*, by or through Chubb setting off (in full dollars) against, or applying, any collateral, security or credits (in full dollars) held by Chubb under the FBG Chubb Insurance Program in accordance with its terms and conditions, and (ii) *second*, to the extent such collateral, security or credits is insufficient to satisfy any such obligations or liabilities, Chubb shall have a Claim for such amounts and such Claim, to the extent Allowed, shall be treated as a General Unsecured Claim as provided for in the Plan; for the avoidance of doubt, the FBG Debtors', the Wind Down Administrator's, and the Trusts', monetary obligations, as applicable, under the FBG Chubb Insurance Program, shall be satisfied as provided for in this subparagraph (b) and not otherwise paid by such parties;

iii.  except as expressly provided in this paragraph 17, nothing (i) alters, modifies, supplements, changes, expands, diminishes or otherwise amends (A) the terms and conditions of (or the coverage provided by) the FBG Chubb Insurance Program, or the rights, duties, obligations, and defenses, if any, of Chubb, any insured, the FBG Debtors, the Wind Down Administrator, the Trusts, or any other Person, as applicable under the FBG Chubb Insurance Program, (B) any valid setoff or

9

recoupment rights of Chubb (or any corresponding rights and defenses of the FBG Debtors, the Wind Down Administrator, the Trusts, or any other Person with respect thereto, which are fully preserved) under the FBG Chubb Insurance Program; or (ii) alters or modifies the duty, if any, that Chubb has to pay claims covered by the FBG Chubb Insurance Program (subject to the terms and conditions of the FBG Chubb Insurance Program and applicable non-bankruptcy law) and its right to seek payment or reimbursement pursuant to the terms of the Plan, or draw on any collateral, security, or credits therefor; for the avoidance of doubt, Chubb, the insureds, the FBG Debtors, the Wind Down Administrator, and the Trusts, as applicable, shall each retain all rights and defenses under the FBG Chubb Insurance Program;

iv.    except as specifically provided in this paragraph, nothing shall permit or otherwise effect a sale, assignment, or any other transfer of the FBG Chubb Insurance Program, and/or any rights, proceeds, benefits, claims, rights to payments, or recoveries under or relating thereto without the prior express written consent of Chubb or pursuant to further order of the Court after appropriate notice and opportunity for objections;

v.    on the Confirmation Date, the automatic stay of Bankruptcy Code section 362(a), and the injunctions set forth in Section 13.4 of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit:  (I) claimants with valid workers' compensation claims or direct action claims against Chubb under applicable non-bankruptcy law to proceed with their claims; (II) Chubb to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against Chubb under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Section 13.4 of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing;  (III) subject to and in accordance with the terms and conditions of the FBG Chubb Insurance Program, Chubb to draw against any or all of the collateral or security provided by or on behalf of the FBG Debtors, and/or their successors, at any time and to hold the proceeds thereof as security for the obligations of the FBG Debtors, the Wind Down Administrator, and/or the Trusts, and/or apply such proceeds to the obligations of the FBG Debtors, the Wind Down Administrator, and/or the Trusts under the FBG Chubb Insurance Program, in such order as Chubb may determine, in each case to the extent permissible under applicable non-bankruptcy law and in accordance with the terms and conditions of the FBG Chubb Insurance Program; and (IV) following the Effective Date, Chubb to cancel any insurance policy that is part of the FBG Chubb Insurance Program, and take other actions relating to the FBG Chubb Insurance Program (including effectuating a setoff and/or any recoupment or subrogation rights or claims) pursuant to applicable non-bankruptcy law and in accordance with the terms and conditions of the FBG Chubb Insurance Program; provided that, for the avoidance of doubt, Chubb may not cancel any policy on account of the

10

assignment of insurance rights and obligations in accordance with this paragraph; and

vi.     nothing in Section 13.4(c) of the Plan (or any corresponding provision of this Order) requires, precludes, or prohibits Chubb from administering, handling, defending, settling, and/or paying claims covered by the FBG Chubb Insurance Program in accordance with and subject to the terms and conditions of the FBG Chubb Insurance Program and/or applicable non-bankruptcy law.

