**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| *In re:* | Case No. 25-90399 (CML) |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

**PATRICK JAMES' NOTICE OF FILING OF DEMONSTRATIVE**

**PLEASE TAKE NOTICE** that attached hereto as **Appendix A** is Patrick James' Closing Argument Demonstrative.  Patrick James will also provide Exhibit A to the Court in person in connection with closing arguments in the above-captioned proceeding on August 7, 2026.

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Dated: August 7, 2026
Houston, Texas

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

*/s/ Cameron Kelly*

Cameron Kelly
TX SBN: 24120936
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: (713) 221-7000
cameronkelly@quinnemanuel.com

James C. Tecce*
Anil Makhijani*
Jack Robbins*
Grace Sullivan*
295 5th Avenue
New York, NY  10016
Telephone: (212) 849-7000

-and-

**DEBEVOISE & PLIMPTON LLP**
Erica S. Weisgerber*
Matthew J. Sorensen*
Emily Morgan*
66 Hudson Boulevard
New York, NY  10001
Telephone: (212) 909-6000
eweisgerber@debevoise.com
mjsorensen@debevoise.com
emorgan@debevoise.com
*admitted *pro hac vice*

*Attorneys for Patrick James*

## CERTIFICATE OF SERVICE

I certify that, on August 7, 2026, a true and correct copy of the foregoing document was served through the Court's Electronic Case Filing system of the United States Bankruptcy Court for the Southern District of Texas, and on counsel of record by electronic mail.

Dated: August 7, 2026          /s/ Cameron M. Kelly
Houston, Texas                 Cameron M. Kelly

## APPENDIX A

**PowerPoint Demonstrative**



# Hearing To Consider Confirmation Of Proposed Chapter 11 Plan

## In re First Brands Group, et al.,
## Case No. 25-90399 (CML) (Bankr. S.D. Tex.)

### Patrick James Defendants

**August 7, 2026**

# NO GUARANTEES IN LITIGATION; ATTEMPT TO VALUE CLAIMS ARE HIGHLY SPECULATIVE WITHOUT ADVERSARY PROCESS

### *Wissman v. Pittsburgh Nat'l Bank*



"A cause of action, of course, is an asset that is not easily valued because there is no market where it is bought and sold. Thus, prior to judgment, a cause of action's value is unliquidated and contingent, and claiming a specific dollar exemption is, at best, speculation."

*Wissman v. Pittsburgh Nat'l Bank,* 942 F.2d 867, 871 (4th Cir. 1991)

### *ResCap v. Primary Residential*



"[T]rying to assign numerical values to legal defenses is speculative and leads to false precision."

*ResCap Liquidating Tr. v. Primary Residential Mortg., Inc.*, 59 F.4th 905, 919 (8th Cir. 2023)

2

# MR. KIRSCHNER RELIED ON ADVERSARY COMPLAINT; INDICTMENT; ALLOCUTIONS; AND EXAMINER REPORT

**MARC KIRSCHNER** | Debtor's Estate Claims Expert

Q. Why don't you explain for the Court, how did you go about reaching your opinion that the estate claims were a valuable asset of the debtors? What did you do?

A. First of all, as we've already gone over, there was a list a page-and-a-half or more of materials I reviewed. I reviewed all of that material extensively. The criminal indictments, the guilty pleas, the examiner's report, the disclosure statement, Mr. Moore's declaration from November 2025. And then he explained to me what was going to be in his report which ultimately was filed July 14th.

Day 3 Transcript at 45:24–46:8

Q. Did you review the adversary proceeding against Patrick James?

A. Yes, I did. As I explained earlier, that adversary proceeding against Patrick James was brought basically at the beginning of the case, I think, in November 2025 as a complaint attached to a motion by the debtors to attempt to enjoin Patrick James from dissipating his assets.

Day 3 Transcript at 113:6–12

3

# FIRST BRANDS WAS A REAL COMPANY

**CHARLES MOORE** | CEO of First Brands Group

Q. And do you recall in your first day declaration in this case that you said they employed 26,000 employees globally including 6,000 employees in the United States?

