**Exhibit A**

# First Brands Confirmation Hearing

## Katsumi Servicing Closing Argument

*In re First Brands Group, LLC, et al.*
Case No. 25-90399 (CML)

United States Bankruptcy Court
Southern District of Texas, Houston Division

August 7, 2026

# The Plan Violates Basic Requirements of Chapter 11

| | |
|---|---|
| **§1129(a)(7)** | No Impaired Class of Creditors Accepted the Plan |
| **§1129(a)(11)** | The Plan is Not Feasible |
| **§1129(a)(9)** | The Plan Will Not Pay Administrative or Priority Claims in Full on the Statutory Effective Date |
| **§1122(a)** | The Plan Improperly Classifies Claims |
| **§1123(a)(4)** | The Plan Does Not Treat Similarly Situated Creditors the Same |
| **§363(k); §363(m)** | The DIP Lenders Cannot Credit Bid the Estate Claims and Receive 363(m) Protections Through the Flawed Estate Claims Credit Bid Transaction |
| **§1125(a)(1)** | The Disclosure Statement Cannot be Approved on a Final Basis |

# The Voters Have Spoken

- Despite the Creditors' Committee's support, unsecured creditors have overwhelmingly rejected the Plan

- For First Brands Group Holdings, LLC and Viceroy Private Capital, LLC, there is not a single impaired consenting class





*Source: Exhibit B — Voting Record Date Claims Tabulation (Dkt No. 3351-1). Top: count of the 92 Debtors by Class 7 result. Bottom: impaired voting classes at First Brands Group Holdings, LLC and Viceroy Private Capital, LLC.*

3

# The Plan is an Infeasible House of Cards

To be feasible, the Plan must demonstrate:

*"Reasonable probability of success"*

*In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801 (5th Cir. 1997)

*More than mere possibility — must be reasonably probable*

*In re Cantu*, 398 F. App'x 76, 78 (5th Cir. 2010)

*Reasonable projections "cannot be speculative, conjectural or unrealistic"*

*In re Idearc Inc.*, 423 B.R. 138, 167 (Bankr. N.D. Tex. 2009)

*"Not be speculative or based on unreasonable assumptions"*

*In re Cantu*, 398 F. App'x 76, 78 (5th Cir. 2010)

4

# The Numbers Don't Add Up

- The Debtors failed to meet their burden of demonstrating, by a preponderance of the evidence, a reasonable probability of success

- The Plan presupposes the ability of the DIP Lenders to unroll the roll-up

- To cover just $222M in Administrative and $78M in Priority Claims, the Litigation Trust must recover $2B by mid-2028 — but even the Administrative and Priority Claim estimates are speculative at best

  - The Debtors chose to not set an administrative bar date, and the record confirms their own estimates do not account for WARN Act claims or diminution claims arising from defaulted adequate protection obligations

- The Debtors put forth no reliable evidence as to the genuine value of the Estate Claims, nor any evidence whatsoever as to the particular Estate holding any such claim

  - The market, the best value indicator, suggests an extreme unlikelihood that the Litigation Trust can reach the required recovery in the proposed timeframe

  - The Debtors' marketing effort was unsuccessful, generating only a purported $75M credit bid

  - The non-market-based evidence put before the Court is speculative, unreliable and result-oriented; the Debtors' expert only testified it "is reasonably possible" that recoveries "could" equal $2 billion, without reviewing a full set of facts

- Recoveries rely on $75M in funding to pursue $2B target, with up to $37.5M in discretionary funding that will only lead to further dilution

5

# Kirschner's Flawed Analysis

- Retained just after Disclosure Statement Hearing and a mere 24 days before submitting his result-oriented "opinion"

- Adopted the Debtors' $25.4B figure for assertable Estate Claims at face value, without independently verifying

- Accepts the Debtors' and UCC's advisors' selective storyline of "red flags", which as demonstrated was an incomplete and selective disclosure that excluded key facts

- Assumes Ponzi-scheme presumption would apply

- Given compressed timeline, failed to evaluate or even consider defenses such as the Fifth Circuit's single satisfaction rule — "a more detailed analysis of defenses has not yet been performed" — and categorically excluded the limited liability structure of SPV putative defendants

- Includes no evaluation of collectability

- Ignores risk of potential spoliation from failure to preserve evidence and secure devices

