**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC,** *et al.*, | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| | § | |
| **Debtors.**[1] | § | |
| | § | |

### CARNABY SECURED LENDERS' NOTICE OF FILING OF DEMONSTRATIVE

**PLEASE TAKE NOTICE** that, on July 28 through July 30, 2026, a hearing (the "***Confirmation Hearing***") was held before the Honorable Christopher M. Lopez of the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") to consider confirmation of the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3448) and final approval of the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 2982).

**PLEASE TAKE FURTHER NOTICE** that the Court has scheduled closing argument regarding the Confirmation Hearing to be held before the Honorable Christopher M. Lopez on August 7, 2026 at 9:00 a.m. (Central Time) (the "***Closing Argument***").

**PLEASE TAKE FURTHER NOTICE** that the undersigned counsel for the Carnaby Secured Lenders intends to present a PowerPoint demonstrative during the Closing Argument, a copy of which is attached hereto as **Exhibit A**.

---

[1]   A complete list of the Debtors in these Chapter 11 cases (the "Chapter 11 Cases") may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Dated: August 7, 2026
      Houston, Texas

Respectfully submitted,


*/s/ Allan S. Brilliant*
Allan S. Brilliant (admitted *pro hac vice*)
Gary J. Mennitt (admitted *pro hac vice*)
Stephen M. Wolpert (admitted *pro hac vice*)
Eric O. Hilmo (admitted *pro hac vice*)
**DECHERT LLP**
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Email:   allan.brilliant@dechert.com
         gary.mennitt@dechert.com
         stephen.wolpert@dechert.com
         eric.hilmo@dechert.com


-and-

John F. Higgins (TX Bar No. 09597500)
Megan Young-John (TX Bar No. 24088700)
James A. Keefe (TX Bar No. 24122842)
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
Email:   jhiggins@porterhedges.com
         myoung-john@porterhedges.com
         jkeefe@porterhedges.com


***Counsel to the Carnaby Secured Lenders***

# **EXHIBIT A**



*In re First Brands Group LLC*, Case No. 25-90399 (CML)

# The Carnaby II and III Secured Lenders: Closing Argument

Allan S. Brilliant, Dechert LLP

© 2026 Dechert LLP

# Substantially All Plan Transactions Occur on, or are Triggered by, the Confirmation Date

**❯ The FBG Debtors' Plan provides that, among other things, all of the below occur or take effect on the Confirmation Date:**

| | |
|---|---|
| 1. Creation of Trusts and governance thereof under Plan and Plan Supplement Documents | 10. Professional Fees Escrow Account funded and transferred to Wind Down Administrator (Plan §§ 2.3(d), 5.3(vi)); Deadline for Final Fee Applications 90 days from Confirmation Date (Plan § 2.3 (a)) |
| 2. Transfer of Estate Claims to Litigation Trust | 11. Wind Down Reserve Funded (Plan § 5.3(v)) |
| 3. Estate Claims Credit Bid transaction | 12. Wind Down Administrator authorized to seek to close cases (Plan § 5.12) |
| 4. Litigation Trust Funding | 13. UCC dissolved (Plan § 15.3) |
| 5. Issuance and Distribution of Trust Interests | 14. Debtor releases (Plan § 13.5(A)) and related injunction (§ 13.8) |
| 6. DIP Collateral Credit Bid transaction | 15. Exculpation provisions (Plan § 13.6) |
| 7. Deemed foreclosure by ABL Secured Parties | 16. Waiver of limitations on releases (Plan § 13.7) |
| 8. Administrative Expense Claims Consent Program | 17. Release and exculpation injunctions (Plan § 13(E)) |
| 9. Directors and Officers terminated, Wind Down Administrator appointed (Plan § 5.8) | 18. Deemed rejection of executory contracts (Plan § 11.1) |

