**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| *In re:* | Case No. 25-90399 (CML) |
| **FIRST BRANDS GROUP, LLC**, *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

**PATRICK JAMES' CORRECTED NOTICE OF FILING OF DEMONSTRATIVE**

**PLEASE TAKE NOTICE** that attached hereto as **Exhibit A** is Patrick James' Closing

Argument Demonstrative.  Patrick James will also provide Exhibit A to the Court in person in

connection with closing arguments in the above-captioned proceeding on August 7, 2026.

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Dated: August 7, 2026
Houston, Texas

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

/s/ Cameron Kelly

Cameron Kelly
TX SBN: 24120936
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: (713) 221-7000
cameronkelly@quinnemanuel.com

James C. Tecce*
Anil Makhijani*
Jack Robbins*
Grace Sullivan*
295 5th Avenue
New York, NY  10016
Telephone: (212) 849-7000

-and-

DEBEVOISE & PLIMPTON LLP
Erica S. Weisgerber*
Matthew J. Sorensen*
Emily Morgan*
66 Hudson Boulevard
New York, NY  10001
Telephone: (212) 909-6000
eweisgerber@debevoise.com
mjsorensen@debevoise.com
emorgan@debevoise.com
*admitted pro hac vice

Attorneys for Patrick James

2

**CERTIFICATE OF SERVICE**

I certify that, on August 7, 2026, a true and correct copy of the foregoing document was served through the Court's Electronic Case Filing system of the United States Bankruptcy Court for the Southern District of Texas, and on counsel of record by electronic mail.

Dated: August 7, 2026                    /s/ Cameron M. Kelly
Houston, Texas                           Cameron M. Kelly

## APPENDIX A

## PowerPoint Demonstrative



# Hearing To Consider Confirmation Of Proposed Chapter 11 Plan

## In re First Brands Group, et al.,
## Case No. 25-90399 (CML) (Bankr. S.D. Tex.)

### Patrick James Defendants

**August 7, 2026**

# NO GUARANTEES IN LITIGATION; ATTEMPT TO VALUE CLAIMS ARE HIGHLY SPECULATIVE WITHOUT ADVERSARY PROCESS

### *Wissman v. Pittsburgh Nat'l Bank*



"A cause of action, of course, is an asset that is not easily valued because there is no market where it is bought and sold. Thus, prior to judgment, a cause of action's value is unliquidated and contingent, and claiming a specific dollar exemption is, at best, speculation."

*Wissman v. Pittsburgh Nat'l Bank,* 942 F.2d 867, 871 (4th Cir. 1991)

### *ResCap v. Primary Residential*



"[T]rying to assign numerical values to legal defenses is speculative and leads to false precision."

*ResCap Liquidating Tr. v. Primary Residential Mortg., Inc.*, 59 F.4th 905, 919 (8th Cir. 2023)

2

# MR. KIRSCHNER RELIED ON ADVERSARY COMPLAINT; INDICTMENT; ALLOCUTIONS; AND EXAMINER REPORT

**MARC KIRSCHNER** | Debtor's Estate Claims Expert

Q. Why don't you explain for the Court, how did you go about reaching your opinion that the estate claims were a valuable asset of the debtors? What did you do?

A. **First of all, as we've already gone over, there was a list a page-and-a-half or more of materials I reviewed. I reviewed all of that material extensively. The criminal indictments, the guilty pleas, the examiner's report, the disclosure statement, Mr. Moore's declaration from November 2025. And then he explained to me what was going to be in his report which ultimately was filed July 14th.**

Day 3 Transcript at 45:24–46:8

Q. Did you review the adversary proceeding against Patrick James?

A. **Yes, I did. As I explained earlier, that adversary proceeding against Patrick James was brought basically at the beginning of the case, I think, in November 2025 as a complaint attached to a motion by the debtors to attempt to enjoin Patrick James from dissipating his assets.**

Day 3 Transcript at 113:6–12

# FIRST BRANDS WAS A REAL COMPANY

**CHARLES MOORE** | CEO of First Brands Group

Q. And do you recall in your first day declaration in this case that you said they employed 26,000 employees globally including 6,000 employees in the United States?

