**EXECUTION VERSION**

**INVENTORY SALE AGREEMENT**

This INVENTORY SALE AGREEMENT is made and entered into as of December 30, 2022 (this "Agreement"), by and among Qualitor Inventory Holdings, LLC, a Delaware limited liability company (the "Seller"), IBI Latin America, S de R.L. de C.V. ("IBI-MX"), First Brands Group, LLC ("Parent") and International Brake Industries, Inc. (the "Buyer" and together with the Seller, IBI-MX, Parent, each a "Party" and collectively, the "Parties").

W I T N E S S E T H:

WHEREAS, this Agreement is being entered into in connection with that certain Agreement and Plan of Merger, dated as of December 30 2022, by and among TAE Brakes, LLC, a Delaware limited liability company (the "Company"), First Brands Group, LLC, a Delaware limited liability company ("Parent"), Viper Acquisition II, LLC, a Delaware limited liability ("Merger Sub") and wholly owned Subsidiary of Parent, Qualitor Holdings LLC, a Delaware limited liability company, solely in its capacity as the representative of the Equityholders (the "Equityholder Representative") and, solely for the purposes of Section 6.11, Qualitor Holdings LLC, a Delaware limited liability company (as amended, restated, supplemented or otherwise modified from time to time, the "Merger Agreement"), pursuant to which, upon the terms and subject to the conditions set forth therein, Merger Sub will be merged with and into the Company, with the Company surviving as a wholly owned Subsidiary of Parent;

WHEREAS, prior to the date hereof, the Buyer and IBI-MX are engaged in the manufacturing and assembly of automobile brakes and related components in the Leased Property (as defined below) in Mexico, exclusively for the Buyer and its affiliates in accordance with the Maquila Agreement (as defined below);

WHEREAS, Parent has requested, on behalf of itself and its Affiliates, that the assets transferred pursuant to the terms of this Agreement (i) prior to the Closing, be transferred to a Person that is not a Subsidiary of the Buyer, which has been effected by the distribution by a subsidiary of the Company of such assets to the Seller (the "Pre-Closing Transfer") and (ii) in connection with the Closing be transferred to the Buyer and the Seller is entering into this Agreement at the request of Parent;

WHEREAS, Parent would not permit Parent to enter into the Merger Agreement but for the Pre-Closing Transfer and this Agreement being entered into in connection with Closing; and

WHEREAS, on and subject to the terms and conditions set forth in this Agreement, at the Transferred Asset Effective Time (as defined below), the Seller agrees to sell and transfer, and the Buyer desires to purchase and acquire, all of the inventory and other assets held by the Seller as of the Closing.

NOW, THEREFORE, in reliance upon the representations, warranties and agreements made herein and in the Merger Agreement and in consideration of the premises and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

CONFIDENTIAL

FBG_CH1_00095222

**DEBTORS' EXHIBIT NO. 250**
**Page 1 of 98**

# ARTICLE I

## DEFINITIONS; RULES OF CONSTRUCTION

Section 1.1    Definitions. Except as otherwise specified or as the context may otherwise require, (i) capitalized terms used herein but not defined herein shall have the meaning ascribed to such term in the Merger Agreement and (ii) in addition to the capitalized terms defined elsewhere herein, the following terms shall have the respective meanings set forth below whenever used in this Agreement:

(a)    "Aggregate Purchase Price" means $30,195,673, plus any interest that may accrue pursuant to Section 3.1; provided that the Aggregate Purchase Price shall be reduced by the amount of any Parent Adjustment Amount (as defined in the Merger Agreement) determined in accordance with the Merger Agreement and increased by the amount of any Payoff Adjustment Amount (as defined in the Merger Agreement); provided, that notwithstanding the provisions of Section 2.9(e)(ii) of the Merger Agreement, any such reduction shall be in full satisfaction of any Parent Adjustment Amount owed and any such increase (if timely paid) shall be in full satisfaction of any Payoff Adjustment Amount (which such increase reflects, and is without duplication of, the assignment of such amounts to the Seller by certain of its equityholders); provided, further, that in no event shall the Aggregate Purchase Price be less than $25,195,673.

(b)    "Business Day" means any day that is not a Saturday, Sunday or other day on which banking institutions in New York, New York are authorized or required by Law or executive order to close.

(c)    "Closing Book Value" means the value of any item set forth in the books and records of the Company as of immediately prior to the Closing as calculated in accordance with the Balance Sheet Rules.

(d)    "Closing Date" means December 30, 2022.

(e)    "Customs Permits" means (i) the IMMEX Program of IBI-MX number 89-2020 and (ii) The VAT Certification of IBI-MX and its corresponding renewal.

(f)    "Governmental Authority" means any nation or government, any state, province or other political subdivision thereof, exercising executive, legislative, judicial, regulatory or administration functions of or pertaining to government, or any government authority, commission or instrumentality of the United States of America, any foreign government, any state of the United States of America, or any municipality or other political subdivision thereof, and any court or tribunal of competent jurisdiction.

(g)    "IMMEX Program" means the *Programa para la Industria Manufacturera, Maquiladora y de Servicio de Exportación*.

(h)    "Law(s)" means any law, statute, regulation, code, ordinance, rule or other requirement of any Governmental Authority.

2

CONFIDENTIAL                                             FBG_CH1_00095223

(i)    "Leased Property" shall mean the property leased by IBI-MX located at Avenida Avante Aeropuerto No. 801, Parque Industrial Avante Aeropuerto, Apodaca, Nuevo León, México Zip Code 66643.

(j)    "Maquila Agreement" shall mean the maquila services agreement dated May 14, 2020,  by and between IBI-MX and Buyer to perform in the Leased Property the manufacturing, assembling, sub-assembling, importation, exportation and repair of certain products.

(k)    "Mexico" means the United Mexican States.

(l)    "Purchase Price Installment Amount" means, (i) with respect to the each Purchase Price Installment Payment other than the final Purchase Price Installment Payment, the greater of (x) the Closing Book Value of any inventory sold by the Buyer or its Affiliates to any unaffiliated third party during the month immediately preceding such Purchase Price Installment Payment Date and (y) $2,000,000 and (ii) with respect to the final Purchase Price Installment Payment, such amount as would result in the payment in full by the Buyer to the Seller under this Agreement of the Aggregate Purchase Price (which may be less than $14,195,673 or greater than $14,195,673); provided, that any payment hereunder in respect of (x) the Payoff Adjustment Amount shall be paid within five (5) Business Days of such amount being finally determined in accordance with Section 2.9 of the Merger Agreement and (y) the Parent Adjustment Amount shall reduce the amount payable by the Buyer in respect of the then remaining Purchase Price Installment Payments which shall be reduced from each Purchase Price Installment Payment in direct order of maturity of any such remaining payments until such payments have been reduced by an aggregate amount equal to the Parent Adjustment Amount.  For the avoidance of doubt, the payment by the Buyer of any Taxes, including Transfer Taxes as contemplated by Section 6.3, shall not be considered as a payment to the Seller in satisfaction of any of the Buyer's payment obligations pursuant to Section 3.1.

(m)    "U.S." or "United States" means the United States of America.

(n)    "VAT Certification" means the *Registro en el Esquema de Certificación de Empresas en la modalidad Impuesto al Valor Agregado e Impuesto Especial sobre Producción y Servicios.*

Section 1.2  Rules of Construction.  Unless the express context otherwise requires:

(a)    the words "hereof," "herein," and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement;

(b)    terms defined in the singular shall have a comparable meaning when used in the plural, and vice versa;

(c)    the terms "Dollars" and "$" mean United States Dollars;

(d)    references herein to a specific Section, Subsection, Recital or Exhibit shall refer, respectively, to Sections, Subsections, Recitals or Exhibits of this Agreement;

3

FBG_CH1_00095224

DEBTORS' EXHIBIT NO. 250
Page 3 of 98

(e)      wherever the word "include," "includes," or "including" is used in this Agreement, it shall be deemed to be followed by the words "without limitation";

(f)      references herein to any gender shall include each other gender;

(g)      references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement;

(h)      references herein to a Person in a particular capacity or capacities shall exclude such Person in any other capacity;

(i)      with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding";

(j)      any reference to "day" or "days" means calendar day(s) unless Business Days are expressly specified;

(k)      references herein to any Law or any license mean such Law or license as amended, modified, codified, reenacted, supplemented or superseded in whole or in part, and in effect from time to time prior to the Closing Date;

(l)      references herein to any Law shall be deemed also to refer to all rules and regulations promulgated thereunder;

(m)      if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day;

(n)      the word "or" is disjunctive but not exclusive;

(o)      reference to "written" or "in writing" include in electronic form;

(p)      any reference to "year" or "years" means calendar year(s), unless otherwise specified;

(q)      the word "extent" in the phrase "to the extent" shall mean the degree to which a subject or other item extends and shall not simply mean "if";

(r)      time is of the essence in the performance of the Parties' respective obligations contained herein;

(s)      notwithstanding Section 7.4 of the Merger Agreement, nothing in the Merger Agreement or any of the other agreements contemplated thereby shall supersede the terms of this Agreement and the Merger Agreement shall be interpreted in a manner consistent with this Agreement; and

CONFIDENTIAL                                                           FBG_CH1_00095225

**DEBTORS' EXHIBIT NO. 250**
**Page 4 of 98**

(t)      except where the context requires otherwise, references to "ordinary course" shall refer to the ordinary course of business of the Seller, consistent with past practice, subject to applicable Law and taking into account commercially reasonable actions taken in response to any political conditions, social or public health conditions or calamities or other force majeure events that are generally consistent with those taken by other participants in the industry or businesses in the geographies in which the Seller conducts its business.

The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event of an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

## ARTICLE II

## TERMS OF THE TRANSACTION

Section 2.1      Sale of Assets. Subject to the terms and conditions of this Agreement, at the Transferred Asset Effective Time, the Seller shall sell, grant, convey, transfer, and assign to the Buyer, and the Buyer shall purchase, acquire and accept from the Seller, all of the Seller's right, title and interest in all of the inventory and other assets (which, for avoidance of doubt, does not include Parent Adjustment Amount (if any)) of the Seller, owned of record by the Seller as of the Closing (collectively, the "Transferred Assets"). The inventory of the Seller constituting Transferred Assets as of the Closing (the "Inventory") is described on Exhibit A hereto.

## ARTICLE III

## THE PRICE; CLOSING

Section 3.1      Price. Subject to the terms and conditions of this Agreement, in consideration for the sale, conveyance, transfer and assignment of the Transferred Assets, the Buyer and Parent shall pay, jointly and severally, or cause to be paid, to the Seller, the Aggregate Purchase Price as more fully set forth herein by wire transfer of immediately available funds to the bank account designated by the Seller. The Aggregate Purchase Price shall be paid in up to nine monthly installments (each such installment a, "Purchase Price Installment Payment"), with each such Purchase Price Installment Payment to be in an amount equal to the applicable Purchase Price Installment Amount. The Buyer and Parent shall pay the initial Purchase Price Installment on the one-month anniversary of the Closing Date (or if such date is not Business Day, on the immediately succeeding Business Day) and each additional Purchase Price Installment Amount shall be paid on each subsequent monthly anniversary of the Closing Date (or if any such date is not Business Day, on the immediately succeeding Business Day) (each such date the "Purchase Price Installment Payment Date") until the Aggregate Purchase Price is paid in full by the Buyer to the Seller pursuant to this Agreement. Notwithstanding the foregoing, in the event any insurance proceeds are received by Buyer or any of its Affiliates, including Parent and its Subsidiaries, related to the damage or destruction of the Transferred Assets, such proceeds shall be immediately paid to Seller. For the avoidance of doubt, the

5

FBG_CH1_00095226

**DEBTORS' EXHIBIT NO. 250**
**Page 5 of 98**

payment obligations of the Buyer pursuant to this <u>Section 3.1</u> shall be absolute and binding on the Buyer regardless of whether the Buyer sells or otherwise disposes of the Transferred Assets. In the event the Buyer fails to pay any Purchase Price Installment Payment (not taking into account clause (i)(x) of the definition thereof) to the Seller on the applicable Purchase Price Installment Date (such failure, an "<u>Event of Default</u>"), then at the start of such Event of Default, all amounts then due to Seller shall immediately become due and payable and shall automatically bear interest (retroactively to the Closing Date) at the lesser of (a) 15.00% per annum, which shall automatically increase by 100 basis points at the start of each calendar month such Event of Default remains ongoing and (b) the maximum rate permitted by applicable law (the "<u>Default Interest Rate</u>"), in each case, accruing daily and compounding monthly.  For the avoidance of doubt, the full Aggregate Purchase Price shall be payable irrespective of the fair value of the Transferred Assets.  The Seller acknowledges and agrees that the Aggregate Purchase Price shall be subject to the adjustment mechanism contained in Section 2.9 of the Merger Agreement.

Section 3.2    <u>The Closing</u>. Subject to the terms and conditions set forth herein, the closing of the sale and purchase of the Transferred Assets contemplated hereby (the "<u>Transferred Asset Closing</u>") shall be deemed to have occurred automatically concurrently with the Closing at the time contemplated by Section 2.1(a) of the Merger Agreement (the "<u>Transferred Asset Effective Time</u>").

Section 3.3    <u>Closing Delivery</u>.

(a)    At the Transferred Asset Closing the Seller shall deliver, or shall cause to be delivered, to the Buyer appropriate instruments of transfer to convey the Transferred Assets held by it, including the relevant tax invoice.  The Buyer acknowledges and agrees that the Transferred Assets are currently physically held at locations owned or controlled by the Buyer and the Seller shall have no liability or obligation to deliver the Transferred Assets to the Buyer. From and after the Transferred Asset Effective Time, the Parties expressly agree that the risk of loss of all Transferred Assets shall be exclusively borne by the Buyer.

(b)    The Seller and IBI-MX hereby acknowledge and agree for all legal effects that, prior to and as of the Transferred Asset Closing, the Inventory is currently held in possession by IBI-MX at its facility located in the Leased Property who is currently acting as the importer of record into Mexico of the Inventory and manufacturing products for the Buyer in the ordinary course of its business in accordance with the Maquila Agreement under the Customs Permits complying with applicable Laws. Buyer and IBI-MX hereby agree and acknowledge that they hold all Customs Permits.

(c)    At the Transferred Asset Closing the Seller shall have received a New York law-governed Security Agreement, dated as of such date, duly executed by and among the Buyer and the Seller, which agreement shall secure the payment of the Aggregate Purchase Price and the due and timely performance of all of Buyer's obligations hereunder and under the Merger Agreement (collectively, the "<u>NY-Law Secured Obligations</u>"), in the form attached hereto as <u>Exhibit B</u> over all of the Inventory and any and all other present or future related Collateral (as defined therein), whether currently owned by Buyer or thereafter acquired until the date on which all NY-Law Secured Obligations have been duly paid in full.

CONFIDENTIAL                                                                                            FBG_CH1_00095227

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES

Section 4.1 <u>Representation of Buyer</u>. Buyer represents and warrants to the Seller that:

(a)      <u>Organization</u>.  Buyer is a corporation duly formed, validly existing and in good standing under the Laws of the State of Delaware.  Buyer has the requisite corporate power and authority to own its properties and carry on its business in all material respects as presently owned or conducted, except where the failure to be so organized, existing and in good standing or to have such power or authority would not reasonably be expected, individually or in the aggregate, to materially impair Buyer's ability, as applicable, to effect the transactions contemplated hereby.

(b)      <u>Binding Obligation</u>.  Buyer has all requisite corporate authority and power to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby.  This Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action on the part of Buyer, and no other proceedings on the part of Buyer are necessary to authorize the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby by Buyer.  This Agreement has been duly executed and delivered by Buyer and, assuming that this Agreement constitutes the legal, valid and binding obligations of the Seller, constitute the legal, valid and binding obligations of Buyer, enforceable against Buyer in accordance with its terms, except to the extent that the enforceability thereof may be limited by the Equitable Exceptions.

(c)      <u>Sufficient Funds</u>.  As of the date of the Closing, Buyer has sufficient net cash proceeds in immediately available funds to pay all amounts payable by it pursuant to this Agreement and all of its fees and expenses in order to consummate the transactions contemplated by  this Agreement.  For the avoidance of doubt, Buyer acknowledges that Buyer's obligations to consummate the transactions contemplated by this Agreement on the terms set forth herein are not conditioned upon Buyer obtaining financing for or in connection with the transactions contemplated by this Agreement.  Buyer confirms that it is not a condition to Closing or any of its other obligations under this Agreement that Buyer obtain financing for or in connection with the transactions contemplated by this Agreement.

(d)      <u>Litigation</u>.  There is no Action pending or, to the knowledge of Buyer, threatened against Buyer or any material portion of its properties or assets with respect to which there is a substantial possibility of a determination which questions the validity or legality of this Agreement or the transactions contemplated hereby or which seeks to prevent the transactions contemplated hereby or otherwise would reasonably be expected, individually or in the aggregate, to materially impair Buyer's ability to effect the transactions contemplated hereby.

Section 4.2 <u>Representation of Parent</u>. Parent represents and warrants to the Seller that:

(a)      <u>Organization</u>.  Parent is a limited liability company duly formed, validly existing and in good standing under the Laws of the State of Delaware.  Parent has the requisite

7

power and authority to own its properties and carry on its business in all material respects as presently owned or conducted, except where the failure to be so organized, existing and in good standing or to have such power or authority would not reasonably be expected, individually or in the aggregate, to materially impair Parent's ability, as applicable, to effect the transactions contemplated hereby.

(b)     Binding Obligation.  Parent has all requisite authority and power to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby.  This Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary action on the part of Parent, and no other proceedings on the part of Parent are necessary to authorize the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby by Parent and each of its Affiliates.  This Agreement has been duly executed and delivered by Parent and, assuming that this Agreement constitutes the legal, valid and binding obligations of the Parent and, to the extent applicable, its Affiliates, constitute the legal, valid and binding obligations of Parent, enforceable against such Persons in accordance with its terms, except to the extent that the enforceability thereof may be limited by the Equitable Exceptions.

(c)     Litigation; Relations.  There is no Action pending or, to the knowledge of Parent, threatened against Parent or any material portion of its properties or assets with respect to which there is a substantial possibility of a determination which questions the validity or legality of this Agreement or the transactions contemplated hereby or which seeks to prevent the transactions contemplated hereby or otherwise would reasonably be expected, individually or in the aggregate, to materially impair Parent's ability to effect the transactions contemplated hereby.

(d)     Sufficient Funds.  Parent has, and will have, sufficient net cash proceeds in immediately available funds to pay all amounts payable by it pursuant to this Agreement (including the Credit Support) and all of its fees and expenses in order to consummate the transactions contemplated by this Agreement.  For the avoidance of doubt, Parent acknowledges that Parent's obligations to consummate the transactions contemplated by this Agreement on the terms set forth herein are not conditioned upon Parent obtaining financing for or in connection with the transactions contemplated by this Agreement.  Parent confirms that it is not a condition to Closing or any of its other obligations under this Agreement that Parent obtain financing for or in connection with the transactions contemplated by this Agreement.

(e)     Related Parties.  Parent owns, directly or indirectly, all of the Equity Securities of Merger Sub.

Section 4.3  Representation of Parent and Buyer. Each of Parent and Buyer represents and warrants to the Seller that:

(a)     Transferred Assets.  The execution and delivery of this Agreement, the consummation of the transactions contemplated by this Agreement (individually and when taken together with the consummation of the other transactions contemplated by Merger Agreement (including the pre-closing distribution of the Transferred Assets)), the structure of the transactions contemplated by this Agreement and the performance by the Parties of their

8

FBG_CH1_00095229

respective obligations under this Agreement (individually and when taken together with the performance of the other obligations under the Merger Agreement):

(i) (x) do not result in any violation of the organizational documents of any of Parent, the Buyer, Parent, Merger Sub or any of their respective Affiliates or any of their respective Representatives (the "Buyer Group"), (y) do not conflict with, or result in a breach of any of the terms or provisions of, or constitute a default under any indenture, mortgage or loan or any other agreement or instrument to which any member of the Buyer Group is a party or to which any of their respective properties may be subject, and (z) assuming all filings and consents necessary for the consummation of the transactions contemplated by the Merger Agreement as set forth on Section 5.4 of the Disclosure Schedules to the Merger Agreement shall have been, as relevant, obtained or made do not violate any existing applicable Law, judgment, order or decree or any Governmental Authority having jurisdiction over any member of the Buyer Group; provided, however, that no representation or warranty is made in the foregoing clauses (y) or (z) with respect to matters that would not reasonably be expected, individually or in the aggregate, to be material to any member of the Buyer Group; and

(ii) are not being entered into or taken with the intention or expectation of or to cause the (x) evading any contractual requirements or Law applicable to any member of the Buyer Group or to which any of their respective properties may be subject or (y) hindering, delaying or defrauding any other Person (including any Governmental Authority or any current or future creditors of any member of the Buyer Group).

(b) Solvency. Immediately after giving effect to the transactions contemplated by this Agreement, Parent, Buyer, Parent, the Company and the Surviving Company and each of their respective Subsidiaries will be Solvent. No transfer of property is being made and no obligation is being incurred in connection with the transactions contemplated by this Agreement with the intent to hinder, delay or defraud either present or future creditors of any member of the Buyer Group, the Surviving Company, the Company or their respective Subsidiaries. Immediately after giving effect to the transactions contemplated by the Merger Agreement and this Agreement (including any financing in connection with the Closing), Parent, the Surviving Company and each of their Subsidiaries (including the Company and its Subsidiaries) will be Solvent.

(c) Acknowledgement. Each of Parent and the Buyer acknowledges and agrees that the Transferred Assets are being transferred without any representation or warranty as to merchantability or fitness for any particular purpose of their respective assets, in an "as is" condition and on a "where is" basis.

Section 4.4 Representation of IBI-MX. IBI-MX represents and warrants to the Seller that:

(a) Organization. IBI-MX is a limited liability company duly formed, validly existing and in good standing under the Laws of Mexico.

(b) Binding Obligation. IBI-MX has all requisite authority and power to execute, deliver and perform this Agreement and to consummate the transactions contemplated

CONFIDENTIAL

FBG_CH1_00095230

**DEBTORS' EXHIBIT NO. 250**
**Page 9 of 98**

hereby. This Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized, and no other proceedings on the part of IBI-MX are necessary to authorize the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby by IBI-MX. This Agreement has been duly executed and delivered by IBI-MX and, assuming that this Agreement constitutes the legal, valid and binding obligations of the Seller, constitute the legal, valid and binding obligations of IBI-MX, enforceable against IBI-MX in accordance with its terms.

(c)     Litigation. There is no Action pending or, to the knowledge of IBI-MX, threatened against IBI-MX or any material portion of its properties or assets with respect to which there is a substantial possibility of a determination which questions the validity or legality of this Agreement or the transactions contemplated hereby or which seeks to prevent the transactions contemplated hereby or otherwise would reasonably be expected, individually or in the aggregate, to materially impair IBI-MX's ability to effect the transactions contemplated hereby.

Section 4.5 Representation of the Seller. The Seller represents and warrants to the Buyer that:

(a)     Binding Obligation. The Seller has all requisite corporate authority and power to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby. This Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary limited liability company action on the part of the Seller, and no other limited liability company proceedings on the part of the Seller are necessary to authorize the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby by the Seller. This Agreement has been duly executed and delivered by the Seller and, assuming that this Agreement constitutes the legal, valid and binding obligations of the Seller, constitute the legal, valid and binding obligations of the Seller, enforceable against the Seller in accordance with its terms, except to the extent that the enforceability thereof may be limited by the Equitable Exceptions.

(b)     Inventory. To the knowledge of the Seller, as of the date hereof, and except as would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect, the Inventory of the Seller (net of all reserves for obsolete, excess, slow-moving, damaged and defective Inventory shown on the Interim Balance Sheet) is merchantable, fit for the purposes for which it was procured or manufactured, usable or salable in the ordinary course of business, materially conforms to the specifications established therefor, has been manufactured in material compliance with all applicable Laws, and includes no material damaged, defective, excess, slow-moving or obsolete items. For purposes of this Section 4.5(b), "Inventory" means the inventories of products, work-in-process and finished goods (including in transit, consigned inventory, inventory sold on approval and rental inventory) used, usable or otherwise saleable in the ordinary course.

(c)     Exclusivity of Representations. The representations and warranties made by the Seller in this Section 4.5 are the exclusive representations and warranties made by or concerning the Seller. Except as otherwise expressly set forth in this Section 4.5, (a) the Seller expressly disclaims any representations or warranties or any kind or nature, express or implied,

10

FBG_CH1_00095231

whether written or oral, as to the condition, value or quality of any business or assets of the Seller, and (b) the Seller specifically disclaims any representation or warranty of merchantability, usage, suitability or fitness for any particular purpose with respect to the assets of the Seller, any part thereof, the workmanship thereof, and the absence of any defects therein, whether latent or patent, it being understood that except for the representations set forth in Section 4.5 such subject assets are "as is, where is" on the date hereof, and in their present condition, and Buyer and each of its Affiliates shall rely on their own examination and investigation thereof.  The Seller is not, directly or indirectly, making any representations or warranties regarding the pro forma financial information, financial projections or other forward-looking statements of the Seller.

Section 4.6 Bulk Sales Laws. Parent, the Seller and the Buyer each waive compliance with any bulk sales Laws applicable to the sale of the Transferred Assets to the Buyer and/or its Affiliates.

