DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

# Agreement on Sale and Purchase of Shares

### entered into by and between

# Winning Group a.s.

as the Seller, of the one part

### and

# Horizon International Holdings LLC

as the Purchaser, of the other part

dated 22 December 2023

CONFIDENTIAL

FBG_CH1_00095320

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

**TABLE OF CONTENTS**

1.  DEFINITIONS AND INTERPRETATION OF THE AGREEMENT ...................................................... 3

2.  SUBJECT MATTER OF THE AGREEMENT ................................................................................. 9

3.  PURCHASE PRICE ................................................................................................................. 10

4.  OBLIGATIONS OF THE PARTIES DURING THE INTERIM PERIOD ........................................... 11

5.  CLOSING ............................................................................................................................... 13

6.  REPRESENTATIONS AND WARRANTIES OF THE PARTIES....................................................... 15

7.  LIABILITY OF THE PARTIES FOR BREACH OF REPRESENTATIONS AND WARRANTIES 17

8.  OTHER COVENANTS ............................................................................................................. 18

9.  TERMINATION ...................................................................................................................... 19

10.  GOVERNING LAW; DISPUTE RESOLUTION ............................................................................ 19

11.  NOTICES ............................................................................................................................... 20

12.  CONFIDENTIALITY AND PUBLICITY....................................................................................... 20

13.  FINAL PROVISIONS ............................................................................................................... 21

CONFIDENTIAL

FBG_CH1_00095321

**DEBTORS' EXHIBIT NO. 251**
**Page 2 of 79**

## AGREEMENT ON SALE AND PURCHASE OF SHARES

entered into pursuant to the provisions of Section 1746 (2) of Act No. 89/2012 Coll., the Civil Code
(the "**Agreement**")

### THE PARTIES

(1)     **Winning Group a.s.**

a company duly organised and validly existing in accordance with the laws of the Czech Republic,
having its registered office at Křižíkova 2960/72, Královo Pole, 612 00 Brno, Czech Republic,
ID No.: 06794050, entered in the Commercial Register kept by the Regional Court in Brno,
Section B, File 7911 (the "**Seller**")

and

(2)     **Horizon International Holdings LLC**

a company duly organised and validly existing in accordance with the laws of the State of
Delaware, having its registered office at 2711 Centerville Road, Suite 400, Wilmington, Zip
code 19808, Delaware, the United States of America and having its business address at 127 Public
Square, Suite 5300, Cleveland, Zip code 44114, Ohio, the United States of America, with
corporate number 5711460 (the "**Purchaser**")

(the Seller and the Purchaser are hereinafter referred to jointly as the "**Parties**" and each
individually as the "**Party**")

### RECITALS

(A)     Winning CoFo a.s. is joint-stock company duly organised and validly existing in accordance with
the laws of the Czech Republic, having its registered office at Křižíkova 2960/72, Královo Pole,
612 00 Brno, Czech Republic, ID No.: 14293692, entered in the Commercial Register kept by the
Regional Court in Brno Section B, File 8683 (the "**Company**"). The Company is pursuing
business in particular in the area of cold forming mainly in the suspension and steering
components for automotive industry (the "**Business Activity**").

(B)     Company is the sole owner of Ownership Interest 1, Ownership Interest 2 and Ownership Interest
3 (as defined in Article 1.1).

(C)     Seller is the owner of the Sale Shares (as defined in Article 1.1).

(D)     The Seller wishes to sell the Sale Shares (as defined below) to the Purchaser under the conditions
set out in this Agreement, and the Purchaser wishes to purchase the Sale Shares from the Seller
under the conditions set out in this Agreement.

In light of the foregoing, the Parties agree as follows:

**1.      DEFINITIONS AND INTERPRETATION OF THE AGREEMENT**

**1.1**     Unless defined otherwise in this Agreement, the capitalised terms as used in this Agreement
(including the Annexes hereto) shall have the meanings defined below

"**Affiliate**" means, with respect to any person, any entity controlled or influenced by, controlling
or influencing, or being under common control or influence with, such person.

CONFIDENTIAL                                                    FBG_CH1_00095322

"**Agreed Form** means, in relation to any document, the form of that document which is initialled for the purposes of identification by or on behalf of the Seller and the Purchaser, whether prior to, on or after the date of this agreement, with any changes as the Seller and Purchaser may agree before Completion;

"**Agreement**" has the meaning defined in the heading of this Agreement.

"**Base Purchase Price**" means EUR 30.000.000 (thirty million euro)

"**Breach of the Seller's Representations**" has the meaning defined in Article 7.1.

"**Break up fee**" means EUR 500.000 (five hundred thousand euro)

"**Business Activity**" has the meaning defined in Recital (A).

"**Civil Code**" means Act No. 89/2012 Coll., the Civil Code, as amended.

"**CZ GAAP**" means the principles and standards set out in Czech Act No. 563/1991 Coll., on Accounting, as amended, and the implementing regulations to said Act, as well as any and all other directives and other rules issued by the Czech Chamber of Auditors applied consistently with the past practice of the Company and relevant Annexes of this Agreement (to the extent that such past practice is compliant with Law).

"**Closing Date**" shall be 2 January 2024

"**Commerz Real Mobilienleasing**" means Commerz Real Mobilienleasing GmbH, a private limited liability company (*Gesellschaft mit beschränkter Haftung*) with its registered seat in Düsseldorf, Germany, registered with the commercial register (*Handelsregister*) at the local court (*Amtsgericht*) of Düsseldorf, Germany, under docket number HRB 31415.

"**Company**" has the meaning set out in Recital (A).

"**Companies Act**" means Act No. 90/2012 Coll., on Business Companies and Cooperatives (the Companies Act), as amended.

"**Company's Accounts**" means the audited financial reports (balance sheet and profit and loss account) of the Company, including any notes thereto.

"**Confidential Information**" has the meaning defined in Article 12.1.

"**Completion**" means the performance, in accordance with this agreement, of the obligations described in Article 5.3 on the Closing Date.

"**Disclosed Information**" means all information and documents disclosed to the Purchaser or its advisors in order to perform the Due Diligence available at https://winningsteel-my.sharepoint.com/personal/julian_lehrmann_be-winning_com/_layouts/15/onedrive.aspx?id=%2Fpersonal%2Fjulian%5Flehrmann%5Fbe%2Dwinning%5Fcom%2FDocuments%2FCoFo&fromShare=true&ga=1 and USB with copies of such documents attached as Annex 5 to be handed over at Closing Date as a part of hand over protocol.

"**Dispute**" has the meaning defined in Article 10.2.

"**Due Diligence**" means the legal, financial, accounting, tax and technical review of Target Companies performed by the Purchaser.

"**Effective Date**" means 31 December 2023, time 23:59

"**Estimated Financial Statements**" means Financial Statements of Target Companies prepared in good faith by the Seller to calculate Estimated Total Purchase Price to the Effective Date and attached to the SPA as Annex 1.

"**Estimated Net Cash**" means Net Cash of Target Companies prepared in good faith by the Seller based on Estimated Financial Statements to calculate Estimated Total Purchase Price to the Effective Date.

CONFIDENTIAL

FBG_CH1_00095323

**"Estimated Net Debt"** means Net Debt of Target Companies prepared in good faith by the Seller based on Estimated Financial Statements to calculate Estimated Total Purchase Price to the Effective Date.

"Estimated Total Purchase Price" or **"ETPP"** has the meaning in Article 3.2.

**"Estimated Working Capital Adjustment"** means Working Capital minus EUR 11,500,000.00 prepared in good faith by the Seller based on Estimated Financial Statements to calculate the Estimated Total Purchase Price at Signing Date.

"**Expert**" means company Deloitte / PWC / EY /KPMG or comparable professional services firm on which Seller and Buyer agree.

**"Final Net Cash"** means Net Cash of Target Companies prepared by the Purchaser based on Interim Financial Statements to calculate Total Purchase Price at Effective Date

**"Final Net Debt"** means Net Debt of Target Companies prepared by the Purchaser based on Interim Financial Statements to calculate Total Purchase Price at Effective Date

**"Final Working Capital Adjustment"** means Working Capital minus EUR 11,500,000.00 prepared by the Purchaser based on Interim Financial Statements to calculate the Total Purchase Price at Effective Date

"**Financial Statements**" means the unaudited financial reports (balance sheet and profit and loss account) of the Target Companies.

"**Intellectual Property**" means trademarks, inventions, patents, utility designs, industrial designs, registered corporate name, unregistered designation, copyrighted work and copyright, domain names, databases, designation of origin and geographical designations, know-how, trade secret and any other intangible assets and rights in intangible assets, industrial and intellectual property, registered or unregistered, and including applications and applications for registration of such rights and any and all other rights and forms of protection having equivalent or similar effect anywhere around the world.

"**Interim Financial Statements**" means aggregated financial statements of the Company prepared from Individual Financial Statements of the Company, Subsidiary 1, Subsidiary 2 and Subsidiary 3 prepared in accordance with past practice as presented in <u>Annex 1</u> and CZ GAAP as of Effective Date.

"**Interim Period**" has the meaning defined in Article 4.1.

"**Merca Leasing**" means company Merca Leasing GmbH & Co. KG, a limited partnership with limited company as general partner (*Gesellschaft mit beschränkter Haftung & Compagnie Kommanditgesellschaft*) with its registered seat in Kronberg im Taunus, Germany, registered with the commercial register (*Handelsregister*) at the local court (*Amtsgericht*) of Kronberg im Taunus, Germany, under docket number HRA 2614.

"**Net Cash**" means Cash and Receivables towards the Seller and its subsidiaries outside of the Target Companies as per Interim Financial Statements and calculated based on specific accounting procedures presented in <u>Annex 2</u>.

"**Net Debt**" means the aggregate net debt of the Target Companies, being

    (a)   Bank loans, plus

    (b)   Hire-Purchase Agreements, plus

    (c)   Liabilities towards the Seller and its subsidiaries outside of the Target Companies

based on Interim Financial Statements and calculated based on specific accounting procedures presented in <u>Annex 2</u>.

**"Real Estate Lease Agreements"** means (i) real estate lease agreement concluded on 3. April 2023 as amended between Subsidiary 1 and Winning IP Krefeld GmbH with seat at Idastraße 60,

5 / 76

DEBTORS' EXHIBIT NO. 251
Page 5 of 79

47809 Krefeld, (ii) real estate lease agreement concluded on 3. April 2023 as amended between Subsidiary 2 and Winning IP Gelenau GmbH with seat at Idastraße 60, 47809 Krefeld and (iii) real estate lease agreement concluded on 11. November 2022 as amended between Subsidiary 3 and Winning IP Dietenheim GmbH with seat at Räuchlestraße 7, 89165 Dietenheim

"**Sale Shares**" means all the issued ordinary registered shares in the Company represented by the registered share certificates Nos. 1 to 20 in the Company, each having a par value of CZK 100.000, equivalent to fully paid-up contribution to the Company's registered capital in the amount of CZK 2.000.000 and equivalent to a (i) share in voting rights in the amount of 100% and (ii) share in profits in the amount of 100%.

"**Ownership Interests**" means Ownership Interest 1, Ownership Interest 2 and Ownership Interest 3

"**Ownership Interest 1**" means all shares in the nominal amount of EUR 1.00 each with serial numbers 1 – 25,000 in the shareholders list dated 25 April 2022 uploaded into the commercial register of Subsidiary's 1 registered capital in the amount of EUR 25.000, but in any case all shares issued by Subsidiary 1.

"**Ownership Interest 2**" means all shares in the nominal amount of EUR 1.00 each with serial numbers 1 – 25,000 in the shareholders list dated 25 April 2022 uploaded into the commercial register of Subsidiary's 2 registered capital in the amount of EUR 25.000, but in any case all shares issued by Subsidiary 2.

"**Ownership Interest 3**" means all shares in the nominal amount of EUR 1.00 each with serial numbers 1 – 25,000 in the shareholders list dated 7 March 2022 uploaded into the commercial register of Subsidiary's 3 registered capital in the amount of EUR 25.000, but in any case all shares issued by Subsidiary 3.

"**Parent Guarantees of the Seller**" means parent guarantees provided by the Seller for fulfilment of obligations of Target Companies in favour of Merca Leasing and Commerz Real Mobilienleasing issued by the Seller.

"**Parent Guarantee of the Purchaser**" means parent guarantee provided by the Purchaser in favour of the Seller according to Art. 6.3 lit. e) of this Agreement.

"**Parties**" and "**Party**" has the meaning defined in the heading of this Agreement.

"**Pay-off Amount**" means amount to be paid to the Seller per Pay-Off Letter dated 2 January 2024 and calculated to the Effective Date corresponding to the obligations of Subsidiaries and Company to the Seller and its Affiliates (other than Target Companies) so any obligations of Subsidiaries and Company to the Seller and its Affiliates (other than Target Companies) with exclusion of Real Estate Lease Agreements shall cease to exist on the Closing Date with effectivity to the Effective Date under condition the Completion occurs on Closing Date. As per Estimated Financial Statements the amount of Pay-off Amount corresponds to EUR 7.917.345,55 calculated as difference between Payables towards Winning Group and Receivables towards Winning Group as specified in Annex 2 and Annex 3. The amount of Pay-off Amount to the Effective Date must be calculated accordingly and notified by the Seller to the Purchaser at latest on 29 December 2023 by 12:00.

"**Pay-off Letter (Seller)**" means the pay-off letter issued by Seller in a form agreed between the Seller and the Purchaser on the Closing Date e specifying the Pay-off Amount to the Effective Date.

"**Public Information**" means the data in relation to the Target Companies which can be obtained from an extract from the Land Register, data from the Commercial Register of the Company /public registers of legal entities, and documents deposited in the collection of documents of a public register.

"**Purchaser**" has the meaning defined in the heading of this Agreement.

"**Purchaser's Representations**" has the meaning defined in Article 6.2.

6 / 76

"**Receivables**" means any and all receivables of the Company as specified in the Accounts or in the Company's Accounts.

"**Seller**" has the meaning defined in the heading of this Agreement.

"**Seller's Representations**" has the meaning defined in Article 6.1.

"**Signing Date**" means the date of execution of this Agreement by all Parties.

"**Subsidiaries**" means Subsidiary 1, Subsidiary 2 and Subsidiary 3.

"**Subsidiary 1**" means company Winning CoFo – PWK GmbH, a private limited liability company (*Gesellschaft mit beschränkter Haftung*) with its registered seat at Idastraße 60, 47809 Krefeld, Germany, registered with the commercial register (*Handelsregister*) at the local court (*Amtsgericht*) of Krefeld, Germany, under docket number HRB 19168.

"**Subsidiary 2**" means company Winning CoFo – IBEX GmbH, a private limited liability company (*Gesellschaft mit beschränkter Haftung*) with its registered seat at Gewerbepark Am Gründel 11, 09423 Gelenau, Germany, registered with the commercial register (*Handelsregister*) at the local court (*Amtsgericht*) of Krefeld, Germany, under docket number HRB 19155.

"**Subsidiary 3**" means company Winning CoFo – Räuchle GmbH, a private limited liability company (*Gesellschaft mit beschränkter Haftung*) with its registered seat at Räuchlestraße 7, 89165 Dietenheim, Germany, registered with the commercial register (*Handelsregister*) at the local court (*Amtsgericht*) of Ulm, Germany, under docket number HRB 744297.

"**Target Companies**" means the Company and the Subsidiaries and a "**Target Company**" means any of them.

"**Taxes**" means all forms of taxation, taxes, fees, levies and social security and health insurance charges, whether direct or indirect, including in particular corporate income tax, personal income tax (mainly wage withholding tax), withholding taxes, tax security, value added tax, customs duties, excise duties, inheritance tax, gift tax, real estate transfer tax and other transfer taxes, real estate tax, road tax and other property taxes, environmental taxes and other fees, including the payments on the basis of security for unpaid tax and/or types of taxes or levies payable under any applicable national, regional or local law or regulation, together with any related interest, penalties, surcharges or fines and other sanctions or additional charges.

"**Third Party Rights**" means any mortgage, pledge, lien, assignment by way of security, option, right of pre-emption, lease or any other right held, or claim that could be raised, by a third party, and including in particular any lien on thing, arrangements of lien creditors in respect of the order of liens, released lien or change of lien, consent to establish/register lien on property in favour of a third party, right of retention, transfer of rights as security, any other security, prohibition of alienation of or encumbrance on a thing, prohibition to establish a lien, preferential right to some other proprietary right, preferential right to establish proprietary right for another party, note of disputability, right of option, pre-emptive right or any other ancillary arrangement in the purchase agreement (including such arrangements as may be agreed without any connection with the purchase agreement) or other acquisition rights, property rights, easement, right of construction, precarium, loan, right of use, tenancy law, right to lease, license right, right to management, including management of assets through a trust fund, waiver of the right to claim compensation for damage incurred on the land or any other Third Party Rights and claims that might be asserted by any third party and also contracts, agreements or any other arrangements, legal transactions, facts or decisions on the basis of which such Third Party Rights might arise, and including any further motions for the registration of such Third Party Rights into public directories, public registers, the register of pledges or any other lists, records or registers of property or persons kept under a special legal regulation.

"**Total Purchase Price**" has the meaning defined in Article 3.1.

"**Transaction Documentation**" means jointly this Agreement, as well as any other related documents executed by the Parties to this Agreement.

CONFIDENTIAL

FBG_CH1_00095326

**DEBTORS' EXHIBIT NO. 251**
**Page 7 of 79**

"**Working Capital**" the aggregate working capital of the Target Companies, being:

    (a)   Inventories, plus

    (b)   Receivables, plus

    (c)   Other Assets, less

    (d)   Provisions, less

    (e)   Trade payables, less

    (f)   Other Liabilities,

based on Interim Financial Statements and calculated based on specific accounting procedures presented in <u>Annex 3</u>. For avoidance of doubt, Working Capital exclude items considered in Net Debt or Net Cash.

1.2    The interpretation of this Agreement shall be based on the following rules:

    (a)   References to "**Articles**" and "**Annexes**" shall be construed as references to the relevant Articles of and Annexes to this Agreement.

    (b)   References to a "**person**" or a "**party**" shall be construed so as to include any individual, legal entity, trust fund, company, silent partnership, government, state, agency of a state, joint venture, plant, association or society (whether or not having a separate legal personality).

    (c)   References to a "**contract**" shall be construed so as to apply to any contract or agreement, including all subsequent modifications and amendments, and including annexes, business conditions, other indirect contractual arrangements and regardless of the manner and form of their execution.

    (d)   Unless expressly stated to the contrary in this Agreement, references to "**material**" or "**substantial**" payment, settlement, compensation, damage, loss, profit, lost profit, revenues, lost revenues, decrease in asset value, adverse effects, adverse changes or similar events or circumstances or, as the case may be, series of such events or circumstances, or documents or information, shall be construed as a reference to any payment, settlement, compensation, damage, loss, profit, lost profit, revenue, lost revenue, decrease in asset value, adverse effect, adverse change or similar event or circumstance, or a document or information, which in the aggregate monetary equivalent corresponds in any individual case to at least EUR 200,000.

    (e)   The term "**control**" shall be construed within the meaning of Section 74 et seq. of the Companies Act, and the term "**influence**" shall be construed within the meaning of Section 71 et seq. of the Companies Act.

    (f)   References to "**in the ordinary course of business**" shall be construed in connection with the Company and/or the relevant Subsidiary so as to refer to the ordinary business of the Company and/or the relevant Subsidiary as it has been normally carried on from the Signing Date and/or as its pursuit was planned in the business plan of the Company and/or the relevant Subsidiary for the accounting period starting January 1, 2023.

    (g)   References to "**business days**" shall be construed as references to any day, other than Saturday, Sunday and a public holiday pursuant to the current Czech legal regulations.

    (h)   The terms defined in this Agreement in plural shall have the same meaning in the singular, and *vice versa.*

    (i)   The phrase "**to the Seller's knowledge**" or "**to the Seller's best knowledge**" shall be construed as encompassing any and all information, knowledge and facts regarding the economic, financial, accounting, environmental and legal matters of the Company and Subsidiaries, which the Seller, as the sole owner of the Company possess in relation to the Company and the Subsidiaries or which they should have using the care

CONFIDENTIAL

FBG_CH1_00095327

**DEBTORS' EXHIBIT NO. 251**
**Page 8 of 79**

and diligence of a prudent manager within the meaning of Section 5 of the Civil Code as at the date of execution of the Agreement after having duly and fully questioned the members of the executive bodies of the Company and the Subsidiaries;

(j) The provision of Section 556 (2) of the Civil Code shall not apply.

(k) Due to the fact that this Agreement is the result of extensive negotiations between the Parties, none of the articles and none of the terms used in the article concerned will be attributed to any of the Parties as a Party who was the first to use it during negotiations. The provision of Section 557 of the Civil Code shall not apply.

(l) In addition to the provisions of the legislation, the use of which is expressly excluded in this Agreement, for the purposes of this Agreement, other provisions of legal regulations shall not apply, to the extent they are replaced by different covenants of the Parties under this Agreement.

(m) Commercial practices provisions shall not apply to the interpretation of this Agreement.

