**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| | : | Chapter 11 |
| In re: | : | |
| | : | |
| FIRST BRANDS GROUP, *et al.,* | : | Case No. 25-90399 (CML) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |

**MOTION FOR ENTRY OF AN ORDER (I) CLARIFYING THAT THE MAY 29, 2026 ORDER (ECF NO. 2845) MODIFIES THE AUTOMATIC STAY TO AUTHORIZE PAYMENTS BY THE EXCESS ABC INSURERS, OR ALTERNATIVELY (II) AUTHORIZING, AND, TO THE EXTENT NECESSARY, MODIFYING THE AUTOMATIC STAY TO ALLOW THE EXCESS ABC INSURERS TO MAKE PAYMENTS, INCLUDING THE ADVANCEMENT OF DEFENSE COSTS, OF INSURED PERSONS**

**This is a motion for clarification or, alternatively, relief from the automatic stay. If it is granted, the Movants may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving parties to settle. If you cannot settle, you must file a response and send a copy to the moving parties at least seven days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the Court (as defined below) may rule.**

**Represented parties should act through their attorney.**

**There will be a hearing on this matter on September 8, 2026, at 10:00 a.m. in Courtroom 402, 515 Rusk, Houston, TX 77002.**

XL Specialty Insurance Company ("XL Specialty"), Endurance American Insurance Company,

Markel American Insurance Company, Berkley Insurance Company, Arch Insurance Company, Federal

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Insurance Company, Twin City Fire Insurance Company, Everest National Insurance Company, and Old Republic Insurance Company (collectively, the "Movants" or "Excess ABC Insurers") respectfully state as follows in support of this motion (this "Motion"):

1.  Movants are insurers who issued excess ABC directors and officers ("D&O") insurance policies to non-Debtor Mayfair Enterprises, LLC ("Mayfair") (the "Excess ABC Policies").[2] Debtor First Brands Group LLC (the "Debtor" or "First Brands") was a subsidiary of Mayfair.

2.  By order dated January 7, 2026 (ECF No. 1231), this Court denied without prejudice the motion by certain former directors and/or officers of First Brands to the extent they sought relief from the automatic stay to permit the insurers who issued "ABC" insurance policies to Mayfair to pay Defense Costs under their policies (ECF No. 798).  The January 7, 2026 Order also held that the automatic stay does not apply to the "Side A" insurance policies issued to Mayfair, thereby permitting the Side A insurers to make payments under the Side A policies.

3.  By order dated May 29, 2026 (ECF No. 2845), the Court authorized payments by the primary ABC insurer and "all related Side A Insurers."  The *May 29, 2026 Order* modified the stay, to the extent applicable, "to permit the Primary Insurer and Side A Insurers to pay and/or advance Defense Costs consistent with their obligations under the ABC Policy."

---

[2] The Excess ABC Policies are listed in Exhibit C to ECF No. 10 (ECF No. 10-3 at 2).  Movants are attaching a list of the Excess ABC Policies to this Motion as **Exhibit A**. For the avoidance of doubt, the Excess ABC Policies include: (1) Policy No. ELU202151-25, issued by XL Specialty Insurance Company. (2) Policy No. DOX30001499505, issued by Endurance American Insurance Company, (3) Policy No. MKLM3MXM000752, issued by Markel American Insurance Company, (4) Policy No. BPRO8120547, issued by Berkley Insurance Company, (5) Policy No. PCX1000134-05, issued by Arch Insurance Company, (6) Policy No. G46865017 008, issued by Federal Insurance Company, (7) Policy No. 83 PE 0423884-25, issued by Twin City Fire Insurance Company, (8) Policy No. PC8EX00256-251, issued by Everest National Insurance Company, and (9) Policy No. ORPRO 13 103159, issued by Old Republic Insurance Company.

4.      The *May 29, 2026 Order* does not specifically reference the Excess ABC Policies. While the individual Insured Persons contend that the *May 29, 2026 Order* permits the Excess ABC Insurers to make payments, including the advancement of Defense Costs, under their Excess ABC Policies, the Official Committee of Unsecured Creditors (the "UCC") and others dispute that reading of the *May 29, 2026 Order*.

