**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**STIPULATION AND AGREED ORDER**
**REGARDING PROCEEDS SUBJECT TO THE WIND DOWN ORDER**
**Related Docket No. 2454**

This stipulation and agreed order ("Stipulation and Agreed Order") is entered into by (i) First Brands Group, LLC and its affiliated debtors, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), (ii) the ad hoc group of holders of the Debtors' DIP Loans, First Lien Loans, and/or Second Lien Term Loans (each as defined in the Final DIP Order[2]) (the "Ad Hoc Group"), and (iii) Onset Financial, Inc. and Silver Point Capital, L.P. and their collective affiliates (collectively, "Onset," and together with the Debtors and the Ad Hoc Group, the "Parties"). The Parties hereby stipulate and agree as follows:

## RECITALS

WHEREAS, on April 16, 2026, the Bankruptcy Court entered the *Order Pursuant to Section 363 of the Bankruptcy Code (I) Approving and Authorizing the Debtors to Enter into and*

---

1 A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

2 Capitalized terms used but not defined herein shall have the meaning ascribed to them in the (i) Wind Down Order, (ii) the M&E Agreement, (iii) *the Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* (Docket No. 608) (the "Final DIP Order"), or (iv) *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3019) (as amended, supplemented or otherwise modified from time to time) (the "Plan"), as applicable.

*Perform Under the Consulting Agreement; (II) Authorizing the Sale of the Wind Down Assets Free and Clear of All Liens, Claims, and Encumbrances; and (III) Granting Related Relief* (Docket No. 2454) (the "Wind Down Order");

WHEREAS, the Wind Down Order approved the Debtors' decision to enter into the Consulting Agreement, and authorized the Debtors and the Consultant to sell, abandon, or monetize the Wind Down Assets as provided therein;

WHEREAS, paragraph 38 of the Wind Down Order provides that the Net Proceeds or Gross Proceeds, as applicable, of the sale of the Wind Down Assets, subject to any Asserted SPV Interests and any Asserted DIP Collateral Interests, shall be deposited into the SPV-DIP Wind Down Account and may not be distributed without further order from the Bankruptcy Court;

WHEREAS, on May 27, 2026, Hilco Merchant Resources, LLC ("Hilco") and the Debtors entered into the Machinery and Equipment Marketing Agreement (the "M&E Agreement"), engaging Hilco as the exclusive marketing and sales agent with respect to machinery and equipment located at the Locations (as defined in the M&E Agreement and including furniture and fixtures) (the "M&E"). The M&E Agreement provides that Hilco will deposit all collected Gross Proceeds into a separate account maintained by Hilco and remit such proceeds to the Debtors by transferring them to the appropriate Wind Down Account, as applicable, in accordance with the terms of the Wind Down Order, less any amounts due to Hilco under the M&E Agreement, within 30 days after the sale and removal of the applicable M&E; and

WHEREAS, the Debtors, the DIP Secured Parties (as defined in the Final DIP Order), and Onset have each asserted competing claims with respect to the M&E, and, without admitting the validity of any such claims in relation to the M&E, and the Parties have entered into this Stipulation and Agreed Order as outlined herein.

**NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED BETWEEN THE PARTIES AND ORDERED THAT:**

1. Following the liquidation of the M&E at the Locations pursuant to the M&E Agreement, Hilco will deposit all collected Gross Proceeds from the sale of M&E into a segregated account maintained by Hilco. On the first business day of each month, after deducting any amounts which are entitled to be deducted pursuant to the Wind Down Order, Hilco shall distribute such proceeds from the sale of M&E evenly between (i) an account designated by the Ad Hoc Group (for the benefit of the DIP Secured Parties) and (ii) an account designated by Onset. Notwithstanding the foregoing, with respect to the $5,925,200 gross proceeds from the sale pursuant to that certain Assets Purchase Agreement, dated as of June 12, 2026, by and among the Debtors and PGI Northstar LLC, such proceeds shall be disbursed in accordance with the allocations set forth on **Exhibit A**.

2. Onset and the Ad Hoc Group will engage in good faith discussions to agree on which Locations are projected to have a positive net present value (the "Approved Sites") and a corresponding budget for consummating sales of M&E and real property at such Approved Sites. Upon such agreement, Onset and the Ad Hoc Group shall jointly deliver in writing (email by applicable advisors being sufficient) an instruction to Hilco to proceed with the liquidation process at the Approved Sites. For all Approved Sites, the Ad Hoc Group and Onset agree that:

(a) each will bear one-half of the actual costs of the following, which shall have accrued starting on June 1, 2026 through the date that Hilco has concluded all sales of M&E at such Approved Site, including: (i) site-related expenses (*i.e.*, rent and utilities), (ii) taxes (including sales and personal property taxes), and (iii) other amounts entitled to be deducted from the Gross

Proceeds derived from the sale of M&E pursuant to the Wind Down Order, (collectively, the "Allocated Expenses");

(b) the Ad Hoc Group shall be deemed to consent to any sale that results in at least 80% of real property value as appraised by Hilco. Onset shall have the unilateral right to re-allocate the proceeds allocable to M&E to real property to ensure that the DIP Secured Parties receive 80% of real property value as appraised by Hilco so that the DIP Secured Parties shall be deemed to consent to such sale; and

(c) Onset shall be deemed to consent to any sale that results in at least 80% of net orderly liquidation value of M&E at the high auction case as appraised by Hilco. The Ad Hoc Group shall have the unilateral right to re-allocate the proceeds allocable to real property to M&E to ensure that Onset and the DIP Secured Parties receive 80% of net orderly liquidation value of M&E so that Onset shall be deemed to consent to such sale.

