**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| FIRST BRANDS GROUP, *et al.*, | ) | Case No. 25-90399 (CML) |
| Debtors.[1] | ) | (Jointly Administered) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION FOR ENTRY OF AN ORDER (I) CLARIFYING THAT THE MAY 29, 2026 ORDER (ECF NO. 2845) MODIFIES THE AUTOMATIC STAY TO AUTHORIZE PAYMENTS BY THE EXCESS ABC INSURERS OR ALTERNATIVELY (II) AUTHORIZING, AND, TO THE EXTENT NECESSARY, MODIFYING THE AUTOMATIC STAY TO ALLOW THE EXCESS ABC INSURERS TO MAKE PAYMENTS, INCLUDING THE ADVANCEMENT OF DEFENSE COSTS, OF INSURED PERSONS**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of First Brands Group, LLC and its affiliated debtors (collectively, the "Debtors") respectfully submits this objection (the "Objection") to the *Motion for Entry of an Order (I) Clarifying that the May 29, 2026 Order (ECF No. 2845) Modifies the Automatic Stay to Authorize Payments by the Excess ABC Insurers or Alternatively (II) Authorizing, and, to the Extent Necessary, Modifying the Automatic Stay to Allow the Excess ABC Insurers to Make Payments, Including the Advancement of Defense Costs, of Insured Persons* [Dkt. No. 3669] (the "Motion") by movants XL Specialty Insurance Company, Endurance American Insurance Company, Markel American Insurance Company, Berkley Insurance Company, Arch Insurance Company, Federal Insurance Company, Twin City Fire Insurance Company, Everest National

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

Insurance Company, and Old Republic Insurance Company (collectively, "Movants"). In support of this Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. In a January 7, 2026, order [Dkt. No. 1231] (the "Lift Stay Denial Order"), this Court addressed a motion by Patrick James, Edward James, and other former officers of the Debtors for relief from the automatic stay to access proceeds from two insurance towers—totaling $100 million of coverage each. Dkt. No. 798 (the "D&O Motion"); Jan. 7, 2026, D&O Mtn. Hr'g Tr. ("Jan. 7 Tr."), at Jan. 7 Tr. 207:1-208:19. One tower is Side A only (the "Side A Tower") and the other is Side A, B, and C (the "Side ABC Tower"). The Court ruled that the insured persons could access the Side A Tower but not the Side ABC Tower because the estate has an interest in the Side ABC Tower. Edward James and certain Side A Insurers appealed, thereby removing this Court's jurisdiction over the issue. That appeal remains pending.

2. The Movants—each a Side ABC insurer—now argue that this Court reversed its own Lift Stay Denial Order through a non-explicit footnote in a subsequent, May 29, 2026, Order [Dkt. No. 2845] (the "May 29 Order"). Specifically, they argue that the footnote modified the stay, to the extent applicable, "to permit the Primary Insurer and Side A Insurers to pay and/or advance Defense Costs consistent with their obligations under the ABC Policy" and that ruling therefore means that the insured persons could access **the Side ABC Tower**. They argue for their construction based solely on a footnote that references a motion filed in November 2025, and acknowledge that no such construction is mentioned, much less offered, in the May 29 Order itself, and further ignore the fact that this Court would not have had jurisdiction to make any such ruling given the pending appeals. Movants' argument is absurd on its face and untenable as a matter of law. The Motion should be denied.

3. Moreover, the Motion should be denied for two additional reasons. First, insured persons continue to receive insurance coverage under the Side A Tower, pursuant to the Lift Stay Denial Order. And second, the Court will deliver its ruling on confirmation of the Plan[2] and final approval of the Disclosure Statement[3] in these cases on August 24 [Dkt. No. 3685] ("Confirmation Ruling"), meaning that either a litigation trustee or Chapter 7 trustee will soon succeed the Committee and thus have a vested interest in this issue. That successor should be given the opportunity to be heard before any *status quo* is changed.

## BACKGROUND

4. In November 2025, several of Debtors' directors and officers sought a modification of the automatic stay to use proceeds of directors' and officers' liability insurance policies issued to non-Debtor Mayfair Enterprises, LLC for defense costs [Dkt. Nos. 798, 866, 880, 1064, 1088, 1102, 1113, 1144].

