**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>FIRST BRANDS GROUP, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-90399 (CML)<br><br>(Jointly Administered) |

**EVOLUTION'S (I) OBJECTION TO THE PROPOSED CONVERSION ORDER, AND (II) JOINDER TO THE FILING OF THE PLAN OBJECTORS' COMPETING ORDER**

**(Relates to Docket No. 3729)**

Evolution Credit Opportunity Master Fund II-B, L.P. (the "Evolution Inventory Lender" and, together with its affiliated lending entities, Evolution Credit Partners Trade Finance Master, L.P., Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution-affiliated funds, collectively, "Evolution") hereby submits this objection (the "Objection") to the *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* [Docket No. 3729-1] (the "Proposed Conversion Order") filed by First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "FBG Debtors"), and also files this joinder (the "Joinder") to the Plan Objectors' *Notice of Filing of Plan Objectors' Proposed Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* [Docket No. 3733] (the

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

"Notice," and the Plan Objectors' proposed order attached as Exhibit A thereto, the "Competing Order"). In support of the Objection and Joinder, Evolution respectfully states as follows:

## PRELIMINARY STATEMENT[2]

1. On August 24, 2026, after holding a hearing on the FBG Debtors' proposed Chapter 11 Plan, the Court denied confirmation. *See* Docket No. 3710. The Court indicated that it would enter an order converting the FBG Debtors' cases to chapter 7 proceedings and directed counsel for the FBG Debtors to file a proposed conversion order similar to the conversion order entered in the Big Lots bankruptcy. *See* Dkt. 3319, *In re Former BL Stores, Inc., et al.*, Case No. 24-11967 (JKS) (Bankr. D. Del. Nov. 10, 2025) (the "*Big Lots* Conversion Order"). The FBG Debtors submitted the Proposed Conversion Order on August 28, 2026. *See* Docket No. 3729. For numerous reasons, it should not be entered in its current form, and the Plan Objectors' Competing Order should be entered instead.

2. *First*, the Proposed Conversion Order fails to preserve the interested parties' rights to disputed collateral. It authorizes the payment of Professional Fees, payments to third parties, and the use of funds by the Converting Debtors and any Trustee from cash collateral and proceeds of collateral that is subject to dispute. In particular, the Proposed Conversion Order fails to preserve Evolution's asserted rights to the $21.2 million in post-petition accounts receivable that is the subject of Evolution's *Emergency Motion of Evolution Credit Partners to Compel Segregation and Turnover of Post-Petition Accounts Receivable Collected* [Docket No. 3144] (the "Turnover Motion"). Section 363 of the Bankruptcy Code expressly prohibits the use of cash collateral unless all parties claiming an interest in such collateral consent or upon an order either

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Proposed Conversion Order and in the Turnover Motion (defined below), as applicable.

resolving the dispute or providing adequate protection. *See* 11 U.S.C. § 363(c)(2), (e); *see also* Fed. R. Bankr. P. 7001(b). The Proposed Conversion Order would circumvent that prohibition.

3. *Second*, the Proposed Conversion Order attempts to impose an inexplicable stay of all proceedings (except applications for fees to Professionals) which would last until 45 days after the appointment of a permanent chapter 7 Trustee for the Converting Debtors. There was no such stay in the *Big Lots* Conversion Order. And staying all proceedings would allow the Converting Debtors and any Trustee to dissipate disputed cash collateral for at least 45 days without any recourse for interested parties to object via a contested matter or adversary proceeding. The more prudent course would be to address each issue case-by-case to determine whether to impose a stay or adjust deadlines, tailored to the needs of individual cases. A blanket stay for at least 45 days is not the answer.

4. *Finally*, the Proposed Conversion Order does not make clear that the rights of the chapter 7 trustee for the Previously Converted Debtors—SPV entities in which Evolution claims an interest in inventory and associated accounts receivable—are preserved under the Wind Down Order [Docket No. 2454]. Rather, the Proposed Conversion Order contemplates that "the professionals retained by order of the Bankruptcy Court by the Debtors"—which would include professionals retained in connection with the Wind Down Order—"shall be deemed to have resigned." *See* Proposed Conversion Order ¶ 8. Nothing in the conversion order should impact the rights granted to the chapter 7 trustee for the Previously Converted Debtors under the Wind Down Order to engage consultants for the sale of inventory and collection of accounts receivable and to seek Court authorization with respect to the foregoing, notwithstanding any stay of proceedings. The conversion of the FBG Debtors' cases to chapter 7 should not create a scenario in which inventory lies dormant for 45 days while expenses (including rent payments) continue to accrue without the ability to collect outstanding accounts receivable.

5. For these reasons, the FBG Debtors' Proposed Conversion Order should not be entered. Evolution fully joins Plan Objectors' Notice [Docket No. 3733] and respectfully requests that the Court enter the Competing Order attached thereto [Docket No. 3733-1].

