IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>FIRST BRANDS GROUP, LLC, *et al*.,<br><br>Debtors. | Chapter 7<br><br>Case No. 25-90399 (CML)<br><br>(Jointly Administered) |

**PRIMEREVENUE, INC.'S MOTION TO STRIKE OR SEAL SCANDALOUS AND DEFAMATORY STATEMENTS UNDER 11 U.S.C. § 107(b)(2)**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing. Represented parties should act through their attorney**.

Creditor PrimeRevenue, Inc. ("PrimeRevenue"), for its *Motion to Strike or Seal Scandalous and Defamatory Statements Under 11 U.S.C. § 107(b)(2)* (the "Motion") states as follows:

**PRELIMINARY STATEMENT**

The FBG Debtors filed declarations of Charles Moore and Marc S. Kirschner in support of the Plan[1] that contained anonymous, multiple-layer hearsay statements about PrimeRevenue that are scandalous and defamatory because they allege that PrimeRevenue did not act on a "significant red flag" regarding the alleged supply chain financing fraud committed by the FBG Debtors.[2] The

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.
[2] PrimeRevenue refers to the Statements generally so as not to require the sealing of this Motion. *See In re Gordon Properties, LLC*, 536 B.R. 703, 708 n.4 (Bankr. E.D. Va. 2015) (referring to scandalous letter comments in a general manner).

Court ruled the declarations inadmissible, Debtors' counsel withdrew all questions to Moore regarding the substance of the statements made in his declaration following objections that the questions called for "hearsay within hearsay being passed to [Moore]," and the Court did not permit Kirschner to testify as to what any party knew or should have known. Yet, the statements live on in the record of the bankruptcy case, impinging the credibility of PrimeRevenue in the eyes of its financial institution lending partners and the marketplace, including in trade publications reporting on the Court's Order Denying Plan Confirmation.

Even more offensive is that the statements never had any relevance to plan confirmation or the Estate Claims. Moore and Debtors' counsel fundamentally misunderstand and did not conduct reasonable due diligence into PrimeRevenue's business and the services that it provided to First Brands Group, LLC ("FBG") prepetition.[3] PrimeRevenue provided a software platform that paired various FBG Debtors with Supply Chain Financers, who transacted with each other and transmitted payments directly to each other without any funds passing through PrimeRevenue. PrimeRevenue is not a transferee of any potential fraudulent transfers on account of the FBG Debtors' supply chain finance program. Since PrimeRevenue is not a transferee, questions of whether PrimeRevenue had any actual or constructive knowledge of the alleged supply chain financing fraud committed by the FBG Debtors to support a good faith transferee defense are entirely irrelevant.

Section 107(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9018(a)(2) require the Court to protect an entity from scandalous or defamatory material in any document filed in a bankruptcy case. The false, irrelevant, multi-layer hearsay statements made about PrimeRevenue

[3] PrimeRevenue filed a Limited Objection to the Plan on the grounds that the FBG Debtors misclassify PrimeRevenue as a Supply Chain Financer in the Plan Supplement, instead of the Trade Creditor that it is. [Doc. 3249.]

in the Moore and Kirschner declarations are both scandalous and defamatory, and the Court should enter an order striking or sealing them from the record.

## JURISDICTION

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein is section 107 of 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 9014 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1 (LBR S.D. Tex.).

## FACTUAL BACKGROUND

### A. PrimeRevenue and its Business

4. PrimeRevenue is a technology company that provides a Software as a Service (SaaS) platform used by companies and financial institutions to facilitate supply chain financing. Companies like FBG upload account receivables and/or account payables with extended payment terms to PrimeRevenue's platform where the receivable or payables are matched with partner financial institutions who provide the supply chain financing to such companies. (Declaration of David Quillian ("Quillian Decl."), ¶ 3.)[4]

5. PrimeRevenue interacted with FBG through three types of services. (*Id.*, ¶ 4.)

6. First, through PrimeRevenue's SCiSupplier module, FBG could upload its payment obligations to suppliers to the PrimeRevenue platform through which drafts were created and sold to supply chain financers if the payee suppliers transferred the drafts owed by FBG to the financers. (*Id.*, ¶ 5.)

