# EXHIBIT B

**(Quillian Declaration)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>FIRST BRANDS GROUP, LLC, *et al.*,<br><br>Debtors. | Chapter 7<br><br>Case No. 25-90399 (CML)<br><br>(Jointly Administered) |

**DECLARATION OF DAVID QUILLIAN**

I, David Quillian, declare under penalty of perjury as follows:

1. My name is David Quillian. I am over twenty-one (21) years of age and competent to make this Declaration.

2. I am the Chief Legal Officer for Creditor PrimeRevenue, Inc. ("PrimeRevenue"). I am also a member in good standing of the State Bar of Georgia.

3. PrimeRevenue is a technology company that provides a Software as a Service (SaaS) platform used by companies and financial institutions to facilitate supply chain financing. Companies like First Brands Group, LLC ("FBG") upload account receivables and/or account payables with extended payment terms to PrimeRevenue's platform where the receivable or payables are matched with partner financial institutions who provide the supply chain financing to such companies.

4. PrimeRevenue interacted with FBG through three types of services.

5. First, through PrimeRevenue's SCiSupplier module, FBG could upload its payment obligations to suppliers to the PrimeRevenue platform through which drafts were created and sold to supply chain financers if the payee suppliers transferred the drafts owed by FBG to the financers.

6. Second, through PrimeRevenue's SCiCustomer module, FBG could upload data related to receivables owed to FBG by its customers and could receive funding from supply chain

financers.

7. Third, FBG participated as supplier on other PrimeRevenue customers' SCiSupplier modules, whereby it would sell drafts owed to it by other PrimeRevenue customers.

8. PrimeRevenue's claim against FBG, and the prepetition payments made by FBG to PrimeRevenue, relate to FBG's use of PrimeRevenue's SCiSupplier module. FBG agreed to pay PrimeRevenue a monthly subscription fee pursuant to a Master Services Agreement dated effective December 7, 2016,[1] as amended by that certain Assignment, Assumption and Amendment Agreement dated February 2, 2018, as further amended by that certain Amendment One to Master Services Agreement dated May 30, 2019, as further amended by that certain Amendment Two to Master Services Agreement dated November 25, 2019, as further amended by that certain Name Change and Amendment Agreement dated May 17, 2023, as further amended by that certain Amendment Four to Master Services Agreement dated June 27, 2023, as further amended by that certain Amendment Five to Master Services Agreement dated January 16, 2024, as further amended by that certain Amendment Six to Master Services Agreement dated September 20, 2024 (collectively, the "Agreement").

9. PrimeRevenue never provided financing or liquidity to FBG or any other entity, or reimbursed any FBG Debtor Affiliate or other entity for providing such financing or liquidity. Rather, its supply chain management software services pair suppliers and financers who then transact with each other.

10. Nor did PrimeRevenue ever remit payment on behalf of FBG or any other entity relating to accounts payable arising from the supply of goods or services to FBG or any other

[1] PrimeRevenue initially entered into the Master Services Agreement with Crown Group, LLC, the predecessor to Trico Group, LLC, which changed its name to FBG.

entity. Again, PrimeRevenue's supply chain management software services pair suppliers and financers who transmit payments directly to each other without any funds passing through PrimeRevenue.

11. I am aware that Debtors Trico Products Corporation and Carter Fuel Systems, LLC disclose in their respective Statements of Financial Affairs for Non-Individuals Filing for Bankruptcy payments to PrimeRevenue of $74,010,655.14 and $16,352,548.48, respectively, within 90 days before filing this case. [Docs. 1552 at 57; 1567 at 42.] These statements are false. The referenced payments could only possibly refer to payments made directly to supply chain financers who connected with various FBG Debtors through PrimeRevenue's supply chain management software platform.

12. PrimeRevenue is not a transferee of any potentially fraudulent transfers from the FBG Debtors on account of the FBG Debtors' supply chain finance program. PrimeRevenue never received any payments from any FBG Debtor other than monthly subscription fee payments from FBG and its predecessors in interest under the Agreement.

13. I am aware that on July 14, 2026, the FBG Debtors filed the *Declaration of Charles M. Moore in Support of Confirmation of FBG Debtors' Chapter 11 Plan* [Doc. 3188] (the "Moore Declaration").

14. I am further aware that also on July 14, 2026, the FBG Debtors filed the *Declaration of Marc S. Kirschner* [Doc. 3190] (the "Kirschner Declaration" and together with the Moore Declaration, the "Declarations").

15. Paragraphs 62, 101, and 102 of the Moore Declaration, including the chart following Paragraph 102 (the "Moore Statements") contain scandalous and defamatory statements about PrimeRevenue.

16. Paragraph 54 of the Kirschner Declaration (the "Kirschner Statements," and, collectively, the "Statements") cites the Moore Statements and makes further scandalous and defamatory statements about PrimeRevenue.

17. PrimeRevenue denies the conduct alleged in the Statements. PrimeRevenue is not aware of any evidence to support the Statements. Nor have the FBG Debtors or its professionals provided PrimeRevenue with any evidence to support the Statements.

18. The Statements have damaged PrimeRevenue's reputation with its partner financial institutions who provide the supply chain financing. At least one financial institution partner stated to me directly that it views PrimeRevenue's credibility as being called into question by the Statements.

