**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 7** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**SUMMARY COVERSHEET TO THIRD INTERIM FEE APPLICATION OF WEIL, GOTSHAL & MANGES LLP, ATTORNEYS FOR THE DEBTORS, FOR THE PERIOD FROM APRIL 1, 2026 THROUGH AND INCLUDING JUNE 30, 2026**

| | | |
|---|---|---|
| **Name of Applicant:** | Weil, Gotshal & Manges LLP | |
| **Applicant's Role in Case:** | Attorneys for Debtors | |
| **Docket No. of Employment Order(s):** | Docket No. 894 | |
| **Interim Application (x) No. 3**<br>**Final Application ( )** | Third Interim | |
| | **Beginning Date** | **End of Period** |
| **Time period covered by this Application for which interim compensation has not previously been awarded:** | April 1, 2026 | June 30, 2026 |
| **Were the services provided necessary to the administration of or beneficial at the time rendered toward the completion of the case? (Y)** | | |
| **Were the services performed in a reasonable amount of time commensurate with the complexity, importance and nature of the issues addressed? (Y)** | | |
| **Is the requested compensation reasonable based on the customary compensation charged by comparably skilled practitioners in other non-bankruptcy cases? (Y)** | | |
| **Do expense reimbursements represent actual and necessary expenses incurred? (Y)** | | |
| **Compensation Breakdown for Time Period Covered by this Application** | | |
| **Total professional fees requested in this Application:** | | $36,543,138.00 |
| **Total professional hours covered by this Application:** | | 22,765.30 |
| **Average hourly rate for professionals:** | | $1,605.21 |

[1] A complete list of the chapter 11 Debtors may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The address of the Debtors' corporate headquarters is 127 Public Square, Suite 5300, Cleveland, OH 44114.

| | |
|---|---|
| **Total paraprofessional fees requested in this Application:** | $432,283.50 |
| **Total paraprofessional hours covered by this Application:** | 843.70 |
| **Average hourly rate for paraprofessionals:** | $512.37 |
| **Total fees requested in this Application:** | $36,975,421.50 |
| **Total expense reimbursements requested in this Application:** | $283,495.94 |
| **Total fees and expenses requested in this Application:** | $37,258,917.44 |
| **Total fees and expenses awarded in all prior Applications:** | $110,120,049.57 |
| **Plan Status:** On August 24, 2026, the Court denied confirmation of the Plan (Docket No. 3710) and ordered the Debtors' chapter 11 cases be converted to cases under chapter 7 of the Bankruptcy Code. On September 1, 2026, the Court entered an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code (Docket No. 3748). | |
| **Primary Benefits:** During the period covered by the Application, Weil guided the Debtors through their chapter 11 cases by, among other things: (i) advising the Debtors in consummating going-concern sales of the Debtors' Toledo Molding & Die and Horizon North America business lines; (ii) advising the Debtors in consummating numerous asset sales pursuant to the Wind Down Order; (iii) negotiating, drafting, and filing the Plan and Disclosure Statement; (iv) obtaining conditional approval of the Disclosure Statement and commencing solicitation of votes on the Plan; (v) drafting, negotiating, and filing the Plan Supplement and proposed Confirmation Order; and (vi) preparing for a contested confirmation hearing. | |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 7** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**THIRD INTERIM FEE APPLICATION**
**OF WEIL, GOTSHAL & MANGES LLP,**
**ATTORNEYS FOR THE DEBTORS, FOR THE PERIOD**
**FROM APRIL 1, 2026 THROUGH AND INCLUDING JUNE 30, 2026**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Weil, Gotshal & Manges LLP ("**Weil**"), as attorneys for the chapter 11 debtors in the above-captioned cases (collectively, the "**Debtors**" and, together with their non-Debtor subsidiaries, the "**Company**") during the Compensation Period (defined below), hereby files its third application (this "**Application**")[2] for interim allowance of compensation for professional services performed by Weil during the period commencing April 1, 2026 through and including June 30, 2026 (the "**Compensation Period**") in the amount of $36,975,421.50, and for

---

[1] A complete list of the chapter 11 Debtors may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The address of the Debtors' corporate headquarters is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration (as defined herein).

reimbursement of its actual and necessary expenses in the amount of $283,495.94 incurred during the Compensation Period, and respectfully represents as follows:

## Preliminary Statement

1. As detailed in multiple court filings before this Court, the Debtors' chapter 11 cases were among the largest and most complex in history. During the Compensation Period, Weil's professionals continued to guide the Debtors through the chapter 11 process, including by, among other things: (i) negotiating, drafting, and filing the Plan[3] and Disclosure Statement;[4] (ii) obtaining conditional approval of the Disclosure Statement and solicitation procedures (Docket No. 2990); (iii) commencing solicitation of votes on the Plan; (iv) defeating various objections to conditional approval of the Disclosure Statement, as well as the U.S. Trustee's motion to convert or dismiss the chapter 11 cases to cases under chapter 7 (the "**Conversion Motion**"); (v) negotiating, drafting, and filing the Plan Supplement (Docket No. 3046), including the Litigation Trust Agreement, the DIP Collateral Trust Agreement, and the ABL Collateral Trust Agreement; (vi) negotiating, drafting, and filing the proposed Confirmation Order (Docket No. 3604); (vii) negotiating and finalizing an agreed confirmation budget and agreed wind-down budget funded by the Debtors' key stakeholders; (viii) preparing for a contested confirmation hearing (which occurred after the Compensation Period), including drafting supporting declarations, coordinating the retention of an expert witness, and responding to Plan-related discovery served by numerous parties in interest; (ix) negotiating and obtaining Court approval of, and advising on the consummation of, the going-concern sale of the Debtors' Toledo

---

3 The "**Plan**" means the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3448).

4 The "**Disclosure Statement**" means the *Disclosure Statement for the Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3020).

Molding & Die ("**TMD**") business line; (x) negotiating and obtaining Court approval of, and advising on the consummation of, the going-concern sale of the Debtors' Horizon North America business line and a related settlement resolving asset entanglement and intercompany balances with certain non-Debtor subsidiaries based in Europe and Australia; (xi) obtaining Court approval of the sale of intellectual property assets to PGI Northstar, LLC ("**PGI**"); (xii) negotiating and coordinating with the Debtors' other advisors with respect to numerous sales of other assets pursuant to the Wind Down Order (Docket No. 2454); (xiii) defending the adversary proceeding filed by Evolution Credit Opportunity Master Fund II-B, L.P. ("**Evolution**") concerning the Debtors' non-factored receivables (Adv. Pro. No. 26-03006), including obtaining partial summary judgment that Evolution does not hold a perfected security interest in certain receivables and opposing Evolution's motion for leave to appeal; (xiv) negotiating and documenting a settlement resolving Evolution's motion to convert the chapter 11 cases of the Converted SPV Debtors (as defined below) to chapter 7; (xv) managing the Debtors' affirmative litigation, including obtaining a stay of the Debtors' adversary proceeding against their founder, Patrick James, and certain related entities (the "**James Adversary Proceeding**") (Adv. Pro. No. 25-03803, Docket No. 181) in light of the related criminal proceedings against the Debtors' former executives; (xvi) obtaining Court approval of the appointment of a committee of retired employees under section 1114 of the Bankruptcy Code (Docket No. 3060) and commencing negotiations with the retiree committee and unions regarding the modification of the Debtors' retiree benefit arrangements; and (xvii) negotiating a settlement term sheet with the Pension Benefit Guaranty Corporation (the "**PBGC**") regarding the termination of certain of the Debtors' pension plans.

2. The professional services performed and expenses incurred by Weil during the Compensation Period were actual and necessary to preserve and protect the value of the

Debtors' estates and maximize value to creditors in the Debtors' extraordinarily difficult and complex chapter 11 cases. Given the myriad of challenges facing the Debtors and the highly litigious nature of these cases, among other considerations, Weil's fees for professional services performed and expenses incurred are reasonable and appropriate under applicable standards. Accordingly, Weil respectfully requests that the Court grant this Application and allow interim compensation for professional services performed and reimbursement for expenses incurred during the Compensation Period.

## Background

3. In September 2025, First Brands Group, LLC and its Debtor affiliates each filed with the Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

4. On October 9, 2025, the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (Docket No. 313) (the "**Creditors' Committee**").

5. On April 9, 2026, the Court entered an order converting the chapter 11 cases of (i) Patterson Inventory, LLC, (ii) Patterson Inventory Holdings, LLC, (iii) Starlight Inventory I, LLC, and (iv) Starlight Inventory Holdings I, LLC (collectively, the "**Converted SPV Debtors**"), to cases under chapter 7 of the Bankruptcy Code (Docket No. 2396).

