**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>FIRST BRANDS GROUP, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 7<br><br>Case No. 25-90399 (CML)<br><br>(Jointly Administered) |

**EMERGENCY MOTION OF EVOLUTION CREDIT PARTNERS TO COMPEL TURNOVER AND DEPOSIT OF DISPUTED POST-PETITION ACCOUNTS RECEIVABLE PROCEEDS INTO THE COURT REGISTRY**

**Emergency relief has been requested. Relief is requested not later than September 29, 2026. If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding sentence. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Evolution Credit Opportunity Master Fund II-B, L.P. (the "Evolution Inventory Lender" and, together with its affiliated lending entities, Evolution Credit Partners Trade Finance Master, L.P., Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution affiliated funds, collectively, "Evolution"), hereby files this emergency motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), preserving certain disputed assets of the above-captioned debtors (collectively, the "FBG Debtors") pending resolution of the parties' competing claims to such funds in the adversary proceeding captioned *Evolution Credit Opportunity Master Fund II-B, L.P. v. First Brands Group, LLC, et al.*, Adv. No. 25-03800 (the "Adversary Proceeding"), and other related relief. In support of this Motion, Evolution respectfully states as follows:

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

**PRELIMINARY STATEMENT**[2]

1. Throughout these proceedings, Evolution has actively sought to protect its rights as the sole secured creditor with respect to inventory located at warehouses in McHenry, Illinois and Patterson and City of Industry, California (collectively, the "Warehouses")[3] and all accounts receivable and other proceeds thereof. Evolution holds a first-priority perfected security interest in all such assets pursuant to the Evolution Facilities (as defined below), the Adequate Protection Stipulation [Docket No. 609], and this Court's January 20, 2026 ruling concerning the use of collateral and proceeds from collateral in which Evolution asserts a first-priority security interest.

2. This Court has repeatedly directed that the proceeds of Evolution's collateral must be segregated, not commingled, and that they cannot be used by the FBG Debtors or other parties absent further order or consent. On January 20, 2026, following an evidentiary hearing at which this Court found the FBG Debtors had breached the Adequate Protection Stipulation, the Court prohibited the FBG Debtors from "using or purchasing Evolution cash collateral or Evolution collateral absent further order of the court," and directed that the proceeds of that collateral must be "parked somewhere in a way that it doesn't get comingled with anything else." Jan. 20, 2026 Hr'g Tr. at 46:4–7, 48:11–16. The Adequate Protection Stipulation and the Cash Management Order independently imposed similar requirements. The FBG Debtors disregarded all of them, and continue to do so. The FBG Debtors have already acknowledged, without justification, that Evolution's collateral proceeds from post-petition sales of inventory from the Warehouses have since been dissipated. But there exists more than sufficient cash on the FBG Debtors' balance sheet to reserve such amount pending the instant dispute. The FBG Debtors cannot unilaterally

---

[2] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to such terms below.

[3] The Warehouses are located at (a) 1100 and 1380 Corporate Drive, McHenry, IL (collectively, the "Midwest Distribution Center"), (b) 14258 Bonelli Street, City of Industry, CA, and (c) 2701 Keystone Pacific Parkway, Suite 100, Patterson, CA ((b) and (c), together, the "West Coast Distribution Center").

decide to ignore Evolution's interests; instead, such amounts should be preserved to permit the Court to make an appropriate determination. Evolution has actively sought this narrow relief for months.

3. On July 8, 2026, Evolution filed its initial emergency motion seeking segregation of the disputed post-petition proceeds [Docket No. 3144] (the "Segregation Motion"), which the Chapter 7 Trustee for the Evolution SPV Debtors, Ronald J. Sommers (the "SPV Trustee"), joined [Docket No. 3151]. The Segregation Motion was fully briefed but remained unresolved when the FBG Debtors' cases were converted to chapter 7. As described below, the prior briefing sought only the preservation of the disputed post-petition proceeds—rather than their distribution to any claimant or non-consensual consumption by the FBG Debtors—as a means of protecting the parties' competing interests pending adjudication.

4. In the weeks since, the situation has only further deteriorated. The FBG Debtors' cases were converted to Chapter 7 on September 1, 2026 [Docket No. 3748] (the "Conversion Order"). The Conversion Order expressly provides that "[n]othing in this Order shall be construed to permit, without consent or further order of the Court, any use of assets, cash, or collateral held by a party other than the DIP Secured Parties or ABL Secured Parties that is subject to an asserted and not withdrawn claim or objection by any party in interest that has not been resolved, overruled, or determined by a final, non-appealable order." Conversion Order ¶ 5. Yet the disputed funds remain unsegregated and unaccounted for.

5. On September 3, 2026, the SPV Trustee sent a letter to counsel for the FBG Debtors' Chapter 7 trustee, in which the SPV Trustee requested that $21.2 million be deposited into the Court Registry and that no further use or disbursement of the funds occur pending resolution of the dispute (the "Trustee Letter").[4] Evolution understands that there has been no substantive response to the Trustee Letter as of the filing of this Motion.

[4] A copy of the Trustee Letter is attached hereto as **Exhibit B**.

6. These developments compel the narrow and restricted relief Evolution seeks. Evolution requests that post-petition proceeds of sales at the Warehouses be deposited into the Court Registry, where they will remain under the Court's control pending resolution of the parties' competing claims. That relief preserves the status quo without prejudicing any claimant, provides for a neutral custodian of the disputed assets, respects the Court's Confirmation Order, and ensures that meaningful relief will remain available once the underlying disputes are adjudicated.

