# Exhibit 6

# CREDIT AGREEMENT

dated as of February 27, 2024

among

Instant Brands Litigation Trust,
as the Borrower,

Acquiom Agency Services LLC,
as Administrative Agent

and

The Lenders Party Hereto

# TABLE OF CONTENTS

Page


ARTICLE I DEFINITIONS AND INTERPRETATION .... 1

SECTION 1.01 DEFINED TERMS .... 1

SECTION 1.02 OTHER INTERPRETIVE PROVISIONS .... 12

ARTICLE II LOAN FACILITY .... 13

SECTION 2.01 LOANS .... 13

SECTION 2.02 BORROWINGS OF LOANS .... 13

SECTION 2.03 PREPAYMENTS .... 13

SECTION 2.04 REPAYMENT OF LOANS .... 13

SECTION 2.05 INTEREST AND FEES. .... 13

SECTION 2.06 TERMINATION OR REDUCTION OF COMMITMENTS .... 14

SECTION 2.07 NOTIONAL CONVERSION RIGHT. .... 14

SECTION 2.08 PAYMENTS; GENERALLY. .... 15

SECTION 2.09 SHARING OF PAYMENTS BY LENDERS. .... 15

SECTION 2.10 INCREMENTAL BORROWINGS. .... 16

SECTION 2.11 DEFAULTING LENDERS. .... 18

ARTICLE III TAXES, INCREASED COSTS PROTECTION AND ILLEGALITY .... 19

SECTION 3.01 TAXES .... 19

SECTION 3.02 ILLEGALITY .... 22

SECTION 3.03 BENCHMARK TRANSITION. .... 22

SECTION 3.04 INCREASED COSTS .... 24

SECTION 3.05 COMPENSATION FOR LOSSES .... 25

SECTION 3.06 MITIGATION OBLIGATIONS; REPLACEMENT OF LENDERS. .... 25

SECTION 3.07 SURVIVAL. .... 26

SECTION 3.08 CHANGES IN LAW; IMPRACTICABILITY OR ILLEGALITY .... 26

ARTICLE IV CONDITIONS PRECEDENT .... 26

SECTION 4.01 CONDITIONS TO CLOSING DATE AND AVAILABILITY OF THE TRANCHE 1 LOANS .... 26

SECTION 4.02 CONDITIONS TO AVAILABILITY OF THE TRANCHE 2 LOANS .... 27

SECTION 4.03 CONDITIONS TO AVAILABILITY OF THE TRANCHE 3 LOANS .... 27

ARTICLE V REPRESENTATIONS AND WARRANTIES .... 28

SECTION 5.01 ORGANIZATION; POWERS .... 28

SECTION 5.02 AUTHORIZATION .... 28

SECTION 5.03 NO CONFLICTS .... 28

SECTION 5.04 LITIGATION .... 28

Page

SECTION 5.05 GOVERNMENTAL APPROVALS ........ 28
SECTION 5.06 NO DEFAULT ........ 28
ARTICLE VI AFFIRMATIVE COVENANTS ........ 28
SECTION 6.01 FINANCIAL STATEMENTS ........ 29
SECTION 6.02 TELEPHONIC MEETING. ........ 29
SECTION 6.03 OTHER INFORMATION ........ 29
SECTION 6.04 EXISTENCE ........ 29
SECTION 6.05 COMPLIANCE WITH LAWS ........ 29
SECTION 6.06 BOOKS AND RECORDS ........ 29
SECTION 6.07 APPROVED BUDGET. ........ 29
SECTION 6.08 USE OF PROCEEDS ........ 29
ARTICLE VII NEGATIVE COVENANTS ........ 30
SECTION 7.01 LIENS ........ 30
SECTION 7.02 LIMITATION ON INCURRENCE OF DEBT ........ 30
SECTION 7.03 MERGER, CONSOLIDATION OR SALE OF ALL OR SUBSTANTIALLY ALL ASSETS ........ 30
SECTION 7.04 LIMITATION ON SALES OF ASSETS ........ 30
SECTION 7.05 LIMITATION ON RESTRICTED PAYMENTS ........ 30
SECTION 7.06 PREPAYMENTS OF INDEBTEDNESS ........ 30
SECTION 7.07 AMENDMENTS AND MODIFICATIONS ........ 30
SECTION 7.08 SETTLEMENT ........ 30
SECTION 7.09 INVESTMENTS ........ 31
SECTION 7.10 USE OF PROCEEDS ........ 31
SECTION 7.11 ACTIVITIES OF BORROWER ........ 31
ARTICLE VIII EVENTS OF DEFAULT AND REMEDIES ........ 31
SECTION 8.01 EVENTS OF DEFAULT ........ 31
SECTION 8.02 REMEDIES UPON EVENT OF DEFAULT ........ 31
SECTION 8.03 APPLICATION OF FUNDS ........ 32
ARTICLE IX THE ADMINISTRATIVE AGENT ........ 32
SECTION 9.01 APPOINTMENT AND AUTHORITY. ........ 32
SECTION 9.02 [RESERVED]. ........ 33
SECTION 9.03 EXCULPATORY PROVISIONS ........ 33
SECTION 9.04 RELIANCE BY ADMINISTRATIVE AGENT. ........ 35
SECTION 9.05 DELEGATION OF DUTIES. ........ 36
SECTION 9.06 NON-RELIANCE ON ADMINISTRATIVE AGENT AND OTHER LENDERS. ........ 36
SECTION 9.07 WITHHOLDING TAX. ........ 37

Page

SECTION 9.08 ERRONEOUS PAYMENTS. .... 37
SECTION 9.09 RESIGNATION OF ADMINISTRATIVE AGENT. .... 38
ARTICLE X MISCELLANEOUS .... 39
SECTION 10.01 AMENDMENTS. .... 39
SECTION 10.02 EXPENSES; INDEMNITY; DAMAGES WAIVER .... 40
SECTION 10.03 SUCCESSORS AND ASSIGNS. .... 41
SECTION 10.04 NOTICE GENERALLY .... 43
SECTION 10.05 SEVERABILITY .... 44
SECTION 10.06 ENTIRE AGREEMENT .... 45
SECTION 10.07 GOVERNING LAW; JURISDICTION; WAIVER OF JURY TRIAL .... 45

This CREDIT AGREEMENT (as amended, restated, supplemented or otherwise modified from time to time, this "Agreement") is entered into as of February 27, 2024, among Instant Brands Litigation Trust (the "Borrower" or the "Litigation Trust"), each lender from time to time party hereto (collectively, the "Lenders" and individually, a "Lender"), and Acquiom Agency Services LLC, as administrative agent (the "Administrative Agent").

PRELIMINARY STATEMENTS

WHEREAS, on June 12, 2023, Instant Brands Acquisition Holdings Inc., a Delaware corporation and its United States subsidiaries (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") and commenced their chapter 11 cases (the "Chapter 11 Cases"), which are being jointly administered under Case No. 23-90716;

WHEREAS, on June 15, 2023, all of the Debtors commenced proceedings before the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") under Part IV of the Companies' Creditors Arrangement Act, R.S.C., 1985, c. C-36, as amended (the "CCAA") recognizing the Bankruptcy Cases as "foreign main proceedings";

WHEREAS, on February 23, 2024, the Bankruptcy Court entered its order (the "Confirmation Order") confirming the Plan (as defined below);

WHEREAS, on February 26, 2024, the CCAA Court entered an order recognizing the Confirmation Order (the "CCAA Recognition Order");

WHEREAS, the Plan and that certain Litigation Trust Agreement entered into and effective as of the Effective Date provide for, among other things, (i) the creation of the Borrower, (ii) the contribution of the Litigation Trust Assets (hereinafter defined) to the Borrower and (iii) the liquidation (and conversion to cash) of the Litigation Trust Assets and the distribution of the proceeds therefrom; and

WHEREAS, pursuant to the Plan and the terms set forth herein, the Lenders have agreed to make up to $6,000,000 of loans (the "Commitment Amount") to fund the administration, management, liquidation (and conversion to cash) of the Litigation Trust Assets by, among other means, pursuing, prosecuting and/or settling claims and/or causes of action constituting the Litigation Trust Assets, subject to the terms and conditions set forth herein.

In consideration of the premises and the agreements, provisions and covenants herein contained, the parties hereto covenant and agree as follows:

ARTICLE I

DEFINITIONS AND INTERPRETATION

Section 1.01 Defined Terms. As used in this Agreement, the following terms shall have the meanings set forth below:

"Administrative Agent" has the meaning set forth in the Preamble.

"Affiliate" means, with respect to any Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified.

"Agreement" has the meaning set forth in the Preamble.

"Agent Fee Letter" means the Agent Fee Letter, dated as of the date hereof, by and between the Borrower and the Administrative Agent.

"Applicable Rate" means (a) with respect to Tranche 1 Loans, 15.00% per annum; (b) with respect to Tranche 2 Loans, 15.00% per annum and (c) with respect to Tranche 3 Loans, 15.00% per annum.

"Approved Budget" means the Initial Approved Budget and any Proposed Supplemental Budget approved in accordance with Section 6.07 hereof.

"Approved Fund" means (a) any investment company, fund, trust, securitization vehicle or conduit that is engaged in making, purchasing, holding or otherwise investing in commercial loans and similar extensions of credit in the ordinary course of business, or (b) any Person (other than a natural person) that temporarily warehouses loans for any Lender or any entity described in the preceding clause (a) and that, in each case, with respect to each of the preceding clauses (a) and (b), is administered or managed by (i) a Lender, (ii) an affiliate of a Lender or (iii) a Person (other than a natural person) or an affiliate of a Person (other than a natural person) that administers or manages a Lender.

"Available Tenor" shall mean, as of any date of determination with respect to the then-current Benchmark, as applicable, (a) if the then-current Benchmark is a term rate, any tenor for such Benchmark that is or may be used for determining the length of an Interest Period or (b) otherwise, any payment period for interest calculated with reference to such Benchmark, as applicable, pursuant to this Agreement as of such date.

"Bankruptcy Code" means, as applicable, Title 11 of the U.S. Code (11 U.S.C. §101 et seq.), as now and hereafter in effect and applicable to the Chapter 11 Cases, or any successor statute, and any rule or regulation issued thereunder.

"Bankruptcy Court" has the meaning set forth in the Preliminary Statements.

"Backstop Premium" has the meaning set forth Section 2.05(e).

"Backstop Premium Amount" means 10.0% of the Commitment Amount.

"Backstop Percentage Allocation" means the quotient of (a) the Backstop Premium Amount and (b) the product of (i) 1.5 and (ii) the Notional Base Price.

"Base Rate" means the rate *per annum* last quoted by The Wall Street Journal as the "Prime Rate" in the U.S. or, if The Wall Street Journal ceases to quote such rate, the highest per annum interest rate published by the Federal Reserve Board in Federal Reserve Statistical Release H.15 (519) (Selected Interest Rates) as the "bank prime loan" rate or, if such rate is no longer quoted therein, any similar rate quoted therein (as determined by the Administrative Agent (as directed by the Required Lenders)) or any similar release by the Federal Reserve Board (as determined by the Administrative Agent (as directed by the Required Lenders)). Any change in the Prime Rate shall take effect at the opening of business on the day such change is publicly announced or quoted as being effective.

"Base Rate Loan" means a Loan that bears interest at a rate based on the Base Rate.

"Benchmark" means, initially, the Term SOFR; provided that if a Benchmark Transition Event has occurred with respect to the Term SOFR or the then-current Benchmark, then "Benchmark" means the

applicable Benchmark Replacement to the extent that such Benchmark Replacement has replaced such prior benchmark rate pursuant to Section 3.03(a).

"Benchmark Replacement" means, with respect to any Benchmark Transition Event, the sum of (a) the alternate benchmark rate and (b) an adjustment (which may be a positive or negative value or zero), in each case, that has been selected by the Required Lenders and the Borrower (and notified to the Administrative Agent), as the replacement Benchmark in their reasonable discretion; provided that, such Benchmark Replacement is administratively feasible for the Administrative Agent; provided further that, if such Benchmark Replacement as so determined would be less than the Floor, such Benchmark Replacement will be deemed to be the Floor for the purposes of this Agreement and the other Loan Documents.

"Benchmark Replacement Conforming Changes" means, with respect to any Benchmark Replacement, any technical, administrative or operational changes (including changes to the definition of "Default Rate," the definition of "Business Day," the definition of "Interest Period," timing and frequency of determining rates and making payments of interest, timing of borrowing requests or prepayment, conversion or continuation notices, the applicability and length of lookback periods, the applicability of breakage provisions, and other technical, administrative or operational matters) that the Required Lenders decide may be appropriate to reflect the adoption and implementation of such Benchmark Replacement and to permit the administration thereof by the Administrative Agent in a manner substantially consistent with market practice (or, if the Administrative Agent decides that adoption of any portion of such market practice is not administratively feasible or if the Required Lenders determine that no market practice for the administration of such Benchmark Replacement exists, in such other manner of administration as the Administrative Agent (as directed by the Required Lenders) decides is reasonably necessary in connection with the administration of this Agreement and the other Loan Documents); provided that such Benchmark Replacement Conforming Changes implement changes that are administratively feasible for the Administrative Agent.

"Benchmark Replacement Date" means the earliest to occur of the following events with respect to the then-current Benchmark:

(a) the first date on which such Benchmark (or the published component used in the calculation thereof) has been determined and announced by the regulatory supervisor for the administrator of such Benchmark (or such component thereof) to be non-representative; or

(b) the first date on which all Available Tenors of such Benchmark (or the published component used in the calculation thereof) has been or, if such Benchmark is a term rate, all Available Tenors of such Benchmark (or such component thereof) have been determined and announced by the regulatory supervisor for the administrator of such Benchmark (or such component thereof) to be non-representative; provided that such non-representativeness will be determined by reference to the most recent statement or publication referenced in clause (a) of the definition of "Benchmark Transition Event" and even if such Benchmark (or such component thereof) or, if such Benchmark is a term rate, any Available Tenor of such Benchmark (or such component thereof) continues to be provided on such date.

"Benchmark Transition Event" means, with respect to any then-current Benchmark the occurrence of a public statement or publication of information by or on behalf of the administrator of the then-current Benchmark, the regulatory supervisor for the administrator of such Benchmark (or the published component used in the calculation thereof), the Board of Governors of the Federal Reserve System, the Federal Reserve Bank of New York, an insolvency official with jurisdiction over the administrator for such Benchmark (or such component), a resolution authority with jurisdiction over the administrator for such Benchmark (or such component) or a court or an entity with similar insolvency or resolution authority over the administrator for such Benchmark (or such component), announcing or stating that (a) such administrator

has ceased or will cease on a specified date to provide all Available Tenors of such Benchmark (or such component), permanently or indefinitely, provided that, at the time of such statement or publication, there is no successor administrator that will continue to provide any Available Tenor of such Benchmark (or such component) or (b) all Available Tenors of such Benchmark (or such component) are or will no longer be representative of the underlying market and economic reality that such Benchmark is intended to measure and that representativeness will not be restored.

"Benchmark Unavailability Period" means the period (if any) (x) beginning at the time that a Benchmark Replacement Date has occurred if, at such time, no Benchmark Replacement has replaced the then-current Benchmark for all purposes hereunder and under any Loan Document in accordance with Section 3.03 and (y) ending at the time that a Benchmark Replacement has replaced the then-current Benchmark for all purposes hereunder and under any Loan Document in accordance with Section 3.03.

"Borrower" has the meaning set forth in the Preamble.

"Borrower Materials" means materials and/or information provided by or on behalf of the Borrower hereunder.

"Borrowing" means a borrowing of Loans pursuant to Section 2.01.

"Budget Event" means, during any calendar month starting with the first full month after the Closing Date, the aggregate amount of actual disbursements shall exceed the projected aggregate disbursements in the Approved Budget by an amount greater than the Permitted Variance.

"Business Day" means any day other than a Saturday, Sunday or other day that is a federal holiday or any day on which commercial banks are authorized or obligated by law, regulation or executive order to remain closed under the Laws of, or are in fact closed in, the state of New York; *provided*, *however*, that for purposes of determining the borrowing, payment or continuation of, or determination of interest rate on, the Loans, "Business Day" shall exclude any day on which the Securities Industry and Financial Markets Association recommends that the fixed income departments of its members be closed for the entire day for purposes of trading in United States government securities.

"Change in Law" means the occurrence, after the date of this Agreement, of any of the following: (a) the adoption or taking effect of any law, rule, regulation or treaty, (b) any change in any law, rule, regulation or treaty or in the administration, interpretation, implementation or application thereof by any Governmental Authority or (c) the making or issuance of any request, rule, guideline or directive (whether or not having the force of law) by any Governmental Authority; *provided* that notwithstanding anything herein to the contrary, (x) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all requests, rules, guidelines or directives thereunder or issued in connection therewith or in the implementation thereof and (y) all requests, rules, guidelines or directives promulgated by the Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States or foreign regulatory authorities, in each case pursuant to Basel III, shall in each case be deemed to be a "Change in Law", regardless of the date enacted, adopted, issued or implemented.

"Chapter 11 Cases" has the meaning set forth in the Preliminary Statements.

"Closing Date" means the first date on which all conditions precedent in Section 4.01 are satisfied or waived in accordance with Section 4.01.

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Commitment" means the several obligations of the Lenders to make Loans to the Borrower hereunder as it may be reduced from time to time pursuant to Section 2.06. The initial Commitments of the Lenders with respect to each Tranche as is set forth on Schedule 1,

"Commitment Amount" has the meaning set forth in the Preliminary Statements.

"Common Interest Agreement" means that certain Common Interest Agreement, by and among the Lenders, the Litigation Trustee and the Borrower, dated as of the date hereof (as the same may be amended, amended and restated, extended, supplemented or otherwise modified from time to time pursuant to the terms thereof).

"Confirmation Order" has the meaning set forth in the Plan.

"Contractual Obligation" means as to any Person, any provision of any security issued by such Person or of any agreement, instrument or other undertaking to which such Person is a party or by which it or any of its property is bound.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise. "Controlling" and "Controlled" have meanings correlative thereto.

"Conversion Notice" has the meaning set forth in Section 2.07.

"Debt" of any Person means, without duplication, (a) all indebtedness of such Person for borrowed money and all indebtedness of such Person evidenced by bonds, debentures, notes, loan agreements or other similar instruments; (b) all direct or contingent obligations of such Person arising under or in respect of (i) letters of credit (including standby and commercial), bankers' acceptances, demand guarantees and similar independent undertakings and (ii) surety bonds, performance bonds and similar instruments issued or created by or for the account of such Person; (c) all obligations of such Person to pay the deferred purchase price of property or services (other than trade accounts payable in the ordinary course of business); and (d) all guarantees of such Person in respect of any of the foregoing

"Debtors" has the meaning set forth in the Preliminary Statements.

"Debtor Relief Laws" means the Bankruptcy Code and all other liquidation, dissolution, administration, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, winding up, reorganization (by way of voluntary arrangement scheme of arrangement or otherwise), or similar debtor relief laws of the U.S., any state or territory thereof, the District of Columbia or any other applicable jurisdictions from time to time in effect and affecting the rights of creditors generally.

"Default" means any event that is, or after notice or the passage of time or both would be, an Event of Default.

"Default Rate" means, for any date, an interest rate per annum equal to (a) SOFR with respect to such date plus (b) the Applicable Rate plus (c) 2.00% per annum.

"Defaulting Lender" means, subject to Section 2.11(b), any Lender that (a) has failed to (i) fund all or any portion of its Loans within two (2) Business Days of the date such Loans were required to be funded hereunder unless such Lender notifies the Administrative Agent and the Borrower in writing that such failure is the result of such Lender's reasonable determination that one or more conditions precedent to

funding (each of which conditions precedent, together with any applicable default, shall be specifically identified in such writing) has not been satisfied or waived, or (ii) pay to the Administrative Agent, or any other Lender any other amount required to be paid by it hereunder within two (2) Business Days of the date when due, (b) has notified the Borrower and the Administrative Agent in writing that it does not intend to comply with its funding obligations hereunder, or has made a public statement to that effect (unless such writing or public statement relates to such Lender's obligation to fund a Loan hereunder and states that such position is based on such Lender's reasonable determination that a condition precedent to funding (which condition precedent, together with any applicable default, shall be specifically identified in such writing or public statement) cannot be satisfied), (c) has failed, within three (3) Business Days after written request by the Administrative Agent or Borrower, to confirm in writing to the Administrative Agent and the Borrower that it will comply with its prospective funding obligations hereunder (provided that such Lender shall cease to be a Defaulting Lender pursuant to this clause (c) upon receipt of such written confirmation by Administrative Agent and Borrower), or (d) has, or has a direct or indirect parent company that has, (i) become the subject of a proceeding under any Debtor Relief Laws or (ii) had appointed for it, or its direct or indirect parent company, a receiver, custodian, conservator, trustee, administrator, assignee for the benefit of creditors or similar Person charged with reorganization or liquidation of its, or its direct or indirect parent company's, business or assets, including the Federal Deposit Insurance Corporation or any other state or federal regulatory authority acting in such a capacity. Any determination by Administrative Agent that a Lender is a Defaulting Lender under any one or more of clauses (a) through (d) above shall be conclusive and binding absent manifest error, and such Lender shall be deemed to be a Defaulting Lender (subject to Section 2.11(b)) upon delivery of written notice of such determination to Borrower and each Lender. Notwithstanding the foregoing, the Administrative Agent shall have no obligation to monitor or determine if any lender is a "Defaulting Lender" hereunder; provided that absent a determination by Administrative Agent that a Lender is a Defaulting Lender under any one or more of clauses (a) through (d) above, the determination may be made by the Borrower (with written notice to such Lender and the Administrative Agent), which shall be conclusive and binding absent manifest error, and such Lender shall be deemed to be a Defaulting Lender.

"Deposit Account" means any "deposit account" as defined in Article 9 of the UCC.

"Dollar" and "$" means the lawful money of the United States.

"Effective Date" has the meaning set forth in the Plan.

"Eligible Assignee" means a U.S. Person, who is (a) a Lender, (b) an affiliate of a Lender, (c) an Approved Fund, and (d) any other Person (other than a natural person) consented to in writing by the Administrative Agent and the Borrower (such Borrower consent shall not be unreasonably withheld, delayed or conditioned); provided, that (x) no consent of the Borrower shall be required after the occurrence and during the continuance of an Event of Default under Section 8.01(a), and (y) the consent of the Borrower shall be deemed to have been given unless an objection is received by the Administrative Agent within ten (10) Business Days after notice of a proposed assignment is delivered to Borrower; provided, further, that notwithstanding the foregoing, "Eligible Assignee" shall not include the Borrower.

"Erroneous Payments" has the meaning set forth in Section 9.08.

"Event of Default" has the meaning specified in Section 8.01.

"Excluded Taxes" means any of the following Taxes imposed on or with respect to a Recipient or required to be withheld or deducted from a payment to a Recipient: (a) Taxes imposed on or measured by net income (however denominated), franchise Taxes, and branch profits Taxes, in each case, (i) imposed as a result of such Recipient being organized under the laws of, or having its principal office or, in the case of

any Lender, its applicable lending office located in, the jurisdiction imposing such Tax (or any political subdivision thereof) or (ii) that are Other Connection Taxes; (b) in the case of a Lender, U.S. federal withholding Taxes imposed on amounts payable to or for the account of such Lender with respect to an applicable interest in a Loan or Commitment pursuant to a law in effect on the date on which (i) such Lender acquires such interest in the Loan or Commitment (other than pursuant to an assignment request by the Borrower under Section 3.06(b)) or (ii) such Lender changes its lending office, except in each case to the extent that, pursuant to Section 3.01, amounts with respect to such Taxes were payable either to such Lender's assignor immediately before such Lender became a party hereto or to such Lender immediately before it changed its lending office; (c) Taxes attributable to such Recipient's failure to comply with Section 3.01(e); and (d) any U.S. federal withholding Taxes imposed under FATCA.

"FATCA" means Sections 1471 through 1474 of the Code, as of the date of this Agreement (or any amended or successor version that is substantively comparable and not materially more onerous to comply with), any current or future regulations or official interpretations thereof and any agreement entered into pursuant to Section 1471(b)(1) of the Code and any fiscal or regulatory legislation, official rules or practices adopted pursuant to any intergovernmental agreement, treaty or convention among Governmental Authorities and implementing such Sections of the Code.

"Federal Funds Rate" means, for any day, the greater of (a) the rate calculated by the Federal Reserve Bank of New York based on such day's federal funds transactions by depositary institutions (as determined in such manner as the Federal Reserve Bank of New York shall set forth on its public website from time to time) and published on the next succeeding Business Day by the Federal Reserve Bank of New York as the Federal funds effective rate and (b) 0%.

"Floor" means a rate of interest equal to 0.00% *per annum*.

"Governmental Authority" means the government of the United States of America, Canada or any other nation, or of any political subdivision thereof, including state, local, provincial or otherwise, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including any supra-national bodies such as the European Union or the European Central Bank).

"Incremental Amendment" has the meaning specified in Section 2.10(f).

"Incremental Amount" means $4,000,000.

"Incremental Borrowing Notice" has the meaning specified in Section 2.10(a).

"Incremental Commitment" means a commitment by an Incremental Lender to make Incremental Loans.

"Incremental Facility" has the meaning specified in Section 2.10(a).

"Incremental Facility Closing Date" has the meaning specified in Section 2.10(d).

"Incremental Lender" has the meaning specified in Section 2.10(a).

"Incremental Loan" has the meaning specified in Section 2.10(a).

"Incremental Loan Availability Period" means the period of time prior to six months before the Maturity Date; provided, that the Incremental Term Loan shall be available only so long as (i) the Tranche

1 Loans, the Tranche 2 Loans, and the Tranche 3 Loans have been made and (ii) the Borrower requires financing in excess of the Commitment Amount.

"Incremental Loan Availability Termination Date" means the first date following the end of the Incremental Loan Availability Period.

"Indemnified Taxes" means (a) Taxes, other than Excluded Taxes, imposed on or with respect to any payment made by or on account of any obligation of the Borrower under any Loan Document and (b) to the extent not otherwise described in (a), Other Taxes.

"Indemnitee" has the meaning specified in Section 10.02(b).

"Initial Approved Budget" has the meaning given to it in Section 4.01(e).

"Initial Term SOFR" means with respect to any Loan, Term SOFR for the first Interest Period.

"Interest Payment Date" means, as to any Loan, the last day of each Interest Period applicable to such Loan, and the Maturity Date.

"Interest Period" means three months, beginning on the date each Loan is disbursed.

"Investment" means, as to any Person, any direct or indirect acquisition or investment by such Person, whether by means of (a) the purchase or other acquisition of equity interests or debt or other securities of another Person, (b) a loan, advance or capital contribution to, guarantee or assumption of debt of, or purchase or other acquisition of any other debt or equity participation or interest in, another Person, including any partnership or joint venture interest in such other Person and any arrangement pursuant to which the investor incurs Indebtedness of the type referred to in clause (d) of the definition of "Debt" in respect of such other Person, or (c) the purchase or other acquisition (in one transaction or a series of transactions) of all or substantially all of the property and assets or business of another Person or assets constituting a business unit, line of business or division of such Person. For purposes of covenant compliance, the amount of any Investment shall be the amount actually invested, without adjustment for subsequent increases or decreases in the value of such Investment but giving effect to any returns or distributions of capital or repayment of principal actually received in case by such Person with respect thereto.

"IRS" means the United States Internal Revenue Service.

"Junior Debt" means, with respect to any Loan, debt that is junior in right of payment to such Loan. Junior Debt with respect to the Tranche 1 Loans shall mean (a) the Tranche 2 Loans and (b) the Tranche 3 Loans. Junior Debt with respect to the Tranche 2 Loans shall mean the Tranche 3 Loans. There shall be no Junior Debt in respect of the Tranche 3 Loans.

"Laws" means, collectively, all international, foreign, federal, state and local statutes, treaties, rules, guidelines, regulations, ordinances, codes and administrative or judicial precedents or authorities, including the interpretation or administration thereof by any Governmental Authority charged with the enforcement, interpretation or administration thereof, and all applicable administrative orders, directives, requests, licenses, authorizations and permits of, and agreements with, any Governmental Authority.

"Lender" or "Lenders" has the meaning set forth in the Preamble.



CONFIDENTIAL 

"Lien" means, with respect to any asset, (i) any mortgage, pledge, hypothecation, deed of trust, security interest, lien, charge or similar monetary encumbrance in or on such asset and (ii) the interest of a vendor or lessor under any conditional sale, capitalized lease or other title retention agreement relating to such asset; provided that in no event shall an operating lease or an agreement to sell be deemed to be a Lien.

"Litigation" means litigation pursued by the Borrower in accordance with the Litigation Trust Purpose.

"Litigation Trust Agreement" means that certain Litigation Trust Agreement, dated as of February 27, 2024, among the Litigation Trustee and Instant Brands Acquisition Holdings Inc., a copy of which is attached hereto as Schedule 2.

"Litigation Trust Assets" has the meaning ascribed to such term in the Plan.

"Litigation Trust Recovery Actions" has the meaning set forth in Article I.A of the Plan.

"Litigation Trust Beneficiaries" has the meaning set forth in the Litigation Trust Agreement.

"Litigation Trustee" has the meaning set forth in the Litigation Trust Agreement.

"Litigation Trust Interests" has the meaning set forth in the Litigation Trust Agreement.

"Litigation Trust Proceeds" has the meaning set forth in the Litigation Trust Agreement.

"Litigation Trust Purpose" means the purpose set forth in section 1.04 of the Litigation Trust Agreement.

"Loan" has the meaning specified in Section 2.01.

"Loan Documents" means this Agreement and any related documentation for the loan facility, including, without limitation, the Agent Fee Letter.

"Maturity Date" means the earlier of (a) the date of dissolution of the Borrower (as notified to the Administrative Agent in writing) and (b) five (5) years from the Closing Date.

"Notional Base Price" means the quotient of (a) the greater of (i) $2,250,000 and (ii) the last settlement offer made with respect to the Litigation Trust Recovery Actions between October 3, 2023 and the Effective Date divided by (b) the number of Litigation Trust Interests issued as of the Effective Date.

"Notional Conversion" has the meaning set forth in Section 2.07.

"Notional Conversion Factor" means (a) with respect to Tranche 1 Loans, 1.5; (b) with respect to Tranche 2 Loans, 2.0 and (c) with respect to Tranche 3 Loans, 2.5.

"Notional Conversion Price" means the product of (a) the Notional Base Price and (b) the Notional Conversion Factor.

"Notional Litigation Trust Interests" has the meaning specified in Section 2.07.

"Obligations" means all liabilities, indebtedness and obligations (monetary or otherwise) of the Borrower under this Agreement or any other document or instrument executed in connection herewith, in

each case howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, now or hereafter existing or due or to become due.

"Other Connection Taxes" means, with respect to any Recipient, Taxes imposed as a result of a present or former connection between such Recipient and the jurisdiction imposing such Tax (other than connections arising from such Recipient having executed, delivered, become a party to, performed its obligations under, received payments under, received or perfected a security interest under, engaged in any other transaction pursuant to or enforced any Loan Document, or sold or assigned an interest in any Loan or Loan Document).

"Other Taxes" means all present or future stamp, court or documentary, intangible, recording, filing or similar Taxes that arise from any payment made under, from the execution, delivery, performance, enforcement or registration of, from the receipt or perfection of a security interest under, or otherwise with respect to, any Loan Document, except any such Taxes that are Other Connection Taxes imposed with respect to an assignment (other than an assignment made pursuant to Section 3.05(b)).

"Participant Register" has the meaning specified in Section 10.03(d).

"Payment Recipient" has the meaning specified in Section 9.09.

"Permitted Variance" means a variance of 120% of the estimated aggregate disbursements in the then-in-effect Approved Budget.

"Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, limited liability company, government or any agency or political subdivision hereof or any other entity (or series of any thereof).

"PIK Interest" has the meaning specified in Section 2.05.

"Plan" means the confirmed plan of reorganization with respect to the Debtors pursuant to the Chapter 11 Cases.

"Platform" means IntraLinks or another similar electronic system to which the Administrative Agent will post Borrower Materials to be made available to the Lenders.

"Proposed Supplemental Budget" has the meaning specified in Section 6.07.

"Prepayment Premium" means an amount equal to the premium (which shall be no less than zero) that results in the Specified Return Requirement being satisfied with respect to any Tranche 2 Loan or Tranche 3 Loan being prepaid, as determined by the Administrative Agent, which shall be binding on the parties absent manifest error, (it being understood that a prepayment premium shall be payable only in connection with an optional prepayment pursuant to Section 2.03(a) and in connection with a Refinancing Transaction).

"Recipient" means the Administrative Agent, any Lender or any other recipient of any payment to be made by or on account of any obligation of the Borrower hereunder or under any other Loan Document.

"Refinancing Transaction" means the issuance by the Borrower, or a third party, of Debt, equity or other capital to repay any or all of the Loans prior to the Maturity Date.

"Register" has the meaning specified in Section 10.03(c).

"Required Lenders" means, as of any date of determination, any Lender or Lenders holding in the aggregate more than 50% of the aggregate outstanding principal amount of all Loans and Commitments; *provided*, that the unused outstanding principal amount of all Loans and Commitments, as applicable, of, and the portion of the amount of all Loans held or deemed held by any Defaulting Lender shall be excluded for purposes of making a determination of Required Lenders; *provided, further*, that if at any time, there are two (2) or more unaffiliated Lenders party to this Agreement the term "Required Lenders" must include at least two (2) Lenders that are not Affiliates of each other (Lenders that are Affiliates of each other shall be deemed to be a single Lender for purposes of this definition).

"Requirements of Law" means, as to any Person, any provision of the Plan, Confirmation Order or the Litigation Trust Agreement applicable to such Person, and any law, treaty, rule or regulation or final, non-appealable determination of an arbitrator or a court or other Governmental Authority, in each case applicable to or binding upon such Person or to which any of its material property is subject.

"Reserves" means amounts reflected in the Approved Budget that are reserved to pay the administrative costs and expenses of the Litigation Trust, including the Expense Fund (as defined in the Litigation Trust Agreement), the fees and expenses of the Litigation Trustee, the Litigation Trust Advisory Board (as defined in the Litigation Trust Agreement) and its members and the Professionals (as defined in the Litigation Trust Agreement).

"Restricted Payment" means any payment in contravention to this Agreement or the Litigation Trust Agreement.

"SOFR" means, with respect to any Business Day, a rate per annum equal to the secured overnight financing rate for such Business Day published by the Federal Reserve Bank of New York (or a successor administrator of the secured overnight financing rate) on the website of the Federal Reserve Bank of New York, currently at http://www.newyorkfed.org (or any successor source for the secured overnight financing rate identified as such by the administrator of the secured overnight financing rate from time to time).

"SOFR Loan" means a Loan that bears interest at a rate based on Term SOFR.

"Specified Return Requirement" means an amount, with respect to any Lender in respect of any Tranche 2 Loan or Tranche 3 Loan being prepaid, sufficient to generate (a) in the case of Tranche 2 Loans of such Lender, the greater of (i) an internal rate of return per annum of Initial Term SOFR plus the Applicable Rate with respect to such Tranche 2 Loans and (ii) a 1.5 times multiple of invested capital in respect of the Tranche 2 Loans funded by such Lender and (b) in the case of Tranche 3 Loans of such Lender, the greater of (i) an internal rate of return per annum of Initial Term SOFR plus the Applicable Rate with respect to such Tranche 3 Loans and (ii) a 2.0 times multiple of invested capital in respect of the Tranche 3 Loans funded by such Lender.

"Taxes" means all present or future taxes, levies, imposts, duties, deductions, withholdings (including backup withholding), assessments, fees or other charges imposed by any Governmental Authority, including any interest, additions to tax or penalties applicable thereto.

"Termination Date" means the date on which (a) the Commitments shall have been terminated or expired and (b) the principal of and interest on all Loans, all fees and other Obligations shall have been paid in full.

"Term SOFR" means the forward-looking term rate based on SOFR for a tenor comparable to the applicable Interest Period on the date that is two Business Days prior to the first day of such Interest Period as published by the Term SOFR Administrator.



CONFIDENTIAL 

"Term SOFR Administrator" means CME Group Benchmark Administration Limited (CBA) (or a successor administrator of the term rate as selected by the Administrative Agent (at the direction of the Required Lenders in their reasonable discretion) and that is administratively feasible for the Administrative Agent).

"Tranche" means a particular series of Loans, including Tranche 1 Loans, Tranche 2 Loans, Tranche 3 Loans or Incremental Loans, as applicable.

"Tranche 1 Loan" has the meaning specified in Section 2.01.

"Tranche 2 Loan" has the meaning specified in Section 2.01.

"Tranche 3 Availability Period" means the period of time commencing on the date that is 181 days after the Effective Date and ending on the Tranche 3 Availability Termination Date.

"Tranche 3 Availability Termination Date" means four (4) years from the Effective Date.

"Tranche 3 Loan" has the meaning specified in Section 2.01.

"United States" and "U.S." mean the United States of America.

"U.S. Person" means any Person that is a "United States Person" as defined in Section 7701(a)(30) of the Code.

"Withholding Agent" means the Borrower and the Administrative Agent.

Section 1.02 Other Interpretive Provisions. With reference to this Agreement:

(a) The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation." The word "will" shall be construed to have the same meaning and effect as the word "shall." Unless the context requires otherwise, (i) any definition of or reference to any agreement, instrument or other document shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified or extended, replaced or refinanced, (ii) any reference herein to any Person shall be construed to include such Person's successors and assigns, (iii) the words "herein," "hereof" and "hereunder," and words of similar import when used herein shall be construed to refer to this Agreement in its entirety and not to any particular provision thereof, (iv) all references herein to Articles, Sections, Preamble and Preliminary Statements shall be construed to refer to the Articles and Sections of, and Preamble and Preliminary Statements to, this Agreement, (v) any reference to any Law shall include all statutory and regulatory provisions consolidating, amending, replacing or interpreting such Law and any reference to any law or regulation shall, unless otherwise specified, refer to such Law or regulation as amended, modified or supplemented from time to time and (vi) the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

(b) In the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including," the words "to" and "until" each mean "to but excluding," and the word "through" means "to and including."

(c) Section headings herein are included for convenience of reference only and shall not affect the interpretation of this Agreement.

ARTICLE II

LOAN FACILITY

Section 2.01 Loans. Subject to the terms and conditions set forth herein, the Lenders severally agree to make loans (each such Borrowing, a "Loan"; together with each other Loan, the "Loans") to the Borrower, ratably and in accordance with their Commitments in the following amounts: (a) Loans on the Effective Date in an aggregate principal amount of up to $1,000,000, (the "Tranche 1 Loans"), (b) Loans within 180 days of the Effective Date in an aggregate principal amount of up to $2,000,000 (the "Tranche 2 Loans"), and (c) thereafter until the Tranche 3 Availability Termination Date, Loans in an aggregate principal amount of up to $3,000,000 (the "Tranche 3 Loans").

Section 2.02 Borrowings of Loans. Each Borrowing shall be made upon the Borrower's irrevocable written notice to the Administrative Agent substantially in the form of Schedule 4. Each such notice must be received by the Administrative Agent not later than noon New York City time three (3) Business Days prior to the requested date of any Borrowing. Loans borrowed hereunder and prepaid or repaid may not be reborrowed.

Section 2.03 Prepayments.

(a) Optional. The Borrower may, upon at least three (3) Business Day's prior written notice to the Administrative Agent, to be received by the Administrative Agent not later than 1:00 p.m. New York City time, at any time or from time to time, and subject to Section 7.06, voluntarily prepay any Loans in whole or in part. Any prepayment of a Loan shall be accompanied by all accrued interest thereon in cash, and, for each of the Tranche 2 Loans and Tranche 3 Loans, the Prepayment Premium in respect thereof (it being understood that any Prepayment Premium shall be payable only in connection with a Refinancing Transaction).

(b) Mandatory. The Litigation Trust Proceeds received by the Borrower, net of the Reserves, shall, within ten (10) Business Days after the receipt thereof by the Borrower, be applied to prepay the Loans, together with all accrued interest thereon, in cash. Loans prepaid under this Section 2.03(b), together with payment of any amounts then due to the Administrative Agent, shall be paid in the same order of priority as is set forth under Section 8.03.

Section 2.04 Repayment of Loans. On the Maturity Date, the Borrower shall repay in cash the aggregate principal amount of the Loans outstanding on such date together with all accrued interest thereon in cash, together with any and all fees, expenses and other amounts payable in accordance with the terms hereof. For the avoidance of doubt, the Loans and such other amounts shall be repaid in the order set forth in Section 8.03 herein.

Section 2.05 Interest and Fees.

(a) Each Loan shall bear interest on the outstanding principal amount thereof for each Interest Period at a rate per annum equal to (i) Term SOFR for such Interest Period plus (ii) the Applicable Rate. On each Interest Payment Date, the Borrower shall pay in kind all of the interest accrued from the immediately prior Interest Payment Date to such Interest Payment Date in respect of any Loans (the "PIK Interest"), so that on and as of such Interest Payment Date for such Loans, an amount equal to the PIK

Interest in respect of such Loans for such Interest Period shall be automatically capitalized and added to the then-outstanding principal amount of such Loans.

(b) All computations of fees and interest shall be made on the basis of a three hundred and sixty (360) day-year and actual days elapsed. Interest shall accrue on each Loan for the day on which the Loan is made, and shall not accrue on a Loan, or any portion thereof, for the day on which the Loan or such portion is paid.

(c) During the continuance of an Event of Default, the Borrower shall pay interest on past due amounts owing by it hereunder at a fluctuating interest rate per annum at all times equal to the Default Rate to the fullest extent permitted by applicable Laws. Accrued and unpaid interest on such amounts (including interest on past due interest) shall be due and payable in cash upon demand of the Administrative Agent or the Required Lenders.

(d) Interest on each Loan shall be due and payable in kind, as set forth in Section 2.05(a), in arrears on each Interest Payment Date applicable thereto and at such other times as may be specified herein as aforesaid. Interest hereunder shall be due and payable in accordance with the terms hereof before and after judgment aforesaid.

(e) The Borrower shall pay to the Lenders (ratably in accordance with the respective percentages set forth in Schedule 1 hereto and as calculated by the Administrative Agent, which shall be conclusive absent manifest error and may be fully relied upon by the Borrower, its agents (including the Litigation Trustee) and professionals) a backstop premium (the "Backstop Premium") on the Closing Date, which Backstop Premium shall be paid in kind and shall be automatically capitalized and added to the then-outstanding principal amount of Tranche 1 Loans on the Closing Date. The "Backstop Premium" shall be payable in Tranche 1 Loans in an aggregate amount equal to the quotient of (a) the Backstop Premium Amount and (b) 1 less the Backstop Percentage Allocation. The Backstop Premium shall be fully earned when paid in accordance with this Section 2.05(e) as original issue discount for tax purposes and shall not be refundable for any reason whatsoever. The Administrative Agent shall determine the Backstop Premium for each Lender and shall provide the results of such determination to the Borrower on or prior to the Closing Date.

Section 2.06 Termination or Reduction of Commitments. The Commitments of the Lenders (a) with respect to the Tranche 1 Loans shall be automatically and permanently reduced to $0 upon the funding of the Tranche 1 Loans on the Closing Date; (b) with respect to the Tranche 2 Loans shall be automatically and permanently reduced by each Borrowing of Tranche 2 Loans in an amount equal to such Borrowing and (c) with respect to the Tranche 3 Loans shall be automatically and permanently reduced by each Borrowing of Tranche 3 Loans in an amount equal to such Borrowing. Notwithstanding the foregoing, the Commitments of the Lenders shall also be reduced upon the mutual agreement of the Borrower and all of the Lenders, as notified in writing to the Administrative Agent by the Borrower.

Section 2.07 Notional Conversion Right.

At any time on or prior to the Maturity Date, each Lender shall have the right, at its option, by written notice to the Borrower (with a copy to the Administrative Agent) (a "Conversion Notice"), to effectuate a conversion (a "Notional Conversion") of all or any portion of the amounts owing in respect of its Loans to a Notional Litigation Trust Interest at the Notional Conversion Price to be paid in cash, in full by the Borrower directly to such Lender on the earlier of (1) the Maturity Date and (2) immediately before any distribution of the Litigation Trust Assets is made to any Litigation Trust Beneficiaries, in each case, in an amount determined by the Administrative Agent (which determination shall be conclusive absent manifest error and may be fully relied upon by the Borrower, its agents (including the Litigation Trustee)

and professionals) that is equal to the aggregate amount of distributions from Litigation Trust Proceeds (as defined in the Litigation Trust Agreement) that such Lender would have received on its Notional Litigation Trust Interests (as defined below) had such Loans been converted on the date the Lender made such election to Litigation Trust Interests at the Notional Conversion Price (the notional Litigation Trust Interests to have been received by such Lender in respect of such Notional Conversion being, the "Notional Litigation Trust Interest" of such Lender). Notwithstanding anything to the contrary in this Section 2.07, at no time shall any Lender's interest in a Loan convert to a Litigation Trust Interest, provided that upon its receipt of written notice of the consummation of a Notional Conversion, Administrative Agent shall cancel the respective principal amount of the Loan on the Register. The Administrative Agent shall determine the Notional Conversion Price for each Notional Conversion and shall provide to the Borrower the results of such determination within one (1) Business Day of receiving the Conversion Notice.

Section 2.08 Payments; Generally.

(a) Payments by Borrower. Subject to Section 2.11, all payments to be made by the Borrower hereunder and the other Loan Documents shall be made without condition or deduction for any counterclaim, defense, recoupment or setoff. Except as otherwise expressly provided herein, all such payments shall be made to the Administrative Agent, for the account of the respective Lenders to which such payment is owed, at the office of the Administrative Agent in immediately available funds not later than 12:00 p.m. (New York City time) on the date specified herein. All amounts received by the Administrative Agent after such time on any date shall be deemed to have been received on the next succeeding Business Day and any applicable interest or fees shall continue to accrue. The Administrative Agent will promptly distribute to each Lender its ratable share (or other applicable share as provided herein) of such payment in like funds as received by wire transfer to such Lender's applicable lending office (or otherwise distribute such payment in like funds as received to the Person or Persons entitled thereto as provided herein). If any payment to be made by the Borrower shall fall due on a day that is not a Business Day, payment shall be made on the next succeeding Business Day and such extension of time shall be reflected in computing interest or fees, as the case may be; provided that, if such next succeeding Business Day would fall after the Maturity Date, payment shall be made on the immediately preceding Business Day. Except as otherwise expressly provided herein, all payments hereunder or under any other Loan Document shall be made in Dollars.

(b) Presumptions by Administrative Agent. Unless the Administrative Agent shall have received notice from the Borrower prior to the date on which any payment is due to the Administrative Agent for the account of the Lenders hereunder that the Borrower will not make such payment, the Administrative Agent may assume that the Borrower has made such payment on such date in accordance herewith and may, in reliance upon such assumption, distribute to the Lenders the amount due. In such event, if the Borrower has not in fact made such payment, then each of the Lenders severally agrees to repay to the Administrative Agent forthwith on demand the amount so distributed to such Lender, with interest thereon, for each day from and including the date such amount is distributed to it to but excluding the date of payment to the Administrative Agent, at the greater of the Federal Funds Rate and a rate determined by the Administrative Agent in accordance with banking industry rules on interbank compensation.

(c) Several Obligations of Lenders. The obligations of the Lenders hereunder to make Loans and to make payments hereunder are several and not joint. The failure of any Lender to make any Loan or to make any payment hereunder on any date required hereunder shall not relieve any other Lender of its corresponding obligation to do so on such date, and no Lender shall be responsible for the failure of any other Lender to so make its Loan or to make its payment hereunder.

Section 2.09 Sharing of Payments by Lenders.

If any Lender shall, by exercising any right of setoff or counterclaim or otherwise, obtain payment in respect of any principal of or interest on any of the Loans made by it, resulting in such Lender's receiving payment of a proportion of the aggregate amount of such Loans greater than its pro rata share thereof as provided herein, then the Lender receiving such greater proportion shall (a) notify the Administrative Agent of such fact in writing and (b) purchase (for cash at face value) participations in the Loans of the other Lenders, or make such other adjustments as shall be equitable, so that the benefit of all such payments shall be shared by the Lenders ratably in accordance with the aggregate amount of principal of and accrued interest on their respective Loans and other amounts owing them; provided that:

(a) if any such participations are purchased and all or any portion of the payment giving rise thereto is recovered, such participations shall be rescinded and the purchase price restored to the extent of such recovery, without interest; and

(b) the provisions of this Section 2.09 shall not be construed to apply to (A) any payment made by the Borrower pursuant to and in accordance with the express terms of this Agreement (including without limitation prepayment premiums, other fees or consideration or the Backstop Premium) or (B) any payment obtained by a Lender as consideration for the assignment of or sale of a participation in any of its Loans to any participant.

The Borrower consents to the foregoing and agrees, to the extent it may effectively do so under applicable law, that any Lender acquiring a participation pursuant to the foregoing arrangements may exercise against the Borrower rights of setoff and counterclaim with respect to such participation as fully as if such Lender were a direct creditor of the Borrower in the amount of such participation. The applicable Lender will keep records (which shall be conclusive and binding in the absence of manifest error) of participations purchased under this Section 2.09; provided that (i) the Administrative Agent and Borrower shall be entitled to continue to deal solely and directly with such Lender in connection with such Lender's Commitments and Loans and such Lender's rights and obligations hereunder and under the other Loan Documents and (ii) such Lender shall remain solely responsible to the other parties hereto for the performance of such obligations hereunder.

Section 2.10 Incremental Borrowings.

(a) Incremental Commitments. The Borrower may, at any time, on one or more occasions until the Incremental Loan Availability Termination Date, by written notice to the Administrative Agent (an "Incremental Borrowing Notice") request one or more new Tranches of loan facilities (any such facility, an "Incremental Facility" and any such Loans thereunder, "Incremental Loans") by requesting Incremental Commitments in an aggregate principal amount not to exceed the Incremental Amount. Incremental Commitments may be provided only by existing Lenders (each such existing Lender, an "Incremental Lender"). While no existing Lender shall have any obligation to make any Incremental Commitment, all existing Lenders have the right to make Incremental Commitments in an amount *pro rata* to their existing Loans (to the extent any existing Lender does not exercise such right, other existing Lenders shall have the opportunity to do so in place of such existing Lender).

(b) Incremental Borrowing Notice. Each Incremental Borrowing Notice from the Borrower pursuant to this Section 2.10 shall be given in writing and shall set forth the requested amount, requested date and proposed terms of the relevant Incremental Facility subject to Section 2.10(e) hereof. An Incremental Borrowing Notice must be received by the Administrative Agent not later than noon New York City time three (3) Business Days prior to the requested date of any Borrowing. Incremental Loans borrowed hereunder and prepaid or repaid may not be reborrowed.

(c) Incremental Loans. On any Incremental Facility Closing Date on which any Incremental Commitments of any Tranche are effected, subject to the terms and conditions in this Section 2.10, (i) each Incremental Lender of such Tranche shall make its Incremental Loan to the Borrower in an amount equal to its Incremental Commitment of such Tranche and (ii) each Incremental Lender of such Tranche shall become a Lender hereunder with respect to the Incremental Commitment of such Tranche and the Incremental Loans of such Tranche made pursuant thereto. Notwithstanding the foregoing, but subject to Section 2.10(e) and Section 8.03(b) hereof, Incremental Loans may have identical terms to any then outstanding Tranche of Loans and be treated as the same or a different Tranche as any of such Loans (as specified by the Borrower in the Incremental Borrowing Notice); provided, however that no Incremental Loans shall be fungible with any outstanding Tranche of Loans other than Tranche 1 Loans to the extent they have identical terms with the Tranche 1 Loans.

(d) Effectiveness of Incremental Amendment. The effectiveness of any Incremental Amendment and the Incremental Facility thereunder shall be subject to the satisfaction on the date thereof (the "Incremental Facility Closing Date") of each of the following conditions:

(i) no Event of Default under Section 8.01 is then continuing or would result after giving effect to such proposed Incremental Facility;

(ii) each Incremental Facility shall be in an aggregate principal amount that is not less than $1,000,000 and shall be in a multiple of $250,000 in excess thereof;

(iii) the representations and warranties of the Borrower contained in Article V shall be true and correct in all material respects on and as of each Incremental Facility Closing Date, except in the case of any representation and warranty that is already qualified or qualified by materiality, they shall be true and correct in all respects;

(iv) the aggregate amount of the Incremental Commitments relating to such Incremental Facility shall not exceed the Incremental Amount available at the time of incurrence thereof;

(v) no Incremental Facility or Incremental Loan (nor the creation, provision or implementation thereof) shall require the approval of any existing Lender other than in its capacity, if any, as a lender providing all or part of such Incremental Facility or Incremental Loan;

(vi) the Administrative Agent (on behalf of the lenders providing the Incremental Facility) shall have received all documents each party may request, in its reasonable discretion, relating to the corporate or other necessary authority for such increase and the validity of such increase and any other matters relevant thereto, all in form and substance satisfactory to the lenders providing the Incremental Facility, in their reasonable discretion; and

(vii) the Administrative Agent's reasonable fees and reasonable documented out-of-pocket costs and expenses, if any, in respect of the new loans and commitments so established, shall have been paid.

For purposes of determining whether the conditions specified in this Section 2.10(d) have been satisfied, by making the Incremental Loans on such date, each Incremental Lender shall be deemed to have consented to, approved or accepted, or to be satisfied with, each document or other matter required hereunder to be provided to, consented to or approved by or acceptable or satisfactory to such Lender.

(e) Required Terms. The terms, provisions and documentation of the Incremental Loans and Incremental Commitments of any Tranche, if not consistent with the terms of the existing Loans, shall be as agreed between the Borrower and the applicable Incremental Lenders providing such Incremental Commitments, in each case subject to the following:

(i) the pricing and other economic terms of the Incremental Loans shall be substantially similar to the pricing and other economic terms of the Tranche 1 Loans;

(ii) the Incremental Loans shall rank *pari passu* in right of payment and of security with the Tranche 1 Loans; and

(iii) the Incremental Loans shall mature on the Maturity Date.

(f) Incremental Amendment. Incremental Commitments in respect of Incremental Loans shall become Commitments under this Agreement pursuant to an amendment (an "Incremental Amendment") to this Agreement and, as appropriate, the other Loan Documents, executed by the Borrower, each Incremental Lender providing such Commitments and the Administrative Agent. The Incremental Amendment may, without the consent of any other Person, effect such amendments to this Agreement and the other Loan Documents as may be necessary or appropriate, in the reasonable discretion of the parties to the Incremental Amendment, to effect the provisions of this Section 2.10. The Borrower shall use the proceeds of the Incremental Loans for any purpose not prohibited by this Agreement, the Plan or the Litigation Trust Agreement. No Lender shall be obligated to provide any Incremental Loans unless it so agrees.

Section 2.11 Defaulting Lenders.

(a) Notwithstanding anything to the contrary contained in this Agreement, if any Lender becomes a Defaulting Lender, then, until such time as such Lender is no longer a Defaulting Lender, to the extent permitted by applicable law:

(i) Such Defaulting Lender's right to approve or disapprove any amendment, waiver or consent with respect to this Agreement shall be restricted as set forth in the definition of Required Lenders;

(ii) Any payment of principal, interest, fees or other amounts received by the Administrative Agent for the account of such Defaulting Lender (whether voluntary or mandatory, at maturity, pursuant to Section 8 or otherwise) shall be applied at such time or times as may be determined by the Administrative Agent as follows: *first*, to the payment of any amounts owing by such Defaulting Lender to the Administrative Agent hereunder; *second*, as the Borrower may request (so long as no Default or Event of Default exists), to the funding of any Loan in respect of which such Defaulting Lender has, based on the records maintained by the Administrative Agent, failed to fund its portion thereof as required by this Agreement; *third*, if so determined by the Borrower, to be held in a Deposit Account and released pro rata in order to satisfy such Defaulting Lender's potential future funding obligations with respect to Loans under this Agreement; *fourth*, to the payment of any amounts owing to the Lenders as a result of any judgment of a court of competent jurisdiction obtained by any Lender against such Defaulting Lender as a result of such Defaulting Lender's breach of its obligations under this Agreement; *fifth*, so long as no Default or Event of Default exists, to the payment of any amounts owing to the Borrower as a result of any judgment of a court of competent jurisdiction obtained by the Borrower against such Defaulting Lender as a result of such Defaulting Lender's breach of its obligations under this Agreement; and *sixth*, to such Defaulting Lender or as otherwise directed by a court of competent jurisdiction; *provided* that such payment is a payment of the principal amount of any Loans in respect of which such Defaulting Lender has fully funded its appropriate share. Any payments, prepayments or other amounts paid or payable to a Defaulting

Lender that are applied (or held) to pay amounts owed by a Defaulting Lender pursuant to this Section 2.11(a)(ii) shall be deemed paid to and redirected by such Defaulting Lender, and each Lender irrevocably consents hereto;

(b) If Borrower and Administrative Agent agree in writing that a Lender is no longer a Defaulting Lender, Administrative Agent will so notify the parties hereto, whereupon as of the effective date specified in such notice and subject to any conditions set forth therein, such Lender will cease to be a Defaulting Lender; *provided* that no adjustments will be made retroactively with respect to fees accrued or payments made by or on behalf of Borrower while that Lender was a Defaulting Lender; and *provided further*, that except to the extent otherwise expressly agreed by the affected parties, no change hereunder from Defaulting Lender to the Lender will constitute a waiver or release of any claim of any party hereunder arising from that Lender's having been a Defaulting Lender.

## ARTICLE III
## TAXES, INCREASED COSTS PROTECTION AND ILLEGALITY

Section 3.01 Taxes.

(a) Payments Free of Taxes; Obligation to Withhold; Payments on Account of Taxes.

(i) Any and all payments by or on account of any obligation of the Borrower hereunder or under any other Loan Document shall to the extent permitted by applicable Law be made free and clear of and without deduction or withholding for any Taxes.

(ii) If the applicable Withholding Agent shall be required by applicable Law to withhold or deduct any Taxes, including both U.S. federal backup withholding and non-resident withholding Taxes, from any payment, then (A) such Withholding Agent shall withhold or make such deductions as are reasonably determined by such Withholding Agent to be required by applicable Law, (B) such Withholding Agent shall timely pay the full amount withheld or deducted to the relevant Governmental Authority in accordance with applicable Law and (C) to the extent that the withholding or deduction is made on account of Indemnified Taxes, the sum payable by the Borrower shall be increased by the Borrower as necessary so that after any required withholding or deductions for such Indemnified Taxes has been made (including withholding or deductions for Indemnified Taxes applicable to additional sums payable under this Section 3.01) the applicable Lender (or, in the case of payments made to the Administrative Agent for its own account, the Administrative Agent) receives an amount equal to the sum it would have received had no such withholding or deductions for Indemnified Taxes been made.

(b) Payment of Other Taxes by the Borrower. Without limiting the provisions of subsection (a) above, the Borrower shall timely pay to the relevant Governmental Authority in accordance with applicable Law, or at the option of the Agent timely reimburse it for the payment of, any Other Taxes.

(c) Indemnification by the Borrower. The Borrower shall, and does hereby, indemnify each Recipient, and shall make payment in respect thereof within fifteen (15) days after demand therefor, for the full amount of any Indemnified Taxes (including Indemnified Taxes imposed or asserted on or attributable to amounts payable under this Section 3.01) payable by such Recipient and any reasonable and documented expenses arising therefrom or with respect thereto, whether or not such Indemnified Taxes were correctly or legally imposed or asserted by the relevant Governmental Authority. A certificate as to the amount of any such payment or liability delivered to the Borrower by a Lender, or by any Agent on its own behalf or on behalf of a Lender (with a copy to such Agent), shall be conclusive absent manifest error.



CONFIDENTIAL CITADEL_0000081

(d) Evidence of Payments. After any payment of Taxes by the Borrower or the Administrative Agent to a Governmental Authority as provided in this Section 3.01, the Borrower or the Administrative Agent, as applicable, shall deliver to the Administrative Agent or the relevant Lender, as the case may be, any original or a certified copy of a receipt issued by such Governmental Authority evidencing such payment, a copy of any return required by applicable Law to report such payment or other evidence of such payment reasonably satisfactory to the Lender or the Administrative Agent, as the case may be.

(e) Status of Lenders; Tax Documentation.

(i) Each Lender shall deliver to the Borrower and to the Administrative Agent such properly completed and executed documentation prescribed by applicable Law or by the Governmental Authorities of any jurisdiction and such other reasonably requested information as will permit the Borrower or the Administrative Agent, as the case may be, to determine (A) whether or not any payments made hereunder or under any other Loan Document are subject to withholding Taxes, (B) if applicable, the required rate of withholding or deduction, and (C) such Lender's entitlement to any available exemption from, or reduction of, applicable Taxes in respect of any payments to be made to such Lender by the Borrower pursuant to any Loan Document or otherwise to establish such Lender's status for withholding Tax purposes in the applicable jurisdiction. Any documentation and information required to be delivered by a Lender pursuant to this Section 3.01(e) (including any specific documentation set forth in subsection (ii) below) shall be delivered by such Lender (i) on or prior to the Closing Date (or on or prior to the date it becomes a party to this Agreement), (ii) on or before any date on which such documentation expires or becomes invalid or obsolete, (iii) after the occurrence of any change in the Lender's circumstances requiring a change in the most recent documentation previously delivered by it to the Borrower and the Administrative Agent and (iv) from time to time thereafter if reasonably requested by the Borrower or the Administrative Agent, and each such Lender shall promptly notify in writing the Borrower and the Administrative Agent if such Lender is no longer legally eligible to provide any documentation previously provided. Notwithstanding anything to the contrary in the preceding two sentences, the completion, execution and submission of such documentation (other than such documentation set forth in paragraphs (e)(ii) and (iii) of this Section 3.01(e)) shall not be required if in the Lender's reasonable judgment such completion, execution or submission would subject such Lender to any material unreimbursed cost or expense or would materially prejudice the legal position of such Lender.

(ii) Without limiting the generality of the foregoing, each Lender shall deliver to the Borrower and the Administrative Agent two duly executed copies of IRS Form W-9 certifying that such Lender is exempt from U.S. federal backup withholding or information reporting requirements

(iii) If a payment made to a Lender under any Loan Document would be subject to U.S. federal withholding Tax imposed by FATCA if such Lender were to fail to comply with the applicable reporting requirements of FATCA (including those contained in Section 1471(b) or Section 1472(b) of the Code, as applicable), such Lender shall deliver to the Borrower and the Administrative Agent at the time or times prescribed by applicable Law and at such time or times reasonably requested by the Borrower or the Administrative Agent such documentation prescribed by applicable Law (including as prescribed by Section 1471(b)(3)(C)(i) of the Code) and such additional documentation reasonably requested by the Borrower or the Administrative Agent as may be necessary for the Borrower and the Administrative Agent to comply with their obligations under FATCA and to determine whether such Lender has complied with such Lender's obligations under FATCA or to determine the amount, if any, to deduct and withhold from such payment. Solely for purposes of this clause (iii), "FATCA" shall include any amendments made to FATCA after the date of this Agreement.

(iv) The Administrative Agent must be a U.S. Person and shall provide the Borrower with two duly completed copies of IRS Form W-9 certifying that such Administrative Agent is exempt from U.S. federal backup withholding.

(v) Notwithstanding anything to the contrary in this Section 3.01, neither the Administrative Agent nor any Lender shall be required to deliver any documentation that it is not legally eligible to deliver.

(vi) Each Lender hereby authorizes the Administrative Agent to deliver to the Borrower and to any successor Administrative Agent any documentation provided by such Lender to the Administrative Agent pursuant to this Section 3.01(e).

(f) Treatment of Certain Refunds. Subject to the last sentence in Section 3.01(c), at no time shall any Recipient have any obligation to file for or otherwise pursue any refund of Taxes withheld or deducted from funds paid for the account of such Recipient. If any Recipient determines, in its sole discretion exercised in good faith, that it has received a refund of any Taxes as to which it has been indemnified by the Borrower or with respect to which the Borrower has paid additional amounts pursuant to this Section 3.01, such Recipient shall pay to the Borrower an amount equal to such refund (but only to the extent of indemnity payments made, or additional amounts paid, by the Borrower under this Section 3.01 with respect to the Taxes giving rise to such refund), net of all out-of-pocket expenses (including any Taxes) incurred by such Recipient, as the case may be, and without interest (other than any interest paid by the relevant Governmental Authority with respect to such refund); provided that the Borrower, upon the request of such Recipient, agrees to repay the amount paid over to the Borrower (plus any penalties, interest or other charges imposed by the relevant Governmental Authority) to such Recipient in the event such Recipient is required to repay such refund to such Governmental Authority. In such event, such Recipient shall, at the Borrower's request, provide the Borrower with a copy of any notice of assessment or other evidence of the requirement to repay such refund received from the relevant Governmental Authority (provided that such Recipient may redact any information therein that it deems confidential). Notwithstanding anything to the contrary in this Section 3.01(f), in no event will the Recipient be required to pay any amount to the Borrower pursuant to this Section 3.01(f) the payment of which would place the Recipient in a less favorable net after-Tax position than it would have been in if the Tax subject to indemnification and giving rise to such refund had not been deducted, withheld or otherwise imposed and the indemnification payments or additional amounts with respect to such Tax had never been paid. This Section 3.01(f) shall not be construed to require the Administrative Agent or any Lender to make available its Tax returns (or any other information relating to its Taxes that it deems confidential) to the Borrower or any other Person.

(g) Delays in Requests. Failure or delay on the part of any Recipient to demand compensation pursuant to the foregoing provisions of this Section 3.01 shall not constitute a waiver of such Recipient's right to demand such compensation.

(h) Limitation. Notwithstanding anything to the contrary, no Lender shall demand payment of any additional amounts or other compensation pursuant to this Section 3.01 unless such Lender represents to Borrower in such demand, upon which Borrower can conclusively rely, that it is generally making corresponding demands on similar types of borrowers for similar amounts pursuant to similar provisions in other loan documents to which such Lender is a party.

(i) FATCA. For the avoidance of doubt, for purposes of this Section 3.01, the term "applicable law" includes FATCA.

(j) Intended Tax Treatment. Each of the parties hereto (i) intends that the Loans be treated as debt instruments for U.S. federal, state, and local income Tax purposes and (ii) agrees not to file any Tax

return, report or declaration inconsistent with sub-clause (A) of the foregoing clause (i) except, in each case, as otherwise required pursuant to a final "determination" within the meaning of Section 1313(a) of the Code. The inclusion of this Section 3.01(j) is not an admission by any Lender that it is subject to United States taxation.

(k) If the Required Lenders (in consultation with the Borrower) determine that the Loan is subject to the original issue discount or contingent payment debt instrument rules in the Code, the Borrower and the Required Lenders shall compute the original issue discount schedule ("OID Schedule") or the comparable yield ("Comparable Yield") and projected payment schedule ("Projected Payment Schedule"), as applicable, for the determination of interest accruals in respect of the Loan for U.S. federal income tax purposes at least thirty (30) days prior to the due date (taking into account extensions) for filing the Borrower's federal income tax return for the taxable year that includes the Closing Date, and shall furnish a copy of the same to the Lenders. The Borrower, the Lenders and the Administrative Agent agree to report all interest accruals in respect of the Loan strictly in accordance with the OID Schedule or Comparable Yield and Projected Payment Schedule (as applicable) and adjustments thereto unless all such parties agree otherwise or as otherwise may be required (to the satisfaction of all such parties, each in its reasonable discretion) or allowed by applicable Law.

Section 3.02 Illegality. If any Lender determines that any Law has made it unlawful, or that any Governmental Authority has asserted that it is unlawful, for any Lender or its applicable lending office to make, maintain or fund Loans whose interest is determined by reference to Term SOFR or to determine or charge interest rates based upon Term SOFR, then, on notice thereof by such Lender to the Borrower through the Administrative Agent, any obligation of such Lender to make or continue SOFR Loans in Dollars shall be suspended . Upon Administrative Agent's receipt of such notice, the Administrative Agent shall, to the extent necessary to avoid illegality, convert all such Loans of such Lender to Base Rate Loans either on the last day of the Interest Period therefor, if such Lender may lawfully continue to maintain such SOFR Loans to such day, or immediately, if such Lender may not lawfully continue to maintain such SOFR Loans. Upon any such prepayment or conversion, the Borrower shall also pay accrued interest on the amount so prepaid or converted.

Section 3.03 Benchmark Transition.

(a) Notwithstanding anything to the contrary herein or in any other Loan Document, upon the occurrence of a Benchmark Transition Event, and solely upon such event, the Administrative Agent (acting at the direction of the Required Lenders) and the Borrower, may amend this Agreement to replace the then-current Benchmark with a Benchmark Replacement. The Administrative Agent and the Required Lenders shall use commercially reasonable efforts to satisfy any applicable IRS guidance, including Treasury Regulations 1.1001-6 and any future guidance, to the effect that the implementation of a Benchmark Replacement will not result in a deemed exchange for U.S. federal income tax purposes of any Loan under this Agreement for U.S. federal income tax purposes. Any such amendment with respect to a Benchmark Transition Event will become effective at 5:00 p.m. (New York City time) on the fifth (5th) Business Day after the Administrative Agent has served such proposed amendment upon all affected Lenders and the Borrower so long as the Administrative Agent has not received, by such time, written notice of objection to such amendment from Lenders comprising the Required Lenders.

(b) In connection with the use, administration, adoption or implementation of a Benchmark Replacement, the Required Lenders (in consultation with the Administrative Agent) will have the right to make Benchmark Replacement Conforming Changes from time to time and, notwithstanding anything to the contrary herein or in any other Loan Document, any amendments implementing such Benchmark Replacement Conforming Changes will become effective without any further action or consent of any other party to this Agreement or any other Loan Document. Notwithstanding anything to the contrary, the

Administrative Agent shall not be bound to follow or agree to any such amendments, modifications or Benchmark Replacement Conforming Changes pursuant to Section 3.03 that affect its rights, duties, immunities, protections or indemnities.

(c) The Administrative Agent will promptly notify the Borrower and the Lenders of (i) the implementation of any Benchmark Replacement and (ii) the effectiveness of any Benchmark Replacement Conforming Changes in connection with the use, administration, adoption or implementation of a Benchmark Replacement. Except as otherwise provided in this Agreement, any determination, decision or election that may be made by the Administrative Agent and/or the Required Lenders pursuant to this Section 3.03, including any determination with respect to a tenor, rate or adjustment or of the occurrence or non-occurrence of an event, circumstance or date and any decision to take or refrain from taking any action or any selection, will be conclusive and binding absent manifest error and may be made in its or their sole discretion and without consent from any other party to this Agreement or any other Loan Document.

(d) Notwithstanding anything to the contrary herein or in any other Loan Document, at any time (including in connection with the implementation of a Benchmark Replacement), (i) if the then-current Benchmark is a term rate (including the Term SOFR) and either (A) any tenor for such Benchmark is not displayed on a screen or other information service that publishes such rate from time to time as selected by the Administrative Agent (at the direction of the Required Lenders in their reasonable discretion) or (B) the regulatory supervisor for the administrator of such Benchmark has provided a public statement or publication of information announcing that any tenor for such Benchmark is not or will not be representative, then the Administrative Agent (at the direction of the Required Lenders) may modify the definition of "Interest Period" (or any similar or analogous definition) for any Benchmark settings at or after such time to remove such unavailable or non-representative tenor and (ii) if a tenor that was removed pursuant to clause (i) above either (A) is subsequently displayed on a screen or information service for a Benchmark (including a Benchmark Replacement) or (B) is not, or is no longer, subject to an announcement that it is not or will not be representative for a Benchmark (including a Benchmark Replacement), then the Administrative Agent (acting at the direction of the Required Lenders) may modify the definition of "Interest Period" (or any similar or analogous definition) for all Benchmark settings at or after such time to reinstate such previously removed tenor.

(e) Upon the Borrower's receipt of notice of the commencement of a Benchmark Unavailability Period, the Borrower may revoke any pending request for a borrowing of, conversion to or continuation of SOFR Loans to be made, converted or continued during any Benchmark Unavailability Period and, failing that, the Borrower will be deemed to have converted any such request into a request for a Borrowing of or conversion to the Base Rate Loans without reference to the then-current Benchmark.

(f) Notwithstanding anything in this Agreement to the contrary, upon the occurrence of a Benchmark Transition Event, this Section 3.03 provides a mechanism for determining an alternative rate of interest. However, the Administrative Agent does not warrant or accept responsibility for, and shall not have any liability with respect to (x) the continuation of, administration of, submission of, calculation of or any other matter related to Term SOFR, or any other Benchmark, or any component definition thereof or rates referred to in the definition thereof, or any alternative, successor or replacement rate thereto (including any Benchmark Replacement), including whether the composition or characteristics of any such alternative, successor or replacement rate (including any Benchmark Replacement) will be similar to, or produce the same value or economic equivalence of, or have the same volume or liquidity as, Term SOFR or any other Benchmark prior to its discontinuance or unavailability or (y) the effect, implementation, or composition of any Benchmark Replacement Conforming Changes. The Administrative Agent and its Affiliates or other related entities may engage in transactions unrelated to the Borrower or the administration of the Loan hereunder that may affect the calculation of Term SOFR, any other Benchmark, any alternative, successor or replacement rate (including any Benchmark Replacement) or any relevant adjustments thereto, in each

case, in a manner that may be adverse to Borrower. The Administrative Agent may select information sources or services in its reasonable discretion to ascertain Term SOFR or any other Benchmark, in each case pursuant to the terms of this Agreement, and shall have no liability to the Borrowers, any Lender, or any other Person for damages of any kind, including direct or indirect, special, punitive, incidental or consequential damages, costs, losses, or expenses (whether in tort, contract, or otherwise and whether at law or in equity), for any error or calculation of any such rate (or component thereof) provided by any such information source or service, except for direct damages to the extent caused by the Administrative Agent's gross negligence or willful misconduct as determined by a court of competent jurisdiction by final and nonappealable judgment in the calculation of such rate. Under no circumstances will the Administrative Agent be responsible for selecting or determining any Benchmark Replacement if Term SOFR or any other Benchmark will no longer be available past the Benchmark Replacement Date. In the case of a Benchmark Transition Event, the Required Lenders will select the Benchmark Replacement and any Benchmark Replacement Adjustment prior to the Benchmark Replacement Date and in consultation with the Administrative Agent, ensuring that the Administrative Agent will be able to meet its obligations and requirements under this Agreement and the other Loan Documents with respect to the Benchmark Replacement replacing the applicable Benchmark. No such replacement (including any Benchmark Replacement Conforming Changes to any Loan Document) shall affect the Administrative Agent's own rights, duties or immunities under the Loan Documents or otherwise.

Section 3.04 Increased Costs.

(a) Increased Costs Generally. If any Change in Law shall:

(i) impose, modify or deem applicable any reserve, special deposit, compulsory loan, insurance charge or similar requirement against assets held by, deposits with or for the account of, or credit extended or participated in by, any Lender;

(ii) subject any Lender to any Tax of any kind whatsoever with respect to this Agreement or any Loan made by it, or change the basis of taxation of payments to such Lender in respect thereof (except for Indemnified Taxes or Other Taxes indemnifiable under Section 3.01 and any Excluded Taxes); or

(iii) impose on any Lender or the relevant local market any other condition, cost or expense (other than Taxes) affecting this Agreement or Loans made by such Lender or participation in any such Loan;

and the result of any of the foregoing shall be to reduce the amount of any sum received or receivable by such Lender (whether of principal, interest or any other amount) then, upon request of such Lender by delivery of a certificate pursuant to this Section 3.03(c), the Borrower will pay to such Lender such additional amount or amounts as will compensate such Lender for such additional costs incurred or reduction suffered.

(b) Certificates for Reimbursement. A certificate of a Lender prepared in good faith setting forth the amount or amounts necessary to compensate such Lender or its holding company, as the case may be, as specified in subsection (a) or (b) of this Section 3.04 and delivered to the Borrower shall be conclusive absent manifest error. The Borrower shall pay such Lender the amount shown as due on any such certificate within 15 days after receipt thereof by the Borrower.

(c) Delays in Requests. Failure or delay on the part of any Lender to demand compensation pursuant to the foregoing provisions of this Section 3.04 shall not constitute a waiver of such Lender's right to demand such compensation; provided that the Borrower shall not be required to compensate a Lender

pursuant to the foregoing provisions of this Section 3.04 for any increased costs incurred or reductions suffered more than six (6) months prior to the date that such Lender notifies the Borrower of the Change in Law giving rise to such increased costs or reductions and of such Lender's intention to claim compensation therefor (except that, if the Change in Law giving rise to such increased costs or reductions is retroactive, then the six-month period referred to above shall be extended to include the period of retroactive effect thereof); provided, further, that the Borrower shall not be required to compensate a Lender for increased costs or reductions suffered more than six months after such Change in Law, except that in the case of any such change having retroactive effect such period shall be extended until six months after the Lender becomes aware of such change.

Section 3.05 Compensation for Losses. Upon written demand of any Lender (with a copy to the Administrative Agent) from time to time, the Borrower shall promptly compensate such Lender for and hold such Lender harmless from any reasonable and documented loss, cost or expense incurred by it (but, in each case, excluding lost profits or any loss, cost or expense arising from such Lender's breach of this Agreement) as a result of:

(a) any continuation, payment or prepayment of any Loan on a day other than the last day of the Interest Period for such Loan (whether voluntary, mandatory, automatic, by reason of acceleration, or otherwise); or

(b) any failure by the Borrower (for a reason other than the failure of such Lender to make a Loan) to prepay, borrow, continue or convert any Loan on the date or in the amount notified by the Borrower.

Section 3.06 Mitigation Obligations; Replacement of Lenders.

(a) Designation of a different lending office. If any Lender requests compensation under Section 3.04, or the Borrower is required to pay any additional amount to any Lender or any Governmental Authority for the account of any Lender pursuant to Section 3.01, or if any Lender gives a notice pursuant to Section 3.02, then such Lender shall, as applicable, use reasonable efforts to designate a different lending office for funding or booking its Loans hereunder or to assign its rights and obligations hereunder to another of its offices, branches or affiliates if, in the reasonable judgment of such Lender, such designation or assignment (i) would eliminate or reduce amounts payable pursuant to Section 3.01 or 3.04, as the case may be, in the future, or eliminate the need for the notice pursuant to Section 3.02, as applicable, and (ii) in each case, would not subject such Lender to any unreimbursed cost or expense and would not otherwise be disadvantageous to such Lender. The Borrower hereby agrees to pay all reasonable costs and expenses incurred by any Lender in connection with any such designation or assignment.

(b) Replacement of Lenders. If a Lender requests compensation under Section 3.04, or if the Borrower is required to pay any additional amount to any Lender or any Governmental Authority for the account of any Lender pursuant to Section 3.01 or any Lender becomes a Defaulting Lender, or any other circumstance exists hereunder that gives the Borrower the right to replace a Lender as a party hereto, then the Borrower may, at its sole expense and effort, upon notice by the Borrower to such Lender (with a copy to the Administrative Agent), require such Lender to assign and delegate, without recourse (in accordance with and subject to the restrictions contained in, and consents required by, Section 10.03), all of its interests, rights and obligations under this Agreement (or, with respect to clause (iii) above, all of its interests, rights and obligations with respect to the Loans or Commitments that is the subject of the related consent, waiver and amendment) and the related Loan Documents to one or more Eligible Assignees (provided that neither the Administrative Agent nor any Lender shall have any obligation to the Borrowers to find a replacement Lender or other such Person) that shall assume such obligations (any of which assignee may be another Lender, if a Lender accepts such assignment).

Section 3.07 Survival.

Each party's obligations under this Article III shall survive termination of the Commitments, repayment, satisfaction or discharge of all other Obligations hereunder, any assignment of rights by or the replacement of a Lender, the resignation or replacement of the Administrative Agent, and the termination of this Agreement or any other Loan Document.

Section 3.08 Changes in Law; Impracticability or Illegality.

(a) Term SOFR may be adjusted by the Administrative Agent (at the direction of the Required Lenders) with respect to any Lender on a prospective basis to take into account any additional or increased costs due to Changes in Law occurring subsequent to the commencement of the then applicable Interest Period, including changes in tax laws (except to the extent such changes result in the Lender becoming liable for Indemnified Taxes or Excluded Taxes) and changes in the reserve requirements imposed by the Board of Governors of the Federal Reserve System (or any successor), which additional or increased costs would increase the cost of funding loans bearing interest at Term SOFR. In any such event, the affected Lender shall give the Borrower and the Administrative Agent notice of such a determination and adjustment and the Administrative Agent promptly shall transmit the notice to each other Lender and, upon its receipt of the notice from the affected Lender, the Borrower may, by notice to such affected Lender (i) require such Lender to furnish to the Borrower a statement setting forth the basis for adjusting such Term SOFR, the amount of such adjustment and the method for determining the amount of such adjustment, or (ii) repay the SOFR Loans with respect to which such adjustment is made (together with any amounts due under Section 3.01).

(b) In the event that any change in market conditions shall at any time after the date hereof, in the reasonable opinion of any Lender, make it impractical for such Lender to fund or maintain SOFR Loans or to continue such funding or maintaining, or to determine or charge interest rates at Term SOFR, such Lender shall give notice of such changed circumstances to the Borrower and the Administrative Agent, and the Administrative Agent promptly shall transmit the notice to each other Lender and as to any SOFR Loans of such Lender that are outstanding, the date specified in such Lender's notice shall be deemed to be the last day of the Interest Period of such SOFR Loans, and interest upon the SOFR Loans of such Lender thereafter shall accrue interest at the rate then applicable to Base Rate Loans of the same type hereunder.

ARTICLE IV

CONDITIONS PRECEDENT

Section 4.01 Conditions to Closing Date and Availability of the Tranche 1 Loans. The obligation of the Lenders to make the Tranche 1 Loans hereunder on the Closing Date is subject to Required Lenders' satisfaction (or waiver by the Lenders making the Tranche 1 Loans) of the following conditions precedent:

(a) the Plan shall have been confirmed by the Bankruptcy Court and the Effective Date shall have occurred;

(b) this Agreement shall have been duly executed and delivered by the Administrative Agent, the Lenders and the Borrower;

(c) the Litigation Trust Agreement shall have become effective;

(d) the Common Interest Agreement shall have been duly executed and delivered by the Litigation Trustee, the Lenders and the Borrower;

(e) the Administrative Agent and the Lenders shall have received, and the Required Lenders shall be satisfied with, a budget depicting the projected statement of sources and uses of cash for the Borrower for the following thirteen (13) weeks from the Closing Date (the "Initial Approved Budget").

(f) the representations and warranties of the Borrower set forth in this Agreement shall be true and correct in all material respects;

(g) no Default or Event of Default shall exist or would result from the making of the Tranche 1 Loans or from the application of the proceeds therefrom; and

(h) the Borrower shall have paid in full all fees, expenses and other amounts payable under, and in accordance with this Agreement.

Section 4.02 Conditions to Availability of the Tranche 2 Loans. The making of the Tranche 2 Loans hereunder after the Closing Date is subject to Required Lenders' reasonable satisfaction (or waiver by the Lenders making the Tranche 2 Loans) of the following conditions precedent:

(a) the Lenders shall have received a draft complaint in respect of the Litigation Trust Recovery Actions and such complaint shall be reasonably acceptable to the Required Lenders;

(b) the representations and warranties of the Borrower set forth in this Agreement shall be true and correct in all material respects on and as of such date, except to the extent such representations and warranties expressly relate to an earlier date, in which case they shall have been true and correct in all material respects as of such earlier date;

(c) no Default or Event of Default shall exist or would result from the making of the Tranche 2 Loans or from the application of the proceeds therefrom;

(d) no more than 180 days shall have passed from the Effective Date;

(e) the Required Lenders shall have consented to making the Tranche 2 Loans; and

(f) the Borrower shall have paid in full all fees, expenses and other amounts payable under, and in accordance with, the terms of this Agreement.

Section 4.03 Conditions to Availability of the Tranche 3 Loans.

The making of the Tranche 3 Loans hereunder after the Closing Date is subject to Required Lenders' reasonable satisfaction (or waiver by the Lenders making the Tranche 3 Loans) of the following conditions precedent:

(a) a complaint with respect to the Litigation Trust Recovery Actions shall have survived a motion to dismiss or no motion to dismiss has been granted;

(b) the representations and warranties of the Borrower set forth in this Agreement shall be true and correct in all material respects on and as of such date, except to the extent such representations and warranties expressly relate to an earlier date, in which case they shall have been true and correct in all material respects as of such earlier date;

(c) no Default or Event of Default shall exist or would result from the making of the Tranche 3 Loans or from the application of the proceeds therefrom;

(d) the Tranche 3 Loans shall be made during the Tranche 3 Availability Period;

(e) the Required Lenders shall have consented to making the Tranche 3 Loans; and

(f) the Borrower shall have paid in full all fees, expenses and other amounts payable under, and in accordance with, the terms of this Agreement.

ARTICLE V

REPRESENTATIONS AND WARRANTIES

The Borrower represents and warrants to the Administrative Agent and the Lenders on the date hereof and at the time of each Borrowing that:

Section 5.01 Organization; Powers. The Borrower (a) is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization (to the extent the concept of "good standing" is recognized thereunder) and (b) has all requisite power and authority to carry out the Litigation Trust Purpose.

Section 5.02 Authorization. The Borrower has the organizational and trust powers under the Litigation Trust Agreement, the Plan and Confirmation Order and has been duly authorized thereunder to execute and deliver this Agreement and perform its obligations hereunder.

Section 5.03 No Conflicts. The execution and delivery by the Borrower of this Agreement and the performance by the Borrower of its obligations hereunder do not (a) conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time or both) a default under the Litigation Trust Agreement or any Contractual Obligation of the Borrower or (b) violate any Requirement of Law applicable to the Borrower.

Section 5.04 Litigation. There is no litigation, proceeding or investigation pending or, to the best knowledge of the Borrower, threatened against the Borrower, before any Governmental Authority asserting the invalidity of this Agreement or seeking to prevent the consummation of any of the transactions contemplated by this Agreement.

Section 5.05 Governmental Approvals. All approvals, authorizations, consents, orders, licenses or other actions of any Person or of any Governmental Authority required for the due execution, delivery and performance by the Borrower of this Agreement have been obtained.

Section 5.06 No Default. No Default or Event of Default has occurred and is continuing.

ARTICLE VI

AFFIRMATIVE COVENANTS

Until the Termination Date, the Borrower shall:

Section 6.01 Financial Statements. Deliver to the Administrative Agent and the Lenders within ten (10) days after the end of each calendar month, a statement of disbursements and income and cash balance for the immediately preceding calendar month.

Section 6.02 Telephonic Meeting.

(a) At the request of the Administrative Agent or the Required Lenders, provide a telephonic update to discuss the information delivered pursuant to Section 6.01.

(b) At the request of the Administrative Agent or the Required Lenders, provide a telephonic update to discuss the status of the Litigation.

Section 6.03 Other Information. Furnish to the Administrative Agent and the Lenders promptly, after the Litigation Trustee obtains knowledge thereof, written notice of any material event related to the Borrower, including the following:

(a) the occurrence of any Default or Event of Default; and

(b) any material development with respect to Litigation, including any settlement offers.

Section 6.04 Existence. Do or cause to be done all things necessary to preserve applicable trust formalities and maintain its existence as a trust.

Section 6.05 Compliance with Laws. Comply with all Requirements of Law applicable to it or its property.

Section 6.06 Books and Records. Keep proper books of record and account in which full, true and correct entries in all material respects are made of all material dealings and transactions in relation to its administration.

Section 6.07 Approved Budget. Commencing on the Closing Date and on a quarterly basis thereafter, Borrower shall provide the Lenders with an updated "rolling" 13-week budget (commencing with the immediately succeeding Saturday) supplementing the most recent Approved Budget in substantially the same form as the Initial Approved Budget (a "Proposed Supplemental Budget"); at the time such Proposed Supplemental Budget is in form and substance reasonably acceptable to the Lenders, such budget shall constitute an Approved Budget; *provided*, however, that the Borrower may make modifications to any Approved Budget with the consent of the Lenders in their reasonable discretion; *provided, further,* that each Lender shall be deemed to have approved any Proposed Supplemental Budget if the Borrower has not received written notice from such Lender of its disapproval of such Proposed Supplemental Budget, together with a detailed explanation of its reasons for not approving such Proposed Supplemental Budget, on the date that is two (2) Business Days after such Lender's receipt of such Proposed Supplemental Budget. To the extent that any Proposed Supplemental Budget is not acceptable to the Lenders, then the then-existing Approved Budget will remain the operative Approved Budget until replaced by a Proposed Supplemental Budget that is acceptable to the Lenders.

Section 6.08 Use of Proceeds. Use the proceeds of the Loans in accordance with the Approved Budget as then in effect and in furtherance of the Litigation Trust Purpose.

ARTICLE VII
NEGATIVE COVENANTS

Until the Termination Date, unless the Required Lenders shall otherwise consent in writing:

Section 7.01 Liens. The Borrower shall not create, incur, assume or suffer to exist any Liens on the Litigation Trust Assets other than statutory Liens or Liens automatically granted or created by applicable law.

Section 7.02 Limitation on Incurrence of Debt. The Borrower shall not incur any Debt other than the Loans.

Section 7.03 Merger, Consolidation or Sale of All or Substantially All Assets.

(a) The Borrower shall not merge into or consolidate with any other trust or dissolve, terminate or liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure other than, in the case of liquidation, transfer or disposal, in connection with converting the Litigation Trust Assets to Litigation Trust Proceeds or as otherwise permitted hereunder, under the Litigation Trust Agreement or Plan, or in the case of dissolution or termination terminate in accordance with the Litigation Trust Agreement or Plan.

(b) The Borrower shall not commingle its assets with the assets of any other Person.

Section 7.04 Limitation on Sales of Assets. The Borrower shall not sell any assets without the consent of the Required Lenders.

Section 7.05 Limitation on Restricted Payments and Distributions. The Borrower shall not make any Restricted Payments and shall not distribute any Litigation Trust Proceeds (or any other amounts or Litigation Trust Assets) to the Litigation Trust Beneficiaries before the occurrence of the Termination Date.

Section 7.06 Prepayments of Indebtedness. The Borrower shall not prepay any Junior Debt unless and until all Obligations on account of the Tranche 1 Loans are paid in full. The Borrower shall not prepay any Junior Debt on account of Tranche 3 Loans unless and until all Obligations on account of the Tranche 1 and 2 Loans are paid in full.

Section 7.07 Amendments and Modifications.

(a) The Borrower shall not amend, modify, waive or terminate any provision of the Litigation Trust Agreement or fail to observe applicable trust formalities (if any), in each case to the extent that such amendment, modification, waiver, termination or failure would adversely affect the Administrative Agent or the Lenders in any material respect.

(b) The Borrower shall not amend, modify, waive or terminate any provision of the Litigation Trust Agreement or the Loan Documents, in each case to the extent that such amendment, modification, waiver, termination or failure would adversely affect the Administrative Agent or the Lenders in any material respect.

Section 7.08 Settlement. The Borrower shall not settle, or offer to settle, any Litigation without consent of the Required Lenders, which may not be unreasonably withheld.

Section 7.09 Investments. The Borrower shall not directly or indirectly acquire, make, own, or hold any Investment, except in accordance with the terms and conditions of the Litigation Trust Agreement and the Plan.

Section 7.10 Use of Proceeds. The Borrower shall not use the proceeds of any Loan for any purpose other than (a) in furtherance of the Litigation Trust Purpose (which, for the avoidance of doubt, shall include, without limitation, the payment and/or reimbursement of the fees, costs and expenses incurred by the Borrower in connection therewith, including without limitation, the fees, costs and expenses of the professionals retained by the Borrower in furtherance of the Litigation Trust Purpose) and (b) in accordance with the Litigation Trust Agreement and the Plan.

Section 7.11 Activities of Borrower. The Borrower shall not have any operations, assets or liabilities other than (a) the Litigation Trust Assets (as defined in the Litigation Trust Agreement), (b) performing its obligations under this Agreement, the Plan, the Confirmation Order, the CCAA Recognition Order and the Litigation Trust Agreement, (c) as may be necessary and required to pursue and further the Litigation Trust Purpose, including, pursuing the Litigation Trust Recovery Actions, (d) preserving and keeping in full force and effect its legal existence and (e) any activities related to any of the foregoing.

## ARTICLE VIII

## EVENTS OF DEFAULT AND REMEDIES

Section 8.01 Events of Default. Any of the following events referred to in this Section 8.01 shall constitute an "Event of Default":

(a) Non-Payment. The Borrower fails to pay (i) when and as required to be paid herein, any amount of principal of any Loan and (ii) within two (2) Business Days after the same becomes due, any interest on any Loan, any fee or any other amount payable hereunder. For the avoidance of doubt, any failure to pay any Lender arising from or in connection an Erroneous Payment shall not be deemed a default or an Event of Default.

(b) Covenants. The Borrower fails to comply with any of its obligations, covenants or agreements contained in Article VI or Article VII hereof, which failure has not been cured after five (5) Business Days' prior written notice from the Administrative Agent or the Required Lenders.

(c) Representations and Warranties. Any representation, warranty or certification made or deemed made by or on behalf of the Borrower required to be delivered in connection herewith shall be incorrect or misleading in any material respect when made or deemed made, and in either case, such incorrect or misleading representation or warranty (if curable) shall remain incorrect or misleading for a period of 30 days after notice thereof from the Administrative Agent or the Required Lenders.

(d) Budget Event. There occurs any Budget Event.

Section 8.02 Remedies Upon Event of Default. If any Event of Default occurs and is continuing, the Administrative Agent shall, solely at the written direction of the Required Lenders, take any or all of the following actions:

(a) declare all Commitments to be terminated, whereupon such Commitments shall be terminated;

(b) declare the unpaid principal amount of all outstanding Loans, all interest accrued and unpaid thereon and all other amounts owing or payable hereunder (including any Prepayment Premiums) to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Borrower; and

(c) exercise on behalf of the Lenders all rights and remedies available under this Agreement or applicable Law;

provided that upon the occurrence of an actual or deemed entry of an order for relief with respect to the Borrower under Debtor Relief Laws, the unpaid principal amount of all outstanding Loans and all interest, premiums (including any Prepayment Premiums) and other amounts as aforesaid shall automatically become due and payable, in each case, without further act of the Administrative Agent or the Lenders.

Section 8.03 Application of Funds. After the occurrence and during the continuance of an Event of Default or on the Maturity Date, any amounts received in respect of the Obligations shall be applied as follows and in accordance with the Litigation Trust Agreement:

(a) *first*, to the Administrative Agent, any and all fees, expenses, indemnities and other amounts owing to it in accordance with this Agreement, and then to the Lenders, ratably, any and all fees and expenses owing thereto in accordance with this Agreement;

(b) *second*, to the Administrative Agent, for payment to the Lenders, ratably, of accrued interests in respect of the Tranche 1 Loans and any Incremental Loans in cash, and then to the Lenders, ratably, all principal (including, without limitation, all previously capitalized interests) in respect of the Tranche 1 Loans and any Incremental Loans;

(c) *third*, to the Administrative Agent, for payment to the Lenders, ratably, of accrued interests in respect of the Tranche 2 Loans in cash, and then to the Lenders, ratably, all principal (including, without limitation, all previously capitalized interests) in respect of the Tranche 2 Loans; and

(d) *fourth*, to the Administrative Agent, for payment to the Lenders, ratably, of accrued interests in respect of the Tranche 3 Loans in cash, and then to the Lenders, ratably, all principal (including, without limitation, all previously capitalized interests) in respect of the Tranche 3 Loans.

For the avoidance of doubt, nothing contained herein shall be construed as a limitation on Borrower's right and/or duty to make distributions of Net Litigation Trust Proceeds (as defined in the Litigation Trust Agreement) to the Litigation Trust Beneficiaries in accordance with the terms of the Plan and the Litigation Trust Agreement. Borrower and its agents (including the Litigation Trustee), representatives and their respective advisers and professionals shall have the absolute and unconditional right to rely upon, and shall be protected in acting or not acting upon any schedule, register, instrument, calculation, determination or allocation by the Administrative Agent or any of the Lenders of or related to the Obligations, amounts paid or payable under this Section 8.03 or otherwise in this Agreement.

## ARTICLE IX
## THE ADMINISTRATIVE AGENT

Section 9.01 Appointment and Authority.

(a) Each of the Lenders (in its capacity as a Lender) hereby irrevocably appoints Acquiom Agency Services LLC to act on its behalf as the Administrative Agent hereunder and under the other Loan Documents, as applicable, and authorizes the Administrative Agent, in such capacity, to take such actions

on its behalf and to exercise such powers as are delegated to the Administrative Agent by the terms hereof and thereof, together with such actions and powers as are reasonably incidental thereto. The provisions of this Article IX are solely for the benefit of the Administrative Agent and the Lenders, the Borrower shall not have rights as a third-party beneficiary of any such provisions. In performing its functions and duties hereunder, the Administrative Agent shall act solely as an agent of the Lenders and does not assume and shall not be deemed to have assumed any obligation towards or relationship of agency or trust with or for any Person.

(b) For purposes of clarity, and without limiting any rights, protections, immunities or indemnities afforded to the Administrative Agent hereunder (including without limitation this Article IX), phrases such as "satisfactory to the Administrative Agent," "approved by the Administrative Agent," "acceptable to the Administrative Agent," "as determined by the Administrative Agent," "in the Administrative Agent's discretion," "selected by the Administrative Agent," "elected by the Administrative Agent," "requested by the Administrative Agent," and phrases of similar import that authorize and permit the Administrative Agent to approve, disapprove, determine, act or decline to act in its discretion shall be subject to the Administrative Agent receiving written direction from the Required Lenders (or such other number or percentage of the Lenders as shall be expressly provided for herein or in the other Loan Documents), to take such action or to exercise such rights. Nothing contained in this Agreement shall require the Administrative Agent to exercise any discretionary acts and any permissive grant of power to the Administrative Agent hereunder shall not be construed to be a duty to act.

(c) For the avoidance of doubt, the Administrative Agent's rights, protections, indemnities and immunities provided herein shall apply to the Administrative Agent for any actions taken or omitted to be taken under this Agreement or any other Loan Documents and any other related agreements in any of their respective capacities.

Section 9.02 [Reserved].

Section 9.03 Exculpatory Provisions.

(a) The Administrative Agent shall not have any duties or obligations except those expressly set forth herein. Without limiting the generality of the foregoing, the Administrative Agent:

i. shall not be subject to any fiduciary or other implied duties, regardless of whether a Default has occurred and is continuing additionally, each Lender agrees that it will not assert any claim against the Administrative Agent based on an alleged breach of fiduciary duty by the Administrative Agent in connection with this Agreement and/or the transactions contemplated hereby;

ii. shall not have any duty to take any discretionary action or exercise any discretionary powers, except discretionary rights and powers expressly contemplated hereby or by the other Loan Documents that the Administrative Agent is required to exercise as directed in writing by the Required Lenders (or such other number or percentage of the Lenders as shall be expressly provided for herein or in the other Loan Documents); provided that the Administrative Agent shall not be required to take any action that, in its opinion or the opinion of its counsel, may expose the Administrative Agent to liability or that is contrary to any Loan Document or applicable Law; and

iii. shall not, except as expressly set forth herein, have any duty to disclose, and shall not be liable for the failure to disclose, any information relating to the Borrower or any of its

Affiliates that is communicated to or obtained by the Person serving as the Administrative Agent or any of its Affiliates in any capacity.

The Administrative Agent shall not be liable for any action taken or not taken by it (i) with the consent or at the request of or ratified by, the Required Lenders (or such other number or percentage of the Lenders as shall be necessary, or as the Administrative Agent shall believe in good faith shall be necessary, under the circumstances as provided in Section 10.01) or (ii) in the absence of its own gross negligence or willful misconduct (as determined in a final and non-appealable judgment by a court of competent jurisdiction); provided that, no action taken or not taken in accordance with the direction of the Required Lenders (or such other number or percentage of the Lenders as shall be necessary, or as the Administrative Agent shall believe in good faith shall be necessary, under the circumstances as provided in Section 10.01) shall be deemed to constitute gross negligence or willful misconduct of the Administrative Agent. The Administrative Agent shall be deemed not to have knowledge of any Default unless and until notice describing such Default as such is given to the Administrative Agent by the Borrower or a Lender and expressly stating that such notice constitutes a "notice of default" or "notice of event of default", as applicable. To the extent that the Required Lenders (or such other number or percentage of the Lenders as shall be necessary, or as the Administrative Agent shall believe in good faith to be necessary, under the circumstances as provided in Section 10.01) instruct, consent, request or otherwise direct the Administrative Agent to take (or not take) any action, the Administrative Agent may, in its sole discretion inform the Borrower of such instruction, consent, request or direction and identify the instructing Lenders. Any such instruction, consent, request or direction shall expressly state that it constitutes an "instruction", "consent", "request" or "direction" of such Lenders and shall be executed by such Lenders.

The Administrative Agent shall not be responsible for or have any duty to ascertain or inquire into (i) any statement, warranty or representation made in or in connection with this Agreement or any other Loan Document, (ii) the contents of any certificate, report or other document delivered hereunder or thereunder or in connection herewith or therewith, (iii) the performance or observance of any of the covenants, agreements or other terms or conditions set forth herein or therein or the occurrence of any Default, (iv) the validity, enforceability, effectiveness or genuineness of this Agreement, any other Loan Document or any other agreement, instrument or document, (v) the value or the sufficiency of any collateral or the creation, perfection or priority of any Lien purported to be created by any related agreements or documents (as applicable) or (vi) the satisfaction of any condition set forth in Article IV or elsewhere herein, other than to confirm receipt of items expressly required to be delivered to the Administrative Agent.

(b) Nothing herein or in any other Loan Document or related documents shall obligate the Administrative Agent to advance, expend or risk its own funds, or to take any action which in its reasonable judgment may cause it to incur any expense or financial or other liability for which it is not indemnified to its satisfaction.

(c) In no event shall the Administrative Agent be responsible or liable for: (i) delays or failures in performance resulting from acts beyond its control, including but not limited to, acts of God, strikes, lockouts, riots, acts of war, epidemics, governmental regulations superimposed after the fact, fire, communication line failures, computer viruses, power failures, earthquakes or other disasters, the unavailability of communications or computer facilities, the failure of equipment or interruption of communications or computer facilities, or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility, (ii) any delay, error omission or default of any mail, telegraph, cable or wireless agency or operator, or (iii) the acts or edicts of any government or governmental agency or other group or entity exercising governmental powers. The Administrative Agent shall not be liable for interest on any money received by it.

(d) The Administrative Agent shall not have any liability for any failure, inability or unwillingness on the part of any Lender or the Borrower to provide accurate and complete information on a timely basis to the Administrative Agent, or otherwise on the part of any such party to comply with the terms of this Agreement, and shall not have any liability for any inaccuracy or error in the performance or observance on the Administrative Agent's part of any of its duties hereunder that is caused by or results from any such inaccurate, incomplete or untimely information received by it, or other failure on the part of any such other party to comply with the terms hereof.

(e) With respect to any permissive rights or the exercise of discretionary authority, the Administrative Agent shall be entitled to refrain from exercising such rights or authority unless and until the Administrative Agent shall have received instructions from the Required Lenders (or such other number or percentage of the Lenders as shall be expressly provided for herein or in the other Loan Documents), and the Administrative Agent shall not incur liability to any Person by reason of so refraining.

(f) The Administrative Agent shall have no obligation (i) to monitor, determine or verify the unavailability or cessation of any Benchmark (or other applicable benchmark interest rate), or whether or when there has occurred, or to give notice to any other transaction party of the occurrence of, any date on which such rate may be required to be transitioned or replaced in accordance with the terms of the Loan Documents, applicable law or otherwise, (ii) to select, determine or designate any replacement to such rate, or other successor or replacement benchmark index, or whether any conditions to the designation of such a rate have been satisfied, (iii) to select, determine or designate any modifier to any replacement or successor index, or (iv) to determine whether or what any amendments to this Agreement or the other Loan Documents are necessary or advisable, if any, in connection with any of the foregoing. The Administrative Agent shall not be liable for any inability, failure or delay on its part to perform any of its duties set forth in this Agreement or any other Loan Document as a result of the unavailability of any Benchmark (or other applicable benchmark interest rate), including as a result of any inability, delay, error or inaccuracy on the part of any other party, including without limitation any Lenders or the Borrower in providing any direction, instruction, notice or information required or contemplated by the terms of this Agreement and reasonably required for the performance of such duties. The Administrative Agent shall have no liability for any interest rate published by any publication that is the source for determining the interest rates of the Loans, including but not limited to Bloomberg (or any successor source) and the Bloomberg or Reuters screen (or any successor source), or for any rates published on any publicly available source, including without limitation the Federal Reserve Bank of New York's Website or any website administered by the Term SOFR Administrator, or in any of the foregoing cases for any delay, error or inaccuracy in the publication of any such rates, or for any subsequent correction or adjustment thereto.

Section 9.04 Reliance by Administrative Agent.

The Administrative Agent shall be entitled to rely upon, and shall not incur any liability for relying upon, any notice, request, certificate, consent, statement, instrument, document or other writing (including, but not limited to, any electronic message, Internet or intranet website posting or other distribution) believed by it to be genuine and to have been signed, sent or otherwise authenticated by the proper Person. The Administrative Agent also may, at its option and in its sole discretion, rely upon any statement made to it orally or by telephone and believed by it to have been made by the proper Person, and shall not incur any liability for relying thereon. The Administrative Agent may consult with legal counsel (who may be counsel

for the Borrower), independent accountants and other experts selected by it, and shall not be liable for any action taken or not taken by it in accordance with the advice of any such counsel, accountants or experts. The Administrative Agent may deem and treat the Lender specified in the Register with respect to any amounts owing hereunder as the owner thereof for all purposes including any voting, direction or other Lender thresholds.

Section 9.05 Delegation of Duties. The Administrative Agent may perform any and all of its duties and exercise its rights and powers hereunder or under any other Loan Document by or through any one or more sub-agents, agents, employees or attorneys-in-fact appointed by the Administrative Agent, as applicable. The Administrative Agent and any such sub-agent may perform any and all of its duties and exercise its rights and powers by or through their respective affiliates and its respective officers, directors, employees, agents, advisors and attorneys-in-fact of such Person and its affiliates, accountants, advisors (including investment managers, financial advisors and advisers), consultants, representatives, controlling persons, members and permitted successors and assigns ("Related Part(y)(ies)"). The exculpatory provisions of this Article IX shall apply to any such sub-agent and to the Related Parties of the Administrative Agent, as applicable, and any such sub-agent, and shall apply to their respective activities in connection with the syndication of the credit facilities provided for herein as well as activities as Administrative Agent. The Administrative Agent shall not be responsible for the negligence, misconduct, acts or omissions of any agents, sub-agents or attorneys-in-fact except to the extent that the Administrative Agent acted with gross negligence or willful misconduct in the selection of such agents, sub-agents or attorneys-in-fact as determined by a court of competent jurisdiction in a final and non-appealable judgment.

Section 9.06 Non-Reliance on Administrative Agent and Other Lenders.

Each Lender expressly acknowledges that the Administrative Agent has not made any representation or warranty to it, and that no act by the Administrative Agent hereafter taken, including any consent to, and acceptance of any assignment or review of the affairs of the Borrower or any affiliate thereof, shall be deemed to constitute any representation or any warranty by the Administrative Agent to any Lender as to any matter, including whether the Administrative Agent has disclosed material information in its possession. Each Lender represents to the Administrative Agent that it has, independently and without reliance upon the Administrative Agent or any other Lender or any of its affiliates and based on such documents and information as it has deemed appropriate, made its own credit analysis of, appraisal of, and investigation into, the Litigation Trust Assets and the administration, prospects, financial and other condition and creditworthiness of the Borrower, and all applicable bank or other regulatory Laws relating to the transactions contemplated hereby, and made its own decision to enter into this Agreement and to extend credit to the Borrower hereunder. Each Lender also acknowledges that it will, independently and without reliance upon the Administrative Agent or any other Lender or any of their affiliates and based on such documents and information as it shall from time to time deem appropriate, continue to make its own credit analysis, appraisal and decisions in taking or not taking action under or based upon this Agreement, any other related agreement or any document furnished hereunder or thereunder, and to make such investigations as it deems necessary to inform itself as to the Litigation Trust Assets and the administration, prospects, financial and other condition and creditworthiness of the Borrower. Each Lender represents and warrants that (i) this Agreement sets forth the terms of a commercial lending facility and certain other facilities set forth herein and (ii) it is engaged in making, acquiring or holding commercial loans in the ordinary course and is entering into this Agreement as a Lender for the purpose of making, acquiring or holding commercial loans set forth herein as may be applicable to such Lender, and not for the purpose of purchasing, acquiring or holding any other type of financial instrument, and each Lender agrees not to assert a claim in contravention of the foregoing. Each Lender represents and warrants that it is sophisticated with respect to decisions to make, acquire or hold commercial loans, as may be applicable to such Lender, and either it, or the Person exercising discretion in making its decision to make, acquire or hold such commercial loans, is experienced in making, acquiring or holding such commercial loans.

Section 9.07 Withholding Tax. To the extent required by any applicable Law, the Administrative Agent may withhold from any payment to any Lender an amount equal to any applicable withholding Tax. If the IRS or any Governmental Authority asserts a claim that the Administrative Agent did not properly withhold Tax from any amount paid to or for the account of any Lender for any reason (including because the appropriate form was not delivered or was not properly executed, or because such Lender failed to notify the Administrative Agent of a change in circumstances that rendered the exemption from, or reduction of, withholding Tax ineffective), such Lender shall indemnify and hold harmless the Administrative Agent (to the extent that the Administrative Agent has not already been reimbursed by the Borrower and without limiting or expanding the obligation of the Borrower to do so) for all amounts paid, directly or indirectly, by the Administrative Agent as Tax or otherwise, including any penalties, additions to Tax or interest thereon, together with all expenses incurred, including legal expenses and any out-of-pocket expenses, whether or not such Tax was correctly or legally imposed or asserted by the relevant Governmental Authority. A certificate as to the amount of such payment or liability delivered to any Lender by the Administrative Agent shall be conclusive absent manifest error. Each Lender hereby authorizes the Administrative Agent to set off and apply any and all amounts at any time owing to such Lender under this Agreement or any other Loan Document against any amount due to the Administrative Agent under this Section 9.07. The agreements in this Section 9.07 shall survive the resignation and/or replacement of the Administrative Agent, any assignment of rights by, or the replacement of, a Lender, the termination of the Loans and the repayment, satisfaction or discharge of all Loan Obligations under this Agreement. Unless required by applicable Laws, at no time shall the Administrative Agent have any obligation to file for or otherwise pursue on behalf of a Lender any refund of Taxes withheld or deducted from funds paid for the account of such Lender.

Section 9.08 Erroneous Payments.

(a) If the Administrative Agent notifies a Lender or any Person who has received funds on behalf of a Lender (any such Lender or other recipient, a "Payment Recipient") that the Administrative Agent has determined in its sole discretion (whether or not after receipt of any notice under immediately succeeding clause (b)) that any funds received by such Payment Recipient from the Administrative Agent or any of its Affiliates were erroneously transmitted to, or otherwise erroneously or mistakenly received by, such Payment Recipient (whether or not known to such Lender or other Payment Recipient on its behalf) (any such funds, whether received as a payment, prepayment or repayment of principal, interest, fees, distribution or otherwise, individually and collectively, an "Erroneous Payment") and demands the return of such Erroneous Payment (or a portion thereof), such Erroneous Payment shall at all times remain the property of the Administrative Agent and shall be segregated by the Payment Recipient and held in trust for the benefit of the Administrative Agent, and such Lender shall (or, with respect to any Payment Recipient who received such funds on its behalf, shall cause such Payment Recipient to) promptly, but in no event later than two (2) Business Days thereafter, return to the Administrative Agent the amount of any such Erroneous Payment (or portion thereof) as to which such a demand was made, in same day funds (in the currency so received), together with interest thereon in respect of each day from and including the date such Erroneous Payment (or portion thereof) was received by such Payment Recipient to the date such amount is repaid to the Administrative Agent in same day funds at the greater of the Federal Funds Rate and a rate determined by the Administrative Agent in accordance with banking industry rules on interbank compensation from time to time in effect. A notice of the Administrative Agent to any Payment Recipient under this clause (a) shall be conclusive, absent manifest error.

(b) Without limiting immediately preceding clause (a), each Lender, or any Person who has received funds on behalf of a Lender, hereby further agrees that if it receives a payment, prepayment or repayment (whether received as a payment, prepayment or repayment of principal, interest, fees, distribution or otherwise) from the Administrative Agent (or any of its Affiliates) (x) that is in a different amount than, or on a different date from, that specified in a notice of payment, prepayment or repayment

sent by the Administrative Agent (or any of its Affiliates) with respect to such payment, prepayment or repayment, (y) that was not preceded or accompanied by a notice of payment, prepayment or repayment sent by the Administrative Agent (or any of its Affiliates), or (z) that such Lender, or other such recipient, otherwise becomes aware was transmitted, or received, in error or by mistake (in whole or in part) in each case:

(i) (A) in the case of immediately preceding clauses (x) or (y), an error shall be presumed to have been made (absent written confirmation from the Administrative Agent to the contrary) or (B) an error has been made (in the case of immediately preceding clause (z)), in each case, with respect to such payment, prepayment or repayment; and

(ii) such Lender shall (and shall cause any other recipient that receives funds on its respective behalf to) promptly (and, in all events, within one Business Day of its knowledge of such error) notify the Administrative Agent of its receipt of such payment, prepayment or repayment, the details thereof (in reasonable detail) and that it is so notifying the Administrative Agent pursuant to this Section 9.08(b).

(c) Each Lender hereby authorizes the Administrative Agent to set off, net and apply any and all amounts at any time owing to such Lender under any Loan Document, or otherwise payable or distributable by the Administrative Agent to such Lender from any source, against any amount due to the Administrative Agent under immediately preceding clause (a) or under the indemnification provisions of this Agreement.

(d) For the avoidance of doubt, the failure to deliver a notice to the Administrative Agent pursuant to Section 9.08(b)(ii) shall not have any effect on a Payment Recipient's obligations pursuant to Section 9.08(a) or on whether or not an Erroneous Payment has been made.

(e) The parties hereto agree that an Erroneous Payment shall not pay, prepay, repay, discharge or otherwise satisfy any Obligations owed by the Borrower, except, in each case, to the extent such Erroneous Payment is, and solely with respect to the amount of such Erroneous Payment that is, comprised of funds received by the Administrative Agent from the Borrower for the purpose of making such Erroneous Payment.

(f) To the extent permitted by applicable law, no Payment Recipient shall assert any right or claim to an Erroneous Payment, and hereby waives, and is deemed to waive, any claim, counterclaim, defense or right of set-off or recoupment with respect to any demand, claim or counterclaim by the Administrative Agent for the return of any Erroneous Payment received, including without limitation waiver of any defense based on "discharge for value" or any similar doctrine.

(g) Each party's obligations, agreements and waivers under this Section 9.08 shall survive the resignation or replacement of the Administrative Agent, any transfer of rights or obligations by, or the replacement of, a Lender, the termination of the Commitments and/or the repayment, satisfaction or discharge of all Loan Obligations (or any portion thereof) under any Loan Document.

Section 9.09 Resignation of Administrative Agent.

(a) The Administrative Agent may at any time give not less than thirty (30) days' prior written notice of its resignation to the Lenders and the Borrower. Upon receipt of any such notice of resignation, the Required Lenders shall have the right, in consultation with the Borrower, to appoint a successor, which shall be a bank subject to the qualification set forth in Section 3.01(e)(iv) hereof. If no such successor shall have been so appointed by the Required Lenders and shall have accepted such appointment within thirty (30) days after the

retiring Administrative Agent gives notice of its resignation, then the retiring Administrative Agent may (but shall not be obligated to) on behalf of the Lenders appoint a successor Administrative Agent meeting the qualifications set forth above; provided that if the Administrative Agent shall notify the Borrower and the Lenders that no qualifying Person has accepted such appointment, then such resignation shall nonetheless become effective in accordance with such notice and (i) the retiring Administrative Agent shall be discharged from its duties and obligations hereunder and under the other Loan Documents and (ii) all payments, communications and determinations to be made by, to or through the Administrative Agent shall instead be made by or to each Lender, until such time as the Required Lenders appoint a successor Administrative Agent as provided for above in this Section 9.09. Upon the acceptance of a successor's appointment as Administrative Agent hereunder, such successor shall succeed to and become vested with all of the rights, powers, privileges and duties of the retiring (or retired) Administrative Agent, and the retiring Administrative Agent shall be discharged from all of its duties and obligations hereunder or under the other Loan Documents (if not already discharged therefrom as provided above in this Section 9.09). The fees payable by the Borrower to a successor Administrative Agent shall be the same as those payable to its predecessor unless otherwise agreed between the Borrower and such successor. After the retiring Administrative Agent's resignation hereunder and under the other Loan Documents, the provisions of this Article IX and Section 10.02 shall continue in effect for the benefit of such retiring Administrative Agent, its sub-agents and their respective Related Parties in respect of any actions taken or omitted to be taken by any of them while the retiring Administrative Agent was acting as Administrative Agent.

(b) Notwithstanding anything to the contrary contained herein or in any related document, any entity into which the Administrative Agent may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Administrative Agent shall be a party, or any entity succeeding to the business of the Administrative Agent shall be the successor of the Administrative Agent hereunder without the execution or filing of any paper with any Person or any further act on the part of any Person.

## ARTICLE X

## MISCELLANEOUS

Section 10.01 Amendments. No amendment or waiver of any provision of this Agreement shall be effective unless in writing signed by the Administrative Agent, Required Lenders, and the Borrower, and each such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given; provided, however, that no such amendment, waiver or consent shall:

(a) increase the Commitment of any Lender without the written consent of such Lender;

(b) as to any Lender, postpone any date fixed by this Agreement for any scheduled payment (including the Maturity Date) or mandatory prepayment of principal, interest, premiums (including the Prepayment Premium), fees or other amounts due hereunder without the written consent of such Lender,

(c) as to any Lender, reduce the principal of, or the rate of interest specified herein on, any Loan held by such Lender, or (subject to clause (b) of this Section 10.01) any premiums (including the Prepayment Premium), fees or other amounts payable hereunder to or for the account of such Lender (subject to Section 2.11), without the written consent of such Lender; provided, however, that only the consent of the Required Lenders shall be necessary to amend the definition of "Default Rate" or to waive any obligation of the Borrower to pay interest at the Default Rate;

(d) as to any Lender, change any provision of this Agreement, including, without limitation, Section 8.03, in a manner that would alter the priority or pro rata sharing of payments required thereby without the written consent of such Lender;



CONFIDENTIAL CITADEL_0000101

(e) change any provision of this Section 10.01 or the definition of "Required Lenders", or any other provision hereof specifying the number or percentage of Lenders required to amend, waive or otherwise modify any rights hereunder or make any determination or grant any consent hereunder, without the written consent of each Lender;

(f) except as expressly permitted hereunder, release, or limit the liability of, the Borrower without the written consent of each Lender;

(g) except as expressly permitted herein, subordinate the Obligations hereunder to any other Debt without the written consent of each Lender; and

(h) amend, waive or otherwise modify any of the conditions precedent set forth in Article IV without the written consent of each affected Lender;

and, provided further, that no amendment, waiver or consent shall, unless in writing and signed by the Administrative Agent in addition to the Lenders required above, affect the rights or duties of the Administrative Agent under this Agreement.

Section 10.02 Expenses; Indemnity; Damages Waiver

(a) Costs and Expenses. The Borrower shall pay to the Administrative Agent, for its own account, such fees as shall have been separately agreed upon in writing in the Agent Fee Letter in the amounts and at the times so specified in the Agent Fee Letter. Such fees shall be fully earned when paid and shall not be refundable for any reason whatsoever (except as expressly agreed between the Borrower and the Administrative Agent). The Borrower shall pay (i) all reasonable and documented out-of-pocket expenses incurred by the Administrative Agent and its affiliates (including the reasonable fees, charges and disbursements of counsel for the Administrative Agent) in connection with the preparation, negotiation, execution, delivery and administration of this Agreement and the other Loan Documents, or any amendments, modifications or waivers of the provisions hereof or thereof (whether or not the transactions contemplated hereby or thereby shall be consummated), and (ii) all out-of-pocket expenses incurred by the Administrative Agent or any Lender (including the fees, charges and disbursements of any counsel for the Administrative Agent or any Lender) in connection with the enforcement or protection of its rights (A) in connection with this Agreement and the other Loan Documents, including its rights under this Section 10.02(a), or (B) in connection with the Loans made hereunder, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of such Loans.

(b) Indemnification by the Borrower. The Borrower shall indemnify the Administrative Agent (and any sub-agent thereof) and each Lender, and each Related Party of any of the foregoing Persons (each such Person being called an "Indemnitee") against, and hold each Indemnitee harmless from, any and all losses, claims, damages, liabilities, obligations, penalties, actions, judgments, suits, costs, disbursements and related reasonable and documented expenses (including the fees, charges and disbursements of any counsel for any Indemnitee), incurred by any Indemnitee or asserted against any Indemnitee by any Person (including the Borrower) arising out of, in connection with, or as a result of (i) the execution or delivery of this Agreement, the other Loan Documents or any agreement or instrument contemplated hereby or thereby, the performance by the parties hereto of their respective obligations hereunder or thereunder or the consummation of the transactions contemplated hereby or thereby, (ii) any Loan or the use or proposed use of the proceeds therefrom, or (iii) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory, whether brought by a third party or by the Borrower, and regardless of whether any Indemnitee is a party thereto; provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses (x) are determined by a court of competent jurisdiction by final and

nonappealable judgment or order to have resulted from the gross negligence or willful misconduct of such Indemnitee, (y) other than with respect to the Administrative Agent, result from a claim brought by the Borrower against an Indemnitee for breach in bad faith of such Indemnitee's obligations hereunder or under the Loan Documents, if the Borrower has obtained a final and nonappealable judgment or order in its favor on such claim as determined by a court of competent jurisdiction or (z) result from a claim not involving an act or omission of the Borrower and that is brought by an Indemnitee against another Indemnitee (other than a claim by or against the Administrative Agent in their capacities as such). Notwithstanding anything in this Agreement to the contrary, the Indemnitees shall be paid exclusively from the Litigation Trust Assets.

(c) Limited Recourse. Notwithstanding anything in this Agreement to the contrary, consistent with Section 3.15 of the Litigation Trust Agreement, any and all Obligations shall be paid exclusively from the Litigation Trust Assets. In accordance with and subject to Section 3.01 and Section 3.13 of the Litigation Trust Agreement, neither the Litigation Trustee nor its agents, advisors or professionals shall have any personal liability of any kind or nature with respect to any of the matters set forth in this Agreement.

(d) Waiver of Consequential Damages. To the fullest extent permitted by Law, the Borrower shall not assert, and hereby waives, any claim against the Administrative Agent and any Lender on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement, the other Loan Documents or any agreement or instrument contemplated hereby, the transactions contemplated hereby or thereby, any Loan, or the use of the proceeds thereof. To the fullest extent permitted by Law, the Lenders shall not assert, and hereby waives, any claim against the Administrative Agent on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement, the other Loan Documents or any agreement or instrument contemplated hereby, the transactions contemplated hereby or thereby, any Loan, or the use of the proceeds thereof. Neither the Administrative Agent nor any Lender shall be liable for any damages arising from the use by unintended recipients of any information or other materials distributed by it through telecommunications, electronic or other information transmission systems in connection with this Agreement, the Loan Documents, or the transactions contemplated hereby or thereby, except to the extent such damage is determined by a court of competent jurisdiction by final and nonappealable judgment or order to have resulted from the fraud, gross negligence or willful misconduct of such Person.

(e) The agreements in this Section 10.02 shall survive the resignation of the Administrative Agent, the replacement of any Lender, the termination of the Commitments and the repayment, satisfaction or discharge of the other Obligations.

Section 10.03 Successors and Assigns.

(a) The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby. Any Lender may at any time assign to one (1) or more Eligible Assignees all or any portion of such Lender's Commitment and Loans, together with all related Obligations of such Lender hereunder, provided that until the Administrative Agent shall have received and accepted an effective assignment agreement substantially in the form of Schedule 6, executed, delivered and fully completed by the applicable parties thereto (an "Assignment Agreement") (and the Administrative Agent shall email a copy thereof to the Borrower (pursuant to the notice information in Section 10.04) within five (5) Business Days following receipt thereof), and shall have received such other information regarding such Eligible Assignee as the Administrative Agent reasonably shall require, the Borrower and the Administrative Agent shall be entitled to continue to deal solely and directly with such Lender in connection with the interests so assigned. If requested by the Administrative Agent, the Borrower agrees to (i) execute any document reasonably required to acknowledge each assignment of a

Commitment and Loans to an assignee hereunder, (ii) make the Litigation Trustee or his/her/its professionals available to meet with the Administrative Agent and prospective participants and assignees of the Commitments and Loans at times and places to be mutually agreed and (iii) to provide reasonable assistance to the Administrative Agent or the Lenders in the preparation of non-privileged and/or non-confidential information relating to the financial affairs of the Borrower as any prospective participant or assignee of a Commitment and Loans reasonably may request, and in each case solely to the extent disclosure will not undermine any of the Litigation Trust Assets or any strategy relating thereto. The parties to each assignment shall execute and deliver to the Administrative Agent an Assignment Agreement, together with a processing and recordation fee in the amount of $3,500, its applicable tax forms and its completed administrative questionnaire; provided, however, that the Administrative Agent may, in its sole discretion, elect to waive such processing and recordation fee in the case of any assignment.

(b) From and after the effective date of each Assignment Agreement, (i) such Eligible Assignee shall be deemed automatically to have become a party hereto and, to the extent of the interests assigned to such Eligible Assignee pursuant to such assignment agreement, shall have the rights and obligations of a Lender hereunder, and (ii) the assigning Lender, to the extent that rights and obligations hereunder have been assigned by it pursuant to such assignment agreement, shall be released from obligations hereunder and its rights hereunder shall terminate (other than those that survive termination) (and, in each case of an Assignment Agreement covering all the assigning Lender's rights and obligations under this Agreement, such Lender shall cease to be a party hereto).

(c) The Administrative Agent, in its capacity as administrative agent for the Lenders and acting solely for this purpose as a non-fiduciary agent of the Borrower, shall maintain a copy of each Assignment Agreement delivered to it and a Register for the recordation of the names and addresses of each Lender, and the commitments of, and principal amount (and stated interest) of the Loans, owing to, such Lender pursuant to the terms hereof (the "Register"). The entries in such Register shall be conclusive, absent manifest error, and, the Administrative Agent, the Borrower and the Lenders shall treat each Person whose name is recorded therein pursuant to the terms hereof as a Lender hereunder for all purposes of this Agreement, notwithstanding notice to the contrary. Borrower and its agents (including the Litigation Trustee), representatives and their respective advisers and professionals shall have the absolute and unconditional right to rely, and shall be protected in acting or not acting upon, the Register. Such Register shall be available for inspection by the Borrower and any Lender, at any reasonable time upon reasonable prior notice to the Administrative Agent.

(d) The Borrower agrees that each participant shall be entitled to the benefits of Sections 3.01, 3.04 and 3.05 (subject to the requirements and limitations therein, including the requirements under Section 3.01(e) (it being understood that the documentation required under Section 3.01(e) shall be delivered to the participating Lender)) to the same extent as if it were a Lender and had acquired its interest by assignment pursuant to paragraph (b) of this Section. Each Lender that sells a participation shall, acting solely for this purpose as an agent of the Borrower maintain a register on which it enters the name and address of each participant and the principal amounts (and stated interest) of each participant's interest in the Obligations for its own purposes (each, a "Participant Register"), provided that (i) the Administrative Agent and Borrower shall be entitled to continue to deal solely and directly with such Lender in connection with such Lender's Commitments and Loans and such Lender's rights and obligations hereunder and under the other Loan Documents and (ii) such Lender shall remain solely responsible to the other parties hereto for the performance of such obligations hereunder. The entries in the Participant Registers shall be conclusive, absent manifest error. Each Participant Register shall be available for inspection by the Administrative Agent (without obligation to so inspect) at any reasonable time upon reasonable prior notice to the applicable Lender; provided that no Lender shall have any obligation to disclose all or any portion of the Participant Register (including the identity of any participant or any information relating to a participant's interest in any commitments, loans, letters of credit or its other obligations) to any Person (including the

Borrower) except to the extent that such disclosure is necessary to establish that such commitment, loan, letter of credit or other obligation is in registered form under Section 5f.103-1(c) of the United States Treasury Regulations. For the avoidance of doubt, the Administrative Agent (in its capacity as the Administrative Agent) shall have no responsibility for maintaining a Participant Register.

Section 10.04 Notice Generally; Electronic Communications. All notices, consents and other communications required or permitted by this Agreement shall be in writing and shall be (a) delivered to the appropriate address by hand, by nationally recognized overnight service or by courier service (costs prepaid), (b) sent by e-mail or (c) sent by registered or certified mail, return receipt requested, in each case to the following addresses or e-mail addresses and marked to the attention of the person (by name or title) designated below (or to such other address, facsimile number, e-mail address or person as a party may designate by written notice to the other party):

if to the Borrower, to:
Instant Brands Litigation Trust
c/o Alan D. Halperin, solely in his capacity as Litigation Trustee
Halperin Battaglia Benzia, LLP
40 Wall Street, 37th Floor
New York, New York 10005
Email: ahalperin@halperinlaw.net

with a copy (which does not constitute notice) to:

Halperin Battaglia Benzia, LLP
40 Wall Street, 37th Floor
New York, New York 10005
Attention: Debra J. Cohen, Esq,
Email: dcohen@halperinlaw.net

if to the Administrative Agent, to:

Acquiom Agency Services LLC
Attention: Jennifer Anderson – Loan Agency
950 17th Street, Suite 1400
Denver, CO 80202
Email: janderson@srsacquiom.com; loanagency@srsacquiom.com

with a copy (which does not constitute notice) to:

Seward & Kissel LLP
One Battery Park Plaza
New York, New York 10004
Attention: Gregg Bateman
Email: bateman@sewkis.com

if to each Lender, to the addresses set forth on Schedule 3 of this Agreement

All notices, consents, waivers and other communications shall be deemed to have been duly given (as applicable): if delivered by hand, when delivered by hand; if delivered by overnight service, when delivered by nationally recognized overnight service; if delivered by courier, when delivered by courier; if sent via

registered or certified mail, five Business Days after being deposited in the mail, postage prepaid; or if delivered by email, when received by the recipient prior to 5:00 p.m. local time for the recipient (and if received by the recipient after 5:00 p.m. local time for the recipient, then delivery will be deemed duly given at 9:00 a.m. local time for the recipient on the subsequent Business Day, unless receipt is otherwise confirmed by the recipient by response email prior thereto).

Notices and other communications to the Lenders hereunder may be delivered or furnished by electronic communication (including e-mail and Internet or intranet websites) pursuant to procedures approved by the Administrative Agent; provided that the foregoing shall not apply to notices to any Lender pursuant to Article II if such Lender has notified the Administrative Agent that it is incapable of receiving notices under such Article II by electronic communication. The Administrative Agent or the Borrower may, in their discretion, agree to accept notices and other communications to them hereunder by electronic communications pursuant to procedures approved by them; provided that approval of such procedures may be limited to particular notices or communications.

Unless the Administrative Agent otherwise prescribes, (i) notices and other communications sent to an email address shall be deemed received when sent; provided that if such notice or other communication is not sent during the normal business hours of the recipient, such notice or communication shall be deemed to have been sent at the opening of business on the next business day for the recipient, and (ii) notices or communications posted to an Internet or intranet website shall be deemed received upon the deemed receipt by the intended recipient at its e-mail address as described in the foregoing clause (i) of notification that such notice or communication is available and identifying the website address therefor.

THE PLATFORM IS PROVIDED "AS IS" AND "AS AVAILABLE." THE AGENT PARTIES (AS DEFINED BELOW) DO NOT WARRANT THE ACCURACY OR COMPLETENESS OF THE BORROWER MATERIALS OR THE ADEQUACY OF THE PLATFORM AND EXPRESSLY DISCLAIM LIABILITY FOR ERRORS IN OR OMISSIONS FROM THE BORROWER MATERIALS. NO WARRANTY OF ANY KIND, EXPRESS, IMPLIED OR STATUTORY, INCLUDING ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT OF THIRD PARTY RIGHTS OR FREEDOM FROM VIRUSES OR OTHER CODE DEFECTS, IS MADE BY ANY AGENT PARTY IN CONNECTION WITH THE BORROWER MATERIALS OR THE PLATFORM. In no event shall the Administrative Agent or any of its Related Parties (collectively, "Agent Parties") have any liability to the Borrower, any Lender or any other Person for losses, claims, damages, liabilities or expenses of any kind (whether in tort, contract or otherwise) arising out of any Borrower's or the Administrative Agent's transmission of Borrower Materials through electronic telecommunications or other information transmission systems, except for direct or "economic" (as such term is used in Title 18, United States Code, Section 1030(g)) (as opposed to special, indirect, consequential or punitive) losses, claims, damages, liabilities or expenses to the extent that such losses, claims, damages, liabilities or expenses (x) are determined by a court of competent jurisdiction by a final and nonappealable judgment to have resulted from the gross negligence or willful misconduct of such Agent Party or (y) result from a claim brought by the Borrower against an Indemnitee for material breach of such Indemnitee's obligations hereunder or under any other Loan Document in respect of Borrower Materials made available through electronic telecommunications or other information transmission systems, if the Borrower or such Loan Party has obtained a final and nonappealable judgment in its favor on such claim as determined by a court of competent jurisdiction; provided, however, that in no event shall any Agent Party have any liability to the Borrower, any Lender or any other Person for indirect, special, incidental, consequential or punitive damages (as opposed to such direct or "economic" damages).

Section 10.05 Severability. If any provision of this Agreement is held to be illegal, invalid or unenforceable, (a) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby and (b) the parties shall endeavor in good faith negotiations to

replace the illegal, invalid or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the illegal, invalid or unenforceable provisions. The invalidity of a provision in a particular jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

Section 10.06 Entire Agreement. This Agreement supersedes all prior agreements, representations and warranties, whether written or oral, of the parties with respect to the subject matter contained herein and constitutes a complete and exclusive statement of the terms of the agreement between the parties with respect to such subject matter.

Section 10.07 Governing Law; Jurisdiction; WAIVER OF JURY TRIAL.

(a) Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to its conflict of law principles.

(b) Jurisdiction; WAIVER OF JURY TRIAL. Any lawsuit or other legal actions arising out of or based upon this Agreement shall be brought and determined in the exclusive jurisdiction of the courts of the State of New York, the courts of the United States for the Southern District of New York and appellate courts from any thereof. The parties agree that, after a proceeding is before a court as specified in this Section 10.07(b) and during the pendency of such proceeding or any other proceeding, including any counterclaim, cross-claim or interpleader, shall be subject to the exclusive jurisdiction of such court. Each party waives, and agrees not to assert, as a defense in any such proceeding that it is not subject thereto or that such proceeding may not be brought or is not maintainable in such court or that its property is exempt or immune from execution, that such proceeding is brought in an inconvenient forum or that the venue of the proceeding is improper. Each party irrevocably consents to the service of any and all process in any such proceeding by the delivery of such process to such party at the address and in the manner provided in Section 10.04. EACH PARTY HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY PROCEEDING (INCLUDING ANY COUNTERCLAIM) ARISING OUT OF OR BASED UPON THIS AGREEMENT. Each party agrees that a final judgment in any proceeding described in this Section 10.07(b) after the expiration of any period permitted for appeal and subject to any stay during appeal shall be conclusive and may be enforced in other jurisdictions on the judgment or in any other manner provided by applicable law.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**BORROWER:**

INSTANT BRANDS LITIGATION TRUST

By: ______________, as Trustee
Alan D. Halperin solely in his capacity as Litigation Trustee

ADMINISTRATIVE AGENT:

ACQUIOM AGENCY SERVICES LLC,
as Administrative Agent

By: J. Anderson
Name: Jennifer Anderson
Title: Senior Director

**CITADEL CREDIT MASTER FUND LLC**, as a Lender
By its Manager, Citadel Advisors LLC

By: ______________________________
Name: Christopher Ramsay
Title: Authorized Signatory

Saratoga Investment Corp CLO 2013-1 Ltd., as a Lender

By: Saratoga Investment Corp, its Investment Manager

By: ______________________________

Name: Thomas V. Inglesby
Title: Authorized Signatory

LENDER:

11TH LANE HOLDINGS LLC

By: ______________________________
Name: Quinn Morgan
Title: Authorized Signatory

[Signature Page to Instant Brands Litigation Trust Credit Agreement]

**Schedule 1**
**Commitments**

| **Backstop Lender** | **Tranche 1 Loan Commitment Amount** | **Tranche 2 Loan Commitment Amount** | **Tranche 3 Loan Commitment Amount** | **Total Loan Commitment Amount** | **Commitment Percentage** |
|---|---|---|---|---|---|
| 11th Lane Holdings LLC | $335,769 | $671,538 | $1,007,307 | $2,014,614 | 33.6% |
| Citadel Credit Master Fund LLC | $654,146 | $1,308,292 | $1,962,438 | $3,924,876 | 65.4% |
| Saratoga Investment Corp., CLO 2013-1, Ltd. | $10,085 | $20,170 | $30,255 | $60,510 | 1.0% |

**Schedule 2**
**Litigation Trust Agreement**

# LITIGATION TRUST AGREEMENT

This Litigation Trust Agreement (the "Litigation Trust Agreement"), dated as of February 27, 2024, by (a) the individual identified on Exhibit A attached hereto, as the trustee for the liquidating trust established pursuant to this Litigation Trust Agreement (such person and each successor trustee, the "Litigation Trustee"), and (b) Corelle Brands Acquisition Holdings LLC (f/k/a Instant Brands Acquisition Holdings Inc.), on behalf of itself and the other Debtors, is executed pursuant to the Confirmation Order to facilitate the implementation of the *Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization of Instant Brands Acquisition Holdings Inc. and its Debtor Affiliates* [ECF No. 1146-1] (as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms thereof, the "Plan") that provides for the establishment of the Litigation Trust created hereby. Each of the Debtors and the Litigation Trustee are referred to herein individually as a "Party" and collectively as the "Parties." Capitalized terms used in this Litigation Trust Agreement and not otherwise defined shall have the meanings assigned to such terms in the Plan.

## RECITALS

WHEREAS, on June 12, 2023, Instant Brands Acquisition Holdings Inc. and certain of its subsidiaries (collectively, the "Debtors") commenced voluntary cases (the "Bankruptcy Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court");

WHEREAS, on June 15, 2023, the Debtors commenced proceedings before the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") under Part IV of the Companies' Creditors Arrangement Act, R.S.C., 1985, c. C-36, as amended (the "CCAA") recognizing the Bankruptcy Cases as "foreign main proceedings" (the "CCAA Recognition Proceedings");

WHEREAS, on February 23, 2024, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order");

WHEREAS, on February 27, 2024, the Effective Date of the Plan occurred and the reorganization of the Debtors was consummated (as reorganized from and after the Effective Date of the Plan, the "Reorganized Debtors");

WHEREAS, on February 26, 2024, the CCAA Court entered an order recognizing the Confirmation Order (the "CCAA Recognition Order");

WHEREAS, the Litigation Trust is established for the sole purpose of administering and liquidating the Litigation Trust Assets and making all distributions to holders of interests in the Litigation Trust (the "Litigation Trust Interests") as provided for under the Plan;

WHEREAS, the Litigation Trust shall be established for the benefit of the holders of the Litigation Trust Interests (collectively, the "Litigation Trust Beneficiaries"), eighty-five (85%) percent of which shall be held by the holders of Allowed Prepetition Term Loan Claims and fifteen (15%) percent which shall be held in the name of the Litigation Trustee or his designee as the designated Distribution Agent (as defined in the Plan) (the "Distribution Agent") for the benefit of holders of Allowed General Unsecured Claims (including, for the avoidance of doubt, Disputed

General Unsecured Claims to the extent they ultimately become Allowed General Unsecured Claims) subject to the terms of Section 1.08 hereof;

WHEREAS, the Litigation Trustee was duly appointed pursuant to section 1123(a)(5)(B), (a)(7), and (b)(3)(B) of the Bankruptcy Code solely with respect to the Litigation Trust Assets;

WHEREAS, the Litigation Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust;

WHEREAS, the Litigation Trust (excluding the Distribution Reserves) is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulations section 301.7701-4(d) that is treated as a grantor trust and the Litigation Trust Beneficiaries are intended to be treated as the grantors of this Litigation Trust (excluding the Distribution Reserves) for U.S. federal income tax purposes, and this Litigation Trust Agreement, the Litigation Trust (excluding the Distributions Reserves), the Confirmation Order, and the Plan are intended to comply with the advance ruling guidelines contained in Rev. Proc. 94-45, 1994-2 C.B. 684; and

WHEREAS, this Litigation Trust Agreement is the "Litigation Trust Agreement" contemplated under the Plan and is executed in order to facilitate the implementation of the Plan;

NOW, THEREFORE, pursuant to the Plan and Confirmation Order, in consideration of the premises and the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

## ARTICLE 1
## ESTABLISHMENT OF THE LITIGATION TRUST

Section 1.01 *Establishment of Litigation Trust and Appointment of Litigation Trustee.*

(a) The Litigation Trust is hereby established on behalf of the Litigation Trust Beneficiaries and shall be known as the "Instant Brands Litigation Trust". References herein to the "Litigation Trust" shall refer to the Instant Brands Litigation Trust, and references to the "Litigation Trustee" shall refer to the Litigation Trustee acting with respect of the Instant Brands Litigation Trust.

(b) The Litigation Trustee is hereby appointed as trustee of the Litigation Trust effective as of the Effective Date and agrees to accept and hold all assets transferred to the Litigation Trust in trust for the Litigation Trust Beneficiaries subject to the terms of the Plan, the Confirmation Order and this Litigation Trust Agreement. The Litigation Trustee, including each successor Litigation Trustee serving from time to time hereunder, shall have all the rights, powers and duties set forth herein. "Litigation Trust Assets" shall mean all Litigation Trust Recovery Actions (as defined in the Plan), any and all proceeds thereof or recoveries therefrom, and all other assets (including all causes of action, property, monetary assets, rights, titles, powers, and other interests of any kind) transferred to the Litigation Trust from time to time either by the Debtors, by the Reorganized Debtors, or by any other Person, including all rights and borrowings under the Litigation Trust Financing Facility, and all rights and proceeds arising from, with respect to or of the foregoing.

(c) Subject to the terms of this Litigation Trust Agreement, any action by the Litigation Trustee and/or the Litigation Trust Advisory Board shall be binding and conclusive on all Litigation Trust Beneficiaries even if such Litigation Trust Beneficiaries have different or conflicting interests.

(d) The Litigation Trustee and the members of the Litigation Trust Advisory Board may serve without bond.

(e) For the avoidance of doubt, none of the Litigation Trustee or any member of the Litigation Trust Advisory Board is an officer, director or fiduciary of any of the Debtors or the Reorganized Debtors.

Section 1.02 *Transfer of Assets and Rights to the Litigation Trust.*

(a) As of the Effective Date, and pursuant to and subject in all respects to the terms of the Plan and the Confirmation Order and in accordance with the Bankruptcy Code (including, without limitation, section 1141 thereof), the Debtors, in their respective capacities as debtors in possession on behalf of the Estates, have transferred, assigned, and delivered to the Litigation Trust, without recourse, all of their respective rights, title, and interests in and to the Litigation Trust Assets free and clear of any and all (1) Claims and Interests, encumbrances, charges, or interests of any kind or nature in such property of any other Person and (2) contractually imposed restrictions (including all Liens, Claims, encumbrances, charges or interests of any kind or nature) except as provided in the Plan or Confirmation Order. For the avoidance of doubt, the Litigation Trust Assets shall include in respect of any Litigation Trust Recovery Action transferred to the Litigation Trust, all of the transferor's legal rights and privileges (including any associated attorney-client, common-interest, work product or other legal privileges of such Person) relating in any way to such Litigation Trust Assets or any communications, legal analysis or advice, or other information in respect of such Litigation Trust Assets or any facts relevant thereto, and the Litigation Trustee in his or her sole discretion shall control the assertion and waiver of any such legal rights and privileges; provided, for the avoidance of doubt, that the retention of any communications, legal analysis or advice, or other information in respect of such Litigation Trust Assets or any facts relevant thereto by the Debtors or the Reorganized Debtors shall not be deemed at any time a waiver of any of the Litigation Trust's legal rights and privileges relating thereto.

(b) On and after the Effective Date, upon the request of the Litigation Trustee, the Debtors and the Reorganized Debtors, as applicable, shall (1) provide the Litigation Trustee and his Professionals (as defined in Section 3.02(g)) with originals or copies of or access to all documents and business records of the Debtors and the Reorganized Debtors in their possession to facilitate the purpose of the Litigation Trust, including the prosecution of the Litigation Trust Recovery Actions, (b) reasonably cooperate with the foregoing (including by providing reasonable access to the Reorganized Debtors' management), and (c) timely provide upon request any and all information the Litigation Trustee or his Professionals may reasonably request in order to fulfill his duties hereunder, including with respect to Taxes and related reporting. Any and all costs in connection therewith shall be governed by Section 3.05 hereof.

(c) All of the proceeds received and recoveries by the Litigation Trust from the pursuit of any Litigation Trust Recovery Actions or otherwise from the administration or liquidation of

the Litigation Trust Assets (collectively, such proceeds, the "Litigation Trust Proceeds") shall be added to the Litigation Trust Assets and held as a part thereof (and title thereto shall be vested in the Litigation Trust).

(d) At any time and from time to time on and after the Effective Date, the Debtors agree, for themselves and the Reorganized Debtors, to the extent contemplated in the Plan and in this Litigation Trust Agreement, (i) at the reasonable request of the Litigation Trustee, to execute and/or deliver any instruments, documents, books and records (including those maintained in electronic format and original documents as may be needed), and (ii) to take, or cause to be taken, all such further actions as the Litigation Trustee may reasonably request, in each case in order to evidence or effectuate the transfer of the Litigation Trust Assets to the Litigation Trust, to make distributions to the Litigation Trust Beneficiaries in accordance with the Plan and this Litigation Trust Agreement, and otherwise to fulfill his duties hereunder. Any and all costs in connection therewith shall be governed by Section 3.05 hereof.

Section 1.03 *Title to Litigation Trust Assets.*

From and after the Effective Date, legal title to the Litigation Trust Assets shall be vested at all times in the Litigation Trust as a separate legal entity except where applicable law in any jurisdiction in which the Litigation Trust Assets may be located requires title to any part of the Litigation Trust Assets to be vested in a trustee, in which case title shall be deemed vested in the Litigation Trustee as set forth in Section 3.01(a). No Litigation Trust Beneficiary shall have legal title to any part of the Litigation Trust Assets. The transfer of the Litigation Trust Assets to the Litigation Trust shall be made for the sole benefit of the Litigation Trust Beneficiaries. Upon each transfer of Litigation Trust Assets to the Litigation Trust, the Litigation Trust shall succeed to all of the transferor's rights, title and interests in and to the Litigation Trust Assets and no other Person shall have any interest, legal, beneficial or otherwise, in the Litigation Trust or the Litigation Trust Assets as of their transfer and assignment to the Litigation Trust.

Section 1.04 *Nature and Purpose of the Litigation Trust.*

(a) The Litigation Trust is organized and established as a trust solely for the purposes set forth in the Plan, pursuant to which the Litigation Trustee, subject to the terms and conditions contained herein and in the Plan and this Litigation Trust Agreement, is to (i) administer the Litigation Trust Assets, (ii) oversee and direct the expeditious but orderly liquidation of the Litigation Trust Assets, and (iii) make all distributions of the Net Litigation Trust Proceeds (as defined below) to the Litigation Trust Beneficiaries as provided for herein and under the Plan. The Litigation Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulations section 301.7701-4(d). The primary purpose of the Litigation Trust is to liquidate the Litigation Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to maintain the liquidation value of the Litigation Trust Assets, and consistent with, the liquidating purpose of the Litigation Trust.

(b) This Litigation Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust for all applicable purposes. The Litigation Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor

shall the Litigation Trustee, the Litigation Trust Advisory Board (or any of its members), the Debtors, the Reorganized Debtors, or the Litigation Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Litigation Trust Beneficiaries to the Litigation Trustee and the Litigation Trust Advisory Board shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Litigation Trust Agreement.

Section 1.05 *Relationship to, and Incorporation of, the Plan and Confirmation Order.*

This Litigation Trust Agreement is to aid in the implementation of the Plan and the Confirmation Order, and therefore this Litigation Trust Agreement incorporates the provisions of the Plan, the Confirmation Order, and the CCAA Recognition Order (as applicable) by this reference. To that end, the Litigation Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan, in each case, solely to the extent that such action or orders are in furtherance of this Litigation Trust Agreement and implementation of the Plan. To the extent that there is an explicit conflict between the provisions of this Litigation Trust Agreement, the provisions of the Plan and/or the Confirmation Order and/or the CCAA Recognition Order (as such conflict relates to anything other than the establishment of the Litigation Trust or the Assets to be transferred to the Litigation Trust, for which the Plan shall control), each such document shall have controlling effect in the following rank order: (1) the Confirmation Order, (2) this Litigation Trust Agreement; (3) the CCAA Recognition Order; and (4) the Plan.

Section 1.06 *Funding of the Litigation Trust.*

On the Effective Date, the Litigation Trust Lenders, as lenders, and the Litigation Trust, as borrower, shall become parties to a credit agreement (the "Litigation Trust Credit Agreement") having the terms set forth in the Plan and the Plan Supplement. The Litigation Trust Credit Agreement shall set forth the terms of the Litigation Trust Financing Facility (as defined in the Plan) which shall provide for loans to the Litigation Trust including $6 million in committed financing (subject to satisfaction of certain conditions) and an additional $4 million of incremental financing (all loans extended under the Litigation Trust Financing Facility, "Litigation Trust Loans"). Except as expressly provided in the Litigation Trust Credit Agreement or in this Litigation Trust Agreement, none of the Debtors or the Reorganized Debtors shall have any liability for any cost or expense of the Litigation Trust. Any failure or inability of the Litigation Trust to obtain funding will not affect the enforceability of the Litigation Trust.

Section 1.07 *Appointment as Representative.*

Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Litigation Trustee is deemed to be acting in the capacity of a bankruptcy trustee, monitor, receiver, liquidator, conservator, or any similar official, who has been appointed to take control of, supervise, manage or liquidate the Litigation Trust Assets for the benefit of the Litigation Trust Beneficiaries. To the extent that any of the Litigation Trust Assets cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by

section 1123 of the Bankruptcy Code or any other provisions of the Bankruptcy Code or the CCAA, such Litigation Trust Assets shall be deemed to have been retained by the applicable Estate and the Litigation Trustee shall be deemed to have been designated as a representative of the applicable Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets on behalf of such Estate subject to the terms of this Litigation Trust Agreement, the Plan, the Confirmation Order, and the CCAA Recognition Order. Notwithstanding the foregoing, all Litigation Trust Proceeds shall be paid over to the Litigation Trust and shall be applied in accordance with the Plan, this Litigation Trust Agreement and the Litigation Trust distribution schedule, attached hereto as Exhibit C (as may be updated from time to time in accordance herewith, the "Litigation Trust Distribution Schedule"), which shall include the following annexes: (a) Annex 1 – Prepetition Term Loan Claims – which shall include the name, address and other available contact information, the Allowed Claim amount and number and wire instructions of each Holder of Allowed Prepetition Term Loan Claims, and (b) Annex 2 – General Unsecured Claims – which shall include a register with the name, address and other available contact information, the Claim amount (noting whether such Claim is Allowed or Disputed), Claim number used by the Claims and Solicitation Agent to track such Claim, and wire instructions of each Holder of General Unsecured Claims (the "General Unsecured Claims Register"). The Debtors or the Reorganized Debtors shall, or cause the Claims and Solicitation Agent to, deliver to the Litigation Trustee periodically, but in no event less than annually consistent with Sections 1.08 and 5.04 hereof so that the Litigation Trustee may timely fulfill his duties hereunder, updated and then current General Unsecured Claims Register to replace the prior General Unsecured Claims Register in Annex 2 of the Litigation Trust Distribution Schedule. The Litigation Trustee, the Professionals and the Distribution Agent may rely on the Litigation Trust Distribution Schedule, including amendments and updates thereto, the General Unsecured Claims Register and any information relating to the Litigation Trust Beneficiaries provided to them by the Debtors, the Reorganized Debtors or the Claims and Solicitation Agent without the requirement of any further investigation, and neither the Litigation Trust, the Litigation Trustee nor the Professionals shall incur any liability from relying thereon to determine the interests of distributions to the Litigation Trust Beneficiaries in the Litigation Trust.

Section 1.08 *Distribution Agent.*

In his capacity as Distribution Agent for the GUC Litigation Trust Interests, the Litigation Trustee shall be required to perform only those obligations specifically enumerated in the Plan or as are reasonably required (in the Litigation Trustee's sole discretion) to implement its obligations as the Distribution Agent for the GUC Litigation Trust Interests under the Plan. In satisfying his duties, the limitations on liability, standards of care, rights of reliance on advice of counsel or other Professionals, indemnification and other protective provisions of and rights under this Litigation Trust Agreement benefiting the Litigation Trustee in his capacity as Litigation Trustee shall apply with equal force and effect to the Litigation Trustee acting in his capacity as Distribution Agent. Additionally, the Distribution Agent will be entitled to rely entirely on the records of the Claims and Solicitation Agent and the Reorganized Debtors, including the General Unsecured Claims Register, in the satisfaction of its duties as Distribution Agent. In accordance with Section 1.07 hereof, the Reorganized Debtors shall provide to the Distribution Agent, or cause the Claims and Solicitation Agent to provide the Distribution Agent, the General Unsecured Claims Register, provided that the Reorganized Debtors shall (1) deliver to the Litigation Trustee a final General Unsecured Claims Register with the final Allowed amount of all Allowed General Unsecured

Claims as of the Distribution Record Date (as defined in the Plan) once such amounts have been finally determined in accordance with the procedures set forth in the Plan (including after application by the Reorganized Debtors of any applicable rights of setoff or recoupment), and (2) provide a final allocation of the beneficial interests for each of the holders of Allowed General Unsecured Claims in the GUC Litigation Trust Interests. In accordance with Article IX.B of the Plan, the Distribution Agent shall have no authority or obligation to take any action to resolve any Disputed Claims because after the Effective Date, the Reorganized Debtors shall have the exclusive authority to File, litigate, compromise, settle, otherwise resolve, or withdraw any objections to Claims (or to apply any rights of setoff or recoupment in respect of Claims), to compromise and settle any such Claims, and to administer and adjust the Claims Register to reflect any such resolution, settlement or compromise.

ARTICLE 2
LITIGATION TRUST INTERESTS

Section 2.01 *Allocation of Litigation Trust Interests.*

The allocation and distribution of the Litigation Trust Interests shall be accomplished as set forth in the Plan with 85% of the Litigation Trust Interests issued pro rata to holders of Allowed Prepetition Term Loan Claims and 15% of the Litigation Trust Interests issued to the Distribution Agent for pro rata benefit of the holders of Allowed General Unsecured Claims (including, for the avoidance of doubt, Disputed General Unsecured Claims to the extent they ultimately become Allowed General Unsecured Claims). All Litigation Trust Proceeds shall be used to pay all costs and expenses payable by the Litigation Trust in satisfaction of any obligations under this Litigation Trust Agreement (including, without limitation, as required to repay in full the Litigation Trust Loans, to pay taxes, to fund the Expense Fund, to make any payments owing to members of the Litigation Trust Advisory Board, and to make any payments to advisors or professionals engaged by the Litigation Trust, the Litigation Trustee, or the Litigation Trust Advisory Board, in each case, in accordance with this Litigation Trust Agreement) prior to distribution of the net remaining amounts after such payments (such net amounts of the Litigation Trust Proceeds, the "Net Litigation Trust Proceeds") to the Litigation Trust Beneficiaries in accordance with the terms hereof.

Section 2.02 *Interests Beneficial Only.*

The ownership of a Litigation Trust Interest shall not entitle any Litigation Trust Beneficiary to any title in or to the Litigation Trust Assets (which title shall be vested in the Litigation Trust) or to any right to call for a partition or division of the Litigation Trust Assets or to require an accounting.

Section 2.03 *Evidence of Beneficial Interests.*

The Litigation Trust Interests shall be uncertificated, and are reflected only on the books and records of the Litigation Trust maintained by the Litigation Trustee for the purpose of identifying Litigation Trust Beneficiaries (the "Trust Register"). All Litigation Trust Beneficiaries are deemed to have assented to and be bound by the terms and conditions of this Litigation Trust Agreement and the Plan.



CONFIDENTIAL CITADEL_0000121

Section 2.04 *Exemption from Registration.*

The Parties hereto intend that the rights of the Litigation Trust Beneficiaries arising under this Litigation Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If such rights constitute securities, the Parties hereto intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws to apply to their issuance under the Plan.

Section 2.05 *Transfer of a Litigation Trust Interest.*

(a) The Litigation Trust Interests are not negotiable, not assignable, not transferable and not capable of being pledged or hypothecated, provided that they may be transferred, in whole only, (x) pursuant to applicable laws of descent and distribution (in the case of a deceased individual Beneficiary), (y) by operation of law, or (z) subject to Section 2.05(b) hereof, in the event the Litigation Trustee and the Litigation Trust Advisory Board receive written notice of transfer executed by both the transferee and the transferor acknowledged before a notary public (upon which, for the avoidance of doubt, the Litigation Trustee and the Litigation Trust Advisory Board may rely as evidence of such transfer without the requirement of any further investigation). The Litigation Trustee shall not be required to record any transfer that, in the Litigation Trustee's sole discretion, may be construed to create any uncertainty or ambiguity as to the identity of the holder of the Litigation Trust Interests. Until a transfer is, in fact, recorded on the Trust Register, the Litigation Trustee, whether or not in receipt of documents of transfer or other documents relating to the transfer, may nevertheless make distributions and send communications as though he or she has no notice of any such transfer, and in so doing the Litigation Trustee shall be fully protected and incur no liability to any purported transferee or any other Person.

(b) Absent written consent from the Litigation Trust Advisory Board, the Litigation Trust Interests shall not be capable of being transferred to any Person or Entity.

(c) Notwithstanding anything contained herein, the Litigation Trust Interests shall only be capable of being transferred to any Person or Entity to the extent it would not be deemed to be traded on (1) an established securities market or (2) a secondary market (or the substantial equivalent thereof), in either case (1) or (2) as defined in IRC section 7704(b).

(d) Any purported transfer of any Litigation Trust Interests in contravention of the forgoing shall constitute a violation of this Section 2.05 and shall be void ab initio.

Section 2.06 *Access to the Litigation Trust Register by the Litigation Trust Beneficiaries.*

The Litigation Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Litigation Trustee and during normal business hours to inspect the Trust Register with respect to and as they pertain to such Litigation Trust Beneficiary's Litigation Trust Interests at the sole expense of the Litigation Trust Beneficiary seeking the same. For avoidance of doubt, the rights referenced in this Section 2.06 include both the Distribution Agent and the Holders of Allowed General Unsecured Claims on whose behalf the Distribution Agent holds Litigation Trust Interests. The Litigation Trustee shall have the right to require that any purported Litigation Trust Beneficiary (or their authorized representatives)

seeking to exercise their rights under this paragraph provide reasonable evidence of such Litigation Trust Beneficiary's identity and shall be permitted to rely on the most recent General Unsecured Claims Register received from the Reorganized Debtors or the Claims and Solicitation Agent in order to verify such person's authority to review the Trust Register.

Section 2.07 *Change of Address.*

A Litigation Trust Beneficiary may, after the Effective Date, select an alternative distribution address or provide wire transfer instructions for any distribution hereunder by providing written notice as set forth in Section 11.06 hereof, including such new address or instructions, (a) in the case of the Prepetition Term Loan Lenders to the Litigation Trustee, upon which the Litigation Trustee shall update Annex 1 of the Litigation Trust Distribution Schedule accordingly, and (b) in the case of the Holders of General Unsecured Claims, to the Reorganized Debtors and the Claims and Solicitation Agent, upon receipt of which the Reorganized Debtors and the Claims and Solicitation Agent shall update the General Unsecured Claims Register accordingly. Such notification will be effective only upon receipt by the Litigation Trustee or the Reorganized Debtors and/or the Claims and Solicitation Agent, as applicable, as set forth in Section 11.06 hereof. Absent receipt of such notice by the Litigation Trustee or the Reorganized Debtors and/or the Claims and Solicitation Agent, as applicable, and the update of the General Unsecured Claims Register from the Reorganized Debtor, the Litigation Trustee shall not recognize any such change.

Section 2.08 *Tax Identification Numbers.*

The Litigation Trustee may, in accordance with Section 5.06, require each Litigation Trust Beneficiary to furnish to the Litigation Trustee its social security number or employer or taxpayer identification number as assigned by the Internal Revenue Service and complete any related documentation (including, but not limited to a Form W-8 or Form W-9), and the Litigation Trustee shall condition any distribution to any such Litigation Trust Beneficiaries, including distributions by the Distribution Agent to Holders of Allowed General Unsecured Claims, on the receipt of such documentation and such other information or documents as the Litigation Trustee reasonably requests in accordance with Section 5.06 or in accordance with such applicable law if the Litigation Trustee does not receive such information. For avoidance of doubt, the Distribution Agent may similarly require Holders of General Unsecured Claims to provide similar information and documentation to the Distribution Agent and may similarly condition any distribution to any Holders of General Unsecured Claims thereon.

Section 2.09 *Conflicting Claims.*

If any conflicting claims or demands are made or asserted with respect to Litigation Trust Interests, the Litigation Trustee shall be entitled, in his, her or its sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, the Litigation Trustee shall (a) make no payment or distribution with respect to the Litigation Trust Interests or any part thereof, and (b) refer such conflicting claims and demands to the Bankruptcy Court, which shall have exclusive jurisdiction over the resolution of such conflicting claims or demands. In so doing, the Litigation Trustee shall not be liable to any party for his, her or its refusal to comply with any such conflicting claims or demand. The Litigation Trustee shall be entitled to refuse to comply with conflicting

claims and demands until either (a) a Final Order has been entered adjudicating the rights of the adverse claimants or (b) the conflict has been resolved by a written agreement among such parties and the Litigation Trustee, which agreement shall include a complete release of the Litigation Trust and the Litigation Trustee with respect to the subject matter of the dispute.

## ARTICLE 3
## THE LITIGATION TRUSTEE

Section 3.01 *Role of the Litigation Trustee.*

In furtherance of and consistent with the purpose of the Litigation Trust and the Plan, the Litigation Trustee, subject to the terms and conditions contained herein and in the Plan, shall (i) receive, hold, and administer the Litigation Trust Assets for the benefit of the Litigation Trust Beneficiaries and (ii) make distributions of Net Litigation Trust Proceeds in accordance with the Plan and the Litigation Trust Distribution Schedule. Subject to the provisions of this Litigation Trust Agreement, the Litigation Trustee in consultation with the Litigation Trust Advisory Board shall be responsible for all decisions and duties with respect to the Litigation Trust and the Litigation Trust Assets. The Litigation Trustee and the Litigation Trust Advisory Board shall act in the best interests of all the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust. Neither the Litigation Trustee nor any of his duly designated agents or representatives or Professionals shall be liable for any act or omission taken or omitted to be taken in accordance with the Litigation Trust Agreement, the Plan or the Confirmation Order, other than acts or omissions resulting from the their own gross negligence, willful misconduct, or fraud. The Litigation Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with the Professionals, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons.

Section 3.02 *Authority of the Litigation Trustee.*

In connection with the administration of the Litigation Trust, in addition to any and all of the powers enumerated elsewhere herein, the Litigation Trustee is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Litigation Trust Agreement and the provisions of the Plan solely relating to the Litigation Trust and the Litigation Trust Assets, within the bounds of the Plan, this Litigation Trust Agreement and applicable law. The Litigation Trustee, in consultation with the Litigation Trust Advisory Board except as set forth herein, shall, in an expeditious but orderly manner, receive, liquidate and convert to Cash the Litigation Trust Assets, make timely distributions and not unduly prolong the duration of the Litigation Trust. The liquidation of the Litigation Trust Assets may be accomplished either through the prosecution, compromise and settlement, abandonment or dismissal thereof, or otherwise.

The Litigation Trustee, subject to the approval of the Litigation Trust Advisory Board except as set forth herein, shall have the right to pursue, not pursue, release, dismiss, abandon, settle and/or compromise any and all Litigation Trust Assets (including any counterclaims asserted against the Litigation Trust) as the Litigation Trustee reasonably determines is in the best interests of the Litigation Trust Beneficiaries. To the extent that any action has been taken to prosecute or otherwise resolve any Litigation Trust Recovery Action prior to the Effective Date by the Debtors and/or the Official Committee of Unsecured Creditors, on the Effective Date the Litigation Trustee

shall be substituted for the Debtors and/or the Official Committee of Unsecured Creditors in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable to the litigation by Rule 7025 of the Federal Rules of Bankruptcy Procedure and the caption with respect to such pending litigation shall be changed to the following: "Alan Halperin as Litigation Trustee for the Instant Brands Litigation Trust, et al. v. [Defendants]". Immediately upon the Effective Date, all rights, powers, duties, authority and privileges of the Debtors and/or the Official Committee of Unsecured Creditors relating to any such Litigation Trust Recovery Action will be vested in the Litigation Trust and undertaken by the Litigation Trustee, consistent and in accordance with the terms of this Litigation Trust Agreement, without any further act, provided that the Litigation Trustee will not be liable personally for any act or omission of the Debtors and/or the Official Committee of Unsecured Creditors or any occurrence prior to the Effective Date. Subject to any limitations contained herein (including, without limitation, Article 4 herein) or in the Plan, the Litigation Trustee shall have the following powers and authorities:

(a) Subject to Section 1.03 hereof, receive by assignment, investiture, or other legal means of transfer from any source and hold legal title (on behalf of the Litigation Trust as Litigation Trustee, but not individually) to all Litigation Trust Assets which shall include, without limitation, any and all money, causes of action, and other property belonging to or transferred to the Litigation Trust on the Effective Date or thereafter;

(b) in consultation with the Litigation Trust Advisory Board, exercise the right to vote any claim or interest that is a Litigation Trust Asset or related thereto in a case under the Bankruptcy Code, the CCAA or any other insolvency or corporate arrangement statute and receive any distribution with respect thereto;

(c) in consultation with the Litigation Trust Advisory Board, make distributions of Net Litigation Trust Proceeds in accordance with the provisions of the Plan, this Litigation Trust Agreement and the Litigation Trust Distribution Schedule;

(d) in consultation with and subject to the approval of the Litigation Trust Advisory Board as may be required in this Litigation Trust Agreement, exercise and perform the rights, powers, and duties with respect to the Litigation Trust Assets, including, without limitation, the any authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, monitor, receiver, liquidator, conservator, or any similar official who has been appointed to take control of, supervise, manage or liquidate, or to provide for the prosecution, settlement, compromise, adjustment, retention, enforcement, abandonment or dismissal of, the Litigation Trust Assets;

(e) in consultation with the Litigation Trust Advisory Board, protect and enforce the rights to the Litigation Trust Assets by any method deemed appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(f) in consultation with the Litigation Trust Advisory Board, obtain reasonable insurance coverage with respect to the duties, liabilities and obligations of the Litigation Trustee and the Litigation Trust Advisory Board under this Litigation Trust Agreement (in the form of

fiduciary liability insurance, a directors and officers policy, an errors and omissions policy or otherwise);

(g) upon the prior written consent of the Litigation Trust Advisory Board, without further order of the Bankruptcy Court or CCAA Court, employ various professionals, including, but not limited to, counsel, accountants, tax advisors, consultants, experts, agents and financial advisors or other advisors (collectively with the independent public accounting firm as set forth in subparagraph (h) below, the "Professionals"), as the Litigation Trustee deems necessary to aid it in fulfilling its obligations under this Litigation Trust Agreement and the Plan, and on whatever fee arrangement the Litigation Trustee deems appropriate including, without limitation, contingency fee arrangements. Professionals engaged by the Litigation Trustee shall not be required to file applications in order to receive compensation for services rendered and reimbursement of actual out-of-pocket expenses incurred. All such compensation and reimbursement shall be paid by the Litigation Trust with Litigation Trust Proceeds or the proceeds of the Litigation Trust Loans; provided that such payments are made in accordance with the Approved Budget then in effect under (and as defined in) the Litigation Trust Credit Agreement and the terms of the Litigation Trust Credit Agreement;

(h) in consultation with and subject to the approval of the Litigation Trust Advisory Board, retain and approve compensation arrangements of independent public accounting firms to perform such reviews and/or audits of the financial books and records of the Litigation Trust as may be reasonable and appropriate in the Litigation Trustee's discretion and to prepare and file any tax returns, informational returns, or periodic or current reports as may be required by applicable laws for the Litigation Trust. Subject to the foregoing, the Litigation Trustee may commit the Litigation Trust to and shall pay such independent public accounting firms reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred, and all such compensation and reimbursement shall be paid from the Litigation Trust with Litigation Trust Proceeds or the proceeds of the Litigation Trust Loans; provided that such payments are made in accordance with the Approved Budget then in effect under the Litigation Trust Credit Agreement and the terms of the Litigation Trust Credit Agreement;

(i) in consultation with and subject to the approval of the Litigation Trust Advisory Board, exercise any rights to borrow under the Litigation Trust Credit Agreement.

(j) in consultation with and subject to the approval of the Litigation Trust Advisory Board, assert, enforce, release or waive any privilege or any defense on behalf of the Litigation Trust, the Litigation Trust Assets or the Litigation Trust Beneficiaries, as applicable;

(k) in consultation with the Litigation Trust Advisory Board, coordinate with the Debtors and Reorganized Debtors (as applicable) to establish one or more disputed claims reserves (each, a "Distributions Reserve" and collectively, the "Distributions Reserves") from the Net Litigation Trust Proceeds in accordance with the General Unsecured Claims Register on account of Litigation Trust Interests issued to the Distribution Agent; *provided* that, for the avoidance of doubt, the Reorganized Debtors shall reconcile customer accounts, loan balances and ordinary business transactions, and execute offsets and assert counterclaims against Holders of Claims, and the Litigation Trustee shall defer to the Reorganized Debtors with respect to any litigation relating thereto; *provided further* that, the amount held back in the Distributions Reserves shall be equal to



CONFIDENTIAL CITADEL_0000126

the amount necessary to satisfy the distributions to which the Holders of the Litigation Trust Interests issued to the Distribution Agent (for the benefit of the Holders of Allowed General Unsecured Claims (including, for the avoidance of doubt, Disputed General Unsecured Claims to the extent they ultimately become Allowed General Unsecured Claims)) would be entitled if all Disputed General Unsecured Claims were to be subsequently Allowed; in each case, which amount shall be determined in accordance with Art. IX. D. of the Plan and reflected and accounted for in the General Unsecured Claims Register;

(l) for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), (i) make an election pursuant to Treasury Regulations section 1.468B-9 to treat each Distributions Reserve as a "disputed ownership fund" within the meaning of that section and act as the administrator (as defined under Treasury Regulations section 1.468B-9(b)(2)) of any such "disputed ownership fund," (ii) allocate taxable income or loss to the Distributions Reserves with respect to any given taxable year (but only for the portion of the taxable year with respect to which the applicable General Unsecured Claims are Disputed Claims), (iii) pay any Taxes due on account of such "disputed ownership fund," and distribute assets from the Distributions Reserves as, when, and to the extent, such Disputed General Unsecured Claims become Allowed and the corresponding Litigation Trust Interests are allocated by the Distribution Agent to the Holder of the then Allowed claims;

(m) subject to the mandatory prepayment obligations set forth in Section 2.03(b) of the Litigation Trust Credit Agreement, upon the written consent of the Litigation Trust Advisory Board, the Litigation Trustee may invest all the Litigation Trust Assets, including, without limitation, the proceeds of the Litigation Trust Loans, all Litigation Trust Proceeds, the Expense Fund (as defined below) and all income earned by the Litigation Trust (pending any periodic distributions in accordance with the provisions of the Plan, this Litigation Trust Agreement and the Litigation Trust Distribution Schedule), in short term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills, and withdraw funds of the Litigation Trust, make distributions, incur and pay obligations for reasonable and necessary costs and expenses in administering, liquidating and converting the Litigation Trust Assets to Cash, including the fees and expenses of the Litigation Trustee, the Professionals, the members of the Litigation Trust Advisory Board and taxes of the Litigation Trust (including taxes attributable to the Distributions Reserves); provided, however, that such actions are consistent with the Litigation Trust's status as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684;

(n) request any appropriate tax determination with respect to the Litigation Trust including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(o) subject to applicable securities laws, if any, establish and maintain a website, which may be maintained by and through the Debtors' Claims and Solicitation Agent, to the extent the Litigation Trustee deems necessary, for the purpose of providing notice of Litigation Trust activities in lieu of sending written notice to Litigation Trust Beneficiaries, subject to providing notice of the establishment of such website to such beneficiaries;

(p) take or refrain from taking any and all actions the Litigation Trustee reasonably deems necessary for the continuation, protection and maximization of the Litigation Trust Assets

consistent with the purposes hereof, take all steps and execute all instruments and documents necessary to effectuate the Litigation Trust and take all actions necessary to comply with the Confirmation Order, the CCAA Recognition Order, the Plan and this Litigation Trust Agreement and the obligations thereunder and hereunder;

(q) upon the written consent of the Litigation Trust Advisory Board, liquidate any remaining Litigation Trust Assets and provide for the distributions therefrom in accordance with the provisions of the Plan, this Litigation Trust Agreement and the Litigation Trust Distribution Schedule;

(r) exercise such other powers and authority as may be vested in or assumed by the Litigation Trustee by any Final Order, or as may be necessary and proper to carry out the provisions of the Plan relating to the Litigation Trust; and

(s) in consultation with the Litigation Trust Advisory Board, evaluate and determine strategy with respect to the Litigation Trust Assets, and upon the written consent of the Litigation Trust Advisory Board, hold, pursue, prosecute, adjust, arbitrate, compromise, release, settle, dismiss or abandon the Litigation Trust Assets comprising Litigation Trust Recovery Actions.

Section 3.03 *Limitation of the Litigation Trustee's Authority.*

(a) Notwithstanding anything herein to the contrary, the Litigation Trust shall not be authorized to engage in any trade or business and the Litigation Trustee shall not (i) take any actions inconsistent with the orderly liquidation of the Litigation Trust Assets as are required or contemplated by applicable law, the Confirmation Order, the CCAA Recognition Order, the Plan and this Litigation Trust Agreement; (ii) be authorized to engage in any investments or activities inconsistent with the treatment of the Litigation Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684; (iii) take any action in contravention of this Litigation Trust Agreement; (iv) take any action that would jeopardize treatment of the Litigation Trust as a grantor trust for U.S. federal income tax purposes under sections 671-677 of the Internal Revenue Code of 1986, as amended (the "IRC"), or any successor provisions thereof, except such prohibition shall not apply with respect to the Distributions Reserves; (v) cause or permit beneficial interest in the Litigation Trust to be traded on (1) an established securities market or (2) a secondary market (or the substantial equivalent thereof), in either case (1) or (2) as defined in IRC section 7704(b).

(b) The Litigation Trustee, acting on behalf of the Litigation Trust, shall comply with, and shall not take any actions inconsistent with or seek to modify or seek relief from, any provision of the Plan, the Confirmation Order or the CCAA Recognition Order except to the extent necessary to clarify an ambiguity or conflict in any provision of the Plan, the Confirmation Order, or the CCAA Recognition Order.

Section 3.04 *Payment of Litigation Trust Expenses.*

(a) The Litigation Trustee may incur any reasonable and necessary fees and expenses in pursuing the Litigation Trust Assets, administering the Litigation Trust, managing the Litigation Trust Assets, making distributions of Litigation Trust Assets on account of Litigation Trust Interests and otherwise performing his duties hereunder. Subject to the requirements of Section

3.11, all fees, expenses, and costs of the Litigation Trustee and the Litigation Trust (including, for the avoidance of doubt, the fees and expenses of Professionals engaged by the Litigation Trust) shall be paid by, solely out of Litigation Trust Assets, and solely be the obligation of, the Litigation Trust.

(b) The Litigation Trustee shall maintain an expense fund (the "Expense Fund") as a reserve to pay fees and expenses reasonably anticipated to be incurred in the future for the purposes set forth in Sections 3.04(a) and 3.05 herein and expend the assets of the Expense Fund to pay such fees and expenses as and when they become due in accordance with Section 3.11.

(c) As accrued fees and expenses are satisfied and paid, the Litigation Trustee may, in consultation with the Litigation Trust Advisory Board, retain from the Litigation Trust Proceeds at any time and from time to time, in his/her/its discretion, such amounts as the Litigation Trustee reasonably determines should be held in the Expense Fund to ensure that the Expense Fund will be adequate to pay fees and expenses anticipated to be incurred in the future for the purposes set forth in Sections 3.04(a) and 3.05 herein and add such amounts to the Expense Fund. Prior to the repayment in full of the Litigation Trust Loans, the amount of Cash that may be held in the Expense Fund shall not exceed the greater of (i) the amount reserved for the Expense Fund in the Approved Budget then in effect under (and as defined in) the Litigation Trust Credit Agreement and (ii) $350,000. Upon repayment in full of the Litigation Trust Loans, there shall be no limitation on the amount of Cash that may be held in the Expense Fund; provided, that the approval of such amount shall be obtained from the Litigation Trust Advisory Board, which approval shall not be unreasonably withheld.

(d) Notwithstanding any other provision of this Litigation Trust Agreement to the contrary, the Litigation Trustee shall not be required to take any action or enter into or maintain any claim, demand, action, cause of action or proceeding relating to the Litigation Trust, including the Litigation Trust Assets, unless it shall have sufficient funds in the Expense Fund for that purpose.

Section 3.05 *Reimbursement of Debtors.*

Except as otherwise provided herein, the Litigation Trust shall provide reimbursement for all such reasonable out-of-pocket expenses incurred within thirty (30) days of receipt of an appropriately detailed written invoice. Reimbursement of the Reorganized Debtors under this Section 3.05 shall be limited to a total of $50,000, provided that the Reorganized Debtors shall have the right to petition the Bankruptcy Court to increase this total upon a showing that the Reorganized Debtors' actual reasonable out-of-pocket expenses in performing their obligations under this Litigation Trust Agreement significantly exceed $50,000. Costs and expenses associated with the Reorganized Debtors' review of documents provided or to be provided to the Litigation Trust, including under Section 1.02(B) hereof, production of documents in connection with any litigation, preparation of employees for and attendance at depositions or interviews, including under Section 1.02(B) hereof, attendance at and preparation for other depositions, hearings or trials or otherwise involvement in the actions asserting, related to or in connection with the Litigation Trust Assets, shall not be deemed to constitute the performance of the Reorganized Debtors under this Litigation Trust Agreement and shall not be included in any request for reimbursement. For the avoidance of doubt, nothing in this Section 3.05 shall be interpreted as

imposing on the Litigation Trustee or the Liquidation Trust any obligation to reimburse any Person other than the Reorganized Debtors for any legal fees or expenses incurred in connection with this Litigation Trust Agreement or the production of documents or information generally. Notwithstanding the foregoing, the costs and expenses incurred by the Debtors or Reorganized Debtors in preparing, updating, reconciling or otherwise related to the General Unsecured Claims Register shall be borne solely by the Reorganized Debtors and shall not be reimbursable by the Litigation Trust.

Section 3.06 *Distributions.*

(a) The Litigation Trustee shall distribute the Net Litigation Trust Proceeds in accordance with the Litigation Trust Distribution Schedule and subject to the Plan and Article 6 herein.

(b) The Litigation Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Litigation Trustee's reasonable sole discretion, and pay such amounts, as required by and in accordance with any law, regulation, rule, ruling, directive or other governmental requirement.

(c) Any Litigation Trust Assets that are not distributable in accordance with this Section 3.06 as of the termination of the Litigation Trust shall be reallocated and otherwise distributed in accordance with the Litigation Trust Distribution Schedule subject to the provisions of Article 6 herein.

(d) The Litigation Trustee may retain a separate agent for the effective administration and distribution of amounts payable to the Litigation Trust Beneficiaries and all costs and expenses of such agent shall be paid from the Expense Fund, including if applicable, in the event the Litigation Trustee serves as the Distribution Agent in respect of the Allowed General Unsecured Claims.

Section 3.07 *Tenure, Removal, and Replacement of the Litigation Trustee.*

(a) The Litigation Trustee will serve until resignation and the earlier of the appointment of an Interim Trustee pursuant to subsection (h) below, a successor Litigation Trustee pursuant to subsection (b) below, removal pursuant to subsection (c) below, Disability or death (if applicable).

(b) The Litigation Trustee may resign by giving not less than forty-five (45) days' prior written notice to the Litigation Trust Advisory Board, the Distribution Agent, the Reorganized Debtors, and the Litigation Trust Beneficiaries and filing such notice with the Bankruptcy Court. Such resignation will become effective on the earlier to occur of (i) the day specified in such notice and (ii) the appointment of a successor Litigation Trustee as provided herein; provided, however, if such replacement trustee has not been appointed by the date specified in the resignation notice, an interim trustee shall be appointed as provided in sub-section (g) below.

(c) Any Litigation Trustee may be removed as Litigation Trustee (i) without Cause by the Litigation Trust Advisory Board upon not less than thirty (30) days' prior written notice to the then current Litigation Trustee or (ii) for Cause by order of the Bankruptcy Court upon motion of any member of the Litigation Trust Advisory Board or a Litigation Trust Beneficiary. Upon

removal in accordance with this subsection 3.07(c), the Litigation Trust Advisory Board shall appoint a successor Litigation Trustee and serve prompt written notice to the Reorganized Debtors, the Distribution Agent and the Litigation Trust Beneficiaries of removal of the Litigation Trustee and the appointment of any successor Litigation Trustee.

(d) In the event that the Litigation Trustee is removed, resigns or otherwise ceases to serve as Litigation Trustee due to death or Disability, the Litigation Trust Advisory Board shall appoint a successor Litigation Trustee. The Litigation Trust Advisory Board shall give prompt written notice to the Reorganized Debtors, the Distribution Agent and the Litigation Trust Beneficiaries of the death or removal of the Litigation Trustee and the appointment of any successor Litigation Trustee.

(e) Immediately upon the appointment of any successor Litigation Trustee, all rights, powers, duties, authority and privileges of the predecessor Litigation Trustee hereunder will be vested in and undertaken by the successor Litigation Trustee without any further act; and the successor Litigation Trustee will not be liable personally for any act or omission of the predecessor Litigation Trustee; and the predecessor Litigation Trustee will not be liable personally for any act or omission of the successor Litigation Trustee. Any successor Litigation Trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations of the predecessor Litigation Trustee hereunder, and such successor shall be subject to the same qualifications and shall have the same rights, powers, duties and discretion, and otherwise be in the same position, as the originally named Litigation Trustee. References herein to the Litigation Trustee shall be deemed to refer to any successor Litigation Trustee acting hereunder.

(f) Upon the appointment of a successor Litigation Trustee, all the estates, properties, rights, powers and trusts of such predecessor Litigation Trustee shall automatically transfer to such successor Litigation Trustee upon the trust herein expressed, without recourse to the predecessor Litigation Trustee and the predecessor Litigation Trustee (or the duly appointed legal representative of a deceased Litigation Trustee or a Litigation Trustee suffering a Disability) shall, upon the written request of the successor Litigation Trustee, execute and deliver such instrument or instruments necessary or required to assign, transfer and deliver to such successor Litigation Trustee all property and money, including documents relating to the Litigation Trust, the Litigation Trust Assets, or the Litigation Trust Interests, then in such predecessor Litigation Trustee's possession and held hereunder. Notwithstanding the foregoing, the Litigation Trustee shall be entitled to all compensation and reimbursement of expenses accrued through and including the date the Litigation Trustee appointment is terminated in accordance with this Section 3.07 and Section 3.11 hereof.

(g) Any successor or interim Litigation Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Litigation Trustee hereunder, and any statement or representation made by a predecessor or interim Litigation Trustee or its agents as to the Litigation Trust Assets or as to any other fact bearing upon the prior administration of the Litigation Trust, so long as it has a good faith basis to do so. The Litigation Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement or representation if it is later proved to be incomplete, inaccurate or untrue. The Litigation Trustee Interim Trustee or successor Litigation Trustee shall not be liable for any act or omission of any

predecessor Litigation Trustee, nor have a duty to enforce any claims against any predecessor Litigation Trustee on account of any such act or omission.

(h) During any period in which there is a vacancy in the position of Litigation Trustee, the Litigation Trust Advisory Board shall appoint one of its members to serve as interim Litigation Trustee (the "Interim Trustee"). The Interim Trustee shall be subject to all the terms and conditions applicable to a Litigation Trustee hereunder. Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a member of the Litigation Trust Advisory Board merely by such Person's appointment as Interim Trustee.

(i) For purposes of this Section 3.07 and Section 4.07, the following terms shall have the following meanings:

(i) "Cause" means fraud, self-dealing, material breach of this Litigation Trust Agreement, intentional misrepresentation or willful misconduct.

(ii) "Disability" of the Litigation Trustee or a member of the Litigation Trust Advisory Board shall have occurred if, as a result of such Person's incapacity due to physical or mental illness as determined by a physician selected by the Litigation Trustee or any member of the Litigation Trust Advisory Board, as applicable, and reasonably acceptable to the Litigation Trust Advisory Board, the Litigation Trustee or the member of the Litigation Trust Advisory Board shall have been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

Section 3.08 *Books and Records.*

The Litigation Trustee shall maintain in respect of the Litigation Trust and the Litigation Trust Beneficiaries good and sufficient books and records relating to the Litigation Trust Assets and income of the Litigation Trust and the payment of expenses of, liabilities of and claims against or assumed by the Litigation Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Litigation Trust and the requirements of Article 8 herein. Access to or inspection of such books and records shall be granted to the Litigation Trust Advisory Board upon reasonable prior written request during normal business hours and to the Litigation Trust Beneficiaries consistent with Section 2.06 of this Litigation Trust Agreement. Nothing in this Litigation Trust Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust or as a condition for managing any payment or distribution out of the Litigation Trust Assets.

Section 3.09 *Inquiries into the Litigation Trustee's Authority.*

Except as otherwise set forth in this Litigation Trust Agreement or in the Plan, no Person dealing with the Litigation Trust shall be obligated to inquire into the authority of the Litigation Trustee in connection with the protection, conservation or disposition of the Litigation Trust Assets.

Section 3.10 *Compliance with Laws.*

(a) The Litigation Trustee shall ensure that any and all distributions of Net Litigation Trust Proceeds shall be in compliance with applicable laws.

(b) If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with registration and reporting requirements of the Exchange Act, the Trust Indenture Act, the Investment Company Act or other applicable law, then the Litigation Trustee shall, after consultation with the Litigation Trust Advisory Board, take commercially reasonable efforts to comply with such registration and reporting requirements, if any, and file periodic reports with the U.S. Securities and Exchange Commission, Canadian provincial securities regulatory authorities or other applicable Governmental Authority to the extent required by law.

Section 3.11 *Litigation Trustee Compensation and Reimbursement.*

The Litigation Trustee shall receive compensation from the Litigation Trust as follows:

(a) The Litigation Trustee shall receive the compensation set, from time to time, by agreement between the Litigation Trustee and the Litigation Trust Advisory Board. The Litigation Trust Advisory Board, without application to or approval by the Bankruptcy Court, may by agreement with the Litigation Trustee, reasonably modify the Litigation Trustee's compensation and other terms regarding the retention of the Litigation Trustee. Notwithstanding the foregoing, it is expressly acknowledged that the initial Litigation Trustee shall be paid for his, her or its services at his, her or its regular hourly rate at all times in effect, provided that the initial Litigation Trustee shall provide prior notice to the Litigation Trust Advisory Board of any ordinary course increase in his, her or its regular hourly rate. In addition to the foregoing, all compensation of, and fees and expenses incurred (including professional fees) by, the Litigation Trustee prior to the Effective Date shall be paid on the Effective Date in accordance with the Plan.

(b) In addition, the Litigation Trust will reimburse the Litigation Trustee (out of the Litigation Trust Proceeds or the proceeds of the Litigation Trust Loans) for all reasonable and documented out-of-pocket expenses incurred by the Litigation Trustee in connection with the performance of the Litigation Trustee's duties hereunder and under the Plan; provided that such payments are made in accordance with the Approved Budget then in effect under the Litigation Trust Credit Agreement and the terms of the Litigation Trust Credit Agreement.

(c) The fees and expenses payable to the Litigation Trustee shall be paid to the Litigation Trustee upon approval by the Litigation Trust Advisory Board without necessity for review or approval by the Bankruptcy Court, CCAA Court or any other Person; provided that such payments are made in accordance with the Approved Budget then in effect and the Litigation Trust Credit Agreement. The Litigation Trust Advisory Board shall be deemed to have approved the fees and expenses of the Litigation Trustee if no objection is asserted in writing within ten (10) days after receipt of an invoice therefor. All such compensation and reimbursement shall be paid from the Litigation Trust Proceeds or the proceeds of the Litigation Trust Loans, it being expressly understood and acknowledged that such fees and expenses are not limited by or to the Expense Fund but are limited by the Approved Budget then in effect and the terms of the Litigation Trust

Credit Agreement. The Bankruptcy Court shall retain jurisdiction to adjudicate any dispute between the Litigation Trustee and the Litigation Trust Advisory Board regarding the fees, compensation and expenses of the Litigation Trustee.

Section 3.12 *Reliance by the Litigation Trustee.*

Except as otherwise provided herein:

(a) The Litigation Trustee and the Professionals shall have the absolute and unconditional right to rely, and shall be protected in acting upon, any resolution, certificate, statement, representation, list, schedule, register, instrument, opinion, report, notice, request, consent, order or other paper or document believed by the Litigation Trustee and/or the Professionals to be genuine, accurate, complete and/or to have been signed, delivered or presented by the proper party or parties, including, without limitation, any of the foregoing provided by the Debtors or the Reorganized Debtors under this Litigation Trust Agreement or the Plan, any member of the Litigation Trust Advisory Board, the Claims and Solicitation Agent, the Distribution Agent, any Litigation Trust Beneficiary, or any party to the Litigation Trust Credit Agreement under or in accordance with this Litigation Trust Agreement, the Plan, or the Litigation Trust Credit Agreement.

Section 3.13 *Standard of Care; Exculpation.*

Neither the Litigation Trustee nor any of the Litigation Trustee's or the Litigation Trust's duly designated agents or representatives or Professionals shall be liable for any act or omission taken or omitted to be taken by any of them except in the event that there is, and to the extent set forth in, a Final Order of a court of competent jurisdiction determining that the Litigation Trustee or the agents or representatives or Professionals, as the case may be, committed fraud, self-dealing, intentional misrepresentation, bad faith, recklessness, gross negligence or willful misconduct, *provided* that in no event will any such Person be liable for punitive, exemplary, consequential, or special damages under any circumstances. The Litigation Trustee may, in connection with the performance of the Litigation Trustee's functions, and in the Litigation Trustee's sole and absolute discretion, consult with the Professionals and shall not be liable for any act taken, omitted to be taken or suffered to be done in accordance with advice or opinions rendered by such Persons to comply with the terms of this Litigation Trust Agreement, the Plan, the Confirmation Order, the CCAA Recognition Order, or to otherwise perform his duties hereunder or thereunder. Notwithstanding such authority, the Litigation Trustee shall be under no obligation to consult with the Professionals, and the Litigation Trustee's good faith determination not to do so shall not result in the imposition of liability on the Litigation Trustee, unless such determination is based on fraud, self-dealing, intentional misrepresentation, bad faith, recklessness, gross negligence, willful misconduct or knowing violation of law. Except as expressly provided in this Litigation Trust Agreement, the Plan, the Confirmation Order or the CCAA Recognition Order, neither the Litigation Trust nor the Litigation Trustee shall assume any of the liabilities, obligations or duties of the Debtors, the Reorganized Debtors or the Litigation Trust Beneficiaries. The Litigation Trustee may accept and rely upon any accounting made by or on behalf of the Debtors or the Reorganized Debtors and any statement or representation made by the Debtors or the Reorganized Debtors or their respective agents and professionals as to the assets comprising the Litigation Trust Assets or as to any other fact bearing upon the creation of the Litigation Trust, the General

Unsecured Claims Register and/or Holders of General Unsecured Claims. The Litigation Trustee (in such capacity or as Distribution Agent) may accept and rely upon any accounting made, information generated and any statement or representation made any distribution agent he may retain or its agents and professionals relating to the General Unsecured Claims Register and/or Holders of General Unsecured Claims. This Section 3.13 shall survive the death, dissolution, resignation or removal of the Litigation Trustee or the termination of the Litigation Trust, and shall inure to the benefit of the Litigation Trustee's heirs and assigns.

Section 3.14 *Acknowledgment of Lack of Control; Exculpation.*

The Parties hereby acknowledge and agree that neither the Debtors, the Reorganized Debtors, nor any Litigation Trust Beneficiary, nor the equity owners of the Debtors or the Reorganized Debtors, nor any creditor or group of creditors of the Debtors or Reorganized Debtors, nor any of their duly designated agents or representatives, in each case solely in their capacities as such (the "Non-Controlling Parties"), are able to exert any control or influence over the Litigation Trustee, the administration of the Litigation Trust, the pursuit of the Litigation Trust Assets or any other business of the Litigation Trust, and accordingly no Non-Controlling Party shall be liable for any act or omission of the Litigation Trust, the Litigation Trustee or any agent or representative of the Litigation Trustee.

Section 3.15 *Limited Recourse.*

All Persons (including any Professionals or distribution agent retained by the Litigation Trustee, the Litigation Trust Advisory Board or any of its members in accordance with this Agreement) engaged in transactions with the Litigation Trust or the Litigation Trustee shall look only to the Litigation Trust Assets (or to any insurance that may cover such claim) to satisfy any liability incurred in connection with the carrying out the terms of this Litigation Trust Agreement, the Plan, the Confirmation Order, or CCAA Recognition Order, and none of the Litigation Trustee, any member of the Litigation Trust Advisory Board, any Litigation Trust Beneficiary, the Debtors or the Reorganized Debtors shall have any personal obligation to satisfy any such liability. This Section 3.15 shall survive the death, dissolution, resignation or removal of the Litigation Trustee or the termination of the Litigation Trust, and shall inure to the benefit of the Litigation Trustee's heirs and assigns.

Section 3.16 *No Successor Liability.*

Except as otherwise expressly provided in this Litigation Trust Agreement, the Plan, Confirmation Order, or the CCAA Recognition Order, neither the Litigation Trust nor the Litigation Trustee (i) shall be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors relating to or arising out of the Litigation Trust Assets prior to the Effective Date; (ii) shall be deemed successors to the Debtors by any reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtors prior to the Effective Date; and (iii) shall have any successor or transferee liability of any kind or character. This Section 3.16 shall survive the death, dissolution, resignation or removal of the Litigation Trustee or the termination of the Litigation Trust, and shall inure to the benefit of the Litigation Trustee's heirs and assigns.

## ARTICLE 4
## LITIGATION TRUST ADVISORY BOARD

Section 4.01 *Litigation Trust Advisory Board.*

The Litigation Trust Advisory Board, which shall have three members (such members to be appointed in accordance with the Plan as follows: (i) two members appointed by the Prepetition Term Loan Lenders, and (ii) one member appointed by the Official Committee of Unsecured Creditors (or its designee)), is hereby established as of the Effective Date pursuant to Article IV.G of the Plan to advise, assist, and supervise the Litigation Trustee in the administration of the Litigation Trust pursuant to this Litigation Trust Agreement. The initial members of the Litigation Trust Advisory Board shall be the Persons set forth on Exhibit B, attached hereto. Members of the Litigation Trust Advisory Board shall have the right to remove the Litigation Trustee and shall have thereupon such other rights to operate and manage the Litigation Trust in a manner consistent with the Confirmation Order, the Plan, and the terms of this Litigation Trust Agreement. No other Litigation Trust Beneficiary shall have any consultation or approval rights whatsoever in respect of management and operation of the Litigation Trust, except as may be set forth in this Litigation Trust Agreement, or the Plan.

Section 4.02 *Authority of the Litigation Trust Advisory Board.*

The Litigation Trust Advisory Board shall have the authority and responsibility to advise, assist, and supervise the Litigation Trustee in the administration of the Litigation Trust and shall have the authority to remove the Litigation Trustee in accordance with Section 3.07(c) herein. The Litigation Trustee shall consult with and provide information to the Litigation Trust Advisory Board in accordance with and pursuant to the terms of this Litigation Trust Agreement and the Plan. The Litigation Trust Advisory Board shall have the authority to select and engage such professional advisors, including, without limitation, any professional previously retained by the Official Committee of Unsecured Creditors or the Debtors, as the Litigation Trust Advisory Board deems necessary and desirable to assist the Litigation Trust Advisory Board in fulfilling its obligations under this Litigation Trust Agreement and the Plan, and the Litigation Trust shall pay the reasonable and documented fees of such advisors (including on an hourly, contingency or modified contingency basis) and reimburse such advisors for their reasonable and documented out-of-pocket costs and expenses consistent with the terms of this Litigation Trust Agreement.

Section 4.03 *Regular Meetings of the Litigation Trust Advisory Board.*

Meetings of the Litigation Trust Advisory Board are to be held with such frequency and at such place as the Litigation Trustee and the members of the Litigation Trust Advisory Board may determine in their reasonable discretion.

Section 4.04 *Special Meetings of the Litigation Trust Advisory Board.*

Special meetings of the Litigation Trust Advisory Board may be held whenever and wherever called for by the Litigation Trustee or any member of the Litigation Trust Advisory Board.



CONFIDENTIAL CITADEL_0000136

Section 4.05 *Manner of Acting.*

(a) A majority of the total number of members of the Litigation Trust Advisory Board then in office shall constitute a quorum for the transaction of business at any meeting of the Litigation Trust Advisory Board. The affirmative vote of at least two (2) members of the Litigation Trust Advisory Board present and entitled to vote at a meeting at which a quorum is present shall be the act of the Litigation Trust Advisory Board except as otherwise required by law or as provided in this Litigation Trust Agreement. Any or all of the members of the Litigation Trust Advisory Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Any member of the Litigation Trust Advisory Board participating in a meeting by this means is deemed to be present in person at the meeting. Voting may be conducted at a meeting or on negative notice by electronic mail or individual communications by the Litigation Trustee and each member of the Litigation Trust Advisory Board.

(b) Any member of the Litigation Trust Advisory Board who is present and entitled to vote at a meeting of the Litigation Trust Advisory Board when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Litigation Trust Advisory Board, unless: (i) such member of the Litigation Trust Advisory Board objects at the beginning of the meeting (or promptly upon his or her arrival) to holding it or transacting business at the meeting; (ii) his or her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he or she delivers written notice (including by electronic or facsimile transmission) of his or her dissent or abstention to the Litigation Trustee and Litigation Trust Advisory Board before its adjournment. Any member of the Litigation Trust Advisory Board who is entitled to vote upon negative notice shall be deemed to have assented to the action taken, subject to the requisite vote of the Litigation Trust Advisory Board, unless such member of the Litigation Trust Advisory Board delivers written notice (including by electronic or facsimile transmission) of his or her dissent or abstention to the Litigation Trustee and Litigation Trust Advisory Board by the time set forth in the notice (which in no event shall be less than five (5) business days after the date of delivery of such notice except in the event of an emergency (as reasonably determined by the Trustee in light of the relevant circumstances)). The right of dissent or abstention is not available to any member of the Litigation Trust Advisory Board who votes in favor of the action taken.

(c) Prior to any meeting, the taking of a vote or the taking of any action with respect to any matter or issue, each member of the Litigation Trust Advisory Board shall report to the Litigation Trustee and Litigation Trust Advisory Board any conflict of interest such member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such member might have with respect to or in connection with such matter or issue, other than solely as a Litigation Trust Beneficiary). A member who has or who may have a conflict of interest shall be deemed to be a "conflicted member" who shall not be entitled to participate in the meeting, vote or take part in any action with respect to such matter or issue (however such member shall be counted for purposes of determining the existence of a quorum); the meeting, vote or action with respect to such matter or issue shall be undertaken only by members of the Litigation Trust Advisory Board who are not "conflicted members."

Section 4.06 *Litigation Trust Advisory Board's Action Without a Meeting.*

Any action required or permitted to be taken by the Litigation Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Litigation Trust Advisory Board as evidenced by one or more written consents describing the action taken, which written consent can be by email, and recorded in the minutes, electronic records, or other transcript of proceedings of the Litigation Trust Advisory Board.

Section 4.07 *Tenure, Removal, and Replacement of the Members of the Litigation Trust Advisory Board.*

The authority of the members of the Litigation Trust Advisory Board will be effective as of the Effective Date and will remain and continue in full force and effect until the Litigation Trust is terminated in accordance with Section 9.01 herein. The service of the members of the Litigation Trust Advisory Board will be subject to the following:

(a) The members of the Litigation Trust Advisory Board will serve until Disability, death, resignation pursuant to subsection (b) below or removal pursuant to subsection (c) below;

(b) A member of the Litigation Trust Advisory Board may resign at any time by providing a written notice of resignation to the Litigation Trustee and the remaining members of the Litigation Trust Advisory Board (with such resignation effective upon the later of the date specified in the written notice or ten (10) business days);

(c) A member of the Litigation Trust Advisory Board may be removed for Cause by the majority vote of the other members of the Litigation Trust Advisory Board, a written resolution of which shall be delivered to the removed Litigation Trust Advisory Board member and the Litigation Trustee;

(d) In the event of a vacancy on the Litigation Trust Advisory Board (whether by removal, Disability, death or resignation), a new member shall be appointed to fill such position by unanimous consent of the remaining members of the Litigation Trust Advisory Board; provided, however, that if any designee of the Prepetition Term Loan Lenders ceases for any reason to be a member of the Litigation Trust Advisory Board, then, Litigation Trust Beneficiaries that hold a majority in amount of the Litigation Trust Interests issued on account of the Prepetition Term Loans shall have the right to appoint a successor member of the Litigation Trust Advisory Board to replace such designee.

(e) Immediately upon the appointment of any successor member of the Litigation Trust Advisory Board, all rights, powers, duties, authority and privileges of the predecessor member of the Litigation Trust Advisory Board hereunder will be vested in and undertaken by the successor member of the Litigation Trust Advisory Board without any further act, and the successor member of the Litigation Trust Advisory Board will not be liable personally for any act or omission of the predecessor member of the Litigation Trust Advisory Board, and the predecessor member of the Litigation Trust Advisory Board will not be liable personally for any act or omission of the successor member of the Litigation Trust Advisory Board.

(f) Every successor member of the Litigation Trust Advisory Board appointed hereunder shall execute, acknowledge and deliver to the Litigation Trustee and other members an instrument accepting the appointment under this Litigation Trust Agreement and agreeing to be bound thereto, and thereupon the successor member of the Litigation Trust Advisory Board without any further act, deed or conveyance shall become vested with all rights, powers, trusts, and duties of the retiring member.

Section 4.08 *Compensation and Reimbursement of Expenses of the Litigation Trust Advisory Board.*

(a) The member of the Litigation Trust Advisory Board appointed by the Official Committee of Unsecured Creditors shall receive a fixed $30,000 annual aggregate fee in cash as compensation for his or her time expended in connection with the Litigation Trust, to be paid in quarterly increments. The members of the Litigation Trust Advisory Board appointed by the Prepetition Term Loan Lenders shall receive no annual compensation.

(b) The Litigation Trust will reimburse the members of the Litigation Trust Advisory Board for:

(i) all reasonable and documented out-of-pocket expenses (other than the fees and disbursements of legal counsel retained by the members, which will be reimbursed as provided in, and subject to the limits set forth in, section 4.08(b)(ii) below) incurred by such members in connection with the performance of their respective services hereunder including, without limitation, any services rendered with respect to the Distributions Reserves, without duplication, payable within ten (10) business days of demand for payment thereof with related documentation; and

(ii) the reasonable and documented fees, costs and expenses of legal counsel retained by the members up to a maximum for each such member of $30,000 for the first year following the Effective Date and $10,000 for each subsequent year; provided that, the members of the Litigation Trust Advisory Board appointed by the Prepetition Term Loan Lenders shall receive the foregoing legal expense coverage for a single shared legal counsel.

(c) All fees and expenses of the members of the Litigation Trust Advisory Board shall be paid solely from Litigation Trust Proceeds or the proceeds of the Litigation Trust Loans and provision for such payments may be made by the deposit of adequate funds in the Expense Fund; provided that such payments are made in accordance with the Approved Budget then in effect under the Litigation Trust Credit Agreement and the terms of the Litigation Trust Credit Agreement.

Section 4.09 *No Further Liability.*

(a) Each of the members of the Litigation Trust Advisory Board shall have no liability for any actions or omissions in accordance with this Litigation Trust Agreement unless arising out of their bad faith, fraud, recklessness or willful misconduct. In performing their duties under this Litigation Trust Agreement, the members of the Litigation Trust Advisory Board (as applicable) shall have no liability for any action taken in accordance with the advice of counsel, accountants,

appraisers and other Professionals retained by the members of the Litigation Trust Advisory Board or the Litigation Trust. Without limiting the generality of the foregoing, the members of the Litigation Trust Advisory Board may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by the members of the Litigation Trust Advisory Board to be genuine and shall have no liability for actions taken in reliance thereon. Each of the members of the Litigation Trust Advisory Board may rely without inquiry upon writings delivered to it under the Plan which the members of the Litigation Trust Advisory Board (as applicable) reasonably believes to be genuine and to have been given by a proper Person. None of the provisions of this Litigation Trust Agreement shall require the members of the Litigation Trust Advisory Board to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers. Notwithstanding the foregoing, nothing in this Section 4.09 shall relieve the members of the Litigation Trust Advisory Board from any liability for any actions or omissions arising out of their bad faith, fraud, recklessness, or willful misconduct as determined by Final Order of a court of competent jurisdiction. Any action taken or omitted to be taken in the case of the members of the Litigation Trust Advisory Board with the express approval of the Bankruptcy Court will conclusively be deemed not to constitute bad faith, fraud, recklessness or willful misconduct. The rights under this Section 4.09 shall survive the death, dissolution, resignation or removal, as may be applicable, of the Litigation Trustee or the members of the Litigation Trust Advisory Board or the termination of the Litigation Trust, and shall inure to the benefit of the Litigation Trustee' and the members of the Litigation Trust Advisory Board' heirs and assigns.

(b) Neither the Litigation Trustee, the members of the Litigation Trust Advisory Board nor their Professionals will be liable for punitive, exemplary, consequential, special or other damages for a breach of this Litigation Trust Agreement under any circumstances.

Section 4.10 *Acknowledgment of Lack of Control; Exculpation.*

The Parties hereby acknowledge and agree that the Non-Controlling Parties are not able to exert any control or influence over the Litigation Trust Advisory Board, the administration of the Litigation Trust, the pursuit of the Litigation Trust Assets or any other business of the Litigation Trust, and accordingly no Non-Controlling Party shall be liable for any act or omission of the Litigation Trust or any member, designee, professional, agent or representative of the Litigation Trust Advisory Board.

## ARTICLE 5
## TAX MATTERS

Section 5.01 *Treatment of Litigation Trust Assets Transfer.*

(a) Notwithstanding Section 1.02(a) herein, and provided that no definitive guidance is received from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Trustee), all Parties shall treat, for U.S. federal income tax purposes, the transfer of assets to the Litigation Trust, including any amounts or other assets subsequently transferred to the Litigation Trust (but only at such time as actually transferred), as (a) a transfer of the Litigation Trust Assets (other than amounts set aside as Distributions Reserves) directly to the Litigation Trust Beneficiaries, followed



CONFIDENTIAL CITADEL_0000140

by (b) the transfer of such Litigation Trust Assets by the Litigation Trust Beneficiaries to the Litigation Trust in exchange for beneficial interests in the Litigation Trust. Accordingly, such Litigation Trust Beneficiaries shall be treated for U.S. federal income tax purposes (y) as direct recipients of an undivided interest in the Litigation Trust Assets transferred to the Litigation Trust and as having immediately contributed such Litigation Trust Assets to the Litigation Trust and, thereafter, (z) as the grantors and deemed owners of the Litigation Trust and, thus, the direct owners of an undivided interest in the Litigation Trust Assets held by the Litigation Trust. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(b) The Parties intend that, pursuant to section 1146(a) of the Bankruptcy Code, the execution and implementation of this Litigation Trust Agreement, including the creation of the Litigation Trust and any transfers of the Litigation Trust Assets to, by or from the Litigation Trust, will not be subject to any stamp tax, transfer tax or similar tax or fee.

Section 5.02 *Income Tax Status.*[1]

(a) For U.S. federal income tax purposes (and for purposes of all state, local and other jurisdictions to the extent applicable), the Litigation Trust (excluding the Distributions Reserves) shall be treated as a grantor trust pursuant to IRC sections 671-677, or any successor provisions thereof. To the extent consistent with Revenue Procedure 94-45 and not otherwise inconsistent with this Litigation Trust Agreement, this Litigation Trust Agreement shall be construed so as to satisfy the requirements for liquidating trust status. Except with respect to the Litigation Trust Assets allocable to the Distributions Reserves, (i) the Litigation Trust Beneficiaries will be treated as the grantors, deemed owners and beneficiaries of the Litigation Trust, and (ii) any items of income, gain, loss, deduction and credit of the Litigation Trust shall be allocated for U.S. federal income tax purposes among the Litigation Trust Beneficiaries. The Litigation Trust (excluding the Distributions Reserves) shall at all times be administered so as to constitute a domestic grantor trust for U.S. federal income tax purposes.

(b) The Litigation Trustee shall not make an election under Treasury Regulations section 301.7701-3(c) to treat the Litigation Trust as, or otherwise cause the Litigation Trust to be, an association (or a publicly traded partnership) taxable as a corporation for U.S. federal income tax purposes.

(c) If, pursuant to applicable law, the Litigation Trust (excluding the Distributions Reserves) fails to qualify as a grantor trust from its inception or ceases to be treated as a grantor trust for U.S. federal income tax purposes and has two or more equity owners for U.S. federal income tax purposes, the Litigation Trust (excluding the Distributions Reserves) will be treated as a partnership (other than a publicly traded partnership taxable as a corporation). If the Litigation Trust is so treated as a partnership, the following shall apply:

---

[1] NTD: Subject to further review.

(i) A Litigation Trust Beneficiary selected by a majority of the Litigation Trust Advisory Board shall be designated as "partnership representative" within the meaning of IRC section 6223; and

(ii) For any taxable period, the Litigation Trust will, to the extent practicable, make the election described in IRC section 6226 (and any corresponding provision of applicable state law).

(d) Notwithstanding any other provision of this Litigation Trust Agreement and any provision of law that otherwise so empowers the Litigation Trust, the Litigation Trustee will not cause or permit the Litigation Trust to generate any "effectively connected income" for U.S. federal income tax purposes ("ECI"), nor shall the Litigation Trustee cause or permit the Litigation Trust to undertake any activity that could generate any income that could possibly be considered ECI without first obtaining an opinion or advice of nationally recognized tax counsel to the effect that such action will not generate ECI for any direct or indirect owner of beneficial interest in the Litigation Trust that is not a U.S. person.

(e) If subsection 94(3) of the *Income Tax Act* (Canada) applies to the Litigation Trust, then the Litigation Trustee will, if eligible, file an election to be an "electing trust" as defined in subsection 94(1) of the *Income Tax Act* (Canada). The Litigation Trustee shall be entitled to file any other election for Canadian federal or provincial tax purposes which it considers desirable or appropriate.

(f) Amounts distributed by the Litigation Trustee shall be treated as distributions of income or capital for Canadian federal income tax purposes, as determined by the Litigation Trustee.

Section 5.03 *Valuation of Litigation Trust Assets as of Effective Date.*

As soon as practicable after the Effective Date, the Litigation Trustee shall make a good-faith determination of the fair market value of the Litigation Trust Assets as of the Effective Date. This valuation shall be used consistently by the Reorganized Debtors, the Litigation Trust, and the Litigation Trust Beneficiaries for all U.S. federal, and applicable state and local, income tax purposes. In connection with the preparation of the valuation contemplated hereby, the Litigation Trustee shall be entitled to retain on behalf of the Litigation Trust such Professionals as the Litigation Trustee shall determine to be appropriate or necessary, subject to the approval of the Litigation Trust Advisory Board, and the Litigation Trustee shall take such other actions in connection therewith as it determines to be appropriate or necessary. For the avoidance of doubt, the valuation shall not be binding on the Litigation Trust Beneficiaries, the Litigation Trust or the Litigation Trustee for any purpose other than U.S. federal income tax purposes, and the valuation shall not impair or prejudice any rights, claims, powers, duties, authority and privileges of the Litigation Trust Beneficiaries, the Litigation Trust or the Litigation Trustee except with respect to U.S. federal income tax purposes.

Section 5.04 *Tax Returns.*

The Litigation Trustee shall arrange for the filing of U.S. federal income tax returns for the Litigation Trust (excluding the Distributions Reserves) as a grantor trust in accordance with

Treasury Regulations section 1.671-4 and report, but not pay tax on, the Litigation Trust's tax items of income, gain, loss, deduction and credits, other than such tax items allocable to the Distributions Reserves ("LT Tax Items"). In addition, the Litigation Trustee on behalf of the Litigation Trust shall file in a timely manner such other tax returns, including any state and local tax returns and any Canadian federal or provincial tax returns, as are required by applicable law and pay any taxes shown as due thereon. Within a reasonable time following the end of the taxable year, the Litigation Trust shall arrange for the Professionals to send to each Litigation Trust Beneficiary a separate statement setting forth the Litigation Trust Beneficiary's share of LT Tax Items and will instruct each such Litigation Trust Beneficiary to report such items on its applicable income tax return. For this purpose, on or in the two weeks prior to December 15th of each year, the Reorganized Debtors shall provide or cause the Claims and Solicitation Agent to provide to the Litigation Trustee the General Unsecured Claims Register, with the names, addresses, and Claim amount of each Holder of General Unsecured Claims to whom the statements must be sent. The Litigation Trustee may provide each Litigation Trust Beneficiary with a copy of the Form 1041 for the Litigation Trust (without attaching any other Litigation Trust Beneficiary's Schedule K-1 or other applicable information form) along with such Litigation Trust Beneficiary's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement.

Section 5.05 *Expedited Determination of Taxes.*

The Litigation Trustee may request an expedited determination of Taxes under applicable law for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

Section 5.06 *Withholding of Taxes; Litigation Trust Taxes.*

The Litigation Trustee on behalf of the Litigation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions made by the Litigation Trust to the Litigation Trust Beneficiaries (other than to the Distribution Agent) shall be subject to any such withholding and reporting requirements. To the extent that a tax liability is imposed on the Litigation Trust, including a Distributions Reserve, the Litigation Trustee shall timely pay such tax liability and any such payment shall be considered a cost and expense of the operation of the Litigation Trust and/or the Distributions Reserve. All Litigation Trust Beneficiaries shall be required to provide any information necessary to comply with all withholding and reporting requirements, including a completed IRS Form W-9 or, if applicable, IRS Form W-8, within thirty (30) days of a written request of the Litigation Trustee, and the Litigation Trustee shall make no more than two (2) such requests. Failure of such a Litigation Trust Beneficiary to respond to the Litigation Trustee's second request for such tax information within 30 days of the second request shall result in such Litigation Trust Beneficiary forfeiting their beneficial interest in the Litigation Trust and rights to any distribution, and such forfeited amounts shall revest in the Litigation Trust and be distributed in accordance with the Litigation Trust Distribution Schedule subject to the Plan and this Litigation Trust Agreement.

Section 5.07 *Tax Treatment of Distributions Reserves.*

Notwithstanding any other provision of this Litigation Trust Agreement to the contrary, and provided no definitive guidance is received from the Internal Revenue Service or a court of

competent jurisdiction to the contrary, with respect to any Litigation Trust Assets allocable to the Distributions Reserves, the Litigation Trustee shall, for U.S. federal income tax purposes (and to the extent permitted by law, for state and local income tax purposes), elect to treat such assets as held in a "disputed ownership fund" within the meaning of Treasury Regulations section 1.468B-9. Accordingly, the Litigation Trustee shall treat as taxable income or loss of such fund or separate trust with respect to each taxable year, the portion of the taxable income or loss and other tax items for such year that would have been allocated to holders of Disputed Claims had such Claims been allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved). Any separate entity level tax incurred with respect to the Distributions Reserve shall be paid by the Litigation Trustee out of the Distributions Reserve. All parties (and the Litigation Trust Beneficiaries) must report consistently with this Litigation Trust Agreement.

## ARTICLE 6
## DISTRIBUTIONS

Section 6.01 *Distribution; Withholding.*

The Litigation Trustee shall distribute any Net Litigation Proceeds from time to time, and at least annually to the extent practicable, as determined in the Litigation Trustee's discretion in consultation with the Litigation Trust Advisory Board, in accordance with the Plan and the Litigation Trust Distribution Schedule; provided however, that the Litigation Trustee may retain such amounts as it reasonably determines may be necessary (i) to maintain the Distributions Reserves and the Expense Fund and (ii) to pay or reserve for taxes, including those attributable to the Distributions Reserves in accordance with the Plan or this Litigation Trust Agreement. In accordance with the Plan, no distribution shall be made to any holder of GUC Litigation Trust Interests by the Distribution Agent until the Allowed amount of such holder's General Unsecured Claims has been finally determined in accordance with Article VIII.B and Article IX.D of the Plan and such holder's beneficial interests in the GUC Litigation Trust Interests have been finally allocated. The Reorganized Debtors shall notify in writing, and deliver a final General Unsecured Claims Register to, the Distribution Agent when all Allowed amounts of all General Unsecured Claims has been finally determined. All distributions shall be pursuant to the provisions of the Plan, this Litigation Trust Agreement and the Litigation Trust Distribution Schedule. The Litigation Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Litigation Trustee's reasonable discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement and such other amounts as are required under the terms of this Litigation Trust Agreement determined in consultation with the Litigation Trust Advisory Board.

Section 6.02 *Manner of Payment or Distribution.*

(a) All distributions made by the Litigation Trustee to Litigation Trust Beneficiaries shall be payable by the Litigation Trustee directly to the Litigation Trust Beneficiaries of record as of the twentieth (20th) day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such date for the distribution shall be the following Business Day. For the avoidance of doubt, the Litigation Trust Beneficiary of record for all holders of Allowed General Unsecured Claims shall at all times be the Distribution Agent. All distributions shall be

in Cash by wire, check or such other method as the Litigation Trustee deems appropriate under the circumstances. All distributions made by the Distribution Agent shall be made to the Litigation Trust Beneficiaries consisting of holders of Allowed General Unsecured Claims in accordance with the final General Unsecured Claims Register delivered to the Litigation Trustee in accordance with Section 1.08 hereof.

(b) All Net Litigation Trust Proceeds shall be distributed in accordance with the Plan, this Litigation Trust Agreement and the Litigation Trust Distribution Schedule.

Section 6.03 *Delivery of Litigation Trust Distributions.*

All distributions under this Litigation Trust Agreement to any Litigation Trust Beneficiary shall be made at the address of or per wire instruction for such beneficiary as set forth in the Litigation Trust Distribution Schedule, the General Unsecured Claims Register or at such other address, wire instruction or in such other manner as such Litigation Trust Beneficiary shall have specified for payment purposes in a written notice at least twenty (20) days prior to such distribution date in accordance with Section 2.07 hereof. If any distribution to any Litigation Trust Beneficiary is returned as undeliverable, no further distribution to such Litigation Trust Beneficiary shall be made unless and until the Litigation Trustee is notified in writing of such Litigation Trust Beneficiary's then-current address, wire instructions or other payment method, at which time such distribution shall be made to such Litigation Trust Beneficiary without interest consistent with the notice. The Litigation Trustee may but shall have no obligation to determine the current address of any Litigation Trust Beneficiary. In the event any check sent to a Litigation Trust Beneficiary (other than Distribution Agent) respecting a distribution has not been cashed within 120 days of the date of the check, such check shall be cancelled and no additional distribution shall be made to such Litigation Trust Beneficiary. Any undeliverable or unclaimed distribution to any Litigation Trust Beneficiary shall be deemed unclaimed property within the meaning of section 347(b) of the Bankruptcy Code on the 120th day after the date of such distribution and shall revest in the Liquidation Trust automatically and be reallocated to the remaining Litigation Trust Beneficiaries and shall be distributed in accordance the Litigation Trust Distribution Schedule subject to the Plan and this Litigation Trust Agreement, and the claims/beneficial interests of beneficiaries that may have been entitled to such distribution shall be discharged and forever barred from receiving distributions under this Litigation Trust Agreement and the Plan. Such undeliverable or unclaimed distributions shall not be subject to (i) any claims by such Litigation Trust Beneficiary or (ii) the unclaimed property or escheat laws of any state or governmental unit.

Section 6.04 *[Reserved].*

Section 6.05 *Minimum Cash Distributions.*

No Cash distributions shall be required to be made to any Litigation Trust Beneficiary in an amount less than $250.00. Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent distributions, provided that all Cash shall be distributed in the final distribution of the Net Litigation Trust Proceeds.

Section 6.06 *Donations to Charity.*

If at any time the Litigation Trustee, after consultation with the Litigation Trust Advisory Board, determines that the expense of administering the Litigation Trust so as to make a distribution to the Litigation Trust Beneficiaries likely to exceed the value of the remaining Litigation Trust Assets or otherwise impracticable, the Litigation Trustee may donate any balance to a charitable organization described in Section 501(c)(3) of the Internal Revenue Code, exempt from U.S. federal income tax under Section 501(a) of the Internal Revenue Code, and that is unrelated to the Debtors, the Litigation Trust, the Litigation Trustee, and any member of the Litigation Trust Advisory Board.

Section 6.07 *Distributions Reserves.*

The Litigation Trustee shall establish the Distributions Reserve(s), which shall include assets held separately from other assets of the Litigation Trust, subject to an allocable share of all expenses and obligations of the Litigation Trust, on account of Disputed General Unsecured Claims consistent with the General Unsecured Claims Register. The Litigation Trustee shall remove funds from the Distributions Reserve(s) upon receipt of notice from the Reorganized Debtors that any such the Disputed General Unsecured Claims are resolved and that the Holders of such previously Disputed General Unsecured Claims have been allocated their share of the corresponding Litigation Trust Interests held by the Distribution Agent, which funds shall be distributed as provided in this Article 6, Section 3.02(k), the Litigation Trust Distribution Schedule, and the Plan.

## ARTICLE 7
## INDEMNIFICATION

Section 7.01 *Indemnification of the Litigation Trustee and the Litigation Trust Advisory Board.*

(a) To the fullest extent permitted by law, the Litigation Trust will indemnify and hold harmless the Litigation Trustee and the Litigation Trust Advisory Board and each of their respective directors, members, shareholders, partners, officers, agents, Professionals or employees (collectively, the "Litigation Trust Indemnified Parties" and each a "Litigation Trust Indemnified Party") from and against any and all loss, cost, damage, expense (including, without limitation, reasonable fees and expenses of attorneys and other advisors and any court costs reasonably incurred by any Litigation Trust Indemnified Party) or liability by reason of anything any Litigation Trust Indemnified Party did, does, failed or fails to do or refrained or refrains from doing for the business or affairs of or in connection with the Litigation Trust, except to the extent that it is finally judicially determined by a court of competent jurisdiction that the loss, cost, damage, expense or liability resulted from the Litigation Trust Indemnified Party's bad faith, fraud, gross negligence or willful misconduct.

(b) Notwithstanding any provision herein to the contrary, the Litigation Trust Indemnified Parties shall be entitled to obtain advances from the Litigation Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts and omissions, actual or alleged, of a Litigation Trust Indemnified Party in its capacity as such; provided, however, that the Litigation Trust Indemnified Parties receiving such advances

shall repay the amounts so advanced to the Litigation Trust immediately upon the entry of a final, non-appealable judgment or order finding that such Litigation Trust Indemnified Parties were not entitled to any indemnity under the provisions of this Section 7.01.

(c) The rights to indemnification under this Section 7.01 are not exclusive of other rights that any Litigation Trust Indemnified Party may otherwise have at law or in equity, including, without limitation, common law rights to indemnification or contribution. Nothing in this Section 7.01 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under this Litigation Trust Agreement or any other agreement or instrument to which that Person is a party.

(d) The indemnification provisions contained in this Trust Agreement shall not be amended, revised or modified in any way without the prior written consent of each and every Litigation Trust Indemnified Party affected or who may be affected by such proposed amendment, revision or modification. The rights to indemnification under this Section 7.01 are not exclusive of other rights that any Litigation Trust Indemnified Party may otherwise have under the Plan, the Confirmation Order, the CCAA Recognition Order or at law or in equity, including, without limitation, common law rights to indemnification or contribution. Nothing in this Section 7.01 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under this Litigation Trust Agreement or any other agreement or instrument to which that Person is a party. This Section 7.01 shall survive the termination, resignation or removal of such Litigation Trust Indemnified Party from the capacity for which they are indemnified and termination of the Trust Agreement, and shall inure to the benefit of the Litigation Trust Indemnified Parties' heirs and assigns.

## ARTICLE 8
## REPORTS TO LITIGATION TRUST BENEFICIARIES

Section 8.01 *Reports.*

(a) The Litigation Trustee (in consultation with the Litigation Trust Advisory Board) shall provide annual reports based on its fiscal year to the Litigation Trust Beneficiaries, with respect to (i) the prosecution, administration, and resolution of the Litigation Trust Assets and (ii) expenditures, receipts and distributions of the Litigation Trust, provided that such reports shall not contain privileged or confidential information.

(b) Within 120 days after the end of the Litigation Trust's fiscal year, the Litigation Trustee shall cause any information reported pursuant to Section 8.01(a) to be provided to the Litigation Trust Beneficiaries, provided the report shall be provided to the Distribution Agent on behalf of all the Litigation Trust Beneficiaries who are Holders of General Unsecured Claims

(c) Any report required to be distributed by the Litigation Trustee under Section 8.01(a) hereof shall also be distributed to the Persons listed in Section 11.06 hereof concurrently with its distribution to the Litigation Trust Beneficiaries under Section 8.01(a) hereof. The Litigation Trustee may post any report required to be provided under this Section 8.01 on a web site maintained by the Litigation Trustee (or the Reorganized Debtors or the Claims and Solicitation Agent) in lieu of actual notice to the Litigation Trust Beneficiaries (unless otherwise required by



CONFIDENTIAL CITADEL_0000147

law) subject to providing notice to the Persons listed in Section 11.06 herein; provided, that the Litigation Trust Beneficiaries shall be notified by email that a report has been posted.

ARTICLE 9
TERM; TERMINATION OF THE LITIGATION TRUST

Section 9.01 *Term; Termination of the Litigation Trust.*

(a) The Litigation Trust will be dissolved five (5) years from the Effective Date; provided, however, that the Bankruptcy Court, upon motion by the Litigation Trustee, in consultation with the Litigation Trust Advisory Board, on notice to the Litigation Trust Beneficiaries with an opportunity for a hearing, may extend the term of the Litigation Trust for a finite period if (i) such extension is necessary to the purpose of the Litigation Trust, (ii) such extension would not adversely affect the status of the Litigation Trust as a liquidating trust for U.S. federal income tax purposes and (iii) such extension is obtained within the six (6) month period prior to the Litigation Trust's fifth (5th) anniversary or the end of the immediately preceding extension period, as applicable.

(b) Upon dissolution of the Litigation Trust, repayment of the Litigation Trust Loans and payment and satisfaction of all accrued liabilities of the Litigation Trust, any remaining Cash on hand, including any Cash in the Expense Fund and other assets, but excluding any Cash required to comply with Section 9.02 of this Litigation Trust Agreement, will be distributed to the Litigation Trust Beneficiaries in accordance with the Plan, this Litigation Trust Agreement and the Litigation Trust Distribution Schedule, provided that if the Litigation Trustee with the approval of the Litigation Trust Advisory Board believes that the remaining Cash is not sufficient to make a distribution feasible, the Litigation Trustee shall donate the remaining Cash to a charity in accordance with Section 6.06 hereof.

(c) In connection with the dissolution of the Litigation Trust, the Litigation Trustee shall withdraw with prejudice any pending suits, actions or proceedings with respect to any Litigation Trust Recovery Actions constituting Litigation Trust Assets and, upon dissolution of the Litigation Trust, all remaining causes of action constituting Litigation Trust Assets shall be deemed void and abandoned and no Litigation Trust Beneficiary shall have any right, title or interest in or to any such Litigation Trust Recovery Actions.

(d) Prior to the dissolution of the Litigation Trust, the Litigation Trustee shall cause all of the Debtors' or Reorganized Debtors' books and records that were delivered to the Litigation Trust or Litigation Trustee to be returned to the Reorganized Debtors or destroyed, except for copies retained pursuant to the internal compliance policies of the Litigation Trustee and his Professionals, to the extent incorporated into any attorney work product, and/or to the extent of applicable law and regulation.

Section 9.02 *Continuance of the Litigation Trustee for Winding Up.*

After the dissolution of the Litigation Trust and for the purpose of liquidating and winding up the affairs of the Litigation Trust, the Litigation Trustee shall continue to act as such until the Litigation Trustee's duties have been fully performed. Prior to the final distribution of all of the remaining Litigation Trust Assets and upon approval of the Litigation Trust Advisory Board, the

Litigation Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Litigation Trust's and the Litigation Trustee's own costs and expenses in accordance with Section 3.04 and Section 3.11 herein until such time as the winding up of the Litigation Trust is completed. Upon termination of the Litigation Trust, and subject to adequate funding to pay the attendant costs, the Litigation Trustee shall retain for a period of two (2) years, as a cost of administering the Litigation Trust, the books, records, Litigation Trust Beneficiary lists, the Trust Register and certificates and other documents and files that have been delivered to or created by the Litigation Trustee. At the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the Litigation Trust. Except as otherwise specifically provided herein, upon the later of dissolution of the Litigation Trust and the final distribution of all Litigation Trust Assets, the Litigation Trustee shall have no further duties or obligations hereunder. For the avoidance of doubt, all limitations on liability, indemnification rights, and/or exculpation contained in this Litigation Trust Agreement, the Plan, the Confirmation Order or the CCAA Recognition Order shall survive termination and apply to any actions or inactions taken by the Litigation Trustee during the course of winding up the affairs of the Litigation Trust.

## ARTICLE 10
## AMENDMENT AND WAIVER

Any substantive provision of this Litigation Trust Agreement, except for this Article 10 and Section 1.05 herein, may be amended or waived in writing by the Litigation Trustee, upon notice and approval by a majority of the Litigation Trust Advisory Board and approval of the Bankruptcy Court and provision of reasonable notice to the Debtors or Reorganized Debtors (as applicable); provided, however, that any modification that may adversely affect distributions to Litigation Trust Beneficiaries shall require the unanimous consent of the Litigation Trust Advisory Board. Notwithstanding the foregoing, any amendment or waiver that materially and adversely affects the Debtors or the Reorganized Debtors shall require their consent. Technical amendments to this Litigation Trust Agreement may be made, as necessary to clarify this Litigation Trust Agreement or enable the Litigation Trustee to effectuate the terms of this Litigation Trust Agreement or the Plan, by the Litigation Trustee with approval by a majority of the Litigation Trust Advisory Board and without approval of the Bankruptcy Court or the CCAA Court; provided, however, that all amendments of this Litigation Trust Agreement shall be consistent with the Plan and the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Litigation Trust Assets in accordance with Treasury Regulations section 301.7701-4(d) and Section 1.04 herein.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

### Section 11.01 *Intention of Parties to Establish a Liquidating Trust.*

The Litigation Trust is intended to be classified as a liquidating trust for U.S. federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith, and, if necessary, this Litigation Trust Agreement may be amended in accordance with Article 10 herein to comply with such U.S. federal income tax laws, which amendments may apply retroactively.

Section 11.02 *Reimbursement of Trust Costs.*

If the Litigation Trustee, the Litigation Trust Advisory Board, the Litigation Trust, or any Reorganized Debtor, as the case may be, is the prevailing party in a dispute regarding the provisions of this Litigation Trust Agreement or the enforcement thereof, the Litigation Trustee, the Litigation Trust Advisory Board, the Litigation Trust, or any Reorganized Debtor, as the case may be, shall be entitled to collect any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action, provided that nothing contained herein shall in any way limit the rights of the Litigation Trust Indemnified Parties under Article 7 hereof. To the extent that the Litigation Trust has advanced such amounts, the Litigation Trust may recover such amounts from the non-prevailing party, provided that nothing contained herein shall in any way limit the rights of the Litigation Trust Indemnified Parties under Article 7 hereof.

Section 11.03 *Laws as to Construction.*

Except to the extent the Bankruptcy Code or Federal Rules of Bankruptcy Procedure are applicable, this Litigation Trust Agreement shall be governed by, and construed and enforced in accordance with, the federal laws of the United States and, to the extent there is no applicable federal law, the domestic laws of the state of Delaware, without giving effect to the principles of conflicts of law thereof.

Section 11.04 *Jurisdiction.*

The Bankruptcy Court shall have the exclusive jurisdiction with respect to any action relating to or arising from the Litigation Trust or this Litigation Trust Agreement; *provided* that in the event the Bankruptcy Court lacks subject matter jurisdiction or declines to hear such action for any reason, then the parties hereto agree that exclusive jurisdiction over any action, suit, or proceeding under, arising out of, or relating to this Litigation Trust Agreement shall lie in the federal or state courts sitting within the State of Delaware and any appellate court from any such state or Federal court, and hereby irrevocably and unconditionally agree that all claims with respect to any such action shall be heard and determined in such Delaware court or, to the extent required by applicable law, in such Federal court.

Section 11.05 *Severability.*

If any provision of this Litigation Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Litigation Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Litigation Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

Section 11.06 *Notices.*

(a) All notices, requests or other communications to the Parties hereto shall be in writing and shall be sufficiently given only if (i) delivered in person; (ii) sent by electronic or facsimile communication (as evidenced by an electronic mail return receipt or confirmed fax

transmission report, respectively); (iii) sent by registered or certified mail, return receipt requested or (iv) sent by commercial delivery service or courier. Until a change of address is communicated, as provided below, all notices, requests and other communications shall be sent to the parties at the following addresses or facsimile numbers:

(i) If to the Litigation Trustee, to:

Alan Halperin
C/O Halperin Battaglia Benzija
40 Wall Street, 37th Floor
New York, NY 10005
Phone: 212-765-9100

With a copy to:

Debra Cohen
Donna Lieberman
C/O Halperin Battaglia Benzija
40 Wall Street, 37th Floor
New York, NY 10005
Phone: 212-765-9100

(ii) If to the Litigation Trust Advisory Board, to:

Martin Olson
C/O Ravago Americas, LLC dba Muehlstein
10 Westport Road
Wilton, CT 06897
Phone: 203-722-6223
Email: Martin.olson@ravago.com

Peter Zuckerman
C/O Citadel Enterprise Americas LLC
Southeast Financial Center
200 S Biscayne Boulevard, Suite 3300
Miami, FL 33131
FAO: Legal Department
Email: CitadelAgreementNotice@citadel.com

Jonny Cheatle
C/O Citadel Enterprise Americas LLC
Southeast Financial Center
200 S Biscayne Boulevard, Suite 3300
Miami, FL 33131
FAO: Legal Department
Email: CitadelAgreementNotice@citadel.com

With a copy to:

D. Patel Law LLC
C/O Dipesh Patel
63 Mountain Avenue
Mendham, NJ 07945
Phone: 908-296-0998
Email: dpatel@dplllc.com

Dechert LLP
Allan S. Brilliant
Shmuel Vasser
1095 Avenue of the Americas
New York, NY 10036
Phone: 212-698-3500
Email: allan.brilliant@dechert.com
shmuel.vasser@dechert.com

(iii) If to the Debtors, to:

Cathy Landman
Corelle Brands LLC
3025 Highland Parkway, Suite 700
Downers Grove, IL 60515
Phone: 847-233-8617
Email: Cathy.Landman@instantbrands.com

With a copy to:

Davis Polk & Wardwell LLP
Brian Resnick
Steven Szanzer
Joanna McDonald
450 Lexington Avenue
New York, NY 10017
Phone: 212-450-4000
Email: brian.resnick@davispolk.com
Steven.szanzer@davispolk.com
joanna.mcdonald@davispolk.com

(iv) If to the Reorganized Debtors, to:

Cathy Landman
Corelle Brands LLC
3025 Highland Parkway, Suite 700
Downers Grove, IL 60515

Phone: 847-233-8617
Email: Cathy.Landman@instantbrands.com

With a copy to:

Davis Polk & Wardwell LLP
Brian Resnick
Steven Szanzer
Joanna McDonald
450 Lexington Avenue
New York, NY 10017
Phone: 212-450-4000
Email: brian.resnick@davispolk.com
Steven.szanzer@davispolk.com
joanna.mcdonald@davispolk.com

(v) If to a Litigation Trust Beneficiary: to the name and address set forth on the Trust Register; provided that notice to the Litigation Trust Beneficiaries who are Holders of General Unsecured Claim shall be to the Distribution Agent.

(b) All notices shall be effective and shall be deemed delivered (i) if by personal delivery, delivery service or courier, on the date of delivery; (ii) if by electronic mail or facsimile communication, on the date of receipt or confirmed transmission of the communication and (iii) if by mail, on the date of receipt. Any Party from time to time may change its address, facsimile number or other information for the purpose of notices to that Party by giving notice specifying such change to the other Party hereto.

Section 11.07 *Fiscal Year.*

The fiscal year of the Litigation Trust will begin on the first day of January and end on the last day of December of each year.

Section 11.08 *Headings.*

The section headings contained in this Litigation Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Litigation Trust Agreement or of any term or provision hereof.

Section 11.09 *Counterparts.*

This Litigation Trust Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

Section 11.10 *Confidentiality.*

The Litigation Trustee and each member of the Litigation Trust Advisory Board and each successor member of the Litigation Trust Advisory Board (each a "Covered Person") shall, during the period that they serve in such capacity under this Litigation Trust Agreement and following

either the termination of this Litigation Trust Agreement or such individual's removal, incapacity or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Litigation Trust Assets relates or of which it has become aware in its capacity (the "Information"), except for disclosures to each other and the Professionals or otherwise in accordance with this Litigation Trust Agreement and to the extent disclosure is required by applicable law, order, regulation or legal process. In the event that any Covered Person is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand or similar legal process) to disclose any Information, such Covered Person shall notify the Litigation Trust Advisory Board and the Debtors or Reorganized Debtors (as applicable), in each case with a copy to the Litigation Trustee, reasonably promptly (unless prohibited by law) so that the Litigation Trust Advisory Board and/or the Debtors or Reorganized Debtors (as applicable) may seek an appropriate protective order or other appropriate remedy or, in its discretion, waive compliance with the terms of this Section 11.10 (and if the Litigation Trust Advisory Board or Debtors or Reorganized Debtors seek such an order, the relevant Covered Person will provide cooperation as the Litigation Trust Advisory Board and/or Debtors or Reorganized Debtors (as applicable) shall reasonably request). In the event that no such protective order or other remedy is obtained, or that the Litigation Trust Advisory Board and the Debtors or Reorganized Debtors (as applicable) waives compliance with the terms of this Section 11.10, and that any Covered Person is nonetheless legally compelled to disclose the Information, the Covered Person will furnish only that portion of the Information that the Covered Person, advised by counsel, is legally required to furnish and will give the Litigation Trust Advisory Board and the Debtors or Reorganized Debtors (as applicable) written notice, in each case with a copy to the Litigation Trustee, (unless prohibited by law) of the Information to be disclosed as far in advance as practicable and exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information.

Section 11.11 *Entire Agreement.*

This Litigation Trust Agreement (including the Recitals), the Confirmation Order and the Plan constitute the entire agreement by and among the Parties hereto and there are no representations, warranties, covenants or obligations except as set forth herein or therein. This Litigation Trust Agreement, the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations and discussions (written or oral) of the Parties hereto, relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, in the Plan, in the Confirmation Order or in the CCAA Recognition Order, nothing in this Litigation Trust Agreement is intended or shall be construed to confer upon or to give any Person other than the Parties hereto and their respective heirs, administrators, executors, successors or assigns any right to remedies under or by reason of this Litigation Trust Agreement.

Section 11.12 *Rules of Interpretation.*

For purposes of this Litigation Trust Agreement, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Litigation Trust Agreement as a whole and not to any particular section, subsection or clause contained in this Litigation Trust Agreement;

(c) the rules of construction set forth in 11 U.S.C. § 102 will apply and (d) the term "including" shall be construed to mean "including, but not limited to," "including, without limitation," or words of similar import.

Section 11.13 *Effectiveness.*

This Litigation Trust Agreement shall become effective on the Effective Date.

Section 11.14 *No Waiver.*

The Parties agree that no failure or delay by either party in exercising any right, power or privilege hereunder will operate as a waiver thereof and that no single or partial exercise thereof will preclude any other or further exercise thereof or the exercise of any right, power and privilege hereunder.

Section 11.15 *No Execution.*

All funds in the Litigation Trust and the Expense Fund shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Litigation Trust Beneficiary and no Litigation Trust Beneficiary or any other Person can bind, pledge, encumber, execute upon, garnish or attach the Litigation Trust Assets in any manner or compel payment from the Litigation Trustee except by Final Order of the Bankruptcy Court.

Section 11.16 *Actions Taken on Other Than Business Day.*

In the event that any payment or act hereunder is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Litigation Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

CORELLE BRANDS ACQUISITION HOLDINGS LLC, (for itself and on behalf of the other Debtors, as Debtors and Debtors in Possession)

By: ______________________

Name: Catherine R. Landman
Title: Executive Vice President and Secretary

[*Signature Page to Litigation Trust Agreement*]

ALAN HALPERIN, LITIGATION TRUSTEE OF THE LITIGATION TRUST ESTABLISHED UNDER THIS LITIGATION TRUST AGREEMENT DATED FEBRUARY 27 2024 PURSUANT TO THE PLAN OF REORGANIZATION FOR INSTANT BRANDS ACQUISITION HOLDINGS INC. AND ITS DEBTOR AFFILIATES

By: [signature], as Trustee
Name: Alan Halperin
Title: Trustee

[*Signature Page to Litigation Trust Agreement*]

**EXHIBIT A**

THE LITIGATION TRUSTEE

| **Name** | **Contact Details** |
|---|---|
| Alan Halperin | Alan Halperin<br>C/O Halperin Battaglia Benzija<br>40 Wall Street, 37th Floor<br>New York, NY 10005<br>Phone: 212-765-9100<br>Email: ahalperin@halperinlaw.net |
| **Counsel Name** | **Contact Details** |
| Halperin Battaglia Benzija<br>Debra Cohen, Esq.<br>Donna Lieberman, Esq. | Debra Cohen<br>Donna Lieberman<br>C/O Halperin Battaglia Benzija<br>40 Wall Street, 37th Floor<br>New York, NY 10005<br>Phone: 212-765-9100<br>Email: dcohen@halperinlaw.net<br>dlieberman@halperinlaw.net |

**EXHIBIT B**

INITIAL MEMBERS OF THE LITIGATION TRUST ADVISORY BOARD

| **Name** | **Contact Details** |
| --- | --- |
| Martin Olson, as an employee of Ravago Americas, LLC dba Muehlstein | Ravago Americas, LLC dba Muehlstein<br>C/O: Martin Olson<br>10 Westport Road<br>Wilton, CT 06897<br>Phone: 203-722-6223<br>Email: Martin.olson@ravago.com |
| **Counsel Name** | **Contact Details** |
| D. Patel Law LLC<br>Dipesh Patel, Esq. | D. Patel Law LLC<br>C/O Dipesh Patel<br>63 Mountain Avenue<br>Mendham, NJ 07945,<br>Phone: 908-296-0998<br>Email: dpatel@dplllc.com |

| **Name** | **Contact Details** |
| --- | --- |
| Peter Zuckerman, as an employee of Citadel Americas Services LLC | Peter Zuckerman<br>C/O Citadel Enterprise Americas LLC<br>Southeast Financial Center<br>200 S Biscayne Boulevard, Suite 3300<br>Miami, FL 33131<br>FAO: Legal Department<br>Email: CitadelAgreementNotice@citadel.com |
| Jonny Cheatle, as an employee of Citadel Americas Services LLC | Jonny Cheatle<br>C/O Citadel Enterprise Americas LLC<br>Southeast Financial Center<br>200 S Biscayne Boulevard, Suite 3300<br>Miami, FL 33131<br>FAO: Legal Department<br>Email: CitadelAgreementNotice@citadel.com |
| **Counsel Name** | **Counsel Contact Details** |
| Dechert LLP<br>Allan S. Brilliant, Esq.<br>Shmuel Vasser, Esq. | Dechert LLP<br>Attn: Allan S. Brilliant<br>Shmuel Vasser<br>1095 Avenue of the Americas<br>New York, NY 10036-6797<br>Phone: 212-698-3500<br>Email: allan.brilliant@dechert.com |

| | |
|---|---|
| | shmuel.vasser@dechert.com |

# EXHIBIT C

## LITIGATION TRUST DISTRIBUTION SCHEDULE

The Litigation Trustee (with the consent of the Litigation Trust Advisory Board) shall make distributions of any proceeds received from the pursuit, administration and liquidation of the Litigation Assets as follows:

(i) **first**, to the payment in full of all accrued and unpaid Litigation Trust expenses (including the fees and expenses of the Litigation Trustee, the Professionals, and the Litigation Trust Advisory Board members) that are accrued, outstanding and due and payable as of the date of such distribution until paid in full;

(ii) **secondly**, any remainder after the payments provided in the immediately preceding clause, to fund the Expense Fund in an amount not to exceed the greater of (i) the amount reserved for the Expense Fund in the Approved Budget then in effect and (ii) $350,000 as provided in Section 3.04(c) of the Litigation Trust Agreement;

(iii) **thirdly**, any remainder after the payments provided in the immediately preceding clause, in or towards the payment of all principal amounts then outstanding on the Litigation Trust Loans (including, for the avoidance of doubt, all accrued paid in kind interest, fees, and premiums in respect of the Litigation Trust Loans) until paid in full;

(iv) **fourthly**, any remainder after the payments provided in the immediately preceding clause and the repayment in full of the Litigation Trust Loans, into the Expense Fund an additional amount approved by the Litigation Trust Advisory Board sufficient to fund the costs and expenses of the Litigation Trust (including as necessary, through the Litigation Trust's dissolution and the satisfaction of the Litigation Trustee's duties in accordance with Section 9.02 of the Litigation Trust Agreement);

(v) **fifthly**, any remainder after the payments provided in the immediately preceding clause, *pro rata* to the holders of Litigation Trust Interests (including to the Distribution Agent as holder of 15% of the Litigation Trust Interests for the benefit of the holders of Allowed General Unsecured Claims (including, for the avoidance of doubt, Disputed General Unsecured Claims to the extent they ultimately become Allowed General Unsecured Claims); provided that such distributions to the Distribution Agent shall include the funding of any Distributions Reserve in respect of any Litigation Trust Interest which remain unallocated due to unresolved Disputed General Unsecured Claims in the Distribution Agent's records) until all such proceeds have been so applied. For the avoidance of doubt, following the receipt of any distribution from the Litigation Trust, the Distribution Agent shall apply such distributions in accordance with Article VIII.B of the Plan.

# LITIGATION TRUST DISTRIBUTION SCHEDULE
## Annex 1 – Prepetition Term Loan Claims

Prepetition Term Loan Lender Registry

| Lender Name | Fund Manager | Claim Number | Principal Outstanding | Trust Interests | Contact Name | Contact Address | Contact Phone | Contact Email | Wire Instructions |
|---|---|---|---|---|---|---|---|---|---|
| 11th Lane Holdings LLC | Centre Lane Partners | 10647 | $131,264,707.80 | 285,403.68 | Kenneth Eagle | One Grand Central Place, Suite 2200; New York, NY 10165 | 973-449-6502 | keagle@centrelanepartners.com | Bank name: JPMorgan Chase Bank, N.A. Bank routing number: 021000021 Account name: 11th Lane Holdings, LLC Account number: 741866260 |
| Citadel Credit Master Fund LLC | Citadel Limited Partnership | 10647 | $7,400,000.00 | 16,089.53 | Jordan Zahn | Citadel Multi-Asset Master Fund LLC C/O Citadel Enterprise Americas LLC; Southeast Financial Center, 200 S Biscayne Boulevard, Suite 3300; Miami, FL 33131 | 1 212-847-8497 | creditmo@citadel.com | Beneficiary Bank Name: The Bank of New York Mellon Beneficiary Bank SWIFT BIC: IRVTUS3N Beneficiary Fed ABA 021-000-018 Ultimate Beneficiary Account Name: Citadel Credit Master Fund LLC Ultimate Beneficiary Swift: 8901545147 Ref: {Borrower's Name} |
| Citadel Multi-Asset Master Fund Ltd. [(1)] | Citadel Limited Partnership | 10647 | $239,642,716.25 | 521,045.71 | Jordan Zahn | Citadel Multi-Asset Master Fund Ltd. C/O Citadel Enterprise Americas LLC; Southeast Financial Center; 200 S Biscayne Boulevard, Suite 3300; Miami, FL 33131 | 1 212-847-8497 | creditmo@citadel.com | Beneficiary Bank Name: The Bank of New York Mellon Beneficiary Bank SWIFT BIC: IRVTUS3N Beneficiary Fed ABA 021-000-018 Ultimate Beneficiary Account Name: Citadel Multi-Asset Master Fund Ltd. Ultimate Beneficiary Swift: 8901652024 Ref: {Borrower's Name} |
| MONROE CAPITAL MML CLO 2017-1, LTD. | Monroe Capital Management LLC | 10647 | $1,303,125.00 | 2,833.33 | Primary Contact: Monroe Capital Management C/O Jenny Le; Other Contact: U.S. Bank N.A. C/O Steven Hewitt; Monroe Capital Management C/O Tess Cross; Andrea Berdusco; Jeff Williams | Primary Address: 311 South Wacker Drive Suite 6400; Other Address: U.S. Bank N.A.; 1 Federal Street, 3rd Floor; Boston, MA 02110 | Primary Phone: 312.429.6597; Other Phone: 617.603.6744 | Primary Email: jle@monroecap.com; CLOadmin@monroecap.com; Other Email: Monroe.Capital.MML.2017.1@usbank.com; tcross@monroecap.com; aberdusco@monroecap.com; jwilliams@monroecap.com | Bank N.A.; ABA: 091-000-022; Account: 104793099623; Account Name: Monroe Capital MML CLO 2017-1 Ltd.; Ref: Monroe Capital MML CLO 2017-1 Ltd./Borrower's Name; Tax Witholding Form: Form W-8 |
| Monroe Capital MML CLO VII, Ltd | Monroe Capital Management LLC | 10647 | $1,303,125.00 | 2,833.33 | Primary Contact: Monroe Capital Management C/O Jenny Le; Other Contact: U.S. Bank N.A. C/O Steven Hewitt; Monroe Capital Management C/O Tess Cross; Andrea Berdusco; Jeff Williams | Primary Address: 311 South Wacker Drive Suite 6400; Other Address: U.S. Bank N.A.; 1 Federal Street, 3rd Floor; Boston, MA 02110 | Primary Phone: 312.429.6597; Other Phone: 617.603.6744 | Primary Email: Monroe.Capital.MML.CLO.VII@usbank.com; CLOadmin@monroecap.com; Other Email: Monroe.Capital.MML.CLO.VII@usbank.com; tcross@monroecap.com; aberdusco@monroecap.com; jwilliams@monroecap.com | Bank Name: U.S. Bank N.A.; ABA: 091-000-022; Account: 104793569393; Account Name: Monroe Capital MML CLO VII Ltd.; Ref: Monroe Capital MML CLO VII Ltd./Borrower's Name; Tax Witholding Form: |
| Monroe Capital MML CLO X, LLC | Monroe Capital Management LLC | 10647 | $1,737,500.00 | 3,777.78 | Primary Contact: Monroe Capital Management C/O Jenny Le; Other Contact: U.S. Bank N.A. C/O Mike Kam; Monroe Capital Management C/O Tess Cross; Andrea Berdusco; Jeff Williams | Primary Address: 311 South Wacker Drive Suite 6400; Other Address: U.S. Bank N.A.; 1 Federal Street, 3rd Floor; Boston, MA 02110 | Primary Phone: 312.429.6597; Other Phone: 617.603.6717 | Primary Email: Monroe.Capital.MML.CLO.X@usbank.com; CLOadmin@monroecap.com; Other Email: Monroe.Capital.MML.CLO.X@usbank.com; tcross@monroecap.com; aberdusco@monroecap.com; jwilliams@monroecap.com | Bank N.A.; ABA: 091-000-022; Account: 104794357145; Account Name: Monroe Capital MML CLO X, LLC; Ref: Borrower's Name/Monroe Capital MML CLO X, LLC; Tax Witholding Form: Form W-8 |
| Monroe Capital MML CLO XI, Ltd | Monroe Capital Management LLC | 10647 | $4,343,750.00 | 9,444.44 | Primary Contact: Monroe Capital Management C/O Jenny Le; Other Contact: U.S. Bank N.A. C/O Mike Kam; Monroe Capital Management C/O Tess Cross; Andrea Berdusco; Jeff Williams | Primary Address: 311 South Wacker Drive Suite 6400; Other Address: U.S. Bank N.A.; 1 Federal Street, 3rd Floor; Boston, MA 02110 | Primary Phone: 312.429.6597; Other Phone: 617.603.6717 | Primary Email: Monroe.Capital.MML.CLO.XI@usbank.com; CLOadmin@monroecap.com; Other Email: Monroe.Capital.MML.CLO.XI@usbank.com; tcross@monroecap.com; aberdusco@monroecap.com; jwilliams@monroecap.com | Bank Name: U.S. Bank N.A.; ABA: 091-000-022; Account: 104796840924; Account Name: Monroe Capital MML CLO XI, Ltd.; Ref: Borrower's Name/Monroe Capital MML CLO XI, Ltd.; Tax Witholding Form: Form W-8 |
| Saratoga Investment Corp. CLO 2013-1, Ltd. | Saratoga Partners | 10647 | $3,942,575.64 | 8,572.19 | Thomas Inglesby and Jonathan Crawford | 535 Madison Avenue, 4th, New York, NY 10022 | 212-906-7848; 212-906-7892 | tinglesby@saratogapartners.com; jcrawford@saratogapartners.com | Bank N.A.; ABA: 091-000-022; Account Number: 104790062509; Account Name: Saratoga Inv Corp 2013-1, Ltd.; Ref: Saratoga Inv Corp 2013-1, Ltd.; Reference: Saratoga Inv Corp 2013-1, Ltd. |

(1) Citadel Multi-Asset Master Fund Ltd. holds $180,950,598 in pre-petition term loan claims. However, it purchased litigation trust interests associated with an additional $58,692,118 of pre-petition term loan claims from Jefferies Leveraged Credit Products, LLC by letter agreements dated October 4, 2023 (relating to $54,348,368 of claims) and February 23, 2024 (relating to $4,343,750 of claims purchased by Jefferies Leveraged Credit Products, LLC from Monroe Capital MML CLO XII, Ltd.).

# LITIGATION TRUST DISTRIBUTION SCHEDULE
## Annex 2 – General Unsecured Claims Register

GUC Register as of February 27, 2024

| CLAIM NUMBER | SCHEDULE NUMBER | CLAIM NAME | UNSECURED CLAIMED AMOUN | CLAIM STATUS | ADDRESS1 | ADDRESS2 | ADDRESS3 | CITY | STATE | ZIP | COUNTRY | OFFICE PHONE | HOME PHONE | EMAIL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | | CDW | $98,169.18 | Disputed | ATTN RONELLE ERICKSON | 200 N MILWAUKEE AVE | | VERNON HILLS | IL | 60061 | | 8474196253 | | RONEERI@CDW.COM |
| 5 | | SPECTROCHEMICAL LABORATORIES | $12,005.00 | Disputed | ATTN JOHN RODAITIS | 155 PROMINENCE DR | | NEW KENSINGTON | PA | 15068 | | 7243344140 | | JOHN.RODAITIS@SPECTROCHEMICALME.COM |
| 10 | | SINGLE SOURCE HANDLING INC | $8,482.00 | Disputed | 7125 GILARDI RD | | | BOONSBORO | MD | 21713 | | 3014162525 | | SSHJSINGLE@YAHOO.COM |
| 11 | | TOWN & COUNTRY LANDSCAPING | $14,294.99 | Disputed | PO BOX 474 | | | GREENCASTLE | PA | 17225 | | 7178306322 | | |
| 12 | | ULINE | $1,430.62 | Disputed | 12575 ULINE DR | | | PLEASANT PRAIRIE | WI | 53158 | | 8888846910 | | ARBANKRUPTCY@ULINE.COM |
| 15 | | MASSACHUSETTS DEPARTMENT OF REVENUE | $141.20 | Disputed | ATTN BANKRUPTCY UNIT | PO BOX 7090 | | BOSTON | MA | 02204-7090 | | 6176263875 | | JOYCES@DOR.STATE.MA.US |
| 18 | | KENNAMETAL INC | $47,172.60 | Disputed | 1600 TECHNOLOGY WAY | | | LATROBE | PA | 15650 | | 7245394916 | | DINA.PALMIERI@KENNAMETAL.COM |
| 19 | | WARD GREENBERG HELLER & REIDY LLP | $8,348.53 | Disputed | ATTN DENNIS R CALLAHAN | 1835 MARKET ST, STE 650 | | PHILADELPHIA | PA | 19103 | | 2158361100 | | DCALLAHAN@WARDGREENBERG.COM |
| 21 | 715001370, 715001380, 715001390 | ARIZONA DEPARTMENT OF REVENUE | $9,553.59 | Disputed | C/O OFFICE OF THE AZ ATTY GENERAL - BCE | 2005 N CENTRAL AVE, STE 100 | | PHOENIX | AZ | 85004 | | 6025428811 | 6027167806 | BANKRUPTCYUNIT@AZAG.GOV |
| 23 | | DEPARTMENT OF THE TREASURY - IRS | $71,545.63 | Disputed | PO BOX 7346 | | | PHILADELPHIA | PA | 19101-7346 | | 8009730424 | 3462276296 | YANNA.R.WILLIAMS@IRS.GOV |
| 24 | | CARBAUGH TOOL COMPANY INC | $31,853.95 | Disputed | 126 PHILO RD W | | | ELMIRA | NY | 14903 | | 6077393293 | | ACARBAUGH8244@GMAIL.COM |
| 25 | | UNITED DAIRY MACHINERY CORPORATION | $19,924.38 | Disputed | 301 MEYER RD | | | BUFFALO | NY | 14224 | | 7166740500 X110 | | MCICH@UDMC.BIZ |
| 26 | 715008780 | KING'S FLAIR DEVELOPMENT LIMITED | $136,591.40 | Disputed | 12/F, NO. 3 CONNAUGHT ROAD WEST | | | HONG KONG | | | HONG KONG | 85228506626 | | NORDISWAN@KINGSFLAIR.COM.HK |
| 27 | | LLOYD, KATHARINA | $0.00 | Disputed | C/O WEISBERG CUMMINGS PC | ATTN DERREK CUMMINGS | 2704 COMMERCE DR, STE B | HARRISBURG | PA | 17110 | | 7172385707 | 2403296209 | DCUMMINGS@WEISBERGCUMMINGS.COM |
| 28 | | EATON CORPORATION | $3,814.94 | Disputed | C/O GLOBAL TRADE CREDIT | 1000 EATON BLVD, #S5 | | CLEVELAND | OH | 44122 | | 4405234884 | | GLOBALTRADECREDIT@EATON.COM |
| 29 | | NY STATE DEPT OF TAXATION AND FINANCE | $1.49 | Disputed | ATTN BANKRUPTCY SECTION | PO BOX 5300 | | ALBANY | NY | 12205-0300 | | 5184573160 | | |
| 31 | 715011340 | NY STATE DEPT OF TAXATION AND FINANCE | $1.61 | Disputed | ATTN BANKRUPTCY SECTION | PO BOX 5300 | | ALBANY | NY | 12205-0300 | | 5184573160 | | |
| 32 | | NY STATE DEPT OF TAXATION AND FINANCE | $1.49 | Disputed | ATTN BANKRUPTCY SECTION | PO BOX 5300 | | ALBANY | NY | 12205-0300 | | 5184573160 | | |
| 33 | | SLWM | $646.24 | Disputed | 1400 UNIVERSAL AVE | | | KANSAS CITY | MO | 64120 | | 4107851111 | | KHENRY@SLWMCO.COM |
| 34 | | BUREAU VERITAS CONSUMER PRODUCTS SVCS | $60,906.00 | Disputed | 100 NORTHPOINTE PKWY | | | BUFFALO | NY | 14228 | | 7165053300; 7165053437 | | ARCPS@BUREAUVERITAS.COM; MARIE.DAMON@BUREAUVERITAS.COM |
| 35 | | BM KRAMER AND COMPANY INC | $2,539.76 | Disputed | 69 S 20TH ST | | | PITTSBURGH | PA | 15203 | | 4124813000 X430 | | JDUCH@BMKRAMER.COM |
| 36 | | NELSON & STREETER CONSTRUCTION CO INC | $72,819.00 | Disputed | PO BOX 184 | | | PINE CITY | NY | 14871 | | 6077321008 | | HSTREETER@STNY.RR.COM |
| 37 | | WARD GREENBERG HELLER & REIDY LLP | $9,046.30 | Disputed | ATTN DENNIS R CALLAHAN | 1835 MARKET ST, STE 650 | | PHILADELPHIA | PA | 19103 | | 2158361100 | | DCALLAHAN@WARDGREENBERG.COM |
| 38 | | INC | $17,719.05 | Disputed | ATTN MICHELE NICOSIA | 2300 S CALHOUN RD | | NEW BERLIN | WI | 53151 | | 2627876113 | | COM |
| 40 | | MANUFACTURING AUTOMATION SYSTEMS LLC | $500.00 | Disputed | ATTN MATTA RIZKALLAH | 9183 PRESHO SCHOOL RD | | PAINTED POST | NY | 14870 | | 6073689097 | | ACCOUNTING@MFGAUTOSYS.COM |
| 41 | 715009900 | MCMASTER-CARR | $88,329.42 | Disputed | 200 AURORA INDUSTRIAL PKWY | | | AURORA | OH | 44202 | | 3309955500 | | CLE.SALES@MCMASTER.COM |
| 42 | | ADP INC | $0.00 | Disputed | 1851 N RESLER | | | EL PASO | TX | 79912 | | | | |
| 44 | | T MOBILE/T-MOBILE USA INC | $66.69 | Disputed | BY AMERICAN INFOSOURCE AS AGENT | 4515 N SANTA FE AVE | | OKLAHOMA CITY | OK | 73118 | | 8778938820 | | POC_AIS@AISINFO.COM |
| 46 | 715011060 | NIATECH COMPANY INC | $105.10 | Disputed | 209 SCHOELLES RD | | | AMHERST | NY | 14228 | | 7162048250 | | CONTROLS@NIATECHCO.COM |
| 47 | | HFW INDUSTRIES INCORPORATED | $50,640.00 | Disputed | 196 PHILADELPHIA ST | | | BUFFALO | NY | 14207 | | 7168753380 | | TANDREWS@HFWINDUSTRIES.COM |
| 48 | 715005990 | EXPONENT INC | $53,814.71 | Disputed | ATTN GINA FLYNN | 149 COMMONWEALTH DR | | MENLO PARK | CA | 94025 | | 6506887380 | | GFLYNN@EXPONENT.COM |
| 50 | | COUCH WHITE LLP | $5,257.60 | Disputed | C/O ROBERT M LOUGHNEY, ESQ | 540 BROADWAY | PO BOX 22222 | ALBANY | NY | 12201 | | | | |
| 51 | | CARBAUGH TOOL COMPANY INC | $0.00 | Disputed | 126 PHILO RD W | | | ELMIRA | NY | 14903 | | 6077393293 | | ACARBAUGH8244@GMAIL.COM |
| 52 | | WASTE MANAGEMENT OF PENNSYLVANIA INC | $0.00 | Disputed | PO BOX 43470 | | | PHOENIX | AZ | 85080 | | 8005939529 | | |
| 54 | 715014040 | ROETZEL & ANDRESS LPA | $10,681.02 | Disputed | ATTN BRUCE R SCHRADER II, ESQ | 222 S MAIN ST | | AKRON | OH | 44308 | | 3308496604 | | BSCHRADER@RALAW.COM |
| 55 | | CHEMSTATION INTERNATIONAL INC | $3,692.43 | Disputed | 3400 ENCRETE LN | | | DAYTON | OH | 45439 | | 9372948265 X1186 | | STRATEGICINVOICING@CHEMSTATION.COM |
| 59 | | CINTAS CORPORATION | $4,553.89 | Disputed | ATTN MICHELLE ZANGHI | 11980 GENESEE ST | | ALDEN | NY | 14004 | | 7169023566 | | ZANGHIM@CINTAS.COM |
| 60 | | INDUSTRIAL BATTERY REPAIR | $19,812.12 | Disputed | 11006 DAVENRICH ST | | | SANTA FE SPRINGS | CA | 90670 | | 5628794151 | | KOKIS82@AOL.COM |
| 62 | | DEPARTMENT OF THE TREASURY - IRS | $3,000.00 | Disputed | PO BOX 7346 | | | PHILADELPHIA | PA | 19101-7346 | | 8009730424 | | |
| 63 | | BALTON SIGN COMPANY | $14,999.90 | Disputed | 7801 MORIARTY RD | | | CORDOVA | TN | 38018 | | 9014527371 | | KRISTEN@BALTONSIGNS.COM |
| 64 | | OLD DOMINION FREIGHT LINE INC | $33,760.41 | Disputed | ATTN RUSTY FRAZIER, ASSET REC ANALYST | 500 OLD DOMINION WAY | | THOMASVILLE | NC | 27360 | | 3368221732 | | RUSTY.FRAZIER@ODFL.COM |
| 65 | | DXP ENTERPRISES INC | $137,651.00 | Disputed | C/O HICKS LAW GROUP PLLC | 325 N ST PAUL ST, STE 4400 | | DALLAS | TX | 75201 | | 4696195721 | | KWILEY@HICKSLAWGROUP.COM |
| 66 | | CHEMSEARCH FE | $436.50 | Disputed | ATTN CREDIT DEPT | 2727 CHEMSEARCH BLVD | | IRVING | TX | 75062 | | 8005279919 X0541 | | CAC.CREDIT@NCH.COM |
| 67 | | DIVAL SAFETY EQUIPMENT | $33,772.67 | Disputed | 1721 NIAGARA ST | | | BUFFALO | NY | 14207 | | 7168749060 | | APEMBLETON@DIVALSAFETY.COM |
| 68 | | HUNTER FAN COMPANY | $60,136.00 | Disputed | 7130 GOODLETT FARMS PKWY | | | MEMPHIS | TN | 38016 | | 9012482220 | | PMCLAIN@HUNTERFAN.COM |
| 70 | | TEAM WASTE MEMPHIS LLC | $1,652.23 | Disputed | PO BOX 1746 | | | COLLIERVILLE | TN | 38027 | | 9013003263 | | AYLA.GOKTURK@WASTECONNECTIONS.COM |
| 75 | | ILLINOIS DEPT OF EMPLOYMENT SECURITY | $533.61 | Disputed | 33 S STATE ST, 10TH FL | | | CHICAGO | IL | 60603 | | 3127935478 | | WILLIAM.HESLUP@ILLINOIS.GOV |
| 76 | | OHIO RACK INC | $13,876.50 | Disputed | C/O JAMES M WILLIAMS, ESQ | PO BOX 36963 | | CANTON | OH | 44735-6963 | | 3304970700 | | JWILLIAMS@KWGD.COM |
| 77 | 715010950 | NM TAXATION & REVENUE DEPARTMENT | $583.39 | Disputed | PO BOX 8575 | | | ALBUQUERQUE | NM | 87198-8575 | | 5054771026 | | LISA.ELA@TAX.NM.GOV |
| 78 | | OCEANWING SERVICE LIMITED | $31,088.22 | Disputed | ATTN KIM LEWINSKI | 1415 LOUISIANA ST, 36TH FL | | HOUSTON | TX | 77002 | | 7132209197 | | KLEWINSKI@HIRSCHWEST.COM |
| 79 | | SEAL & DESIGN INC | $1,637.89 | Disputed | 4015 CASILIO PKWY | | | CLARENCE | NY | 14031 | | 7167593343 | | KPRINCIPE@SEALANDDESIGN.COM |
| 80 | 715016870 | TOWN & COUNTRY LANDSCAPING | $14,919.99 | Disputed | PO BOX 474 | | | GREENCASTLE | PA | 17225 | | 7178306322 | | |
| 81 | | PITNEY BOWES INC | $2,015.99 | Disputed | 27 WATERVIEW DR, 3RD FL | | | SHELTON | CT | 06484 | | 2037945558 | | GRISSELLE.BETANCOURT@PB.COM |
| 82 | 715017040 | TUFF TEMP CORP | $32,180.28 | Disputed | 3788 STERNER MILL RD | | | QUAKERTOWN | PA | 18951 | | 2152617067 | | INFO@TUFFTEMP.COM |
| 83 | | SIAK TRANSFERS LIMITED | $0.00 | Disputed | LASCELLES STREET TUNSTALL | | | STOKE ON TRENT ST6 5DB | | | UNITED KINGDOM | 441782839464 | | ANDREW@SIAKTRANSFERS.COM |
| 84 | 715005000 | DEL MARTIN INC | $5,473.60 | Disputed | 21 SARAH SUSAN LN | | | GREENCASTLE | PA | 17225 | | 7175975751 | | DEL@DELPRINT.COM |
| 85 | 715002780 | CHAMBERSBURG WASTE PAPER CO INC | $13,990.00 | Disputed | ATTN DAMIAN HAUGH | 2047 LOOP RD | | CHAMBERSBURG | PA | 17202 | | 7172512231 | | DAMIANH@CUPRECYCLE.COM |
| 86 | | ERIEZ MANUFACTURING | $8,812.66 | Disputed | 2200 ASBURY RD | | | ERIE | PA | 16506-1402 | | 8148356342 | | GROSS@ERIEZ.COM |
| 87 | | ROMANISH, KIMBERLY & ROBERT | $225,000.00 | Disputed | C/O NAKLES AND NAKLES | ATTN RYAN P CRIBBS, ESQ | 1714 LINCOLN AVE | LATROBE | PA | 15650 | | 7245391291 | | PCRIBBS@NAKLES.COM |
| 89 | | TENNESSEE VALLEY AUTHORITY | $128,200.00 | Disputed | ATTN CORP CREDIT WT4C | 400 W SUMMIT HILL DR | | KNOXVILLE | TN | 37902 | | 8653606599; 5088646073 | | CORPORATECREDIT@TVA.GOV; VDYGERT@TVA.GOV |
| 90 | 715017910 | VI-CAS MFG CO INC | $474.23 | Disputed | 8407 MONROE AVE | | | CINCINNATI | OH | 45236 | | 5137917741 | | PI@VI-CAS.COM |
| 91 | | MOTION INDUSTRIES | $66,482.08 | Disputed | 1605 ALTON RD | | | IRONDALE | AL | 35210 | | | | |
| 93 | 715002540 | ANTRIM MACHINE CO | $6,025.00 | Disputed | D/B/A CASTLE MACHINE COMPANY | PO BOX 187 | 5865 BULLITT RD | GREENCASTLE | PA | 17225 | | 7173693184 | | JERIKA@CASTLEMACHINECOMPANY.COM |
| 94 | 715017340 | UNITED DAIRY MACHINERY CORPORATION | $19,924.38 | Disputed | 301 MEYER RD | | | BUFFALO | NY | 14224 | | 7166740500 | | MCICH@UDMC.BIZ |
| 95 | 715006210 | FICS INCORPORATED | $440.00 | Disputed | 25 COMMUNITY DR | | | ADDISON | NY | 14801 | | 6073594474 | | BDAVIDSON@FICS-SOLUTION.COM; BDAVIDSON@FICS-SOLUTIONS.COM |
| 96 | 715008460 | JOHNSON EQUIPMENT COMPANY | $1,503.00 | Disputed | PO BOX 802009 | | | DALLAS | TX | 75380 | | 9726656053 | | JBURRACE@JEQUIP.COM |
| 98 | | GRAPEK COMPANY | $2,483.77 | Disputed | C/O GRAPEK BATES | 318 ELM ST | | WESTFIELD | NJ | 07090 | | 8006384410 | | PAUL@GRAPEKBATES.COM |
| 99 | | CORNING NATURAL GAS CORPORATION | $22,036.00 | Disputed | 330 W WILLIAM ST | | | CORNING | NY | 14830 | | 4016327837 | | MGERMAN@CORNINGGAS.COM |
| 100 | 715012660 | PMH MATERIAL HANDLING | $5,975.22 | Disputed | PO BOX 40 | | | CENTRAL CITY | PA | 15926 | | 8147544140 | | KFARBER0711@GMAIL.COM |
| 101 | | ENGINEERED MATERIALS TECHNOLOGY INC | $16,141.50 | Disputed | ATTN CHRIS HUNT | 7447 19 MILE RD | | STERLING HEIGHTS | MI | 48314 | | 5863236000 | | CHUNT@EMTECHINC.NET |
| 102 | 715017610 | US TRANSPORTTION SERVICES | $26,950.10 | Disputed | 205 PENNBRIAR DR | | | ERIE | PA | 16509-6650 | | 8148249949 | | DMORAN@USBULKTRANSPORT.COM |
| 103 | 715001210 | APPLIED AUTOMATION CONTROLS INC | $798.60 | Disputed | 1240 WOLF ST | | | SYRACUSE | NY | 13208 | | 3154535670 | | DSWENTON@APPLIEDAUTOMATION.COM |
| 104 | 715001980 | BEST SECURITY & AUTOMATION LLC | $5,968.25 | Disputed | 1250 SCHWEIZER RD | | | HORSEHEADS | NY | 14845 | | 6078737062; 6077960149 | | FINANCE@WARDDIESEL.COM |
| 105 | 715010760 | MULTI MEDIA SERVICES | $3,501.55 | Disputed | ATTN ROBIN SAVARD | 11136 RIVER RD | | CORNING | NY | 14830 | | 6079363186 X2 | | ROBINS@MMSNY.COM |
| 106 | 715014790 | SGS NORTH AMERICA INC | $856.54 | Disputed | ATTN ELISA LOPEZ | 291 FAIRFIELD AVE | | FAIRFIELD | NJ | 07004 | | 9734871245 | | CPAR.FAIRFIELD@SGS.COM |
| 107 | 715013030 | PROCHEMTECH INTERNATIONAL INC | $9,928.00 | Disputed | ATTN TIMOTHY KEISTER | 51 PROCHEMTECH DR | | BROCKWAY | PA | 15824 | | 8142650959 | | TEK@PROCHEMTECH.COM |
| 108 | 715014870 | SHERWIN WILLIAMS COMPANY, THE | $1,138.38 | Disputed | 2000 GEORGETOWNE DR, STE 400 | | | SEWICKLEY | PA | 15143 | | 4124458452 | | |
| 109 | 715007620 | HUDDLESTON MOLD & TOOL LLC | $1,675.00 | Disputed | 155 BAILS RD | | | RIPLEY | MS | 38663 | | 6628828505 | | HMT_LLC@YAHOO.COM |
| 110 | 715003330, 715003340, 715003350 | COLORADO DEPARTMENT OF REVENUE | $2,348.00 | Disputed | ATTN BANKRUPTCY DEPARTMENT, RM 104 | 1881 PIERCE ST | | LAKEWOOD | CO | 80214 | | 3038663711 | | DOR_TAC_BANKRUPTCY@STATE.CO.US |
| 111 | 715008360 | JOHN MILLS ELECTRIC INC | $14,680.00 | Disputed | 1836 GRAND CENTRAL AVE | | | ELMIRA HEIGHTS | NY | 14903 | | 6077344111 | | GDENMARK@JOHNMILLSELECTRIC.COM |
| 112 | 715004730 | CURTIS BROKERAGE SERVICES INC | $5,829.00 | Disputed | 1390 WARRENTON RD | | | FREDERICKSBURG | VA | 22406 | | 5407524454 | | KAREN@CENTERLINETRUCKING.COM |
| 113 | 715007390 | HILL SERVICES INC | $2,071.00 | Disputed | 4940 COVINGTON WAY | | | MEMPHIS | TN | 38128 | | 9013887500 | | AR@HILLISHERE.COM |
| 114 | | CHROMALOX INC | $536.84 | Disputed | 103 GAMMA DR | | | PITTSBURGH | PA | 15238 | | | | |
| 115 | 715011480 | OLDE TOWNE JEWELERS | $1,709.00 | Disputed | PO BOX 579 | | | WALKERSVILLE | MD | 21793 | | 3018452200 | | WSTARKEY666@AOL.COM |
| 116 | | KIM, PATRICK I | $50,000.00 | Disputed | 3531 BREITWIESER LN | | | NAPERVILLE | IL | 60564 | | 6508925934 | | PIKIM83@GMAIL.COM |
| 117 | 715009760 | MARUKA USA INC | $7,415.91 | Disputed | 1210 NE DOUGLAS ST | | | LEES SUMMIT | MO | 64086 | | 8165241811 | 8166075455 | LEDINGTON@MARUKAUSA.COM |
| 120 | 715000090 | NEXGEN INDUSTRIAL SERVICES | $0.00 | Disputed | 322 MEADOW RUN RD | | | MOUNT MORRIS | PA | 15349 | | 7243242140 | | BMOCK@NEXGENINDUSTRIAL.COM |
| 121 | 715007550 | HRANEC SHEET METAL INC | $275.00 | Disputed | 763 RTE 21 | | | UNIONTOWN | PA | 15401 | | 7244372211 | | AMANDA@HRANEC.COM |
| 122 | 715006560 | FRANK M GODLA MECHANICAL INC | $0.00 | Disputed | PO BOX 168 | 402 INDEPENDENCE ST | | PERRYOPOLIS | PA | 15473 | | 4129798373 | | FMGINC5@GMAIL.COM |
| 123 | | FRANK M GODLA MECHANICAL INC | $0.00 | Disputed | PO BOX 168 | 402 INDEPENDENCE ST | | PERRYOPOLIS | PA | 15473 | | 4129798373 | | FMGINC5@GMAIL.COM |
| 124 | 715017920 | VIK-KEL CORP | $763.20 | Disputed | 4 MT THOR RD | | | GREENSBURG | PA | 15601 | | 7245239736 | | VIKKELCORP3@AOL.COM |



CONFIDENTIAL CITADEL_0000165

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 125 | 715012430 | PENNZOIL-QUAKER STATE COMPANY | $12,906.30 | Disputed | D/B/A SOPUS PRODUCTS | C/O SHELL USA INC; ATTN BK & CREDIT | 150 N DAIRY ASHFORD RD, BLDG F | HOUSTON | TX | 77079 | | 8323372000 | | BANKRUPTCY-NOTICES@SHELL.COM |
| 126 | | COMMONWEALTH OF KENTUCKY DEPT OF REV | $270.00 | Disputed | PO BOX 5222 | | | FRANKFORT | KY | 40602 | | 5025644921 X4416 | | JENNIFERL.HOWARD@KY.GOV |
| 127 | 715014980 | SIDLEY AUSTIN LLP | $7,535.00 | Disputed | ONE S DEARBORN | | | CHICAGO | IL | 60603 | | 3128537000 | | RSHERMAN@SIDLEY.COM |
| 130 | 715008210 | JACKSON-HIRSH INC | $449.48 | Disputed | 700 ANTHONY TRL | | | NORTHBROOK | IL | 60062-2542 | | 8472724193 | | ACCOUNTING@JACKSON-HIRSH.COM |
| 133 | | FRANK M GODLA MECHANICAL INC | $0.00 | Disputed | PO BOX 168 | 402 INDEPENDENCE ST | | PERRYOPOLIS | PA | 15473 | | 4129798373 | | FMGINC5@GMAIL.COM |
| 134 | 715009700 | MARK-10 CORPORATION | $1,334.88 | Disputed | 11 DIXON AVE | | | COPIAGUE | NY | 11726 | | 6318429200 | | ACCOUNTING@MARK-10.COM; DD@MARK-10.COM |
| 135 | | SAINT ISLAND INTL PATENT AND LAW OFFICES | $5,624.00 | Disputed | ATTN YU-JIUNN KAO | 7TH FLOOR NO 248 SECTION 3 | NANKING EAST ROAD | TAIPEI 105403 | | | TAIWAN | 886227751823 | | SIIPLO@MAIL.SAINT-ISLAND.COM.TW |
| 136 | | SAINT ISLAND INTL PATENT AND LAW OFFICES | $5,624.00 | Disputed | ATTN YU-JIUNN KAO | 7TH FLOOR NO 248 SECTION 3 | NANKING EAST ROAD | TAIPEI 105403 | | | TAIWAN | 886227751823 | | SIIPLO@MAIL.SAINT-ISLAND.COM.TW |
| 137 | | THOMPSON & JOHNSON EQUIPMENT CO INC | $93,849.80 | Disputed | 6926 FLY RD | | | EAST SYRACUSE | NY | 13057 | | 3154134115 | | MVAUGHAN@THOMPSONANDJOHNSON.COM |
| 138 | | THOMPSON & JOHNSON EQUIPMENT CO INC | $115,389.70 | Disputed | 6926 FLY RD | | | EAST SYRACUSE | NY | 13057 | | 3154134115 | | MVAUGHAN@THOMPSONANDJOHNSON.COM |
| 139 | 715001580 | AUTOMATECH | $651.93 | Disputed | 138 INDUSTRIAL PARK RD | | | PLYMOUTH | MA | 02360 | | 7742836001 | | LAUREN@AUTOMATECH.COM |
| 140 | 715002440 | CANARY LABS INC | $1,990.00 | Disputed | 195 BEAN HILL RD | | | MARTINSBURG | PA | 16662 | | 8147933770 | | DHOOVER@CANARYLABS.COM |
| 141 | | COMPROS INC | $6,493.11 | Disputed | 400 HIGHLAND AVE | | | ALTOONA | PA | 16602 | | 8149468100 | | KASSIEK@COMPROSINC.COM |
| 142 | | CALIFORNIA DEPT OF TAX AND FEE ADMIN | $27,399.18 | Disputed | PO BOX 942879 | | | SACRAMENTO | CA | 94279-0055 | | 9163095650 | | LEGALSOB@CDTFA.CA.GOV |
| 143 | 715004850 | DATACOMM SERVICES CORPORATION | $4,574.44 | Disputed | 4739 S MENDENHALL RD | | | MEMPHIS | TN | 38141 | | 9017958200 | | CRYSTAL.MURPHY@DSCDATACOMM.COM |
| 147 | 715005760 | ELIJAH LTD | $553,972.72 | Disputed | C/O SPENCER FANE LLP | ATTN ANDREA CHASE | 1000 WALNUT ST, STE 1400 | KANSAS CITY | MO | 64106 | | 8162928279 | 7033719486 | ACHASE@SPENCERFANE.COM |
| 148 | | EMPLOYMENT DEVELOPMENT DEPARTMENT | $109.30 | Disputed | ATTN BANKRUPTCY GROUP MIC 92E | PO BOX 826880 | | SACRAMENTO | CA | 94280-0001 | | 9164642888 | | CDBANKRUPTCYGROUP.TAX@EDD.CA.GOV |
| 149 | | ARIZONA DEPARTMENT OF REVENUE | $14,062.97 | Disputed | ATTN OFFICE OF THE AZ ATTY GEN - BCE | 2005 N CENTRAL AVE, STE 100 | | PHOENIX | AZ | 85004 | | 6025428811 | 6027167806 | BANKRUPTCYUNIT@AZAG.GOV |
| 150 | | QUARTZ CORP USA, THE | $3,412.86 | Disputed | PO BOX 309 | | | SPRUCE PINE | NC | 28777 | | 8287658966 | | ACCOUNTS.RECEIVABLE@THEQUARTZCORP.COM |
| 151 | 715002140 | BOOMERANG COMMERCE INC | $107,899.78 | Disputed | D/B/A COMMERCE IQ | 2100 GENG RD, STE 210 | | PALO ALTO | CA | 94303 | | 6502966796 | | AR@COMMERCEIQ.AI |
| 152 | | CANADA REVENUE AGENCY | $1.00 | Disputed | 1 FRONT ST WEST | | | TORONTO | ON | M5J 2X6 | CANADA | 9057067698 | | KAY.SINGH@CRA-ARC.GC.CA |
| 153 | | ARIZONA DEPARTMENT OF REVENUE | $17,545.70 | Disputed | ATTN OFFICE OF THE AZ ATTY GEN - BCE | 2005 N CENTRAL AVE, STE 100 | | PHOENIX | AZ | 85004 | | 6025428811 | 6027167806 | BANKRUPTCYUNIT@AZAG.GOV |
| 154 | | NM TAXATION & REVENUE DEPARTMENT | $303.39 | Disputed | PO BOX 8575 | | | ALBUQUERQUE | NM | 87198-8575 | | 5054771026 | | LISA.ELA@TAX.NM.GOV |
| 158 | | QUARTZ CORP USA, THE | $3,412.86 | Disputed | PO BOX 309 | | | SPRUCE PINE | NC | 28777 | | 8287658966 | | TRAVIS.CARTER@THEQUARTZCORP.COM |
| 159 | | ASSOCIATED SALES & BAG COMPANY | $227.94 | Disputed | 400 W BODEN ST | | | MILWAUKEE | WI | 53207 | | 8009266100 | 4149266100 | CRDLIST@ASSOCIATEDBAG.COM |
| 160 | | PENNSYLVANIA CONTROLS COMPANY | $5,284.46 | Disputed | 115 CORPORATION DR | | | ALIQUIPPA | PA | 15001 | | 7247463620 | | AR@4PACCO.COM |
| 161 | | WILLIAMS, KRISSY | $0.00 | Disputed | C/O FELDMAN SHEPHERD | ATTN BETHANY NIKITENKO | 1845 WALNUT ST, 21ST FL | PHILADELPHIA | PA | 19103 | | 2155678300 | | BNIKITENKO@FELDMANSHEPHERD.COM |
| 162 | 715006450 | FORT DEARBORN COMPANY | $25,525.25 | Disputed | C/O MULTI-COLOR CORPORATION | 6111 N RIVER RD, FL 8 | | ROSEMONT | IL | 60018 | | 6304708496 | | LEGAL@MCCLABEL.COM |
| 163 | | ANDUJAR, GREGORY | $30,000.00 | Disputed | 128 MECKES LN | | | SAYLORSBURG | PA | 18353 | | 9084474079 | 2153482088 | GOOGIEGAC@HOTMAIL.COM |
| 164 | | ANDUJAR, DINA | $600,000.00 | Disputed | 128 MECKES LN | | | SAYLORSBURG | PA | 18353 | | 9084474079 | 2153482088 | GOOGIEGAC@HOTMAIL.COM |
| 165 | | KRAUSS-MAFFEI CORPORATION | $14,441.04 | Disputed | 7095 INDUSTRIAL RD | | | FLORENCE | KY | 41042 | | 8594448847 | | ROBERT.GEARDING@KRAUSSMAFFEI.COM |
| 166 | | FRANCHISE TAX BOARD | $139,258.69 | Disputed | ATTN BANKRUPTCY SECTION MS A340 | PO BOX 2952 | | SACRAMENTO | CA | 95812-2952 | | 9168454750 | | |
| 167 | | FRANCHISE TAX BOARD | $379.00 | Disputed | ATTN BANKRUPTCY SECTION MS A340 | PO BOX 2952 | | SACRAMENTO | CA | 95812-2952 | | 9168454750 | | |
| 170 | | ILLINOIS DEPT OF EMPLOYMENT SECURITY | $0.00 | Disputed | ATTN EMPLOYER BANKRUPTCY UNIT | 33 S STATE ST, 10TH FL | | CHICAGO | IL | 60603-2802 | | 3127930922 | | |
| 172 | | WISCONSIN DEPARTMENT OF REVENUE | $78,250.25 | Disputed | ATTN SPECIAL PROCUDURES UNIT | PO BOX 8901 | | MADISON | WI | 53708-8901 | | 6082670833 | 6082640322 | DORBANKRUPTCYSPECIALIST@WISCONSIN.GOV |
| 177 | | ONE RING NETWORKS INC | $771.57 | Disputed | PO BOX 1360 | | | ATHENS | TX | 75751 | | 4043039900 | | ACCOUNTING@ONERINGNETWORKS.COM |
| 179 | | WINSUPPLY ELMIRA | $4,246.83 | Disputed | C/O WCMS - CREDIT OFFICE | 1421 CREIGHTON AVE | | DAYTON | OH | 45420 | | 4802414611 | 9375310207 | RLPIERCE@WINSUPPLYINC.COM |
| 181 | | ANENBERG, AMBER | $0.00 | Disputed | C/O MEYERS & FLOWERS LLC | 3 N SECOND ST, STE 300 | | SAINT CHARLES | IL | 60174 | | 6302326333 | | FVC@MEYERS-FLOWERS.COM |
| 182 | | BERRIOS, SETH | $0.00 | Disputed | C/O MEYERS & FLOWERS LLC | 3 N SECOND ST, STE 300 | | SAINT CHARLES | IL | 60174 | | 6302326333 | | FVC@MEYERS-FLOWERS.COM |
| 183 | | LEE, UNIQUE | $0.00 | Disputed | C/O MEYERS & FLOWERS LLC | 3 N SECOND ST, STE 300 | | SAINT CHARLES | IL | 60174 | | 6302326333 | | FVC@MEYERS-FLOWERS.COM |
| 184 | | PEREZ, KALEIGH | $0.00 | Disputed | C/O MEYERS & FLOWERS LLC | 3 N SECOND ST, STE 300 | | SAINT CHARLES | IL | 60174 | | 6302326333 | | FVC@MEYERS-FLOWERS.COM |
| 185 | | SPENCER, MAXINE | $0.00 | Disputed | C/O MEYERS & FLOWERS LLC | 3 N SECOND ST, STE 300 | | SAINT CHARLES | IL | 60174 | | 6302326333 | | FVC@MEYERS-FLOWERS.COM |
| 186 | | OKLAHOMA TAX COMMISSION | $150.00 | Disputed | C/O GENERAL COUNSEL'S OFFICE | PO BOX 269056 | | OKLAHOMA CITY | OK | 73126 | | 4055229460 | | BANKRUPTCY@TAX.OK.GOV |
| 10000 | | UNITED STATES SALES CORPORATION | $28,060.68 | Disputed | 2901 S LYNNHAVEN RD, STE 425 | | | VIRGINIA BEACH | VA | 23452 | | 7573404000 | 7573404000 X307 | DMARTINEZ@USSALESCORP.COM |
| 10001 | 715006020 | EYE EATERS LLC | $5,000.00 | Disputed | 1725 W NORTH AVE, UNIT 405 | | | CHICAGO | IL | 60622 | | 8472801034 | | JENNA@EYEEATERS.COM |
| 10002 | | GRAPHICS UNIVERSAL INCORPORATED | $332,457.92 | Disputed | PO BOX 610 | | | GREENCASTLE | PA | 17225 | | 7175973108 | | GARON@GRAPHICSUNIVERSAL.COM |
| 10004 | | RALPH W EARL COMPANY | $101,968.38 | Disputed | 5930 E MOLLOY RD | | | SYRACUSE | NY | 13211 | | 3154544431 | | BGERBIG@RWEARL.COM |
| 10005 | | BC MATERIAL HANDLING INC | $13,137.68 | Disputed | 9276 MARSHALL RD | | | CRANBERRY TOWNSHIP | PA | 16066 | | 7248147910 | | CHUCK.ARMEN@BCMATERIALHANDLINGINC.COM |
| 10006 | | SIDE-KICK INTERNATIONAL INC | $52,126.21 | Disputed | 1157 PHOENIXVILLE PIKE, STE 108 | | | WEST CHESTER | PA | 19380 | | 6109188666 | | STAN@SIDEKICKINTL.COM |
| 10007 | | WORLDWIDE TV PRODUCTS LLC | $26,098.94 | Disputed | 13100 56TH CT, STE 706 | | | CLEARWATER | FL | 33760 | | 7272999045 | | GUS@WWTVP.COM |
| 10008 | | FINGER LAKES ENVIRO-TECH LLC | $159,480.43 | Disputed | 691 ADDISON RD | | | PAINTED POST | NY | 14870 | | 6073835500 | 6073681970 | CASELH@TRENVIRO.COM |
| 10010 | | CORVUS OF NW ARKANSAS | $588.58 | Disputed | 2102 S 54TH ST, STE 2 | | | ROGERS | AR | 72758 | | 4798451270 | | ACAMBOU@CORVUSJANITORIAL.COM |
| 10011 | | AL'S LEASING INC | $30,588.20 | Disputed | 156 PRESCOTT AVE | | | ELMIRA HEIGHTS | NY | 14903 | | 6077339153 | | ALSLEASING@ALS156.COM |
| 10012 | | TOPIM INTELLIGENT MANUFACTURING | $1,092,091.00 | Disputed | TOPIM INTELLIGENT MANUFACTURING INDU- | STRIAL PARK, BAIMA AVENUE, SHUANGQING | DISTRICT, SHAOYANG CITY, HUNAN PROVINCE | SHAOYANG 422000 | | | CHINA | 8615602833115 | | ZHOUYUANQING@TOPIM.NET |
| 10013 | | TOPIM INTELLIGENT MANUFACTURING | $1,092,091.00 | Disputed | TOPIM INTELLIGENT MANUFACTURING INDU- | STRIAL PARK, BAIMA AVENUE, SHUANGQING | DISTRICT, SHAOYANG CITY, HUNAN PROVINCE | SHAOYANG 422000 | | | CHINA | 8615602833115 | | ZHOUYUANQING@TOPIM.NET |
| 10015 | | NINGBO LISI IMPORT & EXPORT CO LTD | $13,358.70 | Disputed | NO. 518 CHENGXIN ROAD, | YINZHOU DISTRICT | | NINGBO 315000 | | | CHINA | | | |
| 10017 | | GUANGDONG ENAITER ELECTRICAL APPLIANCE | $93,601.80 | Disputed | NO.28, DONGCHENG ROAD, SUICHENG VILLAGE | DONGFENG TOWN | | ZHONGSHAN CITY, GD 528425 | | | CHINA | 008676086912671 | | TOM@ENAITER.COM |
| 10018 | | SWAT ENTERTAINMENT | $10,800.00 | Disputed | 2181 CAMINITO NORINA, UNIT 133 | | | CHULA VISTA | CA | 91915 | | 6197462390 | | SWATVPRODUCER@GMAIL.COM |
| 10019 | | SWATV ENTERTAINMENT | $10,800.00 | Disputed | 2181 CAMINITO NORINA, UNIT 133 | | | CHULA VISTA | CA | 91915 | | 6197462390 | | SWATVPRODUCER@GMAIL.COM |
| 10020 | | NINGBO LISI IMPORT & EXPORT CO LTD | $13,358.70 | Disputed | NO. 518 CHENGXIN ROAD, | YINZHOU DISTRICT | | NINGBO 315000 | | | CHINA | | | |
| 10023 | 715006820 | GEORGIA SOFTWORKS | $2,129.50 | Disputed | PO BOX 729 | | | DAWSONVILLE | GA | 30534 | | 7062651018 | | DIANE@GEORGIASOFTWORKS.COM |
| 10024 | 715016810 | TMF PLASTIC SOLUTIONS LLC | $520,700.21 | Disputed | 12127B GALENA RD | | | PLANO | IL | 60545 | | 6305527575 | | BEN@TMFPLASTICS.COM |
| 10025 | | STUCK ENTERPRISES INC | $11,559.18 | Disputed | 1115 E HIGH ST | | | WAYNESBURG | PA | 15370 | | 7246273757 | | EGRAY@OAKLANDOIL.COM |
| 10026 | | ZHENGJIANG SUPOR ELECTRICAL APPLIANCES | $27,403.74 | Disputed | 501 BIN AN ROAD | | | HANGZHOU 310052 | | | CHINA | 8615088756273 | | SKYU2@SUPOR.COM |
| 10028 | | AUTUMN TRANSPORT INC | $13,143.25 | Disputed | 6550 COURTLY RD | | | WOODBURY | MN | 55125 | | 6512940130 | | CRHENDRIX@AUTUMNTRANSPORT.COM |
| 10029 | 715003900 | CORNING BUILDING CO INC, THE | $14,339.40 | Disputed | 346 PARK AVE | | | CORNING | NY | 14830 | | 6079369921 X200 | | MSMITH@CORNINGBUILDING.COM |
| 10030 | | TFORCE FREIGHT | $36,097.00 | Disputed | 234040 WRANGLER RD | | | CALGARY | AB | T1X 0K2 | CANADA | 4037762556 X508 | | BANKRUPTCY@AR.TFORCEFREIGHT.COM |
| 10032 | | PARACHUTING PENGUINS | $3,103.95 | Disputed | 1201 S WALTON BLVD, STE 101 | | | BENTONVILLE | AR | 72712 | | 4798450808 | | PROUTON@NWAPENGUINS.COM |
| 10034 | 715018870 | YANGJIANG FUTONG INDUSTRIES CO LTD | $67,439.61 | Disputed | NO3, JINTIAN ROAD, NAHUO INDUSTRIAL ZONE | YANGDONG, YANGJIANG, GUANGDONG | | YANGJIANG, GD 529932 | | | CHINA | 8606628865329 | | SALES02@FT-KNIFE.COM |
| 10037 | | YANGJIANG HALBERT INDUSTRIAL COMPANY LTD | $258,770.23 | Disputed | NO.18,YUDONG 7TH ROAD,JIANGCHENG | YANGJIANG, GUANGDONG, CN 52950 | | | | | CHINA | 8615119499688 | | HALBERT-07@YDNEW.COM |
| 10038 | | SHANDONG LINUO TECHNICAL GLASS CO LTD | $432,672.00 | Disputed | YU HUANG-MIAO, SHANGHE COUNTY, | JINAN CITY, SHANDONG 251604, CHINA | | JINAN CITY 251600 | | | CHINA | 8613688630615 | 8613361002454 | WANGXY@LINUO-GLASS.COM |
| 10040 | | DLUBAK GLASS CO | $72,933.84 | Disputed | 789 COUNTY HWY 330 | | | UPPER SANDUSKY | OH | 43351 | | 4192090900 | | KSCHUSTER@DLUBAK.COM |
| 10041 | 715001140 | AMES RUBBER CORPORATION | $0.00 | Disputed | 19 AMES BLVD | | | HAMBURG | NJ | 07419 | | 9732093113 | | SARAH.EVERSDYKE@AMESRUBBER.COM |
| 10042 | | UNIVAR SOLUTIONS USA INC | $426.30 | Disputed | ATTN KIRSTEN NITZ | 6000 PARKWOOD PL | | DUBLIN | OH | 43016 | | 6146133921 | | KIRSTEN.NITZ@UNIVARSOLUTIONS.COM |
| 10044 | | 5280 BOND LLC | $10,000.00 | Disputed | 235 S REEVES DR, STE 101 | | | BEVERLY HILLS | CA | 90212 | | 6462759080 | | JORDAN@5280BOND.COM |
| 10047 | | LAST CALL MEDIA INC | $51,178.25 | Disputed | 6 LIBERTY SQ, #401 | | | BOSTON | MA | 02109 | | 8887887177 | | BILLING@LASTCALLMEDIA.COM |
| 10048 | | ZORIN RESOURCES INC | $41,535.00 | Disputed | 18811 FORTROSE GARDEN CT | | | TOMBALL | TX | 77377 | | 8324238856 | | ANDREW.BODUNRIN@ZORININC.COM |
| 10049 | | TOYOTA MATERIAL HANDLING PENNWEST INC | $109,992.54 | Disputed | ATTN LINDSAY FISHER | 168 WESTEC DR | | MOUNT PLEASANT | PA | 15666 | | 7246962350 X127 | 8002215438 X127 | LFISHER@PENNWESTLIFT.COM |
| 10051 | | DIMON AND SONS TRANSPORTATION CORP | $2,042.00 | Disputed | 93 INDUSTRIAL PARK BLVD | | | ELMIRA | NY | 14901 | | 6077342937 | | DEAMES@DIMONANDBACORN.COM |
| 10052 | | DAILY BEAST COMPANY LLC, THE | $20,000.00 | Disputed | 555 W 18TH ST | | | NEW YORK | NY | 10011 | | 5108626329 | | ACCOUNTSRECEIVABLE@IAC.COM |
| 10053 | | ZORIN RESOURCES INC | $41,535.00 | Disputed | 18811 FORTROSE GARDEN CT | | | TOMBALL | TX | 77377 | | 8324238856 | | ANDREW.BODUNRIN@ZORININC.COM |
| 10055 | | N E S CORPORATION | $15,281.43 | Disputed | 3334 E COAST HWY, PMB 317 | | | CORONA DEL MAR | CA | 92625-2328 | | 8003003625 | | CHERYL@NATIONAL-EQUIPMENT.COM |
| 10057 | | FRANK M GODLA MECHANICAL INC | $42,000.00 | Disputed | PO BOX 168 | 402 INDEPENDENCE ST | | PERRYOPOLIS | PA | 15473 | | 4129798373 | | FMGINC5@GMAIL.COM |
| 10059 | | YANGJIANG ANGELE KITCHENWARE CO LTD | $356,087.84 | Disputed | A3 ZONE YINLING SCIENCE & TECHNOLOGY | INDUSTRIAL ZONE | | YANGJIANG, GD 529500 | | | CHINA | 8618128982010 | | JASON@AGLKW.CN |
| 10060 | 715005680 | EDGE TOOL & DESIGN INC | $20,000.00 | Disputed | 112 COMPRESS RD | | | BATESVILLE | MS | 38606 | | 6625780363 | | TERRIE@EDGETOOL.NET |
| 10061 | | ALLEGHENY MACHINE TOOL SYSTEMS INC | $35,340.00 | Disputed | 632 E MCMURRAY RD | | | MCMURRAY | PA | 15317 | | 7249424451 | | ASHLEYB@ALLEGMACH.COM |
| 10064 | 715018890 | YANGJIANG HALBERT INDUSTRIAL COMPANY LTD | $258,770.23 | Disputed | BUILDING A,NO.18,YUDONG 7TH ROAD, | JIANGCHENG DISTRICT, | YANGJIANG, GUANGDONG, CN 529500 | | | | CHINA | 8615119499688 | | HALBERT-07@YDNEW.COM |
| 10065 | | MODERN TRANSPORTATION SERVICES LLC | $22,242.25 | Disputed | 1050 STATION ST | | | CORAOPOLIS | PA | 15108 | | 4124894827 | | ROBERT.BARTOLACCI@MODERNTRANS.COM |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10067 | 715002400 | CAMERON MANUFACTURING & DESIGN INC | $78,363.49 | Disputed | 727 BLOSTEIN BLVD | | | HORSEHEADS | NY | 14845 | | 6077393606 | | JCOPP@CAMFAB.COM |
| 10068 | 715000330 | ACTION MACHINE TOOL REPAIR | $1,932.50 | Disputed | 110 WOLF LN | | | SLIPPERY ROCK | PA | 16057 | | 7247772599 | | BILLGERBER@ACTIONMACHINETOOL.COM |
| 10070 | 715006570 | FRANKLIN BRONZE PLAQUES | $44,076.80 | Disputed | 4201 US 322 W | | | FRANKLIN | PA | 16323 | | 8143467205 X103 | | AUDREY@FRANKLINBRONZEPLAQUES.COM |
| 10072 | | ZHENGJIANG SUPOR ELECTRICAL APPLIANCES | $27,403.74 | Disputed | 501 BIN AN ROAD | | | HANGZHOU 310052 | | | CHINA | 8615088756273 | | SKYU2@SUPOR.COM |
| 10073 | | NINGBO XINGWEI CUTTING-TOOLS TECHNOLOGY | $737,715.66 | Disputed | 2 XINYUAN NO.1 ROAD, XIDIAN, | NINGHAI | | NINGBO 315613 | | | CHINA | 008657459956174 | | FENGJINGWEN@XINGWEICUTTER.COM |
| 10075 | 715001650 | B&G INTERNATIONAL PRODUCTS | $4,523.03 | Disputed | 1095 MORRIS AVE, STE 103B | | | UNION | NJ | 07083 | | | | EMARSTON@BGINTR.COM |
| 10076 | | BUCK GLOBAL LLC | $50,771.00 | Disputed | 11 STANWIX ST, STE 700 | | | PITTSBURGH | PA | 15222 | | 7243093955 | | MICHELLE.RAMSAY@BUCK.COM |
| 10079 | 715011120 | NINGBO XINGWEI CUTTING-TOOLS TECHNOLOGY | $737,715.66 | Disputed | 2 XINYUAN NO.1 ROAD, XIDIAN, | NINGHAI | | NINGBO 315613 | | | CHINA | 008657459956174 | | FENGJINGWEN@XINGWEICUTTER.COM |
| 10080 | | MCKEE STEWART EQUIPMENT CORP | $5,507.26 | Disputed | PO BOX 573 | 110 FIFTH ST | | WEST ELIZABETH | PA | 15088-0573 | | 4123841950 | | LSPERNAK@MCKEESTEWART.COM |
| 10082 | 715000770 | AIR RELIEF HOLDING COMPANY LLC | $6,515.10 | Disputed | ATTN LIZ GODDING | 32 E POWELL RD | | MAYFIELD | KY | 42066 | | 2702470203 | | LIZGODDING@FLOWCONTROLGROUP.COM |
| 10083 | | SHRINK PACKAGING SYSTEMS CORP | $309,030.01 | Disputed | 15 PROGRESS ST | | | EDISON | NJ | 08820 | | 9085464481 | | CDEVANEY@SPS70.COM |
| 10084 | | WORLDWIDE TV PRODUCTS LLC | $26,877.14 | Disputed | 13100 56TH CT, STE 706 | | | CLEARWATER | FL | 33760 | | 7275311010 | | GUS@WWTVP.COM |
| 10085 | | AMERICAN FIBERTECH CORPORATION | $65,218.00 | Disputed | ATNN BEN MILLER | 250 MAIN ST, STE 650 | | LAFAYETTE | IN | 47901 | | 8473443263 | | BMILLER@WEAREIPC.COM |
| 10086 | 715007840 | INCOMAR SERVICES LLC | $1,700.00 | Disputed | 725 ARMSTRONG DR | | | BUFFALO GROVE | IL | 60089 | | 8475414626 | | JOHNW@INCOMARSERVICES.COM |
| 10090 | | POSTLER & JAECKLE CORP | $124,877.08 | Disputed | 615 SOUTH AVE | | | ROCHESTER | NY | 14620 | | 5855467450 | | ERICHJR@POSTLER.COM |
| 10092 | | F M HOWELL & COMPANY | $73,878.72 | Disputed | ATTN WILLIAM MORROW | PO BOX 286 | | ELMIRA | NY | 14902 | | 6077346291 | | WJM@HOWELLPKG.COM |
| 10094 | | ACCESS INFORMATION MANAGEMENT CORP | $12,135.84 | Disputed | ATTN MARGARET APPLIN | 500 UNICORN PARK DR, STE 503 | | WOBURN | MA | 01801 | | 9788822010 | | MARGARET.APPLIN@ACCESSCORP.COM |
| 10095 | | PYROTEK INC | $10,291.90 | Disputed | ATTN CHRISTOPHER SCIORTINO | 705 W 1ST AVE | | SPOKANE | WA | 99201 | | 5093408735 | | CHRSCI@PYROTEK.COM |
| 10096 | | CAB ASSIGNEE OF GUANGDONG XINBAO ELECT | $108,589.00 | Disputed | 4340 FULTON AVE, THIRD FL | | | SHERMAN OAKS | CA | 91423 | | 8189904800 | | WTHOMAS@CABCOLLECTS.COM |
| 10098 | | CAB ASSIGNEE OF GUANGDONG XINBAO ELECT | $108,589.00 | Disputed | 4340 FULTON AVE, THIRD FL | | | SHERMAN OAKS | CA | 91423 | | 8189904800 | | WTHOMAS@CABCOLLECTS.COM |
| 10099 | | PHOENIX BUSINESS INC | $15,120.00 | Disputed | 6021 MIDNIGHT PASS RD, UNIT 3 | | | SARASOTA | FL | 34242 | | 5125574731 | | INVOICES@PHOENIXTEAM.COM |
| 10100 | | KEY POLYMER LLC | $43,375.95 | Disputed | 17 SHEPARD ST | | | LAWRENCE | MA | 01843 | | 9786839411 | | MKALUZNY@KEYPOLYMER.COM |
| 10101 | | ARKANSAS DEPARTMENT OF FINANCE | $206.80 | Disputed | ATTN REVENUE LEGAL COUNSEL | PO BOX 1272 | | LITTLE ROCK | AR | 72203 | | 5016827030 | | MICHELLE.BAKER@DFA.ARKANSAS.GOV |
| 10102 | | CONCUR TECHNOLOGIES INC | $11,871.92 | Disputed | 601 108TH AVE NE, STE 1000 | | | BELLEVUE | WA | 98011 | | 4255905000 | | SAP_BANKRUPTCY_MATTERS@SAP.COM |
| 10103 | 715016840 | CAB ASSIGNEE OF TOPIM INTELLIGENT MFG | $1,092,091.00 | Disputed | 4340 FULTON AVE, THIRD FL | | | SHERMAN OAKS | CA | 91423 | | 8189904800 | | WTHOMAS@CABCOLLECTS.COM |
| 10104 | 715000800 | AJR INDUSTRIAL SERVICES INC | $26,830.00 | Disputed | 421 FALLING CREEK LN | PO BOX 232 | | EADS | TN | 38028 | | 9018671940 | | ROBYN@AJRINDUSTRIAL.NET |
| 10105 | | WONDERLAND FILMS LTD | $15,000.00 | Disputed | PEAR TREE HOUSE | CHERTSEY MEADS | | CHERTSEY KT16 8LN | | | UNITED KINGDOM | 4407540637460 | 07540637460 | URBANICON@MAC.COM |
| 10107 | | SPECTRUM | $3,357.60 | Disputed | 1600 DUBLIN RD | | | COLUMBUS | OH | 43215 | | 6148262572 | | SIOBHAN.MCENEANY@CHARTER.COM |
| 10108 | | EXPERIS US LLC | $52,518.75 | Disputed | F/K/A EXPERIS US INC | 100 MANPOWER PL | | MILWAUKEE | WI | 53212 | | 4149066939 | | DANIEL.HILDEBRANDT@MANPOWERGROUP.COM |
| 10109 | 715006270 | FIRST ADVANTAGE BACKGROUND SERVICES | $14,238.65 | Disputed | ATTN MARCI HOLLAND | 1 CONCOURSE PKWY, STE 200 | | ATLANTA | GA | 30328 | | 6787107381 | | MARCIA.HOLLAND@FADV.COM |
| 10110 | | TOBEYCO MANUFACTURING COMPANY INC | $0.00 | Disputed | 165 CEDAR ST | | | CORNING | NY | 14830 | | 6079622446 | | STEVE@TOBEYCO.COM |
| 10112 | | MISSOURI DEPARTMENT OF REVENUE | $56.33 | Disputed | PO BOX 475 | | | JEFFERSON CITY | MO | 65105 | | 5737515531 | | JAMES.SPATH@DOR.MO.GOV |
| 10113 | | REXEL USA INC | $126,388.48 | Disputed | ATTN SCOTT PATTERSON | 350 MYLES STANDISH BLVD | | TAUNTON | MA | 02780 | | 5087385230 | | SCOTT.PATTERSON@REXELENERGY.COM |
| 10114 | | MISSOURI DEPARTMENT OF REVENUE | $386.37 | Disputed | PO BOX 475 | | | JEFFERSON CITY | MO | 65105 | | 5737515531 | | JAMES.SPATH@DOR.MO.GOV |
| 10115 | | SHO RECRUITING | $23,800.00 | Disputed | 15785 CEDAR RIDGE RD | | | EDEN PRAIRIE | MN | 55347 | | 3202821244 | | SETH@SHORECRUITING.COM |
| 10117 | | COVERS-ALL CANVAS PRODUCTS INC | $1,450.00 | Disputed | 3594 WASHINGTON AVE | | | FINLEYVILLE | PA | 15332 | | 4126536010 | | COVERSALL@AOL.COM |
| 10118 | | PMR INC | $7,200.09 | Disputed | 1615 OGDEN AVE | | | OSWEGO | IL | 60543 | | 8003461037 | | TCONDON@PMRSALES.COM |
| 10119 | | PMR INC | $3,645.27 | Disputed | 1615 OGDEN AVE | | | OSWEGO | IL | 60543 | | 8003461037 | | TCONDON@PMRSALES.COM |
| 10120 | 715009690 | MARGLE MEDIA LLC | $65,000.00 | Disputed | 312 9TH AVE SE, STE B | | | WATERTOWN | SD | 57201 | | 6058782677 | | ACCOUNTING@MARGLEMEDIA.COM |
| 10121 | 715002040 | BIT THEATER INC | $875.00 | Disputed | 4034 FOX VALLEY CENTER DR | | | AURORA | IL | 60504 | | 3319004248; 6302169899 | | CONTACT@BITIMPROV.COM; MICHAEL@BITIMPROV.COM |
| 10123 | | PHOENIX BUSINESS INC | $18,800.00 | Disputed | 6021 MIDNIGHT PASS RD, UNIT 3 | | | SARASOTA | FL | 34242 | | 5125574731 | | INVOICES@PHOENIXTEAM.COM |
| 10124 | | PEAK TECHNOLOGIES INC | $182,583.23 | Disputed | 901 ELKRIDGE LANDING RD, STE 300 | | | LINTHICUM HEIGHTS | MD | 21090-2919 | | 4103126081 | | KATHY.MCCRACKEN@PEAKTECH.COM |
| 10126 | | DESIGNCRAFT INC | $25,095.00 | Disputed | 221 N LASALLE ST, STE 3700 | | | CHICAGO | IL | 60601 | | 3123723311 | | GRIFFIN@WBS-LAW.COM |
| 10127 | | DESIGNCRAFT INC | $25,095.00 | Disputed | 221 N LASALLE ST, STE 3700 | | | CHICAGO | IL | 60601 | | 3123723311 | | GRIFFIN@WBS-LAW.COM |
| 10130 | | CAB ASSIGNEE OF SANLIDA ELECTRICAL TECH | $684,918.65 | Disputed | 4340 FULTON AVE, THIRD FL | | | SHERMAN OAKS | CA | 91423 | | 8189904800 | | WTHOMAS@CABCOLLECTS.COM; BLM@CABCOLLECTS.COM |
| 10132 | 715018320 | WERNER ENTERPRISES INC | $22,574.52 | Disputed | 39365 TREASURY CT | | | CHICAGO | IL | 60694 | | 4029155815 | | CREDIT@WERNER.COM |
| 10134 | | IMR TEST LABS | $57,028.00 | Disputed | 131 WOODSEDGE DR | | | LANSING | NY | 14882 | | 6075337000 X1013 | | KORINNE.LHOMMEDIEU@IMRTEST.COM |
| 10136 | 715011210 | NORDSON CORPORATION | $4,482.63 | Disputed | ATTN CREDIT RISK DEPT | 300 NORDSON DR | | AMHERST | OH | 44001 | | 8772181144 X2 | | BANKRUPTCYNOTICES@NORDSON.COM |
| 10137 | | LEVEL 3 COMMUNICATIONS LLC | $1,089.47 | Disputed | C/O CENTURYLINK COMMUNICATIONS LLC | ATTN LEGAL-BKY | 1025 EL DORADO BLVD | BROOMFILED | CO | 80021 | | 7208881000 | | BANKRUPTCYLEGAL@LUMEN.COM |
| 10138 | | SKJ FACILITIES MANAGEMENT INC | $17,535.00 | Disputed | PO BOX 371 | | | BIG FLATS | NY | 14814 | | 6077951540 | | KBCALABRIA@SKJFACILITIES.COM |
| 10139 | | MILLIMAN INC | $21,000.00 | Disputed | ATTN CHRIS TAIT | 801 CASSATT RD, STE 111 | | BERWYN | PA | 19312 | | 6109758035 | | CHRIS.TAIT@MILLIMAN.COM |
| 10140 | | KALEIDOSCOPE IMAGING INC | $1,808.00 | Disputed | 700 N SACRAMENTO BLVD, STE 265 | | | CHICAGO | IL | 60612 | | 7737229300 | | RECEIVABLES@THINKKALEIDOSCOPE.COM |
| 10141 | 715018260 | WELLBASE INDUSTRIAL LIMITED | $9,880.36 | Disputed | UNIT 1512 VANTA INDUSTRIAL CENTRE | NOS 21-33 TAI LIN PAI ROAD | KWAI CHUNG, HONG KONG 999077 | | | | CHINA | 8613675889355 | | EASON@FREETRON.NET |
| 10143 | 715013060 | PROFESSIONAL TRANSLATING SERVICES LLC | $56,299.26 | Disputed | 3424 PEACHTREE ROAD NE, STE 2060 | | | ATLANTA | GA | 30326 | | | | DAVE.PERLMAN@BIGLANGUAGE.COM |
| 10144 | | GRIN TECHNOLOGIES INC | $27,038.00 | Disputed | 400 CAPITOL MALL, STE 900 | | | SACRAMENTO | CA | 95814 | | | | LEGAL@GRIN.CO |
| 10145 | | GRIN TECHNOLOGIES INC | $30,900.00 | Disputed | 400 CAPITOL MALL, STE 900 | | | SACRAMENTO | CA | 95814 | | | | LEGAL@GRIN.CO |
| 10146 | 715007140 | GUANGDONG JIANCHENG | $279,227.76 | Disputed | XUSHANPING,HETANG, | WENCI TOWN,CHAOAN COUNTY, | GUANGDONG PROVINCE, P.R.CHINA | CHAOZHOU 515658 | | | CHINA | 8618088812342 | | VICKY@GDJCGK.COM |
| 10147 | | SUPPLYFORCE INC | $3,326.46 | Disputed | 700 AMERICAN AVE, STE 300 | | | KING OF PRUSSIA | PA | 19406-1434 | | 6102394368 | | JDOUGHERTY@SUPPLYFORCE.COM |
| 10148 | | CCFL LLC | $9,577.73 | Disputed | 2832 UPPER DR | | | CORNING | NY | 14830-3680 | | 6073684095 | | DEROSEGARRY@HOTMAIL.COM |
| 10151 | 715017720 | VENDPULSE LLC | $104,000.00 | Disputed | 3018 N PARKRIDGE DR | | | LEHI | UT | 84043 | | 8018850560 | | JEFF@DRAFTEDCOMMERCE.COM |
| 10152 | | MISSOURI DEPARTMENT OF REVENUE | $1,346.10 | Disputed | PO BOX 475 | | | JEFFERSON CITY | MO | 65105 | | 5737515531 | | JAMES.SPATH@DOR.MO.GOV |
| 10153 | | MISSOURI DEPARTMENT OF REVENUE | $141.68 | Disputed | PO BOX 475 | | | JEFFERSON CITY | MO | 65105 | | 5737515531 | | JAMES.SPATH@DOR.MO.GOV |
| 10155 | | GLOBAL INDUSTRIAL | $39,527.33 | Disputed | 2505 MILL CENTER PKWY, STE 100 | | | BUFORD | GA | 30518 | | 6789696580 | | LFREEMAN@GLOBALINDUSTRIAL.COM |
| 10156 | 715002840 | CHAOZHOU LISHENG CERAMICS CO LTD | $324,731.03 | Disputed | TIEPU INDUSTRIAL PARK A1-2 | XIANGQIAO DISTRICT | | CHAOZHOU, GD 521000 | | | CHINA | 008613376739490 | | LS@LISHENG-CZ.COM |
| 10157 | 715002520 | CARRY ALL PRODUCTS ETC | $82,460.00 | Disputed | 1556 MT PLEASANT - CONNELLSVILLE RD | | | MOUNT PLEASANT | PA | 15666 | | 7244546989 | | C.KOONTZ@CARRYALLPRODUCTS.COM |
| 10158 | 715002470 | CAREERMINDS GROUP INC | $8,550.00 | Disputed | PO BOX 5530 | | | NEWARK | DE | 19714 | | 3027409343 | | CHURTT@CAREERMINDS.COM |
| 10160 | 715013360 | RALPH W EARL COMPANY | $49,460.81 | Disputed | 5930 E MOLLOY RD | | | SYRACUSE | NY | 13211 | | 3154544431 | | MHOLLERAN@RWEARL.COM |
| 10161 | | CLUTTER BEE LLC, THE | $5,700.00 | Disputed | D/B/A EVERYTHING ENVY | 327 SW WAGNER MEADOWS DR | | GRANTS PASS | OR | 97526 | | 5414410439 | | MARGARET@EVERYTHINGENVY.COM |
| 10162 | | ADVANTAGE SALES & MARKETING LLC | $208,607.17 | Disputed | 15310 BARRANCA PKWY, STE 100 | | | IRVINE | CA | 92618 | | 9497972932 | | STEPHEN.DAVIES@ADVANTAGESOLUTIONS.NET |
| 10163 | | HEARST MAGAZINE MEDIA INC | $99,999.99 | Disputed | 3540 TORINGDON WAY, STE 7 | | | CHARLOTTE | NC | 28277 | | 7043488015 | | AGRIFFIN@HEARST.COM |
| 10164 | | SCOTT ELECTRIC COMPANY | $2,024.48 | Disputed | PO BOX S | | | GREENSBURG | PA | 15601 | | 7242615142 | | SDTHOMAS@SCOTTELECTRICUSA.COM |
| 10165 | | ACQUIA INC | $25,084.93 | Disputed | 53 STATE ST, 10TH FL | | | BOSTON | MA | 02109 | | 6175887444 | | ACCTSREC@ACQUIA.COM |
| 10166 | 715005720 | EIKON DIGITAL SAS | $5,751.00 | Disputed | CALLE 99 14 76 | | | BOGOTA 110911 | | | COLOMBIA | 3016849399 | | CONTABILIDAD@EIKONDIGITAL.COM |
| 10167 | | PREFERRED SALES GROUP INC | $887.55 | Disputed | ATTN VINCENT SPERA | 131 WESTFIELD AVE | | CLARK | NJ | 07066 | | 7323827299 | | LBAKIR@PSGROUPINC.COM; VSPERA@PSGROUPINC.COM |
| 10168 | | MSC INDUSTRIAL SUPPLY COMPANY | $36,224.31 | Disputed | 515 BROADHOLLOW RD, STE 1000 | | | MELVILLE | NY | 11747 | | 5168121547 | | BOBBW@MSCDIRECT.COM |
| 10172 | 715006170 | FERCO COLOR | $2,843.15 | Disputed | 5498 VINE ST | | | CHINO | CA | 91710 | | 9099300773 | | ACCOUNTING@FERCOCOLOR.COM |
| 10173 | 715015610 | STAR AUTOMATION INC | $5,300.56 | Disputed | C/O COFACE NORTH AMERICA INSURANCE CO | 650 COLLEGE RD E, STE 2005 | | PRINCETON | NJ | 08540 | | 6094690459 | | AMY.SCHMIDT@COFACE.COM |
| 10174 | 715017310 | UNITE GLOBAL TOOLING SOLUTIONS SA | $39,720.00 | Disputed | ESTRADA DE LEIRIA 242 | EDIFICIO MAPER | FR.H | MARINHA GRANDE 2340-527 | | | PORTUGAL | 351962985327 | | MARIO.GALVAO@UNITE.COM.PT |
| 10179 | | PACHIRAT, SAMANTHA | $250,000.00 | Disputed | C/O WALLACE MILLER | 150 N WACKER DR, STE 1100 | | CHICAGO | IL | 60606 | | 3122616193 | | NPK@WALLACEMILLER.COM |
| 10180 | | PACHIRAT, SAMANTHA | $250,000.00 | Disputed | C/O WALLACE MILLER | 150 N WACKER DR, STE 1100 | | CHICAGO | IL | 60606 | | 3122616193 | | NPK@WALLACEMILLER.COM |
| 10181 | | STAFF LINE LLC | $92,911.44 | Disputed | 6750 POPLAR AVE, STE 400 | | | MEMPHIS | TN | 38138 | | 9018200455 | | MARTY.BARTON@ADAMSKEEGAN.COM |
| 10182 | 715012380 | PENNAIR & HYDRAULICS CORP | $1,531.42 | Disputed | 580 DAVIES DR | | | YORK | PA | 17402 | | 7178408100 | | LKELLISON@TCCHOLDINGS.COM |
| 10184 | | NATHALY'S JANITORIAL INC | $9,923.00 | Disputed | PO BOX 814 | | | GARDEN GROVE | CA | 92842 | | 7143152825 | | ALBERTO@CNLJANITORIAL.COM |
| 10185 | | C H REED INC | $136,385.95 | Disputed | 301 POPLAR ST | | | HANOVER | PA | 17331 | | 8006927216 X165 | | ACCOUNTSRECEIVABLE@CHREED.COM |
| 10186 | | C H REED INC | $136,385.95 | Disputed | 301 POPLAR ST | | | HANOVER | PA | 17331 | | 8006927216 X165 | | ACCOUNTSRECEIVABLE@CHREED.COM |
| 10187 | | OVERHEAD DOOR CO OF GREATER PITTSBURGH | $22,835.00 | Disputed | 400 POPLAR ST | | | PITTSBURGH | PA | 15223 | | 4127814000 | 4127814000 X205 | SEMRICK@OHDPGH.COM |
| 10188 | 715010900 | NEFF EXPANSION PA LLC | $21,323.22 | Disputed | PO BOX 8604 | | | FORT WAYNE | IN | 46898-8604 | | 2603998937 | | TEMMONS@NEFFAUTOMATION.COM |
| 10189 | | AUTUMN TRANSPORT INC | $4,330.25 | Disputed | 6550 COURTLY RD | | | WOODBURY | MN | 55125 | | 6512940130 | | CRHENDRIX@AUTUMNTRANSPORT.COM |
| 10190 | | CLARITI GROUP INC | $785.35 | Disputed | PO BOX 76 | | | CARP | ON | K0A 1L0 | CANADA | 6136142420 | | KEVIN@CLARITIGROUP.CA |
| 10191 | 715008930 | KOPOS & BAKER INC | $38,404.00 | Disputed | 1787 SENTRY PKWY W, STE 16-110 | | | BLUE BELL | PA | 19422-2240 | | 6106841271 | | DKOPOS@KOPOSBAKER.COM |
| 10192 | | SHILOH INDUSTRIAL CONTRACTORS INC | $114,086.64 | Disputed | 204 COMMERCE BLVD | PO BOX 603 | | LAWRENCE | PA | 15055 | | 7247455460 X111 | | OFFICEMANAGER@SHILOHIND.COM |



CONFIDENTIAL 

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10194 | 715019010 | ZHEJIANG SUPOR ELECTRICAL APPLIANCES | $230,497.20 | Disputed | 501 BIN AN ROAD | | | HANGZHOU 310052 | | | CHINA | 8615088756273 | | SKYU2@SUPOR.COM |
| 10196 | 715009600 | MALVERN PANALYTICAL INC | $18,060.06 | Disputed | 2400 COMPUTER DR, STE 2100 | | | WESTBOROUGH | MA | 01581 | | 5087686438 | | DAWN.SIMS@MALVERNPANALYTICAL.COM |
| 10197 | | TARGET CORPORATION | $2,067,743.46 | Disputed | 7000 TARGET PKWY, NCF-0403 | | | BROOKLYN PARK | MN | 55445 | | 7634403102 | | KATHERINE.MCEACHRAN@TARGET.COM |
| 10198 | | AMERICAN MACHINING INC | $10,946.00 | Disputed | 715 SCENIC DR | | | DAISYTOWN | PA | 15427 | | 7249382120 | | AMINC@ZOOMINTERNET.NET |
| 10199 | 715002370 | CADIMENSIONS INC | $6,627.52 | Disputed | 6310 FLY RD | | | EAST SYRACUSE | NY | 13057 | | 3154349787 | | HTITUS@CADIMENSIONS.COM |
| 10200 | | CERCO I INC | $41,114.68 | Disputed | ATTN ACCOUNTS RECEIVABLE | 453 W MCCONKEY ST | | SHREVE | OH | 44676 | | 3305672145 X1109 | 3305672145 X1106 | ARACCOUNTING@CERCOLLC.COM; JASKOWIAKJ@CERCOLLC.COM |
| 10202 | 715008260 | JAPAN STEEL WORKS AMERICA INC | $19,115.20 | Disputed | JSW NJ TECHNICAL AND DISTRIBUTION CENTER | 1881 ROUTE 46 | | LEDGEWOOD | NJ | 07852 | | 7322851952 | | ACCOUNTING@JSWAMERICA.COM |
| 10205 | 715016230 | TECHNOLOGY RECOVERY GROUP LTD | $5,422.77 | Disputed | 31390 VIKING PKWY | | | WESTLAKE | OH | 44145 | | 4404718080 | | JSIMONSEN@TRGSOLUTIONS.COM |
| 10207 | 715003170 | CLUB COFFEE LP | $50,329.50 | Disputed | 55 CARRIER DR | | | TORONTO | ON | M9W 5V9 | CANADA | 5197298304 | | PRASHANT.NARASIMHA@OFI.COM |
| 10209 | 715011780 | OSTERMAN & COMPANY INC | $2,345.92 | Disputed | C/O NCS CREDIT | 729 MINER RD | | HIGHLAND HEIGHTS | OH | 44143 | | 4404619661 | | COLLECTIONS@NCSCREDIT.COM |
| 10210 | | SPADAFY LLC | $270,758.17 | Disputed | 8228 FAIRWAY DR NE | | | SEATTLE | WA | 98115 | | 2068501113 | | ROD@SPADAFY.COM |
| 10211 | | SPADAFY LLC | $86,186.38 | Disputed | 8228 FAIRWAY DR NE | | | SEATTLE | WA | 98115 | | 2068501113 | | ROD@SPADAFY.COM |
| 10212 | | UCT SPECIALTIES LLC | $8,431.09 | Disputed | 2731 BARTRAM RD | | | BRISTOL | PA | 19007-6893 | | 2157819255 X126 | | AR@UNITEDCHEM.COM |
| 10213 | | UCT SPECIALTIES LLC | $8,431.09 | Disputed | 2731 BARTRAM RD | | | BRISTOL | PA | 19007-6893 | | 2157819255 X126 | | AR@UNITEDCHEM.COM |
| 10214 | 715011670 | OPTIMAL CALIBRATION LLC | $4,300.00 | Disputed | 11205 HAMPTON RIDGE DR | | | CHARDON | OH | 44024 | | 4407815600 | | CUSTOMERSERVICE@OPTIMALCALIBRATION.COM |
| 10215 | | CT CORPORATION | $25,161.75 | Disputed | PO BOX 4349 | | | CAROL STREAM | IL | 60197-4349 | | | | BRIAN.BARTHOLOMEW@WOLTERSKLUWER.COM |
| 10216 | | CT CORPORATION | $2,236.98 | Disputed | PO BOX 4349 | | | CAROL STREAM | IL | 60197-4349 | | | | BRIAN.BARTHOLOMEW@WOLTERSKLUWER.COM |
| 10218 | 715011640 | OPEN TEXT CORPORATION | $29,472.60 | Disputed | ATTN ACCOUNTS RECEIVABLE | 275 FRANK TOMPA DR | | WATERLOO | ON | N2L 0A1 | CANADA | 5198887111 | | LISAJ@OPENTEXT.COM |
| 10219 | | CT CORPORATION | $4,336.98 | Disputed | PO BOX 4349 | | | CAROL STREAM | IL | 60197-4349 | | | | BRIAN.BARTHOLOMEW@WOLTERSKLUWER.COM |
| 10220 | | CT CORPORATION | $450.00 | Disputed | PO BOX 4349 | | | CAROL STREAM | IL | 60197-4349 | | | | BRIAN.BARTHOLOMEW@WOLTERSKLUWER.COM |
| 10221 | | CT CORPORATION | $330.25 | Disputed | PO BOX 4349 | | | CAROL STREAM | IL | 60197-4349 | | | | BRIAN.BARTHOLOMEW@WOLTERSKLUWER.COM |
| 10222 | 715007600 | HUB GROUP INC | $15,376.59 | Disputed | 2001 HUB GROUP WAY | | | OAK BROOK | IL | 60523 | | 6302713629 | | BKUCAN@HUBGROUP.COM |
| 10223 | | EHRLICH | $7,395.14 | Disputed | ATTN BANKRUPTCY TEAM | 1125 BERKSHIRE BLVD, STE 150 | | READING | PA | 19610 | | 8448399191 X25163 | 8448399591 X25163 | BANKRUPTCYTEAM@RENTOKIL.COM |
| 10225 | | JONES LANG LASALLE BROKERAGE INC | $419,117.10 | Disputed | ATTN LEGAL DEPT | 200 E RANDOLPH ST | | CHICAGO | IL | 60601 | | | | PATRICE.GRAMBERG@JLL.COM |
| 10226 | 715005550 | DURA-METAL PRODUCTS CORPORATION | $7,640.78 | Disputed | ATTN DAVID KUBIAK | 1552 ARONA RD | PO BOX 680 | IRWIN | PA | 15642 | | 7248649770 | | DCKUBIAK@DURA-METAL.COM |
| 10227 | | CERTASITE LLC | $2,780.33 | Disputed | 9855 CROSSPOINT BLVD, STE 126 | | | INDIANAPOLIS | IN | 46256 | | 4637778710 | | DBEVIS@CERTASITEPRO.COM |
| 10228 | 715008720 | KWIK RELIEF SERVICES | $298.08 | Disputed | 32 STONYBROOK ROAD E | | | HORSEHEADS | NY | 14845 | | 6074266340 | | KLORSON@STNY.RR.COM |
| 10229 | | ADVANCE ELECTRIC INC CO | $31,800.00 | Disputed | 10500 HWY 178 | | | OLIVE BRANCH | MS | 38654 | | 6628956335 | | RHICKS@ADVANCE-ELECTRIC.NET |
| 10231 | 715002050 | BLACKBOX STUDIOS INC | $159,470.00 | Disputed | C/O SAUL EWING LLP | ATTN MONIQUE DISABATINO, ESQ | 1201 N MARKET ST, STE 2300; PO BOX 1266 | WILMINGTON | DE | 19899 | | 3024216800 | | MONIQUE.DISABATINO@SAUL.COM |
| 10232 | 715006440 | FORMOSA FLEXIBLE PACKAGING AMERICA INC | $4,519.12 | Disputed | 25636 AVENUE STANFORD | | | VALENCIA | CA | 91355 | | 8187009036 | | STOMLINSON@AMERI-SEAL.COM |
| 10233 | | KTG SYSTEMS INC | $1,215.00 | Disputed | 101 BRADFORD RD, STE 110 | | | WEXFORD | PA | 15090 | | 7249400335 | 4195379711 X419 | FNEFF@KTGSI.COM |
| 10241 | 715013860 | RIMCO PLASTICS CORPORATION | $438.11 | Disputed | ATTN TODD KOSALEK | 316 COLONIAL DR | | HORSEHEADS | NY | 14845 | | 6077393864 | | TKOSALEK@RIMCOPLASTICS.COM |
| 10242 | | SECUREDOCS INC | $12,960.00 | Disputed | ATTN LEGAL DEPARTMENT | 1360 POST OAK BLVD, STE 2200 | | HOUSTON | TX | 77056 | | 8002811330 | | LEGAL@ONIT.COM |
| 10243 | 715013370 | RAMCO INNOVATIONS INC | $0.00 | Disputed | 1207 MAPLE ST | | | WEST DES MOINES | IA | 50265 | | 5152256933; 5153435094 | | AWEISHAAR@RAMCOI.COM |
| 10244 | 715016100 | SYRACUSE SUPPLY | $826.10 | Disputed | 43 CO RT 59 | | | PHOENIX | NY | 13135 | | 3152169584 | | DMARTIN@SYRSUPPLY.COM |
| 10246 | 715011390 | OCCUPATIONAL SAFETY CONSULTANTS INC | $4,500.00 | Disputed | 175 THURLOW AVE | | | ROCHESTER | NY | 14609 | | 5857037233 | | DMILLER@WORKRISKFREE.COM |
| 10247 | | ENGINEERED MATERIALS TECHNOLOGY INC | $16,141.50 | Disputed | 7447 19 MILE RD | | | STERLING HEIGHTS | MI | 48314 | | 5863236000 | | CHUNT@EMTECHINC.NET |
| 10249 | | VERIZON BUSINESS GLOBAL LLC | $11,091.72 | Disputed | ATTN WILLIAM M VERMETTE | 22001 LOUDOUN COUNTY PKWY | | ASHBURN | VA | 20147 | | 5717764522 | | WILLIAM.VERMETTE@VERIZON.COM |
| 10251 | | CENTRYCO INC | $283.01 | Disputed | 300 W BROAD ST | | | BURLINGTON | NJ | 08016 | | 6093866448 | | LISA@CENTRYCO.COM |
| 10253 | | EMI CORP | $935.57 | Disputed | PO BOX 590 | | | JACKSON CENTER | OH | 45334 | | 9375962002 | | AR@EMICORP.COM |
| 10254 | | MCWILLIAMS, CHERRE | $2,500,000.00 | Disputed | 180 N STETSON AVE, 35TH FL | | | CHICAGO | IL | 60601 | | 3124621700 | | INFO@MOLLLAWGROUP.COM |
| 10255 | | ANCHOR HOCKING LLC | $1,024,876.96 | Disputed | D/B/A ANCHOR HOCKING | C/O BAKER & HOSTETLER; ATTN A BEACHDELL | KEY TOWER, 127 PUBLIC SQ, STE 2000 | CLEVELAND | OH | 44114 | | 2166216200 | | ABEACHDELL@BAKERLAW.COM |
| 10256 | | LANER MUCHIN LTD | $17,916.41 | Disputed | ATTN ANDREW S GOLDBERG | 515 N STATE ST, STE 2400 | | CHICAGO | IL | 60654 | | 3124679800 | | AGOLDBERG@LANERMUCHIN.COM |
| 10260 | | OSF GLOBAL SERVICES INC | $5,000.00 | Disputed | 1000 N WEST ST, STE 1200 | | | WILMINGTON | DE | 19801 | | | | LEGAL@OSF-GLOBAL.COM |
| 10263 | 715015270 | SOLVENTS AND PETROLEUM | $17,140.00 | Disputed | 1405 BREWERTON RD | | | SYRACUSE | NY | 13208 | | 3154544467 | | SUE@SOLVENTSANDPETROLEUM.COM |
| 10264 | 715010110 | META PLATFORMS INC | $43,749.53 | Disputed | C/O MCMAHON SEREPCA LLP | ATTN DAVID SEREPCA | 1900 S NORFOLK ST, STE 350 | SAN MATEO | CA | 94403 | | 6506370600 | | DAVID@MSLLP.COM; ELIZABETH@MSLLP.COM |
| 10265 | | META PLATFORMS INC | $1,155.19 | Disputed | C/O MCMAHON SEREPCA LLP | ATTN DAVID SEREPCA | 1900 S NORFOLK ST, STE 350 | SAN MATEO | CA | 94403 | | 6506370600 | | DAVID@MSLLP.COM; ELIZABETH@MSLLP.COM |
| 10266 | | CAPS VISUAL COMMUNICATIONS | $2,559.00 | Disputed | D/B/A CAPS57 | 329 W 18TH ST, STE 616 | | CHICAGO | IL | 60616 | | 3122795200 | | DSIMPSON@CAPSVISUAL.COM |
| 10267 | | EASTPOINTE MARKETING INC | $10,317.89 | Disputed | 2 E MAIN ST, STE 2C | | | FREEHOLD | NJ | 07728 | | 7326739733 | | SWEENEYBROKER@GMAIL.COM |
| 10268 | 715018620 | WITTMANN USA INC | $9,950.09 | Disputed | ONE TECHNOLOGY PARK DR | | | TORRINGTON | CT | 06790 | | 8604969603 | | TRACIE.KARAGIANES@WITTMANN-GROUP.COM |
| 10269 | 715000490 | WOODS END LABORATORIES LLC | $31,125.00 | Disputed | 150 WHITTEN RD | | | AUGUSTA | ME | 04330 | | 2072932457 | | OFFICE@WOODSEND.COM |
| 10270 | | TRU-CORE INDUSTRIAL SERVICES | $16,545.00 | Disputed | 250 E FIRST ST | | | WAYNESBURG | PA | 15370 | | 7243508790 | | KIM.WOLFE@TRU-CORE.NET |
| 10271 | 715017680 | VANTON PUMP & EQUIPMENT CORP | $1,055.79 | Disputed | 201 SWEETLAND AVE | | | HILLSIDE | NJ | 07205 | | 9086884216 | | BRISCINTI@VANTON.COM |
| 10272 | | HOLLAND MANUFACTURING CORPORATION | $30,279.18 | Disputed | 13901 INDIANA AVE | | | DOLTON | IL | 60419 | | 7088491000 | | REBECCA@HOLLANDMANUFACTURING.COM |
| 10273 | 715003130 | CLEAN AIR ENGINEERING INC | $4,000.00 | Disputed | 500 W WOOD ST | | | PALATINE | IL | 60067 | | 8479913300 | | LZDYBEL@CLEANAIR.COM |
| 10274 | 715000390 | ADAPTEC SOLUTIONS | $5,636.05 | Disputed | ATTN QUENTIN SCHNEIDER | 140 COMMERCE DR | | ROCHESTER | NY | 14623 | | 8007245794 | | ROBIN.FOX@ADAPTECSOLUTIONS.COM |
| 10275 | 715006740 | GEN3 MARKETING LLC | $55,161.00 | Disputed | 960B HARVEST DR, STE 210 | | | BLUE BELL | PA | 19422 | | 2156461869 | | AHAMID@GEN3MARKETING.COM |
| 10276 | 715011000 | NEWCASTLE COMPANY INC | $3,599.00 | Disputed | 3812 WILMINGTON RD | | | NEW CASTLE | PA | 16105-9017 | | 7246584516 | | SSMITH@NEWCASTLECO.COM |
| 10277 | 715005620 | EASTERN LIFT TRUCK (SERVICE) CO INC | $22,922.82 | Disputed | PO BOX 307 | | | MAPLE SHADE | NJ | 08052 | | 8564064730 | | BHABER@EASTERNLIFTTRUCK.COM |
| 10278 | | WORLDWIDE TV PRODUCTS LLC | $26,877.14 | Disputed | 13100 56TH CT, STE 706 | | | CLEARWATER | FL | 33760 | | 7275311010 | | GUS@WWTVP.COM |
| 10279 | | NEUINTEL LLC | $9,900.00 | Disputed | D/B/A PRICESPIDER | 20 PACIFICA, STE 1000 | | IRVINE | CA | 92782 | | 9496256117 | | BILLING@PRICESPIDER.COM |
| 10280 | | OLEAN KEYSTONE TOOL & DIE CO INC | $14,012.06 | Disputed | PO BOX 604 | 1410 OLEAN-PORTVILLE RD | | WESTONS MILLS | NY | 14788 | | 7163726987 | | KEN@KTDNY.COM |
| 10281 | 715016500 | NELSON COMPANY, THE | $44,954.00 | Disputed | 4517 N POINT BLVD | | | BALTIMORE | MD | 21219 | | 4104773004 | | JACK.WILLIAMS@NELSONCOMPANY.COM |
| 10282 | 715009420 | LOGISTICK INC | $4,129.00 | Disputed | 19880 STATE LINE RD | | | SOUTH BEND | IN | 46637 | | 5749684418 | | JAKE@LOGISTICK.COM |
| 10283 | 715009800 | MASSEY & GAIL LLP | $14,162.00 | Disputed | ATTN GAIL NIEMANN | 50 E WASHINGTON ST, STE 400 | | CHICAGO | IL | 60602 | | 3126262714 | | GNIEMANN@MASSEYGAIL.COM |
| 10284 | 715000920 | ALL AROUND FENCE COMPANY INC | $2,000.00 | Disputed | 7896 NATIONAL PIKE | | | UNIONTOWN | PA | 15401 | | 7244390331 | | ALLAROUND@ALLAROUNDFENCE.COM |
| 10285 | 715010620 | MODERN TESTING SERVICES LLC | $11,510.00 | Disputed | 349 LENOX ST | | | NORWOOD | MA | 02062 | | | | |
| 10286 | 715000740 | AGF BURNER INC | $5,893.00 | Disputed | 814 ASBURY AVE | | | ASBURY PARK | NJ | 07712 | | 7327308090 | | AP@AGFBURNER.COM |
| 10287 | 715005060 | DEMANDPDX LLC | $0.00 | Disputed | 12198 SE 158TH AVE | | | HAPPY VALLEY | OR | 97086-5858 | | 5037205562 | | CHRIS.BERGEMANN@DEMANDPDX.COM |
| 10288 | 715013290 | R L MILLER LLC | $57.75 | Disputed | 3802 NEVILLE RD | | | PITTSBURGH | PA | 15225 | | 4127221600 | | VENDORS@RLMILLERLLC.COM |
| 10289 | | COUCH WHITE LLP | $1,846.54 | Disputed | PO BOX 22222 | | | ALBANY | NY | 12201 | | 5184264600 | | NBRADT@COUCHWHITE.COM |
| 10290 | | CAPS VISUAL COMMUNICATIONS | $2,559.00 | Disputed | D/B/A CAPS57 | 329 W 18TH ST, STE 616 | | CHICAGO | IL | 60616 | | 3122795200 | | DSIMPSON@CAPSVISUAL.COM |
| 10295 | | COLES, RECINA AND TONY | $1,000,000.00 | Disputed | C/O WOLFF ARDIS PC | 5810 SHELBY OAKS DR | | MEMPHIS | TN | 38134 | | 9012925115 | | GGELFAND@WOLFFARDIS.COM |
| 10297 | 715000030 | 2 KREW SECURITY & SURVEILLANCE | $18,985.00 | Disputed | 177 S JEFFERSON ST | | | KITTANNING | PA | 16201 | | 7245430274; 7246553083 | | ACCOUNTING@2KREW.COM; BRENT@2KREW.COM |
| 10298 | 715014410 | SCHAGRIN ASSOCIATES | $5,413.00 | Disputed | 900 SEVENTH ST NW | | | WASHINGTON | DC | 20001 | | 2022231700 | | NBIRCH@SCHAGRINASSOCIATES.COM |
| 10299 | | GLOBAL SERVICE TECHNICIANS INC | $4,804.60 | Disputed | 104 TOUHY CT | | | DES PLAINES | IL | 60018 | | 3127248180 | | ACCOUNTING@GSTAV.COM |
| 10300 | 715013880 | RIMINI STREET INC (RSI) | $9,720.00 | Disputed | ATTN SCOTT HOFFMANN | 7251 W LAKE MEAD BLVD, STE 300 | | LAS VEGAS | NV | 89128 | | 7022741918 | | SHOFFMANN@RIMINISTREET.COM |
| 10301 | 715014420 | SCHILLING GRAPHICS INC | $30,451.00 | Disputed | 275 GELSANLITER RD | | | GALION | OH | 44833 | | 4197777801 | | DALE.HADDAD@SCHILLINGINC.COM |
| 10303 | | ARKANSAS AUDITOR OF STATE | $0.00 | Disputed | 1401 W CAPITOL AVE, STE 325 | | | LITTLE ROCK | AR | 72201 | | 5016826030 | | HOLDERS@AUDITOR.AR.GOV; TJ.FOWLER@AUDITOR.AR.GOV |
| 10304 | 715011490 | OLIVE BRANCH EYECARE PLLC | $5,699.00 | Disputed | 6947 CRUMPLER BLVD | | | OLIVE BRANCH | MS | 38654 | | 6628933300 | | JSTROUPE@OLIVEBRANCHEYECARE.COM |
| 10305 | 715015530 | STACKTECK SYSTEMS LIMITED | $1,003.00 | Disputed | 1 PAGET RD | | | BRAMPTON | ON | L6T 5S2 | CANADA | 4167491698 X684 | | SSARDINHA@STACKTECK.COM |
| 10306 | 715014370 | SAYLE OIL COMPANY INC | $9,931.06 | Disputed | PO BOX 310 | | | CHARLESTON | MS | 38921 | | 6626475802 X235 | 6626475802 X325 | CREDIT@SAYLEOIL.COM |
| 10307 | | PAYSCALE INC | $16,000.00 | Disputed | 113 CHERRY ST, STE 96140 | | | SEATTLE | WA | 98104 | | 2067534038 | | BILLING@PAYSCALE.COM |
| 10309 | | IGS INDUSTRIES INC | $2,836.12 | Disputed | PO BOX 368 | 200 COUNTRY CLUB RD | | MEADOW LANDS | PA | 15347 | | 7242225800; 3157510903 | | DAN.BIRD@IGSIND.COM |
| 10310 | 715014390 | SCENIC SERVICES INC | $18,318.00 | Disputed | 1116 MARSH RD | | | CORNING | NY | 14830 | | 6079361357 | | KNN_NDR@YAHOO.COM |
| 10312 | 715014900 | SHINGLE & GIBB AUTOMATION | $5,762.46 | Disputed | 845 LANCER DR | | | MOORESTOWN | NJ | 08057 | | 8562348500; 8563802320 | | CONNIE.GIESLER@SHINGLE.COM |
| 10313 | 715005750 | ELECTROLAB INC | $16,661.34 | Disputed | 440 LAWRENCE BELL DR, STE 2 | | | WILLIAMSVILLE | NY | 14221 | | 7168334457 | | JIM@ELECTROLABINC.COM |
| 10314 | 715013740 | REYNOLDS MANUFACTURING INC | $20,110.00 | Disputed | PO BOX 436 | 3298 STATE RTE 352 | | BIG FLATS | NY | 14814 | | 6075628936 | | DBALLARD@REYNOLDSMAN.COM; DBALLARD@REYNOLDSMNA.COM |
| 10317 | 715001510 | ASSOCIATED STEEL CORPORATION | $5,288.73 | Disputed | PO BOX 28335 | | | CLEVELAND | OH | 44128-0335 | | 8003219300 | | MAIL@ASSOCIATEDSTEEL.COM |
| 10318 | 715005130 | DENTONS US LLP | $138,317.65 | Disputed | ATTN ROBERT E RICHARDS | 233 S WACKER DR, STE 5900 | | CHICAGO | IL | 60606 | | 3128768000 | | ROBERT.RICHARDS@DENTONS.COM |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10319 | 715012910 | PREMIER ENGINEERING LLC | $30,933.00 | Disputed | 1675 REDI RD, #400 | | | CUMMING | GA | 30040 | | 6784428382 | | MEGAN@PREMIERENGINEERING.COM; INVOICE@PREMIERENGINEERING.COM |
| 10320 | | NELSON, CARRIE | $76,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10321 | 715001180 | ANTECH SALES INC | $3,019.00 | Disputed | 105 ELWOOD AVE | | | MEDINA | NY | 14103 | | 5857984300 | | DAVEK@ANTECHSALES.COM |
| 10324 | | SHANNON OPTICAL CO INC | $87.50 | Disputed | 368 COMMERCIAL ST, STE 200 | | | BRIDGEVILLE | PA | 15017 | | 4122574700 | | EGALLAWAY@SHANNONOPTICAL.COM |
| 10325 | | EATHRIDGE, NAKITA | $315,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10326 | | BARR, SHAYANNA | $595,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10327 | | DRAYTON, ROSALINA | $790,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10328 | | BADDERS, DEVIN | $300,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10329 | | CHRISTIE, BALDERAS | $350,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10330 | | HAYNES, MIA R | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10331 | | HINCKLEY, SHALON | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10332 | 715010070 | MESSER LLC | $23,428.13 | Disputed | ATTN RICHARD LINGG | 200 SOMERSET CORPORATE BLVD, STE 7000 | | BRIDGEWATER | NJ | 08807-2862 | | 9087714831 | | RICHARD.LINGG@MESSER-US.COM |
| 10333 | | OSTERKAMP, KARRA | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10334 | | ARMFIELD, BRADLEY | $325,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10335 | | YASH TECHNOLOGIES INC | $118,260.00 | Disputed | C/O CALIFF & HARPER PC | ATTN JAMES S ZMUDA | 1515 5TH AVE, STE 700 | MOLINE | IL | 61265 | | 3097648300 | | JZMUDA@CALIFF.COM |
| 10336 | | COX, APRIL | $365,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10337 | 715014820 | SHAW MATERIAL HANDLING SYSTEM INC | $28,124.82 | Disputed | 6311 NE EQUITABLE RD | | | KANSAS CITY | MO | 64120 | | 8167085373 | | JANE.BRUCKER@HEUBELSHAW.COM |
| 10338 | | JUNCAJ, MEGAN | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10339 | | BRAY, JATON | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10340 | | PATTON, AMANDA | $460,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM; MJACKOWSKI@JOHNSONBECKER.COM |
| 10341 | | CAVINESS, ANNA | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10342 | | ORKIN PEST CONTROL | $11,491.75 | Disputed | 3326 GOODMAN RD E | | | SOUTHAVEN | MS | 38672 | | 2762851734 | | ROY.LOCKE@ORKIN.COM |
| 10343 | | SMITH, MARTHA | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10344 | | EVERETT, LATONYA | $5,000,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10345 | | RIOS, ELIZABETH | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10346 | | NPD GROUP LP, THE | $600,000.00 | Disputed | 900 W SHORE RD | | | PORT WASHINGTON | NY | 11050 | | | | GENERAL.COUNSEL@CIRCANA.COM; RICK.ANTON@CIRCANA.COM |
| 10347 | | MYERS, LIZELL | $190,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10348 | | TAGLIANETTI, JENNIFER | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10349 | | OSTERKAMP, KARRA | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10350 | | SLOAN, TIFFANY | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10351 | | BURGESS, KEYOLONDA | $325,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10352 | | BERRIOS, SETH | $1,625,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10353 | | BURGESS, KEYOLONDA | $325,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10354 | | BERRIOS, SETH | $1,625,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10355 | | DALEY, TISHA | $115,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10356 | | BAKER, SAMANTHA | $1,500,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10357 | | CONN, THOMAS | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10358 | | BERRIOS, CATHERINE | $500,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10359 | | BERRIOS, CATHERINE | $500,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10360 | 715011690 | ORACLE AMERICA SII TO SUN MICROSYSTEMS | $59,462.45 | Disputed | C/O BUCHALTER, A PROF CORPORATION | ATTN SHAWN M CHRISTIANSON, ESQ | 425 MARKET ST, STE 2900 | SAN FRANCISCO | CA | 94105 | | 4152270900 | | SCHRISTIANSON@BUCHALTER.COM |
| 10361 | | CAPUCHINO, VALERY | $1,225,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10362 | | CAPUCHINO, VALERY | $1,225,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10363 | | DOTSON, BENJAMIN | $2,475,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10364 | | DOTSON, BENJAMIN | $2,475,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10365 | | GINESIN, SAMANTHA | $925,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10366 | | GINESIN, SAMANTHA | $925,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10367 | | HARMS, BLAZE | $2,125,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10368 | | EASLEY, ANGIE | $365,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10369 | | HARMS, BLAZE | $2,125,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10370 | | JOHNSON, BENJAMIN | $1,225,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10371 | | FISHER, DANIEL | $135,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10373 | | ANGUIANA, ELISA | $395,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10374 | | LOFTIS, VANESSA | $975,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10375 | | HAZELTON, KOCHA | $345,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10376 | | LEAKE, DEBRA | $625,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJACKOWSKI@JOHNSONBECKER.COM; MJOHNSON@JOHNSONBECKER.COM |
| 10377 | | JOHNSON, BENJAMIN | $1,225,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10378 | | MERKT, COURTNEY | $2,125,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10379 | | MERKT, COURTNEY | $2,125,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10380 | | RUSSELL, LINDSEY | $825,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10381 | | RUSSELL, LINDSEY | $825,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10382 | | WILLIAMS, MOLLIE | $775,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10383 | | WILLIAMS, MOLLIE | $775,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10384 | | COMMISSION JUNCTION LLC & AFFILIATES | $0.00 | Disputed | C/O LOCKE LORD LLP | ATTN HANNA J REDD | 111 HUNTINGTON AVE, 9TH FL | BOSTON | MA | 02199 | | 6172390141 | | HANNA.REDD@LOCKELORD.COM |
| 10385 | | KLEIN, MEGAN | $365,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10386 | | PEREZ-PINON, VIOLETA | $325,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10387 | | FOSTER, COURTNEY | $445,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10388 | | SLOAN, TIFFANY | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10389 | | SMITH, MARTHA | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10390 | | ZACCO SWEDEN AB | $1,174.00 | Disputed | ATTN ZACCO DENMARK A/S | ARNE JACOBSENS ALLE 15 | | COPENHAGEN S 2300 | | | DENMARK | 4539488000 | | RECEIVABLES@ZACCO.COM; MIKAEL.PALADE@ZACCO.COM |
| 10391 | | CAVINESS, ANNA | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10392 | | ZACCO DENMARK A/S | $16,500.00 | Disputed | ATTN ZACCO DENMARK A/S | ARNE JACOBSENS ALLE 15 | | COPENHAGEN S 2300 | | | DENMARK | 4539488000 | | RECEIVABLES@ZACCO.COM |
| 10393 | | BRAY, JATON | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10394 | | SCALONE, DINA | $475,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10395 | | PERKINS, AMBER | $435,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10396 | | WATSON, LAQUANA | $725,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10397 | | WATSON, LAQUANA | $725,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10398 | | DAVIS, ANALYSIA | $360,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10399 | | POOR, KECIA | $110,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10400 | | MOORE, AMANDA | $215,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10401 | 715004830 | DASSAULT SYSTEMES AMERICAS CORP | $31,280.79 | Disputed | C/O MINTZ LEVIN | ATTN ERIC R BLYTHE | ONE FINANCIAL CENTER | BOSTON | MA | 02111 | | 6173484913 | | ERBLYTHE@MINTZ.COM |
| 10402 | | HATCHER, FRED JR | $495,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10403 | | ROBINSON, TIMYA | $425,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10404 | | DAVIS, TERRAIL | $400,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10405 | | DOSS, DARRYL | $345,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10406 | | EVERETT, LATONYA | $5,000,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10407 | | OSTERKAMP, KARRA | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10408 | | HAYNES, MIA R | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10409 | | CONN, THOMAS | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10410 | | TAGLIANETTI, JENNIFER | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10411 | | BERRIOS, SETH | $1,625,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10412 | | HINCKLEY, SHALON | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10414 | | JUNCAJ, MEGAN | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10415 | | BERRIOS, SETH | $1,625,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10416 | | BAKER, SAMANTHA | $1,500,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10417 | | THOMAS, BRANDON | $1,150,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10418 | | BERRIOS, CATHERINE | $500,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10419 | | BERRIOS, CATHERINE | $500,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10420 | | TAGLIANETTI, JENNIFER | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10421 | | GAINES, TIERA | $480,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10422 | | MAGALLON, SUSANA | $375,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10423 | | TAGLIANETTI, JENNIFER | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10424 | | RIOS, ELIZABETH | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10425 | | TAGLIANETTI, JENNIFER | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10426 | | MULVAINE, ERIC | $435,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10427 | 715006310 | FIVE BLOCKS INC | $119,581.00 | Disputed | 1562 FIRST AVE, #205-2880 | | | NEW YORK | NY | 10028-4004 | 2126950855X105 | CHAYA@FIVEBLOCKS.COM |
| 10428 | | CAPUCHINO, VALERY | $1,225,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10429 | | HANN, KERRY | $19,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10430 | | CAPUCHINO, VALERY | $1,225,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10431 | | ALLARD, CAROLYN RUTH | $450,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | JJACKOWSKI@JOHNSONBECKER.COM; MJOHNSON@JOHNSONBECKER.COM |
| 10432 | | HANH, KERRY | $19,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10433 | | FRASE, STACI | $385,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10434 | | MCGEE, DELIA ANN | $695,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10435 | 715012610 | PITTSBURGH FLUID SYSTEMS LLC | $1,851.49 | Disputed | PO BOX 4155 | | | PITTSBURGH | PA | 15202 | 4127619463 X125 | JANICE.GATT@SWAGELOK.COM |
| 10436 | | HESS, CLINT | $350,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10437 | | MCBRIDE, STEVEN | $135,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10438 | | WILDER, SUZETTE | $245,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10439 | | RUSH, TERRELL | $115,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10440 | | HADNOT, MYLASIA | $340,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10441 | | KARIM, KHADIJA | $625,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10442 | | ULLOA, OTNIEL | $97,500.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10443 | | DOTSON, BENJAMIN | $2,475,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10444 | | DOTSON, BENJAMIN | $2,475,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10445 | | DOTSON, BENJAMIN | $2,475,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10446 | | GINESIN, SAMANTHA | $925,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10447 | | GINESIN, SAMANTHA | $925,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10448 | | HARMS, BLAZE | $2,125,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10449 | | HARMS, BLAZE | $2,125,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10450 | | HARMS, BLAZE | $2,125,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10451 | | JOHNSON, BENJAMIN | $1,225,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10452 | | JOHNSON, BENJAMIN | $1,225,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10453 | | MERKT, COURTNEY R | $2,125,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10454 | | MERKT, COURTNEY R | $2,125,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10455 | | RUSSELL, LINDSEY | $825,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10456 | | RUSSELL, LINDSEY | $825,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10457 | | WILLIAMS, MOLLIE | $775,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10458 | | WILLIAMS, MOLLIE | $775,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10459 | | MERKT, COURTNEY R | $2,125,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10460 | | MERKT, COURTNEY R | $2,125,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | 7204209800 | GEM@MCLLF.COM |
| 10461 | | RIGGS, RICHARD | $175,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10462 | | BAKER, SAMANTHA | $1,500,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10463 | | BAKER, SAMANTHA | $1,500,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10464 | | SATTERWHITE, ELISHA | $785,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10465 | | BAKER, SAMANTHA | $1,500,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | 9545155000 | JASON@VICTIMAID.COM |
| 10466 | | SUMMERS, JOSHUA LEE | $300,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10467 | | PADILLA, YASHIRA | $785,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10468 | | WOLCOTT, GABRIELLE | $495,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10469 | | ALLARD, CAROLYN RUTH | $450,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10471 | | ANGUIANA, ELISA | $395,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10472 | | ARMFIELD, BRADLEY | $325,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10473 | | BADDERS, DEVIN | $300,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10474 | | CHRISTIE, BALDERAS | $350,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10475 | | BARR, SHAYANNA | $595,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10476 | | DAVIS, ANALYSIA | $360,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10477 | | DOSS, DARRYL | $345,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10478 | | ESPINOZA, BRAULIO | $395,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10479 | | DAVIS, TERRAIL | $400,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10480 | 715010060 | MERIDIAN IT | $20,709.53 | Disputed | C/O LEVIN GINSBURG | ATTN HOWARD L TEPLINSKY | 180 N LASALLE ST, STE 3200 | CHICAGO | IL | 60601 | 3123680100 | HTEPLINSKY@LEVINGINSBURG.COM |
| 10481 | | ESPINOZA, BRAULIO | $395,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10482 | | EATHRIDGE, NIKATA | $315,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10483 | | CHAVIS, RITA | $395,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10485 | | ZASK, WILLIAM | $230,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | |
| 10486 | | COX, APRIL | $365,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10487 | | ZASK, KERRY | $450,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10488 | | ZASK, KERRY | $450,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10489 | | ZASK, KERRY | $450,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10490 | | ZASK, WILLIAM JR | $230,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10491 | | NEWELL, KERI LYNN | $340,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |
| 10492 | | NELSON, DAVID CHARLES | $135,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | 6124361802 | MJOHNSON@JOHNSONBECKER.COM |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10493 | | WOLCOTT, GABRIELLE | $495,000.00 | Disputed | C/O JOHNSON BECKER, PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10494 | | MEFFORD, MELYSSA ANNE | $420,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10495 | | WILSON, AMY | $385,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10496 | | 84.51 LLC | $41,300.00 | Disputed | ATTN MEG WAGNER PIEDEL | 1014 VINE ST | | CINCINNATI | OH | 45202 | | 5137624329; 5137624989 | | MEG.WAGNER@KROGER.COM; KYLE.GRUBBS@KROGER.COM |
| 10499 | | WILDER, SUZETTE | $245,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10500 | | LEWIS, JEFFERY FRANK | $325,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10501 | | MILLS, JAMES KEVIN | $325,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10502 | | SWANSON, GREGORY | $110,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10503 | | ESPINOZA, BRAULIO JAVIER | $395,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10504 | | WATSON, LAQUANA | $725,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10506 | | WILSON, AMY | $385,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10507 | | FORD, RAE'NIEK | $725,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10508 | | WALKER, KEONE JUCORY | $575,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10509 | | GIL, OLGA V | $135,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10511 | | JOHNSON, TAMMY | $285,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10512 | | ULLOA, OTNIEL | $97,500.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10513 | | JONES, ERIKA | $795,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10514 | | DALEY, TISHA | $115,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10515 | | LEE, MICHELLE | $1,450,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10516 | | LOPEZ, MARIA C | $365,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10517 | | DRAYTON, ROSALINA | $790,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10518 | | TRINH, MAI | $650,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10519 | | MCINTIRE, DONNA | $250,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10520 | | NEEL, WILLOW | $75,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10521 | | NEVMERZHYTSKYY, DMITRO | $375,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10522 | | EASLEY, ANGIE | $365,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10523 | | PARACHUTING PENGUINS | $3,103.95 | Disputed | 1201 S WALTON BLVD, STE 101 | | | BENTONVILLE | AR | 72712 | | 4798450808 | | PROUTON@NWAPENGUINS.COM |
| 10524 | | THOMAS, BRANDON | $1,150,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN ADAM J KRESS | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10525 | | SWANSON, GREGORY | $110,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN ADAM J KRESS | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10526 | | CHAVIS, RITA | $395,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10527 | | SUMMERS, JOSHUA LEE | $300,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10528 | | FRANTOM, JAMIE | $335,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10529 | | STOUDEMIRE, BRITTNEY | $375,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10530 | | REKHELIS, EVELINA | $745,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10531 | | WALKER, KEONE JUCORY | $575,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10532 | | CZARNOWSKI DISPLAY SERVICE INC | $10,004.36 | Disputed | ATTN KELLY CHERF | 2287 S BLUE ISLAND AVE | | CHICAGO | IL | 60608 | | 7739205071 | | KCHERF@CZARNOWSKI.COM |
| 10535 | | AMX LOGISTICS | $1,800.00 | Disputed | PO BOX 487 | | | ASHFORD | AL | 36312 | | 8884547145 | | DBUTLER@AMXTRUCKING.COM |
| 10536 | | FRAZIER, CHRISTINA NUNLEY | $335,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10538 | | STOUDEMIRE, BRITTNEY | $375,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10540 | | MORRIS, BRENDA SUE | $245,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10541 | | SCALONE, DINA | $475,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10542 | | TRINH, MAI | $650,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10543 | | SATTERWHITE, ELISHA | $785,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10544 | | FISHER, DANIEL | $135,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10545 | | FORD, RAE'NIEK | $725,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10546 | | RUSH, TERRELL | $115,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10547 | 715017870 | VERTIV CORPORATION | $26,627.40 | Disputed | C/O VORYS SATER SEYMOUR AND PEASE LLP | ATTN TIFFANY STRELOW COBB | 52 E GAY ST | COLUMBUS | OH | 43215 | | 6144648322 | 4402816140 | TSCOBB@VORYS.COM |
| 10548 | | FRANTOM, JAMIE | $335,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10549 | | ROBINSON, TIMYA | $425,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10550 | | FRASE, STACI | $385,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10551 | | GAINES, TIERA | $480,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10552 | | RIGGS, RICHARD | $175,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10553 | | FRAZIER, CHRISTINA NUNLEY | $335,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10554 | | GIL, OLGA V | $135,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10555 | | REKHELIS, EVELINA | $745,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10556 | | HADNOT, MYLASIA | $340,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10557 | | HATCHER, FRED | $495,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10558 | | HAZELTON, KOCHA | $345,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10559 | | HESS, CLINT | $350,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10560 | | JOHNSON, TAMMY | $285,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10561 | | JONES, ERIKA | $795,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10562 | | NG, BY AND THROUGH BRITTANY GONZALEZ | $0.00 | Disputed | C/O CAIN & SKARNULIS PLLC | ATTN RYAN CHAPPLE | 303 COLORADO ST, STE 2850 | AUSTIN | TX | 78701 | | 5124775000 | 2157721000 | RCHAPPLE@CSTRIAL.COM |
| 10563 | | KARIM, KHADIJA | $625,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10564 | | KLEIN, MEGAN | $365,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10565 | | OC, BY AND THROUGH BRITTANY GONZALEZ | $0.00 | Disputed | C/O CAIN & SKARNULIS PLLC | ATTN RYAN CHAPPLE | 303 COLORADO ST, STE 2850 | AUSTIN | TX | 78701 | | 5124775000 | 2157721000 | RCHAPPLE@CSTRIAL.COM |
| 10566 | | GONZALEZ, BRITTANY | $0.00 | Disputed | C/O CAIN & SKARNULIS PLLC | ATTN RYAN CHAPPLE | 303 COLORADO ST, STE 2850 | AUSTIN | TX | 78701 | | 5124775000 | 2157721000 | RCHAPPLE@CSTRIAL.COM |
| 10567 | | POOR, KECIA | $110,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10568 | | RL INDUSTRY CO LTD | $1,724,998.97 | Disputed | C/O TUCKER ELLIS LLP | ATTN KEITH J GRADY | 100 S 4TH ST, STE 600 | SAINT LOUIS | MO | 63102 | | 3145714979 | 3122569425 | KEITH.GRADY@TUCKERELLIS.COM |
| 10569 | | PERKINS, AMBER | $435,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10570 | | RL INDUSTRY CO LTD | $1,724,998.97 | Disputed | C/O TUCKER ELLIS LLP | ATTN KEITH J GRADY | 100 S 4TH ST, STE 600 | SAINT LOUIS | MO | 63102 | | 3145714979 | 3122569425 | KEITH.GRADY@TUCKERELLIS.COM |
| 10571 | | PEREZ-PINON, VIOLETA | $325,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10572 | | PATTON, AMANDA | $460,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10573 | | PADILLA, YASHIRA | $785,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10575 | | NEWELL, KERI | $340,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10576 | | NEVMERZHYTSKYY, DMITRO | $375,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10577 | 715009180 | LEBANON VALLEY ENGRAVING INC | $39,373.12 | Disputed | C/O TIMOTHY HUBER, ESQ | 155 N SCHOOL LN | | LANCASTER | PA | 17603 | | 7179264224 | | TJHUBERLAW@OUTLOOK.COM |
| 10578 | | NELSON, DAVID | $135,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10579 | | NELSON, CARRIE | $76,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10580 | | ANDRYCHOWSKA-KLOSEK, MARTA | $285,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10581 | | TAGLIANETTI, JENNIFER | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10582 | | NEEL, WILLOW | $75,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10583 | | TAGLIANETTI, JENNIFER | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10584 | | MARTA ANDRYCHOWSKA-KOSEK AND KK | $85,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10585 | | MYERS, LIZELL | $190,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10589 | | ANDRYCHOSKA-KLOSEK, MARTA | $285,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10590 | 715006300 | FITCH EVEN TABIN & FLANNERY LLP | $161,087.70 | Disputed | 120 S LASALLE ST, STE 2100 | | | CHICAGO | IL | 60603 | | 3126297956 | | GJPROK@FITCHEVEN.COM |
| 10591 | | ABIGAIL BRENNAN AND MJB (MINOR) | $370,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10592 | | MARTA ANDRYCHOWSKA-KLOSEK & KK | $85,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10594 | | ABIGAIL BRENNAN & MB | $45,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10595 | | WILDER, SUZETTE | $245,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10596 | | WATSON, LAQUANA | $725,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10597 | | WALKER, KEONE JUCORY | $575,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10598 | | RAMOS, ASHLEIGH NICOLE | $270,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10599 | | ASHLEIGH NICOLE RAMOS & DV | $75,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10600 | | ABIGAIL BRENNAN & MB | $45,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10601 | | CAB ASSIGNEE OF NINGBO CARELINE ELECTRIC | $813,762.85 | Disputed | 4340 FULTON AVE, THIRD FL | | | SHERMAN OAKS | CA | 91423 | | 8189904800 | | WTHOMAS@CABCOLLECTS.COM; BLM@CABCOLLECTS.COM |
| 10603 | | ULLOA, OTNIEL | $97,500.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10604 | | NINA KATHERINE PARENT & VP | $450,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10605 | | TRINH, MAI | $650,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10606 | | THOMAS, BRANDON | $1,150,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN ADAM J KRESS | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10607 | | SWANSON, GREGORY | $110,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN ADAM J KRESS | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10608 | | SUMMERS, JOSHUA LEE | $300,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10609 | | MOHIZODABEGIM KARIMOVA ET AL & SI | $1,950,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10611 | | STOUDEMIRE, BRITTNEY | $375,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10612 | | PENNINGTON, GRACE | $695,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10613 | | SCALONE, DINA | $475,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10614 | | SATTERWHITE, ELISHA | $785,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10615 | | RUSH, TERRELL | $115,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10616 | | ROBINSON, TIMYA | $425,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10617 | | LEAKE, DEBRA | $625,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10618 | | RIGGS, RICHARD | $175,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10619 | | POOR, KECIA | $110,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10620 | | REKHELIS, EVELINA | $745,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10621 | | LEE, MICHELLE | $1,450,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10622 | | PERKINS, AMBER | $435,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10623 | | PEREZ-PINON, VIOLETA | $325,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10624 | | PATTON, AMANDA | $460,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10625 | | PADILLA, YASHIRA | $785,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10627 | | NEWELL, KERI | $340,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10628 | | NEVMERZHYTSKYY, DMITRO | $375,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10630 | | NELSON, DAVID | $135,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10631 | | NELSON, CARRIE | $76,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10633 | | NEEL, WILLOW | $75,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10634 | | GLOVER, AFIA | $1,150,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10635 | | MYERS, LIZELL | $190,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10636 | | EALY, QUANISHA | $245,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10637 | | CALEF, CYNTHIA | $295,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10638 | | MULVAINE, ERIC | $435,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10639 | 715001790 | BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG | $72,147.78 | Disputed | ATTN NATHAN Q RUGG | 200 W MADISON ST, STE 3900 | | CHICAGO | IL | 60606 | | 3129843100 | | NATHAN.RUGG@BFKN.COM; MAILE.SOLIS@BFKN.COM |
| 10640 | | MORRIS, BRENDA | $245,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10641 | | MOORE, AMANDA | $215,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10642 | | MILLS, JAMES | $325,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10643 | | MEFFORD, MELYSSA | $420,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10644 | | MCINTIRE, DONNA | $250,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10645 | | MCGEE, DELIA ANN | $695,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10646 | | MCBRIDE, STEVEN | $135,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN ADAM J KRESS | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10648 | | MAGALLON, SUSANA | $375,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10649 | | LOPEZ, MARIA | $365,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10650 | | LOFTIS, VANESSA | $975,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN ADAM J KRESS | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10651 | | LEWIS, JEFFERY FRANK | $325,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10653 | | WILSON O'NEAL, ASHLEY | $2,450,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10654 | | CALEF, CYNTHIA | $295,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10655 | | AEROTEK INC | $64,778.55 | Disputed | C/O SHOOK HARDY & BACON LLP | ATTN MARK MOEDRITZER | 2555 GRAND BLVD | KANSAS CITY | MO | 64108 | | 8164746550 | | MMOEDRITZER@SHB.COM |
| 10656 | 715016000 | STUCK ENTERPRISES INC | $11,559.18 | Disputed | 1115 E HIGH ST | | | WAYNESBURG | PA | 15370 | | 7246273757 | | EGRAY@OAKLANDOIL.COM |
| 10657 | | BRENNAN, ABIGAIL | $370,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10658 | | ABIGAIL BRENNAN, ET AL & MB | $45,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10659 | | EALY, QUANISHA | $245,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10660 | | ASHLEIGH RAMOS, ET AL & DV | $75,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10661 | | RAMOS, ASHLEIGH NICOLE | $270,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10662 | | GLOVER, AFIA | $1,150,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10663 | | MGS MFG GROUP INC | $118,760.00 | Disputed | C/O GODFREY & KAHN SC | ATTN ERIN A WEST, ATTORNEY | ONE E MAIN ST, STE 500 | MADISON | WI | 53703 | | 6082842277 | 2625094153 | EWEST@GKLAW.COM |
| 10664 | | MOHIZODABEGIM KARIMOVA, ET AL & SI | $1,950,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10667 | | NINA PARENT, ET AL & VP | $450,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10669 | | HOUGHTEN, CHAD | $335,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10671 | | DIRECT TRAVEL INC | $2,017.00 | Disputed | 7900 XERXES AVE S, STE 1200 | | | MINNEAPOLIS | MN | 55431 | | 9527464391; 9527463504 | | DLEE@DT.COM; MDOMIANO@DT.COM |
| 10672 | | AUTOMATION ANYWHERE INC | $110,119.20 | Disputed | ATTN LEGAL NOTICES | 633 RIVER OAKS PKWY | | SAN JOSE | CA | 95134 | | 4086206220; 6199770090 | | LEGALNOTICES@AUTOMATIONANYWHERE.COM |
| 10674 | | CORNING INCORPORATED | $757,877.04 | Disputed | C/O FRANTZ WARD LLP | ATTN JOHN KOSTELNIK | 200 PUBLIC SQ, STE 3000 | CLEVELAND | OH | 44114 | | 2165151636 | | JKOSTELNIK@FRANTZWARD.COM |
| 10675 | | CORNING INCORPORATED | $44,197.32 | Disputed | C/O FRANTZ WARD LLP | ATTN JOHN KOSTELNIK | 200 PUBLIC SQ, STE 3000 | CLEVELAND | OH | 44114 | | 2165151636 | | JKOSTELNIK@FRANTZWARD.COM |
| 10676 | 715012510 | PIETRAGALLO GORDONALFANO BOSICK RASPANTI | $82,859.01 | Disputed | ATTN DENNIS MEHIGAN | 301 GRANT ST | ONE OXFORD CENTRE, 38TH FL | PITTSBURGH | PA | 15219 | | 4122632000 | | DM@PIETRAGALLO.COM |
| 10677 | | PENNINGTON, GRACE | $695,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10680 | 715002590 | CENTIMARK CORPORATION | $1,684.01 | Disputed | 12 GRANDVIEW CIR | | | CANONSBURG | PA | 15317 | | 7245148584 | | RICHARD.BUEHLER@CENTIMARK.COM |
| 10681 | | UNIFIRST CORPORATION | $117,823.68 | Disputed | 1 E BROWARD BLVD, STE 1800 | | | FORT LAUDERDALE | FL | 33301 | | 9549854177 | | YDANESHFAR@BECKERLAWYERS.COM |
| 10683 | 715002800 | CHAMPION AWARDS INC | $948.00 | Disputed | 3649 WINPLACE RD | | | MEMPHIS | TN | 38118 | | 9018015455; 9013654830 | | SHERGENRADER@CHAMPIONPROMOTION.COM |
| 10684 | | JUSI, GABRIEL | $350,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10685 | 715014860 | SHAWLEY'S SUPERIOR LP GAS SO FINE INC | $926.12 | Disputed | 18034 SHAWLEY DR | | | HAGERSTOWN | MD | 21740 | | 3017974887 X205 | | JMCALLISTER@SHAWLEYSGAS.COM |
| 10688 | | FOSTER, COURTNEY | $445,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10690 | | JUSI, GABRIEL | $350,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10693 | | HOUGHTEN, CHAD | $335,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10695 | | CLINTON WILSON, ET AL & KWH | $995,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10696 | | CLINTON WILSON, ET AL & KWH | $995,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10697 | | CRAIG, ROICE | $390,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10698 | | CRAIG, ROICE | $390,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN ADAM J KRESS | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10699 | | HERNANDEZ, JORDANNA | $375,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10702 | | HERNANDEZ, JORDANNA | $375,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10706 | | O'NEAL, ASHLEY WILSON | $2,450,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10709 | | RODRIGUEZ, KATHERINE RENEE | $595,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10710 | | RODRIGUEZ, KATHERINE RENEE | $595,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10711 | | KOENIG, NANCY L | $745,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10712 | | KOENIG, NANCY L | $745,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10713 | | MCDERMOTT, MARK | $195,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10714 | | MCDERMOTT, MARK | $195,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10717 | | YP LEE MOCK & PARTNERS | $11,456.12 | Disputed | 12F DAELIM ACROTEL, 13 EONJU-RO 30-GIL | | | GANGNAM-GU, SEOUL 06292 | | | REPUBLIC OF KOREA | 8225888585 | | IPLAW@LEEMOCK.COM |
| 10718 | | ITOH AND EBI | $4,065.16 | Disputed | 4F DSG HAMAMATSU-CHO BLDG. | 11-7, HAMAMATSU-CHO 1-CHOME, | MINATO-KU, | TOKYO 105-0013 | | | JAPAN | 818050754485 | | ITOYITOHPAT@GMAIL.COM; IP@ITOHPAT.COM |
| 10719 | 715004540 | CROSS TECHNOLOGIES INC | $4,339.18 | Disputed | 4400 PIEDMONT PKWY | | | GREENSBORO | NC | 27410 | | 3366609186 | | KEN.CHILDRESS@CROSSCO.COM |
| 10721 | 715011430, 715011440 | OHIO DEPARTMENT OF TAXATION | $13,724.51 | Disputed | ATTN BANKRUPTCY DIVISION | PO BOX 530 | | COLUMBUS | OH | 43216 | | 6147526864 | | BANKRUPTCYDIVISION@TAX.OHIO.GOV |
| 10722 | | BURGESS, KEYOLONDA | $325,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10723 | | SCALONE, DINA | $475,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10724 | | CROWELL & MORING LLP | $1,030,848.46 | Disputed | ATTN WILLIAM H FRANKEL | 455 N CITYFRONT PLAZA DR | NBC TOWER, STE 3600 | CHICAGO | IL | 60611 | | 3123217736 | | WFRANKEL@CROWELL.COM |
| 10725 | | CROWELL & MORING LLP | $1,030,848.46 | Disputed | ATTN WILLIAM H FRANKEL | 455 N CITYFRONT PLAZA DR | NBC TOWER, STE 3600 | CHICAGO | IL | 60611 | | 3123217736 | | WFRANKEL@CROWELL.COM |
| 10726 | | LEAKE, DEBRA | $625,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJACKOWSKI@JOHNSONBECKER.COM |
| 10728 | 715015260 | SOLUDOC INC | $0.00 | Disputed | 202-1115, RUE DE LOUVAIN EST | | | MONTRÉAL | QC | H2M 2E6 | CANADA | 5143889652 | 5143889652 X221 | RCORBEIL@SOLUDOC.COM |
| 10731 | 715014200 | SALESFORCE INC | $55,682.88 | Disputed | C/O BIALSON BERGEN & SCHWAB | ATTN LAWRENCE SCHWAB & GAYE HECK | 830 MENLO AVE, STE 201 | MENLO PARK | CA | 94025 | | 6508579500 | | GHECK@BBSLAW.COM |
| 10732 | | BRENNAN, ABIGAIL | $370,000.00 | Disputed | C/O JOHNSON BECKER PLLC | 444 CEDAR ST, STE 1800 | | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10733 | | WATSON, LAQUANA | $725,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10735 | | PERKINS, AMBER | $435,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10736 | 715001310 | AQFABRICATION LLC | $8,215.96 | Disputed | 232 CHERRY ST | | | ITHACA | NY | 14850 | | 6072733706 | 6072734200 | HRB@MILLERMAYER.COM |
| 10737 | | CLEVELAND BROTHERS EQUIPMENT CO INC | $10,706.00 | Disputed | 4565 WILLIAM PENN HWY | | | MURRYSVILLE | PA | 15668 | | 7243259257 | | DHOUGH@CLEVELANDBROTHERS.COM |
| 10738 | | AQFABRICATION LLC | $8,215.96 | Disputed | 232 CHERRY ST | | | ITHACA | NY | 14850 | | 6072733706 | | HRB@MILLERMAYER.COM |
| 10739 | | LITTLE, JESSICA | $0.00 | Disputed | C/O CORY WATSON ATTORNEYS | 2131 MAGNOLIA AVE | | BIRMINGHAM | AL | 35205 | | 2053282200 | | APITTMAN@CORYWATSON.COM |
| 10740 | | LITTLE, JESSICA | $0.00 | Disputed | C/O CORY WATSON ATTORNEYS | 2131 MAGNOLIA AVE S | | BIRMINGHAM | AL | 35205 | | 2053282200 | | APITTMAN@CORYWATSON.COM |
| 10741 | | WATSON-COOPER, ELLA | $0.00 | Disputed | C/O CORY WATSON ATTORNEYS | 2131 MAGNOLIA AVE S | | BIRMINGHAM | AL | 35205 | | 2053282200 | | APITTMAN@CORYWATSON.COM |
| 10742 | | WATSON-COOPER, ELLA | $0.00 | Disputed | C/O CORY WATSON ATTORNEYS | 2131 MAGNOLIA AVE S | | BIRMINGHAM | AL | 35205 | | 2053282200 | | APITTMAN@CORYWATSON.COM |
| 10743 | | SELLMAN, CRYSTAL | $0.00 | Disputed | C/O CORY WATSON ATTORNEYS | 2131 MAGNOLIA AVE S | | BIRMINGHAM | AL | 35205 | | 2053282200 | | APITTMAN@CORYWATSON.COM |
| 10744 | | SELLMAN, CRYSTAL | $0.00 | Disputed | C/O CORY WATSON ATTORNEYS | 2131 MAGNOLIA AVE S | | BIRMINGHAM | AL | 35205 | | 2053282200 | | APITTMAN@CORYWATSON.COM |
| 10745 | | ESCOTO, FELIX | $0.00 | Disputed | C/O CORY WATSON ATTORNEYS | 2131 MAGNOLIA AVE S | | BIRMINGHAM | AL | 35205 | | 2053282200 | | APITTMAN@CORYWATSON.COM |
| 10746 | | ESCOTO, FELIX | $0.00 | Disputed | C/O CORY WATSON ATTORNEYS | 2131 MAGNOLIA AVE S | | BIRMINGHAM | AL | 35205 | | 2053282200 | | APITTMAN@CORYWATSON.COM |
| 10747 | | ZB, A MINOR, BY DOMINIQUE JONES, PARENT | $0.00 | Disputed | C/O CORY WATSON ATTORNEYS | 2131 MAGNOLIA AVE S | | BIRMINGHAM | AL | 35205 | | 2053282200 | | APITTMAN@CORYWATSON.COM |
| 10748 | | ZB, A MINOR, BY DOMINIQUE JONES, PARENT | $0.00 | Disputed | C/O CORY WATSON ATTORNEYS | 2131 MAGNOLIA AVE S | | BIRMINGHAM | AL | 35205 | | 2053282200 | | APITTMAN@CORYWATSON.COM |
| 10749 | | HK, A MINOR, BY LOUISE INGRAM, PARENT | $0.00 | Disputed | C/O CORY WATSON ATTORNEYS | 2131 MAGNOLIA AVE S | | BIRMINGHAM | AL | 35205 | | 2053282200 | | APITTMAN@CORYWATSON.COM |
| 10750 | | HK, A MINOR, BY LOUISE INGRAM, PARENT | $0.00 | Disputed | C/O CORY WATSON ATTORNEYS | 2131 MAGNOLIA AVE S | | BIRMINGHAM | AL | 35205 | | 2053282200 | | APITTMAN@CORYWATSON.COM |
| 10751 | | WILLIAMS, NAJAE | $0.00 | Disputed | C/O CORY WATSON ATTORNEYS | 2131 MAGNOLIA AVE S | | BIRMINGHAM | AL | 35205 | | 2053282200 | | APITTMAN@CORYWATSON.COM |
| 10752 | | WILLIAMS, NAJAE | $0.00 | Disputed | C/O CORY WATSON ATTORNEYS | 2131 MAGNOLIA AVE S | | BIRMINGHAM | AL | 35205 | | 2053282200 | | APITTMAN@CORYWATSON.COM |
| 10754 | 715007920 | INFORMATION RESOURCES INC | $120,225.37 | Disputed | 203 N LASALLE ST, STE 1500 | | | CHICAGO | IL | 60601 | | | | GENERAL.COUNSEL@CIRCANA.COM |
| 10755 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | 6123351928 | | CJ.HARAYDA@STINSON.COM |
| 10756 | | JENKINS, ROSE | $0.00 | Disputed | C/O SHEEHAN & ASSOCIATES PC | 60 CUTTERMILL RD, STE 412 | | GREAT NECK | NY | 11021 | | 5162687080 | | SPENCER@SPENCERSHEEHAN.COM |
| 10757 | | JENKINS, ROSE, AS CLASS REPRESENTATIVE | $0.00 | Disputed | C/O SHEEHAN & ASSOCIATES PC | 60 CUTTERMILL RD, STE 412 | | GREAT NECK | NY | 11021 | | 5162687080 | | SPENCER@SPENCERSHEEHAN.COM |
| 10758 | | MICHELLE HAVENS AND ELSIE WILKERSON | $0.00 | Disputed | C/O MORGAN & MORGAN COMPLEX LT GROUP | ATTN MICHAEL F RAM, MARIE N APPEL | 711 VAN NESS AVE, STE 500 | SAN FRANCISCO | CA | 94102 | | 4153586913 | | MRAM@FORTHEPEOPLE.COM; MAPPEL@FORTHEPEOPLE.COM |
| 10761 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | 6123351928 | | CJ.HARAYDA@STINSON.COM |
| 10762 | | KOENIG, NANCY L | $745,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10763 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | 6123351928 | | CJ.HARAYDA@STINSON.COM |
| 10764 | | KOENIG, NANCY L | $745,000.00 | Disputed | C/O JOHNSON BECKER PLLC | ATTN MICHAEL JOHNSON | 444 CEDAR ST, STE 1800 | SAINT PAUL | MN | 55101 | | 6124361802 | | MJOHNSON@JOHNSONBECKER.COM |
| 10765 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | 6123351928 | | CJ.HARAYDA@STINSON.COM |
| 10766 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | | | CJ.HARAYDA@STINSON.COM |
| 10767 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | 6123351928 | | CJ.HARAYDA@STINSON.COM |
| 10768 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | 6123351928 | | CJ.HARAYDA@STINSON.COM |
| 10769 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | 6123351928 | | CJ.HARAYDA@STINSON.COM |
| 10771 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | 6123351928 | | CJ.HARAYDA@STINSON.COM |
| 10772 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | | | CJ.HARAYDA@STINSON.COM |
| 10774 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | 6123351928 | | CJ.HARAYDA@STINSON.COM |
| 10776 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | | | CJ.HARAYDA@STINSON.COM |
| 10777 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | 6123351928 | | CJ.HARAYDA@STINSON.COM |
| 10779 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | 6123351928 | | CJ.HARAYDA@STINSON.COM |
| 10780 | | TARGET CORPORATION | $0.00 | Disputed | C/O STINSON LLP | ATTN CHRISTOPHER J HARAYDA | 50 S SIXTH ST, STE 2600 | MINNEAPOLIS | MN | 55402 | | 6123351928 | | CJ.HARAYDA@STINSON.COM |
| 10781 | | CINTAS CORPORATION | $0.00 | Disputed | 6800 CINTAS BLVD | | | MASON | OH | 45040 | | 5139722026 | | DEANA3@CINTAS.COM |
| 10783 | | MICHELLE HAVENS AND ELSIE WILKERSON | $0.00 | Disputed | C/O MORGAN & MORGAN COMPLEX LIT GROUP | ATTN MICHAEL F RAM, MARIE N APPEL | 711 VAN NESS AVE, STE 500 | SAN FRANCISCO | CA | 94102 | | 4153586913 | | MRAM@FORTHEPEOPLE.COM; MAPPEL@FORTHEPEOPLE.COM |
| 10784 | | MICHELLE HAVENS AND ELSIE WILKERSON | $0.00 | Disputed | C/O MORGAN & MORGAN COMPLEX LIT GROUP | ATTN MICHAEL F RAM, MARIE N APPEL | 711 VAN NESS AVE, STE 500 | SAN FRANCISCO | CA | 94102 | | 4153586913 | | MRAM@FORTHEPEOPLE.COM; MAPPEL@FORTHEPEOPLE.COM |
| 10785 | | MICHELLE HAVENS AND ELSIE WILKERSON | $0.00 | Disputed | C/O MORGAN & MORGAN COMPLEX LIT GROUP | ATTN MICHAEL F RAM, MARIE N APPEL | 711 VAN NESS AVE, STE 500 | SAN FRANCISCO | CA | 94102 | | 4153586913 | | MRAM@FORTHEPEOPLE.COM; MAPPEL@FORTHEPEOPLE.COM |
| 10786 | | MICHELLE HAVENS AND ELSIE WILKERSON | $0.00 | Disputed | C/O MORGAN & MORGAN COMPLEX LIT GROUP | ATTN MICHAEL F RAM, MARIE N APPEL | 711 VAN NESS AVE, STE 500 | SAN FRANCISCO | CA | 94102 | | 4153586913 | | MRAM@FORTHEPEOPLE.COM; MAPPEL@FORTHEPEOPLE.COM |
| 10787 | | OPEN TEXT CORPORATION | $29,970.06 | Disputed | ATTN ACCOUNTS RECEIVABLE | 275 FRANK TOMPA DR | | WATERLOO | ON | N2L 0A1 | CANADA | 5198887111 | | LISAJ@OPENTEXT.COM; ACCOUNTS.RECEIVABLE@OPENTEXT.COM |
| 10788 | | OCEAN NETWORK EXPRESS PTE LTD | $2,972.00 | Disputed | C/O OCEAN NETWORK EXPRESS (N AMERICA) | 8730 STONY POINT PKWY, STE 400 | | RICHMOND | VA | 23235 | | | | JOSEPH.MAKHOUL@ONE-LINE.COM |
| 10789 | | COFFIN, REVA | $0.00 | Disputed | 23550 CENTER RIDGE RD, STE 103 | | | WESTLAKE | OH | 44145 | | 2162237535 | | TNELSON@ROBENALTLAW.COM |
| 10791 | | GODINHO, KEERTHIKA | $141,243.72 | Disputed | C/O MCPHADDEN SAMAC TUOVI LLP | 161 BAY ST, 27TH FL | | TORONTO | ON | M5J 2S1 | CANADA | 4166011020 | | BMCPHADDEN@MCST.CA |
| 10792 | | CANTRELLE, DAVID | $0.00 | Disputed | C/O IRPINO AVIN & HAWKINS LAW FIRM | ATTN JOHN REED POOLE | 2216 MAGAZINE ST | NEW ORLEANS | LA | 70130 | | 5045251500 | | RPOOLE@IRPINOLAW.COM; REEDPOOLE@IRPINOLAW.COM |
| 10793 | | MOON, ELIZABETH | $156,253.88 | Disputed | 21A LAKESHORE RD | | | BOXFORD | MA | 01921 | | 6175046592 | | ES.MOON@VERIZON.NET |
| 10794 | | MG | $42,556.44 | Disputed | C/O MCPHADDEN SAMAC TUOVI LLP | 161 BAY ST, 27TH FL | | TORONTO | ON | M5J 2S1 | CANADA | 4166011020 | | BMCPHADDEN@MCST.CA |
| 10795 | | GODINHO, MICHAEL | $4,000.00 | Disputed | C/O MCPHADDEN SAMAC TUOVI LLP | 161 BAY ST, 27TH FL | | TORONTO | ON | M5J 2S1 | CANADA | 4166011020 | | BMCPHADDEN@MCST.CA |
| 10796 | | UPS SCS CANADA LTL | $176,229.67 | Disputed | C/O FAEGRE DRINKER BIDDLE & REATH LLP | ATTN MARIA CHO | 1800 CENTURY PARK E, STE 1500 | LOS ANGELES | CA | 90067 | | 3102034000 | | MARIA.CHO@FAEGREDRINKER.COM |
| 10797 | | UPS CANADA MAIL INNOVATIONS | $13,915.77 | Disputed | C/O FAEGRE DRINKER BIDDLE & REATH LLP | ATTN MARIA CHO | 1800 CENTURY PARK E, STE 1500 | LOS ANGELES | CA | 90067 | | 3102034000 | | MARIA.CHO@FAEGREDRINKER.COM |
| 10798 | | UPS SMALL PACKAGE | $498,417.43 | Disputed | C/O FAEGRE DRINKER BIDDLE & REATH LLP | ATTN MARIA CHO | 1800 CENTURY PARK E, STE 1500 | LOS ANGELES | CA | 90067 | | 3102034000 | | MARIA.CHO@FAGREDRINKER.COM |
| 10799 | | UPS SCS PROFESSIONAL SERVICES | $6,800.00 | Disputed | C/O FAEGRE DRINKER BIDDLE & REATH LLP | ATTN MARIA CHO | 1800 CENTURY PARK E, STE 1500 | LOS ANGELES | CA | 90067 | | 3102034000 | | MARIA.CHO@FAGREDRINKER.COM |
| 10800 | | UPS CUSTOM HOUSE BROKERAGE | $2,735.91 | Disputed | C/O FAEGRE DRINKER BIDDLE & REATH LLP | ATTN MARIA CHO | 1800 CENTURY PARK E, STE 1500 | LOS ANGELES | CA | 90067 | | 3102034000 | 5709693302 | MARIA.CHO@FAGREDRINKER.COM |
| 10801 | | OHIO DEPARTMENT OF TAXATION | $14,102.23 | Disputed | ATTN BANKRUPTCY DIVISION | PO BOX 530 | | COLUMBUS | OH | 43216 | | 6147526864 | | BANKRUPTCYDIVISION@TAX.OHIO.GOV |
| 10802 | | OHIO DEPARTMENT OF TAXATION | $3,119.16 | Disputed | ATTN BANKRUPTCY DIVISION | PO BOX 530 | | COLUMBUS | OH | 43216 | | 6147526864 | | BANKRUPTCYDIVISION@TAX.OHIO.GOV |
| 10803 | | SEA LTD | $76,816.50 | Disputed | 7001 BUFFALO PKWY | | | COLUMBUS | OH | 43229 | | 8007826851 | | SSHULTZ@SEALIMITED.COM |



CONFIDENTIAL 

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10804 | | SANDS, SUSAN | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10805 | | SANDS, SUSAN | $850,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10806 | | SNYDER, JENNIFER | $1,500,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10807 | | SNYDER, JENNIFER | $1,500,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10808 | 715010140, 715010150 | MICHIGAN DEPARTMENT OF TREASURY | $198.12 | Disputed | ATTN BANKRUPTCY UNIT | PO BOX 30168 | | LANSING | MI | 48909 | | 5172415002 | 5173357584 | GOLDENT2@MICHIGAN.GOV |
| 10809 | | MISSISSIPPI DEVELOPMENT AUTHORITY | $0.00 | Disputed | PO BOX 849 | | | JACKSON | MS | 39205 | | 6013592850 | | PROBERTS@MISSISSIPPI.ORG |
| 10810 | 715008830 | KOENIG & BAUER KAMMANN (US) INC | $25,040.57 | Disputed | 235 HERITAGE AVE | | | PORTSMOUTH | NH | 03801 | | 9784630050 | | KWOOD@KAMMANN.COM |
| 10811 | | EVEREST TRANSPORTATION SYSTEMS LLC | $9,521.10 | Disputed | 200 N LASALLE ST, STE 2950 | | | CHICAGO | IL | 60601 | | 3127625302 | 3122107086 | LEGAL@EVEREST-TS.COM |
| 10812 | | PENSION BENEFIT GUARANTY CORPORATION | $0.00 | Disputed | C/O OGC; ATTN SARAH MEIMAN | 445 12TH ST NW | | WASHINGTON | DC | 20024 | | 2027186167 | 2022293460 | MEIMAN.SARAH@PBGC.GOV |
| 10813 | | PENSION BENEFIT GUARANTY CORPORATION | $12,056,250.00 | Disputed | C/O OGC; ATTN SARAH MEIMAN | 445 12TH ST NW | | WASHINGTON | DC | 20024 | | 2027186167 | 2022293460 | MEIMAN.SARAH@PBGC.GOV |
| 10814 | | PENSION BENEFIT GUARANTY CORPORATION | $20,200,000.00 | Disputed | C/O OGC; ATTN SARAH MEIMAN | 445 12TH ST NW | | WASHINGTON | DC | 20024 | | 2027186167 | 2022293460 | MEIMAN.SARAH@PBGC.GOV |
| 10815 | | CINTAS CORPORATION | $364.99 | Disputed | 6800 CINTAS BLVD | | | MASON | OH | 45040 | | 5139722026 | | DEANA3@CINTAS.COM |
| 10816 | | ABM ELECTRICAL POWER SOLUTIONS LLC | $1,950.00 | Disputed | 317 COMMERCE PARK DR | | | CRANBERRY TOWNSHIP | PA | 16066 | | 7247724638 | 7245914999 | DIANE.FREDERICKS@ABM.COM |
| 10817 | | OREGON DEPARTMENT OF REVENUE | $0.00 | Disputed | 955 CENTER ST NE | | | SALEM | OR | 97301-2555 | | 5039472107 | | ROBERT.BRUDERS@DOR.OREGON.GOV |
| 10818 | 715008800 | KITTCH INC | $20,000.00 | Disputed | 379 W BROADWAY | | | NEW YORK | NY | 10012 | | 6316729796 | | ANDREA@KITTCH.COM |
| 10819 | | PECK, REGINA | $200,000.00 | Disputed | C/O CHAFFIN LUHANA LLP | 600 THIRD AVE, 12TH FL | | NEW YORK | NY | 10016 | | 8884801123 | | COHN@CHAFFINLUHANA.COM |
| 10821 | | GLOBAL DATA CONSULTANTS LLC | $450.00 | Disputed | 1144 KENNEBEC DR | | | CHAMBERSBURG | PA | 17201 | | 7172622080 X248 | 7172622080 X206 | KRISTINBARD@GDCIT.COM |
| 10822 | | SECURITAS SECURITY SERVICES USA INC | $128,625.09 | Disputed | 9 CAMPUS DR | | | PARSIPPANY | NJ | 07054 | | | | EBONEE.JOHNSON@SECURITASINC.COM |
| 10823 | | GLOBAL DATA CONSULTANTS LLC | $450.00 | Disputed | 1144 KENNEBEC DR | | | CHAMBERSBURG | PA | 17201 | | 7172622080 X248 | 7172622080 X206 | KRISTINBARD@GDCIT.COM |
| 10824 | | C H REED INC | $136,385.95 | Disputed | 301 POPLAR ST | | | HANOVER | PA | 17331 | | 8006927216 X165 | | ACCOUNTSRECEIVABLE@CHREED.COM |
| 10825 | | ILLINOIS DEPARTMENT OF REVENUE | $0.00 | Disputed | ATTN BANKRUPTCY UNIT | PO BOX 19035 | | SPRINGFIELD | IL | 62794 | | 2175579474 | | REV.BANKRUPTCY@ILLINOIS.GOV |
| 10826 | | MASSACHUSETTS DEPARTMENT OF REVENUE | $33.20 | Disputed | ATTN BANKRUPTCY | PO BOX 7090 | | BOSTON | MA | 02204-7090 | | 6176263875 | 4134523837 | JOYCES@DOR.STATE.MA.US |
| 10827 | | MARGLE MEDIA LLC | $40,000.00 | Disputed | 312 9TH AVE SE, STE B | | | WATERTOWN | SD | 57201 | | 6058782677 | | ACCOUNTING@MARGLEMEDIA.COM |
| 10828 | | MARGLE MEDIA LLC | $25,000.00 | Disputed | 312 9TH AVE SE, STE B | | | WATERTOWN | SD | 57201 | | 6058782677 | | ACCOUNTING@MARGLEMEDIA.COM |
| 10829 | | OHIO DEPARTMENT OF TAXATION | $9,626.08 | Disputed | ATTN BANKRUPTCY DIVISION | PO BOX 530 | | COLUMBUS | OH | 43216-0530 | | 6147526864 | | BANKRUPTCYDIVISION@TAX.OHIO.GOV |
| 10830 | | RI DIVISION OF TAXATION | $857.50 | Disputed | 1 CAPITOL HILL | DEPT #300 | | PROVIDENCE | RI | 02908 | | 4015748967 | | CRYSTAL.COTE@TAX.RI.GOV |
| 10831 | 715013840, 715013850 | RI DIVISION OF TAXATION | $871.50 | Disputed | 1 CAPITOL HILL | DEPT #300 | | PROVIDENCE | RI | 02908 | | 4015748967 | | CRYSTAL.COTE@TAX.RI.GOV |
| 10832 | 715007910 | INFOLAWGROUP LLP | $127,251.50 | Disputed | 150 S WACKER DR, STE 2400 | | | CHICAGO | IL | 60606 | | 6302849213 | | INFO@INFOLAWGROUP.COM |
| 10833 | | ILLINOIS DEPARTMENT OF REVENUE | $82.94 | Disputed | ATTN BANKRUPTCY UNIT | PO BOX 19035 | | SPRINGFIELD | IL | 62794 | | 2175579474 | | REV.BANKRUPTCY@ILLINOIS.GOV |
| 10834 | | GARCIA, SERENA RENEE | $1,500,000.00 | Disputed | C/O HERRMAN & HERRMAN PLLC | ATTN CARY TOLAND | 855 E HARRISON ST | BROWNSVILLE | TX | 78520 | | 3618824357 | 9568151280 | CTOLAND@HERRMANANDHERRMAN.COM |
| 10835 | | GAINES, GINA | $750,000.00 | Disputed | C/O HERRMAN & HERRMAN PLLC | ATTN CARY TOLAND | 855 E HARRISON ST | BROWNSVILLE | TX | 78520 | | 3618824357 | 9568151280 | CTOLAND@HERRMANANDHERRMAN.COM |
| 10839 | | TREASURER OF STATE, STATE OF IOWA | $0.00 | Disputed | 321 E 12TH ST | | | DES MOINES | IA | 50319 | | 5152817546 | | UPREPORT@TOS.IOWA.GOV |
| 10840 | | STATE TREASURER, STATE OF IOWA | $0.00 | Disputed | 321 E 12TH ST | | | DES MOINES | IA | 50319 | | 5152817546 | | UPREPORT@TOS.IOWA.GOV |
| 10841 | | TREASURER OF STATE, STATE OF IOWA | $0.00 | Disputed | 321 E 12TH ST | | | DES MOINES | IA | 50319 | | 5152817546 | | UPREPORT@TOS.IOWA.GOV |
| 10842 | | WEST VIRGINIA STATE TREASURER'S OFFICE | $0.00 | Disputed | ATTN MINDY MOORE, UNCLAIMED PROPERTY | 322 70TH ST SE | | CHARLESTON | WV | 25064 | | 3043401587 | 3043401587 | MINDY.MOORE@WVSTO.COM |
| 10843 | | NEW CENTURY CAREERS | $4,000.00 | Disputed | 305 E CARSON ST | | | PITTSBURGH | PA | 15219 | | 4125644794 | | HARRIS@NCSQUARED.COM |
| 10844 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10845 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10846 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10847 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10848 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10849 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10850 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10851 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10852 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10853 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10854 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10855 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10856 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10857 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10858 | | CORNELL CAPITAL LLC AND AFFILIATES | $6,982,588.76 | Disputed | C/O KRAMER LEVIN NAFTALIS & FRANKEL LLP | ATTN RACHAEL L RINGER; ANDREW J CITRON | 1177 AVENUE OF THE AMERICAS | NEW YORK | NY | 10036-2714 | | 2127159100 | | RRINGER@KRAMERLEVIN.COM; ACITRON@KRAMERLEVIN.COM |
| 10859 | | ISTRE, MONICA | $850,000.00 | Disputed | 2883 EXECUTIVE PARK DR, STE 103 | | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10860 | | ISTRE, MONICA | $850,000.00 | Disputed | 2883 EXECUTIVE PARK DR, STE 103 | | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10861 | | KENSINGTON GREY INTERNATIONAL INC | $25,000.00 | Disputed | 2100 KINGS HWY, UNIT 778 | | | PORT CHARLOTTE | FL | 33980 | | 6472893535 | | SEAN@KENSINGTONGREY.CO |
| 10862 | | COLE-PARMER INSTRUMENT COMPANY | $5,267.94 | Disputed | 625 E BUNKER CT | | | VERNON HILLS | IL | 60061 | | 8473275724 | | LAURA.ALBRECHT@ANTYLIA.COM |
| 10863 | | BANKS, JEFFERY M | $1,500,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10864 | | BANKS, JEFFERY M | $1,500,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10865 | | BANKS, JEFFERY M | $1,500,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10866 | | BANKS, JEFFERY M | $1,500,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10867 | | LAFLEUR, ROXANA | $1,500,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10868 | | LAFLEUR, ROXANA | $1,500,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10869 | | LAFLEUR, ROXANA | $1,500,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10870 | | LAFLEUR, ROXANA | $1,500,000.00 | Disputed | C/O MCLAUGHLIN LAW FIRM PC | ATTN GEORGE E MCLAUGHLIN | 1890 GAYLORD ST | DENVER | CO | 80206-1211 | | 7204209800 | | GEM@MCLLF.COM |
| 10871 | | OWENS, SEBESTIAN | $5,000,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10872 | | OWENS, SEBESTIAN | $5,000,000.00 | Disputed | C/O LAW OFFICES OF JASON TURCHIN | 2883 EXECUTIVE PARK DR, STE 103 | | WESTON | FL | 33331 | | 9545155000 | | JASON@VICTIMAID.COM |
| 10874 | | RM HEADLEE CO INC | $8,016.77 | Disputed | 3649 CALIFORNIA RD | | | ORCHARD PARK | NY | 14127 | | 7166629813 | 3152727948 | JLAUCHERT@RMHEADLEE.COM |
| 10875 | | MISSISSIPPI DEPARTMENT OF REVENUE | $12,015.00 | Disputed | ATTN BANKRUPTCY SECTION | PO BOX 22808 | | JACKSON | MS | 39225-2808 | | 6019237393 | | BANKRUPTCY@DOR.MS.GOV |
| 10878 | | PIXLEE TURNTO INC | $111,400.00 | Disputed | 2443 FILLMORE ST, #380-18 | | | SAN FRANCISCO | CA | 94115-1814 | | | | LEGAL@EMPLIFI.IO |
| | 715003100 | CITY OF MESA | $0.00 | Disputed | PO BOX 1466 | | | MESA | AZ | 85211-1466 | | | | |
| | 715012390 | PENNSYLVANIA ONE CALL SYSTEM, INC. | $4.00 | Disputed | PO BOX 640407 | | | PITTSBURGH | PA | 15264-0407 | | | | |
| | 715017780 | VERIZON | $20.00 | Disputed | PO BOX 15124 | | | ALBANY | NY | 12212-5124 | | | | |
| | 715016790 | TIKTOK INC. | $41.00 | Disputed | 5800 BRISTOL PKWY, SUITE 100 | | | CULVER CITY | CA | 90230 | | | | |
| | 715004350 | COUNTWISE LLC | $84.00 | Disputed | 1149 SAWGRASS CORPORATE PARKWAY | | | SUNRISE | FL | 33323 | | | | |
| | 715018000 | VOIANCE LANGUAGE SERVICES LLC | $85.00 | Disputed | PO BOX 74008101 | | | CHICAGO | IL | 60674-8101 | | | | |
| | 715014810 | SHANNON OPTICAL COMPANY, INC | $88.00 | Disputed | 368 COMMERCIAL ST # 200 | | | BRIDGEVILLE | PA | 15017-2347 | | | | |
| | 715005970 | EXAMINETICS, INC. | $90.00 | Disputed | PO BOX 410047 | | | KANSAS CITY | MO | 64141-0047 | | | | |
| | 715014020 | ROADRUNNER TRANSPORTATION SERVICES | $90.00 | Disputed | 1431 OPUS PLACE, SUITE 530 | | | DOWNERS GROVE | IL | 60515 | | | | |
| | 715001220 | APPLIED HEALTH, INC. | $94.00 | Disputed | 2986 INDUSTRIAL BLVD | | | BETHEL PARK | PA | 15102 | | | | |
| | 715014140 | S & S ELECTRIC MOTORS, INC | $96.00 | Disputed | 125 FALLING SPRING ROAD | | | CHAMBERSBURG | PA | 17201 | | | | |
| | 715017120 | U.S. DEPARTMENT OF STATE | $96.00 | Disputed | 518 23RD STREET NW. SA-1 | | | WASHINGTON | DC | 20520 | | | | |
| | 715002450 | CAPITAL LIGHTING & SUPPLY, LLC | $108.00 | Disputed | PO BOX 404749 | | | ATLANTA | GA | 30384-4749 | | | | |
| | 715012570 | PITNEY BOWES PURCHASE POWER | $109.00 | Disputed | PO BOX 981039 | | | BOSTON | MA | 02298-1039 | | | | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 715000950 | ALLIED ELECTRONICS INC. | $115.00 | Disputed | PO BOX 841811 | | | DALLAS | TX | 75284-1811 | | | | |
| | 715011070 | NICOR GAS | $119.00 | Disputed | PO BOX 5407 | | | CAROL STREAM | IL | 60197-5407 | | | | |
| | 715012450 | PETERS SUPPLY, INC. | $121.00 | Disputed | PO BOX 1276 | 1120 MAGEE STREET | | ELMIRA | NY | 14902 | | | | |
| | 715003390 | COMCAST | $124.00 | Disputed | PO BOX 37601 | | | PHILADELPHIA | PA | 19101-0601 | | | | |
| | 715007300 | HETRICK GLASS | $125.00 | Disputed | PO BOX 881 | | | ELMIRA | NY | 14902 | | | | |
| | 715004340 | COUNTRYSIDE ENERGY SERVICES, LLC | $128.00 | Disputed | 8794 STATE ROUTE 415 | | | CAMPBELL | NY | 14821 | | | | |
| | 715013310 | RADIAL, INC | $142.00 | Disputed | PO BOX 204113 | | | DALLAS | TX | 75320-4114 | | | | |
| | 715017810 | VERIZON BUSINESS | $143.00 | Disputed | PO BOX 15043 | | | ALBANY | NY | 12212-5043 | | | | |
| | 715017940 | VILLAGE OF NORRIDGE | $145.00 | Disputed | 4000 N. OLCOTT AVENUE | | | NORRIDGE | IL | 60706-1199 | | | | |
| | 715008170 | J B HUNT TRANSPORT, INC. | $150.00 | Disputed | PO BOX 98545 | | | CHICAGO | IL | 60693-8545 | | | | |
| | 715015390 | SPECTRIO LLC | $153.00 | Disputed | PO BOX 890271 | | | CHARLOTTE | NC | 28289-0271 | | | | |
| | 715010450 | MILLER PROCESS COATING COMPNY, INC | $160.00 | Disputed | 309 SOUTH MAIN STREET | | | PITTSBURGH | PA | 15220 | | | | |
| | 715007930 | INNOVATIVE SIGNAGE SYSTEMS, INC. | $173.00 | Disputed | 6321 SOUTH SALINA STREET | | | NEDROW | NY | 13120-1026 | | | | |
| | 715015760 | STERICYCLE, INC. | $173.00 | Disputed | PO BOX 6582 | | | CAROL STREAM | IL | 60197-6582 | | | | |
| | 715009220 | LEGENDARY STAFFING INC. | $174.00 | Disputed | PO BOX 28630 | | | ANAHEIM HILLS | CA | 92809 | | | | |
| | 715017250 | UNIFIRST CORPORATION | $176.00 | Disputed | PO BOX 650481 | | | DALLAS | TX | 75265-0481 | | | | |
| | 715014100 | RR DONNELLEY | $182.00 | Disputed | PO BOX 93514 | | | CHICAGO | IL | 60673-3514 | | | | |
| | 715010990 | NEWARK INONE | $198.00 | Disputed | 33190 COLLECTION CENTER DRIVE | | | CHICAGO | IL | 60693-0331 | | | | |
| | 715001540 | AT&T | $198.00 | Disputed | PO BOX 5014 | | | CAROL STREAM | IL | 60197-5014 | | | | |
| | 715011560 | ONE NETWORK ENTERPRISES, INC. | $200.00 | Disputed | 4055 VALLEY VIEW LANE, STE 1000 | | | DALLAS | TX | 75244 | | | | |
| | 715000750 | AGILIX SOLUTIONS | $203.00 | Disputed | PO BOX 955722 | MAIN POST OFFICE | | ST. LOUIS | MO | 63195-5722 | | | | |
| | 715018030 | W.N. VAN ALSTINE & SONS, INC. | $211.00 | Disputed | PO BOX 380 | 18 NEW COURTLAND STREET | | COHOES | NY | 12047 | | | | |
| | 715003080 | CITY LOGISTICS AND TRANSPORT INC | $223.00 | Disputed | PO BOX 894833 | | | LOS ANGELES | CA | 90189 | | | | |
| | 715001500 | ASSOCIATED BAG COMPANY | $228.00 | Disputed | PO BOX 3285 | | | MILWAUKEE | WI | 53201-3285 | | | | |
| | 715003500 | COMMERCIAL TECHNICAL SERVICES, INC | $243.00 | Disputed | PO BOX 126 | | | HOUSTON | PA | 15342 | | | | |
| | 715002380 | CALIFORNIA TRAVEL &TOURISM | $244.00 | Disputed | 555 CAPITOL MALL, SUITE 1100 | | | SACRAMENTO | CA | 95814 | | | | |
| | 715006830 | GES EXPOSITION SERVICES, INC. | $247.00 | Disputed | 7000 LINDELL ROAD | | | LAS VEGAS | NV | 89118 | | | | |
| | 715011800 | OUTSOLVE | $250.00 | Disputed | 3330 WEST ESPLANADE AVE | | | METAIRIE | LA | 70002 | | | | |
| | 715013330 | RADIATION DETECTION COMPANY | $259.00 | Disputed | 3527 SNEAD DRIVE | | | GEORGETOWN | TX | 78626 | | | | |
| | 715003430 | COMCAST CABLE | $264.00 | Disputed | PO BOX 37601 | | | PHILADELPHIA | PA | 19101-0601 | | | | |
| | 715006340 | FLEXLINK SYSTEMS, INC. | $274.00 | Disputed | PO BOX 71209 | MAIL CODE 5646 | | CHARLOTTE | NC | 28272-1209 | | | | |
| | 715002610 | CENTRYCO, INC. | $283.00 | Disputed | 300 WEST BROAD STREET | | | BURLINGTON | NJ | 08016 | | | | |
| | 715017820 | VERIZON BUSINESS | $284.00 | Disputed | PO BOX 15043 | | | ALBANY | NY | 12212-5043 | | | | |
| | 715005830 | EMBASSY OF THE STATE OF KUWAIT | $300.00 | Disputed | 2940 TILDEN STREET NW | | | WASHINGTON | DC | 20008 | | | | |
| | 715018400 | WEST TENNESSEE COMMUNICATIONS | $303.00 | Disputed | 1295A HIGHWAY 51 BY-PASS NORTH | | | DYERSBURG | TN | 38024 | | | | |
| | 715004380 | COX BUSINESS | $329.00 | Disputed | PO BOX 650957 | | | DALLAS | TX | 75265-0957 | | | | |
| | 715001200 | APPLICANT | $338.00 | Disputed | PO BOX 1555 | ONE PYREX PLACE | | ELMIRA | NY | 14902-1555 | | | | |
| | 715006680 | GABLER TRUCKING, INC. | $339.00 | Disputed | 5195 TECHNOLOGY AVENUE | | | CHAMBERSBURG | PA | 17201 | | | | |
| | 715005050 | DELUXE BUSINESS FORMS | $340.00 | Disputed | PO BOX 4656 | | | CAROL STREAM | IL | 60197-4656 | | | | |
| | 715005790 | ELMIRA HEAT TREATING, INC. | $348.00 | Disputed | 407 SO KINYON ST | | | ELMIRA | NY | 14904 | | | | |
| | 715017060 | TUNG HSING TRANSFER PRINTING CO LTD | $350.00 | Disputed | 1 NEI HU RD, | | | TAIWAN | | | CHINA | | | |
| | 715001330 | ARAMARK UNFORM & CAREER APPAREL GRP | $352.00 | Disputed | 2680 PALUMBO DRIVE STE 100 | | | LEXINGTON | KY | 40509 | | | | |
| | 715008880 | KONICA MINOLTA BUSINESS | $358.00 | Disputed | DEPT CH 19188 | | | PALATINE | IL | 60055-9188 | | | | |
| | 715016970 | TRI-STATE INDUSTRIAL SOLUTIONS, INC | $363.00 | Disputed | 2701 BEALE AVE | | | ALTOONA | PA | 16601 | | | | |
| | 715016910 | TOYOTA INDUSTRIES COMMERCIAL | $369.00 | Disputed | PO BOX 660926 | | | DALLAS | TX | 75266-0926 | | | | |
| | 715001270 | APPLIED MEASUREMENT & CONTROL | $376.00 | Disputed | 314 HOGAN ROAD | | | FAIRPORT | NY | 14450 | | | | |
| | 715002390 | CALTRONIX, INC. | $383.00 | Disputed | 235 MIDDLE ROAD SUITE 100 | | | HENRIETTA | NY | 14467 | | | | |
| | 715010820 | NAPA AUTO PARTS | $406.00 | Disputed | 350 PARK AVENUE | | | CORNING | NY | 14830-3436 | | | | |
| | 715010870 | NCH CORPORATION | $437.00 | Disputed | 23261 NETWORK PLACE | | | CHICAGO | IL | 60673-1232 | | | | |
| | 715005400 | DOING BETTER BUSINESS, INC | $443.00 | Disputed | 14500 BYERS RD | | | HAGERSTOWN | MD | 21742 | | | | |
| | 715002970 | CHIZ BROS. INC. | $453.00 | Disputed | 2117 LINCOLN BLVD | | | ELIZABETH | PA | 15037 | | | | |
| | 715007400 | HISCO, INC. | $460.00 | Disputed | PO BOX 679472 | | | DALLAS | TX | 75267-9472 | | | | |
| | 715016060 | SURPLUS TWO WAY RADIOS | $460.00 | Disputed | 1516 S GRAND AVE | | | SANTA ANA | CA | 92705-4409 | | | | |
| | 715000910 | ALL AMERICA - PHILLIP'S FLOWER SHOP | $463.00 | Disputed | 529 N. GRANT STREET | | | WESTMONT | IL | 60559 | | | | |
| | 715003490 | COMMERCIAL FIRE, INC. | $468.00 | Disputed | 2465 ST. JOHNS BLUFF ROAD SOUTH | | | JACKSONVILLE | FL | 32246 | | | | |
| | 715004180 | CORVUS OF NW ARKANSAS | $471.00 | Disputed | 16 A WORTHINGTON ACCESS DR | | | MARYLAND HEIGHTS | MO | 63043 | | | | |
| | 715015990 | STS OPERATING INC. | $473.00 | Disputed | 23851 NETWORK PLACE | | | CHICAGO | IL | 60673-1238 | | | | |
| | 715010700 | MOTION & CONTROL ENTERPRISES, LLC | $492.00 | Disputed | PO BOX 775888 | | | CHICAGO | IL | 60677 | | | | |
| | 715008160 | ITHACA DISPATCH INC. | $499.00 | Disputed | 1156 MAGEE STREET | | | ELMIRA | NY | 14901 | | | | |
| | 715009620 | MANUFACTURING AUTOMATION SYSTEMS, L | $500.00 | Disputed | 15 E. PULTENEY STREET | | | CORNING | NY | 14830 | | | | |
| | 715017070 | TWIN TIER TOOL INC | $516.00 | Disputed | PO BOX 524 | 206 LATTA BROOK INDUSTRIAL PARK | | HORSEHEADS | NY | 14845 | | | | |
| | 715007740 | IFM EFECTOR, INC. | $518.00 | Disputed | PO BOX 8538-307 | | | PHILADELPHIA | PA | 19171-0307 | | | | |
| | 715012830 | PPT HOLDINGS I, LLC | $534.00 | Disputed | 5910 LANDERBROOK DRIVE | | | MAYFIELD HEIGHTS | OH | 44124 | | | | |
| | 715002980 | CHROMALOX, INC. | $537.00 | Disputed | PO BOX 536435 | | | ATLANTA | GA | 30353 | | | | |
| | 715015360 | SPANG POWER ELECTRONICS | $537.00 | Disputed | PO BOX 644328 | | | PITTSBURGH | PA | 15264-4328 | | | | |
| | 715017740 | VERIFONE INC. | $540.00 | Disputed | 4060 SOLUTIONS CENTER | | | CHICAGO | IL | 60677 | | | | |
| | 715008550 | KAMAN AUTOMATION INC. | $558.00 | Disputed | 1000 UNIVERSITY AVE SUITE 800 | | | ROCHESTER | NY | 14607 | | | | |
| | 715001120 | AMERICAN HIGH PERFORMANCE SEALS | $578.00 | Disputed | 408 HIGH TECH DR. | | | OAKDALE | PA | 15071 | | | | |
| | 715006260 | FINZER ROLLER INC. | $580.00 | Disputed | 6556 SOLUTION CENTER | | | CHICAGO | IL | 60677-6005 | | | | |
| | 715004150 | CORPORATE IT SOLUTIONS, INC. | $600.00 | Disputed | 1023 CALLE SOMBRA | | | SAN CLEMENTE | CA | 92673 | | | | |
| | 715013660 | REID'S WELDING, LLC | $600.00 | Disputed | 120 CALVIN DRIVE | | | HEDGESVILLE | WV | 25427 | | | | |
| | 715002990 | CINTAS CORPORATION | $601.00 | Disputed | PO BOX 631025 | | | CINCINNATI | OH | 45263-1025 | | | | |
| | 715013200 | QUALITY SUPPORT, LLC | $611.00 | Disputed | 900 WATER STREET | | | SCOTTDALE | PA | 15683 | | | | |
| | 715002310 | BURRTEC WASTE GROUP, INC | $638.00 | Disputed | PO BOX 515842 | | | LOS ANGELES | CA | 90051-3142 | | | | |
| | 715015370 | SPECIALTY SUPPLY COMPANY | $644.00 | Disputed | PO BOX 6767 | 112-31ST STREET | | WHEELING | WV | 26003 | | | | |
| | 715012290 | PCS COMPANY | $666.00 | Disputed | 34488 DOREKA DRIVE | | | FRASER | MI | 48026-0069 | | | | |
| | 715007560 | HSA BANK | $708.00 | Disputed | PO BOX 939 | 605 N 8TH STREET | | SHEBOYGAN | WI | 53081-4525 | | | | |
| | 715008680 | KERCHER INDUSTRIES, INC. | $724.00 | Disputed | 920 MECHANIC STREET | | | LEBANON | PA | 17046 | | | | |
| | 715001190 | APPARATUS REPAIR & ENGINEERING, INC | $728.00 | Disputed | 17500 YORK ROAD | | | HAGERSTOWN | MD | 21740 | | | | |
| | 715010570 | MITTEN FLUIDPOWER INC | $755.00 | Disputed | PO BOX 2877 | | | SYRACUSE | NY | 13220-2877 | | | | |
| | 715003530 | COMPLETE COMPUTER SERVICES LLC | $770.00 | Disputed | 3216 NW AVIGNON WAY STE 2 | | | BENTONVILLE | AR | 72712-4193 | | | | |
| | 715011580 | ONE RING NETWORKS, INC. | $772.00 | Disputed | PO BOX 1360 | 1799 ENTERPRISE ST | | ATHENS | TX | 75751 | | | | |
| | 715014610 | SEAL & DESIGN ROCHESTER INC. | $787.00 | Disputed | 3333 BRIGHTON HENRIETTA TOWN LINE R | | | ROCHESTER | NY | 14623 | | | | |
| | 715001940 | BENCHMARK DESIGN | $800.00 | Disputed | NO. 11, JINXIA ROAD, JINXIA DISTRIC | DONGGUAN | | 190 | | 523852 | CHINA | | | |
| | 715006650 | FUSION CERAMICS, INC. | $800.00 | Disputed | PO BOX 127 | | | CARROLLTON | OH | 44615 | | | | |
| | 715007720 | I.D. BOOTH ELECTRICAL INC. | $805.00 | Disputed | PO BOX 579 | 620 WILLIAM STREET | | ELMIRA | NY | 14902 | | | | |
| | 715002340 | C.P. WARD, INC. | $814.00 | Disputed | PO BOX 900 | | | SCOTTSVILLE | NY | 14546 | | | | |
| | 715012560 | PITNEY BOWES CREDIT CORPORATION | $842.00 | Disputed | PO BOX 981039 | | | BOSTON | MA | 02298-1039 | | | | |
| | 715002460 | CAPS VISUAL COMMUNICATIONS LLC | $849.00 | Disputed | 25990 NETWORK PLACE | | | CHICAGO | IL | 60673-1259 | | | | |
| | 715017050 | TULPEHOCKEN SPRING WATER | $865.00 | Disputed | 301 SOUTH ANTRIM WAY | | | GREENCASTLE | PA | 17225 | | | | |
| | 715004980 | DECALS & MORE, INC. | $882.00 | Disputed | 20 COMMERCE AVE | | | GREENCASTLE | PA | 17225 | | | | |
| | 715017850 | VERIZON WIRELESS | $922.00 | Disputed | PO BOX 15124 | | | ALBANY | NY | 12212-5124 | | | | |
| | 715005850 | EMI CORPORATION | $936.00 | Disputed | PO BOX PO BOX 590 | | | JACKSON CENTER | OH | 45334 | | | | |
| | 715012600 | PITTSBURGH BOLT & SUPPLY CO | $956.00 | Disputed | 114 VIP DRIVE | | | WEXFORD | PA | 15090 | | | | |
| | 715011730 | ORACLE ELEVATOR HOLDCO, INC. | $980.00 | Disputed | PO BOX 850001 | DEPT #9901 | | ORLANDO | FL | 32885-9901 | | | | |

GUC Register as of February 27, 2024

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 715002220 | BROOK-ANCO CORPORATION | $980.00 | Disputed | 7536 WEST MURRY DRIVE | | | CICERO | NY | 13039 | | | | |
| | 715017830 | VERIZON BUSINESS | $994.00 | Disputed | PO BOX 15043 | | | ALBANY | NY | 12212-5043 | | | | |
| | 715007180 | GUYSON CORPORATION OF USA | $1,002.00 | Disputed | 13 GRANDE BLVD | | | SARATOGA SPRINGS | NY | 12866 | | | | |
| | 715009340 | LINDE GAS & EQUIPMENT INC. | $1,025.00 | Disputed | PO BOX 382000 | | | PITTSBURGH | PA | 15250-8000 | | | | |
| | 715010750 | MSC INDUSTRIAL SUPPLY CO. INC. | $1,033.00 | Disputed | PO BOX 953635 | | | SAINT LOUIS | MO | 63195-3635 | | | | |
| | 715000960 | ALLIED ELECTRONICS INC. | $1,038.00 | Disputed | PO BOX 841811 | | | DALLAS | TX | 75284-1811 | | | | |
| | 715010670 | MON VALLEY YMCA | $1,045.00 | Disputed | 101 TAYLOR RUN RD. | | | MONONGAHELA | PA | 15063 | | | | |
| | 715002000 | BIG'S SANITATION, INC | $1,050.00 | Disputed | 475 WEST NEWTON RD | | | ELIZABETH | PA | 15037 | | | | |
| | 715009970 | MEMPHIS ICE MACHINE RENTALS COMPANY | $1,070.00 | Disputed | 4130 DELP STREET | | | MEMPHIS | TN | 38118 | | | | |
| | 715016710 | THOMSON REUTERS (TAX & ACCOUNTING ) | $1,092.00 | Disputed | 2395 MIDWAY ROAD | | | CARROLLTON | TX | 75006 | | | | |
| | 715013130 | PURE WATER PARTNERS LLC | $1,092.00 | Disputed | 123 S. 3RD AVENUE #28 | | | SANDPOINT | ID | 83864 | | | | |
| | 715010420 | MIDWEST BUSINESS GROUP ON HEALTH | $1,100.00 | Disputed | 125 S. WACKER DR., STE 1350 | | | CHICAGO | IL | 60606 | | | | |
| | 715017860 | VERIZON WIRELESS | $1,101.00 | Disputed | PO BOX 15124 | | | ALBANY | NY | 12212-5124 | | | | |
| | 715013440 | RAVEN CARGO, INC. | $1,134.00 | Disputed | 954 W. WASHINGTON BLVD., SUITE 200 | | | CHICAGO | IL | 60607 | | | | |
| | 715013280 | R.E. MICHEL COMPANY, INC. | $1,143.00 | Disputed | PO BOX 70510 | | | PHILADELPHIA | PA | 19176-0510 | | | | |
| | 715004970 | DAVIS-ULMER SPRINKLER CO., INC. | $1,188.00 | Disputed | PO BOX 412007 | | | BOSTON | MA | 02241-2007 | | | | |
| | 715007210 | HALL GRIFFIN LLP | $1,190.00 | Disputed | 1851 E. FIRST STREET, 10TH FLOOR | | | SANTA ANA | CA | 92705 | | | | |
| | 715001800 | BARCODE PRINTER SERVICES, LTD | $1,202.00 | Disputed | 11 ALGER ROAD | | | ROCHESTER | NY | 14624 | | | | |
| | 715010980 | NEW YORK STATE SALES TAX | $1,250.00 | Disputed | PO BOX 1208 | | | NEW YORK | NY | 10116-1208 | | | | |
| | 715007200 | HAGERSTOWN CANTEEN SERVICE, INC. | $1,261.00 | Disputed | 10500 GOVERNOR LANE BLVD. | | | WILLIAMSPORT | MD | 21795 | | | | |
| | 715016170 | TEAM WASTE MEMPHIS HOLDINGS, LLC | $1,282.00 | Disputed | 850 WINGO ROAD | | | BYHALIA | MS | 38611 | | | | |
| | 715008480 | WEIMER,JONATHAN | $1,296.00 | Disputed | 85 DENISON PKWY E #165 | | | CORNING | NY | 14830 | | | | |
| | 715003460 | COMED | $1,326.00 | Disputed | PO BOX 6111 | BILL PAYMENT CENTER | | CAROL STREAM | IL | 60197-6111 | | | | |
| | 715016290 | TELECHECK SERVICES, INC. | $1,386.00 | Disputed | PO BOX 60028 | | | CITY OF INDUSTRY | CA | 91716-0028 | | | | |
| | 715016560 | THE PRUDENTIAL INSURANCE COMPANY OF | $1,428.00 | Disputed | PO BOX 101241 | | | ATLANTA | GA | 30392-1241 | | | | |
| | 715011860 | P F SHERMAN COMPANY, INC. | $1,429.00 | Disputed | 3727 POPLAR AVE | | | PITTSBURGH | PA | 15234-9990 | | | | |
| | 715013320 | RADIATE HOLDINGS, LP | $1,444.00 | Disputed | 650 COLLEGE RD E | | | PRINCETON | NJ | 08540 | | | | |
| | 715004370 | COVERS-ALL CANVAS PRODUCTS INC. | $1,450.00 | Disputed | 3594 WASHINGTON AVENUE | | | FINLEYVILLE | PA | 15332 | | | | |
| | 715015720 | STEPAN COMPANY | $1,460.00 | Disputed | PO BOX 13799 | | | NEWARK | NJ | 07188-0799 | | | | |
| | 715013140 | PURE WATER PARTNERS LLC | $1,492.00 | Disputed | 123 S. 3RD AVENUE #28 | | | SANDPOINT | ID | 83864 | | | | |
| | 715017200 | ULINE | $1,500.00 | Disputed | 12575 ULINE DRIVE | | | PLEASANT PRAIRIE | WI | 53158 | | | | |
| | 715008640 | KENNAMETAL STELLITE, L.P. | $1,544.00 | Disputed | PO BOX 6330 | | | CAROL STREAM | IL | 60197-6381 | | | | |
| | 715001830 | BAUMGARDNER ENTERPRISES, INC. | $1,597.00 | Disputed | PO BOX 13 | 179 MEADOW ST. | | SIDMAN | PA | 15955 | | | | |
| | 715004820 | SWILER, DANIEL R | $1,600.00 | Disputed | 6684 MILL RIDGE RD | | | MAUMEE | OH | 43537 | | | | |
| | 715003660 | CONNECT PARENT CORPORATION | $1,602.00 | Disputed | 1120 SOUTH TRYON STREET, SUITE 700 | | | CHARLOTTE | NC | 28203 | | | | |
| | 715003250 | COLDIRON FUEL INCORPORATED | $1,643.00 | Disputed | 2000 COLLEGE AVE. | | | ELMIRA | NY | 14901 | | | | |
| | 715003470 | COMED | $1,654.00 | Disputed | PO BOX 6111 | BILL PAYMENT CENTER | | CAROL STREAM | IL | 60197-6111 | | | | |
| | 715010460 | MILLER SCREEN & DESIGN, INC. | $1,691.00 | Disputed | PO BOX 506 | MARS-VALENCIA ROAD | | MARS | PA | 16046 | | | | |
| | 715012140 | VARGAS, PATRICIA | $1,732.00 | Disputed | 31 CONNISTON AVENUE | | | OTTAWA | ON | K2H 5H9 | CANADA | | | |
| | 715018960 | YRP INDUSTRIES INC. | $1,787.00 | Disputed | PO BOX 444 | 854 MAHONING AVENUE | | YOUNGSTOWN | OH | 44501-0444 | | | | |
| | 715014960 | SIAK TRANSFERS LIMITED | $1,807.00 | Disputed | LASCELLES STREET, TUNSTALL | | | STOKE ON TRENT | ST | ST65DB | UNITED KINGDOM | | | |
| | 715008540 | KALEIDOSCOPE IMAGING, INC. | $1,808.00 | Disputed | 700 N SACRAMENTO BLVD., STE 265 | | | CHICAGO | IL | 60612 | | | | |
| | 715015670 | STATE SYSTEMS LLC | $1,812.00 | Disputed | 1861 VANDERHORN DR | | | MEMPHIS | TN | 38134 | | | | |
| | 715005840 | EMEDCO | $1,812.00 | Disputed | PO BOX 95904 | | | CHICAGO | IL | 60694-9200 | | | | |
| | 715000160 | AB FLOW-TEK | $1,825.00 | Disputed | PO BOX 23317 | | | ROCHESTER | NY | 14692 | | | | |
| | 715001430 | ARROW CONVEYOR EQUIPMENT, INC. | $1,840.00 | Disputed | PO BOX 808 | 2132 PENFIELD ROAD | | PENFIELD | NY | 14526 | | | | |
| | 715004330 | COUCH WHITE, LLP | $1,847.00 | Disputed | 540 BROADWAY | | | ALBANY | NY | 12207 | | | | |
| | 715015970 | STRATASYS, INC | $1,890.00 | Disputed | 7665 COMMERCE WAY | | | EDEN PRAIRIE | MN | 55344 | | | | |
| | 715007660 | HUSKY INJECTION MOLDING SYSTEM | $1,901.00 | Disputed | 55 AMHERST VILLA RD. | | | BUFFALO | NY | 14225 | | | | |
| | 715006860 | GILROY PREMIUM OUTLETS, LLC | $1,937.00 | Disputed | PO BOX 827762 | | | PHILADELPHIA | PA | 19182-7762 | | | | |
| | 715017790 | VERIZON | $1,937.00 | Disputed | PO BOX 15124 | | | ALBANY | NY | 12212-5124 | | | | |
| | 715000180 | ABM ELECTRICAL POWER SOLUTIONS, LLC | $1,950.00 | Disputed | 317 COMMERCE DRIVE | | | CRANBERRY TOWNSHIP | PA | 16066 | | | | |
| | 715001950 | BENNEY TECHNICAL SALES | $1,971.00 | Disputed | 3000 VILLAGE RUN ROAD | | | WEXFORD | PA | 15090 | | | | |
| | 715009960 | MEMPHIS AIR CONDITIONING AND HEATIN | $1,985.00 | Disputed | 2125 HILLSHIRE CIRCLE | | | MEMPHIS | TN | 38133 | | | | |
| | 715006400 | FORD MOTOR COMPANY | $1,988.00 | Disputed | PO BOX 650573 | | | DALLAS | TX | 75265-0573 | | | | |
| | 715015500 | SPS COMMERCE, INC. | $1,993.00 | Disputed | PO BOX 205782 | | | DALLAS | TX | 75320-5782 | | | | |
| | 715004870 | DAVID M. LEWIS COMPANY, LLC | $2,000.00 | Disputed | 21800 OXNARD ST., STE 980 | | | WOODLAND HILLS | CA | 91367 | | | | |
| | 715005570 | E-BATES SHOPPING COM INC | $2,000.00 | Disputed | 800 CONCAR DRIVE | | | SAN MATEO | CA | 94402 | | | | |
| | 715009500 | LUMESCA GROUP LIMITED | $2,000.00 | Disputed | SPECTRUM POINT, 164 CLAPGATE LANE | | | BIRMINGHAM | | B32 3DE | UNITED KINGDOM | | | |
| | 715014570 | SCOTT ELECTRIC | $2,024.00 | Disputed | PO BOX S | | | GREENSBURG | PA | 15601-0899 | | | | |
| | 715018810 | X-RITE, INCORPORATED | $2,091.00 | Disputed | PO BOX 633354 | | | CINCINNATI | OH | 45263-3354 | | | | |
| | 715004860 | DAVID KOHL HOLDINGS INC | $2,097.00 | Disputed | 314 SOUTH WATER STREET | | | KITTANNING | PA | 16201 | | | | |
| | 715019140 | ZORIN RESOURCES INC. | $2,100.00 | Disputed | 18811 FORTROSE GARDEN CT. | | | TOMBALL | TX | 77377 | | | | |
| | 715005740 | ELECTRICAL TESTING SERVICES, INC. | $2,150.00 | Disputed | 6570 GRIMES ROAD | | | JORDAN | NY | 13080 | | | | |
| | 715012540 | PITNEY BOWES | $2,175.00 | Disputed | PO BOX 981039 | | | BOSTON | MA | 02298-1039 | | | | |
| | 715007710 | I-SHRED INCORPORATED | $2,235.00 | Disputed | 1217 JOSHUA TREE ROAD | | | CALIMESA | CA | 92320 | | | | |
| | 715005580 | E-PALLET, INC. | $2,300.00 | Disputed | 14701 DETROIT AVE., SUITE 750 | | | LAKEWOOD | OH | 44107 | | | | |
| | 715006330 | FIVES NORTH AMERICAN COMBUSTION INC | $2,302.00 | Disputed | PO BOX 715287 | | | COLUMBUS | OH | 43271-5287 | | | | |
| | 715012940 | PREMIUM RETAIL SERVICES, INC. | $2,356.00 | Disputed | 618 SPIRIT DRIVE | | | CHESTERFIELD | MO | 63005 | | | | |
| | 715001530 | ASTON CARTER, INC. | $2,406.00 | Disputed | 3689 COLLECTIONS CENTER DRIVE | | | CHICAGO | IL | 60693 | | | | |
| | 715002680 | CERTASITE, LLC | $2,442.00 | Disputed | 9855 CROSSPOINT BLVD, SUITE 126 | | | INDIANAPOLIS | IN | 46256 | | | | |
| | 715008590 | KAPLAN CONTAINER CORP | $2,451.00 | Disputed | 15 JETVIEW DR. | | | ROCHESTER | NY | 14624 | | | | |
| | 715007040 | GRAPEK COMPANY | $2,484.00 | Disputed | PO BOX 598 | | | SCOTCH PLAINS | NJ | 07076 | | | | |
| | 715018450 | WHITE ADR SERVICES, LLC | $2,498.00 | Disputed | 102 MINNOCK DRIVE | | | MARS | PA | 16046 | | | | |
| | 715005520 | DS-SL HOLDINGS, LLC | $2,513.00 | Disputed | 1400 UNIVERSAL AVE | 0 | | KANSAS CITY | MO | 64120 | | | | |
| | 715001660 | B.M. KRAMER & COMPANY, INC. | $2,540.00 | Disputed | 69 SOUTH 20TH STREET | | | PITTSBURGH | PA | 15203 | | | | |
| | 715001110 | AMERICAN FOOD AND VENDING SVC INC. | $2,561.00 | Disputed | METROPOLITAN PARK DRIVE #124 | | | LIVERPOOL | NY | 13088 | | | | |
| | 715006140 | FEDERAL EXPRESS / FEDEX | $2,567.00 | Disputed | PO BOX 371461 | | | PITTSBURGH | PA | 15250-7461 | | | | |
| | 715012370 | PENN PALLET INC. | $2,568.00 | Disputed | PO BOX 5044 | | | GREENSBURG | PA | 15601-5058 | | | | |
| | 715010630 | MODERN TRANSPORTATION SERVICES, LLC | $2,648.00 | Disputed | 1050 STATION STREET | | | CORAOPOLIS | PA | 15108 | | | | |
| | 715010840 | NATIONAL DIAGNOSTICS | $2,653.00 | Disputed | 305 PATTON DRIVE | | | ATLANTA | GA | 30336 | | | | |
| | 715009610 | MANPOWER, INC. | $2,690.00 | Disputed | PO BOX 64597 | | | BALTIMORE | MD | 21264-4597 | | | | |
| | 715002320 | BUTLER GAS PRODUCTS COMPANY | $2,696.00 | Disputed | 110 NICHOL AVENUE | | | MCKEES ROCKS | PA | 15136 | | | | |
| | 715003240 | COGNEX CORPORATION | $2,716.00 | Disputed | ONE VISION DRIVE | 0 | | NATICK | MA | 01760-2059 | | | | |
| | 715002510 | CARRIER VIBRATING EQUIPMENT, INC. | $2,731.00 | Disputed | DEPT 8343 | | | CAROL STREAM | IL | 60122-8343 | | | | |
| | 715002850 | CHARTER COMMUNICATIONS | $2,798.00 | Disputed | PO BOX 223085 | | | PITTSBURGH | PA | 15251-2085 | | | | |
| | 715009910 | MCPEAK COMPANY INC | $2,805.00 | Disputed | 111 MONARCH DRIVE | | | LIVERPOOL | NY | 13088 | | | | |
| | 715018470 | WILLIAMS SCOTSMAN, INC. | $2,814.00 | Disputed | 4646 E VAN BUREN ST. SUITE 400 | | | PHOENIX | AZ | 85008 | | | | |
| | 715016880 | TOWN OF BYHALIA | $2,826.00 | Disputed | PO BOX 412 | | | BYHALIA | MS | 38611 | | | | |
| | 715009740 | MARSHALL COUNTY WATER ASSOCIATION | $2,833.00 | Disputed | 512 WINGO RD | | | BYHALIA | MS | 38611 | | | | |
| | 715007750 | IGS INDUSTRIES | $2,836.00 | Disputed | PO BOX 368 | 200 COUNTRY CLUB ROAD | | MEADOW LANDS | PA | 15347 | | | | |
| | 715009350 | LINDE GAS & EQUIPMENT, INC. | $2,859.00 | Disputed | PO BOX 382000 | | | PITTSBURGH | PA | 15250-8000 | | | | |
| | 715000500 | ADT COMMERCIAL LLC | $2,930.00 | Disputed | PO BOX 872987 | | | KANSAS CITY | MO | 64187-2987 | | | | |
| | 715005270 | DIMON & BACORN, INC. | $2,931.00 | Disputed | 93 INDUSTRIAL PARK BOULEVARD | | | ELMIRA | NY | 14901 | | | | |
| | 715013710 | RETRIEVEX HOLDINGS CORP. | $2,965.00 | Disputed | PO BOX 310511 | | | DES MOINES | IA | 50331-0511 | | | | |
| | 715011570 | ONE NETWORK EXPRESS PTE LTD | $2,972.00 | Disputed | 8730 STONY POINT PARKWAY | | | RICHMOND | VA | 23235 | | | | |


CONFIDENTIAL

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 715013190 | QUAD-STATE AIR COMPRESSOR SALES SVC | $3,000.00 | Disputed | 362 SOUTH CARLISLE ST | | | GREENCASTLE | PA | 17225 | | | | |
| | 715011370 | O'HARE MECHANICAL CONTRACTORS, INC. | $3,100.00 | Disputed | 951 OAKTON ST. | | | ELK GROVE VILLAGE | IL | 60007 | | | | |
| | 715009930 | MDCTEC SERVICES GMBH | $3,124.00 | Disputed | FRIEDRICHSHAFENER STR. 3 | | | GILCHING | 09 | 82205 | GERMANY | | | |
| | 715005590 | E.A. LANGENFELD ASSOCIATES LTD | $3,132.00 | Disputed | 1250 FEEHANVILLE DRIVE, SUITE 100 | | | MOUNT PROSPECT | IL | 60056 | | | | |
| | 715012470 | PHENIX LLC | $3,151.00 | Disputed | PO BOX 14585 | | | ROCHESTER | NY | 14614 | | | | |
| | 715006480 | FORTUNE-TECH HOME APPLIANCES CO., L | $3,246.00 | Disputed | JOINT FACTORY BUILDING 2, NO. 21 KE | | | ZHUHAI | | 519085 | CHINA | | | |
| | 715017800 | VERIZON | $3,276.00 | Disputed | PO BOX 15124 | | | ALBANY | NY | 12212-5124 | | | | |
| | 715014060 | TALARICO, RONALD F. | $3,286.00 | Disputed | 2150 KOPPERS BUILDING, 436 SEVENTH | | | PITTSBURGH | PA | 15219 | | | | |
| | 715002890 | CHEMTREAT, INC | $3,295.00 | Disputed | 15045 COLLECTION CENTER DRIVE | | | CHICAGO | IL | 60693 | | | | |
| | 715003480 | COMMERCE TECHNOLOGIES, INC. | $3,309.00 | Disputed | SUITE 327 255 FULLER ROAD | | | ALBANY | NY | 12203-3640 | | | | |
| | 715002010 | BIG'S TRUCKING, INC | $3,317.00 | Disputed | 475 WEST NEWTON ROAD | | | ELIZABETH | PA | 15037 | | | | |
| | 715016050 | SUPPLYFORCE | $3,326.00 | Disputed | PO BOX 788581 | | | PHILADELPHIA | PA | 19178-8581 | | | | |
| | 715007670 | HUSTON INDUSTRIAL SALES CO., INC | $3,341.00 | Disputed | 35 PENWOOD PLACE | | | WARRENDALE | PA | 15086 | | | | |
| | 715012670 | PMR INC. | $3,395.00 | Disputed | 1615 OGDEN AVENUE | | | OSWEGO | IL | 60543 | | | | |
| | 715006150 | FEDEX FREIGHT ECONOMY SERVICE | $3,403.00 | Disputed | PO BOX 371461 | | | PITTSBURGH | PA | 15250-7461 | | | | |
| | 715016570 | THE QUARTZ COMPANY | $3,413.00 | Disputed | PO BOX 309 | | | SPRUCE PINE | NC | 28777 | | | | |
| | 715001300 | APPRISIA CONSULTING LLP | $3,420.00 | Disputed | 202, FORTUNE HOUSE, S.NO.131/1B/1, | | | PUNE | | | INDIA | | | |
| | 715013690 | RESTAD ELECTRIC | $3,421.00 | Disputed | 22838 SHOWUT AVE | | | WILDOMAR | CA | 92595 | | | | |
| | 715002960 | CHICKASAW-MARSHALL JOINT VENTURE | $3,559.00 | Disputed | 520 J.M. ASH DR | | | HOLLY SPRINGS | MS | 38635 | | | | |
| | 715002020 | BIOCHEM SYSTEMS, INC. | $3,602.00 | Disputed | PO BOX 8098 | | | THE WOODLANDS | TX | 77387-9098 | | | | |
| | 715003220 | COGENCY GLOBAL INC. | $3,654.00 | Disputed | 10 E 40TH STREET, 10TH FL | | | NEW YORK | NY | 10016 | | | | |
| | 715017900 | VETS ONE CORPORATION | $3,655.00 | Disputed | 3286 HICKOCK ROAD | | | CORNING | NY | 14830 | | | | |
| | 715000050 | 4IMPRINT, INC. | $3,689.00 | Disputed | 25303 NETWORK PLACE | | | CHICAGO | IL | 60673-1253 | | | | |
| | 715018980 | YUSHIN AMERICA, INC. | $3,692.00 | Disputed | 35 KENNEY DRIVE | | | CRANSTON | RI | 02920 | | | | |
| | 715009320 | LIGHTHOUSE SERVICES, INC. | $3,724.00 | Disputed | 630 FREEDOM BUSINESS CTR DR STE 300 | | | KNG OF PRUSSA | PA | 19406-0201 | | | | |
| | 715002630 | CENTURY LINK | $3,783.00 | Disputed | PO BOX 1319 | | | CHARLOTTE | NC | 28201-1319 | | | | |
| | 715018180 | WEBB MASON | $3,823.00 | Disputed | PO BOX 62414 | | | BALTIMORE | MD | 21264-2414 | | | | |
| | 715017400 | UNITED REFRIGERATION INC. | $3,874.00 | Disputed | PO BOX 644628 | | | PITTSBURGH | PA | 15264-4628 | | | | |
| | 715017290 | UNIFIRST FIRST AID CORP | $3,933.00 | Disputed | 3499 RIDER TRAIL SOUTH | | | EARTH CITY | MO | 63045 | | | | |
| | 715015580 | STANTEC CONSULTING SERVICES, INC. | $3,933.00 | Disputed | 13980 COLLECTIONS CENTER DRIVE | | | CHICAGO | IL | 60693 | | | | |
| | 715019110 | ZOHO CORPORATION | $3,988.00 | Disputed | PO BOX 742760 | PO BOX 742760 | | LOS ANGELES | CA | 90074-2760 | | | | |
| | 715009660 | MARCH OF DIMES, INC. | $4,000.00 | Disputed | 1550 CRYSTAL DRIVE, SUITE 1300 | | | ARLINGTON | VA | 22202 | | | | |
| | 715010850 | NATIONAL TOOLING & MACHINING ASSOCI | $4,000.00 | Disputed | 305 EAST CARSON ST | | | PITTSBURGH | PA | 15219 | | | | |
| | 715015770 | STERICYCLE, INC. | $4,038.00 | Disputed | PO BOX 6582 | | | CAROL STREAM | IL | 60197-6582 | | | | |
| | 715013410 | RAPID P&P LLC | $4,062.00 | Disputed | 2910 S WALTON BLVD | | | BENTONVILLE | AR | 72712 | | | | |
| | 715018140 | WATER WISE OF AMERICA, INC | $4,086.00 | Disputed | 395 SUMMIT POINT DR. | | | HENRIETTA | NY | 14467 | | | | |
| | 715011100 | NINGBO LISI IMPORT&EXPORT CO.,LTD | $4,094.00 | Disputed | NO.518 CHENGXIN ROAD,YIN ZHOU INVES | | | NINGBO | | 315105 | CHINA | | | |
| | 715003580 | COMPUTER SERVICES INC | $4,119.00 | Disputed | 3901 TECHNOLOGY DRIVE | | | PADUCAH | KY | 42001 | | | | |
| | 715014430 | SCHINDLER ELEVATOR CORPORATION | $4,122.00 | Disputed | PO BOX 93050 | | | CHICAGO | IL | 60673-3050 | | | | |
| | 715004700 | CULLIGAN WATER CONDITIONING | $4,157.00 | Disputed | PO BOX 328 | ROUTE 51-S | | STAR JUNCTION | PA | 15482-0328 | | | | |
| | 715010650 | MOLD MASTERS SYSTEMS | $4,187.00 | Disputed | 233 ARMSTRONG AVE. | | | GEORGETOWN | ON | L7G 4X5 | CANADA | | | |
| | 715007680 | HYDRATION LABS, INC. | $4,200.00 | Disputed | 529 MAIN STREET, SUITE 3304 | | | CHARLESTOWN | MA | 02129 | | | | |
| | 715006500 | FOSHAN CITY SHUNDE DISTRICT DONLIM | $4,234.00 | Disputed | NO.26 SHUNYE EAST ROAD | | | FOSHAN, 190 | | 528325 | CHINA | | | |
| | 715018540 | WINSUPPLY OF ELMIRA NY CO. | $4,247.00 | Disputed | 2072 LAKE RD. | | | ELMIRA | NY | 14903 | | | | |
| | 715000340 | ACUATIVE CORPORATION | $4,289.00 | Disputed | 8237 DOW CIRCLE | | | STRONGSVILLE | OH | 44136 | | | | |
| | 715001780 | BANNER INDUSTRIES OF N.E., INC. | $4,292.00 | Disputed | ONE INDUSTRIAL DRIVE | | | DANVERS | MA | 01923-2575 | | | | |
| | 715001590 | AUTUMN LOGISTICS | $4,330.00 | Disputed | 6550 COURTELY RD. | | | WOODBURY | MN | 55125 | | | | |
| | 715006490 | FOSBEL, INC. | $4,350.00 | Disputed | 20600 SHELDON ROAD | | | BROOK PARK | OH | 44142 | | | | |
| | 715008200 | J.C. EHRLICH CO., INC. | $4,487.00 | Disputed | PO BOX 13848 | | | READING | PA | 19612-3848 | | | | |
| | 715003000 | CINTAS CORPORATION #121 | $4,554.00 | Disputed | PO BOX 631025 | | | CINCINNATI | OH | 45263-1025 | | | | |
| | 715014640 | SECURITAS SECURITY SERVICES USA, IN | $4,569.00 | Disputed | 12672 COLLECTIONS CENTER DR. | | | CHICAGO | IL | 60693 | | | | |
| | 715017640 | USA STAFFING SOLUTIONS, LLC | $4,576.00 | Disputed | 1001 LIBERTY AVE STE 5 | | | PITTSBURGH | PA | 15222-3715 | | | | |
| | 715008250 | WIELAND, JAMES | $4,660.00 | Disputed | 3153 S. HANSON AVENUE | | | MILWAUKEE | WI | 53207 | | | | |
| | 715011530 | OMEGA ENGINEERING, INC. | $4,791.00 | Disputed | PO BOX 405369 | | | ATLANTA | GA | 30384-5369 | | | | |
| | 715001290 | APPLIED SURFACE TECHNOLOGIES, LLC | $4,888.00 | Disputed | 740 PIERCE ST | | | WATERLOO | WI | 53594 | | | | |
| | 715018360 | WEST PENN POWER COMPANY | $4,993.00 | Disputed | PO BOX 3687 | | | AKRON | OH | 44309-3687 | | | | |
| | 715011760 | OSF GLOBAL SERVICES, INC. | $5,000.00 | Disputed | 500 EDGEWATER DRIVE, SUITE 509 | | | WAKEFIELD | MA | 01880 | | | | |
| | 715012350 | PENGATE HANDLING SYSTEMS, INC. | $5,240.00 | Disputed | PO BOX 643031 | | | PITTSBURGH | PA | 15264-3031 | | | | |
| | 715018430 | WESTERN MUNICIPAL WATER DISTRICT | $5,260.00 | Disputed | 14205 MERIDIAN PARKWAY | | | RIVERSIDE | CA | 92508 | | | | |
| | 715003260 | COLE-PARMER INSTRUMENT COMPANY | $5,268.00 | Disputed | 13927 COLLECTIONS CENTRE DR | | | CHICAGO | IL | 60693 | | | | |
| | 715012230 | PBS SOFTWARE AMERICAS INC. | $5,270.00 | Disputed | 2603 CAMINO RAMON, SUITE 200 | | | SAN RAMON | CA | 94583 | | | | |
| | 715011880 | PACCO | $5,284.00 | Disputed | 115 CORPORATION DRIVE | | | ALIQUIPPA | PA | 15001 | | | | |
| | 715007060 | GREENBERG TRAURIG, LLP | $5,287.00 | Disputed | 8400 NW 36TH STREET, SUITE 400 | | | DORAL | FL | 33166 | | | | |
| | 715005860 | EMSTAR | $5,337.00 | Disputed | 1058 WEST CHURCH STREET | | | ELMIRA | NY | 14905 | | | | |
| | 715003090 | CITY OF CORNING | $5,407.00 | Disputed | 1 CIVIC CENTER PLAZA | | | CORNING | NY | 14830 | | | | |
| | 715009640 | MARABU NORTH AMERICAN LP | $5,425.00 | Disputed | 2460-A REMOUNT ROAD | | | NORTH CHARLESTON | SC | 29406 | | | | |
| | 715009550 | MAHR FEDERAL INC | $5,474.00 | Disputed | PO BOX 1041 | | | NEW YORK | NY | 10268-1041 | | | | |
| | 715009890 | MCKEE STEWART EQUIPMENT CORP | $5,507.00 | Disputed | 110 FIFTH STREET | | | WEST ELIZABETH | PA | 15088 | | | | |
| | 715008040 | INTERNAL REVENUE SERVICE | $5,600.00 | Disputed | 230 S. DEARBORN ST | | | CHICAGO | IL | 60604 | | | | |
| | 715004170 | CORSEARCH, INC. | $5,656.00 | Disputed | PO BOX 4349 | | | CAROL STREAM | IL | 60197-4349 | | | | |
| | 715014920 | SHRED-IT US JV LLC | $5,746.00 | Disputed | 28883 NETWORK PL | | | CHICAGO | IL | 60673-1288 | | | | |
| | 715001920 | BEISTEL MACHINING, INC. | $5,975.00 | Disputed | 778 VERNON DRIVE | | | BELLE VERNON | PA | 15012-3602 | | | | |
| | 715018550 | WINTER'S RIGGING, INC. | $6,000.00 | Disputed | PO BOX 488 | 2110 SHERMAN AVE | | NORTH COLLINS | NY | 14111 | | | | |
| | 715010190 | MICROBAN PRODUCTS COMPANY | $6,016.00 | Disputed | 11400 VANSTORY DRIVE | | | HUNTERSVILLE | NC | 28078 | | | | |
| | 715016760 | TIGER WORKS INC | $6,088.00 | Disputed | 11109 HWY 178 STE 106 | | | OLIVE BRANCH | MS | 38654 | | | | |
| | 715010860 | NCC GROUP ESCROW ASSOCIATES, LLC | $6,112.00 | Disputed | 650 CALIFORNIA STREET, SUITE 2950 | | | SAN FRANCISCO | CA | 94108 | | | | |
| | 715016930 | TRANSCAT, INC. | $6,266.00 | Disputed | PO BOX 62827 | | | BALTIMORE | MD | 21264-2827 | | | | |
| | 715004360 | COURSER INC | $6,318.00 | Disputed | 802 COUNTY ROUTE 64 | | | ELMIRA | NY | 14903 | | | | |
| | 715012950 | PRICE WATERHOUSE COOPERS LLP | $6,322.00 | Disputed | 99 BANK STREET, SUITE 710 | | | OTTAWA | ON | K1P1E4 | CANADA | | | |
| | 715001620 | AVERY DENNISON RETAIL INFORMATION | $6,384.00 | Disputed | 170 MONARCH LANE | | | MIAMISBURG | OH | 45342 | | | | |
| | 715007230 | HATCHER ASSOCIATES | $6,475.00 | Disputed | 1612 NORTH THROOP STREET | | | CHICAGO | IL | 60642 | | | | |
| | 715003540 | COMPROS, INC | $6,493.00 | Disputed | 400 HIGHLAND AVE | | | ALTOONA | PA | 16602 | | | | |
| | 715016660 | THERMALTECH ENGINEERING, INC. | $6,724.00 | Disputed | 3960 RED BANK RD., STE 250 | | | CINCINNATI | OH | 45227 | | | | |
| | 715004690 | CULLIGAN | $6,944.00 | Disputed | PO BOX 77043 | | | MINNEAPOLIS | MN | 55480-7743 | | | | |
| | 715013700 | LLOYD, RESTON | $6,974.00 | Disputed | 22880 GLENN DRIVE | | | STERLING | VA | 20164 | | | | |
| | 715008870 | KONECRANES INTERNATIONAL INC. | $7,067.00 | Disputed | PO BOX 641807 | 230 AIRPORT ROAD, UNIT 12 | | WINCHESTER | VA | 22602-4569 | | | | |
| | 715017500 | UPS MAIL INNOVATION | $7,086.00 | Disputed | PO BOX 75266 | | | DALLAS | TX | 75266 | | | | |
| | 715005710 | EHRLICH PEST CONTROL | $7,518.00 | Disputed | PO BOX 13848 | | | READING | PA | 19612-3848 | | | | |
| | 715013540 | RAYMOND WEST HANDLING SOLUTIONS INC | $7,551.00 | Disputed | 9939 NORWALK BLVD | | | SANTA FE SPRINGS | CA | 90670 | | | | |
| | 715000100 | 593 HORESBARN LLC | $7,570.00 | Disputed | 593 HORSEBARN RD - SUITE 101 | | | ROGERS | AR | 72758 | | | | |
| | 715002060 | BLANK ROME LLP | $7,605.00 | Disputed | ONE LOGAN SQUARE, 130 N. 18TH STREE | | | PHILADELPHIA | PA | 19103-6998 | | | | |
| | 715010770 | MULTI/CABLE CORP | $7,632.00 | Disputed | 37 HORIZON DRIVE | | | BRISTOL | CT | 06010-7480 | | | | |
| | 715015250 | SOLUCION IMPRESA, S.A. DE C.V. | $7,697.00 | Disputed | MIMOSAS 43 | | | LOMAS DE SAN MATEO | | 53200 | MEXICO | | | |
| | 715002690 | CERTIFICATION AND TESTING C | $7,924.00 | Disputed | NO. 1999 DU HUI ROAD, MINHANG DISTR | | | SHANGHAI, 020 | | 201108 | CHINA | | | |
| | 715018440 | WHEELER TRIGG O'DONNELL LLP | $8,000.00 | Disputed | PO BOX 17782 | | | DENVER | CO | 80217-0782 | | | | |
| | 715009300 | LIFETIME BRANDS INC | $8,280.00 | Disputed | 1000 STEWART AVE. | | | GARDEN CITY | NY | 11530 | | | | |
| | 715013260 | R M HEADLEE CO INC | $8,284.00 | Disputed | 3649 CALIFORNIA ROAD | | | ORCHARD PARK | NY | 14127 | | | | |
| | 715018080 | WARD GREENBERG HELLER & REIDY LLP | $8,349.00 | Disputed | 1800 BAUSCH & LOMB PLACE | | | ROCHESTER | NY | 14604 | | | | |
| | 715017320 | UNITED CHEMICAL TECHNOLOGIES, INC | $8,431.00 | Disputed | 2731 BARTRAM ROAD | | | BRISTOL | PA | 19007 | | | | |

GUC Register as of February 27, 2024

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 715015060 | SINGLE SOURCE HANDLING INC | $8,482.00 | Disputed | 7125 GILARDI ROAD | | | BOONSBORO | MD | 21713 | |
| 715015550 | ARMEN, STANLEY C. | $8,572.00 | Disputed | 9276 MARSHALL ROAD | | | CRANBERRY TOWNSHIP | PA | 16066 | |
| 715007020 | GRANITE TELECOMMUNICATIONS | $8,574.00 | Disputed | PO BOX 983119 | CLIENT ID #31 | | BOSTON | MA | 02298-3119 | |
| 715017180 | UL VERIFICATION SERVICES INC. | $8,601.00 | Disputed | ONE TECHNOLOGY PARK DRIVE | | | TORRINGTON | CT | 06790 | |
| 715013390 | RAND IMAGINIT TECHNOLOGIES, INC. | $8,854.00 | Disputed | 28127 NETWORK PLACE | | | CHICAGO | IL | 60673-1281 | |
| 715008560 | KANAWHA SCALES & SYSTEMS, INC | $9,275.00 | Disputed | PO BOX 569 | | | POCA | WV | 25159 | |
| 715016720 | THREE RIVERS DEVELOPMENT CORP. | $9,287.00 | Disputed | 19 E MARKET STREET, SUITE 201 | | | CORNING | NY | 14830 | |
| 715014050 | ROLLINS, INC. | $9,333.00 | Disputed | 2170 PIEDMONT ROAD NE | | | ATLANTA | GA | 30324 | |
| 715017080 | TZA | $9,478.00 | Disputed | 8805 TAMIAMI TRAIL NORTH | | | NAPLES | FL | 34108 | |
| 715003400 | COMCAST | $9,558.00 | Disputed | PO BOX 37601 | | | PHILADELPHIA | PA | 19101-0601 | |
| 715002560 | CCFL LLC | $9,578.00 | Disputed | 2832 UPPER DRIVE | | | CORNING | NY | 14830 | |
| 715010930 | NEUINTEL, LLC | $9,900.00 | Disputed | 20 PACIFICA SUITE 1000 | | | IRVINE | CA | 92618 | |
| 715003200 | CNL JANITORIAL | $9,923.00 | Disputed | PO BOX 814 | | | GARDEN GROVE | CA | 92843 | |
| 715010640 | MOKON | $9,931.00 | Disputed | PO BOX 1690 | | | CAROL STREAM | IL | 60132-1690 | |
| 715005930 | ERIKS NORTH AMERICA, INC | $10,000.00 | Disputed | 734055 NETWORK PLACE | | | CHICAGO | IL | 60673-4055 | |
| 715016380 | THE CREATIVE PARTNERS GROUP | $10,000.00 | Disputed | 88 SOUTH 10TH ST - STE 100 | | | MINNEAPOLIS | MN | 55403 | |
| 715017300 | UNIQODE PHYGITAL INC. | $10,000.00 | Disputed | 12 EAST 49TH STREET | 0 | | NEW YORK | NY | 10017 | |
| 715004770 | CZARNOWSKI DISPLAY SERVICES, INC. | $10,004.00 | Disputed | 2287 S BLUE ISLAND AVENUE | | | CHICAGO | IL | 60608 | |
| 715009810 | MATHESON TRI-GAS INC | $10,050.00 | Disputed | PO BOX 347297 | | | PITTSBURGH | PA | 15251-4297 | |
| 715010940 | NEW AGE ENVIRONMENTAL | $10,200.00 | Disputed | 113 JEFFREY CIRCLE | | | CORAOPOLIS | PA | 15108 | |
| 715008500 | LOGAN, JOSHUA KINSEY | $10,261.00 | Disputed | PO BOX 375 | 201 GRISCOM ST. | | DAWSON | PA | 15428 | |
| 715013160 | PYROTEK, INC. | $10,292.00 | Disputed | PO BOX 203024 | | | DALLAS | TX | 75320 | |
| 715016950 | TRI STATE SUPPLY CO., INC. | $10,591.00 | Disputed | 371 WEST CHESTNUT STREET | | | WASHINGTON | PA | 15301 | |
| 715006990 | GPD COMPANIES, INC. | $10,807.00 | Disputed | 1780 HUGHES LANDING BLVD., SUITE 10 | | | THE WOODLANDS | TX | 77380 | |
| 715008890 | KONICA MINOLTA BUSINESS | $10,884.00 | Disputed | DEPT CH 19188 | | | PALATINE | IL | 60055-9188 | |
| 715006760 | GENERAL DATA COMPANY, INC. | $10,916.00 | Disputed | PO BOX 640558 | | | CINCINNATI | OH | 45264-0588 | |
| 715001130 | AMERICAN MACHINING, INC. | $10,946.00 | Disputed | 715 SCENIC DRIVE | | | DAISYTOWN | PA | 15427 | |
| 715004630 | CRYSTAL SOUND SYSTEMS, INC. | $11,440.00 | Disputed | 505 VALLEYBROOK ROAD | | | CANONSBURG | PA | 15317 | |
| 715018290 | WELLIVER MCGUIRE INC. | $11,641.00 | Disputed | 250 NORTH GENESEE STREET | | | MONTOUR FALLS | NY | 14865 | |
| 715016750 | JONES, TIFFANY M | $11,737.00 | Disputed | 10053 LYNHAM CV | | | CORDOVA | TN | 38016 | |
| 715011010 | NEXAIR, LLC | $11,783.00 | Disputed | 1350 CONCOURSE AVE STE 103 | | | MEMPHIS | TN | 38104 | |
| 715004440 | CPE IT SOLUTIONS | $12,000.00 | Disputed | 141 FRONT STREET SUITE 103 | | | ADDISON | NY | 14801 | |
| 715017840 | VERIZON BUSINESS | $12,178.00 | Disputed | PO BOX 15043 | | | ALBANY | NY | 12212-5043 | |
| 715004660 | CT CORPORATION SYSTEM | $12,227.00 | Disputed | 208 S. LASALLE STREET | | | CHICAGO | IL | 60604 | |
| 715014650 | SECURITAS SECURITY SERVICES USA, IN | $12,326.00 | Disputed | 12672 COLLECTIONS CENTER DR. | | | CHICAGO | IL | 60693 | |
| 715006460 | FORTRA, LLC | $12,403.00 | Disputed | 11095 VIKING DR, SUITE 100 | | | EDEN PRAIRIE | MN | 55344 | |
| 715007420 | HOLT RAMSEY PUMP & EQUIPMENT | $12,442.00 | Disputed | 3190 LEECHBURG ROAD | | | PITTSBURGH | PA | 15239 | |
| 715013970 | RISI, INC. | $12,650.00 | Disputed | 1 VAN DE GRAAFF DRIVE, SUITE 601 | | | BURLINGTON | MA | 01803 | |
| 715003140 | CLEVELAND BROTHERS EQUIPMENT CO., I | $12,847.00 | Disputed | PO BOX 417094 | | | BOSTON | MA | 02241-7094 | |
| 715002770 | CHAMBERLAIN'S VACU-BLAST SALES CO, | $12,946.00 | Disputed | PO BOX 225 | | | RIVERTON | NJ | 08077 | |
| 715018120 | WASTE MANAGEMENT OF PA | $13,124.00 | Disputed | PO BOX 13648 | | | PHILADELPHIA | PA | 19101-3648 | |
| 715010500 | MINITAB INC | $13,499.00 | Disputed | QUALITY PLAZA 1829 PINE HALL RD | | | STATE COLLEGE | PA | 16801-3008 | |
| 715001490 | ASI DATAMYTE, INC. | $13,728.00 | Disputed | 2800 CAMPUS DRIVE, SUITE 60 | | | PLYMOUTH | MN | 55441 | |
| 715011450 | OHIO RACK INC. | $13,877.00 | Disputed | 1405 S LIBERTY AVENUE | | | ALLIANCE | OH | 44601 | |
| 715009050 | LANER MUCHIN DOMBROW BECKER LEVIN A | $13,931.00 | Disputed | 515 N. STATE ST., SUITE 2800 | | | CHICAGO | IL | 60654-4688 | |
| 715011190 | NOL-TEC SYSTEMS, INC. | $14,125.00 | Disputed | PO BOX 1450 | NW 6040 | | MINNEAPOLIS | MN | 55485-6040 | |
| 715018630 | WONDERLAND FILMS LTD | $14,437.00 | Disputed | PEAR TREE HOUSE, CHERTSEY MEADS | | | CHERTSEY | SY | KT16 8LN | UNITED KINGDOM |
| 715008980 | KRAUSS-MAFFEI CORPORATION | $14,441.00 | Disputed | 7095 INDUSTRIAL ROAD | | | FLORENCE | KY | 41042 | |
| 715005490 | DOUG GROSS CONSTRUCTION, INC. | $14,482.00 | Disputed | 600 RITAS WAY | | | PAINTED POST | NY | 14870 | |
| 715017490 | UPMC | $14,600.00 | Disputed | PO BOX 223270 | | | PITTSBURGH | PA | 15251-2270 | |
| 715014880 | SHIBAURA MACHINE COMPANY, AMERICA | $14,955.00 | Disputed | 755 GREENLEAF AVENUE | | | ELK GROVE VILLAGE | IL | 60007 | |
| 715001710 | BALTON SIGN COMPANY | $15,000.00 | Disputed | 7801 MORIARTY ROAD | | | CORDOVA | TN | 38018 | |
| 715012480 | PHOENIX BUSINESS, INC. | $15,120.00 | Disputed | 6021 MIDNIGHT PASS RD., UNIT 3 | | | SARASOTA | FL | 34242 | |
| 715018390 | WEST PUBLISHING CORPORATION | $15,120.00 | Disputed | PO BOX 6292 | | | CAROL STREAM | IL | 60197-6292 | |
| 715010920 | NES CORPORATION | $15,281.00 | Disputed | 9610 RESEARCH DRIVE | | | IRVINE | CA | 92618 | |
| 715017210 | ULTRA-PURE WATER CONDITIONING, INC. | $15,400.00 | Disputed | 2944 NATIONAL PIKE | | | CHALK HILL | PA | 15421 | |
| 715001340 | ARBON EQUIPMENT CORPORATION | $15,521.00 | Disputed | 25464 NETWORK PLACE | | | CHICAGO | IL | 60673-1254 | |
| 715012880 | PRECISELY SOFTWARE INCORPORATED | $15,921.00 | Disputed | 1700 DISTRICT AVE, SUITE 300 | | | BURLINGTON | MA | 01803 | |
| 715017760 | VERITIV OPERATING COMPANY | $15,979.00 | Disputed | 7472 COLLECTION CENTER DRIVE | | | CHICAGO | IL | 60693 | |
| 715000790 | AIRPOT CORPORATION | $15,985.00 | Disputed | 35 LOIS STREET | | | NORWALK | CT | 06851-4449 | |
| 715012220 | PAYSCALE, INC. | $16,000.00 | Disputed | 113 CHERRY ST, SUITE 96140 | | | SEATTLE | WA | 98104 | |
| 715016300 | TENNANT SALES AND SERVICE COMPANY | $16,061.00 | Disputed | PO BOX 71414 | | | CHICAGO | IL | 60694 | |
| 715005870 | ENGINEERED MATERIALS TECHNOLOGY, IN | $16,142.00 | Disputed | 7447 19 MILE ROAD | | | STERLING HEIGHTS | MI | 48314 | |
| 715017190 | UL VERIFICATION SERVICES INC. | $16,288.00 | Disputed | ONE TECHNOLOGY PARK DRIVE | | | TORRINGTON | CT | 06790 | |
| 715016990 | TRU-CORE INDUSTRIAL SERVICES | $16,545.00 | Disputed | 1600 EVERGREENE DRIVE | | | WAYNESBURG | PA | 15370 | |
| 715018780 | WTS, INC | $16,637.00 | Disputed | PO BOX 8000 | DEPT NO 389 | | BUFFALO | NY | 14267 | |
| 715009770 | MARVEL BRANDS LLC | $16,666.00 | Disputed | 1290 AVENUE OF THE AMERICAS, 2ND FL | | | NEW YORK | NY | 10104 | |
| 715013730 | REVIEWMONITORING.COM LLC | $16,743.00 | Disputed | 6701 DEMOCRACY BLVD, SUITE 300 | | | BETHESDA | MD | 20817 | |
| 715014400 | SCHAEDLER/YESCO DISTRIBUTION, INC. | $17,340.00 | Disputed | PO BOX 4990 | | | HARRISBURG | PA | 17111-0990 | |
| 715005210 | DIBBLE EQUIPMENT, INC. | $17,501.00 | Disputed | PO BOX 234 | | | EAST SCHODACK | NY | 12063 | |
| 715005560 | DYNATECT MFG INC. | $17,719.00 | Disputed | PO BOX 88709 | | | MILWAUKEE | WI | 53288-0709 | |
| 715014600 | SE TECHNOLOGIES INC. | $18,000.00 | Disputed | PO BOX 6092 | | | HERMITAGE | PA | 16148-1092 | |
| 715005040 | DELAWARE SECRETARY OF STATE | $19,276.00 | Disputed | PO BOX 74072 | | | BALTIMORE | MD | 21274-4072 | |
| 715004420 | CPA GLOBAL LIMITED | $19,320.00 | Disputed | LIBERATION HOUSE, CASTLE ST | | | ST HELIER JERSEY | | JE11BL | CHANNEL ISLANDS |
| 715014160 | SAATI PRINT, SAATI TECH, SAATI CHEM | $19,628.00 | Disputed | 201 FAIRVIEW ST. EXTENSION | | | FOUNTAIN INN | SC | 29644 | |
| 715007000 | GRAINGER, INC. | $19,753.00 | Disputed | DEPT 803958123 | | | PALATINE | IL | 60038-0001 | |
| 715013380 | FLORES, RAMON E. | $19,782.00 | Disputed | 11006 DAVENRICH ST. | | | SANTA FE SPRINGS | CA | 90670 | |
| 715007820 | IMR TEST LABS | $20,000.00 | Disputed | PO BOX 223765 | | | PITTSBURGH | PA | 15250-2765 | |
| 715016190 | TECHLINK INTERNATIONAL LLC | $20,050.00 | Disputed | PO BOX 290444 | | | DAVIE | FL | 33329 | |
| 715009360 | LINKEDIN CORPORATION | $20,361.00 | Disputed | 62228 COLLECTIONS CENTER DRIVE | | | CHICAGO | IL | 60693-0622 | |
| 715010410 | MIDWAY INDUSTRIES SUPPLY, INC. | $20,927.00 | Disputed | PO BOX 303 | | | UTICA | NY | 13503-0303 | |
| 715001870 | BCHR US ACQUISTION INC | $21,011.00 | Disputed | PO BOX 207640 | | | DALLAS | TX | 75320-7640 | |
| 715015700 | STAVER HYDRAULICS CO INC | $21,733.00 | Disputed | PO BOX 41 | ONE STAVER LANE | | WAVERLY | NY | 14892 | |
| 715008700 | KEY POLYMER CORPORATION | $21,742.00 | Disputed | 17 SHEPARD STREET | | | LAWRENCE | MA | 01843 | |
| 715005890 | ENTRUST CORPORATION | $22,767.00 | Disputed | 36134 TREASURY CENTER | | | CHICAGO | IL | 60694 | |
| 715006840 | GHD SERVICES INC | $23,716.00 | Disputed | PO BOX 392237 | | | PITTSBURGH | PA | 15251-9237 | |
| 715014780 | BALDRY, SETH PHILIP | $23,800.00 | Disputed | 15785 CEDAR RIDGE RD | | | EDEN PRAIRIE | MN | 55347 | |
| 715000310 | ACQUIA, INC. | $25,085.00 | Disputed | 3003 TASMAN DRIVE | | | SANTA CLARA | CA | 95054 | |
| 715005180 | DESIGNCRAFT, INC. | $25,095.00 | Disputed | 850 TELSER RD. | | | LAKE ZURICH | IL | 60047 | |
| 715007010 | GRAINGER, INC. | $25,891.00 | Disputed | DEPT 803958123 | | | PALATINE | IL | 60038-0001 | |
| 715018750 | WORLDWIDE TV PRODUCTS LLC | $26,099.00 | Disputed | 13100 56TH COURT, SUITE 706 | | | CLEARWATER | FL | 33760 | |
| 715001280 | APPLIED PRODUCTS, INC. | $26,099.00 | Disputed | 6035 BAKER ROAD | | | MINNETONKA | MN | 55345 | |
| 715015110 | SKJ FACILITIES MANAGEMENT, INC. | $26,303.00 | Disputed | PO BOX 371 | | | BIG FLATS | NY | 14814-0371 | |
| 715018300 | WELLS FARGO FINANCIAL LEASING, INC. | $26,468.00 | Disputed | 1961 HIRST DRIVE | | | MOBERLY | MO | 65270 | |
| 715017670 | VALASSIS DIGITAL CORP | $27,050.00 | Disputed | 15955 LA CANTERA PARKWAY | | | SAN ANTONIO | TX | 78256 | |
| 715014010 | RIVERSIDE PUBLIC UTILITIES | $27,572.00 | Disputed | 3900 MAIN ST. | | | RIVERSIDE | CA | 92522 | |
| 715003360 | COLUMBIA GAS OF PENNSYLVANIA | $27,719.00 | Disputed | PO BOX 70285 | | | PHILADELPHIA | PA | 19176-0285 | |
| 715012190 | PAYMETRIC, INC. | $28,428.00 | Disputed | 13430 NW FRWY, SUITE 900 | | | HOUSTON | TX | 77040 | |
| 715001550 | ATLAS COPCO RENTAL LLC. | $30,195.00 | Disputed | DEPT. 3243 | | | DALLAS | TX | 75312-3243 | |
| 715013240 | QUIET MARK APPROVAL LIMITED | $30,235.00 | Disputed | 8 NIZELLS AVENUE | | | HOVE | SE | BN3 1PL | UNITED KINGDOM |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 715005380 | DIVAL SAFETY EQUIPMENT, INC. | $30,258.00 | Disputed | 1721 NIAGARA STREET | | | BUFFALO | NY | 14207 | | | | |
| | 715018590 | WIRE MESH PRODUCTS | $30,269.00 | Disputed | PO BOX 1988 | | | YORK | PA | 17405 | | | | |
| | 715007410 | HOLLAND MANUFACTURING CORP. | $30,279.00 | Disputed | PO BOX 261 | | | SOUTH HOLLAND | IL | 60473 | | | | |
| | 715005190 | DGI SUPPLY - A DOALL COMPANY | $30,457.00 | Disputed | 4830 SOLUTION CENTER | | | CHICAGO | IL | 60677-4008 | | | | |
| | 715015340 | SPADAFY LLC | $30,728.00 | Disputed | 8228 FAIRWAY DRIVE NE | | | SEATTLE | WA | 98115 | | | | |
| | 715000510 | ADVANCE ELECTRIC COMPANY, INC. | $31,800.00 | Disputed | 10500 HIGHWAY 178 | | | OLIVE BRANCH | MS | 38654 | | | | |
| | 715006910 | GLOBAL EQUIPMENT CO. | $32,891.00 | Disputed | 29833 NETWORK PLACE | | | CHICAGO | IL | 60673-1298 | | | | |
| | 715007340 | HIGHRADIUS CORPORATION | $34,500.00 | Disputed | 2107 CITYWEST BLVD | | | HOUSTON | TX | 77042-2827 | | | | |
| | 715018370 | WEST PENN POWER COMPANY | $35,066.00 | Disputed | PO BOX 3687 | | | AKRON | OH | 44309-3687 | | | | |
| | 715000930 | ALLEGHENY MACHINE TOOL | $35,340.00 | Disputed | 632 EAST MCMURRAY ROAD | | | MCMURRAY | PA | 15317 | | | | |
| | 715002110 | BOARD OF EQUALIZATION | $36,277.00 | Disputed | PO BOX 942879 | | | SACRAMENTO | CA | 94279-0001 | | | | |
| | 715008140 | ITERABLE, INC. | $37,897.00 | Disputed | PMB 5212 | 2261 MARKET ST | | SAN FRANCISCO | CA | 94114-1612 | | | | |
| | 715000200 | ACCESS IT GROUP, INC. | $38,113.00 | Disputed | 20106 VALLEY FORGE CIRCLE | | | KING OF PRUSSIA | PA | 19406 | | | | |
| | 715009190 | LECHASE CONSTRUCTION SERVICES, LLC. | $38,191.00 | Disputed | 205 INDIGO CREEK DRIVE | | | ROCHESTER | NY | 14626 | | | | |
| | 715011810 | OVERHEAD DOOR COMPANY OF | $39,514.00 | Disputed | 400 POPLAR STREET | | | PITTSBURGH | PA | 15223 | | | | |
| | 715002670 | CERCO, 1 INC | $41,115.00 | Disputed | PO BOX 633966 | 453 WEST MCCONKEY ST | | SHREVE | OH | 44676 | | | | |
| | 715005730 | ELECTRICAL CONTRACTING ENTERPRISES | $41,609.00 | Disputed | 7490 APPLING CENTER DRIVE | | | MEMPHIS | TN | 38133 | | | | |
| | 715008100 | IPS INTEGRATED POWER SERVICES | $43,495.00 | Disputed | PO BOX 601492 | | | CHARLOTTE | NC | 28260-1492 | | | | |
| | 715008960 | KOUNT, INC | $43,559.00 | Disputed | PO BOX 71221 | | | CHARLOTTE | NC | 28272 | | | | |
| | 715006970 | GOOGLE INC. | $45,811.00 | Disputed | 1600 AMPHITHEATRE PARKWAY | | | MOUNTAIN VIEW | CA | 94043 | | | | |
| | 715011510 | OLIVOTTO GLASS TECHNOLOGIES, SPA | $46,162.00 | Disputed | VIALE GANDHI 22 | | | AUIGLIANA | TO | 10051 | ITALY | | | |
| | 715000120 | 84.51 LLC | $46,300.00 | Disputed | PO BOX 635029 | | | CINCINNATI | OH | 45263-5029 | | | | |
| | 715003710 | CONTENT SQUARE, INC. | $47,200.00 | Disputed | 1 PENN PLAZA, SUITE 5415 | | | NEW YORK | NY | 10119 | | | | |
| | 715000070 | 5280 BOND LLC | $47,500.00 | Disputed | 235 S REEVES DR. SUITE #101 | | | BEVERLY HILLS | CA | 90212 | | | | |
| | 715010690 | MORRIS, NICHOLS, ARSHT & TUNNELL LL | $48,617.00 | Disputed | 1201 NORTH MARKET STREET, 16TH FLOO | | | WILMINGTON | DE | 19801 | | | | |
| | 715001570 | AUTHORITY OF THE BOROUGH OF CHARLER | $49,981.00 | Disputed | PO BOX 6272 | | | HERMITAGE | PA | 16148-0923 | | | | |
| | 715003570 | COMPTROLLER OF PUBLIC ACCOUNTS | $50,000.00 | Disputed | PO BOX 13528 | | | AUSTIN | TX | 78711-9939 | | | | |
| | 715007320 | HFW INDUSTRIES INCORPORATED | $50,640.00 | Disputed | PO BOX 8000, DEPARTMENT 791 | | | BUFFALO | NY | 14267 | | | | |
| | 715001720 | BANC OF AMERICA LEASING | $52,904.00 | Disputed | PO BOX 405874 | | | ATLANTA | GA | 30384-5874 | | | | |
| | 715010430 | MEDINA, MIGUEL A. | $53,539.00 | Disputed | 3639 NEW GETWELL RD. | | | MEMPHIS | TN | 38118 | | | | |
| | 715010580 | MIXPANEL | $54,000.00 | Disputed | ONE FRONT STREET, 28TH FLOOR | | | SAN FRANCISCO | CA | 94111 | | | | |
| | 715005350 | DISNEY CONSUMER PRODUCTS, INC. | $55,149.00 | Disputed | 500 SOUTH BUENA VISTA STREET | | | BURBANK | CA | 91521 | | | | |
| | 715013070 | PROSKAUER ROSE LLP | $58,075.00 | Disputed | ELEVEN TIMES SQUARE | | | NEW YORK | NY | 10036 | | | | |
| | 715007640 | HUNTER FAN COMPANY | $60,136.00 | Disputed | 180 THREET INDUSTRIAL RD. STE 120 | | | SMYRNA | TN | 37167 | | | | |
| | 715010710 | MOTION INDUSTRIES, INC. | $60,981.00 | Disputed | PO BOX 414444 | | | BOSTON | MA | 02241 | | | | |
| | 715003600 | CONCENTRIC, LLC | $61,314.00 | Disputed | PO BOX 714484 | | | CINCINNATI | OH | 45271-4484 | | | | |
| | 715007860 | INCONTACT, INC. | $65,045.00 | Disputed | 75 WEST TOWN RIDGE PARKWAY, TOWER 1 | | | SANDY | UT | 84070 | | | | |
| | 715007760 | IH SERVICES, INC. | $67,510.00 | Disputed | PO BOX 5033 | | | GREENVILLE | SC | 29606 | | | | |
| | 715010120 | METLIFE CORE PLUS PARTNERS, LLC | $68,322.00 | Disputed | 6363 POPLAR AVE., SUITE 400 | | | MEMPHIS | TN | 38119 | | | | |
| | 715015030 | SIMON/PREIT GLOUCESTER DEVELOPMENT | $68,761.00 | Disputed | PO BOX 776118 | | | CHICAGO | IL | 60677-6118 | | | | |
| | 715002290 | BUREAU VERITAS | $69,303.00 | Disputed | 14624 COLLECTIONS CENTER DRIVE | | | CHICAGO | IL | 60693 | | | | |
| | 715004620 | CROWN PACKAGING CORP | $69,887.00 | Disputed | PO BOX 17806M | | | ST. LOUIS | MO | 63195 | | | | |
| | 715018010 | VORNADO REALTY LP | $70,870.00 | Disputed | 210 ROUTE 4 EAST | | | PARAMUS | NJ | 07652 | | | | |
| | 715012040 | PANCAL SYCAMORE CANYON 257, LLC | $71,468.00 | Disputed | 600 WASHINGTON AVENUE, SUITE 1100 | | | ST. LOUIS | MO | 63101 | | | | |
| | 715014890 | SHILOH INDUSTRIAL CONTRACTORS INC | $71,843.00 | Disputed | 204 COMMERCE BLVD | | | LAWRENCE | PA | 15055 | | | | |
| | 715010910 | NELSON & STREETER CONST. CO., INC | $72,819.00 | Disputed | PO BOX PO BOX 184 | | | PINE CITY | NY | 14871-0184 | | | | |
| | 715007540 | HOWELL PACKAGING | $73,879.00 | Disputed | PO BOX 286 | 79 PENNSYLVANIA AVENUE | | ELMIRA | NY | 14902-0286 | | | | |
| | 715018770 | WRKCO INC. | $74,685.00 | Disputed | 1000 ABERNATHY ROAD NE, BLDG. 400, | | | ATLANTA | GA | 30328 | | | | |
| | 715014080 | ROPES & GRAY, LLP | $75,000.00 | Disputed | 800 BOYLSTON STREET - PRUDENTIAL TO | | | BOSTON | MA | 02199 | | | | |
| | 715002490 | CARLISLE MACHINE WORKS, INC. | $75,872.00 | Disputed | PO BOX 746 | | | MILLVILLE | NJ | 08332 | | | | |
| | 715015070 | SIRIUS COMPUTER SOLUTIONS | $76,317.00 | Disputed | PO BOX 202289 | | | DALLAS | TX | 75320-2289 | | | | |
| | 715006940 | GOENGINEER, LLC (CATI) | $78,659.00 | Disputed | 739 FORT UNION BLVD | | | MIDVALE | UT | 84047 | | | | |
| | 715012420 | PENNWEST TOYOTA LIFT, LLC | $80,088.00 | Disputed | 168 WESTEC DRIVE | | | MOUNT PLEASANT | PA | 15666 | | | | |
| | 715002920 | CHICAGO PREMIUM OUTLETS | $80,987.00 | Disputed | PO BOX 827894 | | | PHILADELPHIA | PA | 19182-7894 | | | | |
| | 715012620 | PIXLEE INC. | $83,550.00 | Disputed | 625 MARKET STREET FLOOR 9 | | | SAN FRANCISCO | CA | 94105 | | | | |
| | 715008990 | KROLL LLC | $85,000.00 | Disputed | 55 EAST 52ND ST | 17 FL | | NEW YORK | NY | 10055 | | | | |
| | 715010970 | NEW YORK POWER AUTHORITY | $85,888.00 | Disputed | F/K/A NEW YORK POWER REVENUE FUND | 123 MAIN ST | | WHITE PLAINS | NY | 10601 | | | | |
| | 715007080 | GRIN TECHNOLOGIES, INC. | $87,038.00 | Disputed | 400 CAPITAL MALL STE 900 | | | SACRAMENTO | CA | 95814 | | | | |
| | 715007520 | HORIZON SOLUTIONS CORP. | $88,599.00 | Disputed | PO BOX 92367 | | | ROCHESTER | NY | 14692-0367 | | | | |
| | 715011330 | NXTTHING RPO, LLC | $91,488.00 | Disputed | 7298 UPPER CLARENTON DRIVE SOUTH | | | NEW ALBANY | OH | 43054 | | | | |
| | 715009390 | LIVERMORE PREMIUM OUTLETS, LLC | $93,592.00 | Disputed | 2696 SOLUTION CENTER | | | CHICAGO | IL | 60677-2006 | | | | |
| | 715017260 | UNIFIRST CORPORATION | $93,627.00 | Disputed | PO BOX 650481 | | | DALLAS | TX | 75265-0481 | | | | |
| | 715000530 | ADVANTAGE SALES & MARKETING ASM LLC | $95,582.00 | Disputed | PO BOX 744347 | | | ATLANTA | GA | 30374-4347 | | | | |
| | 715004000 | CORNING INCORPORATED | $96,957.00 | Disputed | 25765 NETWORK PLACE | | | CHICAGO | IL | 60673-1257 | | | | |
| | 715013480 | RAYMOND LEASING CORPORATION | $97,229.00 | Disputed | PO BOX 301590 | | | DALLAS | TX | 75303-1590 | | | | |
| | 715007260 | HEARST MAGAZINE MEDIA, INC. | $100,000.00 | Disputed | 300 WEST 57TH STREET | | | NEW YORK | NY | 10019 | | | | |
| | 715015280 | SOMOBRESLE | $100,340.00 | Disputed | ZONE INDUSTRIELLE | | | BLANGY SUR BRESLE | | 76340 | | | | |
| | 715009270 | LIBERTY 3025 HIGHLANDS, LLC | $101,420.00 | Disputed | 1140 AVENUE OF THE AMERICAS, SUITE | | | NEW YORK | NY | 10036 | | | | |
| | 715004650 | CSXT N/A 122262 | $102,132.00 | Disputed | PO BOX 640839 | | | PITTSBURGH | PA | 15264-0836 | | | | |
| | 715004840 | DATA M ENGINEERING GMBH | $103,841.00 | Disputed | KONRAD-ZUSE-STR. 3 | | | HOLZKIRCHEN | | 83607 | | | | |
| | 715005810 | EMARSYS NORTH AMERICA, INC. | $105,080.00 | Disputed | 10 W MARKET STREET, SUITE 1350 | | | INDIANAPOLIS | IN | 46204 | | | | |
| | 715009240 | LEWIS BRISBOIS BISGAARD & SMITH LLP | $109,370.00 | Disputed | 633 WEST FIFTH STREET, SUITE 4000 | | | LOS ANGELES | CA | 90071 | | | | |
| | 715015870 | STIKEMAN ELLIOTT LLP | $111,057.00 | Disputed | 1155 RENE LEVESQUE WEST | | | MONTREAL | QC | H3B 3X7 | CANADA | | | |
| | 715016510 | THE NIVEN MARKETING GROUP | $113,638.00 | Disputed | PO BOX 95176 | | | CHICAGO | IL | 60680-0851 | | | | |
| | 715011350 | NYSEG | $115,339.00 | Disputed | PO BOX 847812 | | | BOSTON | MA | 02284-7812 | | | | |
| | 715018910 | YASH TECHNOLOGIES, INC. | $118,260.00 | Disputed | 841 AVENUE OF THE CITIES | | | EAST MOLINE | IL | 61244 | | | | |
| | 715002580 | CDW DIRECT, LLC | $118,700.00 | Disputed | PO BOX 75723 | | | CHICAGO | IL | 60675-5723 | | | | |
| | 715006770 | GENESIS ALKALI WYOMING, LP | $125,211.00 | Disputed | PO BOX 98201 | | | CHICAGO | IL | 60693 | | | | |
| | 715014110 | RSM | $127,220.00 | Disputed | 5155 PAYSPHERE CIRCLE | | | CHICAGO | IL | 60674 | | | | |
| | 715009200 | LEE'S PLUMBING & EXCAVATING INC. | $128,128.00 | Disputed | PO BOX 510 | 469 LAMBERT FOOTDALE ROAD | | NEW SALEM | PA | 15468 | | | | |
| | 715012740 | POSTLER & JAECKLE CORP | $128,927.00 | Disputed | 615 SOUTH AVENUE | | | ROCHESTER | NY | 14620-1385 | | | | |
| | 715002750 | CH REED, INC. | $130,279.00 | Disputed | PO BOX 524 | 301 POPLAR ST | | HANOVER | PA | 17331 | | | | |
| | 715000600 | AEROTEK COMMERCIAL STAFFING | $134,171.00 | Disputed | PO BOX 198531 | | | ATLANTA | GA | 30384-8531 | | | | |
| | 715012310 | PEAK-RYZEX | $136,249.00 | Disputed | 8458 SOLUTIONS CENTER | | | CHICAGO | IL | 60677-8002 | | | | |
| | 715016860 | TOTAL EQUIPMENT COMPANY | $137,651.00 | Disputed | 400 5TH AVENUE | | | CORAOPOLIS | PA | 15108-3945 | | | | |
| | 715015740 | STEPTOE & JOHNSON, LLP | $148,200.00 | Disputed | 1330 CONNECTICUT AVENUE, NW. | | | WASHINGTON | DC | 20036-1795 | | | | |
| | 715016690 | THOMPSON & JOHNSON EQUIP. CO., | $153,847.00 | Disputed | 6926 FLY ROAD | | | EAST SYRACUSE | NY | 13057 | | | | |
| | 715012260 | PC CONNECTION SALES CORPORATION | $156,674.00 | Disputed | 730 MILFORD ROAD | | | MERRIMACK | NH | 03054-4631 | | | | |
| | 715002730 | CFE, INC. | $157,183.00 | Disputed | 35 INDUSTRIAL PARK BLVD. | | | ELMIRA | NY | 14901 | | | | |
| | 715009370 | LITTLER MENDELSON PC | $168,966.00 | Disputed | PO BOX 207137 | | | DALLAS | TX | 75320-7137 | | | | |
| | 715006240 | FINDLAY'S TALL TIMBERS DISTR. CTR., | $196,919.00 | Disputed | PO BOX 952 | | | FINDLAY | OH | 45839-0952 | | | | |
| | 715018860 | YANGJIANG ANGELE KITCHENWARE CO., L | $202,881.00 | Disputed | ZONE 3, YINLING SCIENCE & TECHNOLOG | | | YANGJIANG, 190 | | 529500 | CHINA | | | |
| | 715006540 | FRANCHISE TAX BOARD | $206,006.00 | Disputed | PO BOX 942857 | | | SACRAMENTO | CA | 94257-0511 | | | | |
| | 715018650 | WORKDAY, INC. | $217,343.00 | Disputed | 6110 STONERIDGE MALL ROAD | | | PLEASANTON | CA | 94588 | | | | |
| | 715016020 | SUCCESSFACTORS, INC. | $246,137.00 | Disputed | PO BOX 894642 | | | LOS ANGELES | CA | 90189 | | | | |
| | 715001230 | APPLIED INDUSTRIAL TECHNOLOGIES | $272,260.00 | Disputed | 22510 NETWORK PLACE | | | CHICAGO | IL | 60673-1225 | | | | |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 715015430 | SPRAGUE ENERGY CORPORATION | $278,988.00 | Disputed | PO BOX 30749 | | | HARTFORD | CT | 06150 | | | | | |
| | 715014940 | SHRINK PACKAGING SYSTEMS CORPORATIO | $301,948.00 | Disputed | PO BOX 845454 | | | BOSTON | MA | 02284-5454 | | | | | |
| | 715007050 | GRAPHICS UNIVERSAL INC | $332,458.00 | Disputed | PO BOX 610 | | | GREENCASTLE | PA | 17225 | | | | | |
| | 715015890 | STOBBS IP LIMITED | $373,886.00 | Disputed | BUILDING 1000, CAMBRIDGE RESEARCH P | | | CAMBRIDGE | | CB25 9PD | UNITED KINGDOM | | | | |
| | 715001160 | ANCHOR HOCKING CORP. | $401,185.00 | Disputed | 2630 RELIABLE PARK | | | CHICAGO | IL | 60686 | | | | | |
| | 715008490 | JONES LANG LASALLE MANAGEMENT INC. | $419,117.00 | Disputed | 71700 TREASURY CENTER | | | CHICAGO | IL | 60694-1700 | | | | | |
| | 715007250 | HEALTHLEAD CORPORATION LIMITED | $438,573.00 | Disputed | BUILDING 1, YONGXIN INDUSTRY ZONE, | | | SHENZHEN, 190 | | 518115 | CHINA | | | | |
| | 715007190 | H. MUEHLSTEIN & CO INC | $473,074.00 | Disputed | PO BOX 513437 | | | LOS ANGELES | CA | 90051-3437 | | | | | |
| | 715017360 | UNITED PARCEL SERVICE | $499,451.00 | Disputed | 9623 E. IMPERIAL HWY | | | DOWNEY | CA | 90242 | | | | | |
| | 715016520 | THE NPD GROUP, INC. | $600,000.00 | Disputed | PO BOX 5534 | 24619 NETWORK PLACE | | CHICAGO | IL | 60673-1246 | | | | | |
| | 715003670 | CONSTELLATION NEW ENERGY INC. | $755,809.00 | Disputed | PO BOX 4640 | | | CAROL STREAM | IL | 60197-4640 | | | | | |
| | 715004590 | CROWELL & MORING LLP | $799,781.00 | Disputed | 1001 PENNSYLVANIA AVENUE NW | | | WASHINGTON | DC | 20004 | | | | | |
| | 715009860 | MATRIX ANTRIM PARTNERS, LP | $952,985.00 | Disputed | CN 4000 FORSGATE DRIVE | | | CRANBURY | NJ | 08512 | | | | | |
| | 715018990 | ZHEJIANG AISHIDA HOUSEHOLD EQUIPMEN | $1,687,010.00 | Disputed | NO.69 HUANGHE ROAD | | | JIASHAN, 130 | | 314100 | CHINA | | | | |
| | 727001590 | RESOURCE PRODUCTIVITY & RECOVERY AU | $70.00 | Disputed | 450 MARCH RD, SUITE 102 | | | KANATA | ON | K2K 3K2 | CANADA | | | | |
| | 727001830 | THE BREW CENTRE | $125.00 | Disputed | 319 N. ALBANY | | | CHICAGO | IL | 60612 | | | | | |
| | 727000190 | BELL CANADA | $129.00 | Disputed | PO BOX 5534 | 24619 NETWORK PLACE | | CHICAGO | IL | 60673-1246 | | | | | |
| | 727001990 | VERIZON CANADA LTD | $343.00 | Disputed | PO BOX 1100 | | | TORONTO | ON | M5W 2G5 | CANADA | | | | |
| | 727000530 | DE LAGE LANDEN FINANCIAL SVCS. | $483.00 | Disputed | 1435 WEST FULTON STREET | | | CHICAGO | IL | 60607 | | | | | |
| | 727000350 | CLARITI GROUP INC. | $578.00 | Disputed | PO BOX 76 | | | CARP | ON | K0A1L0 | CANADA | | | | |
| | 727000370 | COGECO CONNEXIONS, INC | $906.00 | Disputed | 1425 GREENWAY DRIVE, SUITE 300 | | | IRVING | TX | 75038 | | | | | |
| | 727001640 | ROGERS COMMUNICATIONS CANADA INC. | $969.00 | Disputed | PO BOX 2000 | | | SCARBOROUGH | ON | M1R 5P4 | CANADA | | | | |
| | 727001300 | MAOMAOMOM KITCHEN INC. | $1,001.00 | Disputed | 29 SWANS WAY | | | OTTAWA | ON | K1J 6H8 | CANADA | | | | |
| | 727001900 | TREASURER OF THE STATE OF OHIO | $1,121.00 | Disputed | 101 N. WACKER DRIVE, SUITE 1500 | | | CHICAGO | IL | 60606 | | | | | |
| | 727001750 | STERICYCLE EXPERTSOLUTIONS | $2,066.00 | Disputed | 27314 NETWORK PLACE | | | CHICAGO | IL | 60673-1273 | | | | | |
| | 727001940 | UNIVOIP SYSTEMS INC. | $2,071.00 | Disputed | 1743 ST LAURENT BLVD. #224 | | | OTTAWA | ON | K2M 2E9 | CANADA | | | | |
| | 727001600 | REVOLUTION RESOURCE RECOVERY INC | $2,400.00 | Disputed | 19500 56TH AVE. | | | SURREY | BC | V3S-6K4 | CANADA | | | | |
| | 727001850 | THE STAFFING EDGE ULC | $4,674.00 | Disputed | 7685 HURONTARIO STREET | | | BRAMPTON | ON | L6W 0B4 | CANADA | | | | |
| | 727000810 | GS1 CANADA | $8,745.00 | Disputed | 8730 STONY POINT PARKWAY, STE 300 | | | RICHMOND | VA | 23235 | | | | | |
| | 727000020 | 1111 INTERNATIONAL NOMINEE INC | $12,975.00 | Disputed | 15 FITZGERALD RD, SUITE 200 | | | OTTAWA | ON | K2H 9G1 | CANADA | | | | |
| | 727001950 | UPS | $13,916.00 | Disputed | 9623 E. IMPERIAL HWY | | | DOWNEY | CA | 90242 | | | | | |
| | 727001460 | PRICEWATERHOUSECOOPERS LLP | $14,888.00 | Disputed | 99 BANK STREET, SUITE 710 | | | OTTAWA | ON | K1P1E4 | CANADA | | | | |
| | 727000140 | AMAZON WEB SERVICES, INC. | $19,597.00 | Disputed | 420 MONTGOMERY STREET | | | SAN FRANCISCO | CA | 94163 | | | | | |
| | 727000680 | FEDERAL EXPRESS CANADA CORPORATION | $20,993.00 | Disputed | PO BOX 4626 TORONTO STN A | | | TORONTO | ON | M5W 5B4 | CANADA | | | | |
| | 727000550 | DELMAR INTERNATIONAL INC. | $25,856.00 | Disputed | 10636 CHEMIN DE LA COTE-DE-LIESSE | | | LACHINE | QC | H8T 1A5 | CANADA | | | | |
| | 727001510 | RBC DEXIA INVESTOR SERVICES TRUST | $28,727.00 | Disputed | 929 FAULTLESS DRIVE | | | ASHLAND | OH | 44805 | | | | | |
| | 727001190 | KRP PROPERTIES. | $116,419.00 | Disputed | 555 LEGGET DR #206 | | | KANATA | ON | K2K 2X3 | CANADA | | | | |
| | 727001960 | UPS SUPPLY SOLUTIONS LTL | $178,070.00 | Disputed | PO BOX 8801 | | | CAROL STREAM | IL | 60197-8801 | | | | | |
| | 727000260 | CANADA CUSTOMS AND REVENUE | $815,854.00 | Disputed | PO BOX 12076 | ST. JOHN'S TAX CENTRE, STATION A | | ST. JOHN'S | NL | A1B 4T4 | CANADA | | | | |

**Schedule 3**
**Lender Notice Parties**

With respect to 11th Lane Partners, LLC:

Quinn Morgan, Mayank Singh and Timothy Chiodo
Centre Lane Partners LLC
60 E. 42nd Street, Suite 2220
New York, NY 10165
qmorgan@centrelanepartners.com
msingh@centrelanepartners.com
tchiodo@centrelanepartners.com

With respect to Citadel Credit Master Fund LLC:

Legal Department
Citadel Americas LLC
Southeast Financial Center
200 S. Biscayne Boulevard, Suite 3300
Miami, FL 33131
CitadelAgreementNotice@citadel.com

With respect to Saratoga Investment Corporation:

Thomas Inglesby
535 Madison Avenue, 4th Floor
New York, NY 10222
tinglesby@saratogapartners.com

**Schedule 4**
**Loan Notice**

**FORM OF**
**COMMITTED LOAN NOTICE**

_____, 20__

Acquiom Agency Services LLC
950 17th Street, Suite 1400
Denver, CO 80202
Attn: Jennifer Anderson – Loan Agency
Email: janderson@srsacquiom.com; loanagency@srsacquiom.com

Ladies and Gentlemen:

Reference is made to the Credit Agreement, dated as of February 27, 2024 (as amended, restated, amended and restated, extended, supplemented and/or otherwise modified from time to time, the "Credit Agreement"; the terms defined therein being used herein as therein defined) among Instant Brands Litigation Trust (the "Borrower" or the "Litigation Trust"), each lender from time to time party hereto (collectively, the "Lenders" and individually, a "Lender"), and Acquiom Agency Services LLC, as administrative agent (the "Administrative Agent"). This notice constitutes a notice in accordance with Section 2.02 of the Credit Agreement, by which Borrower hereby requests a Borrowing of Loans under the Credit Agreement, and in that connection the Borrower specifies the following information with respect to the Borrowing requested hereby:

A. Date of Borrowing, (which is a Business Day): ______________________________ (the "Borrowing Date")

B. Principal Amount: ______________________________

C. Tranche of Loan: ___________

The proceeds of Borrowings should be wired in accordance with the instructions attached hereto.

The Borrower hereby certifies that:

A. as of the Borrowing Date, no Default or Event of Default shall exist or would result from the Borrowing contemplated hereby and requested herein or from the application of the proceeds therefrom.

B. the above request complies with the notice requirements set forth in Section 2.02 of the Credit Agreement.

Instant Brands Litigation Trust, as Borrower

By: ____________________________________
Alan D. Halperin, solely in his capacity as Litigation Trustee

## Schedule 6

**Form of Assignment Agreement**

**FORM OF ASSIGNMENT AGREEMENT**

This Assignment Agreement (the "Assignment Agreement") is dated as of the Effective Date set forth below and is entered into by and between [the][each][1] Assignor identified in item 1 below ([the][each, an] "Assignor") and [the][each][2] Assignee identified in item 2 below ([the][each, an] "Assignee"). [It is understood and agreed that the rights and obligations of [the Assignors][the Assignees][3] hereunder are several and not joint.][4] Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as amended, restated, amended and restated, extended, supplemented and/or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by [the][each] Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment Agreement as if set forth herein in full.

For an agreed consideration, [the][each] Assignor hereby irrevocably sells and assigns to [the Assignee][the respective Assignees], and [the][each] Assignee hereby irrevocably purchases and assumes from [the Assignor][the respective Assignors], subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below (i) all of [the Assignor's][the respective Assignors'] rights and obligations in [its capacity as a Lender][their respective capacities as Lenders] under the Credit Agreement and any other documents or instruments delivered pursuant thereto to the extent related to the amount and percentage interest identified below of all of such outstanding rights and obligations of [the Assignor][the respective Assignors] under the respective facilities identified below and (ii) to the extent permitted to be assigned under applicable law, all claims, suits, causes of action and any other right of [the Assignor (in its capacity as a Lender)][the respective Assignors (in their respective capacities as Lenders)] against any Person, whether known or unknown, arising under or in connection with the Credit Agreement, any other documents or instruments delivered pursuant thereto or the loan transactions governed thereby or in any way based on or related to any of the foregoing, including, but not limited to, contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity related to the rights and obligations sold and assigned pursuant to clause (i) above (the rights and obligations sold and assigned by [the][any] Assignor to [the][any] Assignee pursuant to clauses (i) and (ii) above being referred to herein collectively as [the][an] "Assigned Interest"). Each such sale and assignment is without recourse to [the][any] Assignor and, except as expressly provided in this Assignment Agreement, without representation or warranty by [the][any] Assignor.

1. Assignor[s]: ___

[1] For bracketed language here and elsewhere in this form relating to the Assignor(s), if the assignment is from a single Assignor, choose the first bracketed language. If the assignment is from multiple Assignors, choose the second bracketed language.

[2] For bracketed language here and elsewhere in this form relating to the Assignee(s), if the assignment is to a single Assignee, choose the first bracketed language. If the assignment is to multiple Assignees, choose the second bracketed language.

[3] Select as appropriate.

[4] Include bracketed language if there are either multiple Assignors or multiple Assignees.

2. Assignee[s]:[5] __

3. Borrower: Corelle Brands Holdings Inc.

4. Holdings: Corelle Brands Acquisition Intermediate Holdings Inc.

5. Administrative Agent: Acquiom Agency Services LLC, including any successor thereto, as the administrative agent under the Credit Agreement

6. Credit Agreement: Credit, dated as of [•], 2024 (as amended, restated, amended and restated, extended, supplemented and/or otherwise modified from time to time, the "Credit Agreement"), among the Borrower, the Administrative Agent and each Lender from time to time party thereto.

7. Assigned Interest:

| Assignor[s][6] | Assignee[s][7] | Aggregate Amount of Commitment /Loans for all Lenders[8] | Amount of Commitment /Loans Assigned[9] | Percentage Assigned of Commitment /Loans[10] | CUSIP Number |
|---|---|---|---|---|---|
| | | $ | $ | % | |
| | | $ | $ | % | |
| | | $ | $ | % | |
| | | $ | $ | % | |

8. [Trade Date: ______________________________________]

Effective Date:________, 20 [TO BE INSERTED BY THE ADMINISTRATIVE AGENT AND WHICH SHALL BE THE EFFECTIVE DATE OF RECORDATION OF TRANSFER IN THE REGISTER THEREFOR.]

[*Signature Pages Follow*]

[5] For each Assignee, indicate [Affiliate][Approved Fund] of [identify Lender], if applicable.
[6] List each Assignor, as appropriate.
[7] List each Assignee, as appropriate.
[8] Amounts in this column and in the column immediately to the right to be adjusted by the counterparties to take into account any payments or prepayments made between the Trade Date and the Effective Date.
[9] If the amount is less than the entire remaining amount of the Assignor's Commitment, must not be less than $1 million, unless each of the Administrative Agent and, so long as no Event of Default has occurred and is continuing, the Borrower otherwise consents.
[10] Set forth, to at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders thereunder.

The terms set forth in this Assignment Agreement are hereby agreed to:

ASSIGNOR:

[NAME OF ASSIGNOR]

By: ______________________________
Name:
Title:

ASSIGNEE:

[NAME OF ASSIGNEE]

By: ______________________________
Name:
Title:

[Consented to and][1] Accepted: Acquiom Agency Services LLC,
as Administrative Agent

By: ______________________________
Name:
Title:

[Consented to

Corelle Brands Holdings Inc.,

By: ______________________________
Name:
Title:][2]

[1] To be completed if the Assignor and the Assignee intend that the minimum assignment amount is to be determined as of the Trade Date. No consent of the Administrative Agent shall be required for an assignment of a Loan to a Lender, an Affiliate of a Lender or an Approved Fund.

[2] To be added only if the consent of the Borrower is required by Section 10.03 of the Credit Agreement.

**ANNEX 1 TO**
**ASSIGNMENT AGREEMENT**

**STANDARD TERMS AND CONDITIONS FOR**
**ASSIGNMENT AGREEMENT**

1. Representations and Warranties.

1.1 Assignor[s]. [The][Each] Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of [the][the relevant] Assigned Interest, (ii) [the][such] Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment Agreement and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with the Credit Agreement or any other Loan Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Loan Documents or any collateral thereunder, (iii) the financial condition of the Borrower, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Loan Document, or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Loan Document.

1.2 Assignee[s]. [The][Each] Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment Agreement and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all the requirements to be an assignee under Section 10.03 of the Credit Agreement (subject to such consents, if any, as may be required under Section 10.03) of the Credit Agreement), (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement as a Lender thereunder and, to the extent of [the][the relevant] Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it is sophisticated with respect to decisions to acquire assets of the type represented by [the][such] Assigned Interest and either it, or the Person exercising discretion in making its decision to acquire [the][such] Assigned Interest, is experienced in acquiring assets of such type, (v) it has received a copy of the Credit Agreement, and has received or has been accorded the opportunity to receive copies of the most recent financial statements delivered pursuant to Section 6.01 thereof, as applicable, and such other documents and information as it deems appropriate to make its own credit analysis and decision to enter into this Assignment Agreement and to purchase [the][such] Assigned Interest, (vi) it has, independently and without reliance upon the Administrative Agent or any other Lender and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Assignment Agreement and to purchase [the][such] Assigned Interest, and (vii) it is an Eligible Assignee and a U.S. Person (each as defined in the Credit Agreement), attached hereto is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by [the][such] Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent, [the][any] Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Loan Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Loan Documents are required to be performed by it as a Lender.

2. Payments. From and after the Effective Date, the Administrative Agent shall make all payments in respect of [the][each] Assigned Interest (including payments of principal, interest, fees and other amounts) to [the][the relevant] Assignor for amounts which have accrued to but excluding the Effective Date and to [the][the relevant] Assignee for amounts which have accrued from and after the

Effective Date. Notwithstanding the foregoing, the Administrative Agent shall make all payments of interest, fees or other amounts paid or payable in kind from and after the Effective Date to [the][the relevant] Assignee.

3. General Provisions. This Assignment Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. This Assignment Agreement may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment Agreement by telecopy or other electronic imaging means shall be effective as delivery of a manually executed counterpart of this Assignment Agreement. This Assignment Agreement shall be governed by and construed and interpreted in accordance with the internal laws of the State of New York (including, without limitation, Section 5-1401 of the General Obligations Law of the State of New York).