# Exhibit 17

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO COMMON INTEREST PRIVILEGE

# COMMON INTEREST AGREEMENT

1. Parties:

The parties to this Common Interest Agreement ("Agreement") are Alan D. Halperin, solely in his capacity as the Litigation Trustee (the "Trustee") of the Instant Brands Litigation Trust ("Trust"), each of Martin Olson, Benjamin Xie and Jonny Cheatle (collectively, the "Board Members"), John L. Sinna (the "ex officio Board Member"), and each of Citadel Advisors LLC and Parabellum Capital LLC, solely in their respective capacities as investment adviser, manager or portfolio manager to one or more beneficiaries of the Trust (collectively with the ex officio Board Member, the Trustee and Board Members, the "Parties" or, individually, a "Party"). Additional parties may be added to this Agreement by the written agreement of the existing Parties.

2. Background and Purpose:

Alan D. Halperin serves as the Trustee; each of the Board Members are members of the Litigation Trust Advisory Board of the Trust (the "Board"), as well as agents of certain of the beneficiaries of the Trust; and the ex officio Board Member, an agent of certain of the beneficiaries of the Trust, does not have voting rights and shall function as an observer member of the Board. The roles and responsibilities of the Trustee and Board are set forth in the Litigation Trust Agreement dated as of February 27, 2024 (the "Trust Agreement"), and include the investigation and pursuit of the Litigation Trust Recovery Actions[1] (referred to herein as the "Action"). This Agreement is intended to cover communications relating to the Action, and any other litigation or potential litigation that may be brought by the Trustee for and on behalf of the Trust and its beneficiaries.

The Parties have common legal interests in the investigation and prosecution of the Action. The purposes of this Agreement are as follows: (a) cooperation in the investigation and prosecution of the Action; (b) sharing, preserving, and protecting privileged and confidential information necessary to investigate and prosecute the Action; (c) sharing information and documents in confidence to further the Parties' common legal interests in the Action; and (d) coordinating and cooperating in the investigation and prosecution of the Action and in defending any counterclaims that may be asserted by the defendant(s) in the Action. All such shared information and documents, including confidential and/or privileged information and documents, whether in oral or written form, comprise, individually and collectively, "Common Interest Materials". The Parties require the ability to share Common Interest Materials in order to fulfill their obligations

[1] As used in the Trust Agreement and as defined in the confirmed and effective Combined Disclosure Statement and Joint Chapter 11 Plan of Reorganization of Instant Brands Acquisition Holdings Inc. and its Debtor Affiliates (as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms thereof, the "Plan")

and duties under the Plan and Trust Agreement and to advance their common legal interests in the investigation and prosecution of the Action.

3. Limitations and Duration:

This Agreement does not itself constitute (or prohibit) an agreement or understanding among the Parties about any other business dealings unrelated to the investigation and prosecution of the Action. This Agreement does not apply to any business dealings between or among the Parties save and except for the common legal interests in investigating and prosecuting the Action.

Except for the Common Interest Doctrine and the Confidentiality and Nondisclosure provisions set forth in Section 4 and 5 below, this Agreement shall terminate upon the termination of the Trust, or as to a Party withdrawing from this Agreement, upon withdrawal.

Nothing contained herein shall limit the authority of any Party to assert or refrain from asserting any position, argument, or defense, regardless of whether it may be contrary or detrimental to the position, argument, or defense asserted or not asserted by another Party, provided that doing so does not violate any confidentiality or privilege provisions contained herein unless agreed otherwise by the affected Party(s).

The Parties understand and have agreed since they first began communicating about the Action that all communications and information shared among the Parties in relation to the investigation and prosecution of the Action have been and were intended by the Parties to be Common Interest Materials, and all such prior communications and shared information are subject to the terms and conditions set forth in this Agreement to the same extent as if they had taken place after the execution of this Agreement.

Each Party acknowledges that no other Party herein makes any representation or warranty (express or implied) as to the accuracy or completeness of any materials furnished pursuant to this Agreement.

