# Exhibit 21

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

\- - - - - - - - - - - - - - - - - - - - - x

IN RE:

| | |
|---|---|
| INSTANT BRANDS ACQUISITION HOLDINGS, INC., et al., | Case No. 23-90716(MI) |

Reorganized Debtors.

\- - - - - - - - - - - - - - - - - - - - - x

Videotaped deposition of MARTIN OLSON, taken pursuant to subpoena, was held at the law offices of SMITH GRAMBELL RUSSELL, 1301 Avenue of the Americas, New York, New York, commencing September 10, 2026, 10:11 a.m., on the above date, before Leslie Fagin, a Court Reporter and Notary Public in the State of New York.

\- - -

A P P E A R A N C E S:

ELSBERG BAKER & MARURI
Attorneys for Plaintiff
1 Penn Plaza, 40th Floor
New York, New York 10119
BY: CHASE SHELTON, ESQUIRE

BOIES SCHILLER & FLEXNER LLP
Attorneys for Defendant CORNELL CAPITAL LLC
55 Hudson Yards
New York, New York 10001
BY: BROOKE ALEXANDER, ESQUIRE
CAROLYN DRELL, ESQUIRE

GREENBERG TRAURIG, LLP
Attorneys for FORMER OFFICERS AND DIRECTORS DEFENDANTS
One Vanderbilt Avenue
New York, New York 10017
BY: MIAN WANG, ESQUIRE
(Via Zoom)

DENTONS US LLP
Attorneys for SELLER AND FOUNDER DEFENDANTS
1121 Avenue of the Americas
New York, New York 10020
BY: LEANNE SUNDERLAND, ESQUIRE
(Via Zoom)

DECHERT LLP
Attorneys for CITADEL ADVISORS BEN XIE and JONNY CHEATLE
3 Bryant Park
New York, New York 10036
BY: GARY MENNITT, ESQUIRE
(Via Zoom)

A P P E A R A N C E S: (Cont'd)

SMITH GRAMBELL RUSSELL
Attorneys for the Witness MARTIN OLSON
1301 Avenue of the Americas
15th Floor
New York, New York 10019
BY: MITCH ACKAL, ESQUIRE

DLA PIPER LLP (US)
Attorneys for Former counsel to the initial community secured credit groups in the Instant Brand case
1251 Avenue of the Americas
New York, New York 10020
BY: DENNIS O'DONNELL, ESQUIRE

ALSO PRESENT:

MARC ROSEN (Via Zoom)

ROBERT HUNCKLE, Videographer
Magna Legal Services

THE VIDEOGRAPHER: Good morning. We are now on the record.

Today's date is September 10, 2026 and the time is 10:11 a.m.

This begins the video deposition of Martin Olson in the matter of In Re: Instant Brands Acquisitions, et al.

Will each of the attorneys please identify themselves and state their interest in the case and we also have some Zoom participants and they may introduce themselves as well and then the court reporter will swear the witness in and we will begin.

MS. ALEXANDER: Good morning. Brooke Alexander from Boies Schiller Flexner for Cornell Capital, LLC and the other Cornell entities and here with me from Boies Schiller is Carolyn Drell.

MR. ACKAL: Mitch Ackal representing Mr. Olson, the deponent, and I'm with Smith Gambrell.

MR. SHELTON: Chase Shelton from Elsberg Baker & Maruri on behalf of Alan

Halperin in his capacity as the litigation trustee in the Instant Brands Litigation Trust.

MR. O'DONNELL: Dennis O'Donnell, DLA Piper, former counsel to the initial community secured credit groups in the Instant Brand case.

MR. MENNITT: Gary Mennitt of Dechart LLP for the Citadel Advisors, Benjamin Xie and Jonny Cheatle.

(Whereupon, Zoom participants introduced themselves.)

M A R T I N  O L S O N, called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:

EXAMINATION BY
MS. ALEXANDER:

Q. Good morning, Mr. Olson.
A. Good morning.
Q. Thanks for being here today.
Have you been deposed before?
A. Yes, one time in Las Vegas many years ago.

M. Olson

Q. Was that in any way related to the matter we are here on today?

A. No, not at all.

Q. And have you ever testified in court?

A. No.

Q. Since it's been a while, I will refresh your recollection on the ground rules for how things are going to work today before we get started.

First off, the court reporter here needs to write down everything we say so please make sure you answer orally. She can't write down any nods.

Please speak loudly and slowly so that we don't miss any of your testimony.

Do you understand?

A. Yes.

Q. Great. There will be objections today and there may be objections coming from the participants on Zoom.

As a result, I would ask that you pause after I finish my question before answering to allow anyone to lodge those

M. Olson

objections.

Do you understand?

A. Yes.

Q. Documents, we may hand you documents to review today. If we do, I would ask that you take as much time as you need and let me know when you are ready to hear the question.

Do you understand?

A. Yes.

Q. I will try to take a break around the one-hour mark, but if you need a break at any time, all you need to do is ask.

Do you understand?

A. Yes.

Q. The only thing I will ask is that if there is a question pending, you answer that question before we go out on the break.

A. Okay.

Q. If you don't understand any of the questions I'm asking, please ask me to clarify before you give your answer.

A. Yes.

Q. Terrific. Is there any reason you

M. Olson

can't give truthful and accurate testimony here today?

A. No.

Q. Are you currently employed?

A. No, I am retired.

Q. Where were you last employed?

A. At Muehlstein Ravago. Basically, I worked there for 25 years plus and I retired on June 6, 2025.

Q. What does Ravago do?

A. Ravago is a plastic resin distributor.

Q. Do you understand that you are here testifying today as a litigation trust advisory board member of the Instant Brands Litigation Trust?

A. Yes.

MR. SHELTON: Objection to form.

MR. ACKAL: Objection.

Q. In what capacity are you testifying today?

MR. ACKAL: Objection, form.

You can answer the question if you understand it.

M. Olson

A. Basically, as I was a member of it, but I resigned when I retired so that was over 14 months ago basically.

Q. Understood. What do you recall about the circumstances surrounding your appointment to the litigation trust advisory board?

A. That was after the -- we were on the unsecured creditors committee and there was some questions about the actions of, in that case, Cornell Partners and the $200 million that they basically took out back in 2021, that's what caused the action to be part of the members.

We had a litigation and Alan Halperin was the trustee who basically was appointed by that case, the board, the unsecured creditors committee, which I was part of, and that was a question on that and we had voted to basically ask Alan Halperin to represent us.

MR. ACKAL: Mr. Olson, try to talk just a little slower so that the court reporter can take down every word that

you say.

THE WITNESS: Will do.

Q. When you say us, who are you referring to?

A. The members of the unsecured creditors committee.

Q. On or about what date did you take your seat on the litigation trust advisory board?

A. I don't recall.

Q. Who were the other members of the board at the time you joined?

A. I don't recall that because I haven't been in the business for over 14 months so I have no recollection of that.

Q. At any time when you sat on the litigation trust advisory board, do you recall the names of the other members?

A. I don't recall.

Q. Do you recall how many members there were?

A. No.

Q. Do you recall the entities for whom the or with whom the other members were

M. Olson

employed?

A. No.

Q. Who first approached you about joining the litigation trust advisory board or the LTAB?

A. That was actually -- it was approached to us, to me, and also by the attorney that was on my legal advisor, Dipesh Patel, and basically the question was raised, do you want to join, and I said yes.

Q. Do you have an understanding of whether you were approached in your personal capacity or in your capacity as an employee of Ravago?

