**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| FIRST BRANDS GROUP, LLC, et al,[1] | § | |
| | § | Case No. 25-90399 (CML) |
| Debtors. | § | |
| | § | (Jointly Administered) |

**SIDE A INSURERS' JOINDER IN EXCESS ABC INSURERS' MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, RELIEF FROM THE AUTOMATIC STAY**

Ironshore Indemnity, Inc., Fair American Insurance and Reinsurance Company, Allianz Global Risks US Insurance Company, Westfield Select Insurance Company, AXIS Insurance Company, and Zurich American Insurance Company (collectively, the "Side A Insurers") respectfully move to join in the Motion for Clarification or, Alternatively, for Relief from the Automatic Stay (Bankr. Dkt. 3669, the "Motion") filed by XL Specialty Insurance Company, Endurance American Insurance Company, Markel American Insurance Company, Berkley Insurance Company, Arch Insurance Company, Federal Insurance Company, Twin City Fire Insurance Company, Everest National Insurance Company, and Old Republic Insurance Company (collectively, the "Excess ABC Insurers").

For the reasons set forth in the Motion, the contents of which are incorporated as though fully set forth herein, the Side A Insurers respectfully submit that this Court's guidance is necessary to address the dispute raised by the Official Committee of Unsecured Creditors (the "UCC")

[1] A complete list of the debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

regarding the scope of this Court's May 29, 2026 Order (the "May Order"): specifically, whether the May Order authorized the Excess ABC Insurers to make payments, including the advancement of Defense Costs, under the Excess ABC Policies to the Insured Persons. The Side A Insurers agree with the Excess ABC Insurers that the May Order authorized payments and granted relief from the automatic stay as to the proceeds of the ABC Policies—including both the Primary ABC Policy and the Excess ABC Policies. The Side A Insurers submit this Joinder to address certain arguments made by the UCC in its objection to the Motion that touch on the Side A Insurers and their pending appeal.

For the reasons set forth below, this Court has jurisdiction to consider the Motion and grant the relief that the Excess ABC Insurers and the Side A Insurers (hereinafter, the "Movants") seek—clarification or relief from the automatic stay.

## I. The Pending Appeal Does Not Divest this Court of Jurisdiction to Clarify its May Order or Grant Relief from the Stay

The UCC contends that the Side A Insurers' pending appeal divests this Court of jurisdiction to consider the Motion. But this argument misapprehends the scope of the appeal and divestiture. As stated in the Notice of Appeal, pursuant to Bankruptcy Rule 8003(a)(6), the Side A Insurers' appeal is limited to only the parts of the Order and Oral Ruling finding "that Debtors have an interest in the proceeds of the ABC Policy, and that interest is property of the estate under [11 U.S.C.] § 541." (Bankr. Dkt. 1865, at 2). The pending appeal only divests this Court of jurisdiction over that specific ruling in the January Order. Everything else within the January Order—including the Court's denial, without prejudice, of the request to lift the stay—remains squarely within this Court's jurisdiction.

"When a notice of appeal has been filed in a bankruptcy case, the bankruptcy court retains jurisdiction to address elements of the bankruptcy proceeding that are not the subject of that

appeal," and it "may even continue to address matters indirectly implicated in the appeal." *In re Transtexas Gas Corp*., 303 F.3d 571, 580 n. 2. (5th Cir. 2002); *In re Scopac*, 624 F.3d 274, 280 (5th Cir. 2010), *opinion modified on denial of reh'g*, 649 F.3d 320 (5th Cir. 2011). But a bankruptcy court may lose jurisdiction to consider an issue that "nevertheless so impact[s] the appeal so as to interfere with or effectively circumvent the appeal process." *In re Scopac*, 624 F.3d at 280 (citing *In re Whispering Pines Estates, Inc*., 369 B.R. 752, 759 (1st Cir. BAP 2007)). Divestiture is read narrowly; if the appealed order does not decide an issue "as a matter of law," then that issue is not an "aspect[] of the case involved in the appeal." *In re Acis Capital Mgmt., L.P*., 604 B.R. 484, 523 (N.D. Tex. 2019). Here, the issues raised in the Motion are not involved in the pending appeal.

In the January 7, 2026 Order, (the "January Order") this Court did three things: it (1) held that the Side A Policies and proceeds are not property of the estate under § 541 of the Bankruptcy Code and therefore not subject to the automatic stay under § 362 of the Bankruptcy Code; (2) held that the Debtors have an interest in the proceeds of the ABC Policy and that interest is property of the estate under § 541; and (3) denied the request to lift the automatic stay as to the ABC Policy for cause under § 362(d), without prejudice. (Bankr. Dkt. 1231, at 1.) The Side A Insurers' Notice of Appeal (attached hereto as Exhibit 1) is narrowly limited to the second part of the Order only. Indeed, as this Court made clear, its assessment of "whether there was cause to modify the automatic stay (which the Court denied as to the insurance policy at issue on appeal)" is separate and distinct from the appeal, which is "limited to whether the Debtors have an interest in an insurance policy and whether that interest is property of the estate." *See In re First Brands Grp., LLC*, 679 B.R. 543 (Bankr. S.D. Tex. 2026).

