TOTAL Fleet Solutions

53 West 36th Street, Suite 701
New York, NY 10018
Telephone: (212) 602-1183

# MASTER LEASE AGREEMENT

Master Lease #[redacted]409

I certify this to be a true and exact copy of the original.
Name: Katharine Harris
Title: VP, Operations

Dear Customer: This Master Lease Agreement ("Master Agreement") is written in simple and easy-to-read language. Please read this Master Agreement thoroughly and feel free to ask us any questions you may have about it. The words YOU and YOUR refer to the lessee. The words WE, US and OUR refer to the Lessor, IEMFS, Ltd., an Ohio Limited Liability Company.

## Customer & Billing Contact Information

| Lessee Full Legal Name | | | |
|---|---|---|---|
| Champion Laboratories, Inc. | | | |
| Contact Person | Contact Phone No. (618) 445-6011 | Federal Tax ID # | State of Org. DE |
| Address: 200 South 4th Street, Albion, IL 62806 | | | |

## Master Lease Agreement

The Terms of this Master Agreement are master terms which will be incorporated into, and constitute a part of, one or more Equipment Schedules (each a "Schedule") between us and you. Each Schedule will constitute a separate, assignable lease agreement which incorporates the terms of this Master Agreement. When the term "Lease" is used in this Master Agreement, it will mean each Schedule individually, together with the terms of this Master Agreement. This Master Agreement and each Schedule are collectively a complete and exclusive statement of our agreement concerning the Schedule.

## Terms/Conditions

IMPORTANT: NEITHER THE SUPPLIER NOR ANY SALESPERSON ARE OUR AGENT. THEY HAVE NO AUTHORITY TO SPEAK ON OUR BEHALF OR MAKE ANY CHANGES TO THIS MASTER AGREEMENT. THEIR STATEMENTS WILL NOT AFFECT YOUR RIGHTS OR OBLIGATIONS UNDER THIS MASTER AGREEMENT.

**1. LEASE AGREEMENT; PAYMENTS:** We agree to lease to you and you agree to lease from us the equipment identified in each Schedule executed hereunder, together with all replacements, parts, attachments, accessories and substitutions therefor ("Equipment"). You promise to pay us the Lease payments according to the terms of the Payment schedule shown on each Schedule hereto, plus all other charges set forth in Sections 3, 4, 9, 11, 13, 16, 17, and 20.

**2. GENERAL TERMS; PAYMENT ADJUSTMENTS; EFFECTIVENESS:** You agree to all the terms and conditions on page 1 and 2 of this Master Agreement and on each Schedule. This Master Agreement and each Schedule is a complete and exclusive statement of our agreement. The Equipment will not be used for personal, family or household purposes. If the cost of the Equipment varies from the estimate you or your supplier have provided to us, you agree that we may adjust the Lease payment upward or downward up to 10%. You acknowledge receipt of a copy of this Master Agreement and each Schedule and acknowledge that you have selected the Equipment and reviewed the supply contract under which we will obtain the Equipment. NO LEASE IS BINDING ON US AND NO LEASE WILL COMMENCE UNTIL WE ACCEPT IT IN OUR OFFICES IN NEW YORK COUNTY, NEW YORK. You authorize us to file UCC financing statements, and any amendments thereto, to show our interest in the Equipment and any proceeds. You authorize us to insert or correct missing information on this Master Agreement and on each Schedule, including contract number, your legal name, serial numbers, Equipment location, and any information describing the Equipment. Any security deposit you have given us is noninterest bearing and may be used by us to cover any costs or losses we may suffer due to your default of any Lease. The security deposit is refundable upon expiration of the applicable Lease, provided all Lease terms and conditions have been performed. You agree that any Purchase Order issued to us covering the Equipment is issued for purposes of authorization and your internal use only, and none of its terms and Conditions shall modify the terms of any Lease. You agree to provide us your financial statements upon request if publicly unavailable. Nothing in this Master Agreement nor any Schedule shall be construed to mean that you must pay any sum which exceeds that which may lawfully be charged, and if there is such excess sum, it shall be applied to reduce the lawful amounts payable by you, and any excess shall be returned to you.

**3. RENEWAL:** Unless the Lease End Purchase Option set forth on the Schedule is $1.00, after the original Lease term expires the Schedule will automatically renew for successive one month terms unless (a) you send us written notice that you do not want it to renew at least 60 days, but no more than 120 days, before the end of any term, or (b) following renewal we terminate the Schedule upon 60 days prior written notice to you.

**4. LATE CHARGES; OTHER CHARGES:** The due date for your payments will be identified on your invoice. If any payment is not made when due, you agree to pay a late charge at the rate of 10% of such late payment or $35, whichever is greater. You also agree to pay $25 for each returned check and a documentation fee up to $500.00 for each Schedule executed hereunder.

**5. EQUIPMENT OWNERSHIP:** We are and shall remain the sole owner of the Equipment. You agree to keep the Equipment free from liens and encumbrances. The Equipment shall always remain personal property even though the Equipment may become attached or affixed to real property. If any Lease is determined not to be a true lease, you hereby grant us a security interest in the Equipment relating back to the date we purchased it.

**6. NO WARRANTIES:** WE ARE LEASING THE EQUIPMENT TO YOU "AS IS," WITH NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, DESIGN, CONDITION, OR THE QUALITY OF THE MATERIAL OR WORKMANSHIP. WE ARE NOT RESPONSIBLE FOR ANY REPAIRS OR SERVICE TO THE EQUIPMENT OR ANY DEFECTS OR FAILURES IN OPERATION. We assign to you for the term of the applicable Lease any transferable manufacturer or supplier warranties. We are not liable to you for any breach of those warranties. You agree that upon your acceptance of the Equipment, you will have no setoffs or counterclaims against us.

**7. MAINTENANCE; USE; INSTALLATION:** You are responsible for installation and maintenance of, and for any damage to, the Equipment. You must service, repair and maintain the Equipment at your expense in the same condition as when received, ordinary wear and tear excepted, in compliance with all applicable laws and regulations, and in compliance with all insurance policies and all manuals, orders, recommendations and instructions issued by the manufacturer or vendor. You shall permit the Equipment to be used by qualified personnel solely for business purposes and the purpose for which it was designed. You will make no alterations or modifications to the Equipment without our prior written consent. If the Equipment malfunctions, is damaged, lost or stolen, you agree to continue to make all payments due under the Lease.

**8. EQUIPMENT LOCATION:** You will keep the Equipment only at the addresses shown on the applicable Schedule and you will not move it from those addresses unless you get our prior written consent. If deemed necessary, you authorize us to inspect the Equipment at the Equipment location listed on the documents. If no inspection is completed, it shall be conclusively presumed that the Equipment is in full compliance with the terms and conditions of the Lease.

**9. INSURANCE; CASUALTY:** Until all Schedules are paid in full and the Equipment has been returned to us, you will: (a) keep the Equipment insured under all risk property insurance policies naming us as loss payee for the greater of the Remaining Balance (defined below) or its full replacement value against all types of loss, including theft; and, (b) provide and maintain comprehensive general public liability insurance naming us as additional insured. All policies and insurers shall be acceptable to us and the insurer(s) must agree to provide us at least 30 days prior written notice of any material change, cancellation or non-renewal of coverage. If you do not provide us with acceptable evidence of insurance, we may, but will have no obligation to, obtain insurance and add a charge to your monthly payment which will include the insurance premium charged by our insurance provider, our then prevailing insurance administration fee, together with interest on such amounts at the overdue rate provided in Section 13. If any Equipment is damaged, you shall immediately repair the damage at your expense. If any Equipment is lost, stolen or damaged beyond repair, you shall, at our option, (a) replace the same with like equipment in a condition acceptable to us and convey clear title to such equipment to us (such equipment will become Equipment subject to the Lease), or (b) pay us the Remaining Balance. For purposes of this Master Agreement, "Remaining Balance" means the sum of (i) all amounts which are currently due to us under the Lease, but are unpaid, plus (ii) the present value of the sum of all amounts to become due during the Lease term plus (iii) the Lease End Purchase Option price for the Equipment set forth on the Schedule, each discounted at a discount rate equal to the 1-year Treasury Constant Maturity rate as published in the Selected Interest Rates table of the Federal Reserve statistical release H.15(519) for the week ending immediately prior to the date of Lessee Acceptance of each Schedule (or if no longer published, a rate reasonably determined by us); provided, that if the Lease End Purchase Option price is FMV, then the Remaining Balance will be calculated by reference to the expected FMV for the Equipment as of the end of the Lease term, as reasonably anticipated by us at the commencement of the Lease. Upon our receipt of the Remaining Balance following the loss or destruction of any Equipment, you shall be entitled to whatever interest we have in such Equipment in its then condition and location, without warranties of any kind.

**Lessee Authorized Signature** — THIS LEASE MAY NOT BE CANCELED

| Authorized Signature | Date | Print Name |
|---|---|---|
| X [signature] | 11/28/17 | GREG NOETHLICH |
| | Title | President & CEO |



TFS MLA 8.14

EXHIBIT 1

10. **LIABILITY**: WE ARE NOT RESPONSIBLE FOR ANY LOSSES OR INJURIES TO YOU OR ANY THIRD PARTIES CAUSED BY THE EQUIPMENT OR ITS USE. You assume the risk of liability for, and agree to indemnify, defend and hold us, our employees and agents, harmless from and against (a) any and all liabilities, losses, damages, claims and expenses (including attorneys' fees and legal costs) arising out of the manufacture, purchase, shipment and delivery of the Equipment to you, acceptance or rejection, ownership, licensing, titling, registration, leasing, possession, operation, use, return or other disposition of the Equipment, including, but not limited to, any liabilities that may arise from patent or latent defects in the Equipment and any claims based on strict tort liability, and (b) any and all loss or damage of or to the Equipment, and (c) any liability to the manufacturer or supplier arising under any purchase orders issued by or assigned to us.

11. **TAXES**: PERSONAL PROPERTY TAX FEES: You agree to show the Equipment as "Leased Property" on all personal property tax ("PPT") returns. You agree to pay us all PPT assessed against the Equipment. During the term of each lease, we may charge you a PPT fee to offset PPT exposure on your leased Equipment. This fee will be the actual PPT assessed for the Equipment in the preceding tax year. In the event of early termination of all or a portion of the Equipment, a reasonable estimate of the expected tax liability will be assessed. We may also charge you an administrative fee per item of leased Equipment with each PPT bill to offset the costs associated with the reporting, payment, and collection of actual or estimated PPT. You agree to reimburse us for applicable sales and/or use tax and all other taxes, fees, fines and penalties which may be imposed, levied or assessed by any federal, state, or local government or agency which relate to any Lease, the Equipment, or its use. Fines and penalties will be limited to any incurred as a result of your failure to act in accordance with federal, state and local tax laws and codes and/or the terms of any Lease. You agree to reimburse us for reasonable costs incurred in collecting or paying any taxes, assessments, charges, penalties or fees.

12. **ASSIGNMENT**: YOU MAY NOT SELL, PLEDGE, TRANSFER, ASSIGN OR SUBLEASE THE EQUIPMENT, THIS MASTER AGREEMENT OR ANY SCHEDULE. We may sell, assign or transfer all or any part of this Master Agreement, any Schedule, and/or the Equipment. The assignee will have the same rights that we have, but you agree you will not assert against the assignee any claims, defenses or set-offs that you may have against us or any supplier.

13. **DEFAULT; DAMAGES**: If you, or any guarantor of your obligations: (a) fail to make any Lease payment within 10 days of when due, or (b) become insolvent or commence bankruptcy or receivership proceedings or have such proceedings commenced against you, or (c) terminate your existence by merger, consolidation, or sale of substantially all your assets, or (d) permit the sale or transfer of any shares of Lessee's or guarantor's capital stock or of any ownership interest in Lessee or guarantor to any person, persons, entity or entities (whether in one transaction or in multiple transactions) which results in a transfer of a majority interest in the ownership and/or the control of the Lessee or such guarantor from the person, persons, entity or entities who hold ownership and/or control of the Lessee or such guarantor as of the date of this Master Agreement, or (e) default on any obligation to us, dies or ceases to exist, or (f) default under any other agreement you have with us or our affiliates, or (g) otherwise breach any warranty, covenant or provision of this Master Agreement or any Schedule, you will be in default. If you are in default we may, but shall not be obligated to do any or all of the following: (i) declare immediately due and payable the Remaining Balance and all unpaid amounts due under all Leases under this Master Agreement, (ii) require you to immediately return all Equipment to us at your expense, (iii) with or without notice, demand or legal process retake possession of the Equipment (and you authorize us to enter upon the premises wherever the Equipment may be found), (iv) sell, hold, use, lease or otherwise dispose of the Equipment, (v) immediately terminate this Master Agreement and all Schedules (and any other agreements we have with you), (vi) apply any security deposit to reduce amounts due to us hereunder, and/or (vii) exercise any other remedies available to us under applicable law. You agree to pay our actual attorneys' fees, plus all actual costs, including all costs of any Equipment repossession. Any payment or other amount more than 30 days delinquent under the Lease shall accrue interest until paid at the overdue rate of 1.5% per month, or the maximum amount permitted by applicable law, whichever is less. If we dispose of the Equipment, we will apply the net proceeds of such disposition to reduce the Remaining Balance and other amounts payable by you, and you shall remain responsible for the payment of any deficiency. If the Lease End Purchase Option price indicated on any Schedule is $1, and the net proceeds we recover related to such Schedule following a default is more than the Remaining Balance and other outstanding amounts payable by you, we will give you the excess. You waive any notice of our repossession or disposition of the Equipment. By repossessing any Equipment, we do not waive our right to collect any amounts due under any Lease. We will not be responsible to you for any consequential or incidental damages. Our delay or failure to enforce our rights with respect to any Lease will not prevent us from doing so at a later time.

14. **CHOICE OF LAW; JURISDICTION; VENUE; NON-JURY TRIAL**: You and any Guarantor hereto agree that this Master Agreement and each Schedule hereunder will be deemed for all purposes to be fully executed and performed in the State Of New York and will be governed by New York law or the jurisdiction of our successors or assigns ("State of Jurisdiction"). YOU AND ANY GUARANTOR EXPRESSLY AND IRREVOCABLY AGREE TO: (a) BE SUBJECT TO THE PERSONAL JURISDICTION OF THE STATE OF JURISDICTION IN ANY CONTROVERSY THAT MAY ARISE RELATING TO ANY LEASE, ANY GUARANTY OR THE EQUIPMENT; (b) ACCEPT VENUE IN ANY FEDERAL OR STATE COURT IN THE STATE OF JURISDICTION AND AGREE THAT SUCH COURT WILL BE A CONVENIENT PLACE FOR ANY TRIAL; AND, (c) WAIVE ANY RIGHT TO A TRIAL BY JURY. You and any Guarantor further acknowledge and agree that subsections (a) through (c) are conditions precedent to and are material inducements to our entering into this Master Agreement and any Schedule with you and any Guaranty with any Guarantor.

15. **FINANCE LEASE; AMENDMENTS**: YOUR OBLIGATION TO PAY ALL AMOUNTS UNDER EACH LEASE IS ABSOLUTE AND UNCONDITIONAL. EACH LEASE IS A "FINANCE LEASE" UNDER THE UNIFORM COMMERCIAL CODE AS ADOPTED IN NEW YORK ("UCC"). NO LEASE MAY BE AMENDED EXCEPT BY A WRITING WHICH WE HAVE SIGNED. YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES YOU MAY HAVE UNDER UCC 2A-508 THROUGH 2A-522, INCLUDING ANY RIGHT TO: (a) CANCEL ANY LEASE; (b) REJECT TENDER OF ANY EQUIPMENT; (c) REVOKE ACCEPTANCE OF ANY EQUIPMENT; (d) RECOVER DAMAGES FOR ANY BREACH OF WARRANTY; AND (e) MAKE DEDUCTIONS OR SET-OFFS, FOR ANY REASON, FROM AMOUNTS DUE US UNDER ANY LEASE. IF ANY PART OF THIS MASTER AGREEMENT AND/OR ANY SCHEDULE IS INCONSISTENT WITH UCC 2A, THE TERMS OF THIS MASTER AGREEMENT AND EACH SCHEDULE WILL GOVERN.

