TOTAL Fleet Solutions
53 West 36th Street, Suite 701
New York, NY 10018
Telephone: 212.602.1183

# EQUIPMENT SCHEDULE

Master Lease # [redacted]409
Schedule # 004

This Equipment Schedule ("Schedule") is written in simple and easy-to-read language. Please read this Schedule thoroughly and feel free to ask us any questions you may have about it. The words YOU and YOUR refer to the Lessee. The words WE, US and OUR refer to the Lessor, IEMFS, Ltd., an Ohio Limited Liability Company.

## Master Lease Agreement

The Terms of the above Master Lease Agreement ("Master Agreement") are incorporated into and made a part of this Schedule as if set forth in full. This Schedule, and every other Schedule which incorporates terms from the Master Agreement, each are separate, assignable lease agreements, and not part of the Master Agreement. If there is any inconsistency between the terms of this Schedule and those of the Master Agreement, then this Schedule will control.

## Customer & Billing Contact Information

Lessee Full Legal Name
Champion Laboratories, Inc.

| Contact Person | Contact Phone No. | Federal Tax ID # | State of Org. |
|---|---|---|---|
| | 618-445-6011 | [redacted] | DE |

Company Address
200 South 4th Street, Albion, IL 62806

Equipment Location
SEE EQUIPMENT SCHEDULE A

## Equipment Description

**Complete Equipment Location only if different from company address**

| Qty | Manufacturer | Model Number | Description | Serial Number | Total Number of Running Hours Per Year |
|---|---|---|---|---|---|
| | | | SEE EQUIPMENT SCHEDULE A | | |

***Should Lessee exceed the expected number of running hours stated in this Equipment Schedule with respect to any unit, Lessee will pay an additional $2 per hour for such unit.***

## Term/Lease Payment Schedule

| Term | Security Deposit/Advance Payment *(Check One Only)* | Lease End Purchase Option | Base Monthly Lease Payment* |
|---|---|---|---|
| (Months) | ____ Security Deposit(s): ____________ | X FMV (defined in Section 17) | $11,892.95 (incl. sales tax) |
| 48 | ____ Advance Payment(s): ____________ | ____ $1.00 ____Other: | * Plus Applicable Taxes—See Section 11 |

The first monthly payment will be due on the Commencement Date together with interim rent for the period between the Acceptance Date and the Commencement Date at the daily rate equal to 1/30th of the monthly rental. The Commencement Date shall be the first day of the month following the Acceptance Date, unless the Acceptance Date is the first day of the month, in which case the Commencement Date shall be the Acceptance Date. Additional monthly payments will be due on the same day of each following month. All payments and other amounts due or to become due at the time and in the amounts set forth in the Lease, unless otherwise notified, shall be remitted to us at: **IEMFS, Ltd., PO Box 87618, Department #2071, Chicago, IL 60680-0618.**

## Lessee Authorized Signature

**THIS LEASE MAY NOT BE CANCELED**

| Authorized Signature | Date | Print Name |
|---|---|---|
| X [signature] | 8/23/18 | Greg Noethlich |
| | Title: President and CEO | |

## Equipment Acceptance Certificate

You certify that all of the Equipment referred to in this Lease has been delivered and received by you, and that any and all installation and set up has been completed. You have examined the Equipment and it in good operating condition and is satisfactory to you and you have accepted the Equipment. This lease cannot be modified or rescinded except by a writing signed by you and us. As of the date an Equipment Acceptance Certificate is received by us (the "Adjustment Date"), the monthly payments due hereunder shall be recalculated based upon increases in the swap rate for the Forty-Eight (48)-month rate as published in the ICE SWAP Rate Historical Rates table for the week ending immediately prior to the Adjustment Date (the "Swap Rate"). If, on the Adjustment Date, the Swap Rate is greater than at Lease signing, the monthly payments due hereunder shall be increased to reflect the actual rate. Thereafter, the monthly payments shall remain fixed during the Term hereof. **ACCORDINGLY YOU AUTHORIZE US TO PURCHASE THE EQUIPMENT FOR YOUR USE. The "Commencement Date" of this lease will be the 1st of the month following the Acceptance Date.**

## Lessee Authorized Signature

**THIS LEASE MAY NOT BE CANCELED**

| Authorized Signature | Acceptance Date | Print Name |
|---|---|---|
| X [signature] | 8/23/18 | Greg Noethlich |
| | Title: President and CEO | |

## Accepted by IEMFS, Ltd., Lessor

| Authorized Signature | Date |
|---|---|
| X [signature] | 12/11/18 |



EXHIBIT 6

EQUIPMENT SCHEDULE A
to Equipment Schedule No. 004 to Master Lease Agreement No. [redacted]409

| Address | Year | Qty | Make | Model | Type | Serial Number | Additional Specs | Current Hours | Total Number of Running Hours Per Year |
|---|---|---|---|---|---|---|---|---|---|
| 200 South 4th Street, Albion, IL 62806 | | 13 | Yale | ERC050VG | 4 Wheel Sitdown Forklift | | 5000# Capacity; 36v; 187" mast height; 42" forks, ; yale vision telemetry | n/a | 2,500 |
| 200 South 4th Street, Albion, IL 62806 | | 13 | Hawker | 18-85F-23-600C16P33 | 36v Battery; SPW; Blinky Light | | | n/a | |
| 200 South 4th Street, Albion, IL 62806 | | 13 | Hawker | LPM3-48C-180Y | Matching Charger | | | n/a | |

Should Lessee exceed the total number of running hours per year stated in this Equipment Schedule A with respect to any unit, Lessee will pay us additional rent equal to $2/hour.

**LESSEE:** **Champion Laboratories, Inc.**

X____________________

**TITLE:** **President and CEO**

# AMENDMENT TO EQUIPMENT SCHEDULE

53 West 36th Street, Suite 701, New York, NY 10018

TOTAL Fleet Solutions

THIS AMENDMENT is made as of the date set forth below.

**WHEREAS**, **Champion Laboratories, Inc.** and **IEMFS, Ltd.** have entered into an Equipment Schedule No. 004 (the "Lease") executed pursuant to the Master Lease Agreement No. [redacted]409 dated November 28, 2017 (the "Master Lease") and;

**WHEREAS,** the Lease currently references a Base Monthly Lease Payment of $11,892.95 (incl. sales tax);

**WHEREAS,** the Lease currently references Equipment described on the Equipment Schedule A attached hereto;

**NOW, THEREFORE,** in consideration of the mutual promises contained herein, the parties hereby agree as follows:

1. The Lease is hereby amended to reflect a Base Monthly Lease Payment of $12,037.25 (incl. IL sales tax).
2. The following equipment located at 740 Palmyrita Avenue, Suite A, Riverside, CA 92507 is added to the Equipment on the Lease:

   1x Hawker 18-85-21 Battery with Serial No. PL108181957

3. All provisions of the Lease not amended by this Amendment shall remain in full force and effect as set forth in the Lease.

**IN WITNESS WHEREOF**, the Parties have caused this Amendment to be executed as of the date set forth below.

| **Champion Laboratories, Inc.** | **IEMFS, Ltd.** |
|---|---|
| X [signature] | X [signature] |
| Print Name: Greg Noethlich | Print Name: Katharine Harris |
| Title: President and CEO | Title: VP, Operations |
| Date: 10/1/18 | Date: 12/11/18 |

EQUIPMENT SCHEDULE A
to Equipment Schedule No. 004 to Master Lease Agreement No. [redacted]409

| Address | Year | Qty | Make | Model | Type | Serial Number | Additional Specs | Current Hours | Total Number of Running Hours Per Year |
|---|---|---|---|---|---|---|---|---|---|
| 200 South 4th Street, Albion, IL 62806 | | 13 | Yale | ERC050VG | 4 Wheel Sitdown Forklift | | 5000# Capacity; 36v; 187" mast height; 42" forks, ; yale vision telemetry | n/a | 2,500 |
| 200 South 4th Street, Albion, IL 62806 | | 13 | Hawker | 18-85F-23-600C16P33 | 36v Battery; SPW; Blinky Light | | | n/a | |
| 200 South 4th Street, Albion, IL 62806 | | 13 | Hawker | LPM3-48C-180Y | Matching Charger | | | n/a | |

Should Lessee exceed the total number of running hours per year stated in this Equipment Schedule A with respect to any unit, Lessee will pay us additional rent equal to $2/hour.

**LESSEE:** **Champion Laboratories, Inc.**

**X**____________________

**TITLE:** **President and CEO**

* ADD EQUIPMENT PER AMENDMENT DATED 10/1/18

# AMENDMENT II TO EQUIPMENT SCHEDULE

TOTAL Fleet Solutions

53 West 36th Street, Suite 701, New York, NY 10018

THIS AMENDMENT II is made as of the date set forth below.

**WHEREAS, Champion Laboratories, Inc.** and **IEMFS, Ltd.** have entered into an Equipment Schedule No. 004 (the "Lease") executed pursuant to the Master Lease Agreement No. [redacted]409 dated November 28, 2017 (the "Master Lease") and;

**WHEREAS,** the Lease currently references a Base Monthly Lease Payment of $12,037.25 (incl. IL sales tax);

**WHEREAS,** the Lease currently references Equipment described on the Equipment Schedule A;

**NOW, THEREFORE,** in consideration of the mutual promises contained herein, the parties hereby agree as follows:

1. The Lease is hereby amended to reflect a Base Monthly Lease Payment of $12,341.93 (incl. IL sales tax).
2. The following equipment located at 301 Industrial Drive, Albion, IL 62806 is added to the Equipment on the Lease:

   1x 2006 Refurbished Caterpillar NRP30 Walkie Stacker with Serial No. 1NRP01247 and Used Battery

3. All provisions of the Lease not amended by this Amendment II shall remain in full force and effect as set forth in the Lease.

**IN WITNESS WHEREOF**, the Parties have caused this Amendment II to be executed as of the date set forth below.

| Champion Laboratories, Inc. | IEMFS, Ltd. |
|---|---|
| X [signature] | X [signature] |
| Print Name: Greg Noethlich | Print Name: Katharine Harris |
| Title: President and CEO | Title: VP, Operations |
| Date: 10/22/18 | Date: 12/11/18 |

# AMENDMENT III TO EQUIPMENT SCHEDULE

TOTAL Fleet Solutions

53 West 36th Street, Suite 701, New York, NY 10018

THIS AMENDMENT III is made as of the date set forth below.

**WHEREAS, Champion Laboratories, Inc.** and **IEMFS, Ltd.** have entered into an Equipment Schedule No. 004 (the "Lease") executed pursuant to the Master Lease Agreement No. [redacted]409 dated November 28, 2017 (the "Master Lease") and;

**WHEREAS,** the Lease currently references a Base Monthly Lease Payment of $12,341.93 (incl. IL sales tax);

**WHEREAS,** the Lease currently references Equipment described on the Equipment Schedule A;

**NOW, THEREFORE,** in consideration of the mutual promises contained herein, the parties hereby agree as follows:

1. The Lease is hereby amended to reflect a Base Monthly Lease Payment of $12,662.50 (incl. IL sales tax).
2. The following equipment located at 301 Industrial Drive, Albion, IL 62806 is added to the Equipment on the Lease:

   1x 2003 Yale MRW030LEN24TV083 Walkie Reach Stacker with Serial No. B821N01524A and New Battery

3. All provisions of the Lease not amended by this Amendment III shall remain in full force and effect as set forth in the Lease.

**IN WITNESS WHEREOF**, the Parties have caused this Amendment III to be executed as of the date set forth below.

| **Champion Laboratories, Inc.** | **IEMFS, Ltd.** |
| --- | --- |
| X [signature] | X [signature] |
| Print Name: Greg Noethlich | Print Name: Katharine Harris |
| Title: President and CEO | Title: VP, Operations |
| Date: 12/5/18 | Date: 12/11/18 |

**APPENDIX 1**
**to Equipment Schedule No. 004 to Master Lease Agreement No.[redacted]409**
**Casualty Value**

The Casualty Value shall be the product obtained by multiplying the cost for the unit in question by the percentage, as set forth below, specified opposite the payment date immediately following the date of the casualty occurrence.

| Base Rent Date Number | Percentage of Cost | Base Rent Date Number | | Percentage of Cost |
|---|---|---|---|---|
| 1 | 108.000% | 25 | | 78.38% |
| 2 | 106.766% | 26 | | 77.15% |
| 3 | 105.532% | 27 | | 75.91% |
| 4 | 104.298% | 28 | | 74.68% |
| 5 | 103.064% | 29 | | 73.45% |
| 6 | 101.830% | 30 | | 72.21% |
| 7 | 100.596% | 31 | | 70.98% |
| 8 | 99.362% | 32 | | 69.74% |
| 9 | 98.128% | 33 | | 68.51% |
| 10 | 96.894% | 34 | | 67.28% |
| 11 | 95.660% | 35 | | 66.04% |
| 12 | 94.426% | 36 | | 64.81% |
| 13 | 93.191% | 37 | | 63.57% |
| 14 | 91.957% | 38 | | 62.34% |
| 15 | 90.723% | 39 | | 61.11% |
| 16 | 89.489% | 40 | | 59.87% |
| 17 | 88.255% | 41 | | 58.64% |
| 18 | 87.021% | 42 | | 57.40% |
| 19 | 85.787% | 43 | | 56.17% |
| 20 | 84.553% | 44 | | 54.94% |
| 21 | 83.319% | 45 | | 53.70% |
| 22 | 82.085% | 46 | | 52.47% |
| 23 | 80.851% | 47 | | 51.23% |
| 24 | 79.617% | 48 | & thereafter | 50.00% |

JHM initials

# DELIVERY & ACCEPTANCE

TOTAL Fleet Solutions

By signing this Certificate, you, the Customer identified below, agree:

A) That all of the Equipment referred to in Equipment Schedule No. 004 to Master Lease Agreement No. [redacted]409 (the "Lease"), has been delivered and received by Customer, and that any and all installation and setup has been completed. Customer has examined the Equipment and it in good operating condition and is satisfactory to Customer and Customer has accepted the Equipment.

