ONPOINT CAPITAL

ONPOINT CAPITAL, LLC
53 W 36th Street, Suite 701
New York, NY 10018
Phone: 212-602-1183

# EQUIPMENT SCHEDULE

**Master Lease #[redacted]409**
**Schedule #012**

Dear Customer: This Equipment Schedule ("Schedule") is written in simple and easy-to-read language. Please read this Schedule thoroughly and feel free to ask us any questions you may have about it. The words **YOU** and **YOUR** refer to the Lessee. The words **WE**, **US** and **OUR** refer to the Lessor, OnPoint Capital, LLC an Ohio limited liability company.

## Master Lease Agreement

The Terms of the above Master Lease Agreement ("Master Agreement") are incorporated into and made a part of this Schedule as if set forth in full. This Schedule, and every other Schedule which incorporates terms from the Master Agreement, each are separate, assignable lease agreements, and not part of the Master Agreement. If there is any inconsistency between the terms of this Schedule and those of the Master Agreement, then this Schedule will control.

## Customer & Billing Contact Information

Lessee Full Legal Name
Champion Laboratories, Inc.

| Contact Person | Contact Phone No. | Federal Tax ID # | State of Org. |
|---|---|---|---|
| Dina Reid | 618-445-6011 | [redacted] | DE |

Company Address
200 South 4th Street, Albion, IL 62806

Equipment Location
SEE EQUIPMENT SCHEDULE A

## Equipment Description

| Qty | Manufacturer | Model Number | Description | Serial Number | Maximum Annual Usage |
|---|---|---|---|---|---|
| | | | SEE EQUIPMENT SCHEDULE A | | |

***Should Lessee exceed the expected number of running hours stated in this Equipment Schedule with respect to any unit, Lessee will pay an additional $2 per hour for such unit.***

## Term/Lease Payment Schedule

| Term | Security Deposit/Advance Payment | Lease End Purchase Option | Base Monthly Lease Payment* |
|---|---|---|---|
| (Months) 63 | ☐ Security Deposit(s): n/a | ☒ FMV (defined in Section 17) | $9,202.05 (incl. sales tax) |
| | ☐ Advance Payment(s): n/a | ☐ $1.00 ☐ Other: n/a | * Plus Applicable Taxes—See Section 11 |

The first monthly payment will be due on the Commencement Date together with interim rent for the period between the Acceptance Date and the Commencement Date at the daily rate equal to 1/30th of the monthly rental. The Commencement Date shall be the first day of the month following the Acceptance Date, unless the Acceptance Date is the first day of the month, in which case the Commencement Date shall be the Acceptance Date. Additional monthly payments will be due on the same day of each following month. All payments and other amounts due or to become due at the time and in the amounts set forth in the Lease, unless otherwise notified, shall be remitted to us at **OnPoint Capital, LLC, PO Box 87618, Department #2071, Chicago, IL 60680-0618.**

## Lessee Authorized Signature

**THIS LEASE MAY NOT BE CANCELED**

| Champion Laboratories, Inc. Authorized Signature | Date: | Print Name: |
|---|---|---|
| X [signature] | 7-31-19 | **Greg Noethlich** |
| | Title: **President and CEO** | |

## Equipment Acceptance Certificate

You certify that all of the Equipment referred to in this Lease has been delivered and received by you, and that any and all installation and set up has been completed. You have examined the Equipment and it in good operating condition and is satisfactory to you and you have accepted the Equipment. This lease cannot be modified or rescinded except by a writing signed by you and us. As of the date an Equipment Acceptance Certificate is received by us (the "Adjustment Date"), the monthly payments due hereunder shall be recalculated based upon increases in the swap rate for the Sixty-Three (63)-month rate as published in the ICE SWAP Rate Historical Rates table for the week ending immediately prior to the Adjustment Date (the "Swap Rate"). If, on the Adjustment Date, the Swap Rate is greater than at Lease signing, the monthly payments due hereunder shall be increased to reflect the actual rate. Thereafter, the monthly payments shall remain fixed during the Term hereof. **ACCORDINGLY YOU AUTHORIZE US TO PURCHASE THE EQUIPMENT FOR YOUR USE. The "Commencement Date" of this lease will be the 1st of the month following the Acceptance Date**

## Lessee Authorized Signature

**THIS LEASE MAY NOT BE CANCELED**

| Champion Laboratories, Inc. Authorized Signature | Acceptance Date: | Print Name: |
|---|---|---|
| X [signature] | 11-20-19 | **Greg Noethlich** |
| | Title: **President and CEO** | |

## Accepted by OnPoint Capital, LLC

| Authorized Signature | Date: |
|---|---|
| X [signature] | 11/20/19 |

tabbies
EXHIBIT
11

EQUIPMENT SCHEDULE A
to Equipment Schedule No. 012 to Master Lease Agreement No. [redacted]409

| Address | Year | Qty | Make | Model | Type | Serial Number | Additional Specs | Current Hours | Total Number of Running Hours Per Year |
|---|---|---|---|---|---|---|---|---|---|
| 329 Industrial Drive, Albion, IL 62806 | 2019 | 5 | Raymond | 5600 | Order Picker | | New Battery, Charger, Tech Box, Blue Light, Fire Extinguisher | n/a | 1,500 |
| 329 Industrial Drive, Albion, IL 62806 | 2019 | 1 | Raymond | 5600 | Order Picker | | New Battery, Tech Box, Blue Light, Fire Extinguisher | n/a | 1,500 |
| 329 Industrial Drive, Albion, IL 62806 | 2019 | 3 | Raymond | 4250 | Stand Up Forklift | | Battery, Tech Box, Blue Light, Side Shift, Fire Extinguisher | n/a | 1,600 |
| 329 Industrial Drive, Albion, IL 62806 | 2019 | 1 | Tennant | M17 | Sweeper/Scrubber | | Battery, Charger, Tech Box, Fire Extinguisher | n/a | 1,000 |

Should Lessee exceed the total number of running hours per year stated in this Equipment Schedule A with respect to any unit , Lessee will pay us additional rent equal to $2/hour.

**LESSEE:** **Champion Laboratories, Inc.**

X ____________________

**TITLE:** **President and CEO**

TFS
AN ONPOINT COMPANY
3295 Levis Commons Blvd.
Perrysburg, OH 43551

# INVOICE

**Invoice No.** **268142**
Date 11/18/2019
Customer # [redacted]6211

| BILL TO: | SHIP TO: |
|---|---|
| OnPoint Capital, LLC<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion DS<br>329 Industrial Drive<br>Albion, IL 62806 |

Page 1 of 1

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 11/18/2019 | 10 days | 11/28/2019 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| Raymond<br>Model: 560-OPC30TT<br>SN:<br>560-19-B47699; 560-19-B47701; 560-19-B47697;<br>560-19-B47710; 560-19-B47708; 560-19-B47706<br><br>Hawker Battery<br>Model: 18-125F-15<br>SN: PL110192426,27,28,29,30,31 | 6.00 | $47,503.30 | $285,019.80 |
| Raymond<br>Model: 425-C35TT<br>SN: 425-19-64775; 425-19-64773; 425-19-64769<br><br>Hawker Battery<br>Model: 18-125F-15<br>SN: PL109191156,57,58 | 3.00 | $45,267.80 | $135,803.40 |
| Tennant<br>Model: M17 W Pro Panel<br>SN: M17-11217<br><br>Hawker Charger<br>Model: LPM3-48C-180Y<br>SN: RJ336512 – RJ336516 | 1.00 | $63,200.00 | $63,200.00 |

**New 2019 Material Handling Trucks**

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

| | |
|---|---|
| Sales Total | $484,023.20 |
| Tax Total | $0.00 |
| **Invoice Total** | **$484,023.20** |

**BILL OF SALE**

Re: Lease Agreement No. [redacted]409-012

TFS, Ltd. (the "Seller"), for and in consideration of the payoff amount o[redacted]does hereby release, transfer and assign to OnPoint Capital, LLC (the "Purchaser"), all Seller's right, title and interest in and to the Equipment as listed below:

See Attachment A

TO HAVE AND TO HOLD, all and singular the Equipment by these present bargained, sold and confirmed unto Purchaser, its successors and assigns, forever.

AND, Seller, for itself, its successors and assigns, does hereby warrant to Purchaser, its successors and assigns, that at the time of this sale, Seller has neither caused nor suffered any liens, claims or encumbrances to be created by Seller against the Equipment.

