**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| FIRST BRANDS GROUP, LLC *et al.*, | : | Case No. 25-90399 (CML) |
| Debtors.[1] | : | (Jointly Administered) |

**SUMMARY COVERSHEET TO FIRST AND FINAL FEE APPLICATION OF THE EXAMINER AND BOIES SCHILLER FLEXNER LLP, ATTORNEYS FOR THE EXAMINER, FOR THE PERIOD FROM DECEMBER 16, 2025 THROUGH AND INCLUDING MAY 31, 2026**

| | | |
|---|---|---|
| **Name of Applicant:** | Martin De Luca; and Boies Schiller Flexner LLP ("**BSF**") | |
| **Applicant's Role in Case:** | Examiner and Attorneys for Examiner, respectively | |
| **Docket No. of Employment Order(s):** | Docket Nos. 1260 and 1886 | |
| **Interim Application ( )**<br>**Final Application (x )** | | |
| | **Beginning Date** | **End of Period** |
| **Time period covered by this Application for which interim compensation has not previously been awarded:** | December 16, 2025 | May 31, 2026 |
| Were the services provided necessary to the administration of or beneficial at the time rendered toward the completion of the case? (Y) | | |
| Were the services performed in a reasonable amount of time commensurate with the complexity, importance and nature of the issues addressed? (Y) | | |
| Is the requested compensation reasonable based on the customary compensation charged by comparably skilled practitioners in other non-bankruptcy cases? (Y) | | |
| Do expense reimbursements represent actual and necessary expenses incurred? (Y) | | |
| **Compensation Breakdown for Time Period Covered by this Application** | | |

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for the Chapter 11 Cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

| | |
|---|---|
| **Total professional fees covered in this Application:** | $6,944,188.98 |
| **Total professional hours covered by this Application:** | 5,104.3 |
| **Average hourly rate for professionals:** | $1,360.46 |
| **Total paraprofessional fees covered in this Application:** | $437,127.00 |
| **Total paraprofessional hours covered by this Application:** | 913.30 |
| **Average hourly rate for paraprofessionals:** | $476.43 |
| **Total fees requested in this Application:** | $5,112,473.81 |
| **Total expense reimbursements requested in this Application:** | $155,564.00 |
| **Total fees and expenses requested in this Application:** | $5,268,037.81 |
| **Total fees and expenses awarded in all prior Applications:** | $0.00 |

**Plan Status:** On September 1, 2026, the Court entered its order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code (Docket No. 3748. This Application is filed pursuant to paragraph 2 of said order.

**Primary Benefits:** As discussed below, during the Application Period, the Examiner and BSF conducted a complex and intensive international investigation and evidence-preservation exercise, resulting in the Examiner's Report filed on April 27, 2026 (Docket No. 2538) and the creation of an extensive database comprising documents, communications, and other information related to the Examiner's investigation. Both the Report and the database contain highly valuable information critical to the ongoing administration of the Debtors' bankruptcy cases.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| FIRST BRANDS GROUP, LLC *et al.*, | : | Case No. 25-90399 (CML) |
| Debtors.[2] | : | (Jointly Administered) |

**FIRST AND FINAL FEE APPLICATION OF THE EXAMINER AND BOIES SCHILLER FLEXNER LLP, ATTORNEYS FOR THE EXAMINER, FOR THE PERIOD FROM DECEMBER 16, 2025 THROUGH AND INCLUDING MAY 31, 2026**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Martin De Luca (the "**Examiner**"), the Examiner in the above-captioned jointly administered chapter 11 cases (the "**Chapter 11 Cases**") of First Brands Group, LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**" or "**FBG**"), and Boies Schiller Flexner LLP ("**BSF**"), as attorneys to the Examiner, hereby file their first and final application (this "**Application**") for allowance of compensation for services performed during the

