**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| FIRST BRANDS GROUP, *et al.*, | : | Case No. 25-90399 (CML) |
| Debtors.[1] | : | (Jointly Administered) |

**RESPONSE OF PATRICK JAMES TO MOTION OF EXCESS ABC INSURERS FOR ENTRY OF AN ORDER (I) CLARIFYING THAT MAY 29, 2026 ORDER AUTHORIZES PAYMENTS BY EXCESS ABC INSURERS, OR ALTERNATIVELY (II) MODIFYING AUTOMATIC STAY TO ALLOW EXCESS ABC INSURERS TO MAKE PAYMENTS, INCLUDING ADVANCEMENT OF DEFENSE COSTS, OF INSURED PERSONS**

Patrick James, by and through his undersigned counsel, files this response to the Insurers' Motion[2] relating to the Court's May 29 Order.

## I. PRELIMINARY STATEMENT

1. Mr. James supports the relief requested in the Insurers' Motion and concurs with its interpretations of the May 29 Order.[3] The May 29 Order authorizes the primary ABC insurer and all Side A insurers to pay Defense Costs consistent with their obligations under the ABC Policy.

---

[1] A complete list of the Debtors may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands (collectively, the affiliated debtors and debtors in possession are referred to herein as "**First Brands**" or the "**Debtors**" or the "**Company**"). The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Motion For Entry Of An Order (I) Clarifying That The May 29, 2026 Order [Dkt. 2845] Modifies Automatic Stay To Authorize Payments By Excess ABC Insurers, Or Alternatively (II) Authorizing, And, To Extent Necessary, Modifying Automatic Stay To Allow Excess Insurers To Make Payments, Including Advancement Of Defense Costs, Of Insured Persons [Dkt. 3669] (the "**Insurers' Motion**"). See May 29, 2026 Order [Dkt. 2845] (the "**May 29 Order**"). Capitalized terms not defined herein have the meanings ascribed to them in the Insurers' Motion.

[3] Several other Side-A insurers joined in the motion. See Side A Insurers' Joinder In Excess ABC Insurers' Motion For Clarification Or, In The Alternative, Relief From Automatic Stay [Dkt. 3825] (the "**Side A Insurers' Joinder**"). See also Edward James Joinder In Insurers' Motion [Dkt. No. 3824] ("**Edward James Joinder**").

2. Mr. James writes separately to respectfully request that the Court enter the Proposed Clarifying Order[4] submitted with the Insurers' Motion at its first convenience and without awaiting the hearing set on October 20, 2026.[5] The circumstances presented are sufficiently bespoke to warrant that relief. The Court entered the May 29 Order sua sponte, and no party appealed from or otherwise challenged it. The May 29 Order's text is clear—so much so that it conflicts with the insurers' position that the Order created an ambiguity that precludes them from funding Defense Costs. Those costs are accruing rapidly, as preparations are underway for the upcoming criminal trial in New York with several significant deadlines in the coming weeks. Time no longer affords the insurers the luxury of holding back payments until the October 20 hearing so they can seek the "comfort" of yet another order reaffirming what the May 29 Order already makes plain.

3. The only objection to the Insurers' Motion has been lodged by the former Creditors' Committee; even the Debtors did not object.[6] It is telling that the Creditors' Committee's Objection is an outlier. The Objection offers no legitimate, competing interpretation of the May 29 Order, leaving the Creditors' Committee to argue the Court lacks jurisdiction to decide the Insurers' Motion in light of Edward James' and the insurers' appeals from the Court's January 7 Order.[7] But the Appeals challenge the finding that the ABC Policies are estate property and have no bearing on the Insurers' Motion, which focuses solely on the May 29 Order (that no party

---

4 See [Proposed] Order Clarifying That May 29, 2026 Order [Dkt. 2845] Modifieds Automatic Stay To Authorize Payments, Including Defense Costs, By Excess ABC Insurers [Dkt. 3669-8] (the "**Proposed Clarifying Order**").

5 See Amended Notice Of Hearing dated September 17, 2026, setting hearing on the Motion for October 20, 2026 [Dkt. 3800] (the "**Insurers' Motion Hearing Notice**").

6 See Objection Of Official Committee of Unsecured Creditors to Motion [Dkt. 3695] (the "**Objection**"). See also Exhibit F to Insurers' Mot. [Dkt. 3669-6].

