**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **PLANTERS BANK** | * | **CASE NO.: 2:26-cv-01230** |
| | * | |
| **VERSUS** | * | **SECTION: DIVISION:** |
| | * | |
| **ONSET FINANCIAL, INC.** | * | **JUDGE:** |
| | * | |
| | * | **MAG. JUDGE:** |
| * * * * * * * * * * * * * * * * * * * * * * * * * | * | |

## COMPLAINT

Plaintiff, Planters Bank ("Planters") respectfully submits this Complaint ("Complaint") and avers as follows:

## PARTIES

1. Plaintiff, Planters, is a Mississippi state-chartered bank, which is authorized and registered to do business in Louisiana as a non-Louisiana business corporation, with its principal business establishment in Louisiana located in the Eastern District of Louisiana. For diversity jurisdiction, Planters is attributed citizenship of Mississippi.

2. Made defendant herein is Onset Financial, Inc. ("Onset"), a Utah corporation, with its principal place of business in Utah. For diversity jurisdiction, Onset is attributed citizenship of Utah.

## JURISDICTION AND VENUE

3. The Court has original jurisdiction over this suit pursuant to 28 U.S.C. § 1332. This is a civil action where there is complete diversity of citizenship as to all parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Onset because Onset has purposefully availed itself of the privileges of conducting business in Louisiana, including without limitation entering into transactions with Planters in Louisiana, directing payments and communications to Planters

in Louisiana, breaching contracts with Planters in Louisiana, and actions and inactions causing damages to Planters in Louisiana.

5. Venue is appropriate in this Court, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

6. On May 9, 2018, Trico Products Corporation entered into that certain Master Lease Agreement No. OFI1045321 (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Master Lease") with Onset Financial Inc. ("Onset").[1] On August 1, 2023, Onset and the Debtor entered into that certain Lease Schedule No. 028 dated August 1, 2023, as amended by that certain Amendment No. 1 to Lease Schedule No. 28 to Master Lease Agreement No. OFI1045321 dated December 4, 2024 ("Schedule") as to certain property described therein ("Property").[2] On August 7, 2023, Onset filed a precautionary UCC-1 as to the Schedule stating that the Schedule was a true lease, the Property was owned by the lessor, and that the UCC-1 was being filed for precautionary and informational purposes only ("UCC-1").[3] Trico Products Corporation delivered the Acceptance and Delivery and Approval for Progress Payment Certificates with invoices for the Property ("Certificates").[4]

7. On August 17, 2023, Onset assigned the Property and Schedule with all related rights and interests to Planters pursuant to the Sales and Assignment Agreement by and between Onset and Planters dated as of August 17, 2023 as amended by that certain Amendment No. 1 to Sales and Assignment Agreement dated December 27, 2024 ("Assignment").[5] Planters paid the full

[1] A copy of the Master Lease is attached hereto as Exhibit A.
[2] A copy of the Schedule is attached hereto as Exhibit B.
[3] A copy of the UCC-1 is attached hereto as Exhibit C.
[4] A copy of the Certificates is attached hereto as Exhibit D.
[5] A copy of the Assignment is attached hereto as Exhibit E.

purchase price in accordance with the Assignment. Onset filed an amendment to its UCC-1 to reflect the Assignment to Planters.[6] Further, Onset notified Trico Products Corporation of the Assignment by letter dated December 4, 2024 and Trico Products acknowledged and agreed to the Assignment.[7]

8. In the Assignment, Onset represented and warranted, *inter alia*, that (i) it was the owner of the Property or has a first lien and priority security interest in the Property, (ii) the Property was free and clear of liens, charges, encumbrances, (iii) no event, which with the lapse of time would become a default or an event of default, has occurred, (iv) it has not shared compensation with any third party, (v) the lease is not a split transaction, and (vi) the other matters set forth therein (collectively "Warranties").

9. Under section 6 of the Assignment, Onset had the unilateral right to repurchase the Schedule and the Property by giving notice to Planters. On December 27, 2024, Onset delivered its Notice to Repurchase ("Notice") to Planters stating: (i) its intent to repurchase the Schedule and the Property, (ii) that the repurchase shall take place at any time during, or at the end of the Lease, and (iii) that the repurchase price shall be determined as set forth in section 6 of the Assignment.[8] Section 6 states that the repurchase price is an amount equal to Planters then current book value of the Schedule together with outstanding costs, expenses and fees (including late fees and attorney's fees) plus any sales, use or transfer taxes which are collectively defined as the "Repurchase Amount."

10. Under section 7 of the Assignment, Onset agreed to act as Planter's agent to administer the Schedule, including billing and collection of rent payments thereunder. Upon a default, Onset

[6] A copy of the UCC-3 is attached hereto as Exhibit F.
[7] A copy of the notice letter and signed acknowledgement are attached hereto as Exhibit G.
[8] A copy of the Notice is attached hereto as Exhibit H.

agreed to take such action as Planters shall reasonably direct to enforce all rights and remedies under the Lease.

