**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 7** |
| | § | **(Previously Chapter 11)** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**SUMMARY COVER SHEET TO THE**
**FOURTH INTERIM AND FINAL FEE APPLICATION OF ALVAREZ & MARSAL**
**NORTH AMERICA, LLC, AS FINANCIAL ADVISOR TO THE CHAPTER 11 DEBTORS**

| **Name of Applicant:** | Alvarez & Marsal North America, LLC | |
|---|---|---|
| Applicant's Role in Case: | Financial Advisor to the Chapter 11 Debtors | |
| Docket No. of Employment Order(s): | December 8, 2025 [Docket No. 896] | |
| Interim Application (X) No. 4<br>Final Application (X) | Fourth Interim and Final | |
| | **Beginning Date** | **End Date** |
| Time period covered by this Application for which interim compensation has not previously been awarded: | 7/1/2026 | 8/31/2026 |
| Time period(s) covered by prior Applications: | 9/29/25 | 6/30/26 |
| Were the services provided necessary to the administration of or beneficial at the time rendered toward the completion of the case? **Yes** | | |
| Were the services performed in a reasonable amount of time commensurate with the complexity, importance and nature of the issues addressed? **Yes** | | |
| Is the requested compensation reasonable based on the customary compensation charged by comparably skilled practitioners in other non-bankruptcy cases? **Yes** | | |

---

1 A complete list of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for the chapter 7 estates of Viceroy Private Capital, LLC, First Brands Group Holdings, LLC ("FBGH"), and FBGH's Debtor subsidiaries is Eva Engelhart, Chapter 7 Trustee c/o Porter Hedges LLP, Joshua W. Wolfshohl, 1000 Main St., 36th Floor, Houston, Texas 77002. The service address for the chapter 7 estates of Global Assets LLC, Global Lease Assets Holdings, LLC, Carnaby Capital Holdings, LLC, Broad Street Financial Holdings, LLC, Broad Street Financial, LLC, Carnaby Inventory II, LLC, Carnaby Inventory Holdings II, LLC, Carnaby Inventory III, LLC, Carnaby Inventory Holdings III, LLC, Carnaby Capital, LLC, Global Assets GmbH, and Eagle Casting Holdings, LLC is Ronald J. Sommers, Chapter 7 Trustee c/o Jones Murray LLP, Erin E. Jones, 602 Sawyer, Suite 400 Houston, Texas 77007. The service address for the chapter 7 estates of Carnaby IV, LLC, Carnaby IV Holdings, LLC, Carnaby FA, LLC, and Carnaby FA Holdings LLC is Catherine Stone Curtis, McGinnis Lochridge P.O. BOX 720788, McAllen, Texas 78504.

| | |
|---|---|
| Do expense reimbursements represent actual and necessary expenses incurred? **Yes** | |
| **Fourth Interim Period (July 1, 2026 – August 31, 2026)** | |
| Total professional fees requested for the Fourth Interim Period: | $6,062,326.50 |
| Total professional hours covered by the Fourth Interim Period: | 6,360.20 |
| Average hourly rate for professionals: | $953.17 |
| Total paraprofessional fees requested for the Fourth Interim Period: | $3,640.00 |
| Total paraprofessional hours covered by the Fourth Interim Period: | 10.4 |
| Average hourly rate for paraprofessionals: | $350.00 |
| Total fees requested for the Fourth Interim Period: | $6,065,966.50 |
| Total expense reimbursements requested for the Fourth Interim Period: | $128,104.18 |
| Total fees and expenses requested for the Fourth Interim Period: | $6,194,070.68 |
| **Final Fee Period (September 29, 2025 – August 31, 2026)** | |
| Total professional fees requested in this Application: | $87,421,497.00 |
| Total professional hours covered by this Application: | 99,242.00 |
| Average hourly rate for professionals: | $880.89 |
| Total paraprofessional fees requested in this Application: | $37,500.00 |
| Total paraprofessional hours covered by this Application: | 113.90 |
| Average hourly rate for paraprofessionals: | $329.24 |
| Unbilled Fees Spent on Post-Conversion Fee Application Preparation: | $19,277.50 |
| Unbilled Hours Spent on Post-Conversion Fee Application Preparation: | 37.1 |
| Unbilled Expenses: | $94,500.87[2] |
| Total fees requested in this Application: | $87,478,274.50 |
| Total expense reimbursements requested in this Application: | $1,635,329.04 |
| **Total fees and expenses requested in this Application:** | **$89,113,603.54** |

[2] Unbilled expenses include amounts for services rendered by Hunton Andrews Kurth LLP ("**Hunton**"), as counsel to A&M. A&M seeks final allowance of such expenses pursuant to this Application. Invoices for Hunton's services are annexed hereto as **Exhibit I**.

| | |
|---|---|
| **Total fees and expenses awarded in all prior Applications:** | **$82,847,417.66**[3] |
| **Plan Status:** On June 12, 2026, the Court entered orders (i) conditionally approving the Disclosure Statement and authorizing the Debtors' to solicit votes on the Plan (Docket No. 2990) and (ii) denying the U.S. Trustee's motion to convert or dismiss the chapter 11 cases (Docket No. 2989). On August 24, 2026, the Court denied confirmation of the Plan (Docket No. 3710) and ordered that the Debtors' chapter 11 cases be converted to cases under chapter 7 of the Bankruptcy Code. On September 1, 2026, the Court entered an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code (Docket No. 3748). | |
| **Primary Benefits**: Across the engagement, A&M guided the Debtors through the chapter 11 process, including by: (i) assisting the Debtors in securing necessary first and second-day relief to ensure a smooth transition to chapter 11; (ii) advising on case strategy and restructuring alternatives; (iii) preparing cash forecasts and DIP reporting; (iv) helping the Debtors to secure $1.1 billion in DIP financing as well as OEM funding; (v) assisting with the M&A sale process for TMD, Horizon, and other assets; (vi) supporting the winddown of certain business units, including plant closures; (vii) handling ordinary-course operations and court reporting; (viii) leading liquidation/collateral monetization efforts; (ix) assisting with the development and drafting of the Disclosure Statement and Plan and providing court testimony in connection therewith; (x) assisting Weil and the Special Committee with carrying out key investigations; (xi) providing interim officers to assist with operating the Debtors; and (xii) providing testimony in depositions and hearings related to numerous motions and adversary proceedings. | |

