**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| FIRST BRANDS GROUP, LLC, *et al.*,[1] | ) | Case No. 25-90399 (CML) |
| Debtors. | ) | (Jointly Administered) |

**APPLICATION OF THE CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KATTEN MUCHIN ROSENMAN LLP AS SPECIAL COUNSEL TO THE CHAPTER 7 TRUSTEE EFFECTIVE AS OF THE CONVERSION DATE**

**This Application seeks an order that may adversely affect you. If you oppose the Application, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the Application should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the Application and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the Court may consider evidence at the hearing and may decide the Application at the hearing.**

**Represented parties should act through their attorney.**

Eva S. Engelhart, the chapter 7 trustee (the "Chapter 7 Trustee") of the jointly administered bankruptcy estates of First Brands Group, LLC, First Brands Group Holdings, LLC's direct and indirect subsidiaries, and Viceroy Private Capital, LLC (collectively, the "FBG Debtors")[2], states as follows in support of this application (the "Application"):

[1] A complete list of the "Debtors" in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The FBG Debtors' service address for these chapter 7 cases is Eva Engelhart, Chapter 7 Trustee c/o Porter Hedges LLP, Joshua W. Wolfshohl, 1000 Main St., 36th Floor, Houston, Texas 77002.

[2] The FBG Debtors do not include the 16 additional SPV debtors in the Carnaby Capital Holdings SPV silo or the "Previously Converted Debtors", comprised of: (i) Patterson Inventory, LLC, (ii) Patterson Inventory Holdings, LLC, (iii) Starlight Inventory I, LLC, and (iv) Starlight Inventory Holdings I, LLC. The Previously Converted

## **Relief Requested**

1. By this Application, the Chapter 7 Trustee seeks entry of an order, substantially in the form attached hereto (the "Proposed Order"), (a) authorizing the retention and employment of Katten Muchin Rosenman LLP ("Katten") as special counsel to the Chapter 7 Trustee, effective as of September 1, 2026 (the "Conversion Date"); and (b) granting related relief.

2. In support of this Application, the Chapter 7 Trustee submits the declaration of Cindi M. Giglio, a partner of Katten (the "Giglio Declaration"), which is attached hereto as **Exhibit A** and incorporated herein by reference.

## **Jurisdiction and Venue**

3. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and the *Order of Reference to Bankruptcy Judges from the United States District Court for the Southern District of Texas*, entered on May 24, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Chapter 7 Trustee confirms her consent to entry of a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 327(e), 328(a), 330, and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

Debtors' chapter 11 cases were previously converted to cases under chapter 7 of the Bankruptcy Code on April 9, 2026. *See* Docket No. 2396. Ronald J. Sommers serves as the chapter 7 trustee for these debtors' estates.

Rules”), and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the “Bankruptcy Local Rules”).

**Background**

6. On September 24, 2025 (the “Petition Date”), Global Assets LLC and 12 of the Debtors in the above-captioned cases each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Commencing on September 28, 2025, First Brands Group, LLC and the remaining Debtors each filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code (such cases, the “Chapter 11 Cases”).

7. On April 16, 2026, the Court entered the *Order Pursuant to Section 363 of the Bankruptcy Code (I) Approving and Authorizing the Debtors to Enter Into and Perform Under the Consulting Agreement; (II) Authorizing the Sale of Wind Down Assets Free and Clear of All Liens, Claims, and Encumbrances; and (III) Granting Related Relief* [Docket No. 2454] (the “Wind Down Order”), authorizing, among other things (i) the sale of the Wind Down Assets (as defined in the Wind Down Order), subject to the procedures set forth in the Wind Down Order; and (ii) engagement of Hilco Merchant Resources, LLC and certain of its affiliates (collectively, “Hilco”) to serve as exclusive agent to market, sell, and otherwise monetize the Wind Down Assets (the “Wind Down Sales”).

8. On the Conversion Date, the Court entered the *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* [Docket No. 3748] and commencing the chapter 7 cases (the “Chapter 7 Cases”).

9. Effective as of April 30, 2026, the Debtors engaged Katten as an ordinary course professional to provide legal services in connection with the Wind Down Sales.[3] As of the date hereof, the Wind Down Sales remain ongoing.

10. On August 4, 2026, the Debtors filed the *Notice of Filing Fifth Supplemental Schedule of Ordinary Course Professionals* [Docket No. 3580], in which the Debtors identified Katten as an ordinary course professional.

**Katten's Qualifications**

11. The Chapter 7 Trustee seeks to retain Katten to render independent legal services because of Katten's recognized expertise and extensive experience in, among other areas, distressed asset sales, monetization, and liquidations, particularly in bankruptcy cases. Since its engagement by the Debtors effective as of April 30, 2026 and by the Chapter 7 Trustee effective September 1, 2026, Katten has provided extensive legal services related to the Wind Down Sales, including, among other things, negotiating with prospective buyers for the Wind Down Assets, drafting and negotiating sale documentation, establishing value-preserving administrative efficiencies for the Wind Down Sales, navigating and resolving complex disputes among key stakeholders, working closely with Hilco with respect to the foregoing, and advising the Debtors and then the Chapter 7 Trustee on all aspects of the Wind Down Sales.

