**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| FIRST BRANDS GROUP, LLC, *et al.*, | : | Case No. 25-90399 (CML) |
| Debtors.[1] | : | (Jointly Administered) |

**FIRST AND FINAL FEE APPLICATION COVER SHEET**

| | | |
|---|---|---|
| Name of Applicant: | Okin Adams Bartlett Curry LLP | |
| Applicant's Role in Case: | Counsel for the Examiner | |
| Docket No. of Employment Order: | Docket No. 1978 | |
| Interim Application ( ) No. ____<br>Final Application ( ✓ ) | Indicate whether this is an interim or final Application. If interim, indicate the number (1st, 2nd, 3rd, etc.) | |
| | **Beginning Date** | **End Date** |
| Time period covered by this Application for which interim compensation has not previously been awarded: | January 12, 2026 | September 1, 2026 |
| Were the services provided necessary to the administration of or beneficial at the time rendered toward the completion of the case? **Yes**. | | |
| Were the services performed in a reasonable amount of time commensurate with the complexity, importance and nature of the issues addressed? **Yes**. | | |
| Is the requested compensation reasonable based on the customary compensation charged by comparably skilled practitioners in other non-bankruptcy cases? **Yes**. | | |
| Do expense reimbursements represent actual and necessary expenses incurred? **Yes**. | | |
| **Compensation Breakdown for Time Period Covered by this Application** | | |
| Total professional fees requested in this Application: | $238,723.00 | |
| Total professional hours covered by this Application: | 319.1 | |
| Average hourly rate for professionals: | $748.00 | |
| | | |
| Total paraprofessional fees requested in this Application: | $0.00 | |

[1] A complete list of the Debtors in the Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.

| | |
|---|---|
| Total paraprofessional hours covered by this Application: | 0.0 |
| Average hourly rate for paraprofessionals: | N/A |
| | |
| Total fees requested in this Application: | $238,723.00 |
| Total expense reimbursements requested in this Application: | $975.05 |
| Total fees and expenses requested in this Application: | $239,698.05 |
| | |
| Total fees and expenses awarded in all prior Applications: | N/A |

Plan Status: On September 1, 2026, the Court entered its order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code (the "Conversion Order") [Docket No. 3748]. This Application is filed pursuant to paragraph 7 of the Conversion Order.

Primary Benefits: As discussed below, during the Application Period, Okin Adams assisted the Examiner, who conducted a complex and intensive international investigation and evidence-preservation exercise, resulting in the Examiner's Report filed on April 27, 2026 [Docket No. 2538] and the creation of an extensive database comprising documents, communications, and other information related to the Examiner's investigation. Both the Examiner's Report and the database contain highly valuable information critical to the ongoing administration of the Debtors' bankruptcy cases.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| FIRST BRANDS GROUP, LLC, *et al.*, | : | Case No. 25-90399 (CML) |
| Debtors. | : | (Jointly Administered) |

**FIRST AND FINAL FEE APPLICATION OF**
**OKIN ADAMS BARTLETT CURRY LLP, COUNSEL FOR THE EXAMINER,**
**FOR THE PERIOD OF JANUARY 12, 2026 THROUGH SEPTEMBER 1, 2026**

**THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Okin Adams Bartlett Curry LLP ("Okin Adams" or "Applicant"), counsel for Martin De Luca, the court-appointed examiner (the "Examiner") in above-captioned bankruptcy cases (collectively, the "Cases"), hereby files this *First and Final Fee Application of Okin Adams Bartlett Curry LLP, Counsel for the Examiner, for the Period of January 12, 2026 Through September 1, 2026* (the "Application"), and in support hereof, respectfully states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This Application is made pursuant to sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended and modified, the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), the Court's *Order Directing Appointment of an Examiner* entered on November 19, 2025 [Docket No. 726] (the "Examiner Order"), and the Court's *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* entered on November 17, 2025 [Docket No. 699] (the "Interim Compensation Order").

## II. BACKGROUND

### A. The Chapter 11 Cases

3. On September 24 and 28, 2025 (collectively, the "Petition Date"), voluntary petitions for relief under chapter 11 of the Bankruptcy Code were filed by each of the affiliated debtors in the Cases (collectively, the "Debtors").

4. On October 8, 2025, Raistone Capital LLC and an affiliate filed an emergency motion seeking the appointment of an examiner in the Cases pursuant to section 1104(c) of the Bankruptcy Code [Docket No. 307]. On October 15, 2025, the United States Trustee (the "UST") filed an expedited motion seeking the appointment of an examiner in the Cases as well [Docket No. 340].

5. On November 19, 2025, the Court issued the Examiner Order, directing the appointment of an Examiner under section 1104(c) of the Bankruptcy Code to investigate the facts and circumstances, including the Debtors' general corporate practices, concerning:

(a) The Debtors' prepetition factoring processes and factoring transactions, including:

(i) Allegations that the Debtors' prepetition third-party factoring transactions (the "Factoring Transactions") involved (A) fraudulent or inaccurate invoices and related accounts receivable reflected in the Debtors' books, records, or audit reports; and (B) receivables factored more than once—and, in either case, the persons or entities responsible;

(ii) Transactions and/or transfers among the Debtors, any insiders or affiliates, entities owned or controlled by insiders or affiliates, and the unaffiliated third party factors (the "Third-Party Factors") relating to the Factoring Transactions and the transfer, use, or disposition of the resulting proceeds; and

(iii) The accounting for the proceeds of the Factoring Transactions and any property of third parties received by the Debtors, as the Examiner deems appropriate.

(b) The Debtors' Off-Balance Sheet Financing Transactions,[2] including any related transactions or transfers.

Examiner Order ¶ 3.

6. Paragraph 5 of the Examiner Order authorizes the Examiner to retain professionals pursuant to the standards under section 327 of the Bankruptcy Code and for the Examiner and his retained professionals to seek payment of compensation and expense reimbursement pursuant to the Interim Compensation Order and section 330 of the Bankruptcy Code. Paragraph 4 of the

[2] The "Off-Balance Sheet Financing Transactions" are the (i) Aequum Facilities, (ii) CarVal Facilities, (iii) Evolution Facilities, and (iv) Onset Master Leases (each as defined in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 22]).

Examiner Order provides a $7 million budget for the aggregate fees and expenses of the Examiner and his professionals (the "Examination Budget"), without prejudice to the Examiner's right to seek an increase in the Examination Budget.

7. On December 16, 2025, the UST filed its *Notice of Appointment of Examiner* [Docket No. 961], indicating the appointment of Martin De Luca as Examiner, and its *Application to Approve Appointment of Examiner* [Docket No. 964].

8. On January 9, 2026, the Court granted the UST's application to appoint Martin De Luca as Examiner in the above-captioned cases and entered the *Order Approving the Appointment of Examiner* [Docket No. 1260].

9. On January 21, 2026, as required under the Examiner Order, the Examiner filed his proposed Work Plan (the "Work Plan") [Docket No. 1650], outlining the topics, details, and timeline for an investigation in accordance with the Examiner Order.

10. On January 29, 2026, the Court entered an order approving the Work Plan [Docket No. 1819].

11. Pursuant to the Work Plan, the intensive transnational investigation by the Examiner and his professionals built significant momentum in developing a detailed factual record that bears on the overriding concerns of the Cases, namely to determine how the Debtors' "corporate practices" enabled the apparent financial frauds to occur prepetition and who was responsible.

12. However, in late February 2026, the Examiner substantially scaled down his investigation due to: (i) the imminent exhaustion of the Court-approved $7 million Examination Budget; (ii) the announced lack of additional debtor-in-possession funding by the Ad Hoc Lenders or any other source; (iii) the refusal of the Ad Hoc Lenders to include the Examiner and his

professionals in the collateral carve-out—that now covers the other major professionals in the Cases under the DIP financing order—or to fund an increase in the Examination Budget; and (iv) the apparent likelihood of an administrative insolvency in the Cases.

13. The Examiner therefore prioritized the collection and preservation of documents, data, and other evidence critical to the investigation, evaluation, and later prosecution of claims against non-Debtor third parties or assets on behalf of the Debtors by estate representatives. The volume and complexity of the information gathered to date and the discovery of additional areas of inquiry that were not fully anticipated at the outset of the examination led the Examiner to conclude that a comprehensive investigation would require substantially more time and resources than allocated under the Examination Budget.

14. The precipitous events of the Cases created a difficult choice for the Examiner: either stop work and not complete the report contemplated by the Court-approved Work Plan, or continue his investigation on a highly tailored, limited basis and complete an initial report knowing that the Examiner's and his professionals' fees and expenses would likely exceed the Examination Budget before there was any assurance that fees and expenses exceeding the Examination Budget would have a source of funding. Indeed, the Examiner raised concerns about the adequacy of the Examination Budget in pleadings on at least two occasions. Docket No. 1354 ¶ 15; Docket No. 1724 at ¶¶ 12–13. The Examiner's counsel also reported those concerns to the Court at a hearing on January 22, 2026.

15. Notwithstanding the lack of DIP funding or the protection of a collateral carve-out, and the resulting financial risks, the Examiner and his professionals determined that, in order for the Court, the Debtors' estates, and parties in interest to have the benefit of the Examiner's investigative efforts and initial findings and impressions, they would complete and file the

examiner report (the "Examiner Report"). The alternative would have been resources expended on an investigation that physically spanned the globe, with valuable evidence collected, maintained and organized with an e-discovery vendor, and no report for the benefit of the estates and financial fraud victims to guide them through the evidence amassed. Completing the Examiner Report was the only appropriate choice for the benefit of the Debtors' estates.

16. On April 17, 2026, the Examiner filed his Examiner Report under seal.

17. Following the filing of the Report, the Examiner conferred with the Debtors and other information-producing parties regarding the treatment of information designated as Highly Confidential and Confidential Material contained in the Examiner Report. Following those consultations, the Examiner reached agreement with producing parties that certain confidential information should remain sealed and finalized the Examiner Report.

18. Accordingly, the Examiner filed a revised Examiner Report on April 27, 2026, which remains under seal.

19. Also on April 27, 2026, a redacted version of the revised Examiner Report was filed on the public docket [Docket No. 2538].

20. The Examiner Report describes the work performed, the Examiner's initial impressions, open questions that warrant further investigation, and the high-value work streams that have not yet been completed.

21. Due to the exigencies of the investigation, in order to fulfill the Examiner's mandate notwithstanding the constraints of the Examination Budget, the Examiner's professionals rendered services and incurred fees and expenses that, in the aggregate, exceeded the Examination Budget.

22. On July 27, 2026, the Debtors filed the last iteration of their *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Docket No. 3448] (the "Plan").

23. On September 1, 2026, the Court entered its *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting Hearing Thereon, and (III) Granting Related Relief* (the "Conversion Order") [Docket No. 3748].

24. Pursuant to the Conversion Order, all professionals are required to submit their final fee applications ("Professional Compensation Claims") no later than forty-five (45) days after entry of the Conversion Order. Accordingly, Okin Adams timely submits this Application for allowance and payment of its Professional Compensation Claim pursuant to the Conversion Order.

**B. Employment and Disinterestedness of Okin Adams**

25. On January 28, 2026, the Examiner filed the *Application for an Order Authorizing the Employment and Retention of Okin Adams Bartlett Curry LLP as Bankruptcy Counsel for the Examiner* [Docket No. 1781].

26. On February 23, 2026, the Court entered its *Order Authorizing the Employment and Retention of Okin Adams Bartlett Curry LLP as Bankruptcy Counsel for the Examiner* [Docket No. 1978] (the "Employment Order"). A copy of the Employment Order is attached hereto as **Exhibit A** and incorporated by reference herein.

27. To the best of Applicant's knowledge, and as set forth in the Employment Order and further disclosed in the *Declaration of Matthew S. Okin in Support of Examiner's Application for an Order Authorizing the Employment and Retention of Okin Adams Bartlett Curry LLP as Bankruptcy Counsel for the Examiner* [Docket No. 1781-1] (the "Okin Declaration"), (i) Okin Adams is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates, and (ii) Okin Adams has no connection to the Debtors, their

creditors, the Court or other parties in interest, except as disclosed in the Okin Declaration. In the Okin Declaration, Okin Adams disclosed its connections, if any, to parties in interest that it has been able to ascertain using reasonable efforts.

28. All professional services rendered on behalf of the Examiner for which Okin Adams requests compensation and allowance in this Application were performed for the period of January 12, 2026 through September 1, 2026 (the "Application Period"). Okin Adams performed these services on behalf of the Examiner, and not on behalf of any other creditor or party in interest. Okin Adams has received no payment and no promises for payment from any source other than the Debtors' estates as may be authorized by the Court in accordance with the Bankruptcy Code and any applicable orders of the Court.

29. During the Application Period, Okin Adams incurred a total of $238,723.00 in fees and $975.05 in expenses. Pursuant to the Interim Compensation Order, Okin Adams submitted Monthly Fee Statements to the Fee Parties for the Fee Periods (each as defined in the Interim Compensation Order) of January and February 2026. In total, Okin Adams has been paid $156,113.49 for services rendered and expenses incurred during these Fee Periods.

30. No agreement or understanding exists between Okin Adams and any other person with respect to the sharing of compensation sought herein, except that the compensation approved by this Court will be shared among Applicant's partners, associates and personnel as authorized under the Bankruptcy Code.

## III. FIRST AND FINAL APPLICATION

31. **Prior Compensation**. Okin Adams has not previously filed an application for compensation in these Cases.

32. **Scope of Fee Application**. Okin Adams makes this Application pursuant to section 330 of the Bankruptcy Code for approval of compensation for professional services rendered and for reimbursement of out-of-pocket expenses actually and necessarily incurred by Okin Adams in the representation of the Examiner during the Application Period.

33. **Compensation Sought**. During the Application Period, Okin Adams expended an aggregate total of 319.1 hours for professional services on behalf of the Examiner for a total amount of $238,723.00. An accounting of the date such services were rendered and the time expended, together with a description of the services rendered, by person and by date, is attached hereto as **Exhibit B** and incorporated herein by reference. **Exhibit B** also contains a breakdown of the hourly rates charged by Applicant's personnel, setting forth the number of hours expended by individual professionals in connection with representation of the Examiner during the Application Period.

34. **Expenses**. During the Application Period, Okin Adams incurred reimbursable expenses in connection with its representation of the Examiner in the amount of $975.05. All of these expenditures represent necessary and reasonable costs incident to the performance of Okin Adams' services to the Examiner. The reimbursable expenses are also summarized in the attached **Exhibit B**. The expenses requested in the Application conform to the guidelines as found in Bankruptcy Local Rule 2016-1.

35. **Total Compensation Sought**. Okin Adams seeks (i) final approval of compensation in the total amount of $238,723.00 in professional fees and $975.05 in reimbursable expenses for the Application Period; and (ii) authorization for the Debtors' estates to pay the outstanding amount of $86,384.56, which is calculated as follows:

| | | |
|---|---|---|
| Fees | $ | 238,723.00 |
| Expenses | $ | 975.05 |
| Application Costs | $ | 2,800.00 |
| Total | $ | 242,498.05 |
| (Less Payment) | $ | 156,113.49 |
| **Outstanding Total** | **$** | **86,384.56** |

36. **Summary of Services**. During the Application Period, Okin Adams performed work in seven (7) different areas: (1) case administration; (2) asset analysis and recovery; (3) meetings of and communications with creditors; (4) fee / employment applications; (5) other contested matters; (6) financing / cash collateral; and (7) plan and disclosure statement. A detailed listing of the services performed in each area by Okin Adams is set forth in **Exhibit B**. The professional hours and rates per task are summarized below.

37. **B110 – Case Administration**. This category encompasses all of the general administrative and miscellaneous tasks necessary and appropriate for the Examiner's review of the Debtors' businesses. These tasks include, but are not limited to, developing and discussing case strategy, drafting numerous pleadings, corresponding with interested parties regarding various hearings, receipt and review of pleadings, notices and other court filings, drafting witness and exhibit lists, and attending various hearings and status conferences. Okin Adams billed 152.1 hours to this task code with a blended rate of $758/hr. for a total amount billed of $115,314.50.

38. **B120 – Asset Analysis and Recovery**. This category involved Okin Adams assisting the Examiner with investigation issues and Rule 2004 notice issues. Okin Adams billed 8.1 hours to this task code with a blended rate of $862/hr. for a total amount billed of $6,981.00.

39. **B150 – Meetings of and Communications with Creditors**. The work performed in this category includes various correspondence with creditors and their counsel to discuss the Examiner's report. Okin Adams billed 0.2 hours to this task code with a blended rate of $700/hr. for a total amount billed of $140.00.

40. **B160 – Fee / Employment Applications**. This category of work relates to the preparation and prosecution of the Examiner's applications to retain Okin Adams and Boies Schiller Flexner LLP as counsel to the Examiner. This category also includes preparation and service of monthly interim fee statements and all ancillary work related to the employment and payment of the Examiner's professionals. Okin Adams billed 107.1 hours to this task code with a blended rate of $702/hr. for a total amount billed of $75,208.50.

41. **B190 – Other Contested Matters**. This category includes limited work performed by Okin Adams with respect to certain subpoena issues. Okin Adams billed 33.8 hours to this task code with a blended rate of $816/hr. for a total amount billed of $27,593.00.

42. **B230 – Financing / Cash Collateral**. This category involved work in the Cases related to the Examiner's emergency motion to secure funding. Okin Adams billed 17.0 hours to this task code with a blended rate of $752/hr. for a total amount billed of $12,783.50.

43. **B320 – Plan and Disclosure Statement**. The work performed by Okin Adams in this category related to reserving the Examiner's rights with respect to objections to the Debtors' Plan. Okin Adams billed 0.8 hours to this task code with a blended rate of $878/hr. for a total amount billed of $702.50.

## IV. ***JOHNSON* FACTORS**

44. Courts in the Fifth Circuit analyze various factors when considering whether to award compensation in a bankruptcy case. *See, e.g., Johnson v. Ga. Highway Express, Inc.*,

488 F.2d 714 (5th Cir. 1974). The fees and expenses requested by Okin Adams in this Application are reasonable based on the following considerations, as outlined in *Am. Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp. of Am.)*, 544 F.2d 1291 (5th Cir. 1977).

45. **Time and Labor Required**. The time spent assisting, representing and advising the Examiner in all matters concerning these Cases covering the Application Period totals 319.1 hours. The number of hours spent was reasonable given the size and complexity of the Cases. The detail of the specific time entries, found in **Exhibit B**, reflects the reasonableness of the compensation being requested and all of the services identified were necessary to ensure adequate and effective representation of the Examiner.

46. **Novelty and Difficulty of Work**. In light of the Debtors' dwindling liquidity position throughout these Cases and the investigations necessary by the Examiner, the work done added layers of complexity that rendered the representation particularly difficult and required a high degree of case management skill. Okin Adams was required to utilize its expertise to assist the Examiner in carrying out his duties under the Examiner Order.

47. **Experience, Reputation, and Ability of Attorneys**. Okin Adams is reputable, possesses the ability to adequately perform the tasks outlined in this Application, and has substantial experience representing chapter 11 debtors, official committees, creditors and other parties in interest in numerous chapter 11 bankruptcies. The attorneys who provided the bulk of services to the Examiner during these Cases possess specialized skills in bankruptcy, business law and litigation to merit the award of the requested fees during the Application Period.

48. **Skill Required**. Representation of the Examiner in these Cases required a specialized degree of skill and experience. Okin Adams believes it has demonstrated the skills

required to assist the Examiner in the execution of his duties under the Examiner Order and the completion of the Examiner Report.

49. **Preclusion of Other Employment**. Because of the time commitment involved in the Cases and deadlines imposed, Applicant's ability to take on other substantial engagements was limited to some degree.

50. **Customary Fees**. All fees charged for Okin Adams' professionals were reasonable and compared to the rates charged on similar matters, without considering size, degree of responsibility, difficulty, complexity, and results achieved.

51. **Whether the Fees are Fixed or Contingent**. The hourly fees requested in this Application were calculated at normal hourly rates charged by Okin Adams and are in line with those charged for similar work in this jurisdiction.

52. **Time Limitations and Other Factors**. At various times in the Cases, representation of the Examiner required Applicant's professionals to work expeditiously in light the circumstances faced by the Examiner. Okin Adams performed its services on an expedited or emergency basis when needed and was successful in meeting the various deadlines imposed by the Bankruptcy Code and the Court.

53. **Undesirability of the Case**. Given the magnitude of the operations and the resistance from certain parties to expand the Examination Budget, any firm considering representing the Examiner in these Cases would consider the serious risk of non-payment of its fees prior to accepting such representation. As such, this factor could be considered particularly pertinent in these Cases. Despite this, Okin Adams was successful in working cooperatively with the Examiner, the Debtors, and other parties in interest to complete a successful examination.

54. **Results Obtained**. Through these Cases, Okin Adams was able to assist the Examiner in conducting the investigation, working with the Debtors and various parties in interest, and preparing the Examiner Report in accordance with the Work Plan and Examiner Order.

55. **Nature and Length of Professional Relationship with Client**. Okin Adams had no previous relationship with the Examiner or Debtors prior to these Cases.

56. **Fees Awarded in Similar Cases**. As more fully described above, Okin Adams submits that its services to the Examiner fully warrant the approval of all fees and payment of the outstanding fees requested herein under the twelve factors identified by the Fifth Circuit and as are awarded in similar cases in the Southern District of Texas.

## V. PREPARATION OF FEE APPLICATION

57. The Fifth Circuit has held that counsel for estate professionals are entitled to reasonable compensation for preparation of fee applications and attendance at any necessary hearings. *In re Rose Pass Mines, Inc.*, 615 F.2d 1088, 1093 (5th Cir. 1980); *see also In re Nucorp Energy, Inc.*, 764 F.2d 655, 659 (9th Cir. 1985); *In re 14605, Inc.*, No. 05-11910 MFW, 2007 WL 2745709, at *9 (Bankr. D. Del. Sept. 19, 2007). Okin Adams requests that the Court approve reasonable fees in the amount of $2,800.00 in connection with the preparation and prosecution of this Application.[3] To the extent Applicant's professionals or paraprofessionals have expended, or will expend, additional time and incur any fees beyond this reasonable amount, Okin Adams will write off any excess fees incurred.

[3] Calculated at Applicant's standard hourly rates as follows: Ryan A. O'Connor (4.0 hours x $700/hr. = $2,800.00).

## VI. NOTICE

58. Notice of this Application has been provided to all necessary parties in interest in accordance with the Bankruptcy Rules and Bankruptcy Local Rules. Okin Adams respectfully submits that such notice is sufficient, and no further notice is required.

## VII. PAYMENT REQUEST

59. Okin Adams requests that this Court allow these fees and approve compensation on a final basis in the amount of $238,723.00 for professional fees, $975.05 for reimbursable expenses, and $2,800.00 for fees incurred in the preparation and prosecution of this Application, for a total of $242,498.05 in fees and expenses. Okin Adams requests that the Court enter an order: (i) approving the fees and expenses incurred by Okin Adams during the Application Period; (ii) approving the compensation and expense reimbursement already paid to Okin Adams pursuant to the Interim Compensation Order; and (iii) authorizing and directing the Debtors' estates to pay Okin Adams the amount of $86,384.56 in outstanding professional fees and reimbursable expenses.

## VIII. CONCLUSION

60. Based on the foregoing, Okin Adams requests that this Court: (i) allow and approve, on a final basis, the legal fees and reimbursable expenses incurred for the entire Application Period; (ii) authorize and direct the Debtors' estates to remit payment to Okin Adams in the amount of $86,384.56 in outstanding professional fees and reimbursable expenses; and, (iii) grant it any other legal or equitable relief to which it may be entitled.

Respectfully submitted on the 6th day of October, 2026.

**OKIN ADAMS BARTLETT CURRY LLP**

By: /s/ *Matthew S. Okin*
Matthew S. Okin
Texas Bar No. 00784695
Email: mokin@okinadams.com
Ryan A. O'Connor
Texas Bar No. 24098190
Email: roconnor@okinadams.com
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 346.247.7158

**ATTORNEYS FOR THE EXAMINER**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2026, a true and correct copy of the foregoing Application was served via the Court's CM/ECF system to all parties consenting to service through the same.

By: /s/ *Matthew S. Okin*
Matthew S. Okin