**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | (Previously Chapter 11) |
| FIRST BRANDS GROUP, LLC, *et al*., | ) | |
| | ) | Case No. 25-90399 (CML) |
| Debtors.[1] | ) | |
| | ) | (Jointly Administered) |

**ORDER AUTHORIZING THE EMPLOYMENT**
**AND RETENTION OF CLARK HILL PLC AS SPECIAL**
**COUNSEL TO THE TRUSTEE EFFECTIVE AS OF THE CONVERSION DATE**

Upon the application (the "**Application**")[2] of Eva S. Engelhart, the chapter 7 trustee (the "**Trustee**") of the jointly administered bankruptcy estates of First Brands Group, LLC, First Brands Group Holdings, LLC's direct and indirect subsidiaries, and Viceroy Private Capital, LLC (collectively, the "**FBG Debtors**") for entry of an order (this "**Order**"), authorizing the employment and retention of Clark Hill PLC ("**Clark Hill**") effective as of the Conversion Date as the Trustee's special counsel relating to all matters arising out of the collection of the FBG Debtors' outstanding accounts receivable ("**Special Counsel**"), as more fully set forth in the Application; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and due, sufficient, and proper notice of the Application having been provided under the circumstances and in accordance

[1] A complete list of the "**Debtors**" in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 7 cases is Eva Engelhart, Chapter 7 Trustee c/o Porter Hedges LLP, Joshua W. Wolfshohl, 1000 Main St., 36th Floor, Houston, Texas 77002.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

with the Bankruptcy Rules and the Bankruptcy Local Rules, and it appearing that no other or further notice need be provided; and upon consideration of the Application, the Morse Declaration, and all of the proceedings had before the Court; and this Court having found and determined that Clark Hill's employment is necessary and in the best interests of the FBG Debtors, their estates, their creditors, their stakeholders, and all other parties in interest, and that the legal and factual bases set forth in support of the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1. The Trustee is authorized, pursuant to section 327(e) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Bankruptcy Local Rules 2014-1 and 2016-1, to employ and retain Clark Hill as Special Counsel, effective as of the Conversion Date, on the terms and conditions set forth in the Application, the Engagement Letter, and the Morse Declaration, to perform the services described in the Application. The terms of Clark Hill's compensation, as set forth in the Engagement Letter, are approved pursuant to section 328 of the Bankruptcy Code. To the extent the Application, the Engagement Letter, the Morse Declaration, and this Order conflict, the terms of this Order shall govern.

2. In connection with the chapter 7 cases, Clark Hill shall be compensated for professional services rendered, and reimbursement for expenses incurred, in accordance with sections 330 and 331 of the Bankruptcy Code, the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules, any other applicable procedures and orders of this Court, and the Engagement Letter.

3. Clark Hill shall use its reasonable efforts to avoid any duplication of services provided by any of the Trustee's other retained professionals in these chapter 7 cases.

4. The Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals (Docket No. 699) (the "**Compensation Order**") shall apply to the fees and expenses of Clark Hill as modified herein:

a. The fees and expenses of Clark Hill shall be paid solely from accounts receivable paid by customers (the "**Customer A/R**"), wherever such Customer A/R is located or held, including Customer A/R deposited in any deposit account, lockbox, or other account maintained by or on behalf of the FBG Debtors or the Chapter 7 Trustee (each, an "**A/R Account**"). Clark Hill's right to payment from the Customer A/R shall be senior and prior in right to, and shall be paid in full before, any payment or distribution on account of any lien, claim, security interest, setoff right, administrative expense claim (including under 11 U.S.C. § 726(b)), or other interest of any kind asserted by any person in or against the Customer A/R; **provided, however**, Clark Hill's right to payment from the Customer A/R shall be *pari passu* with the right of Troutman Pepper Locke LLP to payment from the Customer A/R.

b. Clark Hill shall be entitled to payment from the Customer A/R regardless of any agreement, stipulation, resolution, Court order, or other disposition of any dispute among any parties regarding which party's collateral the Customer A/R constitutes or to whom the Customer A/R is ultimately determined to belong (a "**Collateral Dispute**") and no resolution, settlement, or adjudication of any Collateral Dispute shall reduce, subordinate, delay, or otherwise impair Clark Hill's right to payment hereunder

c. The definition of Fee Notice Parties as set forth in the Compensation Order is hereby revised to mean:

i. Eva S. Engelhart, the Chapter 7 Trustee, Ross, Banks, May, Cron and Cavin, PC 7700 San Felipe, Suite 550, Houston, TX 77063 (Attn: Eva S. Engelhart) (eengelhart@rossbanks.com);

ii. Counsel to the Chapter 7 Trustee, Porter Hedges LLP, 1000 Main St, 36th Floor | Houston, TX 77002 (Attn: Joshua W. Wolfshohl (JWolfshohl@porterhedges.com), Eric M. English (EEnglish@porterhedges.com), M. Shane Johnson (SJohnson@porterhedges.com), and Grecia V. Sarda (GSarda@porterhedges.com));

iii. Counsel to the ABL Lenders, Winston Taylor, 300 N. LaSalle Dr. Chicago, IL 60654-3406 (Attn: Dan McGuire (dan.mcguire@winstontaylor.com) and Jason Bennett (jason.bennett@winstontaylor.com); and

iv. Special Litigation Counsel for Ronald J. Sommers, Chapter 7 Trustee for the SPV Debtors, Jones Murray LLP, 602 Sawyer, Suite 400 Houston, Texas 77007 (Attn: Erin E. Jones

(erin@jonesmurray.com) and Christopher R. Murray (chris@jonesmurray.com) and Elsberg Baker & Maruri PLLC (Attn: David Elsberg (delsberg@elsberglaw.com), Michael Duke (mduke@elsberglaw.com), Vivek Tata (vtata@elsberglaw.com), Andrew Parks (aparks@elsberglaw.com) and Ella Epstein (eepstein@elsberglaw.com).

d. Any reference to the Debtors in the Compensation Order shall mean the Chapter 7 Trustee.

5. Notwithstanding anything to the contrary in the Final DIP Order (Docket No. 597), the Application, or this Order, Clark Hill shall not be considered a "Professional Person" under the terms of the Final DIP Order.

6. Clark Hill shall provide ten business days' notice to the Fee Notice Parties and the U.S. Trustee before any increases in the rates set forth in the Application are implanted and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increases pursuant to sections 330 of the Bankruptcy Code.

7. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8. Notice of the Application as set forth therein shall be deemed good and sufficient notice of the Application, and the requirements of the Bankruptcy Rules and the Bankruptcy Local Rules are satisfied by such notice.

9. The Trustee is authorized to execute and deliver such documents and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

10. To the extent the Application, the Compensation Order or the Silverman Declaration are inconsistent with this Order, the terms of this Order shall govern.

11. This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: ________________, 2026

______________________________________
Honorable Christopher M. Lopez
United States Bankruptcy Judge

# EXHIBIT 1

**Engagement Letter**

Clark Hill

Kevin H. Morse
T (312) 985-5556
F (312) 517-7593
Email:kmorse@ClarkHill.com

Clark Hill
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601
T (312) 985-5900
F (312) 985-5999

October 8, 2026

*Via E-mail*:

Eva S. Engelhart, Chapter 7 Trustee
Ross Banks May Cron and Cavin PC
7700 San Felipe, Suite 550
Houston, TX 77063
E-mail: eengelhart@rossbanks.com

Re: Engagement Letter - Eva S Engelhart, not individually, but solely as Chapter 7 Trustee of the jointly administered bankruptcy estates of First Brands Group, LLC, First Brands Group Holdings, LLC's direct and indirect subsidiaries, and Viceroy Private Capital, LLC (collectively, the "FBG Debtors")

Dear Ms. Engelhart,

Thank you for selecting Clark Hill (the "Firm") to represent you, Eva S Engelhart, not individually, but solely as Chapter 7 Trustee of the FBG Debtors[1] (the "Client"), in this matter. This letter and the attached Standard Terms of Engagement set forth the basis on which the Firm will provide legal services. If we provide services before a signed copy of this letter is returned to us, those services are provided under these terms.

**Whom We Represent.** Our representation of the Client in this matter does not give rise to a lawyer-client relationship between the Firm and any of the Client's officers, directors, owners, employees, subsidiaries, affiliates, or other persons or entities unless we specifically agree in writing.

**Scope of Engagement.** We agree to represent the Client as special counsel pursuant to 11 U.S.C. § 327(e) in the jointly administered Chapter 7 cases of the FBG Debtors, and subject to approval by the United States Bankruptcy Court for the Southern District of Texas, in the negotiation and collection of outstanding accounts receivable

1 The FBG Debtors do not include the 16 additional SPV debtors in the Carnaby Capital Holdings SPV silo or the "Previously Converted Debtors", comprised of: (i) Patterson Inventory, LLC, (ii) Patterson Inventory Holdings, LLC, (iii) Starlight Inventory I, LLC, and (iv) Starlight Inventory Holdings I, LLC. The Previously Converted Debtors' Chapter 11 Cases were previously converted to cases under chapter 7 of the Bankruptcy Code on April 9, 2026. See Docket No. 2396. Ronald J. Sommers serves as the chapter 7 trustee for these debtors' estates.

from the following customers of the FBG Debtors: (i) NAPA US (GPC); (ii) General Motors; (iii) UAP (NAPA Canada; (iv) Ford Motor Company; (v) Honda; (vi) General Motors Canada; (vii) Polaris; and (viii) Rayloc (collectively, the "A/R Actions"). We agree that our engagement is limited to performance of legal services related to this matter and, unless we agree otherwise in writing, we are not undertaking to represent the Client or its interests in any other matter. We will not provide business, investment, or accounting advice and understand that the Client will rely on others for such advice.

**Connections to the FBG Debtors.** The Firm has represented the FBG Debtors in the A/R Actions as an ordinary course professional and the following creditors in the past and in these chapter 7 cases by filing proofs of claims:

Arlanxeo USA LLC,
Epicor Software,
Kawasaki Motors,
General Dynamics,
St. Clair Technologies, and
CSI Leasing

The Firm's representation of these creditors previously and in these chapter 7 cases is not adverse to the Debtors or their estates with respect to the A/R Actions and matters on which the Firm is to be retained.

**Consent to Future Conflicts.** Our Standard Terms of Engagement, which are attached, include your agreement that our Firm may also represent other clients in disputes or transactions adverse to you that are not substantially related to this representation.

**Fees.** Our fees will be based on the amount of time spent by the professionals working on the matter and the hourly rates established for each. Our minimum billing increment is .1 hour. At this time, our lawyer billing rates range from $400.00–$1,000.00 an hour, and paralegal rates range from $300.00–$500.00 per hour. These rates may be adjusted periodically to reflect the experience and expertise of our professionals. I will be the principal attorney contact in this matter. My hourly rate for this matter shall be $905.00 per hour. I will utilize the services of other professionals in the Firm, including, without limitation, Tevin Bowens, bankruptcy senior attorney ($650.00/hour); Kenny Chiaghana, bankruptcy associate ($525.00/hour); and Madison Geiger, bankruptcy associate ($500.00/hour). Our billing rates are subject to change from time to time..

The total cost of legal services for this matter cannot reasonably be known at this time. In addition to the hourly rates of our professionals, the factors that determine the total cost include the time and labor required, the novelty and difficulty of the questions involved, acts of other parties or their counsel, the skill required to perform the services, and the experience and ability of the lawyers performing the services. The total cost may therefore vary.

**Choice of Law; Arbitration.** The relationship between the Client and the Firm, including the validity, construction, and enforceability of this engagement letter, will be governed in all respects by the law of Illinois without regard to conflicts of laws principles. As explained in the attached terms, by accepting services from the Firm the Client agrees to arbitration for any disputes arising out of or relating to this engagement.

To confirm your agreement to the terms of this engagement as stated above and in the attached Standard Terms of Engagement, please sign and return a copy to me. We look forward to working with you.

Sincerely,

CLARK HILL PLC

Kevin H. Morse

KHM:zh

cc: Joshua W. Wolfshohl (via e-mail)
Grecia V. Sarda (via e-mail)

Eva S Engelhart, not individually, but solely as Chapter 7 Trustee of the jointly administered bankruptcy estates of First Brands Group, LLC, First Brands Group Holdings, LLC's direct and indirect subsidiaries, and Viceroy Private Capital, LLC (collectively, the "FBG Debtors"), accepts, and agrees to be bound by, the foregoing.

____________________________________
Eva Engelhart, Chapter 7 Trustee of the jointly administered bankruptcy estates of First Brands Group, LLC, et al.

Date: ______________________________

## STANDARD TERMS OF ENGAGEMENT

**Entire Agreement.** The engagement letter and these Standard Terms of Engagement constitute the entire understanding and agreement between the Client and the Firm regarding our representation of the Client in the matter described in the engagement letter and supersede any prior understandings and agreements and any billing requirements, outside counsel guidelines, or letters submitted to us. If any provision is found unenforceable, the remainder will remain in effect. The engagement letter and these Standard Terms may be amended only by a written agreement between the Client and the Firm.

**Client Responsibilities.** The Client agrees to pay the Firm as agreed; to be candid and cooperative with the Firm and any court or other tribunal; and to provide complete and accurate information and documents relevant to our representation or otherwise reasonably requested by us. In a litigation matter, the Client also agrees to make personnel available to meet with Firm personnel and to attend trials, hearings, depositions, and other proceedings, and to commit the appropriate personnel and sufficient resources to meet the Client's discovery obligations.

The Client may not demand that the Firm use offensive tactics or treat anyone involved in the legal process with anything but courtesy and consideration; demand any assistance which violates the rules of professional conduct; or pursue or insist upon a course of action which the Firm reasonably believes to be illegal, fraudulent, offensive, or unwise. The Firm may terminate this agreement for reasons permitted under the rules of professional conduct.

**Contact Information.** The Client must promptly notify the Firm in writing of any changes to its contact or business information. The Firm may contact the Client at its last provided address for instructions. If the Client merges or affiliates with another entity, it must provide notice to permit us to withdraw as its lawyers if we determine that such affiliation, acquisition, or merger creates a conflict of interest, or that it is not in the best interests of the Firm to represent the new entity.

**Whom We Represent.** We represent only the Client and we do not represent any affiliates or related parties, such as owners, parent companies, subsidiaries, or sibling entities, or employees, officers, directors, shareholders of a corporation, partners of a partnership, members of an association or limited liability company, or other constituents of a named client. Accordingly, our representation of the Client in this matter will not give rise to a conflict of interest in the event we represent other clients adverse to an affiliate or related person or entity in other matters.

**Consent to Future Conflicts.** As you know, Clark Hill is a large law firm with diverse practices and offices across the country. We represent many other companies and individuals in various industries, including clients who are competitors of each other and sometimes with opposing interests in legal matters. Thus, during the time we are representing the Client, we may also represent other clients—including direct competitors of the Client or clients with business interests adverse to the Client's interests—in disputes or transactions adverse to the Client that are not substantially related to this representation.

We will not represent any other client in any matter adverse to you that is substantially related to a matter in which we represent you. Likewise, we will not represent any other client in a matter adverse to you in circumstances in which any of your confidential data or information would be material to that matter. In return for our agreement to represent you, you consent and agree that we may be adverse to you on behalf of other clients in matters that are not substantially related to the matters we assist you in. These unrelated matters may include, but are not limited to:

a. Transactional matters including contract negotiations with you on the opposing side and preparation of contracts or other legal documents where you will be an opposing party;
b. Advice or opinions regarding your rights in property or concerning contracts or other legal documents where you may be a party or that may affect your rights or obligations;
c. Real estate, zoning, and environmental matters in which your interests may be involved or adversely affected;
d. Bankruptcies, receiverships, or similar proceedings in which you are a creditor, debtor, or other party in interest;
e. Representation and advocacy with respect to legislative issues, policy issues, or regulatory issues;
f. Intellectual property matters, including advice to other clients regarding your or

our other clients' rights in overlapping intellectual property;

g. Advice and representation regarding the existence or potential for legal claims that our other clients may have against you or that you may have against them; and
h. Discovery requests, including subpoenas to be served on you or responses to subpoenas issued by you to our other clients.

Based on the foregoing, the Client agrees that our representation of it in this matter will not disqualify our Firm from in the future opposing it in litigation, transactions, or other legal matters that are not substantially related to the subject matter of this representation, and the Client consents to any conflict of interest with respect to those representations. The Client understands and agrees that the Firm is not obligated to notify it when we undertake such matters that may be adverse to the Client. Additionally, the Client agrees that we may identify the Client as a client and disclose the general nature of our engagement(s) to other clients and potential clients for the limited purpose of seeking waivers of conflicts of interest. We agree, however, that the Client's consent to this disclosure will not apply in any instance in which the revealed information would compromise the Client's attorney-client privilege. If you later withdraw or modify this consent in any respect, you agree and consent to our withdrawal from our representation of you pursuant to these terms and the applicable rules of professional conduct.

**Prior Counsel.** Unless specifically retained to do so, the Firm does not evaluate or advise on prior counsel's work or potential claims against prior professionals. If the Client suspects it could have such claims, it should promptly seek advice from other counsel since claims against professionals are often subject to short limitation periods for filing suit.

**Insurance.** Unless specifically stated in our scope of work, our engagement does not include reviewing the Client's insurance policies for possible coverage or notifying the Client's insurance carriers about the matter.

**Advice About Possible Outcomes.** From time to time, we may express opinions or beliefs concerning the matter or various courses of action and the results that might be anticipated. Any such statement made by any lawyer of our Firm is an expression of opinion only, based on information available to us at the time, and is not a promise or guarantee.

**In-Firm Privilege.** Occasionally, issues arise relating to legal ethics or our duties under the professional conduct rules that apply to lawyers. These might include, e.g., conflict of interest issues, and could even include issues raised because of a dispute between us and a client over the handling of a matter. Normally, when such issues arise, we seek the advice of our in-house counsel. We consider such consultations to be attorney-client privileged communications between Firm personnel and the counsel for the Firm. A few courts, however, have held that under some circumstances such communications involve a conflict of interest between the client and our Firm and that our consultation with firm counsel may not be privileged, unless we either withdraw from the representation of the client or obtain the client's consent to consult with firm counsel.

We believe that it is in our clients' interest, as well as our Firm's interest, that when legal ethics or related issues arise during a representation, we obtain expert analysis of our obligations. Accordingly, the Client agrees that if we determine in our own discretion during the course of the representation that it is either necessary or appropriate to consult with our internal or outside counsel, we have the Client's consent to do so and that our representation of the Client will not, thereby, waive any attorney-client privilege that our Firm may have to protect the confidentiality of our communications with our counsel.

**Termination of Engagement.** The Client may at any time terminate our representation upon written notice to the Firm. We reserve the right to withdraw from our representation as required or permitted by the applicable rules of professional conduct upon written notice to the Client. If we terminate the engagement, we will take reasonable steps to protect the Client's interests in this matter, and the Client agrees to take all steps necessary to free us of any obligation to perform further, including executing any documents necessary to complete our withdrawal. If permission for withdrawal is required by a court or other adjudicator, we will promptly request such permission and the Client agrees not to oppose it.

The Client's termination or our withdrawal will not relieve the Client of its obligation to pay for

services already rendered, including work in progress and incomplete at the time of termination, and to pay for all expenses incurred on behalf of the Client through the termination or withdrawal date.

**Conclusion of Representation.** Absent express notice of termination or our withdrawal from representation, our representation of the Client will conclude with respect to any particular matter for which we have been engaged upon our substantial completion of our work on that matter. If no work has been performed by our attorneys on the Client's behalf for a period of three consecutive months, unless we remain as counsel of record in a pending proceeding, the Client agrees that our attorney-client relationship will have terminated.

**Retention and Disposition of Documents and Data.** At the Client's written request, its original documents and property will be returned at the conclusion of our representation, although the Firm reserves the right to retain copies as it deems appropriate. If the Client does not take possession of its documents or make other arrangements with us in writing, we reserve the right to destroy or otherwise dispose of any documents we retain without further notice at any time after ten years following the conclusion of the representation. Unless otherwise agreed in writing, native electronic data provided by the Client and hosted by us may be deleted after the conclusion of the representation, and any document review databases may be deleted two years after the conclusion of the representation.

**Post-Engagement Matters.** The Client is engaging the Firm to provide legal services in connection with a specific matter. After completion of the matter, changes may occur in the applicable laws or regulations that could impact the Client's future rights and liabilities. Unless the Client engages us after completion of the matter to provide additional legal advice on issues arising from the matter, the Firm has no continuing obligation to advise the Client on such issues or on future legal developments, including monitoring deadlines that may arise with respect to the matter.

**Subpoena or Lawful Process.** If we or our personnel are required by subpoena or other lawful process to provide testimony or produce documents or information relating to our representation of the Client, or if we must defend the confidentiality of the Client's files or communications with us in any proceeding, the Client agrees to pay us for our time, at the standard hourly rate for the individuals involved, and reimburse our expenses incurred addressing and responding to any such matter, even if our representation of the Client has ended.

**Costs.** We will include in our statements separate charges for services, such as copying, messenger and delivery service, atypical research, hosting electronic data, travel, and international telephone charges. Such expenses may also include filing fees, deposition costs, process servers, court reporters, and witness fees. The Client authorizes us to retain any investigators, consultants, or experts necessary in our judgment to represent the Client's interests in the matter. We will usually advance costs up to $100 and require that our clients directly pay, or deposit with us funds to pay, expenses over $100.

**Estimates and Budgets.** We are often requested to estimate the amount of fees and costs likely to be incurred in connection with a matter, but fees and costs are usually not predictable. Accordingly, we make no commitment concerning the maximum fees and costs that will be necessary to resolve or complete the matter. Any mention by us of fees and costs is only an estimate. It is up to the Client, if desired, to track the actual fees and costs against any estimate or budget and to bring promptly to our attention any concerns or questions if the actual billings vary from the estimate or budget. The Client's obligation to pay the Firm's fees and costs is in no way contingent on the ultimate outcome of the matter.

**Payment of Invoices.** Normally, we will send monthly invoices for work performed and expenses incurred during the previous month. Payment is due promptly upon receipt of our invoice. Any balance unpaid after 30 days of the date of the invoice will accrue interest at the rate of 7% per annum. Payments will be applied first to costs and expenses, then to accrued interest, if any, and then to the unpaid fees.

We will give the Client notice if the Client's account becomes delinquent. If the delinquency continues, we may withdraw from the representation and pursue collection of the account. We may also request permission of any court in which we have filed an appearance on the Client's behalf to allow us to withdraw as the

Client's counsel, and the Client agrees that non-payment of our fees is a valid basis for our request to withdraw. To the extent collection of the Client's account becomes necessary, the Client agrees that, in addition to any unpaid balance and interest thereon, we will be entitled to recover all costs and expenses of collection, including reasonable attorney fees.

**Retainer.** The amount of any retainer or advance payment is not an estimate of the total charges that may be incurred. The Firm may apply retainer funds to any delinquent payment due from the Client and, subject to our obligations under the applicable rules of professional conduct, to discontinue this representation until the Client replenishes the retainer. While a retainer is on deposit in our trust account, the Client grants us a security interest in such funds. Client retainers are deposited in a pooled trust account. Interest earned on the pooled account is paid to a charitable foundation as required by law.

**Trial Advance.** In a litigation matter, once a trial or hearing date is set, we may require the Client to pay all amounts then owed to us and to deposit with us the fees we estimate will be incurred in preparing for and completing the trial or arbitration, as well as jury fees or arbitration fees likely to be assessed. If the Client fails to timely pay any additional deposit requested, we will have the right to withdraw from the representation. If permission of the court or other adjudicator is required, the Client agrees not to oppose any motion to withdraw.

**Lien.** Client hereby grants the Firm a lien on any and all claims or causes of action which are the subject of Firm's representation of the Client in the Matter. Such lien shall be in addition to all other rights of the Firm to receive sums owing from the Client under this agreement.

**Electronic Communications.** It is likely that during the course of this engagement both the Client and the Firm will use electronic devices and internet services (which may include unencrypted email, mobile phones, voice over internet, electronic data/document websites, and other technology) to communicate and transfer documents. Although the use of this technology involves some degree of risk that third parties may access confidential communications, you agree that the benefits of using this technology outweigh the risk of accidental disclosure. Nevertheless, just as we have policies and systems in place designed to make our electronic communications with you reasonably secure, it is equally important that you communicate with us in a manner that reasonably protects the confidentiality of information we share and any attorney-client privilege that may apply to our communications. This means that you should not use any computers or other electronic devices, networks, or websites that are owned, controlled, or may be accessed by others, including but not limited to, an employer, a hotel, library, or internet café, or a shared home computer, to send or receive confidential information to or from us. Any device you use should be password protected and not accessible for use by any third party.

**Generative Artificial Intelligence.** During the course of this engagement, we may use generative artificial intelligence (GenAI) to enhance and streamline certain aspects of our services. Like any technology, GenAI carries some degree of risk, which may include the risk of errors in GenAI-generated content, data security vulnerabilities, and system malfunctions. We have implemented reasonable measures to safeguard against these risks, and our lawyers maintain oversight of GenAI-generated outputs. Accordingly, we believe and the Client agrees that the benefits of using this technology outweigh the related risks, and the Client consents to the use of this technology.

**Application to Subsequent Matters.** This engagement letter and Standard Terms of Engagement will apply to our present representation of the Client and to any subsequent matters that we may agree to undertake on its behalf, unless we agree in writing to a different arrangement. Even if the Client does not countersign the engagement letter, the Client's continued instructions to us concerning this and subsequent matters acknowledge the Client's acceptance of all the provisions of the engagement letter and these Standard Terms.

**Arbitration.** Any dispute arising out of, in connection with, or in relation to the interpretation, performance, or breach of this agreement—including any claim of legal malpractice whether sounding in tort or contract, negligence, breach of fiduciary duty, or similar claim and any claim involving fees or expenses—shall be resolved by final and binding confidential arbitration conducted in the state identified in the "Choice of Law" paragraph in the foregoing letter and governed by the procedural and substantive

laws of that state. The Federal Arbitration Act (9 U.S.C., Secs. 1-16) shall govern the interpretation of, enforcement of, and proceedings pursuant to the arbitration clause in this agreement. The binding arbitration shall be administered by and in accordance with the then-existing International Institute of Conflict Prevention & Resolution's (CPR) Administered Arbitration Rules, and discovery shall be administered in accordance with the Mode for each Schedule of the then-existing CPR Protocol on Disclosure of Documents and Presentation of Witnesses in Commercial Arbitration that allows for the broadest discovery.

Each party is limited to pursuing its own individual claims and shall not pursue class or collective-action claims. Each party shall bear its own attorneys' fees, costs, and expenses (including filing fees). The parties will also bear the cost of arbitration (including arbitrator fees) pursuant to an agreed-upon allocation. Absent an agreement about allocation, the defendants (individually and/or collectively) shall bear no more than half the cost of arbitration.

If any party (or parties collectively) seek(s) less than $3 million, the dispute shall be decided by a sole arbitrator mutually acceptable to all parties. If any party (or parties collectively) seek(s) $3 million or more at any point during the arbitration, a three-person panel of arbitrators mutually acceptable to all parties shall preside. The arbitrator(s), and not any court, shall have the exclusive authority to resolve any dispute or claim relating to the interpretation, applicability, or enforceability of this Agreement and its arbitration clause.

**By accepting services from the Firm, you agree to binding arbitration and waive any right to pursue a class or collective action. You and we are waiving the right to have disputes between us tried in court and the right to a jury trial.** You understand that arbitration may provide only limited discovery and appellate rights and that courts may enforce an award in arbitration without reviewing it for errors of fact or law. No demand for arbitration may be sustained after the date when the institution of legal or equitable proceedings based on such claim or dispute would be barred by the applicable statutes of limitation or statute of repose if this matter was filed in court. The arbitrator(s) are authorized to dismiss the arbitration at any stage based on a determination that the claim is time barred or for any other legally or factually supported reason.

If the total amount of the arbitration award is $5 million or more, inclusive of interest, the parties shall have the right to appeal the award to a panel of three arbitrators composed of former appellate court judges pursuant to the CPR Arbitration Appeal Procedures. The appellate arbitrators shall be mutually acceptable to all parties. In furtherance of the Appeal Procedures, the appellate arbitration panel shall review the facts and law pursuant to the standard of review that would apply if this proceeding was heard by an appellate court sitting in the state identified in the "Choice of Law" paragraph in the foregoing letter.

Before agreeing to arbitration, you have the right to consult with independent counsel..