**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>FIRST BRANDS GROUP, LLC, *et al.*,<br><br>Debtors. [1] | Chapter 7<br><br>Case No. 25-90399 (CML)<br><br>(Jointly Administered) |

**EVOLUTION'S JOINDER TO THE OBJECTIONS OF THE UCC AND KATSUMI SERVICING, LLC TO THE EXCESS ABC INSURERS' MOTION FOR CLARIFICATION OR, ALTERNATIVELY, RELIEF FROM THE AUTOMATIC STAY**

Evolution Credit Opportunity Master Fund II-B, L.P., Evolution Credit Partners Trade Finance Master, L.P., Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution-affiliated funds (collectively, "Evolution") hereby joins (in this "Joinder") the *Objection of the Official Committee of Unsecured Creditors to Motion for Entry of an Order (I) Clarifying that the May 29, 2026 Order (ECF No. 2845) Modifies the Automatic Stay to Authorize Payments by the Excess ABC Insurers or Alternatively (II) Authorizing, and, to the Extent Necessary, Modifying the Automatic Stay to Allow the Excess ABC Insurers to Make Payments, Including the Advancement of Defense Costs, of Insured Persons* [Docket No. 3695] (the "UCC Objection"); and *Katsumi Servicing, LLC's Objection to Excess ABC Insurers' Motion for Clarification Or, Alternatively, Relief from the Automatic Stay* [Docket No. 3876] (the "Katsumi Objection").[2]

[1] A complete list of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 7 cases is 127 Public Square, Suite 5300, Cleveland, Ohio 44114.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the UCC Objection, the Katsumi Objection, the *Chapter 7 Trustee Ronald Sommers' Statement in Response to Excess ABC Insurers' Motion for Clarification* [Docket No. 3872] (the "Trustee Statement"), and the *Motion for Entry of an Order (I) Clarifying that the May 29, 2026 Order (ECF No. 2845) Modifies the Automatic Stay to Authorize Payments by the Excess ABC Insurers or Alternatively (II) Authorizing, and, to the Extent Necessary, Modifying the Automatic Stay to Allow the Excess ABC Insurers to Make Payments, Including the Advancement of Defense Costs, of Insured Persons* [Docket No. 3669] ("Excess ABC Insurers' Motion).

**JOINDER**

1. As the Court identified in denying confirmation of the FBG Debtors' proposed Chapter 11 plans and converting their cases to Chapter 7, litigation claims represent a significant portion of the remaining value in these bankruptcy estates. And as the Court has previously recognized, the Side ABC Policies provide one of the few certain avenues for potential creditor recoveries in these Chapter 7 cases. But the directors and officers at the center of the First Brands fraud allegations are attempting to take the Side ABC Policies for themselves, decreasing (and potentially eliminating) the assets available to compensate other creditors, while tens of millions of dollars remain in the Side A policies to cover their defense costs. The Court has not permitted that and should not do so now.

2. Evolution joins the UCC Objection and Katsumi's Objection to the Excess ABC Insurers' Motion, the contents of which are incorporated herein. Evolution writes separately to raise additional objections to the Motion.[3]

3. *First*, the Court could not have lifted the stay or modified the prior lift-stay order in the May 29 Order without providing notice and a hearing. *See* Fed. R. Bankr. P. 4001(a)(1) (requiring Section 362(d) motions to comply with Rule 9014, which provides for "[r]easonable notice and opportunity to be heard"); *Gen. Electr. Credit Corp. v. Timely Secretarial Serv., Inc. (In re Timely Secretarial Serv., Inc.)*, 987 F.2d 1167, 1171–72 (5th Cir. 1993) (holding that both due process and the Federal Rules of Bankruptcy Procedure required notice and an opportunity for a hearing before modifying a lift-stay order). The Bankruptcy Rules clearly delineate when a stay

[3] As set forth in the Trustee Statement at 1, the SPV Debtors (as defined therein) are insured parties under the relevant insurance policies. Pursuant to this Court's prior ruling [Docket No. 1231] (the "January 7 Order"), the Debtors, including the SPV Debtors, have an interest in the proceeds of the Side ABC Tower. Evolution has an all-assets lien on the property of the SPV Debtors Patterson Inventory, LLC and Starlight Inventory I, LLC, which includes their interest in the proceeds from the Side ABC Tower.

may be lifted without notice: when (1) "specific facts . . . clearly demonstrate that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party or its attorney can be heard in opposition," and (2) "the movant's attorney certifies to the court in writing what efforts, if any, have been made to give notice and why it should not be required." Fed. R. Bankr. P. 4001(a)(2). No one has made, or attempted to make, that showing. The Movants' effort to contort the May 29 Order would violate these foundational principles.

4. *Second*, as explained in the UCC Objection (at ¶¶ 11–17) and the Katsumi Objection (at ¶¶ 6–8), the Court lacked jurisdiction to lift the automatic stay to allow the directors and officers to access the Side ABC Policies because of the pending appeal of the January 7 Order. While the Side A Insurers[4] argue that the pending appeal of the January 7 Order is "narrowly limited" to the Court's finding as to whether the estates "have an interest in the proceeds of the ABC Policy and that interest is property of the estate," and not the Court's denial of "the request to lift the automatic stay as to the ABC Policy," *see* Side A Insurers' Joinder at 3, that is irrelevant. Edward James and the Side A Insurers (together, the "Appellants") appealed the Court's January 7 ruling that the Side ABC Policies are property of the estate because reversal of that determination would make the automatic stay inapplicable. 11 U.S.C. § 362 (covering "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate").[5] Indeed, the Court need only look to the July 30, 2026 Status Report filed

[4] Defined as Ironshore Indemnity, Inc., Fair American Insurance and Reinsurance Company, Allianz Global Risks US Insurance Company, Westfield Select Insurance Company, AXIS Insurance Company, and Zurich American Insurance Company. *See Side A Insurers' Joinder in Excess ABC Insurers' Motion for Clarification Or, In the Alternative, Relief from the Automatic Stay* [Docket No. 3825] ("Side A Insurers' Joinder").

[5] The Court's ruling on whether to lift the automatic stay expressly turned on whether the insurance policies were property of the estate. *See* Docket No. 1231 ("[T]he Side A Policies and the proceeds of the Side A Policies are not property of the estate under § 541 of the Bankruptcy Code. Thus, the automatic stay … does not apply to the Side A Policies or their proceeds[.] … Debtors have an interest in the proceeds of the ABC Policy, and that interest is property of the estate under § 541. The Court denies the request to lift the automatic stay for cause under § 362(d) without prejudice[.]").

by the Appellants on the District Court's appellate docket, in which the Appellants admit that their appeal "involves a dispute over whether defense costs can be paid under the Primary ABC Policy and Excess ABC Policies" and contend that "***[t]hat dispute seems to have been resolved*** by the Bankruptcy Court's [May 29] comfort order, which modified the automatic stay, to the extent applicable, and authorized the Primary ABC Insurer and 'any other insurance carrier of a directors and officers insurance policy listed in Exhibit C' … to make payments 'in accordance with the terms of the ABC Policy.'" *In re James*, No. 4:26-cv-513 (S.D. Tex.), Docket No. 58 ¶ 1 (citing the May 29 Order) (emphasis added); *see also id.* at Docket No. 61 ¶ 5 (stating that, "[i]f the Bankruptcy Court grants the Excess ABC Insurers' motion and clarifies that the May 29 Comfort Order authorizes payments under the Excess ABC Policies, then this Appeal effectively will be resolved").

5. The Movants cannot effectively obtain a reversal of the January 7 Order through different means while an appeal of that same order is pending, "circumvent[ing] the appeal process." *In re Whispering Pines Ests., Inc.*, 369 B.R. 752, 759 (B.A.P. 1st Cir. 2007); *see also id.* at 759–61 (holding that the bankruptcy court "did not have jurisdiction" to enter a stay-relief order "while the appeal of [a] Confirmation Order was pending" because the appeal "challenge[d] a proposal for the sale of … Property," and the subsequent stay-relief order granted "permission to foreclose the Property," which "directly implicated the matter under the appeal of the Confirmation Order"); *In re BNP Petroleum Corp.*, 2012 WL 7620694, at *3 (S.D. Tex. Feb. 27, 2012) (noting that the bankruptcy court could consider, and could deny, a motion to set aside a sale agreement, but could not grant it while the order approving the sale agreement was pending on appeal).[6]

---

[6] The Movants' caselaw on this issue (*see* Side A Insurers' Joinder at 2–3) is readily distinguishable. In each case they cite, the subsequent order would not have been inconsistent with the matter on appeal. *See In re Scopac*, 624 F.3d 274, 280–81 (5th Cir. 2010) (district court was not divested of jurisdiction to consider appeal of § 507(b) order while a plan confirmation appeal was pending because the § 507(b) challenge raised "independent factual inquiries,



4906-4803-2472.1

6. *Third*, as the other Objections explained, the directors and officers have access to the $100 million Side A Policy. *See* UCC Objection ¶¶ 1, 15, 22; Katsumi Objection ¶¶ 11–13; *see also* Side A Insurers' Joinder at 6–7. The Movants have made no effort to establish why they need access to more than $100 million to cover defense costs, or to show that this amount has been depleted. *See* Ex. A (Jan. 7, 2026, D&O Mtn. Hr'g Tr.) at 214:15–18 ("Modification requires cause. Cause requires evidence. And I've heard no evidence today to say that they can't use the $100 million first. Just come back if you need it. Again, need more."). To the contrary, based on the Movants' own contentions, between $40 million and $60 million remains under the $100 million Side A policy. *See* Side A Insurers' Joinder at 7–8 (claiming that "$60 million in legal fees" have been sought from the insurers thus far); Docket No. 3824 at 4 (Edward James claiming that, "at the time of filing, Insured Persons had submitted more than $43 million in legal fees for advancement"); Excess ABC Insurers' Motion ¶ 48 (stating that "the Insured Persons have submitted more than $43 million in legal fees for advancement under the ABC Policies and the Side A Policies"). While the Excess ABC Insurers claim (at Excess ABC Insurers' Motion ¶ 46) that "courts nationwide have found that sufficient 'cause' exists to modify the automatic stay in circumstances such as those present here," none of the cases they cite involved insureds with current access to tens of millions of dollars in insurance proceeds to cover their defense costs. *See In re MF Glob. Holdings, Ltd.*, 469 B.R. 177, 192–93 (Bankr. S.D.N.Y. 2012) (insured persons

---

unrelated to confirmation"; it raised "issues that could not have been raised in the appeal of the confirmation order, seeks relief unavailable in that appeal, and could not have had the effect of interfering with that appeal or circumventing it"); *In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484, 523–24 (N.D. Tex. 2019) (bankruptcy court was not divested of jurisdiction to confirm a plan while an appeal of the denial of a motion to compel arbitration was pending, because the plan confirmation order "did not in any way interfere with, or circumvent, this court's consideration" of the appeal). Here, by contrast, lifting the automatic stay would circumvent the very issue on appeal that provided the basis for the Court's previous denial of the Movants' request to lift the automatic stay: whether the Side ABC Policies are property of the estates. Finally, the Movants' citation to *In re Transtexas Gas Corp.* does not help them, as there the Fifth Circuit held that the bankruptcy court "had no jurisdiction to enter [a] supplemental order" because an appeal divested the bankruptcy court of jurisdiction to enter it. 303 F.3d 571, 578–82 (5th Cir. 2002).

showed a "*present need* for payment of their defense costs" (emphasis added)); *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010) (noting that "the Insureds would have to pay" defense costs "out of their own pockets" absent stay relief); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 514 (Bankr. D. Del. 2004) ("Without funding, the Individual Defendants will be prevented from conducting a meaningful defense to the Trustee's claims and may suffer substantial and irreparable harm."); *In re Arter & Hadden, L.L.P.*, 335 B.R. 666, 674 (Bankr. N.D. Ohio 2005) (similar); *In re Laminate Kingdom, LLC*, 2008 WL 1766637, at *4 (Bankr. S.D. Fla. Mar. 13, 2008) (collecting similar cases); *In re CyberMedica, Inc.*, 280 B.R. 12, 18 (Bankr. D. Mass. 2002) (insured parties granted stay relief because they were "in need *now* of their contractual right to payment of defense costs and may be harmed if disbursements are not presently made to fund their defense" (emphasis in original)).[7] The directors and officers face no irreparable harm. *See* Excess ABC Insurers' Motion ¶ 49; *see also* Docket No. 3824 at 4–5; Side A Insurers' Joinder at 7–8.

**<u>CONCLUSION</u>**

For the foregoing reasons, Evolution joins the UCC Objection and the Katsumi Objection and respectfully requests that the Court deny the Excess ABC Insurers' Motion.

[7] There is no indication in the additional case cited by the Excess ABC Insurers, *In re Enron Corp.*, 2002 WL 1008240, at *2 (Bankr. S.D.N.Y. May 17, 2002), that the directors and officers in that case had access to other sources of payment for defense costs, as is the case here.

The sole additional case proffered by Mr. James's counsel, *Sec. & Exch. Comm'n v. Narayan*, 2017 WL 447205, at *5 (N.D. Tex. Feb. 2, 2017), is inapplicable: it does not concern a lift-stay motion, and the ruling turned in large part on the court's finding that the receivership at issue may not even have had any right to the proceeds of the relevant policies.

Respectfully submitted this 13th day of October, 2026,

**GRAY REED**

By: */s/ Jason S. Brookner*
Jason S. Brookner
Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email: jbrookner@grayreed.com

- and -

**ELSBERG BAKER & MARURI PLLC**
Michael Duke (admitted *pro hac vice*)
David Elsberg (admitted *pro hac vice*)
Vivek Tata (admitted *pro hac vice*)
Garrett Gerber (admitted *pro hac vice*)
Andrew Parks (admitted *pro hac vice*)
Ella Epstein (admitted *pro hac vice*)
350 Fifth Avenue, 38th Floor
New York, NY 10018
Telephone: (212) 597-2600
Email: mduke@elsberglaw.com
delsberg@elsberglaw.com
vtata@elsberglaw.com
ggerber@elsberglaw.com
aparks@elsberglaw.com
eepstein@elsberglaw.com

- and -

**PROSKAUER ROSE LLP**
Vincent Indelicato (admitted *pro hac vice*)
Matthew R. Koch (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: vindelicato@proskauer.com
mkoch@proskauer.com

- and -

Charles A. Dale (admitted *pro hac vice*)
One International Plaza
Boston, MA 02110-2600
Telephone: (617) 526-9600
Email: cdale@proskauer.com

- and -

Jordan E. Sazant (admitted *pro hac vice*)
70 West Madison St., Ste. 3800
Chicago, IL 60602
Telephone: (312) 962-3500
Email: jsazant@proskauer.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of October, 2026, the undersigned caused a true and correct copy of the foregoing document to be served upon all parties via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Jason Brookner*
Jason Brookner