**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 7** |
| | § | **(Previously Chapter 11)** |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | |
| | § | **Case No. 25-90399 (CML)** |
| **Debtors.**[1] | § | |
| | § | **Jointly Administered** |

**TRUSTEE'S OBJECTION TO MOTION FOR ENTRY OF AN ORDER (I) CLARIFYING THAT THE MAY 29, 2026 ORDER (ECF NO. 2845) MODIFIES THE AUTOMATIC STAY TO AUTHORIZE PAYMENTS BY THE EXCESS ABC INSURERS, OR ALTERNATIVELY (II) AUTHORIZING, AND, TO THE EXTENT NECESSARY, MODIFYING THE AUTOMATIC STAY TO ALLOW THE EXCESS ABC INSURERS TO MAKE PAYMENTS, INCLUDING THE ADVANCEMENT OF DEFENSE COSTS, OF INSURED PERSONS**

[Relates to Docket Nos. 1231, 2845, 3669, 3695, 3824, 3825, 3848, & 3876]

Eva S. Engelhart, the chapter 7 Trustee (the "Trustee") of the jointly administered bankruptcy estates of First Brands Group, LLC, First Brands Group Holdings, LLC's direct and indirect subsidiaries, and Viceroy Private Capital, LLC (collectively, the "FBG Debtors"),[2] in the above-styled jointly administered chapter 7 cases (the "Bankruptcy Cases"), respectfully files this objection (the "Objection") to the *Motion for Entry of an Order (I) Clarifying that the May 29, 2026 Order (ECF No. 2845) Modifies the Automatic Stay to Authorize Payments by the Excess ABC Insurers or Alternatively (II) Authorizing, and, to the Extent Necessary, Modifying the Automatic Stay to Allow the Excess ABC Insurers to Make Payments, Including the Advancement*

[1] A complete list of the "Debtors" in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 7 cases is Eva Engelhart, Chapter 7 Trustee c/o Porter Hedges LLP, Joshua W. Wolfshohl, 1000 Main St., 36th Floor, Houston, Texas 77002.

[2] The FBG Debtors do not include the 16 additional SPV debtors in the Carnaby Capital Holdings SPV silo or the "Previously Converted Debtors."

*of Defense Costs, of Insured Persons* [Docket No. 3669] (the "Motion") filed by XL Specialty Insurance Company, Endurance American Insurance Company, Markel American Insurance Company, Berkley Insurance Company, Arch Insurance Company, Federal Insurance Company, Twin City Fire Insurance Company, Everest National Insurance Company, and Old Republic Insurance Company (collectively, the "Movants" or "Excess ABC Insurers") as well as the joinders[3] thereto (collectively, the "Joinders"). In support of this Objection, the Trustee respectfully states as follows.[4]

## PRELIMINARY STATEMENT

1. The Movants ask the Court to "clarify" that an order about Berkshire's $10 million primary layer released the entirety of the $90 million ABC Tower.[5] That would be a reversal of this Court's earlier order, not a mere clarification, and it would moot the appeal of this Court's earlier order. In the Order Denying Stay Relief, the Court held that the ABC Tower is estate property and told the Insureds to exhaust the Side A Tower first. That order is on appeal, and the

[3] *See Joinder of Edward James to the Excess ABC Insurers' Motion for Entry of an Order (I) Clarifying That the May 29, 2026 Order (Dkt. No. 2845) Modifies the Automatic Stay to Authorize Payments by the Excess ABC Insurers, or Alternatively (II) Authorizing, and, to the Extent Necessary, Modifying the Automatic Stay to Allow the Excess ABC Insurers to Make Payments, Including the Advancement of Defense Costs, of Insured Persons (Dkt. No. 3669)* [Docket No. 3824] (the "E. James Joinder"); *Side A Insurers' Joinder in Excess ABC Insurers' Motion for Clarification or, in the Alternative, Relief from the Automatic Stay* [Docket No. 3825] (the "Side A Insurers Joinder"); *see also Response of Patrick James to Motion of Excess ABC Insurers for Entry of an Order (I) Clarifying That May 29, 2026 Order Authorizes Payments by Excess ABC Insurers, or Alternatively (II) Modifying Automatic Stay to Allow Excess ABC Insurers to Make Payments, Including Advancement of Defense Costs, of Insured Persons* [Docket No. 3848] (the "P. James Response" and together with the E. James Joinder and the Side A Insurers Joinder, the "Joinders").

[4] Additionally, the Trustee joins in and incorporates by reference the arguments made in the *Objection of the Official Committee of Unsecured Creditors to Motion for Entry of an Order (I) Clarifying That the May 29, 2026 Order (ECF No. 2845) Modifies the Automatic Stay to Authorize Payments by the Excess ABC Insurers or Alternatively (II) Authorizing, and, to the Extent Necessary, Modifying the Automatic Stay to Allow the Excess ABC Insurers to Make Payments, Including the Advancement of Defense Costs, of Insured Persons* [Docket No. 3695] (the "UCC Objection") filed by the below-defined Committee. The Trustee further joins in and incorporates by reference the arguments made in *Katsumi Servicing, LLC's Objection to Excess ABC Insurers' Motion for Clarification or, Alternatively, Relief From the Automatic Stay* [Docket No. 3876] (the "Katsumi Objection").

[5] Capitalized terms in this Preliminary Statement carry the meanings ascribed to them in the remainder of this Objection.



18744376

Appellants have told the District Court that granting this Motion would "effectively" resolve the Appeal. If the May 2026 Order meant what the Movants say, the Court would have lacked jurisdiction to enter it. But the Movants' interpretation is incorrect. By its terms, the May 2026 Order covers only "the Primary Insurer" and "the ABC Policy," both defined by reference to Berkshire alone. It never mentions the Excess ABC Insurers or their policies.

2. The alternative request for stay relief fails for the same reason it failed in January. The Side A Tower has not been exhausted. It is still paying the Insureds' defense costs, with at least $55 million remaining. The Movants offer no evidence that the condition the Court set has been met. Every dollar paid from the Excess ABC Policies permanently reduces an estate asset that the Trustee, appointed after conversion, is charged with preserving for creditors.

3. The Motion and the Joinders should be denied.

## BACKGROUND

### I. The Chapter 7 Cases

4. On September 28, 2025 (the "Petition Date"), First Brands Group, LLC and its debtor affiliates filed the jointly administered chapter 11 cases (the "Chapter 11 Cases"). The Debtors operated their business and managed their properties as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. On October 9, 2025, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee"). *See The United States Trustee's Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 313]. On January 9, 2026, the Court entered an *Order Approving the Appointment of Examiner* [Docket No. 1260], pursuant to which the Court approved the appointment of Martin De Luca as an examiner in the Chapter 11 Cases.

6. On August 24, 2026, the Court entered its *Order Denying Plan Confirmation* [Docket No. 3710] by which the Court denied the Debtors' *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* [Docket No. 3448], and separately issued an oral ruling that the Chapter 11 Cases be converted to cases under chapter 7 of the Bankruptcy Code.

7. On September 1, 2026 (the "Conversion Date"), the Court entered the *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* [Docket No. 3748] (the "Conversion Order"), which converted the Converting Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (collectively, the "Chapter 7 Cases").

8. On September 1, 2026, the U.S. Trustee appointed Eva S. Engelhart as the interim chapter 7 trustee for the FBG Debtors,[6] as reflected in the notices of chapter 7 bankruptcy case. *See, e.g.*, *Notice of Chapter 7 Bankruptcy Case* [Docket No. 3753]. The U.S. Trustee also appointed Ronald J. Sommers as the interim chapter 7 trustee for the remaining Converting Debtors (as defined in the Conversion Order) other than the FBG Debtors.[7]

## II. The Debtors' Insurance

9. As reflected in the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Insurance Policies, Surety Bonds, and Letters of Credit and (B) Pay All Obligations with Respect Thereto, and (II) Granting Related Relief* [Docket No.

---

[6] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Conversion Order.

[7] Pursuant to Federal Rule of Bankruptcy Procedure 2008(b)(1), Ronald J. Sommers rejected the appointment as it relates to the following estates: Eagle Casting Holdings, LLC, Case No. 25-90490 (CML); Carnaby Inventory Holdings IV, LLC, Case No. 25-90464 (CML); Carnaby Inventory IV, LLC, Case No. 25-90466 (CML); Carnaby FA Holdings, LLC, Case No. 25-90468 (CML); Carnaby FA, LLC, Case No. 25-90473 (CML); and Carnaby Capital, LLC, Case No. 25-90460 (CML). Catherine Curtis currently serves as chapter 7 trustee administering these estates.

10] (the "Insurance Motion"), the Debtors have over 135 insurance policies underwritten by roughly 95 insurance carriers.

10. As described by the Court, the insurance policies relevant to the Movants exist within "two towers," each of which totals $100 million. *See* Transcript of January 7, 2026 Hearing at 207:19–21 [Docket No. 1273] [hereinafter, the "Jan. 7 Tr."]. The first tower (the "ABC Tower") provides Side A coverage (losses that are not indemnifiable by the Debtors or "pure D&O"), Side B coverage (losses of the Debtors that arise from the indemnification of the Debtors' directors and officers (the "D&Os")), and Side C coverage (losses relating to claims asserted against the Debtor and non-Debtor companies). *Id.* at 163:2–14, 207:18–208:5. The primary layer of $10 million was issued by Berkshire Hathaway Specialty Insurance Company ("Berkshire") under Policy No. 47-EMC-310190-06 (the "ABC Policy" or "Primary ABC Policy"). *Id.* at 162:22–163:1, 208:12–19; *see also May 29, 2026 Order* [Docket No. 2845] (the "May 2026 Order"). Nine excess layers of $10 million each were issued by the Excess ABC Insurers (collectively, the "Excess ABC Policies"). *See* Jan. 7 Tr. at 162:18–163:1; *see also* Motion at Ex. A. The ABC policies are wasting policies—every dollar spent on defense costs reduces the amount otherwise available to the estates. *Id.* at 212:4–11.

11. The second tower (the "Side A Tower" or "AIG Tower") provides $100 million in "pure" Side A coverage. *Id.* at 208:12–19. In other words, the Side A Tower differs from the ABC Tower in that the Side A Tower is only for the benefit of the insured directors and officers (the "Insureds"). *Id.*

## III. The Order Denying Stay Relief

12. On November 26, 2025, certain D&Os filed a *Motion for Entry of an Order (I) Authorizing, and, to the Extent Necessary, Modifying the Automatic Stay to Allow the Use of Proceeds of Directors and Officers Liability Insurance Policies Issued to Non-Debtor Mayfair*

*Enterprises, LLC for Insureds' Defense Costs or, in the Alternative (II) Confirming That Advancement of Defense Costs and Providing Notice in Accordance with Directors and Officers Liability Insurance Policies Does Not Violate the Automatic Stay* [Docket No. 798] (the "D&Os' Stay Relief Motion"), which principally argued that (i) the ABC Policy is not property of the estate, and (ii) even if it were, the stay should be lifted to allow the movants to access proceeds of the ABC Policy. Numerous Insureds joined the D&Os' Stay Relief Motion. *See, e.g.*, Docket Nos. 866, 880, 1064, 1088, 1102, 1113, & 1144. Among other things, Patrick James and Edward James sought to use the proceeds of insurance in connection with their defense in criminal proceedings styled *United States v. Patrick James & Edward James*, No. 26 Cr. 29 (S.D.N.Y.) (the "Criminal Case").

13. The D&Os' Stay Relief Motion was hotly contested, including by the Committee in its *Omnibus Objection of the Official Committee of Unsecured Creditors to Motions and Joinders of Insiders Seeking to Modify the Automatic Stay to Allow the Use of Proceeds of Directors and Officers Liability Insurance Policies* [Docket No. 1149].[8]

14. On January 7, 2026, the Court held a hearing on the D&Os' Stay Relief Motion and provided a detailed oral ruling. *See* Jan. 7 Tr. at 207:4–220:4. The Court concluded that while the Side A Tower was not property of the estate, the ABC Tower did constitute property of the Debtors' estates pursuant to section 541. *See id.* 210:14–212:12. Having determined that the stay applied to the ABC Tower, the Court then addressed whether cause existed to lift the stay. *See id.* at

[8] *See also Objection of Katsumi Servicing, LLC to Movants' Motion for Entry of an Order (I) Authorizing, and, to the Extent Necessary, Modifying the Automatic Stay to Allow the Use of Proceeds of Directors and Officers Liability Insurance Policies Issued to Non-Debtor Mayfair Enterprises, LLC for Insureds' Defense Costs or, in the Alternative (II) Confirming That Advancement of Defense Costs and Providing Notice in Accordance with Directors and Officers Liability Insurance Policies Does Not Violate the Automatic Stay* [Docket No. 1145].

212:11–216:20. The Court unequivocally stated it had not been presented with evidence of cause to justify granting the requested relief. *See id.* at 216:16–20.

15. More particularly, the Court reasoned that the Insureds had not yet exhausted the Side A Tower and had not otherwise shown why they needed to immediately access proceeds of the ABC Tower. *Id.* at 213:13–22. On the other hand, the ABC Tower is a wasting policy, meaning that lifting the stay could deplete funds available to the Debtors and thus could harm the estates. *Id.* But ultimately, the Court had no evidence of harm to anyone. *Id.* The Court thus established a framework whereby the Side A Tower needed to be exhausted before the Court would find sufficient cause to lift the stay to allow proceeds of the ABC Tower to be expended on the Insureds. *See id.* at 213:25–216:20. And once the Side A Tower had been depleted, parties could return to the Court for a short hearing to seek stay relief with respect to the ABC Tower. *See id.*

16. Accordingly, on January 7, 2026, the Court entered its *Order Regarding Motion for Entry of an Order (I) Authorizing and, to the Extent Necessary, Modifying the Automatic Stay to Allow Use of Proceeds of Directors and Officers Liability Insurance Policies Issued to Non-Debtor Mayfair Enterprises, LLC for Insureds' Defense Costs or, in the Alternative, (II) Confirming That Advancement of Defense Costs and Providing Notice in Accordance with Directors and Officers Liability Insurance Policies Does Not Violate the Automatic Stay* [Docket No. 1231] (the "Order Denying Stay Relief"). As relevant here, the Order Denying Stay Relief made three determinations: First, the Side A Tower policies and their proceeds are not section 541 estate property. Second, the Debtors' section 541 estates include an interest in the ABC Policy's proceeds. Third, the movants had failed to demonstrate cause to lift the stay to access those proceeds.

**IV. The Appeals of the Order Denying Stay Relief**

17. On January 21, 2026, Edward James, one of the movants with respect to the D&Os' Stay Relief Motion, filed a *Notice of Appeal* [Docket No. 1647], beginning an appeal of the Order Denying Stay Relief to the United States District Court for the Southern District of Texas (the "District Court"). Separately, on February 4, 2026, seven of the insurers in the Side A Tower (collectively, the "Appellant Insurers" and together with James, the "Appellants") filed their own *Notice of Appeal* [Docket No. 1865] in connection with the Order Denying Stay Relief. These appeals have since been consolidated and are proceeding under Case No. 4:26-cv-00513 (the "Appeal"). *See* Order [Case No. 4:26-cv-00513, ECF No. 43].

18. As reflected in their respective statements of the issues on appeal, the Appellants challenge the Court's conclusion that the proceeds of the ABC Policy are property of the Debtors' estates under section 541. *See Appellant's Statement of Issues to Be Presented on Appeal and Designation of Items to Be Included in the Appellate Record* [Docket No. 1861]; *Appellants' Statement of Issues to Be Presented on Appeal and Designation of Items to Be Included in the Appellate Record* [Docket No. 1952].

19. On April 24, 2026, the District Court denied a motion to dismiss the Appellant Insurers' appeal for lack of standing. *See Memorandum and Opinion* [Case No. 4:26-cv-00513, Docket No. 54].

20. These appeals remain pending, although as described below, a dispute has arisen regarding whether the May 2026 Order has effectively mooted the Appeal, with the Appellants contending that the issue on appeal has been resolved. *See Appellants' Status Report* [Case No. 4:26-cv-00513, ECF No. 58] [hereinafter, the "James Status Report"]; *Appellee the Official Committee of Unsecured Creditors' Status Report* [Case No. 4:26-cv-00513, ECF No. 59]; *Appellants' Status Report* [Case No. 4:26-cv-00513, ECF No. 60] [hereinafter, the "Side A

Insurers' Status Report"]; *Appellants' Status Report* [Case No. 4:26-cv-00513, ECF No. 61] [hereinafter, the "Joint Appellants' Status Report" and together with the Side A Insurers' Status Report and the James Status Report, the "Appellants' Status Reports"].

**V. The May 2026 Order**

21. On May 29, 2026, the Court *sua sponte* entered its May 2026 Order. In pertinent part, the May 2026 Order provides:

> (1) Berkshire Hathaway Specialty Insurance Company (the "Primary Insurer") under Policy No. 47-EMC-310190-06 issued by the Primary Insurer to Mayfair Enterprises, LLC (the "ABC Policy") and all related Side A Insurers are authorized to make payments, including the advancement of Defense Costs (as defined in the ABC Policy) to, or on behalf of, any eligible party in accordance with terms of the ABC Policy, without further notice or relief of this Court.
>
> (2) The automatic stay set forth in section 362 of the Bankruptcy Code, to the extent applicable, is modified to permit the Primary Insurer and Side A Insurers to pay and/or advance Defense Costs consistent with their obligations under the ABC Policy.

*See* May 2026 Order ¶¶ 1–2 (footnote omitted).

22. The May 2026 Order was entered "[i]n consideration of the Court's orders at ECF Nos. 181 and 195 in Adv. No. 25-03803, and the relief granted therein." The referenced adversary proceeding is one of several lawsuits initiated and demands made against the Debtors' former directors and officers, including: (1) *First Brands Group, LLC v. Patrick James, et al.*, No. 25-3803 (Bankr. S.D. Tex.) (the "First Brands Adversary Proceeding"); (2) *First Brands Group, LLC v. Onset Financial, Inc., et al.*, No. 26-3005 (Bankr. S.D. Tex.) (the "Onset Adversary Proceeding"); (3) *United States v. Brumbergs*, No. 1:26-cr-00025 (S.D.N.Y); (4) *United States v. Stephen Graham*, No. 1:26-cr-00025 (S.D.N.Y.); (5) the Criminal Case; and (6) demands by Pro-Reps Sales, LLC and Tri Plus Sales, Inc. *See* Motion ¶ 10.

23. The referenced orders addressed litigation stays and case deadlines in the adversary proceeding. More particularly, the first order, entered April 17, 2026, stayed "all discovery" in the

First Brands Adversary Proceeding "pending the resolution of the parallel criminal case, *United States v. Patrick James & Edward James*, 26 Cr. 29 (AT) (S.D.N.Y.)." [First Brands Adversary Proceeding, Docket No. 181]. It also directed the parties to file a status report by July 13, 2026, advising "whether any modification of this stay is warranted." *Id.* The second order, entered the same day as the May 2026 Order, clarified that "all case deadlines, including deadlines to respond to pending motions to dismiss . . . and the Motion for Withdrawal of Reference . . . have been held in abeyance pending the issuance of a scheduling order." It also set a status conference for July 20, 2026. [First Brands Adversary Proceeding, Docket No. 195]. In other words, the May 2026 Order referred to orders that deal generally with case management in the First Brands Adversary Proceeding, not insurance.

**VI. The Motion**

24. On August 14, 2026, the Excess ABC Insurers filed the Motion. The Movants are insurers that each underwrote one of the nine $10 million layers above Berkshire's initial $10 million layer that, together with that lawyer, comprise the ABC Tower.

25. On August 22, 2026, the Committee filed the UCC Objection. The Committee made a number of (correct) substantive arguments against the Motion, but it also urged the Court to defer ruling on the Motion until it had determined whether it would confirm the Debtors' proposed plan or convert the Chapter 11 Cases. UCC Objection ¶¶ 20–25.

26. On September 25, 2026, the certain of the Appellants filed the Joinders to the Motion, and Patrick James filed the P. James Response. *See* E. James Joinder; Side A Insurers Joinders; P. James Response.

27. According to the Appellants, the May 2026 Order has effectively mooted the Appeal. More particularly, the Appellants each characterize the "core" of their appeals as a "dispute over whether defense costs can be paid under the Primary ABC Policy and Excess ABC

Policies." Appellants' Status Report ¶ 1. And according to the Appellants, this dispute was resolved when the Bankruptcy Court entered the May 2026 Order, which they describe as a "comfort order" that modified the automatic stay and authorized payments in accordance with the terms of the ABC Policy, "to which the Excess ABC Policies follow form." *Id.* ¶ 1.[9] They expressly state that "[i]f the Bankruptcy Court grants the Excess ABC Insurers' Motion and clarifies that the May 29 Comfort Order authorizes payments under the Excess ABC Policies, then this Appeal effectively will be resolved." Joint Appellants' Status Report ¶ 5.

## ARGUMENT AND AUTHORITIES

### I. The May 2026 Order Does Not, and Cannot, Mean What the Movants Say It Does

#### A. Accepting the Movants' Position Would Render the May 2026 Order Void Given the Pendency of the Appeal

28. The Movants' reading of the May 2026 Order requires vacating the Order Denying Stay Relief notwithstanding that the Appellants' decision to file the Appeal divested this Court of jurisdiction to do so.

29. In the Order Denying Stay Relief, the Court denied stay relief "[f]or the reasons stated on the record." During the January 7, 2026 hearing, the Court made clear that unless and until the Side A Tower is unavailable, cause did not exist to allow the Insureds to access the proceeds of the ABC Tower. *See, e.g.*, Jan. 7 Tr. at 214:24–216:8. It further instructed that once the Side A Tower had been depleted, parties could file another motion and demonstrate cause at a hearing. *See, e.g.*, *id.* The Side A Tower has not been depleted, but the Movants and the Joinders contend that as a result of the May 2026 Order, the proceeds of the ABC Tower may be spent on the Insureds' defense. Thus, if the Movants are correct that the May 2026 Order nevertheless

[9] *See also* James Status Report ¶ 1; Appellant Insurers' Status Report ¶ 1.

allows the Insureds to access the ABC Tower, then the May 2026 Order effectively abrogated or otherwise overruled the Order Denying Stay Relief.

30. However, the Order Denying Stay Relief is on appeal. The filing of a notice of appeal is an event of "jurisdictional significance." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *see In re Transtexas Gas Corp.*, 303 F.3d 571, 578–79 (5th Cir. 2002) (applying rule to bankruptcy cases). It divests a bankruptcy court of jurisdiction to act with respect to matters involved in the appeal. *Griggs*, 459 U.S. at 58. A bankruptcy court retains jurisdiction only to address elements of a bankruptcy case that are not the subject of that appeal. *See In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 727 (5th Cir. 1991). A bankruptcy court may continue to address matters "indirectly implicated in the appeal" only if doing so would not undermine the appeal process. *In re Scopac*, 624 F.3d 274, 280 (5th Cir. 2010). "[O]nce an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process." *Id.* (citation omitted).

31. This rule reflects the Fifth Circuit's "preference that either we or the district court have exclusive jurisdiction over a given case at any given time: 'For obvious reasons, it makes little sense for two different courts to have the power to act on the same judgment at the same time, with the attendant risk that they will reach inconsistent conclusions and thus result in confusion and in a waste of judicial resources.'" *Winchester v. U.S. Attorney for S. Dist. of Tex.*, 68 F.3d 947, 949 (5th Cir. 1995) (citation omitted); *see also Scopac*, 624 F.3d at 280. Thus, once an order is appealed, a bankruptcy court cannot vacate that order but instead may only act in furtherance of it. *See Henry v. Indep. Am. Sav. Ass'n*, 857 F.2d 995, 997–98 (5th Cir. 1988) (refusing to give effect to an order vacating a judgment that was subject to a pending appeal); *Avoyelles Sportsmen's*

*League, Inc. v. Marsh*, 715 F.2d 897, 928 (5th Cir. 1983) (holding that the filing of an appeal "divests [the district] court of jurisdiction to act on the matters involved in the appeal, except to aid the appeal, correct clerical errors, or enforce its judgment so long as the judgment has not been stayed or superseded").

32. The Movants and the Joinders readily acknowledge that the May 2026 Order is at odds with the Order Denying Stay Relief. *See, e.g.*, Motion ¶ 26 ("This Court's *May 29, 2026 Order* (ECF No. 2845) modified the January 7, 2026 Order."); *cf. Lopez Dominguez v. Gulf Coast Marine & Assocs., Inc.*, 607 F.3d 1066, 1073 (5th Cir. 2010) ("We have previously held that when a notice of appeal transfers jurisdiction to this Court, district courts lose the ability to vacate or amend their orders that have been appealed."). The Appellants have expressly told the District Court that "[i]f [this Court] grants the Excess ABC Insurers' Motion and clarifies that the May 29 Comfort Order authorizes payments under the Excess ABC Policies, then this Appeal effectively will be resolved." Joint Appellants' Status Report ¶ 5. To get around this obvious problem, the Movants and the Joinders resort to (1) mischaracterizing the scope of the jurisdictional divestiture effected by the Appeal, and (2) labeling any questions of the Court's jurisdiction as a collateral attack. Neither position is availing.

33. The Appellants' decision to appeal only one aspect of the Order Denying Stay Relief is not dispositive under the Fifth Circuit's functional test. "[O]nce an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, *although not themselves expressly on appeal*, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process." *Scopac*, 624 F.3d at 280 (citation omitted) (emphasis added). And as the Appellants readily admit, under their interpretation of the May 2026 Order, the Appeal is moot. Relief that would "resolve" the Appeal by rendering it ineffective is the definition

of relief that "effectively circumvent[s] the appeal process." *See id.*; *see also In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 536–38 (5th Cir. 2024) (vacating an order that would "nullify the appeal and render [the appellate court] unable to grant relief" as it would therefore impermissibly "alter the status of the case as it rests before the Court of Appeals" (citation omitted)). Put simply, if the May 2026 Order provided the relief the Movants and the Joinders say it does, the Court lacked jurisdiction to grant it.

34. Moreover, "[o]nce jurisdiction passes to the court of appeals, the district court generally lacks power to act with respect to matters encompassed within the appeal, and **actions taken by the district court in violation of this principle are null and void**." *United States v. Willis*, 76 F.4th 467, 473 (5th Cir. 2023) (citation omitted) (emphasis added). And "*any* judgment may be collaterally attacked if it is void for lack of jurisdiction." *Jacuzzi v. Pimienta*, 762 F.3d 419, 420 (5th Cir. 2014). The May 2026 Order therefore cannot be rescued by simply labeling any questions regarding the Court's jurisdiction as an improper collateral attack.

## B. The Plain Language of the May 2026 Order Is at Odds with the Movants' Interpretation

35. The Movants' reading of the May 2026 Order is contradicted by the order's own text. *Cf. In re PFO Glob., Inc.*, 26 F.4th 245, 255 (5th Cir. 2022) (demonstrating that courts must "read [an] order as written" without adding to or subtracting from the text). The May 29 Order authorizes "the Primary Insurer"—defined as Berkshire Hathaway Specialty Insurance Company—and "all related Side A Insurers" to make payments. *See* May 2026 Order ¶ 1. It does not mention the Excess ABC Insurers, the Excess ABC Policies, or the nine excess layers comprising the $90 million in excess coverage.

36. The order references the "ABC Policy"—singular—defined as Policy No. 47-EMC-310190-06, the primary layer issued by Berkshire. *Id.* It does not reference the Excess ABC

Policies, which are separate contracts issued by separate insurers. Nor does the May 2026 Order expressly reference every insurer listed on Exhibit C to the Insurance Motion. The stay modification is expressly limited "to permit the Primary Insurer and Side A Insurers to pay and/or advance Defense Costs consistent with their obligations under the ABC Policy." *Id.* ¶ 2. The "Primary Insurer" is Berkshire. The "Side A Insurers" are the insurers in the Side A Tower—not the excess layers of the ABC Tower. The Excess ABC Insurers are neither.

37. The May 2026 Order was entered "[i]n consideration of the Court's orders at ECF Nos. 181 and 195 in Adv. No. 25-03803." *Id.* at 1. Those orders dealt with case management in the First Brands Adversary Proceeding. They had nothing to do with the insurance tower or stay relief for excess insurers. There is nothing in the May 2026 Order or the circumstances surrounding its entry that indicates the Court intended to completely reverse itself and open the floodgates with respect to the ABC Tower.[10]

## II. The Movants Have Not Met Their Burden of Demonstrating Cause

38. The Movants (and the Joinders) bear the burden of demonstrating "cause" to lift the automatic stay. *See* Jan. 7 Tr. at 212:13–20. Courts must determine cause on a "case by case basis." *See id.* at 213:7–13; *see also In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998). And this Court was unequivocal about what, at a minimum, a party needed to show to demonstrate cause with respect to the ABC Tower. The reasoning behind the Order Denying Stay Relief remains equally true today, if not more so.

39. This Court was clear when it entered the Order Denying Stay Relief: while the Side A Tower remains available to the Insureds, there is not cause to lift the stay to allow them to pursue

[10] For the avoidance of doubt, the Trustee specifically joins in and adopts as if fully set forth herein the arguments made in the UCC Objection ¶¶ 16 and the Katsumi Objection ¶¶ 8–9.

the proceeds of the ABC Tower. *See, e.g.*, Jan. 7 Tr. at 213:7–216:20. The Side A Tower "goes purely to [Ds and Os]. And that's what [they] look to." *Id.* at 210:16–211:8. And although parties characterized the Debtors' interest in the proceeds of the ABC Tower as "speculative," that did not prevent such proceeds from becoming part of the estate. *Id.* at 211:9–212:3. Nor did the (allegedly) speculative nature of the Debtors' interest equate to cause. *Id.* at 213:13–15. Rather, the Court's rhetorical question to the Insureds was, "What's the harm to using $100 million under AIG before you come back and ask to use the Berkshire Hathaway in which the estate has an interest?" *Id.* at 213:15–17. The answer: "No evidence of any harm to anybody." *Id.* at 213:17–18. There was no evidence that the Insureds could not use the Side A Tower or that it had been exhausted, and the Court therefore denied stay relief. *See id.* at 213:15–214:17, 216:16–20. The Court left the Insureds with an instruction regarding the Side A Tower—"**go there first**." *Id.* 214:24–25 (emphasis added).

40. The Motion and the Joinders do not challenge this directive. As they are keen to point out, the Appellants did not appeal the Court's finding that cause would not exist until the Side A Tower was no longer available. *See, e.g.*, E. James Joinder at 3; Side A Insurers Joinder at 3–4; P. James Response ¶¶ 3, 11. But this finding remains dispositive because, as described below, the Court's conditions have not been satisfied. *See, e.g.*, *McConathy v. Found. Energy Fund IV-A, L.P.*, 111 F.4th 574, 584–85 (5th Cir. 2024) (tying a bankruptcy court's ability to revisit an earlier denial of stay relief to changed circumstances); *In re Johns-Manville Corp.*, 40 B.R. 219, 228 (S.D.N.Y. 1984) (holding that "absent a showing of changed circumstances or a change in the scope of relief requested," a party may not re-argue an issue determined in connection with a previous request for stay relief).

41. The Movants and the Joinders have not supported the renewed request for stay relief with the evidence the Court required. The Movants and the Joinders instead attempt to justify their premature return to this Court by pointing to the Insureds' growing fees and the approaching trial date in the Criminal Case. These allegations do not satisfy the simple binary created by the Court: is the Side A Tower no longer paying the Insureds' costs? *See* Jan. 7 Tr. at 216:4–8 ("I still think what I've set up is a stopping point where one can ask the question. Right? Like what's going on with the AIG policy, has it been depleted one way or the other. And then we can see where we are."); *see also id.* at 214:24 ("I think you've got to go there first."). And to the extent the Insureds' anxiety is rising as their costs increase and as trial nears, they should take heart in the Court's offer of a "short hearing" with evidence that the money has run out. *See id.* at 213:23–214:18.

42. The Movants try to flip the burden or circumvent it entirely. First, they argue that no one "identified . . . any cognizable harm" to the estate from allowing payments. Motion ¶ 50. But the estate does not have to prove harm to keep the stay in place. The party requesting relief must establish cause. *See* Jan. 7 Tr. at 212:13–20. In any event, the estates' harm is now concrete: every dollar paid under the ABC Tower (including Berkshire's initial layer) permanently reduces an estate asset that remains available to satisfy the estate's claims. *Cf. id.* at 213:20–21. Second, they note that "under the Bankruptcy Provision in the Primary ABC Policy, the Debtors are contractually required to not 'oppose or object to any efforts by the Insurer or any Insureds to obtain relief from [the automatic] stay.'" Motion ¶ 33. That may be true, but the Trustee did not execute the Primary ABC Policy or agree not to contest stay relief. *See In re Powers*, 170 B.R. 480, 483 (Bankr. D. Mass. 1994) ("A waiver [of the automatic stay] by the debtor cannot bind third parties."); *see also In re Graves*, 212 B.R. 692, 694–95 (B.A.P. 1st Cir. 1997) (finding *Powers*'s rationale "equally applicable" in the context of a court-approved stay-relief stipulation and a

chapter 7 trustee); *In re Pease*, 195 B.R. 431, 433–34 (Bankr. D. Neb. 1996) (reasoning that the Bankruptcy Code invalidates prepetition provisions purporting to waive the automatic stay).

43. Ultimately, the Court's January 7 ruling was correct, and its reasoning applies with equal force today. The Side A Tower is not exhausted, Side A advancements have not stopped, and no party has offered evidence otherwise. The Movants and Joinders have not shown cause, and the alternative request for stay relief should be denied.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order denying the Motion and Joinders, and grant the Trustee all relief that is equitable and just.

Houston, Texas
October 15, 2026

Respectfully submitted,

By: */s/ Joshua W. Wolfshohl*

**PORTER HEDGES LLP**
Joshua W. Wolfshohl (TX 24038592)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
Jordan Stevens (TX 24106467)
Grecia V. Sarda (TX 24132092)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Fax: (713) 226-6248
jwolfshohl@porterhedges.com
eenglish@porterhedges.com
sjohnson@porterhedges.com
jstevens@porterhedges.com
gsarda@porterhedges.com

**PROPOSED COUNSEL FOR THE CHAPTER 7 TRUSTEE, EVA S. ENGELHART**

**CERTIFICATE OF SERVICE**

I certify that on October 15, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl