**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| FIRST BRANDS GROUP, *et al.*, | : | Case No. 25-90399 (CML) |
| Debtors.[1] | : | (Jointly Administered) |

**SUR-REPLY OF PATRICK JAMES IN FURTHER SUPPORT OF RESPONSE TO INSURERS' MOTION AND IN RESPONSE TO OBJECTIONS FILED BY CHAPTER 7 TRUSTEE, KATSUMI, AND EVOLUTION**

Patrick James, by and through his undersigned counsel, files this Sur-Reply in further support of Mr. James' Response To Insurers' Motion[2] [Dkt. 3848] and to address arguments put forth in the Chapter 7 Trustee's Objection [Dkt. 3904], Katsumi Servicing, LLC's Objection [Dkt. 3876], and Evolution's Joinder [Dkt. 3893].

Mr. James respectfully requests that the Insurers' Motion be granted and that the Proposed Clarifying Order submitted therewith be entered at the Court's first convenience. The May 29 Order is clear and requires no clarification; timing is critically important given the amount of outstanding fees in arrears; and the upcoming deadlines in the criminal trial (as reflected in the Schedule Order attached hereto as **Exhibit A**) (the "**New York Scheduling Order**")) require significant work in the coming weeks leading up to the February 2027 trial.

[1] A complete list of the Debtors may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands (collectively, the affiliated debtors and debtors in possession are referred to herein as "**First Brands**" or the "**Debtors**" or the "**Company**").

[2] Capitalized terms not defined herein have the meanings ascribed to them in the Response Of Patrick James To Motion Of Excess ABC Insurers For Entry Of An Order (I) Clarifying That May 29, 2026 Order Authorizes Payments By Excess ABC Insurers, Or Alternatively (II) Modifying Automatic Stay To Allow Excess ABC Insurers To Make Payments, Including Advancement Of Defense Costs, Of Insured Persons [Dkt. 3848] (the "**Response To Insurers' Motion**").

### A. CHAPTER 7 TRUSTEE OBJECTION

1. The Chapter 7 Trustee repeats the same arguments made in the dissolved-Creditors' Committee's Objection. While Mr. James addressed them fully in his Response To Insurers' Motion, a few points bear emphasizing.

2. ***First***, like the Creditors' Committee, the Chapter 7 Trustee offers no plausible, alternative reading of the May 29 Order that warrants departing from its plain text. All the objectors contend the ABC Policies are not available because they include entity coverage and fall outside the January 7 Order. And they acknowledge the May 29 Order applies to a ***Primary*** ABC Insurer (Berkshire), but contend it does not apply to ***Excess*** ABC Insurers. It makes no sense that the May 29 Order would apply to the primary—but not excess—insurers in the ABC tower because the distinction between these two types of insurers with respect to the ABC Policies is inter se. The insureds have the same coverage regardless under the ABC Policies.

3. ***Second,*** the Appeals from the Court's January 7 Order concerning whether the policies are estate property do not divest the Court of jurisdiction to review and clarify the intended meaning of its subsequent May 29 Order. No party objected to the May 29 Order at the time or appealed from it, including the former Debtors (who did not oppose the Insurers' Motion), the former Creditors' Committee, Katsumi, and Evolution. They cannot collaterally challenge the May 29 Order now.

4. ***Third,*** assuming arguendo the ABC Policies are estate property, the ABC Policies' payment provisions give the directors and officers priority over the estates. That dictates the same result regardless of the outcome of the Appeals. The directors and officers should have access to the ABC policies. See In re SVB Fin. Grp., 650 B.R. 790, 800 (Bankr. S.D.N.Y. 2023) ("Courts have routinely found that where such priority of payments provisions are present, ***the insureds are entitled to access the proceeds, notwithstanding the fact that the debtor also has an interest in the proceeds of the policy***.") (emphasis added).

5. ***Fourth***, the Chapter 7 Trustee relies on an incorrect factual premise, i.e., that "[t]he Side A Tower has not been exhausted. It is still paying Insured's defense costs, with at least $55 million remaining." The Insurers' maintain as much as $60 million has been exhausted.[3] Additionally, attorneys and vendors assisting in Patrick James' defense have incurred millions of dollars in fees and expenses that remain unpaid. There is a need for immediate access to the ABC Policies.

### B. Katsumi & Evolution Objections

6. Katsumi and Evolution lack standing to appear and be heard with respect to the Insurers' Motion given the cases' conversion to chapter 7. Section 1109(b) of the Bankruptcy Code, applicable in chapter 11 cases, no longer applies. And in a chapter 7 case, those qualifying as "parties-in-interest" narrows considerably and is limited strictly to parties that can claim a direct pecuniary interest in the Insurance Policies, i.e., the estates. See, e.g., Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 9 (2000) (section 1109 "is by its terms inapplicable here, since the petitioner's attempt to use § 506(c) came after [conversion to chapter 7]"); In re Richardson Foods, Inc., 667 B.R. 500, 521-522 (Bankr. S.D.N.Y. 2025) (movants were not parties in interest because they lacked a "direct financial stake in the outcome;" "[T]he broadened definition of 'party in interest' narrowly applies to Chapter 11—not Chapter 7—cases .... [T]he expansive definition is meant to enable minority creditors to intervene in Chapter 11 cases to prevent 'dominant interests' from 'controlling the restructuring process. This concern is not as prevalent in Chapter 7;") (citing Truck Ins. Exch., Inc. v. Kaiser Gypsum Co., 602 U.S. 268, 281 (2024)). C.f., In re Baker Sales, Inc., 2022 WL 362908, at *3-4 (Bankr. E.D. La. Feb. 22, 2022)

[3] See Insurers' Mot. ¶¶ 48-50 ("As of July 16, 2026, the Insured Persons have submitted more than $43 million in legal fees for advancement under the ABC Policies and the Side A Policies. Movants understand that Berkshire and the Side A Insurers have paid approximately $21 million for legal fees and more than $20 million remains outstanding."); Side A Insurers' Joinder p. 7 ("Absent clarification or modification of the May Order, the Insured Persons have a concrete belief that they will suffer irreparable harm if the ABC insurers will be precluded from paying towards the more than $60 million in legal fees that continue to mount as the criminal, adversary, and related proceedings and investigations press on.").

("[T]here is no clear consensus on whether a creditor has standing to object to claims of other creditors in a Chapter 7 case").

7. Moreover, contrary to the Katsumi and Evolution objections, the record already contains ample "evidence" to justify lifting the automatic stay:

- the policies and applicable law make clear the directors and officers have payment priority over the estates' interest—even if, for the sake of argument, the policies are estate property;

- the New York Scheduling Order shows funds are immediately required to prepare for a quickly-approaching criminal trial;

- the Insurers' pleadings affirmatively represent that up to $60 million has been demanded against the policies; and

- as noted, attorneys and other vendors preparing for Patrick James' criminal trial have not been reimbursed for millions of dollars in fees, and those amounts are increasing in real time to meet immediate deadlines set by the New York Scheduling Order.

8. Finally, all the Objections should be viewed in context. From the start of these cases, the estates and Katsumi have claimed Mr. James engaged in wrongdoing.[4] Those allegations were followed by the Adversary Proceeding and then an Indictment that sought to criminalize those fraudulent transfer claims. The objectors should be precluded from seeking to block insurance coverage for the fees and expenses of professionals defending the very claims they initiated. If that is their litigation strategy, it should not be countenanced.

---

[4] See Nov. 6 Hr'g Tr. at 102:10-103:6 ("The causes of action related to whether they're actual receivables, meaning there's money in the hands of the Debtors that we have to get, whether there's been defrauding and our proceeds were just stolen property from us, the money went somewhere else. We have rights (indiscernible) recover those against third parties."); Dec. 30 Hr'g Tr. at 39:20-40:6 ("[T]he first day declaration was when the receivables counterparties first learned of allegations of potential inappropriate conduct.... [W]e believe causes of action related to that are ours"); Confirmation Hr'g Day 1 Tr. at 24:2-11 ("And we also were informed, initially, that the fraud was only double-pledging. Then we learned that it was whole-cloth fraud. And then we learned, eventually, that our client would be potentially facing up to a $1.5 billion loss. So, to say the least, Katsumi and other factors are clear victims here. Parties can try and paint a different picture, particularly by ignoring payments Katsumi made to First Brands, but that does not change this history and the facts.").

### C. Conclusion

9. Accordingly, Mr. James respectfully requests that the Insurers' Motion be granted, that the Court enter the Proposed Clarifying Order, and that the Court grant such further, other relief as the Court considers necessary.

Date: October 16, 2026
Houston, Texas

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

*/s/ Cameron M. Kelly*
Cameron M. Kelly
TX SBN: 24120936
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: (713) 221-7000
cameronkelly@quinnemanuel.com

James C. Tecce (admitted pro hac vice)
Grace Sullivan (admitted pro hac vice)
295 5th Avenue
New York, NY 10016
Telephone: (212) 849-7000

-and-

**DEBEVOISE & PLIMPTON LLP**
Erica S. Weisgerber (admitted pro hac vice)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000

*Attorneys for Patrick James*

**CERTIFICATE OF SERVICE**

I, Cameron Kelly, hereby certify that a copy of the foregoing Motion was filed on the 16th day of October, 2026, with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

*/s/ Cameron M. Kelly*
Cameron M. Kelly