**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 7** |
| | § | **(Previously Chapter 11)** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**SUMMARY COVERSHEET TO FOURTH INTERIM AND FINAL FEE APPLICATION OF WEIL, GOTSHAL & MANGES LLP, ATTORNEYS FOR THE DEBTORS, FOR (I) INTERIM COMPENSATION PERIOD FROM JULY 1, 2026 THROUGH AND INCLUDING AUGUST 31, 2026 AND (II) FINAL COMPENSATION PERIOD FROM SEPTEMBER 29, 2025 THROUGH AND INCLUDING AUGUST 31, 2026**

| | | |
|---|---|---|
| **Name of Applicant:** | Weil, Gotshal & Manges LLP | |
| **Applicant's Role in Case:** | Attorneys for Debtors | |
| **Docket No. of Employment Order(s):** | Docket No. 894 | |
| **Interim Application (x) No. 4**<br>**Final Application (x)** | Fourth Interim and Final Fee Application | |
| | **Beginning Date** | **End of Period** |
| **Time period covered by this Application for which interim compensation has not previously been awarded:** | July 1, 2026 | August 31, 2026 |
| **Were the services provided necessary to the administration of or beneficial at the time rendered toward the completion of the case? (Y)** | | |
| **Were the services performed in a reasonable amount of time commensurate with the complexity, importance and nature of the issues addressed? (Y)** | | |

[1] A complete list of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The service address for the chapter 7 estates of Viceroy Private Capital, LLC, First Brands Group Holdings, LLC ("**FBGH**"), and FBGH's Debtor subsidiaries is Eva Engelhart, Chapter 7 Trustee c/o Porter Hedges LLP, Joshua W. Wolfshohl, 1000 Main St., 36th Floor, Houston, Texas 77002. The service address for the chapter 7 estates of Global Assets LLC, Global Lease Assets Holdings, LLC, Carnaby Capital Holdings, LLC, Broad Street Financial Holdings, LLC, Broad Street Financial, LLC, Carnaby Inventory II, LLC, Carnaby Inventory Holdings II, LLC, Carnaby Inventory III, LLC, Carnaby Inventory Holdings III, LLC, and Global Assets GmbH is Ronald J. Sommers, Chapter 7 Trustee c/o Jones Murray LLP, Erin E. Jones, 602 Sawyer, Suite 400 Houston, Texas 77007. The service address for the chapter 7 estates of Carnaby Capital, LLC, Eagle Casting Holdings, LLC, Carnaby IV, LLC, Carnaby IV Holdings, LLC, Carnaby FA, LLC, and Carnaby FA Holdings LLC is Catherine Stone Curtis, P.O. BOX 720788, McAllen, Texas 78504.

| | | |
|---|---|---|
| **Is the requested compensation reasonable based on the customary compensation charged by comparably skilled practitioners in other non-bankruptcy cases? (Y)** | | |
| **Do expense reimbursements represent actual and necessary expenses incurred? (Y)** | | |
| **Compensation Breakdown for Time Period Covered by this Application** | | |
| | **Fourth Interim Compensation Period** | **Final Compensation Period** |
| **Total professional fees requested in this Application:** | $16,801,475.25 | $161,013,341.75 |
| **Total professional hours covered by this Application:** | 10,507.20 | 103,588.50 |
| **Average hourly rate for professionals:** | $1,599.04 | $1,554.36 |
| **Total paraprofessional fees requested in this Application:** | $458,032.00 | $2,273,314.50 |
| **Total paraprofessional hours covered by this Application:** | 879.10 | 4,400.10 |
| **Average hourly rate for paraprofessionals:** | $521.02 | $516.65 |
| **Total fees requested in this Application:** | $17,259,507.25 | $163,286,656.25 |
| **Total expense reimbursements requested in this Application:** | $266,610.38[2] | $1,618,428.39 |
| **Total fees and expenses requested in this Application:** | $17,526,117.63 | $164,905,084.64 |
| **Total fees and expenses awarded in all prior Applications:** | $147,378,967.01 | $147,378,967.01 |
| **Plan Status:** On June 12, 2026, the Court entered orders (i) conditionally approving the Disclosure Statement and authorizing the Debtors to solicit votes on the Plan (Docket No. 2990) and (ii) denying the U.S. Trustee's motion to convert or dismiss the chapter 11 cases (Docket No. 2989). On August 24, 2026, the Court denied confirmation of the Plan (Docket No. 3710) and ordered the Debtors' chapter 11 cases be converted to cases under chapter 7 of the Bankruptcy Code. On September 1, 2026, the Court entered an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code (Docket No. 3748). | | |
| **Primary Benefits:** During the Compensation Periods, Weil guided the Debtors through administration of the chapter 11 cases by, among other things: (i) obtaining first- and second-day relief necessary to stabilize the Debtors' business; (ii) securing $1.1 billion of debtor-in-possession financing; (iii) reconstituting the Debtors' leadership and enacting corporate governance changes; (iv) investigating potential estate claims and commencing adversary proceedings against multiple counterparties, seeking to recover potential fraudulent transfers and preferential payments; (v) securing OEM funding to fund operations and bridge to sale closings; (vi) negotiating multiple going-concern sales for certain of the Debtors' businesses as well as additional asset sales; (vii) mediating with stakeholders on a global case resolution; (viii) negotiating, drafting, and filing the Plan and Disclosure Statement, obtaining conditional approval of the Disclosure Statement, and prosecuting confirmation of the Plan through a contested, multi-day confirmation hearing; (ix) obtaining consensual modifications of the Debtors' retiree benefit obligations under section 1114 of the Bankruptcy Code; (x) navigating issues regarding the Debtors' rest-of-world businesses across twenty-four (24) jurisdictions; and (xi) negotiating the Conversion Order and coordinating an orderly transition of the administration of the Debtors' estates to the chapter 7 trustees. | | |

[2] Weil recently received a refund from a vendor in the amount of $44.95 for an expense that was previously billed to the Debtors on the May Fee Statement. Accordingly, Weil provided the Debtors with a credit of the expenses sought by the same amount on the August Fee Statement.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 7** |
| | § | **(Previously Chapter 11)** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**FOURTH INTERIM AND FINAL FEE**
**APPLICATION OF WEIL, GOTSHAL & MANGES LLP,**
**ATTORNEYS FOR THE DEBTORS, FOR (I) INTERIM**
**COMPENSATION PERIOD FROM JULY 1, 2026 THROUGH AND**
**INCLUDING AUGUST 31, 2026 AND (II) FINAL COMPENSATION PERIOD**
**FROM SEPTEMBER 29, 2025 THROUGH AND INCLUDING AUGUST 31, 2026**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Weil, Gotshal & Manges LLP ("**Weil**"), as attorneys for the chapter 11 debtors in the above-captioned cases (collectively, the "**Debtors**" and, together with their non-Debtor

[1] A complete list of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The service address for the chapter 7 estates of Viceroy Private Capital, LLC, First Brands Group Holdings, LLC ("**FBGH**"), and FBGH's Debtor subsidiaries is Eva Engelhart, Chapter 7 Trustee c/o Porter Hedges LLP, Joshua W. Wolfshohl, 1000 Main St., 36th Floor, Houston, Texas 77002. The service address for the chapter 7 estates of Global Assets LLC, Global Lease Assets Holdings, LLC, Carnaby Capital Holdings, LLC, Broad Street Financial Holdings, LLC, Broad Street Financial, LLC, Carnaby Inventory II, LLC, Carnaby Inventory Holdings II, LLC, Carnaby Inventory III, LLC, Carnaby Inventory Holdings III, LLC, and Global Assets GmbH is Ronald J. Sommers, Chapter 7 Trustee c/o Jones Murray LLP, Erin E. Jones, 602 Sawyer, Suite 400 Houston, Texas 77007. The service address for the chapter 7 estates of Carnaby Capital, LLC, Eagle Casting Holdings, LLC, Carnaby IV, LLC, Carnaby IV Holdings, LLC, Carnaby FA, LLC, and Carnaby FA Holdings LLC is Catherine Stone Curtis, P.O. BOX 720788, McAllen, Texas 78504.

subsidiaries, the "**Company**") during the Compensation Periods (as defined below), hereby files its fourth interim and final application (this "**Application**") for (i) allowance of compensation for professional services performed by Weil during the period commencing July 1, 2026 through and including August 31, 2026 (the "**Fourth Interim Compensation Period**") in the amount of $17,259,507.25, and for reimbursement of its actual and necessary expenses incurred during the Fourth Interim Compensation Period in the amount of $266,610.38, and (ii) final allowance of compensation for professional services performed by Weil during the period commencing September 29, 2025 through and including August 31, 2026 (the "**Final Compensation Period**" and, together with the Fourth Interim Compensation Period, the "**Compensation Periods**") in the amount of $163,286,656.25 and for reimbursement of its actual and necessary expenses incurred during the Final Compensation Period in the amount of $1,618,428.39. Weil respectfully represents as follows:

## Preliminary Statement[2]

1. During the Compensation Periods, Weil's professionals guided the Debtors through countless challenges, and Weil's efforts preserved and maximized the value of the Debtors' estates for the benefit of all stakeholders. Specifically, over the course of the Compensation Periods, Weil's professionals guided the Debtors through the chapter 11 process, including by, among other things:

a) securing significant financing and funding from various parties to fund the Debtors' operations and these chapter 11 cases, including by:

i. securing $1.1 billion of new money debtor-in-possession financing,

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration (as defined herein), the Plan, the Disclosure Statement, or the Conversion Order (each as defined herein), as applicable.

ii. negotiating adequate protection packages with the Debtors' various prepetition secured lenders, and

iii. obtaining funding from certain of the Debtors' OEM customers to support the sale process, continued operations, and administration of the chapter 11 cases (including payment of professional fees), and to cover ongoing case costs to prevent a complete shutdown of the Debtors' North American business during the chapter 11 cases;

b) launching and managing a comprehensive sale process for substantially all of the Debtors' assets and developing and implementing wind-down procedures for the Debtors' remaining business units, including by:

i. negotiating and consummating going-concern sales of the Debtors' Walbro,[3] TMD,[4] and Horizon North America[5] business, which saved approximately 2,000 jobs,

ii. obtaining Court approval of the sale of intellectual property assets to PGI Northstar, LLC,

iii. developing liquidation and wind-down procedures for certain of the Debtors' remaining business units, and

iv. coordinating numerous additional asset sales pursuant to the Wind Down Order;

c) advising the Debtors in connection with the efforts to maximize value for the estates and creditors by monetizing available assets, including by:

---

[3] "**Walbro**" means the business operated by the Debtors consisting of the development, design, manufacture, sourcing, marketing, distribution, and sale of products and services under or primarily associated with (a) small engine fuel systems, carburetors, fuel pumps, ignition systems, electronic fuel injection, plastic injection molding and related components across power equipment, powersports, marine, and specialty engines and (b) operations under brand names associated with Walbro or Carter Carburetor, in each case, at, from, or through certain facilities operated by the Debtors.

[4] "**TMD**" means the business commonly known as Toledo Molding and Die, as operated, directly or indirectly, by the applicable Sellers or their respective Affiliates prior to the Closing at, from or through any of the Specified Facilities (and no other locations), consisting of the following business segments of the Sellers (including divisions, brands and operations), together with all assets, properties, rights and interests used in the business operations at the Specified Facilities, and all Liabilities arising out of or relating thereto, which consists of the development, design, manufacture, sourcing, marketing, distribution and sale of products and services primarily associated with (i) integrated, engineered plastics solutions in automotive interiors for injection molded auto and fluid management components, HVAC, fluid reservoirs, air induction and structural plastics, components and assemblies and (ii) the TMD brand name.

[5] "**Horizon North America**" means the Debtors' "Horizon North America" business, consisting of the development, design, manufacture, sourcing, marketing, distribution and sale of towing, hitching, trailering, jacks and couplers, and cargo management in North America and China (excluding the business line and brand names associated with Horizon Europe, Westfalia, and Witter Towbar) under the following brand names: Horizon, REESE, Tekonsha, DrawTite, Bargman, Fulton and Bulldog.

i. reconciling prepetition accounts receivable and negotiating and developing procedures with factoring counterparties to release unencumbered funds,

ii. defending the adversary proceeding filed by Evolution Credit Opportunity Master Fund II-B, L.P. ("**Evolution**") concerning the Debtors' non-factored receivables, obtaining partial summary judgment that Evolution did not hold a perfected security interest in certain receivables, and opposing Evolution's motion for leave to appeal such ruling, and

iii. negotiating and documenting a settlement resolving Evolution's motion to convert the chapter 11 cases of certain SPV Debtors to chapter 7;

d) engaging in extensive negotiations with the Ad Hoc Group, the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"), the buyers of the Debtors' businesses, the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**"), the Court-appointed examiner (the "**Examiner**"), the SPV lenders, landlords, vendors, and the OEM customers, among others, regarding numerous key issues in the Debtors' chapter 11 cases;

e) advising and representing the Debtors in numerous high-stakes adversary proceedings, contested matters, and investigations, including by:

i. launching and progressing a wide-ranging investigation into potential estate claims and causes of action,

ii. commencing and prosecuting the adversary proceeding against the Debtors' founder and former CEO, Patrick James, and affiliated parties (Adv. Pro. No. 25-03803) (the "**James Adversary Proceeding**") to recover a significant amount of misappropriated funds, including obtaining a temporary restraining order and litigating preliminary injunction proceedings, and obtaining a stay of the James Adversary Proceeding in light of related criminal proceedings against the Debtors' former executives,

iii. commencing and prosecuting an adversary proceeding against numerous defendants, including Onset Financial, Inc. ("**Onset**") and a former executive of the Debtors (Adv. Pro. No. 26-03005) (the "**Onset Adversary Proceeding**"), seeking to avoid billions of dollars of preferential payments and fraudulent transfers, among other claims,

iv. defending three (3) putative class action adversary proceedings alleging violations of the WARN Act and state law equivalents, including filing motions to dismiss,

v. cooperating with the Examiner's investigation, including coordinating extensive document productions, facilitating access to witnesses, and supporting the Examiner's report-preparation process, and

vi. cooperating with government investigations, including coordinating document productions to the Department of Justice and the Securities and Exchange Commission;

f) negotiating and prosecuting confirmation of a value-maximizing chapter 11 plan supported by the Ad Hoc Group, the ABL Lenders, and the Creditors' Committee, including by:

i. participating in a months'-long mediation process overseen by the Honorable Judge Marvin Isgur, which resulted in a settlement among the Ad Hoc Group and Creditors' Committee on the orderly wind down of the Debtors' estates through a chapter 11 plan (the "**Plan Settlement**"),

ii. negotiating, drafting, and filing the *Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3448) (as amended, modified, or supplemented, the "**Plan**") and the *Disclosure Statement for Joint Chapter 11 Plan of First Brands Group, LLC and Certain Affiliated Debtors* (Docket No. 3020) (as amended, modified, or supplemented, the "**Disclosure Statement**"), documenting the Plan Settlement,

iii. obtaining conditional approval of the Disclosure Statement and solicitation procedures (Docket No. 2990) and commencing solicitation of votes on the Plan,

iv. defeating various objections to conditional approval of the Disclosure Statement, as well as the U.S. Trustee's motion to convert or dismiss the chapter 11 cases,

v. negotiating, drafting, and filing the Plan Supplement, including the Litigation Trust Agreement, the DIP Collateral Trust Agreement, and the ABL Collateral Trust Agreement, as well as the proposed Confirmation Order,

vi. negotiating and finalizing an agreed confirmation budget and agreed wind-down budget funded by the Debtors' key stakeholders,

vii. responding to extensive Plan-related discovery served by numerous parties in interest, including defending multiple depositions of the Debtors' fact and expert witnesses and litigating emergency motions to compel,

viii. conducting legal research in connection with, drafting, and filing of the Confirmation Brief and the Confirmation Reply (each as defined herein) in response to numerous objections to confirmation,

ix. consensually resolving many such objections in advance of the Combined Hearing,

x. prosecuting the Plan at the Combined Hearing, and

xi. following the Court's ruling denying confirmation of the Plan, negotiating and obtaining entry of the Conversion Order (as defined herein) and coordinating the orderly transition of the administration of the Debtors' estates to the chapter 7 trustee;

g) advising the Debtors and developing a strategy in connection with the Debtors' various benefits plans, including by:

i. obtaining Court approval of the appointment of a committee of retired employees under section 1114 of the Bankruptcy Code (the "**Retiree Committee**") and negotiating and obtaining Court approval of consensual modifications of the Debtors' retiree benefit arrangements,

ii. negotiating and documenting a settlement with the Pension Benefit Guaranty Corporation ("**PBGC**") regarding the termination of certain of the Debtors' pension plans, and

iii. addressing regulatory issues raised by the PBGC and responding to inquiries from the Department of Labor;

h) administering and progressing the Debtors' chapter 11 cases, including by:

i. preparing, filing, and obtaining approval of first-day motions that enabled the Debtors to smoothly transition into chapter 11 without interrupting business continuity, including authority to pay certain outstanding obligations owed to, among others, employees, customers, and vendors,

ii. reconstituting the Debtors' leadership and enacting related corporate governance changes,

iii. negotiating agreements with customers and vendors to stabilize the Debtors' business operations, and

iv. resolving numerous asserted administrative expense claims through negotiated stipulations, thereby avoiding the cost of litigating motions to compel payment of such claims;

i) navigating a variety of complex issues regarding the Company's rest-of-world ("**RoW**") businesses, including by:

i. engaging and coordinating with local counsel across twenty-four (24) jurisdictions to support the Company's approximately 200 RoW entities spanning nine (9) business units, including by mapping their financial and legal interdependencies with the Debtors and analyzing their funding needs to mitigate contagion risk,

ii. negotiating forbearances with, and securing incremental liquidity from, key rest-of-world lenders, including Santander (for Ultinon), UBS (for Horizon Europe (as defined herein) and FMP Australia), Crédit Agricole, and the DIP lenders, and drafting and filing a motion seeking authority for the Debtors to provide funding to the Ultinon business,

iii. replacing rest-of-world management following the departure of key personnel, appointing new independent directors at the Ultinon, Horizon Europe, and FMP Australia business units, and implementing safeguards to ensure financial and operational oversight across the rest-of-world entities,

iv. advising on the Horizon North America sale and the related Horizon Europe settlement and legal separation, including resolving asset entanglement and intercompany balances with non-Debtor subsidiaries in Europe and Australia, and supporting the marketing and sale of numerous other rest-of-world business units,

v. assisting with the management and commencement of local insolvency proceedings in various jurisdictions, including Germany, Poland, France, Romania, and China,

vi. preserving the Company's central back-office service center in Romania, which provides the majority of its services to the Debtors, including through local debtor-in-possession insolvency proceedings, to ensure the continuity of critical services to the Debtors,

vii. developing and executing a framework for the orderly wind down of the remaining non-U.S. entities across more than fifteen (15) jurisdictions to retain optionality and minimize contagion risk, and

viii. preparing a comprehensive transition memorandum and coordinating the handover of the rest-of-world wind-down workstreams to successor counsel and the chapter 7 trustee.

2. The size, speed, and contentiousness of the Debtors' chapter 11 cases rank these chapter 11 cases among the largest and most complex in history. As acknowledged by the Court, the alleged fraud committed by the Debtors' former management team left the estates in an exceedingly difficult condition upon the commencement of the chapter 11 cases.[6] The professional services performed and expenses incurred by Weil during the Compensation Periods were actual and necessary to preserve and protect the value of the Debtors' estates and minimize the costs incurred by the estates.

3. Given the extraordinary circumstances of the Debtors' chapter 11 cases, among other considerations, Weil's charges for professional services performed and expenses incurred are reasonable and appropriate under applicable standards. Weil respectfully requests that the Court grant this Application and allow, on a final basis, compensation for professional services performed and reimbursement for expenses incurred during the Fourth Interim Compensation Period and the compensation for professional services performed and for expenses incurred during the Final Compensation Period.

## Relief Requested

4. The Debtors request approval of Weil's Application. This Application has been prepared in accordance with sections 330(a) and 331 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the *Court Procedures* for Judge Christopher M. Lopez (the "**Court Procedures**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed*

[6] *Id*. at 61:25 ("Starting a case with $2 billion missing is really hard.").

*under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "**UST Fee Guidelines**" and, collectively with the Court Procedures, the "**Fee Guidelines**"), and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Docket No. 699) (the "**Interim Compensation Procedures Order**").

5. A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

## Background

6. In September 2025, First Brands Group, LLC and its Debtor affiliates each filed with the Court a voluntary case under chapter 11 of the Bankruptcy Code.

7. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of the chapter 11 cases is set forth in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions* (Docket No. 22) (the "**First Day Declaration**"), filed on September 29, 2025 and incorporated herein by reference.

8. On April 9, 2026, the Court entered an order converting the chapter 11 cases of (i) Patterson Inventory, LLC, (ii) Patterson Inventory Holdings, LLC, (iii) Starlight Inventory I, LLC, and (iv) Starlight Inventory Holdings I, LLC (collectively, the "**Converted SPV Debtors**"), to cases under chapter 7 of the Bankruptcy Code (Docket No. 2396).

9. On September 1, 2026, the Court entered an order converting the chapter 11 cases of the other Debtors to cases under chapter 7 of the Bankruptcy Code (Docket No. 3748) (the "**Conversion Order**").

## Jurisdiction and Venue

10. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core

proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Debtors' Retention of Weil**

11. On October 22, 2025, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 400) (the "**Retention Application**").

12. On December 8, 2025, the Court entered the *Order Authorizing Retention and Employment of Weil, Gotshal and Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 894) (the "**Retention Order**"), approving the Retention Application and authorizing the employment and retention of Weil as of the Petition Date. The Retention Order specifically authorized Weil to provide the following professional services to the Debtors:

a. take all necessary actions to protect and preserve the value of the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiation of disputes in which the Debtors are involved, and the preparation of objections to claims filed against the Debtors' estates;

b. prepare on behalf of the Debtors, as debtors in possession, all necessary motions, applications, answers, orders, reports and other papers in connection with the administration of the Debtors' estates;

c. take all necessary actions in connection with the investigation, review, analysis, and prosecution, on behalf of the independent Special Committee, of potential claims and causes of action that may be held by the Debtors;

d. take all necessary actions in connection with any value-maximizing transaction the Debtors may pursue, any chapter 11 plan and related disclosure statement and all related documents, and such further actions as may be required in connection with the administration of the Debtors' estates; and

e. perform all other necessary legal services in connection with the prosecution of the chapter 11 cases.

Retention Order ¶ 2.

**Summary of Professional Compensation**
**and Reimbursement of Expenses Requested**

13. Weil seeks allowance of (i) compensation for professional services performed during the Fourth Interim Compensation Period in the amount of $17,259,507.25 and for reimbursement of expenses incurred in connection with the rendition of such services in the amount of $266,610.38, and (ii) compensation for professional services rendered during the Final Compensation Period in the amount of $163,286,656.25 and for reimbursement of expenses incurred in connection with the rendition of such services in the amount of $1,618,428.39. During the Fourth Interim Compensation Period, Weil attorneys, paraprofessionals, and other non-legal staff expended a total of 11,386.30 hours in connection with the necessary services performed. During the Final Compensation Period, Weil attorneys, paraprofessionals, and other non-legal staff expended a total of 107,988.60 hours in connection with the necessary services performed. During the Fourth Interim Compensation Period, Weil voluntarily reduced the amount of fees and expenses it requested by $1,231,326.89. During the Final Compensation Period, Weil voluntarily reduced the amount of fees and expenses it requested by $5,206,487.31.

14. There is no agreement or understanding between Weil and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in the Debtors' chapter 11 cases. During the Compensation Periods, other than payment received by Weil on account of monthly fee statements in accordance with the Interim Compensation Procedures Order, Weil received no payment or promises of payment from any source for services rendered, or to be rendered, in any capacity whatsoever in connection with the matters covered by this Application.

15. As set forth in the Retention Application, prior to the commencement of the Debtors' chapter 11 cases, the Debtors paid fee advances to Weil for professional services to be

performed and expenses to be incurred in connection with its representation of the Debtors and in preparation of the Debtors seeking relief under chapter 11 (the "**Fee Advance**"). Based on a reconciliation of all charges and expenses through the date of this Application, the balance of the Fee Advance as of the date of this Application is $69.68.[7]

16. The fees charged by Weil in the Debtors' chapter 11 cases are billed in accordance with Weil's existing billing rates and procedures in effect during the Compensation Periods. The rates Weil charges for the services rendered by its professionals and paraprofessionals in the chapter 11 cases are no greater than the rates Weil charges for professional and paraprofessional services rendered in comparable bankruptcy and non-bankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy matters in a competitive national legal market.

**Supporting Documents**

17. Attached hereto as **Exhibit B** is the Certification of Sunny Singh, a partner of Weil (the "**Singh Certification**"), regarding Weil's compliance with the Fee Guidelines.

18. Attached hereto as **Exhibit C** is a schedule of all Weil attorneys and paraprofessionals who have performed services for the Debtors during the Compensation Periods, the capacities in which each individual is employed by Weil, the department in which each individual practices, the hourly billing rate charged by Weil for services performed by such individuals, the year in which each attorney was first licensed to practice law, where applicable,

[7] In addition to, and separate and apart from, the Fee Advance, Weil holds (i) a retainer from Debtor Global Assets GmbH in the amount of $50,000.00 and (ii) fee advances from (a) non-Debtor subsidiary Talleres Mecanicos Montserrat, S.A. de C.V. in the amount of $30,000.00 and (b) non-Debtor subsidiary BPI Distribution Mexico S.A. de C.V. in the amount of $30,000.00.

and the aggregate number of hours expended in this matter and fees billed in connection therewith (the "**Schedule of Professional Fees**").

19. Weil maintains computerized records of the time spent by all Weil attorneys and paraprofessionals in connection with the prosecution of the chapter 11 cases. Attached hereto as **Exhibit D** is a schedule of Weil's computerized time records billed during the Fourth Interim Compensation Period[8] using project categories hereinafter described in the format specified by the Fee Guidelines (the "**Time Records**").

20. Attached hereto as **Exhibit E** is an itemized schedule of the expenses for which Weil is seeking reimbursement and a summary specifying the categories of expenses included in the schedule and the total amount for each such expense category (the "**Expenses**").

21. Attached hereto as **Exhibit F** is a summary and comparison of the aggregate blended hourly rates billed by Weil's New York timekeepers to non-bankruptcy matters during the prior twelve-month period ending September 30, 2026, and the blended hourly rates billed to the Debtors during the Compensation Periods (the "**Blended Rate Comparison Chart**").

22. Weil discussed its rates, fees, and staffing with the Debtors at the outset of the chapter 11 cases and has continued to discuss staffing and fees with the Debtors throughout the chapter 11 cases. Attached hereto as **Exhibit G** is a budget prepared in connection with Weil's representation of the Debtors during the Fourth Interim Compensation Period (the "**Budget**").

23. Attached hereto as **Exhibit H** is a summary of Weil's staffing plan for the Fourth Interim Compensation Period. Attorneys and paraprofessionals assigned to this matter

[8] Weil's computerized time records for the first, second, and third interim periods are attached to the interim fee applications filed at Docket Nos. 1948, 2916, and 3771 and are incorporated herein by reference.

were necessary to assist with the prosecution of the Debtors' chapter 11 cases, preservation of the Debtors' assets, and other matters described herein.

24. To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Periods, but were not processed prior to the preparation of this Application, Weil reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application to the Court.

**Summary of Services Performed by**
**Weil During Fourth Interim Compensation Period**

25. During the Fourth Interim Compensation Period, Weil professionals devoted substantial resources and rendered significant professional services to, among other things, (i) preparing for and prosecuting the Combined Hearing, including responding to numerous objections to confirmation of the Plan and extensive Plan-related discovery served by objecting parties; (ii) negotiating with the Retiree Committee and the Debtors' unions and obtaining Court approval of consensual modifications of the Debtors' retiree benefit arrangements under section 1114 of the Bankruptcy Code; (iii) defending the Debtors' interests in the Evolution Adversary Proceeding I (as defined herein) and responding to the turnover demands of Evolution and the chapter 7 trustee for the Converted SPV Debtors; (iv) negotiating and obtaining Court approval of a forbearance under the Debtors' postpetition financing facility; and (v) following the Court's ruling denying confirmation of the Plan, negotiating the Conversion Order and coordinating the orderly transition of the administration of the Debtors' estates to the chapter 7 trustee. The following is a summary of the significant professional services, among others,

rendered by Weil during the Fourth Interim Compensation Period, organized in accordance with Weil's internal time-tracking system, broken down by project or task codes[9]:

a. Administrative Expense Claims (Task Code 001)
Fees: $250,586.00; Total Hours: 175.20

- Negotiated with numerous counterparties to resolve asserted administrative expense claims, including by negotiating, drafting, and entering into over a dozen stipulations providing for the allowance of administrative expense claims, thereby avoiding the cost attendant to litigating potential or filed motions to compel payment of such claims (Docket Nos. 3155, 3217, 3225, 3299, 3503, 3571, 3586, 3666, 3676, 3682, 3708, 3709, and 3742);

- Negotiated, drafted, and filed a stipulation with Longkou Haimeng Machinery Co., Ltd. ("**Longkou**") establishing a schedule for discovery and litigation with respect to Longkou's administrative expense claim application (Docket No. 3508), and reviewed, coordinated, and produced documents in response to Longkou's discovery requests in coordination with the Debtors' other advisors;

- Reviewed, analyzed, and prepared objection and response to the administrative expense claim and attendant motion filed by GLAS USA LLC (Docket No. 3345) and negotiated, drafted, and filed a stipulation extending the Debtors' deadline to respond thereto (Docket No. 3668);

- Drafted objections and responses to several pleadings seeking allowance and/or payment of administrative expense claims, negotiated extensions of the Debtors' deadlines to respond to such motions and applications, and, following the Court's ruling directing conversion of the chapter 11 cases, coordinated with administrative claimants regarding further extensions of such deadlines;

- Responded to requests, inquiries, and payment demands from claimants asserting entitlement to administrative claims and coordinated with the Debtors' other advisors to analyze invoices, proofs of claim, payment demands, and supporting documentation submitted in support of asserted administrative expense claims to identify the extent to which claims could be disputed, reduced, or eliminated;

[9] Certain services performed may overlap between, or appropriately be allocated to, more than one task code. If a task code does not appear below, then Weil did not bill significant time for that task code during the Compensation Periods.

- Coordinated with the Debtors' other advisors regarding the reconciliation and sizing of the aggregate amount of asserted administrative expense and priority claims; and

- Maintained detailed internal and external trackers of administrative expense claim motions, applications, response deadlines, and stipulations, monitored the docket on a daily basis for newly filed administrative expense claim motions, and calendared related dates and deadlines for both internal and external reference.

b. Adversary Proceedings (Task Code 002)
Fees: $97,908.00; Total Hours: 65.70

- Continued to manage the James Adversary Proceeding and the Onset Adversary Proceeding, each of which remained stayed in light of the related criminal proceedings against the Debtors' former executives, including monitoring the dockets thereof and reviewing related pleadings and filings;

- Negotiated with counsel to each defendant in the James Adversary Proceeding, and drafted and filed, a status report regarding the status of the related criminal proceedings and the continued stay of the James Adversary Proceeding (Adv. Pro. No. 25-03803, Docket No. 203), and reviewed the supplemental status updates filed by Patrick James and other parties in interest;

- Drafted and filed a status report regarding the status of the related criminal proceedings and the continued stay of the Onset Adversary Proceeding (Adv. Pro. No. 26-03005, Docket No. 144); and

- Continued to respond to document demands from counsel to Patrick James and the related entities, including preparing and delivering a responsive letter, coordinating the collection, processing, and privilege and responsiveness review of responsive materials with the Debtors' other advisors and the Debtors' e-discovery vendor, and producing responsive documents.

c. Asset Sales / 363 Matters (Task Code 003)
Fees: $245,605.00; Total Hours: 161.30

- Negotiated, drafted, and filed the *Stipulation and Agreed Order Regarding Proceeds Subject to the Wind Down Order* (Docket No. 3683), resolving the allocation of the proceeds of Wind Down Sales (as defined herein) of machinery and equipment among the Debtors' secured lenders and other parties asserting interests in such assets;

- Negotiated and documented the terms of an engagement arrangement among Hilco and Onset for the Wind Down Sales of certain machinery and

equipment in Mexico, in coordination with local counsel in Mexico and the Debtors' secured lenders, and negotiated and documented Hilco's engagement for the Wind Down Sales of the Debtors' assets located in Mexico;

- Coordinated with Katten Muchin Rosenman LLP ("**Katten**"), as successor wind down counsel to the Debtors, the Ad Hoc Group, the Debtors' other secured lenders, and the Debtors' other advisors regarding Wind Down Sales of real property and other assets, and related consents and organizational documents;

- Marketed the Debtors' estate claims and causes of action for sale, including negotiating non-disclosure agreements with potential bidders, maintaining and supplementing the virtual data room, corresponding with potential bidders regarding diligence requests, analyzing credit bid and bid-approval issues, and conducting related precedent research;

- Attended to matters arising from the Walbro sale, including preparing foreign intellectual property assignments across numerous jurisdictions and analyzing a secured creditor's asserted lien on Walbro real property;

- Reviewed documents effecting the sale of and coordinated with Debtors' advisors regarding the sale of certain of the Debtors' equity interests in foreign subsidiaries related to the Walbro business;

- Attended to matters arising from the PGI sale transactions, including with respect to the transfer of accounts, systems access, and books and records, the scope of transferred intellectual property, and issues related to the allocation and distribution of proceeds in coordination with Katten and the Debtors' other advisors;

- Analyzed and addressed issues arising in connection with the Wind Down Sales, including the governance process for inventory sales, tariff issues, data transfer and privacy matters, issues related to the proceeds of contemplated sales, and third-party claims asserted against property subject to sale, and coordinated with Hilco and the Debtors' other advisors regarding the same;

- Advised the Debtors' other advisors regarding the provisions and implementation of the Wind Down Order and related Wind Down Sale notices; and

- Following the Court's ruling directing conversion of the chapter 11 cases, prepared protocols and transition materials regarding the Wind Down Sales and the disposition of sale proceeds for the chapter 7 trustee, and coordinated with Katten regarding the transition of the wind-down sale workstreams to Katten and the chapter 7 trustees.

d. <u>Chapter 11 Plan / Confirmation / Implementation (Task Code 011)</u>
Fees: $9,975,327.50; Total Hours: 6,322.80

- Drafted, revised, negotiated, and filed the post-solicitation version of the Plan (Docket No. 3448), and continued to negotiate modifications to the Plan with the Ad Hoc Group, the Creditors' Committee, and other parties in interest;

- Finalized and filed the *Declaration of Charles M. Moore in Support of Confirmation of FBG Debtors' Chapter 11 Plan* (Docket No. 3188) (the "**Moore Declaration**") and the *Declaration of Marc S. Kirschner* (Docket No. 3190) (the "**Kirschner Declaration**"), including coordinating with the Debtors' other advisors regarding the factual and evidentiary support for, and the exhibits to, each declaration;

- Conducted legal research in connection with, drafted, and filed the *FBG Debtors' Memorandum of Law in Support of (I) Final Approval of the Disclosure Statement and (II) Confirmation of Joint Chapter 11 Plan* (Docket No. 3426) (the "**Confirmation Brief**");

- Reviewed and analyzed the numerous objections to final approval of the Disclosure Statement and confirmation of the Plan, and drafted and filed the *FBG Debtors' Omnibus Reply to Objections to (I) Final Approval of the Disclosure Statement and (II) Confirmation of Joint Chapter 11 Plan* (Docket No. 3433) (the "**Confirmation Reply**") and the *Notice of Filing Response Chart in Connection with FBG Debtors' Omnibus Reply to Confirmation Objections* (Docket No. 3461);

- Drafted and filed the Debtors' omnibus objection (Docket No. 3235) to the emergency motions to compel filed by the LAM Parties (Docket No. 3210) and Katsumi (Docket No. 3211) and the joinders thereto filed by Onset and Evolution (Docket Nos. 3223 and 3224), prepared for and attended the hearing thereon, and coordinated the Debtors' compliance with the Court's rulings on such motions, including serving supplemental interrogatory responses, conducting an expedited review and production of documents, and preparing and serving privilege logs;

- Drafted and filed the Debtors' opposition to (i) the emergency motion of Patrick James and the related entities to exclude portions of the Moore Declaration and the Kirschner Declaration (Docket No. 3414), and (ii) the motions in limine and motions to exclude filed by Onset, the LAM Parties, and other objectors with respect to the Debtors' confirmation evidence (Docket No. 3463);

- Negotiated with parties in interest and revised the proposed order confirming the Plan and resolved numerous objections to the proposed Plan in advance of the Combined Hearing;

- Continued to respond to Plan-related discovery requests served by Katsumi, the LAM Parties, Onset, Evolution, and other parties in interest, including finalizing and serving responses and objections to requests for production, interrogatories, and deposition notices, participating in meet and confer sessions with objectors' counsel, collecting, reviewing, and producing multiple volumes of documents, and responding to Rule 2004 requests served by certain creditors following the Combined Hearing;

- Prepared the Debtors' fact and expert witnesses—including the declarants of the Moore Declaration and the Kirschner Declaration, the Debtors' investment banker, and members of the Debtors' management and financial advisory teams—for, and defended, the depositions noticed by objectors in connection with confirmation, and reviewed and designated deposition testimony for use at the Combined Hearing;

- Reviewed, revised, and filed the declaration of the Debtors' claims, noticing, and solicitation agent regarding the solicitation of votes on, and the tabulation of ballots cast with respect to, the Plan (Docket No. 3351);

- Following the Court's ruling denying confirmation of the Plan and directing conversion of the chapter 11 cases to cases under chapter 7, drafted and filed proposed forms of the Conversion Order, negotiated the terms thereof with numerous parties in interest, reviewed and addressed objections and comments thereto, and obtained entry of the Conversion Order, which was entered after the Fourth Interim Compensation Period;

- Coordinated the transition of the administration of the Debtors' estates to the chapter 7 trustee, including preparing transition materials and presentations summarizing the Debtors' ongoing matters, pending adversary proceedings, and financing arrangements, preparing working group contact lists, coordinating the preservation and turnover of documents and data maintained by the Debtors' other advisors and vendors, and preparing resignation letters for the Debtors' directors, managers, and officers;

- Analyzed issues relating to the conversion of the remaining SPV Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, prepared related draft pleadings and supplemental protective order provisions, and coordinated with the chapter 7 trustee of the Converted SPV Debtors regarding the turnover of documents;

- Drafted, revised, and negotiated revised forms of the Litigation Trust Agreement, the DIP Collateral Trust Agreement, the ABL Collateral Trust Agreement, the Litigation Trust Backstop Agreement and related subscription materials, the Wind Down Administrator engagement agreement and related disclosures, and amendments to the Debtors'

organizational documents, and coordinated with counsel to the Ad Hoc Group regarding the same;

- Continued to negotiate a proposed joint prosecution arrangement with the SPV lenders and other stakeholders, including preparing and revising a related term sheet and agreement;

- Coordinated the marketing process for certain estate claims and causes of action contemplated by the Plan, including communications with potential bidders;

- Coordinated with the Ad Hoc Group, the ABL Lenders, and the proposed Wind Down Administrator regarding the wind-down budget, the Wind Down Administrator's duties and engagement, and post-confirmation cash application and closing mechanics;

- Negotiated and drafted a stipulation with PBGC resolving its issues with respect to the Plan (Docket No. 3237);

- Conducted legal research regarding numerous confirmation issues, including the requirements of sections 1129(a) and 1129(b) of the Bankruptcy Code, classification and voting, substantive consolidation, plan settlements and releases, feasibility, the priority of WARN Act and other administrative expense claims, the interaction of section 363 sales with chapter 11 plans, the priority of competing security interests in commingled funds, evidentiary and expert disclosure standards in contested matters, and the scope of the mediation and common interest privileges;

- Researched and analyzed appellate issues in connection with confirmation of the Plan, including the standards governing a stay pending appeal, and prepared related draft pleadings;

- Conferred with Weil practice groups, the Debtors, the Special Committee, and the Debtors' other advisors regarding confirmation strategy, evidence, and Plan implementation, including through daily advisor calls and recurring internal Plan working group meetings, and consulted with the Court's chambers regarding case matters and scheduling;

- Responded to inquiries from creditors and other parties in interest regarding the Plan and the treatment of claims thereunder; and

- Prepared and regularly updated Plan and confirmation work-in-process lists, closing checklists, confirmation order language trackers, discovery and deposition trackers, and objection summary charts for the Debtors, Weil, and the Debtors' other advisors.

e. Customer / Vendor / Supplier / Reclamation / 503(b)(9) Issues (Task Code 013)
Fees: $127,008.00; Total Hours: 102.50

- Negotiated and drafted stipulations and agreements with vendors and suppliers resolving asserted administrative expense and prepetition claims and, if applicable, related motions to compel payment, including stipulations providing for the rejection of related executory contracts, and coordinated with the Debtors' other advisors regarding the reconciliation of the underlying claims and invoices;

- Negotiated and drafted agreements with OEM customers resolving inventory diminution payment and funding true-up issues arising under the OEM funding arrangements, and prepared demand correspondence to customers regarding outstanding accounts receivable;

- Coordinated with the Debtors, the Debtors' other advisors, and counsel to the Debtors' information technology vendors regarding the continuation of critical information technology systems and services necessary for the wind down of the Debtors' estates and pursuit of valuable estate claims and causes of action;

- Participated in regular communication with numerous vendors, suppliers, customers, and their counsel, regarding informational questions, requests, demands, and notices; and

- Maintained frequent communication with the Debtors and the Debtors' other advisors regarding vendor inbounds and maintained detailed trackers of inbound inquiries and claims.

f. DIP Financing / Cash Collateral / Cash Management (Task Code 014)
Fees: $243,453.00; Total Hours: 133.00

- Negotiated with the Ad Hoc Group and the Creditors' Committee the terms of a forbearance by the DIP Lenders from the exercise of remedies arising from the occurrence of the maturity date under the DIP Credit Agreement,[10] including a related forbearance agreement and motion papers, and drafted, filed, and obtained Court approval of the *Stipulation and Agreed Order Regarding Forbearance from the Exercise of Remedies Arising from the Occurrence of the Maturity Date Under the DIP Credit Agreement* (Docket No. 3506) (the "**DIP Forbearance Stipulation**"), and negotiated a further extension of the forbearance period thereunder;

---

[10] "**DIP Credit Agreement**" refers to that certain *Senior Secured Superpriority Debtor-in-Possession Credit Agreement*, dated October 2, 2025, among First Brands Group, LLC as Borrower, Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent, and the lenders party thereto (Docket No. 289-1).

- Analyzed, in coordination with Weil's tax practice group and the Debtors' other advisors, the tax implications of the DIP forbearance and maturity extension, and conferred with counsel to the Ad Hoc Group regarding the same;

- Negotiated, drafted, and coordinated the execution of an agency succession agreement and related fee letter with respect to the Debtors' sidecar term loan facility, analyzed the related provisions of the Final DIP Order,[11] and coordinated with counsel to the Ad Hoc Group and the Debtors' other advisors regarding the same;

- Conducted lien and collateral diligence, including bringdown lien searches, analysis of mechanics' and similar liens, review of UCC financing statements asserted against the Debtors, and review of the ABL, first lien, second lien, sidecar, and DIP loan documents with respect to guarantees by, and claims against, First Brands Group Holdings, LLC;

- Advised the Debtors regarding cash management matters, including bank account transition and cash application issues, and corresponded with the Debtors' other advisors and counsel to the Ad Hoc Group and the Creditors' Committee regarding the same;

- Coordinated the Debtors' periodic reporting under the Final DIP Order and the other first day orders, including the distribution of reporting to notice parties, and reviewed the Debtors' cash flow forecast with the Debtors' other advisors; and

- Reviewed and analyzed the Final DIP Order, the DIP Credit Agreement, and the prepetition ABL and term loan documents in connection with the proposed Confirmation Order and the Plan Supplement and responded to related inquiries from the Debtors' other advisors and stakeholders.

g. <u>Disclosure Statement / Solicitation / Voting (Task Code 015)</u>
Fees: $126,409.50; Total Hours: 96.20

- Negotiated, drafted, filed, and obtained approval of stipulations under Bankruptcy Rule 3018(a) temporarily allowing claims for voting purposes with Raistone, the Carnaby Secured Lenders, and the LAM Parties (Docket Nos. 3150, 3154, 3186, 3199, 3205 & 3220);

- Drafted, revised, and filed the declaration of the Debtors' claims, noticing, and solicitation agent ("**Kroll**") regarding the solicitation of votes and other

[11] "**Final DIP Order**" refers to the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* (Docket No. 608).

elections in connection with the Plan, the tabulation of ballots cast on the Plan, and the collection of forms to opt in to the third-party releases contained in the Plan (Docket No. 3351);

- Participated on numerous calls with Kroll and the Debtors' other advisors regarding various matters related to solicitation of the Plan, including the solicitation of votes and other elections and the distribution of ballots and other solicitation materials;

- Coordinated with the Debtors' other advisors regarding the Liquidation Analysis and related portions of the declarations filed in support of confirmation;

- Conducted legal research regarding solicitation, voting, and numerous other legal issues in connection with the Plan, the declarations filed in support of the Plan, the Confirmation Brief, and the Confirmation Reply;

- Coordinated with Kroll, the administrative agents under the Debtors' prepetition credit facilities, and the Debtors' other advisors regarding the solicitation of votes on the Plan, including ballots, claim amounts for voting purposes, plan class reports, and voting reports, and responded to numerous solicitation and voting inquiries from creditors and other parties in interest; and

- Coordinated with the Debtors' other advisors regarding administrative expense claim consent forms and responded to inquiries from parties in interest regarding the Administrative Expense Claims Consent Program and the Preference Settlement.

h. Employee Issues / Communications (Task Code 016)
Fees: $1,496,373.00; Total Hours: 838.10

- Finalized and filed the *Motion of Debtors for an Order (I) Directing Trustee to Turn Over and Deliver Trust Assets to the Debtors, (II) Authorizing the Debtors to Exercise Ownership Rights Over Such Assets, (III) Authorizing Termination of Trust, (IV) Authorizing Termination of Deferred Compensation Plan Effective as of Petition Date, and (V) Granting Related Relief* (Docket No. 3109), negotiated resolutions to informal comments received from the Ad Hoc Group to the proposed order, obtained Court approval of same (Docket No. 3372), and coordinated with the trustee of the deferred compensation trust regarding the liquidation and turnover of trust assets to the Debtors;

- Finalized and filed the *Emergency Motion of Debtors for Order (I) Authorizing Debtors to Modify Retiree Benefits and (II) Granting Related Relief* (Docket No. 3194) (the "**Retiree Benefits Motion**"), together with the declaration in support thereof (Docket No. 3195),

coordinated with the Debtors' other advisors, the Ad Hoc Group, the Creditors' Committee, and the Debtors' other stakeholders regarding the same, and coordinated notice and service of the Retiree Benefits Motion on affected retirees with Kroll;

- Drafted and filed a notice of filing of a revised proposed order granting the Retiree Benefits Motion reflecting the Debtors' agreements with the Unions and the official committee of non-union retirees (the "**Non-Union Retiree Committee**"), obtained entry of the *Order (I) Authorizing Debtors to Terminate Retiree Benefits and (II) Granting Related Relief* (Docket No. 3472) (the "**Retiree Benefits Order**"), and advised the Debtors regarding the implementation of the Retiree Benefits Order;

- Prepared for hearing on the Retiree Benefits Motion, including preparing witness and exhibit lists and related exhibits, preparing the Debtors' witness and a supplemental declaration, reviewing and analyzing the objection of the Non-Union Retiree Committee to the Retiree Benefits Motion and related motion to modify the order directing the appointment of the Non-Union Retiree Committee, as well as the statement filed by the PBGC with respect to the Retiree Benefits Motion, drafted a reply to the Non-Union Retiree Committee's objection, and prepared for and attended the hearing on the Retiree Benefits Motion on July 28, 2026;

- Negotiated with the United Automobile, Aerospace and Agricultural Implement Workers of America ("**UAW**") and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union on behalf of Local Union No. 4863 ("**USW**" and, together with UAW, the "**Unions**") and the Non-Union Retiree Committee regarding the modification of the Debtors' retiree health, life, death benefit, dental, and vision benefit arrangements under section 1114 of the Bankruptcy Code;

- Coordinated with the U.S. Trustee regarding the appointment of the Non-Union Retiree Committee and compiled and produced to the Unions' counsel and the Non-Union Retiree Committee's counsel plan documents, participant census data, claims experience, and other information responsive to their information requests;

- Reviewed and analyzed the objections to confirmation of the Plan filed by the Unions and the Non-Union Retiree Committee, coordinated with the Unions' counsel, the Non-Union Retiree Committee's counsel, and the Debtors' other stakeholders regarding the Plan and the proposed Confirmation Order language resolving such objections in connection with the section 1114 settlements, and analyzed the treatment of the section 1114 settlements;

- Finalized and filed the *Stipulation and Agreed Order Between Debtors and PBGC* (Docket No. 3283) regarding the termination of certain of the Debtors' defined benefit pension plans and PBGC's related claims;

- Advised the Debtors regarding the treatment and termination of the 401(h) retiree medical account and related VEBA trust under the Dalton pension plan, including conferring with PBGC, USW's counsel, the trustee of such accounts, and the Debtors' other advisors regarding the same, conducting legal research regarding the treatment of 401(h) accounts, VEBA trusts, and pension/VEBA trust reversions upon plan termination, preparing account termination documentation, and addressing related matters;

- Continued to advise the Debtors regarding the wind down of their self-insured group health plans, including negotiating, drafting, and finalizing for execution a claims run-out agreement with the plans' third-party administrator and a related escrow agreement with Kroll as escrow agent, analyzing incurred-but-not-reported claims exposure, run-out funding, late claims, and flexible spending account liabilities, preparing communications to affected participants and coordinating COBRA coverage, and conducting legal research in connection therewith;

- Prepared, negotiated with the Unions' counsel and the Non-Union Retiree Committee's counsel, and finalized communications to union and non-union retirees regarding the termination of retiree health and life insurance benefits and related claims submission and policy conversion procedures, coordinated their distribution through Kroll, including locating addresses for retirees, coordinated with the retiree life insurance carrier and third-party policy sponsors regarding conversion rights, death benefit claims, and the termination of legacy retiree life insurance policies, and responded to inquiries from numerous union and non-union retirees regarding the Retiree Benefits Order and their benefits;

- Continued to advise the Debtors regarding the termination of the Debtors' 401(k) plan and health and welfare benefit plans, including coordinating with the 401(k) plan's recordkeeper and other advisors regarding plan termination, participant rollovers, and other matters, drafting and finalizing resolutions and plan amendments terminating the Debtors' health and welfare plans, addressing amendments to a defined benefit pension plan transferred in connection with the Walbro sale and issues related to the Trico pension plan, and analyzing the treatment of nonqualified deferred compensation arrangements;

- Analyzed claims asserted by the Unions on behalf of represented employees for wages, back pay, and related amounts, including with respect to certain closed facilities, prepared an agreement with the Unions regarding the treatment of such claims, and coordinated with the Debtors and the Debtors' other advisors regarding related payroll processing;

- Prepared an employee benefits termination and wind-down summary memorandum along with relevant related documentation and issues list for, and met with, the proposed Wind Down Administrator under the Plan regarding the transition of benefit plan related matters, including coordinating with the Debtors' human resources personnel and the Debtors' other advisors regarding benefit plan termination-related issues;

- Following the Court's ruling denying confirmation of the Plan and directing conversion of the chapter 11 cases, analyzed the impact of conversion on the Debtors' benefit plans and go-forward obligations under the Retiree Benefits Order, conferred with the Unions' counsel, the Non-Union Retiree Committee's counsel, and the Debtors' benefit plan service providers regarding the same, and discussed the reconciliation of employee leasing arrangements with the purchasers of the Walbro and TMD businesses with the Debtors' other advisors; and

- Conferred with Weil practice groups, the Debtors, the Debtors' other advisors, and the Debtors' stakeholders regarding various employee-related matters, including through recurring benefits calls with the Debtors' human resources personnel and third-party service providers.

i. <u>Evolution Matters (Task Code 017)</u>
Fees: $1,004,417.00; Total Hours: 888.20

- Finalized and filed the *Debtors' Amended Answer to Plaintiffs' Complaint and Affirmative Defenses* (Adv. Pro. No. 26-03006, Docket No. 84) in the adversary proceeding commenced by Evolution concerning the Debtors' non-factored receivables (the "**Evolution Adversary Proceeding I**");

- Prepared for and presented oral argument before the United States District Court for the Southern District of Texas in opposition to Evolution's motion for leave to appeal the Court's order granting the Debtors partial summary judgment in the Evolution Adversary Proceeding I, including preparing argument outlines and hearing materials and coordinating with co-defendants' counsel regarding the argument;

- Responded to Evolution's demand for the segregation and turnover of postpetition accounts receivable collections, including analyzing the relevant factoring agreements, the Final DIP Order, and accounts receivable reporting with the Debtors' other advisors, drafting and sending a response letter to Evolution's counsel, and participating in a meet and confer with Evolution and the chapter 7 trustee for the Converted SPV Debtors;

- Drafted and filed the *Debtors' Objection to Emergency Motion of Evolution Credit Partners to Compel Segregation and Turnover of Post-Petition Accounts Receivable Collected* (Docket No. 3218), and reviewed and

analyzed the chapter 7 trustee's joinder to, and Evolution's reply in further support of, such motion;

- Drafted and filed the *Objection of First Brands Group, LLC and A&M North America, LLC to Emergency Motion of SPV Debtors' Trustee Ronald Sommers to Compel Turnover of Estate Property, Books, and Records and Cross-Motion to Quash Rule 2004 Subpoenas* (Case No. 25-90392 (CML), Docket No. 76) in the chapter 7 cases of the Converted SPV Debtors, including preparing exhibits in support thereof, reviewed and analyzed the chapter 7 trustee's reply in further support of such motion and prepared correspondence in response thereto, and prepared for and attended a status conference before the Court regarding such motion;

- Coordinated and negotiated with the chapter 7 trustee for the Converted SPV Debtors and the trustee's counsel regarding the trustee's turnover demands and Bankruptcy Rule 2004 subpoenas, including participating in multiple meet and confer conferences, drafting responses to the trustee's correspondence and open item requests, and addressing accounts receivable, financial data, and related transition matters;

- Reviewed, prepared, and produced books, records, and electronic data of the Converted SPV Debtors to the chapter 7 trustee in response to the trustee's turnover demands, including developing a document review protocol for privilege issues, reviewing relevant materials for privilege, preparing redactions and associated metadata, reconciling such productions against the Debtors' prior productions to Evolution, and coordinating multiple data transfers with the trustee's e-discovery vendor;

- Responded to Evolution's discovery requests in the Evolution Adversary Proceeding I, including preparing responses to Evolution's interrogatories and document requests, and participating in meet and confer conferences with Evolution's counsel regarding the Debtors' discovery responses;

- Conducted legal research regarding the segregation and turnover of postpetition accounts receivable collections;

- Reviewed and analyzed the chapter 7 trustee's wind-down motion and other filings in the Converted SPV Debtors' chapter 7 cases and in the Evolution-related adversary proceedings, and monitored the related dockets;

- Coordinated with co-defendants' counsel in the Evolution Adversary Proceeding I, as well as counsel to the Ad Hoc Group, regarding Evolution's docket filings and related Evolution matters; and

- Conferred with Weil practice groups, the Debtors, the Debtors' other advisors, and Katten regarding Evolution litigation strategy, accounts

receivable and facility expense matters, the chapter 7 trustee's turnover requests, and the transition of Evolution-related matters.

j. Executory Contracts / Leases / 365 (Task Code 019)
Fees: $149,728.00; Total Hours: 108.60

- Negotiated, drafted, filed, and obtained Court approval of numerous stipulations and agreed orders with landlords extending the time within which the Debtors may assume or reject unexpired leases of nonresidential real property under section 365(d)(4) of the Bankruptcy Code (Docket Nos. 3105, 3120, 3139, 3548, 3559 and 3747), thereby preserving flexibility to liquidate estate assets, and coordinated with landlords' counsel, the Ad Hoc Group and the Debtors' other advisors regarding upcoming section 365(d)(4) deadlines;

- Drafted and filed four (4) omnibus notices of rejection of unexpired leases and executory contracts and abandonment of property in connection therewith (Docket Nos. 3157, 3538, 3653, and 3731), and prepared a further omnibus rejection notice that was filed after the Fourth Interim Compensation Period (Docket No. 3746);

- Drafted and filed two (2) notices of assumption of certain executory contracts, including information technology contracts necessary for the wind down of the Debtors' estates (Docket Nos. 3146 and 3471), negotiated related assumption agreements and cure amounts with the counterparties, and coordinated with the Ad Hoc Group and the Debtors' other advisors regarding the same;

- Negotiated, drafted, filed, and obtained Court approval of numerous stipulations rejecting contracts and unexpired leases, modifying lease terms, and resolving motions, objections and claims regarding the Debtors' contracts and leases (Docket Nos. 3153, 3197, 3571, and 3682);

- Addressed landlord issues arising in connection with the Wind Down Sales, including letters and inquiries from landlords regarding the Wind Down Order, landlord objections and access issues relating to Wind Down Sale auctions conducted at leased premises, post-rejection rent and property tax obligations, and the removal of mechanics' liens from leased premises, and coordinated with the Ad Hoc Group, Onset, and the Debtors' secured lenders regarding the treatment of lease-related obligations in connection with the Wind Down Sales;

- Conducted analysis, due diligence, and legal research regarding the Debtors' obligations under their leases and agreements, cure costs, the implications of assumption, assignment, and rejection, rent disputes and property tax payment obligations, the abandonment of property at leased premises, data preservation obligations in connection with the assumption

and rejection of information technology contracts, and mechanics' lien removal issues; and

- Conferred with the Weil real estate team and other Weil practice groups, the Debtors, the Debtors' other advisors, Hilco, landlords and their counsel, contract counterparties, and Katten regarding various executory contract and unexpired lease matters, including the transition of lease-related workstreams to Katten.

k. Hearings and Court Matters (Task Code 022)
Fees: $1,820,453.50; Total Hours: 1,283.80

- Prepared for and represented the Debtors at twelve (12) hearings and status conferences during the Fourth Interim Compensation Period, including the Combined Hearing (consisting of the three-day evidentiary hearing and closing arguments), as well as hearings and status conferences in connection with confirmation-related discovery and the LAM Parties' and Katsumi's motions to compel, the Retiree Benefits Motion, a Wind Down Sale, the chapter 7 trustee's wind-down extension motion in the Converted SPV Debtors' chapter 7 cases, and oral argument before the United States District Court for the Southern District of Texas on Evolution's motion for leave to appeal in the Evolution Adversary Proceeding I;

- Prepared the Debtors' fact and expert witnesses for direct, cross, and redirect examination at the Combined Hearing, including the declarants of the Moore Declaration and the Kirschner Declaration and a representative of the Debtors' solicitation agent, and drafted direct and redirect examination outlines, opening statement and closing argument scripts, deposition designations, and evidence summaries in connection therewith;

- Prepared and filed the Debtors' witness and exhibit lists and voluminous exhibits for the Combined Hearing and for the hearing on the Retiree Benefits Motion, compiled a master list of the exhibits designated by all parties, coordinated with counsel to the objecting parties regarding hearing evidence, prepared and filed the joint exhibit list for the Combined Hearing and supplemental and sealed exhibits thereto, and prepared outlines for the introduction and admission of exhibits into evidence;

- Prepared demonstratives and presentation materials for the Debtors' opening statement, witness examinations, and closing argument at the Combined Hearing, and coordinated hearing logistics, including the preparation of hearing materials;

- Conducted legal research regarding evidentiary issues arising in connection with the Combined Hearing, including the admissibility of exhibits and testimony and the scope and qualification of expert testimony, and drafted

and filed the Debtors' opposition to the motion to exclude the Kirschner Declaration and related testimony (Docket No. 3463);

- Prepared, filed, and arranged service of various notices and other documents in connection with the hearings described herein, including hearing agendas, notices of hearing and adjournment, notices of the Court's oral rulings, transcript requests, witness and exhibit lists, and demonstratives; and

- Consulted with the Court's chambers and courtroom staff regarding hearing scheduling, courtroom procedures, and the hearing record, obtained and reviewed hearing transcripts and interim transcripts of the hearing recordings, and prepared materials for hearings.

l. Non-Debtor Subsidiary Matters (Task Code 024)
Fees: $349,692.00; Total Hours: 216.30

- Continued to advise the Debtors and coordinate with local counsel and others regarding the wind down, disposition and related security and local law matters, as applicable, of the remaining non-Debtor subsidiaries across multiple jurisdictions, including Mexico, Canada, China, Hong Kong, India, Thailand, Japan, Switzerland, the Netherlands, Luxembourg, Belgium, Sweden, Italy, Germany, Spain, Romania, Poland and Australia, including conducting a jurisdiction-by-jurisdiction status review with local counsel and the local directors of the non-Debtor entities that were handed over to local counsel, local insolvency officeholders and local directors, as applicable, to wind down;

- Prepared a comprehensive status and transition memorandum in respect of the RoW wind-down workstreams—including a jurisdiction-by-jurisdiction workstream summary, an index of the matter file and key documents, and local counsel, insolvency practitioner, and advisor contact information—to facilitate the orderly transition of such workstreams to Katten and the chapter 7 trustee;

- Prepared a report regarding the status of the Debtors' controlled non-Debtor subsidiaries and related foreign insolvency proceedings, including the German insolvency proceedings and the separated Horizon Europe entities;

- Coordinated with local counsel in Mexico and the Mexican liquidator regarding the execution of proxies and the dissolution and liquidation of the Mexican non-Debtor entities, reviewed asset purchase proposals received in respect of certain Mexican entities, and advised regarding the corporate status of such entities and the related dissolution and liquidation processes;

- Advised the Debtors regarding the wind down of the Canadian non-Debtor entities, including dissolution options and directors' and officers' insurance

coverage, coordinated with local counsel in Canada regarding an assignment in bankruptcy under Canadian law, and responded to information requests from counsel to the DIP Lenders;

- Advised the Debtors regarding the proposed liquidation of the Hong Kong non-Debtor subsidiaries and the dissolution and deregistration of the Chinese non-Debtor entities, including coordinating with the proposed Hong Kong liquidators regarding their engagement, prefunding, and liquidation timing, conducting legal research regarding PRC liquidation and deregistration procedures and the interaction of the Hong Kong liquidations with the PRC entities' liquidation and asset sale processes, preparing status updates for, and seeking instructions from, the director of the Hong Kong entities, and coordinating with local counsel in China regarding the execution of dissolution documentation and the confirmation of directorships;

- Following Court approval and closing of the sale of the Walbro APAC business, coordinated the transition of the Walbro APAC non-Debtor entities and the related local counsel engagements and wind-down retainers to the purchaser and its counsel, and analyzed related retainer refund, cash sweep, and purchase price adjustment considerations under the sale agreement;

- Analyzed the perimeter for potential sales of Debtor-held equity interests in non-Debtor subsidiaries and coordinated with Katten, local counsel, and the Debtors regarding inbound third-party purchaser interest in respect of certain RoW Entities, including in India, China, and Poland, and with the Mexican liquidator regarding asset purchase proposals for certain Mexican entities;

- Coordinated with the Debtors and the Debtors' other advisors regarding information requests from local insolvency officeholders, liquidators, corporate services providers, and creditors of the various non-Debtor subsidiaries, including the proposed liquidators of the Hong Kong entities and corresponded with the insolvency administrators of the German non-Debtor entities regarding the status of the German insolvency proceedings;

- Responded to inquiries from local management and directors of the non-Debtor subsidiaries, and conferred with Weil practice groups, the Debtors, and the Debtors' other advisors regarding the RoW wind-down workstreams and related sale, financing, corporate governance, and litigation considerations; and

- Prepared and regularly updated the comprehensive global wind-down tracker, entity status tables, directors' and officers' records, and entity structure charts covering the remaining non-Debtor subsidiaries, including

reconciling director and officer data with local counsel, and circulated updated versions to the Debtors and the Debtors' other advisors.

m. Tax Issues (Task Code 033)
Fees: $111,058.00; Total Hours: 64.00

- Provided tax comments to, and analyzed the tax implications of, the Plan and the Plan Supplement documents in preparation for confirmation, including the Litigation Trust Agreement, the Litigation Trust Backstop Agreement, the DIP Collateral Trust Agreement, the ABL Collateral Trust Agreement, the Wind Down Administrator engagement letter, and related direction letters;

- Prepared and filed certain IRS Form 8918 (material advisor forms with respect to potential reportable transactions), analyzed potential additional reporting obligations, and coordinated with the Debtors' other advisors regarding the same;

- Analyzed tax considerations relating to the DIP forbearance and to credit bids in connection with Plan implementation and conferred with counsel to the Ad Hoc Group and the Debtors' other advisors regarding the same;

- Analyzed tax claim priority issues, conducted legal research regarding section 505(b) of the Bankruptcy Code, and corresponded with counsel to a state taxing authority regarding tax claims;

- Prepared tax-related items for the confirmation closing checklist and coordinated with Weil practice groups and the Debtors' other advisors regarding Plan implementation; and

- Participated in weekly tax coordination calls with the Debtors' other advisors regarding Plan-related tax modeling and tax compliance matters and, following the Court's ruling directing conversion of the chapter 11 cases, tax reporting considerations in connection with the conversion.

n. Weil Retention / Billing / Fee Applications (Task Code 037)
Fees: $186,788.00; Total Hours: 146.20

- Drafted and revised the Third Interim Fee Application (Docket No. 3771), which was filed after the Fourth Interim Compensation Period, and commenced preparation of this Application;

- Drafted and filed the *Third Supplemental Declaration of Matthew S. Barr in Support of Application of Debtors for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 3697), including conducting related conflicts checks and preparing supplemental disclosure schedules;

- Drafted, reviewed, and served Weil's seventh, eighth, and ninth monthly fee statements; and

- Reviewed time records and disbursements for compliance with the Fee Guidelines and for privilege and confidentiality.

o. Government Investigation Matters (Task Code 041)
Fees: $118,538.00; Total Hours: 67.70

- Coordinated the Debtors' response to a set of parallel investigations conducted by multiple agencies of the federal government into the Debtors' prepetition business practices (collectively, the "**Government Investigation**") among Weil practice groups and with the Special Committee and the Debtors' other advisors;

- Responded to requests for information from the Department of Justice, including preparing for and participating in meetings and calls with the Department of Justice, responding to follow-up questions regarding prior document productions and production metadata, and organizing related privilege materials;

- Analyzed a trial subpoena and an amended trial subpoena served on the Debtors by counsel to Patrick James in connection with the related criminal proceedings, conducted legal research regarding, and revised a motion to quash, the same, participated in meet and confer conferences with such counsel, prepared an index of and delivered responsive materials, and responded to a related document preservation request;

- Coordinated with the Debtors' e-discovery vendor regarding the maintenance and transition of the Debtors' document review database, including with respect to access for the chapter 7 trustee of the Converted SPV Debtors and common interest parties and the assignment of the related vendor contract;

- Coordinated with the Weil litigation team and the Debtors' other advisors regarding the treatment of information relating to the Government Investigations in document productions and declarations in connection with confirmation of the Plan, including related privilege and redaction issues; and

- Analyzed the implications of the conversion of the chapter 11 cases for the Government Investigations workstream and coordinated the transition thereof.

p. RoW Horizon / FMP (Task Code 044)
Fees: $129,930.00; Total Hours: 79.10

- Continued to advise regarding the solvent dissolution of HZ Lux Holdings S.à r.l., including coordinating with the Luxembourg corporate services provider engaged in connection with the liquidation and with local counsel in Luxembourg regarding the liquidation process, budget, and information requests, reviewing the related domiciliation and management agreement, and reviewing, revising, and coordinating the execution of the shareholder resolutions authorizing the liquidation and the appointment of the liquidator;

- Reviewed and revised a draft stay and forbearance agreement in respect of the intercompany claims against HZ Lux Holdings S.à r.l., coordinated with local counsel in Luxembourg, the Debtors, and the Debtors' other advisors regarding the same, and corresponded with the Debtors regarding related intercompany loan documentation and a letter agreement with Cequent Nederland Holdings B.V.;

- Drafted an amendment agreement to the receivables assignment agreement and corrected notices of assignment to HZ Lux Holdings S.à r.l. and Westfalia in connection with the Walbro Suisse intercompany assignments and analyzed with Weil practice groups, local counsel in Luxembourg, and the Debtors' other advisors the related amendments to the Horizon Europe settlement and sale agreement and the service of such notices;

- Analyzed the remaining intercompany balances between Walbro Suisse and the wider group against the Walbro APAC purchase agreement and the receivables assignment arrangements, and coordinated with the Debtors' other advisors regarding the reconciliation of intercompany balances and related debt forgiveness considerations;

- Advised regarding the wind down of the Horizon North America non-Debtor entities, including Cequent Canada, and responded to queries from local counsel in Canada regarding directors' and officers' insurance coverage and wind-down responsibility for such entities;

- Coordinated with the Weil Hong Kong team and local counsel in Thailand regarding the Horizon-related Hong Kong and Thai non-Debtor entities, including the engagement of local directors on commencing liquidation processes, available liquidation options, and directors' duties; and

- Prepared and updated Horizon entity structure charts, directors' and officers' lists, local counsel tables, and the global wind-down tracker in respect of the Horizon RoW Entities, and prepared workstream status updates in connection with the transition of the Horizon workstreams.

26. In addition to the foregoing, Weil prepared, on behalf of the Debtors, all other necessary motions, applications, orders, notices, responses, and other papers in support of positions taken by the Debtors and in compliance with applicable law.

27. The professional services performed by Weil on behalf of the Debtors during the Fourth Interim Compensation Period required an aggregate expenditure of approximately 11,386.30 hours by Weil's partners, counsel, associates, paraprofessionals, and other non-legal staff. Of the aggregate time expended, approximately 2,987.40 recorded hours were expended by partners and counsel of Weil, approximately 7,519.80 recorded hours were expended by associates, and approximately 879.10 recorded hours were expended by paraprofessionals and other non-legal staff of Weil. Of the one hundred nineteen (119) Weil attorneys who billed time, fifty-two (52) billed fewer than 15 hours to this matter. Of the twenty-four (24) Weil paraprofessionals and other non-legal staff who billed time, twelve (12) billed fewer than 15 hours to this matter.

28. During the Fourth Interim Compensation Period, Weil billed the Debtors for time expended by attorneys based on hourly rates ranging from $680.00 to $2,850.00 per hour for attorneys. Allowance of compensation in the amount requested would result in a blended hourly billing rate for Weil attorneys in this Application of approximately $1,599.04 (based on 10,507.20 recorded hours for attorneys at Weil's billing rates in effect at the time of the performance of services).

**Summary of Services Performed by**
**<u>Weil During Final Compensation Period</u>**

31. During the course of the Final Compensation Period and as set forth in more detail above and in the *First Interim Fee Application of Weil, Gotshal & Manges LLP, Attorneys for Debtors, for the Period from September 29, 2025, Through and Including December 31, 2025*

(Docket No. 1948) (the "**First Interim Fee Application**"), the *Second Interim Fee Application of Weil, Gotshal & Manges LLP, Attorneys for Debtors, for the Period from January 1, 2026 Through and Including March 31, 2026* (Docket No. 2916) (the "**Second Interim Fee Application**"), and the *Third Interim Fee Application of Weil, Gotshal & Manges LLP, Attorneys for Debtors, for the Period from April 1, 2026 Through and Including June 30, 2026* (Docket No. 3771) (the "**Third Interim Fee Application**"), Weil provided extensive services to the Debtors necessary to the administration of the chapter 11 cases and the preservation and maximization of the value of the Debtors' estates. Some of the most significant services provided by Weil include the following:

a. Administrative Expense Claims (Task Code 001)
Fees: $524,949.50; Total Hours: 357.10

- Developed and implemented a standardized process for responding to asserted administrative expense claims, including drafting form stipulations and form correspondence for use across multiple counterparties, and reviewed and triaged incoming payment demands from vendors and other counterparties throughout the chapter 11 cases;

- Coordinated with the Debtors' other advisors to review and analyze invoices, proofs of claim, payment demands, and supporting documentation submitted by vendors and other counterparties in support of asserted administrative expense claims to identify the extent to which claims could be disputed, reduced, or eliminated;

- Negotiated with various counterparties to resolve asserted administrative expense claims, including by negotiating, drafting, and entering into twenty-seven (27) stipulations providing for the allowance and/or resolution of administrative expense claims, thereby avoiding the cost attendant to litigating motions to compel payment of such claims (Docket Nos. 918, 919, 2118, 2415, 2426, 2444, 2563, 2572, 2608, 2623, 2674, 2700, 2890, 3155, 3217, 3225, 3299, 3503, 3508, 3571, 3586, 3666, 3676, 3682, 3708, 3709, and 3742);

- Drafted objections and responses to motions to compel payment of administrative expense claims, including filing the Debtors' objection to Total Quality Logistics' administrative expense claim motion (Docket No. 3145);

- Analyzed claims asserted in administrative expense claim application filed by Longkou (Docket No. 2569), conducted legal research and precedent analysis in connection therewith, prepared objection in response to application, negotiated with such counterparty regarding potential claim resolution and extensions of time to respond to application, coordinated with the Debtors' key stakeholders and other advisors, including Weil's tax and litigation teams, regarding the same, negotiated, drafted, and filed a stipulation establishing a schedule for discovery and litigation with respect to such application (Docket No. 3508), and produced documents in response to Longkou's discovery requests thereunder;

- Reviewed and analyzed the application of GLAS Trust Company LLC, as administrative agent for the Carnaby Secured Lenders, for allowance and payment of an administrative expense claim (Docket No. 3345), negotiated, drafted, and filed a stipulation extending the Debtors' deadline to object thereto (Docket No. 3668), and prepared objections and responses thereto;

- Coordinated with the Debtors and the Debtors' other advisors regarding the reconciliation and sizing of asserted aggregate administrative expense and priority claims for purposes of supporting the proposed Plan; and

- Maintained trackers of administrative expense claim motions and stipulations and calendared dates and deadlines for both internal and external reference.

b. <u>Adversary Proceedings (Task Code 002)</u>
Fees: $8,771,230.00; Total Hours: 6,025.00

- Developed and managed the Debtors' affirmative litigation strategy that culminated in the commencement of the James Adversary Proceeding and the Onset Adversary Proceeding;

- Drafted and filed the *Complaint* (Adv. Pro. No. 26-03005, Docket No. 1) in the Onset Adversary Proceeding;

- Drafted and filed the *Emergency Ex Parte Application for Preliminary Injunctive Relief, Including an Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Request for Hearing in the James Adversary Proceeding* (Adv. Pro. No. 25-03803, Docket No. 18) (the "**TRO Motion**"), obtained a temporary restraining order, and litigated preliminary injunction proceedings, including preparing witnesses, declarations, and evidence in connection therewith;

- Developed and implemented a discovery strategy in the James Adversary Proceeding for both obtaining evidence from the defendants, including through numerous requests for production and interrogatories, responded to requests for the same from other parties, and reviewed over 150,000

documents in connection with both the Debtors' claims and the Debtors' planned production of documents to other parties;

- Commenced trial preparation, including the preparation of elements-and-proof charts and preliminary witness list;

- Drafted and filed responses to the motions filed in the James Adversary Proceeding, including a response to Onset's motion to intervene (Adv. Pro. No. 25-03803, Docket No. 99), and developed a strategy for responding to the defendants' motion to dismiss;

- Strategized for and participated in oral argument on a motion to intervene filed by Onset in the James Adversary Proceeding, analyzed Onset's reply brief in support of its motion to intervene, conducted legal research regarding the same, and successfully obtained an order from the Court denying Onset's motion to intervene;

- Investigated and researched claims against additional defendants, and drafted and filed the *Amended Complaint* (Adv. Pro. No. 25-03803, Docket No. 141), which included additional claims, defendants, and factual allegations asserted by the Debtors in the James Adversary Proceeding;

- Drafted, filed, and obtained Court approval of the *Emergency Motion to Amend Case Schedule* (Adv. Pro. No. 25-03803, Docket No. 152) in the James Adversary Proceeding;

- Drafted, revised, and filed the *Emergency Motion for Clarification of Case Deadlines* (Adv. Pro. No. 25-03803, Docket No. 187) in the James Adversary Proceeding in light of the related criminal proceedings, conducted legal research and analysis in connection therewith, and obtained Court approval of the *Order Granting Case Deadline Clarification* (Adv. Pro. No. 25-03803, Docket No. 195), pursuant to which all case deadlines were held in abeyance pending the issuance of a scheduling order;

- Negotiated with counsel to each defendant, and prepared and filed a joint statement and proposed scheduling order regarding the case schedule in the James Adversary Proceeding (Adv. Pro. 25-03803, Docket No. 179);

- Drafted and filed the (i) *Opposition to Onset Financial, Inc.'s Amended Motion to Reconsider the Order Staying Adversary Case Deadlines and Discovery* (Adv. Pro. No. 26-03005, Docket No. 109), (ii) *Motion to Extend the Stay of Adversary Case Deadlines and Discovery* (Adv. Pro. No. 26-03005, Docket No. 125), and (iii) *Reply in Support of the Debtors' Motion to Extend the Stay of Adversary Case Deadlines and Discovery* (Adv. Pro. No. 26-03005, Docket No. 135), and obtained the *Order Extending Stay of Adversary Case Deadlines and Discovery* (Adv. Pro. No. 26-03005, Docket No. 136), pursuant to which the Onset Adversary Proceeding was stayed

until the resolution of the appeal on the order staying discovery in the James Adversary Proceeding;

- Negotiated, drafted, and filed the *Joint Statement of the Debtors, Wilmington Savings Fund, FSB, GLAS USA LLC, the ABL Lenders, Peter Andrew Brumbergs, Patrick James and the Related Entities, Stephen Graham, Shekhar Kumar, Edward James, JCMC Investment Group, LLC, and Optimus Private Capital LLC Regarding Case Schedule* (Adv. Pro. No. 26-03005, Docket No. 133);

- Drafted and filed the *Statement Regarding the Order Extending the Stay of Adversary Case Deadlines and Discovery* (Adv. Pro. No. 26-03005, Docket No. 139);

- Drafted and filed the *Statement of the Debtors Regarding Status of Criminal Proceeding and the Continued Stay in this Adversary Proceeding* (Adv. Pro. No. 26-03005, Docket No. 144);

- Negotiated with counsel to each defendant, and drafted and filed, a status report regarding the status of the related criminal proceedings and the continued stay of the James Adversary Proceeding (Adv. Pro. No. 25-03803, Docket No. 203), and managed the James Adversary Proceeding and the Onset Adversary Proceeding, each of which remained stayed as of the conversion of the chapter 11 cases, thereby preserving the Debtors' claims for the benefit of the Debtors' estates and the chapter 7 trustee;

- Reviewed and responded to correspondence and document demands from counsel to Patrick James, including preparing responsive letters and analyzing related access, preservation, and privilege issues, and producing responsive documents;

- Reviewed hearing transcripts, pleadings, and case correspondence and coordinated with opposing counsel regarding meet-and-confer obligations, scheduling, and discovery in the James and Onset Adversary Proceedings;

- Analyzed issues relating to the criminal proceedings against the Debtors' former executives, including criminal forfeiture considerations;

- Prepared, drafted, and filed the *Defendant Debtors' Answer to Complaint* (Adv. Pro. No. 26-03091, Docket No. 21) and *Defendant Debtors' Amended Answer to Complaint* (Adv. Pro. No. 26-03091, Docket No. 25) in *Bank of America, N.A. v. Aequum Capital Financial II LLC* (Adv. Pro. 26-03091) (the "**Aequum Adversary Proceeding**"); and

- Analyzed and responded to a document request received from the Debtors' insurers in connection with the adversary proceedings.

c. Asset Sales / 363 Matters (Task Code 003)
Fees: $31,148,988.50; Total Hours: 20,882.00

- Prepared for and implemented a sale process for the Debtors' assets, which included a review of the Debtors' business lines, development of a sale process timeline, and formulation of a strategic plan to consummate one or more sales of the Debtors' assets, and commenced a marketing and sale process for all of the Debtors' assets, including the equity interests in non-Debtor subsidiaries;

- Prepared, negotiated, and managed execution of non-disclosure agreements with prospective bidders and other parties in connection with the sale processes;

- Drafted, negotiated with stakeholders, and filed the *Emergency Motion of Debtors for Order (I) Approving (A) Bidding Procedures for Sale of Assets of the Debtors, (B) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (C) Assumption and Assignment Procedures, (II) Authorizing Designation of Stalking Horse Bidders, (III) Scheduling Auction and Sale Hearing, and (IV) Granting Related Relief* (Docket No. 1253), including declarations in support thereof, and drafted, reviewed, and revised de minimis asset sale and abandonment procedures motion;

- Reviewed documents in virtual data room ("**VDR**") and managed VDR logistics for the Debtors' other advisors and prospective bidders;

- Negotiated and communicated with various bidders with respect to diligence questions, transaction parameters, the terms of proposed sale transactions, and definitive documentation for the same;

- Attended numerous mediation sessions with Judge Isgur and various stakeholder groups, including the Creditors' Committee, Ad Hoc Group, ABL Lenders, and other parties in interest, to facilitate the sale processes;

- Engaged in extensive negotiations with the Ad Hoc Group, ABL Lenders, and Onset resulting in a settlement on allocation of proceeds that facilitated multiple going-concern sales;

- Drafted, filed, and obtained Court approval of the *Emergency Motion for Order (A) Approving Sale Transaction for Debtors' Walbro Assets, (B) Approving Assumption, Assignment, and Sale of Certain Contracts and Unexpired Leases, and (C) Granting Related Relief* (Docket No. 2081) (the "**Walbro Sale Motion**"), for the sale of the Debtors' Walbro business

for $50 million (plus certain assumed liabilities) which preserved approximately 600 jobs;

- Drafted, filed, and obtained Court approval of the *Emergency Motion for Order (A) Approving Sale Transaction for Certain of the Debtors' Intellectual Property and Related Assets, (B) Approving Assumption, Assignment, and Sale of Certain Executory Contracts, and (C) Granting Related Relief* (Docket No. 2236), for the sale of intellectual property related to three (3) of the Debtors' business lines—Wipers, Strongarm, and Filters and Plugs—for $25 million in cash proceeds (plus certain assumed liabilities);

- Drafted, filed, and obtained Court approval of the *Emergency Motion of the Debtors for Entry of an Order Pursuant to Section 363 of the Bankruptcy Code (I) Approving and Authorizing the Debtors to Enter Into and Perform Under the Consulting Agreement; (II) Authorizing the Sale of Wind Down Assets Free and Clear of All Liens, Claims, and Encumbrances; and (III) Granting Related Relief* (Docket No. 2216) (the "**Wind Down Motion**"), seeking Court approval of entry into a consulting agreement and authority to liquidate certain inventory and accounts receivable as part of a wind down of certain of Debtors' remaining North American businesses, conducted research in connection therewith, and negotiated resolutions to informal comments received to the proposed order;

- Obtained Court approval (Docket No. 2399) of the sale of certain intellectual property to PGI Northstar LLC and Premium Guard Incorporated (collectively, "**PGI**"), drafted and filed a reply to objections filed in connection therewith (Docket No. 2325), and coordinated, negotiated, and drafted definitive documentation regarding follow-up asset sales of related assets to purchaser pursuant to the Wind Down Order;

- Attended to post-closing obligations arising from the Walbro and PGI sale transactions, including entity name changes, governance and equity sale documentation, real property transfer taxes, foreign intellectual property assignment and recordation matters, the transfer of e-commerce and advertising accounts, systems access, and books and records, and the allocation and distribution of the proceeds of the follow-on sale to PGI;

- Drafted, filed, and obtained Court approval of the *Emergency Motion for Order (A) Approving Sale Transaction for Debtors' TMD Business Line, (B) Approving Assumption, Assignment, and Sale of Certain Contracts and Unexpired Leases, and (C) Granting Related Relief* (Docket No. 2590), for the going-concern sale of TMD for approximately $80 million which preserved approximately 600 jobs, including drafting the reply to responses filed in connection therewith (Docket No. 2651), coordinating with several objecting parties regarding proposed cure costs and comments, and negotiating and drafting the purchase agreement, transition services

agreement, disclosure schedules, and ancillary transaction documents for the sale of TMD;

- Drafted, filed, and obtained Court approval of (i) the *Emergency Motion for Order (A) Approving Sale Transaction for Debtors' Horizon North America Business Line, (B) Approving Assumption, Assignment, and Sale of Certain Contracts and Unexpired Leases, and (C) Granting Related Relief* (Docket No. 2711), for the going-concern sale of the Debtors' Horizon North America business line for approximately $64 million, and (ii) the settlement and sale agreement between Debtor and Horizon non-Debtor subsidiaries based in Europe and Australia ("**Horizon Europe**") (Docket No. 2719), including supporting declarations (Docket Nos. 2720 and 2723), a motion to file related commercially sensitive information under seal (Docket No. 2725), preparing intercompany claim and collateral analyses in connection with the Horizon Europe sale and settlement, negotiating definitive documentation and mutual release provisions with various parties including Horizon Europe, the DIP Lenders, the ABL Lenders, and Onset, and managing and advising the Debtors in effectuating the closing process for the Horizon North America sale transaction and Horizon Europe settlement, thereby resolving intercompany and collateral issues relating to the Horizon Europe separation;

- Negotiated with key OEM customer regarding potential going-concern sale or, alternatively, purchase of equipment related to assets located in Mexico, including analyzing cross-border concerns and tax implications of the same;

- Drafted and negotiated purchase agreements, sale orders, transition services agreements, disclosure schedules, and other transaction documents in connection with the sale transactions, and discussed related matters with stakeholder groups, including the Creditors' Committee, ABL Lenders, Ad Hoc Group, and other parties in interest;

- Conducted due diligence and legal research regarding the Debtors' assets and business lines, including with respect to operational needs, executory contracts, organizational structure, real property, intellectual property, permits, data privacy, ownership issues, employee issues, purchase price allocation, cross-border regulatory and tax issues, customs and trade issues, and the separation of assets relevant to multiple business units;

- Prepared cure schedules and adequate assurance packages in connection with the assumption and assignment of executory contracts and unexpired leases, negotiated and prepared for potential litigation with counterparties regarding the same, and filed and served notices of cure costs and adequate assurance information in connection with the sale transactions;

- Prepared for hearings to approve sale transactions, including the preparation of witnesses, declarations, exhibits, demonstratives, and hearing materials,

and filed agendas, witness and exhibit lists, replies, responsive pleadings to objections, and other pleadings in advance of sale hearings;

- Managed sale closing processes in connection with asset sales, including preparing closing checklists, coordinating closing logistics, drafting and executing consents, resolutions, and disclosure schedules, ensuring proper flow of funds, and coordinating signing processes;

- Coordinated with Hilco and the Debtors' other advisors regarding the liquidation of certain remaining inventory, machinery and equipment, intellectual property, and real estate pursuant to the Wind Down Order (such sales, collectively, the "**Wind Down Sales**"), including negotiating and documenting Hilco's engagement for Wind Down Sales, negotiating a related engagement arrangement with CarVal, coordinating with parties in interest regarding objections and comments thereto, and drafting and filing notices expanding the list of business units covered by the Wind Down Order (Docket Nos. 2686 and 2829);

- Negotiated the Wind Down Order with multiple stakeholders, including the ABL Lenders, the Ad Hoc Group, certain lenders and other financing parties of the Converted SPV Debtors, landlords, and other parties in interest, and drafted transaction documentation and memoranda for going-concern, asset, and liquidation sales, including related form bills of sale, side letters, and Wind Down Sale notices;

- Negotiated and documented numerous Wind Down Sales, including the Wind Down Sales of the Debtors' Dalton facility and the Jasper Rubber assets, together with related letters of intent, bills of sale, site access agreements, and landlord side letters where applicable;

- Negotiated, drafted, and filed the *Stipulation and Agreed Order Regarding Proceeds Subject to the Wind Down Order* (Docket No. 3683), resolving the allocation of the proceeds of Wind Down Sales of machinery and equipment among the Debtors' secured lenders and other parties asserting interests in such proceeds, and negotiated and documented engagement arrangements with Hilco and Onset for the Wind Down Sales of certain machinery and equipment and of the Debtors' assets located in Mexico;

- Drafted marketing materials and populated VDR in connection with the marketing of estate claims and causes of action, drafted and reviewed related non-disclosure agreements, engaged with multiple potential bidders to solicit bids in connection with the sale of estate claims, and analyzed credit bid and bid approval issues;

- Conducted lien and UCC diligence, compiled permitted-liens schedules, and coordinated lien releases in connection with the sale transactions;

- Analyzed purchase price and sale-proceeds allocation issues in coordination with the Debtors' other advisors and the applicable OEMs;

- Analyzed cross-border data privacy and data transfer issues arising from the sale transactions and negotiated related data processing agreements and addenda;

- Coordinated with local counsel in India and Mexico regarding cross-border signing and closing deliverables for the sale transactions, including share transfers, director resignations and appointments, powers of attorney, apostilles, and local filings;

- Prepared, negotiated, and coordinated the recordation of foreign intellectual property assignments, powers of attorney, and domain name transfers arising from the sale transactions across numerous jurisdictions;

- Communicated amongst the various Weil practice groups, the Debtors, the Debtors' other advisors, and local counsel to the RoW Entities, and constituents and their advisors to coordinate strategy, information flow, and other issues relating to the sale process; and

- Coordinated the transition of wind-down and liquidation sale workstreams to Katten, as successor wind-down counsel to the Debtors, and, following the Court's ruling directing conversion of the chapter 11 cases, to the chapter 7 trustee, including preparing transition memoranda, summary charts, document compilations, and protocols regarding the Wind Down Sales and the disposition of sale proceeds.

d. <u>Aequum Matters (Task Code 004)</u>
Fees: $1,221,534.00; Total Hours: 865.40

- Corresponded and negotiated with counsel to, among others, Aequum Capital Financial II, LLC, as administrative agent and collateral agent, and certain lenders (collectively, "**Aequum**") regarding adequate protection, surcharge expenses, stay relief, and related disputes throughout the chapter 11 cases;

- Drafted, negotiated, and obtained Court approval of the *Stipulation and Agreed Order Regarding Adequate Protection of Aequum Capital Financial II, LLC and the Aequum Lenders* (Docket No. 215) and the *Stipulation and Agreed Order Regarding Adequate Protection of the Aequum Secured Parties* (Docket No. 1018);

- Drafted and filed the *Debtors' Objection to Aequum Capital Financial LLC's (I) Motion to Enforce Interim Stipulation, and (II) Demand for Adequate Protection* (Docket No. 811), including declarations in support

thereof (Docket Nos. 812 and 836), and defended the deposition of Debtors' declarant in connection therewith;

- Researched and analyzed Aequum's motions to dismiss the SPV chapter 11 cases and to appoint a chapter 11 trustee, and prepared case law summaries and strategy memoranda in connection therewith;

- Drafted an objection to motions to lift the automatic stay and prohibit use of cash collateral prior to reaching a stipulation and agreed order;

- Drafted, negotiated, and obtained Court approval of the *Agreed Order Granting Emergency Motion of Aequum Capital Financial II LLC for Entry of an Order Granting Relief From the Automatic Stay* (Docket No. 1820);

- Drafted and sent a demand letter seeking reimbursement of certain surcharges, and coordinated among Weil practice groups—including Restructuring, Litigation, and Labor—regarding the Aequum lift-stay order, inventory facility issues, and related WARN Act considerations;

- Reviewed and responded to Aequum's discovery requests, including requests for production, interrogatories, and deposition notices, across both the adequate protection litigation and the Aequum Adversary Proceeding, and coordinated with counsel to Bank of America, N.A. ("**BofA**") and other parties regarding deposition scheduling and document productions;

- Prepared for and defended depositions in the Aequum Adversary Proceeding between BofA and Aequum, including preparation of witnesses and deposition materials;

- Prepared for and attended hearings and a court conference regarding the Aequum Adversary Proceeding, including hearings on expedited discovery and BofA's application for a preliminary injunction;

- Analyzed the Creditors' Committee's motion for standing to pursue claims against Aequum (Docket No. 2881) and related lien validity issues, and coordinated with the Special Committee and its counsel regarding the same;

- Reviewed and analyzed the adversary complaint filed by the ABL Lenders and the Ad Hoc Group against Aequum in the Aequum Adversary Proceeding, and drafted, revised, and filed the Debtors' answer to the same, and compiled evidentiary support for the admissions therein in coordination with counsel to the other defendants; and

- Corresponded with conflicts counsel to the Converted SPV Debtors regarding the Aequum Adversary Proceeding.

e. CarVal Matters (Task Code 009)
Fees: $2,853,577.50; Total Hours: 1,996.40

- Corresponded and negotiated with CarVal's counsel regarding adequate protection of the CarVal lenders, and corresponded with CarVal's counsel regarding certain inventory issues, facility leases, and sale issues arising from the Carnaby SPV operations;

- Reviewed and responded to CarVal's discovery requests, including requests for production, interrogatories, and deposition notices, coordinated document productions and managed review with e-discovery vendors, and prepared responses and objections thereto;

- Drafted, negotiated, and obtained Court approval of the *Stipulation and Agreed Interim Order Regarding Adequate Protection Among Debtors and Carnaby Inventory II, LLC and Carnaby Inventory III, LLC* (Docket No. 230) and the *Further Stipulation and Agreed Interim Order Regarding Adequate Protection Among Debtors and Carnaby Inventory II, LLC and Carnaby Inventory III, LLC* (Docket No. 1363);

- Drafted and filed the *Debtors' (I) Objection to Emergency Motion of the Carnaby Secured Lenders for Relief from the Automatic Stay and (II) Supplemental Reply in Further Support of the Debtors' Request to Use Alleged Cash Collateral of the Carnaby Secured Lenders* (Docket No. 810), including declarations in support thereof (Docket Nos. 812 and 836), and defended the deposition of Debtors' declarant in connection therewith;

- Drafted and filed the *Debtors' Objection to Emergency Motion of the Carnaby Secured Lenders to Dismiss the Carnaby II and Carnaby III Chapter 11 Cases, or in the Alternative, the Appointment of a Chapter 11 Trustee or for Adequate Protection* (Docket No. 950);

- Drafted, negotiated, and filed the *Agreed Order (I) Granting Carnaby Secured Lenders' Motion for Relief From the Automatic Stay, and (II) Withdrawing Without Prejudice the Carnaby Secured Lenders' Motion to Dismiss* (Docket No. 1651-1);

- Prepared for and defended multiple depositions in connection with CarVal's motion to dismiss certain Debtors' chapter 11 cases, and for relief from the automatic stay, including preparation of witnesses and deposition materials;

- Drafted an objection to motions to lift the automatic stay and prohibit use of cash collateral prior to reaching a stipulation and agreed order;

- Coordinated expert valuation analysis and reviewed expert reports in connection with the adequate protection disputes, including preparation of valuation stipulations;

- Conducted lien diligence, compiled UCC searches for the Carnaby SPVs, and analyzed CarVal lien and collateral issues;
- Corresponded with OEM's counsel regarding certain CarVal-related issues, and drafted and sent demand letter seeking reimbursement of certain surcharges; and
- Engaged in extensive negotiations with CarVal, Onset, the ABL Lenders, and Ad Hoc Group regarding resolution of competing lift stay motions filed by CarVal and Onset, and prepared for and attended hearings on CarVal's motions to dismiss and for relief from stay.

f. Case Administration (Docket, WIP and Calendar Updates Only) (Task Code 010)
Fees: $926,294.00; Total Hours: 689.60

- Drafted notice of commencement of the chapter 11 cases and filed and coordinated service of same;
- Coordinated with Kroll to update and file master service lists;
- Prepared and regularly updated case calendars, motion trackers, comprehensive work-in-process lists, and other chapter 11 resources for the Debtors, Weil, and the Debtors' other advisors;
- Reviewed, monitored, and addressed a voluminous docket of more than 3,700 entries in the chapter 11 cases, together with the dockets of the related adversary proceedings and the Converted SPV Debtors' chapter 7 cases, and prepared and distributed regular docket updates and hearing transcripts to the Debtors, Weil, and the Debtors' other advisors;
- Responded to inquiries received through the Debtors' hotline and from other parties in interest, reviewed Kroll's inquiry logs, and prepared periodic summaries of creditor inquiries; and
- Prepared and maintained organizational charts reflecting the Debtors' corporate structure and the effect of the sale transactions.

g. Chapter 11 Plan / Confirmation / Implementation (Task Code 011)
Fees: $17,998,759.50; Total Hours: 11,045.00

- Conducted research and analysis regarding legal issues and strategy relating to the Plan, plan term sheets, potential exit strategies, and plan confirmation, and corresponded with the Debtors, the Debtors' other advisors, and other parties in interest regarding the same;

- Drafted, revised, negotiated, and filed the Plan and multiple revised versions thereof (Docket Nos. 2544, 2678, 2733, 2784, 2907, 2981, 3019, and 3448);

- Engaged in extensive negotiations with the Ad Hoc Group, the ABL Lenders, the Creditors' Committee, and other parties in interest regarding the Plan structure, claims treatment, settlements, releases, implementation mechanics, and other Plan-related issues;

- Engaged in numerous mediation sessions with the Creditors' Committee and the Ad Hoc Group regarding case resolution strategies and negotiated term sheets regarding the same;

- Drafted, negotiated, and filed numerous documents contained in the Plan Supplement (Docket No. 3046), including the Litigation Trust Agreement, the DIP Collateral Trust Agreement, the ABL Collateral Trust Agreement, the Litigation Trust Backstop Agreement, the Schedule of Retained Causes of Action, the schedule of Specified Non-Released Parties, and disclosures regarding the Wind Down Administrator and the Claims Ombudsman (each as defined in the Plan), and negotiated revised forms of certain of such documents and filed an amended Plan Supplement (Docket No. 3605);

- Negotiated and finalized agreed confirmation and wind-down budgets with the Ad Hoc Group and the ABL Lenders, and coordinated with the Ad Hoc Group, the ABL Lenders, and the proposed Wind Down Administrator regarding the wind-down budget, the Wind Down Administrator's duties and engagement, and post-confirmation cash application and closing mechanics;

- Coordinated the retention of Marc S. Kirschner as an expert consultant in connection with confirmation, including conducting research regarding expert retention structures, conferring with Mr. Kirschner regarding the scope of the engagement, reviewing and revising the related engagement letter, and drafting, filing, and obtaining Court approval of the application to retain Mr. Kirschner (Docket No. 3636);

- Prepared for the hearing on confirmation of the Plan, including drafting and revising the proposed confirmation order, supporting declarations (including the Moore Declaration and Kirschner Declaration), evidence maps, witness outlines, and supporting evidentiary materials;

- Drafted, finalized, and filed the Moore Declaration (Docket No. 3188) and the Kirschner Declaration (Docket No. 3190);

- Negotiated with parties in interest and revised the proposed order confirming the Plan, resolved numerous objections in advance of the

Combined Hearing, and filed the *Notice of Filing of Revised Proposed Confirmation Order* (Docket No. 3604);

- Conducted legal research in connection with, drafted, and filed the Confirmation Brief (Docket No. 3426) and the Confirmation Reply (Docket No. 3433), together with a response chart addressing each of the numerous objections to final approval of the Disclosure Statement and confirmation of the Plan (Docket No. 3461), and negotiated consensual resolutions of numerous objections to the Plan, including with PBGC, the Unions, the Retiree Committee, and other parties in interest;

- Coordinated with the Debtors' other advisors regarding claims, recovery, and distribution analyses in support of confirmation;

- Drafted and served responses and objections to Plan-related discovery requests received from Katsumi, Evolution, the LAM Parties, Onset, and other parties in interest, coordinated related document productions, drafted and filed the Debtors' omnibus objection (Docket No. 3235) to the emergency motions to compel filed by the LAM Parties and Katsumi (Docket Nos. 3210 and 3211) and the joinders thereto, and prepared the Debtors' fact and expert witnesses for, and defended, the depositions noticed by objectors in connection with confirmation;

- Prepared for and prosecuted the Combined Hearing, consisting of the three-day evidentiary hearing and closing arguments, including drafting and filing the Debtors' oppositions to the emergency motion of Patrick James and the related entities to exclude portions of the Moore Declaration and the Kirschner Declaration (Docket No. 3414) and to the motions in limine and motions to exclude filed by Onset, the LAM Parties, and other objectors (Docket No. 3463), preparing direct and redirect examination outlines and demonstratives, presenting the testimony of the Debtors' fact and expert witnesses, and responding to evidentiary objections and motions in limine;

- Following the Court's ruling denying confirmation of the Plan and directing conversion of the chapter 11 cases (Docket No. 3710), drafted and filed proposed forms of the Conversion Order, negotiated the terms thereof with numerous parties in interest, reviewed and addressed objections and comments thereto, and obtained entry of the Conversion Order (Docket No. 3748), which, among other things, established the procedures for the payment of chapter 11 professional fees, the turnover of the Debtors' books and records, and the transition of the administration of the Debtors' estates to the chapter 7 trustee;

- Coordinated the orderly transition of the administration of the Debtors' estates to the chapter 7 trustee, including preparing transition materials and presentations summarizing the Debtors' ongoing matters, pending adversary proceedings, and financing arrangements, coordinating the

preservation and turnover of documents and data, and preparing resignation letters for the Debtors' directors, managers, and officers;

- Negotiated a potential joint prosecution arrangement with the SPV Debtors' counsel and other stakeholders, including preparing and revising a related term sheet and agreement;

- Coordinated with the Ad Hoc Group and proposed Litigation Trustee in connection with the potential transfer of estate claims and related materials to the Litigation Trust, including preparing transition packages and presentations regarding potential estate claims and causes of action, meeting with the proposed Litigation Trustee, and populating a related VDR;

- Analyzed securities law reporting, registration, and transferability considerations in connection with the Litigation Trust interests and the Plan;

- Reviewed and summarized the Debtors' supply chain financing agreements in connection with the settlements embodied in the Plan;

- Prepared multiple presentations for parties-in-interest regarding Plan strategy, case resolution, and the Litigation Trust transition; and

- Participated in recurring working-group calls with the Debtors' other advisors and responded to creditor inquiries regarding the Plan and treatment thereunder.

h. <u>Corporate Governance (Including Board Meetings) (Task Code 012)</u>
Fees: $4,184,501.00; Total Hours: 2,557.10

- Prepared materials for, and participated in, regular and ad hoc meetings of the special committee of the board of managers of First Brands Group Holdings, LLC, First Brands Group Intermediate, LLC, First Brands Group, LLC, and Viceroy Private Capital, LLC (the "**Special Committee**") regarding, among other things, the chapter 11 cases, financing options and cash flows, multiple sale transactions, the Horizon Europe settlement, the Plan process, wind-down matters, and DIP forbearance issues, drafted minutes for Special Committee meetings, and advised the Special Committee regarding the chapter 11 cases, including with respect to fiduciary duty considerations, transactional authority, governance actions required to authorize and consummate multiple sale and settlement transactions, and Plan formulation and negotiations, and provided regular updates regarding the Plan negotiations, ongoing sale and settlement processes, wind-down activities, litigation matters, and employee matters, among other matters;

- Established a subcommittee of the Special Committee of Viceroy Private Capital, LLC to oversee and take certain actions on behalf of the Converted SPV Debtors;

- Conferred with the Debtors and the Debtors' other advisors, and strategized internally, regarding, among other things, the resignation and appointment of officers, managers, and directors of certain Debtors and their affiliates to facilitate the negotiation, approval, and consummation of sale transactions and the execution of related definitive agreements, and coordinated global board meetings with directors of international affiliates;

- Prepared and reviewed corporate governance documents, including written consents, board and Special Committee resolutions, and officer and director appointments and replacements, and updated organizational charts, in each case to authorize and effectuate the sales of TMD, Horizon, Walbro, the PGI transactions, the Horizon Europe settlement, the wind down of the Debtors' remaining operations and assets, and other sale and settlement transactions and related releases;

- Following the Court's ruling directing conversion of the chapter 11 cases, prepared resignation letters for the directors, managers, and officers of the Debtors in connection with the transition of administering the Debtors' estates to the chapter 7 trustee; and

- Addressed ongoing administrative and regulatory compliance matters, including coordinating with CT Corporation and A&M regarding annual reports and good standing certificates, managing know-your-customer (KYC) requirements for the Debtors' entities, and preparing Walbro name change documents.

i. <u>Customer / Vendor / Supplier / Reclamation / 503(b)(9) Issues (Task Code 013)</u>
Fees: $2,702,565.00; Total Hours: 1,970.60

- Filed and obtained interim and final Court approval of the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to Pay (A) Critical Vendor Claims, (B) Non-U.S. Vendor Claims, (C) Lien Claims, and (D) 503(b)(9) Claims, (II) Confirming Administrative Expense Priority of Undisputed Outstanding Prepetition Orders, and (III) Granting Related Relief* (Docket No. 13) (the "**Critical Vendor Motion**");

- Filed and obtained interim and final Court approval of the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to Honor Certain Prepetition Obligations to Customers and Continue Customer Programs in the Ordinary Course of Business and (II) Granting Related Relief* (Docket No. 15) (the "**Customer Programs Motion**");

- Negotiated resolutions to informal comments received to the proposed order approving the Critical Vendor Motion and Customer Programs Motion, and facilitated responses to diligence requests from stakeholders regarding same;

- Negotiated, drafted, filed, and obtained Court approval of the *Emergency Motion of Debtors for Order (I) Approving Funding Arrangement with Certain OEM Customers; (II) Modifying the Automatic Stay; and (III) Granting Related Relief* (Docket No. 1763) (the "**OEM Funding Motion**"), and drafted and filed a declaration in support thereof (Docket No. 1764), establishing a weekly operational funding arrangement with the Debtors' OEM customers necessary to pursue going-concern sales of certain of the Debtors' business lines, including the payment of professional fees, and avoiding a complete shutdown of the Debtors' North American operations;

- Coordinated with counsel for the participating OEMs regarding ongoing performance under the OEM funding arrangements, including additions of new participating OEMs, customer-by-customer funding allocations, and resolution of issues arising in the weekly operational funding cycles;

- Negotiated and drafted agreements with OEM customers resolving inventory diminution payment and funding true-up issues arising under the OEM funding arrangements;

- Corresponded with numerous contract counterparties regarding informational questions, requests, demands, and notices, responded to demands regarding potential violations of the automatic stay, requests for reclamation of estate property, and abandonment of various goods, and coordinated with the Debtors and the Debtors' other advisors regarding various questions, requests, demands, and notices received from vendors and customers;

- Worked closely with the Debtors' other advisors to resolve supply-chain blockages by negotiating interim and long-term arrangements with vendors and OEM customers, and ensured the continued performance of critical services for, and provision of critical supplies to, the Debtors in the ordinary course of business following the commencement of the chapter 11 cases;

- Drafted and negotiated various trade agreements with suppliers and vendors, vendor stipulations, automatic stay letters, customer indemnification agreements, and other correspondence to document commercial understandings to resolve vendor claims and disputes, including to abandon products and equipment to logistics providers where necessary;

- Conducted diligence and research regarding various matters related to vendor and customer issues, including review and analysis of various vendor and customer contracts and related asserted claims, preparing recoupment and setoff analysis, preparing accounts receivable reconciliations, and preparing access and tooling retrieval agreements;

- Negotiated with vendors, suppliers, and customers regarding continued performance, open payment issues, claims issues, and maintenance or resolution of commercial relationships;

- Participated on regular vendor and OEM customer management calls with the Debtors and the Debtors' other advisors, and maintained trackers of vendor and customer inbound inquiries and coordinated with the Debtors and the Debtors' other advisors regarding responses to the same; and

- Prepared correspondence to vendors regarding the status of trade agreements, first-day motion compliance, and customer programs reporting.

j. DIP Financing / Cash Collateral / Cash Management (Task Code 014)
Fees: $7,390,318.00; Total Hours: 4,949.60

- Filed and obtained interim and final Court approval of the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Bank Accounts, (B) Implement Ordinary Course Changes to Cash Management System, and (C) Honor Certain Related Prepetition Obligations, (II) Granting Administrative Expense Priority for Postpetition Intercompany Claims, (III) Extending Time to Comply With Requirements of 11 U.S.C. § 345(b), and (IV) Granting Related Relief* (Docket No. 17) (the "**Cash Management Motion**"), negotiated with several counterparties to settle objections in connection therewith, and negotiated an agreement with the U.S. Trustee regarding compliance with section 345(b) of the Bankruptcy Code;

- Advised the Debtors regarding cash management matters, including the opening of new bank accounts, closing certain bank accounts, amending the bank account agent agreement, and compliance with the interim and final orders approving the Cash Management Motion;

- Corresponded, negotiated, and obtained a $1.1 billion financing commitment from Ad Hoc Group and maintained continued correspondence related to all open DIP financing and cash management matters with the Ad Hoc Group and the Creditors' Committee;

- Negotiated, drafted, filed, and obtained interim Court approval of the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral,*

*and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (Docket No. 49) (the "**DIP Motion**"), and drafted and filed declarations and supplemental declarations in support thereof (Docket Nos. 55, 62, 524, and 527);

- Negotiated, drafted, finalized, and filed the DIP Credit Agreement and related schedules, ancillary documents, and closing deliverables, including perfection certificates, secretary's certificates, and signature pages;

- Drafted and filed the *Debtors' Omnibus Reply to Objections to DIP Motion* (Docket No. 549);

- Prepared for and defended two (2) depositions of the Debtors' advisors in connection with objections to the DIP Motion;

- Researched, analyzed, and prepared legal arguments, evidence, and pleadings in connection with disputes regarding approval of the DIP Motion, including adequate protection;

- Negotiated with several counterparties to settle fifteen (15) combined objections, limited objections, and joinders in connection with the DIP Motion which culminated in the filing of the Final DIP Order;

- Coordinated responses to stakeholder discovery requests in connection with seeking approval of the Final DIP Order and created and maintained internal tracking materials regarding the same;

- Prepared for and attended contested hearing in connection with the Final DIP Order;

- Negotiated a global settlement by and among the Debtors, the DIP Lenders, the Ad Hoc Group, and the Creditors' Committee resolving the objections to the DIP Motion, which settlement was embodied in the Final DIP Order;

- Negotiated, drafted, filed, and obtained Court approval of the Final DIP Order;

- Negotiated, drafted, and executed an amendment to the DIP Credit Agreement;

- Drafted, reviewed, and revised the OEM Funding Arrangement term sheet, including multiple rounds of negotiations and correspondence with the ABL Secured Parties, Ad Hoc Group, Creditors' Committee, counsel to the OEMs, and other parties in interest, and negotiated and executed an addendum to the OEM Funding Arrangement term sheets;

- Prepared segregated account agreement and related budget in connection with OEM customer funding and corresponded with DIP Lenders regarding the customer segregated account;

- Reviewed and analyzed DIP reporting, DIP Order provisions, and DIP maturity considerations, and advised the Debtors regarding compliance with the DIP Order, including drafting internal compliance materials;

- Communicated among Weil practice groups, the Debtors, the Debtors' other advisors, and other constituents with respect to the Final DIP Order, DIP Credit Agreement, OEM funding proposal, and related reporting obligations;

- Corresponded with various stakeholders regarding surcharge letters and adequate protection issues, and drafted and revised surcharge demand letters to SPV lenders;

- Negotiated and drafted a DIP maturity extension term sheet and a related motion and documentation, analyzed and negotiated a forbearance under the DIP Credit Agreement with the Ad Hoc Group and the Creditors' Committee, drafted, filed, and obtained Court approval of the DIP Forbearance Stipulation (Docket No. 3506), and negotiated a further extension of the forbearance period thereunder;

- Negotiated, drafted, and coordinated the execution of an agency succession agreement and related fee letter with respect to the Debtors' sidecar term loan facility;

- Following the Court's ruling directing conversion of the chapter 11 cases, negotiated with the Ad Hoc Group and the ABL Lenders the provisions of the Conversion Order governing the funding of the Professional Fees Escrow Account and the continued liens of, and restrictions on the use of the cash collateral of, the DIP Lenders and the ABL Lenders following conversion;

- Analyzed and negotiated issues relating to ABL inventory, segregated sale proceeds, collateral, and relative lien priorities and reviewed prior orders and stipulations in connection therewith;

- Analyzed letter of credit issues, including with respect to the RBC letters of credit and a related stipulation;

- Conducted lien and collateral diligence, including review of UCC-1 financing statements to determine priority and status of liens, bringdown lien searches, UCC termination review, and the preparation of payoff letters and lender lists, and coordinated with local counsel regarding foreign collateral and guarantor matters;

- Reviewed information related to deposit account control agreements ("**DACAs**"), drafted and reviewed DACA forms and questionnaires, corresponded with counterparties on DACA-related issues, and created and maintained internal DACA tracking documents; and

- Coordinated DIP post-closing deliverables, including insurance requirements, perfection certificate updates, and foreign entity governance documentation.

k. Disclosure Statement / Solicitation / Voting (Task Code 015)
Fees: $3,356,722.00; Total Hours: 2,257.10

- Drafted, reviewed, and revised the *Emergency Motion of Debtors for Entry of Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Notice and Objection Procedures for Confirmation of Plan; (V) Establishing Global Settlement Election Procedures; and (VI) Granting Related Relief* (Docket No. 2546);

- Strategized and conducted legal research in connection with the Disclosure Statement and solicitation of the Plan, including consideration of precedent cases, development of the solicitation schedule, and analysis of various legal issues regarding solicitation procedures and voting mechanics;

- Drafted, revised, negotiated, and filed the Disclosure Statement and multiple revised versions thereof (Docket Nos. 2545, 2692, 2738, 2786, 2912, and 3020), coordinated internally and with the Debtors' other advisors regarding same, filed numerous pleadings in connection therewith, and obtained conditional approval thereof (Docket No. 2990);

- Reviewed and analyzed objections to the Disclosure Statement, prepared objection response charts and supporting precedent research, and negotiated with objecting parties to resolve Disclosure Statement issues;

- Drafted, negotiated, revised, and filed the proposed order conditionally approving the Disclosure Statement attaching the Solicitation and Voting Procedures, in addition to all other procedures, forms, and notices to be sent out with the Disclosure Statement in connection with solicitation and multiple revised versions thereof (Docket Nos. 2546-1, 2779, and 2914-1);

- Developed, conducted legal research in connection with, and documented procedures for implementing the proposed Administrative Expense Claims Consent Program and the Preference Settlement;

- Participated on multiple calls and coordinated with the Debtors' claims, noticing, and solicitation agent and the Debtors' other advisors regarding the solicitation of votes on the Plan, including the preparation of notices, ballots, opt-in forms, solicitation packages, and the solicitation and confirmation timeline, and responded to creditor solicitation inquiries;

- Prepared and served solicitation materials, coordinated with Kroll regarding solicitation and voting procedures, and commenced solicitation of votes on the Plan;

- Coordinated the tabulation of ballots cast on the Plan with the Debtors' claims, noticing, and solicitation agent and prepared and filed the solicitation agent's declaration regarding the solicitation of votes and the tabulation of ballots cast on the Plan (Docket No. 3351);

- Reviewed and coordinated service of the Creditors' Committee's position letter for inclusion in the solicitation packages, and negotiated and drafted stipulations under Bankruptcy Rule 3018(a) resolving voting issues (Docket Nos. 3071, 3154, 3199, and 3220) and conducted legal research in connection therewith;

- Drafted and prepared the Liquidation Analysis in coordination with the Debtors' other advisors, and drafted declarations in support of conditional approval of the Disclosure Statement (Docket Nos. 2621 and 2696); and

- Prepared witness and exhibit lists, demonstratives, and witness preparation materials for the hearings on conditional approval of the Disclosure Statement.

l. Employee Issues / Communications (Task Code 016)
Fees: $10,488,178.00; Total Hours: 6,016.00

- Filed and obtained Court approval of the *Emergency Motion of Debtors for Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Employee Benefits, and Other Obligations and (B) Continue Compensation and Benefits Programs in Ordinary Course, and (II) Granting Related Relief* (Docket No. 16), and negotiated resolutions to informal comments received to the proposed order approving same;

- Filed and obtained Court approval of the (i) *Stipulation, Agreement, and Order Extending Duration of Walbro Collective Bargaining Agreement* (Docket No. 583) and (ii) *Stipulation, Agreement, and Order Extending Duration of Collective Bargaining Agreement* (Docket No. 598);

- Entered into separation agreements and issued termination letters, as applicable, with respect to certain members of the Debtors' prepetition senior management team;

- Prepared a proposed key employee retention plan (the "**KERP**") and related materials summarizing the proposed KERP, drafted KERP agreement, drafted motion to seek approval of the proposed KERP, analyzed KERP-related issues, and conducted research in connection therewith;

- Analyzed and addressed employee-related matters under state, federal, and foreign law in connection with, among other things, employee benefits, pension plans, deferred compensation, collective bargaining and union issues, compensation and bonuses, retirement plans, employee termination, furlough, and severance, employee resignation and separation, and facility closures, and conferred with the Debtors, the Debtors' other advisors, the Debtors' stakeholders, and internally regarding the same;

- Analyzed and addressed issues arising under the Employee Retirement Income Security Act of 1974 and the Worker Adjustment and Retraining Notification Act ("**WARN**");

- Analyzed and addressed WARN issues in connection with facility closures, including preparing and issuing WARN notices and extension notices, coordinating with foreign counsel regarding equivalent laws in non-U.S. jurisdictions, analyzing WARN considerations relating to wind-down retention structures, and coordinating with the Weil litigation team regarding the WARN Adversary Proceedings (as defined herein);

- Corresponded with the Debtors, the Debtors' other advisors, and the trustee regarding deferred compensation trust, and drafted and filed the *Motion of Debtors for an Order (I) Directing Trustee to Turn Over and Deliver Trust Assets to the Debtors, (II) Authorizing the Debtors to Exercise Ownership Rights Over Such Assets, (III) Authorizing Termination of Trust, (IV) Authorizing Termination of Deferred Compensation Plan Effective as of Petition Date, and (V) Granting Related Relief* (Docket No. 3109), and obtained Court approval of same (Docket No. 3372);

- Prepared for and attended settlement conferences with an administrative law judge to negotiate potential resolution to claims asserted in a National Labor Relations Board proceeding on behalf of two former employees, and drafted, revised, and obtained Court approval of settlement documentation regarding same (Docket No. 1991);

- Prepared and analyzed documents and agreements, including, among others, (i) master service agreements in relation to intellectual property and systems, staffing and employment matters, accounting services, and tax services; (ii) consulting and employment agreements; (iii) a draft transition services agreement with respect to the Debtors and certain non-Debtor affiliated entities, and (iv) a master services agreement for provision of temporary employees to Debtors;

- Advised on labor issues related to the Debtors' sale processes, including (i) reviewing asset purchase agreements and other sale-related documents with respect to employee-related issues, reviewing employee lease agreements, reviewing issues related to transition services agreements and shared services agreements, reviewing inquiries and letters from employees related to the sale processes and preparing responses thereto (e.g., Docket No. 1999), (ii) analyzing issues related to union assumption and successor liability, (iii) employee transition mechanics, employee leasing arrangements, and pension plan transfers, and (iv) negotiating stipulations extending the duration of certain collective bargaining agreements (e.g., Docket No. 2264);

- Responded to inquiries from the Department of Labor and reviewed state agency submissions;

- Prepared and negotiated settlement agreements and stipulations by and among parties, including the Debtors, unions, employees, the Equal Employment Opportunity Commission, and the National Labor Relations Board, and negotiated and drafted employee-related stipulations and agreements (Docket Nos. 2275, 2319, and 2320);

- Negotiated, drafted, filed, and obtained Court approval of the *Stipulation, Agreement, and Order Approving Memoranda of Agreement Regarding Paid Time Off* (Docket No. 2609);

- Negotiated, drafted, and filed the *Emergency Motion of Debtors for Order (I) Authorizing and Directing the United States Trustee to Appoint a Committee of Retired Employees and (II) Granting Related Relief* (Docket No. 3017) (the "**Retiree Committee Motion**") and obtained Court approval of same (Docket No. 3060);

- Analyzed, conducted legal research, and prepared memoranda on issues related to collective bargaining agreements and modification of the Debtors' retiree benefit arrangements under section 1114 of the Bankruptcy Code, including drafting and filing the Retiree Benefits Motion (Docket No. 3194), preparing section 1114 settlement proposals and term sheets, and negotiating the same with the Unions and the Retiree Committee, which culminated in consensual settlement agreements with each of UAW, USW, and the Retiree Committee and entry of the Retiree Benefits Order (Docket No. 3472);

- Advised the Debtors regarding the termination of various pension plans, including negotiating and drafting a settlement term sheet and proposed stipulation with PBGC, and coordinating with PBGC regarding notices of intent to terminate, plan trusteeship, and related communications involving regulatory issues, and finalized and filed the *Stipulation and Agreed Order Between Debtors and PBGC* (Docket No. 3283);

- Advised the Debtors regarding the wind down and termination of employee benefit plans, including the Debtors' 401(k) plan, short-term disability plan, group health plan run-out arrangements and a related escrow, and retiree life, vision, and dental programs, and analyzed COBRA controlled-group liability issues;

- Following the Court's ruling denying confirmation of the Plan and ordering conversion of the chapter 11 cases, analyzed the impact of conversion on the Debtors' benefit plans and obligations under the Retiree Benefits Order, and prepared comprehensive summaries of each employee benefits workstream to facilitate the transition of administering the Debtors' estates to the chapter 7 trustee; and

- Prepared contractor and consulting agreements to retain wind-down personnel following facility closures and advised the Debtors regarding related compensation and paid-time-off matters, and negotiated, reviewed, and revised same in coordination with industry consultants.

m. <u>Evolution Matters (Task Code 017)</u>
Fees: $4,520,313.00; Total Hours: 3,147.10

- Negotiated, filed, and obtained Court approval of the *Stipulation and Agreed Interim Order Regarding Adequate Protection Among Debtors and Evolution Credit Partners* (Docket Nos. 216 and 609), and corresponded with Evolution's counsel regarding order approving the Factoring Procedures Motion (Docket No. 1133);

- Analyzed and strategized response to Evolution's *Complaint* and *First Amended Complaint* (the "**Evolution Adversary Proceeding**") (Adv. Pro. No. 25-03800, Docket Nos. 1 and 9), including reviewing pleadings, developing litigation strategy, and conducted research regarding claims asserted therein;

- Reviewed Bank of America, N.A.'s motion to dismiss the Evolution Adversary Proceeding (Adv. Pro. No. 25-03800, Docket No. 27) and drafted and filed *Debtors' Joinder to Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff Evolution Credit Opportunity Master Fund II-B, L.P.'s First Amended Complaint* (Adv. Pro. No. 25-03800, Docket No. 32);

- Drafted and filed the *Debtors' (I) Objection to Evolution's Emergency Motion to Enforce Stipulation and Agreed Order Regarding Adequate Protection Among Debtors and Evolution Credit Partners and (II) Emergency Request for Use of Alleged Cash Collateral* (Docket No. 1280) and two declarations in connection therewith (Docket Nos. 1285 and 1287);

- Drafted and sent a demand letter seeking reimbursement of certain surcharges;

- Communicated among Weil practice groups, co-advisors, and other parties regarding Evolution litigation matters, including correspondence with the Ad Hoc Group and Creditors' Committee, among others, regarding Evolution's motion to convert certain chapter 11 cases to chapter 7, including participating in multiple calls in connection therewith;

- Drafted and filed the *Debtors' Memorandum of Law in Support of Motion to Dismiss Evolution's Adversary Complaint* (Adv. Pro. No. 26-03006, Docket No. 32) and the declaration and supporting exhibits in connection therewith (Docket No. 33);

- Drafted and filed the *Debtors' Response to Evolution's Emergency Motion for Entry of an Order Converting Chapter 11 Cases of Certain SPV Debtors to Chapter 7* (Docket No. 2283), and negotiated, drafted, and filed a motion and declaration in support of a settlement in connection with the consensual conversion of the chapter 11 cases of the Converted SPV Debtors to cases under chapter 7 of the Bankruptcy Code, and obtained Court approval of the same (Docket Nos. 2372 and 2373);

- Negotiated, drafted, filed, and obtained Court approval of the agreed *Order (I) Converting Chapter 11 Cases of Evolution SPV Debtors to Cases Under Chapter 7; and (II) Granting Related Relief* (Docket No. 2396);

- Defended the adversary proceeding filed by Evolution concerning the Debtors' non-factored receivables (Adv. Pro. No. 26-03006), including conducting lien and UCC diligence regarding Evolution's asserted security interests, obtaining a ruling granting the Debtors partial summary judgment finding that Evolution does not hold a perfected security interest in the non-factored receivables (Adv. Pro. No. 26-03006, Docket No. 67), and opposing Evolution's motion for leave to appeal (Adv. Pro. No. 26-03006, Docket No. 81), including presenting oral argument before the United States District Court for the Southern District of Texas in opposition thereto;

- Coordinated with the chapter 7 trustee appointed for the Converted SPV Debtors regarding turnover demands, document productions, accounts receivable matters, and related transition matters, and prepared final reports for the Converted SPV Debtors;

- Prepared and filed post-conversion schedules and a creditor matrix in connection with the Converted SPV Debtors' chapter 7 cases and prepared for and attended the section 341 meeting of creditors for the Converted SPV Debtors following conversion;

- Drafted, revised, served, and filed the *Debtors' Amended Answer to Plaintiffs' Complaint and Affirmative Defenses* (Adv. Pro. No. 26-03006, Docket No. 84) in the Evolution Adversary Proceeding I and responses and objections to Evolution's document requests and interrogatories;

- Responded to Evolution's demand for the segregation and turnover of postpetition accounts receivable collections and drafted and filed the Debtors' objection to Evolution's emergency motion to compel such segregation and turnover (Docket No. 3218);

- Drafted and filed the Debtors' objection and cross-motion to quash in response to the emergency turnover motion and Rule 2004 subpoenas of the chapter 7 trustee for the Converted SPV Debtors (Case No. 25-90392, Docket No. 76), and reviewed, prepared, and produced books, records, and electronic data of the Converted SPV Debtors to such trustee in response to its turnover demands; and

- Drafted and filed a motion to withdraw as counsel to the Converted SPV Debtors and obtained Court approval thereof (Case No. 25-90392, Docket No. 53).

n. <u>Exclusivity (Task Code 018)</u>
Fees: $377,340.50; Total Hours: 261.00

- Drafted, revised, filed, and obtained Court approval of motions to extend the Debtors' exclusive periods to file and solicit a chapter 11 plan (Docket. Nos. 1939, 3266, and 3661), and conducted legal research in connection therewith;

- Analyzed and conducted legal research in connection with *Onset Financial, Inc.'s Opposition to Motion of Debtors for an Order Further Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (Docket No. 2714) ("**Onset Exclusivity Objection**"); and

- Drafted a proposed reply in support of the Debtors' further extension of exclusivity and in opposition to the Onset Exclusivity Objection, which culminated in a negotiated consensual resolution of Onset's objection to the Debtors' second exclusivity motion.

o. <u>Executory Contracts / Leases / 365 (Task Code 019)</u>
Fees: $1,535,780.00; Total Hours: 1,101.20

- Drafted, filed, and obtained court approval of *Motion of Debtors for Entry of an Order (I) Approving Procedures to (A) Assume or Assume and Assign or (B) Reject, Unexpired Leases and Executory Contracts, (II) Approving Abandonment of Property in Connection with Rejection of Unexpired*

*Leases, and (III) Granting Related Relief* (Docket No. 758) and negotiated resolutions to objections thereto;

- Drafted, filed, and obtained Court approval of the *Motion of Debtors for Authority to Extend Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* (Docket No. 1673);

- Drafted and filed twelve (12) notices of rejection of unexpired leases and executory contracts and abandonment of property in connection therewith (Docket Nos. 2009, 2160, 2268, 2521, 2557, 2687, 3094, 3157, 3538, 3653, 3731, and 3746, the last of which was filed after the Fourth Interim Compensation Period);

- Negotiated, drafted, filed, and obtained Court approval of the *Stipulation and Agreed Order Resolving Motion and Objection of Kitkat (IL) LLC* (Docket No. 2118);

- Negotiated, drafted, filed, and obtained Court approval of numerous stipulations and agreed orders with landlords extending the time within which the Debtors may assume or reject unexpired leases of nonresidential real property under section 365(d)(4) of the Bankruptcy Code (Docket Nos. 2404, 2406, 2407, 2409, 2420, 2430, 2432, 2436, 2437, 2455, 2474, 2475, 2486, 2490, 2495, 2498, 2507, 2508, 2509, 2510, 2511, 2513, 2517, 2518, 2855, 2891, 2985, 3030, 3047, 3095, 3105, and 3120);

- Negotiated, drafted, and filed numerous stipulations rejecting contracts and unexpired leases, modifying lease terms, and resolving related motions and objections (Docket Nos. 2287, 2421, 2426, 2431, 2444, and 2608);

- Drafted and filed two (2) notices of assumption of certain executory contracts, including information technology contracts necessary for the wind down of the Debtors' estates (Docket Nos. 3146 and 3471), and negotiated related assumption agreements and cure amounts with the counterparties;

- Conducted substantial analysis, due diligence, and legal research, regarding the Debtors' obligations under their leases and agreements, cure costs, the implications of assumption, assignment, and rejection, rent disputes and payment obligations, environmental obligations relating to rejected or abandoned leased premises, mechanics' lien removal issues, and preparing for the rejection of various leases and agreements;

- Responded to contested landlord and lessor motions, including negotiating and filing a stipulation providing for the rejection of certain equipment leases and resolving an equipment lessor's motion to compel payment and for the Debtors to assume or reject certain agreements (Docket No. 3155), and negotiating the resolution of a motion (i) compelling the Debtors to

remove or abandon personal property and any hazardous materials from leased premises, (ii) compelling payment, and (iii) allowing an administrative expense claim (Docket No. 2818) filed by various contract counterparties (Docket No. 3217);

- Addressed facility access disputes with landlords and negotiated related access agreements and demand letters; and

- Corresponded with various third parties, landlords, and contract counterparties and conducted legal research in connection with the assumption and assignment of contracts and leases, cure costs related thereto, and other real estate and contract matters, and conferred with the Weil real estate team and other Weil practice groups, the Debtors, the Debtors' other advisors, landlords, and contract counterparties, regarding various executory contract and unexpired lease matters, and, following the Court's ruling directing conversion of the chapter 11 cases, negotiated further extensions of the section 365(d)(4) deadline with landlords and the ABL Lenders and coordinated the transition of lease and executory contract matters to Katten and the chapter 7 trustee.

p. <u>Other Factoring / Inventory Financing / Supply Chain Financing (Task Code 020)</u>
Fees: $2,877,065.00; Total Hours: 1,874.40

- Prepared for and participated on numerous calls, meetings, and presentations, with the Debtors' factoring counterparties and their advisors (collectively, the "**Third-Party Factors**") regarding the reconciliation of prepetition accounts receivable and procedures for the release of same;

- Drafted, filed, and obtained Court approval of the *Motion of Debtors for Order (I) Establishing Third-Party Factoring Procedures for (A) the Review and Reconciliation of the Debtors' Receipts, and (B) the Release of Funds to the Debtors' Estates and the Third-Party Factors; (II) Authorizing Customers to Remit Receivables Without Liability; and (III) Granting Related Relief* (Docket No. 807) (the "**Factoring Procedures Motion**") and related declaration in support of same (Docket No. 808);

- Drafted and filed the *Debtors' Reply to Objections to Factoring Procedures Motion* (Docket No. 1313) and the related declaration (Docket No. 1314), and negotiated resolutions to certain objections to the Factoring Procedures Motion and negotiated with various parties, including multiple Third-Party Factors, with respect to the revised proposed order for the Factoring Procedures Motion;

- Defended three (3) depositions noticed by Third-Party Factors in connection with the Factoring Procedures Motion;

- Responded to multiple discovery and diligence requests from the Third-Party Factors and coordinated substantial document production in connection with the Factoring Procedures Motion, the reconciliation of prepetition accounts receivable, and related factoring workstream;

- Distributed weekly reporting regarding segregated prepetition accounts receivable to Third-Party Factors;

- Analyzed the Debtors' receivables purchase agreements with Third-Party Factors and conducted legal research regarding issues arising from such agreements;

- Drafted correspondence to various customers of the Debtors who received prepetition assignment notices from certain of the Third-Party Factors;

- Negotiated, filed, and obtained court approval of *Stipulation and Agreed Order Extending Deadline to Assert Claim to any Invoice Relating to the Released Funds* (Docket No. 1933);

- Drafted and filed the *Debtors' Preliminary Objection to Evolution's Emergency Motion for Adequate Protection* (Docket No. 1904) and related declaration (Docket No. 1951);

- Drafted and filed the *Appellees' Opposition to Evolution Credit Partners' Emergency Motion to Expedite Appeal* (Appeal Docket No. 12) and *Brief for Appellees* (Appeal Docket No. 21) in the appeal (No. 4:26-cv-00073 (LHR) (S.D. Tex.)) of the Court's *Order (I) Authorizing Release of Certain Funds to the Debtors' Estates; (II) Adjourning Hearing on Remaining Portions of Factoring Procedures Motion and Supplement; and (III) Granting Related Relief* (Docket No. 1133);

- Drafted and filed the *Debtors' Motion for an Order Authorizing the Release of Certain Funds from the Factored Receivables Account in Accordance with Prior Order and Stipulation with Third-Party Factors and Disbursement of Such Funds to the ABL Agent* (Docket No. 3039), negotiated with various parties, including multiple Third-Party Factors, with respect thereto, and reviewed and analyzed Evolution's motion to stay the relief requested therein (Docket No. 3085);

- Negotiated, drafted, filed, and obtained Court approval of the *Stipulation and Agreed Order Further Extending Deadline to Assert Claim to Any Invoice Relating to Released Funds* (Docket No. 2295) and the *Amended Stipulation and Agreed Order Further Extending Deadline to Assert Claim to Any Invoice Relating to Released Funds* (Docket No. 2302); and

- Analyzed Third-Party Factors' claims and the factoring workstream in connection with the Plan and Disclosure Statement.

q. General Case Strategy (Team and Client Calls) (Task Code 021)
Fees: $2,642,453.00; Total Hours: 1,321.10

- Prepared for and participated in regular meetings, teleconferences, and videoconferences with the Debtors' management team, various stakeholders, and the Debtors' other advisors to discuss case strategy and issues;

- Conducted numerous internal team meetings, teleconferences, and videoconferences regarding the status and administration of the Debtors' chapter 11 cases, general case strategy, and the various work streams regarding the matters described in this Application; and

- Responded to a large volume of emails, calls, and correspondence related to the chapter 11 cases, including with respect to the workstreams, issues, and matters described in this Application.

r. Hearings and Court Matters (Task Code 022)
Fees: $6,369,613.50; Total Hours: 4,427.60

- Prepared for and represented the Debtors at approximately fifty-five (55) hearings and status conferences during the Final Compensation Period, including hearings in connection with the Debtors' first-day motions, DIP Motion, Factoring Procedures Motion, TRO Motion, retention applications, motions to appoint an examiner, OEM Funding Motion, motions for relief from the automatic stay with respect to the Debtors' D&O insurance policies, Walbro Sale Motion, motion to allow Onset to intervene in the James Adversary Proceeding, motions to lift the automatic stay, motion to enforce Evolution's adequate protection stipulation, intellectual property sale motion, the Wind Down Motion (Docket No. 2216), the TMD sale motion (Docket No. 2590), the Horizon sale and Horizon Europe settlement motions, conditional approval of the Disclosure Statement, the U.S. Trustee's motion to convert (Docket No. 2670), the Retiree Committee Motion and Retiree Benefits Motion, the WARN Adversary Proceedings, the Evolution Adversary Proceeding I, the CarVal and Onset lift-stay motions, the LAM Parties' and Katsumi's motions to compel, the Combined Hearing, and the Court's oral ruling on confirmation, among other contested matters and proceedings;

- Prepared, filed, and arranged service of various motions, notices, and other documents, including notices of hearing dates, hearing agendas, proposed orders, certificates of no objection, witness and exhibit lists, and demonstratives;

- Prepared witnesses, declarations, and evidence in support of relief requested in the filings described herein;

- Consulted with the Court's chambers regarding case matters and scheduling and prepared materials for hearings; and

- Coordinated the scheduling and noticing of the hearings regarding conditional approval of the Disclosure Statement and the Combined Hearing, and prepared and filed witness and exhibit lists, joint exhibit lists, and demonstratives in connection with each.

s. <u>Insurance Issues (Task Code 023)</u>
Fees: $757,435.50; Total Hours: 445.20

- Filed and obtained interim and final Court approval of the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Insurance Policies, Surety Bonds, and Letters of Credit and (B) Pay all Obligations with Respect Thereto, and (II) Granting Related Relief* (Docket No. 10) (the "**Insurance Motion**");

- Negotiated resolution of informal comments received to proposed orders approving Insurance Motion;

- Drafted, filed, and obtained final Court approval of the *Emergency Motion of Debtors for Order (I) Authorizing Debtors to (A) Enter into Surety Credit Facility with RLI Insurance Company and (B) Assume Prepetition Indemnity Agreement, and (II) Granting Related Relief* (Docket No. 502);

- Drafted, filed, and obtained Court approval of the *Stipulation and Agreed Order Authorizing Debtors to Replace Certain Letters of Credit in Accordance with Insurance Order* (Docket No. 934);

- Reviewed and analyzed insurance policies and programs, surety bonds, letters of credit, and related documents, and conferred with Weil practice groups, the Debtors, the Debtors' other advisors, and the Debtors' insurance broker regarding the same;

- Reviewed lift-stay motions and replies thereto relating to the Debtors' D&O insurance policies, prepared for hearing on the same, and conferred with movants and other stakeholders regarding the same;

- Conducted research and advised the Debtors regarding various insurance-related issues, including D&O coverage, policy renewals, extensions, and tail coverage, EPL coverage in connection with the WARN Adversary Proceedings, workers' compensation insurance, premium refunds, crime insurance claims, and captive insurance matters;

- Analyzed insurance coverage issues in connection with the Plan and Disclosure Statement, including preparing insurance-related disclosures and materials for the litigation trustee;

- Reviewed and responded to discovery requests from RLI Insurance Company, conducted meet and confers with RLI, and coordinated related document production with the Debtors' other advisors;

- Reviewed, revised, and negotiated the RBC stipulation regarding letters of credit;

- Reviewed and revised the Debtors' insurance broker's client service agreement and addressed insurance broker engagement scope matters; and

- Communicated with various third parties and stakeholders regarding insurance-related topics and responded to diligence inquiries regarding same.

t. Non-Debtor Subsidiary Matters (Task Code 024)
Fees: $18,514,901.50; Total Hours: 13,042.50

- Coordinated internally, across Weil's international offices, and with local counsel to provide a wide range of advisory and transactional services to support the Company's approximately 200 RoW Entities which are organized across twenty-four (24) jurisdictions and span nine (9) different RoW business units, including: (i) Ultinon (funded by Santander, and later the DIP lenders); (ii) Horizon Europe and FMP Australia (funded by UBS); (iii) Trico RO S.R.L. ("**Trico Romania**") (the Company's central back-office service center, the majority of whose services are provided to the Debtors); (iv) Trico Europe, Trico South America, and Airtex Europe; and (v) CoFo and Plastics Germany;

- Engaged and coordinated with local counsel across all twenty-four (24) jurisdictions to assist with diligence for the RoW Entities, corporate governance (including responding to multiple director resignations across the group), critical contingency planning (including potential additional chapter 11 filings), group-wide board updates, and high-level directors' duties advice (including on any local law requirements to file);

- Coordinated with the Debtors' advisor teams to develop cash flow forecasts and analyze the funding needs of the RoW Entities;

- Responded to ad hoc queries from Company directors and management in respect of a wide range of topics, including inbounds from creditors, customers, and suppliers, proposed contract renewals, ongoing disputes, and local creditor insolvency filings;

- Coordinated with RoW management and A&M teams to map out financial and legal issues with respect to the nine (9) RoW business units, which included conducting initial key contract diligence, monitoring cash flows, mitigating interdependencies among RoW Entities and the Debtors,

identifying potential triggers to contagion, and managing key operational stakeholders (including customers, suppliers, employees, and local banking facilities);

- Conducted diligence on various RoW financing arrangements (including a multitude of local factoring lines), negotiated a series of forbearances with the relevant key lenders, including Santander (for Ultinon) and UBS (for Horizon Europe and FMP Australia), and responded to such secured lenders' extensive information requests and conditions;

- Prepared a draft transition services agreement with certain non-Debtor affiliates with respect to RoW senior management, critical employees, and core IT services;

- Strategized and coordinated with A&M to replace RoW management and implemented appropriate safeguards and procedures to ensure financial and operational oversight across all RoW Entities (including a detailed review and update of all local powers of attorney and access to bank accounts), and coordinated with lenders to select and appoint new independent directors at key silos (Ultinon, Horizon Europe, and FMP Australia);

- Secured ongoing / incremental liquidity for RoW business units, including from Santander (for Ultinon), UBS (for Horizon Europe), Credit Agricole (factoring for Ultinon and Horizon Europe), and the DIP lenders (for Ultinon, Trico Europe, Cofo and Plastics), including drafting and negotiating the relevant loan documentation, applications to the Court, extensive diligence and reporting requirements, and various conditions precedent/subsequent, including additional security across multiple jurisdictions;

- Negotiated with stakeholders to provide incremental funding from the Debtors to the Ultinon business unit and drafted transaction documents in connection with the same;

- Drafted and filed Emergency *Motion of Debtors for Order (I) Authorizing Debtors to Provide Funding to Non-Debtor Affiliate and (II) Granting Related Relief* (Docket No. 769), and negotiated and resolved informal objections to proposed order approving the same;

- Strategized and coordinated with A&M to investigate various transactions with SPV lenders affecting RoW entities, including with Onset, UMB, HSBC, and Northlight;

- Implemented various strategic initiatives to preserve and protect Trico Romania, including a planned filing for local debtor-in-possession insolvency proceedings;

- Implemented various strategic initiatives to preserve and maximize value, and to minimize contagion risk, in respect of the CoFo and Plastics businesses, including securing bridge funding, running an accelerated sales process for each business, liaising with key customers (including OEMs) on potential solutions, and eventually preparing for planned local German insolvency filings and communications related thereto across all Company stakeholders;

- Coordinated with local insolvency administrators after filing of local German insolvency proceedings to mitigate resulting contagion risks for the Company;

- Advised RoW Entity Carnaby Capital GmbH with respect to intercreditor dispute between UBS and HSBC, including the assessment of pledge agreements and analysis of their respective ranking, as well as providing analysis of Carnaby Capital GmbH's solvency position for an update to stakeholders;

- Negotiated payment terms for RoW Entity Trico Belgium S.A. with Plastics insolvency receiver;

- Analyzed German lease agreements and corresponding parent guarantees;

- Prepared numerous updates and presentations for the Special Committee, Ad Hoc Group, and Creditors' Committee in connection with the same;

- Analyzed corporate governance documentation and drafted letters in connection with dispute about the ownership of certain non-Debtor subsidiaries related to the Novares business (the "**Novares Entities**");

- Participated in numerous phone calls and meetings with the Debtors, the Debtors' other advisors, advisors to the Company's founder, and advisors to the Debtors' OEM customers with respect to the Novares Entities;

- Conducted contingency planning in connection with a potential chapter 11 filing of the Novares Entities;

- Prepared and negotiated loan documentation for potential funding by OEM customers;

- Assisted the Debtors' other advisors with development of communications with Novares Entities' stakeholders;

- Advised the Debtors with respect to the marketing and sale of numerous RoW business units and coordinated with non-U.S. counsel—including Weil's London and Frankfurt offices, Ashurst Australia, and other local

counsel in Germany, Poland, China, Mexico, the Netherlands, and other jurisdictions—regarding the same;

- Strategized, negotiated, and drafted corporate governance and other documentation related to non-Debtor subsidiaries, including preparing numerous updates to the Special Committee, the Ad Hoc Group, and the Creditors' Committee, and coordinated with local counsel regarding the same;

- Prepared for and convened board meetings and board updates for the RoW entities, and coordinated with local counsel regarding the same;

- Advised certain non-Debtor subsidiaries with respect to insolvency-related matters, the wind down of operations, contingency planning, board meetings, international value preservation, and lender and stakeholder negotiations;

- Coordinated with Weil's Hong Kong office, Chinese local counsel, and the Company's management with respect to the local insolvency proceedings of non-Debtor subsidiary Longkou and the preparation, execution, and circulation of shareholder support letters and related corporate authorizations;

- Participated on daily M&A and wind-down coordination calls with A&M and the Debtors' other advisors regarding the orderly wind down of various non-Debtor subsidiaries (including the closure of certain Mexican facilities and related employee considerations) across the Trico, Airtex, Brakes, Horizon, and Ultinon business units;

- Together with local counsel, advised certain non-Debtor subsidiaries with respect to the commencement of local insolvency proceedings in Germany, Poland, and other jurisdictions;

- Coordinated with the Debtors' Indian non-Debtor subsidiaries regarding governance and director matters, including the resignation and replacement of directors to support continuity of operations;

- Prepared and supported the local insolvency filing of Carnaby Capital GmbH and related correspondence with A&M and German local counsel regarding the underlying obligations and the impact of such filing on the Debtors' broader non-Debtor subsidiary footprint;

- Prepared and orchestrated with A&M the execution of a framework for the orderly wind down of all remaining non-U.S. entities across over 15 jurisdictions, to retain optionality and minimize contagion risk, including: engaging and instructing local counsel in connection with the preparation and analysis of local law requirements, directors' duties obligations and

mandatory filing regimes; briefing and preparing local directors and management to assume responsibility for the wind down of their respective entities; coordinating stakeholder management; and navigating the sequencing and interdependencies with the chapter 11 sale processes, OEM Funding Arrangement, and local insolvency considerations;

- Analyzed intercompany claims, intercompany transfers, and shared services arrangements between the Debtors and certain non-Debtor subsidiaries;

- Conducted legal research regarding the authority required to direct non-Debtor subsidiaries into local insolvency proceedings;

- Coordinated the handover of certain RoW workstreams, including inbound purchaser interest in respect of the RoW Entities, to Katten, and prepared a comprehensive transition memorandum with respect to the RoW wind-down workstreams to facilitate the transition of such workstreams to Katten and the chapter 7 trustee;

- Engaged, instructed, and coordinated with local counsel across more than a dozen jurisdictions, including Germany, Italy, Poland, Romania, the Netherlands, Luxembourg, France, Canada, Mexico, Brazil, India, China, Hong Kong, Thailand, Malaysia, and Australia, in connection with the orderly wind down of the remaining non-Debtor subsidiaries;

- Prepared and maintained a comprehensive wind down tracker, entity structure charts, and an insolvency background memorandum covering the remaining non-Debtor entities; and

- Coordinated the engagement of the proposed liquidators of certain Hong Kong non-Debtor subsidiaries, advised regarding related statutory filing, deregistration, and audit workstreams for the Hong Kong entities, and advised regarding the dissolution and deregistration of the Chinese non-Debtor entities.

u. Debtors' Investigation Matters (Task Code 025)
Fees: $4,019,551.50; Total Hours: 3,130.90

- Advised the Special Committee in its investigation of the Debtors' prepetition activities, including the analysis of potential estate claims and causes of action against current and former insiders, professional firms, lenders, factoring counterparties, and other third parties, which investigation informed the Debtors' commencement and prosecution of the James Adversary Proceeding and the Onset Adversary Proceeding and the identification of estate claims and causes of action to be transferred to the Litigation Trust under the Plan;

- Coordinated with the Debtors' other advisors and outside discovery vendors to collect, image, process, and preserve key physical and electronic evidence obtained in connection with the investigation, including implementing litigation holds and coordinating cross-border device preservation efforts;

- Developed and refined the investigation document review protocol, including custodian identification, search-term construction, hot-document criteria, and a privilege protocol (including research regarding Rule 502(d) protective orders and related federal authority);

- Drafted, served, and supplemented Rule 2004 discovery requests on multiple third parties, and met and conferred with counsel for such third parties to negotiate the scope of, and resolve disputes regarding, third-party document productions;

- Reviewed and analyzed hundreds of thousands of documents and emails collected from the Company and its employees and produced by third parties in response to Rule 2004 discovery requests, prepared hot-document summaries and trackers, and drafted internal memoranda summarizing key factual findings;

- Drafted responses and objections to Rule 2004 discovery requests received from multiple third parties, coordinated production of responsive documents, and resolved related deficiency and privilege issues;

- Coordinated with the Debtors' other advisors on establishing a whistleblower hotline and analyzing tips received through same;

- Analyzed bank records, factoring transactions, and related-party transfers, and coordinated with A&M on cash-tracing analyses and the factoring procedures workstream;

- Prepared for and participated in more than two dozen interviews of current and former employees of the Company, deposition preparation sessions, and related coordination with the Debtors' affirmative litigation team to align the investigative and adversary proceeding workstreams;

- Prepared presentations, investigative reports, and a compendium of investigation findings and participated in meetings with Special Committee to provide updates on investigative findings and next steps; and

- Conducted research into, and prepared written analyses regarding, potential estate claims and causes of action, including research regarding criminal forfeiture, restitution, and the availability of directors' and officers' insurance proceeds, and prepared draft documentation in connection with a potential litigation trustee structure to pursue such claims.

v. Onset Matters (Task Code 028)
Fees: $4,791,326.00; Total Hours: 3,278.30

- Drafted, negotiated, and obtained Court approval of *Stipulation and Agreed Interim Order Regarding Adequate Protection Among Debtors and Onset Financial, Inc.* (Docket No. 212);

- Drafted, negotiated, and obtained Court approval of *Stipulation and Agreed Order Regarding Adequate Protection Among Debtors and Onset Financial, Inc.* (Docket No. 732);

- Developed litigation strategy and conducted research regarding potential estate claims and causes of action against Onset, analyzed Onset-related claims, causes of action, and asserted property interests, and coordinated with the Debtors' other advisors regarding the same;

- Reviewed documents relating to various Onset-related issues, including assets, transactions, leases, and property interests, and conducted legal research in connection therewith;

- Reviewed and analyzed documents produced by Onset and drafted memoranda and presentations regarding same, and reviewed and responded to Onset's discovery and production requests and conferred with Onset's advisors regarding the same;

- Drafted and filed complaint commencing the Onset Adversary Proceeding (Adv. Pro. No. 26-03005, Docket No. 1) and prepared exhibits in connection therewith;

- Analyzed Onset's answer and counterclaims to the complaint filed in the Onset Adversary Proceeding (Adv. Pro. No. 26-03005, Docket No. 16);

- Reviewed and prepared responses to (i) Onset's Rule 12(c) Motion (Adv. Pro. No. 26-03005, Docket No. 32), (ii) Onset's Rule 12(b) Motion (Adv. Pro. No. 26-03005, Docket No. 33), and (iii) the U.S. Government's motion to intervene and stay discovery (Adv. Pro. No. 26-03005, Docket No. 69);

- Drafted, filed, and obtained Court approval of the Debtors' motion to stay discovery in the Onset Adversary Proceeding (Adv. Pro. No. 26-03005, Docket No. 75);

- Reviewed and responded to Onset's motion to reconsider Court's ruling staying deadlines in the Onset Adversary Proceeding (Adv. Pro. No. 26-03005, Docket No. 100);

- Drafted and filed the *Debtors' Response to Onset Financial Inc.'s Emergency Motion (1) for Relief from the Automatic Stay, and (2) to Enforce the Onset AP Order* (Docket No. 2306);

- Negotiated, drafted, and filed the *Stipulation and Agreed Order Enforcing the Onset AP Order and Resolving, in Part, Onset Financial, Inc.'s Emergency Motion* (Docket No. 2841) and obtained Court approval of same (Docket No. 2871);

- Drafted and served responses and objections to Onset's document requests and interrogatories concerning exclusivity and the Plan, coordinated related document productions, and prepared a company witness for a Rule 30(b)(6) deposition and related examination testimony;

- Negotiated agreed stipulations and orders with Onset, CarVal, the Ad Hoc Group, and the ABL Lenders resolving the competing CarVal and Onset lift-stay disputes (Docket Nos. 2840, 2871, and 2872) and reviewed related adequate protection stipulations;

- Prepared for and participated in mediation with Onset and analyzed related issues;

- Reviewed and analyzed issues relating to Onset surcharge demands and prepared and sent letter to Onset regarding the same; and

- Coordinated with Onset, the ABL Lenders, the Ad Hoc Group, and the other parties regarding the consensual resolution of various Onset-related disputes.

w. <u>Regulatory Issues (Task Code 029)</u>
Fees: $2,849,419.00; Total Hours: 1,912.20

- Analyzed regulatory issues in connection with the Debtors' sale transactions, including antitrust and merger control (including HSR filing preparation), environmental matters, successor liability, tariffs, and customs matters, and conferred internally and with the Debtors, the Debtors' other advisors, and other stakeholders regarding the same;

- Prepared and coordinated regulatory filings in connection with the Debtors' sale processes, in coordination with foreign counsel;

- Reviewed VDR documents for confidentiality, competitively sensitive information, and clean team access, and reviewed and revised bidder clean team agreements and requirements;

- Negotiated, drafted, and filed stipulations and agreed orders extending the time for the U.S. Securities and Exchange Commission to take action to

determine the nondischargeability of a debt owing to a governmental unit pursuant to section 1141(d)(6) of the Bankruptcy Code (Docket Nos. 1121, 2189, and 3043);

- Analyzed tariff and customs matters, including the treatment of IEEPA tariff refunds and U.S. Customs and Border Protection offset and reconciliation issues, related customs bond and surety matters, potential tariff refund claims, and formal customs abandonment of goods, and coordinated with the Debtors' other advisors and the Debtors' stakeholders regarding the same;

- Analyzed and conducted legal research regarding environmental matters, and drafted correspondence to the Environmental Protection Agency and certain state environmental agencies;

- Analyzed U.S. sanctions issues arising in connection with the post-closing transfer of certain foreign-registered intellectual property in connection with the Walbro sale transaction and coordinated with local counsel regarding the same; and

- Reviewed and analyzed data privacy and data transfer issues arising in connection with the sale transactions and advised the Debtors regarding the same.

x. <u>Retention / Fee Applications: Other Professionals (Task Code 031)</u>
Fees: $1,209,796.00; Total Hours: 859.80

- Drafted, filed, and obtained court approval of the Debtors' professionals' retention applications, including the (i) *Emergency Ex Parte Application for Entry of an Order Authorizing the Employment and Retention of Kroll Restructuring Administration LLC as Claims, Noticing, and Solicitation Agent* (Docket No. 4), (ii) *Application of Debtors for Authority to Retain and Employ Hilco Global as Appraiser for Debtors Effective as of October 7, 2025* (Docket No. 331), (iii) *Application of Debtors for Authority to Retain and Employ Lazard Frères & Co. LLC as Investment Banker for Debtors Effective as of Petition Date* (Docket No. 416), (iv) *Application of Debtors for Entry of an Order (I) Authorizing the Debtors to (A) Retain and Employ Alvarez & Marsal North America, LLC, (B) Designate Certain Executive Officers, and (C) Engage Additional Personnel, and (II) Granting Related Relief* (Docket No. 417), and (v) *Application of Debtors for Authority to Retain and Employ Ernst & Young LLP as Tax Advisor for Debtors Effective as of Petition Date* (Docket No. 418);

- Drafted, filed, and obtained Court approval of the *Motion of Debtors to Establish Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Docket No. 341) (the "**Interim Compensation**

**Procedures Motion**"), and negotiated resolutions to informal comments received to the proposed order approving the same;

- Negotiated and drafted revised proposed order resolving Creditors' Committee's potential objection to retention application of Lazard Frères & Co. LLC ("**Lazard**");

- Negotiated and drafted revised proposed order resolving U.S. Trustee's informal comments to proposed order approving retention application of Alvarez & Marsal North America, LLC ("**A&M**");

- Reviewed, strategized, drafted, and filed the *Debtors' Omnibus Reply to SPV Lenders' Objections to Retention Applications* (Docket No. 870) in support of the retention applications of Weil, Lazard, A&M, and Hilco Valuation Services, LLC, d/b/a Hilco Global ("**Hilco**"), and conducted research in connection therewith;

- Prepared for and attended contested hearing regarding objections to the Debtors' and Creditors' Committee's proposed retention of advisors;

- Negotiated engagement letter with Ernst & Young LLP and drafted and filed a *Notice of Expansion of Services to be Provided by Ernst & Young LLP to the Debtors* (Docket No. 1012);

- Drafted, filed, and obtained Court approval of an application to retain Marc S. Kirschner as expert consultant and expert witness in connection with confirmation of the Plan (Docket Nos. 3192 and 3636);

- Reviewed, revised, and filed supplemental declarations in support of the retention of A&M (Docket No. 3698) and Ernst & Young LLP;

- Negotiated and coordinated the engagement of additional professionals during the course of these chapter 11 cases, including Katten, and conducted legal research regarding the retention of professionals under section 327(e) of the Bankruptcy Code in connection therewith;

- Reviewed Debtors' professionals' interim fee applications for privilege and confidentiality and provided comments in compliance with UST Fee Guidelines and to preserve client confidentiality and privilege;

- Reviewed and provided comments to various applications to employ the Creditors' Committee's professionals, the Examiner's professionals, and the SPV Debtors' professionals; and

- Corresponded internally and with the Debtors' other advisors regarding various retention matters, including with respect to monthly fee statements,

retention applications, and related declarations and orders in respect of such applications.

y. Schedules / Statements of Financial Affairs / Rule 2015.3 Reports (Task Code 032)
Fees: $533,875.50; Total Hours: 393.30

- Coordinated with the Debtors and Debtors' other advisors to prepare, draft, review, revise, and file the schedules of assets and liabilities (the "**Schedules**") and statements of financial affairs (the "**Statements**" and, together with the Schedules, the "**Schedules and Statements**") for each of the 112 Debtors (Docket Nos. 1411–1634), including the global notes thereto, and conducted legal research in connection therewith;

- Negotiated and obtained a stipulation extending the deadline to file the Schedules, Statements, and Rule 2015.3 Reports (Docket No. 690);

- Drafted, reviewed, revised, and filed the initial report under Bankruptcy Rule 2015.3 (the "**2015.3 Report**") (Docket No. 1389) and subsequent 2015.3 Report (Docket No. 3292), including the global notes thereto, and coordinated with the Debtors and the Debtors' other advisors in connection with the same; and

- Corresponded with various Weil practice groups and the Debtors' other advisors regarding matters related to the Schedules and Statements and 2015.3 Report.

z. Tax Issues (Task Code 033)
Fees: $3,508,307.50; Total Hours: 1,981.20

- Drafted, filed, and obtained Court approval of the *Emergency Motion of Debtors for Order (I) Authorizing Debtors to Pay Certain Prepetition Taxes and Fees and (II) Granting Related Relief* (Docket No. 8), and facilitated exchange of diligence materials regarding same with Creditors' Committee;

- Drafted, filed, and obtained Court approval of the *Stipulation and Agreed Order Regarding Procedures with Respect to the Beneficial Ownership of Equity Interests in the Debtors* (Docket No. 300);

- Analyzed the tax implications of the Debtors' proposed DIP financing arrangements, other financing transactions, and the DIP forbearance, including drafting and revising DIP forbearance documents and coordinating with the Debtors' advisors and counsel to the Ad Hoc Group on DIP forbearance terms;

- Reviewed and revised credit agreements and analyzed tax consequences of collateral packages;

- Researched and analyzed potential issues in connection with establishing claims trading procedures;

- Analyzed the tax treatment of the segregated account established for the Debtors' prepetition factored receivables;

- Analyzed and advised the Debtors regarding the tax implications of the Debtors' sales and related transactions, including the TMD, Horizon North America sales, Horizon Europe settlement, Walbro, Trico, Cequent, and Jasper Rubber transactions, including purchase price allocations, transfer and property taxes, closing adjustments, withholding considerations, and tax representations in the transaction documents;

- Reviewed and responded to tax diligence requests from bidders in the Debtors' sale processes, and corresponded and participated in weekly calls with A&M regarding ongoing sales, diligence, and open tax-related issues;

- Reviewed and commented on draft sale agreements for the Walbro sale transaction, and prepared and filed state transfer tax affidavits and reviewed state transfer tax exemption issues in connection with closing of same;

- Prepared IRS Form 8918 material advisor filings in connection with the Walbro and other transactions and analyzed related federal tax reporting matters;

- Drafted and revised the tax sections of the Plan and Disclosure Statement, analyzed the tax implications of the Plan's structure, and provided tax comments to the Litigation Trust Agreement, the DIP Collateral Trust Agreement, the ABL Collateral Trust Agreement, the Litigation Trust Backstop Agreement, and the Litigation Funding Agreement;

- Analyzed non-U.S. tax matters arising from various sale transactions, including capital gains computations and IMMEX considerations, and prepared related powers of attorney with Mexican counsel; and

- Analyzed tax issues relating to intercompany balances, foreign subsidiaries, and cross-border aspects of the sale and wind-down transactions, coordinated with Weil practice groups, the Debtors' other advisors, purchasers' counsel, and local counsel regarding tax matters arising in the chapter 11 cases.

aa. <u>Unsecured Creditor Issues / Meetings / Comms (Including UCC Matters) (Task Code 034)</u>
Fees: $706,254.50; Total Hours: 381.30

- Attended recurring and ad hoc meetings and calls with the Creditors' Committee, its advisors, and the Debtors' other advisors regarding case

strategy, diligence, the OEM Funding Arrangement, the sale processes, the Plan and Disclosure Statement, SPV-related issues, and various other aspects of these chapter 11 cases, and coordinated with the Creditors' Committee's advisors regarding various filings in the chapter 11 cases;

- Negotiated confidentiality provisions of Creditors' Committee bylaws;
- Coordinated with the Creditors' Committee advisors regarding revisions to the Debtors' proposed first-day orders;
- Negotiated and drafted common interest agreement with Creditors' Committee advisors regarding investigation to facilitate cooperation;
- Drafted and filed *Agreed Protective Order* (Docket No. 408) to facilitate exchange of discoverable information; and
- Prepared materials to present to Creditors' Committee members at an in-person meeting.

bb. US Trustee Issues / Meetings / Communications / MORs (Task Code 035)
Fees: $582,096.50; Total Hours: 466.40

- Prepared for and attended section 341 meeting;
- Assisted the Debtors and their professionals with preparing and filing of the Debtors' monthly operating reports;
- Coordinated with the U.S. Trustee, the Debtors' management, and the Debtors' other advisors regarding the underlying financial information, accruals, and disclosures included in the monthly operating reports and various other filings in the chapter 11 cases;
- Prepared reporting regarding relief granted under various first-day orders and corresponded with the U.S. Trustee regarding same;
- Coordinated with the U.S. Trustee regarding various filings in the chapter 11 cases; and
- Drafted, conducted legal research in connection with, and filed the Debtors' objection (Docket No. 2906) to the U.S. Trustee's motion to convert (Docket No. 2670) and prepared witnesses and supporting evidence in connection with the contested hearing on the same, following which the Court denied the motion (Docket No. 2989).

cc. Weil Retention / Billing / Fee Applications (Task Code 037)
Fees: $1,418,975.00; Total Hours: 1,227.80

- Drafted, filed, and obtained Court approval of the Retention Application;

- Negotiated with other parties and conducted legal research related to the drafting and filing of a reply to objections to the Retention Application;

- Reviewed time records and disbursements for compliance with the Fee Guidelines and for privilege and confidentiality;

- Drafted, reviewed, and served eleven (11) monthly fee statements;

- Drafted and filed the *First Interim Fee Application of Weil, Gotshal & Manges LLP, Attorneys for the Debtors, for the Period from September 29, 2025 Through and Including December 31, 2025* (Docket No. 1948) and obtained Court approval of same (Docket No. 2121);

- Drafted and filed the *First Supplemental Declaration of Matthew S. Barr in Support of Application of Debtors for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 1648);

- Drafted and filed the *Second Interim Fee Application of Weil, Gotshal & Manges LLP, Attorneys for the Debtors, for the Period from January 1, 2026 Through and Including March 31, 2026* (Docket No. 2916) and obtained Court approval of same (Docket No. 3104);

- Drafted and filed the *Second Supplemental Declaration of Matthew S. Barr in Support of Application of Debtors to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 2703);

- Drafted and filed the *Third Interim Fee Application of Weil, Gotshal & Manges LLP, Attorneys for the Debtors, for the Period from April 1, 2026 Through and Including June 30, 2026* (Docket No. 3771) and obtained Court approval of same (Docket No. 3854); and

- Drafted and filed the *Third Supplemental Declaration of Matthew S. Barr in Support of Application of Debtors to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 3697).

dd. Lender Issues / Meetings / Comms (Task Code 038)
Fees: $1,075,509.00; Total Hours: 556.50

- Attended recurring and ad hoc meetings and calls with the DIP lenders, the Ad Hoc Group, their respective advisors, and the Debtors' other advisors regarding case strategy, diligence, funding, and various other aspects of these chapter 11 cases;

- Drafted and negotiated non-disclosure agreements for the DIP lenders and Ad Hoc Group advisors;

- Prepared materials to present to lenders at multiple in-person meetings;

- Negotiated, drafted, reviewed and revised a disclosure framework related to the sharing of information with the Ad Hoc Group members;

- Coordinated with the Ad Hoc Group and their advisors regarding various case issues, including with respect to the sale process, the Plan and Disclosure Statement, case funding, SPV-related issues, and numerous other aspects of the Debtors' chapter 11 cases; and

- Facilitated the production of diligence to the Ad Hoc Group and its advisors and coordinated with respect to compliance with the disclosure framework.

ee. Examiner Matters (Task Code 039)
Fees: $1,733,970.50; Total Hours: 1,077.90

- Drafted proposed response to motions to appoint examiner filed by Raistone (Docket No. 307) and U.S. Trustee (Docket No. 340) (together, the "**Examiner Motions**") and conducted research in connection therewith;

- Coordinated with the Creditors' Committee, Ad Hoc Group, and Raistone to develop response to Examiner Motions that culminated in filing of the *Joint Statement in Connection with Motions to Appoint an Examiner* (Docket No. 620);

- Negotiated with the U.S. Trustee, Creditors' Committee, Ad Hoc Group, and Raistone on scope of the Examiner's investigation and workplan, and filed a *Notice of Filing of Proposed Agreed Order Among Debtors, Creditors' Committee, Ad Hoc Group, Raistone, and United States Trustee Directing Appointment of an Examiner* (Docket No. 716);

- Engaged with U.S. Trustee, Creditors' Committee, Ad Hoc Group, and Raistone regarding U.S. Trustee's appointment of the Examiner;

- Prepared for and participated on calls, meetings, and presentations among Weil practice groups and the Debtors' other advisors regarding Examiner-related issues, and conducted research in connection therewith;

- Coordinated with the Examiner and the Examiner's counsel regarding the Examiner's investigation, including responding to information requests, facilitating access to documents and witnesses, supporting the Examiner's report-preparation process, and reviewing and analyzing the Examiner's notices, status reports, and information requests;

- Coordinated with the Debtors' management and the Debtors' other advisors regarding the Examiner's investigation, including responding to follow-up document requests and witness interview requests, managing the document production and review process, and analyzing and producing responsive documents to the Examiner in connection with his preparation of the Examiner's report;

- Drafted and filed the Debtors' response (Docket No. 3007) to the Examiner's *Emergency Motion to Increase the Examination Budget* (Docket No. 2571); and

- Reviewed, analyzed, and summarized the Examiner's report, including preparing summary slides and a related presentation and analyzing responses to the Examiner's report.

ff. Government Investigation Matters (Task Code 041)
Fees: $3,699,893.00; Total Hours: 2,282.20

- Developed and implemented a comprehensive strategy in response to the Government Investigation, which included, among other things, implementing a whistleblower hotline, analyzing Debtors' books and records, identifying key document custodians and witnesses, and interviewing dozens of employees domestically and abroad;

- Coordinated with the various Weil teams, the Debtors' other advisors, and counsel for the Creditors' Committee and the Ad Hoc Group regarding the Government Investigation to ensure a unified approach and a transparent process;

- Ensured compliance with subpoenas and other formal requests for information, including by collecting and reviewing a significant volume of documents from employees' electronic devices and corporate email accounts, produced more than four million documents to the governmental agencies conducting investigations, prepared and reviewed privilege materials and privilege lists, coordinated electronic discovery and related document productions, and researched and drafted a motion to quash trial subpoenas served on the Debtors by counsel to Patrick James in connection with the related criminal proceedings, and delivered responsive materials and responded to related document preservation requests;

- Responded to numerous urgent requests for documents and information from multiple parties including the agencies conducting the Government Investigation, the Examiner, and counsel for certain of the Debtors' former executives;

- Coordinated with counsel for numerous current and former executives and employees of the Debtors to ensure an efficient and organized response to government requests for interviews;

- Participated in multiple meetings and correspondence with the Department of Justice, U.S. Securities and Exchange Commission, and the U.S. Customs and Border Protection to discuss findings related to, and status of, the Government Investigation, and coordinated with regulatory counsel for the Debtors regarding a response to a request from U.S. Customs and Border Protection regarding a customs-related issue;

- Reviewed and coordinated with the Weil teams and the Debtors' other advisors regarding the Debtors' crime insurance coverage and the related policies;

- Reviewed and analyzed documents related to the criminal case brought by the Department of Justice against certain of the Debtors' former executives, including the criminal indictment and other court filings, the related press release, and transcripts from hearings related thereto; and

- Coordinated among Weil practice groups and with the Debtors' other advisors regarding a summary deck on the Government Investigations and findings and related forfeiture and restitution issues related to same.

gg. UMB Matters (Task Code 042)
Fees: $450,560.00; Total Hours: 306.80

- Negotiated, filed, and obtained Court approval of the *Stipulation and Agreed Order Regarding Adequate Protection of UMB Bank, N.A. and the UMB Lenders* (Docket No. 213);

- Corresponded and negotiated with UMB's counsel regarding adequate protection of the UMB lenders;

- Conducted research and diligence regarding UMB's alleged inventory collateral and related disputes;

- Reviewed and responded to UMB discovery requests; and

- Researched, outlined, and drafted response to UMB's motions for relief from stay and for appointment of chapter 11 trustee.

hh. RoW Ultinon (Task Code 043)
Fees: $490,001.50; Total Hours: 319.40

- Reviewed, analyzed, and coordinated the confirmation and implementation of existing and newly granted security interests in connection with the Ultinon financing transactions;

- Prepared, reviewed and coordinated a broad range of German corporate approvals, certificates and powers of attorney required for the Ultinon finance workstream, including approvals relating to facility amendments, security confirmations, intercompany financing structures, and contingency planning scenarios;

- Provided continuous German law advice on financing structures (including with respect to DIP lending and intercompany loans), the adequacy of security packages, and compliance with German corporate and insolvency law requirements;

- Conducted diligence of, and drafted and negotiated an extension to, the transition services agreement with Lumileds regarding critical enterprise resource planning systems for Ultinon;

- Organized and prepared materials for meetings with the boards of the Ultinon entities, and advised such boards with respect to case updates, engagement with lenders, and considerations with respect to ongoing funding arrangement and directors' duties;

- Coordinated with local counsel and management of the Ultinon group regarding the marketing and sale process for the Ultinon business, the commencement of local insolvency proceedings (including the German insolvency proceeding of Ultinon Motion Germany GmbH), and the chapter 11 filings of Ultinon Motion Holdings B.V., Liberty I B.V., and Liberty II B.V., and supported employee, stakeholder, and intercompany workstreams during the wind-down of the Ultinon group;

- Reviewed and analyzed draft chapter 11 petitions, first-day declarations, first-day motions, and proposed orders prepared in connection with the chapter 11 filings of Ultinon Motion Holdings B.V., Liberty I B.V., and Liberty II B.V. (*In re Ultinon Motion Holdings B.V.*, No. 26-90428 (CML) (Bankr. S.D. Tex.)), and monitored the first-day hearing in such cases;

- Negotiated with Santander, Deva Capital, and other Ultinon-side stakeholders regarding various loan facilities and related conditions, including the appointment of an independent director to the three Ultinon Dutch holding companies;

- Coordinated with Weil's London and Paris offices and local counsel across the Ultinon footprint (including in Mexico, Italy, Thailand, the Netherlands, Brazil, Canada, Hong Kong, France, Sweden, Spain, and other jurisdictions) regarding the wind-down of the Ultinon group, local

insolvency proceedings, intercompany balances, payables, and the preservation of value of remaining assets;

- Reviewed, negotiated, and finalized the engagement letter for the proposed liquidators of Ultinon Hong Kong, coordinated their onboarding and access to Company information, and addressed payroll, statutory, and regulatory matters required to facilitate the orderly wind down of the Hong Kong non-Debtor subsidiary;

- Prepared, reviewed, and circulated status updates to the Debtors' key stakeholders with respect to the Ultinon non-Debtor subsidiaries, including with respect to the status of local insolvency proceedings, lender funding obligations, guarantee demands, and standstill arrangements;

- Provided cross-border German law advice and coordinated with Weil's Frankfurt office regarding Ultinon Motion Germany GmbH, including powers of attorney, asset handover/payment correspondence, and the implementation of the German insolvency proceedings;

- Conducted and reviewed legal diligence on Ultinon's existing finance and security documentation, asset ownership across jurisdictions (including Poland, Germany, China, Hong Kong, and the Netherlands), data-room contents, and intercompany arrangements to inform the wind-down strategy and discussions with key stakeholders;

- Drafted, prepared, and supported the local filing of judicial reorganization proceedings for Ultinon Motion Commercial France in coordination with Weil's Paris office and French local counsel, including review of financial difficulty notices, employment-related materials, and supporting documentation submitted to the French court;

- Coordinated with Polish local counsel and the directors of the Polish Ultinon entities regarding the commencement of local Polish insolvency proceedings for the Ultinon production facilities in Poland, and prepared related update correspondence to key stakeholders;

- Negotiated, reviewed, and finalized employment-related matters at the Ultinon entities and coordinated with parties regarding employee notifications, statutory consultation requirements, and securing extensions of financing waivers from the Ultinon-side lenders; and

- Coordinated with Chinese local counsel, Weil's Hong Kong office, and Ultinon management regarding the wind-down of the Chinese Ultinon production facilities, including the orderly handover of operations, intercompany payable analyses, and related stakeholder communications.

ii. RoW Horizon / FMP (Task Code 044)
Fees: $2,611,115.50; Total Hours: 1,465.00

- Corresponded with UBS advisors on forbearance conditions and extension requests;
- Coordinated with Luxembourg, Romanian, and Dutch local counsel to effectuate governance changes (including director replacements and board observer appointments) and addressed various corporate governance issues related to the Horizon business;
- Advised the Debtors with respect to tax matters involving German Westfalia group;
- Reviewed, analyzed, and coordinated the confirmation and granting of security interests in connection with Horizon financing transactions, and drafted, reviewed and coordinated German corporate approvals, certificates, and powers of attorney required for the Horizon finance workstream, including approvals relating to facility amendments and security agreements;
- Attended weekly calls with Horizon Europe directors, management, and advisors and prepared summaries of the same at the request of independent director;
- Reviewed and analyzed the implementation of the Horizon Europe legal-separation structure (together with Loyens, as Dutch and Luxembourg local counsel) (the "**Horizon Europe Separation**"), and coordinated with Dutch and Luxembourg counsel regarding the Horizon Europe separation and related corporate approvals and security confirmations;
- Coordinated and corresponded with broker in relation to procurement of D&O policy for Horizon Europe subsidiaries, and advised regarding the directors' and officers' insurance program implemented in connection with the Horizon Europe Separation, including broker coordination and coverage considerations;
- Provided ongoing advice to the Horizon Europe and FMP / Trico Australia management teams regarding governance, change of directors, funding, contingency planning, and intercompany matters prior to the Horizon Europe Separation;
- Advised the Debtors on funding arrangements provided by (i) the Ad Hoc Group for Trico Europe, CoFo, and Plastics Germany, (ii) the OEMs for Trico Europe, and (iii) Crédit Agricole (factoring arrangements) for Horizon Europe, and coordinated with local counsel and lenders regarding

the documentation and implementation of such facilities to preserve value for the Debtors' estates as equity holders;

- Advised the Debtors in connection with the Horizon North America sale and the related Horizon Europe settlement and sale, including with respect to the resolution of asset entanglement and intercompany balances with non-Debtor subsidiaries based in Europe and Australia, and negotiated and drafted related sale and settlement documentation, including preparing bidder diligence materials, evaluating bids, negotiating definitive transaction documents, preparing the Horizon North America asset purchase agreement and ancillary documents (including transition services and shared services arrangements), and coordinating with local counsel regarding cross-border execution issues;

- Coordinated with Mexican counsel (Galicia) and other foreign counsel regarding various corporate governance issues in connection with the Horizon sale process;

- Coordinated with local counsel across the Horizon footprint regarding diligence, security confirmations, corporate governance, foreign assignments, and signing and closing deliverables;

- Reviewed and analyzed intercompany loan and subordination consideration, intellectual property, and data protection and GDPR issues arising in connection with the Horizon transactions, drafted loan assignment and related ancillary documentation in connection with the same, and coordinated with Weil's London office and local counsel regarding compliance with applicable data privacy regimes;

- Prepared and revised a detailed analysis of intercompany balances among the Horizon North America, Horizon Europe, and FMP / Trico Australia entities and a related settlement presentation for the Debtors' key stakeholders;

- Reviewed and analyzed intellectual property documents in connection with the Horizon sale process and advised the non-Debtor subsidiaries with respect to the same;

- Drafted and coordinated the execution of notices of assignment, assignment agreements, and resolutions effectuating the Walbro Suisse intercompany assignments, and drafted an amendment agreement and corrected notices of assignment to reflect corrected intercompany balances;

- Reviewed German security documentation and analyzed perfection issues relating to the Horizon collateral package;

- Reviewed valuation report and negotiated management representation letters in connection with the transfer of the Horizon India entities;

- Prepared corporate approvals, shareholder consents, and resolutions authorizing the Horizon sale and separation and managed related execution and closing logistics;

- Assisted local counsel and Westfalia with the wind down of certain Horizon silo entities, including director resignations, preparation of accounts, and the solvent dissolution of HZ Lux Holdings S.à r.l., including the execution of shareholder resolutions authorizing its liquidation and the review of a related stay and forbearance agreement in respect of intercompany claims;

- Coordinated with local counsel regarding intercompany loan claims and the analysis of claims between the Debtors' estates and certain of the FMP / Trico Australia entities; and

- Coordinated with the Weil Hong Kong team regarding the audit, stamp duty, and share transfer requirements for the transfer of the Hong Kong non-Debtor subsidiaries, including as part of diligence for the Pumps sale transaction.

jj. <u>RoW Trico / Airtex / South America / Germany (Task Code 046)</u>
Fees: $923,240.50; Total Hours: 627.70

- Advised the Debtors regarding certain other non-Debtor subsidiaries, including those associated with Trico Europe, Airtex, Brakes, and various South American and German operations, with respect to insolvency-related matters, lender and stakeholder negotiations, local sale processes, value preservation, contingency planning, board meetings, employment liabilities, and the wind down of Debtor operations, and coordinated with local counsel regarding the same, including preparing updates for the Special Committee, the Ad Hoc Group, and the Creditors' Committee;

- Coordinated with management for Trico Romania and local Romanian counsel regarding ongoing back-office services to the Debtor entities, including funding arrangements, intercompany invoicing, and contingency planning to ensure continuity of the central service center critical to the Debtors' continued operations, and supported the ongoing local debtor-in-possession insolvency proceedings by coordinating with Romanian counsel and the judicial administrator regarding court-mandated reporting, creditor communications, and other procedural requirements;

- Replaced and supported the appointment of new RoW management following the departure of key RoW management and personnel, and implemented appropriate safeguards and procedures to ensure financial and operational continuity across the non-Debtor subsidiaries;

- Drafted, reviewed, and finalized corporate, finance, and intercompany documentation with respect to Airtex Spain and Trico South America;

- Prepared, finalized, and submitted Trico Belgium S.A.'s claims to the insolvency tables of Diepersdorf Plastic Manufacturing GmbH and Linden Plastic Manufacturing GmbH, and coordinated with German insolvency administrators, the Trico accounting team, and Weil's Frankfurt office regarding supporting documentation and supplemental information requests;

- Coordinated with Spanish, Italian, Chinese, and Belgian local counsel and A&M regarding contingency planning for the Airtex Spain entities and contagion-risk mitigation strategies for the Trico Europe footprint, including the analysis of intercompany assignment and set-off arrangements between Airtex Spain and the Trico Europe entities;

- Analyzed the pledge over the business of Trico Belgium granted under the ABL facility and coordinated with counsel to the ABL Lenders and local counsel in Belgium regarding the release of such pledge, and advised regarding the liquidation of Trico UK and the appointment of an insolvency practitioner;

- Coordinated the handover of ongoing workstreams for certain RoW business units, including Trico Europe and Airtex, to the supervision of local directors and management;

- Coordinated with Brazilian counsel regarding the implications of the uncontrolled wind-down of an affiliated non-FBG Brazilian entity, the resignation and replacement of directors at certain Brazilian entities, D&O coverage for the Brazilian entities, and other Trico South America workstreams, and supported related intercompany, employment, and stakeholder communications in coordination with the Debtors' management and A&M;

- Advised certain Trico Europe entities with respect to ongoing operational matters, including cash-flow management, directors' duties considerations, audit and financial reporting requirements, and going-concern analysis;

- Coordinated with the CoFo German receiver and German notaries regarding shareholder and corporate information requests for the CoFo Group entities, and reviewed status updates and proceedings information for the CoFo and Plastics Germany insolvencies in connection with the broader RoW reporting to the Special Committee, the Ad Hoc Group, and the Creditors' Committee;

- Supported the engagement and invoicing of local counsel and the maintenance of the wind down tracker and entity structure charts in respect of such other non-Debtor subsidiaries; and

- Prepared and monitored the filing of claims by Trico entities in foreign insolvency proceedings.

kk. Mediation (Task Code 047)
Fees: $1,038,961.50; Total Hours: 478.70

- Engaged in months of extensive mediation led by Judge Isgur on a number of matters, including (i) case resolution with, among others, the Creditors' Committee and Ad Hoc Group, and (ii) disputes among the Ad Hoc Group, ABL Lenders, and Onset over lien/ownership of certain assets and allocation of sale proceeds regarding multiple going concern sales;

- Attended numerous mediation sessions with Judge Isgur and various stakeholder groups, including the Creditors' Committee, Ad Hoc Group, ABL lenders, Onset and other parties in interest;

- Prepared mediation strategy, reviewed mediation proposals, and prepared mediation-related materials;

- Analyzed various diligence issues in connection with mediation and corresponded with the mediator and mediation parties regarding the same; and

- Prepared, filed, and obtained Court approval of (i) the *Agreed Mediation Order Appointing Judge Marvin Isgur as Mediator* (Docket No. 1822), (ii) the *Second Agreed Mediation Order Appointing Judge Marvin Isgur as Mediator* (Docket No. 2005), and (iii) the *Third Agreed Mediation Order Appointing Judge Marvin Isgur as Mediator* (Docket No. 2186).

ll. WARN Adversary Proceeding (Task Code 048)
Fees: $731,903.50; Total Hours: 488.80

- Defended three (3) putative class action adversary proceedings filed by, or on behalf of, former U.S. employees against certain of the Debtors alleging violations of the WARN Act and state law equivalents, including the Garza and Tapia adversary proceedings (Adv. Pro. Nos. 26-03038 and 26-03052, respectively) and a proceeding commenced on behalf of employees represented by the UAW (Adv. Pro. No. 26-03143) (collectively, the "**WARN Adversary Proceedings**"), including reviewing and analyzing complaints, amended complaints, a motion for class certification, and a motion for leave to file a second amended complaint;

- Drafted and filed *Defendants' Motion to Dismiss First Amended Class Action Adversary Proceeding Complaint* (Adv. Pro. No. 26-03052, Docket No. 34);

- Drafted and filed *Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Adversary Proceeding Complaint and Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint* (Adv. Pro. No. 26-03038, Docket No. 18);

- Reviewed and analyzed a WARN Act complaint brought on behalf of employees represented by the UAW (Adv. Pro. No. 26-03143, Docket No. 1) and the related collective bargaining agreement, conferred with the UAW's counsel, and drafted and filed the *Defendants' Answer to Plaintiff's Complaint in Adversary Proceeding* (Adv. Pro. No. 26-03143, Docket No. 8), including research related thereto;

- Drafted, finalized, and filed the reply briefs in support of motions to dismiss the amended class action complaints in the Garza and Tapia adversary proceedings (Adv. Pro. Nos. 26-03038, Docket No. 25, and 26-03052, Docket No. 45, respectively), including analyzing the plaintiffs' oppositions and conducting legal research;

- Analyzed caselaw and applicable rules as relevant to the WARN Adversary Proceedings;

- Conferred with opposing counsel as relevant to the WARN Adversary Proceedings;

- Coordinated with the various Weil teams to advise the Debtors in the defense of the WARN Adversary Proceedings;

- Drafted and filed Defendants' response (Adv. Pro. No. 26-03038, Docket No. 34) to the plaintiffs' motion to consolidate the related actions (26-03038; 26-03052) and to appoint interim co-lead class counsel;

- Developed a work plan and conducted extensive legal research and case analysis in preparation for the Debtors' opposition to the plaintiffs' motion for class certification (Adv. Pro. No. 26-03052, Docket No. 41);

- Prepared for and attended the June 2, 2026 hearing on the plaintiffs' motion to consolidate the related actions (26-03038; 26-03052) and to appoint interim co-lead class counsel;

- Coordinated litigation hold notices and document preservation in connection with the WARN Adversary Proceedings;

- Prepared summaries of the status of each of the WARN Adversary Proceedings in connection with the transition of such matters following the conversion of the chapter 11 cases; and
- Coordinated with the Special Committee, the Creditors' Committee's counsel, the Ad Hoc Group's counsel, and the Debtors' insurers regarding the WARN Adversary Proceedings and related employment practices liability coverage.

32. In addition to the foregoing, Weil prepared, on behalf of the Debtors, all necessary motions, applications, orders, notices, responses, and other papers in support of positions taken by the Debtors and in compliance with applicable law.

33. The foregoing professional services were necessary and appropriate to the administration of the Debtors' chapter 11 cases. The professional services performed by Weil were in the best interests of the Debtors and their stakeholders. Compensation for such services is commensurate with the complexity, importance, and nature of the issues and tasks that were involved in the Debtors' chapter 11 cases. All of Weil's professional services were performed skillfully and efficiently.

34. Weil has a preeminent Restructuring practice and enjoys a national reputation for its expertise in financial reorganizations and restructurings of distressed entities. The professional services performed by Weil's partners, counsel, associates, and paraprofessionals during the Final Compensation Period were rendered by the Restructuring, Corporate, Litigation, and Tax, Benefits & Executive Compensation Departments predominantly in Weil's New York, Houston, Miami, and London offices.

35. The professional services performed by Weil on behalf of the Debtors during the Final Compensation Period required an aggregate expenditure of approximately 107,988.60 hours by Weil's partners, counsel, associates, paraprofessionals, and other non-legal staff. Of the aggregate time expended, approximately 29,833.80 recorded hours were expended

by partners and counsel of Weil, approximately 73,754.70 recorded hours were expended by associates, and approximately 4,400.10 recorded hours were expended by paraprofessionals and other non-legal staff of Weil. Of the three hundred thirty-eight (338) Weil attorneys who billed time, eighty (80) billed fewer than 15 hours to this matter. Of the fifty-two (52) Weil paraprofessionals and other non-legal staff who billed time, twenty-three (23) billed fewer than 15 hours to this matter.

36. During the Final Compensation Period, Weil billed the Debtors for time expended by attorneys based on hourly rates ranging from $540.00 to $2,850.00 per hour for attorneys. Allowance of compensation in the amount requested would result in a blended hourly billing rate for Weil attorneys in this Application of approximately $1,554.36 (based on 103,588.50 recorded hours for attorneys at Weil's billing rates in effect at the time of the performance of services).

37. During the Final Compensation Period, Weil estimates that (i) $149,449,345.75 in fees are on account of services rendered by Weil to, or for the benefit of, the DIP Loan Parties and (ii) $13,837,310.50 in fees are on account of services rendered by Weil to the non-DIP Loan Parties.[12]

38. Additionally, during the Final Compensation Period, Weil voluntarily reduced the amount of fees it requested by over $5 million.

**Actual and Necessary Disbursements of Weil**

39. As set forth in **Exhibit E** attached hereto, Weil has disbursed $266,610.38 as expenses incurred in providing professional services during the Fourth Interim Compensation Period and $1,618,428.39 as expenses incurred in providing professional services during the Final

[12] The amount of fees on account of services rendered to the non-DIP Loan Parties are included in task codes 004, 009, 017, 028, and 042.

Compensation Period. These expenses are reasonable and necessary and were essential to the overall administration of the Debtors' chapter 11 cases.

40. Although Weil has not charged the Debtors for any overtime expenses, consistent with firm policy, attorneys and other employees of Weil who worked late into the evenings or on weekends were reimbursed for their reasonable meal costs and their cost for transportation home from Weil's offices. Weil's regular practice is not to include components of those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services. The reimbursement amounts do not exceed those set forth in the Fee Guidelines or the Bankruptcy Local Rules.

41. With respect to photocopying expenses, in compliance with the Fee Guidelines and Bankruptcy Local Rule 2016-1, Weil charges all of its clients $0.10 per black-and-white page and $0.50 per color page. With respect to legal research, Weil does not charge more than the actual cost. Each of these categories of expenses does not exceed the maximum rate set by the Fee Guidelines or the Bankruptcy Local Rules. These charges are intended to cover Weil's direct operating costs, which costs are not incorporated into Weil's hourly billing rates. Only clients who actually use services of the types set forth in **Exhibit E** are separately charged for such services. The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services. The amount of the standard photocopying charge is intended to allow Weil to cover the related expenses of its photocopying service. A determination of the actual expenses per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.

42. On certain occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services. These disbursements are not included in Weil's overhead for the purpose of setting billing rates.

43. Weil has made every effort to minimize its disbursements in the Debtors' chapter 11 cases. The actual expenses incurred in providing professional services were those that were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors and their estates and creditors.

**Requested Compensation Should Be Allowed**

44. Section 331 of the Bankruptcy Code provides for compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. Section 330(a)(1) of the Bankruptcy Code provides that a Court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

45. The Fifth Circuit Court of Appeals has held that the six factors found in section 330(a)(3) of the Bankruptcy Code are to be considered when awarding compensation to professionals. *See In re Crager*, 691 F.3d 671, 676 (5th Cir. 2012). Specifically, under section 330 of the Bankruptcy Code, courts "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors," including—

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

46. In the instant case, Weil submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the preservation and maximization of value for all stakeholders and to the orderly administration of the Debtors' estates. The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

47. The Court itself recognized that the Debtors' chapter 11 cases required "significant time and expertise by all professionals involved." The Debtors were comprised of 112 entities whose prepetition businesses, together with the non-Debtor subsidiaries, included a global network of manufacturing and distribution centers that spanned five (5) continents and employed 26,000 individuals globally. Additionally, at the time of filing, the Debtors had a complex capital structure with more than $11 billion of prepetition obligations, including approximately $6 billion in funded debt obligations, at least $2.3 billion in factoring liabilities, at least $2.3 billion in "off-balance sheet" financing liabilities incurred through SPVs, and approximately $900 million in unsecured supply chain financing liabilities.

48. Furthermore, as detailed in various filings throughout the chapter 11 cases, the chapter 11 cases have been complicated by the prepetition conduct of the Debtors' former management team, who engaged in a yearslong fraudulent scheme involving, among other things, the manipulation of financial statements, double pledging of collateral, sale of fabricated accounts receivable, fraudulent transfers to insiders, and the use of inadequately capitalized special purpose vehicles to raise billions of dollars of debt to perpetuate the fraudulent scheme. In January 2026, the founder and former CEO and his brother were indicted by the United States Department of Justice and charged with crimes in connection with their management of First Brands.[13] Additional former executives of the Debtors have since pleaded guilty in connection with such charges.

49. The requested compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the issues and tasks involved. The Debtors' chapter 11 cases were uniquely difficult in terms of the combination of their size, speed, complexity, and contentiousness. Not only were Weil's professional services performed skillfully and efficiently, but whenever possible, Weil sought to minimize the cost of its services to the Debtors by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of case administration. In addition, groups of the same Weil attorneys were utilized for similar tasks in the Debtors' chapter 11 cases to minimize the costs of intra-Weil communication and education about the Debtors' circumstances.

50. In sum, the services rendered by Weil were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the types

[13] *See First Brands Executives Charged with Multibillion-Dollar Fraud*, U.S. ATTORNEY'S OFF., S.D.N.Y. (Jan. 29, 2026), https://www.justice.gov/usao-sdny/pr/first-brands-executives-charged-multibillion-dollar-fraud.

of issues involved in the chapter 11 cases. Accordingly, approval of the compensation for professional services and reimbursement of expenses sought in this Application is warranted.

## **Notice**

51. Notice of this Application will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## **Conclusion**

52. Weil respectfully requests that the Court award final allowance of Weil's compensation for professional services rendered during the (i) Fourth Interim Compensation Period in the amount of $17,259,507.25, representing 100% of fees incurred during the Fourth Interim Compensation Period, and reimbursement in the amount of $266,610.38, representing 100% of actual and necessary expenses incurred during the Fourth Interim Compensation Period, and (ii) Final Compensation Period in the amount of $163,286,656.25, representing 100% of fees incurred during the Final Compensation Period, and reimbursement in the amount of $1,618,428.39, representing 100% of actual and necessary expenses incurred during the Final Compensation Period, and that such allowance be without prejudice to Weil's right to seek additional compensation for services performed and expenses incurred during the Compensation Periods in the event such fees and expenses were not processed at the time of this Application and grant such other and further relief as is proper and just.

Dated: October 16, 2026
Houston, Texas

*/s/ Clifford W. Carlson*

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: gabriel.morgan@weil.com
clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Andriana Georgallas (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Jason H. George (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: matt.barr@weil.com
sunny.singh@weil.com
andriana.georgallas@weil.com
kevin.bostel@weil.com
jason.george@weil.com

**Certificate of Service**

I hereby certify that on October 16, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Clifford W. Carlson*
Clifford W. Carlson