**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| FIRST BRANDS GROUP, LLC, *et al.*, | : | Case No. 25-90399 (CML) |
| Debtors.[1] | : | (Jointly Administered) |

**SUMMARY COVERSHEET TO FIRST AND FINAL FEE APPLICATION OF LINEAL SERVICES, LLC, ELECTRONIC DISCOVERY SERVICE PROVIDER TO THE EXAMINER, FOR THE PERIOD FROM JANUARY 5, 2026 THROUGH AND INCLUDING AUGUST 31, 2026**

| | |
|---|---|
| **Name of Applicant:** | Lineal Services, LLC ("Lineal") |
| **Applicant's Role in Case:** | eDiscovery, digital forensics, and technical support services provider to the Examiner |
| **Docket No. of Employment Order:** | Docket No. [1935] (effective as of January 5, 2026)[2] |
| **Interim Application ( )**<br>**Final Application (X)** | |
| **Time period covered by this Application for which interim compensation has not previously been awarded:** | Beginning Date: January 5, 2026<br>End of Period: August 31, 2026 |
| Were the services provided necessary to the administration of or beneficial at the time rendered toward the completion of the case? (Y) | |
| Were the services provided necessary to the administration of or beneficial at the time rendered toward the completion of the case? (Y) | |
| Were the services performed in a reasonable amount of time commensurate with the complexity, importance and nature of the issues addressed? (Y) | |

[1] A complete list of the Debtors in the Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.

[2] This docket item is Lineal's application for employment effective as of January 5, 2026. No objections to the application were filed or otherwise interposed. However, the proposed order [Docket No 1935-2] was not entered by the Court. If so required, Lineal will provide the proposed order for entry.

| | |
|---|---|
| Is the requested compensation reasonable based on the customary compensation charged by comparably skilled practitioners in other non-bankruptcy cases? (Y) | |
| Do expense reimbursements represent actual and necessary expenses incurred? (Y) | |
| **Compensation Breakdown for Time Period Covered by this Application** | |
| **Total professional fees covered in this Application:** | $703,264.86 |
| **Total professional hours covered by this Application:** | 1236.35 |
| **Average hourly rate for professionals:** | $238.84 |
| **Total paraprofessional fees covered in this Application:** | N/A |
| **Total paraprofessional hours covered by this Application:** | N/A |
| **Average hourly rate for paraprofessionals:** | N/A |
| **Total fees requested in this Application:** | $295,293.75 |
| **Total expense reimbursements requested in this Application:** | $407,721.41 (Billable Expenses and Relativity Data Hosting January 2026 through August 31 2026) |
| **Total fees and expenses requested in this Application:** | 703,264.86 |
| **Total fees and expenses awarded in all prior Applications:** | $0.00 |
| **Plan Status:** On September 1, 2026, the Court entered its order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code (Docket No. 3748). This Application is filed pursuant to paragraph 2 of that order. | |
| **Primary Benefits:** During the Compensation Period, Lineal collected, processed, hosted, and managed the electronically stored information gathered in the Examiner's investigation. That work produced the searchable document database on which the Examiner and his counsel relied in preparing the Examiner's Report filed on April 27, 2026 (Docket No. 2538). The database remains a preserved and organized record for the benefit of the Debtors' estates and any estate representative who continues the investigation or pursues related claims. | |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| FIRST BRANDS GROUP, LLC, *et al.*, | : | Case No. 25-90399 (CML) |
| Debtors.[3] | : | (Jointly Administered) |

**FIRST AND FINAL FEE APPLICATION OF LINEAL SERVICES, LLC, ELECTRONIC DISCOVERY SERVICE PROVIDER TO THE EXAMINER, FOR THE PERIOD FROM JANUARY 5, 2026 THROUGH AND INCLUDING AUGUST 31, 2026**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Lineal Services, LLC ("Lineal"), the eDiscovery, digital forensics, and technical support services provider to Martin De Luca (the "Examiner"), the Court-appointed Examiner in the above-captioned jointly administered cases (the "Cases") of First Brands Group, LLC and its affiliated debtors (collectively, the "Debtors"), hereby files its first and final application (this "Application") for allowance of fees for services performed during the period commencing January 5, 2026 through and including August 31, 2026 (the "Compensation Period") in the amount of $295,293.75 and actual and necessary expenses in the amount of $407,721.41incurred during the Compensation Period, as well as approval of all compensation for such fees and expenses paid to Lineal to date, and respectfully represents as follows:

[3] A complete list of the Debtors in the Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.

## JURISDICTION, VENUE, AND STANDING

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases and other authority for the relief requested herein include sections 328, 330(a), 331, and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court's Local Rule 2016-1, the Court's Order Directing Appointment of an Examiner entered on November 19, 2025 (Docket No. 726) (the "Examiner Order"), the Court's Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals entered on November 17, 2025 (Docket No. 699) (the "Interim Compensation Order"), and the Application for Order Authorizing the Employment and Retention of Lineal Services, LLC as Electronic Discovery Service Provider to the Examiner (Docket No. [1935]) (the "Retention Application").

## BACKGROUND

### A. The Cases and the Appointment of the Examiner

4. On September 24 and 28, 2025, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. On October 8, 2025, Raistone Capital LLC and Raistone Purchasing LLC – Series XXXII filed an Emergency Motion for the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code (Docket No. 307). On October 15, 2025, the United States Trustee (the "U.S. Trustee") filed an Expedited Motion for Entry of an Order Directing the Appointment of an Examiner (Docket No. 340).

6. On November 19, 2025, the Court entered the Examiner Order, directing the appointment of an examiner under section 1104(c) of the Bankruptcy Code to investigate (a) the

facts and circumstances, including general corporate practices, concerning the Debtors' prepetition factoring processes and factoring transactions, including allegations of fraudulent or inaccurate invoices and accounts receivable factored more than once, related transfers among the Debtors, insiders, affiliates, and third-party factors, and the accounting for factoring proceeds; and (b) the facts and circumstances concerning the Debtors' Off-Balance Sheet Financing Transactions, as defined in the Examiner Order. Examiner Order ¶ 3.

7. Paragraph 5 of the Examiner Order authorizes the Examiner to retain professionals pursuant to the standards under section 327 of the Bankruptcy Code. Paragraph 4 of the Examiner Order provides a $7 million budget for the aggregate fees and expenses of the Examiner and his professionals (the "Examination Budget").

8. On December 16, 2025, the U.S. Trustee filed its Notice of Appointment of Examiner (Docket No. 961), and on January 9, 2026, the Court entered its Order Approving the Appointment of Examiner (Docket No. 1260), appointing Martin De Luca as the Examiner.

9. On January 21, 2026, the Examiner filed his proposed Work Plan (Docket No. 1650) (the "Work Plan"), and on January 29, 2026, the Court entered an order approving the Work Plan (Docket No. 1819).

**B. Lineal's Retention**

10. On February 16, 2026, the Examiner filed the Retention Application, attaching Lineal's Letter of Engagement & Statement of Work for Discovery Services (the "Engagement Letter") (Docket No. 1935-1).

12. Under the Retention Application and Engagement Letter, Lineal was retained to, among other things:

- perform custodial and non-custodial data collection, computer forensics, and forensic triage services in connection with the Examiner's investigation;

- process, normalize, host, and manage electronically stored information for review and production, including through secure cloud or on-premises review environments;
- provide data analytics, searching, filtering, and early case assessment services, including keyword, metadata, predictive, and analytics-based methods;
- provide project management, ongoing case support, and managed document and data review services under the direction of the Examiner and his counsel;
- generate forensic reports, early case assessment reports, analytics dashboards, privilege logs, production-ready files, and related work product; and
- perform such other eDiscovery, forensic, and technical support services as may be necessary or appropriate to carry out the Examiner's duties.

13. Lineal performed its services at the direction of the Examiner and his counsel, Boies Schiller Flexner LLP ("BSF"), using RelativityOne, Nuix, and Lineal's Amplify™ platform as appropriate.

14. The Engagement Letter provides for compensation on an hourly and unit basis, plus reimbursement of documented, reasonable out-of-pocket expenses. The principal rates are summarized in Exhibit B. The Engagement Letter also provides that the Debtors' estates, not the Examiner's counsel, are responsible for payment of Lineal's fees and expenses, and that all fees and expenses are subject to Bankruptcy Court approval and the applicable compensation procedures.

## C. The Examination Budget and Conversion of the Cases

15. In late February 2026, the Examiner substantially scaled down his investigation because the Examination Budget was nearly exhausted and no additional funding source was available. The Examiner then prioritized the collection and preservation of documents, data, and other evidence critical to the investigation and to any later prosecution of claims by estate representatives. That shift placed Lineal's collection, processing, and hosting work at the center of the Examiner's remaining efforts.

16. On April 17, 2026, the Examiner filed his Examiner's Report under seal, and on April 27, 2026, he filed a revised report under seal and a redacted version on the public docket (Docket No. 2538) (the "Examiner's Report").

17. The Debtors have disbursed the entire $7 million Examination Budget to the Examiner and his professionals, including the e-discovery vendor, on a pro rata basis and in accordance with the Interim Compensation Order.

18. For the Compensation Period, Lineal incurred $295,293.75 in fees and $407,721.41 in expenses. On June 2, 2026, Lineal received payment of $509,652.77, consisting of 80% of its fees ($235,209.00) and 100% of its expenses ($274,443.77) for January, February, and March 2026. Lineal's unpaid fees and expenses total $193,612.09.

19. On July 27, 2026, the Debtors filed the last iteration of their Joint Chapter 11 Plan (Docket No. 3448). On August 24, 2026, the Court entered its Order Denying Plan Confirmation (Docket No. 3710). On September 1, 2026, the Court entered an order converting the Cases to cases under chapter 7 of the Bankruptcy Code (Docket No. 3748) (the "Conversion Order").

**RELIEF REQUESTED**

20. This Application has been prepared in accordance with section 330(a) of the Bankruptcy Code, Bankruptcy Rule 2016, Bankruptcy Local Rule 2016-1, the Court Procedures for Judge Christopher M. Lopez, the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 (the "Fee Guidelines"), and the Interim Compensation Order.

21. By this Application, Lineal seeks entry of an order, substantially in the form submitted with this Application, pursuant to section 330(a) of the Bankruptcy Code, the Interim Compensation Order, and the Conversion Order, (a) approving the fees and expenses incurred

during the Compensation Period, and (b) allowing on a final basis compensation and expense reimbursement limited to the amounts already paid to Lineal under the Interim Compensation Order. Lineal does not seek, through this Application, allowance or payment of the Lineal Holdback.

22. Lineal has continued to host the Examiner's database and has issued invoices for April through August 2026 totaling $134,627.64, none of which has been paid. Lineal does not seek compensation of those amounts through this Application but reserves all rights with respect to them.

23. There is no agreement or understanding between Lineal and any other person, other than members and employees of Lineal, for the sharing of compensation to be received for services rendered in the Cases. Other than the payment described above, Lineal has received no payment or promise of payment from any source for services rendered in connection with the matters covered by this Application.

24. Lineal's fees were charged at the rates set forth in the Engagement Letter. Those rates are no greater than the rates Lineal charges for comparable services in non-bankruptcy matters, and they are reasonable based on the customary compensation charged by comparable eDiscovery and forensic service providers.

**SUPPORTING DOCUMENTS**

25. Attached hereto as Exhibit A is the Certification of Damon Goduto, Partner of Lineal (the "Lineal Certification"), regarding Lineal's compliance with the Fee Guidelines and the Court's procedures for complex chapter 11 cases.

26. Attached hereto as Exhibit B is a summary of Lineal's fees and expenses for the Compensation Period by month, the rates charged under the Engagement Letter, and a schedule of

the Lineal professionals who performed services during the Compensation Period, together with summary information regarding hours, rates, and fees.

27. Lineal has not attached detailed time entries or detailed expense backup to this Application. Such detail was provided to the parties required to receive monthly submissions under the Interim Compensation Order for January, February, and March 2026. The payment already made to Lineal was made on the basis of those submissions, and no party objected to them. If the Court wishes to review detailed time and expense records, Lineal can provide them under seal or as the Court directs. Maintaining the confidentiality of those records serves the Debtors' chapter 7 estates because they may reveal custodians, data sources, search methods, and investigative priorities relevant to claims that may be pursued for the benefit of creditors.

28. Attached hereto as Exhibit C is a comparable rate disclosure for Lineal's services.

## SUMMARY OF SERVICES RENDERED DURING THE COMPENSATION PERIOD

29. During the Compensation Period, Lineal provided the technical infrastructure for the Examiner's investigation. The summary below is organized by service category. Certain services overlap between categories, but Lineal made a good-faith effort to categorize its work consistently.

### a. Data Collection and Digital Forensics

Hours: 639.7 Fees: $180,400

- Scoping, collection, forensic extraction, and imaging of custodial and non-custodial data sources identified by the Examiner and his counsel, including mobile devices where necessary.
- Forensic triage and chain-of-custody documentation so that the collected evidence is preserved in a defensible form for later use by estate representatives.

**b. Data Processing and Hosting**

Hours: [241.7] Fees: [$36,255]

- Processing, normalizing, and loading electronically stored information from the Debtors, third parties, and foreign sources into a secure RelativityOne review environment, with Nuix processing used for structured data and chat applications.

- Monthly hosting of the review database and management of user access for the Examiner's team.

**c. Analytics, Search, and Early Case Assessment**

Hours: [3.25] Fees: [$406.25]

- Keyword, metadata, and analytics-based searching and filtering to reduce data volumes and focus attorney review on the most relevant material, including AI-assisted processing where appropriate.

- Review workflow and analytics consulting to support the Examiner's witness interviews, financial analysis, and preparation of the Examiner's Report.

**d. Project Management and Case Support**

Hours: [347.7] Fees: [$78,232.50]

- Day-to-day project management, coordination with the Examiner and BSF, technical support, and reporting needed to keep a large and fast-moving collection effort organized and cost-effective.

30. The foregoing services were necessary and appropriate to the Examiner's investigation under the Work Plan and were in the best interests of the Debtors' estates. Without them, the evidence the Examiner gathered could not have been preserved, searched, or used to prepare the Examiner's Report. Compensation for these services is commensurate with the complexity, importance, and nature of the tasks involved.

31. The services performed by Lineal during the Compensation Period required an aggregate expenditure of approximately 1236 hours by Lineal professionals, billed at the hourly rates set forth in the Engagement Letter, which range from $150.00 to $400.00 per hour. Allowance of compensation in the amount requested results in a blended hourly rate of $238.84.

32. Lineal's fees by month during the Compensation Period were: January 2026, $212,365.00; February 2026, $80,581.25; and March 2026, $1,065.00, for a total of $294,011.25.

The sharp decline after January reflects the Examiner's decision in late February 2026 to scale back the investigation in light of the Examination Budget.

**ACTUAL AND NECESSARY EXPENSE DISBURSEMENTS**

33. Lineal incurred $274,443.77 in expenses during the Compensation Period. These expenses consist primarily of per-gigabyte data processing and hosting charges, per-user platform charges, per-document AI processing charges, per-device collection charges, and hard drives used for data transfers, each charged at the unit rates in the Engagement Letter, together with travel costs incurred for on-site collections.

34. These expenses were reasonable and essential to the Examiner's investigation under the Work Plan. Lineal charges its clients for these items in the ordinary course and does not include them in its hourly rates. The reimbursement amounts do not exceed those permitted by the Fee Guidelines or the Bankruptcy Local Rules.

**THE REQUESTED COMPENSATION AND EXPENSE REIMBURSEMENT SHOULD BE ALLOWED**

36. Section 330(a)(1) of the Bankruptcy Code provides that the Court may award a professional employed under (or, in this case, pursuant to the standards of) section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered … [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A)–(B).

37. The Fifth Circuit has held that courts should consider the factors in section 330(a)(3) of the Bankruptcy Code when awarding compensation to professionals. See In re Crager, 691 F.3d 671, 676 (5th Cir. 2012). Under section 330, courts "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors," including:

(A) the time spent on such services;

(B) the rates charged for such services;

> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

38. Each factor supports the relief requested. Lineal's services were necessary to the Examiner's work and beneficial when rendered, because they allowed the Examiner to collect, preserve, and search millions of documents across multiple jurisdictions and to complete the Examiner's Report. Lineal's rates were disclosed in the Retention Application and approved by the Retention Order, and they are consistent with what Lineal charges outside bankruptcy. Lineal also scaled its work down promptly when the Examiner narrowed the investigation, as reflected in its declining monthly fees.

39. Lineal asks only that the Court approve, on a final basis, the amounts it has already been paid. Lineal does not seek allowance or payment, through this Application, of the Lineal Holdback or any other compensation or expense reimbursement above the amounts already paid. Approval of the requested compensation and expense reimbursement is therefore warranted.

## NOTICE

40. Notice of this Application will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## CONCLUSION

41. Lineal respectfully requests that the Court enter an order pursuant to section 330(a) of the Bankruptcy Code and the Interim Compensation Order: (i) approving the fees of $295,293.75 and expenses of $407,721.41 incurred by Lineal during the Compensation Period; (ii) allowing on a final basis compensation of $235,209.00 and expense reimbursement of $274,443.77, being the amounts already paid to Lineal pursuant to the Interim Compensation Order; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: October 16, 2026

Respectfully submitted,

LINEAL SERVICES, LLC

/s/ Damon Goduto
Damon Goduto
Founding Partner
1321 Burlington Street, Suite D
North Kansas City, MO 64116

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2026, a true and correct copy of the foregoing Application was served via the Court's CM/ECF system to all parties consenting to service through the same.

/s/ Matthew S. Okin
Matthew S. Okin