**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 7** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

**REPLY OF EDWARD JAMES IN SUPPORT OF JOINDER TO THE EXCESS ABC INSURERS' MOTION FOR ENTRY OF AN ORDER (I) CLARIFYING THAT THE MAY 29, 2026 ORDER (DKT. NO. 2845) MODIFIES THE AUTOMATIC STAY TO AUTHORIZE PAYMENTS BY THE EXCESS ABC INSURERS, OR ALTERNATIVELY (II) AUTHORIZING, AND, TO THE EXTENT NECESSARY, MODIFYING THE AUTOMATIC STAY TO ALLOW THE EXCESS ABC INSURERS TO MAKE PAYMENTS, INCLUDING THE ADVANCEMENT OF DEFENSE COSTS, OF INSURED PERSONS (DKT. NO. 3669)**

Edward James ("Mr. James") respectfully submits this reply in further support of his joinder (the "Joinder") (Dkt. No. 3824)[2] to the *Motion for Entry of an Order (I) Clarifying that the May 29, 2026 Order Modifies the Automatic Stay to Authorize Payments by the Excess ABC Insurers or Alternatively (II) Authorizing, and, to the Extent Necessary, Modifying the Automatic Stay to Allow the Excess ABC Insurers to Make Payments, Including the Advancement of Defense Costs, of Insured Persons* (the "Motion") (Dkt. No. 3669) filed by XL Specialty Insurance Company, Endurance American Insurance Company, Markel American Insurance Company, Berkley Insurance Company, Arch Insurance Company, Federal Insurance Company, Twin City Fire Insurance Company, Everest National Insurance Company, and Old Republic Insurance Company (collectively, the "Excess ABC Insurers"), and in response to the objections of Katsumi

---

[1] A complete list of the chapter 11 Debtors may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The address of the Debtors' corporate headquarters is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms not defined herein have the meaning ascribed to them in the Joinder.

Servicing, LLC ("Katsumi") (Dkt. No. 3876) and the chapter 7 trustee of the FBG Debtors (the "FBG Debtor Trustee"), and the joinder of Evolution Credit Opportunity Master Fund II-B, LP and certain affiliates ("Evolution") in Katsumi's and the Committee's objections. Katsumi, Evolution, the FBG Debtor Trustee, and the Committee are referred to collectively herein as the "Objectors."[3]

## PRELIMINARY STATEMENT

The Objectors do not seriously dispute what the May 29 Order says. Instead, they ask the Court to ignore it. The May 29 Order expressly modified the automatic stay to permit the "Side A Insurers" to pay and advance Defense Costs, and incorporated by reference a definition of "Side A Insurers" that unambiguously includes the Excess ABC Insurers. None of the Objectors offers a reasonable alternative reading of the Order's text.

Unable to contest the Order's plain language, the Objectors attempt to distract the Court with an argument about jurisdiction, contending that the pending appeal of a portion of the Court's January 7 ruling deprived the Court of power to modify the stay. That argument is both irrelevant to the request for clarification of the May 29 Order and wrong on the merits. The jurisdictional validity of the May 29 Order is not before the Court and has no bearing on the Court's clarification of its effect. Further, settled Fifth Circuit authority confirms that an appeal divests a court of jurisdiction only over the matters actually on appeal, and the appeal here is limited to whether the ABC Policy proceeds are property of the estate under 11 U.S.C. § 541, which is an entirely separate question from whether cause exists to modify the automatic stay under 11 U.S.C. § 362.

---

[3] As explained in the Joinder, the Committee no longer exists. The Committee's objection was filed before the Committee was dissolved pursuant to the Court's September 1, 2026 Order converting the Debtors' chapter 11 cases to cases under chapter 7. *See* Joinder at 2.

The need for relief from the stay, moreover, has only grown more pressing, and absent the requested clarification of the May 29 Order, there exists significant cause to modify the stay to permit the ABC Excess Insurers to advance defense costs. As explained below, on October 6, 2026, the next Side A insurer in line to pay notified the Insureds that it will not pay for their defense, and the Side A Policies above it will not attach until that layer is exhausted. Without relief, Mr. James, who faces trial in the underlying criminal matter on February 9, 2027, will be left with no current source of insurance funding to which he is contractually entitled.

Accordingly, Mr. James respectfully requests that the Court grant the Motion and clarify that the May 29 Order authorizes the Excess ABC Insurers to advance Defense Costs or, in the alternative, modify the automatic stay to permit them to do so.

## ARGUMENT

### I. The Objectors Make No Plausible Argument in Opposing the Motion's Request for Clarification

#### A. The May 29 Order Authorizes the Excess ABC Insurers to Advance Defense Costs

The primary relief sought in the Motion is for the Court to enter an order clarifying and confirming that the May 29 Order authorized the Excess ABC Insurers to advance Defense Costs. *See* Motion at 10. The May 29 Order plainly did so. It provided that "[t]he automatic stay set forth in section 362 of the Bankruptcy Code, to the extent applicable, is modified to permit the Primary Insurer and Side A Insurers to pay and/or advance Defense Costs consistent with their obligations under the ABC Policy." May 29 Order at 1. The Order further provided that "[c]apitalized terms that are not defined have the meaning ascribed to them in the motion at ECF No. 798." *Id.* at 1 n.1. The motion at ECF No. 798 – after defining the "Primary Insurer" as "Berkshire Hathaway Specialty Insurance Company" – defined the "Side A Insurers" as "any other insurance carrier of a directors and officers insurance policy listed on Exhibit C to [the Debtors'

motion at Dkt. No. 10]." Dkt. No. 798 at 2–3. Exhibit C to Dkt. No. 10 identifies each of the Excess ABC Insurers by name and identifies them as carriers of directors and officers insurance policies. Dkt. No. 10, Ex. C. In other words, "Side A Insurers" includes the Excess ABC Insurers, and the May 29 Order modified the automatic stay to permit the Excess ABC Insurers to advance defense costs.

Neither the Committee nor Evolution present an alternative interpretation or attempt to explain how the May 29 Order could be read in any way other than to authorize the Excess ABC Insurers to advance defense costs. *See* Dkt. No. 3695; Dkt. No. 3893.

Katsumi and the FBG Debtor Trustee dispute this interpretation by simply asking that the defined terms expressly incorporated into the May 29 Order be ignored. Katsumi contends that "[t]he Side A Insurers themselves call the Excess ABC Policies separate layers of the 'ABC Policies,' not Side A Policies," Dkt. No. 3876 at 5, but an argument based on how language may have been used outside the context of an order has no place where that specific language is defined in the order itself. *Cf. In re Hosek*, 136 B.R. 672, 674 (Bankr. W.D. Tex. 1991) ("Of course, this 'plain, ordinary meaning' rule does not apply when the legislature specifically defines a term."). Moreover, the May 29 Order's reference to the "Side A Insurers" in authorizing payment makes perfect sense from a plain-language perspective, given that the individual directors and officers who would be receiving these payments would be doing so on the basis of the D&O Policies' "Side A" coverage.

Katsumi further asserts that "[t]he May 29 Order does not name the Excess ABC Insurers," Dkt. No. 3876 at 5, and the FBG Debtor Trustee likewise avers that the Order "never mentions the Excess ABC Insurers," Dkt. 3904 at 3; *see also id.* at 14–15. Stating the obvious, no ambiguity arises from the Court having incorporated by reference a defined term that does expressly name

the Excess ABC Insurers, rather than having listed the Excess ABC Insurers by name in the text of the Order itself.[4]

Moreover, reading the May 29 Order not to authorize payments under the Excess ABC Policies makes no sense, and would render much of the Order surplusage. Limiting the term "Side A Insurers" as used in the Order to include only those insurers that the Objectors insist this language covered would make the Order's authorization of the "Side A Insurers to pay and/or advance Defense Costs" wholly meaningless because those insurers were already authorized to advance Defense Costs under the January 7 Order. The Objectors offer no interpretation of the May 29 Order that gives effect to all its terms. Indeed, there is none if – as the Objectors contend – the Order does not authorize the Excess ABC Insurers to make payments. Nor can the Objectors' reading be squared with reason: it would mean the Order authorized the insureds to access only the first layer of the ABC Policies, a result for which the Objectors supply no rationale.

In short, the plain intent and effect of the May 29 Order was to authorize the Excess ABC Insurers to make payments.

**B. The Objectors' Arguments Concerning Divestiture of Jurisdiction Are Irrelevant to the Motion to Clarify**

Rather than attempt to explain how the May 29 Order could mean something other than what it says, the Objectors contend that the pending appeal of the Court's January 7 ruling holding that the proceeds of the ABC Policies are property of the Debtors' estates under 11 U.S.C. § 541 rendered the Court unable to separately modify the automatic stay pursuant to 11 U.S.C. § 362. As addressed below in connection with the Motion's alternative request for relief from the stay,

---

[4] The FBG Debtor Trustee's attempt to conjure inconsistency from the May 29 Order's authorization of the insurers to make payments pursuant to the "'ABC Policy' – singular," Dkt. 3904 at 14, rather than the ABC "Policies," is equally untenable. The Excess ABC Insurers issued policies that follow form to the ABC Policy, and it is entirely natural and clear to refer to the Excess ABC Insurers as having obligations "under the ABC Policy," as stated in the May 29 Order.

this argument fails. However, as to the Motion's primary request for relief seeking clarification of the May 29, 2026 Order, the argument is irrelevant.

If the Objectors believed that the May 29, 2026 Order was improper, they could have timely sought to appeal the Order or moved for reconsideration. They did not. Any such attempt now would undoubtedly be an improper collateral attack on the long-final May 29, 2026 Order. *See, e.g., Matter of Linn Energy, L.L.C.*, 927 F.3d 862, 867 (5th Cir. 2019) ("[Federal jurisprudence] explicitly precludes collateral attacks on final bankruptcy orders by parties to the proceedings 'whether or not they were proper exercises of bankruptcy court jurisdiction and power' in the first instance. To hold otherwise would upend the need for finality in the judicial system, because 'this sort of collateral attack cannot be squared with res judicata and the practical necessity served by that rule.'") (brackets omitted) (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152, 154) (2009)). But that is not before the Court. At issue here is *what* the Court ordered; arguments concerning the appropriateness or validity of the May 29 Order have no bearing on the Court's clarification of its own order.

To the extent any of the Objectors contend that the Court could not have intended to authorize the Excess ABC Insurers to advance Defense Costs because the Court did not have jurisdiction to do so, such an argument does not withstand scrutiny. The Court undisputedly authorized the Primary Insurer to advance payments under the ABC Policy, and the Objectors do not contend the Court was divested of jurisdiction to modify the automatic stay to authorize those payments.

Thus, the Objectors' arguments are nonsensical: there is no reason why the Court would have retained jurisdiction to authorize payments by one ABC Insurer and not the others. It is therefore a non-starter to contend that the Court could not have intended to authorize the Excess

ABC Insurers to advance payments, or to argue that Movants are advancing a "construction" of the May 29 Order that would be inconsistent with the Court's authority.[5]

## II. Alternatively, Cause Exists to Modify the Stay as to the Excess ABC Policies

As set out above, Movants are entitled to the clarification they seek, and the Court need not consider whether the stay should be further modified now. If, however, the requested relief of clarification is not granted, there is substantial cause to modify the automatic stay to allow the Excess ABC Policies to advance Defense Costs.

### A. The Bankruptcy Court Has Not Been Divested of Jurisdiction

This Court was not divested of jurisdiction to lift the automatic stay pursuant to 11 U.S.C. § 362 by virtue of the appeal of the Court's order on the independent issue of whether the proceeds of the ABC Policy are property of the Debtors' estates under 11 U.S.C. § 541.

The Fifth Circuit "has specifically rejected 'the broad rule that a bankruptcy court may not consider any request which either directly or indirectly touches upon the issues involved in a pending appeal and may not do anything which has any impact on the order on appeal.'" *In re Scopac*, 624 F.3d 274, 280 (5th Cir. 2010) (quoting *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 727 (5th Cir. 1991)); *see also Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 908 (5th Cir. 2010) ("[A] narrow interpretation [of the divestiture doctrine] is normally appropriate."). "Where courts have held that a bankruptcy court was divested of jurisdiction to enter a subsequent order, it is usually because the subsequent order would have modified, or would have been inconsistent

[5] Evolution separately asserts, without citation to a single case, that the Court was required to provide notice and a hearing before issuing the May 29 Order. Dkt. No. 3893 at 2. This argument is misplaced for the same reason: the validity of the May 29 Order is not at issue. The argument is also unavailing. *See, e.g.*, *In re Concepcion*, 494 B.R. 622, 624 (Bankr. D.P.R. 2013) ("The *sua sponte* lifting or modifying of the automatic stay authority that this Court draws upon is well settled amongst courts in many of our sister Circuits."); *In re Miller*, 589 B.R. 550, 563 (Bankr. S.D. Miss. 2018) ("For all of the above reasons, the Court concludes, *sua sponte*, that cause exists under § 362(d)(1) to modify the automatic stay ….").

with, an order pending on appeal." *In re Acis Capital Mgmt., L.P.*, 604 B.R. 484, 522 (N.D. Tex. 2019), *aff'd sub nom. Matter of Acis Capital Mgmt., L.P.*, 850 Fed. Appx. 302 (5th Cir. 2021).

The May 29 Order did not modify any ruling then on appeal, nor was it inconsistent with any ruling on appeal. The *only* ruling on appeal was the Court's determination as to whether the "Debtors have an interest in the proceeds of the ABC Policy, and that interest is property of the estate under § 541." *See* Dkt. No. 1647 (Notice of Appeal) at 2. Accordingly, the sole issue presented on appeal is "[w]hether the proceeds of the ABC Policy are property of the Debtors' estates under 11 U.S.C. § 541." Dkt. 1861 at 2.

An order by the Court modifying the automatic stay under 11 U.S.C. § 362 would not in any way be inconsistent with or modify the Court's January 7 Order. The determination of whether an interest is property of the estate in the first instance is an entirely separate analysis, governed by 11 U.S.C. § 541, a separate provision of the Bankruptcy Code.

Bankruptcy Rule 8003(a)(6) – invoked by appellants in noticing their appeals – explicitly permits an appellant to "identify only part of a judgment or appealable order or decree by expressly stating that the notice of appeal is so limited." Fed. R. Bankr. P. 8003. The Objectors seek to nullify this provision and disrupt the clarity that it offers parties and the courts by disregarding the deliberately and clearly limited nature of the appeal.

Here, there is no "risk that [the courts] will reach inconsistent conclusions," because they will be addressing entirely separate issues. *Winchester v. U.S. Attorney for S. Dist. of Tex.*, 68 F.3d 947, 949 (5th Cir. 1995). Accordingly, the Court retains jurisdiction to modify the automatic stay.

The Objectors do not contend otherwise. Rather, they point to the "practical result" of the May 29 Order and assert that the requested clarification would "render moot the appeal." Dkt.

3876 at 4; *see also* Dkt. 3904 at 13. Even if this were the case, the Objectors cite to no authority that courts are divested of jurisdiction to issue any order that may moot a pending appeal. In fact, there is nothing atypical about this result. *See, e.g., In re Ahmed*, 420 B.R. 518, 523 (Bankr. C.D. Cal. 2009), *as amended* (Jan. 8, 2010) (noting that an "appeal only deprives the bankruptcy court of the power to alter, expand or vacate the order at issue," and that "[w]hether subsequent proceedings in a lower court render an appeal moot is a matter to be determined in the court where the appeal is pending"). Nothing in the May 29 Order "alter[s], expand[s] or vacate[s] the order at issue."[6]

Further, modifying the automatic stay would not, as the Objectors contend, "circumvent the appellate process." To the contrary, the Objectors' own authority confirms that it is "[a]ttempting to modify an order pending on appeal, or issuing a subsequent order that is inconsistent with the order being appealed," which "circumvents the appellate process." *In re Acis*, 604 B.R. at 522 (cited at Dkt. No. 3695 at 6). Neither would be the case here.

Rather, as the January 7 Order found that the "Debtors have an interest in the proceeds of the ABC Policy, and that interest is property of the estate under § 541," and denied the movants' request to modify the stay without prejudice, any ruling to modify the stay would be entirely consistent with the January 7 Order. Accordingly, the Court retains jurisdiction to modify the automatic stay to authorize payment of Defense Costs by the Excess ABC Insurers.

[6] Objectors contend that appellants' position in their status report to the District Court proves that the May 29 Order "circumvents the appeal." However, appellants simply recognized what the case law makes clear: subsequent events in a bankruptcy proceeding may render an appeal moot or effectively moot, and that is not a circumvention of the appellate process. Indeed, appellants recognized earlier in seeking to stay the appeal pending the confirmation hearing that "this Appeal may become moot if the Revised Plan is confirmed and becomes effective." Dkt. No. 55, Case No. 4:26cv513, at 4.

### B. Cause Exists to Modify the Stay

Cause exists to modify the stay to allow the Excess ABC Insurers to make payments for the reasons stated in the Motion. Further, the need for relief from the stay is now particularly acute.

On October 6, 2026, one of the Side A carriers, Beazley Insurance Company, Inc. ("Beazley"), notified the Insureds that it has no obligation to pay for the Insureds' defenses under the terms of Beazley's $10 million policy. *See* Ex. A. The Side A Policies that preceded Beazley in the tower have been exhausted. And, the Side A Policy that follows Beazley provides that coverage attaches only after the full amount of the underlying policy limits has been paid by the underlying insurers or the insured persons. *See* Dkt. No. 1161-1, Ex. N, at Endorsement 7. As a result, absent authorization of the Excess ABC Insurers to pay Defense Costs, the Insureds would be without coverage notwithstanding their contractual entitlement to the benefit of the Excess ABC Policies.

To be clear, Mr. James intends to dispute Beazley's position. But Mr. James does not have time to spare for the issue to be resolved.[7] Already, tens of millions of dollars in legal fees submitted by Insured Persons remain unpaid, and trial in the criminal matter is set for February 9, 2027. *See* Joinder at 4–5. Mr. James' liberty is at stake, and the costs of preparing for the trial are substantial. He has an immediate need for payment of his Defense Costs, and the harm he faces as a result of not receiving those payments is concrete, ongoing, and substantial. *See, e.g.*, *In re Arter & Hadden, L.L.P.*, 335 B.R. 666, 674 (Bankr. N.D. Ohio 2005) (finding "cause to lift the automatic stay because the [insured persons] may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments to fund their defense"). Moreover, the

[7] Mr. James further notes that while the Side A Policies are follow-form policies, their provisions are not identical, and each policy is an independent contractual undertaking. Coverage is dependent upon the specific provisions of the policy.

case law is clear that a debtor's speculative interest in a directors and officers' insurance policy cannot obstruct an individual insured's right to be advanced defense costs in accordance with the policy. *See, e.g.*, *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 192 (Bankr. S.D.N.Y. 2012) ("The [D&O] Policies provide coverage to the Individual Insureds who have a present need for payment of their defense costs. At this time, the Individual Insureds' need far outweighs the Debtors' hypothetical or speculative need for coverage.").

In opposition, the Objectors rely on the assertion that the Insureds currently have access to Side A coverage. *See, e.g.*, Dkt. No. 3893 (asserting that "none of the cases [the Excess ABC Insurers] cite involved insureds with current access to tens of millions of dollars in insurance proceeds to cover their defense costs"). While we submit that position is wrong for the reasons set forth in the Motion and the joinders filed thereto, the Objectors are also mistaken for the reasons set forth above.

Accordingly, in the event that the Court does not grant the Motion's primary request to clarify the May 29 Order according to its terms, cause exists to modify the stay to authorize the Excess ABC Insurers to advance Defense Costs.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Mr. James respectfully requests that the Court enter an order granting the relief requested in the Motion together with such other and further relief as the Court deems just and proper.

Dated: October 16, 2026

Respectfully submitted,

BRACEWELL LLP

*/s/ Rachel B. Goldman*
Rachel B. Goldman (admitted *pro hac vice*)
David A. Shargel (admitted *pro hac vice*)
Mark Wulfe (Texas Bar No. 24088381)
31 West 52nd Street
New York, New York 10019
Telephone: 212-408-6100
Email: rachel.goldman@bracewell.com
Email: david.shargel@bracewell.com
Email: mark.wulfe@bracewell.com

*Attorneys for Edward James*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 16, 2026, I caused a true and correct copy of the foregoing document to be served by electronic mail via the Court's ECF system on all parties authorized to receive electronic notice in this case.

*/s/ Mark Wulfe*
Mark Wulfe

# EXHIBIT A

# FILED UNDER SEAL