**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | (Previously Chapter 11) |
| | ) | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | ) | Case No. 25-90399 (CML) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | **(Emergency Hearing Requested)** |

**CHAPTER 7 TRUSTEE OF THE FBG DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDER (A) AUTHORIZING CONSUMMATION OF MCHENRY WIND DOWN SALE PURSUANT TO THE WIND DOWN ORDER AND (B) GRANTING RELATED RELIEF**

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN OCTOBER 21, 2026.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HEARING HAS BEEN REQUESTED ON THIS MATTER ON OCTOBER 21, 2026 at 10:00 A.M. (CENTRAL TIME) IN COURTROOM 401, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.**

**YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE LOPEZ'S CONFERENCE ROOM NUMBER IS 590153. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE LOPEZ'S HOME PAGE. THE MEETING CODE IS "JUDGELOPEZ." CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

---

[1] A complete list of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The FBG Debtors' service address for these chapter 7 cases is Eva Engelhart, Chapter 7 Trustee c/o Porter Hedges LLP, Joshua W. Wolfshohl, 1000 Main St., 36th Floor, Houston, Texas 77002.

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE LOPEZ'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Eva S. Engelhart, the chapter 7 trustee (the "FBG Trustee") of the jointly administered estates of First Brands Group, LLC and its affiliated debtors (the "FBG Debtors" and such estates the "FBG Estates"),[2] hereby submits this motion and respectfully represents as follows:

## PRELIMINARY STATEMENT[3]

1. Since entry of the Wind Down Order on April 16, 2026, Hilco has marketed the Wind Down Assets, identified and negotiated with prospective buyers and key stakeholders, and facilitated the consummation of over 60 value-maximizing Wind Down Sales, which, with the inclusion of the McHenry Wind Down Sale (defined below), are estimated to gross approximately $100 million for the benefit of the estates. *See* McKeown Decl. ¶¶ 5–6.

2. The FBG Trustee now seeks to effectuate the sale of inventory, machinery, and equipment located at the FBG Debtors' McHenry, Illinois facilities (collectively, the "McHenry Wind Down Assets") and the assumption and assignment of the two unexpired nonresidential real property leases for the McHenry facilities (the "Leases") to the Purchaser (defined below) (together, the "McHenry Wind Down Sale"), which gross sale value includes a $12 million cash purchase price, the purchaser's assumption of approximately $13-35 million in potential estate

---

2 "FBG Debtors" includes First Brands Group Holdings, LLC, First Brands Group Holdings, LLC's direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC.

3 Capitalized terms used but not otherwise defined in the Motion have the meanings ascribed to such terms in the *Order Pursuant to Section 363 of the Bankruptcy Code (I) Approving and Authorizing the Debtors to Enter Into and Perform Under the Consulting Agreement; (II) Authorizing the Sale of Wind Down Assets Free and Clear of All Liens, Claims, and Encumbrances; and (III) Granting Related Relief* [Docket No. 2454] (the "Wind Down Order") and *Emergency Motion of the Debtors for Entry of an Order Pursuant to Section 363 of the Bankruptcy Code (I) Approving and Authorizing the Debtors to Enter Into and Perform Under the Consulting Agreement; (II) Authorizing the Sale of Wind Down Assets Free and Clear of All Liens, Claims, and Encumbrances; and (III) Granting Related Relief* [Docket No. 2216] (the "Wind Down Motion"), as applicable.

liabilities to U.S. Customs and Border Protection, and the assignment of the Leases to a strategic purchaser with strong ties in the automotive industry ("Friction One")[4] who plans to reopen the McHenry facilities and potentially rehire the FBG Debtors' former local employees. The Bill of Sale and Lease Assignment and Assumption Agreement are attached to the proposed order as Exhibit 1 and Exhibit 2, respectively.

3. The FBG Trustee considered each component of the proposed McHenry Wind Down Sale, an alternative transaction structure with Friction One proposed by the SPV Trustee and Evolution, and Hilco's comparative analysis of competing bids before determining, in her reasonable business judgment, that the McHenry Wind Down Sale presents the most value-maximizing result for the McHenry Wind Down Assets. *See* Engelhart Decl. ¶¶ 5, 7, 9.

4. It is not surprising that the McHenry Wind Down Sale enjoys the support of the Ad Hoc Group, ABL Secured Parties, and Onset. *See* Engelhart Decl. ¶ 10. Their support for the McHenry Wind Down Sale reflects the first principle embodied in the hard-negotiated terms of the Wind Down Order: maximize value of the Wind Down Assets now and save disputes over lien priority for another day. For over six months, Hilco has worked cooperatively with these stakeholders, discussing marketing efforts, in-pipeline Wind Down Sales, and anticipated proceeds, and responding to questions regarding proposed Wind Down Sales. McKeown Decl. ¶ 6.

5. Only one constituent ignores the Wind Down Order's first principle and continues to block the Wind Down Sales for which it asserts an interest: Evolution.[5] Notwithstanding the

---

[4] Friction One Brake Technology (Xiantao) Co., Ltd. has designated its affiliate, JessCo Brakes Inc. (the "Purchaser"), as purchaser under the Bill of Sale and assignee under the Lease Assignment and Assumption Agreement.

[5] The FBG Trustee reserves all rights regarding the interests asserted by Evolution and the SPV Trustee.

SPV Trustee's request to be bound by the Wind Down Order and have Hilco serve as its exclusive agent for the Wind Down Sales, the SPV Trustee seeks to upend the status quo so that Evolution benefits on the backs of the FBG Estates. The FBG Trustee vehemently objects to the SPV Trustee's attack on the Wind Down Sales process, its misrepresentations about Hilco, and its efforts to disenfranchise the FBG Estates, *see Chapter 7 Trustee of the FBG Debtors' Objection to Emergency Application to Authorize the SPV Debtors' Trustee to Sell Inventory Pursuant to the Wind Down Order* (the "FBG Trustee Objection"), and asks this Court to approve the McHenry Wind Down Sale.

6. Despite Hilco's efforts to respond to the SPV Trustee and Evolution's questions, the FBG Estates and SPV Estates are at an unfortunate impasse, as set forth in the FBG Trustee Objection. *See* McKeown Decl. ¶¶ 13–14. As discussed in further detail herein, time is of the essence. *See* Engelhart Decl. ¶ 11.

## RELIEF REQUESTED

7. By this motion (the "Motion"), the FBG Trustee requests entry of an order (the "Proposed Order"), substantially in the form attached hereto, authorizing the FBG Trustee to consummate the McHenry Wind Down Sale pursuant to the process set forth in the Wind Down Order: (a) authorizing the FBG Trustee to execute and deliver the Bill of Sale and Lease Assignment and Assumption Agreement, assume and assign the Leases to the Purchaser pursuant to section 365 of the Bankruptcy Code and consummate the McHenry Wind Down Sale without the signature of the SPV Trustee on behalf of Starlight Inventory I, LLC; (b) providing that the Proposed Order shall be effective to transfer to the Purchaser the rights, title, and interests of the SPV Debtors in the McHenry Wind Down Assets, free and clear of Encumbrances to the extent provided in the Wind Down Order, with all such interests attaching to the Net Proceeds of the

McHenry Wind Down Sale; and (c) overruling all objections to the McHenry Wind Down Sale, including by the SPV Trustee and Evolution.

8. In support of the Motion, the FBG Trustee submits the declaration of the FBG Trustee (the "Engelhart Declaration" or "Engelhart Decl.") attached hereto as **Exhibit A**, the declaration of Alexander McKeown, Co-Head, Originations & Transactions at Hilco Global Capital Solutions, LLC, as Consultant with respect to the Wind Down Sales (the "McKeown Declaration" or "McKeown Decl.") attached hereto as **Exhibit B**, and the FBG Trustee Objection filed contemporaneously herewith, and each incorporated by reference herein.

## JURISDICTION AND VENUE

9. The Court has jurisdiction and authority to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The bases for the relief requested herein are sections 105(a), 363, 365, and 554 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas, the Wind Down Order, and the *Order Extending Wind Down Order to Chapter 7 Trustee and Related Relief* [Case No. 25-90392, Docket No. 61].

## BACKGROUND

### A. The Chapter 11 and Chapter 7 Cases

11. On September 24, 2025, certain debtors, including the SPV Debtors,[6] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On September 28, 2025,

[6] The "SPV Debtors" are Patterson Inventory, LLC, Patterson Inventory Holdings, LLC, Starlight Inventory I, LLC, and Starlight Inventory Holdings I, LLC.

First Brands Group, LLC and its remaining debtor affiliates, including Brake Parts Inc. LLC ("BPI"), did the same.

12. On April 9, 2026, the Court entered the *Order (I) Converting Chapter 11 Cases of Evolution SPV Debtors to Cases Under Chapter 7; and (II) Granting Related Relief* [Docket No. 2396]. Ronald J. Sommers serves as chapter 7 trustee of the SPV Debtors (the "SPV Trustee" and, such estates, the "SPV Estates"). *See Emergency Application to Authorize the SPV Debtors' Trustee to Sell Inventory Pursuant to the Wind Down Order* [Case No. 25-90392, Docket No. 99] (the "SPV Inventory Motion").

13. On September 1, 2026, the Court entered the *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* [Docket No. 3748] (the "Conversion Order") and the Office of the United States Trustee appointed Eva S. Engelhart as interim chapter 7 trustee of the FBG Estates. *See Notice of Chapter 7 Bankruptcy Case* [Docket No. 3753].

**B. The Wind Down Order and Wind Down Sales**

14. On April 16, 2026, the Court entered the Wind Down Order authorizing the FBG Debtors to enter into and perform under the Consulting Agreement. The Wind Down Order and Consulting Agreement made Hilco the FBG Debtors' exclusive agent for "Inventory Services," including with authority to market the Wind Down Assets and negotiate the terms of Wind Down Sales. *See* Wind Down Order at 1; Consulting Agreement § III(A).

15. Following conversion of the SPV Debtors' cases, the SPV Trustee moved for an order extending the Wind Down Order to the SPV Trustee and the SPV Estates, in the SPV Debtors' cases. *See* Case No. 25-90392, Docket No. 51. The Court granted that motion "for the reasons

stated on the record at the hearing held on July 9, 2026." *Order Extending Wind Down Order to Chapter 7 Trustee and Related Relief* ¶ 1 [Case No. 25-90392, Docket No. 61] (the "Extension Order").

16. The Wind Down Order requires the Debtors to serve a Wind Down Sale Notice[7] on the Wind Down Sale Notice Parties[8] by email at least two (2) days prior to consummating a sale of any Wind Down Assets. *See* Wind Down Order ¶¶ 25-26. If a Wind Down Sale Notice Party objects to the proposed sale within the notice period, then the sale may not proceed until any issues raised by such Wind Down Sale Notice Party are consensually resolved or "have been addressed by further order of [the] Court." *Id.* ¶ 26. The Wind Down Order further provides that any Inventory or Receivables that constitute Evolution Collateral[9] may not be sold absent consent of Evolution "or further Court order." *Id.* ¶ 27.

17. Given the existence of ongoing priority disputes with respect to certain collateral and the ownership of certain of the Wind Down Assets, the Wind Down Order requires that the Net Proceeds of any Wind Down Assets subject to such disputes be held in segregated Wind Down Accounts (as defined in the Wind Down Motion) pending further Court order. In short, the Wind Down Order balances the need to monetize the Wind Down Assets in an efficient and economical manner while simultaneously preserving the rights of parties in interest with respect to the Net

[7] The Wind Down Order requires that the Wind Down Sale Notice (i) identify the Wind Down Assets being sold, transferred, or otherwise disposed of (including the business unit and legal entity with which the Wind Down Assets are associated); (ii) identify the purchaser of the assets; (iii) state the purchase price; (iv) indicate whether the Wind Down Assets being sold constitute Overlapping Collateral (as defined in the Wind Down Motion); and (v) include any other significant terms of the Wind Down Sale. *See* Wind Down Order ¶ 26.

[8] The "Wind Down Sale Notice Parties" are identified in paragraph 47 of the Wind Down Motion and includes any party with an asserted interest in the Wind Down Assets being sold.

[9] The Wind Down Motion defines "Evolution Collateral" by reference to the Evolution Stipulation [Docket No. 609], which provides that the Evolution Collateral includes certain assets of the SPV Debtors (as more fully described therein).

Proceeds of each Wind Down Sale and creating a mechanism for further Court intervention if consensus cannot be reached as to a proposed Wind Down Sale.

## THE MCHENRY WIND DOWN SALE SHOULD BE APPROVED

### A. Hilco Conducted An Extensive Marketing Process for the McHenry Wind Down Assets.

18. Starting in January 2026, the Debtors, with assistance from Lazard, commenced a marketing and sale process for all of their assets plus the equity in or assets of certain non-Debtor subsidiaries. McKeown Decl. ¶ 7. As a result of outreach to over 350 potentially interested parties, over 190 potential buyers executed confidentiality agreements and received access to a virtual data room with technical, commercial, and financial information regarding each of the Debtors' business units. *Id*.

19. Hilco leveraged this work and reached out to a number of prospect buyers to assess interest in all Wind Down Asset categories. McKeown Decl. ¶ 8. Hilco also met with the Debtors' sales team to target existing customer base as prospective buyers. *Id.* Hilco issued a press release, which was distributed to its extensive email and social media network. *Id*. & Ex. 1.

20. Hilco did not market the McHenry Wind Down Assets in a vacuum. Beginning in May 2026, Hilco and its joint venture partner, SB360 Capital Partners, LLC, met and communicated regularly with the SPV Trustee's consultant, David Overbeeke, to share the opportunity base, evaluate marketing targets, and walk through proposed transactions. McKeown Decl. ¶ 9 & Ex. 2. Mr. Overbeeke confirms as much. He attests that "[s]ince the spring of 2026, Hilco . . . has identified potential buyers for the inventory" and that he has analyzed those potential sales for the SPV Trustee since May. *See Declaration of H. David Overbeeke* [Case No. 25-90392, Docket No. 100-2] (the "Overbeeke Declaration" or "Overbeeke Decl.") ¶ 7.

21. Hilco's marketing of inventory associated with the Debtors' Brake Parts brand targeted 38 strategic and financial prospects, including national retailers and distributors, OEM channels, aftermarket manufacturers, regional distributors and wholesalers, and liquidation and financial buyers. McKeown Decl. ¶ 10 & Ex. 3.

22. Hilco's marketing process produced four offers for some or all of the McHenry Wind Down Assets: a take-all, in-place bid from Friction One, and three partial bids each of which covered only selected SKUs and required the estates to pick, pack, and ship the purchased inventory. McKeown Decl. ¶ 11 & Exs. 4–5; *see also* Engelhart Decl. ¶ 5.

**B. Friction One's Take-All Bid is Superior to Every Alternative.**

23. Hilco reconciled each offer against the over 150,000 inventory records for the McHenry facilities, comprising over 52,000 SKUs, approximately 9.4 million units, and approximately $149.9 million of book value. McKeown Decl. ¶ 12. The results were not close. Friction One offered $10 million in cash for 100% of the inventory plus the assumption of all tariff liabilities associated with the inventory, and $2 million in cash for the machinery and equipment. *Id.* Because the Friction One bid was a "take all" bid, the estates will not incur any further location costs or shipping and handling costs once the sale closes. *See generally*, Bill of Sale; *see also* McKeown Decl. ¶ 12.

24. As set forth in detail in the FBG Trustee Objection, Friction One's assumption of potential tariff liability to U.S. Customs and Border Protection also provides material consideration to the estates, valued at approximately $13-35 million. *See generally* FBG Trustee Objection; *see also* McKeown Decl. ¶ 12 & Exs. 6–7; Engelhart Decl. ¶ 7. Under the Bill of Sale, Purchaser assumes "sole responsibility and liability" for all tariffs, duties, and related charges arising from removal of the McHenry Wind Down Assets from the free trade zones ("FTZ") or their entry into

U.S. customs territory after the Effective Date, and bears all Transfer Expenses. *See* Bill of Sale §§ 1.01, 1.08.

25. Based on the foregoing, Hilco recommended the Friction One transaction to both the FBG Trustee and the SPV Trustee on September 26, 2026. McKeown Decl. ¶ 13 & Ex. 8.

26. Thus, the FBG Trustee's decision to accept the proposed transaction with Friction One and approve the McHenry Wind Down Sale is a sound exercise of business judgment. Engelhart Decl. ¶¶ 5–9; *see also* McKeown Decl. ¶ 15.

**C. The McHenry Wind Down Sale Should be Approved.**

27. Following extensive negotiations, the FBG Trustee, Friction One, and the landlord under the Leases (the "Landlord") have agreed to the Bill of Sale and the Lease Assignment and Assumption Agreement, attached to the Proposed Order as Exhibits 1 and 2, respectively, the material terms of which are summarized below:[10]

a. *Purchaser and Acquired Assets*: JessCo Brakes Inc., an affiliate of Friction One, will acquire all inventory, machinery, and equipment located at 1100 Corporate Drive, 1380 Corporate Drive, and 4400 Prime Parkway, McHenry, Illinois, free and clear of Encumbrances to the extent provided in the Wind Down Order. Bill of Sale § 1.01.

b. *Purchase Price*: $12,000,000 in cash, payable by wire on the Effective Date and not subject to adjustment, of which $10,000,000 is allocated to inventory and $2,000,000 to machinery and equipment. *Id.* § 1.04.

c. *In-Place, As-Is Sale; Tariffs*: The Purchaser will acquire the assets "in place" on an "as is, where is" basis, bear all Transfer Expenses, and assume sole responsibility for any tariffs, duties, and customs charges arising from removal of the assets from the free trade zones or their entry into U.S. customs territory after the Effective Date. Bill of Sale §§ 1.01, 1.08, 2.01.

d. *Lease Assumption and Assignment*: BPI will assume and assign the Leases to the Purchaser, and the Purchaser and the Landlord will enter into lease amendments on the Effective Date. Lease Assignment and Assumption Agreement §§ 2, 5 and Sched. I. The

[10] Unless otherwise specified, all section references are to the Bill of Sale and Lease Assignment and Assumption Agreement, as applicable. This summary is qualified in its entirety by the terms of the Bill of Sale and Lease Assignment and Assumption Agreement.

Purchaser assumes all lease obligations arising or accruing after the Effective Date. *Id.* § 5.

e. *Cure Costs*: In full satisfaction of cure, (i) the Landlord will apply the remaining proceeds of the letter of credit issued for the 4400 Prime Parkway lease, (ii) the FBG Trustee will relinquish any remaining security deposit for the Leases, and (iii) the Purchaser will pay the Landlord $210,336.26 in cash, in addition to the purchase price. *Id.* § 3; Bill of Sale § 1.02.

28. Proposed counsel to the FBG Trustee served the Wind Down Sale Notice on the applicable Wind Down Sale Notice Parties on October 10, 2026:

a. *Wind Down Assets Being Sold*: All inventory parts, fixtures and equipment within 1100 Corporate Drive and 1380 Corporate Drive, McHenry, IL

b. *Legal Entity(ies) that Own the Assets*: Brake Parts Inc, LLC or Starlight Inventory I, LLC [subject to dispute; all rights reserved]

c. *Purchaser of Assets*: Friction One Brake Technology (Xiantao) Co., Ltd.[11]

d. *Is the Purchaser of Assets an "insider"*: No

e. *Purchase Price*: $12,000,000

f. *Do Assets Being Sold Constitute Overlapping Collateral*: Yes - Inventory $10,000,000, M&E $2,000,000

g. *Do Assets Being Sold contain personal or confidential information about the Debtors' employees or customers (e.g., data on hard drives, printed records, labels on inventory, customer lists)*: No

h. *Any Other Significant Terms*: Take-all sale in-place with lease assignment

29. The FBG Trustee, in consultation with Hilco and her other advisors, has determined in her reasonable business judgment that the McHenry Wind Down Sale is the highest and best transaction available for the McHenry Wind Down Assets. Engelhart Decl. ¶ 7. It delivers the highest cash price of any offer received; it is a single take-all transaction that clears all three facilities without the FBG Debtors or SPV Debtors incurring Transfer Expenses or post-closing

[11] Following service of the Wind Down Sale Notice, Friction One designated its affiliate, JessCo Brakes Inc. as purchaser under the Bill of Sale and assignee under the Lease Assignment and Assumption Agreement.

Location Expenses; it provides for the assumption of $13-35 million of potential tariff liability to the U.S. government that would otherwise burden the FBG Estates; it resolves the McHenry Leases through assumption and assignment, with the Purchaser funding the cash component of cure; and it helps facilitate Friction One's potential rehiring of the FBG Debtors' former local employees. *Id*.

30. The McHenry Wind Down Sale also treats the FBG Estates and the SPV Estates evenhandedly. Net Proceeds of the McHenry Wind Down Sale will be deposited into the SPV-ABL Wind Down Account and consummation of the McHenry Wind Down Sale will not result in any finding or determination regarding ownership of the McHenry Wind Down Assets or Evolution's or any other party's claims, all of which are reserved. Engelhart Decl. ¶ 8.

31. The McHenry Wind Down Sale enjoys broad support. The Ad Hoc Group, the ABL Secured Parties, Onset, and the Landlord support the sale. The U.S. Trustee was a Wind Down Sale Notice Party and did not object to the Wind Down Sale Notice. Only the SPV Trustee and Evolution object. Engelhart Decl. ¶ 10.

32. For the foregoing reasons, approval of the McHenry Wind Down Sale is appropriate under the Wind Down Order, which permits the Court to address by further order any objection by a Wind Down Sale Notice Party, *see* Wind Down Order ¶¶ 26–27, and is in the best interests of the estates and all parties in interest. Accordingly, the Motion should be granted, and the FBG Trustee should be authorized to consummate the McHenry Wind Down Sale pursuant to the Wind Down Order.

**COMPLIANCE WITH BANKRUPTCY RULES 6004(A) AND 6004(H)**

33. The FBG Trustee submits that Bankruptcy Rule 6004(h) should not apply to the McHenry Wind Down Sale given the procedures and other timing the Court has authorized in the

Wind Down Order. However, to the extent applicable, the FBG Trustee requests that the Court waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). The Bill of Sale and Lease Assignment and Assumption Agreement become effective only upon entry of a final and unappealable order, and the Landlord may terminate the Leases if the Effective Date does not occur by November 30, 2026. *See* Bill of Sale § 1.03; Lease Assignment and Assumption Agreement §§ 1, 4. The relief requested herein will allow the FBG Trustee to consummate the McHenry Wind Down Sale as efficiently as possible and to reduce administrative expenses and other closing risks. Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply. For the same reasons, the FBG Trustee requests a waiver of the 14-day stay imposed by Bankruptcy Rule 6006(d) with respect to the assignment of the Leases, to the extent applicable.

## BASIS FOR EMERGENCY RELIEF

34. The FBG Trustee respectfully requests emergency consideration of this Motion in accordance with Bankruptcy Local Rule 9013-1(i). The same reasoning that led the Court to enter the Wind Down Order on an expedited basis justifies immediate relief here. The FBG Trustee believes that immediate relief is necessary to maximize the value of the Debtors' estates and avoid substantial harm to all stakeholders including because if the McHenry Wind Down Sale is further delayed, (i) the estates will be forced to incur additional Location Expenses; (ii) the value of the McHenry Wind Down Assets will continue to depreciate; and (iii) the FBG Trustee risks potentially losing the Purchaser and/or facing additional obstacles to closing. Engelhart Decl. ¶

11; *see also* McKeown Decl. ¶ 15. Accordingly, the FBG Trustee requests the Court approve the relief requested herein on an emergency basis.

## RESERVATION OF RIGHTS

35. Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the FBG Debtors, (ii) a waiver or limitation of the FBG Trustee's, the FBG Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver or limitation of the FBG Trustee's, the FBG Debtors', or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) a waiver of the obligation of any party in interest to file a proof of claim, (v) an agreement or obligation to pay any claims, or (vi) a waiver of any claims or causes of action that may exist against any creditor or interest holder. The FBG Trustee expressly reserves all of her and the FBG Debtors' rights with respect to the foregoing matters. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the FBG Trustee's, the FBG Debtors', or any other party in interest's rights to dispute such claim subsequently.

36. Further, the FBG Trustee reserves all rights under the Wind Down Order, including the right to request Court approval of any other Wind Down Sales to the extent Evolution, the SPV Trustee, or any other party withholds its consent.

## NOTICE

37. Notice of this Motion will be served on the Wind Down Sale Notice Parties, the Purchaser, any party entitled to notice pursuant to Bankruptcy Rule 2002, and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

**<u>NO PRIOR REQUEST</u>**

38. No previous request for the relief sought herein has been made by the FBG Trustee or the Debtors to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE the FBG Trustee respectfully requests entry of the Proposed Order granting the relief herein and such other and further relief as the Court may deem just and appropriate.

Dated: October 18, 2026
New York, New York

*/s/ Cindi M. Giglio*

**KATTEN MUCHIN ROSENMAN LLP**
Cindi M. Giglio
Grace A. Thompson
50 Rockefeller Plaza
New York, New York 10020-1605
Telephone: (212) 940-8800
Email: cgiglio@katten.com
grace.thompson@katten.com

- and -

Rachel M. Riley
2121 N. Pearl Street, Suite 1100
Dallas, Texas 75201
Telephone: (214) 765-3600
Email: rachel.riley@katten.com

*Proposed Special Counsel for the FBG Trustee*

**Certificate of Service**

I hereby certify that on October 18, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Cindi M. Giglio*
Cindi M. Giglio