**Exhibit B**

**McKeown Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | (Previously Chapter 11) |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | ) | Case No. 25-90399 (CML) |
| Debtors. [1] | ) | (Jointly Administered) |

**DECLARATION OF ALEXANDER MCKEOWN IN SUPPORT OF CHAPTER 7 TRUSTEE OF THE FBG DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDER (A) AUTHORIZING CONSUMMATION OF MCHENRY WIND DOWN SALE PURSUANT TO THE WIND DOWN ORDER AND (B) GRANTING RELATED RELIEF**

I, Alexander McKeown pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct:

1. I am Co-Head, Originations & Transactions at Hilco Global Capital Solutions, LLC (together with its affiliates, "Hilco").

2. I submit this declaration (the "McKeown Declaration") in support of the *Chapter 7 Trustee of the FBG Debtors' Emergency Motion for Entry of Order (A) Authorizing Consummation of McHenry Wind Down Sale Pursuant to the Wind Down Order and (B) Granting Related Relief* (the "Motion").[2]

3. Except as otherwise indicated, the statements in this McKeown Declaration are based on my personal knowledge, education and experience, my review of relevant documents, and information provided to me by Hilco personnel working under my supervision, the FBG

[1] A complete list of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The FBG Debtors' service address for these chapter 7 cases is Eva Engelhart, Chapter 7 Trustee c/o Porter Hedges LLP, Joshua W. Wolfshohl, 1000 Main St., 36th Floor, Houston, Texas 77002.

[2] Capitalized terms used but not otherwise defined in the Declaration have the meanings ascribed to such terms in the Motion.

Trustee and her advisors, and the FBG Debtors' former advisors, employees, and consultants. If called to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this McKeown Declaration on behalf of Hilco, as exclusive Consultant under the Wind Down Order.

**Background and Hilco's Role**

4. I joined Hilco in 2017 and have since originated and helped structure numerous restructuring and recovery transactions involving billions of dollars in asset value. I have been personally involved in Hilco's engagement in these cases since its inception.

5. On April 16, 2026, the Court entered the Wind Down Order approving the Amended and Restated Consulting and Marketing Services Agreement dated March 13, 2026 (the "Consulting Agreement"). Under the Wind Down Order and the Consulting Agreement, Hilco serves as the FBG Debtors' exclusive agent for "Inventory Services," including with authority to market the Wind Down Assets and negotiate the terms of Wind Down Sales. On July 9, 2026, the Court extended the Wind Down Order to the SPV Trustee and the SPV Estates pursuant to the Extension Order. Following conversion of the FBG Debtors' cases to chapter 7, Hilco has continued to serve as exclusive Consultant under the Wind Down Order for both the FBG Estates and SPV Estates.

6. For over six months, Hilco has worked cooperatively with the Ad Hoc Group, the ABL Secured Parties, and Onset, discussing marketing efforts, in-pipeline Wind Down Sales, and anticipated proceeds, and responding to questions regarding proposed Wind Down Sales. Since entry of the Wind Down Order, Hilco has facilitated the consummation of more than 60 Wind Down Sales, which, with the inclusion of the McHenry Wind Down Sale, are estimated to gross approximately $100 million for the benefit of the estates.

**Marketing of the McHenry Wind Down Assets**

7. Starting in January 2026, the Debtors, with assistance from Lazard, commenced a marketing and sale process for all of their assets plus the equity in or assets of certain non-Debtor subsidiaries. As a result of outreach to over 350 potentially interested parties, over 190 potential buyers executed confidentiality agreements and received access to a virtual data room with technical, commercial, and financial information regarding each of the Debtors' business units.

8. Hilco leveraged this work and reached out to a number of prospective buyers to assess interest in all Wind Down Asset categories. Hilco also met with the Debtors' sales team to target the Debtors' existing customer base as prospective buyers, and issued a press release, that was distributed to Hilco's extensive email and social media network. *See* **Exhibit 1**.

9. Beginning in May 2026, Hilco and its joint venture partner, SB360 Capital Partners, LLC, met and communicated regularly with the SPV Trustee's consultant, David Overbeeke, to share the opportunity base, evaluate marketing targets, and walk through proposed transactions. *See, e.g.,* **Exhibit 2**.

10. Hilco's marketing of inventory associated with the Brake Parts brand targeted 38 strategic and financial prospects, including national retailers and distributors, OEM channels, aftermarket manufacturers, regional distributors and wholesalers, and liquidation and financial buyers. *See* **Exhibit 3**. All prospective bidders that showed interest were given the inventory listing for assets in which they were interested. As discussions progressed, prospective buyers for the McHenry Wind Down Assets were given an inventory list with notation of the Debtors' understanding of its FTZ or non-FTZ status, so that prospective purchasers had all relevant information to structure their bids. Certain prospective buyers also performed additional diligence

regarding these matters. At their request, Hilco facilitated prospective buyers' engagement with Copper Hill, First Brands' customs consultant.

11. This extensive marketing process produced four offers for some or all of the McHenry Wind Down Assets: a take-all, in-place bid from Friction One, and three partial bids, each of which covered only selected SKUs and required the estates to pick, pack, and ship the purchased inventory. *See* **Exhibits 4** and **5**.

**Friction One's Take-All Bid Is Superior to Every Alternative**

12. Hilco reconciled each offer against the over 150,000 inventory records for the McHenry facilities, comprising over 52,000 SKUs, approximately 9.4 million units, and approximately $149.9 million of book value. Friction One offered $10 million in cash for 100% of the inventory plus the assumption of all tariff liabilities associated with the inventory, and $2 million in cash for the machinery and equipment. Because the Friction One bid is a take-all bid, and includes assignment of the Leases, the estates will not incur any further Location Expenses or shipping and handling costs once the sale closes. *See id*. Further, Friction One's assumption of potential tariff liability to U.S. Customs and Border Protection provides material additional consideration to the estates, which I understand is valued at approximately $13–35 million. *See* **Exhibit 6** and **7**.

13. Following negotiations with Friction One and analysis of all other bids for the McHenry Wind Down Assets, Hilco concluded that the proposed McHenry Wind Down Sale is the highest and best transaction available for the McHenry Wind Down Assets. In September 2026, Hilco sought a meeting with the SPV Trustee to discuss Friction One's offer and other bids received, and the alternative structures contemplated, although the SPV Trustee was not made available for a meeting. On September 26, 2026, Hilco made this recommendation to the FBG

Trustee and the SPV Trustee. *See* **Exhibit 8**. Since then, Hilco and the FBG Trustee's counsel have worked diligently to respond to the SPV Trustee's and Evolution's questions regarding the McHenry Wind Down Sale and other bids received. *See* **Exhibit 9**.

14. Hilco and the FBG Trustee's counsel also asked Friction One if it would consider transacting on the structure proposed by the SPV Trustee and Evolution, which would leave tariff liability with the BPI estate. I understand that Friction One responded that they would pay a higher cash purchase price in such a scenario. *See* **Exhibit 7**. Based on what I have learned about the potential tariff exposure, I valued this bid as bringing less total value to the estates. However, out of completeness, Friction One's revised offer was provided to the FBG Trustee, the SPV Trustee, the ABL, DIP and Evolution. The FBG Trustee, Ad Hoc Group, and ABL Secured Parties all rejected the revised Friction One offer.

15. For these reasons, Hilco has determined that (i) the McHenry Wind Down Sale reflects the highest and otherwise best value attainable for the McHenry Wind Down Assets, is supported by sound business judgment, and serves to maximize the value of the Debtors' estates for all parties in interest; and (ii) expedited approval of the McHenry Wind Down Sale is critical to preserving the FBG Trustee's ability to achieve the highest and otherwise best value for the McHenry Wind Down Assets for the benefit of stakeholders. Accordingly, I believe the Motion should be approved.

[*Remainder of page intentionally left blank*]

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 18, 2026

*<u>/s/ Alexander McKeown</u>*
Alexander McKeown
Co-Head, Originations & Transactions.
Hilco Global Capital Solutions, LLC