**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | (Previously Chapter 11) |
| | ) | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | ) | Case No. 25-90399 (CML) |
| | ) | |
| Debtors. [1] | ) | (Jointly Administered) |
| | ) | |

**ORDER GRANTING THE CHAPTER 7 TRUSTEE OF THE FBG DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDER (A) AUTHORIZING CONSUMMATION OF MCHENRY WIND DOWN SALE PURSUANT TO THE WIND DOWN ORDER AND (B) GRANTING RELATED RELIEF**

Upon the Motion[2] of Eva S. Engelhart, the chapter 7 trustee (the "FBG Trustee") of the jointly administered estates of First Brands Group, LLC and its affiliated debtors (the "FBG Debtors" and such estates the "FBG Estates"),[3] for an order (this "Order") in furtherance of the Wind Down Order (as extended by the Extension Order) and pursuant to sections 105(a), 363, 365, and 554 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, and rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (a) authorizing the FBG Trustee to execute and deliver the Bill of Sale dated as of October 18, 2026 (together with all other agreements, documents, and instruments, deliverable thereunder or attached thereto or referenced therein, and as may be

1 A complete list of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The FBG Debtors' service address for these chapter 7 cases is Eva Engelhart, Chapter 7 Trustee c/o Porter Hedges LLP, Joshua W. Wolfshohl, 1000 Main St., 36th Floor, Houston, Texas 77002.

2 As used herein, "Motion" means the *Chapter 7 Trustee of the FBG Debtors' Emergency Motion for Entry of Order (A) Authorizing Consummation of McHenry Wind Down Sale Pursuant to the Wind Down Order and (B) Granting Related Relief.* Capitalized terms used herein but not otherwise defined have the meanings given in the Motion, the Wind Down Motion, and the Wind Down Order.

3 "FBG Debtors" includes First Brands Group Holdings, LLC, First Brands Group Holdings, LLC's direct and indirect Debtor subsidiaries, and Viceroy Private Capital, LLC.

amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "Bill of Sale", a true and correct copy of which is attached hereto as **Exhibit 1**) and the Lease Assignment and Assumption Agreement, dated as of October 18, 2026 (together with all other agreements, documents, and instruments, deliverable thereunder or attached thereto or referenced therein, and as may be amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "Lease Assignment and Assumption Agreement", a true and correct copy of which is attached hereto as **Exhibit 2**) to assume and assign the Leases to the Purchaser, and to consummate the McHenry Wind Down Sale, without the signature of the SPV Trustee on behalf of Starlight Inventory I, LLC, free and clear of Encumbrances to the extent provided in the Wind Down Order, with all such interests attaching to the Net Proceeds of the McHenry Wind Down Sale; and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction and authority to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the Motion (the "Sale Hearing"); and upon the Engelhart Declaration, the McKeown Declaration, any other declaration filed in support of the McHenry Wind Down Sale, the *Chapter 7 Trustee of the FBG Debtors' Objection to Emergency Application to Authorize the SPV Debtors' Trustee to Sell Inventory Pursuant to the Wind Down Order* filed contemporaneously with the Motion, and the record of the Sale Hearing; and all objections, if any, to the Motion having been

withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the FBG Debtors, the SPV Debtors, and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. The McHenry Wind Down Sale is a Wind Down Sale Under the Wind Down Order and entry of this Order is in all respects consistent with the Wind Down Order and the Extension Order. The McHenry Wind Down Assets are Wind Down Assets under the Wind Down Order.

B. All requirements under the Wind Down Order, including any required notice, consent, asset designation, objection-period expiration, or further-order requirement has been satisfied, waived, resolved, or approved by this Order.

C. The FBG Trustee has demonstrated good, sufficient, and sound business purposes and justifications for approval of and authorization to close, and compelling circumstances to promptly consummate, the McHenry Wind Down Sale and the other transactions contemplated by the Bill of Sale and Lease Assignment and Assumption Agreement, pursuant to Sections 105, 363, and 365 of the Bankruptcy Code, and such action is an appropriate exercise of the FBG Trustee's business judgment.

D. The FBG Trustee, in consultation with Hilco and her advisors, reasonably determined that the McHenry Wind Down Sale represents the highest or otherwise best actionable transaction available for the McHenry Wind Down Assets under the circumstances and is in the best interests of the FBG Debtors, the SPV Debtors, and their respective estates, creditors, and other parties-in-interest, for the following reasons, among others: (i) there is substantial risk of

depreciation of the value of the McHenry Wind Down Assets if the McHenry Wind Down Sale is not consummated promptly; (ii) the sale of the McHenry Wind Down Assets and the Purchaser's assumption of the potential tariff liabilities, pursuant to the Bill of Sale present the best opportunity and represent the best method to maximize the value of the McHenry Wind Down Assets; (iii) the purchase price and other terms set forth in the Bill of Sale constitute the highest or otherwise best offer received for the McHenry Wind Down Assets; and (iv) unless the McHenry Wind Down Sale is concluded expeditiously, as provided for in the Wind Down Order and this Order and pursuant to the Bill of Sale and the Lease Assignment and Assumption Agreement, significantly less value would be received for the McHenry Wind Down Assets.

**IT IS HEREBY ORDERED:**

1. The Motion is GRANTED as set forth herein.

2. Any objections, responses, or reservations of rights filed or asserted in regard to the McHenry Wind Down Sale and the relief granted herein, to the extent not resolved as set forth herein, settled, or waived are hereby overruled on the merits in their entirety.

3. The notice provided in connection with the McHenry Wind Down Sale, is proper, timely, good, sufficient, and adequate notice to each party entitled to such notice in accordance with Sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9007 and Bankruptcy Local Rules Rule 2002-1 and 9013-1, the Wind Down Order, and the circumstances of these chapter 7 cases. A reasonable opportunity to object or to be heard regarding the relief granted in this Order was afforded to all interested persons and entities entitled to such an opportunity.

**<u>Sale of McHenry Wind Down Assets</u>**

4. The FBG Trustee is authorized to execute and deliver the Bill of Sale and Lease Assignment and Assumption Agreement, and consummate the McHenry Wind Down Sale.

5. The SPV Trustee on behalf of Starlight Inventory I, LLC or any other SPV Debtor is directed to execute and deliver any documents needed to evidence the consummation of the McHenry Wind Down Sale.

6. On the Effective Date (as defined in the Bill of Sale) all of the FBG Debtors' and the SPV Debtors' right, title, and interest in and to, and possession of, the McHenry Wind Down Assets shall be immediately vested in the Purchaser, pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, free and clear of Encumbrances to the extent provided in the Wind Down Order and the Bill of Sale, with all such interests attaching solely to the Net Proceeds of the McHenry Wind Down Sale with the same validity, priority, and extend as existed immediately prior to the Effective Date. Such transfer shall constitute a legal, valid, enforceable, and effective transfer of the McHenry Wind Down Assets.

7. Purchaser will assume sole responsibility and liability for any tariffs, duties, customs, fees, imposts, or other charges arising from (i) the removal of the McHenry Wind Down Assets from any free trade zone or foreign trade zone at which the McHenry Wind Down Assets are located as of the Effective Date; or (ii) the entry of the McHenry Wind Down Assets into the customs territory of the United States following the Effective Date.

8. Net Proceeds of the McHenry Wind Down Sale shall be deposited into the SPV-ABL Wind Down Account and shall be made available for payment and distribution in accordance with the Wind Down Order.

**Lease Assumption and Assignment**

9. The Leases are hereby assumed or assumed and assigned as set forth herein, effective upon the Effective Date under the Bill of Sale and Lease Assignment and Assumption Agreement.

10. Cure costs, if any, with respect to assumption, assignment, or transfer of the Leases (the "Cure Costs") shall be deemed fully and finally satisfied on the terms and conditions set forth in the Lease Assignment and Assumption Agreement and the FBG Trustee, the FBG Estates, and the Purchaser shall have no other obligations for Cure Costs.

11. The Purchaser has provided adequate assurance of future performance with respect to the Leases assigned pursuant to this Order to the extent required by section 365 of the Bankruptcy Code, and no further showing of adequate assurance is necessary.

12. With regard to the Leases to be assigned, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the assignment of the Leases pursuant to this Order shall be free and clear of (i) all liens (and any liens shall attach to the proceeds, if any, in the same order and priority subject to all existing defenses, claims, setoffs, and rights) and (ii) any and all claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guaranties of or by the FBG Debtors, debts, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 7 cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including claims and encumbrances that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or the Purchaser, as the case may be, in the Leases). For the avoidance of doubt, all provisions of the assigned Leases will be binding on the Purchaser as set forth in the Lease Assignment and Assumption Agreement.

13. The FBG Trustee, on behalf of BPI, is hereby authorized in accordance with sections 363 and 365(b) and (f) of the Bankruptcy Code to (i) assume and assign to the Purchaser the Leases, with the Purchaser being responsible only for the post-assignment liabilities or defaults under the Leases as set forth in the Lease Assignment and Assumption Agreement; (ii) execute and deliver to the Purchaser such documents as may be reasonably necessary to sell, assign, and transfer any of the Leases; and (iii) to satisfy the Cure Costs, solely as provided in paragraph 10 of this Order and the Lease Assignment and Assumption Agreement.

14. In accordance with section 365(k) of the Bankruptcy Code, and subject to the terms of the Lease Assignment and Assumption Agreement, upon the assumption and assignment of the Leases pursuant to this Order, the FBG Trustee and the FBG Debtors shall be relieved from any liability for any breach of the Leases occurring thereafter.

15. Any and all anti-assignment provisions in the assumed Leases, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of such unexpired lease or executory contract, are unenforceable and prohibited pursuant to section 365(f) of the Bankruptcy Code.

**Other Provisions**

16. Except with respect to Hilco and claims arising from the Consulting Agreement, nothing contained in this Order shall: (a) constitute, or be deemed to constitute, an admission, determination, or finding as to the validity, enforceability, priority, perfection, amount, or extent of any ownership interest, claim, lien, security interest, encumbrance, or other interest; (b) constitute, or be deemed to constitute, a waiver, release, compromise, settlement, relinquishment, determination, or finding with respect to any ownership interest, rights, claims, defenses, causes of action, or remedies whether arising under the Bankruptcy Code, applicable non-bankruptcy law,

or otherwise; or (c) affect, limit, expand, enhance, prejudice, or modify in any way any other rights, claims, or defenses of any party in interest (including the FBG Trustee, the SPV Trustee, the FBG Debtors, the SPV Debtors, or any other Debtor affiliate), including in any pending or future lawsuit, including any litigation trust or litigation trustee acting as successor-in-interest to the bankruptcy estate, or adversary proceedings including, without limitation, in the adversary proceeding captioned Adv. Pro. No. 26-03800 (CML); *provided*, that this Order shall be a final determination and settlement of claims arising from assumption and assignment of the Leases and the payment of Cure Costs, including (i) Landlord's application of proceeds available from drawing on the letter of credit issued respecting the 4400 Prime Parkway Lease; (ii) and the FBG Trustee relinquishment and abandonment to Landlord of the FBG Trustee and FBG Debtors' right, title and interest in and to the remaining balance of any security deposit held under or with respect to either of the Leases.

17. Notwithstanding any provision to the contrary in this Order, the Bill of Sale, or any other document related to the McHenry Wind Down Sale, nothing shall:

a. release, nullify, preclude or enjoin the enforcement of any police or regulatory power of, or any liability owed to, the United States that any entity would be subject to as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the date of entry of this Order;

b. affect the setoff or recoupment rights of the United States, and all claims, rights, and defenses thereto of any Entity, including the FBG Debtors, SPV Debtors, and Purchaser, are fully preserved;

c. confer exclusive jurisdiction in any matter involving the United States on the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

d. authorize the assumption, assignment, sale or other transfer of any federal (a) grants, (b) grant funds, (c) contracts, (d) agreements, (e) awards, (f) task orders, (g) property, (h) intellectual property, (i) patents, (j) leases, (k) certifications, (l) applications, (m) registrations, (n) billing numbers, (o) national provider identifiers, (p) provider transaction access numbers, (q) licenses, (r) permits, (s) covenants, (t) inventory, (u) guarantees, (v) indemnifications, (w) data, (x) records, or (y) any

other interests belonging to the United States (collectively, "Federal Interests") (and excluding, for the avoidance of doubt, the McHenry Wind Down Assets) without compliance by the FBG Debtors, SVP Debtors, and Purchaser with all terms of the Federal Interests and with all applicable non-bankruptcy law;

e. be interpreted to set cure amounts or to require the United States to novate, approve or otherwise consent to the sale, assumption, assignment or other transfer of any Federal Interests;

f. waive, alter or otherwise limit the United States' property rights except for Claims and interests related to the McHenry Wind Down Assets; or

g. expand the scope of 11 U.S.C.§ 525.

In the event of an inconsistency or conflict between any provision of the Bill of Sale and any provision of this Order, as to the United States, the provisions of this Order and federal law shall govern.

18. This Order shall be binding in all respects upon the FBG Trustee, the FBG Debtors, the SPV Trustee, the SPV Debtors, all creditors (whether known or unknown) and interest holders of the FBG Debtors and the SPV Debtors, all successors and assigns of the FBG Debtors and the SPV Debtors, and their respective affiliates and subsidiaries, and any trustees, examiners, "responsible persons," or other fiduciaries and professionals appointed in the chapter 7 cases of *In re First Brands Group, LLC, et al.*, Case No. 25-90399 (CML) and *In re Patterson Inventory, LLC, et al.*, Case No.: 25-90392 (CML).

19. Except as expressly modified by this Order, the Wind Down Order, the Consulting Agreement, the Extension Order, and the Conversion Order shall remain in full force and effect.

20. Notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

21. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be immediately effective and enforceable upon its entry.

22. The FBG Trustee and SPV Trustee are each authorized and directed to take all actions necessary to implement the relief granted in this Order.

23. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the Wind Down Order, the McHenry Wind Down Sale, and the implementation, interpretation, and/or enforcement of this Order.

Dated: ___________, 2026
Houston, Texas

_________________________
THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

## Bill of Sale

This ASSIGNMENT AND BILL OF SALE (this "**Bill of Sale**"), dated as of October 18, 2026, is made by and among Brake Parts Inc LLC, a limited liability company organized and existing under the laws of Delaware ("**BPI**"), Starlight Inventory I, LLC, a Delaware limited liability company (each a "**Seller**", and collectively, "**Sellers**"), and JessCo Brakes Inc., a Texas corporation ("**Buyer**" and, collectively with Sellers, the "**Parties**").

**RECITALS**

On or about September 24, 2025, and September 28, 2025, Sellers and certain of their affiliates (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of Texas (such court, the "**Bankruptcy Court**" and such cases, the "**Bankruptcy Cases**");

On April 9, 2026, the Bankruptcy Court entered the *Order (I) Converting Chapter 11 Cases of Evolution SPV Debtors to Cases Under Chapter 7; and (II) Granting Related Relief* [Docket No. 2396] and Ronald Sommers was appointed as the chapter 7 trustee of Patterson Inventory, LLC, Patterson Inventory Holdings, LLC, Starlight Inventory I, LLC, and Starlight Inventory Holdings I, LLC [Case No. 25-90392, Docket No. 11; Case No. 25-90393, Docket No. 11; Case No. 25-90394, Docket No. 11; Case No. 25-90395, Docket No. 11];

On April 16, 2026, the Bankruptcy Court entered the *Order Pursuant to Section 363 of the Bankruptcy Code (I) Approving and Authorizing the Debtors to Enter into and Perform under the Consulting Agreement; (II) Authorizing the Sale of Wind Down Assets Free and Clear of All Liens, Claims, and Encumbrances; and (III) Granting Related Relief* [Docket No. 2454] (the "**Wind Down Order**");

On July 9, 2026, the Bankruptcy Court entered the *Order Extending Wind Down Order to the Chapter 7 Trustee and Related Relief* [Case No. 25-90392, Docket No. 61] (the "**Starlight Patterson Extension Order**");

On September 1, 2026, the Bankruptcy Court entered the *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* [Docket No. 3748] (the "**FBG Conversion Order**") and Eva Engelhart was named as the chapter 7 trustee (the "**FBG Trustee**") of the Debtors whose cases were converted pursuant thereto; and

Sellers desire to sell to Buyer, and Buyer desires to purchase from Sellers, all of the Acquired Assets (defined below) on the terms and subject to the conditions set forth in this Bill of Sale, pursuant to the Wind Down Order and Starlight Patterson Extension Order, and free and clear of any and all Encumbrances, as that term is used in the Wind Down Order.

NOW, THEREFORE, in consideration of the foregoing and the representations, warranties, covenants and agreements set forth in this Bill of Sale, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## ARTICLE I
## PURCHASE AND SALE

Section 1.01. Purchase and Sale of Acquired Assets. Each Seller hereby sells, conveys, assigns, transfers to Buyer, and Buyer hereby purchases, acquires and accepts from each such Seller, all of such Seller's right, title and interest in, to and under all inventory, machinery, and equipment located at 1380 Corporate Drive, McHenry, IL 60050; 4400 Prime Parkway, McHenry, IL 60050; and 1100 Corporate Drive, McHenry, IL 60050 (such premises subject to the Leases (defined below), together, the "**Leased Property**" and, such assets, collectively, the "**Acquired Assets**") free and clear of any and all Encumbrances, as that term is used in and to the extent provided in the Wind Down Order. Buyer shall purchase the Acquired Assets "in place" at the Leased Property and shall be responsible for all costs, expenses, taxes, duties, tariffs, imposts, tolls, customs, fees, charges, or other assessments levied or billed to the Buyer to transfer the Acquired Assets to Buyer (collectively, the "**Transfer Expenses**"). No Seller will be responsible for any Transfer Expenses.

Section 1.02. Assignment of Leases; Cure Costs. As a material inducement to Buyer's agreement to enter into this Bill of Sale, BPI shall assume its leases with respect to the Leased Property (the "**Leases**") and assign them to Buyer, and Buyer shall take assignment of the Leases from BPI pursuant to the terms and conditions of the Lease Assignment and Assumption Agreement executed contemporaneously herewith (the "**Lease Assignment and Assumption Agreement**"). For the avoidance of doubt, the Buyer's agreement to enter into and close on the transactions contemplated by this Bill of Sale is expressly conditional upon the Bankruptcy Court's approval of the Lease Assignment and Assumption Agreement. As set forth in the Lease Assignment and Assumption Agreement, in full and final satisfaction of all cure costs in connection with the assumption, assignment, or transfer of the Leases (collectively, the "**Cure Costs**"), (i) landlord of the Leased Property (the "**Landlord**") will apply the full amount of the proceeds from the remainder of the proceeds available from drawing on the letter of credit issued respecting the 4400 Prime Parkway Lease; (ii) the FBG Trustee shall relinquish and abandon to Landlord BPI's right, title and interest in and to the remaining balance of any security deposit held under or with respect to either of the Leases; and (iii) Buyer shall make a one-time cash payment to the Landlord of $210,336.26, which amount shall be in addition to the purchase price owed by Buyer to Sellers pursuant to Section 1.04 of this Bill of Sale. Except as expressly set forth in this section, the Sellers and Buyer shall have no other obligations for Cure Costs.

Section 1.03. Bankruptcy Court Approval; Effective Date. As soon as reasonably practicable following execution of this Bill of Sale and the Lease Assignment and Assumption Agreement, the FBG Trustee shall file a motion with the Bankruptcy Court seeking entry of an agreed order approving (i) the sale of the Acquired Assets pursuant to this Bill of Sale; and (ii) the assumption and assignment of the Leases pursuant to the Lease Assignment and Assumption Agreement. This Bill of Sale shall not have any force or effect until the Bankruptcy Court enters a final and unappealable order, in form and substance satisfactory to Buyer, approving and authorizing the transactions contemplated by: (i) this Bill of Sale, and (ii) the Lease Assignment and Assumption and Agreement (the "**Sale Order**" and, the date on which the Sale Order becomes final and unappealable, the "**Effective Date**"). Each Seller agrees and acknowledges that the Acquired Assets shall not be sold or transferred to any other entity or person, removed, or otherwise disposed from the Leased Property prior to the Effective Date.

Section 1.04. Purchase Price. The aggregate consideration to be paid by Buyer on the Effective Date, by wire transfer, for the sale of all of the Acquired Assets and obligations of Sellers set forth in this

Bill of Sale shall be an amount in cash equal to Twelve Million U.S. Dollars ($12,000,000), of which amount (i) Two Million U.S. Dollars ($2,000,000) shall be allocated to machinery and equipment Acquired Assets, and (ii) Ten Million U.S. Dollars ($10,000,000) shall be allocated to inventory Acquired Assets (the "**Purchase Price**"). The Purchase Price shall not be subject to any adjustment.

Section 1.05. Seller Cooperation. From and after the Effective Date until the completion of the Wind Down, each Seller shall use commercially reasonable efforts to reasonably cooperate with Buyer and execute, acknowledge, and deliver such further instruments, assignments, conveyances, declarations, affidavits, and other documents, and take such further actions, as Buyer may reasonably request to evidence, perfect, record, confirm, or otherwise effectuate the transfer, assignment, vesting, and ownership of the Acquired Assets in Buyer or its designee.

Section 1.06. Debtors' Books and Records. The Debtors maintain certain physical books and records at the Leased Property (the "**Books and Records**"), which shall not constitute Acquired Assets. Buyer shall provide the FBG Trustee and her agents, contractors, riggers, other third-party vendors or representatives (collectively, the "**Removal Personnel**") access to the Leased Property through and including December 31, 2026, during normal business hours or at such other times as Buyer may reasonably approve (such approval not to be unreasonably withheld, conditioned, or delayed), solely as reasonably necessary to inspect, rig, load, remove, and transport the Books and Records; *provided*, *however*, that the Debtors and the Removal Personnel shall not remove or transport any Books and Records that include any information (a) relating to any free trade zone or foreign trade zone at which the Acquired Assets are located or (b) that may be relevant to the Buyer's potential future liability for Transfer Expenses (such Books and Records, the "**FTZ Records**"). The Debtors and all Removal Personnel shall use commercially reasonable efforts to reasonably cooperate with Buyer to maintain in place and segregate the FTZ Records. The FBG Trustee and the Removal Personnel shall coordinate all access and removal activities with Buyer on reasonable advance notice (email notice being sufficient) and all Removal Personnel shall conduct all such activities in a safe, workmanlike, and commercially reasonable manner, and in a manner that does not unreasonably interfere with any of Buyer's activities at the Leased Property. The FBG Trustee shall ensure that all Removal Personnel engaged by or on her behalf in connection with such activities are properly licensed and insured, to the extent required by applicable law, and, upon Buyer's or the Leased Property's Landlord's reasonable request, shall provide reasonable evidence of such insurance before any such Person enters the Leased Property. The Debtors shall be responsible, at their sole cost, expense, and risk, for all costs and expenses of the pickup, disconnection, disassembly, rigging, loading, removal, crating, packing, storage, shipment and transportation of the Books and Records, including all labor, equipment, contractor, carrier, permit, and removal costs, solely to the extent such costs are related to removal activities conducted by or on behalf of the Debtors. The Debtors shall be responsible for liabilities arising from the Removal Personnel or the Removal Personnel's access to the Leased Property or removal activities to the extent caused by the acts or omissions of the Removal Personnel.

Section 1.07. No Buyer Responsibility for Pre-Closing Claims. Buyer will not assume any responsibility or liability arising out of or resulting from claims (including, without limitation, product liability, warranty, returns, recall, litigation, or customer claims) to the extent such claims arise out of the sale of products manufactured and sold by any Seller to third-party customers prior to the Effective Date. For the avoidance of doubt, (a) Buyer shall be solely responsible for any claims arising out of or resulting from Buyer's own sale, marketing, distribution, storage, handling, or modification of any Acquired Assets or products following the Effective Date, and (b) nothing in this Section 1.05 shall create any obligation

on the part of any Seller to indemnify Buyer or any third party with respect to any claims arising after the Effective Date solely from Buyer's acts or omissions.

Section 1.08. No Seller Responsibility for Post-Closing Tariffs. Buyer will assume sole responsibility and liability for any tariffs, duties, customs, fees, imposts, or other charges arising from (i) the removal of the Acquired Assets from any free trade zone or foreign trade zone at which the Acquired Assets are located as of the Effective Date; or (ii) the entry of the Acquired Assets into the customs territory of the United States following the Effective Date.

## ARTICLE II
## "AS IS, WHERE IS" TRANSACTION

Section 2.01. "As Is, Where Is"; No Representations or Warranties. **EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS BILL OF SALE, BUYER UNDERSTANDS AND AGREES THAT THE ACQUIRED ASSETS ARE BEING TRANSFERRED "IN PLACE" ON A "WHERE-IS" AND, AS TO CONDITION, "AS-IS" BASIS, SUBJECT ONLY TO THE REPRESENTATIONS AND WARRANTIES CONTAINED IN SECTION 3.07, WITH ALL FAULTS AND DEFECTS, WHETHER KNOWN OR UNKNOWN, LATENT OR PATENT, AND WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE**. Without limiting the foregoing, no Seller makes any representation or warranty of any kind whatsoever, express or implied, written or oral, at law or in equity, to Buyer regarding the probable success, profitability or value of the Acquired Assets or with respect to compliance of the Acquired Assets with industry standards or any other safety standards, and Buyer acknowledges that Sellers and Sellers' agent have made no such representations or warranties. Without limiting the foregoing, no Seller or Sellers' agent makes any representation or warranty as to whether any Acquired Assets have been manufactured, packaged, labeled, marked, stored, or distributed, in compliance with, or may be lawfully distributed, marketed, labeled, sold, or resold under applicable laws, rules, or regulations. **SELLERS HEREBY EXPRESSLY DISCLAIM, AND BUYER HEREBY EXPRESSLY WAIVES, ANY AND ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTY OF MERCHANTABILITY, THE IMPLIED WARRANTY OF FITNESS FOR ANY PURPOSE OR FOR A PARTICULAR PURPOSE, THE IMPLIED WARRANTY OF CONFORMITY TO MODELS OR SAMPLES, QUIET ENJOYMENT, TITLE, POSSESSION OR OTHERWISE AND ANY WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING, OR USAGE OF TRADE.**

## ARTICLE III
## MISCELLANEOUS

Section 3.01. Expenses. Except as otherwise specified in this Bill of Sale, each Party will pay its own costs and expenses, including legal, consulting, financial advisor, accounting and other fees and expenses, incurred in connection with this Bill of Sale, irrespective of when incurred or whether or not the Effective Date occurs.

Section 3.02. Assignment. This Bill of Sale will be binding upon and inure to the benefit of and be enforceable by the respective successors and permitted assigns of the Parties. No Party may assign (whether by operation of law or otherwise) this Bill of Sale or any rights, interests or obligations provided

by this Bill of Sale without the prior written consent of the other Parties; *provided, however*, that any Seller may assign any of its rights or obligations under this Bill of Sale to any of its controlled affiliates or to any plan administrator, liquidator, liquidating trust, "wind down" vehicle, examiner, receiver, trustee or similar party appointed on its behalf following that Effective Date or in accordance with any order approved by the Bankruptcy Court, and the Buyer may assign any of its rights or obligations under this Bill of Sale to any of its controlled affiliates or designees; *provided, further*, that no such assignment by any Seller or Buyer pursuant to the foregoing clauses shall release any other Party from any liability under this Bill of Sale. Any attempted assignment in violation of this Section 3.02 shall be void *ab initio*.

Section 3.03. Entire Agreement. This Bill of Sale (and all schedules hereto), the Wind Down Order, the Starlight Patterson Extension Order, the FBG Conversion Order (solely to the extent it extends the Wind Down Order to the converted cases and conveys authority to the FBG Trustee to execute this Bill of Sale), the Lease Assignment and Assumption Agreement (and all schedules thereto), and the Sale Order collectively constitute and contain the entire agreement and understanding of the Parties with respect to the subject matter hereof and thereof and supersede all prior or contemporaneous negotiations, correspondence, understandings, agreements and contracts, whether written or oral, among the Parties respecting the subject matter hereof and thereof.

Section 3.04. Amendments; Waiver. This Bill of Sale (including the schedules hereto) may be amended, restated, supplemented or otherwise modified, only by written agreement duly executed by Buyer and each Seller. No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy under this Bill of Sale shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such Party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Section 3.05. Governing Law. This Bill of Sale, and any action or proceeding or claim that may be based upon, arise out of or relate or be incidental to any transaction, this Bill of Sale, the negotiation, execution, performance or consummation of the foregoing or the inducement of any Party to enter into the foregoing, whether for breach of contract, tortious conduct or otherwise, and whether now existing or hereafter arising, will be exclusively governed by and construed and enforced in accordance with the internal laws of the State of Delaware, without giving effect to any law or rule that would cause the laws of any jurisdiction other than the State of Delaware to be applied. The Bankruptcy Court is the exclusive venue for conducting any legal action, suit or proceeding with respect to this Bill of Sale, including any proceedings to enforce or interpret this agreement, which rights are expressly preserved.

Section 3.06. Counterparts. This Bill of Sale may be executed in counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute one and the same instrument. Facsimiles, email transmission of .pdf signatures or other electronic copies of signatures shall be deemed to be originals.

Section 3.07. Representations and Warranties. Each Party hereby represents and warrants to the other Party that: (a) it is an entity duly incorporated, formed or organized, validly existing and, to the extent legally applicable, in good standing under the laws of its jurisdiction of incorporation, formation or organization; (b) it has the requisite corporate or other appropriate power to execute, deliver and perform its obligations under this Bill of Sale; (c) it has the requisite corporate or other power to operate its business, that it owns as now conducted and is duly qualified as a foreign corporation or other organization to do business, and to the extent legally applicable, is in good standing, with respect to its business, in

each jurisdiction in which the character of its owned, operated or leased properties or the nature of its activities makes such qualification necessary, except for jurisdictions where the failure to be so qualified or in good standing has not had and would not reasonably be expected to have, a material adverse effect; and (d) subject to the authorizations described in this Bill of Sale and as may be required by the Bankruptcy Court, this Bill of Sale has been duly executed and delivered by such Party, and upon execution and delivery thereof, this Bill of Sale constitutes a legal, valid and binding obligation, enforceable against it in accordance with their respective terms. Buyer further represents and warrants that it is not an "insider" of the Debtors, as such term is defined in Section 101(31) of the Bankruptcy Code. Sellers further represent and warrant, solely with respect to the Acquired Assets and subject to the Wind Down Order, that each and all of the Acquired Assets are Wind Down Assets under the Wind Down Order.

Section 3.08. Agency Acknowledgement. The purchase and sale of the Acquired Assets hereunder is being made through Hilco Merchant Resources, LLC, Hilco Receivables, LLC, Hilco Global Professional Services, LLC or their affiliates (collectively, "**Agent**"), in their capacity as agent for the Sellers pursuant to that certain Amended and Restated Consulting and Marketing Services Agreement, dated as of March 13, 2026, by and between First Brands Group, LLC and Agent (as amended, restated, or modified from time to time), as approved pursuant to the Wind Down Order and extended by the Starlight Patterson Extension Order and the FBG Conversion Order. For the avoidance of doubt, in its capacity as agent to the Sellers, Agent is not taking title to the Acquired Assets prior to sale.

Section 3.09. Indemnification. Buyer shall indemnify and hold Sellers and their respective members, managers, officers, directors, employees, agents (including the Agent), and other representatives, including, but not limited to, advisors, consultants, attorneys, financial advisors (collectively, "**Seller Indemnified Parties**") harmless from and against all losses, liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or grossly negligent acts or omissions of Buyer, (b) any bodily injury to any person or damage to any real or personal property of any Seller or any third party, in each case to the extent caused by or resulting from the acts or omissions of Buyer or its representative in connection with the transfer of the Acquired Assets pursuant to this Bill of Sale; *provided*, *however*, that Buyer shall have no obligation to indemnify, defend, or hold harmless any Seller Indemnified Party to the extent any such losses, liabilities, claims, demands, damages, costs, or expenses are caused by the acts or omissions of any Seller Indemnified Party, and (c) the material breach of any material provision of this Bill of Sale by Buyer and/or any third party purchaser to whom Buyer re-sells the Acquired Assets.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, Sellers and Buyer have caused this Bill of Sale to be executed by their respective duly authorized officers.

**SELLERS:**

**BRAKE PARTS INC LLC**

By: DocuSigned by: Eva Engelhart 17AE566F8087446... ____________________
Name: Eva Engelhart
Title: Chapter 7 Trustee

**STARLIGHT INVENTORY I, LLC**

By: ________________________________
Name: Ron Sommers
Title: Chapter 7 Trustee

**BUYER:**

**JESSCO BRAKES INC.**

By: ______________________
Name: Eric Zhang
Title: VP of Corporate Development

# **Exhibit 2**

## **Lease Assignment and Assumption Agreement**

**Parcel Numbers:** **McHenry, Illinois**
14-10-201-009 & 14-10-227-009
14-10-202-004 & 14-10-252-004 & 14-10-252-002 & 14-10-252-001

**LEASE ASSIGNMENT AND ASSUMPTION AGREEMENT**

This Lease Assignment and Assumption Agreement (this "**Assignment**") dated as of October 18, 2026, is made by and between Brake Parts Inc LLC, a Delaware limited liability company ("**Assignor**"), and JessCo Brakes Inc., a Texas corporation ("**Assignee**") (each of Assignor and Assignee, a "**Party**" and, together, the "**Parties**").

**RECITALS**

On or about September 24, 2025 and September 28, 2025, Assignor and certain of its affiliates (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of Texas (such court, the "**Bankruptcy Court**" and such cases, the "**Bankruptcy Cases**");

On April 9, 2026, the Bankruptcy Court entered the *Order (I) Converting Chapter 11 Cases of Evolution SPV Debtors to Cases Under Chapter 7; and (II) Granting Related Relief* [Docket No. 2396] and Ronald Sommers was appointed as the chapter 7 trustee of Patterson Inventory, LLC, Patterson Inventory Holdings, LLC, Starlight Inventory I, LLC, and Starlight Inventory Holdings I, LLC [Case No. 25-90392, Docket No. 11; Case No. 25-90393, Docket No. 11; Case No. 25-90394, Docket No. 11; Case No. 25-90395, Docket No. 11];

On April 16, 2026, the Bankruptcy Court entered the *Order Pursuant to Section 363 of the Bankruptcy Code (I) Approving and Authorizing the Debtors to Enter into and Perform under the Consulting Agreement; (II) Authorizing the Sale of Wind Down Assets Free and Clear of All Liens, Claims, and Encumbrances; and (III) Granting Related Relief* [Docket No. 2454] (the "**Wind Down Order**");

On July 9, 2026, the Bankruptcy Court entered the *Order Extending Wind Down Order to the Chapter 7 Trustee and Related Relief* [Case No. 25-90392, Docket No. 61] (the "**Starlight Patterson Extension Order**");

On September 1, 2026, the Bankruptcy Court entered the *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* [Docket No. 3748] (the "**FBG Conversion Order**") and Eva Engelhart was named as the chapter 7 trustee (the "**FBG Trustee**") of the Debtors whose cases were converted pursuant thereto; and

The FBG Trustee, on behalf of Assignor, desires to assign, transfer, convey, and deliver to Assignee all of Assignor's right, title and interest in and to the two leases described in Schedule I attached hereto (together with all amendments, modifications, and supplements thereto, the "**Leases**" and the premises subject to the Leases, the "**Leased Property**"), and subject to Assignee and KITKAT (IL) LLC ("**Landlord**"), the landlord under both Leases, entering into certain amendments to the Leases contemporaneously herewith in form and substance agreed to between

Assignee and Landlord (the "**Lease Amendments**"), Assignee desires to assume Assignor's right, title and interest in and to such Leases (as amended by the Lease Amendments) in accordance with the terms hereinafter set forth.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

**ASSIGNMENT**

1. Bankruptcy Court Approval; Effective Date. As soon as reasonably practicable following execution of this Assignment, the FBG Trustee shall file a motion with the Bankruptcy Court seeking entry of an agreed order approving (i) the sale of the inventory and equipment located at the Leased Property pursuant to a bill of sale executed contemporaneously herewith (the "**Bill of Sale**"); and (ii) this Assignment. This Assignment shall not have any force or effect until the Bankruptcy Court enters a final and unappealable order, in form and substance satisfactory to Assignee, approving and authorizing the transactions contemplated by: (i) this Assignment; and (ii) the Bill of Sale (the "**Sale Order**" and, the date on which the Sale Order becomes final and unappealable, the "**Effective Date**").

2. Assignment and Assumption of Leases. For and in consideration of Ten Dollars ($10.00) and other valuable consideration, the receipt and adequacy of which are hereby acknowledged, as of the Effective Date, Assignor shall assign, transfer, convey, and deliver to Assignee all of Assignor's estate, right, title and interest as tenant of the leasehold estate described under the Leases, and Assignee shall accept the assignment, transfer, conveyance and delivery of Assignor's estate, right, title and interest in, to and under such leasehold estate. Assignee and Landlord shall enter into the Lease Amendments on the Effective Date. For the avoidance of doubt, the Assignee's agreement to enter into and close on the transactions contemplated by this Assignment is expressly conditional upon the Bankruptcy Court's approval of the Bill of Sale.

3. Cure Costs. In full and final satisfaction of all cure costs in connection with the assumption, assignment, or transfer of the Leases (collectively, the "**Cure Costs**"), (i) Landlord will apply the full amount of the proceeds from the remainder of the proceeds available from drawing on the letter of credit issued respecting the 4400 Prime Parkway Lease; (ii) the FBG Trustee shall relinquish and abandon to Landlord the Assignor's right, title and interest in and to the remaining balance of any security deposit held under or with respect to either of the Leases; and (iii) Assignee shall make a one-time cash payment to the Landlord of $210,336.26, which amount shall be in addition to the purchase price owed by Assignee to Assignor under Section 1.04 the Bill of Sale. Except as expressly set forth in this section, Assignor and Assignee shall have no other obligations for Cure Costs.

4. Pre-Effective Date Location Expenses. If the Effective Date has not occurred on or before October 31, 2026, the FBG Trustee shall pay the daily prorated base rent, taxes, and insurance associated with the Leased Property (the "**Location Expenses**") from November 1, 2026 through the earlier of (i) November 30, 2026; or (ii) the Effective Date; *provided*, that, if the Effective Date does not occur by November 30, 2026, the Landlord may terminate the Leases and Location Expenses for the month of November 2026 shall become due and payable by the FBG

Trustee within five (5) business days of such termination. The terms of this Section 4 may be amended by mutual email agreement of the Parties at any time until the Effective Date. The FBG Trustee shall have no obligation to fund Location Expenses following the Effective Date.

5. Assumed Liabilities; Accrued and Unasserted Liabilities. As of the Effective Date, Assignor shall assign, and Assignee shall assume and agree to pay, discharge, or perform when due, after such date, the Assumed Liabilities (as defined herein) related to the Leases. Assignee shall be responsible for all obligations under the Leases, *cum onere*, solely to the extent those obligations arise or accrue after the Effective Date (collectively, the "**Assumed Liabilities**"). For the avoidance of doubt and the sake of clarity, nothing set forth in this Assignment shall require Assignee to assume or otherwise become responsible for any obligations arising or accruing prior to the Effective Date, including, without limitation, any of the Cure Costs, or any obligations that accrued prior to the Effective Date, but that have not been billed, invoiced, asserted, noticed or otherwise claimed as of the Effective Date, including for royalties, rents, utilities, taxes, insurance, indemnification, fees, common area or other maintenance charges, promotional funds, and percentage rent; *provided*, *however*, that to the extent, if any, an obligation arises under a Lease on or before the Effective Date, but relates to amounts accruing after, or an occurrence after, the Effective Date, Assignee shall be responsible for such obligation. Nothing herein shall impact Landlord's ability to recover a claim under a Lease to the extent, if any, such recovery would be available under Assignor's insurance coverage.

6. No Abandonment. Neither Assignor nor its affiliated Debtors shall abandon any property on the Leased Property in connection with this Assignment, including, without limitation, any inventory, machinery, or equipment. The Debtors' property remaining on the Leased Property at the time of this Assignment shall either be (a) be conveyed to and become the property of Assignee, to the extent and in the manner as set forth in the Bill of Sale; or (b) promptly removed from the Leased Property by the Assignor.

7. Binding Agreement. Prior to the Effective Date, this Assignment shall not be assigned to any other party without the expressed written consent of each of the Parties. From and after the Effective Date, this Assignment shall be binding upon and inure to the benefit of the Parties and their respective permitted successors and assigns, including the FBG Trustee.

8. Notices. All notices and other communications under or by reason of this Assignment shall be in writing and shall be deemed to have been duly given or made: (a) when personally delivered, (b) when delivered by e-mail transmission with receipt confirmed or (c) upon delivery by overnight courier service, in each case, to the addresses and attention parties indicated below (or such other address, e-mail address or attention party as the recipient party has specified by prior notice given to the sending party in accordance with this Section):

| | |
|---|---|
| If to Assignor, to: | Eva Engelhart<br>Chapter 7 Trustee of First Brands Group Holdings, LLC<br>Email: eengelhart@rossbanks.com |
| With a copy (which will not constitute notice) to each of: | Porter Hedges LLP<br>1000 Main St, 36th Floor<br>Houston, TX 77002 |

| | |
|---|---|
| | Attn: Joshua W. Wolfshohl, Eric English<br>Email: jwolfshohl@porterhedges.com<br>eric.english@porterhedges.com<br><br>AND<br><br>Katten Muchin Rosenman LLP<br>50 Rockefeller Plaza<br>New York, NY 10020-1605<br>Attn: Cindi M. Giglio, Grace A. Thompson<br>Email: cgiglio@katten.com<br>grace.thompson@katten.com |
| If to Assignee, to: | Eric Zhang<br>Friction One<br>E-mail: eric.zhang@friction1.us |
| With a copy (which will not constitute notice) to each of: | Foley & Lardner LLP<br>321 North Clark Street, Suite 3000<br>Chicago, IL 60654<br>Attn: Ann Marie Uetz, Emil P. Khatchatourian<br>Email: auetz@foley.com<br>ekhatchatourian@foley.com |
| If to Landlord, to: | W.P. Carey Inc.<br>One Manhattan West<br>395 9th Avenue 58th Floor<br>New York, NY 10001<br>Attn: Sam Rubenstein<br>Email: Srubenstein@WPCAREY.COM |
| With a copy (which will not constitute notice) to: | Chaffetz Lindsey LLP<br>1700 Broadway<br>New York, NY 10019<br>Attn: Alan Lipkin<br>Email: a.lipkin@chaffetzlindsey.com |

9. Severability. If any term or provision of this Assignment is held invalid, illegal or unenforceable in any respect under any applicable law, as a matter of public policy or on any other grounds, the validity, legality and enforceability of all other terms and provisions of this Assignment will not in any way be affected or impaired. If the final judgment of a court of competent jurisdiction or other government authority declares that any term or provision hereof is invalid, illegal or unenforceable, the Parties agree that the court making such determination will have the power to reduce the scope, duration, area or applicability of the term or provision, to delete specific words or phrases, or to replace any invalid, illegal or unenforceable term or provision with a term or provision that is valid, legal and enforceable and that comes closest to expressing the intention of the invalid, illegal or unenforceable term or provision.

10. Amendments. This Assignment may be amended, restated, supplemented, or otherwise modified, only by written agreement duly executed by each Party. No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy under this Assignment shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such Party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

11. Further Assurances. Each of the Parties shall execute and deliver such documents, and take such other action, as shall be reasonably requested by any other party to carry out the transactions contemplated by this Assignment.

12. Counterparts. This Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute one and the same instrument. Facsimiles, email transmission of .pdf signatures or other electronic copies of signatures shall be deemed to be originals.

13. Governing Law. This Assignment, and any action, dispute or claim that may be based upon, arise out of or relate or be incidental to this Assignment, the negotiation, execution, performance or consummation of the foregoing or the inducement of any Party to enter into the foregoing, whether for breach of contract, tortious conduct or otherwise, and whether now existing or hereafter arising, will be exclusively governed by and construed and enforced in accordance with the internal Laws of the State of Delaware, without giving effect to any Law or rule that would cause the Laws of any jurisdiction other than the State of Delaware to be applied. The Bankruptcy Court is the exclusive venue for conducting any legal action, suit or proceeding with respect to this Assignment including any proceedings to enforce or interpret this agreement, which rights are expressly preserved.

14. No Other Third-Party Beneficiaries. The parties agree that Landlord shall be a third-party beneficiary of this Assignment. Other than Landlord, nothing in this Assignment shall create or be deemed to create any third-party beneficiary rights in any Person not a party hereto, including any affiliates of any Party.

15. Entire Agreement. This Assignment (and all schedules hereto), the Wind Down Order, the Starlight Patterson Extension Order, the FBG Conversion Order (solely to the extent it extends the Wind Down Order to the converted cases and conveys authority to the FBG Trustee to execute this Assignment), the Bill of Sale (and all schedules thereto), and the Sale Order collectively constitute and contain the entire agreement and understanding of the Parties with respect to the subject matter hereof and thereof and supersede all prior negotiations, correspondence, understandings, agreements and contracts, whether written or oral, among the Parties respecting the subject matter hereof and thereof.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Parties have executed this Assignment as of the date first above written.

**Assignor**:

**BRAKE PARTS INC LLC, a Delaware limited liability company**

By: DocuSigned by: Eva Engelhart 17AE566F8087446... ____________
Name: Eva Engelhart
Title: Chapter 7 Trustee

**Assignee:**

**JESSCO BRAKES INC., a Texas corporation**

By: ____________________________
Name: Eric Zhang
Title: VP of Corporate Development

**Subject to receipt of the Lease Amendments, acknowledged and agreed:**

**KITKAT (IL) LLC,**
**a Delaware limited liability company**

By: WPC HOLDCO LLC, a Maryland limited liability company, its sole member

By: W. P. Carey Inc., a Maryland corporation, its sole member

By:____________________________
Name: Sam Rubenstein
Title: Senior Vice President

IN WITNESS WHEREOF, the Parties have executed this Assignment as of the date first above written.

**Assignor**:

**BRAKE PARTS INC LLC, a Delaware limited liability company**

By: ____________________________
Name: Eva Engelhart
Title: Chapter 7 Trustee

**Assignee:**

**JESSCO BRAKES INC., a Texas corporation**

By: ____________________________
Name: Eric Zhang
Title: VP of Corporate Development

**Subject to receipt of the Lease Amendments, acknowledged and agreed:**

**KITKAT (IL) LLC,**
**a Delaware limited liability company**

By: WPC HOLDCO LLC, a Maryland limited liability company, its sole member

By: W. P. Carey Inc., a Maryland corporation, its sole member

By:____________________________
Name: Sam Rubenstein
Title: Senior Vice President

## SCHEDULE I

**1100 Corporate Drive Lease**

Lease, dated November 13, 1998, as amended five times (including pursuant to the Lease Amendments), for approximately 378,380 square feet of space, located at 1100 Corporate Drive, McHenry, IL 60050.

**4400 Prime Parkway Lease**

Lease, dated September 16, 2013, as amended five times (including pursuant to the Lease Amendments), for approximately 288,000 square feet of space located at 4400 Prime Parkway, McHenry, IL 60050 and 1380 Corporate Drive, McHenry, IL 60050.