EXHIBIT 3

*First Brands Group, LLC's Objections and Answers to Evolution Credit Partners' First Set of Interrogatories, with Verification by Eva S. Engelhart, Chapter 7 Trustee, dated October 16, 2026*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| FIRST BRANDS GROUP, LLC, *et al* | ) | Case No. 25-90399 (CML) |
| | ) | Jointly Administered |

**FIRST BRANDS GROUP, LLC'S OBJECTIONS AND ANSWERS**
**TO EVOLUTION CREDIT PARTNERS' FIRST SET OF INTERROGATORIES**

To: Evolution Credit Partners, c/o Elsberg Baker & Maruri PLLC, Gray Reed, Proskauer Rose LLP

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable by Rules 7026, 7033, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), Eva S. Engelhart, solely in her capacity as chapter 7 trustee (the "Trustee") of the estates of First Brands Group, LLC and its affiliated debtors (collectively, the "FBG Debtors"), by and through her undersigned counsel, submits these responses and objections (the "Responses") to Evolution's First Set of Interrogatories to First Brands Group, LLC dated October 1, 2026 (the "Interrogatories," and each, an "Interrogatory"), served by Evolution Credit Opportunity Master Fund II-B, L.P. and its affiliates (collectively, "Evolution") in connection with Docket Nos. 3144, 3792, and 3796 (the "Contested Matters").

Dated: October 16, 2026.

Respectfully submitted,

**PORTER HEDGES LLP**

By: */s/ Joshua W. Wolfshohl*

Joshua W. Wolfshohl
Texas Bar No. 24038592
Eric M. English
Texas Bar No. 24062714
Shane M. Johnson
Texas Bar No. 24083263
Grecia V. Sarda
Texas Bar No. 24132092
1000 Main Street, FL 36
Houston, Texas 77002
(713) 226-6000 - telephone
jwolfshohl@porterhedges.com
eenglish@porterhedges.com
sjohnson@porterhedges.com
gsarda@porterhedges.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of October, 2026, he caused a true and correct copy of the foregoing document to be served upon the following counsel via email:

David Elsberg (delsberg@elsberglaw.com)
Michael Duke (mduke@elsberglaw.com)
Vivek Tata (vtata@elsberglaw.com)
Andrew Parks (aparks@elsberglaw.com)
Ella Epstein (eepstein@elsberglaw.com)
Jason S. Brookner (jbrookner@grayreed.com)
Emily F. Shanks (eshanks@grayreed.com)
Vincent Indelicato (vindelicato@proskauer.com)
Matthew R. Koch (mkoch@proskauer.com)
Charles A. Dale (dale@proskauer.com)

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl

## PRELIMINARY STATEMENT

The Trustee was appointed on September 1, 2026, upon conversion of the FBG Debtors' chapter 11 cases to chapter 7. The Trustee has no personal knowledge of the FBG Debtors' pre-conversion operations, accounting, cash management, or reporting. These Responses are based on the FBG Debtors' books and records and on information provided by the FBG Debtors' former professionals, including Alvarez & Marsal North America, LLC ("A&M"). The Trustee's investigation is ongoing, and the Trustee reserves the right to supplement or amend these Responses. Where the Trustee elects to answer by reference to business records under Federal Rule 33(d), she will specify those records by Bates number.

## GENERAL OBJECTIONS

1. The Trustee objects to the demand that answers be served by 5:00 p.m. Eastern Time on October 12, 2026, eleven days after service. Federal Rule 33(b)(2) provides 30 days to respond. The Trustee will serve these Responses, and any supplementation, on a schedule to be agreed among counsel.

2. The Trustee objects to the Interrogatories to the extent they are overbroad, unduly burdensome, vague, ambiguous, or not proportional to the needs of the Contested Matters under Federal Rule 26(b)(1).

3. The Trustee objects to the Interrogatories to the extent that, including discrete subparts, they exceed the 25 interrogatories permitted by Federal Rule 33(a)(1). The Trustee reserves the right to decline to answer interrogatories in excess of that limit.

4. The Trustee objects to the Interrogatories to the extent they require the Trustee to create new analyses, compilations, or tracings not maintained in the ordinary course of business, or to perform a dollar-by-dollar tracing of commingled funds through the FBG Debtors' cash management system.

5. The Trustee objects to the Interrogatories to the extent they seek information protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, or any other privilege or protection, including the substance of communications between the Trustee, her counsel, and her advisors.

6. The Trustee objects to the Interrogatories to the extent they incorporate disputed allegations, including that any Receivables or Warehouse Receipts constitute Evolution's collateral or property of the Evolution SPV Debtors. Nothing in these Responses is an admission that Evolution holds any interest in any funds of the FBG Debtors' estates.

7. The Trustee objects to the Interrogatories to the extent they seek information already provided to Evolution, including reporting delivered under the Adequate Protection Stipulation and documents produced in Adversary Proceeding No. 25-03800.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1. The Trustee objects to the definitions of **"you," "your,"** and **"FBG Debtors"** to the extent they include A&M, Hilco, and other advisors and representatives, and the Trustee herself. The Trustee answers on behalf of the FBG Debtors' estates based on information reasonably available to her.

2. The Trustee objects to the definitions of **"Receivables," "Warehouse Receipts,"** and **"Warehouses"** as vague and premised on disputed facts. At the time of the January 20, 2026 hearing, the FBG Debtors did not track collections on account of inventory sourced from the Warehouses, or at any level below the BPI business unit. *See* Declaration of Daniel Jerneycic **[**Docket No. 3879-1] (the "Jerneycic Declaration") ¶ 8.

3. The Trustee will construe "Receivables" to mean accounts receivable generated by post-petition sales of inventory sourced from BPI's Midwest Distribution Center ("MDC") and West Coast Distribution Center ("WDC"), and "Warehouse Receipts" to mean collections on those Receivables. This over-inclusive construction is not an admission that any such Receivable arose from inventory located at a Warehouse.

4. The Trustee objects to the definition of **"Petition Date"** as September 24, 2025. The FBG Debtors filed their chapter 11 petitions on September 28, 2025, and the Trustee will use that date.

5. The Trustee objects to the definition of **"Identify"** to the extent it requires the identification of Bates numbers for documents not yet produced, or home addresses of current or former employees. The Trustee will identify persons by name, employer, and title, and may be contacted through counsel.

6. The Trustee objects to Instruction Nos. 4 and 6 through 8 to the extent they impose obligations beyond those of Federal Rule 33, and to Instruction No. 9 to the extent it requires a privilege log for communications with counsel after the Petition Date or after the Trustee's appointment.

## OBJECTIONS AND ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1: Identify every bank account that received customer payments on the Receivables during the Relevant Period. For each bank account, Identify the account holder, bank, account number, and the role or purpose of the bank account (e.g., concentration, disbursement, Factored Receivables Account, etc.).**

**ANSWER:**

Subject to and without waiving the foregoing General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Trustee objects to this Interrogatory to the extent it seeks full account numbers, which are identified below by their last four digits and will be provided in full only subject to the Protective Order (ECF No. 408).

Subject to and without waiving these objections, the Trustee states that, based on the FBG Debtors' books and records and information provided by A&M, customer payments on Receivables, as construed above, were received into the following four collection accounts (the "BPI Collection Accounts"):

(a) Brake Parts Inc LLC (Lockbox) — Account holder: Brake Parts Inc LLC; Bank: Bank of America, N.A.; Account number ending: 7312; Role: lockbox collection account.

(b) Brake Parts Inc LLC (Master Account) — Account holder: Brake Parts Inc LLC; Bank: Bank of America, N.A.; Account number ending: 7294; Role: collection account.

(c) Centric Collection Account — Account holder: Bowery Finance, LLC; Bank: Wells Fargo Bank, N.A.; Account number ending: 0667; Role: collection account.

(d) Brake Parts — Account holder: Bowery Finance, LLC; Bank: Wells Fargo Bank, N.A.; Account number ending: 3518; Role: collection account.

Funds received into the Lockbox and the Master Account were transferred to the FBG Debtors' main concentration account held by First Brands Group LLC at Bank of America, N.A. (Account number ending 6975) (the "Concentration Account"). Funds received into the Centric Collection Account were transferred to the Concentration Account, and funds in the Brake Parts account were transferred to the Concentration Account through November 2025 and, beginning in December 2025, to the FBG Debtors' investment account held by First Brands Group LLC at Bank of America, N.A. (Account number ending 9852) (the "Investment Account"). Collections on Receivables received on and after January 21, 2026 were placed in two segregated accounts with account numbers ending 1438 and 8871, one designated for Starlight and one for Patterson (the "Segregated Accounts"). The Segregated Accounts were opened as the segregated accounts contemplated by paragraph 4.C of the Adequate Protection Stipulation but were not used until the FBG Debtors began segregating collections after the January 20, 2026 hearing. *See* Jerneycic Declaration ¶¶ 7, 10–11.

**<u>INTERROGATORY NO. 2:</u> Identify the date of receipt, amount, invoice date, source, and receiving bank account of each Warehouse Receipt.**

**<u>ANSWER:</u>**

Subject to and without waiving the foregoing General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Trustee objects to this Interrogatory as seeking information not maintained in the ordinary course of business and as unduly burdensome to the extent it requires a narrative listing of each of the tens of thousands of individual receipts.

The Trustee states that from the Petition Date through June 5, 2026, approximately $21.2 million of receipts on Receivables were collected. Of that amount, approximately $19.5 million was collected before the January 20, 2026 ruling, of which approximately $17.5 million was received into the Lockbox and the Master Account and approximately $2.0 million into the Centric Collection Account and the Brake Parts account. *See* Jerneycic Declaration ¶ 11. Receipts on Receivables collected on and after January 21, 2026 are held in the Segregated Accounts, which held approximately $1.9 million as of October 9, 2026. *See id.* ¶ 10.

**<u>INTERROGATORY NO. 3:</u> Identify whether any portion of the Warehouse Receipts has been spent, disbursed to non-FBG Debtor third parties, or otherwise no longer exists in a bank account that the FBG Debtors control. For each such portion, state the amount and the date(s) of disbursement, the account(s) from which Warehouse Receipts were disbursed, the payee(s), and the purpose of each payment.**

**<u>ANSWER:</u>**

Subject to and without waiving the foregoing General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Trustee objects to this Interrogatory as unduly burdensome and not proportional to the extent it requires the Trustee to trace individual dollars through a commingled concentration account to specific payees, which is not possible from the FBG Debtors' records and would require the creation of an analysis not maintained in the ordinary course of business.

Subject to and without waiving these objections, the Trustee states as follows. As to collections on Receivables received before January 21, 2026, Warehouse Receipts were not disbursed from the BPI Collection Accounts to third parties. They were transferred to the Concentration Account or, for the Centric Collection Account and the Brake Parts account beginning in December 2025, to the Investment Account, where they were commingled with collections from the FBG Debtors' other business units, debtor-in-possession financing proceeds, and other funds. As to collections on Receivables received on and after January 21, 2026, those funds were placed in the Segregated Accounts, which held approximately $1.9 million as of October 9, 2026; those funds have not been spent, disbursed to third parties, or commingled with other estate funds. *See* Jerneycic Declaration ¶¶ 7, 10–11.

Funds in the Concentration Account were used in the ordinary course of the FBG Debtors' business, including transfers to business-unit disbursement accounts for vendor payments, payroll,

and insurance; funding of the employee-liability reserve; funding of the professional fee escrow and other escrow accounts; transfers to and from the FBG Debtors' interest-bearing accounts; and transfers to the Factored Receivables Account, including approximately $25.7 million transferred on March 19, 2026 pursuant to the Court's order at Docket No. 2127. The Concentration Account balance declined from approximately $42,172,393 on January 20, 2026 to approximately $3,825,502 on January 23, 2026, and to approximately $3,357,925 on June 3, 2026. Of the decline between January 20 and January 23, 2026, approximately $23 million was used on January 23, 2026 to fund payroll-related expenses.

The Trustee further answers pursuant to Federal Rule 33(d) by reference to the bank statements for the BPI Collection Accounts and the Concentration Account produced alongside these Objections and Answers.

**<u>INTERROGATORY NO. 4:</u> For each portion of the Warehouse Receipts that was transferred from the initial receiving account to any other FBG Debtor account, Identify**:

a. The date and amount of each such transfer;

b. The account holder, financial institution, and account number of both transferor and transferee;

c. The identity of the person who authorized the transfer, or whether it was an automatic sweep;

d. Whether the transfer moved the entire balance of the transferor account; and

e. For each subsequent transfer of funds out of the transferee account to another account of any FBG Debtor, the information requested in subparts (a) through (d), continuing until the funds were disbursed to a person or entity other than an FBG Debtor or remained on deposit as of the date of your response.

**<u>ANSWER:</u>**

Subject to and without waiving the foregoing General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Trustee objects to this Interrogatory as containing multiple discrete subparts, and objects to subpart (e) as unduly burdensome, not proportional, and impossible to answer to the extent it presumes that commingled funds can be traced dollar-for-dollar through successive transfers.

Subject to and without waiving these objections, the Trustee states that funds in the BPI Collection Accounts identified in response to Interrogatory No. 1 were transferred as follows: funds in the Lockbox and the Master Account were transferred to the Concentration Account (First Brands Group LLC, Bank of America, N.A., Account number ending 6975), funds in the Centric Collection Account were transferred to the Concentration Account and funds in the Brake Parts account were transferred to the Concentration Account through November 2025 and, beginning in December 2025, to the Investment Account (First Brands Group LLC, Bank of America, N.A., Account number ending 9852). *See* Jerneycic Declaration ¶ 7. The Lockbox, the Centric Collection Account, and the Brake Parts account were swept daily: on each day those accounts received

deposits, the deposits were transferred out the same day. From September 29, 2025 through January 23, 2026, transfers from the BPI Collection Accounts totaled approximately $47,179,549, which includes collections on BPI receivables other than Receivables. As of January 23, 2026, the Lockbox, the Centric Collection Account, and the Brake Parts account had zero balances, and the Master Account held approximately $2,906,303.

As to collections on Receivables received before January 21, 2026, once in the Concentration Account, funds were commingled and were not thereafter separately identifiable as Warehouse Receipts. As to collections on Receivables received on and after January 21, 2026, funds transferred to the Concentration Account were identified and transferred from the Concentration Account to the Segregated Accounts, where they remain on deposit. The Trustee further answers pursuant to Federal Rule 33(d) by reference to the bank statements produced alongside these Objections and Answers, which reflect the date and amount of each transfer.

**INTERROGATORY NO. 5**: **Identify the amount of Warehouse Receipts, if any, that remain on deposit in any account under the control of the FBG Debtors and Identify each such account. If no Warehouse Receipts remain, state the facts supporting that conclusion.**

**ANSWER:**

Subject to and without waiving the foregoing General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Trustee objects to this Interrogatory to the extent it presumes that any funds held by the FBG Debtors' estates are traceable to Warehouse Receipts or subject to any interest of Evolution.

Subject to and without waiving these objections, the Trustee states that approximately $1.9 million, representing collections on Receivables on and after January 21, 2026, remained on deposit in the Segregated Accounts as of October 9, 2026. *See* Jerneycic Declaration ¶ 10.

As to collections before January 21, 2026, the following facts limit the amount of any Warehouse Receipts that could remain on deposit. Customer payments on Receivables were received only into the four BPI Collection Accounts, and funds in those accounts were transferred to the Concentration Account, or, beginning in December 2025, from the Brake Parts account to the Investment Account. As of January 23, 2026, the Lockbox, the Centric Collection Account, and the Brake Parts account each had a zero balance. The Master Account held approximately $2,906,303, but only approximately $26,384 of Receivables was ever deposited into that account, so no more than that amount of its balance could derive from Receivables. The Concentration Account balance fell to approximately $3,825,502 on January 23, 2026. Moreover, subsequent to January 23, 2026, as of June 3, 2026, the Concentration Account balance dipped to approximately $3,357,925, the lowest balance reflected in the daily balance records through September 1, 2026. Because funds that leave an account are not replaced by later deposits from other sources, any Warehouse Receipts that reached the Concentration Account could not exceed that balance.

On and after January 21, 2026, collections on Receivables were segregated as described above, so no later deposits into the Concentration Account were Warehouse Receipts. The Investment Account, which received transfers from the Brake Parts account beginning in December 2025, reached a low balance of approximately $363,152 in February 2026. *See* Jerneycic Declaration ¶

11. Accordingly, even assuming, contrary to fact, that every dollar remaining in those accounts at their lowest balances derived from Receivables, no more than approximately $3.75 million (approximately $3,357,925 in the Concentration Account, $363,152 in the Investment Account, and $26,384 in the Master Account) in the FBG Debtors' accounts could derive from collections on Receivables before January 21, 2026. The Trustee does not concede that any portion of that amount derives from Receivables. All other funds in the Concentration Account were derived from other sources.

**INTERROGATORY NO. 6: For each account that received any Warehouse Receipts, and for the FBG Debtors' cash on a consolidated basis, identify whether the balance fell below $21.2 million at any time after the first Warehouse Receipt was deposited, and if so, Identify each date on which it did so and the lowest balance reached.**

**ANSWER:**

Subject to and without waiving the foregoing General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Trustee objects to this Interrogatory as overbroad and not relevant to the extent it seeks the FBG Debtors' consolidated cash balances, which include accounts that never received Warehouse Receipts, debtor-in-possession financing proceeds, and restricted funds. The Trustee further objects to identifying "each date" in narrative form as unduly burdensome, and answers that portion pursuant to Federal Rule 33(d).

Subject to and without waiving these objections, the Trustee states that the balance of each BPI Collection Account was below $21.2 million at all times from September 29, 2025 through September 1, 2026**.** The highest balance in any BPI Collection Account during that period was approximately $4,300,053, in the Master Account on March 3, 2026. Through January 23, 2026, the highest balance in the Master Account at any point was approximately $2,906,303. The Lockbox, the Centric Collection Account, and the Brake Parts account were swept daily, and as of January 23, 2026 each had a zero balance. Each BPI Collection Account had a zero balance on September 1, 2026.

The Concentration Account balance fell below $21.2 million on numerous dates after September 29, 2025, including approximately $6,412,330 on December 10, 2025; approximately $3,825,502 on January 23, 2026; and approximately $3,357,925 on June 3, 2026, which is the lowest balance reflected in the daily balance records through September 1, 2026. The lowest balance through January 23, 2026 was approximately $3,825,502 on that date.

The Investment Account began receiving transfers from the Brake Parts account in December 2025, and its lowest balance was approximately $363,152 in February 2026. *See* Jerneycic Declaration ¶¶ 7, 11.

The Trustee further answers pursuant to Federal Rule 33(d) by reference to the daily cash balance records and bank statements produced alongside these Objections and Answers.

**<u>INTERROGATORY NO. 7:</u> Identify each person with knowledge of the receipt, deposit, transfer, or use of the Warehouse Receipts, and describe the subject of each person's knowledge.**

**<u>ANSWER:</u>**

Subject to and without waiving the foregoing General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Trustee objects to this Interrogatory as overbroad and not proportional to the extent it seeks the identity of every person with any knowledge, and will identify the persons she understands to have principal knowledge. The Trustee further objects to the extent it seeks the identity of counsel or the substance of privileged communications. The Trustee has no personal knowledge of these matters and has identified the persons below based on the FBG Debtors' records and information from A&M; her investigation is ongoing.

Subject to and without waiving these objections, the Trustee identifies the following persons.

(a) Christopher Moffatt, Senior Director, A&M — the FBG Debtors' cash management system, the BPI Collection Accounts and Concentration Account, sweeps, and daily cash balances.

(b) Matt Uhrin, Director, A&M — the cash-application analysis matching receipts to MDC- and WDC-sourced inventory and the segregation of collections on and after January 21, 2026.

(c) Daniel Jerneycic, Managing Director, A&M, and former co-Chief Restructuring Officer of the FBG Debtors (October 23, 2025 through conversion) — the BPI Collection Accounts and their transfers, the methodology agreed with Evolution's advisors after the January 20, 2026 ruling, the Segregated Accounts, and the June 2026 retroactive analysis identifying approximately $21.2 million in receipts.

(d) Charles M. Moore, Managing Director, A&M, and former Chief Restructuring Officer of the FBG Debtors — the FBG Debtors' post-petition cash position and use of cash.

(e) BPI treasury and accounts receivable personnel responsible for receipt and application of customer payments during the Relevant Period, including Joe Salvia, Vice President of Finance, and members of his team.

**<u>INTERROGATORY NO. 8:</u> Identify each transaction, from the Petition Date through January 20, 2026, in which any FBG Debtor purchased inventory from any Evolution SPV Debtor pursuant to paragraph 4.A of the Adequate Protection Stipulation. For each such transaction, state:**

**a. The date of the transaction and the FBG Debtor and Evolution SPV Debtor involved;**

**b. The SKUs, quantities, and cost value of any inventory purchased from the Evolution SPV Debtor;**

c. **The form and amount of any consideration provided to the Evolution SPV Debtor, including (1) for cash, the Segregated Account into which it was deposited and the amount, and (2) for inventory, the SKUs, quantities, cost value, and how the FBG Debtor designated the inventory as owned by the Evolution SPV Debtor;**

d. **Whether the consideration equaled at least 102% of the cost value of the inventory purchased; and**

e. **Each document recording the transaction, including but not limited to, invoices and other transaction documents.**

**ANSWER:**

Subject to and without waiving the foregoing General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Trustee objects to this Interrogatory as containing multiple discrete subparts and as unduly burdensome to the extent it requires a narrative, SKU-level description of each transaction. The Trustee further objects to the extent it presumes that the Evolution SPV Debtors owned any inventory, and notes that paragraph 4.A of the Adequate Protection Stipulation permitted purchases only during the Interim Period, which ended January 5, 2026.

Subject to and without waiving these objections, the Trustee states that no purchases, sales, or transfers of inventory occurred between any Evolution SPV Debtor and any FBG Debtor during the Relevant Period, including under paragraph 4.A of the Adequate Protection Stipulation. The inventory at issue was recorded on BPI's books. As BPI inventory was sold to third-party customers, it was replaced with like-kind Eligible Inventory purchased or manufactured by the FBG Debtors, and the FBG Debtors focused on compliance with the Collateral Maintenance Covenant. Although the Segregated Accounts were opened, no cash was deposited into them until the FBG Debtors began segregating collections after the January 20, 2026 hearing.

**INTERROGATORY NO. 9: For each week during the Relevant Period, Identify the level of inventory held at each Warehouse (or, if Warehouse-level data does not exist, at the WDC or MDC facility), stating the week-ending date, quantity and cost value by SKU, and whether the quantity and cost value of any inventory was designated as owned by an Evolution SPV Debtor or as collateral of Evolution.**

**ANSWER:**

Subject to and without waiving the foregoing General Objections, Objections to Definitions, and Objections to Instructions, all of which are incorporated herein by reference, the Trustee objects to this Interrogatory as unduly burdensome and not proportional to the extent it requires a narrative, SKU-level listing for every week of the Relevant Period, and to the extent such data was not maintained weekly in the ordinary course.

Subject to and without waiving these objections, the Trustee states that, based on BPI's inventory sub-ledger, the inventory at the Warehouses had a book value of approximately $293 million as of

January 20, 2026 and approximately $295 million as of June 26, 2026. *See* Jerneycic Declaration ¶ 11.

The Trustee further answers pursuant to Federal Rule 33(d) by reference to both the weekly inventory reports for the Warehouses and other BPI locations produced alongside these Objections and Answers, and to those previously produced to Evolution, including but not limited to the following:

FBG_EVL_AP_00040915
FBG_EVL_AP_00040916
FBG_EVL_AP_00040919
FBG_EVL_AP_00040922
FBG_EVL_AP_00040934
FBG_EVL_AP_00040936
FBG_EVL_AP_00040938
FBG_EVL_AP_00040940
FBG_EVL_AP_00040942
FBG_EVL_AP_00040945
FBG_EVL_AP_00040946
FBG_EVL_AP_00040949
FBG_EVL_AP_00040950
FBG_EVL_AP_00040952
FBG_EVL_AP_00040953
FBG_EVL_00026865
FBG_EVL_00026866
FBG_EVL_00026867
FBG_EVL_00026868
FBG_EVL_00026869
FBG_EVL_00026870
FBG_EVL_00026871
FBG_EVL_00026872
FBG_EVL_00026873
FBG_EVL_00026874
FBG_EVL_00026875
FBG_EVL_00026876
FBG_EVL_00026877
FBG_EVL_00026878
FBG_EVL_00026879

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| FIRST BRANDS GROUP, LLC, *et al* | ) | Case No. 25-90399 (CML) |
| | ) | Jointly Administered |

**VERIFICATION IN SUPPORT OF FIRST BRANDS GROUP, LLC'S OBJECTIONS AND ANSWERS TO EVOLUTION CREDIT PARTNERS' FIRST SET OF INTERROGATORIES**

I, Eva S. Engelhart, declare as follows:

1. "I am the duly appointed chapter 7 trustee (the "Trustee") of the estates of First Brands Group, LLC and its affiliated debtors (collectively, the "FBG Debtors") in the above-captioned jointly administered chapter 7 cases. I was appointed on September 1, 2026, upon conversion of the FBG Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. I make this verification solely in my capacity as Trustee and not in any individual capacity.

2. I have read the foregoing First Brands Group, LLC's Objections and Answers to Evolution Credit Partners' First Set of Interrogatories (the "Answers").

3. I do not have personal knowledge of the facts stated in the Answers, including those concerning the FBG Debtors' operations, accounting, cash management, bank accounts, inventory, or reporting before my appointment. In preparing the Answers, I have relied on the FBG Debtors' books and records and on information provided by persons who do have personal knowledge or who maintained or reviewed those records. These persons include the FBG Debtors' former professionals, including Alvarez & Marsal North America, LLC and its personnel, and my counsel. As Trustee, I am entitled to rely on such records,

persons, and professionals in administering the FBG Debtors' estates, and I believe that reliance to be reasonable.

4. Based on that reliance, the factual statements in the Answers are true and correct to the best of my knowledge, information, and belief. Approximate figures stated in the Answers are stated as reflected in the FBG Debtors' records and in information provided to me, and are subject to revision as additional records are reviewed. My investigation is ongoing, and I reserve the right to supplement or amend the Answers.

5. The objections stated in the Answers were made by my counsel, and this verification does not extend to them."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

______________________________
Eva S. Engelhart

SUBSCRIBED and SWORN to before me, the undersigned notary public, on this 16 day of October, 2026

CHRISTINE ESCAMILLA
Notary ID #125482119
My Commission Expires
October 31, 2029

______________________________
Notary Public in and for the State of Texas



18760426