EXHIBIT 23

*Stipulation and Agreed Interim Order Regarding Adequate Protection Among Debtors and Evolution Credit Partners [Docket No. 147]*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIRST BRANDS GROUP, LLC, *et al.*,** | § | **Case No. 25-90399 (CML)** |
| | § | |
| | § | **(Joint Administration Requested)** |
| **Debtors.**[1] | § | **(Emergency Hearing Requested)** |

**STIPULATION AND AGREED INTERIM ORDER REGARDING ADEQUATE PROTECTION AMONG DEBTORS AND EVOLUTION CREDIT PARTNERS**

This Stipulation and Order (this "**Stipulation**") is entered into by and among (i) the above-captioned debtors (collectively, the "**Debtors**") and (ii) Evolution[2] (together with the Debtors, the "**Parties**").[3] The Parties hereby stipulate and agree as follows:

WHEREAS, on September 24, 2025 and September 28, 2025 (as applicable, the "**Petition Date**"), the Debtors commenced the chapter 11 cases in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**");

WHEREAS, on September 30, 2025, the Debtors filed an emergency motion seeking entry of an interim order (the "**Interim DIP Order**") and a final order (the "**Final DIP Order**") authorizing the Debtors to, among other things, obtain postpetition financing and use cash collateral (Docket No 49).

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands. The Debtors' service address for these chapter 11 cases is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] "**Evolution**" shall mean, collectively, Evolution Credit Opportunities Master Fund II-B, L.P., Evolution Credit Partners Trade Finance Master L.P. (as successor in interest to Evolution Credit Partners Trade Finance L.P.), Evolution Credit Opportunity Master Fund III-B, LP, and certain other Evolution affiliated funds.

[3] Capitalized terms not defined herein have the meaning ascribed to such terms in the *Declaration of Charles M. Moore in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**") (Docket No. 22).

WHEREAS, on March 28, 2023, Debtors (1) Strongarm, LLC, (2) Carter Fuel Systems, LLC, (3) Trico Products Corporation, (4) ASC Industries, Inc., (5) Fram Group Operations LLC, (6) Brake Parts Inc. LLC, (7) First Brands Group, LLC and (8) Champion Laboratories, Inc. (collectively, the "**Receivables Sellers**") entered into that certain *Master Receivables Purchase Agreement* (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Receivables Facility**") with Evolution;

WHEREAS, pursuant to the Receivables Facility, the Receivable Sellers have assertedly sold certain receivables to Evolution up to a maximum facility limit of $80 million;

WHEREAS, on November 9, 2023, Debtor Patterson Inventory, LLC (the "**Patterson Borrower**") entered into that certain *Uncommitted Inventory Finance Agreement* (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Patterson Facility**") with Evolution Credit Opportunity Master Fund II-B, L.P., as lender;

WHEREAS, under the Patterson Facility, Evolution provided an uncommitted asset-based revolving credit facility with maximum aggregate amount of advances of $150 million to the Patterson Borrower;

WHEREAS, the Patterson Borrower's obligations under the Patterson Facility are assertedly (i) guaranteed by Debtor Patterson Inventory Holdings, LLC ("**Patterson Parent**"), (ii) secured by a pledge of 100% equity of the Patterson Borrower that the Patterson Parent owns, and (iii) secured by a lien on certain inventory of the Patterson Borrower (together with the products and proceeds thereof, the "**Patterson Collateral**").

WHEREAS, on March 28, 2024, Starlight Inventory I, LLC (the "**Starlight Borrower**," and together with the Patterson Borrower, the "**Evolution Borrowers**") entered into that certain *Uncommitted Inventory Finance Agreement* (as may be amended, restated, amended and restated,

supplemented or otherwise modified from time to time, the "**Starlight Facility**" and, together with the Patterson Facility, collectively, the "**Evolution Facilities**");

WHEREAS, under the Starlight Facility, Evolution provided an uncommitted asset-based revolving credit facility with maximum aggregate amount of advances of $150 million to the Starlight Borrower;

WHEREAS, the Starlight Borrower's obligations under the Starlight Facility are assertedly (i) guaranteed by Starlight Inventory Holdings I, LLC ("**Starlight Parent**"), (ii) secured by a pledge of 100% equity of the Starlight Borrower that the Starlight Parent owns, and (iii) secured by a lien on certain inventory of the Starlight Borrower (together with the products and proceeds thereof, the "**Starlight Collateral**," and together with the Patterson Collateral and such other property in which Evolution has asserted an ownership or security interest, including without limitation accounts, accounts receivable, and inventory together with the products and proceeds thereof, collectively, the "**Evolution Collateral**");

WHEREAS, approximately $230 million of principal obligations under the Evolution Facilities is outstanding (the "**Evolution Claims**");

WHEREAS, from time to time, Debtor First Brands Group Holdings, LLC and its direct and indirect subsidiaries (the "**FBG Debtors**") may continue using the Evolution Collateral and the proceeds thereof in the ordinary course of business, and acknowledge and agree that Evolution is entitled to adequate protection from any diminution in value of the Evolution Collateral during the course of these chapter 11 cases.

**NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND ORDERED THAT:**

1. ***Debtors' Continued Use***. The Debtors are authorized and permitted to continue using the Evolution Collateral and the proceeds thereof in the ordinary course of business during the period after entry of the Interim DIP Order and before the earlier of (a) 30 days and (b) entry of the Final DIP Order (the "**Interim Period**"), subject to the terms and conditions set forth herein.

2. ***Continuation of Lien; Replacement Collateral***. Evolution shall: (a) retain its asserted ownership interest and/or first-priority lien or other rights to any Evolution Collateral, including without limitation accounts receivable generated from the sale by any Debtor at any time of any Evolution Collateral and any collections in respect of Evolution Collateral; and (b) retain its asserted first-priority lien on any Evolution Collateral purchased by any Debtor or non-debtor affiliate (on and after the applicable Petition Date) up to the value of the Evolution Collateral (clauses (a) and (b), collectively, the "**Evolution Lien**").

3. ***Segregation***. Within five (5) business days of the Debtors' receipt of payment on account of any Evolution Collateral that has been sold, liquidated or otherwise disposed of or collected, the Debtors will deposit the amount of cash received without offset or deduction into a segregated account (the "**Adequate Protection Account**") to the extent such property is identified as Evolution Collateral, ***provided*** that Alvarez & Marsal will exercise good faith efforts to identify Evolution Collateral. All Parties' rights, including as to the proper owner or beneficiary of such collateral and disbursements from the Adequate Protection Accounts, shall be fully preserved.

4. ***No Priming or Other Liens***. Except as set forth in paragraph 8 below, no order of the Bankruptcy Court (including the Interim DIP Order) shall grant any liens or claims against the Evolution Collateral, including liens that are senior to or pari passu with any Evolution Lien. No

Order of the Bankruptcy Court shall grant liens against or claims to any proceeds of any claim or cause of action, including so-called avoidance actions arising under chapter 5 of the Bankruptcy Code, to the extent that such claims or causes of action belong to an Evolution Borrower.

5. ***Reservation of Rights***. The validity, amount, perfection, and priority of Evolution's asserted security and/or ownership interest in the Evolution Collateral and its secured and unsecured claims is not agreed, and will remain subject to review and challenge by the Debtors and other parties in interest. The Evolution Collateral may have been commingled with the assets of the FBG Debtors. All parties' rights to challenge Evolution's liens, claims, interests, and priority are expressly preserved. Likewise, Evolution expressly retains all rights.

6. ***No Waivers***. During the period of interim approval, Evolution shall not receive waivers of claims for necessary costs and expenses of preserving or disposing of property securing an allowed secured claim pursuant to section 506(c) of the Bankruptcy Code or the Bankruptcy Code section 552 "equities of the case" exception.

7. ***Post-Petition Interest***. To the extent its claims are over-secured, Evolution's rights to receive post-interest on Evolution's prepetition claims, together with reasonable fees, costs, and charges as provided for under section 506(b) of the Bankruptcy Code are reserved.

8. ***Intercompany Cost Claim***. The FBG Debtors shall receive a second lien and superpriority administrative expense claim against the Evolution Borrowers for any allocable costs incurred for administering the chapter 11 cases of such Evolution Borrowers (*e.g.*, their share of "carve-out" estate professional fees and U.S. Trustee fees) (the "**FBG Lien**"); **provided**, **however** such superpriority administrative expense claim and the FBG Lien shall be junior and subordinate in all respects to the Evolution Lien and Evolution's claims, regardless of time, method, or order

of attachments, perfection or priority of the FBG Lien or Evolution Lien. All rights to determine the fair allocable costs of the Evolution Borrowers are reserved.

9. ***Site Access; Books and Records***. The Debtors shall coordinate to provide reasonable access to Evolution (and its representatives) to the Debtors' warehouses, other facilities, and books and records to conduct updated appraisals, field exams, and inventory taking of the Evolution Collateral and to identify and trace the creation, acquisition and transfer of, and any collections with respect to, the Evolution Collateral.

10. ***Reporting***. To the best of their ability, the Debtors shall provide weekly reporting on inventory levels, the transfer of any Evolution Collateral, and related customer sales, including relevant purchase orders and collections in respect of the Evolution Collateral. Evolution shall be provided all written reports set forth in the Interim DIP Order that are delivered to the ABL Lenders, First Lien Lenders, and DIP lenders on a confidential basis (subject to the Debtors' rights to redact or not share sensitive business information).

11. The rights, claims, causes of action, and defenses, at law and in equity, with respect to the Patterson Facility, Patterson Claims, Starlight Facility, and Starlight Claims, of all parties in interest in the jointly administered chapter 11 cases of the Debtors are expressly reserved.

12. This Stipulation shall not be modified, altered, amended, or vacated without the written consent of each of the Parties or by further order of the Bankruptcy Court.

13. The Debtors are authorized to take all actions necessary to effectuate this Stipulation.

14. The Bankruptcy Court retains sole and exclusive jurisdiction over all matters related to this Stipulation.

Dated: ____________________, 2025

_________________________________________
Christopher Lopez
United States Bankruptcy Judge

**STIPULATED AND AGREED TO BY:**

Dated: October 1, 2025

*/s/ Clifford W. Carlson*

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: gabriel.morgan@weil.com
clifford.carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (*pro hac vice* pending)
Sunny Singh (*pro hac vice* pending)
Andriana Georgallas (*pro hac vice* pending)
Kevin Bostel (*pro hac vice* pending)
Jason H. George (*pro hac vice* pending)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: matt.barr@weil.com
sunny.singh@weil.com
andriana.georgallas@weil.com
kevin.bostel@weil.com
jason.george@weil.com

*Proposed Attorneys for Debtors and Debtors in Possession*

Dated: October 1, 2025

*/s/ Jason S. Brookner*

GRAY REED
Jason S. Brookner
Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email: jbrookner@grayreed.com

-and-

PROSKAUER ROSE LLP
Vincent Indelicato (*pro hac vice* pending)
Matthew R. Koch (*pro hac vice* pending)
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: vindelicato@proskauer.com
mkoch@proskauer.com
- and -
Charles A. Dale (*pro hac vice* pending)
One International Plaza
Boston, MA 02110-2600
Telephone: (617) 526-9600
Email: cdale@proskauer.com

*Attorneys for Evolution*

**CERTIFICATE OF SERVICE**

I certify that on October 1, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Clifford W. Carlson*___________
Clifford W. Carlson