# EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 7** |
| | § | **(Previously Chapter 11)** |
| **PATTERSON INVENTORY, LLC, *et al.*,** | § | |
| | § | **Case No. 25-90392 (CML)** |
| **Debtors.**[1] | § | |
| | § | **Jointly Administered** |

**DECLARATION OF ALEXANDER MCKEOWN IN SUPPORT OF CHAPTER 7 TRUSTEE OF THE FBG DEBTORS' OBJECTION TO EMERGENCY APPLICATION TO AUTHORIZE THE EVOLUTION SPV DEBTORS' TRUSTEE TO COLLECT CERTAIN ACCOUNTS RECEIVABLE PURSUANT TO THE WIND DOWN ORDER**

[Relates to Docket Nos. 93, 94 & 102]

I, Alexander McKeown, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct:

1. I am Co-Head, Originations & Transactions at Hilco Global Capital Solutions, an affiliate of Hilco Merchant Resources, LLC, Hilco Receivables, LLC, and Hilco Global Professional Services, LLC (collectively, "Hilco"). I submit this declaration (the "Declaration") in support of the *Chapter 7 Trustee of the FBG Debtors' Objection to Emergency Application to Authorize the Evolution SPV Debtors' Trustee to Collect Certain Accounts Receivable Pursuant to the Wind Down Order* [Docket No. 102] (the "Objection")[2] filed by Eva S. Engelhart, the chapter 7 trustee (the "FBG Trustee") of First Brands Group, LLC and its affiliated debtors (the "FBG Debtors" and, together with the Evolution SPV Debtors, "FBG"), in response to the

[1] The debtors in these chapter 7 cases, along with the last four digits of each debtor's federal tax identification number, are: Patterson Inventory, LLC (2872) (Case No. 25-90392); Patterson Inventory Holdings, LLC (0079) (Case No. 25-90393); Starlight Inventory I, LLC (6698) (Case No. 25-90394); and Starlight Inventory Holdings I, LLC (6472) (Case No. 25-90395). The Evolution SPV Debtors' mailing address is 127 Public Square, Suite 5300, Cleveland, OH 44114.

[2] Capitalized terms used herein but not otherwise defined have the meanings given in the Objection.

*Emergency Application to Authorize the Evolution SPV Debtors' Trustee to Collect Certain Accounts Receivable Pursuant to the Wind Down Order* [Docket Nos. 93 & 94] (the "Application").

2. Except as otherwise indicated, the statements in this Declaration are based on my personal knowledge, my review of relevant documents, and information provided to me by Hilco personnel working under my supervision, the FBG Debtors' advisors, and the FBG Debtors' former employees. If called to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Declaration on behalf of Hilco.

**Background and Hilco's Role**

3. I joined Hilco Merchant Resources, LLC in 2017 and have since originated and helped structure numerous restructuring and recovery transactions involving billions of dollars in asset value. I have been personally involved in Hilco's engagement in these cases since its inception.

4. On April 16, 2026, the Court entered the *Order Pursuant to Section 363 of the Bankruptcy Code (I) Approving and Authorizing the Debtors to Enter Into and Perform Under the Consulting Agreement; (II) Authorizing the Sale of Wind Down Assets Free and Clear of All Liens, Claims, and Encumbrances; and (III) Granting Related Relief* [Case No. 25-90399, Docket No. 2454] (the "Wind Down Order"), approving the Amended and Restated Consulting and Marketing Services Agreement dated March 13, 2026 (the "Consulting Agreement"). Under the Wind Down Order and the Consulting Agreement, Hilco serves as the FBG Debtors' exclusive agent for "Receivables Services," including collecting, servicing, settling, and otherwise resolving the FBG Debtors' outstanding receivables.

5. On July 9, 2026, the Court entered an order in these chapter 7 cases extending to the trustee of the Evolution SPV Debtors the authority granted to the chapter 11 debtors under the

Wind Down Order [Docket No. 61] (the "Extension Order"). The Wind Down Order is attached to the Extension Order as Exhibit A, and the Extension Order provides that Hilco remains compensated pursuant to the Consulting Agreement and the Wind Down Order. *See* Extension Order ¶¶ 2, 5. By the Extension Order, Hilco became the Evolution SPV Debtors' exclusive consultant, pursuant to the terms of the Consulting Agreement and Wind Down Order.

**Preservation of Records Was a Necessary First Step**

6. From the outset of Hilco's engagement, there was a real risk that the cases would convert to chapter 7, that key FBG employees would leave, and that FBG would lose access to its systems. Hilco therefore worked extensively with Alvarez & Marsal ("A&M") and FBG employees to preserve FBG's records. That included extracting data from FBG's systems, archiving invoices and documentation from customer portals, preserving raw data that could not otherwise be backed up, and consolidating physical bills of lading and shipping them to FBG's facility in McHenry, Illinois.

7. That work took months. It was a necessary predicate to any substantive conversation with customers. Customers do not pay on a bare demand; they ask the collector to back up its numbers, explain what is contractually allowed, and understand how the business operated with that customer in the ordinary course, including credits, returns, and deductions, so that the parties can arrive at an agreed net balance.

8. The work was complicated because FBG used multiple inventory management systems and systems of record-keeping across its entities. I understand from FBG's information technology personnel that the data captured from FBG's enterprise resource planning systems totals more than 4,000 data tables and approximately 8.4 billion records, including approximately 5.79 billion records from the Oracle environment used by BPI and certain affiliates.

**Circumstances Specific to FBG Have Made Collections Atypical**

9. Several circumstances specific to FBG have made the collection process atypical and slower than a typical receivables engagement.

10. First, most customers stopped corresponding with FBG about accounts receivable in or around December 2025, following discussions with the company. By the time Hilco began outreach, many customers had already received collection demands from FBG and then A&M. By the time Hilco took over the process, it was essentially the third party to reach out to customers about payment of receivables in a relatively short period.

11. Second, many customers also received demands from factors and other parties claiming rights to the same receivables. Many customers are hesitant to engage, or to pay anyone, until they have clarity about who is entitled to the money and assurance that they will not be pursued a second time for amounts they have already paid. For example, in May 2026 correspondence, Tractor Supply Company advised that it was evaluating how to proceed in light of a factor's asserted interest in its receivables, and its outside counsel asked for an order establishing that, if it paid the FBG Debtors, the factoring entities could not also pursue it for payment. A true and correct copy of that correspondence is attached as **Exhibit A**.

12. Third, FBG's records are incomplete. At one point, FBG stopped accepting product returns as a matter of policy, but the distribution centers continued to receive returned product. Because the returns were not authorized, FBG stopped recording the returns. As a result, customers hold proofs of delivery on which they assert credits that FBG's records do not reflect. Customers also assert credits, in many cases, through customer portals. In addition, there are approximately 110 debtor entities, whose data can be rolled up differently depending on who is running the analysis, which can create inconsistencies.

13. Fourth, by the time Hilco started this engagement, FBG had lost key people and systems. FBG relied on key personnel, including remote teams in Romania, to perform its accounts receivable work. Because the organization was distributed, different personnel at times held different perspectives, and specific information resided in individual email inboxes or in individuals' institutional knowledge. Hilco was engaged at a time when chapter 7 conversion was potentially imminent and customers were not responding. Securing data integrity therefore had to come first, which necessarily delayed meaningful customer conversations.

14. Each of these circumstances required a significant amount of work before productive customer conversations could even begin. Further time was required to retain outside litigation counsel, Troutman Pepper Locke LLP ("Troutman") and Clark Hill PLC ("Clark Hill"), for receivables that require litigation. After the Court denied confirmation of the FBG Debtors' plan in August 2026 and converted the cases to chapter 7 on September 1, 2026, the FBG Trustee necessarily needed time to get up to speed on a wide variety of matters, including receivables strategy and decisions. Those events were outside the control of Hilco and the collection professionals.

**<u>Carving Out the Schedule A Customers Would Not Benefit the Estates</u>**

15. In my professional judgment, the Application's proposal would be a poor collection strategy for the estates as a whole. The Application would carve out seven of BPI's largest and most valuable customers and subject them to a separate collection strategy pursued by a different set of agents. These customers typically owe, and assert credits against, multiple FBG entities. Introducing another party making demands on the same customers would add to the confusion described above, give customers additional reason to withhold payment, and duplicate work that Hilco and the collection professionals have already performed, including the data preservation and

reconciliation work on which any collection effort depends. In my experience, the most effective recoveries from customers of this size typically result from a commercial resolution that addresses the customer's full relationship with the business, rather than piecemeal demands by separate parties.

16. Since conversion, the FBG Trustee has sought approval to engage Troutman and Clark Hill [*see* Case No. 25-90399, Docket Nos. 3873 and 3875] and is moving forward with the estates' collection efforts, utilizing the extensive pre-conversion efforts and work product of Hilco and Troutman/Clark Hill to effectively and efficiently monetize the significant accounts receivable owed to these estates. These steps are consistent with the Wind Down Order, the attached Consulting Agreement [*see* Case No. 25-90399, Docket No. 2454, Ex. 1], and the Extension Order, and they are in the best interests of the estates.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October [__], 2026

*/s/ DRAFT*
Alexander McKeown
Co-Head, Originations & Transactions
Hilco Global Capital Solutions

# EXHIBIT A

**From:** Rose, Glenn, B. <GRose@bassberry.com>
**Sent:** Friday, May 22, 2026 4:14 PM
**To:** Thompson, Grace A.; jmullins@tractorsupply.com
**Cc:** Giglio, Cindi M.; Hilbig-Ross, Michael; McKeown, Alexander
**Subject:** Re: RE First Brands / Hilco Receivables

Some people who received this message don't often get email from grose@bassberry.com. Learn why this is important

**This message is from an EXTERNAL SENDER - be CAUTIOUS, particularly with links and attachments.**

Thanks, Grace. Can you point us to an order that clearly establishes that if Tractor pays the debtors, then the factoring entities who claim to have purchased these receivables cannot also pursue Tractor for payment of the amounts due.

Get Outlook for Android

---

**From:** Thompson, Grace A. <grace.thompson@katten.com>
**Sent:** Friday, May 22, 2026 11:02:58 PM
**To:** jmullins@tractorsupply.com <jmullins@tractorsupply.com>
**Cc:** Giglio, Cindi M. <cgiglio@katten.com>; Michael Hilbig-Ross (MRoss@hilcoglobal.com) <MRoss@hilcoglobal.com>; McKeown, Alexander <amckeown@hilcoglobal.com>; Rose, Glenn, B. <GRose@bassberry.com>
**Subject:** RE First Brands / Hilco Receivables

Jarod,

Gave you a ring on your office line. Happy to discuss the process and Court-approved authority with you or Glenn at your convenience. Please give me a call on Tuesday, or let me know your availability to set up a Zoom.

Best,
Grace

**Grace A. Thompson**
Associate
**Katten**
Katten Muchin Rosenman LLP
50 Rockefeller Plaza | New York, NY 10020-1605
direct +1.212.940.6634 mobile +1.551.265.0556
grace.thompson@katten.com | katten.com
Bio | vCard

---

**From:** Giglio, Cindi M. <cgiglio@katten.com>
**Sent:** Friday, May 22, 2026 3:39 PM
**To:** Jarod Mullins <jmullins@tractorsupply.com>
**Cc:** Rose Glenn B. <GRose@bassberry.com>; Jarod Mullins <jmullins@tractorsupply.com>; Thompson, Grace A. <grace.thompson@katten.com>
**Subject:** Re: First Brands / Hilco Receivables

Hi Jarod,

Copying my colleague, Grace, who can assist.

Thanks,
Cindi

**Cindi M. Giglio** (she | her | hers)
Partner and Co-Chair of Restructuring

**Katten**
Katten Muchin Rosenman LLP
50 Rockefeller Plaza | New York, NY 10020-1605
direct +1.212.940.3828 | mobile +1.516.456.4734
cgiglio@katten.com | katten.com

On May 22, 2026, at 11:53 AM, Jarod Mullins <jmullins@tractorsupply.com> wrote:

*EXTERNAL EMAIL – EXERCISE CAUTION*
Cindi,

I am following up regarding your recent letter concerning Hilco's authority to collect receivables in connection with the First Brands bankruptcy matter.

Tractor Supply is currently reviewing outstanding amounts and evaluating how to proceed with certain invoices in light of the ongoing dispute involving Raistone's asserted factoring/security interest in receivables. While we understand Hilco has been authorized to collect receivables on behalf of the debtors, we would appreciate the opportunity to better understand the scope of that authority and whether there is any additional court guidance, agreement, or resolution addressing the receivables currently at issue.

To help facilitate that discussion, I am copying Glenn Rose of Bass, Berry & Sims, who is engaged as outside counsel assisting TSC in navigating this matter.

Please let us know your availability for a call sometime early next week.

Thanks,

Jarod

**Jarod Mullins**
Director, Legal (Technology & Corporate)
Tractor Supply Company
5401 Virginia Way | Brentwood, TN 37027
Ph: 615-440-4412 | Fax: 615-484-4412

This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are

hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender immediately by telephone (615-440-4412) or by return e-mail and delete the message, along with any attachments, from your computer or other device. Thank you.

==============================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.
==============================================================
NOTIFICATION: Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).
==============================================================