18.     *Texas Comptroller*.  Notwithstanding anything in the Plan or Confirmation Order to the contrary, the following provisions shall govern the treatment of the claims of the Texas Comptroller of Public Accounts (the "**Texas Comptroller**"): (1) nothing in the Plan or Confirmation Order shall affect or impair the Texas Comptroller's existing statutory or common law setoff rights in accordance with 11 U.S.C. § 553; (2) nothing in the Plan or Confirmation Order shall affect or impair the Texas Comptroller's rights to pursue any non-debtor third parties (excluding the Trusts, the Trustees, the Wind Down Administrator, and the Claims Ombudsman, each as defined in the Plan) for any tax debts or claims; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Texas Comptroller's administrative expense tax claims, if any, in each case solely to the extent such interest is payable under Section 9.1 of the Plan and applicable law; (4) to the extent that interest is payable on any administrative expense, priority, or secured tax claim of the Texas Comptroller, the Texas Comptroller has indicated it will assert that the applicable interest rate is the statutory rate under applicable non-bankruptcy law and, with respect to Allowed Priority Tax Claims, the rate determined under sections 511 and 1129(a)(9)(C) of the Bankruptcy Code; provided that all defenses, claims, counterclaims, affirmative defenses, and other rights thereto that exist under applicable law in favor of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Trusts, and the Trustees, as applicable, are expressly preserved; or (5) subject to filing a proof of claim in accordance with any applicable bar date, the Texas Comptroller is not required to file a motion or application for payment of administrative expense claims pursuant to section 503(b)(1)(D) of the Bankruptcy Code; provided that nothing herein shall be deemed to allow any such claim, and any Allowed Administrative Expense Claim of the Texas Comptroller shall be treated in accordance with Section 2.1 of the Plan and satisfied by the Litigation Trust and/or the DIP Collateral Trust in accordance with the applicable Trust Waterfall.  In connection with the foregoing, any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under applicable law in favor of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Trusts, or the Trustees, as applicable, are expressly preserved.

Allowed Priority Tax Claims of the Texas Comptroller shall be treated in accordance with Section 2.5 of the Plan.

If the Litigation Trustee or Wind Down Administrator or other distributing party, fails to make any payment required under the Plan or Confirmation Order, the Texas Comptroller shall provide written notice of the default via email or USPS First Class Mail to 1) the Litigation Trustee with copy to its counsel, 2) the Wind Down Administrator, and 3) counsel to the FBG Debtors for copy purposes only; and the written notice must allow fifteen (15) days to cure. If the default is not cured within those fifteen (15) days, the Comptroller may, without further order of the Court,

11

pursue all of its rights and remedies available under applicable non-bankruptcy law to collect all taxes, penalties, and interest owed.

19. *Texas Taxing Authorities*. Notwithstanding anything to the contrary in the Plan or this Order, any claim of the Texas Taxing Authorities[3] (the **"Tax Claims"**) that become Allowed Secured Claims shall be treated as Class 2 – Other Secured Claims in accordance with Section 4.2 of the Plan. Any Allowed Secured Claims of the Texas Taxing Authorities shall be entitled to interest to the extent provided under sections 506(b), 1129 and/or 511 of the Bankruptcy Code. Any valid and perfected liens securing the Tax Claims (the "**Tax Liens**"), whether on real or business personal property, or on the proceeds of the sale of such property, shall be retained with the same force and effect and priority pursuant to state law until the Tax Claims are paid in full. To the extent any claims of the Texas Taxing Authorities for 2026 taxes are Allowed Administrative Expense Claims on the Effective Date, such Claims shall be paid on the Effective Date in accordance with 1129(a)(9)(A). Nothing herein shall bar the Texas Taxing Authorities from bringing action in this Court to enforce their asserted rights under 28 U.S.C. Section 959 and 960 to payment of the 2026 taxes if not paid prior to state law delinquency. Further, to the extent the 2026 taxes are paid after delinquency under state law, the Texas Taxing Authorities' rights to seek payment of penalty and interest under state and bankruptcy law are preserved. The claims objection bar date as it relates to the claims of the Texas Taxing Authorities shall be no later than 90 days from the Plan's Effective Date. In the event of a credit bid sale of any property subject to any valid and perfected Tax Liens pursuant to the Plan, said property will be sold subject to the Tax Liens. All defenses, claims, counterclaims, affirmative defenses, and other rights that exist under applicable law in favor of the FBG Debtors, the Wind Down Administrator, the Claims Ombudsman, the Trusts, and the Trustees, as applicable, with respect to any of the foregoing are expressly preserved.

20. *United States Trustee*. The Plan Injunction set forth in Section 13.4(b) of the Plan shall only apply until such time as the liquidation and disbursement actions contemplated in the Plan have been completed and the Trusts created pursuant to the Plan have been dissolved under applicable state law.

21. *Non-Union Retiree Committee*. The Non-Union Retiree Committee (as defined in Docket No. 3060) and each of its members shall be deemed to be a Released Party under the Plan.

22. *SPV Debtors*. For the avoidance of doubt, nothing in the Plan or this Order shall:

    (i)    transfer any of the SPV Debtors' claims, rights, interests, or defenses to any of the Trusts;

    (ii)    constitute a determination of the ownership of, or of any party's interest in, any Cause of Action, books and records, privileges, and insurance proceeds as between the FBG Debtors (or their Estates or any Trust), on the one hand, and the SPV Debtors (or their Estates), on the other hand;

---

[3] "**Texas Taxing Authorities**" means, collectively, Cameron County, Tarrant County, Hidalgo County, City of McAllen, and Brownsville ISD.

(iii)  permit or authorize the FBG Debtors, the Wind Down Administrator, or any Trust or Trustee to commence, prosecute, settle, release, compromise, or otherwise exercise control over any Cause of Action owned by any SPV Debtor or its Estate, absent the consent of the applicable SPV Debtor (or any successor) or its estate fiduciary or further order of the Bankruptcy Court;

(iv)  enjoin any SPV Debtors or its creditors from asserting a right of setoff or defense of recoupment or setoff; *provided* that all parties' rights are preserved with respect to whether or not such rights exist under applicable law;

(v)  affect the enforceability of the *Agreed Order Granting Emergency Motion of Aequum Capital Financial II LLC for Entry of an Order Granting Related Relief From the Automatic Stay* (Docket No. 1820);

(vi)  enjoin or otherwise prevent any SPV Debtor or its creditors from asserting a claim under section 502(h) of the Bankruptcy Code in accordance with the Bankruptcy Code and applicable law; or

(vii)  impair or affect any privileges held by an SPV Debtor.

The FBG Debtors, Wind Down Administrator, ABL Collateral Trustee, and Litigation Trustee, or their respective agents, will cooperate in good faith in a commercially reasonable manner with the SPV Debtors with respect to books and records pertaining to any asset purported to be owned by any of the SPV Debtors (the "**SPV Assets**"), and will reasonably preserve and provide access to such books and records to the applicable SPV Debtor upon reasonable request; *provided* that such reasonable cooperation shall not interfere with the normal responsibilities of the FBG Debtors, Wind Down Administrator, ABL Collateral Trustee, or Litigation Trustee or their respective agents and shall not impose any costs on such cooperating party not otherwise paid in advance by the SPV Debtors; *provided further*, that such cooperating parties may seek a determination from the Bankruptcy Court concerning any objection to a given request and the foregoing obligation to cooperate shall expire with respect to any SPV Asset that the Bankruptcy Court determines constitutes the sole property of any of the FBG Debtors. The FBG Debtors, Wind Down Administrator, ABL Collateral Trustee, and Litigation Trustee, and their respective agents, reserve all rights to seek payment (including payment in advance) from the SPV Debtors on account of costs to store and provide access to any books and records pertaining to the SPV Assets. Prior to abandoning or destroying any books and records pertaining to an SPV Asset, the FBG Debtors, Wind Down Administrator, or ABL Collateral Trustee, or their respective agents, as applicable, shall provide the applicable SPV Debtor five (5) business days' notice of its intent to abandon or destroy such books and records and offer to transfer such books and records to such SPV Debtor. If the applicable SPV Debtor elects to receive such books and records, the SPV Debtor shall do so at its sole cost and expense (paid in advance), including the cost of any required continued storage until the transfer can be effectuated. If the SPV Debtor does not pay such costs within five (5) business days of being notified of the cost to transfer such books and records, the FBG Debtors, Wind Down Administrator, ABL Collateral Trustee, or Litigation Trustee, or their respective agents, as applicable, may abandon or destroy such books and records without liability.

13

The provisions of <u>Section 5.8</u> of the Plan shall not apply to Debtor Viceroy Private Capital, LLC ("**Viceroy**") and the current board of managers and Special Committee of Viceroy shall remain in place and shall continue to manage Viceroy in accordance with the applicable governing documents of such entity.

23.      *Garza Warn Plaintiffs.*  On February 10, 2026, an original complaint (as amended, the "**Garza WARN Complaint**") was filed initiating an Adversary Proceeding that is presently styled Francisco Garza, et al. v. First Brands Group, LLC, et al., Adv. No. 26-03038 (the "**Garza WARN Action**"). The Garza WARN Action is a putative class action asserting liability against the Debtor-Defendants named therein for workforce reductions in violation of the WARN Act. Notwithstanding any provision in the Plan or this Order to the contrary, (i) the adjudication of liability, the amount of any damages and the priority of any such damages (whether administrative, priority unsecured, or general unsecured) with respect to the claims asserted in the Garza WARN Action shall be adjudicated in the ordinary course by the Bankruptcy Court and confirmation of the Plan shall have no effect upon such claims, and(ii) entitlement to administrative or priority status for any damages awarded with respect to the claims asserted in the Garza WARN Action shall be determined by the Bankruptcy Court in accordance with the Bankruptcy Code. For the avoidance of doubt, each of the Garza WARN  plaintiffs (including on behalf of any class ultimately represented by same (collectively, the "**Garza WARN Plaintiffs**")) and the Debtors reserve all rights, claims and defenses as to the Garza WARN Action and any claims asserted therein. The provisions of this paragraph shall apply to the benefit of the Garza WARN Plaintiffs irrespective of whether their claims proceed to adjudication in the Garza WARN Action, a pending alternative putative WARN Act Class Action lawsuit currently pending as Adv. No. 26-03052, or a subsequently consolidated WARN Act class action lawsuit.

14

**Exhibit A**

**Plan**

## Exhibit B

## Confirmation Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

**NOTICE OF ENTRY OF ORDER
(I) CONFIRMING JOINT CHAPTER 11 PLAN OF
FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED
DEBTORS AND (II) APPROVING DISCLOSURE STATEMENT ON A FINAL BASIS**

**PLEASE TAKE NOTICE** that on [●], 2026, the Honorable Christopher M. Lopez, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on a Final Basis and (II) Confirming Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. [●]) (the "**Confirmation Order**") (i) confirming the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, dated [June 16], 2026 (Docket No. [3019]) (as amended, supplemented, or otherwise modified from time to time, the "**Plan**")[2] and (ii) approving, on a final basis, the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, dated June 17, 2026 (Docket No. 3020) (including any exhibits and schedules thereto and as amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**").

**PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order, Plan, and Disclosure Statement may be obtained free of charge by visiting the website maintained by Kroll Restructuring Administration LLC ("**Kroll**") at https://restructuring.ra.kroll.com/FirstBrands. Parties may also obtain any documents filed in the Chapter 11 Cases for a fee via PACER at https://www.pacer.gov/. Please note that a PACER password and login are required to access documents via PACER.

**PLEASE TAKE FURTHER NOTICE** that:

- pursuant to Section 2.2(a) of the Plan, the Allowed amount of the DIP A Claims against the FBG Debtors as of the Confirmation Date is $[●];

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

- pursuant to Section 4.4(a) of the Plan, the Allowed amount of the First Lien Claims against the FBG Debtors as of the Confirmation Date is $[●];

- pursuant to Section 4.5(a) of the Plan, the Allowed amount of the Second Lien Claims against the FBG Debtors as of the Confirmation Date is $[●]; and

- pursuant to Section 4.6(a) of the Plan, the Allowed amount of the ABL Claims against the FBG Debtors as of the Confirmation Date is $[●];

**PLEASE TAKE FURTHER NOTICE** that in accordance with Article XI of the Plan, as of and subject to the occurrence of the Confirmation Date, all executory contracts and unexpired leases to which any of the FBG Debtors are a party shall be deemed rejected except for an executory contract or unexpired lease that: (i) was previously assumed or rejected by the FBG Debtors pursuant to a Final Order of the Bankruptcy Court or assumed and assigned pursuant to a Final Order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a separate assumption or rejection motion or request filed by the FBG Debtors on or before the Confirmation Date; (iv) is a contract, lease, or other agreement or document entered into in connection with the Plan; (v) is a contract, lease, or other agreement or document transferred to the FBG Debtors in connection with the Estate Claims Credit Bid Transaction or DIP Collateral Credit Bid Transaction and subsequently transferred to the DIP Collateral Trust or Litigation Trust on or before the Confirmation Date; or (vi) is a D&O Policy or other Insurance Policy to which any FBG Debtor is a beneficiary or an insured. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections provided for in the Plan pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the provisions thereof are binding on the FBG Debtors and any holder of a Claim against, or Interest in, the FBG Debtors and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE** that you may also access electronic copies of the form of Proof of Administrative Claim and the Proof of Claim via the QR Code below. Please be advised that Kroll cannot provide legal advice.



Dated: August [●], 2026
      Houston, Texas

            */s/  [DRAFT]*

WEIL, GOTSHAL & MANGES LLP
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email: clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  matt.barr@weil.com
       sunny.singh@weil.com
       andriana.georgallas@weil.com
       kevin.bostel@weil.com
       jason.george@weil.com

*Attorneys for Debtors and Debtors in Possession*

**Exhibit C**

**Effective Date Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

**NOTICE OF EFFECTIVE DATE OF JOINT CHAPTER 11 PLAN OF
FIRST BRANDS GROUP, LLC AND CERTAIN AFFILIATED DEBTORS**

**PLEASE TAKE NOTICE** that on [●], 2026, the Honorable Christopher M. Lopez, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on a Final Basis and (II) Confirming Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. [●]) (the "**Confirmation Order**") confirming the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors*, dated [June 16], 2026 (Docket No. [3019]) (as amended, supplemented, or otherwise modified from time to time, the "**Plan**").[2]

**PLEASE TAKE FURTHER NOTICE** that on [●], all conditions precedent to consummation of the Plan were satisfied or waived in accordance with Article XII of the Plan. Further, no stay of the Confirmation Order is in effect. Accordingly, [●] is the Effective Date of the Plan. As of the Effective Date, the injunction set forth in Section 13.4 of the Plan is now in place.

**PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order, Plan and Disclosure Statement may be obtained free of charge by visiting the website maintained by Kroll Restructuring Administration LLC ("**Kroll**") at https://restructuring.ra.kroll.com/FirstBrands. Parties may also obtain any documents filed in the Chapter 11 Cases for a fee via PACER at https://www.pacer.gov/. Please note that a PACER password and login are required to access documents via PACER.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the provisions thereof (including the exhibits and schedules thereto and all documents and agreements executed pursuant thereto or in connection therewith), the Plan Documents, the Plan Supplement, and the Confirmation Order are effective and enforceable and shall bind the FBG Debtors, the Trusts, the Trustees, the Wind Down Administrator, the Claims Ombudsman, the Released Parties, the Releasing Parties, the

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FirstBrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Exculpated Parties, all holders of Claims and Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the holders of such Claims or Interests accepted or are deemed to have accepted the Plan), any other Person giving, acquiring, or receiving property under the Plan, any and all non-Debtor parties to executory contracts and unexpired leases with any of the FBG Debtors, all Trade Creditors, Supply Chain Financers, and Factors, all holders of Settled Administrative Expense Claims,  all Preference Settlement Electing Creditors, all Insurance Companies, all beneficiaries of the Trusts, any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.  All settlements, compromises, releases (including, without limitation, the releases set forth in Article XIII of the Plan), waivers, discharges, exculpations, and injunctions set forth in the Plan are effective and binding on any Person that may have had standing to assert any settled, compromised, released, waived, discharged, exculpated, or enjoined Claim or Causes of Action.

**PLEASE TAKE FURTHER NOTICE** that you may also access electronic copies of the form of administrative proof of claim via the QR Code below. Please be advised that Kroll cannot provide legal advice.



*[Remainder of Page Left Intentionally Blank.]*

Dated:  [●], 2026
      Houston, Texas

    */s/  [DRAFT]*
WEIL, GOTSHAL & MANGES LLP
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email: clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  matt.barr@weil.com
       sunny.singh@weil.com
       andriana.georgallas@weil.com
       kevin.bostel@weil.com
       jason.george@weil.com

*Attorneys for Debtors and Debtors in Possession*