A. Yes.

\* \* \*

Q. So First Brands, at least prepetition, operated a global network of manufacturing and vertically-integrated distribution centers that spanned five continents and was supported by key regional capabilities across the world, right?

A. Yes.

Day 2 Transcript at 149:7–10, 184:4–9

4

# FIRST BRANDS WAS A REAL COMPANY

## TYLER COWAN | Global Head of Lazard Restructuring & Liability Management; Advisor to First Brands Group

Q. What, in your view, about First Brands was worth saving such that you should go to Chapter 7 -- I'm sorry, such that you should go to Chapter 11?

A. **Everything. This is a real business. This is a No. 1 or No. 2, you know, automotive after-market company; and many of its categories of global operations, 5 or $6 billion of sales, 26,000 employees, the idea of liquidating this business is beyond absurd.**

Q. Why beyond absurd?

A. **Because it's a real business.**

Q. What do you mean by that?

A. **It generates 5 to $6 billion in annual revenue. It has 26,000 employees. It's an amalgamation of businesses that were acquired rather recently and, you know, were known to -- many of which were known to be profitable. So the idea that, you know, we would just liquidate this thing out of the gate is beyond absurd.**

Katsumi and LAM designation COWAN. 2025.11.03 Notice [Dkt. 3458_5] at 79:8–80:6

5

# DURING "FULL PERIOD" OVER FOUR YEARS NO RELATIONSHIPS TERMINATED FOR NON-PAYMENT; PRE-PETITION LENDERS PAID INTEREST

**CHARLES MOORE** | CEO of First Brands Group

Q. And during this full period between September 2021 and September 2025, none of the parties on this chart terminated their relationship with the company for nonpayment, correct?

**A. Not that I'm aware of.**

\* \* \*

Q. [I]n addition to the $25.007 billion, the first lien lenders received at least interest, correct, during this period, the full period?

**A. Yes.**

Day 2 Transcript at 224:17–20, 225:1–4

**FIRST BRANDS GROUP**

### Transfers

| | 90 Day | 1 Year | Full Period |
|---|---|---|---|
| **AR Factoring (ARF) Programs** | | | |
| Leucadia | $ 737,623,204 | | $ 9,400,235,200 |
| Katsumi | 321,413,837 | | 5,685,073,511 |
| Total Payments to ARF Programs | $ 1,059,037,041 | | $ 15,085,308,711 |
| **Supply Chain Finance (SCF) Programs** | | | |
| Raistone Financing Parties | 188,234,558 | | 1,939,805,707 |
| PrimeRevenue Financing Parties | 162,743,463 | | 1,418,480,533 |
| LiquidX Financing Parties | 76,981,691 | | 979,552,136 |
| YieldStreet Financing Parties | - | | 222,218,046 |
| Orbian Financing Parties | 39,997,124 | | 114,017,780 |
| Interface Financing Parties | - | | 380,708 |
| Total Payments to SCF Programs | $ 467,956,836 | | $ 4,674,454,910 |
| **Onset** | | | |
| Onset | 46,143,097 | 987,417,170 | 2,331,851,090 |
| Total Payments to Onset | $ 46,143,097 | $ 987,417,170 | $ 2,331,851,090 |
| **Insiders** | | | |
| Patrick James | 65,056,679 | 514,700,466 | 965,659,044 |
| Insiders (Ed James, Andy Brumbergs, etc.) | 4,153,621 | 23,083,434 | 23,083,434 |
| Total Payments to Insiders | $ 69,210,300 | $ 537,783,900 | $ 988,742,478 |
| **Other** | | | |
| Acquisitions Payments | - | | 1,646,000,000 |
| Helios | 3,920,000 | | 79,931,026 |
| Total Other | $ 201,137,308 | | $ 1,927,156,954 |
| **TOTAL PAYMENTS** | $ 1,843,484,582 | $ 1,525,201,070 | $ 25,007,514,143 |

**TOTAL PAYMENTS $ 1,843,484,582 $ 1,525,201,070 $ 25,007,514,143**

DX 235 [Dkt. 3466] at 2

6

# DEBTORS DO NOT DETAIL WITH SPECIFICITY STATEMENTS PATRICK JAMES MADE OR HOW HE SUPPOSEDLY FURTHERED WRONGDOING

**CHARLES MOORE** | CEO of First Brands Group

Q.    You referred earlier to results bridges and adjustment bridges; is that correct?

A.    **Yes.**

Q.    You're not aware of any email or text that was sent by Patrick James that directed anyone to make an adjustment to a general ledger, correct?

A.    **I have not gotten involved in that level of review.**

Q.    So the answer to my question is, yes, you are not aware of any email or text sent by Patrick James directing anyone to make adjustments to a general ledger, correct?

A.    **I would have to go back and look. I just can't recall.**

Q.    I'll ask the question one more time. So yes or no, you are not aware of any email or text sent by Patrick James directing anyone to make adjustments to a general ledger, correct?

A.    **I am not aware.**

Q.    And you are not aware of any email or text sent by Patrick James directing someone to falsify a financial record, correct?

A.    **I personally am not aware.**

Q.    And you are not aware of any email or text sent by Patrick James directing someone to falsify an invoice; is that correct?

A.    **I am not aware.**

                              *  *  *

Q.    You're not aware of any text or email sent by Patrick James directing someone to double pledge collateral, correct?

A.    **Correct. I specifically am not aware.**

Day 2 Transcript at 233:11–234:18

7

# DEBTORS PROPOSED EXHIBITS DO NOT INCLUDE EMAILS OR TEXTS FROM PATRICK JAMES



- 231 Substantive Exhibits

- 74 Emails; 6 Teams/text-messages

- *0* authored by, sent to, or copied to Patrick James

# MR. KIRSCHNER'S MATERIALS CONSIDERED DOES NOT INCLUDE AN EMAIL OR TEXT FROM PATRICK JAMES

**MARC KIRSCHNER** | Debtor's Estate Claims Expert



Ex. B, Declaration of Marc S. Kirschner [Dkt. 3190-2] at 2-3

9

# RETURNS WERE NOT TOUTED

**CHARLES MOORE** | CEO of First Brands Group

Q. You are not aware that any First Brands executives ever touted returns paid to an existing lender or investor to a prospective lender or investor to induce a loan or investment, correct?

A. **I have no idea what First Brands executives were telling parties prior to the petition date.**

Q. Do you recall that you testified on Sunday that you were not aware of any evidence that that ever happened?

A. **I'm not aware of any evidence. I just don't know.**

Day 2 Transcript at 148:20–149:3

10

# FULL RANGE OF INVESTMENTS INTO FIRST BRANDS BY PATRICK JAMES AND JAMES DEFENDANTS NOT CONSIDERED

## CHARLES MOORE | CEO of First Brands Group

Q.  Mr. Moore, it's true that your team's tracing identified approximately $592 million transferred from the Patrick James Trust to the Debtors; is that correct?

A.  **Yes.**

Q.  And that was from September 2022 to the petition date, September 2025, correct?

A.  **I believe that's the date range. Yes.**

Q.  So the date range that your team traced was September 2022 to September 2025, but the transfers that the Debtors looked at go back one year more, correct, from September 2021 to September 2025; is that correct?

A.  **Yes.**

Q.  So there could be additional funds just from the Patrick James Trust prior to September 2022 that are not part of your $592 million, correct?

A.  **There may be.**

Q.  There may be that were transferred back into First Brands, correct?

A.  **There may be.**

Day 2 Transcript at 226:12–227:5

Q.  So if I were to adjust the date range from September '22 to back a year to September 2021, and if I were to include entities, additional entities beyond just the Patrick James Trust, that number could go up above $592 million, correct?

A.  **It could.**

Q.  Do you have any idea how much larger than $592 million that could be?

A.  **I don't.**

Q.  Could it be more than the $966 million that the Debtors intend to try and recover?

A.  **I don't -- I don't know.**

Q.  You don't know one way or the other, correct?

A.  **Correct.**

Q.  So it's possible, but you don't know, correct?

A.  **Correct.**

Day 2 Transcript at 227:17–228:7

11

# Mr. Kirschner Failed To Consider Reinvestment

**MARC KIRSCHNER** | Debtor's Estate Claims Expert

Q. But you did not consider any payments -- strike that. Did you consider those payments as part of your analysis?

A. **You refer to payments back?**

Q. Sure.

A. **No, I looked at $25.4 billion outflows from the debtors, as I have explained many times.**

Q. And you also did not consider any payments from the Patrick James trust prior to September 2022, correct?

A. **Same answer.**

Q. And you did not consider whether Patrick James or his affiliated entities actually transferred more back to the Debtors during the relevant time period than they are alleged to have received from the debtors, correct?

A. **I just looked at the outflows, as I testified to.**

Day 3 Transcript at 331:2–15

### *Whitlock v. Lowe (In re Deberry)*

Third, the Trustee argues that because the bankruptcy estate does not exist until the petition is filed, a pre-petition satisfaction does not count as recovery "for the benefit of the estate." 11 U.S.C. § 550(a). It's not a recovery as contemplated by § 550(a), he contends, because the *debtor*, not the estate, received the satisfaction.

But we do not hold the return of the property constitutes a recovery "for the benefit of the estate" under § 550(a). Instead, we hold there cannot be a "recovery" at all if the property has already been returned.

*Whitlock v. Lowe (In re Deberry)*, 945 F.3d 943, 950 (5th Cir. 2019)

# MR. KIRSCHNER DID NOT EVALUATE FACTS AND CIRCUMSTANCES AROUND TRANSFERS

**MARC KIRSCHNER** | Debtor's Estate Claims Expert

Q.    . . . Am I correct you just testified you did not engage in a transfer-by-transfer analysis for the fraudulent transfer claims that you looked at in different complaints?

A.    **If the question deals with transfer-by-transfer for each defendant, I did not examine that.**

Q.    So you did not analyze transfer-by-transfer what consideration Mr. James or related entities may have provided in exchange for each of the transfers at issue in the adversary complaint?

A.    **No. With respect to the adversary proceeding, I observed that there were many transfers I identified, some this morning. Dividends, excess compensation, payments personally to him, which (indiscernible) personal matters. And that was a panoply of transfers out from the FBG debtors to Patrick James and his trust.**

Q.    And just to be clear, you did not analyze for each transfer what consideration was provided in exchange for that transfer, yes or no?

A.    **I did not analyze each transfer.**

Day 3 Transcript at 330:2–20

13

# Tax Distributions To Patrick James Appeared In General Ledger; BDO Reviewed General Ledger And Gave Unqualified Audit Opinions

## Charles Moore | CEO of First Brands Group

Q. And do you understand, sir, that these amounts were in the company's general ledger?

A. **Yes, they were.**

Q. And you understand that BDO reviewed the company's general ledger, correct?

A. **Yes, that's my understanding.**

\* \* \*

Q. Unqualified. I'm sorry. Thank you very much. BDO gave unqualified audit opinions for this company for four years, correct?

A. **Yes.**

Day 2 Transcript at 229:22–230:2, 230:20–23



DX230 at FBG_CH1_00103641
[Dkt. 3500] at 69

**Consolidated Financial Statements Years Ended December 28, 2024 and December 30, 2023**

DX230 at FBG_CH1_00103637
[Dkt. 3500] at 65

14

# BOWERY ANALYSIS NOT COMPLETE

**CHARLES MOORE** | CEO of First Brands Group

> Q. I believe it was your testimony that, is this fair to say, that you believe approximately $12 billion flowed through that account; is that correct?
>
> **A. That's about right. Yes.**
>
> * * *
>
> Q. But you haven't -- as you sit here today, you cannot say that the funds that left the Bowery account -- none of those dollars -- were used to pay legitimate business expenses, correct?
>
> **A. That's correct.**
>
> Day 2 Transcript at 231:2–5; 231:21–25

15

# COURT RULING ON MOTION TO EXCLUDE (DAY 1)



Day 1 Transcript at 106:4–107:11

16