- Circular dependence: Moore leans on Kirschner's declaration (as well as work done by others), while Kirschner in turn relies on the Debtors' and Moore's selectively chosen facts

# Kirschner's Flawed Analysis

With respect to Katsumi, Kirschner failed to take at least the following key facts into consideration:

Katsumi funded approximately $4.9 billion of additional third-party factoring while only being paid $4.7 billion (Kirschner Decl. ¶89)

Kirschner failed to review the emails involving Katsumi that occurred after September 28, 2023

Katsumi conducted more audits than any other factor (Malloy July 22, 2026 Dep. Tr. 190:20-191:1)

Katsumi was a victim of First Brands fraud (Malloy July 22, 2026 Dep. Tr. 175:20-23)

7

# Administrative Expense Claimants Left Holding the Bag Under Delayed Effective Date Construct

§1129(a)(9)(A)

## Legal Standard

- Payment "in full, in cash, on the effective date of the plan" — mandatory

- The ordinary meaning of "effective date" is the date on which an instrument becomes enforceable or otherwise takes effect. *In re Ultra Petroleum Corp.*, 624 B.R. 178, 186 (Bankr. S.D. Tex. 2020), *aff'd*, 51 F.4th 138 (5th Cir. 2022)

## Purpose

- Administrative priority encourages third parties to continue doing business with debtors-in-possession *(See U.S. Trustee's Objection to (I) Final Approval of Disclosure Statement, (II) Confirmation of the Plan and (III) Request for Order Converting Cases* (Dkt No. 3267), ¶ 29)

## Plan Fatal Flaws

- The Debtors are administratively insolvent

- Plan is substantially consummated on or immediately after the Confirmation Date—binding all parties (§13.1), vesting assets (§13.2), imposing injunctions and granting releases (§§ 13.4, 13.5), and authorizing dissolution of the FBG Debtors (§ 5.10)—despite failing the Code's confirmation prerequisites

- The functional "effective date" here is the Confirmation Date (or immediately thereafter) for every purpose other than payment of administrative and priority claims

- And if the Effective Date never occurs, the administrative expense claim consent program and the funding of the litigation trust remains in place indefinitely

# What Happens If the Plan Does Not Go Effective?

Cross-Examination of Charles Moore, p.141:19-142:23

**Q** And SO there is a possibility here that what you call the effective date will never occur, correct?

**A** That is a possibility, yes.

**Q** But even if the effective date does not occur, transactions related to the litigation trust, the estate claims credit bid transaction, the litigation trust funding, the administrative expense claims consent program, those will all remain in place and will not be nullified, correct?

**A** Correct.

**Q** And if the effective date does not occur, the DIP collateral credit bid transaction, the DIP collateral trust funding, the foreclosure by…the ABL secured parties on the ABL priority security, all of that will remain in place and not be nullified, correct?

**A** Correct.

**Q** And even if the effective date does not occur, per the related plan supplement documents that established the trusts and the other terms of the plan under articles 6, 7 and 8, the provisions that govern the creation of the trusts will remain in effect and not be nullified, correct?

**A** Correct.

**Q** And further, isn't it true that even if the effective date never occurs, the Debtor releases under Section 13.5(A), the exculpation provisions of Section 13.6, the waiver of limitations on releases under 13.7 and the release and exculpation injunctions in Section 13(E) will all remain in effect and not be nullified, correct?

**A** Correct.

**THE POINT**

Despite not going effective, the Plan will remain in effect and parties will be without recourse. The Administrative Expense Claims Consent Program, release, and injunction all survive without an Effective Date. And the obligation to pay administrative expense claimants waits on a date that may never come by a Debtor that is no longer functioning.

9

# Comparing Steward Health to First Brands

**Steward Health**

- Non-litigation assets alone were projected to generate at least $46 million

- Litigation assets were separately projected to generate between $529 million and $746 million (midpoint of $631 million)

- Those projected recoveries dwarfed total administrative and priority claims of roughly $104.9 million in the aggregate

- Those claims were fixed by an administrative claims bar date that had expired over five months before plan solicitation

- Had more than $235 million cushion to satisfy the administrative and priority claims even if there were no litigation claims

- Litigation claims included preference claims, contract-based claims, and insurance claims

**First Brands Group**

- Debtors are currently administratively insolvent with no non-litigation assets to fund a shortfall

- Satisfying administrative and priority claims rests solely on litigation assets

- There is no bar date

- No recovery cushion

- There is no worst-case analysis for litigation claims

- FBG Estate Claims depend solely on the novel application of a Ponzi scheme

- Litigation claims require multiple "home runs" which evidence does not support

10

# The Greystone "One Clear Rule"

**THE ONE CLEAR RULE**

*"Thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan."*

*In re Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir. 1991)

### Similar claims must be treated alike

Proper classification is essential so that creditors with claims of similar priority and rights against the estate are treated similarly. §1122

### Separate classes demand an independent reason

Substantially similar claims may be split only "for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class."

### Why the rule exists

Otherwise, a debtor could "manipulate acceptance by artful classification" — corrupting the integrity of §1126(c) vote

11

# Textbook Example of Improper Classification / Gerrymandering

*"One clear rule":* Cannot classify similar claims differently to gerrymander an affirmative vote

Greystone, 995 F.2d 1274, 1279 (5th Cir. 1991)

- Roll-Up Claims, First Lien Claims, Second Lien Claims, and General Unsecured Claims all share pro rata in the same waterfall tier (Plan § 6.5(d)(v))

- Yet classified in 4 separate voting classes (Classes 3, 4, 5, and 7)

- The "unroll" construct: DIP Secured Parties would have a $4.4B administrative claim but pivoted to avoid impossibility of feasibility

- The only plausible explanation: manufacturing impaired assenting classes to gerrymander votes

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | No (Presumed to Accept) |
| Class 2 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |
| Class 3 | Roll-Up Claims | Impaired | Yes |
| Class 4 | First Lien Claims | Impaired | Yes |
| Class 5 | Second Lien Claims | Impaired | Yes |
| Class 6 | ABL Claims | Impaired | Yes |
| Class 7 | General Unsecured Claims | Impaired | Yes |
| Class 8 | Subordinated Claims | Impaired | Yes |
| Class 9 | Intercompany Claims | Impaired | No (Presumed to Accept) |
| Class 10 | FBG Debtors Interests | Impaired | No (Deemed to Reject) |

12

# Non-Trade Creditors Are Victimized Again

Specified Non-Released Parties are categorically excluded from the Preference Settlement

### Legal Standard

- "Same treatment" requires the "same opportunity" for recovery. *In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3d Cir. 2013)

- Debtors are prohibited from providing co-class members lower economic value than others for the same consideration. *In re Serta Simmons Bedding, L.L.C.*, 125 F.4th 555, 591–92 (5th Cir. 2024)

- "An exclusive opportunity resulting in a significant disparity in value, without consideration for the [sic] opportunity itself, qualifies as treatment for a claim under § 1123(a)(4)." *ConvergeOne*, 678 BR 879, 889 (S.D. Tex. Sept. 25, 2025)

### Plan Fatal Flaws

- Creditors designated as "Specified Non-Released Parties" are categorically denied participation in the Preference Settlement

- Debtors unilaterally decided who is excluded

- Moore admits Preference Settlement was "critical to reaching an agreement with the Creditors' Committee" (Moore Decl. ¶24) — designed to obtain the Creditors' Committee's support

- Trade creditors, which dominate the Creditors' Committee, are unfairly favored without any rational business justification

- Largest unsecured creditors have been ignored and are now being discriminated against

- Creditors are coerced to reduce claim or be excluded and potentially sued

13

# In re Serta Simmons Bedding, L.L.C., 125 F.4th 555 (5th Cir. 2024)

A plan cannot satisfy Section 1123(a)(4)'s equal-treatment requirement merely by extending nominally identical settlement opportunities to class members where the resulting value differs by group membership

Differences in the expected value of distribution meant that the distributions in the class are not equal — such variance likely ran to seven or eight figures, and therefore went far beyond "approximate equality."

Disparate value is sometimes permissible by corporate law but not from intentional actions

**BOTTOM LINE**
No principle of corporate law permits the unequal treatment inflicted here

14

# ConvergeOne

A plan offering valuable and exclusive opportunity for a portion of a class of creditors but not the remainder violates § 1123(a)(4). ConvergeOne Holdings, Inc. 678 BR 879, 894 (SD Tex 2025)

**ConvergeOne**

- Backstopping opportunity was exclusive — offered to some lenders, but not all

- District court found a categorical exclusion of this kind "perhaps more straightforward" than the value-disparity analysis in *Serta*, because the excluded creditors were never offered the opportunity to participate in the first place

- Exclusivity resulted in disparate treatment in violation of §1123(a)(4)

**First Brands Group**

- A mirror image of ConvergeOne: the preference settlement is offered to some Class 7 creditors and categorically withheld from Specified Non-Released Parties in the same class

- Excluded members receive nothing for the opportunity denied them

- As in ConvergeOne, that is unequal treatment as a matter of law — and the Plan fails §1123(a)(4)

15

# Unhappy with Prior Bargain they Struck, Parties Now Rewrite the DIP Order to Confirm the Plan

- Paragraph 8(a) of the DIP Order specifically carves out of DIP Collateral: "claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550"

- The DIP liens reach only the proceeds, leaving the underlying Avoidance Actions outside the collateral package

- Plan § 5.2(e) disposes of the Avoidance Actions outright through a purported credit bid, with no cash consideration tendered

- Assets outside the scope of collateral cannot be acquired by credit bid

- There is no external third-party buyer necessitating § 363(m) protection

- The flawed and limited sale process calls into question lenders'/buyers' entitlement to good-faith purchaser protections

16

# ABL Collateral Trust Assets Definition Rewrites Prior Orders

**Plan Definition of ABL Collateral Trust Assets**
*(Plan, Dkt No. 3448)*

- Includes "any amounts in the Factored Receivables Account that are determined by a Final Order to be property of an FBG Debtor's Estate"

- **BUT EXCLUDES** "any amounts in the Factored Receivables Account that the Bankruptcy Court determines by a Final Order that a Factor has a *validly perfected first-priority security interest* in such amounts"

**Factoring Procedures Order**
*(Dkt No. 1133)*

- The Order allowed the Debtors to release funds **only** for receivables for which no Factor asserted a claim

- The Order's framework treated the Factors' claims as **ownership disputes (true sale)**, not as lien priority disputes

**THE POINT**

The Plan's ABL Collateral Trust Assets definition rewrites the framework established by the Factoring Procedures Order — recharacterizing what were **ownership disputes (true sale)** as **security interest disputes (lien perfection)**, thereby contradicting the Court's prior orders and the Factors' asserted rights.

17

# Other Plan Defects

Debtors use selective substantive consolidation to favor future plaintiffs and disadvantage defendants

"A pretend consolidation" cannot be "used as a sword and not a shield." *Owens Corning*, 419 F.3d 195, 216 (3d Cir. 2005)

- The Plan uses consolidation for distributions and Preference Settlement — but denies it for avoidance defenses

- Moore admits "Money received from factoring parties in many instances was cycled back to pay other or the same factoring parties" (Moore Decl. ¶84); "Debtors' former management improperly commingled the funds" (Moore Decl. ¶73)

  - **If A&M cannot untangle the entities after 10+ months, consolidation should apply for ALL purposes**

- Kirschner testified that a Ponzi scheme consolidates all entities as one

# Disclosure Statement Inadequacy

§1125(a)(1): Must "adequately, not selectively, disclose fully and precisely all information" *In re Westland Oil,* 157 B.R. 100, 104 (S.D. Tex. 1993)

**Deficiency 1: No Disclosure of Consequences if Effective Date Never Occurs**
- Plan §12.3 says Plan becomes "null and void" but provides no detail
- What happens after creditors have waited 2+ years?
- Hundreds of creditors, including small business owners, cannot sift through discrepancies

**Deficiency 2: No Adequate Information on Value or Collectability of Estate Claims**
- No information about value of Estate Claims are worth or when they might be reduced to cash
- No investigation into collectability of any claims

**Deficiency 3: No Adequate Information Regarding Admin Expense Claims Consent Program**
- Admin claimants asked to reduce claims by 50% but given no information about how much faster they would be paid — it could be two years or two days
- No information enabling admin claimants to evaluate whether election provides any meaningful benefit

**Deficiency 4: No Information Enabling Priority Claimants to Assess Payment Timeline**
- No information enabling priority claimants to assess likelihood claims will be paid within five years of Petition Date as required by § 1129(a)(9)(C)
- No basis to conclude that $1.8–$2B can be recovered by 2028 or within five years

19