DECHERT

# Little Occurs on the "Effective Date"

▼ **On the other hand, only the following occur on the "Effective Date," as the Plan defines it:**

| | |
|---|---|
| 1. Payment in full of Administrative and Priority Claims.<br><br>If assets are available, cash distributions to holders of junior Litigation Trust Interests (which were issued on the Confirmation Date) may commence. | 3. Release of Remaining First Lien Claims, Second Lien Claims, and related security documents (meaningless since any recoveries will come from distributions on Litigation Trust Interests). |
| 2. Effectiveness of opt-in Third Party Releases. | 4. Gatekeeping injunction for Estate Claims (Plan § 13(d)) |

# Wind Down Budget

**Project Overdrive**
**Wind Down Budget - Monthly Forecast Summary**
*USD in Millions*

| Cost Overview | Projected Monthly Spend | | | | | | | | | | | | 12-Mo. Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 | |
| **Estate Wind Down Costs** | | | | | | | | | | | | | |
| **Professional Fees** | | | | | | | | | | | | | |
| Debtor Advisors Transition | $ 0.5 | $ 0.5 | $ 0.5 | $ 0.5 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 2.0 |
| Tax Returns | - | - | - | - | - | - | - | 0.9 | 0.9 | - | - | - | 1.8 |
| US Trustee Fees | - | - | 0.1 | 0.1 | 0.1 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.1 | 0.3 |
| **Subtotal - Professional Fees** | $ 0.5 | $ 0.5 | $ 0.6 | $ 0.6 | $ 0.1 | $ 0.0 | $ 0.0 | $ 0.9 | $ 0.9 | $ 0.0 | $ 0.0 | $ 0.1 | $ 4.1 |
| **Case Administration** | | | | | | | | | | | | | |
| Wind Down Administrator | $ 0.2 | $ 0.2 | $ 0.2 | $ 0.1 | $ 0.1 | $ 0.1 | $ 0.1 | $ 0.1 | $ 0.1 | $ 0.1 | $ 0.1 | $ 0.1 | $ 1.3 |
| WDA Counsel | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 1.3 |
| Contract Cures | 0.2 | - | - | - | - | - | - | - | - | - | - | - | 0.2 |
| Insurance / Bonding | 0.4 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 1.8 |
| Bank Fees | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.1 |
| **Subtotal - Case Administration** | $ 0.9 | $ 0.4 | $ 0.4 | $ 0.4 | $ 0.4 | $ 0.4 | $ 0.3 | $ 0.3 | $ 0.3 | $ 0.3 | $ 0.3 | $ 0.3 | $ 4.6 |
| **Corporate Costs** | | | | | | | | | | | | | |
| Direct Costs | $ 1.1 | $ 1.1 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 2.3 |
| Corporate Rent | 0.1 | 0.1 | - | - | - | - | - | - | - | - | - | - | 0.1 |
| Employee Costs | 0.5 | 0.5 | - | - | - | - | - | - | - | - | - | - | 0.9 |
| IT Costs | 0.1 | 0.1 | - | - | - | - | - | - | - | - | - | - | 0.2 |
| **Subtotal - Corporate Costs** | $ 1.7 | $ 1.7 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 3.5 |
| **Total Estate Wind Down Costs** | $ 3.1 | $ 2.7 | $ 1.0 | $ 0.9 | $ 0.4 | $ 0.4 | $ 0.3 | $ 1.2 | $ 1.2 | $ 0.3 | $ 0.3 | $ 0.3 | $ 12.2 |

o   Debtor Exhibit 15 [ECF No. 3366-2]

- Very little remains of the FBG Debtors' estates after the Confirmation Date.

- Wind Down Budget confirms that all meaningful Plan transactions occur on the Confirmation Date.



DECHERT

# Key Confirmation Date Transactions are Irrevocable

- All of the key Plan transactions are *IRREVOCABLE*.

- If the "Effective Date" never occurs, the key transactions cannot be undone.

- Debtors admit this.

  - *See* Tr. Hr'g. 7/29/2026, 141:19 – 142:23 (Moore Testimony).

  - LAM Parties Exhibit 1, LAM Interrogatory No. 14.



# Plan Based on Artificial "Effective Date" Construct

◤ **The "effective date" is "the date on which the plan goes into effect, which means the debtor begins implementing the plan and making payments to creditors." *In re Faye Foods, Inc.*, 766 F. App'x 204, 211 (6th Cir. 2019).**

- Plan implementation and distributions to creditors begin on the Confirmation Date.

- All 18 items listed above, among others, will occur on or shortly after the Confirmation Date, not the "Effective Date" as the Plan defines it (if that date ever occurs).

- Thus, it is clear the "effective date" of the Plan is the Confirmation Date.

DECHERT

# Plan Based on Artificial "Effective Date" Construct

- The Plan does *NOT* provide for a delayed or deferred "effective date."

- The Plan is implemented on the Confirmation Date.

- The Plan merely defers the payment of Administrative Expense Claims and Priority Claims to a date in the future.

- Artificial "Effective Date" definition cannot override core, clear provisions of the Bankruptcy Code.


DECHERT

# Debtors Cannot Evade Confirmation Requirements through "Plan Settlement"

◤ **The Fifth Circuit has made clear that debtors cannot use "plan settlements" to evade the effect of specific Bankruptcy Code provisions.**

- "The settlement indemnity was an impermissible end-run around § 502(e)(1)(B)'s disallowance of contingent claims for reimbursement. And the appellees' characterization of the indemnity as part of a § 1123(b)(3)(A) settlement does not change the analysis." *In re Serta Simmons Bedding, L.L.C.*, 125 F.4th 555, 589 (5th Cir. 2024).

- Using the artificial "Effective Date" definition, the FBG Debtors attempt an impermissible end run around the confirmation requirements— namely 1129(a)(9).

- Debtors' argument that this is justified by a "Plan Settlement" fails under binding Fifth Circuit precedent.



DECHERT

# Debtors Cannot Evade Confirmation Requirements through "Plan Settlement"

- Further, settlements embedded in a Plan must meet the statutory confirmation requirements, rather than the deferential standard under Rule 9019.  *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 137 (Bankr. D.N.J. 2010).

- Thus, FBG Debtors' argument that transactions could have been approved under 9019 (or 363) is of no moment.  Such Transactions are incorporated in and are being approved and implemented by the Plan.



# The Plan Is Not Feasible

*In re Premiere Network Servs.*, No. 04-33402 (HDH), 2005 Bankr. LEXIS 2298 at *13, *16 (Bankr. N.D. Tex. July 1, 2005)

- "[T]he certainty of the plan's implementation is required to be in place at the time of the confirmation hearing."

- "Extending and creating uncertainty as to the effective date forces...priority claimants to subsidize the proposed Plan and bear the risks of failure."

- The effective date "should not be established in an effort to buy time to comply with the other provisions of § 1129."

August 7, 2026 / **Carnaby II and III Secured Lenders: Closing Argument**

**DECHERT**

# The Plan Is Not Feasible

- **Debtors' assertion that 1129(a)(11) does not apply to the Plan because it proposes a liquidation is misplaced.**
  - The Plan proposes a specific liquidation and wind down.

  - If the "Effective Date" does not occur, confirmation of the Plan is "likely to be followed by the liquidation … of the debtor" under chapter 7.

  - Such chapter 7 is not proposed under the Plan.

  - Thus, under the plain meaning of 1129(a)(11), to confirm the Plan, the Court would need to find that conversion to chapter 7 will not follow confirmation, i.e. the "Effective Date" under the Plan will have to occur.


DECHERT

# Recoveries Required to Pay Administrative and Priority Claims in Full Are Underestimated

## Administrative and Priority Claim Amounts are Underestimated

↘ **The total allowed amount of Administrative Expense Claims and Priority Claims is likely to be much higher than the Debtors' $300 million estimate ($222 million for Administrative Expense Claims and $78 million for Priority Claims).**

- No bar date has been set.
  - ○ *See* Tr. Hr'g. 7/29/2026, 117:6-8; 123:21-124:1 (Moore Testimony).
- Debtor estimate is based solely on claims filed prior to July 6, 2026 and books and records as of that date.
  - ○ *See* Tr. Hr'g. 7/29/2026, 117:6-19 (Moore Testimony).
- Estimate assumes the Debtors successfully challenge numerous Administrative Expense Claims and Priority Claims—which is not assured.
  - ○ *See* Tr. Hr'g. 7/29/2026, 115:24-116:15 (Moore Testimony).
- Additional claims have been filed since July 6.


DECHERT

# Recoveries Required to Pay Administrative and Priority Claims in Full Are Underestimated

## Administrative and Priority Claim Amounts are Underestimated

- ◥ Claims filed after July 6, 2026 include (i) Administrative Expense Claim of Carnaby II and III Secured Lenders against the FBG Debtors for up to $61 million for breach of their Interim AP Order and (ii) additional claims filed by other parties asserting, in the aggregate, at least $12 million in administrative claims.

- ◥ Moore testified that he considered the Carnaby Secured Lenders' claim after it was filed and did not change his estimate.

  - ○ Tr. Hr'g. 7/29/2026, 115:10-23.

  - • But he acknowledges the FBG Debtors did not comply with the Carnaby II and III Interim AP Order.

    - ○ Tr. Hr'g. 7/29/2026, 122:13-123:20.

  - • Only evidence in the record regarding this claim is Moore's testimony that the adequate protection order had a reservation of rights, which does not relieve the Debtors of their obligations.

    - ○ Tr. Hr'g 7/29/2026, 122:22-123:8

- • ***The $37 million "cushion" in the Administrative Expense Claims estimate may be more than $36 million short based on the above asserted claims alone.***



# Recoveries Required to Pay Administrative and Priority Claims in Full Are Underestimated

## Administrative and Priority Claim Amounts are Underestimated

- Moore expects parties will file additional Administrative Expense Claims.
  - o *See* Tr. Hr'g. 7/29/2026, 117:6-19 (Moore Testimony).

- Moore acknowledged it is possible SPV Debtors may file Administrative Expense Claims against FBG Debtors.
  - o *See* Tr. Hr.g. 7/29/2026, 119:4-9.

- Estimates exclude WARN Act claims asserted to be Administrative Expense Claims or Priority Claims.
  - o *See, e.g. UAW v. First Brands*, Adv. Proceeding No. 26-03143 (alleging priority for WARN Act Claims of 251 employees); Tr. Hr'g. 7/29/2026, 116:16-117:5 (Moore Testimony).

- No Party has agreed to or expressed interest in reducing their claims through the Administrative Expense Claims Consent Program.
  - o Tr. Hr'g. 7/29/2026, 124:2-17 (Moore Testimony).


DECHERT

# Recoveries Required to Pay Administrative and Priority Claims in Full Are Underestimated

## Litigation Trust May Incur Additional Funding on a Priming Basis

➤ **The estimate that $1.9 billion in Litigation Trust distributions will be sufficient to pay all Administrative Claims and Priority Claims ignores the potential for Additional Litigation Trust funding.**

- To attempt to recover $1.9 billion, the Litigation Trust will need to file numerous claims against multiple parties.

- Debtors have not created a budget for Litigation Trust costs, and Moore conducted no analysis.
    - Tr. Hr'g. 7/29/2026, 126:1-11 (Moore Testimony).

- Defendants are likely to aggressively defend claims against them, which may be very costly to the Litigation Trust.

- Plan provides for potential for Litigation Trust to incur "Additional Litigation Trust Funding" to fund the litigation.

  - Any Additional Litigation Trust Funding could prime the entire waterfall.

    - Plan § 6.4(g).

  - Under the Plan, such funding would increase the distributions that must be made prior to the occurrence of "Effective Date."

    - Plan § 6.5; Docket No. 3466 (Illustrative Recovery Scenarios); Tr. Hr'g 7/29/2026, 127:19-128:17 (Moore Testimony).



# Recoveries Required to Pay Administrative and Priority Claims in Full Are Underestimated

➤ **Due to (i) Underestimation of Administrative Expense Claims and Priority Claims, and (ii) the potential that litigation costs will lead to additional funding on a priming basis,** *the FBG Debtors will need to recover significantly more than the $2 billion in Estate Claim proceeds to pay Administrative Expense Claims and Priority Claims in full.*


DECHERT

# The Debtors' Expert Testimony Does Not Support Feasibility.

- ◤ Debtors' only support for feasibility is Mr. Kirschner's conclusion that it is **_reasonably possible_** that recoveries in excess of $2 billion **_could_** be received by the end of 2028. Tr. Hr'g 7/30/2026, 43:9-18; 44:7-17 (Kirschner Testimony).

- ◤ Even if the Court were to find this opinion reliable, it does not meet the standard for feasibility, which requires that it be more likely than not that the liquidation under the Plan will proceed as proposed.


DECHERT

# The Ponzi Scheme Presumption Does Not Apply

◤ **Kirschner's reliance on the Ponzi Scheme Presumption is Misplaced**

- Not all entities that engage in fraud are Ponzi Schemes.

- Fifth Circuit defines a Ponzi Scheme as "a fraudulent **investment scheme** in which money contributed by later investors generates artificially high dividends or returns for the original investors whose example attracts even larger investments." *Am. Cancer Soc. v. Cook*, 675 F.3d 524, 527 (5th Cir. 2012) (emphasis added).

  - Tr. H'rg. 7/30/2026, 318:9-14 (when asked if he agreed that this is the definition, Kirschner states "Yes.  I tried to describe that in general this morning.")

- Fifth Circuit has refused to expand the presumption to entities that engage in "substantial legitimate business" but "in which there were some fraudulent or Ponzi-like transactions."  *In re Am. Hous. Found.*, 785 F.3d 143, 161 (5th Cir. 2015), as revised (June 8, 2015).

  - Cases cited by Debtors for opposite point are all outside Fifth Circuit.



DECHERT

# The Ponzi Scheme Presumption Does Not Apply

◤ **Kirschner's reliance on the Ponzi Scheme Presumption is Misplaced**

- First Brands was not a Ponzi Scheme:
  - No evidence that Debtors touted existing investors' returns to lure subsequent investors.  Tr. H'rg. 7/29/2026, 148:20-149:3 (Moore Testimony) ("I'm not aware of any evidence.  I just don't know."); Tr. H'rg. 7/30/2026, 316:10-14 (Kirschner Testimony) ("I have no understanding of what they touted or did not tout to investors.").

  - Debtors engaged in substantial legitimate business. Tr. H'rg. 7/29/2026 at 149:4-19 (Debtors were operating business, employed 26,000, were a leading auto parts supplier).

- Even in an investment scheme that meets the definition of a Ponzi Scheme, **all transfers are not** subject to the presumption.
  - *In re Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011) (examining whether evidence showed transfers defendants received were proceeds of Ponzi scheme).



DECHERT

# Debtors' Expert Relies on Incomplete Facts

**◣ Kirschner relied entirely on Debtors' curated facts, including calculation of $25.4 billion of transfers out of the Debtors during the four-year period prior to the Petition Date—a meaningless number.**

- Does not take into account *any* subsequent transfers to the Debtors by the potential defendants.
  - Tr. Hr'g. 7/30/2026, 144:23-145:2; 330:21-331:15 (Kirshcner Testimony).

- No reliable evidence on when fraud or insolvency began.

- No opinion on potential preference recoveries; Kirschner's testimony rests entirely on suing insiders, factors, supply chain lenders, Onset, and possibly the sellers of certain acquired businesses.
  - Tr. Hr'g. 7/30/2026, 43:12-44:6, 67:15-20 (Kirschner Testimony); Debtor Demonstrative [Docket No. 3466].



# Debtors' Expert Relies on Incomplete Facts

**Kirschner relied on materials selected by Debtors based on an incomplete investigation.**

- Due to liquidity constraints, the Debtors' investigations would down in January prior to completion.
  - Tr. Hr'g. 7/28/2026 127:5-128:8, 129:18-22 (Moore Testimony).

- None of the Debtors' advisors investigated potential defenses to Estate Claims brought by the Litigation Trust, which seriously undermines their asserted value.
  - Tr. Hr'g. 7/29/2026, 237:9-13 (Moore Testimony).



# Debtors' Expert Did Not Evaluate Defenses or Mitigating Facts

- Kirschner expressed no opinion on the effect of any particular defense, such as:
  - 548(c) good faith defense
  - "Net loser"
  - "Single-satisfaction rule" or "give back" defense.
    - Tr. Hr'g 07/30/2026, 321:6-322:16; 324: 9-325:16 (Kirschner Testimony).

- Kirschner did no analysis of potential overpayment for acquired business acquisitions.
  - Tr. H'rg. 7/30/2026, 312:12-314:11 (Kirschner Testimony).

- Kirschner acknowledges that the composition and nature of the potential Estate Claims impacts the ability to collect sufficient funds.  Tr. Hr'g. 7/30/2026, 117:11-25 (Kirschner testimony).

  - Yet, Kirschner conducted no bottom-up or top-down assessment of the largest Estate Claims.
    - Tr. Hr'g. 7/30/2026, 245:1-247:4 (Kirschner Testimony).

**August 7, 2026** / **Carnaby II and III Secured Lenders: Closing Argument**


DECHERT

# Debtors' Expert Testimony Lacks Any Rigorous Analysis Regarding Timing of Estate Claims Litigation or Collectability

- Kirschner conducted no serious analysis of collectability of Estate Claims.

  o No analysis regarding collectability on judgements against any creditors other than Patrick James.

    - Tr. Hr'g. 7/30/2026, 196:20-197:5 (Kirschner Testimony).

  o No assessment of whether federal forfeiture laws will delay or prevent collection of any judgments.

    - Tr. Hr'g. 7/30/2026, 150:10-153:20 (Kirschner Testimony).

  o Assumes that parties will settle potential Estate Claims for significant value.

    - Tr. Hr'g. 7/30/2026, 306:11-308:25 (Kirschner Testimony).

- Kirschner did not analyze available data regarding the actual timing required to conclude multi-billion dollar fraud litigation.

    - Tr. Hr'g 7/30/2026, 199:11-200:23 (Kirschner Testimony).


DECHERT

# The Plan Does Not Pay Administrative and Priority Claims In Full

- **All market evidence suggests the Estate Claims will never generate sufficient Litigation Trust distributions to pay Administrative Expense Claims and Priority Claims in full.**

  - The DIP A Term Loans currently trade below 20 cents.

    - Carnaby Secured Lenders Exhibit 71 (ECF No. 3256-1).

    - Suggests market believes that the Estate Claim proceeds will not reach beyond the $350 million minimum threshold required for payment of any proceeds on account of Administrative Expense Claims, let alone the $1.8 billion necessary to pay them in full.

      - Tr. Hr'g. 7/29/2026, 140:18-141:4 (Moore Testimony).

  - The Estate Claims Credit Bid is only $75 million.

    - Tr. Hr'g. 7/29/2026,159:20-23; 170:22-25; 176:19-21 (Moore Testimony); Carnaby II and III Exhibits 64, 65, and 66.

  - No third-party given access to the Estate Claims data room submitted a bid for the Estate Claims in any amount.

    - Tr. Hr'g. 7/29/2026, 170:11-171:3; 179:2-4 (Moore Testimony).



DECHERT

# Substantial Unrefuted Evidence Supports Potential Defendants' Good Faith Defenses

- First lien term loan traded at 95 cents, and second lien term loan traded at 90 cents, shortly before the Petition Date.
  - Tr. Hr'g. 7/29/2026, 146:22-147:14 (Moore Testimony); Carnaby II and III Exhibits 67 and 68.

  o Price suggests market participants, including lenders getting releases under the Plan, did not perceive any badges of fraud.

- Financial statements audited by a national auditing firm, no fraud reported.
  - Tr. Hr'g. 7/29/2026,145:22-146:14 (Moore Testimony).

- Debt rated by credit rating agencies, no fraud reported.
  - Tr. Hr'g. 7/29/2026, 146:15-21(Moore Testimony).


DECHERT

# The Plan Does Not Meet the Good Faith Requirement

- Bankruptcy Code Section 1129(a)(3)'s "good faith" requirement "should be evaluated in light of the totality of the circumstances surrounding establishment of the plan, mindful of the purposes underlying the Bankruptcy Code." *In re Vill. at Camp Bowie I, L.P.*, 710 F.3d 239, 247 (5th Cir. 2013) (internal quotation marks and citations omitted).

- "'To be proposed in good faith, a plan must fairly achieve a result consistent with the [Bankruptcy Code].'" *In re QVC Group Inc.*, No. 26-90447 (ARP), 2026 WL 2058528, at *40 (Bankr. S.D. Tex. July 15, 2026) (quoting *In re Block Shim Dev. Co.-Irving*, 939 F.2d 289, 292 (5th Cir. 1991)).



# The Plan Does Not Meet the Good Faith Requirement

- The FBG Debtors are administratively insolvent.

- The Plan seeks to recover from defrauded prepetition creditors and pay the proceeds to the DIP Lenders while simultaneously absolving the post-petition lenders of the same type of potential liability.

- The DIP Lenders and the Estate fiduciaries get all the benefits of a Plan, while shifting the substantial litigation and collection risks onto the holders of Administrative Expense Claims and Priority Claims.

- The only costs of these cases that are assured to be paid in full are those of the Estate fiduciaries' legal counsel and financial advisors.

- The Plan circumvents the Bankruptcy Code's confirmation requirements and permanently transfers all of the FBG Debtors' assets without paying Administrative Expense and Priority Claims at the time the Plan is implemented.



# The "Administrative Claim Consent Program" Cannot Circumvent the Bankruptcy Code's Priority Scheme

**The Plan's Administrative Expense Claim Consent Program is a non-consensual subordination of some Administrative Expense Claims to others in violation of 1129(a)(9).**

- 11 U.S.C. § 503(b) includes nine categories of administrative expenses.

- 11 U.S.C. § 507(a)(2) provides all administrative expense claims under § 503(b) with the same payment priority (only § 364(c) and § 507(b) permit higher priority administrative expense claims).

- 11 U.S.C. § 1129(a)(9) provides that administrative claims must be paid in full on the effective date of a plan unless **the holder** agrees to less favorable treatment.

- Holders of Administrative Expense Claims that do not participate in the consent program are expressly **NOT** consenting to subordinate their claims.

  - Debtors' argument regarding consent to treatment (Debtors' Reply ¶ 216) is backwards.

  - The party being harmed by, not the party benefitting from, an elevation of priority must consent to less favorable treatment.

  - Not opting in to receive 50% of Administrative Expense Claim cannot be considered consent to subordination.

- Reasoning of *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017) applies:

  - Non-consensual subordination of Administrative Expense Claims is not allowed under the Bankruptcy Code, and Administrative Claim Consent Program is "a backdoor means to achieve the exact kind of nonconsensual priority-violating final distributions that the Code prohibits in Chapter 7 liquidations and Chapter 11 plans."



# The Plan Takes Property of the SPV Debtors and Gives it to the Litigation Trust

**Plan deprives SPV Debtors of various rights under the Bankruptcy Code while appropriating their assets, privileges and information.**

- The Plan vests FBG Debtor assets exclusively in the Trusts and the FBG Debtors and does not preserve information or privileges belonging to the estates of the SPV Debtors. *See* Plan § 6.2(e).
    - This deprives the SPV Debtors of the ability to assert claims that can be asserted by both FBG and SPV Debtors.

- The Plan takes the SPV Debtors and their creditors' rights to D&O insurance. Plan p. 19 (definition of Litigation Trust Assets).

- Moreover, assets of the SPV Debtors are preserved for the SPV Debtors' estates only to the extent they are "determined by Final Order to be property of the SPV Debtors or their Estates." *See* Plan § 1.1, Def. "Litigation Trust Assets." Thus, the SPV Debtors will need to litigate to secure their rights rather than the FBG Debtors being forced to bring claims to take their rights.

- The Plan also contains onerous and broad injunctive provisions (including a broad "gatekeeper" limitation) that will impair the ability of the SPV Debtors' creditors and their estates to pursue causes of action which should not be impacted by the Plan at all. *See* Plan § 13.4(c).





For further information, visit our website at **dechert.com**

Dechert practices as a limited liability partnership other than in Singapore where it practices as a private limited company.

V-12-23-25