A. Yes.

\* \* \*

Q. So First Brands, at least prepetition, operated a global network of manufacturing and vertically-integrated distribution centers that spanned five continents and was supported by key regional capabilities across the world, right?

A. Yes.

Day 2 Transcript at 149:7–10, 184:4–9

4

# FIRST BRANDS WAS A REAL COMPANY

**TYLER COWAN** | Global Head of Lazard Restructuring & Liability Management; Advisor to First Brands Group

Q.   What, in your view, about First Brands was worth saving such that you should go to Chapter 7 -- I'm sorry, such that you should go to Chapter 11?

A.   **Everything. This is a real business. This is a No. 1 or No. 2, you know, automotive after-market company; and many of its categories of global operations, 5 or $6 billion of sales, 26,000 employees, the idea of liquidating this business is beyond absurd.**

Q.   Why beyond absurd?

A.   **Because it's a real business.**

Q.   What do you mean by that?

A.   **It generates 5 to $6 billion in annual revenue. It has 26,000 employees. It's an amalgamation of businesses that were acquired rather recently and, you know, were known to -- many of which were known to be profitable. So the idea that, you know, we would just liquidate this thing out of the gate is beyond absurd.**

Katsumi and LAM designation COWAN. 2025.11.03 Notice [Dkt. 3458_5] at 79:8–80:6

5

# During "Full Period" Over Four Years No Relationships Terminated For Non-Payment; Pre-Petition Lenders Paid Interest

**CHARLES MOORE** | CEO of First Brands Group

Q. And during this full period between September 2021 and September 2025, none of the parties on this chart terminated their relationship with the company for nonpayment, correct?

A. **Not that I'm aware of.**

\* \* \*

Q. [I]n addition to the $25.007 billion, the first lien lenders received at least interest, correct, during this period, the full period?

A. **Yes.**

Day 2 Transcript at 224:17–20, 225:1–4

**FIRST BRANDS GROUP**

### Transfers

| | 90 Day | 1 Year | Full Period |
|---|---|---|---|
| **AR Factoring (ARF) Programs** | | | |
| Leucadia | $ 737,623,204 | | $ 9,400,235,200 |
| Katsumi | 321,413,837 | | 5,685,073,511 |
| Total Payments to ARF Programs | $ 1,059,037,041 | | $ 15,085,308,711 |
| **Supply Chain Finance (SCF) Programs** | | | |
| Raistone Financing Parties | 188,234,558 | | 1,939,805,707 |
| PrimeRevenue Financing Parties | 162,743,463 | | 1,418,480,533 |
| LiquidX Financing Parties | 76,981,691 | | 979,552,136 |
| YieldStreet Financing Parties | - | | 222,218,046 |
| Orbian Financing Parties | 39,997,124 | | 114,017,780 |
| Interface Financing Parties | - | | 380,708 |
| Total Payments to SCF Programs | $ 467,956,836 | | $ 4,674,454,910 |
| **Onset** | | | |
| Onset | 46,143,097 | 987,417,170 | 2,331,851,090 |
| Total Payments to Onset | $ 46,143,097 | $ 987,417,170 | $ 2,331,851,090 |
| **Insiders** | | | |
| Patrick James | 65,056,679 | 514,700,466 | 965,659,044 |
| Insiders (Ed James, Andy Brumbergs, etc.) | 4,153,621 | 23,083,434 | 23,083,434 |
| Total Payments to Insiders | $ 69,210,300 | $ 537,783,900 | $ 988,742,478 |
| **Other** | | | |
| Acquisitions Payments | - | | 1,646,000,000 |
| Helios | 3,920,000 | | 79,931,926 |
| Total Other | $ 201,137,308 | | $ 1,927,156,954 |
| **TOTAL PAYMENTS** | $ 1,843,484,582 | $ 1,525,201,070 | $ 25,007,514,143 |

**TOTAL PAYMENTS    $ 1,843,484,582    $ 1,525,201,070    $ 25,007,514,143**

DX 235 [Dkt. 3466] at 2

6

# DEBTORS DO NOT DETAIL WITH SPECIFICITY STATEMENTS PATRICK JAMES MADE OR HOW HE SUPPOSEDLY FURTHERED WRONGDOING

## CHARLES MOORE | CEO of First Brands Group

Q. You referred earlier to results bridges and adjustment bridges; is that correct?

A. **Yes.**

Q. You're not aware of any email or text that was sent by Patrick James that directed anyone to make an adjustment to a general ledger, correct?

A. **I have not gotten involved in that level of review.**

Q. So the answer to my question is, yes, you are not aware of any email or text sent by Patrick James directing anyone to make adjustments to a general ledger, correct?

A. **I would have to go back and look. I just can't recall.**

Q. I'll ask the question one more time. So yes or no, you are not aware of any email or text sent by Patrick James directing anyone to make adjustments to a general ledger, correct?

A. **I am not aware.**

Q. And you are not aware of any email or text sent by Patrick James directing someone to falsify a financial record, correct?

A. **I personally am not aware.**

Q. And you are not aware of any email or text sent by Patrick James directing someone to falsify an invoice; is that correct?

A. **I am not aware.**

\* \* \*

Q. You're not aware of any text or email sent by Patrick James directing someone to double pledge collateral, correct?

A. **Correct. I specifically am not aware.**

Day 2 Transcript at 233:11–234:18

7

# DEBTORS PROPOSED EXHIBITS DO NOT INCLUDE EMAILS OR TEXTS FROM PATRICK JAMES

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In re:                              §    Chapter 11
                                    §
FIRST BRANDS GROUP, LLC, *et al.*,  §    Case No. 25-90399 (CML)
                                    §
                                    §    (Jointly Administered)
Debtors.[1]                         §

**DEBTORS' WITNESS AND EXHIBIT**
**LIST FOR COMBINED HEARING ON JULY 28, 2026**

First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), hereby file this witness and exhibit list for the hearing to consider confirmation of the joint chapter 11 plan and final approval of the disclosure statement (the "**Combined Hearing**") scheduled for **July 28, 2026 at 9:00 a.m. (Central Time)**:

**WITNESSES**

The Debtors may call any of the following witnesses at the Combined Hearing:

1. Charles M. Moore, Interim Chief Executive Officer, Debtors (fact and expert witness);

2. Marc S. Kirschner (expert witness);

3. Alex Orchowski, Director of Restructuring Administration, Kroll Restructuring Administration LLC (fact witness);

4. Any witness called or listed by any other party;

5. Any rebuttal witnesses; and

6. The Debtors reserve the right to cross examine any witness called by any other party.

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

**DEBTORS' WITNESS AND EXHIBIT LIST FOR COMBINED HEARING ON JULY 28, 2026**

- **231 Substantive Exhibits**

- **74 Emails; 6 Teams/text-messages**

- **0 authored by, sent to, or copied to Patrick James**

# MR. KIRSCHNER'S MATERIALS CONSIDERED DOES NOT INCLUDE AN EMAIL OR TEXT FROM PATRICK JAMES

**MARC KIRSCHNER** | Debtor's Estate Claims Expert

**Materials Considered**

**Materials Considered**

**Criminal Proceeding Materials**

Sealed Indictment, *U.S. v. Patrick and Edward James*, 26-cr-00029-AT

Plea Agreements of Peter Andrew Brumbergs and Stephen Graham

**Adversary Proceeding Materials**

Pleadings in the Adversary Proceeding, *First Brands Group, LLC v. Patrick James et al.* (Adv. Proc. No. 25-03803)

Transcript of Oral Ruling, November 12, 2025, *First Brands Group, LLC v. Patrick James et al.* (Adv. Proc. No. 25-03803)

Pleadings in the Adversary Proceeding, *First Brands Group, LLC v. Onset Financial, Inc. et al.* (Adv. Proc. No. 26-03005)

**Bankruptcy Court Docket**

Declarations of Charles Moore dated November 3, 2025 and July 13, 2026

Examiner's Report (Docket No. 2538)

Motion of Official Committee of Unsecured Creditors for Leave to Commence Certain Claims on Behalf of Debtors Estates (Docket No. 2881)

Objection to Motion of Official Committee of Unsecured Creditors for Leave to Commence Certain Claims on Behalf of Debtors Estates (Docket No. 2895)

Reply in Support of Motion of Official Committee of Unsecured Creditors for Leave to Commence Certain Claims on Behalf of Debtors Estates (Docket No. 2991)

Chapter 11 Plan of Reorganization (Docket No. 3019)

Disclosure Statement for Joint Chapter 11 Plan (Docket No. 3020)

Plan Supplement and Liquidation Analysis (Docket No. 3046)

Transcript of Hearings Conducted November 10, 2025

**Other Materials Considered**

Lease Schedule No. 022 between Onset Financial, Inc. and Carnaby Inventory IV, LLC dated September 12, 2024

Master Lease Agreement between Onset Financial, Inc. and Carnaby Inventory IV, LLC dated June 28, 2022

Acknowledgement and Waiver between Hopkins Manufacturing Corporation and Onset Financial, Inc. dated February 12, 2024

Apollo – First Brands Overview – April 2024

Centerbridge – First Brands Diligence Requests – October 2023

October 26, 2023 Email from T. Hoffman to S. Graham

September 19, 2023 Email from J. Carey to T. Hoffman, S. Graham, and M. Baker

October 26, 2023 Email from J. Carey to T. Hoffman and S. Graham

October 31, 2023 Email from S. Graham to M. Baker

July 1, 2024 Email from K. Allen to E. James and A. Brumbergs

October 25, 2023 Email from E. James to S. Kumar and M. Baker

October 26, 2023 Email from E. James to S. Kumar

July 28, 2022 Email from S. Kumar to M. Baker

June 29, 2022 Email from S. Kumar to R. Atwood and E. James

April 23, 2024 Email from S. Kumar to E. James

July 30, 2025 Email from E. James to S. Kumar, M. Baker, and S. Graham

March 10, 2023 Email from E. James to A. Brumbergs, S. Wallace, and K. Ruminski

September 28, 2023 Email from J. DiFranco to A. Brumbergs

September 28, 2023 Email from M. Chernyavskiy to A. Brumbergs

September 28, 2023 Email from J. DiFranco to A. Brumbergs

September 28, 2023 Email from A. Brumbergs to E. James

September 28, 2023 Email from T. Dahm to E. James, A. Brumbergs, and M. Chernyavskiy

September 28, 2023 Email from V. Botescu to A. Brumbergs

December 15, 2023 Email from A. Brumbergs to V. Botescu and F. Enache

March 5, 2024 Email from A. Sandor to K. Dondl, R. Lee, M. Benson, B. Gross, T. Alexander, and T. King

March 19, 2024 Email from R. Lee to B. Liff

January 14, 2023 Email from E. James to K. Dondl

January 15, 2023 Email from E. James to R. Berger

January 17, 2023 Email from E. James to R. Berger

January 18, 2023 Email from E. James to R. Berger

January 30, 2023 Email from E. James to K. Dondl and S. Graham

February 3, 2023 Email from A. Brumbergs to K. Dondl

September 5, 2023 Email from J. Nesci to E. James, K. Bukkarayasamudram and S. Graham

September 25, 2023 Email from E. James to A. Brumbergs

September 25, 2023 Email from E. James to J. Nesci and S. Graham

April 30, 2023 Email from K. Bukkarayasamudram to S. Graham and E. James

March 6, 2025 Email from E. James to R. Berger

September 17, 2025 Email from R. Berger to E. James and S. Graham

Stephan Hornung, Edwin Smith, Katherine Weinstein, Penelope Christophorou and Jason Alderson, *Recent Bankruptcy Cases and Managing Fraud Risk*, February 10, 2026, Morgan Lewis, https://www.morganlewis.com/pubs/2026/02/recent-bankruptcy-cases-and-managing-fraud-risk

Ex. B, Declaration of Marc S. Kirschner [Dkt. 3190-2] at 2-3

9

# RETURNS WERE NOT TOUTED

**CHARLES MOORE** | CEO of First Brands Group

Q.    You are not aware that any First Brands executives ever touted returns paid to an existing lender or investor to a prospective lender or investor to induce a loan or investment, correct?

**A.    I have no idea what First Brands executives were telling parties prior to the petition date.**

Q.    Do you recall that you testified on Sunday that you were not aware of any evidence that that ever happened?

**A.    I'm not aware of any evidence. I just don't know.**

Day 2 Transcript at 148:20–149:3

10

# FULL RANGE OF INVESTMENTS INTO FIRST BRANDS BY PATRICK JAMES AND JAMES DEFENDANTS NOT CONSIDERED

## CHARLES MOORE | CEO of First Brands Group

Q.   Mr. Moore, it's true that your team's tracing identified approximately $592 million transferred from the Patrick James Trust to the Debtors; is that correct?

A.   **Yes.**

Q.   And that was from September 2022 to the petition date, September 2025, correct?

A.   **I believe that's the date range. Yes.**

Q.   So the date range that your team traced was September 2022 to September 2025, but the transfers that the Debtors looked at go back one year more, correct, from September 2021 to September 2025; is that correct?

A.   **Yes.**

Q.   So there could be additional funds just from the Patrick James Trust prior to September 2022 that are not part of your $592 million, correct?

A.   **There may be.**

Q.   There may be that were transferred back into First Brands, correct?

A.   **There may be.**

Day 2 Transcript at 226:12–227:5

Q.   So if I were to adjust the date range from September '22 to back a year to September 2021, and if I were to include entities, additional entities beyond just the Patrick James Trust, that number could go up above $592 million, correct?

A.   **It could.**

Q.   Do you have any idea how much larger than $592 million that could be?

A.   **I don't.**

Q.   Could it be more than the $966 million that the Debtors intend to try and recover?

A.   **I don't -- I don't know.**

Q.   You don't know one way or the other, correct?

A.   **Correct.**

Q.   So it's possible, but you don't know, correct?

A.   **Correct.**

Day 2 Transcript at 227:17–228:7

11

# MR. KIRSCHNER FAILED TO CONSIDER REINVESTMENT

**MARC KIRSCHNER** | Debtor's Estate Claims Expert

Q. But you did not consider any payments -- strike that. Did you consider those payments as part of your analysis?

**A. You refer to payments back?**

Q. Sure.

**A. No, I looked at $25.4 billion outflows from the debtors, as I have explained many times.**

Q. And you also did not consider any payments from the Patrick James trust prior to September 2022, correct?

**A. Same answer.**

Q. And you did not consider whether Patrick James or his affiliated entities actually transferred more back to the Debtors during the relevant time period than they are alleged to have received from the debtors, correct?

**A. I just looked at the outflows, as I testified to.**

Day 3 Transcript at 331:2–15

## *Whitlock v. Lowe (In re Deberry)*

Third, the Trustee argues that because the bankruptcy estate does not exist until the petition is filed, a pre-petition satisfaction does not count as recovery "for the benefit of the estate." 11 U.S.C. § 550(a). It's not a recovery as contemplated by § 550(a), he contends, because the *debtor*, not the estate, received the satisfaction.

But we do not hold the return of the property constitutes a recovery "for the benefit of the estate" under § 550(a). Instead, we hold there cannot be a "recovery" at all if the property has already been returned.

*Whitlock v. Lowe (In re Deberry)*, 945 F.3d 943, 950 (5th Cir. 2019)

12

# MR. KIRSCHNER DID NOT EVALUATE FACTS AND CIRCUMSTANCES AROUND TRANSFERS

**MARC KIRSCHNER** | Debtor's Estate Claims Expert

Q.    . . . Am I correct you just testified you did not engage in a transfer-by-transfer analysis for the fraudulent transfer claims that you looked at in different complaints?

A.    **If the question deals with transfer-by-transfer for each defendant, I did not examine that.**

Q.    So you did not analyze transfer-by-transfer what consideration Mr. James or related entities may have provided in exchange for each of the transfers at issue in the adversary complaint?

A.    **No. With respect to the adversary proceeding, I observed that there were many transfers I identified, some this morning. Dividends, excess compensation, payments personally to him, which (indiscernible) personal matters. And that was a panoply of transfers out from the FBG debtors to Patrick James and his trust.**

Q.    And just to be clear, you did not analyze for each transfer what consideration was provided in exchange for that transfer, yes or no?

A.    **I did not analyze each transfer.**

Day 3 Transcript at 330:2–20

13

# TAX DISTRIBUTIONS TO PATRICK JAMES APPEARED IN GENERAL LEDGER; BDO REVIEWED GENERAL LEDGER AND GAVE UNQUALIFIED AUDIT OPINIONS

## CHARLES MOORE | CEO of First Brands Group

Q. And do you understand, sir, that these amounts were in the company's general ledger?

A. **Yes, they were.**

Q. And you understand that BDO reviewed the company's general ledger, correct?

A. **Yes, that's my understanding.**

\* \* \*

Q. Unqualified. I'm sorry. Thank you very much. BDO gave unqualified audit opinions for this company for four years, correct?

A. **Yes.**

Day 2 Transcript at 229:22–230:2, 230:20–23



DX230 at FBG_CH1_00103641
[Dkt. 3500] at 69

**Consolidated Financial Statements Years Ended December 28, 2024 and December 30, 2023**



DX230 at FBG_CH1_00103637
[Dkt. 3500] at 65

14

# BOWERY ANALYSIS NOT COMPLETE

**CHARLES MOORE** | CEO of First Brands Group

Q. I believe it was your testimony that, is this fair to say, that you believe approximately $12 billion flowed through that account; is that correct?

A. **That's about right. Yes.**

\* \* \*

Q. But you haven't -- as you sit here today, you cannot say that the funds that left the Bowery account -- none of those dollars -- were used to pay legitimate business expenses, correct?

A. **That's correct.**

Day 2 Transcript at 231:2–5; 231:21–25

15

# COURT RULING ON MOTION TO EXCLUDE (DAY 1)



I'm going to note that I find that no issue bearing on the conduct or liability of any defendant in that adversary proceeding has been fully and fairly litigated here and that no such party has had a full opportunity to litigate the merits of the adversary proceeding. So no finding I make at this hearing and in any hearing is going to -- will have a preclusive effect. Collateral estoppel, issue of preclusion, law of the case in any adversary, in any court or in any other proceeding before me. That applies in both directions. Right? So to the Debtors to the litigation trustee and to any successor, if we get as far as litigation trust or any successor, to the objecting parties and to any defendant.

I make no findings as to the value or the merit of any individual estate claim, any category of estate claims, or any claim asserted against any identified defendant to date.

The Court's finding, if I'm going to (indiscernible) really goes to 1129(a)(11) about the aggregated value of a portfolio, and nothing more. No party may cite any statement of this Court at this hearing or throughout this confirmation hearing as a -- that I am making a valuation of any claim in any other proceeding. And if someone tries to do it, cite this transcript. I am not adjudicating whether a Ponzi scheme presumption applies, whether any transfer is avoidable, whether any party has knowledge or inquiry notice, or whether any defense succeeds.

To the extent any such claim is one on which I lack constitutional authority to enter a final judgment at any subject trial to me, that's even further and an independent reason nobody can rely on anything that's found today.

Day 1 Transcript at 106:4–107:11

16