Section 4.7 Parent's and Buyer's Reliance.  Each of Parent and the Buyer, on behalf of themselves, Parent and each of their respective Affiliates, acknowledges that it and its Representatives have been permitted full and complete access to the books and records, facilities, equipment, Tax Returns, Contracts, insurance policies (or summaries thereof) and other properties and assets of the Seller that it and its Representatives have desired or requested to see or review, and that it and its Representatives have had a full opportunity to meet with the officers and employees of the Company, the Company Subsidiaries and the Seller to discuss the business of the Company, the Company Subsidiaries and the Seller.  Each of Parent and Buyer, on behalf of themselves, Parent and each of their respective Affiliates, acknowledges that neither the Seller nor any other Person has made any representation or warranty, expressed or implied, as to the accuracy or completeness of any information regarding the Transferred Assets and the Seller furnished or made available to Parent, Buyer, each of their respective Affiliates or any of their Representatives, except as expressly set forth in Section 4.5 of this Agreement, and neither the Seller nor any other Person (including any officer, director, member or partner of the Seller) shall have or be subject to any liability to Parent, Buyer, any of their respective Affiliates or any other Person, resulting from Parent's or Buyer's use of any information, documents or material made available to such Person or any of its Affiliates (including Parent) in the Data Room, management presentations, due diligence or in any other form in expectation of the transactions contemplated hereby.  Each Parent and Buyer, on behalf of themselves, Parent and each of their respective Affiliates, acknowledges and agrees that, should the Closing occur, Buyer shall acquire Transferred Assets without any representation or warranty as to merchantability or fitness for any particular purpose of their respective assets, in an "as is" condition and on a "where is" basis, except as otherwise expressly represented or warranted in Section 4.5 of this Agreement; provided, however, that nothing in this Section 4.8 is intended to limit or modify the representations and warranties contained in Section 4.5.  Each of Parent and Buyer, on behalf of themselves, Parent and each of their respective Affiliates, acknowledges and agrees that, except for the representations and warranties contained in Section 4.5, none of the Seller nor any other Person has made, and Parent, Buyer and each of their respective Affiliates have not relied on any other express or implied representation or warranty by or on behalf of the Seller or any other Person.  Each of Parent and Buyer, on behalf of themselves, Parent and each of their respective Affiliates, acknowledges that neither the Seller nor any other Person, directly or indirectly, has made, and Parent, Buyer and each of their respective Affiliates have not

11

FBG_CH1_00095232

relied on, any representation or warranty regarding the pro forma financial information, financial projections or other forward-looking statements of Parent, the Seller and Buyer will make no claim (and will cause each of their respective Affiliate to make no claim) with respect thereto.

**ARTICLE V**

**COVENANTS**

Section 5.1 <u>Special Transactions</u>.  Each of Parent and Buyer, on behalf of themselves, Parent and their respective Affiliates, acknowledges and agrees that this Agreement, the Merger Agreement and the transactions contemplated hereby and thereby are being entered into, and structured and consummated, at the specific request of Parent, including with respect to the Pre-Closing Transfer.  Each of Parent and Buyer, on behalf of themselves, Parent and their respective Affiliates, further acknowledges and agrees that the Company would not have entered into, structured or consummated this Agreement, the Merger Agreement or the transactions contemplated hereby or thereby but for such request and the other terms and conditions of this Agreement, including <u>Section 4.1</u>, <u>Section 4.2</u>, <u>Section 4.3</u>, <u>Section 4.4</u> this <u>Section 5.1</u> and <u>Section 5.2</u>.  Each of Parent and Buyer, on behalf of themselves, Parent and their respective Affiliates , agrees and acknowledges that (a) the consummation of the transactions contemplated hereby is not required to occur any earlier than the Closing, (b) for all purposes of the representations and warranties contained in Article IV of the Merger Agreement and any representations or warranties set forth in the Letter of Transmittal, the entry into this Agreement and the consummation of transactions contemplated hereby shall be ignored and (c) notwithstanding anything in the Merger Agreement to the contrary, the Company is entering into the Merger Agreement, and the consent of the Equityholders is being sought and obtained, in reliance on the representations and warranties contained in <u>Section 4.1</u>, <u>Section 4.2</u>, <u>Section 4.3</u>, <u>Section 4.4</u> and <u>Section 5.4</u> and Parent's and Buyer's obligations under this Agreement.

Section 5.2 <u>Credit Support for the Company</u>.  Parent, unconditionally and irrevocably, agrees to provide and to cause its Affiliates to provide, the Company and each of its Subsidiaries such funds, in the form of a contribution of capital, as reasonably necessary for such Persons to pay when due (whether at the stated maturity, by acceleration or otherwise) all of the Obligations to the extent the Company or any Company Subsidiary does not have sufficient funds to satisfy such Obligation; provided that the aggregate liability of Parent under this <u>Section 5.2</u> shall not exceed two hundred fifty percent (250%) of the Aggregate Purchase Price (the "<u>Credit Support</u>").  In furtherance and not in limitation of the foregoing and Parent shall provide, or, at its election, shall cause Parent or its applicable subsidiary to provide, a customary guarantee to each creditor of the Company and each of its Subsidiaries as of the Closing upon any written request therefor.  "<u>Obligations</u>" means the collective reference to all obligations and undertakings of the Company and each of its Subsidiaries hereunder and under the Merger Agreement of whatever nature, monetary or otherwise, together with all reasonable attorneys' fees, disbursements and all other costs and expenses of collection incurred by the Seller in enforcing any of such Obligations.

12

**DEBTORS' EXHIBIT NO. 250**
**Page 12 of 98**

Section 5.3  <u>Indemnification</u>.

(a)     Parent shall indemnify, hold harmless, reimburse and pay to the fullest extent permitted by applicable law as it presently exists or may hereafter be amended, (x) the Seller, each Equityholder, Equityholder Representative, (y) each of their respective Affiliates and direct and indirect partners (including partners of partners and stockholders and members of partners), members, stockholders, managers, directors, officers, employees and agents and each Person who controls any of them and (z) each of their respective Related Parties (the "<u>Covered Persons</u>") from and against any and all losses, claims, damages, liabilities, Taxes (determined, for the avoidance of doubt, net of any tax benefits obtained by such Covered Person), expenses (including the cost of investigation and defense and reasonable attorneys' fees and expenses), judgments, penalties, fines and amounts paid in settlement (including interest, assessments and other charges paid or payable in connection with or in respect of such losses, claims, damages, liabilities, expenses, judgments, penalties, fines and amounts paid in settlement) (collectively, "<u>Losses</u>") sustained or suffered by any such Covered Person based upon, relating to, arising out of, as a result of or by reason of:

(i)     (x) this Agreement and (y) the transactions contemplated hereby (which, for the avoidance of doubt, shall include the structuring of such transactions, including the Pre-Closing Transfer) including the structuring of such transactions;

(ii)     any inaccuracy in, or breach of, any of the representations and warranties set forth in <u>Sections 4.1</u>, <u>4.2</u>, and <u>4.3</u>; and/or

(iii)     any breach or violation of this <u>Article V</u>.

(b)     Losses shall include direct Losses and Losses based upon, relating to, arising out of, or by reason of any third party or governmental claims, Actions, suits, proceedings, whether civil, criminal, administrative or investigative and including claims alleging so-called control person liability.

(c)     Parent shall pay the expenses (including the cost of investigation and defense and reasonable attorneys' fees and expenses) incurred by a Covered Person in defending any Claim in advance of its final disposition; <u>provided</u>, however, that, solely to the extent required by applicable law, such payment of expenses in advance of the final disposition of such Claim shall be made only upon receipt of an undertaking by such Covered Person to repay all amounts advanced if it should be ultimately determined that such Covered Person is not entitled to be indemnified under this Agreement or otherwise.

(d)     If a claim for indemnification or advancement of expenses under this Section 5.3 is not paid in full within 30 days after a written claim therefor by the Covered Person has been delivered by a Covered Person, such Covered Person may file suit to recover the unpaid amount of such claim and, if successful in whole or in part, shall be entitled to be paid the expense of prosecuting such claim. In any such action Parent shall have the burden of proving that the Covered Person is not entitled to the requested indemnification or advancement of expenses under applicable law.

CONFIDENTIAL

FBG_CH1_00095234

(e)     Without duplication with any Claim made by a Covered Person, it is acknowledged and agreed that the Losses of any Covered Person shall be deemed the Losses of the Equityholder Representative and the Equityholder Representative shall be entitled to make claims therefor; provided that the Equityholder shall promptly remit any recovered amounts to the applicable Covered Person as it determines in its reasonable discretion.

(f)     The rights conferred on any Covered Person by this shall not be exclusive of any other rights that such Covered Person may have or hereafter acquire under any statute, provision of the Certificate of Incorporation or By-Laws or any agreement, vote of stockholders or disinterested directors or otherwise.

(g)     Parent hereby acknowledges that the Covered Persons may have certain rights to advancement and/or indemnification by other parties (collectively, the "Other Indemnitors"). In all events, (a) Parent hereby agrees that it is the indemnitor of first resort (i.e., its obligation to a Covered Person to provide advancement and/or indemnification to such Covered Person are primary and any obligation of the Other Indemnitors (including any Affiliate thereof) to provide advancement or indemnification hereunder or under any other indemnification agreement (whether pursuant to contract, by-laws or charter), or any obligation of any insurer of the Other Indemnitors to provide insurance coverage, for any of the same Losses incurred by such Covered Person are secondary and (b) if any Other Indemnitor (or any Affiliate thereof) pays or causes to be paid, for any reason, any amounts otherwise indemnifiable hereunder or under any other indemnification agreement (whether pursuant to contract, by-laws or charter) with such Covered Person, then (x) such Other Indemnitor (or such Affiliate, as the case may be) shall be fully subrogated to all rights of such Covered Person with respect to such payment and (y) Parent shall fully indemnify, hold harmless, reimburse and pay such Other Indemnitor (or such other Affiliate, as the case may be) for all such payments actually made by such Other Indemnitor (or such other Affiliate, as the case may be).

Section 5.4 <u>Information Rights</u>.  The Buyer shall deliver to the Seller any and all financial statements required to be delivered by Parent (or any of its Affiliates) to the administrative agent pursuant to the terms of Parent's (or any of its Affiliates') credit agreement (the "<u>Agent</u>"), substantially concurrently with delivery to the Agent.

Section 5.6 <u>Security Interest</u>. To secure the due and timely payment of the Aggregate Purchase Price and the due and timely performance of all of Buyer's obligations hereunder and under the Merger Agreement (the "<u>Mexican-Law Secured Obligations</u>"), the Buyer and hereby agrees to grant a first priority non-possessory pledge (*prenda sin transmisión de posesión en primer lugar y grado de prelación*) by entering into a non-possessory pledge agreement (*prenda sin transmisión de posesión*) substantially in terms of the form attached hereto as Exhibit C (the "<u>Non-Possessory Pledge Agreement</u>"), as pledgor, in favor of Seller, as pledgee, over all of the Inventory and any and all other present or future Collateral (as defined therein) located in Mexico, whether currently owned by Buyer or hereafter acquired until the date on which all Mexican-Law Secured Obligations have been duly paid in full. The Buyer and IBI-MX hereby covenant and agree to enter into the Non-Possessory Pledge Agreement and ratify their signatures before a Mexican notary public, as soon as possible but, in any event, within 30 calendar days following the Closing Date, and to file the Non-Possessory Pledge Agreement with

14

FBG_CH1_00095235

the Sole Registry of Liens over Movable Assets (*Registro Único de Garantías Mobiliarias*) no later than 2 Business Days as of the entering into of the Non-Possessory Pledge Agreement.

## ARTICLE VI

## TAX MATTERS

Section 6.1 <u>Intended Mexican Tax Treatment</u>. The Parties intend to treat the transfer under Section 2.1. and Section 3.1 as a sale of assets under the IMMEX Program between non-Mexican tax residents (for Mexican tax purposes), governed by article 9, section IX of the Value Added Tax Law. The Parties acknowledge that the Inventory is located in Mexico and was imported to such jurisdiction under the IMMEX Program. The Seller shall issue a tax invoice for the Inventory in compliance with the relevant tax regulations, including the number of the IMMEX Program with which the assets were imported to México.

Section 6.2 <u>Intended U.S. Tax Treatment</u>.

(a)     The Parties acknowledge and agree that, for U.S. federal and all applicable state and local income Tax purposes that the distribution of interests in the Seller to the Equityholders in their capacity as the holders of Company Units pursuant to the Pre-Closing Transfer is payment in consideration for the Company Units in connection with the Merger. The Parties agree to file their tax returns accordingly, except as otherwise required by a change in applicable law or a final determination.

Section 6.3 <u>Transfer Taxes</u>. The Buyer agrees to pay all sales, use, value added, transfer, stamp, registration, documentary, excise, real property transfer or gains, or similar taxes, assessments, duties or similar charges, including all interest, penalties and additions imposed with respect to such amounts incurred as a result of the transactions contemplated by this Agreement ("<u>Transfer Taxes</u>").  The Buyer agrees to file, with the reasonable cooperation of the Seller, any related tax returns. Notwithstanding anything in the Merger Agreement to the contrary, Taxes relating to this Agreement shall be paid by Parent and any Transfer Taxes relating to the contribution of inventory to InventoryCo shall be paid by or otherwise economically borne by Parent and not the Equityholders.  For the avoidance of doubt, the payment of any such Tax, including any Transfer Tax, is in addition to the Aggregate Purchase Price.

## ARTICLE VII

## MISCELLANEOUS PROVISIONS

Section 7.1 <u>No Survival</u>.  The Parties, intending to modify any applicable statute of limitations, agree that (a) none of the representations and warranties of the Seller contained in <u>Section 4.5</u> shall survive the Transferred Asset Effective Time and all rights, claims and causes of action (whether in contract or in tort or otherwise, or whether at law or in equity) with respect thereto shall terminate at the Transferred Asset Effective Time.  Notwithstanding anything to the contrary herein, the Seller (or any officer, agent, employee, direct or indirect

CONFIDENTIAL

FBG_CH1_00095236

holder of any equity interest or securities, or Affiliates of the Seller) shall not have any liability hereunder after the Transferred Asset Effective Time (and this sentence is intended to benefit each such Person, whether or not a party to this Agreement).  PARENT AND BUYER, ON BEHALF OF THEMSELVES AND EACH OF THEIR RESPECTIVE AFFILIATES, SUCCESSORS AND PERMITTED ASSIGNS, EXPRESSLY WAIVES ALL RIGHTS AFFORDED BY ANY STATUTE THAT LIMITS THE EFFECT OF A RELEASE WITH RESPECT TO UNKNOWN CLAIMS. PARENT AND BUYER UNDERSTAND THE SIGNIFICANCE OF THIS RELEASE OF UNKNOWN CLAIMS AND WAIVER OF STATUTORY PROTECTION AGAINST A RELEASE OF UNKNOWN CLAIMS. PARENT AND BUYER ACKNOWLEDGE AND AGREE THAT THIS WAIVER IS AN ESSENTIAL AND MATERIAL TERM OF THIS AGREEMENT. PARENT AND BUYER FURTHER EXPRESSLY WAIVE ALL RIGHTS TO CLAIM OR SEEK RESCISSION OF THE TRANSACTIONS CONTEMPLATED HEREIN OR HEREBY.

Section 7.2  Governing Law and Jurisdiction.  This Agreement and any claim or controversy hereunder shall be governed by and construed in accordance with the Laws of the State of New York without giving effect to the principles of conflict of laws thereof.

Section 7.3  WAIVER OF JURY TRIAL.  EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).  EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

Section 7.4  Consent to Jurisdiction and Service of Process.  Any legal action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby may only be instituted in any state or federal court in New York, New York, and each Party waives any objection which such Party may now or hereafter have to the laying of the venue of any such action, suit or proceeding, and irrevocably submits to the jurisdiction of any such court in any such action, suit or proceeding.

Section 7.5  Notices. Any notice or other communication required or permitted under this Agreement shall be deemed to have been duly given and made if (i) in writing and served by personal delivery upon the Party for whom it is intended, (ii) if delivered by electronic mail with receipt confirmed (including by receipt of confirmatory electronic mail from the recipient or (iii) if delivered by certified mail, registered mail, courier service, return-receipt received to the Party at the address set forth below, with copies sent to the Persons indicated:

To the Seller:

16

CONFIDENTIAL                                                                                           FBG_CH1_00095237

c/o Wellspring Capital Management LLC
605 Third Avenue, 44th Floor
New York, NY 10158
Attention:   William Byers
                    Sarah Mudho
Email:        wbyers@wellspringcapital.com
                   smudho@wellspringcapital.com

with a copy (which shall not constitute notice hereunder) to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Attention: Angelo Bonvino, Esq.
                  Michael Vogel, Esq.
Email:       abonvino@paulweiss.com
                  mvogel@paulweiss.com

If to the Buyer or Parent:

127 Public Square
Suite 5300
Cleveland, Ohio 44114
Attention:  Michael Baker, Chief Corporate Strategy Officer
Email: michael.baker@firstbrandsgroup.com

Such addresses may be changed, from time to time, by means of a notice given in the manner provided in this Section 7.5.

Section 7.6 Severability. If any term, provision, agreement, covenant or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, agreements, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party.  Upon such a determination, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner so that the transactions contemplated hereby may be consummated as originally contemplated to the fullest extent possible.

Section 7.7 No Third Party Beneficiary. Except as set forth herein (including in Article IV), nothing in this Agreement shall confer any rights, remedies or claims upon any Person or entity not a Party or a permitted assignee of a Party. The Covered Persons are express third party beneficiaries for purposes of Section 5.2 and Section 5.3 and the Equityholders and the Equityholder Representative are express third party beneficiaries of this Agreement, including for purposes of Section 3.4, Section 5.2, Section 5.3 Section 5.4, Article V and Section 7.9.

17

CONFIDENTIAL

FBG_CH1_00095238

Section 7.8 <u>Waiver</u>. Waiver of any term or condition of this Agreement by any Party shall only be effective if in writing and shall not be construed as a waiver of any subsequent breach or failure of the same term or condition, or a waiver of any other term or condition of this Agreement.

Section 7.9 <u>Amendment</u>. This Agreement may not be amended except by an instrument in writing signed on behalf of each of the Parties. Following the Closing, this Agreement may only be amended with the prior written consent of the Equityholder Representative.

Section 7.10        <u>Entire Agreement; Assignment</u>. This Agreement, the Merger Agreement and Exhibits attached hereto which are deemed for all purposes to be part of this Agreement, and the other documents, delivered pursuant to this Agreement, the Merger Agreement and the Confidentiality Agreement, contain all of the terms, conditions and representations and warranties agreed upon or made by the Parties relating to the subject matter of this Agreement and the businesses and operations of the Seller and supersede all prior and contemporaneous agreements, negotiations, correspondence, undertakings and communications of the Parties or their Representatives, oral or written, respecting such subject matter.

Section 7.11        <u>Counterparts; Electronic Signatures</u>. This Agreement may be signed in any number of counterparts with the same effect as if the signatures to each counterpart were upon a single instrument, and all such counterparts together shall be deemed an original of this Agreement.

Section 7.12        <u>Exhibits</u>. All Exhibits or other documents expressly incorporated into this Agreement are hereby incorporated into this Agreement and are hereby made a part hereof as if set out in full in this Agreement.

Section 7.13        <u>Force Majeure</u>. The obligations of the Buyer under this Agreement, including, for the avoidance of doubt, Section 3.1, shall be unaffected by, any act, omission, or circumstance by or in consequence of any act of God, labor disturbance, sabotage, destruction, act of the public enemy, war, invasion, insurrection, riot, fire, storm, flood, ice, earthquake, explosion, epidemic, breakage or accident to machinery or equipment or any other cause or causes beyond the Buyer's control, including any curtailment, order, regulation, or restriction imposed by governmental, military or civilian authorities, or by making of repairs necessitated by an emergency circumstance not limited to those listed above or any other force majeure event.

Section 7.14        <u>Specific Performance</u>

(a)        The Parties agree that (i) irreparable damage would occur in the event that the provisions of this Agreement or obligations, undertakings, covenants or agreements of the Parties were not performed in accordance with their specific terms or were otherwise breached and (ii) money damages, even if available, would not be an adequate remedy for any such failure to perform or any breach of this Agreement. Accordingly, it is agreed that the Parties shall be entitled to an injunction or injunctions to enforce specifically the terms and provisions hereof in

18

FBG_CH1_00095239

any court specified in Section 7.1 (Governing Law; Jurisdiction) without proof of actual damages, this being in addition to any other remedy to which they are entitled at law or in equity. Without limitation of the foregoing, the Parties hereby further acknowledge and agree that prior to the payment in full of the Aggregate Purchase Price, the Seller shall be entitled to specific performance to enforce specifically the terms and provisions of, and to prevent or cure breaches of the covenants required to be performed by the Buyer under this Agreement, and including to cause the Buyer to consummate the Transferred Asset Closing and to make the payments contemplated by this Agreement, in addition to any other remedy to which the Seller is entitled at law or in equity.

(b)     Each Party agrees that it will not oppose (and hereby waives any defense in any action for) the granting of an injunction, specific performance and other equitable relief as provided herein on the basis that (i) the other parties have an adequate remedy at law or (ii) an award of specific performance or other equitable remedy is not an appropriate remedy for any reason at law, equity or otherwise.  Any party seeking an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement when available pursuant to the terms of this Agreement shall not be required to provide any bond or other security in connection with any such order or injunction.

(c)     If the Seller brings an action for specific performance pursuant to this Section 7.14, and a court rules that the Buyer breached this Agreement in connection with its failure to effect the Transferred Asset Closing in accordance with this Agreement, but such court declines to enforce specifically the obligations of the Buyer to effect the Transferred Asset Closing in accordance with this Agreement, then, the Seller shall be entitled to pursue all applicable remedies at law, and the Buyer shall pay the Seller's costs and expenses (including attorneys' fees) in connection with all actions to seek specific performance of the Buyer's obligations pursuant to this Agreement and all actions to collect such costs or expenses.

Section 7.15     Acknowledgements  Each of the Buyer and Parent acknowledge and agree that:

(a)     Prior to the Closing, the Seller was a Subsidiary of the Company and the 2022 July Promissory Notes Cash Payoff Amount Adjustment, as contemplated by Section 2.9 of the Merger Agreement, includes the inventory subject to this Agreement notwithstanding that such inventory was contributed to the Seller prior to the Closing.

(b)     The distribution of the equity interests in the Seller to the Equityholders satisfied the outstanding indebtedness owed by the Company to the Equityholders and is held by the Equityholders as a result of such distribution.

(c)     The Seller has no assets other than the Transferred Assets.

(d)     Parent would not permit Parent to enter into the Merger Agreement but for the Pre-Closing Transfer and this Agreement is being entered into as an inducement by Parent to execute the Merger Agreement.

*(Signature Page Follows)*

19

CONFIDENTIAL                                                                                  FBG_CH1_00095240

IN WITNESS WHEREOF, the Parties have executed this Inventory Sale Agreement as of the date first above written.

BUYER:

**INTERNATIONAL BRAKE INDUSTRIES, INC.**

By: _____

Name:  Shaun Mayfield

Title:    President

*[Signature Page to IBI - Inventory Sale Agreement]*

CONFIDENTIAL

FBG_CH1_00095241

IN WITNESS WHEREOF, the Parties have executed this Inventory Sale Agreement as of the date first above written.

IBI LATIN AMERICA, S DE R.L. DE C.V.

By: _____

Name:  Shaun Mayfield

Title:   President

*[Signature Page to IBI - Inventory Sale Agreement]*

CONFIDENTIAL

FBG_CH1_00095242

IN WITNESS WHEREOF, the Parties have executed this Inventory Sale Agreement as of the date first above written.

**FIRST BRANDS GROUP, LLC**

By: _____
    Name:  Michael Baker
    Title:   Chief Corporate Strategy Officer

*[Signature Page to IBI - Inventory Sale Agreement]*

CONFIDENTIAL

IN WITNESS WHEREOF, the Parties have executed this Inventory Sale Agreement as of the date first above written.

SELLER:

**QUALITOR INVENTORY HOLDINGS, LLC**

By: _____

  Name: John Morningstar
  Title:  President

*[Signature Page to IBI - Inventory Sale Agreement]*

CONFIDENTIAL

FBG_CH1_00095244

## EXHIBIT A

Inventory

(See attached.)

CONFIDENTIAL

FBG_CH1_00095245

Case 25-90399   Document 3644-15   Filed in TXSB on 08/12/26   Page 25 of 98

```
                                  ------------------------------ EXTENDED COSTS -------------------------------
                       QTY ON HAND     MATERIAL          LABOR        OVERHEAD          OTHER            TOTAL
                       -----------     ----------      ----------    ----------       ----------       ----------

TOTAL/BR110/IN10        38,640,425    2,154,085.33        562.35       2,407.61                       2,157,055.29
TOTAL/BR110/IN20               383          179.66         49.41         211.22                             440.30
TOTAL/BR110/IN30         3,081,115    2,590,598.35     164,639.97     704,203.78                      3,459,442.10
TOTAL/BR110/OTHER          120,490       23,402.73                                                       23,402.73

TOTAL BRANCH 110         41,842,413    4,768,266.09     165,251.73     706,822.62                      5,640,340.43
----------------------------------------------------------------------------------------------------------------

TOTAL/BR30/IN10                487          549.99                                                          549.99
TOTAL/BR30/IN20
TOTAL/BR30/IN30             82,537      135,619.59                                                      135,619.59
TOTAL/BR30/OTHER

TOTAL BRANCH 30             83,024      136,169.58                                                      136,169.58
----------------------------------------------------------------------------------------------------------------

TOTAL/BR65/IN10         13,639,353    1,134,304.79                                    14.14         1,134,318.93
TOTAL/BR65/IN20
TOTAL/BR65/IN30            160,937       83,223.64                                 11,265.59            94,489.23
TOTAL/BR65/OTHER

TOTAL BRANCH 65         13,800,290    1,217,528.44                                 11,279.73         1,228,808.17
----------------------------------------------------------------------------------------------------------------

TOTAL/BR120/IN10
TOTAL/BR120/IN20
TOTAL/BR120/IN30             3,530       20,191.49                                                       20,191.49
TOTAL/B120/OTHER              202

TOTAL BRANCH 120             3,732       20,191.49                                                       20,191.49
----------------------------------------------------------------------------------------------------------------

TOTAL/BR130/IN10
TOTAL/BR130/IN20
TOTAL/BR130/IN30            46,491      254,979.33                                                      254,979.33
TOTAL/B130/OTHER

TOTAL BRANCH 130           46,491      254,979.33                                                      254,979.33
----------------------------------------------------------------------------------------------------------------

TOTAL/BR140/IN10        165,772,303   15,209,713.67        149.20         638.80                     15,210,501.67
TOTAL/BR140/IN20             3,081        2,797.02         198.92         850.41        168.04            4,014.39
TOTAL/BR140/IN30         3,955,912      917,336.12      47,686.40     196,147.79                      1,161,170.32
TOTAL/B140/OTHER           886,144       43,829.58                                                       43,829.58

TOTAL BRANCH 140        170,617,440   16,173,676.39      48,034.52     197,637.00        168.04      16,419,515.95
----------------------------------------------------------------------------------------------------------------

TOTAL ALL BRANCHES      226,393,410   22,570,811.31     213,286.25     904,459.62     11,447.77      23,700,004.94

                     TOTAL ALL BRANCHES USING COSTS FROM THE ITEM LEDGER FILE                        23,699,352.94

                    *** END OF JOB - PROGRAM INV1002 ***
```

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 250**
**Page 25 of 98**

FBG_CH1_00095246

Case 25-90399  Document 3644-15  Filed in TXSB on 08/12/26   Page 26 of 98

```
                                 ------------------------------ EXTENDED COSTS -------------------------------
                    QTY ON HAND      MATERIAL       LABOR       OVERHEAD        OTHER           TOTAL
                    -----------    ----------    ----------    ----------    ----------      ----------

TOTAL/BR110/IN10       27,494-      3,315.41-                                                 3,315.41-
TOTAL/BR110/IN20
TOTAL/BR110/IN30          813-        613.63-        26.62-       113.86-                       754.11-
TOTAL/BR110/OTHER

TOTAL BRANCH 110       28,307-      3,929.04-        26.62-       113.86-                     4,069.52-
---------------------------------------------------------------------------------------------------------------

TOTAL/BR30/IN10
TOTAL/BR30/IN20
TOTAL/BR30/IN30           213-        328.55-                                                   328.55-
TOTAL/BR30/OTHER

TOTAL BRANCH 30           213-        328.55-                                                   328.55-
---------------------------------------------------------------------------------------------------------------

TOTAL/BR65/IN10        19,269-      3,367.15-                                                 3,367.15-
TOTAL/BR65/IN20
TOTAL/BR65/IN30
TOTAL/BR65/OTHER

TOTAL BRANCH 65        19,269-      3,367.15-                                                 3,367.15-
---------------------------------------------------------------------------------------------------------------

TOTAL/BR120/IN10
TOTAL/BR120/IN20
TOTAL/BR120/IN30            4-         13.44-                                                    13.44-
TOTAL/B120/OTHER         198-

TOTAL BRANCH 120         202-         13.44-                                                    13.44-
---------------------------------------------------------------------------------------------------------------

TOTAL/BR130/IN10
TOTAL/BR130/IN20
TOTAL/BR130/IN30            4-         54.03-                                                    54.03-
TOTAL/B130/OTHER

TOTAL BRANCH 130           4-         54.03-                                                    54.03-
---------------------------------------------------------------------------------------------------------------

TOTAL/BR140/IN10      243,536-     31,887.05-                                                31,887.05-
TOTAL/BR140/IN20
TOTAL/BR140/IN30        5,151-      4,327.07-       375.25-     1,605.60-                     6,307.91-
TOTAL/B140/OTHER

TOTAL BRANCH 140      248,687-     36,214.11-       375.25-     1,605.60-                    38,194.96-
---------------------------------------------------------------------------------------------------------------

TOTAL ALL BRANCHES    296,682-     43,906.31-       401.86-     1,719.46-                    46,027.64-

                         TOTAL ALL BRANCHES USING COSTS FROM THE ITEM LEDGER FILE           46,027.64-

                    *** END OF JOB - PROGRAM INV1002 ***
```

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 250**
**Page 26 of 98**

FBG_CH1_00095247

12/29/22        3:32:43                               MCGUANE INDUSTRIES                                              PAGE:      1

Case 25-90399   Document 3644-15   Filed in TXSB on 08/12/26   Page 27 of 98
                          INVENTORY REPORT   POSITIVE BALANCES   TOTALS ONLY                                        INV1003

```
                               -------------------------------- EXTENDED COSTS ---------------------------------
                 QTY ON HAND      MATERIAL         LABOR         OVERHEAD          OTHER             TOTAL
                 -----------    ----------     ----------     ----------      ----------        ----------


TOTAL/BR50/IN10
TOTAL/BR50/IN20
TOTAL/BR50/IN30
TOTAL/BR50/OTHER

TOTAL BRANCH 50

-----------------------------------------------------------------------------------------------------------------


TOTAL ALL BRANCHES


                      TOTAL ALL BRANCHES USING COSTS FROM THE ITEM LEDGER FILE

             *** END OF JOB - PROGRAM INV1003 ***
```

CONFIDENTIAL
FBG_CH1_00095248

Case 25-90399   Document 3644-15   Filed in TXSB on 08/12/26   Page 28 of 98

```
                              -------------------------------- EXTENDED COSTS ---------------------------------
              QTY ON HAND      MATERIAL         LABOR           OVERHEAD          OTHER              TOTAL
              -----------      ----------       ----------      ----------       ----------        ----------


TOTAL/BR50/IN10
TOTAL/BR50/IN20
TOTAL/BR50/IN30
TOTAL/BR50/OTHER

TOTAL BRANCH 50

---------------------------------------------------------------------------------------------------------------------


TOTAL ALL BRANCHES


                              TOTAL ALL BRANCHES USING COSTS FROM THE ITEM LEDGER FILE

                    *** END OF JOB - PROGRAM INV1003 ***
```

CONFIDENTIAL

FBG_CH1_00095249

**EXHIBIT B**

NY Security Agreement

(See attached.)

CONFIDENTIAL                                    FBG_CH1_00095250

*Execution Version*

<u>U. S. SECURITY AGREEMENT</u>

SECURITY AGREEMENT, dated as of December 30, 2022 (this "<u>Agreement</u>"), made by and between International Brake Industries, Inc., a Delaware corporation ("<u>Grantor</u>"), and Qualitor Inventory Holdings, LLC, a Delaware limited liability company (the "<u>Secured Party</u>").

W I T N E S S E T H:

WHEREAS, this Agreement is being entered into in connection with (i) that certain Agreement and Plan of Merger, dated as of December 30, 2022, by and among TAE Brakes, LLC, a Delaware limited liability company (the "<u>Company</u>"), First Brands Group, LLC, a Delaware limited liability company ("<u>Parent</u>"), Viper Acquisition II, LLC, a Delaware limited liability company ("<u>Merger Sub</u>") and wholly owned Subsidiary of Parent, Qualitor Holdings LLC, a Delaware limited liability company, solely in its capacity as the representative of the Equityholders (the "<u>Equityholder Representative</u>") and, solely for the purposes of <u>Section 6.10</u> therein, Qualitor Holdings LLC, a Delaware limited liability company (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Merger Agreement</u>"), pursuant to which, upon the terms and subject to the conditions set forth therein, Merger Sub will be merged with and into the Company, with the Company surviving as a wholly owned Subsidiary of Parent and (ii) that certain Inventory Sale Agreement, dated as of December 30, 2022, by and among Grantor, IBI Latin America, S de R.L. de C.V. and the Secured Party (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Inventory Sale Agreement</u>"), pursuant which, upon the terms and subject to the conditions set forth therein, the Secured Party has agreed to sell, grant, convey, transfer, and assign certain Inventory to Grantor;

WHEREAS, it is a condition precedent to the Secured Party's entry into the Inventory Sale Agreement and its transfer of the Inventory to Grantor pursuant to the Inventory Sale Agreement that Grantor shall have executed and delivered this Agreement to the Secured Party; and

WHEREAS, Grantor has determined that the execution, delivery and performance of this Agreement directly benefits, and is in the best interest of, Grantor;

NOW, THEREFORE, in consideration of the premises and the agreements herein and in order to induce the Secured Party enter into the Inventory Sale Agreement, Grantor hereby agrees with the Secured Party, as follows:

SECTION 1.   <u>Definitions</u>.

(a)     Reference is hereby made to the Inventory Sale Agreement for a statement of the terms thereof.  All capitalized terms used in this Agreement and the recitals hereto which are defined in the Inventory Sale Agreement or in Article 8 or 9 of the Uniform Commercial Code as in effect from time to time in the State of New York (the "<u>Code</u>") and which are not otherwise defined herein shall have the same meanings herein as set forth therein; <u>provided</u> that terms used herein which are defined in the Code as in effect in the State of New York on the date hereof shall continue to have the same meaning notwithstanding any replacement or amendment of such statute except as the Secured Party and Grantor may otherwise agree.

CONFIDENTIAL

(b)      The following terms shall have the respective meanings provided for in the Code: "Accounts", "Account Debtor", "Cash Proceeds", "Chattel Paper", "Documents", "Instruments", "Inventory", "Noncash Proceeds", "Proceeds", and "Record".

(c)      As used in this Agreement, the following terms shall have the respective meanings indicated below, such meanings to be applicable equally to both the singular and plural forms of such terms:

"Copyrights" means any and all rights in any published and unpublished works of authorship, including (i) copyrights, (ii) all renewals, extensions, restorations and reversions thereof, (iii) copyright registrations and all applications in connection therewith, and (iv) all of Grantor's rights corresponding thereto throughout the world.

"Intellectual Property" means any and all Patents, Copyrights, Trademarks, and trade secrets, know-how, inventions (whether or not patentable), URLs and domain names, and any other intellectual property and proprietary rights of any kind, including all rights therein and all applications for registration or registrations thereof.

"Licenses" means, with respect to any Person (the "Specified Party"), (i) any licenses or other similar rights provided to the Specified Party in or with respect to Intellectual Property owned or controlled by any other Person, and (ii) any licenses or other similar rights provided to any other Person in or with respect to Intellectual Property owned or controlled by the Specified Party, together with any income, license fees, royalties, damages, and payments now and hereafter due or payable under and with respect thereto, including payments under all licenses entered into in connection therewith and damages and payments for past, present or future infringements thereof.

"Patents" means patents and patent applications, including (i) all continuations, divisionals, continuations-in-part, re-examinations, reissues, and renewals thereof and improvements thereon, and (ii) all of Grantor's rights corresponding thereto throughout the world.

"Event of Default" means (a) an "Event of Default" as defined in the Inventory Sale Agreement or (b) any breach of a covenant (including, without limitation, Section 5(e) hereof) or representation and warranty by Grantor in any material respect.

"Trademarks" means any and all trademarks, trade names, registered trademarks, trademark applications, service marks, registered service marks, brand names, certification marks, collective marks, logos, symbols, trade dress, assumed names, fictitious names and service mark applications, including (i) all extensions, modifications and renewals thereof, (ii) the goodwill of Grantor's business symbolized by the foregoing or connected therewith, and (iii) all of Grantor's rights corresponding thereto throughout the world.

SECTION 2.   Grant of Security Interest.  As collateral security for the payment, performance and observance, as the case may be, of all of the NY-Law Secured Obligations (as defined in the Inventory Sale Agreement), Grantor hereby pledges and collaterally assigns to the Secured Party (and its agents and designees), and grants to the Secured Party, (and its agents and designees) for the benefit of the Secured Party, a continuing security interest in all right, title and interest in or to any and all of the following assets now owned or hereafter acquired by Grantor or

-2-

CONFIDENTIAL

FBG_CH1_00095252

in which Grantor now has or at any time in the future may acquire any right, title or interest (all being collectively referred to herein as the "Collateral"):

(a)     all Inventory;

(b)     all proceeds, products, accessions, profits, income, substitutions and replacements of and to any of the property of Grantor described in the preceding clauses of this Section 2 (including, without limitation, any Accounts or proceeds of insurance thereon and all causes of action, claims and warranties now or hereafter held by Grantor in respect of any of the items listed in such preceding clauses), and all books, correspondence, files and other Records in the possession or under the control of Grantor or any Affiliate necessary or helpful in the collection or realization thereof; and

(c)     all Proceeds, including all Cash Proceeds and Noncash Proceeds, and products of any and all of the foregoing Collateral; in each case howsoever Grantor's interest therein may arise or appear (whether by ownership, security interest, claim or otherwise).

SECTION 3.   Security for Obligations.  The security interest created hereby in the Collateral constitutes continuing collateral security for all of the NY-Law Secured Obligations.

SECTION 4.   Representations and Warranties.  Grantor represents and warrants as follows:

(a)     Schedule I hereto sets forth (i) the exact legal name of Grantor, (ii) the state or jurisdiction of organization of Grantor, (iii) the type of organization of Grantor and (iv) the organizational identification number of Grantor.

(b)     Grantor's chief place of business and chief executive office and the place where Grantor keeps its Records concerning Inventory are located at the addresses specified therefor in Schedule II hereto (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof).

(c)     Grantor is the sole and exclusive owner of, or otherwise has adequate rights in, the Collateral free and clear of any Encumbrances (as defined in the Merger Agreement) except for the Permitted Encumbrances (as defined in the Merger Agreement). Grantor has not filed or consented to the filing of any financing statement or other instrument similar in effect covering all or any part of the Collateral in any recording or filing office except (x) financing statements for which duly authorized proper termination statements will be filed on the date hereof and (y) financing statements as may have been filed to perfect or protect any Permitted Encumbrance.

(d)     The exercise by the Secured Party of any of its rights and remedies hereunder will not contravene any law, to Grantor's knowledge, or any contractual restriction binding on or otherwise affecting Grantor or any of its properties and will not result in, or require the creation of, any Encumbrance (other than Permitted Encumbrances) upon or with respect to any of its properties.

-3-

CONFIDENTIAL

(e)      No authorization or approval or other action by, and no notice to or filing with, any Governmental Authority or any other Person (other than those that have been obtained and are in full force and effect) is required for (i) the due execution, delivery and performance by Grantor of this Agreement, (ii) the grant by Grantor of the security interest purported to be created hereby in the Collateral or (iii) the exercise by the Secured Party of any of its rights and remedies hereunder.  No authorization or approval or other action by, and no notice to or filing with, any Governmental Authority or any other Person, is required for the perfection of the security interest purported to be created hereby in the Collateral (other than those that have been obtained and are in full force and effect), except for the filing under the Uniform Commercial Code as in effect in the jurisdiction of the financing statement described in Schedule III hereto (the "Perfection Requirement").

(f)      This Agreement creates a legal, valid and enforceable security interest in favor of the Secured Party, in the Collateral, as security for the NY-Law Secured Obligations, except as may be limited by the Bankruptcy Code (as defined in the Merger Agreement).  Subject to the taking of the Perfection Requirement, such security interests are, or in the case of Collateral in which Grantor obtains rights after the date hereof, will be, perfected, first priority security interests, subject in priority only to Permitted Encumbrances, if any.

SECTION 5.   Covenants as to the Collateral.  So long as any of the NY-Law Secured Obligations (whether or not due) shall remain unpaid, unless the Secured Party shall otherwise consent in writing:

(a)      Further Assurances.  Grantor will at its expense, at any time and from time to time, promptly execute and deliver all further instruments and documents and take all further action that may be reasonably necessary or that the Secured Party may reasonably request in order (i) to perfect and protect, or maintain the perfection of, the security interest and lien purported to be created hereby; (ii) to enable the Secured Party to exercise and enforce its rights and remedies hereunder in respect of the Collateral; or (iii) otherwise to effect the purposes of this Agreement, including, without limitation:  (A) marking conspicuously all of its Records pertaining to the Collateral with a legend, in form and substance reasonably satisfactory to the Secured Party, indicating that such Collateral is subject to the security interest created hereby, (B) executing and filing (to the extent, if any, that Grantor's signature is required thereon), or authenticating the filing of, such financing or continuation statements, or amendments thereto, as the Secured Party may reasonably request and (C) furnishing to the Secured Party from time to time statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as the Secured Party may reasonably request, all in reasonable detail.  Grantor shall not take or fail to take any action which would reasonably be expected to impair in any manner the validity or enforceability of the Secured Party's security interest in and lien on any Collateral.

(b)      Condition of Inventory. Grantor will promptly furnish to the Secured Party a statement describing in reasonable detail any loss or damage in excess of $200,000 to any Inventory owned by Grantor.

-4-

CONFIDENTIAL

FBG_CH1_00095254

(c)     Taxes, Etc.  Grantor agrees to pay promptly when due all property and other taxes, assessments and governmental charges or levies imposed upon, and all claims (including claims for labor, materials and supplies) against, the Inventory owned by Grantor.

(d)     Insurance.  Grantor will, at its own expense, maintain insurance with respect to the Collateral at levels and in a manner customary for Inventory of this type.

(e)     Transfers and Other Encumbrances.

(i)     Except for dispositions to third parties for fair market value and in the ordinary course of business, Grantor will not dispose of any of the Collateral.

(ii)     Except for Permitted Encumbrances, Grantor will not create, suffer to exist or grant any Encumbrance upon or with respect to any Collateral.

(f)     Provisions Concerning the Accounts and the Licenses.

(i)     Grantor will, except as otherwise provided in this subsection (f), continue to collect, at its own expense, all amounts due or to become due to Grantor under its Accounts consistent with past practice and in accordance with such prudent and standard practice used in industries that are the same or similar to those in which Grantor is engaged.  In connection with such collections, Grantor may and, at the Secured Party's direction, will take such action as Grantor (or, if applicable, the Secured Party) may deem necessary or advisable to enforce collection or performance of the Accounts; provided, however, that the Secured Party shall have the right at any time, upon the occurrence and during the continuance of an Event of Default, to notify the Account Debtors or obligors under any Accounts of Grantor of the assignment of such Accounts to the Secured Party and to direct such Account Debtors or obligors to make payment of all amounts due or to become due to Grantor thereunder directly to the Secured Party or its designated agent and, upon such notification and at the reasonable expense of Grantor and to the extent permitted by law, to enforce collection of any such Accounts and to adjust, settle or compromise the amount or payment thereof, in the same manner and to the same extent as Grantor might have done.  After receipt by Grantor of a notice from the Secured Party that the Secured Party has notified, intends to notify, or has enforced or intends to enforce Grantor's rights against the Account Debtors or obligors under any Accounts as referred to in the proviso to the immediately preceding sentence (A) all amounts and proceeds (including Instruments) received by Grantor in respect of the Accounts shall be received in trust for the benefit of the Secured Party hereunder, shall be segregated from other funds of Grantor and shall be forthwith paid over to the Secured Party or its designated agent in the same form as so received (with any necessary endorsement) to be held as cash collateral and applied as specified in Section 7(c) hereof, and (B) Grantor will not adjust, settle or compromise the amount or payment of any of its Accounts or release wholly or partly any Account Debtor or obligor thereof or allow any credit or discount thereon.  Any such cash so received by the Secured Party or its designated agent shall (in the sole and absolute discretion of the Secured Party) be held as additional Collateral for the NY-Law Secured Obligations or distributed in accordance with Section 7 hereof.

(ii)     Upon the occurrence and during the continuance of any material breach or default under any material License by any party thereto other than Grantor, the

-5-

CONFIDENTIAL                                                            FBG_CH1_00095255

relevant Grantor will, within a reasonable period of time after obtaining knowledge thereof, give the Secured Party written notice of the nature and duration thereof, specifying what action, if any, it has taken and proposes to take with respect thereto.

(iii)     Grantor will, at its expense, promptly deliver to the Secured Party a copy of each written notice or other written communication received by it by which any other party to any material License to which Grantor is a party (A) declares a breach or default by Grantor of any material term thereunder or (B) terminates such License, in each case together with a copy of any reply by Grantor thereto.

(iv)     Grantor will use commercially reasonable efforts to, if consistent with its reasonable business judgment and past practice, (A) exercise promptly and diligently each and every right which it may have under each License (other than any right of termination), (B) duly perform and observe in all respects all of its obligations under each License and (C) take all action necessary to maintain the Licenses in full force and effect.

(g)     Records; Inspection and Reporting.

(i)     Grantor shall keep adequate records concerning its Accounts and Inventory.  Grantor shall permit the Secured Party, or any agents or representatives thereof or such professionals or other Persons as the Secured Party may designate, (A) to examine and make copies of and abstracts from Grantor's books and records, (B) to visit and inspect its properties, (C) to verify Accounts and Inventory and other assets of Grantor from time to time related thereto, (D) to conduct audits, appraisals and/or valuations or examinations at the locations of Grantor and (E) to discuss Grantor's affairs, finances and accounts with any of its directors, officers, managerial employees, independent accountants or any of its other representatives upon any Event of Default.

(ii)     Grantor shall not, without providing at least five (5) days (or such shorter period agreed to by the Secured Party) prior written notice to the Secured Party, amend, modify or otherwise change its chief executive office as set forth in Schedule II hereto.

SECTION 6.   Additional Provisions Concerning the Collateral.

(a)     To the maximum extent permitted by applicable law, and for the purpose of taking any action that the Secured Party may deem reasonably necessary or advisable to accomplish the purposes of this Agreement, Grantor hereby (i) authorizes the Secured Party to execute any such agreements, instruments or other documents in Grantor's name and to file such agreements, instruments or other documents in Grantor's name and in any appropriate filing office, (ii) subject to Section 11 of this Agreement, authorizes the Secured Party at any time and from time to time (without any obligation to do so) to file one or more financing or continuation statements and amendments thereto, relating to the Collateral or that describe or identify the Collateral by type or in any other manner as the Secured Party may reasonably determine, regardless of whether any particular asset of Grantor falls within the scope of Article 9 of the Uniform Commercial Code, and (B) contain any other information required by Part 5 of Article 9 of the Code for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including, without limitation, whether Grantor is an organization, the type of organization and any organizational identification number issued to Grantor) and

-6-

CONFIDENTIAL                                                    FBG_CH1_00095256

(iii) ratifies such authorization to the extent that the Secured Party has filed any such financing statements, continuation statements, or amendments thereto, prior to the date hereof. A photocopy or other reproduction of this Agreement or any financing statement covering the Collateral or any part thereof shall be sufficient as a financing statement where permitted by law.

(b)    Grantor hereby irrevocably appoints the Secured Party as its attorney-in-fact and proxy, with full authority in the place and stead of Grantor and in the name of Grantor or otherwise, from time to time in the Secured Party's reasonable discretion, to take, after the occurrence and during the continuance of an Event of Default, any action and to execute any instrument that the Secured Party may deem reasonably necessary or advisable to accomplish the purposes of this Agreement (subject to the rights of Grantor under Section 5 hereof), including, without limitation, (i) to obtain and adjust insurance reasonably satisfactory to the Secured Party, (ii) to ask, demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due under or in respect of any Collateral, (iii) to receive, endorse, and collect any drafts or other Instruments, Documents and Chattel Paper in connection with clause (i) or (ii) above, (iv) [reserved], (v) to file any claims or take any action or institute any proceedings which the Secured Party may reasonably deem necessary or advisable for the collection of any Collateral or otherwise to enforce the rights of the Secured Party with respect to any Collateral, (vi) to execute assignments, licenses and other documents to enforce the rights of the Secured Party with respect to any Collateral, (vii) to pay or discharge taxes or Encumbrances (other than Permitted Encumbrances) levied or placed upon or threatened against the Collateral, the legality or validity thereof and the amounts necessary to discharge the same to be determined by the Secured Party in its reasonable discretion, and such payments made by the Secured Party become Obligations of Grantor to the Secured Party, due and payable immediately without demand, and (viii) to sign and endorse any invoices, freight or express bills, bills of lading, storage or warehouse receipts, assignments, verifications and notices in connection with Accounts, Chattel Paper and other documents relating to the Collateral. This power is coupled with an interest and is irrevocable until the NY-Law Secured Obligations have been paid in full.

(c)    If Grantor fails to perform any agreement or obligation contained herein, the Secured Party may itself perform, or cause performance of, such agreement or obligation, in the name of Grantor or the Secured Party, and the reasonable and documented out-of-pocket fees and expenses of the Secured Party incurred in connection therewith shall be payable by Grantor pursuant to Section 8 hereof and shall be secured by the Secured Party.

(d)    The powers conferred on the Secured Party hereunder are solely to protect its interest in the Collateral and shall not impose any duty upon it to exercise any such powers. Other than the exercise of reasonable care to assure the safe custody of any Collateral in its possession and the accounting for moneys actually received by it hereunder, the Secured Party shall have no duty as to any Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral and shall be relieved of all responsibility for any Collateral in its possession upon surrendering it or tendering surrender of it to Grantor (or whomsoever shall be lawfully entitled to receive the same or as a court of competent jurisdiction shall direct). The Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of any Collateral in its possession if such Collateral is accorded treatment substantially equal to that which the Secured Party accords its own property, it being understood that the Secured Party shall not have responsibility for ascertaining or taking action

-7-

FBG_CH1_00095257

with respect to calls, conversions, exchanges, maturities, tenders or other matters relating to any Collateral, whether or not the Secured Party has or is deemed to have knowledge of such matters. The Secured Party shall not be liable or responsible for any loss or damage to any of the Collateral, or for any diminution in the value thereof, by reason of the act or omission of any warehouseman, carrier, forwarding agency, consignee or other agent or bailee selected by the Secured Party in good faith.

(e)     For the purpose of enabling the Secured Party, upon the occurrence and during the continuance of an Event of Default, to exercise rights and remedies hereunder, at such time as the Secured Party shall be lawfully entitled to exercise such rights and remedies, and for no other purpose, Grantor, automatically upon the occurrence and during the continuance of an Event of Default without any further action by any other Person hereby (i) grants to the Secured Party a non-exclusive license (exercisable without payment of royalty or other compensation to Grantor) to use, assign, license or sublicense any Intellectual Property now or hereafter owned by Grantor, wherever the same may be located, including in such license reasonable access to all media in which any of the licensed items may be recorded or stored and to all computer programs used for the compilation or printout thereof and (ii) to the extent permitted by the applicable license agreement, grants to the Secured Party an irrevocable, non-exclusive sub-license (exercisable only after an Event of Default has occurred and is continuing without payment of royalty or other compensation to Grantor) to use and to grant further sub-licenses, in accordance with the terms of the applicable license agreement, all Intellectual Property now or hereafter licensed or used by Grantor; provided, however, that such licenses (1) shall be subject to those exclusive Licenses granted by the Grantor in effect on the date hereof and those granted by Grantor hereafter, and (2) apply to the use of Trademarks in connection with goods and services of similar type and quality to those theretofore sold by Grantor under such Trademark.

SECTION 7.   Remedies Upon Default.   If any Event of Default shall have occurred and be continuing:

(a)     The Secured Party may exercise in respect of the Collateral, in addition to any other rights and remedies provided for herein or otherwise available to it, all of the rights and remedies of a secured party upon default under the Bankruptcy Code (whether or not the Bankruptcy Code applies to the affected Collateral), and also may (i) take absolute control of the Collateral, including, without limitation, transfer into the Secured Party's name or into the name of its nominee or nominees (to the extent the Secured Party has not theretofore done so) and thereafter receive, for the benefit of the Secured Party, all payments made thereon, give all consents, waivers and ratifications in respect thereof and otherwise act with respect thereto as though it were the outright owner thereof, (ii) require Grantor to, and Grantor hereby agrees that it will at its reasonable expense and upon the reasonable request of the Secured Party forthwith, assemble all or part of the Collateral as directed by the Secured Party and make it available to the Secured Party at a place or places to be designated by the Secured Party that is reasonably convenient to both parties, and the Secured Party may enter into and occupy any premises owned or leased by Grantor where the Collateral or any part thereof is located or assembled for a reasonable period in order to effectuate the Secured Party's rights and remedies hereunder or under law, without obligation to Grantor in respect of such occupation, and (iii) without notice except as specified below and without any obligation to prepare or process the Collateral for sale, (A) sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of the

-8-

CONFIDENTIAL                                                                 FBG_CH1_00095258

Secured Party's offices, at any exchange or broker's board or elsewhere, for cash, on credit or for future delivery, and at such price or prices and upon such other commercially reasonable terms and/or (B) lease, license or otherwise dispose of the Collateral or any part thereof upon commercially reasonable terms. Grantor agrees that, to the extent notice of sale or any other disposition of the Collateral shall be required by law, at least ten (10) days' prior notice to the Grantor of the time and place of any public sale or the time after which any private sale or other disposition of the Collateral is to be made shall constitute reasonable notification. The Secured Party shall not be obligated to make any sale or other disposition of Collateral regardless of notice of sale having been given. The Secured Party may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned. Grantor hereby waives any claims against the Secured Party arising by reason of the fact that the price at which the Collateral may have been sold at a private sale was less than the price which might have been obtained at a public sale or was less than the aggregate amount of the NY-Law Secured Obligations, so long as such sale results from a commercially reasonable sale process, even if the Secured Party accepts the first offer received and does not offer the Collateral to more than one offeree, and waives all rights that Grantor may have to require that all or any part of the Collateral be marshaled upon any sale (public or private) thereof. Grantor hereby acknowledges that (i) any such sale of the Collateral by the Secured Party shall be made without warranty, (ii) the Secured Party may specifically disclaim any warranties of title, possession, quiet enjoyment or the like, (iii) the Secured Party may bid (which bid may be, in whole or in part, in the form of cancellation of indebtedness), if permitted by law, for the purchase, lease, license or other disposition of the Collateral or any portion thereof for the account of the Secured Party and (iv) such actions set forth in clauses (i), (ii) and (iii) above shall not adversely affect the commercial reasonableness of any such sale of the Collateral.

(b)     Any cash held by the Secured Party (or its agent or designee) as Collateral and all Cash Proceeds received by the Secured Party (or its agent or designee) in respect of any sale of or collection from, or other realization upon, all or any part of the Collateral shall be applied by the Secured Party to the repayment of the outstanding NY-Law Secured Obligations.

(c)     In the event that the proceeds of any such sale, collection or realization are insufficient to pay all amounts to which the Secured Party is legally entitled, Grantor shall be liable for the deficiency, together with interest thereon at the Default Interest Rate.

(d)     Grantor hereby acknowledges that if the Secured Party complies with any applicable Laws in connection with a disposition of the Collateral, such compliance will not adversely affect the commercial reasonableness of any sale or other disposition of the Collateral.

(e)     The Secured Party shall not be required to marshal any present or future collateral security (including, but not limited to, this Agreement and the Collateral) for, or other assurances of payment of, the NY-Law Secured Obligations or any of them or to resort to such collateral security or other assurances of payment in any particular order, and all of the Secured Party's rights hereunder and in respect of such collateral security and other assurances of payment shall be cumulative and in addition to all other rights, however existing or arising. To the extent that Grantor lawfully may, Grantor hereby agrees that it will not invoke any law relating

-9-

FBG_CH1_00095259

to the marshalling of collateral which might cause delay in or impede the enforcement of the Secured Party's rights under this Agreement or under any other instrument creating or evidencing any of the NY-Law Secured Obligations or under which any of the NY-Law Secured Obligations is outstanding or by which any of the NY-Law Secured Obligations is secured or payment thereof is otherwise assured, and, to the extent that it lawfully may, Grantor hereby irrevocably waives the benefits of all such laws.

SECTION 8.    Indemnity and Expenses.

(a)    Grantor agrees to defend, protect, indemnify and hold harmless the Secured Party in accordance with Section 5.3 of the Inventory Sale Agreement.

(b)    Grantor agrees to pay to the Secured Party upon demand the amount of any and all costs and expenses in accordance with Sections 5.2 and 6.14 of the Inventory Sale Agreement.

SECTION 9.    Notices, Etc.   All notices and other communications provided for hereunder shall be given in accordance with Section 6.5 of the Inventory Sale Agreement.

SECTION 10.    Security Interest Absolute.

(a)    All rights of the Secured Party, all Encumbrances and all obligations of Grantor hereunder shall be absolute and unconditional irrespective of (i) any lack of validity or enforceability of the Inventory Sale Agreement, (ii) any change in the time, manner or place of payment of, or in any other term in respect of, all or any of the NY-Law Secured Obligations, or any other amendment or waiver of or consent to any departure from the Inventory Sale Agreement, (iii) any exchange or release of, or non-perfection of any Encumbrance on any Collateral, or any release or amendment or waiver of or consent to departure from any guaranty, for all or any of the NY-Law Secured Obligations, or (iv) any other circumstance that might otherwise constitute a defense available to, or a discharge of, Grantor in respect of the NY-Law Secured Obligations. All authorizations and agencies contained herein with respect to any of the Collateral are irrevocable and powers coupled with an interest.

SECTION 11.    Miscellaneous.

(a)    No amendment of any provision of this Agreement (including any Schedule attached hereto) shall be effective unless it is in writing and signed by Grantor and the Secured Party, and no waiver of any provision of this Agreement, and no consent to any departure by Grantor therefrom, shall be effective unless it is in writing and signed by Grantor and the Secured Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

(b)    No failure on the part of the Secured Party to exercise, and no delay in exercising, any right hereunder or under the Inventory Sale Agreement shall operate as a waiver thereof; nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right. The rights and remedies of the Secured Party provided herein and in the Inventory Sale Agreement are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law. The rights of the Secured Party are not

-10-

FBG_CH1_00095260

conditional or contingent on any attempt by such Person to exercise any of its rights against such party or against any other Person, including but not limited to, Grantor.

(c)     This Agreement shall create a continuing security interest in the Collateral and shall (i) remain in full force and effect, subject to paragraph (e) below, until the NY-Law Secured Obligations have been paid in full and (ii) be binding on Grantor and all other Persons who become bound as debtor to this Agreement in accordance with Section 9-203(d) of the Bankruptcy Code, and shall inure, together with all rights and remedies of the Secured Party hereunder, to the benefit of the Secured Party and its successors and permitted transferees and assigns.  Without limiting the generality of clause (ii) of the immediately preceding sentence, the Secured Party may assign or otherwise transfer their respective rights and obligations under this Agreement and the Inventory Sale Agreement to any other Person, and such other Person shall thereupon become vested with all of the benefits in respect thereof granted to the Secured Party herein or otherwise.  Upon any such assignment or transfer, all references in this Agreement to any Secured Party shall mean the assignee of any such Secured Party.  None of the rights or obligations of Grantor hereunder may be assigned or otherwise transferred without the prior written consent of the Secured Party, and any such assignment or transfer without such consent shall be null and void.

(d)     Upon payment in full of the NY-Law Secured Obligations by Grantor to the Secured Party, (i) subject to paragraph (e) below, this Agreement and the security interests and licenses created hereby shall automatically terminate and all rights to the Collateral shall revert to Grantor, (ii) the Secured Party will agree to authorize the filing of UCC amendments to evidence the termination of the Encumbrances so released and (iii) the Secured Party will, upon Grantor's request and at Grantor's reasonable cost and expense, (A) promptly return to Grantor (or whomsoever shall be lawfully entitled to receive the same or as a court of competent jurisdiction shall direct) such of the Collateral as shall not have been sold or otherwise disposed of or applied pursuant to the terms hereof, and (B) promptly execute and deliver to Grantor such documents and authorize such other filings as Grantor shall reasonably request to evidence such termination, in each case of the foregoing clauses (A) and (B), without representation, warranty or recourse of any kind.  In addition, upon any sale or disposition of any item of Collateral in a transaction expressly permitted hereunder, the Secured Party agrees to execute a release of its security interest in such item of Collateral, and the Secured Party shall, upon the reasonable request of Grantor and at Grantor's cost and expense, execute and deliver to Grantor such documents as Grantor shall reasonably request to evidence such release, without representation, warranty or recourse of any kind.

(e)     This Agreement shall remain in full force and effect and continue to be effective should any petition be filed by or against Grantor for liquidation or reorganization, should Grantor become insolvent or make an assignment for the benefit of any creditor or creditors or should a receiver or trustee be appointed for all or any significant part of Grantor's assets, and shall continue to be effective or be reinstated, as the case may be, if at any time payment or performance of the NY-Law Secured Obligations, or any part thereof, is, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee of the NY-Law Secured Obligations, whether as a "voidable preference," "fraudulent conveyance," or otherwise, all as though such payment or performance had not been made.  In the event that any payment, or any part thereof, is rescinded, reduced, restored or returned, the NY-Law Secured

CONFIDENTIAL                                                                                    FBG_CH1_00095261

Obligations shall be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

(f)      **THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.**

(g)      In addition to and without limitation of any of the foregoing, this Agreement shall otherwise be subject to all of terms and conditions contained in Sections 6.3 and 6.4 of the Inventory Sale Agreement, *mutatis mutandi*.

(h)      Each party hereto irrevocably and unconditionally waives any right it may have to claim or recover in any legal action, suit or proceeding with respect to this Agreement any special, exemplary, punitive or consequential damages.

(i)      Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or thereof or affecting the validity or enforceability of such provision in any other jurisdiction.

(j)      Section headings herein are included for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

(k)      This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which shall be deemed an original, but all of such counterparts taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of this Agreement by facsimile or electronic mail shall be equally effective as delivery of an original executed counterpart.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

-12-

CONFIDENTIAL

FBG_CH1_00095262

IN WITNESS WHEREOF, Grantor has caused this Agreement to be executed and delivered by its officer thereunto duly authorized, as of the date first above written.

INTERNATIONAL BRAKE INDUSTRIES, INC., as Grantor

By: _____
      Name:
      Title:

[Signature page to U.S. Security Agreement]

CONFIDENTIAL

FBG_CH1_00095263

QUALITOR INVENTORY HOLDINGS, LLC,
as the Secured Party


By: _____
       Name:
       Title:

[Signature page to U.S. Security Agreement]

CONFIDENTIAL

FBG_CH1_00095264

SCHEDULE I

LEGAL NAME; ORGANIZATIONAL IDENTIFICATION NUMBER; STATE OR
JURISDICTION OF ORGANIZATION

| Legal Name | State or Jurisdiction of Organization | Type of Organization | Organizational ID Number |
|---|---|---|---|
| International Brake Industries, Inc. | Delaware | Corporation | 2170277 |

CONFIDENTIAL                                                                    FBG_CH1_00095265

SCHEDULE II

LOCATIONS OF GRANTOR

| Grantor | Chief Place of Business | Books and Records |
|---|---|---|
| International Brake Industries, Inc. | 127 Public Square, Suite 5300 Cleveland, OH 44114 | 127 Public Square, Suite 5300 Cleveland, OH 44114 |
| | | 1840 McCullough Street, Lima, OH 45801 |
| | | 4300 Quality Drive South Bend, IN 46628 |
| | | Parque Industrial Avante Aeropuerto Apodaco Nuevo Leon, Mexico 66643 |
| | | Goggins Warehouse Federal Mogul 249 Hobson St Smithville, TN 37166 |
| | | Dahl Warehouse 14605 S Main St Gardena, CA 90248 |

CONFIDENTIAL

FBG_CH1_00095266

SCHEDULE III

UCC FINANCING STATEMENT

| Type of Filing | Grantor | Jurisdiction |
|---|---|---|
| UCC-1 Financing Statement | International Brake Industries, Inc. | Delaware |

CONFIDENTIAL                                                                      FBG_CH1_00095267

## EXHIBIT C

<u>Pledge Agreement</u>

(See attached.)

CONFIDENTIAL                                                                    FBG_CH1_00095268

Creel Draft
[*For discussion purposes only*]
December 29, 2022

CONTRATO DE PRENDA SIN TRANSMISIÓN DE POSESIÓN

Contrato de Prenda sin Transmisión de Posesión, de fecha [•] de [•] de [2023] (según el mismo sea modificado, re-expresado, adicionado o de cualquier otra forma reformado de tiempo en tiempo, el "Contrato"), que celebran International Brake Industries, Inc., como deudor prendario (el "Deudor Prendario"), y Qualitor Inventory Holdings, LLC, como acreedor prendario (en dicho carácter, junto con sus causahabientes y cesionarios, el "Acreedor Prendario"), con la comparecencia, reconocimiento y aceptación de IBI Latin America, S. de R.L. de C.V. (el "Depositario"), conforme a los siguientes Antecedentes, Declaraciones y Cláusulas.

FLOATING LIEN PLEDGE AGREEMENT

Floating Lien Pledge Agreement (*Contrato de Prenda sin Transmisión de Posesión*) entered into on [•] [•], [2023] amended, restated, supplemented or otherwise modified from time to time, the "Agreement"), by and among International Brake Industries, Inc., as pledgor (the "Pledgor"), and Qualitor Inventory Holdings, LLC, as pledgee (in such capacity, together with its successors and assigns, the "Pledgee"), with the appearance, acknowledgement and acceptance of IBI Latin America, S. de R.L. de C.V. (the "Depositary"), in accordance with the following Recitals, Representations and Warranties and Clauses.

## ANTECEDENTES

I. Con fecha [•] de [•] de [2022], First Brands Group, LLC, [Merger Sub] y TAE Brakes, LLC, entre otros, celebraron un contrato de fusión por el que First Brands Group, LLC adquirió TAE Brakes, LLC (sociedad controladora del 50% del Depositario y del 100% del Deudor Prendario) realizando una fusión de [Merger Sub], como sociedad fusionada con TAE Brakes, LLC, como sociedad fusionante (según el mismo sea modificado, modificado y reexpresado o de otra forma reformado de tiempo en tiempo, el "Convenio de Fusión").

## RECITALS

I. On [•] [•], [2022], First Brands Group, LLC, [Merger Sub] and TAE Brakes, LLC, among others, executed a merger agreement whereby First Brands Group, LLC acquired TAE Brakes, LLC (a holding company of 50% of the Depositary and 100% of the Pledgor) by effecting a merger of [Merger Sub] with and into TAE Brakes, LLC, as surviving company (as amended, amended and restated or otherwise modified from time to time, the "Merger Agreement").

II. Con fecha [•] de [•] de [2022], el Acreedor Prendario, como vendedor y el Deudor Prendario, como comprador, celebraron un contrato de compraventa de inventario, por virtud del cual el Acreedor

II. On [•] [•], [2022], the Pledgee, as seller, and the Pledgor, as buyer, entered into an inventory sale agreement, by virtue of which the Pledgee agreed to sell, grant, convey, transfer and assign to

CGCAE Doc # 541171
TD:UI

1

FBG_CH1_00095269

Prendario acordó ceder, otorgar, entregar, transferir y ceder al Deudor Prendario, la propiedad del Acreedor Prendario del inventario que se describe en el Anexo A del mismo (el "Inventario Adquirido") por el Precio de Compra Total (según dicho término se define en el Contrato de Compraventa de Inventario) (según el mismo sea modificado, modificado y reexpresado o de otra forma reformado de tiempo en tiempo, el "Contrato de Compraventa de Inventario").

Pledgor, all of Pledgee's right, title and interest in inventory set forth in Exhibit A thereto (the "Purchased Inventory") for the Aggregate Purchase Price (as defined in the Inventory Sale Agreement) (as amended, amended and restated or otherwise modified from time to time the "Inventory Sale Agreement").

III. De conformidad con lo previsto en el Contrato de Compraventa de Inventario, el Deudor Prendario celebra el presente Contrato con la finalidad de otorgar al Acreedor Prendario, una prenda en primer lugar y grado de prelación sobre los Bienes Pignorados, en términos del presente Contrato, para garantizar el debido y puntual cumplimiento, pago y satisfacción de todas y cada una de las Obligaciones Garantizadas bajo los Documentos de la Operación.

III. In accordance with the Inventory Sale Agreement, the Pledgor is entering into this Agreement in order to grant to the Pledgee, a first priority pledge over the Pledged Assets, in terms hereof, to secure the due and timely payment, performance and satisfaction of any and all of the Secured Obligations under the Transaction Documents.

DECLARACIONES

REPRESENTATIONS

I. El Deudor Prendario en este acto declara en favor del Acreedor Prendario, que en esta fecha:

I. The Pledgor hereby represents in favor of the Pledgee, that on the date hereof:

(a) es una sociedad debidamente constituida y válidamente existente conforme a las leyes del Estado de Delaware, Estados Unidos de América;

(a) it is a corporation duly incorporated and validly existing under the laws of the State of Delaware, United States of America;

(b) ninguno de los Bienes Pignorados se encuentra o está sujeto a algún convenio, contrato, o acuerdo alguno, u otro tipo de documento o instrumento de cualquier naturaleza, conforme al cual (i) se otorgue en favor de cualquier tercero (x) opción o derecho alguno para usar, disfrutar, poseer o de cualquier otra manera disponer los Bienes Pignorados o

(b) none of the Pledged Assets consist of or is subject to any contract, agreement or document of any kind, which by its terms, (i) grants to a third party (x) any option or right of any kind to use, enjoy, possess or otherwise exercise acts of ownership over the Pledged Assets or any portion thereof, or (y) any option or right to buy or

2

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 250**
**Page 49 of 98**

cualquier parte de los mismos, o (y) opción o derecho alguno para comprar o de cualquier otra forma adquirir los Bienes Pignorados o cualquier parte de los mismos, o (z) opción o derecho alguno para administrar o de cualquier otra forma operar los Bienes Pignorados o cualquier parte de los mismos; o (ii) se restrinja o prohíba de manera alguna cualquier Gravamen, cesión, transmisión, uso o ejercicio de dichos Bienes Pignorados o cualquier parte de los mismos, excepto, en cada caso de los anteriores, en relación con este Contrato y los demás Documentos de la Operación;

otherwise acquire the Pledged Assets or any portion thereof, or (z) any option or right to administrate or otherwise manage the Pledged Assets or any portion thereof; or (ii) restricts or otherwise prohibits any Lien, assignment, transfer, use or exercise of such Pledged Assets or any portion thereof, except, in each case, of the foregoing in connection with this Agreement and the other Transaction Documents;

(c)    el Contrato de Maquila (según dicho término se define más adelante) ha sido celebrado entre el Deudor Prendario y el Depositario, conforme al cual los Bienes Pignorados han sido debidamente importados (y/o continuarán siendo debidamente importados, a menos que sean exportados al extranjero o importados de manera definitiva) de manera temporal a territorio mexicano de conformidad con el Programa de Maquila (según dicho término se define más adelante);

(c)    the Maquila Agreement (as such term is defined below) has been entered into between the Pledgor and the Depositary, pursuant to which the Pledged Assets have been duly imported (and/or will continue to be duly imported, unless exported back abroad or imported on a definitive basis) on a temporary basis into Mexican territory in accordance with the Maquila Program (as such term is defined below);

(d)    es el único y legítimo propietario y beneficiario, y tiene la legítima titularidad sobre los Bienes Pignorados, mismos que, se encuentran libres de cualquier Gravamen y de cualquier otro documento conforme a cuyos términos se restrinja o prohíba de cualquier forma la constitución de Gravámenes sobre, o la cesión, transmisión, uso o ejercicio de dichos Bienes Pignorados o cualquier parte de los mismos, mismos que han sido debida y legalmente importados a México bajo el régimen de importación temporal;

(d)    the Pledgor is the sole, legal and beneficial owner of the Pledged Assets, are free and clear of any Liens and/or any other document whatsoever which by its terms restrict or otherwise prohibit any Lien, assignment, transfer, use or exercise of such Pledged Assets or any portion thereof, which have been duly and legally imported into Mexico under the temporary importation regime;

(e)    mantiene una relación comercial de manufactura con el Depositario, según

(e)    maintains a manufacturing business relationship with the

3

CONFIDENTIAL

FBG_CH1_00095271

consta en el Contrato de Maquila celebrado entre el Deudor Prendario y el Depositario, en virtud del cual el Deudor Prendario proporciona al Depositario la materia prima para los Servicios a ser prestados conforme al Contrato de Maquila;

(f) no tiene conocimiento de que exista amenaza o intención, acción, demanda, reclamación, requerimiento o procedimiento alguno ante cualquier Autoridad Gubernamental que afecte o pudiere afectar (i) los Bienes Pignorados o cualquier parte de los mismos; (ii) la legalidad, validez o exigibilidad del presente Contrato, de la Garantía Prendaria creada conforme al mismo y/o de cualquiera de las obligaciones del Deudor Prendario derivadas de o relacionadas con el presente Contrato; y/o (iii) su legítima y válida titularidad y propiedad sobre los Bienes Pignorados;

(g) es su intención y deseo otorgar una prenda sin transmisión de posesión en primer lugar y grado de prelación sobre los Bienes Pignorados en favor del Acreedor Prendario de conformidad con el presente Contrato, para garantizar el debido, puntual y total cumplimiento, pago y satisfacción de todas y cada una de las Obligaciones Garantizadas;

(h) los Bienes Pignorados se encuentran asegurados contra los riesgos que habitualmente mantienen las empresas que se dedican al mismo negocio o a uno similar y que operan en el mismo lugar o en lugares similares, y el Deudor Prendario ha pagado puntualmente y en su totalidad todas las primas de seguro y demás pagos exigibles y pagaderos con respecto a las pólizas de seguro correspondientes, según corresponda,

Depositary, as evidenced by the Maquila Agreement executed between the Pledgor and the Depositary, pursuant to which the Pledgor provides to the Depositary the raw material for the Services to be provided under the Maquila Agreement;

(f) it has no knowledge of any threatened action, claim, requirement or proceeding before any Governmental Authority that affects or could affect (i) the Pledged Assets or any portion thereof; (ii) the legality, validity or enforceability of this Agreement, the Security Interest created hereunder and/or any of the obligations of the Pledgor arising from or in connection with this Agreement; and/or (iii) the legal and valid title and ownership of the Pledgor in and to the Pledged Assets;

(g) it is its intention and desire to grant a first priority floating lien pledge over the Pledged Assets in favor of the Pledgee, in accordance with this Agreement, in order to secure the due and timely payment, performance and satisfaction in full of any and all of the Secured Obligations;

(h) the Pledged Assets are insured against risks customarily maintained by companies engaged in the same or similar businesses operating in the same or similar locations, and the Pledgor has timely and fully paid all insurance premiums and other payments due and payable in connection with the corresponding insurance policies, as applicable, which policies are in full force and effect;

4

FBG_CH1_00095272

mismas que se encuentran en pleno vigor y efecto;

(i)      ni el Deudor Prendario ni alguna de sus propiedades (incluyendo los Bienes Pignorados) gozan de inmunidad de jurisdicción de cualquier tribunal o de cualquier procedimiento legal (ya sea a través de emplazamiento, embargo precautorio, embargo definitivo o cualquier otro procedimiento) de conformidad con las leyes de México;

(j)      la persona que celebra el presente Contrato en nombre y representación del Deudor Prendario tiene todos los poderes y facultades suficientes, así como las autorizaciones necesarias (corporativas, estatutarias u otras) para celebrar válidamente el presente Contrato en nombre y representación del Deudor Prendario y para obligarlo válidamente en los términos del mismo, y dichos poderes, facultades y autorizaciones se encuentran en pleno vigor y efecto y no han sido revocadas, modificadas o limitadas en forma alguna a la fecha de firma del presente Contrato;

(k)      todos los Bienes Pignorados provienen de fuentes legales y lícitas, siendo el producto de actividades lícitas, y no existe una relación entre el origen, procedencia o destino de dichos Bienes Pignorados o de sus productos, y actividades ilegales o de terrorismo;

(l)      reconoce y acuerda que (i) la exactitud y veracidad de sus declaraciones contenidas en el presente Contrato; y (ii) la validez, eficacia y exigibilidad de la Garantía Prendaria, así como del presente Contrato, constituyen un motivo determinante de la voluntad del Acreedor Prendario para celebrar el presente

(i)      neither the Pledgor nor any of its properties (including the Pledged Assets) is entitled to any immunity from jurisdiction of any court or from any legal proceeding (whether through service of process, attachment prior to judgment, attachment in aid of execution or any other proceeding) pursuant to the laws of Mexico;

(j)      the individual executing this Agreement in the name and on behalf of the Pledgor have all sufficient powers and authorities, as well as the necessary authorizations (corporate, statutory or otherwise) to validly enter into this Agreement in the name and on behalf of such Pledgor and to bind it in the terms hereof, and such powers, authorities and authorizations are in full force and effect and have not been revoked, modified or limited in any manner to the date hereof;

(k)      all of the Pledged Assets come from legal and lawful sources and is the product of lawful activities, and there is no link between the origin, source or allocation of such Pledged Assets or their products, and illegal or terrorist activities;

(l)      it acknowledges and agrees that (i) the correctness and accuracy of its representations and warranties contained herein; and (ii) the validity, binding effect and enforceability of the Security Interest, as well as of this Agreement, constitute an essential inducement for the Pledgee to enter into

5

CONFIDENTIAL

FBG_CH1_00095273

Contrato y los demás Documentos de la Operación; y

this Agreement and the rest of the Transaction Documents; and

(m)   el presente Contrato y la Garantía Prendaria que se constituye conforme al mismo constituyen una garantía legal, en primer lugar y grado de prelación, eficaz, válida y exigible sobre los Bienes Pignorados.

(m)   this Agreement and the Security Interest granted hereunder constitute a legal, valid, binding and enforceable first priority security interest over the Pledged Assets.

II. El Acreedor Prendario en este acto declara, a través de su apoderado, que en la fecha del presente:

II. The Pledgee hereby represents and warrants, through its attorney-in-fact, that on the date hereof:

(a)   es una sociedad constituida y válidamente existente de conformidad con las leyes del Estado de Delaware, Estados Unidos de América; y

(a) it is a company organized and validly existing under the laws of the State of Delaware, United States of America; and

(b) la persona que celebra el presente Contrato en su nombre y representación cuenta con todos los poderes y facultades suficientes, así como con las autorizaciones corporativas necesarias para celebrar válidamente el presente Contrato en su nombre y representación, y para obligarlo válidamente en los términos del mismo, y que dichos poderes, facultades y autorizaciones corporativas no le han sido revocadas, modificadas o limitadas en forma alguna a la fecha del presente Contrato.

(b)   the individual executing this Agreement in its name and on its behalf has all sufficient powers and authorities, as well as the necessary corporate authorizations to validly execute this Agreement in its name and on its behalf and to validly bind it under the terms hereof, and such powers, authorities and corporate authorizations have not been revoked, modified or limited in any manner to the date hereof.

EN VIRTUD DE LO ANTERIOR, con base en los Antecedentes y en las Declaraciones contenidas en el presente Contrato, las partes otorgan las siguientes:

NOW, THEREFORE, based on the Recitals and Representations and Warranties contained herein, the parties hereto agree as follows:

<u>CLÁUSULAS</u>

<u>CLAUSES</u>

Primera. <u>Ciertos Términos Definidos.</u>

First. <u>Certain Defined Terms.</u>

(a)   A menos que se disponga lo contrario en el presente Contrato, o a menos que el contexto exija lo contrario, los términos en mayúsculas que se utilicen

(a)   Unless otherwise provided herein, or unless the context otherwise requires, capitalized terms used herein, and not defined otherwise, shall have

6

CONFIDENTIAL

FBG_CH1_00095274

en el presente documento, y que no se definan de otro modo, tendrán el significado respectivo que se atribuya a dichos términos en los demás Documentos de la Operación, según sea aplicable. Según se utilizan en este Contrato, los siguientes términos tendrán los siguientes significados:

the respective meanings ascribed to such terms in the rest of the Transaction Documentos, as applicable. As used in this Agreement, the following terms shall have the following meanings:

"Acreedor Prendario" tiene el significado que se le atribuye a dicho término en el proemio de este Contrato.

"Pledgee" has the meaning set forth in the preamble of this Agreement.

"Autoridad Gubernamental" significa cualquiera de los poderes ejecutivo, legislativo o judicial, sea federal o estatal, así como órganos de gobierno municipales, agencias gubernamentales, secretarías, departamentos administrativos, autoridad regulatoria, registro, entidad gubernamental o tribunal (incluyendo, de manera enunciativa mas no limitativa, autoridades educativas, bancarias y fiscales), órganos descentralizados o equivalentes en cualquier estado, entidad federal o cualquier subdivisión política, órgano gubernamental, autoridad (incluyendo bancos centrales o autoridades fiscales) o entidades que ejerzan funciones de gobierno, sean ejecutivas, legislativas o judiciales, ya sea nacionales o extranjeras.

"Governmental Authority" means any of the executive, legislative or judicial powers, whether federal or state, as well as any municipal government body, any government agency, secretariat, administrative department, regulatory authority, registry, governmental entity or court (including, without limitation, educational, banking and fiscal authorities), decentralized body or an equivalent entity of any state, federal entity or other political subdivision thereof, or any governmental body, authority (including any central bank or fiscal authority) or any entity that exercises government functions, whether executive, legislative or judicial, whether national or foreign.

"Bienes Pignorados" significan todos los bienes que constituyan el inventario (incluyendo el Inventario Adquirido) del Deudor Prendario ubicados en México, que actualmente sean propiedad del Deudor Prendario, o que el Deudor Prendario adquiera en el futuro por cualquier medio, incluyendo sin limitación, (i) todos los productos, accesiones, ganancias, ingresos, sustituciones y reemplazos de cualquiera de dichos bienes en México (incluyendo, sin limitación, cualquier cuenta o producto

"Pledged Assets" means all assets that comprise inventory (including the Purchased Inventory) of the Pledgor located in Mexico, currently owned by the Pledgor, or acquired by the Pledgor or arising in the future, including without limitation, (i) all proceeds, products, accessions, profits, income, substitutions and replacements of and to any of such assets in Mexico (including, without limitation, any accounts or proceeds of insurance thereon and all causes of action, claims and warranties

7

FBG_CH1_00095275

relacionado con seguros y todas las causas de acción, reclamaciones y garantías que ahora o en el futuro tenga el Deudor Prendario) y todos los libros, correspondencia, archivos y otros registros en posesión o bajo el control del Deudor Prendario o de cualquier afiliada del Deudor Prendario que sean necesarios o útiles para el cobro o realización de los mismos; y (ii) todos los ingresos, incluidos los ingresos en efectivo, y los productos de todos y cada uno de los anteriores.

now or hereafter held by the Pledgor), and all books, correspondence, files and other records in the possession or under the control of Pledgor or any affiliate necessary or helpful in the collection or realization thereof; and (ii) all proceeds, including all cash proceeds and noncash proceeds, and products of any and all of the foregoing.

"Código de Comercio" significa el Código de Comercio de México.

"Commercial Code" means the Mexican Commercial Code.

"Contrato" significa el presente contrato de prenda sin transmisión de posesión, según el mismo sea modificado, reexpresado, adicionado o de cualquier otra forma reformado de tiempo en tiempo.

"Agreement" means this floating lien pledge agreement (*Contrato de Prenda sin Transmisión de Posesión*), as amended, amended and restated, supplemented or otherwise modified from time to time.

"Contrato de Compraventa de Inventario" tiene el significado que se le atribuye a dicho término en el Antecedente II de este Contrato.

"Inventory Sale Agreement" has the meaning set forth in Recital II of this Agreement.

"Contrato de Maquila" significa la referencia al contrato de maquila que se adjunta en el Anexo "A" del presente Contrato, según el mismo sea modificado de tiempo en tiempo.

"Maquila Agreement" means the Maquila Agreement attached hereto as Exhibit "A", as amended from time to time.

"Convenio de Fusión" tiene el significado que se le atribuye a dicho término en el Antecedente I de este Contrato.

"Merger Agreement" has the meaning set forth in Recital I of this Agreement.

"Depositario" tiene el significado que se le atribuye a dicho término en el proemio de este Contrato.

"Depositary" has the meaning set forth in the preamble to this Agreement.

"Deudor Prendario" tiene el significado que se le atribuye a dicho término en el proemio de este Contrato.

"Pledgor" has the meaning set forth in the preamble to this Agreement.

8

CONFIDENTIAL

FBG_CH1_00095276

"Día Hábil" significa cualquier día (distinto a cualquier sábado o domingo) en el que los bancos comerciales en México y/o en Nueva York, Estados Unidos de América, se encuentren abiertos al público.

"Business Day" means any day (other than a Saturday or Sunday) on which commercial banks are open for general business in Mexico and/or in New York, United States of America.

"Documentos de la Operación" significa la referencia conjunta al presente Contrato, el Convenio de Fusión y el Contrato de Compraventa de Inventario.

"Transaction Documents" means the joint reference to this Agreement, the Merger Agreement and the Inventory Sale Agreement.

"Evento de Incumplimiento" significa (i) el incumplimiento por parte del Deudor Prendario de cumplir, realizar u observar cualquiera de sus obligaciones conforme a cualquiera de los Documentos de la Operación (incluyendo el presente Contrato) en los términos establecidos en los mismos; y (ii) si cualquier declaración, garantía o afirmación hecha o considerada como hecha por el Deudor Prendario o el Depositario conforme a cualquiera de los Documentos de la Operación (incluyendo el presente Contrato), resulta ser materialmente falsa o imprecisa en la fecha en que dicha declaración fue realizada o se consideró realizada.

"Event of Default" means (i) the failure of the Pledgor to comply, perform or observe any of its obligations under any of the Transaction Documents (including this Agreement) in the terms set forth therein; and (ii) if any representation or warranty or statement made or deemed made by the Pledgor or the Depositary under any of the Transaction Documents (including this Agreement) shall have been false or misleading in any material respect as of the date made or deemed made.

"Garantía Prendaria" tiene el significado que se le atribuye a dicho término en el párrafo (a) de la Cláusula Segunda de este Contrato.

"Security Interest" has the meaning set forth in paragraph (a) of Clause Second of this Agreement.

"Gravamen" significa cualquier hipoteca, prenda, garantía, carga, acuerdo o contrato de garantía, fideicomiso de garantía, preferencia, prioridad, embargo u otro reclamo de cualquier tipo o naturaleza (incluyendo cualquier venta condicional u otro acuerdo de reserva de dominio y cualquier arrendamiento que tenga sustancialmente el mismo efecto que cualquiera de los anteriores).

"Lien" means any mortgage, pledge, lien, security interest, charge, security agreement or arrangement, security trust, preference, priority, encumbrance or other claim of any kind or nature whatsoever (including any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing).

"Inventario significa todo el inventario del Deudor Prendario, ya sea que actualmente

"Inventory" means all the inventory of the Pledgor, whether now owned or

9

FBG_CH1_00095277

sea de su propiedad o que adquiera en el futuro, ubicados en México, incluyendo sin limitación, todos los bienes que tenga para su venta o arrendamiento o que hayan sido suministrados o a ser suministrados conforme a contratos de servicios, todos los bienes que tenga para muestra o demostración, bienes en renta o consignación, refacciones, repuestos, bienes reposeídos, toda la materia prima, bienes terminados y en proceso de terminación y partes utilizadas o consumidas por el Deudor Prendario en sus negocios, conjuntamente con todos los documentos, documentos de propiedad, recibos de bodegas, bonos de prenda, conocimientos de embarque, certificados de depósito u órdenes para la entrega de todo o cualquier parte de los conceptos anteriormente mencionados.

hereafter acquired, located in Mexico, including, without limitation, all assets held for sale or lease or furnished or to be furnished under services agreements, all assets held for display or demonstration, assets on lease or consignment, spare parts, repair parts, returned and repossessed inventory, all raw materials, work-in-process, finished inventory and supplies used or consumed in the Pledgor business together with all documents, documents of title, warehouse receipts, pledge bonds, bills of lading, deposit certificates or orders for the delivery of all, or any portion, of the foregoing.

"Inventario Adquirido" tiene el significado que se le atribuye a dicho término en el Antecedente II de este Contrato.

"Purchased Inventory" has the meaning set forth in Recital II of this Agreement.

"Ley" significa la Ley General de Títulos y Operaciones de Crédito.

"Law" means the General Law of Negotiable Instruments and Credit Transactions (*Ley General de Títulos y Operaciones de Crédito*).

"México" significa los Estados Unidos Mexicanos.

"Mexico" means the United Mexican States.

"Notificación de Terminación" tiene el significado que se le atribuye a dicho término en la Cláusula Tercera del presente Contrato.

"Termination Notice" has the meaning specified in Clause Third of this Agreement.

"Obligaciones Garantizadas" tiene el significado que se le atribuye al término "*Mexican-Law Secured Obligations*" ("Obligaciones Garantizadas bajo Ley de de México") en el Contrato de Compraventa de Inventario.

"Secured Obligations" has the meaning assigned to the term "Mexican-Law Secured Obligations" in the Inventory Sale Agreement.

10

FBG_CH1_00095278

"Persona" significa cualquier persona física o moral, fideicomiso, co-inversión, sociedad de personas o por acciones, Autoridad Gubernamental y cualquier otra entidad de cualquier naturaleza.

"Person" means any individual or entity, trust, joint venture, partnership, corporation, Governmental Authority or any other entity of any nature whatsoever.

"Pesos" o "MXN$" significa la moneda de curso legal en México.

"Pesos" or "MXN$" means the legal currency of Mexico.

"Programa de Maquila" significa el Programa para la Industria Manufacturera, Maquiladora y de Servicio de Exportación (IMMEX) implementado por la Secretaría de Economía de México.

"Maquila Program" means the Program for the Manufacturing, Maquiladora and Export Service Industry (IMMEX) implemented by the Mexican Ministry of Economy.

"Requerimientos Legales" significa todas y cada una de las leyes (incluyendo leyes ambientales), reglamentos, regulaciones, disposiciones, códigos, decretos, órdenes, condiciones, restricciones y demás requerimientos legales vigentes, emitidos o promulgados por cualquier Autoridad Gubernamental mexicana, ya sea de carácter federal, estatal y/o municipal, relacionados con o aplicables a los Bienes Pignorados (o cualquier parte de los mismos), incluyendo, sin limitación, el diseño, el uso y mantenimiento de los Bienes Pignorados (o cualquier parte de los mismos), según dichos requerimientos legales sean modificados, ya sea parcial o totalmente, adicionados, sustituidos o de cualquier otra forma reformados en cualquier momento.

"Legal Requirements" means any and all laws, rules, regulations, provisions, codes, decrees, orders, conditions, restrictions and other legal requirements in force, issued or promulgated by any Governmental Authority, either federal, local and/or municipal, related to or applicable to the Pledged Assets (or any portion thereof), including, without limitation, the design, use and maintenance of the Pledged Assets (or any portion thereof), as such legal requirements may be amended, amended and restated, supplemented, substituted or otherwise modified from time to time.

"RUG" significa el Registro Único de Garantías Mobiliarias.

"RUG" means the Sole Registry of Liens Over Movable Assets (*Registro Único de Garantías Mobiliarias*).

"Servicios" significa la fabricación, manufactura, transformación, ensamble, sub-ensamble o prueba en México de las Materias Primas, con el fin de ensamblar, manufacturar, reparar y/o probar los productos finales que se le autoricen al Depositario bajo el Programa de Maquila

"Services" means the fabrication, manufacture, transformation, assembly, subassembly or testing in Mexico of the Raw Materials, for purposes of assembling, manufacturing, repairing and/or testing the final products authorized to the Depositary under the

11

FBG_CH1_00095279

correspondiente, a ser proporcionados de conformidad con el Contrato de Maquila.

corresponding Maquila Program and pursuant to the Maquila Agreement.

"Transmisión Permitida" tiene el significado que se le atribuye a dicho término en el párrafo (b) de la Cláusula Quinta del presente Contrato.

"Permitted Transfer" has the meaning set forth in paragraph (b) of Clause Fifth of this Agreement.

"Ubicaciones" significa los almacenes u otras ubicaciones en donde deban ubicarse los Bienes Pignorados (según sea autorizado por el Acreedor Prendario) descritos en el Anexo "B" del presente Contrato o cualquier otra ubicación que sea autorizada por escrito por el Acreedor Prendario.

"Locations" means the warehouses or other locations where the Pledged Assets shall be located (as further agreed by the Pledgee only) described in Exhibit "B" hereto or any other further location as agreed in writing by the Pledgee.

(b)    Usos. Los términos definidos en esta Cláusula Primera aplicarán tanto a la forma singular como al plural de dichos términos. Cuando el contexto así lo requiera, cualquier pronombre incluirá la forma masculina, femenina o neutral correspondiente. Salvo que expresamente se establezca lo contrario, las palabras "en el presente", "del presente" y "conforme al presente", y palabras de significado similar harán referencia a este Contrato en su conjunto y no a alguna disposición particular del presente Contrato, y todas las referencias a Cláusulas, secciones, incisos y Anexos se refieren a Cláusulas, secciones, incisos y Anexos de este Contrato, salvo que el contexto requiera lo contrario. Según se usan en el presente Contrato, y salvo que se indique lo contrario, en cualquier certificado o documento firmado de conformidad con el presente Contrato, (i) las palabras "incluyen", "incluye" e "incluyendo" se entenderán que van seguidas de las palabras "sin limitación alguna", (ii) la palabra "incurrir" será interpretada para significar incurrir, crear, emitir, asumir, asumir responsabilidad en relación con, o permitir que exista (y las palabras

(b)    Usage. The definitions in this Clause One shall apply equally to both the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "hereof", "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement, unless otherwise expressly indicated, and all references in this Agreement to Clauses, sections, paragraphs and Exhibits shall be deemed to be references to Clauses, sections paragraphs and Exhibits of this Agreement, unless the context shall otherwise require. As used herein and unless otherwise indicated any certificate or other document made or delivered pursuant hereto, (i) the words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation", (ii) the word "incur" shall be construed to mean incur, create, issue, assume, become liable in respect of or suffer to exist (and

12

CONFIDENTIAL

FBG_CH1_00095280

"incurrió" y "incurrir en" tendrán significados correlativos), (iii) salvo que expresamente se establezca lo contrario, las referencias a cualquier contrato incluye la referencia a dicho contrato, según el mismo sea modificado, adicionado, re-expresado o de cualquier otra forma reformado de tiempo en tiempo; y (iv) referencias a cualquier estatuto, ley o reglamento se entenderá que incluyen las reformas a los mismos de tiempo en tiempo o a cualquier estatutos, ley o reglamento sucesor de los mismos.

the words "incurred" and "incurrence" shall have correlative meanings), (iii) references to agreements shall, unless otherwise specified, be deemed to refer to such agreements as amended, supplemented, restated or otherwise modified from time to time; and (iv) references to any statute, law or regulation shall be deemed to include any amendments thereto from time to time or any successor statute, law or regulation thereof.

Segunda.   Garantía Prendaria; Otorgamiento de la Garantía Prendaria. Depositario.

Second. Security Interest; Granting of the Security Interest. Depositary.

(a)   De conformidad con el Título Segundo, Capítulo IV, Sección Séptima de la Ley, el Deudor Prendario en este acto otorgan una prenda sin transmisión de posesión en primer lugar y grado de prelación en favor del Acreedor Prendario (la "Garantía Prendaria"), sobre la totalidad de los Bienes Pignorados actualmente propiedad del Deudor Prendario o que el Deudor Prendario adquiera en el futuro, cualquiera que sea su ubicación, con todo cuanto de hecho y por derecho les corresponda, para garantizar el debido y puntual cumplimiento, pago y satisfacción a su vencimiento (ya sea en su vencimiento programado, por vencimiento anticipado o por cualquier otro motivo) de todas y cada una de las Obligaciones Garantizadas.

(a)   In accordance with Second Title, Chapter IV, Section Seventh of the Law, the Pledgor hereby grants a first priority pledge without transfer of possession and security interest to and for the Pledgee (the "Security Interest"), in and to all the Pledged Assets now or hereafter owned or acquired by the Pledgor, with everything that corresponds thereto by law or in fact, in order to secure the due and timely payment, performance and satisfaction when due (whether at stated maturity, by acceleration or otherwise) of any and all of the Secured Obligations.

(b)   A efecto de perfeccionar la Garantía Prendaria sobre los Bienes Pignorados de conformidad con lo dispuesto en los Artículos 365 y 366 de la Ley y al Artículo 32 bis 1 del Código de Comercio, el Deudor Prendario en este acto conviene y se obliga a (i) en la fecha de firma del presente

(b)   For purposes of perfecting the Security Interest over the Pledged Assets, pursuant to Articles 365 and 366 of the Law and Article 32 bis 1 of the Commercial Code, the Pledgor hereby covenants and agrees to (i) on the date hereof, ratify the signatures of this

13

FBG_CH1_00095281

Contrato, ratificar las firmas del mismo ante fedatario, y (ii) tan pronto como sea posible pero en todo caso dentro de los 2 (dos) Días Hábiles siguientes a partir de la fecha en que se hayan ratificado las firmas del presente Contrato ante notario público en México, (y) presentar, por conducto del notario público mexicano y/o cualquier otro fedatario público mexicano que el Deudor Prendario y el Acreedor Prendario designen, el presente Contrato para inscripción en el RUG, y (z) entregar al Acreedor Prendario copia de la boleta de inscripción emitida electrónicamente por el RUG, documentando dicha inscripción. Para dichos efectos, el Deudor Prendario y el Acreedor Prendario en este acto y desde este momento autorizan e instruyen al notario público ante el cual el presente Contrato sea ratificado y/o cualquier otro fedatario público al que le otorguen una autorización expresa y por escrito, para que inscriba el mismo ante el RUG a más tardar en la fecha referida. El Deudor Prendario se obliga a (i) proporcionar a dicho notario público los montos que sean necesarios, en su caso, para cubrir el pago de los derechos por concepto del trámite de inscripción del presente Contrato en el RUG; y (ii) coadyuvar con el Acreedor Prendario y/o el notario público y suscribir todos los documentos necesarios que le solicite el Acreedor Prendario y/o dicho notario público, a efecto de que cualquiera de éstos pueda realizar cualquier trámite relacionado con lo anterior.

Agreement before a notary public, and (ii) as soon as possible but in any event within the 2 (two) Business Days following the date on which the signatures of this Agreement have been ratified before a Mexican notary public, (y) file, through a Mexican notary public and/or any other Mexican notary public that the Pledgor and Pledgee designate, this Agreement for registration with the RUG, and (z) deliver to the Pledgee the electronic registration slip issued by the RUG evidencing such registration. For such purposes, the Pledgor and the Pledgee hereby authorize and instruct the notary public before whom this Agreement is ratified and/or any other notary public to whom they grant an express written authorization, to register this Agreement with the RUG within the term provided above. The Pledgor shall (i) provide the notary public with the amounts needed, if applicable, to pay any fees related to the registration of this Agreement in the RUG; and (ii) cooperate with the Pledgee and/or the notary public and execute any and all necessary documents that the Pledgee and/or such notary public may require, in order for any of the aforementioned to carry out any act in connection with the foregoing.

(c) Depositario. El Depositario en este acto ratifica su carácter de depositario de los Bienes Pignorados y reconoce su obligación de conservarlos, así como de mantenerlos plenamente identificados, guardarlos y custodiarlos de conformidad con (y) los artículos 2516, 2522, 2523 del Código Civil Federal y sus correlativos de

(c) Depositary. The Depositary hereby ratifies its capacity as depositary of the Pledged Assets and acknowledges its obligation to keep them, as well as to maintain them duly identified, save them and guard them pursuant to the terms of (y) articles 2516, 2522, 2523 of the Federal Civil Code (*Código Civil*

14

FBG_CH1_00095282

**DEBTORS' EXHIBIT NO. 250**
**Page 61 of 98**

los demás Códigos Civiles de los Estados de México y la Ciudad de México, y (z) los artículos 332, 333, 334, 335, 336 y demás relativos del Código de Comercio y demás disposiciones legales aplicables.

*Federal de México*) and its correlative articles to the Civil Codes of the States of Mexico, as well as the Civil Code for Mexico City, and (z) articles 332, 333, 334, 335, 336 and other relative provisions of the Commercial Code and other applicable legal provisions.

Sin perjuicio de lo establecido en el párrafo anterior, el Acreedor Prendario expresamente acuerda y reconoce que el Depositario estará facultado para usar y disponer de los Bienes Pignorados única y exclusivamente para los fines específicos de cumplir con sus obligaciones bajo el Contrato de Maquila que consisten en la fabricación, manufactura, transformación, ensamble, acabado, entre otros, de todo tipo de partes, componentes, aparatos, dispositivos y productos para diversos usos y aplicaciones, en beneficio del Deudor Prendario y de conformidad con lo previsto en la Cláusula Quinta siguiente del presente Contrato.

Notwithstanding the provisions of the preceding paragraph, the Pledgee agrees and acknowledges that the Depositary is entitled to possess and use the Pledged Assets only and exclusively for the specific purposes to perform its obligations under the Maquila Agreements consisting of the fabrication, manufacturing, transformation, assembly, finishing and other services for goods, parts, components, devices and related parts for different uses and applications, for the benefit of the Pledgor and in accordance with in terms of the provisions set forth in Clause Fifth of this Agreement.

Para efectos del artículo 361 de la Ley, el Acreedor Prendario otorga su consentimiento para que el Deudor Prendario transfiera, directa o indirectamente, y de conformidad con lo previsto en el presente Contrato, la posesión de los Bienes Pignorados al Depositario, según corresponda. Las partes acuerdan que, salvo por lo establecido en la Cláusula Quinta, inciso (b) del presente Contrato, el Depositario conservará y mantendrá, directa o indirectamente, los Bienes Pignorados en las Ubicaciones. Asimismo, el Depositario reconocen que no tendrá derecho a recibir compensación alguna por el cumplimiento de sus obligaciones bajo el presente Contrato, salvo por lo establecido en el Contrato de Maquila.

For purposes of article 361 of the Law, the Pledgee hereby grants its consent to the Pledgor transfer, directly or indirectly, pursuant to the terms hereof, the possession of the Pledged Assets to the Depositary, as applicable. The parties agree that, except as set forth in Clause Fifth, paragraph (b) hereof, the Depositary shall maintain the Pledged Assets at the Locations. Additionally, the Depositary acknowledges that it shall not be entitled to receive any compensation for the performance of their obligations under this Agreement, except as set forth in the Maquila Agreement.

15

CONFIDENTIAL

FBG_CH1_00095283

El Deudor Prendario conviene y se obliga a, simultáneamente a la celebración del presente Contrato, (I) otorgar en favor del Acreedor Prendario, en escritura pública ante notario público mexicano, un poder especial irrevocable en términos del formato adjunto como Anexo "C", para que en nombre y representación del Deudor Prendario o de cualquier otra manera, únicamente en caso de que ocurra un Evento de Incumplimiento, el Acreedor Prendario pueda llevar a cabo (1) todas las acciones que sean necesarias o convenientes para preservar cualesquier derechos del Acreedor Prendario respecto de los Bienes Pignorados; y (2) todos los actos que sean necesarios o convenientes para, y firmar, reconocer y/o entregar todos y cualesquier actos, documentos, escrituras, cesiones, contratos de prenda, contratos de garantía, y otros documentos requeridos para (i) perfeccionar, proteger, confirmar y/o mantener la Garantía Prendaria otorgada conforme a este Contrato, y/o (ii) llevar a cabo el objeto o facilitar la realización de los términos de este Contrato, así como permitir que el Acreedor Prendario ejerza sus derechos, acciones y recursos conforme a este Contrato y/o la legislación aplicable, y/o (iii) registrar este Contrato y/o cualquier operación contemplada en el mismo (incluyendo, sin limitación, la Garantía Prendaria), en todos los registros, oficinas u oficinas de archivo necesarias o aplicables; y/o (iv) exigir el pago de, cobre, demande el pago de, recupere, acumule, combine, reciba, otorgue y emita cartas de pago y recibos por cantidades debidas y a ser debidas conforme a o respecto de cualquiera de los Bienes Pignorados; y/o (v) recibir, endosar y cobrar cualesquier títulos de crédito, cartas de porte, facturas, certificados de depósito, cesiones, verificaciones y notificaciones en relación con los documentos relacionados a los

The Pledgor hereby covenants and agrees to, concurrently upon the execution of this Agreement, (I) grant in favor of the Pledgee, in the form of a public deed and in the presence of a Mexican notary public, a special irrevocable power of attorney with full authority in terms of the form attached hereto as Exhibit "C", so that in the name and on behalf of the Pledgor or otherwise, only upon the occurrence of an Event of Default, the Pledgee may carry out (1) all actions as may be necessary or convenient to preserve any rights of the Pledgee in respect of the Pledged Assets; and (2) all the acts as may be necessary or convenient to, and execute, acknowledge and/or deliver any and all acts, documents, deeds, conveyances, pledge agreements, security agreements, assignments, and other documents required to (i) perfect, transfer, protect, confirm and/or maintain the Security Interest granted hereunder, and/or (ii) carry out the intention or facilitating the performance of the terms of this Agreement, as well as to allow the Pledgee to exercise its rights and remedies hereunder and/or under the applicable law, and/or (iii) register this Agreement and/or any transaction contemplated hereby (including without limitation, the Security Interest), in all necessary or applicable records, filing offices and registries; and/or (iv) demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Pledged Assets; and/or (v) receive, endorse, and collect any negotiable instrument, bills of lading, invoice storage or warehouse receipts, assignments, verifications and notices in connection with the documents relating to the Pledged

16

Bienes Pignorados; y (II) entregar al Acreedor Prendario un testimonio original de la escritura pública en la que conste dicho poder.

Assets; and (II) deliver to the Pledgee an original counterpart (testimony) of the public deed evidencing such power of attorney.

Tercera. Continuidad de la Garantía Prendaria.

Third. Continuing Security Interest.

La Garantía Prendaria será continua y (i) permanecerá en pleno vigor y efecto hasta que todas las Obligaciones Garantizadas y hayan sido debida y legalmente satisfechas, cumplidas, pagadas e irreversiblemente liquidadas en su totalidad a satisfacción del Acreedor Prendario; en el entendido, que las partes en este acto acuerdan, no obstante lo previsto por el Artículo 349 de la Ley, que la Garantía Prendaria otorgada en términos del presente Contrato no será reducida en los términos establecidos en dicho Artículo; (ii) obligará al Deudor Prendario y a sus causahabientes y cesionarios; y (iii) beneficiará a y será ejecutable por el Acreedor Prendario y sus causahabientes y cesionarios. Dentro de los 5 (cinco) Días Hábiles siguientes a la fecha en que las Obligaciones Garantizadas hayan sido debida y legalmente satisfechas, pagadas, cumplidas e irreversiblemente liquidadas en su totalidad a satisfacción del Acreedor Prendario, y a solicitud por escrito del Deudor Prendario, el Acreedor Prendario entregará al Deudor Prendario una notificación de terminación en términos sustancialmente similares a los del formato que se agrega al presente Contrato como Anexo "D" (la "Notificación de Terminación"). Únicamente mediante la entrega de la Notificación de Terminación que realice el Acreedor Prendario al Deudor Prendario de conformidad con los términos y condiciones aquí establecidos, el presente Contrato terminará y la

The Security Interest shall be continuing and shall (i) remain in full force and effect until all the Secured Obligations have been duly and legally satisfied, performed, paid and indefeasibly discharged in full to the satisfaction of the Pledgee; provided, that the parties hereby agree, notwithstanding the terms of Article 349 of the Law, that the Security Interest granted in terms of this Agreement shall not be reduced as provided in such Article; (ii) be binding upon the Pledgor, and their successors and assigns; and (iii) inure to the benefit of and be enforceable by the Pledgee, and its successors and assigns. Within 5 (five) Business Days following the date on which the Secured Obligations have been duly and legally satisfied, paid, performed and indefeasibly discharged in full to the satisfaction of the Pledgee, and upon written request from the Pledgor, the Pledgee shall deliver to the Pledgor a termination notice substantially in the terms of the form attached hereto as Exhibit "D" (the "Termination Notice"). Only upon delivery of the Termination Notice by the Pledgee to the Pledgor as herein contemplated, this Agreement shall terminate, and the Security Interest shall cease, terminate and be released. The Pledgor shall be liable for the payment of any costs, expenses, duties, commissions and fees, including the fees and expenses of the Pledgee's legal advisors (including, without limitation,

17

FBG_CH1_00095285

Garantía Prendaria cesará, terminará y será liberada. El Deudor Prendario será responsable por el pago de cualesquier costos, gastos, derechos, comisiones y honorarios, incluyendo honorarios y gastos de los asesores legales del Acreedor Prendario (incluyendo sin limitación, honorarios de abogados,) derivados de o relacionados con la terminación, liberación y/o cancelación de la Garantía Prendaria.

legal fees), resulting from or in connection with the termination, release and/or cancellation of the Security Interest.

Cuarta. Obligaciones del Deudor Prendario y del Depositario.

Fourth. Covenants of the Pledgor and the Depositary.

(a) Salvo por lo establecido en la Cláusula Quinta, inciso (b) del presente Contrato, en términos del Contrato de Maquila, el Deudor Prendario y el Depositario deberán: (i) mantener los Bienes Pignorados en las Ubicaciones y a disposición del Acreedor Prendario; y (ii) mantener los Bienes Pignorados en todo momento segregados de otros bienes depositados en dichas Ubicaciones y evitar que se mezclen con otros bienes propiedad del Deudor Prendario, del Depositario o de terceros.

(a) Except as set forth in Clause Fifth, paragraph (b) hereto, pursuant to the Maquila Agreements, the Pledgor and the Depositary shall: (i) keep the Pledged Assets at the Locations and at the disposal of Pledgee; and (ii) keep the Pledged Assets at all times segregated from other goods deposited thereat and prevent their comingling with other assets and goods owned by the Pledgor, the Depositary or third parties.

(b) En adición a lo establecido en el párrafo (a) anterior, durante la vigencia del presente Contrato, el Deudor Prendario y el Depositario, se obliga a y conviene que deberá:

(b) In addition to the provisions set forth in paragraph (a) above, so long as this Agreement is in effect, the Pledgor and the Depositary, covenant and agree that they shall:

(i) defender la titularidad y derechos del Acreedor Prendario sobre los Bienes Pignorados en contra de las reclamaciones y demandas de cualquier Persona distinta al Acreedor Prendario;

(i) secure Pledgee's title and right over the Pledged Assets against any claim, suit or action from any Person other than the Pledgee;

(ii) no crear, incurrir, asumir o permitir que exista cualquier Gravamen, derecho de opción o garantía a favor de, o cualquier reclamación de cualquier Persona con respecto a, cualquiera de los Bienes

(ii) not create, incur, assume, or permit to exist any Lien or security interest or option in favor of, or any claim of any Person with respect to, any of the Pledged Assets, except for the Security Interest;

18

FBG_CH1_00095286

Pignorados, excepto por la Garantía Prendaria;

(iii) no vender, transmitir, ceder, gravar, otorgar en prenda, entregar, afectar en fideicomiso, otorgar en prenda, otorgar en usufructo o disponer en cualquier forma, u otorgar cualquier opción con respecto a los Bienes Pignorados o cualquier derecho en relación con los mismos, excepto por la entrega de la posesión de los Bienes Pignorados al Depositario (y viceversa) conforme a los Contratos de Maquila, y lo expresamente permitido en términos de la Cláusula Quinta del presente Contrato;

(iv) celebrar y entregar al Acreedor Prendario aquellos documentos en favor del Acreedor Prendario, y llevar a cabo cualquier acción que sea necesaria en relación con la Garantía Prendaria, a efecto de proteger y mantener la Garantía Prendaria y proteger y preservar los Bienes Pignorados, así como pagar todos los costos y gastos razonables que se deriven de o en relación con lo anterior;

(v) pagar todos y cada uno de los impuestos, contribuciones, imposiciones y cualesquier otras cargas de cualquier naturaleza que sean determinadas, cobradas o impuestas sobre o en relación con los Bienes Pignorados;

(vi) cumplir, observar, mantener, renovar y llevar a cabo todos y cualesquier Requerimientos Legales aplicables o respecto de los Bienes Pignorados;

(vii) cubrir y pagar en su totalidad todos y cualesquier costos y gastos necesarios para la debida conservación, reparación, administración, importación y operación de todos y cualesquier Bienes Pignorados de conformidad con los términos establecidos en los demás Documentos de

(iii) not sell, transfer, assign, pledge, deliver, transfer in trust, grant, usufruct or otherwise dispose of, or grant any option with respect to, any such Pledged Assets or any interest therein, except for the delivery of the possession of the Pledged Assets to the Depositary (and vice versa) pursuant to the Maquila Agreements, and as expressly permitted pursuant to Clause Fifth hereof;

(iv) execute and deliver to the Pledgee any documents, and carry out any action necessary to protect and maintain the Security Interest and to protect and preserve the Pledged Assets, and to pay any reasonable costs and expenses related to or in connection with the aforementioned;

(v) pay all taxes, contributions, impositions and any other charges, of any nature, that are determined, payable or imposed over or in connection with the Pledged Assets;

(vi) comply, observe, maintain, renew and perform any and all Legal Requirements applicable or pertaining to the Pledged Assets;

(vii) cover and pay in full any and all costs and expenses which are necessary for the due conservation, repair, management, importation and operation of any and all Pledged Assets in accordance with the terms set forth in the other Transaction Documents, the

19

**DEBTORS' EXHIBIT NO. 250**
**Page 66 of 98**

la Operación, el Contrato de Maquila y/o los Requerimientos Legales;

Maquila Agreement and/or the Legal Requirements;

(viii) mantener los Bienes Pignorados en buenas condiciones físicas y para su operación y llevar a cabo cualesquier reparaciones y reemplazos a los mismos a fin de mantener el valor y eficiencia operativa de los mismos, salvo por el uso y desgaste ordinario;

(viii) maintain the Pledged Assets in good operating and physical condition and make all necessary repairs and replacements thereto to maintain the value and operating efficiency of such Pledged Assets, ordinary wear and tear excepted;

(ix) entregar al Acreedor Prendario toda la información que posea y/o controle, que el Acreedor Prendario razonablemente le solicite por escrito en relación con todos y cualesquier Bienes Pignorados, incluyendo la transformación de los Bienes Pignorados, dentro de los 5 (cinco) Días Hábiles siguientes a la fecha en que reciba la solicitud correspondiente;

(ix) deliver to the Pledgee all information in its possession and/or control that the Pledgee may reasonably require in writing in connection with any and all Pledged Assets, including the transformation of the Pledged Assets, within 5 (five) Business Days following the date on which it receives such request;

(x) notificar oportunamente al Acreedor Prendario de cualquier circunstancia o evento que cause o pueda causar la pérdida, destrucción o disminución material del valor de los Bienes Pignorados;

(x) give prompt written notice to the Pledgee of any circumstance or event that causes or may cause the loss, destruction or material reduction in value of the Pledged Assets;

(xi) notificar al Acreedor Prendario por escrito, tan pronto como sea posible, pero en todo caso dentro de los 2 (dos) Días Hábiles siguientes a la fecha en que ocurra cualquier evento que constituya, o que tras su notificación o el paso del tiempo, o ambos, constituya un Evento de Incumplimiento; y

(xi) notify the Pledgee in writing, as soon as possible, but in any event within 2 (two) Business Days following the date of the occurrence of any event that constitutes, or after notice or passage of time or both constitutes, an Event of Default; and

(xii) para el Depositario, cumplir con todas y cada una de sus obligaciones bajo el Contrato de Maquila y el Programa de Maquila, según corresponda.

(xii) for the Depositary, comply with any and all of its obligations under the Maquila Agreement and the Maquila Program, as applicable.

El Deudor Prendario en este acto expresamente acuerdan mantener la Garantía Prendaria sobre los Bienes Pignorados en favor del Acreedor

The Pledgor hereby expressly agrees to maintain the Security Interest in and to the Pledged Assets in favor of the Pledgee, in the terms set forth herein,

20

FBG_CH1_00095288

Prendario, en los términos del presente Contrato, y en este acto renuncia expresamente a ejercer todos y cada uno de los derechos establecidos con respecto a los Bienes Pignorados en el Artículo 358 de la Ley, sin el previo consentimiento por escrito del Acreedor Prendario.

and hereby expressly waives to exercise any and all rights with respect to the Pledged Assets set forth in Article 358 of the Law, without the prior written consent of the Pledgee.

Quinta. Bienes Pignorados.

Fifth. Pledged Assets.

(a) Contrato de Maquila, Posesión y Conservación de los Bienes Pignorados. Durante la vigencia del presente Contrato, los Bienes Pignorados transferidos al Depositario deberán estar sujetos al Contrato de Maquila conforme a lo establecido en el presente Contrato.

(a) Maquila Agreement, Possession and Maintenance of the Pledged Assets. So long as this Agreement is in effect, the Pledged Assets transferred to the Depositary shall be subject to the Maquila Agreement as provided herein.

El Deudor Prendario y el Depositario, según corresponda, en este acto reconocen y convienen expresamente que durante la vigencia del presente Contrato, sin el consentimiento previo por escrito del Acreedor Prendario, no podrán, celebrar, modificar, ceder, adicionar o dar por terminado el Contrato de Maquila de forma que contravenga lo establecido en el presente Contrato, el Programa de Maquila o de forma que se afecte o pudiera afectar de manera adversa al Acreedor Prendario o sus derechos, acciones o recursos conforme al presente Contrato y/o los demás Documentos de la Operación.

The Pledgor and the Depositary, as applicable, hereby expressly acknowledge and agree that during the term of this Agreement, without the prior written consent of the Pledgee, they shall not, enter into, modify, amend, assign or terminate the Maquila Agreement in any manner that contravenes the terms of this Agreement, the Maquila Program or that adversely affects or may affect the Pledgee or its rights and remedies hereunder and/or under the other Transaction Documents.

En este acto el Depositario reconoce y consiente expresamente (i) la constitución y existencia de la Garantía Prendaria sobre los Bienes Pignorados conforme a lo establecido en este Contrato; (ii) que en caso de que ocurra un Evento de Incumplimiento (en el entendido que el Acreedor Prendario deberá notificar por escrito al Depositario la ocurrencia de dicho Evento de Incumplimiento), (y) continuarán prestando los Servicios

The Depositary hereby expressly acknowledges and consents to the following (i) the constitution and existence of the Security Interest over the Pledged Assets in the terms hereof; (ii) that upon the occurrence of an Event of Default (in the understanding that the Pledgee shall notify in writing the Depositary the occurrence of said Event of Default), (y) it shall continue to provide the Services in accordance with

21

CONFIDENTIAL

FBG_CH1_00095289

conforme a las instrucciones del Acreedor Prendario y en términos del Contrato de Maquila, y seguirá actuando como depositario de los Bienes Pignorados sujeto a los términos y condiciones del Contrato de Maquila y a lo previsto en el presente Contrato; y (z) entregarán al Acreedor Prendario o a la Persona que éste designe, cualesquier cantidades recibidas en relación con los Bienes Pignorados, por cualquier concepto (distintas a cualquier contraprestación recibida bajo el Contrato de Maquila); en cuyo caso el Acreedor Prendario aplicará dichas cantidades al pago de las Obligaciones Garantizadas; (iii) que el Contrato de Maquila no serán aplicables a, ni obligatorios o coercibles en contra del Acreedor Prendario (o sus sucesores, causahabientes o cesionarios); (iv) que el Contrato de Maquila podrá ser terminado anticipadamente, a elección del Acreedor Prendario y sin necesidad de pagar penalidad o contraprestación a favor del Depositario, en caso de una ejecución de la Garantía Prendaria como resultado de un Evento de Incumplimiento; (v) que buscará del Deudor Prendario, y no del Acreedor Prendario, el pago de cualquier cantidad conforme al Contrato de Maquila; y (vi) que en caso de terminación del Contrato de Maquila por cualquier motivo, (x) cooperará con cualquier depositario sustituto o sucesor para asegurar una transición ordenada en la entrega de la posesión de los Bienes Pignorados en un periodo máximo de 5 (cinco) Días Hábiles contados a partir de la fecha de terminación del Contrato de Maquila, sujeto al cumplimiento de las disposiciones legales aplicables, (y) entregará al Acreedor Prendario o a la Persona que éste designe, todos los libros, registros, fondos, recibos de pagos, contratos, convenios, licencias, autorizaciones, permisos y demás documentos que se encuentran en

the instructions of the Pledgee and under the terms of the Maquila Agreement, and shall continue to act as depositary of the Pledged Assets subject to the terms and conditions of the Maquila Agreement and to the provisions herein; and (z) deliver to the Pledgee or to the Person appointed by the Pledgee, any amounts received in connection with the Pledged Assets, for any reason whatsoever (other than any amount of consideration received under the Maquila Agreement); in which case the Pledgee shall apply such amounts to the payment of the Secured Obligations; (iii) that the Maquila Agreement will not be applicable to, nor they will bind or be enforceable against, the Pledgee (or its successors and assignees); (iv) that the Maquila Agreement may be early terminated, to the choice of the Pledgee without any penalty or consideration in favor of the Depositary, in case of foreclosure of the Security Interest as a result of an Event of Default; (v) that it will seek from the Pledgor, and not from the Pledgee, payment of any amounts due under the Maquila Agreement; and (vi) that in the event of termination of the Maquila Agreement by any reason, the Depositary shall (x) cooperate with any successor depositary to assure a smooth transition for the delivery of possession of the Pledged Assets within a maximum period of 5 (five) Business Days following the termination of the Maquila Agreement, subject to compliance with the applicable legal provisions, (y) deliver to the Pledgee or the Person appointed by the Pledgee, any and all books, records, funds, payment receipts, agreements, licenses, authorizations, permits and other documents in the possession or under the control of the corresponding Depositary in connection with or arising

22

CONFIDENTIAL

FBG_CH1_00095290

posesión o bajo el control del Depositario correspondiente en relación con o derivados de los Bienes Pignorados (o cualquier parte de los mismos), sujeto al cumplimiento de las disposiciones legales aplicables, y (z) entregará y/o transferirá al Acreedor Prendario o a la Persona que éste designe, cualesquier cantidades cobradas en relación con los Bienes Pignorados (o cualquier parte de los mismos) en cuyo caso el Acreedor Prendario aplicará dichas cantidades al pago de las Obligaciones Garantizadas, sujeto al cumplimiento de las disposiciones legales aplicables.

(b) <u>Uso y Transmisión de los Bienes Pignorados</u>. De conformidad con lo dispuesto por el Artículo 356 de la Ley, a menos que haya ocurrido y continúe un Evento de Incumplimiento, el Deudor Prendario tendrá el derecho de (i) utilizar los Bienes Pignorados en el curso ordinario de sus negocios y según su naturaleza y en cumplimiento con las disposiciones de los Documentos de la Operación, el Contrato de Maquila y el Programa de Maquila, siempre que dicho uso no resulte (o no se espere que razonablemente resulte) en un incumplimiento o un conflicto con los términos y condiciones de los demás Documentos de la Operación; (ii) transmitir o de cualquier otra forma disponer de los Bienes Pignorados en el curso ordinario de sus negocios de forma consistente con los términos previsto en los Documentos de la Operación y el Contrato de Maquila, observando en todo caso lo establecido en los Artículos 105, 108 y 112 de la Ley Aduanera y en la Regla 5.2.5 de las Reglas Generales de Comercio Exterior expedidas por la Secretaría de Hacienda y Crédito Público y el Servicio de Administración Tributaria (cada una, una "<u>Transmisión Permitida</u>"), en el entendido, sin embargo, que al momento

from the Pledged Assets (or any portion thereof), subject to compliance with the applicable legal provisions, and (z) deliver and/or transfer to the Pledgee or the Person appointed thereby, any amounts collected in connection with the Pledged Assets (or any portion thereof), in which case the Pledgee shall apply such amounts to the payment of the Secured Obligations, subject to compliance with the applicable legal provisions.

(b) <u>Use and Transfer of Pledged Assets</u>. Pursuant to the provisions of Article 356 of the Law, unless an Event of Default has occurred and continues, the Pledgor shall be entitled to (i) use the Pledged Assets in the ordinary course of business, according to their nature and in compliance with the provisions of the Transaction Documents, the Maquila Agreement and the Maquila Program, provided that such use does not result (or could not reasonably be expected to result) in a default of, or a conflict with the terms and conditions of the other Transaction Documents; (ii) transfer or otherwise dispose the Pledged Assets in the ordinary course of business in a manner consistent with the terms provided in the Transaction Documents and the Maquila Agreement, complying in all cases with the provisions of Articles 105, 108 and 112 of the Mexican Customs Law (*Ley Aduanera*) and Rule 5.2.5 of the General Foreign Trade Rules (*Reglas Generales de Comercio Exterior*) issued by the Mexican Ministry of Finance and Public Credit and the Tax Administration Service (each, a "<u>Permitted Transfer</u>"); provided, however, that upon realization of a

23

FBG_CH1_00095291

de realizar cualquier Transmisión Permitida, la Garantía Prendaria sobre la parte de los Bienes Pignorados que sean transmitidos cesará y se liberará automáticamente y en el entendido, además, que los bienes o productos que el Deudor Prendario reciba o tenga derecho a recibir como contraprestación de cualquier Transmisión Permitida (incluyendo el derecho de cobrar y recibir dicha contraprestación), quedarán en prenda y formarán parte de los Bienes Pignorados conforme a lo previsto en este Contrato; y (iii) cobrar y recibir todos y cada uno de los pagos, distribuciones o cualquier otra contraprestación que surja de, o esté relacionada con, los Bienes Pignorados y usar los productos de cualquier Transmisión Permitida de los Bienes Pignorados en el curso ordinario de sus negocios, en cada caso, en la medida en que cualesquiera de dichas acciones no resulte (o no pudiera esperarse que resulte) en un incumplimiento de, o en conflicto con, los términos y condiciones de cualquier otro Documento de la Operación.

Las partes en este acto convienen que (i) los Bienes Pignorados deberán estar localizados en las Ubicaciones; (ii) como contraprestación por cualquier Transmisión Permitida de cualquiera de los Bienes Pignorados, el Deudor Prendario deberá recibir por lo menos el valor de mercado de dichos Bienes Pignorados; (iii) el Deudor Prendario solamente podrá realizar Transmisiones Permitidas de conformidad con los términos y sujeto a las condiciones previstas en el presente Contrato y en los demás Documentos de la Operación; (iv) los bienes o derechos recibidos por el Deudor Prendario como pago por dichas Transmisiones Permitidas formarán parte de los Bienes Pignorados; y (v) el Deudor

Permitted Transfer, the Security Interest over the portion of the Pledged Assets transferred thereunder shall cease and be released automatically, and provided, further, that the assets or proceeds received by the Pledgor or that each Pledgor may be entitled to receive, as consideration for any Permitted Transfer (including the right to collect and receive such consideration), shall be pledged and will be part of the Pledged Assets pursuant to the provisions of this Agreement; and (iii) collect and receive any and all payments, distributions or any other consideration arising from or relating to the Pledged Assets and use the proceeds of any Permitted Transfer of the Pledged Assets in the ordinary course of business, in each case, solely to the extent that any such actions do not result in (or may not be expected to result in) a breach of, or in conflict with, the terms and conditions of any other Transaction Document.

The parties hereby agree that (i) the Pledged Assets shall be maintained in the Locations; (ii) as payment for any Permitted Transfer of any of the Pledged Assets, the Pledgor shall receive, at least, the market value of such Pledged Assets; (iii) the Pledgor may only carry out Permitted Transfers in compliance with the terms and subject to the conditions set forth in this Agreement and the other Transaction Documents; (iv) the assets or rights received by the Pledgor as payment of such Permitted Transfers shall be part of the Pledged Assets; and (v) the Pledgor shall immediately deliver to the Pledgee, all the necessary information requested, at

24

CONFIDENTIAL

FBG_CH1_00095292

Prendario deberá entregar inmediatamente al Acreedor Prendario, toda la información necesaria solicitada en cualquier momento por el Acreedor Prendario en relación con los Bienes Pignorados.

any time, by the Pledgee in connection with the Pledged Assets.

Asimismo, y derivado de que los Bienes Pignorados han sido debidamente importados (y/o continuarán siendo debidamente importados) de manera temporal a territorio mexicano al amparo del Contrato de Maquila y del Programa de Maquila, las partes en este acto acuerdan que, sujeto a lo previsto en la Cláusula Séptima del presente Contrato, al concluir cualquier Programa de Maquila, los Bienes Pignorados correspondientes deberán ser devueltos a territorio estadounidense de conformidad con el Contrato de Maquila y el Programa de Maquila.

In addition, since the Pledged Assets has been duly imported (and/or will continue to be duly imported) on a temporary basis into Mexican territory under the Maquila Agreements and the Maquila Program, the parties hereto agree that, subject to the provisions of Clause Seventh of this Agreement, upon termination of any of the Maquila Program, the corresponding Pledged Assets shall be returned to U.S. territory in accordance with the Maquila Agreement and the Maquila Program.

En el momento en que exista y continúe un Evento de Incumplimiento, todos los derechos del Deudor Prendario conforme a los párrafos (a) y (b) anteriores terminarán automáticamente, y el Acreedor Prendario podrá seguir el procedimiento de ejecución previsto en la Cláusula Séptima del presente Contrato.

Upon the occurrence and continuance of an Event of Default, all rights of the Pledgor under these paragraphs (a) and (b) above shall automatically cease, and the Pledgee shall be entitled to follow the foreclosure procedure set forth in Clause Seventh of this Agreement.

Las partes en este acto convienen que, a partir de la existencia de un Evento de Incumplimiento, el Deudor Prendario deberá entregar, dentro de los 5 (cinco) Días Hábiles siguientes a la fecha en que reciba la solicitud por escrito del Acreedor Prendario, toda la información relacionada con los Bienes Pignorados, incluyendo la transformación de los Bienes Pignorados, que le sea solicitada de tiempo en tiempo por el Acreedor Prendario.

The parties hereby agree that upon the existence of an Event of Default, the Pledgor shall provide the Pledgee any and all information regarding the Pledged Assets, including the transformation of the Pledged Assets, requested from time to time by the Pledgee within 5 (five) Business Days following the date on which such Pledgor receives a written request from the Pledgee.

(c) <u>Derechos de Inspección</u>. De conformidad con el Artículo 362 de la Ley,

(c) <u>Inspection Rights</u>. Pursuant to Article 362 of the Law, the Pledgee and

25

FBG_CH1_00095293

**DEBTORS' EXHIBIT NO. 250**
**Page 72 of 98**

el Acreedor Prendario y sus agentes podrán tener acceso, en días y horas hábiles, a cualquier lugar de negocios del Deudor Prendario y/o del Depositario y a cualquiera de las Ubicaciones, con previo aviso por escrito dirigido al Deudor Prendario con 5 (cinco) Días Hábiles previos a la inspección, a efecto de confirmar el cumplimiento por parte del Deudor Prendario de sus obligaciones conforme a este Contrato y los demás Documentos de la Operación, así como para examinar la condición de los Bienes Pignorados, examinar, inspeccionar y auditar todos o cualquier parte de los Bienes Pignorados, incluyendo sin limitación, todos los libros, registros, publicaciones, órdenes, recibos y correspondencia o cualquier otra información del Deudor Prendario y/o del Depositario respecto de o en relación con los Bienes Pignorados. El Deudor Prendario y el Depositario deberán de cooperar con el Acreedor Prendario y con sus agentes y representantes en la realización de dichas visitas e inspecciones.

its agents may enter, on business days and hours, any places of business of the Pledgor and/or the Depositary and any Location, with prior written notice addressed to the Pledgor with 5 (five) Business Days prior to the inspection, to confirm the compliance by the Pledgor of its obligations under this Agreement and the other Transaction Documents, as well as to examine the condition of the Pledged Assets, examine, inspection and audit all or part of the Pledged Assets, including, without limitation, all the books, records, publications, orders, receipts and mail or any other information of the Pledgor and/or the Depositary in respect of, or in connection with the Pledged Assets. The Pledgor and the Depositary shall cooperate with the Pledgee, its agents and representative in carrying out such visits and inspections.

(d)     Responsabilidad sobre los Bienes Pignorados. El Deudor Prendario será responsable por cualquier demanda, acción, obligación, pérdida, daño, responsabilidad, costos y gastos, incluyendo impuestos, derivadas de o en relación con los Bienes Pignorados.

(d)     Liability with respect to Pledged Assets. The Pledgor shall be responsible for any claim, action, liability, damage, loss, responsibility, expenses and costs, including taxes, derived from or in connection with the Pledged Assets.

(e) Seguros. El Deudor Prendario y el Depositario deberán mantener, con compañías de seguros acreditadas y financieramente sólidas, seguros con respecto a todos los Bienes Pignorados y contra los riesgos que habitualmente mantienen las empresas que se dedican al mismo negocio o a uno similar y que operan en el mismo lugar o en lugares similares.     Cualesquier cantidades

(e) Insurance. The Pledgor and the Depositary shall maintain, with financially sound and reputable insurance companies, insurance with respect to all the Pledged Assets and against risks customarily maintained by companies engaged in the same or similar businesses operating in the same or similar locations. Any amounts received in connection with insurance

26

FBG_CH1_00095294

recibidas por concepto de los seguros formarán parte de los Bienes Pignorados y deberán ser aplicadas por el Acreedor Prendario al pago de las Obligaciones Garantizadas.

(f) <u>Derechos Absolutos.</u> Los derechos y recursos del Acreedor Prendario derivados del presente Contrato son absolutos e incondicionales, independientemente de la constitución, perfeccionamiento, intercambio, liberación o falta de perfeccionamiento de cualquier otra garantía o cualquier liberación, modificación o renuncia, o consentimiento respecto de cualquier garantía, para el pago y cumplimiento de todas y cada una de las Obligaciones Garantizadas; cualquier ejercicio individual o parcial de dicho derecho, facultad o recurso no impedirá cualquier otro ejercicio presente o futuro de dicho derecho, facultad o recurso derivado de este Contrato.

(g) <u>Derechos Acumulativos.</u>

(i) La Garantía Prendaria constituida en términos de este Contrato permanecerá en pleno vigor y efecto independientemente de que cualquier Deudor Prendario o cualquier otra Persona, en esta fecha o en cualquier momento ulterior, otorgue cualquier garantía respecto del pago y cumplimiento de la totalidad o parte de las Obligaciones Garantizadas; y

(ii) Los derechos y recursos del Acreedor Prendario previstos en el presente Contrato o en los otros Documentos de la Operación (i) son acumulativos y en adición a, y no exclusivos de, cualesquier derechos o recursos disponibles al Acreedor Prendario de conformidad con la ley aplicable, el presente Contrato y/o los demás Documentos de la Operación; y (ii) no están condicionados ni son

will be part of the Pledged Assets and shall be applied by the Pledgee to the payment of the Secured Obligations.

(f) <u>Absolute Rights.</u> The rights and remedies of the Pledgee hereunder are absolute and unconditional, regardless of the granting, perfection, substitution, release or lack of perfection of any security or any release, amendment or waiver, or consent with regards to any security, for the payment and performance of each and every one of the Secured Obligations; any individual or partial exercise of such right, authority or remedy shall not prevent other exercise, whether present or future, of such right, authority or remedy.

(g) <u>Cumulative Rights.</u>

(i) The Security Interest granted in terms of this Agreement shall remain in full force and effect regardless of any other security granted by any Pledgor or any other Person, whether in the date of this Agreement or in the future, for the payment and performance of all or any part of the Secured Obligations; and

(ii) The rights and remedies of the Pledgee under this Agreement or under the other Transaction Documents (i) are cumulative and in addition to, and not exclusive from, any right or remedy available to the Pledgee pursuant to the Applicable Law or to the provisions of this Agreement and/or the other Transaction Documents; and (ii) are not conditioned and are not contingent to

27

FBG_CH1_00095295

contingentes al ejercicio por parte del Acreedor Prendario de cualquiera de sus derechos o recursos derivados del presente Contrato y/o de los demás Documentos de la Operación en contra del Deudor Prendario o contra cualquier otra Persona.

the exercise by the Pledgee of any of its rights or remedies arising from this Agreement and/or the other Transaction Documents against the Pledgor or any other Person.

Sexta. Eventos de Incumplimiento.

Sixth. Events of Default.

(a)    Al momento en que ocurra y continúe un Evento de Incumplimiento (i) todos y cada uno de los derechos del Deudor Prendario y del Depositario conforme a los incisos (a) y (b) de la Cláusula Quinta y cualquier otro derecho del Deudor Prendario y del Depositario respecto de los Bienes Pignorados terminarán automáticamente; (ii) todos y cada uno de los derechos relacionados o derivados de los Bienes Pignorados serán exclusiva y subsecuentemente ejercitados por el Acreedor Prendario; (iii) el Acreedor Prendario tendrá el derecho exclusivo de cobrar y recibir cualesquiera ganancia, pagos, distribuciones o cualquier otra consideración en relación con o derivado de los Bienes Pignorados y podrá aplicar los mismos al pago de las Obligaciones Garantizadas; y (iv) el Deudor Prendario y el Depositario reconocen que el Acreedor Prendario podrá ejecutar los Bienes Pignorados conforme a lo dispuesto en la Cláusula Séptima del presente Contrato y a ejercer sus derechos de cualquier otra manera según lo establezcan la Ley o el Código de Comercio.

(a)    Upon the occurrence and continuance of an Event of Default (i) each and every right of the Pledgor and the Depositary under paragraphs (a) and (b) of Clause Fifth hereof and any other rights of the Pledgor and the Depositary with respect to the Pledged Assets will automatically terminate; (ii) any and all rights relating to or in connection with the Pledged Assets shall be subsequently exercised exclusively by the Pledgee; (iii) the Pledgee shall have the exclusive right to collect and receive any and all proceeds, payments, distributions or other consideration arising from or relating to the Pledged Assets and apply them to the payment of the Secured Obligations; and (iv) the Pledgor and the Depositary acknowledge that the Pledgee may foreclose on the Pledged Assets in accordance with the provisions of Clause Seventh of this Agreement, and to exercise its rights in any other manner as set forth in the Law and/or the Commercial Code.

Séptima. Procedimiento de Ejecución.

Seventh. Foreclosure Procedure.

(a)    En caso de que ocurra y continúe un Evento de Incumplimiento y que el Acreedor Prendario le entregue al Deudor Prendario un aviso (el "Aviso de Incumplimiento") en el que declare que un Evento de Incumplimiento ha ocurrido, el Acreedor Prendario tendrá el derecho de

(a)    Upon the occurrence and continuance of an Event of Default and the delivery from the Pledgee to the Pledgor of a notice (the "Default Notice") whereby it declares that an Event of Default has occurred, the Pledgee shall have the right to initiate

28

FBG_CH1_00095296

iniciar la ejecución de los Bienes Pignorados de conformidad con lo establecido en el presente Contrato. El Aviso de Incumplimiento deberá ser preparado sustancialmente en los términos del formato que se adjunta al presente como Anexo "E".

(b) Después de que ocurra y continúe un Evento de Incumplimiento, el Acreedor Prendario podrá instruir al Depositario (i) que sigan prestando los Servicios al amparo del Contrato de Maquila y una vez finalizados los mismos, se envíen los Bienes Pignorados a territorio estadounidense de conformidad con lo previsto en el Contrato de Maquila, o (ii) que envíen, de forma inmediata y sin costo alguno, los Bienes Pignorados a territorio estadounidense de conformidad con lo previsto en el Contrato de Maquila; en el entendido que, en caso de no sea posible lo anterior, el Deudor Prendario y el Depositario contarán, sujeto al cumplimiento de las disposiciones legales aplicables (incluyendo, sin limitar, la transferencia virtual del pedimento de importación a un depositario sustituto, o la importación definitiva de los Bienes Pignorados), con un plazo de 15 (quince) Días Hábiles, para realizar todos los actos necesarios que se requieran conforme a las instrucciones del Acreedor Prendario para entregar físicamente y/o poner a disposición del Acreedor Prendario (o de la Persona que éste designe para tales efectos) todos y cada uno de los Bienes Pignorados, ante la presencia de un notario público mexicano, quién será el encargado de preparar el inventario detallado de los Bienes Pignorados entregados o puestos a disposición del Acreedor Prendario; lo anterior, en adición a los derechos del Acreedor Prendario conforme al Artículo 1414 bis 3 del Código de Comercio. Asimismo, el Acreedor Prendario (o la

the foreclosure of the Pledged Assets as contemplated herein. The Default Notice shall be prepared substantially in the form of notice attached hereto as Exhibit "E".

(b) Following the occurrence and continuance of an Event of Default, the Pledgee may instruct the Depositary (i) to continue to perform the Services under the Maquila Agreement and upon termination thereof, to ship the Pledged Assets to U.S. territory in accordance with the provisions of the Maquila Agreements, or (ii) to ship, immediately and free of charge, the Pledged Assets to U.S. territory in accordance with the provisions of the Maquila Agreement; provided that, if the aforementioned is not possible, the Pledgor and the Depositary shall have, subject to compliance with the applicable legal provisions (including, without limitation, the virtual transfer of the *pedimento de importación* to a successor depositary, or the definitive importation of the Pledged Assets), a period of 15 (fifteen) Business Days to carry out all the necessary acts required pursuant to the instructions of the Pledgee to deliver physical possession and/or make available (*poner a disposición*) to the Pledgee (or to the Person appointed by the Pledgee for such purposes) all the Pledged Assets, before the presence of a Mexican notary public, who will be in charge of preparing a detailed inventory of the Pledged Assets so delivered or made available to the Pledgee; the foregoing, in addition to the rights of the Pledgee under Article 1414 bis 3 of the Commercial Code. Also, the Pledgee (or the Person appointed thereby) shall have the right and authority to process

29

CONFIDENTIAL

FBG_CH1_00095297

Persona que éste designe) tendrá el derecho y la autoridad de tramitar por cuenta del Deudor Prendario o del Depositario, según corresponda, la importación definitiva a territorio mexicano de los Bienes Pignorados ante las autoridades aduaneras correspondientes, para después proceder a ejecutar los Bienes Pignorados y comenzar un procedimiento de ejecución extrajudicial o judicial, según sea el caso, de conformidad con el Libro V, Título III Bis, Capítulos I y/o II, según sea el caso, del Código de Comercio, con el propósito de obtener el pago de las Obligaciones Garantizadas y obtener la entrega física de los Bienes Pignorados a través de cualquiera de dichos procedimientos; lo anterior, en el entendido, que la importación definitiva a territorio mexicano de los Bienes Pignorados no podrá ser llevada a cabo por el Depositario.

on behalf of the Pledgor or the Depositary, as applicable, the definitive importation into Mexican territory of the Pledged Assets before the corresponding customs authorities, and then proceed to initiate the foreclosure of the Pledged Assets and commence an extra-judicial or judicial foreclosure procedure, as the case may be, pursuant to Book V, Title III Bis, Chapters I and/or II, as the case may be, of the Commercial Code, in order to seek payment of the Secured Obligations and to pursue the delivery and physical possession of the Pledged Assets through any such procedure; the foregoing, in the understanding that the definitive importation into Mexican territory of the Pledged Assets may not be carried out by the Depositary.

(c)     De conformidad con el Artículo 1414 bis y 1414 bis 17 del Código de Comercio y los Artículos 361 y 363 de la Ley, las partes en este acto convienen que para efectos de valuar los Bienes Pignorados, el Deudor Prendario en este acto autorizan expresa e irrevocablemente al Acreedor Prendario (o la persona que este designe), para que, a costo exclusivo del Deudor Prendario, se obtenga un avalúo de los Bienes Pignorados elaborado por la institución de crédito mexicana que designe el Acreedor Prendario.

(c)     Pursuant to Article 1414 bis and 1414 bis 17 of the Commercial Code and Articles 361 and 363 of the Law, the parties hereby agree that for purposes of appraising the Pledged Assets, the Pledgor hereby expressly and irrevocably authorize the Pledgee (or its nominee), at the sole expense of the Pledgor, to obtain an appraisal of the Pledged Assets from an authorized Mexican banking institution (*institución de crédito*) designated by the Pledgee.

(d)     En el evento de que se haya finalizado el procedimiento de ejecución en términos de la ley aplicable y la presente Cláusula, el Deudor Prendario se obliga a llevar a cabo y/o causar que se lleven a cabo todos los actos necesarios para facilitar la ejecución y transmisión de los Bienes Pignorados, y a firmar y entregar cualesquiera documentos y a tomar

(d)     In the event that the foreclosure proceeding has been completed in terms of the applicable law and this Clause, the Pledgor agrees to carry out and/or cause to be carried out all acts necessary to facilitate the execution and transfer of the Pledged Assets, and to sign and deliver any documents and to take any other action necessary or convenient in

30

CONFIDENTIAL

cualquier otra acción necesaria o conveniente a efecto de que dicha venta se haga conforme a la ley aplicable y la presente Cláusula y en los términos previstos en el procedimiento de ejecución extrajudicial o judicial, según sea el caso.

(e) En virtud de que las Obligaciones Garantizadas son obligaciones monetarias denominadas en dólares, moneda de curso legal en los Estados Unidos de América (no Pesos mexicanos) y pagaderas fuera de México, a efecto de satisfacer dichas Obligaciones Garantizadas, todas y cada una de las cantidades en Pesos que reciba el Acreedor Prendario (o la Persona que este designe) serán (i) convertidas a la moneda extranjera aplicable por el Acreedor Prendario (o la Persona que este designe) mediante una operación cambiaria con la institución financiera reconocida internacionalmente que designe el Acreedor Prendario, y la divisa que se haya obtenido de dicha conversión será aplicada por el Acreedor Prendario (o la Persona que este designe) al pago de las Obligaciones Garantizadas; o (ii) en caso que dichos Pesos no puedan intercambiarse por la moneda extranjera aplicable como resultado del establecimiento de controles cambiarios o de cualquier otra acción gubernamental, ley o reglamento, el Acreedor Prendario aplicará los Pesos de conformidad con los demás Documentos de la Operación.

(f) El Acreedor Prendario deberá aplicar los ingresos que se devenguen de la venta de los Bienes Pignorados (y) al pago de los impuestos y derechos que procedan por la importación definitiva de los Bienes Pignorados y (z) conforme a lo previsto en los Documentos de la Operación. Para evitar cualquier duda, el Acreedor Prendario no tendrá ninguna obligación de cuestionar o investigar la suficiencia de

order for such sale to be made in accordance with the applicable law and this Clause and in the terms provided in the extra-judicial or judicial foreclosure procedure, as the case may be.

(e) Due to the fact that the Secured Obligations are monetary obligations denominated in dollars, legal currency of the United States of America (not Mexican Pesos) and payable outside of Mexico, in order to satisfy such Secured Obligations, any and all amounts in Pesos that are received by the Pledgee (or the Person appointed by the Pledgee) will be (i) exchanged by the Pledgee (or the Person appointed by the Pledgee) in a foreign exchange transaction with an internationally recognized financial institution appointed by the Pledgee, into the applicable foreign currency, and the currency so exchanged shall be applied by the Pledgee (or the Person appointed by the Pledgee) to the payment of the Secured Obligations; or (ii) in case such Pesos cannot be exchanged into the applicable foreign currency as a result of exchange rate controls or other governmental action, law or regulation, the Pledgee will apply such Pesos pursuant to the provisions of the other Transaction Documents.

(f) The Pledgee shall apply the proceeds of any collection or sale of the Pledged Assets (y) to the payment of the taxes and duties applicable to the definitive importation of the Pledged Assets and (z) as provided in the Transaction Documents. For the avoidance of doubt, the Pledgee shall be under no obligation to enquire as to the sufficiency of any

31

cualquiera de las cantidades recibidas por éste, con respecto a los Bienes Pignorados.

Octava. Impuestos y Gastos.

(a) Todos los gastos, costos, impuestos, comisiones y honorarios derivados de la preparación y celebración de este Contrato, y de cualquier propuesta de modificación o modificación del mismo, en caso de ser necesario, así como por cualquier acto o documento realizado, preparado, firmado o notificado de conformidad con este Contrato o en relación con el mismo, incluyendo sin limitar los honorarios de asesores legales del Acreedor Prendario, y todos y cada uno de los gastos (incluyendo sin limitación, honorarios de abogados) adecuadamente incurridos por el Acreedor Prendario para el cumplimiento de sus obligaciones o en el ejercicio de sus derechos de conformidad con este Contrato y/o en relación con la ejecución de los Bienes Pignorados, deberán ser completa y exclusivamente a cargo de y cubiertas por el Deudor Prendario.

(b) En caso de que por cualquier motivo el Acreedor Prendario cubra, por cuenta y orden del Deudor Prendario, cualquiera de dichos honorarios, costos o gastos razonables (incluyendo sin limitación, honorarios de abogados), el Deudor Prendario se obliga a rembolsar inmediatamente al Acreedor Prendario las cantidades pagadas en Pesos (o en cualquier otra moneda, calculadas en Pesos al tipo de cambio vigente en la fecha de pago).

(c) Lo contenido en la presente Cláusula constituirá parte de las Obligaciones Garantizadas bajo la Garantía Prendaria aquí constituida.

sums received by it in respect of the Pledged Assets.

Eighth. Taxes and Expenses.

(a) All the expenses, costs, taxes, commissions and fees arising from the preparation and execution of this Agreement, and from any proposed or actual amendment hereof, if necessary, as well as by any act or document carried out, prepared, executed or notified pursuant to this Agreement or in connection thereto, including without limitation, the fees of the legal advisors of the Pledgee, and any and all expenses (including, without limitation, legal fees) properly incurred by the Pledgee in the fulfillment of its obligations or in the exercise of its rights in accordance with this Agreement and/or in connection with the foreclosure of the Pledged Assets, shall be fully and exclusively borne and covered by the Pledgor.

(b) In case the Pledgee covers, in the name and on behalf of the Pledgor, any of such reasonable fees, costs or expenses (including, without limitation, legal fees), the Pledgor hereby agree to reimburse the amounts paid in Pesos (or in any other currency, at the exchange rate effective on the date of payment).

(c) The provisions of this Clause shall constitute a part of the Secured Obligations secured by the Security Interest created hereunder.

32

CONFIDENTIAL

FBG_CH1_00095300

Novena. Cesiones.

(a) Los derechos y obligaciones derivados del presente Contrato no podrán ser cedidos o transmitidos por el Deudor Prendario y/o por el Depositario a cualquier tercero sin el consentimiento previo y por escrito del Acreedor Prendario.

(b) El Acreedor Prendario puede ceder o transferir, en su totalidad o en parte, sus derechos bajo el presente Contrato, sin requerir el consentimiento del Deudor Prendario para llevar a cabo dicha cesión o transmisión. En caso de que el Acreedor Prendario ceda o transfiera sus derechos bajo el presente, el Acreedor Prendario notificará al Deudor Prendario por escrito, a fin de que el Deudor Prendario lleve a cabo cualquier acto a fin de mantener la validez y perfeccionamiento de la Garantía Prendaria constituida mediante el presente de conformidad con la Cláusula Segunda de este Contrato.

Décima. Novación; Modificaciones; Renuncias.

Ni la celebración del presente Contrato ni la creación de la Garantía Prendaria contemplada en el mismo constituyen novación, modificación o pago de las Obligaciones Garantizadas.

Este Contrato solamente podrá modificarse mediante el consentimiento por escrito del Deudor Prendario y del Acreedor Prendario.

Cualesquier renuncias a disposiciones del presente Contrato, y cualesquier consentimientos a desviaciones del Deudor Prendario conforme al presente, únicamente serán válidas y efectivas si constan por escrito y están debidamente

Ninth. Assignments.

(a) The rights and obligations arising from this Agreement may not be assigned or transferred by the Pledgor and/or by the Depositary to any third party without the prior written consent of the Pledgee.

(b) The Pledgee may assign or transfer, in whole or in part, its rights hereunder without requiring the consent of the Pledgor to perform such assignment or transfer. In the event that the Pledgee assigns or transfers its rights hereunder, the Pledgee shall notify the Pledgor in writing, so that the Pledgor can take any actions to maintain the validity and perfection of the Security Interest created hereunder pursuant to Clause Second above.

Tenth. Novation; Amendments; Waivers.

Neither the execution of this Agreement nor the creation of the Security Interest contemplated herein shall constitute the novation, modification or payment of the Secured Obligations.

This Agreement may only be amended or modified by means of the written consent of the Pledgor and the Pledgee.

No waiver of any provision of this Agreement, and no consent to any departure by the Pledgor hereunder, shall in any event be valid and effective unless the same shall be in writing and signed by the Pledgee. No failure from

33

FBG_CH1_00095301

firmadas por el Acreedor Prendario. La falta de, o retraso en el ejercicio de cualesquier derechos conforme al presente por parte del Acreedor Prendario, en ningún caso constituirá o se considerará que constituye una renuncia de los mismos; de igual forma, el ejercicio parcial o único de cualesquier derechos del Acreedor Prendario por parte del mismo, no precluye el ejercicio futuro de los mismos o de cualesquier otros derechos del Acreedor Prendario.

the Pledgee to exercise and no delay in exercising, any right hereunder, shall operate as a waiver thereof; nor shall any single or partial exercise of any such right preclude any other or further exercise thereof, or the exercise of any other right of the Pledgee.

Décima Primera. Notificaciones.

Eleventh. Notices.

Todas las notificaciones u otras comunicaciones en relación con este Contrato deberán realizarse a las direcciones descritas a continuación:

All notices or other communications in connection with this Agreement shall be given to the addresses set forth below:

Al Deudor Prendario:

To the Pledgor:

[•]
Atención: [•]
Correo electrónico:[•]

[•]
Attention: [•]
E-mail: [•]

Al Acreedor Prendario:

To the Pledgee:

[•]
Atención: [•]
Teléfono: [•]
Fax: [•]
Correo electrónico: [•]

[•]
Attention: [•]
Phone: [•]
Fax: [•]
E-mail: [•]

Al Depositario:

To the Depositary:

[•]
Atención: [•]
Correo electrónico: [•]

[•]
Attention: [•]
E-mail: [•]

Con copia (que no constituirá una notificación) a:

With copy (which shall not constitute notice) to:

[•]
Atención: [•]
Correo electrónico: [•]

[•]
Attention: [•]
Correo electrónico: [•]

34

CONFIDENTIAL

FBG_CH1_00095302

Décima Segunda. Independencia de Disposiciones.

Si cualquiera de las disposiciones contenidas en el presente Contrato fuere declarada nula por un tribunal competente, dicha disposición será considerada en forma separada de las demás disposiciones contenidas en el presente Contrato, de manera que no afecte la validez de las demás disposiciones del mismo.

Décima Tercera. Anexos y Encabezados.

Todos los documentos adjuntos o a los cuales se hace referencia en el presente se incorporan por vía de referencia, y se consideran parte del Contrato. Los títulos y encabezados que se incluyen en este Contrato se incluyen únicamente por conveniencia y no deberán afectar la interpretación de este Contrato.

Décima Cuarta. Jurisdicción, Legislación Aplicable y Poder Agente de Proceso.

Para todo lo relativo a la interpretación y cumplimiento de este Contrato, las partes se someten expresa e irrevocablemente a las leyes aplicables de México, y a la jurisdicción de los tribunales competentes de la Ciudad de México, y las partes en este acto renuncian expresa e irrevocablemente a sus derechos a cualquier otra jurisdicción que pudiere corresponderles en virtud de sus domicilios presentes o futuros o por cualquier otro motivo.

El Deudor Prendario, por medio del presente Contrato irrevocablemente designa y nombra al Depositario como su debido y legal agente (en dicho carácter, el "Agente de Proceso") y otorgan de manera

Twelfth. Independence of Provisions.

In the event that any of the provisions set forth in this Agreement is declared void by a competent court, such provision shall be considered to be separate from the rest of the provisions set forth in this Agreement, in a way that it does not affect the validity of the rest of the provisions.

Thirteenth. Exhibits and Captions.

All documents attached hereto or to which reference is made herein are hereby incorporated by reference into, and shall be deemed a part of, this Agreement. The captions and headings contained in this Agreement are for convenience only and shall not affect the interpretation of this Agreement.

Fourteenth. Jurisdiction, Governing Law and Process Agent Power of Attorney.

For all matters relating to the interpretation and fulfillment of this Agreement, the parties hereto expressly and irrevocably submit to the applicable laws of Mexico, and to the jurisdiction of the competent courts sitting in Mexico City, and the parties hereby expressly and irrevocably waive their rights to any other jurisdiction to which they may be entitled by reason of their present or future domiciles, or by any other reason.

The Pledgor hereby irrevocably designate and appoint the Depositary. as their true and lawful agent (in such capacity, the "Process Agent") and hereby expressly grants in favor of the

35

FBG_CH1_00095303

expresa en favor del Agente de Proceso un poder irrevocable con facultades y poderes especiales para pleitos y cobranzas, actos de administración y para delegar dichas facultades y poderes especiales (a ser ejercidos a través de sus representantes legales), en términos del artículo 2554 del Código Civil Federal, y las disposiciones correspondientes en los demás Códigos Civiles para los demás Estados de México y de la Ciudad de México, a efecto de que el Agente de Proceso pueda recibir, en su nombre, cualesquier notificaciones en términos de la Cláusula Décima Segunda del presente Contrato respecto de emplazamientos relacionados con cualquier demanda, reclamos y demás procedimientos que deban ser notificados en cualquier acto o procedimiento ante cualquier tribunal de la Ciudad de México derivado de o de cualquier manera relacionado con el presente Contrato. Consecuentemente, cualesquiera de dichas notificaciones deberán realizarse mediante la entrega de una copia de dichos procedimientos al Agente de Proceso en nombre del Deudor Prendario al siguiente domicilio [•] (o a cualquier domicilio futuro del Agente de Proceso) y el Deudor Prendario en este acto autorizan al Agente de Proceso a efecto de que acepte dichas notificaciones en su representación.

Process Agent an irrevocable power of attorney with faculties and special powers of attorney for lawsuits and collections, acts of administration and to delegate such faculties and special powers of attorney (to be exercised through its legal representatives), in terms Article 2554 of the Federal Civil Code (*Código Civil*), and the corresponding provisions of the Civil Codes of the States of Mexico and Mexico City so that the Process Agent may receive, on its behalf, any notices in terms of Clause Twelfth of this Agreement of lawsuit, claims and other proceedings which should be notified in any act or proceeding before any courts of Mexico City derived from or in any manner relating to this Agreement. Consequently, any such notices shall be made by delivery of a copy of such proceedings to the Process Agent on behalf of the Pledgor to the following address [•] (or to any other future address of the Process Agent) and the Pledgor hereby authorize the Process Agent to accept such notices in their representation.

Décima Quinta. <u>Ejemplares</u>.

Fifteenth. <u>Counterparts</u>.

El presente Contrato podrá ser firmado en diversos ejemplares, cada uno de los cuales será considerado como un original y de manera conjunta constituirán un solo instrumento.

This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument.

Décima Sexta. <u>Inglés y español</u>.

Sixteenth. <u>English and Spanish</u>.

Las partes convienen que, (a) en caso de discrepancia entre las versiones en inglés y español del presente Contrato, o respecto

The parties hereto agree that (a) in the event of a discrepancy between the English and Spanish versions of this

36

CONFIDENTIAL

FBG_CH1_00095304

de cualquier aviso, notificación o cualquier otro documento accesorio al mismo, la versión en español del presente Contrato o de dichos otros documentos, prevalecerá; y (b) en caso de conflicto/discrepancia entre las disposiciones de los Documentos de la Operación y las disposiciones del presente Contrato, las disposiciones de los Documentos de la Operación prevalecerán, salvo en la medida en que sea estrictamente necesario para mantener y ejecutar la Garantía Prendaria creada conforme al presente Contrato.

EN VIRTUD DE LO ANTERIOR, las partes firman y otorgan el presente Contrato, en la fecha arriba indicada.

*[Continúa hoja de firmas]*

Agreement, and any notice or other ancillary document related hereto, the Spanish version of this Agreement or such other document shall prevail; and (b) in the event of a conflict/discrepancy between the provisions of the Transaction Documents and the provisions of this Agreement, the provisions of the Transaction Documents shall prevail, except to the extent when it is strictly necessary to maintain and enforce the Security Interest created herein.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed on the date first written above.

*[Signature page follows]*

37

CONFIDENTIAL

FBG_CH1_00095305

**DEBTORS' EXHIBIT NO. 250**
**Page 84 of 98**

<u>El Deudor Prendario / The Pledgor</u>

International Brake Industries, Inc.

_____
Nombre / Name: [•]
Cargo / Title: Apoderado/ Attorney-in-fact

[*Hoja de firmas del Contrato de Prenda sin Transmisión de Posesión, de fecha* [•] *de* [•] *de* [2023], *celebrado entre International Brake Industries, Inc., como deudor prendario, y Qualitor Inventory Holdings, LLC, como acreedor prendario, con la comparecencia, reconocimiento y aceptación de IBI Latin America, S. de R.L. de C.V., como depositario / Signature Page to the Floating Lien Pledge Agreement dated* [•] [•], [2023] *entered into by International Brake Industries, Inc as pledgor, and Qualitor Inventory Holdings, LLC, as pledgee, with the appearance, acknowledgement and acceptance of IBI Latin America, S. de R.L. de C.V. as depositary*]

CONFIDENTIAL                                                                        FBG_CH1_00095306

<u>El Acreedor Prendario / The Pledgee</u>

Qualitor Inventory Holdings, LLC


_____
Nombre / Name: [●]
Cargo / Office: Apoderado / Attorney-in-fact

[*Hoja de firmas del Contrato de Prenda sin Transmisión de Posesión, de fecha* [•] *de* [•] *de* [2023]*, celebrado entre International Brake Industries, Inc., como deudor prendario, y Qualitor Inventory Holdings, LLC, como acreedor prendario, con la comparecencia, reconocimiento y aceptación de IBI Latin America, S. de R.L. de C.V., como depositario / Signature Page to the Floating Lien Pledge Agreement dated* [•] [•]*,* [2023] *entered into by International Brake Industries, Inc as pledgor, and Qualitor Inventory Holdings, LLC, as pledgee, with the appearance, acknowledgement and acceptance of IBI Latin America, S. de R.L. de C.V. as depositary*]

CONFIDENTIAL                                                                    FBG_CH1_00095307

Reconocido y aceptado por / Acknowledged and accepted by:

El Depositario/ The Depositary

IBI Latin America, S. de R.L. de C.V.


_____
Nombre / Name: [•]
Cargo / Title: Apoderado/ Attorney-in-fact

[*Hoja de firmas del Contrato de Prenda sin Transmisión de Posesión, de fecha* [•] *de* [•] *de* [2023], *celebrado entre International Brake Industries, Inc., como deudor prendario, y Qualitor Inventory Holdings, LLC, como acreedor prendario, con la comparecencia, reconocimiento y aceptación de IBI Latin America, S. de R.L. de C.V., como depositario / Signature Page to the Floating Lien Pledge Agreement dated* [•] [•], [2023] *entered into by International Brake Industries, Inc as pledgor, and Qualitor Inventory Holdings, LLC, as pledgee, with the appearance, acknowledgement and acceptance of IBI Latin America, S. de R.L. de C.V. as depositary*]

CONFIDENTIAL                                                                        FBG_CH1_00095308

Anexo "A" / Exhibit "A"
Contrato de Prenda sin Transmisión de Posesión / Floating Lien Pledge Agreement
Contrato de Maquila / Maquila Agreement

[*Se adjunta por separado / Attached hereto*]

CONFIDENTIAL

FBG_CH1_00095309

Anexo "B" / Exhibit "B"
Contrato de Prenda sin Transmisión de Posesión / Floating Lien Pledge Agreement
<u>Ubicaciones / Locations</u>

| Nombre / Name | Ubicación / Location |
|---|---|
| IBI Latin America, S. de R.L. de C.V. | [*Apodaca Plant*] |

CONFIDENTIAL                                                                                                    FBG_CH1_00095310

Anexo "C" / Exhibit "C"
Contrato de Prenda sin Transmisión de Posesión / Floating Lien Pledge Agreement
Formato de Poder del Deudor Prendario / Pledgor's Form of POA

[*A otorgarse por el Deudor Prendario en escritura pública ante notario público mexicano*]

[*To be executed and delivered by the Pledgor, in a public deed before a Mexican notary public*]

### ANTECEDENTES

CONSIDERANDO, que en esta fecha International Brake Industries, Inc., como deudor prendario, y Qualitor Inventory Holdings, LLC, como acreedor prendario, con la comparecencia y reconocimiento de IBI Latin America, S. de R.L. de C.V. como depositario (el "Contrato de Prenda"). Los términos con mayúscula inicial utilizados y no definidos expresamente en el presente, tendrán el significado que se les atribuye en el Contrato de Prenda.

### RECITALS

WHEREAS, on the date hereof, International Brake Industries, Inc., as pledgor, and Qualitor Inventory Holdings, LLC, as pledgee, with the appearance and acknowledgement of IBI Latin America, S. de R.L. de C.V., as depositary (*Contrato de Prenda Sin Transmisión de Posesión*) (the "Pledge Agreement"). Capitalized terms used which are not otherwise defined herein, shall have the meaning ascribed to such terms in the Pledge Agreement.

### CLÁUSULAS

PRIMERA. International Brake Industries, Inc. (el "Otorgante"), en este acto otorga en favor de [•] (el "Apoderado"), un poder especial irrevocable, para ser ejercido conjunta o separadamente por sus representantes legales, agentes o de otra manera, a fin de que en nombre y representación del Otorgante pueda llevar a cabo, a partir de que ocurra, y mientras continúe, un Evento de Incumplimiento: (a) todas las acciones descritas en el Contrato de Prenda y todos los actos incidentales a las mismas, así como toras las acciones que sean necesarias o convenientes para preservar cualesquier derechos del Acreedor Prendario respecto de los Bienes Pignorados, incluyendo sin limitación, para instruir a todas las

### CLAUSES

FIRST. International Brake Industries, Inc. (the "Grantor"), hereby grants in favor of [•] (the "Attorney-In-Fact"), a special irrevocable power of attorney, to be exercised jointly or separately through its legal representatives, agents or otherwise, so that in the name and on behalf of the Grantor it may carry out, upon the occurrence and continuance of an Event of Default: (a) all actions described in the Pledge Agreement and all acts incidental thereto and all actions as may be necessary or convenient to preserve any rights of the Pledgee in respect of the Pledged Assets, including, without limitation, to instruct all counterparties of the Grantor; and (b) all the acts as may be necessary or convenient to, and execute, acknowledge

CONFIDENTIAL

contrapartes del Otorgante; y (b) todos los actos que sean necesarios o convenientes para, y firmar, reconocer y/o entregar todos y cualesquier actos, documentos, escrituras, cesiones, contratos de prenda, contratos de garantía, y otros documentos requeridos para (i) perfeccionar, proteger, confirmar y/o mantener la Garantía Prendaria otorgada conforme al Contrato de Prenda, así como los derechos, acciones y recursos del Acreedor Prendario conforme al Contrato de Prenda, y/o (ii) llevar a cabo la intención o facilitar la realización de los términos del Contrato de Prenda, así como permitir que el Acreedor Prendario ejerza sus respectivos derechos, acciones y recursos conforme al mismo y/o la legislación aplicable, y/o (iii) registre el Contrato de Prenda y/o cualquier operación contemplada en el mismo (incluyendo, sin limitación, la Garantía Prendaria), en todos los registros, oficinas u oficinas de archivo necesarias o aplicables; y/o (iv) exija el pago de, cobre, demande el pago de, recupere, acumule, combine, reciba y otorgue y emita cartas de pago y recibos por cantidades debidas y a ser debidas conforme a o respecto de los Bienes Pignorados; y/o (v) recibir, endosar y cobrar cualesquier títulos de crédito o certificados de depósito, cesiones, verificaciones, instrucciones y notificaciones en relación con los documentos relacionados con los Bienes Pignorados.

SEGUNDA. El Otorgante en este acto libera al Apoderado, y renuncia a cualesquier reclamaciones de cualquier tipo o naturaleza contra el Apoderado, derivadas de cualquier acción realizada

and/or deliver any and all acts, documents, deeds, conveyances, pledge agreements, security agreements, assignments, and other documents required to (i) perfect, protect, confirm and/or maintain the Security Interest granted hereunder, as well as the rights and remedies of the Pledgee under the Pledge Agreement, and/or (ii) carry out the intention or facilitating the performance of the terms of the Pledge Agreement, as well as to allow the Pledgee to exercise their rights and remedies thereunder and/or under the applicable law, and/or (iii) to register the Pledge Agreement and/or any transaction contemplated thereby (including without limitation, the Security Interest), in all necessary or applicable records, filing offices and registries; and/or (iv) demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Pledged Assets; and/or (v) receive, endorse, and collect any negotiable instrument, invoice storage or warehouse receipts, assignments, verifications, instructions and notices in connection with the documents relating to the Pledged Assets.

SECOND. The Grantor hereby releases the Attorney-In-Fact and discharges and waives all claims of any kind or nature against the Attorney-In-Fact, arising out of any action taken or omission made by

CONFIDENTIAL

FBG_CH1_00095312

u omisión del Apoderado en el ejercicio de las facultades otorgadas mediante el presente.

the Attorney-In-Fact in exercising the authorities granted herein.

TERCERA. Este poder podrá ser ejercido por el Apoderado para actuar en representación del Otorgante ante (i) cualquier autoridad, registro público y persona física o moral mexicana o extranjera, ya sea pública o privada, (ii) cualquier fiduciario de cualquier fideicomiso público o privado, y (iii) cualquier notario público mexicano. El Apoderado estará facultado para, enunciativa mas no limitativamente, otorgar y firmar todo tipo de documentos, ya sean públicos o privados, que sean necesarios o convenientes para llevar a cabo el objeto de este poder.

THIRD. This power of attorney may be exercised by the Attorney-In-Fact to act on behalf of the Grantor before (i) any authority, public registry, Mexican or foreign natural or legal person, whether public or private, (ii) any trustee of any public or private trust, and (iii) any Mexican notary public. The Attorney-In-Fact shall be empowered to, including, but not limited, grant and sign all type of documents, whether public or private, that are necessary or convenient to carry out the purpose of this power of attorney.

El Otorgante reconoce y acuerda que este poder es otorgado como medio para cumplir con ciertas obligaciones específicamente identificadas e incurridas por dicho Otorgante conforme al Contrato de Prenda y, por lo tanto, es irrevocable en términos de lo establecido en el Artículo 2596 del Código Civil Federal y sus correlativos en los Códigos Civiles de las Entidades Federativas de México.

The Grantor acknowledges and agrees that this power of attorney is granted as a means to comply with certain obligations specifically identified and incurred by such Grantor pursuant to the Pledge Agreement and is therefore irrevocable pursuant to Article 2596 of the Federal Civil Code and the correlative articles of the Civil Codes of all States of Mexico and of Mexico City, Mexico.

CUARTA. Dentro de la especialidad del presente poder, el Apoderado contará con facultades generales para pleitos y cobranzas y actos de administración en términos del primero y segundo párrafo del Artículo 2554 del Código Civil Federal y sus correlativos en los Códigos Civiles de las Entidades Federativas de México, así como con poderes y facultades para emitir, suscribir, aceptar, endosar, protestar y avalar títulos de crédito en términos del

FOURTH. Within the specialty of this power of attorney, the Attorney-in-fact shall be vested with all general and special authorities for lawsuits and collections and acts of administration in terms of the first and second paragraphs of article 2554 of the Federal Civil Code and the corresponding articles of the Civil Codes of all States of the United Mexican States and of Mexico City, Mexico, as well as with a power of attorney for negotiable instruments, with

CONFIDENTIAL

FBG_CH1_00095313

Artículo 9 de la Ley General de Títulos y Operaciones de Crédito.

authorities to issue, subscribe, accept, guarantee, protest and endorse negotiable instruments, in terms of Article 9 of the General Law for Negotiable Instruments.

**Limitación:** El presente poder (i) se otorga única y exclusivamente para que se lleven a cabo los actos descritos en las Cláusulas Primera y Tercera del presente, en términos de lo previsto en el Contrato de Prenda, y (ii) no comprenderá las facultades para desistirse, para transigir, para comprometer en árbitros, para absolver y articular posiciones, para hacer cesión de bienes y para recusar. En caso de que el Acreedor Prendario se exceda de sus facultades, será responsable de los daños y perjuicios que cause al Deudor Prendario, según sea determinado por un tribunal competente en una sentencia o resolución definitiva e inapelable, en términos de lo dispuesto por el Artículo 2568 del Código Civil Federal.

**Limitation**: This power of attorney (i) is granted solely and exclusively to carry out the acts described in Clauses First and Third hereof, in terms of the Pledge Agreement, and (ii) shall not include the powers to withdraw, to compromise, to compromise in arbitrators, to absolve and articulate positions and to make assignment of assets and to challenge. If the Pledgee exceeds its powers, it shall be liable for the damages caused to the Pledgor, in terms of the provisions of Article 2568 of the Federal Civil Code.

QUINTA. El Otorgante en este acto autoriza, indistintamente, a los señores [•], para que cualesquiera de ellos comparezcan ante Notario Público de su elección en México para formalizar el presente poder especial.

FIFTH. The Grantor hereby authorizes, indistinctively, [•], to appear any of them before Notary Public in Mexico of their choice to formalize this special power of attorney.

Para efectos del quinto párrafo del Artículo 2554 del Código Civil Federal, el mismo se transcribe a continuación:

For purposes of paragraph five of Article 2554 of the Federal Civil Code, a transcription thereof follows:

*"Artículo 2554. En todos los poderes generales para pleitos y cobranzas, bastará que se diga que se otorga con todas las facultades generales y las especiales que requieran cláusula especial conforme a la ley, para que se entiendan conferidos sin limitación alguna.*

*"Article 2554 In all general powers of attorney for lawsuits and collections, it shall be sufficient if they state that they are granted with all the general powers including special powers that require a special clause pursuant to law, so that it is understood that they are granted without limitation.*

FBG_CH1_00095314

**DEBTORS' EXHIBIT NO. 250**
**Page 93 of 98**

*En los poderes generales para administrar bienes, bastará expresar que se dan con ese carácter, para que el apoderado tenga toda clase de facultades administrativas.*

*En los poderes generales, para ejercer actos de dominio, bastará que se den con ese carácter para que el apoderado tenga todas las facultades de dueño, tanto en lo relativo a los bienes, como para hacer toda clase de gestiones a fin de defenderlos.*

*Cuando se quisieren limitar, en los tres casos antes mencionados, las facultades de los apoderados, se consignarán las limitaciones, o los poderes serán especiales.*

*Los notarios insertarán este artículo en los testimonios de los poderes que otorguen."*

*In the general powers of attorney for the administration of assets, it shall suffice to state that they are granted as such so that the attorney-in-fact may have all kinds of administration authorities.*

*In general powers of attorney, for acts of ownership, it shall suffice to state that they are granted as such so that the attorney-in-fact may exercise all the powers of an owner, both with regard to the assets, as well as to carry out any type of actions in order to defend them.*

*If limitations wish to be imposed, in the three cases mentioned in the preceding paragraphs, on the authority of the attorneys-in-fact, such limitations shall be clearly expressed, or the powers of attorney shall be special.*

*The notaries shall transcribe this article in the public testimonies formalizing the granting of the powers of attorney."*

CONFIDENTIAL

FBG_CH1_00095315

Anexo "D" / Exhibit "D"
Contrato de Prenda sin Transmisión de Posesión / Floating Lien Pledge Agreement
Formato de Notificación de Terminación / Form of Termination Notice

NOTIFICACIÓN DE TERMINACIÓN

TERMINATION NOTICE

[*Insertar Fecha*]

[*Insert date*]

[Deudor Prendario]
[*Insertar Domicilio*]

[Pledgor]
[*Insert Domicile*]

Atención: [•]
Estimados Señores:

Attention: [•]
Dear Sirs:

Hacemos referencia al Contrato de Prenda sin Transmisión de Posesión, de fecha [•] de [•] de [2023] (según el mismo sea modificado, modificado y re-expresado, suplementado o de cualquier otra manera reformado de tiempo en tiempo, el "Contrato de Prenda"), celebrado entre International Brake Industries, Inc., como deudor prendario (el "Deudor Prendario"), y Qualitor Inventory Holdings, LLC, como acreedor prendario (el "Acreedor Prendario"), con la comparecencia y reconocimiento de IBI Latin America, S. de R.L. de C.V., como depositario. Los términos utilizados en mayúscula inicial y de definidos de cualquier otra forma en el presente, tendrán el significado que a dichos términos se atribuye en el Contrato de Prenda.

We make reference to the Floating Lien Pledge Agreement (*contrato de prenda sin transmisión de posesión*), dated [•][•], [2023] (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Pledge Agreement"), entered into by and among International Brake Industries, Inc., as pledgor (the "Pledgor"), and Qualitor Inventory Holdings, LLC, as pledgee (the "Pledgee"), with the appearance and acknowledgement of IBI Latin America, S. de R.L. de C.V., as depositary. Capitalized terms used and not otherwise defined herein, shall have the meanings ascribed to such terms in the Pledge Agreement.

El Acreedor Prendario en este acto confirma la terminación y liberación del Contrato de Prenda y, en consecuencia, de la Garantía Prendaria constituida sobre los Bienes Pignorados.

The Pledgee hereby confirms the termination and release of the Pledge Agreement, and consequently, of the Security Interest created over the Pledged Assets.

Por medio de la presente Notificación de Terminación, el suscrito, en su carácter de Acreedor Prendario bajo el Contrato de Prenda, en este acto (i) cancela y (a) da

By means of this Termination Notice, the undersigned, in its capacity as Pledgee under the Pledge Agreement, hereby (i) cancels and (a) terminates the Pledge

FBG_CH1_00095316

por terminado el Contrato de Prenda, mismo que quedó ratificado en términos de la escritura pública número [•] de fecha [•], otorgada ante la fe de [•], Notario Público número [•] de la Ciudad de México e inscrito en el Registro bajo el número [•] con fecha [•], y (b) da por terminada y libera la Garantía Prendaria sobre los Bienes Pignorados; y (ii) autoriza al Deudor Prendario e instruye a [•], Notario Público número [•] de la Ciudad de México (o a cualquier otro fedatario público elegido por el Deudor Prendario) para cancelar ante el Registro Único de Garantías Mobiliarias las inscripciones correspondientes realizadas en relación con el Contrato de Prenda y la Garantía Prendaria constituida sobre los Bienes Pignorados en virtud de la celebración del Contrato de Prenda.

Agreement that was ratified in instrument number [•] dated as of [•], granted before [•], Notary Public number [•] of the Mexico City and registered in the Registry under entry number [•] on [•], and (b) terminates and releases the Security Interest over the Pledged Assets; and (ii) authorizes the Pledgor and instructs [•], Notary Public number [•] of Mexico City (or any other notary public or public attester freely elected by the Pledgor) to cancel in the Registry of Liens Over Movable Assets (*Registro Único de Garantías Mobiliarias*) the annotations made with respect to the Pledge Agreement and the Security Interest in and to the Pledged Assets created as a result of the execution of the Pledge Agreement.

La presente Notificación de Terminación será regida e interpretada de conformidad con la legislación mexicana.

This Termination Notice shall be governed by and construed in accordance with Mexican law.

Atentamente,

Yours truly,

El Acreedor Prendario / The Pledgee
[•]

_____
Por: / By: [•]
Cargo: / Title: [•]

FBG_CH1_00095317

Anexo "E" / Exhibit "E"
Contrato de Prenda sin Transmisión de Posesión / Floating Lien Pledge Agreement
Aviso de Incumplimiento / Default Notice

[*Fecha*]
[Pledgor]
[*Domicilio*]

[*Date*]
[Pledgor]
[*Domicile*]

El presente Aviso de Incumplimiento se presenta de conformidad con lo previsto en inciso (a) de la Cláusula Séptima del Contrato de Prenda sin Transmisión de Posesión, de fecha [•] de [•] de [2023] (según el mismo sea modificado, modificado y re-expresado, adicionado o de cualquier otra forma modificado de tiempo en tiempo, el "Contrato") celebrado por y entre International Brake Industries, Inc., como deudor prendario (el "Deudor Prendario"), y Qualitor Inventory Holdings, LLC, como acreedor prendario (el "Acreedor Prendario"), con la comparecencia y reconocimiento de IBI Latin America, S. de R.L. de C.V., como depositario. Los términos utilizados con mayúscula inicial en el presente y no definidos expresamente en el mismo, tendrán el significado que se les atribuye en el Contrato.

This Default Notice is delivered pursuant to paragraph (a) of Clause Seventh of the Floating Lien Pledge Agreement *(Contrato de Prenda sin Transmisión de Posesión)*, dated [•][•], [2023], (as amended, restated, supplemented or otherwise modified from time to time, the "Agreement"), entered into by and among International Brake Industries, Inc., as pledgor (the "Pledgor"), and Qualitor Inventory Holdings, LLC, as pledgee (the "Pledgee"), with the appearance and acknowledgement of IBI Latin America, S. de R.L. de C.V., as depositary. Capitalized terms used and not otherwise defined herein are used as defined in the Agreement.

Por medio del presente Aviso de Incumplimiento y de conformidad con el inciso (a) de la Cláusula Séptima del Contrato, el suscrito certifica que ha ocurrido un Evento de Incumplimiento, consistente en:

By means of this Default Notice and pursuant to paragraph (a) of Clause Seventh of the Agreement, the undersigned hereby certifies that the following Event of Default has occurred:

[*incluir una descripción detallada del Evento de Incumplimiento*]

[*include a description of the Event of Default*]

Por medio del presente se le informa:

You are hereby informed that:

CONFIDENTIAL

FBG_CH1_00095318

(a)     Al Deudor Prendario que tendrá un periodo de 5 (cinco) Días Hábiles contados a partir de la recepción del presente Aviso de Incumplimiento para: (x) informar por escrito la ubicación de los Bienes Pignorados; (y) entregar físicamente y/o; (z) poner a disposición y/o causar que se pongan a disposición del Acreedor Prendario *[o incluir el nombre de la Persona que éste designe para tales efectos]* todos y cada uno de los Bienes Pignorados, ante la presencia de un fedatario público mexicano, quien deberá preparar un inventario pormenorizado de los Bienes Pignorados entregados; lo anterior, sin perjuicio de los derechos del Acreedor Prendario conforme al artículo 1414 bis 3 del Código de Comercio; y

(a)     The Pledgor will have a period of 5 (five) Business Days, to: (x) inform in writing the location of the Pledged Assets, (y) deliver physical possession and/or (z) make available and/or cause to be made available (*poner a disposición*) to the Pledgee [*or include name of Person designated by the Pledgee*] all the Pledged Assets, before a Mexican notary public, who shall prepare a detailed inventory of the Pledged Assets so delivered; the foregoing, without any prejudice of the rights of the Pledgee pursuant to Article 1414 bis 3 of the Commercial Code; and

(b)     Se procederá con la ejecución de los Bienes Pignorados, y comenzará un procedimiento de ejecución extrajudicial o judicial, según sea el caso, conforme a las disposiciones aplicables contenidas en el Libro V, Título III Bis, Capítulos I y/o II, según sea el caso, del Código de Comercio, con el propósito de obtener el pago de las Obligaciones Garantizadas.

(b)     We will proceed with the foreclosure of the Pledged Assets and commence an extra-judicial or judicial foreclosure procedure, as the case may be, pursuant to Book V, Title III Bis, Chapters I and/or II, as the case may be, of the Commercial Code, in order to seek payment of the Secured Obligations

Atentamente,

[Pledgee]

Por:_____
Nombre: [•]
Cargo: [•]

Sincerely,

[Pledgee]

By:   _____
Name: [•]
Title: [•]

CONFIDENTIAL

FBG_CH1_00095319