(n) References to "**damage**" mean (i) always references to damage to property (in Czech "*újma na jmění*") (loss, in Czech "*škoda*") within the meaning of Section 2894 (1) of the Civil Code and also (ii) references to non-proprietary damage (in Czech "*nemajetková újma*") within the meaning of Section 2894 (2) of the Civil Code, only in cases where the liability for the compensation for non-proprietary damage is stipulated separately by the Civil Code or another legal regulation.

(o) References to "**procure**" or "**ensure**", when used to express a person's obligation to procure or ensure that a third party will or will not act in a certain manner, refers to the relevant person's obligation to pay any damages arising in the event that the third person does not perform what has been agreed, pursuant to the second sentence of Section 1769 of the Civil Code.

(p) Neither the Total Purchase Price, nor any portion thereof is provided as an earnest payment (in Czech "*závdavek*").

(q) The headings used in this Agreement are inserted for reference only and shall be irrelevant for the interpretation of this Agreement.

## 2. SUBJECT MATTER OF THE AGREEMENT

2.1 On the terms set out in this Agreement Seller agrees to sell and transfer the Sale Shares on the Closing Date with effectivity to the Effective Date to the Purchaser free and clear of any Third Party Rights, with all the rights and obligations attaching to the Sale Shares, and the Purchaser agrees to purchase and acquire/take over the Sale Share into the Purchaser's ownership from Seller; the Sale Shares will be transferred to the Purchaser by the endorsement in accordance with this Agreement and upon their delivery of the Sale Shares by Seller to the Purchaser. The transfer of Sale Shares shall take effect vis-à-vis the Company upon the presentation of the Sale Shares to the Company.

2.2 In the manner and subject to the conditions set out in this Agreement, the Purchaser will pay the Total Purchase Price for the Sale Shares in accordance with Article 3 of this Agreement.

2.3 The Parties acknowledge that the general purpose of this Agreement is the acquisition by the Purchaser of a 100% participation in the Company, and thus the Purchaser is not interested in a partial performance of this Agreement. If the Seller fails to sell and transfer to the Purchaser all the Sale Shares or transfer only a part of the Sale Shares in accordance with this Agreement, the Purchaser shall not be obliged to purchase and acquire only part of the Sale Shares.

2.4 In the event that any portion of the Seller's commitment to transfer the Sale Shares to the Purchaser becomes impossible, the obligation pursuant to this Agreement will be extinguished in its entirety.

CONFIDENTIAL

FBG_CH1_00095328

**DEBTORS' EXHIBIT NO. 251**
**Page 9 of 79**

## 3.    PURCHASE PRICE

3.1    Total Purchase Price will be determined using the procedure and conditions set out in Article 3.3, provided that the purchase price so determined and possibly subsequently adjusted will be the total purchase price for the Sale Shares (the "**Total Purchase Price**" or "**TPP**").

3.2    The Seller hereby declares that the Estimated Total Purchase Price was determined in good faith as follows

ETPP = Base Purchase Price plus Estimated Net Cash minus Estimated Net Debt plus Estimated Working Capital Adjustment.

ETPP corresponds to EUR 14,940,002.26

3.3    The Purchaser shall, within twenty business days after Completion, prepare and deliver to the Seller a report on the final Total Purchase Price that will be determined after Completion to the moment as of Completion as follows:

TPP = Base Purchase Price plus Final Net Cash minus Final Net Debt plus Final Working Capital Adjustment.

The Total Purchase Price report will be drawn up on the basis of the Interim Financial Statements prepared by the Company as of Completion.

Only material or substantial discrepancies between ETPP and TPP shall affect already realised payments.

Should the Purchaser fail to provide report on the final Total Purchase Price within twenty business days after Completion the Estimated Total Purchase Price shall automatically become Total Purchase Price unless Seller raise Notice of Objection (see below) within twenty five business days after Completion. In such a case the below described procedure after raising of Notice of Objection shall apply.

(a)    If the Seller fails to raise any objections against the calculation of the Total Purchase Price by a notice of objection that shall include disputed items and justification of the objections raised (the "**Notice of Objection**") and that shall be delivered to the Purchaser within ten business days following the receipt of the Total Purchase Price report by the Seller, the calculation of the Total Purchase Price performed by the Purchaser shall be deemed tacitly accepted by the Seller after the expiry of such time limit and shall be binding upon the Parties. The Purchaser shall ensure that after Completion the Seller and their advisors and representatives have for the purpose of preparation of the Notice of Objection access to the accounting records of the Target Companies to the extent that is necessary to review the merits of the calculation of the Total Purchase Price.

(b)    In the event that the Seller delivers to the Purchaser the Notice of Objection within the time limit specified in lit. (a) above and the Parties do not agree on the determination of the Total Purchase Price within five business days following the delivery of such Notice of Objection to the Purchaser, the Seller agrees to submit within ten business days after such date its reasoned written counterproposal to determine the Total Purchase Price to the Purchaser and the Expert. The Expert will review it and determine the amount of the Total Purchase Price in twenty business days. If the Seller fails to submit its reasoned counterproposal within the aforementioned time limit, the calculation of the Total Purchase Price performed by the Purchaser shall be deemed tacitly accepted by the Seller after the expiry of such time limit and shall be binding upon the Parties.

(c)    The Expert will hand down its decision pursuant to Article (b) above together with its reasoning within twenty business days after the submission of the Seller's counterproposal for the calculation of the Total Purchase Price to the Expert. The decision may involve the acceptance of the proposal of any of the Parties or

CONFIDENTIAL                                                                FBG_CH1_00095329

**DEBTORS' EXHIBIT NO. 251**
**Page 10 of 79**

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

establishing any new amount of the Total Purchase Price which, however, must be in the range between individual proposals of the Parties and respect the principles and procedures for calculating the Total Purchase Price defined in this Agreement. The Expert's delay in completing the decision under this Article shall not render such decision invalid. The Expert's decision on determining the amount of the Total Purchase Price shall be final and binding upon the Parties. Expenses associated with the Expert's activities shall be borne by Party which proposed Total Purchase Price more different from the Total Purchase Price determined by Expert.

(d) If pursuant to the final and binding determination of the Total Purchase Price under the preceding provisions of this Agreement:

(e) the Total Purchase Price is lower than the Estimated Total Purchase Price, the Seller shall pay to the Purchaser the resulting difference within five business days after the date of the final and binding determination of the Total Purchase Price to such bank account as is notified by the Purchaser;

(f) the Total Purchase Price exceeds the Estimated Total Purchase Price, the Purchaser agrees to pay to the Seller the resulting difference within five business days after the final and binding determination of the Total Purchase Price, so that the Purchaser will pay the difference to the bank account no. IBAN: CZ53 5800 0000 0025 0009 8429, BIC (Swift): JTBPCZPP or other bank account of Seller notified by the Seller.

## 4. OBLIGATIONS OF THE PARTIES DURING THE INTERIM PERIOD

4.1 From the Signing Date up to the Closing Date (the "**Interim Period**"), the Seller agrees to provide the Purchaser with all information concerning the Target Companies' activities that the Purchaser may reasonably request from the Seller with a view to accomplishing the purpose of this Agreement.

4.2 The Seller agrees, throughout the Interim Period, without the prior written consent or approval of the Purchaser, not to alienate the Ownership Interests or Sale Share and not to transfer any of the rights attached to any of the Ownership Interests or Sale Share to any third party, and not to encumber any Ownership Interest or Sale Share by any Third Party Right.

4.3 Furthermore, the Seller commits himself to the Purchaser within the meaning of Section 1769, second sentence of the Civil Code to ensure that, throughout the Interim Period, subject to the prior written consent or approval of the Purchaser, and except as expressly provided otherwise herein or required by generally binding law or the final and binding decision of the relevant court or another authority:

(a) the Company and the Subsidiaries will carry on their business as going concern with the due care of a prudent manager and in a manner consistent with prior practice;

(b) the Company and the Subsidiaries will not change to a material extent their business practice or the object of their business;

(c) the Company and the Subsidiaries will preserve their business enterprise intact in all material respects and conserve the goodwill and relationships with their customers, suppliers, employees and other persons having business relations with the Company and/or the Subsidiaries, and the Company and the Subsidiaries will settle their debts by the agreed due dates;

(d) the Company and Subsidiaries will not change their accounting period or their accounting policies, other than as required by applicable laws or changes in the accounting standards;

(e) the Company and the Subsidiaries will not distribute profits or pay share in profit or an advance with respect thereto, or make any other profit distributions or payments to the members or shareholders, or to members of their bodies;

CONFIDENTIAL FBG_CH1_00095330

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

(f) there will be no increase or reduction in the registered capital of the Company or the Subsidiaries;

(g) neither the Company nor any of the Subsidiaries will acquire any of its own shares, ownership interest, or certificates of ownership;

(h) neither the Company nor any of the Subsidiaries will change the class, type, form or par value of, or any rights attached to, any of their shares; Neither the Company, nor the Subsidiaries will amend the memorandum of association and/or the articles of association of the Company or its Subsidiaries by their decision and they will not take any action that would result in the amendment of the memorandum of association and/or the articles of association of the Company or Subsidiaries;

(i) The Company will not change the types of its Sale Share;

(j) The Company will not issue any no-par value (NPV) shares for the Company's Shares;

(k) there will be no liquidation, merger, spin-off or, if appropriate, change of legal form or any other conversion in respect of the Company or the Subsidiaries;

(l) there will be no sale of the business, branch or any other part of the business owned by the Company or any of the Subsidiaries;

(m) other than in the ordinary course of business, neither the Company nor the Subsidiaries shall assume any material debts or obligations;

(n) there will be no change in any wage entitlements beyond the applicable collective bargaining agreements;

(o) other than in the ordinary course of business, neither the Company nor the Subsidiaries shall sell, lease, entrust the management of, allocate to the trust fund, assign, transfer or otherwise dispose of any of its assets or their material portion (material assets) and no Real Estate shall be transferred or acquired, nor will be any third party assets taken over by the Company or the Subsidiaries (restrictions also apply to actions that would result in the transfer or passage of assets by operation of law);

(p) other than in the ordinary course of business, no Third Party Rights, and in particular no security interest or collateral rights, will be created with respect to any of the assets of the Company or the Subsidiaries (restrictions also apply to actions that would result in the creation or establishment of Third Party Rights by operation of law or whereby consent would be given to the creation or establishment of Third Party Rights);

(q) the Company and/or the Subsidiaries will not make any single capital investment in excess of EUR 10,000, nor will they make any capital investments exceeding in the aggregate EUR 50,000; other than those contemplated in the financial plans of the Company or Subsidiaries and disclosed to the Purchaser;

(r) the Company and/or Subsidiaries will not enter into any loan agreement or credit facility (whether as debtor or as creditor);

(s) other than in the ordinary course of business, neither the Company nor the Subsidiaries will assume, accede to, act as surety or provide any other security for debts of any third party, and they shall refrain from taking any action which would or could lead to the emergence of new debt for whose settlement the Company or its Subsidiary is liable or in cases where the Company or its Subsidiary is liable for damage caused to any third party as a result of failure to settle the debt;

(t) other than in the ordinary course of business, the Company or Subsidiaries will not draw down any credit funds under existing credit facilities to which they are a party;

(u) neither the Company, nor any of the Subsidiaries will discharge any third party from debt or waive any right, claim, Receivable, compensation, performance or objection and will refrain from any legal or factual action that would result in discharge, waiver,

CONFIDENTIAL

FBG_CH1_00095331

termination, unenforceability, termination of legal consequences, change in the order of enforcement or recovery or another change of conditions of enforcement or recovery of any right, claim compensation, Receivable, performance or objection;

(v) the Company and/or Subsidiaries will not make any changes to the terms of engagement of members of their elected bodies (directors, officers), employees, agents or consultants and, in particular, make any adjustments in the conditions of remuneration and bonus payments, including any extraordinary bonuses or severance payments in the event of termination of office or removal from office, except where such changes may be required by law or under current contractual obligations, nor will they make any severance, termination, indemnification or similar payment to its directors, officers, employees, agents or consultants, except where such payment may be required by law or under current contractual obligation;

(w) the Company and/or Subsidiaries will not appoint or employ any new officers, employees, agents or consultants at an annual salary, wage or fee rate in excess of EUR 100.000;

(x) the Company and/or Subsidiaries will not take any legal or factual action with the intention of causing, or which is reasonably likely to result in, any of the Seller's Representations made herein to be incorrect, false or incomplete on the Closing Date;

(y) the Company and/or Subsidiaries will not form any new subsidiary, acquire any shares in any joint-stock company or any ownership interest in any limited liability company or any participation or equity interest in any other business;

(z) the Company and Subsidiaries will maintain all their machinery, equipment, fixtures and other tangible assets in the existing condition and repair, subject to ordinary wear and tear, consistent with their past practice;

(aa) the Company and Subsidiaries will maintain in full force and effect all existing insurance policies with limits of indemnity at least equal to the limits under, and otherwise on terms no less favourable than, those policies of insurance currently maintained by the Company and Subsidiaries;

(bb) neither the Company, nor any of the Subsidiaries will enter into, change or terminate any agreement (including changes of its content or parties or assignment of the existing agreement), nor will they grant consent to such action to the other Party, with any of the major suppliers and major customers or beyond the ordinary course of business.

## 5.   CLOSING

5.1   Completion shall take place on Closing Date at 9 AM in offices of Havel & Partners attorneys at law at Nové Sady 25, 602 00, Brno, Titanium Business Centre.

5.2   The Parties agree to use their respective best efforts to ensure that the individual steps of the closing of the transaction as described in Articles 5.3 below are taken immediately one after the to effectuate the Completion.

5.3   The Seller and Purchaser shall take the respective following legal and factual action:

(a) The Seller represents and confirms to the Purchaser all Seller's Representations with effectivity to the Closing Date and complying with all of his obligations during the Interim Period;

(b) The Purchaser represents and confirms to the Seller all Purchaser's Representations with effectivity to the Closing Date;

CONFIDENTIAL

FBG_CH1_00095332

(c)     The Seller delivering evidence that the Seller is authorised to effect the transactions contemplated by this Agreement in particular but not limited to the execution of the endorsement and transfer of the Sale Shares to the Purchaser and other steps and actions to occur on Completion;

(d)     The Purchaser delivering evidence that the Purchaser is authorised to effect the transactions contemplated by this Agreement;

(e)     The Seller endorse the Sale Shares in favour of the Purchaser on its back with the following endorsement, duly signed by the Seller: "*Za Winning Group a.s., se sídlem Křižíkova 2960/72, Královo Pole, 612 00 Brno, Czech Republic, identifikační číslo 06794050 (jako Převodce) na řad Horizon International Holdings LLC, se sídlem 838 Walker Road, Suite 21-2, Dover, Zip code 19904, Delaware, USA (dříve 2711 Centerville Road, Suite 400, Wilmington, Zip code 19808, Delaware, USA) identifikační číslo 5711460 (jako Nabyvatele). V Brně, dne 2. ledna 2024, za Winning Group a.s., [signature], JUDr. Martin Drahotský, advokát, na základě plné moci* ",* and signs the handover protocol regarding the Sale Shares, the Seller will keep the Sale Shares and the hand over protocol;

(f)     The Seller delivering the original Pay-off Letter (Seller);

(g)     The Purchaser to pay or procuring the payment made on its behalf Pay-off Amount to the Seller' bank account no. IBAN: CZ53 5800 0000 0025 0009 8429, BIC (Swift): JTBPCZPP;

(h)     The Purchaser to pay or procuring the payment made on its behalf the Estimated Total Purchase Price to the Seller' bank account no. IBAN: CZ53 5800 0000 0025 0009 8429, BIC (Swift): JTBPCZPP;

(i)     The Seller as the sole shareholder of the Company (i) adopts a new full wording of the Company's articles of association (in Czech: *stanovy*) in a form provided by the Purchaser at least two business days before Completion (subject to any changes requested by the notary) and (ii) recalls the current members of the statutory body of the Company and ensures recall of Mr. Sebastian Wagner, born on 3 June 1985, residing at Zell am Harmersbach from the position of CEO of all Subsidiaries and ensures appointment of Mr. Shekhar Kumar, born on 16 November 1984, residing at 126 Hauxhurst Ave, Weehawken, NJ 07086, the United States of America, Mr. Stephen Graham, born on 24 December 1957, residing at 4492 Rock Ridge LN, Akron, OH 44333, the United States of America, and Michael Baker, born on 9 July 1972, residing at 32 Regency PL, Weehawken, NJ 07086, the United States of America, as members of the statutory body of the Company and as the members of the statutory bodies of all the Subsidiaries;

(j)     All Purchaser's payments stipulated in paragraphs (g) and (h) credited to the relevant bank accounts;

(k)     The Seller hands over to the Purchaser and Purchaser accepts from Seller the Sale Shares and signs the handover protocol on acceptance of the Sale Shares.

5.4     Should the provisions of Articles 5.3 fail to be fulfilled on the Closing Date in any respect material to a Party, this Party will not be obliged to complete the transaction and may by a written notice with immediate effect:

(a)     postpone the closing of the transaction to five business day after the Closing Date, provided that the adjourned meeting will be governed, *mutatis mutandis*, by the provisions of Article 5.3 adjusted as appropriate or necessary, and/or

(b)     without prejudice to the rights of a Party under this Agreement, proceed, as far as practicable, with the transactions contemplated by this Agreement; and

14 / 76

FBG_CH1_00095333

should the transaction fail to be closed at the next following adjourned meeting concerning the completion of the transaction, adjourned in accordance with Article (a), by reason of a breach of the obligations specified in Article 5.3, the other Party rescind this Agreement. The breaching party shall be obliged to pay Break up Fee within 5 (five) business days from the date of adjourned meeting concerning the completion of the transaction.

5.5 Within 25 business days after Completion, the Purchaser undertakes to procure the Company files a motion for a change of shareholder with the Commercial Register and real owner with the Real owners Register, change in members of current statutory body of the Company, changes the corporate name of the Company and Subsidiaries so it does not contain "Winning".

## 6. REPRESENTATIONS AND WARRANTIES OF THE PARTIES

6.1 The Seller hereby represents and warrants to the Purchaser that, as at the Signing Date, (i) the Seller and the persons acting on its behalf have the power (a) to execute this Agreement and all other agreements to be concluded in connection with this Agreement (b) to perform its obligations under this Agreement and all other agreements to be concluded in connection with this Agreement and (c) to consummate the transactions contemplated in this Agreement and all other agreements to be concluded in connection with this Agreement (ii) the Seller is the sole owner of the Sale Shares and the Sale Shares have been validly issued and are fully paid up and not repaid, and the Sale Shares are not subject to Third Parties Rights (iii) the Company is the sole owner of Ownership Interest 1, Ownership Interest 2 and Ownership Interest 3, which have all been validly issued and are fully paid up and Ownership Interest 1, Ownership Interest 2 and Ownership Interest 3 are not subject to Third Parties Rights , (iv) the Seller did not enter into any agreement corresponding to this Agreement, (v) the Seller has not (a) been declared bankrupt, (b) become insolvent, (c) declared a moratorium or been unable to pay its/his debts as they become due or (d) entered into bankruptcy, settlement, execution proceedings, enforcement of any judicial decision or any similar proceedings in any jurisdiction that might influence its capacity to fulfill its obligations hereunder, (vi) the Seller represents that the conclusion of this Agreement and any other documents related to this Agreement shall not constitute a breach of any legal regulation, contractual or other obligation, (vii) each Target Company does in all material respects comply with applicable data protection legislation, including: (a) the data protection principles established under each legislation in which the Target Companies operate; and (b) requests from data subjects for access to data held by it and (viii) (a) each Target Company has always paid, withheld or transferred all Taxes when due, (b) all Taxes filings that each Target Company was obliged to have been filed until the date hereof have been filed completely, in a timely manner and with a correct content, (c) each Target Company has retained and holds all documents the retention and holding of which is mandatory for Taxes purposes, and it has documented all acts which are relevant for Taxes purposes and in particular all transfer prices in the scope required. The Seller hereby represents and warrants to the Purchaser that  all of the representations and warranties contained in this Article are true, correct and complete, (ix) all members of statutory body of the Company were in relation to the function as member of statutory body of Company reimbursed and they will not request any additional payment towards Company, and (x) Mr .Sebastian Wagner, born 3.6.1985, residing at Zell am Harmersbach was in relation to the function as a member of statutory body of the Subsidiaries reimbursed and he will not request any additional payment towards Subsidiaries (the "**Seller's Representations**"). The Seller acknowledges that the Purchaser enters into the transaction contemplated by this Agreement in reliance on the Seller's Representations.   The Purchaser agrees and acknowledges that the Seller's Representations are the only and exclusive representations and warranties given by the Seller under this Agreement and in relation to the transfer of the Sale Shares and with respect to the Target Companies.

6.2 The Purchaser hereby represents and warrants to the Seller that, as at the Signing Date, (i) the Due Diligence was executed in the scope as requested by the Purchaser and there are not any issues, documents, decisions or any other thing missing which could have impact on the decision of the Purchaser to acquire the Company, (ii) Purchaser is aware of planned closing of Business

CONFIDENTIAL

FBG_CH1_00095334

activities of Subsidiary 2 with its registered seat in Gelenau, (iii) Purchaser checked the obligation of reporting of acquirement of Target Companies by the respective office for the protection of competition / foreign direct investment control and take-over any and all responsibilities related with breach of obligation to report the acquirement of Company and Target Companies (iv) the Purchaser and the persons acting on its behalf have the power (a) to execute this Agreement and all other agreements to be concluded in connection with this Agreement (b) to perform its obligations under this Agreement and all other agreements to be concluded in connection with this Agreement and (c) to consummate the transactions contemplated in this Agreement and all other agreements to be concluded in connection with this Agreement. This Agreement and all other agreements to be concluded in connection with this Agreement, once they have been duly executed with signatures thereon of all of their signatories, shall constitute binding, legal and valid obligations of the Purchaser enforceable against the same in accordance with their terms and these declarations, (v) The Purchaser has not (a) been declared bankrupt, (b) become insolvent, (c) declared a moratorium or been unable to pay its/his debts as they become due or (d) entered into bankruptcy, settlement, execution proceedings, enforcement of any judicial decision or any similar proceedings in any jurisdiction that might influence its capacity to fulfil its obligations hereunder. All of the representations and warranties contained in this Article are true, correct and complete (the "**Purchaser's Representations**"). The Purchaser acknowledges that the Seller enters the transaction contemplated by this Agreement in reliance on the Purchaser's Representations.

6.3    The Purchaser further represent and warrants to the Seller that:

a)    the Purchaser has carried out the due diligence of the Target Companies in the extent to which a prudent purchaser considering buying the Sale Shares would have normally effected and has made its own independent evaluation of the Target Company and the Sale Shares and the financial condition and affairs and creditworthiness of the Target Company with professional care. The Purchaser confirms that during due diligence it had sufficient access to the Disclosed information, other information relating to the Target Company, its activities, status and assets, as well as documentation and personnel of the Target Company, including its management and key employees, and that the Purchaser had the opportunity to obtain all the information it considered to be important from the point of view of its decision to enter into the Agreement and to acquire the Sale Shares;

b)    the Purchaser is not aware of any facts or matters which could reasonably be expected to give rise to a claim being made against any Seller for any Breach of the Seller's Representations;

c)    At the Completion, the Purchaser will have adequate resources, including equity and financial resources, to perform all of its obligations under the Transaction documentation and current obligations of the Target Companies;

d)    Without undue delay after Completion, the Purchaser will contact Merca Leasing and Commerz Real Mobilienleasing and ensures the Parent Guarantee of the Seller will not be applied and the above-mentioned companies issue confirmation that the Seller is released from its obligations arising from the Parent Guarantee of the Seller on or before 31 March 2024;

e)    The Purchaser hereby provides irrevocable and first call Parent Guarantee of the Purchaser in favour of the Seller that he will without further reimburse the Seller all damage incurred by the application of Parent Guarantees of the Seller from Merca Leasing and Commerz Real Mobilienleasing up to EUR 6.000.000 or such higher amount arising from the breach of obligations of the Target Companies post-Completion;

6.4    At the request of the Seller the Purchaser shall ensure, to the extent permissible, that the Target Companies provide assistance and transfer all information needed for preparation of year-end financial statements and audit procedures relating to the subsidiaries of the Seller and Target Companies to the Seller.

16 / 76

**DEBTORS' EXHIBIT NO. 251**
**Page 16 of 79**

7. **LIABILITY OF THE PARTIES FOR BREACH OF REPRESENTATIONS AND WARRANTIES**

7.1 The Parties acknowledge and agree that any potential breach of the Seller's Representations, in particular if any of the Seller's Representations is found to be false, incorrect or incomplete (the "**Breach of the Seller's Representations**") the Seller shall pay to the Purchaser an amount necessary to put the Purchaser and/or the Company, as applicable, into the position which would have existed had the Breach of the Seller's Representations not occurred, including, but not limited to, any losses (both foreseeable and not foreseeable and irrespective of fault) of the Purchaser and/or the Company including actual loss, and all reasonable and evidenced costs and expenses, including reasonable legal fees, experts' fees and consultants' fees and all reasonable and evidenced costs and expenses incurred by the Purchaser and/or the Company in connection with the Breach of the Seller's Representations (including in connection with making and enforcing a claim for Breach of the Seller's Representations and curing the circumstances that gave rise to the Breach of the Seller's Representations) up to (i) in relation to warranties in 6.1 (i) – (vi) the amount of the Total Purchase Price and in relation to remaining warranties the Seller's liability under this Agreement will be limited 10% of Total Purchase Price received by Seller.

7.2 The Parties hereby agree that unless otherwise provided in this Agreement or another written arrangement between the Parties, the Purchaser shall not be entitled to raise any other legal claims in the event of Breach of the Seller's Representations, in particular to demand damages, rescission from this Agreement or removal of the defect in case of Breach of the Seller's Representations. Any potential Breach of the Seller's Representations shall be taken into account in the calculation of Total Purchase Price.

7.3 The afore mentioned limitation referred to in Article 7.1 shall not apply to any damage caused deliberately or by gross negligence.

7.4 The Seller's Representations shall not be deemed to be false, incorrect or incomplete if referring to any fact or circumstance that is (i) stated in this Agreement, (ii) is Public Information or (iii) is Disclosed information.

7.5 The provisions of Section 1921, Section 1922, Section 1923, Section 2101, Section 2106, Section 2107, Section 2110, Section 2111 and Section 2112 of the Civil Code will not be used and are replaced with the covenants set out in this Agreement.

7.6 The Purchaser hereby agrees to ensure that neither the Company nor the Subsidiaries will not raise any claims against members of statutory body of the Company and Subsidiaries after the Completion in relation to the performance of their duties in the capacity of members of the elected bodies of the Company or Subsidiaries in the period prior to the Completion. If, according to a final court decision constituting a payment obligation for members of the elected bodies of the Company or Subsidiaries with respect to the Company or Subsidiaries in connection with the performance of their duties in office before the Completion, a member of the Company's elected bodies is required to perform in favour of the Company or Subsidiaries, the Purchaser agrees to compensate the relevant member of the elected bodies of the Company or Subsidiaries for whatever has been performed by such member of the elected bodies of the Company or Subsidiaries based on the above final court decision, due to a breach of the Purchaser's obligation pursuant to the first sentence of this Article. The Purchaser shall compensate a member of elected bodies of the Company or Subsidiaries for his performance pursuant to this Article within ten days after the delivery of a written notice from the Seller.

7.7 The Purchaser hereby declares that his obligation mentioned in Article 7.6 shall be transferred also to the legal successors of Purchaser. Should the Purchaser breach this obligation, the Purchaser shall be obliged to reimburse the members of statutory body of the Company and Subsidiaries in full.

7.8 The Purchaser hereby declares that in case of breach of obligations of Target Companies (except for breach occurring pre-Completion) to fulfil their obligation towards Merca Leasing and Commerz Real Mobilienleasing, the Purchaser shall be obliged to pay to the Seller contracting

CONFIDENTIAL

FBG_CH1_00095336

**DEBTORS' EXHIBIT NO. 251**
**Page 17 of 79**

penalty corresponding to the amount paid by the Seller to the mentioned companies due to breach of Purchaser's obligation up to EUR 6.000.000.

7.9    The Purchaser hereby declares that as of the Completion the Seller shall in maximum possible extent be released from any liabilities provided as a secure in favour of Company and Subsidiaries and the Purchaser takes-over in maximum possible extent and accepts all such liabilities, including provision of Parent Guarantee of the Purchaser. The release and take-over of liabilities shall be taken in into account in the calculation of Total Purchase Price.

## 8.    OTHER COVENANTS

8.1    The Seller undertakes that it shall not and shall procure that none of its Affiliates shall:

    (a)    For a period of two years from Completion be concerned in any business carrying on business in the Czech Republic and Germany which is competitive or likely to be competitive with any of the businesses carried on by the Company or any of its Subsidiaries at Completion with exception of activities (undertaken as of Completion) of current companies from the group of the Seller;

    (b)    for a period of two years from Completion and except on behalf of the Company or its Subsidiaries canvass or solicit orders for goods of a similar type to those being manufactured or dealt in or for services similar to those being provided by any Target Company at Completion from any person who is at Completion or has been at any time within the  two years prior to Completion a customer of a Target Company;

    (c)    for a period of two years from Completion induce or attempt to induce any supplier of a Target Company to cease to supply, or to restrict or vary the terms of supply, to that Target Company;

    (d)    for a period of two years from Completion induce or attempt to induce any director or senior employee of a Target Company to leave the employment of that Target Company;

    (e)    make use of or (except as required by law or any competent regulatory body) disclose or divulge to any third party any information of a secret or confidential nature relating to the business or affairs of any Target Company or its customers or suppliers; or

    (f)    use or (insofar as it can reasonably do so) allow to be used (except by the Target Companies) any trade name used by a Target Company at Completion or any other name intended or likely to be confused with such a trade name.

8.2    For the purposes of this:

    (a)    the Seller is concerned in a business if it carries it on as principal or agent or if:

    (i)    it is a partner, director, employee, secondee, consultant or agent in, of or to any person who carries on the business; or

    (ii)    it has any direct or indirect financial interest (as shareholder or otherwise) in any person who carries on the business; or

    (iii)    it is a partner, director, employee, secondee, consultant or agent in, of or to any person who has a direct or indirect financial interest (as shareholder or otherwise) in any person who carried on the business,

disregarding any financial interest of a person in securities which are listed or traded on any generally recognised market if that person, the Seller and any person connected with it (the **Investors**) are together interested in securities which amount to less than five per cent. Of the issued securities of that class and which, in all circumstances, carry less than five per cent. Of the voting rights (if any) attaching to the issued securities of that class, and provided that none of the Investors is involved in the management of the business of the issuer of the securities or of any person connected with it other than by the exercise of voting rights attaching to the securities; and

18 / 76

(b)  references to a Target Company include its successors in business.

8.3  The Seller acknowledges that the above provisions of this clause are no more extensive than is reasonable to protect the Purchaser as the purchaser of the Sale Shares.

8.4  Seller will not and shall procure that none of its Affiliates will, directly or indirectly, make, publish, or communicate any statements or representations that are disparaging, derogatory, or defamatory of any Target Company or any of their respective officers, directors, employees, agents, affiliates, products, services, or reputation, or that could reasonably be expected to adversely affect the goodwill, business, or reputation of any Target Company or any of their respective officers, directors, employees, agents, or affiliates. Seller further agrees to refrain from taking any action or making any statement that could interfere with or impair the relationship between any Target Company and any of their respective customers, suppliers, partners, or other business associates.

8.5  The Seller hereby confirms that after payment of the Pay-Off Amount there will be no further obligations of Company towards the Seller and its subsidiaries other than Target Companies. With effect from Completion, the Seller acting severally shall, and shall severally procure that each of its Affiliates and  members of statutory body of the Company, and Mr .Sebastian Wagner shall, release and discharge each Target Company from any and all liabilities or obligations to the Seller or its respective Affiliates and the Seller waives, and shall procure that its Affiliates shall waive, any and all claims (in the absence of fraud) it has or may have against any Target Company, except of Real Estate Lease Agreements.

9.  **TERMINATION**

9.1  Rescission of this Agreement or any other unilateral termination of this Agreement is acceptable only for any of the reasons stated in this Agreement. The Parties agree that application of any non-mandatory provisions of the Civil Code governing the right of notice, rescission or any other unilateral termination of a contract is precluded by this reference. The provisions of Section 1977 to Section 1980, Section 2002(1), first sentence, and Section 2003(1) of the Civil Code will not apply and are replaced with the covenants set out in this Agreement.

9.2  The Purchaser may rescind this Agreement if a situation referred to in Article 5.4(b) above occurs.

9.3  The Seller may rescind this Agreement if an event described in Article 5.4(b) occurs.

9.4  Rescission of this Agreement must be made in writing and shall enter into effect on the date of its delivery to the intended recipient Party. As of the effective date of the rescission, any and all rights and obligations of the Parties under this Agreement shall cease to exist. The Parties agree that should this Agreement be cancelled by a rescission notice, they shall settle their mutual obligations within fifteen business days after the effective date of the rescission and, in particular, shall return to each other within said period of time all that they have performed or provided to each other prior to the rescission of this Agreement.

9.5  Rescission of this Agreement shall not affect the rights resulting from Article 10. Rescission of this Agreement, or its repudiation for any other reason, shall not affect the obligations of the Parties in respect of Confidential Information as specified in Article 12.1, which will remain in force until all of the Confidential Information has become publicly available other than as a result of a breach of Article 12.1.

10.  **GOVERNING LAW; DISPUTE RESOLUTION**

10.1  This Agreement and any and all amendments hereto shall be governed by and construed in accordance with the laws of the Czech Republic.

10.2  The Parties agree to use their best efforts to settle any dispute arisen under or in connection with this Agreement and/or the Transaction Documentation (the "**Dispute**") amicably.

10.3  If the Parties fail to resolve a Dispute amicably, the Dispute, including the issues of validity, interpretation, settlement or termination of the rights stemming from this Agreement or the

CONFIDENTIAL

FBG_CH1_00095338

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

Transaction Documentation, shall be referred to a Czech court having the subject-matter jurisdiction. For such a case the Parties agreed the local jurisdiction in Brno.

**11. NOTICES**

11.1 Unless expressly stipulated otherwise in this Agreement, the communications exchanged between the Parties, in particular any notices or other communications required under this Agreement and/or the Transaction Documentation, shall be in writing in the English language and shall be delivered to the other Party at the following addresses and numbers solely (i) by hand delivery, (ii) by registered letter sent by a recognised mail provider, (iii) by a courier service provider enabling confirmation of delivery, or (iv) via email and followed by one of the methods referred to under (i) to (iii).

11.2 Mailing address of Seller:

| | |
|---|---|
| Company: | Winning Group a.s. |
| Attention: | Mr. Sebastian Wagner |
| Address: | Křižikova 2960/72, Královo Pole, 612 00 Brno |
| E-mail: | sebastian.wagner@be-winning.com |
| Country: | Czech Republic |

with CC to:

| | |
|---|---|
| Attention: | Mr. Martin Drahotský |
| Address: | Křižikova 2960/72, Královo Pole, 612 00 Brno |
| E-mail: | martin.drahotsky@be-winning.com |
| Country: | Czech Republic |

11.3 Mailing address of the Purchaser:

| | |
|---|---|
| Company: | Horizon International Holdings LLC |
| Attention: | Legal Department |
| Address: | 127 Public Square, Suite 5300, Cleveland, Ohio 44114 |
| Country: | United States |

With CC to:

| | |
|---|---|
| E-mail: | legalcontracts@firstbrandsgroup.com |

11.4 A Party shall notify the other Party without undue delay of any change of the facts contained in Articles 11.2 or 11.3 and any other change in its mailing address/change in the address of the registered office or the place of residence, respectively by a registered letter signed by its executive body, or a member thereof, and sent to the address specified in Article 11.2 or 11.3 (as such address may be duly changed from time to time).

**12. CONFIDENTIALITY AND PUBLICITY**

12.1 None of the Parties shall provide any third party with any information about the terms and conditions of this Agreement and the associated negotiations and the Seller shall treat as strictly confidential and not disclose or use any information relating to the identity of the Purchaser, and information relating to the Company following Completion and any other information relating to the assets, liabilities, business, financial or other affairs (including future plans and targets) of the Target Companies or the Purchaser, ("**Confidential Information**") without the prior written consent of such other Parties, except for (i) its consultants bound by the confidentiality obligation in a similar scope, (ii) relevant state and other administrative authorities and courts where the Parties are required under generally applicable legal regulations to provide the authorities with

CONFIDENTIAL

FBG_CH1_00095339

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

such information, or (iii) information that is or will become publicly available other than as a result of a breach of this Agreement.

12.2 None of the Parties shall make any public statement and shall not provide any information to the public regarding the existence or the subject matter of this Agreement without the prior written consent of the other Parties. The provision in the preceding sentence does not apply to any public statements made or information disclosed in accordance with applicable laws or based on the lawful request of any governmental authority, court or administrative authority, or in compliance with the trading rules of any relevant regulated securities market, if the Party required to make such a public statement or to disclose such information informs the other Parties as soon as possible before complying with such an obligation.

## 13. FINAL PROVISIONS

13.1 Any and all payments to be made under this Agreement shall be effected by bank transfer to the relevant bank accounts. Any payment to be made by either Party shall be made in full without any set-off, restriction or condition (whether for, or on account of, any counterclaim or otherwise) and without, and free and clear of, any deduction or withholding whatsoever (save only as required by applicable law). If any deductions or withholdings are required by law to be made from any of the sums payable under this Agreement, the payer shall be obliged to pay to the recipient such sum as will, after such deductions or withholdings have been made, leave the recipient with the same amount as it would have been entitled to receive in the absence of any such requirement to make any such deductions or withholdings.

13.2 Unless expressly stated otherwise, each Party shall bear its own costs incurred in connection with or as a result of the performance of its obligations ensuing from or relating to this Agreement.

13.3 None of the Parties may assign, transfer or pledge this Agreement or the Transaction Documentation, or any of its rights, obligations, debts, receivables or claims arising from this Agreement or the Transaction Documentation, without the prior written consent of the other Party.

13.4 Unless this Agreement expressly stipulates otherwise, in the event that any amount in one currency is to be converted into other currency to enable a Party to duly perform its obligations under this Agreement, the Parties agree to use an exchange rate announced by the Czech National Bank as at the first day of the calendar month in which such conversion occurs.

13.5 If any provision of this Agreement is found by any competent court or other authority to be invalid, ineffective or unenforceable, such provision shall be deemed to be deleted from this Agreement and the remaining provisions of this Agreement shall remain in full force and effect, if it may be assumed that the Parties would enter into this Agreement even without such provision, had they recognized its apparent, invalid or unenforceable nature in time (severability provision). In such an event, the Parties shall execute without undue delay amendments to this Agreement necessary in order to achieve the same or, if not possible, the closest possible effect to that of the respective invalid, ineffective or unenforceable provision.

13.6 The Parties for the purposes of this Agreement assume the risk of a change in circumstances. Provisions of Section 1765 to Section 1767 and Section 1788 (2) of the Civil Code shall not apply.

13.7 This Agreement constitutes the entire agreement between the Parties relating to the subject matter hereof and supersedes any and all previous agreements between the Parties relating to the subject matter hereof.

13.8 This Agreement enters into force and effect as of the Signing Date.

13.9 Provision of Section 1740 (3) of the Civil Code shall not apply to this Agreement or execution of an amendment to it.

13.10 This Agreement will only be concluded if the proposal is accepted by all Parties set out in the heading of this draft.

CONFIDENTIAL

FBG_CH1_00095340

**13.11** This Agreement has been executed in two identical counterparts in the English language. Each Party shall receive one counterpart hereof.

**13.12** This Agreement will be executed in writing. Furthermore, the Parties expressly agree that this Agreement may be amended or cancelled only in writing and no changes shall be effective unless made in the form of numbered amendments.

**13.13** The Annexes referred to throughout this Agreement, a list of which in enclosed hereto, form an integral part hereof.

CONFIDENTIAL

FBG_CH1_00095341

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

**LIST OF ANNEXES**

Annex 1          Estimated Financial Statements

Annex 2          Net Debt Calculation

Annex 3          Working Capital calculation

Annex 4          List of Disclosed Information

Annex 5          USB with Disclosed information - intentionally omitted to be handed over on
Closing Date

CONFIDENTIAL                                                                    FBG_CH1_00095342

DEBTORS' EXHIBIT NO. 251
Page 23 of 79

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

## SIGNATURE PAGE

**The Parties hereby expressly acknowledge that they enter into this Agreement as their free will and deed, in witness whereof they attach their respective signatures hereunto.**

| **Seller** | **Purchaser** |
|---|---|
| At: *Signed electronically* | At: *Signed electronically* |
| Date: 22December 2023 | Date: 22December 2023 |

| DocuSigned by: | DocuSigned by: |
|---|---|
| *Sebastian Wagner* | |
| 6D4F3FB1C4FF416... | 5DC9E2269BE44FC... |
| Name: Sebastian Peter Wagner | Name: Shekhar Kumar |
| Title: Chairman of the Board of Directors | Title: Senior Vice President – M&A |

24 / 76

CONFIDENTIAL

FBG_CH1_00095343

**DEBTORS' EXHIBIT NO. 251**
**Page 24 of 79**

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

**ANNEX 1**             **ESTIMATED FINANCIAL STATEMENTS**

| EUR | Winning CoFo a.s. | Winning CoFo - Räuchle GmbH | Winning CoFo - IBEX GmbH | Winning CoFo - PWK GmbH | **Aggregated** |
|---|---|---|---|---|---|
| Assets | 7.067.029,62 | 12.786.354,13 | 6.276.496,68 | 19.262.000,86 | 45.391.881,29 |
| A. Fixed assets | 6.846.246,71 | 4.279.791,05 | 773.769,57 | 2.362.322,71 | 14.262.130,04 |
| Goodwill | | | | | 0 |
| 015010 Goodwill | | | | | 0 |
| 33020000 derivativer Geschaeftswert | | | | | 0 |
| 014000 Goodwill Kaufpreis | | | | | 0 |
| 015020 Badwill | | | | | 0 |
| 34020000 Abschreibung auf Geschaeftswert | | | | | 0 |
| Intangible assets | | | | 24.489,74 | 24.489,74 |
| 012000 Research and development | | | | | 0 |
| 013000 Software | | | | 24.489,74 | 24.489,74 |
| 31600000 Imaterielle VG- Software_Lizenzen | | | | 24.489,74 | 24.489,74 |
| 014000 Patents, rights and royalties | | | | | 0 |
| 019000 Other intangible fixed assets | | | | | 0 |

25 / 76

**DEBTORS' EXHIBIT NO. 251**
**Page 25 of 79**

FBG_CH1_00095344

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | |
|---|---|---|---|---|
| BG: I. Intangible assets | | | | 0 |
| 041000 Intangible fixed assets under construction | | | | 0 |
| 051000 Advance payments for intangible fixed assets | | | | 0 |
| 072000 Amortisation - research and development | | | | 0 |
| 073000 Amortisation - Software | | | | 0 |
| 074000 Amortization - patents, rights and royalties | | | | 0 |
| 079000 Amortisation - Other intangible fixed assets | | | | 0 |
| 091000 Adjustment to intangibles | | | | 0 |
| 093041 Adjustment to intangibles in progress | | | | 0 |
| 095051 Adjustment to advance payments for intangibles | | | | 0 |
| Tangible assets | 4.279.791,05 | 773.769,57 | 2.337.832,97 | 7.391.393,59 |
| 021000 Buildings | | | | 0 |
| 022000 Machines and equipment | 4.237.956,51 | 688.783,73 | 2.843.591,58 | 7.770.331,82 |
| 040020 Anlagen und Maschinen der Produktion | 191.458,00 | | | 191458 |
| 040040 Sonstige Anlagen und Maschinen | 4.580,46 | | | 4580,46 |
| 040050 Maschinenzubehör | 281,00 | | | 281 |
| 050050 Maschinen und Anlagen | 4.041.637,05 | | | 4041637,05 |
| 24000000 Maschinen&Ausstattungen-Abstimmkonto | | 54.833,15 | 356.723,95 | 411.557,10 |

26 / 76

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | |
|---|---|---|---|---|
| 24000501 Produktionsmaschinen - Abstimmkonto Deutschland | | 633.950,58 | 2.452.866,75 | 3.086.817,33 |
| 25772687 AA Downpayment Clearing | | | | 0 |
| 31621007 unterjährige Abgrenzung Pool-Konten | | | -16.500,00 | -16.500,00 |
| 31621014 Sammelpool GWG 2022 (250bis1000Euro) | | | 9.595,66 | 9.595,66 |
| 31621015 Sammelpool GWG 2023 (250bis1000Euro) | | | 40.905,22 | 40.905,22 |
| 029000 Other tangible fixed assets | 37.825,00 | | | 37825 |
| 052010 Fahrzeuge | 36.784,00 | | | 36784 |
| 062020 Prüf- und Meßmittel | 1.041,00 | | | 1041 |
| BG: II. Fixed assets | | | | 0 |
| 031000 Land | | | | 0 |
| 032000 Works of art and collections | | | | 0 |
| 042000 Tangible fixed assets under construction | 4.009,54 | 375.000,00 | 28.497,80 | 407.507,34 |
| 24000550 AiB Maschinen und masch.Einrichtungen A | | 375.000,00 | 28.497,80 | 403.497,80 |
| 25000551 AiB Gebäude Abstimmkonto Deutschland | | | | |
| 999990 Diverses Verrechnungskonto | 4.009,54 | | | 4009,54 |
| 052000 Advance payments for tangible fixed assets | | | | 0 |
| 24000600 Maschinen&Ausstattungen-Anzahlungen | | | | 0 |
| 081000 Depreciation - Buildings | | | | 0 |

**27 / 76**

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 27 of 79**

FBG_CH1_00095346

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | |
|---|---|---|---|
| 082000 Depreciation - Machines and Equipment | | | 0 |
| 089000 Depreciation - other tangibles | | | 0 |
| 092000 Adjustment to tangibles | -290.014,16 | -534.256,41 | -824.270,57 |
| 29470501 Wertber. Abschreibung Prd.-Masch.-Rec. Acc. | -268.616,03 | -478.111,41 | -746.727,44 |
| 29470000 Abschreibungen Masch.-Abstimmkonto | -21.398,13 | -66.278,00 | -87.676,13 |
| 29470698 Abschreibungen Maschinen - Abstimmkonto | | 11.394,00 | 11.394,00 |
| 29470699 Other Machines-Rec | | -1.261,00 | -1.261,00 |
| 094042 Adjustment to tangibles in progress | | | 0 |
| 095052 Adjustment to advance payments for tangibles | | | 0 |
| Financial assets | 6.846.246,71 | | 6846246,71 |
| 061000 Equity investments - group undertakings | 6.846.246,71 | | 6846246,71 |
| 061031 Podíly – ovládaná nebo ovládající osoba Winning Germany 5 | | | 0 |
| 061031 Podíly – Rau | 1.821.419,41 | | 1821419,41 |
| 061032 Podíly – ovládaná nebo ovládající osoba Blitz 22-681 | | | 0 |
| 061032 Podíly – PWK | 3.522.119,29 | | 3522119,29 |
| 061033 Podíly – IBEX | 1.502.708,01 | | 1502708,01 |
| 061033 Podíly – ovládaná nebo ovládající osoba Blitz 22-683 | | | 0 |
| BG: III. Financial assets | | | 0 |

**28 / 76**

**DEBTORS' EXHIBIT NO. 251**
**Page 28 of 79**

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | | |
|---|---|---|---|---|---|
| 096000 Adjustment to long term financial assets | | | | | 0 |
| 053000 Advance payments for long-term investments | | | | | 0 |
| B. Current assets | 220.782,91 | 8.454.476,50 | 5.492.145,65 | 16.846.251,61 | 31.013.656,67 |
| I. Inventories | | 5.991.695,51 | 3.357.122,74 | 8.833.391,45 | 18.182.209,70 |
| 1. Raw materials, consumables, and supplies | | 1.838.271,51 | 515.331,70 | 2.336.977,24 | 4.690.580,45 |
| 112000 Raw materials | | 2.047.822,95 | 1.425.032,95 | 3.469.857,28 | 6.942.713,18 |
| 101000 Vorräte an Roh-, Hilfs- und Betriebsstoffen | | 1.596.885,00 | | | 1596885 |
| 101060 Vorräte an Werkzeugen | | 450.937,95 | | | 450937,95 |
| 13000000 SAP - Rohmaterial | | | 853.204,59 | 1.618.210,39 | 2.471.414,98 |
| 13000102 Anzahlung Vorräte | | | 23.248,62 | | 23248,62 |
| 13000200 Rohmaterial man. Korrektur | | | | | 0 |
| 13000503 SAP - Rohmaterial - aktivierte Abweichu | | | | | 0 |
| 13000507 Schrottbestand extern | | | | | 0 |
| 14100000 Bestaende Hilfs- u. Betriebsstoffe | | | | 1.500.218,12 | 1.500.218,12 |
| 14100200 Magazin Werkzeuge Dreherei Zittau und Gelenau | | | | | 0 |
| 14100201 Magazin Werkzeuge Rollerei | | | | | 0 |
| 14100202 Magazin Werkzeuge Schönbrunn | | | | | 0 |
| 14100203 Magazin Werkzeuge Presserei | | | | | 0 |

**29 / 76**

**DEBTORS' EXHIBIT NO. 251**
**Page 29 of 79**

EXECUTION VERSION

| | | | | |
|---|---|---|---|---|
| 14100209 Werkzeuge Bestandskorrektur | | | -3.561.755,05 | -3.561.755,05 |
| 14100210 Magazin Betriebsstoffe Gelenau | | 5.462,00 | | 5462 |
| 14100220 Magazin Instandhaltung Gelenau | | 464.061,30 | | 464061,3 |
| 14100230 Magazin Instandhaltung Schönbrunn | | 79.056,44 | | 79056,44 |
| 14100400 Bestaende H+B; Eigenf.WZ Fertig | | | 9.040.683,78 | 9.040.683,78 |
| 14100404 Bestaende H+B; Eigenf.WZ Halbfertig | | | 163.912,71 | 163.912,71 |
| 15013000 Mengendifferenz Rohmaterial | | | -5894,45 | -5894,45 |
| 15014000 Mengendifferenz Hilfs-, Betriebsstoffe | | | 11.063,33 | 11.063,33 |
| 15014500 Mengendifferenz H+B Werkzeuge (seit2019 | | | -46.086,62 | -46.086,62 |
| 15023000 Standardkostenänderung Rohmaterial | | | -199.630,07 | -199.630,07 |
| 15024000 Standardkostenänderung Hilfs-, Betriebsstoffe | | | -26.598,84 | -26.598,84 |
| 15024500 Standardkostenänderung Werkzeuge | | | -44.262,49 | -44.262,49 |
| 15035500 Überalterte Teile H+B Werkzeuge (vor201 | | | -4.980.003,53 | -4.980.003,53 |
| BG: Raw Materials and Supplies | | | | 0 |
| 112300 Raw materials - tooling | | | | 0 |
| 151000 Advance payments for raw material | | | | 0 |
| 191000 Adjustment - Raw materials | -209.551,44 | -909.701,25 | -1.132.880,04 | -2.252.132,73 |
| 101005 Abwertg Vorräte Roh-,Hilfs-,Betriebsstoffe | -209.551,44 | | | -209551,44 |

CONFIDENTIAL

FBG_CH1_00095349

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | |
|---|--:|--:|--:|--:|
| 13000209 Rohmaterial Bestandskorrektur | | -411.532,89 | -79.800,00 | -491.332,89 |
| 14100309 Hilfs- u. Betriebsst. Bestandskorrektur | | -498.168,36 | -972.161,94 | -1.470.330,30 |
| 15064000 Überschüssige Mengen Hilfs-,Betriebssto | | | -80.918,10 | -80.918,10 |
| **191300 Adjustment - Raw materials - tooling** | | | | **0** |
| 2. Work in progress | 2.742.654,00 | 2.271.123,01 | 3.147.557,35 | 8.161.334,36 |
| **121000 Work-in-progress** | **2.992.654,00** | **2.347.694,96** | **3.341.288,03** | **8.681.636,99** |
| 104000 Vorräte an Unfertigen Erzeugnissen und Leistungen | 2.992.654,00 | | | 2992654 |
| 12000000 SAP - Werkstattbestand | | 2.284.202,59 | 2.650.676,77 | 4.934.879,36 |
| 12000010 SAP - RFKA Werkstattbestand | | -83.869,40 | | -83869,4 |
| 12000020 Ware in Arbeit - WIP | | 147.361,77 | | 147361,77 |
| 12000100 SAP - Halbfert. WIP-Bestand | | | 494.990,04 | 494.990,04 |
| 12000102 WIP-Make to Order | | | 12.432,45 | 12.432,45 |
| 12000512 SAP - Werkstattbestand - aktivierte Abw | | | | 0 |
| 15012000 Mengendifferenz Halbfabrikate | | | -121.427,34 | -121.427,34 |
| 15022000 Standardkostenänderung Halbfabrikate | | | 304.616,11 | 304.616,11 |
| BG: Work in Process | | | | 0 |
| **121300 Work-in-progress - tooling** | | | | **0** |
| 192000 Adjustment - Work-in-progress | -250000 | -76.571,95 | -193.730,68 | -520.302,63 |

31 / 76

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | |
|---|---|---|---|---|
| 104005 Abwertg Vorräte an Halbfabrikate | -250000 | | | -250000 |
| 15032000 Überalterte Teile Halbfarbrikate | | | -8.698,69 | -8.698,69 |
| 12000209 Unf. Erzeugnisse Bestandskorrektur | | -76.571,95 | | -76571,95 |
| 15062000 Überschüssige Mengen Halbfabrikate | | | -185.031,99 | -185.031,99 |
| 192300 Adjustment - Work-in-progress - tooling | | | | 0 |
| 3. Finished goods and merchandise | 1.410.770,00 | 570.668,03 | 3.348.856,86 | 5.330.294,89 |
| 123000 Finished goods | 1.510.770,00 | 600.239,12 | 3.482.209,41 | 5.593.218,53 |
| 11000000 SAP - Fertige Erzeugnisse | | 583.239,12 | 3.157.399,48 | 3.740.638,60 |
| 11000200 SAP Fertige Erzeugnisse - man. Korrektur | | -8.000,00 | 100.000,00 | 92.000,00 |
| 11000500 SAP - Fertige Erzeugnisse - in Transit | | | | 0 |
| 11000533 SAP - Fertige Erzeugnisse - aktivierte | | | | 0 |
| 15011000 Mengendifferenz Fertigerzeugnisse | | | 22.743,02 | 22.743,02 |
| 110000 Vorräte an Fertigerzeugnisse | 1.510.770,00 | | | 1510770 |
| 12000200 unf. Erzeugnisse - man. Korrektur | | 25.000,00 | | 25000 |
| BG: Finished goods and merchandise | | | | 0 |
| 15021000 Standardkostenänderung Fertigerzeugniss | | | 202.066,91 | 202.066,91 |
| 123300 Finished goods - tooling | | | | 0 |
| 132000 Goods for resale | | | | 0 |

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 32 of 79**

FBG_CH1_00095351

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | |
|---|--:|--:|--:|--:|
| 153000 Advance payments for goods for resale | | | | 0 |
| 194000 Adjustment - Finished goods | -100.000,00 | -29.571,09 | -133.352,55 | -262.923,64 |
| 110005 Abwertg Vorräte Fertigerzeugnisse | -100.000,00 | | | -100000 |
| 11000209 Fert. Erzeugnisse Bestandskorrektur | | -29.571,09 | | -29571,09 |
| 15051000 Niederstwertprinzip Fertigerzeugnisse | | | -133.352,55 | -133.352,55 |
| 194300 Adjustment - Finished goods - tooling | | | | 0 |
| 196000 Adjustment - Goods for resale | | | | 0 |
| II. Receivables and other assets | 219.056,96   1.790.171,33 | 1.862.722,35 | 5.055.403,88 | 8.927.354,52 |
| 1. Trade receivables | 192.895,11 | 753.219,05 | 1.846.611,41 | 2.792.725,57 |
| 311000 Trade receivables - External - ST | 341.301,57 | 753.219,05 | 1.846.611,41 | 2.941.132,03 |
| 121010 Forderungen Inland | 1.050.393,58 | | | 1050393,58 |
| 121020 Forderungen EG | 853.215,02 | | | 853215,02 |
| 121030 Forderungen Drittland | 427.507,42 | | | 427507,42 |
| 122000 Sonstige Forderungen aus Lieferungen | 180.495,27 | | | 180495,27 |
| 125010 Forderungen Angekauft / Guthabenkonto | -2.170.309,72 | | | -2170309,72 |
| 20079503 IC Forderungen PWK IBEX Gelenau | | | | 0 |
| 20079504 IC Forderungen Presswerk Krefeld | | | | 0 |
| 20079509 Forderungen PWK Ibex GmbH | | 155.405,37 | | 155405,37 |

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 33 of 79**

FBG_CH1_00095352

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | |
|---|---:|---:|---:|
| 4000000 Ford.Inl.aus Lieferungen u. Leistungen | 293.685,87 | 3.366.772,78 | 3.660.458,65 |
| 4000501 Ford.EU aus Lieferungen u. Leistungen | 725.682,78 | 4.510.615,17 | 5.236.297,95 |
| 4000502 Ford.Drittlaender aus Lief. u. Leistungen | 128.288,65 | 291.033,82 | 419.322,47 |
| 4000610 Ford.Inl.aus LuL - Abstimmkonto Sonderhauptbuch | | | 0 |
| 4000999 SAP Korrekturkonto Forderungen Lief.u.Leist. | 69.034,81 | | 69034,81 |
| 4001000 Forderungen aus Werkzeugkosten Kunden | 60.089,70 | | 60089,7 |
| 4999999 Verkaufte Forderungen Factoring | -683.968,13 | -6.272.594,15 | -6.956.562,28 |
| 5100000 Wertberichtigung auf Forderungen | | -49.216,21 | -49.216,21 |
| 5100505 Einzelwertberichtigung zu Forderungen | | | 0 |
| 5100600 Uneinbringliche Forderungen | 5.000,00 | | 5000 |
| BG: Trade accounts receivable | | | 0 |
| 311010 Trade receivables - External - LT 1-5 years | | | 0 |
| 311020 Trade receivables - External - LT over 5 years | | | 0 |
| 311030 Trade receivables - External - Retention | | | 0 |
| 391000 Adjustment - UNCATEGORIZED Receivables | | | 0 |
| 391110 Adjustment - Trade Receivables - External - ST (related to 311) | -148.406,46 | | -148406,46 |
| 122050 Pauschalwertberichtigung auf Forderungen | -23.931,64 | | -23931,64 |
| 122060 Einzelwertberichtigung auf Forderungen | -124.474,82 | | -124474,82 |

**34 / 76**

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 34 of 79**

FBG_CH1_00095353

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | | |
|---|---|---|---|---|---|
| 391111 Adjustment - Trade Receivables - External - LT (related to 311) | | | | | 0 |
| 2. Receivables from affiliated companies | 213.342,67 | 425.848,45 | 303.026,27 | 1.092.202,72 | 2.034.420,11 |
| 311100 Trade receivables - Intercompany - ST | 212.325,59 | 171.547,88 | 53.026,27 | 337.202,72 | 774.102,46 |
| 121040 Forderungen Winning CoFo - PWK GmbH | | | | | 0 |
| 121050 Forderungen Winning CoFo - IBEX GmbH | | 171.547,88 | | | 171547,88 |
| 20079031 IC Forderungen Winning Cofo Raeuchle GmbH | | | | 11.758,83 | 11758,83 |
| 20079094 IC Forderungen Winning IP Krefeld GmbH | | | | 635,98 | 635,98 |
| 20079502 IC Forderungen Winning CoFo Ibex GmbH | | | | 316.246,11 | 316246,11 |
| 20079508 IC Forderungen Winning CoFo PWK | | | 1.025,32 | | 1025,32 |
| 20079531 IC Forderungen Winning CoFo Räuchle | | | 52.000,95 | | 52000,95 |
| 20079554 IC Forderungen Winning Deutschland GmbH | | | | 8.561,80 | 8561,8 |
| 20079596 IC Forderungen Winning IP Gelenau GmbH | | | | | 0 |
| 311031 Odběratelé - Rau | 277.929,89 | | | | 277929,89 |
| 311031 Odběratelé - Winning CoFo - Rauchle GmbH | | | | | 0 |
| 311032 Odběratelé - PWK | | | | | 0 |
| 311032 Odběratelé - Winning CoFo - PWK GmbH | | | | | 0 |
| 311033 Odběratelé - IBEX | | | | | 0 |
| 311033 Odběratelé - Winning CoFo - IBEX GmbH | | | | | 0 |

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 35 of 79**

FBG_CH1_00095354

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | |
|---|---|---|---|---|
| 311040 Odběratelé - Winning Plastics a.s. | | | | 0 |
| 311040 Odběratelé - WPL | | | | 0 |
| 311093 Odběratelé - IPRau | | | | 0 |
| 311093 Odběratelé - Winning IP Dietenheim GmbH | | | | 0 |
| 311094 Odběratelé - IPPWK | -65.604,30 | | | -65604,3 |
| 311094 Odběratelé - Winning IP Krefeld GmbH | | | | 0 |
| 311096 Odběratelé - IPIBEX | | | | 0 |
| 311096 Odběratelé - Winning IP Gelenau GmbH | | | | 0 |
| BG: Receivables from affiliated companies | | | | 0 |
| 311110 Trade receivables - Intercompany - LT 1-5 years | | | | 0 |
| 311120 Trade receivables - Intercompany - LT over 5 years | | | | 0 |
| 351100 Receivables - Intercompany - Loans | 254.300,57 | 250.000,00 | 755.000,00 | 1.259.300,57 |
| 125011 Forderungen aus Darlehen an Winning IP | 254.300,57 | | | 254300,57 |
| 18105032 Darlehen Winning CoFo - PWK | | | | 0 |
| 18105033 Darlehen IC Winning CoFo-IBEX | | | 300000 | 300000 |
| 18105094 Darlehen Winning IP Krefeld | | | 455.000,00 | 455.000,00 |
| 18105096 Darlehen Winning IP Gelenau | | 250.000,00 | | 250000 |
| 351031 Pohledávky - ovládaná nebo ovládající osoba - Winning Germany | | | | 0 |

**36 / 76**

**DEBTORS' EXHIBIT NO. 251**
**Page 36 of 79**

FBG_CH1_00095355

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | | |
|---|---|---|---|---|---|
| 351031 Pohledávky - Rau | | | | | 0 |
| 351032 Pohledávky - ovládaná nebo ovládající osoba - Blitz 22-681 | | | | | 0 |
| 351032 Pohledávky - PWK | | | | | 0 |
| 351033 Pohledávky - ovládaná nebo ovládající osoba - Blitz 22-683 | | | | | 0 |
| 351050 Pohledávky - ovládaná nebo ovládající osoba - Winning Group a.s. | | | | | 0 |
| 352000 Receivables - Intercompany - Loan Interests | 866,52 | | | | 866,52 |
| 352031 Pohledávky - Rau | 864,50 | | | | 864,5 |
| 352031 Pohledávky - Winning CoFo - Räuchle GmbH | | | | | 0 |
| 352032 Pohledávky - PWK | 2,02 | | | | 2,02 |
| 352032 Pohledávky - Winning CoFo - PWK GmbH | | | | | 0 |
| 352033 Pohledávky - Winning CoFo - IBEX GmbH | | | | | 0 |
| 354000 Receivables - Intercompany - Dividends and Advances for dividends | | | | | 0 |
| 353000 Receivables for subscribed registered capital | | | | | 0 |
| 343100 VAT - IC tax group receivable | 150,56 | | | | 150,56 |
| Saldowechsel zwischen '343100 VAT - IC tax group receivable' und '343100 VAT - IC tax group' | 150,56 | | | | 150,56 |
| 3. Other receivables | 5.714,29 | 1.171.427,77 | 806.477,03 | 2.116.589,75 | 4.100.208,84 |
| 314000 Advances paid - ST | | | 99.703,89 | 238.378,96 | 338.082,85 |
| 17010100 Geleistete Anzahlungen an Lieferanten | | | 122.952,51 | 778.378,96 | 901.331,47 |

**37 / 76**

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 37 of 79**

FBG_CH1_00095356

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

| | | | |
|---|---|---|---|
| 17010101 Verrechnung Rückstellung mit geleist. Anzahlungen | | -540.000,00 | -540.000,00 |
| 17010102 geleistete Anzahlungen auf Vorräte | -23.248,62 | | -23.248,62 |
| 17010103 Verrechnung debitorische Kreditoren | | | |
| 314010 Advances paid - LT 1-5 years | | | |
| 314020 Advances paid - LT over 5 years | | | |
| 335000 Employees - Receivables | | | |
| 16020507 Gehaltsvorschüsse | | | |
| 341000 Income tax receivable | 5.714,29 | | 5.714,29 |
| BG: Current income tax assets | | | |
| Saldowechsel zwischen '341000 Income tax receivable' und '2. Tax provisions' | 5.714,29 | | 5.714,29 |
| 342000 Employee income tax receivable | | | |
| Saldowechsel zwischen '342 Employee income tax receivable' und '342 Employee income tax liability' | | | |
| 343000 VAT Receivable | 145.944,94 | 176.465,28 | 322.410,22 |
| Saldowechsel zwischen '343 VAT Receivable' und '343 VAT Liability' | 145.944,94 | 177.546,36 | 323.491,30 |
| 40033540 Ausgangssteuer RC Metallerz. §13b Abs.2 Nr.11 UStG | | -1.081,08 | -1.081,08 |
| 345000 Other taxes receivable | | | |
| 346000 Subsidies - Receivables | | | |

CONFIDENTIAL

FBG_CH1_00095357

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | |
|---|---|---|---|---|
| 373000 Receivables from fixed term operations | | | | |
| 378000 Other receivables - External - ST | 261.608,00 | 560.828,20 | 1.701.745,51 | 2.524.181,71 |
| 130005 Forderung Sicherheitsleistung VW Leasing | | | | 0 |
| 130010 Sonstige Forderungen | 17.355,55 | | | 17355,55 |
| 135000 Sonstige Forderungen an Arbeitsamt aus KUG | 14.003,64 | | | 14003,64 |
| 136000 Sonstige Forderungen aus MietkaufKaution | 200.000,00 | | | 200000 |
| 137020 Sonstige Forderungen aus Anzahlung | | | | 0 |
| 137030 Sonstige Forderungen aus Anzahlungen | 30.248,81 | | | 30248,81 |
| 137050 Sonst. Ford. Anz Sonstiges | | | | 0 |
| 16020000 Gehaltsüberzahlung | | | 1,14 | 1,14 |
| 16020505 Lohnüberzahlungen (Verrechnungskonto) | | | | 0 |
| 16020506 Lohnvorschüsse | | | | 0 |
| 17010200 Geleistete Sicherheitszahlungen an Lieferanten | | | 240.950,00 | 240950 |
| 17020000 Sonstige Forderungen | | 355.786,72 | 316.507,12 | 672293,84 |
| 17020007 Receivables TRW (short term jubilee) | | | 187.370,02 | 187370,02 |
| 17020008 Receivables TRW (long term jubilee) | | | 24.786,30 | 24786,3 |
| 17020032 Forderungen aus Stromsteuererstattung | | | | 0 |
| 17020033 Forderungen aus Kurzarbeiterstattung | | 11.198,42 | | 11198,42 |

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 39 of 79**

FBG_CH1_00095358

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | |
|---|---:|---:|---:|
| 17020034 Forderungen Kaution NordLeasing | 106.262,26 | 187.814,84 | 294077,1 |
| 17040100 Sonst. Ford. Factoring (Sperrkonto 10% Einbehalt) | 87.580,79 | 650.589,06 | 738169,85 |
| 17040110 Forderungen Targo aus nicht verk. Ford. | | | 0 |
| 17040120 Forderung Factoring Sondereinbehalt | 0,01 | | 0,01 |
| 17040130 Ford.Factoring Einbehalt Konzentration | | | 0 |
| 31931000 sonstige Vermoegensggst. - produktbez. | | 19.553,78 | 19553,78 |
| 31931100  031931100  I/C  sonst.  Vermoegensggst.  -  produktbez. Werkzeuge | | 74.173,25 | 74173,25 |
| BG: Other assets, prepayments | | | 0 |
| 378010 Other receivables - External - LT | | | 0 |
| 378400 Other receivables - Factoring | 909.819,77 | | 909.819,77 |
| 125020 Forderungen Verrechnungskonto Factoring | 391.389,48 | | 391389,48 |
| 125040 Forderungen Einbehalt | 0,01 | | 0,01 |
| 125080 Forderungen Sperrguthaben (10%) | 217.031,25 | | 217031,25 |
| 187000 Raiba 200116173 Factorkonto | 301.399,03 | | 301399,03 |
| 378999 Debt Consolidation | | | 0 |
| 388000 Estimated receivables | | | 0 |
| 388100 Dohadné účty aktivní | | | 0 |
| 391140 Adjustment - Advances - ST (related to 314) | | | 0 |

**40 / 76**

**DEBTORS' EXHIBIT NO. 251**
**Page 40 of 79**

FBG_CH1_00095359

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | |
|---|---|---|---|---|
| 391141 Adjustment - Advances - LT (related to 314) | | | | 0 |
| 391780 Adjustment - Other receivables - ST (related to 378) | | | | 0 |
| 391781 Adjustment - Other receivables - LT (related to 378) | | | | 0 |
| 481000 Deferred tax receivable | | | | 0 |
| III. Cash-in-hand, central bank balances, bank balances, and checks | 1.725,95 | 672.609,66 | 272.300,56 | 2.957.456,28 | 3.904.092,45 |
| 213000 Valuables | | | | 0 |
| 221000 Bank accounts | 1.725,95 | 671.571,14 | 266.599,07 | 2.956.767,80 | 3.896.663,96 |
| 1100530 Commerzbank 121876700 | | | | 2.956.767,80 | 2.956.767,80 |
| 1200011 Verrechnungskonto Commerzbank | | | | 0 |
| 1200015 Commerzbank 121736300 | | | 266.599,07 | | 266599,07 |
| 1200020 Penta Bank | | | | 0 |
| 186000 Raiba 116173 | | 671.571,14 | | | 671571,14 |
| 221100 CZK, ČSOB, 217788433/0300, běžný | 1.242,06 | | | | 1242,06 |
| 221110 EUR, ČSOB, 11017573993/0300, běžný | 483,89 | | | | 483,89 |
| BG: III. Cash and cash equivalents | | | | 0 |
| 261000 Cash in transit | | | | 0 |
| 261100 Peníze na cestě | | | | 0 |
| 211000 Cash in hand | | 1.038,52 | 5.701,49 | 688,48 | 7.428,49 |

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 41 of 79**

FBG_CH1_00095360

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | | |
|---|--:|--:|--:|--:|--:|
| 1500000 Kasse | | | | 688,48 | 688,48 |
| 1500010 Kasse Gelenau | | | 5.701,49 | | 5701,49 |
| 1500030 Kasse Zittau | | | | | 0 |
| 160010 Kasse | | 1.038,52 | | | 1038,52 |
| C. Deferrals | | 52.086,58 | 10.581,46 | 53.426,54 | 116.094,58 |
| 381000 Deferred expenses (expense of following year) | | 52.086,58 | 10.581,46 | 53.426,54 | 116.094,58 |
| 190010 Aktive Rechnungsabgrenzung | | 52.086,58 | | | 52086,58 |
| 30410000 aktive Abgrenzung | | | 10.581,46 | | 10.581,46 |
| 30640000 aktive Abgrenzung,sonstige | | | | 53.426,54 | 53.426,54 |
| 385000 Unbilled revenue (invoice to be issued in following year) | | | | | 0 |
| Equity and liabilities | 7.067.029,62 | 12.786.354,13 | 6.276.496,68 | 19.262.000,86 | 45.391.881,29 |
| A. Equity | 3.263.719,80 | 1.163.861,89 | 1.057.160,54 | 5.217.390,07 | 10.702.132,30 |
| I. Registered capital | 78.285,47 | 25.000,00 | 25.000,00 | 25.000,00 | 153.285,47 |
| 411000 Registered capital | 78.285,47 | 25.000,00 | 25.000,00 | 25.000,00 | 153.285,47 |
| 200010 Stammkapital | | 25.000,00 | | | 25000 |
| 411050 Základní kapitál - WG | 82.338,41 | | | | 82338,41 |
| 411050 Základní kapitál - Winning Group a.s. | -4.052,94 | | | | -4052,94 |
| 49500000 Gezeichnetes Kapital | | | 25.000,00 | 25.000,00 | 50.000,00 |

**42 / 76**

FBG_CH1_00095361

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | | |
|---|---|---|---|---|---|
| BG: I. Subscribed capital | | | | | 0 |
| II. Capital funds | 3.196.298,43 | 1.000.000,00 | 500.000,00 | 2.000.000,00 | 6.696.298,43 |
| 413000 Capital contribution outside Registered capital | | 1.000.000,00 | 500.000,00 | 2.000.000,00 | 3.500.000,00 |
| 200005 Kapitalkonto | | 1.000.000,00 | | | 1000000 |
| 49200201 Kapitalrücklage | | | 500.000,00 | 2.000.000,00 | 2.500.000,00 |
| BG: II. Capital reserves | | | | | 0 |
| 414000 Revaluation of assets and liabilities | 3.200.040,65 | | | | 3200040,65 |
| 414033 Oceňovací rozdíly IBEX | 964.225,50 | | | | 964225,5 |
| 414032 Oceňovací rozdíly PWK | 1.456.156,34 | | | | 1456156,34 |
| 414031 Oceňovací rozdíly Räuchle | | | | | 0 |
| 414031 Oceňovací rozdíly Rau | 779.658,81 | | | | 779658,81 |
| 418000 Other revaluation on equity | | | | | 0 |
| 414998 FX revaluation of capital | 4.052,94 | | | | 4052,94 |
| Registered Capital | 4.052,94 | | | | 4052,94 |
| Delta-Währung zu '411050 Základní kapitál - Winning Group a.s.' | 4.052,94 | | | | 4052,94 |
| Delta-Währung zu '200010 Stammkapital' | | | | | 0 |
| Delta-Währung zu '49500000 Gezeichnetes Kapital' | | | | | 0 |
| Other capital contributions | | | | | 0 |

CONFIDENTIAL

FBG_CH1_00095362

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | | |
|---|---|---|---|---|---|
| Other reserve funds | | | | | 0 |
| Delta-Währung zu '200005 Kapitalkonto' | | | | | 0 |
| Delta-Währung zu '49200201 Kapitalrücklage' | | | | | 0 |
| 414999 FX revaluation of foreign entities | -7.795,16 | | | | -7795,16 |
| Historical RE for Initial Conso FS/ Retained earnings | -7.795,16 | | | | -7795,16 |
| Delta-Währung zu '428100 Nerozdělený zisk minulých let' | -598,13 | | | | -598,13 |
| Delta-Währung zu '428 Nerozdělený zisk minulých let' | | | | | 0 |
| Delta-Währung zu '431100 Výsledek hospodaření ve schvalovacím řízení' | 65,43 | | | | 65,43 |
| Delta-Währung zu 'Net income/net loss for the financial year (from P&L)' | -7.795,16 | | | | -7795,16 |
| Delta-Währung zu 'Storno profit/loss' | 532,70 | | | | 532,7 |
| Rounding errors from currency conversion | | | | | 0 |
| III. Funds from profit | | | | | 0 |
| 421000 Other reserve funds | | | | | 0 |
| V. Net retained profits/net retained losses | -10.864,10 | 138.861,89 | 532.160,54 | 3.192.390,07 | 3.852.548,40 |
| Retained earnings/accumulated losses carry forward | 25.878,58 | 809.639,66 | 988.604,28 | 1.522.676,71 | 3.346.799,23 |
| 426000 Other retained earnings of previous years | | | | | 0 |
| 428000 Retained earnings | 25.878,58 | 809.639,66 | 988.604,28 | 1.522.676,71 | 3.346.799,23 |
| 220010 Verlustkonto | | 809.639,66 | | | 809639,66 |

**44 / 76**

**DEBTORS' EXHIBIT NO. 251**
**Page 44 of 79**

FBG_CH1_00095363

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | | |
|---|---|---|---|---|---|
| 428100 Nerozdělený zisk minulých let | 25.944,01 | | | | 25944,01 |
| 428 Nerozdělený zisk minulých let | | | | | 0 |
| 431100 Výsledek hospodaření ve schvalovacím řízení | -65,43 | | | | -65,43 |
| 49310000 Gewinnvortrag Vorjahre | | | 988.604,28 | 1.522.676,71 | 2.511.280,99 |
| BG: III. Cumulative profit brought forward | | | | | 0 |
| 428998 Retained earnings - elimination of Dividends | | | | | 0 |
| Net income/net loss for the financial year | -36.742,68 | -670.777,77 | -456.443,74 | 1.669.713,36 | 505.749,17 |
| 431000 Profit (loss) for the current period | -36.742,68 | -670.777,77 | -456.443,74 | 1.669.713,36 | 505.749,17 |
| Net income from P/L | -36.742,68 | -670.777,77 | -456.443,74 | 1.669.713,36 | 505.749,17 |
| Net income/net loss for the financial year (from P&L) | -10.864,10 | 138.861,89 | 532.160,54 | 3.192.390,07 | 3.852.548,40 |
| Storno profit/loss | -25.878,58 | -809.639,66 | -988.604,28 | -1.522.676,71 | -3.346.799,23 |
| VI. Approved advance profit distribution | | | | | 0 |
| 432000 Advance profit distribution | | | | | 0 |
| VII. Non-controlling interests | | | | | 0 |
| 411999 Minority registered capital | | | | | 0 |
| 413999 Minority capital funds | | | | | 0 |
| 428999 Minority retained earnings | | | | | 0 |
| 431999 Minority current profit/loss | | | | | 0 |

45 / 76

CONFIDENTIAL

FBG_CH1_00095364

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | |
|---|---|---|---|---|
| B. Provision | | 485.549,74 | 880.095,90 | 5.630.352,94 | 6.995.998,58 |
| 1. Provisions for pensions and similar obligations | | 259.805,00 | | | 259805 |
| 459100 Provision - Employee bonuses and rewards | | 36.800,00 | | | 36800 |
| 309090 Rückstellung Sonderzahlung Gehalt | | -21.000,00 | | | -21000 |
| 309091 Rückstellung Sonderzahlung Lohn | | 57.800,00 | | | 57800 |
| BG: I. Provision for pensions and similar obligations | | | | | 0 |
| 459200 Provision - Pensions and other similar payables | | | | | 0 |
| 459300 Provision - Untaken vacation | | 223.005,00 | | | 223005 |
| 309095 Rückstellung Urlaubsgeld Gehalt | | 53.752,00 | | | 53752 |
| 309096 Rückstellung Urlaubsgeld Lohn | | 169.253,00 | | | 169253 |
| 2. Tax provisions | | 200.660,80 | 398.000,00 | 1.620.900,00 | 2.219.560,80 |
| 341000 Income tax | -5.714,29 | | | | -5714,29 |
| 341100 Daň z příjmu | -5.714,29 | | | | -5714,29 |
| 453000 Income tax provision | | 200.660,80 | 398.000,00 | 1.620.900,00 | 2.219.560,80 |
| 303000 Gewerbesteuerrückstellung | | 200.660,80 | | | 200660,8 |
| 42020502 Rückstellung Körperschaftssteuer | | | 398.000,00 | 1.620.900,00 | 2.018.900,00 |
| BG: II. Tax provisions | | | | | 0 |
| Saldowechsel zwischen '2. Tax provisions' und '341000 Income tax receivable' | 5.714,29 | | | | 5714,29 |

**46 / 76**

FBG_CH1_00095365

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | |
|---|---|---|---|---|
| 3. Other provisions | 25.083,94 | 482.095,90 | 4.009.452,94 | 4.516.632,78 |
| 459000 Provision - Other | 25.083,94 | 482.095,90 | 4.009.452,94 | 4.516.632,78 |
| 307010 Rückst. Sonstige Personalko. | | | | 0 |
| 307030 Rückstellung für Rechts- und Beratungskosten | 89.977,80 | | | 89977,8 |
| 307060 Sonstige Rückstellungen | -385.591,48 | | | -385591,48 |
| 309030 Rückstellung Wartung / Service | | | | 0 |
| 309050 Rückstellung Wasser / Abwasser | 60.000,00 | | | 60000 |
| 309070 Rückstellung ausstehende Rechnungen | 78.163,62 | | | 78163,62 |
| 309071 Rückstellung Interco PWK | 100.000,00 | | | 100000 |
| 309072 Rückstellung Interco IBEX | 66.665,00 | | | 66665 |
| 309085 Rückstellung Tariferhöhung/sonstige Lohn-/Gehaltskosten | -10.000,00 | | | -10000 |
| 309097 Rückstellung Urlaubslöhne | 25.869,00 | | | 25869 |
| 38160503 Abgrenzung Arb.geberanteil Soz.versich. | | | 67.500,00 | 67.500,00 |
| 38160504 Abgrenzung Arb.geberanteil Soz.versich. | | | 21.500,00 | 21.500,00 |
| 38210510 Rueckst. Gleitzeitsalden | | | | 0 |
| 38210518 Abgrenzungen Weihnachtsgeld | | | -55.144,42 | -55.144,42 |
| 38330501 Abgrenzungen Urlaubsloehne | | | 110.200,00 | 110.200,00 |
| 38330503 Abgrenzungen zusaetzliches Urlaubsgeld | | | 104.383,31 | 104.383,31 |

**47 / 76**

**DEBTORS' EXHIBIT NO. 251**
**Page 47 of 79**

EXECUTION VERSION

| | | | |
|---|---|---|---|
| 38330505 Abgrenzungen Urlaubsgehaelter | | 36.600,00 | 36.600,00 |
| 38330507 Abgrenzungen zusaetzl.Urlaubsgeld Gehae | | 34.645,34 | 34.645,34 |
| 38330508 Rueckst. Mehrarbeit | | 136.800,00 | 136.800,00 |
| 38330509 Rueckst. Resturlaub Gehaltsempfaenger | 7.887,32 | | 7887,32 |
| 38340000 Rueckst.fuer Sonderverguetungen u. Tantiemen | 32.208,00 | 170.000,00 | 202.208,00 |
| 39000699 Rueckstellung Pensionen-Deutscher Wert | | 76.000,00 | 76.000,00 |
| 41550000 Abgrenzung sonstige Versicherungen | | 20.911,13 | 20.911,13 |
| 41550500 Abgrenzung Feuer- u. FBU Versicherung | | -11.823,92 | -11.823,92 |
| 41580000 Rueckstellung fuer Berufsgenossenschaft | | 24.559,00 | 24.559,00 |
| 41630000 Rueckstellung Beitrage u Gebuehren | | 40.000,00 | 40.000,00 |
| 41650000 Rueckst. Beratungs- u. Pruefungsgebuehr | | 122.953,76 | 122.953,76 |
| 41700504 Sonstige Rückstellungen | 442.000,58 | 1.215.033,19 | 1.657.033,77 |
| 41700505 Rückstellung Zinsen | | 28.025,44 | 28.025,44 |
| 41700509 Rückstellungen für offene Rechnungen | | 1.161.769,50 | 1.161.769,50 |
| 41700511 Rückstellung Restrukturierung PWK (shor | | 32.500,00 | 32.500,00 |
| 41740000 Rückstellung für Restrukturierung | | | 0 |
| 41740500 Accrual for jubilee payments (long term | | 673.040,61 | 673.040,61 |
| BG: III. Other provisions | | | 0 |

CONFIDENTIAL

FBG_CH1_00095367

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | | |
|---|---|---|---|---|---|
| 459400 Provision - Restructuring | | | | | 0 |
| 459500 Provision - Warranties | | | | | 0 |
| 459600 Provision - Loss making contracts | | | | | 0 |
| 459700 Provision - law suits | | | | | 0 |
| 459800 Provision - unfinished construction contracts | | | | | 0 |
| C. Liabilities | 3.803.309,82 | 11.136.942,50 | 4.339.240,24 | 8.414.257,85 | 27.693.750,41 |
| 1. Trade payables | | 1.710.514,13 | 738.110,15 | 1.355.305,49 | 3.803.929,77 |
| 321000 Trade payables - External - ST | | 1.710.514,13 | 738.110,15 | 1.355.305,49 | 3.803.929,77 |
| 20062509 Verbindlichkeiten PWK Ibex GmbH | | | 15.533,21 | | 15533,21 |
| 30900502 Zielkonto: berechnet/noch nicht geliefert | | | -53.250,99 | | -53250,99 |
| 321100 Dodavatelé - tuzemsko - krátkodobé záv. | | | | | 0 |
| 321200 Dodavatelé - zahraničí - krátkodobé záv. | | | | | 0 |
| 331010 Verbindlichkeiten Inland | | 1.321.667,09 | | | 1321667,09 |
| 331020 Verbindlichkeiten EG | | 189.347,52 | | | 189347,52 |
| 331030 Verbindlichkeiten Drittland | | | | | 0 |
| 332060 Verbindlichkeit aus Fehlzahlung Debitoren | | | | | 0 |
| 345010 WA AuswärtsVerrechngKto | | 50.858,05 | | | 50858,05 |
| 345015 WA MaterialVerrechnKto | | 148.641,47 | | | 148641,47 |

**49 / 76**

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 49 of 79**

FBG_CH1_00095368

EXECUTION VERSION

| | | | | | |
|---|---|---|---|---|---|
| 36010000 Verb.Lieferanten Inland | | 195.139,00 | 1.055.742,90 | | 1.250.881,90 |
| 36010501 Verb.Lieferanten EU | | 102.492,42 | 299.562,59 | | 402.055,01 |
| 36010502 Verb.Lieferanten Drittland | | | | | |
| 36010628 Verrechnung debitorische Kreditoren | | 131.877,75 | | | 131877,75 |
| 36021689 nichtberechnete Wareneingaenge - Zielkonto | | 144.252,87 | | | 144252,87 |
| 37000000 sonstige Verbindlichkeiten | | 182.434,81 | | | 182434,81 |
| 37000001 Verbindlichkeiten Vorsteuer bei Anzahlungen | | 19.631,08 | | | 19631,08 |
| BG: III. Trade payables w/o finance lease | | | | | 0 |
| 321010 Trade payables - External - LT 1-5 years | | | | | 0 |
| 321020 Trade payables - External - LT over 5 years | | | | | 0 |
| 2. Liabilities to affiliated companies | 3.803.309,82 | 5.251.465,92 | 808.067,99 | 84.643,32 | 9.947.487,05 |
| 321100 Trade payables - Intercompany - ST | 220.993,35 | 1.303.571,59 | 508.067,99 | 84.643,32 | 2.117.276,25 |
| 20062023 IC Verbindlich. Winning BLW | | | | | 0 |
| 20062031 IC Verbindlich. Winning COFO Räuchle | | | 171.547,88 | | 171547,88 |
| 20062033 IC Verb. Winning COFO IBEX GMBH | | | | 1.025,32 | 1.025,32 |
| 20062094 IC Verbindlich. Winning IP Krefeld GmbH | | | | | 0 |
| 20062331 Anpassung IC Verb. Winning CoFo Räuchle | | | | | 0 |
| 20062506 IC Verbindlichkeiten Winning CoFo PWK | | | 316.246,11 | | 316246,11 |

**50 / 76**

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 50 of 79**

FBG_CH1_00095369

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | |
|---|---|---|---|---|
| 20062530 IC Verbindlichkeiten Winning CoFo a.s. | | | | 0 |
| 20062531 IC Ausleihen Winning CoFo - Räuchle GmbH | | | | 0 |
| 20062549 IC Verbindlichkeiten Winning SW Holding s.r.o. | | | | 0 |
| 20062550 IC Verbindlichkeiten Winning Group a.s. | | 20.274,00 | 83.618,00 | 103.892,00 |
| 20062551 IC Verbindlichkeiten Winning Management s.r.o. | | | | 0 |
| 20062553 IC Verbindlichkeiten Winning Steel s.r.o. | | | | 0 |
| 20062596 IC Verbindlichkeiten Winning IP Gelenau | | | | 0 |
| 321050 Dodavatelé - WG | 220.993,35 | | | 220993,35 |
| 321051 Dodavatelé - Winning Management s.r.o. | | | | 0 |
| 321051 Dodavatelé - WM | | | | 0 |
| 321090 Dodavatelé - IP | | | | 0 |
| 321090 Dodavatelé - Winning Industrial Property a.s. | | | | 0 |
| 321093 Dodavatelé - Winning IP DietenheimGmbH | | | | 0 |
| 331035 Verbindlichkeiten LuL Winning IP Dietenheim GmbH | | | | 0 |
| 331040 Verbindlichkeiten LuL Winning CoFo - PWK GmbH | 11.758,83 | | | 11758,83 |
| 331050 Verbindlichkeiten LuL Winning CoFo - IBEX GmbH | 51.574,83 | | | 51574,83 |
| 331060 Verbindlichkeiten LuL Winning CoFo a.s. | 275.730,46 | | | 275730,46 |
| 331070 Verbindlichkeiten LuL Winning Group a.s. | 964.455,30 | | | 964455,3 |

**51 / 76**

**DEBTORS' EXHIBIT NO. 251**
**Page 51 of 79**

FBG_CH1_00095370

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | |
|---|---|---|---|---|
| 331100 Verbindlichkeiten LuL Winning SW Holding s.r.o. | | 52,17 | | 52,17 |
| BG: IV. Payables to affiliated company | | | | 0 |
| 321110 Trade payables - Intercompany - LT 1-5 years | | | | 0 |
| 321120 Trade payables - Intercompany - LT over 5 years | | | | 0 |
| 343100 VAT - IC tax group | | | | 0 |
| 343050 DPH povinnost - zúčtování s WG | -150,56 | | | -150,56 |
| 343051 DPH povinnost - zúčtování s Winning Management s.r.o. | | | | 0 |
| Saldowechsel zwischen '343100 VAT - IC tax group' und '343100 VAT - IC tax group receivable' | 150,56 | | | 150,56 |
| 361100 Payables - Intercompany - Loans | 3.563.306,55 | 3.947.894,33 | 300000 | 7.811.200,88 |
| 312004 Winning Group S.A. Krizikova | | 3.547.894,33 | | 3547894,33 |
| 340010 Verbindlichkeiten Winning CoFo a.s. | | | | 0 |
| 340030 Verbindlichkeiten Winning Group a.s. | | | | 0 |
| 351010 1. gegenüber Gesellschafter Wagner | | 400.000,00 | | 400000 |
| 361050 Dluhy - ovládaná nebo ovládající osoba - WG | 3.563.306,55 | | | 3563306,55 |
| 361050 Dluhy - ovládaná nebo ovládající osoba - Winning Group a.s. | | | | 0 |
| 41700030 Rückstellungen Winning CoFo a.s. | | | | 0 |
| 46068031 Darlehen Raeuchle GmbH | | | | 0 |
| 46068032 Darlehen Winning CoFo PWK | | | 300000 | 300000 |

**52 / 76**

**DEBTORS' EXHIBIT NO. 251**
**Page 52 of 79**

FBG_CH1_00095371

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | |
|---|---|---|---|---|
| 46068033 Darlehen Winning Cofo IBEX | | | | 0 |
| 46068050 Darlehen Winning Group A.S. | | | | 0 |
| 362000 Payables - Intercompany - Loan Interests | 19.009,92 | | | 19009,92 |
| 362050 Dluhy - Winning Group a.s. | 19.009,92 | | | 19009,92 |
| 41700050 Rückstellungen Winning Group a.s. | | | | 0 |
| 364000 Payables - Intercompany - Dividends and Advances for dividends | | | | 0 |
| 3. Liabilities to other long-term investees and investors | | | | 0 |
| 365000 Other payables to shareholders | | | | 0 |
| 4. Liabilities to banks and other financial institutions | 3.830.875,43 | 2.556.636,71 | 4.546.041,03 | 10.933.553,17 |
| 231000 Loans from credit institutions - (not Fixed Assets) - ST | | | | 0 |
| 231010 Loans from credit institutions - (not Fixed Assets) - LT | | | | 0 |
| 231200 Loans from credit institutions - Overdraft - ST | | | | 0 |
| 231210 Loans from credit institutions - Overdraft - LT | | | | 0 |
| 231300 Loans from credit institutions - CAPEX - ST | 3.830.875,43 | 2.556.636,71 | 4.546.041,03 | 10.933.553,17 |
| 26000003 MKV 2022 NordLeasing | | 2.556.636,71 | 4.546.041,03 | 7.102.677,74 |
| 312002 Merca Leasing 711176-000 | 708.276,23 | | | 708276,23 |
| 312003 Merca Leasing 711175-000 | 3.122.599,20 | | | 3122599,2 |
| BG: II. Payables from finance lease, CAPEX loans, Mietkauf | | | | 0 |

**53 / 76**

**DEBTORS' EXHIBIT NO. 251**
**Page 53 of 79**

FBG_CH1_00095372

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | | |
|---|---|---|---|---|
| 231310 Loans from credit institutions - CAPEX - LT | | | | 0 |
| 26000000 MKV 2017 Objekt Gelenau LZ 5 Jahre | | | | 0 |
| 26000001 MKV 2017 Objekt Zittau LZ 10 Jahre | | | | 0 |
| 26000002 MKV 2017 Santenberg Maschinen LZ 10 Jahre | | | | 0 |
| 5. Other liabilities | 344.087,02 | 236.425,39 | 2.428.268,01 | 3.008.780,42 |
| 324000 Advances received - ST | | | | 0 |
| 324010 Advances received - LT 1-5 years | | | | 0 |
| 324020 Advances received - LT over 5 years | | | | 0 |
| 331000 Employees - Payables | -5.737,89 | 236.425,39 | 128.117,17 | 358.804,67 |
| 372010 Verbindlichkeiten aus Lohn und Gehalt | -5.393,57 | | | -5393,57 |
| 372012 Verbindlichkeiten aus Vermögensbildung | -344,32 | | | -344,32 |
| 38150000 Lohn und Gehalt - Verrechnungskonto | | | | 0 |
| 38160500 Sozialversicherung Verbindlichkeiten | | 4.739,43 | | 4739,43 |
| 38160505 Verbindlichkeiten betriebliche AV | | 740,00 | | 740 |
| 38160506 Verbindlichkeiten Lohn- und Kirchensteuer | | 34.047,80 | | 34047,8 |
| 38210501 Verbindlichkeiten Loehne | | 185.569,04 | 114.635,89 | 300.204,93 |
| 38210503 Verbindlichkeiten Gehaelter | | 11.329,12 | 13.481,28 | 24.810,40 |
| 336000 Social security and health insurance payable | 8.264,76 | | | 8264,76 |

CONFIDENTIAL

FBG_CH1_00095373

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | |
|---|---|---|---|
| 372011 Verbindlichkeiten aus Pfändungen | | | 0 |
| 372021 Verbindlichkeiten aus Pensionsversicherungen | 8.264,76 | | 8264,76 |
| 374010 Verbindlichkeiten gegenüber Sozialversicherungsträgern | | | 0 |
| **342000 Employee income tax** | **150.369,67** | | **150369,67** |
| 373010 Verbindlichkeiten aus Lohn- / Kirchensteuer | 150.369,67 | | 150369,67 |
| Saldowechsel zwischen '342 Employee income tax liability' und '342 Employee income tax receivable' | | | 0 |
| **343000 VAT** | **186.587,23** | | **186587,23** |
| 140009 Vorsteuer 5% | -36,07 | | -36,07 |
| 140010 Vorsteuer 7% | -17.548,06 | | -17548,06 |
| 140060 Vorsteuer Merker für gezahlte Anzahlungen | -0,02 | | -0,02 |
| 140064 Vorsteuer 16% | -1.212,59 | | -1212,59 |
| 140065 Vorsteuer 19% | -1.683.188,66 | | -1683188,66 |
| 142100 Vorsteuer aus Leistg. lt. §13b 19% Drittland | 24.833,37 | | 24833,37 |
| 143400 Einfuhrumsatzsteuer 19% | -4.188,51 | | -4188,51 |
| 144200 innergemeinschaftl. Erwerb 19% | -555.995,82 | | -555995,82 |
| 17020020 Forderungen ans Finanzamt aus UST-VA | | 1.057.312,90 | 1.057.312,90 |
| 380062 Umsatzsteuer 19% | 2.877.364,11 | | 2877364,11 |
| 380075 Umsatzsteuer aus sonstLeistg lt. $13b 19% EU | -24.833,37 | | -24833,37 |

**55 / 76**

DEBTORS' EXHIBIT NO. 251
Page 55 of 79

FBG_CH1_00095374

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | |
|---|---|---|---|
| 382000 Umsatzsteuervorauszahlungen | -428.607,15 | | -428607,15 |
| 40033500 Erwerbsteuer EU | -1.457,69 | -2.393.439,89 | -2.394.897,58 |
| 40033505 Ausgangssteuer EU | 1.457,69 | 2.393.439,89 | 2.394.897,58 |
| 40033510 Einfuhrumsatzsteuer Drittlaender | | -491,62 | -491,62 |
| 40033520 Ausgangssteuer DL EU | | 177.185,75 | 177.185,75 |
| 40033550 Vorsteuer DL EU + Drittland | | -178.266,83 | -178.266,83 |
| 40033552 MWSt - Vorsteuer | 9.918,00 | -8.156.558,00 | -8.146.640,00 |
| 40033554 Steuerwartekonto Vorsteuer | | | 0 |
| 40033560 VAT -output- on collected sales | -1.522,61 | 6.923.271,44 | 6.921.748,83 |
| 40033600 Umsatzsteuervorauszahlung | -154.340,33 | | -154340,33 |
| Saldowechsel zwischen '343 VAT Liability' und '343 VAT Receivable' | 145.944,94 | 177.546,36 | 323.491,30 |
| 345000 Other taxes | | | 0 |
| 346000 Subsidies | | | 0 |
| 373000 Payables from fixed term operations | | | 0 |
| 375000 Receivables from issued bonds | | | 0 |
| 379000 Other payables - External - ST | 4.603,25 | 479.097,79 | 483.701,04 |
| 16020508 Einbehalte Direktversicherung (Mitarbeiter-eigen) | | 5.254,55 | 5.254,55 |
| 16020509 Betriebl.Altersversorgung durch PWK | | 7.083,36 | 7.083,36 |

**56 / 76**

CONFIDENTIAL

FBG_CH1_00095375

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

| | | | |
|---|---|---|---|
| 357060 Sonstige Verbindlichkeiten | -1.256,15 | | -1256,15 |
| 37000000 sonstige Verbindlichkeiten | | 83.735,66 | 83.735,66 |
| 37000020 Verbindlichkeiten gegenüber FA aus UST- | | | 0 |
| 37030000 Einbehalte vom Lohn,Gehalt | | 3.927,16 | 3.927,16 |
| 379010 diverses Verrechnungskonto | 5.888,48 | | 5888,48 |
| 379020 Banken Verrechnungskonto | 219,29 | | 219,29 |
| 379040 Vorauskasserechnungen Insolvenz | -248,37 | | -248,37 |
| 38100000 Einbehaltene Lohnsteuer und Solidaritae | | 351.477,36 | 351.477,36 |
| 38160501 Arbeitnehmeranteil Sozialversicherung | | -3.227.166,88 | -3.227.166,88 |
| 38160502 Arbeitgeberanteil Sozialversicherung | | 3.250.802,77 | 3.250.802,77 |
| 38210505 Pfaendungseinbehalte | | 2.021,64 | 2.021,64 |
| 38210506 Einbehalte wegen Vermoegensbildung ( VL | | 1.944,41 | 1.944,41 |
| 38210516 Verbindlichkeiten aus Reisekostenanspruechen | | | 0 |
| 38210516 Verbindlichkeiten aus Reisekostenanspruechen | | 17,76 | 17,76 |
| 999999 Fehlerkonto | | | 0 |
| BG: V. Other Liabilities | | | 0 |
| 379010 Other payables - External - LT | | | 0 |
| 379200 Loan from minor lenders - ST | | | 0 |

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 57 of 79**

FBG_CH1_00095376

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | |
|---|---|---|
| 379210 Loan from minor lenders - LT | | 0 |
| 379300 Loan from other non-financial institutions - ST | | 0 |
| 379310 Loan from other non-financial institutions - LT | | 0 |
| 379400 Other payables - Factoring | | 0 |
| 379999 Debt Consolidation (-) | | 0 |
| 389000 Estimated payables | 1.821.053,05 | 1.821.053,05 |
| 30530000 aktive Abgrenzung Grundsteuer | 79.100,00 | 79.100,00 |
| 36020506 SAP Autom.Buch.n.ber.Liefer.-Rohmateria | 97.522,23 | 97.522,23 |
| 36020507 SAP Autom.Buch.n.ber.Liefer.-Hilfs-u.Be | 356.495,02 | 356.495,02 |
| 36020508 SAP Autom.Buch.n.ber.Liefer.-Konsignati | 1.287.935,80 | 1.287.935,80 |
| 36020550 Umgliederung WE/RE nach IC | | 0 |
| 473000 Issued bonds | | 0 |
| 481000 Deferred tax liability | | 0 |
| D. Accruals | | 0 |
| 383000 Accrued expenses (to be paid in following year) | | 0 |
| 384000 Deferred revenues (revenue of following year) | | 0 |

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 58 of 79**

FBG_CH1_00095377

### ANNEX 2          NET DEBT CALCULATION

| EUR | Estimated Balance Sheet |
|---|---|
| Fixed assets | 14.262.130,04 |
| Inventory | 18.182.209,70 |
| Receivables | 2.792.725,57 |
| Other assets | 4.100.208,84 |
| Prepaid expenses | 116.094,58 |
| IC receivable within CoFo | 1.132.162,04 |
| IC receivables vs. WG | 902.258,07 |
| Cash | 3.904.092,45 |
| Total assets | 45.391.881,29 |
| | |
| Equity | 10.702.132,30 |
| Trade payables | 3.803.929,77 |
| Other liabilities | 3.008.780,42 |
| Provisions | 6.995.998,58 |
| Debt | 10.933.553,17 |
| IC liabilities within CoFo | 1.127.883,43 |
| IC liabilities vs. WG | 8.819.603,62 |
| Deferred taxes | |
| Total liabilities and equity | 45.391.881,29 |
| | |
| **Working capital items** | **3.469.462,98** |
| | |
| *Adjustments* | |
| Security to Leasing companies | -494.077,10 |
| Receivables towards Winning Group | -902.258,07 |
| Payables towards Winning Group | 8.819.603,62 |
| | |
| **Normalised Working Capital** | **10.892.731,43** |
| | |
| **Net Cash** | **5.300.427,62** |
| **Net Debt** | **19.753.156,79** |

CONFIDENTIAL      FBG_CH1_00095378

**DEBTORS' EXHIBIT NO. 251**
**Page 59 of 79**

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

**ANNEX 3**            **WORKING CAPITAL CALCULATION**

| EUR | Estimated Balance Sheet |
|---|---|
| Fixed assets | 14.262.130,04 |
| Inventory | 18.182.209,70 |
| Receivables | 2.792.725,57 |
| Other assets | 4.100.208,84 |
| Prepaid expenses | 116.094,58 |
| IC receivable within CoFo | 1.132.162,04 |
| IC receivables vs. WG | 902.258,07 |
| Cash | 3.904.092,45 |
| Total assets | 45.391.881,29 |
| | |
| Equity | 10.702.132,30 |
| Trade payables | 3.803.929,77 |
| Other liabilities | 3.008.780,42 |
| Provisions | 6.995.998,58 |
| Debt | 10.933.553,17 |
| IC liabilities within CoFo | 1.127.883,43 |
| IC liabilities vs. WG | 8.819.603,62 |
| Deferred taxes | |
| Total liabilities and equity | 45.391.881,29 |
| | |
| **Working capital items** | **3.469.462,98** |
| | |
| *Adjustments* | |
| Security to Leasing companies | -494.077,10 |
| Receivables towards Winning Group | -902.258,07 |
| Payables towards Winning Group | 8.819.603,62 |
| | |
| **Normalised Working Capital** | **10.892.731,43** |
| | |
| **Net Cash** | **5.300.427,62** |
| **Net Debt** | **19.753.156,79** |

CONFIDENTIAL                                          FBG_CH1_00095379

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

**ANNEX 4**      **LIST OF DISCLOSED INFORMATION**

| Folder Path | Folder Name | File Name | Extension |
|---|---|---|---|
| 1 | Corporate Organization\ | Orga Chart Winning Cofo_after restructuring.xlsx | .xlsx |
| 1 | Corporate Organization\ | Orga Chart Winning Cofo_current.xlsx | .xlsx |
| 1 | Corporate Organization\ | Organigram CoFo_14112023.xlsx | .xlsx |
| 1 | Corporate Organization\ | SBizhubC25822082915170.pdf | .pdf |
| 1 | Corporate Organization\ | SBizhubC25822090916240.pdf | .pdf |
| 1 | Corporate Organization\ | SKM_C250i23111512200.pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - IBEX GmbH\ | 47798_HRB19155_GEL_S_2022-04-25_64755565_36577.pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - IBEX GmbH\ | 47798_HRB19155_GEV_R_2022-05-16_64750600_54111.pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - IBEX GmbH\ | 20231218_IBEX_Hannemann | .pdf |
| 1 | Corporate Organization\Winning CoFo - IBEX GmbH\ | Blitz 22-683_SPA_214{2}2022 (ID 3466143).pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - IBEX GmbH\ | BY-München_HRB_274857+CD-20231114142825.pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - IBEX GmbH\ | NW-Krefeld_HRB_19155+CD-20231114131801.pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - PWK GmbH\ | 47798_HRB19168_GEL_S_2022-04-25_64754910_25671.pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - PWK GmbH\ | 47798_HRB19168_GEV_R_2022-05-16_64750540_03764.pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - PWK GmbH\ | 20231218_PWK_Hannemann | .pdf |
| 1 | Corporate Organization\Winning CoFo - PWK GmbH\ | Blitz 22-681_SPA_212{2}2022 (ID 3466134).pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - PWK GmbH\ | BY-München_HRB_274866+CD-20231114131409.pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - PWK GmbH\ | NW-Krefeld_HRB_19168+CD-20231114131152.pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - Räuchle GmbH\ | 89070_HRB744297_GEL_S_2022-03-07_32363842_82595.pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - Räuchle GmbH\ | 89070_HRB744297_GEV_R_2022-04-07_32277332_76162.pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - Räuchle GmbH\ | 20231218_Rauchle_Hannemann | .pdf |
| 1 | Corporate Organization\Winning CoFo - Räuchle GmbH\ | BW-Ulm_HRB_744297+CD-20231114132214.pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - Räuchle GmbH\ | BY-München_HRB_273331+CD-20231114132310.pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo - Räuchle GmbH\ | SPA Blitz 22-627 (ID 3223457).pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo as\ | 20231116_notady_deed_CoFo_formation.pdf | .pdf |
| 1 | Corporate Organization\Winning CoFo as\ | 20231116_Winning_CoFo_Commercial_register_extract.pdf | .pdf |

61 / 76

**DEBTORS' EXHIBIT NO. 251**
**Page 61 of 79**

FBG_CH1_00095380

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| 1 | Corporate Organization\Winning CoFo as\ | shareholder List_Winning_CoFo_16112023_e.pdf | .pdf |
|---|---|---|---|
| 2 | Jurisdiction\ | Overview of incorporation.xlsx | .xlsx |
| 3 | Auditor Letters - not applicable\ | IBEX_2022_Testat.pdf | .pdf |
| 3 | Auditor Letters - not applicable\ | PWK_2022_Testat - kopie.pdf | .pdf |
| 3 | Auditor Letters - not applicable\ | Terstat_Räuchle_JAP_2022.pdf | .pdf |
| 4 | Litigation Summary\ | Continental.txt | .txt |
| 5 | Regulatory Filings and Correspondence - not applicable\ | Explanation.txt | .txt |
| 8 | Debt Instruments & 12. Leases\ | CoFo_Debt_Leases_2023_10_31.xlsx | .xlsx |
| 8 | Debt Instruments & 12. Leases\ | CommerzReal - Leasingvertrag alt Zusatzvereinbarung.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | CommerzReal - Leasingvertrag alt.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | CommerzReal - PWK Leasingvertrag neu+alt_kompakt.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | DMG MORI Finance GmbH MAFU Palettierzelle V594 Nr.34265 Abnahme-Erklärung 25.07.2023 signed.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | DMG MORI Finance GmbH MAFU Palettierzelle V594 Nr.34265 Dauerleasingrechnung v. 08.08.2023.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | DMG MORI Finance GmbH MAFU Palettierzelle V594 Nr.34265 Leasingvertrag 21.09.2022 signed.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | DMG MORI Finance GmbH MAFU Palettierzelle V594 Nr.34265 SEPA LS-Mandat Ausfertigung DMG MORI Finance v.23.05.2023 signed.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | DMG MORI Finance GmbH MAFU Palettierzelle V594 Nr.34265 SEPA LS-Mandat Ausfertigung Kreditinstitut v.23.05.2023 signed.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | DMG MORI Finance GmbH Multisprint 36 Nr.34180 Leasingvertrag 12.07.2022 signed.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | DMG MORI Finance GmbH Multisprint 36 Nr.34180 Leasingvertrag Dauerleasingrechnung.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | DMG MORI Finance GmbH Multisprint 36 Nr.34180 SEPA LS-Mandat Ausfertigung DMG MORI Finance v.15.05.2023 signed.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | DMG MORI Finance GmbH Multisprint 36 Nr.34180 SEPA LS-Mandat Ausfertigung Kreditinstitut v.15.05.2023 signed.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | DMG Mori Sale and buy back IBEX.pdf | .pdf |

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 62 of 79**

FBG_CH1_00095381

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | |
|---|---|---|---|
| 8 | Debt Instruments & 12. Leases\ | Gruma Mietvertrag Lindefahrzeug 1252-01 AU20-1015384 RahmenVertrag 202301 E25-600 HL.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Becker KR-PW 1964.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Dietze ERZ-PW 900.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Gaudy KR-PW30E.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Grossmann ERZ-WI 299.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Haenig ERZ-PW 177.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Hannemann KR-WG1003.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Heller KR-WG500.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Hellwig neu KR-WG23.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Henke KR-PW5555.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Kiefer KR-WG12.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Kisic KR-WI800 .pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Krichel KR-WG 321.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Moscovici KR-PW 25.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Otto KR-WG 1969.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Pool Gelenau ERZ-PW 7E .pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Pool Neu KW-WGXX.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Pool Schönbrunn ERZ-PW 120.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Rudolph KW-WG 223E.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Rücknagel neu ERZ-WGXX.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Stöcker KR-PW888.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KFZ Wenzig neu ERZ-WIXX.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KÜV Winning IBEX Anlage.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KÜV Winning IBEX.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KÜV Winning PWK Anlage.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | KÜV Winning PWK.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6722631 830599 SÖ SYS0492473 Elektrostapler E 40-600 H388 Abrechnung 01.06.2022-30.04.2024.pdf | .pdf |

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 63 of 79**

FBG_CH1_00095382

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6722631 830599 SÖ SYS0492473 Elektrostapler E 40-600 H388 Leasing ANTRAG.pdf | .pdf |
|---|---|---|---|
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6722638 830599 SÖ SYS0492472 Hochhubwagen L 12i 1172 Abrechnung 01.06.2022-31.03.2024.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6722638 830599 SÖ SYS0492472 Hochhubwagen L 12i 1172 Leasing ANTRAG.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6722639 830599 SÖ SYS0498530 Hochhubwagen L 14 AP 1173 Abrechnung 01.06.2022-30.04.2026.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6722639 830599 SÖ SYS0498530 Hochhubwagen L 14 AP 1173 Leasing ANTRAG.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6722705 830599 SÖ SYS 0498529 Hochhubwagen L 14 AP 1173 Leasing ANTRAG.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6723544 830599 SÖ Hochhubwagen L 12i 1172 Leasing ANTRAG.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765195 830599 SÖ SYS0512282 Elektrostapler E 15 386 Vertrag.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765196 830599 SÖ SYS0512293 Hochhubwagen L 14 AP 1173 P21173M02365 Übernahmebestätigung.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765196 830599 SÖ SYS0512293 Hochhubwagen L 14 AP 1173 Vertrag.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765197 830599 SÖ SYS0512291 Hochhubwagen L 14 AP 1173 P21173M02312 Übernahmebestätigung.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765197 830599 SÖ SYS0512291 Hochhubwagen L 14 AP 1173 Vertrag.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765200 830599 SÖ SYS0512290 Hochhubwagen D 14 AP 133 Vertrag.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765200 830599 SÖ SYS0512290 Hochhubwagen D 14 AP 133 Vertragsannahme.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765202 830599 SÖ SYS0512289 Hochhubwagen D 14 AP 133 Vertrag.pdf | .pdf |

64 / 76

**DEBTORS' EXHIBIT NO. 251**
**Page 64 of 79**

FBG_CH1_00095383

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | |
|---|---|---|---|
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765202 830599 SÖ SYS0512289 Hochhubwagen D 14 AP 133 Vertragsannahme.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765203 830599 SÖ SYS0512284 Hochhubwagen L14C1169 C21169M00044 Übernahmebestätigung.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765203 830599 SÖ SYS0512284 Hochhubwagen L14C1169 Vertrag.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765204 830599 SÖ SYS0512285 Hochhubwagen L14C1169 C21169M00045 Übernahmebestätigung.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765204 830599 SÖ SYS0512285 Hochhubwagen L14C1169 Vertrag.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765205 830599 SÖ SYS0512287 Hochhubwagen D 14 AP 133 Vertrag.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765205 830599 SÖ SYS0512287 Hochhubwagen D 14 AP 133 Vertragsannahme.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765206 830599 SÖ SYS0512292 Elektrostapler E 50-600 HL 38 Vertrag.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765209 830599 SÖ Rechnung 0000119706 05-2023 Hochhubwagen MM 10 1167.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765209 830599 SÖ SYS0512295 Hochhubwagen Vertrag.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765209 830599 SÖ Vertragsabrechnung Hochhubwagen MM 10 1167.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765209 830599 SÖ Übernahmebestätigung Hochhubwagen MM 10 1167.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde Leasing Vertrag 6765211 830599 SÖ SYS0512294 Elektrostapler E 25-1252-01 Vertrag.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Linde_RV Winning_FullService Leasing_202301.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing 711175-000 Endabrechnung v. 12.05.2022.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing 711175-000 Mietfortsetzungserklärung WG 5 GmbH - Winning Group a.s. v. 27.04.2022 signed.pdf | .pdf |

CONFIDENTIAL

DEBTORS' EXHIBIT NO. 251
Page 65 of 79

FBG_CH1_00095384

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| 8 | Debt Instruments & 12. Leases\ | Merca Leasing 711175-000 Mietkaufschein v. 27.04.2022.pdf | .pdf |
|---|---|---|---|
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing 711175-000 Mitverpflichtungserklärung WG5 GmbH v. 27.04.2022_parental guarantee needs to be transferred.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing 711175-000 Zins u. Tilgungsplan ab 11-2023 v. 27.10.2023.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing 711175-000 Zins u. Tilgungsplan ab 12-2022.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing 711176-000 Endabrechnung v. 02.05.2022_redacted.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing 711176-000 Kaufvertrag WG5 GmbH (Sale u. Mietkauf back) v. 27.04.2022_redact.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing 711176-000 Kautionsabrechnung Mietkaufschein per 31.12.2022.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing 711176-000 Mietfortsetzungserklärung WG 5 GmbH - Winning Group a.s. v. 27.04.2022 signed.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing 711176-000 Mietkaufschein v. 27.04.2022.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing 711176-000 Zins und Tilgung Mietkaufrechnung v. 02.05.2022.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing 711176-000 Zusatzvereinbarung Kaution v. 27.04.2022.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing Gewerblicher Mietkaufvertrag WG5 GmbH v. 27.04.2022.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing Teil-Aufhebungsvertrag Mietkaufschein-Nr. 711175-000-Kaufvertrag 7425 per 30.11.2022.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing Teil-Aufhebungsvertrag Mietkaufschein-Nr. 711175-000-Kaufvertrag 7425 per 31.10.2023 v. 27.10.2023.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing Unterschriftsproben v. 19.01.2023.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing Vertrag über eine Finanzierungszusage WG5 GmbH_redacted.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing Zusatzvereinbarung Nr. 1-Mietkaufschein-Nr. 711175-000 (7425) per 30.11.2022.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Merca Leasing Zusatzvereinbarung Nr. 2-Mietkaufschein-Nr. 711175-000 (7425) per 31.10.2023.pdf | .pdf |

66 / 76

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| 8 | Debt Instruments & 12. Leases\ | MFD IBEX Mietvertrag Klengel.pdf | .pdf |
|---|---|---|---|
| 8 | Debt Instruments & 12. Leases\ | MFD PWK Miete nach Leasingende verlängert bis April 2024.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Mietkaufvertrag NL - IBEX kompakt.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Mietkaufvertrag NL - PWK kompakt.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Mietkaufvertrag NL Nachtrag Nr. 2 IBEX.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Mietkaufvertrag NL Nachtrag Nr. 2 PWK.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Mietkaufvertrag NL Nachtrag Nr. 3 IBEX.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Mietkaufvertrag NL Nachtrag Nr. 3 PWK.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Mietkaufvertrag V23-000628_keine Gültigkeit.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | MK Winning IBEX Anlage 1.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | MK Winning IBEX Anlage 2 eE.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | MK Winning IBEX Anlage 3 Verlagerung Anhang.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | MK Winning IBEX Anlage 3 Verlagerung.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | MK Winning IBEX VM.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | MK Winning PWK Anlage 1.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | MK Winning PWK Anlage 2.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | MK Winning PWK VM.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | MKV NL IBEX_Nachtrag vorzeitige Ablöse.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | MKV NL PWK_Nachtrag vorzeitige Ablöse.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Schöler Fördertechnik AG Mietvertrag KFM0025038 SYS0499427 LINDE Elektro 4Rad Frontstapler E25-600HL H2X387Y04937 RE.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Schöler Fördertechnik AG Mietvertrag KFM0025038 SYS0499427 LINDE Elektro 4Rad Frontstapler E25-600HL H2X387Y04937 VERTRAG.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Schöler Fördertechnik AG Mietvertrag KFM0025039 SYS0479724 LINDE Elektro Hochhubwagen L 16 API W41173J03954 RE.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Schöler Fördertechnik AG Mietvertrag KFM0025039 SYS0479724 LINDE Elektro Hochhubwagen L 16 API W41173J03954 VERTRAG.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Schöler Fördertechnik AG Mietvertrag KFM0025879 SYS0507949 LINDE Elektro Hochhubwagen L 14 API P21173L05032 RE.pdf | .pdf |

67 / 76

DEBTORS' EXHIBIT NO. 251
Page 67 of 79

FBG_CH1_00095386

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| 8 | Debt Instruments & 12. Leases\ | Schöler Fördertechnik AG Mietvertrag KFM0025879 SYS0507949 LINDE Elektro Hochhubwagen L14API P21173L05032 VERTRAG.pdf | .pdf |
|---|---|---|---|
| 8 | Debt Instruments & 12. Leases\ | Schöler Fördertechnik AG Mietvertrag LINDE Elektro 4Rad Frontstapler H2X387Y04937 E25-600HL SYS0499427 KFM0025038.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Schöler Fördertechnik AG Mietvertrag LINDE Elektro 4Rad Frontstapler H2X387Y04937 E25-600HL SYS0499427 R230033410.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Schöler Fördertechnik AG Mietvertrag LINDE Elektro Hochhubwagen L 16 API W41173J03954 SYS0479724 KFM0025039.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Schöler Fördertechnik AG Mietvertrag LINDE Elektro Hochhubwagen L 16 API W41173J03954 SYS0479724 R230033411.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Schöler Fördertechnik AG Mietvertrag LINDE Elektro Hubwagen L 14 API P21173L05032 SYS0507949 KFM0025879.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Schöler Fördertechnik AG Mietvertrag LINDE Elektro Hubwagen L 14 API P21173L05032 SYS0507949 R230033412.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Schöler Fördertechnik AG RE 3 St. Scherenhubwagen R230004185 2.953,58.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | SEPA-Mandat Winning IBEX - Commerzbank.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | SEPA-Mandat Winning PWK - Commerzbank.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Sicherungsschein Winning IBEX - AXA.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Sicherungsschein Winning PWK - AXA.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Stapler IBEX.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Stapler PWK Jungheinrich bis Mai 2024.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Stapler PWK Linde ab Januar 2023.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Transco PWK_ MKV inklusive Anlage.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Transco PWK_Vereinbarung Sale and Mietkauf back.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | V23-000766_Freigabe Vermieterpfandrecht_gez..pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | V23-000766_Mietkaufvertrag_SMKB_transco_gez..pdf | .pdf |

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 68 of 79**

FBG_CH1_00095387

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | |
|---|---|---|---|
| 8 | Debt Instruments & 12. Leases\ | V23-000766_Sale and Mietkaufback Vereinbarung_transco_gez..pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | VW Leasing F427233 UL RP 400 Vertragsumschreibung.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | VW Leasing F978429 UL RP 2222 Vertragsumschreibung.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | VW Leasing G002237 UL RP 888 Vertragsumschreibung.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | VW Leasing G352613 UL RP 900 Vertragsumschreibung.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | VW Leasing RE10193319201 Aufstellung KFZ 01.01.2023.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | Winning CoFo Räuchle GmbH Kaeser Kompressoren Mietvertrag 01.05.2022 - 31.12.2023 signed.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | ÜB Winning IBEX VM.pdf | .pdf |
| 8 | Debt Instruments & 12. Leases\ | ÜB Winning PWK VM.pdf | .pdf |
| 8 | Acquisitions - Dispositions\Räuchle\ | 2.3 - Räuchle - Bezugsurkunde zum Güter- und Grundstückskaufvertrag (UVZ_45-2022 L).pdf | .pdf |
| 9 | Acquisitions - Dispositions\PWK_IBEX\ | 2022_06_30_Vollzugsprotokoll_redacted.pdf | .pdf |
| 9 | Acquisitions - Dispositions\PWK_IBEX\ | 577-2022 K - Teil 1 von 5_redacted.pdf | .pdf |
| 9 | Acquisitions - Dispositions\PWK_IBEX\ | 577-2022 K - Teil 2 von 5.pdf | .pdf |
| 9 | Acquisitions - Dispositions\PWK_IBEX\ | 577-2022 K - Teil 3 von 5.pdf | .pdf |
| 9 | Acquisitions - Dispositions\PWK_IBEX\ | 577-2022 K - Teil 4 von 5.pdf | .pdf |
| 9 | Acquisitions - Dispositions\PWK_IBEX\ | 577-2022 K - Teil 5 von 5_redacted.pdf | .pdf |
| 9 | Acquisitions - Dispositions\PWK_IBEX\ | K578-2022 (ID 3557970)_redacted.pdf | .pdf |
| 9 | Acquisitions - Dispositions\PWK_IBEX\ | Vollzugsprotokoll_Project Key_executed Winning Group (ID 3739956)_redacted.pdf | .pdf |
| 9 | Acquisitions - Dispositions\Räuchle\ | 1 Räuchle - Güter- und Grundstückskaufvertrag (UVZ_46-2022 L)_redacted.pdf | .pdf |
| 9 | Acquisitions - Dispositions\Räuchle\ | 2.1 - Räuchle - Bezugsurkunde zum Güter- und Grundstückskaufvertrag (UVZ_45-2022 L)_redacted.pdf | .pdf |
| 9 | Acquisitions - Dispositions\Räuchle\ | 2.2 - Räuchle - Bezugsurkunde zum Güter- und Grundstückskaufvertrag (UVZ_45-2022 L)_redacted.pdf | .pdf |
| 9 | Acquisitions - Dispositions\Räuchle\ | 2.4 - Räuchle - Bezugsurkunde zum Güter- und Grundstückskaufvertrag (UVZ_45-2022 L)_redacted.pdf | .pdf |

CONFIDENTIAL

FBG_CH1_00095388

**DEBTORS' EXHIBIT NO. 251**

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | |
|---|---|---|---|
| 9 | Acquisitions - Dispositions\Räuchle\ | Verzicht Vollzugsvoraussetzungen Project Forge_DL 2022-04-28 (ID 3484038) – Unterschrift IV_redacted.pdf | .pdf |
| 9 | Acquisitions - Dispositions\Räuchle\ | Verzicht Vollzugsvoraussetzungen Project Forge_DL 2022-04-28 (ID 3484038)-signed_redacted.pdf | .pdf |
| 9 | Acquisitions - Dispositions\Räuchle\ | Vom IV  unterschriebenes Vollzugsprotokoll-signed_redacted.pdf | .pdf |
| 10 | Operating Agreements\ | 2023.11.14 Top 5 suppliers CoFo.xlsx | .xlsx |
| 10 | Operating Agreements\ | 2023.11.15 Energy Purchasing Overview 2024 CoFo.xlsx | .xlsx |
| 10 | Operating Agreements\ | 20231120_laengerfristige_IT_Verträge.xlsx | .xlsx |
| 10 | Operating Agreements\ | Bosch_Tradeagreement_Signature_request_on_Contract_Winning _Germany.pdf | .pdf |
| 10 | Operating Agreements\ | EVAMO_Winning_Group_-Trade_Agreement_20220430-signed.pdf | .pdf |
| 10 | Operating Agreements\ | Factoringvertrag unterschrieben von Targo_IBEX.pdf | .pdf |
| 10 | Operating Agreements\ | Factoringvertrag unterschrieben von Targo_PWK.pdf | .pdf |
| 10 | Operating Agreements\ | MAHLE_Kundenanschreiben_Preisanpassung_Confirmation_sigend .pdf | .pdf |
| 10 | Operating Agreements\ | MB AG_Trade Agreement_Winning Group__Räuchle.pdf | .pdf |
| 10 | Operating Agreements\ | Musashi_Continuation Agreement with Winning CoFo - PWK GmbH signed.pdf | .pdf |
| 10 | Operating Agreements\ | Overview improvement of daily cash at pwk due to new payment terms with suppliers.xlsx | .xlsx |
| 10 | Operating Agreements\ | THK_6-220929 Winning CoFo PWK Trade Agreement signed.pdf | .pdf |
| 10 | Operating Agreements\ | TKB Trade Agreement signed.pdf | .pdf |
| 10 | Operating Agreements\ | Trade-Agreementen_Winning_Schaeffler_05.2022_encrypted_.pdf | .pdf |
| 10 | Operating Agreements\ | Winning CoFo - IBEX GmbH.pdf | .pdf |
| 10 | Operating Agreements\ | Winning CoFo - PWK GmbH.pdf | .pdf |
| 10 | Operating Agreements\ | Winning CoFo - Räuchle GmbH.pdf | .pdf |
| 10 | Operating Agreements\ | Winning CoFo Räuchle GmbH TARGO Factoring GmbH Anlage 1 Konditionen.pdf | .pdf |
| 10 | Operating Agreements\ | Winning CoFo Räuchle GmbH TARGO Factoring GmbH Annex, Ausklammerungen.pdf | .pdf |

70 / 76

CONFIDENTIAL

FBG_CH1_00095389

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| 10 | Operating Agreements\ | Winning CoFo Räuchle GmbH TARGO Factoring GmbH Factoringvertrag WR mit Vertretung signed.pdf | .pdf |
|---|---|---|---|
| 10 | Operating Agreements\ | Winning CoFo Räuchle GmbH TARGO Factoring GmbH Factoringvertrag.pdf | .pdf |
| 10 | Operating Agreements\ | Winning CoFo Räuchle GmbH TARGO Factoring GmbH I. Nachtrag - Saldenbestätigungen.pdf | .pdf |
| 10 | Operating Agreements\ | Winning CoFo Räuchle GmbH TARGO Factoring GmbH II. Nachtrag - eRE.pdf | .pdf |
| 10 | Operating Agreements\ | Winning CoFo Räuchle GmbH TARGO Factoring GmbH III. Nachtrag - GS-Verfahren Mapping.pdf | .pdf |
| 10 | Operating Agreements\ | Winning CoFo Räuchle GmbH TARGO Factoring GmbH IV. Nachtrag - Konzentration.pdf | .pdf |
| 10 | Operating Agreements\ | Winning CoFo Räuchle GmbH TARGO Factoring GmbH V. Nachtrag zum Factoringvertrag.pdf | .pdf |
| 10 | Operating Agreements\ | ZF Räuchle 2_Winning_Signature plant ZF Lemförder Métal France.pdf | .pdf |
| 10 | Operating Agreements\ | ZF Räuchle_TA ZF Slovakia Räuchle _ZF-Winning-signed.pdf | .pdf |
| 10 | Operating Agreements\ | ZF_2022-06-30_Trade Agreement_PWK _ZF-Winning final signed Winning.pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | Aufstellung aktuelle Fahrzeuge.pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | Büchner Barella KfZ 2023.pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | Büchner Barella Prämienrechnung 2023 Betriebs.-Produkt. Haftpflicht Vertr.Nr. AS-9250849021 Nachtrag per 01.01.2023 Anp.V-Prämie.PDF | .PDF |
| 10 | Operating Agreements\Insurance\ | Büchner Barella Prämienrechnung 2023 Betriebs.-Produkt. Haftpflicht Vertr.Nr. AS-9250849021 Re. 2102306.pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | Büchner Barella Prämienrechnung 2023 Betriebs.-Produkt. Haftpflicht Vertr.Nr. AS-9250849021 Re. 2194716 Anp..pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | Büchner Barella Prämienrechnung 2023 DRK Dienstreise Versicherung Vertr.Nr. K_143-7773986-004712404 Re. 2107868.PDF | .PDF |

71 / 76

**DEBTORS' EXHIBIT NO. 251**
**Page 71 of 79**

FBG_CH1_00095390

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| | | | |
|---|---|---|---|
| 10 | Operating Agreements\Insurance\ | Büchner Barella Prämienrechnung 2023 Haftpflicht KfZ Rückruf Vertr.Nr. AS-9250849155 Nachtrag per 01.01.2023 Anp.V-Prämie.PDF | .PDF |
| 10 | Operating Agreements\Insurance\ | Büchner Barella Prämienrechnung 2023 Haftpflicht KfZ Rückruf Vertr.Nr. AS-9250849155 Re. 2102309.pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | Büchner Barella Prämienrechnung 2023 Haftpflicht KfZ Rückruf Vertr.Nr. AS-9250849155 Re. 2194718 Anp..pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | Büchner Barella Prämienrechnung 2023 Haftpflicht Produkt Rückruf Vertr.Nr. AS-9250849382 Nachtrag per 01.01.2023 Anp.V-Prämie.PDF | .PDF |
| 10 | Operating Agreements\Insurance\ | Büchner Barella Prämienrechnung 2023 Haftpflicht Produkt Rückruf Vertr.Nr. AS-9250849382 Re.2102308.pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | Büchner Barella Prämienrechnung 2023 Industrie-Straf-RS Vertr.Nr. SV 074928930  01.01.2023 bis 01.10.2023.pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | Büchner Barella Prämienrechnung 2023 Maschinenversicherung Vertr.Nr. 300.380.085.376 RE. 2101779.pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | Büchner Barella Prämienrechnung 2023 Transport Versicherung Vertr.Nr. TB 143-7773986-9386478 Re. 2101812.pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | Büchner Barella Prämienrechnung 2023 Verkehrs-RS Vertr.Nr. SV 074926079  01.01.2023 bis 01.10.2023.pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | Büchner Barella Versicherungsmakler-Vertrag- signed.pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | Büchner Barella Versicherungsmakler-Vollmacht signed.pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | ERGO_Rechtsschutz_im_Verkehrsbereich_Bedingungen.PDF | .PDF |
| 10 | Operating Agreements\Insurance\ | ERGO_Spezial-Straf-Rechtsschutz_Bedingungen.PDF | .PDF |
| 10 | Operating Agreements\Insurance\ | Overview PWK IBEX.PDF | .PDF |
| 10 | Operating Agreements\Insurance\ | Overview Räuchle.pdf | .pdf |
| 10 | Operating Agreements\Insurance\ | Straf-RS_Nachtrag_per_01.01.2023__Umstellung_auf_Honorarbasis.PDF | .PDF |
| 10 | Operating Agreements\Insurance\ | Verkehrs-RS_Nachtrag_per_01.01.2023__Umstellung_auf_Honorarbasis.PDF | .PDF |
| 14 | Employee Contracts\ | Aufhebungsvertrag GF Hannemann_signed- signed.pdf | .pdf |
| 14 | Employee Contracts\ | Lohnliste anonym PWK & Ibex_Oktober 2023_15.11.2023.xlsx | .xlsx |

72 / 76

DEBTORS' EXHIBIT NO. 251
Page 72 of 79

FBG_CH1_00095391

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| 14 | Employee Contracts\ | PWK_Zukunftstarifvertrag 2022-2026.pdf | .pdf |
|---|---|---|---|
| 14 | Employee Contracts\ | Räuchle.xlsx | .xlsx |
| 14 | Employee Contracts\ | Schreiben Hannemann.pdf | .pdf |
| 14 | Employee Contracts\ | WCR Räuchle GmbH & Co KG Eckpunktepapier zum Haustarifvertrag v. 10.07.2019 signed.pdf | .pdf |
| 14 | Employee Contracts\ | WCR Winning CoFo Räuchle GmbH Haustarifvertrag 2022 v. 27.04.2022 signed.pdf | .pdf |
| 15 | Transactions with Affiliates\ | Gelenau Alt.pdf | .pdf |
| 15 | Transactions with Affiliates\ | Guarantee agreement CoFo Rauchle.pdf | .pdf |
| 15 | Transactions with Affiliates\ | IP Dietenheim Mietvertrag Nachtrag Nr. 2.pdf | .pdf |
| 15 | Transactions with Affiliates\ | IP Gelenau Mietvertrag Nachtrag Nr. 1.pdf | .pdf |
| 15 | Transactions with Affiliates\ | IP Gelenau_Mietvertrag_2023_04_03- signed.pdf | .pdf |
| 15 | Transactions with Affiliates\ | IP Krefeld Mietvertrag Nachtrag Nr. 1.pdf | .pdf |
| 15 | Transactions with Affiliates\ | IP Krefeld_Mietvertrag_2023_04_03-signed.pdf | .pdf |
| 15 | Transactions with Affiliates\ | Lageplan2014.pdf | .pdf |
| 15 | Transactions with Affiliates\ | Winning CoFo - IBEX - ENG.pdf | .pdf |
| 15 | Transactions with Affiliates\ | Winning CoFo - PWK - ENG.pdf | .pdf |
| 15 | Transactions with Affiliates\ | Winning CoFo - Räuchle - ENG.pdf | .pdf |
| 15 | Transactions with Affiliates\ | Winning IP Dietenheim GmbH Gewerbemietvertrag Nachtrag 1 Winning CoFo Räuchle v. 30.11.2022 signed.pdf | .pdf |
| 15 | Transactions with Affiliates\ | Winning IP Dietenheim GmbH Gewerbemietvertrag Winning CoFo Räuchle signed v. 18.11.2022.pdf | .pdf |
| 16 | Labor Issues\ | Räuchle.txt | .txt |
| 18 | Intellectual Property\ | 577-2022 K - Teil 4 von 5.pdf | .pdf |
| 18 | Intellectual Property\ | PWK - acquired IP rights.note.txt | .txt |
| 19 | Environmental Matters\ | 14001_DEU_Winning CoFo - Räuchle GmbH.pdf | .pdf |
| 19 | Environmental Matters\ | 14001_ENG_Winning CoFo - Räuchle GmbH.pdf | .pdf |
| 19 | Environmental Matters\ | 16949_DEU_Winning CoFo - Räuchle GmbH.pdf | .pdf |
| 19 | Environmental Matters\ | 16949_ENG_Winning CoFo - Räuchle GmbH.pdf | .pdf |
| 19 | Environmental Matters\ | 23-Bericht Abfallbeauftragter Krefeld.pdf | .pdf |
| 19 | Environmental Matters\ | 23-Bericht Gewässerschutzbeauftragter-Kopie.pdf | .pdf |

73 / 76

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| 19 | Environmental Matters\ | 23-Bewertung Umwelt- u. Energiemanagementsystem.pdf | .pdf |
|---|---|---|---|
| 19 | Environmental Matters\ | 50001_DEU_Winning CoFo - Räuchle GmbH.pdf | .pdf |
| 19 | Environmental Matters\ | 50001_ENG_Winning CoFo - Räuchle GmbH.pdf | .pdf |
| 19 | Environmental Matters\ | 9001_DEU_Winning CoFo - Räuchle GmbH.pdf | .pdf |
| 19 | Environmental Matters\ | 9001_ENG_Winning CoFo - Räuchle GmbH.pdf | .pdf |
| 19 | Environmental Matters\ | Abfallmengen 2022 - Neuauflage Kuhn .xlsx | .xlsx |
| 19 | Environmental Matters\ | Bericht Medienübergreifende Umweltinspektion 2023.pdf | .pdf |
| 19 | Environmental Matters\ | MH-_Inhaltsverzeichnis.pdf | .pdf |
| 19 | Environmental Matters\ | MH0_Vorwort.pdf | .pdf |
| 19 | Environmental Matters\ | MH1_Verbindlichkeitserklärung.pdf | .pdf |
| 19 | Environmental Matters\ | MH2_Unternehmenspolitik.pdf | .pdf |
| 19 | Environmental Matters\ | MH3_Managementsystem.pdf | .pdf |
| 19 | Environmental Matters\ | Winning CoFo - PWK u. IBEX GmbH 14001 de.pdf | .pdf |
| 19 | Environmental Matters\ | Winning CoFo - PWK u. IBEX GmbH 14001 en.pdf | .pdf |
| 21 | Data protection\ | Mitteilungsformular.pdf | .pdf |
| 21 | Data protection\ | Verifizierung Ihrer E-Mail-Adresse für das Onlineformular Mitteilung des benannten Datenschutzbeauftragten.msg | .msg |
| 21 | Data protection\ | Winning CoFo Räuchle GmbH - Dr. Schmid Datenschutzbeauftragter Bestellung Datenschutzbeauftragter.pdf | .pdf |
| 21 | Data protection\ | Winning CoFo Räuchle GmbH - Dr. Schmid Datenschutzbeauftragter Bestätigungsschreiben.pdf | .pdf |
| 21 | Data protection\ | Winning CoFo Räuchle GmbH - Dr. Schmid Datenschutzbeauftragter Vertrag signed 21.09.2022.pdf | .pdf |
| 21 | Data protection\ | Winning CoFo Räuchle GmbH - e-Rechtsanwälte Datenschutzbeauftragte RE 01.07.-30.09.2023.pdf | .pdf |
| 22 | Financial information\ | 2023.11.23 Payment terms changes CoFo Group.xlsx | .xlsx |
| 22 | Financial information\ | Aging of receivables CoFo October 2023.xlsx | .xlsx |
| 22 | Financial information\ | All P&L.xls | .xls |
| 22 | Financial information\ | All P&L_updated.xls | .xls |
| 22 | Financial information\ | CoFo aggreggated Balance Sheet per November.xls | .xls |
| 22 | Financial information\ | CoFo aggreggated Balance Sheet per October amended.xls | .xls |

CONFIDENTIAL

**DEBTORS' EXHIBIT NO. 251**
**Page 74 of 79**

FBG_CH1_00095393

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

| 22 | Financial information\ | CoFo aggreggated Balance Sheet per October.xls | .xls |
|----|------------------------|------------------------------------------------|------|
| 22 | Financial information\ | Energie Aussetzung ihrer Vorauszahlung für Winning CoFo IBEX und Winning CoFo PWK.msg | .msg |
| 22 | Financial information\ | Equity bridge ALL BS_sent.xlsx | .xlsx |
| 22 | Financial information\ | Fixed asset overview Sep 2023.xlsx | .xlsx |
| 22 | Financial information\ | Invoice aluminum after payment terms change.pdf | .pdf |
| 22 | Financial information\ | Invoice aluminum before payment terms change.pdf | .pdf |
| 22 | Financial information\ | Nov PL.xlsx | .xlsx |
| 22 | Financial information\ | November BS.xlsx | .xlsx |
| 22 | Financial information\ | Sales by countries CoFo 2022.xlsx | .xlsx |

CONFIDENTIAL

FBG_CH1_00095394

DocuSign Envelope ID: E3BB5F08-C1BC-4C5F-A231-8759732723E1

EXECUTION VERSION

CONFIDENTIAL

FBG_CH1_00095395

**DocuSign®**

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: E3BB5F08C1BC4C5FA2318759732723E1 | | Status: Completed |
| Subject: Complete with DocuSign: SPA_Winning Group a.s., Horizontal International Holdings LLC | | |
| Client Matter Number (for reporting purposes only): 0145849-0000001 | | |
| Source Envelope: | | |
| Document Pages: 76 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 3 | Initials: 0 | Anna Plichtova |
| AutoNav: Enabled | | 1 Bishops Square |
| EnvelopeId Stamping: Enabled | | London,  E1 6AD |
| Time Zone: (UTC) Dublin, Edinburgh, Lisbon, London | | Anna.Plichtova@AllenOvery.com |
| | | IP Address: 212.162.8.110 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Anna Plichtova | Location: DocuSign |
|      12/22/2023 2:40:26 PM |      Anna.Plichtova@AllenOvery.com | |
| Security Appliance Status: Connected | Pool: DocuSign Production Appliance Pool | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Kumar Shekhar<br>Shekhar.Kumar@firstbrandsgroup.com<br>Managing Director<br>Security Level: Email, Account Authentication<br>(None) | DocuSigned by:<br>―5DC9E2269BE44FC...<br><br>Signature Adoption: Uploaded Signature Image<br>Using IP Address: 108.50.141.109 | Sent: 12/22/2023 3:00:25 PM<br>Viewed: 12/22/2023 3:07:54 PM<br>Signed: 12/22/2023 3:08:21 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 12/22/2023 3:07:54 PM<br>    ID: 6466fa4d-0c74-4885-be54-b52b7b02dc68 | | |
| Sebastian Wagner<br>sebastian.wagner@be-winning.com<br>Winning Germany 5 GmbH<br>Security Level: Email, Account Authentication<br>(None) | DocuSigned by:<br>*Sebastian Wagner*<br>―6D4F3FB1C4FF416...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 220.245.92.67 | Sent: 12/22/2023 3:00:25 PM<br>Viewed: 12/22/2023 4:40:37 PM<br>Signed: 12/22/2023 4:47:26 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 12/22/2023 4:40:37 PM<br>    ID: 816de8d7-9698-4b42-8a4b-3def7c65c762 | | |
| Anna Plichtova<br>anna.plichtova@allenovery.com<br>Security Level: Email, Account Authentication<br>(None) | Completed<br><br>Using IP Address: 147.161.255.86 | Sent: 12/22/2023 4:47:34 PM<br>Viewed: 12/22/2023 5:12:08 PM<br>Signed: 12/22/2023 5:13:57 PM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

CONFIDENTIAL

FBG_CH1_00095396

| Certified Delivery Events | Status | Timestamp |
|---|---|---|
| Jana Chwaszcz<br>Jana.Chwaszcz@AllenOvery.com<br>Security Level: Email, Account Authentication (None) | VIEWED<br><br>Using IP Address: 147.161.165.21 | Sent: 12/22/2023 3:00:25 PM<br>Viewed: 12/22/2023 3:07:30 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 12/22/2023 3:07:30 PM<br>ID: fd1a0380-ee83-4959-adbd-15524d60ac5c | | |
| Martin Drahotský<br>martin.drahotsky@be-winning.com<br>Security Level: Email, Account Authentication (None) | VIEWED<br><br>Using IP Address: 85.132.136.18 | Sent: 12/22/2023 3:00:26 PM<br>Viewed: 12/22/2023 3:11:03 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 12/22/2023 3:11:03 PM<br>ID: 54738495-b8db-4a6c-bb0b-3b0ffc08190c | | |
| Martin Vykopal<br>Martin.Vykopal@allenovery.com<br>Security Level: Email, Account Authentication (None) | VIEWED<br><br>Using IP Address: 46.135.9.14<br>Viewed using mobile | Sent: 12/22/2023 3:00:27 PM<br>Viewed: 12/22/2023 4:20:50 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 12/22/2023 4:20:50 PM<br>ID: 337464b7-a5b3-4bd6-b00c-5664b35de08f | | |

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 12/22/2023 3:00:27 PM |
| Certified Delivered | Security Checked | 12/22/2023 5:12:08 PM |
| Signing Complete | Security Checked | 12/22/2023 5:13:57 PM |
| Completed | Security Checked | 12/22/2023 5:13:57 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

CONFIDENTIAL

FBG_CH1_00095397

Electronic Record and Signature Disclosure created on: 1/21/2022 8:33:12 AM.
Parties agreed to: Kumar Shekhar, Sebastian Wagner, Jana Chwaszcz, Martin Drahotsky, Martin Vykopal

Case 25-90399   Document 3644-16   Filed in TXSB on 08/12/26   Page 79 of 79

By electronically signing and submitting a document you represent, confirm, authorise and undertake to Allen & Overy LLP and to each of the other parties that:

(a) you approve the documents that you have been provided access to;

(b) you authorise Allen & Overy LLP without further notice to date and to release each signed document to all other parties. At this point you will be bound by the terms of each document to which you are a party;

(c) each signed, dated document shared with the other parties will constitute an electronic original;

(d) you authorise that the particulars of your execution may be documented in an audit trail in the knowledge that this will be stored and may be used in connection with a dispute;

(e) in the case of each document that is a deed, its release and dating by Allen &Overy LLP will constitute delivery of the deed by you.

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. Allen & Overy (Holdings) Limited is a limited company registered in England and Wales with registered number 07462870. The term partner is used to refer to a member of Allen & Overy LLP or a director of Allen & Overy (Holdings) Limited or in either case an employee or consultant with equivalent standing and qualifications. A list of the members of Allen & Overy LLP and of the non-members who are designated as partners, and a list of the directors of Allen & Overy (Holdings) Limited, are open to inspection at the registered office of both, One Bishops Square, London E1 6AD. Both Allen & Overy LLP and Allen & Overy (Holdings) Limited are authorised and regulated by the Solicitors Regulation Authority of England and Wales.

For further information about how we are regulated, including with regard to our complaints procedure, insurance mediation and other financial services, please see our website at http://www.allenovery.com/aoweb/legal

CONFIDENTIAL

FBG_CH1_00095398