5.      This Motion therefore requests clarification regarding whether the *May 29, 2026 Order* permits the Excess ABC Insurers to make payments, including Defense Costs, under their Excess ABC Policies to or on behalf of the Insured Persons.  Alternatively, if the *May 29, 2026 Order* does not apply to the Excess ABC Insurers, Movants request relief from the stay to permit them to make payments, including the advancement of Defense Costs, of the Insured Persons under the Excess ABC Policies.

## JURISDICTION AND VENUE

6.      The United States Bankruptcy Court for the Southern District of Texas has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157, and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

7.      The bases for the relief requested herein are Sections 105(a), 362, and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), Rule 4001-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Cases in the Southern District of Texas.

**BACKGROUND**

**A.  First Brands Bankruptcy and Subsequent Events**

8.      On September 28, 2025, First Brands and its debtor affiliates filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business as a debtor in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      Mayfair is a non-Debtor entity that owns 100% of the equity of Debtor Viceroy Private Capital LLC, directly or indirectly.

10.     Following the filing of the Debtors' petition, demands have been made and lawsuits have been filed against certain of First Brands' former directors and/or officers: (1) *First Brands Group, LLC v. Patrick James, et al.*, No. 25-3803 (Bankr. S.D. Tex.) (the "First Brands Adversary Proceeding"); (2) *First Brands Group, LLC v. Onset Financial, Inc., et al.*, No. 26-3005 (Bankr. S.D. Tex.) (the "Onset Adversary Proceeding"); (3) *United States v. Brumbergs*, 26-cr-025 (S.D.N.Y); (4) *United States v. Stephen Graham*, No. 1:26-cr-00025 (S.D.N.Y.); (5) *United States v. James*, No. 26-cr-029 (S.D.N.Y.) (the "Criminal Action"); and (6) demands by Pro-Reps Sales, LLC and Tri Plus Sales, Inc.

11.     Pending resolution of the Criminal Action, this Court stayed discovery and case deadlines in the First Brands Adversary Proceeding and the Onset Adversary Proceeding.  *See* First Brands Adversary Proceeding ECF Nos. 181 and 195; Onset Adversary Proceeding ECF Nos. 127 and 136.

**B.  The D&O "ABC Policies"**

12.     Berkshire Hathaway Specialty Insurance Company (the "Primary ABC Insurer" or "Berkshire") issued Policy No. 47-EMC-310190-06 (the "Primary ABC Policy") to Mayfair for the period February 2, 2025 to February 2, 2026.  The Primary ABC Policy is attached as sealed

Exhibit A to ECF No. 799 filed in this matter.

13.     The Excess ABC Insurers each issued insurance policies that apply excess of and after exhaustion of the Primary ABC Policy.  The Excess ABC Policies are listed in **Exhibit A**.

14.     The Excess ABC Policies follow form to the Primary ABC Policy, and therefore provide coverage to the Insureds on the same terms and conditions as the Primary ABC Policy, except as otherwise stated in the Excess ABC Policies.

15.     The Insureds who are covered under the terms of the Primary ABC Policy (subject to all of its terms, conditions and exclusions) include Mayfair and its Subsidiaries (including First Brands), and the directors and officers of Mayfair and its Subsidiaries.  *See* ECF No. 799-1, at D&O Part, Section I (Insuring Agreements), D&O Part, Sections III (Definitions of Insured Entity and Insured Person), General Terms and Conditions (Definitions of Parent Company and Subsidiary as debtors in possession).

16.     The Primary ABC Policy includes the following Order of Payments provision:

> The **Insurer** shall be entitled to pay **Loss** as it becomes due and payable under this Policy without consideration of other future payment obligations. In the event **Loss** under **Insuring Agreement I.A** of any **Included** Coverage Part and any other **Loss** become due and payable concurrently, the **Insurer** shall pay, subject to the Limit(s) of Liability, **Loss** covered under any such Insuring Agreement(s) before paying any other **Loss**.

*Id.*, at General Terms and Conditions, Section XI.

17.     The Primary ABC Policy also includes the following Bankruptcy Provision:

> Bankruptcy or insolvency of any **Insured Person** or **Insured Entity** shall not relieve the **Insurer** of any of its obligations under this Policy. In such event the **Insureds** hereby waive and release any automatic stay or injunction in such proceeding which may apply to this Policy or its proceeds and agree not to oppose or object to any efforts by the **Insurer** or any **Insureds** to obtain relief from any such stay or injunction.

*Id.* at Section XXIII.

18. The ABC Policies provide a total of $100 million in limits of liability in the aggregate.

**C. The Prior Motion for Relief from Stay (ECF No. 798)**

19. On November 26, 2025, certain persons who are Insureds under the ABC Policies filed a *Motion for Entry of an Order (I) Authorizing, and, to the Extent Necessary Modifying the Automatic Stay to Allow the Use of Proceeds of Directors and Officers Liability Insurance Policies Issued to Non-Debtor Mayfair Enterprises, LLC for Insureds' Defense Costs or, in the Alternative (II) Confirming that Advancement of Defense Costs and Providing Notice in Accordance with Directors and Officers Liability Insurance Policies Does Not Violate the Automatic Stay* [ECF No. 798] (the "D&O Stay Relief Motion").

20. The D&O Stay Relief Motion requested relief from the automatic stay, to the extent applicable, to permit the ABC Insurers, as well as the Side A Insurers, to make payments, including Defense Costs, of the Insured Persons under their respective policies. With respect to the policies for which relief was sought, the D&O Stay Relief Motion referenced Exhibit C to the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Insurance Policies, Surety Bonds land Letters of Credit and (B) Pay All Obligations With Respect Thereto, and (II) Granting Related Relief* [Docket No. 10]" (the "Emergency Motion").

21. Exhibit C to the Emergency Motion (ECF No. 10) lists 137 insurance policies Debtors described as being "underwritten by approximately 95 insurance carriers . . . provid[ing] coverage for both general and commercial liability, employment practices liability, aviation, business travel accident, automobile liability, cyber, pollution, marine cargo, product recall, environmental, and workers' compensation." ECF No. 10, at ¶7.

22. Included in Exhibit C to the Emergency Motion are "Directors & Officers" policies,

including the Primary ABC Policy, the Excess ABC Policies and the Side A Policies.

23.     The UCC and Katsumi Servicing LLP ("Katsumi") filed objections to the D&O Stay Relief Motion.  *See* ECF Nos. 1145 and 1149.

24.     In its January 7, 2026 *Order Regarding Motion for Entry of an Order (I) Authorizing and, to the Extent Necessary, Modifying the Automatic Stay to Allow Use of Proceeds of Directors and Officers Liability Insurance Policies Issued to Non-Debtor Mayfair Enterprises, LLC for Insureds' Defense Costs or, in the Alternative, (II) Confirming that Advancement of Defense Costs and Providing Notice in Accordance with Directors and Officers Liability Insurance Policies Does Not Violate the Automatic Stay*, (ECF No. 1231), this Court held that the Side A Policies were not property of the Debtors' Estate, thereby permitting payments under the Side A Policies.  However, the January 7 Order denied relief from the stay as to the ABC Policies, based on the Court's findings at the January 7, 2026 hearing, at which the Court determined that the Debtors have an interest in the ABC Policies, and, therefore, that interest is property of the Debtors' Estate under 11 U.S.C. § 541.  *See* **Exhibit B**, at 1.

25.     The January 7, 2026 Order was appealed to the United States District Court for the Southern District of Texas.  *See* **Exhibit C**, *In re James*, No. 4:26-cv-513 (S.D. Tex.)  Notice of Appeal.   The appeal remains pending as of the filing of this Motion.

26.     This Court's *May 29, 2026 Order* (ECF No. 2845) modified the January 7, 2026 Order.  The *May 29, 2026 Order* states:

> 1.     Berkshire Hathaway Specialty Insurance Company (the "Primary Insurer") under Policy No. 47-EMC-310190-06 issued by the Primary Insurer to Mayfair Enterprises, LLC (the "ABC Policy") and all related Side A Insurers[1] are authorized to make payments, including the advancement of Defense Costs (as defined in the ABC Policy) to, or on behalf of, any eligible party in accordance with terms of the ABC Policy, without further notice or relief of this Court.

2.      The automatic stay set forth in section 362 of the Bankruptcy Code, to the extent applicable, is modified to permit the Primary Insurer and Side A Insurers to pay and/or advance Defense Costs consistent with their obligations under the ABC Policy.

**Exhibit D** (emphasis omitted).

27.     Footnote 1 in the *May 29, 2026 Order* states: "Capitalized terms that are not defined have the meaning ascribed to them in the motion at ECF No. 798." *Id.*  ECF No. 798 is the D&O Stay Relief Motion.

28.     The D&O Stay Relief Motion (ECF No. 798) defines "Side A Insurers" collectively as "any other insurance carrier of a directors and officers insurance policy listed on Exhibit C to the [*Emergency Motion*].  ECF No. 798 ¶4.

29.     Based on the definition of "Side A Insurers" in the D&O Stay Relief Motion, the reference to "Side A Insurers" in the *May 29, 2026 Order* appears to include the Excess ABC Insurers.

30.     However, certain parties disagree.  Specifically, the UCC and Katsumi dispute that the *May 29, 2026 Order* permits the Excess ABC Insurers to make payments, including for the advancement of the Insured Persons' Defense Costs.  *See* **Exhibit E**.[3]

---

[3] Counsel for certain Movants conferred via video conference with counsel for the UCC and Katsumi on July 31, 2026 during which counsel explained the relief that would be sought in this Motion. Counsel for both the UCC and Katsumi expressed that their clients would likely oppose any effort to clarify the Court's order such that payments, including Defense Costs, could be made on behalf of the Insured Persons under the Excess ABC Policies; however, counsel for Katsumi and counsel for the UCC indicated they would discuss the requested relief with their clients. Counsel for certain of the Movants sent a follow-up email explaining the requested relief, as well as a later email with drafts of the proposed orders that will be filed with this Motion. Neither counsel for the UCC nor counsel for Katsumi has responded to indicate whether those parties oppose the relief sought through this Motion. Accordingly, Movants are attaching the July 30 status report filed by the UCC in the matter, *In re James*, No. 4:26-cv-513 (S.D. Tex.), which confirms (¶ 5) that the UCC and Katsumi disagree with an interpretation of the *May 29, 2026 Order* that provides for the lifting of the automatic stay with respect to the Excess ABC Policies.

31.     Also, with respect to the *May 29, 2026 Order*, the Debtors' Disclosure Statement states:

> On May 29, 2026, the Bankruptcy Court issued an order (Docket No. 2845) (i) authorizing Berkshire Hathaway Specialty Insurance Company to make payments, including the advancement of Defense Costs (as defined in the ABC Policy) to, or on behalf of any eligible party in accordance with the terms of the ABC Policy, without further relief from the Bankruptcy Court and (ii) modifying the automatic stay to the extent necessary to allow such payments.

ECF No. 2982, at 72 of 304.

32.     The Disclosure Statement creates potential ambiguity as to whether the *May 29, 2026 Order* allows for payments under the Excess ABC Policies, in addition to the Primary ABC Policy, because the Disclosure Statement does not explicitly mention the Excess ABC Policies.

33.     Notwithstanding the description in the Disclosure Statement, counsel for Debtors has indicated that Debtors do not contest that the *May 29, 2026 Order* allows payments under the Excess ABC Policies.  *See* **Exhibit F**.  Moreover, under the Bankruptcy Provision in the Primary ABC Policy, the Debtors are contractually required to not "oppose or object to any efforts by the **Insurer** or any **Insureds** to obtain relief from [the automatic] stay."  ECF No. 799-1, General Terms and Conditions, Section XXIII.

34.     Following the *May 29, 2026 Order*, Berkshire has paid the $10 million limit of liability provided by the Primary ABC Policy.  *See* **Exhibit G**.

35.     The Insured Persons who are defendants in the Criminal Action and Adversary Proceedings and other Insured Persons against whom Claims (as defined in the Primary ABC Policy) have been made have submitted invoices for attorneys' fees and costs to the Excess ABC Insurers, demanding payment under the Excess ABC Policies.

**THE RELIEF REQUESTED**

I.   **THE EXCESS ABC INSURERS SEEK CONFIRMATION THAT THE *MAY 29, 2026 ORDER* AUTHORIZES THEM TO MAKE PAYMENTS, INCLUDING THE ADVANCEMENT OF DEFENSE COSTS, OF INSURED PERSONS UNDER THE EXCESS ABC POLICIES**

36.   The Excess ABC Insurers request confirmation from the Court that the *May 29, 2026 Order* authorizes them to make payments, including the advancement of Defense Costs, under the Excess ABC Policies.

37.   The *May 29, 2026 Order* states that the Primary ABC Insurer and the "Side A Insurers" are authorized to make payments under their Policies.  Because the *May 29, 2026 Order* incorporates the definition of "Side A Insurers" from ECF No. 798, the order appears to allow the Excess ABC Insurers to make payments under their policies.  However, because ABC Policies are generally understood to mean something different than "Side A Policies," the *May 29, 2026 Order* is being interpreted differently by various parties.  The Excess ABC Insurers therefore are uncertain whether the order authorizes payments under the Excess ABC Policies.

38.   For this reason, the Excess ABC Insurers seek clarification of the *May 29, 2026 Order* and confirmation that they are authorized to make payments, including the advancement of Defense Costs, to or on behalf of the Insured Persons.

39.   Accordingly, the Excess ABC Insurers request this Court enter the proposed order (Proposed Order #1), substantially in the form attached hereto, confirming that they are authorized to make payments, including the advancement of Defense Costs, under the Excess ABC Policies.

**II.    ALTERNATIVELY, IF THE *MAY 29, 2026 ORDER* WAS NOT INTENDED TO LIFT THE AUTOMATIC STAY WITH RESPECT TO THE EXCESS ABC POLICIES, MOVANTS REQUEST THAT THE COURT MODIFY THE AUTOMATIC STAY AS TO THE EXCESS ABC POLICIES**

40.    In its January 7, 2026 *Order Regarding Motion for Entry of an Order (I) Authorizing and, to the Extent Necessary, Modifying the Automatic Stay to Allow Use of Proceeds of Directors and Officers Liability Insurance Policies Issued to Non-Debtor Mayfair Enterprises, LLC for Insureds' Defense Costs or, in the Alternative, (II) Confirming that Advancement of Defense Costs and Providing Notice in Accordance with Directors and Officers Liability Insurance Policies Does Not Violate the Automatic Stay*, this Court made certain findings, including that the ABC Policies are "property of the estate under § 541." *See* **Ex. B**, at 1.

41.    The *May 29, 2026 Order* does not overturn this finding.  Instead, it appears that, notwithstanding that the ABC Policies are considered property of the Estate, the Court has granted relief from the automatic stay as to the Primary ABC Policy and the Excess ABC Policies to allow payments, including the advancement of Defense Costs, of Insured Persons.

42.    If the Court did not, in fact, intend to grant relief from or otherwise modify the automatic stay as to the Excess ABC Insurers, Movants request that the Court enter an order authorizing the lifting of, and, to the extent necessary, modifying the automatic stay to allow the Excess ABC Insurers to make payments, including advancement of Defense Costs, on behalf of the Insured Persons for matters that may be covered under the Excess ABC Policies.

43.    Movants do not contest or seek to overturn the Court's finding that the ABC Policies are property of the Debtors' Estate.  Instead, Movants request this Court exercise discretion to modify the automatic stay with respect to the Excess ABC Policies.

44.    Cause exists to modify the automatic stay to permit payment, including the

advancement of Defense Costs, to the Insured Persons under the Excess ABC Policies.

45.     Under section 362 of the Bankruptcy Code, the Court shall grant relief from the automatic stay upon the request of a party in interest for "cause." 11 U.S.C. § 362(d).  The decision whether to grant relief from the automatic stay is left to the discretion of the bankruptcy judge.  *In re Allen*, 122 F. App'x 96, 97 (5th Cir. 2004) (per curiam) (citing *In re Mendoza*, 111 F.3d 1264, 1266 (5th Cir. 1997)); *In re Baytown Nav., Inc.*, No. BR 11-35926, 2012 WL 1123047, at *2 (S.D. Tex. Apr. 3, 2012) (citing *In re Fowler*, 259 B.R. 856, 858 (Bankr. E.D. Tex. 2001)).  The term "cause" used in 11 U.S.C. § 362(d)(1) is not defined, and whether cause exists must be determined on a case-by-case basis.  *See In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014); *see also In re Mirant*, 440 F.3d 238, 253 (5th Cir. 2006) (quoting *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986)) ("this lack of definition affords 'flexibility to the bankruptcy courts.'").  Among other things, the Court should consider the relative harms to interested parties if the stay is not lifted.  *Prince v. CMS Wireless LLC*, No. 4:11-CV-438, 2012 WL 1015001, at *4 (E.D. Tex. Mar. 22, 2012) (quoting *In re Chirillo*, 84 B.R. 120, 123 (Bankr. N.D. Ill. 1988)); *In re Adelphia Commc'ns Corp.*, 285 B.R. 580, 594 (Bankr. S.D.N.Y. 2002), *vacated and remanded on other grounds*, 298 B.R. 49 (S.D.N.Y. 2003).

46.     Because the imposition of the automatic stay to deny an insured director or officer access insurance proceeds to pay defense costs may cause substantial harm to those individuals, courts nationwide have found that sufficient "cause" exists to modify the automatic stay in circumstances such as those present here.  *See, e.g.*, *In re MF Glob. Holdings, Ltd.*, 469 B.R. 177, 192–93 (Bankr. S.D.N.Y. 2012) (modifying the automatic stay to permit insurer to advance defense costs to debtors' current and former directors, officers, and employees because such directors, officers, and employees would suffer "significant[] injur[y]" from paying their defense

costs out-of-pocket); *In re Downey Fin. Corp.*, 428 B.R. 595 (Bankr. D. Del. 2010) (granting relief from stay for cause in order to permit use of policy proceeds for payment of defense costs); *In re Laminate Kingdom, LLC*, 2008 WL 1766637, at *3–4 (Bankr. S.D. Fla. Mar. 13, 2008) (finding that the proceeds were not estate property but noting that, in the alternative, "numerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers – even though the insurance policies also provided direct coverage to debtor"); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 513 (Bankr. D. Del. 2004) (ordering stay relief for payment of insured directors' defense fees even though the D&O policies potentially could be considered property of the estate); *In re Arter & Hadden, L.L.P.*, 335 B.R. 666, 674 (Bankr. N.D. Ohio 2005) (finding "cause to lift the automatic stay because the [insured persons] may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments to fund their defense"); *In re Enron Corp.*, No. 01-16034, 2002 WL 1008240 (Bankr. S.D.N.Y. May 17, 2002) (granting relief from stay, to the extent applicable, for payment of defense costs); *In re CyberMedica, Inc.*, 280 B.R. 12, 18-19 (Bankr. D. Mass. 2002) (granting relief from stay for cause because insureds would suffer irreparable harm if prevented from exercising their rights to defense payments).

47.     Here, Insured Persons are defendants in the First Brands Adversary Proceeding, the Onset Adversary Proceeding, the Criminal Action, and other criminal proceedings and have received other monetary demands outside the litigation context.

48.     As of July 16, 2026, the Insured Persons have submitted more than $43 million in legal fees for advancement under the ABC Policies and the Side A Policies.  Movants understand that Berkshire and the Side A Insurers have paid approximately $21 million for legal fees and more than $20 million remains outstanding.  The Insured Persons who are defendants in the Criminal

13

Proceedings which are not stayed continue to incur significant legal fees.

49.     Movants understand that the Insured Persons believe they will suffer irreparable harm and be deprived of the rights that they expected to have under the ABC Policies if the automatic stay is not modified as to the Excess ABC Policies.  Therefore, while the ABC Policies may constitute property of the Debtors' Estate, there is cause to modify the automatic stay to permit payment, including the advancement of the Defense Costs, to the Insured Persons.

50.     Debtors have not alleged that allowing payment under the Excess ABC Policies will cause harm to the Debtors' Estate.  Nor have Katsumi or the UCC—who as claimants have no right to control the policies or their proceeds—identified to Movants any cognizable harm to them or to the Debtor's Estate if payments are allowed under the Excess ABC Policies.  Moreover, the Order of Payments Provision in the Primary ABC Policy obligates the Excess ABC Insurers to prioritize the payment of the Insured Persons' non-indemnified Loss under Insuring Agreement A over any Loss incurred by the Debtor or its Estate.

51.     Based on the foregoing, Movants request entry of the attached proposed order (Proposed Order #2) granting relief and/or modifying the automatic stay, to the extent applicable, to allow the Excess ABC Insurers to make payments, including advancement of Defense Costs, on behalf of the Insured Persons, under the Excess ABC Policies.

## RESERVATION OF RIGHTS

52.     The Movants reserve the right to supplement or amend this Motion at any time and for any reason and to assert any additional arguments or seek any additional relief at or prior to any hearing(s) on the Motion.   In addition, each Movant expressly reserves the right to be heard on the Motion.   Nothing contained in the Motion shall be deemed an admission by any Movant that such Movant shares a common interest with any other Movant.

14

## NOTICE

53.     Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and 4001 and any other party entitled to notice pursuant to Bankruptcy Local Rule 4001-1(a)(4).

## PRAYER

**WHEREFORE**, the Movants respectfully request that the Court enter either attached Proposed Order #1 or attached Proposed Order #2 or, in the alternative, an order granting the relief requested in this Motion and such other and further relief as may be just and proper.

Respectfully submitted this 14th day of August, 2026.

By: s/ Justin S. Levy
**WERNER AHARI MANGEL LLP**
Justin S. Levy
Tex. Bar No. 24078852
S.D. Tex. No. 1673395
4514 Cole Ave, Suite 600
Dallas, TX 75205
Telephone: 202-599-1131
Email: jlevy@wam.law

*Attorney for XL Specialty Insurance Company and Federal Insurance Company*

By: s/ Christopher Brown (with consent)
**KAUFMAN DOLOWICH**
Christopher Brown
Tex. Bar No. 24145884
S.D. Tex. No. 3904100
14643 Dallas Parkway, Suite 550
Dallas, TX 75254
Telephone: 407-904-0919
Email: cbrown@kaufmandolowich.com

*Attorney for Endurance American Insurance Company*

15

By: s/ Cary Joy Economou (with consent)
**WERNER AHARI MANGEL LLP**
Cary Joy Economou
Tex. Bar No. 24082201
S.D. Tex. No. 1125319
4514 Cole Ave, Suite 600
Dallas, TX 75205
Telephone: 202-599-1069
Email: ceconomou@wam.law

*Attorney for Markel American Insurance Company*

By: s/ Simon R. Mayer (with consent)
**TROUTMAN PEPPER LOCKE**
Simon R. Mayer
Tex. Bar Number 24060243
Philip G. Eisenberg
Tex. Bar Number 24033923
600 Travis Street, Suite 2800
Houston, TX 77002
Telephone: 713-226-1200
Email: simon.mayer@troutman.com
Email: peisenberg@troutman.com

*Attorneys for Berkley Insurance Company*

By: s/ Simon R. Mayer (with consent)
**TROUTMAN PEPPER LOCKE**
Simon R. Mayer
Tex. Bar Number 24060243
Philip G. Eisenberg
Tex. Bar Number 24033923
Jill A. Schaar
Tex. Bar Number 17719870
600 Travis Street, Suite 2800
Houston, TX 77002
Telephone: 713-226-1200
Email: simon.mayer@troutman.com
Email: peisenberg@troutman.com
Email: jill.schaar@troutman.com

*Attorneys for Arch Insurance Company*

16

By: s/Sara E. Nau (with consent)
**PHELPS DUNBAR LLP**
Sara E. Nau
Tex. Bar No. 24083551
S.D. Tex. No. 3030010
1001 Fannin Street, Suite 2200
Houston, TX 77002
Telephone: 713-877-5503
Email: sara.nau@phelps.com

*Attorney for Twin City Fire Insurance Company*

By: s/Tony L. Draper (with consent)
**WALKER WILCOX MATOUSEK LLP**
Tony L. Draper
Tex. Bar No. 00798156
S.D. Tex. No. 24352
1001 McKinney Street, Suite 2000
Houston, TX 77002
Telephone: 713-654-8001
Email: tdraper@walkerwilcox.com

*Attorney for Everest Insurance Company and Old Republic Insurance Company*

17

**CERTIFICATE OF CONFERENCE**

I hereby certify that attorneys from my firm conferred with counsel for the Debtors starting on July 6, 2026 and with the Official Committee of Unsecured Creditors and Katsumi Servicing LLP on July 31, 2026 regarding the requested relief. Counsel for the Debtors has consented to the requested relief. Counsel for the Official Committee of Unsecured Creditors and Katsumi Servicing LLP have not consented to the requested relief.

s/ Justin S. Levy

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2026, I served a true and correct copy of the above and foregoing instrument via the Court's CM/EDF electronic system to all parties consenting to service through the same, and on all parties required by Local Rule 4001-1(a)(4).

s/ Justin S. Levy