3. For any Locations where either the Ad Hoc Group or Onset do not wish to designate as an Approved Site, the other party may direct Hilco to proceed with the sale and liquidation process at such Location; *provided that* the party directing Hilco to proceed shall be responsible for paying all Allocated Expenses and shall recover all Gross Proceeds in connection with such Location.

4. Except as expressly modified pursuant to this Stipulation and Agreed Order, the Final DIP Order, the Wind Down Order, and M&E Agreement shall otherwise remain in full force and effect.

5. Notwithstanding anything contained herein, the proceeds of the Property described in footnote 5 of the Wind Down Order shall continue to be held in the SPV-DIP Wind Down Account, with all interests of all parties in such Property attaching to the proceeds thereof, and such proceeds shall not be subject to the distribution provisions described herein. Planters Bank is not a party to this Stipulation, and its provisions do not apply to Planters Bank and may not be used against Planters Bank in any way. Planters Bank fully reserves all claims and rights against Onset, including without limitation claims that the proceeds placed into the SPV-DIP Wind Down Account were insufficient and/or not properly allocated and that excess proceeds were disbursed to Onset.

6. In connection with any actions taken in connection herewith on behalf of the Parties in connection with this Stipulation and Agreed Order, the M&E Agreement, or otherwise, or the consent of the Parties thereto, nothing shall: (a) constitute, or be deemed to constitute, an admission, determination, or finding as to the validity, enforceability, priority, perfection, amount, or extent of any ownership interest, claim, lien, security interest, encumbrance, or other interest; (b) constitute, or be deemed to constitute, a waiver, release, compromise, settlement, relinquishment, determination, or finding with respect to any ownership interest, rights, claims, defenses, causes of action, or remedies whether arising under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise, (c) have any preclusive effect (including res judicata, collateral estoppel, judicial estoppel, law of the case, or otherwise) or be used or admitted as evidence in any proceeding, contested matter, adversary proceeding, or other litigation or negotiation (other than in connection with the enforcement of this Stipulation and Agreed Order) for any purpose, including, without limitation, as evidence of liability, wrongdoing, or the validity, priority, or extent of any claim or lien, or to impute any adverse inference; or (d) affect, limit,

expand, enhance, prejudice, or modify in any way any other rights, claims, or defenses of any party in interest (including the Parties or any other Debtor affiliate), including in any pending or future lawsuit, Successor Case (as defined in the Final DIP Order) (including that may be brought by a reorganized debtor or by any estate representative appointed under a confirmed plan), including any litigation trust or litigation trustee acting as successor-in interest to the bankruptcy estate, or adversary proceedings including, without limitation, in the adversary proceeding captioned Adv. Pro. No. 26-03005 (CML), *provided*, however, that this Stipulation and Agreed Order shall constitute a final settlement and release of all claim, lien, ownership, and priority disputes between and among the Parties solely and exclusively in relation to the M&E and the proceeds thereof.

7. This Stipulation and Agreed Order shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns, including, without limitation, any chapter 7 trustee, chapter 11 trustee, liquidating trust, the DIP Collateral Trust, Wind Down Administrator, litigation trust, plan administrator, or any other fiduciary, entity, or estate representative appointed or formed in connection with the Debtors' bankruptcy estates or any Successor Case, and shall survive confirmation of any plan of reorganization or liquidation, conversion of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, or dismissal of the Debtors' chapter 11 cases.

8. This Stipulation and Agreed Order shall constitute the entire agreement and understanding of the Parties relating to the subject matter hereof.

9. This Stipulation and Agreed Order shall not be modified, altered, amended, or vacated without the written consent of all Parties hereto.

10. Notwithstanding the provisions of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, this Stipulation and Agreed Order shall be immediately effective and enforceable upon its entry.

11. The Bankruptcy Court shall retain exclusive jurisdiction over all matters arising from the implementation, interpretation, or enforcement of this Stipulation and Agreed Order.

STIPULATED AND AGREED TO BY:

Dated: August 17, 2026

*/s/ Deborah M. Perry*

MUNSCH HARDT KOPF & HARR, PC
Deborah M. Perry
Texas Bar No. 24002755
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
E-mail: dperry@munsch.com

-and-

MORRISON & FOERSTER LLP
James Newton (admitted pro hac vice)
Ben Butterfield (admitted pro hac vice)
Bryan Kotliar (admitted pro hac vice)
250 West 55th Street
New York, NY 10019
Email: jnewton@mofo.com
bbutterfield@mofo.com
bkotliar@mofo.com

-and-

MORRISON & FOERSTER LLP
Anthony S. Fiotto (admitted pro hac vice)
Julia Koch (admitted pro hac vice)
200 Clarendon Street, Floor 21
Boston, MA 02116
Email: afiotto@mofo.com
jkoch@mofo.com

-and-

MORRISON & FOERSTER LLP
Brian R. Michael (admitted pro hac vice)
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Email: bmichael@mofo.com

-and-

MILBANK LLP
Dennis Dunne, Esq. (admitted pro hac vice)
Lisa Laukitis, Esq. (admitted pro hac vice)
Jason Kestecher, Esq. (admitted pro hac vice)
55 Hudson Yards
New York, NY 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
llaukitis@milbank.com
jkestecher@milbank.com

-and-

MILBANK LLP
Andrew Leblanc, Esq. (admitted pro hac vice)
Erin Dexter, Esq. (admitted pro hac vice)
1101 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586
Email: aleblanc@milbank.com
edexter@milbank.com

*Attorneys for Onset Financial, Inc.*

*/s/ Clifford W. Carlson*

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: gabriel.morgan@weil.com
clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: matt.barr@weil.com
sunny.singh@weil.com
andriana.georgallas@weil.com
kevin.bostel@weil.com
jason.george@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

*/s/ Tom A. Howley*
HOWLEY LAW PLLC
Tom A. Howley (Texas Bar No. 24010115)
Eric Terry (Texas Bar No. 00794729)
700 Louisiana Street, Suite 4220
Houston, TX 77002
Telephone: (713) 333-9125
Email: tom@howley-law.com
eric@howley-law.com

-and-

GIBSON, DUNN & CRUTCHER LLP
Scott J. Greenberg (admitted pro hac vice)
Stephen D. Silverman (admitted pro hac vice)
Jason Z. Goldstein (admitted pro hac vice)
Christina M. Brown (admitted pro hac vice)
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Email: sgreenberg@gibsondunn.com
ssilverman@gibsondunn.com
jgoldstein@gibsondunn.com
christina.brown@gibsondunn.com

-and-

AnnElyse Scarlett Gains (admitted pro hac vice)
1700M Street N.W.
Washington, D.C. 20036-3504
Telephone: (202) 955-8500
Email: agains@gibsondunn.com

*Counsel for the Ad Hoc Group*

**IT IS SO ORDERED:**

Dated: ____________________, 2026

________________________________
Christopher Lopez
United States Bankruptcy Judge

# Exhibit A

| Planters Location Exposure | PGI2 - Planters Claims | | | | PGI2 - Planters Net Proceeds | | | |
|---|---|---|---|---|---|---|---|---|
| | Planters Claims | Onset Claims | Planters Share of Claims | Planters Share of DIP & Onset Claims [A] | PGI Gross Proceeds [B] | Hilco Direct Loc. Liquidation Exp. [D] | PGI Net Proceeds [E] = [B]x[C]-[D] | Planters Net Proceeds [A]x[E] |
| 200 South 4th Street, Albion, IL 62806 | $1,087,006 | $46,380,302 | 2.3% | 2.3% | $4,501,500 | $- | $3,751,250 | $87,917 |
| 851 Jackson Street, Greenville, OH 45331 | 518,041 | 11,907,219 | 4.4% | 4.4% | 750,000 | 125,000 | 500,000 | 21,753 |
| 301 Industrial Drive, Albion, IL 62806 | 131,891 | 4,941,811 | 2.7% | 2.7% | 250,000 | - | 208,333 | 5,560 |
| **Total Planters Related Locations** | **$1,736,938** | **$63,229,332** | **2.7%** | **2.7%** | **$5,501,500** | **$125,000** | **$4,459,584** | **$115,231** |

| PGI2 - M&E Net Proceeds | Amount |
|---|---|
| Gross M&E Proceeds | $5,925,200 |
| (-) Hilco M&E Sale Fee | (987,533) |
| **Proceeds Net of Hilco Sale Fee** | **$4,937,667** |
| *Proceeds Net of Sale Fee as % of Gross* ***[C]*** | *83.3%* |
| (-) Hilco M&E Direct Liquidation Expenses | (1,277,500) |
| **Proceeds Net of Hilco Fees & Expenses** | **$3,660,167** |

| Net M&E Proceeds to Parties | Amount |
|---|---|
| Hilco M&E Direct Liquidation Expenses | $1,277,500 |
| Hilco M&E Sale Fee | 987,533 |
| DIP Lenders Proceeds | 1,772,468 |
| Onset Proceeds | 1,772,468 |
| Planters Escrow | 115,231 |
| **Total PGI2 M&E Proceeds** | **$5,925,200** |