5. At a hearing on January 7, 2026, the Court ruled on the D&O Motion that (1) the estate has no interest in the Side A Tower (*see* Jan. 7 Tr. 210:16-211:4); (2) the estate has an interest in the Side ABC Tower[4] (*see id*. 211:9-25); and (3) there was no cause to lift the stay as to the Side ABC Tower and the insured persons could first seek coverage under the Side A Tower before the Side ABC Tower (*see id*. 214:19-25; 216: 4-8;[5] *see also id*. 213:15-21; 213:25-214:3; 214:9-12).

---

[2] The "Plan" refers to the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Dkt. No. 3019].

[3] The "Disclosure Statement" refers to the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC, and Certain Affiliated Debtors* [Dkt. No. 2982].

[4] In addition to the Side ABC primary layer issued by Berkshire Hathaway, the Side ABC Tower consists of the following policies: (1) Policy No. ELU202151-25, issued by XL Specialty Insurance Company; (2) Policy No. DOX30001499505, issued by Endurance American Insurance Company; (3) Policy No. MKLM3MXM000752, issued by Markel American Insurance Company; (4) Policy No. BPRO8120547, issued by Berkley Insurance Company; (5) Policy No. PCX1000134-05, issued by Arch Insurance Company; (6) Policy No. G46865017 008, issued by Federal Insurance Company; (7) Policy No. 83 PE 0423884-25, issued by Twin City Fire Insurance Company; (8) Policy No. PC8EX00256-251, issued by Everest National Insurance Company; and (9) Policy No. ORPRO 13 103159, issued by Old Republic Insurance Company.

[5] Jan. 7 Tr. 214: 19-25 ("I don't think there needs to be any restrictions on the ability to – you know, with the AIG, because I don't think AIG is property of the estate as a matter of law. I think parties get to use it, and if there's

6. After the January 7 hearing, the Court memorialized its ruling in the Lift Stay Denial Order ordering that, for the reasons stated on the record:

> Debtors have an interest in the proceeds of the ABC Policy,[6] and that interest is property of the estate under [11 U.S.C.] § 541. The Court denies the request to lift the automatic stay for cause under § 362(d) without prejudice; and it is further ORDERED that this Order is effective immediately and any applicable stay is waived.

7. Both Edward James and Appealing Side A Insurers[7] noticed appeals to the Lift Stay Denial Order [Dkt. Nos. 1647, 1865], which were later consolidated under the docket *James v. Official Committee of Unsecured Creditors of First Brands Group, LLC, et al.*, S.D. Tex. 4:26-cv-513 (the "Appeals"). The Appeals challenged the Court's conclusion "that Debtors have an interest in the proceeds of the ABC Policy, and that interest is property of the estate under § 541." Dkt. Nos. 1647 at 2, 1865 at 2.

8. On May 29, 2026, the Court issued the May 29 Order, which, in substantive part, states:

> Berkshire Hathaway Specialty Insurance Company (the "**Primary Insurer**") under Policy No. 47-EMC-310190-06 issued by the Primary Insurer to Mayfair Enterprises, LLC (the "**ABC Policy**") and all related Side A Insurers[8] are authorized to make payments, including the advancement of Defense Costs (as defined in the ABC Policy) to, or on behalf of, any eligible party in accordance with terms of the ABC Policy, without further notice or relief of this Court.
>
> The automatic stay set forth in section 362 of the Bankruptcy Code, to the extent applicable, is modified to permit the Primary Insurer and Side A Insurers to pay

any issues – and there can be. That could arise in connection with the AIG tower. *I think you've got to go there first. And then we can have another hearing*.") (statement of Lopez, J.) (emphasis added). Jan. 7 Tr. 216:4-8 ("I was going to – even without it, I still think what *I've set up is a stopping point where one can ask the question*. Right? Like *what's going on with the AIG policy, has it been depleted one way or the other*. And *then* we can see where we are.") (statement of Lopez, J.) (emphasis added).

6 "Capitalized terms used by not otherwise defined herein shall have the meanings ascribed to them in the D&O Motion at ECF No. 798." (Footnote in original).

7 The "Appealing Side A Insurers" refers to the insurers that appealed, which are QBE Insurance Corporation, Ironshore Indemnity, Inc., Fair American Insurance and Reinsurance Company, Allianz Global Risks US Insurance Company, Westfield Select Insurance Company, AXIS Insurance Company, and Zurich American Insurance Company. The lead Side A insurance company, American International Group, Inc., did not join the appeal, nor did Beazley Insurance Company, Inc. or Great American Insurance Group.

8 "Capitalized terms that are not defined have the meaning ascribed to them in the motion at ECF No. 798." (Footnote in original).

and/or advance Defense Costs consistent with their obligations under the ABC Policy.

9. Movants now request that the Court clarify and interpret its May 29 Order to reverse and/or moot the Lift Stay Denial Order, while such order is on appeal.

10. Given the overall timing, the Committee requested that the Movants adjourn the Motion until after the Court issues its Confirmation Ruling. Movants were not willing to agree to do so.

## ARGUMENT

### I. THE MOVANTS REQUEST RELIEF OUTSIDE OF THE COURT'S JURISDICTION

11. Movants seek relief that would either "clarify" that the May 29 Order modified the Lift Stay Denial Order while it was on appeal or, alternatively, have this Court now modify such order while it is on appeal. However, the Appeals divested this Court of jurisdiction over whether the estate has an interest in the Side ABC Tower and whether there is cause to lift the stay concerning the insured persons seeking payment of coverage under the Side ABC Tower. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *accord United States v. Hernandez-Cuellar*, 793 F. App'x. 311, 311 (5th Cir. 2020); *United States v. Pena*, 713 F. App'x 271, 272 (5th Cir. 2017). While bankruptcy cases are afforded a greater degree of procedural flexibility (*see Bartee v. Tara Colony Homeowners Assoc.* (*In re Bartee)*, 212 F.3d 277, 282-83 (5th Cir. 2000) (describing the court's "flexible" approach to finality in bankruptcy proceedings)), that flexibility, as this Court recently acknowledged,[9] will not cure a jurisdictional defect (*In re*

---

[9] On May 8, 2026, the Court held a status conference wherein the Court acknowledged that it would not disturb items on appeal. *See* May 8, 2026, Status Conf. Tr. ("May 8 Tr.") at May 8 Tr. 14:12-15:13. ("[T]he order that I signed regarding the deadlines was appealed. Which means I'm not going to discuss it. . . . Parties can tell me otherwise, but I'm not sure how I can proceed and take up anything until we know the resolution of that appeal . . . . [T]he last thing I want to do is get into the substance of that matter. That's before Judge Rosenthal and that'll

*Transtexas Gas Corp.*, 303 F.3d 571, 580 (5th Cir. 2002) (finding that the bankruptcy court had no jurisdiction to enter a supplemental order, the portions of which were indisputably the same portions challenged in a preceding notice of appeal)).

12. Movants specifically seek relief as to the issues of the Lift Stay Denial Order to which divestiture applies. Courts in the Fifth Circuit have adopted a "functional test" to determine the scope of divestiture. Under this test, not only are the actual issues on appeal divested from the lower court, but "'once an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process.'" *In re Scopac*, 624 F.3d 274, 280 (5th Cir. 2010) (quoting *In re Whispering Pines Estates, Inc.*, 369 B.R. 752, 759 (1st Cir. BAP 2007)); *accord In re Acis Capital Management, L.P.*, 604 B.R. 484, 521-22 (N.D. Tex. 2019). *See also, In re Heritage Real Estate Investment, Inc.*, No. 14-03603-NPO, 2021 WL 1925624, at *6 (S.D. Miss. May 12, 2021) (quoting *In re Scopac*, 624 F.3d 274, 280 (5th Cir. 2010)) (finding that the bankruptcy court was divested of jurisdiction under the Fifth Circuit's 'functional test'). The scope of divestiture is therefore a function of exactly how disruptive a subsequent order might be to the subject of an appeal and whether said subsequent order would modify, or be inconsistent with the preceding order on appeal. *In re Acis*, 604 B.R. at 522 ("Attempting to modify an order pending on appeal, or issuing a subsequent order that is inconsistent with the order being appealed, circumvents the appellate process") (collecting cases); *In re BNP Petroleum Corp.*, No. 2:11-CV-258, 2012 WL 7620694, at *3 (S.D. Tex. Feb. 27, 2012).

---

be the last I say on that.") (statement of Lopez, J., concerning a separate appeal). The Court further acknowledged that the Appeals were challenging the Lift Stay Denial Order, particularly with concerns to the proceeds of the ABC policies as property of the estate. May 8 Tr. 57:9-15 ("I talked about streamlining some of the issues. I don't known the answer to the – And again, this issue is on appeal too, So I got to kind of talk about it carefully, what I would call the insurance proceeds lift stay property of the estate issue. I couldn't tell – I know the issue of property of the estate is on appeal.") (statement of Lopez, J.).

While bankruptcy courts may not issue orders inconsistent with an order on appeal, the Fifth Circuit recognizes that bankruptcy courts retain a continuing jurisdiction to conduct proceedings intended to interpret or enforce their judgment until superseded or stayed. *United States v. Revie*, 834 F.2d 1198, 1205 (5th Cir. 1987), *cert. denied*, 487 U.S. 1205 (1988); *Alberti v. Klevenhagen*, 46 F.3d 1347, 1358 (5th Cir. 1995); *In re Daisytek, Inc.*, Civ. A. 3:04-cv-0754-G, 2004 WL 1698284, at *3 (N.D. Tex. July 29, 2004) (concluding that the bankruptcy court lacked jurisdiction to issue an order disrupting the subject of a preexisting appeal noting that the subsequent order "purported to resolve a central aspect of that appeal. . . . Accordingly, the bankruptcy court lacked jurisdiction[.]"). As such, the divestiture of the Court's jurisdiction includes, at minimum, the core subject of the Appeals and any issues that, if determined by the lower court while the Appeals are pending, would impact or circumvent the Appeals.

13. Movants expressly seek a form of relief which would modify the exact issues of the Lift Stay Denial Order that are on appeal. The Appeals seek reversal of the rulings in the Lift Stay Denial Order that the automatic stay applies to, and cause was not shown to lift the stay as to, the Side ABC Tower. In other words, the Appeals seek an order permitting the Side ABC policies to pay coverage to the insured persons. Movants seek the same determination here. Whether framed as an interpretation of the May 29 Order to alter the Lift Stay Denial Order or as a challenge of such order, the effect is to decide the actual issues on appeal and circumvent the appellate process.

14. The Lift Stay Denial Order held that (1) Debtors possessed an interest in the Side ABC Tower as property of the estate, and (2) that the request to lift the automatic stay as to the Side ABC Tower was denied, as no cause was shown. Lift Stay Denial Order at 2. The Lift Stay Denial Order prevented the advancement of Defense Costs, as defined in the policies in the Side ABC Tower, to insured persons, because the Side A Tower provided $100 million of limits for the same

purpose. This ruling—centered upon this Court's determination that the Debtors' interest in the Side ABC Tower was property of the estate—is exactly the narrow element both Appeals challenged. *See* Dkt. Nos. 1647 at 2, 1865 at 2. Nevertheless, Movants argue that the May 29 Order permits the advancement of coverage payments for Defense Costs that would be for the same coverage payments that the Court previously concluded were property of the estate.[10] Movants seek an order now that would fully modify the few central determinations of the Lift Stay Denial Order. Because the Lift Stay Denial Order is on appeal, the same determinations currently being challenged in the Appeals of that order are the determinations that Movants ask this Court to clarify, which would require a ruling on the exact issues not currently before this court, and improperly circumvent the Appeals.[11]

15. Notably, the Side A Tower has not been exhausted. By Movants' own admission, less than one-quarter of the Side A Tower's $100 million in coverage has been advanced for legal fees, and only $20 million in potentially covered legal fees remain pending.[12] This means that at minimum, the Side A Tower retains at least $55 million in unclaimed coverage.

---

[10] To the extent that Movants argue that the May 29 Order is, itself, a modification of the Lift Stay Denial Order for good cause, such argument is unsupported by the record. The Court issued the May 29 Order *sua sponte*, absent a motion by Movants or any other party. As such, no party has presented to the Court any evidence of changed circumstances or other good cause, there has been no briefing or hearing on changed circumstances or other good cause, and the May 29 Order does not mention, address, or even contemplate a change in circumstances or other good cause.

[11] Movants may respond that one bankruptcy court has permitted payment of coverage on insurance policies determined to be property of the estate while an appeal on that determination was pending, those payments were because that bankruptcy court permitted payments of coverage, which is the opposite of the facts before this Court on this Motion. *See In re Bencker*, 122 B.R. 506, 509 (Bankr. W.D. Mich. 1990). That non-binding decision permitted payments of an insurance policy determined to be the property of the debtor's estate, despite the fact that the IRS had previously taken appeal of that property determination. *Bencker* placed particular emphasis on the fact that the debtor requested the distribution of the insurance proceeds and that said distribution was a function of implementing and enforcing its prior ruling, thus within the bankruptcy court's retained jurisdiction, and concluding that said distribution would not "jeopardize, confuse or compromise the IRS' appeal." *Id.* at 509-10. Here, the facts are entirely different as to the Movants' Side ABC Tower.

[12] Motion at ¶ 48.

16. Under a strained interpretation of the May 29 Order, Movants argue that where the Court used the phrase "and all related Side A Insurers" the Court meant all 95 insurance carriers of the 137 insurance policies—including the excess ABC policies subject to the Appeals—described in Exhibit C to the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Insurance Policies, Surety Bonds and Letters of Credit and (B) Pay All Obligations With Respect Thereto, and (II) Granting Related Relief* [Dkt. No. 10].[13] Providing no analysis as to the effect of the term "related" in "and all related Side A Insurers," the Movants believe that the Court in its May 29 Order fully reverses the Lift Stay Denial Order and authorizes the advancement of defense costs under the Side ABC policies.

17. As the Appeals remain active, the Court lacks jurisdiction to grant the relief that the Movants seek, because the issues on appeal are not presently before this Court. Movants' construction of the May 29 Order fundamentally modifies and disrupts the subject of the Appeals by inverting the substance of the Lift Stay Denial Order. Accordingly, Movants ask this Court to interpret the May 29 Order in a manner outside the Court's jurisdiction. Such an interpretation is unviable.

## II. MOVANTS' REQUEST FOR CLARIFICATION IS AN IMPROPER REQUEST FOR RECONSIDERATION

18. Movants claim that they seek only clarification that this Court either modified the Lift Stay Denial Order while it was on appeal before another Court or that this Court issue an order now stating that it is modifying that Lift Stay Denial Order which remains on appeal. By calling the relief "clarification" Movants attempt to elide the effect of the relief they seek. The clarification sought would modify the Lift Stay Denial Order to the extent of reversing its effect.

[13] Motion at ¶¶ 21, 26-29.

19. Movants did not timely seek reconsideration after the Lift Stay Denial Order was entered. Instead, Edward James and the Appealing Side A Insurers appealed the Lift Stay Denial Order to the district court. Months have passed. The Side A Tower has paid coverage, as expected, under the Court's Lift Stay Denial Order. There is no basis now for reconsideration.

## III. THERE IS NO REASON THAT THE REQUESTED RELIEF NEEDS TO BE GRANTED AT THIS TIME

20. The Court has already considered the Plan, conducted its confirmation hearing, heard closing arguments, and is poised to issue its Confirmation Ruling. While the Court may elect to confirm or reject the Plan, in either event a new party will ultimately be vested with an interest in the insurance assets at issue in the Motion. If the Plan is confirmed, all claims and interests of the estate will pass to the Litigation Trust under the stewardship of a litigation trustee.[14] And if confirmation of the Plan is denied, conversion of these Chapter 11 cases to those under Chapter 7 will likely follow, and a Chapter 7 trustee would assume responsibility for this litigation. In either event, the identity and authority of parties in interest will materially change depending on this Court's ruling on confirmation of the Plan.

21. The insured persons are receiving coverage under the Side A Tower policies while Edward James and the Appealing Side A Insurers appeal the Lift Stay Denial Order. There is no harm to the insured persons. As mentioned above, the Side A Tower has not been exhausted, and by Movants' own admission, the Side A Tower retains at least $55 million of limits, and potentially more.

22. At the same time, assertions persist that Edward James (and, perhaps, others) worked to siphon more than $2 billion away from the Debtors. Edward James (and perhaps others) have

[14] In this Objection, the terms "Litigation Trust" and "litigation trustee" bears the same meaning assigned to those terms in the Plan.

access to the ample, $100 million of Side A Tower proceeds. The allegations against Edward James and his colleagues may or may not be covered under the Side ABC Tower and broader coverage is available under the Side A Tower. As discussed at length at hearing on January 7, if the claims against Edward James are true, then a "wait and see" approach, as adopted in the Lift Stay Denial Order will be seen as prescient and wise.

23. Movants, no doubt under intense pressure from the insured persons to obtain an order that the Movants must pay defense costs to the insured persons, are seeking relief that would secure rights for the insured persons to immediately have access to the full $200 million of both insurance towers. This access is why the insured persons are pressing the Movants to rush to get a ruling that coverage afforded by both insurance towers is immediately available.

24. Additionally, as explained at the January 7 hearing, the Side A Tower provides coverage only for the insured persons, not the Debtors. The Side ABC Tower provides coverage for insured persons and the Debtors. That distinction was part of the rationale for allowing the insured persons to obtain payment now under the Side A Tower, which has so-called "drop-down" coverage that provides for immediate coverage payments to the insured persons in the event the Side ABC Tower did not pay coverage.

25. In short, the insured persons are suffering no prejudice, have coverage that is paying their claims, and are trying to obtain a ruling that they can take all of the proceeds of both the Side A Tower and the Side ABC Tower for themselves. There is no reason to rush to such a ruling, including because plenty of Side A Tower limits remain and confirmation or rejection of the Plan will affect all parties' rights, including parties not yet permitted to take a position on the relief Movants seek.

26. The Motion should be denied as seeking improper relief and because such relief is not proper at this time. Alternatively, if the Court elects not to deny the Motion, in the interest of equity the Committee requests that the Court stay its consideration of the Motion pending the Court's confirmation or rejection of the Plan.

## CONCLUSION

Movants improperly ask this Court to grant relief that is outside of its jurisdiction and would improperly, substantially affect the subject of the pending Appeals. Accordingly, the Motion should be denied in its entirety. Alternatively, for the reasons stated above, consideration of the Motion should be stayed pending the Court's decision on confirmation of the Plan, together with such further relief the Court deems just and proper.

Dated: August 22, 2026
Dallas, Texas

Respectfully submitted,

/s/ *Aaron D. Davidson*
Aaron D. Davidson
Texas Bar No. 24007080
Seth Van Aalten, Esq. (admitted pro hac vice)
Justin R. Alberto, Esq. (admitted pro hac vice)
**COLE SCHOTZ P.C.**
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Facsimile: (469) 533-1587
adavidson@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com

*-and-*

Robert J. Stark, Esq. (admitted pro hac vice)
Jeffrey L. Jonas, Esq. (admitted pro hac vice)
Michael S. Winograd, Esq. (admitted pro hac vice)
Bennett S. Silverberg, Esq. (admitted pro hac vice)
Kenneth J. Aulet, Esq. (admitted pro hac vice)
Andrew M. Carty, Esq. (admitted pro hac vice)
**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
rstark@brownrudnick.com
jjonas@brownrudnick.com
mwinograd@brownrudnick.com
bsilverberg@brownrudnick.com
kaulet@brownrudnick.com
acarty@brownrudnick.com

Sharon I. Dwoskin, Esq. (admitted pro hac vice)
Tristan G. Axelrod, Esq. (admitted pro hac vice)
**BROWN RUDNICK LLP**
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
sdwoskin@brownrudnick.com
taxelrod@brownrudnick.com

Counsel to the
Official Committee of Unsecured Creditors

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of August, 2026, a true and correct copy of the foregoing has been served by electronic transmission to all registered CM/ECF users appearing in these cases.

/s/ *Aaron D. Davidson*
Aaron D. Davidson, Esq. (TX Bar No. 24007080)