## **OBJECTION**

### I. The Proposed Conversion Order Fails to Preserve Interested Parties' Rights to Disputed Collateral

6. Many parties in these First Brands bankruptcy proceedings have asserted competing claims to collateral and cash controlled by the FBG Debtors' estates. But the Proposed Conversion Order fails to adequately preserve the interested parties' rights, allowing cash collateral and proceeds of collateral to pay professionals and to otherwise be used by the Converting Debtors and their Trustees, even if that collateral is subject to dispute.

7. The Bankruptcy Code prohibits what the FBG Debtors are attempting to do. Section 363 expressly provides that the trustee "may not use, sell, or lease cash collateral" unless "each entity that has an interest in such cash collateral consents" or the court, "after notice and a hearing, authorizes such use." 11 U.S.C. § 363(c)(2). Section 363 further provides that the trustee "shall segregate and account for any cash collateral in the trustee's possession, custody, or control." *Id.* § 363(c)(4).

8. The Proposed Conversion Order, in its current form, would violate these provisions. For example:

a. The Proposed Conversion Order permits "Allowed Professional Fees" to be paid "from the Converting Debtors' chapter 7 bankruptcy estates in accordance with this Order, the priorities set forth in the Bankruptcy Code and the Final DIP Order," *see* Proposed Conversion Order ¶ 2(a)(iii), notwithstanding the fact that certain of those funds may constitute disputed cash collateral.

b. The Proposed Conversion Order also authorizes the funding of "Professional Fees Escrow Account" "with (i) $5 million from cash collateral of the DIP Secured Parties and the proceeds of any ABL

Collateral," *see id.* ¶ 2(a)(iv), but it does not take into account disputes over what constitutes DIP or ABL Collateral.

c. The Proposed Conversion Order authorizes payments of up to $15 million from "the Professional Fees Escrow Account, DIP Collateral, or ABL Collateral" absent "the prior written consent of the Ad Hoc Group SteerCo and the ABL Agent," and payments above $15 million from the "respective collateral" of the "DIP Secured Parties and the ABL Secured Parties" with their consent. *Id.* ¶ 2(a)(iv). But at no point does the Proposed Conversion Order give consent rights to any *other* parties that may have ownership claims or other property interests in putative ABL or DIP Collateral. *See also id.* ¶ 2(b)(iv) (granting only the Ad Hoc Group SteerCo and ABL Agent consent rights over further payments to professionals from putative collateral of the DIP and ABL Lenders and from the Professional Fees Escrow Account); ¶¶ 3-4 (giving sole consent rights to the DIP and ABL Lenders over the use of putative DIP and ABL cash collateral).

d. The Proposed Conversion Order also authorizes "the Debtor Professionals, the Trustee for the applicable FBG Converting Debtors, and the Ad Hoc Group SteerCo" to jointly and unilaterally determine that a given third-party vendor is "critical and essential" to the preservation of certain books and records, and thereby pay that vendor from putative "cash collateral of the DIP Secured Parties" with a mere two days' notice and without further approval by this Court, up to a $2 million cap. *Id.* ¶ 2(b)(iii).

9. These issues are particularly problematic for Evolution. The Proposed Conversion Order fails to articulate how the Court should deal with the proceeds subject to Evolution's pending Turnover Motion, which seeks entry of an order compelling the FBG Debtors to segregate and turn over approximately $21.2 million in post-petition accounts receivable collected from sales of inventory at the Evolution SPV's Warehouses.[3] That motion was filed on an emergency basis on July 8, 2026 and remains pending.[4] But the fact that the Turnover Motion remains pending does not mean that Evolution's rights to the disputed $21.2 million can evaporate; any conversion order

[3] The Turnover Motion sought the segregation and turnover of approximately $21.5 million in post-petition accounts receivable, but the FBG Debtors' objection indicated that their "records show the amount to be $21.2 million." Docket No. 3218 at ¶ 2 n.8.

[4] Evolution requested consideration on or before July 15, 2026. On July 15 and July 16, 2026, responses to the Motion were filed by the ad hoc group of term loan lenders [Docket No. 3208], Bank of America, N.A., as agent for the ABL Secured Parties [Docket No. 3209], and the FBG Debtors [Docket No. 3218]. No hearing was set on the Motion. On July 16, 2026, Evolution filed a request for a status conference on the Motion [Docket No. 3216]. On July 28, 2026, Evolution filed a reply in further support of the Motion [Docket No. 3464].

must make clear that these disputed funds must remain segregated and Evolution's rights preserved.

10. The Converting Debtors and any Trustee should be authorized to use only ***undisputed*** assets. The use of any ***disputed*** assets—including the $21.2 million in collected accounts receivable that is the subject of Evolution's Turnover Motion—should be permitted ***only*** with the express written consent of all parties asserting an interest in such collateral or upon an order either resolving the dispute or providing adequate protection. That is precisely what the Bankruptcy Code requires. *See* 11 U.S.C. § 363(c)(2), (e); Fed. R. Bankr. P. 7001(b).

## II. The Stay Contemplated by the Proposed Conversion Order Is Unreasonable and Should Be Narrowed

11. The Proposed Conversion Order also attempts to impose a blanket stay (except for fee applications filed by professionals) lasting until 45 days after the appointment of a Permanent Trustee for the Converting Debtors, and applies it to "all contested matters, including applications for allowance and payment of administrative expenses, in the Chapter 11 Cases (including any and all motions or adversary proceedings that are filed against or name the Converting Debtors)." Proposed Conversion Order ¶ 9.

12. There is no legal basis to impose such a stay. Indeed, no such stay was imposed in the *Big Lots* Conversion Order. *See* Dkt. No. 3319, *In re Former BL Stores, Inc., et al.*, Case No. 24-11967 (Bankr. D. Del. Nov. 10, 2025). And from a practical standpoint, proceedings in every pending contested matter or adversary proceeding naming a Converting Debtor should not come to a standstill for more than a month and a half. There is no reason to stay, for example, discovery between a creditor and a non-debtor third party in a pending adversary proceeding just because the proceeding also names a Converting Debtor as a party.

13. Moreover, staying all proceedings risks prejudice to all parties (including Evolution) that claim an interest in disputed collateral. The proposed stay would allow the

Converting Debtors and any Trustee to use disputed cash collateral for at least 45 days without any recourse for interested parties to object via a contested matter or adversary proceeding. The more prudent approach would be to assess case-by-case whether a stay of proceedings is appropriate or determine whether to adjust relevant deadlines. The Court can schedule hearings and make such determinations based on what is appropriate for the particular needs of each case.

14. As reflected in paragraph 11 of the Competing Order, the blanket stay should be significantly narrowed to apply only to (at most) applications for allowance and payment of administrative expenses.

## III. The Proposed Conversion Order Does Not Clarify That Sales of Inventory and Collections of Outstanding Accounts Receivable May Continue

15. Finally, the Proposed Conversion Order fails to adequately make clear that the chapter 7 trustee for the Previously Converted Debtors can continue to engage consultants to administer sales of inventory and collections of outstanding accounts receivable pursuant to the Wind Down Order and the Order Extending Wind Down Order to the Chapter 7 Trustee. *See* Docket No. 2454; *see also* Case No. 25-90392, Docket No. 61 (extending Wind Down Order to Chapter 7 Trustee for the Previously Converted Debtors).

16. Evolution claims an interest in the inventory and accounts receivable generated from sales of inventory of the Previously Converted Debtors, *see* Adv. Pro. No. 25-03800, Docket No. 9 ¶ 78, and the Wind Down Order expressly provides that "[i]f any order under section 1112 of the Bankruptcy Code is entered, such order shall provide … that this [Wind Down Order] and the rights granted to the Consultant hereunder shall remain effective and, notwithstanding such dismissal or conversion, shall remain binding on parties-in-interest." Docket No. 2454 ¶ 64. Yet, Paragraph 8 of the Proposed Conversion Order contemplates the resignation of all the professionals hired pursuant to the Wind Down Order to administer inventory sales and collect accounts receivable. *See* Proposed Conversion Order ¶ 8. Inventory should not sit idle while expenses and

rent obligations accrue. Any conversion order should make clear that the rights of the chapter 7 trustee for the Previously Converted Debtors are preserved, the Wind Down Order remains in effect, and inventory sales and accounts-receivable collections can continue.

## **CONCLUSION**

For the reasons set forth herein, Evolution respectfully requests that the Court (i) reject the FBG Debtors' Proposed Conversion Order, (ii) enter the Competing Order, and (iii) grant such other and further relief as the Court deems appropriate.

[*Remainder of Page Intentionally Left Blank*]

Respectfully submitted this 28th day of August, 2026,

**GRAY REED**

By: */s/ Jason S. Brookner*
Jason S. Brookner
Texas Bar No. 24033684
Emily F. Shanks
Texas Bar No. 24110350
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email: jbrookner@grayreed.com
eshanks@grayreed.com

-and-

**ELSBERG BAKER & MARURI PLLC**
David Elsberg (admitted *pro hac vice*)
Michael Duke (admitted *pro hac vice*)
Vivek Tata (admitted *pro hac vice*)
Garrett Gerber (admitted *pro hac vice*)
Andrew Parks (admitted *pro hac vice*)
Ella Epstein (admitted *pro hac vice*)
350 Fifth Avenue, 38th Floor
New York, New York 10118
Telephone: (212) 597-2600
Email: delsberg@elsberglaw.com
mduke@elsberglaw.com
vtata@elsberglaw.com
ggerber@elsberglaw.com
aparks@elsberglaw.com
eepstein@elsberglaw.com

-and-

**PROSKAUER ROSE LLP**
Vincent Indelicato (admitted *pro hac vice*)
Matthew R. Koch (admitted *pro hac vice*)
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Email: vindelicato@proskauer.com
mkoch@proskauer.com

- and -

Charles A. Dale (admitted *pro hac vice*)
One International Plaza
Boston, Massachusetts 02110-2600
Telephone: (617) 526-9600
Email: cdale@proskauer.com

*Counsel to Evolution*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of August 2026, the undersigned caused a true and correct copy of the foregoing document to be served upon all parties via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Jason S. Brookner*
Jason S. Brookner