---

[4] The Quillian Declaration is attached hereto as Exhibit B.

7. Second, through PrimeRevenue's SCiCustomer module, FBG could upload data related to receivables owed to FBG by its customers and could receive funding from supply chain financers. (*Id.*, ¶ 6.)

8. Third, FBG participated as supplier on other PrimeRevenue customers' SCiSupplier modules, whereby it would sell drafts owed to it by other PrimeRevenue customers. (*Id.*, ¶ 7.)

9. PrimeRevenue's claim against FBG, and the prepetition payments made by FBG to PrimeRevenue, relate to FBG's use of PrimeRevenue's SCiSupplier module. FBG agreed to pay PrimeRevenue a monthly subscription fee pursuant to a Master Services Agreement dated effective December 7, 2016,[5] as amended by that certain Assignment, Assumption and Amendment Agreement dated February 2, 2018, as further amended by that certain Amendment One to Master Services Agreement dated May 30, 2019, as further amended by that certain Amendment Two to Master Services Agreement dated November 25, 2019, as further amended by that certain Name Change and Amendment Agreement dated May 17, 2023, as further amended by that certain Amendment Four to Master Services Agreement dated June 27, 2023, as further amended by that certain Amendment Five to Master Services Agreement dated January 16, 2024, as further amended by that certain Amendment Six to Master Services Agreement dated September 20, 2024 (collectively, the "Agreement"). (*Id.*, ¶ 8.)

10. PrimeRevenue never provided financing or liquidity to FBG or any other entity, or reimbursed any FBG Debtor Affiliate or other entity for providing such financing or liquidity. Rather, its supply chain management software services pair suppliers and financers who then transact with each other. (*Id.*, ¶ 9.)

[5] PrimeRevenue initially entered into the Master Services Agreement with Crown Group, LLC, the predecessor to Trico Group, LLC, which changed its name to FBG.

11. Nor did PrimeRevenue ever remit payment on behalf of FBG or any other entity relating to accounts payable arising from the supply of goods or services to FBG or any other entity. Again, PrimeRevenue's supply chain management software services pair suppliers and financers who transmit payments directly to each other without any funds passing through PrimeRevenue. (*Id.*, ¶ 10.)

12. Debtors Trico Products Corporation and Carter Fuel Systems, LLC disclose in their respective Statements of Financial Affairs for Non-Individuals Filing for Bankruptcy payments to PrimeRevenue of $74,010,655.14 and $16,352,548.48, respectively, within 90 days before filing this case. [Docs. 1552 at 57; 1567 at 42.] These statements are false. The referenced payments could only possibly refer to payments made directly to supply chain financers who connected with various FBG Debtors through PrimeRevenue's supply chain management software platform. (*Id.*, ¶ 11.)

13. PrimeRevenue never received any payments from any FBG Debtor other than monthly subscription fee payments from FBG and its predecessors in interest under the Agreement. (*Id.*, ¶ 12.)

**B. The Declarations.**

14. On September 28, 2025 (the "Petition Date"), FBG and the other FBG Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

15. On June 16, 2026, FBG Debtors filed the solicitation version of the Plan. [Doc. 3019.]

16. On July 14, 2026, and in support of confirmation of the Plan, the FBG Debtors filed the *Declaration of Charles M. Moore in Support of Confirmation of FBG Debtors' Chapter 11*

*Plan* [Doc. 3188] (the "Moore Declaration").

17. Also on July 14, 2026, the FBG Debtors filed the *Declaration of Marc S. Kirschner* [Doc. 3190] (the "Kirschner Declaration" and together with the Moore Declaration, the "Declarations").

**C. The Statements.**

18. PrimeRevenue seeks to strike or seal as scandalous and defamatory the references to it and its alleged prepetition actions in Paragraphs 62, 101, and 102 of the Moore Declaration, including the chart following Paragraph 102 (the "Moore Statements"). [Doc. 3188, at ¶¶ 62, 101–02.] The Moore Statements rely on multiple layers of hearsay attributed to an unidentified employee of PrimeRevenue to state that PrimeRevenue was aware of a "significant red flag" regarding the alleged supply chain financing fraud committed by the FBG Debtors. (*Id.*)

19. PrimeRevenue also seeks to strike or seal as scandalous and defamatory the references to it and its alleged prepetition actions in Paragraph 54 of the Kirschner Declaration, which cites the Moore Statements (the "Kirschner Statements," and, collectively, the "Statements") to conclude that PrimeRevenue "had actual knowledge" of actions taken by the FBG Debtors to commit the alleged supply chain financing fraud. [Doc. 3190, at ¶ 54.]

**D. The Court Excludes the Declarations and Bars Moore and Kirschner From Testifying as to the Statements.**

20. Various interested parties, and various joinders thereto, filed motions in limine (the "Motions in Limine"), requesting the Court exclude Moore and Kirschner from testifying at the Plan confirmation hearing.

21. In its ruling on the Motions in Limine, the Court allowed Moore to "testify live subject to cross-examination," but ruled that "the [Moore Declaration] is not admitted, and it will

not be admitted in the Debtors' affirmative case." (Ex. C at 6:17-6:21.)[6]

22. The Court put further restrictions on Moore's testimony including prohibiting him from testifying as to whether any party knew or should have known of the alleged fraud perpetrated by the FBG Debtors:

> I'm not going to let him testify that any counterparty knew or should have known of a scheme, that any party was on inquiry notice, or that a reasonable participant would have discovered that conduct. Those are questions that some court will decide at some point if it goes forward against anyone. These are questions that I will not decide.

(*Id.* at 11:3-11:9.)

23. The Court also prohibited Moore from attributing statements to unidentified individuals:

> He's not going to be able to -- there were, at least in the declaration, statements made by quote-unquote, you know, kind of unidentified persons.… I'm talking about just, you know, there was some unidentified person in some emails. You're not going to be able to kind of attribute a statement to an unidentified person and then characterize that person's conduct who is unknown.
>
> …
>
> and I want to be clear about this, and I think this is kind of going to a number of the communications disclosed or discussed, that were discussed before me in this hearing are attributed to individuals who, obviously I said who aren't identified and they're not going to be able to talk about that.
>
> …
>
> What I'm really focused on there is someone, you know, saying this person said this and they sent an email to someone who we can't even identify. That's the kind of stuff that I'm really conscious about.

(*Id.* at 11:20-12:2, 13:22-14:2, 14:19-14:22.)

24. During his testimony, Moore stated that he received reports about PrimeRevenue from an Alvarez & Marsal employee named Carrie Palin, who relayed information that she

---

[6] A partial transcript of the hearing on July 28, 2026, is attached hereto as Exhibit C.

allegedly learned during an interview of an unnamed First Brands employee "regarding information that was exchanged between PrimeRevenue and First Brands." (Ex. D at 90:6-91:9.)[7]

25. Debtors' counsel withdrew further questions to Moore regarding the substance of the information after objections that the questions called for "hearsay within hearsay being passed to [Moore]." (*Id.* at 91:10-93:18.)

26. The Court similarly prohibited Kirschner from testifying as to whether parties knew or should have known of the alleged fraud perpetrated by the FBG Debtors.

27. After a multi-day trial, on August 24, 2026, the Court entered its Order Denying Plan Confirmation with respect to the FBG Debtors' Plan. [Doc. 3710.]

28. And after denying confirmation of the FBG Debtors' Plan, the Court entered its Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief on September 1, 2026. [Doc. 3748.]

**E. The Statements are False, Damaging to PrimeRevenue, and Irrelevant to any Fraudulent Transfer Claims.**

29. PrimeRevenue denies the conduct alleged in the Statements. PrimeRevenue is not aware of any evidence to support the Statements. Nor have the FBG Debtors or its professionals provided PrimeRevenue with any evidence to support the Statements. (Quillian Decl., ¶ 17.)

30. The Statements have damaged PrimeRevenue's reputation with its partner financial institutions who provide the supply chain financing. At least one financial institution partner stated to PrimeRevenue that it views its credibility as being called into question by Moore's multiple-layer hearsay statement, amplified by Kirschner, that PrimeRevenue was aware of a "significant red flag" regarding the alleged supply chain financing fraud committed by the FBG Debtors. (*Id.*,

[7] A partial transcript of the hearing on July 29, 2026, is attached hereto as Exhibit D.

¶ 18.)

31. The Statements also have damaged PrimeRevenue's reputation in the supply chain finance industry. On August 25, 2026, a reporter from Global Trade Review writing an article on the Court's Order Denying Plan Confirmation contacted PrimeRevenue and asked for comment on the Court's order and the Kirschner Statements, then published an article republishing the scandalous and defamatory statements about PrimeRevenue contained in the Kirschner Statements. (*Id.*, ¶ 19.)

32. Not only are the Statements defamatory, they were also irrelevant to the FBG Debtors' Plan and the Estate Claims. Debtors' incorrectly assume that PrimeRevenue is a supply chain financer and transferee of potential fraudulent transfers from various FBG Debtors and offered the Statements to preemptively refute any good faith defense that PrimeRevenue may have.

33. The FBG Debtors' entire premise is wrong and not based on reasonable due diligence because PrimeRevenue is not a transferee of any potentially fraudulent transfers from the FBG Debtors on account of the FBG Debtors' supply chain finance program. (*Id.*, ¶ 12.) PrimeRevenue provided supply chain management software services that paired suppliers and financers who transmit payments directly to each other without any funds passing through PrimeRevenue. (*Id.*, ¶ 10.) Because PrimeRevenue is not a potential transferee, its knowledge is completely irrelevant to any fraudulent transfer claims or good faith defenses thereto.

**RELIEF REQUESTED**

34. PrimeRevenue respectfully requests the Court strike or seal the Statements as scandalous and defamatory under section 107(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9018(a)(2). The Statements are untrue, were not admitted into evidence at the Plan confirmation hearing because they are based on multiple layers of anonymous hearsay, and were irrelevant to

any Estate Claims. Moore's suggestion that PrimeRevenue was aware of a "significant red flag" regarding the alleged supply chain financing fraud committed by the FBG Debtors has damaged to PrimeRevenue's reputation and discredited its business. Accordingly, the Court should strike or seal the Statements or order Debtors to file redacted Declarations, pursuant to section 107(b)(2).

## ARGUMENT

35. Section 107 provides a public right of access to all filed documents in a bankruptcy proceeding. 11 U.S.C. § 107(a). This rule is not absolute, and subject to exceptions including Section 107(b)(2), which provides that "[o]n request of a party in interest, the bankruptcy court shall . . . protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b)(2).

36. Bankruptcy Rule 9018 provides, in pertinent part, that "on motion . . . the court may . . . issue any order that justice requires to . . . protect an entity from scandalous or defamatory matter in any document filed in a bankruptcy case . . . ." Fed. R. Bankr. P. 9018(a)(2).

37. Section 107(b)(2) and Bankruptcy Rule 9018(a)(2) reflect a mandatory requirement for a court to protect a party by striking or sealing a document that is scandalous or defamatory. *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d at 417, 430 (9th Cir. 2011).

38. The Statements are both scandalous and defamatory.

### A. The Statements Should be Stricken or Sealed as Scandalous.

39. The Statements suggest that PrimeRevenue condoned the alleged supply chain financing fraud committed by the FBG Debtors because it was aware of a "significant red flag" and did nothing.

40. In *Roman Cath. Archbishop of Portland in Oregon*, the court looked to dictionaries that define "scandalous" as "bringing discredit to one's class or position," or "grossly disgraceful,"

and held that "matter is 'scandalous' if it disgraceful, offensive, shameful and the like. There is no requirement that the material be either 'untrue' or 'potentially untrue' or that it be irrelevant or included within a court filing for 'an improper end.'" *Id*. at 432 (striking allegations that a priest sexually abused children).

41. The "scandalous" standard in *Roman Cath. Archbishop of Portland in Oregon* is not limited to matters as egregious as the alleged sexual abuse of minors. In *In re Gordon Props., LLC*, the court redacted statements from letters filed by members of a home owners association about the management of a condominium by the managing member of the debtor which owned 41 condominium units in the building. 536 B.R. 703, 712 (Bankr. E.D. Va. 2015) ("A few statements could be considered scandalous. The court applied *Roman Catholic Archbishop of Portland* and redacted them. To be sure, they were not nearly as scandalous as those in *Roman Catholic Archbishop of Portland*, but *if found to be scandalous, the court is required* to protect the parties involved.") (emphasis added). In *Robbins v. Tripp*, the district court affirmed a bankruptcy court order sealing a report detailing problems with a bankruptcy attorney's practice before the court because "the definition of scandalous included bringing discredit to one's profession." 510 B.R. 61, 69 (E.D. Va. 2014).

42. Moore's hearsay statement, repeated in the Kirschner Declaration, insinuating that PrimeRevenue knowingly ignored a "significant red flag" regarding the alleged supply chain financing fraud committed by the FBG Debtors and allowed it to continue is "scandalous" under any common understanding of the word. The FBG Debtors' alleged supply chain financing fraud led to the indictment of its officers and directors, some of whom pled guilty, and caused Debtors' liquidation and the loss of thousands of jobs.

43. To publicly suggest that PrimeRevenue knew of the alleged fraud in inadmissible

Declarations discredits PrimeRevenue, its ethics, and its business operations, and such public statements should be stricken or sealed as scandalous. *Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d at 432–33; *Gordon Props., LLC*, 536 B.R. at 712.

**B. The Statements Should be Stricken or Sealed as Defamatory.**

44. The hearsay Statements about PrimeRevenue should also be stricken or sealed as defamatory.

45. "To qualify for protection under the § 107(b)(2) exception for defamatory material, an interested party must show (1) the material at issue would alter his reputation in the eyes of a reasonable person, and (2) that the material is untrue or that it is potentially untrue and irrelevant or included for an improper end." *In re Gitto Global Corp.*, 422 F.3d 1, 16 (1st Cir. 2005).[8]

46. There can be no dispute that the Statements suggesting that PrimeRevenue looked past a "significant red flag" regarding the alleged supply chain financing fraud committed by the FBG Debtors would—and has—drawn negative publicity and altered the reputation of PrimeRevenue in the eyes of its lending partners and other reasonable persons. (Quillian Decl., ¶¶ 18, 19.) Therefore, PrimeRevenue easily satisfies the first prong of the *Gitto Global* test. *See In re Associated Cmty. Servs*., 547 B.R. 236, 241–42 (Bankr. E.D. Mich. 2016) ("There is no serious question that [allegations that law firm committed fraud on the court] would cause a reasonable person to alter his or her opinion about [the firm].").

47. The *Gitto Global* test also requires PrimeRevenue show that the material is either untrue, or that it potentially untrue and irrelevant or included for an improper end. *Id.* at 16.

48. The Statements are untrue. PrimeRevenue denies the conduct alleged in the

---

[8] The Bankruptcy Court applied the *Gitto Global* test in *In re N. Bay Gen. Hosp., Inc.*, 404 B.R. 429, 440 (Bankr. S.D. Tex. 2009) (law firm "made no attempt, either in its pleadings or at the hearing . . . to show that the Pleadings contain 'scandalous or defamatory material.'").

Statements. PrimeRevenue is not aware of any evidence to support the Statements. Nor have the FBG Debtors or its professionals provided PrimeRevenue with any evidence to support the Statements. (Quillian Decl., ¶ 17.) However, the court in *Gitto Global* recognized that motions under Section 107(b)(2) are not "an occasion for mini-trials" and bankruptcy courts "are under no obligation to resolve questions of truthfulness presented by a § 107(b)(2) motion where doing so would require discovery or additional hearings, or would be otherwise burdensome." *Gitto Global*, 422 F.3d at 11.

49. Therefore, PrimeRevenue, as in most cases, proceeds on the grounds that the Statements are potentially untrue and irrelevant or included for an improper end. *Id.* at 13–14.

50. The Statements are irrelevant for two reasons. First, the Court ruled the Declarations inadmissible and limited the testimony of Moore and Kirschner so as not to allow them to testify about the Statements. (*See* Ex C. at 6:17-6:21, 11:3-11:9, 11:20-12:2, 13:22-14:2, 14:19-14:22.) When Debtors' counsel sought to illicit testimony from Moore regarding the Statements he was forced to withdraw the questions based on multi-layer hearsay objections. (Ex. D at 90:6-93:18.) As a result of the foregoing, the Statements are not in evidence, but exist on the docket to alter the reputation of PrimeRevenue in the eyes of its lending partners and the supply chain financing industry. This satisfies the second prong of the *Gitto Global* test.

51. The Statements are also irrelevant because PrimeRevenue's knowledge is irrelevant to the Estate Claims. The FBG Debtors and their professional advisors have a fundamental misunderstanding of PrimeRevenue's business and refused to engage with PrimeRevenue to allow it to correct that misunderstanding. PrimeRevenue provided supply chain management software services that paired suppliers and financers who transmit payments directly to each other without any funds passing through PrimeRevenue. (Quillian Decl., ¶ 10.) As such, PrimeRevenue is not

a transferee of any potentially fraudulent transfers from the FBG Debtors on account of the FBG Debtors' supply chain finance program. (*Id.*, ¶ 12.) Since PrimeRevenue is not a transferee of any potential fraudulent transfers on account of the FBG Debtors' supply chain finance program, the question of whether it is a good faith transferee is irrelevant. This further satisfies the second prong of the *Gitto Global* test. *See In re Phar-Mor, Inc.*, 191 B.R. 675, 677 (Bankr. N.D. Ohio 1995) (sealing adversary complaint filed against limited partners based on the "allegedly . . . inappropriate conduct with respect to the financial affairs of the Debtor" by the Debtor's former president who "was indicted and eventually convicted on 109 separate criminal counts involving his activities as president of the Debtor entities").

**CONCLUSION**

52. For the foregoing reasons, the Bankruptcy Court should strike or seal the inadmissible, multiple-layer hearsay, irrelevant Statements as scandalous and defamatory under section 107(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9018(a)(2).

WHEREFORE, PrimeRevenue, Inc. respectfully requests the Bankruptcy Court grant the Motion, enter the proposed Order substantially attached hereto as **Exhibit A**, and grant such other and further relief as may be just proper under the circumstances.

[SIGNATURE APPEARS ON THE FOLLOWING PAGE.]

This 4th day of September, 2026.

**TAFT STETTINIUS & HOLLISTER LLP**

*/s/ Brian J. Levy*
Brian J. Levy
Georgia Bar No. 302518
blevy@taftlaw.com
3343 Peachtree Road NE
Suite 1600
Atlanta, Georgia 30326
Telephone: (404) 233-7000

COUNSEL FOR PRIMEREVENUE, INC.
*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that this day I electronically filed the foregoing PRIMEREVENUE, INC.'S MOTION TO STRIKE OR SEAL SCANDALOUS AND DEFAMATORY STATEMENTS UNDER 11 U.S.C. § 107(b)(2) with the Clerk of Court using the CM/ECF system which will automatically send an email notification of such filing to the attorneys of record.

This 4th day of September, 2026.

**TAFT STETTINIUS & HOLLISTER LLP**

*/s/ Brian J. Levy*

Brian J. Levy
Georgia Bar No. 302518
blevy@taftlaw.com
3343 Peachtree Road NE
Suite 1600
Atlanta, Georgia 30326
Telephone: (404) 233-7000

COUNSEL FOR PRIMEREVENUE, INC.
*Admitted Pro Hac Vice*