19. The Statements also have damaged PrimeRevenue's reputation in the supply chain finance industry. On August 25, 2026, a reporter from Global Trade Review writing an article on the Court's Order Denying Plan Confirmation contacted PrimeRevenue and asked for comment on the Court's order and the Kirschner Statements. On August 26, 2026, Global Trade Review published an article that republished the scandalous and defamatory statements about PrimeRevenue contained in the Kirschner Statements. A true and correct copy of the article, redacted so as not to further publicize the Kirschner Statements, is attached hereto as Exhibit A.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of September, 2026.

David Quillian

**Exhibit A**

**(Global Trade Review Article)**

Americas

# Litigation plan against First Brands financing companies "not feasible", court rules



August 26, 2026 15:10 GMT

**By John Basquill**

- Texas bankruptcy court orders First Brands into liquidation
- First Brands had proposed to seek over US$25bn in claims against third-party financiers
- Court finds plan not in keeping with bankruptcy rules

A US bankruptcy court has ruled that a proposal by First Brands to recover billions of dollars through lawsuits against non-bank lenders is "not feasible", ordering instead that the company enters liquidation.

First Brands' court-appointed managers had proposed in June to establish a litigation trust, which would oversee claims and return funds to certain creditors and a group of ad-hoc lenders that

provided US$1.1bn in October to fund the company's operations.

Court documents filed last month argued more than US$25bn was "potentially available" through litigation against third-party financing companies, including Katsumi, Jefferies subsidiary Leucadia Asset Management (LAM), and leasing firm Onset Financial – as well as First Brands founder Patrick James.

Bankruptcy lawyer and consultant Marc Kirschner, who was appointed by First Brands' counsel to provide expert testimony, argued in a July declaration that potential lawsuits could allege that financing companies received payments from a Ponzi scheme, or should have been aware First Brands was carrying out fraud.

However, in an oral order delivered on August 24, Texas bankruptcy Judge Christopher Lopez found the plan was not feasible.

Several creditors had opposed the plan, including Katsumi, LAM and Onset, as well as the Office of the US Trustee. Some argued there was no assurance that litigation would result in billions of dollars being returned to the First Brands estate, and that there was uncertainty over the administrative costs involved.

First Brands and some lenders had argued that many of the objecting creditors were potential targets of litigation "and that's what's really driving their objections", Judge Lopez noted.

For instance, Kirschner's declaration said Katsumi – which was **owed over US$1.7bn** at the time of First Brands' collapse – discovered in 2023 that receivables it had purchased "did not match the underlying invoices".

Although Katsumi informed First Brands of the discrepancies, it continued to finance the company's receivables for two more years, he said. The company also sought to resell purchased receivables after that 2023 audit, the declaration added.

Because Katsumi had "direct evidence of falsified invoices", it knew or should have known payments received were the result of fraud, and so could face liability, Kirschner argued.

He also said LAM should have been aware of potentially fraudulent activity from 2023 onwards, after company executives resisted attempts at due diligence, and added that Jefferies had separately identified possible red flags in First Brands' financial reporting.

Kirschner also suggested litigation could be pursued against PrimeRevenue, a supply chain finance platform used by First Brands.

He said PrimeRevenue [redacted].

A spokesperson for PrimeRevenue said: "We are familiar with the court's ruling and want to make clear that the court did not consider any evidence regarding PrimeRevenue in reaching its ruling. As the First Brands bankruptcy unfolds, we will continue to engage constructively with the process."

A spokesperson for Onset Financial said: "The court's rejection of debtors' flawed plan is another telling sign that their earlier allegations against Onset wholly lack merit."

Katsumi and LAM did not comment when contacted.

Judge Lopez did not assess the merits of Kirschner's arguments, but said objectors argued he was given only "cherry-picked fragments" of information to assess, such as incomplete email chains, rather than carrying out an independent investigation.

Judge Lopez noted that a separate declaration, filed by First Brands interim CEO Charles Moore, a managing director at Alvarez & Marsal, accepted the US$25bn figure but did not make adjustments for potential defences, and provided "no real analysis" about whether claims could be successfully resolved before a 2028 deadline.

He also noted Moore did not take a position on whether federal authorities would seek forfeiture of assets from Patrick James as part of **separate criminal proceedings**, which could limit funds available through litigation.

The judge identified a further issue with the plan relating to special purpose vehicles (SPVs), which are not part of the First Brands estate but are **subject to claims** from some third-party financing companies, such as Evolution Credit Partners.

He said the plan would involve transferring claims from those SPVs, but that First Brands debtors "can't sell what they don't own".

Judge Lopez ordered instead that the company enters Chapter 7 bankruptcy, meaning its remaining assets will be liquidated.

First Brands declined to comment when contacted. Patrick James has denied allegations of fraud.

Tags: First Brands, First Brands Group, Jefferies, Katsumi Global, Leucadia Asset Management (LAM), Onset Financial, PrimeRevenue

## Latest Stories



Americas

August 26, 2026

# Litigation plan against First Brands financing companies “not feasible”, court rules

Case 25-90399 Document 3766-2 Filed in TXSB on 09/04/26 Page 11 of 15



Africa

August 26, 2026

## ETG enlarges sustainability-linked loan from development banks




Mena

August 25, 2026

## Gupta was convicted, then acquitted, in Dubai over Trafigura fraud




Africa

August 25, 2026

## Standard Chartered leads €538mn Angola water project deal

Case 25-90399 Document 3766-2 Filed in TXSB on 09/04/26 Page 14 of 15



Europe

August 25, 2026

## EIFO provides €100mn direct loan for Ukraine wind farm



Asia

August 24, 2026

## IFC partners with Kazakh lender to expand SME trade finance