6. On September 1, 2026, the Court entered an order converting the chapter 11 cases of the other Debtors to cases under chapter 7 of the Bankruptcy Code (Docket No. 3748) (the "**Conversion Order**").

7. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of the chapter 11 cases is set forth in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions*

(Docket No. 22) (the "**First Day Declaration**"), filed on September 29, 2025 and incorporated herein by reference.

## <u>Jurisdiction and Venue</u>

8. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## <u>Relief Requested</u>

9. The Debtors request approval of Weil's Application. This Application has been prepared in accordance with sections 330(a) and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the *Court Procedures* for Judge Christopher M. Lopez (the "**Court Procedures**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "**UST Fee Guidelines**" and, collectively with the Court Procedures, the "**Fee Guidelines**"), and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Docket No. 699) (the "**Interim Compensation Procedures Order**").

10. A proposed form of order granting the relief requested herein is annexed hereto as **<u>Exhibit A</u>** (the "**Proposed Order**").

## <u>Retention of Weil</u>

11. On October 22, 2025, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 400) (the "**Retention Application**").

12. On December 8, 2025, the Court entered the *Order Authorizing Retention and Employment of Weil, Gotshal and Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 894) (the "**Retention Order**"), approving the Retention Application and authorizing the employment and retention of Weil as of the Petition Date. The Retention Order specifically authorized Weil to provide the following professional services to the Debtors:

a. take all necessary actions to protect and preserve the value of the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiation of disputes in which the Debtors are involved, and the preparation of objections to claims filed against the Debtors' estates;

b. prepare on behalf of the Debtors, as debtors in possession, all necessary motions, applications, answers, orders, reports, and other papers in connection with the administration of the Debtors' estates;

c. take all necessary actions in connection with the investigation, review, analysis, and prosecution, on behalf of the independent Special Committee, of potential claims and causes of action that may be held by the Debtors;

d. take all necessary actions in connection with any value-maximizing transaction the Debtors may pursue, any chapter 11 plan and related disclosure statement and all related documents, and such further actions as may be required in connection with the administration of the Debtors' estates; and

e. perform all other necessary legal services in connection with the prosecution of the chapter 11 cases.

Retention Order ¶ 2.

**Summary of Professional Compensation**
**<u>and Reimbursement of Expenses Requested</u>**

13. Weil seeks interim allowance of compensation for professional services performed during the Compensation Period in the amount of $36,975,421.50 and reimbursement of expenses incurred in connection with the rendition of such services in the amount of $283,495.94. During the Compensation Period, Weil attorneys, paraprofessionals, and non-legal staff expended a total of 23,609.00 hours in connection with the necessary services performed.

During the Compensation Period, Weil voluntarily reduced the amount of fees and expenses requested by $1,283,186.56.

14. There is no agreement or understanding between Weil and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in the chapter 11 cases. During the Compensation Period, other than payment received by Weil on account of monthly fee statements in accordance with the Interim Compensation Procedures Order, Weil received no payment or promises of payment from any source for services rendered, or to be rendered, in any capacity whatsoever in connection with the matters covered by this Application.

15. As set forth in the Retention Application, prior to the commencement of the chapter 11 cases, the Debtors paid fee advances to Weil for professional services to be performed and expenses to be incurred in connection with its representation of the Debtors and in preparation of the Debtors seeking relief under chapter 11 (the "**Fee Advance**"). Based on a reconciliation of all charges and expenses through the date of this Application, the balance of the Fee Advance as of the date of this Application is $69.68.[5]

16. The fees charged by Weil in the chapter 11 cases are billed in accordance with Weil's existing billing rates and procedures in effect during the Compensation Period. The rates Weil charges for the services rendered by its professionals and paraprofessionals in the chapter 11 cases are no greater than the rates Weil charges for professional and paraprofessional services rendered in comparable bankruptcy and non-bankruptcy related matters. Such fees are

---

[5] In addition to, and separate and apart from, the Fee Advance, Weil holds (i) a retainer from Debtor Global Assets GmbH in the amount of $50,000.00 and (ii) fee advances from (a) non-Debtor subsidiary Talleres Mecanicos Montserrat, S.A. de C.V. in the amount of $30,000.00 and (b) non-Debtor subsidiary BPI Distribution Mexico S.A. de C.V. in the amount of $30,000.00.

reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy matters in a competitive national legal market.

## Supporting Documents

17. Attached hereto as **Exhibit B** is the Certification of Sunny Singh, a partner of Weil (the "**Singh Certification**"), regarding Weil's compliance with the Fee Guidelines.

18. Attached hereto as **Exhibit C** is a schedule of all Weil attorneys and paraprofessionals who have performed services for the Debtors during the Compensation Period, the capacities in which each individual is employed by Weil, the department in which each individual practices, the hourly billing rate charged by Weil for services performed by such individuals, the year in which each attorney was first licensed to practice law, where applicable, and the aggregate number of hours expended in this matter and fees billed in connection therewith (the "**Schedule of Professional Fees**").

19. Weil maintains computerized records of the time spent by all Weil attorneys and paraprofessionals in connection with the prosecution of the chapter 11 cases. Attached hereto as **Exhibit D** is a schedule of Weil's computerized time records billed during the Compensation Period using project categories hereinafter described in the format specified by the Fee Guidelines (the "**Time Records**").

20. Attached hereto as **Exhibit E** is an itemized schedule of the expenses for which Weil is seeking reimbursement and a summary specifying the categories of expenses included in the schedule and the total amount for each such expense category (the "**Expenses**").

21. Attached hereto as **Exhibit F** is a summary and comparison of the aggregate blended hourly rates billed by Weil's New York timekeepers to non-bankruptcy matters during the prior twelve-month period ending July 31, 2026, and the blended hourly rates billed to the Debtors during the Compensation Period (the "**Blended Rate Comparison Chart**").

22. Attached hereto as **Exhibit G** is a budget prepared in connection with Weil's representation of the Debtors for the Compensation Period (the "**Budget**").

23. Attached hereto as **Exhibit H** is a summary of Weil's staffing plan. Attorneys and paraprofessionals assigned to this matter were necessary to assist with the prosecution of the Debtors' chapter 11 cases, preservation of the Debtors' assets, and other matters described herein.

24. To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, Weil reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application to the Court.

**Summary of Professional Services**
**Rendered During Compensation Period**

25. During the Compensation Period, Weil professionals expended significant time and effort in rendering services to the Debtors including by, among other things, (i) negotiating, drafting, and filing the Plan and the Disclosure Statement, obtaining conditional approval of the Disclosure Statement, and commencing solicitation of votes on the Plan; (ii) negotiating and obtaining Court approval of multiple going-concern sales; (iii) negotiating numerous asset sales pursuant to the Wind Down Order; and (iv) managing the Debtors' numerous litigations and adversary proceedings. The below summary is organized in accordance with Weil's internal time-tracking system and broken down by project or task codes applicable to work performed for the Debtors. Certain services performed may overlap between, or appropriately be allocated to, more than one task code. If a task code does not appear below, then Weil did not bill significant time for that task code during the Compensation Period.

a. Administrative Expense Claims (Task Code 001)
Fees: $244,999.00; Total Hours: 162.90

- Negotiated with various counterparties to resolve asserted administrative expense claims, including by negotiating, drafting, and entering into five (5) stipulations providing for the allowance of administrative expense claims, thereby avoiding the cost attendant to litigating motions to compel payment of such claims (Docket Nos. 2558, 2565, 2597, 2615, and 2883);

- Coordinated with the Debtors' other advisors to review and analyze invoices, proofs of claim, payment demands, and supporting documentation submitted by vendors and other counterparties in support of asserted administrative expense claims to identify the extent to which claims could be disputed, reduced, or eliminated;

- Drafted objections and responses to motions to compel payment of administrative expense claims, including filing the Debtors' objection to Total Quality Logistics' administrative expense claim motion (Docket No. 3145);

- Analyzed claims asserted in administrative expense claim application filed by Longkou Haimeng Machinery Co. Ltd. (Docket No. 2569), prepared objection in response to application, negotiated with such counterparty regarding potential claim resolution and extensions of time to respond to application, and coordinated with the Debtors' key stakeholders regarding the same;

- Conducted legal research and precedent analysis in connection with Longkou's administrative expense claim application;

- Coordinated with the Debtors and the Debtors' other advisors regarding the reconciliation and sizing of asserted aggregate administrative expense and priority claims for purposes of supporting the proposed Plan; and

- Maintained trackers of administrative expense claim motions and stipulations and calendared dates and deadlines for both internal and external reference.

b. Adversary Proceedings (Task Code 002)
Fees: $223,900.50; Total Hours: 131.60

- Managed the Debtors' affirmative litigation strategy, including the James Adversary Proceeding and the Debtors' adversary proceeding against Onset Financial, Inc. ("**Onset**") (Adv. Pro. No. 26-03005) (the "**Onset Adversary Proceeding**");

- Drafted, revised, and filed the *Emergency Motion for Clarification of Case Deadlines* (Adv. Pro. 25-03803, Docket No. 187) in the James Adversary Proceeding in light of the related criminal proceedings, conducted legal research and analysis in connection therewith, and obtained Court approval of the *Order Granting Case Deadline Clarification* (Adv. Pro. 25-03803, Docket No. 195), pursuant to which all case deadlines have been held in abeyance pending the issuance of a scheduling order;

- Negotiated with counsel to each defendant, and prepared and filed a joint statement and proposed scheduling order regarding the case schedule in the James Adversary Proceeding (Adv. Pro. 25-03803, Docket No. 179);

- Drafted and filed the (i) *Opposition to Onset Financial, Inc.'s Amended Motion to Reconsider the Order Staying Adversary Case Deadlines and Discovery* (Adv. Pro. 26-03005, Docket No. 109), (ii) *Motion to Extend the Stay of Adversary Case Deadlines and Discovery* (Adv. Pro. 26-03005, Docket No. 125), and (iii) *Reply in Support of the Debtors' Motion to Extend the Stay of Adversary Case Deadlines and Discovery* (Adv. Pro. 26-03005, Docket No. 135), and obtained the *Order Extending Stay of Adversary Case Deadlines and Discovery* (Adv. Pro. 26-03005, Docket No. 136), pursuant to which the Onset Adversary Proceeding was stayed until the resolution of the appeal on the order staying discovery in the James Adversary Proceeding;

- Negotiated, drafted, and filed the *Joint Statement of the Debtors, Wilmington Savings Fund, FSB, GLAS USA LLC, the ABL Lenders, Peter Andrew Brumbergs, Patrick James and the Related Entities, Stephen Graham, Shekhar Kumar, Edward James, JCMC Investment Group, LLC, and Optimus Private Capital LLC Regarding Case Schedule* (Adv. Pro. 26-03005, Docket No. 133);

- Drafted and filed the *Statement Regarding the Order Extending the Stay of Adversary Case Deadlines and Discovery* (Adv. Pro. 26-03005, Docket No. 139);

- Drafted and filed the *Statement of the Debtors Regarding Status of Criminal Proceeding and the Continued Stay in this Adversary Proceeding* (Adv. Pro. 26-03005, Docket No. 144);

- Reviewed and responded to correspondence and document demands from counsel to Patrick James, including preparing responsive letters and analyzing related access, preservation, and privilege issues;

- Reviewed hearing transcripts, pleadings, and case correspondence and coordinated with opposing counsel regarding meet-and-confer obligations, scheduling, and discovery in the James and Onset Adversary Proceedings;

- Analyzed issues relating to the criminal proceedings against the Debtors' former executives, including criminal forfeiture considerations;

- Prepared, drafted, and filed the *Defendant Debtors' Answer to Complaint* (Adv. Pro. Docket No. 21) and *Defendant Debtors' Amended Answer to Complaint* (Adv. Pro. Docket No. 25) in *Bank of America, N.A. v. Aequum Capital Financial II LLC*, Adv. Pro. No. 26-03091 (CML) (Bankr. S.D. Tex.); and

- Analyzed and responded to a document request received from the Debtors' insurers in connection with the adversary proceedings.

c. <u>Asset Sales / 363 Matters (Task Code 003)</u>
Fees: $11,780,685.00; Total Hours: 7,840.40

- Obtained Court approval (Docket No. 2399) of the sale of intellectual property to PGI, drafted and filed a reply to objections filed in connection therewith (Docket No. 2325), and coordinated, negotiated, and drafted definitive documentation regarding follow-up asset sales of related assets to purchaser pursuant to the Wind Down Order;

- Negotiated and obtained Court approval (Docket No. 2675) of the going-concern sale of TMD, and drafted the motion and reply to responses filed in connection therewith (Docket Nos. 2590 & 2651);

- Coordinated with several objecting parties regarding proposed cure costs and comments in connection with sale of TMD;

- Negotiated and drafted the purchase agreement, transition services agreement, disclosure schedules, and ancillary transaction documents for the sale of TMD;

- Negotiated and obtained Court approval (Docket No. 2800) of the going-concern sale of the Debtors' Horizon North America business line and the settlement and sale agreement between Debtor and non-Debtor subsidiaries based in Europe and Australia ("**Horizon Europe**"), thereby resolving intercompany and collateral issues relating to the Horizon Europe separation;

- Drafted the motions (Docket Nos. 2711 & 2719), supporting declarations (Docket Nos. 2720 and 2723), and motion to file related commercially sensitive information under seal (Docket No. 2725), and prepared intercompany claim and collateral analyses in connection with the Horizon sale and settlement;

- Negotiated definitive documentation and mutual release provisions for Horizon Europe settlement order with various parties, including Horizon Europe, the DIP Lenders, the ABL Lenders, and Onset;

- Managed and advised the Debtors in effectuating the closing process for the Horizon North America sale transaction and Horizon Europe settlement;

- Negotiated with key original equipment manufacturer ("**OEM**") customer regarding potential going-concern sale or, alternatively, purchase of equipment related to assets located in Mexico, including analyzing cross-border concerns and tax implications of the same;

- Conducted due diligence and legal research regarding the assets and business lines subject to the sale transactions, including with respect to real property, intellectual property, permits, data privacy, ownership issues, employee issues, and cross-border issues;

- Coordinated with Hilco and the Debtors' other advisors regarding the liquidation of certain remaining inventory, machinery and equipment, and intellectual property, pursuant to the Wind Down Order (such sales, collectively, the "**Wind Down Sales**"), and negotiated and drafted purchase agreements and related documentation in connection therewith;

- Drafted and filed notices expanding the list of business units covered by the Wind Down Order (Docket Nos. 2686 and 2829);

- Prepared witnesses, declarations, exhibits, demonstratives, and hearing materials in support of various sale transactions;

- Negotiated the Wind Down Order with multiple stakeholders, including the ABL Lenders, the Ad Hoc Group, certain lenders and other financing parties of the SPV Debtors (as defined in the Plan), landlords, and other parties in interest;

- Drafted transaction documentation and memoranda for going-concern, asset, and liquidation sales, including related form bills of sale, side letters, and Wind Down Sale notices, in connection with Wind Down Sales;

- Coordinated with several parties in interest with respect to their objections and questions with respect to the various proposed Wind Down Sales;

- Negotiated and documented Hilco's engagement for the Wind Down Sales of certain assets, including certain machinery and equipment, intellectual property, and real estate, negotiated a related engagement arrangement with CarVal, and coordinated with several parties in interest with respect to their objections and comments thereto;

- Attended to post-closing obligations arising from the Walbro sale, including entity name changes, governance and equity sale documentation, real property transfer taxes, and foreign intellectual property assignment and recordation matters;

- Drafted marketing materials and populated virtual data room in connection with the marketing of estate claims and causes of action, drafted and reviewed related non-disclosure agreements, and engaged with multiple potential bidders to solicit bids in connection with the sale of estate claims;

- Negotiated and drafted asset purchase agreements, disclosure schedules, access agreements, and related documentation for the PGI sale transactions, including with respect to related information technology, data retention, lease, and intellectual property matters;

- Negotiated and documented numerous discrete Wind Down Sales of inventory, machinery and equipment, and real property, together with related letters of intent, bills of sale, site access agreements, and landlord side letters where applicable;

- Conducted lien and UCC diligence, compiled permitted-liens schedules, and coordinated lien releases in connection with the sale transactions;

- Analyzed purchase price and sale-proceeds allocation issues in coordination with the Debtors' other advisors and the applicable OEMs;

- Analyzed cross-border data privacy and data transfer issues arising from the sale transactions and negotiated related data processing agreements and addenda;

- Coordinated with local counsel in India and Mexico regarding cross-border signing and closing deliverables for the sale transactions, including share transfers, director resignations and appointments, powers of attorney, apostilles, and local filings;

- Prepared, negotiated, and coordinated the recordation of foreign intellectual property assignments, powers of attorney, and domain name transfers arising from the sale transactions across numerous jurisdictions; and

- Coordinated the transition of wind-down and liquidation sale workstreams to Katten Muchin Rosenman LLP ("**Katten**"), as successor wind down counsel to the Debtors, including preparing transition memoranda, summary charts, and document compilations.

d. Aequum Matters (Task Code 004)
Fees: $373,849.00; Total Hours: 274.30

- Prepared for and defended depositions in the adversary proceeding between Bank of America, N.A. ("**BofA**") and Aequum (Adv. Pro. No. 26-03091) (the "**Aequum Adversary Proceeding**"), including preparation of witnesses and deposition materials;

- Reviewed and analyzed discovery, including document productions and interrogatory responses, and coordinated with counsel to BofA and other parties regarding deposition scheduling;

- Analyzed the Creditors' Committee's motion for standing to pursue claims against Aequum (Docket No. 2881) and related lien validity issues, and coordinated with the Special Committee and its counsel regarding the same;

- Reviewed prior stipulations and proposed orders relating to adequate protection of Aequum;

- Prepared for and attended hearings and a court conference concerning the Aequum Adversary Proceeding;

- Reviewed and analyzed the adversary complaint filed by the ABL Lenders and the Ad Hoc Group against Aequum in the Aequum Adversary Proceeding, and drafted, revised, and filed the Debtors' answer to the same; and

- Corresponded with conflicts counsel to the SPV Debtors regarding the Aequum Adversary Proceeding.

e. Case Administration (Docket, WIP and Calendar Updates Only) (Task Code 010)
Fees: $280,095.00; Total Hours: 200.20

- Coordinated with the Debtors' claims and noticing agent to update and file master services lists;

- Prepared and regularly updated case calendars, motion trackers, comprehensive work-in-process lists, and other chapter 11 resources for the Debtors, Weil, and the Debtors' other advisors;

- Responded to inquiries received through the Debtors' hotline and from other parties in interest, reviewed the claims and noticing agent's inquiry logs, and prepared periodic summaries of creditor inquiries; and

- Prepared and maintained organizational charts reflecting the Debtors' corporate structure and the effect of the sale transactions.

f. Chapter 11 Plan/Confirmation/Implementation (Task Code 011)
Fees: $6,097,181.00; Total Hours: 3,577.40

- Drafted, revised, negotiated, and filed the Plan and multiple revised versions thereof (Docket Nos. 2544, 2678, 2733, 2784, 2907, & 3019);

- Engaged in extensive negotiations with the Ad Hoc Group, the ABL Lenders, the Creditors' Committee, and other parties in interest regarding the Plan structure, claims treatment, settlements, releases, implementation mechanics, and other Plan-related issues;

- Drafted, negotiated, and filed numerous documents contained in the Plan Supplement (Docket No. 3046), including the Litigation Trust Agreement, the DIP Collateral Trust Agreement, the ABL Collateral Trust Agreement, the Litigation Trust Backstop Agreement, the Schedule of Retained Causes of Action, the schedule of Specified Non-Released Parties, and disclosures regarding the Wind Down Administrator and the Claims Ombudsman;

- Negotiated and finalized agreed confirmation and wind-down budgets with the Ad Hoc Group and the ABL Lenders;

- Prepared for the hearing on confirmation of the Plan, including drafting and revising the proposed confirmation order, supporting declarations (including the Moore Declaration and Kirschner Declaration), evidence maps, witness outlines, and supporting evidentiary materials;

- Conducted legal research on numerous issues in connection with plan confirmation;

- Coordinated with the Debtors' other advisors regarding claims, recovery, and distribution analyses in support of confirmation;

- Drafted and served responses and objections to plan-related discovery requests received from Katsumi, Evolution, LAM, Onset, and other parties in interest and coordinated related document productions;

- Coordinated with the Debtors, the Debtors' other advisors, and multiple stakeholder groups regarding plan implementation, including wind-down administration, trust formation, and administrative and priority claim reconciliation;

- Negotiated potential joint prosecution arrangements with stakeholders;

- Coordinated with the Ad Hoc Group and proposed Litigation Trustee in connection with the potential transfer of estate claims and related materials to the Litigation Trust, including preparing transition packages and

presentations regarding potential estate claims and causes of action, meeting with the proposed Litigation Trustee, and populating a related data room;

- Coordinated the retention of Marc S. Kirschner as an expert consultant in connection with confirmation, including conducting research regarding expert retention structures, conferring with Mr. Kirschner regarding the scope of the engagement, and reviewing and revising the related engagement letter;

- Participated in recurring working-group calls with the Debtors' other advisors and responded to creditor inquiries regarding the Plan and treatment thereunder; and

- Reviewed and summarized the Debtors' supply chain financing agreements in connection with the settlements embodied in the Plan.

g. Corporate Governance (Including Board Meetings) (Task Code 012)
Fees: $687,944.00; Total Hours: 402.10

- Prepared materials for, and participated in, approximately twenty-one (21) regular and ad hoc meetings of the special committees of the board of managers of First Brands Group Holdings, LLC, First Brands Group Intermediate, LLC, First Brands Group, LLC, and Viceroy Holdings, LLC (the "**Special Committee**") regarding the status of multiple sale transactions, the Horizon Europe settlement, the Plan process, wind-down matters, and DIP forbearance issues, and drafted minutes for Special Committee meetings;

- Advised the Special Committee regarding the chapter 11 cases, including with respect to fiduciary duty considerations, transactional authority, including actions required to authorize and consummate multiple sale and settlement transactions, and the review of released parties in connection therewith, and provided regular updates regarding the chapter 11 plan negotiations, ongoing sale and settlement processes, wind-down activities, litigation matters, and employee matters;

- Prepared and reviewed corporate governance documents, including written consents, board and Special Committee resolutions, and officer and director appointments and replacements, and updated organizational charts, in each case to authorize and effectuate the sales of TMD, Horizon, Walbro, the PGI transactions, the Horizon Europe settlement, the wind down of the Debtors' remaining operations and assets, and other sale and settlement transactions and related releases, including the sale of certain ASC equipment; and

- Addressed ongoing administrative and regulatory compliance matters, including coordinating with CT Corporation and Alvarez & Marsal

regarding annual reports and good standing certificates, managing know-your-customer (KYC) requirements for the Debtors' entities, and preparing Walbro name change documents.

h. Customer / Vendor / Supplier / Reclamation / 503(b)(9) Issues (Task Code 013)
Fees: $336,210.50; Total Hours: 241.90

- Negotiated with vendors, suppliers, and customers regarding continued performance, open payment issues, claims issues, and maintenance or resolution of commercial relationships;
- Drafted and negotiated vendor stipulations, automatic stay letters, customer indemnification agreements, and other correspondence to document commercial understandings to resolve vendor claims and disputes, including to abandon products and equipment to logistics providers where necessary;
- Participated on regular vendor calls with the Debtors and the Debtors' other advisors and maintained trackers of vendor and customer inbound inquiries and coordinated with the Debtors and the Debtors' other advisors regarding responses to the same; and
- Conducted diligence and research regarding various matters related to vendor and customer issues, including review and analysis of various vendor and customer contracts and related asserted claims, preparing recoupment and setoff analysis, preparing accounts receivable reconciliations, and preparing access and tooling retrieval agreements.

i. DIP Financing / Cash Collateral / Cash Management (Task Code 014)
Fees: $127,508.00; Total Hours: 73.00

- Reviewed and analyzed DIP reporting, DIP Order provisions, and DIP maturity considerations, and advised the Debtors regarding compliance with the DIP Order;
- Negotiated and drafted a DIP maturity extension term sheet and a related motion and documentation, analyzed and negotiated a forbearance under the DIP credit agreement with the Ad Hoc Group, and coordinated with the Debtors' other advisors regarding the same;
- Analyzed and negotiated issues relating to ABL inventory, segregated sale proceeds, collateral, and relative lien priorities and reviewed prior orders and stipulations in connection therewith;
- Drafted and revised a motion and proposed order authorizing a credit bid of DIP obligations in connection with the sale of certain collateral;

- Advised the Debtors regarding cash management matters, including the opening of new bank accounts and amending the bank account agent agreement;

- Analyzed letter of credit issues, including with respect to the RBC letters of credit and a related stipulation; and

- Conducted lien and collateral diligence, including bringdown lien searches, UCC termination review, and the preparation of payoff letters and lender lists.

j. Disclosure Statement/Solicitation/Voting (Task Code 015)
Fees: $2,593,036.00; Total Hours: 1,712.70

- Drafted, revised, negotiated, and filed the Disclosure Statement and multiple revised versions thereof (Docket Nos. 2545, 2692, 2738, 2786, 2912, & 3020), filed numerous pleadings in connection therewith, including a motion seeking conditional approval of the Disclosure Statement, a revised version, and a reply in support thereof (Docket Nos. 2546, 2741, & 2914), and obtained conditional approval thereof (Docket No. 2990);

- Drafted, negotiated, revised, and filed the proposed order conditionally approving the Disclosure Statement attaching the Solicitation and Voting Procedures, in addition to all other procedures, forms, and notices to be sent out with the Disclosure Statement in connection with solicitation and multiple revised versions thereof (Docket Nos. 2546-1, 2779, & 2914-1);

- Developed, conducted legal research in connection with, and documented procedures for implementing the proposed Administrative Expense Claims Consent Program and the Preference Settlement;

- Participated on multiple calls and coordinated with the Debtors' claims, noticing, and solicitation agent and the Debtors' other advisors regarding the solicitation of votes on the Plan, including the preparation of notices, ballots, opt-in forms, solicitation packages, and the solicitation and confirmation timeline, and responded to creditor solicitation inquiries;

- Reviewed and coordinated the Creditors' Committee's position letter for inclusion in the solicitation packages;

- Negotiated and drafted stipulations under Bankruptcy Rule 3018(a) resolving voting issues and conducted legal research in connection therewith;

- Drafted and prepared the Liquidation Analysis in coordination with the Debtors' other advisors; and

- Prepared witness and exhibit lists, demonstratives, and witness preparation materials for the hearings on conditional approval of the Disclosure Statement.

k. Employee Issues / Communications (Task Code 016)
Fees: $3,441,279.50; Total Hours: 1,924.10

- Negotiated, drafted, filed, and obtained Court approval of the *Stipulation, Agreement, and Order Approving Memoranda of Agreement Regarding Paid Time Off* (Docket No. 2609);

- Negotiated, drafted, and filed the *Emergency Motion of Debtors for Order (i) Authorizing and Directing the United States Trustee to Appoint a Committee of Retired Employees and (ii) Granting Related Relief* (Docket No. 3017) (the "**Retiree Committee Motion**") and obtained Court approval of same (Docket No. 3060);

- Drafted and revised the *Motion of Debtors for an Order (i) Directing Trustee to Turn Over and Deliver Trust Assets to the Debtors, (ii) Authorizing the Debtors to Exercise Ownership Rights Over Such Assets, (iii) Authorizing Termination of Trust, (iv) Authorizing Termination of Deferred Compensation Plan Effective as of Petition Date, and (v) Granting Related Relief* (Docket No. 3109), which was filed after the Compensation Period;

- Conferred with the Debtors, the Debtors' other advisors, the Debtors' stakeholders, and internally regarding various employee-related matters;

- Analyzed and addressed employee-related matters under state, federal, and foreign law in connection with, among other things, employee benefits, pension plans, collective bargaining and union issues, compensation, employee terminations, severance, and facility closures;

- Advised on labor issues related to the Debtors' sale processes, including employee transition mechanics, employee leasing arrangements, pension plan transfers, and union and successor liability considerations;

- Analyzed, conducted legal research, and prepared memoranda on issues related to collective bargaining agreements and modification of the Debtors' retiree benefit arrangements under section 1114 of the Bankruptcy Code, including drafting the *Emergency Motion of Debtors for Order (i) Authorizing Debtors to Modify Retiree Benefits and (ii) Granting Related Relief* (Docket No. 3194), which was filed after the Compensation Period, preparing section 1114 settlement proposals and term sheets, and negotiating the same with the United Automobile, Aerospace and Agricultural Implement Workers of America ("**UAW**") and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial

and Service Workers International Union on behalf of Local Union No. 4863 ("**USW**" and, together with UAW, the "**Unions**");

- Advised the Debtors regarding the termination of various pension plans, including negotiating and drafting a settlement term sheet, settlement agreement, and proposed stipulation with PBGC, analyzing termination premium and 401(h) retiree medical account issues, coordinating with the plans' actuaries regarding annuitization and plan data, and coordinating with PBGC regarding notices of intent to terminate, plan trusteeship, and related communications;

- Advised the Debtors regarding the wind down and termination of employee benefit plans, including the Debtors' 401(k) plan, short-term disability plan, group health plan run-out arrangements and a related escrow, and retiree life, vision, and dental programs, and analyzed COBRA controlled-group liability issues;

- Prepared and revised WARN Act notices and extension notices in connection with facility closures and analyzed WARN Act considerations relating to wind-down retention structures;

- Negotiated and drafted employee-related stipulations and agreements (Docket Nos. 2275, 2319, 2320);

- Prepared contractor and consulting agreements to retain wind-down personnel following facility closures and advised regarding related compensation and paid-time-off matters; and

- Considered issues related to employee communications and drafted communications regarding the same in coordination with the Debtors' other advisors.

l. <u>Evolution Matters (Task Code 017)</u>
Fees: $1,521,729.00; Total Hours: 997.60

- Drafted and filed the *Debtors' Response to Evolution's Emergency Motion for Entry of an Order Converting Chapter 11 Cases of Certain SPV Debtors to Chapter 7* (Docket No. 2283);

- Negotiated, drafted, and filed a motion and declaration in support of a settlement in connection with the consensual conversion of the chapter 11 cases of the Converted SPV Debtors to cases under chapter 7 of the Bankruptcy Code, and obtained Court approval of the same (Docket Nos. 2372, 2373);

- Negotiated, drafted, filed, and obtained Court approval of the agreed *Order (I) Converting Chapter 11 Cases of Evolution SPV Debtors to Cases Under Chapter 7; and (II) Granting Related Relief* (Docket No. 2396);

- Defended the adversary proceeding filed by Evolution concerning the Debtors' non-factored receivables (Adv. Pro. No. 26-03006) (the "**Evolution Adversary Proceeding I**"), including obtaining a ruling granting the Debtors partial summary judgment finding that Evolution does not hold a perfected security interest in the non-factored receivables (Adv. Pro. No. 26-03006, Docket No. 67), and opposing Evolution's motion for leave to appeal (Adv. Pro. No. 26-03006, Docket No. 81);

- Coordinated with the chapter 7 trustee appointed for the Converted SPV Debtors regarding turnover demands, document productions, accounts receivable matters, and related transition matters, and prepared final reports for the Converted SPV Debtors;

- Reviewed and analyzed Evolution documents and discovery and coordinated with the Debtors' other advisors and Weil practice groups regarding Evolution litigation strategy;

- Prepared and filed schedules of assets and liabilities, statements of financial affairs, a creditor matrix, and global notes for the Converted SPV Debtors and prepared for and attended the section 341 meeting of creditors for the Converted SPV Debtors;

- Drafted, revised, and served the *Debtors' Amended Answer to Plaintiffs' Complaint and Affirmative Defenses* (Adv. Pro. No. 26-03006) (Docket No. 84) in the Evolution Adversary Proceeding I and responses and objections to Evolution's document requests and interrogatories; and

- Drafted and filed a motion to withdraw as counsel to the Converted SPV Debtors and obtained Court approval thereof (Case No. 25-90392, Docket No. 53).

m. <u>Exclusivity (Task Code 018)</u>
Fees: $144,519.00; Total Hours: 102.30

- Drafted, revised, and filed the Debtors' second motion to extend the exclusive filing and solicitation periods (Docket No. 2522);

- Analyzed and conducted legal research in connection with *Onset Financial, Inc.'s Opposition to Motion of Debtors for an Order Further Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (Docket No. 2714);

- Reviewed and revised reply in support of the Debtors' further extension of exclusivity and in opposition to Onset's objection; and
- Negotiated consensual resolution of Onset's objection to the Debtors' second exclusivity motion.

n. Executory Contracts/Leases/365 (Task Code 019)
Fees: $585,924.50; Total Hours: 422.80

- Negotiated, drafted, filed, and obtained Court approval of numerous stipulations and agreed orders with landlords extending the time within which the Debtors may assume or reject unexpired leases of nonresidential real property under section 365(d)(4) of the Bankruptcy Code (Docket Nos. 2404, 2406, 2407, 2409, 2420, 2430, 2432, 2436, 2437, 2455, 2474, 2475, 2486, 2490, 2495, 2498, 2507, 2508, 2509, 2510, 2511, 2513, 2517, 2518, 2855, 2891, 2985, 3030, 3047, and 3095);
- Drafted and filed four (4) notices of rejection of unexpired leases and executory contracts and abandonment of property in connection therewith (Docket Nos. 2521, 2557, 2687, and 3094);
- Negotiated, drafted, and filed numerous stipulations rejecting contracts and unexpired leases, modifying lease terms, and resolving related motions and objections (Docket Nos. 2287, 2421, 2426, 2431, 2444, and 2608);
- Conducted analysis, due diligence, and legal research regarding the Debtors' obligations under their leases and agreements, cure costs, the implications of assumption, assignment, and rejection, rent disputes and payment obligations, environmental obligations relating to rejected or abandoned leased premises, and mechanics lien removal issues;
- Responded to contested landlord and lessor motions, including negotiating adjournments of Crown's motion to compel and the resolution of motions filed by MAC Materials and Toyota;
- Addressed facility access disputes with landlords and negotiated related access agreements and demand letters; and
- Conferred with the Weil real estate team and other Weil practice groups, the Debtors, the Debtors' other advisors, landlords, and contract counterparties, and successor counsel regarding various executory contract and unexpired lease matters.

o. Other Factoring / Inventory Financing / Supply Chain Financing (Task Code 020)
Fees: $153,740.50; Total Hours: 94.40

- Drafted and filed the *Debtors' Motion for an Order Authorizing the Release of Certain Funds from the Factored Receivables Account in Accordance with Prior Order and Stipulation with Third-Party Factors and Disbursement of Such Funds to the ABL Agent* (Docket No. 3039), negotiated with various parties, including multiple third-party factors, with respect thereto, and reviewed and analyzed Evolution's motion to stay the relief requested therein (Docket No. 3085);

- Negotiated, drafted, filed, and obtained Court approval of the *Stipulation and Agreed Order Further Extending Deadline to Assert Claim to Any Invoice Relating to Released Funds* (Docket No. 2295) and the *Amended Stipulation and Agreed Order Further Extending Deadline to Assert Claim to Any Invoice Relating to Released Funds* (Docket No. 2302);

- Analyzed third-party factors' claims and the factoring workstream in connection with the Plan and Disclosure Statement;

- Distributed weekly reporting regarding segregated prepetition accounts receivable to third-party factors; and

- Prepared and responded to multiple discovery and diligence requests from third-party factors and coordinated substantial document production in connection with the reconciliation of prepetition accounts receivable and related factoring workstream.

p. General Case Strategy (Team and Client Calls) (Task Code 021)
Fees: $148,020.50; Total Hours: 62.60

- Prepared for and participated in regular meetings, teleconferences, and videoconferences with the Debtors' management team, various stakeholders, and the Debtors' other advisors to discuss case strategy and issues;

- Conducted numerous internal team meetings, teleconferences, and videoconferences regarding the status and administration of the Debtors' chapter 11 cases, general case strategy, and the various workstreams described in this Application; and

- Responded to a large volume of emails, calls, and correspondence related to the chapter 11 cases, including with respect to the workstreams, issues, and matters described in this Application.

q. Hearings and Court Matters (Task Code 022)
Fees: $1,354,934.50; Total Hours: 990.20

- Prepared for and represented the Debtors at hearings and status conferences, including hearings in connection with the Debtors' intellectual property sale motion, the Wind Down Motion (Docket No. 2216), the TMD sale motion (Docket No. 2590), the Horizon sale and Horizon Europe settlement motions, conditional approval of the Disclosure Statement, the Conversion Motion, the Retiree Committee Motion, the WARN Adversary Proceedings (as defined below), the Evolution Adversary Proceeding I, the CarVal and Onset lift-stay motions, and the Aequum dispute;

- Coordinated the scheduling and noticing of the combined hearing on final approval of the Disclosure Statement and confirmation of the Plan;

- Prepared, filed, and arranged service of various motions, notices, and other documents, including notices of hearing dates, hearing agendas, proposed orders, certificates of no objection, witness and exhibit lists, and demonstratives;

- Prepared witnesses, declarations, and evidence in support of the relief requested in the filings described herein; and

- Consulted with the Court's chambers regarding case matters and scheduling and prepared materials for hearings.

r. Non-Debtor Subsidiary Matters (Task Code 024)[6]
Fees: $1,051,630.00; Total Hours: 665.00

- Advised the Debtors and coordinated with local counsel regarding the wind down and disposition of remaining non-Debtor subsidiaries across multiple jurisdictions;

- Strategized, negotiated, and drafted corporate governance and other documentation relating to non-Debtor subsidiaries;

- Analyzed intercompany claims, intercompany transfers, and shared services arrangements between the Debtors and certain non-Debtor subsidiaries;

[6] Prior to December 1, 2025, Weil billed time related to services to the Debtors' RoW non-Debtor affiliates (the "**RoW Entities**") under Task Code 024. However, beginning on December 1, 2025, Weil created new task codes and billed time related to the (i) Ultinon RoW Entities under Task Code 043, (ii) Horizon RoW Entities under Task Code 044, (iii) FMP RoW Entities under Task Code 045, and (iv) other RoW Entities, including those associated with Trico Europe, Airtex, Brakes, and other various South American businesses, under Task Code 046. Additionally, beginning on April 8, 2026, Weil created an additional new task code and billed time related to sales involving other non-Debtor subsidiaries under Task Code 049.

- Coordinated with the Debtors and the Debtors' other advisors regarding information requests from local insolvency officeholders, courts, and creditors of the various non-Debtor subsidiaries;

- Conducted legal research regarding the authority required to direct non-Debtor subsidiaries into local insolvency proceedings;

- Coordinated the handover of certain rest-of-world ("**RoW**") workstreams, including inbound purchaser interest in respect of the RoW Entities, to Katten;

- Engaged, instructed, and coordinated with local counsel across more than a dozen jurisdictions, including Germany, Italy, Poland, Romania, the Netherlands, Luxembourg, France, Canada, Mexico, Brazil, India, China, Hong Kong, Thailand, Malaysia, and Australia, in connection with the orderly wind down of the remaining non-Debtor subsidiaries;

- Prepared and maintained a comprehensive wind down tracker, entity structure charts, and an insolvency background memorandum covering the remaining non-Debtor entities;

- Prepared board materials, shareholder and board resolutions, and corporate authorizations to effect governance changes and director appointments and resignations at the non-Debtor subsidiaries; and

- Coordinated the engagement of the proposed liquidators of certain Hong Kong non-Debtor subsidiaries and advised regarding related statutory filing, deregistration, and audit workstreams for the Hong Kong entities.

s. <u>Onset Matters (Task Code 028)</u>
Fees: $738,166.00; Total Hours: 496.10

- Drafted and filed the *Debtors' Response to Onset Financial Inc.'s Emergency Motion (1) for Relief from the Automatic Stay, and (2) to Enforce the Onset AP Order* (Docket No. 2306);

- Negotiated, drafted, and filed the *Stipulation and Agreed Order Enforcing the Onset AP Order and Resolving, in Part, Onset Financial, Inc.'s Emergency Motion* (Docket No. 2841) and obtained Court approval of same (Docket No. 2871);

- Analyzed, researched, and drafted the *Opposition to Onset Financial, Inc.'s Amended Motion to Reconsider the Order Staying Adversary Case Deadlines and Discovery* (Adv. Pro. No. 26-03005, Docket No. 109) in opposition to Onset's motion for reconsideration of the Court's stay order in the Onset Adversary Proceeding;

- Drafted and filed the *Motion to Extend the Stay of Adversary Case Deadlines and Discovery* (Adv. Pro. No. 26-03005, Docket No. 125) in the Onset Adversary Proceeding and *Reply in Support of the Debtors' Motion to Extend the Stay of Adversary Case Deadlines and Discovery* (Adv. Pro. No. 26-03005, Docket No. 135), analyzed Onset's opposition to same, and participated in related meet and confer conferences regarding same;

- Drafted and served responses and objections to Onset's document requests and interrogatories concerning exclusivity and the Plan, coordinated related document productions, and prepared a company witness for a Rule 30(b)(6) deposition and related examination testimony;

- Negotiated agreed stipulations and orders with Onset, CarVal, the Ad Hoc Group, and the ABL Lenders resolving the competing CarVal and Onset lift-stay disputes (Docket Nos. 2840, 2871, & 2872) and reviewed related adequate protection stipulations;

- Coordinated with the Ad Hoc Group regarding Onset-related claims and compiled and delivered related documents;

- Analyzed Onset-related claims, causes of action, and asserted property interests and conducted legal research in connection therewith; and

- Coordinated with Onset, CarVal, the ABL Lenders, the Ad Hoc Group, and the Debtors' other advisors regarding the consensual resolution of Onset-related disputes.

t. Regulatory Issues (Task Code 029)
Fees: $385,245.00; Total Hours: 235.50

- Negotiated, drafted, and filed the *Stipulation and Agreed Order Further Extending Time for the U.S. Securities and Exchange Commission to Take Action, to the Extent Necessary, to Determine the Nondischargeability of a Debt Owing to a Governmental Unit Pursuant To 11 U.S.C. § 1141(d)(6)* (Docket No. 3033);

- Conferred with the Debtors, the Debtors' other advisors, other stakeholders, and internally regarding various regulatory matters related to antitrust, merger, and environmental issues;

- Analyzed tariff and customs matters, including the treatment of IEEPA tariff refunds and U.S. Customs and Border Protection offset and reconciliation issues, related customs bond and surety matters, and potential tariff refund claims, and coordinated with the Debtors' other advisors and the Debtors' stakeholders regarding the same;

- Analyzed regulatory issues arising in connection with the Debtors' sale transactions, including antitrust and merger control, environmental and hazardous waste, successor liability, tariffs, and customs matters;

- Prepared and coordinated regulatory filings in connection with the Debtors' sale transactions;

- Reviewed data room documents for confidentiality, competitively sensitive information, and clean team access;

- Analyzed and conducted legal research regarding environmental matters, including correspondence with the Environmental Protection Agency and certain state environmental agencies, hazardous waste disposal issues, and related information requests; and

- Reviewed and analyzed data privacy and data transfer issues arising in connection with the sale transactions and advised the Debtors regarding the same.

u. Tax Issues (Task Code 033)
Fees: $1,210,847.00; Total Hours: 654.80

- Analyzed and advised regarding the tax implications of the Debtors' sales and related transactions, including the TMD, Horizon North America sales, Horizon Europe settlement, Walbro, Trico, Cequent, and Jasper Rubber transactions, including purchase price allocations, transfer and property taxes, closing adjustments, withholding considerations, and tax representations in the transaction documents;

- Drafted and revised the tax sections of the Plan and Disclosure Statement, analyzed the tax implications of the Plan's structure, and provided tax comments to the Litigation Trust Agreement, the DIP Collateral Trust Agreement, the ABL Collateral Trust Agreement, the Litigation Trust Backstop Agreement, and the Litigation Funding Agreement;

- Drafted and revised DIP forbearance documents, coordinated with Debtors' advisors and counsel to the Ad Hoc Group on DIP forbearance terms, and analyzed the tax consequences of the DIP forbearance;

- Prepared IRS Form 8918 material advisor filings in connection with the Walbro transaction and analyzed related federal tax reporting matters;

- Analyzed non-U.S. tax matters arising from various sale transactions, including capital gains computations and IMMEX considerations, and prepared related powers of attorney with Mexican counsel;

- Analyzed tax issues relating to intercompany balances, foreign subsidiaries, and cross-border aspects of the sale and wind-down transactions; and

- Coordinated with Weil practice groups, the Debtors' other advisors, purchasers' counsel, and local counsel regarding tax matters arising in the chapter 11 cases.

v. <u>US Trustee Issues / Meetings / Communications / MORs (Task Code 035)</u>
Fees: $378,522.00; Total Hours: 271.10

- Drafted, conducted legal research in connection with, and filed the Debtors' objection to the Conversion Motion (Docket No. 2906) and prepared witnesses and supporting evidence in connection with the contested hearing on the Conversion Motion;

- Negotiated and filed a stipulation extending the response deadline for the Conversion Motion (Docket No. 2888);

- Assisted the Debtors and the Debtors' other advisors with the preparation and filing of the Debtors' monthly operating reports for March, April, and May 2026; and

- Coordinated with the U.S. Trustee, the Debtors' management, and the Debtors' other advisors regarding the underlying financial information and disclosures included in the monthly operating reports and various other filings in the chapter 11 cases.

w. <u>Weil Retention/Billing/Fee Applications (Task Code 037)</u>
Fees: $277,630.50; Total Hours: 247.10

- Reviewed time records and disbursements for compliance with the Fee Guidelines and for privilege and confidentiality;

- Drafted and filed the *Second Interim Fee Application of Weil, Gotshal & Manges LLP, Attorneys for the Debtors, for the Period from January 1, 2026 Through and Including March 31, 2026* (Docket No. 2916) and obtained Court approval of same (Docket No. 3104);

- Drafted and filed the *Second Supplemental Declaration of Matthew S. Barr in Support of Application of Debtors to Retain and Employ Weil, Gotshal & Manges LLP* (Docket No. 2703); and

- Drafted, reviewed, and served several monthly fee statements.

x. Examiner Matters (Task Code 039)
Fees: $119,048.50; Total Hours: 65.60

- Coordinated with the Debtors' management and the Debtors' other advisors regarding the Examiner's investigation, including responding to follow-up document requests;
- Analyzed and produced responsive documents to the Examiner in connection with his preparation of the Examiner's report;
- Drafted and filed the Debtors' response (Docket No. 3007) to the Examiner's emergency motion to increase his budget (Docket No. 2571);
- Reviewed, analyzed, and summarized the Examiner's report, including preparing summary slides and a related presentation and analyzing responses to the Examiner's report; and
- Reviewed and analyzed the Examiner's notices, status reports, and information requests, and coordinated with the Examiner and the Examiner's counsel regarding the same.

y. Government Investigation Matters (Task Code 041)
Fees: $303,792.00; Total Hours: 205.80

- Continued to implement a comprehensive strategy in response to the parallel investigations conducted by multiple agencies of the federal government into the Debtors' prepetition business practices (collectively, the "**Government Investigations**");
- Responded to requests for documents and information from the agencies conducting the Government Investigations, including preparing and reviewing privilege materials and privilege lists, coordinating electronic discovery and related document productions, and researching and drafting a motion to quash a trial subpoena served on the Debtors;
- Coordinated common-interest document sharing with the Creditors' Committee and the Ad Hoc Group and prepared a list of non-released parties in connection with the Plan; and
- Coordinated among Weil practice groups and with the Debtors' other advisors regarding a summary deck on the Government Investigations and findings and related forfeiture and restitution issues related to same.

z. RoW Horizon / FMP (Task Code 044)
Fees: $1,274,064.50; Total Hours: 668.20

- Advised the Debtors in connection with the Horizon North America sale and the related Horizon Europe settlement and sale, including with respect to the resolution of asset entanglement and intercompany balances with

non-Debtor subsidiaries based in Europe and Australia, and negotiated and drafted related sale and settlement documentation;

- Coordinated with local counsel across the Horizon footprint regarding diligence, security confirmations, corporate governance, foreign assignments, and signing and closing deliverables;

- Reviewed and analyzed intercompany, intellectual property, and data privacy issues arising in connection with the Horizon transactions;

- Prepared and revised a detailed analysis of intercompany balances among the Horizon North America, Horizon Europe, and FMP / Trico Australia entities and a related settlement presentation for the Debtors' key stakeholders;

- Coordinated with Dutch and Luxembourg counsel regarding the Horizon Europe separation and related corporate approvals and security confirmations;

- Advised regarding the directors' and officers' insurance program implemented in connection with the Horizon Europe separation, including broker coordination and coverage considerations;

- Drafted and coordinated the execution of notices of assignment, assignment agreements, and resolutions effectuating the Walbro Suisse intercompany assignments;

- Reviewed German security documentation and analyzed perfection issues relating to the Horizon collateral package;

- Reviewed valuation report and negotiated management representation letters in connection with the transfer of the Horizon India entities;

- Prepared corporate approvals, shareholder consents, and resolutions authorizing the Horizon sale and separation and managed related execution and closing logistics;

- Assisted local counsel and Westfalia with the wind down of certain Horizon silo entities, including director resignations, preparation of accounts, and Luxembourg solvent dissolution planning;

- Instructed and coordinated with Australian counsel regarding intercompany loan claims and the analysis of claims between the Debtors' estates and certain of the FMP / Trico Australia entities; and

- Coordinated with the Weil Hong Kong team regarding the audit, stamp duty, and share transfer requirements for the transfer of the Hong Kong non-

Debtor subsidiaries, including as part of diligence for the Pumps sale transaction.

aa. RoW Trico / Airtex / South America / Germany (Task Code 046)
Fees: $88,151.50; Total Hours: 104.10

- Advised regarding certain other non-Debtor subsidiaries, including those associated with Trico, Airtex, and various South American and German operations, with respect to insolvency-related matters, local sale processes, and value preservation, and coordinated with local counsel regarding the same;

- Coordinated the handover of ongoing workstreams for certain RoW business units to the supervision of local directors and management;

- Supported the engagement and invoicing of local counsel and the maintenance of the wind down tracker and entity structure charts in respect of such other non-Debtor subsidiaries; and

- Prepared and monitored the filing of claims by Trico entities in foreign insolvency proceedings.

bb. WARN Adversary Proceedings (Task Code 048)
Fees: $382,863.00; Total Hours: 262.90

- Defended three putative class action adversary proceedings filed by, or on behalf of, former U.S. employees against certain of the Debtors alleging violations of the WARN Act and state law equivalents, including the Garza and Tapia adversary proceedings (Adv. Pro. Nos. 26-03038 and 26-03052, respectively) and a proceeding commenced on behalf of employees represented by the UAW (Adv. Pro. No. 26-03143) (collectively, the "**WARN Adversary Proceedings**");

- Reviewed and analyzed a WARN Act complaint brought on behalf of employees represented by the UAW (Adv. Pro. No. 26-03143, Docket No. 1) and the related collective bargaining agreement, conferred with the UAW's counsel, and drafted Defendants' Answer to the complaint, including research related thereto;

- Drafted, finalized, and filed the reply brief in support of the motion to dismiss the amended class action complaint in the Garza WARN Adversary Proceeding (Adv. Pro. No. 26-03038, Docket No. 25), including analyzing the plaintiffs' opposition and conducting legal research;

- Drafted, finalized, and filed Defendants' reply brief in support of the motion to dismiss the first amended class action complaint in the Tapia WARN Adversary Proceeding (Adv. Pro. No. 26-03052, Docket No. 45), including analyzing the plaintiffs' opposition and conducting legal research;

- Drafted and filed Defendants' response (Adv. Pro. No. 26-03038, Docket No. 34) to the plaintiffs' motion to consolidate the related actions and to appoint interim co-lead class counsel;
- Developed a work plan and conducted extensive legal research and case analysis in preparation for the Debtors' opposition to the plaintiffs' motion for class certification;
- Prepared for and attended the June 2, 2026 hearing on the plaintiffs' motion to consolidate the related actions and to appoint interim co-lead class counsel;
- Coordinated litigation hold notices and document preservation in connection with the WARN Adversary Proceedings; and
- Coordinated with the Special Committee, the Creditors' Committee's counsel, the Ad Hoc Group's counsel, and the Debtors' insurers regarding the WARN Adversary Proceedings and related employment practices liability coverage.

26. In addition to the foregoing, Weil prepared, on behalf of the Debtors, all other necessary motions, applications, orders, notices, responses, and other papers in support of positions taken by the Debtors and in compliance with applicable law.

27. The foregoing professional services were necessary and appropriate to the administration of the chapter 11 cases. The professional services performed by Weil were in the best interests of the Debtors and their estates. Compensation for such services is commensurate with the complexity, importance, and nature of the issues and tasks that were involved in the chapter 11 cases. All of Weil's professional services were performed skillfully and efficiently.

28. Weil has a preeminent Restructuring practice and enjoys a national reputation for its expertise in financial reorganizations and restructurings of distressed entities. The professional services performed by Weil's partners, counsel, associates, and paraprofessionals were rendered by the Restructuring, Corporate, Litigation, and Tax, Benefits, and Executive Compensation Departments, predominantly in Weil's New York, Houston, Miami, and London offices.

29. The professional services performed by Weil on behalf of the Debtors during the Compensation Period required an aggregate expenditure of approximately 23,609.00 hours by Weil's partners, counsel, associates, paraprofessionals, and non-legal staff. Of the aggregate time expended, approximately 6,092.30 recorded hours were expended by partners and counsel of Weil, approximately 16,673.00 recorded hours were expended by associates, and approximately 843.70 recorded hours were expended by paraprofessionals and non-legal staff of Weil. Of the 174 Weil attorneys who billed time, 58 billed fewer than 15 hours to this matter. Of the 23 Weil paraprofessionals and non-legal staff who billed time, 13 billed fewer than 15 hours to this matter.

30. During the Compensation Period, Weil billed the Debtors for time expended by attorneys based on hourly rates ranging from $680.00 to $2,850.00 per hour for attorneys. Allowance of compensation in the amount requested would result in a blended hourly billing rate for Weil attorneys in this Application of approximately $1,605.21 (based on 22,765.30 recorded hours for attorneys at Weil's billing rates in effect at the time of the performance of services).

**Actual and Necessary Disbursements of Weil**

31. As set forth in **Exhibit E** attached hereto, Weil has disbursed $283,495.94 as expenses incurred in providing professional services during the Compensation Period. These expenses are reasonable and necessary and were essential to the overall administration of the chapter 11 cases.

32. Although Weil has not charged the Debtors for any overtime expenses, consistent with firm policy, attorneys and other employees of Weil who worked late into the evenings or on weekends were reimbursed for their reasonable meal costs and their cost for transportation home from Weil's offices. Weil's regular practice is not to include components of those charges in overhead when establishing billing rates and to charge its clients for these and all

other out-of-pocket disbursements incurred during the regular course of the rendition of services. The reimbursement amounts do not exceed those set forth in the Fee Guidelines or the Bankruptcy Local Rules.

33. With respect to photocopying expenses, in compliance with the Fee Guidelines and Bankruptcy Local Rule 2016-1, Weil charges all of its clients $0.10 per black-and-white page and $0.50 per color page. With respect to legal research, Weil does not charge more than the actual cost. Each of these categories of expenses does not exceed the maximum rate set by the Fee Guidelines or the Bankruptcy Local Rules. These charges are intended to cover Weil's direct operating costs, which costs are not incorporated into Weil's hourly billing rates. Only clients who actually use services of the types set forth in **Exhibit E** are separately charged for such services. The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services. The amount of the standard photocopying charge is intended to allow Weil to cover the related expenses of its photocopying service. A determination of the actual expenses per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.

34. On certain occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services. These disbursements are not included in Weil's overhead for the purpose of setting billing rates.

35. Weil has made every effort to minimize its disbursements in the chapter 11 cases. The actual expenses incurred in providing professional services were those that were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors and their estates and creditors.

**<u>Requested Compensation Should Be Allowed</u>**

36. Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. Section 330(a)(1) of the Bankruptcy Code provides that a Court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

37. The Fifth Circuit Court of Appeals has held that lower courts should consider the six factors found in section 330(a)(3) of the Bankruptcy Code when awarding compensation to professionals. *See In re Crager*, 691 F.3d 671, 676 (5th Cir. 2012). Specifically, under section 330 of the Bankruptcy Code, courts "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors," including—

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

38. In the instant case, Weil submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the preservation and maximization of value for all stakeholders and to the orderly administration of the Debtors' estates. The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

39. The requested compensation for the foregoing services is commensurate with the complexity, importance, and nature of the issues and tasks involved. Not only were Weil's professional services performed skillfully and efficiently, but whenever possible, Weil sought to minimize the cost of its services to the Debtors by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of case administration. In addition, groups of the same Weil attorneys were utilized for similar tasks in the chapter 11 cases to minimize the costs of intra-Weil communication and education about the Debtors' circumstances. As described above, the complexity of these cases required the use of specialists in tax, banking and finance, mergers and acquisitions, litigation, labor and employee benefits, and other areas to achieve the progress reached by the Debtors during the Compensation Period.

40. In sum, the services rendered by Weil were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the types of issues involved in the chapter 11 cases. Accordingly, approval of the compensation for professional services and reimbursement of expenses sought in this Application is warranted.

## **Notice**

41. Notice of this Application will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

**Conclusion**

42. Weil respectfully requests that the Court (i) award interim allowance of Weil's compensation for professional services rendered to the Debtors during the Compensation Period in the amount of $37,258,917.44, consisting of $36,975,421.50 (representing 100% of fees incurred) and reimbursement of $283,495.94 (representing 100% of actual and necessary expenses incurred), and that such allowance be without prejudice to Weil's right to seek additional compensation for services performed and expenses that were incurred during the Compensation Period but not processed at the time of this Application, (ii) direct payment by the Debtors of the difference between the amounts allowed and any amounts previously paid by the Debtors, and (iii) grant such other and further relief as the Court may deem just and proper.

Dated: September 9, 2026
Houston, Texas

*/s/ Clifford W. Carlson*

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: gabriel.morgan@weil.com
clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: matt.barr@weil.com
sunny.singh@weil.com
andriana.georgallas@weil.com
kevin.bostel@weil.com
jason.george@weil.com

**Certificate of Service**

I hereby certify that on September 9, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Clifford W. Carlson*
Clifford W. Carlson