## Requested Relief

7. For these reasons, and as set forth more fully herein, Evolution respectfully requests entry of an order substantially in the form of the Proposed Order: (a) compelling the Chapter 7 Trustee appointed for the FBG Debtors to transfer into the registry of this Court (the "Court Registry") no less than $21.2 million, representing amounts collected on account of post-petition sales of inventory from the Warehouses that constitute Evolution's asserted collateral or proceeds thereof, to be held pending resolution of the parties' competing claims to such funds in the Adversary Proceeding; (b) compelling the FBG Debtors to provide Evolution with an accounting of all such post-petition collections, including the identity of each payor, the applicable invoice numbers, and the amounts and dates of each collection; (c) compelling the FBG Debtors to provide Evolution with ongoing weekly reporting of accounts receivable collected from sales of inventory at the Warehouses, with such amounts to be immediately deposited into the Court Registry on the same terms; (d) prohibiting the FBG Debtors from using, disbursing, or otherwise disposing of any funds collected on account of post-petition accounts receivable from the Warehouses pending deposit into the Court Registry; and (e) granting such other and further relief as this Court deems just and proper.

## **Relevant Background**

### **A. The SPV Facilities and Evolution's Security Interest**

8. On September 24, 2025 (the "SPV Petition Date"), Patterson Inventory, LLC, Patterson Inventory Holdings, LLC, Starlight Inventory I, LLC, and Starlight Inventory Holdings I, LLC (collectively, the "SPV Debtors") each filed voluntary chapter 11 petitions. On September 28, 2025 (the "FBG Petition Date"), First Brands Group, LLC and the remainder of the Debtors (the "FBG Debtors") also filed voluntary chapter 11 petitions.

9. In November 2023, debtor Patterson Inventory, LLC (the "Patterson Borrower") entered into that certain Uncommitted Inventory Finance Agreement (the "Patterson Facility") with the Evolution Inventory Lender, providing an uncommitted asset-based revolving credit facility of up to $150 million. The Patterson Borrower's obligations are guaranteed by debtor Patterson Inventory Holdings, LLC (the "Patterson Parent") and secured by a first-priority lien on substantially all assets of the Patterson Borrower, including inventory, accounts, and the proceeds thereof. *See Evolution Inventory Lender's Limited Objection to Debtors' Cash Collateral Motion* [Docket No. 459] (the "Evolution DIP Objection") ¶¶ 8–10.

10. In March 2024, debtor Starlight Inventory I, LLC (the "Starlight Borrower" and together with the Patterson Borrower, the "Evolution Borrowers") entered into a substantially identical Uncommitted Inventory Finance Agreement (the "Starlight Facility"; together with the Patterson Facility, the "Evolution Facilities") with the Evolution Inventory Lender, providing an additional $150 million revolving facility. The Starlight Borrower's obligations are guaranteed by debtor Starlight Inventory Holdings I, LLC (the "Starlight Parent") and secured by a first-priority lien on substantially all assets of the Starlight Borrower, including inventory, accounts, and the proceeds thereof. *See* Evolution DIP Objection ¶¶ 11–12.

11. Under each of the Evolution Facilities, the SPV Borrowers purchased inventory from the FBG Debtors, creating a borrowing base to obtain loans from the Evolution Inventory Lender. As of the Petition Date, approximately $230 million in principal obligations under the Evolution Facilities was outstanding. See *Emergency Motion for Entry of an Order Converting Chapter 11 Cases of Certain SPV Debtors to Chapter 7* [Docket No. 2110] at 12. The SPV Debtors have no operations, no employees, and no non-contingent creditors other than Evolution—they are bankruptcy-remote special-purpose vehicles whose assets are subject only to Evolution's first-priority perfected lien. *See id*. at 13.

**B. Warehouses and Inventory Subject to Evolution's Liens, Not DIP Liens or ABL Liens**

12. On November 9, 2025, this Court entered the *Stipulation and Agreed Order Regarding Adequate Protection Among Debtors and Evolution Credit Partners* [Docket No. 609] (the "Adequate Protection Stipulation"), governing the FBG Debtors' consensual use of Evolution's inventory collateral. Pursuant to the Adequate Protection Stipulation, (a) this Court granted Evolution a first-priority automatically perfected lien on Evolution collateral and the proceeds thereof, and an allowed superpriority administrative expense claim under sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, and (b) the FBG Debtors were obligated to maintain Evolution's collateral above specified thresholds and segregate collections of accounts receivable generated from sales of Evolution's inventory. *See* Adequate Protection Stipulation ¶¶ 4–5.

13. On the same date, this Court entered the Final DIP Order, which expressly excludes the SPV Debtors and all of their assets from the DIP collateral package: "For the avoidance of doubt, and notwithstanding anything to the contrary herein or in the DIP Documents, none of the SPV Debtors are DIP Guarantors. Nothing in this Final Order or any of the DIP Documents shall grant any liens or claims against any of the SPV Debtors or any assets of SPV Debtors or the proceeds thereof. . . ." Final DIP Order ¶ 22(p).

14. On June 23, 2026, the Debtors filed the Plan Supplement, including the ABL Collateral Trust Agreement as Exhibit 7. Exhibit D thereto identifies inventory at 25 specific warehouse addresses constituting ABL Priority Collateral. *See* Plan Supplement, Ex. 7-D [Docket No. 3046-7] at 53–55. None of the Warehouses—1100 Corporate Drive, McHenry, IL; 1380 Corporate Drive, McHenry, IL; 14528 Bonelli St., City of Industry, CA; or 2701 Keystone Pacific Pkwy, Suite 100, Patterson, CA—appear on that list. While the list is not exhaustive, it is curious the ABL Secured Parties would inadvertently omit all four Warehouse addresses central to a months-long Adversary Proceeding. Evolution thus has reason to believe it is the sole secured creditor with respect to these assets and their proceeds. Ultimately, this question will be determined by the Court in the Adversary Proceeding, only further substantiating the need to maintain such funds in a segregated account pending its resolution.

**C. <u>The January 20, 2026 Hearing</u>**

15. On December 23, 2025, Evolution filed its *Emergency Motion to Enforce Stipulation and Agreed Order Regarding Adequate Protection Among the Debtors and Evolution Credit Partners* [Docket No. 1076], alleging the FBG Debtors had breached the collateral maintenance covenant in the Adequate Protection Stipulation.

16. Following evidentiary hearings on January 13 and January 20, 2026, this Court found that the FBG Debtors had breached the Adequate Protection Stipulation by failing to satisfy the collateral maintenance threshold and failing to exercise curative actions within the required five-business-day cure period. *See* Jan. 20, 2026 Hr'g Tr. at 42:22–45:25. The Court instructed that the FBG Debtors were "prohibited from using or purchasing Evolution cash collateral or Evolution collateral absent further order of the court." *Id.* at 46:4–7.

17. Critically, the Court directed that proceeds of Evolution's collateral must be segregated and not commingled: "[T]he proceeds of that cash, until I can determine whether

something gets used, absent stipulation of the parties to me is going to have to kind of get parked somewhere in a way that it doesn't get comingled with anything else . . . ." *Id*. at 48:11–16. The Court emphasized that Evolution's collateral was required "to stay somewhere, where everybody gets comfortable that the cash is somewhere, and then everybody can assert liens, and then [the Court] can kind of make the call at the right time." *Id*. at 49:18–21.

**D. The Cash Management Order**

18. The *Final Order (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Bank Accounts, (B) Implement Ordinary Course Changes to Cash Management System, and (C) Honor Certain Related Prepetition Obligations, (II) Granting Administrative Expense Priority for Postpetition Intercompany Claims, (III) Extending Time to Comply with Requirements of 11 U.S.C. § 345(b), and (IV) Granting Related Relief* [Docket No. 604] (the "Cash Management Order") permitted the FBG Debtors to continue to operate in the ordinary course of business post-petition, but required the FBG Debtors to segregate collections of pre-petition accounts receivable into a "Factored Receivables Account." Cash Management Order at 6. To be clear, the FBG Debtors were not required to segregate or refrain from using post-petition accounts receivable of Evolution Collateral—the accounts receivable that are the subject of the instant dispute—while the Adequate Protection Stipulation was active.

19. However, the Cash Management Order required SPV Accounts (as defined in the Cash Management Order) to "remain segregated from the rest of the Cash Management System" with "no Intercompany Transactions between the SPV Debtors and any of the other Debtors." *Id.* ¶ 8. The FBG Debtors did not segregate any proceeds of the sales of SPV Debtor inventory from the Warehouses, instead directing such amounts to the FBG Debtors.

## E. The Debtors' Post-Petition Collections and Concealment

20. Following the January 20, 2026 ruling, Evolution sought information from the FBG Debtors regarding their efforts to collect post-petition accounts receivable from sales of inventory at the Warehouses and the existence of Evolution Collateral that was prohibited from further use pending further order of this Court. On a January 24, 2026 call, FBG Debtors' counsel represented that the FBG Debtors "haven't been able to collect A/R from Evolution facilities." The FBG Debtors' financial advisor, Alvarez & Marsal ("A&M"), subsequently reported only approximately $1.5 million in BPI accounts receivable as having been "collected and segregated" by January 20, 2026. Despite Evolution's repeated requests in the months since, the FBG Debtors did not provide additional reporting on collection progress.

21. On July 1, 2026, newly produced data revealed for the first time that the FBG Debtors had collected approximately $18.6 million from the Midwest Distribution Center and approximately $2.5 million from the West Coast Distribution Center—over $21 million in aggregate from the Evolution facilities since the Petition Date. These collections constitute non-DIP cash collateral, owned by the SPV Debtors and subject to Evolution's security interests, which have not been segregated or preserved in accordance with the Adequate Protection Stipulation, the Cash Management Order, or this Court's express direction at the January 20, 2026 hearing.

22. On July 3, 2026, Evolution's counsel sent a demand letter to the Debtors (the "July 3 Demand Letter"),[5] demanding the Debtors (a) transfer $21.2 million into a segregated account for Evolution's sole benefit and (b) provide ongoing weekly reporting of any further accounts receivable collected from sales of inventory at the Warehouses. The Debtors did not respond.

[5] A copy of the July 3 Demand Letter is attached hereto as **Exhibit C**.

23. Following the FBG Debtors' failure to respond to the July 3 Demand Letter, Evolution filed the Segregation Motion. The Segregation Motion requested an order compelling the FBG Debtors to transfer no less than $21.2 million[6] into a segregated account for Evolution's sole benefit, provide an accounting of the relevant collections, provide ongoing weekly reporting and segregation of future collections, and refrain from using or disposing of the collected proceeds. *See* Segregation Motion ¶ 21. The Ad Hoc Group objected to emergency consideration [Docket No. 3208], and the FBG Debtors and the ABL Agent opposed turnover on the grounds that ownership and priority remained disputed, and that transfer to Evolution would be premature [Docket Nos. 3218 and 3209]. The ABL Agent stated, however, that, if the Court determined preservation was appropriate, "the proper remedy is segregation into a neutral account pending further order." [Docket No. 3209 ¶ 18.] Evolution replied that it was not asking the Court to adjudicate the underlying ownership and priority disputes, but that immediate segregation of the remaining proceeds, together with an accounting, was necessary to ensure that the disputed property remained available [Docket No. 3464].

## F. <u>Developments Since the Prior Motion</u>

24. **Conversion to Chapter 7**. On September 1, 2026, the Court entered the Conversion Order, converting the FBG Debtors' cases to chapter 7. The Conversion Order expressly provides that "[n]othing in this Order shall be construed to permit, without consent or further order of the Court, any use of assets, cash, or collateral held by a party other than the DIP Secured Parties or ABL Secured Parties that is subject to an asserted and not withdrawn claim or objection by any party in interest that has not been resolved, overruled, or determined by a final, non-appealable order." Conversion Order ¶ 5.

[6] The Segregation Motion sought the segregation and turnover of approximately $21.5 million in post-petition accounts receivable, but the FBG Debtors' objection indicated that their "records show the amount to be $21.2 million." Docket No. 3218 at ¶ 2 n.8.

25. **FBG Debtors Confirm Disregard for Court Orders**. Prior to conversion, the FBG Debtors made clear they had no intention of complying with this Court's directives regarding Evolution's collateral. When confronted about the disputed funds, the FBG Debtors asserted that no one can show the collected funds "even still exist." [Docket No. 3218 ¶ 28.] Charles Moore, the acting chief executive officer of the FBG Debtors, went further, testifying that the disputed collateral is "long gone." [Docket No. 3464 ¶ 14.] These admissions confirm that the FBG Debtors have not merely failed to segregate Evolution's asserted collateral—they have dissipated it in violation of multiple Court orders.

26. **FBG Debtors' Chapter 7 Trustee has not responded**. On September 3, 2026, the SPV Trustee sent the Trustee Letter to counsel for the FBG Debtors' Chapter 7 trustee, demanding that the FBG Debtors refrain from any further use or disbursement of the disputed funds and requesting that $21.2 million be deposited into the Court Registry. The Trustee Letter noted that the Conversion Order's prohibition on use of disputed assets independently requires segregation, and that deposit into the Court Registry is necessary to ensure there is not inadvertent use of the disputed cash. No response has been received as of the time of this Motion.[7]

## <u>Basis for Relief</u>

### A. <u>Evolution Asserts a First-Priority Lien on the Collected Proceeds</u>

27. This Court has repeatedly mandated protection of Evolution's asserted interests in collateral. As set forth above, the Evolution Facilities grant the Evolution Inventory Lender a first-priority security interest in all assets of the Evolution Borrowers, including inventory, accounts, and the proceeds thereof, perfected by UCC-1 financing statements and deposit account control

[7] Separately, on September 9, 2026, the SPV Trustee filed an Emergency Application in the SPV Debtors' cases [Case No. 25-90392, Docket No. 93] seeking authority to collect, settle, or otherwise resolve certain outstanding receivables. The relief requested in that application is distinct from the relief requested in this Motion: that application does not seek the deposit of the $21.2 million in previously collected post-petition proceeds at issue here, but echoes the disregard for the interests of the SPV Debtors and their creditors.

agreements. *See supra* ¶¶ 8–11; Evolution DIP Objection ¶ 14. These asserted liens have been repeatedly acknowledged and preserved by this Court, including through the Adequate Protection Stipulation granting Evolution's first-priority security interest, *see* Adequate Protection Stipulation ¶ 5, and the Court's order prohibiting further use or dissipation of the Evolution collateral. Jan. 20, 2026 Hr'g Tr. at 46:18–47:14.

28. The DIP Secured Parties cannot claim a security interest in Evolution's collateral, as the Final DIP Order expressly excludes the SPV Debtors and all of their assets from the DIP collateral package, meaning no DIP lien or adequate protection lien encumbers Evolution's collateral from the Warehouses owned by the SPV Debtors. *See supra* ¶ 13.

29. In addition, the Plan Supplement designed to preserve all of the ABL Secured Parties' collateral excludes any reference to liens on inventory at any of the Warehouses or the receivables generated from sales thereof. *See supra* ¶ 14. While not itself definitive, the ABL Secured Parties were on notice of Evolution's asserted liens on the Warehouses and their inventory and proceeds in the Adversary Proceeding. Evolution has reason to believe, and should be provided full opportunity to demonstrate, that it is the sole secured creditor with respect to these assets and their proceeds. The collected accounts receivable are Evolution's collateral, and at the very least are disputed collateral, and the FBG Debtors are explicitly prohibited from using such amounts. The collected post-petition accounts receivable should be deposited with the Court Registry.

**B. <u>The Debtors Must Segregate and Turn Over Evolution's Collateral</u>**

30. Evolution's automatically perfected security interest in the subject inventory and proceeds was most recently upheld by this Court's January 20, 2026 ruling confirming Evolution's first-priority lien on all Evolution collateral and proceeds thereof. *See* Jan. 20, 2026 Hr'g Tr. at 46:18–47:14. And when the FBG Debtors proved incapable of abiding by their covenants to

provide adequate protection of Evolution's security interests, this Court explicitly prohibited the FBG Debtors from further using Evolution's collateral or commingling it with the FBG Debtors' other assets and receivables, and directed the FBG Debtors to segregate and "park" collections of such collateral pending further Court order. *Id*. While no further Court order specific to use of Evolution's collateral has been entered, the January 20, 2026 ruling has not been adhered to, the FBG Debtors continued to consume Evolution Collateral with impunity, and millions of dollars of Evolution collateral has been commingled with other FBG Debtor assets.

31. The FBG Debtors are in possession of at least $21.2 million of accounts receivable collected post-petition from sales of inventory at the Warehouses. That inventory was—and remains—Evolution's collateral. The FBG Debtors and other parties in interest have argued the FBG Debtors' balance sheet cash is exclusively DIP Collateral, but assuming such without further inquiry would allow the FBG Debtors to violate Court orders without consequence. The accounts receivable generated from those sales are proceeds of Evolution's collateral under Article 9 of the Uniform Commercial Code. *See* U.C.C. § 9-315(a)(2) (a security interest attaches to any identifiable proceeds of collateral).

32. Because these funds constitute Evolution's cash collateral, the FBG Debtors have no right to retain, use, or commingle them. Section 363(c)(2) of the Bankruptcy Code prohibits a debtor in possession from using cash collateral unless "each entity that has an interest in such cash collateral consents" or "the court, after notice and a hearing, authorizes such use." 11 U.S.C. § 363(c)(2). The statutory prohibition is absolute. Evolution has not consented to the FBG Debtors' use of these proceeds. No court order authorizes their use. To the contrary, this Court expressly prohibited the FBG Debtors from using Evolution's collateral and directed that proceeds be segregated. *See* supra ¶¶ 16–17. Indeed, the SPV Trustee for the Evolution SPV Debtors also asserts direct ownership of such assets, such that they cannot be used by the FBG Debtors at all.

The FBG Debtors' retention and commingling of $21.2 million in Evolution's cash collateral is a violation of both section 363(c)(2) and this Court's orders that requires immediate remediation.

33. Moreover, Section 363(c)(4) of the Bankruptcy Code expressly requires a debtor in possession to "segregate and account for any cash collateral in [its] possession, custody, or control," unless Section 363(c)(2) applies—i.e., unless the secured party has consented (or the court has authorized) the use of the cash collateral. Evolution has not consented since the Adequate Protection Stipulation was terminated. Section 363(e) of the Bankruptcy Code further requires the Court to "prohibit or condition" the use of a secured creditor's cash collateral "as is necessary to provide adequate protection." 11 U.S.C. § 363(e). In combination with Section 363(c)(4), the FBG Debtors are required to segregate and provide accounting for Evolution's cash collateral unless there is an order providing otherwise. *See, e.g., In re Four Seasons Marine & Cycle, Inc.*, 263 B.R. 764, 768–71 (Bankr. E.D. Tex. 2001) (explaining that a debtor in possession is "absolutely prohibited" from using cash collateral absent creditor consent or court authorization and has an "absolute obligation to segregate and to account for all such cash collateral," and recognizing the bankruptcy court's power to rectify misuse of cash collateral). That is precisely what Evolution seeks here.

34. In a related decision involving the FBG Debtors' release of pre-petition accounts receivable from the Factored Receivables Account, District Judge Rosenthal held that "absent clear evidence or legal precedent that refutes the claimant's right to an asserted property interest, the claimant is entitled to adequate protection until an adversary proceeding determines the validity, extent, and priority of the asserted property interest." [Case No. 26-00073, Docket No. 28, at 8.] Evolution's cash collateral must, at a minimum, be segregated and accounted for, and the Court Registry is the best location for such segregation given the FBG Debtors' historical disregard for this Court's directions.

**C. <u>The Debtors' Conduct Violates Multiple Court Orders</u>**

35. Beyond the Bankruptcy Code's independent requirements, the FBG Debtors' failure to segregate and turn over these proceeds violates no fewer than three separate court orders and judicial directives:

a. *The January 20, 2026 Oral Order*. This Court expressly directed through the January 20 oral order that proceeds of Evolution's collateral must be segregated and not commingled. *See supra* ¶ 17. The FBG Debtors disregarded this directive entirely, collecting $21.2 million in proceeds and commingling them with their general operating funds.

b. *The Adequate Protection Stipulation*. The Adequate Protection Stipulation required the FBG Debtors to segregate collections of accounts receivable generated from sales of Evolution's inventory. *See* Adequate Protection Stipulation ¶¶ 4–5. The FBG Debtors failed to do so.

c. *The Conversion Order*. The Conversion Order expressly extends prohibitions on the use of "assets, cash, or collateral" subject to an "asserted and not withdrawn claim or objection by any party in interest" absent consent or further court order. Conversion Order ¶ 5. Evolution's claims to the disputed funds are asserted, have not been withdrawn, and remain unresolved. The FBG Debtors' continued retention and use of these funds violates the Conversion Order.

36. Bankruptcy courts have broad authority under section 105(a) of the Bankruptcy Code to enforce compliance with their own orders. 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). This authority extends to compelling compliance with prior court orders and stipulations. The FBG Debtors' serial violations of this Court's orders warrant the immediate relief Evolution requests, and no party will be prejudiced by the deposit of potentially disputed funds with the Court Registry while such dispute is resolved.

**D. <u>Deposit into the Court Registry Is Necessary and Appropriate</u>**

37. Evolution's Segregation Motion sought the transfer of $21.2 million into a segregated account for Evolution's benefit. The Debtors and ABL Secured Parties opposed such relief, and the request remains pending post-Conversion. Since then, the SPV Trustee's and Evolution's efforts to secure the subject proceeds have been met with no response. Deposit into

the Court Registry is necessary and appropriate under the circumstances to prevent the continued use and dissipation of Evolution's collateral in violation of Court orders.

38. The facts supporting this escalation are stark. The FBG Debtors' own CEO has testified that the disputed funds are "long gone" [Docket No. 3464 at 14]—an admission that the FBG Debtors have already violated multiple court orders that may have impacted Evolution's collateral. Moreover, the Trustee Letter requesting the deposit of $21.2 million into the Court Registry has gone unanswered for over a week, continuing the FBG Debtors' pattern of ignoring demands related to Evolution's collateral and placing into renewed question the existence of funds necessary to address such violations.

39. This Court possesses ample authority to order deposit into the Court Registry. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Courts have exercised their authority to enforce turnover orders where a debtor has failed to safeguard, account for, or surrender estate property. *See, e.g., In re Tate*, 521 B.R. 427, 431–32, 444–48 (Bankr. S.D. Ga. 2014) (enforcing turnover order where debtor failed to account for estate funds, provided false and incomplete accountings, and repeatedly disregarded court orders); *In re Shore*, 193 B.R. 598, 600–03 (S.D. Fla. 1996) (affirming civil contempt order where debtor received estate property, failed to disclose or turn over the funds, and disobeyed an agreed turnover order). The FBG Debtors' track record in these cases—breaching the Adequate Protection Stipulation, misrepresenting the status of collections, ceasing facility-level reporting, commingling $21.2 million in Evolution's cash collateral with FBG Debtor assets, and their CEO's testimony that the funds are "long gone"—demonstrates that they cannot be trusted to hold Evolution's collateral, even in a segregated account. The FBG Debtors' Chapter 7 Trustee's failure to respond to the Trustee Letter provides no confidence that these practices have been remedied post-conversion.

40. Deposit of all amounts collected on account of post-petition accounts receivable generated from the Warehouses is the most effective means of preserving the status quo while the Adversary Proceeding determines ownership: the funds will be held under the Court's direct control, removing any risk of further dissipation, commingling, or unauthorized use by any party. This is precisely the outcome the Court contemplated when it directed that Evolution's collateral "get parked somewhere" where "everybody gets comfortable that the cash is somewhere." Jan. 20, 2026 Hr'g Tr. at 48:11–16, 49:18–21. No location is more secure than the Court's own Registry.

**Emergency Consideration**

41. Pursuant to Bankruptcy Local Rule 9013-1, Evolution respectfully requests emergency consideration of this Motion at the Court's earliest convenience. The circumstances warrant immediate attention for the following reasons:

42. Evolution and the SPV Trustee have repeatedly attempted to secure preservation of the disputed proceeds. Evolution's July 3, 2026 Demand Letter went unanswered, and the Segregation Motion remained unresolved when the FBG Debtors' cases were converted to chapter 7. Following conversion, the SPV Trustee requested that the FBG Trustee agree to refrain from any further use or disbursement of the disputed proceeds and deposit approximately $21.2 million into the Court Registry. *See supra* ¶ 26. That request also went unanswered. The present Motion therefore seeks post-conversion relief necessary to preserve the disputed property, rather than enforcement of relief that was requested but never entered in connection with the Segregation Motion.

43. The risk of irreparable harm is immediate and ongoing. The FBG Debtors' CEO has testified that the disputed funds are "long gone." Each day that passes without Court intervention increases the risk that Evolution's collateral will be further dissipated or compromised beyond recovery.

44. Finally, no party will be prejudiced by the relief sought in this Motion. All parties will retain their right to assert any claim or priority lien against the amounts deposited in the Court Registry, and to assert a right to accounts receivable collected from sales of inventory at the Warehouses.

WHEREFORE, for the reasons set forth herein, Evolution respectfully requests that the Court enter the Proposed Order granting the relief requested in this Motion and such other and further relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 15th day of September 2026.

**GRAY REED**

By: */s/ Jason S. Brookner*
Jason S. Brookner
Texas Bar No. 24033684
Emily F. Shanks
Texas Bar No. 24110350
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email: jbrookner@grayreed.com
eshanks@grayreed.com

- and -

**PROSKAUER ROSE LLP**
Vincent Indelicato (admitted *pro hac vice*)
Matthew R. Koch (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: vindelicato@proskauer.com
mkoch@proskauer.com

- and -

Charles A. Dale (admitted *pro hac vice*)
One International Plaza
Boston, MA 02110-2600
Telephone: (617) 526-9600
Email: cdale@proskauer.com

*Counsel to the Evolution Inventory Lender*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 15th day of September 2026, he caused a true and correct copy of the foregoing document by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Jason S. Brookner*
Jason S. Brookner

# EXHIBIT A

## Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| FIRST BRANDS GROUP, LLC, *et al.*, | ) | Case No. 25-90399 (CML) |
| Debtors.[1] | ) | Jointly Administered |

**ORDER GRANTING EMERGENCY MOTION OF EVOLUTION CREDIT PARTNERS TO COMPEL TURNOVER AND DEPOSIT OF POST-PETITION ACCOUNTS RECEIVABLE PROCEEDS INTO THE COURT REGISTRY**

[Relates to Docket No. [_______]]

Upon the motion (the "Motion")[2] of Evolution for entry of an order, (a) compelling the FBG Debtors to immediately transfer no less than $21.2 million (or such greater amount as has been collected to date from post-petition accounts receivable generated from sales of inventory at the Warehouses) into the registry of this Court (the "Court Registry"), to be held pending resolution of the parties' competing claims to such funds in the adversary proceeding captioned Evolution Credit Opportunity Master Fund II-B, L.P. v. First Brands Group, LLC, et al., Adv. No. 25-03800 (the "Adversary Proceeding"); (b) compelling the FBG Debtors to provide Evolution with an accounting of all such collections, including the seller Warehouse location, the identity of each payor, the applicable invoice numbers, and the amounts and dates of each collection; (c) compelling the FBG Debtors to provide Evolution with ongoing weekly reporting of accounts receivable collected from the Warehouses, with such amounts to be immediately deposited into

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the Court Registry on the same terms; (d) prohibiting the FBG Debtors from using, disbursing, or otherwise disposing of any funds collected on account of post-petition accounts receivable from the Warehouses pending deposit into the Court Registry; and (e) granting such other and further relief as this Court deems just and proper; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court being empowered to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is permissible pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing on the Motion (the "Hearing"); and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1. The Motion is GRANTED as set forth herein.

2. The FBG Debtors are directed to transfer, within no more than two (2) Business Days hereof, no less than $21.2 million (or such greater amount as has been collected to date from post-petition accounts receivable generated from sales of inventory at the Warehouses) into the Court Registry, to be held pending resolution of the parties' competing claims to such funds in the Adversary Proceeding.

3. The FBG Debtors are compelled and directed to provide Evolution with an accounting of all collections of Evolution Collateral, including the seller Warehouse location, the identity of each payor, the applicable invoice numbers, and the amounts and dates of each collection since the Petition Date.

4. The FBG Debtors shall provide Evolution with ongoing weekly reporting of accounts receivable collected from the Warehouses, with such amounts to be immediately deposited into the Court Registry on the same terms as set forth in paragraph 2 hereof.

5. Absent further order of this Court, the Debtors are prohibited from using, disbursing, or otherwise disposing of any funds collected on account of post-petition accounts receivable from the Warehouses pending deposit into the Court Registry.

6. Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7. This Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Signed: __________, 2026

______________________________

Christopher M. López
United States Bankruptcy Judge

# EXHIBIT B

**Trustee Letter**

NATHAN
SOMMERS
GIBSON
DILLON

September 3, 2026

<u>*VIA EMAIL eengelhart@rossbanks.com*</u>
Eva Engelhardt
Ross, Banks, May, Cron and Cavin P.C.
7700 San Felipe, Suite 550
Houston, TX 77063

**Re:** ***Evolution SPV Debtors' Post-Petition Accounts Receivable, In re First Brands Group, LLC, et al., Case No. 25-90399 (Bankr. S.D. Tex.)***

Dear Ms. Engelhardt,

I serve as the Chapter 7 trustee for the bankruptcy estates of Patterson Inventory, LLC; Patterson Inventory Holdings, LLC; Starlight Inventory I, LLC; and Starlight Inventory Holdings I, LLC (collectively, the "Evolution SPV Debtors").[1]

I am writing to bring to your attention a matter that warrants immediate action because it involves the FBG Debtors'[2] use of funds that the Evolution SPV Debtors claim as estate property. The FBG Debtors have collected approximately $21.2 million in post-petition accounts receivable from sales of inventory located at four warehouses: 1100 and 1380 Corporate Drive, McHenry, Illinois; 14528 Bonelli Street, City of Industry, California; and 2701 Keystone Pacific Parkway, Suite 100, Patterson, California (the "Warehouses"). The Evolution SPV Debtors assert they owned the inventory at those Warehouses as of the petition date, and the receivables generated from its sale are accordingly the property of the Evolution SPV Debtors' estates. Evolution loaned money to the Evolution SPV Debtors to buy inventory from Brake Parts Inc. ("BPI"), and the acquired inventory served as collateral for the loan. The FBG Debtors disagree that the Evolution SPV Debtors own the inventory, challenge Evolution's asserted security interest, and contend that the inventory was owned predominantly or entirely by BPI. That dispute remains unresolved and is the subject of a pending adversary proceeding (Adv. No. 25-03800).

On November 9, 2025, the Court entered a stipulation and agreed order requiring the FBG Debtors to maintain, above specified thresholds, the inventory that Evolution claimed secured its interest, tested on a weekly "true-up" date, and permitting them to cure any dip below that threshold within five business days by depositing the cash into segregated accounts or replenishing with inventory. Docket No. 609 ¶ 4. On December 23, 2025, Evolution moved to enforce the

---

1 As used herein, "Evolution" means Evolution Credit Opportunity Master Fund II-B, L.P., the secured lender to the Evolution SPV Debtors under two inventory finance facilities secured by inventory located at the Warehouses.

2 As used herein, the "FBG Debtors" refers to First Brands Group, LLC and its debtor affiliates, as debtors and debtors in possession in the cases jointly administered at Case No. 25-90399 (Bankr. S.D. Tex.), which were converted to chapter 7 on September 1, 2026. *See* Docket No. 3748.

Attorneys and Counselors
1400 Post Oak Boulevard, Suite 300
Houston, Texas 77056

Tel 713.960.0303
Fax 713.892.4800
www.nathansommers.com

*direct tel* (713) 892-4801
*e-mail* rsommers@nathansommers.com

NATHAN
SOMMERS
GIBSON
DILLON

stipulation, alleging the FBG Debtors breached by allowing the inventory to decrease below the specified threshold without curing it. Docket No. 1076. The Court found the FBG Debtors had, indeed, breached the stipulation, and ruled that the FBG Debtors were "prohibited from using or purchasing Evolution cash collateral or Evolution collateral absent further order of the court," and directed that the proceeds of that collateral be "parked somewhere in a way that it doesn't get comingled with anything else." Docket No. 3144 ¶¶ 12–13 (quoting Jan. 20, 2026, Hr'g Tr. at 46:4–7, 48:11–16).

According to Evolution, the FBG Debtors, following the Court's ruling, claimed that they had not been able to collect accounts receivable from Evolution's facilities. Docket No. 3144 ¶¶ 4, 16. Subsequently, the FBG Debtors' financial advisor, Alvarez & Marsal, reported approximately $1.5 million in BPI accounts receivable. *Id.* It was not until July 1, 2026 that the FBG Debtors disclosed that the amount was actually substantial—$21.2 million—and that the FBG Debtors had segregated only $1.6 million of that amount. *Id.* ¶ 4; Docket No. 3218 ¶ 19.

Prior to the conversion of the FBG Debtors' cases to Chapter 7, the FBG Debtors made clear that they had no intention to comply with the Court's order not to use Evolution cash collateral. When asked, the FBG Debtors asserted that no one can show the collected funds "even still exist," Docket No. 3218 ¶ 28, and testifying that the disputed collateral is "long gone," Docket No. 3464 ¶ 14 (citing deposition testimony of Charles Moore, acting chief executive officer of the FBG Debtors). While I disagree with the contention that the funds are "long gone," these statements make clear that the FBG Debtors had no intention of segregating proceeds of these inventory sales.

On July 8, 2026, Evolution filed a motion to compel segregation of $21.2 million, Docket No. 3144, and I joined it as chapter 7 trustee, Docket No. 3151. While there is a dispute over the ownership of the inventory and the right to sale proceeds, there can be no dispute that the funds should not be moved until those issues are resolved. Segregating those funds will ensure that no party claiming rights in the inventory is prejudiced pending resolution of the dispute. It is also what the Court contemplated in its recent order converting the FBG Debtors' cases to Chapter 7. There, the Court expressly stated that "[n]othing in this Order shall be construed to permit, without consent or further order of the Court, any use of assets, cash, or collateral held by a party other than the DIP Secured Parties or ABL Secured Parties that is subject to an asserted and not withdrawn claim or objection by any party in interest that has not been resolved, overruled, or determined by a final, non-appealable order." Docket No. 3748 ¶ 5.

In accordance with the above, I request that the FBG Debtors refrain from any further use or disbursement of these funds. To ensure there is not inadvertent use of the disputed cash, I request that you agree to deposit $21.2 million into the Court's registry.

Thank you for your attention to this matter. I am happy to discuss the issue further at your convenience.

NATHAN
SOMMERS
GIBSON
DILLON

Respectfully,

By: /s/Ronald J. Sommers

Ronald J. Sommers
Texas Bar No. 18842500
rsommers@nathansommers.com
Nathan Sommers Gibson Dillon,
A Professional Corporation
1400 Post Oak Blvd. Suite 300
Houston, TX 77056
Phone: (713) 960-0303
Fax: (713) 892-4800

# EXHIBIT C

## July 3 Demand Letter

Proskauer Rose LLP Eleven Times Square New York, NY 10036-8299

Vincent Indelicato
Global Co-Chair, Restructuring
d +1.212.969.4248
f 212.969.2900
vindelicato@proskauer.com
www.proskauer.com

July 3, 2026

**VIA E-MAIL**

Mr. Clifford W. Carlson, Esq.
Weil, Gotshal & Manges LLP
700 Louisiana Street, Suite 3700
Houston, TX 77002
Email: clifford.carlson@weil.com

Re: *In re: First Brands Group, LLC, et al.*, Case No. 25-90399 (CML)

**Demand for Turnover of Collected Post-Petition Receivables From West Coast and Midwest Distribution Centers**

Dear Cliff:

We write to you as counsel to Evolution Credit Opportunity Master Fund II-B, L.P. (the "Evolution Inventory Lender" and together with its affiliated lending entities, "Evolution")[1] with respect to the collection of post-petition accounts receivable resulting from the sales of inventory from the West Coast and Midwest distribution centers associated with the Brake Parts, Inc. business unit of the debtors in the subject bankruptcy case (collectively, the "Debtors"). As you know, the Evolution Inventory Lender asserts a first-priority security interest in the assets of certain Special Purpose Vehicle debtors, including all inventory located in the following warehouse locations: (a) 1100 Corporate Drive and 1380 Corporate Drive, McHenry, IL, and (b) 14528 Bonelli St., City of Industry, CA and 2701 Keystone Pacific Pkwy, Suite 100 Patterson, CA (collectively, the "Warehouses"), and all accounts receivable and other proceeds thereof.

Since the Petition Date, Evolution has repeatedly asserted its rights to such assets and has demanded information from the Debtors regarding efforts to collect, segregate, and maintain Evolution's collateral. These efforts include, but are not limited to, (a) filing an adversary proceeding to determine its priority security interests in the subject assets (Adv. Proc. No. 25-3800), (b) entering into multiple stipulations for adequate protection of its interests, requiring the Debtors to segregate collections of subject accounts receivable (*see* Docket Nos. 147, 216, and 609), (c) filing a motion to enforce the stipulated relief once violated by the Debtors (Docket No. 1076), (d) affirmatively demanding additional adequate protection of its interests (Docket No. 1892), and (e) multiple meet and confer sessions with the Debtors and their professionals attempting to address the Debtors' deficiencies in collecting post-petition accounts receivable that constitute Evolution's collateral.

---

[1] "Evolution" shall mean, individually and collectively, Evolution Credit Opportunity Master Fund II-B, L.P., Evolution Credit Partners Trade Finance Master, L.P. (as successor in interest to Evolution Credit Partners Trade Finance L.P.), Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution affiliated funds.

Proskauer»



As a result of Evolution's efforts, (a) the Debtors were required to segregate and maintain in escrow the receipts of collected accounts receivable, (b) return $25.7 million of the Debtors' cash to the segregated factored receivables account for Evolution's benefit, and (c) were prohibited as of January 20, 2026 from using Evolution's collateral in the operation of its business. *See generally* Jan. 20, 2026 Hr'g Tr. (finding Debtors to have violated the adequate protection stipulations executed with Evolution, prohibiting further use of Evolution collateral, and stating that collections on sales of Evolution collateral were required to "get parked somewhere so it doesn't get commingled with anything else" and could be applied to Evolution's first-priority perfected lien on its collateral and proceeds).

The inventory located in the Warehouses and its proceeds do not constitute DIP Collateral. *See* Docket No. 608, ¶ 22(p) (specifically excluding the SPV Debtors and all of their assets from the DIP collateral package and adequate protection package). These assets also do not constitute ABL Priority Collateral. *See* Docket No. 3046-7 at 1-2 (List of ABL Collateral Trust Assets, including the inventory located at specified warehouses, excluding the Warehouses).

Following the Court's prohibition against further Debtor use of Evolution's collateral, Evolution sought clarity and information from the Debtors regarding their efforts to collect post-petition accounts receivable from sales of inventory at the Warehouses. Indeed, as of January 24, 2026, following the Debtors' violations of the stipulated orders entered into with Evolution, the Debtors reported having made no substantial progress in collecting such accounts receivable.

Remarkably, after months of pursuing critical information and reporting from the Debtors, on July 1, 2026, Evolution learned from the Debtors ***for the first time*** that the Debtors have collected no less than $21.5 million from collection of post-petition accounts receivable generated from sales of inventory at the Warehouses. These collections have not been segregated in accordance with the Debtors' obligations under their stipulations with Evolution, the Bankruptcy Court's order prohibiting the Debtors' further use of any and all Evolution collateral and cash collateral in accordance with the Bankruptcy Code, and must be turned over to Evolution. The Debtors' failure to do so is further failure to provide adequate protection to Evolution as required by the Bankruptcy Code and the Court.

**Evolution hereby requests the Debtors confirm (i) they have transferred $21.5 million free and clear of any and all liens, encumbrances, and interests into a segregated account for Evolution's sole benefit, and (ii) their agreement to provide Evolution with ongoing weekly reporting of accounts receivable collected from sales of inventory at the Warehouses with such amounts to be segregated on the same terms.**

**Should the Debtors fail to provide prompt confirmation of compliance with these requests, Evolution intends to seek emergency relief, including an order compelling the segregation and turnover of such accounts receivable, together with any other appropriate relief.**

We are available at your convenience to discuss should you have any questions.

Evolution reserves all rights.

Sincerely,

/s/ Vincent Indelicato

Vincent Indelicato

cc: Ronald Sommers, Chapter 7 SPV Debtors' Trustee
Michael Duke, Esq.
Charles A. Dale III, Esq.
Jordan Sazant, Esq.