4. Common Interest Doctrine:

Some or all of the Common Interest Materials may be confidential, privileged and/or immune from disclosure to parties other than the Parties as a result of the attorney-client privilege, the work-product doctrine, the common interest privilege, the community of interest doctrine, the allied litigant doctrine, or other applicable privileges or protections. (These privileges, doctrines, and/or rules are referenced in this Agreement as the "Common Interest Privileges.")

It is the mutual understanding of the Parties that the exchange of Common Interest Materials is not intended to waive or diminish in any way the existing confidential or privileged status of such Common Interest Materials. The Parties also intend and understand that any exchange or discussion among themselves regarding Common Interest Materials will not constitute a waiver of any applicable Common Interest Privileges, or any other privilege, immunity, or protection. The Parties agree that the nature of their legal interests as discussed in this Agreement are common, that such disclosures of matters of common legal interest are important to the effective

investigation and prosecution of the Action, and therefore, that such disclosures are covered under the common interest doctrine, and the like.

Absent an express statement to the contrary, all disclosures and exchanges of Common Interest Materials between the Parties since they first began communicating about the Actions are and will be made pursuant to this Agreement.

Whenever possible, Common Interest Materials shall be labeled or designated as such, but failure to so label any Common Interest Materials shall not exclude that information from the scope of Common Interest Materials and shall not constitute a waiver of any privilege, nor a waiver of any right or obligation provided for in this Agreement.

5. Confidentiality and Nondisclosure:

Nothing herein shall be construed as requiring a Party to disclose any information to any other Party. Nothing contained herein shall obligate any Party to exchange or communicate any Common Interest Materials to any other Party.

This Agreement shall be kept confidential under the Common Interest Privileges. Common Interest Materials shall be kept and remain confidential under and subject to the Common Interest Privileges under the terms of this Agreement, subject to the terms and conditions hereof and unless otherwise provided herein, shall not be disclosed to anyone except employees, agents, and counsel of (a) the Parties, and (b) their related corporate entities who need to know the information to facilitate the Parties' prosecution of the Action (who shall each be informed of and agree to be bound by this agreement in advance of disclosure and then who shall be bound to preserve such confidences in the same manner as each Party) ("Advisor Party"), and shall be used only in connection with the Action, unless each of the Parties has provided express consent for the disclosure of Common Interest Materials to individuals other than those previously listed.

A Party may also designate Common Interest Materials shared as "OUTSIDE COUNSEL ONLY" if in-house attorneys, agents, and employees should not be given access to the information. In that case, only outside counsel, their employees, agents, and experts may access the information in the manner prescribed in this Agreement.

Outside consultants retained to perform work relating to the Action on behalf of a Party may be given Common Interest Materials only with the prior written approval of the Party who provided the Common Interest Materials, and only if such consultant is under an obligation of confidentiality and such disclosure is under circumstances that maintain applicable privileges and immunities.

In the event that any of the Parties is served with legal process by subpoena, discovery requests, or other demand for disclosure (a "Discovery Demand"), to divulge this Agreement or any Common Interest Materials shared pursuant to this Agreement, the Party subject to such process shall as soon as reasonably practicable provide written notice to the Party(s) whose Common Interest Materials or otherwise confidential information is requested and the Trustee, together with a copy of such Discovery Demand so as to allow them to take whatever action they deem appropriate to oppose the Discovery Demand, including the filing of a motion for a protective order, provided that in any event, the Parties agree that in response to a Discovery Demand, they

will assert all applicable privileges to prevent or limit disclosure of the Common Interest Materials. No Common Interest Materials may be destroyed or discarded until the Discovery Demand is resolved. Nothing in this Agreement shall require a Party to refuse to obey any law, rule, or court order that has not been stayed.

The Parties agree that any disclosure of Common Interest Materials that is not authorized pursuant to the terms of this Agreement shall not be deemed a waiver of the attorney-client privilege, the work product doctrine, or any other applicable Common Interest Privileges, or other privilege or immunity, of any Party hereto. In the event such unauthorized disclosure is nevertheless found to be a waiver, it shall be considered a waiver only as to the specific information disclosed and shall not be deemed a general waiver as to the subject matter to which the disclosed information relates. In the event of disclosure of any Common Interest Materials not permitted by this Agreement, the Party and/or counsel responsible for causing the disclosure agree to immediately notify any other Parties about the disclosure. In addition, the Party and/or counsel responsible for causing the disclosure agrees to make diligent efforts at its own expense to restore the confidentiality, privilege or immunity to such disclosed material. It is expressly understood that nothing contained in this Agreement shall limit the right of any of the Parties to disclose to anyone (or withhold disclosure from anyone) any of their own documents and information or information obtained independently and not pursuant to this Agreement, as they see fit.

Notwithstanding any of the foregoing, and except as set forth in this Paragraph below, this Agreement shall not restrict any Party from using in any manner or disclosing Common Interest Materials if such material: (a) was or becomes publicly available through no fault of such Party, and other than by a disclosure in violation of this Agreement, (b) was or is discovered independently by the Party or receiving counsel (including by legal discovery such as document production); (c) was or is provided by a third party that to the knowledge of the Party rightfully received or possessed the Common Interest Materials without restriction on disclosure; (d) originated from that Party and does not incorporate any Common Interest Materials received from another counsel or Party; or (e) consists of Common Interest Materials that are discovered jointly by multiple Parties.

The Parties agree that except as otherwise provided in this Agreement, Common Interest Materials shall continue to be held confidential and subject to the Common Interest Privileges and all other applicable privileges and protections even if an adversity of interest may subsequently be discerned or arise between or among them.

Upon entry of a protective order by the Court in the Action, any Common Interest Materials produced under that order shall be treated in accordance with the terms therein, those terms supplementing these. If there is any inconsistency between this Agreement and any protective order subsequently issued by the court in the Action, the terms of the protective order shall govern.

Each of the Parties acknowledges and agrees that they shall have no right to waive or cause waiver of any attorney-client, work product, or other privilege or immunity from disclosure that would otherwise protect or apply to the Common Interest Materials shared by another Party or its counsel, and that the right to waive or cause waiver of any attorney-client, work product, or other privilege or immunity from disclosure that would otherwise protect or apply to the Common Interest

Materials shall at all times remain with the Party (or, as applicable, its representative, including counsel) that shares such Common Interest Materials. The Parties agree that the inadvertent or unintentional disclosure of privileged or work product materials supplied under this Agreement, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of any applicable confidentiality, privilege or immunity, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter (and no Party will assert such a waiver argument). Upon the discovery of the inadvertent error, the disclosing Party must immediately notify all other Parties, and the Parties shall cooperate to restore the confidentiality, privilege or immunity to that disclosed material, including retrieval of all copies, if possible.

In the event the Trustee is no longer the trustee of the Trust or any Board Member or ex officio Board Member no longer serves on the Board, the Parties agree that any Common Interest Materials disclosed by that Party or its attorneys, advisors, representatives, or agents may continue to be used or disclosed in accordance with the terms of this Agreement.

6. Withdrawal:

A Party may voluntarily withdraw from this Agreement upon written notice to all of the other Parties to this Agreement. In the event of a withdrawal by a Party, the withdrawing Party shall continue to protect all Common Interest Materials shared prior to such withdrawal. The Parties shall continue to be bound by this Agreement with regard to any information learned or obtained pursuant to this Agreement. The remaining Parties are free to use previously disclosed Common Interest Materials provided or created by the withdrawing Party to the extent such use is consistent with the Parties' obligations under this Agreement, the Trust Agreement, and any joint work in progress at the time of the withdrawal will be shared with the remaining Party. Any remaining Parties may continue to use, in connection with the Action and consistent with this Agreement, facts, documents, and theories that are learned or derived from Common Interest Materials that were provided by a Party who later withdraws.

Nothing in this Agreement requires a Party or any other person to return or destroy any Common Interest Materials.

Furthermore, any remaining Party shall be entitled, at their own cost, to continue the employment and use of any expert witnesses or consulting experts retained jointly by or on behalf of the Parties in connection with and/or in furtherance of their common legal interest in the prosecution of the Action, and no withdrawing Party shall interfere with or take any action to prevent such experts' continued work with and for any remaining party and their counsel.

7. Additional Parties:

Additional parties who share a common legal interest with the original Parties to this Agreement may join this Agreement at a later time with the joint consent of all Parties to this Agreement, provided that additional parties execute a copy of this Agreement with a written acknowledgement that they have read this Agreement, agree that they will be treated for purposes of this Agreement

as a "Party" as that term is used in this Agreement, and agree to be bound by all of the Agreement's terms.

8. Waiver of Conflicts of Interest:

Nothing contained herein or done pursuant to this Agreement creates or shall be deemed or construed in any way to create an attorney-client relationship, fiduciary relationship, partnership, joint venture, principal and agent relationship, or relationship of representation or agency between any Party and any counsel. All attorney-client relationships related to the Action are subject to the terms of independent agreements between the Parties and their respective counsel and nothing herein shall be construed to affect such separate and independent representation of the Parties by their respective counsel. The parties agree that neither this Agreement nor performance under it shall create a conflict of interest for any Party or any counsel representing a Party.

This Agreement shall not in any way preclude any Party or their counsel from exercising their ability to deal separately with an adverse party in any action, including without limitation settling a claim or defense and/or litigating a position in a court of law. Nothing herein shall be construed so as to require any Party either to consult with, or to seek the consent of any other Party hereto with respect to any such separate action taken as to an adverse party in any action. Likewise, nothing in this Agreement shall obligate any Party in any way to participate or assist another Party in any litigation or potential litigation. Each Party expressly reserves the right to make its own independent judgments in all matters and on all issues.

No Party to this Agreement shall claim or argue, now or at a later date, that any Party's counsel is disqualified or should otherwise be prevented from representing another party in any current or future dispute, arbitration, mediation, litigation, etc., and that may involve or relate to a Party to this Agreement, on the basis of the execution of this Agreement, the common legal interests the Parties share relating to this Action, and/or the exchange of any Common Interest Materials.

In the event the Trustee is no longer the trustee of the Trust (a successor having been appointed) or any Board Member or ex officio Board Member no longer serves on the Board, such Party and any Advisor Party related to such Board Member or ex officio Board Member shall be deemed to have withdrawn from this Agreement.

9. Limitation on Use of Common Interest Materials:

It is agreed that all Common Interest Materials obtained pursuant to this Agreement, and information derived from the Common Interest Materials shared pursuant to this Agreement, may be used for no purpose other than for preparation of and in furtherance of the investigation and prosecution of the Action, and shall not be used in connection with any subsequent litigation or other matter, unless legally obtained through due process of law outside of this Agreement.

Notwithstanding the foregoing, nothing in this Agreement shall prevent or restrict a Party from using, at its sole discretion, any documents or information that it initially provided to any other Party or Parties, pursuant to this Agreement, even if it is Common Interest Materials. .

This Agreement shall not be construed to require any Party or its counsel to disclose (a) any client-privileged information or communications related to Common Interest Materials, or (b) any privileged or work-product documents or information unrelated to Common Interest Materials that such Party, or respective counsel, in their sole discretion, shall determine not to disclose. The failure of any Party to disclose any information shall in no way affect the validity of this Agreement or the application of its terms to the Parties. Each Party reserves the right to determine for itself the information it will share, and no obligation or duty to share any such information is created by this Agreement. This Agreement shall not prevent one Party from seeking discovery of materials from another Party that the first Party would have been entitled to the discovery of in the absence of this Agreement and in the absence of the exchange of information pursuant to this Agreement. The Parties recognize their right to conduct and pursue separate diligence, investigations, witness interviews, and strategies, without necessarily sharing such information or data with the other Parties.

10. Injunctive Relief Appropriate:

The Parties agree that irreparable harm shall be presumed and that injunctive relief shall be the exclusive remedy available for any breach of this Agreement and that no monetary or other damages shall be available.

11. Severability of Agreement:

In the event that any provision of this Agreement shall be held by any court of competent jurisdiction to be illegal, void or unenforceable, then such provision shall have no force or effect, but the illegality or unenforceability of such provisions shall neither affect nor impair the enforceability of any other provision of this Agreement.

12. Governing Law:

The construction and effect of this Agreement shall be governed by the laws of the state of New York, without giving effect to its conflict of laws principles. Nothing in this paragraph, however, shall be deemed to change the fact that any dispute regarding the Agreement shall be governed by the applicable law regarding the Common Interest Privileges.

13. Entire Agreement:

This Agreement memorializes and subsumes, for each signatory below as of the Effective Date, any and all earlier written or oral agreements between that signatory and all other signatories concerning the subject matter of this Agreement, except any written or oral agreements between Parties sharing the same counsel, and this Agreement is also the entire agreement among its signatories about its subject matter.

The Parties agree that this Agreement covers any Common Interest Materials already communicated between the Parties, even if communicated before execution of this Agreement. The provisions of this Agreement may be modified only by written agreement of the Parties.

14. Existing Agreements:

Entry into this Agreement shall not affect or alter any other obligations or agreements between or among any of the Parties hereto that now exist or that will come into existence in the future, including, without limitation the Trust Agreement. In particular, this Agreement does not change the confidentiality terms of the other agreements between any of the Parties under which confidential information has been and will be exchanged, or any indemnity or other agreements including, without limitation the Trust Agreement. For the avoidance of doubt, nothing contained in this Agreement shall waive or modify any of the terms of the Plan or the Trust Agreement.

15. Acceptance Through Counsel:

Each counsel who signs this Agreement on behalf of her/his client represents that s/he has fully explained the terms of this Agreement to the client and is fully satisfied that the client understands the terms, agrees to abide by them, and that the attorney is expressly authorized to execute this agreement on behalf of the client.

16. Joint Drafting by Parties:

The language used in this Agreement shall be deemed language chosen and drafted by all Parties to express their mutual intent and no strict construction shall be applied against any Party. Each Party acknowledges that it has been represented by its own independent legal counsel when negotiating, drafting, and executing this Agreement.

17. Execution in Counterparts and Binding Nature of Agreement:

This Agreement may be executed in one or more counterparts, all of which when taken together will comprise one instrument. Facsimile and email copies of signature shall be deemed and treated as originals, provided counsel for at least one Party receives and retains an original signature for each Party signing this Agreement for use as evidence if an issue should arise regarding the authenticity of any facsimile or email copies of signatures. This Agreement shall be binding on each signing Party's successors and assigns.

18. Effective Date:

This Agreement is effective as of March 10, 2025.

19. Notices:

All notices and other communications shall be sent electronically to the email addresses set forth below.

[Signature page to follow]

Docusign Envelope ID: 4AA6571E-C5F9-4C07-AAE0-9112E6A3A05B

* * * * * * * *

Accepted and agreed:

Alan D. Halperin, solely in his capacity as the Litigation Trustee of the Instant Brands Litigation Trust

Date: March 10, 2025

By: [signature], as Trustee

*NAME* Alan Halperin

Email: ahalperin@halperinlaw.net

Docusign Envelope ID: 4AA6571E-C5F9-4C07-AAE0-9112E6A3A05B

* * * * * * * *

Accepted and agreed:

Martin Olson

Date: March 11, 2025

By: ____________________

*NAME* Martin Olson
Email: Martin.Olson@ravago.com

* * * * * * * *

Accepted and agreed:

Benjamin Xie

Date: March 10, 2025

By: ______________________

*NAME*

Email: BENJAMIN.XIE@CITADEL.COM

* * * * * * * *

Accepted and agreed:

Date: 3.6.25

Jonny Cheatle

By: [signature]

*NAME*
Email: jonny.cheatle@citadel.com.

* * * * * * * *

Accepted and agreed:

John L. Sinna

Date: 3/10/2025

By: [signature]

*NAME* John Sinna
Email: jsinna@parabellumcap.com

* * * * * * * *

Accepted and agreed:

Citadel Advisors LLC

Date: March 10, 2025

By: DocuSigned by: [signature] 192A62265C91460...

*NAME* Antonia Peabody

Email: CitadelAgreementNotice@citadel.com



JC