A. That was as an employee of Ravago.

Q. What, if anything, were you told about why you were being asked to join?

MR. ACKAL: Objection.

I'm going to assert the attorney-client privilege just to the extent that any information that you have that Dipesh told you, that's attorney-client privilege and I'm instructing you not to give that

information in response.
Make sense?
THE WITNESS: Yes.
Q. You can answer to the extent you can subject to your attorney's instruction.
A. Can you repeat the question?
Q. Sure. What do you recall about the circumstances surrounding your appointment to the litigation trust -- strike that.
What do you recall about the circumstances surrounding your appointment to the litigation trust advisory board?
A. That we needed to have a committee to look into the matter of Cornell Capital Partners.
Q. What, if anything, were you told about why you were being asked to join, disregarding any information you obtained from counsel?
A. They was just looking -- they wanted to have some members from the unsecured creditors committee to join. That was about it.
Q. What is your understanding of the

purpose of the unsecured creditors committee?

MR. SHELTON: Objection to form.

A. Unsecured credit was mainly for us to look out for the interest of the unsecured creditors when it came to the bankruptcy case.

Q. Is it your understanding that there were other interests being protected by other individuals?

MR. SHELTON: Objection to form.

Q. In the same process?

MR. SHELTON: Sorry. Objection to form.

THE WITNESS: Should I answer?

MR. ACKAL: You can answer.

A. No.

Q. What, if anything, do you know about the term lenders and their representation on the litigation trust advisory board?

MR. ACKAL: Objection, form.

A. I don't recall.

Q. What, if anything, do you recall being told about what the litigation trust

M. Olson

advisory board was supposed to do during its tenure?

MR. SHELTON: Objection to form.

A. To look into the matter of Cornell Capital Partners and other entities.

Q. How often did the LTAB have board meetings?

A. I don't recall, but I mean, mostly there was some conference calls or emails, that was about it.

Q. Do you recall approximately how frequently the board was in communication?

A. Once a month.

Q. Do you recall if the board had any in-person meetings?

A. No, we did not.

Q. What was the primary method of communication used by the LTAB?

A. I would say most of it was emails.

Q. Did the LTAB hold video or Zoom calls?

A. Not that I recall.

Q. Did the LTAB hold phone calls?

A. No, it was basically emails.

Q. Did the LTAB receive any regular documents or other prepared correspondences such as memorandums, agendas or outlines?

MR. SHELTON: Objection to form.

A. Yes.

Q. Could you tell me what those were?

A. It was probably, the best I recall, it was about the proceeding, what they actually -- there was basically what the investigation was recovering, that was it.

Q. How did the LTAB vote?

A. Vote was normally by email and I conferred with my counsel in most cases. He actually was the one who sent the email.

Q. When you were voting, who did you send your votes to?

A. Voting was basically, I think I voted -- I conferred with my legal advisor and he sent the emails to Alan Halperin.

Q. Do you recall how many votes were required in order for the litigation trust advisory board to take an action?

A. No, I don't.

Q. Do you recall whether a consensus

of all members was required?

A. I don't.

Q. Do you recall if anyone received the litigation trust advisory board emails who was not a member?

MR. SHELTON: Objection to form.

A. I am not aware.

Q. Do you recall any situations where someone who was not a litigation trust advisory board member voted on a litigation trust advisory board vote?

A. No.

Q. What, if anything, do you recall about the kinds of decisions that were put to a vote on the LTAB?

MR. SHELTON: Objection to form.

A. I don't recall them, I don't recall it.

Q. Sitting here today, do you recall any votes that you took as a member of the LTAB?

A. No, I don't.

Q. Sitting here today, do you recall any specific issues on which the trustee

M. Olson

consulted the LTAB before making a decision?

MR. SHELTON: Objection to form.

Q. Without revealing the substance thereof.

A. No.

Q. During your time on the LTAB, do you recall receiving any litigation budgets?

A. We saw budgets, yes.

Q. Do you recall receiving any assessments of the case?

A. I don't recall.

Q. Do you recall receiving any discussions related to settlement?

MR. SHELTON: Objection.

Just want to assert the attorney-client privilege here, so just make sure -- you can answer yes or no, but don't get into the substance of the discussions.

A. No.

Q. As a member of the LTAB, did you have your own counsel advising you?

A. Yes.

Q. Who was that?

M. Olson

A. Dipesh Patel.

Q. Did the LTAB have counsel?

A. I don't recall at that time. That was Alan Halperin without me.

Q. Are you represented by counsel here today?

A. Yes.

Q. Who is that?

A. Mitch Ackal.

Q. Do you have any understanding of who is paying for that representation?

A. Yes.

Q. Who is that?

A. My former company where I retired from, Ravago.

Q. Did you meet with anyone to prepare for your testimony today?

A. Yes, I met with my attorney yesterday.

Q. Was anyone present in that meeting other than your counsel?

A. No.

Q. Did you discuss your testimony today with anyone from the trustee's office?

M. Olson

A. No.

Q. Anyone from Citadel?

A. No.

Q. Anyone from Parabellum Capital?

A. No.

Q. Anyone from the law firm of McCool Smith?

A. No.

Q. Or the law firm of Elsberg Baker?

A. No.

Q. Has anyone contacted you about this dispute or this deposition other than your own counsel?

A. No.

Q. Did you review any documents to prepare for your testimony today?

A. No, I don't have any documents.

Q. You previously told me that you retired from Ravago on June 6, 2025, is that correct?

A. Yes.

Q. Do you recall on or about what date you gave notice to Ravago of your retirement?

A. I think six months before I

retired.

Q. Do you recall on or about the date you informed the litigation trust advisory board of your retirement?

MR. SHELTON: Objection to form.

A. Not exact date. I contacted Dipesh Patel and said that I was retiring a few days before my retirement. I don't have the exact date.

Q. So is it your testimony that although you don't recall the exact date, it would have been closer to your actual retirement than the six months prior when you gave notice?

A. Closer to my retirement.

Q. Do you recall on or about the date that your services to the LTAB ceased?

A. Close to my retirement. That's all I know.

Q. What, if anything, do you know about who filled your seat after your departure?

A. That was my replacement Jeff Amato, who was supposed to. If he did, I don't know

what happened. I haven't had any contact with him since my retirement.

Q. Was it your understanding that -- strike that.

Was Jeff Amato also an employee of Ravago?

A. Yes.

Q. Was it your understanding that Ravago had the ability to appoint someone to fill your seat?

MR. ACKAL: Objection, form.

A. That, I'm not sure, but I suggested his name, that's all I know.

Q. As part of the unsecured creditors committee, did you take part in any negotiations of the bankruptcy plan?

MR. SHELTON: Objection to form.

A. No.

Q. Did you review the disclosure statement?

A. I don't recall.

Q. Do you recall if Ravago voted on plan confirmation?

MR. SHELTON: Objection to form.

A. I believe so.

Q. What, if anything, do you recall about who at Ravago decided how to vote on confirmation?

MR. ACKAL: Objection, form.

A. That was my decision, but I seek legal advice from our attorney, Dipesh Patel.

Q. Did anyone ever suggest to you that your seat could be filled by someone who was not on the unsecured creditors committee?

MR. SHELTON: Objection to form.

A. No.

Q. Did you have an affirmative understanding that your seat was to be filled by someone from the unsecured creditors committee?

MR. SHELTON: Objection to form.

A. I am not aware of it, no.

Q. And you previously testified that you were not aware of who the other members of the LTAB were or what constituencies or companies they represented, correct?

A. I don't recall since I retired 14 months ago, I have had no contact with any of

them, with any of my company I work for or members of the board.

Q. What, if any, is your understanding of why the LTAB had a seat or representation for the unsecured creditors?

MR. SHELTON: Objection to form.

A. I believe it was because they wanted people to be on the committee since there was some questions regarding Cornell Capital Partners.

Q. What, if anything, is your understanding about how the unsecured creditors might be differently situated than other creditors?

MR. ACKAL: Objection.

MR. SHELTON: Objection to form.

A. I have no recollection of that.

Q. Do you recall any situation during your time on the LTAB where your interests, meaning, the interests of Ravago and the unsecured creditors, diverged from the interests of others on the committee?

MR. SHELTON: Objection to form.

A. No.

M. Olson

Q. What, if anything, do you recall about Parabellum Capital insofar as it relates to your service on the LTAB?

A. I don't recall anything about them.

Q. What, if anything, do you recall about the InstaLit entities insofar as it relates to your services on the LTAB?

A. None.

Q. What, if anything, do you recall about Citadel insofar as it relates to your service on the LTAB?

A. I don't recall anything.

Q. What, if anything, do you recall about units in the litigation trust being transferred during your time on the LTAB?

MR. SHELTON: Objection to form.

A. Nothing.

Q. Do you recognize the name John Sinna as it relates to your service on the LTAB?

A. No.

Q. Do you recognize the name Benjamin Xie as it relates to your service on the LTAB?

A. I think I recognize the name. He was also on the unsecured creditors committee.

Q. What else, if anything, do you recall about Benjamin Xie as it relates to his service on the LTAB?

A. I don't remember what company he represented on there, but I am not aware of it, I don't recall.

Q. Do you recognize the name Jonny Cheatle as it relates to your service on the LTAB?

A. No.

Q. During your time on the LTAB, do you recall any discussion of litigation funding?

MR. SHELTON: Objection to form.

A. No.

Q. During your time on the LTAB, do you recall abstaining from any votes?

A. No.

Q. During your time on the LTAB, do you recall any other board members abstaining from votes?

M. Olson

A. I am not aware.

MS. ALEXANDER: Can we go off the record?

THE VIDEOGRAPHER: Going off the record. The time is 10:42.

(Recess.)

THE VIDEOGRAPHER: We are back on the record. The time is 10:54.

BY MS. ALEXANDER:

Q. Mr. Olson, before the break, you testified that Dipesh Patel communicated your decisions to the LTAB on occasion, is that accurate?

A. Yes.

Q. Who did he represent?

A. He represented Ravago.

Q. Was he also your personal attorney?

A. No.

Q. Who, if anyone, at Ravago did you report to about what went on at the LTAB?

A. I didn't report to anybody about that, it was never brought up.

Q. What understanding, if any, do you have about the documents that governed your

service on the LTAB?

A. I don't recall.

Q. Do you recall reviewing the bankruptcy plan?

A. Yes.

Q. Do you recall reviewing the litigation trust agreement?

A. Yes, but I don't recall what was in it. It was a long time ago.

Q. During your service on the LTAB, do you recall contacting the Bankruptcy Court for any reason?

A. No.

Q. Do you recall any discussions about a need to contact the court?

A. No.

Q. During your service on the LTAB, do you recall being asked to approve an ex-officio member?

A. I don't recall.

Q. During your time on the LTAB, do you recall being asked to approve a board observer?

A. I don't recall.

M. Olson

Q. During your time on the LTAB, did you understand that the litigation trust had a credit facility to pay for the litigation?

A. Yes.

Q. Who did you understand the lenders for that credit facility to be?

A. I don't recall.

Q. During your time on the LTAB, did you have an understanding of whether there was a cap on the amount of that financing?

MR. SHELTON: Objection to form.

A. No.

Q. During your time on the LTAB, do you remember the LTAB voting to approve credit facilities?

MR. SHELTON: Objection to form.

A. No.

Q. During your time on the LTAB, do you recall being aware that lenders would receive a multiple of the amount they lent before creditors received any payout?

MR. SHELTON: Objection to form.

A. I mean, that's normal case on a bankruptcy, if they're secured, they get the

M. Olson

money before unsecured.

Q. You recall being aware of that during your time on LTAB?

MR. SHELTON: Objection to form.

A. Yes.

Q. During your time on LTAB, did you have an understanding of what would be left for unsecured creditors after that credit facility was funded?

MR. SHELTON: Objection to form.

A. No.

Q. During your time on the LTAB, did the LTAB hire one or more law firms?

A. I'm not aware of it.

Q. Do you recall any discussion of the reasons for hiring law firms or the costs of doing so during your service on the LTAB?

MR. SHELTON: Objection to form.

A. No.

Q. At the time you joined the LTAB, did you have any views about whether 10 million would be sufficient to fund the litigation work of the LTAB?

MR. SHELTON: Objection to form.

M. Olson

A. None.

Q. What, if anything, do you recall about the budgets that you previously testified you received as an LTAB member?

A. The only thing I recall is when it came to actually to approve payments to the basic litigation trustee, that's the only thing I remember.

Q. Do you recall approving payments to anyone other than the litigation trustee?

A. I do not recall.

Q. Do you recall if there was any discussion on the LTAB about what would happen if the credit facility ran out?

MR. SHELTON: Objection to form.

A. No.

Q. Do you know who Dennis O'Donnell is?

A. Yes.

Q. What is your understanding of who he is?

A. He was on the unsecured creditors committee.

Q. Do you recall where he was

M. Olson

employed?

A. I don't remember the name, but Piper.

Q. Do you recall if he was or was not a lawyer?

A. He was a lawyer.

Q. Who -- strike that.

During your time on the official committee of unsecured creditors, did the official committee of unsecured creditors have counsel?

A. Yes.

Q. Who was that counsel?

A. That was Dennis O'Donnell and the lady who is no longer with the company.

Q. During your time on the unsecured creditors committee, without disclosing any substance of the communications, did you ever receive information from Dennis O'Donnell or anyone else at DLA Piper?

MR. SHELTON: Objection to form.

A. Yes.

Q. Without divulging any attorney-client privileged information, what

M. Olson

types of communication would the unsecured creditors committee receive from DLA Piper?

MR. SHELTON: Objection to form.

A. The ongoing procedures, what is happening with the case.

Q. Did DLA Piper have any relationship with the LTAB?

MR. SHELTON: Objection to form.

A. Not that I am aware of.

Q. What, if any, recollection do you have about when the unsecured creditors committee dissolved?

A. I don't have a recollection because I don't think it was dissolved when I retired.

Q. You previously testified that you ceased serving on the LTAB on or about your retirement date from Ravago, is that correct?

A. Yes.

Q. Do you recall approximately when the last meeting or communication of the LTAB that you took part in occurred?

A. I don't recall.

Q. Why did you leave the LTAB?

A. Because I retired.
Q. Did anyone ask you to resign from the board?
A. No.
Q. Did anyone make any offers to you or give you anything in order to induce your departure from the board?
A. No.
Q. If you recall, how did you inform the LTAB of your resignation?
A. I informed my legal advisor, Dipesh Patel, that I was retiring and he was going to inform the committee that I was retiring.
Q. After that communication, do you recall any additional communication with the LTAB or the other members thereof?
A. No.
Q. You previously testified that you recommended Jeff Amato to fill your seat, is that correct?
A. Yes.
Q. And you previously testified that you do not know if he, in fact, took your seat, is that correct?

A. Yes.
Q. Based on that, is it fair to assume that you did not meet with anyone to brief them when they took over your seat?
MR. SHELTON: Objection to form.
A. Correct.
Q. What, if anything, did you learn about the goings on of the LTAB after your departure?
A. Nothing.
Q. What email account did you use for LTAB business?
A. My company email which was martin.olson@ravago.com.
Q. Did you retain access to that email account after your retirement?
A. No.
Q. Did you use any text messaging or other phone apps such as WhatsApp or Signal to conduct board business?
A. No.
Q. Did you retain any hardcopy documents from your time on the LTAB?
A. No.

Q. In connection with the litigation on which we are all here today, did anyone ever ask you to preserve documents related to your service on the LTAB?

A. No, I stored them in my computer, but I don't have access to that anymore.

MS. ALEXANDER: Can we go off the record?

THE VIDEOGRAPHER: We are going off the record. The time is 11:08.

(Recess.)

THE VIDEOGRAPHER: We are back on the record. The time is 11:46.

Q. Thanks for your patience today, Mr. Olson.

Do you recall during your tenure on the LTAB, reviewing any litigation documents in considering whether the claims asserted in the Halperin v. Cornell action were substantiated?

MR. SHELTON: Objection to form and you can answer yes or no, but don't give the substance.

A. No.

Q. Did you ever form a view as to the strengths or weakness of those claims?
A. No.
Q. Did you ever discuss that issue with the trustee?
MR. SHELTON: Objection to form.
A. No.
Q. Or with Citadel?
A. No.
Q. So sitting here today, do you recall any instance where as part of your duties on the LTAB, you communicated with the trustee about the proprietary of Parabellum having an ex-officio seat on the board?
A. No.
Q. And sitting here today, do you recall any instance as part of your service on the LTAB where you communicated with the trustee about the proprietary of Parabellum having consulting rights with respect to the management of the LTAB?
A. No.
Q. Sitting here today, do you recall any instance as part of your LTAB duties

where you communicated with the trustee about whether the vote on Citadel's transfer of LTIs to Parabellum Capital complied with the litigation trust agreement?

MR. SHELTON: Objection to form.

A. No.

Q. Sitting here today, do you recall any instance as part of your duties on the LTAB where you communicated with the trustee about whether it would be in the trust beneficiary's interests to pursue settlement discussions?

MR. SHELTON: Objection to form.

A. No.

Q. Sitting here today, do you recall any instance as part of your LTAB duties where you communicated with the trustee about the value of the litigation trust assets?

A. No.

Q. Sitting here today, do you recall any instance as part of your duties on the LTAB where you communicated with the trustee about the strengths and weaknesses of the claims in the Halperin action?

MR. SHELTON: Objection to form.

A. No.

Q. And sitting here today, do you recall any instance where as part of your litigation trust advisory board duties, you communicated with the trustee about the costs and benefits of pursuing the action in light of the trust beneficiary's interests?

MR. SHELTON: Objection to form.

A. No.

Q. Sitting here today, do you recall any instance as part of your duties on the LTAB where you communicated with Citadel about the proprietary of Parabellum having an ex-officio seat?

A. No.

Q. Sitting here today, do you recall any instance as part of your duties on the LTAB where you communicated with Citadel about the proprietary of Parabellum having consulting rights with respect to the management of the LTAB?

A. No.

Q. Sitting here today, do you recall

M. Olson

any instance as part of your duties on the LTAB where you communicated with Citadel about whether the vote on Citadel's transfer of LTIs to Parabellum complied with the litigation trust agreement?

MR. SHELTON: Objection to form.

A. No.

Q. Sitting here today, do you recall any instance as part of your duties on the LTAB where you communicated with Citadel about whether it would be in the trust beneficiary's interests to pursue settlement discussions?

MR. SHELTON: Objection to form.

A. No.

Q. Sitting here today, do you recall any instance as part of your duties on the LTAB where you communicated with Citadel about the value of the litigation trust assets?

MR. SHELTON: Objection to form.

A. No.

Q. Sitting here today, do you recall any instance as part of your duties on the

LTAB where you communicated with Citadel about the strengths and weaknesses of the claims in the actions?

MR. SHELTON: Objection to form.

A. No.

Q. Sitting here today, do you recall any instance as part of your duties on the LTAB where you communicated with Citadel about the costs and benefits of pursuing the litigation in light of the trust beneficiary's interests?

A. No.

MS. ALEXANDER: We have no further questions, Mr. Olson.

THE WITNESS: Okay.

THE VIDEOGRAPHER: This concludes our deposition. The time is 11:51.

(Off the record.)

THE VIDEOGRAPHER: We are back on the record. The time is 11:51.

EXAMINATION BY

MR. MENNITT:

Q. Mr. Olson, I have very few questions.

M. Olson

Where do you currently reside?

A. I reside in Larchmont, New York.

Q. And do you have any residence in Texas?

A. No.

Q. Do you have any residence other than your residence in Larchmont, New York?

A. No.

Q. And has anyone discussed with you the possibility of you testifying at a hearing on any matter before the court in Texas?

A. No.

Q. Has anyone discussed with you, one way or the other, whether you would be available to testify in Texas?

A. No.

Q. Do you have any travel plan to Texas or anywhere in the southern part of the United States in the coming months?

A. No, I don't.

MR. MENNITT: I have nothing further.

THE VIDEOGRAPHER: Anyone else?

This concludes our deposition. The time is 11:52 a.m.

(Time noted: 11:52 a.m.)

- - -

I N D E X

- - -


| | |
|---|---|
| MARTIN OLSON | PAGE |
| By Ms. Alexander | 5 |
| By Mr. Mennitt | 40 |

- - -

DEPOSITION SUPPORT INDEX

- - -

Request for Production of Documents

| Page | Line | Page | Line | Page | Line |
|---|---|---|---|---|---|
| None | | | | | |

- - -

Stipulations

| Page | Line | Page | Line | Page | Line |
|---|---|---|---|---|---|
| None | | | | | |

- - -

Questions Marked

| Page | Line | Page | Line | Page | Line |
|---|---|---|---|---|---|
| None | | | | | |

- - -

To Be Filled In

| Page | Line | Page | Line | Page | Line |
|---|---|---|---|---|---|
| None | | | | | |

- - -

CERTIFICATE

I HEREBY CERTIFY that the witness, MARTIN OLSON, was duly sworn by me and that the deposition is a true record of the testimony given by the witness.

Leslie Fagin
Leslie Fagin,
Registered Professional Reporter
Dated: September 10, 2026

(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the direct control and/or supervision of the certifying reporter.)

ACKNOWLEDGMENT OF DEPONENT

I, , do hereby certify that I have read the foregoing pages, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

MARTIN OLSON DATE

Subscribed and sworn
to before me this
day of , 2026.

My commission expires:

Notary Public

- - - - - -
E R R A T A
- - - - - -

PAGE LINE CHANGE



# Magna Key Contacts

**Schedule a Deposition:**
Scheduling@MagnaLS.com | 866-624-6221

**Order a Transcript:**
CustomerService@MagnaLS.com | 866-624-6221

**General Billing Inquiries:**
ARTeam@MagnaLS.com | 866-624-6221

**Scheduling Operations Manager:**
Patricia Gondor (E: PGondor@MagnaLS.com | C: 215-221-9566)

**Customer Care:**
Kendra Suggs (E: KSuggs@MagnaLS.com | C: 407-716-6624)

**Director of Production Services:**
Ron Hickman (E: RHickman@MagnaLS.com | C: 215-982-0810)

**National Director of Discovery Support Services:**
Carmella Mazza (E: CMazza@MagnaLS.com | C: 856-495-1920)

**Billing Manager:**
Maria Capetola (E: MCapetola@MagnaLS.com | C: 215-292-9603)

**Director of Sales Operations:**
Kristina Moukina (E: KMoukina@MagnaLS.com | C: 215-796-5028)

MAGNA
LEGAL SERVICES

**A**

**ability** 21:10
**abstaining** 25:21 25:24
**access** 34:16 35:7
**account** 34:12,17
**accurate** 8:2 26:14
**Ackal** 3:6 4:21,21 8:20,23 9:23 11:19 13:16,22 18:10 21:12 22:6 23:16
**ACKNOWLE...** 46:2
**ACQUISITION** 1:7
**Acquisitions** 4:8
**action** 9:14 15:23 35:20 37:25 38:8
**actions** 9:11 40:4
**actual** 20:13
**additional** 33:16
**advice** 22:8
**advising** 17:23
**advisor** 11:9 15:19 33:12
**Advisors** 2:21 5:10
**advisory** 8:16 9:7 10:9,18 11:5 12:13 13:21 14:2 15:23 16:5 16:11,12 20:4 38:6
**affirmative** 22:14
**agendas** 15:4
**ago** 5:25 9:4 22:25 27:10
**agreement** 27:8 37:5 39:6
**al** 1:7 4:8
**Alan** 4:25 9:16 9:21 15:20 18:5
**Alexander** 2:10 4:16,17 5:19 26:3,10 35:8 40:14 43:7
**allow** 6:25
**Amato** 20:24 21:6 33:20
**Americas** 1:14 2:17 3:4,10
**amount** 28:11,21
**and/or** 45:12
**answer** 6:14 7:18 7:23 8:24 12:5 13:15,16 17:18 35:23
**answering** 6:25
**answers** 46:4
**anybody** 26:22
**anymore** 35:7
**apply** 45:11
**appoint** 21:10
**appointed** 9:18
**appointment** 9:7 12:9,12
**approached** 11:4 11:8,13
**approve** 27:19,23 28:15 30:7
**approving** 30:10
**approximately** 14:12 32:21
**apps** 34:20
**asked** 11:18 12:18 27:19,23
**asking** 7:22
**assert** 11:20 17:16
**asserted** 35:19
**assessments** 17:11
**assets** 37:19 39:21
**assume** 34:3
**attached** 46:6
**attorney** 11:9 18:19 22:8 26:18
**attorneys** 2:4,8 2:12,17,21 3:4 3:8 4:9
**attorney's** 12:6
**attorney-client** 11:21,24 17:17 31:25
**available** 41:17
**Avenue** 1:13 2:13 2:17 3:4,10
**aware** 16:8 22:19 22:21 25:9 26:2 28:20 29:3,15 32:10
**a.m** 1:14 4:5 42:3 42:4

**B**

**back** 9:14 26:8 35:13 40:20
**Baker** 2:4 4:25 19:10
**bankruptcy** 1:2 13:6 21:17 27:5 27:12 28:25
**Based** 34:3
**basic** 30:8
**basically** 8:8 9:2 9:4,13,17,21 11:10 14:25 15:10,18
**begins** 4:6
**behalf** 4:25
**believe** 22:2 23:8
**BEN** 2:21
**beneficiary's** 37:12 38:9 39:13 40:12
**benefits** 38:8 40:10
**Benjamin** 5:11 24:23 25:6
**best** 15:8
**board** 8:16 9:8 9:18 10:10,13 10:18 11:5 12:13 13:21 14:2,7,13,15 15:23 16:5,11 16:12 20:5 23:3 25:24 27:23 33:4,8 34:21 36:15 38:6
**Boies** 2:8 4:17,20
**Brand** 3:9 5:8
**Brands** 1:7 4:8 5:3 8:16
**break** 7:12,13,19 26:11
**brief** 34:4
**Brooke** 2:10 4:17
**brought** 26:23
**Bryant** 2:22
**budgets** 17:8,9 30:4
**business** 10:15 34:13,21

**C**

**C** 2:2 3:2
**called** 5:14
**calls** 14:10,22,24
**cap** 28:11
**capacity** 5:2 8:21 11:14,14
**Capital** 2:8 4:18 12:15 14:6 19:5 23:11 24:3 37:4
**Carolyn** 2:10 4:20
**case** 1:7 3:9 4:11 5:8 9:12,18 13:7 17:11 28:24 32:6
**cases** 15:14
**caused** 9:14
**ceased** 20:18 32:18
**CERTIFICATE** 45:2
**certification** 45:10
**certify** 45:3 46:3
**certifying** 45:12
**CHANGE** 47:3
**changes** 46:5
**Chase** 2:6 4:24
**Cheatle** 2:21 5:11 25:12
**circumstances** 9:6 12:9,12
**Citadel** 2:21 5:10 19:3 24:11 36:9 38:14,20 39:3 39:11,19 40:2,9
**Citadel's** 37:3 39:4
**claims** 35:19 36:3 37:25 40:4
**clarify** 7:23
**Close** 20:19
**closer** 20:13,16
**coming** 6:21 41:21
**commencing** 1:14
**commission** 46:12
**committee** 9:10 9:19 10:7 12:14 12:23 13:2 21:16 22:11,17 23:9,23 25:4 30:24 31:10,11 31:18 32:3,13 33:14
**communicated** 26:12 36:13,19 37:2,10,18,23 38:7,14,20 39:3 39:11,19 40:2,9
**communication** 14:13,19 32:2 32:22 33:15,16
**communications** 31:19
**community** 3:9 5:7
**companies** 22:23
**company** 18:15 23:2 25:8 31:16 34:14
**complied** 37:4 39:5
**computer** 35:6
**concludes** 40:17 42:2
**conduct** 34:21
**conference** 14:10
**conferred** 15:14 15:19
**confirmation** 21:24 22:5
**connection** 35:2
**consensus** 15:25
**considering** 35:19

**constituencies** 22:22
**consulted** 17:2
**consulting** 36:21 38:22
**contact** 21:2 22:25 27:16
**contacted** 19:12 20:7
**contacting** 27:12
**control** 45:12
**Cont'd** 3:2
**Cornell** 2:8 4:18 4:19 9:12 12:15 14:5 23:10 35:20
**correct** 19:21 22:23 32:19 33:21,25 34:7 46:4
**corrections** 46:5
**correspondences** 15:3
**costs** 29:17 38:7 40:10
**counsel** 3:8 5:6 12:20 15:14 17:23 18:3,6,22 19:14 31:12,14
**court** 1:2,15 4:14 6:6,12 9:24 27:12,16 41:12
**credit** 3:9 5:7 13:4 28:4,7,16 29:9 30:15
**creditors** 9:10,19 10:7 12:23 13:2 13:6 21:15 22:11,16 23:6 23:14,15,22 25:3 28:22 29:9 30:23 31:10,11 31:18 32:3,12
**currently** 8:5 41:2

D

**D** 43:3
**date** 1:15 4:4 10:8 19:23 20:3 20:7,10,12,17 32:19 46:8
**Dated** 45:7
**day** 46:11
**days** 20:8
**Debtors** 1:8
**Dechart** 5:10
**DECHERT** 2:20
**decided** 22:4
**decision** 17:2 22:7
**decisions** 16:15 26:13
**Defendant** 2:8
**DEFENDANTS** 2:13,17
**Dennis** 3:11 5:5 30:18 31:15,20
**DENTONS** 2:16
**departure** 20:23 33:8 34:10
**deponent** 4:22 46:2
**deposed** 5:23
**deposition** 1:12 4:6 19:13 40:18 42:2 44:3 45:4
**differently** 23:14
**Dipesh** 11:9,23 18:2 20:7 22:8 26:12 33:12
**direct** 45:12
**DIRECTORS** 2:12
**disclosing** 31:18
**disclosure** 21:20
**discuss** 18:24 36:5
**discussed** 41:10 41:15
**discussion** 25:16 29:16 30:14
**discussions** 17:14 17:20 27:15 37:13 39:14
**dispute** 19:13
**disregarding** 12:19
**dissolved** 32:13 32:15
**distributor** 8:13
**DISTRICT** 1:3
**diverged** 23:22
**DIVISION** 1:4
**divulging** 31:24
**DLA** 3:8 5:6 31:21 32:3,7
**documents** 7:5,6 15:3 19:16,18 26:25 34:24 35:4,18 44:5
**doing** 29:18
**Drell** 2:10 4:20
**duly** 5:15 45:4
**duties** 36:13,25 37:9,17,22 38:6 38:13,19 39:2 39:10,18,25 40:8

E

**E** 2:2,2 3:2,2 43:3 47:2
**Elsberg** 2:4 4:25 19:10
**email** 15:13,15 34:12,14,16
**emails** 14:10,20 14:25 15:20 16:5
**employed** 8:5,7 11:2 31:2
**employee** 11:14 11:16 21:6
**entities** 4:19 10:24 14:6 24:7
**Errata** 46:6
**ESQUIRE** 2:6,10 2:10,14,18,23 3:6,11
**et** 1:7 4:8
**exact** 20:7,9,12
**EXAMINATI...** 5:18 40:22
**examined** 5:16
**expires** 46:12
**extent** 11:22 12:5
**ex-officio** 27:20 36:15 38:16

F

**facilities** 28:16
**facility** 28:4,7 29:10 30:15
**fact** 33:24
**Fagin** 1:15 45:6
**fair** 34:3
**fill** 21:11 33:20
**filled** 20:22 22:10 22:15 44:13
**financing** 28:11
**finish** 6:24
**firm** 19:7,10
**firms** 29:14,17
**first** 6:12 11:4
**Flexner** 2:8 4:18
**Floor** 2:5 3:5
**follows** 5:17
**foregoing** 45:10 46:3
**form** 8:19,23 13:3,11,14,22 14:4 15:5 16:7 16:17 17:3 20:6 21:12,18,25 22:6,12,18 23:7 23:17,24 24:17 25:18 28:12,17 28:23 29:5,11 29:19,25 30:16 31:22 32:4,9 34:6 35:22 36:2 36:7 37:6,14 38:2,10 39:7,15 39:22 40:5 46:5
**former** 2:12 3:8 5:6 18:15
**FOUNDER** 2:17
**frequently** 14:13
**fund** 29:23
**funded** 29:10
**funding** 25:17
**further** 40:14 41:24

G

**Gambrell** 4:23
**Gary** 2:23 5:9
**give** 7:23 8:2 11:25 33:7 35:23
**given** 45:5 46:4
**go** 7:19 26:3 35:8
**going** 6:10 11:20 26:5 33:13 35:10
**goings** 34:9
**Good** 4:2,16 5:20 5:21
**governed** 26:25
**GRAMBELL** 1:13 3:3
**Great** 6:20
**GREENBERG** 2:12
**ground** 6:9
**groups** 3:9 5:7

H

**Halperin** 5:2 9:17,21 15:20 18:5 35:20 37:25
**hand** 7:5
**happen** 30:15
**happened** 21:2
**happening** 32:6
**hardcopy** 34:23
**hear** 7:8
**hearing** 41:12
**held** 1:13
**hire** 29:14
**hiring** 29:17
**hold** 14:21,24
**HOLDINGS** 1:7
**HOUSTON** 1:4
**Hudson** 2:9
**HUNCKLE** 3:15

I

**identify** 4:10
**INDEX** 44:3
**individuals** 13:10
**induce** 33:7
**inform** 33:10,14
**information** 11:22 12:2,19 31:20,25
**informed** 20:4 33:12

**initial** 3:8 5:6
**insofar** 24:3,7,11
**InstaLit** 24:7
**instance** 36:12,18 36:25 37:9,17 37:22 38:5,13 38:19 39:2,10 39:18,25 40:8
**Instant** 1:7 3:9 4:8 5:3,8 8:16
**instructing** 11:25
**instruction** 12:6
**interest** 4:11 13:5
**interests** 13:9 23:20,21,23 37:12 38:9 39:13 40:12
**introduce** 4:13
**introduced** 5:13
**investigation** 15:11
**in-person** 14:16
**issue** 36:5
**issues** 16:25

**J**

**Jeff** 20:24 21:6 33:20
**John** 24:19
**join** 11:11,18 12:18,23
**joined** 10:13 29:21
**joining** 11:5
**Jonny** 2:21 5:11 25:11
**June** 8:10 19:20

**K**

**kinds** 16:15
**know** 7:8 13:18 20:20,21,25 21:14 30:18 33:24

**L**

**L** 5:14
**lady** 31:16
**Larchmont** 41:3 41:8
**Las** 5:24
**law** 1:13 19:7,10 29:14,17
**lawyer** 31:6,7
**LEANNE** 2:18
**learn** 34:8
**leave** 32:25
**left** 29:8
**legal** 1:25 3:15 11:9 15:19 22:8 33:12
**lenders** 13:19 28:6,20
**lent** 28:21
**Leslie** 1:15 45:6
**light** 38:8 40:11
**Line** 44:5,5,5,8,8 44:8,11,11,11 44:13,13,13 47:3
**litigation** 5:3,4 8:15,17 9:7,16 10:9,18 11:5 12:10,13 13:20 13:25 15:22 16:5,10,11 17:8 20:4 24:15 25:16 27:8 28:3 28:4 29:24 30:8 30:11 35:2,18 37:5,19 38:6 39:6,20 40:11
**little** 9:24
**LLC** 2:8 4:18
**LLP** 2:8,12,16,20 3:8 5:10
**lodge** 6:25
**long** 27:10
**longer** 31:16
**look** 12:15 13:5 14:5
**looking** 12:21
**loudly** 6:16
**LTAB** 11:6 14:7 14:19,21,24 15:2,12 16:16 16:22 17:2,7,22 18:3 20:18 22:22 23:5,20 24:4,8,12,16,21 24:25 25:7,13 25:15,20,23 26:13,21 27:2 27:11,18,22 28:2,9,14,15,19 29:4,7,13,14,18 29:21,24 30:5 30:14 32:8,18 32:22,25 33:11 33:17 34:9,13 34:24 35:5,18 36:13,19,22,25 37:10,17,23 38:14,20,23 39:3,11,19 40:2 40:9
**LTIs** 37:4 39:5

**M**

**M** 5:1,14 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1
**Magna** 1:25 3:15
**making** 17:2
**management** 36:22 38:23
**MARC** 3:14
**mark** 7:13
**Marked** 44:10
**Martin** 1:12 3:4 4:7 43:6 45:4 46:8
**martin.olson@...** 34:15
**Maruri** 2:4 4:25
**matter** 4:7 6:3 12:15 14:5 41:12
**McCool** 19:7
**mean** 14:9 28:24
**meaning** 23:21
**means** 45:11
**meet** 18:17 34:4
**meeting** 18:21 32:22
**meetings** 14:8,16
**member** 8:16 9:2 16:6,11,21 17:22 27:20 30:5
**members** 9:15 10:6,12,19,21 10:25 12:22 16:2 22:21 23:3 25:24 33:17
**memorandums** 15:4
**Mennitt** 2:23 5:9 5:9 40:23 41:23 43:8
**messaging** 34:19
**met** 18:19
**method** 14:18
**MIAN** 2:14
**million** 9:13 29:23
**Mitch** 3:6 4:21 18:10
**money** 29:2
**month** 14:14
**months** 9:4 10:16 19:25 20:14 22:25 41:21
**morning** 4:2,16 5:20,21
**Muehlstein** 8:8
**multiple** 28:21

**N**

**N** 2:2 3:2 5:14,14 43:3
**name** 21:14 24:19,23 25:2 25:11 31:3
**names** 10:19
**need** 7:7,13,14 27:16
**needed** 12:14
**needs** 6:13
**negotiations** 21:17
**never** 26:23
**New** 1:14,14,16 2:5,5,9,9,14,14 2:18,18,22,22 3:5,5,10,10 41:3,8
**nods** 6:15
**normal** 28:24
**normally** 15:13
**Notary** 1:15 5:16 46:14
**noted** 42:4 46:6
**notice** 19:24 20:15

**O**

**O** 5:14,14
**Objection** 8:19 8:20,23 11:19 13:3,11,13,22 14:4 15:5 16:7 16:17 17:3,15 20:6 21:12,18 21:25 22:6,12 22:18 23:7,16 23:17,24 24:17 25:18 28:12,17 28:23 29:5,11 29:19,25 30:16 31:22 32:4,9 34:6 35:22 36:7 37:6,14 38:2,10 39:7,15,22 40:5
**objections** 6:20 6:21 7:2
**observer** 27:24
**obtained** 12:19
**occasion** 26:13
**occurred** 32:23
**offers** 33:6
**office** 18:25
**OFFICERS** 2:12
**offices** 1:13
**official** 31:9,11
**Okay** 7:20 40:16
**Olson** 1:12 3:4 4:7,22 5:1,20 6:1 7:1 8:1 9:1 9:23 10:1 11:1 12:1 13:1 14:1

15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 26:11 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1,16 36:1 37:1 38:1 39:1 40:1,15,24 41:1 43:6 45:4 46:8
**Once** 14:14
**one-hour** 7:13
**ongoing** 32:5
**orally** 6:14
**order** 15:22 33:7
**outlines** 15:4
**O'Donnell** 3:11 5:5,5 30:18 31:15,20

**P**

**P** 2:2,2 3:2,2
**Page** 43:6 44:5,5 44:5,8,8,8,11 44:11,11,13,13 44:13 47:3
**pages** 46:3
**Parabellum** 19:5 24:3 36:14,20 37:4 38:15,21 39:5
**Park** 2:22
**part** 9:15,20 21:15,16 32:23 36:12,18,25 37:9,17,22 38:5 38:13,19 39:2 39:10,18,25 40:8 41:20
**participants** 4:12 5:12 6:22
**Partners** 9:12 12:16 14:6 23:11
**Patel** 11:10 18:2 20:8 22:8 26:12 33:13
**patience** 35:15
**pause** 6:24
**pay** 28:4
**paying** 18:12
**payments** 30:7 30:10
**payout** 28:22
**pending** 7:18
**Penn** 2:5
**people** 23:9
**personal** 11:13 26:18
**phone** 14:24 34:20
**Piper** 3:8 5:6 31:4,21 32:3,7
**Plaintiff** 2:4
**plan** 21:17,24 27:5 41:19
**plastic** 8:12
**Plaza** 2:5
**please** 4:9 6:14 6:16 7:22
**plus** 8:9
**possibility** 41:11
**prepare** 18:17 19:17
**prepared** 15:3
**present** 3:13 18:21
**preserve** 35:4
**previously** 19:19 22:20 30:4 32:17 33:19,23
**primary** 14:18
**prior** 20:14
**privilege** 11:21 11:24 17:17
**privileged** 31:25
**probably** 15:8
**procedures** 32:5
**proceeding** 15:9
**process** 13:12
**Production** 44:5
**Professional** 45:7
**propounded** 46:5
**proprietary** 36:14,20 38:15 38:21
**protected** 13:9
**Public** 1:15 5:16 46:14
**purpose** 13:2
**pursuant** 1:12
**pursue** 37:12 39:13
**pursuing** 38:8 40:10
**put** 16:15

**Q**

**question** 6:24 7:9 7:18,19 8:24 9:20 11:10 12:7
**questions** 7:22 9:11 23:10 40:15,25 44:10 46:4

**R**

**R** 2:2 3:2 5:14 47:2,2
**raised** 11:10
**ran** 30:15
**Ravago** 8:8,11,12 11:15,16 18:16 19:20,24 21:7 21:10,23 22:4 23:21 26:17,20 32:19
**read** 46:3
**ready** 7:8
**reason** 7:25 27:13
**reasons** 29:17
**recall** 9:5 10:11 10:14,19,20,21 10:24 12:8,11 13:23,24 14:9 14:12,15,23 15:8,21,25 16:4 16:9,14,18,18 16:20,24 17:8 17:10,12,13 18:4 19:23 20:3 20:12,17 21:22 21:23 22:3,24 23:19 24:2,5,6 24:10,13,14 25:6,10,16,21 25:24 27:3,4,7 27:9,12,15,19 27:21,23,25 28:8,20 29:3,16 30:3,6,10,12,13 30:25 31:5 32:21,24 33:10 33:16 35:17 36:12,18,24 37:8,16,21 38:5 38:12,18,25 39:9,17,24 40:7
**receive** 15:2 28:21 31:20 32:3
**received** 16:4 28:22 30:5
**receiving** 17:8,10 17:13
**Recess** 26:7 35:12
**recognize** 24:19 24:23 25:2,11
**recollection** 6:9 10:16 23:18 32:11,14
**recommended** 33:20
**record** 4:3 26:4,6 26:9 35:9,11,14 40:19,21 45:4
**recovering** 15:11
**referring** 10:5
**refresh** 6:9
**regarding** 23:10
**Registered** 45:7
**regular** 15:2
**related** 6:2 17:14 35:4
**relates** 24:4,8,11 24:20,24 25:6 25:12
**relationship** 32:7
**remember** 25:8 28:15 30:9 31:3
**Reorganized** 1:8
**repeat** 12:7
**replacement** 20:24
**report** 26:21,22
**reporter** 1:15 4:14 6:12 9:25 45:7,12
**represent** 9:22 26:16
**representation** 13:20 18:12 23:5
**represented** 18:6 22:23 25:9 26:17
**representing** 4:22
**reproduction** 45:11
**Request** 44:5
**required** 15:22 16:2
**reside** 41:2,3
**residence** 41:4,7 41:8
**resign** 33:3
**resignation** 33:11
**resigned** 9:3
**resin** 8:12
**respect** 36:21 38:22
**response** 12:2
**result** 6:23
**retain** 34:16,23
**retired** 8:6,9 9:3 18:15 19:20 20:2 22:24 32:16 33:2
**retirement** 19:24 20:5,9,14,16,19 21:3 32:19 34:17
**retiring** 20:8 33:13,14
**revealing** 17:4
**review** 7:6 19:16 21:20
**reviewing** 27:4,7 35:18
**rights** 36:21 38:22
**ROBERT** 3:15
**ROSEN** 3:14
**rules** 6:9
**RUSSELL** 1:13 3:3

**S**

**S** 2:2 3:2 5:14
**sat** 10:17
**saw** 17:9
**Schiller** 2:8 4:17 4:20
**seat** 10:9 20:22 21:11 22:10,15 23:5 33:20,25 34:5 36:15 38:16
**secured** 3:9 5:7 28:25
**seek** 22:7
**SELLER** 2:17
**send** 15:17
**sense** 12:3
**sent** 15:15,20
**September** 1:14 4:4 45:7
**service** 24:4,12 24:20,24 25:7 25:12 27:2,11 27:18 29:18 35:5 36:18
**services** 1:25 3:15 20:18 24:8
**serving** 32:18
**settlement** 17:14 37:12 39:13
**Sheet** 46:6
**Shelton** 2:6 4:24 4:24 8:19 13:3 13:11,13 14:4 15:5 16:7,17 17:3,15 20:6 21:18,25 22:12 22:18 23:7,17 23:24 24:17 25:18 28:12,17 28:23 29:5,11 29:19,25 30:16 31:22 32:4,9 34:6 35:22 36:7 37:6,14 38:2,10 39:7,15,22 40:5
**Signal** 34:20
**Sinna** 24:20
**sitting** 16:20,24 36:11,17,24 37:8,16,21 38:4 38:12,18,25 39:9,17,24 40:7
**situated** 23:14
**situation** 23:19
**situations** 16:9
**six** 19:25 20:14
**slower** 9:24
**slowly** 6:16
**Smith** 1:13 3:3 4:23 19:8
**Sorry** 13:13
**southern** 1:3 41:20
**speak** 6:16
**specific** 16:25
**started** 6:11
**state** 1:15 4:10
**statement** 21:21
**States** 1:2 41:21
**Stipulations** 44:8
**stored** 35:6
**strengths** 36:3 37:24 40:3
**strike** 12:10 21:5 31:8
**subject** 12:6
**subpoena** 1:12
**Subscribed** 46:10
**substance** 17:4 17:19 31:19 35:24 46:5
**substantiated** 35:21
**sufficient** 29:23
**suggest** 22:9
**suggested** 21:13
**SUNDERLAND** 2:18
**supervision** 45:12
**SUPPORT** 44:3
**supposed** 14:2 20:25
**sure** 6:14 12:8 17:18 21:13
**surrounding** 9:6 12:9,12
**swear** 4:14
**sworn** 5:15 45:4 46:10

**T**

**T** 5:14 47:2
**take** 7:7,12 9:25 10:8 15:23 21:16
**taken** 1:12
**talk** 9:23
**tell** 15:7
**tenure** 14:3 35:17
**term** 13:19
**Terrific** 7:25
**testified** 5:16 6:5 22:20 26:12 30:5 32:17 33:19,23
**testify** 41:17
**testifying** 8:15,21 41:11
**testimony** 6:17 8:2 18:18,24 19:17 20:11 45:5
**Texas** 1:3 41:5,13 41:17,20
**text** 34:19
**Thanks** 5:22 35:15
**thereof** 17:5 33:17
**thing** 7:17 30:6,9
**things** 6:10
**think** 15:18 19:25 25:2 32:15
**time** 4:5 5:24 7:7 7:14 10:13,17 17:7 18:4 23:20 24:16 25:15,20 25:23 26:6,9 27:10,22 28:2,9 28:14,19 29:4,7 29:13,21 31:9 31:17 34:24 35:11,14 40:18 40:21 42:3,4
**today** 5:22 6:3,10 6:21 7:6 8:3,15 8:22 16:20,24 18:7,18,25 19:17 35:3,15 36:11,17,24 37:8,16,21 38:4 38:12,18,25 39:9,17,24 40:7
**Today's** 4:4
**told** 11:17,23 12:17 13:25 19:19
**transcript** 45:11
**transcription** 46:4
**transfer** 37:3 39:4
**transferred** 24:16
**TRAURIG** 2:12
**travel** 41:19
**true** 45:4
**trust** 5:4 8:15,17 9:7 10:9,18 11:5 12:10,13 13:20,25 15:22 16:5,10,12 20:4 24:15 27:8 28:3 37:5,11,19 38:6 38:9 39:6,12,20 40:11
**trustee** 5:3 9:17 16:25 30:8,11 36:6,14,20 37:2 37:10,18,23 38:7
**trustee's** 18:25
**truthful** 8:2
**try** 7:12 9:23
**types** 32:2

**U**

**understand** 6:18 7:3,10,15,21 8:14,25 28:3,6
**understanding** 11:12 12:25 13:8 18:11 21:4 21:9 22:15 23:4 23:13 26:24 28:10 29:8 30:21
**Understood** 9:5
**United** 1:2 41:21
**units** 24:15
**unsecured** 9:10 9:19 10:6 12:23 13:2,4,5 21:15 22:11,16 23:6 23:13,22 25:3 29:2,9 30:23 31:10,11,17 32:2,12
**use** 34:12,19

**V**

**v** 35:20
**value** 37:19 39:20
**Vanderbilt** 2:13
**Vegas** 5:24
**video** 4:6 14:21
**Videographer** 3:15 4:2 26:5,8 35:10,13 40:17 40:20 41:25
**Videotaped** 1:12
**view** 36:2
**views** 29:22
**vote** 15:12,13 16:12,16 22:4 37:3 39:4
**voted** 9:21 15:19 16:11 21:23
**votes** 15:17,21 16:21 25:21,25
**voting** 15:16,18 28:15

**W**

**WANG** 2:14
**want** 11:11 17:16
**wanted** 12:22 23:9
**way** 6:2 41:16
**weakness** 36:3
**weaknesses** 37:24 40:3
**went** 26:21
**WhatsApp** 34:20
**witness** 3:4 4:15

5:15 10:3 12:4 13:15 40:16 45:3,5
**word** 9:25
**work** 6:10 23:2 29:24
**worked** 8:9
**write** 6:13,15

**X**

**x** 1:5,9 43:3
**Xie** 2:21 5:11 24:24 25:6

**Y**

**Yards** 2:9
**years** 5:25 8:9
**yesterday** 18:20
**York** 1:14,14,16 2:5,5,9,9,14,14 2:18,18,22,22 3:5,5,10,10 41:3,8

**Z**

**Zoom** 2:15,19,23 3:14 4:12 5:12 6:22 14:21

**$**

**$200** 9:13

**1**

**1** 2:5
**10** 1:14 4:4 29:22 45:7
**10:11** 1:14 4:5
**10:42** 26:6
**10:54** 26:9
**10001** 2:9
**10017** 2:14
**10019** 3:5
**10020** 2:18 3:10
**10036** 2:22
**10119** 2:5
**11:08** 35:11
**11:46** 35:14
**11:51** 40:18,21
**11:52** 42:3,4
**1121** 2:17
**1251** 3:10
**1301** 1:13 3:4
**14** 9:4 10:15 22:24
**15th** 3:5

**2**

**2021** 9:14
**2025** 8:10 19:20
**2026** 1:14 4:4 45:7 46:11
**23-90716(MI)** 1:7
**25** 8:9

**3**

**3** 2:22

**4**

**40** 43:8
**40th** 2:5

**5**

**5** 43:7
**55** 2:9

**6**

**6** 8:10 19:20
**624-6221** 1:25

**8**

**866** 1:25