Simply put, the Motion falls squarely within this Court's retained jurisdiction. Neither form of relief requested asks the Court to revisit the narrow legal issue on appeal—*i.e.*, whether the proceeds of the ABC Policies are property of the estate under Section 541. Instead, Movants seek only: (1) clarification of the scope and effect of the May Order; and (2) prospective relief from the automatic stay under Section 362(d) to permit advancement of Defense Costs for Insured Persons, assuming those proceeds constitute property of the estate. Such clarification would not require the Court to reconsider the Debtors' interest in the proceeds or disturb the Section 541 property determination now on appeal. Nor would the alternative relief requested in the Motion—prospective relief from the automatic stay—intrude on the Side A Insurers' appeal under Section 541. The January Order denied stay relief under Section 362(d) without prejudice, expressly leaving that issue open; and no one appealed that part of the January Order. Because neither clarification of the May Order nor prospective stay relief would interfere with, circumvent, or modify the issue pending on appeal, this Court retains jurisdiction to hear the Motion and grant the relief Movants seek.

## II. The ABC Policies and Side A Policies Comprise a Single Tower of D&O Insurance.

The UCC's objection further reflects a fundamental misunderstanding of the insurance at issue in this case. Contrary to the UCC's framing (Bankr. Dkt. 3695, at 2), this case involves a <u>**single tower**</u> of directors and officers' liability insurance:

| | |
|---|---|
| **1** | **Primary ABC - $10 million (the "Primary ABC Policy")**<br>Berkshire Hathaway Specialty Insurance Company (the "Primary ABC Insurer")<br>47-EMC-310190-06 |
| **2** | **Excess ABC - $10 million excess of $10 million**<br>XL Specialty Insurance Company<br>ELU202151-25 |

| | |
|---|---|
| 3 | **Excess ABC - $10 million excess of $20 million**<br>Endurance American Insurance Company<br>DOX30001499505 |
| 4 | **Excess ABC - $10 million excess of $30 million**<br>Markel American Insurance Company<br>MKLM3MXM000752 |
| 5 | **Excess ABC - $10 million excess of $40 million**<br>Berkley Insurance Company<br>BPRO8120547 |
| 6 | **Excess ABC - $10 million excess of $50 million**<br>Arch Insurance Company<br>PCX1000134-05 |
| 7 | **Excess ABC - $10 million excess of $60 million**<br>ACE American Insurance Company<br>G46865017 008 |
| 8 | **Excess ABC - $10 million excess of $70 million**<br>Twin City Fire Insurance Company<br>83 PE 0423884-25 |
| 9 | **Excess ABC - $10 million excess of $80 million**<br>Everest National Insurance Company<br>PC8EX00256-251 |
| 10 | **Excess ABC - $10 million excess of $90 million (collectively, with t policies in layers 2-10, the "Excess ABC Policies")**<br>Old Republic Insurance Company<br>ORPRO 13 103159 |
| 11 | **Side A - $10 million excess of $100 million (the "Lead Side A Policy")**<br>National Union Fire Insurance Company of Pittsburgh, Pa. (the "Lead Side A Insurer")<br>03-824-13-57 |
| 12 | **Excess Side A - $10 million excess of $110 million (the "First Excess Side A Policy")**<br>QBE Insurance Corporation<br>100044631 |

| | |
|---|---|
| 13 | **Excess Side A - $10 million excess of $120 million (the "Second Excess Side A Policy")**<br>Beazley Insurance Company, Inc.<br>V2A4E6250601 |
| 14 | **Excess Side A - $10 million excess of $130 million**<br>Ironshore Indemnity, Inc.<br>DO6NABXY3V006 |
| 15 | **Excess Side A - $10 million excess of $140 million**<br>Fair American Insurance and Reinsurance Company<br>MLX-1000985-04 |
| 16 | **Excess Side A - $10 million excess of $150 million**<br>Allianz Global Risks US Insurance Company<br>USF00003525 |
| 17 | **Excess Side A - $10 million excess of $160 million**<br>Westfield Select Insurance Company<br>XSA-466225K-00 |
| 18 | **Excess Side A - $10 million excess of $170 million**<br>Zurich American Insurance Company<br>DOC 1474319-03 |
| 19 | **Excess Side A - $10 million excess of $180 million**<br>AXIS Insurance Company<br>P-001-000068071-06 |
| 20 | **Excess Side A - $10 million excess of $190 million**<br>Great American Insurance Company<br>DFX1491246 |

(the "D&O Tower").

The ABC policies in layers 1 through 10 of the D&O Tower provide the first $100 million in coverage (the "ABC Policies"). The Side A policies in layers 11 through 20 of the D&O Tower provide the next $100 million in coverage (the "Side A Policies"). The Side A Policies attach after the $100 million combined limits of the ABC Policies are exhausted, unless a specifically negotiated circumstance, known as a "DIC Event," occurs. If a DIC Event occurs, then the Side A Policies must drop down and provide primary coverage before the exhaustion of the ABC

Policies. However, absent a DIC Event, the Insured Persons are entitled to—and must first look to—coverage under the ABC Policies.

The January Order created a DIC Event by barring the ABC insurers from paying Defense Costs under the ABC Policies while the automatic stay is in effect. As a result of the January Order, certain Side A Policies dropped down and paid Defense Costs that are covered under the ABC Policies and otherwise would have been paid by the ABC insurers, subject to a contractual right to seek reimbursement from the ABC Policies if and when the DIC Event ended. Absent the January Order, those Defense Costs would not have been covered under the Side A Policies unless and until the $100 million combined limits of the ABC Policies were exhausted.

The May Order ended the DIC Event by modifying the automatic stay, to the extent applicable, and authorizing the Primary ABC Insurer and "any other insurance carrier of a directors and officers insurance policy listed on Exhibit C"—which includes the Excess ABC Policies—to make payments "in accordance with [the] terms of the ABC Policy," to which the Excess ABC Policies follow form. (*See* Bankr. Dkt. No. 2845) (incorporating defined terms from Bankr. Dkt. No. 798 (the "Motion for Relief")). In reliance on the May Order, the Primary ABC Insurer paid Defense Costs and exhausted its $10 million limit of liability under the Primary ABC Policy. In their Motion, the Excess ABC Insurers seek (1) clarification that the May Order modifies the automatic stay to authorize payments under the Excess ABC Policies; or (2) alternatively, and to the extent necessary, modification of the automatic stay to allow the Excess ABC insurers to make payments and advance Defense Costs under the Excess ABC Policies.

Absent clarification or modification of the May Order, the Insured Persons have a concrete belief that they will suffer irreparable harm if the ABC insurers will be precluded from paying towards the more than $60 million in legal fees that continue to mount as the criminal, adversary,

and related proceedings and investigations press on. "Clear, immediate, and ongoing" defense losses to the insureds "trump" merely "hypothetical or speculative" claims by the estate, and denial deprives insureds of the very benefit the insurance was purchased to provide. *See e.g.*, *Sec. & Exch. Comm'n v. Narayan*, No. 3:16CV-1417-M, 2017 WL 447205, at *6 (N.D. Tex. Feb. 2, 2017). The Debtors have not alleged any harm to the estate, and the UCC has failed to identify any cognizable harm from allowing Excess ABC payments. The balance of harms favors relief. Accordingly, and for the reasons set forth more fully in the Motion, cause exists to clarify the May 29 Order or grant the prospective stay relief the January Order left open, and permit payment of Defense Costs to ensure the Insured Persons receive the coverage and protections to which they are entitled under the ABC Policies.

## III. CONCLUSION

For these reasons, the Side A Insurers respectfully move to join the Motion and request that the Court enter Proposed Order #1 or Proposed Order #2 attached to the Motion, and any such other and further relief that may be just and proper.

Dated: September 25, 2026

Respectfully submitted,

**Wright Close Barger & Guzman**

By: */s/ Mukul S. Kelkar*
Howard L. Close
Federal Bar No: 13362
Mukul S. Kelkar
Federal Bar No: 1503770
Ronnie L. Flack Jr.
Federal Bar No: 2907428
Daniela Mondragón
Federal Bar No: 3609524
700 Louisiana Street, 30th Floor
Houston, Texas 77002
Tel: (713) 572-4321
Fax: (713) 572-4320
close@wcbglaw.com

mkelkar@wcbglaw.com
flack@wcbglaw.com
mondragon@wcbglaw.com

***Counsel for Ironshore Indemnity, Inc., Fair American Insurance and Reinsurance Company, Allianz Global Risks US Insurance Company, Westfield Select Insurance Company, AXIS Insurance Company, and Zurich American Insurance Company***

and

Ronald P. Schiller
Matthew A. Hamermesh (*pro hac vice*)
Martha R. Osisek (*pro hac vice*)
1735 Market Street, 26th Fl.
Philadelphia, PA 19103-6933
Telephone: (215) 568-6200
Email: rschiller@hangley.com
mosisek@hangley.com
mhamermesh@hangley.com

***Counsel for Ironshore Indemnity Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2026, the foregoing Side A Insurers' Joinder in Excess ABC Insurers' Motion for Clarification or, in the Alternative, Relief from the Automatic Stay was filed via the Court's CM/ECF system and served on counsel or parties of record by CM/ECF.

*/s/ Mukul S. Kelkar*
Mukul S. Kelkar