16. **EQUIPMENT RETURN**: If you do not exercise the Lease End Purchase Option at the end of any Lease term, you will immediately crate, insure and ship all, but not less than all, of the Equipment subject to such Lease, in good working condition, to us at a location and by means we designate, with all expenses to be prepaid by you. You must give us 60 days prior written notice of your intent to return the Equipment under this Section. You agree to pay a restocking fee not to exceed $100 for each item of Equipment which you return to us under this Section. You must disassemble and pack the Equipment for shipment in a manner authorized by the manufacturer or its representative and provide for its reassembly at the return location in the condition required in the Lease, at your expense. If you fail to return all of the Equipment under any Lease to us as agreed, you shall pay to us the regular Lease payments each month until all of the Equipment is returned. If the Equipment is damaged when received by us or otherwise not in the condition required upon return to us, you agree to pay for all costs of repair or restoration. You will also be responsible for any damage to the equipment which occurs during shipping.

17. **PURCHASE OPTION**: If you are not in default, you may at any time with 60 days prior written notice purchase all (but not less than all) the Equipment for a price equal to the sum of all remaining payments to come due during the Lease term (if any) plus the Lease End Purchase Option price indicated on the Schedule plus any applicable sales taxes and fees. Any Lease End Purchase Option price for the Equipment designated on the Schedule as "FMV," shall be for its fair market value in place and in use as reasonably determined by us ("FMV"). You must give us 60 days advance written notice of your intent to exercise this option unless the purchase is being made at the end of the term and the Lease End Purchase Option is $1.

18. **REPRESENTATIONS; WARRANTIES; COVENANTS**: You represent and warrant that all customer information provided in this Master Agreement and in each Schedule is true, accurate and complete. You agree to inform us in advance of any change in the status or type of your organization, state of organization or organization ID number. You will provide us a complete current copy of your Articles of Incorporation, or, if not incorporated, other appropriate organization documentation as we request.

19. **ELECTRONIC DOCUMENTATION**: We may in our sole discretion, accept a digitally executed and stored record of, or a photocopy, electronically transmitted copy, pdf or other reproduction of this Master Agreement, any Schedule or any ancillary document (any such record, the "Counterpart") as the binding and effective record of this Master Agreement, Schedule or ancillary document whether or not an ink-signed version hereof or thereof is also received by Lessor from Lessee, provided, however, that if we accept a Counterpart as the binding record hereof or thereof, you represent to us that the signature that appears on the Counterpart that is transmitted by you or on your behalf to us in any manner described above is intended by you to authenticate the Counterpart notwithstanding that such signature is digital, electronic or a reproduction and you further agree that a Counterpart of this Master Agreement, Schedule or other ancillary document received by us, shall, when affirmatively acknowledged by us, constitute an original document for the purposes of establishing the provisions hereof and thereof and shall be legally admissible under the best evidence rule and binding on and enforceable against you. If we accept a Counterpart of a Schedule as the binding and effective record thereof only such Counterpart designated and acknowledged by us may be marked as or deemed the "Original" and to the extent that such Schedule constitutes chattel paper, perfection of a security interest by possession may only be accomplished by possession of the Counterpart that we have designated as the "Original".

20. **SOFTWARE**: The Equipment shall include the software license ("License") and the software. You understand that we shall continue to retain title to the Equipment. You grant to us a security interest in all of the right, title and interest in and to said Equipment, including the software, as same may be modified, corrected, supplemented or enhanced from time to time. We shall have all the rights of a secured creditor under the UCC with respect to the Equipment. You shall not assign your interest or sublease said License or use of the Equipment to any other person or entity without our prior written consent, at our sole discretion. You shall have no right, title or interest in the Equipment or License. You agree to indemnify and hold us harmless from and against all claims, liabilities, damages, judgment, suits and all legal proceedings and costs in connection with, arising out of the possession, use and operation of the Equipment or arising out of you breach of the terms of the License. This indemnity is in addition to that provided in Paragraph 10 of this Agreement.

21. **MISCELLANEOUS**: If any provision of any Lease is unenforceable, invalid or illegal, the remaining provisions will continue to be effective. You must bring any action against us relating to any Lease within one year after the basis for the claim first arises and in any event not later than one year following termination of such Lease. Time is of the essence with respect to the payment and performance of all of your obligations under any Lease.

22. **MERGER**: THE ABOVE TERMS AND CONDITIONS REPRESENT AND MERGE ALL OF THE TERMS AND CONDITIONS INTO THIS MASTER AGREEMENT. THIS MASTER AGREEMENT AND EACH SCHEDULE CANNOT BE MODIFIED OR ALTERED UNLESS IT IS IN WRITING AND SIGNED BY ONE OF OUR OFFICERS.

**Lessee Authorized Signature**

**THIS LEASE MAY NOT BE CANCELED**

| Authorized Signature | Date / Print Name / Title |
| --- | --- |
| X [signature] | Date 11/28/17 Print Name GREG NOETHLICH<br>Title President/CEO |

**Accepted by IEMFS, Ltd., Lessor**

| Authorized Signature | Date / Print Name / Title |
| --- | --- |
| X [signature] | Date 12/21/17 Print Name<br>Title Katherine Harris VP, Operations |

# AMENDMENT TO MASTER LEASE

63 West 36th Street, Suite 701, New York, NY 10018 • Telephone: 212.602.1183 • Fax: 203.549.0476

TOTAL Asset Solutions

I certify this is an exact copy of the true and original.
Name: Katharine Harris
Title: VP, Operations

THIS AMENDMENT is made as of the date set forth below.

**WHEREAS**, **Champion Laboratories, Inc.** ("You and "Your") and **IEMFS, Ltd.** ("We," "Us" and "Our") desire to enter into Master Lease Agreement No[redacted]409 dated Nov 28, 2017 (the "Master Lease") and;

**WHEREAS**, in order to enter into the Master Lease, the parties mutually agree to make the following changes to the terms of the Master Lease.

**NOW, THEREFORE**, the parties hereby agree as follows:

1. The word "ACCEPT" is replaced with "COUNTERSIGN" in the sixth sentence of **Paragraph 2: (General Terms; Payment Adjustments; Effectiveness)**.

2. The following sentence is inserted after the sixth sentence of **Paragraph 2: (General Terms; Payment Adjustments; Effectiveness)**:

   "You shall have no obligation with respect to the Equipment unless and until an acceptance certificate shall have been so executed and delivered by you."

3. The eighth sentence of **Paragraph 2: (General Terms; Payment Adjustments; Effectiveness)** is deleted in entirety and replaced as follows:

   "You agree to reasonably assist us with inserting missing information on this Master Lease and on each Schedule, including contract number, your legal name, serial numbers, Equipment location, and any information describing the Equipment."

4. The ninth sentence of **Paragraph 2: (General Terms; Payment Adjustments; Effectiveness)** is deleted in its entirety and replaced as follows:

   "Any security deposit you have given us is noninterest bearing and may be used by us to cover any reasonable, out-of-pocket costs or losses we may suffer due to your default of any Lease pursuant to Section 13."

5. The phrase "provided all Lease terms and conditions have been performed" is replaced by the phrase "net of any unpaid charges or damages you owe us pursuant to the applicable Lease" in the tenth sentence of **Paragraph 2: (General Terms; Payment Adjustments; Effectiveness)**.

6. The first sentence of **Paragraph 3: (Renewal)** is deleted in its entirety and replaced as follows:

   "Unless the Lease End Purchase Option set forth on the Schedule is $1.00, after the original Lease term expires the Schedule will automatically renew for successive one month terms on the same terms as the original Lease unless (a) you send us written notice that you do not want it to renew at least 60 days, but no more than 120 days, before the end of the original Lease term, or (b) following renewal, which occurs after the original Lease term expires and all Lease payments with respect to the original Lease term are paid, we terminate the Schedule upon 60 days prior written notice to you or, following renewal, you terminate the Schedule upon 60 days prior written notice to us."

7. **Paragraph 4: (Late Charges; Other Charges)** is deleted in its entirety and replaced as follows:

   "The due date for your payments will be identified on the applicable Schedule and your invoice. If any payment is not made within 15 days of when due, you agree to pay a late charge at the rate of 2.5% of such late payment or $35, whichever is greater."

8. The phrase "unless otherwise directed by us pursuant to Section 9" is added to the end of the fifth sentence of **Paragraph 7: (Maintenance; Use; Installation)**.

9. The word "immediately" is replaced by the phrase "reasonably promptly" in the fourth sentence in **Paragraph 9: (Insurance; Casualty)**.

10. Subsection (iii) in the sixth sentence in **Paragraph 9: (Insurance; Casualty)** is deleted in its entirety and replaced as follows:

"the "Casualty Value" as set forth in the applicable Schedule based on the date on which the Equipment was lost, stolen, or damaged beyond repair."

11. The word "reasonable" is inserted before the phrase "attorneys' fees" in subsection (a) in the second sentence of **Paragraph 10: (Liability)**.

12. The following subsection is added to the end of the second sentence in **Paragraph 10: (Liability)**:

    "(c) any liability to the manufacturer or supplier arising under any purchase order with respect to the Equipment issued by us with your prior written consent or issued by you and assigned to us."

13. The following phrase is added to the end of the seventh sentence in **Paragraph 11 (Taxes; Personal Property Tax Fees)**: "(except for any taxes, fees, fines and penalties with respect to our income)".

14. The third sentence in **Paragraph 12 (Assignment)** is deleted in its entirety and replaced as follows:

    "The assignee will have the same rights that we have, but you agree you will not assert against the assignee any claims, defenses or set-offs that you may have against us or any supplier."

15. The following sentence is inserted at the end of **Paragraph 12 (Assignment)**:

    "In the event we sell, assign or transfer all or any part of this Master Agreement, any Schedule, and/or the Equipment, you will continue to assert any claims you may have against us as Lessor (i.e., we will nonetheless continue to remain fully responsible for all obligations of Lessor under this Agreement and any Schedules)."

16. The number "10" is replaced with the number "30" in subsection (a) in the first sentence of **Paragraph 13: (Default; Damages)**.

17. Subsections (e), (f) and (g) in the first sentence of **Paragraph 13: (Default; Damages)** are deleted in their entirety and replaced as follows:

    "(e) default on any obligation to us and fail to cure such default within 30 days following written notice from us of such default, dies or ceases to exist, or (f) default in any respect under any other agreement you have with us or our affiliates and fail to cure such default within 30 days following written notice from us of such default, or (g) otherwise breach in any respect any warranty, covenant or provision of this Master Agreement or any Schedule and fail to cure such breach within 30 days following written notice from us of such breach"

18. The third sentence in **Paragraph 13: (Default; Damages)** is deleted in its entirety and replaced as follows:

    "You agree to pay our actual, reasonable, out-of-pocket attorneys' fees, plus all actual, reasonable, out-of-pocket costs, including all reasonable, out-of-pocket costs of any Equipment repossession."

19. The word "immediately" is replaced with the phrase "reasonably promptly" in the first sentence in **Paragraph 16: (Equipment Return)**.

20. The second sentence in **Paragraph 17: (Purchase Option)** is deleted in its entirety and replaced as follows:

    "Any Lease End Purchase Option price for the Equipment designated on the Schedule as "FMV," shall be for its fair market value, determined by an independent appraiser mutually selected by you and us with the appraisal to be binding upon both parties, based on the date on which the Equipment is to be purchased ("FMV")."

21. The phrase "and upon written notice to you" is added after the phrase "We may in our sole discretion" in the first sentence in **Paragraph 19: (Electronic Documentation)**.

22. The phrase "except for your leasehold interest under the applicable Lease" is inserted at the end of the sixth sentence in **Paragraph 20: (Software)**.

23. The second sentence in **Paragraph 21: (Miscellaneous)** is deleted in its entirety and replaced as follows:

    "You must bring any action against us relating to any Lease within one year after you actually become aware of the claim and in any event not later than one year following termination of such Lease."

24. The phrase "ONE OF OUR OFFICERS" is replaced with the phrase "A DULY AUTHORIZED OFFICER OF EACH PARTY" in the second sentence in **Paragraph 22: (Merger)**.

25. All provisions of the Master Lease not amended by this Amendment shall remain in full force and effect as set forth in the Master Lease.

| Champion Laboratories, Inc. | IEMFS, Ltd. |
|---|---|
| X [signature] | X [signature] |
| Print Name: GREG NOETHLICH | Print Name: Katharine Harris VP, Operations |
| Title: President; CEO | Title: |
| Date: Nov 28, 2017 | Date: 12/21/17 |

I certify this to be exact copy of the original
Name: Katharina Harris
Title: VP, Operations

**RIDER TO MASTER LEASE AGREEMENT #[redacted]409**

This rider, dated and effective Nov 28, 2017, to Master Lease Agreement No.[redacted]409 (the "Agreement") dated Nov 28, 2017 is made by and between IEMFS, Ltd. ("Lessor") and Champion Laboratories, Inc. ("Lessee") setting forth the terms and conditions relating to the lease of equipment (referred to herein as the "Equipment"). This rider is executed and delivered by Lessor and Lessee in regard to the Agreement.

**Return Provisions – Material Handling Equipment**

In addition to the requirements of Section 16 of the Agreement, upon return thereof by the Lessee to Lessor, the following return conditions shall apply to Forklifts and Material Handling Equipment and Lessee agrees to pay on demand all costs and expenses incurred in connection with repairing the Equipment and restoring it to such condition, including its assembly and delivery:

- Unit(s) will have no structural damage, bent frames or warped uprights, and body, mast, hydraulic cylinder and fork(s) shall be free of any damage. Each unit shall be able to operate normally in forward and reverse through all speed ranges or gears, and shall lift, lower and tilt properly and to its designed lifting height and reach length when loaded to rated capacity. Units will be in a condition whereby it can be put immediately into service by another operator at its original designated function and capacity.
- Any replacement parts or attachments for the Equipment must be approved by Lessor. Attachments, if any, must be in operating condition and must work per manufacturer's specification.
- Hydraulic cylinders must not be bent or gouged.
- Hose reels and hose take up assemblies must not be bent or damaged.
- All safety equipment, covers and guards, parts, pieces and components must be in-place and operational.
- All engines, transmissions, gears, electric motors, clutches and drive axles shall be in good operating condition, with no leaks, smoking, slipping or grabbing.
- Batteries will be in good, safe operating condition with no dead cells or cracked cases and must be able to accept a charge. Chargers will maintain electrical output as specified by the manufacturer, with no case damage or broken parts.
- Brakes will hold vehicle as specified by manufacturer with or without rated load, and have no heat discoloration or warpage caused by failure to release parking brake.
- Radiator and/or cooling system shall be free from leaks, punctures or holes.
- Each unit will have serviceable tires with good tread. Cushion tires should not have flat spots or chunking/holes greater than 1" in length. Pneumatic tires may not have cuts in side wall exceeding .25" in depth. Rims may not be bent. All tires must have 50% remaining tread life.
- Lessee must make the Equipment available for on-site operational inspections.
- Proof in writing may be required from a manufacturer's representative or qualified technical service representative that the Equipment has passed performance tests within the manufacturer's specifications and has been recertified for continued maintenance.

This list is intended only as a guide. Damaged or broken items, or items that have worn out due to lack of maintenance, not mentioned in this list may also result in fees due to Lessor.

| | |
|---|---|
| Lessee: Champion Laboratories, Inc. | Lessor: IEMFS, Ltd. |
| X [signature] | X [signature] |
| Name: Greg Nettura | Name: Katharina Harris |
| Title: President & CEO | Title: VP, Operations |

# CERTIFICATE OF INCUMBENCY

IEMFS, LTD. • 53 West 36th Street, Suite 701, New York, NY 10018
Telephone: 212.602.1183 • Fax: 203.549.0478

TOTAL Fleet Solutions

The undersigned, duly elected and acting Corporate Secretary or Officer of Champion Laboratories, Inc., (the "Company") does hereby certify as follows:

1. The execution, delivery and performance of the lease agreement(s) between IEMFS, Ltd. ("**IEMFS**") and Company, all notice and acknowledgment of assignment(s), guarantees, other contracted agreements, and any related documents (collectively the "**Lease Documents**") have been duly authorized by the Company.
2. The Lease Documents have been or will be duly and validly executed and delivered on behalf of the Company and binding upon Company in accordance with their terms (as any one of the below officers or signatories determines are in the best interests of Company) if executed by the persons whose names, titles and signatures appear below ("**Authorized Signer(s)**").
3. Authorized Signer(s) are duly elected, qualified and acting officers and/or authorized signatories of the Company holding the offices indicated and the signatures appearing opposite their names are the genuine signatures of such officers and/or authorized signatories.
4. All actions the Authorized Signer(s) took prior to the date of this Certificate of Incumbency in executing the Lease Documents are ratified and approved and the Lease Documents are adopted as binding obligations of the Company.
5. IEMFS and its assignees may rely upon this Certificate until the receipt by IEMFS of written notice from an officer of Company specifying that this Certificate may no longer be relied upon. No such notice shall affect the right of Lessor or any assignee of Lessor to rely upon this Certificate as to any document executed or transactions undertaken prior to the date such notice is received by them.

Such notice shall be mailed by registered or certified mail to:
**IEMFS, Ltd., 53 West 36th Street, Suite 701, New York, NY 10018**

| Authorized Signer Name: | Title: | Signature: |
|---|---|---|
| GREG NORTHRIDGE | President : CEO | X [signature] |
| | | |
| | | |

STOP THIS DOCUMENT REQUIRES THE SIGNATURE OF A DIFFERENT OFFICER OTHER THAN THE SIGNER(S) NAMED ABOVE. If you are 100% owner of the Company, please complete Sole Officer Addendum Section B below.

**IN WITNESS WHEREOF, I have signed this Certificate of Incumbency this** 28th **day of** November, **20**17

[signature]

Print Name: DAVID S. Forbes

Title: VP, Treasurer and Secretary

I certify this to be a true and exact copy of the original.
Name: Katharine Harris [signature]
Title: VP, Operations

# CERTIFICATE OF INCUMBENCY

I, Kirk E. Yosick, the undersigned General Counsel of IEMFS, Ltd., an Ohio limited liability company, do hereby certify that, effective as of December 22nd, 2016, the following individual was designated and appointed complete and binding signatory authority on behalf of IEMFS, Ltd., in relation to the execution, delivery and performance of any and all Master Assignment Agreements, Master Lease Agreements, Lease Schedules and all related documents, and that the signature set forth opposite the name listed, below, is a genuine signature:

| **NAME** | **SIGNATURE** |
| --- | --- |
| Katharine Harris | [signature] |

IN WITNESS WHEREOF, I have hereunto subscribed my name on this 30th day of October, 2017.

[signature]
Kirk E. Yosick
General Counsel
IEMFS, Ltd.

# CORPORATE GUARANTY

**IEMFS, LTD.** • 53 West 36th Street, Suite 701, New York, NY 10018
Telephone: 212.602.1183 • Fax: 203.549.0476

For valuable consideration, the undersigned (whether one or more "Guarantor"), jointly and severally, do unconditionally guarantee to **IEMFS, Ltd.**, a limited liability company ("IEMFS") the prompt, and complete payment and performance of all obligations of **Champion Laboratories, Inc.** ("Lessee") at any time owing to IEMFS whether now existing or hereafter arising. Nothing shall discharge or satisfy Guarantor's liability hereunder except the full performance and indefeasible payment of all obligations of Lessee to IEMFS.

This is a continuing guaranty. This guaranty shall continue until Guarantor has delivered to IEMFS a written notice of Guarantor's election not to guarantee any new obligations of Lessee to IEMFS. However, such notice shall not in any way diminish Guarantors' obligation to pay any and all obligations from Lessee to IEMFS that exist at the time such notice is given. Whenever IEMFS assigns any agreement between IEMFS and the Lessee to a third party, IEMFS may also assign its rights in this guaranty to that third party, in which case the third party would be entitled to enforce all of IEMFS's rights hereunder. However, even after such assignment, this document would continue to be fully enforceable by IEMFS with respect to all obligations due and owing at any time from Lessee to IEMFS.

The Guarantor may not assign this guaranty or any portion hereof, or any or all of its obligations hereunder, without the prior, express written consent of IEMFS.

Guarantor waives notice of acceptance, all notices and consent of any kind, protest, dishonor, nonpayment, and demand for presentment. Guarantor waives any claim, right or remedy, which Guarantor may now have, or hereafter acquire against Lessee. Guarantor waives all exemptions and homestead laws and defenses given to sureties and guarantors other than the complete fulfillment of all obligations.

The liability of each Guarantor is direct and unconditional. IEMFS may enforce that liability without resorting to any other right, remedy, security or entity. All of IEMFS's remedies are cumulative. IEMFS may extend any deadline or payment due date, modify any agreement, defer acceleration, postpone the enforcement of any agreement and release or add any collateral and any party primarily or secondarily liable without affecting the liability of any Guarantor. There are no conditions precedent to this guaranty.

Any and all disputes, controversies or claims arising between IEMFS and any Guarantor, whether arising out of relating to this guaranty or otherwise, shall be resolved by mandatory binding arbitration except that IEMFS may bring a lawsuit in a judicial forum to repossess any collateral and/or to recover a money judgment. The filing of such an action by IEMFS does not alter nor diminish the parties' agreement that any other type of dispute still must be resolved through binding arbitration. This arbitration agreement is governed by the Federal Arbitration Act. All disputes of fact, procedure, and law – be the law statutory, administrative, case, or regulatory – shall be resolved by the arbitrator. The arbitrator may order any remedy that a court has the power to award. The award can be enforced in any court with competent jurisdiction. The arbitrator shall be selected jointly by IEMFS and the involved guarantors. If they cannot agree on an arbitrator, they shall select a single arbitrator in accord with the commercial rules of the American Arbitration Association. Any arbitration involving IEMFS will be held in the State of New York. Any decision in arbitration between IEMFS and Lessee will be binding on Guarantor whether or not he had notice or participated. Guarantor will pay to IEMFS all expenses (including reasonable attorneys' fees) incurred by IEMFS in successfully enforcing its rights against Guarantor or Lessee.

IEMFS and each guarantor hereby waive any right to trial by jury that any of them may have in any action between or among any of them that is not subject to arbitration. The arbitration and jury waiver provisions shall survive any assignment hereof and shall continue to bind the parties hereto in any dispute subsequent to any assignment.

This written document constitutes the entire agreement. No amendment or modification of this guaranty shall be valid unless in writing and executed by an officer of IEMFS and Guarantor. This Guaranty shall extend to and bind the permitted successors and assigns of Guarantor.

This guaranty shall be governed by the internal laws of the State of New York. Any provisions contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted but shall not invalidate the remaining provisions. Time is of the essence of this agreement. This entire document has been read by each of the undersigned Guarantors and is ratified and confirmed.

IN WITNESS WEREOF, the undersigned execute this Guaranty effective the 28 day of Nov, 2017

**Guarantor: UCI International Holdings, Inc.** **FEIN:** [redacted]

X [signature]

Name: Greg Northrich

Title/Date: President & CEO 11/28/17

I certify this to be a true and exact copy of the original.
[signature]
Name: Katharine Harris
Title: VP, Operations

# CERTIFICATE OF INCUMBENCY

IEMFS, LTD. • 53 West 36th Street, Suite 701, New York, NY 10018
Telephone: 212.602.1183 • Fax: 203.649.0476

TOTAL Fleet Solutions

The undersigned, duly elected and acting Corporate Secretary or Officer of UCI International Holdings, Inc. (the "Guarantor") does hereby certify as follows:

1. The execution, delivery and performance of the Corporate Guaranty (the "Lease Guaranty") signed by Guarantor and any related documents have been duly authorized by the Guarantor.
2. The Lease Guaranty has been or will be duly and validly executed and delivered on behalf of the Guarantor and binding upon Guarantor in accordance with their terms (as any one of the below officers or signatories determines are in the best interests of Guarantor) if executed by the persons whose names, titles and signatures appear below ("Authorized Signer(s)").
3. Authorized Signer(s) are duly elected, qualified and acting officers and/or authorized signatories of the Guarantor holding the offices indicated and the signatures appearing opposite their names are the genuine signatures of such officers and/or authorized signatories.
4. IEMFS, Ltd. ("IEMFS") and its assignees may rely upon this Certificate until the receipt by IEMFS of written notice from an officer of Guarantor specifying that this Certificate may no longer be relied upon. No such notice shall affect the right of IEMFS or any assignee of IEMFS to rely upon this Certificate as to any document executed or transactions undertaken prior to the date such notice is received by them.

Such notice shall be mailed by registered or certified mail to:
**IEMFS, Ltd., 53 West 36th Street, Suite 701, New York, NY 10018**

| Authorized Signer Name: | Title: | Signature: |
|---|---|---|
| GREG NOETHLICH | President & CEO | X [signature] |
| | | |
| | | |

STOP THIS DOCUMENT REQUIRES THE SIGNATURE OF A DIFFERENT OFFICER OTHER THAN THE SIGNER(S) NAMED ABOVE.

**IN WITNESS WHEREOF, I have signed this Certificate of Incumbency this** 25th **day of** November **20**17

[signature]

Print Name: DAVID S. Forbes

Title: VP, Treasurer and Secretary

I certify this to be a true and exact copy of the original.
Name: Katharine Harris
Title: VP, Operations

ORIGINAL

# AMENDMENT TO EQUIPMENT SCHEDULE

TOTAL Fleet Solutions

53 West 36th Street, Suite 701, New York, NY 10018

THIS AMENDMENT is made as of the date set forth below.

**WHEREAS**, **Champion Laboratories, Inc.** and **IEMFS, Ltd.** have entered into Equipment Schedule No. 002 executed pursuant to the Master Lease Agreement No.[redacted]409 dated November 28, 2017 (the "Lease") and;

**WHEREAS,** the Lease currently references the Equipment location as 301 Industrial Drive, Albion, IL 62806;

**WHEREAS,** the Lease currently references Equipment described as 14x Hawker PTOM3-48C-120Y Chargers (the "Chargers");

**NOW, THEREFORE,** in consideration of the mutual promises contained herein, the parties hereby agree as follows:

1. The Lease is hereby amended to reflect an Equipment location at 329 Industrial Drive, Albion, IL 62806.
2. The Lease is hereby amended to reflect an Equipment swap. The Chargers will be replaced with 14x Hawker PTOM3-48C-180Y Chargers with the below serial numbers:
   - **PL318649 – PL318662**
3. All provisions of the Lease not amended by this Amendment shall remain in full force and effect as set forth in the Lease.

**IN WITNESS WHEREOF**, the Parties have caused this Amendment to be executed as of the date above.

**Champion Laboratories, Inc.**

X [signature]

Print Name: Greg Noethlich

Title: President and CEO

Date: 1/31/18

**IEMFS, Ltd.**

X [signature]

Print Name: Andrew Bender

Title: President

Date: 1/31/18

EXHIBIT 2

TOTAL Fleet Solutions

53 West 36th Street, Suite 701
New York, NY 10018
Telephone: (212) 602-1183

ORIGINAL

# EQUIPMENT SCHEDULE

**Master Lease # [redacted]409**
**Schedule # 002**

This Equipment Schedule ("Schedule") is written in simple and easy-to-read language. Please read this Schedule thoroughly and feel free to ask us any questions you may have about it. The words YOU and YOUR refer to the Lessee. The words WE, US and OUR refer to the Lessor, IEMFS, Ltd., an Ohio Limited Liability Company.

## Master Lease Agreement

The Terms of the above Master Lease Agreement ("Master Agreement") are incorporated into and made a part of this Schedule as if set forth in full. This Schedule, and every other Schedule which incorporates terms from the Master Agreement, each are separate, assignable lease agreements, and not part of the Master Agreement. If there is any inconsistency between the terms of this Schedule and those of the Master Agreement, then this Schedule will control.

## Customer & Billing Contact Information

Lessee Full Legal Name
Champion Laboratories, Inc.

| Contact Person | Contact Phone No. | Federal Tax ID # | State of Org. |
|---|---|---|---|
| | 618-445-6011 | | DE |

Company Address
200 South 4th Street, Albion, IL 62806

Equipment Location
SEE EQUIPMENT SCHEDULE A

## Equipment Description

**Complete Equipment Location only if different from billing address**

| Quantity | Manufacturer | Model | Description | Serial Number | Maximum Annual Usage |
|---|---|---|---|---|---|
| | | | SEE EQUIPMENT SCHEDULE A | | |

***Should Lessee exceed the expected number of running hours stated in this Equipment Schedule with respect to any unit, Lessee will pay an additional $2 per hour for such unit.***

## Term/Lease Payment Schedule

| Term (Months) | Security Deposit/Advance Payment (*Check One Only*) | Lease End Purchase Option | Base Monthly Lease Payment* |
|---|---|---|---|
| 48 | ____ Security Deposit(s): ____________<br>____ Advance Payment(s): ____________ | X FMV (defined in Section 17)<br>____ $1.00 ____ Other: | $15,052.16 (incl. sales tax)<br>* Plus Applicable Taxes—See Section 11 |

The first monthly payment will be due on the Commencement Date together with interim rent for the period between the Acceptance Date and the Commencement Date at the daily rate equal to 1/30th of the monthly rental. The Commencement Date shall be the first day of the month following the Acceptance Date, unless the Acceptance Date is the first day of the month, in which case the Commencement Date shall be the Acceptance Date. Additional monthly payments will be due on the same day of each following month. All payments and other amounts due or to become due at the time and in the amounts set forth in the Lease, unless otherwise notified, shall be remitted to us at: **IEMFS, Ltd., PO Box 87618, Department #2071, Chicago, IL 60680-0618.**

## Lessee Authorized Signature: Champion Laboratories, Inc.

**THIS LEASE MAY NOT BE CANCELED**

| Authorized Signature | Date | Print Name |
|---|---|---|
| X [signature] | 11/30/17 | Greg Noethlich |
| | Title: President and CEO | |

## Equipment Acceptance Certificate

You certify that all of the Equipment referred to in this Lease has been delivered and received by you, and that any and all installation and setup has been completed. You have examined the Equipment and it in good operating condition and is satisfactory to you and you have accepted the Equipment. This lease cannot be modified or rescinded except by a writing signed by you and us. As of the date an Equipment Acceptance Certificate is received by us (the "Adjustment Date"), the monthly payments due hereunder shall be recalculated based upon increases in the swap rate for the Forty-Eight (48)-month rate as published in the ICE SWAP Rate Historical Rates table for the week ending immediately prior to the Adjustment Date (the "Swap Rate"). If, on the Adjustment Date, the Swap Rate is greater than at Lease signing, the monthly payments due hereunder shall be increased to reflect the actual rate. Thereafter, the monthly payments shall remain fixed during the Term hereof. **ACCORDINGLY, YOU AUTHORIZE US TO PURCHASE THE EQUIPMENT FOR YOUR USE. The "Commencement Date" of this lease will be the 1st of the month following the Acceptance Date.**

## Lessee Authorized Signature: Champion Laboratories, Inc.

**THIS LEASE MAY NOT BE CANCELED**

| Authorized Signature | Acceptance Date | Print Name |
|---|---|---|
| X [signature] | 11/30/17 | Greg Noethlich |
| | Title: President and CEO | |

## Accepted by IEMFS, Ltd., Lessor

| Signed By | Date |
|---|---|
| X [signature] | 1/31/18 |

SCHEDULE A
to Equipment Schedule No. 002 to Master Lease Agreement No. [redacted]409

| Address | Year | Supplier | Qty | Make | Model | Type | Serial Number | Additional specs | Total Number of Running Hours Per Year |
|---|---|---|---|---|---|---|---|---|---|
| 301 Industrial Drive, Albion, IL 62806 | 2017 | Total Fleet Solutions, Ltd. | 6 | Raymond | 4250-C35TT | Counterbalanced Standup Forklift | | 42" Forks; 3500 lb. capacity; 36v; 188" max fork height; Sideshifter; Overall collapsed height 83"; includes Raymond iWarehouse labor management system | 2,000 |
| 301 Industrial Drive, Albion, IL 62806 | | Total Fleet Solutions, Ltd. | 12 | Hawker | 18-125F-15-300B15P09 | 36V Battery | | | |
| 301 Industrial Drive, Albion, IL 62806 | | Total Fleet Solutions, Ltd. | 6 | Hawker | PTOM3-48C-120Y | Charger | | | |
| 301 Industrial Drive, Albion, IL 62806 | 2017 | Total Fleet Solutions, Ltd. | 3 | Raymond | 7500 - R45TT | Reach Truck | | 4500 lb capacity; 330" Max Fork height; Overall collapsed height 146"; 42" forks; Sideshifter; 36v; includes Raymond iWarehouse labor management system | 2,000 |
| 301 Industrial Drive, Albion, IL 62806 | | Total Fleet Solutions, Ltd. | 6 | Hawker | 18-125F-15-300B15P09 | Battery | | | |
| 301 Industrial Drive, Albion, IL 62806 | | Total Fleet Solutions, Ltd. | 3 | Hawker | PTOM3-48C-120Y | Charger | | | |
| 301 Industrial Drive, Albion, IL 62806 | 2017 | Total Fleet Solutions, Ltd. | 5 | Raymond | 5600 - OPC30TT | Order Picker | | 3000 lb. capacity; 300" Max Height; Operator compartment fan; 36v; Standard tires; includes Raymond iWarehouse labor management system | 2,000 |
| 301 Industrial Drive, Albion, IL 62806 | | Total Fleet Solutions, Ltd. | 10 | Hawker | 18-125F-15-300B15P09 | Battery | | | |
| 301 Industrial Drive, Albion, IL 62806 | | Total Fleet Solutions, Ltd. | 5 | Hawker | PTOM3-48C-120Y | Charger | | | |

Should Lessee exceed the total number of running hours per year as stated in this Equipment Schedule A with respect to any unit, Lessee will pay us additional rent amount equal to $2/hour.

LESSEE: Champion Laboratories, Inc.

X____________________

TITLE: President and CEO

ORIGINAL

# DELIVERY & ACCEPTANCE

TOTAL Fleet Solutions

By signing this Certificate, you, the Customer identified below, agree:

A) That all of the Equipment referred to in Equipment Schedule No. 002 to Master Lease Agreement No. [redacted]409 (the "Lease"), has been delivered and received by Customer, and that any and all installation and setup has been completed. Customer has examined the Equipment and it in good operating condition and is satisfactory to Customer and Customer has accepted the Equipment.

B) The "Commencement Date" of the Lease will be the 1st of the month following the Acceptance Date.

C) That we, IEMFS, Ltd., are authorized to purchase the Equipment and start billing you under the Lease or rental agreement.

| | |
|---|---|
| Lease Number:<br>[redacted]409-002 | |
| Customer Name:<br>Champion Laboratories, Inc. | |
| Authorized Signature:<br>X [signature] | |
| Print Title:<br>President and CEO | Date:<br>1/31/18 |

TOTAL Fleet Solutions

## INVOICE

| | |
|---|---|
| **Invoice No.** | **094193** |
| Date | 1/10/2018 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| GSG Financial<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion DS<br>329 Industrial Drive<br>Albion, IL 62806 |

Page 1 of 3

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 1/10/2018 | 10 days | 1/20/2018 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| Raymond<br>Model: 4250<br>SN:<br>425-17-56742<br>425-17-56759<br>425-17-56757<br>425-17-56746<br>425-17-56773<br>425-17-56765<br><br>New 2017 Raymond Stand up Lift Truck<br>3500# Cap; 36 Volt; 188" OAH Mast; 42" Taper Forks<br>Includes optional: blue light; operator fan | 6.00 | $28,341.28 | $170,047.68 |
| Vehicle Monitoring System<br>Model: iWarehouse<br>SN: N/A | 6.00 | $4,220.00 | $25,320.00 |
| Hawker<br>Model: 18-125F-15<br>SN: PL112170310 thru PL112170321<br><br>New Hawker Powerline 2017 36v. Industrial Battery<br>Includes watering system and blinkie light | 12.00 | $5,972.00 | $71,664.00 |
| Hawker<br>Model: PTOM3-48C-180Y<br>SN: PL318649 thru PL318654<br><br>New Hawker Powertech 2017 36v. Industrial Charger<br><br>**Delivery Date: 1/10/18** | 6.00 | $1,960.00 | $11,760.00 |
| Raymond | 5.00 | $28,181.62 | $140,908.10 |

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

**Continued**

TOTAL Fleet Solutions

# INVOICE

| | |
|---|---|
| **Invoice No.** | **094193** |
| Date | 1/10/2018 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| GSG Financial<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion DS<br>329 Industrial Drive<br>Albion, IL 62806 |



| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 1/10/2018 | 10 days | 1/20/2018 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| Model: 5600<br>SN:<br>560-17-B38099<br>560-17-B38098<br>560-17-B38103<br>560-17-B38110<br>560-17-B38108<br><br>New 2017 Raymond Order Picker<br>3000# Cap; 36 Volt; 300" OAH Mast; 44" Ext Operator Platform<br>Includes optional: blue light | | | |
| Vehicle Monitoring System<br>Model: iWarehouse<br>SN: N/A | 5.00 | $4,220.00 | $21,100.00 |
| Hawker<br>Model: 18-125F-15<br>SN: PL112170068 thru PL112170077<br><br>New Hawker Powerline 2017 36v. Industrial Battery<br>Includes watering system and blinkie light | 10.00 | $5,900.00 | $59,000.00 |
| Hawker<br>Model: PTOM3-48C-180Y<br>SN: PL318655 thru PL318659<br><br>New Hawker Powertech 2017 36v. Industrial Charger<br><br>**Delivery Date: 1/12/18** | 5.00 | $1,960.00 | $9,800.00 |
| Raymond | 3.00 | $34,569.71 | $103,709.13 |

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

**Continued**

TOTAL Fleet Solutions

**INVOICE**

| | |
|---|---|
| **Invoice No.** | **094193** |
| Date | 1/10/2018 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| GSG Financial<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion DS<br>329 Industrial Drive<br>Albion, IL 62806 |



| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 1/10/2018 | 10 days | 1/20/2018 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| Model: 7500<br>SN:<br>750-17-BC63772<br>750-17-BC63773<br>750-17-BC63774<br><br>New 2017 Raymond Reach-Fork Truck<br>4500# Cap; 36 Volt; 330" Mast; 42" Forks<br>Includes optional: blue light; operator fan | | | |
| Vehicle Monitoring System<br>Model: iWarehouse<br>SN: N/A | 3.00 | $4,220.00 | $12,660.00 |
| Hawker<br>Model: 18-125F-15<br>SN: PL112170078 thru PL112170083<br><br>New Hawker Powerline 2017 36v. Industrial Battery<br>Includes watering system and blinkie light | 6.00 | $5,972.00 | $35,832.00 |
| Hawker<br>Model: PTOM3-48C-180Y<br>SN: PL318660 thru PL 318662<br><br>New Hawker Powertech 2017 36v. Industrial Charger | 3.00 | $1,960.00 | $5,880.00 |

**Delivery Date: 1/15/18**

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

| | |
|---|---|
| Sales Total | $667,680.91 |
| Tax Total | $0.00 |
| **Invoice Total** | **$667,680.91** |

3295 Levis Commons Blvd. Perrysburg, OH 43551
Phone: (419) 868-8853 Fax #: (419) 868-8912
www.tfsglobal.com

# BILL OF SALE

Re: Lease Agreement No. [redacted]409-002

Total Fleet Solutions, Ltd. (the "Seller"), for and in consideration of the payoff amount of $667,680.91 does hereby release, transfer and assign to IEMFS, Ltd. dba GSG Financial (the "Purchaser"), all Seller's right, title and interest in and to the Equipment as listed on the Attachment A.

TO HAVE AND TO HOLD, all and singular the Equipment by these present bargained, sold and confirmed unto Purchaser, its successors and assigns, forever.

AND, Seller, for itself, its successors and assigns, does hereby warrant to Purchaser, its successors and assigns, that at the time of this sale, Seller has neither caused nor suffered any liens, claims or encumbrances to be created by Seller against the Equipment.

The Equipment is transferred to Purchaser in "AS IS-WHERE IS" CONDITION AND SELLER MAKES NO OTHER REPRESENTATIONS OF WARRANTIES WITH RESPECT TO THE EQUIPMENT INCLUDING THOSE OF MERCANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

By its acceptance of the Equipment, Purchaser further agrees that it has paid or will pay any and all applicable sales, property, excise, use and privilege taxes that may be imposed on Purchaser or Seller by any Federal, State, City, County, or other governmental authority upon the transaction accomplished hereby or upon the ownership or use of the Equipment, and hereby agrees to indemnify and hold the Seller harmless from and against any and all claims and liabilities (including, without limitation, costs and expenses) for such taxes from the date of this Bill of Sale forward.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed it its name by an authorized officer as of this 31st of January, 2018.

Total Fleet Solutions, Ltd.

By: [signature]

Name: Andrew Bender

Title: Vice President

## ATTACHMENT A

**LESSEE:** Champion Laboratories, Inc.

**LEASE NO.** [redacted]409-002

| QTY | DESCRIPTION | SERIAL # | LOCATION |
|---|---|---|---|
| 6 | Raymond 4250 - C35TT Counterbalanced Standup Forklift with Battery and Charger | 425-17-56742<br>425-17-56746<br>425-17-56757<br>425-17-56759<br>425-17-56765<br>425-17-56773 | 329 Industrial Drive, Albion, IL 62806 |
| 28 | Hawker 18-125F-15 36V Battery | PL112170068<br>PL112170069<br>PL112170070<br>PL112170071<br>PL112170072<br>PL112170073<br>PL112170074<br>PL112170075<br>PL112170076<br>PL112170077<br>PL112170078<br>PL112170079<br>PL112170080<br>PL112170081<br>PL112170082<br>PL112170083<br>PL112170310<br>PL112170311<br>PL112170312<br>PL112170313<br>PL112170314<br>PL112170315<br>PL112170316<br>PL112170317<br>PL112170318<br>PL112170319<br>PL112170320<br>PL112170321 | 329 Industrial Drive, Albion, IL 62806 |
| 14 | Hawker PTOM3-48C-180Y Charger | PL318649<br>PL318650<br>PL318651<br>PL318652<br>PL318653<br>PL318654<br>PL318655<br>PL318656<br>PL318657<br>PL318658<br>PL318659<br>PL318660<br>PL318661<br>PL318662 | 329 Industrial Drive, Albion, IL 62806 |
| 3 | Raymond 7500 - R45TT Reach Truck | 750-17-BC63772<br>750-17-BC63773<br>750-17-BC63774 | 329 Industrial Drive, Albion, IL 62806 |
| 5 | Raymond 5600 - OPC30TT Order Picker | 560-17-B38098<br>560-17-B38099<br>560-17-B38103<br>560-17-B38108<br>560-17-B38110 | 329 Industrial Drive, Albion, IL 62806 |

ORIGINAL

Date: March 28, 2018

To: Champion Laboratories, Inc.
200 South 4th Street
Albion, IL, 62806

RE: Equipment Schedule No. 002 to Master Lease Agreement No.[redacted]409 dated as of November 28, 2017 (the "Lease") between Champion Laboratories, Inc. ("Lessee") and IEMFS, Ltd. dba GSG Financial ("Lessor").

Dear Sirs:

This letter will serve as notice that effective as of the date hereof the equipment listed on the Lease ("Equipment") has been sold to Kingsbridge Holdings, LLC, 150 North Field Drive, #193, Lake Forest, IL 60045 ("Kingsbridge").

All payments due under the Lease are the firm, fixed payments due under the Lease and are not subject to any adjustment or abatement; and that Lessee's obligation to make the payments is absolute and unconditional, and Lessee will continue to pay to IEMFS, Ltd. dba GSG Financial all payments at MB Financial Bank N.A., Department #2071, PO Box #87618, Chicago, IL 60680 without regard to, and shall not assert against Kingsbridge, any claim, defense, counterclaim, recoupment, setoff or right to cancel or terminate the Lease which Lessee may have against Lessor or any other party.

Nothing herein shall be deemed to relieve Lessor of any of its obligations under the Lease. Lessee hereby expressly waives any right it may have to terminate the Lease.

**IEMFS, Ltd.**

By: Walter Stranz

Name: Walter Stranz

Title: CFO

Date: 3/28/18

ORIGINAL

# PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASE

THIS PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASE ("Agreement") is made as of March 30, 2018 by and between IEMFS, Ltd. dba GSG Financial (hereinafter called "Seller") having its principal place of business at 53 West 36th Street, Suite 701, New York, NY 10018 and KINGSBRIDGE HOLDINGS, LLC (hereinafter "Buyer") having its offices at 150 N. Field Drive, Suite 193, Lake Forest, IL 60045.

WITNESSETH:

That in consideration of the mutual undertakings herein contained, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Sale of Equipment. Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller, the Equipment subject to the leases listed in **Exhibit A** attached hereto at the Lessee's ("Lessee") installation address, plus all of Seller's rights related thereto including all warranties, rights under software licenses, if any, and contracts pertaining to the equipment and all insurance proceeds thereon, all other general intangibles related thereto, and all substitutions, upgrades and additions thereto (collectively, the "Equipment"), subject to any Permitted Encumbrances, as defined in Paragraph 3 below.

2. Purchase Price. The Purchase Price of the Equipment of $[redacted] is the sum of (i) $[redacted] which amount Buyer agrees to pay, less a holdback in the amount of $[redacted], to Seller by wire transfer not later than March 30, 2018 plus (ii) Buyer's assumption of non-recourse debt, based on a funding date of March 30, 2018, in the amount of $[redacted].

3. Delivery and Title. Buyer hereby agrees to accept delivery of the Equipment at the facilities of the Lessees, as listed on **Exhibit A** (the "Lessee") at the locations set forth in **Exhibit B** hereto. Seller represents and warrants that Seller has good marketable title to the Equipment, free and clear of all liens, claims and encumbrances of any kind, except for: 1) the leasehold rights of the Lessee under the Lease, as defined below, and 2) the rights and interests conveyed and granted to the non-recourse debt holder (the "Senior Lenders") by and under that certain Specification to Master Assignment Agreement as listed in Exhibit A, (the "Initial Assignment") between Seller, as assignor, and Senior Lender, as assignee(s), regarding the Equipment and the Lease Schedule identified in Section 4 hereof (together, "Permitted Encumbrances").

4. Assignment of Lease.

Seller hereby unconditionally and irrevocably assigns and sets over unto Buyer, subject and subordinate to the Permitted Encumbrances and effective on the date of payment by Buyer of the cash portion of the Purchase Price set forth in Section 2. (i) above, (i) all of its right, title and interest in, under and to Schedule Nos as listed on

EXHIBIT
tabbies
3

**Exhibit A** collectively, the "Lease Schedule") to the master lease agreements listed on Exhibit A (collectively the "Lease") between Seller and Lessee, and (ii) all of Seller's rights and interests in the Leases as it relates to the Lease Schedule and/or the Equipment thereunder, including all rents due April 1, 2018 and after, and other sums due and to become due thereunder after receipt by Senior Lender of all amounts due Senior Lender under the Lease Schedule by way of and in accordance with the terms of the Initial Assignment. All interim rentals accruing prior to the base term lease commencement date and base term rentals due prior to those which were assigned to Senior Lender shall be for the account of Seller. Seller agrees to promptly provide Buyer with a copy of all notices received from Lessee and/or any third party regarding the Equipment, including taxing authorities and any vendor or manufacturer of the Equipment. Seller further assigns and sets over to Buyer any and all rights to provide upgrades to the Equipment.

5. WARRANTY DISCLAIMER. **OTHER THAN AS SET FORTH IN THIS AGREEMENT OR IN ANY OTHER AGREEMENTS BETWEEN SELLER AND BUYER, SELLER DOES NOT WARRANT THE EQUIPMENT IN ANY RESPECT, EITHER EXPRESSLY OR BY IMPLICATION AND WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS OR ADEQUACY FOR ANY PURPOSE OR USE, QUALITY, PRODUCTIVENESS OR CAPACITY.** SELLER HEREBY ASSIGNS TO BUYER (TO THE EXTENT TO WHICH THE SAME MAY BE ASSIGNABLE AND SUBJECT TO THE PERMITTED ENCUMBRANCES) AND ENFORCE FOR BUYER'S BENEFIT (TO THE EXTENT NOT ASSIGNABLE PROVIDED THAT SELLER IS ENTITLED TO ENFORCE THE SAME FOR ITSELF), ANY WARRANTY OF THE MANUFACTURER RELATIVE TO THE EQUIPMENT AND AGREES TO EXECUTE SUCH DOCUMENTS AS SHALL BE NECESSARY TO EFFECTUATE SUCH ASSIGNMENT.

6. Representations of Seller. Seller hereby represents and warrants and Buyer may rely on the following:

(a) Seller will transfer good and marketable title in and to the Equipment, the Lease Schedule and the Lease as it relates thereto to Buyer, free and clear of any and all liens, claims or encumbrances, subject to Permitted Encumbrances, and upon delivery to Seller of the cash portion of the Purchase Price by Buyer, Seller will deliver to Buyer a Bill of Sale pertaining to the Equipment, free and clear of all liens, claims and encumbrances except for the rights of Lessee under the Lease Schedule and for Permitted Encumbrances, and a certified copy of the Lease and a copy of the Lease Schedule and other original documents pertaining thereto including, without limitation, all consents, waivers and any other written communications or correspondence.

(b) Seller is a duly organized and validly existing corporation in good standing under the laws of the State of Ohio and is duly qualified to do business in each jurisdiction (including the jurisdiction where the Equipment is or is to be located) where

its ownership or lease of property or the conduct of its business requires such qualification.

(c) The Lease and Lease Schedule have been duly executed and delivered, are in full force and effect, constitute the valid and binding obligation of Seller and of Lessee and are enforceable against Seller and the Lessee in accordance with the terms of the Lease and Lease Schedule (subject to laws of general application affecting creditors' rights) and no defaults or conditions which, with the passage of a cure period or giving of notice or both, would constitute defaults, exist thereunder or under the Initial Assignment documents by the Lessee or by Seller.

(d) Seller has the power and authority to enter into this Agreement and the Bill of Sale, and to carry out the transfer of the Equipment and Lease Schedule to Buyer and the other transactions contemplated hereunder, subject to the Permitted Encumbrances There is no action, suit or proceeding pending against Seller before or by any court, administrative agency or other governmental authority which brings into question the validity of, or might in any way impair, the execution, delivery or performance by Seller of this Agreement.

(e) The execution and delivery of this Agreement and the Bill of Sale by Seller and the performance by it of its obligations hereunder and thereunder have been duly authorized by all necessary corporate action of Seller and do not violate or conflict with (i) any provision of Seller's Certificate of Incorporation or By-Laws, (ii) any law or any order, writ, injunction, decree, rule or regulation of any court, administrative agency or any other governmental authority, or (iii) any agreement to which Seller is a party or by which Seller is bound.

(f) The making and performance by Seller of this Agreement and the Bill of Sale and the transactions contemplated therein do not conflict with and are not inconsistent with, and will not result (with or without the giving of notice or passage of time or both) in a breach of or constitute a default or require any consent under the terms of any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Seller is a party or by which Seller may be bound or to which it may be subject.

(g) The Lease and Lease Schedule have been duly executed and delivered by Seller and will, on the date of closing hereunder, be in full force and effect without any defenses or offsets; the Lease Schedule constitute a separately enforceable lease agreement and neither default, nor event which, but for the passing of a cure period or the giving of notice or both, would be a default, will then have occurred or be continuing under the terms of the Lease or Lease Schedule; the Equipment is located at the place designated in the Lease Schedule; and Seller warrants that (i) no prepayments of rent under the Lease Schedule have been made by Lessee and (ii) any payments received by Seller under the Lease Schedule which are not due Senior Lender, Seller or any applicable taxing authority or other party of interest under the Lease Schedule shall by

remitted immediately upon Seller's receipt to Buyer or, upon written directions from Buyer, to Buyer's assignee.

(h) This Agreement and the Bill of Sale have been duly authorized, executed and delivered by Seller and constitute the legal, valid and binding obligations of Seller enforceable in accordance with their terms.

(i) Seller has or will provide any and all notices and obtain any and all consents which may be necessary to the completion of the transaction contemplated hereby.

(j) All sales, use, property or other taxes, licenses, tolls, inspection or other fees, bonds, permits or certificates which were or may be required to be paid or obtained in connection with the acquisition by Seller of the Equipment, or the leasing thereof to Lessee prior to the sale to Buyer hereunder, have been, or will, when due, be paid in full or obtained.

(k) Seller represents and warrants that (i) all payments of installments of the firm, noncancelable rentals payable under the Lease Schedule are current and (ii) the rents payable under the Lease Schedule are not subject to any defenses, set-offs or counter-claims.

(l) No Event of Default or event which with the passing of time or the giving of notice, or both, would constitute an Event of Default has occurred under the Lease or the Lease Schedule.

(m) There are no agreements, leases, purchase options, liens or encumbrances known to Seller affecting the Equipment which are not disclosed in the Lease, in the Lease Schedule, in the documents by which Seller took title to the Equipment or in the Initial Assignment and/or other documents affecting the Equipment to which Seller is a party; and all such documents have been provided to Buyer.

(n) Any purchase options contained in the Lease or the Lease Schedule shall be a Fair Market Value purchase option, not a bargain payment, whether for renewal or purchase.

(o) If the terms of the Lease require Seller to provide notice to Lessee prior to the expiration of the initial term of the Lease Schedule or any extensions thereof, Seller shall be solely responsible for providing said notice to Lessee and hereby indemnifies Buyer for any loss, including inability to collect any rentals due pursuant to the terms of the Lease, whether arising before or after the expiration of the initial term, caused by Seller's failure to provide said notice on a timely basis.

7. <u>Representations and Warranties of Buyer.</u> Buyer hereby represents and warrants and Seller may rely on the following:

(a) Permitted Encumbrances. Buyer acknowledges and agrees that all of its rights and interests in and to a portion of the Equipment and the Lease Schedule conveyed hereby are subject and subordinate to the rights and interests of the Senior Lender pursuant to the Initial Assignment.

(b) Binding Obligation. Buyer has full power and authority to enter into this Agreement and to consummate the transactions contemplated herein. This Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate action of Buyer and this Agreement constitutes the legal, valid and binding obligations of Buyer enforceable in accordance with its terms.

(c) Inconsistent Agreements. The making and performance by Buyer of this Agreement and the transactions contemplated hereby do not contravene the Articles of Organization or Operating Agreement of Buyer or any provision of law applicable to Buyer and do not conflict and are not inconsistent with, and will not result (with or without the giving of notice or passage of a cure period or both) in a breach of or constitute a default or require any consent under the terms of any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Buyer is a party or by which Buyer may be bound or to which it may be subject.

8. Invoicing. Unless and until otherwise notified by Buyer and except as specifically provided in this Section 8, Seller shall have the obligation, at its expense, to bill for, collect, receive, and administer all payments due under the Lease Schedule, including, but not limited to, rent and sales/use tax payments on rent. Seller agrees to cause the Lessees to remit to Senior Lender (or as it shall direct) all amounts assigned to Senior Lender with respect to the Lease Schedule. With respect to personal property taxes, Buyer assumes responsibility for the filing and payment of such taxes to the appropriate taxing authorities and will promptly provide invoice copies to Seller to invoice Lessees for payment or reimbursement under Seller's name. Seller will bill, collect, and receive from Lessees all amounts payable or reimbursable from Lessees for personal property taxes and will promptly remit to Buyer all amounts collected or owed relating to the same. Notwithstanding the foregoing, Buyer may directly bill, collect, and receive all amounts payable or reimbursable from Lessees for personal property taxes if Seller fails to collect from Lessees and remit to Buyer the same within 30 days of Buyer's written request, provided that Buyer has given Seller a reasonable time to perform its obligations hereunder.

9. Miscellaneous.

(a) Survival. All representations, warranties and certifications made by Seller and Buyer shall survive the execution, delivery and performance of this Agreement and all other documents provided for herein.

(b) Successors and Assigns. This Agreement and all covenants and agreements contained herein as well as all other documents provided for herein shall be binding upon

and inure to the benefit of the parties hereto and their respective successors and assigns. The parties hereto agree that their respective successors and assigns any rely upon each and every representation, warranty, indemnification and covenant made herein and, if requested to do so, each party will acknowledge such reliance in writing to the successors or assigns of the other party.

(c) Indemnification.

(i) Seller shall indemnify and hold Buyer harmless from and against any and all loss, cost, damage, injury or expense (including court costs and reasonable attorneys' fees) wheresoever and howsoever arising which Buyer may incur by reason of any breach by Seller of any of its warranties, representations or obligations set forth herein, or in any documents executed in connection herewith. In addition, Seller shall indemnify and hold Buyer harmless from and against any and all loss, cost, penalty, damage, injury or expense (including court costs and reasonable attorneys' fees), arising from Seller, as opposed to Buyer, filing and paying all sales/use tax payments.

(ii) Buyer shall indemnify and hold Seller harmless from and against any and all loss, cost, damage, injury or expense (including court costs and reasonable attorneys' fees) wheresoever and howsoever arising which Seller may incur by reason of any breach by Buyer of any of its warranties, representations or obligations set forth herein, or in any documents executed in connection herewith.

(d) Captions. The captions appearing in this Agreement and in any other documents relating this transaction are inserted only as a matter of convenience and in no way define, limit, or describe the scope or intent of such sections or articles nor in any way effect this Agreement or any other documents relating to this transaction.

(e) Delivery of Documents; Further Instruments. Buyer's duty to pay the Purchase Price shall not arise until this Agreement is signed by the parties hereto, and Seller shall have delivered to Buyer the following documents acceptable to Buyer:

(i) certified true and correct photocopies of the applicable master lease agreements and the related transaction documents which directly relate to the subject Lease Schedule, including without limitation UCC-1 precautionary financing statements filed or to be filed by Seller against Lessee;

(ii) certified true and correct photocopies of the original Lease Schedule covering the Equipment;

(iii) all appropriate UCC-3 assignments of the UCC-1 precautionary financing statements filed by Seller against Lessee;

(iv) the original of this Agreement and the Bill of Sale covering the Equipment executed by Seller;

(v) original Acknowledgment of Assignment executed by Seller to be held in escrow provided that Buyer shall have the right, in its sole and

absolute discretion, to send the Acknowledgment of Assignment to the Lessee with respect to the Leases affected by such event if (a) there is any breach by Seller of any representation, warranty, covenant or agreement in this Agreement or other instrument, document or writing executed in connection therewith, or any other agreement entered into by Seller for the benefit of Buyer; (b) there is any bankruptcy (voluntary or involuntary), reorganization or similar proceeding commenced by or against Seller or Lessee; (c) there is any default by Lessee under the Leases; or (d) Buyer otherwise deems itself to be insecure for any reason whatsoever;

(vi) certificates of insurance naming Seller and its assigns as additional insured and loss payee and otherwise in compliance with the requirements of the Lease;

(vii) a manufacturer's invoice and a copy of the applicable purchase agreement, if any, and any other evidence deemed necessary by Buyer to determine the monies owed for the Equipment, if any (as applicable) all in form satisfactory to Buyer; and

The parties hereto hereby agree to execute and deliver, or cause to be executed and delivered, such further instruments or documents and take each other action as may be required effectively to carry out the transactions contemplated herein.

(f) Governing Law. The validity, interpretation and enforcement of this Agreement shall be governed by the laws of the State of Illinois (irrespective of such State's choice of law rules). Any claims or disputes regarding this Agreement, the Equipment or the Lease Schedule shall be heard in any state or federal court located in Illinois and the parties hereby consent to the exclusive personal jurisdiction of said court. The parties waive any defense based on forum non conveniens and waives trial by jury.

(g) Power of Attorney. Seller hereby appoints Buyer, and its assignees, as its true and lawful attorney in fact to use and/or endorse Seller's name in connection with solely in reference to the applicable master lease agreement and the related transaction documents which directly relate to the subject Lease Schedule:

(i) all checks related herein received by Buyer on which Seller's name appears;

(ii) the transfer of title to all Equipment;

(iii) if necessary, collection actions on the assigned interest, which collection actions shall at all times comply with all applicable laws and regulations;

(iv) the execution of documents necessary to change the designated loss payee, or endorsing checks or drafts representing payment of loss or refund of premiums under any insurance policy issued in connection with the assigned interest; and

(v) the execution of any uniform commercial code filings, including, without limitation, assignments of uniform commercial code filings against the obligors, which Buyer believes are necessary from time to time in order to carry out the purposes hereof and to protect Buyer's interest hereunder.

This power is coupled with an interest and is irrevocable. Seller hereby ratifies, to the extent permitted by law, all that Buyer shall lawfully and in good faith do or cause by reason of and in compliance with this section.

(g) Representations and Warranties. The only representations and warranties of Seller and Buyer are those contained in this Agreement.

**IN WITNESS WHEREOF,** and intending to be legally bound hereby, Seller and Buyer have caused this Agreement consisting of eight typewritten pages, not including the Exhibit A and B attached hereto, to be executed and do each hereby warrant and represent that their respective signatories whose signatures appear below have been and are on the date of this Agreement duly authorized by all necessary and appropriate action to execute this Agreement.

SELLER:

**IEMFS, Ltd. dba GSG Financial**

By: Walter Strauf

Title: CFO

BUYER:

**Kingsbridge Holdings, LLC**

By: [signature]

Title: John M. Morand
Co-Chief Executive Officer

| st Pmt rchased | OEC | Rent | Debt Rate | Debt Funding source | PV of stream | Residual % | Residual $ | Purchase Price |
|---|---|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| 1/2018 | $ 716,087.78 | $ 15,052.16 | 8.57% | NEC Equipment Fiance | $592,309.48 | [redacted] | [redacted] | [redacted] |
| | $ [redacted] | $ [redacted] | | | $[redacted] | | | |

TOTAL Fleet Solutions
53 West 36th Street, Suite 701
New York, NY 10018
Telephone: 212.602.1183

# EQUIPMENT SCHEDULE

**Master Lease # [redacted]409**
**Schedule # 003**

This Equipment Schedule ("Schedule") is written in simple and easy-to-read language. Please read this Schedule thoroughly and feel free to ask us any questions you may have about it. The words YOU and YOUR refer to the Lessee. The words WE, US and OUR refer to the Lessor, IEMFS, Ltd., an Ohio Limited Liability Company.

## Master Lease Agreement

The Terms of the above Master Lease Agreement ("Master Agreement") are incorporated into and made a part of this Schedule as if set forth in full. This Schedule, and every other Schedule which incorporates terms from the Master Agreement, each are separate, assignable lease agreements, and not part of the Master Agreement. If there is any inconsistency between the terms of this Schedule and those of the Master Agreement, then this Schedule will control.

## Customer & Billing Contact Information

Lessee Full Legal Name
Champion Laboratories, Inc.

| Contact Person | Contact Phone No. | Federal Tax ID # | State of Org. |
|---|---|---|---|
| | 618-445-6011 | [redacted] | DE |

Company Address
200 South 4th Street, Albion, IL 62806

Equipment Location
SEE EQUIPMENT SCHEDULE A

## Equipment Description

**Complete Equipment Location only if different from company address**

| Qty | Manufacturer | Model Number | Description | Serial Number | Total Number of Running Hours Per Year |
|---|---|---|---|---|---|
| | | | SEE EQUIPMENT SCHEDULE A | | |

***Should Lessee exceed the expected number of running hours stated in this Equipment Schedule with respect to any unit, Lessee will pay an additional $2 per hour for such unit.***

## Term/Lease Payment Schedule

| Term | Security Deposit/Advance Payment *(Check One Only)* | Lease End Purchase Option | Base Monthly Lease Payment* |
|---|---|---|---|
| (Months) | ____ Security Deposit(s): ____________ | X FMV (defined in Section 17) | $17,313.72 (incl. sales tax) |
| 60 | ____ Advance Payment(s): ____________ | ____ $1.00 ______Other: | * Plus Applicable Taxes—See Section 11 |

The first monthly payment will be due on the Commencement Date together with interim rent for the period between the Acceptance Date and the Commencement Date at the daily rate equal to 1/30th of the monthly rental. The Commencement Date shall be the first day of the month following the Acceptance Date, unless the Acceptance Date is the first day of the month, in which case the Commencement Date shall be the Acceptance Date. Additional monthly payments will be due on the same day of each following month. All payments and other amounts due or to become due at the time and in the amounts set forth in the Lease, unless otherwise notified, shall be remitted to us at: **IEMFS, Ltd., PO Box 87618, Department #2071, Chicago, IL 60680-0618.**

## Lessee Authorized Signature

**THIS LEASE MAY NOT BE CANCELED**

| Authorized Signature | Date | Print Name |
|---|---|---|
| X [signature] | 8/23/18 | Greg Noethlich |
| | Title: President and CEO | |

## Equipment Acceptance Certificate

You certify that all of the Equipment referred to in this Lease has been delivered and received by you, and that any and all installation and set up has been completed. You have examined the Equipment and it in good operating condition and is satisfactory to you and you have accepted the Equipment. This lease cannot be modified or rescinded except by a writing signed by you and us. As of the date an Equipment Acceptance Certificate is received by us (the "Adjustment Date"), the monthly payments due hereunder shall be recalculated based upon increases in the swap rate for the Sixty (60)-month rate as published in the ICE SWAP Rate Historical Rates table for the week ending immediately prior to the Adjustment Date (the "Swap Rate"). If, on the Adjustment Date, the Swap Rate is greater than at Lease signing, the monthly payments due hereunder shall be increased to reflect the actual rate. Thereafter, the monthly payments shall remain fixed during the Term hereof. **ACCORDINGLY YOU AUTHORIZE US TO PURCHASE THE EQUIPMENT FOR YOUR USE. The "Commencement Date" of this lease will be the 1st of the month following the Acceptance Date.**

## Lessee Authorized Signature

**THIS LEASE MAY NOT BE CANCELED**

| Authorized Signature | Acceptance Date | Print Name |
|---|---|---|
| X [signature] | 8/23/18 | Greg Noethlich |
| | Title: President and CEO | |

## Accepted by IEMFS, Ltd., Lessor

| Authorized Signature | Date |
|---|---|
| X [signature] | 12/11/18 |



EXHIBIT 4
tabbies

EQUIPMENT SCHEDULE A

to Equipment Schedule No. 003 to Master Lease Agreement No. [redacted]409

| Location | QTY. | Make | Model | Description / Specs | Max annual hours |
|---|---|---|---|---|---|
| 200 South 4th Street, Albion, IL 62806 | 1 | Yale | ERC050VG | 4 Wheel Sitdown Forklift cushion tire; 5000# Capacity; 36v; 187" mast height; 42" forks, yale vision telemetry; Side shift | 2500 |
| 200 South 4th Street, Albion, IL 62806 | 1 | Hawker | 18-85F-23-600C16P33 | 36v Battery; SPW; Blinky Light | |
| 200 South 4th Street, Albion, IL 62806 | 1 | Hawker | LPM3-48C-180Y | Matching Charger | |
| | | | | | |
| 200 South 4th Street, Albion, IL 62806 | 2 | Yale | ERC060 | 4 Wheel Sitdown Forklift; 7000# Capacity; 42" Forks; 240" mast height; Cushion Tire; 36v; yale vision telemetry | 1300 |
| 200 South 4th Street, Albion, IL 62806 | 2 | Hawker | 18-85F-27-600C04P02 | 36v Battery; SPW; Blinky Light | |
| 200 South 4th Street, Albion, IL 62806 | 2 | Hawker | LPM3-48F-240Y | Matching Charger | |
| | | | | | |
| 200 South 4th Street, Albion, IL 62806 | 1 | Yale | ERC070VG | 4 Wheel Sitdown Forklift; 7000# Capacity; 42" Forks; 240" mast height; Cushion Tire; 36v; yale vision telemetry | 1300 |
| 200 South 4th Street, Albion, IL 62806 | 1 | Hawker | 18-85F-33-600C04P05 | 36v Battery; SPW; Blinky Light | |
| 200 South 4th Street, Albion, IL 62806 | 1 | Hawker | LPM3-48F-240Y | Matching Charger | |
| | | | | | |
| 200 South 4th Street, Albion, IL 62806 | 2 | Yale | ERP035VT | 3 Wheel Sitdown; 3500# Capacity; 187" Mast; Cushion Tire; 36v; 42" Forks; Yale Vision Telemetry; Sideshifting Fork Positioner | 2200 |
| 200 South 4th Street, Albion, IL 62806 | 2 | Hawker | 18-85F-21 | 36v Battery; SPW; Blinky Light | |
| 200 South 4th Street, Albion, IL 62806 | 2 | Hawker | LPM3-48C-180Y | Matching Charger | |
| | | | | | |
| 200 South 4th Street, Albion, IL 62806 | 1 | Yale | GLC155VX | 15500# Capacity 4 Wheel Fork Lift; 185" Mast Height; Sideshifting Fork Positioner attachment; 60" Forks; LP; Yale Vision | 750 |
| | | | | | |
| 301 Industrial Drive, Albion, IL 62806 | 1 | Yale | NR035DB | Reach Truck; 3500 lb capacity; 272" Max Fork height; 42" forks; Sideshifter; 36v; Yale Vision | 1500 |
| 301 Industrial Drive, Albion, IL 62806 | 1 | Hawker | 18-125F-11 | 36v Battery; SPW; Blinky Light | |
| 301 Industrial Drive, Albion, IL 62806 | 1 | Hawker | LPM3-48C-120Y | Matching Charger | |
| | | | | | |
| 301 Industrial Drive, Albion, IL 62806 | 1 | Yale | OS030BF | Order Picker; 3000 lb. capacity; 300" Max Height; Operator compartment fan; 36v; Standard tires, Yale Vision | 1500 |
| 301 Industrial Drive, Albion, IL 62806 | 1 | Hawker | 18-125F-11 | 36v Battery; SPW; Blinky Light | |

| | | | | | |
|---|---|---|---|---|---|
| 301 Industrial Drive, Albion, IL 62806 | 1 | Hawker | LPM3-48C-120Y | Matching Charger | |
| | | | | | |
| 950 South Highway 130, Albion, IL 62806 | 1 | Yale | ERC050VG | 4 Wheel Sitdown Forklift cushion tire; 5000# Capacity; 36v; 187" mast height; 42" forks, ; yale vision telemetry | 2500 |
| 950 South Highway 130, Albion, IL 62806 | 1 | Hawker | 18-85F-23-600C16P33 | 36v Battery; SPW; Blinky Light | |
| 950 South Highway 130, Albion, IL 62806 | 1 | Hawker | LPM3-48C-180Y | Matching Charger | |
| | | | | | |
| 200 South 4th Street, Albion, IL 62806 | 2 | Yale | ERP035VT | 3 Wheel Sitdown; 3500# Capacity; 187" Mast; Cushion Tire; 36v; 42" Forks; Yale Vision Telemetry | 2200 |
| 200 South 4th Street, Albion, IL 62806 | 2 | Hawker | 18-85F-21 | 36v Battery; SPW; Blinky Light | |
| 200 South 4th Street, Albion, IL 62806 | 2 | Hawker | LPM3-48C-180Y | Matching Charger | |
| | | | | | |
| 301 Industrial Drive, Albion, IL 62806 | 2 | Yale | ERP035VT | 3 Wheel Sitdown; 3500# Capacity; 187" Mast; Cushion Tire; 36v; 42" Forks; Yale Vision Telemetry | 2200 |
| 301 Industrial Drive, Albion, IL 62806 | 2 | Hawker | 18-85F-21 | 36v Battery; SPW; Blinky Light | |
| 301 Industrial Drive, Albion, IL 62806 | 2 | Hawker | LPM3-48C-180Y | Matching Charger | |
| | | | | | |
| 950 South Highway 130, Albion, IL 62806 | 2 | Yale | ERP035VT | 3 Wheel Sitdown; 3500# Capacity; 259" Cushion Tire; 36v; 42" Forks; Yale Vision Telemetry ; QUAD MAST | 2200 |
| 950 South Highway 130, Albion, IL 62806 | 2 | Hawker | 18-85F-21-600C16P32 | 36v Battery; SPW; Blinky Light | |
| 950 South Highway 130, Albion, IL 62806 | 2 | Hawker | LPM3-48C-180Y | Matching Charger | |
| | | | | | |
| 950 South Highway 130, Albion, IL 62806 | 2 | Yale | ERP035VT | 3 Wheel Sitdown; 3500# Capacity; 187" Mast; Cushion Tire; 36v;42" Forks; w/ fork positioner and Mini Levers; swivel seat; atuomatic seat brake, Yale Vision | 2100 |
| 950 South Highway 130, Albion, IL 62806 | 2 | Hawker | 18-85F-21-600C16P32 | 36v Battery; SPW; Blinky Light | |
| 950 South Highway 130, Albion, IL 62806 | 2 | Hawker | LPM3-48C-180Y | Matching Charger | |
| | | | | | |
| 301 Industrial Drive, Albion, IL 62806 | 3 | Yale | ERP035VT | 3 Wheel Sitdown; 3500# Capacity; 187" Mast; Cushion Tire; 36v;42" Forks; w/ fork positioner and Mini Levers; swivel seat; atuomatic seat brake; scale, Yale Vision | 2100 |
| 301 Industrial Drive, Albion, IL 62806 | 3 | Hawker | 18-85F-21-600C16P32 | 36v Battery; SPW; Blinky Light | |
| 301 Industrial Drive, Albion, IL 62806 | 3 | Hawker | LPM3-48C-180Y | Matching Charger | |



AM

Should Lessee exceed the total number of running hours per year stated in this Equipment Schedule A with respect to any unit, Lessee will pay

**LESSEE: Champion Laboratories, Inc.**

**X** ______________________

**TITLE:** President and CEO ________

**APPENDIX 1**
**to Equipment Schedule No. 003 to Master Lease Agreement No. [redacted]409**
**Casualty Value**

The Casualty Value shall be the product obtained by multiplying the cost for the unit in question by the percentage, as set forth below, specified opposite the payment date immediately following the date of the casualty occurrence.

| Base Rent Date Number | Percentage of Cost | Base Rent Date Number | Percentage of Cost |
|---|---|---|---|
| 1 | 108.000% | 31 | 78.51% |
| 2 | 107.017% | 32 | 77.53% |
| 3 | 106.034% | 33 | 76.54% |
| 4 | 105.051% | 34 | 75.56% |
| 5 | 104.068% | 35 | 74.58% |
| 6 | 103.085% | 36 | 73.59% |
| 7 | 102.102% | 37 | 72.61% |
| 8 | 101.119% | 38 | 71.63% |
| 9 | 100.136% | 39 | 70.64% |
| 10 | 99.153% | 40 | 69.66% |
| 11 | 98.169% | 41 | 68.68% |
| 12 | 97.186% | 42 | 67.69% |
| 13 | 96.203% | 43 | 66.71% |
| 14 | 95.220% | 44 | 65.73% |
| 15 | 94.237% | 45 | 64.75% |
| 16 | 93.254% | 46 | 63.76% |
| 17 | 92.271% | 47 | 62.78% |
| 18 | 91.288% | 48 | 61.80% |
| 19 | 90.305% | 49 | 60.81% |
| 20 | 89.322% | 50 | 59.83% |
| 21 | 88.339% | 51 | 58.85% |
| 22 | 87.356% | 52 | 57.86% |
| 23 | 86.373% | 53 | 56.88% |
| 24 | 85.390% | 54 | 55.90% |
| 25 | 84.407% | 55 | 54.92% |
| 26 | 83.424% | 56 | 53.93% |
| 27 | 82.441% | 57 | 52.95% |
| 28 | 81.458% | 58 | 51.97% |
| 29 | 80.475% | 59 | 50.98% |
| 30 | 79.492% | 60 | 50.00% |

__________ initials

# DELIVERY & ACCEPTANCE

TOTAL Fleet Solutions

By signing this Certificate, you, the Customer identified below, agree:

A) That all of the Equipment referred to in Equipment Schedule No. 003, as described on the Equipment Schedule A, to Master Lease Agreement No. [redacted]409 (the "Lease"), has been delivered and received by Customer, and that any and all installation and setup has been completed. Customer has examined the Equipment and it in good operating condition and is satisfactory to Customer and Customer has accepted the Equipment.

B) As of the date this Delivery & Acceptance Certificate is received by lessor (the "Adjustment Date"), the payments due under the Lease shall be recalculated based upon increases in the swap rate for the Sixty (60)-month rate as published in the ICE SWAP Rate Historical Rates table for the week ending immediately prior to the Adjustment Date (the "Swap Rate"). If, on the Adjustment Date, the Swap Rate is greater than at Lease signing, the payments due under the Lease shall be increased to reflect the actual rate. Thereafter, the payments shall remain fixed during the Term of the Lease.

C) The "Commencement Date" of the Lease will be the 1st of the month following the Acceptance Date.

D) That we, IEMFS, Ltd., are authorized to purchase the Equipment and start billing you under the Lease or rental agreement.

| | |
|---|---|
| Lease Number:<br>[redacted]409-003 | |
| Customer Name:<br>Champion Laboratories, Inc. | |
| Authorized Signature:<br>X [signature] GREG NOETHLICH | |
| Print Title:<br>President and CEO | Date:<br>12/5/18 |

TOTAL Fleet Solutions

| INVOICE | |
|---|---|
| Invoice No. | 165651 |
| Date | 12/11/2018 |
| Customer # | [redacted]6211 |

| BILL TO | SHIP TO |
|---|---|
| IEMFS DBA GSG Financial<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion OIL<br>Attn: Accounts Payable<br>200 S. 4th Street<br>Albion, IL 62806 |

Page 1 of 2

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 12/11/2018 | 10 days | 12/21/2018 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| Yale<br>Model: ERC050VG<br>SN: A968N19861S<br>Powerline<br>Model: 18-85F-23-600C16P33<br>SN: PL109181507<br><br>LifePlus MOD3<br>Model: LPM3-48C-180Y<br>SN: QJ326159 | 1.00 | $41,797.20 | $41,797.20 |
| Yale<br>Model: ERC060VG<br>SN: A968N19846S, A968N19847S<br><br>Powerline<br>Model: 18-85F-27-600C04P02<br>SN: PL109181435, PL109181436<br><br>LifePlus MOD3<br>Model: LPM3-48F-240Y<br>SN: QI326140-41 | 2.00 | $45,902.00 | $91,804.00 |
| Yale<br>Model: ERC070VG<br>SN: A968N19691S<br><br>Powerline<br>Model: 18-85F-33-600C04P05<br>SN: PL108182041<br><br>LifePlus MOD3<br>Model: LPM3-48F-240Y<br>SN. QI325769 | 1.00 | $54,826.00 | $54,826.00 |
| Yale | 4.00 | $39,803.50 | $159,214.00 |

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

Continued

TOTAL Fleet Solutions

## INVOICE

| | |
|---|---|
| Invoice No. | 165651 |
| Date | 12/11/2018 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| IEMFS DBA GSG Financial<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion OIL<br>Attn: Accounts Payable<br>200 S. 4th Street<br>Albion, IL 62806 |



| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 12/11/2018 | 10 days | 12/21/2018 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| Model: ERP035VT<br>SN: G807N12352S, G807N12371S, G807N12421S, G807N12420S | | | |
| Powerline<br>Model: 18-85F-21-600C16P32<br>SN: PL109181421 thru 1424 | | | |
| LifePlus MOD3<br>Model: LPM3-48C-180Y<br>SN: QI326142 thru 145 | | | |

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

| | |
|---|---|
| Sales Total | $347,641.20 |
| Tax Total | $0.00 |
| **Invoice Total** | **$347,641.20** |

3295 Levis Commons Blvd. Perrysburg, OH 43551
Phone (419) 868-8853 Fax #: (419) 868-8912
www.tfsglobal.com

TOTAL Fleet Solutions

**INVOICE**

| | |
|---|---|
| **Invoice No.** | 157742 |
| Date | 10/31/2018 |
| Customer # | [redacted]6211 |

| BILL TO | SHIP TO |
|---|---|
| IEMFS DBA GSG Financial<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion SLC<br>950 S. Highway 130<br>Albion, IL 62806 |

Page 1 of 1

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 10/31/2018 | 10 days | 11/10/2018 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| Yale<br>Model: ERC050VG<br>SN: A968N19806S<br><br>Hawker Battery<br>Model: 18-85F-23-600C<br>SN: PL109180759<br><br>Hawker Charger<br>Model: LPM3-48C-180Y<br>SN: QI325985 | 1.00 | $43,297.20 | $43,297.20 |
| Yale<br>Model: ERP035VT<br>SN: G807N12448S, G807N12501S<br><br>Hawker Battery<br>Model: 18-85F-21-600C<br>SN: PL109180799-800<br><br>Hawker Charger<br>Model: LPM3-48C-180Y<br>SN: QI326033-34 | 2.00 | $39,967.50 | $79,935.00 |
| Yale<br>Model: ERP035VT<br>SN: G807N12547S & G807N12548S<br><br>Hawker Battery<br>Model: 18-85F-21-600C<br>SN: PL109180801-802<br><br>Hawker Charger<br>Model: LPM3-48C-180Y<br>SN: QI326035-36 | 2.00 | $42,095.50 | $84,191.00 |

New 2018 Yale Lift Trucks

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

| | |
|---|---|
| Sales Total | $207,423.20 |
| Tax Total | $0.00 |
| **Invoice Total** | $207,423.20 |

**TOTAL Fleet Solutions**

## INVOICE

| | |
|---|---|
| Invoice No. | 150913 |
| Date | 9/28/2018 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| IEMFS DBA GSG Financial<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion AIR<br>301 Industrial Drive<br>Albion, IL 62806 |

Page 1 of 1

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 9/28/2018 | 10 days | 10/8/2018 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| **Make: Yale**<br>Model: OSO30BF<br>S/N: E826N04768S<br>Includes battery and charger<br>Battery<br>Make: Powerline<br>Model: 18-125F-11-300B18P14<br>S/N:PL109180126<br><br>Charger<br>Make: LifePlus MOD3<br>Model: LPM3-48C-120Y<br>S/N: Q1325789 | 1.00 | $38,879.00 | $38,879.00 |

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

| | |
|---|---|
| Sales Total | $38,879.00 |
| Tax Total | $0.00 |
| **Invoice Total** | **$38,879.00** |

3295 Levis Commons Blvd. Perrysburg, OH 43551
Phone (419) 868-8853 Fax #: (419) 868-8912
www.tfsglobal.com

TOTAL Fleet Solutions

## INVOICE

| | |
|---|---|
| **Invoice No.** | **157745** |
| Date | 10/31/2018 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| IEMFS DBA GSG Financial<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion AIR<br>301 Industrial Drive<br>Albion, IL 62806 |

Page 1 of 2

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 10/31/2018 | 10 days | 11/10/2018 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| **Yale**<br>Model: NR035DB<br>SN: B295N05451S<br><br>Powerline<br>Model: 18-125F-11-300B18P14<br>SN: PL109180125<br><br>LifePlus MOD3<br>Model: LPM3-48C-120Y<br>SN: QI325790 | 1.00 | $43,010.00 | $43,010.00 |
| **Yale**<br>Model: ERP035VT<br>SN: G807N12486S. G807N12484S. G807N12487S<br><br>Powerline<br>Model: 18-85F-21-600C16P32<br>SN: PL109181418-420<br><br>LifePlus MOD3<br>Model: LPM3-48C-180Y<br>SN: QI326316-318 | 3.00 | $39,516.00 | $118,548.00 |
| **Yale**<br>Model: ERP035VT<br>SN: G807N12483S, G807N12485S<br><br>Powerline<br>Model: 18-85F-21-600C16P32<br>SN: PL109181416-17<br><br>LifePlus MOD3<br>Model. LPM3-48C-180Y<br>SN: QF323484, QF323489 | 2.00 | $39,266.00 | $78,532.00 |

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

Continued

3295 Levis Commons Blvd. Perrysburg, OH 43551
Phone (419) 868-8853 Fax #: (419) 868-8912
www.tfsglobal.com

TOTAL Fleet Solutions

**INVOICE**

| | |
|---|---|
| **Invoice No.** | **157745** |
| Date | 10/31/2018 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| IEMFS DBA GSG Financial<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion AIR<br>301 Industrial Drive<br>Albion, IL 62806 |

Page 2 of 2

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 10/31/2018 | 10 days | 11/10/2018 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|

New 2018 Lift Trucks

| | | |
|---|---|---|
| We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.<br><br>All amounts due are in US DOLLARS unless otherwise indicated. | Sales Total | $240,090.00 |
| | Tax Total | $0.00 |
| | **Invoice Total** | **$240,090.00** |

TOTAL Fleet Solutions

**INVOICE**

| | |
|---|---|
| **Invoice No.** | 157744 |
| Date | 10/31/2018 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| IEMFS DBA GSG Financial<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion OIL<br>Attn: Accounts Payable<br>200 S. 4th Street<br>Albion, IL 62806 |

Page 1 of 1

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 10/31/2018 | 10 days | 11/10/2018 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| Yale<br>Model: GC155VX<br>SN: F879V02414S | 1.00 | $74,442.00 | $74,442.00 |

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

| | |
|---|---|
| Sales Total | $74,442.00 |
| Tax Total | $0.00 |
| **Invoice Total** | **$74,442.00** |

3295 Levis Commons Blvd. Perrysburg, OH 43551
Phone (419) 868-8853 Fax #: (419) 868-8912
www.tfsglobal.com

# BILL OF SALE

Re: Lease Agreement No. [redacted]409-003

Total Fleet Solutions, Ltd. (the "Seller"), for and in consideration of the payoff amount of $908,475.40 does hereby release, transfer and assign to IEMFS, Ltd. dba GSG Financial (the "Purchaser"), all Seller's right, title and interest in and to the Equipment as listed below:

SEE ATTACHMENT A

TO HAVE AND TO HOLD, all and singular the Equipment by these present bargained, sold and confirmed unto Purchaser, its successors and assigns, forever.

AND, Seller, for itself, its successors and assigns, does hereby warrant to Purchaser, its successors and assigns, that at the time of this sale, Seller has neither caused nor suffered any liens, claims or encumbrances to be created by Seller against the Equipment.

The Equipment is transferred to Purchaser in "AS IS-WHERE IS" CONDITION AND SELLER MAKES NO OTHER REPRESENTATIONS OF WARRANTIES WITH RESPECT TO THE EQUIPMENT INCLUDING THOSE OF MERCANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

By its acceptance of the Equipment, Purchaser further agrees that it has paid or will pay any and all applicable sales, property, excise, use and privilege taxes that may be imposed on Purchaser or Seller by any Federal, State, City, County, or other governmental authority upon the transaction accomplished hereby or upon the ownership or use of the Equipment, and hereby agrees to indemnify and hold the Seller harmless from and against any and all claims and liabilities (including, without limitation, costs and expenses) for such taxes from the date of this Bill of Sale forward.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed it its name by an authorized officer as of December 5, 2018.

Total Fleet Solutions, Ltd.

By: ______________________

Name: Andrew Bender

Title: Vice President

## ATTACHMENT A

**LESSEE:** Champion Laboratories, Inc.

**LEASE NO.** [redacted]409-003

| QTY | DESCRIPTION | SERIAL # | LOCATION |
|---|---|---|---|
| 1 | Yale NR035DB Reach Truck | B295N05451S | 301 Industrial Drive, Albion, IL 62806 |
| 2 | Hawker LPM3-48C-120Y Matching Charger | QI325789<br>QI325790 | 301 Industrial Drive, Albion, IL 62806 |
| 1 | Yale OS030BF Order Picker | E826N04768S | 301 Industrial Drive, Albion, IL 62806 |
| 2 | Hawker 18-125F-11 36v Battery; SPW; Blinky Light | PL109180125<br>PL109180126 | 301 Industrial Drive, Albion, IL 62806 |
| 2 | Yale ERP035VT 3 Wheel Sitdown Forklift | G807N12420S<br>G807N12421S | 301 Industrial Drive, Albion, IL 62806 |
| 2 | Hawker 18-85F-21 36v Battery; SPW; Blinky Light | PL109181424 | 301 Industrial Drive, Albion, IL 62806 |
| 3 | Yale ERP035VT 3 Wheel Sitdown Forklift | G807N12484S<br>G807N12486S<br>G807N12487S | 301 Industrial Drive, Albion, IL 62806 |
| 3 | Hawker 18-85F-21-600C16P32 36v Battery; SPW; Blinky Light | PL109181418<br>PL109181419<br>PL109181420 | 301 Industrial Drive, Albion, IL 62806 |
| 5 | Hawker LPM3-48C-180Y Matching Charger | OI326316<br>OI326317<br>OI326318<br>QI326144<br>QI326145 | 301 Industrial Drive, Albion, IL 62806 |
| 1 | Yale ERC050VG 4 Wheel Sitdown Forklift | A968N19806S | 200 South 4th Street, Albion, IL 62806 |
| 1 | Hawker 18-85F-23-600C16P33 36v Battery; SPW; Blinky Light | PL109180759 | 200 South 4th Street, Albion, IL 62806 |
| 5 | Hawker LPM3-48C-180Y Matching Charger | QI325985<br>QI326033<br>QI326034<br>QI326142<br>QI326143 | 200 South 4th Street, Albion, IL 62806 |
| 2 | Yale ERC060 4 Wheel Sitdown Forklift | A968N19846S<br>A968N19847S | 200 South 4th Street, Albion, IL 62806 |
| 2 | Hawker 18-85F-27-600C04P02 36v Battery; SPW; Blinky Light | PL109181435<br>PL109181436 | 200 South 4th Street, Albion, IL 62806 |
| 1 | Yale ERC070VG 4 Wheel Sitdown Forklift | A968N19691S | 200 South 4th Street, Albion, IL 62806 |
| 1 | Hawker 18-85F-33-600C04P05 36v Battery; SPW; Blinky Light | PL108182041 | 200 South 4th Street, Albion, IL 62806 |
| 3 | Hawker LPM3-48F-240Y Matching Charger | QI325769<br>QI326140<br>QI326141 | 200 South 4th Street, Albion, IL 62806 |
| 2 | Yale ERP035VT 3 Wheel Sitdown Forklift | G807N12448S<br>G807N12501S | 200 South 4th Street, Albion, IL 62806 |
| 1 | Yale GLC155VX 15500# Capacity 4 Wheel Forklift | F879V02414S | 200 South 4th Street, Albion, IL 62806 |
| 2 | Yale ERP035VT 3 Wheel Sitdown Forklift | G807N12352S<br>G807N12371S | 200 South 4th Street, Albion, IL 62806 |
| 4 | Hawker 18-85F-21 36v Battery; SPW; Blinky Light | PL109180799<br>PL109180800<br>PL109181421<br>PL109181422 | 200 South 4th Street, Albion, IL 62806 |
| 1 | Yale ERC050VG 4 Wheel Sitdown Forklift | A968N19861S | 950 South Highway 130, Albion, IL 62806 |

| QTY | DESCRIPTION | SERIAL # | LOCATION |
|---|---|---|---|
| 1 | Hawker 18-85F-23-600C16P33 36v Battery; SPW; Blinky Light | | 950 South Highway 130, Albion, IL 62806 |
| 2 | Yale ERP035VT 3 Wheel Sitdown | G807N12547S<br>G807N12548S | 950 South Highway 130, Albion, IL 62806 |
| 5 | Hawker LPM3-48C-180Y Matching Charger | QF323484<br>QF323489<br>QI326035<br>QI326036<br>QJ326159 | 950 South Highway 130, Albion, IL 62806 |
| 2 | Yale ERP035VT 3 Wheel Sitdown Forklift | G807N12483S<br>G807N12485S | 950 South Highway 130, Albion, IL 62806 |
| 4 | Hawker 18-85F-23 36v Battery; SPW; Blinky Light | PL109180801<br>PL109180802<br>PL109181416<br>PL109181417 | 950 South Highway 130, Albion, IL 62806 |

# PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASE

THIS PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASE ("Agreement") is made as of December 31, 2018 by and between IEMFS, Ltd. dba GSG Financial (hereinafter called "Seller") having its principal place of business at 53 West 36th Street, Suite 701, New York, NY 10018 and KINGSBRIDGE HOLDINGS, LLC (hereinafter "Buyer") having its offices at 150 N. Field Drive, Suite 193, Lake Forest, IL 60045.

<u>WITNESSETH:</u>

That in consideration of the mutual undertakings herein contained, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Sale of Equipment.</u> Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller, the Equipment subject to the leases listed in **Exhibit A** attached hereto at the Lessee's ("Lessee") installation address, plus all of Seller's rights related thereto including all warranties, rights under software licenses, if any, and contracts pertaining to the equipment and all insurance proceeds thereon, all other general intangibles related thereto, and all substitutions, upgrades and additions thereto (collectively, the "Equipment"), subject to any Permitted Encumbrances, as defined in Paragraph 3 below.

2. <u>Purchase Price.</u> The Purchase Price of the Equipment of [redacted] is the sum of (i)[redacted] which amount Buyer agrees to pay to Seller by wire transfer not later than December 31, 2018 (the amount o[redacted] is the sum of $[redacted] which represents Buyer's purchase of the Equipment ("Net Investment") and [redacted] which represents Buyer's purchase of debt for lease schedules identified in Exhibit A), plus (ii) Buyer's assumption of non-recourse debt, based on a funding date of December 31, 2018, in the amount of[redacted].

3. <u>Delivery and Title.</u> Buyer hereby agrees to accept delivery of the Equipment at the facilities of the Lessees, as listed on **Exhibit A** (the "Lessee") at the locations set forth in **Exhibit B** hereto. Seller represents and warrants that Seller has good marketable title to the Equipment, free and clear of all liens, claims and encumbrances of any kind, except for: 1) the leasehold rights of the Lessee under the Lease, as defined below, and 2) the rights and interests conveyed and granted to the non-recourse debt holder (the "Senior Lenders") by and under that certain Specification to Master Assignment Agreement as listed in Exhibit A, (the "Initial Assignment") between Seller, as assignor, and Senior Lender, as assignee(s), regarding the Equipment and the Lease Schedule identified in Section 4 hereof (together, "Permitted Encumbrances").

4. <u>Assignment of Lease.</u>

Seller hereby unconditionally and irrevocably assigns and sets over unto Buyer, subject and subordinate to the Permitted Encumbrances and effective on the date of

EXHIBIT
5
tabbies

payment by Buyer of the cash portion of the Purchase Price set forth in Section 2. (i) above, (i) all of its right, title and interest in, under and to Schedule Nos as listed on **Exhibit A** collectively, the "Lease Schedule") to the master lease agreements listed on Exhibit A (collectively the "Lease") between Seller and Lessee, and (ii) all of Seller's rights and interests in the Leases as it relates to the Lease Schedule and/or the Equipment thereunder, including all rents due January 1, 2019 and after, and other sums due and to become due thereunder after receipt by Senior Lender of all amounts due Senior Lender under the Lease Schedule by way of and in accordance with the terms of the Initial Assignment. All interim rentals accruing prior to the base term lease commencement date and base term rentals due prior to those which were assigned to Senior Lender shall be for the account of Seller. Seller agrees to promptly provide Buyer with a copy of all notices received from Lessee and/or any third party regarding the Equipment, including taxing authorities and any vendor or manufacturer of the Equipment. Seller further assigns and sets over to Buyer any and all rights to provide upgrades to the Equipment.

5. WARRANTY DISCLAIMER. **OTHER THAN AS SET FORTH IN THIS AGREEMENT OR IN ANY OTHER AGREEMENTS BETWEEN SELLER AND BUYER, SELLER DOES NOT WARRANT THE EQUIPMENT IN ANY RESPECT, EITHER EXPRESSLY OR BY IMPLICATION AND WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS OR ADEQUACY FOR ANY PURPOSE OR USE, QUALITY, PRODUCTIVENESS OR CAPACITY.** SELLER HEREBY ASSIGNS TO BUYER (TO THE EXTENT TO WHICH THE SAME MAY BE ASSIGNABLE AND SUBJECT TO THE PERMITTED ENCUMBRANCES) AND ENFORCE FOR BUYER'S BENEFIT (TO THE EXTENT NOT ASSIGNABLE PROVIDED THAT SELLER IS ENTITLED TO ENFORCE THE SAME FOR ITSELF), ANY WARRANTY OF THE MANUFACTURER RELATIVE TO THE EQUIPMENT AND AGREES TO EXECUTE SUCH DOCUMENTS AS SHALL BE NECESSARY TO EFFECTUATE SUCH ASSIGNMENT.

6. Representations of Seller. Seller hereby represents and warrants and Buyer may rely on the following:

(a) Seller will transfer good and marketable title in and to the Equipment, the Lease Schedule and the Lease as it relates thereto to Buyer, free and clear of any and all liens, claims or encumbrances, subject to Permitted Encumbrances, and upon delivery to Seller of the cash portion of the Purchase Price by Buyer, Seller will deliver to Buyer a Bill of Sale pertaining to the Equipment, free and clear of all liens, claims and encumbrances except for the rights of Lessee under the Lease Schedule and for Permitted Encumbrances, and a certified copy of the Lease and a copy of the Lease Schedule and other original documents pertaining thereto including, without limitation, all consents, waivers and any other written communications or correspondence.

(b) Seller is a duly organized and validly existing corporation in good standing under the laws of the State of Ohio and is duly qualified to do business in each

jurisdiction (including the jurisdiction where the Equipment is or is to be located) where its ownership or lease of property or the conduct of its business requires such qualification.

(c) The Lease and Lease Schedule have been duly executed and delivered, are in full force and effect, constitute the valid and binding obligation of Seller and of Lessee and are enforceable against Seller and the Lessee in accordance with the terms of the Lease and Lease Schedule (subject to laws of general application affecting creditors' rights) and no defaults or conditions which, with the passage of a cure period or giving of notice or both, would constitute defaults, exist thereunder or under the Initial Assignment documents by the Lessee or by Seller.

(d) Seller has the power and authority to enter into this Agreement and the Bill of Sale, and to carry out the transfer of the Equipment and Lease Schedule to Buyer and the other transactions contemplated hereunder, subject to the Permitted Encumbrances There is no action, suit or proceeding pending against Seller before or by any court, administrative agency or other governmental authority which brings into question the validity of, or might in any way impair, the execution, delivery or performance by Seller of this Agreement.

(e) The execution and delivery of this Agreement and the Bill of Sale by Seller and the performance by it of its obligations hereunder and thereunder have been duly authorized by all necessary corporate action of Seller and do not violate or conflict with (i) any provision of Seller's Certificate of Incorporation or By-Laws, (ii) any law or any order, writ, injunction, decree, rule or regulation of any court, administrative agency or any other governmental authority, or (iii) any agreement to which Seller is a party or by which Seller is bound.

(f) The making and performance by Seller of this Agreement and the Bill of Sale and the transactions contemplated therein do not conflict with and are not inconsistent with, and will not result (with or without the giving of notice or passage of time or both) in a breach of or constitute a default or require any consent under the terms of any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Seller is a party or by which Seller may be bound or to which it may be subject.

(g) The Lease and Lease Schedule have been duly executed and delivered by Seller and will, on the date of closing hereunder, be in full force and effect without any defenses or offsets; the Lease Schedule constitute a separately enforceable lease agreement and neither default, nor event which, but for the passing of a cure period or the giving of notice or both, would be a default, will then have occurred or be continuing under the terms of the Lease or Lease Schedule; the Equipment is located at the place designated in the Lease Schedule; and Seller warrants that (i) no prepayments of rent under the Lease Schedule have been made by Lessee and (ii) any payments received by Seller under the Lease Schedule which are not due Senior Lender, Seller or any applicable taxing authority or other party of interest under the Lease Schedule shall by

remitted immediately upon Seller's receipt to Buyer or, upon written directions from Buyer, to Buyer's assignee.

(h) This Agreement and the Bill of Sale have been duly authorized, executed and delivered by Seller and constitute the legal, valid and binding obligations of Seller enforceable in accordance with their terms.

(i) Seller has or will provide any and all notices and obtain any and all consents which may be necessary to the completion of the transaction contemplated hereby.

(j) All sales, use, property or other taxes, licenses, tolls, inspection or other fees, bonds, permits or certificates which were or may be required to be paid or obtained in connection with the acquisition by Seller of the Equipment, or the leasing thereof to Lessee prior to the sale to Buyer hereunder, have been, or will, when due, be paid in full or obtained.

(k) Seller represents and warrants that (i) all payments of installments of the firm, noncancelable rentals payable under the Lease Schedule are current and (ii) the rents payable under the Lease Schedule are not subject to any defenses, set-offs or counter-claims.

(l) No Event of Default or event which with the passing of time or the giving of notice, or both, would constitute an Event of Default has occurred under the Lease or the Lease Schedule.

(m) There are no agreements, leases, purchase options, liens or encumbrances known to Seller affecting the Equipment which are not disclosed in the Lease, in the Lease Schedule, in the documents by which Seller took title to the Equipment or in the Initial Assignment and/or other documents affecting the Equipment to which Seller is a party; and all such documents have been provided to Buyer.

(n) Any purchase options contained in the Lease or the Lease Schedule shall be a Fair Market Value purchase option, not a bargain payment, whether for renewal or purchase.

(o) If the terms of the Lease require Seller to provide notice to Lessee prior to the expiration of the initial term of the Lease Schedule or any extensions thereof, Seller shall be solely responsible for providing said notice to Lessee and hereby indemnifies Buyer for any loss, including inability to collect any rentals due pursuant to the terms of the Lease, whether arising before or after the expiration of the initial term, caused by Seller's failure to provide said notice on a timely basis.

7. Representations and Warranties of Buyer. Buyer hereby represents and warrants and Seller may rely on the following:

(a) Permitted Encumbrances. Buyer acknowledges and agrees that all of its rights and interests in and to a portion of the Equipment and the Lease Schedule conveyed hereby are subject and subordinate to the rights and interests of the Senior Lender pursuant to the Initial Assignment.

(b) Binding Obligation. Buyer has full power and authority to enter into this Agreement and to consummate the transactions contemplated herein. This Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate action of Buyer and this Agreement constitutes the legal, valid and binding obligations of Buyer enforceable in accordance with its terms.

(c) Inconsistent Agreements. The making and performance by Buyer of this Agreement and the transactions contemplated hereby do not contravene the Articles of Organization or Operating Agreement of Buyer or any provision of law applicable to Buyer and do not conflict and are not inconsistent with, and will not result (with or without the giving of notice or passage of a cure period or both) in a breach of or constitute a default or require any consent under the terms of any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Buyer is a party or by which Buyer may be bound or to which it may be subject.

8. Invoicing. Unless and until otherwise notified by Buyer and except as specifically provided in this Section 8, Seller shall have the obligation, at its expense, to bill for, collect, receive, and administer all payments due under the Lease Schedule, including, but not limited to, rent and sales/use tax payments on rent. Seller agrees to cause the Lessees to remit to Senior Lender (or as it shall direct) all amounts assigned to Senior Lender with respect to the Lease Schedule. With respect to personal property taxes, Buyer assumes responsibility for the filing and payment of such taxes to the appropriate taxing authorities and will promptly provide invoice copies to Seller to invoice Lessees for payment or reimbursement under Seller's name. Seller will bill, collect, and receive from Lessees all amounts payable or reimbursable from Lessees for personal property taxes and will promptly remit to Buyer all amounts collected or owed relating to the same. Notwithstanding the foregoing, Buyer may directly bill, collect, and receive all amounts payable or reimbursable from Lessees for personal property taxes if Seller fails to collect from Lessees and remit to Buyer the same within 30 days of Buyer's written request, provided that Buyer has given Seller a reasonable time to perform its obligations hereunder.

9. Miscellaneous.

(a) Survival. All representations, warranties and certifications made by Seller and Buyer shall survive the execution, delivery and performance of this Agreement and all other documents provided for herein.

(b) Successors and Assigns. This Agreement and all covenants and agreements contained herein as well as all other documents provided for herein shall be binding upon

and inure to the benefit of the parties hereto and their respective successors and assigns. The parties hereto agree that their respective successors and assigns any rely upon each and every representation, warranty, indemnification and covenant made herein and, if requested to do so, each party will acknowledge such reliance in writing to the successors or assigns of the other party.

(c) Indemnification.

(i) Seller shall indemnify and hold Buyer harmless from and against any and all loss, cost, damage, injury or expense (including court costs and reasonable attorneys' fees) wheresoever and howsoever arising which Buyer may incur by reason of any breach by Seller of any of its warranties, representations or obligations set forth herein, or in any documents executed in connection herewith. In addition, Seller shall indemnify and hold Buyer harmless from and against any and all loss, cost, penalty, damage, injury or expense (including court costs and reasonable attorneys' fees), arising from Seller, as opposed to Buyer, filing and paying all sales/use tax payments.

(ii) Buyer shall indemnify and hold Seller harmless from and against any and all loss, cost, damage, injury or expense (including court costs and reasonable attorneys' fees) wheresoever and howsoever arising which Seller may incur by reason of any breach by Buyer of any of its warranties, representations or obligations set forth herein, or in any documents executed in connection herewith.

(d) Captions. The captions appearing in this Agreement and in any other documents relating this transaction are inserted only as a matter of convenience and in no way define, limit, or describe the scope or intent of such sections or articles nor in any way effect this Agreement or any other documents relating to this transaction.

(e) Delivery of Documents; Further Instruments. Buyer's duty to pay the Purchase Price shall not arise until this Agreement is signed by the parties hereto, and Seller shall have delivered to Buyer the following documents acceptable to Buyer:

(i) certified true and correct photocopies of the applicable master lease agreements and the related transaction documents which directly relate to the subject Lease Schedule, including without limitation UCC-1 precautionary financing statements filed or to be filed by Seller against Lessee;

(ii) certified true and correct photocopies of the original Lease Schedule covering the Equipment;

(iii) all appropriate UCC-3 assignments of the UCC-1 precautionary financing statements filed by Seller against Lessee;

(iv) the original of this Agreement and the Bill of Sale covering the Equipment executed by Seller;

(v) original Acknowledgment of Assignment executed by Seller to be held in escrow provided that Buyer shall have the right, in its sole and

absolute discretion, to send the Acknowledgment of Assignment to the Lessee with respect to the Leases affected by such event if (a) there is any breach by Seller of any representation, warranty, covenant or agreement in this Agreement or other instrument, document or writing executed in connection therewith, or any other agreement entered into by Seller for the benefit of Buyer; (b) there is any bankruptcy (voluntary or involuntary), reorganization or similar proceeding commenced by or against Seller or Lessee; (c) there is any default by Lessee under the Leases; or (d) Buyer otherwise deems itself to be insecure for any reason whatsoever;

(vi) certificates of insurance naming Seller and its assigns as additional insured and loss payee and otherwise in compliance with the requirements of the Lease;

(vii) a manufacturer's invoice and a copy of the applicable purchase agreement, if any, and any other evidence deemed necessary by Buyer to determine the monies owed for the Equipment, if any (as applicable) all in form satisfactory to Buyer; and

The parties hereto hereby agree to execute and deliver, or cause to be executed and delivered, such further instruments or documents and take each other action as may be required effectively to carry out the transactions contemplated herein.

(f) Governing Law. The validity, interpretation and enforcement of this Agreement shall be governed by the laws of the State of Illinois (irrespective of such State's choice of law rules). Any claims or disputes regarding this Agreement, the Equipment or the Lease Schedule shall be heard in any state or federal court located in Illinois and the parties hereby consent to the exclusive personal jurisdiction of said court. The parties waive any defense based on forum non conveniens and waives trial by jury.

(g) Power of Attorney. Seller hereby appoints Buyer, and its assignees, as its true and lawful attorney in fact to use and/or endorse Seller's name in connection with solely in reference to the applicable master lease agreement and the related transaction documents which directly relate to the subject Lease Schedule:

(i) all checks related herein received by Buyer on which Seller's name appears;

(ii) the transfer of title to all Equipment;

(iii) if necessary, collection actions on the assigned interest, which collection actions shall at all times comply with all applicable laws and regulations;

(iv) the execution of documents necessary to change the designated loss payee, or endorsing checks or drafts representing payment of loss or refund of premiums under any insurance policy issued in connection with the assigned interest; and

(v) the execution of any uniform commercial code filings, including, without limitation, assignments of uniform commercial code filings against the obligors, which Buyer believes are necessary from time to time in order to carry out the purposes hereof and to protect Buyer's interest hereunder.

This power is coupled with an interest and is irrevocable. Seller hereby ratifies, to the extent permitted by law, all that Buyer shall lawfully and in good faith do or cause by reason of and in compliance with this section.

(g) Representations and Warranties. The only representations and warranties of Seller and Buyer are those contained in this Agreement.

**IN WITNESS WHEREOF,** and intending to be legally bound hereby, Seller and Buyer have caused this Agreement consisting of eight typewritten pages, not including the Exhibit A and B attached hereto, to be executed and do each hereby warrant and represent that their respective signatories whose signatures appear below have been and are on the date of this Agreement duly authorized by all necessary and appropriate action to execute this Agreement.

SELLER:

**IEMFS, Ltd. dba GSG Financial**

By: ______________________

Title: Katharine Harris VP, Operations

BUYER:

**Kingsbridge Holdings, LLC**

By: ______________________

Title: Co-Chief Executive Officer

**EXHIBIT A TO PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASES**

**See attached Spreadsheet Marked Exhibit A**

| Lessee | Corporate Guarantor | Schedule # | Type | Frequency | Start Date | Maturity Date | Term | Pmts | | $ Amt Pmts | 1st Pmt | OEC | Rent | Debt Rate | Debt Funding so | GROSS PURCHASE | PV of Residual | TOTAL CASH |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [redacted] | | | | | | | | | | | | | | | | | | |
| Champion Laboratories, Inc. | UCI International Holdings, Inc. | 32409-003 | FMV | Monthly | 1/1/2019 | 1/1/2024 | 60 | 0 | 60 | $ - | 1/1/2019 | $ 974,339.87 | $ 17,313.72 | 7.75% | NEC | [redacted] | | |
| Champion Laboratories, Inc. | UCI International Holdings, Inc. | 32409-004 | FMV | Monthly | 1/1/2019 | 1/1/2023 | 48 | 0 | 48 | $ - | 1/1/2019 | $ 619,240.37 | $ 12,662.50 | 7.75% | NEC | [redacted] | | |

[redacted]