B) As of the date this Delivery & Acceptance Certificate is received by lessor (the "Adjustment Date"), the payments due under the Lease shall be recalculated based upon increases in the swap rate for the Forty-Eight (48)-month rate as published in the ICE SWAP Rate Historical Rates table for the week ending immediately prior to the Adjustment Date (the "Swap Rate"). If, on the Adjustment Date, the Swap Rate is greater than at Lease signing, the payments due under the Lease shall be increased to reflect the actual rate. Thereafter, the payments shall remain fixed during the Term of the Lease.

C) The "Commencement Date" of the Lease will be the 1st of the month following the Acceptance Date.

D) That we, IEMFS, Ltd., are authorized to purchase the Equipment and start billing you under the Lease or rental agreement.

| | |
|---|---|
| Lease Number:<br>[redacted]409-004 | |
| Customer Name:<br>Champion Laboratories, Inc. | |
| Authorized Signature:<br>X [signature] GREG NORTHRICH | |
| Print Title:<br>President and CEO | Date:<br>12/5/18 |

**TOTAL Fleet Solutions**

## INVOICE

| | |
|---|---|
| **Invoice No.** | **165619** |
| Date | 12/5/2018 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| IEMFS DBA GSG Financial<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion AIR<br>301 Industrial Drive<br>Albion, IL 62806 |

Page 1 of 1

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 12/5/2018 | 10 days | 12/15/2018 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| Yale<br>Model: MRW030LEN<br>SN: B821N01524A<br><br>Used 2003 Yale Reach Truck | 1.00 | $13,715.00 | $13,715.00 |

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

| | |
|---|---|
| Sales Total | $13,715.00 |
| Tax Total | $0.00 |
| **Invoice Total** | **$13,715.00** |

3295 Levis Commons Blvd. Perrysburg, OH 43551
Phone (419) 868-8853 Fax #: (419) 868-8912
www.tfsglobal.com

TOTAL Fleet Solutions

## INVOICE

| | |
|---|---|
| Invoice No. | 157728 |
| Date | 10/30/2018 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| IEMFS DBA GSG Financial<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion AIR<br>301 Industrial Drive<br>Albion, IL 62806 |

Page 1 of 1

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 10/30/2018 | 10 days | 11/9/2018 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| Caterpillar<br>Model: NRP30<br>SN: 1NRP01247<br><br>Refurbished 2006 Walkie Reach Truck | 1.00 | $13,914.75 | $13,914.75 |

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

| | |
|---|---|
| Sales Total | $13,914.75 |
| Tax Total | $0.00 |
| Invoice Total | $13,914.75 |

TOTAL Fleet Solutions

**INVOICE**

| | |
|---|---|
| **Invoice No.** | **165650** |
| Date | 12/11/2018 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| IEMFS DBA GSG Financial<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion OIL<br>Attn: Accounts Payable<br>200 S. 4th Street<br>Albion, IL 62806 |

Page 1 of 1

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 12/11/2018 | 10 days | 12/21/2018 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| Yale<br>Model: ERC050VG<br>SN:<br>A968N19848S, A968N19830S, A968N19860S. A968N19862S,<br>A968N19836S, A968N19835S, A968N19910S A968N19891S.<br>A968N19892S, A968N19893S. A968N19895S,<br>A968N19837S, A968N19838S<br><br>Powerline<br>Model: 18-85F-23-600C16P33<br>SN: PL109181495 thru 1506, and PL109181508<br><br>LifePlus MOD3<br>Model: LPM3-48C-180Y<br>SN: QJ326146 thru 158 | 13.00 | $41,797.20 | $543,363.60 |

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

| | |
|---|---|
| Sales Total | $543,363.60 |
| Tax Total | $0.00 |
| **Invoice Total** | **$543,363.60** |

3295 Levis Commons Blvd. Perrysburg, OH 43551
Phone (419) 868-8853 Fax #: (419) 868-8912
www.tfsglobal.com

**TOTAL Fleet Solutions**

## INVOICE

| | |
|---|---|
| Invoice No. | 150908 |
| Date | 9/28/2018 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| IEMFS DBA GSG Financial<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Riverside CA<br>740 Palmyrita Ave. Suite A<br>Riverside, CA 92507 |

Page 1 of 1

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 9/28/2018 | 10 days | 10/8/2018 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| 2018 New Hawker Battery<br>Make: Hawker<br>Model 18-85-21<br>S/N: PL108181957 | 1.00 | $6,850.00 | $6,850.00 |

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

| | |
|---|---|
| Sales Total | $6,850.00 |
| Tax Total | $0.00 |
| **Invoice Total** | **$6,850.00** |

# BILL OF SALE

Re: Lease Agreement No. [redacted]409-004

Total Fleet Solutions, Ltd. (the "Seller"), for and in consideration of the payoff amount of $[redacted] does hereby release, transfer and assign to IEMFS, Ltd. dba GSG Financial (the "Purchaser"), all Seller's right, title and interest in and to the Equipment as listed below:

SEE ATTACHMENT A

TO HAVE AND TO HOLD, all and singular the Equipment by these present bargained, sold and confirmed unto Purchaser, its successors and assigns, forever.

AND, Seller, for itself, its successors and assigns, does hereby warrant to Purchaser, its successors and assigns, that at the time of this sale, Seller has neither caused nor suffered any liens, claims or encumbrances to be created by Seller against the Equipment.

The Equipment is transferred to Purchaser in "AS IS-WHERE IS" CONDITION AND SELLER MAKES NO OTHER REPRESENTATIONS OF WARRANTIES WITH RESPECT TO THE EQUIPMENT INCLUDING THOSE OF MERCANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

By its acceptance of the Equipment, Purchaser further agrees that it has paid or will pay any and all applicable sales, property, excise, use and privilege taxes that may be imposed on Purchaser or Seller by any Federal, State, City, County, or other governmental authority upon the transaction accomplished hereby or upon the ownership or use of the Equipment, and hereby agrees to indemnify and hold the Seller harmless from and against any and all claims and liabilities (including, without limitation, costs and expenses) for such taxes from the date of this Bill of Sale forward.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed it its name by an authorized officer as of December 5, 2018.

Total Fleet Solutions, Ltd.

By: ____________________

Name: Andrew Bender

Title: Vice President

## ATTACHMENT A

**LESSEE:** Champion Laboratories, Inc.

**LEASE NO.** [redacted]409-004

| QTY | DESCRIPTION | SERIAL # | LOCATION |
|---|---|---|---|
| 13 | Yale ERC050VG 4 Wheel Sitdown Forklift | A968N19830S<br>A968N19835S<br>A968N19836S<br>A968N19837S<br>A968N19838S<br>A968N19848S<br>A968N19860S<br>A968N19862S<br>A968N19891S<br>A968N19892S<br>A968N19893S<br>A968N19895S<br>A968N19910S | 200 South 4th Street, Albion, IL 62806 |
| 13 | Hawker 18-85F-23-600C16P33 36v Battery; SPW; Blinky Light | | 200 South 4th Street, Albion, IL 62806 |
| 13 | Hawker LPM3-48C-180Y Matching Charger | QJ326146<br>QJ326147<br>QJ326148<br>QJ326149<br>QJ326150<br>QJ326151<br>QJ326152<br>QJ326153<br>QJ326154<br>QJ326155<br>QJ326156<br>QJ326157<br>QJ326158 | 200 South 4th Street, Albion, IL 62806 |
| 1 | Hawker 18-85-21 Battery | PL108181957 | 740 Palmyrita Avenue, #A, Riverside, CA 92507 |
| 1 | Caterpillar NRP30 Walkie Stacker with Used Battery | 1NRP01247 | 301 Industrial Drive, Albion, IL 62806 |
| 1 | Yale MRW030LEN24TV083 Walkie Reach Stacker with New Battery | B821N01524A | 301 Industrial Drive, Albion, IL 62806 |

# RESIDUAL AGREEMENT

This Residual Agreement is entered into this 31st Day of December, 2018 by and between Kingsbridge Holdings, LLC ("Lessor") having a principal place of business at 150 N. Field Drive, Suite 193, Lake Forest, IL 60045 and IEMFS, Ltd. dba GSG Financial ("GSG") having a principal place of business at 53 West 36th Street, Suite 701, New York, NY 10018.

WHEREAS, on or about the date hereof, Lessor intends to purchase from GSG the Equipment subject to the lease schedules listed in Exhibit A attached hereto (the "Schedules") pursuant to a Purchase and Sale Agreement and Assignment of Lease dated on or hereabout the date hereof ("PSAAL"); and

WHEREAS, the Purchase Price of [redacted] as stated on the PSAAL includes (i) a cash payment to GSG of [redacted] (of this amount [redacted] represents Buyer's purchase of the Equipment ("Net Investment") and [redacted] represents Buyer's purchase of debt for the lease schedules identified in Exhibit A) plus (ii) the assumption of debt in the amount of [redacted] based on a closing date of December 31, 2018; and

WHEREAS, as an inducement for Lessor to purchase the Equipment set forth on the Schedules, and for the mutual benefit of Lessor and GSG, Lessor agrees to provide a share of the Lessee's Net Equipment Proceeds as defined in this Agreement to GSG.

NOW, THEREFORE, the parties hereto agree as follows:

1. Net Equipment Proceeds Sharing. After the expiration of the original term of the underlying Schedules, GSG or its designee will continue to invoice Lessee until notice of intent to return the Equipment has been received pursuant to the provisions of the applicable master lease or Schedules. Lessor's purchase of the Equipment and the Schedules is a part of a portfolio of twenty-two (22) Schedules to be purchased involving seven (7) different lessees (the "Portfolio"). It is anticipated that the total original equipment costs for the Equipment and the Schedules being purchased in this PSAAL together with the remaining three (3) lease schedules and equipment to be purchased as part of the Portfolio will have a total original equipment costs of [redacted] with Lessor's total purchase price for the Portfolio (not including its assumption of non-recourse debt) totaling [redacted] Lessor has agreed to the following sharing of the "Net Equipment Proceeds" based on an assumption that the Portfolio will be purchased in its entirety within thirty (30) days of the date hereof and with the total purchase price and total original equipment cost being as reflected above. In the event that there is a change in the Portfolio's total equipment cost or purchase price or a delay in purchasing the Portfolio beyond 30 days of the date hereof, the following Net Equipment Proceeds Sharing may be adjusted to reflect any changes or delays. With that assumption agreed to by the parties, it is hereby agreed under this PSAAL that Lessor will be entitled to receive a 10.757% return on its Net Investment as stated on the PSAAL for the first "Net Equipment Proceeds." "Net Equipment Proceeds" shall mean any amounts received from Lessee from any sale or lease or other disposition of the Equipment to Lessee after termination of the Initial Term (or after any extension of the Initial Term) of the Schedules in excess of the amounts payable under the Schedules. Once Lessor [redacted] purchase of the Net Equipment Proceeds, all Net Equipment Proceeds received thereafter, whether from Lessee or another entity, [redacted]SG shall obtain the written consent of Lessor prior to making any commitment on behalf of Lessor for Net Equipment Proceeds from the Lessee or another entity. Lessor shall be entitled to review and approve all documentation proposed to be executed to market the Equipment to Lessee or another entity and shall execute any and all necessary or advisable documents in such form as is acceptable to Lessor to consummate any marketing of the Equipment to Lessees or another entity. GSG shall also be entitled to reimbursement of all reasonable out-of-pocket costs and expenses (e.g., shipping, refurbishment, storage costs) incurred in connection with the continued administration, excluding general overhead or related commissions to its sales representatives. GSG shall not be required to file suit or otherwise commence legal action to collect amounts due.

2. Amendment. This Residual Agreement may not be modified or amended except by writing duly executed by the party to be charged.

3. Law. This Residual Agreement shall be governed by, construed in accordance with, and enforced under, the law of the State of Illinois applicable to agreements or instruments entered into and performed entirely within such State.

IN WITNESS WHEREOF, the undersigned have executed this Residual Agreement as of the date set forth above.

| **Kingsbridge Holdings, LLC** | **IEMFS, Ltd. dba GSG Financial** |
| --- | --- |
| By: ______________ | By: [signature] |
| Name: ______________ | Name: Katharine Harris<br>VP, Operations |
| Title: ______________ | Title: ______________ |

# PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASE

THIS PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASE ("Agreement") is made as of December 31, 2018 by and between IEMFS, Ltd. dba GSG Financial (hereinafter called "Seller") having its principal place of business at 53 West 36th Street, Suite 701, New York, NY 10018 and KINGSBRIDGE HOLDINGS, LLC (hereinafter "Buyer") having its offices at 150 N. Field Drive, Suite 193, Lake Forest, IL 60045.

<u>WITNESSETH:</u>

That in consideration of the mutual undertakings herein contained, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Sale of Equipment.</u> Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller, the Equipment subject to the leases listed in **Exhibit A** attached hereto at the Lessee's ("Lessee") installation address, plus all of Seller's rights related thereto including all warranties, rights under software licenses, if any, and contracts pertaining to the equipment and all insurance proceeds thereon, all other general intangibles related thereto, and all substitutions, upgrades and additions thereto (collectively, the "Equipment"), subject to any Permitted Encumbrances, as defined in Paragraph 3 below.

2. <u>Purchase Price.</u> The Purchase Price of the Equipment of [redacted] is the sum of (i) [redacted] which amount Buyer agrees to pay to Seller by wire transfer not later than December 31, 2018 (the amount of [redacted] is the sum of [redacted] which represents Buyer's purchase of the Equipment ("Net Investment") and [redacted] which represents Buyer's purchase of debt for lease schedules identified in Exhibit A), plus (ii) Buyer's assumption of non-recourse debt, based on a funding date of December 31, 2018, in the amount of [redacted]

3. <u>Delivery and Title.</u> Buyer hereby agrees to accept delivery of the Equipment at the facilities of the Lessees, as listed on **Exhibit A** (the "Lessee") at the locations set forth in **Exhibit B** hereto. Seller represents and warrants that Seller has good marketable title to the Equipment, free and clear of all liens, claims and encumbrances of any kind, except for: 1) the leasehold rights of the Lessee under the Lease, as defined below, and 2) the rights and interests conveyed and granted to the non-recourse debt holder (the "Senior Lenders") by and under that certain Specification to Master Assignment Agreement as listed in Exhibit A, (the "Initial Assignment") between Seller, as assignor, and Senior Lender, as assignee(s), regarding the Equipment and the Lease Schedule identified in Section 4 hereof (together, "Permitted Encumbrances").

4. <u>Assignment of Lease.</u>

Seller hereby unconditionally and irrevocably assigns and sets over unto Buyer, subject and subordinate to the Permitted Encumbrances and effective on the date of

payment by Buyer of the cash portion of the Purchase Price set forth in Section 2. (i) above, (i) all of its right, title and interest in, under and to Schedule Nos as listed on **Exhibit A** collectively, the "Lease Schedule") to the master lease agreements listed on Exhibit A (collectively the "Lease") between Seller and Lessee, and (ii) all of Seller's rights and interests in the Leases as it relates to the Lease Schedule and/or the Equipment thereunder, including all rents due January 1, 2019 and after, and other sums due and to become due thereunder after receipt by Senior Lender of all amounts due Senior Lender under the Lease Schedule by way of and in accordance with the terms of the Initial Assignment. All interim rentals accruing prior to the base term lease commencement date and base term rentals due prior to those which were assigned to Senior Lender shall be for the account of Seller. Seller agrees to promptly provide Buyer with a copy of all notices received from Lessee and/or any third party regarding the Equipment, including taxing authorities and any vendor or manufacturer of the Equipment. Seller further assigns and sets over to Buyer any and all rights to provide upgrades to the Equipment.

5. WARRANTY DISCLAIMER. **OTHER THAN AS SET FORTH IN THIS AGREEMENT OR IN ANY OTHER AGREEMENTS BETWEEN SELLER AND BUYER, SELLER DOES NOT WARRANT THE EQUIPMENT IN ANY RESPECT, EITHER EXPRESSLY OR BY IMPLICATION AND WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS OR ADEQUACY FOR ANY PURPOSE OR USE, QUALITY, PRODUCTIVENESS OR CAPACITY.** SELLER HEREBY ASSIGNS TO BUYER (TO THE EXTENT TO WHICH THE SAME MAY BE ASSIGNABLE AND SUBJECT TO THE PERMITTED ENCUMBRANCES) AND ENFORCE FOR BUYER'S BENEFIT (TO THE EXTENT NOT ASSIGNABLE PROVIDED THAT SELLER IS ENTITLED TO ENFORCE THE SAME FOR ITSELF), ANY WARRANTY OF THE MANUFACTURER RELATIVE TO THE EQUIPMENT AND AGREES TO EXECUTE SUCH DOCUMENTS AS SHALL BE NECESSARY TO EFFECTUATE SUCH ASSIGNMENT.

6. Representations of Seller. Seller hereby represents and warrants and Buyer may rely on the following:

(a) Seller will transfer good and marketable title in and to the Equipment, the Lease Schedule and the Lease as it relates thereto to Buyer, free and clear of any and all liens, claims or encumbrances, subject to Permitted Encumbrances, and upon delivery to Seller of the cash portion of the Purchase Price by Buyer, Seller will deliver to Buyer a Bill of Sale pertaining to the Equipment, free and clear of all liens, claims and encumbrances except for the rights of Lessee under the Lease Schedule and for Permitted Encumbrances, and a certified copy of the Lease and a copy of the Lease Schedule and other original documents pertaining thereto including, without limitation, all consents, waivers and any other written communications or correspondence.

(b) Seller is a duly organized and validly existing corporation in good standing under the laws of the State of Ohio and is duly qualified to do business in each

jurisdiction (including the jurisdiction where the Equipment is or is to be located) where its ownership or lease of property or the conduct of its business requires such qualification.

(c) The Lease and Lease Schedule have been duly executed and delivered, are in full force and effect, constitute the valid and binding obligation of Seller and of Lessee and are enforceable against Seller and the Lessee in accordance with the terms of the Lease and Lease Schedule (subject to laws of general application affecting creditors' rights) and no defaults or conditions which, with the passage of a cure period or giving of notice or both, would constitute defaults, exist thereunder or under the Initial Assignment documents by the Lessee or by Seller.

(d) Seller has the power and authority to enter into this Agreement and the Bill of Sale, and to carry out the transfer of the Equipment and Lease Schedule to Buyer and the other transactions contemplated hereunder, subject to the Permitted Encumbrances There is no action, suit or proceeding pending against Seller before or by any court, administrative agency or other governmental authority which brings into question the validity of, or might in any way impair, the execution, delivery or performance by Seller of this Agreement.

(e) The execution and delivery of this Agreement and the Bill of Sale by Seller and the performance by it of its obligations hereunder and thereunder have been duly authorized by all necessary corporate action of Seller and do not violate or conflict with (i) any provision of Seller's Certificate of Incorporation or By-Laws, (ii) any law or any order, writ, injunction, decree, rule or regulation of any court, administrative agency or any other governmental authority, or (iii) any agreement to which Seller is a party or by which Seller is bound.

(f) The making and performance by Seller of this Agreement and the Bill of Sale and the transactions contemplated therein do not conflict with and are not inconsistent with, and will not result (with or without the giving of notice or passage of time or both) in a breach of or constitute a default or require any consent under the terms of any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Seller is a party or by which Seller may be bound or to which it may be subject.

(g) The Lease and Lease Schedule have been duly executed and delivered by Seller and will, on the date of closing hereunder, be in full force and effect without any defenses or offsets; the Lease Schedule constitute a separately enforceable lease agreement and neither default, nor event which, but for the passing of a cure period or the giving of notice or both, would be a default, will then have occurred or be continuing under the terms of the Lease or Lease Schedule; the Equipment is located at the place designated in the Lease Schedule; and Seller warrants that (i) no prepayments of rent under the Lease Schedule have been made by Lessee and (ii) any payments received by Seller under the Lease Schedule which are not due Senior Lender, Seller or any applicable taxing authority or other party of interest under the Lease Schedule shall by

remitted immediately upon Seller's receipt to Buyer or, upon written directions from Buyer, to Buyer's assignee.

(h) This Agreement and the Bill of Sale have been duly authorized, executed and delivered by Seller and constitute the legal, valid and binding obligations of Seller enforceable in accordance with their terms.

(i) Seller has or will provide any and all notices and obtain any and all consents which may be necessary to the completion of the transaction contemplated hereby.

(j) All sales, use, property or other taxes, licenses, tolls, inspection or other fees, bonds, permits or certificates which were or may be required to be paid or obtained in connection with the acquisition by Seller of the Equipment, or the leasing thereof to Lessee prior to the sale to Buyer hereunder, have been, or will, when due, be paid in full or obtained.

(k) Seller represents and warrants that (i) all payments of installments of the firm, noncancelable rentals payable under the Lease Schedule are current and (ii) the rents payable under the Lease Schedule are not subject to any defenses, set-offs or counter-claims.

(l) No Event of Default or event which with the passing of time or the giving of notice, or both, would constitute an Event of Default has occurred under the Lease or the Lease Schedule.

(m) There are no agreements, leases, purchase options, liens or encumbrances known to Seller affecting the Equipment which are not disclosed in the Lease, in the Lease Schedule, in the documents by which Seller took title to the Equipment or in the Initial Assignment and/or other documents affecting the Equipment to which Seller is a party; and all such documents have been provided to Buyer.

(n) Any purchase options contained in the Lease or the Lease Schedule shall be a Fair Market Value purchase option, not a bargain payment, whether for renewal or purchase.

(o) If the terms of the Lease require Seller to provide notice to Lessee prior to the expiration of the initial term of the Lease Schedule or any extensions thereof, Seller shall be solely responsible for providing said notice to Lessee and hereby indemnifies Buyer for any loss, including inability to collect any rentals due pursuant to the terms of the Lease, whether arising before or after the expiration of the initial term, caused by Seller's failure to provide said notice on a timely basis.

7. <u>Representations and Warranties of Buyer.</u> Buyer hereby represents and warrants and Seller may rely on the following:

(a) Permitted Encumbrances. Buyer acknowledges and agrees that all of its rights and interests in and to a portion of the Equipment and the Lease Schedule conveyed hereby are subject and subordinate to the rights and interests of the Senior Lender pursuant to the Initial Assignment.

(b) Binding Obligation. Buyer has full power and authority to enter into this Agreement and to consummate the transactions contemplated herein. This Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate action of Buyer and this Agreement constitutes the legal, valid and binding obligations of Buyer enforceable in accordance with its terms.

(c) Inconsistent Agreements. The making and performance by Buyer of this Agreement and the transactions contemplated hereby do not contravene the Articles of Organization or Operating Agreement of Buyer or any provision of law applicable to Buyer and do not conflict and are not inconsistent with, and will not result (with or without the giving of notice or passage of a cure period or both) in a breach of or constitute a default or require any consent under the terms of any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Buyer is a party or by which Buyer may be bound or to which it may be subject.

8. Invoicing. Unless and until otherwise notified by Buyer and except as specifically provided in this Section 8, Seller shall have the obligation, at its expense, to bill for, collect, receive, and administer all payments due under the Lease Schedule, including, but not limited to, rent and sales/use tax payments on rent. Seller agrees to cause the Lessees to remit to Senior Lender (or as it shall direct) all amounts assigned to Senior Lender with respect to the Lease Schedule. With respect to personal property taxes, Buyer assumes responsibility for the filing and payment of such taxes to the appropriate taxing authorities and will promptly provide invoice copies to Seller to invoice Lessees for payment or reimbursement under Seller's name. Seller will bill, collect, and receive from Lessees all amounts payable or reimbursable from Lessees for personal property taxes and will promptly remit to Buyer all amounts collected or owed relating to the same. Notwithstanding the foregoing, Buyer may directly bill, collect, and receive all amounts payable or reimbursable from Lessees for personal property taxes if Seller fails to collect from Lessees and remit to Buyer the same within 30 days of Buyer's written request, provided that Buyer has given Seller a reasonable time to perform its obligations hereunder.

9. Miscellaneous.

(a) Survival. All representations, warranties and certifications made by Seller and Buyer shall survive the execution, delivery and performance of this Agreement and all other documents provided for herein.

(b) Successors and Assigns. This Agreement and all covenants and agreements contained herein as well as all other documents provided for herein shall be binding upon

and inure to the benefit of the parties hereto and their respective successors and assigns. The parties hereto agree that their respective successors and assigns any rely upon each and every representation, warranty, indemnification and covenant made herein and, if requested to do so, each party will acknowledge such reliance in writing to the successors or assigns of the other party.

(c) Indemnification.

(i) Seller shall indemnify and hold Buyer harmless from and against any and all loss, cost, damage, injury or expense (including court costs and reasonable attorneys' fees) wheresoever and howsoever arising which Buyer may incur by reason of any breach by Seller of any of its warranties, representations or obligations set forth herein, or in any documents executed in connection herewith. In addition, Seller shall indemnify and hold Buyer harmless from and against any and all loss, cost, penalty, damage, injury or expense (including court costs and reasonable attorneys' fees), arising from Seller, as opposed to Buyer, filing and paying all sales/use tax payments.

(ii) Buyer shall indemnify and hold Seller harmless from and against any and all loss, cost, damage, injury or expense (including court costs and reasonable attorneys' fees) wheresoever and howsoever arising which Seller may incur by reason of any breach by Buyer of any of its warranties, representations or obligations set forth herein, or in any documents executed in connection herewith.

(d) Captions. The captions appearing in this Agreement and in any other documents relating this transaction are inserted only as a matter of convenience and in no way define, limit, or describe the scope or intent of such sections or articles nor in any way effect this Agreement or any other documents relating to this transaction.

(e) Delivery of Documents; Further Instruments. Buyer's duty to pay the Purchase Price shall not arise until this Agreement is signed by the parties hereto, and Seller shall have delivered to Buyer the following documents acceptable to Buyer:

(i) certified true and correct photocopies of the applicable master lease agreements and the related transaction documents which directly relate to the subject Lease Schedule, including without limitation UCC-1 precautionary financing statements filed or to be filed by Seller against Lessee;

(ii) certified true and correct photocopies of the original Lease Schedule covering the Equipment;

(iii) all appropriate UCC-3 assignments of the UCC-1 precautionary financing statements filed by Seller against Lessee;

(iv) the original of this Agreement and the Bill of Sale covering the Equipment executed by Seller;

(v) original Acknowledgment of Assignment executed by Seller to be held in escrow provided that Buyer shall have the right, in its sole and

absolute discretion, to send the Acknowledgment of Assignment to the Lessee with respect to the Leases affected by such event if (a) there is any breach by Seller of any representation, warranty, covenant or agreement in this Agreement or other instrument, document or writing executed in connection therewith, or any other agreement entered into by Seller for the benefit of Buyer; (b) there is any bankruptcy (voluntary or involuntary), reorganization or similar proceeding commenced by or against Seller or Lessee; (c) there is any default by Lessee under the Leases; or (d) Buyer otherwise deems itself to be insecure for any reason whatsoever;

(vi) certificates of insurance naming Seller and its assigns as additional insured and loss payee and otherwise in compliance with the requirements of the Lease;

(vii) a manufacturer's invoice and a copy of the applicable purchase agreement, if any, and any other evidence deemed necessary by Buyer to determine the monies owed for the Equipment, if any (as applicable) all in form satisfactory to Buyer; and

The parties hereto hereby agree to execute and deliver, or cause to be executed and delivered, such further instruments or documents and take each other action as may be required effectively to carry out the transactions contemplated herein.

(f) Governing Law. The validity, interpretation and enforcement of this Agreement shall be governed by the laws of the State of Illinois (irrespective of such State's choice of law rules). Any claims or disputes regarding this Agreement, the Equipment or the Lease Schedule shall be heard in any state or federal court located in Illinois and the parties hereby consent to the exclusive personal jurisdiction of said court. The parties waive any defense based on forum non conveniens and waives trial by jury.

(g) Power of Attorney. Seller hereby appoints Buyer, and its assignees, as its true and lawful attorney in fact to use and/or endorse Seller's name in connection with solely in reference to the applicable master lease agreement and the related transaction documents which directly relate to the subject Lease Schedule:

(i) all checks related herein received by Buyer on which Seller's name appears;

(ii) the transfer of title to all Equipment;

(iii) if necessary, collection actions on the assigned interest, which collection actions shall at all times comply with all applicable laws and regulations;

(iv) the execution of documents necessary to change the designated loss payee, or endorsing checks or drafts representing payment of loss or refund of premiums under any insurance policy issued in connection with the assigned interest; and

(v) the execution of any uniform commercial code filings, including, without limitation, assignments of uniform commercial code filings against the obligors, which Buyer believes are necessary from time to time in order to carry out the purposes hereof and to protect Buyer's interest hereunder.

This power is coupled with an interest and is irrevocable. Seller hereby ratifies, to the extent permitted by law, all that Buyer shall lawfully and in good faith do or cause by reason of and in compliance with this section.

(g) Representations and Warranties. The only representations and warranties of Seller and Buyer are those contained in this Agreement.

**IN WITNESS WHEREOF,** and intending to be legally bound hereby, Seller and Buyer have caused this Agreement consisting of eight typewritten pages, not including the Exhibit A and B attached hereto, to be executed and do each hereby warrant and represent that their respective signatories whose signatures appear below have been and are on the date of this Agreement duly authorized by all necessary and appropriate action to execute this Agreement.

| SELLER: | BUYER: |
|---|---|
| **IEMFS, Ltd. dba GSG Financial** | **Kingsbridge Holdings, LLC** |
| By: ______________________ | By: ______________________ |
| Title: Katharine Harris, VP, Operations | Title: ______________________ |

# EXHIBIT A TO PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASES

**See attached Spreadsheet Marked Exhibit A**

# BILL OF SALE

In consideration of the receipt of Ten and no/100 Dollars ($10.00) received from **Kingsbridge Holdings, LLC** ("Buyer"), **IEMFS, Ltd. dba GSG Financial** ("Seller"), does, subject to the Permitted Encumbrances, hereby sell, transfer, convey, assign and set over to Buyer, all of Seller's right, title and interest in and to the equipment (excluding all items of software or non-hardware related changes which are listed on Exhibit A for identification purposes only) more particularly described in the attached Exhibit A (the "Equipment"), together with the Leases to which the Equipment is subject, including without limitation, all rents and all other sums of every kind and description due and to become due under the Lease which are not due Senior Lenders, Seller or any applicable taxing authority or other party of interest under the Lease Schedule, and, to the extent assignable, all service agreements and warranties of the manufacturers or suppliers of the Equipment applicable thereto.

Seller reserves a purchase money security interest in the Equipment, which will be fully satisfied by payment of the Sellers portion of the Purchase Price.

All capitalized terms used herein and not defined shall have the meanings ascribed to them in that certain Purchase and Sale Agreement and Assignment of Leases between Seller and Buyer (the "Purchase Agreement") pertaining to the Equipment.

Seller hereby represents and warrants to Buyer that on the date hereof. (i) subject and subordinate to the rights of the Senior Lender, Seller is the absolute owner of the Equipment, and has good and marketable title thereto, free and clear of any liens, claims, and encumbrances whatsoever, except with respect to the Equipment, the leasehold rights of the Lessee under the Lease and Permitted Encumbrances; (ii) subject and subordinate to the rights of the Senior Lender, Seller is the absolute owner of the Lease Schedule and has good and marketable title thereto, free and clear of any liens, claims, and encumbrances whatsoever except for Permitted Encumbrances, and (iii) upon payment by the Buyer the Sellers portion of the Purchase Price and Seller's receipt of said payment, duly executed by Buyer, Seller shall sell and convey to Buyer, and Buyer shall obtain, good and marketable title to the Equipment and Lease Schedule (including all rents and all other sums due and to become due under the Lease Schedule), free and clear of any liens, claims and encumbrances whatsoever, except for the Permitted Encumbrances and with respect to the Equipment, the leasehold rights of the Lessee under the Lease and Seller shall deliver this Bill of Sale to Buyer evidencing same; and (iv) Seller has the full right, power and authority to so sell, assign, convey and set over unto Buyer the Equipment and Leases, and to execute this Bill of Sale.

Seller agrees to defend Buyer's title to the Equipment and Lease against all liens, claims and encumbrances whatsoever (except the leasehold rights of the Lessee under the Lease

and Permitted Encumbrances), which Buyer deems to be adverse to its interest, of any person at any time claiming the same or any interest therein.

Seller further agrees to execute and deliver to Buyer such further documents and instruments reasonably required by Buyer for the better assuring, conveying and confirming unto Buyer, the Equipment and Lease as contemplated hereunder.

This Bill of Sale shall be binding upon Seller, its successors and assigns, and shall inure to the benefit of Buyer, its successors and assigns notwithstanding any actions of a Lessee or Senior Lender.

This Bill of Sale shall in all respects be governed and construed in accordance with the laws of the State Ohio.

IN WITNESS WHEREOF, Seller has executed this Bill of Sale as of December 31, 2018.

SELLER:

IEMFS, Ltd. dba GSG Financial

BY: ______________________

TITLE: Katharine Harris VP, Operations

Exhibit A to Bill of Sale

TOTAL Fleet Solutions
53 West 36th Street, Suite 701
New York, NY 10018
Telephone: 212.602.1183

# EQUIPMENT SCHEDULE

**Master Lease # [redacted]409**
**Schedule # 010**

This Equipment Schedule ("Schedule") is written in simple and easy-to-read language. Please read this Schedule thoroughly and feel free to ask us any questions you may have about it. The words YOU and YOUR refer to the Lessee. The words WE, US and OUR refer to the Lessor, IEMFS, Ltd., an Ohio Limited Liability Company.

## Master Lease Agreement

The Terms of the above Master Lease Agreement ("Master Agreement") are incorporated into and made a part of this Schedule as if set forth in full. This Schedule, and every other Schedule which incorporates terms from the Master Agreement, each are separate, assignable lease agreements, and not part of the Master Agreement. If there is any inconsistency between the terms of this Schedule and those of the Master Agreement, then this Schedule will control.

## Customer & Billing Contact Information

Lessee Full Legal Name
Champion Laboratories, Inc.

| Contact Person | Contact Phone No. | Federal Tax ID # | State of Org. |
|---|---|---|---|
| Dina Reid | 618-445-6011 | [redacted] | DE |

Company Address
200 South 4th Street, Albion, IL 62806

Equipment Location
See Equipment Schedule A

## Equipment Description

**Complete Equipment Location only if different from company address**

| Qty | Manufacturer | Model Number | Description | Serial Number | Total Number of Running Hours Per Year |
|---|---|---|---|---|---|
| | | | See Equipment Schedule A | | |

***Should Lessee exceed the expected number of running hours stated in this Equipment Schedule with respect to any unit, Lessee will pay an additional $2 per hour for such unit.***

## Term/Lease Payment Schedule

| Term | Security Deposit/Advance Payment | Lease End Purchase Option | Base Monthly Lease Payment* |
|---|---|---|---|
| (Months) 60 | ____ Security Deposit(s): ________<br>____ Advance Payment(s): ________ | X FMV (defined in Section 17)<br>____ $1.00 ____Other: | $478.33 (incl. sales tax)<br>* Plus Applicable Taxes—See Section 11 |

The first monthly payment will be due on the Commencement Date together with interim rent for the period between the Acceptance Date and the Commencement Date at the daily rate equal to 1/30th of the monthly rental. The Commencement Date shall be the first day of the month following the Acceptance Date, unless the Acceptance Date is the first day of the month, in which case the Commencement Date shall be the Acceptance Date. Additional monthly payments will be due on the same day of each following month. All payments and other amounts due or to become due at the time and in the amounts set forth in the Lease, unless otherwise notified, shall be remitted to us at: **IEMFS, Ltd., PO Box 87618, Department #2071, Chicago, IL 60680-0618.**

## Lessee Authorized Signature

**THIS LEASE MAY NOT BE CANCELED**

| Authorized Signature | Date | Print Name |
|---|---|---|
| X [signature] | 5/23/19 | **Greg Noethlich** |
| | Title: **President and CEO** | |

## Equipment Acceptance Certificate

You certify that all of the Equipment referred to in this Lease has been delivered and received by you, and that any and all installation and set up has been completed. You have examined the Equipment and it in good operating condition and is satisfactory to you and you have accepted the Equipment. This lease cannot be modified or rescinded except by a writing signed by you and us. As of the date an Equipment Acceptance Certificate is received by us (the "Adjustment Date"), the monthly payments due hereunder shall be recalculated based upon increases in the swap rate for the Sixty (60)-month rate as published in the ICE SWAP Rate Historical Rates table for the week ending immediately prior to the Adjustment Date (the "Swap Rate"). If, on the Adjustment Date, the Swap Rate is greater than at Lease signing, the monthly payments due hereunder shall be increased to reflect the actual rate. Thereafter, the monthly payments shall remain fixed during the Term hereof. **ACCORDINGLY YOU AUTHORIZE US TO PURCHASE THE EQUIPMENT FOR YOUR USE. The "Commencement Date" of this lease will be the 1st of the month following the Acceptance Date.**

## Lessee Authorized Signature

**THIS LEASE MAY NOT BE CANCELED**

| Authorized Signature | Acceptance Date | Print Name |
|---|---|---|
| X [signature] | 5/23/19 | **Greg Noethlich** |
| | Title: **President and CEO** | |

## Accepted by IEMFS, Ltd., Lessor

| Authorized Signature | Date |
|---|---|
| X [signature] | 6/25/19 |



EXHIBIT 7

EQUIPMENT SCHEDULE A
to Equipment Schedule No. 010 to Master Lease Agreement No. [redacted]409

| Address | Year | Qty | Make | Model | Type | Serial Number | Additional Specs | Current Hours | Total Number of Running Hours Per Year |
|---|---|---|---|---|---|---|---|---|---|
| 200 South 4th Street, Albion, IL 62806 | 2016 | 1 | Toyota | 8FGCU25 | Used 5000 Lbs Forklift | | Bottom Box Dumper, Side Shift | 7,817 | 1,000 |

Should Lessee exceed the total number of running hours per year stated in this Equipment Schedule A with respect to any unit , Lessee will pay us additional rent equal to $2/hour.

**LESSEE:** **Champion Laboratories, Inc.**

X ______________________

**TITLE:** **President and CEO**

# DELIVERY & ACCEPTANCE

OnPoint Capital, LLC • 53 West 36th Street, Suite 701, New York, NY 10018
Telephone: 212.602.1183

## By signing this Certificate, you, the Customer identified below, agree:

A) That all of the Equipment referred to in Equipment Schedule No. 010 to Master Lease Agreement No. [redacted]409 (the "Lease"), has been delivered and received by Customer, and that any and all installation and setup has been completed. Customer has examined the Equipment and it in good operating condition and is satisfactory to Customer and Customer has accepted the Equipment.

B) As of the date this Delivery & Acceptance Certificate is received by lessor (the "Adjustment Date"), the monthly payments due under the Lease shall be recalculated based upon increases in the swap rate for the Sixty (60)-month rate as published in the ICE SWAP Rate Historical Rates table for the week ending immediately prior to the Adjustment Date (the "Swap Rate"). If, on the Adjustment Date, the Swap Rate is greater than at Lease signing, the monthly payments due under the Lease shall be increased to reflect the actual rate. Thereafter, the monthly payments shall remain fixed during the Term of the Lease.

C) The "Commencement Date" of the Lease will be the 1st of the month following the Acceptance Date.

D) That we, OnPoint Capital, LLC, are authorized to purchase the Equipment and start billing you under the Lease or rental agreement.

| | |
|---|---|
| Lease Number:<br>[redacted]409-010 | |
| Customer Name:<br>Champion Laboratories, Inc. | |
| Authorized Signature:<br>X | |
| Print Title:<br>President and CEO | Acceptance Date:<br>6/20/2019 |

TFS
AN ONPOINT COMPANY
3295 Levis Commons Blvd.
Perrysburg, OH 43551

# INVOICE

| | |
|---|---|
| **Invoice No.** | **224857** |
| Date | 6/25/2019 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| OnPoint Capital, LLC<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion OIL<br>Attn: Accounts Payable<br>200 S. 4th Street<br>Albion, IL 62806 |

Page 1 of 1

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 6/25/2019 | 10 days | 7/5/2019 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| Toyota<br>Model: 8FGCU25<br>SN: 79318<br><br>2016 Toyota Lift Truck with New Box Dumper Attachment | 1.00 | $25,706.00 | $25,706.00 |

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

| | |
|---|---|
| Sales Total | $25,706.00 |
| Tax Total | $0.00 |
| **Invoice Total** | **$25,706.00** |

**BILL OF SALE**

Re: Lease Agreement No. [redacted]409-010

TFS, Ltd. (the "Seller"), for and in consideration of the payoff amount of [redacted] does hereby release, transfer and assign to OnPoint Capital, LLC (the "Purchaser"), all Seller's right, title and interest in and to the Equipment as listed below:

1 Toyota 8FGCU25 5000# Forklift with S/N 79318

TO HAVE AND TO HOLD, all and singular the Equipment by these present bargained, sold and confirmed unto Purchaser, its successors and assigns, forever.

AND, Seller, for itself, its successors and assigns, does hereby warrant to Purchaser, its successors and assigns, that at the time of this sale, Seller has neither caused nor suffered any liens, claims or encumbrances to be created by Seller against the Equipment.

The Equipment is transferred to Purchaser in "AS IS-WHERE IS" CONDITION AND SELLER MAKES NO OTHER REPRESENTATIONS OF WARRANTIES WITH RESPECT TO THE EQUIPMENT INCLUDING THOSE OF MERCANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

By its acceptance of the Equipment, Purchaser further agrees that it has paid or will pay any and all applicable sales, property, excise, use and privilege taxes that may be imposed on Purchaser or Seller by any Federal, State, City, County, or other governmental authority upon the transaction accomplished hereby or upon the ownership or use of the Equipment, and hereby agrees to indemnify and hold the Seller harmless from and against any and all claims and liabilities (including, without limitation, costs and expenses) for such taxes from the date of this Bill of Sale forward.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed it its name by an authorized officer as of June 20, 2019.

TFS, Ltd.

By: ____________________

Name: Andrew Bender

Title: Vice President

ONPOINT
CAPITAL

Date: June 28, 2019

ORIGINAL

To: Champion Laboratories, Inc.
200 South 4th Street
Albion, IL, 62806

RE: Sale and Assignment of Equipment Schedule No. 010 to Master Lease Agreement No. [redacted]409 dated as of November 28, 2017 (the "Lease") between Champion Laboratories, Inc. ("Lessee") and OnPoint Capital, LLC ("Lessor").

Dear Sirs:

This letter will serve as notice that effective as of the date hereof the Lease has been sold and assigned and the equipment listed on the Lease ("Equipment") has been sold to Kingsbridge Holdings, LLC, 150 North Field Drive, #193, Lake Forest, IL 60045 ("Kingsbridge").

All payments due under the Lease are the firm, fixed payments due under the Lease and are not subject to any adjustment or abatement; and that Lessee's obligation to make the payments to Kingsbridge is absolute and unconditional, and Lessee will continue to pay to OnPoint Capital, LLC all payments at Fifth Third Bank N.A., Department #2071, PO Box #87618, Chicago, IL 60680 without regard to, and shall not assert against Kingsbridge, any claim, defense, counterclaim, recoupment, setoff or right to cancel or terminate the Lease which Lessee may have against Lessor or any other party.

Nothing herein shall be deemed to relieve Lessor of any of its obligations under the Lease. Lessee hereby expressly waives any right it may have to terminate the Lease.

**OnPoint Capital, LLC**

By ______________________

Name: Katharine Harris

Title: VP, Operations

Date: 6/28/19

53 W 36th Street, Suite 701
New York, NY 10018

T 212.602.1183 • www.onpointgroup.com

ORIGINAL

# PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASE

THIS PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASE ("Agreement") is made as of June 28, 2019 by and between OnPoint Capital, LLC (hereinafter called "Seller") having its principal place of business at 53 West 36th Street, Suite 701, New York, NY 10018 and KINGSBRIDGE HOLDINGS, LLC (hereinafter "Buyer") having its offices at 150 N. Field Drive, Suite 193, Lake Forest, IL 60045.

WITNESSETH:

That in consideration of the mutual undertakings herein contained, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Sale of Equipment. Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller, the Equipment subject to the leases listed in **Exhibit A** attached hereto at the Lessee's ("Lessee") installation address, plus all of Seller's rights related thereto including all warranties, rights under software licenses, if any, and contracts pertaining to the equipment and all insurance proceeds thereon, all other general intangibles related thereto, and all substitutions, upgrades and additions thereto (collectively, the "Equipment"), subject to any Permitted Encumbrances, as defined in Paragraph 3 below.

2. Purchase Price. The Purchase Price of the Equipment of [redacted] is the sum of (i) [redacted] which amount Buyer agrees to pay to Seller by wire transfer not later than June 28, 2019 which represents Buyer's purchase of the Equipment ("Net Investment"), plus (ii) Buyer's assumption of the stream of payments, based on a funding date of June 28, 2019, in the amount of $[redacted].

3. Delivery and Title. Buyer hereby agrees to accept delivery of the Equipment at the facilities of the Lessees, as listed on **Exhibit A** (the "Lessee") at the locations set forth in **Exhibit B** hereto. Seller represents and warrants that Seller has good marketable title to the Equipment, free and clear of all liens, claims and encumbrances of any kind, except for: 1) the leasehold rights of the Lessee under the Lease, as defined below, and 2) the rights and interests conveyed and granted to the discounted stream of payments owner (the "Senior Lenders") by and under that certain Specification to Master Assignment Agreement as listed in Exhibit A, (the "Initial Assignment") between Seller, as assignor, and Senior Lender, as assignee(s), regarding the Equipment and the Lease Schedule identified in Section 4 hereof (together, "Permitted Encumbrances").

4. Assignment of Lease.

Seller hereby unconditionally and irrevocably assigns and sets over unto Buyer, subject and subordinate to the Permitted Encumbrances and effective on the date of payment by Buyer of the cash portion of the Purchase Price set forth in Section 2. (i) above, (i) all of its right, title and interest in, under and to Schedule Nos as listed on

EXHIBIT 8

ORIGINAL

**Exhibit A** collectively, the "Lease Schedule") to the master lease agreements listed on Exhibit A (collectively the "Lease") between Seller and Lessee, and (ii) all of Seller's rights and interests in the Leases as it relates to the Lease Schedule and/or the Equipment thereunder, including all rents assumed per the dates as listed on the Exhibit A and after, and other sums due and to become due thereunder after receipt by Senior Lender of all amounts due Senior Lender under the Lease Schedule by way of and in accordance with the terms of the Initial Assignment. All interim rentals accruing prior to the base term lease commencement date and base term rentals due prior to those which were assigned to Senior Lender shall be for the account of Seller. Seller agrees to promptly provide Buyer with a copy of all notices received from Lessee and/or any third party regarding the Equipment, including taxing authorities and any vendor or manufacturer of the Equipment. Seller further assigns and sets over to Buyer any and all rights to provide upgrades to the Equipment.

Notwithstanding any other provision of this Agreement to the contrary, Buyer grants to Seller the right to receive the final 3 rental payments relating to the initial 60 month term (in the amount of $11,666.24 each) of Cooperfriedman Electric Supply Co., Inc. Equipment Schedule 33481-001. This grant does not create (1) any security interest in any of the Equipment Schedules and/or Leases and/or Equipment thereunder or (2) any interest and/or right to receive any payments made by Cooperfriedman Electric Supply Co., Inc. after the expiration of the initial 60 month lease term of above referenced Equipment Schedule 33481-001.

5. <u>WARRANTY DISCLAIMER.</u> **OTHER THAN AS SET FORTH IN THIS AGREEMENT OR IN ANY OTHER AGREEMENTS BETWEEN SELLER AND BUYER, SELLER DOES NOT WARRANT THE EQUIPMENT IN ANY RESPECT, EITHER EXPRESSLY OR BY IMPLICATION AND WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS OR ADEQUACY FOR ANY PURPOSE OR USE, QUALITY, PRODUCTIVENESS OR CAPACITY.** SELLER HEREBY ASSIGNS TO BUYER (TO THE EXTENT TO WHICH THE SAME MAY BE ASSIGNABLE AND SUBJECT TO THE PERMITTED ENCUMBRANCES) AND ENFORCE FOR BUYER'S BENEFIT (TO THE EXTENT NOT ASSIGNABLE PROVIDED THAT SELLER IS ENTITLED TO ENFORCE THE SAME FOR ITSELF), ANY WARRANTY OF THE MANUFACTURER RELATIVE TO THE EQUIPMENT AND AGREES TO EXECUTE SUCH DOCUMENTS AS SHALL BE NECESSARY TO EFFECTUATE SUCH ASSIGNMENT.

6. <u>Representations of Seller.</u> Seller hereby represents and warrants and Buyer may rely on the following:

(a) Seller will transfer good and marketable title in and to the Equipment, the Lease Schedule and the Lease as it relates thereto to Buyer, free and clear of any and all liens, claims or encumbrances, subject to Permitted Encumbrances, and upon delivery to Seller of the cash portion of the Purchase Price by Buyer, Seller will deliver to Buyer a

ORIGINAL

Bill of Sale pertaining to the Equipment, free and clear of all liens, claims and encumbrances except for the rights of Lessee under the Lease Schedule and for Permitted Encumbrances, and a certified copy of the Lease and a copy of the Lease Schedule and other original documents pertaining thereto including, without limitation, all consents, waivers and any other written communications or correspondence.

(b) Seller is a duly organized and validly existing corporation in good standing under the laws of the State of Ohio and is duly qualified to do business in each jurisdiction (including the jurisdiction where the Equipment is or is to be located) where its ownership or lease of property or the conduct of its business requires such qualification.

(c) The Lease and Lease Schedule have been duly executed and delivered, are in full force and effect, constitute the valid and binding obligation of Seller and of Lessee and are enforceable against Seller and the Lessee in accordance with the terms of the Lease and Lease Schedule (subject to laws of general application affecting creditors' rights) and no defaults or conditions which, with the passage of a cure period or giving of notice or both, would constitute defaults, exist thereunder or under the Initial Assignment documents by the Lessee or by Seller.

(d) Seller has the power and authority to enter into this Agreement and the Bill of Sale, and to carry out the transfer of the Equipment and Lease Schedule to Buyer and the other transactions contemplated hereunder, subject to the Permitted Encumbrances There is no action, suit or proceeding pending against Seller before or by any court, administrative agency or other governmental authority which brings into question the validity of, or might in any way impair, the execution, delivery or performance by Seller of this Agreement.

(e) The execution and delivery of this Agreement and the Bill of Sale by Seller and the performance by it of its obligations hereunder and thereunder have been duly authorized by all necessary corporate action of Seller and do not violate or conflict with (i) any provision of Seller's Certificate of Incorporation or By-Laws, (ii) any law or any order, writ, injunction, decree, rule or regulation of any court, administrative agency or any other governmental authority, or (iii) any agreement to which Seller is a party or by which Seller is bound.

(f) The making and performance by Seller of this Agreement and the Bill of Sale and the transactions contemplated therein do not conflict with and are not inconsistent with, and will not result (with or without the giving of notice or passage of time or both) in a breach of or constitute a default or require any consent under the terms of any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Seller is a party or by which Seller may be bound or to which it may be subject.

(g) The Lease and Lease Schedule have been duly executed and delivered by Seller and will, on the date of closing hereunder, be in full force and effect without any

ORIGINAL

defenses or offsets; the Lease Schedule constitute a separately enforceable lease agreement and neither default, nor event which, but for the passing of a cure period or the giving of notice or both, would be a default, will then have occurred or be continuing under the terms of the Lease or Lease Schedule; the Equipment is located at the place designated in the Lease Schedule; and Seller warrants that (i) no prepayments of rent under the Lease Schedule have been made by Lessee and (ii) any payments received by Seller under the Lease Schedule which are not due Senior Lender, Seller or any applicable taxing authority or other party of interest under the Lease Schedule shall by remitted immediately upon Seller's receipt to Buyer or, upon written directions from Buyer, to Buyer's assignee.

(h) This Agreement and the Bill of Sale have been duly authorized, executed and delivered by Seller and constitute the legal, valid and binding obligations of Seller enforceable in accordance with their terms.

(i) Seller has or will provide any and all notices and obtain any and all consents which may be necessary to the completion of the transaction contemplated hereby.

(j) All sales, use, property or other taxes, licenses, tolls, inspection or other fees, bonds, permits or certificates which were or may be required to be paid or obtained in connection with the acquisition by Seller of the Equipment, or the leasing thereof to Lessee prior to the sale to Buyer hereunder, have been, or will, when due, be paid in full or obtained.

(k) Seller represents and warrants that (i) all payments of installments of the firm, noncancelable rentals payable under the Lease Schedule are current and (ii) the rents payable under the Lease Schedule are not subject to any defenses, set-offs or counter-claims.

(l) No Event of Default or event which with the passing of time or the giving of notice, or both, would constitute an Event of Default has occurred under the Lease or the Lease Schedule.

(m) There are no agreements, leases, purchase options, liens or encumbrances known to Seller affecting the Equipment which are not disclosed in the Lease, in the Lease Schedule, in the documents by which Seller took title to the Equipment or in the Initial Assignment and/or other documents affecting the Equipment to which Seller is a party; and all such documents have been provided to Buyer.

(n) Any purchase options contained in the Lease or the Lease Schedule shall be a Fair Market Value purchase option, not a bargain payment, whether for renewal or purchase.

(o) If the terms of the Lease require Seller to provide notice to Lessee prior to the expiration of the initial term of the Lease Schedule or any extensions thereof, Seller shall be solely responsible for providing said notice to Lessee and hereby indemnifies Buyer

ORIGINAL

for any loss, including inability to collect any rentals due pursuant to the terms of the Lease, whether arising before or after the expiration of the initial term, caused by Seller's failure to provide said notice on a timely basis.

7. Representations and Warranties of Buyer. Buyer hereby represents and warrants and Seller may rely on the following:

(a) Permitted Encumbrances. Buyer acknowledges and agrees that all of its rights and interests in and to a portion of the Equipment and the Lease Schedule conveyed hereby are subject and subordinate to the rights and interests of the Senior Lender pursuant to the Initial Assignment.

(b) Binding Obligation. Buyer has full power and authority to enter into this Agreement and to consummate the transactions contemplated herein. This Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate action of Buyer and this Agreement constitutes the legal, valid and binding obligations of Buyer enforceable in accordance with its terms.

(c) Inconsistent Agreements. The making and performance by Buyer of this Agreement and the transactions contemplated hereby do not contravene the Articles of Organization or Operating Agreement of Buyer or any provision of law applicable to Buyer and do not conflict and are not inconsistent with, and will not result (with or without the giving of notice or passage of a cure period or both) in a breach of or constitute a default or require any consent under the terms of any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Buyer is a party or by which Buyer may be bound or to which it may be subject.

8. Invoicing. Unless and until otherwise notified by Buyer and except as specifically provided in this Section 8, Seller shall have the obligation, at its expense, to bill for, collect, receive, and administer all payments due under the Lease Schedule, including, but not limited to, rent and sales/use tax payments on rent. Seller agrees to cause the Lessees to remit to Senior Lender (or as it shall direct) all amounts assigned to Senior Lender with respect to the Lease Schedule. With respect to personal property taxes, Buyer assumes responsibility for the filing and payment of such taxes to the appropriate taxing authorities and will promptly provide invoice copies to Seller to invoice Lessees for payment or reimbursement under Seller's name. Seller will bill, collect, and receive from Lessees all amounts payable or reimbursable from Lessees for personal property taxes and will promptly remit to Buyer all amounts collected or owed relating to the same. Notwithstanding the foregoing, Buyer may directly bill, collect, and receive all amounts payable or reimbursable from Lessees for personal property taxes if Seller fails to collect from Lessees and remit to Buyer the same within 30 days of Buyer's written request, provided that Buyer has given Seller a reasonable time to perform its obligations hereunder.

9. Miscellaneous.

ORIGINAL

(a) Survival. All representations, warranties and certifications made by Seller and Buyer shall survive the execution, delivery and performance of this Agreement and all other documents provided for herein.

(b) Successors and Assigns. This Agreement and all covenants and agreements contained herein as well as all other documents provided for herein shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. The parties hereto agree that their respective successors and assigns any rely upon each and every representation, warranty, indemnification and covenant made herein and, if requested to do so, each party will acknowledge such reliance in writing to the successors or assigns of the other party.

(c) Indemnification.

(i) Seller shall indemnify and hold Buyer harmless from and against any and all loss, cost, damage, injury or expense (including court costs and reasonable attorneys' fees) wheresoever and howsoever arising which Buyer may incur by reason of any breach by Seller of any of its warranties, representations or obligations set forth herein, or in any documents executed in connection herewith. In addition, Seller shall indemnify and hold Buyer harmless from and against any and all loss, cost, penalty, damage, injury or expense (including court costs and reasonable attorneys' fees), arising from Seller, as opposed to Buyer, filing and paying all sales/use tax payments.

(ii) Buyer shall indemnify and hold Seller harmless from and against any and all loss, cost, damage, injury or expense (including court costs and reasonable attorneys' fees) wheresoever and howsoever arising which Seller may incur by reason of any breach by Buyer of any of its warranties, representations or obligations set forth herein, or in any documents executed in connection herewith.

(d) Captions. The captions appearing in this Agreement and in any other documents relating this transaction are inserted only as a matter of convenience and in no way define, limit, or describe the scope or intent of such sections or articles nor in any way effect this Agreement or any other documents relating to this transaction.

(e) Delivery of Documents; Further Instruments. Buyer's duty to pay the Purchase Price shall not arise until this Agreement is signed by the parties hereto, and Seller shall have delivered to Buyer the following documents acceptable to Buyer:

(i) certified true and correct photocopies of the applicable master lease agreements and the related transaction documents which directly relate to the subject Lease Schedule, including without limitation UCC-1 precautionary financing statements filed or to be filed by Seller against Lessee;

(ii) certified true and correct photocopies of the original Lease Schedule covering the Equipment;

ORIGINAL

(iii) all appropriate UCC-3 assignments of the UCC-1 precautionary financing statements filed by Seller against Lessee;

(iv) the original of this Agreement and the Bill of Sale covering the Equipment executed by Seller;

(v) original Acknowledgment of Assignment executed by Seller to be held in escrow provided that Buyer shall have the right, in its sole and absolute discretion, to send the Acknowledgment of Assignment to the Lessee with respect to the Leases affected by such event if (a) there is any breach by Seller of any representation, warranty, covenant or agreement in this Agreement or other instrument, document or writing executed in connection therewith, or any other agreement entered into by Seller for the benefit of Buyer; (b) there is any bankruptcy (voluntary or involuntary), reorganization or similar proceeding commenced by or against Seller or Lessee; (c) there is any default by Lessee under the Leases; or (d) Buyer otherwise deems itself to be insecure for any reason whatsoever;

(vi) certificates of insurance naming Seller and its assigns as additional insured and loss payee and otherwise in compliance with the requirements of the Lease;

(vii) a manufacturer's invoice and a copy of the applicable purchase agreement, if any, and any other evidence deemed necessary by Buyer to determine the monies owed for the Equipment, if any (as applicable) all in form satisfactory to Buyer; and

The parties hereto hereby agree to execute and deliver, or cause to be executed and delivered, such further instruments or documents and take each other action as may be required effectively to carry out the transactions contemplated herein.

(f) Governing Law. The validity, interpretation and enforcement of this Agreement shall be governed by the laws of the State of Illinois (irrespective of such State's choice of law rules). Any claims or disputes regarding this Agreement, the Equipment or the Lease Schedule shall be heard in any state or federal court located in Illinois and the parties hereby consent to the exclusive personal jurisdiction of said court. The parties waive any defense based on forum non conveniens and waives trial by jury.

(g) Power of Attorney. Seller hereby appoints Buyer, and its assignees, as its true and lawful attorney in fact to use and/or endorse Seller's name in connection with solely in reference to the applicable master lease agreement and the related transaction documents which directly relate to the subject Lease Schedule:

(i) all checks related herein received by Buyer on which Seller's name appears;

(ii) the transfer of title to all Equipment;

ORIGINAL

(iii) if necessary, collection actions on the assigned interest, which collection actions shall at all times comply with all applicable laws and regulations;

(iv) the execution of documents necessary to change the designated loss payee, or endorsing checks or drafts representing payment of loss or refund of premiums under any insurance policy issued in connection with the assigned interest; and

(v) the execution of any uniform commercial code filings, including, without limitation, assignments of uniform commercial code filings against the obligors, which Buyer believes are necessary from time to time in order to carry out the purposes hereof and to protect Buyer's interest hereunder.

This power is coupled with an interest and is irrevocable. Seller hereby ratifies, to the extent permitted by law, all that Buyer shall lawfully and in good faith do or cause by reason of and in compliance with this section.

(g) Representations and Warranties. The only representations and warranties of Seller and Buyer are those contained in this Agreement.

**IN WITNESS WHEREOF,** and intending to be legally bound hereby, Seller and Buyer have caused this Agreement consisting of eight typewritten pages, not including the Exhibit A and B attached hereto, to be executed and do each hereby warrant and represent that their respective signatories whose signatures appear below have been and are on the date of this Agreement duly authorized by all necessary and appropriate action to execute this Agreement.

SELLER:

**OnPoint Capital, LLC**

By:____________________________

Katharine Harris
VP, Operations

Title:____________________________

BUYER:

**Kingsbridge Holdings, ~~LLC~~**

By:____________________________

John M. Morand

Title:____________________________

Co-Chief Executive Officer

ORIGINAL

# EXHIBIT A TO PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASES

**See attached Spreadsheet Marked Exhibit A**

**EXHIBIT A**

| Lessee | Schedule # | Frequency | Start Date | Maturity Date | Last Payment Date | Term | Pmts Received | Pmts Remaining | 1st Pmt Purchased | OEC | Rent | Debt Rate | Debt Funding source | GROSS PURCHASE PRICE | PV of Stream of Payments Assumed (7/19/2019) | OnPoint Held Payments (3 mo Cooperfriedman) | PV of Residual | TOTAL CASH PURCHASE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [redacted] | | | | | | | | | | | | | | | | | | |
| Champion Laboratories, Inc. | 32409-010 | Monthly | 7/1/2019 | 7/1/2024 | 6/1/2024 | 60 | 1 | 59 | 8/1/2019 | $27,569.68 | $ 478.33 | 7.980% | NEC | $ 28,194.14 | $ 23,367.72 | | [redacted] | |
| [redacted] | | | | | | | | | | | | | | | | | | |

[redacted]

ONPOINT CAPITAL

ONPOINT CAPITAL, LLC
53 W 36th Street, Suite 701
New York, NY 10018
Phone: 212-602-1183

# EQUIPMENT SCHEDULE

Master Lease #[redacted]409
Schedule #011

Dear Customer: This Equipment Schedule ("Schedule") is written in simple and easy-to-read language. Please read this Schedule thoroughly and feel free to ask us any questions you may have about it. The words **YOU** and **YOUR** refer to the Lessee. The words **WE**, **US** and **OUR** refer to the Lessor, OnPoint Capital, LLC an Ohio limited liability company.

## Master Lease Agreement

The Terms of the above Master Lease Agreement ("Master Agreement") are incorporated into and made a part of this Schedule as if set forth in full. This Schedule, and every other Schedule which incorporates terms from the Master Agreement, each are separate, assignable lease agreements, and not part of the Master Agreement. If there is any inconsistency between the terms of this Schedule and those of the Master Agreement, then this Schedule will control.

## Customer & Billing Contact Information

Lessee Full Legal Name
Champion Laboratories, Inc.

| Contact Person | Contact Phone No. | Federal Tax ID # | State of Org. |
|---|---|---|---|
| Dina Reid | 618-445-6011 | [redacted] | DE |

Company Address
200 South 4th Street, Albion, IL 62806

Equipment Location
SEE EQUIPMENT SCHEDULE A

## Equipment Description

| Qty | Manufacturer | Model Number | Description | Serial Number | Maximum Annual Usage |
|---|---|---|---|---|---|
| | | | SEE EQUIPMENT SCHEDULE A | | |

***Should Lessee exceed the expected number of running hours stated in this Equipment Schedule with respect to any unit, Lessee will pay an additional $2 per hour for such unit.***

## Term/Lease Payment Schedule

| Term (Months) | Security Deposit/Advance Payment | Lease End Purchase Option | Base Monthly Lease Payment* |
|---|---|---|---|
| 48 | ☐ Security Deposit(s): n/a<br>☐ Advance Payment(s): n/a | ☒ FMV (defined in Section 17)<br>☐ $1.00 ☐ Other: n/a | $196.27 (incl. sales tax)<br>* Plus Applicable Taxes—See Section 11 |

The first monthly payment will be due on the Commencement Date together with interim rent for the period between the Acceptance Date and the Commencement Date at the daily rate equal to 1/30th of the monthly rental. The Commencement Date shall be the first day of the month following the Acceptance Date, unless the Acceptance Date is the first day of the month, in which case the Commencement Date shall be the Acceptance Date. Additional monthly payments will be due on the same day of each following month. All payments and other amounts due or to become due at the time and in the amounts set forth in the Lease, unless otherwise notified, shall be remitted to us at **OnPoint Capital, LLC, PO Box 87618, Department #2071, Chicago, IL 60680-0618.**

## Lessee Authorized Signature

**THIS LEASE MAY NOT BE CANCELED**

| Champion Laboratories, Inc. Authorized Signature | Date: | Print Name: |
|---|---|---|
| X [signature] | 6/20/19 | **Greg Noethlich** |
| | Title: **President and CEO** | |

## Equipment Acceptance Certificate

You certify that all of the Equipment referred to in this Lease has been delivered and received by you, and that any and all installation and set up has been completed. You have examined the Equipment and it in good operating condition and is satisfactory to you and you have accepted the Equipment. This lease cannot be modified or rescinded except by a writing signed by you and us. As of the date an Equipment Acceptance Certificate is received by us (the "Adjustment Date"), the monthly payments due hereunder shall be recalculated based upon increases in the swap rate for the Forty-Eight (48)-month rate as published in the ICE SWAP Rate Historical Rates table for the week ending immediately prior to the Adjustment Date (the "Swap Rate"). If, on the Adjustment Date, the Swap Rate is greater than at Lease signing, the monthly payments due hereunder shall be increased to reflect the actual rate. Thereafter, the monthly payments shall remain fixed during the Term hereof. **ACCORDINGLY YOU AUTHORIZE US TO PURCHASE THE EQUIPMENT FOR YOUR USE. The "Commencement Date" of this lease will be the 1st of the month following the Acceptance Date.**

## Lessee Authorized Signature

**THIS LEASE MAY NOT BE CANCELED**

| Champion Laboratories, Inc. Authorized Signature | Acceptance Date: | Print Name: |
|---|---|---|
| X [signature] | 6/20/19 | **Greg Noethlich** |
| | Title: **President and CEO** | |

## Accepted by OnPoint Capital, LLC

| Authorized Signature | Date: |
|---|---|
| X [signature] | 6/24/19 |

EXHIBIT
9

EQUIPMENT SCHEDULE A
to Equipment Schedule No. **011** to Master Lease Agreement No. [redacted]**409**

| Address | Year | Qty | Make | Model | Type | Serial Number | Additional specs | Current Hours | Total Number of Running Hours Per Year |
|---|---|---|---|---|---|---|---|---|---|
| 200 South 4th Street, Albion, IL 62806 | 2015 | 1 | Presto Lift | PPS2200 | Reconditioned Walkie Stacker | | | 3,247 | 900 |

Should Lessee exceed the total number of running hours per year stated in this Equipment Schedule A with respect to any unit, Lessee will pay us additional rent equal to $2/hour.

LESSEE: Champion Laboratories, Inc.

X____________________

TITLE: President and CEO

**TFS**
AN **ON**POINT COMPANY
3295 Levis Commons Blvd.
Perrysburg, OH 43551

## INVOICE

| | |
|---|---|
| Invoice No. | 218367 |
| Date | 6/13/2019 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| OnPoint Capital, LLC<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion OIL<br>Attn: Accounts Payable<br>200 S. 4th Street<br>Albion, IL 62806 |

Page 1 of 1

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P.O. Nbr. |
|---|---|---|---|
| 6/13/2019 | 10 days | 6/23/2019 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| PrestoLift<br>Model: PPS2200-62NAS<br>SN: GC1509035<br><br>Used 2015 Walkie Stacker | 1.00 | $8,900.00 | $8,900.00 |

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

| | |
|---|---|
| Sales Total | $8,900.00 |
| Tax Total | $0.00 |
| **Invoice Total** | **$8,900.00** |

7.25% tax

TFS, Ltd 3295 Levis Commons Blvd. Perrysburg, OH 43551
Phone (844) 837-2322
www.tfsglobal.com

# BILL OF SALE

Re: Lease Agreement No. [redacted]409-011

TFS, Ltd. (the "Seller"), for and in consideration of the payoff amount of [redacted] does hereby release, transfer and assign to OnPoint Capital, LLC (the "Purchaser"), all Seller's right, title and interest in and to the Equipment as listed below:

1 Presto Lift PPS2200 Walkie Stacker with S/N GC1509035

TO HAVE AND TO HOLD, all and singular the Equipment by these present bargained, sold and confirmed unto Purchaser, its successors and assigns, forever.

AND, Seller, for itself, its successors and assigns, does hereby warrant to Purchaser, its successors and assigns, that at the time of this sale, Seller has neither caused nor suffered any liens, claims or encumbrances to be created by Seller against the Equipment.

The Equipment is transferred to Purchaser in "AS IS-WHERE IS" CONDITION AND SELLER MAKES NO OTHER REPRESENTATIONS OF WARRANTIES WITH RESPECT TO THE EQUIPMENT INCLUDING THOSE OF MERCANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

By its acceptance of the Equipment, Purchaser further agrees that it has paid or will pay any and all applicable sales, property, excise, use and privilege taxes that may be imposed on Purchaser or Seller by any Federal, State, City, County, or other governmental authority upon the transaction accomplished hereby or upon the ownership or use of the Equipment, and hereby agrees to indemnify and hold the Seller harmless from and against any and all claims and liabilities (including, without limitation, costs and expenses) for such taxes from the date of this Bill of Sale forward.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed it its name by an authorized officer as of June 20, 2019.

TFS, Ltd.

By: [signature]

Name: Andrew Bender

Title: Vice President

ORIGINAL

# PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASE

THIS PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASE ("Agreement") is made as of August 30, 2019 by and between OnPoint Capital, LLC (hereinafter called "Seller") having its principal place of business at 53 West 36th Street, Suite 701, New York, NY 10018 and KINGSBRIDGE HOLDINGS, LLC (hereinafter "Buyer") having its offices at 150 N. Field Drive, Suite 193, Lake Forest, IL 60045.

WITNESSETH:

That in consideration of the mutual undertakings herein contained, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Sale of Equipment. Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller, the Equipment subject to the leases listed in **Exhibit A** attached hereto at the Lessee's ("Lessee") installation address, plus all of Seller's rights related thereto including all warranties, rights under software licenses, if any, and contracts pertaining to the equipment and all insurance proceeds thereon, all other general intangibles related thereto, and all substitutions, upgrades and additions thereto (collectively, the "Equipment"), subject to any Permitted Encumbrances, as defined in Paragraph 3 below.

2. Purchase Price. The Purchase Price of the Equipment of [redacted] is the sum of (i) [redacted] which amount Buyer agrees to pay to Seller by wire transfer not later than August 30, 2019 which represents Buyer's purchase of the Equipment ("Net Investment"), plus (ii) Buyer's assumption of the discounted stream of payments, based on a funding date of August 30, 2019, in the amount of [redacted]

3. Delivery and Title. Buyer hereby agrees to accept delivery of the Equipment at the facilities of the Lessees, as listed on **Exhibit A** (the "Lessee") at the locations set forth in **Exhibit B** hereto. Seller represents and warrants that Seller has good marketable title to the Equipment, free and clear of all liens, claims and encumbrances of any kind, except for: 1) the leasehold rights of the Lessee under the Lease, as defined below, and 2) the rights and interests conveyed and granted to the discounted stream of payments owner (the "Senior Lenders") by and under that certain Specification to Master Assignment Agreement as listed in Exhibit A, (the "Initial Assignment") between Seller, as assignor, and Senior Lender, as assignee(s), regarding the Equipment and the Lease Schedule identified in Section 4 hereof (together, "Permitted Encumbrances").

4. Assignment of Lease.

Seller hereby unconditionally and irrevocably assigns and sets over unto Buyer, subject and subordinate to the Permitted Encumbrances and effective on the date of payment by Buyer of the cash portion of the Purchase Price set forth in Section 2. (i) above, (i) all of its right, title and interest in, under and to Schedule Nos as listed on

EXHIBIT
10

ORIGINAL

**Exhibit A** collectively, the "Lease Schedule") to the master lease agreements listed on Exhibit A (collectively the "Lease") between Seller and Lessee, and (ii) all of Seller's rights and interests in the Leases as it relates to the Lease Schedule and/or the Equipment thereunder, including all rents assumed per the dates as listed on the Exhibit A and after, and other sums due and to become due thereunder after receipt by Senior Lender of all amounts due Senior Lender under the Lease Schedule by way of and in accordance with the terms of the Initial Assignment. All interim rentals accruing prior to the base term lease commencement date and base term rentals due prior to those which were assigned to Senior Lender shall be for the account of Seller. Seller agrees to promptly provide Buyer with a copy of all notices received from Lessee and/or any third party regarding the Equipment, including taxing authorities and any vendor or manufacturer of the Equipment. Seller further assigns and sets over to Buyer any and all rights to provide upgrades to the Equipment.

5. WARRANTY DISCLAIMER. **OTHER THAN AS SET FORTH IN THIS AGREEMENT OR IN ANY OTHER AGREEMENTS BETWEEN SELLER AND BUYER, SELLER DOES NOT WARRANT THE EQUIPMENT IN ANY RESPECT, EITHER EXPRESSLY OR BY IMPLICATION AND WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS OR ADEQUACY FOR ANY PURPOSE OR USE, QUALITY, PRODUCTIVENESS OR CAPACITY.** SELLER HEREBY ASSIGNS TO BUYER (TO THE EXTENT TO WHICH THE SAME MAY BE ASSIGNABLE AND SUBJECT TO THE PERMITTED ENCUMBRANCES) AND ENFORCE FOR BUYER'S BENEFIT (TO THE EXTENT NOT ASSIGNABLE PROVIDED THAT SELLER IS ENTITLED TO ENFORCE THE SAME FOR ITSELF), ANY WARRANTY OF THE MANUFACTURER RELATIVE TO THE EQUIPMENT AND AGREES TO EXECUTE SUCH DOCUMENTS AS SHALL BE NECESSARY TO EFFECTUATE SUCH ASSIGNMENT.

6. Representations of Seller. Seller hereby represents and warrants and Buyer may rely on the following:

(a) Seller will transfer good and marketable title in and to the Equipment, the Lease Schedule and the Lease as it relates thereto to Buyer, free and clear of any and all liens, claims or encumbrances, subject to Permitted Encumbrances, and upon delivery to Seller of the cash portion of the Purchase Price by Buyer, Seller will deliver to Buyer a Bill of Sale pertaining to the Equipment, free and clear of all liens, claims and encumbrances except for the rights of Lessee under the Lease Schedule and for Permitted Encumbrances, and a certified copy of the Lease and a copy of the Lease Schedule and other original documents pertaining thereto including, without limitation, all consents, waivers and any other written communications or correspondence.

(b) Seller is a duly organized and validly existing corporation in good standing under the laws of the State of Ohio and is duly qualified to do business in each jurisdiction (including the jurisdiction where the Equipment is or is to be located) where

ORIGINAL

its ownership or lease of property or the conduct of its business requires such qualification.

(c) The Lease and Lease Schedule have been duly executed and delivered, are in full force and effect, constitute the valid and binding obligation of Seller and of Lessee and are enforceable against Seller and the Lessee in accordance with the terms of the Lease and Lease Schedule (subject to laws of general application affecting creditors' rights) and no defaults or conditions which, with the passage of a cure period or giving of notice or both, would constitute defaults, exist thereunder or under the Initial Assignment documents by the Lessee or by Seller.

(d) Seller has the power and authority to enter into this Agreement and the Bill of Sale, and to carry out the transfer of the Equipment and Lease Schedule to Buyer and the other transactions contemplated hereunder, subject to the Permitted Encumbrances There is no action, suit or proceeding pending against Seller before or by any court, administrative agency or other governmental authority which brings into question the validity of, or might in any way impair, the execution, delivery or performance by Seller of this Agreement.

(e) The execution and delivery of this Agreement and the Bill of Sale by Seller and the performance by it of its obligations hereunder and thereunder have been duly authorized by all necessary corporate action of Seller and do not violate or conflict with (i) any provision of Seller's Certificate of Incorporation or By-Laws, (ii) any law or any order, writ, injunction, decree, rule or regulation of any court, administrative agency or any other governmental authority, or (iii) any agreement to which Seller is a party or by which Seller is bound.

(f) The making and performance by Seller of this Agreement and the Bill of Sale and the transactions contemplated therein do not conflict with and are not inconsistent with, and will not result (with or without the giving of notice or passage of time or both) in a breach of or constitute a default or require any consent under the terms of any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Seller is a party or by which Seller may be bound or to which it may be subject.

(g) The Lease and Lease Schedule have been duly executed and delivered by Seller and will, on the date of closing hereunder, be in full force and effect without any defenses or offsets; the Lease Schedule constitute a separately enforceable lease agreement and neither default, nor event which, but for the passing of a cure period or the giving of notice or both, would be a default, will then have occurred or be continuing under the terms of the Lease or Lease Schedule; the Equipment is located at the place designated in the Lease Schedule; and Seller warrants that (i) no prepayments of rent under the Lease Schedule have been made by Lessee and (ii) any payments received by Seller under the Lease Schedule which are not due Senior Lender, Seller or any applicable taxing authority or other party of interest under the Lease Schedule shall by

ORIGINAL

remitted immediately upon Seller's receipt to Buyer or, upon written directions from Buyer, to Buyer's assignee.

(h) This Agreement and the Bill of Sale have been duly authorized, executed and delivered by Seller and constitute the legal, valid and binding obligations of Seller enforceable in accordance with their terms.

(i) Seller has or will provide any and all notices and obtain any and all consents which may be necessary to the completion of the transaction contemplated hereby.

(j) All sales, use, property or other taxes, licenses, tolls, inspection or other fees, bonds, permits or certificates which were or may be required to be paid or obtained in connection with the acquisition by Seller of the Equipment, or the leasing thereof to Lessee prior to the sale to Buyer hereunder, have been, or will, when due, be paid in full or obtained.

(k) Seller represents and warrants that (i) all payments of installments of the firm, noncancelable rentals payable under the Lease Schedule are current and (ii) the rents payable under the Lease Schedule are not subject to any defenses, set-offs or counter-claims.

(l) No Event of Default or event which with the passing of time or the giving of notice, or both, would constitute an Event of Default has occurred under the Lease or the Lease Schedule.

(m) There are no agreements, leases, purchase options, liens or encumbrances known to Seller affecting the Equipment which are not disclosed in the Lease, in the Lease Schedule, in the documents by which Seller took title to the Equipment or in the Initial Assignment and/or other documents affecting the Equipment to which Seller is a party; and all such documents have been provided to Buyer.

(n) Any purchase options contained in the Lease or the Lease Schedule shall be a Fair Market Value purchase option, not a bargain payment, whether for renewal or purchase.

(o) If the terms of the Lease require Seller to provide notice to Lessee prior to the expiration of the initial term of the Lease Schedule or any extensions thereof, Seller shall be solely responsible for providing said notice to Lessee and hereby indemnifies Buyer for any loss, including inability to collect any rentals due pursuant to the terms of the Lease, whether arising before or after the expiration of the initial term, caused by Seller's failure to provide said notice on a timely basis.

7. <u>Representations and Warranties of Buyer.</u> Buyer hereby represents and warrants and Seller may rely on the following:

ORIGINAL

(a) Permitted Encumbrances. Buyer acknowledges and agrees that all of its rights and interests in and to a portion of the Equipment and the Lease Schedule conveyed hereby are subject and subordinate to the rights and interests of the Senior Lender pursuant to the Initial Assignment.

(b) Binding Obligation. Buyer has full power and authority to enter into this Agreement and to consummate the transactions contemplated herein. This Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate action of Buyer and this Agreement constitutes the legal, valid and binding obligations of Buyer enforceable in accordance with its terms.

(c) Inconsistent Agreements. The making and performance by Buyer of this Agreement and the transactions contemplated hereby do not contravene the Articles of Organization or Operating Agreement of Buyer or any provision of law applicable to Buyer and do not conflict and are not inconsistent with, and will not result (with or without the giving of notice or passage of a cure period or both) in a breach of or constitute a default or require any consent under the terms of any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Buyer is a party or by which Buyer may be bound or to which it may be subject.

8. Invoicing. Unless and until otherwise notified by Buyer and except as specifically provided in this Section 8, Seller shall have the obligation, at its expense, to bill for, collect, receive, and administer all payments due under the Lease Schedule, including, but not limited to, rent and sales/use tax payments on rent. Seller agrees to cause the Lessees to remit to Senior Lender (or as it shall direct) all amounts assigned to Senior Lender with respect to the Lease Schedule. With respect to personal property taxes, Buyer assumes responsibility for the filing and payment of such taxes to the appropriate taxing authorities and will promptly provide invoice copies to Seller to invoice Lessees for payment or reimbursement under Seller's name. Seller will bill, collect, and receive from Lessees all amounts payable or reimbursable from Lessees for personal property taxes and will promptly remit to Buyer all amounts collected or owed relating to the same. Notwithstanding the foregoing, Buyer may directly bill, collect, and receive all amounts payable or reimbursable from Lessees for personal property taxes if Seller fails to collect from Lessees and remit to Buyer the same within 30 days of Buyer's written request, provided that Buyer has given Seller a reasonable time to perform its obligations hereunder.

9. Miscellaneous.

(a) Survival. All representations, warranties and certifications made by Seller and Buyer shall survive the execution, delivery and performance of this Agreement and all other documents provided for herein.

(b) Successors and Assigns. This Agreement and all covenants and agreements contained herein as well as all other documents provided for herein shall be binding upon

ORIGINAL

and inure to the benefit of the parties hereto and their respective successors and assigns. The parties hereto agree that their respective successors and assigns any rely upon each and every representation, warranty, indemnification and covenant made herein and, if requested to do so, each party will acknowledge such reliance in writing to the successors or assigns of the other party.

(c) Indemnification.

(i) Seller shall indemnify and hold Buyer harmless from and against any and all loss, cost, damage, injury or expense (including court costs and reasonable attorneys' fees) wheresoever and howsoever arising which Buyer may incur by reason of any breach by Seller of any of its warranties, representations or obligations set forth herein, or in any documents executed in connection herewith. In addition, Seller shall indemnify and hold Buyer harmless from and against any and all loss, cost, penalty, damage, injury or expense (including court costs and reasonable attorneys' fees), arising from Seller, as opposed to Buyer, filing and paying all sales/use tax payments.

(ii) Buyer shall indemnify and hold Seller harmless from and against any and all loss, cost, damage, injury or expense (including court costs and reasonable attorneys' fees) wheresoever and howsoever arising which Seller may incur by reason of any breach by Buyer of any of its warranties, representations or obligations set forth herein, or in any documents executed in connection herewith.

(d) Captions. The captions appearing in this Agreement and in any other documents relating this transaction are inserted only as a matter of convenience and in no way define, limit, or describe the scope or intent of such sections or articles nor in any way effect this Agreement or any other documents relating to this transaction.

(e) Delivery of Documents; Further Instruments. Buyer's duty to pay the Purchase Price shall not arise until this Agreement is signed by the parties hereto, and Seller shall have delivered to Buyer the following documents acceptable to Buyer:

(i) certified true and correct photocopies of the applicable master lease agreements and the related transaction documents which directly relate to the subject Lease Schedule, including without limitation UCC-1 precautionary financing statements filed or to be filed by Seller against Lessee;

(ii) certified true and correct photocopies of the original Lease Schedule covering the Equipment;

(iii) all appropriate UCC-3 assignments of the UCC-1 precautionary financing statements filed by Seller against Lessee;

(iv) the original of this Agreement and the Bill of Sale covering the Equipment executed by Seller;

(v) original Acknowledgment of Assignment executed by Seller to be held in escrow provided that Buyer shall have the right, in its sole and

ORIGINAL

absolute discretion, to send the Acknowledgment of Assignment to the Lessee with respect to the Leases affected by such event if (a) there is any breach by Seller of any representation, warranty, covenant or agreement in this Agreement or other instrument, document or writing executed in connection therewith, or any other agreement entered into by Seller for the benefit of Buyer; (b) there is any bankruptcy (voluntary or involuntary), reorganization or similar proceeding commenced by or against Seller or Lessee; (c) there is any default by Lessee under the Leases; or (d) Buyer otherwise deems itself to be insecure for any reason whatsoever;

(vi) certificates of insurance naming Seller and its assigns as additional insured and loss payee and otherwise in compliance with the requirements of the Lease;

(vii) a manufacturer's invoice and a copy of the applicable purchase agreement, if any, and any other evidence deemed necessary by Buyer to determine the monies owed for the Equipment, if any (as applicable) all in form satisfactory to Buyer; and

The parties hereto hereby agree to execute and deliver, or cause to be executed and delivered, such further instruments or documents and take each other action as may be required effectively to carry out the transactions contemplated herein.

(f) Governing Law. The validity, interpretation and enforcement of this Agreement shall be governed by the laws of the State of Illinois (irrespective of such State's choice of law rules). Any claims or disputes regarding this Agreement, the Equipment or the Lease Schedule shall be heard in any state or federal court located in Illinois and the parties hereby consent to the exclusive personal jurisdiction of said court. The parties waive any defense based on forum non conveniens and waives trial by jury.

(g) Power of Attorney. Seller hereby appoints Buyer, and its assignees, as its true and lawful attorney in fact to use and/or endorse Seller's name in connection with solely in reference to the applicable master lease agreement and the related transaction documents which directly relate to the subject Lease Schedule:

(i) all checks related herein received by Buyer on which Seller's name appears;

(ii) the transfer of title to all Equipment;

(iii) if necessary, collection actions on the assigned interest, which collection actions shall at all times comply with all applicable laws and regulations;

(iv) the execution of documents necessary to change the designated loss payee, or endorsing checks or drafts representing payment of loss or refund of premiums under any insurance policy issued in connection with the assigned interest; and

ORIGINAL

(v) the execution of any uniform commercial code filings, including, without limitation, assignments of uniform commercial code filings against the obligors, which Buyer believes are necessary from time to time in order to carry out the purposes hereof and to protect Buyer's interest hereunder.

This power is coupled with an interest and is irrevocable. Seller hereby ratifies, to the extent permitted by law, all that Buyer shall lawfully and in good faith do or cause by reason of and in compliance with this section.

(g) Representations and Warranties. The only representations and warranties of Seller and Buyer are those contained in this Agreement.

**IN WITNESS WHEREOF,** and intending to be legally bound hereby, Seller and Buyer have caused this Agreement consisting of eight typewritten pages, not including the Exhibit A and B attached hereto, to be executed and do each hereby warrant and represent that their respective signatories whose signatures appear below have been and are on the date of this Agreement duly authorized by all necessary and appropriate action to execute this Agreement.

SELLER:

**OnPoint Capital, LLC**

By: ______________________
Katharine Harris

Title: VP, Operations

BUYER:

**Kingsbridge Holdings, LLC**

By: ______________________
John M. Morand

Title: Co-Chief Executive Officer

ORIGINAL

# EXHIBIT A TO PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASES

**See attached Spreadsheet Marked Exhibit A**

**EXHIBIT A**

| Lessee | Schedule # | Frequency | Start Date | Maturity Date | Last Payment Date | Term | Pmts Held | Pmts Discounted | Pmts Assumed by KBH | 1st Pmt Assumed (KBH) | OEC | Rent | Debt Rate | Debt Funding source | GROSS PURCHASE PRICE | Est. PV of Debt | Tvalue PV of Debt (8.30) | PV of Residual | TOTAL CASH PURCHASE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Champion Laboratories, Inc. | 32409-011 | Monthly | 7/1/2019 | 7/1/2023 | 6/1/2023 | 48 | 2 | 47 | 46 | 9/1/2019 | $ 9,545.25 | $ 196.27 | [redacted] | | | | | | |

[redacted]