The Equipment is transferred to Purchaser in "AS IS-WHERE IS" CONDITION AND SELLER MAKES NO OTHER REPRESENTATIONS OF WARRANTIES WITH RESPECT TO THE EQUIPMENT INCLUDING THOSE OF MERCANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

By its acceptance of the Equipment, Purchaser further agrees that it has paid or will pay any and all applicable sales, property, excise, use and privilege taxes that may be imposed on Purchaser or Seller by any Federal, State, City, County, or other governmental authority upon the transaction accomplished hereby or upon the ownership or use of the Equipment, and hereby agrees to indemnify and hold the Seller harmless from and against any and all claims and liabilities (including, without limitation, costs and expenses) for such taxes from the date of this Bill of Sale forward.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed it its name by an authorized officer as of November 20, 2019.

TFS, Ltd.

By: Walter Stranzl

Name: Walter Stranzl

Title: Vice President

## ATTACHMENT A

**LESSEE:** Champion Laboratories, Inc.

**LEASE NO.** [redacted]409-012

| QTY | DESCRIPTION | SERIAL # | LOCATION |
|---|---|---|---|
| 5 | Raymond 560-OPC30TT Order Picker | 560-19-B47697<br>560-19-B47699<br>560-19-B47701<br>560-19-B47708<br>560-19-B47710 | 329 Industrial Drive, Albion, IL 62806 |
| 1 | Raymond 560-OPC30TT Order Picker | 560-19-B47706 | 329 Industrial Drive, Albion, IL 62806 |
| 3 | Raymond 425-C35TT Stand Up Forklift | 425-19-64769<br>425-19-64773<br>425-19-64775 | 329 Industrial Drive, Albion, IL 62806 |
| 1 | Tennant M17 Sweeper/Scrubber | M17-11217 | 329 Industrial Drive, Albion, IL 62806 |
| 9 | Hawker 18-125F-15 Battery | PL109191156<br>PL109191157<br>PL109191158<br>PL110192426<br>PL110192427<br>PL110192428<br>PL110192429<br>PL110192430<br>PL110192431 | 329 Industrial Drive, Albion, IL 62806 |
| 5 | Hawker LPM3-48C-180Y Charger | RJ336512<br>RJ336513<br>RJ336514<br>RJ336515<br>RJ336516 | 329 Industrial Drive, Albion, IL 62806 |

# PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASE

THIS PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASE ("Agreement") is made as of December 27, 2019 by and between OnPoint Capital, LLC (hereinafter called "Seller") having its principal place of business at 53 West 36th Street, Suite 701, New York, NY 10018 and KINGSBRIDGE HOLDINGS, LLC (hereinafter "Buyer") having its offices at 150 N. Field Drive, Suite 193, Lake Forest, IL 60045.

WITNESSETH:

That in consideration of the mutual undertakings herein contained, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Sale of Equipment. Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller, the Equipment subject to the leases listed in **Exhibit A** attached hereto at the Lessee's ("Lessee") installation address, plus all of Seller's rights related thereto including all warranties, rights under software licenses, if any, and contracts pertaining to the equipment and all insurance proceeds thereon, all other general intangibles related thereto, and all substitutions, upgrades and additions thereto (collectively, the "Equipment"), subject to any Permitted Encumbrances, as defined in Paragraph 3 below.

2. Purchase Price. The Purchase Price of the Equipment of [redacted] is the sum of (i) [redacted] which amount Buyer agrees to pay to Seller by wire transfer not later than December 27, 2019 which represents Buyer's purchase of the Equipment ("Net Investment"), plus (ii) Buyer's assumption of the discounted stream of payments, based on a funding date of December 27, 2019, in the amount of [redacted]

3. Delivery and Title. Buyer hereby agrees to accept delivery of the Equipment at the facilities of the Lessees, as listed on **Exhibit A** (the "Lessee") at the locations set forth in **Exhibit B** hereto. Seller represents and warrants that Seller has good marketable title to the Equipment, free and clear of all liens, claims and encumbrances of any kind, except for: 1) the leasehold rights of the Lessee under the Lease, as defined below, and 2) the rights and interests conveyed and granted to the discounted stream of payments owner (the "Senior Lenders") by and under that certain Specification to Master Assignment Agreement as listed in Exhibit A, (the "Initial Assignment") between Seller, as assignor, and Senior Lender, as assignee(s), regarding the Equipment and the Lease Schedule identified in Section 4 hereof (together, "Permitted Encumbrances").

4. Assignment of Lease.

Seller hereby unconditionally and irrevocably assigns and sets over unto Buyer, subject and subordinate to the Permitted Encumbrances and effective on the date of payment by Buyer of the cash portion of the Purchase Price set forth in Section 2. (i) above, (i) all of its right, title and interest in, under and to Schedule Nos as listed on

EXHIBIT 12

**Exhibit A** collectively, the "Lease Schedule") to the master lease agreements listed on Exhibit A (collectively the "Lease") between Seller and Lessee, and (ii) all of Seller's rights and interests in the Leases as it relates to the Lease Schedule and/or the Equipment thereunder, including all rents assumed per the dates as listed on the Exhibit A and after, and other sums due and to become due thereunder after receipt by Senior Lender of all amounts due Senior Lender under the Lease Schedule by way of and in accordance with the terms of the Initial Assignment. All interim rentals accruing prior to the base term lease commencement date and base term rentals due prior to those which were assigned to Senior Lender shall be for the account of Seller. Seller agrees to promptly provide Buyer with a copy of all notices received from Lessee and/or any third party regarding the Equipment, including taxing authorities and any vendor or manufacturer of the Equipment. Seller further assigns and sets over to Buyer any and all rights to provide upgrades to the Equipment.

5. WARRANTY DISCLAIMER. **OTHER THAN AS SET FORTH IN THIS AGREEMENT OR IN ANY OTHER AGREEMENTS BETWEEN SELLER AND BUYER, SELLER DOES NOT WARRANT THE EQUIPMENT IN ANY RESPECT, EITHER EXPRESSLY OR BY IMPLICATION AND WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS OR ADEQUACY FOR ANY PURPOSE OR USE, QUALITY, PRODUCTIVENESS OR CAPACITY.** SELLER HEREBY ASSIGNS TO BUYER (TO THE EXTENT TO WHICH THE SAME MAY BE ASSIGNABLE AND SUBJECT TO THE PERMITTED ENCUMBRANCES) AND ENFORCE FOR BUYER'S BENEFIT (TO THE EXTENT NOT ASSIGNABLE PROVIDED THAT SELLER IS ENTITLED TO ENFORCE THE SAME FOR ITSELF), ANY WARRANTY OF THE MANUFACTURER RELATIVE TO THE EQUIPMENT AND AGREES TO EXECUTE SUCH DOCUMENTS AS SHALL BE NECESSARY TO EFFECTUATE SUCH ASSIGNMENT.

6. Representations of Seller. Seller hereby represents and warrants and Buyer may rely on the following:

(a) Seller will transfer good and marketable title in and to the Equipment, the Lease Schedule and the Lease as it relates thereto to Buyer, free and clear of any and all liens, claims or encumbrances, subject to Permitted Encumbrances, and upon delivery to Seller of the cash portion of the Purchase Price by Buyer, Seller will deliver to Buyer a Bill of Sale pertaining to the Equipment, free and clear of all liens, claims and encumbrances except for the rights of Lessee under the Lease Schedule and for Permitted Encumbrances, and a certified copy of the Lease and a copy of the Lease Schedule and other original documents pertaining thereto including, without limitation, all consents, waivers and any other written communications or correspondence.

(b) Seller is a duly organized and validly existing corporation in good standing under the laws of the State of Ohio and is duly qualified to do business in each jurisdiction (including the jurisdiction where the Equipment is or is to be located) where

its ownership or lease of property or the conduct of its business requires such qualification.

(c) The Lease and Lease Schedule have been duly executed and delivered, are in full force and effect, constitute the valid and binding obligation of Seller and of Lessee and are enforceable against Seller and the Lessee in accordance with the terms of the Lease and Lease Schedule (subject to laws of general application affecting creditors' rights) and no defaults or conditions which, with the passage of a cure period or giving of notice or both, would constitute defaults, exist thereunder or under the Initial Assignment documents by the Lessee or by Seller.

(d) Seller has the power and authority to enter into this Agreement and the Bill of Sale, and to carry out the transfer of the Equipment and Lease Schedule to Buyer and the other transactions contemplated hereunder, subject to the Permitted Encumbrances There is no action, suit or proceeding pending against Seller before or by any court, administrative agency or other governmental authority which brings into question the validity of, or might in any way impair, the execution, delivery or performance by Seller of this Agreement.

(e) The execution and delivery of this Agreement and the Bill of Sale by Seller and the performance by it of its obligations hereunder and thereunder have been duly authorized by all necessary corporate action of Seller and do not violate or conflict with (i) any provision of Seller's Certificate of Incorporation or By-Laws, (ii) any law or any order, writ, injunction, decree, rule or regulation of any court, administrative agency or any other governmental authority, or (iii) any agreement to which Seller is a party or by which Seller is bound.

(f) The making and performance by Seller of this Agreement and the Bill of Sale and the transactions contemplated therein do not conflict with and are not inconsistent with, and will not result (with or without the giving of notice or passage of time or both) in a breach of or constitute a default or require any consent under the terms of any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Seller is a party or by which Seller may be bound or to which it may be subject.

(g) The Lease and Lease Schedule have been duly executed and delivered by Seller and will, on the date of closing hereunder, be in full force and effect without any defenses or offsets; the Lease Schedule constitute a separately enforceable lease agreement and neither default, nor event which, but for the passing of a cure period or the giving of notice or both, would be a default, will then have occurred or be continuing under the terms of the Lease or Lease Schedule; the Equipment is located at the place designated in the Lease Schedule; and Seller warrants that (i) no prepayments of rent under the Lease Schedule have been made by Lessee and (ii) any payments received by Seller under the Lease Schedule which are not due Senior Lender, Seller or any applicable taxing authority or other party of interest under the Lease Schedule shall by

remitted immediately upon Seller's receipt to Buyer or, upon written directions from Buyer, to Buyer's assignee.

(h) This Agreement and the Bill of Sale have been duly authorized, executed and delivered by Seller and constitute the legal, valid and binding obligations of Seller enforceable in accordance with their terms.

(i) Seller has or will provide any and all notices and obtain any and all consents which may be necessary to the completion of the transaction contemplated hereby.

(j) All sales, use, property or other taxes, licenses, tolls, inspection or other fees, bonds, permits or certificates which were or may be required to be paid or obtained in connection with the acquisition by Seller of the Equipment, or the leasing thereof to Lessee prior to the sale to Buyer hereunder, have been, or will, when due, be paid in full or obtained.

(k) Seller represents and warrants that (i) all payments of installments of the firm, noncancelable rentals payable under the Lease Schedule are current and (ii) the rents payable under the Lease Schedule are not subject to any defenses, set-offs or counter-claims.

(l) No Event of Default or event which with the passing of time or the giving of notice, or both, would constitute an Event of Default has occurred under the Lease or the Lease Schedule.

(m) There are no agreements, leases, purchase options, liens or encumbrances known to Seller affecting the Equipment which are not disclosed in the Lease, in the Lease Schedule, in the documents by which Seller took title to the Equipment or in the Initial Assignment and/or other documents affecting the Equipment to which Seller is a party; and all such documents have been provided to Buyer.

(n) Any purchase options contained in the Lease or the Lease Schedule shall be a Fair Market Value purchase option, not a bargain payment, whether for renewal or purchase.

(o) If the terms of the Lease require Seller to provide notice to Lessee prior to the expiration of the initial term of the Lease Schedule or any extensions thereof, Seller shall be solely responsible for providing said notice to Lessee and hereby indemnifies Buyer for any loss, including inability to collect any rentals due pursuant to the terms of the Lease, whether arising before or after the expiration of the initial term, caused by Seller's failure to provide said notice on a timely basis.

7. <u>Representations and Warranties of Buyer.</u> Buyer hereby represents and warrants and Seller may rely on the following:

(a) Permitted Encumbrances. Buyer acknowledges and agrees that all of its rights and interests in and to a portion of the Equipment and the Lease Schedule conveyed hereby are subject and subordinate to the rights and interests of the Senior Lender pursuant to the Initial Assignment.

(b) Binding Obligation. Buyer has full power and authority to enter into this Agreement and to consummate the transactions contemplated herein. This Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate action of Buyer and this Agreement constitutes the legal, valid and binding obligations of Buyer enforceable in accordance with its terms.

(c) Inconsistent Agreements. The making and performance by Buyer of this Agreement and the transactions contemplated hereby do not contravene the Articles of Organization or Operating Agreement of Buyer or any provision of law applicable to Buyer and do not conflict and are not inconsistent with, and will not result (with or without the giving of notice or passage of a cure period or both) in a breach of or constitute a default or require any consent under the terms of any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Buyer is a party or by which Buyer may be bound or to which it may be subject.

8. Invoicing. Unless and until otherwise notified by Buyer and except as specifically provided in this Section 8, Seller shall have the obligation, at its expense, to bill for, collect, receive, and administer all payments due under the Lease Schedule, including, but not limited to, rent and sales/use tax payments on rent. Seller agrees to cause the Lessees to remit to Senior Lender (or as it shall direct) all amounts assigned to Senior Lender with respect to the Lease Schedule. With respect to personal property taxes, Buyer assumes responsibility for the filing and payment of such taxes to the appropriate taxing authorities and will promptly provide invoice copies to Seller to invoice Lessees for payment or reimbursement under Seller's name. Seller will bill, collect, and receive from Lessees all amounts payable or reimbursable from Lessees for personal property taxes and will promptly remit to Buyer all amounts collected or owed relating to the same. Notwithstanding the foregoing, Buyer may directly bill, collect, and receive all amounts payable or reimbursable from Lessees for personal property taxes if Seller fails to collect from Lessees and remit to Buyer the same within 30 days of Buyer's written request, provided that Buyer has given Seller a reasonable time to perform its obligations hereunder.

9. Miscellaneous.

(a) Survival. All representations, warranties and certifications made by Seller and Buyer shall survive the execution, delivery and performance of this Agreement and all other documents provided for herein.

(b) Successors and Assigns. This Agreement and all covenants and agreements contained herein as well as all other documents provided for herein shall be binding upon

and inure to the benefit of the parties hereto and their respective successors and assigns. The parties hereto agree that their respective successors and assigns any rely upon each and every representation, warranty, indemnification and covenant made herein and, if requested to do so, each party will acknowledge such reliance in writing to the successors or assigns of the other party.

(c) Indemnification.

(i) Seller shall indemnify and hold Buyer harmless from and against any and all loss, cost, damage, injury or expense (including court costs and reasonable attorneys' fees) wheresoever and howsoever arising which Buyer may incur by reason of any breach by Seller of any of its warranties, representations or obligations set forth herein, or in any documents executed in connection herewith. In addition, Seller shall indemnify and hold Buyer harmless from and against any and all loss, cost, penalty, damage, injury or expense (including court costs and reasonable attorneys' fees), arising from Seller, as opposed to Buyer, filing and paying all sales/use tax payments.

(ii) Buyer shall indemnify and hold Seller harmless from and against any and all loss, cost, damage, injury or expense (including court costs and reasonable attorneys' fees) wheresoever and howsoever arising which Seller may incur by reason of any breach by Buyer of any of its warranties, representations or obligations set forth herein, or in any documents executed in connection herewith.

(d) Captions. The captions appearing in this Agreement and in any other documents relating this transaction are inserted only as a matter of convenience and in no way define, limit, or describe the scope or intent of such sections or articles nor in any way effect this Agreement or any other documents relating to this transaction.

(e) Delivery of Documents; Further Instruments. Buyer's duty to pay the Purchase Price shall not arise until this Agreement is signed by the parties hereto, and Seller shall have delivered to Buyer the following documents acceptable to Buyer:

(i) certified true and correct photocopies of the applicable master lease agreements and the related transaction documents which directly relate to the subject Lease Schedule, including without limitation UCC-1 precautionary financing statements filed or to be filed by Seller against Lessee;

(ii) certified true and correct photocopies of the original Lease Schedule covering the Equipment;

(iii) all appropriate UCC-3 assignments of the UCC-1 precautionary financing statements filed by Seller against Lessee;

(iv) the original of this Agreement and the Bill of Sale covering the Equipment executed by Seller;

(v) original Acknowledgment of Assignment executed by Seller to be held in escrow provided that Buyer shall have the right, in its sole and

absolute discretion, to send the Acknowledgment of Assignment to the Lessee with respect to the Leases affected by such event if (a) there is any breach by Seller of any representation, warranty, covenant or agreement in this Agreement or other instrument, document or writing executed in connection therewith, or any other agreement entered into by Seller for the benefit of Buyer; (b) there is any bankruptcy (voluntary or involuntary), reorganization or similar proceeding commenced by or against Seller or Lessee; (c) there is any default by Lessee under the Leases; or (d) Buyer otherwise deems itself to be insecure for any reason whatsoever;

(vi) certificates of insurance naming Seller and its assigns as additional insured and loss payee and otherwise in compliance with the requirements of the Lease;

(vii) a manufacturer's invoice and a copy of the applicable purchase agreement, if any, and any other evidence deemed necessary by Buyer to determine the monies owed for the Equipment, if any (as applicable) all in form satisfactory to Buyer; and

The parties hereto hereby agree to execute and deliver, or cause to be executed and delivered, such further instruments or documents and take each other action as may be required effectively to carry out the transactions contemplated herein.

(f) Governing Law. The validity, interpretation and enforcement of this Agreement shall be governed by the laws of the State of Illinois (irrespective of such State's choice of law rules). Any claims or disputes regarding this Agreement, the Equipment or the Lease Schedule shall be heard in any state or federal court located in Illinois and the parties hereby consent to the exclusive personal jurisdiction of said court. The parties waive any defense based on forum non conveniens and waives trial by jury.

(g) Power of Attorney. Seller hereby appoints Buyer, and its assignees, as its true and lawful attorney in fact to use and/or endorse Seller's name in connection with solely in reference to the applicable master lease agreement and the related transaction documents which directly relate to the subject Lease Schedule:

(i) all checks related herein received by Buyer on which Seller's name appears;

(ii) the transfer of title to all Equipment;

(iii) if necessary, collection actions on the assigned interest, which collection actions shall at all times comply with all applicable laws and regulations;

(iv) the execution of documents necessary to change the designated loss payee, or endorsing checks or drafts representing payment of loss or refund of premiums under any insurance policy issued in connection with the assigned interest; and

(v) the execution of any uniform commercial code filings, including, without limitation, assignments of uniform commercial code filings against the obligors, which Buyer believes are necessary from time to time in order to carry out the purposes hereof and to protect Buyer's interest hereunder.

This power is coupled with an interest and is irrevocable. Seller hereby ratifies, to the extent permitted by law, all that Buyer shall lawfully and in good faith do or cause by reason of and in compliance with this section.

(g) Representations and Warranties. The only representations and warranties of Seller and Buyer are those contained in this Agreement.

**IN WITNESS WHEREOF,** and intending to be legally bound hereby, Seller and Buyer have caused this Agreement consisting of eight typewritten pages, not including the Exhibit A and B attached hereto, to be executed and do each hereby warrant and represent that their respective signatories whose signatures appear below have been and are on the date of this Agreement duly authorized by all necessary and appropriate action to execute this Agreement.

SELLER:

**OnPoint Capital, LLC**

By:____________________

Title: Katharine Harris VP, Operations

BUYER:

**Kingsbridge Holdings, LLC**

By: John M. Morand

Title: Co-Chief Executive Officer

**EXHIBIT A TO PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASES**

**See attached Spreadsheet Marked Exhibit A**

| Lessee | Lease # | Transaction Amount | Rental Payment | Billing Frequency | Contract Start Date | First Payment Date | Expiration Date | Last Payment Due Date | Term | Funding Source | First Payment Disc | Qty Payments Sold | Discount Rate | First Pmt to KHB | Qty Pmts Assumed | GROSS PURCHASE PRICE | Estimate PV of Debt | PV of Debt 12/27 (TVALUE) | PV of Residual | TOTAL CASH PURCHASE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Champion Laboratories, Inc. | 32409-012 | $ 519,114.88 | $ 9,202.05 | Monthly | 12/01/2019 | 12/01/2019 | 03/01/2025 | 02/01/2025 | 63 | NEC Financial Services, LLC | 01/01/2020 | 62 | 8.200 | 1/1/2020 | 62 | [redacted] | | | | |
| Champion Laboratories, Inc. | 32409-013 | $ 447,070.12 | $ 7,920.41 | Monthly | 12/01/2019 | 12/01/2019 | 03/01/2025 | 02/01/2025 | 63 | NEC Financial | 01/01/2020 | 62 | 8.200 | 1/1/2020 | 62 | | | | | |

[redacted]

ONPOINT CAPITAL

ONPOINT CAPITAL, LLC
53 W 36th Street, Suite 701
New York, NY 10018
Phone: 212-602-1183

# EQUIPMENT SCHEDULE

Master Lease #[redacted]409
Schedule #013

Dear Customer: This Equipment Schedule ("Schedule") is written in simple and easy-to-read language. Please read this Schedule thoroughly and feel free to ask us any questions you may have about it. The words **YOU** and **YOUR** refer to the Lessee. The words **WE**, **US** and **OUR** refer to the Lessor, OnPoint Capital, LLC an Ohio limited liability company.

## Master Lease Agreement

The Terms of the above Master Lease Agreement ("Master Agreement") are incorporated into and made a part of this Schedule as if set forth in full. This Schedule, and every other Schedule which incorporates terms from the Master Agreement, each are separate, assignable lease agreements, and not part of the Master Agreement. If there is any inconsistency between the terms of this Schedule and those of the Master Agreement, then this Schedule will control.

## Customer & Billing Contact Information

Lessee Full Legal Name
Champion Laboratories, Inc.

| Contact Person | Contact Phone No. | Federal Tax ID # | State of Org. |
|---|---|---|---|
| Dina Reid | 618-445-6011 | [redacted] | DE |

Company Address
200 South 4th Street, Albion, IL 62806

Equipment Location
SEE EQUIPMENT SCHEDULE A

## Equipment Description

| Qty | Manufacturer | Model Number | Description | Serial Number | Maximum Annual Usage |
|---|---|---|---|---|---|
| | | | SEE EQUIPMENT SCHEDULE A | | |

***Should Lessee exceed the expected number of running hours stated in this Equipment Schedule with respect to any unit, Lessee will pay an additional $2 per hour for such unit.***

## Term/Lease Payment Schedule

| Term | Security Deposit/Advance Payment | Lease End Purchase Option | Base Monthly Lease Payment* |
|---|---|---|---|
| (Months) 63 | ☐ Security Deposit(s): n/a | ☒ FMV (defined in Section 17) | $7,920.41 (incl. IL sales tax) |
| | ☐ Advance Payment(s): n/a | ☐ $1.00 ☐ Other: n/a | * Plus Applicable Taxes—See Section 11 |

The first monthly payment will be due on the Commencement Date together with interim rent for the period between the Acceptance Date and the Commencement Date at the daily rate equal to 1/30th of the monthly rental. The Commencement Date shall be the first day of the month following the Acceptance Date, unless the Acceptance Date is the first day of the month, in which case the Commencement Date shall be the Acceptance Date. Additional monthly payments will be due on the same day of each following month. All payments and other amounts due or to become due at the time and in the amounts set forth in the Lease, unless otherwise notified, shall be remitted to us at **OnPoint Capital, LLC, PO Box 87618, Department #2071, Chicago, IL 60680-0618.**

## Lessee Authorized Signature

**THIS LEASE MAY NOT BE CANCELED**

| Champion Laboratories, Inc. Authorized Signature | Date: | Print Name: |
|---|---|---|
| X [signature] | 7-31-19 | Greg Noethlich |
| | Title: President and CEO | |

## Equipment Acceptance Certificate

You certify that all of the Equipment referred to in this Lease has been delivered and received by you, and that any and all installation and set up has been completed. You have examined the Equipment and it in good operating condition and is satisfactory to you and you have accepted the Equipment. This lease cannot be modified or rescinded except by a writing signed by you and us. As of the date an Equipment Acceptance Certificate is received by us (the "Adjustment Date"), the monthly payments due hereunder shall be recalculated based upon increases in the swap rate for the Sixty-Three (63)-month rate as published in the ICE SWAP Rate Historical Rates table for the week ending immediately prior to the Adjustment Date (the "Swap Rate"). If, on the Adjustment Date, the Swap Rate is greater than at Lease signing, the monthly payments due hereunder shall be increased to reflect the actual rate. Thereafter, the monthly payments shall remain fixed during the Term hereof. **ACCORDINGLY YOU AUTHORIZE US TO PURCHASE THE EQUIPMENT FOR YOUR USE. The "Commencement Date" of this lease will be the 1st of the month following the Acceptance Date.**

## Lessee Authorized Signature

**THIS LEASE MAY NOT BE CANCELED**

| Champion Laboratories, Inc. Authorized Signature | Acceptance Date: | Print Name: |
|---|---|---|
| X [signature] | 11-20-19 | Greg Noethlich |
| | Title: President and CEO | |

## Accepted by OnPoint Capital, LLC

| Authorized Signature | Date: |
|---|---|
| X [signature] | 11/20/19 |

EXHIBIT
13
tabbies

EQUIPMENT SCHEDULE A
to Equipment Schedule No. 013 to Master Lease Agreement No. [redacted]409

| Address | Year | Qty | Make | Model | Type | Serial Number | Additional Specs | Current Hours | Total Number of Running Hours Per Year |
|---|---|---|---|---|---|---|---|---|---|
| 329 Industrial Drive, Albion, IL 62806 | 2019 | 7 | Raymond | 7500 | Reach Truck | | New Battery, Charger, Tech Box, Blue Light, Side Shift, Fork Tip Camera, Fire Extinguisher | n/a | 2,700 |

Should Lessee exceed the total number of running hours per year stated in this Equipment Schedule A with respect to any unit , Lessee will pay us additional rent equal to $2/hour.

**LESSEE:** **Champion Laboratories, Inc.**

X ____________________

**TITLE:** **President and CEO**

TFS
AN ONPOINT COMPANY
3295 Levis Commons Blvd.
Perrysburg, OH 43551

# INVOICE

| | |
|---|---|
| **Invoice No.** | **268141** |
| Date | 11/18/2019 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| OnPoint Capital, LLC<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion DS<br>329 Industrial Drive<br>Albion, IL 62806 |

Page 1 of 1

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 11/18/2019 | 10 days | 11/28/2019 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| Raymond<br>Model: 750-R45TT<br>SN:<br>750-19-BC75610; 750-19-BC75611; 750-19-BC75612; 750-19-BC75613;<br>750-19-BC75614; 750-19-BC75615; 750-19-BC75616<br><br>Hawker Battery<br>Model: 18-125F-15<br>SN: PL109191143,44,45,46,47,48,49<br><br>Hawker Charger<br>Model: LPM3-48C-180Y<br>SN: RJ338505 – RJ336511 | 7.00 | $59,549.80 | $416,848.60 |

**New 2019 Material Handling Trucks**

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

| | |
|---|---|
| Sales Total | $416,848.60 |
| Tax Total | $0.00 |
| **Invoice Total** | **$416,848.60** |

**BILL OF SALE**

Re: Lease Agreement No. [redacted]409-013

TFS, Ltd. (the "Seller"), for and in consideration of the payoff amount of [redacted] does hereby release, transfer and assign to OnPoint Capital, LLC (the "Purchaser"), all Seller's right, title and interest in and to the Equipment as listed below:

See Attachment A

TO HAVE AND TO HOLD, all and singular the Equipment by these present bargained, sold and confirmed unto Purchaser, its successors and assigns, forever.

AND, Seller, for itself, its successors and assigns, does hereby warrant to Purchaser, its successors and assigns, that at the time of this sale, Seller has neither caused nor suffered any liens, claims or encumbrances to be created by Seller against the Equipment.

The Equipment is transferred to Purchaser in "AS IS-WHERE IS" CONDITION AND SELLER MAKES NO OTHER REPRESENTATIONS OF WARRANTIES WITH RESPECT TO THE EQUIPMENT INCLUDING THOSE OF MERCANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

By its acceptance of the Equipment, Purchaser further agrees that it has paid or will pay any and all applicable sales, property, excise, use and privilege taxes that may be imposed on Purchaser or Seller by any Federal, State, City, County, or other governmental authority upon the transaction accomplished hereby or upon the ownership or use of the Equipment, and hereby agrees to indemnify and hold the Seller harmless from and against any and all claims and liabilities (including, without limitation, costs and expenses) for such taxes from the date of this Bill of Sale forward.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed it its name by an authorized officer as of November 20, 2019.

TFS, Ltd.

By: Walter Stranzl

Name: Walter Stranzl

Title: Vice President

## ATTACHMENT A

**LESSEE:** Champion Laboratories, Inc.

**LEASE NO.** [redacted]409-013

| QTY | DESCRIPTION | SERIAL # | LOCATION |
|---|---|---|---|
| 7 | Raymond 7500 Reach Truck | 750-19-BC75610<br>750-19-BC75611<br>750-19-BC75612<br>750-19-BC75613<br>750-19-BC75614<br>750-19-BC75615<br>750-19-BC75616 | 329 Industrial Drive, Albion, IL 62806 |
| 7 | Hawker 18-125F-15 Battery | PL109191143<br>PL109191144<br>PL109191145<br>PL109191146<br>PL109191147<br>PL109191148<br>PL109191149 | 329 Industrial Drive, Albion, IL 62806 |
| 7 | Hawker LPM3-48C-180Y Charger | RJ338505<br>RJ338506<br>RJ338507<br>RJ338508<br>RJ338509<br>RJ338510<br>RJ338511 | 329 Industrial Drive, Albion, IL 62806 |

ONPOINT CAPITAL

ONPOINT CAPITAL, LLC
53 W 36th Street, Suite 701
New York, NY 10018
Phone: 212-602-1183

# EQUIPMENT SCHEDULE

**Master Lease #[redacted]409**
**Schedule #017**

Dear Customer: This Equipment Schedule ("Schedule") is written in simple and easy-to-read language. Please read this Schedule thoroughly and feel free to ask us any questions you may have about it. The words **YOU** and **YOUR** refer to the Lessee. The words **WE**, **US** and **OUR** refer to the Lessor, OnPoint Capital, LLC an Ohio limited liability company.

## Master Lease Agreement

The Terms of the above Master Lease Agreement ("Master Agreement") are incorporated into and made a part of this Schedule as if set forth in full. This Schedule, and every other Schedule which incorporates terms from the Master Agreement, each are separate, assignable lease agreements, and not part of the Master Agreement. If there is any inconsistency between the terms of this Schedule and those of the Master Agreement, then this Schedule will control.

## Customer & Billing Contact Information

Lessee Full Legal Name
Champion Laboratories, Inc.

| Contact Person | Contact Phone No. | Federal Tax ID # | State of Org. |
|---|---|---|---|
| Dina Reid | 618-445-6011 | [redacted] | DE |

Company Address
200 South 4th Street, Albion, IL 62806

Equipment Location
SEE EQUIPMENT SCHEDULE A

## Equipment Description

| Qty | Manufacturer | Model Number | Description | Serial Number | Maximum Annual Hours |
|---|---|---|---|---|---|
| | | | SEE EQUIPMENT SCHEDULE A | | |
| | | | | | |

***Should Lessee exceed the Maximum Annual Hours stated in this Equipment Schedule with respect to any unit, Lessee will pay an additional $2 per hour for such unit.***

## Term/Lease Payment Schedule

| Term | Security Deposit/Advance Payment | Lease End Purchase Option | Base Monthly Lease Payment* |
|---|---|---|---|
| (Months) 60 | ☐ Security Deposit(s): n/a | ☒ FMV (defined in Section 17) | $408.94 (incl. IL sales tax) |
| | ☐ Advance Payment(s): n/a | ☐ $1.00 ☐ Other: n/a | * Plus Applicable Taxes—See Section 11 |

The first monthly payment will be due on the Commencement Date together with interim rent for the period between the Acceptance Date and the Commencement Date at the daily rate equal to 1/30th of the monthly rental. The Commencement Date shall be the first day of the month following the Acceptance Date, unless the Acceptance Date is the first day of the month, in which case the Commencement Date shall be the Acceptance Date. Additional monthly payments will be due on the same day of each following month. All payments and other amounts due or to become due at the time and in the amounts set forth in the Lease, unless otherwise notified, shall be remitted to us at **OnPoint Capital, LLC, PO Box 87618, Department #2071, Chicago, IL 60680-0618.**

## Lessee Authorized Signature

**THIS LEASE MAY NOT BE CANCELED**

| Champion Laboratories, Inc. Authorized Signature | Date: | Print Name: |
|---|---|---|
| X [signature] | 10/23/19 | Greg Noethlich |
| | Title: President and CEO | |

## Equipment Acceptance Certificate

You certify that all of the Equipment referred to in this Lease has been delivered and received by you, and that any and all installation and set up has been completed. You have examined the Equipment and it in good operating condition and is satisfactory to you and you have accepted the Equipment. This lease cannot be modified or rescinded except by a writing signed by you and us. As of the date an Equipment Acceptance Certificate is received by us (the "Adjustment Date"), the monthly payments due hereunder shall be recalculated based upon increases in the swap rate for the Sixty (60)-month rate as published in the ICE SWAP Rate Historical Rates table for the week ending immediately prior to the Adjustment Date (the "Swap Rate"). If, on the Adjustment Date, the Swap Rate is greater than at Lease signing, the monthly payments due hereunder shall be increased to reflect the actual rate. Thereafter, the monthly payments shall remain fixed during the Term hereof. **ACCORDINGLY YOU AUTHORIZE US TO PURCHASE THE EQUIPMENT FOR YOUR USE. The "Commencement Date" of this lease will be the 1st of the month following the Acceptance Date.**

## Lessee Authorized Signature

**THIS LEASE MAY NOT BE CANCELED**

| Champion Laboratories, Inc. Authorized Signature | Acceptance Date: | Print Name: |
|---|---|---|
| X [signature] | 11/12/19 | Greg Noethlich |
| | Title: President and CEO | |

## Accepted by OnPoint Capital, LLC

| Authorized Signature | Date: |
|---|---|
| X [signature] | 11/12/19 |

EXHIBIT 14

tabbies

EQUIPMENT SCHEDULE A
to Equipment Schedule No. 017 to Master Lease Agreement No. [redacted]409

| Address | Year | Qty | Make | Model | Type | Serial Number | Additional Specs | Current Hours | Maximum Annual Hours |
|---|---|---|---|---|---|---|---|---|---|
| 200 South 4th Street, Albion, IL 62806 | 2011 | 1 | Raymond | RRS30 | Reconditioned Walkie Reach Truck | RRS-11-01898 | Reconditioned Battery and Charger | 1,200 | 1,000 |

Should Lessee exceed the maximum annual hours stated in this Equipment Schedule A with respect to any unit , Lessee will pay us additional rent equal to $2.00/hour.

**LESSEE:** **Champion Laboratories, Inc.**

**X** ______________________

**TITLE:** **President and CEO**

TFS
AN ONPOINT COMPANY
3295 Levis Commons Blvd.
Perrysburg, OH 43551

# INVOICE

| | |
|---|---|
| Invoice No. | 258579 |
| Date | 11/11/2019 |
| Customer # | [redacted]6211 |

| BILL TO: | SHIP TO: |
|---|---|
| OnPoint Capital, LLC<br>Attn: Document Processing<br>53 West 36th Street, Suite 701<br>New York, NY 10018 | Champ Labs - Albion OIL<br>Attn: Accounts Payable<br>200 S. 4th Street<br>Albion, IL 62806 |

Page 1 of 1

| ORDER DATE | TERMS | DUE DATE | CUSTOMER P. O. Nbr. |
|---|---|---|---|
| 11/11/2019 | 10 days | 11/21/2019 | |

| DESCRIPTION | QUANTITY | PRICE | EXT. PRICE |
|---|---|---|---|
| Raymond<br>Model: RRS-30TN<br>SN: RRS-11-01898<br><br>GNB Battery<br>Model: M1901209013A<br>SN: GFX0886<br><br>Enersys Charger<br>Model: EH3-12-900<br>SN: LI152640<br><br>Reconditioned 2011 Walkie Reach Stacker | 1.00 | $20,500.00 | $20,500.00 |

We certify, that to the best of our knowledge and belief, the prices invoiced are in compliance with the Rules and Regulations of the Federal Price Commission.

All amounts due are in US DOLLARS unless otherwise indicated.

| | |
|---|---|
| Sales Total | $20,500.00 |
| Tax Total | $0.00 |
| **Invoice Total** | **$20,500.00** |

**BILL OF SALE**

Re: Lease Agreement No. [redacted]409-017

TFS, Ltd. (the "Seller"), for and in consideration of the payoff amount o[redacted]does hereby release, transfer and assign to OnPoint Capital, LLC (the "Purchaser"), all Seller's right, title and interest in and to the Equipment as listed below:

1 Raymond RRS-30TN Walkie Reach Truck with S/N RRS-11-01898
1 GNB M1901209013A Battery with S/N GFX0886
1 Enersys EH3-12-900 Charger with S/N LI152640

TO HAVE AND TO HOLD, all and singular the Equipment by these present bargained, sold and confirmed unto Purchaser, its successors and assigns, forever.

AND, Seller, for itself, its successors and assigns, does hereby warrant to Purchaser, its successors and assigns, that at the time of this sale, Seller has neither caused nor suffered any liens, claims or encumbrances to be created by Seller against the Equipment.

The Equipment is transferred to Purchaser in "AS IS-WHERE IS" CONDITION AND SELLER MAKES NO OTHER REPRESENTATIONS OF WARRANTIES WITH RESPECT TO THE EQUIPMENT INCLUDING THOSE OF MERCANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

By its acceptance of the Equipment, Purchaser further agrees that it has paid or will pay any and all applicable sales, property, excise, use and privilege taxes that may be imposed on Purchaser or Seller by any Federal, State, City, County, or other governmental authority upon the transaction accomplished hereby or upon the ownership or use of the Equipment, and hereby agrees to indemnify and hold the Seller harmless from and against any and all claims and liabilities (including, without limitation, costs and expenses) for such taxes from the date of this Bill of Sale forward.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed it its name by an authorized officer as of November 12, 2019.

TFS, Ltd.

By: Walter Stranzl

Name: Walter Stranzl

Title: Vice President

ORIGINAL

# PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASE

THIS PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASE ("Agreement") is made as of November 29, 2019 by and between OnPoint Capital, LLC (hereinafter called "Seller") having its principal place of business at 53 West 36th Street, Suite 701, New York, NY 10018 and KINGSBRIDGE HOLDINGS, LLC (hereinafter "Buyer") having its offices at 150 N. Field Drive, Suite 193, Lake Forest, IL 60045.

WITNESSETH:

That in consideration of the mutual undertakings herein contained, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Sale of Equipment. Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller, the Equipment subject to the leases listed in **Exhibit A** attached hereto at the Lessee's ("Lessee") installation address, plus all of Seller's rights related thereto including all warranties, rights under software licenses, if any, and contracts pertaining to the equipment and all insurance proceeds thereon, all other general intangibles related thereto, and all substitutions, upgrades and additions thereto (collectively, the "Equipment"), subject to any Permitted Encumbrances, as defined in Paragraph 3 below.

2. Purchase Price. The Purchase Price of the Equipment of [redacted] is the sum of (i) [redacted] which amount Buyer agrees to pay to Seller by wire transfer not later than November 29, 2019 which represents Buyer's purchase of the Equipment ("Net Investment"), plus (ii) Buyer's assumption of the discounted stream of payments, based on a funding date of November 29, 2019, in the amount of [redacted]

3. Delivery and Title. Buyer hereby agrees to accept delivery of the Equipment at the facilities of the Lessees, as listed on **Exhibit A** (the "Lessee") at the locations set forth in **Exhibit B** hereto. Seller represents and warrants that Seller has good marketable title to the Equipment, free and clear of all liens, claims and encumbrances of any kind, except for: 1) the leasehold rights of the Lessee under the Lease, as defined below, and 2) the rights and interests conveyed and granted to the discounted stream of payments owner (the "Senior Lenders") by and under that certain Specification to Master Assignment Agreement as listed in Exhibit A, (the "Initial Assignment") between Seller, as assignor, and Senior Lender, as assignee(s), regarding the Equipment and the Lease Schedule identified in Section 4 hereof (together, "Permitted Encumbrances").

4. Assignment of Lease.

Seller hereby unconditionally and irrevocably assigns and sets over unto Buyer, subject and subordinate to the Permitted Encumbrances and effective on the date of payment by Buyer of the cash portion of the Purchase Price set forth in Section 2. (i) above, (i) all of its right, title and interest in, under and to Schedule Nos as listed on

EXHIBIT
tabbies
15

ORIGINAL

**Exhibit A** collectively, the "Lease Schedule") to the master lease agreements listed on Exhibit A (collectively the "Lease") between Seller and Lessee, and (ii) all of Seller's rights and interests in the Leases as it relates to the Lease Schedule and/or the Equipment thereunder, including all rents assumed per the dates as listed on the Exhibit A and after, and other sums due and to become due thereunder after receipt by Senior Lender of all amounts due Senior Lender under the Lease Schedule by way of and in accordance with the terms of the Initial Assignment. All interim rentals accruing prior to the base term lease commencement date and base term rentals due prior to those which were assigned to Senior Lender shall be for the account of Seller. Seller agrees to promptly provide Buyer with a copy of all notices received from Lessee and/or any third party regarding the Equipment, including taxing authorities and any vendor or manufacturer of the Equipment. Seller further assigns and sets over to Buyer any and all rights to provide upgrades to the Equipment.

5. WARRANTY DISCLAIMER. **OTHER THAN AS SET FORTH IN THIS AGREEMENT OR IN ANY OTHER AGREEMENTS BETWEEN SELLER AND BUYER, SELLER DOES NOT WARRANT THE EQUIPMENT IN ANY RESPECT, EITHER EXPRESSLY OR BY IMPLICATION AND WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS OR ADEQUACY FOR ANY PURPOSE OR USE, QUALITY, PRODUCTIVENESS OR CAPACITY.** SELLER HEREBY ASSIGNS TO BUYER (TO THE EXTENT TO WHICH THE SAME MAY BE ASSIGNABLE AND SUBJECT TO THE PERMITTED ENCUMBRANCES) AND ENFORCE FOR BUYER'S BENEFIT (TO THE EXTENT NOT ASSIGNABLE PROVIDED THAT SELLER IS ENTITLED TO ENFORCE THE SAME FOR ITSELF), ANY WARRANTY OF THE MANUFACTURER RELATIVE TO THE EQUIPMENT AND AGREES TO EXECUTE SUCH DOCUMENTS AS SHALL BE NECESSARY TO EFFECTUATE SUCH ASSIGNMENT.

6. Representations of Seller. Seller hereby represents and warrants and Buyer may rely on the following:

(a) Seller will transfer good and marketable title in and to the Equipment, the Lease Schedule and the Lease as it relates thereto to Buyer, free and clear of any and all liens, claims or encumbrances, subject to Permitted Encumbrances, and upon delivery to Seller of the cash portion of the Purchase Price by Buyer, Seller will deliver to Buyer a Bill of Sale pertaining to the Equipment, free and clear of all liens, claims and encumbrances except for the rights of Lessee under the Lease Schedule and for Permitted Encumbrances, and a certified copy of the Lease and a copy of the Lease Schedule and other original documents pertaining thereto including, without limitation, all consents, waivers and any other written communications or correspondence.

(b) Seller is a duly organized and validly existing corporation in good standing under the laws of the State of Ohio and is duly qualified to do business in each jurisdiction (including the jurisdiction where the Equipment is or is to be located) where

ORIGINAL

its ownership or lease of property or the conduct of its business requires such qualification.

(c) The Lease and Lease Schedule have been duly executed and delivered, are in full force and effect, constitute the valid and binding obligation of Seller and of Lessee and are enforceable against Seller and the Lessee in accordance with the terms of the Lease and Lease Schedule (subject to laws of general application affecting creditors' rights) and no defaults or conditions which, with the passage of a cure period or giving of notice or both, would constitute defaults, exist thereunder or under the Initial Assignment documents by the Lessee or by Seller.

(d) Seller has the power and authority to enter into this Agreement and the Bill of Sale, and to carry out the transfer of the Equipment and Lease Schedule to Buyer and the other transactions contemplated hereunder, subject to the Permitted Encumbrances There is no action, suit or proceeding pending against Seller before or by any court, administrative agency or other governmental authority which brings into question the validity of, or might in any way impair, the execution, delivery or performance by Seller of this Agreement.

(e) The execution and delivery of this Agreement and the Bill of Sale by Seller and the performance by it of its obligations hereunder and thereunder have been duly authorized by all necessary corporate action of Seller and do not violate or conflict with (i) any provision of Seller's Certificate of Incorporation or By-Laws, (ii) any law or any order, writ, injunction, decree, rule or regulation of any court, administrative agency or any other governmental authority, or (iii) any agreement to which Seller is a party or by which Seller is bound.

(f) The making and performance by Seller of this Agreement and the Bill of Sale and the transactions contemplated therein do not conflict with and are not inconsistent with, and will not result (with or without the giving of notice or passage of time or both) in a breach of or constitute a default or require any consent under the terms of any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Seller is a party or by which Seller may be bound or to which it may be subject.

(g) The Lease and Lease Schedule have been duly executed and delivered by Seller and will, on the date of closing hereunder, be in full force and effect without any defenses or offsets; the Lease Schedule constitute a separately enforceable lease agreement and neither default, nor event which, but for the passing of a cure period or the giving of notice or both, would be a default, will then have occurred or be continuing under the terms of the Lease or Lease Schedule; the Equipment is located at the place designated in the Lease Schedule; and Seller warrants that (i) no prepayments of rent under the Lease Schedule have been made by Lessee and (ii) any payments received by Seller under the Lease Schedule which are not due Senior Lender, Seller or any applicable taxing authority or other party of interest under the Lease Schedule shall by

 ORIGINAL

remitted immediately upon Seller's receipt to Buyer or, upon written directions from Buyer, to Buyer's assignee.

(h) This Agreement and the Bill of Sale have been duly authorized, executed and delivered by Seller and constitute the legal, valid and binding obligations of Seller enforceable in accordance with their terms.

(i) Seller has or will provide any and all notices and obtain any and all consents which may be necessary to the completion of the transaction contemplated hereby.

(j) All sales, use, property or other taxes, licenses, tolls, inspection or other fees, bonds, permits or certificates which were or may be required to be paid or obtained in connection with the acquisition by Seller of the Equipment, or the leasing thereof to Lessee prior to the sale to Buyer hereunder, have been, or will, when due, be paid in full or obtained.

(k) Seller represents and warrants that (i) all payments of installments of the firm, noncancelable rentals payable under the Lease Schedule are current and (ii) the rents payable under the Lease Schedule are not subject to any defenses, set-offs or counter-claims.

(l) No Event of Default or event which with the passing of time or the giving of notice, or both, would constitute an Event of Default has occurred under the Lease or the Lease Schedule.

(m) There are no agreements, leases, purchase options, liens or encumbrances known to Seller affecting the Equipment which are not disclosed in the Lease, in the Lease Schedule, in the documents by which Seller took title to the Equipment or in the Initial Assignment and/or other documents affecting the Equipment to which Seller is a party; and all such documents have been provided to Buyer.

(n) Any purchase options contained in the Lease or the Lease Schedule shall be a Fair Market Value purchase option, not a bargain payment, whether for renewal or purchase.

(o) If the terms of the Lease require Seller to provide notice to Lessee prior to the expiration of the initial term of the Lease Schedule or any extensions thereof, Seller shall be solely responsible for providing said notice to Lessee and hereby indemnifies Buyer for any loss, including inability to collect any rentals due pursuant to the terms of the Lease, whether arising before or after the expiration of the initial term, caused by Seller's failure to provide said notice on a timely basis.

7. <u>Representations and Warranties of Buyer.</u> Buyer hereby represents and warrants and Seller may rely on the following:

ORIGINAL

(a) Permitted Encumbrances. Buyer acknowledges and agrees that all of its rights and interests in and to a portion of the Equipment and the Lease Schedule conveyed hereby are subject and subordinate to the rights and interests of the Senior Lender pursuant to the Initial Assignment.

(b) Binding Obligation. Buyer has full power and authority to enter into this Agreement and to consummate the transactions contemplated herein. This Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate action of Buyer and this Agreement constitutes the legal, valid and binding obligations of Buyer enforceable in accordance with its terms.

(c) Inconsistent Agreements. The making and performance by Buyer of this Agreement and the transactions contemplated hereby do not contravene the Articles of Organization or Operating Agreement of Buyer or any provision of law applicable to Buyer and do not conflict and are not inconsistent with, and will not result (with or without the giving of notice or passage of a cure period or both) in a breach of or constitute a default or require any consent under the terms of any credit agreement, indenture, mortgage, purchase agreement, deed of trust, security agreement, lease, guarantee or other instrument to which Buyer is a party or by which Buyer may be bound or to which it may be subject.

8. Invoicing. Unless and until otherwise notified by Buyer and except as specifically provided in this Section 8, Seller shall have the obligation, at its expense, to bill for, collect, receive, and administer all payments due under the Lease Schedule, including, but not limited to, rent and sales/use tax payments on rent. Seller agrees to cause the Lessees to remit to Senior Lender (or as it shall direct) all amounts assigned to Senior Lender with respect to the Lease Schedule. With respect to personal property taxes, Buyer assumes responsibility for the filing and payment of such taxes to the appropriate taxing authorities and will promptly provide invoice copies to Seller to invoice Lessees for payment or reimbursement under Seller's name. Seller will bill, collect, and receive from Lessees all amounts payable or reimbursable from Lessees for personal property taxes and will promptly remit to Buyer all amounts collected or owed relating to the same. Notwithstanding the foregoing, Buyer may directly bill, collect, and receive all amounts payable or reimbursable from Lessees for personal property taxes if Seller fails to collect from Lessees and remit to Buyer the same within 30 days of Buyer's written request, provided that Buyer has given Seller a reasonable time to perform its obligations hereunder.

9. Miscellaneous.

(a) Survival. All representations, warranties and certifications made by Seller and Buyer shall survive the execution, delivery and performance of this Agreement and all other documents provided for herein.

(b) Successors and Assigns. This Agreement and all covenants and agreements contained herein as well as all other documents provided for herein shall be binding upon

ORIGINAL

and inure to the benefit of the parties hereto and their respective successors and assigns. The parties hereto agree that their respective successors and assigns any rely upon each and every representation, warranty, indemnification and covenant made herein and, if requested to do so, each party will acknowledge such reliance in writing to the successors or assigns of the other party.

(c) Indemnification.

(i) Seller shall indemnify and hold Buyer harmless from and against any and all loss, cost, damage, injury or expense (including court costs and reasonable attorneys' fees) wheresoever and howsoever arising which Buyer may incur by reason of any breach by Seller of any of its warranties, representations or obligations set forth herein, or in any documents executed in connection herewith. In addition, Seller shall indemnify and hold Buyer harmless from and against any and all loss, cost, penalty, damage, injury or expense (including court costs and reasonable attorneys' fees), arising from Seller, as opposed to Buyer, filing and paying all sales/use tax payments.

(ii) Buyer shall indemnify and hold Seller harmless from and against any and all loss, cost, damage, injury or expense (including court costs and reasonable attorneys' fees) wheresoever and howsoever arising which Seller may incur by reason of any breach by Buyer of any of its warranties, representations or obligations set forth herein, or in any documents executed in connection herewith.

(d) Captions. The captions appearing in this Agreement and in any other documents relating this transaction are inserted only as a matter of convenience and in no way define, limit, or describe the scope or intent of such sections or articles nor in any way effect this Agreement or any other documents relating to this transaction.

(e) Delivery of Documents; Further Instruments. Buyer's duty to pay the Purchase Price shall not arise until this Agreement is signed by the parties hereto, and Seller shall have delivered to Buyer the following documents acceptable to Buyer:

(i) certified true and correct photocopies of the applicable master lease agreements and the related transaction documents which directly relate to the subject Lease Schedule, including without limitation UCC-1 precautionary financing statements filed or to be filed by Seller against Lessee;

(ii) certified true and correct photocopies of the original Lease Schedule covering the Equipment;

(iii) all appropriate UCC-3 assignments of the UCC-1 precautionary financing statements filed by Seller against Lessee;

(iv) the original of this Agreement and the Bill of Sale covering the Equipment executed by Seller;

(v) original Acknowledgment of Assignment executed by Seller to be held in escrow provided that Buyer shall have the right, in its sole and

 ORIGINAL

absolute discretion, to send the Acknowledgment of Assignment to the Lessee with respect to the Leases affected by such event if (a) there is any breach by Seller of any representation, warranty, covenant or agreement in this Agreement or other instrument, document or writing executed in connection therewith, or any other agreement entered into by Seller for the benefit of Buyer; (b) there is any bankruptcy (voluntary or involuntary), reorganization or similar proceeding commenced by or against Seller or Lessee; (c) there is any default by Lessee under the Leases; or (d) Buyer otherwise deems itself to be insecure for any reason whatsoever;

(vi) certificates of insurance naming Seller and its assigns as additional insured and loss payee and otherwise in compliance with the requirements of the Lease;

(vii) a manufacturer's invoice and a copy of the applicable purchase agreement, if any, and any other evidence deemed necessary by Buyer to determine the monies owed for the Equipment, if any (as applicable) all in form satisfactory to Buyer; and

The parties hereto hereby agree to execute and deliver, or cause to be executed and delivered, such further instruments or documents and take each other action as may be required effectively to carry out the transactions contemplated herein.

(f) Governing Law. The validity, interpretation and enforcement of this Agreement shall be governed by the laws of the State of Illinois (irrespective of such State's choice of law rules). Any claims or disputes regarding this Agreement, the Equipment or the Lease Schedule shall be heard in any state or federal court located in Illinois and the parties hereby consent to the exclusive personal jurisdiction of said court. The parties waive any defense based on forum non conveniens and waives trial by jury.

(g) Power of Attorney. Seller hereby appoints Buyer, and its assignees, as its true and lawful attorney in fact to use and/or endorse Seller's name in connection with solely in reference to the applicable master lease agreement and the related transaction documents which directly relate to the subject Lease Schedule:

(i) all checks related herein received by Buyer on which Seller's name appears;

(ii) the transfer of title to all Equipment;

(iii) if necessary, collection actions on the assigned interest, which collection actions shall at all times comply with all applicable laws and regulations;

(iv) the execution of documents necessary to change the designated loss payee, or endorsing checks or drafts representing payment of loss or refund of premiums under any insurance policy issued in connection with the assigned interest; and

ORIGINAL

(v) the execution of any uniform commercial code filings, including, without limitation, assignments of uniform commercial code filings against the obligors, which Buyer believes are necessary from time to time in order to carry out the purposes hereof and to protect Buyer's interest hereunder.

This power is coupled with an interest and is irrevocable. Seller hereby ratifies, to the extent permitted by law, all that Buyer shall lawfully and in good faith do or cause by reason of and in compliance with this section.

(g) Representations and Warranties. The only representations and warranties of Seller and Buyer are those contained in this Agreement.

**IN WITNESS WHEREOF,** and intending to be legally bound hereby, Seller and Buyer have caused this Agreement consisting of eight typewritten pages, not including the Exhibit A and B attached hereto, to be executed and do each hereby warrant and represent that their respective signatories whose signatures appear below have been and are on the date of this Agreement duly authorized by all necessary and appropriate action to execute this Agreement.

SELLER:

**OnPoint Capital, LLC**

By: [signature]

Title: VP, operations

BUYER:

**Kingsbridge Holdings, LLC**

By: [signature]

John M. Morand

Title: Co-Chief Executive Officer

ORIGINAL

**EXHIBIT A TO PURCHASE AND SALE AGREEMENT AND ASSIGNMENT OF LEASES**

**See attached Spreadsheet Marked Exhibit A**

Exhibit A Pool #18 FUNDED 11-29-19

| Lessee | Lease # | Transaction Amount | Rental Payment | Billing Frequency | Contract Start Date | First Payment Date | Last Payment Due Date | Term | Funding Source | First Pmt Disc | Qty Pmt Sold | Discount Rate | Assumption Date | Pmt Assumed | Gross Purchase Price | PV Debt 12/2 (TVALUE) | PV Residual | TOTAL CASH PURCHASE PRICE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [redacted] | | | | | | | | | | | | | | | | | | |
| Champion Laboratories, Inc. | [redacted]409-017 | $ 21,986.25 [redacted] | $ 408.94 | Monthly | 12/01/2019 | 12/01/2019 | 11/01/2024 | 60 | NEC Financial Services, LLC | 01/01/2020 | 59 | [redacted] | 01/01/2020 | 59 | $ [redacted] | $ 19,903.05 | $ [redacted] | $ [redacted] |

[redacted]