[2] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for the Chapter 11 Cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

period commencing December 16, 2025 through and including May 31, 2026 (the "**Compensation Period**") in the amount of $5,112,473.81, and for reimbursement of actual and necessary expenses in the amount of $155,564.00 incurred during the Compensation Period, and respectfully represent as follows:

## JURISDICTION, VENUE, AND STANDING

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases and other authority for the relief requested herein include sections 330(a) and 503(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Court's Local Rule 2016-1, the Court's *Order Directing Appointment of an Examiner* entered on November 19, 2025 (Docket No. 726) (the "**Examiner Order**"), and the Court's *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* entered on November 17, 2025 (Docket No. 699) (the "**Interim Compensation Order**").

## BACKGROUND

4. On October 8, 2025, Raistone Capital LLC and Raistone Purchasing LLC – Series XXXII filed an *Emergency Motion for the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* (Docket No. 307). Subsequently, on October 15, 2025, the United States Trustee (the "**U.S. Trustee**") filed an *Expedited Motion for Entry of an Order Directing the Appointment of an Examiner* (Docket No. 340).

5. On November 19, 2025, the Court entered the Examiner Order, finding, among other things, that there was sufficient cause for the appointment of an examiner pursuant to section 1104(c) of the Bankruptcy Code for the purposes set forth in section 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code and specifically to:

a. Investigate the facts and circumstances, including general corporate practices, concerning the Debtors' prepetition factoring processes and factoring transactions related to:

i. Allegations that the Debtors' prepetition third-party factoring transactions ("**Factoring Transactions**") included (A) fraudulent or inaccurate invoices and the related accounts receivable in the Debtors' books and records and audit reports; and (B) accounts receivable factored more than once and, in each case of (A) and (B), the persons or entities responsible for any of the Factoring Transactions;

ii. Transactions and/or transfers between any of (A) the Debtors, (B) any insiders or affiliates of the Debtors, and (C) entities owned or controlled by an insider or affiliates, and (D) the unaffiliated third party factors (the "**Third-Party Factors**") concerning (X) the Factoring Transactions and the transfers and use of the proceeds of such Factoring Transactions; and,

iii. Any accounting with respect to the proceeds of the Factoring Transactions and any property of third parties received by the Debtors that the Examiner deems appropriate.

b. Investigate the facts and circumstances, including general corporate practices, concerning the Debtors' Off-Balance Sheet Financing Transactions, as defined in the Examiner Order, related to any transactions and/or transfers in connection therewith. Examiner Order ¶ 3.

6. The Examiner Order also directs the Examiner to "perform the duties set forth in section 1106(a)(3) and 1106(a)(4), subject to the terms of this Order." Examiner Order ¶ 2.

7. Paragraph 5 of the Examiner Order authorizes the Examiner to retain professionals pursuant to the standards under section 327 of the Bankruptcy Code and for the Examiner and his

retained professionals to seek payment of compensation and expense reimbursement pursuant to the Interim Compensation Order and section 330 of the Bankruptcy Code. Paragraph 4 of the Examiner Order provides a $7 million budget for the aggregate fees and expenses of the Examiner and his professionals (the "**Examination Budget**"), without prejudice to the Examiner's right to seek an increase in the Examination Budget.

8. On January 21, 2026, as required under the Examiner Order, the Examiner filed his proposed Work Plan (the "**Work Plan**") (Docket No. 1650), outlining the topics, details, and timeline for an investigation in accordance with the Examiner Order.

9. On January 29, 2026, the Court entered an order approving the Work Plan (Docket No. 1819).

10. Pursuant to the Work Plan, the intensive transnational investigation by the Examiner and his professionals built significant momentum in developing a detailed factual record that bears on the overriding concerns of the Chapter 11 Cases, namely to determine how the Debtors' "corporate practices" enabled the apparent financial frauds to occur prepetition and who was responsible.

11. However, in late February, the Examiner substantially scaled down his investigation due to: (i) the imminent exhaustion of the Court-approved $7 million Examination Budget; (ii) the announced lack of additional debtor-in-possession funding by the Ad Hoc Lenders or any other source; (iii) the refusal of the Ad Hoc Lenders to include the Examiner and his professionals in the collateral carve-out—that now covers the other major professionals in the Chapter 11 Cases under the DIP financing order—or to fund an increase in the Examination Budget; and (iv) the apparent likelihood of an administrative insolvency in the Chapter 11 Cases.

12. The Examiner therefore prioritized the collection and preservation of documents, data, and other evidence critical to the investigation, evaluation, and later prosecution of claims

against non-Debtor third parties or assets on behalf of the Debtors by estate representatives. The volume and complexity of the information gathered to date and the discovery of additional areas of inquiry that were not fully anticipated at the outset of the examination led the Examiner to conclude that a comprehensive investigation would require substantially more time and resources than allocated under the Examination Budget.

13. The precipitous events of the Chapter 11 Cases created a difficult choice for the Examiner: either stop work and not complete the report contemplated by the Court-approved Work Plan, or continue his investigation on a highly tailored, limited basis and complete an initial report knowing that the Examiner's and his professionals' fees and expenses would likely exceed the Examination Budget before there was any assurance that fees and expenses exceeding the Examination Budget would have a source of funding. Indeed, the Examiner raised concerns about the adequacy of the Examination Budget in pleadings on at least two occasions. ECF No. 1354 ¶ 15; ECF No. 1724 at 12–13. The Examiner's counsel also reported those concerns to the Court at a hearing on January 22, 2026.

14. Notwithstanding the lack of DIP funding or the protection of a collateral carve-out, and the resulting financial risks, the Examiner and his professionals determined that, in order for the Court, the Debtors' estates, and parties in interest to have the benefit of the Examiner's investigative efforts and initial findings and impressions, they would complete and file the Examiner Report. The alternative would have been resources expended on an investigation that physically spanned the globe, with valuable evidence collected, maintained and organized with an e-discovery vendor, and no report for the benefit of the estate and financial fraud victims to guide them through the evidence amassed. Completing the Examiner Report was the only appropriate choice for the benefit of the Debtors' estates.

15. On April 17, 2026, the Examiner filed his Examiner Report under seal.

16. Following the filing of the Report, the Examiner conferred with the Debtors and other information-producing parties regarding the treatment of information designated as Highly Confidential and Confidential Material contained in the Report. Following those consultations, the Examiner reached agreement with producing parties that certain confidential information should remain sealed and finalized the Report.

17. Accordingly, the Examiner filed a revised Examiner Report on April 27, 2026, which remains under seal.

18. Also on April 27, 2026, a redacted version of the revised Report was filed on the public docket (Docket No. 2538).

19. The Examiner Report describes the work performed, the Examiner's initial impressions, open questions that warrant further investigation, and the high-value work streams that have not yet been completed.

20. Due to the exigencies of the Investigation, in order to fulfill the Examiner's mandate notwithstanding the constraints of the Examination Budget, the Examiner's professionals rendered services and incurred fees and expenses that, in the aggregate, exceeded the Examination Budget.

21. To date, the Debtors have disbursed the entire $7 million Examination Budget to the Examiner and his professionals, including local co-counsel, the forensic investigations firm and the e-discovery vendor, on a *pro rata* basis.

22. Through May 31, 2026 (i.e., the Compensation Period), BSF incurred a total of $6,944,188.98 in fees and has received a total of $5,112,473.81 in compensation (the difference of $1,831,715.17 being the "**BSF Budget Overage**") and has received 100% reimbursement of its expenses in the total amount of $155,564.00. The payments made to BSF cover only time and expense charges billed through March 2026 pursuant to the Interim Compensation Order.

23. On July 27, 2026, the Debtors filed the last iteration of their *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3448) (the "**Plan**").

24. On August 24, the Court entered its *Order Denying Plan Confirmation* (Docket No. 3710). On September 1, 2026, the Court entered an order converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (Docket No. 3748) (the "**Conversion Order**").

## RELIEF REQUESTED

25. This Application has been prepared in accordance with section 330(a) of the Bankruptcy Code, Bankruptcy Rule 2016, Bankruptcy Local Rule 2016-1, the Court Procedures for Judge Christopher M. Lopez, the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, and the Interim Compensation Order.

26. By this Application, the Examiner and BSF seek entry of an order substantially in the form submitted concurrently herewith, pursuant to section 330(a) of the Bankruptcy Code, the Interim Compensation Order, and the Conversion Order, approving fees and expenses incurred throughout the Compensation Period but approving compensation and expense reimbursement limited to the amounts previously paid to BSF for time and expense charges pursuant to the Interim Compensation Order. The Examiner and BSF do not seek, through this Application, approval of any additional compensation relative to the BSF Budget Overages.

27. There is no agreement or understanding between the Examiner, BSF, and any other person, other than members of BSF, for the sharing of compensation to be received for services rendered in the Chapter 11 Cases. During the Compensation Period, other than payment received by the Examiner and BSF on account of monthly fee statements in accordance with the Interim Compensation Procedures Order, the Examiner and BSF received no payment or promises of

payment from any source for services rendered, or to be rendered, in any capacity whatsoever in connection with the matters covered by this Application.

28. The fees charged by the Examiner and BSF in the Chapter 11 Cases are billed in accordance with BSF's existing billing rates and procedures in effect during the Compensation Period. The rates the Examiner and BSF charge for the services rendered by their professionals and paraprofessionals in these chapter 11 cases are no greater than the rates they charge for professional and paraprofessional services rendered in comparable bankruptcy and non-bankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy matters in a competitive national legal market.

**SUPPORTING DOCUMENTS**

29. Attached hereto as **Exhibit A** is the Certification of Benjamin Waisbren, a partner of BSF (the "**Waisbren Certification**"), regarding the Examiner's and BSF's compliance with the Fee Guidelines and the Court's General Order 2018-5 for Complex Chapter 11 Cases.

30. Attached hereto as **Exhibit B** is a schedule of all BSF attorneys (including the Examiner) and paraprofessionals who performed services during the Compensation Period, together with summary information regarding hours, rates, and fees.

31. BSF has not attached detailed time entries or detailed expense backup to this Application. Such detail was provided to all parties required to receive monthly submissions under the Interim Compensation Order for each month through March 2026 (the "**Monthly Submissions**"). The payments already made to BSF were made on the basis of those Monthly Submissions and cover only time and expense charges through March 2026. None of the parties upon whom the Monthly Submissions were served, including the United States Trustee, objected to any of the Monthly Submissions. If the Court wishes to review detailed time records and

expense details through May 2026, BSF can provide that information to the Court under seal or in such other manner as the Court orders.

32. Maintaining the confidentiality of the detailed time records and expense information is in the interests of the Debtors' chapter 7 estates because the descriptions may reveal investigative priorities, witness-related information, litigation strategy, work-product, or other information relevant to claims and causes of action that may be pursued by or for the benefit of creditors.

33. Attached hereto as **<u>Exhibit C</u>** is a summary and comparison of the aggregate blended hourly rates billed by BSF timekeepers in BSF's U.S. offices to non-bankruptcy matters during the prior twelve-month period ending April 30, 2026, and the blended hourly rates billed to the Debtors' estates during the Compensation Period (the "Blended Rate Comparison Chart").

**SUMMARY OF PROFESSIONAL SERVICES RENDERED DURING <u>THE COMPENSATION PERIOD</u>**

34. During the Compensation Period, the Examiner and BSF spent significant time and effort in rendering services to the Debtors' estates. The below summary of services rendered and reflected in the Time Records is organized by project or task category; certain services performed may overlap between, or may appropriately be allocated to, more than one category, but a good-faith effort was made by all BSF timekeepers to categorize work performed in a consistent manner across all timekeepers.

**a. <u>Examiner's Services</u>**
Hours: 557.6 Fees: $1,438,608.00

Services rendered under this task category include, among other things:

- As reflected in the Report, the Examiner completed an immense amount of work within a very tight time frame under the exigent circumstances of the Chapter 11 Cases. The scope and complexity of FBG's operations required extensive coordination among representatives of multiple parties and stakeholders—including the Debtors' professionals, counsel to the Ad Hoc Lenders, counsel to the Official Committee of Unsecured Creditors, counsel to numerous third-party factoring entities and

financers of special purpose vehicles, the U.S. Trustee, the U.S. Attorney's Office for the Southern District of New York, e-discovery vendors, FBG personnel, and local counsel in foreign jurisdictions and in the Southern District of Texas.

- The Examiner conducted numerous site visits to key FBG locations spanning multiple jurisdictions, which were essential to identifying relevant custodians of evidence and data, understanding FBG's business operations, and securing critical documents and data. The Examiner's team also conducted over 70 witness interviews in seven countries and collected and

  processed more than 16.5 million documents from more than 120 custodians.

- In addition to document collection, the Examiner undertook extensive informal third-party discovery and evidence preservation efforts. The Examiner sent over 60 preservation letters, issued more than two dozen voluntary information requests, and has served approximately 26 subpoenas on third-party banks to obtain critical financial records.

- As noted above, as the circumstances of the Chapter 11 Cases changed, the Examiner wound down, as promptly as practicable, his investigation activities and shifted his and his team's efforts to preparing the Examiner Report now on file.

**b. <u>Investigation Management</u>**
Hours: 808.8 Fees: $1,139,833.50

Services rendered under this task category include, among other things:

- Managing and coordinating the overall investigative work stream on a day-to-day basis, including developing and refining investigative objectives, sequencing work among multiple professional teams, and supervising the efficient execution of a complex, fast-moving examination.

- Internal sessions concerning prioritization of investigative avenues, allocation of resources across jurisdictions, coordination with foreign and domestic counsel, and oversight of document collection, witness outreach, and evidence-preservation efforts to ensure that work performed remained consistent with the Examiner Order and the Court-approved Work Plan.

- Management of the Examiner team's interactions with e-discovery and other vendors, development of workflows for processing large volumes of data, and ongoing review of emerging facts to determine what issues warranted immediate attention in light of budget and timing constraints.

- Addressing prioritization of the investigation so that critical evidence could be preserved and the most important work streams could be completed notwithstanding severe funding constraints.

**c. <u>Information Gathering and Management</u>**
Hours: 1,966.3 Fees: $1,850,013.48

Services rendered under this task category include, among other things:

- Collection, organization, review, and management of substantial volumes of information, documents and data relevant to the Examiner's investigation; identification of likely custodians and repositories of responsive material; coordination of the receipt of documents and electronically stored information from the Debtors, third parties, and foreign sources, and management of the process with the e-discovery vendor.

- Evaluation of the completeness and reliability of produced information, identification of gaps in the evidentiary record, structuring information so that it could be used efficiently in witness interviews, legal analysis, and asset tracing.

- Evidence-preservation efforts, preparation and follow-up on voluntary information requests, and coordination of workflows for tagging, categorizing, and synthesizing documents and data collected from multiple jurisdictions and sources.

- Given the scale and complexity of the information universe, these services were essential not only to the development of factual findings, but also to preserving a usable and organized record for the benefit of the estates and any future fiduciaries or estate representatives who may continue the investigation or pursue related claims.

**d. <u>Communications with Parties in Interest</u>**
Hours: 443.1 Fees: $536,311.50

Services rendered under this task category include, among other things:

- Communications and coordination with the Debtors and their professionals, the Ad Hoc Lenders and their counsel, the Official Committee of Unsecured Creditors and its professionals, the U.S. Trustee, foreign and domestic counsel, third-party factors and financing counterparties, financial institutions, and other parties possessing information relevant to the Examiner's mandate.

- These communications addressed document and data access, scheduling and preparation for witness interviews, preservation demands, voluntary information requests, confidentiality issues, disputes regarding information production, and the status and scope of the investigation.

- Timekeepers also communicated with vendors and other service providers to facilitate the collection, preservation, and processing of information required for the examination.

- In addition, this category included communications concerning the Examination Budget, the evolving funding constraints affecting the investigation, and issues arising from the filing, sealing, redaction, and circulation of the Examiner's report.

**e. Financing Transactions Analysis**

Hours: 345.5 Fees: $463,598.00

Services rendered under this task category include, among other things:

- Investigation and analysis of the Debtors' factoring arrangements, off-balance sheet financing transactions, and related accounting and reporting practices. Timekeepers reviewed transaction documents, financing structures, underlying invoices and accounts receivable, correspondence, ledger information, and other records to assess the nature of the relevant transactions, the parties involved, and the manner in which the transactions were recorded, represented, and administered.

- This work also included analyzing whether particular transactions reflected potential duplication, mischaracterization, irregular accounting treatment, or other indicators of impropriety bearing on the issues identified in the Examiner Order.

- This category further encompassed synthesis of complex factual material into coherent working analyses for use in internal strategy sessions, interviews, and the preparation of the Examiner's report. Professionals evaluated connections among financing transactions, corporate practices, and the conduct of insiders and related entities, and considered how the available evidence bore on the Examiner's mandate to investigate the relevant transactions, identify responsible persons or entities, and preserve a record for potential future claims and estate causes of action.

**f. Flow of Funds and Other Assets**

Hours: 125.0 Fees: $148,179.00

Services rendered under this task category include, among other things:

- Tracing of the movement of funds and other assets among the Debtors, affiliated and non-Debtor entities, insiders, trusts, counterparties, and financial institutions in multiple jurisdictions.

- Analysis of bank records, transaction-level information, ledgers, accounting materials, and supporting documentation to reconstruct

transfers, identify patterns of movement, and evaluate the relationship between financing proceeds and subsequent disbursements.

- Efforts to determine the ownership, control, location, and status of assets throughout the world potentially relevant to the estates and to identify information necessary for future recovery or litigation efforts.

- Coordination across investigative, legal, and data-management work streams; follow-up on requests to banks and other third parties; analysis of complex flow-of-funds issues arising from related-entity transactions; and

- Development of factual narratives concerning how assets and proceeds moved through the broader enterprise.

**g. <u>Court Hearings</u>**
Hours: 114.2 Fees: $175,602.00

Services rendered under this task category include, among other things:

- Preparation for and participation in hearings and status conferences before this Court relating to the Examiner's appointment, work plan, budget, employment of professionals, and other matters affecting the scope and progress of the examination. Time in this category included reviewing pleadings and issues to be addressed at scheduled hearings, coordinating among members of the Examiner team and local counsel, and preparing speaking points, outlines, and supporting materials for court appearances. This category also included attendance at hearings and post-hearing analysis and follow-up concerning the Court's rulings and their implications for the ongoing investigation and related professional work.

**h. <u>Preparation of Interim and Final Reports</u>**
Hours: 789.1 Fees: $864,075.00

Services rendered under this task category include, among other things:

- Outlining, drafting, draft reviews, revisions, and finalization of the Examiner's Report. Professionals synthesized extensive factual material gathered from document review, interviews, financial analysis, and other investigative efforts into a coherent narrative addressing the issues identified in the Examiner Order and the Work Plan. This work required close collaboration among attorneys and the Examiner to organize complex factual findings, articulate initial conclusions and open issues, and ensure that the report accurately reflected the evidentiary record while remaining useful to the Court, parties in interest, and future estate representatives.

- This category also included editing and source citation checking for accuracy, consistency, and clarity; review of protective order, confidentiality and sealing issues; coordination with producing parties regarding confidential and highly confidential information; preparation of redactions; and revisions necessary for compliance with protective orders and filing requirements.

**i. <u>Employment and Compensation of Professionals</u>**
Hours: 92.8 Fees: $150,621.50

Services rendered under this task category include, among other things:

- Preparing, revising, and prosecuting applications and related papers concerning the retention and compensation of the Examiner's professionals, including counsel and other service providers, as well as addressing issues arising under the Court's compensation procedures and applicable bankruptcy rules and guidelines.

- Timekeepers worked on the preparation of employment applications, supporting declarations, proposed orders, budget-related materials, fee statements, and the present fee application, and coordinated internally and with other parties concerning disclosures, billing categories, compensation procedures, and related approval issues.

**j. <u>Case Administration</u>**
Hours: 516.8 Fees: $457,427.00

Services rendered under this task category include, among other things:

- General administrative and organizational work necessary to support the Examiner's engagement and to ensure the orderly conduct of the examination. This work included maintaining internal case files and investigative materials, scheduling meetings and interviews, coordinating travel and logistics, monitoring deadlines, organizing work streams among team members, and addressing routine but necessary operational matters related to the administration of the engagement.

- Time in this category also included review and management of court filings and docket developments relevant to the Examiner's mandate, as well as internal coordination necessary to keep the investigative process moving efficiently. With work occurring across multiple jurisdictions and involving numerous constituencies, these administrative services were essential to preserving continuity, avoiding duplication, and ensuring that substantive work could proceed on an organized and cost-effective basis.

**k. <u>Non-Working Travel Time</u>**
Hours: 262.2 Fees: $157,047.00

- Services rendered under this task category consisted of non-working travel time incurred in connection with the Examiner's investigation, including travel to hearings, witness interviews, site visits, meetings with relevant parties, and other necessary in-person investigative activities in the United States and abroad. Given the international nature of the relevant operations, records, and witnesses, certain travel was unavoidable to preserve evidence, assess business locations and recordkeeping environments, and advance the examination efficiently.

- The travel reflected in this category was reasonable and necessary under the circumstances and was closely tied to substantive investigative work.

35. The foregoing professional services were necessary and appropriate to the Examiner's investigation pursuant to the Work Plan. The professional services performed by the Examiner and BSF were in the best interests of the Debtors' estates. Compensation for such services is commensurate with the complexity, importance, and nature of the issues and tasks involved. All of the Examiner's and BSF's professional services were performed skillfully and efficiently.

36. The professional services performed by the Examiner and BSF during the Compensation Period required an aggregate expenditure of approximately 6,021.8 hours by the Examiner and BSF's partners, counsel, associates, staff attorneys, paraprofessionals, and non-legal staff. Of the aggregate time expended, approximately 2,583.8 recorded hours were expended by BSF partners and counsel, approximately 2,520.5 recorded hours were expended by BSF associates and staff attorneys, and approximately 917.5 recorded hours were expended by BSF paraprofessionals. Of the twenty-six BSF attorneys who billed time, six billed fewer than 15 hours to this matter. Of the ten BSF paraprofessionals who billed time, two billed fewer than 15 hours for this matter.

37. During the Compensation Period, the Examiner billed at a rate of $2,580.00/hour. BSF billed for time expended by attorneys for the Examiner based on hourly rates ranging from $420.00 to $1,890.00 per hour for attorneys. Allowance of compensation in the amount requested results in a blended hourly billing rate for BSF attorneys, excluding the Examiner, of $1,210.90, and with the Examiner included, the blended hourly rate is $1,360.46.

## ACTUAL AND NECESSARY EXPENSE DISBURSEMENTS

38. BSF has disbursed $156,211.64 as expenses incurred in providing professional services during the Compensation Period. These expenses are substantially related to necessary travel-related transportation, lodging and meal costs. The expenses were reasonable and essential to the Examiner's investigation pursuant to the Work Plan.

39. BSF's regular practice is not to include components of those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services. The reimbursement amounts do not exceed those set forth in the Fee Guidelines or the Bankruptcy Local Rules.

40. BSF complied with the Fee Guidelines and Bankruptcy Local Rule 2016-1.

41. BSF did not charge for photocopies. With respect to legal research, BSF does not charge more than the actual cost. These charges are intended to cover BSF's direct operating costs, which costs are not incorporated into BSF's hourly billing rates.

42. The actual expenses incurred in providing professional services were those that were necessary, reasonable, and justified under the circumstances to facilitate the Examiner's investigation in accordance with the Work Plan.

**THE REQUESTED COMPENSATION AND EXPENSE REIMBURSEMENT SHOULD BE ALLOWED**

43. Section 330(a)(1) of the Bankruptcy Code provides that a Court may award a professional employed under (or, in this case, pursuant to the standards of) section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered…[and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A)–(B).

44. The Fifth Circuit Court of Appeals has held that lower courts should consider the six factors found in section 330(a)(3) of the Bankruptcy Code when awarding compensation to professionals. See In re Crager, 691 F.3d 671, 676 (5th Cir. 2012). Specifically, under section 330 of the Bankruptcy Code, courts "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors," including:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

45. In the instant case, the Examiner and BSF submit that the services for which they seek compensation and the expenditures for which they seek reimbursement in this Application were necessary for and beneficial to facilitating the important work of the Examiner and his professionals under the Work Plan, ultimately resulting in the Examiner Report, which will prove invaluable to the Debtors' estates and their representatives as they investigate and potentially pursue claims against non-Debtor persons and entities. The compensation requested herein is reasonable considering the nature, extent, and value of such services to the Debtors' estates.

46. The requested compensation for the foregoing services is commensurate with the complexity, importance, and nature of the issues and tasks involved. Not only were the Examiner's and BSF's professional services performed skillfully and efficiently, but whenever possible, they sought to minimize the cost of services by utilizing talented junior attorneys and paraprofessionals to handle various aspects of the work commensurate with their skill levels. In addition, groups of the same BSF attorneys were utilized for similar tasks in the Chapter 11 Cases to minimize the costs of intra-BSF communication and education about the tasks.

47. Accordingly, approval of the compensation for professional services and reimbursement of expenses already paid to BSF pursuant to the Interim Compensation Order is warranted. The Examiner and BSF do not seek allowance or payment, through this Application, of any compensation or expense reimbursement above amounts already paid to BSF.

**NOTICE**

48. Notice of this Application will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-l(d).

## CONCLUSION

49. BSF respectfully requests that the Court enter an order pursuant to section 330(a) of the Bankruptcy Code and the Interim Compensation Order: (i) approving the fees and expenses incurred by BSF during the Compensation Period; (ii) approving the compensation and expense reimbursement already paid to BSF pursuant to the Interim Compensation Order; and (iii) granting such other and further relief as the Court may deem just and proper.

*[Signature block on next page]*

Dated: October 1, 2026

Respectfully submitted,

/s/ *Jesse Panuccio*

BOIES SCHILLER FLEXNER LLP
Jesse Panuccio (admitted *pro hac vice*)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
jpanuccio@bsfllp.com

BOIES SCHILLER FLEXNER LLP
Robert D. Gordon (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
(212) 446-2300
rgordon@bsfllp.com

BOIES SCHILLER FLEXNER LLP
Benjamin Waisbren (admitted *pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
bwaisbren@bsfllp.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2026, a true and correct copy of the foregoing Application was served via the Court's CM/ECF system to all parties consenting to service through the same.

By: /s/ *Matthew S. Okin*
Matthew S. Okin