7 See Order Regarding Motion for Entry of an Order (I) Authorizing and, to the Extent Necessary, Modifying the Automatic Stay to Allow Use of Proceeds of Directors and Officers Liability Insurance Policies Issued to Non-Debtor Mayfair Enterprises, LLC for Insureds' Defense Costs or, in the Alternative, (II) Confirming that Advancement of Defense Costs and Providing Notice in Accordance with Directors and Officers Liability Insurance Policies Does Not Violate the Automatic Stay [Dkt. 1231] (the "**January 7 Order**"). The appeal from the January 7 Order pursued by Edward James and the insurers bears the caption In re James, No. 4:26-cv-513 (S.D. Tex.) (hereafter, the "**Appeals**"). See also [Dkt. 1647, 1865].

challenged or appealed), not the property of the estate issue currently on appeal. While the Insurers' Motion Hearing Notice for the October 20 hearing did not set an objection deadline (and parties may have negotiated their own deadlines), the May 29 Order is clear and already grants stay relief by its own terms;[8] according to the insurers, purported ambiguities must be resolved to continue the payment of Defense Costs; and the defense of the criminal trial is reaching a critical phase. Accordingly, Mr. James respectfully maintains that under these unique circumstances, the Proposed Clarifying Order can be entered now.

## II. MAY 29 ORDER IS CLEAR AND REQUIRES NO CLARIFICATION

4. While the Excess ABC Insurers complain they "are uncertain whether the order authorizes payments under the Excess ABC Policies,"[9] the May 29 Order does not lend itself to competing interpretations. It plainly says that "the Primary Insurer and Side A Insurers" can make payments under the Policies and that "[c]apitalized terms that are not defined have the meaning ascribed to them in the motion at ECF No. 798."[10] In turn, that motion defines "Side A Insurers" to include all those "listed on Exhibit C to ... Docket No. 10."[11] Exhibit C plainly enumerates the Excess ABC Insurers.[12] And the priority of payments under the ABC Policies shows the Insureds take priority anyway, with the Side A Policies as excess to the ABC Policies.[13] Moreover, given the nature of how directors' and officers' liability insurance works (i.e., a "tower" comprised of

---

8 The May 29 Order lifting the stay as to the ABC Policy is wholly consistent with the Court's earlier finding that the ABC Policy is property of the estate. So too is the Insurers' Motion, which acknowledges the Court's property of the estate finding by seeking to have the stay lifted as to the Excess ABC Policies to the extent such policies are not covered by the May 29 Order.

9 Insurers' Mot. ¶ 37.

10 May 29 Order ¶ 1 & n.1.

11 Motion for Relief from Stay to Allow the Use of Proceeds of Directors and Officers Liability Insurance Policies Issued to Non-Debtor Mayfair Enterprises, LLC for Insureds' Defense Costs or, in the Alternative (II) Confirming that Advancement of Defense Costs and Providing Notice in Accordance with Directors and Officers Liability Insurance Policies Does Not Violate the Automatic Stay [Dkt. 798] ¶ 4.

12 Exhibit C to Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Insurance Policies, Surety Bonds, and Letters of Credit and (B) Pay All Obligations With Respect Thereto, and (II) Granting Related Relief Filed by Debtor First Brands Group, LLC [Dkt. 10-3].

13 Insurers' Mot. ¶¶ 16, 50.

layers of ABC and Side A policies), any contrary interpretation would be illogical. As explained in the Side A Insurers' Joinder, the ABC Policy is composed of a "Primary ABC" policy and nine "Excess ABC" policies, followed by a Side A policy and nine "Excess Side A" policies. The Excess ABC policies, by their nature, are part and parcel of the ABC Policy.[14]

5. There is no cause for confusion. The May 29 Order allows the Excess ABC Insurers to make payments, "including the advancement of Defense Costs."[15] Nor do the insurers have a basis to look to the May 29 Order as a reason to deny payment. To obviate any future dispute or litigation, Mr. James respectfully requests entry of the Proposed Clarification Order confirming what is an otherwise straightforward reading.[16]

6. The Creditors' Committee's contention in the Objection that clarification of the May 29 Order must await exhaustion of the Side A Tower misapprehends the policies. As the Side A Insurers' Joinder discusses more fully, there is a single tower of directors' and officers' insurance consisting of both the ABC Policies (primary layer and excess layers 2 through 10) and Side-A Policies (layers 11 through 20). Under certain circumstances, the Side A Policies drop down and provide coverage before the exhaustion of the ABC Policies.[17] Waiting longer will deny the advancement of Defense Costs at precisely the moment when they are needed and prevent the policies from providing "insureds with protection from financial harm that insurance policies are presumed to give." In re WorldCom, Inc. Sec. Litig., 354 F. Supp. 2d 455, 469 (S.D.N.Y. 2005).

---

[14] The proposed order submitted in connection with the December 2025 Motion to Modify the Automatic Stay to Allow the Use of Proceeds of Directors and Officers Liability Insurance Policies Issued to Non-debtor Mayfair Enterprises, LLC for Insureds' Defense Costs [Dkt. 1150] made explicit that the Excess ABC policies were intended to "follow form" with the ABC Primary Policy and thus were part of the request to lift the stay. *See* Proposed Order Modifying the Automatic Stay to Allow the Use of Proceeds of Directors and Officers Liability Insurance Policies Issued to Non-Debtor Mayfair Enterprises, LLC for Insureds' Defense Costs [Dkt. 1150-1].

[15] May 29 Order ¶ 1.

[16] Similarly, the Insurers' Motion seeks stay relief to the extent necessary. Mot. ¶ 37. But the May 29 Order already gives stay relief. *See* May 29 Order ¶ 2 ("The automatic stay set forth in section 362 of the Bankruptcy Code, to the extent applicable, is modified to permit the Primary Insurer and Side A Insurers to pay and/or advance Defense Costs consistent with their obligations under the ABC Policy.").

[17] Side A Insurers' Joinder pp. 6-8.

## III. Timing Is Critically Important

7. A criminal trial in New York will commence February 7, 2027.[18] As the Excess ABC Insurers observe in the Insurer's Motion, substantial legal fees are being incurred.[19] That amount reflects the scope and complexity of the criminal case. Defending the criminal case is a considerable undertaking. Among other things, more than 4.5 million documents across more than 20 government productions to date must be reviewed along with grand-jury and search-warrant data. Processing this volume of documents entails significant support services and e-discovery vendors, and the technical financial and accounting data the documents contain requires assistance from financial experts. Motion practice has also been demanding. Mr. James filed more than seven pretrial motions already, including a motion seeking a bill of particulars, a motion seeking Brady material, a motion concerning First Brands Group's role as an arm of the prosecution, a motion seeking government agency material, a motion seeking severance, and multiple motions to quash various government subpoenas. Edward James similarly filed five pre-trial motions, including motions for a bill of particulars, for severance, to dismiss the indictment, for relief under

---

18 United States v. Patrick James and Edward James, No. 26-cr-29 (AT) (S.D.N.Y.) [Dkt. 104].

19 See Insurers' Mot. ¶ 48 ("As of July 16, 2026, the Insured Persons have submitted more than $43 million in legal fees for advancement under the ABC Policies and the Side A Policies. Movants understand that Berkshire and the Side A Insurers have paid approximately $21 million for legal fees and more than $20 million remains outstanding. The Insured Persons who are defendants in the Criminal Proceedings which are not stayed continue to incur significant legal fees."); Insurers' Mot. ¶ 49 ("Movants understand that the Insured Persons believe they will suffer irreparable harm and be deprived of the rights that they expected to have under the ABC Policies if the automatic stay is not modified as to the Excess ABC Policies. Therefore, while the ABC Policies may constitute property of the Debtors' Estate, there is cause to modify the automatic stay to permit payment, including the advancement of the Defense Costs, to the Insured Persons."); Insurers' Mot. ¶ 50 ("Debtors have not alleged that allowing payment under the Excess ABC Policies will cause harm to the Debtors' Estate. Nor have Katsumi or the UCC—who as claimants have no right to control the policies or their proceeds—identified to Movants any cognizable harm to them or to the Debtor's Estate if payments are allowed under the Excess ABC Policies. Moreover, the Order of Payments Provision in the Primary ABC Policy obligates the Excess ABC Insurers to prioritize the payment of the Insured Person's non-indemnified Loss under Insuring Agreement A over any Loss incurred by the Debtor or its estate."); Side A Insurers' Joinder p. 7 ("In reliance on the May Order, the Primary ABC Insurer paid Defense Costs and exhausted its $10 million of liability under the Primary ABC Policy"); Side A Insurers' Joinder p. 7 ("Absent clarification or modification of the May Order, the Insured Persons have a concrete belief they will suffer irreparable harm if the ABC insurers will be precluded from paying towards the more than $60 million in legal fees that continue to mount as the criminal, adversary, and related proceedings and investigations press on"); Edward James Joinder p. 4 ("As the Motion explains, at the time of filing, Insured Persons had submitted more than $43 million in legal fees for advancement, tens of millions of which remained unpaid. Since the Motion was filed, even more claims have been submitted for payment").

Federal Rule of Criminal Procedure 16, and to suppress evidence obtained pursuant to a search warrant. Multiple rounds of briefing are ongoing.[20] This case has also demanded Federal Rule of Criminal Procedure 17(c) subpoena practice, including significant time and effort expended working to compel First Brands Groups' compliance.

8. Significant work must be done in the coming weeks. Under the Southern District of New York's scheduling order,[21] (a) the Government's expert disclosures are due on October 9; (b) Defendants' expert disclosures are due on October 23, with rebuttals on October 30 and November 13, respectively; (c) the Government's Federal Rule of Evidence 404(b) disclosures will be due on November 17; (d) Daubert motions will be briefed in November, with oppositions and replies to follow in December and January; (e) Defendants will receive critical Section 3500 and Giglio Material on December 30; (f) in January, (i) the Government will provide its exhibit and witness lists, (ii) Defendants will, if applicable, provide advice-of-counsel defense notices and disclosures of relevant documents, (iii) Defendants will provide Federal Rule of Criminal Procedure 16 disclosures, and (iv) the Government and Defendants will exchange proposed jury documents; (g) motions in limine will also be fully briefed in January; and (h) finally, before trial commences on February 9, defendants will need to provide their exhibit and witness lists and Federal Rule of Criminal Procedure 26.2 disclosures.

9. To the extent that delay in advancing Defense Costs is attributable at least in part to confusion over the May 29 Order, Mr. James respectfully submits clarity is needed now. The insurers have claimed confusion for weeks already, and with each passing day, the criminal defense effort demands additional resources. Considering also the run-rate described by the insurers against the policies and the number of parties seeking coverage, delaying resolution of disputes around the May 29 Order for even a few weeks has meaningful repercussions.

---

[20] See Exhibit A to Ed James's Notice of Joinder to the Excess ABC Insurers' Motion [Dkt. 3824-1].

[21] United States v. Patrick James and Edward James, No. 26-cr-29 (AT) (S.D.N.Y.) [Dkt. 104].

## IV. APPEALS FROM JANUARY 7 ORDER DO NOT DIVEST COURT OF JURISDICTION

10. The Creditors' Committee's primary argument that the Court lacks jurisdiction to interpret the May 29 Order because of the Appeal is incompatible with the Fifth Circuit's rule that "'a narrow interpretation [of divestiture doctrine] is normally appropriate'"—particularly in the bankruptcy context where proceedings cannot be permitted to grind to a halt every time a disgruntled litigant challenges one small and discrete aspect. In re Acis Cap. Mgmt., L.P., 604 B.R. 484, 524 (N.D. Tex. 2019) (quoting Weingarten Realty Invs. v. Miller, 661 F.3d 904, 908 (5th Cir. 2011)). "When a notice of appeal has been filed in a bankruptcy case, the bankruptcy court retains jurisdiction to address elements of the bankruptcy proceeding that are not the subject of that appeal," and it "may even continue to address matters indirectly implicated in the appeal." In re Transtexas Gas Corp., 303 F.3d 571, 580 n. 2 (5th Cir. 2002); In re SCOPAC, 624 F.3d 274, 280 (5th Cir. 2010) (same).

11. Here, what is at issue in the Insurers' Motion—interpretation of the May 29 Order as it relates to the ability of the Excess ABC Insurers to make payments, including advancement of Defense Costs—is not at issue in the Appeal. Specifically, Edward James's appeal "is limited to only the parts of the Order and Oral Ruling finding 'that Debtors have an interest in the proceeds of the ABC Policy, and that interest is property of the estate under § 541.'"[22] The Side A Insurers' appeal similarly challenged only the Court's ruling "that Debtors have an interest in the proceeds of the ABC Policy, and that interest is property of the estate under § 541."[23] This Court undoubtedly retains jurisdiction to address the unrelated issues raised by the Insurers' Motion, just as the Court had jurisdiction to issue the May 29 Order—from which no party ever appealed and to which no party objected or otherwise raised a challenge. The Insurers' Motion acknowledges the Court's earlier ruling concerning the property of the estate issue by seeking to lift the stay as

---

[22] Ed James's Notice of Appeal [Dkt. 1647] at 2.

[23] Side A Insurers' Notice of Appeal [Dkt. 1865] at 2.

to the Excess ABC Policies to the extent that the stay was not already lifted under the May 29 Order.

Date: October 1, 2026
Houston, Texas

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

*/s/ Cameron M. Kelly*
Cameron M. Kelly
TX SBN: 24120936
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: (713) 221-7000
cameronkelly@quinnemanuel.com

James C. Tecce*
Anil Makhijani*
Grace Sullivan*
295 5th Avenue
New York, NY 10016
Telephone: (212) 849-7000

-and-

**DEBEVOISE & PLIMPTON LLP**
Erica S. Weisgerber*
Matthew J. Sorensen*
Emily Morgan*
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
eweisgerber@debevoise.com
mjsorensen@debevoise.com
elmorgan@debevoise.com
*admitted *pro hac vice*

*Attorneys for Patrick James*

**CERTIFICATE OF SERVICE**

I, Cameron Kelly, hereby certify that a copy of the foregoing document was filed on the 1st day of October, 2026, with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

*/s/ Cameron M. Kelly*
Cameron M. Kelly