11. In September of 2025, Trico Products Corporation ("Debtor"), the lessee under the Master Lease and Schedule, First Brands Group, LLC and related entities (collectively "Debtors") filed Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas ("Bankruptcy Court"), which is pending under jointly administered case no. 25-90399 ("Bankruptcy Case").

12. Onset filed pleadings in the Bankruptcy Case claiming that Onset advanced the Debtors over a billion dollars in the twelve months prior to the Bankruptcy Case (starting in September of 2024 - just one month after the Assignment) and that the Debtors owed Onset $1.9 billion dollars. Onset included Planters' interests as those it was representing in the Bankruptcy Case.

13. Prior to the Bankruptcy Case, Onset received the Debtor's monthly payments due under the Schedule and then forwarded such payments to Planters. After the Bankruptcy Case was filed, the Debtor continued to make payments to Onset, including the payments due on the Schedule, pursuant to that certain *Stipulation and Agreed Interim Order Regarding Adequate Protection Among Debtors and Onset Financial, Inc.* entered in the Bankruptcy Case on October 1, 2025 at Dk. No 214 and that certain *Stipulation and Agreed Order Regarding Adequate Protection Among the Debtors and Onset Financial, Inc.* entered in the Bankruptcy Case on November 19, 2025 at Dk. No. 732 ("Stipulation and Order"). From the adequate protection payments received by Onset from the Debtors, Onset forwarded to Planters the monthly payments in the amount of $116,935.86 for each of November and December of 2025. However, Planters did not receive the adequate protection payment for January of 2026 and was advised by Onset that the Debtors had failed to make such payment to Onset thereby placing the Schedule in default.

14. On January 9, 2026, the Debtors filed suit against Onset and related parties in the Bankruptcy Court. In its Complaint ("Debtors' Complaint"), the Debtors alleged that "Onset conspired with Debtors' former officer, Edward James, in an unlawful scheme to defraud creditors out of billions of dollars and other property." The Debtors claimed that Onset "obtained transfers of approximately $2.9 billion in cash, triple digit returns, and alleged interests in inventory and equipment." The Debtors' 100-page Complaint outlines in detail the allegedly fraudulent scheme engineered by its former officer and Onset ("Scheme"). A copy of the Debtors' Complaint is attached hereto as Exhibit I and is incorporated herein.

15. The Debtors' Complaint primarily focused on Onset's SPV loan transaction rather than its direct equipment leases such as the Schedule. Indeed, Planters' 10.5% rate of return under the Schedule was at or below market for equipment leases. Planters was not involved in the Onset transactions that are the focus of the Debtors' Complaint.

16. Planters was concerned by the Debtor's allegations against Onset in the Debtors' Complaint and the Debtor's refusal to make the payments to Onset required by the Stipulation and Order. Planters was concerned that Onset appeared to be representing Planters' interests in the Bankruptcy Case as its own without disclosing that it was acting as an agent for Planters. Planters was concerned that Onset had a conflict in concurrently representing the interests of Onset and Planters.

17. At the same time, Planters learned that Onset had entered into an arrangement with Silver Point Capital regarding "Onset's interests" that would permit Silver Point Capital to direct the enforcement of rights and remedies and to recover proceeds on account of the Onset interests. Onset's December 31, 2025 press release stated: "Onset Financial, Inc. today announced that Silver Point Capital has acquired a controlling interest in the claims of Onset Financial, Inc. and

certain of its funding partners against First Brands Group, LLC and certain of its affiliates." Planters did not consent to any arrangement or agreement with Silverpoint. Onset later requested that Planters sign an agreement with Silverpoint regarding joint representation and Silverpoint's recovery of proceeds, and Planters declined to do so.

18. In light of the default under the Schedule and the Debtors' Complaint, Planters requested that Onset close its repurchase of the Schedule and Property pursuant to the Assignment and Notice, but Onset declined to do so (presumably because the end of the Lease has not yet occurred).

19. On January 21, 2026, Planters filed a notice of appearance and notice of its ownership of the Property and the Schedule in the Bankruptcy Case. On January 26, 2026, Planters filed its *Emergency Motion to Recognize Interests Under and to Enforce Stipulation and Order, and/or to Compel Performance Under Equipment Lease, and/or for Adequate Protection, and for Relief from the Automatic Stay* in the Bankruptcy Case stating that the Debtors' schedules and other pleadings in the case mistakenly indicate that Onset is the owner of the Property and the Schedule and attaching the Assignment and other documents to establish that Planters is the owner of the Property and the Schedule.

20. By January of 2026, the Debtors ran out of liquidity and announced their intent to sell their business units as going concerns. While the Debtors did sell certain business units as going concerns, the Debtors were not able to sell the business units which were utilizing the Property.

21. On March 23, 2026, the Debtors filed an *Emergency Motion of the Debtors for Entry of an Order Pursuant to Section 363 of the Bankruptcy Code (I) Approving and Authorizing the Debtors to Enter Into and Perform under the Consulting Agreement; (II) Authorizing the Sale of Wind Down Assets Free and Cleark of All Liens, Claims and Encumbrances; and (III) Granting Related Relief* ("Wind Down Motion") stating that the Debtors were forced to wind down remaining

operations and would be employing a liquidator to sell remaining assets. The Motion requested authority to expand the scope of the liquidation by notice and without further order of the Court. The proposed Order granting the Wind Down Motion included provisions providing Onset the right to consent to any sale of its collateral or property without any mention of Planters. Planters requested that the Debtor include language in the Order providing Planters the same rights as Onset with respect to the Property. Upon information and belief, Onset requested that the Planters provision be changed to require approval of both Planters and Onset to sell the Property. The Court entered the Order granting the Wind Down Motion ("Wind Down Order") with the language requiring the consent of Planters and Onset to the sale of the Property.

22. On May 28, 2026, the Debtors issued a notice that expanded the liquidation authorized by the Wind Down Order to include certain of the Property. On May 29, 2026, Onset and the Debtors filed their *Stipulation and Agreed Order Enforcing the Onset AP Order and Resolving, in Part, Onset Financial Inc.'s Emergency Motion (1) for Relief from the Automatic Stay, and (2) to Enforce the Onset AP Order* ("Stipulation") that would prohibit the Debtors from any further use of "Onset's equipment" without Onset's consent. Planters subsequently learned that despite the Assignment, Planters' separate appearance in the case, and Planters' consent rights in the Wind Down Order, Onset continued to treat the Schedule and Property as its own, including negotiations relating to the terms for the sale and disbursement of proceeds to Onset. Onset provided the Debtors consent to sell the Property without input from Planters (and only conferred with Planters after Planters learned from the Debtors that Onset had already approved the sale).

23. The Debtors' liquidation of the Property subject to the Lease would mark its end and trigger Onset's obligation to close the repurchase.

24. On May 29, 2026, Planters advised Onset in writing that it was required to repurchase the Property pursuant to the terms of the Notice and Assignment and provided Onset the "Repurchase Amount" as defined in section 6 of the Assignment.

25. In response, on June 2, 2026, Onset verbally advised Planters through counsel that it would not be complying with its repurchase obligation.

26. Onset is in clear breach of its obligations under the Assignment to repurchase the Schedule and the Property.

27. Further, the Warranties in the Assignment were false because, *inter alia*, other parties asserted liens and interests in the Property, events occurred which with the passage of time were a default under the Lease and the Schedule, Onset may have shared compensation with third parties, and the Schedule may be considered a split transaction and other matters.

28. In addition, Onset's Scheme contravened its contractual and legal duties to Planters by effectively depriving the Debtor and the other obligors on the Schedule from complying with its terms.

## CLAIMS

### Count I: Breach of Contract and Notice to Repurchase

29. Planters re-alleges and incorporates herein by reference all allegations in paragraphs 1-28 above.

30. Onset exercised its option to repurchase the Schedule and the Property by delivering its signed Notice to Planters on December 27, 2024 promising to close the repurchase at any time during or at the end of the Lease. However, Onset failed to close the repurchase during or at the end of the Lease.

31. Despite Planters' demand, Onset has refused to close the repurchase of the Schedule and the Property. As of May 29, 2026, the Repurchase Amount is $2,275,854.41, comprised of $2,197,513.91, Planters' current book value of the Lease, plus $78,340.50, the outstanding amount of costs, expenses and fees (including late fees and attorney's fees).

32. Onset breached its repurchase obligations under the Assignment and Notice and is liable to Planters for the Repurchase Amount as defined in the Assignment plus damages, attorneys' fees and costs.

**Count II: Breach of Warranty**

33. Planters re-alleges and incorporates herein by reference all allegations in paragraphs 1-32 above.

34. In the Assignment, Onset represented and warranted to Planters, *inter alia*, that (i) it was the owner of the Property or has a first lien and priority security interest in the Property, (ii) the Property is free and clear of liens, charges, encumbrances, (iii) no event, which with the lapse of time would become a default or an event of default, has occurred (iv) it has not shared compensation with any third party, (v) the lease is not a split transaction, and (vi) the other matters set forth therein. Onset's warranties, upon information and belief, may have been false, including without limitation that Onset was the owner of the Property or has a first lien and priority security interest in the Property.

35. In light of Onset's breach of the Warranties, Onset is liable for the amount of the purchase price under the Assignment plus damages, attorneys' fees and costs.

**Count III: Breach of Fiduciary Duty**

36. Planters re-alleges and incorporates herein by reference all allegations in paragraphs 1-35 above.

37. Onset agreed in the Assignment to act as Planters' agent to administer the Schedule. As such, Onset owed Planters a fiduciary duty to not take actions that would deprive the Debtor and the other obligors on the Schedule from the ability to comply with its terms.

38. Upon information and belief from the Debtors' Complaint, at the time of the Assignment, Onset was perpetuating the Scheme with the owner and officer of the Debtors to extract billions of dollars in liquidity from the Debtors. By engaging in the Scheme, Onset caused or hastened the Debtors' liquidity crisis and/or insolvency, resulting in the Debtors' bankruptcy filing and the defaults under the Schedule.

39. Onset's actions breached its fiduciary duty to Planters.

40. Onset is liable to Planters for its damages, attorneys' fees, and costs.

**<u>Count IV: Louisiana Unfair Trade Practices Act Claim</u>**

41. Planters re-alleges and incorporates herein by reference all allegations in paragraphs 1-40 above.

42. Upon information and belief from the Debtors Complaint, at the time of the Assignment, Onset was perpetuating the Scheme with the owner and officer of the Debtors to extract billions of dollars in liquidity from the Debtors. As a result, the Debtors were forced to file bankruptcy and could not comply with the Schedule.

43. As a result of Onset's actions and inactions, the Debtor was unable to perform its obligations to Planters. Had Planters known of Onset's Scheme, Planters would not have purchased the Schedule and Property from Onset pursuant to the Assignment.

44. Further, despite the Assignment and the conflicts raised by the filing and the substance of the Debtor Complaint, Onset represented to the Debtors and others in the Bankruptcy Case that it owned and controlled the Schedule and Property. Even after Onset separately appeared in the

Bankruptcy Case to protect its rights, Onset persisted in presenting itself as the owner or control party with respect to the Schedule and Property.

45. Onset's actions violated the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 et seq. Onset is liable to Planters for its damages, attorneys' fees, costs and treble damages as may be permitted under La. R.S. 51:1401 et seq.

**Count V: Misrepresentation**

46. Planters re-alleges and incorporates herein by reference all allegations in paragraphs 1-45 above.

47. Upon information and belief from the Debtors' Complaint, at the time of the Assignment, Onset was perpetuating a Scheme with the owner and officer of the Debtors to extract billions of dollars in liquidity from the Debtors. As a result, the Debtors were forced to file bankruptcy and could not comply with the Schedule.

48. As a result of Onset's actions and inactions, the Debtor was unable to perform its obligations to Planters. Had Planters known of Onset's Scheme, Planters would not have purchased the Schedule and Property from Onset pursuant to the Assignment.

49. Onset had a duty to Planters to disclose Onset's own actions that were and would render the Debtor unable to perform its obligations under the Schedule.

50. Onset is liable to Planters for its damages, attorneys' fees, and costs.

**Count V: Tortious Interference with Contract**

51. Planters re-alleges and incorporates herein by reference all allegations in paragraphs 1-50 above.

52. Pursuant to the Assignment, Planters acquired the Schedule and became the counterparty to the Debtor thereunder. Onset knew about the Schedule as it assigned the Schedule to Onset.

Onset's actions, including without limitation the Scheme alleged in the Debtors' Complaint, interfered with Planters' contractual relationship with the Debtor. Onset's interference was wrongful and/or illegal. As a result of the interference, the Debtor failed to perform under the Schedule thereby damaging Planters by depriving it of the benefit of the Assignment.

53. As a result of its tortious interference with contract, Onset is liable to Planters for its damages, including without limitation the value of the Schedule, plus attorneys' fees and costs.

WHEREFORE, Plaintiff Planters Bank prays that after due proceedings that there be judgment rendered in its favor and against Defendant Onset Financial, Inc. in the Repurchase Amount, which as of May 29, 2026 is $2,275,854.41, plus additional fees, costs and other amounts owed under the Schedule until the Repurchase Amount is paid in full, damages and penalties as allowed by law, including without limitation the return of the purchase price, the remaining payments due under the Schedule, loss of opportunity costs, and treble damages as allowed under the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 et seq. or similar applicable law.

Respectfully submitted:

CARVER, DARDEN, KORETZKY, TESSIER,
FINN, BLOSSMAN & AREAUX, L.L.C.

By: s/ David F. Waguespack

David F. Waguespack (Bar No. 21121)
John M. Theriot (Bar No. 41435)
1100 Poydras Street, Suite 3100
New Orleans, LA 70163
Telephone: (504) 585-3800
Telecopier: (504) 585-3801
Email: waguespack@carverdarden.com
jtheriot@carverdarden.com

***Attorneys for Plaintiff, Planters Bank***

4901-9248-5811, v. 1