[3] This amount reflects amounts allowed pursuant to A&M's First, Second, and Third Interim Fee Applications.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 7** |
| | § | **(Previously Chapter 11)** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**FOURTH INTERIM AND FINAL FEE APPLICATION**
**OF ALVAREZ AND MARSAL NORTH AMERICA, LLC,**
**AS FINANCIAL ADVISOR TO THE CHAPTER 11 DEBTORS**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Alvarez & Marsal North America, LLC, together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors (collectively, "**A&M**"), as financial advisor to the chapter 11 debtors in the above-captioned cases (the "**Debtors**"), hereby submits its fourth interim and final fee application for (i) interim allowance of compensation for services rendered and

[1] A complete list of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for the chapter 7 estates of Viceroy Private Capital, LLC, First Brands Group Holdings, LLC ("FBGH"), and FBGH's Debtor subsidiaries is Eva Engelhart, Chapter 7 Trustee c/o Porter Hedges LLP, Joshua W. Wolfshohl, 1000 Main St., 36th Floor, Houston, Texas 77002. The service address for the chapter 7 estates of Global Assets LLC, Global Lease Assets Holdings, LLC, Carnaby Capital Holdings, LLC, Broad Street Financial Holdings, LLC, Broad Street Financial, LLC, Carnaby Inventory II, LLC, Carnaby Inventory Holdings II, LLC, Carnaby Inventory III, LLC, Carnaby Inventory Holdings III, LLC, Carnaby Capital, LLC, Global Assets GmbH, and Eagle Casting Holdings, LLC is Ronald J. Sommers, Chapter 7 Trustee c/o Jones Murray LLP, Erin E. Jones, 602 Sawyer, Suite 400 Houston, Texas 77007. The service address for the chapter 7 estates of Carnaby IV, LLC, Carnaby IV Holdings, LLC, Carnaby FA, LLC, and Carnaby FA Holdings LLC is Catherine Stone Curtis, McGinnis Lochridge P.O. BOX 720788, McAllen, Texas 78504.

reimbursement of expenses incurred for the period from July 1, 2026 through August 31, 2026 (the "**Fourth Interim Period**") and (ii) final allowance of compensation for services rendered and reimbursement of expenses incurred for the period from September 29, 2025 through August 31, 2026 (the "**Final Fee Period**"), and respectfully represents as follows in support of this Application:

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), Rule 2016-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Docket No. 699) (the "**Interim Compensation Procedures Order**").

## Relief Requested

3. A&M respectfully requests that the Court enter an order (i) allowing, on an interim basis, (a) compensation for professional services rendered during the Fourth Interim Period in the amount of $6,065,966.50 and (b) reimbursement of actual and necessary expenses incurred during the Fourth Interim Period in the amount of $128,104.18, for a total of $6,194,070.68; and (ii) allowing, on a final basis, (a) compensation for professional services rendered during the Final Fee Period in the amount of $87,478,274.50 and (b) reimbursement of

actual and necessary expenses incurred during the Final Fee Period in the amount of $1,635,329.04, for a total of $89,113,603.54.

4. This Application has been prepared in accordance with sections 330(a) and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, Bankruptcy Local Rule 2016-1, the Court Procedures for Judge Christopher M. Lopez (the "**Court Procedures**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "**UST Fee Guidelines**" and, collectively with the Court Procedures, the "**Fee Guidelines**"), and the Interim Compensation Procedures Order.

5. A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

6. In further support of this Application, A&M submits the Certification of Charles Moore (the "**Moore Certification**"), which is attached hereto as **Exhibit B** and incorporated herein by reference.

**Background**

7. In September 2025, First Brands Group, LLC and its Debtor affiliates each commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code.

8. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (Docket No. 22) (the "**First Day Declaration**"), filed on September 29, 2025 and incorporated herein by reference.

9. On April 9, 2026, the Court entered an order converting the chapter 11 cases of (i) Patterson Inventory, LLC, (ii) Patterson Inventory Holdings, LLC, (iii) Starlight

Inventory I, LLC, and (iv) Starlight Inventory Holdings I, LLC, to cases under chapter 7 of the Bankruptcy Code (Docket No. 2396).

10. On September 1, 2026, the Court entered an order converting the chapter 11 cases of the other Debtors to cases under chapter 7 of the Bankruptcy Code (Docket No. 3748).

**Retention of A&M**

11. On October 24, 2025, the Debtors filed the *Application of Debtors for Entry of an Order (I) Authorizing the Debtors to (A) Retain and Employ Alvarez & Marsal North America, LLC, (B) Designate Certain Executive Officers, and (C) Engage Additional Personnel, and (II) Granting Related Relief* (Docket No. 417) (the "**Retention Application**"), pursuant to which the Debtors sought, among other relief, authority to employ and retain A&M and designate certain A&M personnel as executive officers of the Debtors, effective as of the commencement of the chapter 11 cases (the "**Petition Date**"), in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and A&M, dated as of October 24, 2025 (the "**Engagement Letter**").

12. On December 8, 2025, the Court entered the *Order (I) Authorizing the Debtors to (A) Retain and Employ Alvarez & Marsal North America, LLC, (B) Designate Certain Executive Officers, and (C) Engage Additional Personnel, and (II) Granting Related Relief* (Docket No. 896) (the "**Retention Order**"), approving the Retention Application and authorizing the employment and retention of A&M as of the Petition Date, pursuant to the terms of the Engagement Letter (as modified pursuant to the Retention Order).

**Summary of Services During the Fourth Interim Period**

13. During the Fourth Interim Period, A&M provided important services to the Debtors in support of their restructuring efforts. Those services included:

A. Accounting/Cut-Off: Assist the Debtors with accounting-related matters, including prepetition and postpetition claims payment processes, accounting reconciliations, postpetition reporting requirements, internal controls for the accounting, finance, and treasury departments, bank-related matters, transaction support, and other accounting and financial reporting matters.

B. Asset Sales: Assist the Debtors and advisors with their marketing process, including compiling information for buyer diligence, supplying supporting analysis/forecasts, and creation/support of draft Asset Purchase Agreements, including schedules, supporting collateral monetization and liquidation efforts related to accounts receivable, inventory, and machinery and equipment, among other assets, including coordination with liquidators and other stakeholders regarding related diligence, disposition planning, and recovery analyses.

C. Bankruptcy Support: Advise and assist the Debtors with the planning, development, evaluation and implementation of the Debtors' strategic, business and operating plans, including the coordination and preparation of the related financial projections.

D. Claims: Assist the Debtors with review of claims filed against the Debtors, claim reconciliation, and related work required for various negotiations and filings.

E. Contracts / Executory Contracts: Review of executory contracts and leases and performance of cost/benefit evaluations with respect to the assumption / rejection of certain agreements. Assist the Debtors with contract renegotiation process.

F. Court Hearings (Prep & Attend): Preparation for and attendance at various Court hearings and provide testimony on specific topics.

G. Due Diligence & Information Requests: Address information requests from and attend meetings and calls with various stakeholder constituencies, including lenders, Creditors' Committee, and their respective advisors. Respond to inquiries from creditors and third parties.

H. Employee Compensation: Assist the Debtors with compensation matters, including market based compensation for the bankruptcy process.

I. Retention / Fee Application: Prepare monthly fee statements and interim fee applications in accordance with Interim Compensation Procedures Order and other Court guidelines.

J. Insurance: Advise the Debtors on insurance renewals and placements and other matters relating to insurance policies, surety bonds and letters of credit.

K. Litigation: Advise and assist management and/or the Debtors advisors in connection with various litigation matters.

L. Monthly Operating Reports / Reporting: Prepared monthly operating reports, 2015.3 reports, and other monthly reporting required under various first-day orders.

M. Meetings with Third Parties, Management and Counsel: Participate in meetings with Debtors' management, special committee, and advisors to present findings or discuss various matters related to the filing or operating the business.

N. Plant Operations: Assist management in various operational matters, including cash and financial performance, developing projects to improve operations, wind-down planning initiatives, execution of plant closures, business unit wind downs, and related operational transition activities.

O. Plan / Disclosure Statement: Assist counsel with the preparation of the plan / disclosure statement, including the review of solicitation materials and requirements, review of various plan supplements and analyses. Assist counsel with preparing for confirmation hearing. Attend confirmation hearing and provide witness testimony.

P. Tax: Assist the Debtors with various tax related matters.

Q. Vendor Management: Assist the Debtors with postpetition vendor management, including analyzing supplier agreements, tracking supplier contraction and prepetition payment activity, and attend supplier meetings to review and discuss supplier financial status. Assist the Debtors with all vendor-related items, including, but not limited to, vendor strategy, negotiation, settlements, stipulations, and advising Debtors on general accounts payable questions.

**Summary of Prior Monthly Statements and Interim Fee Applications**

14. Pursuant to the Interim Compensation Order, A&M filed eleven (11) monthly fee statements (the "**Monthly Fee Statements**"). The Monthly Fee Statements contain detailed daily time logs describing the actual and necessary services provided and expenses incurred by A&M during the periods covered by such Monthly Fee Statements as noted below:

| Date Invoice Submitted | Invoice Period | Fees Requested | Expenses Requested | Total Payment Requested | *Payment Received | Date Payment Received | Fees Paid | **Expenses Paid | Interim Fees Pending | Interim Expenses Pending |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/10/2025 | September 29, 2025 - October 31, 2025 | $ 12,160,596.10 | $ 278,452.17 | $ 12,439,048.27 | $ 12,439,048.27 | 12/26/2025 | $ 12,160,596.10 | $ 278,452.17 | $ - | $0.00 |
| 12/26/2025 | November 1, 2025- November 30, 2025 | $ 14,284,304.30 | $ 272,128.02 | $ 14,556,432.32 | $ 14,556,432.32 | 1/12/2026 | $ 14,284,304.30 | $ 272,128.02 | $ - | $0.00 |
| 1/30/2026 | December 1, 2025 - December 31, 2025 | $ 16,102,294.60 | $ 331,402.99 | $ 16,433,697.59 | $ 16,433,697.59 | 2/17/2026 | $ 16,102,294.60 | $ 331,402.99 | $ - | $0.00 |
| 2/27/2026 | January 1, 2026 - January 31, 2026 | $ 12,179,610.50 | $ 243,026.76 | $ 12,422,637.26 | $ 9,986,715.16 | 3/20/2026 | $ 12,179,610.50 | $ 243,026.76 | $ - | $0.00 |
| 3/31/2026 | February 1, 2026 - February 28, 2026 | $ 6,238,011.00 | $ 165,901.91 | $ 6,403,912.91 | $ 5,156,310.71 | 4/15/2026 | $ 6,238,011.00 | $ 165,901.91 | $ - | $0.00 |
| 4/29/2026 | March 1, 2026 - March 31, 2026 | $ 6,820,465.00 | $ 67,328.36 | $ 6,887,793.36 | $ 5,523,700.36 | 5/14/2026 | $ 6,820,465.00 | $ 67,328.36 | $ - | $0.00 |
| 5/29/2026 | April 1, 2026 - April 30, 2026 | $ 5,765,691.50 | $ 32,082.03 | $ 5,797,773.53 | $ 4,644,635.23 | 6/17/2026 | $ 4,612,553.20 | $ 32,082.03 | $ - | $0.00 |
| 6/30/2026 | May 1, 2026 - May 31, 2026 | $ 4,183,625.50 | $ 50,964.50 | $ 4,234,590.00 | $ 3,397,864.90 | 6/17/2026 | $ 3,346,900.40 | $ 50,964.50 | $ - | $0.00 |
| 7/31/2026 | June 1, 2026 - June 30, 2026 | $ 3,658,432.00 | $ 13,100.42 | $ 3,671,532.42 | $ 2,939,846.02 | 8/17/2026 | $ 2,926,745.60 | $ 13,100.42 | $ - | $0.00 |
| 8/31/2026 | July 1, 2026 - July 31, 2026 | $ 4,039,325.00 | $ 83,194.57 | $ 4,122,519.57 | $ 3,314,654.57 | 8/18/2026 | $ 3,231,460.00 | $ 83,194.57 | $ 807,865.00 | $0.00 |
| 9/14/2026 | August 1, 2026 - August 31, 2026 | $ 2,026,641.50 | $ 3,246.44 | $ 2,029,887.94 | $ 1,624,559.64 | 9/30/2026 | $ 1,621,313.20 | $ 3,246.44 | $ 405,328.30 | $0.00 |
| | **TOTALS:** | **$ 87,458,997.00** | **$ 1,540,828.17** | **$ 88,999,825.17** | **$ 80,017,464.77** | | **$ 83,524,253.90** | **$ 1,540,828.17** | **$ 1,213,193.30** | **$ -** |

**Payments reflect 80% of fees and 100% of expenses*

15. Pursuant to the Interim Compensation Order, A&M filed three (3) interim fee applications (Docket Nos. 1949, 2917, and 3772) (the "**Interim Fee Applications**"). The Interim Fee Applications also contain detailed daily time logs describing the actual and necessary services provided and expenses incurred by A&M during the periods covered by such Interim Fee Applications as noted below:

| **Period Covered** | **Total Compensation and Expenses Incurred for Period Covered** | | **Total Amount Paid to Date** | |
|---|---|---|---|---|
| | **Fees** | **Expenses** | **Fees** | **Expenses** |
| 9/29/25 – 12/31/25 (First Interim) | 42,547,195.00 | 881,983.18 | 42,547,195.00 | 881,983.18 |
| 1/1/26 – 3/31/26 (Second Interim) | 25,238,086.50 | 476,257.03 | 25,238,086.50 | 476,257.03 |
| 4/1/26 – 6/30/26 (Third Interim) | 13,607,749.00 | 96,146.95 | 13,607,749.00 | 96,146.95 |

16. Detailed descriptions of the services rendered and out-of-pocket expenses incurred during the Final Fee Period are included in the Monthly Fee Statements and Interim Fee Applications, which are incorporated herein by reference. The following exhibits are also attached in support of this Application, and are fully incorporated herein for all purposes:

| Exhibit | Description |
|---|---|
| C | July 2026 Monthly Fee Statement (7/1/26 - 7/31/26) |
| D | August 2026 Monthly Fee Statement (8/1/26 - 8/31/26) |
| E | Final Summary of Fees by Professional |
| F | Final Summary of Time Detail by Task Category |
| G | Final Summary of Expense by Category |
| H | Final Expense Detail by Category |
| I | Hunton Invoices |

17. A&M is seeking final allowance of compensation for services rendered in the amount of $87,478,274.50 and reimbursement of actual and necessary out-of-pocket

expenses incurred in the amount of $1,635,329.04, for a total allowance of $89,113,603.54 during the Final Fee Period. To date, A&M has received payments in the amount of $87,786,631.87 on account of the Monthly Fee Statements covering the Final Fee Period, with a total unpaid amount of $1,326,971.67, which includes (i) unpaid interim fees for July 1, 2026 through August 31, 2026, totaling $1,213,193.30,[2] (ii) unpaid fees for time spent on this Application, totaling $19,277.50, and (iii) unpaid expenses related to legal services provided by Hunton to A&M, totaling $94,500.87.

**Summary of Professional Services Rendered During the Final Fee Period**

18. During the Final Fee Period, and in conjunction with the various and complex issues involved in the administration of the chapter 11 Cases, A&M expended time and rendered services to the Debtors for each of the task categories set forth below (the "**Categories**") that were both necessary and beneficial to the Debtors and their estates, creditors, and other parties-in-interest. A&M professionals performed work and billed time for each of the Categories as set forth below and as shown in the attached **Exhibit F**. In further support of this Application, more detailed and itemized descriptions of the services provided by A&M for each of the Categories are set forth in the Monthly Fee Statements and Interim Fee Applications and are incorporated herein by reference.

| Task Description | Sum of Hours | Sum of Fees |
|---|---|---|
| ACCOUNTING/CUT-OFF | 475.0 | $408,825.30 |
| ACCOUNTING/CUT-OFF - DIP DEBTOR | 6,618.3 | $5,625,887.60 |
| ACCOUNTING/CUT-OFF - NON DEBTOR | 77.1 | $74,368.50 |
| ACCOUNTING/CUT-OFF - NON DEBTOR HOR | 2.4 | $2,142.50 |
| ACCOUNTING/CUT-OFF - NON DEBTOR TRICO | 0.2 | $210.00 |
| ACCOUNTING/CUT-OFF - NON DEBTOR ULTINON | 0.5 | $405.00 |
| ACCOUNTING/CUT-OFF - NON DIP | 62.7 | $58,567.60 |
| ASSET SALES | 29.5 | $36,607.50 |
| ASSET SALES - NON DEBTOR HORIZON | 15.1 | $19,902.50 |

[2] Pursuant to the Interim Compensation Procedures Order, A&M has been paid 80% of fees and 100% of expenses for the July 2026 and August 2026 Monthly Fee Statements.

| Task Description | Sum of Hours | Sum of Fees |
|---|---|---|
| ASSET SALES - NON DEBTOR TRICO | 19.9 | $25,502.50 |
| ASSET SALES - NON DEBTOR ULTINON | 280.8 | $277,155.00 |
| ASSET SALES-DIP DEBTOR | 6,171.6 | $5,127,952.50 |
| ASSET SALES-NON DIP DEBTOR | 163.5 | $164,884.00 |
| BANKRUPTCY SUPPORT | 1,467.4 | $1,137,059.00 |
| BANKRUPTCY SUPPORT - DIP DEBTOR | 4,641.6 | $3,527,641.00 |
| BANKRUPTCY SUPPORT - NON DEBTOR | 487.5 | $422,706.50 |
| BANKRUPTCY SUPPORT - NON DEBTOR HORIZON | 2.6 | $2,615.00 |
| BANKRUPTCY SUPPORT - NON DEBTOR TRICO | 15.1 | $14,945.00 |
| BANKRUPTCY SUPPORT - NON DEBTOR ULTINON | 44.6 | $43,110.00 |
| BANKRUPTCY SUPPORT - NON DIP DEBTOR | 428.9 | $392,626.40 |
| BUSINESS PLAN | 2,544.6 | $2,169,281.90 |
| BUSINESS PLAN - DIP DEBTOR | 3,319.7 | $2,521,431.40 |
| BUSINESS PLAN - NON DEBTOR | 2,227.9 | $1,901,065.50 |
| BUSINESS PLAN - NON DEBTOR HORIZON | 106.0 | $95,448.50 |
| BUSINESS PLAN - NON DEBTOR TRICO | 40.7 | $34,867.50 |
| BUSINESS PLAN - NON DEBTOR ULTINON | 750.7 | $691,855.50 |
| CLAIMS | 11.4 | $7,640.00 |
| CLAIMS - DIP DEBTOR | 410.2 | $349,137.50 |
| CLAIMS - NON DEBTOR | 184.4 | $166,150.00 |
| CLAIMS - NON DEBTOR HORIZON | 16.6 | $14,940.00 |
| CLAIMS - NON DEBTOR TRI | 0.3 | $270.00 |
| CLAIMS - NON DEBTOR ULT | 4.1 | $4,060.00 |
| CLAIMS - NON DIP DEBTOR | 14.8 | $14,177.50 |
| COMMUNICATION | 52.4 | $48,325.00 |
| COMMUNICATION - DIP DEBTOR | 11.9 | $12,289.50 |
| COMMUNICATION - NON DEBTOR | 12.1 | $15,532.50 |
| COMMUNICATION - NON DEBTOR HORIZON | 0.9 | $990.00 |
| COMMUNICATION - NON DEBTOR TRICO | 0.6 | $915.00 |
| COMMUNICATION - NON DEBTOR ULTINON | 5.8 | $6,165.00 |
| CONTRACTS / EXECUTORY CONTRACTS | 41.4 | $26,910.00 |
| CONTRACTS / EXECUTORY CONTRACTS - DIP DEBTOR | 409.8 | $261,396.00 |
| CONTRACTS / EXECUTORY CONTRACTS - NON DEBTOR | 1.5 | $1,630.00 |
| CONTRACTS / EXECUTORY CONTRACTS - NON DEBTOR TRICO | 0.6 | $915.00 |
| COURT HEARINGS (PREP & ATTEND) | 9.5 | $9,025.00 |
| COURT HEARINGS (PREP & ATTEND) - DIP DEBTOR | 188.5 | $200,030.00 |
| COURT HEARINGS (PREP & ATTEND) - NON DIP DEBTOR | 4.3 | $4,085.00 |
| DIP FINANCING & CASH FLOW | 3,736.8 | $3,091,280.50 |
| DIP FINANCING & CASH FLOW - DIP DEBTOR | 10,947.5 | $7,853,936.54 |
| DIP FINANCING & CASH FLOW - NON DEBTOR | 1,913.9 | $1,701,254.00 |
| DIP FINANCING & CASH FLOW - NON DEBTOR HORIZON | 28.0 | $29,512.00 |

| Task Description | Sum of Hours | Sum of Fees |
|---|---|---|
| DIP FINANCING & CASH FLOW - NON DEBTOR TRICO | 282.1 | $388,482.50 |
| DIP FINANCING & CASH FLOW - NON DEBTOR ULTINON | 481.0 | $439,387.50 |
| DIP FINANCING & CASH FLOW - NON DIP DEBTOR | 559.4 | $507,691.50 |
| DUE DILIGENCE & INFORMATION REQUESTS | 624.3 | $612,601.50 |
| DUE DILIGENCE & INFORMATION REQUESTS - DIP DEBTOR | 1,959.9 | $1,726,483.00 |
| DUE DILIGENCE & INFORMATION REQUESTS - NON DEBTOR | 91.8 | $90,914.00 |
| DUE DILIGENCE & INFORMATION REQUESTS - NON DEBTOR HORIZON | 1.0 | $1,100.00 |
| DUE DILIGENCE & INFORMATION REQUESTS - NON DEBTOR ULTINON | 21.9 | $21,041.00 |
| DUE DILIGENCE & INFORMATION REQUESTS - NON DIP DEBTOR | 131.6 | $116,149.50 |
| EMPLOYEE COMPENSATION | 295.6 | $246,177.50 |
| EMPLOYEE COMPENSATION - DIP DEBTOR | 271.4 | $266,063.50 |
| EMPLOYEE COMPENSATION - NON DEBTOR | 0.5 | $550.00 |
| EMPLOYEE COMPENSATION - NON DEBTOR TRICO | 0.3 | $457.50 |
| EMPLOYEE COMPENSATION - NON DEBTOR ULTINON | 1.7 | $2,380.00 |
| EMPLOYEE COMPENSATION - NON DIP DEBTOR | 2.7 | $3,430.00 |
| EXECUTIVE OFFICERS | 1,200.2 | $1,690,980.00 |
| EXECUTIVE OFFICERS - DIP DEBTOR | 6,244.7 | $8,733,202.50 |
| EXECUTIVE OFFICERS - NON DEBTOR | 2.3 | $2,760.00 |
| FEE APP | 53.7 | $31,740.10 |
| FEE APP - DIP DEBTOR | 1,488.2 | $809,803.50 |
| FEE APP - NON DEBTOR | 19.8 | $17,250.50 |
| INSURANCE | 237.6 | $206,760.00 |
| INSURANCE - DIP DEBTOR | 486.2 | $475,317.00 |
| INSURANCE - NON DEBTOR | 8.8 | $10,245.00 |
| INSURANCE - NON DEBTOR HORIZON | 3.6 | $4,667.50 |
| INSURANCE - NON DEBTOR ULTINON | 1.2 | $1,200.00 |
| INVESTIGATIONS | 1,315.5 | $1,081,056.50 |
| INVESTIGATIONS - DIP DEBTOR | 2,466.6 | $1,985,371.00 |
| INVESTIGATIONS - NON DEBTOR | 565.0 | $468,372.50 |
| INVESTIGATIONS - NON DIP DEBTOR | 28.4 | $20,176.00 |
| LIQUIDATION ANALYSIS - DIP DEBTOR | 1,072.9 | $855,335.00 |
| LIQUIDATION ANALYSIS - NON DEBTOR | 6.1 | $4,277.50 |
| LIQUIDATION ANALYSIS - NON DEBTOR TRICO | 0.7 | $937.50 |
| LIQUIDATION ANALYSIS - NON DEBTOR ULT | 73.3 | $78,217.50 |
| LIQUIDATION ANALYSIS - NON DIP DEBTOR | 1.0 | $620.00 |
| LITIGATION | 49.1 | $42,714.00 |
| LITIGATION - DIP DEBTOR | 745.0 | $572,337.50 |
| LITIGATION - NON DEBTOR | 5.8 | $3,712.00 |

| Task Description | Sum of Hours | Sum of Fees |
|---|---:|---:|
| LITIGATION - NON DEBTOR TRICO | 7.3 | $4,672.00 |
| LITIGATION - NON DEBTOR ULTINON | 2.6 | $2,797.50 |
| LITIGATION - NON DIP DEBTOR | 284.9 | $185,342.50 |
| MONTHLY OPERATING REPORT | 74.9 | $52,395.00 |
| MONTHLY OPERATING REPORT - DIP DEBTOR | 750.3 | $530,582.50 |
| MONTHLY OPERATING REPORT - NON DEBTOR | 24.3 | $15,795.00 |
| MONTHLY OPERATING REPORT - NON DEBTOR ULTINON | 0.6 | $607.50 |
| MONTHLY OPERATING REPORT - NON DIP DEBTOR | 4.9 | $3,923.00 |
| MTGS WITH THIRD PARTIES | 920.9 | $967,932.00 |
| MTGS WITH THIRD PARTIES - DIP DEBTOR | 2,290.4 | $2,241,000.00 |
| MTGS WITH THIRD PARTIES - NON DEBTOR | 1,090.3 | $1,254,413.00 |
| MTGS WITH THIRD PARTIES - NON DEBTOR HORIZON | 47.7 | $57,242.00 |
| MTGS WITH THIRD PARTIES - NON DEBTOR TRICO | 155.7 | $230,530.00 |
| MTGS WITH THIRD PARTIES - NON DEBTOR ULTINON | 155.2 | $167,867.50 |
| MTGS WITH THIRD PARTIES - NON DIP DEBTOR | 82.3 | $88,520.00 |
| OPERATIONS | 150.2 | $140,050.00 |
| OPERATIONS - DIP DEBTOR | 4,823.5 | $4,282,598.50 |
| OPERATIONS - NON DEBTOR | 249.2 | $245,100.00 |
| OPERATIONS - NON DEBTOR HORIZON | 18.9 | $21,002.50 |
| OPERATIONS - NON DEBTOR TRICO | 7.3 | $7,940.00 |
| OPERATIONS - NON DEBTOR ULTINON | 74.6 | $75,187.50 |
| OPERATIONS - NON DIP DEBTOR | 23.6 | $25,317.00 |
| PLAN / DISCLOSURE STATEMENT - DIP DEBTOR | 2,241.4 | $1,953,840.00 |
| PLAN / DISCLOSURE STATEMENT - NON DIP DEBTOR | 1.1 | $1,127.50 |
| STATEMENTS & SCHEDULES | 691.0 | $445,175.00 |
| STATEMENTS & SCHEDULES - DIP DEBTOR | 2,255.2 | $1,615,342.00 |
| STATEMENTS & SCHEDULES - NON DEBTOR | 0.3 | $300.00 |
| STATEMENTS & SCHEDULES - NON DIP DEBTOR | 6.4 | $3,960.00 |
| TAX | 1,421.9 | $1,422,582.00 |
| TAX - DIP DEBTOR | 4,115.3 | $4,477,683.00 |
| TAX - NON DEBTOR | 714.0 | $707,767.50 |
| TAX - NON DEBTOR HORIZON | 305.2 | $335,363.00 |
| TAX - NON DEBTOR TRICO | 145.3 | $176,930.00 |
| TAX - NON DEBTOR ULTINON | 59.6 | $60,567.50 |
| TAX - NON DIP DEBTOR | 604.5 | $646,635.00 |
| TRAVEL | 494.7 | $399,518.50 |
| TRAVEL - DIP DEBTOR | 1,194.9 | $981,102.00 |
| TRAVEL - NON DEBTOR | 108.0 | $96,071.00 |
| TRAVEL - NON DEBTOR HORIZON | 3.0 | $4,575.00 |
| TRAVEL - NON DEBTOR TRICO | 8.6 | $13,115.00 |
| TRAVEL - NON DEBTOR ULTINON | 14.2 | $14,200.00 |

| Task Description | Sum of Hours | Sum of Fees |
|---|---|---|
| TRAVEL - NON DIP DEBTOR | 8.0 | $5,916.00 |
| VENDOR MANAGEMENT | 1,471.3 | $1,014,241.50 |
| VENDOR MANAGEMENT - DIP DEBTOR | 3,331.5 | $2,248,316.00 |
| VENDOR MANAGEMENT - NON DEBTOR | 103.2 | $103,422.50 |
| VENDOR MANAGEMENT - NON DEBTOR ULTINON | 6.7 | $7,040.00 |
| VENDOR MANAGEMENT - NON DIP DEBTOR | 8.9 | $5,801.00 |
| **TOTAL** | **99,355.9** | **$87,458,997.00** |

**Basis for Allowance of Compensation and Reimbursements of Expenses**

19. Section 331 of the Bankruptcy Code provides for compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. Section 330(a)(1) of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified and otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

20. This Application readily meets the standards of section 330 and applicable case law for compensation for services rendered on behalf of the Debtors' estates and for the administration of these cases. The Fifth Circuit set forth the contours of the requirements for allowance of compensation under section 330 in *Barron & Newburger, P.C. v. Tex. Skyline, Ltd., (In re Woerner)*, 783 F.3d 266 (5th Cir. 2015). In *Woerner*, the Fifth Circuit held that a court would allow compensation to an attorney for the debtor for services that are "reasonably likely to benefit" the estate, and that a court should adjudge the reasonableness of requested compensation "at the time at which the service was rendered." *Id*. at 273-74. In consideration of the above factors listed in section 330, A&M submits that all of the compensation requested in this Application were reasonable and necessary and meet the requirements of section 330 as delineated by the Fifth Circuit and should be approved.

21. A&M billed a total of 99,355.9 hours for the Final Fee Period of September 29, 2025 through August 31, 2026 and 37.1 for time spent on preparing this Application for a total of 99,393.0 hours in conjunction with their engagement as the Debtors' financial advisor. A summary of the hours worked and the total fees incurred during the Final Fee Period for each Category is attached hereto as **<u>Exhibit F</u>**, and a summary of the tasks performed in conjunction with each Category is set forth in the summary of professional services described above. More detailed itemizations of the daily tasks performed are included in the Monthly Fee Statements and Interim Fee Applications.

22. A&M additionally submits that the time it spent in conjunction with the matters and issues addressed in each Category are commensurate with the importance, novelty, and difficulty of the issues and questions addressed. The size of the Debtors' businesses and the large number of creditors and parties-in-interest in the chapter 11 cases contributed to the

complexity of the legal matters involved and the time and efforts required from A&M professionals.

23. Due to the size and complexity of the chapter 11 cases, the services performed by A&M professionals on behalf of the Debtors during the Final Fee Period have required the services of skilled professionals with expertise and specialized background in complex chapter 11 bankruptcy cases. Wherever possible, A&M utilized professionals at various levels of seniority and experience as appropriate in relation to the complexity and requirements of the task performed. At all times, A&M's professionals rendered their services economically and without unnecessary duplication of efforts.

24. A&M charged the Debtors at or below its customary fees for financial advisory services provided to the Debtors in conjunction with these chapter 11 cases and as disclosed in the Retention Application. A summary of the number of hours expended and fees incurred per professional are attached hereto as **Exhibit E**.

25. These chapter 11 cases presented challenges that were extraordinary in both scale and character. The Debtors were comprised of 112 entities whose prepetition businesses included a global network of manufacturing and distribution centers that spanned five continents and employed approximately 26,000 individuals globally. At the time of filing, the Debtors had a highly complex capital structure, with more than $11 billion of prepetition obligations, including approximately $6 billion in funded debt obligations, at least $2.3 billion in factoring liabilities, at least $2.3 billion in "off-balance sheet" financing liabilities incurred through special purpose vehicles, and approximately $900 million in unsecured supply chain financing liabilities. The scope of the Debtors' operations and the complexity of their capital structure required the Debtors to obtain $1.1 billion in postpetition financing at the outset of these chapter 11 cases to stabilize operations and fund the chapter 11 process.

26. The challenges posed by these cases were compounded by the prepetition conduct of the Debtors' former management team, which engaged in a yearslong fraudulent scheme involving, among other things, the manipulation of financial statements, double pledging of collateral, sale of fabricated accounts receivable, fraudulent transfers to insiders, and the use of inadequately capitalized special purpose vehicles to raise billions of dollars of debt to perpetuate the scheme. In January 2026, two of the Debtors' former executives, including their founder and former CEO Patrick James and his brother Edward James, were indicted by the United States Department of Justice and charged with crimes in connection with their management of First Brands. The indictment of Patrick James charges him with managing a continuing financial crimes enterprise. Additional former executives of the Debtors, including the Debtors' former CFO and former VP of Finance, have pleaded guilty in connection with the indictments.

27. Notwithstanding these unprecedented circumstances, the Debtors, with A&M's assistance, effectuated multiple going-concern sales of the Debtors' Walbro, Toledo Molding & Die, and Horizon North America business lines, as well as numerous additional asset sales, which collectively generated approximately $263 million in proceeds, saved in excess of a thousand jobs.

28. Throughout these cases, A&M has worked tirelessly to ensure as safe and as stable of business operations as possible, ensuring coordination with all parties-in-interest, including the Creditors' Committee, the Ad Hoc Group, the ABL Lenders, customers, vendors, and buyers of the Debtors' assets, among others.

29. A&M submits that the amount of compensation and reimbursement requested in this Application is consistent with the challenges posed in the chapter 11 cases. A&M assisted the Debtors in taking necessary actions to maintain the Debtors' business

operations with as little interruption and as safely as possible, while working towards a sale of the Debtors' assets and an orderly wind-down process.

30. A&M's professionals are well qualified for the work performed on behalf of the Debtors, and specialize in the areas of bankruptcy, finance, accounting, and other matters related to complex chapter 11 cases. Accordingly, A&M has performed the services requested by the Debtors skillfully and efficiently, to the collective benefit of the Debtors, creditors, and all parties-in-interest. In conjunction with its engagement in the chapter 11 cases, and as indicated on **Exhibit E**, A&M has utilized the services of various professionals with a range of experience to employ the proper level of experience – and billing rate – for the work performed.

31. A&M was engaged by the Debtors prior to the Petition Date to provide financial advisory services on various matters, including corporate and finance matters, pursuing strategic alternatives, and matters involving financial restructuring and insolvency issues, and has utilized its familiarity with the Debtors' businesses to further provide services in a most efficient and effective fashion.

32. A&M believes that the amount requested pursuant to this Application is consistent with fees charged by similarly skilled professionals for comparable services in other complex chapter 11 bankruptcy cases. In addition, as set forth above, A&M submits that the rates charged to the Debtors are at or below A&M's customary and usual rates charged and are within the range of rates customarily charged by other firms with comparable expertise, skills and reputation.

33. A&M incurred a total of $1,540,828.17 in expenses on behalf of the Debtors in conjunction with financial advisory services during the Final Fee Period as well as $94,500.87 in additional expenses related to Hunton's legal services. A Summary of Expenses

by Category is attached as **Exhibit G**, detailed itemization of the expenses incurred by day by professional is set forth in **Exhibit H**, and Hunton's invoices are provided in **Exhibit I**.

34. In conjunction with the reimbursement of expenses, and in accordance with A&M's expense policy, A&M charged the actual cost of expenses paid, without any enhancement or other administrative charge. Accordingly, A&M submits that the expenses it incurred were actual expenses and were necessarily incurred in conjunction with A&M's rendition of professional services to the Debtors in their chapter 11 cases.

35. A&M has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases. No promises have been received by A&M or any member thereof as to compensation in connection with the chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code.

**Notice**

36. Notice of this Application will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

**Conclusion**

37. A&M respectfully requests that the Court award (i) interim allowance of compensation for professional services rendered to the Debtors during the Fourth Interim Period in the amount of $6,194,070.68, consisting of $6,065,966.50 (representing 100% of fees incurred) and reimbursement of $128,104.18 (representing 100% of actual and necessary expenses incurred), (ii) final allowance of A&M's compensation for professional services rendered to the Debtors during the Final Fee Period in the amount of $89,113,603.54, consisting of $87,478,274.50 (representing 100% of fees incurred) and reimbursement of $1,635,329.04

(representing 100% of actual and necessary expenses incurred), (iii) direct payment by the Debtors of the difference between the amounts allowed and any amounts previously paid by the Debtors, and (iv) grant such other and further relief as the Court may deem just and proper.

Dated: October 4, 2026
Munich, Germany

**Alvarez & Marsal North America, LLC**

By: */s/ Charles Moore*
Name: Charles Moore
Title: Managing Director

*Financial Advisor to the Chapter 11 Debtors*

**Certificate of Service**

I hereby certify that on October 4, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Clifford W. Carlson*
Clifford W. Carlson