12. As such, the Chapter 7 Trustee believes that Katten is well qualified to continue to represent the Chapter 7 Trustee with respect to the Wind Down Sales in an efficient and timely manner. Katten's historical and institutional knowledge obtained during its pre-conversion work with the Debtors cannot be replaced without expending significant time, money, and other

[3] *See Declaration and Disclosure Statement of Cindi M. Giglio, on Behalf of Katten Muchin Rosenman LLP* [Docket No. 2947]

resources. Forcing the Chapter 7 Trustee to retain new counsel, that would lack Katten's institutional knowledge, would waste critical estate resources and impede these Chapter 7 Cases and the efficient administration and liquidation of the estates. Given the foregoing, the Chapter 7 Trustee requests authority to retain Katten as special counsel under 11 U.S.C. § 327(e) so Katten may continue providing necessary legal services to the Chapter 7 Trustee.

13. The Chapter 7 Trustee has filed or intends to file applications to approve the retention of Porter Hedges LLP ("Porter Hedges") as her primary counsel and Troutman Pepper Locke LLP ("Troutman") as special counsel in connection with these Chapter 7 Cases. The services of Katten shall complement, and not duplicate, the services to be rendered by Porter Hedges and Troutman. In particular, Troutman is proposed special counsel with respect to accounts receivable monetization and Katten is proposed special counsel with respect to the monetization of all other classes of Wind Down Assets. The Chapter 7 Trustee is mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is no such duplication.

14. The Chapter 7 Trustee has determined that the retention of counsel to assist with and advise on the Wind Down Sales is necessary to assist her in fulfilling her duties in these Chapter 7 Cases. Based on the foregoing, the Chapter 7 Trustee believes that Katten is well-qualified and aptly able to represent her in these Chapter 7 Cases in an efficient and cost-effective manner, and that the employment of Katten is in the best interests of the FBG Debtors' estates.

**Professional Compensation**

15. Subject to the Court's approval and in accordance with sections 330 and 331 of the Bankruptcy Code, the applicable Bankruptcy Rules, the Bankruptcy Local Rules, and other procedures that may be ordered by the Court, the Chapter 7 Trustee requests that Katten be compensated on an hourly basis and that Katten receive reimbursement of actual and necessary

expenses incurred in connection with its representation of the Chapter 7 Trustee in these Chapter 7 Cases. Katten intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these Chapter 7 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of the Court.

16. The hourly rates and corresponding rate structure Katten will use in these Chapter 7 Cases are the same as the hourly rates and corresponding rate structure that Katten used in the Chapter 11 Cases and uses in other bankruptcy cases, as well as in similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.

17. Katten operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

18. Katten will charge the following hourly rates set forth in the table below for services rendered in these Chapter 7 Cases:

| **Billing Category[4]** | **U.S. Range** |
|---|---|
| Partner | $1,370 - $2,645 |
| Of Counsel | $1,220 - $2,310 |
| Counsel and Special Staff | $670 - $1,775 |
| Associate | $835 - $1,315 |
| Paralegal | $350 - $945 |

[4] Although Katten does not anticipate using contract attorneys during these Chapter 7 Cases, in the unlikely event that it becomes necessary to use contract attorneys, Katten will not charge a markup to the Chapter 7 Trustee with respect to fees billed by such attorneys. Moreover, any contract attorneys or non-attorneys who are employed by the Chapter 7 Trustee in connection with work performed by Katten will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code. While the rate ranges provided for in this Application may change if an individual leaves or joins Katten, and if any such individual's billing rate falls outside the ranges disclosed above, Katten does not intend to update the ranges for such circumstances.

19. Katten's hourly rates are set at a level designed to compensate Katten fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[5] Katten will provide ten (10) business days' notice to the Chapter 7 Trustee and the U.S. Trustee in connection with any increase of Katten's hourly billing rates that are set forth in this Application.

20. Katten rendered independent legal services to the Debtors before the Conversion Date, using the hourly rates listed above and in the Giglio Declaration. Moreover, these hourly rates are consistent with the rates that Katten charges in other comparable bankruptcy cases, regardless of their locations. The rate structure provided by Katten is appropriate and not significantly different from (a) the rates that Katten charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Katten will perform in these Chapter 7 Cases.

21. It is Katten's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Katten's policy to charge its clients only the amount actually incurred by Katten in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

[5] For example, like many of its peer law firms, Katten typically increases the hourly billing rate of attorneys and paraprofessionals once a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013). As set forth in the Proposed Order, Katten will provide ten business-days' notice to the Chapter 7 Trustee and the U.S. Trustee before implementing any periodic increases.

22. To ensure compliance with all applicable deadlines in these Chapter 7 Cases, from time-to-time Katten utilizes the services of overtime secretaries. In addition, Katten professionals also may charge their overtime meals and overtime transportation to the Chapter 7 Trustee consistent with prepetition practices.

23. Katten currently charges its clients $0.10 per page for standard black and white duplication and $0.25 per page for color duplication. Katten does not charge its clients for incoming facsimile transmissions. Computer-assisted legal research is used whenever the researcher determines that it is more cost effective than using other (non-computer assisted legal research) techniques. Katten will charge for these expenses in a manner and at rates consistent with charges made generally to its other clients, subject to the Bankruptcy Local Rules.

24. Pursuant to Bankruptcy Rule 2016(b), Katten has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Katten or (b) any compensation another person or party has received or may receive.

25. Katten did not receive any payments from the Debtors in the 90 days prior to the Petition Date.

**No Adverse Interest**

26. Pursuant to Bankruptcy Rule 2014(a), the Giglio Declaration sets forth Katten's disclosable connections with the Debtors, their creditors, and other known parties in interest.

27. To the best of the Chapter 7 Trustee's knowledge, the attorneys of Katten do not hold or represent any interest adverse to the Debtors or their estates with respect to matters on which Katten is to be retained by the Chapter 7 Trustee. In addition, to the best of the Chapter 7 Trustee's knowledge, except as disclosed herein and in the Giglio Declaration, the attorneys of Katten: (a) do not have any disclosable connections with any of the Debtors, their affiliates, their

creditors, or any other parties in interest or their respective attorneys and accountants; (b) do not have any disclosable connections with the U.S. Trustee and key staff members of the U.S. Trustee's office; and (c) do not have any disclosable connections with the United States Bankruptcy Judges for the Southern District of Texas.

28. As set forth in the OCP Declaration [Docket No. 2947], during the Chapter 11 Cases, Katten represented Hilco in connection with the Debtors' engagement of Hilco as (i) appraiser pursuant to the *Order Authorizing Retention and Employment of Hilco Global as Appraisers for Debtors Effective as of October 7, 2025* [Docket No. 898]; and (ii) consultant pursuant to the Wind Down Order. Katten continues to represent Hilco in these Chapter 7 Cases with respect to its services under the Wind Down Order. Although Katten has determined its representation of Hilco does not create a conflict of interest, out of an abundance of caution, Katten has obtained a conflicts waiver from Hilco with respect to Katten's representation of the Chapter 7 Trustee. The Chapter 7 Trustee understands that, in the unlikely event litigation arises between the Chapter 7 Trustee and Hilco, Katten will not represent either party. Hilco and the Chapter 7 Trustee are aligned in maximizing value of the FBG Debtors' estates and, as such, the Chapter 7 Trustee determined that Katten's representation of Hilco is not adverse to the FBG Debtors in the matters for which Katten is to be retained.

29. Katten will review its files periodically during the pendency of these Chapter 7 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Katten will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## Supporting Authority

30. The Chapter 7 Trustee seeks approval of the retention of Katten pursuant to sections 327(e) and 328(a) of the Bankruptcy Code. Section 327(e) of the Bankruptcy Code provides:

> [T]he trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

31. Retention pursuant to section 327(e) of the Bankruptcy Code is appropriate given the specific scope of the proposed retention and Katten's previous engagement by the Debtors with respect to the Wind Down Sales prior to the Conversion Date.

32. Under section 328(a) of the Bankruptcy Code, with the Court's approval, a trustee may employ professional persons under section 327 of the Bankruptcy Code "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

33. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

34. Retention of an attorney under section 327(e) does not require the same searching inquiry required for a debtor to retain general bankruptcy counsel under section 327(a). *See Meespierson Inc. v. Strategic Telecom Inc.*, 202 B.R. 845, 847 (D. Del. 1996) ("[S]pecial counsel

employed under [section] 327(e) need only avoid possessing a conflict of interest concerning the matter at hand.”).

35. Nevertheless, the phrase “does not represent or hold any interest adverse to the debtor or to the estate” requires a factual determination of “all relevant facts surrounding the debtors’ case, including, but not limited to, the nature of the debtor’s business, all foreseeable employment of special counsel, [and] the expense of replacement counsel . . . .” *In re Woodworkers Warehouse, Inc.*, 323 B.R. 403, 406 (D. Del. 2005). In general, however, subject to the requirements of sections 327 and 1107, a trustee is entitled to the counsel of his or her choosing. *In re Vouzianas*, 259 F.3d 103, 108 (2d Cir. 2001) (observing that “[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel”).

36. The Chapter 7 Trustee submits that, for all of the reasons stated above and in the Giglio Declaration, the retention and employment of Katten as special counsel to the Chapter 7 Trustee is warranted.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

37. The Chapter 7 Trustee requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Chapter 7 Trustee has established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

**No Prior Request**

38. No prior motion for the relief requested in this Application has been made to this or any other court.

**Notice**

39. Notice of this Application will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule

9013-1(d). The Chapter 7 Trustee respectfully submits that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Chapter 7 Trustee requests that the Court enter the Proposed Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: October 5, 2026

*/s/ Eva S. Engelhart*
Eva S. Engelhart
Chapter 7 Trustee for the FBG Debtors

**Certificate of Service**

I certify that, on October 5, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl